**HEARING DATE AND TIME: June 2, 2011 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------x

**OMNIBUS REPLY TO CERTAIN RESPONSES OPPOSING**
**DEBTORS' SEVENTY-FOURTH OMNIBUS OBJECTION TO**
**CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the

above referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), submit this reply to certain responses opposing the Seventy-Fourth Omnibus

Objection[1] that assert that ownership of Debtors' preferred stock should be treated as

ownership of a debt instrument as opposed to an equity interest, and respectfully

represent:

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Debtors' Seventy-Fourth Omnibus Objection to Claims.

## Preliminary Statement

1.       The commencement of the Debtors' chapter 11 cases has impacted parties

in interest around the globe, including prepetition investors in the Debtors and their

affiliates.  Unfortunately, as a result of the dramatic collapse of the Debtors, individuals

that purchased Debtors' stock, including preferred stock, lost significant value in their

investment.  But the law requires that those individuals' recovery be subordinated to

other claims against the Debtors.  Certain claimants are seeking to avoid such

subordination by arguing that their preferred stock is a debt and not an equity instrument,

and that they are thus creditors of, and not owners of equity interests in, the Debtors.

These arguments fail, however, because ownership of the preferred stock at issue is

properly classified as an equity interest as a matter of law.  Accordingly, the Court should

reclassify the Stock Claims as equity interests.

## Background

2.       On December 8, 2010, the Debtors filed their Seventy-Fourth Omnibus

Objection to reclassify as equity interests certain claims based on the ownership of

preferred stock, common stock, or other equity interests (the "Stock Claims").  By order

dated January 20, 2011, the Court granted the relief as to the majority of the Stock

Claims.

3.       This reply addresses the responses submitted by three claimants:  Bowaut,

Inc. (Claim No. 4737), Herman Stolk (Claim No. 10261), and Sandra Stolk (Claim No.

10262) (collectively, the "Objecting Claimants").[2]  The Objecting Claimants assert that

---

[2] This reply does not address the responses to Debtors' Seventy-Fourth Omnibus Objection submitted by (i) Gloria Stainkamp with respect to Claim 6157 [Docket No. 13884], (ii) Peter Thompson Sepira with respect to Claim 63354 [Docket No. 14077], (iii) Peter Thompson with respect to claim 63353 [Docket No.

their claims should not be reclassified as equity because preferred stock has

characteristics of both debt and equity, and they prefer that their preferred stock be

treated as debt.[3]

4.      The Bowaut and Stolk claims are based on holdings of LBHI 6.50%

Cumulative Preferred Stock, Series F ("Series F Preferred Stock").  A true and correct

copy of the June 14, 2001 Prospectus Supplement for the Series F Preferred Stock is

attached hereto as Exhibit A.

### Argument and Authorities

5.      Ownership of the Series F Preferred Stock is properly categorized as an

equity interest and should not be treated as a debt instrument.  Courts generally treat

preferred stock as an equity interest in a company.  *See* Robert Stearn, Jr., *Proving*

*Solvency:  Defending Preference and Fraudulent Transfer Litigation*, 62 Bus. Law. 359,

383 (Feb. 2007) ("[C]ourts generally treat preferred stock (including mandatory

redeemable preferred stock), as well as other instruments such as options or warrants, as

equity.").  Regardless, the determination of whether preferred stock is debt or equity is

governed by the interpretation of the contract between the corporation and the security

holders that governs the preferred stock issuance.  *See e.g.*,  *In re Trace Int'l Holdings,*

*Inc.*, 287 B.R. 98, 109 (S.D.N.Y. Bankr. 2002).

---

14077], or (iv) Michael Pinko L.T.D. with respect to Claim 34908 [Docket No. 14068].  Those responses
provide no legal argument for their opposition to the Seventy-Fourth Omnibus Objection.  The Debtors
reserve their rights to submit reply briefs to those responses.

[3] Specifically, Bowaut, Inc., has asserted that "the asset that [Bowaut, Inc.] held had all of the attributes of a
bond and should be classified as such."  *See* Bowaut Resp. to Seventy-Fourth Omnibus Objection [Docket
No. 13885].  Likewise, Herman and Sandra Stolk both responded that "by definition, preferred stock has
properties of both an equity and a debt instrument, including a higher ranking to common stock, priority in
the payment of dividends and sensitivity to interest rates."  *See* Herman and Sandra Stolk Resps. to
Seventy-Fourth Omnibus Objection [Docket Nos. 13683 & 13862].

6.      Courts examine several factors in determining whether preferred stock is properly categorized as debt or equity, including "(1) the name given to the instrument; (2) the intent of the parties; (3) the presence or absence of a fixed maturity date; (4) the right to enforce payment of principal and interest; (5) the presence or absence of voting rights; (6) the status of the contribution in relation to the regular corporate contributors; and (7) certainty of payment in the event of the corporation's insolvency or liquidation." *See id.* (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Blackstone Family Inv. P'ship*, No. 96-76, 2000 WL 152129, at *4 (D. Del. Feb. 9, 2000)).

7.      In their analysis, courts heavily rely on whether or not certainty of payment is present to determine a preferred stock's proper classification. *See id.* ("Where such certainty of payment is missing, the security is equity, not debt."); *see also Harbinger Capital Partners Master Fund I, LTD v. Granite Broad. Corp.*, 906 A. 2d 218, 230 (Del. Ch. 2006) ("But the fundamental reason that the preferred shares are equity is that they provide no guaranteed right of payment."); *In re Trace Int'l*, 287 B.R. at 109 ("Trace's ability to redeem still depended on solvency, and the solvency requirement indicates that Dow held a shareholder's interest."); *HB Korenvaes Investments, L.P. v. Marriott Corp.*, Civ. A. No. 12922, 1993 WL 205040, at *5 (Del. Ch. June 9, 1993) ("But the holder of preferred stock is not a creditor of the corporation.  Such a holder has no legal right to annual payments of interest, as long term creditors will have, and most importantly has no maturity date with its prospect of capital repayment or remedies for default.").

8.      Application of these factors to the Series F Preferred Stock establishes that ownership of the Series F Preferred Stock is properly categorized as an equity interest.

Most importantly, the Series F Preferred Stock provides no guarantee of payment. Issuance of dividends for the Series F Preferred Stock is dependent on other occurrences and is not guaranteed like a principal or interest payment.  *See* Ex. A at S-3 ("Holders of Series F Preferred Stock will receive, *if declared by Lehman Brothers Holdings*, *out of funds legally available for payment of dividends under Delaware law*, cumulative cash dividends . . . .").  Consequently, just like the instruments at issue in *Color Tile*, *In re Trace International*, and *Korenvaes Investments*, the absence of a guaranteed payment establishes that the Series F Preferred Stock is an equity interest in LBHI.

9.      The other factors courts examine further support that the Series F Preferred Stock is properly classified as equity.  First, the name given to the instrument is 6.5% Cumulative *Preferred Stock*.  Second, as demonstrated by the fact that the Series F Preferred Stock is structured so that dividends are paid *when declared by Lehman Brothers Holdings,* the intention was that it would be treated as stock, rather than a debt instrument that dictated set principal and interest payments.  *See id.*  Third, there is no fixed maturity date, but instead, there is a an optional redemption date.  *See id.* at S-4.  Additionally, the holders of the Series F Preferred Stock have voting rights, which further supports that the issuance should be characterized as equity.  *See id.* ("Holders of Series F Preferred Stock, together with holders of such other preferred stock entitled to elect preferred directors, voting as a class, may remove and replace either of the directors they elected.").

10.      The intent that the Series F Preferred Stock be treated *as stock* is further demonstrated by the fact that it was designed such that holders would be entitled to receive assets specifically "available for distribution to *stockholders*."  *See id.* at S-5

(emphasis added). This intention is underscored by the Series F Preferred Stock's description of the treatment of Series F Preferred stockholders in the event of LBHI's liquidation. In that event, said stockholders are entitled to a ratable distribution of assets designated for "holders of Series F Preferred Stock or any stock ranking equally with the Series F Preferred Stock." *See id.* Therefore, it was envisioned that here—in the event of LBHI's bankruptcy—the holders of Series F Preferred Stock would be treated the same as the holders of similarly ranking "stock."

11.     Accordingly, the Series F Preferred Stock should be treated as *stock*—and therefore equity—in these chapter 11 cases.

### Conclusion

12.     While it would be preferential to the Objecting Claimants if their Series F Preferred Stock was treated as debt rather than equity, doing so would be contrary to the applicable law and facts. The Objecting Claimants' investment in the Series F Preferred Stock secures them an equity interest in the Debtors and nothing more.

13.     Accordingly, Debtors respectfully request that the Court enter an order reclassifying Bowaut Inc.'s Claim 4737 and the Stolks' Claims 10261 and 10262 as equity interests. Debtors also respectfully request any further relief as is just.

Dated: May 26, 2011
          New York, New York

                                        /s/ Robert J. Lemons
                                        Robert J. Lemons

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

# EXHIBIT A

424B2 1 a2117469z424b2.htm 424B2

<u>QuickLinks</u> -- Click here to rapidly navigate through this document

Filed Pursuant to Rule 424(b)(2)
Registration No. 333-060474

PROSPECTUS SUPPLEMENT
(To prospectus dated June 14, 2001)

**12,000,000 Shares**

# LEHMAN BROTHERS HOLDINGS INC.

### DEPOSITARY SHARES
### EACH REPRESENTING 1/100TH OF A SHARE OF
### 6.50% CUMULATIVE PREFERRED STOCK, SERIES F

---

This is a public offering by Lehman Brothers Holdings of 12,000,000 depositary shares, each representing 1/100th of a share of 6.50% Cumulative Preferred Stock, Series F. Each depositary share entitles the holder, proportionately, to all rights, preferences and privileges of the Series F Preferred Stock represented by that depositary share. Lehman Brothers Holdings will deposit the Series F Preferred Stock with EquiServe Trust Company, N.A., as depositary. The proportionate stated value of each depositary share is $25.00.

Lehman Brothers Holdings may redeem the Series F Preferred Stock on or after August 31, 2008, in whole or in part, at a redemption price equal to $2,500.00 per share of Series F Preferred Stock (equivalent to $25.00 per depositary share) plus accrued and unpaid dividends.

Dividends on the Series F Preferred Stock will be cumulative from the date of issuance and are payable quarterly, on each February 28, May 31, August 31 and November 30, beginning November 30, 2003. Dividends payable on the Series F Preferred Stock will be adjusted in the event of certain amendments to applicable U.S. tax laws, in respect of the dividends-received deduction.

Application will be made to list the depositary shares on the New York Stock Exchange. Trading on the New York Stock Exchange is expected to begin within 30 days after the initial delivery of the depositary shares. Lehman Brothers Holdings does not expect that there will be any public trading market for the Series F Preferred Stock except as represented by the depositary shares.

The depositary shares should be delivered on or about August 27, 2003 through the facilities of The Depository Trust Company.

| | Per Depositary Share | | Total | |
|---|---|---|---|---|
| Public offering price | $ | 25.0000 | $ | 300,000,000 |
| Underwriting discount | $ | 0.7875 | $ | 9,450,000 |
| Proceeds to Lehman Brothers Holdings | $ | 24.2125 | $ | 290,550,000 |

The public offering price set forth above does not include accrued dividends. Dividends on the depositary shares will accrue from August 27, 2003.

Lehman Brothers Holdings has granted to the underwriters a 30-day option to purchase up to 1,800,000 additional depositary shares on the same terms and conditions as set forth above solely to cover over-allotments, if any.

Following the initial offering of the depositary shares and subject to obtaining the approval of the New York Stock Exchange, Lehman Brothers Inc., a wholly-owned subsidiary of Lehman Brothers Holdings, expects to offer and sell previously issued depositary shares in the course of its business as a broker-dealer. Lehman Brothers Inc. may act as principal or agent in those transactions, and this prospectus supplement may be used by Lehman Brothers Inc. in connection therewith. Sales will be made at varying prices related to prevailing market prices at the time of sale.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined that this prospectus supplement or the attached prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

---

# LEHMAN BROTHERS

A.G. EDWARDS & SONS, INC.
CITIGROUP
MERRILL LYNCH & CO.
MORGAN STANLEY
UBS PAINEWEBBER
WACHOVIA SECURITIES

BANC OF AMERICA SECURITIES LLC

August 20, 2003

---

**You should rely only on the information contained or incorporated by reference in this prospectus supplement and the attached prospectus. Lehman Brothers Holdings has not authorized any other person to provide you with different information. If anyone provides you with different or inconsistent information, you should not rely on it. Lehman Brothers Holdings is not making an offer to sell these securities in any jurisdiction where the offer or sale is not permitted. You should assume that the information appearing in this prospectus supplement and the attached prospectus, as well as information Lehman Brothers Holdings previously filed with the Securities and Exchange Commission and incorporated by reference, is accurate as of the date of the applicable document. Lehman Brothers Holdings' business, financial condition, results of operations and prospects may have changed since that date.**

---

**TABLE OF CONTENTS**
**Prospectus Supplement**

|  | Page |
|---|---|
| Ratios of Earnings to Fixed Charges and of Earnings to Combined Fixed Charges and Preferred Stock Dividends | S-3 |
| Use of Proceeds | S-3 |
| Certain Terms of the Series F Preferred Stock | S-3 |
| Certain Terms of the Depositary Shares | S-6 |
| Certain United States Federal Income Tax Consequences | S-8 |
| Underwriting | S-10 |
| Experts | S-12 |
| Legal Matters | S-13 |

**Prospectus**

| | |
|---|---|
| Prospectus Summary | 2 |
| Where You Can Find More Information | 6 |
| Use of Proceeds and Hedging | 7 |
| Ratio of Earnings to Fixed Charges and of Earnings to Combined Fixed Charges and Preferred Stock Dividends | 8 |
| Description of Debt Securities | 8 |
| Description of Common Stock | 17 |
| Description of Preferred Stock | 19 |
| Description of Depositary Shares | 23 |
| Form, Exchange and Transfer | 25 |
| Book-Entry Procedures and Settlement | 26 |
| United States Federal Income Tax Consequences | 28 |
| Plan of Distribution | 42 |
| ERISA Considerations | 45 |
| Legal Matters | 45 |
| Experts | 45 |

You may request a copy of any document Lehman Brothers Holdings files with the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934, at no cost, by writing or telephoning Lehman Brothers Holdings at the following address, which replaces the address provided in the attached prospectus:

Office of the Corporate Secretary
399 Park Avenue
New York, New York 10022
(212) 526-0858

See "Where You Can Find More Information" in the attached prospectus.

Lehman Brothers Holdings' principal executive office is located at the following address, which replaces the address provided in the attached prospectus:

745 Seventh Avenue
New York, NY 10019
(212) 526-7000

S-2

## RATIOS OF EARNINGS TO FIXED CHARGES AND OF EARNINGS TO COMBINED FIXED CHARGES AND PREFERRED STOCK DIVIDENDS

| | Year Ended November 30, | | | | | Six Months Ended |
|---|---|---|---|---|---|---|
| | 1998 | 1999 | 2000 | 2001 | 2002 | May 31, 2003 |
| Ratio of Earnings to Fixed Charges | 1.07 | 1.12 | 1.14 | 1.11 | 1.13 | 1.23 |
| Ratio of Earnings to Combined Fixed Charges and Preferred Stock Dividends | 1.06 | 1.10 | 1.12 | 1.10 | 1.11 | 1.21 |

## USE OF PROCEEDS

Lehman Brothers Holdings estimates that the net proceeds from the sale of the depository shares will be approximately $290.4 million after underwriting discounts and payment of estimated expenses. Lehman Brothers Holdings will use the net

proceeds for working capital and general corporate purposes.

## CERTAIN TERMS OF THE SERIES F PREFERRED STOCK

*The following description of the material terms of the Series F Preferred Stock is intended to supplement the more general terms and provisions of Lehman Brothers Holdings' preferred stock set forth in the attached prospectus. The following summary is not intended to be complete.*

The shares of Series F Preferred Stock represented by the depositary shares constitute a single series of preferred stock. The Series F Preferred Stock is not convertible into, or exchangeable for, shares of any other class or series of stock or other securities of Lehman Brothers Holdings. Shares of Series F Preferred Stock have no preemptive rights. Any shares of Series F Preferred Stock that are surrendered for redemption will be returned to the status of authorized and unissued preferred stock.

The Series F Preferred Stock ranks on an equal basis with Lehman Brothers Holdings' 5.94% Cumulative Preferred Stock, Series C, 5.67% Cumulative Preferred Stock, Series D and Fixed/Adjustable Rate Cumulative Preferred Stock, Series E as to dividends and upon liquidation, dissolution or winding up. Lehman Brothers Holdings may from time to time, without notice to or consent from the holders of the depositary shares, create and issue additional shares of preferred stock ranking on an equal basis to the Series F Preferred Stock as to dividends and upon liquidation, dissolution or winding up.

EquiServe Trust Company, N.A., is the registrar, transfer agent and dividend disbursing agent for the shares of Series F Preferred Stock and also will serve as the depositary.

### Dividends

Holders of Series F Preferred Stock will receive, if declared by Lehman Brothers Holdings, out of funds legally available for payment of dividends under Delaware law, cumulative cash dividends at the annual rate of 6.50% of the liquidation preference per share (equivalent to $1.625 per year per depositary share).

Lehman Brothers Holdings will pay dividends on the Series F Preferred Stock quarterly, in arrears, on February 28, May 31, August 31, and November 30 of each year, beginning November 30, 2003. If any date on which dividends would otherwise be payable is a national or New York State holiday, or if banking institutions in New York State are closed because of a banking moratorium or otherwise on such date, then the dividend payment date will be the next day on which banks in New York State are open. See "Certain Terms of the Depositary Shares—Dividends and Other Distributions" on page S-6 about the deferral of distribution of amounts that are fractions of one cent.

Dividends on shares of the Series F Preferred Stock will be cumulative and will accrue, whether or not earned or declared, on a daily basis, from the previous dividend payment date. However, the first dividend will accrue from the date of initial issuance. Any accrued and unpaid dividends will not bear interest.

S-3

---

Lehman Brothers Holdings will pay dividends to holders of record as of the close of business on the 15th day of the month in which the dividend payment date is scheduled. This day is also called the record date for payment of dividends.

Lehman Brothers Holdings will calculate dividends on the Series F Preferred Stock for any full quarterly dividend period on the basis of a 360-day year consisting of twelve 30-day months and, for any period shorter than a full quarter, on the basis of the actual number of days elapsed in a 90-day quarter. Dividends will cease to accrue after the redemption date on shares of the Series F Preferred Stock, as described under "Optional Redemption" on page S-4, unless Lehman Brothers Holdings defaults in the payment of the redemption price on the shares called for redemption.

If Lehman Brothers Holdings has not paid all prior dividends on the Series F Preferred Stock, Lehman Brothers Holdings may not declare, set apart for payment or pay dividends on any of its stock that ranks equally with the Series F Preferred Stock unless it also declares, sets apart for payment or pays dividends on the Series F Preferred Stock equal to the dividends to be declared, set apart for payment or paid on that other stock times the ratio of (A) the dividends accrued and unpaid on the Series F Preferred Stock through the most recent dividend payment date of the Series F Preferred Stock, over

(B) the dividends accrued and unpaid on that other stock.

Except as set forth above, unless Lehman Brothers Holdings has paid all prior dividends on the Series F Preferred Stock through the most recent dividend payment date of the Series F Preferred Stock:

- Lehman Brothers Holdings may not declare, set apart for payment or pay dividends (other than in common stock of Lehman Brothers Holdings) on the common stock or on any other stock of Lehman Brothers Holdings ranking equally with or junior to the Series F Preferred Stock as to dividends; and

- Lehman Brothers Holdings may not redeem, purchase or otherwise acquire (or make payment to or available for any sinking fund with respect to) any of its common stock or other stock that ranks equally with or junior to the Series F Preferred Stock as to dividends, except that money previously deposited in a sinking fund may be applied to a redemption or purchase.

However, any stock ranking equally with or junior to the Series F Preferred Stock as to dividends may be converted into or exchanged for stock ranking junior to the Series F Preferred Stock as to dividends.

## Optional Redemption

Lehman Brothers Holdings may redeem shares of Series F Preferred Stock on or after August 31, 2008, in whole or in part, at a redemption price equal to $2,500.00 per share (equivalent to $25.00 per depositary share), plus accrued but unpaid dividends to the redemption date. Lehman Brothers Holdings will give written notice of redemption at least 30 days and no more than 60 days prior to the redemption date. For any shares to be redeemed, dividends will cease to accrue and all rights of holders of such shares, except the right to receive the redemption price, will cease as of the redemption date.

If full cumulative dividends on the Series F Preferred Stock have not been paid or set apart for payment in respect of all prior dividend payment periods, Lehman Brothers Holdings may not redeem, purchase or otherwise acquire any shares of Series F Preferred Stock except in a purchase or exchange offer made on the same terms to all holders of the Series F Preferred Stock. If fewer than all the outstanding shares of Series F Preferred Stock are to be redeemed, Lehman Brothers Holdings will select those to be redeemed by lot or pro rata or by any other method Lehman Brothers Holdings deems appropriate.

The Series F Preferred Stock is not subject to mandatory redemption pursuant to a sinking fund or otherwise.

## Voting Rights

The Series F Preferred Stock will have no voting rights except as provided below or as otherwise from time to time required by law.

S-4

Whenever dividends payable on the shares of Series F Preferred Stock or on any other equally ranked series of preferred stock have not been paid for six or more calendar quarters, whether or not consecutive, the authorized number of directors of Lehman Brothers Holdings will automatically be increased by two. The holders of the Series F Preferred Stock will have the right, with holders of any other equally ranked series of preferred stock that have similar voting rights and on which dividends likewise have not been paid, voting together as a class, to elect two directors to fill such newly created directorships at Lehman Brothers Holdings' next annual meeting of stockholders and at each of its subsequent annual meetings until the dividends in arrears are paid. At that point the right to elect directors terminates, and the terms of office of the two directors so elected will terminate immediately.

Holders of Series F Preferred Stock, together with holders of such other preferred stock entitled to elect preferred directors, voting together as a class, may remove and replace either of the directors they elected. If the office of either such director becomes vacant for any reason other than removal, the remaining director may choose a successor who will hold office for the unexpired term of the vacant office.

So long as any shares of Series F Preferred Stock remain outstanding, Lehman Brothers Holdings will not, without the vote of the holders of at least 66$^2$/$_3$% of the shares of the Series F Preferred Stock:

- authorize, create or issue any capital stock of Lehman Brothers Holdings ranking, as to dividends or upon liquidation, dissolution or winding up, senior to the Series F Preferred Stock, or reclassify any authorized capital stock of Lehman Brothers Holdings into any such shares of such capital stock, or issue any obligation or security convertible into or evidencing the right to purchase any such shares; or

- amend, alter or repeal the certificate of designations for the Series F Preferred Stock, or the certificate of incorporation of Lehman Brothers Holdings, whether by merger, consolidation or otherwise, in a way that adversely affects the powers, preferences or special rights of the Series F Preferred Stock.

Any

- increase in the amount of authorized common or preferred stock; or

- increase or decrease in the number of shares of any series of preferred stock; or

- authorization and issuance of other classes or series of stock;

in each case ranking equally with or junior to the Series F Preferred Stock will not be deemed to adversely affect such powers, preferences or special rights.

Each share of Series F Preferred Stock will have ten votes whenever it is entitled to voting rights.

If Lehman Brothers Holdings redeems or calls for redemption all of the outstanding shares of Series F Preferred Stock and deposits in trust sufficient funds to effect such redemption, the above voting provisions will not apply.

**Liquidation Preference**

Upon any liquidation, dissolution or winding up of Lehman Brothers Holdings, the holders of the Series F Preferred Stock will be entitled to receive out of its assets available for distribution to stockholders, $2,500.00 per share (equivalent to $25.00 per depositary share) plus all accrued and unpaid dividends. If, upon any liquidation, dissolution or winding up of Lehman Brothers Holdings, its assets, or proceeds thereof, distributable among the holders of shares of Series F Preferred Stock or any stock ranking equally with the Series F Preferred Stock shall be insufficient to pay in full the preferential amounts to which such stock would be entitled, then such assets, or the proceeds thereof, shall be distributable among such holders ratably in accordance with the respective amounts which would be payable on such shares if all amounts payable thereon were paid in full.

Neither a consolidation nor merger of Lehman Brothers Holdings, nor a sale, lease, exchange or transfer of all or substantially all of its assets, will be deemed to be a liquidation, dissolution or winding up under the above provisions.

S-5

As of the date of this prospectus supplement, the aggregate liquidation preference of the preferred stock Lehman Brothers Holdings has outstanding (Lehman Brothers Holdings' 5.94% Cumulative Preferred Stock, Series C, 5.67% Cumulative Preferred Stock, Series D, and Fixed/Adjustable Rate Cumulative Preferred Stock, Series E) is $700 million.

## CERTAIN TERMS OF THE DEPOSITARY SHARES

*The following description of the material terms of the depositary shares being offered is intended to supplement the more general terms and provisions of Lehman Brothers Holdings' depositary shares set forth in the attached prospectus. The following summary is not intended to be complete.*

Each depositary share will represent 1/100th of a share of Series F Preferred Stock. Lehman Brothers Holdings will issue depositary receipts evidencing the depositary shares. Lehman Brothers Holdings will deposit the underlying shares of Series F Preferred Stock pursuant to a deposit agreement among Lehman Brothers Holdings, EquiServe Trust Company, N.A., as depositary, and the holders from time to time of the depositary receipts. Subject to the terms of the deposit agreement, the depositary shares will be entitled to all the rights and preferences of the Series F Preferred Stock in proportion to the applicable fraction of a share of preferred stock represented by such depositary share.

## Dividends and Other Distributions

The depositary will distribute all dividends and other cash distributions received on the Series F Preferred Stock to the holders of record of the depositary receipts in proportion to the number of depositary shares held by each holder. In the event of a distribution other than in cash, the depositary will distribute property received by it to the holders of record of the depositary receipts in proportion to the number of depositary shares held by each holder, unless the depositary determines that it is not feasible to make such distribution, in which case the depositary may, with the approval of Lehman Brothers Holdings, adopt a method of distribution that it deems practicable, including sale of the property and distribution of the net proceeds from such sale to the holders of depositary receipts. The obligation of the depositary to distribute dividends and distributions is subject to paying certain charges and expenses of the depositary.

The depositary will distribute dividends and other distributions only in an amount that can be distributed without attributing to any holder of depositary receipts a fraction of one cent. Any balance not so distributable will be held by the depositary and will be added to the next sum received by the depositary for distribution. The depositary will not be liable for interest on amounts held for later distribution.

## Taxes and Other Governmental Charges

The amount paid as dividends or otherwise distributable by the depositary with respect to the depositary shares or the underlying Series F Preferred Stock will be reduced by any amounts required to be withheld by Lehman Brothers Holdings or the depositary on account of taxes or other governmental charges. The depositary may refuse to make any payment or distribution, or any transfer, exchange or withdrawal of any depositary shares or shares of Series F Preferred Stock, until such taxes or other governmental charges are paid.

## Redemption of Depositary Shares

If Lehman Brothers Holdings redeems the Series F Preferred Stock, in whole or in part, the corresponding depositary shares will also be redeemed. The redemption price per depositary share will be equal to 1/100th of the redemption price per share of Series F Preferred Stock. If less than all the depositary shares will be redeemed, Lehman Brothers Holdings will select either by lot or pro rata those depositary shares to be redeemed. Any shares redeemed will be subject to rounding to prevent fractional depositary shares. The depositary will mail notice of redemption to record holders of the depositary receipts not less than 30 and not more than 60 days prior to the date fixed for redemption of the Series F Preferred Stock and depositary shares.

S-6

## Withdrawal of Series F Preferred Stock

Underlying shares of Series F Preferred Stock may be withdrawn from the depositary arrangement upon surrender of depositary receipts at the corporate trust office of the depositary and upon payment of the taxes, charges and fees provided for in the deposit agreement. Subject to the terms of the deposit agreement, the holder of depositary receipts will receive the appropriate number of shares of Series F Preferred Stock and any money or property represented by such depositary shares. Only whole shares of Series F Preferred Stock may be withdrawn; if a holder holds an amount other than a whole multiple of 100 depositary shares, the depositary will deliver along with the withdrawn shares of Series F Preferred Stock a new depositary receipt evidencing the excess number of depositary shares. Holders of withdrawn shares of Series F Preferred Stock will not be entitled to redeposit such shares or to receive depositary shares. See " —Stock Exchange Listing" below.

## Voting the Series F Preferred Stock

Because each depositary share represents ownership of 1/100th of a share of Series F Preferred Stock, and each share of Series F Preferred Stock is entitled to ten votes per share under the limited circumstances described above, holders of depositary receipts will be entitled to 1/10th of a vote per depositary share under such limited circumstances.

**Stock Exchange Listing**

Lehman Brothers Holdings will apply to list the depositary shares on the New York Stock Exchange and expects, if the application is approved, trading to begin within 30 days after initial delivery of the depositary shares. Lehman Brothers Holdings does not expect that there will be any separate public trading market for the shares of Series F Preferred Stock except as represented by the depositary shares.

S-7

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

The following describes the United States federal income tax considerations related to the ownership of depositary shares representing 1/100th of a share of Series F Preferred Stock as of the date hereof by United States holders (as defined below). Holders of depositary shares will be treated as if they own an interest in the underlying Series F Preferred Stock. This discussion does not address the United States federal income tax treatment of non-United States holders. Except where noted, it deals only with depositary shares purchased in this offering and held as a capital asset and does not deal with special situations, such as those of dealers in securities or currencies, financial institutions, regulated investment companies, real estate investment trusts, tax-exempt entities, insurance companies, persons holding the depositary shares as a part of a hedging, integrated, conversion or constructive sale transaction or a straddle, traders in securities that elect to use a mark-to-market method of accounting for their securities holdings, persons liable for alternative minimum tax, investors in pass-through entities or United States holders (as defined below) of the depositary shares whose "functional currency" is not the United States dollar. Furthermore, this discussion is based upon the provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and regulations, rulings and judicial decisions thereunder as of the date hereof, and such authorities may be repealed, revoked or modified so as to result in United States federal income tax consequences different from those discussed below. In addition, this discussion does not address taxes imposed by any state, local or foreign taxing jurisdiction. **Persons considering the purchase, ownership or disposition of the depositary shares should consult their own tax advisors concerning the United States federal income tax consequences in light of their particular situations as well as any consequences arising under the laws of any other taxing jurisdiction.**

For purposes of this discussion, "United States holder" generally means a holder that is for United States federal income tax purposes (1) a citizen or resident of the United States, (2) a corporation or partnership created or organized in or under the laws of the United States or any political subdivision thereof, (3) an estate the income of which is includible in its gross income for United States federal income tax purposes without regard to its source, or (4) a trust if (x) a court within the United States is able to exercise primary supervision over its administration and at least one United States Person has the authority to control all substantial decisions of the trust or (y) it has a valid election in effect under applicable United States Treasury regulations to be treated as a United States person.

*Dividends.*    Dividends on the Series F Preferred Stock will be dividends for United States federal income tax purposes to the extent paid out of Lehman Brothers Holdings' current or accumulated earnings and profits, as determined for United States federal income tax purposes, and will be taxable as ordinary income. Although Lehman Brothers Holdings expect that current and accumulated earnings and profits will be such that all dividends paid with respect to the Series F Preferred Stock will qualify as dividends for United States federal income tax purposes, Lehman Brothers Holdings cannot guarantee that result. Accumulated earnings and profits and current earnings and profits in future years will depend in significant part on future profits or losses, which cannot be accurately predicted. To the extent that the amount of any dividend paid on Series F Preferred Stock exceeds current and accumulated earnings and profits attributable to that share the dividend will be treated first as a return of capital and will be applied against and reduce the United States holder's adjusted tax basis (but not below zero) in the depositary shares representing that share of Series F Preferred Stock. This reduction in basis would increase any gain, or reduce any loss realized by the United States holder on the subsequent sale, redemption or other disposition of its depositary share. The amount of any such dividend in excess of the United States holder's adjusted tax basis will then be taxed as capital gain. For purposes of the remainder of this discussion, it is assumed that dividends paid on the Series F Preferred Stock will constitute dividends for United States federal income tax purposes.

Dividends that are received by United States holders that are corporations will generally be eligible for the 70%

dividends-received deduction under Section 243(a)(1) of the Code. Section 246(c) of the Code disallows the dividends-received deduction in its entirety if the depositary shares representing the share of Series F Preferred Stock with respect to which the dividend is paid are held by the taxpayer for less than

S-8

---

46 days, excluding any day that is more than 45 days after the ex-dividend date. (A 91-day minimum holding period applies to certain dividend arrearages). A United States holder generally may not count towards these minimum holding periods any period in which its risk of loss is diminished because it (a) has the option to sell, is under a contractual obligation to sell, or has made (and not closed) a short sale of depositary shares representing the shares of Series F Preferred Stock or substantially identical stock or securities, (b) is the grantor of an option to buy depositary shares representing the shares of Series F Preferred Stock or substantially identical stock or securities or (c) otherwise has diminished its risk of loss by holding one or more other positions with respect to substantially similar or related property. The United States Treasury Regulations provide that a taxpayer has diminished its risk of loss on stock by holding a position in substantially similar or related property if the taxpayer is the beneficiary of a guarantee, surety agreement, or similar arrangement that provides for payments that will substantially offset decreases in the fair market value of the stock. In addition, section 246(c) of the Code disallows the dividends-received deduction if the recipient of a dividend is obligated to make related payments with respect to positions in substantially similar or related property. This disallowance applies even if the minimum holding period has been met.

Prospective investors should consider the effect of section 246A of the Code, which reduces the dividends-received deduction allowed with respect to "debt-financed portfolio stock." The Code also imposes a 20% alternative minimum tax on corporations. In some circumstances, the portion of dividends subject to the dividends-received deduction will serve to increase a corporation's minimum tax base for purposes of the determination of the alternative minimum tax. In addition, a corporate shareholder may be required to reduce its basis in stock with respect to certain "extraordinary dividends", as provided under section 1059 of the Code. Holders should consult their own tax advisers in determining the application of these rules in light of their particular circumstances.

Under current law, dividends received by individual United States holders generally will be subject to a reduced maximum tax rate of 15% through December 31, 2008, after which the rate applicable to dividends is scheduled to return to the tax rate generally applicable to ordinary income. The rate reduction will not apply to dividends received to the extent that the individual United States holder elects to treat the dividends as "investment income," which may be offset by investment expense. Furthermore, the rate reduction will only apply to dividends that are paid to a United States holder with respect to depositary shares representing Series F Preferred Stock that is held by such holder for more than 60 days during the 120-day period beginning on the date which is 60 days before the date on which the Series F Preferred Stock becomes ex-dividend. A United States holder generally may not count towards these minimum holding period requirements any period in which it has a diminished risk of loss as described above. In addition, the rate reduction will not apply to dividends if the recipient of a dividend is obligated to make related payments with respect to positions in substantially similar or related property. This disallowance applies even if the minimum holding period has been met. Holders are advised to consult their own tax advisors regarding the implications of these rules in light of their particular circumstances.

*Dispositions, including Redemptions.*    A sale, exchange, redemption or other disposition of depositary shares will generally result in gain or loss equal to the difference between the amount realized upon the disposition and the United States holder's adjusted tax basis in the depositary shares. Such gain or loss will be capital gain or loss and will be long-term capital gain or loss if the holding period for the depositary shares exceeds one year. Under current law, net long-term capital gain realized by individual United States holders is subject to a reduced maximum tax rate of 15%. After December 31, 2008, the maximum rate is scheduled to return to the previously effective 20% rate. The deduction of capital losses is subject to limitations.

*Information Reporting and Backup Withholding.*    In general, information reporting requirements will apply to dividends paid on the Series F Preferred Stock, and the proceeds of sale of depositary shares to United States holders other than certain exempt recipients (such as corporations). A backup withholding tax will apply to such payments if the United States holder fails to provide a taxpayer identification number or certification of other exempt status or fails to report in full dividend income.

Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against such holder's United States federal income tax liability provided the required information is furnished to the Internal Revenue Service.

S-9

---

# UNDERWRITING

     Subject to the terms and conditions of an underwriting agreement, a form of which was filed as an exhibit to the SEC registration statement under which the depositary shares are being offered and sold, Lehman Brothers Holdings has agreed to sell to each of the underwriters listed below the respective number of depositary shares shown opposite its name below. Subject to the terms and conditions of the underwriting agreement, the underwriters are obliged to purchase all the shares (other than those covered by the over-allotment option described below) if they purchase any of the shares.

| Underwriters | Number of Shares |
|---|---|
| Lehman Brothers Inc. | 1,150,000 |
| A.G. Edwards & Sons, Inc. | 1,125,000 |
| Citigroup Global Markets Inc. | 1,125,000 |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 1,125,000 |
| Morgan Stanley & Co. Incorporated | 1,125,000 |
| UBS PaineWebber Inc. | 1,125,000 |
| Wachovia Securities, Inc. | 1,125,000 |
| Banc of America Securities LLC | 300,000 |
| ABN AMRO Incorporated | 150,000 |
| Bear, Stearns & Co. Inc. | 150,000 |
| BNP Paribas Securities Corp. | 150,000 |
| Charles Schwab & Co., Inc. | 150,000 |
| Deutsche Bank Securities Inc. | 150,000 |
| Fahnestock & Co. Inc. | 150,000 |
| Fidelity Capital Markets, a division of National Financial Services LLC | 150,000 |
| Goldman, Sachs & Co. | 150,000 |
| HSBC Securities (USA) Inc. | 150,000 |
| Janney Montgomery Scott LLC | 150,000 |
| J.J.B. Hilliard, W.L. Lyons, Inc | 150,000 |
| J.P. Morgan Securities Inc. | 150,000 |
| Legg Mason Wood Walker Incorporated | 150,000 |
| Raymond James | 150,000 |
| RBC Dain Rauscher Inc. | 150,000 |
| Stifel, Nicolaus & Company, Incorporated | 150,000 |
| SunTrust Capital Markets, Inc. | 150,000 |
| U.S. Bancorp Piper Jaffray Inc. | 150,000 |
| Wells Fargo Securities, LLC | 150,000 |
| Advest, Inc. | 50,000 |
| BB&T Capital Markets, a division of Scott & Stringfellow Inc. | 50,000 |
| BC Ziegler & Co. | 50,000 |
| C.L. King & Associates, Inc. | 50,000 |
| Davenport & Company LLC | 50,000 |
| H&R Block Financial Advisors, Inc. | 50,000 |
| Maxim Group LLC | 50,000 |
| McDonald Investments Inc. | 50,000 |
| McGinn, Smith & Co., Inc. | 50,000 |
| Mesirow Financial, Inc. | 50,000 |
| Morgan Keenan & Company, Inc. | 50,000 |
| NatCity Investments, Inc. | 50,000 |
| Pershing Trading Co. LP | 50,000 |
| Quick & Reilly, Inc. | 50,000 |
| Robert W. Baird & Co. Incorporated | 50,000 |
| Ryan, Beck & Co., LLC | 50,000 |
| Southwest Securities, Inc. | 50,000 |

| | |
|---|---|
| TD Securities (USA) Inc. | 50,000 |
| William Blair & Company, L.L.C. | 50,000 |
| Total | 12,000,000 |

S-10

---

The underwriters have advised Lehman Brothers Holdings that they propose to initially offer the depositary shares to the public at the public offering price set forth on the cover page of this prospectus supplement; they may also offer depositary shares to certain dealers at such price less a concession not in excess of $0.50 per depositary share. The underwriters may allow and such dealers may reallow, a concession not in excess of $0.45 per depositary share to certain other dealers. After the initial public offering of the depositary shares is completed, the public offering price and such concessions may be changed.

Lehman Brothers Holdings has granted to the underwriters an option to purchase up to 1,800,000 additional depositary shares at the price to the public, less the aggregate underwriting discount and commissions, shown on the cover page of this prospectus supplement, solely to cover over-allotments, if any. This option may be exercised at any time up to 30 days after the date of this prospectus supplement. To the extent that the option is exercised, the underwriters will be committed, so long as the conditions of the underwriting agreement are satisfied, to purchase a number of additional depositary shares approximately proportionate to that underwriter's commitment as indicated in the table on the preceding page.

The following table summarizes the underwriting discounts and commissions Lehman Brothers Holdings will pay. The underwriting discounts and commissions are equal to the public offering price per share, less the amount paid to Lehman Brothers Holdings per share. The underwriting discounts and commissions equal 3.15% of the public offering price.

| | | Total | |
|---|---|---|---|
| | Per Share | Without Over-Allotment | With Over-Allotment |
| Paid by Lehman Brothers Holdings (before expenses) | $ 0.7875 | $ 9,450,000 | $ 10,867,500 |

In connection with this offering, the underwriters may engage in stabilizing transactions, over-allotment, syndicate short covering transactions, and penalty bids or purchases for the purpose of pegging, fixing or maintaining the price of the depositary shares in accordance with Regulation M under the Securities Exchange Act of 1934:

- Stabilizing transactions permit bids to purchase the underlying security so long as the stabilizing bids do not exceed a specific maximum.

- Over-allotment transactions involve sales by the underwriters of depositary shares in excess of the number of depositary shares the underwriters are obligated to purchase, which creates a syndicate short position. The short position may be either a covered short position or a naked short position. In a covered short position, the number of depositary shares over-allotted by the underwriters is not greater than the number of depositary shares that they may purchase in the over-allotment option. In a naked short position, the number of depositary shares involved is greater than the number of depositary shares in the over-allotment option. The underwriters may close out any short position by either exercising their over-allotment option, in whole or in part, and/or purchasing depositary shares in the open market.

- Syndicate covering transactions involve purchases of depositary shares in the open market after the distribution has been completed in order to cover syndicate short positions. In determining the source of depositary shares to close out the short position, the underwriters will consider, among other things, the price of depositary shares available for purchase in the open market as compared to the price at which they may purchase depositary shares through the over-allotment option. If the underwriters sell more depositary shares than could be covered by the over-allotment option, a naked short position, the position can only be closed out by buying depositary shares in the open market. A naked short position is more likely to be created if the

underwriters are concerned that there could be downward pressure on the price of depositary shares in the open market after pricing that could adversely affect investors who purchase in the offering.

S-11

---

- Penalty bids permit the underwriters to reclaim a selling concession from a syndicate member when the depositary shares originally sold by the syndicate member is purchased in a stabilizing or syndicate covering transaction to cover a syndicate short positions.

These stabilizing transactions, syndicate covering transactions and penalty bids may have the effect of raising or maintaining the market price of Lehman Brothers Holdings' depositary shares or preventing or retarding a decline in the market price of the depositary shares. As a result, the price of the depositary shares may be higher than the price that might otherwise exist in the open market. These transactions may be effected on the New York Stock Exchange or otherwise and, if commenced, may be discontinued at any time.

Neither we nor any of the underwriters makes any representation or prediction as to the direction or magnitude of any effect that the transactions described above may have on the price of the depositary shares. In addition, neither we nor any of the underwriters makes any representation that the underwriters will engage in these stabilizing transactions or that any transaction, once commenced, will not be discontinued without notice.

The underwriters may not confirm sales to any account over which it exercises discretionary authority without the prior written approval of the customer.

Lehman Brothers Holdings expects to deliver the Notes against payment on or about the date specified in the fifth paragraph of the cover page of this prospectus supplement, which is the fifth business day following the date of this prospectus supplement. Under Rule 15c6-1 of the SEC under the Securities Exchange Act of 1934, as amended, trades in the secondary market generally are required to settle in three business days, unless the parties to any such trade expressly agree otherwise. Accordingly, if any purchaser wishes to trade the Notes on the date of this prospectus supplement or the date thereafter, it will be required, by virtue of the fact that the Notes initially will settle on the fifth business day following the date of this prospectus supplement, to specify an alternate settlement cycle at the time of any such trade to prevent a failed settlement.

Lehman Brothers Holdings will pay certain expenses, expected to be approximately $150,000, associated with the offer and sale of the depositary shares.

Lehman Brothers Holdings will apply to list the depositary shares on the New York Stock Exchange and expects, if the application is approved, trading to begin within 30 days after initial delivery of the depositary shares.

Certain of the underwriters of the depositary shares are affiliated with commercial banking institutions that may from time to time in the ordinary course of business loan money to and have other customary banking relationships with Lehman Brothers Holdings and its affiliates.

Lehman Brothers Holdings has agreed to indemnify the underwriters against certain liabilities, including liabilities under the Securities Act of 1933.

The underwriting arrangements for this offering comply with the requirements of Rule 2720 of the NASD regarding an NASD member firm underwriting securities of its affiliate.

## EXPERTS

The consolidated financial statements and financial statement schedule of Lehman Brothers Holdings as of November 30, 2002 and 2001, and for each of the years in the three-year period ended November 30, 2002, have been audited by Ernst & Young LLP, independent certified public accountants, as set forth in their report on the consolidated financial statements. The consolidated financial statements and accountant's report are incorporated by reference in Lehman Brothers Holdings' annual report on Form 10-K for the year ended November 30, 2002, and incorporated by reference in this

prospectus supplement. The consolidated financial statements of Lehman Brothers Holdings referred to above are incorporated by reference in this

S-12

prospectus supplement in reliance upon such report given on the authority of Ernst & Young LLP as experts in accounting and auditing.

## LEGAL MATTERS

Barrett S. DiPaolo, Associate General Counsel of Lehman Brothers Holdings, will act as legal counsel to Lehman Brothers Holdings. Mr. DiPaolo beneficially owns, or has rights to acquire under Lehman Brothers Holdings' employee benefit plans, an aggregate of less than 1% of Lehman Brothers Holdings' common stock. Simpson Thacher & Bartlett LLP, New York, New York, will act as legal counsel to the underwriters. Simpson Thacher & Bartlett LLP from time to time acts as counsel for Lehman Brothers Holdings and its subsidiaries.

S-13

PROSPECTUS

## $24,821,567,094

# LEHMAN BROTHERS HOLDINGS INC.

**May Offer—**

## DEBT SECURITIES
## PREFERRED STOCK
## DEPOSITARY SHARES
## COMMON STOCK

Lehman Brothers Holdings will provide the specific terms of these securities in supplements to this prospectus. You should read this prospectus and the accompanying prospectus supplement carefully before you invest.

The securities offered pursuant to this prospectus are offered in an aggregate principal amount of up to $24,821,567,094 subject to reduction as a result of the sale under certain circumstances of other securities.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined if this prospectus or any accompanying prospectus supplement is truthful or complete. Any representation to the contrary is a criminal offense.

June 14, 2001

## PROSPECTUS SUMMARY

This summary provides a brief overview of the key aspects of Lehman Brothers Holdings and all material terms of the offered securities that are known as of the date of this prospectus. For a more complete understanding of the terms of a particular issuance of offered securities, before making your investment decision, you should carefully read:

- this prospectus, which explains the general terms of the securities that Lehman Brothers Holdings may offer;

- the accompanying prospectus supplement for such issuance, which explains the specific terms of the securities being offered and which may update or change information in this prospectus; and

- the documents referred to in "Where You Can Find More Information" on page 6 for information about Lehman Brothers Holdings, including its financial statements.

## LEHMAN BROTHERS HOLDINGS INC.

Lehman Brothers Holdings is one of the leading global investment banks, serving institutional, corporate, government and high-net-worth individual clients and customers. The company's worldwide headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in the United States, Europe, the Middle East, Latin America and the Asia Pacific region.

The company's business includes capital raising for clients through securities underwriting and direct placements, corporate finance and strategic advisory services, private equity investments, securities sales and trading, research, and the trading of foreign exchange, derivative products and certain commodities. The company acts as a market-maker in all major equity and fixed income products in both the domestic and international markets. The company is a member of all principal securities and commodities exchanges in the United States, as well as the National Association of Securities Dealers, Inc., and holds memberships or associate memberships on several principal international securities and commodities exchanges, including the London, Tokyo, Hong Kong, Frankfurt, Paris and Milan stock exchanges.

Lehman Brothers Holdings' principal executive office is at Three World Financial Center, New York, New York 10285, and its telephone number is (212) 526-7000.

## THE SECURITIES LEHMAN BROTHERS HOLDINGS MAY OFFER

Lehman Brothers Holdings may use this prospectus to offer up to $24,821,567,094 of:

- debt securities,

- preferred stock,

- depositary shares, and

- common stock.

A prospectus supplement will describe the specific types, amounts, prices, and detailed terms of any of these offered securities.

Since Lehman Brothers Holdings is a holding company, its cash flow and consequent ability to satisfy its obligations under the offered securities are dependent upon the earnings of its subsidiaries and the distribution of those earnings or loans or other payments by those subsidiaries to Lehman Brothers Holdings. Lehman Brothers Holdings' subsidiaries will have no obligation to pay any amount in respect of offered securities or to make any funds available therefor. Dividends, loans and other payments by Lehman Brothers Inc. and certain other subsidiaries, including payments to Lehman Brothers Holdings,

are restricted by net capital and other rules of various regulatory bodies. Additionally, the ability of Lehman Brothers Holdings to participate as an equity holder in any

2

distribution of assets of any subsidiary is generally subordinate to the claims of creditors of the subsidiary.

**Debt Securities**

Debt securities are unsecured general obligations of Lehman Brothers Holdings in the form of senior or subordinated debt. Senior debt includes Lehman Brothers Holdings' notes, debt and guarantees and any other debt for money borrowed that is not subordinated. Subordinated debt, so designated at the time it is issued, would not be entitled to interest and principal payments if payments on the senior debt were not made.

Debt securities may bear interest at a fixed or a floating rate and may provide that the amount payable at maturity, and/or the amount of interest payable on an interest payment date, will be determined by reference to:

- securities of one or more issuers, including Lehman Brothers Holdings,

- one or more currencies,

- one or more commodities,

- any other financial, economic or other measure or instrument, including the occurrence or non-occurrence of any event or circumstance, and/or

- one or more indices or baskets of the items described above.

For any particular debt securities Lehman Brothers Holdings offers, the prospectus supplement will describe the specific designation, the aggregate principal or face amount and the purchase price; the ranking, whether senior or subordinated; the stated maturity; the redemption terms, if any; the rate or manner of calculating the rate and the payment dates for interest, if any; the amount or manner of calculating the amount payable at maturity and whether that amount may be paid by delivering cash, securities or other property; and any other specific terms.

The senior and subordinated debt will be issued under separate indentures between Lehman Brothers Holdings and a trustee. Below are summaries of the general features of the debt securities from these indentures. For a more detailed description of these features, see "Description of Debt Securities" below. You are also encouraged to read the indentures, which are incorporated by reference in or filed as exhibits to Lehman Brothers Holdings' registration statement no. 333-60474. You can obtain copies of these documents by following the directions on page 6.

**General Indenture Provisions That Apply To Senior and Subordinated Debt**

- Neither indenture limits the amount of debt that Lehman Brothers Holdings may issue or provides holders any protection should there be a highly leveraged transaction involving Lehman Brothers Holdings, although the indentures do limit Lehman Brothers Holdings' ability to pledge the stock of any subsidiary that meets the financial thresholds in the indenture. These thresholds are described below under "Description of Debt Securities." Each indenture allows for different types of debt securities, including indexed securities, to be issued in series.

- The indentures allow Lehman Brothers Holdings to merge or to consolidate with another company, or sell all or substantially all of its assets to another company. If any of these events occur, the other company would be required to assume Lehman Brothers Holdings' responsibilities for the debt. Unless the transaction resulted in an event of default, Lehman Brothers Holdings would be released from all liabilities and obligations under the debt securities when the other company assumed its responsibilities.

- The indentures provide that holders of $66^2/_3$% of the principal amount of the debt securities outstanding in any series may vote to change Lehman Brothers Holdings' obligations or your rights concerning those securities. However, changes to the financial terms of that security,

3

including changes in the payment of principal or interest on that security or the currency of payment, cannot be made unless every holder of that security consents to the change.

- Lehman Brothers Holdings may satisfy its obligations under the debt securities or be released from its obligation to comply with the limitations discussed above at any time by depositing sufficient amounts of cash or U.S. government securities with the trustee to pay Lehman Brothers Holdings' obligations under the particular securities when due.

- The indentures govern the actions of the trustee with regard to the debt securities, including when the trustee is required to give notices to holders of the securities and when lost or stolen debt securities may be replaced.

### Events of Default

The events of default specified in the indentures include:

- failure to pay principal when due;

- failure to pay required interest for 30 days;

- failure to make a required scheduled installment payment for 30 days;

- failure to perform other covenants for 90 days after notice; and

- certain events of insolvency or bankruptcy, whether voluntary or not.

### Remedies

If there were a default, the trustee or holders of 25% of the principal amount of debt securities outstanding in a series could demand that the principal be paid immediately. However, holders of a majority in principal amount of the securities in that series could rescind that acceleration of the debt securities.

### Preferred Stock

Lehman Brothers Holdings may issue preferred stock with various terms to be established by its board of directors or a committee designated by the board. Each series of preferred stock will be more fully described in the particular prospectus supplement that will accompany this prospectus, including redemption provisions, rights in the event of liquidation, dissolution or winding up of Lehman Brothers Holdings, voting rights and conversion rights.

Generally, each series of preferred stock will rank on an equal basis with each other series of preferred stock and will rank prior to Lehman Brothers Holdings' common stock. The prospectus supplement will also describe how and when dividends will be paid on the series of preferred stock.

### Depositary Shares

Lehman Brothers Holdings may issue depositary shares representing fractional shares of preferred stock. Each particular series of depositary shares will be more fully described in the prospectus supplement that will accompany this prospectus.

These depositary shares will be evidenced by depositary receipts and issued under a deposit agreement between Lehman Brothers Holdings and a bank or trust company. You are encouraged to read the standard form of the deposit agreement, which is incorporated by reference in Lehman Brothers Holdings' registration statement no. 333-60474. You can obtain copies of this document by following the directions on page 6.

## Common Stock

Lehman Brothers Holdings may issue shares of common stock, par value $.10 per share. Holders of the common stock are entitled to receive dividends when declared by the board of directors. Each

4

holder of common stock is entitled to one vote per share. The holders of common stock have no cumulative voting or preemptive rights.

## Form of Securities

Lehman Brothers Holdings will generally issue the securities in book-entry form through one or more depositaries, such as The Depository Trust Company, Euroclear or Clearstream, Luxembourg. Each sale of a security in book-entry form will settle in immediately available funds through the depositary, unless otherwise stated. Lehman Brothers Holdings will issue the securities only in registered form, without coupons.

## Payment Currencies

Amounts payable in respect of the securities, including the purchase price, will be payable in U.S. dollars, unless the prospectus supplement states otherwise.

## Listing

If any securities are to be listed or quoted on a securities exchange or quotation system, the applicable prospectus supplement will so state.

## USE OF PROCEEDS

Lehman Brothers Holdings will use the net proceeds it receives from any offering of these securities for general corporate purposes, primarily to fund its operating units and subsidiaries. Lehman Brothers Holdings may use some of the proceeds to refinance or extend the maturity of existing debt obligations. Lehman Brothers Holdings may use a portion of the proceeds from the sale of indexed notes to hedge its exposure to payments that it may have to make on such indexed notes as described below under "Use of Proceeds and Hedging."

## PLAN OF DISTRIBUTION

Lehman Brothers Holdings may sell the offered securities in any of the following ways:

- to or through underwriters or dealers;

- by itself directly;

- through agents; or

- through a combination of any of these methods of sale.

The prospectus supplement will explain the ways Lehman Brothers Holdings sells specific securities, including the names of any underwriters and details of the pricing of the securities, as well as the commissions, concessions or discounts Lehman Brothers Holdings is granting the underwriters, dealers or agents.

If Lehman Brothers Holdings uses underwriters in any sale, the underwriters will buy the securities for their own account and may resell the securities from time to time in one or more transactions, at a fixed public offering price or at varying prices determined at the time of sale. In connection with an offering, underwriters and selling group members and their affiliates may engage in transactions to stabilize, maintain or otherwise affect the market price of the securities, in accordance with applicable law.

Lehman Brothers Holdings expects that the underwriters for any offering will include one or more of its broker-dealer affiliates. It also expects that one or more of these affiliates may offer and sell previously issued offered securities as part of their business, and may act as principals or agents in such transactions. Lehman Brothers Holdings or such affiliates may use this prospectus and the related prospectus supplements and pricing supplements in connection with these activities.

5

---

## WHERE YOU CAN FIND MORE INFORMATION

As required by the Securities Act of 1933, Lehman Brothers Holdings filed a registration statement (No. 333-60474) relating to the securities offered by this prospectus with the Securities and Exchange Commission. This prospectus is a part of that registration statement, which includes additional information.

Lehman Brothers Holdings files annual, quarterly and current reports, proxy statements and other information with the SEC. You may read and copy any document Lehman Brothers Holdings files at the SEC's public reference rooms in Washington, D.C., New York, New York and Chicago, Illinois. You can also request copies of the documents, upon payment of a duplicating fee, by writing the Public Reference Section of the SEC. Please call the SEC at 1-800-SEC-0330 for further information on the public reference rooms. These SEC filings are also available to the public from the SEC's web site at http://www.sec.gov.

The SEC allows Lehman Brothers Holdings to "incorporate by reference" the information it files with the SEC, which means that it can disclose important information to you by referring you to those documents. The information incorporated by reference is considered to be part of this prospectus. Information that Lehman Brothers Holdings files later with the SEC will automatically update information in this prospectus. In all cases, you should rely on the later information over different information included in this prospectus or the prospectus supplement. Lehman Brothers Holdings incorporates by reference the documents listed below and any future filings made with the SEC under Section 13(a), 13(c), 14, or 15(d) of the Securities Exchange Act of 1934:

- Annual Report on Form 10-K for the year ended November 30, 2000, filed with the SEC on February 28, 2001;

- Amendment No. 1 to Annual Report on Form 10-K for the year ended November 30, 2000, filed with the SEC on March 9, 2001;

- Quarterly Report on Form 10-Q for the quarter ended February 28, 2001, filed with the SEC on April 16, 2001;

- Current Reports on Form 8-K, filed with the SEC on January 4, January 5, February 27, March 13, March 21, April 26 (two filings), May 2, May 22, June 1 and June 14, 2001; and

- Registration Statement on Form 8-A, filed on April 29, 1994.

All documents Lehman Brothers Holdings files pursuant to Section 13(a), 13(c), 14 or 15(d) of the Exchange Act after the date of this prospectus and before the later of (1) the completion of the offering of the securities described in this prospectus and (2) the date affiliates of Lehman Brothers Holdings stop offering securities pursuant to this prospectus shall

be incorporated by reference in this prospectus from the date of filing of such documents.

You may request a copy of these filings, at no cost, by writing or telephoning Lehman Brothers Holdings at the following address:

> Controller's Office
> Lehman Brothers Holdings Inc.
> Three World Financial Center
> New York, New York 10285
> (212) 526-0660

---

**You should rely only on the information provided in this prospectus and the prospectus supplement, as well as the information incorporated by reference. Lehman Brothers Holdings has not authorized anyone to provide you with different information. Lehman Brothers Holdings is not making an offer of these securities in any jurisdiction where the offer is not permitted. You should not assume that the information in this prospectus, the prospectus supplement or any documents incorporated by reference is accurate as of any date other than the date of the applicable document.**

6

---

## USE OF PROCEEDS AND HEDGING

*General.*    Lehman Brothers Holdings will use the proceeds it receives from the sale of the offered securities for general corporate purposes, principally to:

- fund the business of its operating units;

- fund investments in, or extensions of credit or capital contributions to, its subsidiaries; and

- lengthen the average maturity of liabilities, by reducing short-term liabilities or re-funding maturing indebtedness.

Lehman Brothers Holdings expects to incur additional indebtedness in the future to fund its businesses. Lehman Brothers Holdings or an affiliate may enter into one or more swap agreements in connection with sales of the offered securities and may earn additional income from those transactions.

*Hedging.*    Lehman Brothers Holdings or its subsidiaries may use all or some of the proceeds received from the sale of offered securities to purchase or maintain positions in securities or other assets that may underlie any offered securities, or in securities or other assets that may be used to determine an index or indices that the securities may be linked to. Lehman Brothers Holdings or its subsidiaries may also purchase or maintain positions in options, futures contracts, forward contracts or swaps, or options on such securities, or other derivative or similar instruments relating to any such securities, assets or indices. Lehman Brothers Holdings may also use the proceeds to pay the costs and expenses of hedging any currency, interest rate or other risk relating to offered securities.

Lehman Brothers Holdings expects that it or its subsidiaries will increase or decrease their initial hedging position over time using techniques which help evaluate the size of any hedge based upon a variety of factors affecting the value of the underlying securities, assets or indices. These factors may include the history of price changes in those underlying securities, assets or indices and the time remaining to maturity. Lehman Brothers Holdings may take long or short positions in undertaking any such hedging. These hedging activities may occur from time to time before the offered securities mature and will depend on market conditions.

In addition, Lehman Brothers Holdings or its subsidiaries may purchase or otherwise acquire long or short positions in the offered securities themselves from time to time and may, in their sole discretion, hold, resell, exercise, cancel or retire

such offered securities. Lehman Brothers Holdings or its subsidiaries may also take hedging positions in other types of appropriate financial instruments that may become available in the future.

If Lehman Brothers Holdings or its subsidiaries have long hedge positions, they may liquidate all or a portion of their holdings at or about the time of the maturity of the offered securities. The aggregate amount and type of such positions are likely to vary over time depending on future market conditions and other factors. Lehman Brothers Holdings is only able to determine profits or losses from any such position when the position is closed out and any offsetting position or positions are taken into account.

Lehman Brothers Holdings has no reason to believe that its hedging activities will have a material impact on the price of such options, swaps, futures contracts, options on the foregoing, or other derivative or similar instruments, or on the value of the underlying securities, assets or indices. However, Lehman Brothers Holdings cannot guarantee to you that its hedging activities will not affect such prices or value.

7

## RATIO OF EARNINGS TO FIXED CHARGES AND OF EARNINGS TO COMBINED FIXED CHARGES AND PREFERRED STOCK DIVIDENDS

| | Year Ended November 30, | | | | | Three Months Ended February 28, 2001 |
|---|---|---|---|---|---|---|
| | 1996 | 1997 | 1998 | 1999 | 2000 | |
| Ratio of Earnings to Fixed Charges | 1.06 | 1.07 | 1.07 | 1.12 | 1.14 | 1.12 |
| Ratio of Earnings to Combined Fixed Charges and Preferred Stock Dividends | 1.05 | 1.06 | 1.06 | 1.10 | 1.12 | 1.11 |

## DESCRIPTION OF DEBT SECURITIES

Please note that in this section entitled "Description of Debt Securities," references to Lehman Brothers Holdings refer only to Lehman Brothers Holdings and not to its consolidated subsidiaries. Also, in this section, references to "holders" mean those who own debt securities registered in their own names, on the books that Lehman Brothers Holdings or the trustee maintains for this purpose, and not those who own beneficial interests in debt securities registered in street name or in debt securities issued in book-entry form through one or more depositaries. Owners of beneficial interests in the debt securities should read the section below entitled "Book-Entry Procedures and Settlement."

**General**

The debt securities offered by this prospectus will be unsecured obligations of Lehman Brothers Holdings and will be either senior or subordinated debt. Senior debt will be issued under a senior debt indenture. Subordinated debt will be issued under a subordinated debt indenture. The senior debt indenture and the subordinated debt indenture are sometimes referred to in this prospectus individually as an "indenture" and collectively as the "indentures." The indentures (including all amendments and a separate related document containing standard multiple series indenture provisions) have been filed with the SEC and are incorporated by reference in the registration statement of which this prospectus forms a part. You can obtain copies of the indentures by following the directions on page 6, or by contacting the applicable indenture trustee.

A form of each debt security, reflecting the particular terms and provisions of a series of offered debt securities, has been filed with the SEC or will be filed with the SEC at the time of the offering and incorporated by reference in the registration statement of which this prospectus forms a part. You can obtain a copy of any form of debt security when it has been filed by following the directions on page 6 or by contacting the applicable indenture trustee.

The following briefly summarizes the material provisions of the indentures and the debt securities, other than pricing

and related terms disclosed for a particular issuance in an accompanying prospectus supplement. You should read the more detailed provisions of the applicable indenture, including the defined terms, for provisions that may be important to you. You should also read the particular terms of a series of debt securities, which will be described in more detail in an accompanying prospectus supplement. So that you may easily locate the more detailed provisions, the numbers in parentheses below refer to sections in the applicable indenture or, if no indenture is specified, to sections in each of the indentures. Wherever particular sections or defined terms of the applicable indenture are referred to, such sections or defined terms are incorporated into this prospectus by reference, and the statement in this prospectus is qualified by that reference.

Unless otherwise provided for a particular issuance in an accompanying prospectus supplement, the trustee under the senior debt indenture will be Citibank, N.A., and the trustee under the subordinated debt indenture will be The Chase Manhattan Bank.

8

The indentures provide that unsecured senior or subordinated debt securities of Lehman Brothers Holdings may be issued in one or more series, with different terms, in each case as authorized from time to time by Lehman Brothers Holdings. Lehman Brothers Holdings also has the right to "reopen" a previous issue of a series of debt securities by issuing additional debt securities of such series.

## Types of Debt Securities

Lehman Brothers Holdings may issue fixed rate debt securities, floating rate debt securities or indexed debt securities.

### Fixed and Floating Rate Debt Securities

Fixed rate debt securities will bear interest at a fixed rate described in the prospectus supplement. This type includes zero coupon debt securities, which bear no interest and are often issued at a price lower than the principal amount. Federal income tax consequences and other special considerations applicable to any debt securities issued by Lehman Brothers Holdings at a discount will be described in the applicable prospectus supplement.

Upon the request of the holder of any floating rate debt security, the calculation agent will provide the interest rate then in effect for that debt security, and, if determined, the interest rate that will become effective on the next interest reset date. The calculation agent's determination of any interest rate, and its calculation of the amount of interest for any interest period, will be final and binding in the absence of manifest error.

All percentages resulting from any interest rate calculation relating to a debt security will be rounded upward or downward, as appropriate, to the next higher or lower one hundred-thousandth of a percentage point. All amounts used in or resulting from any calculation relating to a debt security will be rounded upward or downward, as appropriate, to the nearest cent, in the case of U.S. dollars, or to the nearest corresponding hundredth of a unit, in the case of a currency other than U.S. dollars, with one-half cent or one-half of a corresponding hundredth of a unit or more being rounded upward.

In determining the base rate that applies to a floating rate debt security during a particular interest period, the calculation agent may obtain rate quotes from various banks or dealers active in the relevant market, as described in the prospectus supplement. Those reference banks and dealers may include the calculation agent itself and its affiliates, as well as any underwriter, dealer or agent participating in the distribution of the relevant floating rate debt securities and its affiliates, and they may include affiliates of Lehman Brothers Holdings.

### Indexed Debt Securities

Lehman Brothers Holdings may also offer indexed debt securities, which may be fixed or floating rate debt securities or bear no interest. The particular terms of any offered indexed debt securities will be described in detail in an accompanying prospectus supplement.

## Information in the Prospectus Supplement

The prospectus supplement for any offered series of debt securities will describe the following terms, as applicable:

- the title;

- whether senior or subordinated debt;

- the total principal amount offered;

9

---

- the percentage of the principal amount at which the securities will be sold and, if applicable, the method of determining the price;

- the maturity date or dates;

- whether the debt securities are fixed rate debt securities, floating rate debt securities or indexed debt securities;

- if the debt securities are fixed rate debt securities, the yearly rate at which the debt security will bear interest, if any, and the interest payment dates;

- if the debt security is an original issue discount debt security, the yield to maturity;

- if the debt securities are floating rate debt securities, the interest rate basis; any applicable index currency or maturity, spread or spread multiplier or initial, maximum or minimum rate; the interest reset, determination, calculation and payment dates; and the day count used to calculate interest payments for any period;

- the date or dates from which any interest will accrue, or how such date or dates will be determined, and the interest payment dates and any related record dates;

- if other than in United States dollars, the currency or currency unit in which payment will be made;

- any provisions for the payment of additional amounts for taxes;

- the denominations in which the currency or currency unit of the securities will be issuable if other than denominations of $1,000 and integral multiples thereof;

- the terms and conditions on which the securities may be redeemed at the option of Lehman Brothers Holdings;

- any obligation of Lehman Brothers Holdings to redeem, purchase or repay the securities at the option of a holder upon the happening of any event and the terms and conditions of redemption, purchase or repayment;

- any provisions for the discharge of Lehman Brothers Holdings' obligations relating to the securities by deposit of funds or United States government obligations;

- the names and duties of any co-trustees, depositaries, authenticating agents, calculation agents, paying agents, transfer agents or registrars for the debt securities;

- any material provisions of the applicable indenture described in this prospectus that do not apply to the securities; and

- any other specific terms of the securities.

The terms on which a series of debt securities may be convertible into or exchangeable for other securities of Lehman Brothers Holdings or any other entity will be set forth in the prospectus supplement relating to such series. Such terms will include provisions as to whether conversion or exchange is mandatory, at the option of the holder or at the option of Lehman Brothers Holdings. The terms may include provisions pursuant to which the number of other securities to be received by the holders of such series of debt securities may be adjusted.

The debt securities will be issued only in registered form. As currently anticipated, debt securities of a series will trade in book-entry form, and global notes will be issued in physical (paper) form, as described below under "Book-Entry Procedures and Settlement." Unless otherwise provided in the accompanying prospectus supplement, debt securities denominated in United States dollars will be issued only in denominations of $1,000 and integral multiples thereof. The prospectus supplement

10

relating to offered securities denominated in a foreign or composite currency will specify the denomination of the offered securities.

The debt securities may be presented for exchange, and debt securities other than a global security may be presented for registration of transfer, at the principal corporate trust office of the relevant trustee in New York City. Holders will not have to pay any service charge for any registration of transfer or exchange of debt securities, but Lehman Brothers Holdings may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection with such registration of transfer (Section 305).

### Payment and Paying Agents

Distributions on the debt securities other than those represented by global notes will be made in the designated currency against surrender of the debt securities at the principal corporate trust office of the relevant trustee in New York City. Payment will be made to the registered holder at the close of business on the record date for such payment. Interest payments will be made at the principal corporate trust office of the relevant trustee in New York City, or by a check mailed to the holder at his registered address. Payments in any other manner will be specified in the prospectus supplement (Sections 307 and 1002).

### Calculation Agents

Calculations relating to floating rate debt securities and indexed debt securities will be made by the calculation agent, an institution that Lehman Brothers Holdings appoints as its agent for this purpose. That institution may include any affiliate of Lehman Brothers Holdings, such as Lehman Brothers Inc. Lehman Brothers Holdings may appoint a different institution to serve as calculation agent from time to time after the original issue date of the debt security without your consent and without notifying you of the change. The initial calculation agent will be identified in the prospectus supplement.

### Senior Debt

The senior debt securities will be issued under the senior debt indenture and will rank on an equal basis with all other unsecured debt of Lehman Brothers Holdings except subordinated debt.

### Subordinated Debt

The subordinated debt securities will be issued under the subordinated debt indenture and will rank subordinated and junior in right of payment, to the extent set forth in the subordinated debt indenture, to all "senior debt" (as defined below) of Lehman Brothers Holdings.

If Lehman Brothers Holdings defaults in the payment of any principal of, or premium, if any, or interest on any senior debt when it becomes due and payable after any applicable grace period, then, unless and until the default is cured or waived or ceases to exist, Lehman Brothers Holdings cannot make a payment on account of or redeem or otherwise acquire the subordinated debt securities.

If there is any insolvency, bankruptcy, liquidation or other similar proceeding relating to Lehman Brothers Holdings, its creditors or its property, then all senior debt must be paid in full before any payment may be made to any holders of subordinated debt securities.

Furthermore, if Lehman Brothers Holdings defaults in the payment of the principal of and accrued interest on any subordinated debt securities that is declared due and payable upon an event of default under the subordinated debt indenture, holders of all senior debt will first be entitled to receive payment in full in cash before holders of such debt can receive any payments.

11

"Senior debt" means:

(1)    the principal, premium, if any, and interest in respect of (A) indebtedness of Lehman Brothers Holdings for money borrowed and (B) indebtedness evidenced by securities, notes, debentures, bonds or other similar instruments issued by Lehman Brothers Holdings, including the senior debt securities;

(2)    all capitalized lease obligations of Lehman Brothers Holdings;

(3)    all obligations of Lehman Brothers Holdings representing the deferred purchase price of property; and

(4)    all deferrals, renewals, extensions and refundings of obligations of the type referred to in clauses (1) through (3);

but senior debt does not include:

(a)    subordinated debt securities;

(b)    any indebtedness that by its terms is subordinated to, or ranks on an equal basis with, subordinated debt securities;

(c)    indebtedness for goods or materials purchased in the ordinary course of business or for services obtained in the ordinary course of business or indebtedness consisting of trade payables; and

(d)    indebtedness that is subordinated to an obligation of Lehman Brothers Holdings of the type specified in clauses (1) through (4) above (Subordinated Debt Indenture, Section 1401).

The effect of clause (d) is that Lehman Brothers Holdings may not issue, assume or guarantee any indebtedness for money borrowed which is junior to the senior debt securities and senior to the subordinated debt securities.

## Covenants

*Limitations on Liens.*   The indentures provide that Lehman Brothers Holdings will not, and will not permit any designated subsidiary to, incur, issue, assume or guarantee any indebtedness for money borrowed if such indebtedness is secured by a pledge of, lien on, or security interest in any shares of common stock of any designated subsidiary, without providing that each series of debt securities and, at Lehman Brothers Holdings' option, any other indebtedness ranking equally and ratably with such indebtedness, is secured equally and ratably with (or prior to) such other secured indebtedness (Section 1005).

"Designated subsidiary" means any subsidiary of Lehman Brothers Holdings, the consolidated net worth of which represents at least 5% of the consolidated net worth of Lehman Brothers Holdings. As of February 28, 2001, the designated subsidiaries were Lehman Brothers Bancorp Inc., Lehman Brothers Bank, FSB, Lehman Brothers Inc., Lehman Brothers Holdings Plc, Lehman Brothers (International) Europe, Lehman Brothers Japan Inc., Lehman Brothers U.K. Holdings (Delaware) Inc., Lehman Brothers UK Holdings Ltd., Lehman Commercial Paper Inc., LCPI Properties Inc., LW-LP Inc., Lehman Re Ltd. and Structured Asset Securities Corp. (Section 101).

*Limitations on Mergers and Sales of Assets.*    The indentures provide that Lehman Brothers Holdings will not merge or consolidate or transfer or lease all or substantially all its assets, and another person may not transfer or lease all or substantially all of its assets to Lehman Brothers Holdings unless:

- either (1) Lehman Brothers Holdings is the continuing corporation, or (2) the successor corporation, if other than Lehman Brothers Holdings, is a U.S. corporation and expressly

12

---

assumes by supplemental indenture the obligations evidenced by the securities issued pursuant to the indenture and

- immediately after the transaction, there would not be any default in the performance of any covenant or condition of the indenture (Section 801).

Other than the restrictions described above, the indentures do not contain any covenants or provisions that would protect holders of the debt securities in the event of a highly leveraged transaction.

## Modification of the Indentures

Under the indentures, Lehman Brothers Holdings and the relevant trustee can enter into supplemental indentures to establish the form and terms of any new series of debt securities without obtaining the consent of any holder of debt securities (Section 901).

Lehman Brothers Holdings and the trustee may, with the consent of the holders of at least $66^2/3\%$ in aggregate principal amount of the debt securities of a series, modify the applicable indenture or the rights of the holders of the securities of such series to be affected.

No such modification may, without the consent of the holder of each security so affected:

- extend the fixed maturity of any such securities,

- reduce the rate or change the time of payment of interest on such securities,

- reduce the principal amount of such securities or the premium, if any, on such securities,

- change any obligation of Lehman Brothers Holdings to pay additional amounts,

- reduce the amount of the principal payable on acceleration of any securities issued originally at a discount,

- adversely affect the right of repayment or repurchase at the option of the holder,

- reduce or postpone any sinking fund or similar provision,

- change the currency or currency unit in which any such securities are payable or the right of selection thereof,

- impair the right to sue for the enforcement of any such payment on or after the maturity of such securities,

- reduce the percentage of securities referred to above whose holders need to consent to the modification or a waiver without the consent of such holders,

- change any obligation of Lehman Brothers Holdings to maintain an office or agency (Section 902).

## Defaults

Each indenture provides that events of default regarding any series of debt securities will be:

- failure to pay required interest on any debt security of such series for 30 days;

- failure to pay principal or premium, if any, on any debt security of such series when due;

- failure to make any required scheduled installment payment for 30 days on debt securities of such series;

13

- failure to perform for 90 days after notice any other covenant in the relevant indenture other than a covenant included in the relevant indenture solely for the benefit of a series of debt securities other than such series; and

- certain events of bankruptcy or insolvency, whether voluntary or not (Section 501).

If an event of default regarding debt securities of any series issued under the indentures should occur and be continuing, either the trustee or the holders of 25% in the principal amount of outstanding debt securities of such series may declare each debt security of that series due and payable. Lehman Brothers Holdings is required to file annually with the trustee a statement of an officer as to the fulfillment by Lehman Brothers Holdings of its obligations under the indenture during the preceding year (Section 1006).

No event of default regarding one series of debt securities issued under an indenture is necessarily an event of default regarding any other series of debt securities.

Holders of a majority in principal amount of the outstanding debt securities of any series will be entitled to control certain actions of the trustee under the indentures and to waive past defaults regarding such series (Sections 502 and 512). The trustee generally will not be requested, ordered or directed by any of the holders of debt securities, unless one or more of such holders shall have offered to the trustee reasonable security or indemnity (Section 603).

If an event of default occurs and is continuing regarding a series of debt securities, the trustee may use any sums that it holds under the relevant indenture for its own reasonable compensation and expenses incurred prior to paying the holders of debt securities of such series (Section 506).

Before any holder of any series of debt securities may institute action for any remedy, except payment on such holder's debt security when due, the holders of not less than 25% in principal amount of the debt securities of that series outstanding must request the trustee to take action. Holders must also offer and give the satisfactory security and indemnity against liabilities incurred by the trustee for taking such action (Sections 502, 507 and 603).

## Defeasance

Except as may otherwise be set forth in an accompanying prospectus supplement, after Lehman Brothers Holdings has deposited with the trustee, cash or government securities, in trust for the benefit of the holders sufficient to pay the principal of, premium, if any, and interest on the debt securities of such series when due, then:

- if the terms of the debt securities so provide, Lehman Brothers Holdings will be deemed to have paid and satisfied its obligations on all outstanding debt securities of such series, which is known as "defeasance and discharge" (Section 401); or

- Lehman Brothers Holdings will cease to be under any obligation, other than to pay when due the principal of, premium, if any, and interest on such debt securities, relating to the debt securities of such series, which is known as "covenant defeasance" (Section 1009).

When there is a defeasance and discharge, (1) the applicable indenture will no longer govern the debt securities of such series, (2) Lehman Brothers Holdings will no longer be liable for payment and (3) the holders of such debt securities will be entitled only to the deposited funds. When there is a covenant defeasance, however, Lehman Brothers Holdings will continue to be obligated to make payments when due if the deposited funds are not sufficient.

For a discussion of the principal United States federal income tax consequences of covenant defeasance and defeasance and discharge, see "United States Federal Income Tax Consequences—Tax Consequences of Defeasance" below.

14

## Payment Of Additional Amounts

If so noted in the applicable prospectus supplement for a particular issuance, Lehman Brothers Holdings will pay to the holder of any debt security who is a "United States Alien" (as defined below) such additional amounts as may be necessary so that every net payment of principal of and interest on the debt security, after deduction or withholding for or on account of any present or future tax, assessment or other governmental charge imposed upon the holder by the United States or any taxing authority thereof or therein, will not be less than the amount provided in such debt security to be then due and payable. Lehman Brothers Holdings will not be required, however, to make any payment of additional amounts for or on account of:

- any tax, assessment or other governmental charge that would not have been imposed but for (1) the existence of any present or former connection between such holder (or between a fiduciary, settlor, beneficiary of, member or shareholder of, or possessor of a power over, such holder, if such holder is an estate, trust, partnership or corporation) and the United States including, without limitation, such holder (or such fiduciary, settlor, beneficiary, member, shareholder or possessor), being or having been a citizen or resident or treated as a resident of the United States or being or having been engaged in trade or business or present in the United States, or (2) the presentation of a debt security for payment after 10 days;

- any estate, inheritance, gift, sales, transfer, excise, personal property or similar tax, assessment or other governmental charge;

- any tax, assessment or other governmental charge imposed by reason of such holder's past or present status as a passive foreign investment company, a controlled foreign corporation, a personal holding company or foreign personal holding company with respect to the United States, or as a corporation which accumulates earnings to avoid United States federal income tax;

- any tax, assessment or other governmental charge which is payable otherwise than by withholding from payment of principal of, or interest on, such debt security;

- any tax, assessment or other governmental charge required to be withheld by any paying agent from any payment of principal of, or interest on, any debt security if such payment can be made without withholding by any other paying agent;

- any tax, assessment or other governmental charge that is imposed or withheld by reason of the failure to comply with certification, information, documentation or other reporting requirements concerning the nationality, residence, identity or connections with the United States of the holder or beneficial owner of such debt security, if such compliance is required by statute or by regulation of the United States Treasury Department as a precondition to relief or exemption from such tax, assessment or other governmental charge;

- any tax, assessment or other governmental charge imposed on interest received by (1) a 10% shareholder (as defined in Section 871(h)(3)(B) of the Code and the regulations that may be promulgated thereunder) of Lehman Brothers Holdings, or (2) a controlled foreign corporation with respect to Lehman Brothers Holdings within the meaning of the Code; or

- any combinations of items identified in the bullet points above.

In addition, Lehman Brothers Holdings will not be required to pay any additional amounts to any holder who is a

fiduciary or partnership or other than the sole beneficial owner of such debt security to the extent that a beneficiary or settlor with respect to such fiduciary, or a member of such partnership or a beneficial owner thereof would not have been entitled to the payment of such additional amounts had such beneficiary, settlor, member or beneficial owner been the holder of the debt security.

15

The term "United States Alien" means any corporation, partnership, individual or fiduciary that is, as to the United States, a foreign corporation, a nonresident alien individual, a nonresident fiduciary of a foreign estate or trust, or a foreign partnership one or more of the members of which is, as to the United States, a foreign corporation, a nonresident alien individual or a nonresident fiduciary of a foreign estate or trust.

## Redemption Upon a Tax Event

If so noted in the applicable prospectus supplement for a particular issuance, the debt securities may be redeemed at the option of Lehman Brothers Holdings in whole, but not in part, on not more than 60 days' and not less than 30 days' notice, at a redemption price equal to 100% of their principal amount, if Lehman Brothers Holdings determines that as a result of a "change in tax law" (as defined below):

- Lehman Brothers Holdings has or will become obligated to pay additional amounts as described under the heading "—Payment of Additional Amounts" on any debt security, or

- there is a substantial possibility that Lehman Brothers Holdings will be required to pay such additional amounts.

A "change in tax law" that would trigger the provisions of the preceding paragraph is any change in or amendment to the laws, treaties, regulations or rulings of the United States or any political subdivision or taxing authority thereof, or any proposed change in the laws, treaties, regulations or rulings, or any change in the official application, enforcement or interpretation of the laws, treaties, regulations or rulings (including a holding by a court of competent jurisdiction in the United States) or any other action (other than an action predicated on law generally known on or before the date of the applicable prospectus supplement for the particular issuance of debt securities to which this section applies except for proposals before the Congress prior to that date) taken by any taxing authority or a court of competent jurisdiction in the United States, or the official proposal of the action, whether or not the action or proposal was taken or made with respect to Lehman Brothers Holdings.

Prior to the publication of any notice of redemption, Lehman Brothers Holdings shall deliver to the Trustee (1) an officers' certificate stating that Lehman Brothers Holdings is entitled to effect the aforementioned redemption and setting forth a statement of facts showing that the conditions precedent to the right of Lehman Brothers Holdings so to redeem have occurred, and (2) an opinion of counsel to such effect based on such statement of facts.

## Governing Law

Unless otherwise stated in the prospectus supplement, the debt securities and the indentures will be governed by New York law.

## Concerning the Trustees

Lehman Brothers Holdings has had and may continue to have banking and other business relationships with the trustees in the ordinary course of business.

16

## DESCRIPTION OF COMMON STOCK

As of the date of this prospectus, Lehman Brothers Holdings' authorized capital stock includes 600 million shares of common stock. The following briefly summarizes the material terms of Lehman Brothers Holdings' common stock. You should read the more detailed provisions of Lehman Brothers Holdings' certificate of incorporation and by-laws for provisions that may be important to you. You can obtain copies of these documents by following the directions on page 6.

### Common Stock

As of March 31, 2001, Lehman Brothers Holdings had outstanding 246,491,672 shares of its common stock. Each holder of common stock is entitled to one vote per share for the election of directors and for all other matters to be voted on by stockholders. Except as otherwise provided by law, the holders of common stock vote as one class together with holders of the company's Redeemable Voting Preferred Stock, which is described below. Holders of common stock may not cumulate their votes in the election of directors, and are entitled to share equally in the dividends that may be declared by the board of directors, but only after payment of dividends required to be paid on outstanding shares of preferred stock.

Upon voluntary or involuntary liquidation, dissolution or winding up of Lehman Brothers Holdings, holders of common stock share ratably in the assets remaining after payments to creditors and provision for the preference of any preferred stock. There are no preemptive or other subscription rights, conversion rights or redemption or scheduled installment payment provisions relating to shares of common stock. All of the outstanding shares of common stock are fully paid and nonassessable. The transfer agent and registrar for the common stock is The Bank of New York. The common stock is listed on the New York Stock Exchange and the Pacific Exchange.

### Delaware Law, Certificate of Incorporation and By-Law Provisions That May Have an Antitakeover Effect

The following discussion concerns certain provisions of Delaware law and Lehman Brothers Holdings' certificate of incorporation and by-laws that may delay, deter or prevent a tender offer or takeover attempt that a stockholder might consider to be in its best interest, including offers or attempts that might result in a premium being paid over the market price for its shares.

*Delaware Law.*    Lehman Brothers Holdings is governed by the provisions of Section 203 of the Delaware General Corporation Law. In general, Section 203 prohibits a public Delaware corporation from engaging in a "business combination" with an "interested stockholder" for a period of three years after the date of the transaction in which the person became an interested stockholder, unless:

- prior to the business combination the corporation's board of directors approved either the business combination or the transaction which resulted in the stockholder becoming an interested stockholder; or

- upon consummation of the transaction which resulted in the stockholder becoming an interested stockholder, the stockholder owned at least 85% of the outstanding voting stock of the corporation at the time the transaction commenced, excluding for the purpose of determining the number of shares outstanding those shares owned by the corporation's officers and directors and by employee stock plans in which employee participants do not have the right to determine confidentially whether shares held subject to the plan will be tendered in a tender or exchange offer; or

17

- at or subsequent to the time, the business combination is approved by the corporation's board of directors and authorized at an annual or special meeting of its stockholders, and not by written consent, by the affirmative vote of at least $66^2/_3\%$ of its outstanding voting stock which is not owned by the interested stockholder.

A "business combination" includes mergers, asset sales or other transactions resulting in a financial benefit to the stockholder. An "interested stockholder" is a person who, together with affiliates and associates, owns (or within three years did own) 15% or more of the corporation's voting stock.

*Certificate of Incorporation and By-Laws.*    Lehman Brothers Holdings' certificate of incorporation provides that its board of directors be classified into three classes of directors, each class consisting of approximately one-third of the directors. Directors serve a three-year term, with a different class of directors up for election each year. Under Delaware law, directors of a corporation with a classified board may be removed only for cause unless the corporation's certificate of incorporation provides otherwise. Lehman Brothers Holdings' certificate of incorporation does not provide otherwise. Its certificate of incorporation also provides that any action required or permitted to be taken by its stockholders must be effected at a duly called annual or special meeting and may not be taken by written consent.

Lehman Brothers Holdings' by-laws provide that special meetings of stockholders may be called only by the Chairman of the Board, the Chief Executive Officer, the President in the absence or inability of the Chairman of the Board and the Chief Executive Officer, or the Secretary at the request of the board of directors. Written notice of a special meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called must be given between 10 and 60 days before the date of the meeting, and only business specified in the notice may come before the meeting. In addition, Lehman Brothers Holdings' by-laws provide that directors be elected by a plurality of votes cast at an annual meeting and does not include a provision for cumulative voting for directors. Under cumulative voting, a minority stockholder holding a sufficient percentage of a class of shares may be able to ensure the election of one or more directors.

18

---

## DESCRIPTION OF PREFERRED STOCK

As of the date of this Prospectus, Lehman Brothers Holdings' authorized capital stock includes 38 million shares of preferred stock. The following briefly summarizes the material terms of Lehman Brothers Holdings' preferred stock, other than pricing and related terms disclosed for a particular issuance in an accompanying prospectus supplement. You should read the particular terms of any series of preferred stock offered by Lehman Brothers Holdings which will be described in more detail in the prospectus supplement prepared for such series, together with the more detailed provisions of Lehman Brothers Holdings' restated certificate of incorporation and the certificate of designation relating to each particular series of preferred stock, for provisions that may be important to you. The certificate of designation relating to a particular series of preferred stock offered by way of an accompanying prospectus supplement and this prospectus will be filed as an exhibit to a Form 8-K or similar document incorporated by reference in the registration statement of which this prospectus forms a part. You can obtain a copy of this document by following the directions on page 6. The prospectus supplement will also state whether any of the terms summarized below do not apply to the series of preferred stock being offered. For a description of Lehman Brothers Holdings' outstanding preferred stock, see below under "Outstanding Preferred Stock."

**General**

Under Lehman Brothers Holdings' certificate of incorporation, the board of directors of Lehman Brothers Holdings is authorized to issue shares of preferred stock in one or more series, and to establish from time to time a series of preferred stock with the following terms specified:

- the number of shares to be included in the series;

- the designation, powers, preferences and rights of the shares of the series; and

- the qualifications, limitations or restrictions of such series, except as otherwise stated in the certificate of incorporation.

Prior to the issuance of any series of preferred stock, the board of directors of Lehman Brothers Holdings will adopt resolutions creating and designating the series as a series of preferred stock and the resolutions will be filed in a certificate of designation as an amendment to the certificate of incorporation. The term "board of directors of Lehman Brothers Holdings" includes any duly authorized committee.

The rights of holders of the preferred stock offered may be adversely affected by the rights of holders of any shares of preferred stock that may be issued in the future, provided that the future issuances are first approved by the holders of the class(es) of preferred stock adversely affected. The board of directors may cause shares of preferred stock to be issued in

public or private transactions for any proper corporate purpose. Examples of proper corporate purposes include issuances to obtain additional financing in connection with acquisitions or otherwise, and issuances to officers, directors and employees of Lehman Brothers Holdings and its subsidiaries pursuant to benefit plans or otherwise. Shares of preferred stock issued by Lehman Brothers Holdings may have the effect of rendering more difficult or discouraging an acquisition of Lehman Brothers Holdings deemed undesirable by the board of directors of Lehman Brothers Holdings.

The preferred stock will be, when issued, fully paid and nonassessable. Holders of preferred stock will not have any preemptive or subscription rights to acquire more stock of Lehman Brothers Holdings.

The transfer agent, registrar, dividend disbursing agent and redemption agent for shares of each series of preferred stock will be named in the prospectus supplement relating to such series.

19

---

### Rank

Unless otherwise specified for a particular series of preferred stock in an accompanying prospectus supplement, each series will rank on an equal basis with each other series of preferred stock and prior to the common stock as to dividends and distributions of assets.

### Dividends

Holders of each series of preferred stock will be entitled to receive cash dividends, when, as and if declared by the board of directors of Lehman Brothers Holdings out of funds legally available for dividends. The rates and dates of payment of dividends will be set forth in the prospectus supplement relating to each series of preferred stock. Dividends will be payable to holders of record of preferred stock as they appear on the books of Lehman Brothers Holdings or, if applicable, the records of the depositary referred to below under "Description of Depositary Shares," on the record dates fixed by the board of directors. Dividends on any series of preferred stock may be cumulative or noncumulative.

Lehman Brothers Holdings may not declare, pay or set apart for payment dividends on the preferred stock unless full dividends on any other series of preferred stock that ranks on an equal or senior basis have been paid or sufficient funds have been set apart for payment for

- all prior dividend periods of the other series of preferred stock that pay dividends on a cumulative basis; or

- the immediately preceding dividend period of the other series of preferred stock that pay dividends on a noncumulative basis.

Partial dividends declared on shares of preferred stock and any other series of preferred stock ranking on an equal basis as to dividends will be declared pro rata. A pro rata declaration means that the ratio of dividends declared per share to accrued dividends per share will be the same for both series of preferred stock.

Similarly, Lehman Brothers Holdings may not declare, pay or set apart for payment non-stock dividends or make other payments on the common stock or any other stock of Lehman Brothers Holdings ranking junior to the preferred stock until full dividends on the preferred stock have been paid or set apart for payment for

- all prior dividend periods if the preferred stock pays dividends on a cumulative basis; or

- the immediately preceding dividend period if the preferred stock pays dividends on a noncumulative basis.

### Conversion and Exchange

The prospectus supplement for any series of preferred stock will state the terms, if any, on which shares of that series are

convertible into or exchangeable for shares of common stock of Lehman Brothers Holdings or any other entity.

**Redemption**

If so specified in the applicable prospectus supplement, a series of preferred stock may be redeemable at any time, in whole or in part, at the option of Lehman Brothers Holdings or the holder thereof and may be mandatorily redeemed.

Any partial redemptions of preferred stock will be made in a way that the board of directors decides is equitable.

20

---

Unless Lehman Brothers Holdings defaults in the payment of the redemption price, dividends will cease to accrue after the redemption date on shares of preferred stock called for redemption and all rights of holders of such shares will terminate except for the right to receive the redemption price.

**Liquidation Preference**

Upon any voluntary or involuntary liquidation, dissolution or winding up of Lehman Brothers Holdings, holders of each series of preferred stock will be entitled to receive distributions upon liquidation in the amount set forth in the prospectus supplement relating to such series of preferred stock, plus an amount equal to any accrued and unpaid dividends. Such distributions will be made before any distribution is made on any securities ranking junior relating to liquidation, including common stock.

If the liquidation amounts payable relating to the preferred stock of any series and any other securities ranking on a parity regarding liquidation rights are not paid in full, the holders of the preferred stock of such series and such other securities will share in any such distribution of available assets of Lehman Brothers Holdings on a ratable basis in proportion to the full liquidation preferences. Holders of such series of preferred stock will not be entitled to any other amounts from Lehman Brothers Holdings after they have received their full liquidation preference.

**Voting Rights**

The holders of shares of preferred stock will have no voting rights, except:

- as otherwise stated in the prospectus supplement;

- as otherwise stated in the certificate of designation establishing such series; or

- as required by applicable law.

**Outstanding Preferred Stock**

Set forth below is specific information concerning the various series of preferred stock that have been issued by Lehman Brothers Holdings and that are currently outstanding.

| Title of Series | Number of Shares Outstanding | Dividends per Year | | Redemption Price per Share | Date Next Redeemable by Lehman Brothers Holdings | General Voting Rights |
|---|---|---|---|---|---|---|
| Redeemable Voting Preferred Stock | 1,000 | Variable(1) | $ | 1.00 | Variable(2) | Yes(3) |
| 5.94% Cumulative Preferred Stock, Series C | 500,000 | $ 29.70 | $ | 500.00 | 05/31/08 | No |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5.67% Cumulative Preferred Stock, Series D | 40,000 | $283.50 | $ | 5,000.00 | 08/31/08 | No |
| Fixed/Adjustable Rate Cumulative Preferred Stock, Series E | 50,000 | $355.75(4) | $ | 5,000.00 | 05/31/05 | No |

(1)    The holders of the Redeemable Voting Preferred Stock (as of the date of this prospectus, The American Express Company and Nippon Life Insurance Company) are entitled to 50% of the amount by which Lehman Brothers Holdings' net income for a fiscal year exceeds $400 million, to a maximum of $50 million per year (prorated for the final dividend period, which runs from December 1, 2001 to May 31, 2002).

(2)    Redemption is mandatory on May 31, 2002. The holders also have the right to require Lehman Brothers Holdings to redeem the Redeemable Voting Preferred Stock if a Designated Event (as

21

---

defined in Lehman Brothers Holdings' certificate of incorporation) occurs, for an aggregate redemption payment of $50 million if such event occurs prior to November 30, 2001.

(3)    Holders of shares of Redeemable Voting Preferred Stock are entitled to 1,059 votes per share when voting as a class with the common stock, subject to anti-dilution adjustment. American Express has agreed that as long as it holds Redeemable Voting Preferred Stock, it will vote it in the same proportion as the common stock holders on matters voted on generally.

(4)    $355.75 until May 31, 2005; thereafter, to be determined, but in any event no less than $380.75 nor more than $680.75.

Where the above table indicates that the holders of the preferred stock have no general voting rights, this means that they do not vote on matters submitted to a vote of the common stockholders. However, the holders of this preferred stock do have other special voting rights:

- that are required by law,

- that apply if there is a default in paying dividends for the equivalent of six calendar quarters, and

- when Lehman Brothers Holdings wants to create any class of stock having a preference as to dividends or distributions of assets over such series or alter or change the provisions of the certificate of incorporation so as to adversely affect the powers, preferences or rights of the holders of such series.

Some or all of these special voting rights apply to each series of preferred stock listed above. In the event of a default in paying dividends for the equivalent of six calendar quarters, the holders of the Redeemable Voting Preferred Stock, the 5.94% Cumulative Preferred Stock, Series C, the 5.67% Cumulative Preferred Stock, Series D, and the Fixed/Adjustable Rate Cumulative Preferred Stock, Series E, have the right collectively to elect two additional directors to Lehman Brothers Holdings' board of directors until such dividends are paid.

22

---

## DESCRIPTION OF DEPOSITARY SHARES

The following briefly summarizes the material provisions of the deposit agreement and of the depositary shares and depositary receipts, other than pricing and related terms disclosed for a particular issuance in an accompanying prospectus

supplement. You should read the particular terms of any depositary shares and any depositary receipts that are offered by Lehman Brothers Holdings and any deposit agreement relating to a particular series of preferred stock which will be described in more detail in a prospectus supplement. The prospectus supplement will also state whether any of the generalized provisions summarized below do not apply to the depositary shares or depositary receipts being offered. A copy of the form of deposit agreement, including the form of depositary receipt, is incorporated by reference as an exhibit in the registration statement of which this prospectus forms a part. You can obtain copies of these documents by following the directions on page 6. You should read the more detailed provisions of the deposit agreement and the form of depositary receipt for provisions that may be important to you.

**General**

Lehman Brothers Holdings may, at its option, elect to offer fractional shares of preferred stock, rather than full shares of preferred stock. In such event, Lehman Brothers Holdings will issue receipts for depositary shares, each of which will represent a fraction of a share of a particular series of preferred stock.

The shares of any series of preferred stock represented by depositary shares will be deposited under a deposit agreement between Lehman Brothers Holdings and a bank or trust company selected by Lehman Brothers Holdings having its principal office in the United States and having a combined capital and surplus of at least $50,000,000, as preferred stock depositary. Each owner of a depositary share will be entitled to all the rights and preferences of the underlying preferred stock, including dividend, voting, redemption, conversion and liquidation rights, in proportion to the applicable fraction of a share of preferred stock represented by such depositary share.

The depositary shares will be evidenced by depositary receipts issued pursuant to the deposit agreement. Depositary receipts will be distributed to those persons purchasing the fractional shares of preferred stock in accordance with the terms of the applicable prospectus supplement.

**Dividends and Other Distributions**

The preferred stock depositary will distribute all cash dividends or other cash distributions received in respect of the deposited preferred stock to the record holders of depositary shares relating to such preferred stock in proportion to the number of such depositary shares owned by such holders.

The preferred stock depositary will distribute any property received by it other than cash to the record holders of depositary shares entitled thereto. If the preferred stock depositary determines that it is not feasible to make such distribution, it may, with the approval of Lehman Brothers Holdings, sell such property and distribute the net proceeds from such sale to such holders.

**Redemption of Preferred Stock**

If a series of preferred stock represented by depositary shares is to be redeemed, the depositary shares will be redeemed from the proceeds received by the preferred stock depositary resulting from the redemption, in whole or in part, of such series of preferred stock. The depositary shares will be redeemed by the preferred stock depositary at a price per depositary share equal to the applicable fraction of the redemption price per share payable in respect of the shares of preferred stock so redeemed.

23

Whenever Lehman Brothers Holdings redeems shares of preferred stock held by the preferred stock depositary, the preferred stock depositary will redeem as of the same date the number of depositary shares representing shares of preferred stock so redeemed. If fewer than all the depositary shares are to be redeemed, the depositary shares to be redeemed will be selected by the preferred stock depositary by lot or ratably or by any other equitable method as the preferred stock depositary may decide.

**Voting Deposited Preferred Stock**

Upon receipt of notice of any meeting at which the holders of any series of deposited preferred stock are entitled to vote,

the preferred stock depositary will mail the information contained in such notice of meeting to the record holders of the depositary shares relating to such series of preferred stock. Each record holder of such depositary shares on the record date will be entitled to instruct the preferred stock depositary to vote the amount of the preferred stock represented by such holder's depositary shares. The preferred stock depositary will try to vote the amount of such series of preferred stock represented by such depositary shares in accordance with such instructions.

Lehman Brothers Holdings will agree to take all actions that the preferred stock depositary determines as necessary to enable the preferred stock depositary to vote as instructed. The preferred stock depositary will abstain from voting shares of any series of preferred stock held by it for which it does not receive specific instructions from the holders of depositary shares representing such shares.

### Amendment and Termination of the Deposit Agreement

The form of depositary receipt evidencing the depositary shares and any provision of the deposit agreement may at any time be amended by agreement between Lehman Brothers Holdings and the preferred stock depositary. However, any amendment that materially and adversely alters any existing right of the holders of depositary shares will not be effective unless such amendment has been approved by the holders of at least a majority of the depositary shares then outstanding. Every holder of an outstanding depositary receipt at the time any such amendment becomes effective shall be deemed, by continuing to hold such depositary receipt, to consent and agree to such amendment and to be bound by the deposit agreement, which has been amended thereby. The deposit agreement may be terminated only if:

- all outstanding depositary shares have been redeemed; or

- a final distribution in respect of the preferred stock has been made to the holders of depositary shares in connection with any liquidation, dissolution or winding up of Lehman Brothers Holdings.

### Charges of Preferred Stock Depositary; Taxes and Other Governmental Charges

Lehman Brothers Holdings will pay all transfer and other taxes and governmental charges arising solely from the existence of the depositary arrangements. Lehman Brothers Holdings also will pay charges of the depositary in connection with the initial deposit of preferred stock and any redemption of preferred stock. Holders of depositary receipts will pay other transfer and other taxes and governmental charges and such other charges, including a fee for the withdrawal of shares of preferred stock upon surrender of depositary receipts, as are expressly provided in the deposit agreement to be for their accounts.

### Resignation and Removal of Depositary

The preferred stock depositary may resign at any time by delivering to Lehman Brothers Holdings notice of its intent to do so, and Lehman Brothers Holdings may at any time remove the preferred

24

stock depositary, any such resignation or removal to take effect upon the appointment of a successor preferred stock depositary and its acceptance of such appointment. Such successor preferred stock depositary must be appointed within 60 days after delivery of the notice of resignation or removal and must be a bank or trust company having its principal office in the United States and having a combined capital and surplus of at least $50,000,000.

### Miscellaneous

The preferred stock depositary will forward all reports and communications from Lehman Brothers Holdings which are delivered to the preferred stock depositary and which Lehman Brothers Holdings is required to furnish to the holders of the deposited preferred stock.

Neither the preferred stock depositary nor Lehman Brothers Holdings will be liable if it is prevented or delayed by law or any circumstances beyond its control in performing its obligations under the deposit agreement. The obligations of

Lehman Brothers Holdings and the preferred stock depositary under the deposit agreement will be limited to performance in good faith of their duties thereunder and they will not be obligated to prosecute or defend any legal proceeding in respect of any depositary shares, depositary receipts or shares of preferred stock unless satisfactory indemnity is furnished. Lehman Brothers Holdings and the preferred stock depositary may rely upon written advice of counsel or accountants, or upon information provided by holders of depositary receipts or other persons believed to be competent and on documents believed to be genuine.

## FORM, EXCHANGE AND TRANSFER

Securities will only be issued in registered form; no securities will be issued in bearer form. Lehman Brothers Holdings will issue each security other than common stock in book-entry form only, unless otherwise specified in the applicable prospectus supplement. Common stock will be issued in both certificated and book-entry form, unless otherwise specified in the applicable prospectus supplement. Securities in book-entry form will be represented by a global security registered in the name of a depositary, which will be the holder of all the securities represented by the global security. Those who own beneficial interests in a global security will do so through participants in the depositary's system, and the rights of these indirect owners will be governed solely by the applicable procedures of the depositary and its participants. Only the depositary will be entitled to transfer or exchange a security in global form, since it will be the sole holder of the security. These book-entry securities are described below under "Book-Entry Procedures and Settlement."

If any securities are issued in non-global form or cease to be book-entry securities (in the circumstances described in the next section), the following will apply to them:

- The securities will be issued in fully registered form in denominations stated in the prospectus supplement. Holders may exchange their securities for securities of the same series in smaller denominations or combined into fewer securities of the same series of larger denominations, as long as the total amount is not changed.

- Holders may exchange, transfer, present for payment or exercise their securities at the office of the relevant trustee or agent indicated in the prospectus supplement. They may also replace lost, stolen, destroyed or mutilated securities at that office. Lehman Brothers Holdings may appoint another entity to perform these functions or may perform them itself.

- Holders will not be required to pay a service charge to transfer or exchange their securities, but they may be required to pay any tax or other governmental charge associated with the transfer or exchange. The transfer or exchange, and any replacement, will be made only if Lehman Brothers Holdings' transfer agent is satisfied with the holder's proof of legal ownership. The transfer agent may also require an indemnity before replacing any securities.

25

- If Lehman Brothers Holdings has the right to redeem, accelerate or settle any securities before their maturity or expiration, and Lehman Brothers Holdings exercises that right as to less than all those securities, Lehman Brothers Holdings may block the transfer or exchange of those securities during the period beginning 15 days before the day Lehman Brothers Holdings mails the notice of exercise and ending on the day of that mailing, in order to freeze the list of holders to prepare the mailing. Lehman Brothers Holdings may also refuse to register transfers of or exchange any security selected for early settlement, except that Lehman Brothers Holdings will continue to permit transfers and exchanges of the unsettled portion of any security being partially settled.

- If fewer than all of the securities represented by a certificate that are payable or exercisable in part are presented for payment or exercise, a new certificate will be issued for the remaining amount of securities.

## BOOK-ENTRY PROCEDURES AND SETTLEMENT

Most offered securities will be book-entry (global) securities. Upon issuance, all book-entry securities will be

represented by one or more fully registered global securities, without coupons. Each global security will be deposited with, or on behalf of, The Depository Trust Company, a securities depository, and will be registered in the name of DTC or a nominee of DTC. DTC will thus be the only registered holder of these securities.

Purchasers of securities may only hold interests in the global notes through DTC if they are participants in the DTC system. Purchasers may also hold interests through a securities intermediary—banks, brokerage houses and other institutions that maintain securities accounts for customers—that has an account with DTC or its nominee. DTC will maintain accounts showing the security holdings of its participants, and these participants will in turn maintain accounts showing the security holdings of their customers. Some of these customers may themselves be securities intermediaries holding securities for their customers. Thus, each beneficial owner of a book-entry security will hold that security indirectly through a hierarchy of intermediaries, with DTC at the "top" and the beneficial owner's own securities intermediary at the "bottom."

The securities of each beneficial owner of a book-entry security will be evidenced solely by entries on the books of the beneficial owner's securities intermediary. The actual purchaser of the securities will generally not be entitled to have the securities represented by the global securities registered in its name and will not be considered the owner under the declaration. In most cases, a beneficial owner will also not be able to obtain a paper certificate evidencing the holder's ownership of securities. The book-entry system for holding securities eliminates the need for physical movement of certificates and is the system through which most publicly traded common stock is held in the United States. However, the laws of some jurisdictions require some purchasers of securities to take physical delivery of their securities in definitive form. These laws may impair the ability to transfer book-entry securities.

A beneficial owner of book-entry securities represented by a global security may exchange the securities for definitive (paper) securities only if:

- DTC is unwilling or unable to continue as depositary for such global security and Lehman Brothers Holdings does not appoint a qualified replacement for DTC within 90 days; or

- Lehman Brothers Holdings in its sole discretion decides to allow some or all book-entry securities to be exchangeable for definitive securities in registered form.

Unless we indicate otherwise, any global security that is exchangeable will be exchangeable in whole for definitive securities in registered form, with the same terms and of an equal aggregate principal amount. Definitive securities will be registered in the name or names of the person or persons

26

specified by DTC in a written instruction to the registrar of the securities. DTC may base its written instruction upon directions that it receives from its participants.

In this prospectus, for book-entry securities, references to actions taken by security holders will mean actions taken by DTC upon instructions from its participants, and references to payments and notices of redemption to security holders will mean payments and notices of redemption to DTC as the registered holder of the securities for distribution to participants in accordance with DTC's procedures.

DTC is a limited purpose trust company organized under the laws of the State of New York, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code and a "clearing agency" registered under section 17A of the Securities Exchange Act of 1934. The rules applicable to DTC and its participants are on file with the SEC.

Lehman Brothers Holdings will not have any responsibility or liability for any aspect of the records relating to, or payments made on account of, beneficial ownership interest in the book-entry securities or for maintaining, supervising or reviewing any records relating to the beneficial ownership interests.

**Clearstream and Euroclear**

Links have been established among DTC, Clearstream Banking, société anonyme, Luxembourg ("Clearstream Banking SA") and Euroclear (two international clearing systems that perform functions similar to those that DTC performs in the U.S.), to facilitate the initial issuance of book-entry securities and cross-market transfers of book-entry securities associated with secondary market trading.

Although DTC, Clearstream Banking SA and Euroclear have agreed to the procedures provided below in order to facilitate transfers, they are under no obligation to perform such procedures, and the procedures may be modified or discontinued at any time.

Clearstream Banking SA and Euroclear will record the ownership interests of their participants in much the same way as DTC, and DTC will record the aggregate ownership of each of the U.S. agents of Clearstream Banking SA and Euroclear, as participants in DTC.

When book-entry securities are to be transferred from the account of a DTC participant to the account of a Clearstream Banking SA participant or a Euroclear participant, the purchaser must send instructions to Clearstream Banking SA or Euroclear through a participant at least one business day prior to settlement. Clearstream Banking SA or Euroclear, as the case may be, will instruct its U.S. agent to receive book-entry securities against payment. After settlement, Clearstream Banking SA or Euroclear will credit its participant's account. Credit for the book-entry securities will appear on the next day (European time).

Because settlement is taking place during New York business hours, DTC participants can employ their usual procedures for sending book-entry securities to the relevant U.S. agent acting for the benefit of Clearstream Banking SA or Euroclear participants. The sale proceeds will be available to the DTC seller on the settlement date. Thus, to the DTC participant, a cross-market transaction will settle no differently than a trade between two DTC participants.

When a Clearstream Banking SA or Euroclear participant wishes to transfer book-entry securities to a DTC participant, the seller must send instructions to Clearstream Banking SA or Euroclear through a participant at least one business day prior to settlement. In these cases, Clearstream Banking SA or Euroclear will instruct its U.S. agent to transfer the book-entry securities against payment. The payment will then be reflected in the account of the Clearstream Banking SA or Euroclear participant the following day, with the proceeds back-valued to the value date (which would be the preceding day, when settlement occurs in New York). If settlement is not completed on the intended value date (i.e., the trade fails), proceeds credited to the Clearstream Banking SA or Euroclear participant's account would instead be valued as of the actual settlement date.

27

---

# UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

In the opinion of Simpson Thacher & Bartlett, our special United States tax counsel, the following discussion is an accurate summary of the material United States federal income tax consequences of the purchase, ownership and disposition of debt securities and common and preferred stock as of the date of this prospectus. Except where noted, this summary deals only with debt securities and common and preferred stock held as capital assets by United States holders and does not deal with special situations. For example, this summary does not address:

- tax consequences to holders who may be subject to special tax treatment, such as dealers in securities or currencies, financial institutions, tax-exempt entities, insurance companies, traders in securities that elect to use a mark-to-market method of accounting for their securities holdings, or persons liable for alternative minimum tax;

- tax consequences to persons holding debt securities or common or preferred stock as part of a hedging, integrated, conversion or constructive sale transaction or a straddle;

- tax consequences to United States holders of debt securities or common or preferred stock whose "functional currency" is not the U.S. dollar;

- certain expatriates who are holders of our debt securities or common or preferred stock;

- alternative minimum tax consequences, if any; or

- any state, local or foreign tax consequences.

The discussion below is based upon the provisions of the Internal Revenue Code of 1986, as amended, and regulations, rulings and judicial decisions as of the date of this prospectus. Those authorities may be changed, perhaps retroactively, so as to result in United States federal income tax consequences different from those discussed below. The discussion set forth below also assumes that all debt securities issued under this prospectus constitute debt for United States federal income tax purposes. If any debt security did not constitute debt for United States federal income tax purposes, the tax consequences of the ownership of such debt security could differ materially from the tax consequences described herein. We will summarize any special United States federal tax considerations relevant to a particular issue of the debt securities or common or preferred stock in the applicable prospectus supplement. We will also summarize certain federal income tax consequences, if any, applicable to any offering of depositary shares in the applicable prospectus supplement.

If a partnership holds our debt securities or common or preferred stock, the tax treatment of a partner will generally depend upon the status of the partner and the activities of the partnership. If you are a partner of a partnership holding our debt securities, common or preferred stock, you should consult your tax advisors.

**If you are considering the purchase of debt securities or common or preferred stock, you should consult your own tax advisors concerning the federal income tax consequences to you and any consequences arising under the laws of any other taxing jurisdiction.**

*Debt Securities*

**Consequences to United States Holders**

The following is a summary of certain United States federal tax consequences that will apply to you if you are a United States holder of debt securities.

Certain consequences to "non-United States holders" of debt securities are described under "—Consequences to Non-United States Holders" below.

"United States holder" means a beneficial owner of a debt security that is:

- a citizen or resident of the United States;

- a corporation or partnership created or organized in or under the laws of the United States or any political subdivision of the United States;

- an estate the income of which is subject to United States federal income taxation regardless of its source;

- a trust that (x) is subject to the primary supervision of a court within the United States and the control of one or more United States persons or (y) has a valid election in effect under applicable United States Treasury regulations to be treated as a United States person.

**Payments of Interest**

Except as set forth below, interest on a debt security will generally be taxable to you as ordinary income from domestic sources at the time it is paid or accrued in accordance with your method of accounting for tax purposes.

**Original Issue Discount**

If you own debt securities issued with original issue discount ("OID"), you will be subject to special tax accounting rules, as described in greater detail below. In that case, you should be aware that you generally must include OID in gross income in advance of the receipt of cash attributable to that income. However, you generally will not be required to include separately in income cash payments received on the debt securities, even if denominated as interest, to the extent those payments do not constitute qualified stated interest, as defined below. Notice will be given in the applicable prospectus supplement when we determine that a particular debt security will be an OID debt security.

A debt security with an issue price that is less than the "stated redemption price at maturity" (the sum of all payments to be made on the debt security other than "qualified stated interest") generally will be issued with OID if that difference is at least 0.25% of the stated redemption price at maturity multiplied by the number of complete years to maturity. The "issue price" of each debt security in a particular offering will be the first price at which a substantial amount of that particular offering is sold to the public. The term "qualified stated interest" means stated interest that is unconditionally payable in cash or in property, other than debt instruments of the issuer, and the interest to be paid meets all of the following conditions:

- it is payable at least once per year;

- it is payable over the entire term of the debt security; and

- it is payable at a single fixed rate or, subject to certain conditions, based on one or more interest indices.

We will give you notice in the applicable prospectus supplement when we determine that a particular debt security will bear interest that is not qualified stated interest.

If you own a debt security issued with "*de minimis*" OID, which is discount that is not OID because it is less than 0.25% of the stated redemption price at maturity multiplied by the number of complete years to maturity, you generally must include the *de minimis* OID in income at the time

29

payments, other than qualified stated interest, on the debt securities are made in proportion to the amount paid. Any amount of *de minimis* OID that you have included in income will be treated as capital gain.

Certain of the debt securities may contain provisions permitting them to be redeemed prior to their stated maturity at our option and/or at your option. OID debt securities containing those features may be subject to rules that differ from the general rules discussed herein. If you are considering the purchase of OID debt securities with those features, you should carefully examine the applicable prospectus supplement and should consult your own tax advisors with respect to those features since the tax consequences to you with respect to OID will depend, in part, on the particular terms and features of the debt securities.

If you own OID debt securities with a maturity upon issuance of more than one year you generally must include OID in income in advance of the receipt of some or all of the related cash payments using the "constant yield method" described in the following paragraph. This method takes into account the compounding of interest. The accruals of OID on an OID debt security will generally be less in the early years and more in the later years.

The amount of OID that you must include in income if you are the initial United States holder of an OID debt security is the sum of the "daily portions" of OID with respect to the debt security for each day during the taxable year or portion of the taxable year in which you held that debt security ("accrued OID"). The daily portion is determined by allocating to each day in any "accrual period" a pro rata portion of the OID allocable to that accrual period. The "accrual period" for an OID debt security may be of any length and may vary in length over the term of the debt security, provided that each accrual period is no longer than one year and each scheduled payment of principal or interest occurs on the first day or the final day of an accrual period. The amount of OID allocable to any accrual period is an amount equal to the excess, if any, of:

- the debt security's adjusted issue price at the beginning of the accrual period multiplied by its yield to

maturity, determined on the basis of compounding at the close of each accrual period and properly adjusted for the length of the accrual period, over

•    the aggregate of all qualified stated interest allocable to the accrual period.

OID allocable to a final accrual period is the difference between the amount payable at maturity, other than a payment of qualified stated interest, and the adjusted issue price at the beginning of the final accrual period. The "adjusted issue price" of a debt security at the beginning of any accrual period is equal to its issue price increased by the accrued OID for each prior accrual period, determined without regard to the amortization of any acquisition or bond premium, as described below, and reduced by any payments made on the debt security (other than qualified stated interest) on or before the first day of the accrual period. Under these rules, you will have to include in income increasingly greater amounts of OID in successive accrual periods. We are required to provide information returns stating the amount of OID accrued on debt securities held of record by persons other than corporations and other exempt holders.

Floating rate debt securities are subject to special OID rules. In the case of an OID debt security that is a floating rate debt security, both the "yield to maturity" and "qualified stated interest" will be determined solely for purposes of calculating the accrual of OID as though the debt security will bear interest in all periods at a fixed rate generally equal to the rate that would be applicable to interest payments on the debt security on its date of issue or, in the case of certain floating rate debt securities, the rate that reflects the yield to maturity that is reasonably expected for the debt security. Additional rules may apply if

•    the interest on a floating rate debt security is based on more than one interest index; or

30

•    the principal amount of the debt security is indexed in any manner.

This discussion does not address the tax rules applicable to debt securities with an indexed principal amount. If you are considering the purchase of floating rate OID debt securities or securities with indexed principal amounts, you should carefully examine the applicable prospectus supplement and should consult your own tax advisors regarding the United States federal income tax consequences to you of holding and disposing of those debt securities.

You may elect to treat all interest on any debt security as OID and calculate the amount includible in gross income under the constant yield method described above. For purposes of this election, interest includes stated interest, acquisition discount, OID, *de minimis* OID, market discount, *de minimis* market discount and unstated interest, as adjusted by any amortizable bond premium or acquisition premium. You must make this election for the taxable year in which you acquired the debt security, and you may not revoke the election without the consent of the Internal Revenue Service. You should consult with your own tax advisors about this election.

**Short-Term Debt Securities**

In the case of debt securities having a term of one year or less, all payments, including all stated interest, will be included in the stated redemption price at maturity and will not be qualified stated interest. As a result, you will generally be taxed on the discount instead of stated interest. The discount will be equal to the excess of the stated redemption price at maturity over the issue price of a short-term debt security, unless you elect to compute this discount using tax basis instead of issue price. In general, individual and certain other cash method United States holders of short-term debt securities are not required to include accrued discount in their income currently unless they elect to do so, but may be required to include stated interest in income as the income is received. United States holders that report income for United States federal income tax purposes on the accrual method and certain other United States holders are required to accrue discount on short-term debt securities (as ordinary income) on a straight-line basis, unless an election is made to accrue the discount according to a constant yield method based on daily compounding. If you are not required, and do not elect, to include discount in income currently, any gain you realize on the sale, exchange or retirement of a short-term debt security will generally be ordinary income to you to the extent of the discount accrued by you through the date of sale, exchange or retirement. In addition, if you do not elect to currently include accrued discount in income you may be required to defer deductions for a portion of your interest expense with respect to any indebtedness attributable to the short-term debt securities.

### Market Discount

If you purchase a debt security, other than an OID debt security, for an amount that is less than its stated redemption price at maturity, or, in the case of an OID debt security, its adjusted issue price, the amount of the difference will be treated as "market discount" for United States federal income tax purposes, unless that difference is less than a specified *de minimis* amount. Under the market discount rules, you will be required to treat any payment, other than qualified stated interest, on, or any gain on the sale, exchange, retirement or other disposition of, a debt security as ordinary income to the extent of the market discount that you have not previously included in income and are treated as having accrued on the debt security at the time of its payment or disposition. In addition, you may be required to defer, until the maturity of the debt security or its earlier disposition in a taxable transaction, the deduction of all or a portion of the interest expense on any indebtedness attributable to the debt security.

Any market discount will be considered to accrue ratably during the period from the date of acquisition to the maturity date of the debt security, unless you elect to accrue on a constant interest

31

method. You may elect to include market discount in income currently as it accrues, on either a ratable or constant interest method, in which case the rule described above regarding deferral of interest deductions will not apply. Your election to include market discount in income currently, once made, applies to all market discount obligations acquired by you on or after the first taxable year to which your election applies and may not be revoked without the consent of the IRS. You should consult your own tax advisor before making this election.

### Acquisition Premium, Amortizable Bond Premium

If you purchase an OID debt security for an amount that is greater than its adjusted issue price but equal to or less than the sum of all amounts payable on the debt security after the purchase date other than payments of qualified stated interest, you will be considered to have purchased that debt security at an "acquisition premium." Under the acquisition premium rules, the amount of OID that you must include in gross income with respect to the debt security for any taxable year will be reduced by the portion of the acquisition premium properly allocable to that year.

If you purchase a debt security (including an OID debt security) for an amount in excess of the sum of all amounts payable on the debt security after the purchase date other than payments of qualified stated interest, you will be considered to have purchased the debt security at a "premium" and, if it is an OID debt security, you will not be required to include any OID in income. You generally may elect to amortize the premium over the remaining term of the debt security on a constant yield method as an offset to interest when includible in income under your regular accounting method. In the case of instruments that provide for alternative payment schedules, bond premium is calculated by assuming that (a) you will exercise or not exercise options in a manner that maximizes your yield, and (b) we will exercise or not exercise options in a manner that minimizes your yield (except that we will be assumed to exercise call options in a manner that maximizes your yield). If you do not elect to amortize bond premium, that premium will decrease the gain or increase the loss you would otherwise recognize on disposition of the debt security. Your election to amortize premium on a constant yield method will also apply to all debt obligations held or subsequently acquired by you on or after the first day of the first taxable year to which the election applies. You may not revoke the election without the consent of the IRS. You should consult your own tax advisor before making this election.

### Sale, Exchange and Retirement of Debt Securities

Your tax basis in a debt security will, in general, be your cost for that debt security, increased by OID, market discount or any discount with respect to a short-term debt security that you previously included in income, and reduced by any amortized premium and any cash payments on the debt security other than qualified stated interest. Upon the sale, exchange, retirement or other disposition of a debt security, you will recognize gain or loss equal to the difference between the amount you realize upon the sale, exchange, retirement or other disposition (less an amount equal to any accrued qualified stated interest that you did not previously include in income, which will be taxable as such) and the adjusted tax basis of the debt security. Except as described above with respect to certain short-term debt securities or with respect to market discount, or as described below with respect to foreign currency debt securities or with respect to contingent payment debt securities that gain or loss will be capital gain or loss. Capital gains of individuals derived in respect of capital assets held for more than one year are eligible for reduced rates of taxation. The deductibility of capital losses is subject to limitations.

### Tax Consequences of Defeasance

We may discharge our obligations under the debt securities as more fully described under "Description of Debt Securities—Defeasance" above. Such a discharge would generally for United

32

States federal income tax purposes constitute the retirement of the debt securities and the issuance of new obligations. As a result, you would realize gain or loss (if any) on this exchange, which would be recognized subject to certain possible exceptions. Furthermore, following discharge, the debt securities might be subject to withholding, backup withholding and/or information reporting and might be issued with OID.

Even though federal income tax on the deemed exchange may be imposed on you, you would not receive any cash until the maturity or an earlier redemption of the debt securities, except for any current interest payments.

Any gain realized would generally not be taxable to Non-United States holders under the circumstances outlined below under "Consequences to Non-United States Holders—United States Federal Income Tax."

Under current federal income tax law, a covenant defeasance generally would not be treated as a taxable exchange of the debt securities. You should consult your own tax advisor as to the tax consequences of a defeasance and discharge and a covenant defeasance, including the applicability and effect of tax laws other than the federal income tax law.

### Extendible Debt Securities, Renewable Debt Securities and Reset Debt Securities

If so specified in an applicable prospectus supplement relating to a debt security, we may have the option to extend the maturity of a debt security. In addition, we may have the option to reset the interest rate, the spread or the spread multiplier.

The United States federal income tax treatment of a debt security with respect to which such an option has been exercised is unclear and will depend, in part, on the terms established for such debt securities by us pursuant to the exercise of the option. You may be treated for federal income tax purposes as having exchanged your debt securities for new debt securities with revised terms. If this is the case, you would realize gain or loss equal to the difference between the issue price of the new debt securities and your tax basis in the old debt securities, and the other consequences described above under "Tax Consequences of Defeasance" would also apply.

If the exercise of the option is not treated as an exchange of old debt securities for new debt securities, you will not recognize gain or loss as a result of such exchange.

*Original Issue Discount.*    The presence of such options may also affect the calculation of OID, among other things. Solely for purposes of the accrual of OID, if we issue a debt security and have an option or combination of options to extend the term of the debt security, we will be presumed to exercise such option or options in a manner that minimizes the yield on the debt security. Conversely, if you are treated as having a put option, such an option will be presumed to be exercised in a manner that maximizes the yield on the debt security. If we exercise such option or options to extend the term of the debt security, or your option to put does not occur (contrary to the assumptions made), then solely for purposes of the accrual of OID, the debt security will be treated as reissued on the date of the change in circumstances for an amount equal to its adjusted issue price on the date.

You should carefully examine the applicable prospectus supplement and should consult your own tax advisor regarding the United States federal income tax consequences of the holding and disposition of such debt securities.

### Foreign Currency Debt Securities

*Payments of Interest.*    If you receive interest payments made in a foreign currency and you use the cash basis method of accounting, you will be required to include in income the U.S. dollar value of the

33

amount received, determined by translating the foreign currency received at the "spot rate" for such foreign currency on the date such payment is received regardless of whether the payment is in fact converted into U.S. dollars. You will not recognize exchange gain or loss with respect to the receipt of such payment.

If you use the accrual method of accounting, you may determine the amount of income recognized with respect to such interest in accordance with either of two methods. Under the first method, you will be required to include in income for each taxable year the U.S. dollar value of the interest that has accrued during such year, determined by translating such interest at the average rate of exchange for the period or periods during which such interest accrued. Under the second method, you may elect to translate interest income at the spot rate on:

- the last day of the accrual period

- the last day of the taxable year if the accrual period straddles your taxable year, or

- on the date the interest payment is received if such date is within five days of the end of the accrual period.

Upon receipt of an interest payment on such debt security (including, upon the sale of such debt security, the receipt of proceeds which include amounts attributable to accrued interest previously included in income), you will recognize ordinary gain or loss in an amount equal to the difference between the U.S. dollar value of such payment (determined by translating the foreign currency received at the "spot rate" for such foreign currency on the date such payment is received) and the U.S. dollar value of the interest income you previously included in income with respect to such payment.

*Original Issue Discount.*    OID on a debt security that is also a foreign currency debt security will be determined for any accrual period in the applicable foreign currency and then translated into U.S. dollars, in the same manner as interest income accrued by a holder on the accrual basis, as described above. You will recognize exchange gain or loss when OID is paid (including, upon the sale of such debt security, the receipt of proceeds which include amounts attributable to OID previously included in income) to the extent of the difference between the U.S. dollar value of the accrued OID (determined in the same manner as for accrued interest) and the U.S. dollar value of such payment (determined by translating the foreign currency received at the "spot rate" for such foreign currency on the date such payment is received). For these purposes, all receipts on a debt security will be viewed:

- first, as the receipt of any stated interest payments called for under the terms of the debt security

- second, as receipts of previously accrued OID (to the extent thereof), with payments considered made for the earliest accrual periods first,

- third, as the receipt of principal.

*Market Discount and Bond Premium.*    The amount of market discount on foreign currency debt securities includible in income will generally be determined by translating the market discount determined in the foreign currency into U.S. dollars at the spot rate on the date the foreign currency debt security is retired or otherwise disposed of. If you have elected to accrue market discount currently, then the amount which accrues is determined in the foreign currency and then translated into U.S. dollars on the basis of the average exchange rate in effect during such accrual period. You will recognize exchange gain or loss with respect to market discount which is accrued currently using the approach applicable to the accrual of interest income as described above.

Bond premium on a foreign currency debt security will be computed in the applicable foreign currency. If you have elected to amortize the premium, the amortizable bond premium will reduce

34

interest income in the applicable foreign currency. At the time bond premium is amortized, exchange gain or loss, which is generally ordinary gain or loss, will be realized based on the difference between spot rates at such time and the time of

acquisition of the foreign currency debt security.

If you elect not to amortize bond premium, you must translate the bond premium computed in the foreign currency into U.S. dollars at the spot rate on the maturity date and such bond premium will constitute a capital loss which may be offset or eliminated by exchange gain.

*Sale, Exchange or Retirement.*    Your tax basis in a foreign currency debt security will be the U.S. dollar value of the foreign currency amount paid for such foreign currency debt security determined at the time of your purchase. If you purchased the foreign currency debt security with previously owned foreign currency, you will recognize exchange gain or loss at the time of the purchase attributable to the difference at the time of purchase, if any, between your tax basis in the foreign currency and the fair market value of the debt security in U.S. dollars on the date of purchase. Such gain or loss will be ordinary income or loss.

For purposes of determining the amount of any gain or loss you recognize on the sale, exchange retirement or other disposition of a foreign currency debt security, the amount realized on such sale, exchange, retirement or other disposition will be the U.S. dollar value of the amount realized in foreign currency (other than amounts attributable to accrued but unpaid interest not previously included in your income), determined at the time of the sale, exchange, retirement or other disposition.

You may also recognize exchange gain or loss attributable to the movement in exchange rates between the time of purchase and the time of disposition (including the sale, exchange, retirement or other disposition) of a foreign currency debt security. Such gain or loss will be treated as ordinary income or loss. The realization of such gain or loss will be limited to the amount of overall gain or loss realized on the disposition of a foreign currency debt security.

If a foreign currency debt security is denominated in one of certain hyperinflationary currencies, generally:

- exchange gain or loss would be realized with respect to movements in the exchange rate between the beginning and end of each taxable year (or such shorter period) the debt security was held, and

- such exchange gain or loss would be treated as an addition or offset, respectively, to the accrued interest income on, and an adjustment to the holder's tax basis in, the foreign currency debt security.

Your tax basis in foreign currency received as interest on (or OID with respect to), or received on the sale, exchange, retirement or other disposition of, a foreign currency debt security will be the U.S. dollar value thereof at the spot rate at the time you receive such foreign currency. Any gain or loss recognized by you on a sale, exchange or other disposition of foreign currency will be ordinary income or loss and will not be treated as interest income or expense, except to the extent provided in Treasury regulations or administrative pronouncements of the IRS.

*Dual Currency Debt Securities.*    If so specified in an applicable prospectus supplement relating to a foreign currency debt security, we may have the option to make all payments of principal and interest scheduled after the exercise of such option in a currency other than the specified currency. The United States federal income tax treatment of dual currency debt securities is uncertain. Treasury regulations currently in effect do not address the tax treatment of dual currency debt securities.

35

An IRS announcement states that the IRS is considering issuing proposed regulations that would:

- apply the principles contained in regulations governing contingent debt instruments to dual currency notes in the "predominant currency" of the dual currency notes and

- apply the rules discussed above with respect to foreign currency notes with OID for the translation of interest and principal into U.S. dollars.

The IRS states that these concepts are still under consideration. Persons considering the purchase of dual currency notes should carefully examine the applicable prospectus supplement and should consult their own tax advisors regarding the

United States federal income tax consequences of the holding and disposition of such notes.

If we exercise the option to make payments in a currency other than the specified currency, you may be considered to have exchanged your debt security denominated in the specified currency for a debt security denominated in the optional payment currency. If the exercise is treated as a taxable exchange, you will recognize gain or loss if any, equal to the difference between your basis in the debt security denominated in the specified currency and the value of the debt security denominated in the optional payment currency. If the exercise of the option is not treated as an exchange, you will not recognize gain or loss and your basis in the debt security will be unchanged.

**Contingent Payment Debt Securities**

The OID regulations contain special rules for determining the timing and amount of OID to be accrued with respect to certain debt securities providing for one or more contingent payments. Under these rules, you will accrue OID each year based on the "comparable yield" of the debt securities. The comparable yield of the debt securities will generally be the rate at which we would issue a fixed rate debt instrument with terms and conditions similar to the debt securities.

We are required to provide the comparable yield to you and, solely for tax purposes, are also required to provide a projected payment schedule that includes the actual interest payments on the debt securities and estimates the amount and timing of contingent payments on the debt securities. We will give notice in the applicable prospectus supplement when we determine that a particular debt security will be treated as contingent debt.

The amount of OID on a contingent payment debt security for each accrual period is determined by multiplying the comparable yield of the contingent payment debt security (adjusted for the length of the accrual period) by the debt security's adjusted issue price at the beginning of the accrual period (determined in accordance with the rules set forth in the OID regulations relating to contingent payment debt instruments). The amount of OID so determined will then be allocated on a ratable basis to each day in the accrual period that you hold the contingent payment debt security.

If the actual payments made on the contingent payment debt securities in a taxable year differ from the projected contingent payments, adjustments will be made for such differences. A positive adjustment, for the amount by which an actual payment exceeds a projected contingent payment, will be treated as additional interest. A negative adjustment will:

- first, reduce the amount of interest required to be accrued in the current year

- second, any negative adjustments that exceed the amount of interest accrued in the current year will be treated as ordinary loss to the extent that your total interest inclusions exceed the total amount of net negative adjustments treated as ordinary loss in prior taxable years, and

36

- third, any excess negative adjustments will be carried forward to offset future income or amount realized on disposition.

Gain on the sale, exchange or retirement of a contingent payment debt security generally will be treated as ordinary income. Loss from the disposition of a contingent payment debt security will be treated as ordinary loss to the extent of your prior net interest inclusions (reduced by the total net negative adjustments previously allowed as an ordinary loss). Any loss in excess of such amount will be treated as capital loss.

You are generally bound by the comparable yield and projected payment schedule provided by us. However, if you believe that our projected payment schedule is unreasonable, you may set your own projected payment schedule so long as you explicitly disclose the use of such schedule and the reason therefor. Unless otherwise prescribed by the Commissioner of the IRS, such disclosure must be made in a statement attached to your timely filed federal income tax return for the taxable year in which the debt security is acquired.

For special treatment of foreign currency debt securities or dual currency debt securities that are also contingent payment debt securities, see the applicable prospectus supplement.

The rules regarding contingent payment debt securities are complex. If you are considering the purchase of debt securities providing for one or more contingent payments, you should carefully examine the applicable prospectus supplement and consult your own tax advisors regarding the United States federal income tax consequences of the holding and disposition of such debt securities.

### Consequences to Non-United States Holders

The following is a summary of certain United States federal tax consequences that will apply to you if you are a non-United States holder of debt securities.

Special rules may apply to some non-United States holders, such as "controlled foreign corporations," "passive foreign investment companies," "foreign personal holding companies" and corporations that accumulate earnings to avoid United States federal income tax, that are subject to special treatment under the Code. These entities should consult their own tax advisors to determine the United States federal, state, local and other tax consequences that may be relevant to them.

### United States Federal Withholding Tax

The 30% United States federal withholding tax will not apply to any payment of principal or interest, including OID, on debt securities provided that:

- you do not actually or constructively own 10% or more of the total combined voting power of all classes of our voting stock within the meaning of the Code and United States Treasury regulations;

- you are not a controlled foreign corporation that is related to us through stock ownership;

- you are not a bank whose receipt of interest on the debt securities is described in section 881(c)(3)(A) of the Code; and

- either (a) you provide your name and address on an IRS Form W-8BEN (or successor form), and certify, under penalty of perjury, that you are not a United States person or (b) you hold your notes through certain foreign intermediaries, and you satisfy the certification requirements of applicable U.S. Treasury regulations.

37

Special certification rules apply to certain non-United States holders that are entities rather than individuals. If you cannot satisfy the requirements described above, payments of premium, if any, and interest, including OID, made to you will be subject to the 30% United States federal withholding tax, unless you provide us with a properly executed

- IRS Form W-8BEN (or successor form) claiming an exemption from, or reduction in, withholding under the benefit of a tax treaty; or

- IRS Form W-8ECI (or successor form) stating that interest paid on the debt securities is not subject to withholding tax because it is effectively connected with your conduct of a trade or business in the United States.

Except as discussed below, the 30% United States federal withholding tax generally will not apply to any gain that you realize on the sale, exchange, retirement or other disposition of debt securities.

### United States Federal Income Tax

If you are engaged in a trade or business in the United States and premium, if any, or interest, including OID, on the debt securities is effectively connected with the conduct of that trade or business, you will be subject to United States federal income tax on that interest and OID on a net income basis (although exempt from the 30% withholding tax) in the same manner as if you were a United States holder. In addition, if you are a foreign corporation, you may be subject to a branch profits tax equal to 30% (or lower applicable treaty rate) of your earnings and profits for the taxable year, subject to

adjustments. For this purpose, any premium and interest, including OID, on debt securities will be included in your earnings and profits.

You will generally not be subject to United States federal income tax on the disposition of a debt security unless:

- the gain is effectively connected with your conduct of a trade or business in the United States; or

- you are an individual who is present in the United States for 183 days or more in the taxable year of that disposition, and certain other conditions are met.

### United States Federal Estate Tax

Your estate will not be subject to United States federal estate tax on debt securities beneficially owned by you at the time of your death, provided that (1) you do not own 10% or more of the total combined voting power of all classes of our voting stock, within the meaning of the Code and United States Treasury regulations, and (2) interest on those debt securities would not have been, if received at the time of your death, effectively connected with the conduct by you of a trade or business in the United States.

### Information Reporting and Backup Withholding

#### United States Holders

In general, information reporting requirements will apply to certain payments of principal, interest, OID and premium paid on debt securities and to the proceeds of sale of a debt security made to you (unless you are an exempt recipient such as a corporation). A 31% backup withholding tax will apply to such payments if you fail to provide a taxpayer identification number, a certification of exempt status, or fail to report in full dividend and interest income.

38

---

#### Non-United States Holders

In general, no information reporting or backup withholding will be required regarding payments that we make to you provided that we do not have actual knowledge that you are a United States person and we have received from you the statement described above under "United States Federal Withholding Tax."

In addition, no information reporting or backup withholding will be required regarding the proceeds of the sale of a debt security made within the United States or conducted through certain United States related financial intermediaries, if the payor receives the statement described above and does not have actual knowledge that you are a United States person or you otherwise establish an exemption.

Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against your United States federal income tax liability provided the required information is furnished to the IRS.

### *Common and Preferred Stock*

#### Consequences to United States Holders

The consequences of the purchase, ownership or disposition of our stock depend on a number of factors including:

- the term of the stock;

- any put or call option or redemption provisions with respect to the stock;

- any conversion or exchange features with respect to the stock; and

- the price at which the stock is sold.

United States holders should carefully examine the applicable prospectus supplement regarding the material United States federal income tax consequences, if any, of the holding and disposition of stock with such terms.

### Consequences to Non-United States Holders

The following is a summary of certain United States federal tax consequences that will apply to you if you are a non-United States holder of common or preferred stock.

Special rules may apply to some non-United States holders, such as "controlled foreign corporations," "passive foreign investment companies," "foreign personal holding companies" and corporations that accumulate earnings to avoid United States federal income tax, that are subject to special treatment under the Code. These entities should consult their own tax advisors to determine the United States federal, state, local and other tax consequences that may be relevant to them.

#### Dividends

In general, dividends paid to you (including any deemed dividends that may arise from the excess of the redemption price over the issue price or certain adjustments to the conversion ratio of convertible instruments) will be subject to withholding of United States federal income tax at a 30% rate or a lower rate if so specified by an applicable income tax treaty. However, dividends that are effectively connected with your conduct of a trade or business within the United States and, where a tax treaty applies, are attributable to a United States permanent establishment, are not subject to the

39

withholding tax. Instead, these dividends are subject to United States federal income tax on a net income basis at applicable graduated individual or corporate rates. You must comply with certification and disclosure requirements in order for effectively connected income to be exempt from withholding. If you are a foreign corporation, any effectively connected dividends you receive may also be subject to an additional branch profits tax at a 30% rate or a lower rate if so specified by an applicable income tax treaty.

A non-United States holder of common or preferred stock who wishes to claim the benefit of an applicable treaty rate, and avoid back-up withholding as discussed below, will be required to satisfy the certification requirements of applicable United States Treasury regulations. Special rules apply to claims for treaty benefits made by non-United States persons that are entities rather than individuals and to beneficial owners of dividends paid to entities in which such beneficial owners are interest holders.

If you are eligible for a reduced rate of United States withholding tax pursuant to an income tax treaty you may obtain a refund of any excess amounts withheld by filing an appropriate claim for refund with the IRS.

### Gain on Disposition of Common or Preferred Stock

You generally will not be subject to United States federal income tax with respect to gain recognized on a sale or other disposition of common or preferred stock unless:

- the gain is effectively connected with your conduct of a trade or business in the United States, and, where a tax treaty applies, is attributable to a United States permanent establishment;

- you are an individual holding the common or preferred stock as a capital asset, and are present in the United States for 183 or more days in the taxable year of the sale or other disposition and certain other conditions are met; or

- we are or have been a "United States real property holding corporation" for United States federal income tax purposes.

If you are an individual non-United States holder described in the first bullet point above you will be subject to United States federal income tax on the net gain derived from the sale. If you are an individual non-United States holder described in the second bullet point above you will be subject to a flat 30% United States federal income tax on the gain derived from the sale, which may be offset by United States source capital losses, even though you are not considered a resident of the United States. If you are a non-United States holder that is a foreign corporation and you are described in the first bullet point above, you will be subject to tax on your gain under regular graduated United States federal income tax rates and, in addition, may be subject to a branch profits tax at a 30% rate or a lower rate if so specified by an applicable income tax treaty.

We believe that we are not currently and do not anticipate becoming a "United States real property holding corporation" for United States federal income tax purposes. We will give you notice in an applicable pricing supplement if we determine that we are or have been a "United States real property holding corporation" for United States federal income tax purposes.

**Federal Estate Tax**

If you are an individual, common or preferred stock held by you at the time of your death will be included in your gross estate for United States federal estate tax purposes, unless an applicable estate tax treaty provides otherwise.

40

---

**Information Reporting and Backup Withholding**

We will be required to report annually to the IRS and to you the amount of dividends paid to you and the tax withheld from dividend payments made to you, regardless of whether withholding was required. We may make available to the tax authorities in the country in which you reside under the provisions of an applicable income tax treaty copies of the information returns reporting the dividends and withholding.

Backup withholding at the rate of 31% generally will apply to dividends paid to you unless you satisfy the certification requirements of applicable United States Treasury regulations.

Payment of the proceeds of a sale of the common or preferred stock to you within the United States or conducted through some United States related financial intermediaries will be subject to both backup withholding and information reporting unless (1)(a) you certify under penalties of perjury that you are a non-United States holder and (b) the payor does not have actual knowledge that you are a United States person or (2) you otherwise establish an exemption.

Any amounts withheld under the backup withholding rules may be allowed as a refund or credit against your federal income tax liability provided the required information is provided to the IRS.

*Preferred Stock and Depositary Shares*

If you are considering the purchase of preferred stock or depositary shares, you should carefully examine the applicable prospectus supplement regarding the special United States federal income tax consequences, if any, of the holding and disposition of such preferred stock or depositary shares including any tax considerations relating to the specific terms of such preferred stock or depositary shares.

41

---

**PLAN OF DISTRIBUTION**

Lehman Brothers Holdings may offer the offered securities in one or more of the following ways from time to time:

- to or through underwriters or dealers;

- by itself directly;

- through agents; or

- through a combination of any of these methods of sale.

Any such underwriters, dealers or agents may include Lehman Brothers Inc. or other affiliates of Lehman Brothers Holdings.

The prospectus supplement relating to a particular offering of securities will set forth the terms of such offering, including:

- the name or names of any underwriters, dealers or agents;

- the purchase price of the offered securities and the proceeds to Lehman Brothers Holdings from such sale;

- any underwriting discounts and commissions or agency fees and other items constituting underwriters' or agents' compensation, which in the aggregate will not exceed 8 percent of the gross proceeds of the offering;

- the initial public offering price;

- any discounts or concessions to be allowed or reallowed or paid to dealers; and

- any securities exchanges on which such offered securities may be listed.

Any initial public offering prices, discounts or concessions allowed or reallowed or paid to dealers may be changed from time to time.

If underwriters are used in an offering of offered securities, such offered securities will be acquired by the underwriters for their own account and may be resold from time to time in one or more transactions, including negotiated transactions, at a fixed public offering price or at varying prices determined at the time of sale. The securities may be either offered to the public through underwriting syndicates represented by one or more managing underwriters or by one or more underwriters without a syndicate. Unless otherwise set forth in the prospectus supplement, the underwriters will not be obligated to purchase offered securities unless specified conditions are satisfied, and if the underwriters do purchase any offered securities, they will purchase all offered securities.

In connection with underwritten offerings of the offered securities and in accordance with applicable law and industry practice, underwriters may over-allot or effect transactions that stabilize, maintain or otherwise affect the market price of the offered securities at levels above those that might otherwise prevail in the open market, including by entering stabilizing bids, effecting syndicate covering transactions or imposing penalty bids, each of which is described below.

- A stabilizing bid means the placing of any bid, or the effecting of any purchase, for the purpose of pegging, fixing or maintaining the price of a security.

- A syndicate covering transaction means the placing of any bid on behalf of the underwriting syndicate or the effecting of any purchase to reduce a short position created in connection with the offering.

42

- A penalty bid means an arrangement that permits the managing underwriter to reclaim a selling concession from a syndicate member in connection with the offering when offered securities originally sold by the syndicate member are purchased in syndicate covering transactions.

These transactions may be effected on the NYSE, in the over-the-counter market, or otherwise. Underwriters are not required to engage in any of these activities, or to continue such activities if commenced.

If dealers are utilized in the sale of offered securities, Lehman Brothers Holdings will sell such offered securities to the dealers as principals. The dealers may then resell such offered securities to the public at varying prices to be determined by such dealers at the time of resale. The names of the dealers and the terms of the transaction will be set forth in the prospectus supplement relating to that transaction.

Offered securities may be sold directly by Lehman Brothers Holdings to one or more institutional purchasers, or through agents designated by Lehman Brothers Holdings from time to time, at a fixed price or prices, which may be changed, or at varying prices determined at the time of sale. Any such agent may be deemed to be an underwriter as that term is defined in the Securities Act. Any agent involved in the offer or sale of the offered securities in respect of which this prospectus is delivered will be named, and any commissions payable by Lehman Brothers Holdings to such agent will be set forth, in the prospectus supplement relating to that offering. Unless otherwise indicated in such prospectus supplement, any such agent will be acting on a best efforts basis for the period of its appointment.

If so indicated in the applicable prospectus supplement, Lehman Brothers Holdings will authorize agents, underwriters or dealers to solicit offers from certain types of institutions to purchase offered securities from Lehman Brothers Holdings at the public offering price set forth in such prospectus supplement pursuant to delayed delivery contracts providing for payment and delivery on a specified date in the future. Such contracts will be subject only to those conditions set forth in the prospectus supplement and the prospectus supplement will set forth the commission payable for solicitation of such contracts.

In addition, shares of common stock may be issued upon conversion of or in exchange for debt securities, preferred stock or depositary shares.

Lehman Brothers Inc., the broker-dealer subsidiary of Lehman Brothers Holdings, is a member of the National Association of Securities Dealers, Inc. and may participate in distributions of the offered securities. Accordingly, offerings of offered securities in which Lehman Brothers Inc. participates will conform to the requirements set forth in Rule 2720 of the Conduct Rules of the NASD. Furthermore, any underwriters offering the offered securities will not confirm sales to any accounts over which they exercise discretionary authority without the prior approval of the customer.

This prospectus together with any applicable prospectus supplement may also be used by Lehman Brothers Inc. and other affiliates of Lehman Brothers Holdings in connection with offers and sales of the offered securities in market-making transactions at negotiated prices related to prevailing market prices at the time of sale. Such affiliates may act as principals or agents in such transactions. Such affiliates have no obligation to make a market in any of the offered securities and may discontinue any market-making activities at any time without notice, in their sole discretion.

Underwriters, dealers and agents may be entitled, under agreements with Lehman Brothers Holdings, to indemnification by Lehman Brothers Holdings relating to material misstatements and omissions. Underwriters, dealers and agents may be customers of, engage in transactions with, or perform services for, Lehman Brothers Holdings and affiliates of Lehman Brothers Holdings in the ordinary course of business.

Each series of offered securities will be a new issue of securities and will have no established trading market. Any underwriters to whom offered securities are sold for public offering and sale may

make a market in such offered securities, but such underwriters will not be obligated to do so and may discontinue any market making at any time without notice. The offered securities may or may not be listed on a national securities exchange. No assurance can be given that there will be a market for the offered securities.

**United Kingdom Selling Restrictions**

Each underwriter will represent and agree that:

- it has not offered or sold and prior to the date six months after the date of issue of the offered securities will not offer or sell offered securities in the United Kingdom except to persons whose ordinary activities involve them in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of their business or otherwise in circumstances which have not resulted and will not result in an offer to the public in the United Kingdom within the meaning of the Public Offers of Securities Regulations 1995;

- it has complied and will comply with all applicable provisions of the Financial Services Act 1986 with respect to anything done by it in relation to the offered securities in, from or otherwise involving the United Kingdom; and

- it has only issued or passed on, and will only issue or pass on, in the United Kingdom any document received by it in connection with the issue of the offered securities to a person who is of a kind described in Article 11 (3) of the Financial Services Act 1986 (Investment Advertisement) (Exemptions) Order 1996 (as amended) or is a person to whom the document may otherwise lawfully be issued or passed on.

44

---

## ERISA CONSIDERATIONS

Lehman Brothers Holdings has subsidiaries, including Lehman Brothers Inc., that provide services to many employee benefit plans. Lehman Brothers Holdings and any direct or indirect subsidiary of Lehman Brothers Holdings may each be considered a "party in interest" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), and a "disqualified person" under corresponding provisions of the Internal Revenue Code of 1986 (the "Code"), relating to many employee benefit plans. "Prohibited transactions" within the meaning of ERISA and the Code may result if any offered securities are acquired by an employee benefit plan relating to which Lehman Brothers Holdings or any direct or indirect subsidiary of Lehman Brothers Holdings is a party in interest, unless such offered securities are acquired pursuant to an applicable exemption. Any employee benefit plan or other entity subject to such provisions of ERISA or the Code proposing to acquire the offered securities should consult with its legal counsel.

## LEGAL MATTERS

Oliver Budde, Vice President of Lehman Brothers Holdings, has rendered an opinion to Lehman Brothers Holdings regarding the validity of the securities offered by the prospectus. Simpson Thacher & Bartlett, New York, New York, or other counsel identified in the applicable prospectus supplement, will act as legal counsel to the underwriters. Simpson Thacher & Bartlett has from time to time acted as counsel for Lehman Brothers Holdings and its subsidiaries and may do so in the future.

## EXPERTS

The consolidated financial statements and financial statement schedule of Lehman Brothers Holdings Inc. as of November 30, 2000 and 1999, and for each of the years in the three-year period ended November 30, 2000, have been audited by Ernst & Young LLP, independent certified public accountants, as set forth in their report on the consolidated financial statements. The consolidated financial statements and such report are incorporated by reference in Lehman Brothers Holdings' annual report on Form 10-K for the year ended November 30, 2000, and incorporated by reference in this prospectus. The consolidated financial statements of Lehman Brothers Holdings referred to above are incorporated by reference in this prospectus in reliance upon such report given on the authority of said firm as experts in accounting and auditing. To the extent that Ernst & Young LLP audits and reports on consolidated financial statements of Lehman Brothers Holdings issued at future dates, and consents to the use of their report thereon, such consolidated financial statements also will be incorporated by reference in the registration statement in reliance upon their report given on said authority.

45

---

**12,000,000 SHARES**

# LEHMAN BROTHERS HOLDINGS INC.

### DEPOSITARY SHARES,
### EACH REPRESENTING 1/100TH OF A SHARE OF
### 6.50% CUMULATIVE PREFERRED STOCK, SERIES F

---

### PROSPECTUS SUPPLEMENT
### AUGUST 20, 2003
### (INCLUDING PROSPECTUS DATED
### JUNE 14, 2001)

---

## LEHMAN BROTHERS

## A.G. EDWARDS & SONS, INC.
## CITIGROUP
## MERRILL LYNCH & CO.
## MORGAN STANLEY
## UBS PAINEWEBBER
## WACHOVIA SECURITIES
## BANC OF AMERICA SECURITIES LLC

QuickLinks

PROSPECTUS SUMMARY
LEHMAN BROTHERS HOLDINGS INC.
THE SECURITIES LEHMAN BROTHERS HOLDINGS MAY OFFER
USE OF PROCEEDS
PLAN OF DISTRIBUTION
WHERE YOU CAN FIND MORE INFORMATION
USE OF PROCEEDS AND HEDGING
RATIO OF EARNINGS TO FIXED CHARGES AND OF EARNINGS TO COMBINED FIXED CHARGES AND
PREFERRED STOCK DIVIDENDS
DESCRIPTION OF DEBT SECURITIES
DESCRIPTION OF COMMON STOCK
DESCRIPTION OF PREFERRED STOCK
DESCRIPTION OF DEPOSITARY SHARES
FORM, EXCHANGE AND TRANSFER
BOOK-ENTRY PROCEDURES AND SETTLEMENT
UNITED STATES FEDERAL INCOME TAX CONSEQUENCES
PLAN OF DISTRIBUTION

ERISA CONSIDERATIONS
LEGAL MATTERS
EXPERTS