KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway,
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Michael J. Bowe (mbowe@kasowitz.com)
Robert M. Novick (rnovick@kasowitz.com)
Albert S. Mishaan (amishaan@kasowitz.com)
Gary W. Dunn (gdunn@kasowitz.com)

Special Counsel for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x
                                                                     :     Chapter 11
In re                                                :     Case No. 08-13555 (JMP)

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :     Jointly Administered

                            Debtors.       :
---------------------------------------- x

### AFFIDAVIT OF GARY W. DUNN

| STATE OF NEW YORK | ) |
| :--- | :--- |
|  | ) ss.: |
| COUNTY OF NEW YORK | ) |

GARY W. DUNN, being duly sworn, deposes and says:

1.    I am an attorney associated with the law firm Kasowitz, Benson, Torres & Friedman LLP ("KBT&F"), special counsel to Lehman Brothers Holdings, Inc. ("Lehman") and its affiliated debtors (collectively, the "Debtors"). I submit this affidavit in support of the Debtors' Motion to Compel the Production of Documents from Goldman Sachs & Co. and Goldman Sachs Group, Inc. and pursuant to Local Bankruptcy Rule 7007-1(a). I am fully familiar with the facts and circumstances stated in this affidavit, which are based upon my own personal knowledge.

2.      On January 28, 2010, the Court approved the Debtor's retention of KBT&F for the purpose of investigating "third parties who may have . . . taken actions or made statements that interfered with, and damaged, the Debtor's business." (Docket No. 6808.) In April of 2010, the Debtors, through KBT&F, served subpoenas pursuant to Bankruptcy Rule 2004 upon Goldman Sachs & Co. and Goldman Sachs Group, Inc. After Goldman Sachs served objections to these subpoenas, the parties arrived at a negotiated resolution whereby Goldman Sachs agreed to produce certain trading data and documents that it had previously produced to the Securities and Exchange Commission, the U.S. Attorney's Office, and the New Jersey Bureau of Securities in connection with Lehman-specific inquiries (the "Governmental Production"). The parties further agreed that the Debtors would have the opportunity to request additional documents if the Governmental Production proved insufficient, and Goldman Sachs reserved its right to object to any such request.

3.      On February 18, 2011, Goldman Sachs produced the small number of documents – 2,136 in all – comprising the Governmental Production. Upon review of those documents, it became clear that the Governmental Production was insufficient for the purposes of the Debtors' investigation, because those documents did not: (1) contain documents produced from custodians involved in proprietary trading in Goldman Sachs' London office; (2) contain documents produced from custodians involved in marketing Goldman Sachs' prime brokerage services to hedge funds and large financial institutions; (3) covered only a small portion of the time period during which false rumors were directed at Lehman in the marketplace; and (4) covered only a small portion of the rumors that were directed at Lehman during that time.

4.      On March 1, 2011, the Debtors requested additional documents from Goldman Sachs. Again, the parties began to negotiate regarding the scope of the requested supplemental

2

production, including negotiations as to search terms to be used to search electronically-stored information ("ESI") and the custodians whose ESI would be searched. The Debtors agreed to limit the production to e-mails and instant messages, and submitted search terms to Goldman Sachs that were drafted to cover the period during which Lehman was targeted by rumors. These search terms were designed to capture the substance and content of the rumors and communications with parties who may have knowledge of the rumors. In response to Goldman Sachs' objections, the Debtors have narrowed the scope of the search terms five times. For example, the Debtors reduced the date range of the searches by two months – to a narrow four-month period. A true and correct copy of the current search terms are attached hereto as exhibit 1.

5. During the negotiations, the Debtors requested that Goldman Sachs identify and search: (1) custodians located in New York who were involved in marketing prime brokerage services to hedge funds; and (2) custodians involved in the proprietary trading of Lehman securities in Goldman Sachs' London office. The Debtors selected these custodians, because their investigation has revealed that Goldman Sachs employees involved in the marketing prime brokerage services and in London-based proprietary trading may have been involved in originating or spreading rumors about Lehman. Documents from these custodians were not included in the Governmental Production, and apparently were not provided to the SEC and other governmental agencies in the course of their investigations.

6. Goldman Sachs, however, was slow to identify custodians. It refused to provide organization charts to help the Debtors identify individuals involved in marketing prime brokerage services. In an effort to keep this matter from taking up the Court's time, between March 1, 2011 and the Rule 7007-1 informal conference with the Court, the Debtors held at least

thirteen conference calls with Goldman Sachs, including on the following dates: March 10, 2011, March 17, 2011, March 21, 2011, March 22, 2011, March 24, 2011, April 6, 2011, April 11, 2011, April 14, 2011, April 15, 2011, April 27, 2011, May 2, 2011, May 4, 2011, May 5, 2011, and May 6, 2011.

7. In early May, Goldman Sachs' counsel informed the Debtors that it identified 27 London-based custodians involved in the proprietary trading of Lehman securities during the relevant period and ten custodians involved in the marketing of prime brokerage services. Goldman Sachs, however, initially agreed only to search 18 of the identified 37 custodians. Thus, it agreed to search the ESI of the ten custodians involved in marketing, but would only agree to search eight of the 27 identified London-based individuals involved in proprietary trading.

8. When the Debtors refused to agree to this proposal, because they would have been prejudiced by not having the documents of 19 custodians, the parties held a "meet and confer" pursuant to Local Bankruptcy Rule 7007-1(a) in a good faith effort to resolve by agreement the issues raised by the instant motion to compel without the intervention of the Court, but the parties could not agree on the custodians to be searched or when documents would be produced.

9. On May 16, 2011, the Court held an informal Rule 7007-1(b) conference by telephone with the Debtors and Goldman Sachs, during which the Court expressed skepticism of Goldman Sachs' argument for limiting the number of custodians. Following that conference, Goldman Sachs agreed to produce documents from all 37 custodians. However, it would not commit to a date on which its production would be commenced or completed. Following the Rule 7007-1(b) conference, the Debtors have had additional calls with Goldman Sachs regarding its document production. During the last call, on May 31st, Goldman Sachs informed the Debtors

that it had not completed runing the search terms on the identified custoidians, that, in fact, it had only commenced running the search terms on eleven of the 37 identified custodians, that Goldman Sachs was unable to commit to when it would begin producing documents, and that Goldman Sachs was unable to commit to when it will complete its production.

*Gary W. Dunn* (signature)

Gary W. Dunn

Sworn to before me this

31st day of May, 2011

*(signature)*

Notary Public

SUSAN L. SCHERMAN
Notary Public, State of New York
No. 01SC6209693
Qualified in New York County
Commission Expires August 3, 2013

5