UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
InRe:                                            :      Chapter 11 Case No.:
LEHMAN BROTHERS HOLDINGS INC., et al.,           :      08-13555 (JMP)
                            Debtors.             :
-----------------------------------------------------------------x

CLAIMANT CHRISTIAN WHAMOND'S OPPOSITION TO DEBTORS'
ONE HUNDRED THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS
(TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Claimant Christian Whamond ("Whamond") hereby opposes Debtors' attempt to reclassify his claim (Claim No. **10579 / 66053** in the amount of $179,515.80) as an equity interest and submits the following in support:

1.  As of September 15, 2008 (the "Petition Date"), the Debtors were, and still are, indebted and/or liable to Whamond in the aggregate amount of approximately $179,515.80, which is comprised of, inter alia (i) $48,103.39 for "Restricted Stock Unit Awards" granted to Whamond on December 7, 2007 in consideration for services rendered by Whamond to the Debtor prior to the Petition Date (the "Restricted Stock Units"), and (ii) $131,412.41 for "Special Restricted Stock Units" granted to Whamond on November 9, 2007 which were granted to Whamond in consideration for Whamond agreeing to forfeit certain amounts owing to Whamond in consideration for services rendered by Whamond to J.P. Morgan Securities Inc. ("JPM") prior to Whamond's employment with the Debtor (the "Special Restricted Stock Units", and together with the Restricted Stock Units, collectively, the "Total Restricted Stock Units").

2.  Whamond's claim against the Debtor is based upon earned compensation that was paid in a delayed manner in the form of restricted stock grants rather than salary or cash wages. As such, it is distinguishable from generic equity holdings that investors may have purchased in the stock market and should not be reclassified to receive the same treatment as generic equity holdings.

3.  Furthermore, under the separation agreement (the "Separation Agreement", a copy of which is attached hereto as Exhibit A) dated April 14, 2008 (the "Separation Date"), the

restricted stock grants received by Whamond <u>were not contingent</u> on his employment by the Debtor following the Separation Date, and as such did not constitute a deferred contingent compensation but a delayed earned compensation payment and thus an obligation by the Debtor. This is in contrast to the general conditions under which deferred compensation was awarded to Lehman employees in the form of restricted stock grants that required continued employment by Lehman to be exercisable at the time of vesting. As such, Whamond's delayed earned compensation should be considered a valid senior liability of the Debtor.

    3.    Unlike investors who bought the Debtor's stock in the market for speculative or investment reasons, Whamond's compensation was earned through Whamond's services as an employee and represents a large part of the hard-fought compensation earned over an extended period of service. In addition, Whamond's Total Restricted Stock Units were awarded as a substitute for several years of unvested stock accumulated from his career at JPM as required when Whamond became employed at the Debtor, further distinguishing it from investor purchased stock in the market. Whamond in turn left employment with the Debtor three months before the firm collapsed, but was not permitted to cash out his Lehman stock at that time. Moreover, a large percentage of Whamond's stock would have vested by this point in time.

    4.    Lehman remains the only major investment bank whose employees did not have at least a portion of their earned stock spared. Every other bank, including Bear Stearns, along with many other financial institutions, received assistance (both overt and tacit) from the Federal Government to preserve at least some value for the employee stock that these individuals earned in the course of working to a living for their families. Whamond deserves similar treatment in recognition that he (like many other employees) earned that compensation through hard work for the benefit of his employer.

    5.    The Debtors' request to reclassify Whamond from a position of creditors (regardless of what priority their claims ultimately receive) to one of equity holders for whom there will be nothing left at the conclusion of this proceeding, is particularly unconscionable where the allowed professional service fees for the Debtor's estate have reached the astronomical, estimated amount of $1.5 billion. A small portion of that number could have handily provided even partial compensation for Whamond and his fellow employees' families, rather than continuing to benefit only the lawyers handling this case. This Court needs to rectify this unjust outcome, in part, by denying the Debtors' objection.

WHEREFORE, Whamond respectfully requests that the Court deny Debtors' one hundred and thirty-first omnibus objection.

Dated: May 17, 2011
New York, New York

Respectfully submitted,

Christian Whamond
135 Riverside Ave
Riverside, CT 06878

## Exhibit A

# LEHMAN BROTHERS
# EQUITY AWARD PROGRAM

*Personal Award Statement for:*

**CHRISTIAN WHAMOND**

The following award information is in accordance with the terms and conditions of the Lehman Brothers Stock Award Program approved by the Compensation and Benefits Committee of the Board of Directors.

**Special Restricted Stock Units (RSUs)[1]:**                                           3,219 RSUs

**Market Value of Restricted Stock Units
Granted on November 9, 2007 @ $58.0700:**                    $186,927

Your RSUs will vest and convert to shares of
common stock according to the schedule below:

| Vest Date | Issue Date | | |
|---|---|---|---|
| January 15, 2008 | January 15, 2008 | 956 | RSUs |
| January 15, 2009 | January 15, 2009 | 1,486 | RSUs |
| January 15, 2010 | January 15, 2010 | 777 | RSUs |

**Total Special RSU Award:**                                                            3,219 RSUs

[1] Restricted Stock Units ("RSUs") received as a special award as stated in your employment letter. Except as provided in your employment letter, the terms of Holdings' standard stock award program (for employees having your corporate title) will govern your award of Special RSUs.

NOTE: This statement is intended to provide you with a summary of your award. All terms and conditions of the award are subject to the applicable controlling plan documents, including but not limited to your employment letter, the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus.

January 2008

## Lehman Brothers
## 2007 Total Compensation Statement

Employee : Whamond, Christian
Division : Global Principal Strategies
Hire Date : 11/9/07

Employee ID : 10278643
Stock Program : VP

### COMPENSATION HISTORY

| Compensation Type | Current - 2007 |
|---|---|
| Paid Salary | $5,769 |
| Bonus | $450,000 |
| **TOTAL COMPENSATION** | **$455,769** |

### EQUITY SUMMARY in USD

| | Equity Component | Market Price | Discount Price | Shares |
|---|---|---|---|---|
| RSUs | $47,570 | $63.47 | $47.60 | 999.37 |

Your equity award was calculated based on total compensation of $455,769, where "total compensation" includes salary, bonus, and other forms of eligible compensation. All terms and conditions of equity awards, including those relating to vesting and forfeiture, are subject to the controlling plan documents, including the FY 2007 equity award agreements (expected to be finalized in early 2008), the 2005 Stock Incentive Plan and related Prospectus.

### PAYMENT SCHEDULE

| | | | |
|---|---|---|---|
| Bonus | $450,000 | Bonus Guarantee: | $450,000 |
| Less Total RSUs | ($47,570) | | |
| Total Cash Payment (Before Taxes) | $402,430 | Payable on or about January 31, 2008 | |

### ANNUAL SALARY

Effective Fiscal Year 2008, your annual base salary will be as follows:

| | |
|---|---|
| Current Annual Salary | $150,000 |

Your rights to the bonus payment and equity awards are subject to the terms and conditions of the Firm's bonus policy and the controlling equity award documents, as applicable.

If you have any additional questions regarding your compensation or personal data, please contact your divisional HR representative. If you have any questions regarding your equity award, please contact the Compensation Department at (212) 526-8346.

Rieder, R
10-Dec-07

# LEHMAN BROTHERS

DEBORAH MILLSTEIN
SENIOR VICE PRESIDENT

April 14, 2008

Christian Whamond
35 Midbrook Lane
Old Greenwich, CT 06870

Dear Chris:

    This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive the payments and benefits discussed below.

**Effective Dates**

1. May 30, 2008 will be the last day that you are expected to report to work.

2. You will continue to receive base salary and benefits coverage until the earlier of June 27, 2008 or the date on which you become actively employed with another firm (your "separation date").

**Payments and Benefits**

3. You will continue to remain an active employee and will be paid on a biweekly basis at your current biweekly base salary rate through May 30, 2008 (the "Transition Period"), while you remain on payroll and continue your benefits coverage under the terms of our plans. This will be conditional on your adherence to all policies, procedures and other requirements applicable to your employment, including your meeting performance, attendance and compliance standards as evaluated by Firm management.

4. In lieu of a lump sum separation payment consisting of two weeks of severance pay and two weeks of unused vacation pay, you will be paid on a biweekly basis at your current biweekly base salary rate through your separation date while you remain on payroll and continue your benefits coverage under the terms of our plans. All payments will be subject to withholding, payroll taxes and other applicable deductions.

5. Lehman Brothers has retained Right Management Consultants to provide you with outplacement counseling services. These services are designed to assist you with counseling on resume writing, interviewing skills, networking techniques, and a job search campaign. We encourage you to take advantage of these services in order to ensure a smooth career transition. To sign up, please call John Henricksen at (212) 373-6611.

6. You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. You may also convert your basic and supplemental life insurances to individual policies at that time at your

Name
page 2

    own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

7. As you are aware, for certain of your outstanding and unvested restricted stock unit awards ("RSUs") granted to you in connection with the Lehman Brothers Equity Award Program, you are expressly required to execute a release agreement as a condition of "involuntary termination without cause" treatment under those awards. If you sign and comply with this separation agreement, you will satisfy the release requirement applicable to such awards.

8. Except as expressly provided in this letter, your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

9. Should you become employed by another firm as an employee, consultant or independent contractor at any time before your separation date, you are obligated to inform the Firm so that you may be officially terminated from the Firm at that time. You will then be paid a lump sum representing the remainder of the payments described in paragraph 4, on or about four weeks from the date we are informed of your new employment status. You will no longer be eligible for the payments described in paragraph 3.

10. Should you be rehired by Lehman or any of its subsidiaries or affiliates as an employee, consultant or independent contractor at any time through your separation date you will no longer be eligible to receive the remainder of the payments described in paragraphs 3 and 4.

**Complete Release**

    You agree to forever release Lehman Brothers Inc., any of its affiliated companies, past and present parents, subsidiaries, divisions and present and former employees, officers, directors, successors and assigns from all claims you may now have based on your employment with any Lehman affiliate or the separation of that employment, to the maximum extent permitted by law. This includes a release, to the maximum extent permitted by law, of any rights or claims you may have under: the Age Discrimination Employment Act, which generally prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, which generally prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which generally prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which generally prohibits discrimination on the basis of disability; the Employee Retirement Income Security Act of 1974, which governs the provision of pension and welfare benefits; and all other federal, state or local laws prohibiting employment discrimination. This also includes a release by you of any claims for wrongful discharge, any compensation claims, or any other claims under any statute, rule, regulation, or under the common law. This release covers both claims that you know about and those you may not know about.

**Non-disclosure Provisions**

    You agree not to disclose to anyone except your immediate family, accountant, and lawyer any information relating to the subject matter or existence of this agreement, including the dollar amount set forth, except to the extent required by legal process. Any disclosure to your immediate family, accountant or lawyer shall be made only upon their agreement not to disclose these terms to another person. Notwithstanding the foregoing, the parties may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any

Name
page 3

kind (including opinions or other tax analyses) that are provided to either party relating to such tax treatment.

### Firm Property

You agree that all proprietary or confidential information concerning Lehman, its business or customers which you learned while an employee is and shall remain the exclusive property of Lehman. You agree not to disclose any such information to others outside of Lehman or use such information for your own benefit, without Lehman's written consent. You further agree to return to Lehman any and all Lehman property that you may possess within one week after your last day of active employment.

### Registration

If you are currently registered with Lehman, your registration will cease as of your last day of active employment. Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

### Disparaging Remarks

You agree to avoid making any disparaging remarks now, and at any time in the future, which could be detrimental in any way to Lehman or to individual directors or employees of Lehman, provided that this shall not restrict your ability to respond to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process.

### Future Cooperation

You agree to reasonably cooperate with Lehman, its financial and legal advisors and/or government officials in connection with any business matters in which you were involved or any claims, investigations, administrative proceedings or lawsuits which relate to your Lehman employment. Related travel and accommodation expenses will be reimbursed in accordance with Lehman's standard policies.

### Arbitration

Any controversy arising out of or relating to this agreement shall be submitted to arbitration pursuant to the constitution and rules of the Financial Industry Regulatory Authority (FINRA).

### Consultation with Attorney

You have been advised to consult with an attorney concerning this agreement and acknowledge that you have had ample opportunity to do so before signing.

### Employment Inquiries

It is the Firm's policy to provide only limited information to non-Lehman individuals or organizations. The Work Number, the vendor retained to provide this information, will disclose dates of employment and your last job title. Requestors can access the verification system online at www.theworknumber.com or by calling 800-367-5690. Requestors will need your Social Security

Name
page 4

number in order to verify your employment information for a nominal fee. This shall not restrict Lehman's ability to provide complete information with respect to your employment when expected to do so under applicable regulatory requirements.

### Entire Agreement

This agreement constitutes the entire agreement between the parties and cannot be altered except in writing signed by both parties. The terms of this agreement supersede any other oral or written arrangement between you and the Firm with respect to your employment or the separation of your employment by the Firm including but not limited to any entitlements you may have under the Firm's severance policy. Both parties acknowledge that no representations were made to induce execution of this agreement, which are not expressly contained in this agreement.

### Successorship; Controlling Law

This agreement will be binding on Lehman and its successors and assigns and will also be binding on you, your heirs, administrators, executors and assigns. This agreement will be construed under the substantive law of the State of New York, without regard to conflict of law principles.

### Separation Booklet

You acknowledge that you have received and reviewed a copy of the Firm's booklet, "Guide to Leaving Lehman Brothers."

### Period for Review and Consideration of Agreement

You have been given a period of seven (7) days from the date of this letter to review and consider this agreement before signing it. You may use as much of this seven (7) day period as you wish prior to signing. If you have not signed and returned this agreement to Deborah Millstein, Lehman Brothers Inc., 745 Seventh Avenue, New York, NY 10019 by that date, you will not be eligible to receive the payments and benefits described in this agreement.

You acknowledge that you have read this agreement, understand it and are voluntarily entering into it.

LEHMAN BROTHERS INC.

Deborah Millstein

[NAME]

Date

# LEHMAN BROTHERS
## Executive Compensation Summary
### CHRISTIAN WHAMOND

### EQUITY AWARDS

| Grant Date | Plan | Shares Granted | Number of Shares | Status | Share Payment Date |
|---|---|---|---|---|---|
| November 9, 2007 | Special Award | 3,219.00 | 956.00 | Issued | January 15, 2008 |
|  |  |  | 2,263.00 | Unvested | Various |
| December 7, 2007 | LBSAP | 999.37 | 749.53 | Unvested | November 30, 2012 |
|  |  |  | 249.84 | Not Entitled | N/A |
|  | Dividend Reinvestment | 18.20 | 2.36 | Issued | January 15, 2008 |
|  |  |  | 15.04 | Unvested | Various |
|  |  |  | 0.80 | Not Entitled | N/A |

| | |
|---|---|
| Total Shares Granted: | 4,236.57 |
| Total Shares Issued: | 958.36 |
| Total Shares Not Entitled: | 250.64 |
| Total Shares Outstanding: | 3,027.57 |

**Special Award:** Restricted Stock Units ("RSUs") received as a special award at the time of employment. The disposition of these special RSUs is in accordance with the terms of your employment letter.

**2007 LBSAP:** Shares of common stock, which represent the principal portion (75% of your award), will be issued to you on the fifth anniversary of the grant date, provided that you do not engage in Detrimental Activity, and that you satisfy all other delivery conditions, through the share payment date. Please note that your entitlement to the unvested portion of your principal award is further conditioned on your execution of a Firm-standard release agreement, in accordance with applicable Firm policy. Finally, please note that, per provisions of the program, you are not entitled to receive the discount portion (25% of your award).

**Dividend Reinvestment:** Until your RSUs convert to common stock, if dividends are declared, you will receive dividend equivalents. Your dividend equivalents will be automatically reinvested as additional RSUs. The RSUs you receive as dividend equivalents will be subject to the same conditions as the underlying RSUs to which they relate. In the event the underlying RSUs are forfeited, the related dividend reinvested RSUs will also be forfeited.

*Disposition of shares assumes an involuntary separation without Cause on May 30, 2008.*

**NOTE:** ALL TERMS AND CONDITIONS OF THE AWARDS ARE SUBJECT TO THE APPLICABLE CONTROLLING PLAN DOCUMENTS, INCLUDING BUT NOT LIMITED TO YOUR EMPLOYMENT LETTER, THE RESTRICTED STOCK UNIT AWARD AGREEMENT, THE 2005 STOCK INCENTIVE PLAN, AND THE 2005 STOCK INCENTIVE PLAN PROSPECTUS.

Prepared on April 11, 2008

**CHRISTIAN WHAMOND**

| Grant Date | Grant price | Shares granted | Value |
|---|---|---|---|
| 9-Nov-07 | $ 58.07 | 2,263.00 | $ 131,412.41 |
| 7-Dec-07 | $ 63.47 | 749.53 | $ 47,570.00 |
| Dividend reinvestment (average share price) | $ 35.46 | 15.04 | $ 533.39 |
| **Totals** | | **3,027.57** | **$ 179,515.80** |

# LEHMAN BROTHERS
# EQUITY AWARD PROGRAM

*Personal Award Statement for:*

**CHRISTIAN WHAMOND**

The following award information is in accordance with the terms and conditions of the Lehman Brothers Stock Award Program approved by the Compensation and Benefits Committee of the Board of Directors.

| | |
|---|---|
| **Special Restricted Stock Units (RSUs)[1]:** | 3,219 RSUs |
| **Market Value of Restricted Stock Units** | |
| **Granted on November 9, 2007 @ $58.0700:** | $186,927 |

**Your RSUs will vest and convert to shares of common stock according to the schedule below:**

| Vest Date | Issue Date | | |
|---|---|---|---|
| January 15, 2008 | January 15, 2008 | 956 | RSUs |
| January 15, 2009 | January 15, 2009 | 1,486 | RSUs |
| January 15, 2010 | January 15, 2010 | 777 | RSUs |

| | |
|---|---|
| **Total Special RSU Award:** | 3,219 RSUs |

[1] Restricted Stock Units ("RSUs") received as a special award as stated in your employment letter. Except as provided in your employment letter, the terms of Holdings' standard stock award program (for employees having your corporate title) will govern your award of Special RSUs.

NOTE: This statement is intended to provide you with a summary of your award. All terms and conditions of the award are subject to the applicable controlling plan documents, including but not limited to your employment letter, the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus.

January 2008

## Lehman Brothers
## 2007 Total Compensation Statement

Employee: Whamond, Christian
Division: Global Principal Strategies
Hire Date: 11/9/07

Employee ID: 10278643
Stock Program: VP

### COMPENSATION HISTORY

| Compensation Type | Current - 2007 |
|---|---|
| Paid Salary | $5,769 |
| Bonus | $450,000 |
| **TOTAL COMPENSATION** | **$455,769** |

### EQUITY SUMMARY in USD

| | Equity Component | Market Price | Discount Price | Shares |
|---|---|---|---|---|
| RSUs | $47,570 | $63.47 | $47.60 | 999.37 |

Your equity award was calculated based on total compensation of $455,769, where "total compensation" includes salary, bonus, and other forms of eligible compensation. All terms and conditions of equity awards, including those relating to vesting and forfeiture, are subject to the controlling plan documents, including the FY 2007 equity award agreements (expected to be finalized in early 2008), the 2005 Stock Incentive Plan and related Prospectus.

### PAYMENT SCHEDULE

| | | | |
|---|---|---|---|
| Bonus | $450,000 | Bonus Guarantee: | $450,000 |
| Less Total RSUs | ($47,570) | | |
| Total Cash Payment (Before Taxes) | $402,430 | Payable on or about January 31, 2008 | |

### ANNUAL SALARY

Effective Fiscal Year 2008, your annual base salary will be as follows:

| Current Annual Salary | $150,000 |
|---|---|

Your rights to the bonus payment and equity awards are subject to the terms and conditions of the Firm's bonus policy and the controlling equity award documents, as applicable.

If you have any additional questions regarding your compensation or personal data, please contact your divisional HR representative. If you have any questions regarding your equity award, please contact the Compensation Department at (212) 526-8346.

Rieder, R
10-Dec-07