JONES DAY
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306


Special Counsel to Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
```

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

```
-------------------------------------------------------------------x
```

### SEVENTH INTERIM APPLICATION OF JONES DAY, SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE PERIOD FROM OCTOBER 1, 2010 THROUGH JANUARY 31, 2011

| | |
|---|---|
| Name of Applicant: | Jones Day |
| Authorized to Provide Professional Services to: | Lehman Brothers Holdings Inc. and its affiliated debtors |
| Date of Retention Order: | February 25, 2009 (effective *nunc pro tunc* to the Engagement Dates, as defined in the Retention Application (as such term is defined below))[1] |
| Period for Which Compensation and Reimbursement are Sought | October 1, 2010 to January 31, 2011 |
| Amount of Professional Fees Sought as Actual, Reasonable, and Necessary: | $6,729,469.37 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $255,545.32 |

---

[1]     Jones Day's retention was subsequently expanded by various supplemental retention orders entered by the Court.

Name of Applicant:                                    <u>Jones Day</u>

Total Amount Sought:                                  <u>$6,985,014.69</u>[2]

This is an/a:        <u>X</u> Interim       ___ Final Application.

Total Amount Received for this Application:           <u>$5,631,934.76</u>

Total Amount Received for All Prior Applications:     <u>$43,351,365.24</u>

Aggregate Amount Paid to Date:                        <u>$48,983,300.00</u>

**<u>Total Compensation and Expenses
Previously Requested and Awarded:</u>**

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees[3] | Approved Expenses |
|-------|-------|----------------|----------------|---------------------|------------------|-------------------|
| 04/09/09 | 04/09/09 | 09/18/08 – 01/31/09 | $1,258,056.00 | $10,425.76 | $1,258,056.00 | $10,425.76 |
| 08/14/09 | 08/14/09 | 02/01/09 – 05/31/09 | $4,119,794.00 | $130,667.42 | $4,095,167.00 | $127,483.94 |
| 12/15/09 | 12/15/09 | 06/01/09 – 09/30/09 | $8,787,718.20 | $413,222.52 | $8,613,937.88 | $305,416.91 |
| 05/10/10 | 05/10/10 | 10/01/09 – 01/31/10 | $9,143,140.60 | $266,470.81 | $8,534,767.56 | $199,731.20 |
| 08/16/10 | 08/16/10 | 02/01/10 – 05/31/10 | $12,925,764.10 | $361,198.39 | $12,748,365.64 | $348,623.74 |
| 12/14/10 | 12/14/10 | 06/01/10 – 09/30/10 | $11,570,294.70 | $369,641.54 | Not yet determined. | Not yet determined. |

---

[2]      This amount includes $89,558.07 in fees and expenses incurred in the Adelphia Matters, as described in greater detail below.  This amount also reflects voluntary reductions made by Jones Day in the aggregate amount of $129,745.00 on account of fees and expenses incurred during the Compensation Period.

[3]      The "Approved Fees" do not include certain of those fees ("<u>Disputed Fees</u>") in respect of which the Fee Committee (as defined below) has raised certain objections, which objections are disputed by Jones Day.  Jones Day and the Fee Committee have agreed to defer presenting the Disputed Fees to this Court for ruling until a later date.

**COMPENSATION PERIOD**

**OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|---|
| **Partner** | | | | | |
| ADAM PLAINER | 1991 | 1175 | N/A | 11.80 | 13,865.00 |
| ALEXANDER GENDZIER | 1994 | 750 | N/A | 0.60 | 450.00 |
| AVIVA WARTER SISITSKY | 1996 | 700 | 725 | 632.30 | 445,845.00 |
| AVIVA YAKREN | 1997 | 700 | N/A | 10.00 | 7,000.00 |
| CANDACE RIDGWAY | 1988 | N/A | 800 | 2.40 | 1,920.00 |
| CARL BLACK | 1998 | 650 | 675 | 142.50 | 93,445.00 |
| CHUNG-PING LIU | 1996 | 450 | 500 | 16.50 | 7,725.00 |
| COLLEEN LADUZINSKI | 2001 | N/A | 700 | 1.60 | 1,120.00 |
| CORINNE BALL | 1979 | 950 | N/A | 67.60 | 64,220.00 |
| DAVID KATES | 1995 | 625 | N/A | 3.30 | 2,062.50 |
| EDWARD NALBANTIAN | 1983 | 880 | 880 | 176.20 | 155,056.00 |
| ELIZABETH EVANS | 1990 | 825 | 850 | 7.10 | 5,885.00 |
| ERIC SEDLAK | 1984 | 675 | 725 | 37.60 | 25,475.00 |
| GLENN ARDEN | 1986 | 775 | 800 | 80.70 | 63,140.00 |
| IAIN SEOW | 1993 | 700 | N/A | 12.00 | 8,400.00 |
| JAYANT TAMBE | 1992 | 775 | 800 | 296.30 | 230,205.00 |
| JEREMY COLE | 1999 | 550 | 600 | 16.30 | 8,985.00 |
| JOEL TELPNER | 1984 | 825 | 850 | 207.50 | 172,147.50 |
| KAORU UMINO | 1987 | N/A | 725 | 6.50 | 4,712.50 |
| LEE COFFEY | 1992 | 1075 | N/A | 0.50 | 537.50 |
| LEE RUSSO | 1980 | 700 | N/A | 6.40 | 4,480.00 |
| LUIS RIESGO | 1989 | N/A | 675 | 2.80 | 1,890.00 |
| MARK CODY | 1996 | 700 | 725 | 59.50 | 42,342.50 |
| MARK SISITSKY | 1971 | 800 | 825 | 154.90 | 124,480.00 |
| MICHAEL BROWN | 1993 | 1075 | 925 | 33.30 | 33,382.50 |
| MICHAEL RUTSTEIN | 2008 | 1125 | N/A | 0.50 | 562.50 |
| NOBUTOSHI YAMANOUCHI | 1972 | N/A | 775 | 2.00 | 1,550.00 |
| PETER BENVENUTTI | 1974 | 800 | 800 | 89.60 | 71,680.00 |
| PHILIP HOSER | 1982 | 675 | 675 | 90.10 | 60,817.50 |

---

[4]    As specifically disclosed and anticipated in Jones Day's Retention Application (as such term is defined below), the hourly rates of Jones Day's professionals and paraprofessionals were adjusted effective January 1, 2011 ("2011 Billing Rates") in accordance with Jones Day's established billing practices and procedures.  The 2011 Billing Rates reflect the ordinary course annual billing rate adjustments for the calendar year commencing on January 1, 2011.

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|---|
| RICHARD ENGMAN | 1997 | 775 | 800 | 74.80 | 58,232.50 |
| RIKA SATO | 1992 | 600 | 650 | 19.20 | 11,535.00 |
| ROBERT GAFFEY | 1982 | 825 | 850 | 375.90 | 311,822.50 |
| SEVAN OGULLUK | 1999 | 650 | 675 | 79.10 | 51,855.00 |
| SION RICHARDS | 1996 | 880 | N/A | 31.50 | 27,720.00 |
| STEVEN KOPPEL | 1985 | 800 | N/A | 11.00 | 8,800.00 |
| TIM FLOOD | 1998 | 880 | N/A | 0.20 | 176.00 |
| TODD GEREMIA | 1999 | 700 | N/A | 46.40 | 32,480.00 |
| TONI-ANN CITERA | 1996 | 725 | 750 | 174.90 | 128,050.00 |
| TONY WASSAF | 1980 | 675 | 675 | 2.50 | 1,687.50 |
| TRACY SCHAFFER | 2001 | 650 | N/A | 360.20 | 234,130.00 |
| TRACY STRATFORD | 1998 | 525 | 550 | 7.10 | 3,757.50 |
| VANESSA SPIRO | 1989 | 775 | 800 | 60.60 | 47,455.00 |
| WILLIAM BRYSON | 1985 | 575 | 575 | 10.90 | 6,267.50 |
| WILLIAM HINE | 1996 | 700 | 725 | 374.70 | 262,947.50 |
| YUICHIRO MORI | 1993 | 600 | 650 | 4.80 | 2,900.00 |
| **Partner Total:** | | | | **3,802.20** | **2,843,197.00** |
| | | | | | |
| **Counsel** | | | | | |
| DEEPAK REDDY | 1998 | 700 | N/A | 1.30 | 910.00 |
| **Counsel Total:** | | | | **1.30** | **910.00** |
| | | | | | |
| **Of Counsel** | | | | | |
| AMY KHO | 2002 | 840 | 840 | 207.00 | 173,880.00 |
| CHRISTINE KIM | 1989 | 925 | 925 | 253.20 | 234,210.00 |
| ELIZABETH TERRITT | 1998 | 840 | 840 | 54.70 | 45,948.00 |
| LINTON BLOOMBERG | 1997 | 975 | N/A | 34.80 | 33,930.00 |
| RICHARD KOSNIK | 1983 | 775 | N/A | 1.60 | 1,240.00 |
| ROBERT SHANSKY | 1972 | 725 | N/A | 0.20 | 145.00 |
| STEVEN FLEMING | 1994 | 550 | N/A | 12.70 | 6,985.00 |
| **Of Counsel Total:** | | | | **564.20** | **496,338.00** |
| | | | | | |
| **Associate** | | | | | |
| ALEX MIDDLETON | 2009 | 275 | N/A | 6.60 | 1,815.00 |
| ALEXANDER MCBRIDE | 2007 | 375 | 425 | 115.30 | 44,757.50 |
| ALEXANDER VAN VOORHEES | 2006 | 400 | N/A | 9.40 | 3,760.00 |
| ARNOLDO CONCEPCION | 2005 | N/A | 450 | 2.50 | 1,125.00 |
| BENJAMIN ROSENBLUM | 2005 | 550 | 625 | 327.70 | 187,982.50 |
| BRIANA HULET | 2009 | 325 | 350 | 23.60 | 7,995.00 |
| BRIDGET CRAWFORD | 2009 | 350 | 400 | 375.70 | 132,120.00 |

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|------|------|-----------|--------------|---------------------------|--------------------------|
| CHIAHENG SEETOO | 2007 | 225 | 250 | 10.20 | 2,325.00 |
| CHRISTINE HOHL | 2010 | 224 | 224 | 55.70 | 12,476.80 |
| CLAIRE WELLS | 2009 | 325 | 350 | 19.10 | 6,285.00 |
| DANIEL CULHANE | 2009 | 325 | N/A | 48.80 | 15,860.00 |
| DANIEL SYPHARD | 2005 | 375 | N/A | 9.60 | 3,600.00 |
| DAVID MARKS | 2009 | 325 | 425 | 397.40 | 139,235.00 |
| DAVID SHAFER | 2008 | 375 | 425 | 32.30 | 12,622.50 |
| EDWARD MARSHBAUM | 2008 | 275 | N/A | 2.00 | 550.00 |
| ELIZABETH GREENBERG | 2009 | 325 | 350 | 203.20 | 66,825.00 |
| EMILY ROMANINSKY | 2004 | 475 | 500 | 28.40 | 13,945.00 |
| EMMA SHELSTON | 2010 | 250 | 275 | 24.30 | 6,175.00 |
| ERI UERKWITZ | 2007 | 375 | N/A | 35.50 | 13,312.50 |
| ERIC STEPHENS | 2009 | 325 | 350 | 367.60 | 119,760.00 |
| ERIN SHENCOPP | 2003 | 475 | N/A | 11.70 | 5,557.50 |
| HEATHER THOMPSON | 2005 | 450 | N/A | 13.60 | 6,120.00 |
| HIROYUKI YOSHIOKA | 2007 | N/A | 350 | 3.20 | 1,120.00 |
| IAN REID | 2003 | 700 | N/A | 3.50 | 2,450.00 |
| I-HENG HSU | 2010 | N/A | 325 | 7.50 | 2,437.50 |
| JAMES DOUGLAS | 1997 | 275 | N/A | 2.40 | 660.00 |
| JAMES GOLDFARB | 2001 | 550 | 575 | 116.60 | 64,152.50 |
| JENNIFER O'NEIL | 2007 | 450 | N/A | 72.40 | 32,580.00 |
| JI UNG KIM | 2010 | 275 | 300 | 299.10 | 82,715.00 |
| JOHN MCMAHON | 2008 | 350 | N/A | 258.60 | 90,510.00 |
| JONATHAN GOREN | 2009 | 325 | N/A | 7.00 | 2,275.00 |
| JONATHAN LAMBERTI | 2010 | 325 | N/A | 20.70 | 6,727.50 |
| JORDAN SCHWARTZ | 2009 | 325 | N/A | 9.20 | 2,990.00 |
| JOSEPH TILLER | 2006 | 450 | 500 | 99.80 | 46,310.00 |
| JUNKO DOCHI | 2002 | N/A | 450 | 1.20 | 540.00 |
| JUSTIN CARROLL | 2008 | N/A | 475 | 2.30 | 1,092.50 |
| KAMILLA MAMEDOVA | 2008 | 350 | N/A | 30.40 | 10,640.00 |
| KELLY CARRERO | 2004 | 500 | N/A | 287.70 | 143,850.00 |
| KOSUKE NAMBA | 2005 | N/A | 400 | 7.00 | 2,800.00 |
| LAIRD NELSON | 2009 | 325 | 425 | 17.40 | 6,785.00 |
| LAUREN BUONOME | 2009 | 325 | N/A | 26.60 | 8,645.00 |
| LEE POLLACK | 2006 | 400 | 450 | 466.60 | 192,995.00 |
| LISA ALLENDEN | 2009 | 225 | N/A | 2.00 | 450.00 |
| LYNN MARVIN | 2004 | 475 | N/A | 0.50 | 237.50 |
| MAHESH PARLIKAD | 2008 | 350 | 375 | 33.20 | 12,120.00 |
| MATTHEW CHOW | 2009 | 325 | 350 | 128.20 | 42,360.00 |
| MERCEDES ABAD | 1999 | N/A | 475 | 10.00 | 4,750.00 |
| MICHAEL AKLUFI | 1999 | 600 | N/A | 2.10 | 1,260.00 |

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|---|
| MICHAEL DAILEY | 2009 | 325 | 350 | 336.90 | 109,692.50 |
| MICHAEL SILBERFARB | 2005 | 475 | 500 | 209.70 | 102,160.00 |
| MICHAEL THAYER | 2009 | 325 | 350 | 238.50 | 80,287.50 |
| MICHELE MACHALANI | 2008 | 350 | N/A | 13.90 | 4,865.00 |
| MICHELLE HERMAN | 2003 | 500 | N/A | 3.00 | 1,500.00 |
| MING WEI LO | 1997 | 375 | 400 | 55.60 | 21,180.00 |
| MIRIAM REZNIK | 2009 | 350 | 375 | 182.50 | 64,320.00 |
| MIYUKA NISHI | 1997 | 530 | N/A | 3.80 | 2,014.00 |
| NAHO KANEKO | 2008 | N/A | 325 | 13.00 | 4,225.00 |
| NANCY LU | 2006 | 325 | N/A | 22.20 | 7,215.00 |
| NATHAN LEBIODA | 2006 | 500 | 575 | 306.60 | 160,380.00 |
| NICHOLAS DAVIES | 2007 | 540 | N/A | 4.80 | 2,592.00 |
| NICHOLAS KAMPHAUS | 2008 | 425 | 475 | 27.20 | 11,660.00 |
| NIDHI YADAVA | 2008 | 350 | 375 | 58.30 | 20,655.00 |
| OLIVER RICHARDSON | 2010 | 225 | N/A | 3.00 | 675.00 |
| PATRICK KABAT | 2010 | 225 | N/A | 13.70 | 3,082.50 |
| PAUL GREEN | 2008 | 350 | 375 | 235.90 | 83,860.00 |
| PETER BRABANT | 2004 | 375 | 400 | 127.40 | 48,465.00 |
| PETER WILKINSON | 2007 | 430 | 450 | 278.00 | 119,966.00 |
| RAJEEV MUTTREJA | 2005 | 350 | N/A | 19.60 | 6,860.00 |
| ROSS BARR | 2004 | 625 | 675 | 124.30 | 78,212.50 |
| SABRINA GLIMCHER | 2010 | 325 | N/A | 4.40 | 1,430.00 |
| SARAH LIEBER | 2003 | 500 | 525 | 325.20 | 165,412.50 |
| SATARUPA CHAKRAVORTTY | 2006 | 565 | 575 | 45.00 | 25,440.00 |
| SATOSHI YAMABE | 2009 | 270 | 300 | 35.70 | 9,696.00 |
| SCOTT GRIFFIN | 2000 | 675 | 700 | 92.80 | 62,962.50 |
| SEAN MURPHY | 2008 | 350 | N/A | 26.00 | 9,100.00 |
| SHINGO GOTO | 2003 | N/A | 450 | 29.50 | 13,275.00 |
| STELA TIPI | 2005 | 475 | 500 | 253.00 | 121,307.50 |
| SUSAN TURK | 2008 | 350 | N/A | 346.40 | 121,240.00 |
| TAKAKO YAKO | 2005 | N/A | 400 | 19.30 | 7,720.00 |
| TETSUYA FUNO | 2008 | 285 | N/A | 10.60 | 3,021.00 |
| THOMAS WILSON | 2003 | 475 | N/A | 1.50 | 712.50 |
| TODD WILKINSON | 2010 | 325 | N/A | 19.60 | 6,370.00 |
| TOSHIAKI TAKAHASHI | 2010 | N/A | 270 | 6.00 | 1,620.00 |
| WARREN POSTMAN | 2007 | 325 | N/A | 24.60 | 7,995.00 |
| WILLIAM NEEDHAM | 2008 | 350 | N/A | 40.10 | 14,035.00 |
| YASUNOBU TAKATAMA | 2007 | 300 | 350 | 70.00 | 22,775.00 |
| YOSHITAKE MASUDA | 1996 | N/A | 525 | 18.60 | 9,765.00 |
| Associate Total: | | | | 7,681.60 | 3,105,400.80 |

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|---|
| | | | | | |
| **Senior Staff Attorney** | | | | - | - |
| JENNY LEE | 1985 | 550 | 550 | 12.20 | 6,710.00 |
| **Senior Staff Attorney Total:** | | | | **12.20** | **6,710.00** |
| | | | | | |
| **Staff Attorney** | | | | - | - |
| ALEX YANG | 2009 | 200 | 200 | 14.90 | 2,980.00 |
| CINDY CHIEN | 2005 | 200 | 225 | 41.40 | 8,697.50 |
| LYNNE FISCHER | 1996 | 275 | 300 | 70.20 | 20,262.50 |
| **Staff Attorney Total:** | | | | **126.50** | **31,940.00** |
| | | | | | |
| **Paraprofessional** | | | | - | - |
| BRETT STONE | N/A | 275 | N/A | 15.80 | 4,345.00 |
| ANDREW SAMUELSON | N/A | 250 | 250 | 85.50 | 21,375.00 |
| CARISSA CHAN | N/A | 250 | N/A | 39.50 | 9,875.00 |
| CHRISTOPHER RATHBONE | N/A | 240 | N/A | 2.50 | 600.00 |
| DANIEL YI | N/A | 250 | 250 | 11.20 | 2,800.00 |
| DANIELLE CHERENCE | N/A | N/A | 250 | 0.50 | 125.00 |
| EDITH HO | N/A | 250 | 250 | 176.00 | 44,000.00 |
| EVA LAM | N/A | 225 | N/A | 0.20 | 45.00 |
| FLORENCE NG | N/A | 150 | 150 | 55.40 | 8,310.00 |
| HIROKO NAKAO | N/A | 230 | N/A | 0.50 | 115.00 |
| JANIS TREANOR | N/A | 275 | 275 | 0.90 | 247.50 |
| JULIAN ENTNER | N/A | 275 | N/A | 0.70 | 192.50 |
| KEVIN ENGLERT | N/A | 175 | 175 | 111.50 | 19,512.50 |
| KRISTY POSCH | N/A | 225 | 225 | 14.40 | 3,240.00 |
| LOUISE O'HARA | N/A | 170 | 175 | 1.40 | 240.00 |
| MARILYN KATZ | N/A | 175 | N/A | 0.70 | 122.50 |
| MARY HEMANN | N/A | 200 | 200 | 19.50 | 3,900.00 |
| MATTHEW LATZMAN | N/A | 250 | 250 | 218.30 | 54,575.00 |
| ROGER LOK | N/A | 180 | 185 | 21.60 | 3,898.00 |
| SANDY FAN | N/A | 230 | N/A | 4.80 | 1,104.00 |
| SOPHIA BRYAN | N/A | 275 | N/A | 1.70 | 467.50 |
| STEPHEN FERRY | N/A | 250 | N/A | 114.90 | 28,725.00 |
| TAMMY LIAO | N/A | 250 | N/A | 4.30 | 1,075.00 |
| VICKY BANSON | N/A | 225 | N/A | 0.20 | 45.00 |
| **Paraprofessional Total:** | | | | **902.00** | **208,934.50** |
| | | | | | |

NYI- 4372986v3

| Name | Year | Rate 2010 | Rate[4] 2011 | Compensation Period Hours | Compensation Period Fees |
|------|------|-----------|--------------|---------------------------|--------------------------|
| **Grand Total** | | | | **13,090.00** | **6,693,430.30**[5] |

---

[5]    Jones Day also claims compensation in the amount of $89,558.07 for its representation of the Debtors between May 2009 to March 2011 with respect to the Adelphia Matters as defined in paragraph 40.

## COMPENSATION PERIOD

## OCTOBER 1, 2010 THROUGH JANUARY 31, 2011

## (BY JONES DAY MATTER)

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| **Asia Pacific (125426-600001)** | | |
| **Partner** | | |
| CHUNG-PING LIU | 16.50 | 7,725.00 |
| ERIC SEDLAK | 37.60 | 25,475.00 |
| IAIN SEOW | 12.00 | 8,400.00 |
| PHILIP HOSER | 90.10 | 60,817.50 |
| RIKA SATO | 19.20 | 11,535.00 |
| WILLIAM BRYSON | 10.90 | 6,267.50 |
| YUICHIRO MORI | 4.80 | 2,900.00 |
| **Partner Total:** | **191.10** | **123,120.00** |
| | | |
| **Of Counsel** | | |
| CHRISTINE KIM | 253.20 | 234,210.00 |
| STEVEN FLEMING | 4.40 | 2,420.00 |
| **Of Counsel Total:** | **257.60** | **236,630.00** |
| | | |
| **Associate** | | |
| CHIAHENG SEETOO | 10.20 | 2,325.00 |
| EDWARD MARSHBAUM | 2.00 | 550.00 |
| EMMA SHELSTON | 22.80 | 5,800.00 |
| JAMES DOUGLAS | 2.40 | 660.00 |
| JENNIFER O'NEIL | 72.40 | 32,580.00 |
| JI UNG KIM | 299.10 | 82,715.00 |
| LAUREN BUONOME | 25.90 | 8,417.50 |
| MING WEI LO | 55.60 | 21,180.00 |
| MIYUKA NISHI | 3.80 | 2,014.00 |
| PETER BRABANT | 105.90 | 40,402.50 |
| PETER WILKINSON | 278.00 | 119,966.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| ROSS BARR | 104.10 | 65,587.50 |
| SATOSHI YAMABE | 35.70 | 9,696.00 |
| SEAN MURPHY | 26.00 | 9,100.00 |
| TETSUYA FUNO | 10.60 | 3,021.00 |
| TOSHIAKI TAKAHASHI | 6.00 | 1,620.00 |
| YASUNOBU TAKATAMA | 43.00 | 13,325.00 |
| **Associate Total:** | **1,103.50** | **418,959.50** |
| | | |
| **Senior Staff Attorney** | | |
| JENNY LEE | 12.20 | 6,710.00 |
| **Senior Staff Attorney Total:** | **12.20** | **6,710.00** |
| | | |
| **Staff Attorney** | | |
| ALEX YANG | 14.90 | 2,980.00 |
| CINDY CHIEN | 41.40 | 8,697.50 |
| **Staff Attorney Total:** | **56.30** | **11,677.50** |
| | | |
| **Paraprofessional** | | |
| CARISSA CHAN | 39.50 | 9,875.00 |
| CHRISTOPHER RATHBONE | 2.50 | 600.00 |
| EDITH HO | 176.00 | 44,000.00 |
| EVA LAM | 0.20 | 45.00 |
| FLORENCE NG | 55.40 | 8,310.00 |
| HIROKO NAKAO | 0.50 | 115.00 |
| LOUISE O'HARA | 1.40 | 240.00 |
| ROGER LOK | 21.60 | 3,898.00 |
| SANDY FAN | 4.80 | 1,104.00 |
| TAMMY LIAO | 4.30 | 1,075.00 |
| **Paraprofessional Total:** | **306.20** | **69,262.00** |
| | | |
| **Grand Total for Asia Pacific** | **1,926.90** | **866,359.00** |

NYI- 4372986v3

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| **Derivative Transactions (125426-600004) (*London*)** | | |
| **Partner** | | |
| AVIVA WARTER SISITSKY | 0.90 | 630.00 |
| EDWARD NALBANTIAN | 176.20 | 155,056.00 |
| LEE COFFEY | 0.50 | 537.50 |
| LUIS RIESGO | 2.80 | 1,890.00 |
| MICHAEL BROWN | 33.30 | 33,382.50 |
| **Partner Total:** | **213.70** | **191,496.00** |
| | | |
| **Of Counsel** | | |
| AMY KHO | 207.00 | 173,880.00 |
| ELIZABETH TERRITT | 54.70 | 45,948.00 |
| **Of Counsel Total:** | **261.70** | **219,828.00** |
| | | |
| **Associate** | | |
| BENJAMIN ROSENBLUM | 0.80 | 440.00 |
| CHRISTINE HOHL | 55.70 | 12,476.80 |
| EMMA SHELSTON | 1.50 | 375.00 |
| JAMES GOLDFARB | 1.90 | 1,045.00 |
| LISA ALLENDEN | 2.00 | 450.00 |
| MAHESH PARLIKAD | 2.00 | 700.00 |
| MERCEDES ABAD | 10.00 | 4,750.00 |
| NICHOLAS DAVIES | 4.80 | 2,592.00 |
| SATARUPA CHAKRAVORTTY | 45.00 | 25,440.00 |
| **Associate Total:** | **123.70** | **48,268.80** |
| | | |
| **Paraprofessional** | | |
| JULIAN ENTNER | 0.70 | 192.50 |
| VICKY BANSON | 0.20 | 45.00 |
| **Paraprofessional Total:** | **0.90** | **237.50** |
| | | |
| **Grand Total for Derivative Transactions (London)** | **600.00** | **459,830.30** |

NYI- 4372986v3

| Name | Compensation Period Hours | Compensation Period Fees |
|------|--------------------------|--------------------------|
|  |  |  |
| **LB UK RE Holdings Limited (125426-690001)** |  |  |
| **Partner** |  |  |
| ADAM PLAINER | 11.80 | 13,865.00 |
| MICHAEL RUTSTEIN | 0.50 | 562.50 |
| SION RICHARDS | 31.50 | 27,720.00 |
| TIM FLOOD | 0.20 | 176.00 |
| **Partner Total:** | **44.00** | **42,323.50** |
|  |  |  |
| **Of Counsel** |  |  |
| LINTON BLOOMBERG | 34.80 | 33,930.00 |
| **Of Counsel Total:** | **34.80** | **33,930.00** |
|  |  |  |
| **Associate** |  |  |
| IAN REID | 3.50 | 2,450.00 |
| OLIVER RICHARDSON | 3.00 | 675.00 |
| WILLIAM NEEDHAM | 40.10 | 14,035.00 |
| **Associate Total:** | **46.60** | **17,160.00** |
|  |  |  |
| **Grand Total for LB UK RE Holdings Limited** | **125.40** | **93,413.50** |
| **Metropolitan Pier and Exposition Authority (089600-605002)** |  |  |
| **Partner** |  |  |
| CORINNE BALL | 0.70 | 665.00 |
| DAVID KATES | 3.30 | 2,062.50 |
| JEREMY COLE | 2.80 | 1,560.00 |
| MARK CODY | 38.00 | 26,797.50 |
| **Partner Total:** | **44.80** | **31,085.00** |
|  |  |  |
| **Associate** |  |  |
| BENJAMIN ROSENBLUM | 0.20 | 110.00 |
| DAVID SHAFER | 14.10 | 5,287.50 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| JOSEPH TILLER | 47.50 | 21,375.00 |
| **Associate Total:** | **61.80** | **26,772.50** |
| | | |
| **Grand Total for Metropolitan Pier and Exposition Authority** | **106.60** | **57,857.50** |
| **Barclays (125426-600002)** | | |
| **Partner** | | |
| JAYANT TAMBE | 129.40 | 100,285.00 |
| ROBERT GAFFEY | 325.10 | 269,002.50 |
| TODD GEREMIA | 46.40 | 32,480.00 |
| TRACY SCHAFFER | 359.20 | 233,480.00 |
| WILLIAM HINE | 338.50 | 237,485.00 |
| **Partner Total:** | **1,198.60** | **872,732.50** |
| | | |
| **Of Counsel** | | |
| ROBERT SHANSKY | 0.20 | 145.00 |
| **Of Counsel Total:** | **0.20** | **145.00** |
| | | |
| **Associate** | | |
| BENJAMIN ROSENBLUM | 33.80 | 18,890.00 |
| BRIDGET CRAWFORD | 375.70 | 132,120.00 |
| ERIC STEPHENS | 305.40 | 99,255.00 |
| JOHN MCMAHON | 258.60 | 90,510.00 |
| KELLY CARRERO | 287.70 | 143,850.00 |
| MICHAEL DAILEY | 289.40 | 94,055.00 |
| MICHELE MACHALANI | 13.90 | 4,865.00 |
| NICHOLAS KAMPHAUS | 25.20 | 10,710.00 |
| PAUL GREEN | 235.90 | 83,860.00 |
| RAJEEV MUTTREJA | 19.60 | 6,860.00 |
| ROSS BARR | 20.20 | 12,625.00 |
| SUSAN TURK | 333.80 | 116,830.00 |
| WARREN POSTMAN | 24.60 | 7,995.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---:|---:|
| **Associate Total:** | **2,223.80** | **822,425.00** |
|  |  |  |
| **Paraprofessional** |  |  |
| DANIEL YI | 0.00 | 0.00 |
| KEVIN ENGLERT | 72.50 | 12,687.50 |
| MARILYN KATZ | 0.00 | 0.00 |
| MATTHEW LATZMAN | 216.80 | 54,200.00 |
| STEPHEN FERRY | 114.90 | 28,725.00 |
| **Paraprofessional Total:** | **404.20** | **95,612.50** |
|  |  |  |
| **Grand Total for Barclays** | **3,826.80** | **1,790,915.00** |
| **Derivatives (089600-016075) (*New York*)** |  |  |
| **Partner** |  |  |
| AVIVA WARTER SISITSKY | 631.40 | 445,215.00 |
| AVIVA YAKREN | 10.00 | 7,000.00 |
| CANDACE RIDGWAY | 2.40 | 1,920.00 |
| CARL BLACK | 131.60 | 86,360.00 |
| COLLEEN LADUZINSKI | 1.60 | 1,120.00 |
| CORINNE BALL | 58.30 | 55,385.00 |
| EDWARD NALBANTIAN | 0.00 | 0.00 |
| GLENN ARDEN | 80.70 | 63,140.00 |
| JAYANT TAMBE | 166.90 | 129,920.00 |
| JEREMY COLE | 13.50 | 7,425.00 |
| JOEL TELPNER | 207.50 | 172,147.50 |
| KAORU UMINO | 6.50 | 4,712.50 |
| LEE RUSSO | 6.40 | 4,480.00 |
| MARK CODY | 21.50 | 15,545.00 |
| MARK SISITSKY | 154.90 | 124,480.00 |
| NOBUTOSHI YAMANOUCHI | 2.00 | 1,550.00 |
| RICHARD ENGMAN | 39.20 | 30,380.00 |
| SEVAN OGULLUK | 79.10 | 51,855.00 |
| STEVEN KOPPEL | 11.00 | 8,800.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| TONI-ANN CITERA | 174.90 | 128,050.00 |
| TRACY STRATFORD | 7.10 | 3,757.50 |
| VANESSA SPIRO | 9.70 | 7,517.50 |
| **Partner Total:** | **1,816.20** | **1,350,760.00** |
| | | |
| **Of Counsel** | | |
| STEVEN FLEMING | 0.30 | 165.00 |
| **Of Counsel Total:** | **0.30** | **165.00** |
| | | |
| **Associate** | | |
| ALEX MIDDLETON | 6.60 | 1,815.00 |
| ALEXANDER MCBRIDE | 115.30 | 44,757.50 |
| ALEXANDER VAN VOORHEES | 9.40 | 3,760.00 |
| ARNOLDO CONCEPCION | 2.50 | 1,125.00 |
| BENJAMIN ROSENBLUM | 290.10 | 167,002.50 |
| BRIANA HULET | 23.60 | 7,995.00 |
| CLAIRE WELLS | 19.10 | 6,285.00 |
| DANIEL CULHANE | 48.80 | 15,860.00 |
| DANIEL SYPHARD | 9.60 | 3,600.00 |
| DAVID MARKS | 397.40 | 139,235.00 |
| DAVID SHAFER | 18.20 | 7,335.00 |
| ELIZABETH GREENBERG | 201.70 | 66,337.50 |
| EMILY ROMANINSKY | 28.40 | 13,945.00 |
| ERI UERKWITZ | 35.50 | 13,312.50 |
| ERIN SHENCOPP | 11.70 | 5,557.50 |
| HEATHER THOMPSON | 1.60 | 720.00 |
| HIROYUKI YOSHIOKA | 3.20 | 1,120.00 |
| I-HENG HSU | 7.50 | 2,437.50 |
| JAMES GOLDFARB | 104.80 | 57,662.50 |
| JONATHAN GOREN | 2.00 | 650.00 |
| JOSEPH TILLER | 52.30 | 24,935.00 |
| JUNKO DOCHI | 1.20 | 540.00 |
| KAMILLA MAMEDOVA | 30.40 | 10,640.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| KOSUKE NAMBA | 7.00 | 2,800.00 |
| LAIRD NELSON | 17.40 | 6,785.00 |
| LAUREN BUONOME | 0.70 | 227.50 |
| LEE POLLACK | 466.60 | 192,995.00 |
| LYNN MARVIN | 0.50 | 237.50 |
| MAHESH PARLIKAD | 31.20 | 11,420.00 |
| MATTHEW CHOW | 128.20 | 42,360.00 |
| MICHAEL AKLUFI | 0.00 | 0.00 |
| MICHAEL DAILEY | 47.50 | 15,637.50 |
| MICHAEL SILBERFARB | 209.70 | 102,160.00 |
| MICHAEL THAYER | 238.50 | 80,287.50 |
| MIRIAM REZNIK | 182.50 | 64,320.00 |
| NAHO KANEKO | 13.00 | 4,225.00 |
| NANCY LU | 22.20 | 7,215.00 |
| NATHAN LEBIODA | 306.60 | 160,380.00 |
| NICHOLAS KAMPHAUS | 2.00 | 950.00 |
| NIDHI YADAVA | 58.30 | 20,655.00 |
| PATRICK KABAT | 13.70 | 3,082.50 |
| PETER BRABANT | 0.00 | 0.00 |
| SABRINA GLIMCHER | 4.40 | 1,430.00 |
| SARAH LIEBER | 325.20 | 165,412.50 |
| SCOTT GRIFFIN | 20.60 | 13,905.00 |
| SHINGO GOTO | 29.50 | 13,275.00 |
| STELA TIPI | 253.00 | 121,307.50 |
| SUSAN TURK | 4.90 | 1,715.00 |
| TAKAKO YAKO | 19.30 | 7,720.00 |
| THOMAS WILSON | 1.50 | 712.50 |
| TODD WILKINSON | 19.60 | 6,370.00 |
| YASUNOBU TAKATAMA | 27.00 | 9,450.00 |
| YOSHITAKE MASUDA | 18.60 | 9,765.00 |
| **Associate Total:** | **3,890.10** | **1,663,427.50** |
|  |  |  |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| **Staff Attorney** | | |
| LYNNE FISCHER | 70.20 | 20,262.50 |
| **Staff Attorney Total:** | **70.20** | **20,262.50** |
| | | |
| **Paraprofessional** | | |
| ANDREW SAMUELSON | 85.50 | 21,375.00 |
| BRETT STONE | 13.30 | 3,657.50 |
| DANIEL YI | 11.20 | 2,800.00 |
| DANIELLE CHERENCE | 0.50 | 125.00 |
| JANIS TREANOR | 0.90 | 247.50 |
| KEVIN ENGLERT | 39.00 | 6,825.00 |
| KRISTY POSCH | 14.40 | 3,240.00 |
| MARILYN KATZ | 0.00 | 0.00 |
| MARY HEMANN | 19.50 | 3,900.00 |
| MATTHEW LATZMAN | 1.50 | 375.00 |
| SOPHIA BRYAN | 1.70 | 467.50 |
| **Paraprofessional Total:** | **187.50** | **43,012.50** |
| | | |
| **Grand Total for Derivatives (New York)** | **5,964.30** | **3,077,627.50** |
| **Greenbrier Minerals LLC (125426-635001)** | | |
| **Partner** | | |
| RICHARD ENGMAN | 35.60 | 27,852.50 |
| **Partner Total:** | **35.60** | **27,852.50** |
| | | |
| **Associate** | | |
| BENJAMIN ROSENBLUM | 0.30 | 165.00 |
| JORDAN SCHWARTZ | 9.20 | 2,990.00 |
| JUSTIN CARROLL | 2.30 | 1,092.50 |
| SCOTT GRIFFIN | 72.20 | 49,057.50 |
| **Associate Total:** | **84.00** | **53,305.00** |
| | | |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| **Grand Total for Greenbrier Minerals LLC** | **119.60** | **81,157.50** |
| **Chicago Mercantile Exchange (125426-685001)** | | |
| **Partner** | | |
| ROBERT GAFFEY | 33.40 | 28,377.50 |
| WILLIAM HINE | 4.90 | 3,552.50 |
| **Partner Total:** | **38.30** | **31,930.00** |
| | | |
| **Associate** | | |
| BENJAMIN ROSENBLUM | 0.60 | 330.00 |
| ERIC STEPHENS | 11.60 | 4,060.00 |
| SUSAN TURK | 7.70 | 2,695.00 |
| **Associate Total:** | **19.90** | **7,085.00** |
| | | |
| **Grand Total for Chicago Mercantile Exchange** | **58.20** | **39,015.00** |
| **Norton Gold Fields Limited (089600-016076)** | | |
| **Partner** | | |
| ALEXANDER GENDZIER | 0.60 | 450.00 |
| CARL BLACK | 0.40 | 260.00 |
| TONY WASSAF | 2.50 | 1,687.50 |
| VANESSA SPIRO | 50.90 | 39,937.50 |
| **Partner Total:** | **54.40** | **42,335.00** |
| | | |
| **Of Counsel** | | |
| RICHARD KOSNIK | 1.60 | 1,240.00 |
| STEVEN FLEMING | 8.00 | 4,400.00 |
| **Of Counsel Total:** | **9.60** | **5,640.00** |
| | | |
| **Associate** | | |
| ELIZABETH GREENBERG | 1.50 | 487.50 |
| HEATHER THOMPSON | 12.00 | 5,400.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| JAMES GOLDFARB | 9.90 | 5,445.00 |
| JONATHAN GOREN | 5.00 | 1,625.00 |
| JONATHAN LAMBERTI | 20.70 | 6,727.50 |
| MICHAEL AKLUFI | 2.10 | 1,260.00 |
| PETER BRABANT | 21.50 | 8,062.50 |
| **Associate Total:** | **72.70** | **29,007.50** |
| | | |
| **Paraprofessional** | | |
| MARILYN KATZ | 0.70 | 122.50 |
| **Paraprofessional Total:** | **0.70** | **122.50** |
| | | |
| **Grand Total for Norton Gold Fields Limited** | **137.40** | **77,105.00** |
| **Aircraft Dispositions (125426-600005)** | | |
| **Partner** | | |
| ELIZABETH EVANS | 7.10 | 5,885.00 |
| **Partner Total:** | **7.10** | **5,885.00** |
| | | |
| **Counsel** | | |
| DEEPAK REDDY | 1.30 | 910.00 |
| **Counsel Total:** | **1.30** | **910.00** |
| | | |
| **Associate** | | |
| MICHELLE HERMAN | 3.00 | 1,500.00 |
| **Associate Total:** | **3.00** | **1,500.00** |
| | | |
| **Grand Total for Aircraft Dispositions** | **11.40** | **8,295.00** |
| **Federal Reserve Bank of New York (125426-695001)** | | |
| **Partner** | | |
| ROBERT GAFFEY | 17.40 | 14,442.50 |
| TRACY SCHAFFER | 1.00 | 650.00 |

| Name | Compensation Period Hours | Compensation Period Fees |
|---|---|---|
| WILLIAM HINE | 31.30 | 21,910.00 |
| **Partner Total:** | **49.70** | **37,002.50** |
| | | |
| **Associate** | | |
| ERIC STEPHENS | 50.60 | 16,445.00 |
| **Associate Total:** | **50.60** | **16,445.00** |
| | | |
| **Grand Total for Federal Reserve Bank of New York** | **100.30** | **53,447.50** |
| **Non-Derivative Avoidance Actions (125426-600006)** | | |
| **Partner** | | |
| CARL BLACK | 10.50 | 6,825.00 |
| CORINNE BALL | 8.60 | 8,170.00 |
| **Partner Total:** | **19.10** | **14,995.00** |
| | | |
| **Associate** | | |
| BENJAMIN ROSENBLUM | 1.90 | 1,045.00 |
| **Associate Total:** | **1.90** | **1,045.00** |
| | | |
| **Grand Total for Non-Derivative Avoidance Actions** | **21.00** | **16,040.00** |
| **CEIDCO/Kontrabecki (593926-600001)** | | |
| **Partner** | | |
| PETER BENVENUTTI | 89.60 | 71,680.00 |
| **Partner Total:** | **89.60** | **71,680.00** |
| | | |
| **Paraprofessional** | | |
| BRETT STONE | 2.50 | 687.50 |
| **Paraprofessional Total:** | **2.50** | **687.50** |
| | | |
| **Grand Total for CEIDCO/Kontrabecki** | **92.10** | **72,367.50** |

JONES DAY
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Special Counsel to Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                    :        Chapter 11 Case No.
                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                         :
                        Debtors.         :        (Jointly Administered)
                                         :
---------------------------------------------------------------------x

**SEVENTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE**
**PERIOD FROM OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Jones Day, special counsel for Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"), submits this seventh interim application (the "Application") seeking (a) allowance of compensation for professional services rendered by Jones Day to the Debtors in the amount of $6,639,911.30, (b) reimbursement of actual and necessary charges and disbursements incurred by Jones Day in the rendition of required professional services on behalf of the Debtors in the amount of $255,545.32,[6] in each case for the period from October 1, 2010 through January 31, 2011 (the "Compensation Period"), and (c) allowance of compensation

---

[6]      Such amounts reflect voluntary reductions made by Jones Day in the aggregate amount of $129,745.00 on account of fees and expenses incurred during the Compensation Period.

for professional services rendered by Jones Day to the Debtors arising from its representation

of the Debtors between May 2009 to March 2011 with respect to the Adelphia Matters (as

defined in paragraph 40 below) plus reimbursement of actual and necessary charges and

disbursements incurred by Jones Day in the rendition of such services in the amount of

$89,558.07, pursuant to section 330(a) of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996

(the "UST Guidelines"), General Order M-151, Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the

"Local Guidelines"), and the Fourth Amended Order Pursuant to Sections 105(a) and 331 of

the Bankruptcy Code and Bankruptcy Rule 2016(b) Establishing Procedures for Interim

Monthly Compensation and Reimbursement of Expenses of Professionals, entered in these

cases on April 14, 2011 [Docket No. 15997] (the "Interim Compensation Order").  In support

of this Application, Jones Day respectfully represents as follows.

## Background

1.     Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the

other Debtors commenced with the United States Bankruptcy Court of the Southern District

of New York (the "Court") voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate. On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

4.      On May 26, 2009, the Court appointed a fee committee (the "Fee Committee"), and approved a protocol to govern the review and payment of fees and reimbursement of expenses of professionals retained by the Debtors' estates, as amended (the "Fee Protocol"). The Fee Committee was authorized to perform the duties described in the Fee Protocol, including, among others, implementing procedures to effectively monitor the fees of the Retained Professionals (as defined in the Fee Protocol) and reducing inefficiency by establishing measures to avoid duplication of effort, overstaffing, the rendering of unnecessary services, and the incurrence of excessive or inappropriate expenses by Retained Professionals. Since its appointment, the Fee Committee has intermittently issued guidelines with respect to the fees and expenses of the Retained Professionals (the "Fee Committee Guidelines", together with the UST Guidelines, the Local Guidelines and the Interim Compensation Order, the "Guidelines").

5.      On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332]. On April 25, 2011, the Non-Consolidation Plan Proponents filed a joint chapter 11 plan and disclosure statement [Docket Nos. 16229 and 16230]. On April 27, 2011, the Ad Hoc Group of Lehman Brothers

Creditors filed an amended joint substantively consolidating chapter 11 plan and disclosure statement [Docket Nos. 16315 and 16316].

## Jurisdiction and Venue

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.      Pursuant to this Application, Jones Day seeks allowance of the following: (a) compensation for professional services rendered during the Compensation Period in the aggregate amount of $6,639,911.30; (b) reimbursement of expenses incurred in connection with such services in the aggregate amount of $255,545.32; and (c) compensation for professional services provided in relation to the Adelphia Matters (as defined herein) between May 2009 and March 2011 and reimbursements of expenses incurred in connection with such services in the aggregate amount of $89,558.07.

8.      During the Compensation Period, Jones Day attorneys and paraprofessionals expended a total of 13,090.00 hours for which compensation is requested.[7]

9.      Prefixed to this Application is the cover sheet required by the UST Guidelines, which includes a schedule setting forth the names of all Jones Day professionals and paraprofessionals who have performed services for which compensation is sought, the person's position in the firm, and the year in which each attorney was first admitted to practice law.  In addition, the schedule sets forth for each person (a) the hourly rate during the

---

[7]      This amount excludes hours expended by Jones Day attorneys and paraprofessionals in connection with the Adelphia Matters (as defined herein).  Jones Day represented the Debtors in the Adelphia Matters as only one member of a group of defendants.  Accordingly, the hours expended by Jones Day in representing the Debtors in the Adelphia Matters cannot be separated out from the hours spent representing the other defendants.

Compensation Period, (b) the total hours billed for which compensation is sought, and (c) the total compensation for such hours.

10.    Also prefixed to this Application is the summary sheet, requested by the Fee Committee, showing, for each Jones Day matter, the timekeepers who provided services (including their hours and fees) and the Jones Day number to which the relevant services apply.

11.    Annexed hereto as Exhibit "A" is a summary of the services rendered by Jones Day for which compensation is sought by project category.  Annexed hereto as Exhibit "B" is a listing of the detailed time entries of Jones Day professionals and paraprofessionals with respect to the compensation requested.[8]  Annexed hereto as Exhibit "C" is a summary of the types of expenses for which reimbursement is sought.  Annexed hereto as Exhibit "D" is a detailed itemization of such expenses.[9]  Annexed hereto as Exhibit "E"  is a chart, per the UST Guidelines and Fee Committee Guidelines, listing (a) all hearings/ outside meetings/ depositions, etc. attended by more than one Jones Day timekeeper during the Compensation Period; (b) all Jones Day timekeepers at such event; and (c) the reasons why all such timekeepers' attendance at such hearings/ outside meetings/ depositions was necessary.  Annexed hereto as Exhibit "F" is the certification of Robert W. Gaffey with respect to the Application pursuant to the Local Guidelines.

---

[8]    Due to the voluminous nature of such documents, Jones Day's detailed time and expense records (Exhibits B and D hereto) are not being filed herewith, but, consistent with the Interim Compensation Order, are being provided to the Court and the Notice Parties (as defined herein).  The Notice Parties have previously received such records under the Interim Compensation Order.

[9]    In relation to the Adelphia Matters, Jones Day's detailed time and expense records have not been included in Exhibits B and D hereto.  As the Debtors were represented by Jones Day in the Adelphia Matters as only one member of a group of defendants, as described in greater detail below, the Debtors are responsible for only a portion of fees incurred by Jones Day in relation to the Adelphia Matters, and the actual time and expense records do not separate the work performed for the Debtors from the other members of the group of defendants.  Accordingly, the time and expense details of the Adelphia Matters are not being filed herewith.  Nevertheless, Jones Day can and will provide these details to the Court and the Notice Parties, if requested.

**Jones Day's Retention**

12.     On February 4, 2009, the Debtors filed their Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtor, *nunc pro tunc* to the Engagement Dates (Docket No. 2725) (the "Retention Application").

13.     On February 25, 2009, the Court entered the Amended Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 2925) (the "Retention Order").

14.     During the period of May 2009 through November 2010, the Court entered six further orders granting additional supplemental retention applications under which Jones Day's scope of retention under the Retention Order was subsequently expanded.

**Payments Received by Jones Day in
Accordance with the Interim Compensation Order**

15.     On June 25, 2009, the Court entered the Interim Compensation Order, which superseded the amended order dated March 13, 2009 in its entirety.  Pursuant to the Interim Compensation Order, the Court established procedures for the Debtors' payment of interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

16.     During the Compensation Period, Jones Day served a notice of monthly fee and expense invoice for each monthly period from October 1, 2010 through January 31, 2011 (collectively, the "Monthly Statements").  Because no objections were filed to any of the Monthly Statements, the Debtors made the following payments to Jones Day in respect of certain of the Monthly Statements pursuant to the Interim Compensation Order:

| Periods | Fees Requested | Expenses Requested | Payment Dates | Payment Amount[10] |
|---|---|---|---|---|
| October 2010 | $2,455,151.70 | $63,600.86 | December 16, 2010 | $2,027,722.22 |
| November 2010 | $1,994,461.50 | $91,362.22 | January 24, 2011 | $1,686,931.42 |
| December 2010 | $1,094,492.80 | $60,034.36 | February 18, 2011 | $935,628.60 |
| January 2011 | $1,176,243.30 | $40,657.88 | March 22, 2011 | $981,652.52 |

**Summary of Services Rendered by Jones Day**

17.     Below is a summary of the major activities performed during the Compensation Period by Jones Day professionals and paraprofessionals in assisting the Debtors with their chapter 11 cases and other restructuring-related activities, categorized by region[11] and sub-categorized by matter where appropriate.  More detailed descriptions of the services rendered by Jones Day are included in the Monthly Statements and Exhibit B hereto. In accordance with the UST Guidelines, a summary of the hours and amounts billed during the Compensation Period by each timekeeper, as well as each timekeeper's position, hourly rate and, if applicable, the year in which each timekeeper was first licensed to practice law, is set out in the cover sheet prefixed to this Application.

*Asia Pacific*

18.     During the Compensation Period, Jones Day professionals and paraprofessionals attended to numerous case administration tasks and commercial issues arising from the restructuring of various entities across the Asia Pacific region and globally. Such tasks included liaising and coordinating across a number of Jones Day's offices in

---

[10]     Payments were made on account of 80% of fees and 100% of expenses requested.

[11]     Categorizing the various services provided to the Debtors by Jones Day by region was previously approved by both the Debtors and the Fee Committee.

various jurisdictions, compiling and filing of Monthly Statements, preparing Jones Day's sixth interim fee application, responding to the Fee Committee's questions and requests and dealing with conflict and similar issues arising from time to time and other issues as more specifically set forth below.

*Australia*

19.    During the Compensation Period, the services rendered by Jones Day professionals in Australia included assisting and advising the Debtors with respect to insolvency proceedings in relation to Lehman Brothers Australia Limited (In Liquidation) ("LBA").  Such services included meeting with the liquidators of LBA, assisting and advising the Debtors in relation to the settlement options proposed by the liquidators of LBA for claims against LBA and non-Australian Lehman entities, and advising on deconsolidation issues in relation to the Australian Lehman entities.  Jones Day professionals also advised the Debtors in relation to entry into a settlement agreement regarding the realization of collateral to noteholders, and applied to set aside a subpoena in the Federal Court of Australia which affected the Debtors' interests.

*Hong Kong*

20.    During the Compensation Period, Jones Day professionals in Hong Kong advised the Debtors in relation to various employment related issues.

*Japan*

21.    During the Compensation Period, the services rendered by Jones Day professionals in Japan were attributed predominantly to Lehman Brothers Special Finance ("LBSF") and LBHI.  Such services included conducting legal research on civil rehabilitation law, drafting memoranda in relation to reorganization matters, preparing and filing various documents with the local court, assisting the Debtors and other United States-based Lehman entities in Japan in asserting claims in the Japanese Civil Rehabilitation proceedings of

Lehman Brothers Japan KK ("LBJ"), Lehman Brothers Commercial Mortgage KK ("LBCM") and Sunrise Finance KK ("Sunrise").  During the Compensation Period, Jones Day professionals also advised (i) the Debtors and other United States-based Lehman entities in Japan on the contents of the proposed rehabilitation plans of LBJ, LBCM and Sunrise and associated claim submissions, motions for assessment and payment processing issues, (ii) LBSF on the settlement of and set-off protocols for derivatives claims involving LBJ and other counterparties, and (iii) the Debtors on operational matters associated with the winding down of operations in Japan.

22.   During the Compensation Period, Jones Day professionals advised L.B.C. YK, L.B.A. YK and LB Capital Corporation III on the disposal strategy concerning a number of portfolios of non-performing loans and other foreclosed assets in Japan.

23.   During the Compensation Period, Jones Day professionals liaised with local counsel and other professionals regarding Japanese legal and commercial issues and assisted in the drafting of the relevant transaction documents.

*Korea*

24.   During the Compensation Period, the services rendered by Jones Day professionals in Korea focused on the disposal of Maewha K-Star Co., Ltd.'s ("Maewha") KRW55 billion senior loan, which included the reviewing of relevant loan and security documents, advising Maewha on its disposal strategy, liaising with local counsel in Korea and the drafting of relevant transaction documents related thereto.

*Malaysia*

25.   During the Compensation Period, Jones Day professionals advised Lehman Brothers Pan Asian Investments Limited on its settlement arrangement in connection with certain litigation instituted in the courts of Malaysia, including the reviewing and the drafting of the settlement agreement and advising on the issues arising therefrom.

*Taiwan*

26.     During the Compensation Period, the services rendered by Jones Day professionals in Taiwan were attributed to TL I Asset Management Company Limited ("TL I"), TL II Asset Management Company Limited and TL III Asset Management Company Limited ("TL III").  Such services included advising Lehman entities with respect to the disposal and liquidation of assets and repayment of debts, drafting letters, agreements and other correspondence and documents with or to banks, creditors, debtors and governmental authorities, attending to matters relating to mortgage foreclosure and default disputes with banks and debtors, litigation, and representing Lehman entities in negotiations with various third parties and in respect of changes to the corporate registrations as required.

27.     Particularly, Jones Day has assisted TL III to claim compensation against its contractual parties in Yilan development project, and to negotiate with its largest creditor bank, Hua-Nan Bank, in relation to the disposal of Yilan investment during the past few months.  In addition, Jones Day also assisted TL I and TL III to negotiate with their contractual party and Hua-Nan Bank in relation to the closing of Xiu-Gang Land sale.

*Thailand*

28.     The services rendered by Jones Day professionals in Thailand during the Compensation Period included assisting LBHI and its subsidiaries in managing LBHI's Thailand real estate and other assets.  This involved advising LBHI and its subsidiaries on investment, financing issues and disposal strategies.  With respect to the disposal strategy and implementation of the sales process, Jones Day drafted all key transaction documents and has been an integral part of the team from the inception of the sales process.

29.     Jones Day has researched the financing structures for a number of LBHI assets in Thailand, in particular reviewing the extent to which security has been granted over LBHI's assets as a result of its debt obligations.

NYI- 4372986v3

10

30.     Jones Day liaised with local counsel and other professionals on Thai legal and tax issues affecting the LBHI asset portfolio in Thailand and advised on compliance issues with regards to Thai laws on financing and resulting security issues as well as providing general bankruptcy and insolvency advice.

***London***

*Derivatives*

31.     In September 2009, Jones Day professionals in London were retained to advise the Debtors on derivatives documentation matters arising from the occurrence of credit events with respect to various "Reference Obligations" referenced in credit derivatives and synthetic CDO documentation to which the Debtors are party, including the exercise or performance of their respective rights and obligations under such documentation.

32.     Jones Day reviewed and analyzed the documentation for certain CDO structures and the related swap transaction and provided advice to the Debtors regarding potential rights of termination and recovery arising from marked to market trigger events in the financing structure.  Jones Day developed a proposed strategy for effecting a termination in the context of the documentation and a potential judicial challenge.

33.     During the Compensation Period, Jones Day also advised on the termination and settlement of derivatives transactions involving the Debtors related to a series of fifteen securitization structures.  Jones Day reviewed and analyzed the transaction documents and prepared and negotiated settlement agreements with the Debtors' counterparties with respect to each securitization structure.

34.     Jones Day also advised on the termination of a derivative transaction against a non-performing counterparty.  Jones Day is assisting the Debtors to recover amounts owed to them by the counterparty through foreign court proceedings.

35.     Jones Day has also represented the Debtors in the settlement of outstanding FX and Forward FX transactions (and related valuation issues) under English and New York law, including under circumstances where such transactions are either undocumented or subject to ISDA Master or other market documentation.

36.     During the Compensation Period, Jones Day also provided contentious advice relating to valuation of termination and settlement of four derivatives transactions and valuation disputes thereto involving the Debtors, including corresponding with counterparties, assisting with negotiations and progressing settlement of valuation disputes via the ADR process.   We also advised in detail on issues relating to the interpretation of certain notification provisions in a series of derivative transactions under English law.

*LB UK RE Holdings Limited*

37.     During the Compensation Period, Jones Day professionals reviewed and analyzed materials received from Alvarez & Marsal; researched on and drafted a memorandum of advice regarding challenging an administrator's conduct and drafted an outline regarding the company voluntary arrangement proposal and term sheet.  Jones Day professionals also prepared a strategy memorandum regarding "dual-tracking" a challenge to the administrator's conduct and a company voluntary arrangement proposal or direct offer to unconnected creditors.  Jones Day professionals also attended to meetings, conference calls and correspondence with respect thereto.

***Chicago***

*Metropolitan Pier and Exposition Authority*

38.     Prior to the bankruptcy filing, Lehman Brothers Special Financing, Inc. entered into a Debt Service Deposit Agreement (the "Agreement") for certain tax exempt bonds (the "Bonds") issued by the Metropolitan Pier and Exposition Authority of Illinois

(the "Authority").   After the bankruptcy filing, the Authority issued additional capital appreciation bonds, the proceeds of which were used to refund certain of the Bonds in advance of their stated maturity.

39.     During the Compensation Period, Jones Day professionals reviewed the actions taken by the Authority pursuant to the Agreement and the indenture for the Bonds. In particular, Jones Day analyzed the Agreement, the indenture for the Bonds, other relevant transaction documents and communications.   Jones Day further conducted a broad range of research relating to aspects of relevant state and federal laws, provided advice to the Debtors and drafted research memoranda.

*Los Angeles*

*Adelphia-related*

40.     Between May 2009 and March 2011, Jones Day represented the Debtors with respect to two Adelphia-related matters: (i) a claim asserted for $136 million against the Debtors ("Bank Litigation") by the Chapter 11 estate of Adelphia Communications Corporation, *et al.* (the "Adelphia Estate") and (ii) a claim for additional "Grid Interest" payable by the Adelphia Estate to a certain *ad hoc* group of non-agent lenders, which includes certain of the Debtors, as defendants (the "Non-Agent Lenders") between May 2009 to March 2011 ("Grid Interest Settlement", and collectively with the claim mentioned under (i), the "Adelphia Matters").   Jones Day's representation of the Debtors in the Adelphia Matters was included in the Notice of Presentment of Third Supplemental Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Date (Docket No. 5604) (the "Third Supplemental Retention Application") and was filed by

the Debtors on October 22, 2009.  On November 5, 2009, the Court entered an Order granting

the Third Supplemental Retention Application (Docket No. 5728).

Re: Bank Litigation

41.    Jones Day represented the Debtors as part of an entire group of

defendants, the Non-Agent Lenders.  A recovery trust representing the Adelphia Estate sued

the Non-Agent Lenders for $4.4 billion (and sought a total of $6.5 billion from the total group

of all defendants, agents and non-agents).  On or about May 4, 2009, the United States

District Court for the Southern District of New York dismissed all of Adelphia's claims

against the Non-Agent Lenders.  Jones Day successfully represented the Debtors on the

appeal from that order and related matters.  On May 26, 2010, the United States Court of

Appeals for the Second Circuit affirmed the dismissal, and on January 5, 2011, the Supreme

Court approved a motion withdrawing Adelphia's certiorari petition.  On March 2, 2011,

Adelphia filed a notice of dismissal of all claims against the Non-Agent Lenders, including

the Debtors.  The Debtor's proportionate share of Jones Day's fees and expenses for this

defense representation are $66,267.52.

Re: Grid Interest Settlement

42.    Jones Day represented the Debtors in seeking the payment of

additional interest, denominated additional grid interest, against the Adelphia Estate.  Jones

Day tried this claim on behalf of a subset of clients including the Debtors, seeking a total of

approximately $120 million.  After the trial, but before the decision was rendered by Judge

Gerber, the parties engaged in court-ordered mediation and the matter was settled for the

approximate amount of $42.5 million.  The Debtors' net share of the proceeds is

approximately $355,000.00.

43.     The Debtors are entitled to a gross recovery of $378,853.90 for additional grid interest and the Debtors owe $23,290.55 as their proportionate share of the legal fees associated with these claims.  The Debtors are thus due a net of $355,563.33 on account of their grid interest claim.

<u>Billing Procedures</u>

44.     Pursuant to the retainer agreement between Jones Day and the Non-Agent Lenders, each lender was responsible for its proportionate share of the defense costs and fees incurred in relation to the Bank Litigation.  The Debtors are responsible for approximately 3.05% of the total amount owed to Jones Day for its representation of the Bank Litigation.  The Debtor's portion of the total fees for the work on this litigation is $66,267.52.  The Debtors owe 6.07% of the fees for Jones Day's representation in relation to the Grid Interest Settlement and is thus responsible for $23,290.55 worth of fees and expenses.  Combined with the fees and disbursements owing to Jones Day from the Bank Litigation, Jones Day claims $89,558.07 for its representation of the Debtors in relation to the Adelphia Matters.

45.     In respect of the bills for the Adelphia Matters, Jones Day's fees and expenses have been issued directly to the Non-Agent Lenders' steering committee and separately from the Monthly Statements, as the Debtors are only liable in respect of a portion of the fees and expenses incurred in relation to these matters.  Copies of the summaries of the Debtors' proportionate share of such bills have previously been provided to the Debtors.  Copies of such summaries or the bills themselves will be made available to the Court, the Fee Committee or other parties in interest upon request.

*New York*

*Barclays*

46.     During the Compensation Period, Jones Day continued its representation as special counsel to the Debtors to pursue claims or other remedies arising from the asset purchase agreement between Debtors and Barclays, executed September 16, 2008, and approved by the Court by order entered September 20, 2008 (the "Sale Order").

47.     The trial of the Rule 60(b) proceedings relating to the Sale Order continued through October and November 2010.  Jones Day continued to take a lead role in the trial, including in (i) preparing for and cross examining fact witnesses presented by Barclays, (ii) preparing and presenting expert reports and testimony, (iii) analyzing the reports submitted by Barclays' experts and cross examining them at trial, and (iv) briefing and arguing evidentiary motions.  Jones Day personnel researched and prepared an extensive post-trial brief, with numerous exhibits, which was submitted to the Court after the conclusion of the hearings and performed considerable work in reviewing and analyzing the voluminous post-trial submissions by Barclays and the other parties.  The end of the evidentiary hearings also involved extensive work in assembling final exhibits and deposition designations for the Court as well as many other administration matters.  Jones Day also prepared for and took the lead in presenting a detailed and lengthy closing argument to the Court, which included an extensive submission of slides and demonstrative exhibits.

*Derivatives*

48.     During the Compensation Period, Jones Day has continued to advise the Debtors with regard to certain derivative transactions with Prudential Global, Inc.  This matter is currently in litigation before the Court.

49.     During the Compensation Period, Jones Day continued to advise the Debtors regarding transactions under three separate ISDA Master Agreements between the

Debtors and Nomura entities, including valuation issues pertaining to Icelandic bank Reference Entities. This matter is currently in litigation before the Court. During the compensation period, Jones Day reviewed a significant number of the Debtors' documents and prepared such documents for production. Jones Day also negotiated discovery issues with counsel for the Nomura entities, attended court-mandated conferences, and continued to craft strategy.

50.    In addition to the foregoing litigation matters, during the Compensation Period, Jones Day represented the Debtors in alternative dispute resolution proceedings with four derivative counterparties. With regard to these matters, Jones Day crafted and implemented strategy reflecting the Debtors' position.

51.    In addition to the foregoing alternative dispute resolution matters, during the Compensation Period, Jones Day continued to counsel the Debtors concerning various derivatives and other complex structured products entered into with multiple counterparties including interest rate swaps, credit default swaps, total return swaps, foreign currency swaps, multi-currency cross border swaps, accelerated share repurchase transactions and other financial products. With regard to these matters, Jones Day analyzed relevant transaction documents and communications, conducted a broad range of research relating to all aspects of relevant state and federal laws, and crafted strategy for possible alternative dispute resolution. Jones Day also continues to advise the Debtors on derivatives issues pertaining to collateral and margin posting, valuation and reconciliation, as well as unique provisions specific to counter-party swaps.

52.    Specifically, with regard to certain derivative contracts with Ambac Assurance Corporation and certain of  its affiliates (collectively, "Ambac"), during the Compensation Period, Jones Day represented the Debtors and engaged in negotiations with Ambac's counsel, which resulted in Ambac withdrawing $6.1 billion in claims against the

Debtors and eliminated the need for complex litigation. Jones Day further argued a Rule 9019 motion before the Court and gained approval of the settlement from both this court and the Wisconsin state court overseeing the reorganization of Ambac.

53.     With regard to certain other derivatives transactions, Jones Day continued to review document productions responsive to pre-litigation discovery requests that Jones Day drafted and served during the previous compensation period. During the Compensation Period, Jones Day also took pre-litigation depositions of various persons with knowledge relevant to these transactions. Jones Day continues to craft strategy and prepare for alternative dispute resolution with regard to certain of these matters.

*Greenbrier*

54.     During the Compensation Period, Jones Day continued to advise the Debtors in connection with the workout and restructuring of certain loans and investments involving Greenbrier Minerals LLC ("Greenbrier"). Services rendered by Jones Day professionals included, among others, advising the Debtors in relation to Lehman Commercial Paper Inc. ("LCPI"), particularly, as it relates to LCPI's settlement strategy in connection with its disputes with Greenbrier, as well as a sharing arrangement with respect to a potential sale of Greenbrier's assets. In connection with such advice, Jones Day professionals (i) participated in numerous teleconferences and meetings with the Debtors and Greenbrier regarding the terms of a settlement and sharing arrangement, and the negotiation of issues relating thereto; (ii) conducted substantial review and revision of the settlement agreement and sharing arrangement proposed by counsel to Greenbrier; and (iii) finalized pleadings and related documents necessary for court approval of the settlement agreement and sharing arrangement.

*Chicago Mercantile Exchange*

55.     During the Compensation Period, Jones Day professionals continued to examine the facts and legal issues surrounding the close out of certain Lehman positions on the Chicago Mercantile Exchange ("CME") shortly before the bankruptcy filing.  Services rendered included review of pertinent documents, research regarding potential claims and standing to assert such claims, communications with the SIPA Trustee for LBI concerning his dealings with the CME in regard to such potential claims.

*Norton*

56.     During the Compensation Period, Jones Day professionals assisted and advised Lehman Brothers Commercial Corporation in connection with post-closing matters pertaining to the Norton Gold Senior Secured Note and to the proposed sale of certain collateral and amendments to documents relating thereto.

*Aircraft Dispositions*

57.     During the Compensation Period, Jones Day advised the Debtors and certain subsidiaries of the Debtors on aircraft dispositions and drafted the relevant transaction documents related thereto.  Jones Day also advised the Debtors on the resolution of a dispute with Flying Colours Corp,  as aircraft services provider, and drafted the settlement letter related thereto.

*Federal Reserve Bank of New York*

58.     During the Compensation Period, Jones Day professionals continued to examine facts and legal issues surrounding the conduct of the Federal Reserve Bank of New York ("FRBNY") during the period before Lehman's bankruptcy filing.  Services rendered included review of pertinent documents, research regarding potential discovery concerning

the FRBNY's dealings with other financial institutions and regulators concerning Lehman and
its assets.

Non-*Derivative Avoidance Actions*

59.     During the Compensation Period, Jones Day reviewed the merits of
potential avoidance actions and sought and obtained extensions of certain tolling agreements
with respect thereto.

**San Francisco**

60.     The history of the San Francisco – Kontrabecki Matter, which was
pending in the U.S. Bankruptcy Court in San Francisco, has been summarized in prior interim
applications.

61.     As described in the sixth interim application, the litigation was settled
through a judicial settlement conference in early November 2010.  The essential terms of the
settlement provide for full mutual releases, and for LBHI neither to receive nor pay any
settlement amounts.

62.     During the Compensation Period, services provided by Jones Day
professionals and paraprofessionals included preparation for and attendance at the settlement
conference, preparation of settlement documentation, preparation of pleadings, seeking the
necessary approval of the San Francisco bankruptcy court, managing the court approval
process, and limited miscellaneous services to implement the settlement.  The San Francisco
bankruptcy court approved the settlement in December 2010, and all proceedings have been
dismissed.  With the exception of certain limited post-settlement matters required to complete
the settlement implementation, this matter is now concluded.

NYI- 4372986v3

**Expenses Incurred by Jones Day**

63.      Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code.  Accordingly, Jones Day seeks reimbursement for expenses incurred in rendering services to the Debtors during the Compensation Period.  The total amount of the expenses is $255,545.32 for the Compensation Period, as summarized in the attached Exhibit "C" and detailed in the attached Exhibit "D"[12].

64.      In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines, Jones Day maintains the following policies with respect to expenses for which reimbursement is sought herein:

(a)      No amortization of the cost of any investment, equipment, or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased or contracted from a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)      Black and white photocopying by Jones Day was charged at 10 cents per page.[13]  Color photocopying by Jones Day was charged at 50 cents per page.  To the extent practicable, Jones Day utilized less expensive outside copying services.

(c)      Telecopying by Jones Day was charged to the Debtors at the cost of the long distance call required to send the facsimile.  The firm did not impose any charge to the Debtors for local facsimiles, inbound facsimiles, interoffice facsimiles or facsimiles costing less than $1.00.

(d)      Meal charges incurred during travel charged to the Debtors for Jones Day personnel were limited to $40 per person.

(e)      Working meals and overtime meals for Jones Day personnel working past 8:00 p.m. were limited to $20 per person.

(f)      Coach airfares charged to the Debtors for Jones Day personnel were associated with out of town travel, meetings with the Debtors or other

---

[12]      Exhibit C and Exhibit D exclude amounts Jones Day seeks as reimbursements for expenses incurred in rendering services to the Debtors between May 2009 to March 2011 in relation to the Adelphia Matters.

[13]      As disclosed and agreed to by the Fee Committee, Jones Day charges the Debtors at cost for duplication charges for obtaining court records at the Tokyo District Court.

parties in these chapter 11 cases.

(g)     Taxi fares for overtime travel home after 8:00 p.m. were limited to $100.

(h)     Fees for hotel accommodation charged to the Debtors for Jones Day personnel were not in excess of $500 per night.

(i)     No staff overtime, word processing, proofreading charges or other "overhead" have been charged to the Debtors.

## The Requested Compensation Should Be Allowed

65.     Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

NYI- 4372986v3

22

11 U.S.C. § 330(a)(3)(A).

66.    Jones Day respectfully submits that it has satisfied the requirements for
the allowance of the compensation and reimbursement of expenses sought herein.    The
services described above, at the time they were provided, were necessary and beneficial to the
administration of the Debtors' chapter 11 cases.    Jones Day's services were consistently
performed in a timely manner, commensurate with the complexity of the issues facing the
Debtors and the nature and importance of the problems, issues, and tasks.    Furthermore, the
compensation sought by Jones Day is reasonable because it is based on the customary
compensation charged by comparably skilled practitioners outside of bankruptcy.
Accordingly, approval of the compensation sought herein is warranted.

### Statements of Jones Day Pursuant to Bankruptcy Rule 2016(a)

67.    Pursuant to the Interim Compensation Order, Jones Day has submitted
the Monthly Statements to (a) the Debtors, (b) counsel to the Debtors, Weil, Gotshal &
Manges, LLP, (c) counsel to Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP,
(d) the U.S. Trustee, (e) the Fee Committee, (f) counsel to the Fee Committee, and (g)
BrownGreer PLC (collectively the "Notice Parties"), during the Compensation Period with
respect to the Debtors' chapter 11 cases, as follows: (a) from October 1, 2010 through
October 31, 2010 – fees of $2,455,151.70 and expenses of $63,600.86; (b) from November 1,
2010 through November 30, 2010 – fees of $1,994,461.50 and expenses of $91,362.22;
(c) from December 1, 2010 through December 31, 2010 – fees of $1,094,492.80 and
expenses of $60,034.36, and (d) from January 1, 2011 through January 31, 2011 – fees of
$1,176,243.30 and expenses of $40,657.88.[14]

68.    In total, therefore, Jones Day has submitted Monthly Statements for
fees of $6,720,349.30 and expenses of $255,655.32 during the Compensation Period, and

---

[14]    Please refer to paragraph 16 hereof for a further explanation of the fees included in each of the above
described Monthly Statements.

hereby seeks interim approval of $6,639,911.30 of such fees (exclusive of the fees and expenses incurred in connection with the Adelphia Matters) and $255,545.32 in reimbursement of such expenses under this Application.

69.     Jones Day has received such payment from the Debtors relating to fees and expenses in the Monthly Statements on account of services provided during the Compensation Period as described in paragraph 16 above.

70.     No agreement or understanding exists between Jones Day and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Jones Day.  All of the services for which compensation is sought in this Application were rendered at the request of, and solely on behalf of, the Debtors, and not at the request of, or on behalf of, any other person or entity.

71.     Prior to the filing of this Application, Jones Day received no objections to any of the Monthly Statements provided under the Interim Compensation Order from the Debtors, the Fee Committee or anyone else.

### Notice

72.     Notice of this Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the Committee; (e) the Fee Committee and its counsel; and (f) as requested by the Fee Committee, BrownGreer PLC.  Jones Day respectfully submits that no other or further notice is required.

WHEREFORE, Jones Day respectfully requests that the Court (a) enter an order allowing interim compensation of $6,639,911.30 to Jones Day for professional services rendered as special counsel for the Debtor during the Compensation Period, plus reimbursement of actual and necessary charges and disbursements incurred in the sum of

NYI- 4372986v3

$255,545.32 in connection with Jones Day's services during the Compensation Period, and compensation for professional services provided in relation to the Adelphia Matters (as defined herein) and reimbursements of expenses incurred in connection with such services in the aggregate amount of $89,558.07, (b) authorize and direct the Debtors to pay to Jones Day any and all unpaid, invoiced amounts for the Compensation Period; and (c) grant to Jones Day such other and further relief as the Court may deem proper.

Dated: June 1, 2011
  New York, New York

        */s/*  Ross S. Barr
        Robert W. Gaffey
        Ross S. Barr
        JONES DAY
        222 East 41st Street
        New York, New York 10017-6702
        Telephone:  (222) 326 3939
        Facsimile:  (212) 755 7306

        SPECIAL COUNSEL TO THE DEBTORS
        IN POSSESSION

EXHIBIT "A"

**SUMMARY OF SERVICES BY PROJECT CATEGORY FOR SERVICES RENDERED
BY JONES DAY ON BEHALF OF THE DEBTORS
FROM OCTOBER 31, 2010 THROUGH JANUARY 1, 2011**

| Project Category | Total Hours by Project | Total Fees by Project (USD) |
|---|---|---|
| Asia Pacific | 2,002.70 | 885,526.50 |
| Chicago | 106.60 | 57,857.50 |
| Los Angeles | N/A | 89,558.07 |
| London | 600.00 | 459,830.30 |
| New York | 10,364.40 | 5,244,767.50 |
| San Francisco | 92.10 | 72,367.50 |
| **Total** | **13,165.80** | **6,639,911.30[1]** |

---

[1] Such amount (a) excludes a total amount of $89,558.70 billed periodically between May 2009 and March 2011 and claimed by Jones Day in the Application in relation to the Adelphia Matters (as such term is defined in the Application) and (b) includes all amounts voluntarily reduced by Jones Days.

## CURRENT FEE PERIOD: OCTOBER 1, 2010 THROUGH JANUARY 31, 2011

Case No.: 08-13555 (JMP)

Case Name: In re LEHMAN BROTHERS HOLDINGS INC., *et al.*, Debtors.

| APPLICANT | DATE/DOCUMENT NO. OF APPLICATION | FEES REQUESTED | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|-----------|----------------------------------|----------------|--------------|--------------------|------------------|
| Jones Day | April 15, 2011 | [$6,639,911.30] | [          ] | [$255,545.32] | [          ] |

**EXHIBIT "B"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

EXHIBIT "C"

**ACTUAL AND NECESSARY DISBURSEMENTS INCURRED
BY JONES DAY ON BEHALF OF THE DEBTORS
FROM OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

| Disbursement Description | Amount Billed (USD) |
|---|---:|
| Agents fees | 1,752.54 |
| Airfare | 11,669.98 |
| Calling card charges | 317.53 |
| Car rental charges | 200.35 |
| Color duplication charges | 255.00 |
| Communication charges | 366.92 |
| Computerized research services | 596.91 |
| Conference charges | 2,417.93 |
| Consultants fees | 4,540.24 |
| Courier services | 1,819.60 |
| Court costs | 4,661.91 |
| Court reporter fees | 43,073.65 |
| Duplication charges | 10,842.82 |
| Federal Express charges | 1,233.63 |
| Food and beverage expenses | 1,309.33 |
| General internal charges | 108.00 |
| Hotel charges | 20,994.68 |
| Imaging services | 20,982.99 |
| Late work meal | 263.41 |
| Late work parking | 501.00 |
| Late work taxi | 2,405.75 |
| Lexis search fees | 11,637.50 |
| Local food and beverage expense | 3,530.04 |
| Local mileage charges | 9.20 |
| Local parking charges | 152.50 |
| Local taxi charges | 9,281.35 |
| Long distance charges | 959.32 |
| Mileage expenses | 9.20 |
| Miscellaneous expenses | 7,904.58 |
| Parking expenses | 249.00 |
| Postage charges | 28.11 |
| Printing charges | 4,863.77 |
| Publication expenses | 10,451.39 |
| Research fees | 807.30 |
| Subway/bus charges | 100.24 |
| Taxi fare | 2,950.77 |

| Disbursement Description | Amount Billed (USD) |
|---|---|
| Toll charges | 53.90 |
| Train fare | 12.82 |
| Travel-other costs | 913.49 |
| United Parcel Service charges | 493.83 |
| Video and electronic expenses | 18,878.97 |
| Westlaw search fees | 52,053.87 |
|  |  |
| **Total Disbursements** | **255,545.32** |

- 2 -

**EXHIBIT "D"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

**EXHIBIT E**

**Multiple Timekeepers Attending Same Hearing/Outside Meeting/Deposition (7th Interim Fee Application)**

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Robert Gaffey<br>Kelly Carrero<br>Michael Dailey<br>Stephen Ferry<br>Benjamin Rosenblum<br>Eric Stephens<br>Jayant Tambe | 10/4/10 | J. Olvany examination | Olvany was one of Barclays' expert witnesses.<br><br>Tambe and Carrero have been in charge of the expert valuation case, both in developing LBHI's expert case and refuting Barclays' expert case.<br><br>Tambe:  cross-examined Olvany and therefore his presence in the courtroom was necessary to do so.<br><br>Carrero:  along with Tambe, Carrero was responsible for the expert valuation case, both in developing LBHI's expert case and refuting Barclays' expert case.  Carrero was Tambe's second seat for all expert examinations.  Carrero provided assistance to Tambe during every expert witness examination.<br><br>Gaffey:  lead counsel.<br><br>Dailey:  responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry:  provided demonstratives and electronic trial support (throughout trial)<br><br>Rosenblum:  provided bankruptcy advice, as needed.<br><br>Stephens: as the associate in attendance, provided exhibits and other assistance, as needed, in the courtroom and workrooms. |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Robert Gaffey<br>Michael Dailey<br>Stephen Ferry | 10/5/10 | A. Leitner direct examination | Gaffey:  lead counsel.<br><br>Dailey:  responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry:  provided demonstratives and electronic trial support (throughout trial) |
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Stephen Ferry<br>Bart Green<br>John McMahon<br>Benjamin Rosenblum<br>Eric Stephens<br>Jayant Tambe | 10/6/10 | Professor Pfleiderer examination | Professor Pfleiderer was Barclays' lead expert witness.<br><br>Tambe:  cross-examined Professor Pfleiderer and therefore his presence in the courtroom was necessary to do so.<br><br>Carrero:  along with Tambe, responsible for the expert valuation case, both in developing LBHI's expert case and refuting Barclays' expert case.  Carrero was Tambe's second seat for all expert examinations.  Carrero provided assistance to Tambe during every expert witness examination.<br><br>Gaffey:  lead counsel.<br><br>Crawford, Green, Stephens:  associates in attendance who provided exhibits and other assistance, as needed, in the courtroom and workrooms during the examination of Barclays' lead expert.<br><br>Dailey:  responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry:  provided demonstratives and electronic trial support |

- 3 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| | | | (throughout trial).<br><br>Rosenblum:  provided bankruptcy advice, as needed. |
| Kelly Carrero<br>Bridget Crawford<br>Stephen Ferry<br>Robert Gaffey<br>Bart Green<br>Benjamin Rosenblum<br>Eric Stephens<br>Jayant Tambe | 10/7/10 | Professor Pfleiderer cross examination | Professor Pfleiderer was Barclays' lead expert witness.<br><br>Tambe: cross-examined Professor Pfleiderer and therefore his presence in the courtroom was necessary to do so.<br><br>Carrero:  along with Tambe, responsible for the expert valuation case, both in developing LBHI's expert case and refuting Barclays' expert case.  Carrero was Tambe's second seat for all expert examinations.  Carrero provided assistance to Tambe during every expert witness examination.<br><br>Gaffey:  lead counsel.<br><br>Crawford, Green, Stephens:  associates in attendance who provided exhibits and other assistance, as needed, in the courtroom and workrooms during the examination of Barclays' lead expert.<br><br>Stephens:  served in Dailey's absence and also was responsible for tracking exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry:  provided demonstratives and electronic trial support (throughout trial).<br><br>Rosenblum:  provided bankruptcy advice, as needed. |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>Benjamin Rosenblum<br>Tracey Schaffer<br>Eric Stephens | 10/8/10 | Admission of PwC documents | Gaffey:  lead counsel.<br><br>Schaffer:  responsible for letter brief re: admission of PwC exhibits.<br><br>Stephens:  provided assistance with argument on PwC exhibits.<br><br>Dailey:  responsible for tracking exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry:  provided demonstratives and electronic trial support (throughout trial).<br><br>Rosenblum:  provided bankruptcy advice, as needed. |
| Erin Shencopp<br>Jayant Tambe | 10/8/10 | Outside meeting at Lehman | This was a high level client meeting to prepare for derivatives close-out discussions with Barclays.<br><br>Tambe:  lead counsel on derivatives counseling and litigation matters.<br><br>Shencopp:  senior associate with responsibility for the Barclays derivatives transactions.  Shencopp was responsible for preparing and revising the Close-out Meeting presentation and the confidentiality agreement, both of which were discussed at length at this client meeting. |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Michael Dailey Stephen Ferry Robert Gaffey Tracey Schaffer Jayant Tambe | 10/18/10 | Closing argument | Gaffey: did not attend.<br><br>Schaffer: argued against admission of various Barclays' exhibits.<br><br>Tambe: principal member of the trial team, provided assistance to Schaffer concerning argument on admission of various Barclays' exhibits.<br><br>Dailey: responsible for tracking exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc.<br><br>Ferry: provided demonstratives and electronic trial support for argument. |
| Michael Dailey Toni-Ann Citera Jayant Tambe | 10/19/10 | Outside meeting at Lehman | This was a high level client meeting to prepare for derivatives close-out discussions with counterparty.<br><br>Tambe: lead counsel on derivatives counseling and litigation matters.<br><br>Citera: partner responsible for the Barclays derivatives transactions. Citera was responsible for preparing and revising the Close-out Meeting presentation and the confidentiality agreement, both of which were discussed at length at this client meeting.<br><br>Dailey: junior associate responsible for managing electronic documents, PowerPoint presentations and legal research on derivatives close-out issues. |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Toni-Ann Citera<br>Nathan Lebioda<br>Aviva Warter-Sisitsky<br>Jayant Tambe | 10/20/10 | Hearing – 9019 Motion | This was a court hearing for approval of the Ambac settlement, which resulted in the withdrawal of over $6 billion of claims against the Debtors.<br><br>Tambe:  lead partner on derivatives counseling and litigation.  Available to answer questions and provide derivatives input to any questions from the court.<br><br>Sisitsky:  lead partner on Ambac settlement.  Presented the settlement and the basis for approval of the settlement.<br><br>Citera:  Partner with significant involvement in negotiating and documenting the settlement.<br><br>Lebioda:  bankruptcy associate who was available to provide input and information on bankruptcy procedure and issues that might arise during the hearing. |
| Michael Dailey<br>Toni-Ann Citera<br>Jayant Tambe | 10/20/10 | Meeting with counterparty | Tambe:  lead partner who led the meeting on behalf of client with counterparty.<br><br>Citera:  partner responsible for preparing slide deck used in meeting, for discussions with counterparty leading up to the meeting and for leading discussions at meeting regarding the confidentiality agreement.<br><br>Dailey:  associate responsible for collecting facts and documents about the transactions between Lehman and the counterparty. |

- 7 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Kelly Carrero<br>Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>Bart Green<br>John McMahon<br>Benjamin Rosenblum<br>Tracey Schaffer<br>Eric Stephens<br>Susan Turk | 10/21/10 | Closing argument | Gaffey: lead counsel.<br><br>Schaffer:  second seat to Gaffey, provided assistance with closing argument.<br><br>Tambe:  principal member of the trial team, with witness responsibilities and main responsibility for valuation case.  Had advice and background necessary for potential rebuttal to Barclays' closing' argument.<br><br>Dailey:  responsible for tracking exhibits offered and admitted in evidence and cross checking Barclays exhibits for objections, document history, foundation, etc., including exhibits used during Barclays' closing argument.<br><br>Ferry:  provided demonstratives and electronic trial support for closing argument.<br><br>Rosenblum:  provided bankruptcy advice, as needed.<br><br>Green, McMahon, Stephens, Turk:  associates in attendance to provide assistance, as needed, in the courtroom and workrooms during closing argument. |
| Aviva Warter-Sisitsky<br>Jayant Tambe | 10/22/10 | Meeting at Lehman | This was a high level strategy meeting with the client to discuss a number of issues relating to the close-out of derivatives positions by the largest bank counterparties.<br><br>Tambe:  lead partner on derivatives counseling and litigation.<br><br>Sisitsky:  partner with day-to-day management and oversight of significant derivatives matters. |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Christine Kim Ji Ung Kim | 10/26/10 | Meeting at A&M | Christine Kim, partner, and Ji Ung Kim, law clerk, from Jones Day attended meetings with A&M personnel, Momo-o (local counsel) and Nomura (financial advisor to LBC) regarding the practical and documentation issues surrounding the sale of LBC's portfolio of NPLs in Japan. Christine Kim: lead partner responsible for high-level strategy and negotiations. Ji Ung Kim: law clerk responsible for the due diligence and drafting of the transaction documents. The attendance of both Christine Kim and Ji Ung Kim at all meetings was necessary. |
| Lee Pollack Aviva Warter-Sisitsky Jayant Tambe | 10/27/10 | Meeting at Lehman | This was a meeting with advisors to the Creditors' Committee to inform the Creditors' Committee of settlement negotiations with a counterparty. Tambe: lead partner of all derivatives counseling and litigation matters. Led the discussion and presentation to the Creditors' Committee. Sisitsky: Co-lead partner on this counterparty matter. Addressed settlement negotiations and answered questions re: dealings with counterparty's counsel. Pollack: mid-level associate assigned to the counterparty team who was present to address discovery and document issues. |
| Carl Black Jayant Tambe Joel Telpner Stella Tipi Aviva Warter Sisitsky | 12/3/10 | (RFC) Meeting with creditors' committee | Telpner is the expert on structured finance transactions and asset backed commercial paper conduits and provided the analysis of the transaction. Black is the bankruptcy expert and analyzed the bankruptcy arguments for recapturing a $1 billion payment from RFC. Warter Sisitsky is responsible for developing the overall |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
|  |  |  | legal arguments to be applied to recover a $1 billion payment from RFC.  Tambe is in charge of the entire derivatives strategy. Tipi is the associate involved in the day-to-day dealings of the matter, making her presence necessary.  Each participant provided significant responsibilities and expertise critical to the RFC dispute. |
| Joel Telpner Stella Tipi | 12/8/10 | (RFC) 30(b)(6) deposition | Telpner is the expert on structured finance transactions and asset backed commercial paper conduits and provided the analysis of the transaction.  His expert presence was necessary to provide technical background information for the deposition.  Tipi was required to attend because she was conducting the deposition of the RFC representative.  Both participants provided significant responsibilities and expertise critical to the RFC dispute. |
| Jayant Tambe Aviva Warter Sisitsky | 12/20/10 | (Nomura) Settlement meeting | Tambe is the lead derivatives lawyer and attended to address broader strategic issues.  Warter Sisitsky is the lead partner for this matter and attended to address the claims at issue. |
| Sarah Lieber Lee Pollack Benjamin Rosenblum Jayant Tambe Aviva Warter Sisitsky | 1/4/11 | (Nomura) Telephonic hearing with court regarding discovery dispute | Tambe is the lead derivatives lawyer and addressed the Court with respect to the discovery dispute at issue.  Warter Sisitsky is the lead partner for this matter and attended to address the claims at issue.  Rosenblum is a bankruptcy expert and provided support for bankruptcy law arguments made in connection with the dispute.  Lieber and Pollack are the associates involved in the day-to-day dealings of the matter and responsible for coordinating and conducting the discovery at issue, thereby making their presence necessary. |
| Philip Hoser Peter Brabant | 1/10/11 | Meeting regarding Dante settlement and Councils' claims | Hoser is the lead litigation lawyer and attended the meeting to address strategic issues regarding the impact of any Dante settlement on exposures of client in Australia. Brabant is the lawyer managing the mis-selling proceedings by councils against Lehman Australia and was required to attend the meeting to discuss the latest developments regarding these proceedings, |

NYI-4374822v1

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | including a subpoena for production of various documents which impacted the client's interests. |
| Benjamin Rosenblum Joel Telpner Aviva Warter Sisitsky | 1/11/11 | (Asurion) Initial settlement conference | Warter Sisitsky is the lead partner for this matter and lead the initial settlement conference.  Telpner is the expert on derivatives and structured finance transactions and provided the analysis of the transaction.  Rosenblum is a bankruptcy expert and provided support for bankruptcy law arguments made in connection with the transaction. |

**EXHIBIT "F"**

JONES DAY
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Special Counsel for the Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
| | |
|---|---|
| **In re** | :     **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | :     **08-13555 (JMP)** |
| | : |
| **Debtors.** | :     **(Jointly Administered)** |
| | : |
-----------------------------------------------------------------------x

**CERTIFICATION OF ROBERT W. GAFFEY**

I, Robert W. Gaffey, certify as follows:

1.    I am a partner in the law firm of Jones Day.  I submit this certification with respect to the application (the "Application")[1] of Jones Day, special counsel for the debtors in possession in the above-captioned cases (the "Debtors"), for allowance of compensation for professional services rendered, and reimbursement of actual and necessary expenses incurred, for the period from October 1, 2010 through January 31, 2011.

2.    I make this certification in accordance with General Order M-151, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

---

[1]    Unless otherwise defined herein, all capitalized terms used herein shall have the meanings set forth in the Application.

NYI-4374823v2

3.      In connection therewith, I hereby certify that

(a)      I have read the Application;

(b)      to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Local Guidelines and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") except as specifically noted therein;

(c)      except to the extent that fees or disbursements are prohibited by the Local Guidelines or the UST Guidelines, the fees and disbursements sought are billed at rates customarily employed by Jones Day and generally accepted by Jones Day's clients; and

(d)      in providing a reimbursable service, Jones Day does not make a profit on that service, whether the service is performed by Jones Day in house or through a third party.

Dated:  June 1, 2011                        Respectfully submitted,
        New York, New York

                                            /s/ Robert W. Gaffey_____
                                            Robert W. Gaffey
                                            JONES DAY
                                            222 East 41st Street
                                            New York, New York 10017
                                            Telephone: (212) 326-3939
                                            Facsimile: (212) 755-7306

                                            SPECIAL COUNSEL FOR THE DEBTORS IN
                                            POSSESSION

- 2 -