WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re | : **Chapter 11 Case No.** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : **08-13555 (JMP)** |
| | : |
| **Debtors.** | : **(Jointly Administered)** |

------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION TO AMEND THE ORDER PURSUANT TO**
**SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 9019(a) ESTABLISHING PROCEDURES TO (I) RESTRUCTURE,**
**(II) MAKE NEW OR ADDITIONAL DEBT OR EQUITY INVESTMENTS**
**IN, AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES**
**IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of June

1, 2011 (the "Motion"), of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-

referenced chapter 11 cases (together, the "Debtors") to amend the *Order Pursuant to Sections*

*105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing*

*Procedures to (i) Restructure, (ii) Make New or Additional Debt and/or Equity Investments in,*

*and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate*

*Investments*, all as more fully described in the Motion, will be held before the Honorable James

M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Court"), on **June 15, 2011, at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, and shall be filed

with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:

Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee

for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope

Davis, Esq., Elisabetta Gasparini, Esq., and Andrea Schwartz, Esq.; and (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official

Committee of Unsecured Creditors appointed in these cases, and (v) all parties who have

requested notice in these chapter 11 cases, so as to be so filed and received by no later than **June

8, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.


Dated:  June 1, 2011
        New York, New York

        /s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
|                                          |   |                              |
|:-----------------------------------------|:--|:-----------------------------|
| **In re**                                | : | **Chapter 11 Case No.**      |
|                                          | : |                              |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)**       |
|                                          | : |                              |
| **Debtors.**                             | : | **(Jointly Administered)**   |
|                                          | : |                              |
|                                          | : |                              |
---------------------------------------------------------------------x

**DEBTORS' MOTION TO AMEND THE ORDER PURSUANT TO SECTIONS
105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019(a) ESTABLISHING PROCEDURES TO (I) RESTRUCTURE,
(II) MAKE NEW OR ADDITIONAL DEBT OR EQUITY INVESTMENTS
IN, AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES
IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), file this Motion

and respectfully represent:

## Preliminary Statement

1.      Since late 2009, the Debtors have been managing their Real Estate Investments[1] in accordance with various protocols that have been approved by the Court, including, among others, the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt and/or Equity Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, dated November 23, 2009 [Docket No. 5912] (the "Original Order").  Such protocols, including the Original Order, have enabled the Debtors to successfully consummate numerous transactions concerning their Real Estate Investments during the past two years in an efficient and expeditious manner, in the best interests of the Debtors' estates and their creditors.

2.      As the Debtors have utilized the procedures set forth in the Original Order, they have continued to evaluate the efficacy of the procedures and, from time to time and in consultation with the Creditors' Committee, have suggested ways to maximize the efficiency of the procedures and the appurtenant benefits to the Debtors and their creditors.  For example, to reduce the onerous administrative burden imposed on the Debtors by the reporting requirements contained in the Original Order, the Debtors previously modified those reporting requirements to

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the *Motion of the Debtors Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) for the Establishment of Procedures to (i) Restructure, (ii) Make New or Additional Debt and/or Equity Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, dated October 28, 2009 [Docket No. 5653].

require the Debtors to report only New Investments made by the Debtors in accordance with the Original Order.[2]

3.        In the spirit of cultivating greater efficiency and clarity with respect to the procedures in the Original Order, the Debtors now seek to further amend the Original Order (as modified by the Real Estate Asset Dispositions Order, the "<u>First Amended Order</u>"), as set forth in detail below, to clarify certain aspects of the procedures and better protect and preserve the value of the Debtors' Existing Real Estate Investments.  The revised procedures will streamline the process by which the Debtors may effectuate certain Real Estate Loan Transactions, while providing the Creditors' Committee increased oversight and approval rights over such transactions.

### Relief Requested

4.        The Debtors seek authority to modify the First Amended Order (as modified, the "<u>Second Amended Order</u>"), as set forth below, and request that the Court approve the Second Amended Order, a copy of which is annexed hereto as <u>Exhibit A</u>.

### Background

5.        On September 15, 2008, and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to

---

[2] *See Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 9019(a) for the Establishment of Procedures to Dispose of Real Estate Assets and Modification of the Order Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt or Equity Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, dated June 17, 2010 [Docket No. 9633] (the "<u>Real Estate Asset Dispositions Order</u>").

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to

section 1102 of the Bankruptcy Code.

7.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI"). A trustee appointed under SIPA is administering LBI's estate.

8.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner"), and by order dated January

20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the

Examiner.  On March 11, 2010, the Examiner filed its report with the Court [Docket No. 7531].

9.      On January 25, 2011, the Debtors filed their First Amended Joint Chapter

11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 14150] and the

Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code

[Docket No. 14151].

10.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

11.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Modifications to the First Amended Order

12.     The Debtors, in consultation with Creditor's Committee, propose that the

First Amended Order be modified as follows:

- The Debtors are permitted to expend funds in connection with any existing Real Estate Investments, without the need to provide notice to any party or obtain approval from the Court or any party, for the following purposes: (i) ordinary course expenses required for the sound operation and management of a property or loan, including, without limitation, real estate taxes and insurance premium payments, and (ii) protective advances (a) to cure a superior loan default in an amount up to and including $5 million, and/or (b) for non-discretionary or emergency property related purposes ("Permitted Expenditures").

- All references to Mark-to-Market Carrying Value in the First Amended Order will be modified to reflect the current valuation method agreed to between the Debtors and the Creditors' Committee, which is the Estimated Recovery Value[3], or such other value as otherwise agreed by the Debtors and the Creditors' Committee.

- The Debtors will no longer need to obtain Court approval for New Investments greater than $5 million but less than or equal to $25 million in connection with existing Real Estate Investments with a value greater than $100 million; rather, such New Investments will be subject to the Creditors' Committee's approval and objection rights in accordance with the procedures.

- The Debtors will continue to file, on a quarterly basis, a report of all New Investments as provided in the First Amended Order; however, rather than having to identify the value of the Real Estate Investment underlying each New Investment, the Debtors will provide a range of values corresponding

---

[3] "Estimated Recovery Value" as used herein shall mean the Debtors' calculation as of June 30, 2010 of the undiscounted net recovery of all cash flows associated with the Real Estate Investment as agreed to by the Creditors' Committee, or such other value as may be agreed by the Debtors and the Creditors' Committee.

to the thresholds in the procedures within which the value of the Real Estate Investment underlying the New Investment falls.

13.      Other than the modifications described above, the Second Amended Order does not significantly modify the First Amended Order or the definitions of the terms, "Restructuring," "New Investment" and "Settlement" contained therein.  A copy of the Second Amended Order, which has been blacklined to reflect the modifications made since the First Amended Order, is annexed hereto as Exhibit B.

## The Modifications to the First Amended Order Should be Approved

14.      The proposed modifications to the First Amended Order bring greater clarity to the scope of the thresholds set forth in the procedures and provide the Debtors with greater flexibility to make expenditures that are necessary to preserve the value of the Debtors' existing Real Estate Investments, without incurring the cost and delay associated with seeking relief from the Court prior to each such transaction, while at the same time providing the Creditors' Committee ample oversight and opportunity to object to the estates' use of funds, if appropriate.

15.      The Debtors have expended an inordinate amount of time and energy since the entry of the Original Order and the First Amended Order analyzing whether particular disbursements are in the ordinary course of business and, therefore, authorized under section 363 of the Bankruptcy Code or other orders of this Court.  The proposed modifications to the First Amended Order will clarify certain categories of expenditures that will be deemed ordinary course, thus eliminating debate and delay.  The proposed changes will not eliminate all discussions regarding the breadth of ordinary course expenses; they will, however, substantially limit the areas of uncertainty.

16.     It is crucial for the sound operation and preservation of the Debtors'
existing Real Estate Investments that the Debtors be able to make Permitted Expenditures in an
expeditious manner, without the need for Court or other approvals.  Permitted Expenditures
cover expenses, such as ordinary maintenance, regular security, real estate taxes, insurance
premiums, and other expenses that are necessary for the normal maintenance and operation of a
property and to prevent it from falling into disrepair.  Permitted Expenditures also include
protective advances made by the Debtors to cure superior loan defaults up to a certain amount, so
that the Debtors can prevent foreclosures by senior lenders, or in response to property-related
emergencies that require immediate attention.

17.     The Debtors' ability to promptly make such expenditures is critical to
preserve the value of the Debtors' Real Estate Investments.  Requiring the Debtors to seek
approvals of the Court or any party prior to making such expenditures could be detrimental to the
value of the Debtors' Real Estate Investments in situations in which emergency improvements or
repairs are needed to preserve the related property and, in the case of routine expenditures, would
be overly burdensome on the Debtors' estates.  The Second Amended Order clarifies that the
Debtors are allowed to make Permitted Expenditures without the need for any approvals, thus
enabling the Debtors to fund necessary expenses to preserve the value of their Real Estate
Investments and avoid the cost, delay and consequent harm that could result to the Debtors and
their estates by having to seek approvals prior to making such expenditures.

18.     Consistent with the First Amended Order, the Debtors and the Creditors'
Committee have, from time to time, since the entry of the Original Order agreed upon values to
be attributed to the Debtors' Real Estate Investments for purposes of applying the thresholds set
forth in the procedures.  The Second Amended Order reflects the current agreement between the

Debtors and the Creditors' Committee to use Estimated Recovery Value as of June 30, 2010, subject to further agreement between the Debtors and the Creditors' Committee, to value the Debtors' Real Estate Investments for purposes of applying the thresholds in the procedures.

19.    The proposed modifications to the thresholds applicable to New Investments would help the Debtors to avoid the cost and delay associated with seeking Court approval for certain New Investments that are relatively modest as compared to the size of the underlying Real Estate Investments, without depriving the Debtors' stakeholders of adequate scrutiny over the Debtors' proposed actions. The procedures currently in effect in the First Amended Order require the Debtors to seek (i) Court approval for any New Investment greater than $5 million but less than or equal to $25 million that is proposed to be made in connection with an underlying Real Estate Investment with a value over $100 million, and (ii) approval of the Creditors' Committee for such New Investments that are proposed to be made in connection with underlying Real Estate Investments with a value equal to or less than $100 million. The proposed modifications simplify the thresholds applicable to New Investments by requiring the Debtors to seek approval of the Creditors' Committee for all New Investments greater than $5 million but less than or equal to $25 million (regardless of the value of the underlying Real Estate Investment), while continuing to require the Debtors to seek Court approval in situations where the Creditors' Committee objects to the Debtors' proposed use of funds, as well as for all New Investments over $25 million. As such, the proposed modifications to the procedures for New Investments are consistent with the thresholds that require approval under the First Amended Order, but provide for a process that more evenly balances the interests of efficiency and transparency.

20.    Lastly, the proposed modifications to the reporting requirements in the First Amended Order enable the Debtors to better protect the value of their Real Estate Investments by minimizing the potentially adverse impacts of disclosing information regarding the Debtors' valuation of their Real Estate Investments, while preserving the purpose of the reporting requirements—to provide transparency to the Debtors' stakeholders regarding the transactions entered into by the Debtors pursuant to the court-ordered procedures.  The Debtors believe that compliance with the current reporting requirements, particularly requiring the Debtors to disclose the value of the Real Estate Investments underlying their New Investments, could materially impact the value of those investments in the context of the future disposition of those assets by the Debtors.  The form and content of the current reporting requirements may enable creditors and prospective bidders on the Debtors' real estate assets to determine how the Debtors value particular assets and then trade, bid, or otherwise act based on that information in a manner that is detrimental to the Debtors' interests, making it difficult for the Debtors to maximize return on their investments.

21.    By permitting the Debtors to report a range of values corresponding to the various thresholds in the procedures within which the value of the Real Estate Investment underlying the New Investment falls, the proposed modifications will allow the Debtors to provide their creditors with sufficient information regarding New Investments made in accordance with the Second Amended Order and will minimize the risk of third parties being able to use the Debtors' valuation information against the Debtors' interests.

22.    The Debtors have consulted with the Creditors' Committee regarding the proposed modifications in the Second Amended Order and the Creditors' Committee does not object to the proposed modifications.

23.     For the foregoing reasons, the proposed modifications to the First Amended Order are in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## Notice

24.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

25.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

DATED: June 1, 2011
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

**Proposed Second Amended Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
:
In re                                                            :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
:
Debtors.                            :    (Jointly Administered)
:
-------------------------------------------------------------------x

### AMENDED ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 ESTABLISHING PROCEDURES TO (I) RESTRUCTURE, (II) MAKE NEW DEBT OR EQUITY INVESTMENTS IN, AND/OR (III) ENTER INTO SETTLEMENTS AND COMPROMISES IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS

Upon the motion, dated June 1, 2011 (the "<u>Motion</u>")[1], of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (collectively, the "<u>Debtors</u>"), to amend the *Order Pursuant to*

*Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing*

*Procedures to (i) Restructure, (ii) Make New or Additional Debt and/or Equity Investments in,*

*and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate*

*Investments*, dated November 23, 2009 [Docket No. 5912] (the "<u>Original Order</u>"), as modified in

the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules*

*6004(h) and 9019(a) for the Establishment of Procedures to Dispose of Real Estate Assets and*

*Modification of the Order Establishing Procedures to (I) Restructure, (II) Make New or*

*Additional Debt or Equity Investments in, and/or (III) Enter into Settlements and Compromises*

*in Connection with Existing Real Estate Investments*, dated June 17, 2010 [Docket No. 9633]

(the "<u>Real Estate Asset Dispositions Order</u>"), all as more fully described in the Motion; and the

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided in accordance with the procedures set forth in the second amended order entered June

17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the

Office of the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of

Unsecured Creditors (the "Creditors' Committee"); (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; and (vi) all parties who have requested notice in these chapter 11 cases,

and it appearing that no other or further notice need be provided; and a hearing (the "Hearing")

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefore, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that the Original Order, as amended by the Real Estate Asset

Dispositions Order, is further amended and superseded in its entirety by this Amended Order;

and it is further

      ORDERED that the Debtors shall be, and hereby are, authorized to enter into Real

Estate Loan Transactions, including (i) restructuring the terms of a Real Estate Investment through various means, including, but not limited to: adjusting interest rates, adjusting the outstanding principal balance, adjusting amortization, changing payment schedules, changing events of default, releasing or obtaining collateral, granting releases of certain of the Debtors' rights as against borrowers (or their affiliates) or guarantors, entering into new intercreditor agreements, adjusting covenants, obtaining equity interests in borrowers, granting forbearances, granting guarantees and/or indemnities, voting on plans of reorganization of borrowers, and/or negotiating, amending, or modifying any of the terms and conditions of the underlying loan or equity agreement ("Restructurings"), (ii) making new discretionary debt or equity investments in connection with an existing Real Estate Investment ("New Investments"), (iii) expending funds in connection with an existing Real Estate Investment for (a) ordinary course expenses required for the sound operation and management of a property or loan, including, without limitation, real estate taxes and insurance premium payments, and (b) protective advances (x) to cure a superior loan default in an amount up to and including $5 million, and/or (y) for non-discretionary or emergency property related purposes ("Permitted Expenditures"), and (iv) entering into settlements and compromises with borrowers, lenders, investors, business partners, joint ventures, brokers, and any other person with an interest in, or in the proceeds of, a Real Estate Investment of debt or equity interests and/or claims which include, without limitation, the forgiveness of debt and conveyance of direct or indirect interests in real property, including, without limitation, the release of collateral, borrowers, guarantors, and/or sponsors ("Settlements"), in accordance with the following procedures:

> a.    The Debtors may, without further order of the Court or notice to or approval of any party, (i) enter into and consummate a Restructuring or Settlement in connection with an existing Real Estate Investment having an

aggregate Estimated Recovery Value[2] of up to and including $10 million, and (ii) make a Permitted Expenditure in connection with any existing Real Estate Investment.

b.      The Debtors may enter into and consummate Real Estate Loan Transactions that (i) involve (x) a Real Estate Investment having an aggregate Estimated Recovery Value of greater than $10 million but less than or equal to $25 million, and/or (y) the Debtors making a New Investment in an amount up to and including $5 million, and (ii) do not also fall within the parameters set forth below in clauses (c) or (d) of these procedures, without further order of the Court or approval of or notice to any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transactions as soon as practicable but in no event later than promptly following the closing of such transactions.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (b) and (c) or both clauses (b) and (d) of these procedures, the provisions of clause (c) or (d), respectively, shall govern.

c.      If a Real Estate Loan Transaction (i) involves (w) a Real Estate Investment having an aggregate Estimated Recovery Value greater than $25 million, (x) the Debtors making a New Investment in an amount greater than $5 million but less than or equal to $25 million, (y) a Restructuring of the Debtors' debt or equity position in a Real Estate Investment or a Settlement resulting in a reduction in the aggregate value of the Real Estate Investment to a value that is less than 50% of the aggregate Estimated Recovery Value of the Real Estate Investment, and/or (z) any party to the Real Estate Loan Transaction being either a person employed by the Debtors at any time on or after September 15, 2007 or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Real Estate Loan Transaction, and (ii) does not also fall within the parameters set forth in clause (d) of these procedures, the Debtors will provide to the Creditors' Committee a summary of the proposed Real Estate Loan Transaction identifying the salient terms of the proposed Real Estate Loan Transaction, including without limitation, if clause (z) above is applicable, the name of the person employed by the Debtors at any time on or after September 15, 2007 who is involved in the transaction and such person's role in the transaction (the "<u>Real Estate Loan Transaction Summary</u>"). The Creditors' Committee will be required to submit any objections to a Real Estate Loan Transaction identified in a Real Estate Loan Transaction Summary so as to be received by the Debtors on or before ten (10) business days after service of such Real Estate Loan Transaction Summary; provided, however, that if the Creditors' Committee requests additional information regarding a Real Estate Loan Transaction, its objection period shall be suspended until the requested

---

[2]  "Estimated Recovery Value" as used herein shall mean the Debtors' calculation as of June 30, 2010 of the undiscounted net recovery of all cash flows associated with the Real Estate Investment as agreed to by the Creditors' Committee, or such other value as may be agreed by the Debtors and the Creditors' Committee.

information has been provided.  If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may file a motion with the Court seeking approval of the Real Estate Loan Transaction.  If the Creditors' Committee does not timely object to a Real Estate Loan Transaction, or the Debtors and the Creditors' Committee resolve a timely objection, the Debtors may proceed with the Real Estate Loan Transaction without further order of the Court or notice to or approval of any party.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (c) and (d) of these procedures, the provisions of clause (d) shall govern.

d.       The Debtors will be required to file a motion with the Court seeking approval of (i) any Restructuring or Settlement in connection with an existing Real Estate Investment having an aggregate Estimated Recovery Value greater than $100 million, and (ii) any New Investment in an amount greater than $25 million.

e.       The Debtors may enter into and consummate any Real Estate Loan Transaction that involves a Real Estate Investment having an aggregate Estimated Recovery Value of greater than $25 million without further order of the Court or notice to or approval of any party, if the transaction involves only (i) a non-material amendment to or modification of a Real Estate Investment, as determined by the Debtors after consultation with the Creditors' Committee, and/or (ii) the Debtors making a New Investment in an amount not greater than $5 million; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transaction as soon as practicable but in no event later than promptly following the closing of such transaction.

f.       Real Estate Investments that are managed by the Debtors as part of distinct and identifiable portfolios that are cross-collateralized or cross-defaulted shall be aggregated for purposes of applying the thresholds set forth in clauses (b) through (e) of these procedures to Real Estate Loan Transactions.

g.       A Real Estate Loan Transaction involving a New Investment of up to and including $5 million that would otherwise be governed by clauses (b) or (e) of these procedures, will be subject to approval of the Creditors' Committee as set forth in clause (c) of these procedures if (i) the proposed New Investment is being made in connection with a Real Estate Investment that is part of a portfolio of Real Estate Investments with the same sponsor or group of affiliated sponsors (a "Portfolio"), and (ii) the aggregate amount of the proposed New Investment and all New Investments made by the Debtors in the 6-month period preceding the proposed New Investment in connection with Real Estate Investments in the same Portfolio exceeds $5 million.

h.       The Debtors' ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that, as part of the procedures set forth herein, the Debtors will file

with the Court, on a quarterly basis, a report of all New Investments made by the Debtors during

the prior three calendar months pursuant to these procedures, (i) identifying the aggregate

amount funded by the Debtors with respect to real estate assets owned by the Debtors, and (ii) to

the extent the amount funded with respect to individual assets is greater than or equal to $1

million, the Debtors will identify (a) the number and amount of each of such fundings on a line

item basis and (b) the city in which the property related to such New Investment is located in the

following format:

| New Investments Greater Than or Equal to $1 Million | | |
|---|---|---|
| | **Range of Value of Underlying Real Estate Investment** | **Amount of New Investment** | **City of Property Relating to New Investment** |
| 1. | | | |
| 2. | | | |
| 3. | | | |

and it is further

ORDERED that the procedures set forth herein shall not override the procedures

previously approved by this Court in the SPE Foreclosure Procedures Order, the Discounted

Payoff Procedures Order and the Real Estate Asset Dispositions Order (the "Approved

Procedures Orders") and, to the extent a Real Estate Transaction Loan Transaction proposed to

be undertaken pursuant to the procedures set forth herein conflicts with the procedures set forth

in any of the Approved Procedures Orders, the procedures set forth in the Approved Procedures

Orders shall govern; and it is further

ORDERED that nothing in this Order authorizes the transfer of any collateral for

securities guaranteed by the Government National Mortgage Association ("GNMA"), including,

but not limited to, mortgage loans or related foreclosure judgments or deeds or assignments in

lieu of foreclosure, or any Participations or Other Interests as such terms are defined in the

guaranty agreements between LBHI and GNMA; and it is further

ORDERED that the Debtors are authorized to execute such documents or other

instruments and carry out all other actions as may be necessary to effectuate any Real Estate

Loan Transaction in accordance with this Order; and it is further

ORDERED that this Order shall not obligate or require the Debtors to restructure

or amend any Real Estate Investment or make any New Investment in connection with an

existing Real Estate Investment, nor shall this Order preclude Debtors from settling or

compromising any claim upon further application to the Court; and it is further

ORDERED that nothing in this Order shall be construed to limit or otherwise

affect the Debtors' ability to assume or reject any credit, loan, security, participation or similar

agreement in accordance with the provisions of the Bankruptcy Code; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h) is hereby waived

and this Order shall be immediately effective and enforceable; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: June __, 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Blackline Comparison**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
: 
In re                                                              :          Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,         :          08-13555 (JMP)
:
Debtors.                              :          (Jointly Administered)
:
-------------------------------------------------------------------x

**AMENDED ORDER PURSUANT TO SECTIONS 105(a) AND
363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019~~(a)~~ ESTABLISHING PROCEDURES TO (I) RESTRUCTURE,
(II) MAKE NEW ~~OR ADDITIONAL~~ DEBT OR EQUITY INVESTMENTS IN, AND/OR
(III) ENTER INTO SETTLEMENTS AND COMPROMISES
IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

Upon the motion, dated ~~October 28, 2009~~June 1, 2011 (the "Motion")[1], of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"~~and, together~~

~~with their non-debtor affiliates, "Lehman"), pursuant to sections~~), to amend the *Order Pursuant*

*to Sections* 105(a) and 363(b) of ~~chapter 11 of title 11 of the United States Code (the "~~*the*

Bankruptcy Code~~")~~ and Bankruptcy Rule 9019 ~~of the Federal Rules of Bankruptcy Procedure~~

~~(the "Bankruptcy Rules") for establishment of procedures to (i) restructure~~*(a) Establishing*

*Procedures to (i) Restructure,* (ii) ~~make new or additional debt~~*Make New or Additional Debt*

and/or ~~equity investments in, and/or (iii) enter into settlements and compromises in connection~~

~~with existing Real Estate Investments~~*Equity Investments in, and/or (iii) Enter into Settlements*

*and Compromises in Connection with Existing Real Estate Investments*, dated November 23,

2009 [Docket No. 5912] (the "Original Order"), as modified in the *Order Pursuant to Sections*

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

~~[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.~~

*105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 9019(a) for the*

*Establishment of Procedures to Dispose of Real Estate Assets and Modification of the Order*

*Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity*

*Investments in, and/or (III) Enter into Settlements and Compromises in Connection with Existing*

*Real Estate Investments*, dated June 17, 2010 [Docket No. 9633] (the "Real Estate Asset

Dispositions Order"), all as more fully described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered ~~February 13, 2009~~June 17, 2010

governing case management and administrative procedures ~~for these cases~~ [Docket No.

~~2837~~9635] to (i) the Office of the United States Trustee for ~~the Southern District of New~~

~~York~~Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors (the

"Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi)

all parties who have requested notice in these chapter 11 cases, and it appearing that no other or

further notice need be provided; and a hearing (the "Hearing") having been held to consider the

relief requested in the Motion; and the Court having found and determined that the relief sought

in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Original Order, as amended by the Real Estate Asset

Dispositions Order, is further amended and superseded in its entirety by this Amended Order;

and it is further

ORDERED that the Debtors shall be, and hereby are, authorized to enter into Real

Estate Loan Transactions, including ~~Restructurings, New Investments, and Settlements~~(i)

restructuring the terms of a Real Estate Investment through various means, including, but not

limited to: adjusting interest rates, adjusting the outstanding principal balance, adjusting

amortization, changing payment schedules, changing events of default, releasing or obtaining

collateral, granting releases of certain of the Debtors' rights as against borrowers (or their

affiliates) or guarantors, entering into new intercreditor agreements, adjusting covenants,

obtaining equity interests in borrowers, granting forbearances, granting guarantees and/or

indemnities, voting on plans of reorganization of borrowers, and/or negotiating, amending, or

modifying any of the terms and conditions of the underlying loan or equity agreement

("Restructurings"), (ii) making new discretionary debt or equity investments in connection with

an existing Real Estate Investment ("New Investments"), (iii) expending funds in connection

with an existing Real Estate Investment for (a) ordinary course expenses required for the sound

operation and management of a property or loan, including, without limitation, real estate taxes

and insurance premium payments, and (b) protective advances (x) to cure a superior loan default

in an amount up to and including $5 million, and/or (y) for non-discretionary or emergency

property related purposes ("Permitted Expenditures"), and (iv) entering into settlements and

compromises with borrowers, lenders, investors, business partners, joint ventures, brokers, and any other person with an interest in, or in the proceeds of, a Real Estate Investment of debt or equity interests and/or claims which include, without limitation, the forgiveness of debt and conveyance of direct or indirect interests in real property, including, without limitation, the release of collateral, borrowers, guarantors, and/or sponsors ("Settlements"), in accordance with the following procedures:

a.    The Debtors may, without further order of the Court or notice to or approval of any party, (i) enter into and consummate a Restructuring or Settlement that involves ain connection with an existing Real Estate Investment having an aggregate Mark-to-Market Carrying Value[2]Estimated Recovery Value[2] of up to and including $10 million without further order of the Court or notice to or approval of any party, and (ii) make a Permitted Expenditure in connection with any existing Real Estate Investment.

b.    The Debtors may enter into and consummate Real Estate Loan Transactions that (i) involve (x) a Real Estate Investment having an aggregate Mark-to-Market CarryingEstimated Recovery Value of greater than $10 million but less than or equal to $25 million, and/or (y) the Debtors making a New Investment in an amount up to and including $5 million, and (ii) do not also fall within the parameters set forth below in clauses (c) or (d) of these procedures, without further order of the Court or approval of or notice to any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transactions as soon as practicable but in no event later than promptly following the closing of such transactions. If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (b) and (c) or both clauses (b) and (d) of these procedures, the provisions of clause (c) or (d), respectively, shall govern.

c.    If a Real Estate Loan Transaction (i) involves (w) a Real Estate Investment having an aggregate Mark-to-Market CarryingEstimated Recovery Value greater than $25 million but less than or equal to $100 million, (x) the

---

[2] "Mark-to-Market Carrying "Estimated Recovery Value" as used herein shall mean the mark-to-market carrying value on the Debtors' records of anyDebtors' calculation as of June 30, 2010 of the undiscounted net recovery of all cash flows associated with the Real Estate Investment as of December 31, 2008, or as otherwise agreed to by the Creditors' Committee; provided however, if (i) the mark-to-market carrying value of any Real Estate Investment on the Debtors' records as of December 31, 2008 is less than or equal to 50% of mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008, and (ii) the mark-to-market carrying value of any Real Estate Investment is not otherwise agreed to, or such other value as may be agreed by the Debtors and the Creditors' Committee, the Mark-to-Market Carrying Value for the purposes of this Order shall be the mark-to-market carrying value of such Real Estate Investment on the Debtors' records as of September 17, 2008.

Debtors making a New Investment in an amount greater than $5 million but less than or equal to $25 million, (y) a Restructuring of the Debtors' debt or equity position in a Real Estate Investment or a Settlement resulting in a reduction in the aggregate value of the Real Estate Investment to a value that is less than 50% of the aggregate ~~Mark-to-Market Carrying~~Estimated Recovery Value of the Real Estate Investment, and/or (z) any party to the Real Estate Loan Transaction being either a person employed by the Debtors at any time on or after September 15, 2007 or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Real Estate Loan Transaction, and (ii) does not also fall within the parameters set forth in clause (d) of these procedures, the Debtors will provide to the Creditors' Committee a summary of the proposed Real Estate Loan Transaction identifying the salient terms of the proposed Real Estate Loan Transaction, including without limitation, if clause (z) above is applicable, the name of the person employed by the Debtors at any time on or after September 15, 2007 who is involved in the transaction and such person's role in the transaction (the "Real Estate Loan Transaction Summary"). The Creditors' Committee will be required to submit any objections to a Real Estate Loan Transaction identified in a Real Estate Loan Transaction Summary so as to be received by the Debtors on or before ten (10) business days after service of such Real Estate Loan Transaction Summary; provided, however, that if the Creditors' Committee requests additional information regarding a Real Estate Loan Transaction, its objection period shall be suspended until the requested information has been provided.  If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may file a motion with the Court seeking approval of the Real Estate Loan Transaction.  If the Creditors' Committee does not timely object to a Real Estate Loan Transaction, or the Debtors and the Creditors' Committee resolve a timely objection, the Debtors may proceed with the Real Estate Loan Transaction without further order of the Court or notice to or approval of any party.  If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (c) and (d) of these procedures, the provisions of clause (d) shall govern.

d.      The Debtors will be required to file a motion with the Court seeking approval of ~~any Real Estate Loan Transaction that involves (i) a~~ (i) any Restructuring or Settlement in connection with an existing Real Estate Investment having an aggregate ~~Mark-to-Market Carrying~~Estimated Recovery Value greater than $100 million, and~~/or~~ (ii) ~~the Debtors making a~~any New Investment in an amount greater than $25 million.

e.      The Debtors may enter into and consummate any Real Estate Loan Transaction that involves a Real Estate Investment having an aggregate ~~Mark-to-Market Carrying~~Estimated Recovery Value of greater than $25 million without further order of the Court or notice to or approval of any party, if the transaction involves only (i) a non-material amendment to or modification of a Real Estate Investment, as determined by the Debtors after consultation with the Creditors' Committee, and/or (ii) the Debtors making a New Investment in an amount not

greater than $5 million; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transaction as soon as practicable but in no event later than promptly following the closing of such transaction.

f.      Real Estate Investments that are managed by the Debtors as part of distinct and identifiable portfolios that are cross-collateralized or cross-defaulted shall be aggregated for purposes of applying the thresholds set forth in clauses (b) through (e) of these procedures to Real Estate Loan Transactions.

g.      A Real Estate Loan Transaction involving a New Investment of up to and including $5 million that would otherwise be governed by clauses (b) or (e) of these procedures, will be subject to approval of the Creditors' Committee as set forth in clause (c) of these procedures if (i) the proposed New Investment is being made in connection with a Real Estate Investment that is part of a portfolio of Real Estate Investments with the same sponsor or group of affiliated sponsors (a "Portfolio"), and (ii) the aggregate amount of the proposed New Investment and all New Investments made by the Debtors in the 6-month period preceding the proposed New Investment in connection with Real Estate Investments in the same Portfolio exceeds $5 million.

h.      The Debtors' ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that, as part of the procedures set forth herein, the Debtors will file with the Court, on a quarterly basis, a report of all New Investments made by the Debtors during the prior three calendar months pursuant to these procedures, (i) identifying the aggregate amount funded by the Debtors with respect to real estate assets owned by the Debtors, and (ii) to the extent the amount funded with respect to individual assets is greater than or equal to $1 million, the Debtors will identify (a) the number and amount of each of such fundings on a line item basis and (b) the city in which the property related to such New Investment is located in the following format:

---

### New Investments Greater Than or Equal to $1 Million

---

| | **Range of Value of New~~Underlying Real Estate~~ Investment ~~underlying Transaction~~** | **Amount of New Investment** | **City of Property Relating to New Investment** |
|---|---|---|---|
| **1.** | | | |
| 2. | | | |
| 3. | | | |

and it is further

ORDERED that the procedures set forth herein shall not override the procedures previously approved by this Court in the SPE Foreclosure Procedures Order ~~and,~~ the Discounted Payoff Procedures Order and the Real Estate Asset Dispositions Order (~~together,~~ the "Approved Procedures Orders") ~~,~~ and, to the extent a Real Estate Transaction Loan Transaction proposed to be undertaken pursuant to the procedures set forth herein conflicts with the procedures set forth in ~~either~~any of the Approved Procedures Orders, the procedures set forth in the Approved Procedures Orders ~~, respectively,~~ shall govern; and it is further

ORDERED that nothing in this Order authorizes the transfer of any collateral for securities guaranteed by the Government National Mortgage Association ("GNMA"), including, but not limited to, mortgage loans or related foreclosure judgments or deeds or assignments in lieu of foreclosure, or any Participations or Other Interests as such terms are defined in the guaranty agreements between LBHI and GNMA; and it is further

ORDERED that the Debtors are authorized to execute such documents or other instruments and carry out all other actions as may be necessary to effectuate any Real Estate Loan Transaction in accordance with this Order; and it is further

ORDERED that this Order shall not obligate or require the Debtors to restructure or amend any Real Estate Investment or make any New Investment in connection with an existing Real Estate Investment, nor shall this Order preclude Debtors from settling or compromising any claim upon further application to the Court; and it is further

ORDERED that nothing in this Order shall be construed to limit or otherwise affect the Debtors' ability to assume or reject any credit, loan, security, participation or similar agreement in accordance with the provisions of the Bankruptcy Code; and it is further

ORDERED that any stay imposed by Bankruptcy Rule 6004(h) is hereby waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: ~~November~~June  __,  ~~2009~~2011
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

Document comparison by Workshare Professional on Wednesday, June 01, 2011
7:48:54 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://USDMS/US_ACTIVE/43701183/1 |
| Description | #43701183v1<US_ACTIVE> - LBHI - Amended Real Estate Investment Procedures Order |
| Document 2 ID | interwovenSite://USDMS/US_ACTIVE/43701183/12 |
| Description | #43701183v12<US_ACTIVE> - LBHI - Amended Real Estate Investment Procedures Order (Exhibit A) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 47 |
| Deletions | 44 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 95 |