QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official
Committee Of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| In re: | : | Chapter 11 Case |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al. | : | No. 08-13555 (JMP) |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| ------------------------------------------------------- x | | |

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | October 1, 2010 through January 31, 2011 |
| **Fees Incurred for Counsel** | $4,835,788.00 |
| **Expenses Incurred** | $155,800.04 |
| **Prior Interim Applications Filed** | This is the Seventh Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $492.86 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $526.33 |

## Schedule 1

## Hours, Rate and Fees for Services Rendered during the Seventh Interim Fee Period.

| TIME KEEPER | INTIALS | POSITION | RATE | HOURS TOTALS | FEES TOTAL |
|---|---|---|---|---|---|
| John B. Quinn | JBQ | Partner | $995 | 11.00 | $10,945.00 |
| Daniel P. Cunningham | DPC | Partner | $995 | 154.90 | $154,125.50 |
| Susheel Kirpalani | SK2 | Partner | $885 | 58.60 | $51,861.00 |
| Andrew J. Rossman | AJR | Partner | $885 | 70.60 | $62,481.00 |
| James C. Tecce | JCT | Partner | $850 | 670.40 | $569,840.00 |
| Eric D. Winston | EDW | Partner | $825 | 156.60 | $129,195.00 |
| Erica Taggart | ET | Partner | $750 | 638.90 | $479,175.00 |
| Eric M. Kay | EMK | Counsel | $700 | 556.50 | $389,550.00 |
| Scott C. Shelley | SCS | Counsel | $700 | 44.00 | $30,800.00 |
| William G. Berry | WGB | Counsel | $670 | 61.40 | $41,138.00 |
| Kristin Madigan | KJM | Associate | $595 | 35.50 | $21,122.50 |
| Christopher D. Kercher | CDK | Associate | $595 | 211.70 | $125,961.50 |
| Robert K. Dakis | RKD | Associate | $595 | 617.50 | $367,412.50 |
| Tyler G. Whitmer | TGW | Associate | $535 | 751.00 | $401,785.00 |
| Katherine A. Macfarlan | KM1 | Associate | $535 | 8.50 | $4,547.50 |
| Matthew R. Scheck | MS3 | Associate | $495 | 544.00 | $269,280.00 |
| Katherine A. Scherling | KS | Associate | $460 | 3.30 | $1,518.00 |
| Olga M. Urbieta | OMU | Associate | $460 | 541.70 | $249,182.00 |
| Justin Brownstone | JBX | Associate | $430 | 7.60 | $3,268.00 |
| Cash Rowden | CR | Attorney | $320 | 416.50 | $133,280.00 |
| Irene Tokar | ILT | Attorney | $320 | 131.50 | $42,080.00 |
| Lauren Rosenthal | LR | Attorney | $320 | 196.00 | $62,720.00 |
| Stephen Chiu | SC1 | Attorney | $320 | 270.60 | $86,592.00 |
| Heather Nolan | HN | Attorney | $320 | 526.10 | $168,352.00 |
| Kathleen Fay | KMF | Attorney | $320 | 34.40 | $11,008.00 |
| John Volpe | JV1 | Attorney | $320 | 2.30 | $736.00 |
| Christopher Clark | CC4 | Attorney | $320 | 601.60 | $192,512.00 |
| SoYun Roe | SR1 | Attorney | $320 | 703.40 | $225,088.00 |
| Adan Powley | AP | Attorney | $320 | 32.20 | $10,304.00 |
| Hongxia Gui | HG | Attorney | $270 | 2.40 | $648.00 |
| Ben Odell | BOX | Associate | $400 | 426.70 | $170,680.00 |
| Ben Odell | BOX | Law Clerk | $320 | 358.40 | $114,688.00 |
| Kate Lydon | KLX | Law Clerk | $320 | 143.50 | $45,920.00 |
| Kara Borden | KMB | Law Clerk | $320 | 5.00 | $1,600.00 |
| Roy Nelson | RN | Managing Clerk | $305 | 10.30 | $3,141.50 |
| Joan Collopy | JC | Paralegal | $270 | 602.10 | $162,567.00 |
| Kristina Grosso | KG | Paralegal | $270 | 2.90 | $783.00 |

| TIME KEEPER | INTIALS | POSITION | RATE | HOURS TOTALS | FEES TOTAL |
|---|---|---|---|---|---|
| Ian Ibarra | II | Paralegal | $270 | 27.60 | $7,452.00 |
| Megan Kerr | MKS | Case Assistant | $270 | 3.90 | $1,053.00 |
| Christine Martinez | CM1 | Paralegal | $270 | 2.00 | $540.00 |
| James Grossell | JG | Paralegal | $270 | 0.40 | $108.00 |
| Jonathan Land | JL | Lit Support | $365 | 0.20 | $73.00 |
| Wuk Kim | WK | Lit Support | $250 | 19.90 | $4,975.00 |
| Jonathan Espinosa | JE | Lit Support | $250 | 35.00 | $8,750.00 |
| Danny Rose | DR | Lit Support | $150 | 0.60 | $90.00 |
| Jacob Cisneros | JC2 | Lit Support | $150 | 7.90 | $1,185.00 |
| Gary Soulier | GS1 | Lit Support | $150 | 0.50 | $75.00 |
| Linda Jovel | LJ | Lit Support | $150 | 1.60 | $240.00 |
| Alan Davis | AD1 | Lit Support | $150 | 1.20 | $180.00 |
| Tim Chatham | TC1 | Lit Support | $150 | 4.10 | $615.00 |
| Joe Liao | JL9 | Lit Support | $150 | 0.30 | $45.00 |
| Robert Wagner | RW1 | Lit Support | $150 | 2.60 | $390.00 |
| Raul Vasquez | RV2 | Lit Support | $150 | 94.20 | $14,130.00 |
| TOTAL | | | | 9,811.60 | $4,835,788.00 |

**Schedule 2**

**Hours and Fees for the Seventh Interim Compensation Period As Rendered By Category**

| DESCRIPTION | TOTALS |
|---|---|
| 100 General Case Administration | $5,728.00 |
| 400 Hearings and Court Communications | $89,694.00 |
| 500 Non-Working Travel | $31,004.50 |
| 800 Unsecured Creditors Issues/Meetings/Communication | $78,460.00 |
| 2500 Derivatives/SWAP Agreement Issues | $518,712.00 |
| 3500 Plan of Reorganization/Plan Confirmation | $6,434.50 |
| 3900 Non-Derivative Adversary Proceedings | $3,864,044.00 |
| 4600 Firm's Own Billing/Fee Applications | $220,717.50 |
| 4700 Firm's Own Retention Issues | $20,993.50 |
| TOTAL: | $4,835,788.00 |

## Schedule 3

| DESCRIPTION | TOTALS |
|---|---|
| Air Travel | $2,737.18 |
| Attorney service (subpoena service- 12 subpoenas served) | $6,747.76 |
| Color printing @ $0.50 per page | $1,216.50 |
| Conference Call Fees | $1,578.39 |
| Digital Prints (blow-backs of document productions) | $9,044.99 |
| Document Reproduction@ $0.10 per page | $15,848.30 |
| EDD (cost of server space per GB) | $9,282.50 |
| Express mail | $1,237.64 |
| Hearing transcript (11 hearing transcripts) | $19,692.46 |
| Hosting (fee for hosting the external server space for the various databases created to retain the productions in the Lehman Brothers matter) | $15,160.00 |
| Hotel | $2,150.98 |
| iConect Licensing Fees | $3,498.12 |
| Image Endorsement | $787.14 |
| Local Meals | $582.96 |
| Local Travel | $451.74 |
| Media Create/Dup (per unit) | $1,395.00 |
| Messenger | $1,475.33 |
| Miscellaneous (i.e., A/V Equipment rental for Courthouse) | $8,251.25 |
| Off-site document services (i.e., document binding, binders) | $4,894.66 |
| Online Research | $31,317.09 |
| Other Lit Support Services (i.e., database maintenance and licensing fees) | $5,149.43 |
| Outside record production | $104.00 |
| Outside Velobind | $8.00 |
| PACER Services | $677.68 |
| Parking | $1,285.25 |
| Postage | $53.20 |
| Professional Services (vendor used to create hyper-linked Barclays' brief for submission to Court) | $10,691.61 |
| Scans @ $0.10 per page | $217.50 |
| Taxi | $146.27 |
| Telecopier | $15.36 |
| Telephone | $88.80 |
| Travel (in-flight internet) | $12.95 |
| **TOTALS** | **$155,800.04** |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official
Committee Of Unsecured Creditors of
Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                    :    Chapter 11 Case
                                          :
LEHMAN BROTHERS HOLDINGS INC.,            :    No. 08-13555 (JMP)
<u>et al.</u>                             :
                                          :    Jointly Administered
                        Debtors.          :
------------------------------------------------------- x

**SEVENTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART
& SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING
THE PERIOD OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

        Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated April 14, 2011, (as amended, the "<u>Compensation Order</u>"), for allowance of

interim compensation for professional services rendered in the amount of $4,835,788.00 and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the amount of $155,800.04, during the period beginning October 1, 2010 through and including January 31, 2011 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.        As special counsel to the Committee, Quinn Emanuel is responsible for investigating and prosecuting claims and causes of action against major financial institutions that were parties to myriad complex transactions with Lehman, such as Barclays Capital, Inc. ("Barclays"), JPMorgan Chase Bank, N.A. ("JPMC"), and Bank of America, N.A. ("BofA").  The resources devoted by Quinn Emanuel to these tasks enables the Committee to substantially advance the rights of all unsecured creditors.

2.        Throughout this Fee Period, Quinn Emanuel attorneys spent a significant amount of time investigating claims, drafting hundreds of pages of briefs and memoranda, and participating in numerous derivatives-related meetings and mediations.  As a direct result of the contributions of Quinn Emanuel, the Committee, and the estate's other professionals, the estates obtained significant judgments and have preserved and significantly enhanced the value of estate assets.

3.        Barclays Litigation.  Of note, during this Fee Period, Quinn Emanuel attorneys dedicated significant resources to concluding a bench trial that spanned nine months regarding the Rule 60(b) motions filed by the Committee, Lehman Brothers Holdings Inc. ("LBHI"), and the SIPA Trustee (together, the "Movants"), which is the most complex and extensive evidentiary hearing conducted in the Lehman cases to date.

2

4.    The trial started on April 9, 2010 and continued (non-consecutively) through October 21, 2010. During this Fee Period, the Court conducted 4 days of evidentiary hearings, consisting of testimony from 3 expert witnesses, and 3 days of argument, including closing arguments. Throughout the months of October and November, Quinn Emanuel attorneys on the Barclays litigation team prepared detailed post-trial briefs and coordinated the completion of the introduction of exhibits and deposition testimony into evidence.

5.    Indeed, among the many vital tasks performed during this Fee Period, Quinn Emanuel attorneys dedicated significant time to preparing closing arguments in the Barclays trial. Closing arguments consisted of an all-day hearing before Judge Peck wherein each of the Movants and Barclays summarized their legal and factual arguments for the Court. In preparation for this hearing, Quinn Emanuel attorneys prepared a detailed multimedia presentation summarizing the key aspects of the Committee's presentation.

6.    Quinn Emanuel attorneys also devoted significant time to researching, writing, revising, and preparing a post-trial memorandum requested by the Court, which was ultimately submitted on November 22, 2010. The drafting of the post-trial brief involved an extensive review of the considerable trial record, exhibits, and depositions. Quinn Emanuel's work on the post-trial memo culminated in a 171-page submission to the Court.

7.    <u>JP Morgan Litigation</u>. In addition, during this Fee Period, Quinn Emanuel also devoted significant resources to prosecuting the litigation against JPMC. During this period, fact discovery and dispositive motion practice continued. Quinn Emanuel drafted and served nine subpoenas on third parties, including, banks, individuals and government agencies. Indeed, Quinn Emanuel has taken a central role in third party discovery, including issuing meeting and conferring with subpoena recipients and reviewing the resulting document

3

productions.  Additionally, during this Fee Period, Quinn Emanuel attorneys served further document requests on JPMC and prepared and served objections and responses to document requests served by JPMC on the Committee and its financial advisors.  The Committee continues to work with the estates in coordinating the review of over 400,000 documents produced by the eighty three parties that have received document subpoenas.

8.    In addition to the extensive discovery process, Quinn Emanuel has been engaged in substantial pre-trial motion practice in response to a motion to dismiss, filed by JPMC on August 25, 2010.  Quinn Emanuel attorneys spent considerable time performing legal and factual research and formulating a response which was filed on December 15, 2010. Moreover, on December 1, 2010, JPMC filed its counterclaims against LBHI.  Quinn Emanuel, working with co-counsel, took the lead in preparing a motion to dismiss JPMC's counterclaims in their entirety.  The plaintiffs filed their motion to dismiss at the end of the Fee Period, on January 31, 2011.

9.    Derivative Transactions.  Quinn Emanuel attorneys also devoted significant time to reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  Quinn Emanuel attorneys devoted time to diligencing certain of these transactions to ensure that the value for unsecured creditors has been maximized.

10.    Lastly, on matters where Quinn Emanuel represents the Committee and where the estates are also a party, Quinn Emanuel makes every effort to coordinate its efforts with estate counsel and avoid unnecessary duplication.  The fees and expenses charged by Quinn Emanuel were reasonable, necessary and beneficial to these estates.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## III.    GENERAL BACKGROUND

12.    On September 15, 2008, and periodically thereafter (the "Petition Date"), LBHI, and certain of its subsidiaries and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

13.    On September 17, 2008, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

14.    On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July 13, 2010, the Examiner was discharged of its duties to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

## IV.    RETENTION OF QUINN EMANUEL

15.        On October 21, 2008, the Committee filed its Application Under 11

U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention

and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc

Pro Tunc to September 17, 2008 (the "Retention Application").

16.        On November 21, 2008, this Court entered the Final Order

Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as

Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings

Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order").  A true and correct

copy of the Retention Order is attached hereto as Exhibit B.

17.        On October 11, 2008, the Debtors filed a Motion Pursuant to Sections

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to

Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals (the "Compensation Motion").

18.        The Compensation Order establishes a procedure for, inter alia, the

payment of interim fees and expenses to professionals employed by the Committee on a monthly

basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is

attached as Exhibit C.

---

[1]        Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

## V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

19.        Quinn Emanuel submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

20.        Quinn Emanuel submitted its second quarterly fee application on August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period commencing February 1, 2009 through May 31, 2009.

21.        Quinn Emanuel submitted its third quarterly fee application on December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period commencing June 1, 2009 through September 30, 2009.

22.        Quinn Emanuel submitted its fourth quarterly fee application on April 16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period commencing October 1, 2009 through January 31, 2010.

23.        Quinn Emanuel submitted its fifth quarterly fee application on August 16, 2010 requesting $3,480,537.09 in fees and $281,095.21 in expenses for the period commencing February 1, 2010 through May 31, 2010.

24.        Quinn Emanuel submitted its sixth quarterly fee application on December 16, 2010 requesting $3,187,890.63 in fees and $259,395.28 in expenses for the period commencing June 1, 2010 through September 30, 2010.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G.

25.        This Application is Quinn Emanuel's seventh quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from October 1, 2010 through January 31, 2011.

26.        This Application requests that the Court (a) approve interim fees in the total amount of $4,835,788.00 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $155,800.04 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

27.        During the Fee Period, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements"). Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $3,868,630.40 (representing 80% of the fees billed by Quinn Emanuel from October 1, 2010 through January 31, 2011) and expenses incurred in the total amount of $155,800.04 (100% of the expenses billed by Quinn Emanuel from October 1, 2010 through January 31, 2011). For the period commencing on October 1, 2010 through October 31, 2010, Quinn Emanuel requested payment of $1,044,248.00 in fees (representing 80% of the $1,305,310.00 in fees for that period) and $41,643.40 in expenses. For the period commencing on November 1, 2010 through November 30, 2010, Quinn Emanuel requested payment of $982,246.40 in fees (representing 80% of the $1,227,808.00 fees for that period) and $44,390.19 in expenses. For the period commencing on December 1, 2010 through December 31, 2010, Quinn Emanuel requested payment of $810,059.60 in fees

(representing 80% of the $1,012,574.50 in fees for that period) and $37,664.47 in expenses. For

the period commencing on January 1, 2011 through January 31, 2011, Quinn Emanuel requested

payment of $1,032,076.40 in fees (representing 80% of the $1,290,095.50 in fees for that period)

and $32,101.98 in expenses.[2]

        28.        The fees and expenses requested are reasonable, and all amounts

requested were for actual and necessary services rendered on behalf of the Committee.

        29.        Quinn Emanuel has not entered into any agreement, express or

implied, with any other party for the purpose of fixing or sharing fees or other compensation to be

paid for professional services rendered in these cases. No promises have been received by Quinn

Emanuel or any member thereof as to compensation in connection with these cases other than in

accordance with the provisions of the Bankruptcy Code.

## VI.      SUMMARY OF PROFESSIONAL SERVICES RENDERED

        30.        Pursuant to the guidelines promulgated by the United States Trustee,

Quinn Emanuel classified all services performed for which compensation is sought into separate

categories. Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided. However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category. Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

and the total number of hours expended on this case. Schedule 2, attached hereto, summarizes the

professional and paraprofessional time expended by project category. Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

---

[2]       Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description

of services performed by each attorney and paraprofessional on behalf of the Committee.[3]

       31.      The following summary is intended only to highlight key services

rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has

expended a considerable number of hours on behalf of the Committee, and is not meant to be a

detailed description of all of the work performed.

**A.**      <u>**General Case Administration (Hours: 17.90; Fees: $5,728.00)**</u>

       32.      Quinn Emanuel serves as special counsel to the Committee in respect

of numerous matters, including various estate litigations against major financial institutions.  As

special counsel, Quinn Emanuel also represents the Committee on matters where its main

counsel, Milbank Tweed, is conflicted.  To that end, its attorneys must keep abreast of the

various pleadings filed in the chapter 11 cases and in various adversary proceedings.

Accordingly, during this Fee Period, a Quinn Emanuel staff attorney spent time reviewing

pleadings filed each day in the Lehman cases and various adversary proceedings.  In order to

create cost savings to the estate, Quinn Emanuel has arranged for a specially trained staff

attorney (who bills at a rate lower than a first year associate) to conduct a review and assessment

of newly filed pleadings (including, without limitation, whether the pleadings raise issues of

concern to the Committee, or were filed in proceedings where the Committee is a party).  These

charges are part of Quinn Emanuel's efforts to prosecute valuable estate claims, are integral to

the litigation effort, and are an important part of its role as special counsel to the Committee.

---

[3]      Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

**B.** **Hearings and Court Communications (Hours: 128.80; Fees: $89,694.00)**

33.    Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus hearings where matters being handled by Quinn Emanuel were being presented for consideration, and specially scheduled hearings with respect to adversary proceedings where it represents the Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing documents, including correspondence and pleadings, and conducting independent legal and factual research.

34.    Quinn Emanuel attorneys also include in "Court Hearings" time spent in trial, including time spent during the Barclays trial.  Notably, on October 4-7, 2010, and October 21, 2010 Quinn Emanuel attorneys prepared for and attended the bench trial on the Rule 60(b) motions.  Given the complexity and significance of the issues involved in the Barclays trial, different attorneys were present at the hearings on varying days and times in accordance with the needs of the team and trial.  Notably, during this Fee Period, Quinn Emanuel attorneys participated in the expert-valuation portion of the trial, and prepared for the closing arguments on the Rule 60(b) Motions.  See infra Part VI. C. (Non Derivative Adversary Proceedings: Barclays Transaction Investigation and Litigation: Trial).

**C.** **Non-Derivative Adversary Proceedings (Hours: 8,158.00; Fees: $3,864,044.00)**

35.    Time billed to this category generally relates to litigation that Quinn Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors. Consistent with Quinn Emanuel's role as special counsel to the Committee, the majority of the

11

services Quinn Emanuel provides relate to litigation.  For that reason, most of the time in Quinn Emanuel's application falls into that category.

36.        <u>Bank of America Litigation</u>.  Quinn Emanuel attorneys actively participated on the Committee's behalf in the litigation between the estates and BofA.  On January 29, 2010, February 1, 2010 and February 2, 2010, an evidentiary hearing was conducted regarding BofA's purported right to offset $509 million maintained in an LBHI bank account against amounts purportedly owed by LBHI and Lehman Brothers Special Financing ("<u>LBSF</u>") under certain LBSF derivative contracts.  Quinn Emanuel represented the Committee, as intervenor, in connection with the BofA litigation.  At the conclusion of the evidentiary hearing, the Court directed the parties to submit post-trial briefing.

37.        On November 16, 2010, the Bankruptcy Court issued its decision (the "<u>BofA Decision</u>") granting motions for summary judgment filed by LBHI and LBSF (and joined by the Committee) against BofA.  The Court directed BofA to return $500 million plus interest to the Debtors, holding that the account at issue "was intended to function and in practice did function as a segregated account established for the special limited purpose of securing any indebtedness that might arise on account of intra-day overdrafts."  As such, BofA's seizure of the collateral violated the automatic stay imposed by section 362 of the Bankruptcy Code, and BofA was not entitled to setoff the $500 million.

38.        Quinn Emanuel attorneys spent time during this Fee Period negotiating, drafting, and revising the judgment and order giving effect to the BofA decision. Quinn Emanuel and counsel to LBSF further negotiated the terms of a stay pending appeal whereby BofA agreed, if it lost the appeal, to reimburse a portion of the Committee's and Debtors' fees up to $1.25 million.  Quinn Emanuel attorneys also prepared for and attended a

status conference held on January 19, 2011, where the parties presented this agreement to the Court.

39.        Barclays' Transaction Litigation.  On September 15, 2009 Quinn Emanuel filed the Rule 60(b) motion on the Committee's behalf seeking relief from the Sale Order dated September 20, 2008 approving the sale of assets related to Lehman Brothers' North American broker dealer business to Barclays (the "Rule 60(b) Motion") arguing, among other things, that billions in assets were transferred to Barclays without Court approval.  The other Movants (i.e., LBHI and the SIPA Trustee) filed the Rule 60(b) Motions on the same day seeking similar relief.

40.        During the Fee Period, Quinn Emanuel attorneys devoted substantial time to prosecuting the Committee Rule 60(b) Motion and assisting the Movants in prosecuting the Rule 60(b) Motions.  In particular, Quinn Emanuel attorneys were involved in (i) continuing motion practice in connection with the Rule 60(b) Motions, (ii) participating in 6 days (October 4-8 and October 18) of evidentiary hearings on the Rule 60(b) Motions and argument for the admission of documents and exhibits, (iii) preparing for and delivering a closing argument on October 21, 2010, and (iv) submitting post-trial briefing on November 22, 2010.

41.        Trial.  Quinn Emanuel attorneys devoted significant time and effort to prepare for the 7 trial dates occurring during this Fee Period.  Quinn Emanuel attorneys together with the other Movants' counsel, spent considerable time coordinating the numerous tasks involved in preparing for trial as well as general overall trial strategy by email, phone conferences, and in-person meetings.  Coordination has been key in a case with such complex issues and with numerous parties.  The Committee also has dedicated considerable time to coordinating tasks among the three Movants to avoid needless duplication of effort.

42.         Through the course of the 4 days of evidentiary hearings held during this Fee Period, the Court took testimony from 3 expert witnesses.  Preparation involved not only an extensive review of the documentary evidence and deposition testimony, but also review of the expert reports.

43.         During this Fee Period, Quinn Emanuel also prepared for and participated in two days of argument regarding the admission of certain Pricewaterhouse Coopers LLP ("PWC") documents and other exhibits.

44.         Due to the complex nature of the trial issues, various Quinn Emanuel attorneys were necessary both in trial preparation and at trial.  Mindful of the resources being devoted to this important trial, Quinn Emanuel's team was scaled down to four attorneys at the conclusion of trial from eight at the start.  Where possible, Quinn Emanuel avoided having all four of these core team members at the evidentiary hearing dates.  The following list explains the tasks assigned to each attorney present during this period of the Barclays trial:

| Attorney | Description of Tasks |
| --- | --- |
| Susheel Kirpalani | Prepared to examine certain witnesses; assisted with trial strategy. |
| James C. Tecce | Prepared to conduct closing argument, to argue discovery motions, to argue disputes over exhibits; witness preparation; assisted with trial strategy. |
| Eric M. Kay | Familiar with exhibits, documents and witnesses; assisted with trial strategy. |
| Robert K. Dakis | Most familiar with exhibits produced by Barclays and Debtors; managed process of admitting exhibits into record and objections to Barclays' exhibits; manages process of preparing designations and counter designations; added exhibits; assisted with trial strategy. |
| Olga M. Urbieta | Conducted spot research assignments; familiar with exhibits and exhibits list; updated exhibit list; added exhibits. |

45.        Closing Argument.  During this Fee Period, Quinn Emanuel attorneys spent extensive time preparing for the Committee's closing presentation.  Quinn Emanuel attorneys reviewed the evidentiary record created throughout trial, as well as, the pleadings, and caselaw cited therein, filed during the pendency of the Rule 60(b) trial.

46.        Moreover, Quinn Emanuel attorneys prepared an extensive multimedia presentation that was used during the oral argument.  In creating the Committee's presentation, Quinn Emanuel attorneys drafted an extensive outline and conducted multiple moot arguments to refine the presentation.

47.        Trial Exhibits.  Altogether, Quinn Emanuel attorneys, with the other Movants' counsel, compiled and submitted 962 exhibits for use during trial.  Indeed, effectively moving the Movants' exhibits into evidence required a coordinated effort by the Debtors, Trustee and Committee counsel.  Further, additional Quinn Emanuel attorneys were responsible for reviewing and reconciling Barclays' exhibit list containing 1108 exhibits.  Quinn Emanuel attorneys analyzed each of Barclays' trial exhibits to determine applicable objections, if any, and coordinated with the Debtors, SIPA Trustee and Committee counsel in lodging and prosecuting any objections.  This task required Quinn Emanuel attorneys to review the exhibits to which objections were raised and to review both the case record as well as applicable law to prepare for oral argument regarding the admissibility of such exhibits.

48.        Ultimately, in an attempt to minimize the disputes brought before the Court, the Debtors, SIPA Trustee and Committee counsel negotiated with Barclays' counsel over the admission of certain exhibits.  These negotiations ultimately lead to four stipulations governing the admission of the majority of the exhibits offered in the Barclays litigation.

15

Notwithstanding the four stipulations, as discussed above, the Court heard argument regarding the admission of certain PWC documents and other exhibits on October 8, 2010.

49.     <u>Deposition Designations</u>.  Quinn Emanuel attorneys also designated the deposition testimony of various witnesses for use at trial.  In connection with the deposition designations, Quinn Emanuel spent time reviewing all of the Rule 60(b) motions, Barclays' response, as well as, the Movants' Rule 60(b) replies in order to ascertain the scope of the designations.  Quinn Emanuel attorneys also spent significant time counter-designating the deposition testimony of various witnesses for use at trial.  In connection with the deposition counter-designations, Quinn Emanuel attorneys spent time reviewing Barclays' designations.  In total, the parties designated and counter-designated 52 deposition transcripts.

50.     Quinn Emanuel attorneys also spent time reviewing and negotiating with Barclays regarding the admission of exhibits through the deposition designations.  Most of the objections were resolved by the parties, however, the Court heard arguments regarding the remaining designated exhibits on October 18, 2010.

51.     <u>Post-Trial Brief</u>.  The Movants and Barclays submitted post-trial briefs and findings of fact/conclusions of law on November 22, 2010.  The preparation of the Committee's post-trial brief proved to be an immense task given the lengthy evidentiary record and pleadings submitted by all of the parties.  Quinn Emanuel attorneys spent a significant amount of time researching Rule 60(b) issues, drafting, and revising the post-trial brief.  Indeed, Quinn Emanuel attorneys were able to synthesize a considerable amount of information into a 171-page pleading.  Quinn Emanuel attorneys also submitted findings of fact and conclusions of law on that same day.

52.      <u>JPMorgan Litigation</u>.  On December 2, 2009, the Committee and LBHI co-signed a memorandum (the "<u>Protocol</u>") governing among other things, the joint prosecution of claims against JPMC.  The Protocol provides the Committee, through its counsel Quinn Emanuel, will play a significant role in any litigation involving the prosecution of these claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP ("<u>Curtis</u>"), to develop potential claims against JPMC, to conduct the legal and fact research required effectively to plead those claims, and to draft an adversary complaint.

53.      On May 26, 2010, LBHI and the Committee filed an adversary complaint against JPMC (the "<u>JPMC Complaint</u>"), asserting both common law claims and avoidance claims to seek the return of billions of dollars in value to the LBHI estate by invalidating certain guaranties and security agreements entered into in the weeks before LBHI filed for bankruptcy relief.

54.      During this Fee Period, wide-ranging discovery continued in a multi-billion dollar lawsuit among the Committee, LBHI, and JPMC.  Quinn Emanuel has taken the lead in third party discovery, including issuing subpoenas, meeting and conferring with subpoena recipients and reviewing the resulting document productions.  Quinn Emanuel issued another nine subpoenas to third parties for production of documents, bringing the total for document subpoenas served by the Committee to over 25 and the total served by all parties in the adversary proceeding to approximately 100.  Quinn Emanuel attorneys continued to spend significant amounts of time meeting and conferring with counsel for both JPMC and for third parties that received document subpoenas, working toward agreements on the scope and extent of document discovery.  Quinn

Emanuel also served additional document requests on JPMC and prepared and served objections and responses to document requests served by JPMC on the Committee and its financial advisors.

55.    The bulk of the document production took place during this Fee Period.  In coordination with the estate and Alvarez & Marsal ("A&M"), Quinn Emanuel has established a team of contract attorneys – billed directly through the estate – to review documents produced in the litigation.  This document review team – numbering up to thirty attorneys at times during the Fee Period – was trained by Quinn Emanuel attorneys who continue to manage the team on a daily basis.  As documents are reviewed for factual development, Quinn Emanuel attorneys have been engaged in a "second tier" review of documents deemed important to the litigation, incorporating these documents in to memoranda and other work product analyzing the claims in the adversary proceeding.

56.    To date, JPMC has produced over 200,000 documents and third parties receiving subpoenas have, in aggregate, produced over 200,000 documents.  The team managed by Quinn Emanuel reviewed the majority of these documents during the Fee Period, with Quinn Emanuel attorneys continuing to leverage the contract team's work for fact development and to prepare for deposition discovery and, eventually, trial.

57.    Quinn Emanuel attorneys further spent considerable time working with Curtis to draft pleadings and responses, to coordinate efforts and research, and to determine the strategy for responding to JPMC's Motion to Dismiss and Counterclaims.  JPMC moved to dismiss the amended complaint on October 19, 2010.  Working with Curtis, Quinn Emanuel played a substantial role in researching for and drafting the opposition to JPMC's motion, which was filed by both LBHI and the Committee on December 15, 2010.

58.        On December 1, 2010, JPMC filed its Counterclaims against LBHI. Quinn Emanuel, working with Curtis, took the lead in preparing a motion to dismiss JPMC's Counterclaims in their entirety.  Plaintiff' filed their motion to dismiss at the end of the Fee Period, on January 31, 2011.

59.        Additionally, Quinn Emanuel has continued to work with Curtis, the estate and the parties financial advisors to research JPMC's claims against the estate as part of the claim review and reconciliation process.  It has also been working with other counsel and advisors in analyzing JPMC's derivatives claims, totaling more than $3 billion.

60.        <u>Citibank</u>.  During this Fee Period, Quinn Emanuel attorneys continued working with the estates to analyze possible claims and causes of action among Citibank N.A. and the estates, including Citi's derivatives claims and other claims to estate assets. In connection with these discussions, Quinn Emanuel continued to work with the estates to review key documents, and conduct research.

**D.    <u>Derivatives  (Hours: 736.10, Fees: $518,712.00)</u>**

61.        During the Fee Period, Quinn Emanuel attorneys devoted time to reviewing numerous derivatives transactions to which the Debtors were, or are parties.  The Debtors are in the process of reconciling and winding down their considerable derivatives trading activities.  Quinn Emanuel attorneys devoted time to diligencing certain of these transactions involving various counterparties, including large financial institutions, to ensure that the value for unsecured creditors has been maximized.

62.      The Debtors have challenged whether counterparties had the right to unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11 filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated transactions, and the value of such transactions to the estates, the outcome of such challenges can have substantial effect on the chapter 11 cases.  On behalf of the Committee, and working the Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn Emanuel attorneys have devoted substantial time examining issues, drafting memoranda, attending hearings, and providing updates to the Committee and its derivatives sub-committee concerning such challenges.  Among others, Quinn Emanuel attorneys have provided services on such issues concerning the following counterparties: Ballyrock, Neuberger/PNC, Bank of America/Ceago, JPMC, the derivatives-based claims of the so-called "Big Banks," Goldman Sachs/Deustche Bank, and Libra/MKP Vela.  Quinn Emanuel represents the Committee in connection with various aspects of the BofA "flip" adversary proceeding.

63.      In addition, Quinn Emanuel has provided services to the Committee in connection with the derivatives mediation protocols.  Quinn Emanuel's involvement entailed reviewing documents, engaging in discussions with the Debtors' professionals, making presentations and providing updates to the Committee and derivatives sub-committee, conducting legal research, and developing memoranda regarding the various issues in the litigations.

64.      <u>Libra Adversary Proceeding.</u>  On May 5, 2009, LBSF and LBHI filed a complaint for declaratory and injunctive relief against Libra CDO Limited ("<u>Libra</u>"), LaSalle Bank National Association ("<u>LaSalle</u>"), acting in its capacity as trustee under an indenture (the "<u>Indenture</u>") pursuant to which Libra raised capital through the issuance of certain notes, Bank of America (as successor in interest to LaSalle and with LaSalle, the "<u>Trustee</u>"), and Société

20

Générale, New York Branch ("SGNY" and together with Libra and the Trustee, the
"Defendants").  The Committee intervened in this action by stipulation and order entered on July
16, 2009 and filed joinders to the Debtors' dispositive motions.

65.    During this Fee Period, Quinn Emanuel attorneys participated in
multiple meetings and conferences with Libra counsel, Debtors' counsel and the Committee's
financial advisors regarding the status and implications of this adversary proceeding with respect
to other issues in the cases.  Indeed, it was necessary for Quinn Emanuel attorneys to conduct
research regarding the implications of this proceeding as well as other legal issues, and draft
memoranda regarding the same.

66.    On September 20, 2010, Lehman filed a motion seeking approval of a
settlement with SGNY with respect to the Libra transaction and a similar transaction known as
MKP Vela.  The settlement requires SGNY to pay $370 million and guarantee further payment of
$75 million.  The settlement does not resolve disputes with the Trustee or with the MKP Vela
trustee, and Lehman, if successful in the litigation, could obtain up to approximately $72.5
million from the proceeds of assets in Libra and MKP Vela.  The Committee supported the
settlement and spent time not only reviewing the settlement, but also drafting and filing a
statement in support on October 13, 2010.  The Trustee and MKP Vela trustee filed objections to
the settlement motion.  The settlement motion was heard by the Bankruptcy Court on October 20,
2010.  On October 21, 2010, the Court entered an order approving the settlement motion.  Since
approval of the settlement motion, Quinn Emanuel has continued to analyze the ongoing dispute
with Libra and MKP Vela.

67.        Big Bank Settlement Framework.  During this Fee Period, Quinn

Emanuel attorneys devoted time to reviewing and analyzing a proposed framework for resolving

disputes regarding over $20 billion in derivatives claims filed by 13 financial institutions.  This

"Big Bank" settlement process involved the review of a complex manual outlining LBSF's

proposed calculation of a settlement framework as well as attending multiple meetings with LBSF

and the various derivatives counterparties affected by the framework.

**E.**        **Nonworking Travel  (Hours: 39.80, Fees: $31,004.50)**

68.        Time billed under this category was for the necessary time that Quinn

Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings,

depositions and court hearings.  Given the compressed time and magnitude of the litigation in

which Quinn Emanuel is involved, it was necessary for attorneys outside of Quinn Emanuel's

New York office to travel to New York to participate in meetings, hearings, and settlement

negotiations.  As discussed above, the attendance of these attorneys was necessary to the effective

and efficient representation of the Committee.  Thus, time billed during this Fee Period, included

cross-country air travel relating to this litigation.[4]  Quinn Emanuel attorneys also spent time

traveling locally to Court, depositions and in-person meetings with the Debtors and other third

parties.

**F.**        **Quinn Emanuel Fee Applications (Hours: 562.00, Fees: $220,717.50)**

69.        Pursuant to the Bankruptcy Code, Local Rules, and the Compensation

Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements")

for approval and allowance of compensation for actual, reasonable and necessary professional

services rendered, and reimbursement of expenses for actual reasonable and necessary expenses

---

[4]        The airfare incurred was not billed at business class fares.

incurred during those fee periods.  Each Fee Statement contained extensive records of the work

performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the Sixth

Interim Fee Application during this Fee Period.  Preparing the Sixth Interim Fee Application

involved consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and

preparing a detailed narrative in the pleading describing these efforts.  Extensive time was also

spent organizing the time entries and preparing the charts and the summary descriptions of the

work done throughout the Sixth Interim Fee Application.  Lastly, Quinn Emanuel attorneys spent

time reviewing and revising the overall litigation budget and amending Quinn Emanuel's budget

accordingly.

## VII.    ALLOWANCE OF COMPENSATION

70.    The factors to be considered in awarding attorneys fees as enumerated

in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

1991).  Indeed, a majority of the First Colonial factors are now codified in section 330(a)(3). See,

e.g., 3 L. King, et al., Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

71.    Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent

part, that the Court may award to a professional person, "reasonable compensation for actual,

necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

72.       The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."). Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

A.       **The Time and Labor Required**

73.       The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays. The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch. During the compensation period, approximately 9811.6 recorded hours were expended by Quinn Emanuel' s partners,

24

associates, and legal assistants in providing the requested professional services. Quinn Emanuel's hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

### B.      The Necessity of The Services and Benefit to the Estate

74.      These Chapter 11 Cases are generally regarded as among the most complex and active bankruptcy cases ever filed. Indeed, many of the complex issues regarding the Debtors' financial contracts are issues of first impression, with far reaching ramifications. As detailed above, the services Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors. Quinn Emanuel's services have furthered and will continue to further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will continue to maximize estate value.

75.      As discussed above, given the significance and complexity of the Barclays Rule 60(b) Litigation, it was necessary for multiple attorneys to participate in accelerated discovery and attend the bench trial. During this Fee Period, the attorneys on the litigation team were tasked with crucial tasks such as (i) the formulation of trial strategy, (ii) closing argument, (iii) knowledge of the exhibits and documentary evidence, (iv) spot research assignments, (v) finalizing the exhibit list, and (vii) familiarity with the expert reports and expert witness depositions. As such, the presence of multiple attorneys at the Barclays bench trial was necessary and proper in order for Quinn Emanuel to properly represent the Committee. The same is true for the JPMC litigation, which involves multiple parties in discovery, and extensive motion practice.

76.         Quinn Emanuel nonetheless made every effort to avoid duplication. On any matter where Quinn Emanuel attorneys works with estate counsel, Quinn Emanuel aims to coordinate efforts and maintain efficiency.

### C.    The Novelty and Difficulty of Issues Presented in the Cases

77.         Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

### D.    The Experience, Reputation and Ability of the Attorneys

78.         Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

### VIII.   DISBURSEMENTS

79.         Quinn Emanuel has incurred a total of $155,800.04 in expenses in connection with representing the Committee during the Seventh Interim Compensation Period. Quinn Emanuel records all expenses incurred in connection with the performance of professional services.  A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

80.        In connection with the reimbursement of expenses, Quinn Emanuel's

policy is to charge its clients in all areas of practice for expenses, other than fixed and routine

overhead expenses, incurred in connection with representing its clients.  The expenses charged to

Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

charges, mail and express mail charges, special or hand delivery charges, photocopying charges,

out-of-town travel expenses, local transportation expenses, expenses for working meals,

computerized research and transcription costs.

81.        Quinn Emanuel charges the Committee for these expenses at rates

consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal

to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  Quinn Emanuel

seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten

cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll

charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the

Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement

only for the actual cost of such expenses to Quinn Emanuel.

82.        In providing or obtaining from third parties services which are

reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs

of investment, equipment or capital outlay.

83.        Quinn Emanuel regularly charges its non-bankruptcy clients for

ordinary business hourly fees and expenses for secretarial, library, word processing and other staff

services because such items are not included in the firm's overhead for the purpose of setting the

billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this

Application and will not seek reimbursement from the Debtors of such expenses in future

27

applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

84.        Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Seventh Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## IX.    NOTICE

85.        Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

## X.    CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fee Period in the amount of $4,835,788.00 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $155,800.04, for a total award of $4,991,588.04; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Seventh Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  June 2, 2011
        New York, New York

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:   _/s James C. Tecce_____
        James C. Tecce

Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.:  (212) 849-7000
Facsimile No.:  (212) 849-7100

*Special Counsel to Official Committee Of
Unsecured Creditors Of Lehman Brothers
Holdings Inc., et al.*