WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
: 
**Debtors.** : **(Jointly Administered)**
: 
----------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**

**SEVENTH INTERIM FEE APPLICATION**

Name of Applicant:       **Weil, Gotshal & Manges LLP**


Time Period:             October 1, 2010 through and including January 31, 2011


Role in the Case:        Attorneys for the Debtors and Debtors in Possession


Current Application:     Total Fees Requested:  $37,008,258.50

                         Total Expenses Requested:  $1,063,670.14

Prior Applications[1]:    First Interim Fee Application, filed April 13, 2009 [Docket No. 3343], for the period from September 15, 2008 through and including January 31, 2009

    Total Fees & Expenses Requested:  $55,140,791.25

    Total Fees & Expenses Allowed:  $55,140,197.25

Second Interim Fee Application, filed August 14, 2009 [Docket No. 4825], for the period from February 1, 2009 through and including May 31, 2009

    Total Fees & Expenses Requested:  $46,462,615.85

    Total Fees and Expenses Allowed:  $46,191,429.23

Third Interim Fee Application, filed December 14, 2009 [Docket No. 6205], for the period from June 1, 2009 through and including September 30, 2009

    Total Fees & Expenses Requested:  $46,615,231.42

    Total Fees and Expenses Allowed:  $46,266,463.77

Fourth Interim Fee Application, filed April 16, 2010 [Docket No. 8395], for the period from October 1, 2009 through and including January 31, 2010

    Total Fees & Expenses Requested:  $41,385,606.04

    Total Fees and Expenses Allowed:  $40,252,444.70

Fifth Interim Fee Application, filed August 16, 2010 [Docket No. 10791], for the period from February 1, 2010 through and including May 31, 2010

    Total Fees & Expenses Requested:  $47,819,947.03

    Total Fees and Expenses Allowed:  $47,029,684.29

Sixth Interim Fee Application, filed December 15, 2010 [Docket No. 13496], for the period from June 1, 2010 through and including September 30, 2010

    Total Fees & Expenses Requested:  $43,669.789.45

    Total Fees and Expenses Allowed:  Application Pending

---

[1] Weil, Gotshal & Manges LLP has reserved all rights with respect to any fees and expenses that have been requested but not yet allowed.

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

## SUMMARY SHEET FOR THE SEVENTH INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $1,000.00 | 134.30 | $134,300.00 |
| Harvey R. Miller | BFR | 1959 | $990.00 | 242.80 | $240,372.00 |
| Peter Gruenberger | LIT | 1961 | $1,000.00 | 251.70 | $251,700.00 |
| Peter Gruenberger | LIT | 1961 | $990.00 | 667.50 | $660,825.00 |
| Joseph H. Newberg | TAX | 1972 | $950.00 | 6.00 | $5,700.00 |
| Ralph I. Miller | LIT | 1972 | $1,000.00 | 76.20 | $67,300.00 |
| Ralph I. Miller | LIT | 1972 | $950.00 | 259.00 | $217,740.00 |
| Richard P. Krasnow | BFR | 1972 | $1,000.00 | 154.60 | $154,600.00 |
| Richard P. Krasnow | BFR | 1972 | $990.00 | 384.50 | $380,655.00 |
| Gregory D. Hull | LIT | 1973 | $700.00 | 44.40 | $31,080.00 |
| Howard B. Comet | LIT | 1976 | $865.00 | 27.60 | $23,874.00 |
| T. Ray Guy | LIT | 1976 | $885.00 | 14.40 | $12,744.00 |
| Edward Soto | LIT | 1978 | $1,000.00 | 148.50 | $148,500.00 |
| Edward Soto | LIT | 1978 | $950.00 | 401.00 | $380,950.00 |
| Elaine Stangland | CORP | 1978 | $900.00 | 8.90 | $8,010.00 |
| Richard A. Rothman | LIT | 1978 | $1,000.00 | 10.70 | $10,700.00 |
| Richard A. Rothman | LIT | 1978 | $990.00 | 25.00 | $24,750.00 |
| Rupert J. Jones | CORP | 1978 | $910.00 | 31.70 | $28,847.00 |
| Robert L. Messineo | CORP | 1979 | $1,000.00 | 36.40 | $36,400.00 |
| Robert L. Messineo | CORP | 1979 | $950.00 | 131.40 | $124,830.00 |
| Alfredo R. Perez | BFR | 1980 | $1,000.00 | 124.00 | $124,000.00 |
| Alfredo R. Perez | BFR | 1980 | $975.00 | 366.70 | $357,532.50 |
| Peter D. Isakoff | LIT | 1980 | $975.00 | 73.60 | $71,760.00 |
| Peter D. Isakoff | LIT | 1980 | $900.00 | 275.20 | $247,680.00 |
| W. M. Bond | CORP | 1980 | $1,000.00 | 181.40 | $181,400.00 |
| W. M. Bond | CORP | 1980 | $990.00 | 429.60 | $425,304.00 |
| Christopher K. Aidun | CORP | 1981 | $920.00 | 21.60 | $19,872.00 |
| Mike Francies | CORP | 1981 | $1,000.00 | 16.60 | $16,600.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

| Mindy J. Spector | LIT | 1981 | $1,000.00 | 8.70 | $8,700.00 |
|---|---|---|---|---|---|
| Mindy J. Spector | LIT | 1981 | $950.00 | 46.40 | $44,080.00 |
| Jacqueline Marcus | BFR | 1983 | $950.00 | 52.50 | $49,875.00 |
| Jacqueline Marcus | BFR | 1983 | $870.00 | 291.80 | $253,866.00 |
| Daniel J. Mette | CORP | 1984 | $865.00 | 150.30 | $130,009.50 |
| Lawrence J. Baer | LIT | 1984 | $780.00 | 15.90 | $12,402.00 |
| Lawrence J. Baer | LIT | 1984 | $720.00 | 35.50 | $25,560.00 |
| Lori R. Fife | BFR | 1984 | $1,000.00 | 246.00 | $242,500.00 |
| Lori R. Fife | BFR | 1984 | $975.00 | 461.30 | $449,767.50 |
| Richard A. Morrison | CORP | 1984 | $975.00 | 213.80 | $208,455.00 |
| Richard A. Morrison | CORP | 1984 | $885.00 | 552.90 | $489,316.50 |
| Richard L. Levine | LIT | 1984 | $950.00 | 115.10 | $96,251.50 |
| Richard L. Levine | LIT | 1984 | $885.00 | 252.00 | $223,020.00 |
| Stuart J. Goldring | TAX | 1984 | $1,000.00 | 31.00 | $31,000.00 |
| Stuart J. Goldring | TAX | 1984 | $990.00 | 43.70 | $42,768.00 |
| Jonathan D. Polkes | LIT | 1985 | $1,000.00 | 16.90 | $16,900.00 |
| Jonathan D. Polkes | LIT | 1985 | $990.00 | 30.50 | $30,195.00 |
| Andrew N. Norwood | CORP | 1986 | $1,000.00 | 7.10 | $7,100.00 |
| Matthew Bloch | CORP | 1986 | $1,000.00 | 11.90 | $11,900.00 |
| Michael K. Kam | TAX | 1987 | $900.00 | 13.90 | $12,510.00 |
| Richard W. Slack | LIT | 1987 | $950.00 | 125.40 | $119,130.00 |
| Richard W. Slack | LIT | 1987 | $885.00 | 233.10 | $206,293.50 |
| Juliet Blanch | LIT | 1988 | $1,000.00 | 96.30 | $96,050.00 |
| Larry J. Gelbfish | TAX | 1988 | $925.00 | 9.40 | $8,695.00 |
| Larry J. Gelbfish | TAX | 1988 | $885.00 | 19.20 | $16,992.00 |
| Eric J. Peterman | CORP | 1989 | $975.00 | 100.50 | $97,987.50 |
| Eric J. Peterman | CORP | 1989 | $900.00 | 341.60 | $307,440.00 |
| Frank P. Nocco | CORP | 1989 | $1,000.00 | 32.10 | $32,100.00 |
| Frank P. Nocco | CORP | 1989 | $925.00 | 102.00 | $94,350.00 |
| John B. Strasburger | LIT | 1989 | $875.00 | 30.90 | $23,231.25 |
| John B. Strasburger | LIT | 1989 | $845.00 | 186.40 | $128,397.75 |
| Nellie P. Camerik | CORP | 1989 | $925.00 | 186.50 | $167,887.50 |
| Nellie P. Camerik | CORP | 1989 | $845.00 | 584.60 | $491,240.75 |
| Penny P. Reid | LIT | 1989 | $950.00 | 76.40 | $72,580.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Penny P. Reid | LIT | 1989 | $885.00 | 254.40 | $225,144.00 |
| Vernon S. Broderick | LIT | 1989 | $875.00 | 30.80 | $26,950.00 |
| Vernon S. Broderick | LIT | 1989 | $800.00 | 88.70 | $70,960.00 |
| Andrew J. Colao | CORP | 1990 | $925.00 | 24.20 | $22,385.00 |
| Andrew J. Colao | CORP | 1990 | $845.00 | 20.70 | $17,491.50 |
| Barry Fishley | CORP | 1990 | $960.00 | 13.80 | $13,248.00 |
| Christopher Cox | LIT | 1990 | $900.00 | 104.40 | $93,960.00 |
| Christopher Cox | LIT | 1990 | $845.00 | 246.80 | $208,546.00 |
| Joanne Etherton | TAX | 1990 | $1,000.00 | 95.00 | $92,000.00 |
| Christopher R.J. Pace | LIT | 1991 | $900.00 | 17.10 | $15,390.00 |
| Christopher R.J. Pace | LIT | 1991 | $845.00 | 68.70 | $58,051.50 |
| Craig W. Adas | CORP | 1991 | $1,000.00 | 9.90 | $9,900.00 |
| Craig W. Adas | CORP | 1991 | $900.00 | 10.40 | $9,360.00 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 77.40 | $77,400.00 |
| Michael E. Lubowitz | CORP | 1991 | $1,000.00 | 11.00 | $11,000.00 |
| Michael E. Lubowitz | CORP | 1991 | $950.00 | 13.30 | $12,635.00 |
| P. J. Himelfarb | CORP | 1991 | $780.00 | 9.20 | $7,176.00 |
| Robert N. Chiperfield | CORP | 1991 | $1,000.00 | 86.40 | $86,400.00 |
| Robert N. Chiperfield | CORP | 1991 | $900.00 | 252.30 | $226,395.00 |
| Steven K. Ong | CORP | 1991 | $990.00 | 32.10 | $31,779.00 |
| Steven K. Ong | CORP | 1991 | $960.00 | 258.80 | $248,448.00 |
| Rodney D. Miller | CORP | 1993 | $1,000.00 | 16.10 | $16,100.00 |
| Rodney D. Miller | CORP | 1993 | $885.00 | 5.50 | $4,867.50 |
| Vance L. Beagles | LIT | 1993 | $875.00 | 14.70 | $12,862.50 |
| Vance L. Beagles | LIT | 1993 | $845.00 | 153.70 | $114,497.50 |
| Beatriz Azcuy-Diaz | CORP | 1994 | $850.00 | 36.00 | $30,600.00 |
| Beatriz Azcuy-Diaz | CORP | 1994 | $780.00 | 81.20 | $63,336.00 |
| David J. Lender | LIT | 1994 | $865.00 | 26.30 | $22,749.50 |
| Holly E. Loiseau | LIT | 1995 | $850.00 | 91.60 | $77,860.00 |
| Holly E. Loiseau | LIT | 1995 | $780.00 | 283.90 | $221,442.00 |
| Peter Vankeulen | LIT | 1995 | $910.00 | 19.10 | $17,381.00 |
| Uwe Hartmann | CORP | 1995 | $835.00 | 41.50 | $34,652.50 |
| Uwe Hartmann | CORP | 1995 | $775.00 | 11.30 | $8,757.50 |
| Y. S. Grossman | CORP | 1995 | $925.00 | 12.90 | $11,932.50 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Y. S. Grossman | CORP | 1995 | $845.00 | 110.60 | $93,457.00 |
| David E. Wohl | CORP | 1996 | $780.00 | 10.70 | $8,346.00 |
| Jeffrey D. Osterman | CORP | 1996 | $925.00 | 7.20 | $6,660.00 |
| Jeffrey D. Osterman | CORP | 1996 | $845.00 | 14.00 | $11,830.00 |
| Anthony J. Albanese | LIT | 1997 | $875.00 | 15.20 | $13,300.00 |
| Anthony J. Albanese | LIT | 1997 | $820.00 | 29.60 | $24,272.00 |
| Bruce S. Meyer | LIT | 1997 | $885.00 | 5.70 | $5,044.50 |
| Jane E. Morgan | CORP | 1997 | $1,000.00 | 8.30 | $8,300.00 |
| Jane E. Morgan | CORP | 1997 | $950.00 | 28.10 | $26,695.00 |
| Matthew Shankland | LIT | 1997 | $1,000.00 | 329.30 | $323,300.00 |
| Robert Frastai | TAX | 1997 | $900.00 | 20.20 | $18,180.00 |
| Robert Frastai | TAX | 1997 | $800.00 | 64.80 | $51,840.00 |
| Scarlett E. Collings | LIT | 1997 | $760.00 | 232.50 | $173,470.00 |
| Shai Y. Waisman | BFR | 1997 | $925.00 | 87.20 | $80,660.00 |
| Shai Y. Waisman | BFR | 1997 | $845.00 | 308.10 | $260,344.50 |
| David R. Fertig | LIT | 1998 | $850.00 | 72.30 | $61,455.00 |
| David R. Fertig | LIT | 1998 | $780.00 | 193.70 | $151,086.00 |
| Scott M. Sontag | TAX | 1998 | $900.00 | 7.10 | $6,390.00 |
| Arnold Buessemaker | CORP | 1999 | $760.00 | 179.00 | $136,040.00 |
| Arnold Buessemaker | CORP | 1999 | $745.00 | 91.20 | $67,944.00 |
| Gregory S. Silbert | LIT | 1999 | $760.00 | 7.30 | $5,548.00 |
| Nancy E. Lynch | CORP | 1999 | $760.00 | 68.70 | $52,212.00 |
| Nancy E. Lynch | CORP | 1999 | $700.00 | 308.50 | $215,950.00 |
| Randi W. Singer | LIT | 1999 | $850.00 | 24.90 | $21,165.00 |
| Randi W. Singer | LIT | 1999 | $780.00 | 146.20 | $114,036.00 |
| Ardith Bronson | LIT | 2000 | $760.00 | 145.50 | $107,160.00 |
| Ardith Bronson | LIT | 2000 | $700.00 | 329.20 | $230,440.00 |
| Elisa R. Lemmer | BFR | 2000 | $760.00 | 6.10 | $4,636.00 |
| Elisa R. Lemmer | BFR | 2000 | $700.00 | 57.30 | $40,110.00 |
| David Herman | CORP | 2001 | $790.00 | 119.10 | $94,089.00 |
| David Herman | CORP | 2001 | $700.00 | 508.80 | $356,160.00 |
| Robert J. Lemons | BFR | 2001 | $850.00 | 59.70 | $45,857.50 |
| Robert J. Lemons | BFR | 2001 | $780.00 | 154.00 | $120,120.00 |
| Paullette C. Deruelle | LIT | 2002 | $760.00 | 13.80 | $10,488.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Ronit J. Berkovich | BFR | 2002 | $810.00 | 14.70 | $11,907.00 |
| Ronit J. Berkovich | BFR | 2002 | $725.00 | 24.20 | $17,545.00 |
| **Total:** | | | | **15,588.90** | **$13,814,271.75** |

\* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
\*\* – N/A: UK Trainee Associate

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | LIT | 1975 | $665.00 | 10.90 | $7,248.50 |
| Christine Howard | LIT | 1975 | $640.00 | 171.70 | $109,888.00 |
| Lynn Bodkin | CORP | 1984 | $695.00 | 56.10 | $38,989.50 |
| Richard I. Ellenbogen | CORP | 1985 | $590.00 | 27.40 | $16,166.00 |
| Alan R. Kusinitz | LIT | 1986 | $750.00 | 29.30 | $21,975.00 |
| Alan R. Kusinitz | LIT | 1986 | $695.00 | 82.70 | $57,476.50 |
| Roshelle A. Nagar | CORP | 1989 | $695.00 | 9.50 | $6,602.50 |
| John Butenas | CORP | 1991 | $750.00 | 9.60 | $7,200.00 |
| John Butenas | CORP | 1991 | $695.00 | 167.90 | $116,690.50 |
| Ariel Kronman | CORP | 1993 | $700.00 | 291.30 | $203,105.00 |
| Elizabeth A. Martialay | CORP | 1996 | $665.00 | 156.50 | $104,072.50 |
| Laura S. Mello | LIT | 1996 | $290.00 | 8.00 | $2,320.00 |
| Laura S. Mello | LIT | 1996 | $250.00 | 404.50 | $101,125.00 |
| Meredith Parenti | LIT | 1996 | $750.00 | 115.20 | $86,400.00 |
| Meredith Parenti | LIT | 1996 | $695.00 | 454.90 | $303,888.75 |
| Scarlett E. Collings | LIT | 1997 | $695.00 | 457.90 | $313,028.00 |
| Adelaja K. Heyliger | CORP | 1998 | $665.00 | 6.40 | $4,256.00 |
| Konstantin Hoppe | CORP | 1998 | $580.00 | 140.40 | $81,432.00 |
| Konstantin Hoppe | CORP | 1998 | $540.00 | 45.90 | $24,786.00 |
| David W. Dummer | LIT | 1999 | $750.00 | 64.70 | $40,350.00 |
| David W. Dummer | LIT | 1999 | $695.00 | 161.60 | $109,671.00 |
| Eugene J. Ng | CORP | 1999 | $740.00 | 47.70 | $35,298.00 |
| Eugene J. Ng | CORP | 1999 | $665.00 | 85.70 | $56,990.50 |
| Gregory S. Silbert | LIT | 1999 | $695.00 | 30.60 | $21,267.00 |
| Melissa Meyrowitz | CORP | 1999 | $695.00 | 122.40 | $85,068.00 |
| Christy K. Kailis | BFR | 2000 | $865.00 | 61.10 | $52,851.50 |
| Christy K. Kailis | BFR | 2000 | $840.00 | 406.90 | $341,796.00 |
| Erin J. Law | LIT | 2000 | $750.00 | 44.40 | $33,300.00 |
| Erin J. Law | LIT | 2000 | $695.00 | 80.30 | $55,808.50 |
| Kian Tauser | TAX | 2000 | $655.00 | 28.20 | $18,471.00 |
| Konrad Von Buchwaldt | CORP | 2000 | $545.00 | 44.80 | $24,416.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| Kristen D. Perrault | LIT | 2000 | $290.00 | 78.50 | $22,765.00 |
|---|---|---|---|---|---|
| Kristen D. Perrault | LIT | 2000 | $225.00 | 398.30 | $89,617.50 |
| Andrew R. Swartz | LIT | 2001 | $750.00 | 6.90 | $5,175.00 |
| Andrew R. Swartz | LIT | 2001 | $695.00 | 55.80 | $38,781.00 |
| Astrid N. Sandberg | LIT | 2001 | $695.00 | 62.20 | $43,229.00 |
| Lidija Hubana | LIT | 2001 | $250.00 | 334.40 | $83,600.00 |
| Margarita Platkov | LIT | 2001 | $740.00 | 22.50 | $16,650.00 |
| Margarita Platkov | LIT | 2001 | $665.00 | 100.60 | $66,732.75 |
| Ron Ben-Menachem | CORP | 2001 | $630.00 | 5.40 | $3,402.00 |
| Adam M. Schloss | LIT | 2002 | $750.00 | 39.50 | $29,625.00 |
| Adam M. Schloss | LIT | 2002 | $685.00 | 69.00 | $47,265.00 |
| Airi Hammalov | CORP | 2002 | $595.00 | 31.90 | $18,980.50 |
| Arman Kuyumjian | CORP | 2002 | $665.00 | 27.50 | $18,287.50 |
| Charles J. Maples | LIT | 2002 | $800.00 | 289.50 | $231,600.00 |
| Eleanor H. Gilbane | LIT | 2002 | $750.00 | 107.50 | $80,625.00 |
| Eleanor H. Gilbane | LIT | 2002 | $695.00 | 366.00 | $246,690.25 |
| Jay H. Park Jr. | CORP | 2002 | $685.00 | 9.10 | $6,233.50 |
| Jay H. Park Jr. | CORP | 2002 | $595.00 | 55.50 | $33,022.50 |
| Paullette C. Deruelle | LIT | 2002 | $695.00 | 56.70 | $39,406.50 |
| Andrew W. Nelson | CORP | 2003 | $740.00 | 7.00 | $5,180.00 |
| Andrew W. Nelson | CORP | 2003 | $665.00 | 10.80 | $7,182.00 |
| Denise Alvarez | LIT | 2003 | $750.00 | 27.00 | $20,250.00 |
| Edward McCarthy | LIT | 2003 | $740.00 | 166.20 | $122,988.00 |
| Edward McCarthy | LIT | 2003 | $665.00 | 472.30 | $307,994.75 |
| Erin D. Eckols | LIT | 2003 | $740.00 | 113.90 | $81,215.00 |
| Erin D. Eckols | LIT | 2003 | $665.00 | 398.90 | $254,196.25 |
| Julie T. Friedman | BFR | 2003 | $500.00 | 332.80 | $166,400.00 |
| Justin G. Mapes | CORP | 2003 | $665.00 | 73.30 | $48,744.50 |
| Lavell Malloy | LIT | 2003 | $750.00 | 40.70 | $30,525.00 |
| Lavell Malloy | LIT | 2003 | $685.00 | 24.30 | $16,645.50 |
| Marisa L. Ferraro | CORP | 2003 | $750.00 | 47.80 | $35,850.00 |
| Marisa L. Ferraro | CORP | 2003 | $685.00 | 147.60 | $101,106.00 |
| Alcira Moncada | LIT | 2004 | $290.00 | 101.70 | $29,493.00 |
| Alcira Moncada | LIT | 2004 | $250.00 | 452.60 | $113,150.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Allen S. Blaustein | LIT | 2004 | $720.00 | 176.70 | $127,224.00 |
| Allen S. Blaustein | LIT | 2004 | $630.00 | 394.20 | $246,456.00 |
| Caroline Hickey Zalka | LIT | 2004 | $595.00 | 18.20 | $10,829.00 |
| Garrett Fail | BFR | 2004 | $740.00 | 274.80 | $202,871.00 |
| Garrett Fail | BFR | 2004 | $665.00 | 562.00 | $373,297.75 |
| Gavin Westerman | CORP | 2004 | $665.00 | 10.20 | $6,783.00 |
| Hannah L. Field | LIT | 2004 | $825.00 | 91.80 | $75,735.00 |
| Hannah L. Field | LIT | 2004 | $745.00 | 454.80 | $326,533.50 |
| Heather R. Solow | LIT | 2004 | $665.00 | 7.70 | $5,120.50 |
| Hendrik Boss | CORP | 2004 | $470.00 | 89.70 | $42,159.00 |
| Jacquelyn Shimmin | CORP | 2004 | $720.00 | 21.00 | $15,120.00 |
| Jae Fassam | TAX | 2004 | $640.00 | 34.50 | $22,080.00 |
| Jared R. Friedmann | LIT | 2004 | $665.00 | 32.40 | $21,546.00 |
| Jordan K. Kolar | TAX | 2004 | $740.00 | 37.50 | $27,750.00 |
| Jordan K. Kolar | TAX | 2004 | $665.00 | 49.50 | $32,917.50 |
| Michael Firestone | LIT | 2004 | $740.00 | 104.00 | $76,960.00 |
| Michael Firestone | LIT | 2004 | $665.00 | 279.30 | $185,734.50 |
| Mirella B. Hart | CORP | 2004 | $825.00 | 84.10 | $69,382.50 |
| Mirella B. Hart | CORP | 2004 | $800.00 | 256.10 | $204,560.00 |
| Nick Flynn | CORP | 2004 | $800.00 | 53.40 | $42,720.00 |
| Oliver D. Walker | TAX | 2004 | $745.00 | 5.90 | $4,395.50 |
| Robert C. Shmalo | CORP | 2004 | $740.00 | 27.40 | $20,276.00 |
| Robert C. Shmalo | CORP | 2004 | $665.00 | 185.90 | $123,623.50 |
| Robert Konig | CORP | 2004 | $595.00 | 101.00 | $60,095.00 |
| Robert S. Velevis | LIT | 2004 | $720.00 | 49.70 | $35,784.00 |
| Robert S. Velevis | LIT | 2004 | $630.00 | 287.00 | $178,038.00 |
| Blandine Perret | BFR | 2005 | $770.00 | 95.80 | $73,766.00 |
| Blandine Perret | BFR | 2005 | $695.00 | 206.90 | $143,795.50 |
| Brian J. D'Amico | CORP | 2005 | $685.00 | 15.50 | $10,617.50 |
| Gemma Bullmore | LIT | 2005 | $770.00 | 175.00 | $134,557.50 |
| Gemma Bullmore | LIT | 2005 | $695.00 | 403.80 | $280,224.00 |
| Helen Mungeam | TAX | 2005 | $800.00 | 9.00 | $7,200.00 |
| Hyun K. Kim | CORP | 2005 | $720.00 | 59.90 | $43,128.00 |
| Hyun K. Kim | CORP | 2005 | $630.00 | 287.30 | $180,999.00 |

\* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
\*\* – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Hyun Kang Kim | CORP | 2005 | $495.00 | 10.50 | $5,197.50 |
| Hyun Kang Kim | CORP | 2005 | $395.00 | 118.00 | $46,610.00 |
| Jaime S. Kaplan | LIT | 2005 | $685.00 | 35.60 | $24,386.00 |
| Jaime S. Kaplan | LIT | 2005 | $595.00 | 93.20 | $55,454.00 |
| Julie A. Markum | CORP | 2005 | $685.00 | 97.00 | $66,445.00 |
| Julie A. Markum | CORP | 2005 | $595.00 | 179.50 | $106,802.50 |
| Kevin F. Meade | LIT | 2005 | $720.00 | 48.40 | $34,848.00 |
| Kevin F. Meade | LIT | 2005 | $630.00 | 378.10 | $238,203.00 |
| Kirsten A. Noethen | CORP | 2005 | $720.00 | 43.50 | $31,320.00 |
| Kirsten A. Noethen | CORP | 2005 | $630.00 | 211.40 | $130,756.50 |
| Mark I. Bernstein | BFR | 2005 | $720.00 | 262.80 | $189,216.00 |
| Mark I. Bernstein | BFR | 2005 | $630.00 | 544.50 | $343,035.00 |
| Pejman Razavilar | CORP | 2005 | $740.00 | 55.10 | $40,774.00 |
| Pejman Razavilar | CORP | 2005 | $665.00 | 200.10 | $133,066.50 |
| Robert C. Roesch | LIT | 2005 | $685.00 | 39.50 | $27,057.50 |
| Robert C. Roesch | LIT | 2005 | $595.00 | 91.40 | $54,383.00 |
| Samuel J. Comer | CORP | 2005 | $720.00 | 90.40 | $65,088.00 |
| Samuel J. Comer | CORP | 2005 | $630.00 | 253.20 | $159,516.00 |
| Wilfried Krauss | TAX | 2005 | $400.00 | 8.00 | $3,200.00 |
| Benay H. Lizarazu | CORP | 2006 | $750.00 | 130.20 | $97,650.00 |
| Benay H. Lizarazu | CORP | 2006 | $695.00 | 118.10 | $82,079.50 |
| Benton B. Bodamer | CORP | 2006 | $645.00 | 11.60 | $7,482.00 |
| Benton B. Bodamer | CORP | 2006 | $550.00 | 29.90 | $16,445.00 |
| Bryant S. York | LIT | 2006 | $685.00 | 26.00 | $17,810.00 |
| Bryant S. York | LIT | 2006 | $595.00 | 303.90 | $179,481.75 |
| Damon P. Meyer | BFR | 2006 | $685.00 | 29.80 | $20,413.00 |
| Damon P. Meyer | BFR | 2006 | $595.00 | 104.40 | $61,493.25 |
| Diana H. Widjaya | LIT | 2006 | $550.00 | 19.90 | $10,945.00 |
| Emily L. Gold | CORP | 2006 | $685.00 | 70.10 | $48,018.50 |
| Emily L. Gold | CORP | 2006 | $595.00 | 103.00 | $61,285.00 |
| Lauren Hoelzer | LIT | 2006 | $645.00 | 111.10 | $71,659.50 |
| Lauren Hoelzer | LIT | 2006 | $550.00 | 157.60 | $86,680.00 |
| Marcie R. Kaufman | LIT | 2006 | $595.00 | 37.20 | $22,134.00 |
| Mark Schwed | TAX | 2006 | $630.00 | 21.90 | $13,797.00 |

\* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
\*\* – N/A: UK Trainee Associate

| Naomi Munz | CORP | 2006 | $750.00 | 17.00 | $12,750.00 |
|---|---|---|---|---|---|
| Naomi Munz | CORP | 2006 | $695.00 | 22.00 | $15,290.00 |
| Ricardo P. Pellafone | LIT | 2006 | $550.00 | 9.20 | $5,060.00 |
| Tomasz Kulawik | CORP | 2006 | $560.00 | 17.60 | $9,856.00 |
| Tomasz Kulawik | CORP | 2006 | $455.00 | 91.60 | $41,678.00 |
| Adam B. Rosenblum | CORP | 2007 | $600.00 | 7.50 | $4,500.00 |
| Amanjit Arora | BFR | 2007 | $645.00 | 181.80 | $117,261.00 |
| Amanjit Arora | BFR | 2007 | $550.00 | 447.80 | $245,905.00 |
| Andrew R. Fox | LIT | 2007 | $665.00 | 6.80 | $4,522.00 |
| Andrew R. Fox | LIT | 2007 | $575.00 | 154.70 | $88,952.50 |
| Ariane Newell | LIT | 2007 | $600.00 | 25.40 | $15,240.00 |
| Ariane Newell | LIT | 2007 | $515.00 | 82.70 | $42,590.50 |
| Brant D. Kuehn | LIT | 2007 | $550.00 | 10.00 | $5,500.00 |
| Cassie Waduge | CORP | 2007 | $600.00 | 53.30 | $31,980.00 |
| Cassie Waduge | CORP | 2007 | $515.00 | 94.60 | $48,719.00 |
| Christina Maurer | CORP | 2007 | $435.00 | 12.00 | $5,220.00 |
| Christine Doktor | LIT | 2007 | $600.00 | 158.40 | $95,040.00 |
| Christine Doktor | LIT | 2007 | $515.00 | 396.70 | $204,300.50 |
| Eberhard Koch | LIT | 2007 | $400.00 | 60.70 | $24,280.00 |
| Evert J. Christensen | LIT | 2007 | $600.00 | 7.60 | $4,560.00 |
| Evert J. Christensen | LIT | 2007 | $515.00 | 109.30 | $56,289.50 |
| John T. O'Connor | LIT | 2007 | $600.00 | 106.80 | $55,920.00 |
| John T. O'Connor | LIT | 2007 | $515.00 | 215.90 | $111,188.50 |
| Joshua Pohl | TAX | 2007 | $550.00 | 9.20 | $5,060.00 |
| Lara Kuehl | LIT | 2007 | $665.00 | 7.00 | $4,655.00 |
| Lara Kuehl | LIT | 2007 | $575.00 | 323.40 | $183,396.25 |
| Marc Weinroth | LIT | 2007 | $600.00 | 32.60 | $19,560.00 |
| Marc Weinroth | LIT | 2007 | $515.00 | 37.90 | $19,518.50 |
| Mark B. Rosen | LIT | 2007 | $515.00 | 17.30 | $8,909.50 |
| Ramon E. Mercedes | CORP | 2007 | $600.00 | 11.00 | $6,600.00 |
| Ramon E. Mercedes | CORP | 2007 | $515.00 | 44.60 | $22,969.00 |
| Sarah M. Decker | LIT | 2007 | $645.00 | 115.30 | $74,368.50 |
| Sarah M. Decker | LIT | 2007 | $550.00 | 313.30 | $172,315.00 |
| Sunny Singh | BFR | 2007 | $645.00 | 227.20 | $145,899.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| Name | Dept | Year | Rate | Hours | Amount |
|---|---|---|---|---|---|
| Sunny Singh | BFR | 2007 | $550.00 | 546.80 | $299,392.50 |
| Teresa Brady | LIT | 2007 | $645.00 | 82.30 | $53,083.50 |
| Teresa Brady | LIT | 2007 | $550.00 | 463.20 | $254,760.00 |
| Allison M. Warner | LIT | 2008 | $720.00 | 15.90 | $11,448.00 |
| Allison M. Warner | LIT | 2008 | $630.00 | 60.00 | $37,800.00 |
| Amanda M. Hendy | BFR | 2008 | $560.00 | 129.10 | $72,296.00 |
| Amanda M. Hendy | BFR | 2008 | $455.00 | 421.40 | $191,737.00 |
| Aude Rousseau | CORP | 2008 | $470.00 | 16.20 | $7,614.00 |
| Brandon E. Cherry | CORP | 2008 | $550.00 | 17.10 | $9,405.00 |
| Brennan Hackett | BFR | 2008 | $600.00 | 146.20 | $87,720.00 |
| Brennan Hackett | BFR | 2008 | $515.00 | 342.40 | $175,898.25 |
| Brian P. Maher | CORP | 2008 | $640.00 | 15.40 | $9,856.00 |
| Casey A. Burton | LIT | 2008 | $560.00 | 37.00 | $20,720.00 |
| Casey A. Burton | LIT | 2008 | $455.00 | 153.20 | $69,706.00 |
| Cristina Iliescu | CORP | 2008 | $365.00 | 28.20 | $10,293.00 |
| Elizabeth R. Todd | CORP | 2008 | $590.00 | 10.40 | $6,136.00 |
| Elizabeth R. Todd | CORP | 2008 | $510.00 | 41.60 | $21,216.00 |
| Emily L. Katz | LIT | 2008 | $600.00 | 17.60 | $10,560.00 |
| Emily L. Katz | LIT | 2008 | $515.00 | 75.30 | $38,779.50 |
| Eoghan P. Keenan | CORP | 2008 | $600.00 | 22.90 | $13,740.00 |
| Eoghan P. Keenan | CORP | 2008 | $515.00 | 11.90 | $6,128.50 |
| Frank Martire | CORP | 2008 | $515.00 | 16.00 | $8,240.00 |
| Jakub Biernacki | CORP | 2008 | $515.00 | 42.80 | $22,042.00 |
| Jennifer D. Larson | LIT | 2008 | $560.00 | 109.00 | $60,816.00 |
| Jennifer D. Larson | LIT | 2008 | $455.00 | 416.50 | $189,416.50 |
| Joseph Abadi | CORP | 2008 | $515.00 | 26.00 | $13,390.00 |
| June K. Lee | LIT | 2008 | $600.00 | 106.50 | $63,900.00 |
| June K. Lee | LIT | 2008 | $515.00 | 204.50 | $105,317.50 |
| Kate McGovern | LIT | 2008 | $290.00 | 81.80 | $23,722.00 |
| Kate McGovern | LIT | 2008 | $250.00 | 360.50 | $90,125.00 |
| Kathy A. Le | CORP | 2008 | $645.00 | 15.20 | $9,804.00 |
| Kimberleigh Scott | CORP | 2008 | $510.00 | 16.20 | $8,262.00 |
| Kristen L. Depowski | CORP | 2008 | $560.00 | 7.20 | $4,032.00 |
| Kristen L. Depowski | CORP | 2008 | $455.00 | 142.70 | $64,928.50 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Lauren L. Zerbinopoulos | LIT | 2008 | $560.00 | 146.70 | $82,152.00 |
| Lauren L. Zerbinopoulos | LIT | 2008 | $455.00 | 377.80 | $171,899.00 |
| Layne S.R. Behrens | LIT | 2008 | $515.00 | 31.90 | $16,428.50 |
| Marisa A. Sotomayor | CORP | 2008 | $600.00 | 7.50 | $4,500.00 |
| Maurice Horwitz | BFR | 2008 | $600.00 | 246.00 | $147,510.00 |
| Maurice Horwitz | BFR | 2008 | $515.00 | 390.10 | $200,412.25 |
| Melissa Colon-Bosolet | LIT | 2008 | $600.00 | 78.50 | $47,100.00 |
| Melissa Colon-Bosolet | LIT | 2008 | $515.00 | 122.30 | $62,984.50 |
| Nichole Hines | LIT | 2008 | $515.00 | 9.20 | $4,738.00 |
| Qiong Sun | CORP | 2008 | $550.00 | 96.40 | $53,020.00 |
| Richard R. Cook | LIT | 2008 | $600.00 | 15.80 | $9,480.00 |
| Richard R. Cook | LIT | 2008 | $515.00 | 28.40 | $14,626.00 |
| Stacey M. Mayer | LIT | 2008 | $560.00 | 32.30 | $18,088.00 |
| Stacey M. Mayer | LIT | 2008 | $455.00 | 100.40 | $45,682.00 |
| Sujan H. Trivedi | LIT | 2008 | $645.00 | 111.00 | $71,595.00 |
| Sujan H. Trivedi | LIT | 2008 | $550.00 | 318.70 | $175,285.00 |
| Sunny J. Thompson | LIT | 2008 | $560.00 | 58.90 | $32,984.00 |
| Sunny J. Thompson | LIT | 2008 | $455.00 | 128.10 | $58,285.50 |
| Susan Fiore | CORP | 2008 | $515.00 | 126.60 | $65,199.00 |
| Vigdis Bronder | CORP | 2008 | $515.00 | 7.60 | $3,914.00 |
| Xiaofeng S. Da | CORP | 2008 | $455.00 | 22.60 | $10,283.00 |
| Adam B. Banks | LIT | 2009 | $560.00 | 29.40 | $16,464.00 |
| Adam B. Banks | LIT | 2009 | $455.00 | 104.10 | $47,365.50 |
| Adam J. Feit | CORP | 2009 | $455.00 | 7.00 | $3,185.00 |
| Alexander R. Liroff | CORP | 2009 | $495.00 | 143.10 | $70,834.50 |
| Alexander R. Liroff | CORP | 2009 | $395.00 | 344.80 | $136,196.00 |
| Alicia F. Castro | LIT | 2009 | $495.00 | 49.20 | $24,354.00 |
| Alicia F. Castro | LIT | 2009 | $395.00 | 178.80 | $70,626.00 |
| Allen T. Yancy | LIT | 2009 | $645.00 | 159.10 | $102,619.50 |
| Allen T. Yancy | LIT | 2009 | $550.00 | 440.10 | $236,555.00 |
| Anne K. Castellani | LIT | 2009 | $455.00 | 93.50 | $42,542.50 |
| Bambo Obaro | LIT | 2009 | $495.00 | 15.90 | $7,870.50 |
| Bambo Obaro | LIT | 2009 | $395.00 | 77.70 | $30,691.50 |
| Brian C. Drozda | CORP | 2009 | $560.00 | 39.90 | $22,344.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Brian C. Drozda | CORP | 2009 | $455.00 | 61.30 | $27,891.50 |
| Cariza D. Arnedo | LIT | 2009 | $430.00 | 6.70 | $2,881.00 |
| Caroline K. Simons | LIT | 2009 | $560.00 | 98.80 | $55,328.00 |
| Caroline K. Simons | LIT | 2009 | $455.00 | 207.30 | $94,321.50 |
| Cassie Kimmelman | CORP | 2009 | $455.00 | 5.70 | $2,593.50 |
| Christopher G. Bradley | LIT | 2009 | $495.00 | 46.20 | $22,869.00 |
| Christopher T. Luise | LIT | 2009 | $560.00 | 37.50 | $21,000.00 |
| Christopher T. Luise | LIT | 2009 | $455.00 | 125.10 | $56,920.50 |
| Cynthia A. Marian | TAX | 2009 | $455.00 | 14.10 | $6,415.50 |
| Daniel S. Klein | LIT | 2009 | $515.00 | 60.80 | $31,312.00 |
| Darlyn P. Heckman | CORP | 2009 | $495.00 | 11.20 | $5,544.00 |
| David A. Cohen | CORP | 2009 | $560.00 | 8.20 | $4,592.00 |
| David A. Cohen | CORP | 2009 | $455.00 | 145.40 | $66,157.00 |
| David P. Byeff | LIT | 2009 | $455.00 | 25.10 | $11,420.50 |
| Dionne Cutting | CORP | 2009 | $600.00 | 17.70 | $10,620.00 |
| Eileen Hren | LIT | 2009 | $495.00 | 106.30 | $50,737.50 |
| Eileen Hren | LIT | 2009 | $395.00 | 253.10 | $97,229.25 |
| Elizabeth M. Velez | LIT | 2009 | $495.00 | 8.00 | $3,960.00 |
| Elizabeth M. Velez | LIT | 2009 | $395.00 | 47.20 | $18,644.00 |
| Eric Kasenetz | BFR | 2009 | $495.00 | 107.40 | $53,163.00 |
| Eric Kasenetz | BFR | 2009 | $395.00 | 400.00 | $158,000.00 |
| Erica Rutner | LIT | 2009 | $395.00 | 311.80 | $123,161.00 |
| Erin Craddock | LIT | 2009 | $560.00 | 14.40 | $8,064.00 |
| Erin Craddock | LIT | 2009 | $455.00 | 17.90 | $8,144.50 |
| Jannelle M. Seales | CORP | 2009 | $600.00 | 10.20 | $6,120.00 |
| Jannelle M. Seales | CORP | 2009 | $515.00 | 22.60 | $11,639.00 |
| Jennifer Cheng | CORP | 2009 | $600.00 | 6.00 | $3,600.00 |
| Jennifer M. Nelsen | LIT | 2009 | $600.00 | 152.80 | $91,680.00 |
| Jennifer M. Nelsen | LIT | 2009 | $515.00 | 201.50 | $103,772.50 |
| Kavita Christina Desai | LIT | 2009 | $560.00 | 55.90 | $31,304.00 |
| Kavita Christina Desai | LIT | 2009 | $455.00 | 226.00 | $102,830.00 |
| Kristen M. Echemendia | LIT | 2009 | $560.00 | 27.70 | $15,512.00 |
| Kristen M. Echemendia | LIT | 2009 | $455.00 | 103.00 | $46,865.00 |
| Lee J. Goldberg | BFR | 2009 | $560.00 | 111.50 | $62,440.00 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| Lee J. Goldberg | BFR | 2009 | $455.00 | 315.90 | $143,734.50 |
|---|---|---|---|---|---|
| Luis Mariano Soto Gajardo | CORP | 2009 | $575.00 | 50.00 | $28,750.00 |
| Matthew Baudler | LIT | 2009 | $455.00 | 26.50 | $12,057.50 |
| Matthew Howatt | LIT | 2009 | $455.00 | 18.40 | $8,372.00 |
| Matthew M. Spritz | LIT | 2009 | $455.00 | 31.90 | $14,514.50 |
| Melanie Conroy | LIT | 2009 | $455.00 | 12.50 | $5,687.50 |
| Michael Bell | LIT | 2009 | $515.00 | 11.50 | $5,922.50 |
| Nadya Salcedo | LIT | 2009 | $560.00 | 32.70 | $18,312.00 |
| Nadya Salcedo | LIT | 2009 | $455.00 | 214.60 | $97,643.00 |
| Patricia Astorga | LIT | 2009 | $560.00 | 19.70 | $11,032.00 |
| Patricia Astorga | LIT | 2009 | $455.00 | 82.80 | $37,674.00 |
| Peter J. Ibrahim | BFR | 2009 | $455.00 | 29.80 | $13,559.00 |
| Peter J. McRae | CORP | 2009 | $455.00 | 9.10 | $4,140.50 |
| R. Todd Hatcher | TAX | 2009 | $455.00 | 24.10 | $10,965.50 |
| Robert V. Spake | LIT | 2009 | $455.00 | 37.10 | $16,880.50 |
| Sandra Y. Fusco | LIT | 2009 | $395.00 | 20.60 | $8,137.00 |
| Scott M. Litvinoff | LIT | 2009 | $560.00 | 32.00 | $17,920.00 |
| Scott M. Litvinoff | LIT | 2009 | $455.00 | 150.80 | $68,614.00 |
| Tanya Forde-Chandler | CORP | 2009 | $560.00 | 12.40 | $6,944.00 |
| Tanya Forde-Chandler | CORP | 2009 | $455.00 | 5.10 | $2,320.50 |
| Tashanna B. Pearson | LIT | 2009 | $560.00 | 6.50 | $3,640.00 |
| Tashanna B. Pearson | LIT | 2009 | $455.00 | 74.90 | $34,079.50 |
| Tracy K. Bookspan | CORP | 2009 | $560.00 | 17.00 | $9,520.00 |
| Tracy K. Bookspan | CORP | 2009 | $455.00 | 84.70 | $38,538.50 |
| U-Hyeon Kwon | CORP | 2009 | $550.00 | 32.00 | $17,600.00 |
| Victoria Neave | LIT | 2009 | $430.00 | 15.60 | $6,708.00 |
| William J. Carter | CORP | 2009 | $530.00 | 44.70 | $23,691.00 |
| William J. Carter | CORP | 2009 | $455.00 | 327.80 | $149,149.00 |
| Zaw Win | BFR | 2009 | $560.00 | 116.20 | $65,072.00 |
| Zaw Win | BFR | 2009 | $455.00 | 594.60 | $270,019.75 |
| Zohar R. Levy | LIT | 2009 | $455.00 | 301.40 | $137,137.00 |
| Zohar R. Levy | LIT | 2009 | $227.50 | 6.90 | $1,569.75 |
| Abeer Garousha | BFR | 2010 | $470.00 | 53.00 | $24,910.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| Abeer Garousha | BFR | 2010 | $455.00 | 83.10 | $37,810.50 |
|---|---|---|---|---|---|
| Ajit Gokhale | TAX | 2010 | $560.00 | 76.00 | $42,560.00 |
| Ajit Gokhale | TAX | 2010 | $455.00 | 55.10 | $25,070.50 |
| Andrea Y. Loh | LIT | 2010 | $395.00 | 111.00 | $43,845.00 |
| Brett A. Bush | CORP | 2010 | $455.00 | 16.30 | $7,416.50 |
| Candace Arthur | BFR | 2010 | $495.00 | 70.00 | $34,650.00 |
| Candace Arthur | BFR | 2010 | $395.00 | 383.10 | $151,324.50 |
| Catherine Gurney | LIT | 2010 | $470.00 | 16.90 | $7,943.00 |
| Catherine Gurney | LIT | 2010 | $290.00 | 163.30 | $47,357.00 |
| Chelsea Rosen | BFR | 2010 | $395.00 | 28.10 | $11,099.50 |
| Christina M. Trapani | LIT | 2010 | $430.00 | 33.50 | $14,405.00 |
| Christopher Gismondi | LIT | 2010 | $395.00 | 23.60 | $9,322.00 |
| Devin Cain | LIT | 2010 | $430.00 | 8.30 | $3,569.00 |
| Elana R. Pollak | LIT | 2010 | $560.00 | 158.90 | $88,984.00 |
| Elana R. Pollak | LIT | 2010 | $455.00 | 510.70 | $232,368.50 |
| Emily Wapples | CORP | 2010 | $470.00 | 92.00 | $43,240.00 |
| Emily Wapples | CORP | 2010 | $290.00 | 154.30 | $44,747.00 |
| Erik Encarnacion | LIT | 2010 | $550.00 | 95.50 | $52,525.00 |
| Erika del Nido | BFR | 2010 | $495.00 | 121.90 | $60,340.50 |
| Erika del Nido | BFR | 2010 | $395.00 | 408.60 | $161,397.00 |
| Jessica Costa | LIT | 2010 | $495.00 | 31.20 | $15,444.00 |
| Jessica Costa | LIT | 2010 | $395.00 | 215.60 | $85,162.00 |
| Julian Chatterton | LIT | 2010 | $470.00 | 7.60 | $3,572.00 |
| Justin C. Lee | CORP | 2010 | $495.00 | 6.10 | $3,019.50 |
| Justin C. Lee | CORP | 2010 | $395.00 | 35.10 | $13,864.50 |
| Justin D. Yi | CORP | 2010 | $395.00 | 28.80 | $11,376.00 |
| Neil H. Vaishnav | LIT | 2010 | $395.00 | 19.80 | $7,821.00 |
| Olivia Miller | LIT | 2010 | $430.00 | 13.40 | $5,762.00 |
| Peter J. Kee | LIT | 2010 | $395.00 | 235.90 | $93,180.50 |
| Robyn Lewis | LIT | 2010 | $430.00 | 9.20 | $3,956.00 |
| Sam Limmer | CORP | 2010 | $495.00 | 27.30 | $13,513.50 |
| Sam Limmer | CORP | 2010 | $395.00 | 246.50 | $97,367.50 |
| Shrutee Raina | LIT | 2010 | $495.00 | 18.50 | $9,157.50 |
| Shrutee Raina | LIT | 2010 | $395.00 | 54.30 | $21,448.50 |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| | | | | | |
|---|---|---|---|---|---|
| Tracy Burgess | CORP | 2010 | $395.00 | 52.80 | $20,856.00 |
| Daniel Ferguson | CORP | 2011 | $180.00 | 18.40 | $3,312.00 |
| Emily O'Hern | LIT | 2011 | $395.00 | 12.50 | $4,937.50 |
| Luwisha Neskovic | LIT | 2011 | $250.00 | 17.20 | $4,300.00 |
| Elena Fialho | CORP | * | $250.00 | 18.10 | $4,525.00 |
| Emma Robinson | CORP | * | $255.00 | 56.90 | $14,509.50 |
| Emma Robinson | CORP | * | $250.00 | 282.70 | $70,675.00 |
| Hayley Lund | BFR | * | $255.00 | 21.30 | $5,431.50 |
| Hayley Lund | BFR | * | $250.00 | 175.10 | $43,650.00 |
| Helen Jones | CORP | * | $295.00 | 9.30 | $2,743.50 |
| Helen Jones | CORP | * | $250.00 | 92.30 | $22,700.00 |
| James Crook | CORP | * | $295.00 | 10.80 | $3,186.00 |
| James Crook | CORP | * | $250.00 | 61.30 | $15,325.00 |
| Oliver Prakash-Jenkins | LIT | * | $255.00 | 82.70 | $20,769.75 |
| Oliver Prakash-Jenkins | LIT | * | $250.00 | 238.30 | $57,237.50 |
| Sandy Wirtz | CORP | * | $180.00 | 9.90 | $1,782.00 |
| Seunghi Ha | LIT | * | $255.00 | 28.30 | $7,216.50 |
| Seunghi Ha | LIT | * | $250.00 | 189.80 | $47,137.50 |
| **Total** | | | | **39,906.10** | **$21,585,967.75** |

* BFR – Business Finance & Restructuring,  CORP  – Corporate,  LIT – Litigation
** – N/A: UK Trainee Associate

| NAME OF PROFESSIONAL<br><br>Paralegals,<br>Clerks, Library Staff and<br>Other<br>Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Kathleen Lee | BFR | $310.00 | 10.00 | $3,100.00 |
| Kathleen Lee | BFR | $275.00 | 20.60 | $5,665.00 |
| Christopher A. Stauble | BFR | $290.00 | 154.90 | $44,921.00 |
| Christopher A. Stauble | BFR | $275.00 | 662.60 | $182,215.00 |
| Suzanne Inglis | LIT | $290.00 | 27.20 | $7,888.00 |
| Suzanne Inglis | LIT | $275.00 | 143.90 | $39,572.50 |
| Christine Shrestha | CORP | $275.00 | 5.60 | $1,540.00 |
| Sarah B. Roberts | BFR | $265.00 | 16.40 | $4,346.00 |
| Sarah B. Roberts | BFR | $230.00 | 92.60 | $21,298.00 |
| Odalys C. Smith | LIT | $265.00 | 37.80 | $10,017.00 |
| Odalys C. Smith | LIT | $225.00 | 173.90 | $39,127.50 |
| Nancy P. Cade | LIT | $265.00 | 40.30 | $10,679.50 |
| Nancy P. Cade | LIT | $250.00 | 70.90 | $17,725.00 |
| Lori A. Seavey | BFR | $265.00 | 38.10 | $10,096.50 |
| Lori A. Seavey | BFR | $225.00 | 101.10 | $22,747.50 |
| Leason Hoilett | LIT | $260.00 | 6.70 | $1,742.00 |
| John A. Ellsworth | CORP | $265.00 | 32.30 | $8,559.50 |
| John A. Ellsworth | CORP | $260.00 | 40.00 | $10,400.00 |
| Crystal McCray | LIT | $265.00 | 58.80 | $15,582.00 |
| Crystal McCray | LIT | $240.00 | 220.80 | $52,992.00 |
| Barbara Frayle | CORP | $265.00 | 111.50 | $29,547.50 |
| Barbara Frayle | CORP | $240.00 | 156.90 | $37,656.00 |
| Yvonne Washington | LIT | $260.00 | 8.60 | $2,236.00 |
| Jorge Martorell | LSS | $260.00 | 60.00 | $15,600.00 |
| Jeffrie Hausman | LIT | $260.00 | 18.80 | $4,888.00 |
| William H. Gordon | LIT | $215.00 | 63.10 | $13,566.50 |
| Tashan Q. Reid | CORP | $215.00 | 17.00 | $3,655.00 |
| Jeremy A. Sykes | LIT | $225.00 | 22.70 | $5,107.50 |
| Herbert Chan | LIT | $250.00 | 116.70 | $29,175.00 |
| Daniel Decker | LIT | $250.00 | 72.10 | $18,025.00 |

| NAME OF PROFESSIONAL Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Daniel Decker | LIT | $225.00 | 221.10 | $49,747.50 |
| Herbert Chan | LIT | $215.00 | 370.50 | $79,657.50 |
| Christine Guthrie | CORP | $250.00 | 18.00 | $4,500.00 |
| Camille A. George | LIT | $250.00 | 91.70 | $22,925.00 |
| Camille A. George | LIT | $240.00 | 362.60 | $87,024.00 |
| Bill K. Chan | CORP | $200.00 | 21.60 | $4,320.00 |
| Laura Jewett | LSS | $235.00 | 6.40 | $1,504.00 |
| Kristine Yoda | LSS | $235.00 | 17.50 | $4,112.50 |
| Cory M. Reynolds | LSS | $235.00 | 10.20 | $2,397.00 |
| Cheryl Eng-Bendel | LSS | $235.00 | 32.30 | $7,590.50 |
| Yovanka Malkovich | LIT | $230.00 | 16.80 | $3,864.00 |
| Yovanka Malkovich | LIT | $215.00 | 137.80 | $29,627.00 |
| Rene A. Olvera | BFR | $200.00 | 6.10 | $1,220.00 |
| Elizabeth E. Melson | LIT | $230.00 | 33.30 | $7,659.00 |
| Elizabeth E. Melson | LIT | $225.00 | 19.10 | $4,297.50 |
| Ann M. Scarpa | LIT | $230.00 | 60.00 | $13,800.00 |
| Ann M. Scarpa | LIT | $200.00 | 127.20 | $25,440.00 |
| Toby T. Saviano | LIT | $225.00 | 15.20 | $3,420.00 |
| Karen M. Roche | LIT | $225.00 | 17.90 | $4,027.50 |
| Thai Dang | LSS | $220.00 | 13.20 | $2,904.00 |
| Shelley J. Fortune | LIT | $200.00 | 12.10 | $2,420.00 |
| Lara Calabrese | LSS | $210.00 | 26.80 | $5,628.00 |
| Justin Benjamin | LSS | $190.00 | 14.60 | $2,774.00 |
| Julie B. Mukendi | LIT | $220.00 | 56.10 | $12,342.00 |
| Julie B. Mukendi | LIT | $200.00 | 58.10 | $11,620.00 |
| Victoria A. Bennett | LIT | $215.00 | 43.40 | $9,331.00 |
| Scott Larangeira | LSS | $215.00 | 43.40 | $9,331.00 |
| Michael Quarry | LSS | $215.00 | 22.60 | $4,859.00 |
| George Scopas | LSS | $215.00 | 20.70 | $4,450.50 |
| Doe Y. Oh | CORP | $215.00 | 5.40 | $1,161.00 |
| Artur Robin | LSS | $215.00 | 53.90 | $11,588.50 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC –  Managing Clerk,  LSS – Litigation Support Services,  LIB – Library

| NAME OF PROFESSIONAL<br>Paralegals,<br>Clerks, Library Staff and<br>Other<br>Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Robert Condon | LIT | $210.00 | 111.60 | $23,394.00 |
| Robert Condon | LIT | $185.00 | 440.50 | $81,492.50 |
| Nicole K. Aliseo | BFR | $210.00 | 151.20 | $31,752.00 |
| Merlyn Aaron-Betton | LIT | $210.00 | 6.00 | $1,260.00 |
| Martina Boehmfeldt | CORP | $210.00 | 7.50 | $1,575.00 |
| Susana I. Lagasse | LIT | $200.00 | 18.70 | $3,740.00 |
| Sabrina M. Ialuna | LIT | $200.00 | 16.40 | $3,280.00 |
| Sabrina M. Ialuna | LIT | $180.00 | 26.30 | $4,734.00 |
| Rachel Shapiro | BFR | $200.00 | 23.90 | $4,780.00 |
| Rachel Shapiro | BFR | $160.00 | 169.20 | $27,072.00 |
| Pilar Villa | LIT | $200.00 | 5.10 | $1,020.00 |
| Michael P. Welby | LSS | $185.00 | 13.20 | $2,442.00 |
| Melissa J. Friedman | LIT | $200.00 | 22.00 | $4,400.00 |
| Melissa J. Friedman | LIT | $160.00 | 17.00 | $2,720.00 |
| Matthew Schoenfeld | BFR | $200.00 | 176.90 | $35,380.00 |
| Matthew Schoenfeld | BFR | $160.00 | 490.30 | $78,448.00 |
| Mark Ribaudo | MC | $170.00 | 10.30 | $1,751.00 |
| Lougran Potter | LIT | $200.00 | 6.10 | $1,220.00 |
| Duke Amponsah | BFR | $200.00 | 10.80 | $1,600.00 |
| Donald Etienne | BFR | $200.00 | 62.10 | $11,580.00 |
| Donald Etienne | BFR | $180.00 | 253.00 | $42,768.00 |
| Anupama Chettri | LIT | $200.00 | 7.10 | $1,420.00 |
| Andrea Wilmer | BFR | $200.00 | 7.00 | $1,400.00 |
| Andrea Wilmer | BFR | $90.00 | 6.00 | $540.00 |
| Sadys Rodrigo Espitia | LIB | $195.00 | 5.60 | $1,092.00 |
| Philip Barahona | LIB | $195.00 | 8.70 | $1,696.50 |
| Merill Losick | LIB | $195.00 | 9.00 | $1,755.00 |
| Daniel F. McLaughlin | LIB | $195.00 | 14.80 | $2,886.00 |
| Joseph Hsu | LIT | $190.00 | 7.30 | $1,387.00 |
| Nicole Swaney | LIT | $180.00 | 16.40 | $2,952.00 |
| Trisha Pande | LIT | $175.00 | 25.20 | $4,410.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC – Managing Clerk, LSS – Litigation Support Services,  LIB – Library

US_ACTIVE:\43645793\09\58399.0003

| NAME OF PROFESSIONAL<br>Paralegals,<br>Clerks, Library Staff and Other<br>Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Trisha Pande | LIT | $160.00 | 35.00 | $5,600.00 |
| Sherri Bell | LIT | $175.00 | 5.70 | $997.50 |
| Sherri Bell | LIT | $160.00 | 48.50 | $7,760.00 |
| Priya K. Ghodasara | BFR | $175.00 | 9.80 | $1,715.00 |
| Priya K. Ghodasara | BFR | $160.00 | 51.60 | $8,256.00 |
| Jacob A. Grover | CORP | $175.00 | 29.00 | $4,943.75 |
| Danielle Z. Sawaya | CORP | $175.00 | 20.80 | $3,640.00 |
| Danielle Z. Sawaya | CORP | $160.00 | 38.30 | $6,128.00 |
| Andrew H. Lyon | BFR | $175.00 | 77.40 | $13,545.00 |
| Andrew H. Lyon | BFR | $160.00 | 264.60 | $42,256.00 |
| R.T. Winston Berkman | CORP | $160.00 | 67.60 | $10,744.00 |
| Katrina L. Neiley | LIT | $160.00 | 19.90 | $3,184.00 |
| John Badman | CORP | $160.00 | 14.70 | $2,243.25 |
| Deidra M. Mulligan | LIB | $140.00 | 12.90 | $1,806.00 |
| Luis Cruz | LIB | $135.00 | 6.30 | $850.50 |
| Elio Bettini | LIB | $125.00 | 6.10 | $762.50 |
| Brenda Pancham | LIB | $100.00 | 10.00 | $1,000.00 |
| Maximiliano Greco | LIB | $85.00 | 16.80 | $1,428.00 |
| Total: | | | 7,437.70 | $1,608,019.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  MC – Managing Clerk,  LSS – Litigation Support Services,  LIB – Library

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $866.16 | 15,588.90 | $13,814,271.75 |
| Associates | $540.92 | 39,906.10 | $21,585,967.75 |
| Paraprofessionals | $216.20 | 7,437.70 | $1,608,019.00 |
| **Blended Attorney Rate** | **$637.90** | | |
| **Total Fees Incurred** | | 62,932.70 | $37,008,258.50 |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                              :

**In re**                              :        **Chapter 11 Case No.**
                                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :        **08-13555 (JMP)**
                                              :

                    **Debtors.**        :        **(Jointly Administered)**
                                              :
-----------------------------------------------------------------x

**SEVENTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Weil, Gotshal & Manges LLP ("Weil"), attorneys for Lehman Brothers Holdings

Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together with LBHI, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), for its seventh application, pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the interim allowance of compensation for professional

services performed by Weil for the period commencing October 1, 2010, through and including

January 31, 2011 (the "Seventh Compensation Period"), and for reimbursement of its actual and

necessary expenses incurred during the Seventh Compensation Period, respectfully represents:

**PRELIMINARY STATEMENT**

1.      Weil's services during the Seventh Compensation Period substantially

advanced the administration of the Debtors' chapter 11 cases, yielded major recoveries for the

Debtors' estates, preserved the value of some of the Debtors' largest remaining assets, and

meaningfully reduced the number and aggregate value of claims asserted in these cases.  For

example:

- Weil formulated with the Debtors and drafted the Debtors' first amended joint chapter 11 plan [Docket No. 14150] (the "Amended Plan") and related disclosure statement [Docket No. 14151] (the "Disclosure Statement").  The products of hours of research, drafting, investigation and counseling by Weil marked significant milestones in these cases.

- Weil recovered approximately $268 million for the Debtors' estates and creditors through negotiated settlements with 24 counterparties in separate alternative dispute resolution ("ADR") proceedings, pursuant to an order Weil obtained approving ADR procedures for the Debtors' affirmative claims under their more than 10,000 derivative contracts (the "Derivative Contracts").  Through the Seventh Compensation Period, Weil's services brought in more than $560 million for the Debtors' estates through negotiated settlements with 68 counterparties in ADR matters.

- Weil successfully defended an appeal to the United States District Court for the Southern District of New York (the "District Court") of the Bankruptcy Court's order granting the Debtors' motion to enforce the automatic stay and directing Swedbank AB (publ.) ("Swedbank") to turnover approximately 82 million Swedish Krona (the "Swedbank Decision").  The Bankruptcy Court and District Court decisions are of great importance to the Debtors because the contractual provisions at issue appear in many of the Debtor's Derivative Contracts and many counterparties have taken positions that were rejected by the Bankruptcy Court and District Court.

- Weil advised and represented the Debtors in negotiations with the foreign administrators of the approximately 80 foreign affiliates that have become the subject of a foreign liquidation or rehabilitation proceeding.  The negotiations concern global issues, such as the terms of the Amended Plan, the reconciliation of hundreds of billions of dollars of claims among the parties, ownership of assets, potential litigation and other matters.  Significantly, Weil aided the Debtors in connection with their entry into a global settlement with their German affiliate, Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. ("Bankhaus"), a portion of which was approved by the Bankruptcy Court in March 2011.

- Weil's multi-disciplinary real estate team continued to devote substantial resources to preserving, restructuring, and disposing of the Debtors' billions of dollars of residential and commercial real estate assets. This effort required Weil's involvement in more than 50 different projects and resulted in the consummation of several significant transactions, as described below in greater detail.

- Weil obtained Bankruptcy Court orders granting 40 omnibus objections to claims, reducing, disallowing or expunging more than 7,500 proofs of claim that asserted more than $9 billion (plus unliquidated amounts) against the Debtors. Weil prepared and filed 28 additional omnibus objections to reduce, reclassify, or disallow and expunge approximately 3,800 claims asserting more than $24.5 billion (plus unliquidated amounts) against the Debtors.

2.    As the Debtors' lead bankruptcy attorneys, Weil was responsible for the daily administration of these cases. During the Seventh Compensation Period, Weil was required to review and in many instances respond to the more than 2,490 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented. Weil drafted and filed over 240 motions, objections, replies, applications, stipulations or other pleadings on behalf of the Debtors. In addition, Weil filed two motions to dismiss, three answers to complaints, a motion for summary judgment, and many other pleadings in the 102 adversary proceedings that were pending during the Seventh Compensation Period (the "Adversary Proceedings"). Weil also prepared, reviewed and responded to numerous statements in the 122 ADR matters that were pending during the Seventh Compensation Period. Each of these filings, and the 313 filings that Weil reviewed in the SIPA Proceeding (defined below), required careful consideration and substantial resources from Weil.

3.    Weil's multidisciplinary teams supported the day-to-day management and strategic long-term administration of the Debtors' diverse assets around the world. Members and associates in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax Departments worked closely with the Debtors' Real Estate, Private Equity and Principal

Investment, Derivatives, Bank, and Loan and Investment teams on transactions across North and South America, Europe and Asia.

4.       Since the commencement of these cases, Weil has coordinated its efforts with the Alvarez and Marsal North America LLC ("A&M"), the Debtors' restructuring advisors, the professionals of the Creditors' Committee (defined below), the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign administrators appointed to administer the insolvency proceedings of the Debtors' foreign affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented and all of the Debtors' constituents were apprised of major developments.

5.       Weil's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Seventh Compensation Period were actual and necessary and of substantial benefit to the Debtors' estates and their creditors.  In the perspective of the complexity and scale of these cases, Weil's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  Weil respectfully requests that the Bankruptcy Court grant this application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Seventh Compensation Period as requested.

## BACKGROUND

6.       Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On October 8, 2008, the Debtors filed an application to employ Weil as their attorneys.  No objections were filed to Weil's retention and, pursuant to an order, dated November 21, 2008 [Docket No. 1660], the Debtors were authorized to retain Weil as their attorneys to render legal services in the prosecution of their chapter 11 cases.  Weil filed affidavits in support of its retention on March 4, 2009 [Docket No. 2985], August 12, 2009 [Docket No. 4779], March 30, 2010 [Docket No. 7904], July 21, 2010 [Docket No. 10358], September 20, 2010 [Docket No. 11466], October 26, 2010 [Docket No. 12302], and January 28, 2011 [Docket No. 14182].

8.     On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

9.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to administer LBI's estate under the SIPA (the "SIPA Proceeding").

10.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner (the "Examiner") and by order, dated January 20, 2009, the Bankruptcy Court approved the U.S. Trustee's appointment of the Examiner.  On March 11, 2010, the Examiner issued his report pursuant to section 1106(b) of the Bankruptcy Code.  On July 13, 2010, the Bankruptcy Court entered an order discharging the Examiner and his professionals.

11.     On January 24, 2011, the Bankruptcy Court entered an order modifying the composition of the fee committee (the "Fee Committee") that had previously been appointed

in these chapter 11 cases [Docket No. 14117].  On April 14, 2011, the Bankruptcy Court entered

an order approving a revised fee protocol (the "Fee Protocol") setting forth certain procedures

and guidelines with respect to the fees and expenses of retained professionals in these cases

[Docket No. 15998].

12.     Weil filed applications for interim allowance of compensation for

professional services rendered and reimbursement of actual and necessary expenses incurred in

prior periods, and the Bankruptcy Court entered the orders as to such applications, on:

| Application | Order |
|---|---|
| April 13, 2009 [Docket No. 3343] | August 13, 2009 [Docket No. 4795] |
| August 14, 2009 [Docket No. 4825] | April 9, 2010 [Docket No. 8205]<br>April 9, 2010 [Docket No. 8207] |
| December 14, 2009 [Docket No. 6205] | April 9, 2010 [Docket No. 8218] |
| April 16, 2010 [Docket No. 8395] | September 7, 2010 [Docket No. 11186] |
| August 16, 2010 [Docket No. 10791] | May 19, 2011 [Docket No. 16979] |
| December 15, 2010 [Docket No. 13496] | Application Pending |

13.     The Debtors have advised Weil that all quarterly fees due to the U.S.

Trustee during the Seventh Compensation Period have been paid.  The Debtors filed monthly

operating reports on November 22, 2010 [Docket No. 12946], December 20, 2010 [Docket No.

13568], January 19, 2011 [Docket No. 14005], and February 22, 2011 [Docket No. 14610] that

are relevant to the Seventh Compensation Period.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

14.     Weil requests a further allowance of interim compensation for

professional services performed during the Seventh Compensation Period in the amount of

$37,008,258.50 and for reimbursement of expenses incurred in connection with the performance

of such services in the amount of $1,063,670.14.  These amounts include certain charges and

expenses incurred prior to the Seventh Compensation Period which were to be, but were not, paid by third parties for which the Debtors are primarily responsible.[1]

15.    During the Seventh Compensation Period, Weil attorneys and paraprofessionals expended a total of 62,932.70 hours in connection with the necessary services performed.  Of the aggregate time expended, 15,588.90 recorded hours were expended by partners and counsel of Weil, 39,906.10 recorded hours were expended by associates, and 7,437.70 recorded hours were expended by paraprofessionals of Weil.  To the extent that time or disbursement charges for services performed or disbursements incurred relate to the Seventh Compensation Period, but are processed subsequent to the preparation of this application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.  In accordance with the Administrative Order, Weil received payments totaling $30,829,340.60 for the Seventh Compensation Period, consisting of $29,765,506.80, representing 80% of the charges, and $1,063,833.80, representing 100% of the expenses invoiced for the Seventh Compensation Period.

16.    This application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

---

[1] As described in Weil's prior applications, in certain instances, Lehman may be entitled to reimbursement from third parties, or third parties may be obligated to pay Lehman's professionals directly, for legal services provided and expenses incurred in connection therewith.  For example, in many instances, borrowers may be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.  After consultation and upon agreement with the U.S. Trustee, Weil endeavored to segregate legal fees and expenses that may be subject to payment by third parties, and such fees and expenses may not be contained within this Application.  Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to reimbursement from third parties, Weil has opened, or will open, a new billing account.  Weil has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts, which will not be subject to any holdback.  Weil has not, and is not required to, submit monthly fee statements to the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which point Weil would seek payment from the Debtors, but will reflect amounts charged and payments received on account of such matters, in summary fashion, in interim fee applications.  References to the Seventh Compensation Period made herein shall include prior periods in which Weil incurred fees and expenses with respect to which Weil has not previously sought Court approval.

adopted by the Bankruptcy Court on June 20, 1991 and the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Bankruptcy Court on April 19, 1995 (together the "Local Guidelines"), the United States

Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and

the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and

Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and

Reimbursement of Expenses of Professionals [Docket No. 3102] (the "Administrative Order,"

and together with the Local Guidelines and the UST Guidelines, the "Guidelines").  Further,

Weil has endeavored to comply with the directions provided by the Fee Committee made in

connection with Weil's prior applications.  Pursuant to the Fee Protocol, the Debtors will provide

a copy of this application to the Fee Committee.

17.     Weil's hourly charges are billed based on Weil's existing billing rates and

procedures in effect during the Seventh Compensation Period.  The hourly charges for the

services performed by Weil professionals and paraprofessionals are at the same rates Weil

charges for such services performed in comparable bankruptcy and non-bankruptcy related

matters.  The hourly charges are based on the customary compensation charged by comparably

skilled practitioners in comparable bankruptcy and non-bankruptcy matters.

18.     As stated at the time of the approval of its engagement, Weil adjusts its

hourly charges from time to time in the regular course of its business.  Effective January 1, 2011,

the hourly charges relating to Weil's domestic offices range between $760 and $1075 per hour

for members and counsel, between $430 and $750 for associates, and from $175 to $310 for

paraprofessionals.  Weil has voluntarily capped its domestic hourly charges at $1,000 per hour

for members and counsel in these chapter 11 cases.  Applicable charges in Weil's foreign offices, subject to change from time to time, range from $745 and $1,000 for members, and from $365 to $840 for associates.  Weil establishes its hourly charges after analysis of, among other things, the hourly charges of comparable law firms and the costs of maintaining its professionals and other staff members and its business operations.  As is standard in the profession, the charges for individual attorneys may be adjusted annually to reflect such attorneys increased seniority and experience.

19.    During the Seventh Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly charges ranging from $250 to $1,000 per hour for domestic attorneys and $365 to $1,000 for foreign attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing charge of approximately $637.89 (based on 55,609.4 recorded hours for attorneys at Weil's regular billing rates in effect at the time of the performance of services).

20.    Weil consistently monitors its charges and expenses before and after the submission of monthly fee statements for possible errors or charges that might be inappropriate or otherwise should be reduced.  As a result, prior and subsequent to the submission of monthly fee statements for the Seventh Compensation Period, Weil reduced its charges by $845,319.48 and its expenses by $167,322.11, for a total of $1,012,641.59 in voluntary reductions.  Weil will continue to diligently monitor its charges and expenses and, where appropriate, make applicable reductions.  As of the date hereof, Weil has voluntarily reduced its charges and expenses requested for reimbursement by $5,940,858.53 in aggregate since the Commencement Date.

21.    There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for

services rendered in these cases.  Except as explained immediately below, during the Seventh

Compensation Period, other than pursuant to the Administrative Order, Weil received no

payment and no promises of payment from any source for services rendered or to be rendered in

any capacity whatsoever in connection with the matters covered by this Application.

22.      During the Seventh Compensation Period, Weil has received payment in

the aggregate of approximately $1,416,900, from third parties related to representations of

Lehman entities (as described in footnote 1) listed on <u>Exhibit A</u> hereto.  Weil may have incurred,

but not yet received payment from third parties for additional charges and expenses in

connection with these and other matters.  To the extent any third party fails to reimburse Weil for

such charges or expenses, however, Weil is authorized to seek reimbursement from the Debtors

or Lehman in accordance with the Administrative Order.[2]

23.      As of the date hereof, Weil has a remaining credit balance in favor of the

Debtors for future professional services to be performed, and expenses to be incurred, in the

amount of $4,422,608.80.  Weil will file further disclosures to the extent reconciliation of time

and expenses incurred prior to the Commencement Date results in charges to such credit.

24.      Annexed hereto as <u>Exhibit B</u> is a certification regarding compliance with

the Guidelines.

25.      Pursuant to the UST Guidelines, the Summary Sheet filed in connection

with this Application includes a schedule of Weil professionals and paraprofessionals who have

performed services for the Debtors during the Seventh Compensation Period, the capacities in

which each such individual is employed by Weil, the legal department and discipline in which

each individual practices, the hourly billing rate charged by Weil for services performed by such

---

[2] As noted in footnote 1 above, based upon an agreement with the U.S. Trustee, Weil is not required to maintain or provide detailed task codes or billing increments for such engagements.

individuals, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and charges billed therefor.

26.    Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which Weil is seeking reimbursement and the total amount for each such expense category.    An itemized schedule of all such expenses will be provided to the Debtors, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

27.    Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a summary of Weil's time records billed during the Seventh Compensation Period using project categories hereinafter described.    Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.    Copies of these computerized records will be furnished to the Debtors and, subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtors' estates, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee in the format specified by the UST Guidelines.

## SUMMARY OF SERVICES PERFORMED BY
## <u>WEIL DURING THE SEVENTH COMPENSATION PERIOD</u>

28.    More than half of the charges incurred and hours recorded in the Seventh Compensation Period relate to the protection and maximization of Debtors' derivatives and real estate assets.    Another approximately fifteen percent of the charges incurred and hours recorded relate to formulation of the Debtors' Amended Plan and Disclosure Statement, reconciliation and reduction of the Debtors' non-derivative claims, and the Debtors' participation in governmental investigations.    Descriptions of some of the more significant tasks performed by Weil during the Seventh Compensation Period are set forth below.

29.    <u>Derivatives</u>.    As widely noted, the volume, size and complexity of the Debtors' Derivative Contracts are unprecedented in the context of chapter 11 cases and will have an enormous impact on recoveries to creditors in these cases.    As has been the case since the Commencement Date, during the Seventh Compensation Period, Weil devoted substantial resources to implementing the Debtors' global strategies to maximize the value of their derivatives assets.    At any one time, Weil's multi-disciplinary derivatives team may be engaged a large number of research and other derivative-related projects.

30.    During the Seventh Compensation Period, Weil expended substantial resources to preserve two significant, favorable decisions of the Bankruptcy Court that Weil had previously achieved for the Debtors.    As noted above, Weil successfully defeated an appeal to the District Court of the Bankruptcy Court's Swedbank Decision, which resolved the issue of whether the safe harbor provisions  of sections 560 and 561 of the Bankruptcy Code override the mutuality requirement of section 553 of the Bankruptcy Code.    The Swedbank Decision established an important precedent in the Debtors' cases and serves to discourage creditors from withholding payments to the Debtors.    In addition, Weil represented the Debtors in negotiating a settlement with BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited and other parties to preserve the Bankruptcy Court's decision in the *LBSF v. BNY Corporate Trustee Serv. Ltd.* adversary proceeding (Adv. Pro. No. 09-01242) (the "<u>BNY Decision</u>").    The settlement resulted in a substantial payment to the Debtors, the dismissal of an appeal to the District Court and an appeal pending to the Supreme Court of the United Kingdom with respect to a parallel proceeding commenced in England, and avoided the continuation of very significant litigation.    Like the Swedbank Decision, the BNY Decision is of great importance to the Debtors in their efforts to maximize recoveries to their creditors.

31.     Throughout the Seventh Compensation Period, Weil continued to represent the Debtors' interests in various other disputes, including those related to invalid contract terminations, counterparties' non-performance, and assertions of rights of setoff.  These issues were raised both informally, in negotiations, and formally, in ADR and in pleadings filed with the Bankruptcy Court.  Weil devoted significant time and effort, in particular, representing the Debtors in affirmative ADR matters to maximize the Debtors' recovery on Derivative Contracts with recovery potential.  During the Seventh Compensation Period, over 122 ADR matters were pending, requiring a devoted team of 41 Weil attorneys to address complex legal and factual issues, including disputes over valuation of termination payments due under Derivative Contracts, *ipso facto* provisions, triangular setoffs and the scope of the safe-harbor provisions.  Each ADR is a mini-trial that requires an efficient and targeted effort from Weil.  Weil was required to coordinate its efforts with those of the Creditors' Committee's and the Debtors' other professionals.

32.     In addition, Weil prepared and served a number of subpoenas on derivative counterparties pursuant to Bankruptcy Rule 2004 during the Seventh Compensation Period and negotiated discovery schedules to facilitate the exchange of information and establish parameters for potential settlements.  Weil has and expects to continue to devote substantial resources to maximizing the value of the Debtors' derivatives assets for the benefit of the Debtors' estates.

33.     <u>Real Estate</u>.  During the Seventh Compensation Period, Weil represented Lehman in connection with a restructuring of what was, at one time, Lehman's single-largest real estate asset: the debt and equity investments made in connection with the $22 billion leveraged buyout of the Archstone Smith Operating Trust ("<u>Archstone</u>").  This restructuring, which closed

in December of 2010, involved (i) the conversion of approximately $5.2 billion of debt, plus accrued interest, to new classes of equity interests, (ii) the conversion of certain priority financing to a new revolving credit facility with an extended maturity date, and (iii) extensions of the maturity dates of the portions of the Archstone financing that were not converted to preferred equity.  With this substantial improvement to the Archstone balance sheet and liquidity profile, the Debtors are well positioned to maximize recovery on their investments in Archstone.

34.      In addition, Weil negotiated a settlement among LBHI, State Street Bank and Trust Company ("State Street"), PCCP, LLC, and others, of various disputes with respect to a $775 million mortgage loan originated by a subsidiary of PCCP, LLC that encumbered a former naval base in Orange County, California, commonly referred to as El Toro.  Pursuant to the settlement, LBHI received a $125 million discounted payoff of its $250 million interest in the mortgage loan and full repayment, plus interest, of its $32 million participation interest.  LBHI also received an option to acquire a subordinated 10% profit participation in the El Toro development project post-settlement.  By entering into the settlement, LBHI avoided having to put additional capital into the El Toro project, received a release of claims from State Street and PCCP, LLC with respect to disputes surrounding the El Toro mortgage loan and, as a result, avoided costly litigation.

35.      Weil also assisted the Debtors in the negotiation of settlement transactions among LBHI, certain of its subsidiaries, Driftwood Ventures Inc. ("DVI"), and other parties of disputes related to certain of DVI's assets, including certain equity positions held by LBHI's subsidiaries in joint ventures and certain loans made by LBHI to certain affiliates of DVI.  Through the settlement, LBHI (i) acquired title to various properties, either through foreclosure or deed-in-lieu of foreclosure, (ii) terminated certain hotel management agreements for those

properties and others already owned by LBHI affiliates, (iii) sold its position in a related mezzanine loan to a third party, (iv) avoided future joint venture-related obligations, including with respect to additional capital contributions, and (v) avoided costly litigation. In addition, certain equity positions of LBHI's subsidiaries were redeemed and LBHI and certain of its subsidiaries received releases and indemnities.

36.    Throughout the Seventh Compensation Period, Weil continued to provide services to protect the Debtors' interests in the chapter 11 cases (the "<u>SunCal Cases</u>") of Palmdale Hills Property, LLC and its affiliated debtors (collectively, the "<u>SunCal Debtors</u>"). Prior to the Commencement Date, certain of LBHI's Debtor and non-Debtor subsidiaries provided over $2 billion in senior secured financing (the "<u>SunCal Financing</u>") to the SunCal Debtors. The SunCal Financing was then used to acquire and develop residential real estate projects in California, including projects known as Northlake, Oak Valley Champions, Marblehead, Heartland, Delta Coves, Palm Springs Village, Oak Knoll and Del Amo. Following the commencement of the SunCal Cases, the SunCal Debtors commenced an adversary proceeding in the SunCal Cases seeking, among other things, to subordinate Lehman's claims relating to the SunCal Financing. In addition, Lehman and the SunCal Debtors engaged in a number of other disputes that required Weil to represent Lehman both in the Debtors' chapter 11 cases and in the SunCal Cases in order to preserve Lehman's interests in the SunCal Debtors' respective estates.

37.    During the Seventh Compensation Period, Weil filed plans of reorganization on behalf of Lehman with respect to almost all of the SunCal Debtors. The plans contemplate a settlement with the creditors of the SunCal Debtors and a transfer of the SunCal Debtors' assets to Lehman. In October 2010, the bankruptcy court in the SunCal Cases imposed

a temporary stay on all litigation and plan proceedings and ordered the parties to engage in mediation. Weil devoted a considerable amount of time to preparing for the mediation and made significant progress at the first of two mediation sessions in January 2011 resolving issues with both of the surety bond issuers. The Debtors, with Weil's assistance, had previously reached a settlement with the trustee for the involuntary SunCal Debtors as well as the unsecured creditors committee for the involuntary SunCal Debtors.

38.     Weil also devoted significant resources to identify grounds for objections to the numerous intercompany claims that were filed against the SunCal Debtors by their non-Debtor affiliates. If prosecution of these claims objections is successful, the aggregate value of the claims filed against the SunCal Debtors would be reduced by approximately $18 million to $20 million, and the expected recoveries to Debtors' and their controlled affiliates' in the SunCal Cases would increase.

39.     <u>Plan and Disclosure Statement</u>. The preparation of the Amended Plan and Disclosure Statement were massive undertakings that required substantial commitment from Weil. In formulating the Amended Plan, Weil worked with the Debtors to investigate, research and advise on numerous factual and legal issues that could have a significant impact on recoveries to creditors, such as substantive consolidation, the validity of enforceability of intercompany and guarantee claims, the characterization of intercompany balances, the potential equitable, contractual or statutory subordination of certain claims, and the methodologies and principles for the valuation of claims based on Derivative Contracts and certain securities issued or guaranteed by LBHI. Weil also drafted a comprehensive 155-page Disclosure Statement plus exhibits to enable creditors to make an informed judgment regarding the Amended Plan.

40.    Throughout the Seventh Compensation Period, Weil dedicated significant resources to assist the Debtors in their efforts to achieve a consensual confirmation process.  In that regard, Weil participated in numerous meetings among the Debtors, the Creditors' Committee and its professionals, and the Debtors' various domestic creditor constituencies, including ad hoc and other groups as well as individual creditors.  Notably, the Creditors' Committee supported the Amended Plan.  Weil continues to represent the interests of the Debtors in their discussions with other constituencies to garner support for the Amended Plan, as it may be amended.

41.    Additionally, Weil represented the Debtors and participated in both separate, bilateral meetings and multilateral, global protocol meetings on January 26 and 27, 2010, with the majority of the foreign administrators administering the estates of the Debtors' foreign affiliates.  Weil explained the terms of and modifications to the Amended Plan and the benefits thereof in attempts to reach a global compromise of all issues between the parties.  Each negotiation is unique.  The compromises vary in their complexity, but are all are intended to resolve issues among the Debtors and their affiliates relating to, among other things, the risk of substantive consolidation and the existence, enforceability, amount, and priority of over $300 billion in asserted intercompany and guarantee claims.  As part of the negotiation process, Weil's New York, London, and German offices provided coordinated advice on the overall structure of these complex and interrelated settlements and their relationship to both the Debtors' chapter 11 cases and the affiliates' relevant foreign proceedings. As noted above, Weil represented the Debtors in connection with the settlement agreement entered into with Bankhaus.

42.    Settlement discussions with the Debtors' other foreign affiliates remain ongoing.  For example, Weil worked closely with representatives of the SIPA Trustee to, among

other things, reconcile the approximately $54.957 billion in claims that LBI filed in the Debtors'

chapter 11 cases, and the approximately $35.094 billion that the Debtors filed against LBI in the

SIPA Proceeding.  In support of this effort, Weil participated in numerous meetings and

coordinated the Debtors' voluntary exchange of information with the SIPA Trustee.  Although a

final settlement has not yet been reached with LBI, substantial progress in the ongoing effort has

been made.

43.    <u>Claims Resolution</u>.    During the Seventh Compensation Period, Weil

devoted substantial time and effort to assisting the Debtors in their analysis of the thousands of

claims filed in these chapter 11 cases and, where appropriate, to objecting to such claims.  The

claims objection process is an enormous undertaking that has required significant dedication by a

team of Weil professionals that coordinates with the Debtors to process, review, analyze and

identify thousands of claims for objection and to prepare, prosecute and secure orders granting

the Debtors' objections to same.

44.    As noted above, during the Seventh Compensation Period, Weil obtained

orders granting 40 omnibus objections with respect to more than 7,500 claims and filed 28

additional objections with respect to 3,800 additional claims.  These accomplishments alone

exceed the scope of the entire claims process in the life of most any chapter 11 case.  But, during

the Seventh Compensation Period, Weil also performed factual and legal research to advance or

resolve the some of the 56 omnibus objections that were filed in previous compensation periods.

Weil further analyzed and identified additional claims that the Debtors intend to object to in the

future.

45.    Weil closely coordinated its efforts with the Debtors' Bankruptcy Court-

approved claims and noticing agent, to provide notice to all claimants whose claims were subject

to objections.  For each omnibus objection, Weil designated a specific attorney whom claimants could contact with any questions or concerns.  A team of Weil attorneys responded to hundreds of informal inquiries and addressed formal objections of claimants.  Substantial attorney time and resources were spent responding to claimant inquiries and addressing issues raised, resulting in a significant reduction in the number of formal responses that were ultimately filed and prosecuted by parties in interest.

46.    <u>Participation in Governmental Investigations</u>.    During the Seventh Compensation Period, a large team of Weil attorneys was engaged in an ongoing effort to address requests for documents from the Securities and Exchange Commission (the "<u>SEC</u>") and other government agencies.  As of January 31, 2011, the Debtors, with Weil's assistance, had produced nearly 15 million pages of documents to the SEC and over one million pages of documents to the Financial Crisis Inquiry Commission (the "<u>FCIC</u>").   The FCIC published a final report on January 27, 2011.

47.    In order to protect the Debtors' privilege in connection with these document productions, Weil, along with its electronic discovery vendor, processed over 10.5 million individual documents.  Weil attorneys were required to review over 120,000 of those documents that were preliminarily identified as being privileged in order to (i) identify non-privileged responsive documents, (ii) identify documents that need to be withheld or redacted, and (iii) create privilege and redaction logs for each of nearly 100 custodians.  During the Seventh Compensation Period, Weil attorneys completed the substantial majority of the privilege review process for the SEC production and produced privilege logs for specific custodians as requested by the SEC.

48.    Other professional services rendered by Weil during the Seventh Compensation Period, organized in accordance with Weil's project codes, are described below.

a.    Case Administration Issues

(i)    General Case Strategy Meetings

- Conducted meetings, conferences, and teleconferences regarding the chapter 11 case strategy, including the preparation of and responses to various motions and applications; business issues, including numerous transactions of the Debtors and their non-Debtor affiliates; general litigation strategy in connection with the Debtors' various adversary proceedings and non-bankruptcy-related litigations; governmental and other investigations; corporate governance; inter-company and related international issues.

(ii)    Project Monitoring/Court Calendar & Docket Maintenance

- Reviewed, analyzed, monitored and distributed filings in the Debtors' 23 chapter 11 cases, three related chapter 15 cases, eight appeals, and numerous adversary proceedings and non-Bankruptcy Court litigations pending during the Seventh Compensation Period to the appropriate Debtor and Weil teams; and
- maintained work-in-progress reports and case calendars and distributed same to Debtor and Weil teams to ensure coordination and coverage.

(iii)    Hearings and Court Communications

- Prepared for and participated in numerous hearings, including omnibus Bankruptcy Court hearings on October 20, November 17, December 15, 2010 and January 13, 2011, and non-omnibus hearings in the Bankruptcy Court and other courts on October 4-8, 18-21 and 27, November 1, 10, 24-26, 29, and 30, December 1, 9, 14-16, 21 and 22, 2010 and January 19 and 20, 2011;
- participated in additional telephonic and in-person conferences with the Bankruptcy Court and other courts;
- coordinated regularly with the Bankruptcy Court and parties in interest, including the U.S. Trustee and attorneys for the SIPA Trustee, regarding hearings and agenda items and prepared hearing agendas in accordance with the Bankruptcy Court's orders and requests; and
- prepared summaries of significant pleadings considered at various hearings and distributed same to Debtor and Weil teams to ensure coordination.

b.    Constituency and Coordination-Related Issues

    (i)    Interested Party Communications/Website/Lehman Team Hotline

- Carried on a leading role in assisting the Debtors' disclosure process, providing information and transparency to the Debtors' stakeholders by maintaining a "Lehman Team Hotline"; and
- responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including customers, vendors, shareholders, secured and unsecured creditors and potential purchasers of assets regarding Debtors' chapter 11 cases.

    (ii)    Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- Prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding, among other things, the status of the chapter 11 cases, the Amended Plan and related issues, pending and potential causes of action, various asset-disposition and other protocols, various document demands, asset sales, loan restructurings, derivative transactions, inter-company and international issues.

    (iii)    LBI/SIPA Coordination and Issues

- Conducted meetings and teleconferences with the Debtors' and the SIPA Trustee's professionals to address numerous issues, including reconciling customer claims and non-customer claims of Lehman's domestic and foreign affiliates;
- conducted legal and factual research, analyzed documents, and drafted memorandum regarding various claims issues, including those related to third party collateral, equitable subordination, and enforceability of certain agreements under state law, and certain unclaimed property;
- participated in meetings among the Debtors and the SIPA Trustee's professionals to address informal discovery issues related to same;
- participated in meetings with the SIPA Trustee's professionals and the Debtors regarding valuation of and discovery issues related to the "PIK" note issued to LBI by Lehman Ali Inc.;
- participated in LBI-related status conference before the Bankruptcy Court; and
- reviewed and monitored case docket for the SIPA proceeding.

c.    General Business Operation Issues

    (i)    Cash Management

- Participated in conferences and teleconferences with Lehman, the Creditors' Committee, the U.S. Trustee, the SIPA Trustee's professionals and various parties-in-interest regarding Lehman's cash management

systems and misdirected wire transfers, and conducted legal research and analysis relating to the same; and

- drafted letters and agreements regarding same, including those related to financial institutions' rights to setoff claims.

(ii) Insurance Issues

- Prepared and obtained Bankruptcy Court approval of Debtors' motion for an order (i) modifying the automatic stay to allow settlement payment under certain directors and officers insurance policies, and (ii) approving an agreement and release with Northgate Minerals Corporation and certain individual defendants;

- obtained Bankruptcy Court approval for the Debtors' motion for an order modifying the automatic stay to allow advancement under certain directors and officers insurance policies with (i) Zurich America Insurance Co., ACE Bermuda Insurance Ltd., and St. Paul Mercury Insurance Co., and (ii) XL Specialty Insurance Co. and Federal Insurance Co.; and

- reviewed and responded to other issues regarding the Debtors' insurance policies and coverage.

(iii) Employee/ERISA/Benefits/Pension Issues

- Advised the Debtors' and A&M's New York and London teams regarding UK pension issues, including a warning notice issued by the UK Pensions Regulator, an appeal of a decision by the Pension Regulator's Determinations Panel as to a Financial Support Direction and a related application in the UK High Court;

- conducted research, participated in and prepared summaries of UK hearings, reviewed documents, and drafted memoranda and other documents related to the foregoing and interpretations of UK insolvency and pensions statutes;

- prepared, filed and obtained Bankruptcy Court approval of motion authorizing the Debtors to implement an incentive program for derivative-related employees in 2011 and engaged in meetings and negotiations with the Debtors and the Creditors' Committee's professionals regarding same;

- prepared and filed a motion to dismiss the adversary complaint in the *Uvino v. LBHI, et. al.* [Adv. Pro. No. 10-05428] matter pursuant to Federal Rule of Civil Procedure 12(b)(6) and participated in meetings and conducted research regarding issues related to same;

- prepared memorandum of law in support of motion to dismiss the complaint in *Loschiavo v. Fidelity Management Trust Company, et. al.* [District Court Case No. 10-11598] that is pending in the District Court and participated in meetings, conducted research and prepared other pleadings related to same; and

- participated in numerous meetings, conducted research and responded to inquiries regarding the Debtors' employee related issues.

(iv)  Intellectual Property

- Negotiated, drafted and revised several agreements related to the Debtors' use or provision of intellectual property and information technology;
- participated in meetings and addressed issues related to transition services agreement and indemnity letter between LBHI and Lehman Brothers International (Europe) ("LBIE"), and obtained Bankruptcy Court approval of same; and
- attended to additional issues related to data sharing among the Debtors and their non-Debtor affiliates.

(v)  Tax Issues

- Drafted request to the Internal Revenue Service ("IRS") for a ruling in connection with the Debtors' proposed chapter 11 plan and subsequent submissions in connection with the Amended Plan and in response to requests from the IRS;
- prepared, filed and obtained Bankruptcy Court approval of a stipulation, agreement and order between the Debtors' and the IRS with respect to the IRS's proof of claim; and
- conducted regular conferences and teleconferences with the Debtors, the Creditors' Committee's professionals, the SIPA Trustee's professionals and others regarding various tax matters, including those relating to the Amended Plan and Disclosure Statement, certain UK tax issues, LAMCO, state franchise tax issues, sales tax issues, tax claims and tax efficient structures for various asset sales and restructurings.

(vi)  Corporate Governance

- Attended meetings of LBHI's board of directors, prepared briefing memorandum and drafted and reviewed resolutions and minutes for same;
- conducted research and reviewed and drafted various consents, resolutions, audit letters, by-laws, merger forms and organizational documents for the Debtors and their various direct and indirect subsidiaries and affiliates;
- prepared plan regarding the restructuring/liquidation of certain non-Debtor affiliates, including LB I Ltd., LB 2 Ltd. and LB 3 GMBH; and
- prepared and filed forms 8-K, 12B-25, 13F and other documents with the United States Securities and Exchange Commission.

(vii)  Other General Business Operation Issues

- Advised the Debtors daily on issues relating to their general business operations, including by telephonic and in person meetings, correspondence and memoranda;

- researched, drafted and reviewed documents, including organizational charts, in connection with, and participated in meetings regarding, among other things, the dissolution of certain non-Debtor subsidiaries; and
- drafted and reviewed documents in connection with participation agreements and escrow agreements.

(viii) Intercompany Issues

- Advised the Debtors in the preparation of intercompany promissory notes and related security documents to ensure compliance with the Bankruptcy Court's orders governing cash management and other transactions;
- reviewed and analyzed intercompany subordination agreements;
- prepared intercompany services agreement between BNC Mortgage LLC and Aurora Bank FSB and participated in meetings and teleconferences regarding same;
- conducted research, drafted memoranda, participated in conferences and teleconferences with the Debtors, the Creditors Committee's professionals and others regarding numerous intercompany issues including intercompany repurchase agreements, claims, loans, transfers, transfer restrictions, and guarantees.

d.    Asset Class-Related Issues

(i)    Real Estate Matters

- negotiated and sought Bankruptcy Court approval of various settlements and restructuring of Lehman's relate estate-related investments;
- represented the Debtors' interests in the chapter 11 cases of borrowers under various real estate-related loans and agreements entered into by the Debtors prior to the Commencement Date;
- sought and obtained Bankruptcy Court approval to make new investments with respect to various properties;
- Monitored and actively participated in the chapter 11 cases of Moonlight Basin Ranch L.P., *et al.* in order to protect the Debtors' interests in such cases and, with respect to the related adversary proceeding, reviewed various documents produced by the Moonlight parties during the fact discovery period, took and defended several depositions of key witnesses, drafted numerous briefs, including a motion for summary judgment, prepared for a potential trial of remaining issues in adversary proceeding, and negotiated and prepared documentation for potential settlement of all such litigation and other outstanding issues in the Moonlight Basin Ranch LP chapter 11 cases;
- as discussed above in greater detail, Weil litigated numerous matters relating to the SunCal Debtors in both the Debtors' chapter 11 cases and the SunCal Debtors' chapter 11 cases, including a successful argument in the Second Circuit appeal of the Bankruptcy Court's order approving a settlement with Fenway Capital, LLC;

- prepared and filed disclosure notices to meet reporting requirements set forth in various protocols and orders of the Bankruptcy Court;
- negotiated and drafted a Bankruptcy Court-approved protocol authorizing the Debtors' to dispose of certain real estate assets without seeking further Creditor Committee or the Bankruptcy Court;
- organized and participated in regular meetings and teleconferences with Lehman, A&M and various other domestic and international professionals in connections with the Debtors' efforts to restructure their real estate holdings; and
- conducted legal research and factual due diligence, including with respect to corporate structure, assets and liabilities, tax considerations, employee and transfer considerations, regulatory and other consents required for settlements and sales, transfers and other dispositions of real estate assets.

(ii) Private Equity

- Drafted transaction documents to facilitate closing of sale to Citibank N.A. of, and cost sharing agreement with LBI relating to, the transfer of Lehman's residual interests in real estate mortgage investment conduits, relieving Lehman of hundreds of millions of dollars in potential state and federal income tax liabilities for a single payment of $24 million;
- advised on and negotiated and drafted transaction documents (including transaction and purchase agreements, settlement agreements, trust agreements, consents, transition services agreements), as well as notes, collateral agreements, advisory agreements and partnership agreements on various miscellaneous sales, including a sale by various Lehman affiliates of their interests in Nexus LLC, and certain follow-on investments made by Lehman Brothers Merchant Banking Partners III L.P. and parallel investment vehicles, including Trilantic, Europe G.P., and certain investments in Colombia;
- reviewed and counseled Debtors on strategic alternatives with respect to credit facilities, third party agreements, extensions, amendments, and restructurings of certain credit facilities and potential litigation related thereto;
- performed extensive diligence for transactions and underlying investments of various funds; developed structures for alternative transactions;
- engaged in negotiations, conducted diligence and drafted documents in connection with amendments to purchase and sale agreement governing sale of Debtors' Investment Management Division to Neuberger Berman Group LLC and potential restructurings in connection with same;
- reviewed documents and counseled Debtors on strategies with respect to Debtors' interests in entities engaged in initial public offerings and reviewed and revised materials and counseled Debtors on strategies related to transfers of warrants held by the Debtors in connection with various public companies; and

- counseled Debtors on Hart-Scott Rodino Act compliance issues in connection with LAMCO and advised in connection with certain compliance issues for LAMCO.

(iii) Derivatives/SWAP Agreement Issues (Including Derivatives-Related Adversary Proceedings, Alternative Dispute Resolution, and Claims Reconciliation and Litigation)

- Worked with the Debtors to develop a comprehensive settlement framework to address and potentially resolve significant derivatives claims asserted against the Debtors by 13 financial institutions (the "Big Banks") and participated in numerous meetings and conferences with the Debtors and the Big Banks and their professionals regarding same;
- drafted, negotiated and filed the Debtors' Motion for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties;
- drafted, negotiated and filed Debtors' Motion for Approval of the Termination and Settlement of Certain Prepetition Derivatives Contracts with Trusts for which U.S. Bank National Association Serves as Indenture Trustee;
- drafted, filed motion and obtained authorization from the Bankruptcy Court to (i) assume and assign interest rate swap agreements with certain trust counterparties, including Deutsche Bank National Trust Company, as Indenture Trustee, and (ii) enter into new interest rate swap agreements;
- obtained Bankruptcy Court order enforcing the automatic stay with respect to PT Mobile-8 Telecom Tbk ("Mobile-8") in response to Mobile-8's (i) abandonment of the ADR process, (ii) commencement of an action against LBSF in an Indonesian court and (iii) unlawful withholding of amounts due to LBSF under a derivatives transaction;
- obtained Bankruptcy Court approval of settlement with Madison Avenue Structured Finance CDO I, Ltd., Madison Avenue Structured Finance CDO I, Corp., U.S. Bank National Association, as trustee, and MetLife Investment Advisors Company, LLC, as collateral manager, which will (i) result in a substantial payment to LBFP's estate, and (ii) avoid future disputes and litigation;
- obtained Bankruptcy Court approval of a settlement among LBSF, LBHI, BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited, and others, relating to two particular series of debt securities issued out of a multi-issuer secured obligation program, and litigation currently pending in the Bankruptcy Court as well as the Supreme Court of the United Kingdom;
- commenced an adversary proceeding against Sempra Energy Trading LLC to recover approximately $104.7 million relating to certain swap transactions with LBHI;

- drafted and served numerous ADR notices, replies and related documents for mediation and participated in settlement conferences and mediations with counterparties;

- responded to objections to and obtained Bankruptcy Court approval for Debtors' motion to approve a settlement with Société Générale, New York Branch relating to certain swap transactions with Libra CDO Limited ("Libra") and MKP Vela CBO, Ltd. ("Vela"), pursuant to which LBSF's estate recovered at least $445 million and preserved the right to pursue the remaining assets in Libra and Vela against the other parties to the transactions, thereby maximizing its opportunity to potentially recover up to an additional $72 million;

- represented LBCS in an action in the United Kingdom High Court against Crédit Agricole Corporate and Investment Bank ("CACIB"), seeking payment of €11,622,809.31 due under a letter of credit which CACIB issued in favor of LBCS;

- analyzed various claims against the Debtors based on derivatives contracts and drafted and filed omnibus objections with respect to certain derivatives claims;

- negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts, including with special purpose entities, and confidentiality agreements related thereto and conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations; and

- advised the Debtors with respect to jurisdictional issues related to foreign swaps, subordination agreements, valuation issues relating to termination calculations, conflicts of law, safe harbor and set-off issues, nonperforming counterparties, and intercompany trades.

(iv) Loans/Investments

- Conducted research, participated in strategy meetings, teleconferences, and negotiations, and drafted various pleadings and agreements regarding Lehman's interests in various loans and investments, including those to borrowers now in their own chapter 11 cases, such as Latshaw Drilling Company, LLC and its affiliate, and those involving third-party litigation and out-of-court restructurings;

- conducted research, participated in strategy meetings, teleconferences, and negotiations, and drafted and commented on various letters and agreements regarding Lehman's investment in Graphite Projects Limited, the operator of a waste recycling facility in Derwenthaugh Ecoparc, United Kingdom; and

- conducted research, participated in strategy meetings, teleconferences, and negotiations, drafted various pleadings and agreements, and obtained Bankruptcy Court approval of the sale by LBSF and non-Debtor LB I Group Inc. of their respective interests Libro Companhia Securitizadora de Créditos Financeiros pursuant to which Lehman recovered nearly $16 million.

(v)    Domestic Bank and Related Regulatory Issues

▪    Drafted multiple agreements, schedules, notices, correspondence and other documents in connection with closing of global settlement agreements with Aurora Bank FSB and Woodlands Commercial Bank (together, the "Banks") to support the Debtors' efforts to preserve LBHI's equity interest in the Banks of approximately $1.42 billion (as of the date of the filing of the motions prepared by Weil for approval of the global settlement agreements);

▪    reviewed documents, prepared agreements and advised Debtors regarding transfer and assignment of master servicing rights by LBHI to Aurora Bank FSB, termination of liens and participation agreements, transfer of non-cash assets to the Banks, tax-allocation agreements and amendments to the amended repurchase agreement and financing facility;

▪    participated in numerous meetings and conference calls with Debtors, counsel for the Banks and the Banks' other professionals, regulatory counsel, counsel for Fannie Mae and Freddie Mac, the Creditors' Committee's advisors, counsel for the Ad Hoc Group of Lehman Brothers Creditors and other parties in interest regarding the same; and

▪    coordinated closing diligence and review with the Debtors regarding repurchase and warranty liability issues.

e.    International Insolvency Issues

(i)    International Insolvency Issues

▪    Monitored and participated in the UK insolvency proceedings (including court hearings) of 20 English companies with PricewaterhouseCoopers LLP as joint administrators and advised with respect to their respective effects on the Debtors' chapter 11 cases;

▪    counseled the Debtors in their role on the official committee of unsecured creditors in the UK insolvency cases of LBIE, Lehman Brothers Europe Limited, Lehman Brothers Limited, LB UK Re Holdings Limited, and Lehman Brothers Holdings Plc;

▪    advised the Debtors in relation to filing claims against entities that are subject to English administration proceedings as well as in respect of claims which relate to trust assets;

▪    represented the Debtors in connection with a number of proceedings in the High Court of England and Wales including those regarding (i) the treatment of "client moneys," (ii) the ownership of certain assets subject to the "RASCALS" program (Regulation and Administration of Safe Custody And Global Settlement), and (iii) disputes relating Lehman trades under derivative contracts;

▪    represented LBHI in the hearing in the High Court of England & Wales in November 2010 to determine the treatment of a Financial Support

Direction and a Contribution Notice issued pursuant to the Pension Act 2004;

- negotiated on behalf of the Debtors with the English administrators on numerous ongoing matters including: (i) the extension of a transitional services agreement, (ii) rent settlement relating to disputed invoices, (iii) obtaining and preserving information relevant to the Debtors' estates and (iv) a new servicing agreement;

- advised the Debtors with respect to issues relating to inter-company side-letters and set-off rights; possible English insolvency proceedings relating to certain of the Debtors' investments, certain construction disputes, potential exit strategies, the Debtors' rights and interest as creditors of LB UK Re Holdings Limited, and various tax issues;

- represented the Debtors in litigation in the Cayman Islands in respect of disputes relating to certain outstanding loans;

- assisted the Debtors in dissolving and unwinding a number of partnership structures;

- represented LBHI in the preparation and submission of filings to BaFin, the German federal financial supervisory authority, under German securities laws;

- represented LCPI in the German insolvency proceedings over the respective assets of Formel Eins Beteiligungs GmbH, Kirch Beteiligungs GmbH & Co. KG, and Taurus Holding GmbH & Co. KG;

- represented the Debtors in German insolvency proceedings over the assets of LB Capital GmbH and Bankhaus, including communications with the Bankhaus administrator, review of the administrator's reports, and advising the Debtors with respect to the Debtors' interest in the contemplated distribution from Bankhaus' estate;

- advised Debtors in determining termination dates of inter-company derivative master agreements with Bankhaus and in calculating close-out-netting amounts;

- advised the Debtors on various legal insolvency issues with respect to the Debtors' settlements with Bankhaus;

- advised LBHI with regard to the more than $35 billion in claims asserted against LBHI by Deutsche Bundesbank and Bundesverband Deutscher Banken e.V.;

- assisted the Debtors in dissolving and liquidating Sadio Neunundachtzigste Vermögensverwaltungs GmbH; and

- participated in numerous bilateral and multi-lateral meetings and assisted in liaising with foreign affiliates on a variety of other intercompany issues;

- collected and catalogued information regarding status of the Debtors' foreign subsidiaries and investments and communicated with Lehman, A&M and third parties regarding international insolvency proceedings and regulatory matters; and

- coordinated and monitored the list of authorized signatories, directors and officers and the replacement of directors for various international non-Debtor affiliates.

(ii)   Non-Derivative Automatic Stay/Safe Harbor Issues

- Negotiated, prepared, filed and obtained Bankruptcy Court approval of 6 stipulations providing for relief from the automatic stay with, among others, Alpine Bank, Oasis Associates LLC, and Capital One, N.A. permitting such parties to enforce their rights with respect to certain real property;
- prepared and filed a response on behalf of LBHI to a motion filed by Prudence Waltz for relief from stay and an order directing abandonment of claims against real property in Los Angeles, California;
- successfully opposed a motion filed by Lawrence Fogarazzo and others for relief from the automatic stay to allow advancement under insurance policy by Lloyd's of London and participated in meetings and teleconferences regarding same;
- conducted research regarding administrative freeze of funds in violation of the automatic stay and drafted letters to various third parties related to the automatic stay; and
- addressed various issues related to state court actions commenced or continued in violation of the automatic stay, including calls and correspondence with interested parties and counsel.

(iii)   Miscellaneous Asset Sales/363 Issues

- Participated in meetings and teleconferences regarding issues related to Lehman's artwork and reviewed and analyzed various documents, including notice of abandonment of certain artwork and purchase agreement, related to the purchase of certain artwork;
- attended to various post-closing matters related to sale of Lehman's Investment Management Division including preparation of amendment to LLC agreement;
- participated in internal meetings with the Debtors regarding SASCO and Spruce / Verano Note Purchase Agreements with Bankhaus' Insolvency Administrator, reviewed documents, prepared resolutions, revised power of attorney and prepared motion for approval of same; and
- attended to issues related to LAMCO, including the creation of a new LAMCO subsidiary and preparing and reviewing corporate documents including by-laws, charter and organization board documents and participated in meetings and teleconferences regarding same, reviewed corporate documents including non-disclosure agreement and term sheet for potential sale of or joint venture with LAMCO and participated in meetings regarding same.

(iv)   Non-Derivative Executory Contracts/365 Issues

- Participated in teleconferences with Debtors and opposing counsel regarding the motion of Factiva Inc. to compel assumption or rejection of an executory contract;

- participated in meetings, conducted research and prepared memorandum regarding the treatment of LCPI loans and strategies to maximize the Debtors recoveries therefrom; and
- conducted research and drafted memoranda regarding various issues related to executory contracts, including treatment of unfunded commitments, assumption and/or rejection of executory contracts, and treatment of term and revolver loans.

(v)    Plan of Reorganization

- As described above, Weil worked closely with the Debtors and A&M to draft, modify and file the Amended Plan, which was materially different than the chapter 11 plan previously filed by the Debtors;
- participated in bi-lateral and multi-lateral meetings and teleconferences with the Creditors' Committee and its professionals, the principals and professionals of the Debtors' many foreign affiliates, and various other creditors and groups of creditors of the various Debtors;
- analyzed term sheets and plan proposals submitted by various creditors and groups of creditors of the various Debtors;
- negotiated and drafted nondisclosure and confidentiality agreements with various creditors and creditor groups to facilitate diligence and discovery in connection with, among other things, the Amended Plan, the Debtors' pre- and postpetition activities, assets and liabilities, and the potential for substantive consolidation of the Debtors' estates;
- designed, negotiated and drafted motion for approval of protocols, procedures and a protective order to streamline discovery related to plan confirmation;
- drafted and negotiated multiple proposals, term sheets and settlement agreements with the Debtors and their many foreign affiliates to resolve the claims asserted among the parties in connection with the Amended Plan;
- conducted extensive legal and factual research and drafted memoranda in connection with the Amended Plan; and
- analyzed and participated in meetings and teleconferences with the Debtors and numerous parties in interest regarding valuation of the thousands of structured notes issued by Lehman Brothers Treasury Co. B.V. and guaranteed by LBHI.

(vi)   Disclosure Statement/Solicitation/Voting

- As described above, Weil worked closely with the Debtors, participating in numerous teleconferences and meetings, to draft the Disclosure Statement, which included, among other things, descriptions of the Amended Plan, Lehman's prepetition businesses, the Debtors' postpetition activity, including the sale of Lehman's North American Capital Markets and Investment Banking Business to Barclays Capital Inc., the settlement with Bankhaus, the administration of the Debtors' assets, including

Derivative Contracts, real estate, commercial loans, and private equity investments, and the Securitization Structures; and

▪ coordinated with the Debtors and the Debtors' agent for claims, noticing, balloting and solicitation to draft a motion for approval of the Disclosure Statement, the form and manner of notice of a hearing thereon, solicitation and voting procedures, and the related schedule of hearing and filing deadlines.

(vii) Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues

▪ Analyzed claims for and drafted and filed the Debtors' fifty-seventh through eighty-fourth omnibus objections to proofs of claim;

▪ performed research, presented oral argument and obtained Bankruptcy Court orders approving the Debtors' twenty-fifth, twenty-eighth, thirty-fifth through seventieth, and seventy-second through seventy-fifth omnibus objections to proofs of claim;

▪ analyzed and responded to thousands of items of correspondence, court filings and telephone calls from creditors whose claims were subject to the 84 omnibus claims objections on file during the Seventh Interim Compensation Period;

▪ prepared and filed an omnibus reply to three responses to the Debtors' twenty-ninth omnibus objection to claims;

▪ prepared and filed an objection to motion of Palmyra Capital Fund, L.P., Palmyra Capital Institutional Fund, L.P., and Palmyra Capital Off Shore Fund, L.P. to permit late filing of their guarantee claims and an omnibus objection to motions of Joyce L. Rehorst, Dr. Peter Berman, Stephen J. Edelmann and Jacqueline W. Edelmann each seeking leave to amend proofs of claim;

▪ performed research, analyzed, and participated in meetings with the Debtors and the Creditors' Committee and their professionals regarding the approximately $570 billion of guarantee claims asserted against the Debtors;

▪ performed research, analyzed, and participated in meetings with the Debtors and the Creditors' Committee and their professionals regarding the approximately $124 billion of claims asserted by various foreign affiliates;

▪ performed research, analyzed, and participated in meetings with the Debtors, the Creditors' Committee, their professionals and various third party creditors and creditor groups regarding various matters, including the valuation of the approximately 3,800 structured notes issued by Lehman Brothers Treasury Co. B.V., with an aggregate notional amount of approximately $30 billion;

▪ participated in teleconferences with the Debtors regarding the $4 billion claim filed by Canary Wharf Management Limited and certain of its affiliates against the Debtors arising from an alleged guarantee of a lease

agreement for real property located in London, which was formerly occupied by certain non-Debtor foreign affiliates;

- performed legal research and prepared memoranda, including related to guarantee claims, administrative expense claims, employee claims and equity interests, amendments of claims, valuation of claims, late-filed claims, and ipso facto provisions; and

- prepared and filed quarterly report pursuant to Bankruptcy Court Order obtained approving procedures for settlement of claims asserted against the Debtors.

(viii) Other Bankruptcy Motions and Matters

- Negotiated, drafted motion for approval of, and obtained Bankruptcy Court authorization for, a settlement agreement substantially resolving the chapter 11 cases of two of the Debtors: LB Somerset LLC, LB Preferred Somerset LLC;

- prepared tolling agreements and extensions of tolling agreements with various third parties, including foreign and domestic affiliates, in connection with potential avoidance actions;

- obtained order staying activity in avoidance actions commenced by the Debtors and prepared and filed notice of same in 58 adversary proceedings;

- performed legal research, factual diligence, and analysis in connection with avoidance actions commenced by the Debtors; prepared and filed 24 notices of dismissal or prepared settlement agreements after consensual resolution of same;

- developed and drafted motion for Bankruptcy Court approval implementing protocols for alternative dispute resolution and settlement of avoidance actions;

- obtained Bankruptcy Court approval to grant priority liens in collateral posted in connection with foreign exchange hedging transactions; and

- participated in meetings and teleconferences regarding various issues related to JPMorgan Chase Bank NA, including a stipulation, claims, and a collateral disposition agreement.

f.    Litigation Related Issues

(i)    Non-Derivative Adversary Proceedings Preparation and Litigation

- Attended to various issues relating to the following adversary proceedings, including the preparation of various documents, preparation for and participation in depositions, participation in meetings, teleconferences and hearings and prepared summaries of hearings, conducted research, and engaged in discovery and document production regarding same: (i) *Bank of America, N.A. v. LBSF & LBHI* [Adv. Pro. No. 08-01753] (seeking declaratory relief regarding the setoff of certain amounts allegedly owed by the Debtors), (ii) *Phoenix Life Limited v. Lehman Brothers Commercial*

*Corporation* [Adv. Pro. No. 09-01484] (seeking constructive trust on funds allegedly transferred to Lehman Brothers Commercial Corporation by LBIE), (iii) *European Credit Management Limited Relative European Value S.A., et al.,* v. *LCPI* [Adv. Pro. No. 09-01262] (seeking specific performance with respect to certain participations)*, (iv) *LH 1440 v. State Street Bank & Trust Company, LCPI and LBHI* [Adv. Pro. No. 09-01138] (seeking declaratory and injunctive relief with respect to a loan agreement), and (v) *Federal Home Loan Bank of Pittsburgh v. LBSF et al.* [Adv. Pro. No. 09-01393] (seeking to recover assets allegedly held by LBSF);

(ii)    Non-Bankruptcy Litigation

- Drafted a motion to dismiss a portion of the plaintiff's second amended complaint and a reply to plaintiff's opposition to same; responded to a motion to exclude evidence, motions to compel discovery, and motions for sanctions; performed research and participated in meetings and teleconferences in connection with *Simeon Moreno v. Property Asset Management, Inc., Mortgage Electronic Registration Systems, Inc., and Litton Loan Servicing Limited Partnership* [Case No. 08-17715];

- performed legal research and document review; drafted letter brief in opposition to a motion for a protective order; drafted an opposition to claimant's motion *in limine*; and prepared for and participated in a FINRA arbitration proceeding regarding Neuberger Berman, LLC;

- performed legal research and drafted an opposition to a motion to expedite proceedings and a motion to dismiss the complaint in *Cambium Ltd. v. Trilantic Capital Partners III L.P. f/k/a Lehman Brothers Merchant Banking Fund III L.P. and L.B. TCP Associates III L.P. f/k/a Lehman Brothers Merchant Banking Associates L.P.* [Del Ch. Case No. 5857];

- participated in meetings and teleconferences, conducted research and prepared filings in connection with *McReynolds v. Trilantic Capital partners IV L.P. f/k/a Lehman Brothers Merchant Banking Partners IV L.P.* and *Quorum Capital Partners S.L. v. Trilantic Capital Partners IV Europe LUX GP Sarl*; and

- participated in mediations; prepared for and conducted interviews; reviewed, drafted and analyzed complaints, claims and pleadings; performed researched, conducted document review, and responded to document requests in multiple foreign and domestic litigations commenced by and against Lehman entities.

(iii)    2004 Issues

- Prepared and served 7 notices of subpoena, pursuant to an order Weil obtained authorizing the Debtors to issue subpoenas for the production of documents and examine persons and entities, including subpoenas to R3 Capital Partners Master L.P. in connection with certain of its transactions with the Debtors and Barclays Capital Inc. and subpoenas to Lancaster

Pollard and University of Pittsburgh in connection with the valuation of certain derivative transactions;

- prepared and filed a motion to compel Congregation Machne Chaim to respond to a subpoena in connection with a Debtor's efforts to recover amounts due pursuant to an interest rate swap; and

- prepared additional document requests and reviewed documents produced to and by the Debtors.

(iv)   Appeals

- Successfully opposed an appeal of the SunCal Debtors in the United States Court of Appeals for the Second Circuit regarding orders of the Bankruptcy Court (i) approving the unwinding of a transaction between Lehman and certain third parties and (ii) denying the SunCal Debtors' motion for relief from the automatic stay [Second Circuit Case No. 10-3631];

- successfully defended against appeal to the District Court of the Swedbank Decision discussed in greater detail above [District Court Case No. 10-4532];

- obtained entry of an order dismissing an appeal of the Bankruptcy Court's order disallowing claims filed by William Kunz III [District Court Case No. 10-9556];

- successfully opposed a motion to consolidate three appeals in the District Court [District Court Case Nos. 08-11273, 10-10243, and 10-06545]; and

- prepared for and presented oral argument in opposition to the appeals to the District Court by Santa Fe Partners, LLC [District Court Case No. 10-5311] and CVI GV F (LUX) Master S.A.R.L. [District Court Case No. 10-5216] of the Bankruptcy Court's orders dismissing late-filed claims; the District Court ruled in the Debtors' favor and denied the appeals following the Seventh Compensation Period.

g.     US Trustee / SEC / DOJ / Examiner Issues

(i)    US Trustee Related Issues

- Conferred and corresponded with U.S. Trustee on numerous issues, including the facts and circumstances surrounding pending motions and Fee Committee-related issues;

- reviewed and filed monthly operating reports for September, October, November and December 2010, a supplemental operating report for June 2010, and addressed issues related to same; and

- monitored compliance with the UST Guidelines.

(ii)   SEC / DOJ Issues

- As discussed above in greater detail, Weil assisted the Debtors with respect to their preparation and participation in numerous meetings and

teleconferences with various governmental and regulatory entities and as witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and

- performed and coordinated document review, including the collection and production of documents in response to various governmental and regulatory requests and created and reviewed various privilege logs related to same.

(iii)  Examiner Issues

- Conducted internal meetings and teleconferences regarding various issues related to the production of materials to the Examiner and related negotiations; and
- created database and privilege and clawback logs, conducted diligence, and prepared (e.g., redaction and review for confidential information) materials for production to the Examiner.

h.  Fee-Related Issues

(i)  Firm's Own Billing/Fee Applications

- Prepared and filed Weil's sixth interim application for compensation and reimbursement and prepared monthly fee statements in compliance with the Guidelines; and
- addressed various issues raised by the Fee Committee regarding Weil's fifth interim application for compensation and reimbursement and prepared response to same.

(ii)  Firm's Own Retention Issues

- Prepared and filed Weil's sixth and seventh supplemental affidavits in support of the Debtors' engagement of Weil in these cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

(iii)  Third Party Retention/Fee Application/Other Issues

- Obtained Bankruptcy Court approval of, after preparing and filing applications for, (i) the retention of MMOR Consulting, Inc. as a tax services provider, (ii) the amended engagement of Lazard Feres & Co. LLC as investment banker, (iii) Wollmuth Maher & Deutsch LLP as special counsel, (iv) Clyde Click, P.C. as special counsel, and (v) the amended engagement of Jones Day as special counsel;
- prepared applications (i) to expand the scope of the Debtors' retention of Latham & Watkins LLP as special counsel, (ii) to retain Sidley & Austin LLP as special counsel, (iii) to retain Locke, Lord, Bissell & Liddell LLP as special counsel; (iv) to retain Foster, Graham, Milstein & Calisher, LLP as special counsel; and (v) additional applications for certain other professionals.

- assisted the Debtors in negotiating engagement letters with numerous ordinary course professionals, other professionals and certain other parties;
- regularly conferred with certain of the more than Debtors' 200 ordinary course professionals regarding retention procedures and conflicts issues; and
- and participated in meetings with retained professionals, the Creditors' Committee, the U.S. Trustee, and the Fee Committee regarding guidelines, orders, and protocols established for all professionals retained in these chapter 11 cases.

49.    The professional services performed by Weil were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their economic stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

50.    Professionals located in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax departments in numerous offices across three continents provided the necessary services to support the Debtors in the administration of these chapter 11 cases.  Weil's Business Finance & Restructuring practice is preeminent and enjoys an international reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WEIL

51.    As set forth in Exhibit C hereto, Weil has disbursed $1,063,670.14 as expenses incurred in providing professional services during the Seventh Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.  For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require Weil attorneys to work long hours, engage in numerous long distance and international

communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

52.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required Weil's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.   Such services were essential to meet deadlines, timely respond to motions and objections, and to satisfy the extraordinary demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

53.     While Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.   Weil's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.   The reimbursement amounts do not exceed those set forth in the U.S. Trustee Guidelines.

54.     With respect to photocopying expenses, Weil's domestic offices charge all of Weil's clients $.10 per page for black-and-white copies.   With respect to facsimile expenses, in compliance with the U.S. Trustee Guidelines, Weil does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee Guidelines.   Each of these categories of expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.   These charges are intended to cover Weil's direct operating costs,

which costs are not incorporated into the Weil hourly billing rates.  Only clients who actually use

services of the types set forth in <u>Exhibit C</u> are separately charged for such services.  The effect of

including such expenses as part of the hourly billing rates would impose that cost upon clients

who do not require extensive photocopying and other facilities and services.  The amount of the

standard photocopying charge is intended to allow Weil to cover the related expenses of

its photocopying service.  A determination of the actual expenses per page for photocopying,

however, is dependent on both the volume of copies and the total expenses attributable to

photocopying on an annual basis.

55.    In addition, because of the global scope of the Debtors' businesses,

frequent long distance and international telephone calls are required.  On many occasions,

overnight delivery of documents and other materials was required as a result of circumstances

necessitating the use of such express services.  These disbursements are not included in Weil's

overhead for the purpose of setting billing rates.  Weil has made every effort to minimize its

disbursements in these cases.  The actual expenses incurred in providing professional services

were absolutely necessary, reasonable, and justified under the circumstances to serve the needs

of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

56.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Bankruptcy

Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may

award a professional employed under section 327 of the Bankruptcy Code "reasonable

compensation for actual necessary services rendered . . . and reimbursement for actual, necessary

expenses."  <u>Id.</u> § 330(a)(1).  Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

57.    The services for which Weil seeks compensation and reimbursement of expenses in this application were necessary for and beneficial to the Debtors' preservation, the orderly administration of the Debtors' estates, and the prosecution of their chapter 11 cases. Weil has worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process. The professional services were performed expediently and efficiently. Whenever possible, Weil sought to minimize the costs of its services to the Debtors by employing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances. The compensation requested is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. Furthermore, Weil has voluntarily reduced its

requests for charges and expenses incurred during the Seventh Compensation Period by the aggregate amount of $5,940,858.53.  Approval of the compensation for professional services and reimbursement of expenses requested is warranted.

## CONCLUSION

58.    Weil respectfully requests the Bankruptcy Court allow interim compensation for professional services rendered during the Seventh Compensation Period in the amount of $38,071,928.64 consisting of $37,008,258.50, representing 100% of charges incurred during the Seventh Compensation Period, and reimbursement of $1,063,670.14, representing 100% of actual and necessary expenses incurred during the Seventh Compensation Period, without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Seventh Compensation Period, which were not processed at the time of this application, and (ii) direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Bankruptcy Court grant

the relief requested and such other and further relief as is just.


Dated: June 2, 2010
       New York, New York

                                        /s/ Harvey R. Miller
                                        Harvey R. Miller
                                        Lori R. Fife

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

## EXHIBIT A

### (Third Party Representations)

| Lehman Entity Represented | Amount Paid |
|---|---|
| Lehman Commercial Paper Inc. | $428,660.17 |
| Lehman Commercial Paper Inc. | $185,840.45 |
| Lehman Commercial Paper Inc. | $76,901.87 |
| Lehman Commercial Paper Inc. | $65,302.70 |
| Lehman Brothers Holdings Inc. | $44,396.51 |
| Lehman Commercial Paper Inc. | $44,052.75 |
| Lehman Commercial Paper Inc. | $39,627.50 |
| Lehman Commercial Paper Inc. | $36,969.08 |
| Lehman Commercial Paper Inc. | $33,204.57 |
| Lehman Commercial Paper Inc. | $30,592.00 |
| Lehman Commercial Paper Inc. | $12,834.50 |
| Lehman Commercial Paper Inc. | $11,657.86 |
| Lehman Commercial Paper Inc. | $9,991.64 |
| Lehman Commercial Paper Inc. | $9,899.30 |
| Lehman Commercial Paper Inc. | $9,599.40 |
| Lehman Commercial Paper Inc. | $8,106.91 |
| Lehman Commercial Paper Inc. | $7,153.48 |
| Lehman Commercial Paper Inc. | $4,033.62 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $170,118.59 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $94,077.50 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $93,879.19 |
| **Total:** | **$1,416,899.59** |

# **EXHIBIT B**

## **(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                           :
**In re**                                                  :    **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    **08-13555 (JMP)**
                                                           :
                          **Debtors.**                     :    **(Jointly Administered)**
                                                           :
-------------------------------------------------------------------x

## CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF SEVENTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Harvey R. Miller, hereby certify that:

1.     I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("Weil"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy

Court on June 20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases adopted by the Bankruptcy Court on April 19, 1995 (together with the Fee and

Disbursement Guidelines, the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines") and the Second

Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy

Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of

Expenses of Professionals [Docket No. 3102] (the "Administrative Order," and together with the

Local Guidelines and the U.S. Trustee Guidelines, the "Guidelines").

        2.       This certification is made in respect of Weil's application, dated June 2,

2011 (the "Application"), for interim compensation and reimbursement of expenses for the

period commencing October 1, 2010 through and including January 31, 2011 (the "Seventh

Compensation Period") in accordance with the Guidelines.

        3.       In respect of section A.2 of the Fee and Disbursement Guidelines, I certify

that Weil reviewed the fee application and has approved it.

        4.       In respect of section B.1 of the Local Guidelines, I certify that:

        a.       I have read the Application;

        b.       to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

        c.       the fees and disbursements sought are billed at rates in accordance with those customarily charged by Weil and generally accepted by Weil's clients; and

        d.       in providing a reimbursable service, Weil does not make a profit on that service, whether the service is performed by Weil in-house or through a third party.

        5.       In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that Weil has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of Weil's charges and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not always provided within the timetables set forth in the Local Guidelines and the Administrative Order.

6. In respect of section B.3 of the Local Guidelines, I certify that the Debtors, attorneys for the Committee, and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated: June 2, 2011
    New York, New York

/s/ Harvey R. Miller
Harvey R. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors in Possession

**EXHIBIT C**

**EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE
SEVENTH INTERIM PERIOD OF OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

| EXPENSES | AMOUNTS |
|---|---:|
| Business Meals | $39,566.52 |
| Computerized Research / Other Research | $302,953.03 |
| Consultant / Witness / Deposition Fees | $42,617.33 |
| Corporation Service | $40,585.95 |
| Court / Filing / Regulatory Fees | $15,337.03 |
| Court Reporting | $53,344.51 |
| Duplicating | $185,627.38 |
| E-Discovery Services / Document Scanning and Coding | $11,087.66 |
| Legal Notices / Publication | $5,960.34 |
| Messenger / Process Service | $10,324.13 |
| Postage and Express Mail | $15,477.61 |
| Special Rentals/Leases | $103,200.80 |
| Telephone | $4,329.55 |
| Translation Fees | $49,690.36 |
| Travel and Transportation | $183,567.94 |
| **Total:** | **$1,063,670.14** |

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES
RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR SEVENTH
INTERIM PERIOD OF OCTOBER 1, 2010 THROUGH JANUARY 31, 2011**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 0100 | General Case Administration | 187.70 | $52,686.00 |
| 0200 | General Case Strategy Meetings | 227.80 | $160,596.00 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 648.40 | $264,125.00 |
| 0400 | Hearings and Court Communications | 717.90 | $287,652.00 |
| 0500 | Non-Working Travel | 706.40 | $245,396.00 |
| 0600 | Interested Party Communications/Website/Lehman Team Hotline | 175.40 | $115,873.50 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 35.60 | $29,177.00 |
| 1100 | LBI/SIPC Coordination and Issues | 665.20 | $433,258.00 |
| 1200 | Cash Management | 38.70 | $23,859.00 |
| 1300 | Insurance Issues | 61.10 | $35,873.50 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 1,109.20 | $774,520.00 |
| 1700 | Intellectual Property | 101.10 | $61,726.50 |
| 1800 | Tax Issues | 306.90 | $202,022.00 |
| 1900 | Corporate Governance | 385.40 | $192,804.50 |
| 2000 | Other General Business Operation Issues | 165.80 | $116,746.00 |
| 2100 | Intercompany Issues | 250.40 | $159,703.00 |
| 2300 | Real Estate Matters | 12,245.60 | $7,974,308.00 |
| 2400 | Private Equity | 891.30 | $546,991.00 |
| 2500 | All Derivatives (Adversaries, ADR, Claims, etc.) | 20,584.40 | $13,427,302.50 |
| 2600 | Loans/Investments | 816.70 | $476,366.00 |
| 2700 | Domestic Bank and Related Regulatory Issues | 181.40 | $146,902.50 |
| 2800 | International Insolvency Issues | 1,790.70 | $1,231,110.00 |
| 3000 | Non-Derivative Automatic Stay/Safe Harbor Issues | 267.70 | $132,046.00 |
| 3100 | Miscellaneous Asset Sales/363 Issues | 203.90 | $132,888.50 |
| 3200 | Non-Derivative Executory Contracts/365 Issues | 189.90 | $91,920.50 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan | 2,274.90 | $1,601,938.00 |

|      | Implementation |          |               |
|------|----------------|----------|---------------|
| 3600 | Disclosure Statement/Solicitation/Voting | 879.90 | $618,910.50 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation and ADR | 2,707.20 | $1,608,720.00 |
| 3800 | Other Bankruptcy Motions and Matters | 1,737.10 | $909,799.50 |
| 3900 | Non-Derivative Adversary Proceeding Prep and Litigation | 916.50 | $550,227.00 |
| 4000 | Non-Bankruptcy Litigation | 1,440.60 | $739,567.00 |
| 4100 | 2004 Issues | 173.00 | $77,512.50 |
| 4200 | Appeals | 305.10 | $208,090.50 |
| 4300 | US Trustee Related Issues | 25.10 | $20,525.50 |
| 4400 | SEC/DOJ Issues | 6,213.90 | $2,097,544.00 |
| 4500 | Examiner Issues | 644.20 | $338,038.50 |
| 4600 | Firm's Own Billing/Fee Applications | 1,967.50 | $617,668.00 |
| 4700 | Firm's Own Retention Issues | 133.00 | $33,207.00 |
| 4800 | Third Party Retention/Fee Application/Other Issues | 560.10 | $270,657.50 |
| **Total:** | | **62,932.70** | **$37,008.258.50** |