Lindsee P. Granfield
Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Barclays Bank PLC, Barclays Capital
Inc. and their affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., <u>et al</u>. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF BARCLAYS BANK PLC, BARCLAYS CAPITAL INC.
AND THEIR AFFILIATES TO THE MOTION OF THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS PURSUANT TO SECTIONS
105(a) AND 1109(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
<u>RULES 2019 AND 7026 TO ESTABLISH DISCLOSURE PROCEDURES</u>**

Barclays Bank PLC ("<u>Barclays Bank</u>"), Barclays Capital Inc. ("<u>Barclays Capital</u>") and their affiliates (collectively, "<u>Barclays</u>"), by and through their undersigned counsel, hereby submit this objection (the "<u>Objection</u>") to the Motion of the Ad Hoc Group of Lehman Brothers Creditors (the "<u>Ad Hoc Group</u>") Pursuant to Sections 105(a) and 1109(b) of the Bankruptcy Code and Bankruptcy Rules 2019 and 7026 to Establish Disclosure Procedures [D.I. 17014] (the "<u>Motion</u>").[1] In support of its Objection, Barclays respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**BASIS FOR OBJECTION**

1. The Ad Hoc Group, after recently having been ordered by this Court to comply with Rule 2019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),[2] now seeks to impose unprecedented disclosure obligations on virtually any party involved in the Debtors' plan process, including any plan proponent, any participant in plan discovery, any party acting "in cooperation or concert with others," and any party "seeking to participate" in "any formal plan negotiation process." Motion ¶ 4. The proposed disclosure procedures (the "Disclosure Procedures") would require such parties to disclose, *inter alia*, detailed and commercially sensitive information with respect to their claims against the Debtors and the Debtors' material foreign affiliates, including the nature of the claims, when such claims were acquired, and the price paid for such claims. There is no legal or equitable basis for the Ad Hoc Group's attempted wholesale expansion of Bankruptcy Rule 2019, and accordingly, the Motion should be denied.

**A.   The Proposed Disclosure Procedures Have No Basis in Bankruptcy Rule 2019**

2. Barclays is not a member of any committee or otherwise acting in concert with any other parties in interest in these chapter 11 cases, and therefore submits that it is not subject to Bankruptcy Rule 2019. The disclosures required under Bankruptcy Rule 2019 only apply to an "entity or committee [other than an official committee] representing more than one creditor or equity security holder." Fed. R. Bank. P. 2019(a). As this Court recently recognized, the Ad Hoc Group is subject to Bankruptcy Rule 2019 because "for the past two years [it] purported to act not only for itself but as a voice of similarly situated creditors" and filed pleadings "purposefully with a view toward influencing the outcome of the bankruptcy case."

---

[2] See Order Compelling the Ad Hoc Group of Lehman Brothers Creditors to Comply with Federal Rule of Bankruptcy Procedure 2019 and Related Relief, April 18, 2011 [D.I. 16107].

Transcript of Lehman Brothers Hearing Inc. et al. Hearing, dated April 13, 2011 ("Hr'g Tr.") 56:8-10, 56:12-13. Ignoring this holding, the Ad Hoc Group now seeks to impose Bankruptcy Rule 2019 disclosures on *anyone* that proposes a plan, participates in plan discovery, acts in cooperation or concert with others, or seeks to participate in a formal plan negotiation process. The proposed Disclosure Procedures would thus plainly apply to numerous *individual* creditors that do not serve on any ad hoc committee or act on behalf of or in concert with any other creditors and therefore are not subject to Bankruptcy Rule 2019. In fact, the Ad Hoc Group acknowledges that it is the very purpose of the Disclosure Procedures to reach even individual creditors. See Motion ¶¶ 19, 20. This is clearly contrary to Bankruptcy Rule 2019 -- regardless of whether one subscribes to a broad or narrow construction of the term "committee" as used in Bankruptcy Rule 2019,[3] or whether one were to adopt the modified disclosure requirements under the proposed amendments to Bankruptcy Rule 2019 (which are not yet in effect).[4]

3. Further, the proposed Disclosure Procedures not only run afoul of Bankruptcy Rule 2019, but they would, if approved, chill participation of and coordination among creditors in the Debtors' plan process. In fact, the proposed procedures are so vague and overbroad that it is not even clear *who* exactly would be subject to them. For example, the

---

[3] Compare In re Northwest Airlines, Inc., 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (holding that ad hoc committee of equity security holders was subject to Rule 2019 because it was holding itself out as a collective group and thereby "implicitly ask[ing] the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings") and In re Washington Mut., Inc., 419 B.R. 271 (Bankr. D. Del. 2009) (holding that ad hoc noteholder group was subject to Rule 2019) with In re Premier Int'l Holdings, Inc. et al., 423 B.R. 58, 65 (Bankr. D. Del. 2010) (holding that ad hoc group of noteholders was not a committee because it did not "represent any persons other than its members either by consent or operation of law," and thus was not subject to Rule 2019) and In re Philadelphia Newspapers, LLC, 422 B.R. 553, 566 (Bankr. E.D. Pa. 2010) (holding that steering group of pre-petition lenders was not subject to Rule 2019).

[4] Amended Bankruptcy Rule 2019 would apply to "every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interest, and (B) not composed entirely of affiliates or insiders of one another." Fed. R. Bankr. P. 2019(b) (proposed Apr. 26, 2011). These amendments will go into effect on December 1, 2011, unless Congress intercedes.

3

procedures provide no indication at what point a party would be considered to act "in cooperation or concert with others" or "seek[] to participate" in "any formal plan negotiation process." It is foreseeable that many parties would simply avoid any coordination with other creditors or discontinue to participate in the plan process altogether over the concern that they would become subject to onerous disclosure requirements, including with respect to commercially sensitive pricing information concerning their claims. This would not only make the plan process more unwieldy and costly for the Debtors, but would also run counter to the fundamental bankruptcy policy of encouraging creditor participation in the reorganization process. See, e.g., 11 U.S.C. §§ 1109(b),[5] 503(b)(3)(D).[6] See also In re Ionosphere Clubs, Inc. et al., 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) ("The legislative history [behind section 1109(b) of the Bankruptcy Code] indicates that Congress sought to encourage and promote greater participation in reorganization cases.")

4. In support of these unprecedented procedures, the Ad Hoc Group makes essentially two arguments, both of which fail. First, the Ad Hoc Group argues that the Disclosure Procedures are necessary to uncover potentially "conflicting motives arising during plan negotiations" in light of creditors' complex positions across the Lehman capital structure. Motion ¶¶ 18, 21. The Ad Hoc Group, however, makes no showing that such potential conflicts are widespread, that they are any different than those in other multi-national corporate restructurings, or that Bankruptcy Rule 2019 or traditional avenues of discovery under

---

[5] "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or indenture trustee, may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

[6] "After notice and a hearing, there shall be allowed, administrative expenses . . . , including . . . the actual, necessary expenses . . . incurred by . . . a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D).

Bankruptcy Rule 7026 are somehow inadequate to address such concerns. Second, the Ad Hoc Group asserts that the Disclosure Procedures are necessary because certain groups of creditors have not been subjected to the same Bankruptcy Rule 2019 disclosures as the Ad Hoc Group. Whether any specific group of creditors, other than the Ad Hoc Group, should be subject to Bankruptcy Rule 2019, however, is not a matter before the court, and can be addressed separately. Moreover, that Bankruptcy Rule 2019 may not require disclosures by certain creditors is no justification to toss it out entirely and replace it with onerous disclosure burdens on virtually any party involved in the plan process.

**B.    None of the Other Bases Proffered by the Ad Hoc Group Supports Implementing the Proposed Disclosure Procedures**

5. Apparently recognizing that Bankruptcy Rule 2019 does not provide any legal basis for the proposed Disclosure Procedures, the Ad Hoc Group proffers three alternative bases in support of its Motion, each of which, however, fails for a number of reasons.

**1.    Section 1109(b) of the Bankruptcy Code Provides No Authority for the Proposed Disclosure Procedures**

6. The Ad Hoc Group first argues that section 1109(b) of the Bankruptcy Code vests this Court with "inherent" authority to implement the proposed Disclosure Procedures to ensure the integrity of these chapter 11 cases. Motion ¶ 29. This argument has no merit. As an initial matter, the Ad Hoc Group does not make any showing that the integrity of these chapter 11 cases is somehow in peril -- particularly given that Bankruptcy Rule 2019 and traditional avenues of discovery are available. More significantly though, the Ad Hoc Group offers no legal basis for its novel interpretation of section 1109(b); in fact, it even acknowledges that it "is not aware of similar disclosure procedures being implemented in any other cases." Motion ¶ 29. Barclays further submits that the proposed Disclosure Procedures are wholly inconsistent with section 1109(b). Specifically, section 1109(b) merely sets forth who is a party

in interest and thus permitted to appear and be heard in a chapter 11 case.  It is widely acknowledged that section 1109(b) sets a *low* threshold for third party standing in order to sure that "anyone holding a direct financial stake in the outcome of the case [has] an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest."  See Teligent, Inc. v. K&L Gates LLP (In re Teligent, Inc.), ___ F.3d ___, 2011 WL 1678401 at * 6 (2d Cir. May 5, 2011) (quoting Collier on Bankruptcy).  See also Highland Holdings and Zito I, L.P. v. Century/ML Cable Venture, 2007 WL 2405689 at *2 n. 3 (S.D.N.Y. Aug. 24, 2007) ("The term 'party in interest is construed broadly."); In re Johns-Manville Corp., 36 B.R. 743, 747-49 (Bankr. S.D.N.Y. 1984) (noting that the term "party in interest" is an elastic concept and is to be construed broadly).  The proposed Disclosure Procedures seek information far beyond anything necessary to show that one is a party in interest under section 1109(b).  Indeed, most parties' standing as creditors would be apparent from a review of the Debtors' claims register, which is publicly available at http://chapter11.epiqsystems.com/lehman. The Disclosure Procedures, if approved, would turn section 1109(b) on its head by imposing *additional* onerous barriers to participate in this chapter 11 proceedings.[7]  This Court should reject the Ad Hoc Group's contorted effort to misappropriate section 1109(b) for these purposes.

2. **Bankruptcy Rule 7026 Also Provides No Authority for the Proposed Disclosure Procedures**

7. The Ad Hoc Group next argues that this Court can order the Disclosure Procedures because the information sought thereunder is "clearly discoverable" pursuant to Bankruptcy Rule 7026 and there can be no expectation of privacy in light of Bankruptcy Rule 2019.  Motion ¶ 30.  This argument is without merit.  Whether information is discoverable under

---

[7] The Ad Hoc Group also notes in passing, without any explanation, that the proposed procedures are "necessary and appropriate in light of the uniqueness of these cases."  Motion ¶ 29.  That these cases may be unique in some not further explained way is certainly no excuse to discard the Bankruptcy Code and Bankruptcy Rules.

Bankruptcy Rule 7026, including considerations of relevance and burdensomeness, is a question that can only be determined on a case by case basis, not in wholesale fashion as proposed by the Disclosure Procedures. Moreover, since discovery under Bankruptcy Rule 7026 remains fully available -- subject to this Court's Plan Discovery Order[8] -- it is unclear why additional, onerous disclosure burdens should be ordered.[9]

        8.      Further, the Ad Hoc Group's suggestion that the Court can simply expand the scope of the Plan Discovery Order is nothing more than an impermissible collateral attack on that order. Motion ¶ 30. As this Court recognized at the April 13, 2011 hearing, the scope of the discovery protocol under the Plan Discovery Order, which includes the Notice of Intent (as defined in the Plan Discovery Order), was heavily negotiated among the parties. See Hr'g. Tr. 134:9-14. While the Ad Hoc Group filed a limited objection to the Debtors' plan discovery motion,[10] it did not object to the adequacy of the disclosures required in the Notice of Intent,[11]

---

[8] Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues, April 14, 2011 [D.I. 16003] (the "Plan Discovery Order").

[9] Barclays is not currently a Participant under the Plan Discovery Order. Barclays reserves its rights to file an objection to the confirmation of one or more chapter 11 plans of the Debtors and, if it files one or more such objections, to become a Participant pursuant to the Plan Discovery Order.

[10] Limited Objection of the Ad Hoc Group of Lehman Brothers Creditors to the Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure for Authorization to Establish and Implement Procedures in Connection With Discovery Related to Plan Confirmation, April 8, 2011 [D.I. 15800] (the "Limited Plan Discovery Objection"). As the Limited Plan Discovery Objection makes clear, the Ad Hoc Group was actively involved in discussions with the Debtors concerning the establishment of the discovery protocol.

[11] The Plan Discovery Order provides that each Notice of Intent must contain:

> (i) the name and address of the creditor or party in interest (or in the case of a group, the names and addresses of each of its members) and the name of the law firm(s) and individual attorneys representing such creditor or party in interest or group of creditors or parties in interest; and (ii) at the option of the Proposed Participant, either, (A) a list of all proof(s) of claim filed either individually or by the group provided there have not been any material changes to such proof(s) of claim since their filing, or (B) a statement setting forth the types and aggregate amount(s) of claim(s) currently held by such Proposed Participant as against each of the Debtors.

Plan Discovery Order at A2.

nor did it appeal the Plan Discovery Order. In addition, the Plan Discovery Order explicitly provides that "[t]he Groups are solely for the purpose of facilitating Plan Discovery as set forth in this Order (and for no other purpose, including, without limitation, for purposes of Bankruptcy Rule 2019)." Plan Discovery Order at A7 n.3. It is thus clear that the parties *and this Court* rejected the type of disclosure obligations that the Ad Hoc Group is now advancing. Moreover, many parties have now become Participants (as defined in the Plan Discovery Order) in reliance on the requirements of the Plan Discovery Order. It would be fundamentally unfair to subject them now to disclosure obligations that were excluded in the Plan Discovery Order, which is now a final order.

9.  As to the Ad Hoc Group's assertion that there can be no expectation of privacy in light of Bankruptcy Rule 2019, that assertion is completely disingenuous given that the Disclosure Procedures seek a wholesale expansion of the Bankruptcy Rule 2019 to apply its requirements to *individual* parties who never had any reason to believe that they would ever be subject to such disclosures.

**3. Section 105(a) of the Bankruptcy Code Also Provides No Authority for the Proposed Disclosure Procedures**

10.  Finally, the Ad Hoc Group argues that this Court can order the Disclosure Procedures pursuant section 105(a) of the Bankruptcy Code to prevent an "abuse of process." Motion ¶ 31. This argument also fails. For one, section 105(a) is only a limited authority that cannot be employed to achieve a result that is inconsistent with the Bankruptcy Code. As noted by the Court of Appeals for the Second Circuit, it "is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." Smart World Techs., LLC, et al. v. Uunet Tech., Inc. (In re Smart World Tech., LLC), 423 F.3d 166, 184 (2d Cir.2005). See also In re Schuessler, 386 B.R.

458, 462 (Bankr. S.D.N.Y. 2008) (noting that section 105(a) "is not a 'roving writ,' or an authorization to make substantive law or reorder contracts"); <u>In re Adelphia Commc'ns Corp. et al.</u>, 2006 WL 1529357 at *5 (Bankr. S.D.N.Y. 2006) (noting that "I invoke section 105(a) with restraint, and never inconsistently with, or to circumvent, other provisions of the Code"). As already discussed at length above, the proposed Discovery Procedures are inconsistent with section 1109(b) of the Bankruptcy Code and Bankruptcy Rule 2019.

11.     Moreover, "abuse of process" under section 105(a) is not an open-ended invitation to invent new procedures, but instead limited authority to sanction incidents of fraud, bad faith or other misconduct. See, e.g., <u>In re Globo Comunicacoes e Participacoes S.A.</u>, 317 B.R. 235, 247 (S.D.N.Y. 2004) (noting that courts have imposed sanctions for abuse of process where parties willfully misled the bankruptcy court, filed clearly frivolous petitions in order to interpose delay on creditors, or failed to comply with court orders); <u>Adelphia Commc'ns Corp.</u>, 2006 WL1529357 at *5 (ordering TRO to avoid "blatant interference with the Debtors' reorganization"). The Ad Hoc Group has not made any showing -- in fact, it has not even argued -- that any of the parties that would be subject to the Disclosure Procedures have misled the Court or engaged in any misconduct. Accordingly, section 105(a) is simply unavailable.

[*Remainder of page intentionally left blank.*]

## **CONCLUSION**

For the foregoing reasons, Barclays respectfully requests that the Court deny the Motion, and grant such other relief as the Court deems appropriate.

Dated: New York, New York
June 8, 2011

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                              By:   /s/ Lindsee P. Granfield

                              Lindsee P. Granfield
                              Lisa M. Schweitzer
                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000

                              *Attorneys for Barclays Bank PLC, Barclays Capital Inc. and their affiliates*