**Exhibit 9**

000581

PAUL J. COUCHOT -- State Bar No. 131934
pcouchot@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for Administratively
Consolidated Debtors-in-Possession
(the "Voluntary Debtors")

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
**RUS MILIBAND & SMITH P.C.**
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

Counsel for SunCal Management LLC and
SCC Acquisitions Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:08-bk-17206-ES |
| PALMDALE HILLS PROPERTY, AND ITS RELATED DEBTORS, | Jointly Administered With Case Nos. 8:08-17209-ES; 8:08-17240-ES; 8:08-17224-ES; 8:08-17242-ES; 8:08-17225-ES; 8:08-17245-ES; 8:08-17227-ES; 8:08-17246-ES; 8:08-17230-ES; 8:08-17231-ES; 8:08-17236-ES; 8:08-17248-ES; 8:08-17249-ES; 8:08-17573-ES; 8:08-17574 ES; 8:08-17575-ES; 8:08-17404-ES; 8:08-17407-ES; 8:08-17408-ES; 8:08-17409-ES; 8:08-17458-ES; 8:08-17465-ES; 8:08-17470-ES; 8:08-17472-ES; and 8:08-17588-ES |
| Jointly Administered Debtors and Debtors-in-Possession | |

Affects:
☒ All Debtors
☐ Palmdale Hills Property, LLC
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☐ SunCal Summit Valley, LLC
☐ SunCal Emerald Meadows LLC
☐ SunCal Bickford Ranch, LLC
☐ Acton Estates, LLC
☐ Seven Brothers LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
☐ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☐ Tesoro SF LLC

*Caption Continued on Next Page*

Chapter 11 Proceedings

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR ORDER DISALLOWING CERTAIN CLAIMS HELD BY LEHMAN ALI INC. AND LEHMAN COMMERCIAL PAPER INC.**

DATE:    June 9, 2011
TIME:    10:30 a.m.
PLACE:   Courtroom 5A

MAINDOCS-#160140-v1-SCC_Rqst_Jud_Ntc_Recoupment_Objection.DOC

000582

1

*Continued from Previous Page*
☐ LBL-SunCal Oak Valley, LLC

2

☐ SunCal Heartland, LLC
☐ LBL-SunCal Northlake, LLC

3

☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC

4

☐ SunCal PSV, LLC

5

☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC

6

☐ SunCal Oak Knoll, LLC

7        Acton Estates LLC ("Acton"), SunCal Bickford Ranch LLC ("Bickford"), SunCal Emerald

8   Meadows LLC ("Emerald Meadows"), Palmdale Hills Property, LLC ("Palmdale Hills"), SunCal

9   Summit Valley LLC ("Summit Valley"), SCC Communities LLC ("SCC Communities"), and Tesoro

10  SF LLC ("Tesoro"), and SunCal Management, LLC ("SunCal Management") (collectively, the

11  "SunCal Moving Parties"), hereby request that the Court take judicial notice of the following

12  documents which are all filed with the United States Bankruptcy Court in the above entitled chapter

13  11 case:

14        1.       Proof of Claim No. 6 filed by LCPI against Acton Estates, LLC, in case no. 8:08-bk-

15  17236 ES. Proof of Claim 6-1 was filed on March 30, 2009. An amended claim no. 6-2 was filed by

16  LCPI on March 30, 2009.  An Amended Claim no. 6-3 was filed by LCPI on September 21, 2009, a

17  true and correct copy of which is attached as exhibit "1".

18        2.       Proof of Claim No. 16 filed by LCPI against SunCal Bickford Ranch LLC, case no.

19  8:08-bk-17231 ES. Proof of Claim 16-1 was filed by LCPI on March 30, 2009. An amended claim no.

20  16-2 was filed by LCPI on March 30, 2009.  An amended claim no. 16-3 was filed by LCPI on

21  September 21, 2009, a true and correct copy of which is attached as exhibit "2".

22        3.       Proof of Claim No. 7 filed by LCPI against SunCal Emerald Meadows LLC, case no.

23  8:08-bk-17230 ES. Proof of Claim 7-1 was filed on March 30, 2009. An amended claim no. 7-2 was

24  filed by LCPI on September 21, 2009, a true and correct copy of which is attached as exhibit "3".

25        4.       Proof of Claim No. 65 filed by LCPI against Palmdale Hills Property LLC, case no.

26  8:08-bk-17206 ES. Proof of Claim 65 was filed on March 30, 2009. An amended claim no. 65-4 was

27  filed by LCPI on September 21, 2009, a true and correct copy of which is attached as exhibit "4".

28        5.       Proof of Claim No. 23 filed by Lehman ALI against SJD Partners Ltd., case no. 8:08-

-2-

MAINDOCS-#160140-v1-SCC_Rqst_Jud_Ntc_Recoupment_Objection.DOC

1    bk-17242 ES. Proof of Claim 23-1 and 23-2 were filed on March 30, 2009. A true and correct copy of

2    Claim 23-2 is attached as exhibit "5".

3         6.    Proof of Claim No. 12 filed by LCPI against SunCal Summit Valley LLC, case no.

4    8:08-bk-17227 ES. Proof of Claim 12-1 was filed by LCPI on March 30, 2009. An amended claim no.

5    12-2 was filed by LCPI on September 21, 2009, a true and correct copy of which is attached as exhibit

6    "6".

7         7.    Proof of Claim No. 9 filed by Lehman ALI Inc. against SCC Communities LLC, case

8    no. 8:08-bk-17573 ES. Proof of Claim 9-1 was filed by Lehman ALI Inc. on March 30, 2009, a true

9    and correct copy of which is attached as exhibit "7".

10        8.    Proof of Claim No. 7 filed by Lehman ALI Inc. against Tesoro SF LLC, case no. 8:08-

11   bk-1747. Proof of Claim 7-1 was filed by Lehman ALI Inc. on March 30, 2009, a true and correct

12   copy of which is attached as exhibit "8".

13        9.    Proof of Claim No. 16 filed by OVC Holdings LLC against Oak Valley, case no. 8:08-

14   bk-17404. Proof of Claim 16-1 was filed by OVC Holdings on March 30, 2009. An amended claim

15   no. 16-2 was filed on September 21, 2009, a true and correct copy of which is attached as exhibit "9".

16        10.   Proof of Claim No. 6 filed by Northlake Holdings LLC against Northlake, case no.

17   8:08-bk-17408. Proof of Claim 6-1 was filed by Northlake Holdings LLC on March 30, 2009. An

18   amended claim no. 6-2 was filed on September 21, 2009, a true and correct copy of which is attached

19   as exhibit "10".

20        11.   Proof of Claim No. 12 filed by Lehman ALI against PSV, case no. 8:08-bk-17465.

21   Proof of Claim 12-1 was filed by Lehman ALI on March 30, 2009. An amended claim 12-2 was filed

22   by Lehman ALI on September 21, 2009, a true and correct copy of which is attached as exhibit "11".

23        12.   Proof of Claim No. 9 filed by Lehman ALI Inc. against SunCal Heartland, LLC, case

24   no. 8:08-bk-17407. Proof of Claim 9-1 was filed by Lehman ALI Inc. on March 30, 2009. An

25   amended claim no. 9-2 was filed by Lehman ALI, Inc., on September 21, 2009, a true and correct copy

26   of which is attached as exhibit "12".

27        13.   Proof of Claim No. 21 filed by Lehman ALI Inc. against SunCal Marblehead, LLC,

28   case no. 8:08-bk-17409 ES. Proof of Claim 21-1 was filed by Lehman ALI Inc. on March 30, 2009.

-3-

1    An amended claim no. 21-2 was filed by Lehman ALI, Inc., on September 21, 2009, a true and correct

2    copy of which is attached as exhibit "13".

3        14.    The *Order On Objections To And Motion For Order Striking Claims Filed By The*

4    *Lehman Entities* entered by the Court on October 2, 2010, as Docket No. 653, and attached hereto as

5    exhibit "14".

6        15.    The *Findings of Fact and Conclusions of Law in Support of Order on Objections to*

7    *Claims* entered by the Court on October 2, 2010, as Docket No. 652, and attached hereto as exhibit

8    "15".

9        16.    The *Complaint for: 1) Breach of Contract, and 2) Breach of Covenant of Good Faith*

10   *and Fair Dealing* filed on March 24, 2011, with the Superior Court For the State of California For the

11   County of Orange, Central Justice Center, Case No. 30-2011-00460847-CU-BC-CJC, and attached

12   hereto as exhibit "16".

13   DATED: April 11, 2011                **WINTHROP COUCHOT**
                                          **PROFESSIONAL CORPORATION**
14

15
                                         By:___*/s/ Paul J. Couchot*_____
16                                              Paul J. Couchot, Esq.
                                                Sean Okeefe, Esq.
17                                              Peter W. Lianides, Esq.
                                                General Insolvency Counsel for Administratively
18                                              Consolidated Debtors-in-Possession

19

20

21

22

23

24

25

26

27

28

-4-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR ORDER DISALLOWING CERTAIN CLAIMS HELD BY LEHMAN ALI INC. AND LEHMAN COMMERCIAL PAPER INC.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 12, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On April 11, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 12, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 12, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#160140-v1-SCC_Rqst_Jud_Ntc_Recoupment_Objection.DOC

000586

**NEF SERVICE LIST**

1

2
- Selia M Acevedo    sacevedo@millerbarondess.com,
3
  mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams    jadams@sycr.com
4
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
5
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd    fednotice@tclaw.net
6
- Mark Bradshaw    mbradshaw@shbllp.com
7
- Gustavo E Bravo    gbravo@smaha.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
8
- Brendt C Butler    bbutler@mandersonllp.com
- Andrew W Caine    acaine@pszyjw.com
9
- Carollynn Callari    ccallari@venable.com
- Dan E Chambers    dchambers@jmbm.com
10
- Shirley Cho    scho@pszjlaw.com
11
- Vonn Christenson    vrc@paynefears.com
- Brendan P Collins    bpcollins@bhfs.com
12
- Vincent M Coscino    vcoscino@allenmatkins.com, cmurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com,
13
  pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
14
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivan
15
  hill.com
- Ana Damonte    ana.damonte@pillsburylaw.com
16
- Vanessa S Davila    vsd@amclaw.com
- Melissa Davis    mdavis@shbllp.com
17
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
18
- Donald T Dunning    ddunning@dunningLaw.com
19
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
20
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
21
- Alan J Friedman    afriedman@irell.com
22
- Steven M Garber    steve@smgarberlaw.com
- Christian J Gascou    cgascou@gascouhopkins.com
23
- Barry S Glaser    bglaser@swjlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
24
- Eric D Goldberg    egoldberg@stutman.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
25
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
26
- Kelly C Griffith    bkemail@harrisbeach.com
- Matthew Grimshaw    mgrimshaw@rutan.com
27
- Kavita Gupta    kgupta@winthropcouchot.com
- Asa S Hami    ahami@morganlewis.com
28
- Michael J Hauser    michael.hauser@usdoj.gov

-6-

- D Edward Hays    ehays@marshackhays.com
- Michael C Heinrichs    mheinrichs@omm.com
- Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleh L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leih.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com

-7-

1
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
2
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
3
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
4
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
5
- Michael K Sugar    msugar@irell.com
6
- Cathy Ta    cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
7
- David A Tilem    davidtilem@tilemlaw.com,
malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
8
- James E Till    jtill@thelobelfirm.com,
jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
9
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
10
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
11
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
12
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
13
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
14
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
15
- Marc A. Zimmerman    joshuasdaddy@att.net

16
SERVICE VIA MAIL on 4/11/11

17

| Bickford 16, SJDPartners23 Comm9, Tesoro7 | Heartland9, Marblehead21, PSV12 Acton6Emerald 7, SunValley17, PalmdaleHills65 SummitValley12, Northlake6, OakValley |
|---|---|
| Lehman Commercial Paper Inc. Lehman ALI, Inc. Attn: Gerald Pietroforte 1271 Sixth Ave., 46th Fl. New York, NY 10020 | Lehman ALI, Inc. OVC Holdings, LLC Northlake Holdings LLC Lehman Commercial Paper Inc. Attn: Jeff Fitts 1271 Sixth Ave., 46th Fl. New York, NY 10020 |
| All | |
| Weil, Gotshal & Manges LLP Attn: Shai Y. Waisman 767 Fifth Ave. New York, NY 10153 | |

-8-

MAINDOCS-#160140-v1-SCC_Rqst_Jud_Ntc_Recoupment_Objection.DOC

000589

# EXHIBIT "1"

000590

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT **Central** DISTRICT OF **California** | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Acton Estates, LLC | | Case Number: 08-17236 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman<br>1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue<br>New York, New York 10020    New York, New York 10153<br><br>Telephone number: (646) 333-4027 | Court Claim Number: 6<br>*(If known)*<br><br>Filed on: 3/30/2009 |
| Name and address where payment should be sent (if different from above):<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts<br>1271 Sixth Avenue, 46th Floor<br>New York, New York 10020<br>Telephone number: (646) 333-4027 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:    $ **See Exhibit "A"**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br><br>2. Basis for Claim: **See Exhibit "A"**<br>(See instruction #2 on reverse side.)<br>3. Last four digits of any number by which creditor identifies debtor:    **8C50**<br>3a. Debtor may have scheduled account as:<br>(See instruction #3a on reverse side.)<br>4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other<br>Describe:<br><br>Value of Property:$ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>If any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"<br><br>Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A" | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).<br><br>**Amount entitled to priority:**<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | |

| | FOR COURT USE ONLY |
|---|---|
| Date: 09/17/2009    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:    Jeff Fitts, Duly Authorized Signatory<br>Signature: | |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

American LegalNet, Inc.
www.FormsWorkflow.com

DOCS_LA:205685.1

Exhibit 1, Page 5

000591

# EXHIBIT "2"

000592

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: SunCal Bickford Ranch, LLC | Case Number: 08-17231 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc.

Name and address where notices should be sent:
Lehman Commercial Paper Inc., Attn: Jeff Fitts       Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020              New York, New York 10153

Telephone number: (646) 333-4027

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 16
*(If known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Lehman Commercial Paper Inc., Attn: Jeff Fitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020

Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $ See Exhibit "A"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: See Exhibit "A"
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:    8C50

3a. Debtor may have scheduled account as:
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:

Value of Property:$ Undetermined   Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $ See Exhibit "A"   Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"   Amount Unsecured: $ See Exhibit "A"

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 9/1/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Print:   Jeff Fitts, Duly Authorized Signatory   Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

American LegalNet, Inc.
www.FormsWorkflow.com

DOCS_LA:205688.1

Exhibit 2, Page 960

000593

# EXHIBIT "3"

000594

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: SunCal Emerald Meadows, LLC | Case Number: 08-17230 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman<br>1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue<br>New York, New York 10020    New York, New York 10153<br>Telephone number: (646) 333-4027 | Court Claim Number: 7<br>*(If known)*<br><br>Filed on: 3/30/2009 |
| Name and address where payment should be sent (if different from above):<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts<br>1271 Sixth Avenue, 46th Floor<br>New York, New York 10020<br>Telephone number: (646) 333-4027 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**    $ See Exhibit "A"<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim: See Exhibit "A"**<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:**    8C50<br>**3a. Debtor may have scheduled account as:**<br>(See instruction #3a on reverse side.) | |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☒ Other<br>Describe:<br><br>Value of Property:$ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ See Exhibit "A"    Basis for perfection:  See Exhibit "A"<br><br>Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A" | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | Amount entitled to priority:<br><br>$ _____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | FOR COURT USE ONLY |
|---|---|
| Date 09/10/2009    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:    Jeff Fitts, Duly Authorized Signatory<br><br>Signature: | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

American LegalNet, Inc.
www.FormsWorkflow.com

DOCS_LA:205687.1

EXHIBIT "4"

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT **Central** DISTRICT OF **California** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Palmdale Hills Property, LLC | Case Number: 08-17206 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts      Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman<br>1271 Sixth Avenue, 46th Floor      with a copy to:      767 Fifth Avenue<br>New York, New York  10020      New York, New York  10153<br><br>Telephone number: (646) 333-4027 | Court Claim Number: 65<br>*(If known)*<br><br>Filed on: 3/30/2009 |
| Name and address where payment should be sent (if different from above):<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts<br>1271 Sixth Avenue, 46th Floor<br>New York, New York  10020<br>Telephone number: (646) 333-4027 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**      $ **See Exhibit "A"**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim: See Exhibit "A"**<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy |
| **3. Last four digits of any number by which creditor identifies debtor:**   **8C51**<br>**3a. Debtor may have scheduled account as:**<br>(See instruction #3a on reverse side.) | petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☒ Other<br>**Describe:**<br><br>**Annual Interest Rate** As specified in the Loan Documents, as defined in<br>**Value of Property:** $ Undetermined      Exhibit "A"<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>**if any:** $ See Exhibit "A"   **Basis for perfection: See Exhibit "A"**<br><br>**Amount of Secured Claim:** $ See Exhibit "A"   **Amount Unsecured:** $ See Exhibit "A" | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date: **04/17/2009** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:      Jeff Fitts, Duly Authorized Signatory<br><br>Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 4, Page 2973

000597

# EXHIBIT "5"

000598

**E-FILED**

MAR 3 0 2009

23

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | DOCKET NO. | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: SJD PARTNERS, LTD. | Case Number: 8:08-bk-17242 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc.

Name and address where notices should be sent:

Lehman ALI, Inc., Attn: Gerald Pietroforte      Weil, Gotshal & Manges LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020     New York, New York 10153

Telephone number:
(646) 333-4027

| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Lehman ALI, Inc., Attn: Gerald Pietroforte 1271 Sixth Avenue, 46th Floor New York, New York 10020 Telephone number: (646) 333-4027 | ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:  $ See Exhibit "1" | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **See Exhibit "1"**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____ 7A49

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:

Value of Property:$ Undetermined   Annual Interest Rate: As specified in the Loan Documents, as defined in Exhibit "1"

Amount of arrearage and other charges as of time case filed included in secured claim.

If any: See Exhibit "1" Basis for perfection: See Exhibit "1"

Amount of Secured Claim: $ See Exhibit "1" Amount Unsecured: $ See Exhibit "1"

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| DATE: 3/ /2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Print:    Gerald Pietroforte, Managing Director Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

NY2:\1981326\04\16QS%04! DOC\58399.0003

# EXHIBIT "6"

000600

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: SunCal Summit Valley, LLC | Case Number: 08-17227 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman Commercial Paper Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman<br>1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue<br>New York, New York 10020    New York, New York 10153<br><br>Telephone number: (646) 333-4027 | Court Claim Number: 12<br>*(if known)*<br><br>Filed on: 3/30/2009 |
| Name and address where payment should be sent (if different from above):<br>Lehman Commercial Paper Inc., Attn: Jeff Fitts<br>1271 Sixth Avenue, 46th Floor<br>New York, New York 10020<br>Telephone number: (646) 333-4027 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:    $ **See Exhibit "A"**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br><br>2. Basis for Claim: **See Exhibit "A"**<br>(See instruction #2 on reverse side.)<br><br>3. Last four digits of any number by which creditor identifies debtor:    **8C50**<br>3a. Debtor may have scheduled account as:<br>(See instruction #3a on reverse side.)<br><br>4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☒ Other<br>Describe:<br><br>Value of Property: $ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"<br><br>Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A" | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).<br><br>Amount entitled to priority:<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | |

| | FOR COURT USE ONLY |
|---|---|
| Date: 9/21/2009    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:    Jeff Fitts, Duly Authorized Signatory<br><br>Signature: | |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

DOCS_LA:205689.1

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 6, Page 3369

000601

# EXHIBIT "7"

000602

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|
| Name of Debtor: SCC COMMUNITIES LLC | Case Number: 8:08-bk-17573 |

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc. | |
| Name and address where notices should be sent:<br><br>Lehman ALI, Inc., Attn: Gerald Pietroforte<br>1271 Sixth Avenue, 46th Floor       with a copy to:       Weil, Gotshal & Manges LLP, Attn: Shai Y. Waisman<br>New York, New York 10020                                                     767 Fifth Avenue<br>                                                                                              New York, New York 10153<br><br>Telephone number:<br>(646) 333-4027 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
| Name and address where payment should be sent (if different from above):<br><br>Lehman ALI, Inc., Attn: Gerald Pietroforte<br>1271 Sixth Avenue, 46th Floor<br>New York, New York 10020<br><br>Telephone number:<br>(646) 333-4027 | |

| | |
|---|---|
| 1.  Amount of Claim as of Date Case Filed:    See Exhibit "1"<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5<br><br>☒  Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2.  Basis for Claim: See Exhibit "1"<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days |
| 3.  Last four digits of any number by which creditor identifies debtor: ___ 8A97<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(4). |
| 4.  Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:    ☒ Real Estate    ☐ Motor Vehicle    ☒ Other<br>Describe:<br><br>Value of Property:$ Undetermined   Annual Interest Rate: As specified in the Loan Documents, as defined in Exhibit "1"<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ See Exhibit "1" Basis for perfection: See Exhibit "1"<br><br>Amount of Secured Claim: $ See Exhibit "1" Amount Unsecured: $ See Exhibit "1" | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)( ___ ). |
| 7.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | Amount entitled to priority:<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| DATE: 3/ /2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:    Gerald Pietroforte, Managing Director<br><br>Signature: | FOR COURT USE ONLY |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

NY2:\1983326\01\163S5401.DOC\58399\0061

**Exhibit 7, Page 4180**

# EXHIBIT "8"

000604

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|
| Name of Debtor: TESORO SF, LLC | Case Number: 8:08-bk-17575 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc.

**Name and address where notices should be sent:**

Lehman ALI, Inc., Attn: Gerald Pietroforte
1271 Sixth Avenue, 46th Floor          with a copy to:
New York, New York 10020

Weil, Gotshal & Manges LLP, Attn: Shai Y. Waisman
767 Fifth Avenue
New York, New York 10153

Telephone number:
(646) 333-4027

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where payment should be sent (if different from above):**

Lehman ALI, Inc., Attn: Gerald Pietroforte
1271 Sixth Avenue, 46th Floor
New York, New York 10020

Telephone number:
(646) 333-4027

□ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:  $ See Exhibit "1"**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5

☒  Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim: See Exhibit "1"**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:____ 8A97**

**3a.  Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate    □ Motor Vehicle    ☒ Other
Describe:

Value of Property:$ Undetermined  Annual Interest Rate: As specified in the Loan Documents, as defined in Exhibit "1"

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Exhibit "1"  Basis for perfection: See Exhibit "1"

Amount of Secured Claim: $ See Exhibit "1"  Amount Unsecured: $ See Exhibit "1"

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| DATE:  3/  /2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Print:  Gerald Pietroforte, Managing Director<br><br>Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

NY2:\1981520\04\16385040.DOC\58399.0003

# EXHIBIT "9"

000606

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: LB-L-SunCal Oak Valley, LLC | Case Number: 08-17404 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): OVC Holdings, LLC

☒ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
OVC Holdings LLC, Attn: Jeff Fitts        Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020        New York, New York 10153

Telephone number: (646) 333-4027

Court Claim Number: 16
*(If known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
OVC Holdings LLC, Attn: Jeff Fitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $ See Exhibit "A"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim: See Exhibit "A"**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**    8A93

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe:

Value of Property: $ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A"

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 07/1/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Print:    Jeff Fitts, Duly Authorized Signatory

Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

DOCS_LA:205695.1

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT "10"

000608

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: LB-L-SunCal Northlake, LLC | Case Number: 08-17408 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Northlake Holdings, LLC

☒ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Northlake Holdings LLC, Attn: Jeff Pitts   Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor   with a copy to:   767 Fifth Avenue
New York, New York 10020   New York, New York 10153

Telephone number: (646) 333-4027

**Court Claim Number:** 6
*(If known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Northlake Holdings LLC, Attn: Jeff Pitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $ See Exhibit "A"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: See Exhibit "A"
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:    8A73

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe:

Value of Property:$ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A"

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 7/21/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Print:    Jeff Pitts, Duly Authorized Signatory
Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

DOCS_LA:205697.1

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 10, Page 4471

000609

# EXHIBIT "11"

000610

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT **Central** DISTRICT OF **California** | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: SunCal PSV, LLC | Case Number: 08-17465 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc. | ☒ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|

Name and address where notices should be sent:
Lehman ALI, Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020    New York, New York 10153

Telephone number: (646) 333-4027

Court Claim Number: 12
*(If known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Lehman ALI, Inc., Attn: Jeff Fitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ **See Exhibit "A"**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim: See Exhibit "A"**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** 8A95

   3a. Debtor may have scheduled account as:
   (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe:

Value of Property: $ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A"

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

Amount entitled to priority:

$ ____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 8/11/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Print:    Jeff Fitts, Duly Authorized Signatory
Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

American LegalNet, Inc.
www.FormsWorkflow.com

DOCS_LA:205691.1

Exhibit 11, Page 4973

000611

# EXHIBIT "12"

000612

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: SunCal Heartland, LLC | Case Number: 08-17407 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc.

☒ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Lehman ALI, Inc., Attn: Jeff Fitts    Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
1271 Sixth Avenue, 46th Floor    with a copy to:    767 Fifth Avenue
New York, New York 10020    New York, New York 10153

Telephone number: (646) 333-4027

**Court Claim Number:** 9
*(if known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Lehman ALI, Inc., Attn: Jeff Fitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $ See Exhibit "A"

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **See Exhibit "A"**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:    8A94

3a. Debtor may have scheduled account as:
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe:

Value of Property:$ Undetermined    Annual Interest Rate As specified in the Loan Documents, as defined in Exhibit "A"

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Exhibit "A"    Basis for perfection: See Exhibit "A"

Amount of Secured Claim: $ See Exhibit "A"    Amount Unsecured: $ See Exhibit "A"

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 9/15/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>Print:    Jeff Fitts, Duly Authorized Signatory<br>Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

DOCS_LA:205694.1

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT "13"

000614

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Central DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: SunCal Marblehead, LLC | Case Number: 08-17409 |
|---|---|

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Lehman ALI, Inc.

Name and address where notices should be sent:
Lehman ALI, Inc., Attn: Jeff Pitts
1271 Sixth Avenue, 46th Floor   with a copy to:
New York, New York 10020

Weil, Gotshal & Manges, LLP, Attn: Shai Y. Waisman
767 Fifth Avenue
New York, New York 10153

Telephone number: (646) 333-4027

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 21
*(If known)*

Filed on: 3/30/2009

Name and address where payment should be sent (if different from above):
Lehman ALI, Inc., Attn: Jeff Pitts
1271 Sixth Avenue, 46th Floor
New York, New York 10020
Telephone number: (646) 333-4027

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:   $ **See Exhibit "A"**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **See Exhibit "A"**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:   **8A94**

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe:

Value of Property: $ **Undetermined**   Annual Interest Rate **As specified in the Loan Documents, as defined in Exhibit "A"**

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ **See Exhibit "A"**   Basis for perfection: **See Exhibit "A"**

Amount of Secured Claim: $ **See Exhibit "A"**   Amount Unsecured: $ **See Exhibit "A"**

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: **02/1/2009** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Print:   Jeff Pitts, Duly Authorized Signatory

Signature: | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

DOCS_LA:205693.1

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 13, Page 5573

000615

# EXHIBIT "14"

000616

1   PAUL J. COUCHOT - State Bar No. 131934
    pcouchot@winthropcouchot.com
    SEAN OKEEFE - State Bar No. 122417
2   **WINTHROP COUCHOT, P.C.**
    660 Newport Center Drive, Fourth Floor
3   Newport Beach, CA 92660
    Telephone: (949) 720-4165
4   Facsimile: (949) 720-4111
5   General Insolvency Counsel for
    Administratively Consolidated Debtors-in-Possession and
6   Counsel for SCC Acquisitions, Inc.

7   LOUIS R. MILLER, State Bar No. 54141
    smiller@millerbarondess.com
8   MARTIN PRITIKIN, State Bar. No. 210845
    **MILLER BARONDESS, LLP**
9   1999 Avenue of the Stars, Suite 1000
    Los Angeles, California 90067
10  Telephone:  (310) 552-4400
    Facsimile:  (310) 552-8400
11  Special Litigation Counsel

```
          FILED & ENTERED

             OCT 02 2009

   CLERK U.S. BANKRUPTCY COURT
   Central District of California
   BY kent      DEPUTY CLERK
```

CHANGES MADE BY COURT

12              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
13                  SANTA ANA DIVISION

14  In re                              | Case No. 8:08-bk-17206-ES
    Palmdale Hills Property, LLC, and its Related
15  Debtors,                           | Jointly Administered With Case Nos.
              Jointly Administered Debtors | 8:08-bk-17209-ES; 8:08-bk-17240-ES;
16            and Debtors-in-Possession    | 8:08-bk-17224-ES; 8:08-bk-17242-ES;
                                          | 8:08-bk-17225-ES; 8:08-bk-17245-ES;
17  Affects:                           | 8:08-bk-17227-ES; 8:08-bk-17246-ES;
    ☒ All Debtors                       | 8:08-bk-17230-ES; 8:08-bk-17231-ES;
18  ☐ Palmdale Hills Property, LLC,     | 8:08-bk-17236-ES; 8:08-bk-17248-ES;
    ☐ SunCal Beaumont Heights, LLC      | 8:08-bk-17249-ES; 8:08-bk-17573-ES;
19  ☐ SCC/Palmdale,                     | 8:08-bk-17574-ES; 8:08-bk-17575-ES;
    ☐ SunCal Johannson Ranch, LLC       | 8:08-bk-17404-ES; 8:08-bk-17407-ES;
20  ☐ SunCal Summit Valley, LLC         | 8:08-bk-17408-ES; 8:08-bk-17409-ES;
    ☐ SunCal Emerald Meadows LLC        | 8:08-bk-17458-ES; 8:08-bk-17465-ES;
21  ☐ SunCal Bickford Ranch, LLC        | 8:08-bk-17470-ES; 8:08-bk-17472-ES;
    ☐ Acton Estates, LLC                | and 8:08-bk-17588-ES
22  ☐ Seven Brothers LLC
    ☐ SJD Partners, Ltd.                | Chapter 11 cases
23  ☐ SJD Development Corp.
    ☐ Kirby Estates, LLC                | **FINDINGS OF FACT AND CONCLUSIONS**
24  ☐ SunCal Communities I, LLC         | **OF LAW IN SUPPORT OF ORDER ON**
    ☐ SunCal Communities III, LLC       | **OBJECTIONS TO CLAIMS**
25  ☐ SCC Communities LLC
    ☐ North Orange Del Rio Land, LLC    | DATE: June 30, 2009
26  ☐ Tesoro SF, LLC                    | TIME: 2:00 p.m.
    ☐ LBL-SunCal Oak Valley, LLC        | PLACE: Courtroom 5A
27  ☐ SunCal Heartland, LLC
28

Order#11205#434e9729-2475-4e26-86f4-952e6c52da53
**Exhibit 14, Page 5926**

000617

1

Caption Continued on Next Page
Continued from Previous Page

2  ☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC

3  ☐ SunCal Century City, LLC
☐ SunCal PSV, LLC

4  ☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC

5  ☐ SunCal Oak Knoll, LLC

6        The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed By*

7  *The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above ("Voluntary

8  Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee ("Trustee") for LB-

9  L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake LLC, SunCal

10  Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal

11  Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the Voluntary Debtors and

12  Trustee Debtors are collectively referred to as the "Debtors") came on for hearing before the

13  undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in Courtroom 5A of the

14  above-entitled Court. The Voluntary Debtors appeared by and through their general insolvency

15  counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and Paul J. Couchot, and

16  their special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. The

17  Chapter 11 Trustee appeared by and through his special litigation counsel, Miller Barondess LLP, by

18  Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc. ("Lehman Commercial"), Lehman

19  ALI, Inc., Northlake Holdings and OVC Holdings (collectively the "Lehman Entities") appeared by

20  and through their counsels, Pachulski Stang Ziehl & Jones LLP, by Richard Pachulski, and Weil,

21  Gotshal & Manges LLP, by Edward Soto. Other appearances, if any, are as reflected in the Court's

22  record of the hearing.

23        The Court having read and considered the Objection and supporting evidence, Lehman's

24  Consolidated Opposition, and the Debtors' Reply thereto, and having heard and considered the

25  arguments of counsel, hereby makes the following *Findings of Fact and Conclusions of Law* in

26  support of the concurrently filed *Order*.

27  ///

28

-2-

Exhibit 14, Page 5927

000618

///

# I

## **FINDINGS OF FACT**

1.1.    The following parties, *inter alia*, received notice of the *Objection*: The Lehman Entities, Fenway Capital, LLC ("Fenway Capital") and JPMorgan Chase, N.A. ("JP Morgan"). (Notice of Hearing, Dkt. No. 352).

1.2.    Lehman Commercial and Fenway Capital entered into that certain *Master Repurchase Agreement* ("MRA") as of August 22, 2008, a copy of which is attached to the *Amended Declaration Of Sean A. OKeefe In Support Of Debtors' Objections To And Motion For Order Striking Claims Filed By The Lehman Entities (Replacing Prior Declaration)* (the "OKeefe Decl.") as Exhibits "B," "C" and "D."

1.3.    The MRA states that it is the parties' intent to engage in the *purchase and sale* of the "Purchased Securities," which includes the "Sold Loans" as defined herein. (Ex. "B," ¶ 6, P. WC000013, OKeefe Decl.).

1.4.    The MRA states that the selling party therein, Lehman Commercial, is selling "All of Seller's interest in the Purchased Securities" to Fenway Capital. (Ex. "B," ¶ 8, P. WC000014, OKeefe Decl.).

1.5.    In the MRA, Lehman Commercial represents that it holds or is authorized sell "All of Seller's interest in the Purchased Securities." (Ex. "B," ¶ 10, P. WC000013, OKeefe Decl.).

1.6.    The MRA is an industry form that is accompanied by "Guidance Notes" promulgated by the Bond Market Association. (Ex. "CC," WC000242, OKeefe Decl.). These notes specifically state that the agreement (the "MRA) continues to provide "explicit characterization of transactions as purchases and sales" and describes this characterization as being "essential" for repo participants. (Ex. "CC," WC000242, OKeefe Decl.).

1.7.    The MRA states that it is governed by the laws of the State of New York. (Ex. "B," ¶ 16, P. WC000018, OKeefe Decl.).

1.8.    The Declaration of Irena Goldstein, counsel for Fenway Capital, submitted by the Lehman Entities, states that ". . . while it is correct that Fenway purchases interests in the loans

-3-

1  pursuant to a repurchase agreement" and "[m]ost importantly, however, Fenway purchase loans."

2  Goldstein Decl., ¶ 5, ¶ 7.

3      1.9.   The following loans (the "Sold Loans") were sold to Fenway Capital pursuant to the

4  MRA on August 22, 2008:

| Loan | Claimant | Proof of Claim No. (collectively, the "Claims") |
|---|---|---|
| SunCal Communities I Loan | Lehman Commercial | 1, 2, 6, 7, 12, 16 |
| Ritter Ranch Loan | Lehman Commercial | 65 |
| SunCal PSV Loan | Lehman ALI | 12 |
| SunCal Delta Coves Loan | Lehman ALI | 21 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | 9, 21 |
| Sun Cal Oak Valley Loan | OVC Holdings, LLC | 16 |
| SunCal Northlake Loan | Northlake Holdings, LLC | 6 |

(Ex. "B –I," OKeefe Decl.).

    1.10.   The Lehman Entities filed the proofs of claims listed in the above table with respect to the Sold Loans (the "Proofs of Claim"). (Ex. "P" through "BB," OKeefe Declaration).

    1.11.   In the section of the Proofs of Claim (the official form – first page) where a claimant is required to list the "Name Of The Creditor," each of the Lehman Entities filing the Proofs of Claim listed their own name, and each of the Lehman Entities listed their own address on the form as the location for notice and for payment. (Ex. "P" through "BB," OKeefe Declaration).

    1.12.   No reference to the word "agent" appears in the Proofs of Claim, except in the Exhibit "1" thereto. In this exhibit, each Lehman Entities states that the claim is made on behalf of the identified Lehman Entity, "as agent for the lenders." However, the "lenders" are not identified anywhere in the Proofs of Claim or in the exhibit thereto. (Ex. "P" through "BB," OKeefe Declaration).

    1.13.   None of the Lehman Entities have filed the statement required by Federal Rule of Bankruptcy Procedure 2019(a).

-4-

## II

## CONCLUSIONS OF LAW

2.1.    The filing of a claim in a bankruptcy case is governed, *inter alia*, by 11 U.S.C. § 501 and Federal Rule of Bankruptcy Procedure 3001.

2.2.    Fed.R.Bankr.P. 3001(e)(1) provides "If a claim has been transferred other than for security before proof of claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee."

2.3.    At the hearing on the Objection, the Lehman Entities contended that the transfer of the Sold Loans pursuant to the MRA was "for security" within the meaning of Fed.R.Bankr.P. 3001(e)(1), and that they continued to have the right to file the Proofs of Claim with respect to these loans as the "owner." The Court rejects this position on the following grounds:

A)    The MRA is governed by New York law. In *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 67 B.R. 557 (D.N.J.1986) the District Court succinctly addressed the application of New York law on the issue of contract interpretation, on similar facts:

> Where the intention of the parties is clearly and unambiguously set forth in the agreement, effect must be given to the parties' intent as revealed in the language used without regard to extrinsic evidence. *See, e.g., Midland Carpet Corp. v. Franklin Associated Properties*, 90 N.J.Super. 42, 46, 216 A.2d 231 (A.D.1966); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 307 N.Y.S.2d 449, 451-52, 255 N.E.2d 709, 711-12 (1969). The objective intent of the parties expressed or apparent in the writing controls the interpretation of a contract. *Friedman v. Tappan Development Corp.*, 22 N.J. 523, 531, 126 A.2d 646 (1956); *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171, 350 N.Y.S.2d 895, 305 N.E.2d 90 (1973). The undisclosed, subjective intent of the parties has no bearing on contract construction. *Krosnowski v. Krosnowski*, 22 N.J. 376, 386, 126 A.2d 182 (1956); *In re Smith's Will*, 254 N.Y. 283, 289, 172 N.E. 499 (1930).

67 B.R. at 586.

-5-

Exhibit 14, Page 5930

000621

1        B)      The language in the MRA is clear with respect to the objective intent of the

2    parties thereto: The parties intended to enter into a *true purchase and sale transaction*, not a transfer

3    "for security." To the extent the parties had an undisclosed subjective intent to the contrary, it is not

4    relevant to this Court's analysis and no evidence has been submitted evidencing such an intent in any

5    event.

6        2.4      The Court hereby concludes that the transfer of the Sold Loans pursuant to the MRA

7    to Fenway Capital was intended to be, and was in fact, a true sale, not a transfer "for security."

8    Accordingly, the Lehman Entities were not authorized to file the Proofs of Claim pursuant to the

9    Fed.R.Bankr.P. 3001(e)(1) on the basis of the clause in this rule excepting instances where the claim

10   is transferred "for security."

11       2.5      The Lehman Entities could not properly file the Proofs of Claim as "creditors."

12   When they listed themselves as the "creditors" on the Proofs of Claim, this was a misrepresentation.

13       2.6      The Lehman Entities' status as "authorized agent" for a creditor for purposes of

14   Fed.R.Bank.P. 3001(b) will be determined by the Court at later hearing.

15

16                                          ###

17

18

19

20

21

22

23

24   DATED: October 2, 2009

*Erithe A. Smith*

United States Bankruptcy Judge

25

26

27

28

-6-

Exhibit 14, Page 5931

000622

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

The foregoing document described: **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 2, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 11, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 2, 2009 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

-7-

Exhibit 14, Page 5932

000623

SERVICE BY E-MAIL

- Michael J Hauser    michael.hauser@usdoj.gov
- Kerri A Lyman    klyman@irell.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
- 

-8-

Exhibit 14, Page 5933

000624

1

### SERVICE LIST FOR ENTERED ORDER

2      Notice is given by the Court that a judgment or order entitled **FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** was
3   entered on the date indicated as "Entered" on the first page of this judgment or order and will be
served in the manner indicated below:

4

5   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document will
6   be served on the following person(s) by the Court via NEF and hyperlink to the judgment or order.
As of July 2, 2009 the following person(s) are currently on the Electronic Mail Notice List for this
7   bankruptcy case or adversary proceeding to receive NEF transmission at the e-mail address(es)
indicated below:

8

9

10
☒ Service information continued on next page

11

12   **SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this
judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the
13   address(es) indicated below:

14

15

16

17

18
☐ Service information continued on next page

19   **TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this
judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve
20   a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or
e-mail on the following person(s) and/or entity(ies) at the address(es), facsimile transmission
21   number(s) and/or e-mail address(es) indicated below:

22

23

24   • Richard Pachulski – rpachulzki@pszjlaw.com
   • Edward Soto - Edward.soto@weil.com
25   •

26
☐ Service information continued on next page

27

28
-9-

**Exhibit 14, Page 5934**

000625

NEF SERVICE BY COURT

- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com,
  emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com

-10-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Mike D Neue    mneue@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Raymond A Policar    hausermouzes@sbcglobal.net
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- Martha E Romero    Romero@mromerolawfirm.com
- William D Schuster    bills@allieschuster.org
- Michael St James    ecf@stjames-law.com
- Todd L Turoci    tturoci@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach    jwallach@bergerkahn.com
- Christopher T Williams    ctwilliams@venable.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Arnold H Wuhrman    Wuhrman@serenitylls.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

-11-

# EXHIBIT "15"

000628

FILED & ENTERED

OCT 02 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent          DEPUTY CLERK

1  PAUL J. COUCHOT - State Bar No. 131934
   pcouchot@winthropcouchot.com
   SEAN OKEEFE - State Bar No. 122417
2  **WINTHROP COUCHOT, P.C.**
   660 Newport Center Drive, Fourth Floor
3  Newport Beach, CA 92660
   Telephone: (949) 720-4165
4  Facsimile: (949) 720-4111

5  General Insolvency Counsel for
   Administratively Consolidated Debtors-in-Possession and   CHANGES MADE BY COURT
6  Counsel for SCC Acquisitions, Inc.

7  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
8  MARTIN PRITIKIN, State Bar. No. 210845
   **MILLER BARONDESS, LLP**
9  1999 Avenue of the Stars, Suite 1000
   Los Angeles, California 90067
10 Telephone:  (310) 552-4400
   Facsimile:  (310) 552-8400

11 Special Litigation Counsel

                    UNITED STATES BANKRUPTCY COURT
12                   CENTRAL DISTRICT OF CALIFORNIA
                         SANTA ANA DIVISION
13
14 In re                                    Case No. 8:08-bk-17206-ES
   Palmdale Hills Property, LLC, and its Related
   Debtors,                                 Jointly Administered With Case Nos.
15            Jointly Administered Debtors   8:08-bk-17209-ES; 8:08-bk-17240-ES;
                 and Debtors-in-Possession   8:08-bk-17224-ES; 8:08-bk-17242-ES;
16                                           8:08-bk-17225-ES; 8:08-bk-17245-ES;
                                             8:08-bk-17227-ES; 8:08-bk-17246-ES;
17 Affects:                                  8:08-bk-17230-ES; 8:08-bk-17231-ES;
   ☒ All Debtors                             8:08-bk-17236-ES; 8:08-bk-17248-ES;
18 ☐ Palmdale Hills Property, LLC,           8:08-bk-17249-ES; 8:08-bk-17573-ES;
   ☐ SunCal Beaumont Heights, LLC            8:08-bk-17574-ES; 8:08-bk-17575-ES;
19 ☐ SCC/Palmdale,                           8:08-bk-17404-ES; 8:08-bk-17407-ES;
   ☐ SunCal Johannson Ranch, LLC             8:08-bk-17408-ES; 8:08-bk-17409-ES;
20 ☐ SunCal Summit Valley, LLC               8:08-bk-17458-ES; 8:08-bk-17465-ES;
   ☐ SunCal Emerald Meadows LLC              8:08-bk-17470-ES; 8:08-bk-17472-ES;
21 ☐ SunCal Bickford Ranch, LLC              and 8:08-bk-17588-ES
   ☐ Acton Estates, LLC
22 ☐ Seven Brothers LLC                      Chapter 11 cases
   ☐ SJD Partners, Ltd.
23 ☐ SJD Development Corp.
   ☐ Kirby Estates, LLC                      **FINDINGS OF FACT AND CONCLUSIONS**
24 ☐ SunCal Communities I, LLC               **OF LAW IN SUPPORT OF ORDER ON**
   ☐ SunCal Communities III, LLC             **OBJECTIONS TO CLAIMS**
25 ☐ SCC Communities LLC
   ☐ North Orange Del Rio Land, LLC          DATE: June 30, 2009
26 ☐ Tesoro SF, LLC                          TIME: 2:00 p.m.
   ☐ LBL-SunCal Oak Valley, LLC              PLACE: Courtroom 5A
27 ☐ SunCal Heartland, LLC
28

1

*Caption Continued on Next Page*
*Continued from Previous Page*

2  ☐ LBL-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC

3  ☐ SunCal Century City, LLC
☐ SunCal PSV, LLC

4  ☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC

5  ☐ SunCal Oak Knoll, LLC

6        The hearing on the *Debtors' Objections To And Motion For Order Striking Claims Filed By*

7  *The Lehman Entities* (the "Objection") filed by the debtors-in-possession listed above ("Voluntary

8  Debtors") and by Mr. Steven M. Speier, as the duly-appointed Chapter 11 trustee ("Trustee") for LB-

9  L-SunCal Oak Valley LLC, SunCal Heartland LLC, LB-L-SunCal Northlake LLC, SunCal

10  Marblehead LLC, SunCal Century City LLC, SunCal PSV LLC, Delta Coves Venture LLC, SunCal

11  Torrance LLC, and SunCal Oak Knoll LLC (the "Trustee Debtors") (the Voluntary Debtors and

12  Trustee Debtors are collectively referred to as the "Debtors") came on for hearing before the

13  undersigned United States Bankruptcy Judge on June 30, 2009, at 2:00 P.M., in Courtroom 5A of the

14  above-entitled Court. The Voluntary Debtors appeared by and through their general insolvency

15  counsel, Winthrop Couchot Professional Corporation, by Sean A. O'Keefe and Paul J. Couchot, and

16  their special litigation counsel, Miller Barondess LLP, by Louis Miller and Martin Pritikin. The

17  Chapter 11 Trustee appeared by and through his special litigation counsel, Miller Barondess LLP, by

18  Louis Miller and Martin Pritikin. Lehman Commercial Paper Inc. ("Lehman Commercial"), Lehman

19  ALI, Inc., Northlake Holdings and OVC Holdings (collectively the "Lehman Entities") appeared by

20  and through their counsels, Pachulski Stang Ziehl & Jones LLP, by Richard Pachulski, and Weil,

21  Gotshal & Manges LLP, by Edward Soto. Other appearances, if any, are as reflected in the Court's

22  record of the hearing.

23        The Court having read and considered the Objection and supporting evidence, Lehman's

24  Consolidated Opposition, and the Debtors' Reply thereto, and having heard and considered the

25  arguments of counsel, hereby makes the following *Findings of Fact and Conclusions of Law* in

26  support of the concurrently filed *Order*.

27  ///

28

-2-

1   ///

2                                              I

3                                   **FINDINGS OF FACT**

4        1.1.    The following parties, *inter alia*, received notice of the *Objection*: The Lehman

5   Entities, Fenway Capital, LLC ("Fenway Capital") and JPMorgan Chase, N.A. ("JP Morgan").

6   (Notice of Hearing, Dkt. No. 352).

7        1.2.    Lehman Commercial and Fenway Capital entered into that certain *Master Repurchase*

8   *Agreement* ("MRA") as of August 22, 2008, a copy of which is attached to the *Amended Declaration*

9   *Of Sean A. OKeefe In Support Of Debtors' Objections To And Motion For Order Striking Claims*

10  *Filed By The Lehman Entities (Replacing Prior Declaration)* (the "OKeefe Decl.") as Exhibits "B,"

11  "C" and "D."

12       1.3.    The MRA states that it is the parties' intent to engage in the *purchase and sale* of the

13  "Purchased Securities," which includes the "Sold Loans" as defined herein. (Ex. "B," ¶ 6, P.

14  WC000013, OKeefe Decl.).

15       1.4.    The MRA states that the selling party therein, Lehman Commercial, is selling "All of

16  Seller's interest in the Purchased Securities" to Fenway Capital. (Ex. "B," ¶ 8, P. WC000014,

17  OKeefe Decl.).

18       1.5.    In the MRA, Lehman Commercial represents that it holds or is authorized sell "All of

19  Seller's interest in the Purchased Securities." (Ex. "B," ¶ 10, P. WC000013, OKeefe Decl.).

20       1.6.    The MRA is an industry form that is accompanied by "Guidance Notes" promulgated

21  by the Bond Market Association. (Ex. "CC," WC000242, OKeefe Decl.). These notes specifically

22  state that the agreement (the "MRA) continues to provide "explicit characterization of transactions

23  as purchases and sales" and describes this characterization as being "essential" for repo participants.

24  (Ex. "CC," WC000242, OKeefe Decl.).

25       1.7.    The MRA states that it is governed by the laws of the State of New York. (Ex. "B," ¶

26  16, P. WC000018, OKeefe Decl.).

27       1.8.    The Declaration of Irena Goldstein, counsel for Fenway Capital, submitted by the

28  Lehman Entities, states that ". . . while it is correct that Fenway purchases interests in the loans

-3-

Exhibit 15, Page 5939

000631

pursuant to a repurchase agreement" and "[m]ost importantly, however, Fenway purchase loans."

Goldstein Decl., ¶ 5, ¶ 7.

1.9.    The following loans (the "Sold Loans") were sold to Fenway Capital pursuant to the

MRA on August 22, 2008:

| Loan | Claimant | Proof of Claim No. (collectively, the "Claims") |
|---|---|---|
| SunCal Communities I Loan | Lehman Commercial | 1, 2, 6, 7, 12, 16 |
| Ritter Ranch Loan | Lehman Commercial | 65 |
| SunCal PSV Loan | Lehman ALI | 12 |
| SunCal Delta Coves Loan | Lehman ALI | 21 |
| SunCal Marblehead/ Heartland Loan | Lehman ALI | 9, 21 |
| Sun Cal Oak Valley Loan | OVC Holdings, LLC | 16 |
| SunCal Northlake Loan | Northlake Holdings, LLC | 6 |

(Ex. "B –I," OKeefe Decl.).

1.10.    The Lehman Entities filed the proofs of claims listed in the above table with respect

to the Sold Loans (the "Proofs of Claim"). (Ex. "P" through "BB," OKeefe Declaration).

1.11.    In the section of the Proofs of Claim (the official form – first page) where a claimant

is required to list the "Name Of The Creditor," each of the Lehman Entities filing the Proofs of

Claim listed their own name, and each of the Lehman Entities listed their own address on the form as

the location for notice and for payment. (Ex. "P" through "BB," OKeefe Declaration).

1.12.    No reference to the word "agent" appears in the Proofs of Claim, except in the

Exhibit "1" thereto. In this exhibit, each Lehman Entities states that the claim is made on behalf of

the identified Lehman Entity, "as agent for the lenders." However, the "lenders" are not identified

anywhere in the Proofs of Claim or in the exhibit thereto. (Ex. "P" through "BB," OKeefe

Declaration).

1.13.    None of the Lehman Entities have filed the statement required by Federal Rule of

Bankruptcy Procedure 2019(a).

-4-

1                                              **II**

2                                **CONCLUSIONS OF LAW**

3        2.1.    The filing of a claim in a bankruptcy case is governed, *inter alia*, by 11 U.S.C. § 501

4   and Federal Rule of Bankruptcy Procedure 3001.

5        2.2.    Fed.R.Bankr.P. 3001(e)(1) provides "If a claim has been transferred other than for

6   security before proof of claim has been filed, the proof of claim may be filed only by the transferee or

7   an indenture trustee."

8        2.3.    At the hearing on the Objection, the Lehman Entities contended that the transfer of the

9   Sold Loans pursuant to the MRA was "for security" within the meaning of Fed.R.Bankr.P. 3001(e)(1),

10  and that they continued to have the right to file the Proofs of Claim with respect to these loans as the

11  "owner." The Court rejects this position on the following grounds:

12              A)       The MRA is governed by New York law. In *Matter of Bevill, Bresler &*

13  *Schulman Asset Management Corp.*, 67 B.R. 557 (D.N.J.1986) the District Court succinctly addressed

14  the application of New York law on the issue of contract interpretation, on similar facts:

15                  Where the intention of the parties is clearly and unambiguously set forth in the
16                  agreement, effect must be given to the parties' intent as revealed in the language
17                  used without regard to extrinsic evidence. *See, e.g., Midland Carpet Corp. v.*
18                  *Franklin Associated Properties,* 90 N.J.Super. 42, 46, 216 A.2d 231 (A.D.1966);
19                  *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,* 25 N.Y.2d 535, 307
                    N.Y.S.2d 449, 451-52, 255 N.E.2d 709, 711-12 (1969). The objective intent of
20                  the parties expressed or apparent in the writing controls the interpretation of a
21                  contract. *Friedman v. Tappan Development Corp.,* 22 N.J. 523, 531, 126 A.2d
22                  646 (1956); *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169,
23                  171, 350 N.Y.S.2d 895, 305 N.E.2d 90 (1973). The undisclosed, subjective intent
24                  of the parties has no bearing on contract construction. *Krosnowski v. Krosnowski,*
25                  22 N.J. 376, 386, 126 A.2d 182 (1956); *In re Smith's Will,* 254 N.Y. 283, 289,
                    172 N.E. 499 (1930).
26

27  67 B.R. at 586.

28
                                              -5-

Exhibit 15, Page 5941

08-13555-mg   Doc 17497-4   Filed 06/08/11   Entered 06/08/11 12:43:49   Exhibits
Case 8:08-bk-17206-ES   Doc 652   Filed 10/02/09   Entered 10/02/09 13:00:37   Desc
Main Document   Page 6 of 11

9-15   Pg 54 of 196

1            B)     The language in the MRA is clear with respect to the objective intent of the

2    parties thereto: The parties intended to enter into a *true purchase and sale transaction*, not a transfer

3    "for security." To the extent the parties had an undisclosed subjective intent to the contrary, it is not

4    relevant to this Court's analysis and no evidence has been submitted evidencing such an intent in any

5    event.

6        2.4     The Court hereby concludes that the transfer of the Sold Loans pursuant to the MRA

7    to Fenway Capital was intended to be, and was in fact, a true sale, not a transfer "for security."

8    Accordingly, the Lehman Entities were not authorized to file the Proofs of Claim pursuant to the

9    Fed.R.Bankr.P. 3001(e)(1) on the basis of the clause in this rule excepting instances where the claim

10   is transferred "for security."

11       2.5     The Lehman Entities could not properly file the Proofs of Claim as "creditors."

12   When they listed themselves as the "creditors" on the Proofs of Claim, this was a misrepresentation.

13       2.6     The Lehman Entities' status as "authorized agent" for a creditor for purposes of

14   Fed.R.Bank.P. 3001(b) will be determined by the Court at later hearing.

15

16                           ###

17

18

19

20

21

22

23                         *Erithe A. Smith*

24   DATED: October 2, 2009                    United States Bankruptcy Judge

25

26

27

28

-6-

1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2

# PROOF OF SERVICE OF DOCUMENT

3

4

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

5

6

The foregoing document described: **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

7

8

9

I.  <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 2, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

10

11

☒ Service information continued on attached page

12

II.  <u>**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):</u>
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

13

14

15

16

17

☐   Service information continued on attached page

18

III.  <u>**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):</u> Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 11, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

19

20

21

22

☒ Service information continued on attached page

23

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

24

| July 2, 2009 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

25

26

27

28

-7-

Exhibit 15, Page 5943

000635

1

### SERVICE BY E-MAIL

2

- Michael J Hauser    michael.hauser@usdoj.gov
3
- Kerri A Lyman    klyman@irell.com
- James M Miller    jmiller@millerbarondess.com
4
- Louis R Miller    smiller@millerbarondess.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
5
- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com
6
-
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

1

## SERVICE LIST FOR ENTERED ORDER

2

    Notice is given by the Court that a judgment or order entitled **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER ON OBJECTIONS TO CLAIMS** was

3

entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

4

<u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>:

5

Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document will

6

be served on the following person(s) by the Court via NEF and hyperlink to the judgment or order. As of July 2, 2009 the following person(s) are currently on the Electronic Mail Notice List for this

7

bankruptcy case or adversary proceeding to receive NEF transmission at the e-mail address(es) indicated below:

8

9

10

☒ Service information continued on next page

11

**<u>SERVED BY THE COURT VIA U.S. MAIL</u>:**  A copy of this notice and a true copy of this

12

judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the

13

address(es) indicated below:

14

15

16

17

18

☐ Service information continued on next page

19

**<u>TO BE SERVED BY THE LODGING PARTY</u>:**  Within 72 hours after receipt of a copy of this

20

judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or

21

e-mail on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or e-mail address(es) indicated below:

22

23

24

- Richard Pachulski – rpachulzki@pszjlaw.com
- Edward Soto - Edward.soto@weil.com

25

- 

26

☐ Service information continued on next page

27

28

-9-

Exhibit 15, Page 5945

000637

1

NEF SERVICE BY COURT

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Joseph M Adams    jadams@sycr.com
- Raymond H Aver    ray@averlaw.com
- James C Bastian    jbastian@shbllp.com
- John A Boyd    fednotice@tclaw.net
- Dan E Chambers    dchambers@jmbm.com
- Shirley Cho    scho@pszjlaw.com
- Vonn Christenson    vrc@paynefears.com
- Vincent M Coscino    emurdoch@allenmatkins.com
- Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com
- Jonathan S Dabbieri    dabbieri@shlaw.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Caroline Djang    crd@jmbm.com
- Donald T Dunning    ddunning@dunningLaw.com
- Joseph A Eisenberg    jae@jmbm.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Richard W Esterkin    resterkin@morganlewis.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Alan J Friedman    afriedman@irell.com
- Robert P Goe    kmurphy@goeforlaw.com
- Eric D Goldberg    egoldberg@stutman.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Asa S Hami    ahami@morganlewis.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com
- Michelle Hribar    mhribar@rutan.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Stephen M Judson    sjudson@fablaw.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Douglas M Neistat    twilliams@greenbass.com

-10-

1
- Mike D Neue   mneue@thelobelfirm.com
- Robert Nida   Rnida@castlclawoffice.com
2
- Penelope Parmes   pparmes@rutan.com
- Ronald B Pierce   ronald.pierce@sdma.com
3
- Raymond A Policar   hausermouzes@sbcglobal.net
- Cassandra J Richey   cmartin@pprlaw.net
4
- Debra Riley   driley@allenmatkins.com
- Martha E Romero   Romero@mromerolawfirm.com
5
- William D Schuster   bills@allieschuster.org
6
- Michael St James   ecf@stjames-law.com
- Todd L Turoci   tturoci@aol.com
7
- United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
- Jason Wallach   jwallach@bergerkahn.com
8
- Christopher T Williams   ctwilliams@venable.com
- David M Wiseblood   dwiseblood@seyfarth.com
9
- Arnold H Wuhrman   Wuhrman@serenitylls.com
10
- Dean A Ziehl   dziehl@pszjlaw.com, dziehl@pszjlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

Exhibit 15, Page 5947

000639

**EXHIBIT "10"**

000640

1  PAUL J. COUCHOT -- State Bar No. 131934
    pcouchot@winthropcouchot.com
2  **WINTHROP COUCHOT**
    **PROFESSIONAL CORPORATION**
3  660 Newport Center Drive, Fourth Floor
    Newport Beach, CA 92660
4  Telephone: (949) 720-4100
    Facsimile: (949) 720-4111
5
    General Insolvency Counsel for Administratively
6  Consolidated Debtors-in-Possession (the "Voluntary
    Debtors")
7
    RONALD RUS - State Bar No. 67369
8    rrus@rusmiliband.com
    JOEL S. MILIBAND - State Bar No. 77438
9    jmiliband@rusmiliband.com
    **RUS MILIBAND & SMITH**
10  **A PROFESSIONAL CORPORATION**
    2211 Michelson Drive, Seventh Floor
11  Irvine, California 92612
    Telephone: (949) 752-7100
12  Facsimile:  (949) 252-1514

    Attorneys for SunCal Management LLC
13
                    **UNITED STATES BANKRUPTCY COURT**
14                    **CENTRAL DISTRICT OF CALIFORNIA**
                         **SANTA ANA DIVISION**
15
    In re                                  | Case No. 8:08-bk-17206-ES
16                                          | Jointly Administered With Case Nos. 8:08-bk-17209-ES;
    Palmdale Hills Property, LLC, and its  | 8:08-bk-17240-ES; 8:08-bk-17224-ES; 8:08-bk-17242-ES;
17  Related Debtors.                        | 8:08-bk-17225-ES; 8:08-bk-17245-ES; 8:08-bk-17227-ES;
                                            | 8:08-bk-17246-ES; 8:08-bk-17230-ES; 8:08-bk-17231-ES;
                    Jointly Administered Debtors | 8:08-bk-17236-ES; 8:08-bk-17248-ES; 8:08-bk-17249-ES;
18                    and Debtors-in-Possession | 8:08-bk-17573-ES; 8:08-bk-17574-ES; 8:08-bk-17575-ES;
                                            | 8:08-bk-17404-ES; 8:08-bk-17407-ES; 8:08-bk-17408-ES;
19                                          | 8:08-bk-17409-ES; 8:08-bk-17458-ES; 8:08-bk-17465-ES;
    Affects:                                | 8:08-bk-17470-ES; 8:08-bk-17472-ES; and 8:08-17588-
20  ☐ All Debtors                           | ES
    ☐ Palmdale Hills Property, LLC,
21  ☐ SunCal Beaumont Heights, LLC          | Chapter 11 Cases
    ☒ SCC/Palmdale, LLC
22  ☐ SunCal Johannson Ranch, LLC           | **THE MOVING VOLUNTARY DEBTORS' AND**
    ☒ SunCal Summit Valley, LLC             | **SUNCAL MANAGEMENT LLC'S NOTICE OF**
23  ☒ SunCal Emerald Meadows LLC            | **MOTION AND MOTION FOR ORDER**
    ☒ SunCal Bickford Ranch, LLC            | **DISALLOWING CLAIMS OF LEHMAN ALI,**
24  ☒ Acton Estates, LLC                    | **INC. AND LEHMAN COMMERCIAL PAPER,**
    ☐ Seven Brothers LLC                    | **INC. PURSUANT TO 11 U.S.C. § 502(d);**
25  ☐ SJD Partners, Ltd.                    | **MEMORANDUM OF POINTS AND**
    ☐ SJD Development Corp.                 | **AUTHORITIES**
26  ☐ Kirby Estates, LLC
    ☒ SunCal Communities I, LLC             | Date:      June 9, 2011
27  ☒ SunCal Communities III, LLC           | Time:      10:30 a.m.
                                            | Place:     Courtroom 5A
28          *Caption Continued on Next Page*

000641

| | |
|---|---|
| 1 | ***Caption Continued from Previous Page*** |
| 2 | ☒ SCC Communities LLC |
| | ☒ North Orange Del Rio Land, LLC |
| 3 | ☒ Tesoro SF, LLC |
| | ☐ LBL-SunCal Oak Valley, LLC |
| 4 | ☒ SunCal Heartland, LLC |
| | ☐ LBL-SunCal Northlake, LLC |
| 5 | ☒ SunCal Marblehead, LLC |
| | ☐ SunCal Century City, LLC |
| 6 | ☐ SunCal PSV, LLC |
| 7 | ☒ Delta Coves Venture, LLC |
| | ☒ SunCal Torrance, LLC |
| 8 | ☒ SunCal Oak Knoll, LLC |

-ii-

**TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUTPCY JUDGE,
AND PARTIES IN INTEREST:**

SunCal Communities I LLC ("SunCal I"), Acton Estates LLC ("Acton"), SCC/Palmdale LLC ("SCC/Palmdale"), SunCal Emerald Meadows LLC ("Emerald Meadows"), SunCal Bickford Ranch LLC ("Bickford Ranch"), SunCal Summit Valley LLC ("Summit Valley"), SCC Communities LLC ("SCC Communities"), North Orange Del Rio Land, LLC ("Del Rio"), and Tesoro SF LLC ("Tesoro") (the "Moving Voluntary Debtors"), and SunCal Management, LLC ("SunCal Management" and collectively with the Moving Voluntary Debtors, the "SunCal Parties") hereby move (the "Motion") the Court, in both the Moving Voluntary Debtors' cases and certain of the Trustee Debtors' cases[1], for an order granting the following relief:[2]

(A)    Disallowing, pursuant to 11 U.S.C. § 502(d), the following Proofs of Claim filed by Lehman ALI, Inc. ("Lehman ALI") and Lehman Commercial Paper, Inc. ("LCPI", and together with Lehman ALI, the "Lehman Entities"):

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 1 | SunCal I | LCPI | $343,221,391 | 1 |
| 2 | SunCal III | LCPI | $343,221,391 | 2 |
| 6 | Acton Estates | LCPI | $343,221,391 | 3 |
| 6 | Emerald Meadows | LCPI | $343,221,391 | 4 |
| 16 | Bickford Ranch | LCPI | $343,221,391 | 5 |
| 12 | Summit Valley | LCPI | $343,221,391 | 6 |
| 1 | SCC/Palmdale | LCPI | $119,664,305 | 7 |
| 12 | Oak Knoll | Lehman ALI | $158,141,365 | 8 |
| 4 | Torrance | Lehman ALI | $158,141,365 | 9 |
| 9 | Heartland | LCPI | $354,325,126 | 10 |
| 21 | Marblehead | LCPI | $354,325,126 | 11 |
| 9 | SCC Communities | Lehman ALI | $ 23,795,013 | 12 |
| 7 | Tesoro | Lehman ALI | $ 23,795,013 | 13 |
| 14 | Del Rio | Lehman ALI | $ 23,795,013 | 14 |
| 21 | Delta Coves | Lehman ALI | $ 206,023,142 | 15 |

[1] The Trustee Debtors are defined as LB/L-SunCal Oak Valley LLC ("Oak Valley"), LB/L-SunCal Northlake LLC ("Northlake"), SunCal Heartland LLC ("Heartland"), SunCal Marblehead LLC ("Marblehead"), SunCal Century City LLC ("Century City"), SunCal PSV LLC ("PSV"), Delta Coves Venture LLC ("Delta Coves"), SunCal Torrance LLC ("Torrance"), and SunCal Oak Knoll LLC ("Oak Knoll") (collectively "Trustee Debtors").

[2] The Voluntary Debtors are the moving parties with respect to the objections to claims in the Voluntary Debtors' cases, and SunCal Management is the moving party with respect to the objections to claims in the specified Trustee Debtors' cases in its capacity as a creditor in all of the Trustee Debtors' cases.

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

000643

(B)     Disallowing, pursuant to 11 U.S.C. § 502(d), all administrative claims inclusive of future administrative claims asserted by the Lehman Entities against the below named Debtors, including but not limited to the following:

| Lehman Administrative Claims[3] | *Debtor* | *Claim Holder* | *Claim Amount* |
|---|---|---|---|
| | Delta Coves | Lehman ALI | $2,767,725 |
| | Heartland | Lehman ALI | $1,935,250 |
| | Marblehead | Lehman ALI | $5,634,270 |
| | Oak Knoll | Lehman ALI | $13,002,451 |
| | Torrance | Lehman ALI | $1,346,711 |

(the above referenced proofs of claim and administrative claims are collectively referred to as the "Lehman Claims"); and

(C)     Such further relief as the Court deems just and proper.

This Motion is based upon the Memorandum of Points and Authorities set forth hereinbelow, the Declaration of Bruce V. Cook (the "Cook Declaration"), the Declaration of Tom Rollins ("Rollins Declaration"), the Declaration of Dale Strickland ("Strickland Declaration"), and the SunCal Parties' Request for Judicial Notice (the "RJN") filed concurrently herewith, all pleadings, papers and records on file with the Court, and such other evidence, oral or documentary, as may be presented to the Court prior to or at the time of any hearing on the Motion.

**IF YOU DO NOT OPPOSE THE MOTION, YOU NEED TAKE NO FURTHER ACTION.  HOWEVER, IF YOU OPPOSE THE MOTION, OPPOSITIONS MUST BE FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION.  YOU MUST FILE YOUR OPPOSITION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 411 WEST FOURTH STREET, SUITE 2030, SANTA ANA, CALIFORNIA 92701.  YOU MUST ALSO SERVE A COPY OF YOUR OPPOSITION TO THE MOTION UPON COUNSELS FOR THE MOVING VOLUNTARY DEBTORS AND SUNCAL MANAGEMENT AT THE MAILING ADDRESSES INDICATED IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THIS MOTION. THE VOLUNTARY DEBTORS' COUNSEL WILL ACCEPT E-MAIL SERVE AT THE FOLLOWING ADDRESSES:  PCOUCHOT@WINTHROPCOUCHOT.COM, WITH A COPY**

---

[3] Figures are from Disclosure Statement with Respect to First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors [Docket No. 1876].

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

000644

1    TO PJ@WINTHROPCOUCHOT.COM.  ANY FAILURE TO TIMELY FILE AND SERVE AN

2    OPPOSITION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE

3    COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER

4    NOTICE.

5    DATED:  April 26, 2011                    **WINTHROP COUCHOT**
                                             **PROFESSIONAL CORPORATION**
6

7                                            By:___/s/ *Paul J. Couchot*_____
                                                  Paul J. Couchot, Esq.
8                                                 Peter W. Lianides, Esq.
                                                  Payam Khodadadi, Esq.
9                                            General Insolvency Counsel for Administratively
                                             Consolidated Debtors-in-Possession ("Voluntary
10                                           Debtors")

11                                           **RUS MILIBAND & SMITH**
                                             **A PROFESSIONAL CORPORATION**
12

13

14                                           By: __/s/ *Ronald Rus*_____
                                                  Ronald Rus, Esq.
15                                                Joel S. Miliband, Esq.
                                                  Catherine Castaldi, Esq.
16                                           Attorneys for SunCal Management, LLC

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

000645

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF MOTION ............................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 2
      A.    The SunCal/Lehman Joint Venture to Develop the Projects ............. 2
      B.    The Lehman Adversary Action ........................................................... 3

III.  ACTON AND SUNCAL III NEVER EXECUTED ASSUMPTIONS OF
      THE SUNCAL COMMUNITIES LOAN, AND THEREFORE THE
      LEHMAN CLAIMS ARE UNENFORCEABLE ............................................ 4

IV.   THE LEHMAN CLAIMS MUST BE DISALLOWED AS THE LEHMAN
      ENTITIES HAVE NOT DISGORGED THE AVOIDABLE TRANSFERS ........ 5
      A.    Bankruptcy Code Section 502(d) Provides for the Disallowance of
            Claims Held by a Creditor who Fails to Disgorge an Avoidable
            Transfer ............................................................................................. 5
            (1)    The SunCal Parties Need Only Establish a "Prima Facie
                   Case" of an Avoidable Transfer to Sustain an Objection
                   Under Section 502(d) ............................................................. 6
            (2)    The Court's Order Denying the Dismissal Motions
                   Establishes Prima Facie Avoidance Claims Against the
                   Lehman Entities for Purposes of Sustaining an Objection to
                   Claim Pursuant to Section 502(d) ......................................... 7
      B.    Section 502(d) Does Not Require That the Creditor Refuse to
            Disgorge the Avoidable Transfer in Order to Sustain the Objection ....... 9
      C.    Section 502(d) Also Provides for the Disallowance of
            Administrative Claims ....................................................................... 9
      D.    LCPI and LBHI Cannot Argue that the Relief Requested Pursuant
            to 11 U.S.C. § 502(d) Violates Their Automatic Stay ........................ 9

V.    THE SUBSTANTIVE LAW OF FRAUDULENT CONVEYANCES AS
      APPLIED TO THE FACTUAL EVIDENCE SUBMITTED HEREIN
      PRESENTS FURTHER GROUNDS  FOR DISALLOWANCE OF THE
      LEHMAN CLAIMS PURSUANT TO SECTION 502(d) ............................... 11
      A.    Fraudulent Transfer Statutes ............................................................ 11
      B.    The Evidence Supporting the Specific Fraudulent Transfers Compels
            the Disallowance of the Lehman Claims Under Section 502(d) ........... 13
            (1)    The SunCal Communities I Fraudulent Transfers .................... 13
                   (a)    Date Obligation Was Incurred ...................................... 13
                   (b)    Reasonably Equivalent Value ...................................... 15
                   (c)    The Debtors Were Rendered Insolvent ......................... 17
            (2)    SCC Palmdale Fraudulent Transfers ...................................... 20
                   (a)    Date Obligation Was Incurred ...................................... 13
                   (b)    Reasonably Equivalent Value ...................................... 15
                   (c)    The Debtor Was Rendered Insolvent ............................ 17
            (3)    Oak Knoll/Torrance Fraudulent Transfers .............................. 21

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

| | | | (a) | Standing to Object to Claims in Trustee Debtor | |
|---|---|---|---|---|---|
| | | | | Cases .................................................................... | 21 |
| | | | (b) | Date Obligation Was Incurred .................................... | 22 |
| | | | (c) | Reasonably Equivalent Value ..................................... | 23 |
| | | | (d) | The Debtors Were Rendered Insolvent......................... | 23 |
| | | (4) | The Marblehead/Heartland Fraudulent Transfers................................ | | 24 |
| | | | (a) | Date Obligation Was Incurred .................................... | 25 |
| | | | (b) | The Debtors Received Less than Reasonably | |
| | | | | Equivalent Value...................................................... | 25 |
| | | | (c) | The Debtors Were Rendered Insolvent......................... | 25 |
| | | (5) | Interim Loan Fraudulent Transfers ................................. | | 26 |
| | | | (a) | Date Obligation Was Incurred .................................... | 27 |
| | | | (b) | The Debtors Did Not Receive Reasonably Equivalent | |
| | | | | Value ....................................................................... | 27 |
| | | | (c) | The Debtors Were Rendered Insolvent......................... | 28 |
| | C. | Unsecured Creditors Exist for the Purposes of Section 544(b) ........................ | | | 29 |
| VI. | THE AVOIDABLE PREFERENCE PROVIDE GROUNDS FOR DISALLOWANCE OF LEHMAN ALI'S CLAIM AGAINST DELTA COVES PURSUANT TO SECTION 502(d)................................................................. | | | | 31 |
| VII. | CONCLUSION................................................................................ | | | | 36 |

000647

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Barberan v. Nationpoint
    706 F.Supp.2d 408 (S.D.N.Y. 2010)..............................................................14

Comm. of Unsecured Cred. v. Commodity Credit Corp.,
    143 B.R. 734 (9th Cir. BAP 1992).................................................................6

Coronet Capital Co. v. Spodek,
    265 A.D.2d 292, 696 N.Y.S.2d 191 (N.Y.A.D. 2 Dept. 1999)...................14

Dye v. Brown (In re AFI Holding, Inc.),
    530 F.3d 832 (9th Cir.2008) .........................................................................7

FDIC v. Union Entities (In re Be-Mac Transp.),
    83 F.3d 1020 (8th Cir.1996) .......................................................................22

In re 3dfx Interactive, Inc.,
    389 B.R. 842 (Bankr.N.D.Cal. 2008) .........................................................15

In re AFI Holding, Inc.,
    530 F.3d 832 F.3d 832 (9th Cir. 2008) ....................................................6, 9

In re America West Airlines, Inc.,
    217 F.3d 1161 (9th Cir. 2000) .................................................................6, 9

In re AmeriServe Food Distribution, Inc.,
    315 B.R. 24 (Bankr.D.Del. 2004) ...........................................................8, 9

In re Ames Dept. Stores, Inc.,
    582 F.3d 422 (2d Cir. 2009) .........................................................................8

In re Anderson,
    382 B.R. 496 (Bankr.D.Or. 2008)..............................................................22

In re Art Unlimited,
    356 B.R. 700 (Bankr.E.D.Wis. 2006) .......................................................16

In re AVN Corp.,
    248 B.R. 540 (Bankr.W.D.Tenn. 2000) ......................................................7

In re Bob Grissett Golf Shoppes, Inc.,
    50 B.R. 598 (Bankr. E.D.Va. 1985) .........................................................6, 8

In re Bousa, Inc.,
    2005 WL 1176108, *4 (S.D.N.Y. 2005).....................................................10

In re Bushey,
    210 B.R. 95 (6th Cir.BAP 1997)...........................................................29, 30

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

In re Discount Family Boats of Texas, Inc.,
  233 B.R. 365 (Bankr.E.D.Tex. 1999) ...................................................................7

In re Eerie World Entertainment, L.L.C.,
  2006 WL 1288578, *4 (Bankr.S.D.N.Y. 2006) .....................................................7

In re Enron Corp.,
  340 B.R. 180 (Bankr.S.D.N.Y. 2006) ...................................................................6

In re Fair Oaks, Ltd.,
  168 B.R. 397 (9th Cir. BAP 1994)..........................................................15, 17, 19

In re Financial News Network,
  158 B.R. 570 (S.D.N.Y. 1993)............................................................................10

In re Furley's Transport, Inc.,
  272 B.R. 161 (Bankr.D.Md. 2001) .....................................................................32

In re Healthco Intern., Inc.,
  195 B.R. 971 (Bankr.D.Mass. 1996) ..................................................................30

In re Image Worldwide,
  139 F.3d at 581 ...................................................................................................28

In re Integra Realty Resources, Inc.,
  198 B.R. 352 (Bankr.D.Colo.1996) ....................................................................30

In re Interlink Home Health Care, Inc.,
  283 B.R. 429 (Bankr.N.D.Tex. 2002)..................................................................35

In re KF Dairies, Inc.,
  143 B.R. 734 (9th Cir.BAP 1992)..........................................................................6

In re Larsen,
  80 B.R. 784 (Bankr. E.D.Va. 1987) ......................................................................7

In re Maddalena,
  176 B.R. 551 (Bankr.C.D.Cal. 1995)..................................................................15

In re Marquis Products, Inc.,
  150 B.R. 487 (Bankr.D.Me.1993)........................................................................16

In re Martushev,
  Slip Copy, 2010 WL 5256802 at *8 (Bankr. D. Mont. 2010) .............................17

In re Meade,
  1999 WL 33496001, *1 (E.D.Pa. 1999) ..............................................................10

000649

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

1

# TABLE OF AUTHORITIES

2

## (Continued)

3

**PAGE**

4

In re Merrick,
   175 B.R. 333 (9th Cir. BAP 1994)..................................................................10

5

6

In re MicroAge, Inc.
   291 B.R. 503 (9th Cir. BAP 2002).............................................................6, 8, 9

7

In re Mid Atlantic Fund, Inc.,
   60 B.R. 604 (Bankr. S.D.N.Y. 1986) ...............................................................7

8

In re Morse Tool, Inc.,
   148 B.R. 97 (Bankr.D.Mass. 1992) .................................................................30

9

10

In re Musicland Holding Corp.,
   398 B.R. 761 (Bankr.S.D.N.Y. 2008) .............................................................30

11

In re Newtowne,
   157 B.R. 374 (Bankr. S.D.Ohio 1993) ............................................................16

12

13

In re Oxford Royal Mushroom Products, Inc.,
   59 B.R. 926 (Bankr.E.D.Pa. 1986) ...................................................................6

14

In re Pajaro Dunes Rental Agency, Inc.,
   174 B.R. 557 (Bankr. N.D.Cal. 1994) .......................................................15, 28

15

16

In re Prejean,
   994 F.2d 706 (9th Cir. 1993) ..........................................................................15

17

18

In re PRS Ins. Group,
   331 B.R. 580 (Bankr.D.Del. 2005) .............................................................10, 11

19

In re Qmect, Inc.,
   2007 WL 219942, *6 (Bankr.N.D.Cal. 2007) ..................................................8

20

21

In re QMect, Inc.,
   349 B.R. 620 (Bankr.N.D.Cal. 2006) ............................................................22

22

In re Rand Energy Co.,
   259 B.R. 274 (Bankr.N.D.Tex. 2001)............................................................32

23

24

In re RCM Global Long Term Capital Appreciation Fund, Ltd.,
   200 B.R. 514, n. 2 (Bankr.S.D.N.Y. 1996)....................................................30

25

In Re Reichmann Petroleum Corp.,
   364 B.R. 916 (Bankr. E.D. Tex. 2007) ..........................................................35

26

27

In re Sierra Steel, Inc.,
   96 B.R. 275 (9th Cir. BAP 1989).....................................................................17

28

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

000650

Case 8:08-bk-17206-ES Doc 1749-4 Filed 04/26/11 Entered 04/26/11 19:29:19 Desc
9.15 Page 11 of 54

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

In re Smith,
   2002 Bankr.LEXIS 1893, at *18 (Bankr.S.D. Ind. April 24, 2002) .......................................7, 15

In re TriGem America Corp.,
   431 B.R. 855 (Bankr.C.D.Cal. 2010) ..................................................................................16

In re Triple Star Welding, Inc.
   324 B.R. 778 (9th Cir.BAP 2005).......................................................................................6, 9

In re Way,
   229 B.R. 11 (9th Cir. BAP 1998) .......................................................................................10

In re Wheatfield Business Park,
   308 B.R. 463 (9th Cir. BAP 2004).....................................................................................10

In re Wiersma,
   483 F.3d 933 (9th Cir. 2007) .............................................................................................8

IRS v. Taylor (In re Taylor),
   132 F.3d 256 (5th Cir.1998).............................................................................................22

Lawrence v. Steinford Holding B.V. ( In re Dominelli),
   820 F.2d 313 (9th Cir.1987) .............................................................................................22

Leibowitz v. Parkway Bank & Trust Co.,
   210 B.R. 298 (N.D.Ill.1997), aff'd, 139 F.3d 574 (7th Cir.1998)..................................15

Matter of Eye Contact, Inc.,
   97 B.R. 990 (Bankr.W.D.Wis. 1989)...................................................................................7

Matter of Hansen,
   1993 WL 176430, *2 (W.D.Tex. 1993)...............................................................................9

National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.,
   2008 WL 450413, 27 (D.Conn. 2008) ...............................................................................14

Old Person v. Brown,
   312 F.3d 1036 (9th Cir. 2002) .....................................................................................8, 11

Olick v. Parker & Parsley Petroleum Co.,
   145 F.3d 513 (2d Cir. 1998) .............................................................................................10

Oriska Ins. Co. v. Brown & Brown of Texas, Inc.,
   2005 WL 894912, *2 (N.D.N.Y. 2005) ...............................................................................7

Siegel v. Federal Home Loan Mortg. Corp.,
   143 F.3d 525 (9th Cir. 1998) ............................................................................................22

Vasile v. Dean Witter Reynolds Inc.,
   20 F.Supp.2d 465 (E.D.N.Y. 1998) ..................................................................................10

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

000651

## TABLE OF AUTHORITIES

### (Continued)

**STATUTES**

11 U.S.C. § 101(2)(A) .................................................................................................35
11 U.S.C. § 101(31) .....................................................................................................35
11 U.S.C. § 101(31)(E) ..........................................................................................34, 35
11 U.S.C. § 101(32) .....................................................................................................17
11 U.S.C. § 362 ............................................................................................................10
11 U.S.C. § 502(a) .......................................................................................................22
11 U.S.C. § 502(b)(1) ....................................................................................................4
11 U.S.C. § 502(d) ..........................1, 2, 5, 6, 7, 8, 9, 11, 13, 19, 21, 22, 24, 26, 31, 35
11 U.S.C. § 510(d) .........................................................................................................9
11 U.S.C. § 544 ..............................................................................................................1
11 U.S.C. § 544(b) ..................................................................................5, 11, 12, 15, 29, 30
11 U.S.C. § 546 ..............................................................................................................6
11 U.S.C. § 547 ....................................................................................................1, 5, 35
11 U.S.C. § 547(b) ..................................................................................................31, 32
11 U.S.C. § 548 .................................................................................1, 5, 12, 14, 25
11 U.S.C. § 548(a) ..................................................................................................12, 27
11 U.S.C. § 548(a)(1) ...............................................................................11, 12, 20, 23
11 U.S.C. § 550 ......................................................................................................1, 31
11 U.S.C. § 551 ......................................................................................................1, 21
11 U.S.C.A. § 558 ..........................................................................................................4
UFCA § 5 .....................................................................................................................30
UFCA § 7 .....................................................................................................................30
Cal.Civ.Code § 3439 .......................................................................................12, 15, 29
Cal.Civ.Code § 3439.02(a) ..........................................................................................17
Cal.Civ.Code § 3439.04 ...................................................................................12, 29, 30
Cal.Civ.Code § 3439.04(a) ..........................................................................................12
Cal.Civ.Code § 3439.05 ...............................................................................................12
Com.Code § 9104(a) ....................................................................................................33
Com.Code § 9312(b)(1) ...............................................................................................33
Com.Code § 9314 .........................................................................................................33

**OTHER AUTHORITIES**

Advisory Committee Notes to Bankruptcy Rule 3007 ..................................................22

**TREATISES**

Collier on Bankruptcy 15th Ed. Revised ¶ 502.05 (2010) ............................................6
5 Collier on Bankruptcy, 15th Ed. Revised ¶ 548.05 (2011) .......................................16

MAINDOCS-#159292-v10-SCC_Motion_502(d).DOC

# I.

## SUMMARY OF MOTION

By this Motion, the SunCal Parties seek an order disallowing Lehman Claims filed in the specified Debtors' cases pursuant to Section 502(d) of the Bankruptcy Code.  In particular, Lehman ALI and LCPI are recipients of certain fraudulent transfers and preferential transfers from the Debtors, which are avoidable pursuant to Sections 544, 547, 548, 550 and 551 of the Bankruptcy Code.  The avoidable transfers have not been returned by Lehman ALI and/or LCPI to the applicable Debtor's estate, despite the fact that the underlying avoidance causes of action have survived the Lehman Entities' and Fenway Capital's ("Fenway") motions to dismiss the Debtors' Third Amended Complaint against the Lehman Entities and Fenway (the "Dismissal Motions") and the same causes of action are currently set forth in the Debtors' Fourth Amended Complaint ("FAC") against the Lehman Entities (except LCPI) and against Fenway in Adv. No. 8:09-ap-01005-ES ("Lehman Adversary Action").

The Moving Voluntary Debtors move for the disallowance of the "Lehman Claims," set forth below, filed against their respective estates:

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 1 | SunCal I | LCPI | $343,221,391 | 1 |
| 2 | SunCal III | LCPI | $343,221,391 | 2 |
| 6 | Acton Estates | LCPI | $343,221,391 | 3 |
| 6 | Emerald Meadows | LCPI | $343,221,391 | 4 |
| 16 | Bickford Ranch | LCPI | $343,221,391 | 5 |
| 12 | Summit Valley | LCPI | $343,221,391 | 6 |
| 1 | SCC/Palmdale | LCPI | $119,664,305 | 7 |
| 9 | SCC Communities | Lehman ALI | $ 23,795,013 | 12 |
| 7 | Tesoro | Lehman ALI | $ 23,795,013 | 13 |
| 14 | Del Rio | Lehman ALI | $ 23,795,013 | 14 |

SunCal Management, as a creditor and party in interest in all of the Trustee Debtors' cases, moves for the disallowance of the Lehman Claims filed or asserted against the respective Trustee Debtors' estates as follows:

| Disputed Proof of Claim No. | Debtor | Claim Holder | Claim Amount | RJN Exhibit No. |
|---|---|---|---|---|
| 12 | Oak Knoll | Lehman ALI | $158,141,365 | 8 |
| 4 | Torrance | Lehman ALI | $158,141,365 | 9 |
| 9 | Heartland | Lehman ALI | $354,325,126 | 10 |
| 21 | Marblehead | Lehman ALI | $354,325,126 | 11 |
| 21 | Delta Coves | Lehman ALI | $ 2,060,231 | 15 |

000653

MAINDOCS-#159292-v9-SCC_Motion_502(d).DOC

| Lehman Administrative Claims[4] | | | | |
|---|---|---|---|---|
| | Delta Coves | Lehman ALI | $2,767,725 | |
| | Heartland | Lehman ALI | $1,935,250 | |
| | Marblehead | Lehman ALI | $5,634,270 | |
| | Oak Knoll | Lehman ALI | $13,002,451 | |
| | Torrance | Lehman ALI | $1,346,711 | |

As demonstrated herein below, as a result of the Order denying the Dismissal Motions, as well as the evidence filed in support of this Motion, the SunCal Parties have made a *prima facie* showing of an avoidable transfer required for the purposes of Section 502(d). As a result, applicable law mandates the disallowance of the Lehman Claims.

Although the Lehman Entities contend that the FAC setting forth these causes of action are currently enjoined by the automatic stay of LCPI and Lehman Brothers Holding Inc. ("LBHI") by virtue of LCPI's purchase of several of the claims subject to this Motion from Fenway pursuant to the New York Bankruptcy Court's order approving the "compromise" with Fenway entered on May 13, 2010 ("Compromise Order"), as set forth below, the law in both the Second and Ninth Circuit are clear: LCPI's and LBHI's automatic stay do not apply to objections to claims involving these same causes of action pursuant to Bankruptcy Code Section 502(d).

## II.

## FACTUAL BACKGROUND

### A.     The SunCal/Lehman Joint Venture to Develop the Projects.

The Debtors are twenty-six (26) affiliated entities (the "Debtors") formed to develop residential real estate development projects ("Projects") throughout California as part of a joint venture between SunCal and the Lehman Entities. All of the Debtors are affiliates of SCC Acquisitions, Inc.

All of the Debtors were financed by a Lehman Entity. Some of the Debtors directly own the Projects and others serve as holding companies, owning membership interests in the Debtors that own the Projects. SunCal Management has contracts to manage all of the Debtors and their Projects.

---

[4] Figures are from Disclosure Statement with Respect to First Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Lehman Creditors [Docket No. 1876].

000654

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    **B.    The Lehman Adversary Action.**

2        On July 10, 2009, the Voluntary Debtors and the Trustee filed their Third Amended Complaint

3    (the "TAC") in the Lehman Adversary Action (see RJN, Ex. 23) which *inter alia* added Fenway as a

4    defendant, based upon the discovery of the facts relating to the pre-petition sale of certain loans to

5    Fenway ("Sold Loans") pursuant to the Master Repurchase Agreement ("Repo") and the Court's Sale

6    Order determining that the Repo was a true sale.

7        On September 30, 2009, the Lehman Entities and Fenway filed the Dismissal Motions

8    contending that the relief requested by the Debtors was not available as a matter of law.  On April 12,

9    2010, the Court entered the *Order re Lehman Entities' Amended Motion to Dismiss the Third Amended*

10   *Complaint* (the "Order Denying The Dismissal Motions") which *denied* the Lehman ALI's Motion to

11   dismiss the fifth claim for relief (Avoid and Recover Fraudulent Transfers) as to claims brought by all

12   of the relevant Debtors set forth herein, and the sixth claim for relief (Avoid and Recover Preferential

13   Transfers) as to the claims brought by Delta Coves.  See RJN, Ex. 25.  As set forth in detail below in

14   Section III(A)(1), a claim for relief which survives a motion to dismiss constitutes a *prima facie*

15   showing of an avoidable transfer for the purposes of Section 502(d).

16       On March 26, 2010, the Debtors filed their Fourth Amended Complaint ("FAC"), which

17   retained the causes of action upheld by the Court in the TAC.  See RJN, Ex. 24.  Specifically, the FAC

18   asserted the fraudulent transfer claims (renumbered as the third claim for relief) and the preferential

19   transfer claims (renumbered as the fourth claim for relief).  The FAC also deleted certain causes of

20   action dismissed by the Court, none of which are relevant to this Motion.[5]

21       As previously stated, pursuant to the Compromise Order, Fenway transferred all of Sold Loans

22   to LCPI, even those Sold Loans previously held by non-debtor Lehman Entities, and granted liens to

23

24

---

25   [5] LCPI was dismissed from the TAC without prejudice as a result of its automatic stay and the ruling of
     the Bankruptcy Appellate Panel, In re Palmdale Hills Property, LLC, 423 B.R. 655 (9th Cir. BAP

26   2009).  However, the dismissal of LCPI and its omission as a defendant in the FAC did not then-impact
     the prosecution of the Lehman Adversary Action, because the Sold Loans were then-owned by Fenway

27   pursuant to this Court's *Order On Objections to and Motion for Order Striking Claims Filed by the
     Lehman Entities* and the *Findings of Fact and Conclusions of Law In Support of Order On Objections

28   to Claims* entered on October 2, 2009 (the "Ownership Order"), and Fenway had been named as a
     separate defendant in the TAC, and not subject to or protected by LCPI's automatic stay.

000655

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

LBHI.  Specifically, LCPI was the original holder of only two of the seven Sold Loans; the majority of the loans were held by non-debtor Lehman Entities, as follows:

| Sold Loans | Original Claimant | Alleged Balance |
|---|---|---|
| SunCal Communities I Loan | LCPI | $343,221,391 |
| Ritter Ranch Loan | LCPI | $287,252,096 |
| PSV Loan | Lehman ALI | $88,257,340 |
| Delta Coves Loan | Lehman ALI | $206,023,142 |
| Marblehead/ Heartland Loan | Lehman ALI | $354,325,126 |
| Cal Oak Valley Loan | OVC Holdings, LLC | $141,630,092 |
| Northlake Loan | Northlake Holdings, LLC | $123,654,777 |

LCPI and LBHI have now actively invoked their automatic stays as to several of the causes of action in the Lehman Adversary Proceeding including those involving the Sold Loans.  As set forth below, it is undisputed that an objection to claim, such as is set forth in the instant motion, is not subject to the automatic stay.

**III.**

**ACTON AND SUNCAL III NEVER EXECUTED ASSUMPTIONS**

**OF THE SUNCAL COMMUNITIES LOAN, AND THEREFORE**

**THE LEHMAN CLAIMS ARE UNENFORCEABLE**

Section 502(b)(1) authorizes the bankruptcy court to determine whether a claim is valid and enforceable under applicable state law:

> (b) … if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim … and shall allow such claim in such amount, except to the extent that--
> (1) such claim is unenforceable against the debtor … under any … applicable law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(b)(1). See also 11 U.S.C.A. § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.")

Here, LCPI has failed to attach or establish the existence of any documentary evidence whereby Acton incurred the liability set forth in Claim 6, and SunCal III incurred the liability set forth in Claim 2.  Specifically, LCPI entered into a loan agreement dated November 17, 2005 ("SunCal Communities I Loan") with SunCal I, as borrower.  Bickford Ranch, Summit Valley and Emerald Meadows were not original borrower under the SunCal Communities I Loan, but rather subsequently

000656

MAINDOCS-#159292-v1-SC_Motion_502(d).DOC

1   executed "Assumption Agreements" – which are attached to LCPI's proofs of claim - whereby they

2   each purported to become additional grantors as to the Guarantee and Collateral Agreement relating to

3   the SunCal Communities I Loan.  See RJN, Exs. 4, 5 and 6.  However, LCPI's Claim 6 and Claim 2 fail

4   to attach or establish the existence of an Assumption Agreement as to Acton or SunCal III.  See RJN,

5   Exs. 2 and 3.

6         As to SunCal III, LCPI's Claim 2-2 contains voluminous attachments totaling 803 pages,

7   however, conspicuously absent is any document executed by SunCal III incurring the liability set forth

8   in such claim.  Similarly, as to Acton, LCPI's Claim 6-3 (against Acton) fails to attach an Assumption

9   Agreement as to Acton.  Rather, Claim 6-3 attaches *Summit Valley's* Assumption Agreement which is

10   also executed by Acton.  However, this Assumption Agreement does not in any way purport to

11   establish liability on the part of Acton.  Simply put, there is no Assumption Agreement purporting to

12   establish Acton's liability.  The signature pages in Claim 6-3 are consecutively numbered, such that

13   LCPI cannot contend that there are simply missing pages.  The Debtors' business records do not reflect

14   any Assumption Agreement executed as to either Acton or SunCal III.  See Cook Declaration ¶ 7.

15         In the absence of a valid executed agreement, LCPI's Claim 2 against SunCal III and Claim 6

16   against Acton must be disallowed.

**IV.**

## THE LEHMAN CLAIMS MUST BE DISALLOWED AS THE LEHMAN

## ENTITIES HAVE NOT DISGORGED THE AVOIDABLE TRANSFERS

A.   **Bankruptcy Code Section 502(d) Provides for the Disallowance of Claims Held by a**
      **Creditor who Fails to Disgorge an Avoidable Transfer**

22         The Lehman Entities are transferees of transfers avoidable under Section 544(b), 547 and/or

23   548 of the Bankruptcy Code.  Section 502(d) compels the disallowance of *all of the entity's claims* if it

24   has received and failed to return an avoidable transfer:

> (d) Notwithstanding subsections (a) and (b) of this section, **the court shall disallow
> any claim of any entity** from which property is recoverable under section 542, 543,
> 550, or 553 of this title or **that is a transferee of a transfer avoidable under
> section** 522(f), 522(h), **544**, 545, **547, 548**, 549, or 724(a) of this title, unless such
> entity or transferee has paid the amount, or turned over any such property, for which
> such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this
> title.

000657

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    11 U.S.C. § 502(d) (emphasis added).

2      Section 502(d) compels the disallowance of the claims of creditors who have received and have

3    not disgorged the avoidable transfers.  In re KF Dairies, Inc., 143 B.R. 734, 735 (9th Cir.BAP 1992).

4    The language of section 502(d) is mandatory. The Court must condition allowance of any claim upon

5    the creditor's disgorging of the avoidable transfer.  In re MicroAge, Inc.  291 B.R. 503, 510 (9th Cir.

6    BAP 2002) citing In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 607 (Bankr. E.D.Va. 1985).

7      "This provision is based on the policy that a creditor who fails to turn over to estate any money

8    or property it owes to the estate, will not be entitled to share in the proceeds of the estate."  In re

9    Oxford Royal Mushroom Products, Inc., 59 B.R. 926, 927 (Bankr.E.D.Pa. 1986).  Accordingly, Section

10    502(d) is not limited to the disallowance of the entity's claims which are directly related to the

11    avoidable transfer.  In re Enron Corp., 340 B.R. 180, 194 (Bankr.S.D.N.Y. 2006)[6] ("There is no

12    requirement that a claim subject to a section 502(d) disallowance be related to an avoidable transfer.")

13    Rather, "any claim of any entity from which property is recoverable" is subject to disallowance under

14    Section 502(d).  11 U.S.C. §502(d).

   **(1)**  **The SunCal Parties Need Only Establish a "Prima Facie Case" of an**

      **Avoidable Transfer to Sustain an Objection Under Section 502(d).**

17      It is black letter law that a judgment on an avoidance action is not necessary to invoke

18    Section 502(d).  Collier on Bankruptcy 15th Ed. Revised ¶ 502.05 (2010) ("The wording of

19    section 502(d) refers to transfers 'avoidable' under various sections and not to claims that have been

20    avoided.").  In fact, the Ninth Circuit has repeatedly held that even if the avoidance action itself is

21    barred under Section 546, and therefore an avoidance judgment itself is impossible, Section 502(d) may

22    still be invoked to disallow the claim.  See In re America West Airlines, Inc., 217 F.3d 1161, 1168 (9th

23    Cir. 2000) (Section 502(d) could be used to disallow claim even though action to avoid lien would be

24    time-barred); Comm. of Unsecured Cred. v. Commodity Credit Corp. (In re KF Dairies, Inc.), 143 B.R.

25    734, 736-37 (9th Cir. BAP 1992); In re Triple Star Welding, Inc.  324 B.R. 778, 794 (9th Cir.BAP

26    2005) abrogated on other grounds by Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 851 (9th

---

[6] Vacated and remanded on other grounds, 379 B.R. 425 (S.D.N.Y. 2007).

000658

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    *Cir.2008)*.  Accordingly, it is clearly established in this Circuit that an objecting party need not obtain

2    an avoidance judgment as a precondition to invoking Section 502(d).

3       Rather, the objecting party must merely make a *prima facie* showing of an avoidable transfer in

4    order to object to a claim under Section 502(d). See <u>Matter of Eye Contact, Inc.</u>, 97 B.R. 990, 992

5    (Bankr.W.D.Wis. 1989) ("The trustee need not commence an avoidance action to bring section 502(d)

6    into play. By making a *prima facie* showing that the transfer is voidable, he can assert the alleged

7    preference defensively under section 502(d) to defeat a proof of claim."); <u>In re Discount Family Boats</u>

8    <u>of Texas, Inc.</u>, 233 B.R. 365, 368 (Bankr.E.D.Tex. 1999) (avoidance action is unnecessary - § 502(d)

9    can be invoke by claim objection and a prima facie showing of an avoidable transfer); <u>In re Larsen</u>*,* 80

10   B.R. 784, 791 (Bankr. E.D.Va. 1987); <u>In re Mid Atlantic Fund, Inc.</u>, 60 B.R. 604, 610 (Bankr.

11   S.D.N.Y. 1986) ("The Trustee has made a *prima facie* showing that the assignment of the Fredebaugh

12   Mortgage was a preferential transfer.").  Accordingly, the SunCal Parties need only make a prima facie

13   showing that the transfer is avoidable in order to sustain an objection to a claim under Section 502(d).

14       **(2)**    <u>**The Court's Order Denying the Dismissal Motions Establishes Prima Facie**</u>

15              <u>**Avoidance Claims Against the Lehman Entities for Purposes of Sustaining**</u>

16              <u>**an Objection to Claim Pursuant to Section 502(d).**</u>

17       Without the necessity of submitting evidence, a "prima facie case" is a mere pleading standard

18   that is established by sufficient pleadings to survive a motion to dismiss for failure to state a claim.  See

19   <u>In re AVN Corp.</u>, 248 B.R. 540, 547 (Bankr.W.D.Tenn. 2000) ("the Court must determine that

20   [claimant] has pled facts sufficient to establish a prima facie case"); <u>In re Eerie World Entertainment,</u>

21   <u>L.L.C.</u>, 2006 WL 1288578, *4 (Bankr.S.D.N.Y. 2006) ("[D]oes Bergrin's proposed Complaint state a

22   *prima facie* case against the Defendants, or would it be subject to dismissal for failure to state a

23   claim?") (emphasis added) citing <u>In re Smith</u>*,* 2002 Bankr.LEXIS *1893, at* *18 (Bankr.S.D. Ind. April

24   24, 2002) (to establish a *prima facie* case, plaintiff is "required to plead facts with a reasonable degree

25   of particularity which support, either directly or inferentially*, the eleme*nts of the claims asserted")

26   (emphasis added); <u>Oriska Ins. Co. v. Brown & Brown of Texas, Inc.</u>, 2005 WL 894912, *2 (N.D.N.Y.

27   2005) ("plaintiff may make a prima facie showing solely on the allegations").

28

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    In In re Qmect, Inc., 2007 WL 219942, *6 (Bankr.N.D.Cal. 2007), the Court held that a mere

2    admission in proof of claim that the creditor "received $20,000 in payments on the Debtor's account,

3    presumably from the Debtor, during the preference period" was "sufficient to establish a prima facie

4    case for a preference claim"). See also In re Ames Dept. Stores, Inc., 582 F.3d 422, 425 (2d Cir. 2009)

5    (bankruptcy court disallowed claim under section 502(d) during pendency of underlying preference

6    action).

7    As set forth above, the Order Denying The Dismissal Motions *denied* the Dismissal Motions as

8    to the TAC's fifth claim for relief (Avoid and Recover Fraudulent Transfers) in its entirety, and the

9    sixth claim for relief (to avoid and recover preferential transfers) as to claims brought by Delta Coves

10    and Century City. Accordingly, the Order Denying The Dismissal Motions establishes that the fifth

11    claim for relief (avoidance and recovery of fraudulent transfers) and sixth claim for relief (avoidance

12    and recovery of preferential transfers) survived the Lehman Entities' motion to dismiss (retained as the

13    third and fourth claims for relief in the FAC) and therefore properly pled their respective causes of

14    action. As a matter of law, the SunCal Parties have established a "prima facie" case for the purposes of

15    Section 502(d).

16    Therefore, the disallowance of the Lehman Claims is mandatory. See In re MicroAge, Inc., 291

17    B.R. 503, 510 (9th Cir.BAP 2002) quoting In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 607

18    (Bankr.E.D.Va.1985) ("The language of section 502(d) is mandatory .... [T]he Court must condition

19    allowance of any claim for administrative rent upon the Landlord's disgorging of the unauthorized and

20    avoidable post-petition transfers."); In re AmeriServe Food Distribution, Inc., 315 B.R. 24,

21    35 (Bankr.D.Del. 2004) ("§ 502(d) is a mandatory provision").

22    The Court's Order Denying The Dismissal Motions was not appealed, and constitutes "law of

23    the case" which cannot be challenged here by the Lehman Entities. See Old Person v. Brown, 312 F.3d

24    1036, 1039 (9th Cir. 2002) (under the law of the case doctrine, a court is precluded from reexamining

25    an issue previously decided by the same court in the same case); In re Wiersma, 483 F.3d 933, 941 (9th

26    Cir. 2007) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an

27    issue previously decided by the same court, or a higher court, in the same case.").

28

000660

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

**B.**     **Section 502(d) Does Not Require That the Creditor Refuse to Disgorge the Avoidable Transfer in Order to Sustain the Objection**

Section 502(d) does not require the Court to determine that the creditor/transferee is unwilling or would otherwise refuse to return the avoidable transfer. The mere fact that the creditor has not returned such transfer mandates the disallowance of the transferee's claim(s). See In re America West Airlines, Inc. 217 F.3d 1161, 1165-1167 (9th Cir. 2000) (Section 510(d) does not require the court to find that transferee was liable to, but did not, turn over property of debtor). Rather, the statute requires disallowance of the claim unless the transferee has in fact returned the transfer. Id. See also In re AmeriServe Food Distribution, Inc., 315 B.R. 24, 35 n. 2 (Bankr.D.Del. 2004). In the instant case, the Lehman Entities have not disgorged the fraudulent and preferential transfers referenced herein, despite the fact that such transfers have been the subject of the pending Lehman Adversary Action for over two years. Accordingly, the Lehman Claims must be disallowed.

**C.**     **Section 502(d) Also Provides for the Disallowance of Administrative Claims.**

In the Ninth Circuit, Section 502(d) applies equally to disallow both pre-petition claims and administrative claims. See MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.), 291 B.R. 503, 514 (9th Cir. BAP 2002) ("§ 502(d) should be interpreted in a manner that is consistent with case law decided under the Bankruptcy Act and should be applied to administrative claims."); In re Triple Star Welding, Inc., 324 B.R. 778, 794 (9th Cir.BAP 2005) ("the bankruptcy court has no discretion to disregard the Bankruptcy Code's requirements … that Baker turn over any avoidable preference before he can be paid any administrative claim for fees. 11 U.S.C. § 502(d).")[7]. See also Matter of Hansen, 1993 WL 176430, *2 (W.D.Tex. 1993) (Bankruptcy Court disallowed the IRS' post-petition administrative tax claim pursuant to Section 502(d)). Accordingly, Lehman ALI's administrative claims against the above referenced Debtors must also be disallowed pursuant to Section 502(d).

**D.**     **LCPI and LBHI Cannot Argue that the Relief Requested Pursuant to 11 U.S.C. § 502(d) Violates Their Automatic Stay**

While the parties have previously litigated the issue of whether LCPI's automatic stay is applicable to the equitable subordination cause of action in the Lehman Adversary Action, it is

---

[7] abrogated on other grounds In re AFI Holding, Inc., 530 F.3d 832, 530 F.3d 832 (9th Cir. 2008).

000661

MAINDOCS-#159292-v1-ESC_Motion_502(d).DOC

well established in both the Ninth Circuit and Second Circuit that a creditor's stay is not

applicable to a claim objection proceeding. Where there are two independent bankruptcy estates

in which one estate asserts a claim against the other, an objection to claim does not violate the

claimant's automatic stay.  See In re Wheatfield Business Park, 308 B.R. 463, 466 (9th Cir. BAP

2004); In re Merrick, 175 B.R. 333 (9th Cir. BAP 1994); In re Way, 229 B.R. 11 (9th Cir. BAP

1998); In re Financial News Network, 158 B.R. 570 (S.D.N.Y. 1993); In re Metiom, 301 B.R.

634, 638-639 (Bankr.S.D.N.Y. 2003); In re PRS Ins. Group, 331 B.R. 580, 587 (Bankr.D.Del.

2005); In re Meade, 1999 WL 33496001, *1 (E.D.Pa. 1999).

In Wheatfield Business Park, 308 B.R. 463 (9th Cir. BAP 2004), the Bankruptcy Appellate

Panel held that the creditor's automatic stay did not apply to an objection to its claim, as the creditor

was effectively acting in the capacity of a plaintiff, to whom the stay does not apply.  The subsequent

BAP decision in In re Palmdale Hills Property, LLC, 423 B.R. 655 (9th Cir.BAP 2009), cited the

Wheatfield Business Park and Financial News Network decisions with approval for the proposition that

claim objections do not violate the stay of a debtor-claimant.

The law in the Second Circuit is substantially identical.  In In re Financial News Network, 158

B.R. 570 (S.D.N.Y. 1993), a debtor (Kaypro) whose Chapter 11 case was pending in the Southern

District of California, filed a claim in Financial News Network's Chapter 11 case in the Southern

District of New York.  When Kaypro's claim was disallowed by the bankruptcy court in New York,

Kaypro appealed contending that this relief was barred by its automatic stay in California. The District

Court rejected this position, stating "both the language and purpose of **section 362** indicate that the

automatic stay in effect in the Bankruptcy Court for the Southern District of California did not preclude

the New York Bankruptcy Court from sustaining [NY debtor's] objection to [California debtor's] proof

of claim filed in New York Bankruptcy Court."  Financial News, 158 B.R. at 573.  See also Olick v.

Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998); Vasile v. Dean Witter Reynolds

Inc., 20 F.Supp.2d 465, 499 (E.D.N.Y. 1998) ("the primary claims raised by [debtor] are claims

asserted by, and not against, the debtor, and are therefore not subject to the stay and can be

immediately adjudicated."); In re Bousa, Inc., 2005 WL 1176108, *4 (S.D.N.Y. 2005) ("To the extent

000662

MAINDOCS-#159292-v0-PSC_Motion_502(d).DOC

1    that the debtor has itself brought the claim, the automatic stay provision does not preclude

2    adjudication.").

3       In fact, in the Southern District of New York, there is specific case law holding that a claim

4    objection based upon Section 502(d) is defensive, and does not violate the claimant's automatic stay.

5    In re Metiom, Inc., 301 B.R. 634, 638-639 (Bankr.S.D.N.Y. 2003) (§ 502(d) claim objection was

6    defensive and did not violate creditor's automatic stay); s*ee also* In re PRS Ins. Group, 331 B.R. 580,

7    584 (Bankr.D.Del. 2005) (applying *Metiom,* § 502(d) claim objection was defensive and did not violate

8    the creditor's stay).

9       Here, the within Motion does not seek any affirmative recovery against LCPI or LBHI. Rather,

10    the SunCal Parties are merely acting defensively to disallow the Lehman Claims pursuant to Section

11    502(d) of the Bankruptcy Code. Accordingly, LCPI and LBHI cannot possibly argue that their

12    automatic stays apply to the relief requested in this Motion.

13                                      **V.**

14    **THE SUBSTANTIVE LAW OF FRAUDULENT CONVEYANCES AS APPLIED TO THE**

15    **FACTUAL EVIDENCE SUBMITTED HEREIN PRESENTS FURTHER GROUNDS FOR**

16    **DISALLOWANCE OF THE LEHMAN CLAIMS PURSUANT TO SECTION 502(d)**

17       The Court's non-appealable Order Denying the Dismissal Motions constitutes "law of the case"

18    which cannot be challenged here by the Lehman Entities. See Old Person v. Brown, 312 F.3d 1036,

19    1039 (9th Cir. 2002). However, the overwhelming evidence submitted by the SunCal Parties in support

20    of this Motion, as applied to the applicable law under Sections 548(a) and 544(b), establishes that the

21    Lehman Entities have no viable defenses to the avoidable transfers alleged in the Lehman Adversary

22    Action.

23      **A.**      **Fraudulent Transfer Statutes.**

24    Section 548(a)(1) of the Bankruptcy Code provides in pertinent part:

25      (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, or
     any obligation … incurred by the debtor, that was made or incurred on or within 2
26      years before the date of the filing of the petition, if the debtor voluntarily or
     involuntarily - …
27      (B)(i) received less than a reasonably equivalent value in exchange for such transfer or
     obligation; and
28       (ii)(I) was insolvent on the date that such transfer was made or such obligation was
      incurred, or became insolvent as a result of such transfer or obligation;

000663

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

11 U.S.C. § 548(a)(1).

Similarly, by operation of 11 U.S.C. § 544(b), the California Civil Code Section 3439.04(a) is also applicable, which provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: …
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal.Civ.Code § 3439.04.

Further, California Civil Code Section 3439.05 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Cal.Civ.Code § 3439.05.

Accordingly, in summary, the fraudulent transfer statutes require the following material elements:

(a)     The transfer was made, or the obligation incurred, within 2 years prior to the petition date pursuant to 11 U.S.C. §548(a), or within 4 years prior to the petition date pursuant to 11 U.S.C. §544(b) and Cal.Civ.Code § 3439.

(b)     The Debtor did not receive reasonably equivalent value in exchange for the transfer or obligation.

(c)     The Debtor was rendered insolvent as a result of the transfer or obligation.

000664

MAINDOCS-#159292-v1-USC_Motion_502(d).DOC

As set forth below, and in the Lehman Adversary Action, the Lehman Entities are transferees of transfers avoidable under Section 544(b) and/or 548 of the Bankruptcy Code.  These avoidable transfers have not been returned to their respective estates, and therefore Bankruptcy Code Section 502(d) compels the disallowance of Lehman Claims.  The avoidable transfers are set forth in the Lehman Adversary Action, and described below.

**B.** **The Evidence Supporting the Specific Fraudulent Transfers Compels the Disallowance of the Lehman Claims Under Section 502(d).**

**(1)** **The SunCal Communities I Fraudulent Transfers.**

On or about November 17, 2005, LCPI entered into that certain Credit Agreement with SunCal I, as borrower ("SunCal Communities I Loan").  On March 30, 2009, LCPI filed identical proofs of claim in the amount of $354,325,126 based upon the SunCal Communities I Loan against SunCal I (Proof of Claim No. 1), SunCal III (Proof of Claim 2), Acton Estates (Proof of Claim 6), Emerald Meadows (Proof of Claim 7), Bickford (Proof of Claim 16), and Summit Valley (Proof of Claim 12). See RJN, Exs. 1 – 6.

Bickford Ranch, Summit Valley and Emerald Meadows were not original borrowers under the SunCal Communities I Loan, but rather subsequently executed "Assumption Agreements" whereby they each purported to become additional grantors under the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan.  See RJN, Ex. 4, 5, and 6.  Acton or SunCal III were also not original borrowers under the SunCal Communities I Loan.  Neither LCPI's proofs of claim, nor the Debtors' business records reflect any Assumption Agreement executed as to either Acton or SunCal III. See RJN, Ex. 2 and 3, and the Cook Declaration, ¶ 7.

(a) Date Obligation Was Incurred.  The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…"  All of the Chapter 11 petitions of these respective Debtors were filed on November 7, 2008.

| Case Name | Case Number | Petition Date |
|---|---|---|
| Summit Valley | 8:08-17227 ES | November 7, 2008 |
| Emerald Meadows | 8:08-17230 ES | November 7, 2008 |
| Bickford Ranch | 8:08-17231 ES | November 7, 2008 |

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

| Acton Estates | 8:08-17236 ES | November 7, 2008 |
| SunCal I | 8:08-17248 ES | November 7, 2008 |
| SunCal III | 8:08-17249 ES | November 7, 2008 |

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

000666

1    Here, the following obligation/transfers were made within two years prior to the respective

2 petition dates.

3    • Summit Valley executed an "Assumption Agreement" dated November 17, 2006.[8]  A UCC

4      financing statement against Summit Valley was filed on December 12, 2006.  See RJN, Ex. 6.

5    • Emerald Meadows executed an "Assumption Agreement" dated July 17, 2007.  The deed of

6      trust against Emerald Meadows was recorded on July 19, 2007.  See RJN, Ex. 4.

7    • As set forth above Claim 6 filed against Acton fails to establish or attached an Assumption

8      Agreement as to Acton.  However, Claim 6-3 attaches a deed of trust against Acton recorded on

9      January 16, 2007.[9]  See RJN, Ex. 3.

10  (The obligations and related transfers with respect to the SunCal Communities I Loan are collectively

11 referred to as the "SunCal Communities I Transfers"[10]).

12    These transfers as to Summit Valley, Emerald and Acton were clearly made within the two

13 years prior to the respective petition dates (November 7, 2008), thus the fraudulent transfer action is

14 properly brought under 11 U.S.C § 548.

15    SunCal Communities I and Bickford Ranch incurred the SunCal Communities I Loan

16 obligations within the 4 year of their respective petition dates.  Specifically, the SunCal Communities I

17 Loan was entered into by SunCal Communities I on November 17, 2005.  See RJN, Ex. 1.  Further,

18 Bickford executed an "Assumption Agreement" dated as of August 25, 2006, whereby Bickford Ranch

19 became an additional Grantor as to the Guarantee and Collateral Agreement.  See RJN, Ex. 5.

20 Accordingly, SunCal Communities I and Bickford Ranch incurred these obligations within the 4 year

21

22

---

23 [8] Summit Valley filed its voluntary Chapter 11 petition on November 7, 2008.  See Cook Declaration.

24 [9] Since there is no valid Assumption Agreement as to Acton, there is no valid obligation and thus the
deed of trust secured nothing.  See Barberan v. Nationpoint  706 F.Supp.2d 408, 424 (S.D.N.Y. 2010)

25 ("A mortgage is merely security for a debt or other obligation and cannot exist independently of the
debt or obligation."); Coronet Capital Co. v. Spodek, 265 A.D.2d 292, 292, 696 N.Y.S.2d 191, 192

26 (N.Y.A.D. 2 Dept. 1999) ("It has long been held that a mortgage is not valid and enforceable unless
there is an underlying valid debt or obligation for which the mortgage is intended as security.");

27 National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C., 2008 WL 450413, 27 (D.Conn.
2008) ("A mortgage secured by a defective underlying obligation is itself invalid.").

28 [10] To the extent that an "obligation" was incurred as to either Acton or SunCal III, such obligations are
also included within the definition of the "SunCal Communities I Transfers".

-15-

000667

1    reach back under California law for causes of action under Cal.Civ.Code § 3439.  As set forth in

2    subsection (C) below, there are qualifying creditors for the purposes of Section 544(b).

3                        (b)        <u>Reasonably Equivalent Value</u>.  The second element for a fraudulent transaction

4    is that the Debtor received less than reasonably equivalent value.  Under the Bankruptcy Code, the

5    Ninth Circuit case law and the California statutes, "reasonably equivalent value" is to be determined

6    from the standpoint of the consideration received by the debtor and its creditors, as opposed to the

7    consideration provided by the defendant.  <u>In re Prejean</u>, 994 F.2d 706, 708 (9th Cir. 1993) (California

8    statute); <u>In re Maddalena</u>, 176 B.R. 551, 555 (Bankr.C.D.Cal. 1995) ("what constitutes reasonably

9    equivalent value must be determined from the standpoint of the benefit to the Debtors' creditors, not

10   from Defendant's perspective."); <u>In re 3dfx Interactive, Inc.</u>, 389 B.R. 842, 863 (Bankr.N.D.Cal. 2008)

11   ("Because the policy behind fraudulent conveyance law is to preserve assets of the estate, reasonably

12   equivalent value is determined from the standpoint of the estate's creditors, it is not determined from

13   the defendant's perspective.").

14          In fact, a debtor does not receive reasonably equivalent value where the debtor encumbers its

15   assets with respect to a loan in which the loan proceeds are provided to an affiliated entity, including

16   parent and sister corporations.  *See also* <u>In re Pajaro Dunes Rental Agency, Inc.</u>, 174 B.R. 557 (Bankr.

17   N.D.Cal. 1994) (debtor did not receive "reasonably equivalent value" for its obligation to the lender on

18   a $1 million promissory note, through delivery of $1 million in funds to debtor's corporate parent); <u>In re

19   Fair Oaks, Ltd.</u>, 168 B.R. 397, 402 (9th Cir. BAP 1994) (debtor received less than reasonably

20   equivalent value in exchange for deed of trust encumbering its sole asset, where no consideration was

21   provided to debtor, but, rather, transfer was made for benefit of general partner's president and separate

22   entity in which president held interest); <u>Smith v. American Founders Financial, Corp.</u>, 365 B.R. 647,

23   666-667(S.D.Tex. 2007) ("Generally, a transferor receives less than reasonably equivalent value when

24   it transfers property in exchange for consideration that passes to a third party.  … When the

25   consideration for a transfer passes to the parent corporation of a debtor-subsidiary that is making the

26   transfer, as in this case, the benefit to the debtor may be presumed to be nominal, absent proof of

27   specific benefit to the debtor itself."); <u>Leibowitz v. Parkway Bank & Trust Co.</u>, 210 B.R. 298

28   (N.D.Ill.1997), *aff'd*, 139 F.3d 574 (7th Cir.1998) ("This shift of risk from the creditors of the debtor to

1    the creditors of the guarantor is exactly the situation that fraudulent transfer law seeks to avoid when

2    applied to guarantees. Thus, while [the debtor] received an indirect benefit from the transaction, it did

3    not receive reasonably equivalent value."); In re Marquis Products, Inc., 150 B.R. 487, 492

4    (Bankr.D.Me.1993) (debtor did not receive reasonably equivalent value for conveying the mortgage to

5    serve as collateral for the loan to the parent); In re Art Unlimited, 356 B.R. 700 (Bankr.E.D.Wis. 2006)

6    (debtor did not receive reasonably equivalent value in exchange for the sale of its assets, the proceeds

7    of which went to pay the debts of its principal, not to pay its own trade creditors); In re Newtowne, 157

8    B.R. 374, 379 (Bankr. S.D.Ohio 1993) (debtor's payment of affiliated company's debt, significantly

9    diminishing debtor's net worth, could be avoided as a fraudulent transfer).  See also In re TriGem

10   America Corp., 431 B.R. 855, 868 (Bankr.C.D.Cal. 2010) (debtor-subsidiary did not receive

11   "reasonably equivalent value" for transfer to parent company's lender); 5 Collier on Bankruptcy, 15th

12   Ed. Revised ¶ 548.05 (2011).

13        Here, the proceeds from the SunCal Communities I Loan Agreement were used in part to fund

14   the projects of Acton Estates, Beaumont, Johannson, Emerald Meadows, Bickford Ranch and Summit

15   Valley as well as other projects.  The funds advanced under the SunCal Communities I Loan

16   Agreement were such that the alleged Borrowers and Additional Grantors each received only a small

17   portion of the loan funds, or no funds at all:

| Alleged Borrower or Additional Grantors | SunCal Communities I Loan proceeds received |
|---|---|
| Acton | $ 380,069 |
| Bickford Ranch | 174,570,287 |
| Emerald Meadows | 44,763,858 |
| Summit Valley | 9,925,373 |
| SunCal I | 0 |
| SunCal III | 0 |

23        The funds advanced under the SunCal Communities I Loan Agreement were also directed to

24   certain other entities who were neither alleged Borrowers nor Additional Grantors under the SunCal

25   Communities I Loan Agreement, as follows:

| Loan Proceed Recipient | SunCal Communities I Loan proceeds received |
|---|---|
| Beaumont | $ 42,030,925 |
| Johannson | 14,636,674 |

-17-

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

Based on the SunCal Communities I Loan, LCPI has filed identical proofs of claim for $343,221,391 against the estates of SunCal I, SunCal III, Acton, Bickford Ranch, Emerald Meadows, and Summit Valley. See RJN, Exs. 1 - 6. Consequently, as a result of the SunCal Communities I Transfers, each of the respective Debtors incurred net liabilities far in excess of their respective value received, thus, satisfying the second element of lack of reasonably equivalent value.

| Debtor | Original Obligation Amount | Loan Proceeds received | Excess Net Liability Incurred[11] | Lehman Claim Amounts |
|--------|---------------------------|------------------------|-----------------------------------|---------------------|
| Acton | $ 395,313,713.37 | $ 380,069 | $ 394,933,644.37 | $ 343,221,391 |
| Bickford Ranch | 395,313,713.37 | 174,570,287 | 220,743,426.37 | 343,221,391 |
| Emerald Meadows | 395,313,713.37 | 44,763,858 | 350,549,855.37 | 343,221,391 |
| Summit Valley | 395,313,713.37 | 9,925,373 | 385,388,340.37 | 343,221,391 |
| SunCal I | 395,313,713.37 | $0 | 395,313,713.37 | 343,221,391 |

(c)  The Debtors Were Rendered Insolvent. The third and final element is that the respective Debtors were rendered insolvent as a result of the transfers. Under Bankruptcy Code § 101(32) and California Civil Code § 3439.02(a), the term insolvent means that the individual Debtor's debts are greater than the fair market value of such Debtor's property. See also In re Sierra Steel, Inc., 96 B.R. 275, 277 (9th Cir. BAP 1989) ("[U]nder this "balance sheet" test a debtor is insolvent when its liabilities exceed its assets."); In re Fair Oaks, Ltd., 168 B.R. 397, 402 (9th Cir. BAP 1994) ("The question of insolvency is essentially whether the debtor's liabilities exceeded the debtor's assets for the period of time in question.").

A determination of insolvency can be made based on an appraisal of the debtors' properties, particularly where the debtor owns a single asset. In re Fair Oaks, Ltd., 168 B.R. 397 at 402 (reversing summary judgment for defendant and remanding with instructions to enter summary judgment for trustee on fraudulent transfer claim); see also In re Martushev, Slip Copy, 2010 WL 5256802 at *8 (Bankr. D. Mont. 2010) (plaintiff satisfied initial burden of showing insolvency based on debtor's schedules and requests for admission, and was entitled to summary judgment on fraudulent transfer claim.).

---

[11] Original loan amount less loan proceeds received by each respective Debtor.

000670

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

As stated, LCPI made the "SunCal Communities I Loan" to SunCal I, SunCal III, SunCal Acton, Bickford Ranch, Emerald Meadows, and Summit Valley, in the maximum aggregate principal amount of approximately $395,313,713.37.  See RJN, Exs. 1 - 6.  However, at this time, the respective properties were appraised or valued at amounts substantially less than the joint and several $395 million debt created by the transaction and therefore rendered each of the Debtors' insolvent.  The Lehman Entities obtained appraisals of the various projects owned by the Debtors (the "Lehman Appraisals"), several of which appraisals are contemporaneous with the dates in which the loan obligations where incurred by the respective Debtors.  As to the Acton and Bickford Ranch projects, the Lehman Appraisals are as follows:

| Debtor | Lehman Appraisal Date | Lehman Appraised Value | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|
| Acton | 12/12/06 | $ 13,500,000 | 1/16/07[12] | $ 395,313,713.37 |
| Bickford Ranch | 9/29/06 | 237,500,000 | 8/25/06 | 395,313,713.37 |

The Lehman Appraisals of the Acton and Bickford projects are attached to the Strickland Declaration as exhibits 5 and 6.

As to the Emerald Meadows and Summit Valley projects, there are no contemporaneous appraisals, however, there are Lehman Appraisals both before and after the respective obligations were incurred as follows:

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraised Value[13] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraised Value[14] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Emerald Meadows | 9/16/06 | 64,500,000 | 12/7/08 | 12,000,000 | 7/17/07 | 395,313,713.37 |
| Summit Valley | 9/16/06 | 59,400,000 | 12/1/08 | 5,200,000 | 11/17/06 | 395,313,713.37 |

---

[12] As set forth above Claim 6 filed against Acton fails to establish or attached an Assumption Agreement as to Acton.  However, Claim 6-3 attaches a deed of trust against Acton recorded on January 16, 2007.

[13] The Pre-Loan Lehman Appraisals for the Emerald Meadows and Summit Valley projects are attached to the Strickland Declaration as exhibits 9 and 10.

[14] The Post-Loan appraisals for the Emerald Meadows and Summit Valley projects were filed by the Lehman Entities in the above entitled case, as docket nos. 64-10 and 66-1, and are attached to the request for judicial notice as Exhibits 20 and 21.

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1      The Lehman Appraisals, both before and after the respective obligations were incurred, establish

2 the loan obligation substantially exceeded the market value of each of the respective Debtor's assets.

3 Further, the Moving Voluntary Debtors' discounted cash flow analysis establishes the project values set

4 forth above at the date the SunCal Communities I Loan obligations were incurred, as follows.

| Debtor | Valuation Date | Project Value | Date Obligation Incurred | Original Obligation |
|---|---|---|---|---|
| Emerald Meadows | 7/17/07 | 57,605,858 | 7/17/07 | 395,313,713.37 |
| Summit Valley | 11/17/06 | 52,992,651 | 11/17/06 | 395,313,713.37 |

See Strickland Declaration, ¶¶ 27 and 28.

      Accordingly, as to each of the above referenced Debtors, the SunCal Communities I Loan

obligations substantially exceeded the fair market value of the Debtor's assets, rendering each such

Debtors insolvent as a result thereof.[15]  See Fair Oaks, 168 B.R. at 402-03 (where debtor's liabilities

were $1,400,000 million as of May 1991, when transfer occurred, and debtor's sole asset was appraised

at $1,220,000 as of June 1992, debtor was insolvent as a matter of law).  Consequently, these Debtors

were rendered insolvent as a result of the incurrence of the SunCal Communities I Loan obligations,

thus, satisfying the third element.

      In summary, during the applicable time period, each of these Debtors became allegedly liable

for the full amount of the SunCal Communities I Loan Agreement in the maximum principal amount of

$395,313,713.37.  Each of the above Debtors' net liabilities (after receipt of loan proceeds, if any)

increased by between $220 million and $395 million as a result of the SunCal Communities I Transfers.

Each of the Debtors incurred liability on the loan which alone vastly exceeded the fair market value of

its project, rendering each respective debtor insolvent.   Thus, these Debtors have made a prima facie

showing that the SunCal Communities I Transfers were fraudulent transfers for the purposes of 11

U.S.C. § 502(d).

---

[15] SunCal I does not, and did not own any real property at the time of the SunCal Communities I
Transfers.  Pursuant to the Stipulation [docket no 1297], LCPI stipulated that the value of SunCal I's
equity membership interest in Acton, Summit, Bickford, Emerald, Beaumont and Johannson, shall be
"valued at $0.00."  See RJN, Ex. 16.  Accordingly, by incurring a $395,313,713.37 liability, SunCal
I's assets were unreasonably small in relation to the business or transaction, and was incurring debts
beyond its ability to pay as they became due.

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

**(2)**   **SCC Palmdale Fraudulent Transfers.**

On March 30, 2007, LCPI entered into that certain Mezzanine Credit Agreement dated March 30, 2007, with SCC Palmdale ("SCC Palmdale Loan"). On March 30, 2009, LCPI filed Proof of Claim No. 1-1 against SCC/Palmdale in the amount of $119,664,305.25, based upon the SCC Palmdale Loan. See RJN, Ex. 7. Although the SCC Palmdale Loan was made to SCC Palmdale, and although it was secured by SCC Palmdale's allowed interest in Palmdale Hills, the entire loan proceeds were used by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve SCC Palmdale or Palmdale Hills. *See* Cook Declaration, ¶ 11; Rollins Declaration, ¶ 6.

(a)   Date Obligation Was Incurred. The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…" SCC/Palmdale filed its voluntary chapter 11 petition on November 7, 2008. The SCC Palmdale Loan was entered into on or about March 30, 2007. See RJN, Ex. 7. Thus, the obligation was incurred within two years of the petition date for the purposes of avoidance under Section 548(a)(1). The preceding obligations and related transfers are referred to herein as the "SCC Palmdale Transfers."

(b)   Reasonably Equivalent Value. The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value. SCC Palmdale received no consideration in exchange for the SCC Palmdale Transfers. The entire loan proceeds were used by LCPI to make a paydown on the SunCal Communities I Loan Agreement that did not involve SCC Palmdale or Palmdale Hills. *See* Cook Declaration, ¶ 11; Rollins Declaration, ¶ 6. Thus, SCC Palmdale clearly did not receive "reasonably equivalent value".

(c)   The Debtor Was Rendered Insolvent. The third and final element is that the respective debtor was rendered insolvent as a result of the transfers. SCC Palmdale does not own any project but rather holds the equity interests in Palmdale Hills. LCPI has repeatedly taken the position that SCC/Palmdale's equity interest in Palmdale Hills had no value. For example, on January 23, 2009, LCPI filed a motion for relief from stay as to SCC/Palmdale contending that the equity interest in Palmdale Hills had a value of "$0". See RJN, Ex. 22 (page 10, lines 9-10). Furthermore, the LCPI

000673

MAINDOCS-#159292-v9-SCC_Motion_502(d).DOC

previously stipulated [Docket No. 1297] that SCC Palmdale's equity interest in Palmdale Hills was valueless. See RJN, Ex. 16. Specifically, on June 30, 2009, certain Voluntary Debtors filed the *Motion for Order: (1) Valuing Collateral of Certain Disputed Creditors; (2) Avoiding Certain Disputed Liens Pursuant to 11 U.S.C. §506(d); and (3) Preserving Avoided Lien(s) for the Respective Estates Pursuant to 11 U.S.C.§551* (the "Motion") (Docket No. 368) seeking an order *inter alia* valuing certain collateral, including the equity interest in Palmdale Hills, at zero dollars. This "zero" valuation was based *inter alia* upon the Lehman Appraisal of the Ritter Ranch Project ($42,900,000) and Palmdale Hills' cash (approximately $24 million), which aggregate less than the amount of the alleged first priority deed of trust asserted by Lehman Commercial in the amount of $287,252,096 against the Ritter Ranch Project (LCPI's Claim No. 65 asserted against Palmdale Hills). See RJN, Ex. 19. On or about August 17, 2010, the Lehman Entities and certain Voluntary Debtors, including SCC Palmdale, filed a stipulation [Docket No. 1297] whereby LCPI stipulated that the pledge of SCC Palmdale's interests in Palmdale Hills (defined therein as the "SCC Palmdale Lien") "shall be valued at $0.00." See RJN, Ex. 16. Accordingly, SCC Palmdale was rendered insolvent as a result of its incurrence a liability of $120 million as a result of the SCC Palmdale Transfer which clearly exceeded the value of its equity interest in Palmdale Hills.

SCC Palmdale has made a *prima facie* showing that the SCC/Palmdale Transfer was fraudulent transfers for the purposes of 11 U.S.C. § 502(d). Therefore, Proof of Claim No. 1 filed against SCC Palmdale in the amount of $120 million should be disallowed pursuant to Bankruptcy Code Sections 502(d).

### (3)    Oak Knoll/Torrance Fraudulent Transfers.

On November 30, 2006, Lehman ALI entered into that certain Loan Agreement, dated as of November 30, 2006, by and among Torrance and Oak Knoll, as borrowers, and Lehman ALI, as agent and sole lender (the "Oak Knoll/Torrance Loan Agreement"). On March 30, 2009, Lehman ALI filed substantially identical claims, Proof of Claim No. 12 against Oak Knoll in the amount of $158,141,364.64, and Proof of Claim No. 4 against Torrance in the amount of $ 157,870,186.15, arising from the Oak Knoll/Torrance Loan Agreement. See RJN, Exs. 8 and 9.

000674

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

(a) <u>Standing to Object to Claims in Trustee Debtor Cases</u>. SunCal Management is the moving party on the objections to claims in the specified Trustee Debtors' cases in its capacity as a creditor in all of the Trustee Debtors' cases. A party in interest has standing to objection to claims. 11 U.S.C. §502(a) ("a claim…is deemed allowed, unless a party in interest…objects"). *See also* Advisory Committee Notes to Bankruptcy Rule 3007 ("any party in interest may object to a claim"). The Ninth Circuit has similarly held that "any party in interest" can object to a claim pursuant to Section 502(a):

> Again, any party in interest can object. *See* 11 U.S.C. § 502(a). Although the trustee in Siegel's bankruptcy could have objected to Freddie Mac's proofs of claim, Siegel could have objected as well. *See Lawrence v. Steinford Holding B.V. ( In re Dominelli),* 820 F.2d 313, 316 (9th Cir.1987) (stating that under 11 U.S.C. § 502(a) a party in interest, including the trustee, can object to a proof of claim); *see also IRS v. Taylor (In re Taylor),* 132 F.3d 256, 261 (5th Cir.1998) ("Once a proof of claim is filed, the debt is considered allowed unless the debtor or another party in interest files an objection to the proof of claim."); *FDIC v. Union Entities (In re Be-Mac Transp.),* 83 F.3d 1020, 1025 (8th Cir.1996) ("In order to disallow the claim, the debtor or another party in interest must object and request a determination of the lien's validity.")

<u>Siegel v. Federal Home Loan Mortg. Corp</u>., 143 F.3d 525, 531 (9th Cir. 1998). See also <u>In re Anderson</u>, 382 B.R. 496, 506 (Bankr.D.Or. 2008) ("To the extent [the plan] limits the parties who may file claims objections to the Debtors and the trustee, it is inappropriate as any party in interest has standing to object to claims. § 502(a)."); <u>In re QMect, Inc</u>., 349 B.R. 620, 625 (Bankr.N.D.Cal. 2006) ("A creditor or creditors' committee has standing independent of the trustee or debtor-in-possession to object to another creditor's claim as long as it has something to gain if it prevails.").

As set forth below, SunCal Management is a creditor and party in interest with respect to the Trustee Debtors' cases which are the subject of this Motion, and thus has standing under Section 502(d).

| Trustee Debtor | SunCal Management Unsecured Claim | SunCal Management Admin Claims |
|---|---|---|
| Delta Coves | 1,084,858.63 | 1,189,572.40 |
| Oak Valley | 1,163,688.91 | 502,979.78 |
| Heartland | 397,455.41 | 588,957.60 |
| Marblehead | 1,799,805.75 | 1,583,624.96 |
| Oak Knoll | 462,392.86 | 2,308,422.05 |
| Torrance | 148,578.54 | 97,749.00 |
| **Total** | **7,348,766.65** | **10,435,862.92** |

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

(b)  <u>Date Obligation Was Incurred</u>.  The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…"  An involuntary petition was filed against Torrance on November 14, 2008, and an involuntary petition against Oak Knoll was filed on November 19, 2008.  The Oak Knoll/Torrance Loan Agreement was entered into on November 30, 2006.  See RJN, Exs. 8 and 9.  (The preceding obligations and related transfers are referred to herein as the "Oak Knoll/ Torrance Transfers").  Thus the Oak Knoll/Torrance Transfers were made within two years of the petition date for the purposes of avoidance under Section 548(a)(1).

(c)  <u>Reasonably Equivalent Value.</u>  The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value.  Both Oak Knoll and Torrance were liable for the full amount of the Oak Knoll/Torrance Loan Agreement, in the original amount of $167 million.  The Oak Knoll/Torrance Loan Agreement was cross-collateralized by the Oak Knoll Project and the Del Amo Project.  See RJN, Exs. 8 and 9.  However, the loan proceeds received by Oak Knoll were only $103,575,426 and the loan proceeds received by Torrance were only $45,185,350.  See Rollins Declaration, ¶ 7.  In connection with the Oak Knoll/Torrance Loan, each of these Debtor's net liabilities (after receipt of loan proceeds, if any) increased by $63 million and $121 million, respectively, as a result of the Oak Knoll/Torrance Loan Transfers.

As the chart below illustrates, the transaction contemplated by the Oak Knoll/Torrance Loan Agreement also presents classic fraudulent conveyances.

| Debtor | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred[16] | Lehman Claim Amount |
|---|---|---|---|---|
| Oak Knoll | 167,000,000.00 | 103,575,426 | 63,424,574.00 | 158,141,365 |
| Torrance | 167,000,000.00 | 45,185,350 | 121,814,650.00 | 158,141,365 |

(d)  <u>The Debtors Were Rendered Insolvent.</u>  The third and final element is that the respective Debtors were rendered insolvent as a result of the transfers.  Each of the Debtors incurred liability on the Oak Knoll/Torrance Loan Agreement which alone exceeded the fair market value of its respective project, rendering each Debtor insolvent.  As shown in the above chart, at this time, the

---

[16] Original loan amount less loan proceeds received by each respective Debtor.

000676

MAINDOCS-#159292-v1-RSCE_Motion_502(d).DOC

Case 8:13555-mg  Doc 17497-4  Filed 06/08/11  Entered 06/08/11 12:43:49  Exhibits
9-15  Pg 37 of 54

respective properties were appraised at amounts substantially less than the joint and several $167 million debt created by the transaction and therefore rendered each of these Debtors' insolvent. Specifically, the Oak Knoll project was appraised at a value of $127,800,000 as of January 14, 2006, and was later appraised at a value of $48,000,000 as of December 2008. See Strickland Declaration, ex. 9. The Torrance (Del Amo) project was appraised at $89,300,000 as of January 15, 2006, and later appraised at $25,000,000 as of November 2008. See Strickland Declaration, ex. 10.

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraised Value[17] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraised Value[18] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Oak Knoll | 1/14/06 | 127,800,00 | 12/5/08 | 48,000,000 | 11/30/06 | 316,061,300 |
| Torrance | 1/15/06 | 89,300,000 | 11/28/08 | 25,000,000 | 11/30/06 | 316,061,300 |

Accordingly, the Lehman Appraisals, both before and after the respective obligations were incurred, establish the loan obligation substantially exceeded the market value of each of the respective Debtor's assets. Further, the Moving Voluntary Debtors' discounted cash flow analysis ¶establishes the project values set forth above at the date the SunCal Communities I Loan obligations were incurred, as follows.

| Debtor | Valuation Date | Project Value | Date Obligation Incurred | Original Obligation |
|---|---|---|---|---|
| Oak Knoll | 11/30/06 | $145,934,757 | 11/30/06 | $316,061,300 |
| Torrance | 11/30/06 | $82,988,446 | 11/30/06 | $316,061,300 |

See Strickland Declaration, ¶¶ 29 and 30.

Utilizing any of these valuations, these Debtors were rendered insolvent as a result of the incurrence of the loan obligation, thus, satisfying the third element.

---

[17] The Pre-Loan Lehman Appraisals for the Oak Knoll and Torrance (Del Amo) projects are attached to the Strickland Declaration as exhibits 12 and 13.

[18] The Post-Loan appraisals for the Oak Knoll and Torrance (Del Amo) Projects were filed by the Lehman Entities in the above entitled case, as docket no. 133, and are attached to the request for judicial notice as Exhibit 17.

000677

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

The SunCal Parties have made a *prima facie* showing that the Oak Knoll/Torrance Transfers were fraudulent transfers. Therefore, Proof of Claim No. 12 against Oak Knoll and Proof of Claim No. 4 against Torrance should be disallowed pursuant to 11 U.S.C § 502(d).

**(4)** **The Marblehead/Heartland Fraudulent Transfers.**

On October 3, 2007, Lehman ALI entered into that certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, Marblehead, and Heartland, as borrowers, and Lehman ALI, as agent and sole lender (the "Marblehead/Heartland Loan Agreement"). On March 30, 2009, Lehman ALI filed identical Proof of Claim No. 9 against Heartland and Proof of Claim No. 21 against Marblehead in the amount of $354,325,126 based on the Marblehead/Heartland Loan Agreement. See RJN, Exs. 10 and 11.

(a) Date Obligation Was Incurred. The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…" Involuntary petitions were filed against both Marblehead and Heartland on November 12, 2008. The Marblehead/Heartland Loan Agreement was entered into on or about October 3, 2007. See RJN, Exs. 10 and 11. Thus the "transfer" or "obligation" was made within two years of the petition date for purposes of Section 548. The preceding obligations and related transfers are referred to herein as the "Marblehead/Heartland Transfers."

(b) The Debtors Received Less than Reasonably Equivalent Value. The second element for a fraudulent transaction is that the Debtors received less than reasonably equivalent value. Heartland and Marblehead were liable for the full amount of the Marblehead/Heartland Loan. The loan proceeds received by Marblehead were only $258,843,352 and the loan proceeds received by Heartland were only $49,594,848. See Rollins Declaration, ¶ 8. In connection with the Marblehead/Heartland Loan, each of the debtor's net liabilities (after receipt of loan proceeds, if any) increased by $57 million and $266 million, respectively, as a result of the Marblehead/Heartland Loan Transfers.

As the chart below illustrates, the transaction contemplated by the Marblehead/Heartland Loan Agreement also presents fraudulent conveyances.

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

| Debtor | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred[19] | Lehman Claim Amount |
|---|---|---|---|---|
| Marblehead | 316,061,300 | 258,843,352 | 57,217,948.00 | 354,325,126 |
| Heartland | 316,061,300 | 49,594,848 | 266,466,452.00 | 354,325,126 |

(c)    The Debtors Were Rendered Insolvent.  The third element is that the respective Debtors were rendered insolvent as a result of the transfers.  Each of the Debtors incurred liability on Marblehead/Heartland Loan Agreement which alone exceeded the fair market value of its respective project, rendering each Debtor insolvent.  As shown in the above chart, at this time, the respective properties were appraised at amounts substantially less than the joint and several $354,325,126 debt created by the transaction and therefore rendered each of these Debtors' insolvent.  Specifically, the Marblehead project was appraised at a value of $284,500,000 as of June 2007, and the Heartland project was appraised at $61,500,000.  See Strickland Declaration, exs. 11 and 12.

| Debtor | Pre-loan Lehman Appraisal Date | Pre-loan Lehman Appraisal[20] | Post-loan Lehman Appraisal Date | Post-loan Lehman Appraisal[21] | Date Obligation Incurred | Original Obligation Amount |
|---|---|---|---|---|---|---|
| Marblehead | 6/1/07 | 284,500,00 | 12/20/08 | 187,500,000 | 10/3/07 | 316,061,300 |
| Heartland | 6/1/07 | 37,400,000 | 12/7/08 | 7,900,000 | 10/3/07 | 316,061,300 |

Consequently, based upon the appraised value of the Marblehead and Heartland Projects, both before and after the incurrence of the loan, these Debtors were rendered insolvent by the incurrence of the loan obligation, satisfying the third element.

The SunCal Parties have made a *prima facie* showing that the Marblehead/Heartland Transfers were fraudulent transfers for the purposes of 11 U.S.C. § 502(d).  Therefore, Proof of Claim No. 21 asserted by Lehman ALI against Marblehead, and Proof of Secured Claim No. 9 asserted by Lehman ALI against Heartland, should be disallowed pursuant to Bankruptcy Code Section 502(d).

---

[19] Original loan amount less loan proceeds received by each respective Debtor.

[20] The Pre-Loan Lehman Appraisals for the Marblehead and Heartland projects are attached to the Strickland Declaration as exhibits 14 and 15.

[21] The Post-Loan appraisals for the Marblehead and Heartland Projects were filed by the Lehman Entities in the above entitled case, as docket no. 133, and are attached to the request for judicial notice as Exhibit 17.

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

     (5)    **Interim Loan Fraudulent Transfers.**

On October 31, 2007, Lehman ALI entered into that certain Loan Agreement, dated as of October 31, 2007, by and between SCC Acquisitions LLC, as borrower and Lehman ALI, as lender (the "Interim Loan Agreement"). Lehman ALI has filed identical Proof of Claim No. 9 against SCC Communities, Proof of Claim No. 7 against Tesoro, and Proof of Claim No. 14 against Del Rio in the amount of $23,795,013 based upon the Interim Loan Agreement. See RJN, Exs. 12, 13 and 14.

None of the Debtors was a "borrower" under the Interim Loan Agreement. Rather, as set forth in Lehman ALI's respective proofs of claim, the liability against SCC Communities, Tesoro and Del Rio arise because each of these Debtors "is a guarantor under that certain Subsidiary Guaranty dated as of October 31, 2007, as amended and/or supplemented." Id.

     (a)    <u>Date Obligation Was Incurred</u>. The first element of Section 548(a) requires that the "transfer" or "obligation" "was made or incurred on or within 2 years before the date of the filing of the petition…" Here, the three Debtors – SCC Communities, Tesoro and Del Rio – each filed voluntary Chapter 11 petition on November 19, 2008. The Interim Loan Agreement and Subsidiary Guaranties are dated as of October 31, 2007. See RJN, Exs. 12, 13 and 14. (The preceding obligations and related transfers are referred to herein as the "Interim Loan Transfers") Thus the Interim Loan Transfers were within two years of the petition date for the purposes of 11 U.S.C. § 548(a).

     (b)    <u>The Debtors Did Not Receive Reasonably Equivalent Value</u>. The second element for a fraudulent transaction is that the Debtor received less than reasonably equivalent value. The Interim Loan Agreement was entered into with the Voluntary Debtors' parent, SCC Acquisitions LLC, *not* with SCC Communities, Tesoro or Del Rio. Rather SCC Communities, Tesoro or Del Rio each executed a Subsidiary Guaranty with Lehman ALI guaranteeing the same. See RJN, Exs. 12, 13 and 14.[22] Of the $20 million in proceeds from the Interim Loan Agreement paid to the parent entity, SCC Acquisitions LLC, only $78,000—less than one half of one percent of the total—was used to fund SCC Communities, SunCal Tesoro or SunCal Del Rio or their properties, as follows:

---

[22] The attachment to each proof of claim states: "The liability against the Debtor arises because the Debtor is a guarantor under that certain Subsidiary Guaranty, dated as of October 31, 2007, as amended and/or supplemented."

000680

MAINDOCS-#159292-v3-SCC_Motion_502(d).DOC

| Debtor | Amount of Loan Proceeds Received | Percentage of Loan Proceeds |
|---|---|---|
| Del Rio | 50,000.00 | 0.25 |
| SCC Communities | 12,441.85 | 0.06 |
| Tesoro | 15,468.38 | 0.08 |
| **TOTAL** | **77,910.23** | **0.39** |

Rollins Declaration, ¶ 9, Exh. 1. At Lehman ALI's direction and insistence, the remainder of the proceeds were used to pay down debts of parties other than these three Debtors, primarily with regard to projects on which Lehman ALI or its affiliates were lenders. Cook Declaration, ¶ 20; Rollins Declaration, ¶ 9, Exh. 1. "This shift of risk from the creditors of the debtor to the creditors of the guarantor is exactly the situation that fraudulent transfer law seeks to avoid when applied to guarantees." In re Image Worldwide, 139 F.3d at 581-82.

In In re Pajaro Dunes Rental Agency, Inc., 174 B.R. 557 (Bankr.N.D.Cal. 1994), the debtor brought an adversary proceeding to avoid alleged fraudulent transfers. The court held that the debtor did not receive "reasonably equivalent value" for its obligation to the lender on a $1 million promissory note, through delivery of $1 million in funds to debtor's corporate parent. 174 B.R. at 562, 579. The court found that the money was taken by the corporate parent for the debtor subsidiary, and the creditor had no reason to believe that the parent would not transfer the funds for the benefit of the debtor subsidiary's real property assets, for which the loan was provided. Id. at 580-81. Here, the case for avoidance is even more compelling: Lehman ALI specifically directed that the monies were *not* to be used by the subject Debtors or for their assets. Rather, Lehman ALI made the Interim Loan contingent on paying off other Lehman ALI debt not related to these Debtors' assets, while using these Debtors' assets for security for such debts and diminishing their value.

(c) The Debtors Were Rendered Insolvent. The third element is that the respective Debtors were rendered insolvent as a result of the transfers. Each of these Debtors incurred a $20 million obligation when they guaranteed the Interim Loan, and put up their respective properties as security for that loan, in or about November 2007. (That obligation has since allegedly grown to at least $23,795,013 based on the proofs of claim filed by Lehman ALI) This $20 million-plus liability far exceeds the value of these Debtors' assets at the time the Interim Loan Transfers occurred.

000681
MAINDOCS-#159292-v1-Nece_Motion_502(d).DOC

The value of the Tesoro Project was estimated to be between $8.6 million and $10.8 million at or about the time of the Interim Loan Transfers. Strickland Declaration, ¶ 6, Ex. 2. The value of the Joshua Ridge Project (the sole asset of SCC Communities) was estimated to be $2.3 million at or about the time of the Interim Loan Transfers. Strickland Declaration, ¶ 7, Ex. 3. The value of the assets of Del Rio—the future right to receive anticipated net CFD bond proceeds—was estimated to be $14.2 million in December 2007, at or about the time of the Interim Loan Transfers. Strickland Declaration, ¶ 8, Ex. 4.

| Debtor | Asset Value | Original Obligation amount | Loan Proceeds Received | Excess Net Liability Incurred | Lehman Claim Amount |
|---|---|---|---|---|---|
| SCC Communities | 2,300,000 | 20,000,000 | 12,441.85 | 19,987,558.15 | 23,795,013 |
| Tesoro | 8,600,000 to 10,800,000 | 20,000,000 | 15,468.38 | 19,984,531.62 | 23,795,013 |
| Del Rio | 14,200,000 | 20,000,000 | 50,000.00 | 19,950,000.00 | 23,795,013 |

Thus, SCC Communities, Tesoro and Del Rio were each rendered insolvent by the Transfers as a matter of law. Accordingly, these Debtors have made a *prima facie* showing that the Interim Loan Transfers were fraudulent transfers. Therefore, Proof of Claim No. 9 against SCC Communities, Proof of Claim No. 7 against Tesoro, and Proof of Claim No. 14 against Del Rio should be disallowed pursuant to Bankruptcy Code Sections 502(d).

**C.     Unsecured Creditors Exist for the Purposes of Section 544(b).**

As to the fraudulent transaction claims brought under California Civil Code Section 3439, via 11 U.S.C. § 544(b), the transfer must be avoidable "by a creditor holding an unsecured claim." As set forth below, only two of the subject loan obligations were made more than two years prior to the petition date, and thus only these two obligations require the invocation of the 4 year reach back under California law for causes of action under Cal.Civ.Code § 3439. These two obligations are as follows:

- SunCal Communities I executed the SunCal Communities I Loan dated November 17, 2005.
- Bickford executed an "Assumption Agreement" dated as of August 25, 2006, whereby Bickford became an additional Grantor as to the Guarantee and Collateral Agreement relating to the SunCal Communities I Loan.

Here, qualifying creditors exist as to both SunCal I and Bickford. California Civil Code Section 3439.04 provides that a transfer is fraudulent "as to a creditor, whether the creditor's claim

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    arose before or **after** the transfer was made or the obligation was incurred…"  Accordingly, any future

2    creditor that is a claim arising after transfer, who holds an allowed claim as of the petition date, is also

3    a qualifying creditor for the purposes of Section 544(b).  As recognized by the Bankruptcy Appellate

4    Panel in In re Bushey, 210 B.R. 95, 104 (6th Cir.BAP 1997), any allowed unsecured claim in the case

5    will satisfy the requirement for a "future creditor."

> "Future" creditor is not separately defined by [state] law. A common sense definition
> is an entity with a claim arising after the challenged transfer, whether matured or
> unmatured, liquidated or unliquidated, absolute, fixed, or contingent.  Under [state
> law], a bankruptcy trustee can step into the shoes of any creditor that holds an
> allowable unsecured claim that arose after the challenged transfer. Rare indeed will
> be the bankruptcy case in which a trustee cannot identify such a creditor.

9    In re Bushey, 210 B.R. 95, 104 (6th Cir.BAP 1997).  See also In re Integra Realty Resources, Inc., 198

10   B.R. 352, 363 (Bankr.D.Colo.1996) ("the plain language of the statute which allows the post-transfer

11   creditors to be protected from the conveyance."); In re Musicland Holding Corp., 398 B.R. 761, 778

12   (Bankr.S.D.N.Y. 2008) ("future creditors may invoke [state avoidance statute], and Best Buy probably

13   assumed that creditors holding allowable claims against the Musicland estate also qualified as future

14   creditors under [state avoidance statute]."); In re RCM Global Long Term Capital Appreciation Fund,

15   Ltd., 200 B.R. 514, 523 n. 2 (Bankr.S.D.N.Y. 1996) ("even under section 544(b) that there is no

16   requirement that a present creditor have been in existence at the time of the transfer"); In re Healthco

17   Intern., Inc.,  195 B.R. 971, 980 (Bankr.D.Mass. 1996) ("future creditors have avoidance rights if a

18   transaction without adequate consideration leaves the debtor with unreasonably small capital"); In re

19   Morse Tool, Inc., 148 B.R. 97, 131 (Bankr.D.Mass. 1992) ("UFCA §§ 5 and 7, which extend standing

20   to 'future creditors'")

21       Accordingly, to support an action under Civil Code 3439.04, via 11 U.S.C. §544(b), the

22   qualifying creditor does not need to have been a "creditor" at the time of the transfer.  Any unsecured

23   creditor in SunCal I's and Bickford's case is a "creditor's claim [that] arose … **after** the transfer was

24   made or the obligation was incurred", and thus satisfies the requirements of a "qualifying creditor" for

25   purposes of Section 544(b).  Accordingly, while the SunCal Parties have specifically identified

26   qualifying creditors in existence at the time of the transfer was made as to Bickford, below, even this

27   task is unnecessary.  Any of the numerous unsecured claims set forth in the Debtors' schedules are

28   *qualifying creditors* for the purposes of Section 544(b).

000683

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

1    Accordingly, it is not necessary to have a qualifying creditor who was in existence at the time

2    the transfer was made, or the obligation was incurred. However, even assuming arguendo that a pre-

3    existing creditor is required, there are such qualifying creditors holding unsecured claims as against

4    Bickford at the time the transfer was made and the obligation was incurred. Specifically, qualifying

5    creditors include, but are not limited to the following:

000684

MAINDOCS-#159292-v1-SC_Motion_502(d).DOC

| Qualifying Creditors: |
| --- |
| Cook's Portable Toilets & Septic, |
| Ecorp Consulting Inc., |
| Fehr & Peers Associates Inc., |
| Heller Ehrman White & McAuliffe |
| Independent Construction Co. |
| Kiewit Pacific Co. |
| Land Architecture Inc. |
| Valley Utility Services |
| Restoration Resources |
| White Cap Construction Supply Inc. |
| Far West Construction Inc. |
| CH2M Hill Inc. |
| ARB Inc. |
| SunCal Management LLC |

*See* Rollins Declaration, ¶ 12. Accordingly, there are qualifying creditors for the purposes of §544(b).

**VI.**

**THE AVOIDABLE PREFERENCE PROVIDE GROUNDS FOR DISALLOWANCE OF
LEHMAN ALI'S CLAIM AGAINST DELTA COVES PURSUANT TO SECTION 502(d)**

As set forth above, Section 502(d) provides for the disallowance of any claim of an entity from which property is recoverable under section 550 or that is a transferee of a transfer avoidable under section 547, unless such entity or transferee has paid the amount, or turned over any such property.

Again, the Order Denying the Dismissal Motion establishes that the sixth claim for relief in the TAC (now the fourth claim for relief in the FAC) properly pled a claim for relief for the avoidance and recovery of preferential transfers. Thus, as a matter of law, the Debtors have established a "prima facie" case for the purposes of Section 502(d).

Furthermore, in support of this Motion, the SunCal Parties have submitted evidence in the form of supporting declarations that Lehman ALI has received transfers from Delta Coves, which are avoidable pursuant to Section 547(b). Section 547(b) of the Bankruptcy Code provides for the avoidance of preferential transfers as follows:

> (b) …the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC

(4) made-- … (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Here, within a year prior to the petition date (between November 2007 and May 2008), Delta Coves made pre-petition payments in the amount of $6,195,440.46 to Lehman ALI (the "Delta Coves Preferential Transfers").  These Delta Coves Preferential Transfers constitute avoidable transfers for the reasons set forth below:

(1)      The transfers of $6,195,440.46 were property of the Debtor, Delta Coves, and thus constituted an interest of the Debtor in property.  See Rollins Declaration, ¶ 10.

(2)      The $6,195,440.46 transfer was to and for the benefit of the creditor, Lehman ALI.  The Delta Coves Preferential Transfers were made at times at which Lehman ALI made demands for payment and were not paid according to any contract schedule.  See Rollins Declaration, ¶ 11.

(3)      Pursuant to Lehman ALI's Proof of Claim No. 21, the Delta Coves Loan Agreement is dated as of April 20, 2007, and thus constitutes an antecedent debt.  See Proof of Claim No. 21 attached to RJN as Exhibit 15.

(4)      The Delta Coves Loan was vastly undersecured and thus the transfer enabled Lehman ALI to receive more than if the case were under chapter 7 and the transfer had not been made.  See In re Furley's Transport, Inc., 272 B.R. 161, 173 (Bankr.D.Md. 2001) ("As a matter of general principle, unless unsecured creditors will receive a one hundred percent distribution, an undersecured creditor who receives a payment during the preference period will receive more than it would have received under a Chapter 7 liquidation if the payment does not release a proportional amount of secured collateral."); In re Rand Energy Co., 259 B.R. 274, 278 (Bankr.N.D.Tex. 2001) ("an undersecured creditor who receives payments is obtaining more than it would receive in a Chapter 7 liquidation to the extent that the payments reduced the unsecured deficiency").

-34-

MAINDOCS-#159292-v1-Sale_Motion_502(d).DOC

1    Here, Lehman ALI asserts that the Delta Coves Project had a fair market value of $25,200,000

2    as of January 9, 2009.[23]   Delta Coves was insolvent at and around the time of the Delta Coves

3    Transfers.  Lehman ALI filed a Proof of a Secured Claim in the amount of $206,023,142 (Proof of

4    Secured Claim No. 21).  Accordingly, by Lehman ALI's own admission, the claim is vastly

5    undersecured.  Moreover, Lehman ALI did not purport to release a proportional amount of secured

6    collateral in exchange for the Delta Coves Preferential Transfers.

7    Further, Lehman ALI's Proof of Claim 21-2 neither alleges nor attaches a "control agreement"

8    over the account from which the Delta Coves Preferential Transfers were made, and thus Lehman ALI

9    lacks a perfected security interest as to such funds.  See Com.Code §§ 9104(a), 9312(b)(1), and 9314.

10    Accordingly, Lehman ALI received more than if the case was under chapter 7 and the transfers

11    had not been made.

12    (5)    Further, Lehman ALI's appraisal and Proof of a Secured Claim effectively concede that

13    Delta Coves was insolvent.  Pursuant to Lehman ALI's Proof of Secured Claim No. 21, the remaining

14    principal balance as of the petition date was $186,437, 641.26 (inclusive of interest, services fees, late

15    charge and exit fees, Lehman ALI asserts a total claim of $206,023.142).  Accordingly, even the

16    principal balance of the Delta Coves Loan Agreement alone vastly exceeds Lehman ALI's appraised

17    value of the Delta Coves' project at $25,200,000.

18    (6)    Lehman ALI is an insider of Delta Coves, and thus preferential transfers include

19    transfers made within a year prior to the petition date.  Here, Delta Coves made pre-petition payments

20    in the amount of $6,229,328.88 to Lehman ALI, an affiliate of a Lehman entity holding a fifty percent

21    interest in Delta Coves within the year preceding Delta Cove's involuntary proceeding (between

22    November 2007 and May 2008).

23    On March 8, 2010, at the hearing resulting in the Order Denying The Dismissal Motions, this

24    Court found and stated on the record that Lehman ALI was a "statutory insider" as to the respective

25    Trustee Debtors.  The Court stated:

26

27    ───────────────
[23] On February 25, 2009, Lehman ALI submitted various appraisals, including an appraisal of the Delta
28    Coves Project as of January 9, 2009, attached as exhibit "I" to Docket No. 133.  See RJN, ex. "18".
The Delta Coves Preferential Transfers were made between November 2007 and May 2008.

000687

MAINDOCS-#159292-v1-VSCC_Motion_502(d).DOC

As to, in particular, the "statutory insider" status of Lehman ALI, OVC and Northlake Holdings, I did find persuasive the argument of the plaintiffs that these are "statutory insiders" within the meaning of Section 101(31)(E) as affiliates.

Specifically, the Court agreed with the Debtors' analysis as follows: Delta Coves' parent company has a SunCal affiliated manager member ("SunCal Manager") and a Lehman affiliated member ("Lehman Member").

| Debtor | Parent Company | SunCal Manager | Lehman Member | Lender |
|---|---|---|---|---|
| Delta Coves | Delta Coves Master JV LLC | SunCal Delta Coves LLC | LB/L–DUC III Master LLC | Lehman ALI |

LBHI indirectly owns the Lehman Member (LB/L–DUC III Master LLC) and also wholly owns Lehman ALI. The ownership can be represented visually as follows:



The statutory definition of an "insider" includes both an "affiliate" and an "insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. §101(31)(E). The term "affiliate" includes an "entity that directly or *indirectly* owns, controls, or holds with power to vote, 20 percent or more of the

000688

MAINDOCS-#159292-v1-OSCC_Motion_502(d).DOC

outstanding voting securities of the debtor" 11 U.S.C. § 101(2)(A).  Since the definition includes

"indirect" ownership, the term "affiliate" includes *a parent of a parent* of the debtor.  See In re

Interlink Home Health Care, Inc., 283 B.R. 429, 439 (Bankr.N.D.Tex. 2002) ("it is certain that the term

'affiliate' was intended to be broad enough to include a parent of a parent").

It is a matter of simple logic, LBHI is an affiliate of Delta Coves because it indirectly owns or

controls 20% or more of Delta Coves via its ownership of the LB Member, LB/L–DUC III Master

LLC.  As stated above, LBHI indirectly owns the LB Member (LB/L–DUC III Master LLC), which in

turn has an approximately 50% ownership interest in Delta Coves Master JV LLC  and therefore Delta

Coves as well.[24] Therefore, LBHI is an "affiliate" of the Trustee Debtors, including Delta Coves, within

the meaning of Section 101(2)(A).

Now, analyzing LBHI "as if such affiliate were the debtor," Lehman ALI is an insider of LBHI

because Lehman ALI is admittedly 100% owned by LHBI and is thus an affiliate of LBHI.  Since

Lehman ALI is an affiliate of LBHI, it is also an "insider" of LBHI.  Specifically, an "affiliate" is

included in the definition of an "insider."

Sibling affiliates that are "horizontally" related to a debtor through a common direct or indirect

parent to meet the statutory definition of an "insider" under 11 U.S.C. §101(31).  In re Reichmann

Petroleum Corp., 364 B.R. 916 (Bankr. E.D. Tex. 2007).  Accordingly, LBHI is an affiliate of Delta

Coves, and Lehman ALI is an insider of LBHI.  Therefore, Lehman ALI is an "insider of an affiliate as

if such affiliate were the debtor" pursuant to 11 U.S.C. §101(31)(E).

Consequently, the above constitutes a *prima facie* showing that Lehman ALI is a transferee of

transfers avoidable under Section 547 of the Bankruptcy Code, which Lehman ALI has failed to return

to Delta Coves' estate.  Proof of Claim No. 21 asserted by Lehman ALI against Delta Coves should

therefore be disallowed pursuant to 11 U.S.C. § 502(d).

---

[24] *See* Declaration of Marsha Jennings ("Jennings Declaration"), docket no. 1276, which is attached to
the RJN, exhibit 18, which attached the Delta Coves' Organizational Structure Chart identifying
various Lehman Brothers' "members" and "managers" in the ownership chain of Delta Coves.  The
Jennings Declaration identifies one of Delta Coves' parent companies as "LB/L – Lakeside Capital
Partners, LLC".  The Amended Corporate Ownership Statement filed in LBHI's Chapter 11 case,
attached to the RJN, exhibit 26, discloses LBHI's ownership of various entities including "LB/L –
Lakeside Capital Partners".

MAINDOCS-#159292-v1-Oscc_Motion_502(d).DOC

# VII.

## __CONCLUSION__

For the reasons set forth herein, the SunCal Parties request that the Court enter an order granting the relief requested herein.

DATED:  April 26, 2011

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:___/s/ *Paul J. Couchot*_____
     Paul J. Couchot, Esq.
     Peter W. Lianides, Esq.
     Payam Khodadadi, Esq.
General Insolvency Counsel for Administratively Consolidated Debtors-in-Possession ("Voluntary Debtors")

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**


By:__/s/ *Ronald Rus*_____
     Ronald Rus, Esq.
     Joel S. Miliband, Esq.
     Catherine Castaldi, Esq.
Attorneys for SunCal Management, LLC

MAINDOCS-#159292-v1-SCC_Motion_502(d).DOC
000690

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

    A true and correct copy of the foregoing document described as:  **THE MOVING VOLUNTARY DEBTORS' AND SUNCAL MANAGEMENT LLC'S MOTION FOR ORDER DISALLOWING CLAIMS OF LEHMAN ALI, INC. AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT TO 11 U.S.C. § 502(d); MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 26, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On April 26, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 26, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Via Attorney Service
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 26, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#159292-v1-SCC_-_Motion_502(d).DOC

000691

**NEF SERVICE LIST**

- Selia M Acevedo   sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
- Joseph M Adams   jadams@sycr.com
- Raymond H Aver   ray@averlaw.com
- James C Bastian   jbastian@shbllp.com
- Thomas Scott Belden   sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd   fednotice@tclaw.net
- Mark Bradshaw   mbradshaw@shbllp.com
- Gustavo E Bravo   gbravo@smaha.com
- Jeffrey W Broker   jbroker@brokerlaw.biz
- Brendt C Butler   bbutler@mandersonllp.com
- Andrew W Caine   acaine@pszyjw.com
- Carollynn Callari   ccallari@venable.com
- Cathrine M Castaldi   ccastaldi@rusmiliband.com
- Tara Castro Narayanan   tara.narayanan@msrlegal.com
- Dan E Chambers   dchambers@jmbm.com
- Shirley Cho   scho@pszjlaw.com
- Vonn Christenson   vrc@paynefears.com
- Brendan P Collins   bpcollins@bhfs.com
- Vincent M Coscino   vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot   pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri   dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte   ana.damonte@pillsburylaw.com
- Vanessa S Davila   vsd@amclaw.com
- Melissa Davis   mdavis@shbllp.com
- Daniel Denny   ddenny@gibsondunn.com
- Caroline Djang   crd@jmbm.com
- Donald T Dunning   ddunning@dunningLaw.com
- Joseph A Eisenberg   jae@jmbm.com
- Lei Lei Wang Ekvall   lekvall@wgllp.com
- Richard W Esterkin   resterkin@morganlewis.com
- Marc C Forsythe   kmurphy@goeforlaw.com
- Alan J Friedman   afriedman@irell.com
- Steven M Garber   steve@smgarberlaw.com
- Christian J Gascou   cgascou@gascouhopkins.com
- Barry S Glaser   bglaser@swjlaw.com
- Robert P Goe   kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg   egoldberg@stutman.com
- Richard H Golubow   rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez   mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith   bkemail@harrisbeach.com
- Matthew Grimshaw   mgrimshaw@rutan.com
- Kavita Gupta   kgupta@winthropcouchot.com
- Asa S Hami   ahami@morganlewis.com
- Michael J Hauser   michael.hauser@usdoj.gov
- D Edward Hays   ehays@marshackhays.com
- Michael C Heinrichs   mheinrichs@omm.com
- Harry D. Hochman   hhochman@pszjlaw.com, hhochman@pszjlaw.com
- Jonathan M Hoff   jonathan.hoff@cwt.com
- Nancy Hotchkiss   nhotchkiss@trainorfairbrook.com
- Michelle Hribar   mhribar@rutan.com

000692

MAINDOCS-#159292-v1-USCC_Motion_502(d).DOC

- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com
- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com

000693

MAINDOCS-#159292-v1-ESC_Motion_502(d).DOC

1
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
2
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
3
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
4
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
5
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
6
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
7
- Marc A. Zimmerman    joshuasdaddy@att.net

8

### SERVICE VIA MAIL

9

| | |
|---|---|
| Bickford 16, SJDPartners23<br>Comm9, Tesoro7<br><br>Lehman Commercial Paper Inc.<br>Lehman ALI, Inc.<br>Attn:  Gerald Pietroforte<br>1271 Sixth Ave., 46th Fl.<br>New York, NY 10020 | Heartland9, Marblehead21, PSV12<br>Acton6Emerald 7, SunValley17, PalmdaleHills65<br>SummitValley12, Northlake6, OakValley<br><br>Lehman ALI, Inc.<br>OVC Holdings, LLC<br>Northlake Holdings LLC<br>Lehman Commercial Paper Inc.<br>Attn:  Jeff Fitts<br>1271 Sixth Ave., 46th Fl.<br>New York, NY 10020 |
| All<br><br>Weil, Gotshal & Manges LLP<br>Attn:  Shai Y. Waisman<br>767 Fifth Ave.<br>New York, NY 10153 | |

19

20

21

22

23

24

25

26

27

28

000694

MAINDOCS-#159292-v1-PSZC_xMotion_502(d).DOC

**EXHIBIT "11"**

000695

| Filing Date | # | Docket Text |
|---|---|---|
| 05/31/2011 | 2133 | Motion for Protective Order *re: Notice of Deposition of SunCal Management, LLC in Connection With Objections to Claims of LB-L SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB-L SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC and SunCal Oak Knoll, LLC; Declaration of Leo J. Presiado* Filed by Creditor SunCal Management, LLC (Attachments: # 1 Exhibit Part 1 of 6# 2 Exhibit Part 2 of 6# 3 Exhibit Part 3 of 6# 4 Exhibit Part 4 of 6# 5 Exhibit Part 5 of 6# 6 Exhibit Part 6 of 6) (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2134 | Notice of motion/application Filed by Creditor SunCal Management, LLC (RE: related document(s) 2133 Motion for Protective Order *re: Notice of Deposition of SunCal Management, LLC in Connection With Objections to Claims of LB-L SunCal Oak Valley, LLC, SunCal Heartland, LLC, LB-L SunCal Northlake, LLC, SunCal Marblehead, LLC, SunCal PSV, LLC, Delta Coves Venture, LLC, SunCal Torrance, LLC and SunCal Oak Knoll, LLC; Declaration of Leo J. Presiado* Filed by Creditor SunCal Management, LLC). (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2135 | Objection (related document(s): 1919 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Delta Coves)* filed by Creditor Lehman ALI, Inc., 1922 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2136 | Objection (related document(s): 1923 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Heartland)* filed by Creditor Lehman ALI, Inc., 1926 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |

000696

| | | |
|---|---|---|
| 05/31/2011 | 2137 | Objection (related document(s): 1929 Notice of motion/application filed by Creditor Lehman ALI, Inc., 1930 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Marblehead)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2138 | Objection (related document(s): 1931 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Northlake)* filed by Creditor Northlake Holding LLC, 1934 Declaration filed by Creditor Northlake Holding LLC) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Northlake)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2139 | Objection (related document(s): 1935 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Knoll)* filed by Creditor Lehman ALI, Inc., 1938 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Knoll)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2140 | Objection (related document(s): 1939 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Valley)* filed by Creditor OVC Holdings LLC, 1942 Declaration filed by Creditor OVC Holdings LLC) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Valley)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| | | Objection (related document(s): 1943 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of* |

000697

| | | |
|---|---|---|
| 05/31/2011 | 2141 | *Steven J. Kahn and Philip Cyburt (PSV)* filed by Creditor Lehman ALI, Inc., 1946 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (SunCal PSV)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2142 | Objection (related document(s): 1947 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Torrance)* filed by Creditor Lehman ALI, Inc., 1951 Declaration filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven M. Speier Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Torrance)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2143 | Objection (related document(s): 1919 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Delta Coves)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Delta Coves)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2144 | Objection (related document(s): 1923 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Heartland)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Heartland)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| | | Objection (related document(s): 1927 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Marblehead)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order* |

000698

| | | |
|---|---|---|
| 05/31/2011 | 2145 | *Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Marblehead)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2146 | Objection (related document(s): 1931 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Northlake)* filed by Creditor Northlake Holding LLC) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Northlake)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2147 | Objection (related document(s): 1935 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Knoll)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Knoll)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2148 | Objection (related document(s): 1939 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Valley)* filed by Creditor OVC Holdings LLC) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Valley)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2149 | Objection (related document(s): 1943 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (PSV)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (SunCal PSV)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| | | |

000699

| | | |
|---|---|---|
| 05/31/2011 | 2150 | Objection (related document(s): 1947 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Torrance)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Philip Cyburt Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Torrance)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2151 | Objection (related document(s): 1919 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Delta Coves)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Delta Coves)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2152 | Objection (related document(s): 1923 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Heartland)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Heartland)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2153 | Objection (related document(s): 1927 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Marblehead)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Marblehead)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| | | Objection (related document(s): 1931 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Northlake)* filed by Creditor |

000700

| | | |
|---|---|---|
| 05/31/2011 | 2154 | Northlake Holding LLC) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Northlake)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2155 | Objection (related document(s): 1935 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Knoll)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Knoll)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2156 | Objection (related document(s): 1939 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Oak Valley)* filed by Creditor OVC Holdings LLC) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Oak Valley)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2157 | Objection (related document(s): 1943 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (PSV)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (SunCal PSV)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |
| 05/31/2011 | 2158 | Objection (related document(s): 1947 Motion to Disallow Claims *Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC; Memorandum of Points and Authorities; and Declarations of Steven J. Kahn and Philip Cyburt (Torrance)* filed by Creditor Lehman ALI, Inc.) *Evidentiary Objections to Declaration of Steven J. Kahn Filed in Support of Joint Motion for Order Disallowing General Unsecured and Administrative Claims of SunCal Management, LLC (Torrance)* Filed by Creditor SunCal Management, LLC (Rus, Ronald) (Entered: 05/31/2011) |

000701

**EXHIBIT "12"**

000702

No. 10-60004

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

In re:

PALMDALE HILLS PROPERTY, LLC, AND ITS RELATED DEBTORS,

Jointly Administered Debtors and Debtors-in-Possession.
_____

PALMDALE HILLS PROPERTY, LLC, ET AL.,

Appellants,

v.

LEHMAN COMMERCIAL PAPER INC.,

Appellee.
_____

**BRIEF OF APPELLEE LEHMAN COMMERCIAL PAPER INC.**
_____

Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit

Richard M. Pachulski (CA Bar No. 90073)     Edward Soto, Esq.
Dean A. Ziehl (CA Bar No. 84529)            Shai Waisman, Esq.
Pachulski Stang Ziehl & Jones LLP           WEIL, GOTSHAL & MANGES LLP
10100 Santa Monica Blvd. 11th Floor         767 Fifth Avenue
Los Angeles, California 90067-4100          New York, New York 10153-0119
Telephone: (310) 277-6910                   Telephone: (212) 310-8000
Facsimile: (310) 201-0760                   Facsimile: (212) 310-8007

Attorneys for Appellee Lehman Commercial Paper Inc.

**D.    The Equitable Subordination Action Is an Offensive Action In an Adversary Proceeding That Seeks to Deprive Lehman Commercial of Property of the Estate in Violation of § 362(a)**

Just as they did before the BAP, Debtors frame their Equitable Subordination Action as a defensive action against Lehman Commercial's claim. (Appellant Br. at 32; E.R. 11, 156).  But the BAP correctly held that the Equitable Subordination Action seeks *affirmative* relief and therefore violates Lehman Commercial's automatic stay.

The BAP reasoned that the distinction between defensive and offensive actions affecting a debtor's estate is appropriate in determining the applicability of the automatic stay because courts have held that a debtor may *defend* against suits brought against it without violating a bankruptcy stay.  *Justus v. Fin. News Network, Inc., (In re Fin. News Network, Inc.)*, 158 B.R. 570, 573 (S.D.N.Y. 1993) (distinguishing cases where a party "makes an active attempt to recover property" of a debtor through judicial or adversary proceedings);  *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 336 (BAP 9th Cir. 1994).  (E.R. 11, 156).  In particular, courts allow debtors to *object* to creditors' claims on the basis that it is a defense against the assertion of the claim, and therefore, does not violate the creditor's automatic stay.  *Hi-Tech Commc'ns Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Bus. Park, LLC)*, 308 B.R. 463, 466 (BAP 9th Cir. 2004).  (E.R. 11, 156).

000704

Debtors argue that this Court should reverse the BAP's Opinion pursuant to the BAP's prior holdings in *In re Wheatfield*, *In re Way*, and *In re Merrick*. (Appellant Br. at 30-32).   None of these cases, however, addresses the situation presented in this appeal: Whether the automatic stay protecting a chapter 11 debtor ("First Debtor") bars a debtor in a separate bankruptcy ("Second Debtor") from seeking to equitably subordinate the First Debtor's claim, and to transfer a lien securing the First Debtor's claim, through an action in the Second Debtor's bankruptcy without first seeking relief from the First Debtor's automatic stay.

*In re Wheatfield* holds only that a Second Debtor could *object* to the First Debtor's claim without seeking relief from the First Debtor's automatic stay.  *See In re Wheatfield*, 308 B.R. 465-66 (holding that the Second Debtor "did not violate the automatic stay in [the First Debtor's] chapter 11 by *objecting* to the claim filed in [Second Debtor's] case") (emphasis added).  *In re Way* and *In re Merrick* ruled that when the First Debtor files a civil action against another, "the automatic stay does not prohibit [the] defendant . . . from *defending itself* in that action."  *Eisinger v. Way (In re Way)*, 229 B.R. 11, 13 (BAP 9th Cir. 1998); *see also In re Merrick*, 175 B.R. at 338 (defendant must "be allowed to defend himself" in an action filed by a debtor).   Similarly, another case that Debtors rely on, *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575 (7th Cir. 1989), stands for the proposition that the automatic stay has been found inapplicable to lawsuits initiated

41

by the debtor. (E.R. 11, 152-53). These decisions do not apply to this case because equitable subordination is not an objection or defense to a claim. Moreover, the filing of a proof of claim is not "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). If it was, then filing a proof of claim would violate the automatic stay, and it clearly does not. Lehman Commercial was required to file proofs of claim because the Debtors filed for bankruptcy.

Debtors argue here, as they did before the BAP, that if the complete elimination of a claim can be achieved through a claim objection without a stay violation, then the "lesser defensive remedy of subordination" cannot be considered an offensive action that violates the automatic stay. (Appellant Br. at 35 n.14; E.R. 11, 156). The BAP rightly disagreed with Debtors' "characterization of subordination as a mere defense to a claim or a 'lesser remedy' than claim disallowance." (E.R. 11, 156).

As the BAP noted, a claim is a right to payment. 11 U.S.C. § 101(5)(A). (E.R. 11, 156). A proof of claim is prima facie evidence of the validity and amount of a claim. Rule 3001(f). (E.R. 11, 156). A party objecting to a claim has the burden of overcoming the prima facie case by challenging the validity of the claim. (E.R. 11, 156). In a claim objection, the court investigates the existence,

000706

Case 10-00004    04/16/2010    Page 53 of 125    Docket #: 2

validity, and enforceability of claims and determines whether the claim is allowed
by applicable law.  *Murgillo v. Cal. State Bd. Of Equalization (In re Murgillo)*, 176
B.R. 524, 532-33 (BAP 9th Cir. 1995); *USA Capital Realty Advisors, LLC v. USA
Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co.)*,
377 B.R. 608, 617 (BAP 9th Cir. 2007) ("disallowance of a claim is a legal
determination that the claim under consideration is not allowable by law").  (E.R.
11, 156-57).

If the claim is "disallowed or modified in amount because the asserted claim
was found to be unenforceable against the debtor as a matter of law, then the
creditor effectively never <u>had</u> the right to payment of the claim it asserted."  (E.R.
11, 157).  "Importantly, if a debtor succeeds in a claim objection, the debtor does
not recover property from the creditor."  (E.R. 11, 157).  As a result, a debtor "is
able to challenge (or 'defend' against) a claim without impacting a creditor's
property rights."  (E.R. 11, 157).

Debtors contend that "the line that the Majority attempts to draw between
disallowance and subordination does not survive close analysis."  (Appellant Br. at
36).  In reality, the BAP followed well-settled law in finding that "[e]ven though
equitable subordination, 'if established, may be functionally equivalent to
disallowance (i.e., no distribution on the claims),' it is a legally distinct proceeding
which seeks to reprioritize the order of allowed claims based on the equities of the

43

case, rather than to disallow the claim in the first instance."  (E.R. 11, 157) (citing

*In re USA Commercial Mortgage Co.*, 377 B.R. at 617; *see also In re Enron Corp.*,

2003 Bankr. LEXIS 2261, at *26; *In re County of Orange*, 219 B.R. 543, 557

(Bankr. C.D. Cal. 1997)).[18]

---

[18]     Debtors incorrectly assert that 11 U.S.C. § 502(b)(9) supports its position. (Appellate Br. at 36).  Section 502(b)(9) provides that "a creditor's claim will be disallowed if an objection to the claim is made and if proof of the claim is not timely filed."  *In re Gardenhire*, 209 F.3d 1145, 1147 (9th Cir. 2000).  Thus, the court makes a legal determination that the creditor, as a matter of federal bankruptcy law, has no right to payment on the claim it asserted.  That is precisely what the B.A.P. stated disallowance provides for.  *See* E.R. 11, 157.  Debtors' reliance on other provisions regarding objections seeking disallowance of claims under section 502 (*see* Appellate Br. at 37 n.15) is similarly unavailing because "[d]isallowance and subordination are different."  *In re USA Commercial Mortgage Co.*, 377 B.R. at 617.  "'Disallowance of a claim is a legal determination that the claim under consideration is not allowable by law.  On the other hand, subordination of a claim presupposes that the claim is allowed but for equitable reasons must be subordinated to the other allowed claims.'"  *Id.*  Since equitable subordination "presupposes that the claim [at issue] is allowed" under the law, it can never be equated with the treatment of a claim "not allowed by law" in the first instance.

     The remaining provisions that Debtors rely on (*see* Appellate Br. at 37 n.15) are of no relevance because none would permit Debtors to do what they seek to do through the Equitable Subordination Action: modify Lehman Commercial's valid claim and property interest.  Debtors cite no authority that these provisions would allow Second Debtor to seek *affirmative control* over property of First Debtor's bankruptcy estate by proposing to alter the priority of First Debtor's secured claim and the *transfer* of First Debtor's lien rights to Second Debtor's estate.  Moreover, Debtors' reliance on Section 11 U.S.C. § 507(a) is futile because "nowhere in § 507(a) are secured claims addressed."  *In re Perez*, 339 B.R. 385, 408 (Bankr. S.D. Tex. 2006).  Here, Lehman Commercial's claims are secured and Debtors are seeking to transfer the liens to the estate.

44

Equitable subordination is sought when a creditor has engaged in some type of inequitable conduct that resulted in injury to the debtor's other creditors or conferred an unfair advantage on the claimant. *United States v. Noland*, 517 U.S. 535, 538-39 (1996). (E.R. 11, 157). It is an unusual remedy, applied only in limited circumstances. *Noland*, 517 U.S. at 538-39; *Feder v. Lazar (In re Lazar)*, 83 F.3d 306, 309 (9th Cir. 1996). (E.R. 11, 157-58).

Section 510(c) by its terms applies only to an "allowed claim." § 510(c)(1). Equitable subordination "presupposes that the claim is allowed but for equitable reasons must be subordinated to the other allowed claims." *In re USA Commercial Mortgage Co.*, 377 B.R. at 617 (quoting *Ford v. Feldman, M.D., P.A. (In re Fla. Bay Trading Co.)*, 177 B.R. 374, 383 (Bankr. M.D. Fla. 1994)). The "unusual remedy" under section 510(c) is not a defense to a claim because it does not contest liability. Instead, section 510(c)(1) allows for subordination of otherwise allowed claims "when the principles of equity would be so offended by the allowance of such claims on a parity with those of other creditors." 4 COLLIER ON BANKRUPTCY ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009).[19] (E.R. 11, 158). If the subordinated claim is secured by a lien, under §

---

[19]    *See also In re Murgillo*, 176 B.R. at 532; *Meadowbrook Estates v. McElvany, Inc. (In re Meadowbrook Estates)*, 246 B.R. 898, 905 (Bankr. E.D. Cal. 2000) ("[a] predicate to relief under section 510(c), then, is an allowed claim"); *Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, No. 95-CV-76223-DT, 1996 WL 571652, *2 (E.D. Mich. July 16, 1996) ("'[t]he pla[i]n

45

000709

510(c)(2), the lien is transferred to the debtor's estate.  (E.R. 11, 158).  The subordinated lien claim becomes unsecured and the property securing such claim becomes part of the debtor's estate.  (E.R. 11, 158).

Thus, the BAP found, "unlike in claim disallowance, in the situation of equitable subordination, a creditor <u>has</u> the right to payment on its claim, but that property right may be modified by the bankruptcy court based upon equitable principles."  (E.R. 11, 158).  It correctly concluded that "[t]his key difference turns Debtors' assertion of equitable subordination as a proper defense to Lehman Commercial's Stay Relief Motions into an offensive action against Lehman Commercial's property."  (E.R. 11, 158).[20]

---

language of [section 510] shows that it applies to claims already allowed by a bankruptcy court'") (citation omitted)).  As the court observed in *In re Gordon Sel-Way*, several courts "have barred equitable subordination complaints" that were filed before a "determination as to the allowability of the claim."  *Id*. at *3.

[20]   The BAP rightfully rejected the Debtors' argument that Lehman Commercial's assertion of the automatic stay will paralyze Debtors' reorganization or thwart the principles of bankruptcy law because of Lehman Commercial's "running around the country demanding that all other chapter 11 debtors yield to its automatic stay."  (E.R. 11, 158 n. 8) (quoting Debtors' BAP Brief at 14-15, 27).  The BAP held that "Lehman Commercial has a right to protect its estate from diminishment of its assets by others, which here includes Debtors' proposed modification of its rights, including its lien rights."  (E.R. 11, 158 n. 8).  Furthermore, "Debtors are not without a remedy.  They can seek relief from stay in Lehman Commercial's case where their earlier motion was denied without prejudice."  (E.R. 11, 158 n.8).

000710

The BAP noted the precedent is clear that:

> the proper exercise of the bankruptcy court's equitable powers
> under § 502 is through investigation into the existence, validity
> and enforceability of claims leading to their allowance or
> disallowance; and the proper exercise of equitable powers
> regarding an allowed claim is through the equitable
> subordination provisions of § 510(c).

(E.R. 11, 158-59) (quoting *In re Murgillo*, 176 B.R. at 533); *see also Benjamin v.
Diamond (Matter of Mobile Steel Co.)*, 563 F.2d 692, 699 (9th Cir. 1977)
(equitable considerations can only justify subordination of claims, not their
disallowance). (E.R. 11, 159).[21]

The only case that Debtors cite for their proposition that the Second Debtor
can seek to *equitably subordinate* the First Debtor's claim without seeking relief
from the First Debtor's automatic stay is *In re Metiom*, 301 B.R. 634 (Bankr.
S.D.N.Y. 2003). The BAP recognized the scenario in *Metiom* "differs markedly"
from this case. (E.R. 11, 159). Here, Debtors "have commenced an adversary
proceeding to equitably subordinate Lehman Commercial's claims and transfer the
liens securing the claims to Debtors' own bankruptcy estate." (E.R. 11, 159).
*Metiom* "involved an unsecured claim. The facts of this case differ from *Metiom*

---

[21]   Debtors argue if that disallowing a secured claim does not violate the
automatic stay, then subordinating a secured claim should not violate the automatic
stay. (Appellant Br. at 42-43). This, however, is just a reworded version of
Debtors' argument that "the line that the Majority attempts to draw between
disallowance and subordination does not survive close analysis," *id*. at 36, and that
argument fails for the reasons explained above.

000711

because, here, Lehman Commercial's claims are secured and Debtors are seeking to transfer the liens to the estate." (E.R. 11, 159). Such affirmative relief "was not part of the *Metiom* case where the equitable subordination, along with § 547 and § 549, were included as alternatives in debtor's claim objection and the bankruptcy trustee expressly waived any affirmative relief or damages resulting from the creditor's postpetition conduct." *In re Metiom*, 301 B.R. at 637. (E.R. 11, 159). The BAP noted that "[t]here is no analysis in *Metiom* that focuses on whether equitable subordination under § 510(c)(2) violates the automatic stay." (E.R. 11, 159). Furthermore, *Metiom* conflicts with Ninth Circuit precedent in that it allowed an adversary proceeding against a debtor outside its home bankruptcy court. *See* pp. 53-54.

*Metiom* also conflicts with another decision from the Bankruptcy Court for the Southern District of New York, *In re Enron Corp*. *In re Enron* presents the superior analysis because it correctly observes the difference between objections seeking disallowance of claims under section 502 of the Bankruptcy Code and actions seeking subordination of claims under section 510(c): "[E]quitable subordination is a legally distinct proceeding which seeks to re-prioritize the order of allowed claims based on the equities of a case, rather than to allow or disallow the claim in the first instance." *In re Enron Corp*., 2003 Bankr. LEXIS 2261 at *26 (quoting *In re Mid-American Waste Sys., Inc.*, 284 B.R. 53, 68 (Bankr. D. Del.

000712

2002)).   Because "equitable subordination under 11 U.S.C. § 510(c) is not a
defense to a debtor's liability on a proof of claim," *id*., it does not exempt from the
automatic stay under the BAP's "offensive/defensive" distinction in *Wheatfield*,
*Way*, and *Merrick*.

The BAP properly concluded that "[s]imply because Lehman Commercial
filed a proof of claim (whether formally or informally) does not mean that Debtors
may take <u>any</u> action against Lehman Commercial without violating Lehman
Commercial's automatic stay." (E.R. 11, 159-60).  It stated that Debtors "may not
initiate an action or proceeding against Lehman Commercial that seeks affirmative
relief, such as a counterclaim without violating the automatic stay."[22]   (E.R. 11,
160) (citing *In re Miller*, 397 F.3d at 732).

---

[22]      The BAP noted the dissent "points to recoupment as a counterclaim that
should be permitted because it seeks to adjust the amount of debt owed, and makes
an implied correlation to equitable subordination as another type of counterclaim
that should be permitted, for the same reasons." (E.R. 11, 160 n.9).  Recoupment,
however, "is the setting up of a demand arising from the same transaction as the
plaintiff's claim or cause of action, strictly for the purpose of abatement or
reduction of such claim." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d
1392, 1399 (9th Cir. 1996).  (E.R. 11, 160 n.9).  It is an equitable common law
doctrine to net out debts and allow the defendant to recoup payments made against
the claim and is not limited to prepetition claims.  It is not subject to the automatic
stay. *Sims v. United States Dept. Of Health & Human Serv. (In re TLC Hospitals,
Inc.)*, 224 F.3d 1008, 1011 (9th Cir. 2000).  (E.R. 11, 160 n.9).  The BAP found
that "[e]quitable subordination, however, involves the subordination and
reprioritization of an <u>allowed claim</u> and is, therefore, not the equivalent of a
recoupment claim." (E.R. 11, 160 n.9).

000713

Debtors claim their Equitable Subordination Action does not seek "any affirmative recovery" against Lehman Commercial. Appellant Br. at 41; *see also id.* at 33. But as the BAP accurately found, Debtors' subordination action "seeks affirmative control over property of Lehman Commercial's bankruptcy estate by proposing to alter the priority of Lehman Commercial's claim and the transfer of Lehman Commercial's lien rights to Debtors' estate." (E.R. 11, 160). Thus, the BAP recognized that "equitable subordination seeks affirmative relief: the modification of a claimant's valid claim and property interest." (E.R. 11, 160) (citing 4 COLLIER ON BANKRUPTCY, ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009) ("Because subordination under § 510 involves valid claims, the claimant has a property interest that would be modified by subordination. The notice and hearing requirement, therefore, is a basic due process protection."). Accordingly, "the adjudication of Debtors' equitable subordination claim violates Lehman Commercial's automatic stay." (E.R. 11, 161).[23]

---

[23]    That the Equitable Subordination Action seeks affirmative relief is further demonstrated by the fact that a separate adversary proceeding is *required* to adjudicate the merits of an equitable subordination claim. *See* Federal Rule of Bankruptcy Procedure 7001(8); *see also* Fed. R. Bankr. P. 3007(b). "*Adversary proceedings*, as the name implies, relate to proceedings commenced in the bankruptcy court that are adversary in nature in which one party seeks affirmative relief from another before a bankruptcy court sitting as a trial court over the matters in litigation before it." *Murphy v. Mich. Guar. Agency (In re Murphy)*, 271 F.3d 629, 632 (5th Cir. 2001).

000714

Case 90-00004    04/16/2016    Page 44 of 166    PD: 869d60    Dkt Entry: FZ

The BAP also recognized that "[o]ne of the purposes of the automatic stay is to protect the bankruptcy court's jurisdiction over the debtor and the property of the estate." (E.R. 11, 161).  Given that a debtor in bankruptcy has a duty to preserve and protect the property of its estate, if First Debtor has a valid, material claim to be asserted in Second Debtor's bankruptcy, it must file a proof of claim in Second Debtor's bankruptcy or else it would lose the claim.  There is no persuasive reason why First Debtor taking the legally required action of filing such a proof of claim should be forced to waive its automatic stay rights and subject itself to whatever proceedings might be brought against it in Second Debtor's bankruptcy (not necessarily limited to equitable subordination claims) and effectively undermine the control the First Debtor's bankruptcy court has over its reorganization.

The automatic stay is "'one of the fundamental debtor protections provided by the bankruptcy laws.'"  *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting S.Rep. No. 95-989, p. 54 (1978)).  Congress has carefully delineated certain exceptions to the automatic stay, none of which include a provision for equitably subordinating a debtor's claim.  The BAP rightfully declined to write this exception into the statute.  It appropriately stated that "[t]he protection of Lehman Commercial's automatic stay did not evaporate when it filed

000715

a proof of claim in Debtors' bankruptcy case." (E.R. 11, 161) (citing *In re Miller*, 397 F.3d at 732).  If Debtors were allowed to subordinate Lehman Commercial's claim in the Bankruptcy Court without first seeking stay relief in Lehman Commercial's home bankruptcy case, "Lehman Commercial's creditors would have no notice or opportunity to challenge the action even though their rights would be affected by the subordination action." (E.R. 11, 161).

Therefore, the BAP held that "while the California bankruptcy court may have concurrent jurisdiction to determine the scope or applicability of the automatic stay, the New York bankruptcy court must have the final say as to whether the automatic stay applies to the bankruptcy case before it." (E.R. 11, 161) (citing *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 347-48 (2d Cir. 1985) (even though district court had jurisdiction to determine applicability of stay, asserting that jurisdiction would frustrate the debtor's reorganization efforts in the bankruptcy case); *In re Gruntz*, 202 F.3d at 1079, 1081-82 (the automatic stay, which is an injunction issuing from the authority of the bankruptcy court, is the primary means to centralize the control over and administration of bankruptcy cases)).

000716

**E.    An Adversary Proceeding Cannot Proceed Against Lehman Commercial Outside of its "Home Bankruptcy Court" Without the Consent of the New York Bankruptcy Court**

The prohibition against Debtors proceeding with their Equitable Subordination Action in the Bankruptcy Court notwithstanding Lehman Commercial's automatic stay also finds support in this Court's precedent on the automatic stay and adversary proceedings. Pursuant to Federal Rule of Bankruptcy Procedure 7001(8), a proceeding "to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination" can only be pursued in an adversary proceeding, not in an objection to a claim. *See also* Fed. R. Bankr. P. 3007(b) ("A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim . . . .").

Under this Circuit's precedent, an adversary proceeding does not violate a debtor's automatic stay only when the adversary proceeding is commenced in the debtor's "home bankruptcy court." *In re North Coast Village, Ltd.*, 135 B.R. at 643; *see also id.* at 644 ("The automatic stay does not prevent adversary proceedings against the debtor in the bankruptcy court where the debtor's bankruptcy is pending"). Thus, the BAP appropriately concluded that "[t]he automatic stay arising in the bankruptcy court where a debtor files a petition for relief (the home bankruptcy court) applies to all other bankruptcy courts." (E.R.

53

000717

Case 10-60044    04/16/2010    Page 64 of 72    ID: 7308604    DktEntry: 12

11, 152) (citing *In re Miller*, 397 F.3d at 731).  This Court held in *In re Miller* that an adversary proceeding can be brought against a debtor without violating the debtor's automatic stay only if it is "<u>initiated in the same bankruptcy court where the debtor's bankruptcy proceedings are pending</u>."  *In re Miller*, 397 F.3d at 730 (emphasis added); *see also Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009) ("The automatic stay is fundamental to bankruptcy law.  It ensures that claims against the debtor will be brought in one place, the bankruptcy court.").

The Bankruptcy Court's holding that Debtors could institute an adversary proceeding against Lehman Commercial in a court other than the one presiding over Lehman Commercial's bankruptcy case is inconsistent with *North Coast* and *Miller*.  The BAP's holding that Debtors must either seek relief from stay or initiate the Equitable Subordination Action against Lehman Commercial in its New York bankruptcy case is directly in line with Ninth Circuit authority.  (E.R. 11, 161-62).

000718

# VIII.

## CONCLUSION

For the foregoing reasons, Lehman Commercial respectfully submits that
this Court should affirm the BAP's Opinion.

By:    /s/ Dean A. Ziehl

Richard M. Pachulski (CA Bar No. 90073)   Edward Soto, Esq.
Dean A. Ziehl (CA Bar No. 84529)   Shai Waisman, Esq.
Pachulski Stang Ziehl & Jones LLP   WEIL, GOTSHAL & MANGES LLP
10100 Santa Monica Blvd. 11th Floor   767 Fifth Avenue
Los Angeles, California 90067-4100   New York, New York 10153-0119
Telephone: (310) 277-6910   Telephone: (212) 310-8000
Facsimile: (310) 201-0760   Facsimile: (212) 310-8007

Attorneys for Appellee Lehman Commercial Paper Inc.

000719

**EXHIBIT "13"**

<table>
<tr><td>1</td><td>LOUIS R. MILLER, State Bar No. 54141<br>smiller@millerbarondess.com</td></tr>
</table>

| | |
|---|---|

1  LOUIS R. MILLER, State Bar No. 54141
   smiller@millerbarondess.com
2  MARTIN PRITIKIN, State Bar. No. 210845
   mpritikin@millerbarondess.com
3  BRIAN PROCEL, State Bar No. 218657
   bprocel@millerbarondess.com
4  **MILLER BARONDESS, LLP**
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 552-4400
6  Facsimile:     (310) 552-8400

7  Special Litigation Counsel for
   Jointly Administered Debtors in Possession
   and Chapter 11 Trustee
8

9          **UNITED STATES BANKRUPTCY COURT**
      **CENTRAL DISTRICT OF CALIFORNIA -- SANTA ANA DIVISION**
10

11 In re                              **CASE NO. 8:08-bk-17206-ES**
                                       Jointly Administered With Case Nos.
12 PALMDALE HILLS PROPERTY, LLC,           8:08-bk-17209-ES; 8:08-bk-17240-ES;
   AND ITS RELATED DEBTORS,                8:08-bk-17224-ES; 8:08-bk-17242-ES;
13          Jointly Administered Debtors  8:08-bk-17225-ES; 8:08-bk-17245-ES;
            and Debtors-in-Possession     8:08-bk-17227-ES; 8:08-bk-17246-ES;
14                                         8:08-bk-17230-ES; 8:08-bk-17231-ES;
                                           8:08-bk-17236-ES; 8:08-bk-17248-ES;
15 **ADVERSARY PROCEEDING**                8:08-bk-17249-ES; 8:08-bk-17573 ES;
                                           8:08-bk-17574-ES; 8:08-bk-17575 ES;
16 PALMDALE HILLS PROPERTY, LLC, et        8:08-bk-17404-ES; 8:08-bk-17407-ES;
   al.,                                    8:08-bk-17408-ES; 8:08-bk-17409-ES;
17                                         8:08-bk-17458-ES; 8:08-bk-17465-ES;
            Plaintiffs,                    8:08-bk-17470-ES; 8:08-bk-17472-ES;
18                                         8:08-bk-17588-ES
   v.                                   **Adversary No. 8:09-ap-01005-ES**
19
   LEHMAN ALI, INC., et al.,
20                                      **ORDER RE LEHMAN ENTITIES' AMENDED**
            Defendants.                 **MOTION TO DISMISS THE THIRD**
21                                      **AMENDED COMPLAINT**

22                                      Hearing: February 11, 2010
                                        Time: 2:00 p.m.
23                                      Ctrm.: 5A

24

25

26

27

28

**FILED & ENTERED**

APR 12 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

## ORDER

**IT IS HEREBY ORDERED** that the Lehman Lenders Amended Motion to Dismiss Plaintiffs' Third Amended Complaint ("Motion to Dismiss") is **GRANTED IN PART AND DENIED IN PART**.

1) The decision in *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC* (*In re Palmdale Hills Property, LLC*), -- B.R. --, 2009 WL 5812119 (B.A.P. 9th Cir. 2009) is binding on this Court.

2) Under *In re Palmdale Hills Property, LLC*, the claims for relief brought against Defendant Lehman Commercial Paper Inc. ("LCPI") – namely, claims 1, 5, 7, 8, and 9 – are affirmative relief and, therefore violate LCPI's automatic stay. Consequently, the first, fifth, seventh, eighth, and ninth claims for relief are dismissed without prejudice to the extent that they are brought against LCPI. Plaintiffs must seek relief from LCPI's automatic stay in the United States Bankruptcy Court for the Southern District of New York in order to bring any claims against LCPI in this adversary proceeding.

3) As to the remaining Defendants,[1] the Motion to Dismiss:

    a.  the first claim for relief is DENIED;

    b.  the second claim for relief is DENIED;

    c.  the third claim for relief is GRANTED WITHOUT PREJUDICE;

    d.  the fourth claim for relief is GRANTED WITHOUT PREJUDICE;

    e.  the fifth claim for relief is DENIED;

    f.  the sixth claim for relief is GRANTED WITHOUT PREJUDICE to the extent that Plaintiffs seek to avoid and recover certain prepetition transfers from SunCal Marblehead Heartland Master LLC to Defendant Lehman ALI in the amount of $3,390,280.37 and is DENIED in all other respects;

    g.  the seventh claim for relief is DENIED;

---

[1] Defendants Lehman ALI, Inc. ("Lehman ALI"), OVC Holdings LLC, Northlake Holdings LLC, and LV Pacific Point, LLC.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

h.   the eighth claim for relief is DENIED;

i.   the ninth claim for relief is GRANTED WITHOUT PREJUDICE.

4)  In sum, as to the remaining Defendants, the third, fourth, and ninth claims for relief are

dismissed in their entirety without prejudice, and the sixth claim for relief is dismissed in part

consistent with this Order.

5)  Plaintiffs may file an amended complaint by April 9, 2010.

**IT IS SO ORDERED.**

### 

*Erithe A. Smith*
_____

DATED: April 12, 2010

United States Bankruptcy Judge

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described **ORDER RE LEHMAN ENTITIES' AMENDED MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐  Service information continued on attached page

II.   **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____  I served the following person(s) and/or entity(ies) at thelast known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**  (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 18, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 18, 2010 | Carole Conklin | /s/ Carole Conklin |
|---|---|---|
| Date | Type Name | Signature |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# SERVICE LIST

**I.**       **Served by NEF**

n/a

**II.**       **Served By U.S. Mail**

n/a

**II.**       **Served by Personal Delivery, Facsimile Transmission or Email**
BY ATTORNEY SERVICE

Judge's Copy
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Bldg and United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

BY EMAIL

Lehman Ali, Inc., Lehman Commercial Paper,
Inc., OVC Holdings, Northlake Holdings, LV
Pacific Point
Weil Gostshal & Manges LLP
    edward.soto@weil.com
    elisa.lemmer@weil.com
    shai.waisman@weil.com
    allen.blaustein@weil.com
    lauren.zerbinopoulos@weil.com

Pachulski Stang Ziehl & Jones LLP
    rpachulski@pszjlaw.com
    dziehl@pszjlaw.com

Fenway Capital LLC
Dewey & LeBoeuf LLP
    rreinthaler@DeweyLeBoeuf.com
    clevy@DeweyLeBoeuf.com
    jschreiber@dl.com

Lehman Re Ltd
Cadwalader, Wickersham & Taft LLP
    jonathan.hoff@cwt.com
    liz.butler@cwt.com

DLA Piper

betty.shumener@dlapiper.com

LB/L-Duc III Master LLP
Joseph A. Eisenberg
    jae@jmbm.com

Counsel for Chapter 11 Trustee Steven M.
Speier
The Lobel Firm, LLP
    wlobel@thelobelfirm.com

General Insolvency Counsel for
Jointly Administered Debtors in Possession
Winthrop Couchot, P.C.
    pcouchot@winthropcouchot.com
    plianides@winthropcouchot.com
    sokeefe@winthropcouchot.com

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER RE LEHMAN ENTITIES' AMENDED MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **March 18, 2010** the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II.    SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒  Service information continued on attached page

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

61997.1

61997.1

1

000726

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## SERVICE LIST

**I.      Served by NEF**

- Selia M Acevedo    sacevedo@millerbarondess.com,
  mpritikin@millerbarondess.com;bprocel@millerbarondess.com

- Joseph A Eisenberg    jae@jmbm.com

- Lei Lei Wang Ekvall    lekvall@wgllp.com

- Alan J Friedman    afriedman@irell.com

- Christian J Gascou    cgascou@gascouhopkins.com

- Kelly C Griffith    bkemail@harrisbeach.com

- Jonathan M Hoff    jonathan.hoff@cwt.com

- Christopher W Keegan    ckeegan@kirkland.com,
  emilee@kirkland.com;alevin@kirkland.com;tshafroth@kirkland.com

- Kerri A Lyman    klyman@irell.com

- Hutchison B Meltzer    hmeltzer@wgllp.com

- James M Miller    jmiller@millerbarondess.com

- Henry H Oh    henry.oh@dlapiper.com, bambi.clark@dlapiper.com

- Sean A Okeefe    sokeefe@okeefelc.com

- John E Schreiber    jschreiber@dl.com

- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com

- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

**II.        Served By U.S. Mail**

n/a

61997.1                    ORDER RE LEHMAN ENTITIES' MOTION TO DISMISS 3RD AM. CMPLT.             000727

**III.**       <u>Served by Personal Delivery, Facsimile Transmission or Email</u>

BY EMAIL

<u>Lehman Ali, Inc., Lehman Commercial Paper, Inc., OVC Holdings, Northlake Holdings, LV Pacific Point</u>
Weil Gostshal & Manges LLP
    edward.soto@weil.com
    elisa.lemmer@weil.com
    shai.waisman@weil.com
    allen.blaustein@weil.com
    lauren.zerbinopoulos@weil.com

Pachulski Stang Ziehl & Jones LLP
    rpachulski@pszjlaw.com
    dziehl@pszjlaw.com

<u>Fenway Capital LLC</u>
Dewey & LeBoeuf LLP
    rreinthaler@DeweyLeBoeuf.com
    clevy@DeweyLeBoeuf.com
    jschreiber@dl.com

<u>Lehman Re Ltd</u>
Cadwalader, Wickersham & Taft LLP
    jonathan.hoff@cwt.com
    liz.butler@cwt.com

DLA Piper
    betty.shumener@dlapiper.com

<u>LB/L-Duc III Master LLP</u>
Joseph A. Eisenberg
    jae@jmbm.com

<u>Counsel for Chapter 11 Trustee Steven M. Speier</u>
The Lobel Firm, LLP
    wlobel@thelobelfirm.com

<u>General Insolvency Counsel for</u>
<u>Jointly Administered Debtors in Possession</u>
Winthrop Couchot, P.C.
    pcouchot@winthropcouchot.com
    plianides@winthropcouchot.com
    sokeefe@winthropcouchot.com

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

61997.1       ORDER RE LEHMAN ENTITIES' MOTION TO DISMISS 3RD AM. CMPLT.      000728

**EXHIBIT "14"**

000729

# United States Bankruptcy Court
## Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

**Friday, May 13, 2011**                                          **Hearing Room    5A**

---

9:30 am

8:08-17206    **Palmdale Hills Property, LLC**                         Chapter    11
#9.00                 Hearing RE:  Motion Regarding Entitlement to Discovery in Connection
                         with Claim Objection, and/or Imposing Discretionary Stay
                         **(OST Signed 5/4/11)**

                                        Docket #:  2039

**Courtroom Deputy:**

     - NONE LISTED -

**Tentative Ruling:**

      **May 13, 2011**

      As a preliminary matter,the court does not entirely understand the necessity of this motion
      or the opposition thereto given the clarity and lack of ambiguity regarding the law in this
      regard.

      <u>The court's initial comments re the Motion and Opposition thereto</u>

      Lehman ALI and Lehman Commercial Paper, Inc (LCPI) (collectively Lehman Entities)
      have filed proofs of claim in certain Voluntary Debtor cases as well as in the Trustee
      Debtor cases.    A Motion to disallow such claims have been filed as to both sets of
      cases.

      A motion to disallow a claim, aka objection to claim, is a contested matter within the
      meaning of FRBP 9014.  See, e.g., Advisory Committee Note to FRBP 9014: " . . .[T]he
      filing of an objection to a proof of claim . . . is a contested matter."

      Under FRBP 9014, certain of the adversary rules found in FRBP 7001 et seq apply to
      contested matters, to wit: Rules 7026 and 7028-7037.

      Accordingly, as a general matter, a party in interest objecting to a proof of claim is entitled
      to utilize the discovery tools permitted in an adversary proceeding.

---

# United States Bankruptcy Court
## Central District of California

### Santa Ana

### Judge Erithe Smith, Presiding

### Courtroom 5A Calendar

Friday, May 13, 2011                                                                 Hearing Room    5A

9:30 am

Cont....          **Palmdale Hills Property, LLC**                                              Chapter   11

The fact that one of the claimants, LCPI,  is a debtor in its own bankruptcy case is of no consequence as the automatic stay does not apply to claim objections. See *In re Palmdale Hills Property, LLC*, 423 B.R. 655, 665 (9th Cir. BAP 2010)8 (". . . courts allow debtors to object to creditors' claims on the basis that it is a defense against the assertion of the claim, and therefore, does not violate the creditor's automatic stay."), citing *In re Wheatfield Bus. Park, LLC,* 308 B.R. 463, 466 (9th Cir. BAP 2004).

Accordingly, the Voluntary Debtors and SunCal may, via the claims objection process, seek and obtain  a determination as to the validity or allowability of the claims filed by the Lehman Entities, including LCPI without violating the automatic stay of LCPI. *Palmdale* at 665.

The fact that the basis for claim objection mirrors allegations made in other litigation is of no consequence so long as the objection is defensive in nature.  Further, the court need not decide at this junction whether basis for the objection is truly "recoupment" or something else (setoff) as the <u>merits</u> of the disallowance motion itself is not currently before the court (i.e., is not set for today's calendar).

This court has not previously issued any orders staying the filing or prosecution of claims objections.

None of the objecting parties has stated any legal basis for enjoining the claims objection process.

That said, the court is not inclined to grant the additional relief requested by the motion, i.e., to essentially compel the Lehman Entities to comply with discovery and to suspend all hearings on the Lehman Entities plans, disclosure statements, etc. pending its "participation" in the claim objection discovery matters.  There  are remedies available to the Voluntary Debtors and SunCal for noncompliance with discovery requests.  Further, while the the court is inclined to allow limited time for discovery, the court is not inclined to delay approval of the disclosure statements and/or plan confirmation pending a determination of the disallowance motion.

# United States Bankruptcy Court
## Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

Friday, May 13, 2011                                                    Hearing Room    5A

<u>9:30 am</u>

Cont....          **Palmdale Hills Property, LLC**                                      Chapter    11

| Party Information |
|---|

<u>Debtor(s):</u>

Palmdale Hills Property, LLC                          Represented By

                                                     Paul J Couchot

                                                     Peter W Lianides

                                                     Richard W Esterkin

                                                     Asa S Hami

                                                     Charles  Liu

                                                     James M Miller

                                                     Raymond H Aver

                                                     Sean A Okeefe

                                                     Marc J Winthrop

                                                     Martin  Pritikin

                                                     Selia M Acevedo

                                                     Francis T Donohue

                                                     Richard H Golubow

                                                     Louis R Miller

                                                     Payam  Khodadadi

                                                     Jeffrey W Broker

                                                     Kavita  Gupta

<u>Movant(s):</u>

# United States Bankruptcy Court
# Central District of California

### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

**Friday, May 13, 2011**                                    **Hearing Room    5A**

9:30 am

Cont....          **Palmdale Hills Property, LLC**                              **Chapter    11**

    Movant(s):

      Palmdale Hills Property, LLC                    Represented By

                                      Paul J Couchot

                                        Peter W Lianides

                                        Richard W Esterkin

                                        Asa S Hami

                                        Charles  Liu

                                        James M Miller

                                        Raymond H Aver

                                        Sean A Okeefe

                                        Marc J Winthrop

                                        Martin  Pritikin

                                        Selia M Acevedo

                                        Francis T Donohue

                                        Richard H Golubow

                                        Louis R Miller

                                        Payam  Khodadadi

                                        Jeffrey W Broker

                                        Kavita  Gupta

    Trustee(s):

      Steven M Speier (TR)                    Represented By

                                        James E Till

                                        Louis R Miller

                                        Mike D Neue

                                        Steven M Speier (TR)

**EXHIBIT "15"**

PAUL J. COUCHOT -- State Bar No. 131934
SEAN A. O'KEEFE -- State Bar No. 122417
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111
General Insolvency Counsel for Administratively Consolidated
Debtors-in-Possession

RONALD RUS - State Bar No. 67369
JOEL S. MILIBAND - State Bar No. 77438
**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

Counsel for SunCal Management LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re

Palmdale Hills Property, LLC, and its
Related Debtors.

        Jointly Administered
        Debtors and Debtors-in-
        Possession

Affects:

☐ All Debtors
☒ Palmdale Hills Property, LLC,
☐ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☐ SunCal Johannson Ranch, LLC
☒ SunCal Summit Valley, LLC
☒ SunCal Emerald Meadows LLC
☒ SunCal Bickford Ranch, LLC
☒ Acton Estates, LLC
☐ Seven Brothers LLC
☒ SJD Partners, Ltd.
☐ SJD Development Corp.
☐ Kirby Estates, LLC
☐ SunCal Communities I, LLC
☐ SunCal Communities III, LLC
*Continued on Next Page*

Case No. 8:08-bk-17206-ES

Jointly Administered With Case Nos.

8:08-bk-17209ES; 8:08-bk-17240ES; 8:08-bk-
17224ES; 8:08-bk-17242ES; 8:08-bk-17225ES;
8:08-bk-17245ES; 8:08-bk-17227ES; 8:08-bk-
17246ES; 8:08-bk-17230ES; 8:08-bk-17231ES;
8:08-bk-17236ES; 8:08-bk-17248ES; 8:08-bk-
17249ES; 8:08-bk-17573ES; 8:08-bk-17574ES;
8:08-bk-17575ES; 8:08-bk-17404ES; 8:08-bk-
17407ES; 8:08-bk-17408ES; 8:08-bk-17409ES;
8:08-bk-17458ES; 8:08-bk-17465ES; 8:08-bk-
17470ES; 8:08-bk-17472ES; and 8:08-17588ES.

Chapter 11 Cases

**REPLY TO OPPOSITION TO AMENDED
MOTION AND AMENDED MOTION FOR
ORDER DISALLOWING CERTAIN CLAIMS
HELD BY LEHMAN ALI INC. AND LEHMAN
COMMERCIAL PAPER INC.**

DATE:    June 9, 2011
TIME:    10:30 a.m.
PLACE:   Courtroom 5A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Continued from Previous Page*

☒ SCC Communities LLC
☐ North Orange Del Rio Land, LLC
☒ Tesoro SF, LLC
☒ LBL-SunCal Oak Valley, LLC
☒ SunCal Heartland, LLC
☒ LBL-SunCal Northlake, LLC
☒ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☒ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance, LLC
☐ SunCal Oak Knoll, LLC

86122.4

000736

1     Acton Estates LLC ("Acton"), SunCal Bickford Ranch LLC ("Bickford"), SunCal Emerald

2  Meadows LLC ("Emerald Meadows"), Palmdale Hills Property, LLC ("Palmdale Hills"), SJD

3  Partners, Ltd. ("SJD Partners"), SunCal Summit Valley LLC ("Summit Valley"), SCC

4  Communities LLC ("SCC Communities"), Tesoro SF LLC ("Tesoro") (the "SunCal Debtors"),,

5  and SunCal Management, LLC ("SunCal Management") (the "SunCal Parties"), hereby submit

6  their *Reply* to the *Opposition* (the "Opposition") filed by Lehman ALI, Inc. ("Lehman ALI") and

7  Lehman Commercial Paper, Inc. ("LCPI") (the "Lehman Entities") to the  *Amended Motion For*

8  *Order Disallowing Certain Claims Held By Lehman ALI Inc. And Lehman Commercial Paper Inc.*

9  (the "Claim Objection").

10                                        **I**

11                             **<u>INTRODUCTION</u>**

12     If the Lehman Entities' Opposition demonstrates anything, it is that they believe they are

13  untouchable, have the right to defy the rules, and have the right to misrepresent the record to both

14  this Court and the Lehman Bankruptcy Court.  A few examples illustrate these points:

15     *First*, the SunCal Parties have filed only claim objections in this Court, in accordance with

16  Fed.R.Bankr.P. 3007(b). These filings do not and cannot violate the automatic stay, since case law

17  deems the claims filed by the Lehman Entities to be the equivalent of a "complaint," and a

18  responsive objection to be the equivalent of an "answer." *Matter of Continental Airlines,* 928 F.2d

19  127, 129 (5th Cir. 1991); *Nortex Trading Corp. v. Newfield,* 311 F.2d 163, 164 (2[d] Cir. 1962).  Yet

20  the Lehman Entities contend that LCPI's stay precludes even this, and they have gone so far as to

21  file a motion in New York that seeks to enjoin the pursuit of the claim objections. That motion

22  *itself* violates the *SunCal Debtors'* stay under 11 U.S.C. § 362(a)(3) and (4).  Depriving the

23  SunCal Debtors of the ability to defend their properties against the disputed claims and liens of the

24  Lehman Entities is not only an exercise of control over the SunCal Debtors' properties, in the final

25  analysis it will lead to a taking without due process. An owner who is denied the right to defend its

26  properties against the claims of others is ultimately denied ownership.

27     Moreover, the Lehman Entities, *by asking the bankruptcy court in New York to rule on the*

28  *merits of the claims objection pending  before this Court,* also seek to usurp this Court's exclusive

jurisdiction over the claims allowance process and over the SunCal Debtors' real property under

11 U.S.C. § 1334(e).[1]  *Gardner v. State of N.J.,* 329 U.S. 565, 573-74 (1947) ("The whole process

of proof, allowance, and distribution is…an adjudication of interests claimed in a res."). The

Lehman Entities cannot file a claim in this Court, which is a demand for payment, and then seek a

ruling in another court regarding the validity of that claim. *See In re Coated Sales, Inc.,* 119 B.R.

452, 455 (Bankr. S.D.N.Y. 1990) ("[B]y submitting a claim against the bankruptcy estate,

creditors subject themselves to the court's equitable power to disallow those claims.").

*The SunCal Parties would respectfully request that this Court reject the Lehman Entities'*

*argument that the Claim Objection violates the stay, and specifically, make it clear to the Lehman*

*Entities that the priority, validity and amount of **their claims** is a central issue for this Court (not*

*only in the pending Claim Objections, as it should be, but also in the plan confirmation disputes.)*

The Lehman Entities have also misrepresented the record to both this Court and the New

York Bankruptcy Court.  They would have this Court believe they are only seeking enjoin claim

objections brought by non-debtor SunCal Management; yet the motion filed in New York makes

clear that they seek to attack the *SunCal Debtors'* claim objections as well.  Conversely, in New

York, they have falsely represented that *this Court has ruled that a **claim objection** filed under*

*Section 502(d) violates the stay* and they have suggested that the SunCal Parties have ignored this

ruling.[2]  Yet, the Lehman Entities were expressly advised by this Court on May 13, 2011 that this

---

[1] 28 U.S.C. § 1334(e) provides: "The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction (1) of all of the property, wherever located of the debtor as of the commencement of such case and of property of the estate."

[2] The Lehman Entities cite the following snippet from last Spring, re the eighth claim (§ 502(d)):

> Under *In re Palmdale Hills Property, LLC,* the claims for relief brought against [LCPI]…are affirmative relief and, therefore violate LCPI's automatic stay. Consequently, the first, fifth, seventh, **eighth** and ninth claims for relief are dismissed without prejudice to the extent that they are brought against LCPI. Plaintiffs must seek relief from LCPI's automatic stay in the United States Bankruptcy Court for the Southern District of New York in order to bring any claims against LCPI **in this adversary proceeding**.

The SunCal Parties believe that this Court was simply indicating that after *Palmdale,* a Section 502(d) claim objection *had to be pursued in the form of a contested matter under Rule 3007*; it could not be pursued under Rule 7001. This Court was not ruling that a claim objection under Section 502(d) in any procedural form violates the stay. Obviously, if this Court considered that to be the case, it would have denied the SunCal Parties the right to engage in discovery!

1 Court did not believe that either claim objection filed by the SunCal Parties violated the stay and

2 for this very reason authorized discovery. In short, the "truth" as presented in New York is very

3 different from the "truth" in California. *Since these misrepresentations intentionally contradict*

4 *the record and are being used as a sword in New York, the SunCal Parties would respectfully pray*

5 *that the Court specifically address this issue.*

6     *Second, t*he Lehman Entities have submitted multiple witness declarations in support of

7 their Opposition, yet have refused to allow the SunCal Parties' to depose these same witnesses and

8 other witnesses who are central to the claims dispute. Since the SunCal Parties cannot respond to

9 claims unless they are allowed to obtain discovery with respect to these claims, and since the

10 ultimate burden of proof is on the claimant who seeks payment on its claim, *the SunCal Parties*

11 *would respectfully pray that this Court either strike the Lehman Entities' evidence and summarily*

12 *grant the Claim Objection, or else deny the Lehman Entities standing to file anything with respect*

13 *to these claims until they stipulate to produce all requested witnesses for examination.*

14     *Third*, the Lehman Entities signed the Settlement Agreement, and even took title to one of

15 the SunCal Debtors' properties three days later pursuant to the terms of that agreement; yet assert

16 that their claims cannot be disallowed or objected to on the basis of a breach of that agreement

17 because the agreement supposedly *never existed*. This is nothing if not brazen.

18     Below, the SunCal Parties summarize their reply to each argument made in the Opposition:

19
20     A)     The Standing Argument. The Lehman Entities contend that only the
Trustee, not SunCal Management, has standing to file the Claim Objection vis-à-
21     vis the Trustee Debtors. The law is to the contrary. Section 502(a) states that any
"party-in-interest" has standing to file an objection to a claim. This term includes
22     "anyone whose financial interest may be affected by the outcome of a bankruptcy
case." *In re Barnes*, 275 B.R. 889, 893 (Bankr. E.D. Cal. 2002). The cases cited
23     by the Lehman Entities are inapposite. In those instances, a party other than the
Trustee *filed an adversary proceeding seeking recovery on a claim held by the*
24     *estate*. They did not involve claim objections. Under *In re P.R.T.C. Inc.,* 177 F.3d
774, 778 (9th Cir.1999), the relevant standing inquiry is whether there is a
25     possibility that a distribution could be made to SunCal Management on account of
its claims. Since that answer must be answered in the affirmative, standing exists.
26
27     B)     The Automatic Stay Argument. The Lehman Entities misleadingly cite to
the SunCal Parties' *plan documents* to argue that the *Claim Objection* is a stay
28     violation.  In any event, every case that has addressed the issue has held that a
claim objection does *not* violate the claimant's automatic stay. In an attempt

evade this rule of law, the Lehman Entities argue that the Claim Objection is something other than a claim objection. This misdirection can easily be laid to rest. Under Federal Rule of Bankruptcy Procedure ("Rule") 3007(b), any claim objection within the parameters of Rule 3007 cannot seek relief within the parameters of Rule 7001. The SunCal Parties have already stated, and hereby reiterate, that they do not and will not seek any relief that falls outside the parameters of Rule 3007. Their claim objection is just that and no more. Ironically, the Lehman Entities have taken the exact same position regarding their own claim objections; but they apparently believe that what is acceptable when they do it is forbidden when the SunCal parties do it. In addition, the Lehman Entities have attempted to usurp this Court's exclusive jurisdiction over the claims allowance process (not to mention engaged in blatant forum shopping), by asking the Lehman Bankruptcy Court to decide the exact same issue.

C)   Recoupment Against A Secured Claim. The Lehman Entities contend that the SunCal cannot use the equitable doctrine of recoupment to reduce their secured claims. What they are really arguing is that they have the right to insist that in applying recoupment, the Court can only reduce the unsecured part of their bifurcated claim (pursuant to 11 U.S.C.§ 506(a)). This position is error. *In re Jablonski*, 70 B.R. 381, 390 (Bankr. E.D. Pa. 1987) *aff'd in part and remanded*, 88 B.R. 652 (E.D. Pa. 1988) (allowing recoupment against secured part of claim bifurcated under Section 506(a)). If the Court finds that recoupment applies, it has the power to "do equity" in fashioning a remedy. *See Young v. United States,* 535 U.S. 43, 50 (2002) ("[B]ankruptcy courts ... are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'"); *Lines v. Bank of Am. Nat. Trust & Sav. Ass'n*, 743 F. Supp. 176, 179 (S.D.N.Y. 1990) ("These doctrines are necessarily flexible because equity must apply its remedies to 'whatever knavery human ingenuity can invent.'").

D)   The Settlement Agreement Was A Binding Agreement That Was Breached. The Lehman Entities argue that recoupment cannot apply to damages incurred through their breach of the Settlement Agreement, because the agreement never "closed." The Lehman Entities are mixing apples and oranges. There is a distinction between whether an agreement was reached, and whether it was implemented. As the evidence submitted herewith confirms, on August 25, 2008, the parties signed over a thousand signature pages, and indicated that they had a binding agreement. The SunCal Parties even conveyed one of the properties to the Lehman Entities pursuant to the terms of the agreement. All conditions precedent to closing had occurred, and the parties' obligation to execute and deliver the agreement became "unconditional and irrevocable." The fact that transactions provided for in that agreement didn't "close" does not vitiate existence of an agreement; just the opposite—it proves a breach.

E)   LBHI's Chapter 11 Filing Was Irrelevant. The Lehman Entities argue that LBHI's Chapter 11 filing on September 15, 2008, relieved Lehman ALI of its obligation to perform under the terms of the Settlement Agreement. In fact, LBHI's filing was irrelevant to the existence and enforceability of the agreement. Agreement had already been reached—and the conditions precedent to performance were satisfied—*before* LBHI's bankruptcy. LBHI's later filing did

not relieve Lehman ALI of its preexisting obligations under the contract. At most, it may have relieved LBHI of its obligation to perform—and it *had no remaining obligations* under the contract in any event.

F)  The Failure to Pay "Urgent Payables."  Lehman ALI argues that under the Restructuring Agreement, it had discretion whether to pay the "Urgent Payables," and that given this discretion, it could not have breached the agreement. First, this position is directly contrary to New York law: The term "discretion" in a contract has boundaries and they are subject to breach.  *deCiutiis v. Nynex Corp.*, 1996 WL 512150, *3 (S.D.N.Y. Sept. 9, 1996) ("[A]n implied covenant of good faith does not conflict with NYNEX's 'sole, exclusive and complete discretion.' Rather, it requires NYNEX to exercise its discretion in good faith and not to act arbitrarily.").  Second, as the Second Cook Declaration confirms, Lehman ALI did not pay the agreed upon "Urgent Payables."

G)  The Failure To Pay Management Fees. The Lehman Entities argue that Lehman ALI's breach of its contractual obligation to pay management fees cannot warrant disallowance of their claims, because the obligation was owed to SunCal Management, not the SunCal Debtors, and so the SunCal Debtors ostensibly suffered no harm thereby. This argument ignores the fact that this failure to pay necessarily left the SunCal Debtors owing this obligation.

H)  Unjust Enrichment, Unclean Hand and Equitable Lien Claims Apply. The Lehman Entities argue that "[t]he existence of a written contract precludes claims of unjust enrichment or a constructive trust." This is an astonishing argument given the Lehman Entities' contrary assertion that no contract existed. Moreover, these equitable claims are not so limited given the circumstances. The Lehman Entities are coming to this Court seeking to enforce claims where they have engaged in substantial wrongdoing both in matters relating to these claims, and in matters relating to the enforcement of these claims. This course of conduct gives rise to the above stated equitable defenses.

I)  Recoupment Is Available On These Facts. The Lehman Entities insist that the instant facts do not meet New York's "same transaction or set of transactions" test for recoupment.  But the Lehman Entities erroneously assume that New York law applies to the SunCal Parties' equitable claim for recoupment.  Under the applicable "logical relationship" test in the Ninth Circuit, the breaches of the Restructuring and Settlement Agreement clearly bear a logical relationship to the loan agreements underlying the Lehman Claims: the whole point of the Restructuring and Settlement Agreement was to modify those loan agreements. Even under New York law, there are disputed factual issues regarding whether the "same transaction or set of transactions" test is satisfied, warranting discovery.

J)  The Claim Objection Does Not Have To Be Litigated In An Adversary Proceeding. The Lehman Entities contend that the Claim Objection must be litigated in an adversary proceeding. This is erroneous. Recoupment is an affirmative defense under both California and New York law. Pursuant to Rule 3007, it can be pursued in the form of a claim objection.

## II

## <u>REPLY TO STANDING ARGUMENT</u>

The Lehman Entities contend that only the Trustee has the right to file an objection to their claims and that he has "settled" any objection, depriving the SunCal Parties of standing.[3] The first position is contrary to the law and the second is contrary to the facts. Section 502(a) states that any *party-in-interest* can object to a claim. 11 U.S.C. § 502(a). Indeed, Section 502(a) expressly allows a creditor to object to claims *without limitation, qualification or exception*. Moreover, the term "party in interest" is extremely broad. *In re Barnes*, 275 B.R. 889, 893 (Bankr. E.D. Cal. 2002) ("The term "party in interest" is broad enough to include anyone whose financial interest may be affected by the outcome of a bankruptcy case"); *In re Haslam*, 2008 WL 8444816 (B.A.P. 9th Cir. 2008); *In re Jensen*, 369 B.R. 210, 229-30 (Bankr. E.D. Pa. 2007) ("In considering the scope of the term 'party in interest,' I find it significant that Congress employed that broad term, rather than other, more limiting potential terms, such as 'holder of an allowed claim' or 'holder of a filed proof of claim' or 'creditor'"); *In re Turpen*, 218 B.R. 908, 911 (Bankr. N.D. Iowa 1998) ("The Code does not require the allowance of a claim before the claimant may object to the plan. In providing who might object to plans, Congress used the broad term 'party in interest.' It did not restrict the filing of objections to creditors who hold allowed claims.").

The fact that a "trustee" is serving in the place of the debtor-in-possession in the Trustee Cases does not change the standing threshold that governs who can file an objection to a claim. Section 1107 makes it clear that both Chapter 11 trustees and debtors-in-possession have the same powers under the Code.

---

[3] The Chapter 11 Trustee for the Trustee Debtors filed a short Opposition to the SunCal Parties' objections to claims challenging the standing of SunCal Management to object to the Lehman claims in the Trustee Debtor cases. The Trustee's arguments (and the cases relied upon) are similar to those asserted by the Lehman Entities. The Trustee adds to the argument by contending that he has not authorized SunCal Management to pursue contract claims on behalf of the Trustee Debtors.

These contentions do not vitiate SunCal Management's standing to object to the claims under Section 502(a). Both the plain language of Section 502(a) and applicable Circuit level case law confer standing on a creditor such as SunCal Management to object to the Lehman Entities' claims made in the Trustee Debtors' cases, regardless of authorization by the Trustee.

In *In re P.R.T.C. Inc.,* 177 F.3d 774, 778 (9th Cir.1999), the Ninth Circuit made it clear that even a debtor in a Chapter 7 case (where obviously a trustee is in place) has standing to object to a claim, if there is a possibility that a distribution could be made to equity. Here, the standing inquiry is whether or not there is a possibility that a distribution could be made to SunCal Management on account of its claims. Since this will indisputably occur if the SunCal Parties' claim objections prevail, SunCal Management has standing under Section 502(a).

The cases cited by the Lehman Entities in support of their position are off the mark. The case of *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976), offers no guidance on anything other than the fact that standing is required under Article III. In *In re Curry & Sorensen, Inc.*, 57 B.R. 824 (B.A.P. 9th Cir. 1986), the BAP held that creditors lacked standing to file an adversary proceeding seeking the recovery of a fraudulent transfer owed to the estate. This would be true whether a trustee was appointed or not, but those are not the facts in this case. The SunCal Parties are filing defensive claim objections, not adversary collection actions.

Similarly, in *Estate of Spirtos v. One San Bernardino County Sup. Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1174 (9th Cir. 2006), a purported beneficiary of the decedent debtor filed a complaint against all of the representatives of his Chapter 7 estate contending these representatives had concealed assets belonging to the estate. Since the estate held this claim, and since the California Probate Court had concluded that this purported "beneficiary" of the decedent's estate in fact had no beneficiary rights, standing obviously did not exist on two levels. Here again, the issue is standing under the "party-in-interest" standard, and that threshold has clearly been met.

Further, the Lehman Entities' attempt to analogize their standing argument to an objection to claim made under Section 502(d), based on the failure to turn over property recoverable under Sections 547, 458 and/or 550 (with reference to the case of *In re Prime Motor Inns, Inc.*, 135 B.R. 917 (Bankr. S.D. Fla. 1992)), fails. A creditor's right to object to a claim on the basis of avoidable transfer liability is well entrenched – pre-dating the current Bankruptcy Code.[4] In *Atwood-Larson*

---

[4] Pre-Bankruptcy Code judicial interpretations are presumed to have survived the enactment of the Bankruptcy Code unless Congress has expressed an intention to change the interpretation of judicially created concepts. See, *U.S. v. Ron Pair Enterprises, Inc*., 489 U.S. 235 (1989); 18 Bankr. Ct. Dec. (CRR) 1150, Bankr. L. Rep. (CCH) P 72575, 89-1 U.S. Tax Cas. (CCH) P 9179, 63 A.F.T.R.2d 89-652 (1989). Nothing in Section 502 or the Legislative History of the Section expresses such an intention.

1   *Co. v. Hasvold (In re Richmond Equity Exchange),* 280 F. 385 (8th Cir. 1922), certain creditors

2   filed written objections to the claims of a lender on the basis of payments made to the lender

3   which constituted voidable preferences. *Atwood-Larson, supra,* 280 F. at 385. The Court of

4   Appeals affirmatively held that "*it was clearly the duty of the referee to hear evidence on the*

5   *objections interposed by Hasvold and the other creditors.*" *Id.,* at 386 (emphasis added). The

6   Court of Appeals distinguished the claims objection from a proceeding to recover an alleged

7   avoidable transfer, acknowledging that "[i]t was not a proceeding to recover an alleged preference,

8   but to determine whether the referee would decline to allow a claim on account of petitioner's

9   having received a voidable preference." *Id.* This distinction (an affirmative action to avoid a

10   transfer vs. the disallowance of a claim) is replete in current case law.

11       Most notably in *In re Parker North American*, 24 F. 3d 1145, 1155 (9th Cir. 1994), the

12   Ninth Circuit Court of Appeals provided that, unlike an avoidance action under Sections 547, 548

13   and 550, an objection under Section 502(d) "does not compel surrender, nor permit affirmative

14   relief of any kind," rather it acts to "disallow claims of transferees who do not surrender their

15   avoidable transfers."

16       The 2007 Amendment to Rule 3007 codifies this distinction drawn by the *Parker North*

17   *American* case between adversary proceedings and claim objections. More specifically, "the

18   amendment prohibits a party in interest from including in a claim objection a request for relief that

19   requires an adversary proceeding." FRBP 3007(a), *Advisory Committee Notes – 2007 Amendment*.

20   In other words, no affirmative relief can be granted by a claims objection. The assertion of a

21   claims objection is a statutorily endowed right of a party of interest which is fundamentally

22   different that the assertion of an affirmative claim such as the commencement of an adversary

23   proceeding for the avoidance of transfers or contract damages. This clear distinction, together

24   with the affirmatively permissive language of subsection Section 502(a), unmistakably confer

25   standing on any party in interest, including a creditor, to assert claim objections.

26       The primary case referenced by the Lehman Entities, *In re Prime Motor Inns, Inc.*, 135

27   B.R. 917 (Bankr. S.D. Fla. 1992), is easily distinguished. First, the *Prime Motor* Court relies

28   heavily on the general proposition that a creditor does not have standing to prosecute preference

-9-

1    actions under Section 547.  This is not in dispute.  However, like the Lehman Entities, the *Prime*

2    *Motor* Court makes the unjustified leap that an objection under Section 502(d) is tantamount to a

3    *disguised* preference action without sufficient analysis of the distinction between the two courses

4    of action.  *Prime Motor*, 135 B.R. at 920.  Second, the *Prime Motor* Court acknowledges that its

5    decision is based on a review of *the complaint at issue in that case* wherein the subject creditor

6    asserted an independent claim for avoidance of a preferential transfer and "further sought" an

7    order disallowing the lender's claim.  No such separate adversary action for the avoidance of

8    transfers made to the Lehman Entities has been asserted by SunCal Management (under Sections

9    547, 548, or otherwise) in this case.  Likewise, no separate action for recovery of contract damages

10   sustained *by the Trustee Debtors* has been commenced by SunCal Management.  The *Prime Motor*

11   case, which fails to recognize the plain language of subsections (a) and (d) of Section 502, as well

12   as the critical distinction between disallowance under Section 502 and affirmative prosecution of

13   claims, as specifically recognized in the Ninth Circuit (see *In re Parker North American, supra*), is

14   neither persuasive nor controlling.[5]

15         In sum, both the plain language of Section 502 and applicable Court of Appeals case law

16   confer standing on a creditor such as SunCal Management to object to the Lehman Entities' claims

17   made in the Trustee Debtors' cases.  The Lehman Entities' lack of standing argument is wrong on

18   the law and should be rejected by the Court.

**III**

**REPLY TO AUTOMATIC STAY ARGUMENT**

A.      **The Lehman Entities' Stay Violation Arguments are Substantively Wrong**

22         The Lehman Entities have filed a series of claims ( "Lehman Claims") in the Chapter 11

23   cases of the SunCal Voluntary Debtors, and in the related Chapter 11 cases of the SunCal Trustee

24   Debtors. The SunCal Parties filed have two *claim objections* to the Lehman Claims. One of these,

25   the instant one, is based upon recoupment, among other things (the "Recoupment Claim

---

[5] The *Prime Motors* case pre-dates the 2007 Amendment to Rule 3007 discussed above.  This may account for the court's failure to distinguish between disallowance under Section 502 and the affirmative prosecution of avoidance claims under the avoidance statutes.  At the very least, the 2007 Amendment which codifies the distinction recognized by the Ninth Circuit *Parker North American* case reveals the faulty analysis upon which the *Prime Motors* decision rests.

1    Objection"). The second is based upon 11 U.S.C. § 502(d) (the "502(d) Claim Objection")

2    (together the "Claim Objections"). The Claims Objections were filed pursuant to Federal Rule of

3    Bankruptcy Procedure 3007 *and seek no relief outside the parameters of this rule*.

4         On May 3, 2011, the SunCal Parties filed their *Motion Regarding Entitlement To*

5    *Discovery In Connection With Claim Objection And/Or Imposing Discretionary Stay* [D.E. 2039].

6    In opposing that motion, the Lehman Entities argued that the Claim Objections violated LCPI's

7    automatic stay, and consequently that any discovery propounded therewith should be barred.  In

8    their reply, the SunCal Parties could not have been more explicit in stating their intentions:

9         The Lehman Entities' contention that the SunCal Parties' claim objection is
10        something other than a claim objection, although absurd, is easily addressed. *The
          SunCal Parties hereby state that the claim objection is that and nothing more and
11        no relief is sought, or should be granted, outside the parameters of Federal Rule
          of Bankruptcy Procedure 3007. Respectfully, they cannot be clearer than that.* [6]

12   The SunCal Parties' reference to Rule 3007 (entitled "Objections To Claims") was intended to

13   make it clear that the Claim Objections were subject to the express limitation in Rule 3007(b),

14   which provides:

15        A party in interest *shall not* include a demand for relief of a kind specified in
          Rule 7001 in an objection to the allowance of a claim, but may include the
16        objection in an adversary proceeding.

17   Fed.R.Bankr.P. 3007(b) (emphasis added).  Rule 3007(b) has the force of a statute. *In re Dorner*,

18   343 F.3d 910, 914 (7th Cir. 2003) ("[N]ational rules have the force of statutes."); 28 U.S.C. §

19   2072.  By submitting claim objections, the SunCal Parties have bound themselves by this rule.

20        In other words, the SunCal Parties do not merely contend that the relief they are seeking is

21   defensive and does not violate the stay.  Rather, if relief is affirmative and cannot be obtained via a

22   claim objection, *the SunCal Parties are not seeking it*.

23        At the conclusion of the May 13, 2011 hearing on the SunCal Parties' motion for

24   entitlement to discovery, the Court rejected the Lehman Entities' position.  As stated in the Court's

25   tentative ruling:

26

27        [6] *Suncal Parties' Reply To Opposition To Motion Regarding Entitlement To Discovery In Connection
     With  Claim Objection And/Or Imposing Discretionary Stay*, [D.E. 2085] at 4:13-17 (emphasis added).

28

The fact that one of the claimants, LCPI, is a debtor in its own bankruptcy case is of no consequence as **the automatic stay does not apply to claim objections**. *See In re Palmdale Hills Property, LLC*, 423 B.R. 655, 665 (9th Cir. BAP 2010) ("...courts allow debtors to object to creditors' claims on the basis that it is a defense against the assertion of the claim, and therefore, does not violate the creditor's automatic stay."), citing *In re Wheatfield Bus. Park, LLC*, 308 B.R. 463, 466 (9th Cir. BAP 2004).

Accordingly, **the Voluntary Debtors and SunCal may, via the claims objection process, seek and obtain a determination as to the validity or allowability of the claims filed by the Lehman Entities, including LCPI without violating the automatic stay of LCPI.** *Palmdale* at 665.

Miliband Decl., Exh. 1 at 2 (emphasis added). *See also In re Wheatfield Bus. Park*, 308 B.R. 463, 465 (9th Cir. BAP 2004) ("Hi-Tech is a claimant here. That's the role of a plaintiff. The automatic stay doesn't apply to plaintiffs…."); *In re Financial News Network*, 158 B.R. 570 (S.D.N.Y. 1993) (debtor's objection to bankrupt creditor's claim does not violate stay); *In re Metiom, Inc.*, 301 B.R. 634, 638-639 (Bankr. S.D.N.Y. 2003) (§502(d) claim objection was defensive and did not violate creditor's automatic stay); *In re PRS Ins. Group*, 331 B.R. 580, 584 (Bankr.D.Del. 2005) (applying *Metiom* to Ohio stay analogous to §362(a)(3), holding § 502(d) claim objection was defensive and did not violate the creditor's stay); *In re Meade*, 1999 WL 33496001, *1 (E.D.Pa. 1999); *In re Bousa, Inc.*, 2005 WL 1176108, *4 (S.D.N.Y. 2005) ("To the extent that the debtor has itself brought the claim, the automatic stay provision does not preclude adjudication.").[7]

The Lehman Entities cannot dispute that a claim objection for recoupment seeks a "determination as to the validity or allowability" of a claim. Numerous cases have held that recoupment may properly be sought via claim objection, and that this does not violate the automatic stay. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F .3d 1392, 1400 (9th Cir. 1996); *In re TLC Hospitals, Inc.*, 224 F.3d 1008, 1014 (9th Cir. 2000); *In re Palmdale Hills*, 423 B.R. at 667 n.9; *In re Petersen*, 2010 WL 3842157, *13 (D.Ariz. 2010); *In re McMahon*, 129 F.3d 93, 98 (2d Cir. 1997). Indeed, the Lehman Entities cite *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990) for the proposition that recoupment is "purely defensive in

---

[7] The Lehman Entities' attempts to distinguish or recharacterize the numerous cases cited by the SunCal Parties are unavailing. For example, they try to distinguish *In re Financial News Network*, 158 B.R. 570 (S.D.N.Y. 1993), based on the fact that the bankrupt creditor's claim was disallowed on the basis of a finding of no liability. Opp. at 16 n.9. This is a distinction without a difference: disallowance is disallowance, be it partial or total, and is not affirmative relief.

1    character" and "could not be the basis for affirmative relief."  Opp. at 18:8-11.[8]

2           Here, the Recoupment Claim Objection does not seek any affirmative recovery against

3    LCPI.  Rather, the SunCal Parties are merely acting defensively to disallow the Lehman Claims,

4    placing the Claims Objections clearly outside the scope of LCPI's automatic stay.

5           The Lehman Entities, knowing full well that claim objections do not violate the stay, that

6    recoupment may be sought via claim objection, and that recoupment does not violate the stay,

7    assert that the instant claim objection is not "really" one for recoupment.  Rather, they insist that

8    they know better than the SunCal Entities what the SunCal Entities seek via their claim objection:

9    "Subordination is exactly the intended effect of the Asserted Claim Objection.  It is the only

10   reason for the Asserted Claim Objection."  Opp. at 15:1-2.

11          The Lehman Entities' argument is not only wrong; it drips with irony.  Just two days ago,

12   in response to an assertion that the Lehman Entities' own objections to SunCal Management's

13   claims sought the affirmative relief of subordination, and so had to be brought via an adversary

14   proceeding, the Lehman Entities insisted:

15          Your position is not well taken.

16          The prayer in each of the Objections to Claims seeks disallowance of the subject
17          claims, not subordination.  Neither do they seek subordination in the alternative.

18          Rule 7001(a) defines adversary proceeding to include, "a proceeding to
19          subordinate an <u>allowed</u> claim or interest..."  The Claims Objections, as noted
             above, seek only to disallow the claims.  The prayer in each of the Claims
20           Objections further seeks an order that any ruling on the Claims Objections not
             preclude the right to assert any claims or demands for relief requiring an
21          adversary proceeding consistent with Rule 3007(b) or Rule 7001.

22          *To the extent that you read the Claims Objections otherwise, this email is sent to*
            *clarify and state with complete particularity that the Lehman Entities do not seek*
23          *through the Claims Objections an order subordinating any of SunCal*
            *Management's claims.*
24

25   Miliband Declaration, Exh. 2 (italicized emphasis added).

26   _____

27   [8]  Recoupment is considered a defense.  *Buder v. United States*, 436 F.3d 936, 938 (8th Cir. 2006)
     ("Equitable recoupment is an affirmative defense"); *Enrico & Sons Contracting, Inc. v. Bridgemarket*
28   *Associates*, 252 A.D.2d 429, 430, 675 N.Y.S.2d 351, 352-53 (N.Y. App. Div. 1998) ("It is really a defense,
     as it denies the validity of plaintiff's claim in the amount claimed, and does not entitle defendants to any
     affirmative relief or any amounts in excess of the amount demanded by plaintiff.") (citation omitted).

1   When the Lehman Entities assert that on ostensible claim objection is nothing more than a

2   claim objection, they expect their word to be accepted.  When the SunCal Parties do the same

3   thing, the Lehman Entities disregard it and file motions for violation of the automatic stay.

4   Desperate to swing the bat of LCPI's stay and hit something, the Lehman Entities argue

5   that even if the Claim Objection did not seek subordination, "it would nevertheless violate the stay

6   as the commencement of an action against LCPI to establish a right of setoff."  Opp. at 15:20-22.

7   But when the Recoupment Claim was amended on May 20, 2011, the SunCal Parties made clear

8   that while recoupment is sought against both Lehman ALI and LCPI, setoff is sought against

9   Lehman ALI only. (*See* Amended Notice of Motion to Disallow Claims [D.E. 2082] at viii.7-12.)

10  The Lehman Entities ignore this basic fact, once again insisting that *they* get to decide what relief

11  the *SunCal Parties* seek.  Because the SunCal Parties have chosen to file a claim objection and to

12  seek only relief properly obtainable thereby, the automatic stay is simply a non-issue.

13  **B.**      **The Lehman Entities' Stay Violation Arguments are Misleading and Improper**

14  In making their automatic stay arguments, the Lehman Entities engage in sleight-of-hand

15  regarding the evidence they cite and the relief they request.  More troubling, while accusing the

16  SunCal Parties of violating the automatic stay, it is the Lehman who are infringing upon the

17  SunCal Debtors' statutorily provided bankruptcy protection and upon this Court's jurisdiction.

18  First, in arguing that the Recoupment Claim Objection "really" seeks subordination

19  through a property sale procedure that places the SunCal Parties' recovery rights before those of

20  LCPI, the Lehman Entities do not cite to the Recoupment Claim Objection itself. They could not:

21  the Recoupment Objection does not provide for the sale of anything, and none of the prayers for

22  relief therein seek one penny from LCPI's collateral. It merely seeks a ruling reducing the amount

23  of the secured Lehman Claims, by the amount of damages suffered through a specified transaction.

24  The sale and distribution of proceeds provisions that the Lehman Entities contend equate to

25  subordination appear *only in the SunCal Parties' plan of reorganization* (the "SunCal Plan").  *See*

26  Opp. at 15:9-14 and n.8 (citing the "DS Reply" [D.E. 2046]).  The SunCal Plan then expressly

27  limits these sale and distribution provisions by stating that no sale or other relief will occur until

28

-14-

1    LCPI's automatic stay is lifted or is determined not to apply.[9]  In the motion filed in New York to

2    enforce the Lehman debtors' automatic stay, LCPI  acknowledges this qualification in the SunCal

3    Plan, and is not contending that the SunCal Plan violates LCPI's automatic stay.[10]  As the Lehman

4    Entities well know, plan feasibility is not before the Court at this time, and their attempt to both

5    confuse the issues and jump the gun in this regard is improper.

6            Second, by filing the New York Stay Motion to enjoin the SunCal Parties' Claim

7    Objections, the Lehman Entities have infringed upon this Court's exclusive jurisdiction over the

8    claims allowance process and the administration of the SunCal Debtors' property thereby.  Since

9    the Lehman Claims were filed in this Court, and they seek payment from the *res* within the

10   exclusive control of this Court, the allowance and disallowance of these claims falls within the

11   exclusive jurisdiction of this Court. *In re W.G. Wade Shows, Inc.*, 218 B.R. 625, 628 (Bankr. M.D.

12   Fla. 1998) ("It can hardly be gainsaid that this Court has the exclusive jurisdiction to pass on the

13   allowability of any claims filed by Claimants. 11 U.S.C. § 503; 28 U.S.C. § 157(b)(2)(B)."); *In re*

14   *U.S. Lines, Inc.,* 199 B.R. 476, 480 (Bankr. S.D.N.Y. 1996) ("[T]he claims allowance process is

15   within the exclusive jurisdiction of the bankruptcy courts."); *In re Coated Sales, Inc.,* 119 B.R.

16   452, 455 (Bankr. S.D.N.Y. 1990) ("[B]y submitting a claim against the bankruptcy estate,

17   creditors subject themselves to the court's equitable power to disallow those claims.

18   Concomitantly, when the claimant invokes the equitable jurisdiction of the bankruptcy court to

19   establish its right to participate in distribution, it cannot, thereafter, object to the court's necessary

20   determination of any misappropriations by the claimant.").

21           A bankruptcy court's exclusive jurisdiction over the claims allowance process is

22   not only sensible, it is essential to the proper functioning of the bankruptcy system.  As

23   the Ninth Circuit stated in *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1153 (9th Cir. 1994):

24   _____

25           [9] On June 8, 2011, the Ninth Circuit will hear oral argument regarding whether the adversary
     proceeding for equitable subordination implicates LCPI's automatic stay.

26           [10] *See* New York Stay Enforcement Motion (Miliband Decl., Exh. 3) at 14 ¶ 30 ("On April 8, 2011, the
     SunCal Plan Proponents mailed LCPI a letter request that LCPI confirm its view on the effect of the
27   SunCal Plans on the automatic stay in these chapter 11 cases…..On April 25, 2011,…LCPI advised the
     SunCal Plan Proponents that it would accept the representation made in the SunCal Plans that 'no action
28   provided for in [the SunCal Plans] shall be taken against [LCPI] or [LBHI] that would have the effect of
     violating any applicable automatic stay.'").

   With no authority to allow or disallow [the RTC]'s claims against a bankruptcy
debtor, the system falls apart.... [I]n a Chapter 11 case, [the] inability to allow a
claim by [the RTC] would make plan confirmation impossible. The only option in
such a situation might well be to dismiss the case. We doubt that Congress
intended such a result.

*Id.* at 1153 (quotation omitted).  This position was echoed by the Second Circuit in *In re S.G.*

*Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir. 1995) ("Because nothing is more directly at

the core of bankruptcy administration ... than the quantification of all liabilities of the debtor, the

bankruptcy court's determination whether to allow or disallow a claim is a core function.")

(quotation omitted).

   Because this Court is in possession of the *res* from which a claimant seeks payment—the

properties in California—this Court has the exclusive right to decide what claims will be allowed

recourse to that *res. Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) ("A

common-law rule of long standing prohibits a court, whether state or federal, from assuming in

rem jurisdiction over a res that is already under the *in rem* jurisdiction of another court.").[11]

   Although the Lehman Entities contend that the issue presented in the New York Stay

Motion is a "home bankruptcy court" court versus "foreign bankruptcy court" automatic stay

issue, it is not.  The only provision in 11 U.S.C. § 362(a)(3) that could have any conceivable

application is subsection 362(a)(3) (subsection 362(a)(1) has no application, since claim

objections can only be filed post-petition);[12] and the filing of claim objections that only seek

disallowance of a claim is not an act to "exercise control over" the property of the claimant. It is

the equivalent of an answer to the claimant's proof of claim. *Nortex Trading Corp. v. Newfield,*

---

[11] The Supreme Court has consistently held that the disallowance of a claim is an act *in rem* that is not "against" anyone. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 452 (2004) ("[T]here is no need to engage in a comparative analysis to determine whether the adjudication would be an affront to States' sovereignty. As noted above, we have long held that the bankruptcy courts' exercise of *in rem* jurisdiction is not such an offense."); *Gardner v. State of N.J.*, 329 U.S. 565, 573-74 (1947) ("*The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res.* It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash.") (emphasis added).

[12] *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 706 (2d Cir. 1995) ("We do not think that anything in Marathon alters the basic principle that the filing of a proof of claim invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.").

1   311 F.2d 163, 164 (2<sup>d</sup> Cir. 1962) ("The filing by Nortex of its proof of claim is analogous to the

2   commencement of an action within the bankruptcy proceeding."); *In re Barclay Bros., Inc.*, 1986

3   WL 15884, *1 (Bankr.E.D.Pa. 1986) ("Since the filing of a proof of claim has been said to be

4   tantamount to the filing of a complaint in a civil action, the trustee's formal objection to the claim

5   is considered to be the answer to the claim under Bankruptcy Rule 9014.") (citing *Nortex*).

6   Third, the New York Stay Motion seeks relief that would violate the SunCal Debtors'

7   automatic stay, not to mention transgress the boundaries of due process. If the New York Stay

8   Motion were granted, it would effectively deny the SunCal Debtors the right to defend their assets

9   against the prepetition claims and liens that the Lehman Entities are asserting against these

10  properties. *A property owner who is denied the right to oppose claims and liens asserted against*

11  *its property is effectively denied ownership of the property*. This relief would therefore violate

12  Section 362(a)(3), and judicially enjoin the SunCal Debtors from defending themselves.[13]

13  The Lehman Entities, no doubt aware of this, misleadingly suggest to this Court that they

14  seek to enjoin the Claim Objection *only vis-à-vis non-debtor SunCal Management*:

15      *If the Court determines that SuCal Management does have standing* to prosecute
16      the Asserted Claim Objection on behalf of the relevant Trustee Debtors against
        LCPI, LCPI respectfully requests that the Court defer ruling until the Lehman
17      Bankruptcy Court has an opportunity to rule on the applicability of the Lehman
        Debtors' automatic stay to the claims asserted therein.
18

---

[13] The New York Stay Motion also violates 11 U.S.C. § 362(a)(1) by seeking to enforce the prepetition
19  Lehman Claims in the Lehman Bankruptcy Court. Although the Lehman Entities will contend that they are
    only seeking to enforce their stay, this argument ignores the obvious effect of the ruling they seek. If this
20  Court prohibits the SunCal Debtors from objecting to the Lehman Claims—*which is precisely the relief
    sought by the New York Stay Motion*—then these claims instantly gain obtain validity, through the judicial
21  immunity from challenge granted by the Lehman Bankruptcy Court. In essence, granting the New York
    Stay Motion has the effect of a liability judgment for all practical purposes. This clearly violates Section
22  362(a)(1).

23  The New York Stay Motion also seeks a ruling that would violate 11 U.S.C. § 362(a)(4). Although the
    Lehman Entities will argue that a ruling from the Lehman Bankruptcy Court immunizing their claims and
24  liens from challenge is not an "act to create, perfect, or enforce any lien against property of the estate," the
    effect of the requested ruling would be exactly that. Pursuant to 11 U.S.C. § 502(a), a filed claim is valid
25  until it is the subject to an objection. If the New York Stay Motion is granted, the SunCal Parties will be
    denied the right to object to the Lehman Claims, which effectively conveys upon such claims and liens the
26  validity and priority that asserted in these claims.

27  In short, if the Lehman Entities want the Court to consider the "true effect" of a motion, their argument
    proves too much.
28

Opp. at 13:27-14:3 (emphasis added).  However, in the New York Stay Motion itself, the Lehman

Entities unequivocally seek to enjoin the claim objections not only as to the non-debtor SunCal

Management, but as to the SunCal Debtors as well:

> [T]he "<u>Debtors</u>"...file this Motion (the "<u>Motion</u>") pursuant to section 362(a) of
> the Bankruptcy Code seeking entry of an order *enforcing the automatic stay with
> respect to the SunCal Movants* (defined below)….

> [*C*]*ertain of the SunCal Debtors, along with affiliated non-debtor SunCal
> Management LLC (collectively with the SunCal Debtors party to the SunCal
> Motions, the "<u>SunCal Movants</u>"*), through two separate motions (the "<u>SunCal
> Motions</u>"), ask the California Bankruptcy Court to disallow 14 claims, totaling
> billions of dollars, held by LCPI against the SunCal Debtors.

Miliband Decl., Exh. 3 at Notice of Motion and p.1 ¶ 1 (emphasis added).  The Lehman Entities

have thus failed to make full disclosure to this Court regarding the scope of relief they are

(simultaneously) seeking from the Lehman Bankruptcy Court.

At the end of the day, the Lehman Entities are forum shopping.  At the same time that they

argue to this Court that their automatic stay is violated, they have asked the Lehman Bankruptcy

Court to delve into and pre-judge the merits of the claim objections pending before this Court.

The court in which proofs of claims are filed has exclusive jurisdiction over the allowance and

disallowance of those claims.  Moreover, a claimant who files a claim in one bankruptcy court

cannot seek review in another bankruptcy court in the hope of getting a better deal.  *See Pan Am.

World Airways, Inc. v. C.A.B.,* 517 F.2d 734, 741 (2d Cir. 1975) ("Possibly petitioners chose to

appeal the Board's ruling with respect to TGC/ABCs in this Circuit in the hopes of finding a court

more inclined toward their view.  Such 'forum shopping' should be discouraged.").

## IV

## <u>REPLY TO CONTENTION THAT RECOUPMENT DOES NOT</u>

## <u>ALLOW REDUCTION OF SECURED CLAIM</u>

The Lehman Entities contend that the SunCal Parties' recoupment objection can never

result in the reduction of their secured claims. Stated otherwise, the Lehman Entities assert that

*they* have the right to insist that any sum that is recoupable must be applied against their unsecured

claim, not their secured claim. This is not the law.

1    Recoupment is an equitable doctrine. When a court fashions a remedy within the context of

2    an equitable defense, it has the flexibility to grant relief that addresses the wrong in a manner

3    consistent with the dictates of equity. The Supreme Court has consistently acknowledged this

4    power and flexibility. *Reiter v. Cooper,* 507 U.S. 258, 265 n. 2 (1993) ("It is well settled ... that a

5    bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the

6    same transaction, at least to the extent that the defendant merely seeks recoupment. Recoupment

7    permits a determination of the just and proper liability on the main issue and involves no element

8    of preference."); *Young v. United States,* 535 U.S. 43, 50 (2002) ("[B]ankruptcy courts ... are

9    courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'"); *In re McMahon*,

10    129 F.3d 93, 96 (2d Cir. 1997) (quoting *Reiter*).  As the court aptly stated in *Lines v. Bank of Am.*

11    *Nat. Trust & Sav. Ass'n*, 743 F. Supp. 176, 179 (S.D.N.Y. 1990): "These doctrines are necessarily

12    flexible because equity must apply its remedies to 'whatever knavery human ingenuity can

13    invent.'").

14    What the SunCal Parties seek is neither novel nor unprecedented, as the Lehman Entities

15    would have this Court believe. *See, e.g., In re Jablonski,* 70 B.R. 381, 390 (Bankr. E.D. Pa. 1987)

16    *aff'd in part and remanded*, 88 B.R. 652 (E.D. Pa. 1988) (allowing recoupment against secured

17    part of claim bifurcated under Section 506(a); the amount recouped "should be imposed in such a

18    manner as to have the most meaningful impact on the wrongdoing creditor").

19    The Lehman Entities' argument also ignores the gravamen of recoupment. This doctrine

20    allows the party claiming recoupment to retain its own property, by reducing the creditor's claim

21    against the same.  Here, the Lehman Entities are seeking payment from the Projects owned by the

22    Voluntary and Trustee Debtors.  Due to the nature of recoupment, the claims that seek payment

23    from this source must necessarily be reduced to do equity.

24    The Lehman Entities' argument is also premature.  The remedy that this Court will

25    ultimately grant, or not grant, will depend upon the facts and circumstances presented at the trial

26    on the merits. The range of remedies available to the Court is substantial and this is not the point

27    in time for the Court to decide, or to limit, what it will or will not do.

28

**V**

**THE SETTLEMENT AGREEMENT WAS A BINDING**

**AGREEMENT THAT WAS BREACHED**

In attempting to argue that the Settlement Agreement[14] was not breached, the Lehman Entities turn both the language of the parties' agreement and logic on its head. They would have this Court believe that their execution and delivery of the agreement was a condition precedent to their execution and delivery of the agreement! They also argue that the fact that they didn't perform is proof that there must not have been a binding contract in the first place.

At the very least, if the Court is not willing to reject the Lehman Entities' unreasonable position out of hand, the parties' wildly divergent readings of the contracts, and of whether the parties intended to be bound thereby, mandate that discovery be taken to resolve these disputed factual issues. *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1092 (2d Cir. 1993) (reversing summary judgment based on ambiguity of contract and parties' conflicting extrinsic evidence; "the parties…think their written agreement is clear and unambiguous. But, in light of the claimed clarity, surprisingly each of them interprets the writing differently.").

**A.     The Lehman Entities Misconstrue the Conditions Precedent to Closing**

The Lehman Entities crystallize the circularity of their position when they argue:

> [T]he proposed parties, including LBHI and Lehman ALI, clearly intended to execute and deliver and be bound by the Proposed Settlement Agreement only <u>after</u> the closing conditions were satisfied and each and every proposed party thereto "execute[d], deliver[ed] and enter[ed] into" the Proposed Settlement Agreement.

Opp. at 22:5-7 (original emphasis). In other words—indeed, in so many words—the Lehman Entities argue that they did not "intend[] to execute and deliver and be bound by the Proposed Settlement Agreement" until they "'execute[d], deliver[ed] and enter[ed] into' the Proposed Settlement Agreement." *The Lehman Entities have thus made their execution and delivery a condition precedent to their execution and delivery.*

---

[14] In a not-so-subtle rhetorical ploy, the Lehman Entities repeatedly refer to the "Proposed Settlement Agreement." The SunCal Parties obviously disagree with their characterization of the Settlement Agreement as a mere "proposed" agreement, and will use the Lehman Entities' misleading terminology only when quoting their Opposition.

1    Such an interpretation of the parties' agreement is an absurdity—an event cannot be a

2    condition precedent to itself.  Courts must avoid interpreting a contract in a manner that renders

3    the parties' contract meaningless or nonsensical.  *Greenwich Capital Fin. Prods., Inc. v. Negrin*,

4    74 A.D.3d 413, 415 (2010) (rejecting defendant's interpretation of contract which "depends on

5    'formalistic literalism,' ignores common sense, and could lead to absurd results"); *Smith v. Brown

6    & Jones*, 633 N.Y.S.2d 436, 442 (1995) ("An unreasonable interpretation or an absurd result

7    should be avoided.").  Accordingly, the Lehman Entities' position must be rejected.

8    Moreover, under the Lehman Entities' view, *regardless whether all other conditions

9    precedent to execution and delivery were satisfied*, the Lehman Entities could simply refuse to

10    execute and deliver for any reason or no reason whatsoever.  This would render the SunCal

11    Parties' rights under the contract illusory.  *Quantum Maint. Corp. v. Mercy College*, 798 N.Y.S.2d

12    652, 656 (2005) ("[C]ourts will not adopt an interpretation of a contract that would render the

13    benefit bestowed by the contract illusory.").   That is not a deal that the SunCal Parties would—or

14    did—agree to.  Nowhere in the contract does it state that execution and delivery are a condition

15    precedent to execution and delivery.

16    Nor is that the law.  It is basic blackletter law that a party cannot avoid liability under a

17    contract by preventing the performance of a condition precedent.  *Creighton v. Milbauer*, 594

18    N.Y.S.2d 185, 187-88 (1993) ("[A] party may not frustrate the performance of an agreement by

19    bringing about the failure of a condition precedent.").   Thus, the Lehman Entities could not fail

20    and refuse to execute and deliver when they were otherwise required to do so, and then argue that

21    that very failure excuses their non-performance.

22    Adding to the confusion regarding the Lehman Entities' position is the fact that in a

23    footnote, they assert that "[s]ince the closing never occurred, the signature pages were never

24    delivered."  Opp. at 21 n.13.  Here, they apparently argue that a closing was a condition precedent

25    to their obligation to deliver the signatures, whereas they had just argued above that the delivery of

26    their signatures was a condition precedent to their obligation to close.  Neither position is logical

27    (let alone true), but in any event, Lehman cannot take both positions at once.

28

The language of the contract makes clear that execution and delivery of the Settlement Agreement and related documents is an *obligation triggered by* satisfaction of the closing conditions*, not a condition precedent to closing*:

> Each of the parties acknowledges and agrees that, provided that a Termination Event (as hereinafter defined) has not occurred and subject to the terms of Sections 2, 3 and 4 hereof, not later than three (3) Business Days *following the satisfaction of all the Closing Conditions* (as hereinafter defined) (such date being referred to herein as the "Closing Date"), *each of the Parties will execute, deliver, and enter into* and will cause the other SunCal Parties and Lehman Parties, respectively, and any other Affiliates thereof, as applicable, to execute, deliver and enter into, the Settlement Agreement….

Restructuring Agreement § 1(a) (emphasis added).  Furthermore, section 1(b) lists the "Closing Conditions," and on satisfaction of them, "*the obligations of the Parties to execute and deliver…the Settlement Agreement and the other Settlement Documents shall be unconditional and irrevocable*" (emphasis added).  Sensibly, "execution and delivery" are not included among the list of Closing Conditions.  The list does, however, include reference to obligation to negotiate the documents in good faith, as well as an acknowledgment that if a particular term is not specified or contemplated, the parties will act in a "commercially reasonable manner":

> (i) each of the Parties agrees to negotiate the terms and conditions of the Undocumented Additional Settlement Documents and the final form of any Outstanding Attachments in good faith, and (ii) to the extent that a term or condition is not specifically set forth in or contemplated by the Settlement Agreement or any of the Documented Additional Settlement Documents, the Parties agree that they will act in a commercially reasonable manner in approving customary terms and conditions for transactions of this type….

Restructuring Agreement § 1(b)(iii).  Thus, there is nothing in the language of the contract that indicates that the Lehman Entities could unilaterally refuse to perform.

At bottom, the Lehman Entities conflate the *obligation to proceed* to closing (Section 1(b)) with the *consummation* of the closing itself (Section 1(c)).  They argue that the Settlement Agreement and related Settlement Documents were "never intended to be and never became operative.  If they had, the deeds conveying title to the 'Venture Grantees' would have been recorded and title would have transferred (which has obviously not occurred)."  Opp. at 20:14-18.  Their position can be summarized as follows: "If there was an agreement, we would have done what we were supposed to do.  Since we didn't do what we were supposed to do, there must not have been an agreement."  The fact that the Lehman Entities did not consummate the closing is

86122.4

000757

1    not proof that there was no obligation to close; just the opposite—it is proof of a breach.  There is

2    an obvious distinction between whether an agreement was reached, and whether it was completely

3    implemented. Lehman puts the cart before the horse—and then denies there was ever a horse.

4        **B.    The Evidence Shows the Parties Intended to Be, Believed They Were**

5        **Obligated to, and Were In Fact Obligated to Close**

6        The Lehman Entities conveniently ignore the fact that the Settlement Agreement—and all

7    related Settlement Documents—*were executed*.  The Lehman Entities assert that "[u]nder New

8    York law, if parties do not intend to be bound by an agreement until it is in writing and signed,

9    then there is no contract until that event occurs."  Opp. at 21:4-6 (quoting *R.G. Group, Inc. v.*

10   *Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)).  True enough.  They further cite to

11   *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262 (2d Cir. 1984), for the proposition that

12   language in an agreement that it "would be valid and binding 'when executed and delivered'

13   evidenced a mutual intent not be bound prior to *execution* of the documents."  Opp. at 21:9-12

14   (emphasis added).  But the Lehman Entities cite only to cases where the contract in question was

15   *not signed*.  *See R.G. Group*, 751 F.2d at 74 ("The agreement, however, was never signed.");

16   *Reprosystem*, 727 F.2d at 260 ("At no time [were] any of the draft contracts signed by either

17   side.").  Cases regarding unexecuted contracts do not help the Lehman Entities here, where the

18   documents were in fact signed.[15]

19       As the Declarations of Bruce Cook, Stephan Elieff and Matt Wyman filed concurrently

20   herewith demonstrate, at an August 25, 2008 meeting, Bruce Cook and Stephan Elieff, on behalf

21   of all of the relevant SunCal parties, and Robert Brusco and/or Frank Gilhool, on behalf of all of

22   the relevant Lehman parties, signed the signature pages of the Settlement Agreement and related

---

[15] The Lehman Entities, no doubt aware of this, assert:  "SunCal cannot represent in good faith that the Proposed Settlement Agreement was executed, if 'executed' is meant in a legal sense to connote entry into a legally binding written contract."  Opp. at 21 n.13.  This, of course, assumes what the Lehman Entities seek to prove.  Whether the parties' signing of the agreement was intended to—and did—effectuate a legally binding written contract is, at the very least, a disputed issue.  In both cases cited by the Lehman Entities, the parties took discovery and offered extrinsic evidence regarding their intent to be bound.  *R.G. Group*, 751 F.2d at 76-77 (on appeal from summary judgment, court considered evidence of intent including, but not limited to, language of agreement); *Reprosystem*, 727 F.2d at 261 (appeal from judgment; court focused on "documents and testimony" to determine parties' intent to be bound).

1  Settlement Documents required to be signed prior to consummation of the Settlement

2  Transactions—in excess of 1000 pages in all.  During a breakout session among the principals that

3  took place during that August 25 meeting, the parties *resolved* any outstanding business issues,

4  and emerged asserting that the "deal was done."  Although some of the documents may have

5  needed to be revised or updated to reflect what was agreed to, it was the expressed understanding

6  of the parties immediately after that meeting that since the documents were now signed, once the

7  Required Consents were obtained, *nothing further would be required* for the parties to be

8  obligated to proceed to a closing.  Cook Decl. ¶¶ 12-25; Elieff Decl. ¶¶ 4-16; Wyman Decl. ¶¶ 11-

9  21.  As *Reprosystem*, the principal case relied upon by the Lehman Entities, points out:

> [T]he mere fact that the parties contemplate memorializing their agreement in a
> formal document does not prevent their informal agreement from taking effect prior
> to that event. … These rules, placing the emphasis on intention rather than form,
> are sensible and reasonable.

12  *Reprosystem*, 727 F.2d at 261; *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir.1968) ("[I]t is also

13  plain that all the terms contemplated by the agreement need not be fixed with complete and perfect

14  certainty for a contract to have legal efficacy.").

15  In support of their Opposition, the Lehman Entities submit two witness declarations—yet

16  they have *vigorously and repeatedly opposed efforts to obtain those witnesses' depositions*.

17  Notably, Weil attorney Nellie Camerik, the declarant who asserted that there were "open issues"

18  remaining after the August 25 meeting and that there was no binding agreement, did *not*

19  participate in the breakout session among principals where the open issues were resolved.  Robert

20  Brusco, the Lehman representative who was actually in that breakout session, makes no such

21  claim; rather, his declaration largely just authenticates documents.  The SunCal Parties have

22  submitted three declarations from people who were in that meeting and who have contradicted

23  Camerik's conclusions (of which she lacks personal knowledge in any event).  Cook Decl., ¶¶ 21-

24  23; Elieff Decl. ¶¶ 13-15; Wyman Decl. ¶¶ 19-21.  As such, there are, at the very least, important

25  disputed factual and credibility issues that require discovery.

26  The Lehman Entities argue that the Settlement Documents "were to be executed and

27  delivered in final form only at the closing of the Settlement Transactions."  Opp. at 20:18-20.  If

28  the Lehman Entities mean to suggest that the parties planned on *re-signing* over 1000 pages of

1   signatures pages after they had *already done so*, what was the point of having all the parties go

2   through the trouble of signing them in the first place?  If the August 25 meeting took place, as

3   Camerik suggests, just to accommodate Bruce Cook, who was about to leave for vacation, *why did*

4   *the Lehman Entities also sign those 1000-plus pages?*  Why not save their signatures until every

5   "i" was dotted, every "t" crossed?  Discovery should provide some clarity on these questions.  But

6   the declarations submitted herewith already provide an answer:  the Lehman Entities' current

7   position has been manufactured for litigation; the parties understood they had a deal.

8        In an effort to avoid the obvious fact that the Settlement Documents were signed, and that

9   such signatures were not a mere superfluous nullity, the Lehman Entities argue that the signature

10  pages to the Settlement Agreement had "several signatures still missing."  Opp. at 21 n.13.  But at

11  the August 25, 2008 meeting, the SunCal parties and the Lehman parties signed *all* of the

12  Settlement Documents presented to them that were required for a closing of the Settlement

13  Transactions on behalf of *all* of the relevant entities, without withholding any signatures thereto.

14  The Lehman Entities admit that they did not produce the signature pages—despite their assurances

15  that they would do so—until formal discovery requests were made during the litigation.  But the

16  Lehman Entities have been less than forthcoming during discovery. [16]  Thus, if the SunCal parties

17  are not in possession of all the signed signature pages, that is most likely due to the Lehman

18  Entities' wrongful withholding of them.  At the very least, the declarations submitted by the

19  SunCal parties establish that if one or two signatures out of a 1000-plus signature pages were

20  missing, it was the result of an oversight, not any intentional withholding of signatures.  Cook

21  Decl. ¶¶ 14-20; Elieff Decl. ¶¶ 6-12; Wyman Decl. ¶¶ 13-18.  Once again, the Lehman Entities'

22  argument is either entirely unavailing, or warrants discovery.

---

[16] As just one example:  in February 2010, the plaintiffs in the adversary proceeding for equitable subordination brought—and won—a motion to compel the Lehman Entities to produce documents in Barclay's possession, on the ground that such documents, if not in defendants' "possession," were nevertheless within their "custody or control."  The Lehman Entities claimed that Barclay possessed all of their documents post-dating LBHI's September 15, 2008 bankruptcy—a time period that would include critical documents regarding the Lehman Entities' assurances that they would perform under the Settlement Agreement, and leading up to their repudiation of that agreement on November 13, 2008.  The Lehman Entities had apparently not even begun to search through such documents by the time the equitable subordination proceeding was stayed several months later, and have never produced those documents to this day.

1       The Lehman Entities will no doubt focus on the fact that the Restructuring Agreement

2 refers to the obligation not only to "execute" but to "deliver and enter into" the Settlement

3 Documents.  But as discussed, the SunCal Parties understood (and the Lehman Entities appeared

4 to agree) that execution was the significant act, and delivery was merely ministerial.  Cook Decl.

5 ¶¶ 12, 18, 20, 23; Elieff Decl. ¶¶ 4, 10, 12, 15-16; Wyman Decl. ¶¶ 11, 13, 17-18, 21-24.  More

6 importantly, once all parties were present at the August 25 meeting and executed the signature

7 pages, the SunCal Parties understood (and the Lehman Entities appeared to as well) that the

8 documents *were delivered*.  Although the Weil attorneys took the signature pages with them at the

9 end of the meeting, it was understood that this was for the purpose of making and distributing

10 copies to the parties in short order, not to prevent the effectuation of a deal that had otherwise been

11 agreed to.   Wyman Decl. ¶¶ 11, 22-25; Cook Decl. ¶ 23.  Under the Lehman Entities' view, it

12 appears the SunCal Parties, for their part, *never could have* "delivered" the Settlement Agreement

13 and Settlement Documents (because the Lehman Entities' attorneys were in possession of them),

14 and so never could have performed.  Again, this absurd reading of the contract must be rejected.

15       The parties thus dispute both the significance of the term "delivery" term in their

16 agreement,[17] and what constitutes effective "delivery."   In *Birch v. McNall*, 244 N.Y.S.2d 60,

17 (1963), the trial court granted summary judgment to the defendant on plaintiff's breach of contract

18 claim, based on lack of delivery. The appellate court reversed, noting that the contention in an

19 affidavit of the defendant's agent that "defendant executed the contract as a matter of

20 convenience" was contradicted by plaintiff's testimony. *Id.* at 61.  The court held:  "A binding

21 contract…may be made without a physical delivery of the instrument evidencing the contract.

22 *Whether certain acts, words, and circumstances constitute a delivery of an agreement is a*

23 *question of intent*." *Id.* at 60 (quotation omitted) (emphasis added).

24       Further bolstering the conclusion that the parties intended to be bound is the fact that on

25 August 28, 2008—three days after the Settlement Documents were signed—the SunCal Parties

26 consented to a foreclosure by Lehman ALI's designee, LV Pacific Point LLC, of the Pacific Point

27

28      [17] There is also an apparent ambiguity, or at least disagreement, as to what the contractual term "enter into" means separate and apart from "execution and delivery."

1 project. Cook Decl., ¶¶ 26-28. Under the terms of the Settlement Agreement, consent to the

2 foreclosure was consideration for the promise to assume millions in Pacific Point payables and

3 bond obligations. The SunCal Parties performed their part of the agreement, but never got the

4 benefit of their bargain. *R.G. Group*, 751 F.2d at 75-76 ("[A] factor of major significance is

5 whether one party has partially performed, and that performance has been accepted by the party

6 disclaiming the contract. Aside from unilateral contracts, partial performance is an unmistakable

7 signal that one party believes there is a contract; and the party who accepts performance signals,

8 by that act, that it also understands a contract to be in effect.").

9     In other words, a "closing" of the Settlement Agreement would have meant conveyance of

10 the properties to the applicable Lehman parties. As to Pacific Point, *the property was actually*

11 *conveyed.* This was not merely *partial* performance, but *full* performance from the SunCal

12 Parties' side. Although the Lehman Entities do not even attempt to address the Pacific Point issue

13 in their Opposition,[18] under their view, the SunCal parties were apparently just chumps for

14 consenting to the Pacific Point foreclosure. That is simply not a position that a court of equity

15 should countenance—nor need it do so under the law.

16     Finally, the Lehman Entities argue there is no evidence that the closing conditions were

17 satisfied prior to September 30, 2008. But as of September 2, 2008, all Required Consents as to at

18 least nine of the subject properties had been obtained—more than enough to commence an "Initial

19 Closing" pursuant to Section 2(a) of the Restructuring Agreement. *See* Cook Decl. ¶¶ 29-35. And

20 Required Consents for the other properties could have been obtained but for the Lehman Entities'

21 failure to pursue them in good faith—which they were contractually obligated to do. *See* Cook

22 Decl. ¶¶ 36-7; Restructuring Agreement Section 2(a) ("After the Initial Closing, the Parties shall

23 use commercially reasonable efforts to obtain all Required Consents with respect to each of the

24 Subsequent Conveyance Properties…."). And notwithstanding the Lehman parties' non-

25 cooperation at least since early September 2008, prior to September 30, 2008, Required Consents

26 for all but three of the properties had been obtained. Cook Decl. ¶¶ 36-39 & Exh. 1.

27     [18] The Lehman Entities also do not respond to let alone refute the contention that, if the Settlement
28 Agreement was valid, the sale of certain of the subject loans to Fenway three days before signing of the
Settlement Agreement purporting to restructure those loans was a breach of that agreement.

86122.4
000762

1    Because the Closing Conditions were satisfied, the Lehman Entities' obligations to execute

2    and deliver the Settlement Agreement and related documents became "unconditional and

3    irrevocable."  Restructuring Agreement § 1(b).  And any argument that the Closing Conditions

4    were not satisfied still would not justify the Lehman Entities' non-performance, because such

5    failure would be due to the Lehman Entities' failure to pursue them in good faith.  *Id.* § 1(d)(i).

6    **VI**

7    **LBHI'S CHAPTER 11 FILING IS IRRELEVANT**

8    **TO THE LEHMAN ENTITIES' BREACHES**

9    The Lehman Entities argue that once the parent Lehman entity, LBHI, filed for bankruptcy

10   on September 15, 2008, it was "legally impossible for the conditions to closing under the

11   Restructuring Agreement to be satisfied" because LBHI could not execute and deliver the

12   Settlement Agreement.  Opp. at 22:19-20.  This is a red herring, and a stale one at that.

13   LBHI had no payment obligations, nor *any* obligations under the Restructuring Agreement

14   or Settlement Agreement *other than*, as one of the "Lehman Parties," to "execute, deliver and

15   enter into" the agreements.  And prior to filing for bankruptcy, LBHI (along with the other

16   Lehman Parties) *did* execute the Settlement Agreement and all related Settlement Documents.

17   Thus, LBHI already did everything it needed to do pre-petition.  To the extent that the

18   obligation to "deliver" added anything, it was merely a ministerial act.  Moreover, it was one

19   which Lehman ALI was fully able to (and obligated to) perform:  as the Lehman Entities point

20   out, the signature pages were produced in response to document requests propounded on *them*—

21   not LBHI.  Since Lehman ALI had possession of them, there was no "delivery" for LBHI to

22   effectuate that Lehman ALI could not have performed independently.[19]  And as discussed above,

23   ―――――――――――――――

24   [19] The Lehman Entities also argue that Section 1(b)(vi) of the Restructuring Agreement provides that LBHI's bankruptcy excused performance.  Under that section, one of the Closing Conditions is that:

25   No governmental authority or court of competent jurisdiction shall have issued an order,
     decree or ruling or taken any other action materially restraining, enjoining or otherwise
26   prohibiting any of the Settlement Transactions or any of the other transactions
     contemplated by the other Settlement Documents, it being agreed that the Parties shall
27   reasonably cooperate with one another to contest and/or appeal any such order, decree,
     ruling or other action in good faith.

28   The Lehman Entities' argument fails for several reasons.  First, this clause refers to a court order enjoining the "Settlement Transactions" themselves, not an order enjoining the parties' conduct.  Second, assuming,

1  prior to LBHI's bankruptcy, the conditions precedent to a closing had already occurred, and the

2  SunCal parties were urging that the Lehman parties close as contractually required.  Cook Decl. ¶¶

3  36-37.  The Lehman parties cannot rely on their own wrongful delay in closing as an excuse.

4      It is worth pointing out that when the Lehman Entities sent their letter from Gerald

5  Pietroforte on November 13, 2008, purporting to terminate the Restructuring Agreement and

6  Settlement Agreement, LBHI had already been in bankruptcy for two months.  The agreements

7  were terminated *not* by LBHI, but by Lehman ALI, LCPI (which filed on October 5, 2008), OVC

8  Holdings LLC and Northlake Holdings LLC.  Moreover, the letter mentioned *nothing* about

9  LBHI's bankruptcy excusing performance.  Rather, the *sole reason* cited in that letter was the

10  (erroneous) assertion that an insufficient number of Required Consents had been obtained:

11       [T]he SunCal Parties are required to obtain all Required Consents for a minimum
12       of eight Conveyance Properties that are within the same group of Related
     Conveyance Properties.  It is our understanding that such Required Consents have
13       not been obtained.

14  Cook Decl. ¶¶ 40-45; *see also* Restructuring Agreement § 1(d)(i) (non-satisfaction of Closing

15  Conditions is a "Termination Event," but parties are not permitted to terminate if "the failure of

16  any Closing Conditions shall have been due to such Party's (or Party's Affiliate's) …failure to

17  pursue the satisfaction [of] the Closing Conditions in good faith.").

18  **VII**

19  **THE LEHMAN ENTITIES' CLAIMS CAN BE DISALLOWED BASED**
**ON THE BREACHES OF THE RESTRUCTURING AGREEMENT**

20

21      The Lehman Entities' arguments regarding the Restructuring Agreement are largely a

22  reprise of their arguments regarding the Settlement Agreement, which have been refuted above.

23      First, they argue that because LBHI was bankrupt, none of the Lehman Entities were

24  obligated to "execute, deliver and enter into" the Settlement Agreement—and thus there could be

25  no breach of the Restructuring Agreement for failing to enter the Settlement Agreement.  But as

26  ────────────────────────────────

27  *arguendo*, that this clause refers to a bankruptcy, given that the Lehman Entities apparently contend that the
contract was executory as to LBHI (the SunCal Parties dispute this), they are interpreting the clause as an
*ipso facto* clause, which is invalid in bankruptcy.  *See, e.g.*, 11 U.S.C. 365(e)(1).  Third, the clause provides
28  that the parties shall attempt in good faith to avoid the effect of such order.  There is no evidence that the
Lehman Entities ever attempted to do so—indeed, they concede that they did not.  Opp. at 24:14-16.

86122.4        000764

1  discussed, LBHI *did* execute both the Restructuring Agreement and the Settlement Agreement and

2  Settlement Documents prior to its bankruptcy.  Moreover, contrary to the Lehman Entities'

3  assertion, their execution and delivery of the agreements was not a "Closing Condition"; rather,

4  the satisfaction of the Closing Conditions was a condition to execution, which in fact occurred.

5  Second, the Lehman Entities argue that "[n]either Lehman ALI, nor any other parties to the

6  Restructuring Agreement, would, for example, have standing to bring a motion in the LBHI

7  bankruptcy case to compel LBHI to execute and deliver the Settlement Agreement."  Opp. at

8  24:14-16.  Again, given that LBHI already did what it needed to do pre-petition, this wrongly

9  assumes that such a motion would be necessary.  Moreover, even if such a motion were somehow

10  necessary, why *wouldn't* Lehman ALI have standing?   Even if Section 1(b)(vi) in the

11  Restructuring Agreement (providing that the non-existence of a court order restraining the

12  Settlement Transaction was a "Closing Condition") was applicable, that provision also provides

13  that it is "agreed that the Parties shall reasonably cooperate with one another to contest and/or

14  appeal any such order, decree, ruling or other action in good faith."

15  Third, the Lehman Entities baldly assert without support that neither Section 1(a) nor 1(c)

16  of the Restructuring Agreement was "designed to impose joint and several liability on a party

17  based on an affiliate's refusal or inability to close a transaction."  Opp. at 24:19-21.  Again, setting

18  aside that the SunCal Parties dispute that that is the relevant inquiry—LBHI already did what it

19  needed to do—the plain language of the agreement indicates otherwise.  Section 1(a) provides that

20  upon satisfaction of the Closing Conditions, "each of the Parties will execute, deliver and enter

21  into and *will cause the other … Lehman Parties…and any other Affiliates thereof, as applicable,*

22  *to execute, deliver and enter into*, the Settlement Agreement….." (emphasis added).  What would

23  be the point of providing that a Lehman Party would "cause" the other Lehman Parties or their

24  Affiliates to enter into the agreements, if there was no obligation to do so (or at the very least,

25  make a good faith effort to do so)?

26  Fourth, the Lehman Entities argue that the SunCal Parties were not damaged by Lehman

27  ALI's failure to perform, because it was LBHI's non-performance that caused the damage.  This

28  argument fails for the same reasons discussed above.  It also wrongly assumes that Lehman ALI

-30-

1   must have been the sole cause of damage to be liable.  *See Coastal Power Int'l., Ltd. v.*

2   *Transcont'l Capital Corp*., 10 F.Supp.2d 345, 366 (S.D.N.Y. 1998) ("In the law of contracts, as in

3   torts, causation in fact is established if the defendant's breach of duty was a 'substantial factor' in

4   producing the damage.") (quotation omitted).  This argument also ignores the fact that sufficient

5   required consents for an "Initial Closing" had occurred—and the SunCal Parties were urging the

6   Lehman Entities to proceed to a closing as required—*prior to* LBHI's bankruptcy.

7        Fifth, the Lehman Entities argue that they cannot be liable for breaching their contractual

8   obligation to pay "Urgent Payables," because they were only obligated to pay whatever Urgent

9   Payables they approved, and that whatever such payables they approved, they paid.  As a threshold

10  matter, the fact that a party has discretion does not immunize the party from liability for a breach.

11  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1575 (2d Cir. 1994) ("Even

12  when a contract confers decision-making power on a single party, the resulting discretion is

13  nevertheless subject to an obligation that it be exercised in good faith."); *deCiutiis v. Nynex Corp.*,

14  1996 WL 512150, *3 (S.D.N.Y. Sep. 9, 1996) (the phrase "sole discretion" is "not necessarily the

15  equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable.'") (quoting

16  *Tymshare, Inc. v. Covell,* 727 F.2d 1145, 1154 (D.C.Cir.1984) (Scalia, J.)).

17       Here, the SunCal Parties dispute that "Urgent Payables" are so narrowly confined under

18  the parties' agreement.  Indeed, they are defined in the Restructuring Agreement as

19       Work and other services (including, without limitation, litigation defense costs) that
20       need to be performed of provided with respect to each Property and *any accounts
         payable arising from work previously authorized by Lehman ALI which needs to be
21       paid* with respect to each Property (collectively, the "Urgent Payables").

22  Section 1(h) (emphasis added).  The SunCal Parties dispute that all such Urgent Payables were

23  paid.  Cook Decl. ¶¶ 46-47.  If Lehman ALI acted in bad faith in failing and refusing to "approve"

24  sums that otherwise met the definition of "Urgent Payables," it can be held liable therefor.

25       Indeed, the position the Lehman Entities take in their Opposition is not consistent with

26  Lehman ALI's conduct during the summer of 2008:  Lehman ALI had its payment agent, Radco,

27  undertake to settle and pay many more accounts payable than are reflected in the "Protective

28  Disbursement Agreements" cited by the Lehman Entities.  Yet Lehman ALI left millions of

    dollars of those payables unresolved.  Cook Decl. ¶ 48.  This is yet another disputed issue.

1    Finally, although the Lehman Entities do not argue that they fulfilled their obligation under

2    the Restructuring Agreement to pay management fees, they argue that this obligation was owed to

3    SunCal Management, not the SunCal Debtors, and so a breach of that obligation cannot be a basis

4    for disallowing the Lehman Entities' claims against the SunCal Debtors.  However, the SunCal

5    Debtors were the primary obligors of those management fee obligations, and SunCal Management

6    has filed claims against them therefor.  Accordingly, it is obvious that Lehman ALI's wrongful

7    non-payment of those amounts provides a basis to disallow its claims.

8    **XIII**

9    **RECOUPMENT IS AVAILABLE UNDER THESE FACTS**

10    The Lehman Entities claim that LCPI cannot be liable for breach of the Restructuring

11    Agreement both because it was not a party thereto, and because it lacks the "mutuality" required

12    for set-off.  Both arguments can be summarily dispensed with.  Although LCPI was not a

13    signatory to the Restructuring Agreement, it *was* a signatory to the Settlement Agreement.  And

14    the issue of "mutuality" for setoff against LCPI's claims is irrelevant, since the SunCal Parties are

15    seeking setoff only against claims held by Lehman ALI, not LCPI.

16    The Lehman Entities' contention that the "recoupment" alleged in the Claim Objection is

17    really a "setoff" is erroneous. The Claim Objection makes it crystal clear that recoupment is the

18    applicable relief sought against LCPI.  Recoupment "is the setting up of a demand arising from the

19    *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or

20    reduction of such claim." *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th

21    Cir.1996) (quoting 4 *Collier on Bankruptcy,* ¶ 553.03, at 553–15 (15th ed.1995)) (original

22    emphasis). It involves "netting out debt." *In re Harmon,* 188 B.R. 421, 425 (9th Cir. BAP 1995).

23    This is exactly what the SunCal Parties seek to do here.

24    In defining the parameters of the "transaction," the Ninth Circuit applies the "logical

25    relationship" test. *Sims v. U.S. Dept. of Health and Human Servs. (In re TLC Hosps., Inc.)*, 224

26    F.3d 1008, 1012 (9th Cir.2000).  This test has been described as follows:

27
         A  logical  relationship  exists  when  the  counterclaim  arises  from  the  same
         aggregate set of operative facts as the initial claim, in that the same operative facts
28       serve as the basis of both claims or the aggregate core of facts upon which the
         claim rests activates additional legal rights otherwise dormant in the defendant.

1  *Pinkstaff v. U.S. (In re Pinkstaff),* 974 F.2d 113, 115 (9th Cir.1992). "In applying this standard,

2  "courts have permitted a variety of obligations to be recouped against each other, requiring only

3  that the obligations be sufficiently interconnected so that it would be unjust to insist that one party

4  fulfill its obligation without requiring the same of the other party." *In re Madigan*, 270 B.R. 749,

5  755 (B.A.P. 9th Cir. 2001) (citing 5 *Collier*, at ¶ 553.10[1]).

6        Although the Lehman Entities argue that recoupment must be construed under New York

7  law due to a choice of law provision in their loan agreements, this argument fails for two reasons.

8  First, the cited choice-of-law provision governs only the interpretation of the contract.  It does not

9  govern equitable defenses like recoupment.[20]  Second, the logical relationship test is not based

10  upon the law of any state.  It is test that the Ninth Circuit employs when deciding whether

11  counterclaims are "compulsory" or not under Federal Rule of Civil Procedure 13, and that court

12  has decided that the recoupment should be judged under the same standard.[21]

13        The "logical relationship" between the underlying loan obligations and obligations

14  undertaken in the Restructuring Agreement and Settlement Agreement is undeniable. The latter

15  transactions were entered into to "restructure" the existing lending relationships by, *inter alia*,

16  transferring ownership of the collateral securing these loans to new entities, and by providing a

17  (Lehman) source of funding to pay the vendor claims and bond obligations that were inextricably

18  _____

19     [20] The choice of law provision in the Restructuring Agreement is a narrow one that merely applies New York law to "this Agreement," not to all claims or defenses related to the agreement.  Restructuring

20  Agreement § 8.  *See, e.g., Carideo v. Dell, Inc.,* 706 F.Supp.2d 1122, 1127 (W.D.Wash. 2010) ("Unlike the expansive language of the choice-of-law clauses at issue in [other cases], the language of the present

21  choice-of-law clause is relatively modest in scope and does not overtly state that the clause covers a wide range of claims, disputes, or controversies, including statutory and common law claims."); *E*Trade*

22  *Financial Corp. v. Deutsche Bank AG,*420 F.Supp.2d 273, 290 (S.D.N.Y.,2006) (contract language provided: "'This Agreement shall be governed by, and construed in accordance with, the laws of the State

23  of New York, applicable to contracts executed in and to be performed entirely within that state.' This language is narrow and purposefully does not apply New York law to any actions 'related to' the

24  transaction.").

25     [21] Even if New York law were to apply, whether the facts of this case satisfy the recoupment doctrine is a factual issue that cannot be resolved without discovery and an evidentiary hearing.  *See, e.g., White*

26  *Plains Nursing Home v. Whalen,* N.E.2d 79, 80 (N.Y. 1977) ("The petitioner's objection is that the ultimate determination in this instance is based on an erroneous, or at least disputed, question of fact regarding the

27  nature of the relationship between the petitioner and its landlord….This [] in particular regarding recoupment would affect petitioner's substantial interests so that it would be appropriate to provide a

28  hearing resolve the factual dispute.").  The declarations submitted herewith, at the very least, raise serious questions as to the intended effect and interpretation of the parties' agreements vis-à-vis the loans.

1  tied to this collateral.  In sum, the relationship between the loans, and the Restructuring Agreement

2  and Settlement Agreement, was substantially more than merely "logical."

3       Although the Lehman Entities are welcome to contest the obvious *at the hearing on the*

4  *Claim Objection*, their efforts to persuade this Court to summarily dismiss the objection, and to

5  thereby deny the SunCal Parties any discovery, should be rejected.  In reviewing the Claim

6  Objection at this juncture (along with all the supporting declarations), its contents should be

7  construed in the light most favorable to the SunCal Parties, and all well-pleaded factual allegations

8  should be accepted as true.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Cahill*

9  *v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir.1996). A contest over the facts, should, at

10 a minimum, await the conclusion of a reasonable amount of discovery, and a hearing on the merits.

**IX**

**UNJUST ENRICHMENT, UNCLEAN HAND**

**AND EQUITABLE LIEN CLAIMS APPLY**

14      The Lehman Entities contend that the SunCal Parties' assertion of "unjust enrichment" as a

15 defense fails, because the parties' rights are governed by the terms of an express contract.  This

16 argument is a non-starter.  Although it is true that that unjust enrichment will not lie where the

17 parties rights are clearly governed by the terms of an express contract, *Rodgers v. Roulette*

18 *Records, Inc.,* 677 F.Supp. 731, 740 (S.D.N.Y.1988); *Nixon Gear & Machine Co., Inc. v. Nixon*

19 *Gear Inc.,* 447 N.Y.S.2d 779, 781 (4th Dept.1982), where the existence of a contract is *disputed*,

20 as in this case, unjust enrichment will lie as an alternative count.

21      This exact circumstance was presented in *AML Int'l, Ltd. v. Orion Pictures Corp.,* 1991

22 WL 120323, *3 (S.D.N.Y., Jun. 24, 1991):

> If plaintiff's contract claims fail, plaintiff seeks alternative relief under a theory of
> quasi-contract, or quantum meruit. Defendant argues that the court must dismiss
> plaintiff's quantum meruit claim where it is grounded on the same facts as
> plaintiff's breach of contract claims and seeks the same relief. While defendant is
> correct that plaintiff cannot recover under a theory of unjust enrichment where an
> express contract exists between the parties concerning the same subject matter,
> *where defendant denies a contractual obligation to pay plaintiff commissions,*
> *plaintiff may be able to recover these monies on an unjust enrichment theory. Thus,*
> *plaintiff's claim cannot be summarily dismissed.*

*Id.* (emphasis added; citations omitted). Here, the Lehman Entities cannot insist that no relief can be had under the Settlement Agreement because it was allegedly never consummated, while concurrently denying the SunCal Parties relief under the equitable doctrine of unjust enrichment.

The Lehman Entities' contention that an equitable lien is unavailable is also in error:

> An equitable lien is the right, not recognized at law, to have a fund or specific property, *or its proceeds,* applied to the payment of a debt. It may arise either by express contract or by implication from the conduct and dealings of the parties. It also may be created by a judicial decree. All that is required is (1) the existence of a debt, duty or obligation and (2) the existence of property to which the obligation attaches.

*In re Wells*, 160 B.R. 726, 728-29 (Bankr.N.D.N.Y. 1993) (quotations omitted; original emphasis); *id.* at 729 ("[E]quity will consider as done that which was intended to be done by the parties....").

Here, the parties agreed in the Restructuring Agreement that Lehman ALI would pay the "urgent payables," and would proceed to a closing of the Settlement Agreement, whereby new entities would pay the remaining obligations associated with the Projects being transferred, including the Bond Obligations. Since the vendor and bond claims were not paid, and they were inextricably linked to the Projects being transferred pursuant to the parties' agreement, imposing an equitable lien tying these unpaid claims to the Projects effectuates the parties' intention.

The Lehman Entities' contentions regarding the "unclean hands" defense are equally baseless. "[T]he doctrine of unclean hands requires the defendant to prove that (1) the plaintiff is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the defendant; and (3) the defendant was injured thereby." *Doe v. Deer Mountain Day Camp, Inc.,* 682 F.Supp.2d 324, 339 n. 31 (S.D.N.Y.2010) (citing *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.,* 17 N.Y.2d 12, 15-16 (1966)). In addition, the alleged unconscionable conduct must be related to the subject matter of the litigation. *Mason v. Jamie Music Pub. Co.,* 658 F.Supp.2d 571, 588 (S.D.N.Y.2009); *Stokely-Van Camp, Inc. v. Coca-Cola Co.,* 646 F.Supp.2d 510, 533 (S.D.N.Y.2009) (misconduct must have a "material relation to the equitable relief that plaintiff seeks").

Here, the Lehman Entities entered into two agreements that were intended to restructure the parties' lending and collateral relationship. Tens of millions of dollars of debt were incurred in reliance upon these contracts. Now the Lehman Entities contend, in the case of the Restructuring Agreement, that the contract allowed them unfettered discretion to refuse to pay the obligations,

1    for any reason or no reason, rendering the contract illusory. Yet, they concurrently are insisting

2    that the agreements that were "restructured" by this agreement remain enforceable.  And the

3    Restructuring Agreement was supposed to culminate in the consummation of the Settlement

4    Transactions, whereby the properties would be conveyed.  Although the Lehman Entities signed

5    the Settlement Agreement, and although they actually took title to one of the properties, they deny

6    that the Settlement Agreement exists, and that they have any obligations thereunder.  But any

7    failure of the Settlement Agreement to close is entirely the result of the Lehman Entities' bad faith

8    refusal to pursue closing.  This course of conduct squarely falls within the unclean hands doctrine.

9                                                     **X**

10                        **THE CLAIM OBJECTION DOES NOT HAVE TO BE**

11                        **LITIGATED IN AN ADVERSARY PROCEEDING**

12           The Lehman Entities contend that the Claim Objection of recoupment must be litigated in

13    an adversary proceeding. This is erroneous. As discussed, recoupment is an affirmative defense

14    under both California and New York law.  Pursuant to Federal Rule of Bankruptcy Procedure

15    3007, it can be pursued in the form of a claim objection. As the Court has probably surmised, this

16    argument is part and parcel of the Lehman Entities' bald attempt to drag the Claim Objections

17    within the parameters of LCPI's automatic stay, when in fact it has no bearing.

18                                                    **XI**

19                                              **CONCLUSION**

20           For the foregoing reasons and the reasons stated in the opening brief, the SunCal

21    Parties respectfully request that the Court sustain the Claim Objection.

22    DATED:  June 2, 2011                    **WINTHROP COUCHOT**
                                             **PROFESSIONAL CORPORATION**
23

24                                           By:___/s/  *Paul J. Couchot*_____
25                                                  Paul J. Couchot, Esq.
                                                    Sean Okeefe, Esq.
26                                                  Peter Lianides, Esq.
                                             General Insolvency Counsel for Administratively
27                                           Consolidated Debtors-in-Possession

28    *[SIGNATURES CONTINUED ON NEXT PAGE]*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RUS MILIBAND & SMITH**
**A PROFESSIONAL CORPORATION**

By:  _/s/ *Ronald Rus*_
　　　　Ronald Rus, Esq.
　　　　Joel S. Miliband, Esq.
　　　　Catherine Castaldi, Esq.
Attorneys for SunCal Management, LLC

86122.4

000772

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **REPLY TO OPPOSITION TO AMENDED MOTION AND AMENDED MOTION FOR ORDER DISALLOWING CERTAIN CLAIMS HELD BY LEHMAN ALI INC. AND LEHMAN COMMERCIAL PAPER INC.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 2, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 2, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 2, 2011 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

86122.4

000773

## NEF SERVICE LIST

- Selia M Acevedo     sacevedo@millerbarondess.com, mpritikin@millerbarondess.com
- Joseph M Adams     jadams@sycr.com
- Raymond H Aver     ray@averlaw.com
- James C Bastian     jbastian@shbllp.com
- Thomas Scott Belden     sbelden@kleinlaw.com, ecf@kleinlaw.com
- John A Boyd     fednotice@tclaw.net
- Mark Bradshaw     mbradshaw@shbllp.com
- Gustavo E Bravo     gbravo@smaha.com
- Jeffrey W Broker     jbroker@brokerlaw.biz
- Brendt C Butler     bbutler@mandersonllp.com
- Andrew W Caine     acaine@pszyjw.com
- Carollynn Callari     ccallari@venable.com
- Cathrine M Castaldi     ccastaldi@rusmiliband.com
- Tara Castro Narayanan     tara.narayanan@msrlegal.com, lisa.king@msrlegal.com
- Dan E Chambers     dchambers@jmbm.com
- Shirley Cho     scho@pszjlaw.com
- Vonn Christenson     vrc@paynefears.com
- Brendan P Collins     bpcollins@bhfs.com
- Vincent M Coscino     vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
- Paul J Couchot     pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
- Jonathan S Dabbieri     dabbieri@sullivan.com, hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Ana Damonte     ana.damonte@pillsburylaw.com
- Vanessa S Davila     vsd@amclaw.com
- Melissa Davis     mdavis@shbllp.com
- Daniel Denny     ddenny@gibsondunn.com
- Caroline Djang     crd@jmbm.com
- Donald T Dunning     ddunning@dunningLaw.com
- Meredith R Edelman     meredith.edelman@dlapiper.com
- Joseph A Eisenberg     jae@jmbm.com
- Lei Lei Wang Ekvall     lekvall@wgllp.com
- Richard W Esterkin     resterkin@morganlewis.com
- Marc C Forsythe     kmurphy@goeforlaw.com
- Alan J Friedman     afriedman@irell.com
- Steven M Garber     steve@smgarberlaw.com
- Christian J Gascou     cgascou@gascouhopkins.com
- Barry S Glaser     bglaser@swjlaw.com
- Robert P Goe     kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Eric D Goldberg     egoldberg@stutman.com
- Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Michael J Gomez     mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Kelly C Griffith     bkemail@harrisbeach.com
- Matthew Grimshaw     mgrimshaw@rutan.com
- Kavita Gupta     kgupta@winthropcouchot.com
- Asa S Hami     ahami@morganlewis.com
- Michael J Hauser     michael.hauser@usdoj.gov
- D Edward Hays     ehays@marshackhays.com
- Michael C Heinrichs     mheinrichs@omm.com
- Harry D. Hochman     hhochman@pszjlaw.com, hhochman@pszjlaw.com

- Jonathan M Hoff    jonathan.hoff@cwt.com
- Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
- Michelle Hribar    mhribar@rutan.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Lawrence A Jacobson    laj@cohenandjacobson.com
- Michael J Joyce    mjoyce@crosslaw.com
- Stephen M Judson    sjudson@fablaw.com
- Kaleb L Judy    ecf@kleinlaw.com, kjudy@kleinlaw.com
- Steven J Kahn    skahn@pszyjw.com
- Sheri Kanesaka    sheri.kanesaka@bryancave.com
- David I Katzen    katzen@ksfirm.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Irene L Kiet    ikiet@hkclaw.com
- Claude F Kolm    claude.kolm@acgov.org
- Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
- David B Lally    davidlallylaw@gmail.com
- Leib M Lerner    leib.lerner@alston.com
- Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
- Charles Liu    cliu@winthropcouchot.com
- Kerri A Lyman    klyman@irell.com
- Mariam S Marshall    mmarshall@marshallramoslaw.com
- Robert C Martinez    rmartinez@mclex.com
- Michael D May    mdmayesq@verizon.net
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com, vgunderson@millerbarondess.com
- Louis R Miller    smiller@millerbarondess.com
- Randall P Mroczynski    randym@cookseylaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- Robert Nida    Rnida@castlelawoffice.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Sean A Okeefe    sokeefe@okeefelc.com
- Robert B Orgel    rorgel@pszjlaw.com, rorgel@pszjlaw.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- Penelope Parmes    pparmes@rutan.com
- Ronald B Pierce    ronald.pierce@sdma.com
- Katherine C Piper    kpiper@steptoe.com
- Cassandra J Richey    cmartin@pprlaw.net
- Debra Riley    driley@allenmatkins.com
- James S Riley    tgarza@sierrafunds.com
- Todd C. Ringstad    becky@ringstadlaw.com
- R Grace Rodriguez    ecf@lorgr.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- John P Schafer    jschafer@mandersonllp.com
- John E Schreiber    jschreiber@dl.com
- William D Schuster    bills@allieschuster.org
- Christopher P Simon    csimon@crosslaw.com
- Wendy W Smith    wendy@bindermalter.com
- Steven M Speier    Sspeier@Squarmilner.com, ca85@ecfcbis.com
- Steven M Speier (TR)    Sspeier@asrmanagement.com, ca85@ecfcbis.com

- Michael St James    ecf@stjames-law.com
- Michael K Sugar    msugar@irell.com
- Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;Kenneth.Burgess@bbklaw.com
- David A Tilem    davidtilem@tilemlaw.com, malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;kmishigian@tilemlaw.com
- James E Till    jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Carol G Unruh    cgunruh@sbcglobal.net
- Annie Verdries    verdries@lbbslaw.com
- Jason Wallach    jwallach@gladstonemichel.com
- Joshua D Wayser    , kim.johnson@kattenlaw.com
- Christopher T Williams    ctwilliams@venable.com, jcontreras@venable.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- David M Wiseblood    dwiseblood@seyfarth.com
- Brett K Wiseman    bwiseman@aalaws.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com
- Marc A. Zimmerman    joshuasdaddy@att.net