**BROWN RUDNICK LLP**
Steven B. Levine
Peter J.M. Declercq
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201

*Counsel to the Undersigned Holders of Notes*
*Issued by Lehman Brothers Treasury Company B.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **Lehman Brothers Holdings, Inc.,** *et al.*, | Case No. 08-13555 (JMP) |
|  | (Jointly Administered) |
| Debtors |  |

**OBJECTION OF CERTAIN HOLDERS OF NOTES ISSUED BY
LEHMAN BROTHERS TREASURY COMPANY B.V. AND GUARANTEED BY
LEHMAN BROTHERS HOLDINGS, INC. TO THE MOTION OF THE AD HOC
GROUP OF LEHMAN BROTHERS CREDITORS PURSUANT TO SECTIONS 105(a)
AND 1109(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
<u>2019 AND 7026 TO ESTABLISH DISCLOSURE PROCEDURES</u>**

The undersigned, who are holders (or investment advisors or managers for a fund or other entity which is a beneficial holder) of certain notes (such notes, the "<u>LBT Issued Notes</u>" and the undersigned holders thereof, the "<u>Objectors</u>")[1] issued by Lehman Brothers Treasury Company B.V. ("<u>LBT</u>"), a non-Debtor that is subject to Dutch insolvency proceedings, and guaranteed by Lehman Brothers Holdings, Inc. ("<u>LBHI</u>"), hereby submit this Objection (the "<u>Objection</u>") to the

---

[1] Brown Rudnick LLP represents each of the undersigned Objectors individually (as indicated in their respective signature blocks below) solely in respect of their LBT Issued Notes and not in respect to any other claims the Objectors may hold against the Debtors and their affiliates. Each of the Objectors separately requested that Brown Rudnick LLP represent them in connection with their LBT Issued Notes and related guarantees.

Motion of the Ad Hoc Group of Lehman Brothers Creditors (the "LBHI Ad Hoc Group") pursuant to Sections 105(a) and 1109(b) of the title 11 of chapter 11 of the United States Code (the "Bankruptcy Code") and Rules 2019 and 7026 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to establish disclosure procedures [Dkt. 17014] (the "Motion").  In support of this Objection, the Objectors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. After the Court ruled at the April 13, 2011 omnibus hearing that the LBHI Ad Hoc Group was a "committee" for purposes of Bankruptcy Rule 2019 in light of its consolidated pleadings and actions since the inception of the Debtors' chapter 11 cases and granted the Debtors' motion [Dkt. 15461] (the "Debtors' 2019 Motion") to require it to make disclosures pursuant to Rule 2019, the LBHI Ad Hoc Group filed its own Motion seeking to compel similar (but even broader) disclosure from a wide range of other participants in these cases, including all individual plan proponents or negotiators, all discovery participants and any creditors acting in cooperation or consent with each other.

2. However, as the LBHI Ad Hoc Group freely admits in its Motion, the relief they seek would go far beyond what Rule 2019 requires and compel broad disclosure of holding and trading information from individual institutions and entities or groups which do not constitute a "committee" under even the broadest interpretation of that term.

3. Thus the LBHI Ad Hoc Group asks the Court to invoke other provisions of the Bankruptcy Code and Bankruptcy Rules – namely, Sections 105(a) and 1109(b), and Bankruptcy Rule 7026 – to inappropriately extend the scope of Rule 2019 and compel disclosures which go beyond Rule 2019's requirements from parties that are not otherwise required to make them under Rule 2019.  Neither Rule 2019 nor any of the other authorities they cite authorize the

2

extraordinary relief they request.

4. This is particularly the case in respect to the LBT Ad Hoc Group which is not a "committee" within any meaning of such term under Rule 2019. As discussed further below, the LBT Ad Hoc Group was formed initially by various individual institutions holding LBT Notes who approached Brown Rudnick LLP's London office seeking representation in connection with the Netherlands bankruptcy proceedings of LBT. While the institutions in this group subsequently engaged Brown Rudnick LLP in the U.S. to represent them in connection with the Debtors' U.S. bankruptcy cases, they each have differing claims or interests against various Debtors which they are independently pursuing. In light of the divergent interests and claims of its participants, the LBT Ad Hoc Group has not submitted any consolidated pleading or taken any other collective action in these cases and none of the individual participants in the LBT Ad Hoc Group purport to speak on behalf of other LBT Noteholders – or even each other.

5. Moreover, besides Rule 2019 there is no source of authority in the Bankruptcy Code or Bankruptcy Rules to require disclosure from the broad range of parties listed in the Motion, nor of the following broad types of information requested in the Motion:

- Dates and prices of all trades and not just aggregate notional claims held against specific debtors (this would be particularly onerous and prejudicial to those engaged in the business of buying and selling claims to whom this information is proprietary).
- Claims against non-Debtors including material foreign affiliates.
- Separate Disclosure by all participants in a group on an entity-by-entity basis as opposed to the group's aggregate holdings.
- Inclusion of claims held by all affiliates and unrelated business units broken down on a creditor legal entity basis.

6. Even if the Court were inclined to order disclosure on some basis other than Rule 2019, any legitimate interest of parties in this case to know the economic position of key players in the case would be served if such disclosure were limited to current aggregate notional

3

holdings (with a requirement that such information be updated periodically as necessary to reflect material changes). Moreover, given that any individual entity disclosures could implicate trade secrets or confidential or proprietary information, such information should be treated as highly confidential pursuant to Bankruptcy Code Section 107(b) and the Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues (the "Discovery Protocol") [Dkt. 16003] at B3.

## BACKGROUND OF LBT AD HOC GROUP

7. The LBT Ad Hoc Group consists of institutions or fund entities, each of which directly or indirectly holds or serves as investment advisor or manager of various accounts and, as such, has investment authority, contractual authority or voting authority over certain of the LBT Issued Notes. See *Verified Statement of Brown Rudnick LLP Pursuant to Fed. R. Bankr. P. 2019(a)*, dated August 19, 2010 [Dkt. 10887] (the "Brown Rudnick 2019 Statement") at ¶ 6. Several of the banks and other institutions in the LBT Ad Hoc Group hold various claims against different Debtors in addition to their LBT Issued Note guaranty claims against LBHI and certain of such institutions have engaged other firms as counsel in connection with such other claims or are active participants in other creditor groups.[2] Some of these institutions or funds are separate

---

[2] For example, one participant in the LBT Ad Hoc Group is also a member of the Steering Committee for the LBHI Ad Hoc Group and has already made disclosures in that capacity in response to the Debtors' Motion. See *Verified Statement of the Ad Hoc Group of Lehman Brothers Creditors Pursuant to Bankruptcy Rule 2019* [Dkt. 16222]. As an LBHI Ad Hoc Group Steering Committee member, that institution is prosecuting this Motion to which the undersigned Objectors are objecting and is a proponent of the *Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors* [Dkt. 16315] (the "LBHI Senior Plan"). In addition, other participants in the LBT Ad Hoc Group are proponents of the *Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents* [Dkt. 16229] (the "OpCo Non-Consolidation Plan" and proponents thereof the "OpCo Plan Proponents") and have retained separate counsel to represent them in connection with their claims against the Debtors'

4

profit centers, divisions, subsidiaries or other affiliates, of larger multi-national banks and other institutions and their participation in the LBT Ad Hoc Group is limited to the LBT Issued Notes held by such individual business unit and does not involve their entire institution.

8.  Brown Rudnick began its representation of institutions holding LBT Issued Notes shortly after LBT was placed into Dutch insolvency proceedings in October 2008, when certain institutions approached Brown Rudnick LLP's London office, primarily to represent them in connection with LBT's Dutch insolvency proceedings. Id. at ¶ 8. After several months, the scope of Brown Rudnick's representation expanded to include the Debtors' U.S. bankruptcy proceedings.

9.  Thus far, other than the Brown Rudnick 2019 Statement,[3] no pleading has been submitted on behalf of the LBT Ad Hoc Group as a body. While certain institutions participating in the LBT Ad Hoc Group have submitted or joined in a handful of pleadings, they have done so in their individual capacities and not on behalf of the LBT Ad Hoc Group as a body, and certainly not on behalf of the larger group of holders of LBT Issued Notes.[4] In each

---

operating companies. Upon information and belief, certain of those participants are submitting an objection to the Motion in their capacity as OpCo Plan Proponents. Other participants in the LBT Ad Hoc Group have not expressed support for the OpCo Non-Consolidation Plan, the LBHI Senior Plan or the Debtors' *First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors*.

[3]  Brown Rudnick filed the Brown Rudnick 2019 Statement due to its representation of several different clients in conjunction with these cases (with appropriate waivers and ethical walls) – and not because it viewed Rule 2019 as requiring any of its clients to make disclosure under Rule 2019.

[4]  See, e.g., *Statement of Various LBT Noteholders Regarding the Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (i) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (ii) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, filed by the Ad Hoc Group of Lehman Brothers Creditors* [Dkt. 15671], filed by Brown Rudnick only on behalf of certain funds and accounts managed by Cyrus Capital Partners, LP, Ore Hill Partners LLC (now GLG Ore Hill LLC), Morgan Stanley & Co. Int'l plc, Silver Point Capital LP, and York Capital Management

5

case, other participants in the LBT Ad Hoc Group have elected not to join in such pleadings and, in some cases, have joined in or submitted opposing pleadings. Counsel for the LBT Ad Hoc Group has not yet argued in open court. In short, the LBT Ad Hoc Group has not filed a joint pleading or otherwise acted as a group or a committee in these Debtors' cases. Moreover, each participant in the LBT Ad Hoc Group acts individually and does not, and does not purport to, speak for any other participant – let alone any other holder of LBT Issued Notes.[5]

## ARGUMENT

**I.    Rule 2019 Does Not Require The Disclosures Sought By The LBHI Ad Hoc Group.**

10.    As indicated above, the LBHI Ad Hoc Group has already conceded that Rule 2019 does not provide the basis for compelling the broad level of disclosures they seek in their Motion. See Motion at ¶¶ 24-31. Not only is Rule 2019 inapplicable to the Objectors, but the disclosures the LBHI Ad Hoc Group requests go far beyond those required by Rule 2019.

**A.    Neither The Objectors Nor The LBT Ad Hoc Group Are "Committees Representing More Than One Creditor Or Equity Security Holder".**

11.    Rule 2019 only applies to an "entity or committee representing more than one creditor or equity security holder." Fed. R. Bankr. P. 2019(a). Although courts have differed on the appropriate definition of a "committee" for purposes of Rule 2019, the Objectors do not qualify as a "committee" under any interpretation.

12.    Those courts that interpret Rule 2019 narrowly apply it only to a committee that is "formed by a larger group either by consent, contract or applicable law" and that acts on behalf of that larger group. In re Premier Int'l Holdings, Inc., 423 B.R. 58, 65 (Bankr. D. Del. 2010);

---

Global Advisors, LLC.

[5]    To the contrary, there are several other law firms representing holders of LBT Notes in this case. Dewey & LeBouef represents approximately twelve institutions in their capacity as holders of LBT Issued Notes and, upon information and belief, various other firms represent other holders of LBT Issued Notes.

6

see also In re Phila. Newspapers, LLC, 422 B.R. 553, 562-63 (Bankr. E.D. Pa. 2010). The Objectors certainly do not qualify as a "committee" under this definition, as none of the Objectors have ever purported to represent or act on behalf of anyone other than their own individual institution when taking any actions in these cases.[6]

13.  Even those courts that have interpreted Rule 2019 broadly have never applied it to a loose affiliation of entities that has never appeared as a group in the bankruptcy case. Cf. In re Washington Mut., 419 B.R. 271, 275 (Bankr. D. Del. 2009) (applying Rule 2019 to a committee whose counsel appeared on its behalf at numerous hearings); In re Northwest Airlines Corp., 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (applying Rule 2019 to a committee that filed notice of appearance as a committee, moved for appointment of official shareholders committee, and actively litigated discovery issues in numerous hearings and conferences before the court). Indeed, the plain language of Rule 2019 itself requires disclosure only from an entity or committee that "represents" more than one equity holder or creditor. Fed. R. Bankr. P. 2019(a).[7]

14.  The Debtors apparently had these principles in mind when requesting an order requiring the LBHI Ad Hoc Group to comply with Rule 2019, arguing that the LBHI Ad Hoc Group should be required to make disclosures under Rule 2019 where it had actively participated in these chapter 11 cases in multiple instances as a single entity representing more than one creditor. See Debtors' 2019 Motion at ¶ 3 ("Notwithstanding its denomination as a group, the

---

[6]  To the extent the OpCo Plan Proponents assert they are not a committee for Rule 2019 purposes, because they also do not purport to represent or act on behalf of anyone other than themselves, the Objectors join in such arguments.

[7]  Consistent with this interpretation, the newly-amended version of Rule 2019 ("Amended Rule 2019") recently recommended to Congress for approval by the Supreme Court of the United States, also requires disclosure only from entities or groups that "represent" other creditors, and defines "represent" as meaning "*to take a position before the court* or to solicit votes regarding the confirmation of a plan *on behalf of another*." See April 26, 2011 Order of the Supreme Court of the United States Amending the Federal Rules of Bankruptcy Procedure by including therein amendment to Bankruptcy Rules 2003, 2019, 3001, 4004, and 6003, and new Rules 1004.2 and 3002.1, attached hereto as Exhibit A (emphasis supplied).

7

[LBHI] Ad Hoc Group functions as an entity or a de facto committee that represents more than one creditor.  The [LBHI] Ad Hoc Group has actively participated through White & Case in the chapter 11 cases and a multitude of proceedings in this Court.  The [LBHI] Ad Hoc Group had approved and filed numerous pleadings in these chapter 11 cases.  Indeed, the [LBHI] Ad Hoc Group has proposed and filed a chapter 11 plan for LBHI and certain of its affiliates.").  In requiring the LBHI Ad Hoc Group to make disclosures at the April 13, 2011 hearing, the Court agreed, finding that in light of its having regularly filed consolidated pleadings and appeared in Court on numerous occasions, the LBHI Ad Hoc Group was a "committee" for 2019 purposes.  See Transcript of Hearing held April 13, 2011, at 54:24 - 54:25, 55.2 – 55.3.

15.     In contrast to the LBHI Ad Hoc Group, participants in the LBT Ad Hoc Group have never purported to "represent" anyone at all by any substantive action or deed before the Court.  At no time has the LBT Ad Hoc Group taken a collective position before the court in these Chapter 11 cases or (particularly given that these cases are in the pre-Disclosure Statement phase) solicited votes regarding confirmation of a plan on behalf of another.  Thus, the LBT Ad Hoc Group and the Objectors should not be subject to the excessively broad disclosures requested by the LBHI Ad Hoc Group.

**B.     Rule 2019 Does Not Require The Disclosures Sought In The Motion.**

16.     Even assuming for the sake of argument that participants in the LBT Ad Hoc Group were subject to the requirements of Rule 2019 (which they are not), the majority of the information that the LBHI Ad Hoc Group seeks is information that neither Rule 2019 nor Amended Rule 2019 requires be disclosed.  For instance, the Motions requests that parties be required to disclose:

- All holdings in any Lehman entity, including LBHI's "material" foreign affiliates who are not subject to these Chapter 11 proceedings;

8

- All holdings of affiliates broken down on a creditor legal entity basis;
- The manner in which such holdings are held and how it translates to a party's power to vote;
- The date that a party acquired a post-petition claim in any of the Lehman affiliates and the purchase price paid therefor;
- Agreements – written or oral – governing any group's governing provisions; and
- Any fee-sharing arrangements between any parties whatsoever.

Motion at ¶ 23.

17. This unprecedented request for disclosure is unnecessarily broad and, as even the LBHI Ad Hoc Group admits, goes far beyond the reach of Rule 2019.

18. Although Rule 2019 and Amended Rule 2019 require disclosure of some information from committees or other entities which are subject to it, neither requires <u>any</u> party to disclose the exact date of acquisition or the purchase price paid therefor. <u>See</u> Rule 2019(a)(2) (requiring disclosure of "the *nature and amount of the claim or interest* and the *time* of acquisition thereof") (emphasis supplied); Amended Rule 2019(c) (requiring disclosure of "the nature and *amount of each disclosable economic interest held in relation to the debtor* as of the date of the statement" and "the date of acquisition *by quarter and year* of each disclosable economic interest") (emphasis supplied).[8] For many parties in interest (particularly those who are engaged in the business of buying and selling claims either as a broker or principal) such information is confidential, proprietary and commercially sensitive, and forcing its disclosure is likely to have a chilling effect on creditor participation in Chapter 11 cases. <u>See</u> January 22, 2010 Letter of Thomas E. Lauria Re: Proposed Amendment to Rule 2019 of the Federal Rules of

---

[8] Rule 2019(a)(4) arguably also requires disclosure of information regarding the amount of "claims or interests owned by the entity" representing more than one creditor or equity security holder including, the times when acquired, the amounts paid therefor and any sales or other disposition thereof. However, the prefatory clause to subparagraph (4) limits this disclosure "<u>with reference to the time of the employment of the entity, the organization or formation of the committee</u>, or the appearance in the case of any indenture trustee." Thus, by its express terms, disclosure under subparagraph (a)(4) is limited to the date on which a "committee" is formed.

9

Bankruptcy Procedure (the "Lauria Letter") at 3.[9]

19.   By its terms, nothing in Rule 2019 requires disclosure of claims by affiliates or of claims against non-Debtor affiliates, including foreign affiliates. Nor does Rule 2019 require disclosure of information regarding the power to vote, or about fee sharing agreements and group governance.

20.   Finally, since it applies only to committees, Rule 2019 cannot be used to compel the type of broad disclosure the Motion seeks from individual institutions who are acting alone and not part of any committee.

21.   Moreover, the disclosures sought by the LBHI Ad Hoc Group would go well beyond the holdings of a specific individual business unit or "desk" that is a participant within an informal group, and would require disclosure of such information at an *institutional* level (including all affiliates), even where the specific "desk" or individual business unit participating in a "committee" has no authority to take actions on behalf of the larger institutional entity.

22.   By using Rule 2019 to force numerous individual institutions (including those not on "committees") to disclose commercially sensitive and proprietary, or completely irrelevant, information – such as the purchase prices and dates of all trades in which a broker/dealer was involved in any capacity, or the holdings of such broker/dealer (and their affiliates) in foreign affiliates of Lehman, regardless of their relevance in these cases – the LBHI Ad Hoc Group's Motion is seeking to chill participation in these chapter 11 cases. Accordingly, the Objectors respectfully request that the Court reject such tactics and deny the LBHI Ad Hoc Group's Motion.

---

[9]   A true and accurate copy of the Lauria Letter is attached hereto as Exhibit B. Mr. Lauria is a member of the law firm White & Case, which represents the LBHI Ad Hoc Group.

**II.     None of the Other Provisions of the Bankruptcy Code or Rules Cited Compel These Disclosures.**

23.    Recognizing that much of the relief they are requesting is not authorized under any conceivable reading of Rule 2019, the LBHI Ad Hoc Group attempts to ground their requests in three other provisions of the Bankruptcy Code and Rules – § 1109(b), Rule 7026(a) and § 105 – all to no avail.

**A.    Section 1109(b)**

24.    First, through its proposal that the Court "probe the basis" for certain parties' standing, the Ad Hoc Group would have this Court curb the "broad right [granted] to all parties in interest to participate in the case" that the Second Circuit has historically recognized and condition participation in these cases upon making the disclosures they seek. In re Quigley, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008). Traditionally, courts have found that, within the context of chapter 11, the doctrine of standing provides "that *anyone* holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of *any issue* that may ultimately shape the disposition of his or her interest." In re Ionosphere Clubs, Inc., 208 B.R. 812, 814 (S.D.N.Y. 1997) (emphasis supplied) (citations omitted). As recently as May, 2011, the Second Circuit Court of Appeals has recognized that, although most "parties in interest typically have a financial stake in the outcome of the litigation," the doctrine of standing will, in some instances, extend to "a party with a legal (as opposed to financial) interest." Teligent, Inc. v. K&L Gates LLP (In re Teligent, Inc.), Nos. 10-2257-bk (L), 10-2411-bk (XAP), 2011 WL 1678401, at *7 (2d Cir. May 5, 2011).

25.    Even if the Court chose to indulge the LBHI Ad Hoc Group's patent efforts to chill participation in these cases and examine each party's purported standing—an exercise which it need not undertake—the Court should find that each of the Objectors has standing in

11

these cases. Because each of the Objectors has filed proofs of claim, they each have a "direct financial stake in the outcome of the case" and have standing to appear. See G.I. Indus., Inc. v. Benedor Corp. (In re G.I. Indus., Inc.), 204 F.3d 1276, 1280 (9th Cir. 2000) (noting that "the filing of a proof of claim confers standing" upon a party).

### B.     Bankruptcy Rule 7026

26.     Second, the LBHI Ad Hoc Group's attempt to gather information through Rule 7026 is a transparent and impermissible "fishing expedition."

27.     Within the context of an adversary or contested matter, a litigant may seek to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Bankr. P. 7026(b)(1).    Here, although the LBHI Ad Hoc Group asserts that Rule 7026 applies to "all of the contested matters around the plans," see Motion at ¶ 30, they cannot meet their burden of establishing that the requested disclosures are relevant to any claim or defense in such plan-related contested matters. See Fed. R. Bankr. P. 7026(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense . . . [and] the court may order discovery of any matter relevant to the subject matter involved in the action.") (emphasis supplied); In re Musicland Holdings. Corp. v. Best Buy Co. (In re Musicland Holdings Corp.), 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) (party seeking discovery bears the burden of "explain[ing] how or why the [discovery] would be relevant to [its] claims") (citations omitted). Although the LBHI Ad Hoc Group does not explicitly identify the relevance of the information they seek to the plan-related contested matters, they appear to base their requests (such as for the purchase date and purchase price of holdings acquired post-petition) upon a purported "need[ ] to know who is standing at the podium before it." See Motion at ¶ 21.

28.     Even accepting the LBHI Ad Hoc Group's implicit argument that such

information is relevant to the claims or defenses in that contested matter, the LBHI Ad Hoc Group's requested disclosures are far broader than is necessary to answer that question. In particular, the LBHI Ad Hoc Group's requests for "the date of purchase and the price paid" of all holdings acquired post-petition[10] (including holdings of affiliates and unrelated business units) and for documents concerning internal governance and fee sharing of entities working together are wholly irrelevant to the LBHI Ad Hoc Group's purported purpose of explaining to the Court what the economic interest is of parties coming before it. Disclosure of aggregate notional holdings of claims against various Debtors would serve this purpose.[11] That purchase prices paid and dates acquired are not relevant is demonstrated by the fact that, after receiving extensive testimony, the drafters of Amended Rule 2019 chose not to require disclosure of this type of information, instead requiring those one subject to the rule to disclose only aggregate notional holdings of the subject committee.

29. Finally, to the extent the LBHI Ad Hoc Group, through its Motion, seeks to compel information from entities who are not, nor have ever been, parties to a contested matter

---

[10] The price a party paid for a bankruptcy claim is generally irrelevant to that party's ability to enforce the claim in full. See In re Executive Office Ctrs., Inc., 96 B.R. 642, 649 (Bankr. W.D. La. 1988) (stating purchaser of bankruptcy claim succeeds to rights of seller regardless of discounted purchase price); see also In re Enron Corp., 379 B.R. 425, 436 (S.D.N.Y. 2007) (noting that "characteristics that inhere in a claim may travel with the claim regardless of the mode of transfer"); In re Snyder, 436 B.R. 81, 90 (Bankr. C.D. Ill. 2010) ("As a general rule, the purchases of a claim against a debtor in bankruptcy steps into the shoes of the claim seller, enjoying the same benefits, but suffering the same limitations of the claim, as a successor in interest to the seller's position.")

[11] For example, in In re Washington Mutual, Inc., although the Court concluded that a group of noteholders were required to make disclosures under Rule 2019, see In re Washington Mut., Inc., 419 B.R. 271, 275 (Bankr. D. Del. 2009), the group subsequently made disclosures only with respect to the identity of creditors, aggregate group holdings, type of claims held, and purchase price range for claims. See In re Washington Mutual, Inc., No. 08-12229 (MFW) (Bankr. D. Del.), *Verified Amended Statement of White & Case LLP Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*, [Dkt. 3635], dated May 4, 2010. The Court later indicated that it would "allow to stand" those disclosures. See Transcript of Hearing held May 19, 2010, In re Washington Mutual, Inc., No. 08-12229 (MFW) (Bankr. D. Del.) [Dkt. 4108] at 46:19 - 47:14

13

in the bankruptcy and have not elected to become discovery participants under the Discovery Protocol adopted by this Court , its request exceeds the scope of Rule 7026. First, such an entity is not "standing at the podium" and the LBHI Ad Hoc Group's justification for requesting disclosures falls away. Furthermore, a higher standard applies when discovery is sought from a non-party. See Wertheim Schroder & Co. v. Avon Prods., Inc., No. 91-CV-2287 (PKL), 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995) (noting that "weight should be given to nonparty status in assessing the burden of compliance") (citations omitted).

30. The LBHI Ad Hoc Group's focus on not only plan proponents and participants in the Discovery Protocol, but also on any entities acting in concert is thus beyond the scope of Rule 7026 because the broad information requests sought by the proposed disclosure procedures fail to give weight to the non-party status of the Objectors or even consider the burden imposed by those requests. Moreover, the Rule 7026 request as to Objectors who are plan proponents and participants in the Discovery Protocol is nonsensical and impermissible, as it is duplicative in nature to the Debtors' discovery requests to which such Objectors are already subject to pursuant to the Discovery Protocol. See Fed. R. Bankr. P. 7026(b)(2)(C)(i) (providing that court "must limit" the disclosure requests where the information requested "is unreasonably cumulative or duplicative. . . ."). The Discovery Protocol already requires that all participants in the discovery process disclose either a list of all proof(s) of claim filed either individually or by group, or a statement setting forth the type and aggregate amount(s) of any claims held by a "Participant" against the Debtors. Discovery Protocol at ¶ 2(a).

C. **Section 105(a)**

31. Third, The LBHI Ad Hoc Group contends that Section 105(a) fills in any gaps in the Court's authority and permits the Court to order disclosures that are not required elsewhere in the Bankruptcy Code. However, an exercise of Section 105 power must be tied to another

14

Bankruptcy Code section and not merely to a general bankruptcy concept or objective. See In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000) (citations and internal quotations omitted) (cautioning that Bankruptcy Code Section 105(a) "has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code") (citations omitted); see also 2 Collier on Bankruptcy ¶ 105.01[1] (16th ed. rev. 2010). The LBHI Ad Hoc Group cannot, as it attempts to do through the Motion, create remedies out of whole cloth by simply relying on the general equitable powers of Bankruptcy Code Section 105(a).

32. The LBHI Ad Hoc Group also points to the Court's equitable power to remedy an "abuse of process," arguing that certain parties have committed an abuse of process by conforming to Rule 2019 in a way that the LBHI Ad Hoc Group believes subverts its purpose. This is wholly inappropriate. Courts have employed the "abuse of process" provision of Bankruptcy Code Section 105(a) to impose sanctions on litigants who willfully mislead the Bankruptcy Court, file frivolous petitions to interpose delay on creditors, or deliberately fail to comply with court ordered scheduling. See Globo Comunicacoes e Participacoes S.A. v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.), 317 B.R. 235, 247 (S.D.N.Y. 2004) (collecting cases) (holding that, where a litigant's conduct is "not patently fraudulent, dilatory or duplicative, where there is no indication that the [conduct] is clearly prohibited by the Bankruptcy Code, and where other provisions of the Code and other acknowledged doctrines anticipate and provide more particular guidelines for adjudicating [the] issues . . . the intended purpose of Section 105(a)'s abuse of process provision would not be served" by the Court exercising its equitable powers).

33. The situation is a far cry from that in In re Eagle-Picher Indus., Inc., 169 B.R. 135 (Bankr. S.D. Ohio 1994), cited by the LBHI Ad Hoc Group. In Eagle-Picher, the Official

15

Creditors' Committee, without justification or explanation and after continuing to cause significant delays to the bankruptcy process, initiated 100 contested matters objecting to 100 seemingly random proofs of claim. Id. at 137. Here, where the Objectors' conduct is authorized by the Bankruptcy Code and is not intended to mislead the Court or frustrate the bankruptcy process, the Ad Hoc Group cannot seriously contend that the Objectors' conduct will result in an "abuse of process."

### B. If Disclosure is Required, the Scope Of Disclosures Should Be Limited.

34. To ensure the "uniform disclosure procedures" advocated by the LBHI Ad Hoc Group, the Court only needs to require disclosure of notional holdings against specific debtors from participants in the LBT Ad Hoc Group on an aggregate basis, without the requirement of further trading information or claims against non-Debtor affiliates or the disclosing parties' affiliates or unrelated business units. See supra at ¶¶ 16-22, 26-30. This type of disclosure would let the Court and parties in interest know where a group's or individual entities' economic interest lies. Information about purchase price and acquisition date is wholly irrelevant.[12]

35. To the extent that the Court does require disclosure of holdings and trading information, it should use its power under Bankruptcy Code § 107(b) and take appropriate steps to ensure that such information is treated as confidential and proprietary such as permitting it to be designated as "confidential" or "highly confidential" pursuant to the Discovery Protocol. Pursuant to Section 107(b)(1) of the Bankruptcy Code, a court must, upon request of a party in interest, "protect an entity with respect to a trade secret or confidential research, development, or

---

[12] Although the LBHI Ad Hoc Group does not appear to be requesting *historical* holdings information, to the extent they make such request it should be denied. Historical holdings information would be onerous to obtain and meaningless since the position of a holder may have turned over many times with none of the original holdings remaining. It would also require the disclosure of confidential and proprietary information about specific trades, which would go to the core strategy of institutions engaged in the business of trading claims.

16

commercial information." 11 U.S.C. § 107(b)(1). Similarly, Bankruptcy Rule 9018 provides that "the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . ." Fed. R. Bankr. P. 9018(1). Together, these provisions work "to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003). Indeed, when the Debtors established (and the Court approved) the Discovery Protocol, they required all Participants receiving confidential information to sign a Protective Order, the terms of which were drafted in accordance with Sections 105(a) and 107(b) and Rule 9018, "to protect the confidentiality of sensitive information." Discovery Protocol, at B1. Here, the requested disclosures regarding specific trades would put the disclosing parties at a competitive disadvantage, and in some circumstances would require the disclosure of confidential information. In particular, date and price information may in some circumstances be linked to a particular trade and disclosure could implicate confidentiality obligations owed to the trade counterparty and reveal proprietary trading strategies and data. The LBHI Ad Hoc Group proposes no protections for parties' sensitive, non-public commercial information and their Motion should fail for this reason alone.

# CONCLUSION

For the foregoing reasons, the Objectors respectfully request that (i) the LBHI Ad Hoc Group's Motion be denied; or (ii) in the event that disclosure is required, it be limited to the parties' notional holdings against Debtors on an aggregate basis, subject to confidentiality protections.

Dated:   June 8, 2011
         New York, New York

Respectfully submitted,

***Certain funds and accounts managed by*** **:**

**AURELIUS CAPITAL MANAGEMENT**
**THE DISTRESSED DEBT TRADING DESK OF**
   **CITIGROUP GLOBAL MARKETS INC.**
**CYRUS CAPITAL PARTNERS LP**
**GLG ORE HILL LLC**
**MONARCH ALTERNATIVE CAPITAL LP**
**SILVERPOINT CAPITAL LP**
**TPG OPPORTUNITY FUND I, LP**
**TPG OPPORTUNITY FUND III, LP**
**VÄRDE PARTNERS, INC.**
**YORK CAPITAL MANAGEMENT**

**By their Attorneys,**

**BROWN RUDNICK LLP**

By: /s/ Steven B. Levine
Steven B. Levine
Peter J.M. Declercq
One Financial Center
Boston, MA 02111
(617) 856-8200
(617) 856-8201 (fax)

*Counsel to the Identified Holders of Notes Issued By Lehman Brothers Treasury Company B.V.*

# 1833349