Hearing Date and Time: June 15, 2011 at 10 a.m. (Eastern Daylight Time)

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
551 Fifth Avenue, 18th Floor
New York, NY 10176
(212) 986-6000
Matthew J. Gold

Counsel for Elliott Management Corp.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11 Case
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                     :    No. 08-13555 (JMP)
                                                             :
                Debtors.                                     :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

# OPPOSITION OF ELLIOTT MANAGEMENT CORP. TO MOTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS PURSUANT TO SECTIONS 105(a) AND 1109(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2019 AND 7026 TO ESTABLISH DISCLOSURE PROCEDURES

Elliott Management Corp. ("Elliott")[1], through its undersigned counsel, hereby opposes the Motion of the Ad Hoc Group of Lehman Brothers Creditors Pursuant to Sections 105(a) and 1109(b) of the Bankruptcy Code and Bankruptcy Rules 2019 and 7026 to Establish Disclosure Procedures, dated May 23, 2011 (Docket No. 17014) and respectfully states as follows:

1. The Ad Hoc Group's Motion proposes a wholesale redrafting of Bankruptcy Rule 2019, as well as changing the rules of the Lehman plan discovery procedures that were approved

---

[1] Elliott is a member of the Official Committee of Unsecured Creditors (the "Committee"). Elliott has, with the Bankruptcy Court's approval, established a "a screening wall" between Elliott personnel who are engaged in Committee activities and Elliott personnel who are not engaged in Committee activities and who have remained able to trade securities and claims ("Non-Committee Personnel") [see Docket Nos. 7407 & 7690]. This Opposition is filed through Non-Committee Personnel, solely in Elliott's individual capacity, and not in Elliott's capacity as a member of the Committee.

by this Court and negotiated over many months. The Motion will require countless creditors to undertake Rule 2019-type disclosures of confidential information as the price of admission for taking discovery and otherwise participating in these cases, even though the creditors' participation will have nothing to do with either the text or the purpose of Rule 2019.

2.  Although the Ad Hoc Group promotes "fundamental fairness and transparency," the Ad Hoc Group's Motion will achieve neither. Rather, it is an effort by one group of creditors (and plan proponents) in the Lehman capital structure to discourage participation by other creditors, imposing upon them obligations that no Court has ever required in any reported decision.

3.  Elliott is not unsympathetic to the Ad Hoc Group's belief that it may have been "singled out" for Rule 2019 disclosure. But, the Ad Hoc Group placed itself in the position of having to disclose its members' claim holdings and other confidential information by proposing its own plan of reorganization (and thus having to satisfy the "adequate information" requirement of 11 U.S.C. § 1125), and by repeatedly purporting to speak on behalf of other creditors in these cases.[2] These were voluntary choices by the Ad Hoc Group, and the consequence of the Ad Hoc Group's choices is that it was required to make Rule 2019 disclosures. However, just because the Ad Hoc Group chose to put itself into that position does not mean that every other creditor in these cases should be burdened with unwarranted and

---

[2] *See* April 13, 2011 Hearing Transcript at 56:7-14, in which this Court found that "the ad hoc group of Lehman Brothers creditors for the past two years has purported to act not only for itself but as a voice of similarly situated creditors in the case. I further believe that all of the 11 pleadings that have been filed [by the Ad Hoc Group], many of which have been useful to the Court, have been filed purposefully with a view toward influencing the outcome of the bankruptcy case. It's obvious that this group continues to do just that." This finding supported the Court's holding that the Ad Hoc Group was required to comply with Rule 2019.

2

unprecedented disclosure requirements not required by Rule 2019 (in either its current or soon-to-be amended form). The Motion should be denied.

A.  **The Ad Hoc Group Cites No Justification For Changing The Discovery Procedures That This Court Already Has Approved, And That Creditors Have Been Relying Upon And Participating Under.**

4.  The Court hardly needs to be reminded of the incredible time and effort that went into drafting, negotiating, and approving the plan discovery procedures in these cases. As part of that process, concerns were raised as to whether parties who participated in the discovery procedures would be subjected to Rule 2019, including at the April 13, 2011, hearing at which this Court approved the procedures.[3] Those concerns, however, were alleviated by the addition of footnote 3 to the discovery procedures order, which provides that the "Groups" that creditors would join under the discovery procedures were "solely for the purpose of facilitating Plan Discovery as set forth in this Order (and for no other purpose, including, without limitation, for purposes of Bankruptcy Rule 2019)."[4] In other words, creditors did not become subject to Rule 2019 just because they joined a "Group" under the discovery procedures.

5.  In reliance upon footnote 3, creditors (including Elliott) have agreed to participate in the discovery procedures and have joined the various "Groups" created by those procedures.

---

[3] *See* April 13, 2011 Hearing Transcript at 97:14-18 (clarification by Mr. Huebner that "just to be very clear, there is no argument . . . that the unbelievably broad umbrella groups in the discovery order, which are all creditors . . . against LBHI, in any way constitute ad hoc groups under 2019, and that this order now [gives] us eight new monster blocks of 2019 targets"); *id.* at 104:13-18 (clarification by Mr. Despins that Rule 2019 would not apply to a creditor simply because it participated in the discovery procedures Groups).

[4] *See* Order Establishing Schedule And Procedures In Connection With Discovery Related To Plan Confirmation And Other Issues [Docket No. 16003], entered April 14, 2011, at p. A7 n.3.

3

The Ad Hoc Group, however, now wants to change the rules of the game, after parties have committed themselves to the process. This is fundamentally unfair and procedurally improper.

6. The Ad Hoc Group did not appeal the discovery procedures order; nor has it sought reconsideration. If the Ad Hoc Group wishes this Court to reconsider approval of the discovery procedures, it should do so in a procedurally appropriate manner – a motion for relief from the judgment under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60. It is hard to imagine, however, what basis would exist for such relief at this time, nearly two months after the discovery procedures order was entered and parties have acted in reliance upon it. In any event, there is no statute, rule, or decisional case law that would justify imposing Rule 2019-like disclosure requirements merely because individual creditors wish to take discovery in a bankruptcy case.

7. No legitimate basis exists for requiring individual creditors to disclose proprietary information, such as how much they paid for their claims, simply to be able to take discovery of a plan proponent or other party with information that may be relevant to plan confirmation. Such unprecedented relief would impose significant, unwarranted burdens on the statutory right of individual creditors to appear and be heard in a chapter 11 case (11 U.S.C. § 1109(b)) and to object to confirmation of a plan that individual creditors believe not to be in their best interests (11 U.S.C. § 1128(b)).

**B.     The Ad Hoc Group Cites No Justification For Rule 2019-Type Disclosures From Parties "Acting In Cooperation Or Concert With Others Whether Or Not Represented Jointly Or By A Single Law Firm Or Other Advisors."**

8. The Ad Hoc Group seeks to impose upon creditors massive disclosure requirements that are not present in either the *current* Rule 2019, or in the *proposed* Rule 2019, which will go effective this December.

4

9.    Under the current version of Rule 2019, reasonable minds may differ as to the precise level of "cooperation" an ad hoc group or committee must engage in before it becomes subject to Rule 2019. *See In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 65 (Bankr. D. Del. 2010) (holding that "under the plain meaning of the phrase 'a committee representing more than one creditor,' a committee must consist of a group representing the interests of a larger group with that larger group's consent or by operation of law," and disagreeing with *In re Washington Mutual, Inc.*, 419 B.R. 271 (Bankr. D. Del. 2009), and *In re Northwest Airlines Corp.*, 363 B.R. 701 (Bankr. S.D.N.Y. 2007)). New Rule 2019 will help to clarify the requirement, making clear that an ad hoc committee will only need to make disclosures if it "represents" multiple creditors. The term "represents" will be limited to activities that "take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another." *See* Proposed Rule 2019(a)(2) & (b)(1). The Advisory Committee Note to new Rule 2019 further makes clear that the term "represents" "requires active participation in the case or in a proceeding on behalf of another entity — either by taking a position on a matter before the court or by soliciting votes on the confirmation of a plan."

10.    Simply because two creditors may coordinate some of their actions outside of the courtroom does not make them subject to Rule 2019. Regardless of how broadly one might interpret either the current Rule 2019 or the new Rule 2019, **no court has ever held that two creditors become subject to Rule 2019 simply because they "cooperate" with each other or "coordinate" their out-of-court activities in some manner.** Even highly adverse creditors often cooperate with each other in some respects during a chapter 11 case, whether to coordinate discovery, to agree on those matters in which their interests align, or to attempt to work out their differences among themselves or with the debtor. To impose Rule 2019-type disclosure

5

requirements on every creditor who "cooperates" or "coordinates" with another creditor at some point in the case would be to impose such requirements on virtually every creditor in the case, and would chill the entire chapter 11 process as we know it.

11.     The Ad Hoc Group is obviously disappointed that it was required to make Rule 2019 disclosures. But, as noted, the Ad Hoc Group voluntarily filed its own plan, voluntarily filed at least a dozen substantive pleadings in these cases, and voluntarily purported to represent the interests of other creditors in these cases. These actions set the Ad Hoc Group apart from other creditors materially. There is simply no basis to equate the Ad Hoc Group's level of activity and representation in these cases with that of other creditors who have to some lesser degree "cooperated" or "coordinated" their out-of-court efforts..

**C.     Individual Creditors Should Not Be Subjected To Rule 2019 Requirements As The Price Of Admission To Plan Negotiations.**

12.     Participation in plan negotiations are to be encouraged. This is particularly true in a large case such as Lehman, with competing plans and literally thousands of creditors. It is essential that as many parties as possible actively participate in plan negotiations in order to narrow the issues that may have to be litigated in this Court and to reduce the time and cost of achieving a plan with the broadest possible creditor support.

13.     The Ad Hoc Group, however, apparently thinks otherwise. The Ad Hoc Group wants to limit plan negotiations to those creditors who are willing to make full Rule 2019-type disclosures of confidential information, even though no statute or rule requires that.

14.     It may be that, during the course of plan negotiations, creditors may decide to share confidential information with a mediator or other parties, subject to the mediation privilege or other appropriate protections. But that decision should be made in the context of the

6

mediation itself, by agreement of the parties and under the supervision of the mediator, and not long before any mediation even begins. If the Ad Hoc Group does not want to mediate with any party that does not make disclosures to its liking, that is its choice, but that should not preclude other parties from talking to each other on terms they believe are appropriate.

15.    By requiring creditors to disclose confidential information in order to even get a seat at the mediation, the Ad Hoc Group appears to be trying to silence competing constituencies, rather than encouraging a fair and open dialogue in these cases.

16.    It is ironic that after the Ad Hoc Group complained at the April 13 hearing that Rule 2019 was being used as a sword to discourage its participation in the case, the Ad Hoc Group is now attempting to do the same thing with other creditors. As this Court noted on April 13:

> One of the things that I have observed – and I think this is true in virtually every decision involved in 2019 is that the rule has weaponized in the sense that parties use compliance with 2019 as a form of strategic leverage in bankruptcy cases large and small in order to, in effect, put groups or committees in a position of having to disclose information that might be proprietary or that might be embarrassing or that they might prefer to keep private.

April 13, 2011 Hearing Transcript, pages 45:23-46:2. This describes precisely what the Ad Hoc Group is doing now with its Motion.

7

WHEREFORE, Elliott respectfully requests that the Court deny the Ad Hoc Group's Motion, and grant such other relief as is just and proper.

Dated: June 8, 2011

        KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

        By: /s/ Matthew J. Gold
            Matthew J. Gold

        551 Fifth Avenue, 18th Floor
        New York, NY 10176
        (212) 986-6000

        Counsel for Elliott Management Corp.