Hearing Date and Time:  June 15, 2011 at 10:00 a.m.
Objection Date and Time:  June 8, 2010 at 4:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Scott A. Lewis

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone:  (212) 655-6000
Craig M. Price

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO.  08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO DEBTORS' MOTION, PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(A)(1), TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Indenture Trustee

and/or Owner Trustee in connection with various transactions that are subject to avoidance

actions ("*U.S. Bank*" or the "*Trustee*"), by and through its counsel, Chapman and Cutler LLP, to

object to the Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief (the "*Motion*" and the Trustee's objection thereto, the "*Objection*").  In support of the Objection, the Trustee states as follows:[1]

### SUMMARY OF OBJECTIONS

The Trustee objects to the Motion in its entirety because the Debtors have failed to carry their burden of providing proper justification to extend the stay beyond the nine-month extension previously granted pursuant to that *Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Docket No. 12199] (the "*Initial Stay Order*").   A further extension of the stay of the Avoidance Actions should be denied because an extension may adversely affect the rights of the Trustee and other parties to those actions as follows: (a) a case should not be stayed while a substantive and important matter of law is being decided in other proceedings that the Debtors will argue are precedential, as the Trustee has a right to be heard on issues that will affect the Trustee's rights; (b) substantive rights of the trusts and other litigants may be adversely affected by the stay through, *inter alia*, the running of any statute of limitations with regard to claims the trusts and other litigants may have to recover from third parties in connection with any judgment rendered against the trusts; (c) the Trustee may lose defenses because the passage of time increases the difficulty of determining the beneficiaries of any avoidable transfer or avoidable distributions because of the loss of information; (d) the passage of time increases the difficulty of obtaining discovery on the financial condition of the Debtors pre-petition, particularly from third parties; (e) a defendant-class action may be more difficult to define in the context of a stay since

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

it is unclear whether the class will change as notes or certificates change hands; and (f) noteholders or certificateholders that have not received distributions *in more than two years and eight months* for many transactions would be further delayed in receiving distributions of significant amounts that may be due. In the event this Court determines that a further extension of the stay is appropriate, to maintain an even balance between the parties, the Trustee respectfully requests certain changes in the proposed order including that: (i) the stay be granted for a period of no more than three months; (ii) the Court toll all applicable statutes of limitations among the Trustee, the trusts and all applicable certificateholders and noteholders *nunc pro tunc* to the date the stay was originally issued and (iii) the order provide that in circumstances where a trustee has distributed assets from a trust, the Debtors may not seek monetary damages against the trustee.

## ARGUMENT

Before issuing or extending a stay of proceedings, the Court must exercise sound judgment and weigh all parties' interests. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). If a "fair" possibility exists that a stay will cause damage to the non-movant, the applicant must make a clear case of hardship or inequity. *Id.* at 255. The movant has the burden of demonstrating the wisdom and justice of the stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("[t]he proponent of a stay bears the burden of establishing its need"); *John's Insulation, Inc. v. Siska Const. Co., Inc.*, 671 F.Supp. 289, 297 (S.D.N.Y. 1987). Any stay must maintain "an even balance" between the interests at stake. *Landis,* 299 U.S. at 254-55. Finally, to be entitled to an extension of the stay for an additional nine months, the Debtors should be held to a higher standard of proof than what was presented to justify the Initial Stay Order. As described below, the Debtors have failed to demonstrate that an extension of the stay is just or make out a "clear

case" of hardship.   Rather, as described below, the Trustee and other defendants are the litigants that will continue to suffer hardship and inequity from the extension of the stay.

## I.     THE JUSTIFICATIONS ADVANCED BY THE DEBTORS FOR EXTENDING THE STAY ARE INADEQUATE

The merits of a stay are analyzed on a case by case basis.  Factors considered include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests and burdens of the defendants; (3) the interests of the courts; (4) the interests of the persons not party to the litigation; and (5) the public interest." *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *1 (S.D.N.Y. April 19, 2005).  The objective is the avoidance of prejudice, and "[t]he party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Export-Import Bank of the United States v. Hi-Films S.A de C.V.*, 2010 WL 3743826, at *12 (S.D.N.Y. Sept. 24, 2010); *Consol. Edison Co. of N.Y. v. United States*, 30 F.Supp.2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors).[2]

The Motion fails on each account.  The Debtors do not attempt to satisfy the balancing of factors set forth above.  Rather, the Debtors' main argument is that if the stay is further extended, the costs of litigation will be minimized and that an extension allows for "continued efforts towards consensual resolutions." (Motion, at p.8).  However, costs will only be minimized if settlements are actually reached, otherwise costs will rise due to the increased costs of obtaining information and additional challenges in obtaining evidence due to the lapse of time.  The

---

[2]     The first factor is irrelevant when the plaintiff requests a stay.  *LaSala v. Needham & Co., Inc.*, 399 F.Supp.2d 421, 428 (S.D.N.Y. 2005).

continuation of settlement discussions is an empty justification as parties to litigation can always engage in settlement discussions.  In fact, the Trustee has been attempting to resolve issues with the Debtors since the commencement of the case and, possibly, the process would be further along if the Initial Stay Order had not been granted.  The reality of costly and lengthy litigation often serves as a catalyst for a resolution of disputes.  The Debtors have picked the low-hanging fruit at this point in the proceedings and the adversarial system should be allowed to operate as intended to settle the disputes that remain.

Furthermore, a lack of financial resources to litigate multiple suits should not evidence unfair prejudice to the Debtors.  See *Export-Import Bank of the United States*, 2010 WL 3743826 at *13; *Paine, Webber, Jackson & Curtis, Inc., v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980); *Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *3 (E.D.N.Y. March 26, 2009).   All debtors in bankruptcy have limited resources - that cannot be an adequate justification for extending the stay.  In fact, the Debtors' limited resources likely motivate the defendants to await their day in court rather than engage in meaningful settlement negotiations.  Any extension of the stay will increase the costs that all parties, including the Debtors, will potentially incur as fruitless negotiations continue while the defendants await the opportunity to litigate.  The defendants are entitled to their day in court.[3]  Additionally, while litigating claims may be time consuming and expensive, this is not a reason to stay the actions.  As the district court has noted in analyzing justifications for granting a stay, "'[b]urdensome and oppressive' is a shibboleth of little value to this Court."  *Walter v. Conner*, 1985 WL 2522, *1 (S.D.N.Y. September 12, 1985) (finding that stay of discovery may not be granted "without a strong

---

[3]    The reason the Debtors confront so much litigation is that they chose to bring several "test cases" which presented the best opportunity for a favorable ruling, while waiting until several days before the statute of limitations expired to file claims against the Trustee.  The fact that the Debtors face so much litigation at this stage of the case is entirely of their own making and they should not receive continued equitable relief on this basis.

showing of 'good cause'" and that conclusory claims of "inconvenience and expense" do not suffice.)

The Trustee is in possession of a significant amount of funds and investments that would remain in judicial limbo if an extension to the stay is granted. Noteholders or certificateholders in many transactions have not received distributions for more than two years and eight months, and have been denied distributions that may be due if the Debtors' legal position is ultimately determined to be incorrect. The Avoidance Actions need to move forward as expeditiously as possible so that assets may be productively redeployed. As described below, even if the Court overlooks the Debtors' failure to establish the factors required to obtain a stay, the substantial prejudice that the Trustee and other defendants would suffer is sufficient to tip the balance in favor of denying the Debtors' request for an extension.

Finally, while each motion must be evaluated on its own merits, the Debtors attempt to point to two cases where stays were granted in an effort to justify the relief requested. However, neither of the cases involved the sweeping relief previously granted and sought by the Debtors. *cf*. *In re Dephi Corp*., Case No. 05-44481 (RDD), ¶ 8-9 (Bankr. S.D.N.Y. Aug. 16, 2007) [Dkt. No. 9105] (stay terminated automatically upon service of summons and complaint); *In re Enron Corp*., *et. al*., Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. May 5, 2004) [Dkt. No. 18230] (granting "temporary stay" relating to discovery only, not entire case). Rather, the Debtors' failure to identify any case where such a sweeping stay was granted and extended suggests that such extraordinary relief is unwarranted under the circumstances. When set against the backdrop of the prejudice described below that the Trustee and other defendants may suffer, the Motion should be denied.

## II.    THE PREJUDICE TO THE TRUSTEE OUTWEIGHS ANY PURPORTED "JUDICIAL ECONOMY" OR "COST" SAVINGS

The Debtors take a simplistic and overly optimistic view of the lack of prejudice that defendants would suffer as a result of an extension of the stay. The Debtors assert that the defendants will not be prejudiced from the extension of the stay and that the defendants will benefit from the extension because the defendants will not have to expend resources defending the actions. (Motion, at p. 9). However, those assertions are wrong. As described below, the Trustee and noteholders may suffer significant prejudice if the stay is extended, and the delay may provide the Debtors with an inequitable tactical advantage in the litigation.

### A.    The Extension of the Stay Further Prejudices the Trustee's Right to be Heard on Important Issues of Substantive Law

While this Court is vested with discretion to control its docket by staying a case under certain circumstances, such discretion is not unlimited. In this case, the further extension of the stay must be denied because the Trustee cannot be made to continue to standby while its rights and the rights of noteholders and certificateholders are determined in other proceedings:

> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971); *see also Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting that Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (reversing a stay where a pressing need was not shown and noting that district court had "paramount obligation to exercise jurisdiction timely in cases properly before it.") Here, other than the costs associated with litigation that the Debtors commenced, the Motion fails to cite any hardship or inequity that the

Debtors will suffer in being required to go forward.    On the other hand, in addition to the economic harm which noteholders will suffer from a delay in resolution of these proceedings, the Trustee will also be denied an opportunity to present its own arguments to this Court as to the termination provisions at issue in the adversary cases.

    For example, in *In re Lehman Bros. Holdings Inc.*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) ("*Perpetual*") and in *In re Lehman Bros. Holdings Inc.*, 2011 WL 1831779 (Bankr. S.D.N.Y. May 12, 2011) ("*Ballrock*"), this Court made legal determinations with respect to the scope of Sections 365(e)(1), 541(c)(1)(B) and 560 of the Bankruptcy Code.    This Court noted in those holdings that the *ipso facto* provisions of the Code -- sections 365(e)(1) and 541(c)(1)(B) -- prohibit modification of the Debtors' rights by a contract provision conditioned on the commencement of *a case* under the Code and do not limit the definition of "case" to "*by or against the debtor*."    The absence of this limiting language, the Court found, is significant.    The Court determined that under the plain language of these provisions, "of a case under the Code" does not refer to the commencement of a specific case, but rather presumably addresses any case that in some appropriate manner relates to the contracting parties.    In *Perpetual*,   this Court recognized the Court's novel interpretation of these provisions.    422 B.R. at 422.    In addition, this Court made findings in *Perpetual* and *Ballrock* with respect to the scope of the safe harbor provisions of Section 560 of the Bankruptcy Code.    Although these findings came in the context of the facts and circumstances facing the Court in connection with those specific matters, the Court may rely upon the holdings of *Perpetual* and *Ballrock* when deciding the Avoidance Actions.    The Court cited its holdings in *Perpetual* as support for its holdings in *Ballrock*. 2011 WL 1831779, at *4-5.

    As of the date hereof, counterparties in many other transactions, including the Trustee, have not had the opportunity to have a judicial determination made with respect to similar

- 8 -

provisions in their respective agreements. For example, numerous key questions remain, including whether the waterfall provisions are contained in the swap agreement, whether transactions were effectively terminated, the impact of when the Notice of Termination was given and the impact of the Letter, dated November 25, 2008, from Weil, Gotshal & Manges LLP (which demanded that the Trustee and other third parties cease and desist taking actions pursuant to the transaction documents). The full extent of this Court's rulings (and perhaps the scope of appellate rulings) will not be fully explored if these Avoidance Actions are stayed. As noted in *Landis*, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Defendants ought to be able to decide for themselves whether to agree to a stay of proceedings based upon the individual facts and circumstances of their situations. The Court should not extend the stay and give the Debtors a continued advantage over the defendants regarding a matter that should be agreed between the parties. If the extension of the stay does not prejudice the defendants, as the Debtors contend, the parties should be able to agree to tolling agreements and discovery schedules without the Court's assistance.

**B.    Defendants May Lose Critical Rights Against Third Parties if These Cases Remain Stayed and the Extension of the Stay May Impede Discovery of Important Facts**

In this instance, defendants may be prejudiced in at least three different additional ways as a result of the continued delay in the prosecution of these actions.

**1.    Continued Delay in the Avoidance Actions May Make it More Difficult to Track the Recipients of any Allegedly Avoidable Transfers**

It is difficult to determine the beneficial holders of interests in public securities on a current time basis, let alone at earlier times, which the Debtors recognize. See *Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) for an*

*Extension of Deadline for Service of Avoidance Actions to June 30, 2011*, at pp. 9-10 [Docket No. 14487] (arguing in a previous motion that the difficulty in determining the true holder of securities supported an extension of the deadline for service of process for the Avoidance Actions) (the "*Service Deadline Motion*").  Many public securities are not directly held by the beneficial holder, but rather are held by The Depository Trust Company ("*DTC*") through its nominee, Cede & Co.  Cede & Co. maintains lists of those DTC participants that hold certain securities.  Generally, however, these DTC participants are not the beneficial holders; rather, the true beneficial owners may be layers of ownership removed from the participants.  While a trustee may also be the registrar for the securities, its books and records generally only reflect the record holders of the securities, and the record holder is often Cede & Co.  While the Trustee may know the DTC participant through DTC, it relies upon the DTC participant and others down the "ownership" chain to communicate with holders.  The Trustee often only knows the beneficial holders to the extent that the beneficial holders elect to identify themselves to the Trustee.  In order to determine the ultimate recipient of a distribution, therefore, the Trustee must rely upon the records up and down this "ownership chain."  The quality of these records erodes over time, and the continual trading in these securities makes it increasingly difficult to know who held the security during the relevant time period.  As a result, a continued stay on discovery may result in the Trustee being unable to identify the recipient of a given purportedly fraudulent transfer (or verify the Debtors' findings in the discovery that they have been permitted to pursue) and otherwise frustrate the Trustee's and trusts' defenses.  Under these circumstances, the further extension of the stay should be denied.  *Clinton*, 520 U.S. at 707-08 (denying stay where there was a "danger of prejudice resulting from the loss of evidence.")

2.      **Extension of the Stay May Negatively Impact the Claims of Defendants Against Third Parties, Both Legally and In Terms of Collection**

Importantly, some of the defendants in these Avoidance Actions, like the Trustee, are intermediaries, and may not be the ultimate beneficiary of any of the distributions that may determined to be avoidable as fraudulent conveyances, preferences or otherwise.   While it appears that the Debtors are only seeking declaratory relief and not money damages with respect to these intermediaries and the trusts they represent, as is appropriate under cases such as *In re CVEO Corp.,* 327 B.R. 210, 216 (Bankr. D. Del. 2005) (*citing Richardson v. I.R.S.* (*In re Anton Noll, Inc.*), 277 B.R. 875, 879 (1st Cir. BAP 2002)); *Rupp v. Markgraf,* 95 F.3d 936, 942 (10th Cir. 1996), the Trustee is concerned that the Debtors may attempt to hold intermediary trustees, and not merely the beneficiaries, liable, for distributions that were made post-petition in reliance upon what was reasonably believed to be the state of the law with respect to the scope of the *ipso facto* provisions of the Bankruptcy Code and the safe harbors for swap agreements contained in the code.   In the event that the Trustee or other defendants serving as intermediaries are sought to be held liable to the Debtors, the Trustee believes that it and the trusts would have claims against third-party recipients of the distributions.   If any statute of limitations that may be applicable to claims of the Trustee and trusts against third parties runs while the Debtors' potential claims against the defendants remain dormant and/or stayed, the stay and any extension thereof adversely affects the rights of the Trustee and trusts.   Further, time only increases the risk of uncollectability of amounts determined to be due from third parties.   Upon information and belief, some of these beneficiaries are intermediaries that make distributions to their investors.

3.      **A Further Extension of the Stay of the Action and Discovery May Make it More Difficult for Defendants to Obtain Discovery of Relevant Facts in the Hands of Third Parties**

In addition, continued delay in the prosecution of the Avoidance Actions may negatively impact the ability of the defendants to obtain discovery in these proceedings.   More than two

years and eight months has elapsed since the filing of the voluntary petitions initiating these cases.  The determination of solvency, particularly if the determination date significantly precedes the petition dates, is a fact intensive determination.  The availability and accessibility to documents held by third parties and by the Debtors will continue to erode over time, impeding defendants' defenses.

### III.    THE AVOIDANCE ACTIONS SHOULD INSTEAD BE EXPEDITED TO ENABLE INVESTORS TO RECEIVE DISTRIBUTIONS

On and after September 15, 2008, the Trustee began the process of assessing the respective rights and interests of investors under the terms of the Indentures, Trust Agreements and swaps.  In some instances it was determined that the swaps automatically terminated.  In other cases it was determined that the Trustee had the right and the ability to terminate the swap. Some swaps required that a certain percentage of investors provide direction as to whether the swap should be terminated.  Another category required the Issuer to terminate the swap.  When the Debtors gave their November 25, 2008 letter to trustees with respect to their interpretation of the breadth of the automatic stay, the Trustee ceased its activities to terminate swaps, liquidate collateral and/or underlying assets and make distributions to investors.  Further, the Debtors have not made any payments on any swaps since the date of the petitions.  As a result there are a number of investors who have not received distributions of any kind on their investments since prior to September 15, 2008.  An extension of the stay of the Avoidance Actions may only serve to further delay distributions to noteholders.  In addition, an extension of the stay may increase the difficulty in defining and indentifying those investors constituting the defendant class as a result of the deterioration in the quality of records in the hands of third parties.  Determination of class defendants ought to be promptly made.  Delay leaves possible doubt with respect to putative class members.

## IV.    IN THE ALTERNATIVE, ANY ORDER IMPLEMENTING A STAY SHOULD BE AMENDED TO BE MORE FAIR AND EQUITABLE TO THE DEFENDANTS

In the event this Court determines that an extension of the stay of the Avoidance Actions is appropriate, the Trustee respectfully requests that the Order implementing the stay be amended so that:  (i) the stay be granted for a definitive time period of no more than three months; (ii) all applicable statutes of limitations among the Trustee, the trusts and all applicable certificateholders and noteholders be tolled *nunc pro tunc* from the date that the stay was originally issued; and (iii) in circumstances where a trustee has distributed assets prior to receiving the Debtors' letter of November 25, 2008, the Debtors be barred from seeking monetary damages against such trustee.

As noted above, the Trustee is concerned about statutes of limitations that may exist in connection with recovering any distribution from third-party recipients for which the Trustee or trusts are individually subject to judgment in the Avoidance Actions.  Any Order should provide protections for the defendants in connection with any limitations periods, including expressly tolling any limitations periods during the duration of the stay and assuring that there will be no prejudice of any rights, claims or defenses of the Trustee or trusts due to the imposition of a stay in relation to third parties.

Finally, it appears that the Debtors are only seeking declaratory relief against trustees and not monetary relief from them individually.  This is appropriate given that trustees are mere intermediaries in the distributions that were made.  *See e.g., In re CVEO Corp.*, 327 B.R. at 216; *Rupp*, 95 F.3d at 942.  Many of the Trustee's issues can be resolved by simply providing in the Order that the Debtors are barred and prohibited from pursuing trustees in their individual capacities for any distributions made.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, for all of the foregoing reasons, the Trustee respectfully requests that this Court deny the Motion to the extent it seeks a continued stay of the Avoidance Actions; but to the extent this Court decides to extend the stay, condition the stay by: (i) staying the Avoidance Actions for a period of no more than three months; (ii) tolling, *nunc pro tunc* to the date that the stay was originally issued, all applicable statutes of limitations among the Trustee, trusts and all applicable certificateholders and noteholders; and (iii) providing that in circumstances where the Trustee has distributed assets prior to receiving the Debtors' letter of November 25, 2008, the Debtors are barred from seeking monetary damages against the Trustee.

DATED: June 8, 2011

> Respectfully submitted,
>
> U.S. BANK NATIONAL ASSOCIATION, not
>     individually but as Trustee
>
> By: _____/s/ Craig M. Price_____
>                One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
(212) 655-6000