Hearing Date and Time: **June 15, 2011 at 10:00 a.m. (Prevailing EST)**
Objection Date and Time: **June 8, 2011 at 4:00 p.m. (Prevailing EST)**

ISAAC M. PACHULSKI (Cal. State Bar No. 62337),
JEFFREY H. DAVIDSON (Cal. State Bar No. 73980)
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone (310) 228-5600
Facsimile (310) 251-5288

Attorneys for The Baupost Group, L.L.C.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                 :     **Chapter 11 Case No.**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*          :     **08-13555 (JMP)**
                                                      :
                              **Debtors.**            :     **(Jointly Administered)**
------------------------------------------------------------------x

**OBJECTION OF THE BAUPOST GROUP, L.L.C. TO MOTION OF
THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS
TO ESTABLISH DISCLOSURE PROCEDURES [DOCKET NO. 17014]**

TO THE HONORABLE JAMES M. PECK, UNITED STATES BANKRUPTCY JUDGE:

The Baupost Group, L.L.C. ("Baupost"), as the general partner and investment manager for limited partnerships which beneficially own claims against various Debtors, by and through its counsel, Stutman, Treister & Glatt, P.C., hereby objects to the Motion filed by the Ad Hoc Group of Lehman Brothers Creditors (the "Group") to Establish Disclosure Procedures [Docket No. 17014] (the "Motion").[1]

In support of this Objection, Baupost respectfully states as follows:

## I.
## INTRODUCTION

1.      After the Debtors moved to compel the Group to make certain disclosures under Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019"), the Group responded by arguing, in substance, that the Court should dispense with any analysis of Rule 2019 and instead impose broad new requirements of disclosure fabricated by the Group which, by the Group's own admission, would be unprecedented. Thus, the Group's Motion seeks to have the Court compel a variety of parties—whether or not otherwise subject to Rule 2019—to provide broad public disclosure of detailed, confidential information relating to their holdings of claims against the Debtors and certain non-Debtor affiliates that is far beyond anything required under Bankruptcy Rule 2019, from even those parties who *are* subject to that Rule.

2.      There is simply no basis, however, for this Court to enact a "special" rule of disclosure for this case to supplant the "uniform disclosure procedures" (*see* Motion at 10, ¶ 22) prescribed by the Supreme Court under Rule 2019. That Rule addresses the issue of

---

[1]    All capitalized terms not defined herein shall have the meaning ascribed to them in Motion.

*which* parties are required to make public disclosures about the claims they hold and ***what***

***information*** they are required to disclose, and provides no support for the overbroad relief

sought in the Motion. In essence, the Group asks this Court to enact a "special" version of

Rule 2019 for this case, and thereby bypass the rule-making power of the Supreme Court and

Congress under 28 U.S.C. § 2075. There is simply no basis in the law for this request.

       3.      Significantly, moreover, the Supreme Court recently exercised this rule-

making power with respect to disclosure issues of the type that the Group now seeks to raise.

The result, however, was very different from that which the Group seeks to have this Court

impose. Specifically, the Advisory Committee on Bankruptcy Rules of the Federal Judicial

Conference (hereinafter "Rules Advisory Committee") recently completed an extensive, multi-

year consideration of comprehensive amendments to Rule 2019 that specifically addressed the

appropriate scope of mandated creditor disclosure. That process culminated in the

promulgation of an amended Rule 2019 ("Amended Rule 2019") that takes effect this

December. ***Both the entities subject to Amended Rule 2019, and the kind of information that***

***must be disclosed, are far more limited than those proposed by the Group***. Indeed, the Rules

Advisory Committee specifically considered and ***rejected*** proposals, both as to the entities that

should be subject to mandatory public disclosure under the Rule, and as to the type of

disclosure that should be required, like those included in the Motion.

       4.      Thus, there is simply no basis in existing Rule 2019, Amended Rule

2019, or any other provision of the Bankruptcy Code or Rules that justifies the sweeping public

disclosure that the Group seeks to mandate. In a very real sense, the Group seeks to create

broad, new disclosure requirements out of thin air. The Motion should be denied, without

prejudice to the right of any party in interest to seek (i) disclosure from plan proponents under

Section 1125 of the Bankruptcy Code; and (ii) required disclosure under Bankruptcy Rule
2019.

## II.
## BACKGROUND

5.      Commencing on September 15, 2008 and periodically thereafter, the
Debtors commenced voluntary cases under the Bankruptcy Code with this Court.  The Debtors'
chapter 11 cases have been consolidated for procedural purposes only and are being jointly
administered pursuant to Bankruptcy Rule 1015(b).

### A.      The Plan Discovery Motion.

6.      On, March 8, 2011, the Debtors filed the "Motion Pursuant to Section
105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure for
Authorization to Establish and Implement Procedures in Connection with Discovery Related to
Plan Confirmation" [Docket No. 14867] (the "Plan Discovery Motion").  The Plan Discovery
Motion sought to establish certain global discovery procedures with respect to "Plan Issues."

7.      A number of objections were filed to the Plan Discovery Motion, and the
Debtors engaged in "extended negotiations" with multiple parties in interest concerning that
Motion.[2]  Among others, on April 8, 2011, the Group, which had been discussing a plan
discovery protocol with the Debtors for months,[3] filed a "Limited Objection" to the Plan
Discovery Motion [Docket No. 15800] (the "Group Limited Discovery Objection"), in which it

---

[2]     *See* "Notice of Second Amended Proposed Order Establishing a Discovery Protocol and Extension
of Time for Filing of Objections to Proposed Discovery Protocol" [Docket No. 15682].

[3]     In the Group Limited Discovery Objection (as defined in the text), the Group explained that, "[f]or
at least the past ten months, . . . the Ad Hoc Group has been advocating for the establishment of a
comprehensive discovery protocol," and that the Group "has had ongoing discussions with the
Debtors concerning establishing such a protocol since May of last year."  Docket No. 15800, at 2.

objected to the relief requested on two limited grounds.[4] The Group did *not,* however, object

to the level of disclosure required to be made by creditors who elect to participate in plan

discovery, or that any such disclosure should be made public.

        8.      On April 14, 2011, the Court entered an order granting the Plan

Discovery Motion [Docket No. 16003] (the "Plan Discovery Order"). Pursuant to that Order,

any party that seeks to participate in plan-related discovery must submit a Notice of Intent

(which is *not* required to be filed publicly) that contains the following specified disclosures:

> (i) the name and address of the creditor or party in interest (or in
> the case of a group, the names and addresses of each of its
> members) and the name of the law firm(s) and individual
> attorneys representing such creditor or party in interest or group
> of creditors or parties in interest; and (ii) *at the option of the
> Proposed Participant,* either, (A) a list of all proof(s) of claim
> filed either individually or by the group provided there have not
> been any material changes to such proof(s) of claim since their
> filing, or (B) a statement setting forth the types and aggregate
> amount(s) of claim(s) currently held by such Proposed
> Participant as against each of the Debtors.

Plan Discovery Order, at A2 (emphasis added). This disclosure provision was clearly the

subject of comment and consideration, as it was revised on two occasions between the

submission of the original proposed order on the Plan Discovery Motion and the entry of the

Plan Discovery Order in its final form.[5]

---

[4]   First, the Group argued against the Debtors obtaining any "broad protective measures that would
relieve them of any obligation to provide key discovery disclosures." *Id.* at 3. Second, the Group
argued that the procedures being established pursuant to the Plan Discovery Motion "should include
clear deadlines so that discovery can proceed in an efficient manner," in order to avoid unnecessary
delay at cost. *Id.* at 6.

[5]   *See* Notice of Amended Order Establishing Schedule in Connection with Discovery Related to Plan
Confirmation and Other Issues [Docket No. 15539], Exhibit "B" (blackline comparison), at 3;
Notice of Second Amended Proposed Order Establishing a Discovery Protocol, and Extension of
Time for Filing of Objections to Proposed Discovery Protocol [Docket No. 15602], Exhibit "B"
(blackline comparison), at 3.

9.      Importantly, the second revision of the proposed Plan Discovery Order *eliminated* an earlier version's requirement that a Notice of Intent and the related disclosures be filed publicly with the Court, and required only that the Notice of Intent be served on counsel for the Debtors and the Creditors Committee.[6]  The Group did *not* object to this modification. Following the entry of the Plan Discovery Order, a number of parties in interest, including Baupost, submitted their respective Notices of Intent to participate in plan-related discovery to the Debtors and the Creditors Committee, as required under the Plan Discovery Order.  Now, having failed to object to the disclosure provisions of the Plan Discovery Order before that Order was entered, the Group seeks to rewrite those provisions by:  (i) imposing far broader requirements of disclosure on any Participant in the plan discovery process than provided in the Plan Discovery Order; and (ii) requiring that this disclosure be filed with the Court and made public.

**B.      The Debtors' Motion to Compel the Group's Compliance with Rule 2019.**

10.      On March 30, 2011, the Debtors filed a motion to compel the Group to comply with Rule 2019 [Docket No. 15461] (the "Motion to Compel").  In response, the Group for the first time expressed "concerns" about the asserted lack of disclosure by other parties in the case, and suggested "that the Court dispense with any analysis of Rule 2019 and instead simply implement uniform procedures" created by the Group.[7]  The Court, however, focused

---

[6]    *See* Notice of Second Amended Proposed Order Establishing a Discovery Protocol, and Extension of Time for Filing of Objections to Proposed Discovery Protocol [Docket No. 15602], Exhibit "B" (blackline comparison), at 3.

[7]    *See* Limited Objection of the Ad Hoc Group of Lehman Brothers Creditors to Motion of Lehman Brothers Holdings Inc. to Compel the Ad Hoc Group of Lehman Brothers Creditors to Comply with Federal Rule of Bankruptcy Procedure 2019 [Docket No. 15476], at 4.

on the issue before it—*i.e.*, the Group's alleged non-compliance with Rule 2019, and, on April 18, 2011, entered an order granting the Motion to Compel [Docket No. 16107].

### C.    The Motion.

11.    About one month later, the Group filed the present Motion [Docket No. 17014], which seeks to impose mandatory "disclosure procedures" that are far beyond the scope of Rule 2019 and admittedly unprecedented.[8]  Although the Motion complains about non-disclosure or inadequate disclosure on the part of the Non-Consolidation Plan Proponents and certain other specifically identified "groups" and collectives of creditors (*see* Motion at 4-8, ¶¶ 13-17), the Motion does not seek relief solely against specifically named creditors and collectives.  Instead, the Motion seeks to impose new disclosure requirements on all of the following parties in interest, without regard to whether any such party is subject to Rule 2019:

    (a)    any plan proponent;

    (b)    any participant in the plan discovery process;

    (c)    any parties acting in cooperation or concert with others whether or not represented jointly or by a single law firm or other advisors; and

    (d)    any party seeking to participate in any formal plan negotiation process.

---

[8]    The Group acknowledges that it "is not aware of similar disclosure procedures being implemented in any other cases. . ." Motion at 13, ¶ 29.

*Id.* at 10, ¶ 22.  In addition, the Motion seeks to compel the disclosure of information that

significantly exceeds the disclosures required by Rule 2019, even from those parties who *are*

subject to that Rule. [9]

### III.
### ARGUMENT

A.  **Bankruptcy Rule 2019 Already Establishes "Uniform Disclosure Procedures" for All Bankruptcy Cases, Including this One, and Provides No Support for the Motion.**

12.  The Group claims that there is a "pressing need for uniform disclosure

procedures in these cases."  Motion at 8, ¶ 10.  The Supreme Court, however, already

established such "uniform disclosure procedures" in the exercise of its rule-making power

under 28 U.S.C. § 2075[10] when it prescribed Rule 2019—a rule that is rooted in over seven

---

[9]  Specifically, the Group seeks to compel disclosure of all of the following information:

(i)  all holdings including those of affiliates broken down on a creditor legal entity basis and Lehman legal entity basis, including material foreign affiliates;

(ii)  whether holdings are held solely of record or beneficially and how the power to vote such holdings is divided;

(iii)  the nature of the claim, and if such claim is a guarantee claim, the nature of the underlying primary claim and the basis for asserting the guarantee;

(iv)  whether such claim was acquired or accrued prepetition or postpetition and, if such claim was acquired postpetition, the date of purchase and the price paid;

(v)  any agreements regarding the governance of any group of entities working together; and

(vi)  any arrangements or agreements with respect to the sharing of fees and costs among parties.

Motion, at 10-11, ¶ 23.

[10]  18 U.S.C. § 2075 provides that:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

Such rules shall not abridge, enlarge, or modify any substantive right.

The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule.  The rule shall take effect no later than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.

decades of bankruptcy law.[11] No authority supports the Motion's requested disregard of a

Supreme Court-prescribed Bankruptcy Rule directly on point, or the supplanting of that Rule,

in favor of new and far broader disclosure requirements that have no basis in law or precedent.

*See, e.g., In re Paula Saker & Co.*, 37 B.R. 802, 810 (Bankr. S.D.N.Y. 1984) (explaining that

the "statute vests the exclusive power for promulgating rules of bankruptcy in the Supreme

Court and the Congress") (quoting *In re Morrissey*, 717 F.2d 100, 104 (3d Cir. 1983)).

      13.    By its terms, Rule 2019 imposes disclosure requirements only on an

"entity or committee representing more than one creditor or equity security holder . . ." Thus,

Rule 2019 does not require disclosure by an individual creditor, regardless of its level of

participation in the bankruptcy case or "coordination" with other creditors, or the fact that it

decides to "cooperate" with other creditors, unless that individual creditor is a member of a

committee or is part of a group of creditors that appears before the Court, collectively.

Similarly, Rule 2019 does not require disclosure by a party in interest just because it chooses to

participate in plan discovery or plan negotiations, or condition such participation on the public

disclosure of confidential information of the type sought by the Group.

      14.    Although recent case law interpreting Rule 2019 has produced

inconsistent opinions regarding the application of the Rule to particular creditor and

shareholder groups, there has been *no debate* among the courts that the rule is limited to

commonly-represented committees or collections of creditors and equity holders that have

---

[11] The progenitor of Rule 2019 was enacted as part of Chapter X of the former Bankruptcy Act in the 1930's (Bankruptcy Act §§ 210-12, former 11 U.S.C. §§ 610-12), in the aftermath of an SEC study which "centered on perceived abuses by unofficial committees in equity receiverships and other corporate reorganizations." *In re Northwest Airlines Corp.*, 363 B.R. 701, 704 (Bankr. S.D.N.Y. 2007).

acted collectively before a court. *See In re Premier Int'l Holdings, Inc.*, 423 B.R. 58 (Bankr. D. Del.) (describing the relevant inquiry as whether an entity is "a committee representing more than one creditor," and finding Rule 2019 inapplicable to a committee of noteholders because the entity represented only its members, not the interests of a larger group); *In re Philadelphia Newspapers, LLC*, 422 B.R. 553 (Bankr. E.D. Penn. 2010) (following *Premier Int'l* and holding that Rule 2019 had no application to a group of creditors because the group had no identity apart from its members); *see also In re Northwest Airlines Corp.*, 363 B.R. 704 (Bankr. S.D.N.Y. 2007) (explaining that Rule 2019 "requires unofficial committees that play a significant public role in reorganization proceedings and enjoy a level of credibility and influence consonant with group status to file a statement containing certain information"); *In re Washington Mutual, Inc.*, 419 B.R. 271 (Bankr. D. Del. 2009) (Rule 2019 applied to noteholder group that retained joint counsel and appeared in case as a collective). Thus, it is not surprising that the Group ***does not cite to a single case*** in its Motion that even suggests that Rule 2019 applies to the many individual parties from whom the Group seeks to compel disclosure.

15.     Moreover, even where Rule 2019 applies, it does not require the

expansive disclosure sought by the Group.[12]  For example, nothing in Rule 2019 requires a

creditor to disclose (i) the holdings of "affiliates broken down on a creditor or legal entity basis

and Lehman legal entity basis, including material foreign affiliates;" (ii) "where the holdings

are held solely of record or beneficially how a power to vote such holdings is divided;" or

(iii) "if such claim is a guarantee claim, the nature of the underlying primary claim and the

basis for asserting the guarantee." *Compare* Motion at 10-11, ¶ 23, *with* Fed. R. Bankr. P.

2019.  Further, even where Rule 2019 applies, it does not invariably require the disclosure of

detailed purchase price information or date of purchase information (from which purchase

price can be derived).[13]

16.     Conceding the unprecedented nature of what amounts to an attempt to

rewrite Rule 2019 for this case (*see* Motion at 13, ¶ 29), the Group seeks to justify this

---

[12]    Where applicable, Rule 2019 requires the entity subject to the Rule to:

> file a verified statement setting forth (1) the name and address of the creditor or equity security
> holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof
> unless it is alleged to have been acquired more than one year prior to the filing of the petition;
> (3) a recital of the pertinent facts and circumstances in connection with the employment of the
> entity or indenture trustee, and, in the case of a committee, the name or names of the entity or
> entities at whose instance, directly or indirectly, the employment was arranged or the
> committee was organized or agreed to act; and (4) with reference to the time of the
> employment of the entity, the organization or formation of the committee, or the appearance in
> the case of any indenture trustee, the amounts of claims or interests owned by the entity, the
> members of the committee or the indenture trustee, the times when acquired, the amounts paid
> therefor, and any sales or other disposition thereof.

Fed. R. Bankr. P. 2019.

[13]    For example, by its terms, Rule 2019 requires the disclosure of purchase price and specific date of
purchase information only from an "entity" that represents more than one creditor or equity security
holder, or the "members" of a "committee." *See* Fed.R. Bankr. P. 2019(a)(4).  Thus, if a number of
creditors are represented by the same attorney, but do not constitute a "committee," those creditors
are not required to disclose purchase price or specific date of purchase information.  Moreover, even
where specified parties are required to disclose purchase price and time of purchase information,
such disclosure must be made only "with reference to the time of the employment of the entity [or]
the organization or formation of the committee. . ." *See* Bankruptcy Rule 2019(a)(4).

imposition by pointing to "the uniqueness of these cases." Motion at 13, ¶ 29. But there is nothing "unique" about the purported rationale for the Motion, *i.e.*, that parties seeking to participate in the plan process may have different (and, perhaps, conflicting) creditor positions throughout the Lehman "enterprise." *See* Motion at 8-9, ¶¶ 18-21. The phenomenon that "creditors of different debtors in a multi-debtor chapter 11 case have interests contrary to each other . . . is a fact of life in most, if not all, large chapter 11 cases" – as is the fact that creditors may hold claims against multiple debtors with conflicting interests. *In re Adelphia Communications Corp.*, 359 B.R. 54, 57 (Bankr. S.D.N.Y. 2006). There simply is no legal or other basis for replacing Rule 2019 with a new, "special" disclosure rule for this case.

17.     The Group also questions the utility of Rule 2019 as an "effective tool" for disclosure. *See* Motion at 11. If Rule 2019 is not an "effective tool," however, the proper remedy is to seek to have Rule 2019 amended to broaden its scope, and not to ask the Court to rewrite the Rule. *Cf. In re Philadelphia Newspapers, LLC*, 422 B.R. 553, 568 (Bankr. E.D. Penn. 2010) (noting that, although Rule 2019 remains relevant today, courts must exercise caution in applying the rule, "for it is not the role of the courts to act upon and decide policy disputes; ultimately that is the province of the legislature"). Indeed, the Group *had* the opportunity to seek just such a broad expansion of Rule 2019 to make it a more "effective tool." While these chapter 11 cases were pending, the Rules Advisory Committee was considering a complete revamping of Rule 2019 that led to the promulgation of Amended Rule 2019. Notwithstanding the Group's current posturing about "transparency," neither the Group, nor its counsel, took this opportunity to urge the Rules Advisory Committee to expand the scope of Rule 2019 to make it a more "effective tool."

18.    Finally, although there would, in any event, be no basis for the relief sought by the Group, it is particularly inappropriate to change the rules governing creditor disclosure in this case more than two and one-half years after this case was filed. The Group itself was apparently satisfied with the adequacy of Rule 2019 until the Debtors' moved to compel the Group to comply with Rule 2019. There is simply no basis to impose a wholly new regime of disclosure on creditors two and one-half years into this case.

**B.    Amended Rule 2019 Provides no Support for the Motion.**

19.    From reading the Motion, one would have no inkling that, even as Lehman's chapter 11 case was unfolding, the Rules Advisory Committee engaged in a wholesale review of Rule 2019 that led to the promulgation of Amended Rule 2019.[14]  That amendment was intended "to expand the scope of the Rule's coverage and the content of its disclosure requirements." *See* Memorandum from the Standing Committee on Rules of Practice and Procedure, revised June 14, 2010, at 3.[15]  Like current Rule 2019, however, the Amended Rule 2019 provides no support for the Motion. Both the parties that will be subject to the requirements of Amended Rule 2019, and the scope of the required disclosures, will be far more limited than those under the new "rule" that the Group seeks to have this Court enact.

20.    Significantly, the Rules Advisory Committee specifically rejected key elements of the Group's new disclosure construct. First, as originally published by the Rules Advisory Committee, the revised Rule would have authorized the Court to require the

---

[14]    A copy of Amended Rule 2019 is attached hereto as Appendix "A" and can be found at http://www.supremecourt.gov/orders/courtorders/frbk11.pdf.

[15]    This Memorandum was incorporated as Appendix "B" to the final proposed version of Rule 2019 and is available at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/jc09-2010/2010-09-Appendix-B.pdf.   A copy of this Memorandum (without attachments) is attached hereto as Appendix "B".

disclosure of some or all of the information specified in the amended rule by "individual entities that do not represent others," who sought or opposed the granting of relief by the Court. *See* Appendix "B," at 5. Ultimately, however, the Rules Advisory Committee unanimously recommended "the *elimination* of the provision . . . that authorized the Court to require disclosure by an entity that does not represent anyone else." *Id.* at 7.

21.    Second, as originally published, the amended Rule "would have required the disclosure of the date when each discloseable economic interest was acquired (if not more than one year before the petition date) and, if directed by the Court, the amount paid therefore." *Id.* at 3. The objections to these provisions, however, "raised a consistent set of concerns," including that, "The price paid for a claim or interest is generally irrelevant to any issue in a chapter 11 case" and that "Parties in interest engage in the strategic use of the authority to compel the disclosure of this confidential information." *Id.* at 4.[16]

22.    Following "careful consideration," the Rules Advisory Committee unanimously recommended "the *elimination* . . . of the authorization for the court to order the disclosure of the amount paid for a discloseable economic interest" and, "with respect to disclosure of the date of acquisition of a discloseable economic interest, the limitation of the

---

[16]    Other concerns included:

- If this information should ever be relevant, it could be obtained through discovery or pursuant to the court's inherent authority to order its disclosure.

- Pricing information is highly guarded by distressed debt purchasers. Requiring its disclosure will allow competing firms to determine the disclosing party's trading strategy.

- The existence of this requirement, proposed to be made explicitly applicable to *ad hoc* committees, will discourage the formation of such groups and will decrease the purchasing of distressed debt.

- The disclosure of the date of purchase enables other parties to determine the purchase price. Thus the required disclosure in all cases of the date of purchase will result in the acquisition price being revealed, whether or not the court directs its disclosure.

*See* Appendix "B," at 4.

requirement . . . to the quarter and year of acquisition and the restriction of its application to an

unofficial group or committee that claims to represent any entity other than its members." *Id.*

at 7 (emphasis added). Thus, Amended Rule 2019 eliminates any reference to the disclosure of

purchase price information (including the provisions for such disclosure in current Rule 2019)[17]

and imposes disclosure requirements regarding the times of acquisition of claims that are far

more limited than those under the existing Rule. Notwithstanding its sloganeering about

"transparency" (an objective that surely was important to the Rules Advisory Committee ), the

Group has given this Court no reason to reject the results of the Rules Advisory Committee's

deliberations.

> **C.   No Authority Supports the Sweeping Disclosure Sought by the Motion.**

23.     Recognizing that neither existing Rule 2019, nor Amended Rule 2019,

supports the far-reaching relief sought in the Motion, the Group suggests, almost in passing,

three alleged sources of authority under the Bankruptcy Code or Rules on which the Court can

base a decision to create a special version of Rule 2019 for this case. None of the Group's

theories are supported by any applicable authority, however, and the Group has provided

nothing more than one paragraph of unsupported explanation for each one.

> **1.   Bankruptcy Code Section 1109.**

24.     The Group points to Bankruptcy Code Section 1109, which permits any

creditor to "appear and be heard" in a case, as a supposed source of power for the Court to

---

[17]   The approach of the Rules Advisory Committee accords with the long-standing "principle that the price paid for a claim does not affect the amount of the creditor's claim, or the creditor's voting power." *In re Fairfield Executive Assoc.*, 161 B.R. 595, 602 (D.N.J. 1993) (citing *In re Pittsburgh Rys. Co.*, 159 F.2d 630, 632-33 (3d Cir. 1946) ("the prices which security holders pay for the securities in no wise effects the measure of their participation in reorganization or their voting power"); *see also In re Executive Office Centers, Inc.*. 96 B.R. 642, 650 (Bankr. E.D. La. 1988) (collecting cases).

"probe the basis" for any party claiming standing under that provision. *See* Motion at 13, ¶ 29.
However, not only does Section 1109 say nothing about disclosure, but there is nothing in
Section 1109 that makes a creditor's standing contingent on the nature, type or amount of its
claims; the number of debtors against which its claims are held; or any of the other information
sought by the Group. To the contrary, Section 1109 permits a creditor to be heard in a case
*regardless* of the size or nature of the creditor's claim. *See, e.g., In re Martin Paint Stores*, 199
B.R. 258, 264 (Bankr. S.D.N.Y. 1996) ("'Party in interest' is to be interpreted broadly to allow
those parties affected by the chapter 11 case to be heard") (citations omitted); *see also In re
Agway, Inc.*, 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003) (noting "the fact that all creditors are
able to participate through § 1109(b)"). Courts have recognized that, "all [section 1109] means
is that anyone who has a legally protected interest that could be affected by a bankruptcy
proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re
James Wilson Assoc.*, 965 F.2d 160, 169 (7th Cir. 1992) (Posner, J.). Thus, there is simply no
legal basis for limiting the broad standing conferred by Section 1109 by imposing the intrusive
disclosure requirements advocated by the Group on any party seeking to be heard.

### 2.     Bankruptcy Rule 7026.

25.     Without citing any supporting authority, the Group baldly asserts that
the information that it seeks is "clearly discoverable" under Bankruptcy Rule 7026. Motion at
13, ¶ 30. In fact, however, the information that the Group seeks is not generally
"discoverable," let alone "clearly" so. *Cf. In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 75
(Bankr. D. Del. 2010) (where court previously denied a party's discovery request seeking
information that is the subject of Rule 2019, party could not make an "end run" around that
ruling by seeking to compel disclosures under Rule 2019 where the rule was not applicable to

an entity).[18] The Group has not demonstrated any *bona fide* issue before the Court on a

contested matter to which the broad disclosure that the Group seeks to mandate is "sufficiently

relevant" (*see Adelphia*, 359 B.R. at 56) — or, indeed, relevant at all. Indeed, the Group makes

no effort to explain how the plethora of private claims and trading information that it seeks is

"relevant" to any claim or defense asserted in any contested matter before the Court to which

the Group is a party.

26.    In any event, the Motion is not the proper procedure for seeking

discovery under Rule 7026. The Group provides no basis for abandoning the discovery

procedures required by Rule 7026 and 9014 in favor of the clumsy and imprecise approach

taken in the Motion. In fact, there is no reason to believe that the disclosures sought by the

Group would be the proper subjects of discovery in any contested matter to which the Group is

a party. If the Group seeks to attempt to discover the information sought in the Motion via

Bankruptcy Rule 7026, it should do so by seeking discovery in the contested matter to which it

claims the requested information is relevant.

27.    Finally, the Group's suggestion that the Plan Discovery Order can

simply be modified, on a non-consensual and *ex poste facto* basis, to impose broad new

requirements of public disclosure upon participants in the plan discovery process, is baseless.

Nothing in the Plan Discovery Order supports such a result. The Group actively participated in

---

[18]    In very narrow circumstances, the discovery of confidential information regarding distressed debt
investments might be obtained where it has been squarely put at issue and is actually "sufficiently
relevant." *See Adelphia*, 359 B.R. at 56. In *Adelphia*, the Bankruptcy Court noted that it had
previously authorized some such discovery upon a showing of "possibly . . . improper activities,"
and was prepared to authorize discovery to a greater extent only "if one side pressed claims based
on those activities and the other side expressed a desire to show that essentially the same activities
were engaged in by those on the attacking side." *Id.* *Adelphia* highlights the point that the
discovery of confidential debt investments, trading positions and trading practices is the exception,
not the norm.

the process that led to the entry of the Plan Discovery Order, and had ample opportunity to

object to the provision regarding Participant disclosure. Having failed to object to that

provision before the Plan Discovery Order was entered, the Group may not now "relitigat[e]"

issues that were *or could have been raised* in" connection with that motion. *See Duane Reade,*

*Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195-196 (2d Cir. 2010) (emphasis

added). The Group has not demonstrated any change in circumstances since the Plan

Discovery Order was entered that would justify the retroactive modification of that Order to

impose substantial new disclosure requirements on Participants.

### 3.   Bankruptcy Code Section 105.

28.   As a last resort, the Group cites Bankruptcy Code Section 105. In fact,

the Group cites only two cases to support the relief requested in its Motion (*see* Motion at 14, ¶

31 & n. 13), both of which stand for the unremarkable proposition that a bankruptcy court has

flexibility under section 105(a) to fashion orders necessary to carry out the provisions of

Title 11.

29.   Although the language of section 105(a) is broad, however, it is not

without limitation. The Second Circuit Court of Appeals recently reaffirmed its long-standing

holding that "[s]ection 105(a) limits the bankruptcy court's equitable powers, which 'must and

can only be exercised within the confines of the Bankruptcy Code.'" *Solow v. Kalikow (In re*

*Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) (quoting *In re Daily Mart Convenience Stores, Inc.*,

351 F.3d 86, 92 (2d Cir. 2003)). "Section 105 does not authorize the bankruptcy courts to

create substantive rights that are otherwise unavailable under applicable law, or constitute a

roving commission to do equity." *Id.* at 97.

30.   As the Court explained in *Kalikow*:

> the equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This limitation suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective. Further, the Supreme Court has cautioned that because of their very potency, inherent powers must be exercised with restraint and discretion.

*Id.* (citations and quotations omitted).

31.     Moreover, where a Bankruptcy Rule is clear with respect to a certain element of bankruptcy procedure, section 105 does not grant a court authority to override that Rule or expand it beyond its terms. *See, e.g., Omni Mfg. v. Smith (In re Smith)*, 21 F.3d 660, 666 (5th Cir. 1994) (holding that "Bankruptcy courts cannot use their equitable powers created by Section 105(a) to expand the requirements of Rules 3003(c)(3) and 9006(b)(1)"); *see also In re Interlink Home Health Care*, 283 B.R. 429, 436 (Bankr. N.D. Tex. 2002) (refusing to apply section 105 to order a change of venue because Rule 1014(b) governs such changes); *cf. In re Philadelphia Newspapers, LLC*, 422 B.R. 553, 568 (Bankr. E.D. Penn. 2010) (noting that, although Rule 2019 remains relevant today, courts must exercise caution in applying the rule, "for it is not the role of the courts to act upon and decide policy disputes; ultimately that is the province of the legislature"). Thus, Section 105(a) does not provide *carte blanche* authority to enact a special version of Rule 2019 just for this case.

## IV.
## CONCLUSION

32.    For the reasons and based on the authorities presented above, the Motion should be denied, without prejudice to the right of the party in interest to seek (i) disclosure from plan proponents under Section 1125 of the Bankruptcy Code; and (ii) required disclosure under Bankruptcy Rule 2019.

Dated:  June 8, 2011

Respectfully submitted,

STUTMAN, TREISTER & GLATT P.C.

By: */s/ Isaac M. Pachulski*
Isaac M. Pachulski (admitted *pro hac vice*)
Jeffrey H. Davidson, (admitted *pro hac vice*)

1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067
Telephone:  310-228-5600
IPachulski@Stutman.com

Attorneys for The Baupost Group, L.L.C.

# APPENDIX "A"

FEDERAL RULES OF BANKRUPTCY PROCEDURE    3

**Rule 2019.  Disclosure Regarding Creditors and Equity Security Holders in Chapter 9 and Chapter 11 Cases**

(a)  DEFINITIONS.  In this rule the following terms have the meanings indicated:

(1)  "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest.

(2)  "Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another.

(b)  DISCLOSURE BY GROUPS, COMMITTEES, AND ENTITIES.

(1)  In a chapter 9 or 11 case, a verified statement setting forth the information specified in

4    FEDERAL RULES OF BANKRUPTCY PROCEDURE

subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

(2)    Unless the court orders otherwise, an entity is not required to file the verified statement described in paragraph (1) of this subdivision solely because of its status as:

(A)    an indenture trustee;

(B)    an agent for one or more other entities under an agreement for the extension of credit;

(C)    a class action representative; or

(D)    a governmental unit that is not a person.

FEDERAL RULES OF BANKRUPTCY PROCEDURE    5

(c)  INFORMATION  REQUIRED.    The  verified statement shall include:

(1)  the  pertinent  facts  and  circumstances concerning:

(A)  with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or

(B)  with  respect  to  an  entity,  the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2)  if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or committee:

6      FEDERAL RULES OF BANKRUPTCY PROCEDURE

(A)  name and address;

(B)  the   nature   and   amount   of   each
disclosable economic interest held in relation to the debtor
as of the date the entity was employed or the group or
committee was formed; and

(C)  with respect to each member of a group
or committee that claims to represent any entity in
addition to the members of the group or committee, other
than a committee appointed under § 1102 or § 1114 of the
Code, the date of acquisition by quarter and year of each
disclosable economic interest, unless acquired more than
one year before the petition was filed;

(3)  if not disclosed under subdivision (c)(1) or
(c)(2), with respect to each creditor or equity security
holder represented by an entity, group, or committee,
other than a committee appointed under § 1102 or § 1114
of the Code:

FEDERAL RULES OF BANKRUPTCY PROCEDURE    7

(A)  name and address; and

(B)  the   nature   and   amount   of   each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4)  a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.

(d)  SUPPLEMENTAL STATEMENTS.  If any fact disclosed in its most recently filed statement has changed materially, an entity, group, or committee shall file a verified supplemental statement whenever it takes a position before the court or solicits votes on the confirmation of a plan.  The supplemental statement shall set forth the material changes in the facts required by subdivision (c) to be disclosed.

8    FEDERAL RULES OF BANKRUPTCY PROCEDURE

(e)    DETERMINATION OF FAILURE TO COMPLY; SANCTIONS.

(1)    On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

(2)    If the court finds such a failure to comply, it may:

(A)    refuse to permit the entity, group, or committee to be heard or to intervene in the case;

(B)    hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

(C)    grant other appropriate relief.

# APPENDIX "B"

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES
WASHINGTON, D.C. 20544

**Agenda E-19 (Appendix B)**
**Rules**
**September 2010**

LEE H. ROSENTHAL
CHAIR

PETER G. McCABE
SECRETARY

CHAIRS OF ADVISORY COMMITTEES

JEFFREY S. SUTTON
APPELLATE RULES

LAURA TAYLOR SWAIN
BANKRUPTCY RULES

MARK R. KRAVITZ
CIVIL RULES

RICHARD C. TALLMAN
CRIMINAL RULES

ROBERT L. HINKLE
EVIDENCE RULES

## MEMORANDUM

**TO:**     **Honorable Lee H. Rosenthal, Chair**
            **Standing Committee on Rules of Practice and Procedure**

**FROM:**   **Judge Laura Taylor Swain, Chair**
            **Advisory Committee on Bankruptcy Rules**

**RE:**     **Report of the Advisory Committee on Bankruptcy Rules**

**DATE:**   **May 27, 2010 (revised June 14, 2010)**

## I.     Introduction

The Advisory Committee on Bankruptcy Rules met on April 29 and 30, 2010, in New Orleans, Louisiana. Among the matters before the Committee were the proposed amendments and new rules that were published for public comment in August 2009. More than 150 written comments were submitted in response to the publication. The Committee held a hearing in New York City on February 5, 2010. Fifteen witnesses testified on the proposed amendments to two rules and on one proposed new rule. The Committee also conducted a telephonic hearing with one witness on December 22, 2009.

Through a series of telephonic subcommittee meetings and at its New Orleans meeting, the Committee carefully considered all of the comments and testimony it had received and, as is discussed below, it is recommending changes to several of the published rules in response. The

Committee also studied a number of new proposals for amendments to the Bankruptcy Rules and Forms.

The Committee took action on the following matters, which it presents to the Standing Committee with the indicated recommendations:

(a) approval for transmission to the Judicial Conference of published amendments to Rules 2003, 2019, 3001, 4004, 6003, Official Forms 22A, 22B, and 22C, and new Rules 1004.2 and 3002.1;

(b) approval for transmission to the Judicial Conference without publication of amendments to Official Forms 20A and 20B; and

* * * * *

After a discussion of the action items listed above, this report presents information on the following topics: the Committee's continued work on a possible revision of the bankruptcy appellate rules, the status of the Forms Modernization Project, and changes in the Committee's membership.

## II.    Action Items

### A.    Items for Final Approval

*1.    Amendments and New Rules Published for Comment in August 2009.* **The Advisory Committee recommends that the proposed amendments and new rules that are summarized below be approved and forwarded to the Judicial Conference.** The texts of the amended rules and forms and of the new rules are set out in Appendix A.

**Rule 1004.2** is new. Subdivision (a) requires that the entity filing a chapter 15 petition identify in the petition the country in which the debtor has the center of its main interests ("COMI"). It also requires that the filer list each country in which a case involving the debtor is pending. Subdivision (b) sets a deadline for challenging the statement of the debtor's COMI. In response to comments received after initial publication of the proposed rule in August 2008, the Committee changed the deadline in subdivision (b) for filing a motion challenging the COMI designation from "60 days after the notice of the petition has been given" to "no later than seven days before the date set for the hearing on the petition."

No comments were submitted on the proposed rule in response to the August 2009 publication. Only stylistic changes were made after that publication. The Committee voted unanimously to approve it.

**Rule 2003** is amended in subdivision (e) to require the presiding official at a meeting of creditors to file a statement specifying the date and time to which the meeting is adjourned. This

Rules Appendix B 2

Report to Standing Committee                                                    Page 3
Bankruptcy Rules Advisory Committee

requirement will ensure that the record clearly reflects whether the meeting of creditors was concluded or adjourned to another day.

Nine comments were submitted about this proposed amendment. Eight of the comments expressed support for the amended rule as proposed. These comments were submitted by six individual members of the consumer bar, by Bankruptcy Judge Marvin Isgur of the Southern District of Texas, and by David Shaev on behalf of the National Association of Consumer Bankruptcy Attorneys.

The ninth comment was submitted by Deborah A. Butler, Associate Chief Counsel of the IRS, on behalf of the Office of Chief Counsel. She recommended revising the proposed amendment to require the official presiding at the meeting of creditors to specify whether the meeting is being held open pursuant to § 1308(b) to allow a taxpayer additional time to file a tax return, or adjourned for some other purpose. Only if the trustee declared that the meeting was being "held open" under § 1308(b) would the debtor be protected from dismissal or conversion under § 1307(e) for the failure to file a tax return within the time specified by § 1308.

The Committee, by a 9 to 4 vote, approved the amendment to Rule 2003(e) as published, with a clarifying change to the Committee Note. It concluded that holding open a meeting is equivalent to adjourning it to a specific date and that a chapter 13 case should not be subject to conversion or dismissal merely because of the language the trustee uses in adjourning a meeting of creditors.

**Rule 2019** is amended to expand the scope of the rule's coverage and the content of its disclosure requirements. As amended, the rule requires disclosures in chapter 9 and chapter 11 cases by committees, groups, or entities that consist of or represent more than one creditor or equity security holder. The type of financial information that must be disclosed is expanded to extend to all "disclosable economic interests," a term that is broadly defined in subsection (a) to include, not just claims or interests, but all economic rights and interests that could affect the legal and strategic positions that a stakeholder takes in a case. Stylistic and organizational changes are made throughout the rule, resulting in new subdivisions (c), (d), and (e).

Publication of the proposed amendments to this rule attracted much attention. Seven witnesses presented testimony concerning the Rule 2019 amendments at the Committee's hearing in New York on February 5, 2010, and 14 individuals or organizations submitted written comments on the amendments. The major topics addressed by the testimony and comments are discussed below.

*Price and date of acquisition information.* Most of the opposition to the published amendments focused on proposed Rule 2019(c)(2)(B) and (C) and (c)(3)(B) and (C). As published, these provisions would have required the disclosure of the date when each disclosable economic interest was acquired (if not more than one year before the filing of the petition) and, if directed by the court, the amount paid for each disclosable economic interest. These disclosure obligations would have applied to each covered entity, indenture trustee, member of a group or committee, and

Report to Standing Committee                                          Page 4
Bankruptcy Rules Advisory Committee

to each creditor or equity security holder represented by a covered entity, indenture trustee, or committee or group (other than an official committee).

The objectors to these provisions raised a consistent set of concerns:

- The price paid for a claim or interest is generally irrelevant to any issue in a chapter 11 case.
- If this information should ever be relevant, it could be obtained through discovery or pursuant to the court's inherent authority to order its disclosure.
- Pricing information is highly guarded by distressed debt purchasers. Requiring its disclosure will allow competing firms to determine the disclosing party's trading strategy.
- Parties in interest engage in the strategic use of the authority to compel the disclosure of this confidential information.
- The existence of this requirement, proposed to be made explicitly applicable to *ad hoc* committees, will discourage the formation of such groups and will decrease the purchasing of distressed debt.
- The disclosure of the date of purchase enables other parties to determine the purchase price. Thus the required disclosure in all cases of the date of purchase will result in the acquisition price being revealed, whether or not the court directs its disclosure.

Bankruptcy Judge Robert Gerber of the Southern District of New York testified in favor of the published amendments, including the provisions for disclosure of date and price of acquisition. He indicated, however, that a more general disclosure of the time of acquisition and a required showing of relevance of price might be sufficient to serve the rule's purposes.

*Disclosure regarding clients who do not actively participate in the case.* The National Bankruptcy Conference ("NBC") commented that an entity, such as a law firm, should not be made subject to the rule when it represents more than one client with respect to a chapter 11 case but it does not appear in court to seek or oppose the granting of relief on behalf of more than one of those clients. NBC argued that if a client remains passive in the case, there is no reason to require the public disclosure of its holdings merely because it retained a firm that happens to represent one or more other creditors or equity security holders.

*Exclusions from the rule.* Several comments asserted that administrative agents under credit agreements should not be required to disclose information regarding each of the lenders in its syndicated credit facility; others argued further that such agents should be exempted altogether from the rule's coverage. It was argued that these entities are not agents in the traditional sense of that term since the lenders are free to take positions adverse to the agent. Furthermore, it was contended, the lenders themselves are often not acting in concert with each other and so should not be covered by the rule just because there happens to be an administrative agent under the credit agreement.

Somewhat similarly, the argument was made that indenture trustees should not be required to make disclosures regarding every bondholder under the applicable indenture merely because the bonds were issued under an indenture. Another comment stated that the rule should be revised to make clear that it does not cover class action representatives.

*Supplemental statements*. Several comments addressed the proposed requirement in subdivision (d) that supplemental verified statements be filed monthly, setting forth any material changes in the facts disclosed in a previously filed statement. The comments expressed concern that the requirement would be overly burdensome on the parties and the court. Some commentators sought clarification that a supplemental statement would not have to be filed if no changes had occurred. One comment suggested that verified statements be supplemented only when the group, committee, or entity that filed the original statement was seeking to participate in matters before the court. That change, it was argued, would relieve parties no longer active in the case from the continuing obligation to file supplemental statements.

*The enforcement provision of subdivision (e)*. The published draft of amended Rule 2019 proposed mostly organizational and stylistic changes to the existing provisions of Rule 2019(b), which authorize sanctions for the failure to comply with the rule's requirements. Under the revised rule, those provisions are set forth in subdivision (e). Although this part of the rule did not attract attention at the New York hearing, two sets of written comments criticized the breadth of proposed subdivision (e). Like the existing rule, the proposed subdivision would have authorized the court to determine and impose sanctions for violations of applicable law other than Rule 2019. It would also continue to specify certain materials that the court could examine in making its determination.

Both the comment submitted by the Loan Syndications and Trading Association ("LSTA") and the Securities Industry and Financial Markets Association ("SIFMA") and the comment submitted by the Insolvency Law Committee of the Business Law Section of the California State Bar questioned the authority of bankruptcy courts to determine "whether there has been any failure to comply with any other applicable law regulating the activities and personnel of any entity, group, committee, or indenture trustee" and "whether there has been any impropriety in connection with any solicitation." LSTA and SIFMA also argued that the materials that the court can examine in making a determination under this subdivision should be left to the Federal Rules of Evidence.

*Disclosure by entities that are seeking or opposing relief*. As published, Rule 2019(b) would have authorized the court, on motion of a party in interest or on its own motion, to require disclosure of some or all of the information specified in subdivision (c)(2) by an entity that seeks or opposes the granting of relief. This part of the rule would apply to individual entities that do not represent others. While disclosure by such entities would not be routinely required, the provision would authorize the court to order disclosure when knowledge of a party's economic stake in the debtor would assist the court in evaluating the party's arguments.

Report to Standing Committee                                                    Page 6
Bankruptcy Rules Advisory Committee

Two commentators expressed concerns about this part of the proposed rule. The Clearing House Association argued that the addition of the provision was inconsistent with the original purpose of the rule – protection of represented parties; that the information could be obtained by means of discovery or Rule 2004 if relevant; and that the provision would lead to abusive litigation by parties seeking merely to harass opponents. Bankruptcy Judge Michael Lynn of the Northern District of Texas also expressed concern about the likely tactical use of this provision. He suggested that an order for such disclosure by an entity that is not representing others should issue only on the court's own motion, or on motion by the U.S. trustee, the case trustee, or an examiner.

*Repeal of Rule 2019 or adoption of an alternative to its verified statement requirement.* The Committee's consideration of Rule 2019 was prompted by a suggestion of two trade associations that the rule be repealed. After publication of the proposed amendments, however, those organizations no longer advocated repeal. The only commentator who supported repeal of Rule 2019 was attorney Thomas Lauria. In both his testimony and his written comments, he argued that the rule chills participation by *ad hoc* committees in chapter 11 cases, that it is used improperly for tactical purposes by parties, and that its valid purpose can be fulfilled by the use of discovery. Another attorney, Martin Bienenstock, suggested that parties be allowed to satisfy Rule 2019 by filing three certifications rather than the verified statement required by the rule. The certifications would require a party to state the amount of its pre- and postpetition claims against the debtor and whether it held economic interests in the debtor or in an affiliate of the debtor that would increase in value if the debtor's estate decreased in value.

The overwhelming majority of commentators supported a clarified and reinvigorated Rule 2019, even if they opposed specific aspects of the proposed amendments. They favored providing greater transparency in the chapter 11 reorganization process and permitting creditors and equity security holders to have access to information about possible conflicts of interest of those purporting to represent them.

The Committee's careful consideration of all the views expressed in the testimony and comments led it to make several changes to the published rule. In addition to stylistic changes, the Committee unanimously recommends that revised Rule 2019 be approved with the following changes made after publication, all of which are responsive to suggestions made in the comments and testimony and narrow in some respects the provisions of the published rule:

- the addition of a definition of "represent" or "represents" in subdivision (a)(2) that limits the meaning of the terms to taking a position before the court or soliciting votes on a plan, thereby removing entities that are only passively involved in a case from coverage under the rule;
- the addition of a provision in subdivision (b)(1) providing that the covered groups, committees, and entities are those that represent or consist of multiple creditors or equity security holders that act in concert to advance their common interests and are not composed entirely of affiliates or insiders of one another;

- the elimination of the provision in subdivision (b) of the published amendments that authorized the court to require disclosure by an entity that does not represent anyone else;
- the addition of subdivision (b)(2), which excludes certain entities from the rule's disclosure requirements unless the court orders otherwise;
- the elimination from subdivision (c) of the authorization for the court to order the disclosure of the amount paid for a disclosable economic interest;
- with respect to disclosure of the date of acquisition of a disclosable economic interest, the limitation of the requirement in subdivision (c) to the quarter and year of acquisition and the restriction of its application to an unofficial group or committee that claims to represent any entity other than its members;
- revision of subdivision (d) to require the filing of supplemental statements only when a covered entity, group, or committee is taking a position before the court or solicits votes on a plan, and any fact disclosed in its most recently filed statement has changed materially;
- revision of subdivision (e) to limit the scope of this sanctions provision to failures to comply with the provisions of Rule 2019 and to eliminate the enumeration of materials the court may examine in making a determination of noncompliance; and
- the addition of a sentence to the Committee Note stating that the rule does not affect the right to obtain information by means of discovery or as ordered by the court under authority outside the rule.

**Rule 3001** is amended to prescribe in greater detail the supporting information required to accompany certain proofs of claim and, in cases in which the debtor is an individual, the possible consequences of failing to provide the required information. As published, existing subdivision (c) was redesignated as (c)(1), and it included a new provision applicable to a claim based on an open-end or revolving consumer credit agreement. The new clause would have required the proof of claim to be accompanied by the last account statement sent to the debtor prior to the filing of the bankruptcy petition. Based on the testimony and comments that were submitted, the Committee voted to withdraw that proposed provision. In its place, the Committee recommends approval for publication of a new subdivision (c)(3), which is discussed below in section II B of this report.

New subdivision (c)(2) requires additional information to be filed with a proof of claim in a case in which the debtor is an individual. This additional information includes an itemization of interest, fees, expenses, and other charges incurred prior to the petition and included in a claim; a statement of the amount necessary to cure any prepetition default on a claim secured by a security interest in the debtor's property; and, for a claim secured by a security interest in the debtor's principal residence, an escrow account statement as of the petition date if an escrow account has been established. Subdivision (c)(2) also authorizes the imposition of sanctions on a creditor who fails to provide the information required by this subdivision.

Report to Standing Committee                                                                   Page 8
Bankruptcy Rules Advisory Committee

    The Committee received numerous comments and testimony favoring and opposing the published version of Rule 3001(c)(2) – both as applied to credit card and other unsecured claims and as applied to home mortgage claims. They are summarized below.

    *Requirement in subparagraph (A) for itemized statement of interest, fees, expenses, or charges.* Most of the comments concerning this provision related to unsecured claims, particularly those based on credit card debt. Despite the current and longstanding requirement of the proof of claim form that an "itemized statement of interest or charges" be attached if the "claim includes interest or other charges in addition to the principal amount of claim," commentators opposing this proposed rule provision asserted that it is often impossible to break out the components of credit card debt because, depending upon the terms of the applicable credit agreement, unpaid interest and fees may be folded into the principal balance. They further contended that in most bankruptcy cases the debtor has no need for this information. While they acknowledged that mortgage lenders may have a history of including inflated or unnecessary fees and charges in their claims, they argued that this problem does not generally exist with respect to unsecured credit card claims.

    Two comments addressed this requirement as it applies to mortgage claims. Attorney John Cannizzaro suggested that this provision should require more detail. He proposed that the following sentence be added to subparagraph (A): "The itemized statement shall include evidence of the expenditure, the identity of the entity to whom the payment was made and the reason for the expenditure." The other comment was submitted by Judge Marvin Isgur, and it is discussed below in connection with subparagraph (B).

    *Requirement in subparagraph (B) for a statement of the amount necessary to cure any default as of the date of the petition.* Three comments addressed this requirement. The written comment submitted on behalf of the American Bankers Association, the Financial Services Roundtable, and the Mortgage Bankers Association raised two objections to this requirement. First, it noted that in the case of a judgment lien, the cure amount would be the entire indebtedness. Second, it questioned the need for the inclusion of this requirement in the rule since the proof of claim form already requires this information to be provided.

    Another comment on this subparagraph was submitted by Bankruptcy Judge Marvin Isgur of the Southern District of Texas in his written comments. While supporting the purpose behind this provision and subparagraph (A), Judge Isgur questioned the effectiveness of the two provisions in addressing the problems that he has encountered with home mortgage proofs of claim. He said that a full loan history, which provides more detailed information about the assessment of fees, expenses, charges, and the application of payments, is needed. Judge Isgur expressed particular concern that, without the submission of a full loan history, it may not be evident when payments were actually made by the debtor (as opposed to the months for which payments were applied by the mortgagee). He advocated the use of a form similar to the local form that has been adopted by his district.

Report to Standing Committee                                                    Page 9
Bankruptcy Rules Advisory Committee

The National Association of Consumer Bankruptcy Attorneys also urged that a complete loan history be required. It stated that "[w]ithout such documents, a trustee cannot know how much of the amount claimed is for penalties, such as late charges and overbalance fees, that are classified differently in bankruptcy."

*Requirement in subparagraph (C) for an escrow account statement.* Three comments specifically addressed this provision. First, the written comment of the American Bankers Association, the Financial Services Roundtable, and the Mortgage Bankers Association noted that an escrow statement is already required to be provided by local rules in many jurisdictions. The comment expressed the need for a uniform national form to provide this information and suggested that the proposal be withdrawn until such a form is developed.

Second, chapter 13 trustee Debra Miller, on behalf of the National Association of Chapter Thirteen Trustees' Mortgage Liaison Committee, raised concerns about this provision. She explained that some smaller servicers lack the capacity to run an escrow analysis as of a particular date (such as the date of the filing of the petition).

Finally, Judge Isgur, in both his testimony on December 22, 2009, and his written comments, raised a concern about subparagraph (C). He stated that the requirement of an escrow account statement prepared as of the date of the petition and in a form consistent with applicable nonbankruptcy law might conflict with the Fifth Circuit's decision in Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348 (2008). He described that decision as holding that the prepetition arrearage includes all amounts that the home mortgage lender could have demanded be paid into an escrow account prior to the petition date. He was concerned that an escrow account statement prepared according to applicable nonbankruptcy law would result in a smaller prepetition escrow arrearage, which could be cured over the life of the plan, and would lead to a larger postpetition escrow adjustment, which would have to be paid as part of the debtor's ongoing mortgage payments.

*Sanctions under subparagraph (D).* This is the part of proposed Rule 3001(c)(2) that attracted the most attention and opposition. Several of the comments submitted by persons other than members of the consumer bankruptcy bar raised concerns about this provision. The overall theme of these comments was that the proposed sanctions are overly harsh, are inconsistent with the Code, exceed the authority under the Rules Enabling Act, and are attempting to address a problem that has not been shown to exist. The sanctions in proposed Rule 3001(c)(2)(D) can be imposed on all types of claimants in cases of individual debtors, and the comments generally did not distinguish between the impact of the provision on inadequately documented home mortgage proofs of claim and on unsecured or other types of secured claims.

The most detailed critique of this provision was submitted by Professor Bernadette Bollas Genetin of the University of Akron School of Law. She argued that the provision sweeps too broadly and that by requiring the attachment of additional supporting documentation in every case, even when there is no demonstrated need for the information, the proposed amendments to Rule 3001(c),

Rules Appendix B-9

including its sanction provision, would abridge creditors' substantive rights in violation of the Rules
Enabling Act. Viewing the sanction in subparagraph (D) as being tantamount to claim disallowance,
she contended that it is inconsistent with § 502 of the Code, as well as disproportionate to the
violation in most cases.

Representatives Lamar Smith (ranking minority member of the House Judiciary Committee)
and James Langevin of Rhode Island also expressed concerns about the sanctions, focusing primarily
on the impact of the rule on unsecured creditors. Both Congressmen questioned whether there was
evidence of a significant problem of unsupported claims being filed in consumer cases, and Rep.
Smith noted the potential for litigation over compliance and the imposition of new sanctions and
attorney's fees for failure to abide by the requirements. He further questioned the authority to
provide for the disallowance of claims for failure to comply with the requirements of a rule, as
opposed to the grounds for disallowance listed in § 502(b) of the Code.

Likewise, attorney Patti H. Bass contended that subparagraph (D) in effect provides a new
basis for the disallowance of a claim, one that is not authorized by the Code. She argued that the
provision is therefore in conflict with the Supreme Court's decision in Travelers Casualty & Surety
Co. v. Pacific Gas & Electric Co., 549 U.S. 443 (2007), which holds that the grounds for
disallowance are limited to the ones statutorily specified. She further submitted that the sanction
provision would create an incentive for debtors to refrain from scheduling debts that they know they
owe if they believe that the creditor lacks all of the documentation that would be required under the
rule. The debtor would just object to the creditor's insufficiently supported proof of claim, and the
creditor would be prevented by the sanction provision from presenting its proof of the validity of the
claim in response to the objection.

The comment of John McMickle on behalf of the Housing Policy Council, Financial Services
Roundtable, American Bankers Association, and the Mortgage Bankers Association argued that the
sanction provision "runs afoul of the Rules Enabling Act by 'modifying' and 'diminishing' a
mortgage servicer's statutory right to rely on a presumption of validity for timely-filed proofs of
claim." The comment made by Philip Corwin on behalf of several of the same organizations was
similar.

Finally, the Insolvency Law Committee of the Business Law Section of the California State
Bar commented that the proposed sanctions are too harsh. This group suggested that instead of
precluding the creditor from using any omitted information to prove its claim, an insufficiently
supported proof of claim should be temporarily disallowed and the claimant should be given an
opportunity to provide the missing documentation.

On the other side of the issue, numerous comments filed by consumer bankruptcy lawyers
and trustees strongly supported the proposed amendments. They recounted their frustrating
experiences in dealing with bare proofs of claim filed by bulk purchasers of credit card debt. They

Report to Standing Committee                                          Page 11
Bankruptcy Rules Advisory Committee

said that claims often failed to comply with existing documentation requirements and that it was impossible to determine how the claim amounts were calculated. Furthermore, they argued, when additional information was sought, claimants frequently failed to respond until an objection was filed, at which point they either withdrew their claims or belatedly provided information that should have been attached to the proof of claim.

Consumer lawyers also expressed frustration with the failure of mortgage claimants to comply with the existing rule requirements and noted their gratitude for the Committee's efforts to address the problems. Representatives John Conyers, Jr., (chair of the House Judiciary Committee) and Steve Cohen (chair of the Subcommittee on Commercial and Administrative Law) submitted a comment that expressed the need for "more enforcement tools" to "polic[e] creditor abuses in consumer bankruptcy cases." They noted testimony given at a congressional hearing that asserted that the filing of false proofs of claim in bankruptcy cases had led families to lose their homes.

Debtors' lawyers explained the disincentives to challenging inadequately documented claims. Debtor's counsel often receives no additional compensation for the effort, and any money freed up from payment to the creditor whose claim is challenged goes to other unsecured creditors. In some cases, they said, the cost of objecting would exceed the payment that would be made to the creditor. Nevertheless, some lawyers or trustees said that, when they had pursued challenges to claims filed by bulk purchasers of credit card claims, they had discovered claims that were time-barred, filed against the wrong debtor, or excessive in amount.

Supporters of the amendments applauded the proposal to provide sanctions for the failure of claimants to comply with the rules. They noted the burdens the Bankruptcy Code and Rules place on debtors seeking bankruptcy relief and expressed the view that bulk purchasers should not be free to ignore rule requirements based on assertions that compliance would be unduly burdensome. Some members of the consumer bar advocated strengthening the proposed requirements and sanctions.

The Committee carefully considered all of the comments and testimony regarding Rule 3001(c)(2), and it engaged in extensive discussion of the sanction provision. Following its deliberations, the Committee voted to recommend final approval of the provision, with the following changes made to the published draft of subdivision (c)(2):

- Subparagraph (C) was revised to refer to the official form that is being proposed as a required attachment for a proof of claim filed by a creditor with a security interest in the debtor's principal residence. The Committee is recommending that form (Official Form 10 (Attachment A)) for publication for comment in August 2010.
- In subparagraph (D), the sanction provision was revised to eliminate the phrase "shall be precluded," and to provide that the court "may, after notice and hearing, take either or both" of the listed actions.
- The term "security interest" was added to the discussion in the Committee Note of subdivision (c)(2)(B) to underscore that the requirement of a statement of the amount

required to cure a prepetition default applies only to consensual liens, and not to judgment liens.

- The discussion in the Committee Note of subparagraph (D) was expanded. As revised, it states that grounds for disallowance of a claim are governed by § 502(b) of the Code and that inadequate documentation of a proof of claim, by itself, is not a basis for disallowance. The Committee Note now also points out that the court retains discretion to allow an amendment to a proof of claim under appropriate circumstances and to impose a sanction different from or in addition to the preclusion of the introduction of evidence.

- Stylistic changes were made to the provision.

**Rule 3002.1** is new. It assists in the implementation of § 1322(b)(5) of the Bankruptcy Code, which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan. As published, subdivision (a) required the holder of a claim secured by a security interest in the debtor's principal residence to provide at least 30 days' notice to the debtor, debtor's counsel, and the trustee of any postpetition changes in the mortgage payment amount. Subdivision (b) prescribed the procedure for giving that notice. Subdivision (c) required the holder of a home mortgage claim to give an itemized notice of any postpetition fees, expenses, or charges within 180 days after they are incurred, and it allowed the debtor or trustee to challenge those additional charges within a year after notice is given.

Subdivisions (d)-(f) established a procedure for determining whether the debtor has cured any default and is otherwise current on the debtor's mortgage payments at the close of a chapter 13 case. Subdivision (g) specified sanctions that could be imposed if the holder of a claim secured by the debtor's principal residence failed to provide any of the information required by this rule.

The Committee received approximately 100 written comments on the published rule, and three witnesses testified concerning it. About three-fourths of the comments were submitted by members of the consumer bankruptcy bar in support of the rule. Several of those commentators described the difficulty they have encountered with the misapplication of payments during the pendency of a chapter 13 case and the lack of information about postpetition mortgage payment changes and the assessment of charges. Attorney Annabelle Patterson, for example, stated that she has had clients successfully emerge from chapter 13, believing that they were current on their mortgage payments, only to be immediately confronted with a notice of delinquency.

None of the comments or testimony opposed the rule in its entirety, but some suggested the need for revision of certain of its provisions. The most significant of these comments are briefly summarized below by category.

*Timing of notice of payment changes.* Three comments raised questions about the proposed requirement of published subdivision (a) that a mortgagee file a notice of payment change "no later than 30 days before a payment at the new amount is due." They expressed concerns about how this

Report to Standing Committee                                                   Page 13
Bankruptcy Rules Advisory Committee

provision would apply to loan payments that adjust frequently. One comment suggested that to be consistent with the Truth in Lending Act's notice requirement for adjustable rate mortgages, the notice required by the rule should be given "at least 25, but no more than 120, calendar days prior to the due date of the new payment amount."

*Filing of notice of payment changes.* The comments reflected a division of opinion within the court system about the requirement that the notice of payment change be filed as a supplement to the proof of claim (i.e. on the claims register), rather than on the case docket. A comment submitted on behalf of the Bankruptcy Judges Advisory Group supported the rule's provision for the filing of the notice as a supplement to the proof of claim, which filing can be made by a creditor without the assistance of a lawyer. Another comment, however, indicated that a majority of bankruptcy clerks prefer that payment change notices be filed on the case docket.

*Timing of notice of fees, expenses, and charges and of motion for court determination of validity.* Three comments expressed concern about the requirements of subdivision (c) of the published rule that the mortgagee serve a notice of fees, expenses, and charges "no later than 180 days after the date when the fees, expenses, or charges are incurred" or that the debtor or trustee file a motion "no later than one year after service of the notice" to obtain a court determination of the validity of the fees, expenses, and charges. Testifying at the New York hearing, attorney Philip Corwin stated that compliance with the 180-day requirement may not be feasible in a significant number of cases. His later-submitted written comments did not elaborate on this assertion. The comment submitted by John McMickle on behalf of the Housing Policy Council and other groups suggested without explanation that the 180-day provision be changed to one year and that the provision for filing a motion to seek a judicial determination be changed from one year to 90 days. Finally, Bankruptcy Judge Howard R. Tallman of the District of Colorado stated that the 180-day notice requirement could result in unnecessary supplementation in chapter 13 cases that are never successfully completed. He also noted that both debtors' and creditors' lawyers in his district expressed concern about the costly prospect of annual litigation over potentially small amounts of fees and charges.

*Procedure for determining the status of the debtor's payments at the end of the case.* Several comments raised issues about the procedure provided in subdivisions (d) - (f) of the published rule regarding the debtor's successful cure of any default and completion of all payments due after the petition. One concern related to the timing of the notice provision. Marie-Ann Greenberg, a standing trustee in the District of New Jersey, pointed out that mortgage defaults, especially when the amounts are relatively small, are sometimes cured early in the case. In such cases the procedure specified in subdivisions (d) - (f) would not result in a determination upon the conclusion of the case that the debtor was current on all payments. Two other comments expressed similar concerns.

Another issue was raised by Bankruptcy Judge Marvin Isgur of the Southern District of Texas in his written comments. He suggested that, in place of the proposed procedure, the rule should authorize a motion at the end of the case for a determination that the debtor is current on all ongoing

Rules Appendix B-13

mortgage payments and has paid all arrearages. The court's ruling on this motion would have a preclusive effect on both parties. Thus if the mortgage were determined to be current at the end of the case, the mortgagee would be precluded from declaring a default and initiating foreclosure proceedings in state court once the bankruptcy case was closed.

*Appropriateness of the rule in all districts.* Several comments suggested that proposed Rule 3002.1 is designed for or is appropriate only in so-called "conduit" districts – those in which the chapter 13 trustee disburses all mortgage payments – as opposed to districts in which the debtor makes ongoing mortgage payments directly to the mortgagee. These comments were based on the provisions of the rule that require notices to be filed on the claims register and service to be made on the trustee (as well as on the debtor and debtor's counsel).

The Committee made several changes to the published Rule 3002.1 in response to the comments and testimony it received:

- As a result of an organizational revision of the rule, the subdivision designations were changed.
- The timing of the notice of payment change, now addressed by subdivision (b), was changed from 30 to 21 days before payment must be made in the new amount.
- The triggering event for the filing of the notice of final cure payment, now addressed by subdivision (f), was changed to the debtor's completion of all payments required under the plan. The subdivision now requires the notice to inform the holder of the mortgage claim of its obligation to file and serve a response under subdivision (g).
- The provision governing the consequences of the failure to provide information as required by the rule, now subdivision (i), was revised in the same manner as the sanction provision of Rule 3001(c)(2)(D).
- A sentence was added to the first paragraph of the Committee Note that clarifies that the rule applies in all districts, regardless of whether ongoing mortgage payments are made directly by the debtor or by the chapter 13 trustee.
- Stylistic changes were made throughout the rule and Committee Note.

With these changes made to the preliminary draft of Rule 3002.1, the Committee unanimously recommends that it be given final approval.

**Rule 4004** is amended to permit a party under limited circumstances to seek an extension of time to object to a debtor's discharge after the time for objecting has expired. In some cases the discharge is not entered immediately after the objection deadline passes. That situation creates the possibility during the resulting gap period – between the expiration of the time for objecting and the entry of a discharge – that a party may discover information that would have provided a basis for objecting had it been known in time to object. Even when the discharge is later entered, revocation of the discharge under § 727(d) may not be available based the information acquired in the gap

Report to Standing Committee                                           Page 15
Bankruptcy Rules Advisory Committee

period, because some grounds for revocation require the complaining party to have learned of the debtor's misconduct *after* the entry of the discharge. Subdivision (b) of the Rule is amended to allow a party in that circumstance to file a motion for extension of time to object to the debtor's discharge even though the objection period under subdivision (a) has already expired.

Three comments were submitted on the proposed amendment. The Insolvency Law Committee of the Business Law Section of the State Bar of California ("ILC") supported the proposed changes. In particular, it approved the proposed rule's reference to § 727(d) as a whole, rather than to any specific paragraph within that subsection. The broader reference, ILC said, allows an extension of time to be sought whenever the debtor commits an act during the gap period that provides a basis for both denial and revocation of the discharge, even if the ground for revocation does not require lack of knowledge of the debtor's misconduct prior to the discharge. The ILC noted approvingly that the amended rule would allow a creditor or trustee to seek an extension of time to object to discharge upon learning of the misconduct, rather than having to wait until the discharge was granted to seek its revocation. It suggested that the Committee Note be amended to clarify the rule's applicability in that situation.

Bankruptcy Judge Wesley Steen of the Southern District of Texas suggested that the proposed amendment does not go far enough. He expressed concern that it fails to address the situation in which a debtor during the gap period engages in conduct of a type that would provide a basis for denial of the discharge under § 727(a) but that is not a ground for revocation of the discharge under § 727(d). In a recent opinion that he attached to his comment, *In re* Shankman, 2009 WL 2855731 (Bankr. S.D. Tex. Sept. 1, 2009), Judge Steen found that Rule 4004 is invalid because it imposes a deadline that prevents parties from objecting to discharge based on misconduct by the debtor that occurs during the gap period. The proposed amendment, he said, does not fully address this problem because it is limited to conduct that would provide a basis for discharge revocation, and § 727(a) and (d) are not coextensive.

Bankruptcy Judge Marvin Isgur, also of the Southern District of Texas, concurred in Judge Steen's comment. While stating that the proposed amendment "is an excellent change to this Rule," Judge Isgur suggested that the language of the amendment be broadened to address the concerns raised in the *Shankman* opinion.

The Committee voted unanimously to approve the rule amendment as published, with only stylistic changes to the rule itself and a clarifying change to the Committee Note. The Committee decided that the purpose of the amendment is to arrive at the same result as would occur if the discharge were entered promptly after the expiration of the Rule 4004(a) deadline and thus no gap existed. In that situation, § 727(d) would determine whether acts committed or discovered after the discharge would provide a basis for revocation, and not all acts that might have resulted in denial of the discharge would qualify as grounds for revocation. A sentence was added to the Committee Note to clarify that the amended rule authorizes an extension of time to object to discharge whenever

Rules Appendix B-15

Report to Standing Committee                                                                        Page 16
Bankruptcy Rules Advisory Committee

a debtor commits an act during the gap period that provides a basis for both denial and revocation of the discharge.

**Rule 6003** is amended to clarify that the 21-day waiting period before a court can enter certain orders at the beginning of a case, including an order approving employment of counsel, does not prevent the court from specifying in the order that it is effective as of an earlier date.

No comments were submitted on the proposed rule in response to the August 2009 publication, and only stylistic changes to the Committee Note were made after publication. The Committee voted unanimously to approve it.

**Official Forms 22A, 22B, and 22C** are amended in several respects. Form 22A is amended on lines 19A, 19B, 20A, and 20B to delete references to "household" and "household size" and to replace them with "number of persons" or "family size." These amendments implement more accurately the provisions of § 707(b)(2)(A)(ii)(I) of the Bankruptcy Code that allow means test deductions to be taken from current monthly income based on IRS National and Local Standards. Similar changes are made to Form 22C on lines 24A, 24B, 25A, and 25B.

Form 22A is also amended to add an instruction to line 8 to clarify that only one joint filer should report regular payments by another person for household expenses. Reporting of this figure by both spouses results in an erroneous double-counting of this source of income. Forms 22B and 22C are similarly amended on line 7 of each form.

Finally, the introductory instruction to Part I of Form 22A is amended to reflect the Bankruptcy Code's ambiguities regarding application of means test exemptions in joint cases in which only one debtor is exempt. The amended instructions give debtors the choice of filing separate forms if they believe they are required to do so by § 707(b)(2)(C) of the Bankruptcy Code. The amendment therefore follows the Committee's general policy regarding the means test forms – allowing courts to resolve ambiguities rather than determining the outcome in forms.

The only comment that was submitted in response to the publication of these proposed amendments expressed support for them. The commentator, attorney William J. Neild, also suggested the need for an additional change to Form 22A. That suggestion will be considered by the Committee at its fall 2010 meeting.

No changes were made to the forms after publication, and the Committee voted unanimously to recommend their approval

2.    *Amendments for Which Final Approval is Sought Without Publication.* **The Advisory Committee recommends that the proposed amendments that are summarized below be approved and forwarded to the Judicial Conference.** Because the proposed amendments are

Rules Appendix B-16

Report to Standing Committee                                                      Page 17
Bankruptcy Rules Advisory Committee

conforming in nature, the Committee concluded that publication for comment is not required. The texts of the amended forms are set out in Appendix A.

**Official Forms 20A and 20B** are amended to change their captions in two respects. First, the forms instruct the filer to list all names used by the debtor in the last eight, rather than six, years. This change conforms to a 2005 amendment of § 727(a)(8) of the Bankruptcy Code that extended the period between chapter 7 discharges from six to eight years. Second, the filer is instructed to redact not only the debtor's social security number, but also the debtor's individual taxpayer identification number. The latter change conforms to Rule 9037.

The Committee voted unanimously to recommend approval of these amendments without publication.

\* \* \* \* \*

Rules Appendix B-17

## CERTIFICATE OF SERVICE

On June 8, 2011, I personally caused copies of the affixed Objection of The Baupost Group, L.L.C. to Motion of the Ad Hoc Group of Lehman Brothers Creditors to Establish Disclosure Procedures [Docket No. 17014] to be sent via Federal Express, next day delivery, to (i) the chambers of the Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, Courtroom 601, New York, NY 10004; (ii) Whtie & Case LLP, 1155 Avenue of the Americas, New York, NY 10036, Attn: Gerald Uzzi, Esq. And J. Christopher Shore, Esq.; (iii) Weil, Gotshal & Manges LLP, Harvey R. Miller, Lori R. Fife, Alfredo R. Perez, Richard P. Krasnow, Shai Y. Waisman, Jacqueline Marcus 767 Fifth Avenue, New York, NY 10153; (iv) Office of the U.S. Trustee, Region 2, Attn:  Tracy Hope Davis, Elisabetta Gasparini, Andrea Schwartz, Andy Velez-Rivera, Paul Schwartzberg, Brian Matsumoto, Linda Riffkin, 33 Whitehall Street, 21st Floor, New York, NY 10004; and (v) Milbank, Tweed, Hadley & McCloy LLP, Dennis F. Dunne, Dennis O'Donnell, Evan Fleck, One Chase Manhattan Plaza, New York, NY 10005.

*/s/ Isaac M. Pachulski*
Isaac M. Pachulski