SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
Fredric Sosnick
William J.F. Roll III
Daniel H.R. Laguardia
Ned S. Schodek

Attorneys for Bank of America, N.A.
and Merrill Lynch International

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                           :

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | **Case No. 08 – 13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : |  |

-----------------------------------------------------------------x

**OBJECTION OF BANK OF AMERICA, N.A. AND MERRILL
LYNCH INTERNATIONAL TO THE MOTION OF THE AD HOC
GROUP OF LEHMAN BROTHERS CREDITORS PURSUANT TO
SECTIONS 105(a) AND 1109(b) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 2019 AND 7026 TO ESTABLISH
<u>DISCLOSURE PROCEDURES</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Bank of America, N.A. ("<u>BofANA</u>") and Merrill Lynch International ("<u>MLI</u>")

hereby submit this objection (this "<u>Objection</u>") to the motion [Docket No. 17014] (the "<u>Sub Con</u>

<u>Group Motion</u>") of the Ad Hoc Group of Lehman Brothers Creditors (the "<u>Sub Con Group</u>" or

"<u>Group</u>") pursuant to sections 105(a) and 1109(b) of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rules 2019 and 7026 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>") to establish and implement disclosure procedures (the "<u>Proposed Disclosure Procedures</u>").

<strong><u>Preliminary Statement</u></strong>

1. Contrary to the manner in which it is styled, the Sub Con Group Motion seeks unprecedented and extraordinary relief that has no support in either the Bankruptcy Code or the Bankruptcy Rules. In fact, the relief sought in the Sub Con Group Motion runs contrary to the plain meaning of the very provisions that it purports to rely on for support. Moreover, despite its self proclaimed attempt to promote the "interests of fair and transparent disclosure" – in a manner that neither Congress nor the Supreme Court saw fit to impose – the history and timing of the Sub Con Group Motion make clear that the relief sought is nothing more than a litigation tactic designed both to attempt to intimidate parties in interest into abandoning any efforts to oppose the substantive consolidation plan proposed by the Sub Con Group [Docket No. 16315] and to deflect the spotlight away from the Court's previous finding that the Sub Con Group itself had not complied with Bankruptcy Rule 2019 [Docket No. 16107].

2. The Sub Con Group Motion asks: "if not [Bankruptcy] Rule 2019, what" would form the basis for the relief requested by the Sub Con Group? Sub Con Group Motion ¶ 28. The answer to that question is simple: there is no basis for the disclosure the Group seeks. As the Sub Con Group fatally acknowledged, Bankruptcy Rule 2019 provides none and despite the Sub Con Group's efforts to fish for some other basis for relief, no other provision of the Bankruptcy Code or the Bankruptcy Rules does either.

3. The overbroad and overreaching nature of the relief sought in the Sub Con Group Motion is manifest from what it would require of BofANA, MLI and their affiliates (collectively, "<u>BofAML</u>") in exchange for the ability of BofANA and MLI to exercise their

undeniable rights under the Bankruptcy Code. It is undisputed that both BofANA and MLI are the holders of significant claims against various of the debtors in these cases (the "Debtors"). The Debtors themselves recently have identified both entities as being among the 13 "Big Bank" claim-holders. Despite the filed claims and the Debtors' already publicly filed position on BofANA's and MLI's claims in this case, however, the Sub Con Group is attempting to impose additional and highly burdensome disclosure requirements on BofANA and MLI and all of their affiliates as a potential hurdle to their participating in the voting and plan confirmation process. Such a condition would be directly contrary to section 1109 of the Bankruptcy Code.

4.      Section 1109(b) of the Bankruptcy Code is clear that any "party in interest," including creditors of the debtor, may appear and be heard in a chapter 11 case. The relevant precedent is unwavering in holding that section 1109(b) grants any party with a financial stake in the case the *unqualified* right to participate with respect to the judicial determination of any issue bearing on the ultimate disposition of its interest. Here, BofANA and MLI are clearly creditors. The Debtors themselves have identified BofANA and MLI as "big banks" that are subject to a derivative claims valuation framework (the "Debtors' Valuation Framework"), which itself is currently an element of the Debtors' plan [Docket No. 14150] (see Debtors' Plan at § 6.6).[1] It is tautological that BofANA and MLI have an unqualified right to be heard on any issues regarding the various plans that are on file, as they unquestionably would have a bearing on the ultimate disposition of their claims.

5.      No doubt recognizing that section 1109 precludes rather than justifies the relief sought in the Sub Con Group Motion, the Sub Con Group purports to look to Bankruptcy

---

[1]      The Debtors' Valuation Framework is significant only in its recognition of the claims of BofANA and MLI. Nothing herein should be viewed as an endorsement of the Debtors' Valuation Framework, or as BofANA and MLI waiving any rights with respect to the Debtors' Valuation Framework. BofANA and MLI reserve all of the respective rights to challenge the Debtors' Valuation Framework if the Debtors seek its implementation in these cases.

Rule 2019 for support. In doing so, the Sub Con Group relies on innuendo to imply that multiple parties working through separate counsel are attempting to avoid the requirements of Bankruptcy Rule 2019 and, thereby, attempts back into a justification for looking to Bankruptcy Rule 2019 as a predicate for its relief. *See, e.g.,* Sub Con Group Motion ¶ 26.

6. Compliance or non-compliance with Rule 2019 has nothing to do with the relief sought by the Sub Con Group. Even if, assuming *arguendo*, there were a basis for relief under Rule 2019, the disclosure requirements the Sub Con Group is seeking to impose far exceed the bounds of the Rule (either in its current form or as it will likely be amended) – a fact that the Court already has effectively recognized and the Group conceded. If the Sub Con Group believes that any entity is not in compliance with Bankruptcy Rule 2019, it should make a motion to compel compliance with the Rule, as there is no value to generalized references to unidentified parties' alleged non-compliance (especially while blithely – in a manner that borders on disingenuousness – claiming to "not disparage" those same parties). If such a motion were directed against BofANA or MLI, neither of which is a plan proponent, nor purports to speak for any other party in these cases, it would be responded to in due course. The Court could then make its own assessment on the facts, rather than on the generalized innuendo in the Sub Con Group Motion.

7. Moreover, the Sub Con Group is well aware that the disclosure requirements for affiliates of an institution as diverse as BofAML – which includes a public trading desk that facilitates customer trading and market-making in distressed securities, including those of the Debtors – would not only be enormously burdensome, but would also involve disclosure of highly sensitive trading information that is wholly irrelevant to how the institutional claims of BofANA and MLI are administered. Indeed, disclosure of such trading

information could damage the public trading desk's ability to continue to facilitate liquidity in the Debtors' securities, which could detrimentally impact all creditors.

8.     The knowledge of how burdensome and harmful such a disclosure exercise would be may be exactly what is motivating the Sub Con Group to seek the relief requested in the Sub Con Group Motion.  By seeking to impose onerous disclosure duties, the Sub Con Group appears to be attempting to intimidate parties into not participating in the plan approval process by imposing a greater burden than that reflected in the Discovery Procedures Order, which already has a disclosure requirement that is targeted at eliciting the information necessary to make an assessment under section 1109(b).[2]

9.     Contrary to the Sub Con Group's assertion, Bankruptcy Rule 7026 also fails to provide a basis for the relief sought in the Sub Con Group Motion.  Bankruptcy Rule 7026 is governed by a relevancy requirement, but the disclosure sought by the Sub Con Group is not remotely designed to discover any relevant information as it would apply to BofAML.  Even if the information sought were somehow relevant, Rule 7026 would not require public filing of information on the docket of these cases, which potentially exposes sensitive trading information to inspection by competitors.

10.     It is beyond doubt that BofANA and MLI, both of which have proofs of claim publicly on file with the court and have been identified publicly by the Debtors as holders of "big bank" claims, are parties in interest with a right to be heard under section 1109 of the Bankruptcy Code.  The Sub Con Group makes no showing as to how the information it seeks to have disclosed is designed to obtain information relevant to any other plan issue in these cases, and it can point to no statutory authority to impose such a condition.

---

[2]     Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues [Docket No. 16003] (the "Discovery Procedures Order").

11. The lack of an existing statutory basis is also fatal to the Sub Con Group's efforts to invoke section 105(a) of the Bankruptcy Code. Section 105(a) by its very terms can only be used to carry out other more specific provisions of the Bankruptcy Code. The Proposed Disclosure Procedures, however, violate section 1109(b) of the Bankruptcy Code – the only section of the Bankruptcy Code the Sub Con Group relies on in support of the Sub Con Group Motion other than section 105(a). Accordingly, the Group cannot rely on section 105(a).

12. In addition to the lack of any valid basis for the relief sought, the Sub Con Group Motion's deficiencies are evident from the Sub Con Group's offhand suggestion, without any reference to (or attempt to address the requirements of) Fed. R. Civ. P. 60(b), that to grant the relief requested, "[t]he Court could simply expand the disclosures required by the Discovery Procedures Order to include disclosures as suggested hereby or otherwise deemed appropriate by the Court." Sub Con Group Motion ¶ 30. As the Court is well aware, the provisions of the Discovery Procedures Order were heavily negotiated, including by the Sub Con Group. There is simply no basis for such a retroactive expansion now that the discovery process has commenced.

13. That the relief requested in the Sub Con Group is exactly the kind of litigation tactic that raises concern among the courts, is evident from the context in which the relief arose. The Sub Con Group could have sought the same "simple" relief at any previous point in the case. Instead, it first arose in the Sub Con Group's "objection" to the Debtors' motion to compel that group's own compliance with Bankruptcy Rule 2019. In that "objection", the Sub Con Group, recognizing that it could not defend its own lack of compliance, suggested that, if its members had to go through the burden of complying, all parties should have burdensome disclosure imposed on them as well. Such an "If I have to you do too" argument

does not come close to providing a valid basis for contorting provisions of the Bankruptcy Code and Bankruptcy Rules in the manner sought by the Sub Con Group.

14.     Accordingly, for the reasons described herein, the Sub Con Motion should be denied in its entirety.

### Background

15.     On June 29, 2010, the Sub Con Group filed a preliminary objection to a prior iteration of the Debtors' plan [Docket No. 9905].  Exhibit A to that objection set forth a proposed schedule for discovery with respect to inter-Debtor issues which did not contemplate disclosure of the information sought by the Sub Con Group Motion (the "Proposed Sub Con Group Discovery Procedures").

16.     On March 8, 2011, the Debtors filed their motion seeking authorization to implement procedures in connection with discovery related to plan confirmation [Docket No. 14867] (the "Plan Discovery Procedures Motion").  The Plan Discovery Procedures Motion indicated that the proposed discovery procedures, which did not contemplate disclosure of the information requested by the Sub Con Group Motion, were "formulated in consultation with . . . the Ad Hoc Group."  Plan Discovery Procedures Motion ¶ 8.  On April 14, 2011, following extensive negotiation among parties in interest, the Court entered the Discovery Procedures Order.  The Discovery Procedures Order, as proposed, requires the disclosure of the nature of the Participant's (as defined in the Discovery Procedures Order) claims against the Debtors.  *See* Discovery Procedures Order § 2.  Based upon the terms of the Discovery Procedures Order, both BofA and MLI have elected to become Participants (as defined in the Discovery Procedures Order) in the plan discovery process, and have made the initial disclosures required by that order.

17.     On March 30, 2011, the Debtors filed their motion to compel the Sub Con

Group to comply with Bankruptcy Rule 2019 [Docket No. 15461]. In response to that motion, the Sub Con Group filed a "Limited Objection" that principally appeared to be designed to deflect attention from the Sub Con Group's own failure to comply with the rule by proposing wide ranging relief similar to what is contained in the current Sub Con Group Motion [Docket No. 15746]. After a hearing at which the Court refused to entertain the Sub Con Group's request to impose such disclosure, the Court issued an order on April 18, 2011 granting that motion [Docket No. 16107]. On May 23, 2011, the Sub Con Group filed the Sub Con Group Motion seeking to establish the Proposed Disclosure Procedures.

18.     The Proposed Disclosure Procedures contemplate that the following parties be required to make public disclosures of their interests:  (i) any plan proponent; (ii) any Participant in plan discovery (as defined in the Discovery Procedures Order; (iii) any parties acting in cooperation or concert with others whether or not represented jointly or by a single law firm or other advisors; and (iv) to the extent any formal plan negotiation process is ever implemented, whether by Court order, such as mediation, or by effort of the Debtors or the Creditors Committee, any party seeking to participate in any such negotiation.  Sub Con Group Motion ¶ 22.

19.     With respect to the information that such parties are required to disclose, the Sub Con Group "suggests" that such parties be required to disclosure "at a minimum" the following:  (i) all holdings including those of affiliates broken down on a creditor legal entity basis and Lehman legal entity basis, including material foreign affiliates; (ii) whether holdings are held solely of record or beneficially and, to the extent the power to vote such holdings is not under common control, how such voting power is divided; (iii) the nature of the claim (e.g., whether such claim is bond debt, a derivative claim, a guarantee claim, etc.), and if such claim is

a guarantee claim, the nature of the underlying primary claim and the basis for asserting the guarantee; (iv) whether such claim was acquired or accrued prepetition or postpetition and, if such claim was acquired postpetition, the date of purchase and the price paid; (v) any agreements, whether oral or written, regarding the governance of any group of entities working together; and (vi) any arrangements or agreements, whether oral or written, with respect to the sharing of fees and costs among parties. *Id.* at ¶ 23.

## **Argument**

20.     In an effort to find support for the unprecedented and extraordinary relief requested in the Sub Con Motion, the Sub Con Group boldly asks "if not [Bankruptcy] Rule 2019, what?"  Sub Con Group Motion ¶ 28.  Clearly, support for the disclosures sought cannot be found in Bankruptcy Rule 2019.  The Sub Con Group conceded as much when it put forward virtually the same disclosure proposal as is currently contained in the Sub Con Group Motion and admitted that, as the Court recognized, the proposal was necessary because 2019 did not provide the requested disclosures:

> Court:   "But that you are really questioning whether 2019, as a tool, is well suited to the circumstances of this case.  And you are proposing that there be a special disclosure protocol for use in these cases.  Do I understand you correctly on both points?"
> Mr. Uzzi: "On all those points, yes.  Absolutely, Your Honor".

Transcript of Hearing Held on April 13, 2011 ("April 13 Hr'g. Tr.") at 50: 19-25.  Moreover, there is no other basis for the relief requested.  The Sub Con Group's attempts to rely on section 1109(b) of the Bankruptcy Code, Bankruptcy Rule 7026 and section 105(a) of the Bankruptcy Code are unavailing and, accordingly, the Sub Con Group Motion should be denied it its entirety.

# I. Section 1109(b) of the Bankruptcy Code, Rather than Supporting the Burdensome and Irrelevant Disclosure Requirements, Protects BofANA's and MLI's Absolute Right To Be Heard

21.     It is beyond dispute that BofANA and MLI are parties in interest that have a right to be heard under section 1109(b) of the Bankruptcy Code with respect to matters involving voting on, and confirmation of, plans of reorganization involving Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI"). Section 1109(b) clearly and unequivocally states that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).  The existence of BofANA and MLI's claims are evidenced by the proofs of claim publicly on file in these cases (*see, e.g.,* Proof of Claim No. 20137; Proof of Claim No. 20149) and BofANA and MLI have been identified as parties in interest by the Debtors themselves in the Debtors' Valuation Framework that they recently made public (*see* Legacy Asset Management Company, *Derivatives Claims Settlement Framework*, Appendix 3.3 (May 27, 2011), available at http://chapter11.epiqsystems.com/LBH/document/Default.aspx?rc=1 (identifying BofAML as among the Debtors' "big bank" derivatives counterparties)).

22.     Section 1109(b) of the Bankruptcy Code affords parties in interest, such as BofANA and MLI, an unqualified right to participate in these cases.  Indeed, by its terms, section 1109(b) does not, and cannot be reasonably read to, require that a party in interest or its affiliates make any disclosures, much less the commercially sensitive and irrelevant disclosures requested by the Sub Con Group as a condition to being heard.  Rather, section 1109(b) grants any party with a financial stake in the case the *unqualified* right, at the party's election, to participate with respect to the judicial determination of any issue bearing on the ultimate disposition of his or her

interest.  Accordingly, Courts recognize that, "it is clear that Congress intended section 1109(b) to carry forward an *absolute* right to be heard on any issue arising in a chapter 11 reorganization."  *In re Penn-Dixie Indus., Inc.*, 9 B.R. 936, 939 (S.D.N.Y. 1981) (emphasis added); *see also In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (observing that section 1109(b) is a continuation of the tradition under the Bankruptcy Act of "permitting interested parties in bankruptcy cases the *absolute* right to be heard and to insure their fair representation") (emphasis added).

    23.    If, somehow, section 1109(b) of the Bankruptcy Code were found to be ambiguous, to discern the intent, one would have to look no further than the legislative history of the section, which states that section 1109(b) "provides, in *unqualified terms*, that *any creditor*, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an attorney, or by a committee."  S.Rep. No. 95-989, at 116 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5902 (emphasis added); *see also In re Duplan Corp.*, 450 F. Supp. 790, 791 (S.D.N.Y. 1978) (reading predecessor statute to section 1109(b) as intended to "remove procedural barriers to full participation by [interested parties]," and thus granting indenture trustee a right to participate in adversary proceeding without filing motion to intervene).  This unqualified right traces its origins to basic considerations of due process:  that no person directly affected by a judicial proceeding should suffer the consequences of the proceeding without a meaningful opportunity to appear and be heard.

> [T]he broad and absolute construction of section 1109(b) comports with the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests.  This expectation has its roots in notions of due process and fair play, even though there is no allegation here that denial of a right of intervention to the Committee would itself violate due process.  We are especially reluctant to adopt the extremely strained interpretation of section

1109(b) proposed by appellants when to do so would frustrate this
expectation of participation.

*Official Unsecured Creditors Comm. v. Michaels* (*In re Marin Motor Oil, Inc.*), 689 F.2d 445,

452 (3d Cir. 1982); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1109.02[3], at 1109-10 (16th ED. REV.

2011) (noting that section 1109(b) was "was designed to serve both the policies of inclusion

underlying the chapter 11 process as well as basic requirements of due process"); *Roslyn Sav.*

*Bank. v. Comcoach Corp.* (*In re Comcoach Corp.*), 698 F.2d 571, 573 (2d Cir. 1983)

("Bankruptcy courts were established to provide a forum where creditors and debtors could settle

their disputes and thereby effectuate the objectives of the statute"); *In re Johns-Manville Corp.*,

36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984) ("the drafters of the Code specifically built into it the

concept of 'open access' to the bankruptcy process") (citation omitted).

24.    To counter the unqualified right to be heard on issues concerning voting

on, and confirmation of, the plans in these cases (all of which apply in some respect to LBSF and

LBHI), the Sub Con Group argues only that:

> Singular entities with sufficient size in the capital structure that
> aim to participate in plan negotiations and plan-related litigation
> should be required to disclose their economic interests.  As this
> Court is already aware, there are parties in these cases that intend
> to take action and voice concerns in an individual capacity with
> respect to plan-related issues. . . .  [BofANA], has filed a pleading
> stating that BofA[NA] believes that both the Group's plan and the
> Debtors' plan are "objectionable and not confirmable."

Sub Con Group Motion ¶ 19.  The implications of this argument are breathtaking.  A

requirement that "singular entities with sufficient size in the capital structure" publicly post

sensitive commercial information on the docket of the debtor's chapter 11 case would affect

virtually every single chapter 11 case of meaningful size.  The Sub Con Group cannot credibly

intend that such a sweeping requirement can be reconciled with the far more circumscribed text of Rule 2019 as it is currently drafted and as it is proposed to be amended.

25.     BofANA's actions as described are entirely justified, and BofANA is absolutely entitled to advocate for its own economic interest.  There is no logical connection between the disclosure the Sub Con Group seeks and whether BofANA votes against the Sub Con Group's plan and/or advocates that the plan is not confirmable.  Any such claim will be decided on the merits of such an objection, not on the economic interests of the parties.

## II.     Bankruptcy Rule 2019 Does Not Authorize the Establishment of the Proposed Disclosure Procedures

26.     Despite the Sub Con Group's earlier concession that the disclosures requested exceed and are not authorized by Bankruptcy Rule 2019,[3] it continues to point to the rule as one of the predicates for the requested relief.  It bears repeating that it is clear that Bankruptcy Rule 2019 does not, on its face, apply to individual creditors or their affiliates or require disclosure regarding claims against non-debtors.  The rule provides that:  "[i]n a . . . chapter 11 reorganization case . . . *every entity or committee representing more than one creditor* . . . shall file a verified statement setting forth . . . the nature and amount of the claim or interest . . ."  Fed. R. Bankr. P. 2019(a)(2) (emphasis added).

27.     Unwilling to let go of the point they previously conceded, the Sub Con Group suggests through innuendo that the requested relief is justified by the fact that certain unnamed parties have improperly circumvented the requirements of Bankruptcy Rule 2019 – even though the Group seeks to have the disclosure requirements apply to all parties that wish to be heard and participate in the discovery necessary to prepare for a confirmation hearing.  *See,*

---

[3]     *See* April 13 Hr'g. Tr. at 50: 19-25 (Court:  "But that you are really questioning whether 2019, as a tool, is well suited to the circumstances of this case.  And you are proposing that there be a special disclosure protocol for use in these cases.  Do I understand you correctly on both points?"  Mr. Uzzi:  "On all those points, yes.  Absolutely, Your Honor").

*e.g.* Sub Con Group Motion ¶ 26.  If the Sub Con Group believes that parties subject to Bankruptcy Rule 2019 failed to comply with the rule, the proper means to address that concern would be to file a motion to compel compliance with the rule (as the Debtors did to compel compliance by the Sub Con Group).  If such a motion were directed against BofANA or MLI, neither of which is a plan proponent, or purports to speak for any other party in these cases, it would be responded to in due course, and the Court could make it's own assessment on the facts, not the non-specific innuendo in the Sub Con Group Motion.  In any case, even such a finding would not support the disclosures requested by the Sub Con Group.

28.     If, as the Sub Con Group suggests, Bankruptcy Rule 2019 is "not a wholly effective tool" for the disclosures that it seeks, the Sub Con Group's suggestion that the Court can expand Bankruptcy Rule 2019 on its own is wrong.  *See* Sub Con Group Motion ¶¶ 24 – 28.  Congress has explicitly given the United States Supreme Court the sole authority to modify the Bankruptcy Rules.  28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11").  Indeed, the process of amending Bankruptcy Rule 2019 is well underway, with the Supreme Court having approved amendments to Bankruptcy Rule 2019 on April 27, 2011 ("<u>Proposed Amended Bankruptcy Rule 2019</u>").  Proposed Amendments to the Fed. Rules of Bankr. Procedure, *available at* http://www.uscourts.gov/RulesAndPolicies/Federal Rulemaking/PendingRules/SupremeCourt042611.aspx.[4]  The relief requested in the Sub Con Group Motion, however, far exceeds anything in even the Proposed Amended Bankruptcy Rule 2019 would require, as the Proposed Amended Bankruptcy Rule 2019 would not, among other things, require any disclosure from individual creditors or groups of affiliates or require pricing

---

[4]     Absent a congressional veto, Proposed Amended Bankruptcy Rule 2019, will go into effect December 1, 2011.

disclosure from any group required to comply with Proposed Amended Bankruptcy Rule 2019.

*Id.* Despite the lengthy consideration process, which included an extensive ability for parties to comment,[5] the Supreme Court did not make changes to Bankruptcy Rule 2019 to address the purported limitations of the rule as identified by the Sub Con Group and there is no basis to do so now.

### III. Bankruptcy Rule 7026 Does Not Authorize the Establishment of the Proposed Disclosure Procedures

29. The Sub Con Group argues that Bankruptcy Rule 7026 provides authorization for the Proposed Disclosure Procedures on the basis that "The information proposed is clearly discoverable and no expectation of privacy can be expected in light of Rule 2019." Sub Con Group Motion ¶ 30. There is no basis for discovery of this information under Rule 7026, however, and there *are* legitimate expectations of privacy and confidentiality with respect to it.

### A. There is No Basis for Discovery of the Information Sought by the Sub Con Group Under Rule 7026

30. The information sought by the Sub Con Group is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Federal Rule of Civil Procedure 26(b)(1), made applicable to adversary proceedings by Bankruptcy Rule 7026 and contested matters by Bankruptcy Rule 9014, provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. *For good cause*, the court *may* order

---

[5] *See, e.g.* Letter from Thomas E. Lauria, White & Case LLP, to Peter G. McCabe, Secretary, Comm. on Rules of Practice and Procedures of the Judicial Conference of the U.S. (Feb. 16, 2009) (on file with the Administrative Office of the U.S. Courts) (advocating repeal of Bankruptcy Rule 2019).

discovery of any matter *relevant to the subject matter involved in the action*.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) (emphasis added).  As recently explained by Judge Bernstein, the party seeking discovery has the burden of explaining "how or why the [discovery] would be relevant to her claims."  *Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.)*, 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) (citations and quotations omitted).  Upon establishing the relevance of the discovery, the court may still limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

31.     Nowhere in the Sub Con Group Motion does the Sub Con Group even use the word "relevance" let alone seriously attempt to meet its burden of demonstrating the relevance of the information it seeks.  The disclosure sought by the Sub Con Group is not remotely designed to determine whether a party has a right to be heard under section 1109(b) of the Bankruptcy Code.  There can be no dispute that BofANA and MLI are significant parties in interest for purposes of section 1109(b), and the holdings of their affiliates could not possibly have any bearing on that question.  Nor is the information sought by the Sub Con Group relevant to either substantive consolidation or any other plan issue.  With respect to the latter, BofANA and MLI note that it is firmly established that "the price paid for a claim does not affect the amount of the creditor's claim, or the creditor's voting power."  *Fairfield Exec. Assocs. v. Hyperion Cap. Credit Partners, L.P.* (*In re Fairfield Exec. Assocs.*), 161 B.R. 595, 602 (D.N.J. 1993) (citing *In re Pittsburgh Rys. Co.*, 159 F.2d 630, 632-33 (3d Cir. 1946)); *see also In re Executive Office Ctrs., Inc.*, 96 B.R. 642, 649 (Bankr. W.D. La. 1988) ("absent fraud, the price which a creditor pays for his claim does not affect the measure of his participation in the

reorganization of the debtor"). In any case, even if such discovery were appropriate under Rule 7026, there is no basis for the unsupported leap that the Sub Con Group takes in suggesting broad public filings of the information it seeks.

      B.    <u>The Information Sought by the Sub Con Group is Subject to Expectations of Privacy and Confidentiality</u>

      32.    Similarly, despite the Sub Con Group's averments to the contrary, the information sought by the Sub Con Group is subject to legitimate expectations of privacy and confidentiality. This is particularly the case insofar as the disclosures are required of affiliates of BofANA and MLI given that BofAML is a large and diverse institution which includes a public trading desk that routinely makes markets in distressed securities (including those of the Debtors). The price at which BofAML or its customers may have purchased or sold its claims is sensitive and confidential information, and customer identities could be revealed from disclosure of trading records regarding the more illiquid claims against the Debtors. *See*, *e.g.*, Letter from the Loan Syndication and Trading Ass'n & the Securities Indus. and Fin. Markets Ass'n to Peter G. McCabe, Secretary, Comm. on Rules of Practice and Procedure of the Judicial Conference of the U.S. (Feb. 1, 2010), *available at* http://www.sifma.org/issues/item.aspx?id=876. Furthermore, even if disclosure is limited to the date of the purchase or sale, prices can be easily determined by reference to numerous readily available pricing sources. *Id.*

      33.    Although the Sub Con Group argues that "no expectation of privacy can be expected in light of Rule 2019," as discussed in greater detail above, Bankruptcy Rule 2019 has no applicability to the Proposed Disclosure Procedures. In this regard, the logic of the Sub Con Group is rather circular – if Bankruptcy Rule 2019 did provide a basis to expect that such information would be disclosed, then there would be no reason for the Sub Con Group to rely on

discovery via Bankruptcy Rule 7026.  Rule 7026, on the other hand, does not provide for the types of public disclosures contemplated by Rule 2019 and the Sub Con Group Motion.

**IV.  Section 105(a) of the Bankruptcy Code Does Not Authorize the Establishment of the Proposed Disclosure Procedures**

34.  Section 105(a) of the Bankruptcy Code provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out *the provisions of this title*."  11 U.S.C. § 105(a) (emphasis added).  The express language of section 105(a) dictates that it must be used to carry out other more specific provisions of the Bankruptcy Code.  *Id.*; *see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003) ("The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing").  It is also clear that section 105(a) cannot be used to violate other more specific provisions of the Bankruptcy Code.  *See, e.g., Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself"); *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("the power conferred by [section]105 is one to implement rather than override").

35.  As set forth above, however, the Proposed Disclosure Procedures are not authorized by section 1109(b) of the Bankruptcy Code – the only section of the Bankruptcy Code the Sub Con Group relies on in support of the Sub Con Group Motion other than section 105(a).

In fact, the Proposed Disclosure Procedures are actually antithetical to section 1109(b) because they seek to limit the ability of parties in interest to appear before the Court.

36.     Nor for that matter is implementation of the Proposed Disclosure Procedures necessary to prevent an "abuse of process."  Sub Con Group Motion at ¶ 30.  The Sub Con Group has not alleged any "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system."  *Jones v. Wells Fargo Home Mortg., Inc. (In re Jones)*, 418 B.R. 687, 695 (Bankr. E.D. La. 2009) (citation omitted).  The only "maneuvers or schemes" at issue are those embedded within the Proposed Disclosure Procedures, which are a thinly veiled attempt to chill participation in these chapter 11 cases through an unprecedented expansion of Bankruptcy Rule 2019.  Neither section 105(a) nor any other provision of the Bankruptcy Code provides a basis for the Proposed Disclosure Procedures.

## V.     The Timing of the Sub Con Motion is Designed To Chill the Confirmation Process and Deflect from the Sub Con Group's Own Previous Transgressions

37.     The potential chilling effect of the threatened disclosures described above,[6] seems to be the precise motivation for the Sub Con Group Motion.  In this regard, it is quite remarkable and highly suspect that the Sub Con Group now suggests, without any attempt to address the requirements of Fed. R. Civ. P. 60(b), that "[t]he Court could simply expand the disclosures required by the Discovery Procedures Order to include disclosures as suggested hereby or otherwise deemed appropriate by the Court."  Sub Con Group Motion at ¶ 30.  The Sub Con Group, despite the fact that the procedures contained in the Plan Discovery Procedures Motion (which was heard on the same date as the Debtors' motion to compel the Sub Con Group's compliance with Bankruptcy Rule 2019) were formulated "in consultation with . . . the Ad Hoc Group," the Sub Con Group made no effort at the time to expand the Discovery

---

[6]     *See supra* ¶ 32.

Procedures Order in the manner that it now suggests can "simply" be done retroactively.[7]  Plan

Discovery Procedures Motion ¶ 8.  Likewise, on March 8, 2011, the Debtors filed the Plan

Discovery Procedures Motion seeking to implement plan discovery procedures that also did not

require disclosure of the requested information and that ultimately lead to the Discovery

Procedures Order.

   38. In light of the Sub Con Group's previous silence on the issue, it seems

clear that the current Sub Con Group Motion is a litigation tactic which is designed to silence

parties in interest opposed to the substantive consolidation agenda of the Sub Con Group, that

has its genesis in the Sub Con Group's own prior transgressions of Bankruptcy Rule 2019.  As

the Court already recognized, the use of Bankruptcy Rule 2019 – or presumably the unsupported

Proposed Disclosure Procedures that the Sub Con Group now seeks to impose – as a litigation

tactic is cause for concern:

> One of the things that I have observed—and I think this is true in
> virtually every decision involved in 2019 is that the rule has
> weaponized in the sense that parties use compliance with 2019 as a
> form of strategic leverage in bankruptcy cases large and small in
> order to, in effect, put groups or committees in a position of having
> to disclose information that might be proprietary or that might be
> embarrassing or that they might prefer to keep private.

April 13 Hr'g. Tr. at 45:20-46:2; *see also In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 71

("Here, the Official Committee, by filing its motion [to compel Bankruptcy Rule 2019

disclosure], is clearly engaged in a litigation tactic to apply pressure on its current adversary, the

Informal Committee of SFO Noteholders, as well as attempting to make an 'end run' around a

previous ruling denying the Official Committee's request for discovery seeking virtually the

same information").

---

[7] Indeed, the Proposed Sub Con Group Discovery Procedures filed by the Sub Con Group almost a year ago
did not contemplate disclosure of the requested information [Docket No. 9905].

39. Such a litigation tactic has no place in these proceedings, particularly where, as described above, there is no legal basis for the relief requested. Accordingly, the Sub Con Motion should be denied in its entirety.

## **Reservation of Rights**

40. BofAML reserves all rights to amend or supplement this Objection, file a reply to any response to this Objection or to incorporate other objections to the Sub Con Group Motion filed by other parties in interest in a subsequent joinder filed with the Court or at the hearing to consider the Sub Con Group Motion.

WHEREFORE, for all of the above reasons, BofAML respectfully requests that the Court sustain this Objection and deny the Sub Con Group Motion.

Dated: New York, New York
June 8, 2011

SHEARMAN & STERLING LLP

By: */s/ Fredric Sosnick*
Fredric Sosnick
William J.F. Roll, III
Daniel H.R. Laguardia
Ned S. Schodek

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Attorneys for Bank of America, N.A.
and Merrill Lynch International