Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 08-13555(JMP)

5

6  - - - - - - - - - - - - - - - - - - - - -x

7  In the Matter of:

8

9  LEHMAN BROTHERS HOLDINGS INC., et al.

10

11            Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - -x

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            June 6, 2011

19            2:00 PM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    MATTER re Status Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Linda Ferrara

Page 3

1

2   A P P E A R A N C E S :

3   BOIES, SCHILLER, & FLEXNER LLP

4        Attorneys for Barclays

5        575 Lexington Avenue

6        New York, New York 10022

7

8   BY:   JONATHAN D. SCHILLER, ESQ.

9        JACK G. STERN, ESQ.

10

11   BOIES, SCHILLER, & FLEXNER LLP

12        Attorneys for Barclays

13        10 North Pearl Street

14        Albany, New York 12207

15

16   BY:   TRICIA J. BLOOMER, ESQ.

17

18   BOIES, SCHILLER, & FLEXNER LLP

19        Attorneys for Barclays

20        5301 Wisconsin Ave., N.W.

21        Washington, D.C. 20015

22

23   BY:   HAMISH HUME, ESQ.

24

25

Page 4

```
 1    HUGHES HUBBARD & REED

 2          Attorneys for the SIPA Trustee

 3          One Battery Park Plaza

 4          New York, New York 10004

 5

 6    BY:   WILLIAM MAGUIRE, ESQ.

 7          NEAL J. OXFORD, ESQ.

 8

 9    QUINN EMANUEL URQUHART & SULLIVAN LLP

10          Special Counsel to the Official Committee of Unsecured

11           Creditors

12          51 Madison Avenue

13          22nd Floor

14          New York, NY 10010

15

16    BY:   JAMES C. TECCE, ESQ.

17

18    JONES DAY

19          Attorneys for the Debtor LBHI

20          222 East 41st Street

21          New York, New York 10017

22

23    BY:   ROBERT W. GAFFEY, ESQ.

24

25
```

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Be seated, please.  Good afternoon.  This

3       is the continued status conference in connection with a form of

4       order.  I'm just going to ask whether there have been any

5       developments since we were last together on May 9 that might

6       resolve the matters that are before the Court at the moment?

7              MR. MAGUIRE:  Your Honor, Bill Maguire for the

8       trustee.  There have been no developments, Your Honor.

9              THE COURT:  Okay.  What I am going to do is provide my

10      bench ruling.  It will probably take about twenty-five minutes

11      or so.  I've prepared it in writing and so I am going to read

12      it into the record.  I did not intend to convert it into a

13      written opinion but I'll discuss with the parties at the end

14      whether or not in lieu of that, a transcript of today's hearing

15      can simply be posted on the docket for those parties who are

16      not present.

17              This ruling resolves remaining disputes regarding the

18      content of the orders contemplated by the Court's 60(b) opinion

19      issued on February 22, 2011.  That opinion dealt with motions

20      brought by LBHI, the committee and the SIPA trustee for relief

21      under 60(b) with respect to the sale orders entered in these

22      cases on September 20, 2008 and a cross-motion by Barclays to

23      enforce those sale orders.

24              The opinion also adjudicated certain counts of

25      related adversary proceedings that arose out of the same

Page 6

1    subject matter as the 60(b) motions.  The formulation of orders

2    consistent with the opinion has turned out to be much more

3    protracted and complicated in exercise than originally

4    expected, in part due to the great complexity of the subject

5    matter and the large sums at issue.

6          But the Court also believes that the vigorous disputes

7    regarding the form of the proposed orders may have been

8    motivated by a desire to achieve what in substance is

9    reconsideration of certain determinations in the opinion under

10   the benign guise of disputes over the substance of these

11   orders.

12         In accordance with the Court's directions set forth in

13   the opinion, the parties submitted separate proposed forms of

14   order denying each of the 60(b) motions resolving those counts

15   of each of the adversary complaints impacted by denial of these

16   motions and granting in part and denying in part the Barclays

17   motion to recover disputed assets.

18         Letters submitted to the Court highlighted the

19   conflicting views of the parties as to disputed issues and

20   their thoughts as to the most appropriate way to reflect and

21   interpret the holdings in the opinion.

22         On April 11, 2011, the parties appeared at a chambers

23   conference to discuss various disagreements between the SIPA

24   trustee and Barclays regarding the content of the proposed

25   orders.  In accordance with procedures and deadlines

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 7

1    established at that chambers conference, on April 28, 2011, the

2    SIPA trustee and Barclays submitted memoranda in support of

3    their respective positions relating to the proposed forms of

4    order.  Each of them submitted a reply memorandum of May 4,

5    2011.  And all parties to the 60(b) litigation appeared for a

6    status conference and oral argument on May 9, 2011.

7         At oral argument, counsel for the SIPA trustee

8    Barclays informed the Court that they had succeeded in

9    resolving their dispute concerning the amount of clearance box

10   assets that Barclays is to receive.  Specifically, I stated on

11   the record that parties agreed that "the amount of the

12   undelivered clearance box assets can be set in an order that

13   will specify the payment by the trustee to Barclays of 1.1

14   billion dollars and that there will be no other payment of any

15   kind."

16        The parties also confirmed their substantial agreement

17   that the total amount of margin assets held by Barclays was

18   2.101 billion dollars.  The Court's understanding is that as of

19   May 9, 2011, a difference of approximately 80 million dollars

20   remained in the parties' calculations of these margin assets

21   and they appeared confident as to their ability to reach a full

22   and final resolution that will precisely confirm the amount of

23   the margin assets held by Barclays.

24        In addition, as a result of statements from the bench

25   explaining the reasons for the reference in the opinion to

Page 8

1   margin assets in connection with the so-called asset scramble,

2   counsel for the SIPA trustee indicated that he was satisfied

3   with the clarity of that explanation and withdrew his request

4   for a provision in the order that would amend the opinion to

5   remove margin assets from the list of additional asset

6   categories identified during the asset scramble.

7           Finally, counsel for the parties confirmed on the

8   record that they had reached an understanding regarding

9   procedures for future financial reporting by the SIPA trustee

10  that would permit Barclays to monitor its potential claim to

11  the Rule 15(c)(33) assets without imposing undue burdens on the

12  SIPA trustee, thereby ending disagreements regarding that

13  aspect of the order.

14          The three remaining issues in dispute all relate to

15  the margin assets.  These are (1) whether the award of margin

16  assets to the SIPA trustee applies to government securities,

17  (2) whether Barclays may claim an offset for certain short

18  positions or whether these were assumed by Barclays under the

19  terms of the asset purchase agreement and/or the clarification

20  letter and (3) whether the SIPA trustee is entitled to

21  prejudgment interest and if so, what is the appropriate

22  interest rate and commencement date to use for the calculation

23  of interest.

24          The Court will address each of these issues in turn,

25  starting with the government securities question that surfaced

08-13555-mg   Doc 17549   Filed 06/07/11   Entered 06/09/11 14:45:22   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 9 of 22

Page 9

1    as an issue for the first time after issuance of the opinion

2    during vetting by the parties of the form of order.

3           In the opinion, the Court denied Barclays motion to

4    recover "margin assets related to exchange traded derivatives."

5    Despite this clear holding, Barclays' proposed order seeks to

6    exclude approximately 1.5 billion dollars of margin assets that

7    were held in the form of government securities with a maturity

8    of more than three months.

9           Barclays bases this carve-out on the Court's stated

10   understanding at the trial and in the opinion that "there was

11   no Lehman cash going to Barclays."  Barclays' focus is

12   particularly on that aspect of the opinion in attempting to

13   limit the relief to cash and cash equivalents, noting that the

14   term cash equivalents excludes government securities with

15   maturities greater than ninety days.  In effect, Barclays is

16   seeking a major change in the relief afforded in the opinion by

17   means of language in an implementing order.

18          To be sure, the opinion references as an important

19   factor in the Court's decision the various representations on

20   the record at the sale hearing that no Lehman cash was going to

21   Barclays.  As the Court pointed out during oral argument,

22   however, Barclays did not try to separately classify the margin

23   assets and did not raise the issue of its alleged entitlement

24   to long term government securities at trial.

25          Based on proceedings during the thirty-four day trial,

Page 10

1   the Court concluded that the margin assets consist of LBI

2   property used to support trading conducted by LBI on its own

3   behalf and on behalf of its customers and affiliates.  As

4   counsel to the SIPA trustee argued, the trial "was a fight

5   about margin and it was very clearly about all the margin."

6        That is clearly a correct statement and Barclays never

7   sought during the trial to distinguish the treatment of margin

8   based on the maturity date of the underlying securities.  In

9   the opinion, the Court recognized the two subparts of the APA's

10  definition of excluded assets that independently encompassed

11  the margin assets.  Clause B excludes all cash, cash

12  equivalents, bank deposits or similar cash items while clause N

13  excludes all assets primarily related to the IND business and

14  derivatives contracts.  All assets is a broad classification

15  that necessarily includes government securities.

16       Additionally, the opinion recognizes the clarification

17  letters carry forward of the asset purchase agreement's

18  exclusion of cash from the transaction and the very clear

19  representations at the sale hearing that Barclays would not be

20  taking any Lehman cash.

21       Specifically, paragraph 1(c) of the clarification

22  letter provides in relevant part that "except as otherwise

23  specified in the definition of purchased assets, excluded

24  assets shall include any cash, cash equivalents, bank deposits

25  or similar cash items."

08-13555-mg   Doc 17549   Filed 06/07/11   Entered 06/09/11 14:45:22   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 11 of 22

Page 11

1          The opinion also notes that the clarification letter

2     further specified that although LBI's government securities

3     trading operations were part of the business sold to Barclays,

4     the government securities themselves were excluded from the

5     sale.  Indeed, in its memorandum filed in support of its

6     proposed orders, Barclays recognizes that in certain places the

7     Court's opinion appears to go beyond the no cash limitation and

8     appears to hold that all ETD margin assets were excluded from

9     the sale.

10         That exclusion of all ETD margin assets is the proper

11     reading of the opinion.  The opinion, for the reasons stated

12     holds that the SIPA trustee is entitled to all of the margin

13     assets and Barclays is not entitled to receive or retain that

14     portion of the margin assets held in the form of government

15     securities with maturity of more than three months.

16         There is a subsidiary issue that was also argued on

17     May 9 involving clearly funds.  Barclays claims that the order

18     should provide for the identification and transfer to Barclays

19     of some 171 million dollars of clearing funds on deposit at the

20     OCC and an undetermined amount of residual clearing funds on

21     deposit at the CME.  Clearing funds are margin assets by

22     another name.  They are deposits that clearing corporations

23     require their members to deposit into a single pool to secure

24     all obligations of all clearing members.

25         LBI's clearing funds on deposit at the OCC and any

08-13555-mg    Doc 17549    Filed 06/07/11    Entered 06/09/11 14:45:22    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 12 of 22

Page 12

1   residual clearing funds on deposit at the CME apparently

2   consistent of government securities.  Barclays bases its claim

3   to LBI's clearing funds on the Court's holding that Barclays is

4   entitled to those margin assets that customers were required to

5   deposit and that were "held for the benefit of customers."

6            In the opinion, the Court explained that "various

7   regulations and rules require customers to deposit collateral

8   with their broker-dealer or with their futures commission

9   merchant to support trading of futures and options contracts."

10  and that "This collateral, which is deposited by customers with

11  a broker-dealer or futures commission merchant and held for the

12  benefit of customers constitutes the property that may be held

13  to secure obligations under the exchange trade of derivatives."

14  Barclays argues that because clearing funds like customers

15  deposits are funds that various regulations and rules require

16  to support trading of futures and options contracts on behalf

17  of customers, the Court should order all such funds transferred

18  to Barclays.

19           The Court agrees with the SIPA trustee's arguments

20  that clearing funds are not comparable to customer deposits and

21  are virtually indistinguishable from other margin assets.  The

22  clearing funds were specifically excluded from the sale by

23  virtue of the exclusion of all cash, cash equivalents, bank

24  deposits, or similar cash items and the clarification letters

25  specific exclusion of government securities.

1         In addition, and perhaps most importantly, the

2    clearing funds are LBI property and not property deposited by

3    customers.  Accordingly under the opinion, Barclays is not

4    entitled to any of the clearing funds.

5         I'll now address the setoff issue.  Barclays contends

6    that "To the extent the Court is going to order Barclays to

7    return margin assets to the trustee, it must also address the

8    extent to which Barclays is entitled to an offset or lien, or

9    similar right compensate it for liabilities it assumed and paid

10   as consideration for acquiring those margin assets."

11        Barclays bases this alleged setoff right on the

12   consideration it provided under the transfer and assumption

13   agreement which I'll call for these purposes the TAA and

14   Section 550 of the Bankruptcy Code.  As the SIPA trustee points

15   out, this is a new argument that appears to be inconsistent

16   with positions taken by Barclays at trial.  The TAA provided

17   that Barclays acquired all rights and obligations with respect

18   to LBI's accounts at the OCC as of the closing of the sale

19   transaction.  Barclays was to assume all of LBI's long and

20   short positions at the OCC and such rights and obligations

21   included all margin deposits in those accounts.

22        In the opinion, the Court stated that because the TAA

23   never was presented to the Court, it "cannot be dispositive to

24   the parameters of the deal that the Court approved."  Barclays

25   contends that in this respect, the opinion has the effect of

08-13555-mg   Doc 17549   Filed 06/07/11   Entered 06/09/11 14:45:22   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 14 of 22

Page 14

1   voiding the TAA at least insofar as the TAA on its face

2   transferred all margin deposits to Barclays.

3          But Barclays is stretching when it claims that the TAA

4   Was effectively voided.  The TAA was but one of the agreements

5   touching the same subject matter and a side agreement that was

6   never approved.  The trial made clear that the APA and the

7   clarification letter were the key documents that governed the

8   acquisition and under these documents and the proof presented

9   at trial, Barclays agreed to acquire both long and short

10  positions.  These linked positions may not be separated now.

11         Barclays attempt to use Section 550(a) of the

12  Bankruptcy Code is misplaced because no transfer was avoided

13  within the meaning of that section of the Bankruptcy Code.

14  Barclays was unable to establish its claims for the margin

15  assets but that is hardly the same as the avoidance of a

16  transfer into one of the avoiding powers of the bankruptcy

17  code.

18         Counsel to Barclays has argued that requiring Barclays

19  to assume the OCC accounts without the margin will take away

20  from Barclays "the quo for the quid that was being negotiated"

21  as part of the TAA.

22         However, as was pointed out by counsel to the trustee,

23  that very issue was tried before the Court at great length.

24  The Court specifically rejected Barclays' arguments and the

25  testimony of its expert witness that no rational purchaser

08-13555-mg    Doc 17549    Filed 06/07/11    Entered 06/09/11 14:45:22    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 15 of 22

Page 15

1    would undertake a deal of this kind without the margin assets

2    and awarded the margin assets to the trustee.

3        Barclays has maintained on a consistent basis that it

4    acquired both long and short positions and has not shown in its

5    recent submissions that it is entitled to any setoff with

6    respect to its obligation to return the margin assets.

7        I'll now turn to the question of prejudgment interest.

8    The trustee seeks prejudgment interest on the margin assets at

9    the nine percent interest rate applicable in New York pursuant

10   to the following state law claims included in his adversary

11   complaint.  Counts Two and Three seeking declaratory judgment

12   under 28 U.S.C. Section 2201 that the margin assets remain

13   property of the LBI estate and that the trustee is entitled to

14   the return of the cash already transferred to Barclays, Count

15   Eleven for breach of contract and Count Twelve for conversion,

16   money had and received.

17       Pursuant to a stipulation known as the adversary

18   complaint stipulation regarding certain claims made in the

19   adversary complaints filed by LBHI, the trustee and the

20   creditors committee, the parties agreed among other things,

21   that certain claims in the trustee's adversary complaint

22   including Counts Two and Three will be resolved in conjunction

23   with the resolution of the 60(b) motions.  And that other

24   claims including Counts Eleven for breach of contract and Count

25   Twelve for conversion would be deferred for further

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1    adjudication.

2         The trustee argues in his reply memorandum that it is

3    mandatory for the Court to award prejudgment interest on his

4    claims at the New York statutory rate of nine percent under

5    C.P.L.R. Sections 5001(a) and 5004.  At oral argument, however,

6    the trustee indicated that it was within the Court's discretion

7    to award interest at the New York statutory rate in connection

8    with his declaratory judgment claims and mandatory only with

9    respect to the conversion claims.

10        The trustee is not entitled to prejudgment interest in

11   the value of the margin assets at the New York statutory rate.

12   While the 60(b) trial required the Court to review and

13   interpret the APA, the clarification letter, and other sale

14   documents, the Court was dealing with and presiding over what

15   at its core is a bankruptcy dispute over the proper

16   interpretation of documents that were all drafted post-petition

17   in relation to sale orders, not a breach of contract or a

18   conversion claim under state law.

19        The parties agreed in the adversary complaint

20   stipulation that the breach of contract and conversion claims

21   would be deferred and such claims were not directly presented

22   to the Court.  Furthermore, while the parties stipulated that

23   the trustee's declaratory judgment claims would be resolved in

24   conjunction with the 60(b) motions, such claims are not state

25   law based.

08-13555-mg    Doc 17549    Filed 06/07/11    Entered 06/09/11 14:45:22    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 17 of 22

Page 17

1          The applicable New York State prejudgment interest

2    rate is particularly high relative to current market rates and

3    to apply that rate would greatly enhance the estate's recovery

4    while effecting a penalty as to Barclays.

5          This was a good faith business dispute and the

6    objective in establishing an appropriate interest rate should

7    be reasonable compensation to the estate for the period that it

8    did not have possession and control of the margin assets and

9    the ability to manage them.

10          The Court has discretion to award the trustee

11    prejudgment interest on his bankruptcy claims.  As noted by my

12    colleague, Judge Glenn in his decision in Mikhail v. Boulder

13    Capital, LLC in the matter of In Re: 1031 Tax Group, LLC 439 BR

14    84, Courts in the Second Circuit and in this district have

15    recognized that the award of prejudgment interest is

16    discretionary and should be awarded unless there is a sound

17    reason to deny it.  In exercising such discretion, the Court

18    should consider among other things, the need to fully

19    compensate the wronged party for actual damages suffered and

20    both the fairness and the relative equities of the award.

21    While there is a reference rate for post-judgment interest,

22    there is no fixed standard for the award of prejudgment

23    interest.

24          Because Barclays has had the benefit of holding margin

25    assets valued at approximately 2.1 billion dollars since the

Page 18

1    date of their transfer to Barclays, the Court finds the

2    prejudgment interest should be calculated from the date of

3    transfer as compensation for the loss of the estate's

4    possessory interest in this property and the ability to earn a

5    return in connection with investing those assets for the

6    benefit of creditors.

7            Accordingly, prejudgment interest should be calculated

8    from the closing date, September 22, 2008, the date the margin

9    assets were transferred to Barclays.

10           Determining an appropriate interest rate is also

11   within the discretion of the Court.  Upon weighing the facts

12   and circumstances of this case, and for reasons noted earlier,

13   the nine percent New York Statutory rate is deemed too high and

14   employing that rate would be excessive under the circumstances.

15           Conversely, the federal judgment rate which was only

16   1.69 percent at the time of the transfer is too low a rate of

17   return and is not adequate to fully compensate the LBI estate

18   for the loss of economic opportunities associated with

19   management of the margin assets.

20           A rate between these two extremes is a more suitable

21   measure of a reasonable prejudgment interest rate under the

22   circumstances presented.  The Court in exercising its

23   discretion concludes that it would be most appropriate to

24   derive an interest rate that is consistent with a benchmark

25   from the credit markets and that is based on the prime rate

Page 19

1    that was applicable at the time of the closing.

2              According to statistics published by the Board of

3    Governors of the Federal Reserve, which the Court has reviewed,

4    the bank prime loan interest rate on September 22, 2008 was

5    five percent.  Accordingly, the trustee shall be entitled to an

6    award of prejudgment of interest at the rate of five percent

7    with interest to accrue from September 22, 2008, the date of

8    the transfer of the margin assets to Barclays to the date of

9    entry of judgment.  Thereafter, interest shall accrue with the

10   then applicable post-judgment interest rate.

11             The trustee and Barclays shall submit an agreed order

12   that incorporates this bench ruling and all relevant agreements

13   between the parties concerning the form of the order.  All

14   orders including those submitted by LBHI and the committee

15   shall be docketed on the same date.  I will note that I have

16   those orders in chambers that I have just referenced and unless

17   there are changes to the forms of order to be proposed by

18   counsel for either the committee or LBHI, those are the orders

19   that I will enter.  That's the ruling of the Court.

20             My only question to the parties is whether we have

21   more business today to discuss.  Mr. Maguire, did you have

22   something?

23             MR. MAGUIRE:  I have nothing, Your Honor.

24             THE COURT:  Okay.  I'll simply ask that counsel order

25   a copy of the transcript of these proceedings and docket them

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 20

1    on the record.

2        MR. SCHILLER:  We have reached an understanding with

3    trustee's counsel.  Jonathan Schiller for Barclays, Your Honor,

4    excuse me.  And we'll add that to our order about the parties

5    wish a thirty-day period to resolve stay and bonding issues

6    pending appeal, Judge.  And we've agreed on that because we

7    need more than the automatic fourteen days.  Well include that

8    in the order for Your Honor.

9        THE COURT:  Okay.  I'll see whether or not I'll

10   actually approve that.  Why should we agree on thirty days?

11   This case has been pending for a year and a half.

12       MR. SCHILLER:  We've made a proposal to them on how to

13   handle the bonding issues and they're considering that and they

14   thought that that was an adequate period of time for us to

15   resolve that and avoid litigating the stay and bonding issues.

16       THE COURT:  I am certainly not going to stand in the

17   way of progress but the nature of the relief granted in the

18   opinion has been well known to the parties for a very long

19   time, at least since February and this is now June.  I don't

20   understand why the parties need that much time to deal with the

21   bonding issue or why they haven't discussed it earlier but I

22   will certainly consider the language when I see the order.

23   We're adjourned.

24       (Whereupon these proceedings were concluded at 2:28 p.m.)

25

Page 21

**I N D E X**

**R U L I N G S**

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Barclays is not entitled to | 3 | 13 |
| any of the clearing funds | | |
| | | |
| Barclays is not entitled to | 3 | 15 |
| any setoff with respect to its | | |
| obligation to return the margin assets | | |
| | | |
| Trustee shall be entitled to an award | 5 | 19 |
| of prejudgment of interest at the rate of | | |
| five percent with interest to accrue | | |
| from September 22, 2008 | | |

Page 22

1

2                    C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6          Linda Ferrara    Digitally signed by Linda Ferrara
                            DN: cn=Linda Ferrara, o, ou,
                            email=digital1@veritext.com,
                            c=US
7    _____ Date: 2011.06.07 13:11:08 -04'00'

8    LINDA FERRARA

9

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  June 6, 2011

17

18

19

20

21

22

23

24

25