**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | x<br>: | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.*,** | : | **08-13555 (JMP)** |
| Debtors. | :<br>:<br>x | **(Jointly Administered)** |

**OBJECTION OF CERTAIN NON-CONSOLIDATION PLAN PROPONENTS TO
MOTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS
PURSUANT TO SECTIONS 105(a) AND 1109(b) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 2019 AND 7026
TO ESTABLISH DISCLOSURE PROCEDURES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

       The undersigned Non-Consolidation Plan Proponents (the "Objecting Plan Proponents"),

by and through each of their respective undersigned counsel, hereby object to the Motion of the

Ad Hoc Group of Lehman Brothers Creditors Pursuant to Sections 105(a) and 1109(b) of the

Bankruptcy Code and Bankruptcy Rules 2019 and 7026 to Establish Disclosure Procedures (the

"Motion"),[1] and respectfully state as follows:

**OBJECTION**

    1.    Nearly three years after the commencement of these Chapter 11 cases, the Ad Hoc

Group of Lehman Brothers Creditors (the "Ad Hoc Committee") now asks this Court to enter an

order "establishing and implementing uniform disclosure procedures." Motion ¶ 4. Not content

with either the requirements imposed by rule 2019 ("Rule 2019") of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), which already apply in these proceedings, or

---

[1]    Although the Motion cites Rule 2019 in its title, the rule does not provide for the extensive, unprecedented disclosure sought in the Motion. By its terms, the Motion does not seek to compel 2019 disclosure against the Non-Consolidation Plan Proponents or any other party. In the event that any party seeks to compel compliance under Rule 2019 (or any other additional disclosure requirements) by the Non-Consolidation Plan Proponents, the Objecting Plan Proponents should have the opportunity to submit opposition papers and expressly reserve their rights to do so.

even the new amendments to Rule 2019 scheduled to take effect later this year, the Ad Hoc

Committee has freshly minted its own proposed disclosure rules that go far beyond any

requirements under existing law.[2] No judicial precedent supports this relief. Indeed, the Ad Hoc

Committee acknowledges that it "is not aware of similar rules being implemented in any other

cases." Motion ¶ 13.

2.    Putting aside for a moment the question of whether the Ad Hoc Committee's

proposal is a good idea (it is not), the proposed disclosure regime cannot be approved by this

Court as a matter of law. There is no legal basis for the relief requested in the Motion, and the

various authorities cited by the Ad Hoc Committee serve only to underscore this fact.

3.    Specifically, Rule 2019 imposes disclosure requirements "on every entity or

committee representing more than one creditor or equity security holder." Fed. R. Bankr. P.

2019(a). It does not impose any requirements on any of the four categories of persons who

would be affected by the Ad Hoc Committee's proposed new rules. That power is vested in

Congress, subject to the approval of the U.S. Supreme Court, as demonstrated by the recently

adopted amendment of Rule 2019, a process lasting over several years, and reflecting input from

a broad array of practitioners, academics, and legislators.

4.    Rule 2019 already provides disclosure procedures generally applicable in these

Chapter 11 proceedings, yet the Motion does not even attempt to apply Rule 2019. The Ad Hoc

---

[2]    The amendments to Rule 2019 recently adopted by the U.S. Supreme Court illustrate the excessive nature
of the information sought by the Ad Hoc Committee. Unlike the Ad Hoc Committee's proposed rule, the amended
rule would not require disclosures of detailed information with respect to claims trading. Nor would it require
disclosures by all persons involved in plan negotiation, plan discovery, competing plans or all persons who are
"cooperating" with another creditor. The proposed amended Rule 2019 was approved by the Judicial Conference on
September 14, 2010 and submitted this term to the U.S. Supreme Court, which adopted the amended rule. It will
become effective on December 1, 2011, unless blocked by Congress.

Committee concedes that Rule 2019 does not provide the basis for the disclosure regime it urges. Instead, the Ad Hoc Committee suggests three other sources of purported authority: Section 1109(b) of the Bankruptcy Code, Bankruptcy Rule 7026 and Section 105(a) of the Bankruptcy Code. None of these provides a basis for the extraordinary scope of the proposed disclosure.

5.    Section 1109(b) of the Bankruptcy Code actually precludes the requested relief. As the Ad Hoc Committee correctly observes, this provision "in unqualified terms" grants various parties, including a "creditor" the right to appear and be heard "on any issue" in a Chapter 11 case. Motion ¶ 29. To the extent that the Ad Hoc Committee would deny parties who meet the requirements of Section 1109(b)'s "unqualified terms" the right to be heard absent compliance with an unprecedented disclosure regime not conferred in the Bankruptcy Code or the Bankruptcy Rules, it is asking this Court to rewrite Section 1109(b) of the Bankruptcy Code.

6.    Bankruptcy Rule 7026 likewise provides no authority for the Motion. Bankruptcy Rule 7026 does not authorize the Court to require public disclosure of a creditor's claims against the estates outside of the discovery process. If parties seek discovery regarding a creditor's claims, those requests should be subject to the normal rules and protections of the Federal Rules of Civil Procedure. Moreover, the Court has already entered a largely consensual plan discovery order that contains a set of agreed-upon disclosures by plan proponents and discovery participants. *See* Order Establishing Schedule and Procedures In Connection with Discovery Related to Plan Confirmation and Other Issues [Docket No. 16003]. The Ad Hoc Committee itself agreed to these procedures. Hearing Transcript at 127-31, *In re Lehman Brothers Holdings, Inc. et al.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Apr. 13, 2011) [Docket No. 16085]. The Motion improperly asks the Court to revisit these disclosure requirements and impose new conditions on discovery participants.

7.      Section 105(a) of the Bankruptcy Code also provides no help for the Ad Hoc Committee.   Courts within this Circuit have "long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc., (In re Dairy Mart Convenience Stores, Inc.)*, 251 F.3d 86, 91-92 (2d Cir. 2003) (quoting *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963,99 L.Ed. 169 (1988)).    Section 105(a) "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Id.* at 92 (quoting *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).    The equitable power conferred on bankruptcy courts by section 105(a) is "the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Id.* (emphasis in original).    The mere fact that other sections of the Bankruptcy Code are "implicated" in the Ad Hoc Committee's motion is unavailing because section 105(a) does not authorize the granting of relief when a movant is not otherwise entitled to substantive relief under the sections so implicated. *See id.* at 92 ("Because no provision of the Bankruptcy Code may be successfully invoked in this case, section 105(a) affords [movant] no independent relief.").    The Ad Hoc Committee's argument that new rules – which have never been implemented in any case in the 34 years since the enactment of the Bankruptcy Code – are somehow needed to prevent "undermining of the integrity of the bankruptcy system" is not supported by experience or any other provision of the Bankruptcy Code.  Motion ¶ 34.

8.      The disclosures advocated by the Ad Hoc Group are broader and more burdensome than those contemplated by Rule 2019, and include, "at a minimum," the following:

- All holdings including those of affiliates broken down on a creditor legal entity basis and Lehman legal entity basis, including material foreign affiliates;

- Whether holdings are held solely of record or beneficially and, to the extent the power to vote such holdings is not under common control, how such voting power is divided;

- The nature of the claim, e.g., whether such claim is bond debt, a derivative claim, a guarantee claim, etc., and if such claim is a guarantee claim, the nature of the underlying primary claim and the basis for asserting the guarantee;

- Whether such claim was acquired or accrued prepetition or postpetition and, if such claim was acquired postpetition, the date of purchase and the price paid;

- Any agreements, whether oral or written, regarding the governance of any group of entities working together; and

- Any arrangements or agreements, whether oral or written, with respect to the sharing of fees and costs among parties.

Motion ¶ 23.

9.    The burden is amplified by the fact that the Ad Hoc Committee seeks to impose these detailed disclosure obligations upon a broad swath of parties in interest, that otherwise would never be subject even to Rule 2019's more limited requirements, much less to the proposed regime.    Indeed, the Ad Hoc Committee asks this Court to apply its proposed disclosure requirements upon all of the following:

- any plan proponent;

- any participant in plan discovery...;

- any parties acting in "cooperation or concert" with others in these cases whether or not represented jointly or by a single law firm or other advisors; and

- to the extent any formal plan negotiation process is ever implemented, whether by Court order, such as mediation,

> or by effort of the Debtors or the Creditors Committee, any
> party seeking to participate in any such negotiation.

Motion ¶ 4. By its own terms, the Ad Hoc Committee's disclosure procedures would require disclosure by affiliates, the Creditors Committee and individual creditors that are not members of a Rule 2019 committee. Motion ¶ 19.

10.   Even assuming that this Court has the power to adopt the Ad Hoc Committee's proposed rules (it does not), it should not do so, for two related reasons. First, the Ad Hoc Committee does not and cannot identify any material benefit whatsoever to be gained from the disclosure of claims information beyond what already appears in the claims registry, such as dates and prices of claims trades. Even if some minimal benefit could be articulated, it would be completely outweighed by the chilling effect that the proposed disclosure regime would have on participation in the bankruptcy process. Moreover, the detailed disclosures sought by the Ad Hoc Committee would cause substantial, genuine prejudice to certain parties in interest – especially dealers whose business it is to buy and sell claims – in that these parties' trading strategies and other sensitive commercial information would be disclosed to the world, including their competitors. In addition, the proposed regime would require disclosure from hundreds of affiliates of entities falling within one of the four categories set forth above, even if such affiliates themselves are not participating in the plan process. In light of these facts, the only rational conclusion to draw from the Motion is that the Ad Hoc Committee has asked for this information in order to harass or intimidate creditors, and discourage them from participating in plan discovery and negotiations.

11.   This unprecedented attempt to chill creditor participation is not only improper, but also squarely at odds with this Court's own directives. This Court has repeatedly encouraged

creditors to take an active role in coordinating with one another and to seek negotiated and efficient solutions to disputes, logistical and otherwise. For example, when numerous objections to the Debtors' proposed bar date order were filed, the Court requested parties to work together to achieve a consensual resolution. Hearing Transcript at 133, *In re Lehman Brothers Holdings, Inc. et al.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jun. 24, 2009) [Docket No. 4183] ("My wish list would be that an ad hoc committee of counterparty representatives were to form without portfolio. . . The debtor could sit with this self-anointed group – because I'm not going to appoint you. And you can spend some time in somebody's conference room talking about the issues the way an unbiased committee might talk about the issues. I'm not talking about litigation, I'm talking about designing a solution . . . ."). Likewise, the plan discovery protocol approved by the Court, which was itself developed through a collaborative process, relies on the effective coordination of a diverse array of stakeholders. Hearing Transcript at 134-36, *In re Lehman Brothers Holdings, Inc. et al.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Apr. 13, 2011) [Docket No. 16085] ("[T]he document that has been evolving over time and that is now before the Court is quite obviously a collaborative effort, an effort that has included the input of multiple parties-in-interest . . . I'm satisfied that this evolving order represents the best of what litigators and bankruptcy lawyers in this district are capable of generating."). The Court benefits from parties coordinating their efforts to provide common drafting and identification of legal issues and resolutions. Where their interests are aligned on a particular issue, the filing by multiple creditors of a single brief, rather than many, conserves precious judicial resources that would be wasted by having to read and hear the same arguments numerous times. To hold that creditors who have elected to follow this approach should be punished by having to make burdensome and

unwarranted disclosures regarding proprietary commercial information cannot be reconciled with the purposes of the Bankruptcy Code and the Bankruptcy Rules.

12.    The Bankruptcy Code favors broad participation in the reorganization process by all parties in interest. *See* 11 U.S.C. § 1109(b); S. Rep. No. 95-989 (1978) as reprinted in 1978 U.S.C.C.A.N. 5787, 5902 (Section 1109 "provides, in unqualified terms, that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest."). To limit creditors' ability to participate together would therefore undermine this fundamental right. *Cf. In re Szostek*, 886 F.2d 1405, 1414 (3d Cir. 1989) ("[C]reditors are obligated to take an active role in protecting their claims."); *In re Sweetwater, Inc.*, 836 F.2d 1263, 1267 (10th Cir. 1988) (same); *In re Record Club of America*, 38 B.R. 691, 696 (M.D. Pa. 1983) (stating that the Bankruptcy Code contemplates that concerned creditors will take an active role in protecting their claims).

13.    Rather than striking an appropriate balance between promoting transparency and encouraging participation in the bankruptcy process, the Ad Hoc Committee's proposal would impose onerous and unnecessary disclosure obligations on virtually the entire creditor body. The Motion seeks disclosures far out of proportion to those contemplated by the Bankruptcy Code and Rules, and should be rejected.

## RESPONSE TO DEBTORS' JOINDER

14.    The Debtors have filed a response joining the Motion and requesting approval of

the Motion as filed.  No motion under Rule 2019 is currently pending before the court; however,

to the extent that the Debtors allege that Rule 2019 requires disclosure by the Non-Consolidation

Plan Proponents, their position is contradicted both by the plain terms of Rule 2019 and by the

case law applying it.

15.    Rule 2019 expressly applies only to an "entity or committee representing more

than one creditor or equity security holder."  Had the drafters of Rule 2019 intended for all plan

proponents to be subject to the rule, as the Debtors urge, they would have written the rule to say

so.  Moreover, it is telling that the recent amendments to the rule contain no such requirement.

The Non-Consolidation Plan Proponents do not (and do not purport to) represent any such class

of stakeholders.  None of the Non-Consolidation Plan Proponents speaks for, has the ability to

bind, or owes any duties to any other creditors or equity security holders, including other Non-

Consolidation Plan Proponents.  To the contrary, the Non-Consolidation Plan Proponents consist

of 23 individual creditors, which are represented by multiple law firms.  The Non-Consolidation

Plan Proponents have no bylaws or internal governance procedures.

16.    The court cases applying Rule 2019 to ad hoc committees are distinct because

they involve groups that were committees, as indicated by the retention of single counsel, use of

internal governance procedures and/or their purported representation of other creditors.  *See, e.g.,*

*In re Philadelphia Newspapers, LLC*, 422 B.R 553, 563 (Bankr. E.D. Pa. 2010) (holding that an

informal committee that "does not represent any persons other than its members either by

consent or operation of law...is not a 'committee' under Rule 2019..."); *In re Washington*

*Mutual*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) (applying Rule 2019 to a committee that was represented by single counsel); *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (applying Rule 2019 to a committee represented by single law firm that took "its instructions from the Committee as a whole and represent[ed] one entity for purposes of the Rule").

17.    This Court has similarly applied Rule 2019 to the Ad Hoc Committee in this case. *See, e.g.,* Hearing Transcript at 56, *In re Lehman Brothers Holdings Inc., et al.*, No. 08-13555 (JPM) (Bankr. S.D.N.Y. April 13, 2011) (requiring the Ad Hoc Committee to make Rule 2019 disclosures after determining that the committee, which was represented by a single counsel, has for the past two years "purported to act not only for itself but as a voice of similarly situated creditors in the case").

18.    Because the Non-Consolidation Plan Proponents (i) do not purport to speak for any other creditor, (ii) lack a formal organizational structure, and (iii) have no single shared counsel, neither the plain terms of Rule 2019, nor the prior judicial decisions applying the rule, support its application to the Non-Consolidation Plan Proponents here.

## **CONCLUSION**

WHEREFORE, based on the foregoing, the Objecting Plan Proponents respectfully request that the Court deny the Motion.

Dated:  June 10, 2011
        New York, New York

*[Signature Pages Follow]*

Respectfully submitted,

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7000
Facsimile: (212) 752-5378
Joshua Dorchak
Joshua.dorchak@bingham.com


By: /s/ _____
        Joshua Dorchak
        A Member of the Firm

*(Attorneys for Deutsche Bank AG)*

**PAGE INTENTIONALLY LEFT BLANK**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Howard R. Hawkins, Jr.
Howard.Hawkins@cwt.com

- and -

700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg
Mark.Ellenberg@cwt.com
Peter Friedman
Peter.Friedman@cwt.com

By: /s/ _Peter Friedman_
      Peter Friedman
      A Member of the Firm

(*Attorneys for Morgan Stanley & Co. International plc. and
Morgan Stanley Capital Services Inc.*)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Thomas J. Moloney
tmoloney@cgsh.com
Sean A. O'Neal
soneal@cgsh.com

By: _____
     Thomas J. Moloney
     Sean A. O'Neal
     A Member of the Firm

*(Attorneys for D. E. Shaw Composite Portfolios, L.L.C.,*
*D. E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank USA,*
*and Goldman Sachs International)*

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Andrew Brozman
Andrew.Brozman@CliffordChance.com

By: /s/
     Andrew Brozman
     A Member of the Firm

*(Attorneys for Crédit Agricole CIB)*

CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
Richard Levin
RLevin@cravath.com

By: /s/ *Richard Levin*
    Richard Levin
    A Member of the Firm

(*Attorneys for Credit Suisse International*)

# PAGE INTENTIONALLY LEFT BLANK

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Irena M. Goldstein
igoldstein@DeweyLeBoeuf.com

By: /s/ *Irena M. Goldstein*
      Irena M. Goldstein
      A Member of the Firm

    (*Attorneys for The Royal Bank of Scotland plc*)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Jeffrey D. Saferstein
jsaferstein@paulweiss.com
Alan W. Kornberg
akornberg@paulweiss.com

By: /s/ *Jeffrey D. Saferstein*
        Jeffrey D. Saferstein
        A Member of the Firm

*(Attorneys for Oaktree Capital Management, L.P., solely in its
capacity as agent on behalf of certain funds advised by it or their
respective subsidiaries, and Silver Point Capital, L.P. on behalf of
its affiliated investment funds)*