Hearing Date and Time: June 15, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                         :
In re                                    :   Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :   08-13555 (JMP)
                                         :
                    Debtors.             :   (Jointly Administered)
                                         :
                                         :
------------------------------------------------------------x
```

### DEBTORS' REPLY TO LIMITED OBJECTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS TO THE DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT RELATING TO 1107 BROADWAY

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this reply to the Objection (defined below) to *LBHI's Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of Settlement Agreement Relating to Real Property Located at 1107 Broadway*, filed on May 25, 2011 [Docket No. 17129] (the "Motion").

US_ACTIVE:\43731134\04\58399.0003

**Preliminary Statement**

1.     The Motion seeks approval of a Settlement Agreement[1] that will allow LBHI to monetize its interest in certain property located at 1107 Broadway in Manhattan, while at the same time resolving three separate foreclosure actions, obtaining the withdrawal of proofs of claim with a face value of over $126 million, and obtaining releases for LBHI and its affiliates. A limited objection (the "Objection") to the Motion has been filed by the self-styled ad hoc group of creditors of the Debtors (the "Ad Hocs"), purporting to challenge the business justification for LBHI's entry into the Settlement Agreement. The Objection, however, fails to challenge the Debtors' showing that the Settlement Agreement meets the governing legal standard under Bankruptcy Rule 9019, namely that the Settlement Agreement is fair and equitable, in the best interests of LBHI's estate and well within the range of reasonableness.

2.     Instead, the Ad Hocs rely on a misleading presentation of the parties' potential recoveries, distortions of the terms of the Settlement Agreement, and pure speculation in a puzzling effort to persuade the Court and other parties in interest that LBHI would be better off foregoing a transaction that will result in significant benefits to LBHI's estate.

3.     The Ad Hocs also contend that the Motion does not contain a fulsome description the Debtors' (i) evaluation of the value of the Property, (ii) likelihood of success in the Foreclosures and other disputes with the Borrowers and the Guarantor, and (iii) estimation of LBHI's exposure with respect to the Proofs of Claim. Objection ¶ 24. While the Debtors' recognize that such information was significant in their evaluation of the merits of the Settlement Agreement, it is also the case that providing such disclosure as a matter of public record has the potential to chill the bidding at the Auction and, if the Settlement Agreement is not approved,

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

US_ACTIVE:\43731134\04\58399.0003              2

prejudice LBHI's position in the Foreclosures, in other disputes with the Borrowers and the Guarantor, and in connection with future objections to the Proofs of Claim.  Accordingly, the Debtors are in a catch-22: in order to provide the public disclosure sought by the Ad Hocs, the Debtors would be forced to disclose information that could prejudice their ultimate recoveries from the Property; if they fail to provide such public disclosure, they run the risk of not having the Settlement Agreement approved and missing out on an opportunity to secure substantial value for the benefit of LBHI's estate and its creditors.

        4.      The Debtors adopted a dual track approach to address these competing interests.  First, the Debtors tried to strike a balance in the Motion between providing disclosure regarding the considerations that influenced their decision to enter into the Settlement Agreement, while at the same time avoiding disclosures that might chill the bidding at the Auction or prejudice their position in their disputes with the Borrowers and the Guarantor.  Second, and more significantly, the Debtors engaged in substantial discussions of the Settlement Agreement, including detailed analysis of the disputes with the Borrowers and the Guarantor, with the professionals of the Official Committee of Unsecured Creditors (the "Creditors' Committee").  The Debtors were able to provide this information to the Creditors' Committee because, unlike the Ad Hocs, who are free to pursue their own narrow interests in these chapter 11 cases, the Creditors' Committee acts as a fiduciary for all of the Debtors' unsecured creditors.  *See, e.g.*, *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) (citing *The Bohack Corp. v. Gulf & Western Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n. 4 (2d Cir. 1979)).  Tellingly, the Creditors' Committee, and its professionals, who have been involved in the Debtors' deliberations regarding 1107 Broadway since April of 2010, support the Debtors' entry into the Settlement Agreement.

5. In light of the business justification set forth in the Motion and the Declaration of Jeffrey Fitts filed in support thereof, as well as the support of the Creditors' Committee, the Objection should be overruled, and the Motion granted.

**The Objection Misrepresents the Terms of the
Settlement Agreement and the Business Justification Therefor**

**1. The Ad Hocs' Recovery Analysis is Flawed**

6. The Ad Hocs' principal argument for challenging the propriety of the Settlement Agreement, that Lehman stands to recover approximately 47 cents on the dollar on its investment while the Borrowers will recover at least 45 cents on the dollar on their equity investment, is based on misleading assumptions and does not accurately reflect the parties' likely recoveries under the Settlement Agreement.

7. In calculating LBHI's percent recovery, the Ad Hocs divided the base price that LBHI is due under the Settlement Agreement ($142.5 million) by an estimate of Lehman's total interest in the Property (approximately $300 million). This comparison is deficient for a number of reasons. First, the Ad Hocs include taxes and other carrying costs in their calculation of Lehman's total interest in the Property, but fail to include such amounts in the base price that LBHI is due under the Settlement Agreement – even though the Settlement Agreement plainly provides that LBHI is reimbursed for taxes and other carrying costs before any other distributions are permitted.

8. Similarly, in calculating the Borrower's recovery, the Ad Hocs neglect to account for the fact that the Settlement Agreement provides for the withdrawal of the Proofs of Claim (over $126 million) or the waiver of the Borrowers' post-petition claims relating to the Property – including claims relating to the Debtors alleged failure to fund a draw request of the

Borrowers that occurred shortly after the Commencement Date.[2]  Nor do they take into consideration the fact that the Borrowers have assumed many of the costs and expenses related to the Auction, including incurring the significant legal expenses associated with the negotiation of confidentiality agreements with potential purchasers.  While the Debtors do not concede that any liability exists with respect to the Proofs of Claim, the alleged failure to fund, or any other matter, it is disingenuous for the Ad Hocs to ignore such contingencies in their recovery analysis.

9.  Further, while the Ad Hocs make much of the fact the Borrowers are entitled to half of the proceeds of the Auction above $161.5 million, they ignore the fact that LBHI is entitled to the other half of any such proceeds.  Indeed, the Ad Hocs appear to be focused more on limiting the Borrowers' recoveries than they are on maximizing value for LBHI's estate and its creditors.  LBHI's duty, however, is to strike the best deal possible under the circumstance, not to engage in a war of attrition with counterparties that will ultimately reduce recoveries for all parties.  Indeed, this portion of the Settlement Agreement was heavily negotiated and resulted from the Debtors' insistence on a fulsome auction process.  The Borrowers, who were concerned about the impact of an auction on the deal with L&L, only consented to test the transaction in the market when the Debtors allowed them to share in the upside.  Splitting the Auction proceeds above $161.5 million, therefore, was the price that the Debtors were required to pay in order to implement a sale process that promises to maximize LBHI's recoveries from its interests in the Property.

---

[2] For the avoidance of doubt, nothing contained herein shall be construed as an acknowledgement by LBHI of any liability to the Borrowers or the Guarantor and LBHI expressly reserves the right to contest any claims of any of the Borrowers or the Guarantor for any reason.

### 2. The Ad Hocs' View of LBHI's Litigation Position Is Incomplete

10. The Ad Hocs' second argument, that the Settlement Agreement undervalues LBHI's litigation position in the Foreclosures and with respect to the Guaranties, is similarly misguided. For obvious reasons, the Motion contained a limited discussion of the Debtors' view of the merits of the Borrowers' and the Guarantor's defenses. Such information could, after all, prejudice LBHI's litigation position if the Court does not approve the Settlement Agreement and LBHI is forced to revive the Foreclosures and pursue the Guarantor. It should be noted, however, that if the Foreclosures go forward, Borrowers have indicated that they intend to raise a number of issues, including Lehman's alleged failure to fund the Borrowers' post-petition draw request. Likewise, if LBHI is required to litigate its claims against the Guarantor, the Guarantor can be expected to offer a determined defense. While LBHI does not concede that there is merit to the Borrowers' or the Guarantor's arguments, the Ad Hocs' position that the Foreclosures and the litigation regarding the Guaranties will be quick and risk free is mistaken. It should also be noted that the Creditors' Committee, which has been apprised of all of the issues relating to LBHI's litigation position with respect to the Foreclosures and the Guaranties, supports LBHI's entry into the Settlement Agreement.

### 3. The Ad Hocs' Suggestion that LBHI Abandon the Settlement Agreement in Favor of a Speculative Future Transaction Is Ill-Advised

11. The Ad Hoc's next argument, that LBHI should forego its settlement with the Borrowers in favor of a speculative future transaction, is also ill-advised. The Property consists of a partially-constructed, mostly vacant building. As such, the Property is subject to physical deterioration at a higher rate than a building that is fully occupied, heated and properly maintained. Such deterioration will reduce the value of the property and could expose LBHI to additional liability for personal injury claims. More importantly, there is a favorable transaction

in place for the Property now and, particularly in light of the uncertainty that currently characterizes the real estate market, there is no guarantee that LBHI will be able to find another purchaser after completing the Foreclosures, which could be many months from now. This risk is especially acute in light of the fact that LBHI believes L&L has obtained a tenant for a substantial portion of the Property. It is unlikely that a different purchaser, without a substantial tenant in hand, would be willing to offer a comparable price for the Property.

12.    Further, the Ad Hoc's suggestion that "there is currently a buyer for the Property in its present condition, and, upon information and belief, others are likely to express an interest in acquiring the Property" is both misleading and speculative. *See* Objection ¶21. The Ad Hocs are correct that there is currently a buyer – contingent on Court approval of the Settlement Agreement. Absent a settlement of the disputes between LBHI and the Borrowers, it is very unlikely that any purchasers will be interested in acquiring LBHI's interests in the Property without applying a steep discount to account for the necessity of litigation with the Borrowers and the Guarantor. Additionally, the Ad Hocs offer no support for their contention that other parties are willing to purchase LBHI's interest in the property in its current state. In sum, the Ad Hoc's suggestion that LBHI abandon a transaction that offers significant benefits in favor of a speculative transaction is irrational and not in the best interests of LBHI's estate and its creditors.

**4.    The Ad Hocs' Analysis of the Value of the
       Withdrawal of the Proofs of Claim Is Misleading**

13.    The Ad Hocs' final argument, that the Settlement Agreement is not justified based on the withdrawal of the Proofs of Claim, is misleading. According to the Ad Hocs, the only way the Settlement Agreement would be justified is if the Borrowers and the Guarantor were expected to obtain a $100 million judgment against LBHI, because the

Borrowers and the Guarantor would then be entitled to the same $19 million that is due to them pursuant to the Settlement Agreement (after application of the discount that allowed unsecured claims are currently expected to receive under the Debtors' chapter 11 plan). *See* Objection ¶ 23. This argument, however, completely ignores the fact that the withdrawal of the Proofs of Claim is only one component of the Settlement Agreement and cannot fairly be evaluated in isolation. Instead, consideration of the Settlement Agreement must include <u>all</u> of its benefits including: (i) the base sale price, (ii) the recovery by LBHI of taxes and carrying costs incurred in connection with the property, (iii) the potential for additional recoveries pursuant to the Auction, (iv) the avoidance of costly and time consuming litigation, (v) the waiver of all of the Borrowers and Guarantor's claims against LBHI related to the Property (including post-petition claims), and (vi) the withdrawal of the Proofs of Claim.

14. In light of the undeniable benefits that will accrue to LBHI's estate and its creditors pursuant to the Settlement Agreement, LBHI's entry into the Settlement Agreement is well within the standards required by Bankruptcy Rule 9019 and should be approved.

**The Settlement Agreement Is In The Best Interest of LBHI's Estate and Its Creditors and Satisfies The Standards For Approval Under Bankruptcy Rule 9019**

15. "A decision to either accept or reject a compromise and settlement is within the sound discretion of the Court." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged," *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007), "because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate." *Inv. Exch. Group, LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC)*, Adv. Proc. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. Aug. 23, 2007).

16. While a bankruptcy court may "consider a creditor's objection to [a] proposed compromise, the objection is not controlling, and will not bar approval when a review of the settlement shows it does not 'fall below the lowest point in the range of reasonableness.'" *Drexel*, 134 B.R. at 505 (internal citations omitted). "When assessing a compromise and settlement, [a court is] not obligated to determine and rule upon disputed facts and questions of law, but rather only to 'canvass' the issues." *Id*. (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). "Further, the Court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. "[A court] may give weight to the informed judgment of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable. *Id*.

17. In determining whether a particular settlement is fair and reasonable, bankruptcy courts in this Circuit generally consider the following factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *see also, Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

18.     The first two *Iridium* factors each require the Court to balance the merits of the settlement – including the risks and expenses attendant to foregoing the settlement – against the likely value of the claims being surrendered pursuant to the settlement. As discussed above, LBHI is mindful of the fact that any description it provides of the risks associated with the Foreclosures, the litigation that would be required to enforce the Guarantees, or the litigation that would be required to resolve the Proofs of Claim, could be prejudicial to its litigation position in those matters if the Settlement Agreement is not approved. Suffice it to say that, while the Debtors believe that LBHI has a strong litigation position in each of these matters, they are not without risk and will almost certainly require substantial time and expense and could result in something less than LBHI's full recovery of its interest in the Property. Further, given the disclosure provided to the Creditors' Committee during the negotiations that resulted in the Settlement Agreement, this is not a situation where a debtor is seeking approval of a settlement that has not been vetted by creditors. *See Iridium*, 478 F.3d at 461 (noting that Bankruptcy Rule 9019 has a "clear purpose . . . to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court."). Accordingly, the first two *Iridium* factors weigh in favor of approving the Settlement Agreement.

19.     The third and fourth *Iridium* factors, which relate to creditor support for the settlement, also militate in favor of approving the Settlement Agreement. Out of all of LBHI's tens of thousands of creditors, only the Ad Hocs have expressed any concern regarding the Settlement Agreement. More importantly, the Creditors' Committee, which has been fully apprised of issues relating to the Settlement Agreement, has offered its full support. Unlike the Ad Hocs, who pursue their own narrow interests in these chapter 11 cases, the Creditors' Committee has a fiduciary duty to maximize value for all unsecured creditors. Accordingly, the

Creditors' Committee's opinion of the Settlement Agreement is far more probative of the "paramount interest of creditors" than the parochial sentiments of the Ad Hocs, whose interests in this transaction may or may not be aligned with other creditors.

20. The fifth factor is likely to be a wash. Both sides are represented by competent counsel and, given the complexities of the transaction and the impossibility of predicting the outcome of the litigation that would occur if the Settlement Agreement is not approved, as well as the uncertainty of the real estate market, reasonable minds could disagree on the best possible strategy for the disposition of LBHI's interest in the Property. That said, the fact that such disagreement exists among competent counsel is indicative of the fact that the Settlement Agreements is far above the "lowest point in the range of reasonableness." *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (noting that "the task of the bankruptcy judge was not to determine whether the settlement was the best that could have been obtained, something that neither [the judge] nor we can ever know") (quoting *Grant*, 699 F.2d at 608).

21. The sixth and seventh factors, which are directed at insider transactions, weigh in favor of the Settlement Agreement. As described above, the Settlement Agreement was negotiated over a period of fourteen months by unrelated parties represented by experienced counsel and LBHI's officers and directors are not receiving special releases.

22.     Accordingly, for all of the reasons set forth above, the Debtors have met their burden of establishing that the Settlement Agreement is well above the lowest point in the range of reasonableness, is fair and reasonable, and should be approved.

WHEREFORE the Debtors respectfully request that the Court (i) overrule the Objection, (ii) enter the Order granting the Motion, and (iii) grant the Debtors such other or further relief as is just.

Dated:  June 13, 2011
        New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession