Hearing Date and Time: June 15, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: June 8, 2011 at 4:00 p.m. (Prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                                : Chapter 11 Case No.
                                                     :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,             : 08-13555 (JMP)
                                                     :
Debtors.                                             : (Jointly Administered)
                                                     :
                                                     :
------------------------------------------------------------x

**DECLARATION OF RONALD DOOLEY IN SUPPORT OF
MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO SECTION 363 AND 105(a) OF THE BANKRUPTCY CODE
FOR AUTHORITY TO (I) SELL TWO PORTFOLIOS OF GINNIE MAE
REVERSE MORTGAGE LOANS TO METLIFE AND (II) ASSIGN ALL
RIGHTS AND DELEGATE ALL OBLIGATIONS THEREUNDER**

Pursuant to 28 U.S.C. § 1746, I, Ronald Dooley, declare:

1.  I submit this declaration in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Section 363 and 105(A) of the Bankruptcy Code for Authority to (I) Sell Two Portfolios of Ginnie Mae Reverse Mortgage Loans to Metlife and (II) Assign All Rights and Delegate All Obligations Thereunder* [Docket No. 17059] (the "Motion")[1] filed on March 22, 2011 in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its debtor affiliates (collectively, the "Debtors").

2.  I am a Director at Alvarez and Marsal North America, LLC ("A&M") and since May 2009 have been working at LBHI. I am currently serving as a Vice President in the Residential & Structured Products Group, and in that capacity, I supervise the other employees in the group and oversee the assets managed by the group. From 1997 until I joined A&M, I worked at Scotia Capital. I have either been actively involved, or have overseen Lehman

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

employees who have been actively involved, in finalizing the terms of the transactions described in this Declaration and in the Motion.

## The Marketing of the HECM Loans

3. Because of the retained funding and repurchase obligations with respect to the HECM Loans, beginning in late 2009, Aurora began marketing the HECM Loans on behalf of LBHI. Due to the unique nature of HECM Loans, the market for such loans is very limited, with only a small number of Ginnie Mae approved issuers active in the market. Aurora, on behalf on LBHI, initiated discussions with MetLife, the servicer of the HECM Loans and at least one other potential purchaser, each of whom, at the time, were active in the market and considered to be viable potential purchasers.

4. In 2010, Aurora and LBHI expanded their marketing efforts for the HECM Loans. At that time, marketing efforts were focused on those potential purchasers that had been approved, or were in the process of obtaining approval, by Ginnie Mae to potentially assume LBHI's issuer status for the HECM Loans and therefore most able to close a sale of the HECM Loans.

5. These marketing efforts identified only two eligible purchasers interested in the HECM Loan portfolio, one of which was MetLife. In or around January 2011, LBHI solicited bids from both of these potential purchasers. An active bidding process followed, and in or around April 2011, LBHI instructed both potential purchasers to submit their highest and best bid for the assets.

6. Upon review of the final bids submitted by each entity, LBHI, in its business judgment, and in consultation with its financial advisors, determined that the bid submitted by MetLife was superior. This conclusion was reached, in part, because in LBHI's

judgment, MetLife, as the current Ginnie Mae approved servicer of the HECM Loans, presented significantly a lower execution risk.

### **Conculsion**

7.  The marketing of the HECM Loans and the negotiation of the Sale Agreement were conducted in good faith and at arms'-length. LBHI's entry into the Sale Agreement and its consummation of the sale of the HECM Loans will provide LBHI with an estimated $43.4 million, a significant recovery on account of its interest in the HECM Loans. Further, consummation of the sale will enable LBHI to rid itself of the obligation to continue to fund the loans and to repurchase certain of the participation interest in the loans, which will save the estate significant funds. I have concluded, in consultation with other members of the A&M working group, Aurora and their respective advisors, that the transactions contemplated by the Motion and the Sale Agreement are in the best interest of the Lehman estate.

8.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 13th day of June, 2011.

/s/ Ronald Dooley
Ronald Dooley