Hearing Date: June 15, 2011 at 10:00 a.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                                                                    :
In re:                                                              :   Chapter 11 Case No.
                                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,                              :   08-13555 (JMP)
                                                                    :
                        Debtors.                                    :   (Jointly Administered)
                                                                    :
------------------------------------------------------------------- x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
CONNECTION WITH LEHMAN BROTHERS HOLDINGS INC.'S MOTION
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR APPROVAL OF SETTLEMENT AGREEMENT RELATING
TO REAL PROPERTY LOCATED AT 1107 BROADWAY**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. and each of its affiliated debtors in possession (collectively, the

"Debtors") hereby files this statement in connection with the Debtors' Motion Pursuant to

Sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy

Procedure for Approval of Settlement Agreement Relating to Real Property Located at 1107

Broadway, dated May 25, 2011 (Docket No. 17129, the "Motion").[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**STATEMENT**

1. The Motion seeks authorization for an immediate sale of the Property and approval of a settlement of disputes between LBHI and the Borrowers. Pursuant to the terms of the settlement and sale (together, the "Transaction"), L&L will serve as a stalking horse bidder for the Property with an initial bid price of $161.5 million, plus transfer taxes and any carry costs LBHI has incurred with respect to the Property, of which $142.5 million will be allocated to LBHI and $19 million will be allocated to the Borrowers. The proceeds in excess of the stalking horse bid and the break-up fee, if any, will be allocated among LBHI and the Borrowers on a 50/50 basis. LBHI contends that the Transaction will allow it to maximize the value of its interests in the Property and avoid the expense and delay of prosecuting contested foreclosure actions with respect to the Property and the litigation in connection with the Proofs of Claim, and is thus in the best interests of the Debtors' estates and creditors.

2. The Committee also believes that the Transaction represents the best available option for the Debtors' estates to liquidate their interest in the Property under the circumstances, taking into consideration, among other things, the fact that the Debtors have been trying to liquidate this interest for more than two years and have been unable to do so.

3. The Debtors' options are limited: they could, for example, have continued to pursue the foreclosure actions (the "Foreclosure Litigation") they have commenced. However, it is unclear how long the Foreclosure Litigation would take and how much it would cost. Specifically, he Borrowers and their guarantor (the "Guarantor") have filed the Proofs of Claim, which assert claims against the Debtors relating to the prepetition dealings between the Debtors and the Borrowers and seek more than $126 million in damages. In the absence of a settlement, the litigation engendered by the Proofs of Claim would likely have prevented an

expeditious conclusion of the Foreclosure Litigation or any consensual resolution of the overall dispute.

4. The prospects were no more promising on the business side. Based upon its diligence, the Committee concluded that the Property had minimal viability in its current condition and would likely require substantial redevelopment. Thus, even if the Foreclosure Litigation could have been expeditiously resolved, the Debtors, as the post-foreclosure owners of the Property, would have been required, either alone or with a joint venture partner, to invest substantial time and money in the redevelopment and marketing of the Property, while still being saddled with the overhang of the claims asserted against the them in the Proofs of Claim and uncertain prospects for recovery from the Guarantor.

5. The Transaction represents the Debtors' third and most viable option. Under its terms, both the litigation and business risks confronting the Debtors with respect to the Property and Proofs of Claims were fully and favorably addressed. A motivated stalking horse bidder was brought to the table, on terms and under circumstances likely to elicit higher and better offers, while the Borrowers and the Guarantor relinquished more than $125 million in claims in exchange for consideration likely to be equal to 10% to 15% of the market value of the underlying assets. While generous to the Borrowers, the Transaction is a classic compromise, granting both sides less than that to which they believed they are entitled and, thus, entailing a sound exercise of the Debtors' business judgment.

6. The Court should so conclude, notwithstanding the fact that the Ad Hoc Group of Lehman Brothers Creditors (the "<u>Ad Hoc Group</u>") has challenged the soundness of the Debtors' business judgment with respect to the Transaction. As set forth in the Limited Objection of the Ad Hoc Group of Lehman Brothers Creditors to the Debtors' Motion to

Approve Settlement Agreement Relating to 1107 Broadway, dated June 8, 2011 (Docket No. 17518), the Ad Hoc Group objects to the Motion on, among other grounds, its belief that the Transaction provides too much consideration to the Borrowers while requiring no contribution at all from the Guarantor.  (Ad Hoc Group Limited Objection ¶ 1).

7.  While the Committee understands the concerns that the Ad Hoc Group has articulated about the value that will flow to the Borrowers, the Committee continues to believe that this is an acceptable price to pay under the unique circumstances of this matter, for three overarching reasons.

8.  <u>First</u>, the risks, duration, and cost of the Foreclosure Litigation and related litigation over the Proofs of Claim are presently unknown and, thus, unquantifiable.  While the Ad Hoc Group appears to have a more sanguine view of the Debtors' prospects for success than do the Debtors and the Committee, no one can predict with accuracy how, when and at what cost such litigation could be resolved.  The Debtors have been seeking to foreclose on another significant Manhattan property, 25/45 Broad Street, against an all-but-insolvent borrower with similar counterclaims against the Debtors for more than two years, without closure and at a cost in terms of litigation and interim operating expenses in the tens of millions of dollars.  Absent a settlement , a similar outcome could be expected with respect to the Property.

9.  <u>Second</u>, delay could have equally unpredictable consequences.  Were the Debtors to wait, as the Ad Hoc Group suggests, and play out the Foreclosure Litigation and the litigation in connection with the Proofs of Claim over a two- to five-year period, the value of the Property might increase; but it could also decrease.  While most economic indicators suggest that real estate prices have turned a corner and are unlikely to reach new lows, this prognosis is far from assured.

4

10. The value offered by the Transaction is $40 million higher than the amount of a settlement offer made by the Borrowers last year and well above LBHI's internal marks on the Property since filing for bankruptcy. The Debtors should be permitted to harvest their investment at a price point they can reasonably believe may never be seen again.

11. <u>Finally</u>, the Transaction offers unique synergies that may not remain available to the Debtors forever. Upon information and belief, L&L, the stalking horse bidder, owns an interest in a property (200 Fifth Avenue) directly adjacent to the Property and it may be able to enhance its investment by making space available to one of more tenants in both properties. This circumstance makes L&L a bidder uniquely motivated to consummate the Transaction on terms and at price levels likely to make the rest of the Transaction even more attractive to the Borrowers and the Guarantor, thereby all but eliminating execution risk. Thus, the opportunity to sell the Property in its current condition to L&L likely represents a unique opportunity for LBHI's estate to liquidate its interest in the Property, which opportunity, if not acted upon expeditiously, could be lost forever.

12. In light of all the foregoing, the Committee believes that the Debtors' decision to enter into the Settlement Agreement and authorize the sale of the Property represents a sound exercise of the Debtors' business judgment and should be approved by the Court.

5

**CONCLUSION**

For all the foregoing reasons, the Committee respectfully requests that the Court grant (i) the relief requested in the Motion and (ii) such other relief as is just.

Dated:   New York, New York
         June 13, 2011

**MILBANK, TWEED, HADLEY & M<sup>c</sup>Coy LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.