WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Mindy J. Spector
Peter Gruenberger
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                        :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

### OMNIBUS REPLY IN SUPPORT OF DEBTORS' MOTION TO EXTEND STAY OF AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

                Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors in possession (together, the "Debtors," and collectively with their

non-Debtor affiliates, "Lehman"), file this reply to the objections interposed to the Debtors'

motion, dated May 27, 2011, to extend the stay of avoidance actions and grant certain related

relief [Docket No. 17195] (the "Motion")[1] and respectfully represent:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

## Reply

1.      On October 20, 2010, the Court entered the Initial Stay Order, staying all Avoidance Actions for nine months.  During the eight months in which the Stay has been in effect, the Debtors have made substantial progress resolving Avoidance Actions, as well as avoidance claims subject to tolling agreements, by reaching consensual resolutions with more than 140 parties through settlements, dismissal of complaints, and termination of tolling agreements.  The Debtors' resolution of such claims, in consultation with the Creditors' Committee, without prosecuting time-consuming and costly litigation, demonstrates the effectiveness and importance of the Stay.  As noted in the Motion, the Court has observed that the Stay was "designed to benefit the entire administration of the Lehman cases" and is "beneficial."  Tr. of Hr'g, Feb. 16, 2011, at 147:20-21, 24.  Indeed, the Stay has promoted judicial economy and minimized the burdens that would have been imposed on the Court had the Debtors been compelled to litigate these actions immediately.

2.      Without an extension, the Stay will expire on July 20, 2011, and the Debtors will be forced to divert their resources from negotiating and soliciting acceptances regarding a confirmable chapter 11 plan and actively continuing to pursue consensual resolutions of the Avoidance Actions to responding to discovery demands, engaging in motion practice and preparing for contested proceedings and trials.  Not only would wide-scale litigation of the Avoidance Actions at this juncture drain the Debtors' resources, it would also monopolize the Court's docket and potentially delay confirmation of a chapter 11 plan.

3.      In the Motion, the Debtors requested that the Stay be extended for an additional nine months, without prejudice to requests for further extensions.  Following discussions with the Creditors' Committee, the Debtors have agreed to modify their request and

seek a six-month extension of the Stay, without prejudice to requests for further extensions. Such an extension balances the interests of the Debtors, the Avoidance Action Defendants, and all parties in interest. Clean and blacklined copies of the revised proposed order (the "Proposed Order") reflecting the requested six-month extension to the Stay are attached hereto as Exhibit A and Exhibit B, respectively.

4.      The Stay is an integral part of the Court's implementation of ADR procedures in these cases, specifically the Derivatives ADR Procedures that provide for non-binding mediation related to the Debtors' derivative contracts with recovery potential, and the procedures approved under the SPV Derivatives ADR Order (the "SPV Derivatives ADR Procedures"), which provide for similar non-binding mediation where the relevant counterparty is an SPV. The Derivatives ADR Procedures have been an unqualified success in these cases. The ADR process has resulted in the Debtors' estates recovering more than 759.8 million new dollars as a result of 84 ADR settlements with 95 counterparties, all without litigation.

5.      The SPV Derivatives ADR Procedures adopted by the Court are more particularized than the Derivatives ADR Procedures and are necessary to address the complicated structure of the SPV transactions. Since entry of the SPV Derivatives ADR Order in March, the Debtors have been able to commence ADR proceedings with numerous SPV counterparties, using the specially tailored procedures to bring parties into the process who were out of reach under the Derivatives ADR Procedures. Fundamentally, however, the SPV Derivatives ADR Procedures, which apply only to transactions already the subject of a pending litigation, are intended to accomplish the same results as the hugely successful Derivatives ADR Procedures by providing a framework for the resolution of derivatives transactions with SPV counterparties.

6.      To be similarly successful, these procedures need to be given more than the mere three months since their approval, uninterrupted by piecemeal appeals, to have their desired effect.  In fact, the Debtors cannot proceed to mediation under the SPV Derivatives ADR Procedures until the SPV designates a party with settlement authority, and the SPV has 60 days to do so.  Moreover, counterparties have 75 days from service of an SPV ADR notice to serve a response.  These provisions are protective measures that ensure that the parties responding to an SPV ADR notice have adequate notice and an opportunity to respond.  Given that these measures require additional time to implement compared to the Court's other ADR procedures, Debtors likewise need additional time to fully utilize these procedures with respect to SPVs.

7.      It is in this context that the *Objection of U.S. Bank National Association as Trustee to Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 8, 2011 [Docket No. 17501] (the "U.S. Bank Objection") and the *Limited Objection of the Liquidators of Lehman Brothers Australia Limited to Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief*, dated June 8, 2011 [Docket No. 17511] (the "LB Australia Objection," and, together with the U.S. Bank Objection, the "Objections") should be considered.  U.S. Bank National Association, as Indenture Trustee and/or Owner Trustee ("U.S. Bank") serves as the trustee for several derivatives transactions involving SPVs, some of which are the subject of the Avoidance Actions.  Stephen Parbery and Marcus Ayers, in their capacity as the court-appointed liquidators of Lehman Brothers Australia Limited ("LB Australia"), are noteholders that hold interests in five series of notes under a synthetic debt repackaged note issuance program known as the "Dante Programme."  In addition, LB Australia contends that it

4

is the subject of third-party claims in Australia related to its role as placement agent for the sale

of Dante notes.  Notably, these two objectors have already aired before the Court the very same

grievances that they set forth in the Objections.

8.      It is telling that even though the Stay would affect over 360 parties to the

Avoidance Actions, only two Objections were filed – one of which, the LB Australia Objection,

was not filed by a party to an Avoidance Action.  Thus, only one party out of the hundreds

affected has objected to the extension of the Stay.  The import of this is self-evident:  the

overwhelming majority of the parties to the Avoidance Actions are willing to attempt to resolve

these actions consensually and do not seek a costly resumption of active litigation.  The Court

should overrule the Objections and extend the Stay for six months.

## The U.S. Bank Objection

9.      In U.S. Bank's objection to the initial motion to stay the Avoidance

Actions (the "First U.S. Bank Objection," and, together with the U.S. Bank Objection, the "U.S.

Bank Objections"),[2] U.S. Bank urged the Court to deny the Debtors' request for a stay;

alternatively, in the event the Court granted a stay, U.S. Bank urged the court to, inter alia, limit

any stay to six months (without prejudice to the Debtors' ability to apply for an extension), toll

all applicable statutes of limitations between parties to the litigation, and bar the Debtors from

seeking monetary damages from U.S. Bank in SPV transactions where U.S. Bank already had

made distributions to noteholders.  In the Initial Stay Order, the Court overruled the First U.S.

Bank Objection, rejecting U.S. Bank's request for denial of the stay outright and the alternative

relief requested.  The Court imposed the Stay for nine months.

---

[2] *Objection of U.S. Bank National Association as Trustee to Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Stay Avoidance Actions and Grant Certain Related Relief*, dated October 13, 2010 [Docket No. 11964].

10.     Employing virtually identical arguments as those made in the First U.S. Bank Objection, U.S. Bank now urges the Court to deny the Debtors' request for extension of the Stay; alternatively, in the event the Court extends the Stay, U.S. Bank urges the Court to, <u>inter alia</u>, limit any such extension to three months, toll all applicable statutes of limitations between certain parties to the litigation (*nunc pro tunc* to the date the Stay was initially imposed), and bar the Debtors from seeking monetary damages from U.S. Bank in SPV transactions where U.S. Bank already had made distributions to noteholders.  The Debtors' revised request for a six-month extension to the Stay represents a healthy compromise between the three-month extension to the Stay for which U.S. Bank lobbies and the Debtors' original request for a nine-month extension to the Stay.

11.     In urging the Court not to extend the Stay or grant its alternative relief, U.S. Bank repeats the virtually identical legal arguments it made in opposition to the Debtors' motion seeking entry of the Initial Stay Order.  Besides the Court's decision in *In re Lehman Brothers Holdings Inc.*, 2001 WL 1831779 (Bankr. S.D.N.Y. May 12, 2011) ("*Ballyrock*"), which, as discussed below, U.S. Bank cites solely for its potential impact on the Avoidance Actions and not for any specific legal proposition tied to whether the Stay should be extended, U.S. Bank does not cite any new cases in support of its rehashed arguments beyond the cases it cited in the First U.S. Bank Objection.[3]  U.S. Bank also made similar legal arguments at the hearing where the Court considered the Debtors' motion seeking entry of the Initial Stay Order. The Court already has considered and rejected U.S. Bank's legal arguments on the merits, and

---

[3] In response to the First U.S. Bank Objection, the Debtors' responded comprehensively to the arguments set forth by U.S. Bank.  *See Omnibus Reply in Support of Debtors' Motion to Stay Avoidance Actions and Grant Certain Related Relief*, dated October 18, 2010 [Docket No. 12052] (the "<u>Debtors' First Reply</u>").  The Debtors' First Reply is incorporated as if fully set forth herein.  In addition, U.S. Bank's contention in the U.S. Bank Objection that the stay in *Delphi* was not extended is nonsensical considering that no time limit was specified for the stay in the first instance.

the Court should do so again. U.S. Bank also argues, without any legal support whatsoever, that the Debtors should be held to a higher standard of proof than what was presented to justify the Initial Stay Order. *See* U.S. Bank Objection, at 3. The Court should reject this unsupported argument.

12.    U.S. Bank argues in the U.S. Bank Objection that the recent decisions by this Court, *Ballyrock* and *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Ltd (In re Lehman Brothers Holdings Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) ("*Perpetual*"), prejudice its right to be heard because other adversary proceedings were not stayed and have resolved similar issues. This argument is at best specious. There may be hundreds of potential transactions that raise similar legal issues. Yet, that does not mean that the Court should hear each of the parties to these hundreds of actions before deciding any legal issue. That suggestion would create a logistical nightmare for the Debtors and the Court. U.S. Bank made virtually identical arguments in the First U.S. Bank Objection, and the Court overruled those objections. Similarly, the current Objection should be overruled now. As U.S. Bank acknowledges, the *Ballyrock* case involves "facts and circumstances . . . in connection with those specific matters," and the *Ballyrock* case was filed well before the Avoidance Actions were filed. Moreover, the *Ballyrock* decision could have been issued even if the Avoidance Actions had never been stayed. Similarly, the expiration of the Stay will not preclude the Debtors from litigating other derivatives-related matters, where appropriate.

13.    U.S. Bank has objected consistently to every effort on behalf of the Debtors to resolve the thousands of disputes in these cases in an orderly fashion, indicating its clear preference for litigation. In general terms, U.S. Bank has argued that, as a trustee, it is entitled to increased protections, or outright exemption, from relief sought by the Debtors for

authorization to implement various procedures, including those providing for (i) assumption and

assignment of certain agreements, (ii) purchase and sale of certain assets, (iii) objections to

claims, (iv) resolution and settlement of disputes, and (v) alternative dispute resolution.  A

schedule setting forth a partial list of the responses filed by U.S. Bank to such procedures is

attached hereto as Exhibit C.

14.     The SPV Derivatives ADR Procedures were a needed supplement to the

Court's initial Derivatives ADR Procedures.  Before the creation of the SPV Derivatives ADR

Procedures, there had been a lack of clarity as to which parties to these transaction had

obligations to participate in ADR proceedings due to the complicated structure of the SPVs.

Many of the SPVs, which are the Debtors' direct counterparties, refused to engage in discussions

with the Debtors.  Previously, in certain cases, the SPV trustees also have refused to negotiate,

arguing that they lacked authority to do so.

15.     The SPV Derivatives ADR Procedures are designed to solve these

problems, and these procedures should be given the chance to succeed.  Recently, despite its

appeal of the SPV Derivatives ADR Order, *see U.S. Bank, N.A. v. Lehman Brothers Holdings*

*Inc.*, Case No. 1:11-cv-02720 (LTS), [Docket No. 1] (S.D.N.Y. Apr. 21, 2011), U.S. Bank has

served requisite notices of authorized designees, identifying the parties with whom the Debtors

may negotiate in connection with mediations under the SPV Derivatives ADR Order in

connection with several disputes.  While the designations do not conform to the SPV Derivatives

ADR Order in every respect, they do represent progress, and with an extension of the Stay, the

parties will be afforded the additional opportunity to make progress in other matters.

16.     Nevertheless, U.S. Bank characterizes the Debtors' desire for "continued

efforts towards consensual resolutions" as an "empty justification" for extending the Stay, but

8

such a baseless allegation runs counter to the progress the Debtors are making.  The Court has

implemented reasonable and sensible case management procedures so as to control its docket,

and U.S. Bank's apparent preference for litigation is not a justification for circumventing those

procedures.

17.    U.S. Bank also restates another argument that it originally set forth in the

Initial U.S. Bank Objection:  purportedly, the Stay may make it difficult to track down the

recipients of any alleged transfers.  The reprise of the same argument here, however, makes even

less sense because it ignores that the Court, in its order dated October 25, 2010, Adv. Pro. No.

10-3547 (JMP) [Docket No. 27] (the "Expedited Discovery Order"), permitted the Debtors to

conduct expedited discovery in the Distributed Action to investigate and determine the identities

of parties that received distributions of assets, which the Debtors have been doing for the past

eight months with substantial success.  Since the Expedited Discovery Order was entered, the

Debtors have been diligently conducting discovery by sending out hundreds of discovery

requests and subpoenas to parties and non-parties.  To date, the Debtors have discovered the

identities of over 121 additional entities that have received distributions.  Accordingly, U.S.

Bank's concern that it will not be able to track down the recipients of any alleged transfers has

already been addressed by the Debtors' utilizing the Court's Expedited Discovery Order.

Moreover, nothing in the Stay precludes U.S. Bank from conducting its own independent

investigations to identify any such recipients to the extent it believes such action is necessary.

### The LB Australia Objection

18.    LB Australia requests that Adversary Proceeding No. 10-3545 (JMP)

("Adversary Proceeding 3545") be exempted from the Stay.  LB Australia, which is not a party

to Adversary Proceeding 3545, was denied leave to intervene in that proceeding and has since

appealed that decision.  LB Australia wants Adversary Proceeding 3545 to proceed to litigation

because, it alleges, a significant number of claims against its estate derive from its role as placement agent for the sale of certain notes that are also the subject of the Avoidance Actions. LB Australia argues that it cannot administer its estate until the notes are valued and any alleged damages from such claims are ascertained. *See* LB Australia Objection, at ¶ 8.

19.     LB Australia would have the Court believe that it simply seeks to exempt one discrete action from the ambit of the Stay. To the contrary, Adversary Proceeding 3545 involves over 100 known defendants, many of whom are foreign defendants that have submitted to the jurisdiction of the United States courts, and hundreds of millions of dollars. If the Stay is not extended as to Adversary Proceeding 3545, then the Debtors would find themselves in active litigation with all of those defendants, expending time and effort on discovery and motion practice and, perhaps, litigating numerous legal issues that may pertain to other Avoidance Actions. In short, the "limited" exception sought by LB Australia would wind up defeating the whole purpose of the Stay. It is simply neither practicable nor feasible to carve Adversary Proceeding 3545 out of the Stay, while preserving the benefits of the Stay for the Debtors and their estates.

20.     Moreover, the LB Australia Objection should be rejected because LB Australia is not a "party in interest" under section 1109(b) of the Bankruptcy Code and, therefore, lacks standing to assert this Objection. Under section 1109(b), a "party in interest" is "one who has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) (internal quotations omitted).

21.     Two recent cases, including one controlling decision from the Second Circuit, *Refco*, and *In re Innkeepers USA Trust*, 2011 WL 1206173 (Bankr. S.D.N.Y. 2011), dictate that LB Australia lacks standing to bring this Objection. *Refco* involved a dispute

between Sphinx SPC ("Sphinx"), a Cayman Islands investment company, and chapter 11

debtors.  Days before Refco's bankruptcy, approximately $300 million in "Sphinx accounts" at a

Refco entity were returned to Sphinx.  *Refco*, 505 F.3d at 112.  Claiming that this was a

preferential transfer, the Refco creditors' committee brought an adversary proceeding against

Sphinx.  *Id*.  The parties settled the adversary proceeding, and Sphinx agreed to return $263

million to the estate.  *Id*.  Investors in Sphinx objected to the settlement, arguing that it was the

product of "collusion and fraud" between "Refco . . . and Sphinx" due to "Refco's control over

Sphinx.  *Id*. at 113.

> 22.     The Second Circuit held that the Sphinx investors were not parties in

interest under section 1109 and lacked standing to object to the settlement because "[b]ankruptcy

court is a forum where creditors and debtors can settle their disputes with each other.  Any

internal dispute between a creditor and that creditor's investors belongs elsewhere."  *Id*. at 118.

As the Second Circuit recognized, allowing disputes between a creditor's investors and the

creditor or the debtor to heard in the bankruptcy court would "potentially over-burden the

reorganization process by allowing numerous parties to interject themselves into the case on

every issue, thereby thwarting the goal of a speedy and efficient reorganization."  *Id*. (internal

quotations and citations omitted).  The Second Circuit further noted that the investors "may still

have remedies for fraud perpetrated by their fiduciaries" in Sphinx's management, such as a

direct lawsuit against those parties.  *Id*. at 119.

> 23.     In *Innkeepers*, the bankruptcy court applied *Refco* to an entity with an

interest nearly identical to LB Australia's interest here, holding a special purpose vehicle's

noteholder was not a party in interest under section 1109.  *Innkeepers*, 2011 WL 1206173, at *9-

10.  Specifically, the court addressed an objection by Appaloosa, a hedge fund, to a motion by

the debtor to establish, among other things, bidding procedures. *Id*. at *4-5. Appaloosa owned interests in a "real estate mortgage investment conduit (a REMIC)" which "holds mortgage loans . . . in trust and issues securities to investors in the secondary . . . market in the form of certificates representing beneficial interests in these trusts." *Id*. at *5. The REMICs at issue owned a substantial loan to the debtor, making Appaloosa "an investor in a creditor." *Id*. at *8. These REMICs were governed by "Servicing Agreements" and a party, the "special servicer," was authorized to represent the interests of all of the REMICs' investors. *Id*. at *5.

24.    In concluding that Appaloosa was not a party in interest, the court stated that "Appaloosa has no privity or other relationship with the Debtors which would confer on it standing" because "in a securitization, the investors' relationship is with the special purpose vehicle holding the assets and the right to payment comes from the cash generated by the assets, not from the debtor . . . ." *Id*. at *8. Citing to *Refco*, the court concluded that as "creditor of [the REMICs,] a creditor," Appaloosa "is not a party in interest . . . ." *Id*.

25.    Here, LB Australia, like the investors in Sphinx or Appaloosa, is an investor in an SPV, which is not even a creditor of the Debtors, but a party that Debtor Lehman Brothers Special Financing Inc. ("LBSF") believes owes it money. LB Australia's direct right to payment comes from the SPV, not from the Debtors. Accordingly, as an investor in a counterparty to LBSF, LB Australia is not a party in interest under section 1109. *See Refco*, 505 F.3d at 118-19; *Innkeepers*, 2011 WL 1206173, at *8-10.

26.    Allowing investors in a debtor's counterparty, like LB Australia, to have standing to object in bankruptcy proceedings could lead to a flood of such parties interjecting themselves into bankruptcy proceedings, delaying and disrupting an efficient reorganization or distribution of assets, as the *Refco* and *Innkeepers* courts recognized. *See Refco*, 505 F.3d at 118;

*Innkeepers*, 2011 WL 1206173, at *9 ("Granting standing to a certificateholder would . . . inevitably serve to delay and complicate bankruptcy cases as debtors are forced to litigate issues with additional parties who previously were contractually obligated to speak with one voice, that of the special servicer.").

27.     Notably, the LB Australia Objection does not even allege that LB Australia is a party in interest in these cases that has standing or a right to be heard on any issues arising therein.  As a stranger to these chapter 11 cases, with purely its own parochial interests in mind, LB Australia should not be permitted to jeopardize the case management tools implemented by the Court to address the Debtors' vast portfolio of Avoidance Actions. Furthermore, none of the actual parties to Adversary Proceeding 3545 objected to extension of the Stay, suggesting that they prefer that attempts at a consensual resolution be exhausted before proceeding to litigation.

<u>**Conclusion**</u>

28.     The Stay has been enormously beneficial to the resolution of numerous actions and an extension of that Stay is an integral part of the implementation of the Court's ADR procedures in these cases.   In that vein, the Debtors respectfully request that the Court extend the Stay for an additional six months so that, among other things, the ADR procedures have a continued opportunity for success.  Lastly, neither U.S. Bank nor LB Australia expressly

13

addressed the Debtors' request to extend the deadline for service of process, and the Debtors ask

that such request be granted.

WHEREFORE the Debtors respectfully request that the Court overrule the

Objections, enter the Proposed Order, and grant the Debtors such other and further relief as is

just.

Dated: June 13, 2011
       New York, New York

/s/ Jacqueline Marcus
Mindy J. Spector
Peter Gruenberger
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit A to Reply</u>**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :       **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,         :       **08-13555 (JMP)**
                                                    :
                          **Debtors.**              :       **(Jointly Administered)**
                                                    :
                                                    :
-------------------------------------------------------------------x

### ORDER EXTENDING THE STAY OF AVOIDANCE ACTIONS AND GRANTING CERTAIN RELATED RELIEF PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1)

Upon the motion, dated May 27, 2011 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together, the "Debtors"), pursuant to section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 4(m) of the Federal Rules of Civil

Procedure, as incorporated and made applicable hereto by Rule 7004(a)(1) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), to extend the stay for each of the adversary

proceedings identified on Exhibit 1 hereto and any other avoidance actions that may be

commenced by the Debtors under sections 544, 545, 547, 548, 549, 550 and/or 553 of the

Bankruptcy Code (collectively, the "Avoidance Actions") and to grant certain related relief, all

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court

having entered the *Order Staying Avoidance Actions and Granting Certain Related Relief*

*Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated

October 20, 2011 [Docket No. 12199] (the "Initial Stay Order"); and due and proper notice of the

Motion having been provided in accordance with the procedures set forth in the amended order

entered June 17, 2010 governing case management and administrative procedures [Docket No.

9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for

the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission;

(iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) each of

the known and identified defendants to the Avoidance Actions or their agents or representatives

(the "Avoidance Action Defendants"), and it appearing that no other or further notice need be

provided; and objections to the Motion and the relief requested therein having been interposed

(the "Objections"); and a reply to the Objections having been filed by the Debtors; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

       ORDERED that the Objections are overruled; and it is further

       ORDERED that the Motion is granted; and it is further

ORDERED that the Stay imposed by the Initial Stay Order is hereby extended for a period of six (6) months to January 20, 2012, without prejudice to the Debtors' ability to request further extensions; and it is further

ORDERED that the Debtors shall have until the later of August 30, 2011 or the time otherwise prescribed by the Bankruptcy Rules to complete service of the applicable summons and complaint on each of the Avoidance Action Defendants, without prejudice to the Debtors' ability to request further extensions; and it is further

ORDERED that, except as set forth herein, all other terms and provisions of the Initial Stay Order shall remain unaltered and in full force and effect; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2011
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1 to Proposed Order**

**(Schedule of Pending Avoidance Actions)**

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| 10-03542 (JMP) | **TRUSTEE DEFENDANTS**<br><br>U.S. BANK NATIONAL ASSOCIATION<br>BANK OF AMERICA NATIONAL ASSOCIATION<br>DEUTSCHE BANK TRUST COMPANY AMERICAS<br>THE BANK OF NEW YORK MELLON TRUST COMPANY NATIONAL ASSOCIATION<br>WELLS FARGO BANK NATIONAL ASSOCIATION<br><br>**ISSUER DEFENDANTS**<br><br>AIRLIE CDO I, CORP.<br>AIRLIE CDO I, LTD.<br>AIRLIE LCDO I (AVIV LCDO 2006-3)<br>CORP, AIRLIE LCDO I (AVIV LCDO 2006-3), LTD.<br>AIRLIE LCDO II (PEBBLE CREEK 2007-1), CORP.<br>AIRLIE LCDO II (PEBBLE CREEK 2007-1), LTD.<br>AVIV LCDO 2006-1, CORP.<br>AVIV LCDO 2006-1, LTD.<br>AVIV LCDO 2006-2, CORP.<br>AVIV LCDO 2006-2, LTD.<br>BALBOA CDO I, CORP.<br>BALBOA CDO I, LTD.<br>BELLE HAVEN ABS CDO 2005-1, LLC<br>BELLE HAVEN ABS CDO 2005-1, LTD.<br>BELLE HAVEN ABS CDO 2006-1, LLC<br>BELLE HAVEN ABS CDO 2006-1, LTD.<br>EXUM RIDGE CBO 2006-1, CORP.<br>EXUM RIDGE CBO 2006-1, LTD.<br>EXUM RIDGE CBO 2006-2, CORP.<br>EXUM RIDGE CBO 2006-2, LTD.<br>EXUM RIDGE CBO 2006-4, CORP.<br>EXUM RIDGE CBO 2006-4, LTD.<br>EXUM RIDGE CBO 2006-5, CORP.<br>EXUM RIDGE CBO 2006-5, LTD.<br>EXUM RIDGE CBO 2007-1, CORP.<br>EXUM RIDGE CBO 2007-1, LTD.<br>EXUM RIDGE CBO 2007-2, CORP.<br>EXUM RIDGE CBO 2007-2, LTD.<br>GEMSTONE CDO VI CORP.<br>GEMSTONE CDO VI LTD.<br>GREYSTONE CDO SERIES 2008-4 LLC<br>GREYSTONE CDO SPC, FOR THE ACCOUNT OF THE SERIES 2008-4 SEGREGATED PORTFOLIO<br>PEBBLE CREEK LCDO 2006-1, CORP.<br>PEBBLE CREEK LCDO 2006-1, LTD.<br>PEBBLE CREEK LCDO 2007-3, LLC<br>PEBBLE CREEK LCDO 2007-3, LTD.<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06- 1-I TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-1-II TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-1-III TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-2-I TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-2-II TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-2-III TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-20AT TRUST<br>SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3), LTD.<br><br>TRADEWINDS II CDO SERIES 2006-1 LLC<br>TRADEWINDS II CDO SPC, FOR THE ACCOUNT OF THE SERIES 2006-1 SEGREGATED PORTFOLIO<br>WHITE MARLIN CDO 2007-1, CORP.<br>WHITE MARLIN CDO 2007-1, LTD |
| 10-03544 (JMP) | THE BANK OF NEW YORK MELLON TRUST CO., NATIONAL ASSOCIATION, as Trustee<br>LIBERTY SQUARE CDO I, CORP.<br>LIBERTY SQUARE CDO I, LTD. |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| | LIBERTY SQUARE CDO II, LTD.<br>LIBERTY SQUARE CDO II, CORP., as Issuers |
| 10-03545 (JMP) | **TRUSTEE DEFENDANTS**<br><br>THE BANK OF NEW YORK MELLON CORPORATION<br>BNY CORPORATE TRUSTEE SERVICES LIMITED<br><br>**ISSUER DEFENDANTS**<br><br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2005-2<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2005-7<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2005- 11<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2005-14<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2005-16<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-5<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-6<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-10<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-11<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-13<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-14<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-15<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-16<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2006-17<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-1<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-2<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-3<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-4<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-5<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-7<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-8<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-10<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-11<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-13<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-14<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-15<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-16<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-17<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2007-19<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-2<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-3<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-4<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-5<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-6<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-7<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-8<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-9<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-10<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-11<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-12<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-13<br>BERYL FINANCE LTD. AS ISSUER OF SERIES 2008-14<br>DIADEM CITY CDO LTD. AS ISSUER OF SERIES 2008-1<br>DIADEM CITY CDO LTD. AS ISSUER OF SERIES 2008-2<br>DIADEM CITY CDO LTD. AS ISSUER OF SERIES 2008-3<br>JUPITER QUARTZ FINANCE PLC AS ISSUER OF SERIES 2004-1<br>JUPITER QUARTZ FINANCE PLC AS ISSUER OF SERIES 2004-2<br>LION CITY CDO LTD. AS ISSUER OF SERIES 2006-1<br>LION CITY CDO LTD. AS ISSUER OF SERIES 2006-2<br>LION CITY CDO LTD. AS ISSUER OF SERIES 2006-3<br>LION CITY CDO LTD. AS ISSUER OF SERIES 2006-5<br>ONYX FUNDING LTD. AS ISSUER OF SERIES 2004-1<br>ONYX FUNDING LTD. AS ISSUER OF SERIES 2005-1 |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| | ONYX FUNDING LTD. AS ISSUER OF SERIES 2006-1 |
| | ONYX FUNDING LTD. AS ISSUER OF SERIES 2008-1 |
| | PEARL FINANCE PLC AS ISSUER OF SERIES 2003-6 |
| | PEARL FINANCE PLC AS ISSUER OF SERIES 2003-8 |
| | QUARTZ FINANCE PLC AS ISSUER OF SERIES 2003-1 |
| | QUARTZ FINANCE PLC AS ISSUER OF SERIES 2003-3 |
| | QUARTZ FINANCE PLC AS ISSUER OF SERIES 2003-4 |
| | QUARTZ FINANCE PLC AS ISSUER OF SERIES 2005-1 |
| | QUARTZ FINANCE PLC AS ISSUER OF SERIES 2005-2 |
| | RUBY FINANCE PLC AS ISSUER OF SERIES 2004-2 |
| | RUBY FINANCE PLC AS ISSUER OF SERIES 2004-3 |
| | RUBY FINANCE PLC AS ISSUER OF SERIES 2006-5 |
| | RUBY FINANCE PLC AS ISSUER OF SERIES 2007-3 |
| | RUBY FINANCE PLC AS ISSUER OF SERIES 2008-1 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2004-4 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2004-12 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2005-1 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2005-3 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2005-4 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2005-10 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2005-11 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2006-2 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2006-3 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2006-10 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2007-5 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2007-7 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2007-9 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-1 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-6 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-7 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-8 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-9 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-10 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-11 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-12 |
| | SAPHIR FINANCE PLC AS ISSUER OF SERIES 2008-13 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-1 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-2 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-3 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-5 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-6 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-8 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-9 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-10 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-14 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-15 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-16 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-17 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-18 |
| | ZIRCON FINANCE LTD. AS ISSUER OF SERIES 2007-19 |
| 10-03546 (JMP) | THE BANK OF NEW YORK MELLON TRUST CO. NATIONAL ASSOCIATION, as Trustee<br>TIAA STRUCTURED FINANCE CDO I, LTD., as Issuer<br>TIAA STRUCTURED FINANCE CDO I, LLC, as Co-Issuer |
| 10-03547 (JMP) | TRUSTEE DEFENDANTS<br><br>BANK OF AMERICA NATIONAL ASSOCIATION<br>THE BANK OF NEW YORK MELLON NATIONAL ASSOCIATION<br>BNY CORPORATE TRUSTEE SERVICES LTD.<br>CITIBANK, N.A. |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| | DEUTSCHE BANK TRUST COMPANY AMERICAS<br>U.S. BANK NATIONAL ASSOCIATION<br>U.S. BANK TRUST NATIONAL ASSOCIATION<br>WELLS FARGO BANK NATIONAL ASSOCIATION<br><br>ISSUER DEFENDANTS<br>801 GRAND CDO SPC, f/a/o THE SERIES 2006-1, as Issuer<br>801 GRAND CDO SERIES 2006-1 LLC, as Co-issuer<br>801 GRAND CDO SPC, f/a/o THE SERIES 2006-2, as Issuer<br>801 GRAND CDO SERIES 2006-2 LLC, as Co-issuer<br>ALTA CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>ALTA CDO LLC, FOR SERIES 2007-1, as Co-issuer<br>ALTA CDO SPC, f/a/o THE SERIES 2007-2 SEGREGATED PORTFOLIO, as Issuer<br>ALTA CDO LLC, FOR SERIES 2007-2, as Co-issuer<br>BARTON SPRINGS CDO SPC, f/a/o THE SERIES 2005-1 SEGREGATED PORTFOLIO, as Issuer<br>BARTON SPRINGS CDO SERIES 2005-1 LLC, as Co-Issuer<br>BARTON SPRINGS CDO SPC, f/a/o THE SERIES 2005-2 SEGREGATED PORTFOLIO, as Issuer<br>BARTON SPRINGS CDO SERIES 2005-2 LLC, as Co-issuer<br>BLUE POINT CDO SPC, f/a/o THE SERIES 2005-1 SEGREGATED PORTFOLIO, as Issuer<br>BLUE POINT CDO SERIES 2005-1 LLC, as Co-issuer<br>BLUE POINT CDO SPC, f/a/o THE SERIES 2005-2 SEGREGATED PORTFOLIO, as Issuer<br>BLUE POINT CDO SERIES 2005-2 LLC, as Co-issuer<br>CHERRY HILL CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>CHERRY HILL CDO LLC THE SERIES 2007-1, as Co-issuer<br>CHERRY HILL CDO SPC, f/a/o THE SERIES 2007-2 SEGREGATED PORTFOLIO, as Issuer<br>CHERRY HILL CDO LLC FOR SERIES 2007-2, as Co-issuer<br>COPPER CREEK CDO SPC, f/a/o SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>COPPER CREEK CDO LLC, as Co-issuer<br>CROWN CITY CDO 2005-1 LIMITED, as Issuer<br>CROWN CITY CDO 2005-1 LLC, as Co-Issuer<br>CROWN CITY CDO 2005-2 LIMITED, as Issuer<br>CROWN CITY CDO 2005-2 LLC, as Co-issuer<br>FREEDOM PARK CDO SERIES 2005-1 LIMITED, as Issuer<br>FREEDOM PARK CDO SERIES 2005-1 LLC, as Co-issuer<br>FULLERTON DRIVE CDO LIMITED, as Issuer<br>FULLERTON DRIVE CDO LLC, as Co-issuer<br>GREYSTONE CDO SPC, f/a/o THE SERIES 2006-1 SEGREGATED PORTFOLIO, as Issuer<br>GREYSTONE CDO SERIES 2006-1 LLC, as Co-issuer<br>GREYSTONE CDO SPC, f/a/o THE SERIES 2006-2 SEGREGATED PORTFOLIO, as Issuer<br>GREYSTONE CDO SERIES 2006-2 LLC, as Co-issuer<br>JEFFERSON VALLEY CDO SPC, f/a/o THE SERIES 2006-1 SEGREGATED PORTFOLIO, as Issuer<br>JEFFERSON VALLEY CDO SERIES 2006-1 LLC, as Co-Issuer<br>KINGS RIVER LIMITED, as Issuer<br>KINGS RIVER LLC, as Co-issuer<br>LAKEVIEW CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>LAKEVIEW CDO LLC SERIES 2007-1, as Co-issuer<br>LAKEVIEW CDO SPC, f/a/o THE SERIES 2007-2 SEGREGATED PORTFOLIO, as Issuer<br>LAKEVIEW CDO LLC, f/a/o THE SERIES 2007-2 SEGREGATED PORTFOLIO, as Co-issuer<br>LAKEVIEW CDO SPC, f/a/o THE SERIES 2007-3 SEGREGATED PORTFOLIO, as Issuer<br>LAKEVIEW CDO LLC, f/a/o THE SERIES 2007-3 SEGREGATED PORTFOLIO, as Co-issuer<br>PANTERA VIVE CDO SPC, f/a/o THE SERIES 2007-1, as Issuer<br>PANTERA VIVE CDO LLC, as Co-issuer<br>PEBBLE CREEK LCDO 2007-2, LTD., as Issuer<br>PEBBLE CREEK LCDO 2007-2, LLC, as Co-issuer<br>PENN'S LANDING CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>PENN'S LANDING CDO LLC, as Co-issuer<br>PHOENIX 2002-1 LIMITED, as Issuer<br>PHOENIX 2002-1 LLC, as Co-issuer<br>PHOENIX 2002-2 LIMITED, as Issuer<br>PYXIS ABS CDO 2007-1 LTD., as Issuer<br>PYXIS ABS CDO 2007-1 LLC, as Co-issuer<br>QUARTZ FINANCE PLC, as Issuer |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| | RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2005-19-C TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2005-21-C TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-1-C TRUST<br>RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2007-4-C TRUST<br>RAACLC TRUST, SERIES 2003-A<br>RUBY FINANCE PLC, f/a/o THE SERIES 2006-4, as Issuer<br>RUBY FINANCE PLC, f/a/o THE SERIES 2007-1, as Issuer<br>SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LIMITED SPC,<br>  f/a/o THE SERIES 2007-1 FEDERATION A-1 SEGREGATED PORTFOLIO, as Issuer<br>SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LIMITED SPC,<br>  f/a/o THE SERIES 2007-1 FEDERATION A-2 SEGREGATED PORTFOLIO, as Issuer<br>SOLAR V CDO SPC, f/a/o THE SERIES 2007-1 SEGREGATED PORTFOLIO, as Issuer<br>SOLAR V CDO LLC, as Co-issuer<br>STOWE CDO SPC, f/a/o THE SERIES 2006-1SEGREGATED PORTFOLIO, as Issuer<br>STOWE CDO SERIES 2006-1 LLC, as Co-issuer<br>STOWE CDO SPC, f/a/o THE SERIES 2008-2A SEGREGATED PORTFOLIO, as Issuer<br>STOWE CDO LLC, as Co-Issuer<br>SUNSET PARK CDO LIMITED SPC, f/a/o THE SERIES 2005-5 SEGREGATED PORTFOLIO, as Issuer<br>SUNSET PARK CDO SERIES 2005-5 LLC, as Co-issuer<br>SUNSET PARK CDO SERIES 2005-6 LIMITED, as Issuer<br>SUNSET PARK CDO SERIES 2005-6 LLC, as Co-issuer<br>SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LIMITED SPC,<br>  f/a/o THE SERIES 2007-1 TABSPOKE (07-1 40-100) SEGREGATED PORTFOLIO, as Issuer<br>SERIES 2007-1 TABSPOKE (07-1 40-100) LLC, as Co-issuer<br>TAVARES SQUARE CDO LIMITED, as Issuer<br>TAVARES SQUARE CDO LLC, as Co-issuer<br>TAYLOR CREEK LIMITED, as Issuer<br>TAYLOR CREEK LLC, as Co-issuer<br>VOX PLACE CDO LIMITED, as Issuer<br>VOX PLACE CDO LLC, as Co-issuer<br><br>NOTEHOLDER DEFENDANTS<br><br>AC CAPITAL PARTNERS LTD.<br>ACA FINANCIAL GUARANTY CORPORATION<br>ASTERI GROUP LTD.<br>BABSON CAPITAL MANAGEMENT<br>BANCO CREDITO DEL PERU<br>BANK OF CHINA<br>THE BANK OF FUKUOKA, LTD.<br>BARCLAYS BANK PLC<br>BASIS YIELD ALPHA CAPITAL<br>BASIS CAPITAL PTY LIMITED<br>BLUE CROSS BLUE SHIELD<br>BEAR STEARNS ASSET MANAGEMENT<br>BENEFICIAL LIFE INSURANCE CO.<br>BLACKROCK, INC.<br>CALYON NEW YORK<br>CANADIAN IMPERIAL BANK OF COMMERCE<br>CENTRAL REINSURANCE CORP.<br>CHEYNE CAPITAL MANAGEMENT (UK) LLP<br>CITIGROUP ALTERNATIVE INVESTMENTS LLC<br>CSFB ALTERNATIVE CAPITAL I<br>CSFB CDO-CITI<br>THE DAEGU BANK, LTD.<br>DELAWARE INVESTMENT ADVISORS INC.<br>DELAWARE MANAGEMENT BUSINESS TRUST<br>DELPHI FINANCIAL GROUP, INC.<br>DEXIA, EDISON INTERNATIONAL<br>ELLIOT ASSOCIATES, L.P.<br>EQUITY GROUP, INC.<br>ETHIAS SA |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| | FAR GLORY LIFE INSURANCE CO., LTD.<br>FAXTOR SECURITIES BV<br>GARADEX INC.<br>GARLAND INVESTMENT MANAGEMENT INC.<br>GATEX PROPERTIES INC.<br>GOLDMAN SACHS US MORTGAGES SAI FUND<br>GORDON RAUSSER<br>GORDON RAUSSER (DEFINED BENEFIT PENSION PLAN)<br>GORDON RAUSSER (IRA)<br>KUO HUA LIFE INSURANCE, LTD.<br>IKB DEUTSCHE INDUSTRIEBANK<br>INTERNATIONAL BANK OF TAIPEI<br>IRON FINANCIAL<br>JA HOKKAIDO SHINREN<br>KOREA'S NATIONAL AGRICULTURAL COOPERATIVE FEDERATION<br>MAGNETAR CAPITAL<br>MBIA CAPITAL MANAGEMENT CORPORATION<br>MKP CAPITAL MANAGEMENT LLC<br>MODERN WOODMEN<br>MONEYGRAM USA<br>THE OCEANIC HEDGE FUND<br>OHIO PUBLIC EMPLOYEE RETIREMENT SYSTEM<br>OMICRON INVESTMENT MANAGEMENT GMBH (f/k/a UNIQA ALTERNATIVE INVESTMENTS GMBH)<br>PB CAPITAL CORPORATION<br>PRINCETON ADVISORY GROUP, INC.<br>PRINCIPAL GLOBAL INVESTORS, (EUROPE) LIMITED<br>PRINCIPAL GLOBAL INVESTORS<br>RABOBANK INTERNATIONAL NEW YORK BRANCH<br>RABOBANK GROUP<br>RGA LLC<br>SENECA CAPITAL MANAGEMENT LLC<br>SENTINEL MANAGEMENT GROUP INC.<br>SHIELD SECURITIES<br>SHING KONG LIFE INSURANCE CO., LTD.<br>SHINGKONG INSURANCE CO. LTD.<br>SHINHAN BANK<br>SOUTHERN MISSOURI  BANCORP, INC.<br>SOCIETE GENERALE<br>STONE TOWER<br>SUSQUAHANA BANK<br>SWISS LIFE LTD.<br>TAIWAN LIFE<br>TOM DEPPING<br>TRAVELERS EXPRESS COMPANY INC.<br>TRUST CO. OF THE WEST INC.<br>UNION INVESTMENT GROUP<br>UNIQA ALTERNATIVE INVESTMENTS<br>VANDERBILT CAPITAL ADVISORS<br>WELLS FARGO, NATIONAL ASSOCIATION<br>ZAIS GROUP, LLC<br>ZAIS INVESTMENT GRADE LTD |
| 10-03548 (JMP) | AXA, S.A.<br>AXA ASSURANCES VIE MUTUELLE<br>AXA ASSURANCES I.A.R.D. MUTUELLE<br>AXA COURTAGE ASSURANCE MUTUELLE<br>AXA FINANCIAL, INC.<br>ALLIANCEBERNSTEIN L.P. F/K/A/ ALLIANCE CAPITAL MANAGEMENT L.P. |
| 10-03552 (JMP) | FRAGOMEN, DEL RAY, BERNSEN AND LOEWY, LLP |
| 10-03553 (JMP) | GMAC MORTGAGE CORPORATION |

| Adversary Proceeding No. | Defendant(s) |
|---|---|
| 10-03558 (JMP) | EARTH THEBAULT INC. |
| 10-03560 (JMP) | EMORTGAGE LOGIC LLC |
| 10-03565 (JMP) | GEORGESON INC. |
| 10-03566 (JMP) | HYPOTHECA CAPITA LLC |
| 10-03574 (JMP) | ANA-DATA CONSULTING INC. |
| 10-03598 (JMP) | FIRST AMERICAN RESIDENTIAL VALUE VIEW LLC |
| 10-03606 (JMP) | STEWART LENDER SERVICES |
| 10-03607 (JMP) | INTERFACE CABLE ASSEMBLIES & SERVICES CORPORATION |
| 10-03609 (JMP) | DEUTSCHE BANK TRUST COMPANY AMERICAS |

| | |
|---|---|
| 10-03809 (JMP) | **TRUSTEE DEFENDANTS**<br><br>WELLS FARGO BANK NATIONAL ASSOCIATION<br>NATIONAL ASSOCIATION<br>DEUTSCHE BANK TRUST COMPANY AMERICAS<br>U.S. BANK NATIONAL ASSOCIATION<br><br>**ISSUER DEFENDANTS**<br><br>IMPAC CMB TRUST SERIES 2005-03<br>IMPAC CMB TRUST SERIES 2005-04<br>IMPAC CMB TRUST SERIES 2005-08<br>ACCESS GROUP INC. SERIES 2005-A<br>ACCESS GROUP INC. SERIES 2005-B<br>LAKEVIEW 2007-4<br>RACERS 2005-10<br>GREYSTONE 2006-3 |
| 10-03811 (JMP) | BANK OF NEW YORK MELLON NATIONAL ASSOCIATION |
| 10-03812 (JMP) | NEBRASKA INVESTMENT FINANCE AUTHORITY |
| 10-03810 (JMP) | **TRUSTEE DEFENDANTS**<br><br>BANK OF NEW YORK<br>BANK OF NEW YORK TRUSTEE SERVICES LIMITED<br><br>**ISSUER DEFENDANTS**<br><br>GAZPROMBANK MORTGAGE FUNDING 2 S.A.<br>RUBY FINANCE PUBLIC LIMITED COMPANY, AS ISSUER OF THE SERIES 2006-7 |
| 10-03830 (JMP) | CONFLUENT V LIMITED<br>AXA INVESTMENT MANAGERS PARIS S.A. |
| 10-03831 (JMP) | BlueBay Funds - BlueBay Yield Bond Fund; Bluebay Multi Strategy Investments (luxembourg) SARL; BlueBay Structured Funds – High Yield Enhanced Fund; BlueBay Structured Funds: High Yield Portable Alpha Fund; G.A. –Fund-L – Bond Higher Yield Euro TP; Interpolis Pensioenen Global High Yield Pool; Interpolis Pensioenen Vermogensbeheer B.V; LGT Capital Invest (SC3) Ltd.; Panacea Trust - BlueBay Structured High Yield Bond Sub-Trust; Stichting Bedrijfspensioenfonds voor de Metaalektro; Stichting Mn Services Europees High Yield Fonds; The BlueBay Value Recovery (Master) Fund Limited |
| 10-03832 (JMP) | ADAGIO III CLO PLC<br>AXA INVESTMENT MANAGERS PARIS S.A. |
| 10-03833 (JMP) | MATIGNON DERIVATIVES LOANS<br>AXA INVESTMENT MANAGERS PARIS S.A. |
| 11-01623 (JMP) | PERFICIENT INC. |
| 11-01661 (JMP) | BULLET COMMUNICATIONS INC |
| 11-01697 (JMP) | SARK MASTER FUND LTD |

## Exhibit B to Reply

**(Blackline of Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                               :

**In re**                          :        **Chapter 11 Case No.**
                               :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    **08-13555 (JMP)**
                               :

             **Debtors.**        :    **(Jointly Administered)**
                               :
                               :
-------------------------------------------------------------------x

### ORDER EXTENDING THE STAY OF AVOIDANCE ACTIONS AND GRANTING CERTAIN RELATED RELIEF PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1)

Upon the motion, dated May 27, 2011 (the "Motion"),[1] of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors in possession (together, the "Debtors"), pursuant to section 105(a) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 4(m) of the Federal Rules of Civil

Procedures Procedure, as incorporated and made applicable hereto by Rule 7004(a)(1) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to extend the stay for each of

the adversary proceedings identified on Exhibit A1 hereto and any other avoidance actions that

may be commenced by the Debtors under sections 544, 545, 547, 548, 549, 550 and/or 553 of the

Bankruptcy Code (collectively, the "Avoidance Actions") and to grant certain related relief, all

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court

having entered the *Order Staying Avoidance Actions and Granting Certain Related Relief*

*Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)*, dated

October 20, 2011 [Docket No. 12199] (the "Initial Stay Order"); and due and proper notice of the

Motion having been provided in accordance with the procedures set forth in the amended order

entered June 17, 2010 governing case management and administrative procedures [Docket No.

9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for

the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission;

(iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of

New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) each of

the known and identified defendants to the Avoidance Actions or their agents or representatives

(the "Avoidance Action Defendants"), and it appearing that no other or further notice need be

provided; and objections to the Motion and the relief requested therein having been interposed

(the "Objections"); and a reply to the Objections having been filed by the Debtors; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Objections are overruled; and it is further

ORDERED that the Motion is granted; and it is further

2

ORDERED that the Stay imposed by the Initial Stay Order is hereby extended for a period of ~~nine~~six (~~9~~6) months to ~~April 20, 2012~~January 20, 2012, without prejudice to the Debtors' ability to request further extensions; and it is further

ORDERED that the Debtors shall have until the later of August 30, 2011 or the time otherwise prescribed by the Bankruptcy Rules to complete service of the applicable summons and complaint on each of the Avoidance Action Defendants, without prejudice to the Debtors' ability to request further extensions; and it is further

ORDERED that, except as set forth herein, all other terms and provisions of the Initial Stay Order shall remain unaltered and in full force and effect; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2011
     New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit C to Reply**

**(Partial List of U.S. Bank Responses to Debtors' Procedures Motions)**

| **Document Title** | **Docket No.** | **Date Filed** |
|---|---|---|
| Objection of U.S. Bank National Association as Trustee to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts with Special Purpose Counterparties | 13307 | 12/8/2010 |
| Limited Objection of U.S. Bank National Association, as Trustee, to the Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors | 7947 | 3/31/2010 |
| Limited Objection of U.S. Bank National Association as Trustee to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(b) for Establishment of Procedures for the Debtors to Compromise and Settle Prepetition Claims Asserted by the Debtors Against Third Parties | 6501 | 1/6/2010 |
| Objection of U.S. Bank National Association as Trustee to the Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of (i) Claim Objection Procedures and (ii) Settlement Procedures | 6500 | 1/6/2010 |
| Objection of U.S. Bank National Association as Trustee to the Debtors' Motion, Pursuant to Bankruptcy Rule 2004, for an Order Granting Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities | 5814 | 11/13/2009 |
| Reservation of Rights of U.S. Bank National Association as Trustee to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9010(b) for Establishment of Procedures for the Debtors to Compromise and Settle Claims in Respect of the Origination or Purchase of Residential Mortgage Loans | 4598 | 7/31/2009 |
| Objection of U.S. Bank National Association as Trustee to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts | 4583 | 7/31/2009 |

| | | |
|---|---|---|
| Limited Objection of U.S. Bank National Association as Trustee to the Debtors' Motion for an Order Approving Consensual Assumption and Assignment of Prepetition Derivative Contracts | 2616 | 1/23/2009 |
| Objection of U.S. Bank National Association as Trustee to the Debtors' Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts | 1904 | 11/28/2008 |