**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                         :    **08-13555 (JMP)**
                                                                   :
                                        **Debtors.**               :    **(Jointly Administered)**
------------------------------------------------------------------- X

## DECLARATION OF DAWNE RILEY

Pursuant to 28 U.S.C. § 1746, I, Dawne Riley, do hereby declare as follows:

1.  I am employed as Manager of Project Management by AlphaLit, a litigation support company that has been engaged by Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") to provide electronic discovery services in connection with what I understand to be a discovery request by the Debtors in the above-captioned proceeding (the "Supplemental Request") to Cleary Gottlieb's clients, The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. (together, "Goldman Sachs").  I make this declaration as supporting documentation to Goldman Sachs's objection to what I am advised by Cleary Gottlieb is a motion by the Debtors[1] to compel Goldman Sachs to produce documents in response to the Supplemental Request on an accelerated time frame[2] and in support of the Motion of Goldman Sachs for a Protective Order (the "Motion for a Protective Order").  Unless otherwise noted, I make this declaration based on my personal knowledge of the matters stated below.

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in the Motion for Protective Order.

[2] Motion of Lehman Brothers Holdings, Inc. to Compel the Production of Documents From Goldman Sachs & Co. and Goldman Sachs Group, Inc. (Docket No. 17231), In re Lehman Brothers Holdings Inc. et al., No. 08-13555 (Bankr. S.D.N.Y. May 31, 2011) (the "Motion to Compel").

2. Alphalit was engaged by Cleary Gottlieb in connection with the Supplemental Request after a meeting between AlphaLit and Cleary Gottlieb on May 19, 2011 to discuss AlphaLit's E-Direct review platform. In connection with this engagement, AlphaLit agreed to process documents collected by Goldman Sachs in connection with the Supplemental Requests, run the three pages of search strings provided by the Debtors to Goldman Sachs against those documents after they had been processed, and upload the documents designated as a result of running the search terms for review on AlphaLit's E-Direct discovery platform and manage that review. During the last week of May, AlphaLit began receiving from Cleary Gottlieb, on a rolling basis, hard drives containing documents for processing from Goldman Sachs.[3]

3. To prepare documents for searching and review in E-Direct, the following extraction processes must be undertaken:

   a. **Log the data**. Upon receipt of the data, chain of custody information is completed, the data logged into our tracking database, and barcodes applied. This takes about 5 minutes per hard drive received.

   b. **Backup the data**. After logging the media, we make a copy of the data received to ensure the original data received stays intact. This can take anywhere from 10 minutes to overnight. For data received to date from Goldman Sachs, it has taken 15 hours.

   c. **Expand the data**. A process is undertaken to extract all documents from the containers (personal file folders/storage facilities) that they were received in. A database record is written to account for each document/file found and a control

---

[3] On the first hard drive that we received, we determined that the files for four of the custodians had been corrupted. We informed Cleary Gottlieb of this malfunction, and Goldman Sachs re-retrieved those files, which we have now received from Cleary Gottlieb.

2

        number assigned for each document/file.  During this process, emails are converted into individual .msg, .html or text files, zip and other container files are extracted, embedded objects are identified, and document level text files are generated.  Unique identifiers, or "hash values" to be used for deduplication are also generated during this process.  The time necessary for this process varies based on the size of the personal file folders/storage facilities received, the quantity of documents/files contained therein, and whether any issues are found in the data received.

    d. **Crack all passwords**.  All documents/files that contain passwords must be run through password cracking software to make sure that all documents/files that can be searched are made available.  Each document/file takes about 5 minutes to process through the software and update in all the appropriate locations

    e. **Optical Character Recognition ("OCR") of documents/files without text**.  For all documents/files where text is not available during expansion (primarily image types and pdfs), OCR is performed to make them text searchable.

    f. **Index the documents**.  All documents/files are then indexed to allow text searching.

4.    In this matter, extraction of the 231gigabytes of data received from Goldman Sachs required approximately 126 hours of processing time over the course of several days.  The total cost for this extraction was approximately $60,000.

5.    After extraction is complete, the next phase of a project is to search or "cull" the document collection.  In the normal course of a project, first the appropriate deduplication is applied to remove duplicate documents/files, then any date restrictions are applied, and finally,

the search terms are applied to the resulting documents/files.  The searching for this project was very complex because many of the search terms required different date restrictions.  As a result, several different workflows were necessary, including the development of a customized searching program to ensure that the individual terms for the 16 different date restrictions are applied appropriately.   This process took several programmers and software developers a combined total of 8 work hours to accomplish, and we began searching the first group of documents on May 31, 2011.  Ultimately, the search terms provided to us yielded a total of 61,512 potentially responsive documents out of the 3,237,194 total that were processed.

      6.      The documents that survive all processing and culling are then loaded into the review tool, E-Direct.  A process called the indicator is run across the collection to identify documents/files with hidden data (for instance, hidden rows in excel spreadsheets and track changes in word documents).  Here, 10.86 gigabytes of potentially responsive documents have been or will be loaded.  Once the first set of documents was loaded onto the E-Direct platform for review, AlphaLit conducted a training for the contract attorneys retained by Cleary Gottlieb to conduct the review.[4]

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 13, 2011
      Huntingdon Valley, PA

                                                    /s/ Dawne Riley
                                                    Dawne Riley

---

[4] In addition to these costs, AlphaLit has billed additional time preparing this declaration and providing technical information to Cleary Gottlieb in connection with Goldman Sachs's opposition to the Motion to Compel.