# Exhibit C

| | |
|---|---|
| -DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br><br>Court Address: 1437 Bannock Street<br>        Denver, Colorado 80202 | |
| **ROGER R. TROUT**<br>Plaintiff,<br><br>v.<br><br>**L.B. ROSE RANCH, L.L.C.**<br><br>Defendant: | ▲   **COURT USE ONLY**   ▲ |
| | Case Number: 01CV4208<br>Ctrm: 7 |
| **ORDER** | |

This matter is before the Court following remand from the Colorado Court of Appeals. The Court of Appeals directed this Court to enter judgment in Plaintiff's favor and against LB Rose Ranch LLC on Trout's quiet title, trespass, and breach of contract claims. The Court of Appeals further ordered this Court to conduct further proceedings consistent with the mandate, including reexamination of Trout's requests for specific performance and an injunction, and a reassessment of whether Trout is entitled to an award of attorney's fees under the fee-shifting provisions of the Easement and Transfer Agreement and the Golf Cart Path Easement agreement.

As ordered, the Judgment was amended on August 16, 2008. A Bench trial was conducted May 5, 2008 thru May 8, 2008 for determination of the remaining matters.

This Court has considered the testimony of the witnesses named herein; the exhibits; the arguments of counsel and the Court of Appeals opinion as well as the Trial Court's Findings of Fact, to the extent those findings were not rejected by the Court of Appeals, and enters the following Findings of Fact; Conclusions of Law and Judgment. Judge Egelhoff's Findings as limited above are incorporated herein.

### FINDINGS OF FACT

This Court recognizes the Court of Appeals conclusion that the "permanent golf cart easement would be located within 20 feet on either side of the centerline described in the [Easement and Transfer Agreement]." The 100 foot construction easement was therefore temporary and has reverted to Mr. Trout. Mr. Trout has stipulated that L.B. Rose Ranch may use the area of the former construction easement to rebuild the cart path within the Golf Cart Path Easement, if the Court so orders. They may also use the construction easement area for the passage of carts, during that reconstruction.



Mr. Hope, through his company, High County Engineering designed the non complying cart path and provided construction administration. Hope informed Haggemeier, L B Rose Ranch's agent that they would need to be able "to move the path around as it progressed up the ravine." Haggemeier negotiated with Trout, attempting to secure for a wider easement, but Trout declined, wanting to maintain the character and view of the site. Hope did not contact Trout directly about building outside the easement and Haggemeier never got back to Hope about Trout's response to the requested change. Hope was never told that Trout agreed to allow the path to be "moved around" outside the easement, but that was how he designed it and that is how it was built. There is no "as built easement", although Hope assumed there was or soon would be. Hope made no effort to build within the permanent easement because he thought the path could be built anywhere within the one hundred foot construction easement. Hope reviewed and relied upon the easement agreement for direction regarding the width of the construction easement. Hope also conferred with Messrs. Hatch and Nash, also agents for L B Rose Ranch regarding the placement of the path. Hope also testified at the first trial that Hatch was "the one that made the final decision as to everything that was done and when there were choices to be made."

LB Rose Ranch and its agents were aware that the technique employed by Hope was in violation of the agreements as early as May 2002. At that time, Mr. Jacobs, then attorney for LB Rose Ranch sent a letter to Hope. This letter acknowledged that the cart path encroached onto Trout's property, and put Hope on notice that LB Rose Ranch would be looking to Hope for any damages.

Hope has re-drawn plans that satisfy the easement limits. His company remains the engineer of record, although Scott Gregory is now in charge of the project. Mr. Hope designed the plan the Hobbs bid on and won. Mr. Hope found the same areas outside the easement as did Mr. Gordon, Trout's expert, except that he made the areas between bridges seven and eight and eight and nine separate areas of reconstruction. Hope is not critical of Gordon's approach. Both would work.

Building the path may have required obtaining additional permits from the Army Corp of Engineers to ensure there was no impact on the "waters of the United States." This requirement could have been met and still maintained the proper easement.

All of the civil engineers generally agreed that the path was outside the easement in three separate locations: the northeast corner of bridge 1, which may encompass as little as several inches to one foot of area. The area between bridges five and six which encompasses seventeen feet outside the allowed area would require replacement of four ten foot sections of concrete in order to provide horizontal transition from the nearest construction joint. The area between bridges six and nine would require the removal of bridges six, seven, eight, and nine as well as the cart path between these bridges. The bridges themselves are within the easement; however their orientation would have to be changed in order to line up with the reconstructed path.

Mr. Gordon, Plaintiff's expert estimated that it would cost approximately $79,500 to do the necessary demolition. He further estimates reconstruction to be $677,000. Mr. Gordon is not critical of Hope's re-drawn plans, although the construction concepts differ. Mr. Gordon's plan would take about five months, including permitting.

Although there is some remote possibility, the Court finds there is no probability that there is a wetland problem that would interfere with construction of the

2

path entirely within the easement. Even if there were, the weight of the testimony indicates the proper permits could be obtained with a minimum of cost or delay.

Gordon testified there is no reason to believe that reconstruction of the path within the easement would be either unfeasible or impossible.

There are underground utility and water pipes, which were placed by L.B. Rose Ranch to service the cart path that are outside the easement. It will cost between 2,400 and 4,000 dollars to remove them. They could also be abandoned and rerouted.

The Court has also considered the testimony of Stewart Hobbs, owner of Hobbs Excavating and Trucking. He generated an estimate to reconstruct the easement using the staking done by Gordon and the plans drawn by Hope. His estimate was approximately 293,000 dollars to reconstruct the path. Hobbs saw "no reason to believe it (reconstruction within the easement) could not be done." "It seemed to be very possible." Hobbs agrees with Gordon that it would take approximately four months to complete this task.

Demolition could be done in the winter months, however concrete could not be poured during that time. Hobbs suggested that if the process was begun in January it would be completed by the time the golf season begins in May. It would not be possible for patrons to continue playing while the cart path was being reconstructed.

The Easement and Transfer Agreement at Paragraph 12 permits the non-breaching party (Trout) to be entitled to an action for specific performance and or damages or both. Trout has always maintained his desire for the path to be built as was agreed.

The Easement Agreement at Paragraph 4 permits the non-breaching party (Trout) to be entitled to an action for injunctive relief and or specific performance and or damages. Trout again has always insisted that the path be built as agreed and that LB Rose Ranch stop trespass on his property.

In his Order, Judge Egelhoff determined that Trout suffered no damages by L.B. Rose Ranch's breach. That determination was not appealed. It was and has been clear to Judge Egelhoff, the Court of Appeals and this Court that LB Rose Ranch was in breach of this agreement, before the path was completed. They allowed the breaching project to continue, never attempting to remedy their breach, but only to change the agreement or shift financial responsibility for the breach to Hope.

In its opinion, the Court of Appeals directed this Court to reexamine the feasibility of relocating the golf cart path entirely within the corridor of [the easement agreements]under the legal standards applicable to requests for specific performance, referencing *Greeley & Loveland Irrigation Co. v. McCloughan*, 342 P.2d 1045 [Specific performance is not a matter of right, but rests in sound discretion of court, and equity will not enforce such extraordinary remedy unless contract be fair, equal, and just in its terms, consideration be not grossly inadequate, and remedy be not inequitable, unconscionable, or oppressive]; and *Tayyara v. Stetson*, 521 P.2d 185. [It is true that a court of equity may refuse to grant a decree of specific performance where a unilateral mistake is material to the contract, and the enforcement of the written contract under the circumstances would be inequitable or a hardship on the defendant, even though plaintiff is in no way responsible for the mistake and has no knowledge of it. However, specific performance is proper where, as here, defendant's asserted unilateral mistake is the result of his own negligence or inexcusable neglect.]

This Court was also directed to rule on Trout's request for injunctive relief concerning LB Rose Ranch's continued trespass. That determination is to be based on the same standards as above.

It is Defendants position that Trout has suffered no damages and minimal impact from the location of the golf cart path and an injunction or specific will result only in economic waste in requiring L B Rose Ranch to move the offending portions of the path at substantial and unnecessary cost with no resulting benefit to Trout.

Over Defendants objection, the Court has received and reviewed the Securities and Exchange Commission Quarterly report for the period ended February 29, 2008. The Court finds this to be relevant because although L B Rose Ranch is a separate entity, it appears to be a wholly owned subsidiary of Lehman Brother' Holdings. Representatives of Lehman Brothers were closely involved with the construction of the path, and based upon the testimony of Mr. Schmit, remain closely involved in the operation of the construction project as well the golf course. In fact, Mr. Schmidt, who sat thru the trial as the representative of L B Rose Ranch, reports to representatives of Lehman Brothers. This is relevant to the determination of whether an order of specific performance would result in an unconscionable or oppressive outcome. According to said report, Lehman Brothers' cash and cash equivalents as of February 28, 2008 totaled $7,564,000,000.

The Court of Appeals also directed this Court to reassess whether Trout is entitled to an award of attorney fees under the fee-shifting provisions of the Easement and Transfer Agreement [Paragraph 18, In the event that either party brings suit to enforce the agreement, the prevailing party shall be entitled to an award for reasonable attorney fees to be taxed by the court as costs of the action]; and the Golf Cart Path Easement [Paragraph 10, In the event that either party brings suit to enforce the agreement, the prevailing party shall be entitled to an award for reasonable attorney fees to be taxed by the court as costs of the action.]

In his ruling, Judge Egelhoff found for Defendants on Plaintiffs claims for recession, reformation, and breach of contract as to Plaintiff's liability and property damage insurance claims.

He found in favor of Plaintiff and against Defendants on Plaintiff's breach of contract claim as to the failure to execute an indemnification agreement pursuant to paragraph 6 of the agreement (awarding nominal damages). He ordered specific performance of that portion of paragraph 6 of the agreement requiring Defendants to execute an agreement indemnifying Plaintiff from any loss and damage occasioned by use of the easement area from June 13, 1997 forward. Judgment was entered in favor of Plaintiff for a permanent injunction against Defendants from the use of the "back tee box." Judgment was entered for Defendants and against Plaintiffs on Plaintiffs trespass claim.

Finally, the trial court found that each party had succeeded and defended on several significant issues in the case and neither was the prevailing party.

As noted those conclusions finding for L.B. Rose Ranch and against Trout were reversed by the appellate court. Specifically, the case was remanded with directions to the trial court to enter judgment in Trout's favor and against L B Rose Ranch on the quiet title, trespass and breach of contract claims.

It is L B Rose Ranch's position that since Judge Egelhoff found in their favor on the recession and reformation claims, that those claims are significant and not reversed on appeal, that they are in fact the prevailing party.

At the end of the day, LB Rose Ranch has succeeded on nothing but the recession and reformation claims. Although LB Rose Ranch very artfully argues that it was Trout's intention all along to rescind the contract in order to hold Defendant "hostage," there was simply no credible evidence to support that notion, at least before this Court on remand. On the other hand, Trout filed the first lawsuit to enforce the terms of the contract regarding the berm and access routes. L B Rose Ranch responded with the Garfield County suit to impose an "as built easement." All of the credible evidence points out that these cases have always been about the nature and extent of the easements. Even the Court of Appeals recognized that

> …"Trout's *primary argument* was that the parties written agreements unambiguously provided for a permanent easement located within twenty feet on either side of the centerline… He expressly argued in the alternative that if the court should find an ambiguity, the ambiguity should be resolved in his favor, or the documents should be reformed (to comport with his understanding of the location of the easement), or the transaction should be rescinded for lack of meeting of the minds. Thus, Trout was entitled to offer evidence to support those *alternative claims* and in so doing did not waive his *primary contention*.

This Court notes that at least in the Court of Appeals mind, recession was the last alternative.

## CONCLUSIONS OF LAW

Based on the testimony of the engineers, the Court finds that rebuilding the cart path within the easement is feasible. The choice of remedies was Trout's. He has never requested monetary damages, but only the equitable relief of Specific Performance and or Injunction.

Having found the rebuilding of the cart part to feasible, the Court ORDERS that it be done in specific accord with the agreements of the parties. While it is clear, pursuant to the cases cited by the Court of Appeals that the Court must consider whether specific performance would be inequitable, unconscionable, or oppressive, the Court must also consider whether defendant's asserted unilateral mistake is the result of his own negligence or inexcusable neglect. Here, the equities favor Trout. Not only was the "mistake" unilateral, it was knowing and continuous.

Sometimes a slight and harmless encroachment is held to be within the rule 'de minimis,' and generally the courts require that he who seeks equity should do equity and come with clean hands. Where the encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may well require its restoration regardless of the expense of removal as compared with damage suffered therefrom; but where the encroachment was in good faith, the court should weigh the circumstances so



that it shall not act oppressively. *Golden Press, Inc. v. Rylands*, 124 Colo. 122, 235 P.2d 592, (Colo. 1951)

This behavior, a knowing and continuous breach of the agreement outweighs any hardship or financial oppression Defendant may suffer in building an easement compliant pathway.

## JUDGMENT

For the reasons set forth above, Defendants are **ENJOINED** from further trespass on Trout's property. As stipulated by Trout, Defendants may use the former construction easement during the reconstruction of the cart part. The underground utility and water systems are to be abandoned and rerouted. As use of the golf course during construction would hamper the workers, endanger the golfers and closing of the course would cause further financial losses to Defendants, this Injunction is **STAYED** until December 1, 2008.

In a civil action, the prevailing party is one who succeeds on a significant issue in the case and whose claim furthers the purpose of the fee shifting provision.

> "The purpose of a contractual attorney fee-shifting provision is to deter parties from breaching the contractual agreement. To deny attorney fees to the non-breaching party merely because the jury determines that the party suffered no injury would render meaningless the fee-shifting provision in the settlement agreement to which the parties stipulated, and which the parties intended to enforce. Such a result would encourage parties to breach contractual agreements and would cause unwarranted litigation." *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 333, n. 14. (Colo. 1994).

As noted above the easement provisions were not only significant issues in this case, they were the primary issues. These are alternate claims not "multi-claims." Mr. Trout's claims for rescission and reformation of the contract are clearly alternative and inconsistent claims for relief with respect to Mr. Trout's claim for breach of contract. The fact that he prevailed on the breach of contract claim necessarily forecloses the possibility of prevailing on recession and reformation. LB Rose Ranch's argument that they "escaped" the ruinous ramifications of recession and therefore have prevailed makes no sense. They "escaped" recession because they lost the primary contract claim. Trout has prevailed on all meaningful issues and is therefore entitled to his attorney's fees and costs. Plaintiff's Bill of Costs is to be submitted within fifteen days of this order.

BY THE COURT     this 20th day of June 2008

William D. Robbins

District Judge