KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway,
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Michael J. Bowe (mbowe@kasowitz.com)
Robert M. Novick (rnovick@kasowitz.com)
Albert S. Mishaan (amishaan@kasowitz.com)
Gary W. Dunn (gdunn@kasowitz.com)

Special Counsel for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
                                      :   Chapter 11
In re                                 :   Case No. 08-13555 (JMP)
                                      :
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Jointly Administered
                                      :
                    Debtors.          :
------------------------------------- x

## DECLARATION OF GARY W. DUNN

1.  I am a member of the Bar of this Court and associated with the law firm of Kasowitz, Benson, Torres & Friedman LLP, attorneys for Lehman Brothers Holdings, Inc. ("Lehman") and its affiliated debtors (collectively, the "Debtors"), as debtors and debtors in possession, in the above-captioned proceedings. I submit this declaration, pursuant to Local Bankruptcy Rule 7007-1, on personal knowledge unless otherwise noted, in further support of the Debtors' Motion to Compel the Production of Documents from Goldman Sachs & Co. and Goldman Sachs Group, Inc. (collectively, "Goldman Sachs") and in opposition to Goldman Sachs' Cross-Motion for a Protective Order.

2.  Although the Debtors issued their initial supplemental document request to Goldman Sachs on March 1, 2011 and the parties held a Rule 7007-1 conference with the Court one month ago, Goldman Sachs has not yet produced a single document. While the Debtors' counsel have repeatedly attempted in good faith to negotiate with Goldman Sachs over the course of three months, Goldman Sachs' ongoing failure to produce documents threatens to prejudice the Debtors in their Rule 2004 investigation. Thus, the Debtors have been forced to move to compel.

3.  On May 17, 2011, May 18, 2011, May 24, 2011, and May 31, 2011, I had conference calls with Goldman Sachs' counsel regarding Goldman Sachs' production of documents in response to the Debtors' supplemental request for production. During each call, I inquired as to when Goldman Sachs would commence producing documents and when it would complete its production. However, each time, Goldman Sachs' counsel declined to provide me with the dates that I requested. On May 31, 2011, I informed Goldman Sachs' counsel that the Debtors would be forced to move to compel.

4.  While the motion has been pending, the Debtors have attempted to negotiate a resolution with Goldman Sachs. Although Goldman Sachs' objection to the Debtors' motion was initially due on June 8, 2011, at Goldman Sachs' request, the Debtors agreed to extend its time to file its objection until June 10th. On June 9th, the day before its papers were due, Goldman Sachs proposed for the first time that it would complete its document production by July 22, 2011. This date -- over two months from the Rule 7007-1 conference -- was unacceptable to the Debtors. As the partner with supervisory authority with respect to the matter at issue was out of state at a deposition on June 9th, and travelling on June 10th, I was unable to

discuss it with him given the short notice provided. Nevertheless, the Debtors gave Goldman Sachs a further extension on the filing of its Objection until June 13th.

5.  While the Debtors have requested trade-by-trade data of the trading of its proprietary trading desks in Lehman securities, which would reveal how these desks were trading at times when rumors were circulating in the market, Goldman Sachs has thus far failed to produce them. Attached hereto as exhibit 1 are true and correct copies of e-mail exchanges between counsel for the Debtors and counsel for Goldman Sachs regarding the requested trading data.

6.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on the 14th day of June, 2011.

_____
Gary W. Dunn

Exhibit 1

| | |
|---|---|
| **From:** | Gary W. Dunn <GDunn@kasowitz.com> |
| **Sent:** | Monday, April 18, 2011 8:04 PM |
| **To:** | Nancy Ruskin <NRuskin@cgsh.com> |
| **Cc:** | Lisa M Gouldy <lgouldy@cgsh.com> |
| **Subject:** | Lehman: Goldman Sachs |
| **Attach:** | Proposed revised search terms -- Goldman Sachs .pdf |

Dear Nancy,

Please find attached further revised proposed search terms. We agree to limit the searches to the period May 1, 2008 through August 31, 2008

As discussed, we request that the searches be initially conducted on the e-mail and instant messages of the traders, analysts, portfolio managers and brokers (collectively, the "Custodians") responsible for trading Lehman Securities (as that term was defined in the subpoenas) in Goldman's Global Macro Prop., Credit Principal Investing, and Goldman Sachs Principal Strategies businesses who were based in London during the period May 1, 2008 through August 31, 2008. We additionally request that Goldman Sachs produce trading records showing the trades that the Custodians made in Lehman Securities on a trade-by-trade basis for the period May 1, 2008 through August 31, 2008.

Best regards,

Gary


Gary W. Dunn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1766
Fax (212) 835-5066
GDunn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

| | |
|---|---|
| **From:** | Lisa M Gouldy <lgouldy@cgsh.com> |
| **Sent:** | Friday, April 22, 2011 10:32 AM |
| **To:** | Gary W. Dunn <GDunn@kasowitz.com> |
| **Cc:** | Nancy Ruskin <NRuskin@cgsh.com>; Carmine D BOCCUZZI <cboccuzzi@cgsh.com> |
| **Subject:** | RE: Lehman: Goldman Sachs |

Gary,

Our agreement as to the original requests in your Rule 2004 subpoena was that we would produce data about Goldman Sachs' proprietary trading in Lehman securities in 2008 and the documents produced to the U.S. Securities and Exchange Commission, the U.S. Attorney's Office, and the New Jersey Bureau of Securities in connection with Lehman-specific inquiries on or after January 1, 2008. We have since made these agreed-upon productions. At that time we agreed to the original production, you reserved your rights to seek further documents, and we reserved our rights to object, which is what our continuing negotiations are about.

On March 1, you sent to us with supplementary document requests, and since that time you have continually added informally to those requests -- including requesting organizational charts and, most recently in your April 18 e-mail, "trading records," on a "trade-by trade basis for the period May 1, 2008 through August 31, 2008" showing the trades in Lehman Securities made by the Custodians at Goldman Sachs' proprietary trading businesses in London. We have not yet agreed that the scope of the March 1 supplementary requests is appropriate, nor to the broad list of search terms that you have provided to us, much less any informal requests that you subsequently added. The search terms that you have sent us for the supplementary requests continue to be overly broad, and we believe must, at the very least, be reasonably tailored to target rumors that you believe Goldman Sachs either started or spread, and to the relevant time periods for those rumors. However, you have refused to identify the specific rumors that you believe Goldman Sachs was responsible for, though you have represented that you possess this information. Nevertheless, as I mentioned in my last e-mail, in response to your supplementary requests we are diligently working on ascertaining the number of custodians in Goldman's proprietary trading businesses in London in 2008. This is taking some time because two of those businesses no longer exist and because the records you seek are from 3 years ago. We expect to have that information for you next week.

Regards,

Lisa

---

Lisa Gouldy
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpotts@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2628 | f: +1 212 225 3999
www.clearygottlieb.com | lgouldy@cgsh.com

| | |
|---|---|
| From: | "Gary W. Dunn" <GDunn@kasowitz.com> |
| To: | "Nancy Ruskin" <NRuskin@cgsh.com> |
| Cc: | "Lisa M Gouldy" <lgouldy@cgsh.com> |
| Date: | 04/19/2011 08:12 PM |
| Subject: | RE: Lehman: Goldman Sachs |

| | |
|---|---|
| **From:** | Gary W. Dunn <GDunn@kasowitz.com> |
| **Sent:** | Monday, April 25, 2011 7:38 PM |
| **To:** | Lisa M Gouldy <lgouldy@cgsh.com> |
| **Cc:** | Nancy Ruskin <NRuskin@cgsh.com>; Carmine D BOCCUZZI <cboccuzzi@cgsh.com>; Albert S. Mishaan <AMishaan@kasowitz.com> |
| **Subject:** | Lehman: Goldman Sachs |

Dear Lisa,

Your objections to the Debtors' supplemental discovery requests are unfounded.

Following the service of the Debtors' subpoenas on Goldman Sachs in April 2010, the parties determined that they would work cooperatively, agreeing that Goldman Sachs would initially produce to the Debtors documents that Goldman Sachs had previously produced to governmental authorities, along with certain additional trading data.

On February 18, 2011, in accordance with the agreement, Goldman Sachs made a modest production of 2,136 documents. Upon review of those documents, however, it became clear that this initial production: (1) did not contain documents produced from custodians involved in proprietary trading in Goldman Sachs' London office; (2) did not contain documents produced from custodians involved in marketing Goldman Sachs' prime brokerage services to hedge funds and large financial institutions; (3) covered on a small portion of the time period during which false rumors were directed at Lehman in the marketplace; and (4) covered only a small portion of the rumors that were directed at Lehman during that time.

In accordance with the understanding between the parties that the Debtors could request additional documents if the initial production proved insufficient, on March 1, 2011, the Debtors made a supplemental request for documents to Goldman Sachs. After initial negotiations, the parties agreed that the Debtors would submit search terms that would be used to search the instant messages and e-mails of certain custodians. The Debtors then submitted proposed search terms drafted to cover the period during which Lehman was targeted by rumors, and these search terms were designed to capture the substance and content of the rumors and communications with hedge funds that may have been involved in originating or spreading the rumors. In response to Goldman Sachs' objections, we narrowed the scope of the search terms several times. For example, we reduced the date range of the searches by two months – to a narrow four-month period.

Goldman Sachs, however, has refused thus far to identify custodians so that it can begin searching for, and producing, responsive documents. Initially, we requested that Goldman Sachs identify individuals involved in marketing prime brokerage services and individuals involved in the proprietary trading of Lehman securities in Goldman Sachs' London office. When Goldman Sachs was slow to come forward with this information, we requested that Goldman Sachs produce organization charts so that the relevant custodians could be identified. Goldman Sachs, however, refused to produce the requested organization charts. Then, to get Goldman Sachs moving forward, we attempted to focus the negotiations on first reaching agreement as to the London-based custodians, and then to negotiate the prime-brokerage custodians while searches of the London custodians went forward. To date, however, Goldman Sachs has yet to identify the London-based custodians despite the fact that we have been requesting this information for weeks.

Moreover, Goldman Sachs' claim that the Debtors' discovery requests are overly broad is simply an excuse for delay. The proposed search terms are narrow and have been cut to the bone. They cover a limited four-month period, and they either track the substance and content of the known rumors or seek communications with hedge funds that may have been involved in spreading the rumors. They apply only to e-mails and instant messages. Moreover, the Debtors have agreed to limit the searches to a narrow group of custodians: individuals involved in proprietary trading in London and individuals involved in marketing prime brokerage services. Bankruptcy Rule 2004 permits far broader discovery than the Debtors are seeking here.

Indeed, Goldman Sachs' complaints regarding the breadth of the requested discovery are groundless. In seeking to limit discovery to "specific rumors" that Goldman Sachs started or spread, Goldman is paradoxically requesting

that we use information that largely could only be known through discovery in order to limit the scope discovery seeking that information. Moreover, as you appear to have misunderstood (and mischaracterized) some of my statements, let me make clear: Lehman was the subject of rampant market rumors during the first three quarters of 2008, and we have a good faith evidentiary basis for believing that Goldman Sachs may have participated in formulating or spreading at least some of the rumors. This is the basis for the Debtors' Bankruptcy Rule 2004 discovery.

With respect to our request for the records of trades in Lehman securities by London-based employees involved in proprietary trading, the Debtors and Goldman Sachs had agreed in mid 2010 that Goldman Sachs would produce certain trading data. On April 1, 2011 – a month after the Debtors' supplemental request for documents and after the Debtors had submitted proposed search terms – Goldman Sachs finally produced three pages of trading data. This data, however, did not allow us to determine positions taken by London-based individuals involved in the proprietary trading of Lehman securities during the period associated with the rumors. Therefore, approximately two weeks later, we requested the supplemental information set forth in my April 18th e-mail. Nothing in this request provides any justification for Goldman Sachs' delay in identifying custodians and running the search terms.

Finally, with respect to our request for documents concerning any formal or informal investigations or disciplinary actions contemplated or taken by Goldman Sachs concerning the short selling of Lehman securities, Nancy informed me during one of our telephone calls that she did not believe that Goldman Sachs has any documents responsive to this request, and she stated that she would confirm this with your client. Please let me know whether you have confirmed Nancy's belief with Goldman Sachs.

Best regards,

Gary


Gary W. Dunn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1766
Fax (212) 835-5066
GDunn@kasowitz.com

**From:** Lisa M Gouldy [mailto:lgouldy@cgsh.com]
**Sent:** Friday, April 22, 2011 10:32 AM
**To:** Gary W. Dunn
**Cc:** Nancy Ruskin; Carmine D BOCCUZZI
**Subject:** RE: Lehman: Goldman Sachs

Gary,

Our agreement as to the original requests in your Rule 2004 subpoena was that we would produce data about Goldman Sachs' proprietary trading in Lehman securities in 2008 and the documents produced to the U.S. Securities and Exchange Commission, the U.S. Attorney's Office, and the New Jersey Bureau of Securities in connection with Lehman-specific inquiries on or after January 1, 2008. We have since made these agreed-upon productions. At that time we agreed to the original production, you reserved your rights to seek further documents, and we reserved our rights to object, which is what our continuing negotiations are about.

On March 1, you sent to us with supplementary document requests, and since that time you have continually added informally to those requests -- including requesting organizational charts and, most recently in your April 18 e-mail, "trading records," on a "trade-by trade basis for the period May 1, 2008 through August 31, 2008" showing the trades in Lehman Securities made by the Custodians at Goldman Sachs' proprietary trading businesses in London. We have not yet agreed that the scope of the March 1 supplementary requests is appropriate, nor to the broad list of search terms that you have provided to us, much less any informal requests that you subsequently

added. The search terms that you have sent us for the supplementary requests continue to be overly broad, and we believe must, at the very least, be reasonably tailored to target rumors that you believe Goldman Sachs either started or spread, and to the relevant time periods for those rumors. However, you have refused to identify the specific rumors that you believe Goldman Sachs was responsible for, though you have represented that you possess this information. Nevertheless, as I mentioned in my last e-mail, in response to your supplementary requests we are diligently working on ascertaining the number of custodians in Goldman's proprietary trading businesses in London in 2008. This is taking some time because two of those businesses no longer exist and because the records you seek are from 3 years ago. We expect to have that information for you next week.

Regards,

Lisa

---

Lisa Gouldy
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpotts@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2628 | f: +1 212 225 3999
www.clearygottlieb.com | lgouldy@cgsh.com

From:    "Gary W. Dunn" <GDunn@kasowitz.com>
To:      "Nancy Ruskin" <NRuskin@cgsh.com>
Cc:      "Lisa M Gouldy" <lgouldy@cgsh.com>
Date:    04/19/2011 08:12 PM
Subject: RE: Lehman: Goldman Sachs

Dear Nancy,

I've been told that in my e-mail to you yesterday, I used the wrong four-month date range to be applied in the document search. The correct date range is: May 12, 2008 through September 12, 2008.

Last week, you stated that your counterpart at Goldman Sachs was out of the country and unable to obtain the information necessary to identify the requested custodians from abroad. Today, you advise that it will take "another few days." We served our initial supplemental request on March 1, 2008. Since then we have submitted proposed search terms, which we then revised on three separate occasions at Goldman Sachs' request that they be narrowed. We additionally agreed, at Goldman Sachs' request, to narrow the relevant period, which we reduced by approximately two months. In return, however, Goldman Sachs has refused to provide us with organization charts to assist us in identifying custodians, and it has yet to produce requested information identifying relevant custodians. We request that you provide us with a date certain as to when Goldman Sachs will be able to identify the relevant custodians so that agreement as to custodians and search terms can be finalized and the production of documents can occur in a timely fashion.

Best regards,

Gary

Gary W. Dunn
Kasowitz, Benson, Torres & Friedman LLP

1633 Broadway
New York, New York 10019
Tel. (212) 506-1766
Fax (212) 835-5066
GDunn@kasowitz.com

**From:** Nancy Ruskin [mailto:NRuskin@cgsh.com]
**Sent:** Tuesday, April 19, 2011 12:23 PM
**To:** Gary W. Dunn
**Cc:** Lisa M Gouldy
**Subject:** Re: Lehman: Goldman Sachs

Gary:

Thank you for the revised search term list. When we spoke last Friday, we agreed to talk again this afternoon if we had received the information you requested concerning custodians at the prop trading businesses in London during the relevant time period. I told you that if we had not yet obtained that information I would advise you so that we could re-schedule our call to a time when we have the information. Our client is in the process of getting the information for us but it may take another few days. Also, your colleague Shemmy Mishaan left a message for Carmine Boccuzzi suggesting that they have a call about the supplemental requests. Carmine understands that Shemmy is out today and is planning to call him tomorrow to discuss where things stand.

Regards,

Nancy

---

Nancy I. Ruskin
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jlagrega@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2834 | f: +1 212 225 3999
www.clearygottlieb.com | nruskin@cgsh.com


From:    "Gary W. Dunn" <GDunn@kasowitz.com>
To:      "Nancy Ruskin" <NRuskin@cgsh.com>
Cc:      "Lisa M Gouldy" <lgouldy@cgsh.com>
Date:    04/18/2011 08:04 PM
Subject: Lehman: Goldman Sachs

Dear Nancy,

Please find attached further revised proposed search terms. We agree to limit the searches to the period May 1, 2008 through August 31, 2008

As discussed, we request that the searches be initially conducted on the e-mail and instant messages of the traders, analysts, portfolio managers and brokers (collectively, the "Custodians") responsible for trading Lehman Securities (as that term was defined in the subpoenas) in Goldman's Global Macro Prop., Credit Principal Investing, and Goldman Sachs Principal Strategies businesses who were based in London during the period May 1, 2008 through August 31, 2008. We

additionally request that Goldman Sachs produce trading records showing the trades that the Custodians made in Lehman Securities on a trade-by-trade basis for the period May 1, 2008 through August 31, 2008.

Best regards,

Gary


Gary W. Dunn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1766
Fax (212) 835-5066
GDunn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

```
This message is being sent from a law firm and may contain confidential or
privileged information. If you are not the
intended  recipient,  please  advise   the   sender  immediately  by  reply  e-mail
 and  delete  this  message and  any
attachments  without  retaining  a  copy.
```

```
This message is being sent from a law firm and may contain confidential or
privileged information. If you are not the
intended  recipient,  please  advise   the   sender  immediately  by  reply  e-mail
and  delete  this  message and  any
attachments  without  retaining  a  copy.
```