Hearing Date and Time: June 30, 2011 at 10:00 a.m. (prevailing Eastern Time)
Response Deadline: June 15, 2011 at 4:00 p.m. (prevailing Eastern Time)

Irena M. Goldstein
Evan M. Koster
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for Gila River Power, L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
*In re*                                                          :    Chapter 11
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                     :    Case No. 08-13555 (JMP)
                                                                 :
           Debtor.                                               :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

**RESPONSE OF GILA RIVER POWER, L.P. TO DEBTORS'
ONE HUNDRED THIRTY-EIGHTH OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Gila River Power, L.P. ("Gila River"), by and through its counsel, hereby submits this response (the "Response") to the one hundred thirty-eighth omnibus objection to proofs of claim filed by Gila River, dated May 16, 2011 [Docket No. 16865] (the "Objection"), filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned case (together with LBHI, the "Debtors") and respectfully states:

**BACKGROUND**

1.    Gila River and Lehman Brothers Commodity Services Inc. ("LBCS"), a Debtor in the above-captioned case, entered into the following agreements, each dated as of February 28, 2007: a 1992 ISDA Master Agreement (Multicurrency-Cross Border) and Schedule thereto

(together, the "Master Agreement") and a Credit Support Annex to the Master Agreement (together, the "Agreement"). In addition, pursuant to a Guarantee, dated as of February 28, 2007, LBHI guaranteed LBCS's payment obligations to Gila River under the Agreement. Further, Gila River and LBCS entered into a First Amendment Agreement, dated as of June 5, 2007, incorporating terms governing Physically Settled Power Transactions and Physically Settled Gas Transactions into the Agreement. Capitalized terms used but not defined herein have the meanings set forth in the Agreement.

2. On September 15, 2008, LBHI commenced its chapter 11 case. Pursuant to Section 5(a)(vii) of the Agreement, LBHI's commencement of a chapter 11 case constituted an Event of Default. On September 15, 2008, Gila River provided written notice to LBCS designating September 16, 2008 as the Early Termination Date (the "Termination Notice"). On October 1, 2008, Gila River provided written notice to LBCS specifying an amount payable by LBCS to Gila River as a result of the designation of an Early Termination Date. On October 3, 2008, LBCS commenced its chapter 11 case.

3. On September 22, 2009, Gila River filed a proof of claim for $943,380 (plus unliquidated amounts) against each of LBCS and LBHI, which were assigned claim numbers 27997 and 27998, respectively (together, the "Gila River Claims"). On October 22, 2009, Gila River submitted a timely derivative and guarantee questionnaire with respect to each of the Gila River Claims in accordance with the Court's order establishing the deadline for filing proofs of claim, entered on July 2, 2009 [Docket No. 4271] (the "Bar Date Order").

4. Prior to filing the Objection, the Debtors informed Gila River that they believe that Gila River should have used September 17, 2008, rather than September 16, 2008, as the appropriate Early Termination Date for the purpose of calculating claim amounts, because the

2

Termination Notice was not delivered to LBCS until September 17, 2008. Gila River agreed with the Debtors' assessment and filed amended proofs of claim against LBCS and LBHI on June 9, 2011, which were assigned claim numbers 67523 and 67522, respectively (together, the "<u>Amended Gila River Claims</u>"). The Amended Gila River Claims assert a claim of $952,837 (plus unliquidated amounts) against each of LBCS and LBHI. On June 9, 2011, Gila River amended its derivative and guarantee questionnaires in accordance with the Bar Date Order.

5. By the Objection, the Debtors seek to disallow and expunge the Gila River Claims. As their sole support, the Debtors state:

> After a review of the claimant's supporting documentation and the Debtors' books and records, the Debtors have determined that, based on the fair, accurate, and reasonable values of the subject Derivatives Contracts … and the netting provisions thereunder, the Debtors do not owe any amounts to the claimants but rather either no amounts are owed … or the respective claimants actually owe money to the Debtors … and therefore … the [claims] do not constitute valid *prima facie* claims."

Objection at ¶¶2, 11. The Debtors have not provided any details concerning valuation of the Gila River Claims in the Objection.

6. Gila River, through its counsel, has informed the Debtors that since the Debtors filed the Objection, Gila River has filed the Amended Gila River Claims. The Debtors and Gila River have agreed to treat the Objection to the Gila River Claims as an Objection to the Amended Gila River Claims.

## **ARGUMENT**

7. The Objection should be denied because the Amended Gila River Claims were properly calculated pursuant to the terms of the Agreement and the Debtors have not presented evidence sufficient to rebut the *prima facie* evidentiary effect of such claims.

I.     **The Amended Gila River Claims Were Properly Calculated in Accordance With the Terms of the Agreement**

8.     Pursuant to Part 1(f) of the Schedule, either of the following payment methodologies applies, depending upon the Transaction: (i) Second Method and Market Quotation or (ii) Second Method and Loss. In both instances, Gila River, and not the Debtors, is the party entitled to determine the amount payable pursuant to the Agreement.

9.     With respect to Transactions to which Second Method and Market Quotation apply, Section 6(e) of the Master Agreement provides: "If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount *(determined by the Non-defaulting Party)* in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party" (emphasis added). Section 14 of the Master Agreement defines "Settlement Amount" as follows:

> [T]he sum of … (a) the Termination Currency Equivalent of the Market Quotations … for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined; and (b) such party's Loss … for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result.

Section 14 of the Master Agreement, in turn, defines "Market Quotation" as follows:

> [A]n amount [that is] determined on the basis of quotations from Reference Market-makers. Each quotation will be for an amount, if any, that would be paid to such party … or by such party … in consideration of an agreement between such party … and the quoting Reference Market-maker to enter into a transaction ... that would have the effect of preserving for such party the economic equivalent of any payment or delivery … by the parties in respect of such Terminated Transaction or group of Terminated Transactions that would, but for the occurrence of the relevant Early Termination Date, have been required after that date … *The party making the determination … will request each Reference*

4

> *Market-maker to provide its quotation* to the extent reasonably practicable … on or as soon as reasonably practicable after the relevant Early Termination Date. *The day and time as to which those quotations are to be obtained will be selected in good faith by the party obliged to make a determination under Section 6(e).*

(emphasis added).

10. With respect to Transactions to which Second Method and Loss apply, Section 6(e) of the Master Agreement provides: "If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement." Section 14 of the Master Agreement defines "Loss" as follows:

> [W]ith respect to … a party … an amount that party reasonably determines in good faith to be its total losses and costs … in connection with this Agreement or that Terminated Transaction or group of Terminated Transactions, as the case may be, including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position … *A party will determine its Loss as of the relevant Early Termination Date*, or if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable. A party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets.

(emphasis added).

11. Section 6(d)(i) of the Master Agreement provides: "On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement … showing, in reasonable detail, such calculations."

12. All of the requirements of Sections 6(e) and 6(d)(i) of the Master Agreement have been satisfied. As set forth in the derivative questionnaire, Gila River calculated the amount payable in respect of the Amended Gila River Claims under the Second Method and Market Quotation or Second Method and Loss methodologies, as appropriate. Pursuant to the

5

Agreement, regardless of whether Second Method and Market Quotation or Second Method and Loss applied to a particular Transaction, only Gila River, as the Non-defaulting Party, is allowed to determine the amount payable in respect of an early termination. The Debtors' subjective belief as to what constitutes the fair, accurate, and reasonable value has no bearing on the determination of the amount payable upon early termination.

II.  **The Objection Does Not Present Evidence Sufficient to Rebut the *Prima Facie* Validity of the Amended Gila River Claims**

13. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a properly-filed proof of claim "shall constitute *prima facie* evidence of the validity and amount of the claim." The Amended Gila River Claims were properly filed in a manner consistent with the Bankruptcy Rules and the Bar Date Order. Accordingly, such claims are *prima facie* valid.

14. The Amended Gila River Claims retain their *prima facie* validity until an objecting party offers sufficient proof to the contrary. *See Sherman v. Novack (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)) ("To overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim"); *In re Minbatiwalla*, 424 B.R. 104, 111 (S.D.N.Y. 2010) (same); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (citations omitted) ("the objector bears the initial burden of persuasion … The burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency'"); *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (same).

6

15. The Debtors have not provided *any* evidence to dispute the amount of the Amended Gila River Claims or otherwise shift the burden of proof to Gila River. The Objection only discusses the general process the Debtors undertook that resulted in their conclusion that under the Agreement, the Debtors do not owe any amounts to Gila River or Gila River actually owes money to the Debtors. Neither the Debtors' general claims reconciliation process, nor their conclusion, is supported by the Agreement. Indeed, pursuant to the Agreement, the Debtors are not even allowed to calculate a competing payment amount. In addition, contrary to the Debtors' assertion otherwise, this general process has no bearing on the *prima facie* validity of the Amended Gila River Claims.

16. The only portions of the Objection that approach any substantive criticism of the Amended Gila River Claims are the Debtors' assertions set forth in paragraph 5 hereof. Other than the foregoing assertions, the Debtors have not provided any data or calculation methods in support of their position. Because the Debtors have failed to satisfy their initial burden of persuasion and have not provided remotely sufficient evidence to overcome the *prima facie* validity of the Amended Gila River Claims, these claims remain valid.

17. Even assuming, *arguendo*, that the Debtors were successful in their attempt to refute even a single allegation essential to the legal sufficiency of the Amended Gila River Claims, Gila River must then be afforded the opportunity to refute the Objection and to prove that the Amended Gila River Claims should be allowed. *See Oneida*, 400 B.R. at 389 ("When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed"); *DJK Residential*, 416 B.R. at 105 (same); *Allegheny Int'l*, 954 F.2d at 174 ("If the objector produces sufficient evidence to negate

7

one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence").

18. To the extent the Court does not overrule the Objection, the Objection to the Amended Gila River Claims should proceed in accordance with the Court's order authorizing the Debtors to implement claims hearing procedures and alternative dispute resolution procedures for claims against the Debtor, entered on April 19, 2010 [Docket No. 8474].

WHEREFORE, Gila River respectfully requests that the Court overrule the Objection as it pertains to the Amended Gila River Claims and grant such other or further relief as the Court deems just and proper.

Dated: June 14, 2011
       New York, New York

Respectfully Submitted,

/s/ Irena M. Goldstein
Irena M. Goldstein
Evan M. Koster
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for Gila River Power, L.P.*

8