**Hearing Date: June 30, 2011 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: June 15, 2011 at 4:00 p.m. (prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren Nashelsky
Stacy L. Molison

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
G. Larry Engel
Vincent J. Novak

*Attorneys for CGKL Ventures, LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## RESPONSE OF CGKL VENTURES, LLC TO DEBTORS' ONE HUNDRED THIRTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (MISCLASSIFIED CLAIMS)

Creditor CGKL Ventures, LLC ("CGKL"), by and through its undersigned counsel,

hereby submits this response (the "Response") in opposition to the *Debtors' One Hundred*

*Thirty-Sixth Omnibus Objection to Claims (Misclassified Claims)* [Docket No. 16867], dated

May 16, 2011 (the "Objection"). In support of its Response, CGKL respectfully submits as

follows:

## PRELIMINARY STATEMENT

1.        The Debtors' Objection seeks to "reclassify" as *unsecured* the *secured* portion of CGKL's claim, which consists merely of a reservation of the right of setoff to the extent that the Debtors later attempt to enforce claims against CGKL.  Such a recharacterization by the Objection is wholly improper and inconsistent with Section 506(a) and setoff principles enunciated in the Bankruptcy Code.[1]

2.        The Debtors are attempting to eliminate CGKL's substantive rights for the sake of housekeeping, ignoring the express language of Section 506(a) that defines setoffs as secured claims.  The Debtors have not disclaimed the existence of any claims against CGKL, but nevertheless, by the Objection, they have attempted to eliminate CGKL's right to setoff and to assert a secured claim under Section 506(a) in the event that the Debtors ultimately elect to enforce claims against CGKL under the agreement or other grounds on which CGKL's claim was based.  The Debtors offer no authority for the elimination of rights that they are seeking, and they ignore the contract rights asserted in CGKL's proof of claim by erroneously asserting that "none of the claimants have asserted any obligation that they are seeking to set off."  (Objection at 4.)

3.        Moreover, the Debtors' requested relief implicitly would require that a *creditor* prove a *debtor's* claim, which naturally can only be known to the Debtors.  Such a proposal is clearly untenable and is not contemplated by the Bankruptcy Code.

4.        Therefore, because the Debtors fail to demonstrate any valid grounds for the Objection, CGKL respectfully requests that the Objection be denied as to CGKL and that CGKL

---

[1] References herein to the "Code" or the "Bankruptcy Code" are to Title 11 of the United States Code, as amended.  Statutory references herein are to sections of the Bankruptcy Code unless otherwise specified.

sf-3007202

be permitted to retain its contingent secured claim until such time as the Debtors have disavowed

any claims against CGKL.

## BACKGROUND

5.      CGKL and Lehman Brothers Holdings Inc. ("LBHI") are parties to that certain

Amended and Restated Asset Management and Loan Servicing Agreement, dated as of May 21,

2004, among LBHI, Property Asset Management Inc., Lehman ALI Inc., CGKL, and PCCP

Asset Holding, LLC (as amended, the "Agreement").   A copy of the Agreement is attached to

CGKL's claim.  Pursuant to the terms of the Agreement, CGKL agreed to service certain

mortgage loans and other assets owned by LBHI and/or certain of its affiliates in exchange for

certain fees set forth in the Agreement.

6.      On September 15, 2008, LBHI and certain of its affiliates (collectively, the

"Debtors") filed for chapter 11 relief in the United States Bankruptcy Court for the Southern

District of New York.

7.      On September 18, 2009, CGKL timely filed a proof of claim against LBHI, as the

primary obligor, in an amount to be determined, for all amounts then due or thereafter arising

under the Agreement (the "Claim") [Claim No. 24345], a true and correct copy of which is

attached hereto as Exhibit A.  Under Section 4 of the Claim, regarding secured claims, CGKL

noted that "Claimant reserves its right of setoff against any and all claims, as described in the

attached Addendum."  On the Addendum, CGKL (referred to as "PCCP" in the Claim) noted the

following:

> Although PCCP is not aware of any liability by PCCP to LBHI,
> PCCP reserves any and all setoffs, which may be secured claims
> under 11 U.S.C. § 506(a), as well as all rights to recoupment.

Claim at 3.

sf-3007202

8.      On May 16, 2011, the Debtors objected to the Claim by filing the Objection,
attempting to reclassify the Claim as wholly unsecured but offering no authority supporting the
proposed stripping of CGKL's rights.

## RESPONSE

9.      The Objection should be denied with respect to the Claim filed by CGKL because
the Bankruptcy Code expressly permits a claimant to offset mutual, prepetition debts owing by a
creditor to the debtor, and the Code treats any such claims subject to setoff as secured.  The fact
that a claim is contingent and unliquidated—here, based upon the fact that the Debtors have not
yet asserted a claim against CGKL (which claim can only be known to the Debtors)—is not a
valid basis for denying the claim.

10.     Section 506(a) of the Bankruptcy Code makes clear that claims "subject to setoff"
are secured claims "to the extent of the amount subject to setoff." 11 U.S.C. § 506(a)(1).[2]
Section 553(a), in turn, preserves the common-law right of setoff. "The right of setoff (also
called 'offset') allows entities that owe each other money to apply their mutual debts against
each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of
Md. v. Strumpf*, 516 U.S. 16, 18 (1995).[3]

---

[2] Section 506(a)(1) provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate
> has an interest, *or that is subject to setoff under 553 of this title*, is a secured
> claim to the extent of the value of such creditor's interest in the estate's interest
> in such property, or *to the extent of the amount subject to setoff*, as the case may
> be, and is an unsecured claim to the extent that the value of such creditor's
> interest or the amount so subject to setoff is less than the amount of such
> allowed claim.

(emphasis added).

[3] Section 553(a) provides as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this
> title, *this title does not affect any right of a creditor to offset a mutual debt*

(Footnote continues on next page.)

sf-3007202

11.     Moreover, Section 101(5)(A) defines "claim" to include rights to payment "whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" (emphasis added).  Section 501(a) permits a creditor to "file a proof of claim," which necessarily allows a creditor to assert precisely the kind of "contingent" and "unliquidated" claim to which the Debtors object.  *See generally In re Chateaugay Corp.*, 94 F.3d 772 (2d Cir. 1996) (language in proof of claim not sufficient to waive the right of setoff).

12.     It is thus clear that, in the event that LBHI should assert a claim against CGKL, (i) CGKL is entitled to offset any claim by LBHI against the amounts asserted by CGKL in its Claim, to the extent that both such debts were mutual, prepetition debts, and (ii) such setoff amount would be deemed secured under Section 506(a)(1). The Claim thus properly reflected such rights.  *See* 11 U.S.C. §§ 101(5), 501 (allowing for the filing of contingent and unliquidated proofs of claim, whether secured or unsecured).

13.     According to the Objection, however, "the claimants are asserting a hypothetical right of setoff, which is not a valid basis for a secured claim."  (Objection at 4.)  The Debtors cite no authority for this proposition.  Moreover, there is nothing "hypothetical" about CGKL's reservation of rights giving rise to the secured portion of the Claim or the contractual relationship referenced in the proof of claim.  The Claim is based upon the existing Agreement between the parties, the relevant events of which already came to pass prior to the petition date.  The only contingency that remains is the Debtors determining whether or not they will file suit against

---

(Footnote continued from previous page.)

> *owing by such creditor to the debtor* that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

(emphasis added).

sf-3007202

CGKL, and the liquidated amount of such a claim.  Although CGKL is not aware of any valid

claims that the Debtors may have against it, CGKL cannot be expected to predict all manner of

claims that the Debtors may choose to pursue, and CGKL has no insight into the Debtors'

litigation strategy.  The fact that the Debtors have not yet acted cannot provide grounds to

eliminate CGKL's secured claim.

14.    Moreover, it is well established that even contingent claims are entitled to setoff:

> As a general rule, a claim is eligible for setoff even though
> contingent at the time of the commencement of the case, and even
> though the claim remains contingent until after confirmation of the
> debtor's plan. By definition, a contingent claim is properly a claim,
> and if there is a need to fix the amount of a contingent claim at
> some point for some purpose (e.g., in order to fix the debtor's
> liabilities for plan confirmation), the remedy is to estimate the
> amount of the claim, not treat the liability as though it did not
> exist.

5 COLLIER ON BANKRUPTCY ¶ 553.03 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)

(citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996);

*Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 238 (B.A.P. 9th Cir.

1991); *In re Elsinore Shore Assocs.*, 67 B.R. 926, 936-946 (Bankr. D.N.J. 1986); *Stair v.*

*Hamilton Bank of Morristown (In re Morristown Lincoln-Mercury, Inc.)*, 42 B.R. 413, 417-18

(Bankr. E.D. Tenn. 1984)).  Even if the claim remains contingent during the pendency of the

bankruptcy case, the claim remains valid.  According to *Collier*:

> [I]f the contingency does not ripen during the course of the debtor's
> bankruptcy case, . . . the setoff might be preserved and postponed
> until such time as the contingency resolves itself.

COLLIER ON BANKRUPTCY ¶ 553.03.

15.    Here, the secured portion of CGKL's is contingent upon the Debtors asserting

claims against CGKL that are known only to the Debtors.  If and when the Debtors attempt to

enforce such claims, the contingency will be satisfied and CGKL will be entitled to offset any

such debts owing against the amount of CGKL's claims against the Debtor.  This setoff would give rise under the Code to a secured claim to the extent of the setoff.  *See* 11 U.S.C. § 506(a).  If the contingency never comes to pass, the setoff is simply preserved by virtue of the proof of claim expressly permitted by Section 501.

16.    It is telling that the Debtors have not disavowed the existence of any claims against CGKL.  Rather, the Debtors have simply "determined" that "no portion of [CGKL's claim] [is] actually secured," and have argued that the Claim is thus not entitled to secured status.  (Objection at 2.)    The Debtors demand dismissal of CGKL's reserved rights under Section 506(a) because:

> . . . none of the claimants have asserted any obligation that they are seeking to setoff against the Misclassified Claims.  The claimants are asserting a hypothetical right of setoff, which is not a valid basis for a secured claim.

(Objection ¶ 9.)  In effect, the Debtors would use the creditors' bar date to eliminate setoffs by deferring their own assertions of claims until after they have stripped the reserved setoff claims, since no one but the Debtors can know what claims the Debtors may ultimately assert.  But for the bankruptcy filing and the automatic stay, the creditors would be able to protect their setoffs, such as by seeking declaratory relief forcing mandatory counterclaims from the Debtors.  However, under the proof of claims process mandated by the Bankruptcy Code, the best that creditors can cost-effectively do is to reserve the right of setoff until the Debtors either waive or assert claims.  Clearly, the Debtors cannot strip away setoff rights in this manner and then lawfully enforce claims against the creditors.  If the Debtors were successful in such an endeavor, this would clearly create a basis for CGKL's assertion of the defenses of estoppel, unclean hands and other defenses against any future asserted claims

sf-3007202

17.     CGKL was obligated to assert any and all claim against the Debtors—including any contingent or unliquidated claims that may arise as a result of action later taken by the Debtors—by the applicable claims bar date, or it would lose its right to later assert such claims. The assertion of such a contingent claim is necessary protection against future action by the Debtors, protection to which CGKL is entitled under the Bankruptcy Code.

18.     Therefore, since CGKL has asserted appropriate rights to which it is entitled under the Code, the Debtors' Objection to the Claim has no basis, unless and until the Debtors themselves waive or disclaim any claims that could be the basis for a setoff. The Debtors cannot use an objection like this to strip a Section 506(a) setoff lien and then assert the claims that could have been offset, which would be inequitable as well as being subject to the defenses of unclean hands, estoppel and other defenses depending on the circumstances.

19.     The Debtor will suffer no prejudice if the secured portion of the Claim is permitted to remain. This is not a situation in which CGKL is seeking secured treatment of an otherwise unsecured claim—rather, CGKL is merely asserting contingent rights to a claim that is secured *only to the extent* that the Debtors later assert a claim against CGKL, which then would indeed be secured under the Bankruptcy Code. If the Debtors assert no such claim, then CGKL's claim will be exclusively an unsecured one.

## CONCLUSION

20.     CGKL's secured claim is a validly asserted contingent and unliquidated claim that protects CGKL's rights under the Code to setoff in the event that the Debtors elect to enforce any claim against CGKL in connection with their prior business arrangement. The Debtors cannot eliminate CGKL's substantive rights granted under the Code and strip CGKL's Section 506(a)

lien simply for their own administrative convenience, particularly without waiving the Debtors'

claims that could be offset.

WHEREFORE, CGKL respectfully requests that the Court (i) deny the Objection as it

pertains to the Claim filed by CGKL, (ii) allow the Claim to its fullest extent, including as to the

secured portion of the Claim under Section 506(a), and (iii) grant any other relief that is just and

proper.

Dated: June 15, 2011                   Respectfully submitted,
     New York, New York

By:    /s/ *Larren Nashelsky*
       MORRISON & FOERSTER LLP
       Larren Nashelsky
       Stacy L. Molison
       1290 Avenue of the Americas
       New York, New York 10104
       Telephone: (212) 468-8000
       Facsimile: (212) 468-7900

       G. Larry Engel
       Vincent J. Novak
       425 Market Street
       San Francisco, CA 94105
       Telephone: (415) 268-7000
       Facsimile: (415) 268-7522

       *Attorneys for Creditor*
       *CGKL Ventures, LLC*

# EXHIBIT A

| *United States Bankruptcy Court/Southern District of New York*<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)       0000024345 |
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings Inc.** | Case No. of Debtor:<br>08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br>**CGKL Ventures, LLC**<br>**150 California Street**<br>**22nd Floor**<br>**San Francisco, CA 94111**<br>**Attn: Bryan Thornton**<br><br>**With a copy to: Morrison & Foerster LLP**<br>**425 Market Street**<br>**San Francisco, CA 94105**<br>**Attn: G. Larry Engel (lengel@mofo.com); (415) 268-7000**<br><br>Telephone number: **415.732.7645**   Email Address: **bthornton@pccpllc.com** | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)<br><br><br><br>Telephone number:   Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed: **Amount to be determined (see attached Addendum)** | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*

☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO** http://www.lehman-claims.com **AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. **See attached Addendum.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

| 2. Basis for Claim: **Obligations arising in connection with Servicing Agreement (defined and specified in attached Addendum)**<br>(See instruction #2 on reverse side.) |
|---|
| 3. Last four digits of any number by which creditor identifies debtor: **N/A**<br>3a. Debtor may have scheduled account as: **N/A**<br>(See instruction #3a on reverse side.) |
| 4. Secured Claim (See instruction #4 on reverse side.) **See attached Addendum.**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br>Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☒ Other<br><br>Describe: **Claimant reserves its right of setoff against any and all claims, as described in attached Addendum.**<br><br>Value of Property: $ *   Annual Interest Rate *%<br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br>$ *   Basis for perfection: *<br><br>Amount of Secured Claim: $ *   Amount Unsecured: $ *<br>*See attached Addendum. |

Amount entitled to priority:
$_____

| 6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____<br>(See instruction #6 on reverse side.) |
|---|

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary. **See attached Addendum for description of documents.**

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

**SEP 21 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Date:<br>9/18/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>**Bryan Thornton, Authorized Signatory** |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

sf-2740761

## ADDENDUM TO PROOF OF CLAIM
### (Servicing Agreement)

**Debtor:**    Lehman Brothers Holdings Inc. ("LBHI")

**Creditor:**    CGKL Ventures, LLC ("PCCP")

## Amount of and Basis for Claim

PCCP and LBHI are parties to that certain Amended and Restated Asset Management and Loan Servicing Agreement, dated as of May 21, 2004 (as amended from time to time, the "Servicing Agreement"), among LBHI, Property Asset Management Inc. ("PAMI"), Lehman ALI Inc. ("ALI" and together with LBHI and PAMI, "Lehman"), PCCP, and PCCP Asset Holding, LLC. A true and correct copy of the Servicing Agreement is attached hereto as Exhibit A. (Terms used but not otherwise defined herein have the meanings given them in the Servicing Agreement.)

PCCP asserts a claim against LBHI for all amounts now due or hereafter arising, under or in connection with the transactions set forth in or related to the Servicing Agreement, whether such amounts are liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, or equitable.

## Reservation of Rights

PCCP reserves the right to amend and/or supplement this proof of claim at any time for any reason whatsoever, in order to assert such other and additional amounts as it determines is owed to it, including to add additional amounts accruing or otherwise owing at any time. PCCP further reserves the right to amend and/or supplement this proof of claim with respect to any additional documents or grounds of liability.

PCCP reserves the right to assert claims for interest and attorneys' fees to the extent allowed under applicable law.

The execution and filing of this proof of claim is not: (i) a waiver or release of PCCP's rights against any other entity or person that may be liable for all or any part of the claims asserted herein; (ii) consent by PCCP to the jurisdiction of this Court with respect to any proceeding commenced in these cases against or otherwise involving LBHI or its affiliates and/or PCCP; (iii) a waiver of the right to withdraw the reference with respect to the subject matter of this proof of claim, any objection or other proceeding commenced with respect thereto or any other proceedings commenced in these cases or otherwise involving LBHI or its affiliates and/or PCCP; (iv) an election of remedies that waives or otherwise affects any other remedy; or (v) a waiver of any of PCCP's rights under or related to the Servicing Agreement or any transactions entered into in connection therewith.

Although PCCP is not aware of any liability by PCCP to LBHI, PCCP reserves any and all setoffs, which may be secured claims under 11 U.S.C. § 506(a), as well as all rights to recoupment.

3

## **Documents**

Exhibit A:     Amended and Restated Asset Management and Loan Servicing Agreement, dated
as of May 21, 2004, among LBHI, PAMI, ALI, PCCP, and PCCP Asset Holding,
LLC.

**EXHIBIT A**
**TO**
**PROOF OF CLAIM:**

**Amended and Restated Asset Management and**
**Loan Servicing Agreement**

**Debtor:**      Lehman Brothers Holdings Inc.

**Creditor:**    CGKL Ventures, LLC

*(**See attached**)*

5

## AMENDED AND RESTATED
## ASSET MANAGEMENT AND LOAN SERVICING AGREEMENT

This Amended and Restated Asset Management and Loan Servicing Agreement dated as of May 21, 2004 (this "Agreement") among Lehman Brothers Holdings Inc. ("LBHI"), a Delaware corporation having an address at 3 World Financial Center, 399 Park Avenue, 8th Floor, New York, New York 10022, Property Asset Management Inc., a Delaware corporation ("PAMI"), and Lehman ALI Inc., a Delaware corporation ("ALI" and together with LBHI and PAMI, "Lehman"), CGKL Ventures, LLC, a Delaware limited liability company doing business in California as Pacific Coast Capital Partners, LLC ("PCCP"), and PCCP Asset Holding, LLC, a Delaware limited liability company, having an address at 1960 East Grand Avenue, Suite 400, El Segundo, California 90245 ("PAH").

<u>Background</u>

A.      Lehman has acquired and may hereafter acquire mortgage loans and related collateral ("Mortgage Loans"), ownership interests in real properties, equity interests in entities that acquire, own, develop or manage real property and other related assets (collectively, including Mortgage Loans, "Assets"), certain of which have been presented to, and negotiated and documented and/or originated on behalf of, Lehman by PCCP ("PCCP-Originated Assets").

B.      Lehman and PAH are party to the Asset Management and Loan Servicing Agreement dated as of July 15, 2001 (the "Existing Servicing Agreement"), and Lehman, PAH and PCCP now wish to effect a novation and substitute PCCP for PAH as a party to the Existing Servicing Agreement, as amended and restated hereby, and a release by Lehman of PAH from all of PAH's obligations hereunder that are to be, or would have been, required to be performed on or after May 21, 2004 (the "Effective Date") in consideration of the assumption of those obligations by PCCP.  This Agreement amends and restates the Existing Servicing Agreeemnt in its entirety.

C.      Lehman wishes to have PCCP service specified Assets pursuant to this Agreement, and PCCP has agreed to do so, and Lehman has agreed that PCCP shall have the right to be special servicer with respect to all PCCP-Originated Assets in respect of which PCCP does not act as servicer, all on the terms and conditions set forth below.

<u>Terms and Conditions</u>

1.      <u>Substitution of PCCP, as Servicer</u>.  PAH hereby assigns all of its rights under the Existing Servicing Agreement (including, without limitation, all of its rights to receive payments under Section 8 hereof for all periods commencing on the Effective Date, but not its right to receive such payments for all periods ended prior to the Effective Date), and delegates all of its obligations thereunder, to PCCP, and PCCP hereby accepts such assignment and delegation and agrees to perform all of its obligations set forth herein from and after the Effective Date.  Lehman hereby consents to such assignment and delegation, and agrees to release PAH from all of its obligations hereunder from and after the Effective Date.  In connection with such assignment and delegation, PAH and PCCP hereby terminate the Management Services Agreement dated as of July 15, 2001 between PAH and PCCP, which Management Services

Agreement shall be of no further force or effect from and after the Effective Date, and Lehman hereby consents to such termination.

      2.    <u>Assets Covered by This Agreement</u>. PCCP shall service the Mortgage Loans and/or other Assets that Lehman shall acquire or make during the term hereof that are designated in writing by Lehman and accepted in writing by PCCP for management or servicing by PCCP under this Agreement. (All Assets that were so designated in writing by Lehman, and so accepted by PAH, under the Existing Servicing Agreement, shall continue to be Assets covered by this Agreement from and after the Effective Date.) PCCP shall have the right to be special servicer in respect of all PCCP-Originated Assets, and as such shall have the rights and responsibilities set forth in Section 5 hereof, in addition to any other servicer that may be appointed by Lehman in respect of such Assets.

      3.    <u>PCCP's Standards and Responsibilities</u>.

      (a)    <u>General Standards</u>. Subject to the terms and conditions of this Agreement, PCCP shall diligently perform its obligations hereunder in good faith in the best interests of Lehman in accordance with (i) applicable law, (ii) the express terms hereof, (iii) asset management and loan servicing standards for performing and non-performing commercial mortgage loans and equity positions that are customarily employed by prudent institutional loan servicers and asset managers with respect to comparable mortgage loans and equity positions held for their own account, (iv) the terms of any agreements governing each Mortgage Loan or other Asset and (v) directions given in writing from time to time by Lehman. Notwithstanding the delegation of duties, obligations or responsibilities hereunder to PCCP, all of PCCP's power and authority under this Agreement is non-exclusive and Lehman retains the right to act directly on behalf of Lehman with respect to the Assets or to direct PCCP's actions in respect thereof, and PCCP agrees to follow any such direction and not to interfere with any action taken directly by Lehman. PCCP shall keep Lehman informed through periodic reporting of any event, circumstance, correspondence or other communication or occurrence of which PCCP receives knowledge affecting in any material way any of the Assets (including, without limitation, any default under a Mortgage Loan document) or the ability of PCCP to perform its obligations hereunder.

      (b)    <u>Conflicts of Interest</u>. The parties recognize that PCCP or its Affiliates (as defined below) may wish to enter into a transaction involving an Asset where the interests of PCCP or its Affiliates are or may be in conflict with the interests of Lehman. Such a transaction might include (without limitation) the anticipated or actual acquisition of an interest in an Asset or the anticipated or actual performance of a service with respect to an Asset not already required to be performed by PCCP under this Agreement. Such a transaction shall be permitted only if (A) PCCP has made full disclosure to Lehman of all facts known to it and material to the proposed transaction and the interests of PCCP, its Affiliates or others in that transaction and related transactions and (B) Lehman has approved the transaction in writing. For purposes of this Agreement, an Affiliate of a person or legal entity shall mean any person or legal entity controlling, controlled by or under common control with that person or legal entity. References to "control" in the preceding sentence and in Section 8(a)(2)(B) below shall have the meaning set forth in Rule 405 under the Securities Act of 1933 and court decisions and Securities and Exchange Commission interpretations thereunder.

4.    <u>Administrative Responsibilities as Servicer in respect of Assets</u>.  PCCP shall use commercially reasonable efforts (i) to collect payments of principal and interest and other amounts owed with respect to the Assets, (ii) to obtain financial, informational or other statements required to be delivered with respect to the Assets, (iii) at Lehman's cost and expense, to maintain insurance on each real property securing a Mortgage Loan to the extent not maintained by the Mortgagor as described in Section 7, (iv) to cause each Mortgagor to comply with payment, insurance, escrow deposit and other requirements of the Mortgage Loans, (v) to cause each Mortgagor to prepare, sign and file or record all continuation statements or other agreements or documents necessary or specified by Lehman, to perfect or maintain the priority interest of all liens and security interests in favor of Lehman with respect to each Mortgage Loan, and (vi) to perform all related record keeping and other activities.  PCCP shall not, however, be responsible for the preparation of financial statements or the preparation or filing of tax returns with respect to the Assets, which shall be the responsibility of Lehman.

PCCP will pay taxes and insurance premiums on real property securing a Mortgage Loan for which monies have been escrowed by the Mortgagor pursuant to the applicable Mortgage Loan documents, and will monitor the payment of taxes and insurance premiums with respect to Mortgage Loans for which no escrow is required.  If a deficiency exists, PCCP will notify both Lehman and the Mortgagor of such deficiency.  In no event will PCCP be required to advance its own funds.  PCCP will, however, take action as directed by Lehman or as provided in the Mortgage Loan documents to protect Lehman's rights, at Lehman's cost and expense.

All sums received or held by PCCP or any of its Affiliates hereunder shall be received and held for the benefit of and in trust for Lehman and all interest or other amounts earned on any such sums shall be paid or credited to Lehman.  Unless otherwise directed by Lehman in writing, PCCP shall cause all sums collected by or on behalf of PCCP or Lehman in respect of the Assets (other than amounts to be deposited in reserve accounts pursuant to the documentation regarding each Asset) to be made payable and remitted over (after deduction of any fees or expenses payable to PCCP or its Affiliates) to an interest-bearing account designated by Lehman as promptly as practicable or within the time specified by Lehman, but in no event later than the 15th day of each calendar month with respect to all sums received on or after the 11th calendar day of the prior month and through the 10th day of the current calendar month.

On or before the 15th day of each calendar month, PCCP shall deliver to Lehman a written report in a format approved by Lehman covering the preceding calendar month and setting forth (on a cash basis) (A) all revenues and payments received and all costs and expenses paid or incurred by PCCP or Lehman (and known to PCCP) relating to the Assets and this Agreement, (B) a report on delinquencies or defaults involving Mortgage Loans and (C) such other data as is requested by Lehman.  No later than 30 days after December 31 in each year, PCCP shall deliver to Lehman a written report in a format approved by Lehman covering the 12-month period ending December 31, describing all material changes or developments relating to the Assets and setting forth (on a cash basis and supplying appropriate classifications and detail) all revenues and payments received and all costs and expenses paid or incurred by PCCP or Lehman relating to the Mortgage Loans and this Agreement and such other data as shall be requested by Lehman.  Lehman shall deliver to PCCP from time to time such powers of attorney or other authority from Lehman as PCCP shall reasonably request (and Lehman reasonably

determines are necessary or appropriate) to permit PCCP to perform its duties under this Agreement.

5.    Administrative Rights and Responsibilities as Special Servicer; Appointment as Attorney-in-Fact.  Subject to the third sentence of this Section 5, in its capacity as special servicer in respect of PCCP-Originated Assets, PCCP shall have the right to take any action, on behalf of Lehman and in the name of Lehman or in its own name, which Lehman is permitted or required to take under the applicable Mortgage Loan or other Asset documents, other than, in the case of Mortgage Loans in respect of which Lehman has appointed another servicer, clerical and ministerial actions and other actions customarily taken by loan servicers in the ordinary course of business of the general nature described in Section 4 which are intended by Lehman and PCCP to be performed by such other servicer.  Without limitation, but subject to the following sentence, PCCP as special servicer shall have the right, on behalf of Lehman and in the name of Lehman or in its own name, to execute amendments to the applicable Mortgage Loan or other Asset documents and to grant or withhold waivers of the provisions thereof, to give default notices, to exercise default remedies and to take any other action requiring, under the terms of the applicable Mortgage Loan or other Assets documents (and under any applicable servicing agreement with any person other than PCCP or any of its Affiliates), the exercise of discretion by Lehman.  PCCP agrees that it will take no action described in the preceding sentence or otherwise in its capacity as special servicer of any of the PCCP-Originated Assets, without obtaining the prior approval of such action by Lehman.

6.    Records.  All papers and documents, tax receipts, insurance policies and premium receipts, correspondence and other records of whatever kind or description, whether developed by PCCP or not, that relate to the Assets shall be and remain at all times the property of Lehman.  Any such records which are in or come into the possession of PCCP are retained by PCCP solely for the purpose of PCCP's servicing hereunder.  Upon termination of this Agreement, PCCP shall, in addition to complying with the last paragraph of Section 10, immediately deliver all such records to or as directed by Lehman.

PCCP shall maintain accurate and complete records (including agreements and correspondence) with respect to its servicing of the Assets to the extent necessary or appropriate to evidence compliance by PCCP with this Agreement and to facilitate the preparation of financial statements and tax returns.

PCCP shall permit representatives of Lehman to examine all the material described above during regular business hours upon reasonable prior written notice.

7.    Insurance.  PCCP shall keep in force during the term of this Agreement errors and omissions insurance coverage of at least $1.0 million and fidelity bond insurance coverage of at least $2.0 million.  These coverages may be maintained by PCCP under a blanket insurance policy covering PCCP and its Affiliates.

Promptly after PCCP is appointed servicer of a Mortgage Loan becomes pursuant to this Agreement, PCCP shall determine whether the borrower is maintaining the insurance required under that Mortgage Loan.  To the extent permitted by the Mortgage Loan, PCCP shall also cause each borrower to designate Lehman as a loss payee of such insurance by endorsement of

each relevant policy on terms no less favorable than those in the California Standard Mortgagee's Loss Payable Clause. If a borrower fails for any reason to maintain insurance on such terms, PCCP shall promptly obtain comparable insurance coverage (funded from the borrower's escrow therefore or funded by Lehman) to the extent permitted by the Mortgage Loan on terms PCCP believes are commercially reasonable under the circumstances.

8.      Compensation of PCCP.  Unless otherwise agreed by Lehman and PCCP with respect to a particular Asset or Assets (other than PCCP-Originated Assets), as compensation for its services hereunder, Lehman shall pay to PCCP on a monthly basis fees calculated as follows ("Fees"):

(a)      For each Mortgage Loan in respect of which PCCP is servicer pursuant to this Agreement and held by Lehman at the beginning of each calendar month, PCCP shall be paid a monthly fee equal to one-twelfth of the outstanding principal amount of such Asset at the beginning of the calendar month multiplied by the annual fee rate set forth below opposite the appropriate description for such Asset multiplied by the actual number of days in such calendar month divided by 360.

(1)      For Mortgage Loans for which the Mortgagor does not make payments of principal and interest into a lockbox account established by the servicer pursuant to a cash collateral or lockbox agreement:

| Principal Balance | Annual Fee Rate |
|---|---|
| Less than $10,000,000 | 30.0 basis points |
| $10,000,000 to $24,999,999 | 15.0 basis points |
| $25,000,000 to $49,999,999 | 10.0 basis points |
| $50,000,000 to $74,999,999 | 7.5 basis points |
| More than $75,000,000 | 5.0 basis points |

(2)      For all other Mortgage Loans:

| Principal Balance | Annual Fee Rate |
|---|---|
| Less than $10,000,000 | 45.0 basis points |
| $10,000,000 to $24,999,999 | 25.0 basis points |
| $25,000,000 to $49,999,999 | 15.0 basis points |
| $50,000,000 to $74,999,999 | 10.0 basis points |
| More than $75,000,000 | 7.5 basis points |

(b)    For each Mortgage Loan with respect to which PCCP acts as co-servicer with another servicer that has been appointed by Lehman, PCCP shall be paid a monthly fee equal to one-half (½) of the monthly servicing fee for such Mortgage Loan set forth in Section 8(a), provided that such other servicer is responsible for providing all cash management, accounting, lockbox administration and other similar services and PCCP is not responsible therefor.

(c)    For each equity investment in respect of which PCCP is servicer pursuant to this Agreement and held by Lehman at the beginning of each calendar month, PCCP shall be paid a monthly fee equal to the greater of (x)  the aggregate amount invested by Lehman in such equity investment and not theretofore returned, multiplied by .60 percent (60 basis points)  · multiplied by the actual number of days in such calendar month divided by 360, or (y) $6,000.

(d)    In the event that the commitment of ALI to made additional Revolving Credit Advances (as therein defined) under the Loan Agreement dated as of May 21, 2004 (the "Loan Agreement") between PCCP and ALI is terminated, then the annual rate at which fees accrue hereunder in respect of each PCCP-Originated Asset then outstanding shall be adjusted to be the rate that, as of the end of the calendar month most recently ended prior to such termination (and assuming that the then outstanding principal amount of Mortgage Loans and invested amount in respect of equity investments remained unchanged throughout the relevant calculation period), would result in (1) the aggregate annual fees payable hereunder in respect of all such Assets being equal in amount to one-half (½) of all budgeted expenditures (including overhead expenses of PCCP) reflected in the Approved Budget (as defined in the Loan Agreement) for the calendar year in which such termination occurs, and (2) the ratio of (x) the annual fees accruing in respect of such Asset at such adjusted rate to (y) the annual fees accruing in respect of all such Assets at the respective adjusted rates applicable thereto, is the same as the ratio of (A) the annual fees accruing in respect of such Asset at the rate in effect immediately prior to such adjustment to (B) the annual fees accruing in respect of all such Assets at the respective rates applicable thereto immediately prior to such adjustment.  Fees shall accrue at such adjusted annual rate in respect of each PCCP-Originated Asset that then exists until such Asset is Resolved (as defined in Section 10 hereof).

(e)    The fees shall be paid to PCCP by the obligor under each Asset to the extent provided in the documentation governing such Asset, and any balance due shall be paid by Lehman.  PCCP shall calculate the fees monthly, subject to review and approval by Lehman. These Fees shall be paid to PCCP on a monthly basis.  Any dispute regarding Fees shall be resolved by the parties in good faith and any required adjustment shall be reflected in the next month's calculations.

9.    Expenses.  PCCP shall pay directly out of funds maintained by PCCP on behalf of Lehman all fees, expenses and other costs of third-party contractors for property inspections, market study reports, legal reviews, environmental assessment and database services and all reasonable and necessary duplicating expenses incurred by PCCP for third party contractors under this Agreement; provided that PCCP shall obtain Lehman's prior approval before incurring an expense in excess of $5,000 for any single item or series of related items.  Except as specifically described above or agreed in writing by Lehman, the fees, costs or expenses to be paid by Lehman or reimbursed to PCCP under this Agreement shall not include, and PCCP shall

not be entitled to any reimbursement from Lehman for, the use of PCCP's facilities or equipment, PCCP's salaries and overhead. All costs or expenses to be deducted by or reimbursed to PCCP pursuant to this Agreement (other than the fees described in Section 7 hereof) shall be supported by delivery to Lehman by PCCP of documentation (including invoices and other receipts) of such fees, costs and expenses in reasonable detail.

10.   Term; Termination.

(a) This Agreement shall remain in effect until all PCCP-Originated Assets that are subject hereto have been Resolved. A Mortgage Loan shall be "Resolved" when Lehman sells, transfers or otherwise disposes of the entirety of its interest therein to any person or entity other than an affiliate of Lehman (other than in connection with a securitization that includes such Asset), or the principal of and interest on such Mortgage Loan, and all other amounts payable with respect thereto, have been paid in full, or Lehman determines in good faith that it will not receive any further payments thereof as a result of the uncollectability of such Mortgage Loan; an equity investment shall be "Resolved" if Lehman sells, transfers or otherwise disposes of the entirety of its investment to any person or entity other than an affiliate of Lehman in accordance with the limited partnership agreement, limited liability company agreement or other organizational documents ("Organizational Documents") of the entity in which such investment has been made, or Lehman has received all amounts to which it is entitled under the Organizational Documents of such entity with respect to such investment or Lehman otherwise determines in good faith that it will not receive any further amounts with respect thereto.

(b)   Lehman may at its option terminate this Agreement with respect to one or more Assets (other than PCCP-Originated Assets) without payment of any termination or other fee (unless otherwise agreed by Lehman and PCCP, in their respective sole discretion, in respect of particular Assets or Assets) by giving PCCP written notice of such termination at least 30 days prior to the termination date specified by Lehman.

(c)   This Agreement shall be terminable at the sole option of Lehman, if any of the following events occur and continue with respect to PCCP:

(1)   any failure to remit to Lehman any payment required to be made under the terms of this Agreement which continues unremedied for a period of five (5) days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to PCCP by Lehman; or

(2)   misappropriation by PCCP or any of its Affiliates (other than LBHI or any of its Affiliates) of money or any fraud by PCCP or any such Affiliate in connection with performance of PCCP's obligations hereunder; or

(3)   failure by PCCP to observe or perform in any material respect any other of the covenants or agreements on the part of PCCP set forth in this Agreement which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to PCCP by Lehman, unless PCCP shall have determined, based on the advice of counsel, that observance or performance of

such covenant or agreement would be unlawful or expose it or its affiliates to material third-party liability; or

(4)     a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, including bankruptcy, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against PCCP and such decree or order shall have remained in force undischarged or unstayed for a period of 60 days; or

(5)     PCCP shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment or debt, marshaling of assets and liabilities or similar proceedings of or relating to PCCP or of or relating to all or substantially all of its property; or

(6)     PCCP shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency, bankruptcy or reorganization statute, make an assignment for the benefit of its creditors, voluntarily suspend payment of its obligations; or

(7)     PCCP attempts to assign its right to servicing compensation hereunder or PCCP attempts, without the consent of Lehman, to sell or otherwise dispose of all or substantially all of its assets or to assign this Agreement or to delegate its obligations hereunder or any portion thereof; or

(8)     an Event of Default has occurred and is continuing under the $25 Million Loan Agreement dated as of June 1, 2004 between PCCP and Lehman ALI Inc.; or

(9)     a material breach of the Amended and Restated Noncompetition and Exclusivity Agreement dated as of June 1, 2004 among PCCP and certain of its affiliates and Lehman and certain of its affiliates, has occurred and is continuing.

(d)     Promptly upon termination of this Agreement with respect to all or any portion of the Assets covered hereby, PCCP shall (a) pay over to Lehman or its designee all moneys collected or held by or on behalf of Lehman in respect of such Assets, (b) deliver to Lehman a final report with respect to such Assets and (c) otherwise use reasonable, good faith efforts to effect the orderly and efficient transfer of PCCP's duties hereunder to Lehman or its designee.  These requirements shall survive termination of this Agreement

11.     <u>Indemnification by PCCP</u>.  Except to the extent provided in the next sentence. PCCP agrees to indemnify and hold harmless Lehman and its Affiliates from any losses, damages, claims, fees (including, without limitation, attorneys fees) and expenses resulting from PCCP's bad faith, gross negligence or willful misconduct or its violation of law or breach of this Agreement; <u>provided</u>, <u>however</u>, that under no circumstances will PCCP be responsible for, or indemnify Lehman against any act or omission which PCCP takes or fails to take pursuant to the instructions of Lehman.  Nothing contained in this indemnity shall relieve Lehman from responsibility to PCCP for breach of this Agreement, including the obligation to indemnify and

hold PCCP and its Affiliates harmless pursuant to Section 12. This Section shall survive termination of this Agreement.

12.    Indemnification by Lehman. Except to the extent provided in the next sentence, each of LBHI, ALI and PAMI agrees to defend promptly and diligently, at the sole expense of LBHI, ALI or PAMI, as the case may be, any claim, action or proceeding brought against PCCP or any of its Affiliates or PCCP, any such Affiliate and LBHI, ALI or PAMI, as the case may be, or any of their respective Affiliates, jointly or severally, arising out of or connected with PCCP's carrying out the provisions of this Agreement or acting under the express or implied directions of LBHI, ALI or PAMI, as the case may be, with respect to a Mortgage Loan made by LBHI, ALI or PAMI, respectively, or in accordance with the documentation governing such Mortgage Loan, and to hold harmless and fully indemnify PCCP and its Affiliates from any judgment, loss or settlement on account thereof. Each of LBHI's, ALI's and PAMI's indemnity obligations under this Section 12 shall apply only with respect to Mortgage Loans made by it. The foregoing sentence shall not apply to, and nothing contained in this indemnity shall relieve PCCP from responsibility to LBHI, ALI or PAMI, as the case may be, pursuant to Section 11 for PCCP's bad faith, gross negligence, willful misconduct or violation of law or breach of this Agreement. This Section shall survive termination of this Agreement.

13.    Other Provisions. Except as provided in the next sentence, this Agreement is not assignable by either party without the prior written consent of the other party. Lehman may assign this Agreement and the Assets to one of its Affiliates. Subject to such limitation, this Agreement shall inure to the benefit of the parties hereto and their successors and assigns. All accounting and financial determinations under this Agreement shall be made in accordance with generally accepted accounting principles consistently applied unless an exception is expressly described herein. Any notice hereunder shall be delivered by messenger, by certified mail (return receipt requested) or by facsimile transmission to the address of the recipient (which may be changed from time to time by notice to the other party) set forth at the end of this Agreement. A notice so delivered shall be effective when delivered to the recipient as evidenced by appropriate record of the sender. Nothing in this Agreement shall be deemed or construed to create a partnership or joint venture between the parties, and the services of PCCP shall be rendered as an independent contractor and not as agent of, or trustee or fiduciary for, Lehman. This Agreement shall be governed by and construed in accordance with the laws of the State of New York. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all counterparts shall constitute one and the same instrument.

LEHMAN BROTHERS HOLDINGS INC.

By:_____
    Name:    Yon Cho
    Title:    Authorized Signatory

Address for notices:

399 Park Avenue, 8th Floor
New York, New York 10022
Attention:  Yon Cho
Telephone No.:   (212) 526-2103
Facsimile No.:   (212) 526-7005

PROPERTY ASSET MANAGEMENT INC.

By:_____
    Name:    Yon Cho
    Title:    Authorized Signatory

Address for notices:

399 Park Avenue, 8th Floor
New York, New York 10022
Attention:  Yon Cho
Telephone No.:   (212) 526-2103
Facsimile No.:   (212) 526-7005

LEHMAN ALI INC.

By:_____

Name:    Yon Cho
Title:    Authorized Signatory

Address for notices:

399 Park Avenue
New York, New York 10022
Attention:  Yon Cho
Telephone No.:        (212) 526-2103
Facsimile No.:(212) 526-7005

PCCP ASSET HOLDING, LLC, a
Delaware limited liability company

By:    CGKL VENTURES, LLC, a Delaware
      limited liability company

    By: CGKL I, LLC, its Managing
      Partner

      By:_____

      Name:    William R. Lindsay
      Title:    Manager

Address for notices:

1960 East Grand Avenue, Suite 400
El Segundo, California 90245
Attention:        William R. Lindsay
Telephone No.:  (310) 414-7870
Facsimile No.:    (310)414-7872

CGKL VENTURES, LLC, a Delaware
limited liability company

By:    CGKL I, LLC, its Managing Partner

    By:_____
Name:  William R. Lindsay
Title:   Manager

LEHMAN ALI INC.


By:_____
    Name:
    Title:

Address for notices:

399 Park Avenue
New York, New York 10022
Attention:  Yon Cho
Telephone No.:        (212) 526-2103
Facsimile No.:(212) 526-7005

PCCP ASSET HOLDING, LLC, a
Delaware limited liability company

By:    CGKL VENTURES, LLC, a Delaware
    limited liability company

    By: CGKL I, LLC, its Managing
    Partner

    By: _____

    Name:    William R. Lindsay
    Title:    Manager

Address for notices:

1960 East Grand Avenue, Suite 400
El Segundo, California 90245
Attention:        William R. Lindsay
Telephone No.:  (310) 414-7870
Facsimile No.:   (310)414-7872

CGKL VENTURES, LLC, a Delaware
limited liability company

By:    CGKL I, LLC, its Managing Partner


By: _____
Name:  William R. Lindsay
Title:   Manager

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

September 18, 2009

Writer's Direct Contact
415.268.6036
JKline@mofo.com

By Overnight Delivery

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

Re:    Proof of Claims, In re Lehman Brothers Holdings Inc., et al. (Case No. 08-13555)

To whom it may concern:

Enclosed are three proofs of claim and supporting documentation (the "Proofs of Claim") on behalf of CGKL Ventures, LLC in the case of *In re Lehman Brothers Holdings Inc., et al.*, Case Number 08-13555 (JMP), as well as copies of the Proofs of Claim and a pre-paid, self-addressed return envelope. Please acknowledge receipt of the Proofs of Claim by time-stamping the copy and returning them in the enclosed envelope.

If you have any questions or require any additional information, I can be reached via the above contact information.

Best regards,

John T. Kline
Sr. Paralegal

cc:    Vincent J. Novak, Esq.

sf-2741656

Apply shipping documents on this side.

Do not use this envelope for:

UPS Ground
UPS Standard
UPS 3 Day Select℠
UPS Worldwide Expedited℠

MORRISON | FOERSTER

MORRISON & FOERSTER LLP
425 MARKET STREET
SAN FRANCISCO, CA 94105-2482

TO

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

(JTK2/12472) 61162-6



1-800-PICK-UPS® (1-800-742-5877) or visit UPS.com®

LTR          1 OF 1

268-7290
ARKET STREET
CA 94105-2406

TO:
EHMAN BROTHERS CLAIMS PROCESSING
PIQ BANKRUPTCY SOLUTIONS, LLC
RD FL.
57 3RD AVE.
EW YORK  NY 10017

NY 100 7-02

NEXT DAY AIR   1

ING #: 1Z 907 025 01 5362 3079

NG: P/P

Matter: 061162-0000006
: 12472

WS 11.0.15        LP2844 53.0A 07/2009