HEARING DATE AND TIME: June 30, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: June 15, 2011 at 4:00 p.m. (Eastern Time)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Alan W. Kornberg
Abigail Clark

*Attorneys for the Foreign Representative of Glitnir Banki hf.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                   :

**LEHMAN BROTHERS HOLDINGS,**          :          **Case No. 08-13555 (JMP)**
**INC., et al.,**                                        :          **(Jointly Administered)**
                                                             :
                                    **Debtors.**      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSE OF GLITNIR BANKI HF.
## TO DEBTORS' ONE HUNDRED THIRTY-EIGHTH
## OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVE CLAIMS)
## AND REQUEST TO AMEND CLAIMS

The Winding-up Board (the "Winding-Up Board") of Glitnir banki hf.

f/k/a Islandsbank hf. ("Glitnir"), in its capacity as the duly appointed foreign

representative (the "Foreign Representative") of Glitnir[1], which is the subject of a court-

supervised winding-up proceeding in Iceland (the "Winding-up Proceeding"), by and

through its undersigned counsel below, hereby submits this response (the "Response") to

---

[1]    On March 18, 2011, the Bankruptcy Court for the Southern District of New York entered the *Amended Order Recognizing Foreign Main Proceeding of Glitnir Banki Hf., and Granting Permanent Injunction*, 08-14757 (SMB) [D.I. 74] recognizing the Winding-up Board as Glitnir's duly authorized representative in the United States.

the Debtors' One-Hundred Thirty-Eighth Omnibus Objection to Claims (No Liability

Derivative Claims) [D.I. 16865] (the "Objection") as it relates to two proofs of claim

filed by Glitnir.

Glitnir filed (i) Claim No. 27420 against Lehman Brothers Special

Financing, Inc. ("LBSF") in the amount of $5,517,980.13, plus additional contingent and

unliquidated amounts for interest, fees and expenses (the "LBSF Claim"), and (ii) Claim

No. 27430 against Lehman Brothers Holdings, Inc. ("LBHI") in the same amount (the

"LBHI Claim," and together with the LBSF Claim, the "Claims")[2].

The LBSF Claim arises out of the maturity or termination of certain

derivative transactions shortly prior to or after the filing of LBHI's voluntary petition for

relief under chapter 11, and the LBHI Claim is based on LBHI's guarantee of the

obligations of LBSF in respect of those transactions.

The Objection states that Debtors have "no liability" for the Claims and

accordingly asks this Court to disallow and expunge them, yet provides no evidence or

explanation to support such request.  Because the Objection offers no supporting

evidence, the Debtors cannot overcome the *prima facie* validity of the Claims.

Accordingly, as it relates to the Claims, the Objection should be overruled.  In further

support of this Response, Glitnir states as follows:

---

[2] Under the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors dated April 19, 2010 [D.I. 8474], all of the information Glitnir submitted in connection with its Proofs of Claim and Derivatives and Guarantee Questionnaires are part of the record and Glitnir need not resubmit them for purposes of this Response.

2

## BACKGROUND

1.       Prior to October 2008, Glitnir was a full-service bank, incorporated in Iceland.  It provided corporate banking, investment banking, capital markets, investment management and retail banking services to a broad range of customers.   Due to an unprecedented economic crisis in Iceland, on October 7, 2008, the Financial Supervisory Authority of Iceland took control of Glitnir and appointed a resolution committee to oversee the reorganization of Glitnir.  Subsequently, on January 7, 2009, the Bankruptcy Court for the Southern District of New York entered the Order Recognizing Foreign Main Proceeding of Glitnir Banki hf., and Granting Permanent Injunction [D.I. 20] in Glitnir's chapter 15 proceedings.

2.       As of July 27, 2001, more than seven years before its collapse, Glitnir, then doing business as Islandsbanki hf., and LBSF (collectively, the "Parties") entered into that certain ISDA Master Agreement (the "Master Agreement"), including the Schedule to the Master Agreement, also dated as of July 27, 2001[3] (the "Schedule"), the Credit Support Annex to the Schedule, dated as of May 27, 2005 (the "Credit Support Annex," and together with the Master Agreement and the Schedule, all as separately amended[4], supplemented and otherwise modified and in effect from time to time, the "Agreement").[5] As the specified Credit Support Provider in the Schedule, on February 10, 2003, LBHI executed an unconditional guarantee of the obligations of LBSF under the Agreement for the benefit of Glitnir (the "LBHI Guarantee").

---

[3]   Signed by the Parties on January 20, 2003 and February 13, 2003, respectively.

[4]   The Master Agreement was amended by the Parties on June 30, 2005.

[5]   Capitalized terms used but not separately defined herein shall have the meanings assigned to them in the Agreement or the Objection, as applicable.

3.       The filing of the petition commencing the LBHI chapter 11 case on September 15, 2008 constituted an Event of Default under the Master Agreement. (Master Agreement, at Section 5(a)(vii)).

4.       On September 18, 2008, Glitnir sent written notice (the "Early Termination Notice") to LBSF designating September 18, 2008 as the Early Termination Date pursuant to Section 6(a) of the Master Agreement and terminating all outstanding Transactions under the Agreement.

5.       Pursuant to the July 2, 2009 bar date order (the "Bar Date Order") entered in these cases, on September 22, 2009, Glitnir timely filed the Claims. On October 22, 2009, Glitnir completed the Derivative Questionnaire and Guarantee Questionnaire with respect to the LBSF Claim and LBHI Claim, respectively, and as required thereunder, uploaded copies of the Agreement, LBHI Guarantee, Early Termination Notice, individual trade-level detail for all Transactions, and information regarding unpaid Credit Support Agreement Collateral Interest for August 2008 and September 2008.

6.       On May 16, 2011, the Debtors filed the Objection.

7.       To date, upon information and belief, Glitnir has not received any information from the Debtors concerning the Claims or the Debtors' valuation thereof nor have the Debtors or their representatives engaged, or attempted to engage, in any discussion with Glitnir or its representatives.

8.       By the Objection, the Debtors seek to disallow and expunge the Claims in their entirety on the basis that there is "no liability." (Objection at ¶ 14). Specifically, the Debtors state that "[t]he Derivatives Contracts that underlie the No

Liability Derivatives Claims have either been terminated or matured pursuant to the terms

thereof." The Debtors state further that "[a]fter a review of the claimants' supporting

documentation and the Debtors' books and records, the Debtors have determined that,

based on the fair, accurate, and reasonable values of the subject Derivatives Contracts

and the netting provisions thereunder, the Debtors do not owe any amounts to the

claimants but rather either no amounts are owed under the Derivatives Contracts to either

party or the respective claimants actually owe money to the Debtors..." (Objection at

¶ 11). As a result, the Debtors aver that the No Liability Derivatives Claims do not

constitute valid *prima facie* claims. (Id.) The Debtors do no specify whether no money

is owed to either party or whether Glitnir owes money under the Agreement. Nor have

the Debtors provided any details concerning their valuation of the Claims to support the

Objection's conclusion that "no liability" is owed or that Glitnir improperly calculated

the Claims.

## REQUEST TO AMEND CLAIMS

9.      Upon receipt of the Objection, in connection with preparing this

Response, Glitnir discovered that two Options Transactions, evidenced by Exhibits L and

M to the LBSF Claim, were improperly included in the Claim. While Glitnir believed in

good faith that these Options Transactions occurred under the Agreement at the time the

LBSF Claim was prepared and submitted, on further review, Glitnir has determined that

such Transactions were in fact executed under a similar but different ISDA agreement

with Lehman Brothers International (Europe). As a result, Glitnir requests permission to

amend the LBSF Claim to exclude the Options Transactions evidenced by Exhibits L and

M from Glitnir's calculation of amounts owed under the Agreement. If the court so

orders, Glitnir will submit corrected proofs of claim shortly after the hearing regarding the Objection.

10.     In addition, Glitnir discovered that valuation quotes specified in the Valuation Statement, attached as Exhibit N to the LBSF Claim, for two Options Transactions, evidenced by Exhibits I and K to the LBSF Claim, were not the quotes actually received from the Reference Market-makers to which the requests for quotes were made. As a result, Glitnir requests permission to amend the the LBSF Claim to reflect the correct valuation of these Options Transactions in accordance with the Market Quotation Methodology.[6]

11.     Furthermore, Glitnir has been unable to confirm that it in fact received the three valuation quotes disclosed to Lehman in its Claims for one Swap Transaction, evidenced by Exhibit C to the LBSF Claim. Glitnir has no reason to doubt that the valuation of this Swap Transaction was calculated in accordance with the terms of the Agreement. However, out of an abundance of caution, Glitnir requests permission to amend the LBSF Claim to reflect the valuation of this Swap Transaction in accordance with its Loss.

---

[6]   Additionally, Glitnir has discovered that its prior counsel inadvertently attached certain incorrect exhibits to the Claims. Exhibits I and K currently indicate that Party A to the transaction was Lehman Brothers International (Europe), not LBSF. As a result, Glitnir submits that Exhibits I and K to the LBSF Claim, as well as the corresponding exhibits in the LBHI Claim, should be replaced with the confirmations that actually evidence the Transactions under the Agreement.

12.    Accordingly, the LBSF Claim, as amended, would be
$4,910,285.18 (the "Amended Amount").[7] A spreadsheet reflecting Glitnir's revised
calculations and valuation methodology is attached hereto as Exhibit A.

13.    The requested amendments in this case are appropriate. "It is well-
settled that the decision to permit an amendment of a proof of claim rests within the
sound discretion of the bankruptcy judge." *In re McLean Industries, Inc.*, 121 B.R. 704,
708 (Bankr. S.D.N.Y. 1990). Furthermore, the leading Second Circuit case addressing
amendment of claims specifically lists the correction of a defect as a basis for amendment
of the claim. *In re G.L. Miller & Co.*, 45 F.2d 115, 116 (2d Cir. 1930). In addition, the
proposed amendments to the Claims are reasonably related to the Claims as filed, and are
not a veiled attempt to file a new claim. *Bishop v. Leonard (In re Leonard)*, 112 B.R. 67,
71 (Bankr. D. Conn. 1990) (collecting cases); *see In re G.L. Miller & Co.*, 45 F.2d 115,
116-17 (2d Cir. 1930). Furthermore, permitting the proposed amendments is fair and will
impose no undue hardship on any party. Because the Claim amount would be reduced,
there would be more property of the estate available for distribution to other creditors.[8]

---

[7]    As noted previously, the amount of the LBHI Claim—which is based on a guarantee—does not require
any separate calculation from the LBSF Claim. Thus, the proposed amount of the LBHI Claim, is the
same as the proposed amount of the amended LBSF Claim.

[8]    The requested amendments are also appropriate because Glitnir reserved its right to amend its claim
amount in the supplements to its Claims. Specifically, Glitnir stated, "[t]he Claim Amount is subject
to adjustment and amendment for a variety of reasons, including, without limitation, as a result of
future events, the discovery and analysis of additional information, the correction of any errors, the
resolution of disputes, and the assertion of any rights of setoff and/or recoupment. In that regard,
Glitnir reserves the right to amend or supplement this Proof of Claim accordingly or to set forth the
Claim Amount with more particularity (including, but not limited to, in a liquidated amount) as Glitnir
obtains more information." LBSF Claim at ¶ 15.

**ARGUMENT**

14.     The Objection should be overruled with respect to the Claims

because:  (1) the Debtors did not present evidence in their Objection sufficient to rebut

the *prima facie* evidentiary effect of Glitnir's Claims; (2) the order approving procedures

for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the

"Procedures Order") [D.I. 6664] did not alter the burden of production required by the

Bankruptcy Code and Rules; and (3) the Claims as proposed to be amended were

properly calculated in accordance with the terms of the Agreement and the related LBHI

Guarantee.

**A.      The Objection Does Not Present Evidence Sufficient to Rebut the
          *Prima Facie* Evidentiary Effect of the Properly-Completed and
          Timely-Filed Proofs of Claim.**

15.     A proof of claim, timely and properly filed, is *prima facie* evidence

of the validity and amount of the claim.  *See* Fed. R. Bankr. P. 3001(f).  "To overcome

this *prima facie* evidence, the objecting party must come forth with evidence which, if

believed, would refute at least one of the allegations essential to the claim." *Sherman v.*

*Novack (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (*citing In re Allegheny*

*Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992)); *see also Riverbank, Inc. v. Make Meat Corp. (In*

*re Make Meat Corp.)*, 1999 WL 178788 at *3 (S.D.N.Y. March 31, 1999) ("[o]nce the

claimant has established its *prima facie* case, the burden of going forward then shifts to

the debtor to produce evidence sufficient to negate the *prima facie* validity of the filed

claim"); *Matter of Michalek*, 1991 WL 222063 at *3 (W.D.N.Y. Oct. 22, 1991) ("[t]he

party objecting to the claim has the burden of going forward with substantial evidence to

rebut the *prima facie* validity of the claim"); *In re Woodmere Investors Ltd. P'ship*, 178

B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995) (overruling debtor's objection to secured

8

lender's claim for pre-petition attorneys' fees where debtor had not offered any evidence

to support its contention that such fees were unreasonable and also overruling debtor's

objection to the same creditor's claim for default interest, holding that "when two

sophisticated parties enter into a contract calling for an established rate on default, this

Court will not disturb the agreement absent persuasive evidence of overreaching.").

16.    To overcome the *prima facie* effect of a properly filed proof of

claim, therefore, the objecting party must "affirmatively *produce* evidence." *In re Make

Meat Corp.*, 1999 WL 178788 at *4 (emphasis in original).  That evidence must "refute at

least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida

Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  The burden then shifts back to the

claimant only if the objecting party meets its burden of production. *In re Reilly*, 245 B.R.

at 773; *In re Martinez*, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009).

17.    Glitnir timely filed the Claims in accordance with Fed. R. Bankr.

P. 3001 and the Bar Date Order.  The Claims, as supplemented by the Questionnaires,

contained:  (1) a detailed narrative of the events giving rise to the Debtors' obligations;

(2) copies of the Agreement, Early Termination Notice and LBHI Guarantee; and (3)

additional backup information detailing Glitnir's calculation of the Claims on a trade-by-

trade basis, including the quotes obtained and the relevant dates.

18.    The Debtors do not dispute that the Claims were properly and

timely filed in accordance with the Bar Date Order and the Bankruptcy Rules.  The

Claims are therefore *prima facie* valid.

19.    In support of their Objection, the Debtors state that: (1) they have

undertaken a thorough, multi-step review process to review claims filed against the

9

Debtors based on derivatives contracts; (2) such process involved the collection and review of relevant documents and a review of the methodology employed by Glitnir; and (3) as a result of that process, the Debtors have determined that a "fair, accurate, and reasonable valuation" of Glitnir's claims indicates that the Debtors have no liability to Glitnir or that Glitnir in fact owes money to the Debtors. However, the Debtors fail to explain their review process in any detail or how that "process" resulted in the determination of amounts due under the Agreement that indicate the Debtors are either "in the money" or that they have no liability. In sum, the Debtors provide no detail whatsoever regarding their valuation of the relevant trades.

20.    Although the Debtors refer this Court to the Declaration of Gary H. Mandelblatt, originally submitted in Support of the Debtors' *Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Claim Form* [D.I. 4113] (the "Mandelblatt Declaration"), for a "more comprehensive discussion of the[ir] valuation process," the Mandelblatt Declaration does not provide any evidence to substantiate the Objection with respect to the Claims. (Objection at ¶ 13 n.2; Mandelblatt Declaration).

21.    Further, upon receipt of the Objection, Glitnir requested information regarding the Debtors' valuation methodology and the Debtors' counsel refused to provide information regarding their calculations or valuation methodology.

22.    Accordingly, the Debtors have not affirmatively produced any evidence to rebut the *prima facie* validity of Glitnir's Claims. The Objection should

therefore be overruled and each Claim should be allowed in the Amended Amount of $4,910,285.18.

23.    Additionally, the Court should not permit the Debtors to reserve their right to assert additional objections to Glitnir's Claims at a later date, forcing piecemeal resolution of the Claims and Glitnir, a bank itself in foreign liquidation proceedings, to respond to further objections.  (See Objection at ¶ 3).  Glitnir provided detailed information regarding straightforward calculations based on quotes from various reputable financial institutions to the Debtors.  It will now suffer the additional costs of responding to this Objection, which fails to provide any meaningful information as to the basis for the Debtors' Objection to Glitnir's Claims.  The Objection should therefore be overruled and the Claims, as amended, allowed as described herein, including all fees, costs and expenses incurred in connection with preparing this Response, and with prejudice to any further objection.

### B.    The Procedures Order Does Not Alter the Burden of Production

24.    Although the Debtors sought and obtained the Procedures Order, which expanded the grounds on which omnibus objections to claims can be filed in these cases from those permitted by Bankruptcy Rule 3007(d) (the "Additional Permitted

11

Grounds"),[9] the Procedures Order did not alter the burden of production that is

contemplated by Bankruptcy Rule 3001(f).[10]

      25.    By the Debtors' own admission during a hearing regarding

objections to the Procedures Order on March 17, 2011, the Procedures Order was hotly

contested. Hr'g Tr. at 115: 18. Based only on the Debtors' representations to various

objectors that nothing in the Procedures Order "in any way alters, [or] shifts burdens of

proof," several objections to entry of the order were withdrawn. Hr'g Tr. at 115: 19-24.

Furthermore, to eliminate concerns raised by the objections regarding the burden of

production, the Debtors' proposed procedures order was revised such that omnibus

objections filed on the grounds of no liability would include the *legal basis* for such

objection. (Procedures Order at 2; Debtors Omnibus Reply to Objections to Motion for

Approval of (I) Claim Objection procedures and (II) Settlement Procedures. [D.I. 6615]

(emphasis added))[11].

      26.    The Debtors now seek to expunge Glitnir's Claims without

providing Glitnir the opportunity to evaluate the Debtors' valuation methodology, a

strategy that is an attempted end-run around the evidentiary requirements the Debtors

---

[9]  The Procedures Order allows the Debtors to file omnibus objections on the grounds that claims subject to the objection "seek recovery of amounts for which the Debtors are not liable; *provided* that the Debtors will include the legal basis for such objection." Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for approval of (I) Claim Objection Procedures and (II) Settlement Procedures. [D.I. 6664].

[10]  Bankruptcy Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

[11]  In seeking approval of the Procedures Order, the Debtors also represented to the Court that they "have no intent of playing a game of 'gotcha' by using the Additional Permitted Grounds as a means to object to claimants who have endeavored to comply in good faith with the requirements of the Bankruptcy Rules and the Bar Date Order." Debtors' Omnibus Reply to Objections to Motion for Approval of (I) Claim Objection procedures and (II) Settlement Procedures. [D.I. 6615].

must satisfy under Bankruptcy Rule 3001(f). The Debtors fail to set forth any substantive

argument regarding how they arrived at their "reasonable" calculation of amounts owed

under the Agreement. This internal, behind-closed-doors process is prejudicial to Glitnir.

It also contradicts the express provisions of the Bankruptcy Code and the Bankruptcy

Rules as well as statements made by the Debtors before this Court. *See, e.g.* 11 U.S.C. §

502(b); Fed. R. Bankr. P. 3001(f).

27.     Furthermore, contrary to the Debtors' assertion that they have

engaged in "lengthy" negotiations with holders of derivatives claims prior to the filing of

the Objection, the Debtors did not make any attempts to negotiate with Glitnir or its

representatives. Also, the Debtors have not engaged in any "Meet and Confer" process

with Glitnir resolve Glitnir's Claims.

28.     Accordingly, the Objection with respect to Glitnir's Claims should

be overruled. It is inappropriate for the Debtors to file an Objection that lacks evidentiary

support and fails to meet the basic requirements of the Bankruptcy Code and Bankruptcy

Rules.

29.     In the alternative, any hearing held on the Debtors' Objection

should be limited by the scope of the Objection itself. If the Debtors intend to raise

additional bases for disallowing and expunging Glitnir's Claims, Glitnir requests that the

June 30, 2011 hearing be continued to permit Glitnir a fair opportunity to respond to any

additional information that the Debtors provide.

**C.      The LBSF Claim As Proposed to be Amended Was Properly
Calculated in Accordance with the Terms of the Agreement**

30.      Glitnir calculated the Amended Amount in strict accordance with
the Agreement.  As noted above, the valuation methodology used to calculate the
Amended Amount is reflected on Exhibit A, attached to this Response.

31.      The Agreement defines "Event of Default" to include, among other
events, the filing of a bankruptcy petition by LBHI or LBSF.  (Master Agreement at
Section 5(a)(vii)(4)).  Upon the occurrence of an Event of Default, Glitnir had a
contractual right to terminate all outstanding Transactions under the Agreement and to
designate an Early Termination Date.  (Master Agreement at Section 6(a)).  Glitnir
exercised such rights by sending the Early Termination Notice on September 18, 2008
and designating such date as the Early Termination Date.

32.      In the Schedule, Glitnir and LBSF agreed that, for purposes of
calculating the Early Termination Amount following the designation of an Early
Termination Date, "Market Quotation" and "Second Method" would apply.  (Schedule at
Pt. 1(f)).  Accordingly, the Master Agreement provided that, upon an Event of Default:

> If the Second Method and Market Quotation apply, an amount will
> be payable equal to (A) the sum of the Settlement Amount
> (***determined by the Non-defaulting Party***) in respect of the
> Terminated Transactions and the Termination Currency Equivalent
> of the Unpaid Amounts owing to the Non-defaulting Party less (B)
> the Termination Currency Equivalent of the Unpaid Amounts
> owing to the Defaulting Party.

(Master Agreement at Section 6(e)(i)(3) (emphasis added)).

33.      The Master Agreement defines "Settlement Amount" as "(a) the
Termination Currency Equivalent of the Market Quotations (whether positive or
negative) for each Terminated Transaction or group of Terminated Transactions for

14

which a Market Quotation is determined; and (b) such party's Loss (whether positive or

negative and without reference to any Unpaid Amounts) for each Terminated Transaction

or group of Terminated Transactions for which a Market Quotation cannot be determined

or would not (in the reasonable belief of the party making the determination) produce a

commercially reasonable result." (Master Agreement at Section 14).

34.    Under the Market Quotation methodology, the Non-defaulting

Party is required to obtain at least three quotations from Reference Market-makers for the

amount that would be paid to the Non-defaulting Party (or the amount that would have to

be paid by the Non-defaulting Party) to enter into replacement transactions "that would

have the effect of preserving for [the Non-defaulting Party] the economic equivalent" of

the transactions if they had not been terminated.  (*See* Master Agreement at Section 14).

35.    Where a sufficient number of Market Quotations cannot be

obtained, the Non-defaulting Party may calculate the Early Termination Amount based

on its "Loss," defined in relevant part, as:

> [T]he Termination Currency Equivalent of *an
> amount that party reasonably determines in good faith to
> be its total losses and costs ... in connection with this
> Agreement or that Terminated Transaction or group of
> Terminated Transactions,* as the case may be, including
> any loss of bargain, cost of funding or, at the election of
> such party but without duplication, loss or cost incurred as
> a result of its terminating, liquidating, obtaining or
> reestablishing any hedge or related trading position. ... A
> party will determine its Loss as of the relevant Early
> Termination Date, or, if that is not reasonably practicable,
> as of the earliest date thereafter as is reasonably practicable.
> *A party may (but need not) determine its Loss by
> reference to quotations of relevant rates or prices from
> one or more leading dealers in the relevant markets*.

(Master Agreement at Section14 (emphasis added)).

36.     Neither the Master Agreement, Schedule, Credit Support Annex, or confirmations supplementing, modifying or amending the Agreement provide the Defaulting Party with an opportunity or right to provide alternative quotations or prices or otherwise dispute the Early Termination Amount determined by the Non-Defaulting Party, provided those amounts are calculated in accordance with the Agreement. To the contrary, the Agreement *expressly* provides that the right to determine the Early Termination Amount belongs exclusively to the Non-Defaulting Party which, in this case, is Glitnir.

37.     The fact that the Debtors have arrived at some, undisclosed, alternative valuation of the Early Termination Amount is irrelevant; Glitnir was the *only* party authorized to determine the Settlement Amount under the terms of the Agreement. Glitnir calculated the Early Termination Amount in good faith and in a manner consistent with the terms of the Agreement.

38.     The Debtors do not explain why no liability is owed. The Objection does not challenge either the method employed by Glitnir or the calculations based on use of that method. Moreover, nothing in the Mandelblatt Declaration suggests that Glitnir's calculation of the Early Termination Amount was incorrect, commercially unreasonable or in bad faith.

39.     The Early Termination Notice was timely delivered in a manner consistent with the terms of the Agreement and those terms were the product of arms-length negotiations between two sophisticated parties.

40.     The LBSF Claim should be allowed in full because: (1) Glitnir, as the Non-defaulting Party, is the only party authorized to calculate the Early Termination

16

Amount under the terms of the Agreement; and (2) Glitnir has properly calculated the

Amended Amount in accordance with it. Because the LBHI Claim is based on the

written guarantee of LBSF's obligations and because the Debtors have offered no

independent objection to the LBHI Claim, the LBHI Claim should also be allowed in full

as described herein. A proposed order is attached hereto as Exhibit B.

## RESERVATION OF RIGHTS

41.    Glitnir hereby reserves the right to supplement and/or amend its

response to the Objection at any time to the extent it deems appropriate. Glitnir also

reserves the right to request: (i) a lift of the temporary litigation injunction triggered by

the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and

General Order M-390 Authorizing the Debtors to Implement Claims hearing Procedures

and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated April

19, 2009 [Docket No. 8474] so that Glitnir may take discovery from the Debtors

concerning valuation of the Claims; and (ii) a full evidentiary hearing with respect to the

Claims and the Objection pursuant to Bankruptcy Rule 9014(e) and 9014-2 of the Local

Rules of Bankruptcy Procedures for the Southern District of New York.

## CONCLUSION

42.    The Claims, as amended, were calculated in accordance with the

Agreement and timely filed, and constitute *prima facie* evidence of Glitnir's valid claims.

The Objection offers no evidence to rebut the presumption of validity and, therefore,

should be overruled with respect to the Claims, as amended. Therefore, the Claims

should both be allowed in the full amount of $4,910,285.18.

WHEREFORE, Glitnir respectfully requests that the Court deny the

Objection as it relates to the Claims and grant such other and further relief as is just and

proper.

Dated: June 15, 2011                  THE FOREIGN REPRESENTATIVE OF
       New York, New York             GLITNIR BANKI HF.,

                                      By its attorneys:

                                      /s/ Alan W. Kornberg
                                      Alan W. Kornberg
                                      Abigail Clark
                                      PAUL, WEISS, RIFKIND, WHARTON &
                                      GARRISON LLP
                                      1285 Avenue of the Americas
                                      New York, New York 10019
                                      Telephone: (212) 373-3000
                                      akornberg@paulweiss.com
                                      aclark@paulweiss.com

# EXHIBIT A



# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                    :

**LEHMAN BROTHERS HOLDINGS,**          :
**INC., et al.,**                                        :

Debtors.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Case No. 08-13555 (JMP)**

**(Jointly Administered)**

**ORDER OVERRULING THE DEBTORS'**
**ONE HUNDRED THIRTY-EIGHTH OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY DERIVATIVES**
**CLAIMS) WITH RESPECT TO THE CLAIMS OF GLITNIR BANKI HF.**

Upon the Debtors' One Hundred Thirty-Eighth Omnibus Objection to Claims (No

Liability Derivatives Claims) (the "Omnibus Claims Objection") seeking entry of an order

disallowing and expunging the No Liability Derivatives Claims; and it appearing that the Court

has jurisdiction to consider the Omnibus Claims Objection pursuant to 28 U.S.C. §§ 157 and

1334 and that this matter is a core proceeding pursuant to 28 U.S.C. §157(b); and upon

consideration of the Omnibus Claims Objection and the Response of claimant Glitnir Banki hf.

("Glitnir") thereto; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1. The Omnibus Claims Objection is overruled with respect to Glitnir's

Claims[1].

2. Glitnir's Claims are allowed in the Amended Amount of [Amended

Amount], plus all fees, costs and expenses incurred in connection with preparing this Response,

and with prejudice to any further objection.

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Omnibus
Claims Objection or Response, as applicable.

3.  Glitnir's right to supplement and/or amend its response to the Objection at any time is reserved.

4.  Glitnir's right to request:  (i) a lift of the temporary litigation injunction triggered by the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated April 19, 2009 [Docket No. 8474] so that Glitnir may take discovery from the Debtors concerning valuation of the Claims; and (ii) a full evidentiary hearing with respect to the Claims and the Objection pursuant to Bankruptcy Rule 9014(e) and 9014-2 of the Local Rules of Bankruptcy Procedures for the Southern District of New York is reserved.

5.  This Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or in connection with the implementation, enforcement or interpretation of this Order.

Dated: _____, 2011

_____
The Honorable James M. Peck
United States Bankruptcy Judge