Hearing Date: June 30, 2011 at 10:00 a.m.

Alex R. Rovira
Noam M. Besdin
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For Diamondback Capital Management, LLC,
Investment Manager to the Diamondback Master Fund, Ltd*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------ | Chapter 11 Case No: |
| In re: | 08-13555 (JMP) |
| Lehman Brothers Holdings Inc., et. al. | (Jointly Administered) |
| Debtors. | |
| ------------------------------------------------------------ | |

**RESPONSE OF DIAMONDBACK MASTER FUND, LTD. TO THE DEBTORS' ONE
HUNDRED THIRTY-SIXTH OMNIBUS OBJECTION TO CLAIMS**

TO:  THE HONORABLE JAMES M. PECK
     UNITED STATES BANKRUPTCY JUDGE:

Diamondback Master Fund, Ltd. ("Diamondback"), by its undersigned counsel, hereby files this Response (the "Response") to that certain One Hundred Thirty-Sixth Omnibus Objection to Claims dated May 16, 2011 (the "Objection") with respect to Diamondback's Claim Number 26909 (the "Claim"), and respectfully states as follows:

**RELEVANT BACKGROUND**

1. On or about June 9, 2005, Diamondback and various Lehman entities, including Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers International Europe ("LBIE"), Lehman Brothers Special Financing ("LBSF") and Lehman Brothers Inc. ("LBI," and collectively with LBHI, LBSF and LBIE, the "Lehman Entities") entered into that certain

Customer Account Prime Brokerage Agreement (the "PB Agreement").[1] Pursuant to the PB Agreement, LBI and LBIE maintained various accounts for and on behalf of Diamondback (the "Accounts") as Diamondback's broker-dealer in the United States and Europe. In the ordinary course of their businesses as Diamondback's broker-dealer, LBI and LBIE each acquired and/or held cash and/or securities for or on behalf of Diamondback prior to the Petition Date (as defined below), including equities, bonds and convertible securities (collectively, the "Securities").

2.   Upon information and belief, for internal cash management and other reasons of the Lehman Entities, Diamondback's cash and/or securities that were meant to be settled in the Accounts at LBI and/or LBIE may have instead been routed through an LBHI account. In the ordinary course, Diamondback's cash and/or securities would be transferred to the appropriate Lehman Entity (either LBI or LBIE), depending on whether the cash or security was related to a DTC or Euroclear position. However, in the days and weeks preceding the Petition Date, Diamondback contends that, upon information and belief, some or all of these cash and/or securities were never transferred from LBHI to the appropriate Diamondback Account at LBI and/or LBIE. Accordingly, certain of Diamondback's cash and/or securities may currently be held by LBHI. Diamondback did not maintain any accounts directly with LBHI and, pursuant to the PB Agreement, LBHI can at best be seen as an agent or sub-custodian of both LBI and LBIE with respect to its obligations set forth under the PB Agreement.

3.   More specifically, between September 12, 2008 and August 31, 2009[2], as a result of various corporations' actions, including but not limited to, mergers, cash takeovers, stock takeovers, hybrid takeovers, dividends, coupons and one-time special dividends (each a

---

[1] Diamondback will provide a copy of the PB Agreement upon request by a party in interest.
[2] This date range reflects the approximate period of time between the Petition Date and the date Diamondback filed the Claim. Diamondback hereby reserves all of its rights with respect to the Claim and the Objection as they relate to other dates and reserves its rights more generally with regard to the proceeds of Corporate Actions that fall outside this stated time period.

2

"Corporate Action" and collectively, the "Corporate Actions"), Diamondback estimates that approximately $80,600,000 in cash was generated, payable to Diamondback in respect of the Securities. In many instances, the fully paid long equity securities that Diamondback owned, and which LBI and/or LBIE held in the Accounts and never rehypothecated, cannot be returned to Diamondback as part of a standard, general distribution to clients because such securities were the subject of a Corporate Action and cash proceeds were paid by the acquiring firm as consideration for that Corporate Action. Such cash proceeds on account of the Securities subject to Corporate Actions were to be paid to Diamondback's Accounts. However, as noted above, some or all of such cash proceeds may have been routed through an LBHI account and were never transferred to the appropriate Diamondback Account at LBI and/or LBIE.

4. Therefore, upon information and belief, as much as $80,600,000 payable to Diamondback in respect of the Securities may be currently held by LBHI. Those amounts are due and owing to Diamondback; had those amounts not been routed through, and erroneously trapped at, an LBHI account or accounts, they would have settled in Diamondback's Accounts at LBI and/or LBIE for the benefit of Diamondback, and would have been afforded protection and priority, either as customer property pursuant to SIPA (as defined below) or as client assets (and possibly as trust property) pursuant to English law (and the Claims Resolution Agreement between Diamondback and the LBIE Administrators).

5. On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates commenced the above-captioned chapter 11 cases. On September 15, 2008, LBIE was placed into Administration proceedings in the United Kingdom pursuant to the Insolvency Act of 1986. On September 19, 2008, the District Court for the Southern District of New York commenced liquidation proceedings pursuant to the Securities Investor Protection Act of 1970

3

("SIPA") in respect of LBI, a wholly owned subsidiary of LBHI and a registered broker-dealer. The District Court transferred LBI's liquidation proceedings to this Court.

6. On September 22, 2009, Diamondback timely filed the Claim against LBHI, asserting, among other things, an unliquidated claim in an amount up to approximately $80,600,000, plus any additional amounts related to Corporate Actions occurring after August 31, 2009, to the extent any amounts relating to Corporate Actions had been received by LBHI and not properly transferred to the appropriate Accounts at LBI and/or LBIE.

7. On May 16, 2011, LBHI filed the Objection, identifying the Claim as "misclassified" and reclassifying Diamondback's unliquidated claim against LBHI as "unsecured," without providing any basis for such reclassification nor any evidence in support thereof.[3]

## RESPONSE[4]

### I. LBHI HAS FAILED TO MEET ITS EVIDENTIARY BURDEN

8. LBHI's Objection's seeking to reclassify the Claim as an unsecured claim must fail on its face because it does not set forth any evidence whatsoever to dispute the nature of the Claim as a secured claim. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, "a proof of claim…shall constitute prima facie evidence of the validity and amount of the claim." Once a claim alleges facts sufficient to support it, the claim is deemed prima facie valid. In re Woodmere Investors Limited Partnership, 178 B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995). The burden then shifts to the objecting party to produce evidence sufficient to counter the prima facie validity of the claim in question. Id.; see also In re Galloway, 220 B.R. 236, 243

---

[3] The Objection does not object to the classification of approximately $4.4 million in relation to certain excess trade collateral which was also included in the Claim as a secured claim.

[4] Diamondback is agreeable to structuring a solution in conjunction with the Debtors and their professionals that effectively ascertains, reconciles and returns Diamondback's cash and/or securities improperly held at LBHI in an attempt to resolve the Claim thereby avoiding an adversary proceeding.

4

(Bankr. E.D.P.A. 1998) ("Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut or cast doubt upon the creditor's proof of claim.")

9. To satisfy its burden, the objecting party must produce actual evidence that is equally persuasive as the claim itself, and that would "refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). In this Circuit, "the case law is clear" in demanding that an objecting debtor "affirmatively produce evidence to counter [a] creditor's claim." In re Make Meat Corp., 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. Mar. 31, 1999), citing Woodmere Investors, 178 B.R. at 354-55; Allegheny, 954 F.2d at 173-74. The prima facie validity of a claim can only be overcome with the production of "substantial evidence" by the objecting party. In re Pan, 209 B.R. 152, 155 (D. Mass. 1997).

10. Here, LBHI has not produced any evidence, substantial or otherwise, to challenge or overturn the secured nature of the Claim. Having failed to offer the Court any evidentiary basis to modify or reclassify the Claim, the Objection fails on its face as a matter of law and the Claim should remain prima facie valid as a secured claim.

## II. DIAMONDBACK'S CASH AND/OR SECURITIES CURRENTLY HELD BY LBHI ARE NOT PROPERTY OF THE ESTATE

11. Any of Diamondback's cash and/or securities currently held by LBHI is not property of the estate because LBHI does not have any equitable interest in such property. Pursuant to section 541 of the Bankruptcy Code, while a debtor's legal and equitable interests in property constitute "property of the estate," any property in which the debtor holds only legal title, but no equitable interest, does *not* become property of the estate beyond the limited extent of the debtor's legal title to such property. See In re Howard's Appliance Corp., 874 F.2d 88 (2d Cir. 1989) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204 n. 8 (1983)); see also In re Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994).

12. As discussed above, Diamondback's cash and/or securities were supposed to have been deposited in the Accounts at LBI and/or LBIE, where they would have received the protection and benefits of segregation and priority, either as customer property under SIPA or as client assets (or trust property) under English law (or the Claims Resolution Agreement). At no point did Diamondback instruct that its cash and/or securities be deposited at LBHI instead of being placed in Diamondback's Accounts at LBI and/or LBIE for the benefit of Diamondback; in fact, this activity occurred without Diamondback's knowledge or consent. Therefore, LBHI has no equitable interest in any of Diamondback's cash and/or securities that it may currently hold, and any such cash and/or securities is not property of the estate.

13. The only legal interest LBHI may have in Diamondback's cash and/or securities is in its possession of such cash and/or securities, but such possession was obtained solely due to the treasury function that LBHI, upon information and belief, performed for its subsidiaries. Mere control over property does not constitute ownership because "[l]ogically, property in which the Debtor has no interest would never become property of the bankruptcy estate." In re Graphics Technology Inc., 306 B.R. 634-35 (B.A.P. 8th Cir. 2004) ("It is axiomatic that a mere possessor of the property of another, without more, cannot obtain legal title.") As such, courts have held that when funds are received by a debtor from a third party and are intended for a particular creditor, those funds "do not belong to the debtor because the debtor does not control the funds and the debtor's estate is not diminished." In re Pioneer Commercial Funding Corp., 140 B.R. 951, 956 (Bankr. S.D.N.Y. 1992) (citing Grubb v. General Contract Purchase Corp., 94 F.2d 70 (2d Cir. 1938)).

14. Here, the intended beneficiary of the cash and/or securities held by LBHI was meant to be Diamondback in its Accounts at LBI and/or LBIE. LBHI should not receive a windfall of such cash and/or securities when it has no legal or equitable interest in such property.

6

### III.  ANY OF DIAMONDBACK'S CASH AND/OR SECURITIES CURRENTLY HELD BY LBHI SHOULD BE HELD IN TRUST FOR DIAMONDBACK

15. Moreover, Diamondback's cash and/or securities that were received and improperly held by LBHI because of the Lehman internal cash management system, should be held in constructive trust for Diamondback and treated as a secured claim. When a debtor's actions give rise to the establishment of a constructive trust, such that the debtor holds only technical legal title to the *res* in question, that property belongs to the ultimate beneficiary of the trust, and not to the debtor's estate. "Congress plainly excluded property of others held by the debtor in trust" from property of the estate. Whiting Pools, 462 U.S. at 205 n. 10.

16. A constructive trust is appropriately imposed when "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest" and therefore equitably treated as a trustee. Brand v. Brand, 811 F.2d 74, 77 (2d Cir. 1987). While some courts have rejected the concept that the bankruptcy estate is subject to the imposition of a constructive trust arising under state law, this Circuit has not adopted the notion that bankruptcy law trumps state constructive trust law. See e.g., Howard's, 874 F.2d at 93; In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992) (instructing lower court to impose constructive trust over debtor's estate pursuant to state law analysis); see also In re Flanagan, 293 B.R. 102, 108 (Bankr. D. Conn. 2003) ("The imposition of constructive trusts by bankruptcy courts posses a solid legal basis in this Circuit.").

17. The ultimate effect of a constructive trust in bankruptcy is to take the *res* out of the debtor's estate and to elevate the constructive claimant ahead of other creditors. See Howard's, 874 F.2d at 93 (imposing a constructive trust on the bankruptcy estate, excluding trust property from bankruptcy estate and holding that the debtor's interest in the trust assets was subordinate to the beneficiaries of the trust); Koreag, 961 F.2d at 352. Bankruptcy courts have,

upon finding the existence of a constructive trust under applicable state law, treated the trust beneficiary's claim itself as a secured claim. See e.g., In re Schneider, 2006 Bankr. LEXIS 525 (Bankr. M.D. Fla. Feb. 6, 2006). Accordingly, this Court should overrule the Objection seeking to reclassify the Claim, recognize that Diamondback's cash and/or securities are held in constructive trust for Diamondback by LBHI, and treat the Claim as a secured claim.

### IV. EQUITY FAVORS THE RETURN OF DIAMONDBACK'S PROPERTY AND/OR TREATMENT OF THE CLAIM AS A SECURED CLAIM

18. It is well-recognized that bankruptcy courts are "courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." In re Momentum Mfg. Corp., 25 F.3d 1132, 11236 (2d Cir. 1994). Here, the Lehman Entities routed funds meant for Diamondback's Accounts at LBI and/or LBIE through LBHI for their own internal purposes. This arrangement was never explicitly disclosed to Diamondback, and at no time did Diamondback instruct any of the Lehman Entities to deposit its cash and/or securities in an LBHI account, nor did Diamondback ever open an account with LBHI. Instead of settling in their Accounts as Diamondback's segregated property, Diamondback's funds have been frozen at LBHI. To permit LBHI to retain any funds that were undisputedly meant to be held in Diamondback's Accounts at LBI and/or LBIE, would contradict all principles of equity. Such an outcome defeats the intent and purpose of the PB Agreement to establish a prime brokerage relationship with LBI and/or LBIE, and would provide a windfall to LBHI. Accordingly, this Court should recognize that any of Diamondback's cash and/or securities held by LBHI are held in trust for Diamondback, should be treated as secured claims (and not reclassified as unsecured claims), and in so doing, "exercise its equitable powers to ensure that substantial justice is achieved." In re Johns-Manville Corp., 440 B.R. 604, 614 (Bankr. S.D.N.Y. 2010) (citing Pepper v. Litton, 308 U.S. 295, 304-05 (1939)).

## **RESERVATION OF RIGHTS**

19.     Diamondback hereby reserves all of its rights, privileges, remedies and benefits with respect to the claims asserted herein. Nothing herein shall be deemed or otherwise relied upon as a waiver of any of its rights, privileges and remedies under applicable law.

20.     In addition, Diamondback hereby reserves the right to amend, alter, revise or supplement this Response, and reserves its right to file any pleading necessary in support of its Claim and/or a more fulsome response to the Objection or any other subsequent filing. Nothing herein shall be deemed a waiver of any procedural or substantive rights with respect to the Claim, all of which are hereby reserved.

WHEREFORE, Diamondback respectfully requests that the Court overrule the Objection, treat the Claim as a secured claim, and award such further relief as this Court deems just and proper.

Dated: June 15, 2011
       New York, New York

Respectfully submitted,
**SIDLEY AUSTIN LLP**

/s/ Alex R. Rovira
Alex R. Rovira
Noam M. Besdin
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5959

*Counsel For Diamondback Capital Management, LLC, Investment Manager to the Diamondback Master Fund, Ltd*