**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x
                                                       :

In re                                                                                                   :           **Chapter 11 Case No.**
                                                       :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*          :           **08-13555 (JMP)**
                                                     :           **(Jointly Administered)**

         **Debtors.**                                                          :
                                                       :

-------------------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                              ) ss.:
COUNTY OF NEW YORK  )

SID GARABATO, being duly sworn, deposes and says:

1.  I am employed as a Senior Case Manager by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017.  I am over the age of eighteen years and am not a party to the above-captioned action.

2.  On June 14, 2011, I caused to be served the:

    a)  "Cover Letter - Draft Consolidated Document Requests to Ad Hoc Group of Lehman Brothers Creditors," dated June 14, 2011, annexed hereto as <u>Exhibit A</u>,

    b)  "Draft Consolidated Requests to the Ad Hoc Group of Lehman Brothers Creditors," dated June 14, 2011, annexed hereto as <u>Exhibit B</u>,

    c)  "Draft Consolidated Search Terms to the Ad Hoc Group of Lehman Brothers Creditors," annexed hereto as <u>Exhibit C</u>,

    d)  "Cover Letter - Draft Consolidated Document Requests to the Non-Consolidation Plan Proponents," dated June 14, 2011, annexed hereto as <u>Exhibit D</u>,

    e)  "Draft Consolidated Requests to the Non-Consolidation Plan Proponents," dated June 14, 2011, annexed hereto as <u>Exhibit E</u>,

    f)  "Draft Consolidated Search Terms to the Non-Consolidation Plan Proponents," annexed hereto as <u>Exhibit F</u>,

    g)  "Cover Letter - Draft Consolidated Document Requests to Responding Participants," dated June 14, 2011, annexed hereto as <u>Exhibit G</u>,

    h)  "Draft Consolidated Requests to Responding Participants," dated June 14, 2011, annexed hereto as <u>Exhibit H</u>,

    i)  "Draft Consolidated Search Terms to Responding Participants," annexed hereto as <u>Exhibit I</u>,

j) "Cover Letter - Draft Consolidated Document Requests to Debtors' Affiliates," dated June 14, 2011, annexed hereto as <u>Exhibit J</u>,

k) "Draft Consolidated Requests to the Debtors' Affiliates," dated June 14, 2011, annexed hereto as <u>Exhibit K</u>,

l) "Draft Consolidated Search Terms to Debtors' Affiliates," annexed hereto as <u>Exhibit L</u>,

m) "Cover Letter - Draft Consolidated Document Requests to the Creditors' Committee, dated June 14, 2011," annexed hereto as <u>Exhibit M</u>,

n) "Draft Consolidated Requests to the Creditors' Committee," dated June 14, 2011, annexed hereto as <u>Exhibit N</u>, and

o) "Draft Consolidated Search Terms to the Creditors' Committee," annexed hereto as <u>Exhibit O</u>,

by causing true and correct copies to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit P</u>.

*/s/ Sid Garabato*
Sid Garabato

Sworn to before me this
15th day of June, 2011
*/s/ Cassandra Murray*
Notary Public, State of New York
No. 01MU6220179
Qualified in the County of Queens
Commission Expires April 12, 2014

2

# EXHIBIT A

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax


Alfredo R. Pérez
+1 212 310 8191
alfredo.perez@weil.com

**Weil, Gotshal & Manges LLP**

June 14, 2011                                                           BY E-MAIL

All Participants in Plan Discovery
First Amended Official Service List

Re: Lehman Plan Discovery – Consolidated APP Requests and Search Terms for the Ad Hoc Group of
    Lehman Brothers Creditors

Dear Participant,

Pursuant to paragraph 5(d) of the *Order Establishing Schedule and Procedures in Connection with
Discovery Related to Plan Confirmation and Other Issues*, dated April 14, 2011 [Docket No. 16003]
(the "Order"),[1] the Debtors hereby serve the draft Consolidated APP Requests ("Consolidated
Requests") and draft consolidated search terms for Alternative Plan Proponent, the Ad Hoc Group of
Lehman Brothers Creditors identified on Exhibit 5 to the Disclosure Statement for the Amended Joint
Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its
Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC,
Proposed by the Ad Hoc Group of Lehman Brothers Creditors, dated April 27, 2011 [Docket No.
16316].

In accordance with paragraph 5(e) of the Order, a meet and confer regarding the Draft Consolidated
Requests shall take place at the offices of the Creditors' Committee counsel, Milbank, Tweed, Hadley &
McCloy LLP, located at 1 Chase Manhattan Plaza, New York, NY 10005 on June 17, 2011 at 1:00 p.m.
(EDT). Any Participant that believes the Debtors, in compiling the Consolidated Requests, eliminated
or altered non-duplicative requests or search terms and strings or otherwise improperly transcribed
Group APP Requests must attend if you wish to have your objection heard and addressed. In addition,
any Participant that plans to attend should send an email to LehmanPlanDiscovery@weil.com with the
names of attendees by June 16, 2011, at 12:00 p.m (EDT), so that their names can be given to building
security in advance of the meeting.

Sincerely,

Alfredo R. Pérez

_____

[1] Capitalized terms not defined herein shall have the meaning attributed to them in the Order.

**EXHIBIT B**

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

**PURSUANT TO PARAGRAPH 5(D)
OF THE ORDER ESTABLISHING SCHEDULE AND PROCEDURES IN
CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION
AND OTHER ISSUES, DATED APRIL 14, 2011 [DKT. NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Irwin H. Warren
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CONSOLIDATED DOCUMENT REQUESTS TO THE AD HOC GROUP OF LEHMAN
BROTHERS CREDITORS PURSUANT TO BANKRUPTCY RULES 7026 AND 7034**

Pursuant to the Order Establishing Schedule and Procedures in Connection with

Discovery Related to Plan Confirmation and Other Issues, dated April 14, 2011 [Docket No.

16003] (the "<u>Order</u>"), Rules 26 and 34 of the Federal Rules of Civil Procedure (the "<u>Federal

Rules</u>") and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and certain of its affiliates[1]

---

[1] The Debtors in these jointly administered chapter 11 cases are Lehman Brothers Holdings Inc., Lehman
Commercial Paper Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc.,
Lehman Brothers Derivative Products Inc., Lehman Brothers Financial Products Inc., Lehman Brothers OTC
Derivatives Inc., Lehman Brothers Commercial Corporation, LB 745 LLC, PAMI Statler Arms, LLC, CES Aviation
LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Lehman Scottish Finance L.P.,

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

(collectively the "Debtors"), serve these Consolidated Document Requests (the "Requests") to
Alternate Plan Proponent The Ad Hoc Group of Lehman Brothers Creditors, by and through
their counsel, and demand that the Ad Hoc Group (as defined below) provide written responses
and objections to the requests herein within twenty-one (21) days of service, in accordance with
the Order and Federal Rule 34(b).  The responses and objections shall be served on the Official
Service List, as defined in the Order.

Pursuant to paragraph 5(j) of the Order, the Ad Hoc Group (as defined below)
shall produce documents in response to the Requests, bates-stamped and on a rolling basis, as
expeditiously as reasonably practical.  The document production(s) shall be delivered to the
Debtors in accordance with the specifications set forth in Exhibit D to the Order at the offices of
Weil, Gotshal, & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153,
Attention:  Randi W. Singer, Esq.

## I.    DEFINITIONS

1.    The definitions and rules of construction contained in Federal Rule 34 and
Rule 26.3 of the Local Rules of the Southern District of New York (as made applicable by Local
Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York) are
incorporated herein.

2.    "Ad Hoc Group" means the Ad Hoc Group of Lehman Brothers Creditors,
which is currently comprised of California Employees' Retirement System, Canyon Capital
Advisors LLC, City of Costa Mesa, City of Fremont, County of San Mateo, Fiduciary
Counselors Inc., Fir Tree, Inc., Gruss Asset Management, L.P., Owl Creek Asset Management,

---

Luxembourg Residential Properties Loan Finance S.a.r.1., BNC Mortgage LLC, LB Rose Ranch LLC, Structured
Asset Securities Corporation, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC and LB Preferred
Somerset LLC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

L.P., Pacific Investment Management Company LLC, Paulson & Co. Inc., Perry Capital LLC,

Taconic Capital Advisors L.P., and Vallejo Sanitation and Flood Control District, but shall also

include any entities or persons that join the Group in the future. "Ad Hoc Group" refers to the

Group as a whole, as well as to each and every one of its current and future individual members.

       3.      "Ad Hoc Group Disclosure Statement" means the Amended Disclosure

Statement for the Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman

Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB

Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman

Brothers Creditors dated April 27, 2011 [Docket No. 16316].

       4.      "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of the document request all documents that might otherwise

be construed to be outside its scope.

       5.      "Communicate" and "Communication(s)" mean the transmittal of

information (in the form of facts, ideas, inquiries or otherwise), regardless of the form or manner

or embodiment of same (e.g., conversations, meetings, telephone calls, correspondence, letters,

notes, memoranda, e-mails, or other media).

       6.      "Creditor Reliance" refers to, in the broad sense, whether creditors dealt

with certain entities as a single economic unit and did not rely on their separate identity in

extending credit when doing business. *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860

F.2d 515, 518 (2d Cir. 1988).

       7.      "Document" means each and every document within the meaning of

Federal Rule 34, including, without limitation, each and every written, typed, printed, computer-

produced, photographic or other graphic matter of any kind, sound, mechanical, photographic,

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

magnetic, electric or electronic recording or record of any kind, and any and all other means of

preserving thought or expression or tangible thing from which information can be obtained, of

whatever nature, whether an original or a copy, whether a draft or final version, however

produced or reproduced and whether sent or received or neither (e.g., all correspondence, data,

memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars,

books and diaries and entries therein, minutes of meetings, computer print-outs, computer files,

e-mail or other electronic or computer transmission, computer disks, tapes and records of all

types, and any other writing, data form, compilation, other recording or mechanical reproduction

from which information can be obtained or translated, if necessary, into reasonably usable form.

The term shall include copies or drafts of documents which are not identical duplicates of the

originals.

        8.      "Entanglement" refers to, in the broad sense, whether the affairs of certain

entities are so intertwined and entangled that it would be extremely difficult if not impossible

without great cost and expenditure of time to untangle. *See Union Sav. Bank v. Augie/Restivo*

*Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

        9.      "Including" means including, without limitation, or in any way qualifying,

limiting, or restricting the foregoing.

        10.     "Lehman Entities" refers collectively to the Debtors and each of their

direct and indirect subsidiaries and affiliates, including any special purpose vehicles established

or sponsored by any of them. "Lehman Entity" refers to any individual or singular entity within

the Lehman Entities.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

11.    "Plan" means the First Amended Joint Chapter Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (including

as it may be further amended).

12.    "Proposed Ad Hoc Group Plan" means the Amended Joint Substantively

Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated

Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed

by the Ad Hoc Group of Lehman Brothers Creditors dated April 27, 2011 [Docket No. 16315].

13.    "Proposed Non-Consolidation Plan" means the Joint Chapter 11 Plan for

Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset

LLC and LB Preferred Somerset LLC Proposed by the Non-Consolidation Plan Proponents dated

April 25, 2011 [Docket No. 16229].

14.    The term "concerning" means relating to, referring to, describing,

evidencing, or constituting.

15.    The singular form of a word shall be construed to include the plural, and

the plural form of a word shall include the singular.

16.    "Lehman Brothers" shall have the same meaning as used in the Ad Hoc

Group Disclosure Statement.

17.    "Transaction" means any business dealing, whether proposed,

contemplated or entered into, including [i] making, participating in, or purchasing an interest in a

loan (secured or unsecured, guaranteed or not) with, [ii] purchasing any securities of or making

any investment (equity or otherwise) in, [iii] entering into or participating in any real estate

transaction or venture (including a mortgage) with, [iv] entering into or participating in any

partnership, limited liability company, or joint venture with, [v] entering into or participating in

DRAFT CONSOLIDATED DOCUMENT REQUESTS
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

any securitization transaction offered or sponsored by, [vi] purchasing any instrument sponsored

or cosponsored or securitized by, [vii] obtaining a guarantee or other security from, [viii]

purchasing or selling any goods or services to or from, and [ix] engaging in any other type of

financing or business relationship with any entities.

18.     "Lehman's Treasury Team" means Paolo Tanucci, Robert Azerad, and

HeidiMarie Echtermann.

19.     "You" and "your" means the Ad Hoc Group, including each of the Ad

Hoc Group's individual members', and each of its or their special purpose or other investment

vehicles, current and former affiliates, parents, subsidiaries, members, officers, directors,

representatives, employees, agents, consultants, accountants, attorneys, advisors, predecessors,

successors, assigns, and any other person currently or formerly acting or purporting to act on

behalf of the Ad Hoc Group or its individual members for any purpose whatsoever.

20.     Reference to any entity including a corporation, limited liability company

or limited or general partnership, includes (a) any predecessor-in-interest, successor, division,

affiliate, or wholly- or partially-owned subsidiary of the entity specified, where applicable, and

(b) any officer, shareholder, director, partner, agent, member, representative, employee or other

person acting on behalf of the entity specified.

21.     All capitalized terms not otherwise herein defined have the same meaning

as set forth in the Proposed Ad Hoc Group Plan.

**ADDITIONAL DEFINITIONS FROM CREDITORS' COMMITTEE**[2]

22.     "Administrative Expense Claim" means any right to payment constituting

a cost or expense of administration of any of the Consolidated Debtors' Chapter 11 Cases under

---

[2] "Creditors' Committee" refers to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc., et al.

sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Consolidated Debtors, any actual and necessary expenses of operating the businesses of the Consolidated Debtors, any indebtedness or obligations incurred or assumed by the Consolidated Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the estates of the Consolidated Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

23.    "Affiliate" shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

24.    "Aggregate LBSN Guarantee Claims Distribution" means the total Distribution that would have been made to holders of Third-Party Guarantee Claims for which LBSN is the applicable Primary Obligor but for the reallocation of such Distribution to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims pursuant to Section 9.4 of the Proposed Ad Hoc Group Plan.

25.    "Aggregate LBT Guarantee Claims Distribution" means the total Distribution that would have been made to holders of Third-Party Guarantee Claims for which LBT is the applicable Primary Obligor but for the reallocation of such Distribution to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims pursuant to Section 9.3 of the Proposed Ad Hoc Group Plan.

26.    "Allowed" means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as

liquidated in amount and not disputed or contingent and for which no contrary proof of claim has

been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim

that is compromised, settled, or otherwise resolved pursuant to authority granted pursuant to a

Final Order of the Bankruptcy Court or under Article XII of the Proposed Ad Hoc Group Plan, or

(e) any Claim that, if Disputed, has been Allowed by Final Order; provided, however, that

Claims allowed solely for the purpose of voting to accept or reject the Proposed Ad Hoc Group

Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims"

under the Proposed Ad Hoc Group Plan.

   27. "Available Cash" means (a) all Cash of the Consolidated Debtors realized

from their business operations, the sale or other disposition of their assets, the interest earned on

invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b)

the amount of Cash estimated and reserved by the Consolidated Debtors to (i) adequately fund

the reasonable and necessary projected costs to carry out the provisions of the Proposed Ad Hoc

Group Plan on and after the Effective Date, (ii) adequately fund the Disputed Claims Reserve,

(iii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code

and (iv) pay all other amounts required to be paid to manage and/or liquidate the Consolidated

Debtors' assets on and after the Effective Date.

   28. "Bankruptcy Court" means the United States Bankruptcy Court for the

Southern District of New York having jurisdiction over the Chapter 11 Cases.

   29. "Blanket Guarantees" means the various purported guarantees or other

support agreements that LBHI entered into as described in section II.C of the Ad Hoc Group

Disclosure Statement.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

30.     "Board of Directors" means the board of directors of the Consolidated

Debtors.

31.     "Cash" means legal tender or equivalents thereof, however denominated.

32.     "Chapter 11 Cases" means the voluntary cases commenced by the Debtors

under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently

pending before the Bankruptcy Court, styled In re Lehman Brothers Holdings Inc., et al., Chapter

11 Case No. 08-13555 (JMP).

33.     "Claim" means (a) any right to payment, whether or not such right is

known or unknown, reduced to judgment, liquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable

remedy for breach of performance if such breach gives rise to a right of payment, whether or not

such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent,

matured, unmatured, disputed, undisputed, secured, or unsecured.  For avoidance of doubt,

"Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a

right to payment, that has or has not accrued under non-bankruptcy law that is created by one or

more acts or omissions of the Debtors if: (a) the act(s) or omission(s) occurred before or at the

time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability

when injuries/damages are manifested; or (c) at the time of the Effective Date, the Debtors have

received one or more demands for payment for injuries or damages arising from such acts or

omissions.

34.     "Class" means a category of holders of Claims or Equity Interests as set

forth in Article III and IV of the Proposed Ad Hoc Group Plan.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

35.     "Class 5A Subordinated Notes" means, collectively, (a) the Floating Rate

Junior Subordinated Deferrable Interest Debentures due 2035 issued pursuant to the Eighth

Supplemental Indenture, dated as of August 19, 2005, between LBHI and JPMorgan Chase

Bank, as trustee; (b) the Fixed/Floating Rate Subordinated Notes due 2016 Series 5065, issued

pursuant to a final term sheet dated as of September 26, 2006 under the Euro Medium-Term

Note Program; (c) the Floating Rate Subordinated Notes due 2037 Series EB17, issued pursuant

to a final term sheet dated as of January 23, 2007 under the Euro Medium-Term Note Program;

(d) the Fixed/Floating Rate Subordinated Notes due 2019 Series 6222, issued pursuant to the

final term sheet dated as of February 14, 2007 under the Euro Medium-Term Note Program; and

(e) the Floating Rate Subordinated Notes due 2037 Series EB 18, issued pursuant to a final term

sheet, dated as of May 30, 2007, under the Euro Medium-Term Note Program.

36.     "Class 5B Subordinated Notes" means, collectively, (a) the 6.375%

Subordinated Deferrable Interest Debentures due 2052, issued pursuant to the Fourth

Supplemental Indenture, dated as of March 17, 2003, between LBHI and JPMorgan Chase Bank,

as trustee; (b) the 6.375% Subordinated Deferrable Interest Debentures due October 2052, issued

pursuant to the Fifth Supplemental Indenture, dated as of October 31, 2003, between LBHI and

JPMorgan Chase Bank, as trustee; (c) the 6.00% Subordinated Deferrable Interest Debentures

due 2053, issued pursuant to the Sixth Supplemental Indenture, dated as of April 22, 2004,

between LBHI and JPMorgan Chase Bank, as trustee; (d) the 6.24% Subordinated Deferrable

Interest Debentures due 2054, issued pursuant to the Seventh Supplemental Indenture, dated as

of January 18, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (e) the 5.75%

Subordinated Notes due 2017, issued pursuant to the Ninth Supplemental Indenture, dated as of

October 24, 2006, between LBHI and JPMorgan Chase Bank, as trustee; (f) the Fixed and

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Floating Rate Subordinated Notes Due 2032, issued pursuant to the Tenth Supplemental

Indenture, dated as of May 1, 2007, between LBHI and JPMorgan Chase Bank, as trustee; (g) the

6.50% Subordinated Notes Due 2017, issued pursuant to the Thirteenth Supplemental Indenture,

dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (h) the 6.875%

Subordinated Notes Due 2037, issued pursuant to the Fourteenth Supplemental Indenture, dated

as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (i) the 6.75%

Subordinated Notes Due 2017, issued pursuant to the Fifteenth Supplemental Indenture, dated as

of December 21, 2007, between LBHI and The Bank of New York, as trustee; and (j) the 7.50%

Subordinated Notes Due 2038, issued pursuant to the Sixteenth Supplemental Indenture, dated as

of May 9, 2008, between LBHI and The Bank of New York, as trustee.

37.    "Class 5C Subordinated Notes" means, collectively, (a) the 5.707%

Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Eleventh

Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National

Association, as trustee; and (b) the Floating Rate Remarketable Junior Subordinated Debentures

due 2043, issued pursuant to the Twelfth Supplemental Indenture, dated as of May 17, 2007,

between LBHI and U.S. Bank National Association, as trustee.

38.    "Collateral" means any property or interest in property of the estates of the

Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to

avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-

bankruptcy law.

39.    "Collateral Disposition Agreement" means the agreement between

Debtors and JPMorgan approved by the Court on March 24, 2010.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

40.     "Commencement Date" means (a) September 15, 2008 with respect to

LBHI, (b) September 16, 2008 with respect to LB 745, (c) September 23, 2008 with respect to

PAMI, (d) October 3, 2008 with respect to LBCS, LBSF and LOTC, (e) October 5, 2008 with

respect to LBDP, LCPI, LBCC, LBFP, CES, CES V, CES IX, East Dover and LS Finance, (f)

January 7, 2009 with respect to LUXCO, (g) January 9, 2009 with respect to BNC, (h) February

9, 2009 with respect to SASCO and LB Rose Ranch, and (i) April 23, 2009 with respect to LB

2080.

41.     "Confirmation Date" means date upon which the Bankruptcy Court enters

a Confirmation Order on the docket of the Chapter 11 Cases.

42.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court,

as it may be continued from time to time, to consider the confirmation of the Proposed Ad Hoc

Group Plan.

43.     "Confirmation Order" means an order of the Bankruptcy Court confirming

the Proposed Ad Hoc Group Plan pursuant to section 1129 of the Bankruptcy Code.

44.     "Consolidated Debtors" means the Debtors which are substantively

consolidated pursuant to the Proposed Ad Hoc Group Plan.

45.     "Debtor Consolidated Claim" means any Claim against a Designated Non-

Debtor Affiliate asserted by a Consolidated Debtor.

46.     "Designated Non-Debtor Affiliates" means LBIE, LBF, LBAH, LB RE 1,

LB RE 2 and such other Affiliates as the Ad Hoc Group may identify prior to the Confirmation

Hearing.

47.     "Disputed" means, with reference to any Claim, (a) any Claim (whether or

not proof of which was timely and properly filed) that is disputed under the Proposed Ad Hoc

Group Plan or as to which a timely objection and/or request for estimation in accordance with

section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 has been interposed, which

objection and/or request for estimation has not been withdrawn or determined by a Final Order,

or (b) any Claim, proof of which was required to be filed by a Final Order of the Bankruptcy

Court in a form and manner proscribed in such Final Order, but as to which a proof of claim was

not timely or properly filed.

48.    "Distribution" means any payment or transfer made to a person other than

a Debtor under the Proposed Ad Hoc Group Plan.

49.    "Disputed Claims Reserve" means cash in the amount that must be

reserved pursuant to Section 12.5 and Section 12.7 of the Proposed Ad Hoc Group Plan to satisfy

Disputed Claims in the event that a Disputed Claim becomes an Allowed Claim.

50.    "Effective Date" means the first Business Day on which the conditions to

effectiveness of the Proposed Ad Hoc Group Plan set forth in Article XIV of the Proposed Ad

Hoc Group Plan have been satisfied or waived and on which the Proposed Ad Hoc Group Plan

shall become effective.

51.    "Equity Interest" means shares of common stock, preferred stock, other

forms of ownership interest, or an interest or right to convert into such an equity or ownership

interest or to acquire any equity or ownership interest or any interest or right for which the

amount owing is determined by reference to an equity or ownership interest, including, without

limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent

equity awards, performance stock units, and stock options or restricted stock awards granted

under management ownership plans, the LBHI 2005 stock incentive plan or the LBHI employee

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

incentive plan, in LBHI that was in existence immediately prior to the Commencement Date for

LBHI.

52.    "Final Order" means an order of the Bankruptcy Court or any other court

of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for

reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other

proceedings for reargument or rehearing shall then be pending or as to which any right to appeal,

petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance

satisfactory to the proponents of the Ad Hoc Group or the Plan Administrator, as applicable, or,

in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought,

such order of the Bankruptcy Court or other court of competent jurisdiction shall have been

determined by the highest court to which such order was appealed, or certiorari, reargument, or

rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or

move for reargument or rehearing shall have expired; provided, however, that no order shall fail

to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of

the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy

Rule 9023 or 9024 may be filed with respect to such order; provided, further, that the Ad Hoc

Group or Plan Administrator, as applicable, may waive any appeal period so long as a stay

pending appeal has not been granted by order of the Bankruptcy Court or any other court of

competent jurisdiction.

53.    "Foreign Affiliate" means an Affiliate of LBHI that is not incorporated in

the United States.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

54.    "Foreign Proceeding" means an insolvency or similar proceeding involving an Affiliate of the Debtors (other than the Chapter 11 Cases), including each of the proceedings identified on Schedule 3 of the Proposed Ad Hoc Group Plan.

55.    "General Non-Consolidated Affiliate Guarantee Claim" means any Guarantee Claim asserted by a Non-Consolidated Affiliate, other than a Senior Non-Consolidated Affiliate Guarantee Claim.

56.    "General Unsecured Claim" means any Claim asserted other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Subordinated Unsecured Claim, an Intercompany Claim, a Third-Party Guarantee Claim and a Section 510(b) Claim.

57.    "Guarantee" means a guarantee by a Debtor of an obligation of an Affiliate of the Debtors.

58.    "Intercompany Claim" means any Claim against a Consolidated Debtor asserted by an Affiliate of the Consolidated Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, and a Secured Claim.

59.    "ISDA" means an agreement under the 1992 or 2002 International Swap Dealers Association form.

60.    "LB RE 1" means LB RE Financing No. 1 Limited.

61.    "LB RE 2" means LB RE Financing No. 2 Limited.

62.    "LBAH" means Lehman Brothers Asia Holdings Limited (In Liquidation).

63.    "LBF" means Lehman Brothers Finance AG (in liquidation) a/k/a/ Lehman Brothers Finance S.A. (in liquidation).

64.    "LBI" means Lehman Brothers Inc.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

65.     "LBIE" means Lehman Brothers International (Europe) (in Administration).

66.     "LBSF" means Lehman Brothers Special Financing Inc.

67.     "LBSN" means Lehman Brothers Securities N.V.

68.     "LBSN Intercompany Claim" means any Intercompany Claim asserted against any of the Consolidated Debtors by LBSN.

69.     "LBT" means Lehman Brothers Treasury Co. B.V.

70.     "LBT Intercompany Claim" means any Intercompany Claim asserted against any of the Consolidated Debtors by LBT.

71.     "Lien" shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

72.     "Litigation Claims" means any and all causes of action held by a Debtor.

73.     "New Securities" means any securities to be distributed by the Consolidated Debtors pursuant to and in a manner consistent with the provisions of the Proposed Ad Hoc Group Plan representing an interest in any entity formed or utilized by the Consolidated Debtors pursuant to the provisions of Section 9.5 of the Proposed Ad Hoc Group Plan.

74.     "Non-Consolidated Affiliate" means any Affiliate of LBHI other than any Consolidated Debtor, LBT, LBSN, or any Designated Non-Debtor Affiliate.

75.     "Paying Foreign Affiliate" shall have the meaning assigned to such term in Section 11.8 of the Proposed Ad Hoc Group Plan.

76.     "Plan Administrator" means the person, designated by the Board of Directors as of the Effective Date and approved by the Bankruptcy Court, granted with the

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

authority and charged with the responsibilities of the "Plan Administrator" under the Proposed

Ad Hoc Group Plan.

77.    "Plan Consideration" means Available Cash and New Securities, if any, to

be distributed pursuant to the Proposed Ad Hoc Group Plan.

78.    "Primary Claim" means the underlying claim against an Affiliate that

gives rise to a Third-Party Guarantee Claim to the extent a Guarantee has been issued in respect

of such underlying Claim.

79.    "Primary Obligor" means the obligor of a Primary Claim.

80.    "Priority Non-Tax Claim" means (a) any Claim, other than an

Administrative Expense Claim or Priority Tax Claim, against a Consolidated Debtor entitled to

priority in payment under section 507(a) of the Bankruptcy Code, (b) if LBT is substantively

consolidated pursuant to Article VIII of the Proposed Ad Hoc Group Plan, Claims equivalent

thereto asserted against LBT in its Foreign Proceeding subject to the provisions of Section 8.1 of

the Proposed Ad Hoc Group Plan, (c) if LBSN is substantively consolidated pursuant to Article

VIII of the Proposed Ad Hoc Group Plan, Claims equivalent thereto asserted against LBSN in its

Foreign Proceeding subject to the provisions of Section 8.1 of the Proposed Ad Hoc Group Plan,

and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to Article

VII of the Proposed Ad Hoc Group Plan, Claims equivalent thereto asserted against such

Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions of Section

7.1 of the Proposed Ad Hoc Group Plan.

81.    "Pro Rata Share" means with respect to an Allowed Claim or Equity

Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears

to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of

Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims, in each of the

foregoing instances taking into account adjustments as may be set forth in Article IV of the

Proposed Ad Hoc Group Plan; provided, however, that Administrative Expense Claims shall not

be considered for purposes of "Pro Rata Share"; provided further, however, that only the

following Classes of Claims shall be considered in the determination of "Pro Rata Share" with

respect to the following Distributions:

82.      Plan Consideration: Class 3, Class 4, Class 5A, Class 5B, Class 5C,

Classes 6A through 6n, Classes 7A through 7n, Classes 8A through 8n, Classes 9A through 9n,

Class 10, Class 11, Class 12, Class 13, Class 14A, Class 14B, Class 15A, Class 15B, Classes

16A through 16n, Classes 17A through 17n, and Classes 18A through 18n.

83.      Subordinated Class 5A Distribution: Class 3 and Class 10.

84.      Subordinated Class 5B Distribution: Class 3, Class 10, Class 12 and any

Class of Classes 8A through 8n that votes to reject the Proposed Ad Hoc Group Plan.

85.      Subordinated Class 5C Distribution: Class 3, Class 5A, Class 5B, Class

10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Proposed Ad Hoc

Group Plan.

86.      Reallocated LBSN Distribution: Class 3 and Class 4.

87.      Reallocated LBT Distribution: Class 3 and Class 4.

88.      "RACERS" collectively refers to the Restructured Asset and Enhanced

Returns Series 2007-A Trust and the Restructured Asset Securities With Enhanced Returns

Series 2007-7-MM Trust.

89.     "RASCALS" means the process named Regulation and Administration of Safe Custody and globaL Settlement described in section II.B.3.a of the Ad Hoc Group Disclosure Statement.

90.     "Reallocated LBSN Distribution" means if both Class 14B and Class 15B vote to accept the Proposed Ad Hoc Group Plan, 50% of each Aggregate LBSN Guarantee Claims Distribution, which shall be distributed to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims in accordance with Section 9.4 of the Proposed Ad Hoc Group Plan.

91.     "Reallocated LBT Distribution" means if both Class 14A and Class 15A vote to accept the Proposed Ad Hoc Group Plan, 50% of each Aggregate LBT Guarantee Claims Distribution, which shall be distributed to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims in accordance with Section 9.3 of the Proposed Ad Hoc Group Plan.

92.     "Receiving Affiliate" shall have the meaning assigned to such term in Section 11.8 of the Proposed Ad Hoc Group Plan.

93.     "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

94.     "Secured Claim" means (a) any Claim against a Consolidated Debtor (i) to the extent reflected in the Schedules or upon a proof of claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (ii) that is subject to a valid right of

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

setoff pursuant to section 553 of the Bankruptcy Code to the extent of such setoff, (b) if LBT is

substantively consolidated pursuant to Article VIII of the Proposed Ad Hoc Group Plan, Claims

equivalent thereto asserted against LBT in its Foreign Proceeding subject to the provisions of

Section 8.1 of the Proposed Ad Hoc Group Plan, (c) if LBSN is substantively consolidated

pursuant to Article VIII of the Proposed Ad Hoc Group Plan, Claims equivalent thereto asserted

against LBSN in its Foreign Proceeding subject to the provisions of Section 8.1 of the Proposed

Ad Hoc Group Plan, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated

pursuant to Article VII of the Proposed Ad Hoc Group Plan, Claims equivalent thereto asserted

against such Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions

of Section 7.1 of the Proposed Ad Hoc Group Plan.

        95.     "Senior Non-Consolidated Affiliate Guarantee Claim" means any

Guarantee Claim against LBHI asserted by a Non-Consolidated Affiliate that is entitled to a

contractual right of priority in payment to Subordinated Class 5B Claims and Subordinated Class

5C Claims, but not Subordinated Class 5A Claims (excluding an "Other Financial Obligation" as

defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes).

        96.     "Senior Non-Consolidated Intercompany Claim" means any Intercompany

Claim against LBHI asserted by a Non-Consolidated Affiliate that is entitled to a contractual

right of priority in payment to all Subordinated Claims (excluding an "Other Financial

Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes),

other than any Senior Non-Consolidated Affiliate Guarantee Claim or General Non-Consolidated

Affiliate Guarantee Claim.

        97.     "Senior Unsecured Claim" means any Claim against LBHI that is entitled

to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated

Notes), other than a Senior Non-Consolidated Intercompany Claim, an LBSN Intercompany

Claim or an LBT Intercompany Claim (if such LBSN Intercompany Claim or LBT Intercompany

Claim would otherwise be entitled to a contractual right of priority in payment to all

Subordinated Claims).

   98. "Subordinated Claim" means any Subordinated Class 5A Claim,

Subordinated Class 5B Claim or Subordinated Class 5C Claim.

   99. "Subordinated Class 5A Claim" means any Claim against LBHI arising

under the Class 5A Subordinated Notes.

   100. "Subordinated Class 5A Distribution" means the total Distribution that

would have been made to holders of Allowed Subordinated Class 5A Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the Proposed Ad Hoc Group Plan.

   101. "Subordinated Class 5B Claim" means any Claim against LBHI arising

under the Class 5B Subordinated Notes.

   102. "Subordinated Class 5B Distribution" means the total Distribution that

would have been made to holders of Allowed Subordinated Class 5B Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the Proposed Ad Hoc Group Plan.

   103. "Subordinated Class 5C Claim" means any Claim against LBHI arising

under the Class 5C Subordinated Notes.

   104. "Subordinated Class 5C Distribution" means the total Distribution that

would have been made to holders of Allowed Subordinated Class 5B Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the Proposed Ad Hoc Group Plan.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

105.    "Subordinated Notes" means, collectively, the Class 5A Subordinated Notes, Class 5B Subordinated Notes and Class 5C Subordinated Notes.

106.    "Subordinated Unsecured Claim" means any Subordinated Class 5A Claim, Subordinated Class 5B Claim or Subordinated Class 5C Claim.

107.    "Third-Party Guarantee Claim" means any Guarantee Claim asserted by a Person that is not a Consolidated Debtor or an Affiliate of the Debtors.

108.    "Transfer Provisions" means the provision in many Lehman ISDAs permitting the Lehman entity party thereto to transfer freely its rights and obligations to any other Lehman entity.

## II.    INSTRUCTIONS

1.    You are required to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

2.    The use of electronic search terms supplied by the Debtors does not obviate, alter, or alleviate the requirement for You to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

3.    These Requests shall be deemed to be continuing so as to require further and supplemental production in the event that additional responsive documents are discovered.

4.    In accordance with paragraph 11 of the Order, if You withhold any Documents responsive to any of the Requests (except as provided in paragraphs 3(j) and 11(c) of the Order) on the grounds of privilege, work product, or any other type of protection or immunity

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

from disclosure, You shall produce a privilege log, consistent with Federal Rule 26(b)(5), as

incorporated by Bankruptcy Rules 7026 and 9014, that contains the following fields:

a.     Document identification;

b.     the Document date;

c.     for e-mails, the subject field of the e-mail;

d.     for attachments to emails and Documents (other than prior e-mails
       in the e-document), the Document name;

e.     the name of each person to whom the Document was sent,
       including those blind copied or shown as copied, and whether or
       not any of the recipients, senders, or other addressees are attorneys
       (yes/no); and

f.     the custodian of the Document.

If privilege, work product, or any other type of protection or immunity is asserted as to only a

part of a Document, then the remainder of the Document shall be produced.

5.     If You object to any Request or part thereof, the objection shall be stated

in accordance with the Bankruptcy Rules and the Federal Rules.

6.     In accordance with paragraph 5(k) of the Order, Documents shall be

produced in electronic form.  Upon a showing of good cause, Documents that are not reasonably

conducive to being cost-effectively produced in electronic form may be produced by other

means, as set forth in the Order.

7.     Documents are to be organized and labeled to correspond with the

categories of these Requests or are to be produced as they are kept in the usual course of

business.  Any Documents which must be removed from their original folders, binders, covers or

containers (collectively, "Containers") in order to be produced shall be identified in a manner so

as to clearly specify where such Documents originated and with a copy of any title or reference

on the Containers.

23

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

8.    Electronically stored Documents shall be produced in the electronic form

set forth in <u>Exhibit D</u> to the Order:

a.    *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

b.    *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with <u>Appendix 1</u> to <u>Exhibit D</u> of the Order.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

c.    *Hard copy documents*.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

d.    *TIFF Images Generally*.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif"" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  For instances in which the original file is in color and the color is necessary for interpretation of the document (charts, pictures, etc.), produce medium quality JPEG in place of single page tiff file.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

e.    *Shipment of electronic data*.  Electronic data productions may be transmitted electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or physically transported using electronic storage media such as, CDs, DVDs or hard drives.  The physical media label should contain the case name and number, production

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

date, and bates range being produced.  Each transmission of data
should include a collection "manifest" report which provides a list
of files collected, their location, and their MD5 hash values.

9.    If more than one copy of a Document responsive to a Request exists, each

non-identical copy of the Document shall be produced.

10.    No part of a Request shall be left unanswered or Documents not produced

as called for therein merely because an objection (including as to privilege) is interposed to

another part of the Request.

11.    These Requests are continuing in nature and You are obligated to provide

any responsive Documents that come to Your attention subsequent to serving Your response to

these Requests and/or producing any Documents, in accordance with Federal Rule 26(e).

12.    Unless otherwise stated, the period covered by these Requests is as

follows:

> a.    With respect to any Transaction that remained live (i.e., one or
> both parties to the Transaction had continuing obligations) as of
> January 1, 2007, the period covered is the genesis of that
> Transaction to the present.

> b.    With respect to any potential or realized Transaction with any
> Lehman Entity, or any Transaction that You considered entering
> into with any Lehman Entities, but declined to do so, the period
> covered is January 1, 2007 to the present.

## ADDITIONAL INSTRUCTION FROM GROUP 3 PARTICIPANTS

13.    Consistent with the time period set forth by the Debtors in *The Debtors'*

*Preliminary Requests to the Debtors' Affiliates, Pursuant to Paragraph 6 of the Order*

*Establishing Schedule and Procedures in Connection with Discovery Related to Plan*

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

*Confirmation and Other Issues*, the period covered by all the Requests is January 1, 2005 to the

present.[3]

## ADDITIONAL INSTRUCTION FROM GROUP 9 PARTICIPANTS

        14.     The document requests should not generally be limited to documents from

the period January 1, 2007 to the present, and should generally include documents from the

period pre-dating the filing of the Debtors' chapter 11 petitions.[4]

## III.    DOCUMENT REQUESTS

        1.     All Documents and Communications concerning, referenced in, referred

to, examined, relied upon, or otherwise used to prepare the Proposed Ad Hoc Group Plan and the

Ad Hoc Group Disclosure Statement, including:

        a.     All Documents or Communications concerning the analyses
contained in Sections VII, VIII, and X of the Proposed Ad Hoc
Group Plan.

        b.     All Documents or Communications that support the assertions
made in paragraph 10 of the Preliminary Objection of the Ad Hoc
Group of Lehman Brothers Creditors to the Joint Chapter 11 Plan
of Lehman Brothers Holdings Inc. and Its Affiliated Debtors and to
the Debtors Disclosure Statement for Joint Chapter 11 Plan of
Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant
to Section 1125 of the Bankruptcy Code and Request for Status
Conference, dated June 29, 2010 [Docket No. 9905], concerning
the Debtors' Disclosure Statement for Joint Chapter 11 Plan of
Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant
to Section 1125 of the Bankruptcy Code, dated April 14, 2010
[Docket No. 8332].

        2.     All Documents and Communications concerning the following topics,

including documents or analyses [i] prepared by or for, or used internally by, You or the Ad Hoc

---

[3] Requested by the following members of Group 3:  Bundesverband deutscher Banken e.V. ("BdB").

[4] Requested by the following members of Group 9:  Michiel Gorsira and Robert V. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities, N.V., ("LBSN Trustees") and Rutger J. Shimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V. ("LBT Trustees").

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Group or [ii] exchanged between, or circulated among, any one or more of, the Ad Hoc Group

members:

      a.      LBHI's assumption of, or support for any, contractual obligations of any other Lehman Entity, including expressions or indications of, or any person's belief as to, LBHI's willingness or unwillingness or likelihood to stand behind or make good upon, in whole or in part, any obligations of any other Lehman Entity, regardless of whether any obligations were assumed;

      b.      the sharing of administrative expenses (including overhead, employee, management, accounting, taxes, cash management and other related expenses) by or among the Lehman Entities;

      c.      the existence of any formal or informal, written or oral intercompany guarantees, promises, agreements, understandings, undertaking of any obligations, or pledges by or among any of the Lehman Entities;

      d.      the transfer or sale of property, assets, or liabilities between and among any of the Lehman Entities;

      e.      the transfer of funds or intercompany balances between and among any of the Lehman Entities;

      f.      any Lehman Entities' employment of individuals and payments to employees;

      g.      capitalization of any of the Lehman Entities;

      h.      the ownership of property, assets, and liabilities by, between and among any Lehman Entities;

      i.      the existence of consolidated and unconsolidated financial statements for or among any Lehman Entities;

      j.      financial statements for any Lehman Entity other than LBHI;

      k.      the boards of directors, or any individual directors and/or officers, of any of the Lehman Entities;

      l.      the ownership, organizational structure, corporate governance, and method of business operation of any Lehman Entity;

      m.      the prepetition cash management system used by any of the Lehman Entities;

n.     LBHI's or any other Lehman Entity's exercise of direct or indirect control over any other of the Lehman Entities, including whether or not any of the Lehman Entities were subject to direction from LBHI or any other Lehman Entity;

o.     the office locations and premises of any of the Lehman Entities; and

p.     without regard to date, for the first four Transactions of each type of Transaction that You [i] considered but did not enter into, and [ii] entered into with each Lehman Entity, all Documents and Communications concerning such Transactions and all of Your or any other member of the Ad Hoc Group's policies, procedures, or standards for considering, reviewing, approving and entering into, or that were utilized, in any Transaction with any Lehman Entities, and any hedging or risk management policies and/or any due diligence reports or analysis, reports to or records of credit committees, investment committees or other loan or investment approval, or loan or investment review or monitoring, bodies of or for Your organization.

3.     All Documents and Communications concerning whether You or any other members of the Ad Hoc Group, or any other creditor of the Lehman Entities, dealt with any one or more of the Lehman Entities as a single economic unit in extending credit.

4.     All Documents and Communications concerning the following for any potential or realized Transaction between You and any of the Lehman Entities:

a.     any internal instructions, directions, policies, procedures, protocols, practices, manuals, other method of business practices or any changes thereto relating to (i) Your relationship, or any of Your Transactions, with the Lehman Entities; and (ii) due diligence for and monitoring of; (iii) any contingency planning/risk analyses or risk management; (iv) Your reserves; (v) any charge-offs; (vi) any mark-to-market valuations; (vii) any write-downs; and (viii) any workouts, plans, analyses, restructuring, or forecasting as to any such Transactions;

b.     Your or the Ad Hoc Group's decision whether or not to enter into any such Transaction with one or more of the Lehman Entities;

c.     any credit committee, investment committee, or other group (or members thereof) charged with proposal of, review, approval, or monitoring of such Transactions; and

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

        d.      actual or potential recovery or rate of return for such Transactions.

        5.      Subject to the restriction in Paragraph 3(j) of the Order, all Documents and Communications between and among You (or any other member or representative of the Ad Hoc Group) and any restructuring advisor, financial consultant, or other consultant hired by, or that performed work for or advised, You or the Ad Hoc Group concerning (i) substantive consolidation, including Entanglement and Creditor Reliance, or (ii) the Proposed Ad Hoc Group Plan, the Ad Hoc Group Disclosure Statement, the Proposed Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.

        6.      All Documents and Communications concerning the Ad Hoc Group's analysis and determination whether (i) certain Designated Non-Debtor Affiliates should be substantively consolidated with the Consolidated Debtors, as those terms are defined in the Proposed Ad Hoc Group Plan, and (ii) the Non-Consolidated Affiliates should not be substantively consolidated.

        7.      All Documents and Communications concerning the Ad Hoc Group's determination or that You considered, examined, relied upon or otherwise used to determine[5] that Lehman Brothers Treasury Co. B.V. ("LBT") should be substantively consolidated with LBHI.

        8.      All Documents and Communications concerning the Ad Hoc Group's determination or that You considered, examined, relied upon or otherwise used to determine[6] that Lehman Brothers Securities N.V. should be substantively consolidated with LBHI.

---

[5] Addition requested by the following members of Group 9: LBSN Trustees, LBT Trustees, and Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG ("PwC").

[6] Addition requested by the following members of Group 9: LBSN Trustees, LBT Trustees, and PwC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

9.      All Documents and Communications, including those exchanged with

third parties, concerning the following:

      a.      participation in the Ad Hoc Group;

      b.      any efforts undertaken by the Ad Hoc Group to solicit support or to
              solicit votes in support of the Proposed Ad Hoc Group Plan;

      c.      the solicitation of votes to accept or reject the Proposed Ad Hoc
              Group Plan; and

      d.      any efforts undertaken by the Ad Hoc Group to solicit support
              against or to solicit votes against the Plan or the Proposed Non-
              Consolidation Plan.

10.      All Documents and Communications concerning credit ratings, credit

evaluations, or credit or risk reviews related to any Lehman Entity, including (a) credit reports of

any one or more of the Lehman Entities or any security or other instrument issued by the

Lehman Entities, and (b) any periodic or special credit reviews for purposes of establishing

trading and/or transaction procedures between You and any Lehman Entity.

11.      All Documents and Communications prepared, sent, reviewed or received

by You or any member of the Ad Hoc Group concerning the financial status, solvency, or health

of any of the Lehman Entities from January 1, 2007 to the present.

12.      All Documents and Communications concerning the following:

      a.      any formal or informal, written or oral, promise, guarantee,
              agreement, understanding, undertaking of any obligation, or pledge
              of LBHI to satisfy an obligation or liability of any other entity,
              including with respect to asset values, collection, net worth or
              similar agreements, regardless of whether the purported guarantee,
              promise or pledge concerns any instrument, obligation, or claim
              You now or previously held;

      b.      any request, or consideration whether to make a request, by You or
              any member of the Ad Hoc Group for LBHI to provide such a
              guarantee, promise, agreement, understanding, undertaking of any
              obligation, or pledge to satisfy an obligation or liability of any
              other Lehman Entity in connection with a Transaction; and

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

      c.      the enforceability of any such guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction.

13.      All Documents and Communications concerning any analysis, study, valuation done by or for You or the Ad Hoc Group or its individual members of any actual or potential purchase, sale, or transfer of a claim against any of the Lehman Entities, including all Documents and Communications with or concerning the original or prospective claimant or counterparty or its relationship with any of the Lehman Entities.

14.      All Documents and Communications concerning any interviews of any person concerning the conduct of the Lehman Entities prior to September 15, 2008, that were conducted by or on behalf of You or the Ad Hoc Group, or of which You or the Ad Hoc Group is aware.

15.      All Documents and Communications concerning the intercompany balances or intercompany transactions among or between the Lehman Entities, including as reflected in the publicly-filed statements of the Lehman Entities.

16.      All Documents and Communications concerning any meetings of the Ad Hoc Group, including any meeting of the steering committee of the Ad Hoc Group.

17.      All Documents and Communications between You and any member of Lehman's Treasury Team regarding any Transaction that You considered or entered into with any Lehman Entity.

18.      Identify and produce, to the extent not produced in response to prior Requests, Documents or Communications reviewed, used or relied upon by the Ad Hoc Group in preparing the Ad Hoc Group Disclosure Statement, including:

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

a.    the "discussions with the Debtors, market participants and counterparties to the Lehman enterprise," as stated on page 14 of the Ad Hoc Group Disclosure Statement;

b.    the "other materials [that] have been made available from third-party proceedings, including adversary proceedings in these cases and legal proceedings involving Foreign Affiliates," as stated on page 14 of the Ad Hoc Group Disclosure Statement; and

c.    All prepetition securities filings of the Debtors as stated on page 14 of the Ad Hoc Group Disclosure Statement.

19.    All Documents and Communications concerning or that You considered, examined, relied upon or otherwise used in making[7] the following claims made in the Ad Hoc Group Disclosure Statement:

a.    the Ad Hoc Group "independently made contact with holders of billions of dollars of other claims against Lehman Brothers who are supportive generally of the Plan and increased creditor involvement in the Plan process," (page 6 of the Ad Hoc Group Disclosure Statement);

b.    the Debtors have not advanced materially the Plan process since March of 2010, (page 6 of the Ad Hoc Group Disclosure Statement);

c.    the Debtors' Plan leaves unresolved asset ownership and other intercompany issues that would result in potentially years of continued litigation, (page 6 of the Ad Hoc Group Disclosure Statement);

d.    the Ad Hoc Group has conducted "negotiations regarding the terms of the Plan with representatives of the Foreign Affiliates and key stakeholders thereof who may be asserting, among other things, Guaranteed Claims and Intercompany Claims against the Debtors," (page 10 of the Ad Hoc Group Disclosure Statement);

e.    "the proposed settlement with and offer of enhanced treatment to LBT and holders of related Guarantee Claims are the product of extensive but yet incomplete discussions with certain holders of material Claims against LBT, including related Guarantee Claims against LBHI," (page 10 of the Ad Hoc Group Disclosure Statement);

---

[7] Addition requested by the following members of Group 9:  LBSN Trustees, LBT Trustees, and PwC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

f. "substantive consolidation would enable the avoidance of the costs and extended time that would otherwise be incurred in connection with litigation of the multifaceted and complex issues among and between each of the Debtors and their Foreign Affiliates," (page 12 of the Ad Hoc Group Disclosure Statement);

g. "creditors dealt with Lehman as a single economic unit and did not rely on the separate identity of LBHI's affiliates when extending credit," (page 14 of the Ad Hoc Group Disclosure Statement);

h. "that counterparties did not rely on the separate creditworthiness of the Lehman entities, and, in particular, the derivatives subsidiaries, for a variety of reasons," (page 14 of the Ad Hoc Group Disclosure Statement);

i. "most counterparties to Lehman ISDAs likely did not conduct any due diligence relating to the credit risk of individual Lehman subsidiaries engaged in trading activities," (page 14 of the Ad Hoc Group Disclosure Statement);

j. "Counterparties also could not rely on the separate creditworthiness of Lehman trading subsidiaries as it was generally recognized that these entities were not independently viable operative companies," (page 15 of the Ad Hoc Group Disclosure Statement);

k. "broker-dealers generally were not aware of whether they were trading with Lehman Brothers or any other broker-dealer," (page 15 of the Ad Hoc Group Disclosure Statement);

l. "unregulated entities were viewed by trading counterparties simply as an extension of the Lehman Group," (page 15 of the Ad Hoc Group Disclosure Statement);

m. "Lehman Brothers notified other broker dealer counterparties of the Lehman Entity in which their transactions would be recorded only after the trade was booked and frequently had more than one ISDA negotiated with each counterparty to facilitate this structure," (page 15 of the Ad Hoc Group Disclosure Statement);

n. "unregulated Lehman Entities had little, if any, control over the possession of their securities and were seldom provided with protections typically afforded to third-party customers for the safekeeping of their securities," (page 16 of the Ad Hoc Group Disclosure Statement);

o.      counterparties "could not (and did not) rely on the subsidiary's
        books to assess its credit exposure," (page 16 of the Ad Hoc Group
        Disclosure Statement);

p.      counterparties treated "the Lehman Entities as a single enterprise,"
        (page 16 of the Ad Hoc Group Disclosure Statement);

q.      "counterparties typically agreed to such Transfer Provisions
        because their transactions were guaranteed by LBHI under the
        ISDA and they were indifferent as to which Lehman Entity was
        deemed to be the trading counterparty," (page 16 of the Ad Hoc
        Group Disclosure Statement);

r.      "Lehman Brothers operated as one integrated business in the
        global financial markets," (page 17 of the Ad Hoc Group
        Disclosure Statement);

s.      "corporate formalities and the legal separateness of each Lehman
        Entity were disregarded as a means to achieve greater efficiencies
        for Lehman Brothers as a whole," (page 17 of the Ad Hoc Group
        Disclosure Statement);

t.      "Lehman Brothers also engaged in hedging activities to control
        market and credit risk of the Lehman Group as a whole, and
        without regard to the market and credit risk profile of any specific
        Lehman Entity. Such activities were achieved through a labyrinth
        of multi-billion dollar intercompany transactions that resulted in
        intercompany balances that in many cases bear no relation to the
        economic realities of the intercompany transactions that actually
        took place or the underlying third-party transaction," (pages 17-18
        of the Ad Hoc Group Disclosure Statement);

u.      Lehman Brothers' operational infrastructure was "highly integrated
        and centralized," including "a centralized cash management
        system," "centralized securities and clearing operations," "a
        centralized paymaster that funded all operating costs and expenses
        on behalf of the applicable Lehman Entities," "a single employer"
        "that employed all employees within that area," "integrated IT and
        accounting systems," "centralized structure for management of
        LBHI's subsidiaries," "consolidated financial statements," and
        "shared bank and depository accounts," (page 18 of the Ad Hoc
        Group Disclosure Statement);

v.      "LBHI and its direct and indirect subsidiaries and affiliates (other
        than special purpose vehicles) operated as a single, integrated
        entity to facilitate and implement trading activities in global equity,

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

debt and commodity markets," (page 18 of the Ad Hoc Group
Disclosure Statement);

w.      "Lehman Brothers' unregulated affiliates were largely used as
        'booking sites' for trades and did not have any independent
        capability to execute and settle trades," (page 18 of the Ad Hoc
        Group Disclosure Statement);

x.      "Substantially all transactions booked in unregulated affiliates
        were conducted by employees of Lehman Brothers' broker-dealer
        entities – such as LBI or LBIE – and by the traders employed by
        such broker-dealer entities," (page 18 of the Ad Hoc Group
        Disclosure Statement);

y.      "substantially all U.S. Lehman Brothers employees were employed
        by LBI," (page 18 of the Ad Hoc Group Disclosure Statement);

z.      "LBI salesmen and traders dealt with customers and counterparties
        as an integrated business and had the ability to book transactions
        across all Lehman Entities," (page 18 of the Ad Hoc Group
        Disclosure Statement);

aa.     "assets of subsidiaries were not safeguarded through customer
        agreements or safekeeping arrangements and were generally
        commingled with those of other subsidiaries to allow Lehman's
        broker-dealer affiliates, including LBI and LBIE, maximum ability
        to utilize these assets in clearing and settling customer and
        proprietary activities of Lehman Brothers," (page 19 of the Ad Hoc
        Group Disclosure Statement);

bb.     "Lehman's unregulated subsidiaries' books are believed to consist
        almost entirely of facially inscrutable intercompany transactions
        that in some cases reflect years of intercompany transactions,"
        (page 19 of the Ad Hoc Group Disclosure Statement);

cc.     "if marketable securities were included on the balance sheet of an
        unregulated subsidiary, such securities were not in its possession
        and control and were likely not safeguarded, rendering any
        separate credit analysis even more unreliable," (page 19 of the Ad
        Hoc Group Disclosure Statement);

dd.     "as part of its integrated operations, Lehman Brothers engaged in a
        complicated web of intercompany financings to conduct day-to-
        day business," (page 19 of the Ad Hoc Group Disclosure
        Statement);

ee.     "These intercompany settlement processes were designed to settle
        securities transactions efficiently from the standpoint of Lehman

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Brothers as a whole, and to provide a pool of collateral to the broker-dealer entities for use in financing and settling customer and proprietary transactions," (page 20 of the Ad Hoc Group Disclosure Statement);

ff.    "intercompany transactions were not conducted at arms-length and may not be adequately reflected in the intercompany balances," (page 20 of the Ad Hoc Group Disclosure Statement);

gg.    "no definitive conclusions regarding asset ownership could be forthcoming even upon extensive investigation" because "the sheer complexity of the transactions created uncertainty in determining the legal relationship among the parties to a particular transaction," (page 20 of the Ad Hoc Group Disclosure Statement);

hh.    "Creditors recognized that such entities had little or no economic substance and instead looked, if at all, only to LBHI's creditworthiness," (page 22 of the Ad Hoc Group Disclosure Statement);

ii.    "substantial doubt remains over the legal title to many material assets within the Lehman Brothers enterprise," (page 20 of the Ad Hoc Group Disclosure Statement);

jj.    "Lehman focused on hedging risk along business groups and product lines, not risk as it pertained to a specific Lehman Entity . . . without regard to the business prospects or financial soundness of any one particular entity," (page 24 of the Ad Hoc Group Disclosure Statement);

kk.    "European subsidiaries also did not maintain separate bank accounts," but "utilized LBI, LBIE and LBHI to settle securities transactions, receive and make cash payments, and secure financing for their operations," (page 25 of the Ad Hoc Group Disclosure Statement);

ll.    "the accuracy of intercompany balances reflected on each of the Lehman Entity's books is subject to inherent flaws in Lehman Brothers' accounting systems," (page 26 of the Ad Hoc Group Disclosure Statement);

mm.    the intercompany relationships among Lehman Entities (as defined in the Ad Hoc Group Disclosure Statement) were "often largely circular and of potential[ly] questionable substance," (page 27 of the Ad Hoc Group Disclosure Statement);

nn.    the existence of (i) "[p]otential Inter-company Novation and Netting Agreement claims" between Lehman Brothers Asia

36

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Holdings Limited ("LBAH") and Lehman Brothers International (Europe), (ii) "[c]ontingent/unliquidated claims asserted against LB Securities," (iii) "[c]ontingent/unliquidated claims asserted against LBAH," and (iv) "claims asserted against LBF," (page 28 of the Ad Hoc Group Disclosure Statement);

oo.     "the benefits to be gained by substantive consolidation as provided for under the Plan far outweigh any attendant risks or expenses as substantive consolidation would provide for the efficient administration and reorganization of Lehman Brothers' bankruptcy proceedings for the benefit of all creditors involved," (page 30 of the Ad Hoc Group Disclosure Statement);

pp.     "To the extent that the Lehman Entities are not substantively consolidated, and even under the [Proposed Ad Hoc Group Plan] in the absence of a settlement with certain of the Foreign Affiliates, many of these transactions may be subject to avoidance actions brought under chapter 5 of the Bankruptcy Code or recharacterization under general equitable principles," (pages 29-30 of the Ad Hoc Group Disclosure Statement);

qq.     "the Blanket Guarantees were issued to achieve favorable regulatory outcomes associated with intercompany dealings or to establish bases for separate credit ratings," "the Blanket Guarantees were maintained internally and their existence was rarely disclosed to third-party trading counterparties," and "substantial questions exist with respect to the enforceability of the Blanket Guarantees," (pages 31-32 of the Ad Hoc Group Disclosure Statement);

rr.     "the facts and circumstances associated with the creation of the Guarantee Resolutions make clear that the parties did not intend the Guarantee Resolutions to benefit Affiliates on account of intercompany transactions and therefore, the Affiliate Guarantee Claims based on Guarantee Resolutions should be disallowed," (page 32 of the Ad Hoc Group Disclosure Statement);

ss.     "it is unlikely that any third parties actually relied on such Guarantee Resolutions when extending credit to a Lehman Entity," (page 32 of the Ad Hoc Group Disclosure Statement);

tt.     "LBHI did not receive reasonably equivalent value in exchange for incurring any of the purported guarantee obligations," (page 32 of the Ad Hoc Group Disclosure Statement);

uu. "LBHI was insolvent when certain of the purported obligations were incurred," (page 32 of the Ad Hoc Group Disclosure Statement);

vv. "certain of the underlying transfers which purportedly triggered guarantee obligations occurred within the preference period," (page 32 of the Ad Hoc Group Disclosure Statement); and

ww. the Debtors did not realistically and fairly assess the risks and rewards attendant to active litigation of inter-Debtor disputes (page 36 of the Ad Hoc Group Disclosure Statement).

20. All Documents and Communications, other than the identified motion papers themselves, concerning the assertion that "[s]imilar ownership and entanglement issues have arisen in connection" with the following, as stated on pages 23-24 of the Ad Hoc Group Disclosure Statement, including:

a. the Motion of Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for Authority to Consent to Its Non-Debtor Affiliate Lehman ALI Inc. (I) Entering Into Commitment Letter with Innkeepers USA Trust; (II) Supporting the Chapter 11 Plan of Certain Affiliates of Innkeepers USA Trust; and (III) Participating in the Auction for Certain of the Assets or Equity of Innkeepers USA Trust, dated March 22, 2011 [Docket No. 15259];

b. the Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code for Approval of the Purchase of Notes Issued by Pine CCS, Ltd. from Barclays Bank PLC and the Termination of the Pine Securitization, dated March 23, 2011 [Docket No. 15283];

c. the Motion of Lehman Brothers Holdings Inc. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Make Additional Investments with Respect to 25 and 45 Broad Street, dated March 22, 2011 [Docket No. 15257];

d. Motion of LBHI Pursuant to Sections 105 and 363 of the Bankruptcy Code for Approval of Two Note Purchase Agreements with the Insolvency Administrator of Lehman Brothers Bankhaus AG (in Insolvenz) [Docket No. 14743];

e. the Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code for an Order (I) Allowing LCPI to Acquire Certain Loans Through a Joint Venture and (II) Authorizing LCPI and LBHI to

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

<div style="margin-left:3em">

Provide Gap Funding Through a Term Loan, Revolver, and Preferred Equity Investment [Docket No. 10647];

f.      State Street Bank and Trust Company v. Lehman Commercial Paper Inc. [Adv. P. No. 08-01743];

g.      the Motion of Lehman Brothers Holdings Inc. Pursuant to Section 363 of the Bankruptcy Code and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure for Authority to Amend Participation Agreements and to Purchase Additional Participation Interests Related to Heritage Fields Property [Docket No. 10523];

h.      LCPI's Motion Pursuant to Section 363 of the Bankruptcy Code for Authority to (I) Consent to Its Non-Debtor Affiliate Lehman ALI Inc. (A) Entry Into Plan Support Agreement Related to the Restructuring of Innkeepers USA Trust; and (B) Consummation of the Transactions Set Forth in the Plan Term Sheet; and (II) Provide Funds to Solar Finance Inc., a Non-Debtor Affiliate, to Provide Debtor-In-Possession Financing, dated July 27, 2010 [Docket No. 10465]; and

i.      the Debtors' Motion for Entry of an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Authorizing Lehman Commercial Paper Inc. to Settle Dispute with the Metropolitan Life Insurance Company, dated March 2, 2009 [Docket No. 2978].

</div>

21.     All Documents and Communications used in making, referenced in, or concerning the "Lehman Group Loops" chart on page 28 of the Ad Hoc Group Disclosure Statement.

22.     All Documents and Communications used in making, referenced in, or concerning the "Side-Letter Arrangements" chart on page 34 of the Ad Hoc Group Disclosure Statement.

23.     All Documents and Communications concerning the claim that there would be:

<div style="margin-left:3em">

a.      a "Recovery #1 – Primary Claim Against LBIE," as stated in the chart on page 34 of the Ad Hoc Group Disclosure Statement;

</div>

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

> b.    a "Recovery #2 – Transaction Guarantee Claim against LBHI," as stated in the chart on page 34 of the Ad Hoc Group Disclosure Statement;

> c.    a "Recovery #3 – Pass Through to Customer of Recoveries on Guarantee Resolution Claims asserted by LBIE against LBHI," as stated on the chart in page 34 of the Ad Hoc Group Disclosure Statement; and

> d.    a "Recovery #4 – Side Letter Arrangement Claim," as stated in the chart on page 34 of the Ad Hoc Group Disclosure Statement.

24.    All Documents and Communications concerning the claim that "the Consolidated Debtors will be able to make all payments required pursuant to the Plan and, therefore, after confirmation of the Plan they will be able to liquidate their assets and make Distributions as contemplated," as stated on page 87 of the Ad Hoc Group Disclosure Statement.

25.    For the period beginning on June 1, 2008 through September 15, 2008, all Documents and Communications concerning any requests to or from third parties for novations of trades with any Lehman Entity, or consideration of such novations.

**ADDITIONAL DOCUMENT REQUESTS FROM CREDITORS' COMMITTEE**

26.    All Documents and Communications concerning or that You considered, examined, relied upon or otherwise used in making[8] the following claims made in the Ad Hoc Group Disclosure Statement:

> a.    "[C]ounterparties apparently traded with Lehman Brothers with the expectation that all trades would be honored" (page 14 of the Ad Hoc Group Disclosure Statement);

> b.    "From the perspective of trading parties, commercial transactions such as the trading of equities, loans and bonds with an unregulated trading affiliate were not contemplated to be an extension of credit . . . or require a credit analysis" (page 14 of the Ad Hoc Group Disclosure Statement);

---

[8] Addition requested by the following members of Group 9:  LBSN Trustees, LBT Trustees, and PwC.

c.      "[A] credit risk analysis in respect to any particular Lehman subsidiary was unnecessary, particularly as substantially all of these obligations were purportedly guaranteed by LBHI" (page 14 of the Ad Hoc Group Disclosure Statement);

d.      "LBHI guaranteed its subsidiaries' obligations in almost every trade to assure the counterparty that its trades would execute and settle as contemplated by the governing ISDAs" (page 14 of the Ad Hoc Group Disclosure Statement);

e.      "[C]ounterparties engaging in trading activities were indifferent to the credit risk of any particular Lehman Entity" (page 14 of the Ad Hoc Group Disclosure Statement);

f.      "[C]ounterparties focused their due diligence on the creditworthiness of LBHI and relied on the credit mitigants negotiated in the ISDAs in the event LBHI's long-term credit rating was downgraded" (page 15 of the Ad Hoc Group Disclosure Statement);

g.      "Once the daily sweep occurred, such entities no longer had control or possession over their purported assets" (page 15 of the Ad Hoc Group Disclosure Statement);

h.      "To the extent counterparties entered into swap transactions with LBSF or other unregulated derivative subsidiaries, the counterparties were exclusively relying on the guarantee of LBHI, and not on the separate creditworthiness of that derivative subsidiary" (page 16 of the Ad Hoc Group Disclosure Statement);

i.      "[T]he Transfer Provisions gave Lehman Brothers the flexibility to shift books of derivative contracts from one Lehman Entity to another based on which entity was subject to jurisdiction with the most favorable legal, tax or regulatory requirements" (page 16 of the Ad Hoc Group Disclosure Statement);

j.      "Lehman Brothers negotiated for and received these Transfer Provisions because it was widely understood that the unregulated subsidiaries were merely booking sites and counterparties were generally unconcerned by such transfers, which could occur at any time without providing prior notice to the applicable counterparty or obtaining such counterparty's consent" (page 16 of the Ad Hoc Group Disclosure Statement);

k.      "Because Lehman Brothers operated as one integrated business entity, its operational strategies were driven by economic considerations of the Lehman Group as a whole, and not by economic considerations as they related to individual Lehman

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Entities on a standalone basis" (page 17 of the Ad Hoc Group
Disclosure Statement);

l.  "Standing alone, these unregulated entities [Lehman Brothers'
unregulated affiliates] had no real economic substance and no
ability to finance themselves or conduct business independently"
(page 18 of the Ad Hoc Group Disclosure Statement);

m.  "One trade could spawn multiple downstream intercompany
transactions among multiple legal entities as Lehman aimed to
balance the overall net trading position" (page 18 of the Ad Hoc
Group Disclosure Statement);

n.  "Depending on whether the trade rendered Lehman Brothers long
or short in its net position, a series of responsive intercompany
transactions would be implemented to balance Lehman Brothers'
overall trade position" (page 18 of the Ad Hoc Group Disclosure
Statement);

o.  "LBI or LBIE would borrow money from a repo counterparty to
settle its affiliates' purchase, and book an intercompany journal
entry to record the internal repo financing of this purchase" (page
20 of the Ad Hoc Group Disclosure Statement);

p.  "If secured financing was not available, LBHI would directly
finance the Lehman Entity with unsecured intercompany loans"
(page 20 of the Ad Hoc Group Disclosure Statement);

q.  "[I]n March 2008, Lehman Brothers engaged in a frantic rush to
finance its risky illiquid assets. . . . These intercompany
transactions had little economic substance and, in many cases,
were potentially designed to achieve a desired reporting result"
(page 20 of the Ad Hoc Group Disclosure Statement);

r.  "The Collateral Disposition Agreement, however, does not
alleviate concerns with unraveling the underlying intercompany
transactions that resulted in those assets being pledged because
underlying questions relating to ownership of those assets persist
among the estates of the Debtors and their Affiliates" (page 20 of
the Ad Hoc Group Disclosure Statement);

s.  "It was not Lehman's intention that the purchases and re-purchases
under the RASCALS process be cash settled.  Rather, payment and
repayment was intended to be achieved, in form by what might
'loosely [be] call[ed] book entries,' but in substance by a series of
successive offsets" (page 21 of the Ad Hoc Group Disclosure
Statement);

t.    "[I]n connection with the frantic desire to finance increasingly illiquid assets throughout 2007 and 2008 . . . the movement of assets and liabilities between individual Debtors was both so complicated and convoluted that, in the absence of substantive consolidation, significant and time-consuming judicial intervention will be needed to determine definitively which Debtor estate owns or has an interest in what assets and where material third-party and intercompany liabilities properly reside" (page 22 of the Ad Hoc Group Disclosure Statement);

u.    "LBHI and other operating subsidiaries committed their assets to support the underwriting of other entities' increasingly risky assets or positions.  This was done apparently without regard to the business prospects or financial soundness of any one particular entity, and any attempt to view such transactions on an estate-by-estate basis would lead to economic irrationalities and abnormalities" (page 24 of the Ad Hoc Group Disclosure Statement);

v.    "Because intercompany balances were routinely netted, any legal recognition of such balances would require an evaluation of tens if not hundreds of thousands of transactions, as well as the processes for their recordation" (page 26 of the Ad Hoc Group Disclosure Statement);

w.    "[T]he general ledger of each Lehman Entity is expected to contain thousands of non-ordinary course transactions that form the basis of the net balances presented" (page 26 of the Ad Hoc Group Disclosure Statement);

x.    "[T]he books and records may be infected with tens of billions of dollars of non arm's length and potentially fraudulent transactions" (page 26 of the Ad Hoc Group Disclosure Statement);

y.    "[Proposed Ad Hoc Group] Plan Proponents do not believe . . . that any party seeking such recharacterization can successfully recharacterize and pursue a deconsolidated plan of reorganization" (page 29 of the Ad Hoc Group Disclosure Statement);

z.    "[A] substantial number of transactions are subject to bona fide disputes with respect to, not only their economic substance, but also the equitable and legal effects on the various Lehman Entities involved in such transactions" (page 29 of the Ad Hoc Group Disclosure Statement);

    aa.    "[C]laims may exist under various prepetition inter-Debtor contracts that will not be reflected in the existing intercompany balances."  (page 30 of the Ad Hoc Group Disclosure Statement);

    bb.    "[C]laims under derivative contracts and repurchase agreements based on purported market values at that time are improperly valued and likely overstated" (page 35 of the Ad Hoc Group Disclosure Statement);

    cc.    "To give effect to [the] provisions included in the documents underlying the Subordinated Notes, all Distributions under the [Proposed Ad Hoc Group] Plan made by LBHI will be calculated as if each holder of an Allowed Subordinated Unsecured Claim based on a Subordinated Note were to receive its Pro Rata Share of a Distribution from LBHI" (page 51 of the Ad Hoc Group Disclosure Statement).

27.    All Documents and Communications concerning any assumptions or estimations that would be required to "treat each Lehman Entity as a distinct corporate entity." (page 25 of the Ad Hoc Group Disclosure Statement).

28.    Documents sufficient to identify all LBHI Class 1 Priority Non-Tax Claims, including Documents concerning "(a) any Claim, other than an Administrative Expense Claim or Priority Tax Claim, against a Consolidated Debtor entitled to priority in payment under section 507(a) of the Bankruptcy Code, (b) if LBT is substantively consolidated pursuant to Article VIII of the [Proposed Ad Hoc Group] Plan, Claims equivalent thereto asserted against LBT in its Foreign Proceeding … (c) if LBSN is substantively consolidated pursuant to Article VIII of the [Proposed Ad Hoc Group] Plan, Claims equivalent thereto asserted against LBSN in its Foreign Proceeding …, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to Article VII of the [Proposed Ad Hoc Group] Plan, Claims equivalent thereto asserted against such Designated Non-Debtor Affiliate in its Foreign Proceeding . . . ." (page 50 of the Ad Hoc Group Disclosure Statement).

DRAFT CONSOLIDATED DOCUMENT REQUESTS
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

29.    Documents sufficient to identify all Secured Claims against (i) LBT, (ii)

LBSN, and (iii) Designated Non-Debtor Affiliates in their respective Foreign Proceedings.  (page

50 of the Ad Hoc Group Disclosure Statement).

30.    All Documents and Communications concerning the method and process

by which the Plan Administrator will determine how to satisfy Class 2 Claims.  (page 50 of the

Ad Hoc Group Disclosure Statement).

31.    All Documents and Communications concerning the basis for classifying

Claims as LBHI Class 3 Senior Unsecured Claims.  (page 51 of the Ad Hoc Group Disclosure

Statement).

32.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 3 its Pro Rata Share of "the total Distribution that

would have been made to holders of Allowed Subordinated Class 5A Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 51 of the Ad Hoc Group Disclosure Statement).

33.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 3 its Pro Rata Share of "the total Distribution that

would have been made to holders of Allowed Subordinated Class 5B Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 51 of the Ad Hoc Group Disclosure Statement).

34.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 3 its Pro Rata Share of "the total Distribution that

would have been made to holders of Allowed Subordinated Class 5C Claims but for the

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 51 of the Ad Hoc Group Disclosure Statement).

35.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 3 its Pro Rata Share of "50% of each Aggregate LBSN

Guarantee Claims Distribution" if both Class 14B and Class 15B vote to accept the Proposed Ad

Hoc Group Plan.  (page 51 of the Ad Hoc Group Disclosure Statement).

36.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 3 its Pro Rata Share of  "50% of each Aggregate LBT

Guarantee Claims Distribution" if both Class 14A and Class 15A vote to accept the Proposed Ad

Hoc Group Plan.  (page 51 of the Ad Hoc Group Disclosure Statement).

37.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 4 its Pro Rata Share of "50% of each Aggregate LBSN

Guarantee Claims Distribution" if both Class 14B and Class 15B vote to accept the Proposed Ad

Hoc Group Plan.  (page 51 of the Ad Hoc Group Disclosure Statement).

38.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 4 its Pro Rata Share of  "50% of each Aggregate LBT

Guarantee Claims Distribution" if both Class 14A and Class 15A vote to accept the Proposed Ad

Hoc Group Plan.  (page 51 of the Ad Hoc Group Disclosure Statement).

39.    All Documents and Communications concerning the determination that

"[h]olders of Claims in Class 5A will not receive any Distributions on account of such Claims

and instead such Distributions will be allocated to the holders of Allowed Claims in Class 3 and

Class 10 accordance with Section 9.2 of the [Proposed Ad Hoc Group] Plan until all holders of

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Allowed Claims in such Classes are fully satisfied in the Allowed amount of such Claims."

(page 52 of the Ad Hoc Group Disclosure Statement).

40.     All Documents and Communications concerning the determination that

"[h]olders of Allowed Claims in Class 5B will not receive any Distributions on account of such

Claims and instead such Distributions will be allocated to the holders of Allowed Claims in

Class 3, Class 10, Class 12 and any Class in Classes 8A through 8n that votes to reject the

[Proposed Ad Hoc Group] Plan, accordance with Section 9.2 of the [Proposed Ad Hoc Group]

Plan until all holders of Allowed Claims in such Classes are fully satisfied in the Allowed

amount of such Claims."  (page 52 of the Ad Hoc Group Disclosure Statement).

41.     All Documents and Communications concerning the determination that

"[h]olders of Allowed Claims in Class 5c will not receive any Distributions on account of such

Claims and instead such Distributions will be allocated to the holders of Allowed Claims in

Class 3, Class 5A, Class 5B, Class 10, Class 12 and any Class in Classes 8A through 8n that

votes to reject the [Proposed Ad Hoc Group] Plan, accordance with Section 9.2 of the [Proposed

Ad Hoc Group] Plan until all holders of Allowed Claims in such Classes are fully satisfied in the

Allowed amount of such Claims."  (page 52 of the Ad Hoc Group Disclosure Statement).

42.     All Documents and Communications concerning the determination that

each holder of an Allowed Claim in Classes 6A though 6n will receive Distributions on 115% of

their Allowed Claim as consideration for the settlement of issues concerning substantive

consolidation and similar intercompany disputes.  (page 52 of the Ad Hoc Group Disclosure

Statement).

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

43.     All Documents and Communications concerning the basis for determining the Allowed amount of Claims in Classes 6A through 6n.  (page 53 of the Ad Hoc Group Disclosure Statement).

44.     Documents sufficient to identify the intercompany disputes with respect to Classes 6A through 6n.  (page 53 of the Ad Hoc Group Disclosure Statement).

45.     All Documents and Communications concerning the determination that each holder of an Allowed Claim in Classes 7A though 7n will receive Distributions on 25% of their Allowed Claim as consideration for voting to accept the Proposed Ad Hoc Group Plan. (page 53 of the Ad Hoc Group Disclosure Statement).

46.     All Documents and Communications concerning the basis for not subjecting Allowed Claims in Classes 7A through 7n that vote to accept the Proposed Ad Hoc Group Plan to further reduction as a consequence of substantive consolidation or Distributions received on account of a corresponding Primary Claim.  (page 53 of the Ad Hoc Group Disclosure Statement).

47.     All Documents and Communications concerning the basis on which the Ad Hoc Group and the Plan Administrator will object to any Claim in Classes 7A through 7n that vote to accept the Proposed Ad Hoc Group Plan on grounds other than substantive consolidation.  (page 53 of the Ad Hoc Group Disclosure Statement).

48.     All Documents and Communications concerning the Ad Hoc Group's or the Plan Administrator's determination that a holder of a Claim in Classes 7A through 7n has voted to accept the Proposed Ad Hoc Group Plan on grounds other than substantive consolidation.  (page 53 of the Ad Hoc Group Disclosure Statement).

DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS

49.      All Documents and Communications concerning the determination that a
"Third-Party Guarantee Claim for which a Non-Consolidated Affiliate is the Primary Obligor…
is entitled to a contractual right of priority in payment to Subordinated Class 5B Claims and
Subordinated Class 5C Claims, but not Subordinated Class 5A Claims." (page 53 of the Ad Hoc
Group Disclosure Statement).

50.      All Documents and Communications concerning the basis for providing
each holder of an Allowed Claim in Classes 8A through 8n its Pro Rata Share of "the total
Distribution that would have been made to holders of Allowed Subordinated Class 5B Claims
but for the reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc
Group] Plan." (page 53 of the Ad Hoc Group Disclosure Statement).

51.      All Documents and Communications concerning the basis for providing
each holder of an Allowed Claim in Classes 8A through 8n its Pro Rata Share of "the total
Distribution that would have been made to holders of Allowed Subordinated Class 5C Claims
but for the reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc
Group] Plan." (page 53 of the Ad Hoc Group Disclosure Statement).

52.      All Documents and Communications concerning the basis for not
permitting partial Distributions under the Proposed Ad Hoc Group Plan to holders of Claims in
Classes 8A through 8n. (page 54 of the Ad Hoc Group Disclosure Statement).

53.      All Documents and Communications concerning the process for
determining, with respect to Classes 8A through 8n, when each Debtor or Debtor-Controlled
Entity with a Claim against the applicable Primary Obligor has received all Distributions on
account of such Claim. (page 54 of the Ad Hoc Group Disclosure Statement).

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

54.    All Documents and Communications concerning the process for determining when a holder of an Allowed Claim in Classes 8A through 8n has established that it has received all Distributions it is entitled to receive on account of its Primary Claim and such Primary Claim has not otherwise received payment in full.  (page 54 of the Ad Hoc Group Disclosure Statement).

55.    All Documents and Communications concerning the determination that each holder of an Allowed Claim in Classes 8A though 8n will receive Distributions on 70% of their Allowed Claim as consideration for voting to accept the Proposed Ad Hoc Group Plan. (page 54 of the Ad Hoc Group Disclosure Statement).

56.    All Documents and Communications concerning the basis on which the Ad Hoc Group and the Plan Administrator will object to any Claim in Classes 8A through 8n that vote to accept the Proposed Ad Hoc Group Plan.  (page 54 of the Ad Hoc Group Disclosure Statement).

57.    All Documents and Communications concerning the process for determining, with respect to Classes 9A through 9n, when each Debtor and Debtor-Controlled Entity with a Claim against an applicable Primary Obligor has received all Distributions on account of such Claim.  (page 54 of the Ad Hoc Group Disclosure Statement).

58.    All Documents and Communications concerning the process for determining when a holder of a Claim in Classes 9A through 9n has received all Distributions it is entitled to receive on account of its Primary Claim and such Primary Claim has not otherwise received payment in full.  (page 54 of the Ad Hoc Group Disclosure Statement).

59.    All Documents and Communications concerning the determination to that holders of Allowed Claims in Classes 9A through 9n will receive Distributions on 70% of their

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Allowed Claim as consideration for voting to accept the Proposed Ad Hoc Group Plan. (page 54

of the Ad Hoc Group Disclosure Statement).

60.    All Documents and Communications concerning the basis on which the

Ad Hoc Group and the Plan Administrator will object to any Claim in Classes 9A through 9n

that vote to accept the Proposed Ad Hoc Group Plan. (pages 54-55 of the Ad Hoc Group

Disclosure Statement).

61.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 10 its Pro Rata Share of "total Distribution that would

have been made to holders of Allowed Subordinated Class 5A Claims but for the reallocation of

such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan." (page 55 of the

Ad Hoc Group Disclosure Statement).

62.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 10 its Pro Rata Share of the "total Distribution that

would have been made to holders of Allowed Subordinated Class 5B Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 55 of the Ad Hoc Group Disclosure Statement).

63.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 10 its Pro Rata Share of "the total Distribution that

would have been made to holders of Allowed Subordinated Class 5C Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 55 of the Ad Hoc Group Disclosure Statement).

64.    All Documents and Communications concerning LBHI Class 11 General

Non-Consolidated Intercompany Claims, including, but not limited to, "(a) any Intercompany

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Claim asserted by a Non-Consolidated Affiliate, other than a Senior Non-Consolidated

Intercompany Claim, Senior Non-Consolidated Affiliate Guarantee Claim or General Non-

Consolidated Affiliate Guarantee Claim, (b) if LBT is substantively consolidated pursuant to

Article VIII of the [Proposed Ad Hoc Group] Plan, Claims equivalent thereto asserted against

LBT in its Foreign Proceeding …, (c) if LBSN is substantively consolidated pursuant to Article

VIII of the [Proposed Ad Hoc Group] Plan, Claims equivalent thereto asserted against LBSN in

its Foreign Proceeding …, and (d) if a Designated Non-Debtor Affiliate is substantively

consolidated pursuant to Article VII of the [Proposed Ad Hoc Group] Plan, Claims equivalent

thereto asserted against such Designated Non-Debtor Affiliate in its Foreign Proceeding …."

(page 55 of the Ad Hoc Group Disclosure Statement).

      65.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 11, subject to Section 9.6 of the Proposed Ad Hoc

Group Plan, its Pro Rata Share of Plan Consideration.  (page 55 of the Ad Hoc Group Disclosure

Statement).

      66.    All Documents and Communications concerning the determination that

the Senior Non-Consolidated Affiliate Guarantee Claims in Class 12 have a contractual right of

priority in payment to Subordinated Class 5B Claims and Subordinated Class 5C Claims, but not

Subordinated Class 5A Claims.  (page 56 of the Ad Hoc Group Disclosure Statement).

      67.    All Documents and Communications concerning the basis for providing

each holder of an Allowed Claim in Class 12 its Pro Rata Share of "the total Distribution that

would have been made to holders of Allowed Subordinated Class 5B Claims but for the

reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan."

(page 56 of the Ad Hoc Group Disclosure Statement).

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

68.    All Documents and Communications concerning the basis for providing each holder of an Allowed Claim in Class 12 its Pro Rata Share of "the total Distribution that would have been made to holders of Allowed Subordinated Class 5C Claims but for the reallocation of such Distribution pursuant to Section 9.2 of the [Proposed Ad Hoc Group] Plan." (page 56 of the Ad Hoc Group Disclosure Statement).

69.    All Documents and Communications concerning the basis for providing each holder of an Allowed Claim in Class 13, subject to Section 9.6 of the Proposed Ad Hoc Group Plan, its Pro Rata Share of Plan Consideration.  (page 56 of the Ad Hoc Group Disclosure Statement).

70.    All Documents and Communications concerning the determination that the LBT Intercompany Claims be Allowed in an aggregate amount equal to \$33,170,000,000, if both Class 14A and Class 15A vote to accept the Proposed Ad Hoc Group Plan, including documents concerning the calculation of the \$33,170,000,000 allowed amount.  (page 56 of the Ad Hoc Group Disclosure Statement).

71.    All Documents and Communications concerning the determination that the LBSN Intercompany Claims be allowed in an aggregate amount equal to \$5,250,000,000, if both Class 14B and Class 15B vote to accept the Proposed Ad Hoc Group Plan, including documents concerning the calculation of the \$5,250,000,000, allowed amount.  (page 56 of the Ad Hoc Group Disclosure Statement).

72.    All Documents and Communications concerning the determination that holders of Allowed Claims in Class 15A will receive Distributions on 50% of their Allowed Claim if both Class 14A and Class 15A vote to accept the Proposed Ad Hoc Group Plan. (page 57 of the Ad Hoc Group Disclosure Statement).

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

73.     All Documents and Communications concerning the basis for not subjecting Allowed Claims in Class 15A to further reduction as a consequence of Distributions received on account of the corresponding Primary Claim.  (page 57 of the Ad Hoc Group Disclosure Statement).

74.     All Documents and Communications concerning the determination that holders of Allowed Claims in Class 15B will receive Distributions on 50% of their Allowed Claim if both Class 14B and Class 15B vote to accept the Proposed Ad Hoc Group Plan. (page 57 of the Ad Hoc Group Disclosure Statement).

75.     All Documents and Communications concerning the basis for not subjecting Allowed Claims in Class 15B to further reduction as a consequence of Distributions received on account of the corresponding Primary Claim.  (page 57 of the Ad Hoc Group Disclosure Statement).

76.     All Documents and Communications concerning the determination that "if a Class in Classes 16A through 16n and the corresponding Classes in each of Classes 17A through 17n and Classes 18A through 18n vote to accept the [Proposed Ad Hoc Group] Plan, the Claims in such Class and the Debtor Consolidated Claims against such holder shall be Allowed in an aggregate amount as agreed to by the [Ad Hoc Group] and the holder of the Allowed Claim in such Class, and such holder shall be entitled to receive its Pro Rata Share of Plan Consideration but solely to the extent the Consolidated Debtors receive distributions from the Designated Non-Debtor Affiliates on account of the Debtor Consolidated Claims without subordination, reduction or offset of any kind unless agreed to by the [Ad Hoc Group] or Plan Administrator, as applicable."  (page 57 of the Ad Hoc Group Disclosure Statement).

77.    All Documents and Communications concerning the determination that holders of an Allowed Claim in Classes 17A though 17n will receive Distributions on 70% of their Allowed Claim as consideration for voting to accept the Proposed Ad Hoc Group Plan. (pages 57-58 of the Ad Hoc Group Disclosure Statement).

78.    All Documents and Communications concerning the basis for not subjecting Allowed Claims in Classes 17A through 17n that vote to accept the Proposed Ad Hoc Group Plan to further reduction as a consequence of substantive consolidation or Distributions received on account of the corresponding Primary Claim.  (pages 57-58 of the Ad Hoc Group Disclosure Statement).

79.    All Documents and Communications concerning the basis on which the Ad Hoc Group and the Plan Administrator will object to any Claim in Classes 17A through 17n that vote to accept the Proposed Ad Hoc Group Plan on any grounds other than substantive consolidation.  (page 58 of the Ad Hoc Group Disclosure Statement).

80.    All Documents and Communications concerning the Ad Hoc Group's or the Plan Administrator's determination that a holder of a Claim in Classes 17A through 17n has voted to accept the Proposed Ad Hoc Group Plan on grounds other than substantive consolidation.  (page 58 of the Ad Hoc Group Disclosure Statement).

81.    All Documents and Communications concerning the determination that holders of an Allowed Claim in Classes 18A though 18n will receive Distributions on 70% of their Allowed Claim as consideration for voting to accept the Proposed Ad Hoc Group Plan. (page 58 of the Ad Hoc Group Disclosure Statement).

82.    All Documents and Communications concerning the basis for not subjecting Allowed Claims in Classes 18A through 18n that vote to accept the Proposed Ad Hoc

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Group Plan to further reduction as a consequence of substantive consolidation or Distributions

received on account of the corresponding Primary Claim.  (page 58 of the Ad Hoc Group

Disclosure Statement).

83.    All Documents and Communications concerning the basis on which the

Ad Hoc Group and the Plan Administrator will object to any Claim in Classes 18A through 18n

that vote to accept the Proposed Ad Hoc Group Plan on any grounds other than substantive

consolidation.  (page 58 of the Ad Hoc Group Disclosure Statement).

84.    All Documents and Communications concerning the Ad Hoc Group's or

the Plan Administrator's determination that a holder of a Claim in Classes 18A through 18n has

voted to accept the Proposed Ad Hoc Group Plan on grounds other than substantive

consolidation.  (page 58 of the Ad Hoc Group Disclosure Statement).

85.    All Documents and Communications concerning the rights, other than

voting rights, that will be appurtenant to the one new share of LBHI's common stock to be held

by the Plan Administrator for the benefit of the holders of Equity Interests in LBHI consistent

with their former economic entitlements.  (page 59 of the Ad Hoc Group Disclosure Statement).

86.    All Documents and Communications concerning the determination that "if

a Class in Classes 16A through 16n or the corresponding Class in Classes 17A through 17n or

Classes 18A through 18n votes to reject the [Proposed Ad Hoc Group] Plan, each Claim in the

such rejecting Class or Classes shall be deemed eliminated as a consequence of substantive

consolidation and such rejecting Class or Classes shall be deemed extinguished from the

[Proposed Ad Hoc Group] Plan."  (page 60 of the Ad Hoc Group Disclosure Statement).

87.    All Documents and Communications concerning the determination that "if

a Class in Classes 17A though 17n or Classes 18A through 18n votes to accept the [Proposed Ad

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Hoc Group] Plan but the corresponding Class in Classes 16A through 16n votes to reject the

[Proposed Ad Hoc Group] Plan, holders of Claims in such accepting Class shall be entitled to

receive the Distributions set forth in Section 4.21 or Section 4.22 of the [Proposed Ad Hoc

Group] Plan, as applicable, as a settlement notwithstanding substantive consolidation."  (page 60

of the Ad Hoc Group Disclosure Statement).

        88.    All Documents and Communications concerning the determination that "if

either Class 14A or Class 15A rejects the [Proposed Ad Hoc Group] Plan, each Claim in both

Class 14A and Class 15A shall be deemed eliminated as a consequence of substantive

consolidation and both Class 14A and Class 15A shall be deemed extinguished from the

[Proposed Ad Hoc Group] Plan." (page 60 of the Ad Hoc Group Disclosure Statement).

        89.    All Documents and Communications concerning the determination that "if

either Class 14B or Class 15B rejects the [Proposed Ad Hoc Group] Plan, each Claim in both

Class 14B and Class 15B shall be deemed eliminated as a consequence of substantive

consolidation and both Class 14B and Class 15B shall be deemed extinguished from the

[Proposed Ad Hoc Group] Plan." (page 60 of the Ad Hoc Group Disclosure Statement).

        90.    All Documents and Communications concerning the decision "to make

multiple types of New Securities available to holders of Allowed Claims and Equity Interests,

each such holder shall receive of each type of New Security its Pro Rata Share."  (page 65 of the

Ad Hoc Group Disclosure Statement).

        91.    All Documents and Communications concerning the determination that

"50% of the Aggregate LBT Guarantee Claims Distribution shall automatically be distributed to

holders of Allowed Claims in Class 3 and Class 4 in accordance with Section 4.18 of the

[Proposed Ad Hoc Group] Plan."  (page 69 of the Ad Hoc Group Disclosure Statement).

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

92.     All Documents and Communications concerning the determination that "50% of the Aggregate LBSN Guarantee Claims Distribution shall automatically be distributed to holders of Allowed Claims in Class 3 and Class 4 in accordance with Section 4.19 of the [Proposed Ad Hoc Group] Plan."  (page 69 of the Ad Hoc Group Disclosure Statement).

93.     All Documents and Communications concerning the determination that "[i]n the event a Distribution to a Foreign Affiliate . . . would affect the amount of Distributions the Consolidated Debtors receive from another Foreign Affiliate . . . as a consequence of such Paying Foreign Affiliate being a creditor of the Receiving Affiliate, the Consolidated Debtors may, but are not required to, reduce or net any Distribution to a Receiving Affiliate by the anticipated distribution the Paying Foreign Affiliate is due to receive from the Receiving Affiliate."  (page 71 of the Ad Hoc Group Disclosure Statement).

94.     All Documents and Communications concerning the Liquidation Analysis attached as Exhibit 5 to the Ad Hoc Group Disclosure Statement.

95.     All Documents and Communications concerning the Recovery Analysis attached as Exhibit 4 to the Ad Hoc Group Disclosure Statement.

96.     All Documents and Communications concerning the treatment of Claims related to RACERS under the Proposed Ad Hoc Group Plan.

**ADDITIONAL DOCUMENT REQUESTS FROM GROUP 3 PARTICIPANTS**

97.     All (a) board meeting minutes for LBIE and (b) resolutions passed by the board of directors of LBIE.[9]

98.     All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to board resolution.[10]

---

[9] Requested by the following members of Group 3:  CarVal, BdB, Diamondback Master Fund, Ltd. ("Diamondback"), and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

99.     All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[11]

100.     All Documents and Communications concerning the enforceability of guarantees by LBHI of obligations of LBIE on account of derivative transactions.[12]

101.     All Documents evidencing that creditors of LBIE had knowledge of a guarantee by LBHI of any obligation of LBIE when entering into derivative transactions.[13]

102.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to board resolution.[14]

103.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[15]

104.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to a guarantee agreement entered into in connection with a specific transaction.[16]

---

[10] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[11] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[12] Requested by the following members of Group 3:  CarVal, BdB, Elliott, and Diamondback.

[13] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[14] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[15] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[16] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

105.    All Documents concerning whether creditors that entered into derivative transactions with LBIE that were guaranteed by LBHI were express and/or intended beneficiaries of such guarantees.[17]

106.    All Documents and Communications concerning defenses that the Debtors have to the enforceability of guarantees by LBHI of derivative transactions where LBIE or another affiliate of LBHI was the primary obligor.[18]

107.    All Documents and Communications reviewed by or relied upon by the Ad Hoc Group in connection with any analysis of the validity and/or enforceability of any guarantee claim asserted against LBHI where LBIE or another affiliate of LBHI was the primary obligor.[19]

108.    All Documents and Communications concerning any request, or consideration whether to make a request, for the Debtors or their affiliates to provide a guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any Debtor or its affiliates.[20]

109.    All Documents and Communications concerning the length of time it may take for a final determination to be reached through litigation concerning the issue of whether the estates of the Debtors and their affiliates should be substantively consolidated.[21]

---

[17] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[18] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[19] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[20] Requested by the following members of Group 3:  Carval, BdB, Diamondback, and Elliott.

[21] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

110.    All Documents and Communications concerning the range of potential outcomes that may result from litigation over the substantive consolidation of the Debtors and their affiliates.[22]

111.    All Documents and Communications considering whether LBIE could be substantively consolidated with any of the Debtors or their affiliates.[23]

112.    All organizational charts concerning the Debtors and their affiliates.[24]

113.    All Documents concerning allegations by creditors of the Debtors or their affiliates that they relied on the corporate separateness of LBHI and its operating affiliates.[25]

114.    Documents sufficient to show business expenses (including but not limited to overhead, employee, management, accounting, taxes, cash management and other related expenses) paid for (i) by LBIE or (ii) by any of the Debtors or their affiliates on behalf of LBIE.[26]

115.    Documents sufficient to demonstrate that the Debtors and their affiliates maintained separate books and records.[27]

116.    All Documents and Communications concerning any inaccuracies contained in the books and records of the Debtors or their affiliates.[28]

---

[22] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[23] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[24] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[25] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[26] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[27] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[28] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

117.    Any and all Documents concerning the accounting of intercompany transactions and obligations of the Debtors and their affiliates.[29]

118.    All leases entered into by LBIE that were in effect at any time between January 1, 2007 and the present.[30]

119.    All tax returns filed by LBIE.[31]

120.    All Documents concerning the reliance of creditors who transacted business with LBIE on (a) the separate identity of LBIE from the Debtors and any of their affiliates or (b) the separate credit of LBIE from the Debtors and any of their affiliates.[32]

121.    All Documents and Communications concerning due diligence conducted by any creditors of the Debtors or any of their affiliates on the credit risk of the Debtors or any of their affiliates.[33]

122.    All Documents and Communications concerning whether affiliates of LBHI were responsible for any financial obligations of LBHI.[34]

123.    All Documents and Communications evidencing that any creditor was provided with and/or had access to LBIE's financial statements.[35]

---

[29] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[30] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[31] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[32] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[33] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[34] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[35] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

124.     Documents sufficient to show the net capital requirements under which

LBIE operated.[36]

125.     All Documents reviewed by or relied upon by the Ad Hoc Group in

connection with their analysis of the potential substantive consolidation of LBIE with LBHI or

any of its affiliates.[37]

126.     All Documents and Communications concerning the statement on page 38

of the Ad Hoc Group Disclosure Statement that "substantial grounds may exist that would permit

the Bankruptcy Court to substantively consolidate the Debtors and their Foreign affiliates if the

issue is litigated."[38]

127.     All Documents and Communications concerning the Ad Hoc Group's

solicitation of the views and/or recommendations of the Debtors or their affiliates, the Creditors'

Committee, or any creditor of the Debtors or their affiliates regarding the terms of the Proposed

Ad Hoc Group Plan.[39]

128.     All Documents and Communications concerning the views and/or

recommendations of the Debtors or their affiliates, the Creditors' Committee, or any creditor of

the Debtors or their affiliates regarding the Proposed Ad Hoc Group Plan, the Plan, or the

Proposed Non-Consolidation Plan.[40]

---

[36] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[37] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[38] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[39] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[40] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

129.    All Documents and Communications concerning negotiations between or among the Ad Hoc Group, the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates concerning the terms of the Proposed Ad Hoc Group Plan, the Plan, or the Proposed Non-Consolidation Plan.[41]

130.    All Documents and Communications concerning discussions between or among the Ad Hoc Group, the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates concerning the terms of the Proposed Ad Hoc Group Plan, the Plan, or the Proposed Non-Consolidation Plan.[42]

131.    All Documents and Communications concerning discussions between or among the Ad Hoc Group and "certain holders of material Claims against LBT, including related Guarantee Claims against LBHI" discussed on page 10 of the Ad Hoc Group Disclosure Statement.[43]

132.    All Documents and Communications concerning the efforts undertaken by the Debtors or their affiliates to solicit support or to solicit votes in support of any plan of reorganization in the Debtors' chapter 11 cases.[44]

133.    All Documents and Communications concerning the acceptance or rejection of the Proposed Ad Hoc Group Plan, the Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.[45]

---

[41] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[42] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[43] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[44] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[45] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

134.    All Documents and Communications concerning the estimated litigation cost savings to the Debtors' estates resulting from confirmation of the Proposed Ad Hoc Group Plan.[46]

135.    All Documents and Communications concerning the estimated time savings to the Debtors' estates resulting from confirmation of the Proposed Ad Hoc Group Plan.[47]

136.    All Documents and Communications concerning any additional expenses that would be incurred by the Debtors' estates in the event that the Proposed Ad Hoc Group Plan is not confirmed.[48]

137.    All Documents and Communications concerning the diminishment by the time value of money of any additional Distributions that may be received by creditors of the Debtors in the event that the Proposed Ad Hoc Group Plan is not confirmed.[49]

138.    All Documents and Communications concerning the proposed settlement treatment under the Proposed Ad Hoc Group Plan whereby if a class in Classes 18A through 18n of the Proposed Ad Hoc Group Plan votes to accept the plan, each holder of an allowed claim in such accepting class shall be entitled to receive its pro rata share of plan consideration, provided that such pro rata share shall be determined using an amount equal to 70% of such allowed claim.[50]

---

[46] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[47] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[48] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[49] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[50] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

139.    All Documents and Communications concerning the calculation of the

70% used in determining the amount of the allowed claims in Classes 18A through 18n if such

classes vote to approve the Proposed Ad Hoc Group Plan.[51]

140.    All Documents and Communications concerning the basis for the

settlement contained in the Proposed Ad Hoc Group Plan of claims in Classes 18A-18n (General

Designated Non-Debtor Affiliate Third Party Guarantee Claims).[52]

141.    All Documents and Communications concerning the costs and expenses of

liquidation that would be incurred by the Debtors' estates in a liquidation under chapter 7 of the

Bankruptcy Code, including but not limited to (i) the compensation that would be paid to a

chapter 7 trustee, as well as to counsel and other professionals retained by such trustee, (ii) asset

disposition expenses, (iii) litigation costs and (iv) unpaid expenses incurred by the Debtors in the

chapter 11 Cases.[53]

142.    All Documents and Communications concerning any discount on the

value of the Debtors' assets that would be incurred as a result of liquidating such assets in a

liquidation under chapter 7 of the Bankruptcy Code as opposed to through the Proposed Ad Hoc

Group Plan.[54]

---

[51] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[52] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[53] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[54] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

143.    All Documents and Communications concerning estimates and assumptions made in connection with the liquidation analysis contained in the Ad Hoc Group Disclosure Statement.[55]

144.    All Documents and Communications concerning the estimated recovery on claims in Classes 18A-18n (General Designated Non-Debtor Affiliate Third Party Guarantee Claims) in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code as set forth in the liquidation analysis attached to the Ad Hoc Group Disclosure Statement.[56]

145.    All Documents and Communications reviewed or relied upon by the Ad Hoc Group in calculating the estimated recovery on claims in Classes 18A-18n (General Designated Non-Debtor Affiliate Third Party Guarantee Claims) in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code as set forth in the liquidation analysis attached to the Ad Hoc Group Disclosure Statement.[57]

146.    All Documents reviewed by or relied upon by the Ad Hoc Group in creating the Lehman Group Loops chart on page 28 of the Ad Hoc Group Disclosure Statement.[58]

147.    All Documents and Communications concerning the statement on page 15 of the Ad Hoc Group Disclosure Statement that "counterparties entered into ISDAs with Lehman

---

[55] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[56] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[57] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[58] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

brothers as long as they were comfortable with the creditworthiness of LBHI and the Lehman

Entities as a consolidated business enterprise."[59]

148.    All Documents and Communications concerning the classification of

claims in Classes 18A-18n (General Designated Non-Debtor Affiliate Third Party Guarantee

Claims) as set forth in the recovery analysis attached to the Ad Hoc Group Disclosure

Statement.[60]

149.    All Documents and Communications concerning the estimated 13.6%

recovery on account of claims in Classes 18A-18n (General Designated Non-Debtor Affiliate

Third Party Guarantee Claims) as set forth in the recovery analysis attached to the Ad Hoc Group

Disclosure Statement.[61]

150.    All Documents and Communications reviewed by or relied upon by the

Ad Hoc Group in calculating the estimated 13.6% recovery on account of claims in Classes 18A-

18n (General Designated Non-Debtor Affiliate Third Party Guarantee Claims) as set forth in the

recovery analysis attached to the Ad Hoc Group Disclosure Statement.[62]

151.    All Documents and Communications concerning the Ad Hoc Group's

decision to amend the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers

Holdings Inc. and Certain of its affiliated Debtors Other than Merit, LLC, LB Somerset LLC and

---

[59] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[60] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[61] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[62] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

LB Preferred Somerset LLC, Proposed by the Ad Hoc Group of Lehman Brothers Creditors

dated December 15, 2010 (the "Original Proposed Ad Hoc Group Plan").[63]

152.    All Documents concerning Communications with the Debtors or their

affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates regarding

the amendment of the Original Proposed Ad Hoc Group Plan.[64]

153.    All Documents and Communications concerning the amendment of the

Original Proposed Ad Hoc Group Plan.[65]

154.    All Documents and Communications reviewed by or relied upon by the

Ad Hoc Group in connection with the amendment of the Original Proposed Ad Hoc Group

Plan.[66]

155.    For the Recovery Analysis included in the Ad Hoc Creditor Plan, please

provide for the Summary Comparison of Net Distributable Assets included in Exhibit 2 of the

Disclosure Statement, the following: components and source of Cash and Cash Equivalents;

components and source of Restricted Cash; for each type of Financial Instrument and Other

Inventory, including Real Estate, Loans, Principal Investments and Derivatives & Other

Contracts provide the amount of each security or financial asset comprising each type and the

valuation methodology and supporting analysis for the estimated liquidation value of each of the

assets; components of and valuation methodology for Intercompany Receivables; components of

---

[63] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[64] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[65] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[66] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

and valuation methodology for Equity Interests in Affiliates; components of Administrative

Expenses; and components of Recovery from Plan Adjustments.[67]

      156.    For the Recovery Analysis included in the Ad Hoc Creditor Plan, please

provide the Financial Model for each of the Debtors included in Exhibit 2 of the Disclosure

Statement. Please include the calculation and basis for Allowed Claims for each Debtor and the

calculation for each Plan Adjustment.[68]

      157.    For the Liquidation Analysis included in the Ad Hoc Creditor Plan, for the

Net Distributable Assets for each Debtor included in the Liquidation Analyses of Exhibit 3 of the

Disclosure Statement, please provide: components and source of Cash and Cash Equivalents;

components and source of Restricted Cash; for each type of Financial Instrument and Other

Inventory, including Real Estate, Loans, Principal Investments and Derivatives & Other

Contracts provide the amount of each security or financial asset comprising each type, and the

valuation methodology and supporting analysis for the estimated liquidation value of each of the

assets; components of and valuation methodology for Intercompany Receivables; components of

and valuation methodology for Equity Interests in Affiliates; components of Administrative

Expenses; and components of Recovery from Plan Adjustments.[69]

      158.    For the Liquidation Analysis included in the Ad Hoc Creditor Plan, please

provide the Financial Model for each of the Debtors included in the Liquidation Analysis in

Exhibit 3.[70]

---

[67] Requested by the following members of Group 3:  BdB and Elliott.

[68] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

[69] Requested by the following members of Group 3:  BdB and Elliott.

[70] Requested by the following members of Group 3:  Carval, BdB, and Elliott.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

## ADDITIONAL DOCUMENT REQUESTS
## FROM GROUP 3 & GROUP 9 PARTICIPANTS

159.    All Documents making any reference to any Lehman Entity's status as a separate legal entity, including but not limited to any prospectus relating to any LBHI bonds, any SEC filings or other Documents delivered to purchasers of LBHI publicly traded debt, and/or any LBHI Prospectus Supplement relating to LBHI bonds.[71]

160.    All Documents concerning any Ad Hoc Group member's transactions and/or dealings with any subsidiary of LBI, including but not limited to Documents referring to or otherwise noting such subsidiary's relationship to LBI.[72]

161.    All Documents concerning the actual or potential extension of credit by any Ad Hoc Group member to any Lehman entity, including but not limited to any analyses undertaken in connection with such actual or potential extension of credit.[73]

---

[71] Requested by the following members of Group 3: LB Holdings Intermediate 2 Limited (in administration), LB RE Financing No. 3 Limited (in administration), LB UK RE Holdings Limited (in administration), Lehman Brothers (Indonesia) Limited (in liquidation), Lehman Brothers (PTG) Limited (in administration), Lehman Brothers Europe Limited (in administration), Lehman Brothers Holdings PLC (in administration), Lehman Brothers Limited (in administration), Lehman Brothers UK Holdings Limited (in administration), and Mable Commercial Funding Limited (in administration) (collectively, the "UK Administration/Liquidation Companies") and BdB.

Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, Lehman Brothers International (Europe) (in administration) ("LBIE"), Monaco NPL (No. 1) Limited (in administration) ("Monaco"), Zestdew Limited (in administration) ("Zestdew"), Eldon Street (Cube) Limited (in liquidation) ("Eldon"), and Lehman Commercial Mortgage Conduit Limited (in administration) ("LCMC").

[72] Requested by the following members of Group 3: the UK Administration/Liquidation Companies and BdB.

Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

[73] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

162.    All Documents relating to the development of the Proposed Ad Hoc Group Plan, or the structure or any potential alternative structure of the Proposed Ad Hoc Group Plan.[74]

163.    All Documents relating to (i) the actual or potential strengths or weaknesses of the Proposed Ad Hoc Group Plan, (ii) the actual or potential perception of or response to any of the terms, strengths or weaknesses of the Proposed Ad Hoc Group Plan by a creditor or creditor constituency of the Debtors or by any other person or (iii) any argument or assertions that would or could be made in response to any criticism of the terms, strengths or weaknesses of the Proposed Ad Hoc Group Plan.[75]

164.    All Documents constituting or relating to any discussion, analysis, assessment, or review of the terms, strengths and weaknesses of the Plan, Proposed Ad Hoc Group Plan, and Proposed Non-Consolidation Plan.[76]

165.    All Documents concerning the underlying reasons, motivations, rationales, intentions, grounds, and bases for the Ad Hoc Group's decision to file the Proposed Ad Hoc Group Plan, any associated disclosure statements, or any amended version(s) of the Proposed Ad Hoc Group Plan.[77]

---

[74] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

[75] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

[76] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

[77] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

166.     All Documents concerning the underlying reasons, motivations, rationales, intentions, grounds, and bases for the Ad Hoc Group's selection of certain Lehman Entities as to which to seek substantive consolidation under the Proposed Ad Hoc Group Plan, including, but not limited to, the decision to seek to substantively consolidate any current or former LBI subsidiary and to not seek to substantively consolidate LBI.[78]

167.     All trading histories of any member of the Ad Hoc Group in Lehman equity or debt securities.[79]

168.     All Documents constituting or relating to any discussion, analysis, assessment of actual or potential recoveries actually or potentially available to any individual creditor or class of creditors of any Debtor under the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan.[80]

169.     All Documents concerning the valuation, allowance, or treatment of any claims under the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan, including but not limited to processes used to assess such claims, and how the proposed treatment of such claims has changed over time.[81]

170.     All Documents upon which the Ad Hoc Group intends to rely in connection with the confirmation hearing, including but not limited to all Documents that the Ad

---

[78] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

[79] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies and BdB. Requested by the following members of Group 9:  LBIE, Monaco, Zestdew, Eldon, LCMC, and PwC.

[80] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, BdB, and Elliott.  Requested by the following members of Group 9:  Monaco, Zestdew, Eldon, LCMC, and PwC.

[81] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, BdB, and Elliott.  Requested  by the following members of Group 9:  LBIE, Monaco, Zestdew, Eldon, LCMC, and PwC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Hoc Group relied on in determining, or will rely on in arguing, that the Proposed Ad Hoc Group

Plan should be confirmed.[82]

## ADDITIONAL DOCUMENT REQUESTS FROM GROUP 4 PARTICIPANTS

171.    All documents identified by the Ad Hoc Group evidencing a breakdown of

entity borders as between LBT and any other Lehman entity.

172.    All documents identified by the Ad Hoc Group concerning

misrepresentations by Lehman entities with respect to the corporate separateness of LBT and any

other Lehman entity.

## ADDITIONAL DOCUMENT REQUESTS FROM GROUP 6 PARTICIPANTS

173.    All Documents and Communications concerning the following for any

potential or realized Transaction between You and any of the Lehman Entities:  any Documents

received from the Lehman Entity in connection with Your decision whether or not to enter the

Transaction, including but not limited to any prospectus or prospectus supplement.

174.    All Documents supporting any and all assumptions made by You in

formulating the Liquidation Analysis in the Proposed Ad Hoc Group Plan, including without

limitation, Documents related to Your evaluation of the assumptions made by the Debtors in the

Debtors' liquidation analysis, and any adjustments to the Debtors' assumptions.  (Exhibit 3 to the

Ad Hoc Group Disclosure Statement).

175.    All Documents supporting any and all assumptions made by You in

calculating the estimated recovery amounts provided in the recovery analysis in the Ad Hoc

Group Disclosure Statement, including without limitation, the maximum and minimum

---

[82] Requested by the following members of Group 3:  the UK Administration/Liquidation Companies, Carval, BdB, and Elliott.  Requested by the following members of Group 9:  the LBSN Trustees, LBT Trustees, PwC, LBIE, Monaco, Zestdew, Eldon, and LCMC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

recoveries for classes in scenarios other than "All Classes Accept" and "All Classes Reject." (Exhibit 2 to the Ad Hoc Group Disclosure Statement)

176.   All Documents and Communications concerning the calculation or determination of the multipliers for the proposed settlement treatment under the Proposed Ad Hoc Group Plan.  (page 9 of the Ad Hoc Group Disclosure Statement, 3d column ("Pro rata share of Consolidated Debtors' assets based upon [multiplier] times Allowed Claim . . . ")).

**ADDITIONAL DOCUMENT REQUESTS FROM GROUP 9 PARTICIPANTS**

177.   All Documents and Communications concerning, referenced in, referred to, examined, relied upon, or otherwise used to prepare the Proposed Ad Hoc Group Plan and the Ad Hoc Group Disclosure Statement, including all Documents or Communications concerning the analyses contained in Sections II.A., II.B and V. C.3 of the Ad Hoc Group Disclosure Statement.[83]

178.   All Documents and Communications concerning the following topics, including documents or analysis [i] prepared by or for, or used internally by, You or the Ad Hoc Group or [ii] exchanged between, or circulated among, any one or more of, the Ad Hoc Group Members:

      a.   the SCA;

      b.   the enforceability of the SCA and/or any claims filed against LBHI based on the SCA.

---

[83] Requested by the following members of Group 9: LBSN Trustees, LBT Trustees, and PwC.

**DRAFT CONSOLIDATED DOCUMENT REQUESTS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

Dated:      June 14, 2011
            New York, New York

                                        /DRAFT_____
                                        Harvey R. Miller
                                        Irwin H. Warren
                                        Alfredo R. Pérez
                                        Randi W. Singer
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153-0119
                                        Telephone:     (212) 310-8000
                                        Facsimile:     (212) 310-8007

                                        *Attorneys for Debtors*

**EXHIBIT C**

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

**PURSUANT TO PARAGRAPH 5 OF THE ORDER**
**ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH**
**DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES,**
**DATED APRIL 14, 2011 [DOCKET NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

**DRAFT CONSOLIDATED SEARCH TERMS
TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

**Instruction:**  All English search terms should be translated into and run in the following languages: Dutch, French, and German.[1]

**NOTE:**  * is used to capture all forms of a word (e.g. deliver* = deliver, delivers, delivery etc.)

| "Lehman Entity Search Terms"^ = | Leh* |
|---|---|
| | LB* |
| | Neuberger |
| | LCPI |
| | 745 w/3 LLC |
| | PAMI |
| | CES w/3 aviation |
| | East w/3 Dover |
| | Lux* w/3 Res* |
| | BNC |
| | Rose w/3 Ranch |
| | Kalakaua |
| | Merit |
| | Somerset |
| | ARS* |
| | pass-through |
| | Bankhaus |
| | ALI* |
| | NB* |
| **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (CarVal; BdB; Diamondback; Elliott)[2]** | |
| | "International Europe" OR (intl w/3 Europe) |

^If You have used any acronym, code name or other designation/designated name for Lehman or any of its affiliates, please supplement the above-list of terms with any and all such term(s), and notify the Debtors of any such terms being added to the "Lehman Entity Search Terms."

PART I:  TERMS TO BE RUN WITH "LEHMAN ENTITY SEARCH TERMS"

| No. | Terms |
|---|---|
| 1. | Lehman Entity Search Terms AND (("risk appetite" or VaR or RA) w/20 (calculat* or analys* or analys* or estimat* or comput* or evaluat* or assess*)) |
| 2. | Lehman Entity Search Terms AND (bank OR depository OR wir*) |
| 3. | Lehman Entity Search Terms AND (CVA OR valu* w/5 adjust*) |

---

[1] Requested by certain members of Group 9 (Michiel Gorsira and Robert F. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities N.V., and Rutger J. Schimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V.).

[2] "CarVal" means CarVal Investors UK Limited; "BdB" means Bundesverband deutscher Banken e.V.; "Diamondback" means Diamondback Master Fund, Ltd.; "Elliott" means Elliott Associates, L.P.

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Terms |
|-----|-------|
| 4. | Lehman Entity Search Terms AND (employ* OR pay*) |
| 5. | Lehman Entity Search Terms AND (finance* OR solven*) |
| 6. | Lehman Entity Search Terms AND (formal* OR separate*) |
| 7. | Lehman Entity Search Terms AND (guaran* OR promise OR pledge OR oblig*) |
| 8. | Lehman Entity Search Terms AND (jump* w/3 def*) or JTD |
| 9. | Lehman Entity Search Terms AND (officer* OR director*) |
| 10. | Lehman Entity Search Terms AND (own* OR entangle* OR title) |
| 11. | Lehman Entity Search Terms AND (propert* OR asset* OR liability*) |
| 12. | Lehman Entity Search Terms AND (shar* OR  allocate*) AND (expense* or cost) |
| 13. | Lehman Entity Search Terms AND (single OR integr*) AND (glob* OR equity OR debt OR commod*) |
| 14. | Lehman Entity Search Terms AND (special w/5 purpose w/5 vehicle) OR SPV |
| 15. | Lehman Entity Search Terms AND affiliate* AND (distinct OR separ* OR seper*) |
| 16. | Lehman Entity Search Terms AND analy* OR review* OR estimat* OR assess* OR eval* OR (rate w/5 return) OR workout* OR restructur* OR forecast* |
| 17. | Lehman Entity Search Terms AND asset* AND own* |
| 18. | Lehman Entity Search Terms AND assump* w/5  (respons* OR oblig*) |
| 19. | Lehman Entity Search Terms AND avoid* AND cost* |
| 20. | Lehman Entity Search Terms AND blanket AND (guaran* OR gty) |
| 21. | Lehman Entity Search Terms AND business AND (one OR line OR operat*) |
| 22. | Lehman Entity Search Terms AND capital* |
| 23. | Lehman Entity Search Terms AND cash w/5 manag* |
| 24. | Lehman Entity Search Terms AND CDA |
| 25. | Lehman Entity Search Terms AND central* AND (cash OR manage*) |
| 26. | Lehman Entity Search Terms AND charge* w/3 off |
| 27. | Lehman Entity Search Terms AND claim AND (purchas* OR sell OR sale OR sold OR transf* OR contingent OR unliquid*) |
| 28. | Lehman Entity Search Terms AND comm* AND (invest* or min*) |
| 29. | Lehman Entity Search Terms AND corp* w/5 (seperat* OR separat*) |
| 30. | Lehman Entity Search Terms AND counterpart*  OR CP OR (counter* w/2 part*) |
| 31. | Lehman Entity Search Terms AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli*) |
| 32. | Lehman Entity Search Terms AND creditworth* |
| 33. | Lehman Entity Search Terms AND day-to-day OR DTD |
| 34. | Lehman Entity Search Terms AND default* |
| 35. | Lehman Entity Search Terms AND derivative* |
| 36. | Lehman Entity Search Terms AND domestic w/5 sub* |
| 37. | Lehman Entity Search Terms AND DRE OR (deriv* w/2 risk w/2 equiv*) |
| 38. | Lehman Entity Search Terms AND due w/5 diligence |
| 39. | Lehman Entity Search Terms AND enterp* |
| 40. | Lehman Entity Search Terms AND expos* w/5 (contingent OR future OR contract* OR peak OR average) |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Terms |
|-----|-------|
| 41. | Lehman Entity Search Terms AND fund* |
| 42. | Lehman Entity Search Terms AND guaran* OR gty |
| 43. | Lehman Entity Search Terms AND hedg* |
| 44. | Lehman Entity Search Terms AND hold* w/5 compan* w/5 structur* |
| 45. | Lehman Entity Search Terms AND insolv* |
| 46. | Lehman Entity Search Terms AND instruct* OR direct* OR polic* OR proced* OR protocol* OR practice* OR manual* |
| 47. | Lehman Entity Search Terms AND integrat* AND operat* |
| 48. | Lehman Entity Search Terms AND interco* |
| 49. | Lehman Entity Search Terms AND ISDA OR Master OR CSA |
| 50. | Lehman Entity Search Terms AND liquid* |
| 51. | Lehman Entity Search Terms AND master w/5 netting w/5 agree* |
| 52. | Lehman Entity Search Terms AND MTM or mark w/5 market |
| 53. | Lehman Entity Search Terms AND non-senior |
| 54. | Lehman Entity Search Terms AND office OR premise* |
| 55. | Lehman Entity Search Terms AND oper* w/10 entit* |
| 56. | Lehman Entity Search Terms AND part* w/5 con* |
| 57. | Lehman Entity Search Terms AND paymaster |
| 58. | Lehman Entity Search Terms AND PFE OR MFE |
| 59. | Lehman Entity Search Terms AND resolution |
| 60. | Lehman Entity Search Terms AND risk* w/10 (credit* OR counterpart* OR valu* OR default OR current OR credit OR peak OR basis* OR hedg*) |
| 61. | Lehman Entity Search Terms AND securit* AND (separate* OR balance OR possess*) |
| 62. | Lehman Entity Search Terms AND securit* AND statement* |
| 63. | Lehman Entity Search Terms AND senior OR unsecur* OR secur* |
| 64. | Lehman Entity Search Terms AND struct* w/10 (hold* OR comp*) |
| 65. | Lehman Entity Search Terms AND sub* w/5 (struct* OR contrac*) |
| 66. | Lehman Entity Search Terms AND support w/5 (implicit OR liquid*) |
| 67. | Lehman Entity Search Terms AND trad* AND (awar* OR know* OR unreg*) |
| 68. | Lehman Entity Search Terms AND transfer* |
| 69. | Lehman Entity Search Terms AND treasur* |
| 70. | Lehman Entity Search Terms AND uncollateral* or collateral* |
| 71. | Lehman Entity Search Terms AND valu* w/5 risk* |
| 72. | Lehman Entity Search Terms AND write w/3 down |

**ADDITIONAL SEARCH TERMS REQUESTED BY CERTAIN MEMBERS OF**
**GROUP 3 (UK Administration/Liquidation Companies[3]; BdB; DiamondBack; Elliott)**

---

[3] The UK Administration/Liquidation Companies that are Participants in Group 3 include LB Holdings Intermediate 2 Limited (in administration), LB RE Financing No. 3 Limited (in administration), LB UK RE Holdings Limited (in administration), Lehman Brothers (Indonesia) Limited (in liquidation), Lehman Brothers (PTG) Limited (in administration), Lehman Brothers Europe Limited (in administration), Lehman Brothers Holdings PLC (in administration), Lehman Brothers Limited (in administration), Lehman Brothers UK Holdings Limited (in administration), and Mable Commercial Funding Limited (in administration).

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Terms |
|-----|-------|
| 73. | [Lehman Entity Search Terms] w/45 (prospectus* OR bond* OR SEC)[4] |
| 74. | Lehman Entity Search Terms w/45 (credit* OR loan OR financ*)[5] |
| | **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (CarVal; BdB; DiamondBack; Elliott)** |
| 75. | ((credit OR risk) w/5 (risk OR rat* OR eval* OR review* OR worth*)) AND [Lehman Entity Search Terms] |
| 76. | (credit w/5 risk) AND [Lehman Entity Search Terms] |
| 77. | [Lehman Entity Search Terms] AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli* OR eval* OR worth* OR entit* OR unit OR company OR shell OR sub* OR affiliate) |
| 78. | [Lehman Entity Search Terms] AND (BOD OR Board) AND (guarant* OR gty) |
| | **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP SIX** |
| 79. | Lehman Entity Search Terms AND prospectus* |

PART II:  OTHER SEARCH TERMS

| No. | Search Terms |
|-----|--------------|
| 80. | (contingent OR unliquid*) AND ((Leh* w/5 Asia) OR LBAH) |
| 81. | (Novat*OR Net*) AND ((Leh* w/5 Asia) OR LBAH OR LBIE OR (Leh* w/5 Europe)) |
| 82. | commingl* |
| 83. | entangle* |
| 84. | inter-debtor |
| 85. | LBF AND claim |
| 86. | LBI AND (sale* OR trade*) |
| 87. | Leh* AND Expos* |
| 88. | Leh* AND recover* |
| 89. | Leh* w/5 CR01 |
| 90. | Leh* AND Foreign AND Affiliate* |
| 91. | recharacteriz* |

---

[4] Also requested by certain members of Group 9 (Lehman Brothers International (Europe) (in administration); Monaco NPL (No. 1) Limited (in administration); Zestdew Limited (in administration); Eldon Street (Cube) Limited (in liquidation); Lehman Commercial Mortgage Conduit Limited (in administration); Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG; Michiel Gorsira and Robert F. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities N.V; Rutger J. Schimmelpenninick and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V.).

[5] Also requested by certain members of Group 9 (Lehman Brothers International (Europe) (in administration); Monaco NPL (No. 1) Limited (in administration); Zestdew Limited (in administration); Eldon Street (Cube) Limited (in liquidation); Lehman Commercial Mortgage Conduit Limited (in administration); Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG).

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Search Terms |
|-----|--------------|
| 92. | rel* AND seperat* |
| 93. | no* w/5 (con* OR  non-con*) |
| 94. | non-debtor |
| 95. | substantive* w/10 (consolidat* OR subcon) |
| 96. | unreg* AND (LBI or LBIE) |
| 97. | Paolo OR Tonucci |
| 98. | Azerad |
| 99. | Echtermann |
| 100. | POR |
| 101. | plan* w/3 (reorg* OR liquid*) |
| 102. | plan* |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE** | |
| 103. | claim AND allow* AND subordinat* |
| 104. | (allocat* OR reallocate* OR re-allocat* OR allot* OR assign* OR apportion* OR shar*) w/s (claim OR distribut*) |
| 105. | distribut* w/p 115* |
| 106. | considerat* w/s vot* w/s plan |
| 107. | distribut* w/s (25* OR twenty-five) |
| 108. | "primary claim" |
| 109. | distribut* w/p reduc* w/p vot* |
| 110. | partial w/2 distribut* |
| 111. | considerat* w/s vot* w/s plan |
| 112. | distribut* w/s (70* OR seventy) |
| 113. | plan w/2 consideration |
| 114. | vot* w/s "common stock" |
| 115. | new w/2 securit* |
| 116. | foreign w/s affiliate* w/s consolidat* |
| 117. | liquidation w/5 analy* |
| 118. | recover* w/5 analy* |
| 119. | "RACERS" OR ("Restructured Asset" /2 "Enhanced Returns Series") |
| **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (CarVal; BdB; DiamondBack; Elliott)** | |
| 120. | ($1 or estimat* or settl* or agree*) /p (LBIE or "International Europe" or (intl w/3 Europe) or (Leh* w/5 Europe)) |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Search Terms |
|-----|--------------|
| 121. | (guarant* or gty) /p (enforc* or valid* or allow* or legal*) |
| 122. | (derivative or swap or CDS or ISDA or rep or repurchase or "Master Agreement" or future or forward or "securities contract") and (guarant* or gty) |
| 123. | ((inten* or express) w/5 benef*) and (guarant* or gty) |
| 124. | class* /p (guarant* or gty) |
| 125. | class* w/15 (3 OR 6 OR 7 OR 9 OR 18) |
| 126. | recover* w/10 analy* |
| 127. | (expens* w/20 (overhead OR employee OR management OR accounting OR tax* OR (cash w/3 management))) AND (conf* OR liquid* OR LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) |
| 128. | (LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) w/20 (financ* w/5 (statement OR stmt)) |
| 129. | (inaccura* OR mistake OR problem OR wrong OR error) w/10 (book OR record) |
| 130. | (net w/3 capital) AND (maintain OR require* OR min*) |
| | **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (CarVal; BdB; Elliott)** |
| 131. | .7 w/10 settl* |
| 132. | non-con* OR noncon* OR (non w/3 con*) |
| 133. | disclosure w/3 (statement OR stmt) OR DS |
| 134. | (Support* OR vot* OR accept* OR approv*) AND (plan OR POR OR "disclosure statement" OR DS) |
| 135. | "time value" |
| 136. | (12 OR 10.1 OR 13.6) w/10 recover* |
| 137. | (20 OR 70) w/20 (calc* OR determin* OR reallocat* OR adjust* OR redistribut* OR settl* OR turnover OR agree* OR (turn* /2 over)) |
| 138. | (priority w/5 (payment OR pmt)) AND liquid* |
| 139. | (exec* w/5 (contract OR K)) AND liquid* |
| 140. | analysis w/3 liquid* |
| 141. | subcon* OR sub-con* OR (sub* w/3 con*) |
| | **ADDITIONAL SEARCH TERMS**<br>**REQUESTED BY CERTAIN MEMBERS OF**<br>**GROUP 9 (Michael Gorsira and Robert F. van Beemen,**<br>**as bankruptcy co-trustees for Lehman Brothers Securities N.V.;**<br>**Rutger J. Schimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees** |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS**

| No. | Search Terms |
|-----|--------------|
| **for Lehman Brothers Treasury Co. B.V.; Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG)** | |
| 142. | substantive* w/10 consolidat* |
| 143. | subcon |

# EXHIBIT D

767 Fifth Avenue
New York, NY 10153
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

Alfredo R. Pérez
+1 212 310 8191
alfredo.perez@weil.com

June 14, 2011                                                                      BY E-MAIL

All Participants in Plan Discovery
First Amended Official Service List

Re: Lehman Plan Discovery – Consolidated APP Requests and Search Terms for the Non-Consolidation
    Plan Proponents

Dear Participant,

Pursuant to paragraph 5(d) of the *Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues*, dated April 14, 2011 [Docket No. 16003] (the "Order"),[1] the Debtors hereby serve the draft Consolidated APP Requests ("Consolidated Requests") and draft consolidated search terms for Alternative Plan Proponent, the Non-Consolidation Plan Proponents identified on Schedule A of the Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents, dated April 25, 2011 [Docket No. 16229].

In accordance with paragraph 5(e) of the Order, a meet and confer regarding the Draft Consolidated Requests shall take place at the offices of the Creditors' Committee counsel, Milbank, Tweed, Hadley & McCloy LLP, located at 1 Chase Manhattan Plaza, New York, NY 10005 on June 17, 2011 at 1:00 p.m. (EDT). Any Participant that believes the Debtors, in compiling the Consolidated Requests, eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly transcribed Group APP Requests must attend if you wish to have your objection heard and addressed. In addition, any Participant that plans to attend should send an email to LehmanPlanDiscovery@weil.com with the names of attendees by June 16, 2011, at 12:00 p.m (EDT), so that their names can be given to building security in advance of the meeting.

Sincerely,

Alfredo R. Pérez

---

[1] Capitalized terms not defined herein shall have the meaning attributed to them in the Order.

**EXHIBIT E**

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

**PURSUANT TO PARAGRAPH 5(D) OF THE ORDER ESTABLISHING SCHEDULE
AND PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN
CONFIRMATION AND OTHER ISSUES, DATED APRIL 14, 2011 [DKT. NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer


Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |


**CONSOLIDATED DOCUMENT REQUESTS TO THE NON-CONSOLIDATION
PLAN PROPONENTS PURSUANT TO BANKRUPTCY RULES 7026 AND 7034**

Pursuant to the Order Establishing Schedule and Procedures in Connection with

Discovery Related to Plan Confirmation and Other Issues, dated April 14, 2011 [Docket No.

16003] (the "<u>Order</u>"), Rules 26 and 34 of the Federal Rules of Civil Procedure (the "<u>Federal</u>

<u>Rules</u>") and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and certain of its affiliates[1]

---

[1] The Debtors in these jointly administered chapter 11 cases are Lehman Brothers Holdings Inc., Lehman
Commercial Paper Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc.,
Lehman Brothers Derivative Products Inc., Lehman Brothers Financial Products Inc., Lehman Brothers OTC
Derivatives Inc., Lehman Brothers Commercial Corporation, LB 745 LLC, PAMI Statler Arms, LLC, CES Aviation

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

(collectively the "<u>Debtors</u>"), serve these Consolidated Document Requests (the "<u>Requests</u>") to

Alternative Plan Proponent the Non-Consolidation Plan Proponents (as defined below), by and

through their counsel, and demand that the Non-Consolidation Plan Proponents provide written

responses and objections to the requests herein within twenty-one (21) days of service, in

accordance with the Order and Federal Rule 34(b).  The responses and objections shall be served

on the Official Service List as defined in the Order.

Pursuant to paragraph 5(j) of the Order, the Non-Consolidation Plan Proponents

shall produce documents in response to the Requests, bates-stamped and on a rolling basis, as

expeditiously as reasonably practical.  The document production(s) shall be delivered to the

Debtors in accordance with the specifications set forth in <u>Exhibit D</u> to the Order at the offices of

Weil, Gotshal, & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153,

Attention:  Randi W. Singer, Esq.

## I.       DEFINITIONS

1.       The definitions and rules of construction contained in Federal Rule 34 and

Rule 26.3 of the Local Rules of the Southern District of New York (as made applicable by Local

Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York) are

incorporated herein.

2.       "Non-Consolidation Plan Proponents" means the group of Non-

Consolidation Plan Proponents, which is currently comprised of Angelo, Gordon & Co., L.P.,

Contrarian Capital Management, LLC, Credit Agricole CIB, Credit Suisse International, Cyrus

Capital Partners, LP, D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios,

---

LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Lehman Scottish Finance L.P., Luxembourg Residential Properties Loan Finance S.a.r.1., BNC Mortgage LLC, LB Rose Ranch LLC, Structured Asset Securities Corporation, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC and LB Preferred Somerset LLC.

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

L.L.C., Deutsche Bank AG, Goldentree Asset Management, LP, Goldman Sachs Bank USA

(successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs International,

Hayman Capital Management, LP, Knighthead Capital Management, LLC, Mason Capital

Management LLC, Morgan Stanley & Co. International plc., Morgan Stanley Capital Services

Inc., Mount Kellett Capital Management, Oaktree Capital Management, L.P., The Royal Bank of

Scotland plc, Serengeti Asset Management LP, Silver Point Capital, L.P., State Street Bank and

Trust Company, and York Capital Management Global Advisors, LLC, but shall also include any

entities or persons that join the Non-Consolidation Plan Proponents in the future.  "Non-

Consolidation Plan Proponents" refers to the group as a whole, as well as to each and every one

of the individual entities.

3.    "Non-Consolidation Plan Proponents' Disclosure Statement" means the

Disclosure Statement for the Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its

Affiliated Debtors other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC

Proposed by Non-Consolidation Plan Proponents dated April 25, 2011 [Docket No. 16230] ), and

any other versions, whether filed or unfiled, including drafts except where such term is used as

part of a page or paragraph citation, in which case it refers to the filed April 25, 2011 version.[2]

4.    "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of the document request all documents that might otherwise

be construed to be outside its scope.

---

[2] Addition requested by the Group 1 Participants, excluding Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration), hereinafter referred to as the "Group 1 Requesting Participants."

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

5.      "Communicate" and "Communication(s)" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), regardless of the form or manner or embodiment of same (e.g., conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or other media).

6.      "Document" means each and every document within the meaning of Federal Rule 34, including, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither (e.g., all correspondence, data, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, computer print-outs, computer files, e-mail or other electronic or computer transmission, computer disks, tapes and records of all types, and any other writing, data form, compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form). The term shall include copies or drafts of documents which are not identical duplicates of the originals.

7.      "Creditor Reliance" refers to, in the broad sense, whether creditors dealt with certain entities as a single economic unit and did not rely on their separate identity in extending credit when doing business. *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

8.      "Entanglement" refers to, in the broad sense, whether the affairs of certain

entities are so intertwined and entangled that it would be extremely difficult if not impossible

without great cost and expenditure of time to untangle.  *See Union Sav. Bank v. Augie/Restivo*

*Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

9.      "Including" means including, without limitation, or in any way qualifying,

limiting, or restricting the foregoing.

10.     "Lehman Entities" refers collectively to the Debtors and each of their

direct and indirect subsidiaries and affiliates, including any special purpose vehicles established

or sponsored by any of them.  "Lehman Entity" refers to any individual or singular entity within

the Lehman Entities.

11.     "Plan" means the First Amended Joint Chapter Plan of Lehman Brothers

Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (including

as it may be further amended ), and any other versions, whether filed or unfiled, including

drafts.[3]

12.     The term "concerning" means relating to, referring to, describing,

evidencing, or constituting.

13.     The singular form of a word shall be construed to include the plural, and

the plural form of a word shall include the singular.

14.     "Proposed Ad Hoc Group Plan" means the Amended Joint Substantively

Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated

Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed

by the Ad Hoc Group of Lehman Brothers Creditors dated April 27, 2011 [Docket No. 16315]

---

[3] Addition requested by the Group 1 Requesting Participants.

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

(including as it may be further amended) ), and any other versions, whether filed or unfiled, including drafts.[4]

15.    "Proposed Non-Consolidation Plan" means the Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Non-Consolidation Plan Proponents dated April 25, 2011 [Docket No. 16229] (including as it may be further amended) ), and any other versions, whether filed or unfiled, including drafts.[5]

16.    "Transaction" means any business dealing, whether proposed, contemplated or entered into, including [i] making, or participating in, or purchasing an interest in a loan (secured or unsecured, guaranteed or not) with, [ii] purchasing any securities of or making any investment (equity or otherwise) in, [iii] entering into or participating in any real estate transaction or venture (including a mortgage) with, [iv] entering into or participating in any partnership, limited liability company, or joint venture with, [v] entering into or participating in any securitization transaction offered or sponsored by, [vi] purchasing any instrument sponsored or cosponsored or securitized by, [vii] obtaining a guarantee or other security from, [viii] purchasing or selling any goods or services to or from, and [ix] engaging in any other type of financing or business relationship with any entities.

17.    "Lehman's Treasury Team" means Paolo Tanucci, Robert Azerad, and HeidiMarie Echtermann.

18.    "You" and "your" means the Non-Consolidation Plan Proponents, including the Non-Consolidation Plan Proponents' and each of its individual members', and each

---

[4] Addition requested by the Group 1 Requesting Participants.

[5] Addition requested by the Group 1 Requesting Participants.

of its or their special purpose or other investment vehicles, current and former affiliates, parents,

subsidiaries, members, officers, directors, representatives, employees, agents, consultants,

accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other

person currently or formerly acting or purporting to act on behalf of the Non-Consolidation Plan

Proponents or its individual members for any purpose whatsoever.

19.     Reference to any entity including a corporation, limited liability company

or limited or general partnership, includes (a) any predecessor-in-interest, successor, division,

affiliate, or wholly- or partially-owned subsidiary of the entity specified, where applicable, and

(b) any officer, shareholder, director, partner, agent, member, representative, employee or other

person acting on behalf of the entity specified.

20.     All capitalized terms not otherwise herein defined shall have the same

meaning as set forth in the Proposed Non-Consolidation Plan.

## ADDITIONAL DEFINITIONS FROM THE CREDITORS' COMMITTEE[6]

21.     "Affiliate Guarantee Claim" means any Guarantee Claim asserted by an

Affiliate of LBHI other than a Senior Affiliate Guarantee Claim.

22.     "Allowed" means, with reference to any Claim against the Debtors,

(a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be

amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as

liquidated in amount and not disputed or contingent and for which no contrary proof of claim has

been filed, (b) any Claim allowed under the Proposed Non-Consolidation Plan, (c) any Claim

that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant

to the authority granted to the Debtors pursuant to a Final Order or under Section 9.4 of the

---

[6] "Creditors' Committee" refers to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings,
Inc., et al.

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

Proposed Non-Consolidation Plan, or (e) any Claim that, if Disputed, has been Allowed by Final

Order; *provided, however*, that Claims allowed solely for the purpose of voting to accept or

reject the Proposed Non-Consolidation Plan pursuant to an order of the Bankruptcy Court shall

not be considered "Allowed Claims" under the Proposed Non-Consolidation Plan; *provided*

*further*, *however*, that subject to Section 6.7 and 9.1 of the Proposed Non-Consolidation Plan,

except as otherwise provided by a Final Order, a Guarantee Claim (other than a LBHI Structured

Securities Claim) shall only be Allowed in an amount that is equal to or less than the Allowed

amount of the Primary Claim.  Unless otherwise specified in the Proposed Non-Consolidation

Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or

"Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from

and after the Commencement Date, provided, however, that interest on Allowed Claims against a

Debtor from and after the Commencement Date shall be included in "Allowed Claims" against

such Debtor that must be satisfied in full before any holder of Equity Interests in such Debtor

receives any share of any remaining assets (other than retaining such Equity Interests) of such

Debtor pursuant to Articles IV and V of the Proposed Non-Consolidation Plan, provided further,

however, that such interest from and after the Commencement Date shall be excluded from the

calculation of "Pro Rata Share" of such Allowed Claim unless and until all Allowed Claims

against the applicable Debtor have been satisfied in full.  For purposes of a Foreign Proceeding,

an Allowed Claim includes a Claim that has been accepted or allowed in a Foreign Proceeding

by settlement with a Foreign Administrator or Final Order.

    23.  "Cross-Border Protocol" means that certain Cross-Border Insolvency

Protocol for the Lehman Brothers Group of Companies dated as of May 12, 2009 approved by

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

the Bankruptcy Court by order dated June 17, 2009 [Docket No. 4020], as it may be amended, modified or supplemented from time to time.

24.    "Cross-Border Protocol Party" means a Non-Controlled Affiliate party to the Cross-Border Protocol, and any Affiliate controlled or managed by any such Non-Controlled Affiliate.

25.    "Debtor Allocation Agreement" means the agreement among two or more of the Debtors that identifies, allocates and sets forth other agreed rights and obligations with respect to (a) the costs and benefits of Jointly Owned Litigation Claims, (b) commonly held tax benefits and obligations, (c) expenses of administration of the Chapter 11 Cases, and (d) certain other inter-Debtor related issues.

26.    "Derivative Claim" means a Claim asserted by a third party that is not an Affiliate of the Debtors arising out of the termination or rejection of a Derivative Contract with a Debtor, but excluding a Derivative Guarantee Claim.

27.    "Derivative Claims Framework" means the methodology that shall be applied to calculate the Allowed amount of a Derivative Claim or Derivative Guarantee Claim against a Debtor for all purposes under the Plan, including, without limitation, voting and Distributions, in accordance with Section 6.6 of the Plan.

28.    "Director Selection Committee" means the committee established pursuant to Section 7.2(b) of the Proposed Non-Consolidation Plan.

29.    "Disputed" means, with reference to any Claim, (a) the portion of the Claim, proof of which was timely and properly filed, (i) that is disputed under the Proposed Non-Consolidation Plan, including without limitation, any Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim or Affiliate Guarantee Claim that is not Allowed

DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS

in accordance with Section 6.7 of the Proposed Non-Consolidation Plan or (ii) as to which the

Debtors have interposed a timely objection, which objection has not been withdrawn or

determined by a Final Order, or (b) the portion of a Claim, proof of which was required to be

filed by the Bar Date Order or another Final Order in a form and manner proscribed in such

order, but as to which a proof of Claim was not timely or properly filed.

      30.    "Domestic Operating Company" means each of LCPI, LBCS, LBSF,

LOTC, and LBCC.

      31.    "Domestic Operating Company Creditor Representative" means the

Primary Creditor Representative and, solely with respect to each Creditor Representative

Conflict, if any, the Additional Creditor Representative appointed with respect to such Creditor

Representative Conflict.

      32.    "Guarantee Claim" means a Claim asserted against LBHI on the basis of a

guarantee, promise or pledge by LBHI to satisfy an obligation or liability of another entity.

      33.    "Intercompany Claim" means (a) in the case of LBHI, any Claim against

LBHI asserted by an Affiliate of LBHI other than an Administrative Expense Claim, a Priority

Non-Tax Claim, a Secured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee

Claim, or an Affiliate Guarantee Claim or (b) in the case of a Subsidiary Debtor, any Claim

against such Subsidiary Debtor asserted by an Affiliate of a Subsidiary Debtor other than an

Administrative Expense Claim, a Priority Non-Tax Claim, or a Secured Claim.

      34.    "Intercompany Funding Balance" means that portion of LBHI's Claim

against a Subsidiary Debtor that relates to the funding of operations of such Subsidiary Debtor

but does not relate to specific transactions, such as Derivative Contracts or repurchase

agreements.

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

35.     "LBCC" means Lehman Brothers Commercial Corporation.

36.     "LBCS" means Lehman Brothers Commodities Services Inc.

37.     "LBSF" means Lehman Brothers Special Financing Inc.

38.     "LBSN" means Lehman Brothers Securities N.V.

39.     "LBT" means Lehman Brothers Treasury Co. B.V.

40.     "LCPI" means Lehman Commercial Paper Inc.

41.     "Legal Entity Controllers" means those individuals that Lehman assigned to each legal entity as part of its internal control system to monitor and periodically certify to the integrity of each entity's books and records.

42.     "Liquidating Trust" means a trust that may be created after the Effective Date in accordance with the provisions of Article X of the Proposed Non-Consolidation Plan.

43.     "LOTC" means Lehman Brothers OTC Derivatives Inc.

44.     "New Securities" means the securities that may be distributed by a Debtor or Debtor-Controlled Entity after the Effective Date to the holders of Allowed Claims against or Equity Interests in such Debtor representing an interest in an existing or newly formed entity of a Debtor or Debtor-Controlled Entity pursuant to and in a manner consistent with Section 15.2 of the Proposed Non-Consolidation Plan.

45.     "RACERS" collectively refers to the Restructured Asset and Enhanced Returns Series 2007-A Trust and the Restructured Asset Securities With Enhanced Returns Series 2007-7-MM Trust.

46.     "Reserve Agent" means, with respect to a Domestic Operating Company, the Domestic Operating Company Creditor Representative, and with respect to any other Debtor, such Debtor.

11

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

47.      "Senior Affiliate Guarantee Claim" means any Guarantee Claim asserted

by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to

Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated

Class 10A Claims.  For the avoidance of doubt, any Guarantee Claim asserted by LBT or LBSN

shall be classified as a Senior Affiliate Guarantee Claim under the Proposed Non-Consolidation

Plan.

48.      "Senior Intercompany Claim" means any Claim asserted by an Affiliate of

LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims,

other than a Senior Affiliate Guarantee Claim.  For the avoidance of doubt, any Claim asserted

by LBT or LBSN, other than a Senior Affiliate Guarantee Claim, shall be classified as a Senior

Intercompany Claim under the Proposed Non-Consolidation Plan.

49.      "Structured Securities" means (i) structured notes issued by LBT,

(ii) certificates and warrants issued by LBSN, (iii) structured notes issued by LBHI,

(iv) structured notes issued by Lehman Brothers Bankhaus AG, (v) structured securities issued

by Lehman Brothers (Luxembourg) Equity Finance S.A., and (vi) certificates issued by Lehman

Brothers Finance S.A.

50.      "Structured Securities Valuation Methodologies" means the

methodologies described in Exhibit A to the Proposed Non-Consolidation Plan, as it may

hereafter be supplemented or amended.

51.      "Subordinated Claim" means any Subordinated Class 10A Claim,

Subordinated Class 10B Claim or Subordinated Class 10C Claim.

**ADDITIONAL DEFINITION FROM GROUP 1 REQUESTING PARTICIPANTS**

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

52.    "Third Party" means any individual person or entity that does not fall

within the definition of "You," including without limitation the Lehman Entities and their

advisors and other representatives.

## II.    INSTRUCTIONS.

1.    You are required to search for and produce all documents responsive to

these Requests in Your possession, custody or control, including all documents possessed by any

proposed testifying experts that are subject to these Requests, except as provided in paragraph

3(j) of the Order.

2.    The use of electronic search terms supplied by the Debtors does not

obviate, alter, or alleviate the requirement for You to search for and produce all documents

responsive to these Requests in Your possession, custody or control, including all documents

possessed by any proposed testifying experts that are subject to these Requests, except as

provided in paragraph 3(j) of the Order.

3.    These Requests shall be deemed to be continuing so as to require further

and supplemental production in the event that additional responsive documents are discovered.

4.    In accordance with paragraph 11 of the Order, if You withhold any

Documents responsive to any of the Requests (except as provided in paragraphs 3(j) and 11(c) of

the Order) on the grounds of privilege, work product, or any other type of protection or immunity

from disclosure, You shall produce a privilege log, consistent with Federal Rule 26(b)(5), as

incorporated by Bankruptcy Rules 7026 and 9014, that contains the following fields:

    a.    Document identification;

    b.    the Document date;

    c.    for e-mails, the subject field of the e-mail;

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

      d.      for attachments to emails and Documents (other than prior e-mails in the e-document), the Document name;

      e.      the name of each person to whom the Document was sent, including those blind copied or shown as copied, and whether or not any of the recipients, senders, or other addressees are attorneys (yes/no); and

      f.      the custodian of the Document.

If privilege, work product, or any other type of protection or immunity is asserted as to only a part of a Document, then the remainder of the Document shall be produced.

      5.      If You object to any Request or part thereof, the objection shall be stated in accordance with the Bankruptcy Rules and the Federal Rules.

      6.      In accordance with paragraph 5(k) of the Order, Documents shall be produced in electronic form.  Upon a showing of good cause, Documents that are not reasonably conducive to being cost-effectively produced in electronic form may be produced by other means, as set forth in the Order.

      7.      Documents are to be organized and labeled to correspond with the categories of these Requests or produced as they are kept in the usual course of business.  Any Documents which must be removed from their original folders, binders, covers or containers (collectively, "Containers") in order to be produced shall be identified in a manner so as to clearly specify where such Documents originated and with a copy of any title or reference on the Containers.

      8.      Electronically stored Documents shall be produced in the electronic form set forth in Exhibit D to the Order:

      a.      *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and

shall not be separated from the emails to which they are attached. Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

b.    *Electronic Documents.*  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with <u>Appendix 1</u> to <u>Exhibit D</u> of the Order.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

c.    *Hard copy documents.*  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

d.    *TIFF Images Generally.*  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif"" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  For instances in which the original file is in color and the color is necessary for interpretation of the document (charts, pictures, etc.), produce medium quality JPEG in place of single page tiff file.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

e.    *Shipment of electronic data.*  Electronic data productions may be transmitted electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or physically transported using electronic storage media such as, CDs, DVDs or hard drives.  The physical media label should contain the case name and number, production date, and bates range being produced.  Each transmission of data should include a collection "manifest" report which provides a list of files collected, their location, and their MD5 hash values.

9.    If more than one copy of a Document responsive to a Request exists, each

non-identical copy of the Document shall be produced.

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

10.    No part of a Request shall be left unanswered or Documents not produced as called for therein merely because an objection (including as to privilege) is interposed to another part of the Request.

11.    These Requests are continuing in nature and You are obligated to provide any responsive Documents that come to Your attention subsequent to serving Your response to these Requests and/or producing any Documents, in accordance with Federal Rule 26(e).

12.    Unless otherwise stated, the period covered by these Requests is as follows:

> a.    With respect to any Transaction that remained live (i.e., one or both parties to the Transaction had continuing obligations) as of January 1, 2007, the period covered is the genesis of that Transaction to the present.
>
> b.    With respect to any potential or realized Transaction with any Lehman Entity, or any Transaction that You considered entering into with any Lehman Entities, but declined to do so, the period covered is January 1, 2007 to the present.

**ADDITIONAL INSTRUCTION FROM GROUP 3 PARTICIPANTS**

13.    Consistent with the time period set forth by the Debtors in *The Debtors' Preliminary Requests to the Debtors' Affiliates, Pursuant to Paragraph 6 of the Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues*, the period covered by all the Requests is January 1, 2005 to the present.[7]

---

[7] Requested by the following members of Group 3:  Bundesverband deutscher Banken e.V.

DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS

### III.    DOCUMENT REQUESTS

1.    All Documents and Communications concerning, referenced in, referred to, examined, relied upon, or otherwise used to prepare the Proposed Non-Consolidation Plan and the Non-Consolidation Plan Proponents' Disclosure Statement.

2.    All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally, by You or [ii] exchanged between, or circulated among, any one or more of, You and any third party:

      a.    LBHI's assumption of, or support for any, contractual obligations of any other Lehman Entity, including expressions or indications of, or any person's belief as to, LBHI's willingness or unwillingness or likelihood to stand behind or make good upon, in whole or in part, any obligations of any other Lehman Entity, regardless of whether any obligations were assumed;

      b.    the sharing of administrative expenses (including overhead, employee, management, accounting, taxes, cash management and other related expenses) by or among the Lehman Entities;

      c.    the existence of any formal or informal, written or oral intercompany guarantees, promises, agreements, understandings, undertaking of any obligations, or pledges by or among any of the Lehman Entities;

      d.    the transfer or sale of property, assets, or liabilities between and among any of the Lehman Entities;

      e.    the transfer of funds or intercompany balances between and among any of the Lehman Entities;

      f.    any Lehman Entities' employment of individuals and payments to employees;

      g.    capitalization of any of the Lehman Entities;

      h.    the ownership of property, assets, and liabilities by, between and among any Lehman Entities;

      i.    the existence of consolidated and unconsolidated financial statements for or among any Lehman Entities;

      j.    financial statements for any Lehman Entity other than LBHI;

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

  k.  the boards of directors, or any individual directors and/or officers, of any of the Lehman Entities;

  l.  the ownership, organizational structure, corporate governance, and method of business operation of any Lehman Entity;

  m.  the prepetition cash management system used by any of the Lehman Entities;

  n.  LBHI's or any other Lehman Entity's exercise of direct or indirect control over any other of the Lehman Entities, including whether or not any of the Lehman Entities were subject to direction from LBHI or any other Lehman Entity;

  o.  the office locations and premises of any of the Lehman Entities; and

  p.  without regard to date, for the first four Transactions of each type of Transaction that You [i] considered but did not enter into, and [ii] entered into with each Lehman Entity, all Documents and Communications concerning such Transactions and all of Your or any other Non-Consolidation Plan Proponents' policies, procedures, or standards for considering, reviewing, approving and entering into, or that were utilized, in any Transaction with any Lehman Entities, and any hedging or risk management policies and/or any due diligence reports or analysis, reports to or records of credit committees, investment committees or other loan or investment approval, or loan or investment review or monitoring, bodies of or for Your organization.

  3.  All Documents and Communications concerning whether You, or any other creditor of the Lehman Entities, dealt with any one or more of the Lehman Entities as a single economic unit in extending credit.

  4.  All Documents and Communications concerning the following, for any potential or realized Transaction between You and any of the Lehman Entities:

  a.  any internal instructions, directions, policies, procedures, protocols, practices, manuals, other method of business practices or any changes thereto relating to (i) Your relationship, or any of Your Transactions, with the Lehman Entities; and (ii) due diligence for and monitoring of; (iii) any contingency planning/risk analyses or risk management; (iv) Your reserves; (v) any charge-offs; (vi) any mark-to-market valuations; (vii) any write-downs;

and (viii) any workouts, plans, analyses, restructuring, or forecasting as to any such Transactions;

b.    Your decision whether or not to enter into any such Transaction with one or more of the Lehman Entities;

c.    any credit committee, investment committee, or other group (or members thereof) charged with proposal of, review, approval, or monitoring of such Transactions; and

d.    actual or potential recovery or rate of return for such Transactions.

5.    Subject to the restriction in Paragraph 3(j) of the Order, all Document and Communications between and among You and any restructuring advisor, financial consultant or other consultant hired by, or that performed work for or advised, You concerning (i) substantive consolidation, including Entanglement and Creditor Reliance, or (ii) the Proposed Ad Hoc Group Plan, the Proposed Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.

6.    All Documents and Communications concerning any efforts undertaken by You to solicit support or to solicit votes in support of the Proposed Non-Consolidation Plan.

7.    All Documents and Communications, including those exchanged with third parties, concerning any efforts by You or any Non Consolidation Plan Proponent to solicit support against or to solicit votes against the Plan or Proposed Ad Hoc Group Plan.

8.    All Documents and Communications concerning any claims against, or interests in, the Debtors that You or any Non-Consolidation Plan Proponent own or owned, including their value, when acquired, the amounts paid therefor, and any sales or dispositions thereof.

9.    All Documents and Communications concerning credit ratings, credit evaluations, or credit or risk reviews related to any Lehman Entity, including (a) credit reports of any one or more of the Lehman Entities or any security or other instrument issued by the

DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS

Lehman Entities, and (b) any periodic or special credit reviews for purposes of establishing

trading and/or transaction procedures between You and any Lehman Entity.

      10.    All Documents and Communications prepared, sent, reviewed or received

by You concerning the financial status, solvency, or health of any of the Lehman Entities from

January 1, 2007 to the present.

      11.    All Documents and Communications concerning the following:

      a.    any formal or informal, written or oral, promise, guarantee, agreement, understanding, undertaking of any obligation, or pledge of LBHI to satisfy an obligation or liability of any other entity, including with respect to asset values, collection, net worth or similar agreements, regardless of whether the purported guarantee, promise or pledge concerns any instrument, obligation, or claim You now or previously held;

      b.    any request, or consideration whether to make a request, by You for LBHI to provide such a guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction; and

      c.    the enforceability of any such guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction.

      12.    All Documents and Communications concerning any analysis, study,

valuation done by or for You of any actual or potential purchase, sale, or transfer of a claim

against any of the Lehman Entities, including all Documents and Communications with or

concerning the original or prospective claimant or counterparty or its relationship with any of the

Lehman Entities.

      13.    All Documents and Communications concerning any interviews of any

person concerning the conduct of the Lehman Entities prior to September 15, 2008, that were

conducted by or on behalf of You or of which You are aware.

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

14.    All Documents and Communications concerning the intercompany balances or intercompany transactions, including as reflected in the publicly-filed statements of the Lehman Entities.

15.    All Documents and Communications between You and any member of Lehman's Treasury Team regarding any Transaction that You considered or entered into with any Lehman Entity.

16.    All Documents and Communications concerning the internal controls, policies, protocols, practice, organization and maintenance of the books and records of the Lehman Entities.

17.    All Documents and Communications concerning whether the creditors of LBHI's operating subsidiaries dealt with the Lehman Entities as separate entities, or relied on the separateness of the operating subsidiaries from LBHI, including any public filings or other Documents in which operating subsidiaries discuss their relationship to LBHI.

18.    All Documents and Communications concerning whether or not creditors of LBHI's operating subsidiaries, other than LBI, relied on the separateness of the operating subsidiaries, including any public filings or other Documents in which operating subsidiaries, other than LBI, disclosed to their creditors separateness from LBHI.

19.    All Documents and Communications concerning whether or not creditors of LBIE relied on the separateness of LBIE from LBHI, LBI, and any other Lehman Entities.

20.    All Documents and Communications dated on or after June 1, 2008 concerning any claims against, or interests in, the Debtors that are or were owned You, including their value, when acquired, the amounts paid therefor, and any sales or dispositions thereof.

**DRAFT CONSOLIDATION REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

21.      Any public filings or other Documents prepared by or for the Lehman

Entities, other than LBT, in which such entities represented to their creditors and investors that

such entities would be treated as a legal entity separate from LBHI or any other Lehman Entity.

22.      All Documents and Communications concerning whether the Lehman

Entities represented to their creditors and investors that any claims held by those creditors and

investors against such entities would be separate from any claims held by those creditors and

investors against LBHI as a guarantor of the underlying obligations.

23.      All Documents and Communications concerning securities issuances by

the Lehman Entities in connection with which creditors were provided with separate financial

statements for any Lehman Entity.

24.      All Documents and Communications concerning the following claims

made in the Non-Consolidation Plan Proponents Disclosure Statement:

      a.      "the Debtors' Plan . . . provides recoveries to LBHI bond holders that exceed not only what they are legally entitled to receive but also are greater than even what they would receive if domestic substantive consolidation were justified" (page 1 of the Non-Consolidation Plan Proponents Disclosure Statement);

      b.      "LBHI bond holders . . . had no reasonable basis to rely on other Lehman entities' assets" (page 1 of the Non-Consolidation Plan Proponents Disclosure Statement);

      c.      "LBHI's affiliates operated distinctly from the holding company" (page 1 of the Non-Consolidation Plan Proponents Disclosure Statement);

      d.      "LBHI's affiliates . . .  maintained – and continue to maintain – clear and separate records" (page 1 of the Non-Consolidation Plan Proponents Disclosure Statement);

      e.      "the economic effect of this so-called 'Plan Adjustment' is an even greater redistribution of recoveries from Domestic Operating Company Creditors and foreign non-Debtor Affiliates to certain LBHI creditors than a domestic substantive consolidation plan

would effect" (page 6 of the Non-Consolidation Plan Proponents Disclosure Statement);

f.    "the redistribution scheme in the Debtors' Plan benefits certain LBHI creditors more than a domestic substantive consolidation plan would benefit them" (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement);

g.    "a large portion of the transfers underlying the intercompany claims held by LBHI against the Domestic Operating Subsidiaries, and in particular a significant portion of the $25 billion claim held by LBHI against LBSF, should be recharacterized as equity contributions rather than debt" (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement);

h.    "certain of the Domestic Operating Companies are currently bearing a share of the administrative costs that is disproportionate to the amount of work actually completed on behalf of those Domestic Operating Companies and to the benefit that those Domestic Operating Companies are receiving, and have been bearing such costs since the commencement of these cases" (page 8 of the Non-Consolidation Plan Proponents Disclosure Statement);

i.    "LBHI specifically disclosed to its creditors LBHI's separateness from its operating subsidiaries in numerous public SEC filings delivered to purchasers of publicly traded debt," (page 10 of the Non-Consolidation Plan Proponents Disclosure Statement);

j.    "public proclamations of corporate separateness were also widespread for Lehman Brothers Inc." (page 11 of the Non-Consolidation Plan Proponents Disclosure Statement);

k.    "creditors were provided with organizational charts identifying the legally separate entities and their relationships within the LBHI structure" (page 11 of the Non-Consolidation Plan Proponents Disclosure Statement);

l.    "LBT, an entity organized in the Netherlands to issue structured notes that were unconditionally guaranteed by LBHI, and other Lehman Affiliates represented to investors in various disclosure documents (which included separate financial statement for LBT) that LBT would be treated as a legal entity separate from LBHI and other Affiliates and that they would have separate claims against LBT as issuer of the notes and LBHI as a guarantor of those notes" (page 11 of the Non-Consolidation Plan Proponents Disclosure Statement);

DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS

m.      "prior to bankruptcy, the Debtors' financial statements – which
        included the unconsolidated balance sheets of LBHI, the
        unconsolidated balance sheets of LBI, and the combined balance
        sheets of all other direct and indirect subsidiaries of LBHI –
        provided a clear accounting of intercompany payables and
        receivables, showing both amounts due to and from subsidiaries
        and affiliates" (page 11 of the Non-Consolidation Plan Proponents
        Disclosure Statement);

n.      "since filing for bankruptcy, the Debtors have continued to provide
        a separate accounting of each affiliate's assets and liabilities in
        monthly operating reports, and have filed separate schedules,
        listing each in a clear accounting of intercompany payables and
        receivables" (page 11 of the Non-Consolidation Plan Proponents
        Disclosure Statement);

o.      "the Filing Debtors' fundamental contention that everybody
        employed by a Lehman entity treated all of Lehman affiliates as
        one legal entity is demonstrably untrue" (page 12 of the Non-
        Consolidation Plan Proponents Disclosure Statement);

p.      "as an enterprise, Lehman's business activities were organized to
        ensure that certain of its businesses were conducted by separate
        and discrete legal entities not subject to the capital rules applicable
        to its broker-dealers" (page 12 of the Non-Consolidation Plan
        Proponents Disclosure Statement);

q.      "Lehman maintained elaborate legal, accounting and compliance
        groups that were required to police this corporate separateness"
        (page 12 of the Non-Consolidation Plan Proponents Disclosure
        Statement);

r.      "there is no question that by substantively consolidating LBHI and
        the Domestic Operating Companies, the recoveries for the latter's
        creditors would be substantially diminished and likely also
        substantially delayed" (page 13 of the Non-Consolidation Plan
        Proponents Disclosure Statement);

s.      "the Domestic Operating Company Creditors . . . specifically relied
        on that separateness by executing transactions with the Domestic
        Operating Companies, purposefully negotiating agreements with
        those companies – the more asset-rich entities – while obtaining
        separate guarantees from LBHI" (page 13 of the Non-
        Consolidation Plan Proponents Disclosure Statement);

t.      "entities that purchased notes issued by LBT have a claim against
        LBT in respect of such notes and a separate claim against LBHI as

24

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

the guarantor of such notes" (page 13 of the Non-Consolidation Plan Proponents Disclosure Statement);

u.    "substantive consolidation would deny holders of the LBT notes the benefit of their contractual bargain" (page 13 of the Non-Consolidation Plan Proponents Disclosure Statement); and

v.    "creditors of certain foreign non-Debtor affiliates of LBHI, like creditors of the Domestic Operating Companies, in many instances had ample reason to rely upon representations regarding the corporate separateness of LBHI and its affiliates contained in the documentation governing the securities that they purchased" (page 13 of the Non-Consolidation Plan Proponents Disclosure Statement).

25.    Any public filings other than those identified on page 10 of the Non-Consolidation Plan Proponents Disclosure Statement.

26.    All Documents and Communications concerning the Liquidation Analysis attached as Exhibit 5 to the Non-Consolidation Plan Proponents Disclosure Statement.

27.    All Documents and Communications concerning the Recovery Analysis attached as Exhibit 4 to the Non-Consolidation Plan Proponents Disclosure Statement.

28.    For the period beginning on June 1, 2008 through September 15, 2008, all Documents and Communications concerning any requests to or from third parties for novations of trades with any Lehman Entity, or consideration of such novations.

**ADDITIONAL DOCUMENT REQUESTS FROM THE CREDITORS' COMMITTEE**

29.    All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally, by You, or [ii] exchanged between, or circulated among, any one or more of You and any third party":

a.    the role of the Legal Entity Controllers.

30.    All Documents and Communications concerning the following claims made in the Non-Consolidation Plan Proponents Disclosure Statement:

DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS

a. "the Debtors' Plan is unconfirmable and subject to numerous legal and equitable defects" (page 4 of the Non-Consolidation Plan Proponents Disclosure Statement);

b. "the Ad Hoc Group Plan is also unconfirmable for numerous reasons, most notably because it is premised on the substantive consolidation of the Debtors for which there is no basis" (page 4 of the Non-Consolidation Plan Proponents Disclosure Statement);

c. "Under the Debtors' Plan, LBHI, as 'Plan Administrator,' is tasked with administering the claims process, including administering intercompany claims held by LBHI itself against the Domestic Operating Companies, and vice versa, creating an inherent conflict of interest. The appointment of a fiduciary to the Domestic Operating Company [c]reditors cures this conflict of interest by ensuring that the interests of Domestic Operating Companies and their creditors are adequately represented in the claims administration process" (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement);

d. "[The Proposed Ad Hoc Group Plan is] nothing more than an attempt to favor creditors of LBHI at the expense of a diminished recovery for the creditors of certain of the Debtors' operating companies and foreign non-Debtor Affiliates" (page 9 of the Non-Consolidation Plan Proponents Disclosure Statement); and

e. "There is no legal or equitable basis whatsoever for ignoring the separate business and legal character of the Domestic Operating Companies" (page 9 of the Non-Consolidation Plan Proponents Disclosure Statement).

31.    All Documents and Communications concerning the elimination of "the … redistribution from the Domestic Operating Company Creditors and other creditors holding guarantee claims against LBHI to LBHI Classes 3, 6, and 7…." (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement).

32.    All Documents and Communication concerning the decision to "not include [in the Proposed Non-Consolidation Plan] any provisions relating to the Derivative Claims Framework." (page 8 of the Non-Consolidation Plan Proponents Disclosure Statement).

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

33.     All Documents and Communications concerning the proposal that the "valuation of derivatives positions will take place as part of a claims reconciliation process separate and apart from the negotiation of a fair plan." (page 8 of the Non-Consolidation Plan Proponents Disclosure Statement).

34.     All Documents and Communications concerning the treatment of Claims related to RACERS under the Proposed Non-Consolidation Plan.

35.     All Documents and Communications concerning the removal of "the Filing Debtors' proposed automatic reduction by 20% of the Intercompany Funding Balance." (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement).

36.     All Documents and Communications concerning the classification and treatment of Intercompany Claims in the Proposed Non-Consolidation Plan. (page 7 of the Non-Consolidation Plan Proponents Disclosure Statement).

37.     All Documents and Communications concerning the proposed classification of the Intercompany Claims asserted by LBT and LBSN against LBHI as Senior Intercompany Claims.

38.     All Documents and Communications concerning the recognition, classification and allowance of the Affiliate Guarantee Claims asserted by LBT and LBSN against LBHI.

39.     All Documents and Communications concerning the Debtor Allocation Agreement, including, but not limited to, the proposed allocation to LBHI of fifty percent (50%) of all costs associated with the review and analysis of Derivative Claims against each Domestic Operating Company. (page 72 of the Non-Consolidation Plan Proponents Disclosure Statement).

**DRAFT CONSOLIDATED REQUESTS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

40.      All Documents and Communications concerning the decision "to give effect to agreements of holders of Subordinated Claims" and redistribute Subordinated Claims recoveries to holders of Allowed Claims in LBHI Classes 3, 4A, 4B, 5A and 5B. (page 72 of the Non-Consolidation Plan Proponents Disclosure Statement).

41.      All Documents and Communications concerning the decision that "[e]ach holder of a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim, or Affiliate Guarantee Claim against a Debtor shall have an Allowed Claim, as applicable, against that Debtor in an amount that is agreed to by the applicable Debtors and any applicable Affiliates or as otherwise determined by the Bankruptcy Court; provided, however, that pursuant to (and subject to the limitations imposed by) Section 6.2(b) of the [Proposed Non-Consolidation] Plan, the Domestic Operating Company Creditor Representative shall have the authority to object to, litigate, seek to subordinate, compromise or settle Claims asserted by or against a Domestic Operating Company on behalf of such Domestic Operating Company." (page 73 of the Non-Consolidation Plan Proponents Disclosure Statement).

42.      All Documents and Communications concerning the proposed allowance of Senior Intercompany Claims and Intercompany Claims asserted by any Cross-Border Protocol Party against any Debtor in the amount set forth in the Debtors' accounting records. (page 73 of the Non-Consolidation Plan Proponents Disclosure Statement).

43.      All Documents and Communications concerning the decision to adopt the Debtors' Structured Securities Valuation Methodologies to determine the Allowed amount of the Claims against LBHI (including Guarantee Claims) that are based on the Structured Securities. (pages 8, 73 of the Non-Consolidation Plan Proponents Disclosure Statement).

**DRAFT CONSOLIDATED REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

44.     All Documents and Communications concerning the calculation of reserves for Disputed Claims, including the role of the Reserve Agent. (page 74-75 of the Non-Consolidation Plan Proponents Disclosure Statement).

45.     All Documents and Communications concerning the treatment of Disputed Claims, including, but not limited to, the payment of interest on Disputed Claims that are later Allowed. (page 78 of the Non-Consolidation Plan Proponents Disclosure Statement).

46.     All Documents and Communications concerning the establishment of any Liquidating Trust pursuant to Article X of the Proposed Non-Consolidation Plan. (page 83 of the Non-Consolidation Plan Proponents Disclosure Statement).

47.     All Documents and Communications concerning the issuance of New Securities pursuant to Section 15.2 of the Proposed Non-Consolidation Plan. (page 88 of the Non-Consolidation Plan Proponents Disclosure Statement).

48.     All Documents and Communications concerning the Director Selection Committee, including its composition and responsibilities. (page 98-99 of the Non-Consolidation Plan Proponents Disclosure Statement).

49.     All Documents and Communications concerning the U.S. federal income tax consequences of the Proposed Non-Consolidation Plan. (pages 106-117 of the Non-Consolidation Plan Proponents Disclosure Statement).

**ADDITIONAL DOCUMENT REQUESTS**
**FROM GROUP 1 REQUESTING PARTICIPANTS**

50.     All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally, by You or [ii] exchanged between, or circulated among, any one or more of, You and any third party:

            a.      substantive consolidation.

29

**DRAFT CONSOLIDATION REQUESTS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

51.     All presentations concerning any Lehman Entity, whether prepared by

You or any Third Party.

52.     All analyses, including valuations, received from the Debtors concerning

any Lehman Entity.

53.     All communications between You and any Third Party concerning the

Plan, the Proposed Ad Hoc Group Plan, or the Proposed Non-Consolidation Plan or any other

plan of reorganization of any Lehman Entity.


Dated:      June 14, 2011
            New York, New York

                                        /DRAFT_____
                                        Harvey R. Miller
                                        Alfredo R. Pérez
                                        Randi W. Singer
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153-0119
                                        Telephone:      (212) 310-8000
                                        Facsimile:      (212) 310-8007
                                        *Attorneys for Debtors*

# EXHIBIT F

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

**PURSUANT TO PARAGRAPH 5 OF THE ORDER**
**ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH**
**DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES,**
**DATED APRIL 14, 2011 [DOCKET NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

# DRAFT CONSOLIDATED SEARCH TERMS
## TO THE NON-CONSOLIDATION PLAN PROPONENTS

**NOTE:**  * is used to capture all forms of a word (e.g. deliver* = deliver, delivers, delivery etc.)

| "Lehman Entity Search Terms"^ = | Leh* |
|---|---|
| | LB* |
| | Neuberger |
| | LCPI |
| | 745 w/3 LLC |
| | PAMI |
| | CES w/3 aviation |
| | East w/3 Dover |
| | Lux* w/3 Res* |
| | BNC |
| | Rose w/3 Ranch |
| | Kalakaua |
| | Merit |
| | Somerset |
| | ARS* |
| | pass-through |
| | Bankhaus |
| | ALI* |
| | NB* |

^If You have used any acronym, code name or other designation/designated name for Lehman or any of its affiliates, please supplement the above-list of terms with any and all such term(s), and notify the Debtors of any such terms being added to the "Lehman Entity Search Terms."

PART I:  TERMS TO BE RUN WITH "LEHMAN ENTITY SEARCH TERMS"

| No. | Terms |
|---|---|
| 1. | Lehman Entity Search Terms AND (("risk appetite" or VaR or RA) w/20 (calculat* or analyz* or analys* or estimat* or comput* or evaluat* or assess*)) |
| 2. | Lehman Entity Search Terms AND (bank OR depository OR wir*) |
| 3. | Lehman Entity Search Terms AND (CVA OR valu* w/5 adjust*) |
| 4. | Lehman Entity Search Terms AND (employ* OR pay*) |
| 5. | Lehman Entity Search Terms AND (finance* OR solven*) |
| 6. | Lehman Entity Search Terms AND (formal* OR separate*) |
| 7. | Lehman Entity Search Terms AND (guaran* OR promise OR pledge OR oblig*) |
| 8. | Lehman Entity Search Terms AND (jump* w/3 def*) or JTD |
| 9. | Lehman Entity Search Terms AND (officer* OR director*) |
| 10. | Lehman Entity Search Terms AND (own* OR entangle* OR title) |
| 11. | Lehman Entity Search Terms AND (propert* OR asset* OR liability*) |
| 12. | Lehman Entity Search Terms AND (shar* OR  allocate*) AND (expense* or cost) |
| 13. | Lehman Entity Search Terms AND (single OR integr*) AND (glob* OR equity OR debt OR commod*) |
| 14. | Lehman Entity Search Terms AND (special w/5 purpose w/5 vehicle) OR SPV |
| 15. | Lehman Entity Search Terms AND affiliate* AND (distinct OR separ* OR seper*) |

**DRAFT CONSOLIDATED SEARCH TERMS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

| No. | Terms |
|---|---|
| 16. | Lehman Entity Search Terms AND analy* OR review* OR estimat* OR assess* OR eval* OR (rate w/5 return) OR workout OR restructur* OR forecast* |
| 17. | Lehman Entity Search Terms AND asset* AND own* |
| 18. | Lehman Entity Search Terms AND assump* w/5  (respons* OR oblig*) |
| 19. | Lehman Entity Search Terms AND avoid* AND cost* |
| 20. | Lehman Entity Search Terms AND blanket AND (guaran* OR gty) |
| 21. | Lehman Entity Search Terms AND business AND (one OR line OR operat*) |
| 22. | Lehman Entity Search Terms AND capital* |
| 23. | Lehman Entity Search Terms AND cash w/5 manag* |
| 24. | Lehman Entity Search Terms AND CDA |
| 25. | Lehman Entity Search Terms AND central* AND (cash OR manage*) |
| 26. | Lehman Entity Search Terms AND charge* w/3 off |
| 27. | Lehman Entity Search Terms AND claim AND (purchas* OR sell OR sale OR sold OR transf* OR contingent OR unliquid*) |
| 28. | Lehman Entity Search Terms AND comm* AND (invest* or min*) |
| 29. | Lehman Entity Search Terms AND corp* w/5 (seperat* OR separat*) |
| 30. | Lehman Entity Search Terms AND counterpart*  OR CP OR (counter* w/2 part*) |
| 31. | Lehman Entity Search Terms AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli*) |
| 32. | Lehman Entity Search Terms AND creditworth* |
| 33. | Lehman Entity Search Terms AND day-to-day OR DTD |
| 34. | Lehman Entity Search Terms AND default* |
| 35. | Lehman Entity Search Terms AND derivative* |
| 36. | Lehman Entity Search Terms AND domestic w/5 sub* |
| 37. | Lehman Entity Search Terms AND DRE OR (deriv* w/2 risk w/2 equiv*) |
| 38. | Lehman Entity Search Terms AND due w/5 diligence |
| 39. | Lehman Entity Search Terms AND enterp* |
| 40. | Lehman Entity Search Terms AND expos* w/5 (contingent OR future OR contract* OR peak OR average) |
| 41. | Lehman Entity Search Terms AND fund* |
| 42. | Lehman Entity Search Terms AND guaran* OR gty |
| 43. | Lehman Entity Search Terms AND hedg* |
| 44. | Lehman Entity Search Terms AND hold* w/5 compan* w/5 structur* |
| 45. | Lehman Entity Search Terms AND insolv* |
| 46. | Lehman Entity Search Terms AND instruct* OR direct* OR polic* OR proced* OR protocol* OR practice* OR manual* |
| 47. | Lehman Entity Search Terms AND integrat* AND operat* |
| 48. | Lehman Entity Search Terms AND interco* |
| 49. | Lehman Entity Search Terms AND ISDA OR Master OR CSA |
| 50. | Lehman Entity Search Terms AND liquid* |
| 51. | Lehman Entity Search Terms AND master w/5 netting w/5 agree* |
| 52. | Lehman Entity Search Terms AND MTM or mark w/5 market |

**DRAFT CONSOLIDATED SEARCH TERMS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

| No. | Terms |
|---|---|
| 53. | Lehman Entity Search Terms AND non-senior |
| 54. | Lehman Entity Search Terms AND office OR premise* |
| 55. | Lehman Entity Search Terms AND oper* w/10 entit* |
| 56. | Lehman Entity Search Terms AND part* w/5 con* |
| 57. | Lehman Entity Search Terms AND paymaster |
| 58. | Lehman Entity Search Terms AND PFE OR MFE |
| 59. | Lehman Entity Search Terms AND resolution |
| 60. | Lehman Entity Search Terms AND risk* w/10 (credit* OR counterpart* OR valu* OR default OR current OR credit OR peak OR basis* OR hedg*) |
| 61. | Lehman Entity Search Terms AND securit* AND (separate* OR balance OR possess*) |
| 62. | Lehman Entity Search Terms AND securit* AND statement* |
| 63. | Lehman Entity Search Terms AND senior OR unsecur* OR secur* |
| 64. | Lehman Entity Search Terms AND struct* w/10 (hold* OR comp*) |
| 65. | Lehman Entity Search Terms AND sub* w/5 (struct* OR contrac*) |
| 66. | Lehman Entity Search Terms AND support w/5 (implicit OR liquid*) |
| 67. | Lehman Entity Search Terms AND trad* AND (awar* OR know* OR unreg*) |
| 68. | Lehman Entity Search Terms AND transfer* |
| 69. | Lehman Entity Search Terms AND treasur* |
| 70. | Lehman Entity Search Terms AND uncollateral* or collateral* |
| 71. | Lehman Entity Search Terms AND valu* w/5 risk* |
| 72. | Lehman Entity Search Terms AND write w/3 down |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE** | |
| 73. | (allocat* OR allot* OR assign* OR apportion*) AND (cost OR expense) AND derivative AND (debtor OR Lehman Entity Search Terms) |
| 74. | (receivable OR claim* OR credit* OR balance OR debt OR obligation) AND (affiliate OR debtor OR Lehman Entity Search Terms) AND (allow* OR permit* OR valu*) AND ("cross-border" OR protocol) |
| 75. | (reserv* OR (set* /2 aside) OR hold OR keep OR maintain) AND (disput* w/2 claim) AND (plan OR debtor OR Lehman Entity Search Terms) |
| 76. | disput* AND (receivable OR claim* OR credit* OR balance OR debt OR obligation) AND (plan OR debtor OR Lehman Entity Search Terms) |
| **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1[1]** | |
| 77. | Lehman Entity Search Terms AND (Uzzi OR Paulson OR Kamensky OR Alix*) |

PART II:  OTHER SEARCH TERMS

---

[1] "Group 1" is defined as the Participants listed on pages 2 through 9 of Exhibit A to the Debtors' Notice of Second Amended Official Service List for Plan Discovery, dated May 26, 2011, except for Federal National Mortgage Association, Federal Home Loan Mortgage Association, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration, and Storm Funding Limited (in administration).

**DRAFT CONSOLIDATED SEARCH TERMS
TO THE NON-CONSOLIDATION PLAN PROPONENTS**

| No. | Search Terms |
|---|---|
| 78. | (contingent OR unliquid*) AND ((Leh* w/5 Asia) OR LBAH) |
| 79. | (Novat*OR Net*) AND ((Leh* w/5 Asia) OR LBAH OR LBIE OR (Leh* w/5 Europe)) |
| 80. | commingl* |
| 81. | entangle* |
| 82. | inter-debtor |
| 83. | LBF AND claim |
| 84. | LBI and (sale* OR trade*) |
| 85. | Leh* AND Expos* |
| 86. | Leh* AND recover* |
| 87. | Leh* w/5 CR01 |
| 88. | Leh* AND Foreign AND Affiliate* |
| 89. | recharacteriz* |
| 90. | rel* AND seperat* |
| 91. | no* w/5 (con* OR  non-con*) |
| 92. | non-debtor |
| 93. | substantive* w/10 (consolidat* OR subcon) |
| 94. | unreg* AND (LBI or LBIE) |
| 95. | Paolo or Tonucci |
| 96. | Azerad |
| 97. | Echtermann |
| 98. | POR |
| 99. | plan* w/3 (reorg* or liquid*) |
| 100. | plan* |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE** | |
| 101. | "legal entity controller" OR LEC |
| 102. | "Derivative Claims Framework" |
| 103. | "RACERS" OR ("Restructured Asset" /2 "Enhanced Returns Series") |
| 104. | (classifi* OR treat* OR plan*) /s interco* |
| 105. | (LBT OR "Lehman Brothers Treasury" OR "LB Treasury" OR LBS OR "Lehman Brothers Securities" OR "LB Securities") AND interco*  AND senior |
| 106. | (LBT OR "Lehman Brothers Treasury" OR "LB Treasury" OR LBS OR "Lehman Brothers Securities" OR "LB Securities") AND (guarant* OR promise* OR pledge* OR oblig*) |
| 107. | "Debtor Allocation Agreement" |
| 108. | senior AND subordinat* AND (indebt* OR debt* OR obligat*) |
| 109. | structure* w/s (securit* OR note*) |
| 110. | "Reserve Agent" |

**DRAFT CONSOLIDATED SEARCH TERMS**
**TO THE NON-CONSOLIDATION PLAN PROPONENTS**

| No. | Search Terms |
|-----|--------------|
| 111. | ("Plan Administrator" OR LBHI OR "Lehman Brothers Holdings" OR "Domestic Operating Company Creditor Representative" OR "DOCCR") AND trust |
| 112. | "Liquidating Trust" |
| 113. | "New Securities" |
| 114. | ("Plan Administrator" OR "Domestic Operating Company Creditor Representative" OR "DOCCR") AND issu* AND (securit* OR interest OR holding) |
| 115. | issu* AND (securit* OR interest OR holding) AND (distribut* OR pay* OR pai* OR allocat* OR disburs* OR shar* OR split OR divide OR division) |
| 116. | board AND (members OR directors) AND (select* OR appoint* OR vot* OR pick OR choose) |
| 117. | "Director Selection Committee" |
| 118. | tax AND (IRS OR "Internal Revenue" OR IRC OR federal) AND income AND (impact OR consequence OR outcome OR result OR effect) |
| **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1** | |
| 119. | "Ad Hoc Group of Lehman Brothers Creditors" |

**EXHIBIT G**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

Alfredo R. Pérez
+1 212 310 8191
alfredo.perez@weil.com

June 14, 2011

BY E-MAIL

All Participants in Plan Discovery
First Amended Official Service List

Re: Lehman Plan Discovery – Consolidated Participant Requests and Search Terms for Responding
Participants

Dear Participant,

Pursuant to paragraph 6(e) of the *Order Establishing Schedule and Procedures in Connection with
Discovery Related to Plan Confirmation and Other Issues*, dated April 14, 2011 [Docket No. 16003]
(the "Order"),[1] the Debtors hereby serve the draft Consolidated Participant Requests ("Draft
Consolidated Requests") and draft consolidated search terms for the Responding Participants identified
on Exhibit A to the Preliminary Requests.

In accordance with paragraph 6(f) of the Order, a meet and confer regarding the Draft Consolidated
Requests shall take place at the offices of the Creditors' Committee counsel, Milbank, Tweed, Hadley &
McCloy LLP, located at 1 Chase Manhattan Plaza, New York, NY 10005 on June 17, 2011 at 1:00 p.m.
(EDT). Any Participant that believes the Debtors, in compiling the Draft Consolidated Requests,
eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly
transcribed Group Participant Requests or Additional Responding Participant Requests must attend if
you wish to have your objection heard and addressed. In addition, any Participant that plans to attend
should send an email to LehmanPlanDiscovery@weil.com with the names of attendees by June 16,
2011, at 12:00 p.m (EDT), so that their names can be given to building security in advance of the
meeting.

Sincerely,

*Alfredo R. Pérez*

Alfredo R. Pérez

---

[1] Capitalized terms not defined herein shall have the meaning attributed to them in the Order.

**EXHIBIT H**

DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS

**PURSUANT TO PARAGRAPH 6(E) OF THE ORDER ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES, DATED APRIL 14, 2011 [DKT. NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Irwin H. Warren
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CONSOLIDATED DOCUMENT REQUESTS TO RESPONDING PARTICIPANTS PURSUANT TO BANKRUPTCY RULES 7026 AND 7034**

Pursuant to the Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues, dated April 14, 2011 [Docket No. 16003] (the "Order"), Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates[1]

---

[1] The Debtors in these jointly administered chapter 11 cases are Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc., Lehman Brothers Derivative Products Inc., Lehman Brothers Financial Products Inc., Lehman Brothers OTC Derivatives Inc., Lehman Brothers Commercial Corporation, LB 745 LLC, PAMI Statler Arms, LLC, CES Aviation LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Lehman Scottish Finance L.P., Luxembourg Residential Properties Loan Finance S.a.r.l., BNC Mortgage LLC, LB Rose Ranch LLC, Structured

**DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS**

(collectively the "Debtors"), serve these Consolidated Document Requests (the "Requests") to the participants set forth on Exhibit A attached hereto, by and through their counsel, and demand that the Responding Participants (as defined below) provide written responses and objections to the requests herein within twenty-one (21) days of service, in accordance with the Order and Federal Rule 34(b).  The responses and objections shall be served on the Official Service List as defined in the Order.

Pursuant to paragraph 6(k) of the Order, the Responding Participants shall produce documents in response to the Requests, bates-stamped and on a rolling basis, as expeditiously as reasonably practical.  The document production(s) shall be delivered to the Debtors in accordance with the specifications set forth in Exhibit D to the Order at the offices of Weil, Gotshal, & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153, Attention:  Randi W. Singer, Esq.

## I.     DEFINITIONS

1.     The definitions and rules of construction contained in Federal Rule 34 and Rule 26.3 of the Local Rules of the Southern District of New York (as made applicable by Local Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York) are incorporated herein.

2.     "Responding Participants" means the entities or persons set forth on Exhibit A attached hereto, but shall also include any entities or persons that subsequently seek to participate in discovery pursuant to the Order and do not join the Ad Hoc Group of Lehman Brothers Creditors or the Non-Consolidation Plan Proponents.

---

Asset Securities Corporation, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC and LB Preferred Somerset LLC.

2

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

4.    "Communicate" and "Communication(s)" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), regardless of the form or manner or embodiment of same (e.g., conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or other media).

5.    "Creditor Reliance" refers to, in the broad sense, whether creditors dealt with certain entities as a single economic unit and did not rely on their separate identity in extending credit when doing business.  *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

6.    "Document" means each and every document within the meaning of Federal Rule 34, including, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither (e.g., all correspondence, data, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, computer print-outs, computer files, e-mail or other electronic or computer transmission, computer disks, tapes and records of all types, and any other writing, data form, compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form).

The term shall include copies or drafts of documents which are not identical duplicates of the originals.

7.    "Entanglement" refers to, in the broad sense, whether the affairs of certain entities are so intertwined and entangled that it would be extremely difficult if not impossible without great cost and expenditure of time to untangle.  *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

8.    "Including" means including, without limitation, or in any way qualifying, limiting, or restricting the foregoing.

9.    "Lehman Entities" refers collectively to the Debtors, and each of their direct and indirect subsidiaries and affiliates, including any special purpose vehicles established or sponsored by any of them.  "Lehman Entity" refers to any individual or singular entity within the Lehman Entities.

10.    "Plan" means the First Amended Joint Chapter Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (including as it may be further amended), and any other versions, whether filed or unfiled, including drafts.[2]

11.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.    The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

---

[2] Addition requested by the Group 1 Participants, excluding Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration), hereinafter referred to as the "Group 1 Requesting Participants."

13.     "Proposed Ad Hoc Group Plan" means the Amended Joint Substantively

Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated

Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed

by the Ad Hoc Group of Lehman Brothers Creditors dated April 27, 2011 [Docket No. 16315]

(including as it may be further amended), and any other versions, whether filed or unfiled,

including drafts.[3]

14.     "Proposed Non-Consolidation Plan" means the Joint Chapter 11 Plan for

Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset

LLC and LB Preferred Somerset LLC Proposed by the Non-Consolidation Plan Proponents dated

April 25, 2011 [Docket No. 16229] (including as it may be further amended), and any other

versions, whether filed or unfiled, including drafts.[4]

15.     "Transaction" means any business dealing, whether proposed,

contemplated or entered into, including [i] making or participating in a loan (secured or

unsecured, guaranteed or not) with, [ii] purchasing any securities of or making any investment

(equity or otherwise) in, [iii] entering into or participating in any real estate transaction or

venture (including a mortgage) with, [iv] entering into or participating in any partnership, limited

liability company, or joint venture with, [v] entering into or participating in any securitization

transaction offered or sponsored by, [vi] purchasing any instrument sponsored or cosponsored or

securitized by, [vii] obtaining a guarantee or other security from, [viii] purchasing or selling any

goods or services to or from, and [ix] engaging in any other type of financing or business

relationship with any entities.

---

[3] Addition requested by the Group 1 Requesting Participants.

[4] Addition requested by the Group 1 Requesting Participants.

16.    "Lehman's Treasury Team" means Paolo Tanucci, Robert Azerad, and HeidiMarie Echtermann.

17.    "You" and "your" means the Responding Participant set forth on Exhibit A that is responding to these Requests, including the Responding Participant's collective and individual special purpose or other investment vehicles, current and former affiliates, parents, subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on behalf of the Responding Participant for any purpose whatsoever.

18.    Reference to any entity including a corporation, limited liability company or limited or general partnership, includes (a) any predecessor-in-interest, successor, division, affiliate, or wholly- or partially-owned subsidiary of the entity specified, where applicable, and (b) any officer, shareholder, director, partner, agent, member, representative, employee or other person acting on behalf of the entity specified.

## ADDITIONAL DEFINITION FROM GROUP 1 REQUESTING PARTICIPANTS

19.    "Third Party" means any individual person or entity that does not fall within the definition of "You," including without limitation the Lehman Entities and their advisors and other representatives.

## II.    INSTRUCTIONS

1.    You are required to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

6

2.      The use of electronic search terms supplied by the Debtors does not

obviate, alter, or alleviate the requirement for You to search for and produce all documents

responsive to these Requests in Your possession, custody or control, including all documents

possessed by any proposed testifying experts that are subject to these Requests, except as

provided in paragraph 3(j) of the Order.

3.      These Requests shall be deemed to be continuing so as to require further

and supplemental production in the event that additional responsive documents are discovered.

4.      In accordance with paragraph 11 of the Order, if You withhold any

Documents responsive to any of the Requests (except as provided in paragraphs 3(j) and 11(c) of

the Order) on the grounds of privilege, work product, or any other type of protection or immunity

from disclosure, You shall produce a privilege log, consistent with Federal Rule 26(b)(5), as

incorporated by Bankruptcy Rules 7026 and 9014, that contains the following fields:

      a.      Document identification;

      b.      the Document date;

      c.      for e-mails, the subject field of the e-mail;

      d.      for attachments to emails and Documents (other than prior e-mails
           in the e-document), the Document name;

      e.      the name of each person to whom the Document was sent,
           including those blind copied or shown as copied, and whether or
           not any of the recipients, senders, or other addressees are attorneys
           (yes/no); and

      f.      the custodian of the Document.

If privilege, work product, or any other type of protection or immunity is asserted as to only a

part of a Document, then the remainder of the Document shall be produced.

5.      If You object to any Request or part thereof, the objection shall be stated

in accordance with the Bankruptcy Rules and the Federal Rules.

6.      In accordance with paragraph 5(k) of the Order, Documents shall be produced in electronic form.  Upon a showing of good cause, Documents that are not reasonably conducive to being cost-effectively produced in electronic form may be produced by other means, as set forth in the Order.

7.      Documents are to be organized and labeled to correspond with the categories of these Requests or produced as they are kept in the usual course of business.  Any Documents which must be removed from their original folders, binders, covers or containers (collectively, "Containers") in order to be produced shall be identified in a manner so as to clearly specify where such Documents originated and with a copy of any title or reference on the Containers.

8.      Electronically stored Documents shall be produced in the electronic form set forth in Exhibit D to the Order:

   a.   *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

   b.   *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with Appendix 1 to Exhibit D of the Order.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

   c.   *Hard copy documents*.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

    d.      *TIFF Images Generally.*  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  For instances in which the original file is in color and the color is necessary for interpretation of the document (charts, pictures, etc.), produce medium quality JPEG in place of single page tiff file.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

    e.      *Shipment of electronic data.*  Electronic data productions may be transmitted electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or physically transported using electronic storage media such as, CDs, DVDs or hard drives.  The physical media label should contain the case name and number, production date, and bates range being produced.  Each transmission of data should include a collection "manifest" report which provides a list of files collected, their location, and their MD5 hash values.

    9.      If more than one copy of a Document responsive to a Request exists, each non-identical copy of the Document shall be produced.

    10.      No part of a Request shall be left unanswered or Documents not produced as called for therein merely because an objection (including as to privilege) is interposed to another part of the Request.

    11.      These Requests are continuing in nature and You are obligated to provide any responsive Documents that come to Your attention subsequent to serving Your response to these Requests and/or producing any Documents, in accordance with Federal Rule 26(e).

    12.      Unless otherwise stated, the period covered by these Requests is as follows:

    a.      With respect to any Transaction that remained live (i.e., one or both parties to the Transaction had continuing obligations) as of January 1, 2007, the period covered is the genesis of that Transaction to the present.

DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS

      b.      With respect to any potential or realized Transaction with any Lehman Entity, or any Transaction that You considered entering into with any Lehman Entities, but declined to do so, the period covered is January 1, 2007 to the present.

**III.**    **DOCUMENT REQUESTS TO RESPONDING PARTICIPANTS**

    1.    All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally, by You or [ii] exchanged between, or circulated among, any one or more of, You and any third party:

      a.      LBHI's assumption of, or support for any, contractual obligations of any other Lehman Entity, including expressions or indications of, or any person's belief as to, LBHI's willingness or unwillingness or likelihood to stand behind or make good upon, in whole or in part, any obligations of any other Lehman Entity, regardless of whether any obligations were assumed;

      b.      the sharing of administrative expenses (including overhead, employee, management, accounting, taxes, cash management and other related expenses) by or among the Lehman Entities;

      c.      the existence of any formal or informal, written or oral intercompany guarantees, promises, agreements, understandings, undertaking of any obligations, or pledges by or among any of the Lehman Entities;

      d.      the transfer or sale of property, assets, or liabilities between and among any of the Lehman Entities;

      e.      the transfer of funds or intercompany balances between and among any of the Lehman Entities;

      f.      any Lehman Entities' employment of individuals and payments to employees;

      g.      capitalization of any of the Lehman Entities;

      h.      the ownership of property, assets, and liabilities by, between and among any Lehman Entities;

      i.      the existence of consolidated and unconsolidated financial statements for or among Lehman Entities;

      j.      financial statements for any Lehman Entity other than LBHI;

<u>**DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS**</u>

    k.      the boards of directors, or any individual directors and/or officers, of any of the Lehman Entities;

    l.      the ownership, organizational structure, corporate governance, and method of business operation of any Lehman Entity;

    m.      the prepetition cash management system used by any of the Lehman Entities;

    n.      LBHI's or any other Lehman Entity's exercise of direct or indirect control over any other of the Lehman Entities, including whether or not any of the Lehman Entities were subject to direction from LBHI or any other Lehman Entity;

    o.      the office locations and premises of any of the Lehman Entities; and

    p.      without regard to date, for the first four Transactions of each type of Transaction that You [i] considered but did not enter into, and [ii] entered into with each Lehman Entity, all Documents and Communications concerning such Transactions and all of Your policies, procedures, or standards for considering, reviewing, approving and entering into, or that were utilized, in any Transaction with any Lehman Entities, and any hedging or risk management policies and/or any due diligence reports or analysis, reports to or records of credit committees, investment committees or other loan or investment approval, or loan or investment review or monitoring, bodies of or for Your organization.

2.    All Documents and Communications concerning whether You, or any other creditor of the Lehman Entities, dealt with any one or more of the Lehman Entities as a single economic unit in extending credit.

3.    All Documents and Communications concerning any Transactions between You and any of the Lehman Entities.

4.    All Documents and Communications concerning the following aspects for any potential or realized Transaction between You and any of the Lehman Entities:

    a.      any internal instructions, directions, policies, procedures, protocols, practices, manuals, other method of business practices or any changes thereto relating to (i) Your relationship, or any of Your Transactions, with the Lehman Entities; and (ii) due

11

diligence for and monitoring of; (iii) any contingency planning/risk analyses or risk management; (iv) Your reserves; (v) any charge-offs; (vi) any mark-to-market valuations; (vii) any write-downs; and (viii) any workouts, plans, analyses, restructuring, or forecasting as to any such Transactions;

b.      Your decision whether or not to enter into any such Transaction with one or more of the Lehman Entities;

c.      any credit committee, investment committee, or other group (or members thereof) charged with proposal of, review, approval, or monitoring of such Transactions; and

d.      actual or potential recovery or rate of return for such Transactions.

5.      Subject to the restriction in Paragraph 3(j) of the Order, all Documents and Communications between and among You and any restructuring advisor, financial consultant or other consultant hired by, or that performed work for or advised, You concerning (i) substantive consolidation, including Entanglement and Creditor Reliance, or (ii) the Proposed Ad Hoc Group Plan, the Proposed Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.

6.      All Documents and Communications concerning any efforts undertaken by You to solicit support or to solicit votes in support of the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan.

7.      All Documents and Communications, including those exchanged with third parties, concerning the acceptance or rejection of the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan.

8.      All Documents and Communications dated on or after June 1, 2008 concerning any claims against, or interests in, the Debtors that You or any participant own or owned, including their value, when acquired, the amounts paid therefor, and any sales or dispositions thereof.

**DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS**

9.      All Documents and Communications concerning credit ratings, credit evaluations, or credit or risk reviews related to any Lehman Entity, including (a) credit reports of any one or more of the Lehman Entities or any security or other instrument issued by the Lehman Entities, and (b) any periodic or special credit reviews for purposes of establishing trading and/or transaction procedures between You and any Lehman Entity.

10.     All Documents and Communications prepared, sent, reviewed or received by You concerning the financial status, solvency, or health of any of the Lehman Entities from January 1, 2007 to the present.

11.     All Documents and Communications concerning the following:

      a.      any formal or informal, written or oral, promise, guarantee, agreement, understanding, undertaking of any obligation, or pledge of LBHI to satisfy an obligation or liability of any other entity, including with respect to asset values, collection, net worth or similar agreements, regardless of whether the purported guarantee, promise or pledge concerns any instrument, obligation, or claim You now hold or previously held;

      b.      any request, or consideration whether to make a request, by You for LBHI to provide such a guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction; and

      c.      the enforceability of any such guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction.

12.     All Documents and Communications concerning any analysis, study, or valuation done by or for You of any actual or potential purchase, sale, or transfer of a claim against any of the Lehman Entities, including all Documents and Communications with or concerning the original or prospective claimant or counterparty or its relationship with any of the Lehman Entities.

**DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS**

13.     All Documents and Communications concerning any interviews of any person concerning the conduct of the Lehman Entities prior to September 15, 2008, that were conducted by or on behalf of You or of which You are aware.

14.     All Documents and Communications concerning the intercompany balances or intercompany transactions, including as reflected in the publicly-filed statements of the Lehman Entities.

15.     All Documents and Communications concerning Transactions between or among any Lehman Entities and third parties.

16.     All Documents and Communications between You and any member of Lehman's Treasury Team regarding any Transaction that You considered or entered into with any Lehman Entity.

17.     For the period beginning on June 1, 2008 through September 15, 2008, all Documents and Communications concerning any requests to or from third parties for novations of trades with any Lehman Entity, or consideration of such novations.

**ADDITIONAL DOCUMENT REQUESTS**
**FROM GROUP 1 REQUESTING PARTICIPANTS**

18.     All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally, by You or [ii] exchanged between, or circulated among, any one or more of, You and any third party:

a.     substantive consolidation.

19.     All presentations concerning any Lehman Entity, whether prepared by You or any Third Party.

20.     All analyses, including valuations, received from the Debtors concerning any Lehman Entity.

21.    All communications between You and any Third Party concerning the Plan, the Proposed Ad Hoc Group Plan, or the Proposed Non-Consolidation Plan or any other plan of reorganization of any Lehman Entity.

### ADDITIONAL DOCUMENT REQUESTS FROM GROUP 3 & GROUP 9 PARTICIPANTS DIRECTED SOLELY TO JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.

22.    All Documents concerning the establishment or maintenance of LBI's record keeping systems for trading activity with any Lehman Entity, including but not limited to the establishment or maintenance of the "ADP system."[5]

23.    All trading records and communications relating to trades effected by LBI on behalf of LBIE or LBIE prime broker customers, or trades effected by LBIE on behalf of LBI or LBI prime broker customers, including but not limited to data from the TMS, MTS, Loannet, ADP, Cameo, Margin System, and RISC systems.[6]

24.    All documents concerning the reconciliation of LBI's and LBIE's trading systems in the ordinary course of business, including but not limited to data from the TMS, MTS, Loannet, ADP, Cameo, Margin System, and RISC systems.[7]

---

[5]  Requested by the following members of Group 3: LB Holdings Intermediate 2 Limited (in administration), LB RE Financing No. 3 Limited (in administration), LB UK RE Holdings Limited (in administration), Lehman Brothers (Indonesia) Limited (in liquidation), Lehman Brothers (PTG) Limited (in administration), Lehman Brothers Europe Limited (in administration), Lehman Brothers Holdings PLC (in administration), Lehman Brothers Limited (in administration), Lehman Brothers UK Holdings Limited (in administration), and Mable Commercial Funding Limited (in administration) (collectively, the "UK Administration/Liquidation Companies"), Bundesverband deutscher Banken e.V. ("BdB"), and Elliott Associates, L.P. ("Elliott").

Requested by the following members of Group 9:  Lehman Brothers International (Europe) (in administration), Monaco NPL (No. 1) Limited (in administration), Zestdew Limited (in administration), Eldon Street (Cube) Limited (in liquidation), Lehman Commercial Mortgage Conduit Limited (in administration), and Pricewaterhouse-Coopers AG, as Bankruptcy Litigator and Foreign Representative of Lehman Brothers Finance AG (collectively, the "Group 9 Requesting Participants").

[6] Requested by the following members of Group 3:  UK Administration/Liquidation Companies and BdB.  Also requested by the Group 9 Requesting Participants.

[7] Requested by the following members of Group 3:  UK Administration/Liquidation Companies, BdB, and Elliott. Also requested by the Group 9 Requesting Participants.

**DRAFT CONSOLIDATED REQUESTS TO RESPONDING PARTICIPANTS**

      25.    All Documents concerning LBI's maintenance of segregated accounts for

any Lehman Entity and/or any Lehman Entity customers or clients.[8]

Dated:      June 14, 2011
           New York, New York

                      /DRAFT _____
                      Harvey R. Miller
                      Irwin H. Warren
                      Alfredo R. Pérez
                      Randi W. Singer
                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153-0119
                      Telephone:    (212) 310-8000
                      Facsimile:    (212) 310-8007
                      Attorneys for Debtors

---

[8] Requested by the following members of Group 3:  UK Administration/Liquidation Companies, BdB, and Elliott. Also requested by the Group 9 Requesting Participants.

# EXHIBIT A

## EXHIBIT A

### LIST OF RESPONDING PARTICIPANTS OTHER THAN THE AD HOC GROUP, THE NON-CONSOLIDATION PLAN PROPONENTS, AND DEBTORS' AFFILIATES UNDER DISCOVERY ORDER RELATED TO PLAN CONFIRMATION

|  |  |
|---|---|
| 1. | American National Insurance Company and affiliates:<br>• Standard Life and Accident Insurance Company<br>• American National Life Insurance Company of Texas<br>• American National General Insurance Company<br>• American National Lloyds Insurance Company<br>• Comprehensive Investment Services<br>• Farm Family Life Insurance Company<br>• The Moody Foundation |
| 2. | Aozora Bank, Ltd. |
| 3. | Aurelius Capital Management, LP, on behalf of its managed entities:<br>• Aurelius Capital Master, Ltd.,<br>• Aurelius Capital Partners, LP<br>• Aurelius Convergence Master, Ltd<br>• ACP Master, Ltd. |
| 4. | Bank of America, N.A. |
| 5. | Bundesverband deutscher Banken e.V. |
| 6. | CarVal Investors UK Limited |
| 7. | Centerbridge Credit Advisors LLC, on behalf of funds managed by itself and its affiliates |
| 8. | Citigroup Inc. and its affiliates<br>• Citibank N.A.<br>• Citigroup Global Markets Ltd.<br>• Citigroup Financial Products Inc.<br>• Citi Swapco Inc.<br>• Citigroup Energy Inc.<br>• Citi Mortgage Inc.<br>• Citigroup Global Markets Inc.<br>• Citibank, A.S. |
| 9. | ClearBridge Focus Equity L.P. |
| 10. | Deutsche Bundesbank |
| 11. | Diamondback Master Fund, Ltd. |
| 12. | Elliot Associates, L.P. |
| 13. | Federal Home Loan Bank of New York |
| 14. | Federal Home Loan Mortgage Corporation |
| 15. | Federal National Mortgage Association |
| 16. | Fidelity National Title Insurance Company |
| 17. | James W. Giddens, as Trustee for the SIPA liquidation of Lehman Brothers Inc. |
| 18. | JPMorgan Chase Bank, N.A., and<br>• J.P. Morgan Bank Dublin PLC |

|    | |
|----|--|
|    | • JPMorgan Chase Funding Inc.<br>• J.P. Morgan Clearing Corp.<br>• J.P. Morgan International Bank Limited<br>• J.P. Morgan Markets Limited<br>• J.P. Morgan Securities Inc.<br>• JP Morgan Securities Japan Co., Ltd.,<br>• J.P. Morgan Securities Ltd.<br>• J.P. Morgan (Suisse) SA<br>• J.P. Morgan Ventures Energy Corporation |
| 19. | King Street Europe, L.P., and<br>• King Street Europe Master Fund, Ltd.<br>• King Street Capital, Ltd.<br>• King Street Capital Master Fund, Ltd.<br>• King Street Capital, L.P.<br>• King Street Acquisition Company, L.L.C.<br>• LBVN Holdings, L.L.C.<br>• King Street Capital GP, L.L.C.<br>• King Street Capital Management, L.P.<br>• King Street (Europe) LLP<br>• King Street (Japan) Limited<br>• King Street (Singapore) Pte. Ltd. |
| 20. | Lehman Brothers Equity/Debt Securities Litigation Lead Plaintiffs<br>• Alameda County Employees' Retirement Association<br>• Government of Guam Retirement Fund<br>• Northern Ireland Local Government Officers' Superannuation Committee<br>• City of Edinburgh Council as Administering Authority of the Lothian Pension Fund<br>• Operating Engineers Local 3 Trust Fund |
| 21. | Lehman Brothers Mortgage Backed Securities Litigation Lead Plaintiff<br>• Locals 302 and 612 of the International Union of Operating Engineers - Employers Construction Industry Retirement Trust |
| 22. | LibertyView Capital Management, LLC, and the following affiliated funds:<br>• LibertyView Funds, L.P. d/b/a LibertyView Focus Funds, LP<br>• LibertyView Global Risk Arbitrage Fund, L.P.<br>• LibertyView Credit Select Fund, LP d/b/a LibertyView Loan Fund, LLC<br>• LibertyView Credit Opportunities Fund, L.P.<br>• LibertyView Special Opportunities Fund, L.P. |
| 23. | Merrill Lynch International |
| 24. | Newport Global Credit Fund (Master) L.P.; and<br>• Newport Global Opportunities Fund L.P.<br>• Newport Global Advisors, L.P. |
| 25. | Nomura International plc |
| 26. | Nordea Bank AB and Nordea Bank Finland Plc |
| 27. | Providence Equity Partners VI L.P., and<br>• Providence Equity Partners VI-A L.P.<br>• Providence TMT Special Situations Fund L.P.<br>• PEP Credit Investor L.P. |

| 28. | Retirement Housing Foundation, and its affiliates:<br>• Foundation Property Management<br>• Bixby Knolls Towers, Inc.<br>• Gold County Health Center, Inc.<br>• Mayflower Gardens Health Facilities, Inc.<br>• Mayflower RHF Housing, Inc.<br>• Sun City RHF Housing<br>• Holly Hill RHF Housing, Inc.<br>• Merritt Island RHF Housing, Inc.<br>• Martin Luther Foundation, Inc.<br>• Yellowwood Acres, Inc.<br>• Bluegrass RHF Housing, Inc.<br>• St. Catherine RHF Housing, Inc.<br>• DeSmet RHF Housing, Inc. |
|---|---|
| 29. | Royal Bank of Canada |
| 30. | Société Générale |
| 31. | Société Générale Asset Management Banque |
| 32. | The Bank of New York Mellon Trust Company, N.A., as indenture trustee for the holders of the Series 2008A bonds issued by Main Street Natural Gas, Inc. |
| 33. | The Baupost Group, L.L.C. |

**EXHIBIT I**

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

**PURSUANT TO PARAGRAPH 6 OF THE ORDER
ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION
WITH DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES,
DATED APRIL 14, 2011 [DOCKET NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

**NOTE:** * is used to capture all forms of a word (e.g. deliver* = deliver, delivers, delivery etc.)

| **"Lehman Entity Search Terms"^ =** | Leh* |
|---|---|
| | LB* |
| | Neuberger |
| | LCPI |
| | 745 w/3 LLC |
| | PAMI |
| | CES w/3 aviation |
| | East w/3 Dover |
| | Lux* w/3 Res* |
| | BNC |
| | Rose w/3 Ranch |
| | Kalakaua |
| | Merit |
| | Somerset |
| | ARS* |
| | pass-through |
| | Bankhaus |
| | ALI* |
| | NB* |

^If You have used any acronym, code name or other designation/designated name for Lehman or any of its affiliates, please supplement the above-list of terms with any and all such term(s), and notify the Debtors of any such terms being added to the "Lehman Entity Search Terms."

PART I:  TERMS TO BE RUN WITH "LEHMAN ENTITY SEARCH TERMS"

| No. | Terms |
|---|---|
| 1. | Lehman Entity Search Terms AND (("risk appetite" or VaR or RA) w/20 (calculat* or analyz* or analys* or estimat* or comput* or evaluat* or assess*)) |
| 2. | Lehman Entity Search Terms AND (bank OR depository OR wir*) |
| 3. | Lehman Entity Search Terms AND (CVA OR valu* w/5 adjust*) |
| 4. | Lehman Entity Search Terms AND (employ* OR pay*) |
| 5. | Lehman Entity Search Terms AND (finance* OR solven*) |
| 6. | Lehman Entity Search Terms AND (formal* OR separate*) |
| 7. | Lehman Entity Search Terms AND (guaran* OR promise OR pledge OR oblig*) |
| 8. | Lehman Entity Search Terms AND (jump* w/3 def*) or JTD |
| 9. | Lehman Entity Search Terms AND (officer* OR director*) |
| 10. | Lehman Entity Search Terms AND (own* OR entangle* OR title) |
| 11. | Lehman Entity Search Terms AND (propert* OR asset* OR liability*) |
| 12. | Lehman Entity Search Terms AND (shar* OR  allocate*) AND (expense* or cost) |
| 13. | Lehman Entity Search Terms AND (single OR integr*) AND (glob* OR equity OR debt OR commod*) |
| 14. | Lehman Entity Search Terms AND (special w/5 purpose w/5 vehicle) OR SPV |
| 15. | Lehman Entity Search Terms AND affiliate* AND (distinct OR separ* OR seper*) |

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

| No. | Terms |
|---|---|
| 16. | Lehman Entity Search Terms AND analy* OR review* OR estimat* OR assess* OR eval* OR (rate w/5 return) OR workout OR restructur* OR forecast* |
| 17. | Lehman Entity Search Terms AND asset* AND own* |
| 18. | Lehman Entity Search Terms AND assump* w/5  (respons* OR oblig*) |
| 19. | Lehman Entity Search Terms AND avoid* AND cost* |
| 20. | Lehman Entity Search Terms AND blanket AND (guaran* OR gty) |
| 21. | Lehman Entity Search Terms AND business AND (one OR line OR operat*) |
| 22. | Lehman Entity Search Terms AND capital* |
| 23. | Lehman Entity Search Terms AND cash w/5 manag* |
| 24. | Lehman Entity Search Terms AND CDA |
| 25. | Lehman Entity Search Terms AND central* AND (cash OR manage*) |
| 26. | Lehman Entity Search Terms AND charge* w/3 off |
| 27. | Lehman Entity Search Terms AND claim AND (purchas* OR sell OR sale OR sold OR transf* OR contingent OR unliquid*) |
| 28. | Lehman Entity Search Terms AND comm* AND (invest* or min*) |
| 29. | Lehman Entity Search Terms AND corp* w/5 (seperat* OR separat*) |
| 30. | Lehman Entity Search Terms AND counterpart*  OR CP OR (counter* w/2 part*) |
| 31. | Lehman Entity Search Terms AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli*) |
| 32. | Lehman Entity Search Terms AND creditworth* |
| 33. | Lehman Entity Search Terms AND day-to-day OR DTD |
| 34. | Lehman Entity Search Terms AND default* |
| 35. | Lehman Entity Search Terms AND derivative* |
| 36. | Lehman Entity Search Terms AND domestic w/5 sub* |
| 37. | Lehman Entity Search Terms AND DRE OR (deriv* w/2 risk w/2 equiv*) |
| 38. | Lehman Entity Search Terms AND due w/5 diligence |
| 39. | Lehman Entity Search Terms AND enterp* |
| 40. | Lehman Entity Search Terms AND expos* w/5 (contingent OR future OR contract* OR peak OR average) |
| 41. | Lehman Entity Search Terms AND fund* |
| 42. | Lehman Entity Search Terms AND guaran* OR gty |
| 43. | Lehman Entity Search Terms AND hedg* |
| 44. | Lehman Entity Search Terms AND hold* w/5 compan* w/5 structur* |
| 45. | Lehman Entity Search Terms AND insolv* |
| 46. | Lehman Entity Search Terms AND instruct* OR direct* OR polic* OR proced* OR protocol* OR practice* OR manual* |
| 47. | Lehman Entity Search Terms AND integrat* AND operat* |
| 48. | Lehman Entity Search Terms AND interco* |
| 49. | Lehman Entity Search Terms AND ISDA OR Master OR CSA |
| 50. | Lehman Entity Search Terms AND liquid* |
| 51. | Lehman Entity Search Terms AND master w/5 netting w/5 agree* |
| 52. | Lehman Entity Search Terms AND MTM or mark w/5 market |

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

| No. | Terms |
|-----|-------|
| 53. | Lehman Entity Search Terms AND non-senior |
| 54. | Lehman Entity Search Terms AND office OR premise* |
| 55. | Lehman Entity Search Terms AND oper* w/10 entit* |
| 56. | Lehman Entity Search Terms AND part* w/5 con* |
| 57. | Lehman Entity Search Terms AND paymaster |
| 58. | Lehman Entity Search Terms AND PFE OR MFE |
| 59. | Lehman Entity Search Terms AND resolution |
| 60. | Lehman Entity Search Terms AND risk* w/10 (credit* OR counterpart* OR valu* OR default OR current OR credit OR peak OR basis* OR hedg*) |
| 61. | Lehman Entity Search Terms AND securit* AND (separate* OR balance OR possess*) |
| 62. | Lehman Entity Search Terms AND securit* AND statement* |
| 63. | Lehman Entity Search Terms AND senior OR unsecur* OR secur* |
| 64. | Lehman Entity Search Terms AND struct* w/10 (hold* OR comp*) |
| 65. | Lehman Entity Search Terms AND sub* w/5 (struct* OR contrac*) |
| 66. | Lehman Entity Search Terms AND support w/5 (implicit OR liquid*) |
| 67. | Lehman Entity Search Terms AND trad* AND (awar* OR know* OR unreg*) |
| 68. | Lehman Entity Search Terms AND transfer* |
| 69. | Lehman Entity Search Terms AND treasur* |
| 70. | Lehman Entity Search Terms AND uncollateral* or collateral* |
| 71. | Lehman Entity Search Terms AND valu* w/5 risk* |
| 72. | Lehman Entity Search Terms AND write w/3 down |
| | **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1[1]** |
| 73. | Lehman Entity Search Terms AND (Uzzi OR Paulson OR Kamensky OR Alix* OR Goldman OR Moloney OR O'Neal OR Tormey) |
| 74. | Lehman Entity Search Terms AND (opco OR "op co") /s (group OR creditors OR plan) |

PART II:  OTHER SEARCH TERMS

| No. | Search Terms |
|-----|-------|
| 75. | (contingent OR unliquid*) AND ((Leh* w/5 Asia) OR LBAH) |
| 76. | (Novat*OR Net*) AND ((Leh* w/5 Asia) OR LBAH OR LBIE OR (Leh* w/5 Europe)) |
| 77. | commingl* |
| 78. | entangle* |
| 79. | inter-debtor |
| 80. | LBF AND claim |

---

[1] "Group 1" is defined as listed on pages 2 through 9 of Exhibit A to the Debtors' Notice of Second Amended Official Service List for Plan Discovery, dated May 26, 2011, with the exception of Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration).

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

| No. | Search Terms |
|-----|--------------|
| 81. | LBI and (sale* OR trade*) |
| 82. | Leh* AND Expos* |
| 83. | Leh* AND recover* |
| 84. | Leh* w/5 CR01 |
| 85. | Leh* AND Foreign AND Affiliate* |
| 86. | recharacteriz* |
| 87. | rel* AND seperat* |
| 88. | no* w/5 (con* OR  non-con*) |
| 89. | non-debtor |
| 90. | substantive* w/10 (consolidat* OR subcon) |
| 91. | unreg* AND (LBI or LBIE) |
| 92. | Paolo or Tonucci |
| 93. | Azerad |
| 94. | Echtermann |
| 95. | POR |
| 96. | plan* w/3 (reorg* or liquid*) |
| 97. | plan* |
| | **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1[2]** |
| 98. | "Ad Hoc Group of Lehman Brothers Creditors" |
| 99. | "Goldman Group" |
| | **ADDITIONAL SEARCH TERMS**<br>**REQUESTED BY CERTAIN MEMBERS OF GROUP 3**<br>**(UK Administration/Liquidation Companies[3];**<br>**Bundesverband deutscher Banken e.V.; Elliott Associates, L.P.)**<br><br>**AND CERTAIN MEMBERS OF GROUP 9**<br>**(Lehman Brothers International (Europe) (in administration);**<br>**Monaco NPL (No. 1) Limited (in administration); Zestdew**<br>**Limited (in administration); Eldon Street (Cube) Limited**<br>**(in liquidation); Lehman Commercial Mortgage Conduit** |

---

[2] "Group 1" is defined as listed on pages 2 through 9 of Exhibit A to the Debtors' Notice of Second Amended Official Service List for Plan Discovery, dated May 26, 2011, with the exception of Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration).

[3] The UK Administration/Liquidation Companies that are Participants in Group 3 include LB Holdings Intermediate 2 Limited (in administration), LB RE Financing No. 3 Limited (in administration), LB UK RE Holdings Limited (in administration), Lehman Brothers (Indonesia) Limited (in liquidation), Lehman Brothers (PTG) Limited (in administration), Lehman Brothers Europe Limited (in administration), Lehman Brothers Holdings PLC (in administration), Lehman Brothers Limited (in administration), Lehman Brothers UK Holdings Limited (in administration), and Mable Commercial Funding Limited (in administration).

**DRAFT CONSOLIDATED SEARCH TERMS TO RESPONDING PARTICIPANTS**

| No. | Search Terms |
|-----|--------------|
| | **Limited (in administration); Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG))**<br><br>**DIRECTED SOLELY TO JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS, INC.** |
| 100. | ADP OR TMS OR MTS OR loannet OR cameo OR "margin system" OR risc |
| 101. | segregat* w/5 account* |

**EXHIBIT J**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

Alfredo R. Pérez
+1 212 310 8191
alfredo.perez@weil.com

June 14, 2011                                                                        BY E-MAIL

All Participants in Plan Discovery
First Amended Official Service List

Re: Lehman Plan Discovery – Preliminary Participant Requests and Search Terms for Debtors'
    Affiliates

Dear Participant,

Pursuant to paragraph 6(e) of the *Order Establishing Schedule and Procedures in Connection with
Discovery Related to Plan Confirmation and Other Issues*, dated April 14, 2011 [Docket No. 16003]
(the "Order"),[1] the Debtors hereby serve the draft Consolidated Participant Requests ("Draft
Consolidated Requests") and draft consolidated search terms for certain of the Responding Participants
that are the Debtors' Affiliates (the "Debtor Affiliate Responding Participants"), identified on Exhibit A
to the Consolidated Requests.

In accordance with paragraph 6(f) of the Order, a meet and confer regarding the Draft Consolidated
Requests shall take place at the offices of the Creditors' Committee counsel, Milbank, Tweed, Hadley &
McCloy LLP, located at 1 Chase Manhattan Plaza, New York, NY 10005 on June 17, 2011 at 1:00 p.m.
(EDT). Any Participant that believes the Debtors, in compiling the Draft Consolidated Requests,
eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly
transcribed Group Participant Requests or Additional Responding Participant Requests must attend if
you wish to have your objection heard and addressed. In addition, any Participant that plans to attend
should send an email to LehmanPlanDiscovery@weil.com with the names of attendees by June 16,
2011, at 12:00 p.m (EDT), so that their names can be given to building security in advance of the
meeting.

Sincerely,

*Alfredo R. Pérez*

Alfredo R. Pérez

---

[1] Capitalized terms not defined herein shall have the meaning attributed to them in the Order.

**EXHIBIT K**

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**


**PURSUANT TO PARAGRAPH 6(E) OF THE ORDER ESTABLISHING SCHEDULE
AND PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN
CONFIRMATION AND OTHER ISSUES, DATED APRIL 14, 2011 [DKT. NO. 16003]**


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Irwin H. Warren
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |


**CONSOLIDATED DOCUMENT REQUESTS TO THE DEBTORS'
AFFILIATES PURSUANT TO BANKRUPTCY RULES 7026 AND 7034**

Pursuant to the Order Establishing Schedule and Procedures in Connection with

Discovery Related to Plan Confirmation and Other Issues, dated April 14, 2011 [Docket No.

16003] (the "<u>Order</u>"), Rules 26 and 34 of the Federal Rules of Civil Procedure (the "<u>Federal

Rules</u>") and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and certain of its affiliates[1]

---

[1] The Debtors in these jointly administered chapter 11 cases are Lehman Brothers Holdings Inc., Lehman
Commercial Paper Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc.,
Lehman Brothers Derivative Products Inc., Lehman Brothers Financial Products Inc., Lehman Brothers OTC
Derivatives Inc., Lehman Brothers Commercial Corporation, LB 745 LLC, PAMI Statler Arms, LLC, CES Aviation
LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Lehman Scottish Finance L.P.,

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

(collectively the "Debtors"), serve these Consolidated Document Requests (the "Requests") to Debtors' Affiliates (as defined below), by and through their counsel, and demand that the Debtors' Affiliates provide written responses and objections to the requests herein within twenty-one (21) days of service, in accordance with the Order and Federal Rule 34(b).  The responses and objections shall be served on the Official Service List as defined in the Order.

Pursuant to paragraph 6(k) of the Order, the Debtors' Affiliates shall produce documents in response to the Requests, bates-stamped and on a rolling basis, as expeditiously as reasonably practical.  The document production(s) shall be delivered to the Debtors in accordance with the specifications set forth in Exhibit D to the Order at the offices of Weil, Gotshal, & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153, Attention: Randi W. Singer, Esq.

## I.    DEFINITIONS

1.    The definitions and rules of construction contained in Federal Rule 34 and Rule 26.3 of the Local Rules of the Southern District of New York (as made applicable by Local Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York) are incorporated herein.

2.    "Debtors' Affiliates" means the entities set forth on Exhibit A and refers to the group as a whole as well as to each and every entity on Exhibit A.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

---

Luxembourg Residential Properties Loan Finance S.a.r.1., BNC Mortgage LLC, LB Rose Ranch LLC, Structured Asset Securities Corporation, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC and LB Preferred Somerset LLC.

4.       "Communicate" and "Communication(s)" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), regardless of the form or manner or embodiment of same (e.g., conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or other media).

5.       "Creditor Reliance" refers to, in the broad sense, whether creditors dealt with certain entities as a single economic unit and did not rely on their separate identity when doing business.  *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

6.       "Custodial Account Clients" means Lehman Custodial Account Clients and Third-Party Custodial Account Clients.

7.       "Custodial Agreements" means all agreements or other arrangements, including, without limitation, any MCA, IPBA and T&Cs, pursuant to which a Lehman Custodian Entity received or holds property or other assets beneficially owned by a Custodial Account Client.

8.       "Document" means each and every document within the meaning of Federal Rule 34, including, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic, magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither (e.g., all correspondence, data, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, computer print-outs, computer files,

3

e-mail or other electronic or computer transmission, computer disks, tapes and records of all

types, and any other writing, data form, compilation, other recording or mechanical reproduction

from which information can be obtained or translated, if necessary, into reasonably usable form).

The term shall include copies or drafts of documents which are not identical duplicates of the

originals.

9.      "Entanglement" refers to, in the broad sense, whether the affairs of certain

entities are so intertwined and entangled that it would be extremely difficult if not impossible

without great cost and expenditure of time to untangle.  *See Union Sav. Bank v. Augie/Restivo*

*Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

10.      "Extended Lien" means any lien, security interest, property right or other

similar interest created or purported to be created in favor of any Lehman Custodian Entity under

any Custodial Agreement, governing the terms of any custodial or similar type of arrangement

between such Lehman Custodian Entity and any Custodial Account Client, provided that such

lien, security interest, property right or other similar interest secures or purports to secure one or

more claims against or obligations of such Custodial Account Client in favor of any party other

than the Lehman Custodian Entity, including, without limitation, claims of or obligations owing

to any Lehman Affiliate Creditor.

11.      "Extended Lien Agreements" means all Custodial Agreements creating or

purporting to create an Extended Lien.

12.      "Extended Lien Collateral" means all property or other assets,

wheresoever held, against which an Extended Lien has been or may be asserted, including,

without limitation, (i) any assets held or received by any Lehman Custodian Entity, whether held

or received pursuant to an Extended Lien Agreement, that the Extended Lien Agreement subjects

4

or purports to subject to an Extended Lien; (ii) any assets held or received by a Lehman Entity,

other than a Lehman Custodian Entity, that an Extended Lien Agreement subjects or purports to

subject to an Extended Lien, including as contemplated by clause 10.1(b) of that certain IPBA

dated September 7, 2007, between LBIE and Lehman Brothers Finance S.A., which charges or

purports to charge "securities and other assets . . . deposited with or held by" Lehman Entities

other than LBIE.

13.     "Extended Lien Release Proposal" means any proposal to release one or

more Extended Liens with the consent of the relevant Lehman Custodian Entity and any

Custodial Account Client, including, without limitation, any proposal to globally release all

Extended Liens with the consent of any or all Lehman Entities.

14.     "Global Close" means the global effort undertaken by a global team of

personnel at LBHI, Barclays Capital Inc., Nomura International Plc, and LBIE to perform a full

accounting close as of September 14, 2008.

15.     "Including" means including, without limitation, or in any way qualifying,

limiting, or restricting the foregoing.

16.     "Intercompany Transfers" means all transfers of funds to or from a

Debtors' Affiliates.

17.     "IPBA" means an International Prime Brokerage Agreement or other

agreement governing the provision of brokerage or similar services to a Custodial Account

Client through one or more accounts with LBIE or another Lehman Custodian Entity for

receiving or holding securities or related assets on behalf of a Custodial Account Client.

18.     "ISDA" means either a 1992 or 2002 International Swap Dealers

Association Master Agreement.

19.     "LBIE" means Lehman Brothers International (Europe).

20.     "LBSF" means Lehman Brothers Special Financing Inc.

21.     "LBSF Side Letter" means that certain side letter arrangement between LBIE and LBSF, dated July 24, 2006.

22.     "Lehman Affiliate Creditors" means, with respect to the Custodial Account Clients of a Lehman Custodian Entity, the Lehman Entities other than such Lehman Custodian Entity who have claims against or are owed obligations by any Custodial Account Client.

23.     "Lehman Custodial Account Clients" means the customers, clients and other entities on whose behalf any Lehman Custodian Entities received or held property or other assets, whether for safe keeping, in connection with the provision of brokerage or similar services or otherwise, who are also Lehman Entities.

24.     "Lehman Custodian Entities" means the Lehman Entities whose businesses included receiving or holding property or other assets on behalf of customers, clients or other entities, whether for safe keeping, in connection with the provision of brokerage or similar services or otherwise, including, without limitation, Lehman Brothers Inc., LBIE, Lehman Brothers Japan Inc. and other Lehman Entities regulated or licensed, in any jurisdiction, as a broker-dealer.

25.     "Lehman Entities" refers collectively to the Debtors, and each of their direct and indirect subsidiaries and affiliates, including any special purpose vehicles established or sponsored by any of them.  "Lehman Entity" refers to any individual or singular entity within the Lehman Entities.

26.     "MCA" means a Master Custody Agreement or other agreement establishing or authorizing the establishment of a custody or similar account with LBIE or another Lehman Custodian Entity for receiving or holding assets on behalf of a Custodial Account Client.

27.     "Plan" means the First Amended Joint Chapter Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (including as it may be further amended), and any other versions, whether filed or unfiled, including drafts.[2].

28.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

29.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

30.     "Proposed Ad Hoc Group Plan" means the Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors dated April 27, 2011 [Docket No. 16315] (including as it may be further amended), and any other versions, whether filed or unfiled, including drafts.[3].

---

[2] Addition requested by the Group 1 Participants, excluding Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration), hereinafter referred to as the "Group 1 Requesting Participants."

[3] Addition requested by the Group 1 Requesting Participants.

31.    "Proposed Non-Consolidation Plan" means the Joint Chapter 11 Plan for

Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset

LLC and LB Preferred Somerset LLC Proposed by the Non-Consolidation Plan Proponents dated

April 25, 2011 [Docket No. 16229] (including as it may be further amended), and any other

versions, whether filed or unfiled, including drafts.[4]

32.    "RASCALS" means the process named **R**egulation and **A**dministration of

**S**afe **C**ustody **A**nd globa**L** **S**ettlement developed to minimize LBIE's perceived regulatory

capital charges.

33.    "T&Cs" means any Terms and Conditions or other document governing

the terms of services provided by LBIE or another Lehman Custodian Entity to a Custodial

Account Client, including, without limitation, for dealing in and arranging deals in investments

and entering into transactions on behalf of a Custodial Account Client.

34.    "Third-Party Custodial Account Clients" means the customers, clients and

other entities on whose behalf Lehman Custodian Entities received or held property or other

assets, whether for safe keeping, in connection with the provision of brokerage or similar

services or otherwise, other than Lehman Custodial Account Clients.

35.    "Transaction" means any business dealing, whether proposed,

contemplated or entered into, including [i] making or participating in a loan (secured or

unsecured, guaranteed or not) with, [ii] purchasing any securities of or making any investment

(equity or otherwise) in, [iii] entering into or participating in any real estate transaction or

venture (including a mortgage) with, [iv] entering into or participating in any partnership, limited

liability company, or joint venture with, [v] entering into or participating in any securitization

---

[4] Addition requested by the Group 1 Requesting Participants.

transaction offered or sponsored by, [vi] purchasing any instrument sponsored or cosponsored or securitized by, [vii] obtaining a guarantee or other security from, [viii] purchasing or selling any goods or services to or from, and [ix] engaging in any other type of financing or business relationship with any entities.

36.     "Transfer Provisions" means the provision in many Lehman Entity ISDAs permitting the Lehman Entity party thereto to transfer freely its rights and obligations to any other Lehman Entity.

37.     "Lehman's Treasury Team" means any employees of the Lehman Entities that worked in the Treasury group, including Paolo Tanucci, Robert Azerad, and HeidiMarie Echtermann.

38.     "You" and "your" means the Debtors' Affiliate set forth on Exhibit A that is responding to these Requests, including the Debtors' Affiliates' collective and individual special purpose or other investment vehicles, current and former affiliates, parents, subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on behalf of the Debtors' Affiliate for any purpose whatsoever.

39.     Reference to any entity including a corporation, limited liability company or limited or general partnership, includes (a) any predecessor-in-interest, successor, division, affiliate, or wholly- or partially-owned subsidiary of the entity specified, where applicable, and (b) any officer, shareholder, director, partner, agent, member, representative, employee or other person acting on behalf of the entity specified.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

**ADDITIONAL DEFINITIONS FROM CREDITORS' COMMITTEE**[5]

40.    "2008 LBIE Guaranty" means the document dated August 29, 2008, entitled "Guarantee of Lehman Brothers Holdings Inc."

41.    "Bankhaus Structured Notes" means the structured notes issued by LBB.

42.    "Client Monies Judgment" means the judgment by the English High Court on December 15, 2009 after LBIE "sought directions from the English High Court on how to deal with approximately $2 billion of 'client money' held by LBIE."  (See Debtors' Disclosure Statement at 76.)

43.    "Debtors' Disclosure Statement" means the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, dated January 25, 2011 [Docket No. 14151].[6]

44.    "Examiner's Report" means the report issued by Anton R. Valukas, in his role as examiner, on March 11, 2010.

45.    "IP PIK Note" means the note provided by Lehman ALI to LBI in exchange for the transfer of certain patents and trademarks from LBI to Lehman ALI on or around September 19, 2008.

46.    "Lehman ALI" means Lehman ALI Inc.

47.    "LBB" means Lehman Brothers Bankhaus AG.

---

[5] "Creditors' Committee" refers to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc., et al.

[6] Also requested by the following members of Group 9:  Michiel Gorsira and Robert F. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities N.V. (the "LBSN Co-Trustees"), and Rutger J. Shimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V. (the "LBT Co-Trustees").

48.     "LBHI Structured Notes" means structured notes issued by LBHI.[7]

49.     "LBI" means Lehman Brothers Inc.

50.     "LBIE" means Lehman Brothers International (Europe) (in administration).

51.     "LB Luxembourg" means Lehman Brothers (Luxembourg) S.A. and Lehman Brothers (Luxembourg) Equity Finance S.A.

52.     "LB Lux Guaranty" means the document dated August 24, 2000, entitled "Guarantee of Lehman Brothers Holdings Inc.," and addressed to Lehman Brothers (Luxembourg) S.A.

53.     "LB Lux Structured Securities" means the structured securities issued by Lehman Brothers (Luxembourg) Equity Finance S.A.

54.     "LBSN" means Lehman Brothers Securities N.V.

55.     "LBSN Certificates and Warrants" means certificates and warrants issued by LBSN.

56.     "LBT" means Lehman Brothers Treasury Co. B.V.

57.     "LBT Issued Notes" means structured notes issued by LBT.[8]

58.     "Participant" means any creditor, party in interest, or group of creditors or parties in interest that has fulfilled the requirements to participate in discovery in accordance with the Discovery Order.

59.     "Petition Date" means the moment that LBHI filed a petition for relief under chapter 11 of the Bankruptcy Code on September 15, 2008.

---

[7] Also requested by the following members of Group 9:  the LBSN Co-Trustees and LBT Co-Trustees.

[8] Also requested by the following members of Group 9:  the LBSN Co-Trustees and LBT Co-Trustees.

60.     "PIK Note" means the note provided by Lehman ALI to LBI in exchange for the transfer of the shares of certain entities from LBI to Lehman ALI on or around September 19, 2008.

61.     "Repo 105 Transaction" means any transaction entered into by a Lehman Entity of a type known within Lehman as "Repo 105," as described in the Examiner's Report.

62.     "Repurchase Agreement" means any repurchase agreement entered into by a Lehman Entity, including any form repurchase agreement published by the Bond Market Association.

63.     "S&P Guaranty" means the document dated January 4, 2008, entitled "Guarantee of Lehman Brothers Holdings Inc.," and addressed to Standard & Poor's Rating Services.

64.     "Structured Securities" means, collectively, the LB Finance Structured Securities, the LBT Issued Notes, the LBSN Certificates and Warrants, the LBHI Structured Notes, the Bankhaus Structured Notes, and the LB Lux Structured Securities.

**ADDITIONAL DEFINITION FROM GROUP 1 REQUESTING PARTICIPANTS**

65.     "Third Party" means any individual person or entity that does not fall within the definition of "You."

**ADDITIONAL DEFINITIONS FROM GROUP 7 PARTICIPANTS**

66.     "Asset Purchase Agreement" means that certain Asset Purchase Agreement by and among LBHI, LBI, LB 745 LLC, and Barclays dated September 16, 2008, attached as Exhibit A to Docket No. 280.

67.     "Clarification Letter" means the Clarification Letter and Agreement by and among Barclays, LBHI, LBI, and LB 745 LLC dated September 20, 2008, attached as Exhibit C to Docket No. 280.

12

68.     "Eagle Energy" means Eagle Energy Partners I, LP and/or Eagle Energy Management LLC, as well as its present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on its behalf.

69.     "First Amendment" means the First Amendment to the Asset Purchase Agreement by and among Barclays, LBHI, LBI, and LB 745 LLC dated September 19, 2008, attached as Exhibit B to Docket No. 280.

70.     "Gas Purchase Agreement" means that certain Agreement for Purchase and Sale of Natural Gas dated April 1, 2008 by and between LBCS and Main Street Natural Gas, Inc., a copy of which is attached as Exhibit A to Proof of Claim No. 30106.

71.     "LBCS" means Lehman Brothers Commodity Services Inc. and its direct and indirect subsidiaries including Eagle Energy, as well as their present and former officers, directors, agents, employees, representatives, successors and all other persons acting or purporting to act on their behalf.

72.     "Main Street Transaction" means the comprehensive business deal represented by the Gas Purchase Agreement and all other transactions entered in connection therewith.

73.     "Bankhaus Settlement" means the Plan Settlement Agreement as defined in the LBHI's Motion for Approval of Two Note Purchase Agreements with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz), dated March 2, 2011 [Docket No. 14743].

## II.     INSTRUCTIONS

1.     You are required to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any

proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

    2.  The use of electronic search terms supplied by the Debtors does not obviate, alter, or alleviate the requirement for You to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

    3.  These Requests shall be deemed to be continuing so as to require further and supplemental production in the event that additional responsive documents are discovered.

    4.  In accordance with paragraph 11 of the Order, if You withhold any Documents responsive to any of the Requests (except as provided in paragraphs 3(j) and 11(c) of the Order) on the grounds of privilege, work product, or any other type of protection or immunity from disclosure, You shall produce a privilege log, consistent with Federal Rule 26(b)(5), as incorporated by Bankruptcy Rules 7026 and 9014, that contains the following fields:

    a.  Document identification;

    b.  the Document date;

    c.  for e-mails, the subject field of the e-mail;

    d.  for attachments to emails and Documents (other than prior e-mails in the e-document), the Document name;

    e.  the name of each person to whom the Document was sent, including those blind copied or shown as copied, and whether or not any of the recipients, senders, or other addressees are attorneys (yes/no); and

    f.  the custodian of the Document.

If privilege, work product, or any other type of protection or immunity is asserted as to only a part of a Document, then the remainder of the Document shall be produced.

5.      If You object to any Request or part thereof, the objection shall be stated in accordance with the Bankruptcy Rules and the Federal Rules.

6.      In accordance with paragraph 5(k) of the Order, Documents shall be produced in electronic form.  Upon a showing of good cause, Documents that are not reasonably conducive to being cost-effectively produced in electronic form may be produced by other means, as set forth in the Order.

7.      Documents are to be organized and labeled to correspond with the categories of these Requests or are to be produced as they are kept in the usual course of business.  Any Documents which must be removed from their original folders, binders, covers or containers (collectively, "Containers") in order to be produced shall be identified in a manner so as to clearly specify where such Documents originated and with a copy of any title or reference on the Containers.

8.      Electronically stored Documents shall be produced in the electronic form set forth in Exhibit D to the Order:

        a.      *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

        b.      *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with Appendix 1 to Exhibit D of the Order.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

     c.    *Hard copy documents*.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

     d.    *TIFF Images Generally*.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  For instances in which the original file is in color and the color is necessary for interpretation of the document (charts, pictures, etc.), produce a medium quality JPEG in place of single page tiff file.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

     e.    *Shipment of electronic data*.  Electronic data productions may be transmitted electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or physically transported using electronic storage media such as, CDs, DVDs or hard drives.  The physical media label should contain the case name and number, production date, and bates range being produced.  Each transmission of data should include a collection "manifest" report which provides a list of files collected, their location, and their MD5 hash values.

9.     If more than one copy of a Document responsive to a Request exists, each non-identical copy of the Document shall be produced.

10.     No part of a Request shall be left unanswered or Documents not produced as called for therein merely because an objection (including as to privilege) is interposed to another part of the Request.

11.     These Requests are continuing in nature and You are obligated to provide any responsive Documents that come to Your attention subsequent to serving Your response to these Requests and/or producing any Documents, in accordance with Federal Rule 26(e).

12.     Unless otherwise stated, the period covered by these Requests is as follows:

DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES

a.   With respect to any Transaction that remained live (i.e., one or both parties to the Transaction had continuing obligations) as of January 1, ~~2005~~ 2007, the period covered is the genesis of that Transaction to the present.[9]

b.   With respect to any potential or realized Transaction with any Lehman Entity, or any Transaction that You considered entering into with any Lehman Entities, but declined to do so, the period covered is January 1, ~~2005~~ 2007, to the present.[10]

### III.   DOCUMENT REQUESTS TO DEBTORS' AFFILIATES

1.   All Documents and Communications concerning the following topics,

including documents or analyses [i] prepared by or for, or used internally, by You or [ii]

exchanged between, or circulated among, You and any third party:

a.   LBHI's assumption of, or support for any, contractual obligations of any other Lehman Entity, including expressions or indications of, or any person's belief as to, LBHI's willingness or unwillingness or likelihood to stand behind or make good upon, in whole or in part, any obligations of any other Lehman Entity, regardless of whether any obligations were assumed;

b.   the sharing of administrative expenses (including overhead, employee, management, accounting, taxes, cash management and other related expenses) by or among the Lehman Entities;

c.   the existence of any formal or informal, written or oral intercompany guarantees, promises, agreements, understandings, undertaking of any obligations, or pledges by or among any of the Lehman Entities;

d.   the transfer or sale of property, assets, or liabilities between and among any of the Lehman Entities;

e.   the transfer of funds or intercompany balances between and among any of the Lehman Entities;

---

[9] In their Preliminary Requests to the Debtors' Affiliates, the Debtors inadvertently inserted "2005" instead of "2007" in Instruction 12(a).  The modification corrects that error.

[10] In their Preliminary Requests to the Debtors' Affiliates, the Debtors inadvertently inserted "2005" instead of "2007" in Instruction 12(b).  The modification corrects that error.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

    f.      any Lehman Entities' employment of individuals and payments to employees;

    g.      capitalization of any of the Lehman Entities;

    h.      the ownership of property, assets, and liabilities by, between and among any Lehman Entities;

    i.      the existence of consolidated and unconsolidated financial statements for or among any Lehman Entities;

    j.      financial statements for any Lehman Entity other than LBHI;

    k.      the boards of directors, or any individual directors and/or officers, of any of the Lehman Entities;

    l.      the ownership, organizational structure, corporate governance, and method of business operation of any Lehman Entity;

    m.      the prepetition cash management system used by any of the Lehman Entities;

    n.      LBHI's or any other Lehman Entity's exercise of direct or indirect control over any other of the Lehman Entities, including whether or not any of the Lehman Entities were subject to direction from LBHI or any other Lehman Entity; and

    o.      the office locations and premises of any of the Lehman Entities.

2.      All Documents and Communications concerning whether You, or any other creditor of the Lehman Entities, dealt with any one or more of the Lehman Entities as a single economic unit in extending credit.

3.      All Documents and Communications concerning the following aspects for any potential or realized Transaction between You and any of the Lehman Entities:

    a.      any internal instructions, directions, policies, procedures, protocols, practices, manuals, other method of business practices or any changes thereto relating to (i) Your relationship, or any of Your Transactions, with the Lehman Entities; (ii) due diligence for and monitoring of; (iii) any contingency planning/risk analyses or risk management; (iv) Your reserves; (v) any charge-offs; (vi) any mark-to-market valuations; (vii) any write-downs; and (viii) any workouts, plans, analyses, restructuring, or forecasting as to any such Transactions;

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

        b.      Your decision whether or not to enter into any such Transaction with one or more of the Lehman Entities;

        c.      any credit committee, investment committee, or other group (or members thereof) charged with proposal of, review, approval, or monitoring of such Transactions; and

        d.      actual or potential recovery or rate of return for such Transactions.

4.      Subject to the restriction in Paragraph 3(j) of the Order, all Documents and Communications between and among You and any restructuring advisor, financial consultant or other consultant hired by, or that performed work for or advised, You concerning (i) substantive consolidation, including Entanglement and Creditor Reliance, or (ii) the Proposed Ad Hoc Group Plan, the Proposed Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.

5.      All Documents and Communications concerning any efforts undertaken by You to solicit support or to solicit votes in support of the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan.

6.      All Documents and Communications, including those exchanged with third parties, concerning the acceptance or rejection of the Plan, Proposed Ad Hoc Group Plan, or Proposed Non-Consolidation Plan.

7.      All Documents and Communications concerning any claims against, or interests in, the Debtors that You or any participant own or owned, including their value, when acquired, the amounts paid therefor, and any sales or dispositions thereof.

8.      All Documents and Communications concerning credit ratings, credit evaluations, or credit or risk reviews related to any Lehman Entity, including (a) credit reports of any one or more of the Lehman Entities or any security or other instrument issued by the

DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES

Lehman Entities, and (b) any periodic or special credit reviews for purposes of establishing

trading and/or transaction procedures between You and any Lehman Entity.

9.       All Documents and Communications prepared, sent, reviewed or received

by You concerning the financial status, solvency, or health of any of the Lehman Entities from

January 1, 2007 to the present.

10.       All Documents and Communications concerning the following:

a.       any formal or informal, written or oral, promise, guarantee,
agreement, understanding, undertaking of any obligation, or pledge
of LBHI to satisfy an obligation or liability of any other entity,
including with respect to asset values, collection, net worth or
similar agreements, regardless of whether the purported guarantee,
promise or pledge concerns any instrument, obligation, or claim
now or previously held by You;

b.       any request, or consideration whether to make a request, by You
for LBHI to provide such a guarantee, promise, agreement,
understanding, undertaking of any obligation, or pledge to satisfy
an obligation or liability of any other Lehman Entity in connection
with a Transaction; and

c.       the enforceability of any such guarantee, promise, agreement,
understanding, undertaking of any obligation, or pledge to satisfy
an obligation or liability of any other Lehman Entity in connection
with a Transaction.

11.       All Documents and Communications concerning any analysis, study, or

valuation done by or for You of any actual or potential purchase, sale, or transfer of a claim

against any of the Lehman Entities, including all Documents and Communications with or

concerning the original or prospective claimant or counterparty or its relationship with any of the

Lehman Entities.

12.       All Documents and Communications concerning any interviews of any

person concerning the conduct of the Lehman Entities prior to September 15, 2008, that were

conducted by or on behalf of You or of which You are aware.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

13.     All Documents and Communications concerning the intercompany balances or intercompany transactions, including as reflected in the publicly-filed statements of the Lehman Entities.

14.     All Documents and Communications concerning Your efforts to reconcile intercompany balances with any of the Lehman Entities, including:

> a.     all Documents and Communications related to the August 31, 2008 reconciliation; and
>
> b.     all Documents and Communications related to the Global Close.

15.     All Documents and Communications between You and any member of Lehman's Treasury Team regarding any Transaction that You considered or entered into with any Lehman Entity.

16.     All Documents and Communications concerning reliance on, or knowledge of, guarantees by LBHI in connection with the incurrence of any obligation from LBHI, including any board resolution.

17.     All Documents and Communications concerning any analysis, report, review, study, or other evaluation of Your assets, liabilities, and projected recoveries to creditors (both third-party and affiliate).

18.     All board and committee minutes, including any authorizations for Intercompany Transfers, and Documents and Communications concerning the same.

19.     All Documents and Communications sufficient to show the form of Your stationery, letterhead, and any other publicly-filed documents.

20.     All Documents and Communications concerning Your internal controls, policies, protocols, or practices concerning Your books and records.

21.    All Documents and Communications concerning Your organizational structure, including organizational charts, employee lists, and director/officer lists.

22.    All Documents and Communications concerning any prepetition audit conducted of You or of any of Your business units.

23.    All Documents and Communications, including instruments, concerning Intercompany Transfers, and all Documents and Communications evidencing maturity dates, schedules of payments, interest payments, and security interests granted in connection with such transfers.

24.    All Documents and Communications concerning repayment obligations in connection with Intercompany Transfers, including in respect of the terms of repayment obligations and a schedule of repayments made.

25.    All Documents and Communications concerning capitalization levels at the time of receipt of Intercompany Transfers.

26.    All Documents and Communications concerning contractual subordination of claims with respect to Intercompany Transfers, including subordination agreements entered into with any Lehman entity.

27.    All Documents and Communications concerning the use of Intercompany Transfers to fund the purchase of capital assets.

28.    All Documents and Communications concerning any Extended Lien or Extended Lien Collateral, including:

    a.    all Extended Lien Agreements, including, without limitation, any Extended Lien Agreement to which LBIE is a party;

    b.    all Custodial Agreements, including without limitation, any Custodial Agreement to which a Custodial Account Client or Lehman Custodian Entity is a party;

22

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

    c.       all Document and Communications sufficient to identify, with respect to each Lehman Custodial Account Client beneficially owning Extended Lien Collateral, the entities having or purported to have an Extended Lien or claim secured by an Extended Lien against such Extended Lien Collateral;

    d.       all records, accountings, estimates, or other valuations of any Extended Lien, including claims against or obligations of any Custodial Account Client in favor of a Lehman Custodian Entity of Lehman Affiliate Creditor;

    e.       all records, accountings, estimates, or other valuations of any property or other assets beneficially owned by the Lehman Entities that is or may be Extended Lien Collateral, including property or other assets held by any Lehman Entity;

    f.       all Documents and Communications concerning any analysis by You of any Extended Lien or Extended Lien Collateral, including, the existence and extent thereof;

    g.       all Documents and Communications concerning any actions taken or contemplated by You with respect to any Extended Liens held by any Lehman Entity;

    h.       all Documents and Communications concerning the inclusion of any Extended Lien in any Extended Lien Agreement, including any negotiations concerning such inclusion;

    i.       all Documents and Communications concerning knowledge, belief, or awareness of any Lehman Affiliate Creditor's interest in any Extended Lien granted or purported to be granted against Extended Lien Collateral beneficially owned by such Custodial Account Client;

    j.       all Documents and Communications concerning any Extended Lien Release Proposal, including with respect to any information sharing arrangement in connection therewith or negotiations with respect to any Extended Lien issue as a precursor to effecting an Extended Lien Release Proposal;

    k.       all Documents and Communications concerning any analysis by You of actions taken or contemplated by You or any Lehman Entity with respect to any Extended Liens held by the Lehman Entities; and

    l.       all Documents concerning and Communications with any Lehman Entity or third parties related to any Extended Liens.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

29.     The following Documents and Communications concerning the LBSF

Side Letter and/or RASCALS:

> a.     all Documents and Communications concerning the negotiation of the LBSF Side Letter;
>
> b.     all Documents and Communications concerning the purpose or intent of the LBSF Side Letter;
>
> c.     all Documents concerning and Communications between the Debtors and LBIE related to the LBSF Side Letter;
>
> d.     all Documents and Communications concerning the trading history between LBIE and LBSF in connection with the LBSF Side Letter;
>
> e.     all Documents and Communications concerning the operation and structure of the RASCALS process, including Documents and Communications that describe the role of the internal trading system in the RASCALS process;
>
> f.     all Documents and Communications concerning the purpose for which the RASCALS process was developed;
>
> g.     all intercompany agreements, including repurchase agreements, related to the RASCALS process; and
>
> h.     all Documents and Communications concerning the ownership rights of each Debtor in the securities involved in the RASCALS process.

30.     All Documents and Communications concerning any request by a

potential derivatives counterparty to enter into an ISDA-based transaction with a Lehman Entity

other than LBHI.

31.     All Documents and Communications concerning the intent, purpose, or

negotiation of Transfer Provisions in Lehman Entity ISDAs

**ADDITIONAL DOCUMENT REQUESTS FROM THE CREDITORS' COMMITTEE**

32.     All Documents and Communications concerning any settlement

discussions between You and the Debtors in connection with the Plan.

24

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

33.     All Documents and Communications concerning any agreement by You to support the Plan.

34.     All Documents and Communications concerning the operations and functions of Lehman Brothers Asia Holdings Limited.

35.     All Documents and Communications concerning any authorization provided by a Lehman Entity to LBI or LBIE to act as its agent in connection with prime brokerage agreements.

36.     All Documents and Communications, including certificates of incorporation, concerning the purpose or function for which Your entity was formed.

37.     All Documents and Communications concerning business plans implemented in connection with the restructuring of real estate loans or equity investments in real estate projects funded by the Debtors and their affiliates.

38.     Copies of all board resolutions.

39.     All Documents and Communications reflecting any board member requirements, including documents that describe the annual election process and documents that identify any requirement that You maintain a certain number of independent officers and directors.

40.     Example(s) of business cards for employees.

41.     Example(s) of paychecks provided to employees.

42.     All Documents and Communications concerning any complaints or concerns raised by employees regarding internal accounting or book-keeping processes, including documents concerning any response to such complaints or concerns.

DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES

43.    All Documents and Communications concerning any allegation that one or more Lehman Entities was an alter ego or mere instrumentality of another Lehman Entity.

44.    All Documents and Communications concerning any attempt to "pierce the corporate veil" of a Lehman Entity.

45.    All Documents and Communications concerning questions or other information requests by Lehman creditors, clients, or counterparties regarding the credit risk associated with a particular Lehman Entity other than LBHI, including any request for such entity's credit rating.

46.    All advertisements, press releases, or other marketing materials provided by You to current or potential creditors, clients, or counterparties.

47.    All Documents and Communications concerning any transfer or shifting of books of derivatives contracts from one Lehman Entity to another pursuant to the Transfer Provisions.

48.    All Documents and Communications concerning the inclusion in quarterly company overviews of a Lehman Entity's status as an affiliate purportedly guaranteed by LBHI, including all Documents and Communications relating to the dissemination of such quarterly company overviews to Lehman Entities.

49.    All Documents and Communications concerning the process by which a Lehman Entity or a third-party counterparty could request a guaranty from LBHI for a specific transaction.

50.    All Documents and Communications concerning any Repurchase Agreement, oral or written, between You and another Lehman entity.

51.     All Documents and Communications concerning any Repo 105

Transaction, oral or written, between You and any third party or any other Lehman Entity.

52.     All Documents and Communications related to any legal opinion obtained

by a Lehman Entity in connection with a Repo 105 Transaction, including the Linklaters true

sale opinion letter, as described in the Examiner's Report, or any similar true sale opinion letter.

53.     All Documents You intend to rely upon at the confirmation hearing.

**ADDITIONAL DOCUMENT REQUESTS**
**FROM GROUP 1 REQUESTING PARTICIPANTS**

54.     All Documents and Communications concerning the following topics,

including documents or analyses [i] prepared by or for, or used internally, by You or [ii]

exchanged between, or circulated among, any one or more of, You and any third party:

       a.     substantive consolidation of any Lehman entity.

55.     All presentations concerning any Lehman Entity, whether prepared by

You or any Third Party.

56.     All analyses, including variations, received from the Debtors concerning

any Lehman entity.

57.     All communications between You and any Third Party concerning the

Plan, the Proposed Ad Hoc Group Plan, or the Proposed Non-Consolidation Plan or any other

plan of reorganization for any Lehman entity.

58.     All communications between You and any regulator concerning Lehman.

59.     All ISDAs to which any Lehman entity is a party.

**ADDITIONAL DOCUMENT REQUESTS FROM GROUP 3 PARTICIPANTS**

60.    All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to board resolution.[11]

61.    All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[12]

62.    All Documents and Communications concerning the enforceability of guarantees by LBHI of obligations of LBIE on account of derivative transactions.[13]

63.    All Documents evidencing that creditors of LBIE had knowledge of a guarantee by LBHI of any obligation of LBIE when entering into derivative transactions.[14]

64.    Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to board resolution.[15]

65.    Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[16]

66.    Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to a guarantee agreement entered into in connection with a specific transaction.[17]

---

[11]  Requested by the following members of Group 3:  CarVal Investors UK Limited ("CarVal"), Bundesverband deutscher Banken e.V. ("BdB"), Diamondback Master Fund, Ltd. ("Diamondback"), Elliott Associates, L.P. ("Elliott").

[12]  Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[13]  Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[14]  Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[15]  Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[16]  Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

67.     All Documents concerning whether creditors that entered into derivative transactions with LBIE that were guaranteed by LBHI were express and/or intended beneficiaries of such guarantees.[18]

68.     All Documents and Communications concerning defenses that the Debtors have to the enforceability of guarantees by LBHI of derivative transactions where LBIE or another affiliate of LBHI was the primary obligor.[19]

69.     All documents relating to whether any person or entity was intended to be a third party beneficiary of any guaranty issued by any Lehman entity of a liability of LBB.[20]

70.     All Documents and Communications concerning any request, or consideration whether to make a request, for the Debtors or their affiliates to provide a guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any Debtor or its affiliates.[21]

71.     All documents of communications in which a creditor or other entity referred to LBHI as the obligor with respect to an invoice or other similar document directed to LBB.[22]

72.     All documents or communications in which LBHI referred to itself as the obligor with respect to any obligation owed by LBB.[23]

---

[17] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[18] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[19] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[20] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[21] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[22] Requested by the following members of Group 3:  BdB and Elliot.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

73.     All Documents and Communications concerning the length of time it may take for a final determination to be reached through litigation concerning the issue of whether the estates of the Debtors and their affiliates should be substantively consolidated.[24]

74.     All Documents and Communications concerning the range of potential outcomes that may result from litigation concerning the substantive consolidation of the Debtors and their affiliates.[25]

75.     All Documents and Communications considering whether LBIE could be substantively consolidated with any of the Debtors or their affiliates.[26]

76.     All organizational charts concerning the Debtors and their affiliates.[27]

77.     All Documents concerning allegations by creditors of the Debtors or their affiliates that they relied on the corporate separateness of LBHI and its operating affiliates.[28]

78.     Documents sufficient to show business expenses (including but not limited to overhead, employee, management, accounting, taxes, cash management and other related expenses) paid for (i) by LBIE or (ii) by any of the Debtors or their affiliates on behalf of LBIE.[29]

---

[23] Requested by the following members of Group 3:  BdB and Elliot.

[24] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[25] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[26] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[27] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[28] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[29] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

79.    Documents sufficient to demonstrate that the Debtors and their affiliates maintained separate books and records.[30]

80.    All Documents and Communications concerning any inaccuracies contained in the books and records of the Debtors or their affiliates.[31]

81.    Any and all Documents concerning the accounting of intercompany transactions and obligations of the Debtors and their affiliates.[32]

82.    All leases entered into by LBIE that were in effect at any time between January 1, 2007 and the present.[33]

83.    All tax returns filed by LBIE.[34]

84.    Documents sufficient to show whether any Lehman Entity tax returns were filed on a joint or consolidated basis.[35]

85.    All Documents concerning the reliance of creditors who transacted business with LBIE on (a) the separate identity of LBIE from the Debtors and any of their affiliates or (b) the separate credit of LBIE from the Debtors and any of their affiliates.[36]

---

[30] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[31] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[32] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[33] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[34] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[35] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[36] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

86.     All Documents and Communications concerning due diligence conducted by any creditors of the Debtors or any of their affiliates on the credit risk of the Debtors or any of their affiliates.[37]

87.     All Documents and Communications concerning whether affiliates of LBHI were responsible for any financial obligations of LBHI.[38]

88.     All Documents and Communications evidencing that any creditor was provided with and/or had access to LBIE's financial statements.[39]

89.     Documents sufficient to show the net capital requirements under which LBIE operated.[40]

90.     Documents sufficient to show the net capital maintained by LBIE.[41]

91.     All (a) board meeting minutes for LBIE and (b) resolutions passed by the board of directors of LBIE.[42]

92.     All Documents and Communications concerning the Debtors' solicitation of the views and/or recommendations of the Debtors' Affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates regarding the terms of the Plan.[43]

---

[37] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[38] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[39] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[40] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[41] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[42] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[43] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

93.    All Documents and Communications concerning the views and/or recommendations of the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates regarding the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[44]

94.    All Documents and Communications concerning negotiations between or among the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates concerning the terms of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[45]

95.    All Documents and Communications concerning discussions between or among the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates concerning the terms of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[46]

96.    All Documents and Communications concerning the efforts undertaken by the Debtors or their affiliates, the Creditors' Committee, or any creditor of the Debtors or their affiliates to solicit support or to solicit votes in support of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[47]

---

[44] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[45] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[46] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[47] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

97.     All Documents and Communications concerning the efforts undertaken by the Debtors or their affiliates to solicit support or to solicit votes in support of any plan of reorganization in the chapter 11 cases.[48]

98.     All Documents and Communications concerning the acceptance or rejection of the Proposed Ad Hoc Group Plan, the Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.[49]

99.     All Documents and Communications concerning the estimated litigation cost savings to the Debtors' estates resulting from confirmation of the Plan.[50]

100.     All Documents and Communications concerning the estimated time savings to the Debtors' estates resulting from confirmation of the Plan.[51]

101.     All documents or communications concerning the Debtors' decision to amend the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors dated April 14, 2010 (the "April 14, 2010 Plan").[52]

102.     All documents concerning communications between and among the Debtors and their affiliates, the Creditors' Committee, the Ad Hoc Group, or any creditor of the Debtors or their affiliates regarding the amendment of the April 14, 2010 Plan.[53]

---

[48] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[49] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[50] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[51] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[52] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[53] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

103. All documents or communications concerning the amendment of the April 14, 2010 Plan.[54]

104. All documents or communications concerning the classification of claims in Classes 7A-7R (Third-Party Guarantee Claims) in the April 14, 2010 Plan.[55]

105. All documents or communications concerning the proposed distribution of Pro Rata Share of Available Cash from LBHI on account of claims in (i) Class 3 (Senior Unsecured Claims Against LBHI) and (ii) Classes 7A-7R (Third-Party Guarantee Claims) in the April 14, 2010 Plan.[56]

**ADDITIONAL DOCUMENT REQUESTS FROM GROUP 9 PARTICIPANTS**

106. All Documents and Communications concerning any intercompany agreements among or between LBF and any Lehman Entity, including without limitation concerning the performance or valuation of any obligations thereunder.[57]

107. All management and employment agreements related to executive officers, managers and employees of LBF, including without limitation change-in-control and parachute contracts, voting and co-sale agreements, and other agreements relating to LBF's governance and control.[58]

---

[54] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[55] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[56] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[57] Requested by the following members of Group 9:  Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG ("PwC").

[58] Requested by the following members of Group 9:  PwC.

108.    All documents, information and communications related to any intercompany agreements among or between either LBT or LBSN and any Lehman Entity, and the performance or valuation of any obligations thereunder.[59]

109.    All documents, information and communications related to any intercompany balances, including without limitation derivative and funding transactions, owed to, or owed by, either LBT or LBSN.[60]

110.    All documents, information and communications related to the LBT Issued Notes, including without limitation those related to: (i) marketing materials, including without limitation brochures, prospectuses and memoranda; (ii) broker, dealer or arranger agreements; (iii) calculation agent agreements; (iv) draft and final terms of the LBT Issued Notes and any program documentation; (v) valuation of the LBT Issued Notes; and (vi) any tax or other legal opinions, advices or analyses relating to the LBT Issued Notes.[61]

111.    All documents, information and communications related to the LBSN Certificates and Warrants, including without limitation those related to: (i) marketing materials, including without limitation brochures, prospectuses and memoranda; (ii) broker, dealer or arranger agreements; (iii) calculation agent agreements; (iv) draft and final terms of the LBSN Certificates and Warrants and any program documentation; (v) valuation of the LBSN

---

[59] Requested by the following members of Group 9:  Michiel Gorsira and Robert V. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities, N.V., ("LBSN Trustees") and Rutger J. Shimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V. ("LBT Trustees").

[60] Requested by the following members of Group 9:  LBSN Trustees and LBT Trustees.

[61] Requested by the following members of Group 9:  LBT Trustees.

Certificates and Warrants; and (vi) any tax or other legal opinions, advices or analyses relating to the LBSN Certificates and Warrants.[62]

112.    All documents, information and communications related to the hedging of the LBT Issued Notes, including without limitation any hedging, swap or ISDA documentation or risk transfer agreements.[63]

113.    All documents, information and communications related to the hedging of the LBSN Certificates and Warrants, including without limitation any hedging, swap or ISDA documentation or risk transfer agreements.[64]

114.    All documents, information and communications concerning the clearing or settlement of the LBT Issued Notes.[65]

115.    All documents, information and communications concerning the clearing or settlement of the LBSN Certificates and Warrants, including without limitation such clearing or settlement through the following entities or their affiliates or subsidiaries: Euroclear, Clearstream, Depository Trust Company, Bank of New York Mellon, Lehman and the national based clearing houses in Norway, Sweden and Switzerland.[66]

116.    All documents, information and communications concerning the custody, depository or comparable service of either the LBT Issued Notes or LBSN Certificates and

---

[62] Requested by the following members of Group 9:  LBSN Trustees.

[63] Requested by the following members of Group 9:  LBT Trustees.

[64] Requested by the following members of Group 9:  LBSN Trustees.

[65] Requested by the following members of Group 9:  LBT Trustees.

[66] Requested by the following members of Group 9:  LBSN Trustees.

DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES

Warrants, including without limitation in bearer form of global note form or any other form or

entitlement (including without limitation direct rights).[67]

117.    All management and employment agreements with any Lehman Entity

related to executive officers, managers or employees of LBT or LBSN, including without

limitation change-in-control and parachute contracts, voting and co-sale agreements, and other

agreements related to LBT or LBSN's governance and control.[68]

118.    All minutes of any meetings, and all board and shareholder resolutions, of

Lehman Brothers UK Holdings (Delaware) Inc. acting in its capacity as shareholder of LBT, or

of any other Lehman Entity acting in such a capacity.[69]

119.    All minutes of any meetings, and all board and shareholder resolutions, of

Lehman Brothers Asia Holdings Ltd. acting in its capacity as shareholder of LBSN, or of any

other Lehman Entity acting in such a capacity.[70]

### ADDITIONAL DOCUMENT REQUESTS SOLELY TO
### JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LBI
### FROM THE CREDITORS' COMMITTEE

120.    All Documents and Communications concerning the September 19, 2008

transfer from LBI to Lehman ALI of all of LBI's interests in the shares of the subsidiaries

identified on page 41 of the Debtors' Disclosure Statement.  (See Debtors' Disclosure Statement

at 41.)

---

[67] Requested by the following members of Group 9:  LBSN Trustees and LBT Trustees.

[68] Requested by the following members of Group 9:  LBSN Trustees and LBT Trustees.

[69] Requested by the following members of Group 9:  LBT Trustees.

[70] Requested by the following members of Group 9:  LBSN Trustees.

121.    All Documents and Communications concerning the fair market value of the shares of the subsidiaries as of September 19, 2008, including all documents concerning the means by which fair market value of the shares of the subsidiaries was to be calculated under the PIK Note.

122.    All Documents and Communications concerning the September 19, 2008 transfer from LBI to Lehman ALI of certain patents and trademarks that were owned by LBI.

123.    All Documents and Communications concerning the fair market value of the transferred intellectual property as of September 19, 2008, including all documents concerning how such intellectual property was to be valued under the IP PIK Note.

## FROM GROUP 7 PARTICIPANTS

124.    All documents, including but not limited to live electronic systems, including live general ledgers, related to and supporting the $2.434 billion LBCS receivable from LBI, and any adjustments to and/or any contemplated reductions thereof.

125.    All documents concerning any securities and other transfers from LBCS to LBI or liquidation of LBCS's securities or other trades held by LBI on behalf of LBCS from LBCS's formation to present, including all account statements for LBCS accounts at LBI.

126.    All documents concerning any subordination agreements between LBI and LBCS.

127.    Documents sufficient to identify all of the cash collateral posted by LBCS in connection with transactions entered through LBI, from LBCS's formation to the present.

128.    All documents sufficient to explain the treatment of the LBCS claim against LBI.

129.    All documents concerning LBI accounts held in the name of the parties to the Main Street Transaction, regardless of whether such accounts were shared with other

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

affiliates or entities or maintained separately, including information concerning the types of

securities held in these accounts and all account(s) activity.

130.    All documents provided to or considered by the board of directors of LBI

or any committee or subcommittee thereof concerning the Asset Purchase Agreement, the First

Amendment, the Clarification Letter, and/or the decision to exclude the assets of Eagle Energy

and LBCS from the Asset Purchase Agreement.

131.    All communications between LBI and creditors of LBCS concerning any

sales of LBCS's assets including bulk asset sales.

132.    All documents sufficient to explain the treatment of the LBCS claim

against LBI

133.    All documents sufficient to explain the estimated recovery for the LBCS

claim against LBI.

134.    Documents sufficient to identify the futures commission merchant(s) that

cleared domestic exchange traded securities (including, but not limited to commodities, futures

and options contracts) for LBCS, from LBCS's formation to the present.

135.    Documents sufficient to identify the distinction between the "LBI's

commodities business", as described on page 42 of the Debtors' Disclosure Statement, and the

"Lehman's...commodity and energy derivative's product business . . . conducted through LBCS",

as described on page 52 of the Debtors' Disclosure Statement. Documents responsive to this

request should indicate what proportion of "LBI's commodities business" was transacted through

LBCS.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

**ADDITIONAL DOCUMENT REQUESTS SOLELY TO LBIE**

**FROM THE CREDITORS' COMMITTEE**

136.     All Documents and Communications concerning any valuations or estimates of potential payment by LBIE to the Debtors on account of client monies in connection with the Client Monies Judgment.

137.     All Documents and Communications concerning the issuance by LBHI of the S&P Guaranty, including:

        a.     Documents and Communications concerning any request by LBIE for LBHI to provide the S&P Guaranty;

        b.     Documents and Communications concerning the intended third-party beneficiaries of the S&P Guaranty;

        c.     Documents and Communications concerning whether Lehman Entities were intended to be third-party beneficiaries of the S&P Guaranty;

        d.     Documents and Communications concerning the disclosure of the S&P Guaranty to Lehman Entities and third-party counterparties;

        e.     Documents and Communications concerning any value LBHI received in exchange for issuing the S&P Guaranty; and

        f.     Documents and Communications concerning whether any beneficiary of the S&P Guaranty had knowledge of the S&P Guaranty and relied on it when extending credit to or transacting business with LBIE.

138.     All Documents and Communications concerning the issuance by LBHI of the 2008 LBIE Guaranty, including:

        a.     Documents and Communications concerning any request by LBIE for LBHI to provide the 2008 LBIE Guaranty;

        b.     Documents and Communications concerning the intended third-party beneficiaries of the 2008 LBIE Guaranty;

        c.     Documents and Communications concerning whether Lehman Entities were intended beneficiaries of the 2008 LBIE Guaranty;

> d.      Documents and Communications concerning the disclosure of the 2008 LBIE Guaranty to Lehman Entities and third-party counterparties;
>
> e.      Documents and Communications concerning any value LBHI received in exchange for issuing the 2008 LBIE Guaranty; and
>
> f.      Documents and Communications concerning whether any beneficiary of the 2008 LBIE Guaranty had knowledge of the 2008 LBIE Guaranty and relied on it when extending credit to or transacting business with LBIE.

139.    All Documents and Communications concerning the negotiation and drafting of the following sentence of the S&P Guaranty:  "We shall have no right of subrogation with respect to any payments we make under this Guarantee in connection with a Borrower Agreement until all Guaranteed Obligations of Affiliate under that Borrower Agreement are paid in full."

140.    All Documents and Communications concerning the negotiation and drafting of the following sentence of the 2008 LBIE Guaranty:  "We shall have no right of subrogation with respect to any payments we make under this Guarantee in connection with a Borrower Agreement until all Guaranteed Obligations of Affiliate under that Borrower Agreement are paid in full."

141.    All Documents and Communications concerning the adoption by Shearson Lehman Brothers Holdings Inc. of the LBIL Resolutions, including:

> a.      Documents and Communications concerning whether affiliates of Shearson Lehman Brothers Holdings Inc. were intended beneficiaries of the LBIL Resolutions; and
>
> b.      Documents and Communications concerning the disclosure of the LBIL Resolutions to Lehman affiliates and third-party counterparties.

42

142.    All Documents and Communications necessary to show whether LBIE issued derivative products for its own benefit or transferred the proceeds of such issuances to LBHI or any other entity.

143.    Copies of all powers of attorney issued by LBIE.

144.    All Documents and Communications necessary to identify (i) the recipients of proceeds generated by the sale of Structured Securities, as well as the corresponding bank accounts into which such proceeds were deposited; and (ii) all investments made by LBIE with such proceeds.

145.    All Communications between You and the Debtors concerning Structured Securities.

146.    All Documents and Communications concerning the accounting treatment of Structured Securities prior to the Petition Date.

147.    All Documents and Communications concerning derivatives or other securities (including intercompany derivatives) used to hedge Structured Securities, including any valuation of such securities.

## FROM GROUP 7 PARTICIPANTS

148.    All documents, including but not limited to live general ledgers and other electronic systems, related to and supporting the $279 million LBCS receivable from LBIE, and any adjustments to and/or any contemplated reductions thereof.

149.    Documents sufficient to identify all of the cash collateral posted by LBCS in connection with transactions entered through LBIE, from LBCS's formation to the present.

150.    All documents sufficient to explain the treatment of the LBCS claim against LBIE.

DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES

151.    All documents sufficient to explain the estimated recovery for the LBCS claim against LBIE.

## ADDITIONAL DOCUMENT REQUESTS
## FROM THE CREDITORS' COMMITTEE SOLELY TO
## MICHIEL GORSIRA, AS BANKRUPTCY TRUSTEE FOR LBSNV

152.    Copies of all material contracts between LBSN and any contractor or subcontractor, laborer, artisan, materialman, tradesman, or supplier.

153.    All Documents and Communications necessary to show whether LBSN issued derivative products for its own benefit or transferred the proceeds of such issuances to LBHI or any other entity.

154.    Copies of all reports and other Communications to shareholders or creditors of LBSN.

155.    Copies of all powers of attorney issued by LBSN.

156.    All Documents and Communications necessary to identify (i) the recipients of proceeds generated by the sale of Structured Securities, as well as the corresponding bank accounts into which such proceeds were deposited; and (ii) all investments made by LBSN with such proceeds.

157.    All Communications between You and the Debtors concerning Structured Securities.

158.    Copies of all notes or other agreements that form the basis for Structured Securities issued by LBSN.

159.    Copies of all registration documents, prospectuses, offering memoranda, or other Documents issued to investors in connection with Structured Securities issued by LBSN.

160.    All Documents and Communications, including schedules, sufficient to identify the maturities of the Structured Securities.

161.    All Documents and Communications concerning the accounting treatment of Structured Securities prior to the Petition Date.

162.    All Documents and Communications concerning derivatives or other securities (including intercompany derivatives) used to hedge the Structured Securities, including any valuation of such securities.

163.    All Documents and Communications concerning the provision in the documentation underlying certain structured note programs entitled "Assumption of Obligations," such as in the Base Prospectus issued by LBHI, LBT, and LBB for the Euro Medium-Term Note Program, dated July 24, 2008.

## ADDITIONAL DOCUMENT REQUESTS FROM THE CREDITORS' COMMITTEE SOLELY TO THE LBT TRUSTEES

164.    Copies of all material contracts between LBT and any contractor or subcontractor, laborer, artisan, materialman, tradesman, or supplier.

165.    All Documents and Communications necessary to show whether LBT issued derivative products for its own benefit or transferred the proceeds of such issuances to LBHI or any other entity.

166.    Copies of all reports and other Communications to shareholders or creditors of LBT.

167.    Copies of all powers of attorney issued by LBT.

168.    All Documents and Communications necessary to identify (i) the recipients of proceeds generated by the sale of Structured Securities, as well as the corresponding bank accounts into which such proceeds were deposited; and (ii) all investments made by LBT with such proceeds.

169.     All Communications between You and the Debtors concerning Structured Securities.

170.     Copies of all notes or other agreements that form the basis for Structured Securities issued by LBT.

171.     Copies of all registration documents, prospectuses, offering memoranda, or other Documents issued to investors in connection with Structured Securities issued by LBT.

172.     All Documents and Communications, including schedules, sufficient to identify the maturities of the Structured Securities.

173.     All Documents and Communications concerning the accounting treatment of Structured Securities prior to the Petition Date.

174.     All Documents and Communications concerning derivatives or other securities (including intercompany derivatives) used to hedge the Structured Securities, including any valuation of such securities.

175.     All Documents and Communications concerning the provision in the documentation underlying certain structured note programs entitled "Assumption of Obligations," such as in the Base Prospectus issued by LBHI, LBT, and LBB for the Euro Medium-Term Note Program, dated July 24, 2008.

## ADDITIONAL DOCUMENT REQUESTS FROM THE
## CREDITORS' COMMITTEE SOLELY TO LB LUXEMBOURG

176.     All Documents and Communications concerning the issuance by LBHI of the LB Lux Guaranty, including the following:

> a.     Documents and Communications concerning any request by LB Luxembourg for LBHI to provide the LB Lux Guaranty;
>
> b.     Documents and Communications concerning any value LB Luxembourg provided to LBHI in exchange for LBHI's issuance of the LB Lux Guaranty;

46

      c.      Documents and Communications concerning whether other Lehman Entities were intended beneficiaries of the LB Lux Guaranty;

      d.      Documents and Communications concerning the disclosure of the LB Lux Guaranty to Lehman Entities and third-party counterparties; and

      e.      Documents and Communications concerning whether any Lehman Entity or third-party counterparty had knowledge of the LB Lux Guaranty and relied on it when extending credit to or transacting business with LB Luxembourg.

177.    All Documents and Communications concerning the negotiation and drafting of the following sentence of the LB Lux Guaranty:  "We shall have no right of subrogation with respect to any payments we make under this Guarantee until all Obligations are paid in full."

## ADDITIONAL DOCUMENT REQUESTS SOLELY TO LBB FROM GROUP 3 PARTICIPANTS

178.    Documents and Communications Concerning reports of the auditors on the auditing of the annual accounts (Berichte des Abschlussprüfers über die Prüfung des Jahresabschlusses) and on the consolidated accounts (Konzernabschluss), including but not limited to audit reports regarding lending business (Kreditprüfungsberichte), reports on the reporting duties and rules of conduct (Berichte über die Prüfung von Meldepflichten und Verhaltensregeln) and, on securities custody audits pursuant to Section 36 of WpHG, and regular audits in the field of the combat and prevention of money laundering, terrorism financing, and fraud pursuant to the GwG and Sections 25b et seq. of KWG.[71]

179.    Annual business reports (Geschäftsberichte).[72]

---

[71] Requested by the following members of Group 3:  BdB and Elliott.

[72] Requested by the following members of Group 3:  BdB and Elliott.

180.    Articles of association (Satzung(en)), rules of procedure of the supervisory board (Geschäftsordnung(en) für den Aufsichtsrat) and rules of procedure of the management board (Geschäftsordnung(en) für den Vorstand) of LBB, in operation during the relevant time period, including the allocation of responsibilities for the single businesses and internal departments (Geschäftsverteilungsplan(pläne)).[73]

181.    Minutes of the meetings of the management board (Protokolle der Vorstandssitzungen) and, as applicable, of management committees (e.g. treasury committee, asset/liability management committee).[74]

182.    Minutes of the meetings of the supervisory board (Protokolle über die Sitzungen des Aufsichtsrates) and of sub-committees of the supervisory board (Aufsichtsratssausschüsse) within the meaning of Section 107 (3) of AktG.[75]

183.    Minutes of the general assembly of stockholders (Hauptversammlungsprotokolle).[76]

184.    Itemization and amounts of all regulatory capital components (tier–I capital (Kernkapital), tier– II capital (Ergänzungskapital), and tier-III capital (Drittrangmittel)), and designation of all bank-accounts (including, but not limited to the name of the holder(s) of these accounts, the credit institutions with whom these accounts are kept, and the relevant

---

[73] Requested by the following members of Group 3:  BdB and Elliott.

[74] Requested by the following members of Group 3:  BdB and Elliott.

[75] Requested by the following members of Group 3:  BdB and Elliott.

[76] Requested by the following members of Group 3:  BdB and Elliott.

jurisdictions where these accounts are located), on which cash components of the regulatory

capital of LBB were paid.[77]

185.    All Documents and Communications Concerning the implementation of a

risk monitoring system that allows for daily balance sheet reporting in accordance with Section

25a of KWG.[78]

186.    All Documents, including but not limited to resolutions, directives,

internal guidelines, and other documentation, Concerning the organisation, the responsibilities

and the procedures of LBB's treasury department, and the asset/liability management.[79]

187.    All Documents and Communications Concerning bank regulatory filings

with Bundesanstalt für Finanzdienstleistungsaufsicht ("BaFin") and Deutsche Bundesbank

("BuBa"), Board & Committee Materials, Dependency Reports (Abhängigkeitsberichte) within

the meaning of Section 312 of the German Stock Corporation Act (Aktiengesetz; "AktG"), if

applicable, Control Agreements (Beherrschungsverträge) and Profit-and-Loss-Transfer

Agreements (Gewinnabführungsverträge) within the meaning of Section 291 of AktG and other

agreements within the meaning of Section 292 AktG, if applicable.[80]

188.    All llicenses, permits, authorizations and clearance letters in operation

during the relevant time period, as granted to LBB by governmental authorities of the Federal

Republic of Germany, states of the Federal Republic of Germany, or German local

municipalities or any political sub-division thereof, including but not limited to licenses pursuant

---

[77] Requested by the following members of Group 3:  BdB and Elliott.

[78] Requested by the following members of Group 3:  BdB and Elliott.

[79] Requested by the following members of Group 3:  BdB and Elliott.

[80] Requested by the following members of Group 3:  BdB and Elliott.

to Section 32 (1) of the German Banking Act (Kreditwesengesetz; "KWG"), loan broking and

other activities pursuant to Section 34c of the German Trade Code (Gewerbeordnung; "GewO"),

or insurance broking pursuant to Section 34d of GewO.[81]

        189.    All Documents and Communications concerning ordinary (periodic) and

extraordinary (ad hoc) regulatory notices and filings which LBB submitted to BaFin or its

predecessor Bundesaufsichtsamt für das Kreditwesen ("BAKred") and the competent central

administration (Hauptverwaltung) of the BuBa, including but not limited to:[82]

    a.    extraordinary (ad hoc) notices submitted to the former BAKred, its successor BaFin, and the BuBa pursuant to Section 24 of KWG and the Securities Trading Act (Wertpapierhandelsgesetz; "WpHG"),

    b.    notices to BAKred, the BaFin, or the BuBa regarding the outsourcing or migration of functions related to banking business or financial services by LBB to LBHI, other affiliates or unrelated third parties pursuant to former Section 25a (2) of KWG and former Section 33 (2) of WpHG,

    c.    service-level agreements, service agreements and other contracts regarding the outsourcing or migration of functions related to banking business or financial services by LBB to LBHI, other affiliates or unrelated third parties pursuant to Section 25a (2) KWG and Section 33 (2) of WpHG,

    d.    monthly returns (Monatsausweise) and monthly balance sheet statistics notices (Monatliche Bilanzstatistik-Meldungen),

    e.    risk reports (Risikoberichte),

    f.    reports Concerning on-site audits and inspections ordered and/or conducted by the BaFin or the BAKred pursuant to Sections 44 et seq. of KWG and Section 35 of WpHG, as well as other special audit and inspection reports, including special audit reports (Sonderprüfungsberichte) pursuant to Section 142 et seq. of AktG and special reports on tax audits carried out under the German Tax

---

[81] Requested by the following members of Group 3:  BdB and Elliott.

[82] Requested by the following members of Group 3:  BdB and Elliott.

Code (Abgabenordnung) and reports on internal and external audits or inspections in the field of the combat and prevention of money laundering, terrorism financing and fraud pursuant to the German Money Laundering Act (Geldwäschegesetz; "GwG") and Sections 25b et seq. of KWG,

g.   reports Concerning on-site audits or inspections ordered and carried out by or on behalf of the New York State Banking Department, the U.S. Securities and Exchange Commission, the Federal Reserve Board, any other U.S. federal governmental authority or body or governmental authority or body of a state of the U.S. or any political sub-divison thereof Concerning LBB's head office in Frankfurt or its branch offices in London, Milan or Seoul, South Korea,

h.   management information reports,

i.   monthly and quarterly capital adequacy and liquidity reports pursuant to Principle I and Principle II of the former Principles on Regulatory Capital and Liquidity of Credit Institutions (Grundsätze über Eigenkapital und Liquidität der Kreditinstitute) and the Solvency Regulation (Solvabilitätsverordnung) and the Liquidity Regulation (Liquiditätsverordnung),

j.   filings and notices with the former BAKred, the BaFin and the BuBa Concerning large credits (Großkredite) within the meaning of Sections 13 and 13a of KWG and related-party credits (Organkredite) within the meaning of Section 15 of KWG, and

k.   internal audit reports.

190.   Bank regulatory filings during the relevant time period of LBHI and LBB with the BAKred, the BaFin, and the BuBa, in particular filings in connection with (i) the application to obtain a banking license pursuant to Section 32 (1) of KWG, (ii) so-called holder control procedures (Inhaberkontrollverfahren) pursuant to former Section 2b of KWG or current Section 2c of KWG, (iii) the so-called European passport privilege pursuant to Section 24a of KWG (in particular Concerning LBB's bank branches in London and Milan), (iv) the combat and prevention of money laundering, terrorism financing and fraud pursuant to the GwG and

Sections 25b et seq. of KWG, and (v) the establishment of a bank branch of LBB in Seoul, South Korea.[83]

191.    All other Communications, between LBHI and/or LBB and the BaKred, the BaFin, and the BuBa as well as vice versa, including but not limited to orders and formal notifications.[84]

## FROM GROUP 7 PARTICIPANTS

192.    All documents, including but not limited to live general ledgers and other electronic systems, related to and supporting the $299 million LBCS receivable from LBB.

193.    All documents sufficient to explain the treatment of the LBCS claim against LBB.

194.    All documents sufficient to explain the reduction in the LBCS claim against LBB as contemplated by the Bankhaus Settlement.

195.    All documents sufficient to explain the differences in treatment and estimated recovery between the LBCS $299 million claim against LBB and the LBCS claim under the Bankhaus Settlement.

---

[83] Requested by the following members of Group 3:  BdB and Elliott.

[84] Requested by the following members of Group 3:  BdB and Elliott.

**DRAFT CONSOLIDATED REQUESTS TO THE DEBTORS' AFFILIATES**

Dated:      June 14, 2011
            New York, New York

                                    /DRAFT

                                    Harvey R. Miller
                                    Irwin H. Warren
                                    Alfredo R. Pérez
                                    Randi W. Singer
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153-0119
                                    Telephone:      (212) 310-8000
                                    Facsimile:      (212) 310-8007

                                    *Attorneys for Debtors*

# EXHIBIT A

## EXHIBIT A

### DEBTORS' AFFILIATES

| | |
|---|---|
| 1. | Dan Schwarzmann, in his capacity as the duly authorized provisional liquidator of Lehman Re Ltd. |
| 2. | Eldon Street (Cube) Limited (in liquidation) |
| 3. | Eldon Street (Raven) Limited (in liquidation) |
| 4. | Eldon Street Holdings Limited (in administration) |
| 5. | Grace Hotels Limited (in liquidation) |
| 6. | Hercules K.K., and<br>    Lehman Brothers Commercial Mortgage K.K.<br>    Lehman Brothers Finance (Japan) Inc.<br>    Lehman Brothers Japan Inc.<br>    Lehman Brothers Real Estate Limited<br>    Sunrise Finance Co., Ltd. |
| 7. | James W. Giddens, as Trustee for the SIPA liquidation of Lehman Brothers Inc. |
| 8. | LB Equity (Nominees No 7) Limited (in liquidation) |
| 9. | LB Holdings Intermediate 2 Limited (in administration) |
| 10. | LB RE Financing No. 3 Limited (in administration) |
| 11. | LB SF No. 1 (in administration) |
| 12. | LB UK RE Holdings Limited (in administration) |
| 13. | Lehman Brothers (Indonesia) Limited (in liquidation) |
| 14. | Lehman Brothers (Luxembourg) S.A. and Lehman Brothers (Luxembourg) Equity Finance S.A. |
| 15. | Lehman Brothers (PTG) Limited (in administration) |
| 16. | Lehman Brothers Asia Holdings Limited (in liquidation), and<br>    Lehman Brothers Asia Limited (in liquidation)<br>    Lehman Brothers Futures Asia Limited (in liquidation)<br>    Lehman Brothers Securities Asia Limited (in liquidation)<br>    LBQ Hong Kong Funding Limited (in liquidation)<br>    Lehman Brothers Nominees (H.K.) Limited (in liquidation)<br>    Lehman Brothers Asia Capital Company (in liquidation)<br>    Lehman Brothers Commercial Corporation Asia Limited (in liquidation) |
| 17. | Lehman Brothers Australia Limited, and<br>    Lehman Brothers Australia Finance Pty Limited (Subject to Deed of Company Arrangement)<br>    Lehman Brothers Australia Granica Pty Limited (Subject to Deed of Company Arrangement)<br>    Lehman Brothers Australia Limited (In Liquidation)<br>    Lehman Brothers Real Estate Australia Commercial Pty. Ltd |
| 18. | Lehman Brothers Bankhaus AG (in Insolvenz) |
| 19. | Lehman Brothers Europe Limited (in administration) |
| 20. | Lehman Brothers Holdings PLC (in administration) |
| 21. | Lehman Brothers International (Europe) (in administration) |
| 22. | Lehman Brothers Limited (in administration) |
| 23. | Lehman Brothers UK Holdings Limited (in administration) |
| 24. | Lehman Commercial Mortgage Conduit Limited (in administration) |
| 25. | Mable Commercial Funding Limited (in administration) |
| 26. | Michiel Gorsira, as bankruptcy trustee for Lehman Brothers Securities N.V. |
| 27. | Monaco NPL (No. 1) Limited (in administration) |
| 28. | Pricewaterhouse-Coopers AG, Zurich, as Bankruptcy Liquidator and Foreign Representative of Lehman Brothers Finance AG |

| 29. | Rutger J. Schimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V. |
| 30. | Storm Funding Limited (in administration) |
| 31. | Zestdew Limited (in administration) |

# EXHIBIT L

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

**PURSUANT TO PARAGRAPH 6 OF THE ORDER
ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH
DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES,
DATED APRIL 14, 2011 [DOCKET NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

## DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES

**Instruction:** All English search terms should be translated into and run in the following languages: Dutch, French, and German.[1]

**NOTE:** * is used to capture all forms of a word (e.g. deliver* = deliver, delivers, delivery etc.)

| "Lehman Entity Search Terms"^ = | Leh* |
|---|---|
| | LB* |
| | Neuberger |
| | LCPI |
| | 745 w/3 LLC |
| | PAMI |
| | CES w/3 aviation |
| | East w/3 Dover |
| | Lux* w/3 Res* |
| | BNC |
| | Rose w/3 Ranch |
| | Kalakaua |
| | Merit |
| | Somerset |
| | ARS* |
| | pass-through |
| | Bankhaus |
| | ALI* |
| | NB* |
| | **ADDITIONAL TERMS REQUESTED BY CERTAIN MEMBERS OF GROUP 3 (CarVal, BdB, Diamondback, Elliott[2])** |
| | "International Europe" OR (intl w/3 Europe) |

^If You have used any acronym, code name or other designation/designated name for Lehman or any of its affiliates, please supplement the above-list of terms with any and all such term(s), and notify the Debtors of any such terms being added to the "Lehman Entity Search Terms."

PART I:  TERMS TO BE RUN WITH "LEHMAN ENTITY SEARCH TERMS"

| No. | Terms |
|---|---|
| 1. | Lehman Entity Search Terms AND (("risk appetite" OR VaR OR RA) w/20 (calculat* OR analyz* OR analys* OR estimat* OR comput* OR evaluat* OR assess*)) |
| 2. | Lehman Entity Search Terms AND (bank OR depository OR wir*) |

---

[1] Requested by certain members of Group 9 (Michiel Gorsira and Robert F. van Beemen, as bankruptcy co-trustees for Lehman Brothers Securities N.V., and Rutger J. Schimmelpenninck and Frederic Verhoeven, as bankruptcy co-trustees for Lehman Brothers Treasury Co. B.V.).

[2] "CarVal" means CarVal Investors UK Limited; "BdB" means Bundesverband deutscher Banken e.V.; "Diamondback" means Diamondback Master Fund, Ltd.; "Elliott" means Elliott Associates, L.P.

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**
Pg 223 of 272

| No. | Terms |
|-----|-------|
| 3. | Lehman Entity Search Terms AND (CVA OR valu* w/5 adjust*) |
| 4. | Lehman Entity Search Terms AND (employ* OR pay*) |
| 5. | Lehman Entity Search Terms AND (finance* OR solven*) |
| 6. | Lehman Entity Search Terms AND (formal* OR separate*) |
| 7. | Lehman Entity Search Terms AND (guaran* OR promise OR pledge OR oblig*) |
| 8. | Lehman Entity Search Terms AND (jump* w/3 def*) OR JTD |
| 9. | Lehman Entity Search Terms AND (officer* OR director*) |
| 10. | Lehman Entity Search Terms AND (own* OR entangle* OR title) |
| 11. | Lehman Entity Search Terms AND (propert* OR asset* OR liability*) |
| 12. | Lehman Entity Search Terms AND (shar* OR  allocate*) AND (expense* OR cost) |
| 13. | Lehman Entity Search Terms AND (single OR integr*) AND (glob* OR equity OR debt OR commod*) |
| 14. | Lehman Entity Search Terms AND (special w/5 purpose w/5 vehicle) OR SPV |
| 15. | Lehman Entity Search Terms AND affiliate* AND (distinct OR separ* OR seper*) |
| 16. | Lehman Entity Search Terms AND analy* OR review* OR estimat* OR assess* OR eval* OR (rate w/5 return) OR workout OR restructur* OR forecast* |
| 17. | Lehman Entity Search Terms AND asset* AND own* |
| 18. | Lehman Entity Search Terms AND assump* w/5  (respons* OR oblig*) |
| 19. | Lehman Entity Search Terms AND avoid* AND cost* |
| 20. | Lehman Entity Search Terms AND blanket AND (guaran* OR gty) |
| 21. | Lehman Entity Search Terms AND business AND (one OR line OR operat*) |
| 22. | Lehman Entity Search Terms AND capital* |
| 23. | Lehman Entity Search Terms AND cash w/5 manag* |
| 24. | Lehman Entity Search Terms AND CDA |
| 25. | Lehman Entity Search Terms AND central* AND (cash OR manage*) |
| 26. | Lehman Entity Search Terms AND charge* w/3 off |
| 27. | Lehman Entity Search Terms AND claim AND (purchas* OR sell OR sale OR sold OR transf* OR contingent OR unliquid*) |
| 28. | Lehman Entity Search Terms AND comm* AND (invest* OR min*) |
| 29. | Lehman Entity Search Terms AND corp* w/5 (seperat* OR separat*) |
| 30. | Lehman Entity Search Terms AND counterpart*  OR CP OR (counter* w/2 part*) |
| 31. | Lehman Entity Search Terms AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli*) |
| 32. | Lehman Entity Search Terms AND creditworth* |
| 33. | Lehman Entity Search Terms AND day-to-day OR DTD |
| 34. | Lehman Entity Search Terms AND default* |
| 35. | Lehman Entity Search Terms AND derivative* |
| 36. | Lehman Entity Search Terms AND domestic w/5 sub* |
| 37. | Lehman Entity Search Terms AND DRE OR (deriv* w/2 risk w/2 equiv*) |
| 38. | Lehman Entity Search Terms AND due w/5 diligence |
| 39. | Lehman Entity Search Terms AND enterp* |
| 40. | Lehman Entity Search Terms AND expos* w/5 (contingent OR future OR contract* |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Terms |
|-----|-------|
|  | OR peak OR average) |
| 41. | Lehman Entity Search Terms AND fund* |
| 42. | Lehman Entity Search Terms AND guaran* OR gty |
| 43. | Lehman Entity Search Terms AND hedg* |
| 44. | Lehman Entity Search Terms AND hold* w/5 compan* w/5 structur* |
| 45. | Lehman Entity Search Terms AND insolv* |
| 46. | Lehman Entity Search Terms AND instruct* OR direct* OR polic* OR proced* OR protocol* OR practice* OR manual* |
| 47. | Lehman Entity Search Terms AND integrat* AND operat* |
| 48. | Lehman Entity Search Terms AND interco* |
| 49. | Lehman Entity Search Terms AND ISDA OR Master OR CSA |
| 50. | Lehman Entity Search Terms AND liquid* |
| 51. | Lehman Entity Search Terms AND master w/5 netting w/5 agree* |
| 52. | Lehman Entity Search Terms AND MTM OR mark w/5 market |
| 53. | Lehman Entity Search Terms AND non-senior |
| 54. | Lehman Entity Search Terms AND office OR premise* |
| 55. | Lehman Entity Search Terms AND oper* w/10 entit* |
| 56. | Lehman Entity Search Terms AND part* w/5 con* |
| 57. | Lehman Entity Search Terms AND paymaster |
| 58. | Lehman Entity Search Terms AND PFE OR MFE |
| 59. | Lehman Entity Search Terms AND resolution |
| 60. | Lehman Entity Search Terms AND risk* w/10 (credit* OR counterpart* OR valu* OR default OR current OR credit OR peak OR basis* OR hedg*) |
| 61. | Lehman Entity Search Terms AND securit* AND (separate* OR balance OR possess*) |
| 62. | Lehman Entity Search Terms AND securit* AND statement* |
| 63. | Lehman Entity Search Terms AND senior OR unsecur* OR secur* |
| 64. | Lehman Entity Search Terms AND struct* w/10 (hold* OR comp*) |
| 65. | Lehman Entity Search Terms AND sub* w/5 (struct* OR contrac*) |
| 66. | Lehman Entity Search Terms AND support w/5 (implicit OR liquid*) |
| 67. | Lehman Entity Search Terms AND trad* AND (awar* OR know* OR unreg*) |
| 68. | Lehman Entity Search Terms AND transfer* |
| 69. | Lehman Entity Search Terms AND treasur* |
| 70. | Lehman Entity Search Terms AND uncollateral* OR collateral* |
| 71. | Lehman Entity Search Terms AND valu* w/5 risk* |
| 72. | Lehman Entity Search Terms AND write w/3 down |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE** | |
| 73. | Lehman Entity Search Terms AND (settle* OR offer OR bilateral OR bi-lateral OR negotiate* OR compromise*) AND [on or after Sept. 15, 2008] |
| **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1[3]** | |

---

[3] "Group 1" is defined as the Participants listed on pages 2 through 9 of Exhibit A to the Debtors' Notice of Second Amended Official Service List for Plan Discovery, dated May 26, 2011, except for Federal National Mortgage Association, Federal Home Loan Mortgage Association, Eldon Street (Raven) Limited (in liquidation), Eldon Street

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Terms |
|-----|-------|
| 74. | Lehman Entity Search Terms AND (Uzzi OR Paulson OR Kamensky OR Alix* OR Goldman OR Moloney OR O'Neil OR Tormey) |
| 75. | Lehman Entity Search Terms AND (opco OR "op co") /s (group OR creditors OR plan) |
| | **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (CarVal, BdB, Diamondback, Elliott)** |
| 76. | ((credit or risk) w/5 (risk or rat* or eval* or review* or worth*)) AND [Lehman Entity Search Terms] |
| 77. | (credit w/5 risk) AND [Lehman Entity Search Terms] |
| 78. | [Lehman Entity Search Terms] AND credit* AND (adjust* or contingent* or risk* or counterpart* or CP or (counter* w/2 part*) or current or loss* or enhance* or approv* or reserve* or valu* or rating or report* or review* or estimate* or rely or reli* or eval* or worth* or entit* or unit or company or shell or sub* or affiliate) |
| 79. | [Lehman Entity Search Terms] AND (BOD or Board) AND (guarant* or gty) |

PART II:  OTHER SEARCH TERMS

| No. | Search Terms |
|-----|--------------|
| 80. | (contingent OR unliquid*) AND ((Leh* w/5 Asia) OR LBAH) |
| 81. | (Novat*OR Net*) AND ((Leh* w/5 Asia) OR LBAH OR LBIE OR (Leh* w/5 Europe)) |
| 82. | commingl* |
| 83. | entangle* |
| 84. | inter-debtor |
| 85. | LBF AND claim |
| 86. | LBI AND (sale* OR trade*) |
| 87. | Leh* AND Expos* |
| 88. | Leh* AND recover* |
| 89. | Leh* w/5 CR01 |
| 90. | Leh* AND Foreign AND Affiliate* |
| 91. | recharacteriz* |
| 92. | rel* AND seperat* |
| 93. | no* w/5 (con* OR  non-con*) |
| 94. | non-debtor |
| 95. | substantive* w/10 (consolidat* OR subcon) |
| 96. | unreg* AND (LBI OR LBIE) |
| 97. | Paolo OR Tonucci |
| 98. | Azerad |
| 99. | Echtermann |
| 100. | POR |
| 101. | plan* w/3 (reorg* OR liquid*) |

Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration, and Storm Funding Limited (in administration).

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|-----|--------------|
| 102. | plan* |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE** | |
| 103. | (plan OR POR OR "disclosure statement" OR DS) AND (support* OR vot* OR accept* OR approv*) |
| 104. | ("Lehman Brothers Asia Holdings" OR LBAH*) AND (operat* OR function* OR role OR creat* OR form* OR purpos*) |
| 105. | (LBIE OR "Lehman Brothers (International)" OR LBI OR "Lehman Brothers Inc.") AND agen* |
| 106. | (incorp* OR form* OR creat* OR entit* OR company OR shell) AND (purpose OR function OR mission OR reason OR goal OR vehicle OR role) |
| 107. | ("real estate" OR reo OR land OR propert* OR leas*) AND ("business plan" OR strateg* OR blueprint OR manage*) |
| 108. | (director OR officer OR board) AND (elect* OR independent OR external OR outside OR vot* OR procedure* OR requirement*) |
| 109. | "alter ego" OR "mere instrumentality" |
| 110. | (pierc* AND "corporate veil") OR (veil /s pierc*) |
| 111. | transfer AND (ISDA OR "Master Agreement" OR swap OR derivative OR "5(c)") |
| 112. | repurchase OR repo |
| 113. | "Repo 105" |
| 114. | "true sale" OR (opinion w/s "Repo 105") |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE DIRECTED TO JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LBI** | |
| 115. | "Transfer Agreement" AND [on or after Aug. 1, 2008] |
| 116. | transfer w/p (share* OR interest OR holding) AND [on or after Aug. 1, 2008] |
| 117. | (PIK OR "Payment-in-kind") AND [on or after Aug. 1, 2008] |
| 118. | (LBI OR "Lehman Brothers Inc." OR ALI) w/p (valu* OR share* OR interest OR holding) AND [on or after Aug. 1, 2008] |
| 119. | Lazard AND [on or after Aug. 1, 2008] |
| 120. | transfer AND (patent* OR trademark* OR "intellectual property") AND [on or after Aug. 1, 2008] |
| 121. | valu* AND (patent* OR trademark* OR "intellectual property") AND [on or after Aug. 1, 2008] |
| **ADDITIONAL SEARCH TERMS REQUESTED BY THE CREDITORS' COMMITTEE DIRECTED TO LBIE** | |
| 122. | (valu* OR estimat*) AND ("client money" OR "client monies") |
| 123. | ("Standard & Poor" OR "S&P") AND guarant* |
| 124. | guarant* AND January AND 2008 |
| 125. | (LBIE OR "Lehman Brothers International" OR "Lehman Brothers Int'l") AND guarant* |
| 126. | guarant* AND August AND 2008 |
| 127. | Shearson AND guarant* |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|-----|-------------|
| 128. | guarant* AND ("Lehman Brothers International Limited" OR LBIL) |
| 129. | guarant* AND November AND 1990 |
| 130. | structure* w/s (securit* OR note*) |
| **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY THE CREDITORS' COMMITTEE DIRECTED**<br>**TO MICHIEL GORSIRA, AS BANKRUPTCY TRUSTEE FOR LBSNV** | |
| 131. | structure* /s (securit* OR note*) |
| 132. | (LBHI OR "Lehman Brothers Holdings") /s (assum* OR "take on" OR "took on" OR cover) /s (obligation* OR debt OR liab*) |
| **ADDITIONAL SEARCH TERMS**<br>**REQUESTED BY THE CREDITORS' COMMITTEE**<br>**DIRECTED TO RUTGER J. SCHIMMELPENNINCK AND**<br>**FREDERIC VERHOEVEN, AS BANKRUPTCY CO-TRUSTEES FOR LBT** | |
| 133. | structure* /s (securit* OR note*) |
| 134. | (LBHI OR "Lehman Brothers Holdings") /s (assum* OR "take on" OR "took on" OR cover) /s (obligation* OR debt OR liab*) |
| **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY THE CREDITORS' COMMITTEE DIRECTED TO LB LUXEMBOURG** | |
| 135. | guarant* AND ("Lehman Brothers (Luxembourg)" OR "LB Lux" OR "Lehman Lux") |
| 136. | guarant* AND August AND 2000 |
| **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 1** | |
| 137. | "Ad Hoc Group of Lehman Brothers Creditors" |
| 138. | "Goldman Group" |
| **ADDITIONAL SEARCH TERMS REQUESTED BY**<br>**CERTAIN MEMBERS OF GROUP 3 (CarVal, BdB, Diamondback, Elliott)** | |
| 139. | ($1 OR estimat* OR settl* OR agree*) /p (LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) |
| 140. | subcon* OR sub-con* OR (sub* w/3 con*) |
| 141. | (guarant* OR gty) /p (enforc* OR valid* OR allow* OR legal*) |
| 142. | (derivative OR swap OR CDS OR ISDA OR rep OR repurchase OR "Master Agreement" OR future OR forward OR "securities contract") and (guarant* OR gty) |
| 143. | ((inten* OR express) w/5 benef*) and (guarant* OR gty) |
| 144. | class* /p (guarant* OR gty) |
| 145. | class* w/15 (3 OR 6 OR 7 OR 9 OR 18) |
| 146. | recover* w/10 analy* |
| 147. | (expens* w/20 (overhead OR employee OR management OR accounting OR tax* OR (cash w/3 management))) and (conf* OR liquid* OR LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) |
| 148. | (LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) w/20 (financ* w/5 (statement OR stmt)) |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|-----|--------------|
| 149. | (inaccura* OR mistake OR problem OR wrong OR error) w/10 (book OR record) |
| 150. | (net w/3 capital) and (maintain OR require* OR min*) |
| | **ADDITIONAL SEARCH TERMS REQUESTED BY**<br>**CERTAIN MEMBERS OF GROUP 3 (CarVal, BdB, Elliott)** |
| 151. | "ad hoc" |
| 152. | .7 w/10 settl* |
| 153. | non-con* OR noncon* OR (non w/3 con*) |
| 154. | disclosure w/3 (statement OR stmt) OR DS |
| 155. | (Support* OR vot* OR accept* OR approv*) and (plan OR POR OR "disclosure statement" OR DS) |
| 156. | "time value" |
| 157. | (12 OR 10.1 OR 13.6) w/10 recover* |
| 158. | (20 OR 70) w/20 (calc* OR determin* OR reallocat* OR adjust* OR redistribut* OR settl* OR turnover OR agree* OR (turn* /2 over)) |
| 159. | (priority w/5 (payment OR pmt)) and liquid* |
| 160. | (exec* w/5 (contract OR K)) and liquid* |
| 161. | analysis w/3 liquid* |
| | **ADDITIONAL SEARCH TERMS REQUESTED**<br>**BY CERTAIN MEMBERS OF GROUP 3 (BdB, Elliott)** |
| 162. | Bundesanstalt für Finanzdienstleistungsaufsicht |
| 163. | Bundesanstalt fur Finanzdienstleistungsaufsicht |
| 164. | Bundesanstalt fuer Finanzdienstleistungsaufsicht |
| 165. | BaFin |
| 166. | Bundesaufsichtsamt für das Kreditwesen |
| 167. | BaKred |
| 168. | Bakred |
| 169. | Bundesbank |
| 170. | Deutsche Bundesbank |
| 171. | Hauptverwaltung |
| 172. | Verwaltungsakt |
| 173. | Anordnung |
| 174. | Anordnungen |
| 175. | Abhängigkeitsbericht |
| 176. | Abhangigkeitsbericht |
| 177. | Abhaengigkeitsbericht |
| 178. | Beherrschungsvertrag |
| 179. | Beherrschungsverträge |
| 180. | Beherrschungsvertrage |
| 181. | Beherrschungsvertraege |
| 182. | Gewinnabführungsvertrag |
| 183. | Gewinnabfuhrungsvertrag |
| 184. | Gewinnabfuehrungsvertrag |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|-----|--------------|
| 185. | Gewinnabführungsverträge |
| 186. | Gewinnabfuhrungsvertrage |
| 187. | Gewinnabfuehrungsvertraege |
| 188. | Konsolidierung |
| 189. | Antrag |
| 190. | Anträge |
| 191. | Antrage |
| 192. | Antraege |
| 193. | Bankerlaubnis |
| 194. | Erlaubnis |
| 195. | Banklizenz |
| 196. | Lizenz |
| 197. | Gewerbererlaubnis |
| 198. | Konzession |
| 199. | Beteiligungsanzeige |
| 200. | Beteiligungsanzeigen |
| 201. | Monatsausweis |
| 202. | Monatsausweise |
| 203. | Anzeige |
| 204. | Anzeigen |
| 205. | Absichtsanzeige |
| 206. | Absichtsanzeigen |
| 207. | Vollzugsanzeige |
| 208. | Vollzugsanzeigen |
| 209. | Sammelanzeige |
| 210. | Sammelanzeigen |
| 211. | Meldung |
| 212. | Meldungen |
| 213. | Auslagerung |
| 214. | Auslagerungsvertrag |
| 215. | Monatliche Bilanzstatistik |
| 216. | Monatliche Bilanzstatistik-Meldungen |
| 217. | Bista |
| 218. | Bista-Meldung |
| 219. | Risikobericht |
| 220. | Risikoberichte |
| 221. | Sonderprüfungsbericht |
| 222. | Sonderprufungsbericht |
| 223. | Sonderpruefungsbericht |
| 224. | Sonderprüfungsberichte |
| 225. | Sonderprufungsberichte |
| 226. | Sonderpruefungsberichte |
| 227. | Betriebsprüfung |
| 228. | Betriebsprufung |

| No. | Search Terms |
|-----|--------------|
| 229. | Betriebspruefung |
| 230. | Steuerprüfung |
| 231. | Steuerprufung |
| 232. | Steuerpruefung |
| 233. | Steuerprüfungsbericht |
| 234. | Steuerprufungsbericht |
| 235. | Steuerpruefungsbericht |
| 236. | Steuerprüfungsberichte |
| 237. | Steuerprufungsberichte |
| 238. | Steuerpruefungsberichte |
| 239. | Prüfung |
| 240. | Prufung |
| 241. | Pruefung |
| 242. | Eigenkapital |
| 243. | Grundsätze über Eigenkapital und Liquidität der Kreditinstitute |
| 244. | Grundsatze uber Eigenkapital und Liquiditat der Kreditinstitute |
| 245. | Grundsatze uber Eigenkapital und Liquidat der Kreditinstitute |
| 246. | Grundsaetze ueber Eigenkapital und Liquiditaet der Kreditinstitute |
| 247. | Grundsatz I Meldung |
| 248. | Grundsatz-I-Meldung |
| 249. | Grundsatz I-Meldung |
| 250. | Grundsatz-I Meldung |
| 251. | Grundsatz II Meldung |
| 252. | Grundsatz-II-Meldung |
| 253. | Grundsatz II-Meldung |
| 254. | Grundsatz-II Meldung |
| 255. | Grundsatz |
| 256. | Solvabilitätsverordnung |
| 257. | Solvabilitatsverordnung |
| 258. | Solvabilitaetsverordnung |
| 259. | SolvV |
| 260. | Solvabilität |
| 261. | Solvabilitat |
| 262. | Solvabilitaet |
| 263. | Liquiditätsverordnung |
| 264. | Liquiditatsverordnung |
| 265. | Liquiditaetsverordnung |
| 266. | LiqV |
| 267. | Liquidität |
| 268. | Liquiditat |
| 269. | Liquiditaet |
| 270. | Liquiditätsausstattung |
| 271. | Liquiditatsausstattung |
| 272. | Liquiditaetsausstattung |

| No. | Search Terms |
|------|--------------|
| 273. | Großkredite |
| 274. | Grosskredite |
| 275. | Großkredit |
| 276. | Grosskredit |
| 277. | Millionenkredit |
| 278. | Millionenkredite |
| 279. | Groß- und Millionenkredit |
| 280. | Gross- und Millionenkredit |
| 281. | Groß- und Millionenkredite |
| 282. | Gross- und Millionenkredite |
| 283. | Datenübersicht |
| 284. | Datenubersicht |
| 285. | Datenuebersicht |
| 286. | Datenübersichten |
| 287. | Datenubersichten |
| 288. | Datenuebersichten |
| 289. | Organkredit |
| 290. | Organkredite |
| 291. | Inhaber |
| 292. | Inhaberkontrolle |
| 293. | Inhaberkontrollverfahren |
| 294. | Berichte des Abschlussprüfers über die Prüfung des Jahresabschlusses |
| 295. | Berichte des Abschlussprufers uber die Prufung des Jahresabschlusses |
| 296. | Berichte des Abschlusspruefers ueber die Pruefung des Jahresabschlusses |
| 297. | Bericht des Abschlussprüfers über die Prüfung des Jahresabschlusses |
| 298. | Bericht des Abschlussprufers uber die Prufung des Jahresabschlusses |
| 299. | Bericht des Abschlusspruefers ueber die Pruefung des Jahresabschlusses |
| 300. | Prüfbericht |
| 301. | Prufbericht |
| 302. | Pruefbericht |
| 303. | Prüfberichte |
| 304. | Prufberichte |
| 305. | Pruefberichte |
| 306. | Prüfungsbericht |
| 307. | Prufungsbericht |
| 308. | Pruefungsbericht |
| 309. | Zwischenprüfungsbericht |
| 310. | Zwischenprufungsbericht |
| 311. | Zwischenpruefungsbericht |
| 312. | Zwischenprüfungsberichte |
| 313. | Zwischenprufungsberichte |
| 314. | Zwischenpruefungsberichte |
| 315. | Lagebericht |
| 316. | Lageberichte |

11

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|---|---|
| 317. | Anhang |
| 318. | Jahresabschlussprüfung |
| 319. | Jahresabschlussprufung |
| 320. | Jahresabschlusspruefung |
| 321. | Konzernabschluss |
| 322. | Kreditprüfungsberichte |
| 323. | Kreditprufungsberichte |
| 324. | Kreditpruefungsberichte |
| 325. | Berichte über die Prüfung von Meldepflichten und Verhaltensregeln |
| 326. | Berichte uber die Prufung von Meldepflichten und Verhaltensregeln |
| 327. | Berichte ueber die Pruefung von Meldepflichten und Verhaltensregeln |
| 328. | Geschäftsberichte |
| 329. | Geschaftsberichte |
| 330. | Geschaeftsberichte |
| 331. | Geschäftsbericht |
| 332. | Geschaftsbericht |
| 333. | Geschaeftsbericht |
| 334. | Satzung |
| 335. | Satzungen |
| 336. | Geschäftsordnung |
| 337. | Geschaftsordnung |
| 338. | Geschaeftsordnung |
| 339. | Geschäftsordnungen |
| 340. | Geschaftsordnungen |
| 341. | Geschaeftsordnungen |
| 342. | Geschäftsordnungen für den Aufsichtsrat |
| 343. | Geschaftsordnungen fur den Aufsichtsrat |
| 344. | Geschaeftsordnungen fuer den Aufsichtsrat |
| 345. | Geschäftsordnung für den Aufsichtsrat |
| 346. | Geschaftsordnung fur den Aufsichtsrat |
| 347. | Geschaeftsordnung fuer den Aufsichtsrat |
| 348. | Geschäftsordnungen für den Vorstand |
| 349. | Geschaftsordnungen fur den Vorstand |
| 350. | Geschaeftsordnungen fuer den Vorstand |
| 351. | Geschäftsordnung für den Vorstand |
| 352. | Geschaftsordnung fur den Vorstand |
| 353. | Geschaeftsordnung fuer den Vorstand |
| 354. | Geschäftsverteilungsplan |
| 355. | Geschaftsverteilungsplan |
| 356. | Geschaeftsverteilungsplan |
| 357. | Geschäftsverteilungspläne |
| 358. | Geschaftsverteilungsplane |
| 359. | Geschaeftsverteilungsplaene |
| 360. | Sitzungsprotokoll |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|-----|--------------|
| 361. | Sitzungsprotokolle |
| 362. | Protokoll der Vorstandssitzung |
| 363. | Protokolle der Vorstandssitzung |
| 364. | Protokoll der Vorstandssitzungen |
| 365. | Protokolle der Vorstandssitzungen |
| 366. | Protokolle über die Sitzungen des Vorstandes |
| 367. | Protokolle uber die Sitzungen des Vorstandes |
| 368. | Protokolle ueber die Sitzungen des Vorstandes |
| 369. | Protokolle über die Sitzungen des Vorstands |
| 370. | Protokolle uber die Sitzungen des Vorstands |
| 371. | Protokoll ueber die Sitzungen des Vorstands |
| 372. | Protokoll über die Sitzungen des Vorstandes |
| 373. | Protokoll uber die Sitzungen des Vorstandes |
| 374. | Protokoll ueber die Sitzungen des Vorstandes |
| 375. | Protokoll über die Sitzungen des Vorstands |
| 376. | Protokoll uber die Sitzungen des Vorstands |
| 377. | Protokoll ueber die Sitzungen des Vorstands |
| 378. | Protokoll über die Sitzung des Vorstandes |
| 379. | Protokoll uber die Sitzung des Vorstandes |
| 380. | Protokoll ueber die Sitzung des Vorstandes |
| 381. | Protokoll über die Sitzung des Vorstands |
| 382. | Protokoll uber die Sitzung des Vorstands |
| 383. | Protokoll ueber die Sitzung des Vorstands |
| 384. | Vorstandsprotokoll |
| 385. | Vorstandsprotokolle |
| 386. | Aufsichtsratsprotokoll |
| 387. | Aufsichtsratsprotokoll |
| 388. | Protokolle über die Sitzungen des Aufsichtsrates |
| 389. | Protokolle uber die Sitzungen des Aufsichtsrates |
| 390. | Protokolle ueber die Sitzungen des Aufsichtsrates |
| 391. | Protokolle über die Sitzungen des Aufsichtsrats |
| 392. | Protokolle uber die Sitzungen des Aufsichtsrats |
| 393. | Protokolle ueber die Sitzungen des Aufsichtsrats |
| 394. | Protokoll über die Sitzungen des Aufsichtsrates |
| 395. | Protokoll uber die Sitzungen des Aufsichtsrates |
| 396. | Protokoll ueber die Sitzungen des Aufsichtsrates |
| 397. | Protokoll über die Sitzungen des Aufsichtsrats |
| 398. | Protokoll uber die Sitzungen des Aufsichtsrats |
| 399. | Protokoll ueber die Sitzungen des Aufsichtsrats |
| 400. | Protokoll über die Sitzung des Aufsichtsrates |
| 401. | Protokoll uber die Sitzung des Aufsichtsrates |
| 402. | Protokoll ueber die Sitzung des Aufsichtsrates |
| 403. | Protokoll über die Sitzung des Aufsichtsrats |
| 404. | Protokoll uber die Sitzung des Aufsichtsrats |

**DRAFT CONSOLIDATED SEARCH TERMS TO DEBTORS' AFFILIATES**

| No. | Search Terms |
|---|---|
| 405. | Protokoll ueber die Sitzung des Aufsichtsrats |
| 406. | Protokoll der Aufsichtsratssitzung |
| 407. | Protokolle der Aufsichtsratssitzung |
| 408. | Protokoll der Aufsichtsratssitzungen |
| 409. | Protokolle der Aufsichtsratssitzungen |
| 410. | Aufsichtsratsausschuss |
| 411. | Aufsichtsratsausschüsse |
| 412. | Aufsichtsratsausschusse |
| 413. | Aufsichtsratsausschuesse |
| 414. | Hauptversammlungsprotokolle |
| 415. | Hauptversammlungsprotokoll |
| 416. | Protokoll der Hauptversammlung |
| 417. | Protokolle der Hauptversammlung |
| 418. | Kernkapital |
| 419. | Ergänzungskapital |
| 420. | Erganzungskapital |
| 421. | Ergaenzungskapital |
| 422. | Drittrangmittel |
| 423. | Richtlinien |
| 424. | Handlungsanweisung |
| 425. | Handlungsanweisungen |
| 426. | ALCO |
| 427. | Asset Liability Komitee |
| 428. | Kreditausschuss |
| 429. | Kreditausschüsse |
| 430. | Kreditausschusse |
| 431. | Kreditausschuesse |
| | **ADDITIONAL SEARCH TERMS REQUESTED BY GROUP 7** |
| 432. | (LBCS OR "Lehman Brothers Commodity Services" OR "Eagle Energy") AND (LBI OR "Lehman Brothers Inc.") AND subordinat* [on or after August 1, 2005] |
| 433. | ([4]LBI OR "Lehman Brothers Inc.") w/25 (board OR committee)) and ("asset purchase agreement" OR "clarification letter" OR ((sell* OR sale* OR buy* OR purchase*) w/25 (LBCS OR "Lehman Brothers Commodity Services" OR "Eagle Energy")) AND [from August 1, 2008, to September 22, 2008] |

---

[4] Additional parenthesis added to fix Boolean syntax error in original proposed search string.

**EXHIBIT M**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

Alfredo R. Pérez
+1 212 310 8191
alfredo.perez@weil.com

June 14, 2011

BY E-MAIL

All Participants in Plan Discovery
First Amended Official Service List

Re: Lehman Plan Discovery – Consolidated Participant Requests and Search Terms for Creditors'
    Committee

Dear Participant,

Pursuant to paragraph 6(e) of the *Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues*, dated April 14, 2011 [Docket No. 16003] (the "Order"),[1] the Debtors hereby serve the draft Consolidated Participant Requests ("Draft Consolidated Requests") and draft consolidated search terms for the Creditors' Committee.

In accordance with paragraph 6(f) of the Order, a meet and confer regarding the Draft Consolidated Requests shall take place at the offices of the Creditors' Committee counsel, Milbank, Tweed, Hadley & McCloy LLP, located at 1 Chase Manhattan Plaza, New York, NY 10005 on June 17, 2011 at 1:00 p.m. (EDT). Any Participant that believes the Debtors, in compiling the Draft Consolidated Requests, eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly transcribed Group Participant Requests or Additional Responding Participant Requests must attend if you wish to have your objection heard and addressed. In addition, any Participant that plans to attend should send an email to LehmanPlanDiscovery@weil.com with the names of attendees by June 16, 2011, at 12:00 p.m (EDT), so that their names can be given to building security in advance of the meeting.

Sincerely,

Alfredo R. Pérez

---

[1] Capitalized terms not defined herein shall have the meaning attributed to them in the Order.

# EXHIBIT N

DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE

**PURSUANT TO PARAGRAPH 6(E) OF THE ORDER ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES, DATED APRIL 14, 2011 [DKT. NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Irwin H. Warren
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CONSOLIDATED DOCUMENT REQUESTS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO BANKRUPTCY RULES 7026 AND 7034**

Pursuant to the Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues, dated April 14, 2011 [Docket No. 16003] (the "Order"), Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates[1]

---

[1] The Debtors in these jointly administered chapter 11 cases are Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc., Lehman Brothers Derivative Products Inc., Lehman Brothers Financial Products Inc., Lehman Brothers OTC Derivatives Inc., Lehman Brothers Commercial Corporation, LB 745 LLC, PAMI Statler Arms, LLC, CES Aviation LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Lehman Scottish Finance L.P., Luxembourg Residential Properties Loan Finance S.a.r.l., BNC Mortgage LLC, LB Rose Ranch LLC, Structured

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

(collectively the "Debtors"), serve these Consolidated Document Requests (the "Requests") to

the Official Committee of Unsecured Creditors appointed in these chapter 11 cases, by and

through their counsel, and demand that the Creditors' Committee (as defined below) provide

written responses and objections to the requests herein within twenty-one (21) days of service, in

accordance with the Order and Federal Rule 34(b).  The responses and objections shall be served

on the Official Service List as defined in the Order.

Pursuant to paragraph 6(k) of the Order, the Creditors' Committee shall produce

documents in response to the Requests, bates-stamped and on a rolling basis, as expeditiously as

reasonably practical.  The document production(s) shall be delivered to the Debtors in

accordance with the specifications set forth in Exhibit D to the Order at the offices of Weil,

Gotshal, & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153, Attention:

Randi W. Singer, Esq.

## I.     DEFINITIONS FROM GROUP 1 REQUESTING PARTICIPANTS[2] & GROUP 3 PARTICIPANTS[3]

1.     The definitions and rules of construction contained in Federal Rule 34 and

Rule 26.3 of the Local Rules of the Southern District of New York (as made applicable by Local

Rule 7026-1 of the United States Bankruptcy Court for the Southern District of New York) are

incorporated herein.

---

Asset Securities Corporation, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC and LB Preferred Somerset LLC.

[2] "Group 1 Requesting Participants" refers collectively to the Group 1 Participants, excluding Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration).

[3] All Definitions and Instructions provided by the Group 1 Requesting Participants and by the following members of Group 3—CarVal Investors UK Limited ("CarVal"), Bundesverband deutscher Banken e.V. ("BdB"), Diamondback Master Fund, Ltd. ("Diamondback"), and Elliott Associates, L.P. ("Elliott") —unless otherwise indicated.

DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE

2.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

3.      "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases and each of its members, including their collective and individual special  purpose or other investment vehicles, current and former affiliates, parents, subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, advisors, predecessors, successors, and assigns, as applicable, and any other person currently or formerly acting or purporting to act on behalf of the Official Committee of Unsecured Creditors or any of its members for any purpose whatsoever.[4]

4.      "Communicate" and "Communication(s)" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), regardless of the form or manner or embodiment of same (e.g., conversations, meetings, telephone calls, correspondence, letters, notes, memoranda, e-mails, or other media).

5.      "Creditor Reliance" refers to, in the broad sense, whether creditors dealt with certain entities as a single economic unit and did not rely on their separate identity in extending credit when doing business.  *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).[5]

6.      "Document" means each and every document within the meaning of Federal Rule 34, including, without limitation, each and every written, typed, printed, computer-produced, photographic or other graphic matter of any kind, sound, mechanical, photographic,

---

[4] Not provided by Diamondback.

[5] Not provided by Diamondback.

magnetic, electric or electronic recording or record of any kind, and any and all other means of preserving thought or expression or tangible thing from which information can be obtained, of whatever nature, whether an original or a copy, whether a draft or final version, however produced or reproduced and whether sent or received or neither (e.g., all correspondence, data, memoranda, telegrams, telexes, facsimiles, transcripts, testimony, handwritten notes, calendars, books and diaries and entries therein, minutes of meetings, computer print-outs, computer files, e-mail or other electronic or computer transmission, computer disks, tapes and records of all types, and any other writing, data form, compilation, other recording or mechanical reproduction from which information can be obtained or translated, if necessary, into reasonably usable form). The term shall include copies or drafts of documents which are not identical duplicates of the originals.

7.     "Entanglement" refers to, in the broad sense, whether the affairs of certain entities are so intertwined and entangled that it would be extremely difficult if not impossible without great cost and expenditure of time to untangle.  *See Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).[6]

8.     "Including" means including, without limitation, or in any way qualifying, limiting, or restricting the foregoing.

9.     "Lehman Entities" refers collectively to the Debtors, and each of their direct and indirect subsidiaries and affiliates, including any special purpose vehicles established or sponsored by any of them.  "Lehman Entity" refers to any individual or singular entity within the Lehman Entities.

---

[6] Not provided by Diamondback.

10.     "Plan" means the First Amended Joint Chapter Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (including as it may be further amended), and any other versions thereof, whether filed or unfilled, including drafts.

11.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.     The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular.

13.     "Proposed Ad Hoc Group Plan" means the Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors dated April 27, 2011 [Docket No. 16315] (including as it may be further amended), and any other versions thereof, whether filed or unfiled, including drafts.[7]

14.     "Proposed Non-Consolidation Plan" means the Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Non-Consolidation Plan Proponents dated April 25, 2011 [Docket No. 16229] (including as it may be further amended), any other versions thereof, whether filed or unfiled, including drafts.[8]

---

[7] Not provided by Diamondback.

[8] Not provided by Diamondback.

15.     "Third Party" means any individual person or entity that does not fall within the definition of "You" below, including without limitation the Lehman Entities and their advisors and other representatives.[9]

16.     "Transaction" means any business dealing, whether proposed, contemplated or entered into, including [i] making or participating in a loan (secured or unsecured, guaranteed or not) with, [ii] purchasing any securities of or making any investment (equity or otherwise) in, [iii] entering into or participating in any real estate transaction or venture (including a mortgage) with, [iv] entering into or participating in any partnership, limited liability company, or joint venture with, [v] entering into or participating in any securitization transaction offered or sponsored by, [vi] purchasing any instrument sponsored or cosponsored or securitized by, [vii] obtaining a guarantee or other security from, [viii] purchasing or selling any goods or services to or from, and [ix] engaging in any other type of financing or business relationship with any entities.[10]

17.     "Lehman's Treasury Team" means Paolo Tanucci, Robert Azerad, and HeidiMarie Echtermann.[11]

18.     "You" and "your" means the Creditors' Committee.

19.     Reference to any entity including a corporation, limited liability company or limited or general partnership, includes (a) any predecessor-in-interest, successor, division, affiliate, or wholly- or partially-owned subsidiary of the entity specified, where applicable, and

---

[9] Provided by Group 1 Requesting Participants only.

[10] Not provided by Diamondback.

[11] Provided by Group 1 Requesting Participants only.

6

(b) any officer, shareholder, director, partner, agent, member, representative, employee or other person acting on behalf of the entity specified.[12]

## II.    INSTRUCTIONS FROM GROUP 1 REQUESTING PARTICIPANTS & GROUP 3 PARTICIPANTS

1.      You are required to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

2.      The use of electronic search terms does not obviate, alter, or alleviate the requirement for You to search for and produce all documents responsive to these Requests in Your possession, custody or control, including all documents possessed by any proposed testifying experts that are subject to these Requests, except as provided in paragraph 3(j) of the Order.

3.      These Requests shall be deemed to be continuing so as to require further and supplemental production in the event that additional responsive documents are discovered.

4.      In accordance with paragraph 11 of the Order, if You withhold any Documents responsive to any of the Requests (except as provided in paragraphs 3(j) and 11(c) of the Order) on the grounds of privilege, work product, or any other type of protection or immunity from disclosure, You shall produce a privilege log, consistent with Federal Rule 26(b)(5), as incorporated by Bankruptcy Rules 7026 and 9014, that contains the following fields:

    a.      Document identification;

    b.      the Document date;

    c.      for e-mails, the subject field of the e-mail;

---

[12] Not provided by Diamondback.

       d.       for attachments to emails and Documents (other than prior e-mails in the e-document), the Document name;

       e.       the name of each person to whom the Document was sent, including those blind copied or shown as copied, and whether or not any of the recipients, senders, or other addressees are attorneys (yes/no); and

       f.       the custodian of the Document.

If privilege, work product, or any other type of protection or immunity is asserted as to only a part of a Document, then the remainder of the Document shall be produced.

5.       If You object to any Request or part thereof, the objection shall be stated in accordance with the Bankruptcy Rules and the Federal Rules.

6.       In accordance with paragraph 5(k) of the Order, Documents shall be produced in electronic form. Upon a showing of good cause, Documents that are not reasonably conducive to being cost-effectively produced in electronic form may be produced by other means, as set forth in the Order.

7.       Documents are to be organized and labeled to correspond with the categories of these Requests or produced as they are kept in the usual course of business. Any Documents which must be removed from their original folders, binders, covers or containers (collectively, "Containers") in order to be produced shall be identified in a manner so as to clearly specify where such Documents originated and with a copy of any title or reference on the Containers.

8.       Electronically stored Documents shall be produced in the electronic form set forth in Exhibit D to the Order:

       a.       *Emails.* E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT). Meta data fields included with the load file should be provided in accordance with *Appendix 1.* E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

shall not be separated from the emails to which they are attached. Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

b.    *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with <u>Appendix 1</u> to <u>Exhibit D</u> of the Order.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

c.    *Hard copy documents*.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

d.    *TIFF Images Generally*.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  For instances in which the original file is in color and the color is necessary for interpretation of the document (charts, pictures, etc.), produce medium quality JPEG in place of single page tiff file.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.

e.    *Shipment of electronic data*.  Electronic data productions may be transmitted electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or physically transported using electronic storage media such as, CDs, DVDs or hard drives.  The physical media label should contain the case name and number, production date, and bates range being produced.  Each transmission of data should include a collection "manifest" report which provides a list of files collected, their location, and their MD5 hash values.

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

9.     If more than one copy of a Document responsive to a Request exists, each non-identical copy of the Document shall be produced.[13]

10.     No part of a Request shall be left unanswered or Documents not produced as called for therein merely because an objection (including as to privilege) is interposed to another part of the Request.[14]

11.     These Requests are continuing in nature and You are obligated to provide any responsive Documents that come to Your attention subsequent to serving Your response to these Requests and/or producing any Documents, in accordance with Federal Rule 26(e).[15]

12.     Unless otherwise stated, the period covered by these Requests is as follows:[16]

     a.     With respect to any Transaction that remained live (i.e., one or both parties to the Transaction had continuing obligations) as of January 1, 2007, the period covered is the genesis of that Transaction to the present.

     b.     With respect to any potential or realized Transaction with any Lehman Entity, or any Transaction that You considered entering into with any Lehman Entities, but declined to do so, the period covered is January 1, 2007 to the present.

### III.    DOCUMENT REQUESTS

**FROM GROUP 1 REQUESTING PARTICIPANTS & GROUP 3 PARTICIPANTS**

1.     All Documents and Communications concerning whether You, or any other creditor of the Lehman Entities, dealt with any one or more of the Lehman Entities as a single economic unit in extending credit.[17]

---

[13] Not provided by Diamondback.

[14] Not provided by Diamondback.

[15] Not provided by Diamondback.

[16] Not provided by Diamondback.

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

2.      Subject to the restriction in Paragraph 3(j) of the Order, all Documents and Communications between and among You and any restructuring advisor, financial consultant or other consultant hired by, or that performed work for or advised, You concerning (i) substantive consolidation, including Entanglement and Creditor Reliance, or (ii) the Proposed Ad Hoc Group Plan, the Proposed Non-Consolidation Plan, the Plan or any other person or group's proposed chapter 11 plan concerning the Debtors.[18]

3.      All Documents and Communications concerning any interviews of any person concerning the conduct of the Lehman Entities prior to September 15, 2008, that were conducted by or on behalf of You or of which You are aware.[19]

**FROM GROUP 1 REQUESTING PARTICIPANTS ONLY**

4.      All Documents and Communications concerning the following topics, including documents or analyses [i] prepared by or for, or used internally by, You or [ii] exchanged between, or circulated among, any one or more of, You and any Third Party:

> a.      LBHI's assumption of, or support for any, contractual obligations of any other Lehman Entity, including expressions or indications of, or any person's belief as to, LBHI's willingness or unwillingness or likelihood to stand behind or make good upon, in whole or in part, any obligations of any other Lehman Entity, regardless of whether any obligations were assumed;
>
> b.      the sharing of administrative expenses (including overhead, employee, management, accounting, taxes, cash management and other related expenses) by or among the Lehman Entities;

---

[17] Requested by the Group 1 Requesting Participants and the following members of Group 9: CarVal, BdB, and Elliott.

[18] Requested by the Group 1 Requesting Participants and the following members of Group 9: CarVal, BdB, and Elliott.

[19] Requested by the Group 1 Requesting Participants and the following members of Group 9: CarVal, BdB, and Elliott.

c.     the existence of any formal or informal, written or oral intercompany guarantees, promises, agreements, understandings, undertaking of any obligations, or pledges by or among any of the Lehman Entities;

d.     the transfer or sale of property, assets, or liabilities between and among any of the Lehman Entities;

e.     the transfer of funds or intercompany balances between and among any of the Lehman Entities;

f.     any Lehman Entities' employment of individuals and payments to employees;

g.     capitalization of any of the Lehman Entities;

h.     the ownership of property, assets, and liabilities by, between and among any Lehman Entities;

i.     the existence of consolidated and unconsolidated financial statements for or among Lehman Entities;

j.     financial statements for any Lehman Entity other than LBHI;

k.     the boards of directors, or any individual directors and/or officers, of any of the Lehman Entities;

l.     the ownership, organizational structure, corporate governance, and method of business operation of any Lehman Entity;

m.     the prepetition cash management system used by any of the Lehman Entities;

n.     LBHI's or any other Lehman Entity's exercise of direct or indirect control over any other of the Lehman Entities, including whether or not any of the Lehman Entities were subject to direction from LBHI or any other Lehman Entity;

o.     the office locations and premises of any of the Lehman Entities and

p.     substantive consolidation of any Lehman Entity.

5.     All Documents and Communications, including those exchanged with

Third Parties, concerning the acceptance or rejection of the Plan, Proposed Ad Hoc Group Plan,

or Proposed Non-Consolidation Plan or any other plan of reorganization for any of the Debtors.

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

6.      All Documents and Communications concerning credit ratings, credit evaluations, or credit or risk reviews related to any Lehman Entity, including credit reports of any one or more of the Lehman Entities or any security or other instrument issued by the Lehman Entities.

7.      All Documents and Communications prepared, sent, reviewed or received by You concerning the financial status, solvency, or health of any of the Lehman Entities from January 1, 2007 to the present.

8.      All Documents and Communications concerning the following:

    a.      any formal or informal, written or oral, promise, guarantee, agreement, understanding, undertaking of any obligation, or pledge of LBHI to satisfy an obligation or liability of any other entity, including with respect to asset values, collection, net worth or similar agreements, regardless of whether the purported guarantee, promise or pledge concerns any instrument, obligation, or claim You now hold or previously held;

    b.      the enforceability of any such promise, guarantee, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any other Lehman Entity in connection with a Transaction.

9.      All Documents and Communications concerning any analysis, study, or valuation done by or for You of any actual or potential purchase, sale, or transfer of a claim against any of the Lehman Entities, including all Documents and Communications with or concerning the original or prospective claimant or counterparty or its relationship with any of the Lehman Entities.

10.      All Documents and Communications concerning intercompany balances or intercompany Transactions of any Lehman Entity, including as reflected in the publicly-filed statements of the Lehman Entities.

13

      11.      All Documents and Communications concerning Transactions between or among any Lehman Entities and Third Parties.

      12.      All presentations concerning any Lehman Entity, whether prepared by You or any Third Party.

      13.      All analyses, including valuations, received from the Debtors concerning any Lehman entity.

      14.      All communications between You and any Third Party concerning the Plan, the Proposed Ad Hoc Group Plan, or the Proposed Non-Consolidation Plan or any other plan of reorganization for any Lehman Entity, including any communications concerning any efforts by any person or entity to encourage any creditor of any Debtor to vote for or against any such plan or otherwise support any such plan.

**FROM GROUP 3 PARTICIPANTS ONLY**

      15.      All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to board resolution.[20]

      16.      All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[21]

      17.      All Documents and Communications concerning the enforceability of guarantees by LBHI made pursuant to a guarantee agreement entered into in connection with a specific transaction.[22]

---

[20] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[21] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[22] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

18.     All Documents and Communications concerning the enforceability of guarantees by LBHI of obligations of LBIE on account of derivative transactions.[23]

19.     All Documents and Communications reviewed by or relied upon by the Creditors' Committee in connection with any analysis of the validity and/or enforceability of any guarantee claim asserted against LBHI where LBIE or another affiliate of LBHI was the primary obligor.[24]

20.     All Documents evidencing that creditors of LBIE had knowledge of a guarantee by LBHI of any obligation of LBIE when entering into derivative transactions.[25]

21.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to board resolution.[26]

22.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to general guarantee agreements with any of its affiliates, including LBIE.[27]

23.     Documents sufficient to show the number and dollar amount of guarantees by LBHI made pursuant to a guarantee agreement entered into in connection with a specific transaction.[28]

---

[23] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[24] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[25] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[26] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[27] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[28] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

24.    All Documents concerning whether creditors that entered into derivative transactions with LBIE that were guaranteed by LBHI were express and/or intended beneficiaries of such guarantees.[29]

25.    All Documents and Communications concerning any request, or consideration whether to make a request, for the Debtors or their affiliates to provide a guarantee, promise, agreement, understanding, undertaking of any obligation, or pledge to satisfy an obligation or liability of any Debtor or its affiliates.[30]

26.    All documents reviewed by or relied upon by the Creditors' Committee in connection with its analysis of the potential substantive consolidation of LBIE with LBHI or any of its affiliates.[31]

27.    All Documents and Communications concerning any review or analysis of LBIE's business operations by the Creditors' Committee or the Debtors.[32]

28.    All Documents and Communications considering whether LBIE could be substantively consolidated with any of the Debtors or their affiliates.[33]

29.    All Documents concerning allegations by creditors of the Debtors or their affiliates that they relied on the corporate separateness of LBHI and its operating affiliates.[34]

---

[29] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[30] Requested by the following members of Group 3:  CarVal, BdB, Diamondback, and Elliott.

[31] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[32] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[33] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[34] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

30.     All Documents concerning the reliance of creditors who transacted business with LBIE on (a) the separate identity of LBIE from the Debtors and any of their affiliates or (b) the separate credit of LBIE from the Debtors and any of their affiliates.[35]

31.     All Documents and Communications concerning due diligence conducted by any creditors of the Debtors or any of their affiliates on the credit risk of the Debtors or any of their affiliates.[36]

32.     All Documents and Communications concerning whether affiliates of LBHI were responsible for any financial obligations of LBHI.

33.     All Documents and Communications evidencing that any creditor was provided with and/or had access to LBIE's financial statements.

34.     All Documents and Communications concerning the Debtors' solicitation of the views and/or recommendations of the Creditors' Committee, the Debtors' Affiliates, or any creditor of the Debtors or their affiliates regarding the terms of the Plan.

35.     All Documents and Communications concerning the Creditors' Committee's solicitation of the views and/or recommendations of any creditor of the Debtors or their affiliates regarding the terms of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.

36.     All Documents and Communications concerning the views and/or recommendations of the Creditors' Committee, the Debtors or their affiliates, or any creditor of

---

[35] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[36] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

17

DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE

the Debtors or their affiliates regarding the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[37]

37.    All Documents and Communications concerning negotiations between or among the Creditors' Committee, the Debtors or their affiliates, or any creditor of the Debtors or their affiliates concerning the terms of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[38]

38.    All Documents and Communications concerning discussions between or among the Creditors' Committee, the Debtors or their affiliates, or any creditor of the Debtors or their affiliates concerning the terms of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[39]

39.    All Documents and Communications concerning the efforts undertaken by the Creditors' Committee, the Debtors or their affiliates, or any creditor of the Debtors or their affiliates to solicit support or to solicit votes in support of the Plan, the Proposed Non-Consolidation Plan, or the Proposed Ad Hoc Group Plan.[40]

40.    All Documents and Communications between the Creditors' Committee and the Debtors concerning the formulation, drafting, or content of the Plan.[41]

---

[37] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[38] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[39] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[40] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[41] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

41.     All Documents and Communications concerning the length of time it may take for final determinations to be reached through litigation concerning each of the Plan Issues identified in the Debtors' Disclosure Statement.  (See Debtors' Disclosure Statement at 2.).[42]

42.     All Documents and Communications concerning any expenses that would be incurred by the Debtors in the event the Plan is not confirmed and the Debtors remain debtors for a longer period of time in cases under chapter 11 of the Bankruptcy Code.[43]

43.     All Documents and Communications concerning the diminishment by the time value of money of any additional Distributions that may be received by creditors of the Debtors in the event that the Plan is not confirmed and an alternative plan of reorganization is confirmed.[44]

44.     All Documents and Communications concerning the proposed reallocation of 20% of the Distributions to holders of claims in LBHI Class 9 (Derivative Guarantee Claims) of the Plan to holders of claim in LBHI Classes 3, 6 and 7 as described in the Reallocation Scheme.[45]

45.     All Documents and Communications concerning the calculation of the 20% reallocation of the Distributions to holders in LBHI Class 9 (Derivative Guarantee Claims against LBHI) of the Plan to holders of claims in LBHI Classes 3, 6 and 7 as described in the Plan.[46]

---

[42] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[43] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[44] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[45] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[46] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

46.    All Documents and Communications concerning the range of potential outcomes as a result of litigation of each of the Plan Issues identified in the Debtors' Disclosure Statement.  (See Debtors' Disclosure Statement at 2.)[47]

47.    All Documents reviewed, relied on and/or used to (a) calculate the percentage of Distributions from holders of Claims against Participating Subsidiary Debtors that would be reallocated for each Class by using a weighted average of recoveries under the following two scenarios:  (i) a compromise of various issues that does not provide for the substantive consolidation of the Debtors; or (ii) a compromise of various issues, including the substantive consolidation of LBHI and the Participating Subsidiary Debtors; and (b) determine that the calculations of the recovery amounts in scenario (i) would be weighted at 80% and in scenario (ii) would be weighted at 20%.[48]

48.    All Documents and Communications concerning the basis for the settlement contained in the Plan of claims in LBHI Class 9 (Derivative Guarantee Claims) where LBIE was the primary obligor.[49]

49.    All Documents and Communications concerning the proposed estimation in the Plan of LBIE's Intercompany Claims against LBHI at $1.00 in the event that LBHI and LBIE are unable to reach an agreement on the Allowed amount of LBIE's Intercompany Claims against LBHI.[50]

---

[47] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[48] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[49] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[50] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

50.    All Documents and Communications the proposed estimation in the Plan of LBIE's Affiliate Guarantee Claims against LBHI at $1.00 in the event that LBHI and LBIE are unable to reach an agreement on the Allowed amount of LBIE's Guarantee Claims against LBHI.[51]

51.    All Documents and Communications concerning the classification of Derivative Guarantee Claims where LBIE is the Primary Obligor in LBHI Class 9 of the Plan.[52]

52.    Documents sufficient to show the number and dollar amount of Derivative Guarantee Claims classified in LBHI Class 9 of the Plan where the guarantee by LBHI was made pursuant to (i) board resolution; (ii) general guarantee agreements with any affiliates of LBHI and (iii) guarantee agreements entered into in connection with a specific transaction.[53]

53.    All Documents and Communications concerning the classification in the Plan of Derivative Guarantee Claims where LBIE is the Primary Obligor with Derivative Guarantee Claims where other affiliates of LBHI are the Primary Obligors.[54]

54.    All Documents and Communications concerning the estimated 12% recovery on account of claims in LBHI Class 9 (Derivative Guarantee Claims) of the Plan as set forth in the Recovery Analysis attached to the Debtors' Disclosure Statement.  (See Debtors' Disclosure Statement, Exhibit 4).[55]

---

[51] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[52] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[53] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[54] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[55] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

55.    All Documents and Communications concerning priority payments that would be incurred by the Debtors' estates in a liquidation under chapter 7 of the Bankruptcy Code that would not be incurred in the Debtors' chapter 11 cases.[56]

56.    All Documents and Communications concerning payments on account of the rejection of executory contracts and unexpired leases that would be incurred by the Debtors' estates in a liquidation under chapter 7 of the Bankruptcy Code.[57]

57.    All Documents and Communications concerning any discount on the value of the Debtors' assets that would be incurred as a result of liquidating such assets in a liquidation under chapter 7 of the Bankruptcy Code as opposed to through the Plan.[58]

58.    All Documents and Communications concerning the proposed settlement treatment under the Proposed Ad Hoc Group Plan whereby if a class if Classes 18A through 18n (General Designated Non-Debtor Affiliate Third-Party Guarantee Claims) of the Proposed Ad Hoc Group Plan votes to accept the plan, each holder of an allowed claim in such accepting class shall be entitled to receive its pro rata share of plan consideration, provided that such pro rata share shall be determined using an amount equal to 70% of such allowed claim.[59]

59.    All Documents and Communications concerning the costs and expenses of liquidation that would be incurred by the Debtors' estates in a liquidation under chapter 7 of the Bankruptcy Code, including but not limited to (i) the compensation that would be paid to a chapter 7 trustee, as well as to counsel and other professionals retained by such trustee, (ii) asset

---

[56] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[57] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[58] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[59] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

disposition expenses, (iii) litigation costs and (iv) unpaid expenses incurred by the Debtors in the

Debtors' chapter 11 cases.[60]

      60.    All Documents and Communications concerning the estimated 10.1%

recovery on claims in LBHI Class 9 (Derivative Guarantee Claims) of the Plan in liquidation of

the Debtors under chapter 7 of the Bankruptcy Code as set forth in the liquidation analysis

attached to the Debtors' Disclosure Statement.  (See Debtors' Disclosure Statement, Exhibit 5.)[61]

      61.    All Documents and Communications concerning the estimated 13.6%

recovery on account of claims in Classes 18A-18n (General Designated Non-Debtor Affiliate

Third Party Guarantee Claims) of the Proposed Ad Hoc Group Plan as set forth in the recovery

analysis attached to the Ad Hoc Group Disclosure Statement.[62]

      62.    All Documents and Communications reviewed by or relied upon by the

Creditors' Committee in analyzing the estimated 13.6% recovery on account of claims in Classes

18A-18n (General Designated Non-Debtor Affiliate Third Party Guarantee Claims) in the

Proposed Ad Hoc Group Plan as set forth in the recovery analysis attached to the Ad Hoc Group

Disclosure Statement.[63]

      63.    All Documents and Communications concerning any analyses of the

liquidation analyses attached to the Ad Hoc Group Disclosure Statement or the Debtor'

Disclosure Statement.[64]

---

[60] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[61] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[62] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[63] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[64] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE

64.     All Documents and Communications reviewed by or relied upon by the Creditors' Committee in connection with any analyses of the liquidation analyses attached to the Ad Hoc Group Disclosure Statement or the Debtors' Disclosure Statement.[65]

65.     All documents concerning communications between and among the Debtors and their affiliates, the Creditors' Committee, the Ad Hoc Group, or any creditor of the Debtors or their affiliates regarding the amendment of the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors dated April 14, 2010 (the "April 14, 2010 Plan").[66]

66.     All Documents and Communications concerning the views and/or recommendations of the Creditors' Committee, the Debtors, or their affiliates, or any creditor of the Debtors or their affiliates regarding the amendment of the April 14, 2010 Plan.[67]

67.     All Documents and Communications concerning the classification of claims in Classes 7A-7R (Third-Party Guarantee Claims) in the April 14, 2010 Plan.[68]

68.     All Documents and Communications concerning the proposed distribution of Pro Rata Shhare of Available Cash from LBHI on account of claims in (i) Class 3 (Senior Unsecured Claims Against LBHI) and (ii) Classes 7A-7R (Third-Party Guarantee Claims) in the April 14, 2010 Plan.[69]

---

[65] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[66] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[67] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[68] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

[69] Requested by the following members of Group 3:  CarVal, BdB, and Elliott.

24

**DRAFT CONSOLIDATED REQUESTS TO THE CREDITORS' COMMITTEE**

Dated:      June 14, 2011
            New York, New York

                                        /DRAFT_____
                                        Harvey R. Miller
                                        Irwin H. Warren
                                        Alfredo R. Pérez
                                        Randi W. Singer
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153-0119
                                        Telephone:      (212) 310-8000
                                        Facsimile:      (212) 310-8007
                                        Attorneys for Debtors

**EXHIBIT O**

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

**PURSUANT TO PARAGRAPH 6 OF THE ORDER
ESTABLISHING SCHEDULE AND PROCEDURES IN CONNECTION WITH
DISCOVERY RELATED TO PLAN CONFIRMATION AND OTHER ISSUES,
DATED APRIL 14, 2011 [DOCKET NO. 16003]**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Harvey R. Miller
Alfredo R. Pérez
Randi W. Singer
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | Case No. 08-13555 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

**NOTE:** * is used to capture all forms of a word (e.g. deliver* = deliver, delivers, delivery etc.)

| "Lehman Entity Search Terms"^ | TERMS REQUESTED BY GROUP 1[1] |
|---|---|
| | Leh*[2] |
| | LB*[3] |
| | LCPI |
| | 745 w/3 LLC |
| | PAMI |
| | CES w/3 aviation |
| | East w/3 Dover |
| | BNC |
| | Rose w/3 Ranch |
| | Kalakaua |
| | Bankhaus |
| | ALI* |
| | **TERMS REQUESTED BY CERTAIN MEMBERS OF GROUP 3 (CarVal, BdB, Elliott)** |
| | "International Unit" |
| | (intl w/3 Europe) |
| | pass-through |

**^**If You have used any acronym, code name or other designation/designated name for Lehman or any of its affiliates, please supplement the above-list of terms with any and all such term(s), and notify the Debtors of any such terms being added to the "Lehman Entity Search Terms."

PART I: TERMS TO BE RUN WITH "LEHMAN ENTITY SEARCH TERMS"

| No. | Terms |
|---|---|
| | **SEARCH TERMS REQUESTED BY GROUP 1** |
| 1. | Lehman Entity Search Terms AND (("risk appetite" OR VaR OR RA) w/20 (calculat* OR analyz* OR analys* OR estimat* OR comput* OR evaluat* OR assess*)) |
| 2. | Lehman Entity Search Terms AND (bank OR depository OR wir*) |
| 3. | Lehman Entity Search Terms AND (CVA OR valu* w/5 adjust*) |
| 4. | Lehman Entity Search Terms AND (employ* OR pay*) |

---

[1] "Group 1" is defined as listed on pages 2 through 9 of Exhibit A to the Debtors' Notice of Second Amended Official Service List for Plan Discovery, dated May 26, 2011, with the exception of Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Eldon Street (Raven) Limited (in liquidation), Eldon Street Holdings Limited (in administration), Grace Hotels Limited (in liquidation), LB Equity (Nominees No 7) Limited (in liquidation), LB SF No. 1 (in administration), and Storm Funding Limited (in administration).

[2] Also proposed by certain members of Group 3 (CarVal Investors UK Limited ("CarVal"), Bundesverband deutscher Banken e.V. ("BdB"), and Elliott Associates, L.P. ("Elliott")).

[3] Also proposed by certain members of Group 3 (CarVal, BdB, and Elliott).

2

### DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE

| | |
|---|---|
| 5. | Lehman Entity Search Terms AND (finance* OR solven*) |
| 6. | Lehman Entity Search Terms AND (formal* OR separate*) |
| 7. | Lehman Entity Search Terms AND (guaran* OR promise OR pledge OR oblig*) |
| 8. | Lehman Entity Search Terms AND (jump* w/3 def*) OR JTD |
| 9. | Lehman Entity Search Terms AND (officer* OR director*) |
| 10. | Lehman Entity Search Terms AND (own* OR entangle* OR title) |
| 11. | Lehman Entity Search Terms AND (propert* OR asset* OR liability*) |
| 12. | Lehman Entity Search Terms AND (shar* OR allocate*) AND (expense* OR cost) |
| 13. | Lehman Entity Search Terms AND (single OR integr*) AND (glob* OR equity OR debt OR commod*) |
| 14. | Lehman Entity Search Terms AND (special w/5 purpose w/5 vehicle) OR SPV |
| 15. | Lehman Entity Search Terms AND affiliate* AND (distinct OR separ* OR seper*) |
| 16. | Lehman Entity Search Terms AND analy* OR review* OR estimat* OR assess* OR eval* OR (rate w/5 return) OR workout OR restructur* OR forecast* |
| 17. | Lehman Entity Search Terms AND asset* AND own* |
| 18. | Lehman Entity Search Terms AND assump* w/5 (respons* OR oblig*) |
| 19. | Lehman Entity Search Terms AND avoid* AND cost* |
| 20. | Lehman Entity Search Terms AND blanket AND (guaran* OR gty) |
| 21. | Lehman Entity Search Terms AND business AND (one OR line OR operat*) |
| 22. | Lehman Entity Search Terms AND capital* |
| 23. | Lehman Entity Search Terms AND cash w/5 manag* |
| 24. | Lehman Entity Search Terms AND CDA |
| 25. | Lehman Entity Search Terms AND central* AND (cash OR manage*) |
| 26. | Lehman Entity Search Terms AND charge* w/3 off |
| 27. | Lehman Entity Search Terms AND claim AND (purchas* OR sell OR sale OR sold OR transf* OR contingent OR unliquid*) |
| 28. | Lehman Entity Search Terms AND comm* AND (invest* OR min*) |
| 29. | Lehman Entity Search Terms AND corp* w/5 (seperat* OR separat*) |
| 30. | Lehman Entity Search Terms AND counterpart* OR CP OR (counter* w/2 part*) |
| 31. | Lehman Entity Search Terms AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli*)[4] |
| 32. | Lehman Entity Search Terms AND creditworth* |
| 33. | Lehman Entity Search Terms AND day-to-day OR DTD |
| 34. | Lehman Entity Search Terms AND default* |
| 35. | Lehman Entity Search Terms AND derivative* |
| 36. | Lehman Entity Search Terms AND domestic w/5 sub* |
| 37. | Lehman Entity Search Terms AND DRE OR (deriv* w/2 risk w/2 equiv*) |
| 38. | Lehman Entity Search Terms AND due w/5 diligence |
| 39. | Lehman Entity Search Terms AND enterp* |

---

[4] Search term has been modified to remove an extraneous "OR."

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

| 40. | Lehman Entity Search Terms AND expos* w/5 (contingent OR future OR contract* OR peak OR average) |
|---|---|
| 41. | Lehman Entity Search Terms AND fund* |
| 42. | Lehman Entity Search Terms AND guaran* OR gty |
| 43. | Lehman Entity Search Terms AND hedg* |
| 44. | Lehman Entity Search Terms AND hold* w/5 compan* w/5 structur* |
| 45. | Lehman Entity Search Terms AND insolv* |
| 46. | Lehman Entity Search Terms AND instruct* OR direct* OR polic* OR proced* OR protocol* OR practice* OR manual* |
| 47. | Lehman Entity Search Terms AND integrat* AND operat* |
| 48. | Lehman Entity Search Terms AND interco* |
| 49. | Lehman Entity Search Terms AND ISDA OR Master OR CSA |
| 50. | Lehman Entity Search Terms AND liquid* |
| 51. | Lehman Entity Search Terms AND master w/5 netting w/5 agree* |
| 52. | Lehman Entity Search Terms AND MTM OR mark w/5 market |
| 53. | Lehman Entity Search Terms AND non-senior |
| 54. | Lehman Entity Search Terms AND office OR premise* |
| 55. | Lehman Entity Search Terms AND oper* w/10 entit* |
| 56. | Lehman Entity Search Terms AND part* w/5 con* |
| 57. | Lehman Entity Search Terms AND paymaster |
| 58. | Lehman Entity Search Terms AND PFE OR MFE |
| 59. | Lehman Entity Search Terms AND resolution |
| 60. | Lehman Entity Search Terms AND risk* w/10 (credit* OR counterpart* OR valu* OR default OR current OR credit OR peak OR basis* OR hedg*) |
| 61. | Lehman Entity Search Terms AND securit* AND (separate* OR balance OR possess*) |
| 62. | Lehman Entity Search Terms AND securit* AND statement* |
| 63. | Lehman Entity Search Terms AND senior OR unsecur* OR secur* |
| 64. | Lehman Entity Search Terms AND struct* w/10 (hold* OR comp*) |
| 65. | Lehman Entity Search Terms AND sub* w/5 (struct* OR contrac*) |
| 66. | Lehman Entity Search Terms AND support w/5 (implicit OR liquid*) |
| 67. | Lehman Entity Search Terms AND trad* AND (awar* OR know* OR unreg*) |
| 68. | Lehman Entity Search Terms AND transfer* |
| 69. | Lehman Entity Search Terms AND treasur* |
| 70. | Lehman Entity Search Terms AND uncollateral* or collateral* |
| 71. | Lehman Entity Search Terms AND valu* w/5 risk* |
| 72. | Lehman Entity Search Terms AND write w/3 down |
| 73. | Lehman Entity Search Terms AND commingl* |
| 74. | Lehman Entity Search Terms AND entangle* |
| 75. | Lehman Entity Search Terms AND (inter-debtor OR "inter-debtor") interdebtor OR inter-company OR "inter company" OR intercompany" |
| 76. | Lehman Entity Search Terms AND recharacteriz* |
| 77. | Lehman Entity Search Terms AND rel* AND seperat* |
| 78. | Lehman Entity Search Terms AND (no* w/5 con* OR non-con*) |
| 79. | Lehman Entity Search Terms AND ((sub* w/3 con*) OR subcon) |

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

| 80. | Lehman Entity Search Terms AND (POR or plan) |
|---|---|
| 81. | Lehman Entity Search Terms AND (Uzzi OR Paulson OR Kamensky OR Alix* OR Goldman OR Moloney OR O'Neal OR Tormey) |
| | **SEARCH TERMS REQUESTED BY CERTAIN MEMBERS OF GROUP 3 (Carval; BdB; Elliott; Diamondback Master Fund, Ltd.)** |
| 82. | ((credit OR risk) w/5 (risk OR rat* OR eval* OR review* OR worth*)) AND [Lehman Entity Search Terms] |
| 83. | (credit w/5 risk) AND [Lehman Entity Search Terms] |
| 84. | [Lehman Entity Search Terms] AND credit* AND (adjust* OR contingent* OR risk* OR counterpart* OR CP OR (counter* w/2 part*) OR current OR loss* OR enhance* OR approv* OR reserve* OR valu* OR rating OR report* OR review* OR estimate* OR rely OR reli* OR eval* OR worth* OR entit* OR unit OR company OR shell OR sub* OR affiliate) |
| 85. | [Lehman Entity Search Terms] AND (BOD OR Board) AND (guarant* OR gty) |

## PART II: OTHER SEARCH TERMS

| No. | Terms |
|---|---|
| | **SEARCH TERMS REQUESTED BY GROUP 1** |
| 86. | (contingent OR unliquid*) AND ((Leh* w/5 Asia) OR LBAH) |
| 87. | (Novat*OR Net*) AND ((Leh* w/5 Asia) OR LBAH OR LBIE OR (Leh* w/5 Europe)) |
| 88. | LBF AND claim |
| 89. | LBI AND (sale* OR trade*) |
| 90. | Leh* AND Expos* |
| 91. | Leh* AND recover* |
| 92. | Leh* w/5 CR01 |
| 93. | Leh* AND Foreign /s Affiliate* |
| 94. | unreg* AND (LBI or LBIE) |
| 95. | Paolo OR Tonucci |
| 96. | Azerad |
| 97. | Echtermann |
| 98. | "Ad Hoc Group of Lehman Brothers Creditors" |
| 99. | "Goldman Group" |
| 100. | ("Noncon*" OR "Non-con*") AND (plan OR creditor OR group) |
| | **SEARCH TERMS REQUESTED BY CERTAIN MEMBERS OF GROUP 3 (Carval; BdB; Elliott)** |
| 101. | "ad hoc" |
| 102. | .7 w/10 settl* |
| 103. | ($1 OR estimat* OR settl* OR agree*) /p (LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) |
| 104. | non-con* OR noncon* OR (non w/3 con*) |
| 105. | disclosure w/3 (statement OR stmt) OR DS |

**DRAFT CONSOLIDATED SEARCH TERMS TO THE CREDITORS' COMMITTEE**

| | |
|---|---|
| 106. | (Support* OR vot* OR accept* OR approv*) AND (plan OR POR OR "disclosure statement" OR DS) |
| 107. | "time value" |
| 108. | (12 OR 10.1 OR 13.6) w/10 recover* |
| 109. | (20 OR 70) w/20 (calc* OR determin* OR reallocat* OR adjust* OR redistribut* OR settl* OR turnover OR agree* OR (turn* /2 over)) |
| 110. | (priority w/5 (payment OR pmt)) AND liquid* |
| 111. | (exec* w/5 (contract OR K)) AND liquid* |
| 112. | analysis w/3 liquid* |
| 113. | subcon* OR sub-con* OR (sub* w/3 con*) |
| 114. | (guarant* OR gty) /p (enforc* OR valid* OR allow* OR legal*) |
| 115. | (derivative OR swap OR CDS OR ISDA OR rep OR repurchase OR "Master Agreement" OR future OR forward OR "securities contract") AND (guarant* OR gty) |
| 116. | ((inten* OR express) w/5 benef*) AND (guarant* OR gty) |
| 117. | class* /p (guarant* OR gty) |
| 118. | class* w/15 (3 OR 6 OR 7 OR 9 OR 18) |
| 119. | recover* w/10 analy* |
| 120. | (expens* w/20 (overhead OR employee OR management OR accounting OR tax* OR (cash w/3 management))) AND (conf* OR liquid* OR LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) |
| 121. | (LBIE OR "International Europe" OR (intl w/3 Europe) OR (Leh* w/5 Europe)) w/20 (financ* w/5 (statement OR stmt)) |
| 122. | (inaccura* OR mistake OR problem OR wrong OR error) w/10 (book OR record) |
| 123. | (net w/3 capital) AND (maintain OR require* OR min*) |

**EXHIBIT P**

# LEHMAN BROTHERS HOLDINGS INC.

## PLAN DISCOVERY EMAIL SERVICE LIST

acaton@kramerlevin.com

adam.hirsch@srz.com

adash@brownrudnick.com

aehrlich@paulweiss.com

afrisch@andrewfrisch.com

agoodman@kramerlevin.com

ahammond@ny.whitecase.com

akornberg@paulweiss.com

alfred.day@ropesgray.com

andrea.b.schwartz@usdoj.gov

andrew.brozman@cliffordchance.com

anthony.candido@cliffordchance.com

arovira@sidley.com

arwolf@wlrk.com

ashaffer@mayerbrown.com

azolot@mayerbrown.com

bbennett@dl.com

beemen@ekvandoorne.com

bernhard.kaiser@freshfields.com

blair.connelly@lw.com

bmerkt@stroock.com

bmoran@mklawnj.com

bryankaplan@paulhastings.com

btrust@mayerbrown.com

bundesbank.plandiscovery@freshfields.com

cchow@stutman.com

chammerman@paulweiss.com

charlotte.schildt@cms-hs.com

chip.goodrich@db.com

cshore@ny.whitecase.com

csiegel@kramerlevin.com

cszyfer@stroock.com

daniel.laguardia@shearman.com

david.kronenberg@cwt.com

dbartner@shearman.com

dcohen2@milbank.com

ddavis@paulweiss.com

deggermann@kramerlevin.com

dgropper@aurelius-capital.com

dmolton@brownrudnick.com

dneier@winston.com

ejoel@elliottmgmt.com

kevin.c.kelley@chase.com

kmanoukian@akingump.com

ekirkpatrick@greerherz.com

eldon.cube.discovery@davispolk.com

eldon.holdings.discovery@davispolk.com

eldon.raven.discovery@davispolk.com

elevin@lowenstein.com

eli.kay-oliphant@lw.com

ellen.halstead@cwt.com

f.verhoeven@houthoff.com

farrington.yates@snrdenton.com

fblack@greerherz.com

ffogel@silverpointcapital.com

fhealy@stroock.com

fredric.sosnick@shearman.com

ghorowitz@kramerlevin.com

glemann@hugheshubbard.com

grace.hotels.discovery@davispolk.com

gregory.petrick@cwt.com

greilshe@hugheshubbard.com

gunila.weber@freshfields.com

howard.hawkins@cwt.com

hsnovikoff@wlrk.com

hsteel@brownrudnick.com

igoldstein@dl.com

ingrid.bagby@cwt.com

irwin.warren@weil.com

j.greenall-ota@lehmanbrothersjapan.com

j.sternman@kattenlaw.com

jconlon@mayerbrown.com

jeff.friedman@kattenlaw.com

jeffrey.gettleman@kirkland.com

jillian.gutmanmann@dechert.com

jjtancredi@daypitney.com

jjureller@klestadt.com

joachim.kuehne@cms-hs.com

jodikleinick@paulhastings.com

joseph.fabiani@lw.com

joshua.dorchak@bingham.com

jrlederer@diamondbackcap.com

jsaferstein@paulweiss.com

jwcohen@daypitney.com

kbromberg@brownrudnick.com

kbromberg@brownrudnick.com

monaco.discovery@davispolk.com

mpaskin@cravath.com

# LEHMAN BROTHERS HOLDINGS INC.
Pg 272 of 272
PLAN DISCOVERY EMAIL SERVICE LIST

| | |
|---|---|
| lawrence.gelber@srz.com | mrosenthal@gibsondunn.com |
| lb.equity.discovery@davispolk.com | msiegel@brownrudnick.com |
| lb.europe.discovery@davispolk.com | mwiener@dl.com |
| lb.holds.plc.discovery@davispolk.com | nbassett@milbank.com |
| lb.indon.discovery@davispolk.com | ned.schodek@shearman.com |
| lb.inter2.discovery@davispolk.com | patrick.maxcy@snrdenton.com |
| lb.limited.discovery@davispolk.com | pdublin@akingump.com |
| lb.ptg.discovery@davispolk.com | peter.friedman@cwt.com |
| lb.re.fin.discovery@davispolk.com | peter.griep@bundesbank.de |
| lb.uk.holds.discovery@davispolk.com | peter.welsh@ropesgray.com |
| lb.uk.re.discovery@davispolk.com | pkizel@lowenstein.com |
| lb-discovery@cgsh.com | pshalhoub@willkie.com |
| lbie.discovery@davispolk.com | qyang@statestreet.com |
| lbsf.no1.discovery@davispolk.com | r.bejger@provequity.com |
| lehman.mortg.discovery@davispolk.com | r.schimmelpenninck@houthoff.com |
| lehmannotices@kingstreet.com | randi.singer@weil.com |
| lehmanplandiscovery@weil.com | richard.alexander@aporter.com |
| lelin@ny.whitecase.com | rkrakow@gibsondunn.com |
| lelin@whitecase.com | rlevin@cravath.com |
| lmarinuzzi@mofo.com | rmay@ngalp.com |
| lplush@mayerbrown.com | robert.piasio@nomura.com |
| lucdespins@paulhastings.com | rodman.forter@ropesgray.com |
| m.dominguez@provequity.com | sabin.willett@bingham.com |
| mable.discovery@davispolk.com | sara.tapinekis@cliffordchance.com |
| mabrams@willkie.com | scott.koerner@snrdenton.com |
| margolin@hugheshubbard.com | sengelhardt@mofo.com |
| maria.douvas@morganstanley.com | shmuel.vasser@dechert.com |
| mark.broude@lw.com | solomon.noh@shearman.com |
| mark.ellenberg@cwt.com | sparbery@ppbadvisory.com |
| mark.somerstein@ropesgray.com | srappaport@milbank.com |
| matthew.morningstar@morganstanley.com | sray@stutman.com |
| mayres@ppbadvisory.com | sree@lcbf.com |
| metkin@lowenstein.com | sshimshak@paulweiss.com |
| mguggenbuehl@vischer.com | storm.discovery@davispolk.com |
| michael.busch@fnf.com | tannweiler@greerherz.com |
| michael.canning@aporter.com | tklestadt@klestadt.com |
| michael.fabiano@rbs.com | tmayer@kramerlevin.com |
| mjacks02@sidley.com | walter.stuart@freshfields.com |
| mlandman@lcbf.com | will.sugden@alston.com |
| mohan.nadig@lehmanbrothersjapan.com | wilten@hugheshubbard.com |
| wroll@shearman.com | |
| zestdew.discovery@davispolk.com | |

Count: 170