BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
Michael A. Fagone, Esq.
Jeremy R. Fischer, Esq.
*Counsel for Citibank, N.A. and Wilmington Trust Company*
*in their respective capacities as indenture trustees*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.*, | **Case No. 08-13555(JMP)** |
| **Debtors.** | **Jointly Administered** |


### RESPONSE OF CITIBANK, N.A. AND WILMINGTON TRUST COMPANY TO DEBTORS' ONE HUNDRED NINTH OMNIBUS OBJECTION TO CLAIMS (INSUFFICIENT DOCUMENTATION)

Citibank, N.A. and Wilmington Trust Company, in their respective capacities as

indenture trustees (collectively, the "Trustees"), hereby respond to the One Hundred Ninth

Omnibus Objection to Claims (Insufficient Documentation) [D.E. 15008] (the "Objection")

filed by the Debtors in the above-captioned chapter 11 cases.[1]  As set forth in greater detail

below, the Objection proceeds from a faulty premise (*i.e.*, that certain properly-completed and

timely-filed proofs of claim "violate" the terms of this Court's bar date order) and seeks relief

that is not appropriate in any event (*i.e.*, summary disallowance of the claims).  The Trustees

acknowledge that a significant portion of the claims are either contingent or unliquidated, or

both.  However, a claim's status as contingent or unliquidated does not, in and of itself, lead to

---

[1]Capitalized terms used but not defined herein shall have, for purposes of this Response, the meanings assigned to such terms in the Objection.

disallowance. As it relates to the proofs of claim filed by the Trustees, the Objection should be overruled.

## I.    **INTRODUCTION**

The Objection addresses thirteen (13) proofs of claim filed by Citibank, N.A. as an indenture trustee ("Citi"), and two (2) proofs of claim filed by Wilmington Trust Company as an indenture trustee ("WTC").[2] Each Proof of Claim was prepared using the prescribed Official Form, was signed by a representative of the applicable Trustee, and was received by the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, on September 21, 2009 (which was one day prior to the bar date). In general, the Claims arise out of the securitization of tens of thousands of residential mortgage loans and, more specifically, out of the obligations of one of the Debtors (Lehman Brothers Holdings, Inc.) as the seller and the obligations of another Debtor (Structured Assets Securities Corporation) as the depositor in connection with those transactions. Each Proof of Claim is substantially similar to the others, with the exception of the deal specific information relating to the transactions covered by a particular Proof of Claim. One of the Proofs of Claim is attached hereto as **Exhibit A**.    As noted on the addenda attached to the Proofs of Claim, the Claims are contingent or unliquidated in several respects.

The Objection does not challenge the validity of the Claims: the Debtors admit that they "are not able to assess the validity" of the Claims. *See* Objection, ¶ 2. As a result of this inability to assess the validity of the Claims, the Debtors suggest that the Claims "do not constitute valid *prima facie* claim[s]" and ask the Court to disallow and expunge the claims in their entirety. *See* id. ¶ 22. The Objection does not articulate any other basis for disallowance

---

[2] The proofs of claim filed by Citi and addressed by the Objection are numbered 22776, 22775, 22639, 22774, 22604, 22721, 22606, 22720, 22719, 22605, 22717, 22718 and 22761. The proofs of claim filed by WTC and addressed by the Objection are numbered 22766 and 22773. As used herein, the term "Proofs of Claim" means all of these proofs of claims and the term "Claims" means all of the claims described in the Proofs of Claim and the addenda attached thereto.

of the Claims, although the Debtors have reserved their rights to raise additional grounds for objection to the Claims.

## II.    ARGUMENT

### A.    The Proofs of Claim Constitute *Prima Facie* Evidence of the Claims Because They Were Filed in Compliance with the Bankruptcy Code and the Bankruptcy Rules.

The Bankruptcy Code establishes who may file a proof of claim, *see* 11 U.S.C. § 501(a), and Rule 3001 of the Bankruptcy Rules describes how a proof of claim should be filed. A proof of claim must be in writing and must substantially conform to the Official Form, *see* Fed. R. Bankr. P. 3001(a), and it must be executed "by the creditor or the creditor's authorized agent." Fed. R. Bankr. P. 3001(b). Although a claim based on a writing must generally be supported "by the original or a duplicate" of the writing, Fed. R. Bankr. P. 3001(c), "[t]he official form allows the creditor whose documents are 'voluminous' to attach a summary . . . ." Lawrence R. Ahern, III & Nancy F. Maclean, Bankr. Procedure Manual § 3001:3 (2010 ed.) (*citing* Official Form 10); *see also* In re Minbatiwalla, 424 B.R. 104, 111-12 (Bankr. S.D.N.Y. 2010); Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation), 318 B.R. 147, 151 (8th Cir. B.A.P. 2004); In re Porter, 374 B.R. 471, 480-81 (Bankr. D. Conn. 2007); In re Armstrong, 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005). A timely and properly filed proof of claim "constitutes *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden then shifts to the objecting party to "come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2nd Cir. B.A.P. 2000) (internal citations omitted); *see also* In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3rd Cir. 1992); In re Be-Mac Transp. Co., Inc., 83 F.3d 1020, 1025 n.3 (8th Cir. 1996); Nancy C. Dreher, Bankr. Law Manual § 6:7 (5th ed. rev. Nov. 2010).

Here, the Proofs of Claim were properly completed and timely filed. Each Proof of Claim has an addendum describing the underlying transaction documents, including citations to relevant, or potentially relevant, sections of the documents. Each addendum has an exhibit identifying (a) the names of the trusts involved in the transactions covered by the Proof of Claim (*e.g.*, Structured Asset Securities Corporation 2003-03XN); (b) the number of underlying residential mortgage loans included in each trust; (c) the aggregate unpaid principal balance for the mortgage loans in each transaction as of June 30, 2009; and (d) certain fees and expenses incurred as of June 30, 2009. This is sufficient to comply with the applicable parts of the Bankruptcy Code and the Bankruptcy Rules and to give the Debtors and other interested parties fair notice regarding the Claims and the bases for them. *Cf.* In re Today's Destiny, Inc., No. 05-90080, 2008 WL 5479109, at *5 (Bankr. S.D. Tex. Nov. 26, 2008) (denying objections to proofs of claims that substantially complied with Rule 3001 where the filed proofs of claim "sufficiently inform[ed] objecting parties of the basis of [the] claims.").

Contrary to the Debtors' argument, the Proofs of Claim do not violate the Bar Date Order. That order provides, in pertinent part, that:

> [E]ach Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially with the Proof of Claim Form; (iv) state the name and case number of the specific Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why documentation is not available; and (vii) be signed by the claimant or by an authorized agent of the claimant . . . .

Bar Date Order [D.E. 4271] at 6. This mirrors the requirements of the Rule 3001 of the Bankruptcy Rules and, as described above, the Trustees have met the letter and spirit of those requirements. The Objection is based on a strained interpretation of the Bar Date Order:

according to the Debtors, the Claims should be disallowed because (a) they were filed without every shred of relevant evidence in support of the Claims and (b) the Trustees have not provided every shred of information that the Debtors have requested.[3]    The Court should decline the Debtors' invitation to construe the Bar Date Order in this manner.

**B.    The Objection Does Not Recite Any Basis For Disallowance of the Claims Under 11 U.S.C. § 502(b).**

Allowance of claims is governed by Section 502 of the Bankruptcy Code.   "A claim . . . which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."  11 U.S.C.  § 502(a).   If an objection to a claim is made, the Court is required to determine the amount of the claim and to allow the claim unless one or more of the reasons set forth in the nine subparagraphs of Section 502(b) is applicable.  See 3 William L. Norton, Jr., Norton Bankr. Law & Practice 3d § 48:25 (rev. Apr. 2011) ("[a]n objection should state the grounds as to why the claim should be denied by giving facts and citing one of the nine subparagraphs of Code § 502(b).").

A recent United States Supreme Court decision, Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443 (2007), establishes that claims may not be disallowed for any reason not expressly listed in Section 502(b) of the Bankruptcy Code.  In Travelers, the Supreme Court invalidated the so-called "Fobian rule," which provided that "attorneys fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.'"  Id. at 451 (internal quotations omitted).   The Supreme Court held that:

> The absence of textual support is fatal for the *Fobian* rule. Consistent with our prior statements regarding creditors' entitlements in bankruptcy, we generally presume that claims enforceable under applicable state law will be allowed in

---

[3] If the Proofs of Claim violated the Bar Date Order, as the Debtors suggest, then the Debtors' subsequent requests for information from the Trustees and the Trustees' compliance, or lack thereof, with those requests would be irrelevant.  Either the Proofs of Claim violated the Bar Date Order when they were filed or they did not.

5

bankruptcy unless they are expressly disallowed.   See 11 U.S.C.
§ 502(b).

Id. at 452 (internal citations omitted).   Commentators have interpreted Travelers to mean that "[a] claim must be allowed unless it comes within any of the grounds for disallowance under § 502(b)." Bankr. Law Manual § 6.8 (citing Travelers).

"Insufficient documentation" is not one of the grounds for disallowance listed in Section 502(b) of the Bankruptcy Code.   For this reason, the "failure to attach documents [pursuant to Bankruptcy Rule 3001(c)] . . . is not, by itself, a basis for disallowance of a claim." In re Hartman, No. 09-20901, 2009 WL 4043096, at *3 (Bankr. D.N.J. Nov. 20, 2009) (insufficient documentation "is not included in the list of reasons for disallowance of a claim in § 502(b) of the Bankruptcy Code.") (internal citations omitted); see also In re Asarco, LLC, No. 05-21207, 2009 WL 2581272, at *2 (Bankr. S.D. Tex. Aug. 19, 2009) (disallowing claim filed without supporting documentation because there was no "legal basis" for the claim); Armstrong, 320 B.R. at 104 ("In cases where the creditor has not met the standards of Bankruptcy Rule 3001 and Official Form 10, the claim is not automatically disallowed; rather, it is deprived of the prima facie validity which it could otherwise have obtained."); In re Heath, 331 B.R. 424, 426 (9th Cir. B.A.P. 2005) (holding that failure to attach supporting documents is not proper ground for claim disallowance); In re Moreno, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006) (observing that the "vast majority of courts" conclude that "insufficient documentation is not a basis to disallow a claim under § 502 of the Bankruptcy Code") (citing Dove-Nation, 318 B.R. at 147; In re Burkett, 329 B.R. 820, 828 (Bankr. S.D. Ohio 2005); In re Shank, 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004); In re Cluff, 313 B.R. 323, 337 n.47 (Bankr. D. Utah 2004)).

This view, consistent with Travelers, is based on the proposition that "[b]ankruptcy courts are bound by the plain meaning of the Bankruptcy Code," and thus "there is no discretion

6

to disallow a claim for any reason other than those stated in § 502," including insufficient documentation pursuant to Bankruptcy Rule 3001(c).  Hartman, 2009 WL 4043096, at *3 (internal citations omitted).  As one court succinctly stated:

> The Bankruptcy Rules do not effect substantive rights, "for when Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated '[s]uch rules shall not abridge, enlarge, or modify any substantive right.'"  The alteration or elimination of a creditor's proof of claim effects a substantive right.  Bankruptcy Rule 3001 does not enlarge the Debtor's statutory reasons to disallow a claim; it merely "defines the process by which [the claims] may be effected."

Cluff, 313 B.R. at 332 (quoting In re Fesq., 153 F.3d 113, 116 (3d Cir. 1998) and 28 U.S.C. § 2075).  The majority view is also supported by the legislative history of Section 502(b), which similarly distinguishes between the respective roles of the Bankruptcy Code and the Bankruptcy Rules:

> [Section 502(b)] prescribes the grounds on which a claim may be disallowed.  The court will apply these standards if there is an objection to a proof of claim.  The burden of proof on the issue of allowance is left to the Rules of Bankruptcy Procedure.

S.R. REP. No. 95-989, ch. 5 at 61 (1978), U.S.C.C.A.N. 1978, 5787, 5848.

Here, the Objection does not invoke any of the nine bases for disallowance contained in Section 502(b).  Accordingly, even if all of the Debtors' allegations were accepted as true, the Objection is insufficient, as a matter of law, to support disallowance of the Claims.  The Trustees agree with the Debtors' contention that evaluating the types of claims covered by the Proofs of Claim will be "extremely document intensive" and will require detailed review of a substantial amount of information.  See Objection, ¶ 2.  There are approximately 70,000 mortgage loans covered by the Proofs of Claims, and there are multiple and voluminous documents describing the transactions involved in each securitization and the relative rights, duties, and liabilities of

the various parties. At this point, the Trustees are aware of defects with only a handful of the underlying mortgage loans; there may, however, be additional defects discovered in the future.[4] The Debtors' liability for breach of representation and warranty may be depend, in certain transactions, on whether some other third party has liability for the same breach. There may be other issues that need to be resolved in connection with the determination of the amount of the Claims.

Nevertheless, whatever rights exist vis-à-vis the Debtors on account of known or later-discovered breaches constitute claims for purposes of the Bankruptcy Code. *See* 11 U.S.C. § 101(5) (defining the term "claim" to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured . . . ."). A claim's status as contingent or unliquidated is not a basis for disallowance of the claim. In fact, the Bankruptcy Code expressly contemplates the allowance of contingent and unliquidated claims. *See* 11 U.S.C. § 502(b)(1); *see also* 11 U.S.C. § 502(c) (providing for the estimation of contingent or unliquidated claims for the purpose of allowance); 11 U.S.C. § 101(5) (defining the term "claim"). The Trustees do not contend that the Claims should be allowed in an amount equal to the aggregate amount of the underlying mortgage loans in each transaction; doing so would grossly overstate the amount of the Claims. But the Debtors' proposal to expunge the claims is similarly unfair and does not comport with basic principles of the claims allowance process in cases under the Bankruptcy Code.

---

[4] In fact, Citi provided certain information to the Debtors with respect to asserted breaches of representations and warranties in connection with six (6) mortgage loans in one of the transactions covered by a Proof of Claim. That information was obtained by Citi from the master servicer, an entity that is or was affiliated with one or more of the Debtors. Some of the information was included in the addendum to Claim No. 22718 and additional information concerning those asserted breaches was provided at the Debtors' request. The Objection does not affect Claim No. 22718 insofar as it asserts a claim for $950,961.18 for debts arising from those six mortgage loans. Neither Trustee can provide information about other potential breaches of representations and warranties when the Trustees do not have that information.

The Debtors do not suggest that they lack the documentation to demonstrate their liability in the event certain representations and warranties are later found to have been breached. Rather, they argue that the Trustees have not provided specific loan-level information about breaches that might later be found to exist. In short, the Debtors argue that the Proofs of Claim should be disallowed because the Trustees are unable to document the very contingencies which make the Claims contingent and/or unliquidated. Indeed, the Objection fails to even acknowledge that the Proofs of Claim assert contingent and/or unliquidated Claims, but rather, proceeds as if the Claims were fixed and liquidated and the Trustees failed to provide proof thereof. The Debtors' premise – that the Trustees should produce sufficient documentation to evidence the existence and amount of claims that are currently unknown – is incompatible with the Bankruptcy Code's definition of "claim," would render useless Section 502(c), and would have the effect of disallowing all contingent and/or unliquidated claims.

Moreover, the Claims are not limited to "breach of representation and warranty" claims against the Debtors.[5] Under the applicable transaction documents, the Debtors have other obligations, including reimbursement of certain fees and expenses and the provision of certain information or reports. The Debtors apparently do not contend that those claims are insufficiently documented.

---

[5] As noted in the Objection and in the supporting Declaration of Keri Reed in Support of Debtors' One Hundred Ninth Omnibus Objection to Claims (Insufficient Documentation) [D.E. 15009], the Debtors have requested information regarding the underlying mortgage loans and the "breach of representation and warranty" claims that comprise the overwhelming majority of the Claims. The Trustees have provided some of the information requested by the Debtors. However, some of the information either does not exist or could be gathered only at substantial expense. While the incurrence of that expense may be required in another context (e.g., in connection with an estimation of the claims under Section 502(c)), the failure to provide it because the Debtors asked for it does not lead to the disallowance of the Claims.

**C.**     **A Determination that the Proofs of Claim Do Not Contain Sufficient Documentation or Otherwise Violated the Bar Date Order Would Merely Deprive Them of Their *Prima Facie* Validity, and Would Not Provide a Basis For Summarily Disallowing the Claims.**

As described above, insufficient documentation is not a valid basis for disallowance of a claim. Failure to file sufficient documentation pursuant to Bankruptcy Rule 3001(c) merely implicates the evidentiary effect of the proof of claim under Bankruptcy Rule 3001(f). "[W]here the creditor has not met the standards of Bankruptcy Rule 3001 and Official Form 10, the claim is not automatically disallowed; rather, it is deprived of the prima facie validity which it could otherwise have obtained [under Bankruptcy Rule 3001(f)]." Hartman, 2009 WL 4043096, at *3 (*citing* Cluff, 313 B.R. at 331); *see also* Armstrong, 320 B.R. at 106; In re Gilbreath, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008). Thus, the "[f]ailure to file appropriate supporting documentation [pursuant to Bankruptcy Rule 3001(c)] may . . . result in the claim losing its prima facie presumption of validity and amount." 3 Norton Bankr. Law & Practice 3d § 48:16. As a result of losing *prima facie* validity, the claimant merely "would have to establish the claim by a preponderance of the evidence." Armstrong, 320 B.R. at 109.

This Court has recently come to the same conclusion. *See* In re Feinberg, 442 B.R. 215 (Bankr. S.D.N.Y. 2010). In Feinberg, an assignee of a claim filed a proof of its claim, but failed to provide sufficient documentation supporting the assignment. *See* id. at 221-22. In overruling an "insufficient documentation" objection, the Court held that:

> Bank of New York's proof of claim is not prima facie evidence of the validity and the amount of claim because they failed to attach any documentation with respect to the assignment. This failure to comply with the requirements of Fed. R. Bankr. P. 3001 is an amendable defect and not fatal to the proof of claim . . . .

Id. at 222 (internal citations omitted; emphasis added).

In the Objection, the Debtors argue that "the [Proofs of Claim] do not constitute valid *prima facie* claims, and the Debtors request that they be disallowed and expunged in their entirety." *See* <u>Objection</u>, at ¶ 3. Even if this Court were to agree with the Debtors' contention that the Trustees failed to provide sufficient documentation in support of the Proofs of Claim pursuant to Bankruptcy Rule 3001(c) – a view that the Trustee do not share – the sole consequence of such failure would be that the Proofs of Claim would not accorded *prima facie* validity under Bankruptcy Rule 3001(f). As noted in <u>Feinberg</u>, "failure to comply with the requirements of Fed. R. Bankr. P. 3001 is . . . not fatal to the proof of claim . . . ." <u>Feinberg</u>, 442 B.R. at 222.

### III.    <u>CONCLUSION</u>

For all the reasons described above, the Trustees request that the Court overrule the Objection as it relates to the Proofs of Claims. Alternatively, to the extent that the Court does not overrule the Objection, the Trustees request that the Court treat further proceedings relating to the Proofs of Claim and the Objection as a contested matter governed by Part VII of the Federal Rules of Bankruptcy Procedure.

Dated: June 20, 2011

/s/ *Michael A. Fagone*
Michael A. Fagone, Esq.
Jeremy R. Fischer, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street, P.O. Box 9729
Portland, Maine 04104-5029
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
mfagone@bernsteinshur.com

*Counsel for Citibank, N.A. and Wilmington Trust Company*
*in their respective capacities as indenture trustees*

11

**EXHIBIT A**

| United States Bankruptcy Court/Southern District of New York | **PROOF OF CLAIM** |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: <br> Lehman Brothers Holdings Inc., et al. <br> Debtors. | Chapter 11 <br> Case No. 08-13555 (JMP) <br> (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held <br> Structured Assets Securities Corp. | Case No. of Debtor <br> 09-10558 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Citibank, N.A., in its capacity as trustee
c/o Michael A. Fagone, Esq.
Bernstein Shur
100 Middle Street, P.O. Box 9729
Portland, ME  04104-5029

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Telephone number: (207) 774-1200   Email Address: mfagone@bssn.com

Name and address where payment should be sent (if different from above)
Citibank, N.A., Agency & Trust
24221 Calle De La Louisa, Suite 308
Laguna Hills, CA 92653

Telephone number: (949) 206-8960   Email Address: jennifer.cupo@citi.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000022721

1. **Amount of Claim as of Date Case Filed:** $   Contingent; see Addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attached Addendum
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☑ Other
Describe: See attached Addendum
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 21 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/17/09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Jennifer Cupo, Director   _[signature]_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view
your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-13555 (JMP) |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Judge James M. Peck |

## ADDENDUM TO PROOF OF CLAIM OF CITIBANK, N.A. IN ITS CAPACITY AS TRUSTEE AND IN OTHER CAPACITIES

Citibank, N.A., in its capacity as trustee, paying agent and other similar capacities (the "Trustee") files this Proof of Claim against Structured Asset Securities Corporation (the "Depositor," the "Debtor," or, together with the other debtors in the above-referenced jointly administered chapter 11 cases, the "Debtors").

All notices, objections, and other pleadings relating to this Proof of Claim should be addressed as follows:

> Citibank, N.A.
> Attention: Jennifer Cupo
> Agency & Trust
> 24221 Calle De La Louisa, Suite 308
> Laguna Hills, CA 92653
>
> and
>
> Bernstein, Shur, Sawyer & Nelson
> Attention: Michael A. Fagone, Esq.
> 100 Middle Street, P.O. Box 9729
> Portland, ME 04104-5029

## I.   Overview of Claim

1.   Citibank, N.A. as trustee, paying agent and other similar capacities and the Debtor as depositor, *inter alia*, are parties to certain trust agreements (each, a "Trust Agreement"

LMT RMBS–Depositor

and collectively, the "Trust Agreements") and certain other agreements concerning Lehman Mortgage Trust mortgage pass-through certificates.[1] In connection with the Trust Agreements, as of June 30, 2009, the Trustee holds claims against the Debtor in an amount not less than $999,992,176.77 in addition to the unliquidated claims described below (each, a "Claim" and collectively, the "Claims"). A portion of the Claim is contingent and a portion of the Claim may be entitled to administrative priority. The Claims are specifically made up of the items set forth below.

## II.    Components of Claim

### A.    Repurchase, Purchase, or Substitution of Mortgage Loans

1.    Pursuant to the Mortgage Loan Sale Agreement, the Depositor acquired certain Mortgage Loans from Lehman Brothers Holdings Inc. (the "Seller"). The Depositor conveyed those Mortgage Loans, the Depositor's rights and interest under the Mortgage Loan Sale Agreement, and certain other property, as described in Section 2.01(a) of the Trust Agreement, to the Trustee for inclusion in the Trust Fund. The Depositor made certain representations and warranties to the Trustee in Section 2.03(a) of the Trust Agreement. In the event of a material breach of certain representations and warranties made by the Depositor with respect to a Mortgage Loan, or a material breach of certain representations and warranties with respect to a Mortgage Loan made by the Seller or any Transferor, the benefit of which was assigned to the Trustee, the Depositor, the Seller, or the Transferor, as applicable, is required to (a) cure such breach in all material respects; (b) repurchase such Mortgage Loan or any property acquired in respect thereof at the Purchase Price; or (c) within the two-year period following the Closing Date, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan. In general, with respect to a Mortgage Loan, the Purchase Price is defined as the sum of (i) 100%

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Trust Agreement.

of the unpaid principal balance of such Mortgage Loan; (ii) accrued interest thereon at the applicable Mortgage Rate; (iii) unreimbursed Servicing Advances with respect to the Mortgage Loan; and (iv) costs or damages incurred by the Trust Fund with respect to certain violations of federal, state, or local predatory or abusive lending law or similar laws.   **Exhibit A** attached hereto lists the number of Mortgage Loans in each Trust Fund as of June 30, 2009 and the aggregate unpaid principal balance of such Mortgage Loans, as of such date.

2.      The conveyance of the Depositor's right, title, and interest in and to the property constituting the Trust Fund under the Trust Agreement was intended by the parties to constitute a sale of such property, not a grant of a security interest to secure a loan.   However, in the event such conveyance is deemed to be in the nature of a loan, the Depositor granted to the Trustee, for benefit of the Holders and the Certificate Insurer, a first priority security interest in all of the Debtor's right, title, and interest in or to all property constituting the Trust Fund and certain other property as set forth in Section 2.06(a) of the Trust Agreement in order to secure the Depositor's obligations in connection with such loan.   The Trustee reserves all of its rights as the holder of a secured claim in the event that the conveyance is determined to be in respect of a loan.

3.      Section 2.02(c) of the Trust Agreement requires the Depositor to cure any Material Defect concerning the Mortgage File or repurchase the Mortgage Loan at the Purchase Price.

B.      Reimbursement of Certain Fees and Expenses

4.      Pursuant to Sections 2.01, 2.06, 6.12 and 11.05 of the Trust Agreement, the Trustee is entitled to reimbursement of reasonable expenses, disbursements, and advances incurred or made by the Trustee in accordance with the Trust Agreement, including without

limitation, the fees and expenses of the Trustee's counsel. As of June 30, 2009, the fees and

expenses, and certain other expenses of the Trustee, are not less than $2,493.35.

C.    Certain Other Obligations of the Depositor

5.    Pursuant to the Trust Agreement, the Depositor has certain other duties

and obligations, including, without limitation, the obligation to (i) provide a copy of title

insurance, as set forth in Section 2.01(d) of the Trust Agreement; (ii) give certain instructions

related to tax returns pursuant to Section 6.20(a) of the Trust Agreement; (iii) to provide certain

information, data, assessments of compliance, and exhibits required in connection with the

preparation and filing of certain reports with the United States Securities and Exchange

Commission pursuant to Section 6.20 of the Trust Agreement. The Trustee holds a claim against

the Depositor for any losses, liabilities, damages, penalties, fees or expenses incurred by the

Trustee or the Trust Fund directly or indirectly as a result of the Depositor's failure to perform

any such obligations in a timely manner.

D.    Custodial Fee Claims

6.    In connection with the transactions described in the Trust Agreements, the

Trustee entered into one or more custodial agreements, whereby a custodian agreed to hold the

Mortgage Loan Documents on behalf of the Trustee and to cooperate with the Master Servicer in

the performance of certain duties of the Master Servicer under the Trust Agreement and other

agreements (each such agreement, a "Custodial Agreement"). Pursuant to the Custodial

Agreement, the fees and expenses of the custodian are to be paid by the Seller on behalf the

Depositor.   The fees and expenses of the custodians, as of June 30, 2009, are not less than the

amounts shown on **Exhibit A** attached hereto lists.   Additional fees and expenses will continue

to accrue during the term of the transactions described in the Trust Agreement, and such additional fees and expenses are part of this Claim.

        D.    Additional Unliquidated Claim

        7.    In addition to the foregoing, if it is determined that the Depositor has engaged in any fraud or other improper acts (including, without limitation, accounting or financial irregularities, errors, or misstatements) that placed the Depositor in economic distress or otherwise directly or indirectly damaged the Trust Fund, the Trustee reserves the right to amend this Proof of Claim.

**III.   Set-Off and Counterclaim**

        8.    No judgment has been rendered on the Claim.  The amount of all payments on this claim has been credited and deducted for the purpose of making this Proof of Claim.  The Claim is not subject to any setoff or counterclaim.

**IV.   Supporting Documents**

        9.    Due to their voluminous nature, copies of the Trust Agreements and the related agreements are not attached hereto.  The Depositor should have copies of these documents in its possession.  Such documents will, nevertheless, be made available on a confidential basis as required.

**V.   Reservation of Rights and/or Remedies**

        10.    Nothing contained herein, nor the filing of this Proof of Claim, shall constitute or be construed as an admission by the Trustee of any liability or an election by the Trustee of any remedy or any acknowledgment of the positions of the Trustee with respect to any issue that is the subject of this Proof of Claim. The Trustee has filed this Proof of Claim under compulsion of the bar date established in these chapter 11 cases and to protect the Trust Fund from forfeiture of its claim against the Debtor by reason of such bar date.  This Proof of Claim is in addition to, and not in lieu of, any other proof of claim filed by the Trustee or by Citibank,

Page 5 of 7

N.A. in its individual capacity, in these chapter 11 cases. The Trustee reserves the right to assert

an administrative expense claim under 11 U.S.C. § 503 for obligations arising out of Depositor's

post-petition activities and/or the Trust Agreement and/or any agreement, instrument, certificate,

or document executed in connection with the Trust Agreement, as in effect post-petition. The

Trustee reserves the right to amend and/or supplement this Proof of Claim at any time, including

after any bar date, in any manner, including for purposes of fixing the amount of the claim

described above together with interest, fees (including legal fees) and expenses due to the

Trustee or the Trust Fund, and/or to file additional proofs of claim for any additional claims

against Debtor or any of its affiliates which may be based on the same or additional documents

or grounds of liability.

        11.     The filing of this Proof of Claim is not and shall not be deemed or

construed as : (a) a waiver or release of the Trustee's rights against any person, entity, or

property, or a waiver of the right to compel Depositor to return property of the Trustee currently

in the possession of Depositor; (b) a consent by the Trustee to the jurisdiction of this Court or

any other court with respect to proceedings, if any, commenced in any case against or otherwise

involving the Trustee or the Trust Fund; (c) a waiver or release of the Trustee's right to trial by

jury in this Court or any other court in any proceeding as to any and all matters so triable herein,

whether or not the same be designated legal or private rights or in any case, controversy, or

proceeding related hereto, notwithstanding the designation or not of such matters as "core

proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to

statute or the United States Constitution; (d) a consent by the Trustee to a jury trial in this Court

or any other court in any proceeding as to any and all matters so triable herein or in any case,

controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a

waiver or release of the Trustee's right to have any and all final orders in any and all non-core

matters or proceedings entered only after de novo review by the United States District Court; (f)

a waiver of the right to move to withdraw the reference with respect to the subject matter of this

Proof of Claim, any objection thereto or other proceeding which may be commenced in this case

against or otherwise involving the Trustee; or (g) an election of remedies.

## Exhibit A to Addendum to Proof of Claim of
### Citibank, N.A. in its Capacity as Trustee and in Other Capacities

| Deal Name | Mortgage Loan Count as of June 30, 2009 | Unpaid Principal Balance as of June 30, 2009 | Fees & Expenses of Trustee as of June 30, 2009 | Custodial Fees as of June 30, 2009 | Total |
|---|---|---|---|---|---|
| Lehman Mortgage Trust 2006-01 (LMT0601) | 1349 | $ 360,782,356.00 | $ 831.12 | $ 49.76 | $ 360,783,236.88 |
| Lehman Mortgage Trust 2006-03 (LMT0603) | 552 | $ 357,179,745.00 | $ 831.12 | $ 673.90 | $ 357,181,250.02 |
| Lehman Mortgage Trust 2006-04 (LMT0604) | 1147 | $ 282,026,579.00 | $ 831.12 | $ 279.76 | $ 282,027,689.88 |
| TOTAL | | $ 999,988,680.00 | $ 2,493.35 | $ 1,003.42 | $ 999,992,176.77 |

LMT RMBS - Depositor

**BERNSTEIN SHUR**

COUNSELORS AT LAW

207 774-1200 main
207 774-1127 facsimile
bernsteinshur.com

100 Middle Street
PO Box 9729
Portland, ME 04104-5029

Michael A. Fagone
207 228-7280 direct
mfagone@bernsteinshur.com

September 18, 2009

**VIA FEDERAL EXPRESS, OVERNIGHT DELIVERY**

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY 10017

      RE:   **Structured Assets Securities Corp., Case No. 09-10558**

To Whom It May Concern:

      Enclosed please find eight (8) separate Proofs of Claim for filing on behalf of Citibank, N.A., it its capacity as trustee, in the above referenced bankruptcy matter.

      Please do not hesitate to contact me if you should have any questions regarding the enclosed. Thank you.

            Sincerely,

            Michael A. Fagone

MAF/als
Enclosure
cc:    Jennifer Cupo, Director

Page 1 of 2

From:   Origin ID: SFMA   (207) 228-7380
Mike Fagone

100 Middle Street

Portland, ME 04101





Ship Date: 18SEP09
ActWgt: 1.0 LB
CAD: 101068837/INET9050
Account#: S *********

Delivery Address Bar Code

SHIP TO:   (646) 282-2500        BILL SENDER
**Lehman Bros Hldgs Claims Processing**
**Epiq Bankruptcy Solutions, LLC**
**757 3RD AVE FRNT 3**

**NEW YORK, NY 10017**

Ref #
Invoice #
PO #
Dept #

RECEIVED
SEP 21 2009
By



TRK#
0201   **7979 4580 7557**

MON - 21SEP        A1
**PRIORITY OVERNIGHT**

**XA OGSA**

10017
NY-US
EWR



---

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions ... available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage ... unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations ... right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney ... incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed ... value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. ... FedEx Service Guide.

From: Origin ID: PIZA (703) 288-8590
Dan Ungerleider
Aviation Facilities Company
7600 Colshire Drive
Suite 240
McLean, VA 22102


FedEx
Express

Ship Date: 18SEP09
ActWgt: 2.0 LB
CAD: 5285382/INET9060
Account#: S *********

Delivery Address Bar Code



SHIP TO:   (503) 350-5944          BILL SENDER
**Lehman Brothers Holdings Claims Pro**
**Epiq Bankruptcy Solutions, LLC**
**757 3RD AVE FRNT 3**

**NEW YORK, NY 10017**

Ref #    PIT
Invoice #
PO #
Dept #

SEP 21 2009



TRK#
0201    7969 5819 4274

MON - 21SEP          A1
**STANDARD OVERNIGHT**

**SB OGSA**

**10017**
NY-US
EWR



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.