ALSTON & BIRD LLP
J. William Boone, Esq.
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Wilmington Trust Company, as Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| -------------------------------------------------------x | | |
| In re | : | Chapter 11 |
| | : | |
| Lehman Brothers Holdings Inc., *et al.,* | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| -------------------------------------------------------x | | |

**RESPONSE OF WILMINGTON TRUST COMPANY, AS TRUSTEE, TO
THE DEBTORS' ONE HUNDRED TWENTY FIFTH OMNIBUS
OBJECTION TO CLAIMS (INSUFFICIENT DOCUMENTATION)**

Wilmington Trust Company, as trustee ("Wilmington" or the "Trustee"), by its undersigned counsel, hereby files this response (the "Response") to the Debtors' One Hundred Twenty Fifth Omnibus Objection to Claims (Insufficient Documentation) (Docket No. 16079) (the "Omnibus Objection") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.   Wilmington serves as the trustee for numerous securitization trusts. The Omnibus Objection seeks to disallow twenty-three claims (the "Affected Claims") filed by Wilmington as trustee for certain securitization trusts (the "Affected Trusts") on the grounds that Wilmington has allegedly provided insufficient documentation.

2.   In fact, Wilmington has provided a sufficiently detailed description of the bases for the Affected Claims in the attachments to such claims to support allowance of the Affected Claims, and Wilmington has offered to make the voluminous documents underlying such

LEGAL02/32692400v2

Affected Claims available, to the extent possible. It is the Debtors who have failed to provide any evidence to rebut the *prima facie* validity afforded to the Affected Claims pursuant to 11 U.S.C. § 502(a) and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.  Indeed, the Debtors' Omnibus Objection fails to acknowledge that the Affected Claims assert contingent and/or unliquidated claims, for which much of the detailed information sought by the Debtors does not yet exist by definition. The Debtors object to the Affected Claims as if they were fixed, liquidated claims for which Wilmington has failed to provide proof. Sustaining the Debtors' Omnibus Objection to the contingent and/or unliquidated Affected Claims is inconsistent with the Bankruptcy Code's definition of "claim," 11 U.S.C. § 101(5)(A); is inconsistent with the Bankruptcy Code's mandate that contingent or unliquidated claims shall be estimated for purposes of allowance, 11 U.S.C. § 502(c); and would logically necessitate disallowance of all contingent and/or unliquidated claims in the Debtors' cases in contravention of these provisions of the Bankruptcy Code. Accordingly, the Omnibus Objection should be overruled with respect to the Affected Claims.

## BACKGROUND

4.  On or about September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Over the following fifteen months, certain of LBHI's affiliates also filed voluntary petitions under chapter 11 of the Bankruptcy Code, including Structured Asset Securities Corporation ("SASCO") on or about February 9, 2009.

5.  On July 2, 2009, this Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Docket No. 4271) (the "Bar Date Order").

- 2 -

6.      On or about September 21, 2009, Wilmington timely filed the Affected Claims (among others).

7.      On April 15, 2011, the Debtors filed the Omnibus Objection. A list of the claim numbers of the Affected Claims, the related Affected Trusts, and the particular Debtor against whom each Affected Claim was filed is submitted herewith as Exhibit A.

<u>Securitization Generally</u>

8.      The following description can be found, at least in part, in the attachments to each of the Affected Claims. The description contained herein is intended to provide a general summary of the common characteristics of the Affected Claims, and in the event of any conflict between the description contained herein and the more complete description contained in the attachment to any Affected Claim, the description in the attachment to the Affected Claim shall control.

9.      Securitization is a process whereby income-producing assets such as mortgage loans or accounts receivable are pooled, and then sold to a trust or other bankruptcy-remote special purpose entity that issues non-recourse securities collateralized or otherwise backed by the pool of income-producing assets. Payments on the securities are made with income collected on the pooled assets, and the purchase price for the assets is funded with the proceeds from the issuance of such securities.

10.      The originator of the income-producing assets sells the assets to a seller. After the seller aggregates sufficient assets to effect a securitization of such assets, the seller sells such assets in a transaction that constitutes a true sale, and does not retain an equitable ownership interest in the assets. Securitization thus isolates the creditworthiness of the income-producing assets from the bankruptcy risk of the seller, enabling nationally recognized statistical credit rating agencies such as Standard & Poor's Ratings Group, Moody's Investor Services, Inc.,

and Fitch, Inc., to assign credit ratings to the securities backed by the income-producing assets based exclusively on the credit quality of the assets themselves without reference to the seller's creditworthiness.  Securitization promotes access to the capital markets at a low cost of funds.

The Affected Trusts

11.   The Affected Trusts for which Wilmington serves as Trustee are comprised of between one and eight pools or groups of residential mortgage loans.  LBHI originated or underwrote certain of these mortgage loans.  The remainder of the loans comprising each pool were purchased by LBHI prior to the formation of the particular Affected Trust pursuant to the terms of certain Assignment and Assumption Agreements by and between Lehman Brothers Bank, FSB, as assignor, and LBHI, as assignee.

12.   LBHI securitized all of these mortgage loans (the "Mortgage Loans") by selling them to SASCO, or in at least one instance to Lehman ABS Corporation ("LABS"), as depositor (either SASCO or LABS in such capacity, as appropriate, the "Depositor") pursuant to certain Mortgage Loan Sale and Assignment Agreements (the "Sale Agreements") by and between LBHI, as seller, and the Depositor, as purchaser.  The Depositor in turn sold the Mortgage Loans to the Affected Trusts, which were created pursuant to certain Trust Agreements by and among the Depositor, either Aurora Loan Services LLC or Aurora Loan Services Inc. as master servicer (the "Master Servicer"), and (a) Bank of America, N.A. (successor by merger to LaSalle Bank National Association) as original trustee (the "Original Trustee") or (b) Bank of America, N.A. (successor by merger to LaSalle Bank National Association) as securities administrator and Wilmington as Trustee or (c) Wells Fargo Bank, N.A., as securities administrator, The Murrayhill Company as credit risk manager, and the Original Trustee.  As consideration for such sale by the Depositor, each Affected Trust, pursuant to the relevant Trust Agreement, issued a

series of mortgage-backed securities in various classes (the "Securities") which represent interests in the assets of a particular Affected Trust, and which were sold to investors through Lehman Brothers Inc., as underwriter. Principal and interest due on each Affected Trust's Securities are paid from principal, interest and other moneys collected from obligors on the Affected Trust's Mortgage Loans and the other mortgage loans comprising the assets of the Affected Trust.

13. With respect to the Affected Trusts for which there was an Original Trustee, the Original Trustee resigned and Wilmington was appointed as successor Trustee, pursuant to certain Instruments of Appointment and Acceptance by Successor Trustee, by and among the Depositor, the Original Trustee, and Wilmington as (successor) Trustee.

Obligations of LBHI and SASCO

14. Pursuant to section 1.04 of the each of the Sale Agreements, LBHI made extensive and numerous representations and warranties regarding the relevant Mortgage Loans in favor of the Depositor (either SASCO or LABS). Each of the other originators of the Mortgage Loans (the "Transferors") also made certain representations and warranties regarding the Mortgage Loans which were assigned to the Depositor pursuant to the Sale Agreements.

15. Pursuant to section 2.04 of each of the Trust Agreements and section 1.04 of each of the Sale Agreements, if there is a breach of any of these representations and warranties that materially and adversely affects the value of any Mortgage Loan, LBHI must either (a) cure such breach in all material respects, (b) substitute a mortgage loan for the Mortgage Loan to which the breach relates within two years of the closing date of the transaction, or (c) repurchase the Mortgage Loan from the Affected Trust at the Purchase Price (as defined in

the Trust Agreements). LBHI's obligations to remedy any discovered breaches are in addition to any cure, repurchase, and substitution obligations of the Transferors.

16. Under the terms of the Trust Agreements, the Depositor (either SASCO or LABS) transferred and assigned all of its rights, title and interest in the relevant Mortgage Loans and the relevant Sale Agreement (including its right to enforce against LBHI any remedies for breaches of the representations and warranties made in respect of the Mortgage Loans) to the Trustee on behalf of the relevant Affected Trust. Pursuant to section 2.03 of each of the Trust Agreements, the Depositor (either SASCO or LABS) made numerous representations and warranties in connection with its conveyance of the relevant Mortgage Loans to the relevant Affected Trust.

17. Pursuant to section 2.02 of the Trust Agreement, the Depositor (either SASCO or LABS) agreed to perform certain obligations with respect to the Mortgage Loans, including the obligation to deliver certain documents evidencing the Mortgage Loans. If any Mortgage Loan document required to be delivered is not delivered or fails to conform to the delivery requirements specified in the Trust Agreements and such failure or defect materially and adversely affects the value of such Mortgage Loan, and the Transferor fails to remedy such defect, the Depositor must either (a) cure such defect in all material respects, (b) substitute a Qualifying Substitute Mortgage Loan (as defined in the Trust Agreements) for the Mortgage Loan to which the breach relates within two years of the closing date of the transaction, or (c) repurchase the Mortgage Loan from the Affected Trust at the Purchase Price (as defined in the Trust Agreement).

LEGAL02/32692400v2

18. Pursuant to section 2.01(c) of the Trust Agreements, any Mortgage Loan that is required to be recorded shall be recorded at the expense of the Depositor (either SASCO or LABS).

### The Affected Claims Against LBHI and SASCO

19. As described more fully in the attachments to the Affected Claims, the Trustee has contingent, unliquidated claims against LBHI based on, *inter alia,* (a) breaches of representations and warranties made by the LBHI in the Sale Agreements with respect to the Mortgage Loans, including repurchase obligations, and (b) indemnification for costs associated with any such aforementioned breaches.

20. As described more fully in the attachments to the Affected Claims, the Trustee has contingent, unliquidated claims against SASCO based on, *inter alia,* (a) breaches of representations and warranties made by SASCO in the Trust Agreements, including repurchase obligations, (b) the failure to perform its obligations to deliver Mortgage Loan documents that conform to the delivery requirements specified in the Trust Agreements, and (c) the failure to cause certain Mortgage Loan documents to be recorded.

### The Debtors' Requests for Additional Information

21. The Debtors have requested additional information regarding the Affected Claims. Wilmington has made reasonable efforts to cause this information to be provided to the Debtors. However, only the Master Servicer ultimately possesses or has access to information regarding the on-going performance of the Mortgage Loans, the existence of any breaches, and the manner in which the Mortgage Loans were underwritten. Notably, even if the Debtors were supplied with all of the information that they requested, it is not necessarily the case that all Mortgage Loans for which a breach is likely or probable to occur could be identified at this time. Breached Mortgage Loans can ultimately only be identified after the individual borrower fails to

LEGAL02/32692400v2

make payments in accordance with the terms of the Mortgage Loan. Accordingly, all of the Affected Claims remain contingent and unliquidated by their very nature. Wilmington submits that it is possible, if not probable, that latent breach-related claims exist, given the continued weakness in the residential housing market.

## RESPONSE

22. Section 502 of the Bankruptcy Code generally provides that a claim is "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a).

23. Accordingly, Bankruptcy Rule 3001 provides, in relevant part, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

24. To overcome this prima facie evidence, the objector must present "sufficient evidence." *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987)); *see also In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, at *15 n.16 (Bankr. S.D.N.Y. Aug. 22, 2007) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).

25. This evidence must be "'equal in force to the prima face case'" and must, if believed, "'refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny*, 954 F.2d at 173-74)).

26. Memoranda of law and oral argument alone are insufficient to create a genuine factual dispute. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir. 1994).

27. The Bar Date Order provides, in part, "each Proof of Claim must . . . include supporting documentation **or an explanation as to why documentation is not available** . . . ." (Bar Date Order at 6 (emphasis added).)

28. Wilmington submits that it has complied with the Bar Date Order because it has either provided sufficient supporting documentation or has provided a satisfactory explanation as to why such documentation is not available, *viz.* the Master Trustee is in possession of such documentation and/or it does not yet exist.

29. The Omnibus Objection has presented no evidence whatsoever to refute the *prima facie* validity of the Affected Claims. Instead, the Debtors are attempting to shift the burden of proof to Wilmington in contravention of well-established bankruptcy principles. Wilmington has met its burden by filing the Affected Claims. If they Debtors wish to object the Affected Claims (or any other claims to which Wilmington may be entitled), they must bear their burden by producing actual evidence sufficient to create a factual dispute rather than the conclusory allegations and assertions contained in the Omnibus Objection.

30. Furthermore, the Debtors' assertion that the Affected Claims should be disallowed due to allegedly insufficient information is not a discernable ground for disallowance under section 502 of the Bankruptcy Code. Section 502(b) of the Bankruptcy Code sets forth nine bases for objections to the *prima facie* validity of a claim under section 502(a) of the Bankruptcy Code. In fact, section 502(b) of the Bankruptcy Code provides that "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, **and shall allow such claim in such amount**, except to the extent that" one or more of the nine statutory exceptions apply. *See* 11 U.S.C. § 502(b). "Insufficient documentation" is not one of the statutory exceptions to the general presumption of allowance. *See In re Moreno*, 341 B.R. 813, 817-19 (Bankr. S.D. Fla. 2006) ("[T]his court will not tolerate attempts to obtain orders disallowing these claims if the only basis for the objection is lack of documentation.").

LEGAL02/32692400v2

31.     Similarly, the Debtors have not pointed to any of the bases for an objection found in Bankruptcy Rule 3007(d).  *See* Fed. R. Bankr. P. 3007(d) (setting forth the permissible bases for an omnibus objection).

32.     A party objecting to a claim must establish a genuine dispute regarding the validity of the claim by presenting sufficient evidence to rebut the *prima facie* validity of such claim, or it must show that the claim's allowance is subject to one of the enumerated exceptions specified in section 502(b) or Bankruptcy Rule 3007(d).  *See id.* at 817.  When courts in this circuit have disallowed claims on the basis that insufficient documentation has been provided, it has generally been because the claimant provided mere summaries.  *See, e.g.*, *In re Minbatiwalla*, 424 B.R. 104, 119-20 (Bankr. S.D.N.Y. 2010) ("[T]he creditor merely attached a summary signed by a representative of an entity that has slightly different name than the creditor listed on the Debtor's schedules.").

33.     Here, Wilmingon has provided detailed descriptions of the basis for each of the Affected Claims, whereas the Debtors have neither (a) provided any evidence sufficient to raise a genuine dispute regarding the validity of the Affected Claims nor (b) shown that the Affected Claims' allowance is subject to one of the enumerated exceptions specified in section 502(b).  Accordingly, the Omnibus Objection should be overruled, and the Affected Claims should be allowed.  *See, e.g.*, *In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004) ("Even if the proofs of claim are not entitled to prima facie validity, they are some evidence of the Claimant's claims.  Here, the Debtor never presented any evidence to contradict the claims, much less any evidence that the claims fall within one of the exceptions set forth in Section 502(b); therefore, the claims' validity stands."); *In re Shank*, 315 B.R. 799, 812 (Bankr. N.D.Ga. 2004) ("In summary, the debtor has made no showing that there is an actual dispute over any of the claims

and has identified no good faith basis for a potential dispute. For all of the reasons set forth above, the Court will not require the claimants to amend their proofs of claim to attach sufficient documentation in compliance with Rule 3001(c)").

34.    As a final consideration, section 101 of the Bankruptcy Code defines "claim" to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Moreover, section 502(c) of the Bankruptcy Code provides, in relevant part, "There shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). Consideration of these sections reveals that Congress did not intend for contingent and/or unliquidated claims, like the Affected Claims, to be disallowed solely on the basis that such claims are unlikely to become fixed or liquidated during the life of the bankruptcy case. Since Wilmington cannot produce some of the evidence demanded by the Debtors because it does not yet exist, to the extent that the Debtors contend that this alleged failure to provide such information is a basis for disallowance, the Debtors' Omnibus Objection must be overruled as inconsistent with section 101's definition of "claim" and section 502(c)'s mandate to estimate unliquidated or contingent claims.

WHEREFORE, Wilmington respectfully requests that the Court overrule the Omnibus Objection with respect to the Affected Claims and grant such other and further relief as is justified under the circumstances.

Dated: June 20, 2011                               Respectfully submitted,

                                                   ALSTON & BIRD LLP

                                               By:    /s/ J. William Boone
                                                   J. William Boone, Esq.
                                                   1201 West Peachtree Street
                                                   Atlanta, Georgia 30309
                                                   Telephone: (404) 881-7000
                                                   Fax: (404) 881-7777

LEGAL02/32692400v2

**Exhibit A**

| Claim Number | Affected Trust | Obligated Debtor |
|---|---|---|
| 20420 | Structured Asset Securities Corporation, Series 2005-4XS | LBHI |
| 21103 | Structured Asset Securities Corporation, Series 2005-4XS | SASCO |
| 21104 | Structured Asset Securities Corporation, Series 2005-14 | SASCO |
| 21105 | Structured Asset Securities Corporation, Series 2005-14 | LBHI |
| 21106 | Structured Asset Securities Corporation, Series 2005-6 | SASCO |
| 21107 | Structured Asset Securities Corporation, Series 2005-6 | LBHI |
| 21108 | Structured Asset Securities Corporation, Series 2004-20 | SASCO |
| 21109 | Structured Asset Securities Corporation, Series 2004-20 | LBHI |
| 21110 | Structured Asset Securities Corporation, Series 2004-19XS | SASCO |
| 21111 | Structured Asset Securities Corporation, Series 2004-19XS | LBHI |
| 21112 | Structured Asset Securities Corporation, Series 2004-11XS | LBHI |
| 21113 | Structured Asset Securities Corporation, Series 2004-11XS | SASCO |
| 21114 | Structured Asset Securities Corporation, Series 2004-9XS | LBHI |
| 21115 | Structured Asset Securities Corporation, Series 2004-9XS | SASCO |
| 21116 | Structured Asset Securities Corporation, Series 2004-7 | LBHI |
| 21117 | Structured Asset Securities Corporation, Series 2004-7 | SASCO |
| 21118 | Structured Asset Investment Loan Trust, Series 2005-1 | LBHI |
| 21119 | Structured Asset Investment Loan Trust, Series 2005-1 | SASCO |
| 21132 | Lehman Mortgage Trust, Series 2005-3 | LBHI |
| 21133 | Lehman Mortgage Trust, Series 2005-3 | SASCO |
| 21134 | Lehman ABS Corporation, Series 2003-1 | LBHI |
| 21135 | Certain mortgage-backed securitization trusts with mortgage loans sold by Lehman Brothers Holdings Inc. | LBHI |
| 21136 | Certain mortgage-backed securitization trusts with mortgage loans sold by Lehman Brothers Holdings Inc. | SASCO |