**W. DOZORSKY, J.D., ESQ.**
2152 Dupont Drive
Suite 214-A
Irvine, CA  92612
Tel.: [949] 673-3894
State Bar #98515

Attorney for claimant and creditor ROSALINDA BARRIOS

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) | **IN CHAPTER 11** |
| LEHMAN BROTHERS HOLDINGS, INC., et al. | ) | **CASE NO. 08-13555 (JMP)** |
| | ) | **[Jointly Administered]** |
| Debtors. | ) | |

**OPPOSITION TO OBJECTION
TO THE CLAIM OF ROSALINDA
BARRIOS, CLAIM NO. 67087**

**Hearing Date: 6-30-2011
Time: 10:00 A.M.
Courtroom: 601**

1  TO ALL PARTIES IN INTEREST:

2      The claimant ROSALINDA BARRIOS, on her claim No. 67087 for

3  the sum of $250,000.00 against debtor No. 09-10137, hereby opposes

4  the objection to her claim.

5              I. BRIEF HISTORY OF EVENTS.

6      The claimant was a borrower concerning purchase of certain

7  real estate in Los Angeles, California. She filed a civil action

8  against debtor No. 09-10137, being BNC MORTGAGE LLC which

9  apparently filed its Chapter 11 bankruptcy petition on 1-9-2008.

10 The claimant had no notice of this bankruptcy filing by defendant

11 BNC MORTGAGE at the time she filed her civil action in California

12 state superior court, which was on 1-8-2010, being the case

13 Barrios v. BNC Mortgage et al.; Los Angeles County Superior Court

14 Case No. BC429430. A copy of conformed face sheet of the complaint

15 is attached hereto as Exhibit #1 and incorporated herein by

16 reference. The filing of this civil action was already after the

17 bar date for claims which is stated as 9-22-2009. The claimant

18 subsequently found out that BNC MORTGAGE was in bankruptcy.

19     In or around September of 2010 the debtor ascertained that

20 the main consolidated bankruptcy involving BNC MORTGAGE was pending

21 in the state of New York court, even though the business office

22 of BNC MORTGAGE itself was in California. Further inquiries by

23 claimant's counsel W. Dozorsky led to the preparation and filing

24 and service of the proof of claim which was filed on 9-20-2010.

25 Prior to filing her civil action on 1-8-2010 the claimant BARRIOS

26 was not aware that BNC MORTGAGE filed bankruptcy and was unaware

27 of the bar date of 9-22-2009.

28

## II. ARGUMENT.

There is a late filed claim exception if the claim if filed in time to permit payment of the claim. See § 1821(d)(5)(C)(ii) of title 12, United States Code, and similar authority.

As creditor and claimant against the debtor estate in a Chapter 11 case, ROSALINDA BARRIOS also has the right to submit and file a claim past the bar date, a late claim, if the proof of claim was filed late due to a creditor's/claimant's inadvertence, mistake, carelessness amounting to "excusable neglect", as well as due to intervening circumstances beyond the claimant's and creditor's control.

This issue was addressed by the U.S. Supreme Court in the 1993 case of <u>Pioneer v. Brunswick et al</u>,; 507 U.S. 380 (1993) which held that determination of what sorts of neglect will be considered excusable is an equitable determination, taking account of all relevant circumstances on case by case basis.

Here, there were intervening circumstances beyond control of the claimant and creditor BARRIOS, namely, that she was never listed as a creditor by the debtor BNC MORTGAGE and never served with notice of any bar date for proofs of claim. She found out only when she filed a civil action and served BNC MORTGAGE as a defendant therein. She filed her action on 1-8-2010, already past the bar date of 9-22-2009.

Also, there is excusable neglect, arguably, that as a layperson whose primary language is not even English and whose reading capacity is limited, BARRIOS cannot be expected to keep up with public bankruptcy court filings, even especially outside California.

1    A copy of the U.S. Supreme Court case mentioned above

2  is attached hereto as Exhibit #2 and incorporated by reference.

3    The supporting declaration of W. Dozorsky, counsel for the

4  creditor and claimant BARRIOS, is adopted in full and incorporated

5  herein by reference.

6                     III. CONCLUSION.

7    For all the reasons above, including matters stated in the

8  declaration of W. Dozorsky, counsel for BARRIOs, the objection

9  to this Claim No. 67087 should be overruled, and this claim should

10  be allowed in full.

11    No other reason for objection to this claim, other than the

12  elapsed bar date, is stated.

13    The person representing claimant and creditor ROSALINDA

14  BARRIOS with authority to settle, reconcile or otherwise resolve

15  the claim on her behalf is her counsel W. Dozorsky, Esq.;

16  2152 Dupont Drive; Suite 214-A; Irvine, CA 92612,

17  tel. [949] 673-3894.

18

19  DATED: 6-9-2011.

20                              By: _W. Dozorsky_____

21                                   W. DOZORSKY, ESQ.
                                     Attorney for creditor and
22                                   claimant ROSALINDA BARRIOS

23

24

25

26

27

28

1              DECLARATION OF ATTORNEY W. DOZORSKY

2      I, W. DOZORSKY, declare that I am attorney of record for

3 the creditor and claimant ROSALINDA BARRIOS. The matters set forth

4 in this declaration are based on my personal knowledge, unless

5 stated on information and belief, and if necessary I can testify

6 competently as to said matters.

7      I caused to be filed the civil action mentioned above,

8 namely, <u>Barrios v. BNC Mortgage et al</u>.; Los Angeles County Superior

9 Court Case No. BC429430, on 1-8-2010, and then learned of the

10 bankruptcy filing of defendant BNC MORTGAGE. This was after the

11 claim bar date of 9-22-2009 already passed.

12      The facts stated in the opposition above are true and correct.

13      I declare under penalty of perjury under the laws of the

14 state of California and of the United States of America that the

15 foregoing is true and correct.

16      Executed on 6-13-2011 at city of Orange, county of Orange,

17 state of California.

18

19                          _____
                            W. DOZORSKY, ESQ.
20                          Declarant

21

22

23

24

25

26

27

28

**EXHIBIT # 1**

1  **W. DOZORSKY, J.D., ESQ.**
   2152 Dupont Drive
2  Suite 214-A
   Irvine, CA  92612
3  Tel.: [949] 673-3894
   State Bar #98515

4

5  Attorney for plaintiff

6

**CONFORMED COPY**
**OF ORIGINAL FILED**
Los Angeles Superior Court

**JAN 08 2010**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **LOS ANGELES COUNTY**

10                     **CENTRAL CENTER**          BC429430

| | | |
|---|---|---|
| 11 | ROSALINDA BARRIOS, )<br>individual, ) | **CASE NO.** |
| 12 | ) | **COMPLAINT FOR** |
| 13 | )<br>Plaintiff, )<br>v. ) | **1) DAMAGES FOR NEGLIGENT AND RECKLESS MISREPRESENTATIONS;** |
| 14 | BNC MORTGAGE, INC., a Delaware)<br>corporation; CHASE HOME ) | **2) DAMAGES AND RELIEF FOR VIOLATION OF FEDERAL** |
| 15 | FINANCE LLC, limited liability)<br>company; ELITE REALTY, ) | **RACKETEERING AND CORRUPT ORGANIZATIONS ACT** |
| 16 | a business organization; )<br>RUTH ARIAS, an individual; ) | **["RICO"];**<br>**3) DAMAGES FOR** |
| 17 | NDEX WEST LLC, limited )<br>liability company as trustee; ) | **CONSTRUCTIVE FRAUD;**<br>**4) DAMAGES FOR VIOLATION** |
| 18 | RANDY MIDDLETON, individual; )<br>DAVID L. RAY as plaintiff's ) | **OF COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 19 | Chapter 7 bankruptcy trustee; )<br>ALL PERSONS UNKNOWN CLAIMING) | **5) DAMAGES FOR UNFAIR BUSINESS PRACTICES;** |
| 20 | ANY LEGAL OR EQUITABLE RIGHT, )<br>TITLE, OR OTHER INTEREST IN ) | **6) FOR ACCOUNTING;**<br>**7) DECLARATORY RELIEF** |
| 21 | THE REAL PROPERTY COMMONLY )<br>KNOWN AS ) | **AND QUIETING TITLE TO REAL PROPERTY.** |
| 22 | 1609-1609 1/2 EAST 42nd STREET )<br>LOS ANGELES, CALIFORNIA 90011;) | |
| 23 | DOES 1 through 60, inclusive, )<br>) | |
| 24 | Defendants. )<br>) | |
| 25 | _____ )<br>) | |
| 26 | ) | |
| 27 | ) | |

28

C:\Documents and Settings\WDozorsky\My Documents\WPDOCS\RIVRSIDE.OFC\REAL_ESTTE\BARRIOS#1.CMP.wpd

**EXHIBIT # 2**

« up

507 U.S. 380

113 S.Ct. 1489

123 L.Ed.2d 74

## PIONEER INVESTMENT SERVICES COMPANY, Petitioner
### v.
## BRUNSWICK ASSOCIATES LIMITED PARTNERSHIP et al.

*No. 91-1695.*

*Argued Nov. 30, 1992.*
*Decided March 24, 1993.*

*Syllabus* *

As unsecured creditors of petitioner—a company seeking relief under Chapter 11 of the Bankruptcy Code—respondents were required to file proofs of claim with the Bankruptcy Court before the deadline, or bar date, established by that court. An August 3, 1989, bar date was included in a "Notice for Meeting of Creditors" received from the court by Mark Berlin, an official for respondents. Respondents' attorney was provided with a complete copy of the case file and, when asked, assertedly assured Berlin that no bar date had been set. On August 29, 1989, respondents asked the court to accept their proofs under Bankruptcy Rule 9006(b)(1), which allows a court to permit late filings where the movant's failure to comply with the deadline "was the result of excusable neglect." The court refused, holding that a party may claim excusable neglect only if the failure to timely perform was due to circumstances beyond its reasonable control. The District Court remanded the case, ordering the Bankruptcy Court to evaluate respondents' conduct under a more liberal standard. The Bankruptcy Court applied that standard and again denied the motion, finding that several factors—the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, and whether the creditor acted in good faith favored respondents, but that the delay was within their control and that they should be penalized for their counsel's mistake. The District Court affirmed, but the Court of Appeals reversed. It found that the Bankruptcy Court had inappropriately penalized respondents for their counsel's error, since Berlin had asked the attorney about the impending deadlines and since the peculiar and inconspicuous placement of the bar date in a notice for a creditors' meeting without any indication of the date's significance left a dramatic ambiguity in the notification that would have confused even a person experienced in bankruptcy.

*Held:*

1. An attorney's inadvertent failure to file a proof of claim by the bar date can constitute "excusable neglect" within the meaning of Rule 9006(b)(1). Pp. ____-____.

(a) Contrary to petitioner's suggestion, Congress plainly contemplated that the courts would be permitted to accept late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond the party's control. This flexible understanding comports with the ordinary meaning of "neglect." It also accords with the underlying policies of Chapter 11 and the bankruptcy rules, which entrust broad equitable powers to the courts in order to ensure the success of a debtor's reorganization. In addition, this view is confirmed by the history of the present bankruptcy rules and is strongly supported by the fact that the phrase "excusable neglect," as used in several of the Federal Rules of Civil Procedure, is understood to be a somewhat "elastic concept." Pp. ____-____.

(b) The determination of what sorts of neglect will be considered "excusable" is an equitable one, taking account of all relevant circumstances. These include the first four factors applied in the instant case. However, the Court of Appeals erred in not attributing to respondents the fault of their counsel. Clients may be held accountable for their attorney's acts and omissions. See, *e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734. Thus, in determining whether respondents' failure to timely file was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable. Pp. ____-____.

« up   2. The neglect of respondents' counsel was, under all the circumstances, excusable. As the Court of Appeals found, the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim. As for the culpability of respondents' counsel, it is significant that the notice of the bar date in this case was outside the ordinary course in bankruptcy cases. Normally, such a notice would be prominently announced and accompanied by an explanation of its significance, not inconspicuously placed in a notice regarding a creditors' meeting. P. ___.

943 F.2d 673 (CA6 1991), affirmed.

[SCJ2Q!]] WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C.J., and BLACKMUN, STEVENS, and KENNEDY, JJ., joined. O'CONNOR, J., filed a dissenting opinion, in which SCALIA, SOUTER, and THOMAS, JJ., joined.

Craig J. Donaldson, Morristown, NJ, for petitioner.

John A. Lucas, Knoxville, TN, for respondents.

Justice WHITE delivered the opinion of the Court.

1        Rule 3003(c) of the Federal Rules of Bankruptcy Procedure sets out the requirements for filing proofs of claim in Chapter 9 Municipality and Chapter 11 Reorganization cases.[1] Rule 3003(c)(3) provides that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Rule 9006 is a general rule governing the computation, enlargement, and reduction of periods of time prescribed in other bankruptcy rules. Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline "was the result of excusable neglect."[2] In this case, we are called upon to decide whether an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute "excusable neglect" within the meaning of the rule. Finding that it can, we affirm.

2        * On April 12, 1989, petitioner filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Tennessee. The petition sought relief under Chapter 11 of the Bankruptcy Code. Petitioner also filed a list of its 20 largest unsecured creditors, including all but one of respondents here. The following month, after obtaining extensions of time from the Bankruptcy Court, petitioner filed a statement of financial affairs and schedules of its assets and liabilities. The schedules, as amended, listed all of the respondents except Ft. Oglethorpe Associates Limited Partnership as creditors holding contingent, unliquidated, or disputed claims; the Ft. Oglethorpe partnership was not listed at all. Under § 1111 of the Bankruptcy Code, 11 U.S.C. § 1111(a), and Bankruptcy Rule 3003(c)(2), all such creditors are required to file a proof of claim with the bankruptcy court before the deadline, or "bar date," established by the court.

3        On April 13, 1989, the day after petitioner filed its Chapter 11 petition, the Bankruptcy Court mailed a "Notice for Meeting of Creditors" to petitioner's creditors. Along with the announcement of a May 5 meeting was the following passage:

4        "You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989." App. 29a.

5        The notice was received and read by Mark A. Berlin, president of the corporate general partners of each of the respondents. Berlin duly attended the creditors' meeting on May 5. The following month, respondents retained an experienced bankruptcy attorney, Marc Richards, to represent them in the proceedings. Berlin stated in an affidavit that he provided Richards with a complete copy of the case file, including a copy of the court's

« up  pril 13, 1989, notice to creditors. Berlin also asserted that he inquired of Richards whether there was a deadline for filing claims and that Richards assured him that no bar date had been set and that there was no urgency in filing proofs of claim. *Id.,* at 121a. Richards and Berlin both attended a subsequent meeting of creditors on June 16, 1989.

6      Respondents failed to file any proofs of claim by the August 3, 1989, bar date. On August 23, 1989, respondents filed their proofs, along with a motion that the court permit the late filing under Rule 9006(b)(1). In particular, respondents' counsel explained that the bar date, of which he was unaware, came at a time when he was experiencing "a major and significant disruption" in his professional life caused by his withdrawal from his former law firm on July 31, 1989. *Id.,* at 56a. Because of this disruption, counsel did not have access to his copy of the case file in this matter until mid-August. *Ibid.*

7      The Bankruptcy Court refused the late filing. Following precedent from the Court of Appeals for the Eleventh Circuit, the court held that a party may claim "excusable neglect" only if its " 'failure to timely perform a duty was due to circumstances which were beyond [its] reasonable control.' " *Id.,* at 124a (quoting *In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (CA11 1985), cert. denied *sub nom. Biscayne 21 Condominium Associates, Inc. v. South Atlantic Financial Corp.,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986)). Finding that respondents had received notice of the bar date and could have complied, the court ruled that they could not claim "excusable neglect."

8      On appeal, the District Court affirmed in part and reversed in part. The court found "respectable authority for the narrow reading of 'excusable neglect' " adopted by the Bankruptcy Court, but concluded that the Court of Appeals for the Sixth Circuit would follow "a more liberal approach." App. 157a. Embracing a test announced by the Court of Appeals for the Ninth Circuit, the District Court remanded with instructions that the Bankruptcy Court evaluate respondents' conduct against several factors, including: " ' "(1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect." ' " *Id.,* at 158a-159a (quoting *In re Dix,* 95 B.R. 134, 138 (CA9 Bkrptcy. Appellate Panel 1988) (in turn quoting *In re Magouirk,* 693 F.2d 948, 951 (CA9 1982))). The District Court also suggested that the Bankruptcy Court consider whether the failure to comply with the bar date "resulted from negligence, indifference or culpable conduct on the part of a moving creditor or its counsel." App. 159a.

9      On remand, the Bankruptcy Court applied the so-called *Dix* factors and again denied respondents' motion. Specifically, the Bankruptcy Court found (1) that petitioner would not be prejudiced by the late filings; (2) that the 20-day delay in filing the proofs of claim would have no adverse impact on efficient court administration; (3) that the reason for the delay was not outside respondents' control; (4) that respondents and their counsel acted in good faith; and (5) that, in light of Berlin's business sophistication and his actual knowledge of the bar date, it would not be improper to penalize respondents for the neglect of their counsel. *Id.,* at 168a-172a. The court also found that respondents' counsel was negligent in missing the bar date and, "[t]o a degree," indifferent to it. *Id.,* at 172a. In weighing these considerations, the Bankruptcy Court "attache[d] considerable importance to *Dix* factors 3 and 5," and concluded that a ruling in respondents' favor, notwithstanding their actual notice of the bar date, "would render nugatory the fixing of the claims' bar date in this case." *Id.,* at 173a. The District Court affirmed the ruling.

10     The Court of Appeals for the Sixth Circuit reversed. The Court of Appeals agreed with the District Court that "excusable neglect" was not limited to cases where the failure to

5.07 U.S. 380    http://fcp.resource.org/documents.g...

« up ct was due to circumstances beyond the movant's control. The Court of Appeals also
agreed with the District Court that the five "*Dix*" factors were helpful, although not
necessarily exhaustive, guides. *In re Pioneer Investment Services Co.,* 943 F.2d 673, 677
(1991). The court found, however, that the Bankruptcy Court had misapplied the fifth *Dix*
factor to this case. Because Berlin had inquired of counsel whether there were any
impending filing deadlines and been told that none existed, the Court of Appeals ruled
that the Bankruptcy Court had "inappropriately penalized the [respondents] for the
errors of their counsel." *Ibid.*

11      The Court of Appeals also found "it significant that the notice containing the bar date
was incorporated in a document entitled 'Notice for Meeting of Creditors.'" *Id.,* at 678.
"Such a designation," the court explained, "would not have put those without extensive
experience in bankruptcy on notice that the date appended to the end of this notice was
intended to be the final date for filing proof of claims." *Ibid.* Indeed, based on a
comparison between the notice in this case and the model notice set out in Official
Bankruptcy Form 16, the court concluded that the notice given respondents contained a
"dramatic ambiguity," which could well have confused "[e]ven persons experienced in
bankruptcy." *Ibid.* Having determined that the fifth *Dix* factor favored respondents
rather than petitioner, the Court of Appeals found that the record demonstrated
"excusable neglect."

12      Because of the conflict in the courts of appeals over the meaning of "excusable
neglect,"[3] we granted certiorari, 504 U.S. ----, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992), and
now affirm.

II

A.

13      There is, of course, a range of possible explanations for a party's failure to comply with
a court-ordered filing deadline. At one end of the spectrum, a party may be prevented
from complying by forces beyond its control, such as by an act of God or unforeseeable
human intervention. At the other, a party simply may choose to flout a deadline. In
between lie cases where a party may *choose* to miss a deadline although for a very good
reason, such as to render first aid to an accident victim discovered on the way to the
courthouse, as well as cases where a party misses a deadline through inadvertence,
miscalculation, or negligence. Petitioner contends that the Bankruptcy Court was correct
when it first interpreted Rule 9006(b)(1) to require a showing that the movant's failure to
comply with the court's deadline was caused by circumstances beyond its reasonable
control. Petitioner suggests that exacting enforcement of filing deadlines is essential to
the Bankruptcy Code's goals of certainty and finality in resolving disputed claims. Under
petitioner's view, any showing of fault on the part of the late filer would defeat a claim of
"excusable neglect."

14      We think that petitioner's interpretation is not consonant with either the language of
the rule or the evident purposes underlying it. First, the rule grants a reprieve to
out-of-time filings that were delayed by "neglect." The ordinary meaning of "neglect" is
"to give little attention or respect" to a matter, or, closer to the point for our purposes, "to
leave undone or unattended to *esp[ecially] through carelessness.*" Webster's Ninth New
Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses
both simple, faultless omissions to act and, more commonly, omissions caused by
carelessness. Courts properly assume, absent sufficient indication to the contrary, that
Congress intends the words in its enactments to carry "their ordinary, contemporary,
common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d
199 (1979). Hence, by empowering the courts to accept late filings "where the failure to

« up    ct was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated
that the courts would be permitted, where appropriate, to accept late filings caused by
inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond
the party's control.

15    Contrary to petitioner's suggestion, this flexible understanding of "excusable neglect"
accords with the policies underlying Chapter 11 and the bankruptcy rules. The "excusable
neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11
cases but not in Chapter 7 cases.[4] The rules' differentiation between Chapter 7 and
Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the
aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's
estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor
and avoiding forfeitures by creditors. See *United States v. Whiting Pools, Inc.,* 462 U.S.
198, 203, 103 S.Ct. 2309, 2312-2313, 76 L.Ed.2d 515 (1983). In overseeing this latter
process, the bankruptcy courts are necessarily entrusted with broad equitable powers to
balance the interests of the affected parties, guided by the overriding goal of ensuring the
success of the reorganization. See *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527-528, 104
S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). This context suggests that Rule 9006's allowance
for late filings due to "excusable neglect" entails a correspondingly equitable inquiry.

16    The history of the present bankruptcy rules confirms this view. Rule 9006(b) is derived
from Rule 906(b) of the former bankruptcy rules, which governed bankruptcy
proceedings under the former Bankruptcy Act. Like Rule 9006(b)(1), former Rule 906(b)
permitted courts to accept late filings "where the failure to act was the result of excusable
neglect." The forerunner of Rule 3003(c), which now establishes the requirements for
filing claims in Chapter 11 cases, was former Rule 10-401(b), which established the filing
requirements for proofs of claim in reorganization cases under Chapter X of the former
Act, Chapter 11's predecessor. The Advisory Committee Notes accompanying that former
rule make clear that courts were entrusted with the authority under Rules 10-401(b) and
906(b) to accept tardy filings "in accordance with the equities of the situation":

17    "If the court has fixed a bar date for the filing of proofs of claim, it may still enlarge that
time within the provisions of Bankruptcy Rule 906(b) which is made applicable in this
subdivision. This policy is in accord with Chapter X generally which is to preserve rather
than to forfeit rights. In § 102 it rejects the notion expressed in § 57n of the Act that
claims must be filed within a six-month period to participate in any distribution. Section
224(4) of Chapter X of the Act permits distribution to certain creditors even if they fail to
file claims and § 204 fixes a minimum period of 5 years before distribution rights under a
plan may be forfeited. This approach was intentional as expressed in Senate Report 1916
(75th Cong., 3d Sess., April 20, 1938):

18    " 'Sections 204 and 205 insure participation in the

19    benefits of the reorganization to those who, through inadvertence or otherwise, have
failed to file their claims or otherwise evidence their interests during the pendency of the
proceedings.'

20    "This attitude is carried forward in the rules,

21    first by dispensing with the need to file proofs of claims and stock interests in most
instances and, secondly, by permitting enlargement of the fixed bar date in a particular
case with leave of court and for cause shown in accordance with the equities of the
situation." Advisory Committee Note accompanying Rule 10-401(b), reprinted in 13A J.
Moore & L. King, Collier on Bankruptcy, ¶ 10-401.01, p. 10-401-4 (14th ed. 1977).

« up  This history supports our conclusion that the enlargement of prescribed time periods under the "excusable neglect" standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer.

23      Our view that the phrase "excusable neglect" found in Bankruptcy Rule 9006(b)(1) is not limited as petitioner would have it is also strongly supported by the Federal Rules of Civil Procedure, which use that phrase in several places. Indeed, Rule 9006(b)(1) was patterned after Rule 6(b) of those rules.[5] Under Rule 6(b), where the specified period for the performance of an act has elapsed, a District Court may enlarge the period and permit the tardy act where the omission is the "result of excusable neglect."[6] As with Rule 9006(b)(1), there is no indication that anything other than the commonly accepted meaning of the phrase was intended by its drafters. It is not surprising, then, that in applying Rule 6(b), the courts of appeals have generally recognized that "excusable neglect" may extend to inadvertent delays.[7] Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept"[8] and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[9]

24      The "excusable neglect" standard for allowing late filings is also used elsewhere in the Federal Rules of Civil Procedure. When a party should have asserted a counterclaim but did not, Rule 13(f) permits the counterclaim to be set up by amendment where the omission is due to "oversight, inadvertence, or excusable neglect, or when justice requires." In the context of such a provision, it is difficult indeed to imagine that "excusable neglect" was intended to be limited as petitioner insists it should be.[10]

25      The same is true of Rule 60(b)(1), which permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect," but only on motion made within one year of the judgment. Rule 60(b)(6) goes further, however, and empowers the court to reopen a judgment even after one year has passed for "any other reason justifying relief from the operation of the judgment." These provisions are mutually exclusive, and thus a party who failed to take timely action due to "excusable neglect" may not seek relief more than a year after the judgment by resorting to subsection (6). *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, and n. 11, 108 S.Ct. 2194, 2205 n. 11, 100 L.Ed.2d 855 (1988). To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. See *ibid.; Ackerman v. United States,* 340 U.S. 193, 197-200, 71 S.Ct. 209, 211-213, 95 L.Ed. 207 (1950); *Klapprott v. United States,* 335 U.S. 601, 613-614, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In *Klapprott,* for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so. As explained by Justice Black:

26      "It is contended that the one-year limitation [of subsection (1)] bars petitioner on the premise that the petition to set aside the judgment showed, at most, nothing but 'excusable neglect.' And of course, the one-year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b). But petitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere 'neglect' on his part. The undenied facts set out in the petition reveal far more than a failure to defend . . . due to inadvertence, indifference, or careless disregard of consequences." 335 U.S., at 613, 69 S.Ct., at 389.

« up Justice Frankfurter, although dissenting on other grounds, agreed that Klapprott's
allegations of *inability* to comply with earlier deadlines took his case outside the scope of
"excusable neglect" "because 'neglect' in the context of its subject matter carries the idea
of negligence and not merely of non-action." *Id.,* at 630, 69 S.Ct., at 398.

28    Thus, at least for purposes of Rule 60(b), "excusable neglect" is understood to
encompass situations in which the failure to comply with a filing deadline is attributable
to negligence. Because of the language and structure of Rule 60(b), a party's failure to file
on time for reasons beyond his or her control is not considered to constitute "neglect."
See *Klapprott, supra.*[11] This latter result, however, would not obtain under Bankruptcy
Rule 9006(b)(1). Had respondents here been prevented from complying with the bar date
by an act of God or some other circumstance beyond their control, the Bankruptcy Court
plainly would have been permitted to find "excusable neglect." At the same time, reading
Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent
omission would ignore the most natural meaning of the word "neglect" and would be at
odds with the accepted meaning of that word in analogous contexts.[12]

    B

29    This leaves, of course, the Rule's requirement that the party's neglect of the bar date be
"excusable." It is this requirement that we believe will deter creditors or other parties
from freely ignoring court-ordered deadlines in the hopes of winning a permissive
reprieve under Rule 9006(b)(1). With regard to determining whether a party's neglect of
a deadline is excusable, we are in substantial agreement with the factors identified by the
Court of Appeals. Because Congress has provided no other guideposts for determining
what sorts of neglect will be considered "excusable," we conclude that the determination
is at bottom an equitable one, taking account of all relevant circumstances surrounding
the party's omission.[13] These include, as the Court of Appeals found, the danger of
prejudice to the debtor, the length of the delay and its potential impact on judicial
proceedings, the reason for the delay, including whether it was within the reasonable
control of the movant, and whether the movant acted in good faith. See 943 F.2d, at
677.[14]

30    There is one aspect of the Court of Appeals' analysis, however, with which we disagree.
The Court of Appeals suggested that it would be inappropriate to penalize respondents
for the omissions of their attorney, reasoning that "the ultimate responsibility of filing the
. . . proof[s] of clai[m] rested with [respondents'] counsel." *Ibid.* The court also appeared
to focus its analysis on whether respondents did all they reasonably could in policing the
conduct of their attorney, rather than on whether their attorney, as respondents' agent,
did all he reasonably could to comply with the court-ordered bar date. In this, the court
erred.

31    In other contexts, we have held that clients must be held accountable for the acts and
omissions of their attorneys. In *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8
L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequence of
dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial
conference. In so concluding, we found "no merit to the contention that dismissal of
petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty
on the client." *Id.,* at 633, 82 S.Ct., at 1390. To the contrary, the Court wrote:

32    "Petitioner voluntarily chose this attorney as his representative in the action, and he
cannot now avoid the consequences of the acts or omissions of this freely selected agent.
Any other notion would be wholly inconsistent with our system of representative
litigation, in which each party is deemed bound by the acts of his lawyer-agent and is
considered to have 'notice of all facts, notice of which can be charged upon the attorney.' "

« up    *Id.,* at 633-634, 82 S.Ct., at 1390 (quoting *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1880)).

33    This principle also underlay our decision in *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), that a client could be penalized for counsel's tardy filing of a tax return. This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable.

III

34    Although the Court of Appeals in this case erred in not attributing to respondents the fault of their counsel, we conclude that its result was correct nonetheless. First, petitioner does not challenge the findings made below concerning the respondents' good faith and the absence of any danger of prejudice to the debtor or of disruption to efficient judicial administration posed by the late filings. Nor would we be inclined in any event to unsettle factual findings entered by a Bankruptcy Court and affirmed by both the District Court and Court of Appeals. See *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 665, 107 S.Ct. 2617, 2623, 96 L.Ed.2d 572 (1987). Indeed, in this case, the Bankruptcy Court took judicial notice of the fact that the debtor's second amended plan of reorganization, offered after this litigation was well underway, takes account of respondents' claims. App. 168a-169a. As the Court of Appeals found, the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim.

35    In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. See 943 F.2d, at 678. We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. *Ibid.*[15] This is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

36    For these reasons, the judgment of the Court of Appeals is

37    *Affirmed.*

38    Justice O'CONNOR, with whom Justice SCALIA, Justice SOUTER and Justice THOMAS join, dissenting.

39    Today the Court replaces the straightforward analysis commended by the language of Bankruptcy Rule 9006(b)(1) with a balancing test. Because the Court's approach is inconsistent with the Rule's plain language and unduly complicates the task of courts called upon to apply it, I respectfully dissent.

« up  * Bankruptcy Rule 9006(b)(1) provides that, if a party moves for permission to act after
having missed a deadline, the court "may at any time in its discretion . . . permit the act to
be done where the failure to act was the result of excusable neglect." This language
establishes two requirements that must be met before untimely action will be permitted.
First, no relief is available unless the failure to comply with the deadline "was the result of
excusable neglect." Bkrtcy.Rule 9006(b)(1). Second, the court may withhold relief if it
believes forbearance inappropriate; the statute does not *require* the court to forgive
every omission caused by excusable neglect, but states that the court "*may* " grant relief
"in its discretion." *Ibid.* (emphasis added). Thus, the court must at the threshold
determine its authority to allow untimely action by asking whether the failure to meet the
deadline resulted from excusable neglect; if the answer is yes, *then* the court should
consider the equities and decide whether to excuse the error.

41    Instead of following the plain meaning of the statute and examining this case in these
two steps, the Court employs a multifactor balancing test covering numerous equitable
considerations, including (and perhaps not limited to) "the danger of prejudice to the
debtor, the length of the delay and its potential impact on judicial proceedings, the
reason for the delay, . . . and whether the movant acted in good faith." *Ante,* at _____. But
Rule 9006(b) does not simply command courts to permit late filing whenever it would be
"equitable" in light of all the circumstances. Rather, it establishes that the courts may
exercise their discretion in accord with the equities *only* if the failure to meet the deadline
resulted from excusable neglect in the first place. Whether the failure resulted from
excusable neglect depends on the nature of the omission itself, both in terms of cause and
culpability. Consequently, until the reason for the omission is determined to be
sufficiently blameless, the consequences of the failure, such as the effect on the parties or
the impact on the judicial system, are not relevant. *In re Vertientes, Ltd.,* 845 F.2d 57, 60
(CA3 1988) ("The court has no discretion to grant an extension simply because no
prejudice would result, or for any other equitable reason"); *In re South Atlantic
Financial Corp.,* 767 F.2d 814, 819 (CA11 1985) (The focus of the Rule is on the omission
and the reasons therefor rather than on the effect on others), cert. denied, 475 U.S. 1015,
106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); see also *Maressa v. A.H. Robins Co.,* 839 F.2d 220,
221 (CA4 1988) (no exception to claim filing deadlines based on general equitable
principles).

42    Although the Court pays lip service to the existence of a threshold determination
regarding excusable neglect, see *ante,* at _____ ("Rule 9006(b)(1) empowers a bankruptcy
court to permit a late filing if the movant's failure to comply with an earlier deadline 'was
the result of excusable neglect' "), it holds that the threshold question is "at bottom an
equitable one." *Ante,* at _____. Our case law is to the contrary.

43    In *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695
(1990), we applied the virtually identical language of Federal Rule of Civil Procedure 6(b).
Under that Rule, as under this one, a court may not permit untimely filing unless it
"find[s] as a substantive matter . . . that the failure to file on time 'was the result of
excusable neglect.' " 497 U.S., at 897, 110 S.Ct., at 2733. Characterizing that "obstacle" as
"the greatest of all," *ibid.,* we examined the reasons for the movant's failure to make a
timely filing. Nowhere in our discussion did we mention the equities or the consequences
of the movant's failure to file. Instead, we concentrated exclusively on the asserted cause
of the failure and the movant's culpability. See *ibid.*

44    The Court concedes that Federal Rule of Civil Procedure 6(b) and Bankruptcy Rule
9006(b) have virtually identical language; indeed, it even relies on the former to support
its interpretation of the latter. *Ante,* at _____. Yet the majority provides no reason why we
should depart from the analysis we so recently employed in *Lujan,* except to say it reads

« up that case differently. See *ante*, at ____, n. 13. While it is true that we did not "define" the phrase "excusable neglect" in *Lujan, ante*, at ____, n. 13, there is no denying that we applied that phrase to the facts before us: There is simply no other explanation for the opinion's discussion of whether the movant had overcome that "greatest" of "substantive obstacle[s]," 497 U.S., at 897, 110 S.Ct., at 2733. But even if *Lujan* might be read differently, the majority offers no affirmative reason to believe that the equities *should* bear on whether neglect is "excusable." Instead it states:

45        "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Ante*, at ____.

46        In my view, Congress *has* provided "guideposts" as to how courts should determine whether "neglect will be considered 'excusable.' " The majority simply fails to follow them. First is the remaining language of Rule 9006(b)(1) itself, a good portion of which the majority fails to consult. The Rule, read in its entirety, establishes that the excusable neglect determination requires inquiry into causation rather than consequences: Unless "the *failure* to act was *the result* " of the excusable neglect, relief is unavailable. "It is clear from this language that the focus of [the Rule] is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions." *In re South Atlantic Financial Corp.*, 767 F.2d, at 819. Moreover, Rule 9006(b)(1) indicates that the court must determine whether the neglect was "excusable" as of the moment it occurred rather than in light of facts known when untimely action is proposed. The Rule authorizes relief in cases where the failure "*was* " the result of excusable neglect, not as to incidents where the neglect *is* excusable in light of current knowledge.

47        The majority also overlooks a second and dispositive guidepost—the accepted dictionary definition of "excusable neglect." That definition does not incorporate the results or consequences of a failure to take appropriate and timely action; to the contrary, it turns on the cause or reasons for the failure and the culpability involved. According to Black's Law Dictionary 566 (6th ed. 1990), "excusable neglect" is:

48        "[A] failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. As used in rule (*e.g.* Fed.R.Civil P. 6(b)) authorizing court to permit an act to be done after expiration of the time within which under the rules such act was required to be done, where failure to act was the result of 'excusable neglect', quoted phrase is ordinarily understood to be the act of a reasonably prudent person under the same circumstances."

49        Cf. 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, pp. 480, 482 (2d ed. 1987) ("Excusable neglect [in Fed.Rule Civ.Proc. 6(b) ] seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance. . . . Absent a showing along these lines, relief will be denied"). Of course, we are not bound to accept Black's Law Dictionary as the authoritative expositor of American law. But if Congress had intended to depart from the accepted meaning of excusable neglect—supplementing its exclusive focus on the *reason* for the error with an emphasis on its *effect*—surely it would have so indicated.

50        In any event, it is quite unnatural to read the term "excusable neglect" to mean a variety of neglect that, in light of subsequent events and all the equities, turns out to be excusable. Not only does such an interpretation suffer from circularity excusable neglect

« up  ecomes the neglect that the court in its equitable discretion chooses to excuse—but it
also renders critical language in the Rule superfluous. After all, the majority's
interpretation would be no different if Rule 9006(b) afforded courts discretion to give
relief in cases of "neglect" rather than "excusable neglect." The term "neglect" would
describe the acceptable level of culpability, see *ante,* at ____, and the equities still would
move the court's discretionary decision on whether it in fact would excuse the error once
"neglect" was shown. The Court's interpretation thus reads the word "excusable" right
out of the Rule. In my view, Congress included the word "excusable" to convey the notion
that some types of neglect—at a minimum, the highly culpable and the willful cannot be
forgiven, regardless of the consequences.

51        The Court does recognize one guidepost. It states that the requirement of "excusable
neglect" should be construed so as to "deter creditors or other parties from freely
ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under
Rule 9006(b)(1)." *Ante,* at ____. But rather than concentrating on the types of culpable
neglect that ought to be deterred, the majority immediately shifts its focus to
considerations such as the *effect* of the failure to take timely action, including prejudice to
the debtor and the effect on judicial proceedings. *Ante,* at ____. If the goal of requiring
neglect to be "excusable" is to deter culpable noncompliance, the consequences of such
noncompliance should be irrelevant. To hold otherwise not only undermines deterrence
but excuses the inexcusable.

II

52        The Court's approach also undermines the interests the Bankruptcy Rules seek to
promote. Because the majority's balancing test is indeterminate, its results frequently will
be called into question. Reasonable minds often differ greatly on what the equities
require. This case is a prime example. Applying much the same test the Court applies
today, two courts below held that respondent's neglect was inexcusable. Then the Court
of Appeals substituted its view and held otherwise. Today the Court evens the score at
two to two. We ought not unnecessarily introduce so much uncertainty into a routine
matter like an "excusable neglect" determination. Nor should we unhesitatingly endorse
an approach that invites litigants to seek redetermination of their procedural disputes
from four different courts.

53        Direct application of Rule 9006(b)(1)'s plain language to this case, in contrast, is
straightforward. First, we must examine the failure to act itself and ask if it resulted from
excusable neglect. If it did, then the lower court may, in its discretion, permit untimely
action in accord with the equities. But if the failure did not result from excusable neglect,
there is no reason to consider the effects of the failure.

54        That, of course, brings us to the question to which the majority devotes the bulk of its
discussion: whether mere negligence can qualify as excusable neglect. *Ante,* at ____. As
the majority points out, *ante,* at ____, the Courts of Appeals have disagreed on this
matter. Some require the omission to result from circumstances beyond counsel's
reasonable control. See, *e.g., In re South Atlantic Financial Corp.,* 767 F.2d, at 819, and
cases cited *ante,* at ____, n. 3. Others hold that negligence may constitute excusable
neglect but distinguish among different types of negligence. Cf. *Consolidated
Freightways Corp. of Delaware v. Larson,* 827 F.2d 916, 919 (CA3 1987) ("Excusable
neglect" inquiry entails a "qualitative distinction between inadvertence which occurs
despite counsel's affirmative efforts to comply and inadvertence which results from
counsel's lack of diligence") (Fed.Rule App.Proc. 4(a)), cert. denied *sub nom.,
Consolidated Freightways Corp. of Delaware v. Secretary of Transp. of Pennsylvania,*
484 U.S. 1032, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988). In my view, we need not resolve that

« up ispute in this case. Once we properly clarify the factors that are *relevant* to the ␣xcusable neglect determination, the Bankruptcy Court's findings compel the conclusion that respondent's neglect was inexcusable under any standard.

55    The Bankruptcy Court expressly found that respondent's former counsel's failure to file a timely proof of claim resulted from negligence and, to some degree, an attitude of "indifference" toward the deadline. App. 172a. In addition, the court noted that the client, a sophisticated business person and an active participant in the bankruptcy proceedings, had received actual notice of, and was aware of, the deadline. *Id.,* at 171a. Thus, this is not a case of a clerical or other minor error yielding an untoward result despite counsel's best efforts; it is a case in which counsel simply failed to look after his business properly, even if that failure was not the result of bad faith.

56    The Court of Appeals held the neglect excusable nonetheless for two reasons. First, it thought it inequitable to saddle the client with the mistakes of its attorney. The Court today properly rejects that rationale. *Ante,* at _____. The second reason offered by the Court of Appeals was that the notice containing the deadline was incorporated in a document entitled "Notice for Meeting of Creditors." That designation, the court explained, was not enough to put those without extensive bankruptcy experience on notice that the "bar date" at the end of the notice was the final date for filing proofs of claims. *In re Pioneer Investment Services Co.,* 943 F.2d 673, 678 (CA6 1991). In addition, the court noted that use of the term "bar date" to designate the deadline for filing a proof of claim was "dramatic[ally] ambigu[ous]" since there are many bar dates in bankruptcy, not all of them for the filing of proofs of claims. *Ibid.* The Court today signals its agreement. *Ante,* at _____, and n. 13. The majority and the Court of Appeals may be correct that the form of notice was unorthodox; they also may be correct in asserting that, if the inadequacy of notice caused respondent to miss the deadline, respondent's failure was the result of "excusable neglect." But they are not correct in asserting that respondent's former lawyer overlooked the deadline "as a result of" the unorthodox form of notice. The Bankruptcy Court made no such finding. Nor did it find that the notice's ambiguity somehow led counsel astray. On the contrary, the Bankruptcy Court found that both counsel and client had actual notice of the deadline and that the cause of their failure to file on time was indifference and negligence. App. 172a.

57    To be sure, we would not be obligated to accept those findings if they were not supported by the record. But they are supported by the record. Indeed, in a commendable display of candor, respondent's former counsel admitted that the "foul-up" was "particularly" his own. *Id.,* at 72a. Accord, *id.,* at 112a ("[T]he foul-up I can't lay to the clients' shoes because it really is probably mine"). There is no indication that he blamed his error on petitioner's form of notice. Rather, he appealed to the Bankruptcy Court's sense of fairness, arguing that it would be inequitable to penalize his client so greatly where the "delay was occasioned not by [the client], but by its counsel." *Id.,* at 73a. Accord, *id.,* at 102(a) ("[U]nder all the circumstances, we think it would be unfair and inequitable to visit the sins of the lawyer on the client"); *id.,* at 112a (Although the foul-up was respondent's attorney's, given "the lack of prejudice [and] the totality of all the circumstances, [it would be] inherently inequitable to visit the sins on the client for this situation").

58    Perhaps it would have been desirable for the Bankruptcy Court to make a specific factual finding on whether the unorthodox form of notice actually caused respondent's former counsel to miss the deadline. Given that respondent's lawyer offered no reason why he overlooked the bar date, it is not inconceivable that the notice's unorthodoxy led him astray. *Id.,* at 57a (no recollection of seeing the order setting the deadline); *id.,* at 103a (same). But if there is uncertainty, the answer is to remand to the Bankruptcy Court

« up ›r appropriate factual findings. Based on the current state of the record and the findings
.1e Bankruptcy Court did make, I cannot accept the majority's finding that counsel's
failure in fact resulted from the inadequacy of notice.

59      Respondent's former counsel's error may represent a relatively unaggravated instance
of negligence. He did not miss deadlines repeatedly despite clear warnings. Nor did he
act in bad faith. But respondent, its former lawyer, the Court of Appeals, and the majority
today, have all failed to produce a reasonable explanation for this rather major error.
More important still, the Bankruptcy Court *did* explain the error. It found that
respondent's failure to meet the deadline resulted at least in part from counsel's
"indifference." The majority offers no reason for ignoring that finding. Even accepting the
conclusion that excusable neglect may cover some instances of negligence, indifference
falls outside the range of the "excusable." Because the failure to act in this case did not
result from excusable neglect, there is no occasion to consider whether the Bankruptcy
Court properly exercised its discretion in light of the equities; respondent was ineligible
for relief in any event.

60      The Court's only response is that, even if one focuses exclusively on the nature of the
error and why it occurred, the parties can still litigate the Rule's application. *Ante,* at
_____, n. 14. But that objection can be made to any approach; courts always must apply
law to facts. The point is that following the plain language of Rule 9006(b)(1) renders the
law's application both easier and more certain. A determination that a party missed the
filing deadline on account of "indifference" or some other reason is not as "susceptible of
litigation," *ibid.,* as the result of multifactor balancing. The determination is factual and,
as such, may be overturned on review only if clearly erroneous. In fact, no one—neither
the parties nor any of the many courts that have reviewed this case—has suggested that
there was clear error here. Rather, in this case, as in most others like it, the Bankruptcy
Court's findings are more than adequately supported by the record.

61      Indeed, the majority succeeds in circumventing the finding of "indifference" only by
ignoring it, concentrating instead on other considerations in the multifactor test. The
Court's technique will no doubt prove instructive to anyone appealing an excusable
neglect determination in the future, for it highlights the indeterminacy of the test: A
simple shift in focus from one factor to another—here, from cause to effects —shifts the
balance and the result. The approach required by the Rule itself, in contrast, precludes
that slippery tactic. At the threshold, there is but one question on which to focus: the
reason the deadline was missed. Contrary to the Court's assertion, *ibid.,* that singular
focus does not require us to hold today that all incidents of negligence are inexcusable.
We need hold only that *indifference* is inexcusable. That, I would have thought, goes
without saying.

        III

62      When courts depart from the language of a congressional command, they often create
unintended difficulties in the process. This case, I fear, may prove no exception. The
majority's single-step, multifactor, equitable balancing approach to "excusable neglect" is
contrary to the language of Rule 9006(b) and inconsistent with sensible notions of
judicial economy. Its indeterminacy not only renders consistent application unlikely but
also invites unproductive recourse to appeal. Such consequences are especially
unfortunate in the Rules of *Bankruptcy* Procedure. An entity in bankruptcy can ill afford
to waste resources on litigation; every dollar spent on lawyers is a dollar creditors will
never see. Congress established in Rule 9006(b) the inquiry that should be made when
courts contemplate permitting untimely action. Under the approach commended by that
Rule, respondent is barred from filing an untimely proof of claim because its omission

« up ⸰esulted from a neglect that, on this record, was simply inexcusable; the equities, no matter how compelling, cannot propel respondent over that hurdle. I therefore respectfully dissent.

---

\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

---

[1] Bankruptcy Rule 3003(c), in relevant part, provides:

"(c) Filing Proof of Claim.

"(1) *Who May File.* Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.

"(2) *Who Must File.* Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

"(3) *Time for Filing.* The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4)."

---

[2] Bankruptcy Rule 9006(b) provides:

"(b) Enlargement.

"(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

"(2) *Enlargement Not Permitted.* The court may not enlarge the time for taking action under Rules 1007(d), 1017(b)(3), 2003(a) and (d), 7052, 9023, and 9024.

"(3) *Enlargment Limited.* The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules."

---

[3] The Courts of Appeals for the Fourth, Seventh, Eighth, and Eleventh Circuits have taken a narrow view of "excusable neglect" under Rule 9006(b)(1), requiring a showing that the delay was caused by circumstances beyond the movant's control. See *In re Davis*, 936 F.2d 771, 774 (CA4 1991); *In re Danielson*, 981 F.2d 296, 298 (CA7 1992); *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1314-1315 (CA8 1987); *In re Analytical Systems, Inc.*, 933 F.2d 939, 942 (CA11 1991). The Court of Appeals for the Tenth Circuit, by contrast, has applied a more flexible analysis similar to that employed by the Court of Appeals in the present case. *In re Centric Corp.*, 901 F.2d 1514, 1517-1518, cert. denied *sub nom. Trustees of Centennial State Carpenters Pension Trust Fund v. Centric Corp.*, 498 U.S. 852, 111 S.Ct. 145, 112 L.Ed.2d 112 (1990). The Courts of Appeals similarly have divided in their interpretations of "excusable neglect" as found in Rule 4(a)(5) of the Federal Rules of Appellate Procedure. Some courts have required a showing that the movant's failure to meet the deadline was beyond its control, see, *e.g., 650 Park Ave. Corp. v. McRae*, 836 F.2d 764, 767 (CA2 1988); *Pratt v. McCarthy*, 850 F.2d 590, 592 (CA9 1988), while others have adopted a more flexible approach similar to that employed by the Court of Appeals in the present case, see, *e.g., Consolidated Freightways Corp. of Delaware v. Larson*, 827 F.2d 916 (CA3 1987), cert. denied *sub nom. Consolidated Freightways Corp. v. Secretary of Transp. of Pennsylvania*, 484 U.S. 1032, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988); *Lorenzen v. Employees Retirement Plan of Sperry-Hutchinson Co.*, 896 F.2d 228, 232-233 (CA7 1990).

« up    4 The time-computation and -extension provisions of Rule 9006, like those of Federal Rule of Civil Procedure 6, are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted. Subsections (b)(2) and (b)(3) of Rule 9006 enumerate those time requirements excluded from the operation of the "excusable neglect" standard. One of the time requirements listed as excepted in Rule 9006(b)(3) is that governing the filing of proofs of claim in Chapter 7 cases. Such filings are governed exclusively by Rule 3002(c). See Rule 9006(b)(3); *In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1432 (CA9 1990). By contrast, Rule 9006(b) does not make a similar exception for Rule 3003(c), which, as noted earlier, establishes the time requirements for proofs of claim in Chapter 11 cases. Consequently, Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11 bankruptcies. See Advisory Committee Note accompanying Rule 9006(b)(1).

5 See Advisory Committee Note accompanying Rule 9006(b).

6 Federal Rule of Civil Procedure 6(b) provides:

"(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), 60(b), and 74(a), except to the extent and under the conditions stated in them."

7 See, *e.g.*, *United States v. Borromeo*, 945 F.2d 750, 753-754 (CA4 1991); *Hill v. Marshall*, No. 86-3987, 1988 WL 117163, at *2, 1988 U.S.App. LEXIS 14742, *4 (CA6, Nov. 4, 1988); *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (CA3 1988); *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 319 (CA2 1986); *United States ex rel. Robinson v. Bar Assn. of District of Columbia*, 89 U.S.App.D.C. 185, 186, 190 F.2d 664, 665 (1951). But see *Hewlett-Packard Co. v. Olympus Corp.*, 931 F.2d 1551, 1552-1553 (CA Fed.1991).

8 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, p. 479 (2d ed. 1987).

9 The Courts of Appeals generally have given a similar interpretation to "excusable neglect" in the context of Rule 45(b) of the Rules of Criminal Procedure, which, like Rule 9006(b), was modeled after Rule 6(b). See, *e.g.*, *United States v. Roberts*, 978 F.2d 17, 21-24 (CA1 1992); *Warren v. United States*, 123 U.S.App.D.C. 160, 163, 358 F.2d 527, 530 (1965); *Calland v. United States*, 323 F.2d 405, 407-408 (CA7 1963).

10 In assessing what constitutes "excusable neglect" under Rule 13(f), the lower courts have looked, *inter alia*, to the good faith of the claimant, the reason for the delay, and the danger of prejudice to the opposing party. See, *e.g.*, *New York Petroleum Corp. v. Ashland Oil, Inc.*, 757 F.2d 288, 291 (Temp.Ct.Emergency App.1985); *Gaines v. Farese*, No. 87-5567, 1990 WL 153937, *3, 1990 U.S.App. LEXIS 18086, *9 (CA6, Oct. 11, 1990); *Barrett v. United States Banknote Corp.*, 1992-2 Trade Cases ¶ 69,956, p. ——, 1992 WL 232055 (SDNY 1992); *Technographics, Inc. v. Mercer Corp.*, 142 F.R.D. 429, 430 (MD Pa.1992). Federal Rule of Bankruptcy Procedure 7013 contains a similar allowance for late counterclaims brought by a trustee or debtor in possession.

11 A similar, but even more explicit, dichotomy can be found in a former rule of the Circuit Court of Appeals for the Second Circuit governing the late filing of appeals. That rule permitted late filings " 'upon a showing . . . (a) that the delay has been due to cause beyond the control of the moving party or (b) that the delay has been due to circumstances which shall be deemed to be merely excusable neglect. . . .' " Rule 15(2), U.S.C.C.A., Second Circuit, quoted in *Pyramid Motor Corp. v. Ispass*, 330 U.S. 695, 703, n. 10, 67 S.Ct. 954, 958, n. 10, 91 L.Ed. 1184 (1947). Although the meaning given "excusable neglect" for purposes of this rule obviously is not controlling for purposes of Rule 9006(b)(1), it does suggest that the meaning of "excusable neglect" urged by petitioner is far from natural.

12 See also *United States v. Boyle*, 469 U.S. 241, 245, n. 3, 105 S.Ct. 687, 690, n. 3, 83 L.Ed.2d 622

## PROOF OF SERVICE
### [Code of Civil Procedure §§1011, 1013]

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the county of Orange, state of California.
I am over the age of 18 years and not a party to the within action; my business address
is: 2152 Dupont Drive; Suite 214-A; Irvine, CA 92612.

On 6-13-2011 I served the foregoing document described as: _____

**opposition to objection to claim of Rosalinda Barrios**

on parties in interest in this action

[ ] by personal delivery by hand of [ ] original [ ] true copy to the person or attorney named
below;

[ ✓ ] by placing the [ ] original [ ✓ ] a true copy enclosed in a sealed envelope with postage
thereon prepaid and deposited with the U.S. postal service at Irvine, or vicinity,
in California and addressed as follows:

SEE ATTACHED MAILING LIST

[ ] also by facsimile.

Executed on 6-13-2011 at Orange, California.

[ ]**(state)**     I declare under penalty of perjury under the laws of the state of California that
the foregoing is true and correct.

[ ✓ ]**(federal)**  I declare that I am employed at the office of a member of the bar of this court
at whose direction the service was made.

_____          _____
                                          Declarant

## Mailing List

Chambers of Honorable James M. Beck
United States Bankruptcy Court
One Bowling Green
Courtroom 601
New York, NY 10004

Office of United States Trustee
Attention: Tracy Hope Davis, Esq.
33 Whitehall Street
21st Floor
New York, NY 10004

Robert Lemmons, Esq.
Weil, Gotshal & Manges
767 5th Avenue
New York, NY 10153

Dennis Dunne, Esq.
Milbank, Tweed, Hadley & McCloy
1 Chase Manhattan Plaza
New York, NY 10005