BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

Attorneys for Barclays Capital Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS CAPITAL, INC.<br><br>Defendant. | Adv. Proc. No. 09-01731<br>(JMP) |

**BARCLAYS CAPITAL INC.'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS IN SUPPORTS OF ITS MOTION FOR**
**SUMMARY JUDGMENT ON COUNT II OF LBHI'S ADVERSARY COMPLAINT**

Pursuant to Local Rule 56.1, made applicable to this adversary proceeding by Local Bankruptcy Rule 7056-1, Barclays Capital, Inc. ("Barclays") respectfully submits the following statement of undisputed material facts to which there is no genuine issue to be tried.

1. Section 3.1 of the Asset Purchase Agreement (the "APA") provides that "[t]he aggregate consideration for the Purchased Assets shall be (a) the Cash Amount, and (b) the assumption of the Assumed Liabilities by Purchaser." BCI Ex. 1 at § 3.1 (Hume Decl. Ex. 1).[1]

2. Section 2.3(c) of the APA provides that the Assumed Liabilities include "all Liabilities assumed under Article IX." BCI Ex. 1 at § 2.3(c) (Hume Decl. Ex. 1).

3. Under Article IX of the APA, Barclays assumed the liability to pay "Transferred Employees" both bonus payments and severance payments. BCI Ex. 1 at § 9 (Hume Decl. Ex. 1).

4. Section 9.1(a) of the APA obligated Barclays to offer employment to all active employees who were "employed primarily in connection with the Business at the Closing." BCI Ex. 1 at § 9.1(a) (Hume Decl. Ex. 1).

5. Section 9.1(a) of the APA defined those employees who accepted the Barclays employment offer as the "Transferred Employees." BCI Ex. 1 at § 9.1(a) (Hume Decl. Ex. 1).

6. Section 9.1(b) of the APA required Barclays to pay each "Transferred Employee whose employment is terminated…severance payments and benefits at levels that are no less favorable than such levels as the Transferred Employee would have been entitled to receive pursuant to the provisions of the Seller's severance plans or agreements covering such

---

[1] Citations herein are in the form used in Barclays' Post-Trial Memorandum of Law and Fact. The documents referred to herein are either contained within the record of the hearings on the Rule 60(b) motions, or are being presented to the Court in conformity with Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to adversary proceedings). For the Court's convenience, all documents referred to herein are attached as exhibits to the Declaration of Hamish P.M. Hume In Support of Barclays' Memorandum in Opposition to LBHI's Motion and In Support of Barclays' Motion for Summary Judgment on Count II of LBHI's Adversary Complaint dated June 22, 2011 ("Hume Decl.").

1

Transferred Employee as in effect immediately prior to the Closing." BCI Ex. 1 at § 9.1(b) (Hume Decl. Ex. 1).

7. Section 9.1(c) of the APA required Barclays to "pay each Transferred Employee an annual bonus ('08 Annual Bonuses'), in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer of each of Holdings and Purchaser (the 'Accrued 08 FY Liability')." BCI Ex. 1 at § 9.1(c) (Hume Decl. Ex. 1).

8. In defining the Assumed Liabilities that constitute the Consideration, the APA refers to "all Liabilities assumed under Article IX" and does not draw a distinction between the different types of compensation liabilities set forth in Article IX. BCI Ex. 1 at § 2.3(c) (Hume Decl. Ex. 1).

9. Section 2.3(f) of the APA provides that the Assumed Liabilities include "all other Liabilities to the extent related to the Business, the Purchased Assets, or the Transferred Employees arising after the Closing." BCI Ex. 1 at § 2.3(f) (Hume Decl. Ex. 1).

10. LBHI admits that "100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary)" was less than $1.5 billion. *See* BCI Ex. 862 at ¶ 8 (Hume Decl. Ex. 13); LBHI Rule 60(b) Reply Br. at ¶ 133 (Hume Decl. Ex. 28); BCI Ex. 161 (Hume Decl. Ex. 7).

11. While Barclays asserts that it paid over $1.8 billion in 2008 bonus payments, *see* BCI Ex. 142, LBHI admits that Barclays paid "approximately $1.5 billion" in bonus payments to Transferred Employees. LBHI Br. at ¶ 4, 27-34; *see* LBHI Rule 60(b) Br. ¶ 10 (Hume Decl. Ex.

2

25); BCI Ex. 142 (Hume Decl. Ex. 6). Thus, it is undisputed that Barclays paid *at least* $1.5 billion in 2008 bonus payments to the Transferred Employees.

12. Based upon the facts set forth in paragraph 10 and 11 above, LBHI admits that Barclays paid 2008 bonuses to the Transferred Employees in an amount that exceeded "100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary)." LBHI Rule 60(b) Reply Br. at ¶ 133 (Hume Decl. Ex. 28); BCI Ex. 161 (Hume Decl. Ex. 7); LBHI Br. at ¶ 4, 27-34; LBHI Rule 60(b) Br. ¶ 10 (Hume Decl. Ex. 25); BCI Ex. 142 (Hume Decl. Ex. 6); *see* BCI Ex. 1 at § 9.1(c) (Hume Decl. Ex. 1).

13. By requiring Barclays to hire the Transferred Employees and to make certain bonus and severance payments to those employees, Article IX caused Barclays to assume certain tax liabilities with respect to the Transferred Employees. *See* BCI Ex. 1 at § 9 (Hume Decl. Ex. 1); *see also* 26 U.S.C. §§ 3111(a) & (b).

14. During the week of September 15-22, 2008, it was not possible to know what the total dollar amounts would be that Barclays would have to pay with respect to Transferred Employees in 2008 bonuses, in severance payments, or in any related tax payments. *See generally* 4/28/10 Tr. at 114:7-25 (Miller) (Hume Decl. Ex. 41); Miller Dep. Tr. at 81:5-14 (Hume Decl. Ex. 32); 6/25/10 Tr. at 99:16-21 (Despins) (Hume Decl. Ex. 53).

15. During the week of September 15-22, 2008, the specific amount that any given potential Transferred Employee would be paid in bonus was uncertain because it depended upon whether that employee accepted the offer to join Barclays, what that employee was likely to have received as a bonus from Lehman, and at least in some instances, what that employee was able to negotiate from Barclays in order to commit to joining Barclays. *See* Miller Dep. Tr. at 81:5-14

3

(Hume Decl. Ex. 32); BCI Ex. 579 (Hume Decl. Ex. 12); McGee Dep. Tr. at 30:7-32:19, 72:15-74:9, 74:13-24 (Hume Decl. Ex. 34).

16. During the week of September 15-22, 2008, it was highly uncertain how much Barclays would have to pay to Transferred Employees as severance because Barclays did not have time before Closing to do an integration analysis, and thus, did not know how many employees would be kept and how many would be terminated. 4/28/10 Tr. at 114:7-25 (Miller) (Hume Decl. Ex. 41).

17. In proffering Bart McDade's testimony at the September 19, 2008 Sale Hearing, Harvey Miller informed the Court that "Barclays will also assume exposure for the employees that accept offers of employment, which is estimated to have a value of approximately — an exposure of approximately two billion dollars." BCI Ex. 49 at 99:22-25 (Miller) (Hume Decl. Ex. 3).

18. At his deposition, Harvey Miller testified that the total amount that Barclays would have to pay in compensation was "very contingent" because "nobody knew…how many employees Barclays would ultimately keep." Miller Dep. Tr. at 81:5-14 (Hume Decl. Ex. 32).

19. At trial, Harvey Miller testified that $2 billion amount given for Barclays' "exposure" for compensation liabilities was "an estimate." 4/28/10 Tr. at 32:20-33:2 (Miller) (Hume Decl. Ex. 41).

20. At trial, Committee counsel Luc Despins agreed that there was uncertainty about the amount of Barclays' compensation obligations and indicated that the $2 billion figure represented a "cap." 6/25/10 Tr. at 99:16-21 (Despins) (Hume Decl. Ex. 53).

21. In the February 22, 2011 Opinion (the "Opinion"), the Court found that "the estimates for comp and cure that the parties presented at the Sale Hearing were just that — good

4

faith estimates, and not guarantees or representations that these were firm numbers." Opinion at 55 (Hume Decl. Ex. 31).

22.    In the Opinion, the Court likewise found that "the comp and cure estimates necessarily were uncertain and contingent." Opinion at 56 (citing 4/28/10 Tr. at 32:8-19 (Miller); Miller Dep. Tr. at 81:5-14) (Hume Decl. Ex. 31).

23.    The $2 billion amount that Harvey Miller "estimated" to be Barclays' "exposure" is the same as the amount listed for "Comp" on a financial schedule dated September 16, 2008, and initialed by Lehman's Steve Berkenfeld ("9/16/08 Financial Schedule"). BCI Ex. 49 at 99:22-25 (Miller) (Hume Decl. Ex. 3); BCI Ex. 106 (Hume Decl. Ex. 4); *see also* 4/26/10 Tr. at 31:25-33:2 (Miller) (Hume Decl. Ex. 39).

24.    The 9/16/08 Financial Schedule does not contain the words "bonus" or "bonuses," and does not have a separate entry that is described solely as "bonus" or "bonuses." BCI Ex. 106 (M. 2) (Hume Decl. Ex. 4).

25.    The 9/16/08 Financial Schedule contains an entry of "2" billion for "Comp." BCI Ex. 106 (M. 2) (Hume Decl. Ex. 4).

26.    The 9/16/08 Financial Schedule does not contain separate entries for bonuses, severance, or any other specific type of the overall "Comp" liabilities. BCI Ex. 106 (M. 2) (Hume Decl. Ex. 4).

27.    In proffering Bart McDade's testimony at the Sale Hearing, Harvey Miller indicated that Barclays' "exposure for the employees" included both bonus and severance payments: "At the same time, the jobs of thousands of employees would be saved and will be entitled to substantial benefits from Barclays in the form of compensation, bonuses and

5

severance payments that are based upon the employee's prior performance while with Lehman." BCI Ex. 49 at 101:23-102:2 (Hume Decl. Ex. 3).

28. At trial, Lehman negotiator Bart McDade testified that "Barclays also assumed a two billion compensation liability with respect to the combination of the employees' bonus process and the severance process with respect to — they agreed to hire all of the Lehman North American employees, and then there was a period of time, I believe ninety days, that they had to make ultimate determination, in terms of whether or not those would become permanent employees of the — of the bar cap going forward." 4/26/10 Tr. at 161:1-10 (McDade) (Hume Decl. Ex. 39).

29. When asked at trial about the $2 billion estimate listed in the 9/16/08 Financial Schedule, Harvey Miller testified that "[i]n connection with the compensation, that also was an estimate as to the possible exposure for Lehman employees going over to Barclays who would either be terminated or were entitled to bonuses. So it was supposed to cover both severance pay and bonuses. And as I said before, it was an estimate." 4/28/10 Tr. at 32:20-33:2 (Miller) (Hume Decl. Ex. 41).

30. At trial, another Lehman negotiator, Mark Shapiro, testified that the $2 billion estimate for "Comp" on the 9/16/08 Financial Schedule encompassed "a combination of the bonuses that they would pay and if into [sic] the extent that they weren't paying someone a bonus because they were terminating that person's bonus it would include severance for that person." 8/23/10 Tr. at 120:20-24 (Shapiro) (Hume Decl. Ex. 47).

31. In trial, Steve Berkenfeld has testified that "I didn't think that the schedule stood for that there was an obligation to pay comp for two billion." 4/27/10 Tr. at 168:6-169:5 (Berkenfeld) (Hume Decl. Ex. 40). Mr. Berkenfeld also testified that the "estimated amount of 2

6

billion was for bonuses and severance and other types of compensation," and that "*I believe that you are reading too much into the schedule to say that comp means bonuses*." Berkenfeld Dep. Tr. at 24:11-26:23, 93:17-94:13 (emphasis added) (Hume Decl. Ex. 33).

32.     At trial, Rich Ricci, Barclays' Chief Operating Officer, testified that the $2 billion estimate for compensation-related expenses "was to cover all comp and — compensation, which included bonuses as well as severance." 5/7/10 Tr. at 149:11-13 (Ricci) (Hume Decl. Ex. 45); *see also id.* at 125:25-126:4 (Ricci).

33.     When asked at trial about the $4.2 billion in estimated liabilities for "Comp" ($2 billion) and "Cure" ($2.25 billion) on the 9/16/08 financial schedule, LBHI's current Chief Executive Officer, Bryan Marsal, testified that he understood that these estimates included "assumed cure, assumed bonus and assumed severance." 6/21/10 Tr. at 56:23-57:5 (emphasis added) (Hume Decl. Ex. 46).

34.     One of the Creditors' Committee's senior financial advisors, Saul Burian of Houlihan Lokey, testified during his deposition and at trial that he understood the $2 billion compensation estimate to include both bonus and severance payments. *See* 12/17/09 Burian Dep. Tr. at 266:17-267:21, 289:20-290:12 (Hume Decl. Ex. 37); 5/6/10 Tr. at 108:10-23 (Burian) (Hume Decl. Ex. 44).

35.     In an October 8, 2008 presentation to the Creditors' Committee, LBHI summarized the main assets acquired and liabilities assumed by Barclays in the Sale Transaction, and the only compensation-related liability they chose to list under "Liabilities Assumed" was the "Assumed Severance Liability," with no reference at all to the bonus liability. *See* BCI Ex. 131a (Hume Decl. Ex. 5).

36. In the October 8, 2008 presentation, LBHI summarized the transaction as follows:

    A. <u>Sale of Lehman Brothers, Inc./Broker Dealer to Barclays (Fogarty)</u>

- Assets Purchased

    - $43.1 Billion Repo Assets – Book value per Lehman 'state' marks; negotiated a $5.0 billion reduction;

    - $1.9 Billion Unencumbered Box;

    - $1.5 Billion Building and Data Centers;

    - $0.8 Billion 15-c-3-3- Securities – any excess will accrue to Lehman Brothers, Inc.

- Liabilities Assumed

    - $38.0 Billion Extinguished Liability;

    - Assumed Cure Liability;

    - Assumed Severance Liability.

- Cash Consideration of $1.79 Billion

BCI Ex. 131a (Hume Decl. Ex. 5).

37. At trial, Bart McDade testified that the $2 billion compensation estimate was properly higher than the Lehman accrual for bonuses in part because the accrual was not an annualized accrual, but instead "represented three-quarters of the year," 4/27/10 Tr. at 48:7-9 (McDade) (Hume Decl. Ex. 40); in part because Lehman "paid bonuses both partly in stock and partly in cash," and, indeed, "gave a higher proportion of its bonus in stock than other Wall Street firms," but "Lehman only accrued on its books that portion of the bonus that represented the cash portion," 4/27/10 Tr. at 49:10-18 (McDade) (Hume Decl. Ex. 40); in part because "Barclays was exposed to possibly paying severances for people that were terminated," and "the amount of that severance would depend on how many people were actually terminated" and

8

"who those people were," 4/27/10 Tr. at 49:19-50:3 (McDade) (Hume Decl. Ex. 40); and in part because "Barclays was also exposed to paying the salaries of people that it didn't want" for the ninety day period between the Closing and the end of 2008. *Id.* at 50:4-12 (McDade).

38.     At trial, Bart McDade testified that based on his understanding of "the process that had taken place between mostly the human resources teams on both sides," he "thought it was fair" for the "estimated exposure" that Barclays was assuming to be estimated at $2 billion. 4/27/10 Tr. at 50:13-25 (McDade) (Hume Decl. Ex. 40).

39.     In seeking the Rule 2004 discovery that led to this proceeding, LBHI submitted a declaration on behalf of Rajesh Ankalkoti, describing Lehman's bonus pool accrual for fiscal year 2008 as follows:

> …we have looked into the question of how much, in the aggregate, Lehman's bonus pool was for 2008. As noted in LBHI's February 19, 2009 letter to Barclays (*see* Motion Ex. B), we estimated that the bonus pool for the Transferred Employees was approximately $700 million through August 2008. It is my understanding that this amount may need to be increased to include an equity portion of such bonuses. While we have insufficient information to determine with any degree of precision the total bonus pool for the Transferred Employees, it is estimated to be in the region of $700 million (or $1.2 billion if the equity portion is included) for the period from December 2007 to August 2008.

BCI Ex. 862 at ¶ 8 (Hume Decl. Ex. 13).

40.     At his deposition and at trial, Paul Exall, Barclays' Head of Compensation Analytics, testified that he created a schedule for use by Barclays' outside auditor, PricewaterhouseCoopers ("PwC"), to show the amount Barclays paid or committed to pay to or on behalf of Transferred Employees for pre-acquisition services (the "Compensation Schedule"). *See* Exall Dep. Tr. at 20:16-21:9, 61:21-62:10, 74:2-9, 75:2-8 (Hume Decl. Ex. 35); 8/23/10 Tr. at 189:2-6 (Exall) (Hume Decl. Ex. 47); *see also* BCI Ex. 142 (Hume Decl. Ex. 6); Exall Decl. at ¶ 3 (Hume Decl. Ex. 16).

9

41. Barclays has paid a total of $1.951 billion to satisfy its non-base salary compensation liabilities incurred under the APA with respect to the Transferred Employees. *See* BCI Ex. 142 (Hume Decl. Ex. 6).

42. The $1.951 billion amount does not include any base salary payments made to the Transferred Employees for their services after the acquisition. The base salary payments paid to the Transferred Employees for the periods from September 22, 2008 to December 31, 2008 are estimated to have been approximately $254 million. *See* Exall Decl. at ¶ 7 (Hume Decl. Ex. 16).

43. LBHI had no legal obligation to pay bonuses to the vast majority of Transferred Employees. *See generally* Angley Decl. at ¶¶ 4-5 (Hume Decl. Ex. 17); Kohn Decl. at ¶ 6 (Hume Decl. Ex. 19).

44. LBI paid over 80% of the bonuses to the Transferred Employees, though it also did not have a legal obligation to do so with respect to the vast majority of those employees. *See* Angley Decl. at ¶¶ 4-5 (Hume Decl. Ex. 17).

45. LBHI has presented no evidence of any legal liabilities that it now faces as a result of Barclays' alleged failure to pay the full amount of bonuses under § 9.1(c). *See generally* LBHI Brief.

46. Bart McDade never testified that he would have asked Barclays for more consideration if he had known that Barclays would end up spending $1.951 billion in bonus, severance, and related taxes on non-base salary compensation liabilities under the APA, and another $254 million in base salaries for September 22, 2008 through December 21, 2008. To the contrary, the record shows that these amounts are consistent with his understanding of the Sale. *See generally* 4/26/10 Tr. at 161:1-10 (McDade) (Hume Decl. Ex. 39); 4/27/10 Tr. at 50:13-25 (McDade) (Hume Decl. Ex. 40).

47. There is no evidence that Barclays would have agreed to provide more consideration if the precise amounts it would end up spending for "comp" liabilities had been known at the time of the Sale. *See* 6/22/10 Tr. at 34:8-11 (Diamond) (Hume Decl. Ex. 53); 5/3/10 Tr. at 36:3-22 (Hughes) (Hume Decl. Ex. 11); *see generally* BCI Ex. 49 at 99:22-25 (Miller) (Hume Decl. Ex. 54); 4/26/10 Tr. at 198:22-199:12 (McDade) (Hume Decl. Ex. 39); 4/27/10 Tr. at 39:11-20 (McDade) (Hume Decl. Ex. 40).

48. Based on the facts set forth in Paragraphs 43 through 47 above and the evidence cited in support thereof, there is no genuine basis for disputing the fact that LBHI has not suffered any damages as a result of the alleged breach by Barclays of its obligation to pay bonuses to the Transferred Employees.

Dated:    New York, New York
            As of June 22, 2011

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By: \_\_/s/\_\_ Jonathan D. Schiller
Jonathan D. Schiller
Jack G. Stern
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
Email: JSchiller@bsfllp.com
       JStern@bsfllp.com

Hamish P. M. Hume
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: HHume@bsfllp.com

*Attorneys for Barclays Capital Inc*.