Hearing Date and Time: July 20, 2011 at 10:00 A.M. (EST)
Objection Date and Time: July 13, 2011 at 4:00 P.M. (EST)

**KUTAK ROCK LLP**
1111 East Main Street, Suite 800
Richmond, Virginia  23219
Telephone:  (804) 644-1700
Facsimile:   (804) 783-6192
Peter J. Barrett. (PJB 9807) (admitted *pro hac vice*)
Virginia Bar No. 46179
peter.barrett@kutakrock.com

*Attorneys for Merrill Lynch Portfolio Management, Inc.*
*and Merrill Lynch Capital Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** et al.,<br><br>      **Debtors.** | **Case No. 08-13555 (JMP)** |
| In re<br><br>**LEHMAN BROTHERS INC.,**<br><br>      **Debtor.** | **Case No. 08-01420 (JMP) SIPA** |

**NOTICE OF MOTION OF MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC. FOR ENTRY OF AN ORDER COMPELLING SPECIFIC PERFORMANCE**
**OF SUBORDINATION AGREEMENT TERMS**

PLEASE TAKE NOTICE that a hearing on the Motion (the "<u>Motion</u>") annexed hereto of

Merrill Lynch Portfolio Management, Inc. ("<u>MLPM</u>") and Merrill Lynch Capital Services, Inc.

("<u>MLCS</u>" and together with MLPM, "<u>Merrill</u>") for entry of an order compelling specific

performance from Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and Lehman Brothers

Holdings, Inc. ("LBHI" and, together with LBSF, the "Lehman Entities") of the terms of the Subordination Agreement (defined in the Motion), including but not limited to release of mortgages and liens as required under the Subordination Agreement, in connection with a proposed transfer of that certain real property known as the Brampton Project, as defined and more fully described in the Motion, and granting such other relief as is necessary or appropriate, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 20, 2011 at 10:00 A.M. (Eastern Standard Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Kutak Rock LLP, 1111 East Main Street, Suite 800, Richmond, Virginia 23219, Attn: Peter J. Barrett, Esq., attorneys for Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc., (iii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorney for the Debtors; (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (vii) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: James B. Kobak, Jr., Esq. and Jeffrey S. Margolin, Esq.; and (viii) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **July 13, 2011 at 4:00 P.M. (Eastern Standard Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 23, 2011
      Richmond, Virginia

**KUTAK ROCK LLP**

By:*/s/ Peter J. Barrett*
    Peter J. Barrett (PJB 9807) (admitted *pro hac vice*)
    Virginia Bar No. 46179
    Kutak Rock LLP
    1111 East Main Street, Suite 800
    Richmond, Virginia 23219
    Telephone: (804) 644-1700
    Facsimile: (804) 783-6192

*Attorneys for Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc.*

**KUTAK ROCK LLP**
1111 East Main Street, Suite 800
Richmond, Virginia  23219
Telephone:  (804) 644-1700
Facsimile:   (804) 783-6192
Peter J. Barrett (PJB 9807) (admitted *pro hac vice*)
Virginia Bar No. 46179
peter.barrett@kutakrock.com

*Attorneys for Merrill Lynch Portfolio Management, Inc.*
*and Merrill Lynch Capital Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** et al.,<br><br>　　　　　　**Debtors.** | Case No. 08-13555 (JMP) |
| **In re**<br><br>**LEHMAN BROTHERS INC.,**<br><br>　　　　　　**Debtor.** | Case No. 08-01420 (JMP) SIPA |

**MOTION OF MERRILL LYNCH PORTFOLIO MANAGEMENT, INC.
AND MERRILL LYNCH CAPITAL SERVICES, INC. FOR ENTRY OF AN
ORDER COMPELLING SPECIFIC PERFORMANCE
OF SUBORDINATION AGREEMENT TERMS**

Merrill Lynch Portfolio Management, Inc. ("MLPM") and Merrill Lynch Capital Services, Inc. ("MLCS" and, together with MLPM, "Merrill"), by and through its attorneys, Kutak Rock LLP, hereby file this motion (the "Motion") for entry of an order pursuant to Sections 105 and 510 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") and Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling specific performance from Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings, Inc. ("LBHI" and, together with LBSF, the

4835-8462-3113.4/1

"Lehman Entities") with the terms of the Subordination Agreement (defined below) by and among Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS"), MLCS, Lehman Brothers Inc. ("LBI"), LBSF and certain third parties unaffiliated with the Lehman Entities, including but not limited to release of mortgages and liens as required under the Subordination Agreement, in connection with a proposed transfer of that certain real property known as the Brampton Project. In support of the Motion, Merrill respectfully represents as follows:

## JURISDICTION

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and 15 U.S.C. §§ 78eee(a)(3), (b)(2) and (b)(4). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Sections 105 and 510(a) of the Bankruptcy Code and Bankruptcy Rule 9013.

## PRELIMINARY STATEMENT

2.      In November 2005, AHF-Bay Fund, LLC, a Florida limited liability company ("AHF"), was loaned the proceeds of the Bonds (defined below) for purposes of acquiring and rehabilitating five multifamily housing projects in the State of Florida (collectively, the "Project"). AHF is not a debtor or an affiliate of any debtor in these cases. MLPFS was the initial purchaser of the Series A Bonds (defined below) issued in connection with the Project and MLPM is the current beneficial owner of the Series A Bonds. MLCS and AHF entered into the Merrill TRS (defined below) with respect to the Series A Bonds. On information and belief, LBHI, as successor in interest to LBI, is the owner of the Series B Bonds (defined below) issued in connection with the Project. LBSF and AHF entered into the Lehman TRS (defined below) with respect to the Series B Bonds. The obligations owed under the Series A Bonds and the Merrill TRS are secured by senior mortgages encumbering certain real and personal property

4835-8462-3113.4/2                                    2

associated with the Project. The obligations owed under the Series B Bonds and the Lehman TRS are secured by subordinate mortgages encumbering certain real and personal property associated with the Project.

In connection with the Project, MLPFS, MLCS, LBI, LBSF and NAHTEF Bond Fund I – 2005, L.P. ("NAHTEF") entered into that certain Subordination Agreement, dated as of November 10, 2005 (the "Subordination Agreement"). Under the terms of the Subordination Agreement, upon the occurrence of an event of default with respect to the Series A Bonds or the Merrill TRS, the Lehman Entities granted Merrill certain rights and remedies, including, but not limited to, the ability to release or cause the release of certain mortgages held by or in favor of the Lehman Entities. In October 2008, immediately after the bankruptcy filing of the Lehman Entities, AHF defaulted under the Merrill TRS and continues to be in default, subject to the forbearance of MLCS. AHF has proposed to sell the Brampton Project (defined below) in an arm's length transaction via a deed to the Trustee (defined below) for the Bonds, or its designee, in lieu of a foreclosure on the Brampton Project. The value of the cash and property to be received by or for the benefit of Merrill upon the sale of the Brampton Project is not sufficient to satisfy the obligations owed to Merrill with respect to the Series A Bonds and, upon its termination, the Merrill TRS. Therefore, Merrill, whose payment and lien positions are senior to the Lehman Entities, is seeking to release or cause the release of the mortgages held by or for the benefit of the Lehman Entities so that the sale of the Brampton Project may be consummated. Despite demand, and in contravention of the express terms of the Subordination Agreement, the Lehman Entities have failed to release the liens associated with the Brampton Project, which jeopardizes the sale transaction.

## FACTUAL BACKGROUND

3. The five multifamily housing projects comprising the Project and financed with the Bonds are:

   a. Brampton Court Apartments located in Broward County, Florida (the "Brampton Project").

   b. Brittany Bay Apartments located in Pinellas County, Florida.

   c. Mariners Pointe Apartments located in Pinellas County, Florida.

   d. Village Lakes Apartments located in Seminole County, Florida.

   e. Waterman's Crossing Apartments located in Hillsborough County, Florida.

4. Pursuant to that certain Indenture of Trust, dated as of November 1, 2005 (the "Indenture"), between Capital Trust Agency (the "Issuer") and U.S. Bank National Association (the "Trustee"), the Issuer issued the following Multifamily Housing Revenue Bonds: $62,030,000 Series A Bonds (the "Series A Bonds") (CSUIP Number14052TBH6), $20,680,000 Subordinate Series B Bonds (the "Series B Bonds") (CUSIP Number 14052TBJ2), $20,680,000 Subordinate Series C Bonds (the "Series C Bonds") and $1,915,000 Subordinate Series D Bonds (the "Series D Bonds" and, together with the Series B Bonds and the Series C Bonds, the "Subordinate Bonds"). The Series A Bonds and the Subordinate Bonds are collectively referred to as to the "Bonds".

5. With regard to the Bonds:

   a. MLPFS was the initial purchaser and MLPM is the current beneficial owner of the Series A Bonds;

   b. On information and belief, LBI was the initial purchaser and LBHI, as successor in interest to LBI, is the current owner of the Series B Bonds.

    c. On information and belief, NAHTEF is the owner of the Series C Bonds;

    d. On information and belief, NAHTEF Acquisitions, LLC is the owner of the Series D Bonds.

6. The proceeds of the Bonds were loaned (the "Loan") to AHF by the Issuer pursuant to that certain Loan Agreement, dated as of November 1, 2005 (the "Loan Agreement"), and were used for the acquisition and rehabilitation of the Project. The Loan is evidenced by a Senior Promissory Note (the "Senior Note") by AHF in the amount of the Series A Bonds and certain subordinate promissory notes (collectively, the "Junior Notes") by AHF in the amounts of each of the series of the Subordinate Bonds.

7. In connection with the Bonds, AHF entered into the following additional agreements:

    a. That certain ISDA Master Agreement, dated as of November 10, 2005, between MLCS and AHF, together with the (a) Multicurrency-Cross Border Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) the Confirmation Letter entered into connection therewith for a transaction under the terms of which MLCS and AHF agreed to make certain payments to one another relating to the Series A Bonds (the foregoing, collectively, as amended, restated and/or supplemented from time to time, the "Merrill TRS").

    b. That certain ISDA Master Agreement, dated as of November 1, 2005, between LBSF and AHF, together with the (a) Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) the Confirmation Letter entered into connection therewith for a transaction under the terms of which LBSF and AHF agreed to make certain payments to one another relating to the Series B Bonds

4835-8462-3113.4/5    5

(the foregoing, collectively, the "<u>Lehman TRS</u>" and, together with the Merrill TRS, the "<u>Swaps</u>").

8. To secure the various obligations of AHF under the Bonds and the Swaps, AHF granted the following mortgages (listed in order of lien priority) on each of the five multifamily housing projects comprising the Project:

   a. First Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>First Mortgage</u>"), executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series A Bonds held by MLPM.

   b. Second Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>Second Mortgage</u>" and, together with the First Mortgage, the "<u>Merrill Mortgages</u>"), executed by AHF in favor of MLCS to secure the obligations of AHF under the Merrill TRS.

   c. Third Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>Third Mortgage</u>"), executed by AHF in favor of the Issuer and assigned to the Trustee to secure the Series B Bonds held by LBI or LBHI.

   d. Fourth Mortgage, Security Agreement and Fixture Filing, dated as of the November 1, 2005 (the "<u>Fourth Mortgage</u>" and, together with the Third Mortgage, the "<u>Lehman Mortgages</u>"), executed by AHF in favor of LBSF and LBHI to secure the obligations of AHF under the Lehman TRS.

   e. Fifth Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005, executed by AHF in favor of the issuer and assigned to the Trustee to secure the Series C Bonds and the Series D Bonds.

9.  Pursuant to Section 2(d) the Subordination Agreement, LBI, LBSF and NAHTEF (collectively, the "Subordinate Lenders") agreed, among other things, that during any Default Period (as defined therein) Merrill as the "Senior Lender" thereunder:

> "…shall be entitled to take any action the Senior Lender deems necessary or appropriate without the consent of the Subordinate Lenders…During any Default Period, at the request of the Senior Lender, the Subordinate Lenders shall consent to any action by or against [AHF] resulting from such declaration of a default, including, without limitation, the issuance of additional indebtedness by [AHF] and/or the sale of the Project to another entity, including, but not limited to, a for profit entity.  The Subordinate Lenders hereby agree that, upon the request of Merrill or the [Trustee], the Subordinate Lenders shall do, execute, acknowledge and deliver to Merrill or the [Trustee] all and every such further acts, deeds, conveyances and instruments as Merrill or the [Trustee] may request for the better assuring and evidencing of the foregoing consent.  During any Default Period, the Subordinate Lenders hereby expressly consent to and authorize the release by the Senior Lender or the [Trustee] of all or any portion of the [Project] from the lien, operation and effect of the Senior Mortgage Documents.  During any Default Period, the Subordinate Lenders hereby waive to the fullest extent permitted by law, all equitable or other rights they may have (i) in connection with any release of any portion of the [Project], (ii) to require the separate sales of any portion of the [Project] or to require the Senior Lender to exhaust its remedies against any portion of the [Project] or any combination of portions of the [Project] or any other collateral, or (iii) to require the Senior Lender or the [Trustee] to proceed against [AHF], any other party (including any general partner of [AHF] if [AHF] is a partnership), any portion of the [Project] or combination of portions of the [Project] or any other collateral, before proceeding against all or such portions or combination of portions of the [Project] as the Senior Lender or the [Trustee] determines.  During any Default Period, the Subordinate Lenders hereby expressly consent to and authorize, at the option of the Senior Lender, the sale, either separately or together, of all or any portion of the [Project]."

A true and correct copy of the Subordination Agreement is attached hereto as part of **Appendix I.**

10.  By notice dated October 8, 2008 from MLCS to AHF (the "AHF Default Notice"), MLCS notified AHF that an Event of Default had occurred under the Merrill TRS (the

4835-8462-3113.4/7                                7

"Merrill TRS Default") as a result of the failure by AHF to post collateral with MLCS required pursuant to the Merrill TRS. By notice dated October 8, 2008 from MLCS to the Lehman Entities and NAHTEF (the "Default Period Notice"), MLCS notified the Lehman Entities and NAHTEF of the Merrill TRS Default such that a "Default Period" respecting AHF became in effect under the Subordination Agreement.

11. AHF has proposed, and Merrill has agreed to, the sale of the Brampton Project pursuant to a deed in lieu of foreclosure to be delivered to the Trustee, or its designee, which is to be sold to the unrelated third party purchaser who agrees to purchase the Brampton Project for the highest cash price (the "Buyer"). AHF is currently under contract (the "Purchase Contract") with a potential Buyer. The proposed sale price under the Purchase Contract is currently under dispute based in large part on the delays caused by the Lehman Entities' failure to act. While discussions regarding the sale price remain ongoing, the ultimate sale price for the Brampton Project currently is not anticipated to be in excess of $10,000,000.00.

12. The Series A Bonds are currently outstanding in the principal amount of $61,680,000 (consisting of $60,680,000 in unpaid principal balance of the Series A Bonds plus the $1,000,000 protective advance made by or on behalf of Merrill in June 2010 to pay certain costs and expenses of AHF associated with the Project). Pursuant to Section 2 of the Subordinate Agreement, the Lehman Entities agreed that during any Default Period they:

> "…will not ask for, demand, sue for, take, receive, or retain, from [AHF], by setoff or in any other manner, payment of all or any part of the amounts evidenced and/or secured by the Subordinate Mortgage Documents or otherwise, and any such amounts… delivered to a Subordinate Lender shall be held in trust for the benefit of, and shall be paid over to or delivered to Merrill in the form received by such Subordinate Lender within five (5) business days of such Subordinate Lender's receipt of such sums…"

The proposed sales price of the Brampton Project is less than the outstanding principal amount of the Series A Bonds and the amount that would be due MLCS upon termination of the Merrill

TRS. Therefore, the proposed sale of the Brampton Project will not satisfy the amounts due Merrill. Pursuant to the Subordination Agreement and the Indenture, the Series A Bonds are senior to the Series B Bonds. Merrill is entitled to all of the proceeds of the sale to pay down amounts due on the Series A Bonds. As such, the Lehman Entities are wholly unsecured as to the Brampton Project.

13. This Court modified the automatic stay effective April 26, 2011 to allow Merrill to exercise its rights and remedies under the Subordination Agreement. *See* LBHI Docket No. 16252 and LBI Docket No. 4255. On April 27, 2011, Merrill directed the Lehman Entities to execute certain releases and other documents to consummate the sale of the Brampton Project and in accordance with the terms of the Subordination Agreement. A copy of the April 27, 2011 correspondence is attached as **Appendix II**.

14. The necessary releases were not received and on May 9, 2011, Merrill again demanded the release of the liens, giving the Lehman Entities until May 12, 2011 to respond. A copy of the May 9, 2011 correspondence is attached as **Appendix III**.

15. On May 11, 2011, correspondence to AHF from the proposed Buyer received by Merrill was forwarded to the Lehman Entities showing the urgency of receipt of releases. A copy of the May 11, 2011 correspondence is attached as **Appendix IV**.

16. On June 2, 2011, Merrill received a copy of additional correspondence sent to AHF by the proposed Buyer demanding performance under the terms of the Purchase Contract. A copy of the June 2, 2011 correspondence is attached as **Appendix V**.

17. To date there has been no written response to the various demands made to the Lehman Entities and the sale is accordingly in imminent danger of collapsing.

## ARGUMENT AND AUTHORITIES

18.     Enforcement of contractual subordination agreements is a core matter ripe for determination by the Bankruptcy Court. *In re Best Products Co., Inc.*, 168 B.R. 35, 66-67 (Bankr. S.D.N.Y. 1994) ("Enforcement of a contractual subordination agreement clearly involves the adjustment of the debtor-creditor relationship, determinations of the priority of liens, and administration of the estate and so falls within the ambit of 28 U.S.C. § 157(b)(2)(A), (K), and (O).") The Subordination Agreement is more than a mere inter-creditor agreement; it is an agreement where the Lehman Entities are a creditor and enforcement of the Subordination Agreement touches keenly upon the liens held by the Debtors.

19.     Bankruptcy Code section 510(a) provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." This section's reference to "nonbankruptcy law" is generally held to mean the application of ordinary contract principles in the interpretation of a subordination agreement. *In re Air Safety Internat'l, L.C.*, 336 B.R. 843, 858 (S.D. Fl. 2005) (citations omitted). The contract principles to be applied are the principles outlined in controlling state law. *In re Bank of New England Corp.*, 364 F.3d. 355, 363 (1st Cir. 2004) ("Since the construction of private contracts is usually a matter committed to state law . . . the presumption is that state law will furnish the proper benchmark. That presumption is especially robust here because we can find no federal statute that might guide us in interpreting subordination agreements.").

20.     According to paragraph 9 of the Subordination Agreement, the agreement is construed under the laws of the state where the Project is located – in this instance, Florida. Under Florida law, "[i]n the absence of an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties and the plain meaning of the language controls."

*United States on behalf of the Small Business Admin. v. South Atlantic Production Credit Ass'n*, 606 So. 2d 691, 695 (Fla. Dist. Ct. App. 1992) (citation omitted).

21.     Merrill is simply seeking to enforce the rights granted to it under the clear and unambiguous language of the Subordination Agreement.  Upon a default and pursuant to the following provisions of Section 2(d) the Subordination Agreement, the Lehman Entities expressly authorized Merrill to release or cause the release of the Lehman Mortgages, to wit:

> at the request of the Senior Lender, the Subordinate Lenders **shall** consent to any action by or against [AHF] resulting from the [Default Period], including, without limitation, the…sale of the Project to another entity…[and the] ***Subordinate Lenders hereby agree that, upon the request of Merrill or the [Trustee], the Subordinate Lenders shall do, execute, acknowledge and deliver to Merrill or the [Trustee] all and every such further acts, deeds, conveyances and instruments as Merrill or the [Trustee] may request***…. (emphasis added)

Such request was made on April 27, 2011, however the Lehman Entities failed to act.  It appears the Lehman Entities do not consider it a requirement to execute the release documents as plainly required under the terms of the Subordination Agreement.  Demand to execute the release documents was made again in the May 9, 2011 correspondence, and the Lehman Entities have not only failed to act, they have failed to respond in any meaningful or appropriate manner, requiring Merrill to seek the intervention of this Court.

22.     Making the failure to respond to the demand for releases even more unreasonable is the fact that the Lehman Entities have no equity interest in the Brampton Project.  Any proceeds of the sale of the Brampton Project will be far less than the amount owed with respect to the Series A Bonds and, upon its termination, the Merrill TRS.  Therefore, the Lehman Entities, who are subordinate to Merrill in payment and lien positions vis-à-vis the Brampton Project, are wholly unsecured as to the Brampton Project.  There has been no claim that the Lehman Entities stand to recover anything from the sale of the Brampton Project, so their willful failure to act is so much more egregious.

23. The Lehman Entities' failure to act to release the Fourth Mortgage and related security interest on the Brampton Project are not only jeopardizing the sale, but is causing damage to Merrill as the condition, and hence value, of the real property precipitously deteriorates. According to the Buyer, neglect of the property has caused a "serious mold condition" rendering most of the refrigerators useless and causing the loss of over 80 HVAC units. As a result, the proposed Buyer is demanding a reduction in the sale price and, in addition, is threatening legal action. The state of the property is not likely to improve over time and, in fact, is likely to deteriorate, and the Lehman Entities' delay in action may result in a post-petition damages claim against the estate for their willful failure to allow the Brampton Project sale to move forward.

## RESERVATION OF RIGHTS

24. Merrill expressly reserves all rights and remedies under the documents described herein, such other agreements relating thereto and applicable law.

## CONCLUSION

25. For these reasons, Merrill respectfully requests entry of an Order, substantially in the form of the proposed order annexed hereto as **Exhibit A**: (i) compelling specific performance from the Lehman Entities of the terms of the Subordination Agreement, including but not limited to release of the Fourth Mortgage and related security interests as required under the Subordination Agreement, in connection with a proposed sale of the Brampton Project; and (ii) taxing the costs of bringing this matter to the Court against the Lehman Entities.

WHEREFORE, for the reasons set forth herein, Merrill requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated: June 23, 2011
      Richmond, Virginia

                **KUTAK ROCK LLP**

                By:*/s/ Peter J. Barrett*
                Peter J. Barrett (PJB 9807) (admitted *pro hac vice*)
                Virginia Bar No. 46179
                1111 East Main Street, Suite 800
                Richmond, Virginia  23219
                Telephone:  (804) 644-1700
                Facsimile:  (804) 783-6192
                peter.barrett@kutakrock.com

                *Attorneys for Merrill Lynch Portfolio Management,*
                *Inc. and Merrill Lynch Capital Services, Inc.*

## EXHIBIT A

4835-8462-3113.4/1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** et al.,<br><br>         **Debtors.** | **Case No. 08-13555 (JMP)** |
| In re<br><br>**LEHMAN BROTHERS INC.,**<br><br>         **Debtor.** | **Case No. 08-01420 (JMP) SIPA** |

**ORDER COMPELLING SPECIFIC PERFORMANCE
OF SUBORDINATION AGREEMENT TERMS**

Upon the Motion (the "Motion")[1] of Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc. (collectively, "Merrill") for an order compelling specific performance from Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings, Inc. ("LBHI" and, together with LBSF, the "Lehman Entities") of the terms of the Subordination Agreement, dated as of November 10, 2005 (the "Subordination Agreement"), among MLPFS, MLCS, LBI, LBSF and NAHTEF Bond Fund I – 2005, L.P., including but not limited to release of mortgages and liens as required under the document and any other actions necessary, in connection with a proposed transfer of that certain real property known as the Brampton Project, the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and 15 U.S.C. §§ 78eee(a)(3), (b)(2) and (b)(4); (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); the relief requested in the Motion is proper and should be granted; (iii) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (iv) good and

---

[1] Capitalized terms used herein and not defined shall have the meaning ascribed to such terms in the Motion.

4835-8462-3113.4/1

sufficient cause appearing, the Court is of the opinion that the relief requested in the Motion should be granted,

    IT IS HEREBY ORDERED THAT:

    1.    The Motion is granted.

    2.    Under the terms of the Subordination Agreement, during a Default Period, the Lehman Entities, at the direction of Merrill, are required to release any liens, mortgages or instruments of similar effect as provided under Section 2(d) under the conditions described therein.

    3.    The conditions for the release of any liens, mortgages or instruments of similar effect as provided under Section 2(d) exist with regard to the Project.

    4.    The Lehman Entities are directed and hereby shall execute any documents necessary to permit the sale of the Brampton Project and to release or cause the release of any liens, mortgages or instruments of similar effect, held by or for the benefit of the Lehman Entities with regard to the Brampton Project.

    5.    Without limiting the foregoing, nothing herein shall affect the validity or priority of the liens of the Lehman Entities in any proceeds resulting from the sale of any Project, including the Brampton Project, which shall continue in such proceeds in accordance with the terms of the Subordination Agreement, the Indenture and applicable law.

    6.    The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

Dated:   New York, New York
            June 23, 2011

                                          _____
                                          HONORABLE JAMES M. PECK
                                          UNITED STATES BANKRUPTCY JUDGE