## **APPENDIX II**

MERRILL LYNCH PORTFOLIO MANAGEMENT, INC.
MERRILL LYNCH CAPITAL SERVICES, INC.
NEW YORK, NEW YORK

April 27, 2011

Lehman Brothers Holdings Inc.
1271 Sixth Avenue
New York, New York 10020
Attention: Locke R. McMurray, Esq.

Lehman Brothers Special Financing Inc.
1271 Sixth Avenue
New York, New York 10020
Attention: Locke R. McMurray, Esq.

Re:   Release of Security Interests of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI") in that certain Housing Project known as Brampton Court Apartments

Ladies and Gentlemen:

We are writing to direct LBSF and LBHI to execute certain notices, releases and other documents in connection with the housing project located in Broward County, Florida and commonly known as the Brampton Court Apartments (the "Brampton Court Project").

**Background**

Merrill Lynch Portfolio Management, Inc. ("MLPMI") or one or more of its affiliates is the beneficial owner of the $62,030,000 principal amount of Multifamily Housing Revenue Bonds (Brittany Bay Apartments, Waterman's Crossing Apartments, Mariners Pointe Apartments, Brampton Court Apartments, Village Lakes Apartments), Series A (the "Senior Bonds") issued by Capital Trust Agency (the "Issuer"). We understand that Lehman Brothers Inc. ("LBI") and LBHI hold interests in the Issuer's $20,680,000 principal amount of Multifamily Housing Revenue Bonds (Brittany Bay Apartments, Waterman's Crossing Apartments, Mariners Pointe Apartments, Brampton Court Apartments, Village Lakes Apartments), Subordinate Series B (the "Series B Bonds"). We also understand that NAHTEF Bond Fund 1-2005, L.P. ("NAHTEF") or one or more of its affiliates owns the Issuer's $20,680,000 principal amount of Multifamily Housing Revenue Bonds (Brittany Bay

Apartments, Waterman's Crossing Apartments, Mariners Pointe Apartments, Brampton Court Apartments, Village Lakes Apartments), Subordinate Series C (the "Series C Bonds") and the Issuer's $1,915,000 principal amount of Multifamily Housing Revenue Bonds (Brittany Bay Apartments, Waterman's Crossing Apartments, Mariners Pointe Apartments, Brampton Court Apartments, Village Lakes Apartments), Subordinate Series D (the "Series D Bonds" and, together with the Series B Bonds and Series C Bonds, collectively the "Subordinate Bonds" and, together with the Senior Bonds, collectively the "Bonds"). The Bonds were issued under the Indenture of Trust, dated as of November 1, 2005 (the "Indenture"), by and between the Issuer and U.S. Bank National Association, as trustee (the "Bond Trustee"), as supplemented and amended by that certain First Supplemental Agreement, dated as of August 1, 2008, between the Issuer, the Bond Trustee and AHF – Bay Fund, LLC, a Florida limited liability company ("AHF"), pursuant to which the Issuer assigned to the Bond Trustee all of its rights relating to the Bonds and security therefor other than certain rights to certain fees, expenses, indemnifications and notices.

The proceeds of the initial sale of the Bonds were loaned (the "Loan") to AHF to purchase and rehabilitate the Brampton Court Project, together with the other housing projects known as Brittany Bay Apartments, Waterman's Crossing Apartments, Mariners Pointe Apartments and Village Lakes Apartments (together with the Brampton Court Project, collectively, the "Projects") pursuant to that certain Loan Agreement, dated as of November 1, 2005 (the "Loan Agreement") by and between AHF and the Issuer.

In addition to the Senior Bonds, which are secured by a first lien mortgage (the "Senior Mortgage") and other security interests related thereto on the Projects, the Master Financing Agreement, dated as of November 10, 2005 (the "Master Financing Agreement"), between AHF and Merrill Lynch Capital Services, Inc. ("MLCS" and together with MLPMI, "Merrill") (the "Master Financing Agreement") relating to an ISDA Master Agreement dated as of November 10, 2005, together with the Multicurrency-Cross Border Schedule (the "Schedule") and Credit Support Annex (the "Credit Support Annex") thereto and any Confirmation Letters entered into thereunder (collectively, the "Confirmation Letter"), as amended, restated and/or supplemented from time to time, between AHF and MLCS (the "Senior Swap Agreement"), is secured by a second lien mortgage and other security interests related thereto on the Projects.

The Series B Bonds are secured by a third lien mortgage and other security interests related thereto on the Projects. The ISDA Master Agreement, dated as of November 1, 2005, together with the Multicurrency-Cross Border Schedule thereof and Credit Support Annex thereto and any Confirmation Letters entered into thereunder, as amended, restated and/or supplemented from time to time, between AHF and LBSF (the "Subordinate Swap Agreement"), is secured by a fourth lien mortgage in favor of LBSF and LBHI (the "Subordinate Swap Mortgage") and other security interests related thereto on the Projects. The Series C Bonds and Series D Bonds owned by NAHTEF are secured by a fifth lien mortgage and other security interests related thereto on the Projects.

Pursuant to that certain Subordination Agreement, dated as of November 10, 2005, by and among LBI, LBSF, MLCS, Merrill Lynch, Pierce, Fenner & Smith Incorporated and NAHTEF (the "Subordination Agreement"), attached hereto as **Exhibit A**, and as demonstrated in the loan title insurance policy insuring the first lien mortgage securing the Senior Bonds,

attached hereto as **Exhibit B**, the Subordinate Bonds, the Subordinate Swap Agreement and the Subordinate Mortgage Documents (as defined in the Subordination Agreement) are subject and subordinate in priority and payment to the Senior Bonds, the Senior Swap Agreement and the liens of the Senior Mortgage Documents (as defined in the Subordination Agreement). So long as a default exists under the Senior Swap Agreement, the Senior Mortgage Documents or certain other related documents (as defined in the Subordination Agreement, a "Default Period"), AHF's obligations with respect to the Subordinate Bonds, Subordinate Swap Agreement, Subordinate Swap Mortgage, Subordinate Mortgage Documents and all other documents related to such subordinate obligations are subject to suspension of payment and the Subordinate Lenders may take no actions with respect thereto unless directed by Merrill. A Default Period has been triggered and is continuing under the Subordination Agreement as a result of the Swap Event of Default (as defined below). Attached as **Exhibit C** are copies of the default notices delivered by MLCS with regard to such Swap Event of Default.

In addition, Section 2(d) of the Subordination Agreement provides that:

"During any Default Period, at the request of the Senior Lender, the Subordinate Lenders shall consent to any action by or against the Borrower resulting from such declaration of a default, including, without limitation, ...the sale of the Project to another entity.... The Subordinate Lenders hereby agree that, upon the request of Merrill or the Senior Trustee, the Subordinate Lenders shall do, execute, acknowledge and deliver to Merrill or the Senior Trustee all and every such further acts, deeds, conveyances and instruments as Merrill or the Senior Trustee may request for the better assuring and evidencing of the foregoing consent."

Prior to October 20, 2008, AHF failed to pay certain installment amounts due on the portion of the Loan relating to the Subordinate Bonds (the "Potential Bond Event of Default"). Upon delivery of notice by the Applicable Bondholder to the Issuer and the Bond Trustee of its election to treat the Potential Bond Event of Default as an Event of Default under the Indenture, the Potential Bond Event of Default will be an Event of Default under the Indenture (the "Bond Event of Default").

On or about October 20, 2008, AHF did not have Eligible Credit Support (as defined in the Senior Swap Agreement) available to make the required collateral transfer pursuant to the terms of the Credit Support Annex, which constituted an Event of Default under Paragraph 7 thereof, under Section 5(a)(iii) of the ISDA Master Agreement and under Section 8.10(b) of the Master Financing Agreement (the "Swap Event of Default").

AHF and Embassy & Co. (as the Applicable Bondholder under the Indenture) agreed pursuant to the terms of that certain Forbearance Agreement, dated as of November 14, 2008 (as amended, restated and/or supplemented, the "Bond Forbearance Agreement"), that during the Forbearance Period (as defined therein) and provided certain conditions are met, the Applicable Bondholder will forbear exercising or directing others from exercising certain rights and remedies arising from either the Potential Bond Event of Default or the Bond Event of Default (sometimes referred to collectively herein as the "Bond Subject Event of Default").

AHF and MLCS agreed pursuant to the terms of that certain Forbearance Agreement dated as of November 14, 2008 (as amended, restated and/or supplemented, the "Swap Forbearance Agreement"), that during the Forbearance Period (as defined therein) and provided certain conditions are met, MLCS will forbear from exercising certain rights and remedies arising from the Swap Event of Default (sometimes referred to herein as the "Swap Subject Event of Default").

AHF has agreed to sell the Brampton Court Project and to use the proceeds thereof to satisfy a portion of the obligations relating to the Senior Bonds. The buyer will only purchase the Brampton Court Project if it is delivered free and clear of the liens on the Brampton Court Project that secure the Bonds, the Senior Swap Agreement and the Subordinate Swap Agreement.

Since the liens and security interests in the Projects securing the Subordinate Bonds and the Subordinate Swap Agreement are subordinate in all respects to the liens and security interests securing the Senior Bonds and the Senior Swap Agreement, the proposed sale of the Brampton Court Project is an arm's length transaction, and all of the proceeds of the proposed sale will be applied against senior obligations, we do not believe that the Subordinate Lenders' security will be negatively affected by the sale. In addition, given the existence of a Default Period, under Section 2(d) of the Subordination Agreement, the Subordinate Lenders are required to execute and deliver all instruments or acknowledge all acts requested by Merrill.

Pursuant to that certain Stipulation, Agreement and Order Granting Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc. Relief from the Automatic Stay (the "Stipulation") attached hereto as **Exhibit D**, the Automatic Stay (as defined therein) has been modified to the extent necessary to allow Merrill to exercise, among other things, its rights and remedies under the Subordination Agreement, and LBHI and LBSF have been authorized to execute and deliver such instruments that may be required or necessary to effectuate any agreements entered into by LBHI and LBSF in connection with the sale of the Brampton Court Project, including release or cancellation of the Subordinate Swap Mortgage.

Pursuant to such provisions and in connection with the sale of the Brampton Court Project, Merrill hereby directs LBSF and LBHI to execute the various notices and releases attached hereto as **Exhibit E**. Please return the executed originals to David A. Nix, Kutak Rock LLP, 225 Peachtree Street, N.E., Suite 2100, Atlanta, Georgia 30303. Merrill will arrange for the delivery, recording and filing of such documents with the appropriate offices and parties. We ask that such executed documents be returned by May 3, 2011 to facilitate the sale of the Brampton Court Project in a timely manner.

Please contact Dan Nussbaum at 212-449-0679 or our counsel, David A. Nix, Esq., at Kutak Rock LLP, 404-222-4600, if you have any questions.

{Signature Page Follows}

[Merrill Signature Page to Notice and Direction to Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings Inc. (Brampton Court Apartments Project)]

Very truly yours,

Merrill Lynch Capital Services, Inc.

By: _____
Name: Daniel Nussbaum
Title: Authorized Signatory

Merrill Lynch Portfolio Management, Inc.

By: _____
Name: Daniel Nussbaum
Title: Authorized Signatory

[**Exhibits Intentionally Omitted**]