# Exhibit 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                              Chapter 11

LEHMAN BROTHERS HOLDING INC., et al.                               Case No. 08-13555 (JMP)

                            Debtors.                               (Jointly Administered)
------------------------------------------------------------x

### DECLARATION OF OLIVIER RITZ IN SUPPORT OF CAISSE DES DEPOTS ET CONSIGNATIONS' MOTION FOR ENTRY OF AN ORDER TO PERMIT A LATE-FILED CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)

**Olivier Ritz** declares pursuant to 28 U.S.C. §1746 as follows:

1. I am the head of the Tax and Legal Department at Caisse des Dépôts et Consignations ("CDC"), and as such I am personally familiar with the facts set forth below and respectfully submit this declaration in support of the motion filed by CDC seeking the entry of an order to permit a late-filed claim against Lehman Brothers Special Financing Inc. ("LBSF," and together with its jointly administered co-debtors, "Lehman" or the "Debtors") in accordance with due process under the United States Constitution and Federal Rule of Bankruptcy Procedure 9006(b)(1) with such claim being deemed timely filed (the "Motion").

2. CDC is a public institution with special status under the French Parliament's supervision and guarantee.[1]

3. CDC was formed in 1816 for the purpose of safeguarding funds during various financial crises and while the French State faced a significant war debt, including the pension

---

[1] CDC is a public-law institution and, together with its subsidiaries, they form a group of public interest, dedicated to the economic development of France. CDC is placed under the supervision of the French Parliament pursuant to article L. 518-2 of the French Monetary and Financial Code.

As more fully set forth herein and in the Motion, CDC is a large institution with numerous offices spread throughout France, and more than ten (10) offices in Paris alone. Furthermore, CDC employs more than 73,000 people and receives more than 1,000 pieces of mail per day. Understandably, and on account of the very departmentalized nature of CDC, notification processes, such as the notice required by in the Master Agreement (defined herein), are set up specifically designed to remedy notice issues that plague this very large entity.

060177/873094.2/BSS

funds and retirement accounts of France's civil servants. Thereafter, in the same spirit of confidence and security, many other missions of public interest have been entrusted to CDC.

4. On July 29, 1994, CDC and LBSF entered into a certain ISDA Master Agreement (the "Master Agreement"), which was to govern certain future transactions by and between CDC and LBSF. (A copy of the Master Agreement is annexed hereto as **Exhibit "A"**.)

5. In connection with the Master Agreement, LBSF also executed a Guarantee of Lehman Brothers Holdings Inc. ("Guarantee") and a Master Pledge Agreement ("Pledge Agreement"), dated November 4, 1994, whereby LBSF is the "Pledgor" to CDC as "Pledgee." (Copies of the Guarantee and the Pledge Agreement have been annexed hereto as **Exhibits "B" and "C"**, respectively.)

6. CDC and its subsidiaries employ approximately 73,500 people and manage 48 different pension programs for French workers. CDC is a large institution with numerous offices spread throughout France, including numerous office locations within the city of Paris. CDC averages more than 1,000 pieces of mail per day.

7. Due to the massive size and the expansive, non-contiguous layout of CDC's offices throughout Paris, CDC always includes *specific* noticing provisions in all of its contracts and transactional documents which, if not adhered to, can cause notice to go undelivered to its intended party.

8. The Master Agreement was no exception. CDC included a specific noticing provision to ensure that any notifications were delivered to the proper departments. Such a specific noticing provision was included in Part 4(a) of the Schedule ("Schedule") to the Master Agreement, which requires that all communications to CDC in connection with the Master

Agreement be directed to:

> Caisse des Dépôts et Consignations
> 56 rue de Lille
> 75356 Paris Cedex-France
> **Attention: Service FMP 20/Back Office Monétaire**[2]

9. On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). LBSF filed a voluntary petition under chapter 11 of the Bankruptcy Code on October 3, 2008.

10. Pursuant to section 5(a)(vii) of the Master Agreement, it is an event of default if a party to the agreement "institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (A) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (B) is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof." In addition, the bankruptcy of LBHI (as "Credit Support Provider" of LBSF under the provisions of Section 5(a)(vi) of the Master Agreement) is a "Cross Default" under the Master Agreement. Upon an event of default (including a "Cross Default"), the Master Agreement provides that "the other party (the "Non-defaulting Party") may, by not more than 20 days notice

---

[2] Section 13(c) of the Master Agreement contains noticing procedures for direct disputes between the parties to the Master Agreement and for any business transacted through CDC Capital, Inc. ("CDC Capital"). CDC Capital was an entity through which the CDC transacted certain business. In or about 2007, however, CDC sold all of its interests in CDC Capital.

Although CDC Capital was no longer affiliated with CDC at the time of the bankruptcy filing, the Bar Date Notice was apparently sent to CDC Capital. Serving CDC Capital, however, was improper under the terms of the Master Agreement because no business relating to the Claim was conducted through CDC Capital and the Bar Date does not in any event constitute a "dispute" between the parties to the Master Agreement.

to the Defaulting Party specifying the relevant Event of Default, designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all outstanding Transactions."

11. On September 19, 2008, CDC sent LBSF notice of its default under the Master Agreement as a result of the bankruptcy filing of LBHI, an affiliate of LBSF, and designated September 25, 2008, as the Early Termination Date for all outstanding transactions. LBSF received the letter on September 24, 2008.

12. On September 29, 2008, CDC sent LBSF notice of the amount due on the Early Termination Date, which notice was received by LBSF on October 1, 2008.

13. Pursuant to CDC's rights upon termination of the Master Agreement and in accordance with section 6(d)(ii), CDC holds a claim against LBSF in the amount of $3,077,434.00 (€ 2,101,500), plus costs, expenses, and accrued interest thereon from and including the Early Termination Date to the date of payment at the Applicable Rate[3] (the "Claim").[4]

14. CDC is a known creditor of LBSF because the Master Agreement is listed on Schedule "G" of the Debtors' chapter 11 petitions as an unexpired executory derivative contract with reference to Master Derivative Account Number 080494CDDC. (A copy of the Debtors' Schedule "G" is annexed hereto as **Exhibit "D"**.)

15. By Order dated July 2, 2009, this Court established September 22, 2009 (the "Bar Date") as the deadline for filing proofs of claims based upon pre-petition claims against the

---

[3] Pursuant to Section 14 of the Master Agreement, the "Applicable Rate" for this purpose is the "Default Rate", which is CDC's cost of funds plus 1% per annum. From the Early Termination Date to the date of the notice, CDC's cost of funds was 4.50% and, therefore, the Applicable Rate during such period was 4.285% per annum plus 21.5 basis points. CDC reserved its right to apply a different cost of funds for the purpose of calculating the Applicable Rate from the date of the notice.

[4] The amount was calculated by multiplying the value of the Claim in Euros, before accrued interest, costs and expenses, based upon the exchange rate as of September 25, 2008, the Early Termination Date of the Master Agreement, designated in a letter from CDC noticing LBSF of the default under the Master Agreement, which rate was then $1.4643987649 per € 1.00.

4

060177/873094.2/BSS

Debtors (the "Bar Date Order"). In addition to the official proof of claim form, the Order also required the submission by October 22, 2009 of a Derivative Questionnaire for claims based on derivative contracts and a Guarantee Questionnaire (collectively "Questionnaires") for claims based on a guarantee (the "Questionnaire Deadline").

16. On March 15, 2010 the Debtors filed a Joint Chapter 11 Plan (the "Plan") and Disclosure Statement and, on April 14, 2010, the Debtors filed a revised version of the Plan.

17. On May 5, 2010, CDC received an e-mail from LBHI estate's director, Mr. Dermot Doyle, purporting to have authority to settle CDC's claim against LBSF and asking if CDC submitted a proof of claim. On May 10, 2010, CDC telephoned Mr. Doyle to tell him that it seemed to be that, so far, no proof of claim had been filed and to ask him if any notice had been sent to CDC to inform CDC of the necessity of such proof of claim filing. Mr. Doyle answered that he would get in touch with the LBHI estate's lawyers.

18. After conducting an internal investigation, CDC discovered that the Bar Date had passed and contacted LBSF, who provided CDC with a color scan of an unopened envelope which allegedly contained the Bar Date Notice, which was errantly addressed as follows:

CAISSE DES DEPOTS ET CONSIGN ATIONS [SIC]
56 RUE DE LILLE
75356 PARIS
CEDEX 07
FRANCE

(A copy of the returned envelope holding the Bar Date Notice is annexed hereto as **Exhibit "E"**.)

19. As mentioned above, despite being mailed to the proper street address, the Bar Date Notice was not **specifically** addressed to **Service FMP 20/Back Office Monétaire**, as required by the Master Agreement. As a result, because the Bar Date Notice could not be routed to the correct personnel at CDC, it was marked to be returned to the sender as undeliverable. Accordingly, CDC was not aware of the Bar Date, and thus, CDC did not file a proof of claim.

060177/873094.2/BSS

20. Although CDC had a general understanding that the Debtors had filed for bankruptcy protection, CDC never received notice of the Bar Date Order because such notice was improperly addressed by Epiq, causing the notice to be returned as undeliverable.

21. As a result of CDC's justified reliance on the notice provisions in the Master Agreement, as well as its unfamiliarity with bankruptcy proceedings in the United States, CDC was not aware that it did not receive notice of the critical Bar Date, nor was it aware that it should have received such notice.

22. Although CDC is a large institution, it does very little business within the United States or with entities based in the United States.

23. CDC does business almost exclusively in the French language. Very few CDC employees speak English. In fact, by French law n° 94-665 dated August 4, 1994, relating to the use of French language ("relative à l'emploi de la langue française") all contracts to which CDC is a party must be written in French unless certain exceptions are met.

24. Consequently, CDC has virtually no familiarity with the bankruptcy laws and procedures in the United States.

25. CDC is a massive, complex organization with numerous offices distributed throughout France and it is comprised of countless discrete entities and departments. In Paris alone, CDC occupies more than approximately ten buildings distributed over a large geographical area, each of them accommodating many departments. As mentioned above, the average mail volume is more than 1,000 pieces per day. Moreover, CDC's mail and other parcels are delivered to a central location. Once received, the mail is then routed to the proper departments, in the various locations throughout France. If the mail is not addressed properly, which includes specifying the relevant department or personnel to receive the mail, such mail is returned to sender as undeliverable. Accordingly, it is *essential* that mail be addressed to the proper department and personnel within CDC so that it can be delivered accurately. Therefore, CDC necessarily includes very specific noticing provisions in all of its contracts, such as section

12(a) of the Master Agreement and 4(a) of the Schedule thereto.

26. Because the Bar Date Notice was not properly directed to the attention of *"Service FMP 20/Back Office Monétaire,"* the CDC mail department that received the envelope could not determine how to properly route it and, therefore, refused delivery.

27. Although Epiq received the returned mail, it appears that no further attempt was made to verify CDC's address or to attempt to resend the Bar Date Notice.

28. CDC is a foreign creditor with no familiarity with American bankruptcy laws or procedures, and had no background to know of or previously investigate the Bar Date.

29. After conducting an internal investigation once Mr. Doyle raised the Bar Date issues, CDC contacted American counsel to gain an understanding of the situation.

30. After discussions with American counsel and continued investigations into the facts that caused CDC to miss the Bar Date, CDC retained American counsel to file the instant Motion.

Wherefore, CDC respectfully requests that this Court enter an order permitting CDC to file the Claim and to determine that such Claim is timely filed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2011

_____
Olivier Ritz