# Exhibit C

### Exhibit II

**MASTER PLEDGE AGREEMENT**, dated as of November 4, 1994, made by **LEHMAN BROTHERS SPECIAL FINANCING INC.** ("Pledgor") to **CAISSE DES DEPOTS ET CONSIGNATIONS** ("Pledgee").

Pledgor and Pledgee have entered into, or will enter into, that certain ISDA Master Agreement of even date herewith (the "Agreement") pursuant to which Pledgor and Pledgee may enter into Transactions (as defined therein) from time to time. Pledgor agrees to pledge and deliver collateral as security for its obligations under the Agreement pursuant to the terms of this Master Pledge Agreement (as amended from time to time, the "Pledge Agreement"). Each Confirmation of a Transaction shall constitute a supplement to, and be part of, the Agreement and the Pledge Agreement so that the Agreement (as supplemented by Confirmations of Transactions) and the Pledge Agreement (as supplemented by Confirmations of Transactions) will form a single Pledge Agreement between Pledgor and Pledgee.

Accordingly, the parties hereto agree as follows:

1.  **Certain Definitions.** Unless otherwise defined herein, terms defined in the Agreement will have such defined meanings when used herein. In addition, as used in this Agreement, the following terms will have the following meanings.

"**Aggregate Exposure Amount**" means, as of an Exposure Calculation Date, the aggregate Market Quotation (as defined in the Agreement, except as expressly modified hereby) of all Transactions, plus an amount for each Transaction determined by multiplying (A) 0.75 by (B) the average remaining life of such Transaction by (C) the notional amount for such Transaction (indexed, if required by the Confirmation). For purposes hereof, the amount representing the Market Quotation of each Transaction for which Pledgee would on an Exposure Calculation Date receive a payment from Pledgor if such date were an Early Termination Date shall be expressed as a positive number and the market value of each Transaction for which Pledgor would on an Exposure Calculation Date receive a payment from Pledgee if such date were an Early Termination Date shall be deemed to be zero for purposes hereof. The Market Quotation of each Transaction shall be determined by Pledgor in good faith based on its mid-market quotation as of 3:00p.m., New York time (or earlier in the day if the markets relevant to such determination end business earlier on such day) on the Exposure Calculation Date, for a transaction with an effective date of the relevant Exposure Calculation Date having terms (including Unpaid Amounts) duplicating as nearly as possible the Transaction whose Market Quotation is being determined, provided, however, that if the Pledgee disputes the Market Quotation of any such Transaction it may submit value quotations from two (2) Reference Market-makers as prescribed under the definition of "Market Quotation" in the Agreement (notwithstanding the 11:00 a.m. New York time requirement of such definition, such quotations may be obtained within two (2) hours of the Pledgee's receipt of Pledgor's valuation), in which case the market value for such Transaction shall be the arithmetic mean of the three (3) valuations. "**Exposure Amount**" means, as of an Exposure Calculation Date, the market value

(if positive) of a single Transaction.

"**Aggregate Value of the Collateral**" means the sum of the adjusted fair market value of all the Collateral held by or on behalf of Pledgee with respect to all Transactions under which Pledgor shall then have any obligations to Pledgee. The fair market value of each item of Collateral shall be adjusted by multiplying it by 98% in the case of direct U.S. Government obligations, 95% in the case of direct agency obligations and such other percentage or percentages as may be agreed upon in writing by the Pledgor and the Pledgee in the case of all other obligations.

"**Collateral**" means all securities, obligations and other property (including cash) and all additions and substitutions therefor, all of a type agreed to in writing (which may include a Confirmation) by Pledgor and Pledgee, and proceeds thereof which are pledged to and received by Pledgee hereunder, together with all collections, income, distributions and claims in respect thereof, all proceeds of any of the foregoing and all powers and rights of the Pledgor now or hereafter acquired by the Pledgor, including rights of enforcement, under any or all of the foregoing.

"**Equivalent Collateral**" means, with respect to any Collateral, securities of the same class and issue, issuer, series and maturity and the same principal amount and, in the case of mortgage-backed securities, securities backed by the same pool of mortgages as the Collateral.

"**Exposure Calculation Date**" means the first and fifteenth day of each calendar month, or if any such day does not fall on a New York Banking Day, then the following day that is a New York Banking Day and such other date or dates (not exceeding four in number during any calendar month) which is a New York Banking Day and is selected by either party. A New York Banking Day is defined as a day in which banks are open for business in the State of New York and are not otherwise required by law to close.

"**Minimum Amount**" means $250,000.

"**Net Aggregate Exposure Amount**" means the Aggregate Exposure Amount less the Unsecured Amount.

"**Unsecured Amount**" means $0.

2. **Pledge.** Pledgor hereby grants to Pledgee Collateral, having a fair market value equal to the Net Aggregate Exposure Amount, and thereby grants to Pledgee a first lien on, and security interest in, such Collateral, as collateral security for the prompt and complete payment when due (whether on a Payment Date, on the Early Termination Date or otherwise) of all amounts payable by Pledgor to Pledgee pursuant to each Transaction and any other amount due or to become due by Pledgor to Pledgee pursuant to the Agreement (the "Obligations").

3. **Form of Collateral.** (a) With respect to any of the Collateral consisting of securities or obligations issued or guaranteed by the government of the United States of America

or any of its agencies or instrumentalities and available only in book-entry form by means of entries on the records of United States of America Federal Reserve Banks, Pledgor shall, unless otherwise provided in the related Confirmation or otherwise agreed to in writing by the Pledgor and the Pledgee, (i) in the case of non-mortgage-backed securities, cause such securities to be transferred pursuant to instructions of Pledgee or (ii) in the case of mortgage-backed securities, cause such securities to be transferred pursuant to instructions of Pledgee.

(b) With respect to any of the Collateral available in definitive, certificated form, Pledgor shall, unless otherwise provided in the related Confirmation or otherwise agreed to in writing by the Pledgor and the Pledgee, deliver (as instructed by Pledgee) to Pledgee or Pledgee's agent, the certificates for such collateral in suitable form for transfer or accompanied by duly executed instruments of transfer or appropriate undated powers of assignment thereof duly executed in blank. All deliveries of certificated securities shall be made to Pledgee or Pledgee's agent pursuant to instructions of Pledgee.

(c) With respect to all types of Collateral, the Pledgor shall take all steps available to it that would be necessary to create a perfected first security interest in such Collateral in favor of the Pledgee.

4. **Distributions, etc.** While this Agreement is in effect, unless there is an Event of Default or a Termination Event with respect to Pledgor or unless the Pledgor has failed to comply with any of its obligations hereunder, Pledgor shall be entitled to receive any income, dividends or interest (whether in the form of cash or otherwise), debenture, other debt instrument, stock certificate (including, without limitation, any certificate representing a distribution in connection with any reclassification, increase or reduction of capital, or issued in connection with any reorganization), option, rights or other property with respect to any of the Collateral and the same shall not constitute additional Collateral. Any sums paid upon or in respect of the Collateral upon the liquidation or dissolution of the issuer shall not constitute additional Collateral. All sums of money and property so paid or distributed in respect of the Collateral which are received by Pledgee shall, until paid or delivered to Pledgor, be held by Pledgee in trust for Pledgor. The Pledgee shall have no liability, however, for any failure by it to collect such payments not forwarded to it by the payor thereof.

5. **Adjustment of Collateral.** If the Aggregate Value of the Collateral, as of any Exposure Calculation Date, shall be less than the Net Aggregate Exposure Amount, then Pledgor shall, within two (2) New York Banking Days (as that term is defined in Section 1) after written demand by Pledgee or after first becoming aware of such fact, deliver to Pledgee, as Collateral, sufficient Collateral in conformity with Sections 2 and 3 hereof, so that, immediately after delivery of such Collateral, the Aggregate Value of the Collateral shall be at least equal to the Net Aggregate Exposure Amount, provided, however, that Pledgor shall not be required to deliver Collateral to Pledgee hereunder unless the amount to be delivered is at least the Minimum Amount. The Net Aggregate Exposure Amount shall be calculated by Pledgor, and the Aggregate Value of Collateral shall be determined by Pledgor on the basis of the closing sale prices for such Collateral as published in *The Wall Street Journal* with respect to such date (or, in the event no such quote is available, the most recent closing bid prices from a principal market

maker (other than Pledgor or any affiliate of Pledgor) selected, in good faith, by Pledgor) or in such other manner as the Pledgor and Pledgee shall agree, provided, however, that if Pledgee disputes the valuation of any Collateral by Pledgor, Pledgee may submit closing bid prices, as of such Exposure Calculation Date, quoted by two (2) other nationally-recognized sources, in which case, such value shall be the arithmetic mean of all three (3) closing bid prices. Otherwise, the calculations hereunder shall be binding upon Pledgee absent manifest error. If on any Exposure Calculation Date the aggregate amount of Collateral held by Pledgee shall exceed the Net Aggregate Exposure Amount, Pledgee shall, upon the written request of Pledgor, return to Pledgor, within two (2) New York Banking Days of the date of Pledgee's receipt of such request, such Collateral in an amount equal to such excess; provided, however, that Pledgee shall not be required to return Collateral to Pledgor hereunder unless the amount to be returned is at least the Minimum Amount. If the Net Aggregate Exposure Amount is zero on such Exposure Calculation Date, Pledgee shall return to Pledgor within two (2) New York Banking Day's of Pledgee's receipt of written request from the Pledgor, all Collateral then held by Pledgee.

6.    **Rights of Pledgee.** Any or all of the Collateral held by Pledgee hereunder may, without notice, be registered in the name of Pledgee or its nominee. Pledgee or its nominee may thereafter upon two (2) New York Banking Days' written notice to Pledgor, exercise rights of conversion, exchange, subscription or any other rights, privileges or options with respect to such Collateral, as if it were the absolute owner thereof, all without liability except to account for property actually received by it, but the Pledgee shall have no duty to exercise any of the aforesaid rights, privileges or options and shall not be responsible for any failure to do so or delay in so doing. Pledgee hereby agrees that it shall not repledge, rehypothecate, reassign or enter into repurchase transactions (collectively, "Repurchase Transactions") with respect to any of the Collateral, nor shall Pledgee direct any agent acting on its behalf to enter into any such Repurchase Transactions using the Collateral during any period in which the Pledge Agreement remains in effect.

7.    **Remedies.** In the event that any portion of the Obligations has become due and payable, and has not been paid, Pledgee may, upon written notice to Pledgor (which may be a telex, telegram, telecopy or other similar facsimile transmission and all of which Pledgor hereby agrees is reasonable notice within the meaning of Section 9-504(3) of the Uniform Commercial Code as in effect in the State of New York), collect the Collateral, or any part thereof, or may sell, assign, give options to purchase, contract to sell or otherwise dispose of and deliver said Collateral, or any part thereof, in one or more parcels at public or private sale or sales, at any exchange, broker's board or at any of Pledgee's offices or elsewhere, upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery, without advertisement or demand upon the Pledgor, both of which are hereby waived by Pledgor, provided, however, that any such sale or disposal shall be in a commercially reasonable manner. Pledgor shall have the right to prevent any sale, assignment or other disposal of the Collateral by Pledgee by tendering to Pledgee, at any time prior to such sale, assignment or other disposal, the full amount due and payable to Pledgee with respect to the Obligations. Pledgee shall apply the net proceeds of any such collection or sale, after deducting all reasonable costs and expenses directly related to or incidental to the care and safekeeping of any or all the Collateral or otherwise or in any way relating to the rights of the Pledgee hereunder,

including reasonable attorneys' fees and legal expenses, to the payment in whole or in part of the Obligations; after so paying over such net proceeds and after the payment by Pledgee of any other amount required by any provision of law, Pledgee shall account for the surplus, if any, to Pledgor. In addition to the rights and remedies granted to it in this Pledge Agreement and in any other instrument or agreement securing, evidencing or relating to any of the Obligations, Pledgee shall have all rights and remedies of a secured party under the Uniform Commercial Code of the State of New York. Pledgor shall be liable for the deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the entire amount of Obligation then owed by Pledgor to Pledgee and the fees of any attorneys employed by the Pledgee to realize upon such Collateral and collect such deficiency.

8. **Representations, Warranties and Agreements of Pledgor.** Pledgor represents to and agrees with Pledgee that (a) Pledgor is and will be the legal, beneficial and owner of record, and have good and marketable title to, the Collateral subject to no pledge, lien, mortgage, hypothecation, security interest, charge, option or other encumbrance whatsoever, except the lien and security interest in favor of pledgee created by this Pledge Agreement; and (b) the pledge, assignment and delivery of the Collateral pursuant to this Pledge Agreement will create a valid first lien on and a perfected first security interest in the Collateral as such Collateral is delivered to Pledgee, and the proceeds thereof, subject to no prior pledge, lien, mortgage hypothecation, security interest, charge, option or encumbrance, or to any agreement purporting to grant to any third party a security interest, charge, option or encumbrance, in the property or assets of any other pledgor which would include any Collateral. The Pledgor will defend Pledgee's right, title and security interest in and to the Collateral and the proceeds thereof against the claims and demands of all persons whomever. The representations made herein shall be made and deemed to be repeated at the times at which the representations of Pledgor in Section 3 of the Agreement are made and deemed to be repeated and also at the time Collateral is delivered to Pledgee pursuant to the terms hereof.

9. **No Disposition, etc.** Without the prior written consent of Pledgee, Pledgor agrees that it will not sell, assign, transfer, exchange, or otherwise dispose of or grant any option with respect to, the Collateral, nor will it create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the Collateral, or any interest therein, or any proceeds thereof, except for the lien and security interest provided for by this Pledge Agreement.

10. **Specific Performance.** If Pledgee shall determine to exercise its right to sell any or all of the Collateral pursuant to Section 7 hereof, Pledgor agrees to render to Pledgee any assistance reasonably necessary to make such sale or sales of any portion or all of the Collateral valid and binding and in compliance with any and all courts, arbitrators or governmental instrumentalities, domestic or foreign, having jurisdiction over any such sale or sales, all at Pledgor's expense.

11. **Right of Substitution.** Upon written request of Pledgor to return Collateral to Pledgor, so long as no Event of Default or Termination Event with respect to the Pledgor shall have occurred and is continuing, with the prior written consent of Pledgee and so long as such