REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110
Michael A. Rollin

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                              :   Chapter 11 Case No.
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*        :   08-13555 (JMP)
                                                   :
                        Debtors.                   :   (Jointly Administered)
------------------------------------------------------------------x

### DECLARATION OF ZACHARY TRUMPP IN SUPPORT OF DEBTORS' REPLY TO U.S. BANK'S RESPONSE TO DEBTORS' NINETY-EIGHTH, NINETY-NINTH, AND ONE HUNDRED AND NINTH OMNIBUS OBJECTIONS TO CLAIMS (INSUFFICIENT DOCUMENTATION)

Pursuant to 28 U.S.C. §1746, I, Zachary Trumpp, declare:

1. I am over 18 years of age and have personal knowledge of all of the facts set forth in this declaration and if called upon to testify as a witness, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of *Debtors' Reply to U.S. Bank National Association's Response to Debtors' Ninety-Eighth, Ninety-Ninth, and One Hundred and Ninth Omnibus Objections to Claims (Insufficient Documentation)*, ECF No. 18088.

3. I am currently employed by LAMCO LLC ("LAMCO"), a wholly-owned subsidiary of the Debtor Lehman Brothers Holdings Inc. ("LBHI"), and am authorized by LBHI to provide this declaration on LBHI's behalf. I was previously employed by LBHI, and before that, by Aurora Loan Services LLC ("Aurora"), as Vice President of Operational Controls.

553977

4. Bulk sellers, typically large mortgage companies or banks, sold pools of mortgage loans to LBHI though Lehman Brothers Bank ("LBB"). These bulk sellers were known as Transferors. The representations and warranties these Transferors made in regard to the quality of the mortgage loans--for example, that the loan documents contain no untrue statements of fact--were passed through or assigned to the trusts.

5. Smaller sellers sold loans to LBHI through LBB pursuant to standardized loan purchase agreements that incorporated the "Aurora Seller's Guide." These sellers were known as Correspondents. LBB also funded loans based on loan application packages submitted by brokers under broker agreements. Although LBHI made representations and warranties on the Correspondent and Broker loans to the trusts, LBHI retained the right to, in turn, seek indemnification or repurchase of a faulty loan from the Correspondents and Brokers via the applicable agreements.

6. LBHI, through LBB, also originated loans through its Retail channel.

7. Once it acquired mortgage loans through the channels discussed above, LBHI deposited the loans into securitization trusts through a depositor, such as SASCO. Certificates from these trusts were then issued to investors. Banks like U.S. Bank were appointed trustees.

8. In my experience, trustees were responsible for, among other things, distributing payments to certificate holders, and if necessary, pursuing remedies for identified breaches on behalf of the certificate holders. Trustees are able to access loan documents and information via authority granted to them in the trust agreements.

9. LBHI as seller and SASCO as depositor are not authorized to request loan information from primary servicers or master servicers unless explicitly authorized to do so under the trust agreement.

10. Aurora served as primary servicer and/or master servicer for many of the loans in the trusts at issue.

5539

11. Of the 226 residential mortgage-backed securities trusts at issue in U.S. Bank's claims, SASCO is authorized to request loan level data from the master servicer for 42 trusts. Debtors have requested loan level data from Aurora for 35 of these trusts and through this data, have identified an additional 25 alleged breaches of representations and warranties identified by Aurora. The Debtors have asked Aurora for access to similar loan information for the remaining trusts, but it is Aurora's position that only the trustee is entitled to this information. Thus, Debtors are not able to access the loan information for the remaining trusts.

12. Attached as Exhibit A to this Declaration are the relevant portions of the trust agreement for one of the securitizations at issue in U.S. Bank's claims. The trust agreements for all the securitizations for which U.S. Bank is a trustee are substantially similar.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: June 28, 2011.

/s/ Zachary Trumpp
Zachary Trumpp

5539

# **EXHIBIT A**

*EXECUTION*

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor,

AURORA LOAN SERVICES LLC, as Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION
as Trustee

---

TRUST AGREEMENT

Dated as of November 1, 2006

---

LEHMAN MORTGAGE TRUST
MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2006-8

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ........................................................................................................ 7

    Section 1.01. Definitions. ................................................................................................ 7
    Section 1.02. Calculations Respecting Mortgage Loans. ............................................... 45

ARTICLE II DECLARATION OF TRUST; ISSUANCE OF CERTIFICATES ...................... 45

    Section 2.01. Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans. ......................................................................................................... 45
    Section 2.02. Acceptance of Trust Fund by Trustee: Review of Documentation for Trust Fund. ................................................................................................. 49
    Section 2.03. Representations and Warranties of the Depositor. ................................... 51
    Section 2.04. Discovery of Breach. ................................................................................ 53
    Section 2.05. Repurchase, Purchase or Substitution of Mortgage Loans. ...................... 53
    Section 2.06. Grant Clause. ............................................................................................ 55

ARTICLE III THE CERTIFICATES ........................................................................................ 56

    Section 3.01. The Certificates. ....................................................................................... 56
    Section 3.02. Registration. ............................................................................................. 57
    Section 3.03. Transfer and Exchange of Certificates. .................................................... 58
    Section 3.04. Cancellation of Certificates. ..................................................................... 64
    Section 3.05. Replacement of Certificates. .................................................................... 64
    Section 3.06. Persons Deemed Owners. ........................................................................ 65
    Section 3.07. Temporary Certificates. ........................................................................... 65
    Section 3.08. Appointment of Paying Agent. ................................................................ 65
    Section 3.09. Book-Entry Certificates. .......................................................................... 66
    Section 3.10. Deposit of Underlying REMIC Certificates under the Exchange Trust Agreement. ....................................................................................... 68

ARTICLE IV ADMINISTRATION OF THE TRUST FUND .................................................. 68

    Section 4.01. Collection Account. ................................................................................. 68
    Section 4.02. Application of Funds in the Collection Account. .................................... 70
    Section 4.03. Reports to Certificateholders. .................................................................. 72
    Section 4.04. Certificate Account. ................................................................................. 76

ARTICLE V DISTRIBUTIONS TO HOLDERS OF CERTIFICATES ................................... 77

    Section 5.01. Distributions Generally. ........................................................................... 77
    Section 5.02. Distributions from the Certificate Account. ............................................ 78
    Section 5.03. Allocation of Realized Losses. ................................................................ 84
    Section 5.04. Advances by the Master Servicer and the Trustee. .................................. 86
    Section 5.05. Compensating Interest Payments. ............................................................ 86

ARTICLE VI CONCERNING THE TRUSTEE; EVENTS OF DEFAULT ............................. 87

    Section 6.01. Duties of Trustee. ..................................................................................... 87
    Section 6.02. Certain Matters Affecting the Trustee. .................................................... 90
    Section 6.03. Trustee Not Liable for Certificates. ......................................................... 91

Section 6.04. Trustee May Own Certificates. ...................................................................91
Section 6.05. Eligibility Requirements for Trustee ..........................................................92
Section 6.06. Resignation and Removal of Trustee. ........................................................92
Section 6.07. Successor Trustee. ......................................................................................93
Section 6.08. Merger or Consolidation of Trustee. ..........................................................94
Section 6.09. Appointment of Co-Trustee, Separate Trustee or Custodian. ....................94
Section 6.10. Authenticating Agents. ...............................................................................96
Section 6.11. Indemnification of Trustee. ........................................................................97
Section 6.12. Fees and Expenses of Trustee and Custodian. ...........................................97
Section 6.13. Collection of Monies. .................................................................................98
Section 6.14. Events of Default; Trustee To Act; Appointment of Successor. ................98
Section 6.15. Additional Remedies of Trustee Upon Event of Default. ........................103
Section 6.16. Waiver of Defaults. ...................................................................................103
Section 6.17. Notification to Holders. ............................................................................103
Section 6.18. Directions by Certificateholders and Duties of Trustee During Event
   of Default. ...............................................................................................103
Section 6.19. Action Upon Certain Failures of the Master Servicer and Upon
   Event of Default. .....................................................................................104
Section 6.20. Preparation of Tax Returns and Other Reports. .......................................104
Section 6.21. [Reserved] .................................................................................................111
Section 6.22. No Merger. ................................................................................................111
Section 6.23. Indemnification by the Trustee and Paying Agent. ..................................111
Section 6.24. Compliance with Regulation AB. ............................................................112

ARTICLE VII PURCHASE AND TERMINATION OF THE TRUST FUND ........................112

Section 7.01. Termination of Trust Fund Upon Repurchase or Liquidation of All
   Mortgage Loans. .....................................................................................112
Section 7.02. Procedure Upon Termination of Trust Fund. ...........................................114
Section 7.03. Additional Requirements for any Trust Fund Termination Events or
   Purchase of the Lower Tier REMIC 1 Uncertificated Regular
   Interests. ..................................................................................................115
Section 7.04. Charged-off Loans and Released Mortgage Loans. .................................116

ARTICLE VIII RIGHTS OF CERTIFICATEHOLDERS ..........................................................117

Section 8.01. Limitation on Rights of Holders. ..............................................................117
Section 8.02. Access to List of Holders. ........................................................................118
Section 8.03. Acts of Holders of Certificates. ................................................................118

ARTICLE IX ADMINISTRATION AND SERVICING OF MORTGAGE LOANS BY THE
MASTER SERVICER ...................................................................................................................119

Section 9.01. Duties of the Master Servicer. ..................................................................119
Section 9.02. Master Servicer Fidelity Bond and Master Servicer Errors and
   Omissions Insurance Policy. ...................................................................120
Section 9.03. Master Servicer's Financial Statements and Related Information. ..........120
Section 9.04. Power to Act; Procedures. ........................................................................121
Section 9.05. Servicing Agreements Between the Master Servicer and Servicers;
   Enforcement of Servicers' Obligations. ..................................................123

Section 9.06. Collection of Taxes, Assessments and Similar Items. ............................ 124
Section 9.07. Termination of Servicing Agreements; Successor Servicers. .................. 125
Section 9.08. Master Servicer Liable for Enforcement. ................................................ 125
Section 9.09. No Contractual Relationship Between Servicers and Trustee or
             Depositor. ................................................................................................ 126
Section 9.10. Assumption of Servicing Agreement by Trustee. ................................... 126
Section 9.11. "Due–on–Sale" Clauses; Assumption Agreements. ................................ 126
Section 9.12. Release of Mortgage Files. ..................................................................... 127
Section 9.13. Documents, Records and Funds in Possession of Master Servicer To
             Be Held for Trustee. ................................................................................ 128
Section 9.14. Representations and Warranties of the Master Servicer. ........................ 129
Section 9.15. Closing Certificate and Opinion. ............................................................ 132
Section 9.16. Standard Hazard and Flood Insurance Policies. ..................................... 132
Section 9.17. Presentment of Claims and Collection of Proceeds. .............................. 132
Section 9.18. Maintenance of the Primary Mortgage Insurance Policies. ................... 133
Section 9.19. Trustee To Retain Possession of Certain Insurance Policies and
             Documents. ............................................................................................. 133
Section 9.20. Realization Upon Defaulted Mortgage Loans. ....................................... 134
Section 9.21. Compensation to the Master Servicer. ................................................... 134
Section 9.22. REO Property. ........................................................................................ 135
Section 9.23. Notices to the Depositor and the Trustee ............................................... 135
Section 9.24. Reports to the Trustee. ........................................................................... 136
Section 9.25. Assessment of Compliance and Attestation Reports. ............................. 136
Section 9.26. Annual Statement of Compliance with Applicable Servicing
             Criteria. ................................................................................................... 138
Section 9.27. Merger or Consolidation. ....................................................................... 139
Section 9.28. Resignation of Master Servicer. ............................................................. 139
Section 9.29. Assignment or Delegation of Duties by the Master Servicer. ................ 139
Section 9.30. Limitation on Liability of the Master Servicer and Others. ................... 140
Section 9.31. Indemnification; Third-Party Claims. .................................................... 141
Section 9.32. Special Servicing of Delinquent Mortgage Loans. ................................. 141

ARTICLE X REMIC ADMINISTRATION ............................................................................. 142

Section 10.01. REMIC Administration. ....................................................................... 142
Section 10.02. Prohibited Transactions and Activities. ............................................... 144
Section 10.03. Indemnification with Respect to Certain Taxes and Loss of
              REMIC Status. ....................................................................................... 144
Section 10.04. REO Property. ...................................................................................... 145

ARTICLE XI MISCELLANEOUS PROVISIONS .................................................................. 146

Section 11.01. Binding Nature of Agreement; Assignment. ........................................ 146
Section 11.02. Entire Agreement. ................................................................................ 146
Section 11.03. Amendment. ......................................................................................... 146
Section 11.04. Voting Rights. ...................................................................................... 148
Section 11.05. Provision of Information. ..................................................................... 148
Section 11.06. Governing Law. .................................................................................... 149
Section 11.07. Notices. ................................................................................................. 149

Section 11.08. Severability of Provisions. .......................................................................... 149
Section 11.09. Indulgences; No Waivers. .......................................................................... 149
Section 11.10. Headings Not To Affect Interpretation. ...................................................... 150
Section 11.11. Benefits of Agreement. ............................................................................... 150
Section 11.12. Special Notices to the Rating Agencies. ..................................................... 150
Section 11.13. Counterparts. ............................................................................................... 151
Section 11.14. Transfer of Servicing................................................................................... 151

Exhibits

| | |
|---|---|
| Exhibit A | Forms of Certificates |
| Exhibit B-1 | Form of Initial Certification |
| Exhibit B-2 | Form of Interim Certification |
| Exhibit B-3 | Form of Final Certification |
| Exhibit B-4 | Form of Endorsement |
| Exhibit C | Request for Release of Documents and Receipt |
| Exhibit D-1 | Form of Residual Certificate Transfer Affidavit (Transferee) |
| Exhibit D-2 | Form of Residual Certificate Transfer Affidavit (Transferor) |
| Exhibit E | List of Servicing Agreements |
| Exhibit F | Form of Rule 144A Transfer Certificate |
| Exhibit G | Form of Purchaser's Letter for Institutional Accredited Investors |
| Exhibit H | Form of ERISA Transfer Affidavit |
| Exhibit I | Transaction Parties |
| Exhibit J | [Reserved] |
| Exhibit K | Custodial Agreements |
| Exhibit L-1 | Additional Form 10-D Disclosure |
| Exhibit L-2 | Additional Form 10-K Disclosure |
| Exhibit L-3 | Additional Form 8-K Disclosure |
| Exhibit L-4 | Additional Disclosure Notification |
| Exhibit M | Monthly Electronic Data Transmission |
| Exhibit N-1 | Form of Transfer Certificate for Transfer from Restricted Global Security to Regulation S Global Security pursuant to Section 3.03(h)(B) |
| Exhibit N-2 | Form of Transfer Certificate for Transfer from Regulation S Global Security to Restricted Global Security pursuant to Section 3.03(h)(C) |
| Exhibit O | Senior Principal Priorities |
| Exhibit P | Form Certification to be Provided to Depositor and/or Master Servicer by the Trustee |
| Exhibit Q | Relevant Servicing Criteria to be Addressed in Report on Assessment of Compliance |
| Exhibit R | Form of Exchange Trust Agreement (including Available Combination Schedule) |
| Exhibit S | Class Table |
| Exhibit T | Applicable Fractions Table |

Mortgage Loan Schedules

| | |
|---|---|
| Schedule A | All Mortgage Loans |

respect to the Mortgage Loans if the fact, condition or event constituting such breach also constitutes a breach of a representation or warranty made by the applicable Transferor in the applicable Transfer Agreement, without regard to whether such Transferor fulfills its contractual obligations in respect of such representation or warranty. The Trustee further acknowledges that the Depositor shall have no obligation or liability with respect to any breach of any representation or warranty with respect to the Mortgage Loans (except as set forth in Section 2.03(a)(vi)) under any circumstances.

Section 2.04. Discovery of Breach.

It is understood and agreed that the representations and warranties (i) of the Depositor set forth in Section 2.03 hereof, (ii) of LBH set forth in the Mortgage Loan Sale Agreement and assigned to the Trustee by the Depositor hereunder and (iii) of each Transferor, assigned by LBH to the Depositor pursuant to the Mortgage Loan Sale Agreement and assigned to the Trustee by the Depositor hereunder, shall each survive delivery of the Mortgage Files and the Assignment of Mortgage of each Mortgage Loan to the Trustee and shall continue throughout the term of this Agreement. Upon discovery by any of the Depositor, the Master Servicer or the Trustee of a breach of any of such representations and warranties that adversely and materially affects the value of the related Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties; provided, to the extent that knowledge of such breach with respect to any Mortgage Loan is known by any officer, director, employee or agent of Aurora acting in any capacity other than as Master Servicer hereunder, the Master Servicer shall not be deemed to have knowledge of any such breach until an officer of the Master Servicer has actual knowledge thereof. Within 90 days of the discovery of a breach of any representation or warranty given to the Trustee by the Depositor, any Transferor or LBH and assigned to the Trustee hereunder, the Depositor, such Transferor or LBH shall either (a) cure such breach in all material respects, (b) repurchase such Mortgage Loan or any property acquired in respect thereof from the Trustee at the Purchase Price or (c) within the two year period following the Closing Date, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan. In the event of the discovery of a breach of any representation and warranty of any Transferor assigned to the Trustee, the Trustee shall enforce its rights under the applicable Transfer Agreement and the Mortgage Loan Sale Agreement for the benefit of the Certificateholders. As provided in the Mortgage Loan Sale Agreement, if any Transferor substitutes for a Mortgage Loan for which there is a breach of any representations and warranties in the related Transfer Agreement which adversely and materially affects the value of such Mortgage Loan and such substitute mortgage loan is not a Qualifying Substitute Mortgage Loan, under the terms of the Mortgage Loan Sale Agreement, LBH will, in exchange for such Substitute Mortgage Loan, either (i) provide the applicable Purchase Price for the affected Mortgage Loan or (ii) within two years of the Closing Date, substitute such affected Mortgage Loan with a Qualifying Substitute Mortgage Loan.

Section 2.05. Repurchase, Purchase or Substitution of Mortgage Loans.

(a) With respect to any Mortgage Loan repurchased by the Depositor pursuant to this Agreement by LBH pursuant to the Mortgage Loan Sale Agreement or by any Transferor pursuant to the applicable Transfer Agreement, the principal portion of the funds received by the Trustee in respect of such repurchase of a Mortgage Loan will be considered a Principal Prepayment and shall be deposited in the Certificate Account.

205365 LMT 2006-8
Trust Agreement

53

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
    Name: Michael Hitzmann
    Title: Senior Vice President

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By: _____
    Name:
    Title:

AURORA LOAN SERVICES LLC,
as Master Servicer

By: _____
    Name: Jerald W. Dreyer
    Title: Vice President

Solely for purposes of Sections 6.11 and 11.14, accepted and agreed to by:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
    Name: Ellen V. Kiernan
    Title: Authorized Signatory

205365 LMT 2006-8
Trust Agreement

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
    Name: Michael Hitzmann
    Title: Senior Vice President

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

By: _____
    Name:  Javid Duclos
    Title:  Vice President

AURORA LOAN SERVICES LLC,
as Master Servicer

By: _____
    Name: Jerald W. Dreyer
    Title: Vice President


Solely for purposes of Sections 6.11 and 11.14,
accepted and agreed to by:

LEHMAN BROTHERS HOLDINGS INC.


By: _____
    Name: Ellen V. Kiernan
    Title: Authorized Signatory

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

    STRUCTURED ASSET SECURITIES
    CORPORATION, as Depositor

By: _____
    Name: Michael Hitzmann
    Title: Senior Vice President

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee

By: _____
    Name:
    Title:

AURORA LOAN SERVICES LLC,
    as Master Servicer

By: _____
    Name: Jerald W. Dreyer
    Title: Vice President

Solely for purposes of Sections 6.11 and 11.14, accepted and agreed to by:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
    Name: Ellen V. Kiernan
    Title: Authorized Signatory