REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110
Michael A. Rollin
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                                    :    Chapter 11 Case No.
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*              :    08-13555 (JMP)
                                                         :
                         Debtors.                        :    (Jointly Administered)
---------------------------------------------------------------------x

**DEBTORS' REPLY TO RESPONSE OF CITIBANK, N.A. AND WILMINGTON TRUST
COMPANY TO DEBTORS' ONE HUNDRED AND NINTH OMNIBUS OBJECTION
(INSUFFICIENT DOCUMENTATION)**

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), file this reply (the "Reply") to the response [ECF No. 17883] (the "Response") filed by Citibank, N.A., as trustee ("Citibank"), and Wilmington Trust Company, also as trustee ("Wilmington," and collectively, the "Claimants") opposing the Debtors' One Hundred Ninth Omnibus Objection to Claims (Insufficient Documentation) [ECF No. 15008] (the "Objection") and respectfully represent as follows:

**Preliminary Statement**

1.      As described in detail in the Objection, the thirteen (13) proofs of claim filed by Citibank and two (2) proofs of claim filed by Wilmington[1] should be disallowed and expunged

---
[1] The claims at issue are numbered 22604, 22605, 22606, 22639, 22717, 22718, 22719, 22720, 22721, 22761, 22774, 22775, and 22776 from Citibank and 22766 and 22773 from Wilmington. All of these claims at issue in the Objection are referred to herein as the claims or proofs of claim.

1

because they do not satisfy this Court's orders setting forth the procedures and deadlines for filing proofs of claim in these Chapter 11 cases [ECF No. 4271] (the "Bar Date Order"); [ECF No. 6664] (the "Objection Procedures Order"). The Objection Procedures Order explicitly authorizes the Debtors to seek disallowance of claims that "do not include sufficient documentation to ascertain the validity of the claim." (Objection Procedures Order at 2.) Claimants assert in their Response that they have provided sufficient documentation for their claims because they have totaled the unpaid principal balances on all loans owned by Claimants and come up with a basis for a damages figure. (Response at 4.) However, Claimants have failed to allege any legal basis upon which the Debtors are liable for damages in the first place, making any damages calculation irrelevant to the Court's determination of the instant objections. Thus, there is not "sufficient documentation to ascertain the validity of the claim," and the claims are not *prima facie* valid claims. For this reason, the insufficient documentation objections should be sustained and the proofs of claim should be disallowed.

2. The Claimants' fifteen proofs of claim, which the Claimants state are all "substantially similar" (Response at 7), make broad allegations regarding obligations and responsibilities due to the Claimants from the Debtors, but the proofs of claim do not allege specific reasons why the Debtors are liable for the billions of dollars sought. The closest the Claimants come to "set[ting] forth the legal and factual basis for the alleged claim" (Bar Date Order at 6) is sentences like: "Pursuant to Sections 2.01, 2.06, 6.12 and 11.05 of the Trust Agreement, the Trustee is *entitled* to reimbursement of reasonable expenses, disbursements and advances . . . ." (POC 22721 at 2-3 (attached by the Claimants to Response as Ex. A) (emphasis added)). The Claimants do not state why they are entitled to reimbursement or what events constitute a material breach. Thus, while the Claimants have identified contractual provisions

2

553985

that may give rise to liability on the part of the Debtors, they have not even alleged or documented that the Debtors are in fact liable.

3.  Instead, Claimants have provided only numbers purportedly supporting their damages request. For each proof of claim, Claimants by their own admission provided only "(a) the names of the trusts involved in the transactions . . . ; (b) the number of underlying residential mortgage loans included in each trust; (c) the aggregate unpaid principal balance for the mortgage loans in each transaction as of June 30, 2009; and (d) certain fees and expenses incurred as of June 30, 2009." (Response at 4.) Nowhere in these damages figures do Claimants allege the factual bases for their claims. For this reason, the Debtors objected that the claims do not meet the information or documentation requirements of the Bar Date Order.

4.  There are eighty securities subject to Claimants' Proofs of Claims, *see* Declaration of Keri Reed ("Reed Decl.") at ¶ 5, containing "approximately 70,000 mortgage loans" (Response at 7). In the more than two and a half years since Lehman Brothers Holdings Inc. filed for bankruptcy on September 15, 2008, the Claimants have provided support for six of these loans, all of which reside in one of the eighty securities at issue in Claimants Proofs of Claims. Reed Decl. at ¶ 5. The Debtors specifically excluded from the Objection those six loans, or .008% of the total, that contained an explanation of the basis of the Debtors' liability. (Objection, Ex. A at 6, n.1.) The Debtors have also repeatedly requested supporting documentation from the Claimants but nothing more has been provided. *See* Reed Decl. at ¶ 6.

5.  Although the Claimants have the right to access the loan documents with respect to all the transactions, the Debtors generally cannot access the loan documents. *See* Declaration of Zachary Trumpp ("Trumpp Decl."), Ex. C, Servicing Agreement for Lehman XS Trust 2006-1, Jan. 1, 2006, § 2.01. However, in five of the eighty trust agreements at issue, SASCO—one of

3

the Debtors—does in fact have the right to access the loan data, and has done so. Trumpp Decl. at ¶ 4. In addition to the six loans the Claimants have provided in support of their claims, the Debtors have determined that they potentially have liability as to an additional fifty-three loans in the five transactions for which they have the right to request data. The Debtors thus seek only partial expungement as to the six proofs of claim that contain these loans. These proofs of claim are listed on Schedule A.

### The Claims are not Entitled to a Presumption of Validity

6. The Claimants assert that their claims are *prima facie* valid. A proof of claim is entitled to a presumption of validity only if the claim is "executed and filed in accordance with [the Bankruptcy] rules." Fed. R. Bankr. P. 3001(f). Rule 3001(c) requires a claimant to attach any writing upon which a claim is based to the claim itself. Fed. R. Bankr. P. 3001(c) ("When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim."). Similarly, the Bar Date Order provides that "each Proof of Claim must . . . set forth with specificity the legal and factual basis for the alleged claim." (Bar Date Order at 6.) Therefore, a claimant who fails to provide the required documentation has not acted in accordance with the Bankruptcy Rules and is not entitled to a presumption of validity.

7. Courts in the Second Circuit and elsewhere recognize that failure to support a claim with the documentation mandated by Rule 3001(c) deprives the claim of the presumption of validity. *See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) ("Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim."); *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("If . . . the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, *e.g.*, by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), . . . [the claim] is . . . deprived

553985

of any *prima facie* validity which it could otherwise have obtained." (quotations omitted)); *see also In re DePugh*, 409 B.R. 125, 135 (Bankr. S.D. Tex. 2009) ("If . . . an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome . . . ."). If the documents are voluminous, a bankruptcy court may permit a claimant to attach a summary of the documents to the claim in lieu of the documents themselves, so long as the documents are made available to the debtor. The proof of claim form approved by this Court permits a party to attach a summary of the documents upon which a claim is based. (*See* ECF No. 4271; *see also* Official Form 10.)

8. A court in this District recently noted that "in the mortgage context, the creditor may initially attach only a summary of its claim, containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges, and other fees that make up the balance of the debt." *Minbatiwalla*, 424 B.R. at 117. Another court in this District recently affirmed *Minbatiwalla*, broadly noting that, "[i]nitially, the claimant must allege facts sufficient to support the claim." *In re Feinberg*, 442 B.R. 215, 221 (Bankr. S.D.N.Y. 2010) (quoting *In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, at *15 (Bankr. S.D.N.Y. Aug. 22, 2007)). Even after the filing of a proof of claim, the *Minbatiwalla* court observed that, "[u]pon request of the Debtor, the Creditor has an obligation to provide additional documentation underlying its summary . . . ." 424 B.R. at 117.

9. Here, upon the Debtors' many requests for loan-level information, the Claimants provided a factual basis for the claim for only six of the "approximately 70,000 mortgage loans covered by the Proofs of Claim." (Response at 7.) The Claimants seek billions of dollars from the estate despite not providing support for literally 99.99% of the loans upon which their claims are based. Without providing the loan documents—or at least summaries including the relevant credit

5

histories, mortgage applications, or other documents in the loan file that give rise to their claims for breach—the Claimants have not complied with Rule 3001. Without any evidentiary support for the claims, the Debtors cannot determine whether they are liable for any of the claims asserted by the Claimants. Because the Claimants still have not provided the documents (or summaries of the documents) upon which their claims are based, their proofs of claim are not entitled to *prima facie* validity.

### The Burden Rests with the Claimants to Establish the Validity of the Claims

10. Without the presumption of validity, the burden of establishing the claims' validity rests on the Claimants. *Feinberg*, 442 B.R. at 221-22; *see also Porter*, 374 B.R. at 483 (recognizing that when the presumption of validity does not apply to a claimant's proof of claim pursuant to Rule 3001(f), "the burden of production is on the creditor"). The *Feinberg* court recently held that even though the claimant filed "a timely proof of claim and attached an itemization of the principal, escrow, late charges and other costs associated with the Debtor's default," the "claim is not prima facie evidence of validity and the amount of claim because [claimant] failed to attach any documentation with respect to the assignment [of a mortgage note]." *Feinberg*, 442 B.R. at 221-22. The bankruptcy court then concluded that:

> This failure to comply with the requirements of Fed. R. Bankr. P. 3001 is an amendable defect and not fatal to the proof of claim, though it shifts the burden to Bank of New York to sustain the burden of persuasion by a preponderance of evidence to establish the validity and amount of the claim.

*Id.* at 222 (citing *In re Allegheny Int'l Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992)).

11. The *Feinberg* holding is directly applicable to the Debtors' Insufficient Documentation Objection, as *Feinberg* requires the Claimants to "sustain the burden of persuasion by a preponderance of evidence" and provide supporting evidence of their claim. *See id.* Despite this holding, however, the Claimants nevertheless maintain that the Debtors have the

6

553985

burden to produce evidence to rebut their claims, essentially arguing that they cannot support their claims because it would be difficult for them to obtain such information. (*See* Response at 8 ("Neither Trustee can provide information about other potential breaches of representations and warranties when Trustees do not have that information.").) This argument fails for two reasons.

12.     First, the governing agreements for the securitizations at issue give the Claimants the ability to obtain from the servicer the documents necessary to determine whether they suffered a loss as a result of the Debtors' breach of a representation or warranty. (Trump Decl., Ex. C, Servicing Agreement for Lehman XS Trust 2006-1, Jan. 1, 2006, § 2.01 ("Each Servicing File delivered to a Servicer shall be held in trust by such Servicer for the benefit of the Trustee . . . .").) Accordingly, the Claimants *can* provide information about other potential breaches of representations and warranties; they have made the business decision not to.[2]

13.     Second, the Claimants have not produced any documentation with which the Debtors can assess the validity of their claims.[3] "[A]bsent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim." *Minbatiwalla*, 424 B.R. at 119; *see also Feinberg*, 442 B.R. at 222 (recognizing that a failure to provide adequate documentation "shifts the burden to [claimant] to sustain the burden of persuasion by a preponderance of evidence to establish the validity and amount of the claim"); *Porter*, 374 B.R. at 482 ("[A]n Insufficient Doc. Objection fairly can be read to object on the grounds that the

---

[2] The Claimants suggest that the Debtors' objections do not apply to their claims for fees and "the provision of certain information or reports." (Response at 9.) However, just as the Debtors do not have access to loan information in the possession of the Claimants, the Debtors also do not have access to the Claimants' fee calculations. In the One Hundred Ninth Objection, the Debtors objected to all of the Claimants' proofs of claim on the ground of insufficient documentation, save for six loans. Finally, it is worth noting that this portion of the Claimants' proofs of claim is miniscule—out of the $999,992,176.77 claim filed by Citibank that is attached to the Response, only $3,496.77, or .000003%, is for fees and expenses. So even if the Court concludes that this portion of the Claimants' proofs of claim are adequately supported, the Court can still disallow the remaining 99.999997% of the claim.

[3] Indeed, Citibank has even told its bondholders that it has not even analyzed these claims to determine whether Debtors are liable, stating that "the Proofs of Claim were filed on a precautionary basis in order to avoid the loss of rights. The Trustee has not independently analyzed whether the claims set forth in the Proofs of Claim will be allowed in the Debtors' chapter 11 case and, if so, the allowed amount of the claims." (Reed Decl., Ex. A.)

7

553985

proof of claim is insufficient (when taken together with the objector's then-existing knowledge base) for the objector to concede the validity of the claim asserted."). Thus, the Claimants bear the burden of establishing that their claims are valid by a preponderance of the evidence.

14.  To satisfy the pleading burden for a breach of representation and warranty, the Claimants must plead that the Debtors breached a representation or warranty; that such a breach was material; that the Claimants provided prompt notice of the breach to the Debtors; that the Claimants suffered damages as a result of the breach; and that any breach that occurred was in fact warranted by the Debtor against which the Claimants assert their claims. *See* Trumpp Decl., Ex. A, (Trust Agreement for Lehman XS Trust 2006-1, January 1, 2006 § 2.04). Even the Claimants' damages calculation is inadequate because damages for these claims, if any, are determined by a contractually-agreed "Repurchase Price" for each loan; they are not the aggregated unpaid principal balance for all loans in the securitizations. Further, about 81% of the loans held by the Claimants are currently performing, meaning that the borrowers are paying their mortgages and the trusts have suffered no loss. *See* Reed Decl. at ¶ 7. Thus, the Claimants have not "set forth with specificity the legal and factual basis for the alleged claim," and the burden to do so lies with them.[4]  (Bar Date Order at 6.)

**The Claimants Cannot Avoid the Obligations Imposed by the
<u>Bar Date Order by Labeling Their Claims Contingent or Unliquidated</u>**

15.  The Claimants' Response then attempts to argue that their claims are contingent

---

[4] The Debtors agree with the Claimants' position that "[e]ither the Proofs of Claim violated the Bar Date Order *when they were filed* or they did not." (Response at 5 n.3.) For the reasons given above, the Claimants' proofs of claim did not comply with the Bar Date Order when filed. Rather than seek immediate expungement of the claims, however, the Debtors chose to cooperate with the Claimants in an attempt to determine whether they possessed valid claims. This has been the Debtors' consistent position throughout the bankruptcy with respect to all RMBS claimants. Now, over two and a half years after the filing of the bankruptcy and over one and a half years after the filing of the Claimants' proofs of claim, the Claimants still have provided virtually no support for their claims. The Claimants' proofs of claim have never been in accord with the Bar Date Order, and even after being given the extra leeway by the Debtors, the Claimants have been unable to support their claims.

8

553985

and unliquidated, meaning they need not explain why Debtor may be liable. The Claimants state as much in the Response, admitting that they "are aware of defects with only a handful of the underlying mortgage loans; there may, however, be additional defects discovered in the future." (Response at 8.) Section 502(c)(1) does indeed permit a bankruptcy court to estimate a "contingent or unliquidated claim." 11 U.S.C. § 502(c)(1). However, nothing provided by the Claimants thus far indicates that their claims are truly contingent or unliquidated within the meaning of the Code. *See In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997).

16. The Claimants have mislabeled their claims as "contingent" and so cannot be excused for failing to document a breach on that basis. "It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *Id.* The Claimants have not adequately identified and documented a legal claim based on any provision of the governing agreements in which the Debtors make promises as to what will happen in the future. More specifically, the standard forms of both the governing Mortgage Loan Sale and Assignment Agreements and Trust Agreements represent and warrant that "as of the Closing Date" some condition exists. *See, e.g.*, Trumpp Decl., Ex. B (Mortgage Loan Sale and Assignment Agreement for Lehman XS Trust 2006-1, Jan. 1, 2006, § 1.04(a) ("The seller hereby represents and warrants to the Depositor that as of the Closing Date . . ."); *see also id.* at §§ 1.04(b), 1.04(c). Accordingly, there is no future event that may give rise to liability; if there is a breach of the representations and warranties it occurred when the transaction closed. If there are breaches, the Claimants could have discovered them by now as they have for the six loans to which the Debtors did not object. Other than the six, however, the Claimants have not done so in the two and a half years since LBHI entered

9

553985

bankruptcy.

17.     Nor can the Claimants argue that liability is contingent on later identifying or waiting to discover a past breach. In the Response, the Claimants reveal their decision not to affirmatively search for past breaches when they say that "there may, however, be additional defects *discovered* in the future." (Response at 8 (emphasis added).) A future determination of liability for an event that has already occurred is not a contingent claim within the meaning of the Code. *See Mazzeo*, 131 F.3d at 303 ("Nor, by a future 'event,' do we refer to a judicial determination as to liability and relief . . . ."). The Claimants cannot seek payment from the estate simply by labeling claims as "contingent" when there is no valid state law claim underlying them. *See Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (recognizing that "bankruptcy courts [must] consult state law in determining the validity of most claims").

18.     The Claimants' use of the term "unliquidated" to describe its alleged losses also does not save its claims. "The concept of liquidation . . . relates only to the amount of liability not the existence of liability." *Mazzeo*, 131 F.3d at 304 (quotations omitted). To recover in bankruptcy, a claimant still must show that the debtor is liable, or at least that liability is contingent on some future event. *Id*. Labeling a claim "unliquidated" does not provide an avenue by which a claimant can recover from the estate without establishing liability; if it did, the claimants would rarely go to the trouble of establishing the debtor's liability for their claims, because they could recover from the estate simply by labeling the claim "unliquidated." As shown above, the Claimants have not met their burden of demonstrating liability by a preponderance of the evidence, so the Claimants are not entitled to an estimation of this portion of its claim based solely on the use of the term "unliquidated."

10

553985

19. The Claimants' position in their Response that their claims are contingent and seek only a fraction of the total value of the loans also flatly contradicts prior statements made by the Claimants. The Claimants state in their Response that they "do not contend that the Claims should be allowed in an amount equal to the aggregate amount of the underlying mortgage loans in each transaction; doing so would grossly overstate the amount of the Claims." (Response at 8.) However, the proof of claim that the Claimants attached to the Response states that "the Trustee holds claims against the Debtor in an amount *not less than $999,992,176.77*," the aggregate amount of the underlying mortgage loans in that proof of claim. (*See* Proof of Claim 22721 at 2 (attached by the Claimants to Response as Ex. A) (emphasis added).) Thus, by the Claimants' own admission, their proofs of claim "grossly overstate the amount of the Claims." (Response at 8.)

## **The Claims Should Be Disallowed**

20. The Claimants' failure to provide sufficient documentation should result in the disallowance of its unsupported claims. On January 14, 2010, this Court issued an order providing, in pertinent part:

> ORDERED that, notwithstanding anything to the contrary in Bankruptcy Rule 3007, the Debtors and other parties in interest are hereby authorized, in addition to those grounds set forth in Bankruptcy Rule 3007(d), to file Omnibus Claims Objections to claims seeking reduction, reclassification and/or *disallowance* of claims on one or more of the following grounds . . . :
>
> . . .
>
> d)    the Claims do not include *sufficient documentation* to ascertain the validity of the Claim . . . .

(Objection Procedures Order at 2 (emphasis added).)

21. In addition, the bankruptcy court has recently recognized that insufficient

11

553985

documentation provides a valid reason for disallowing a claim. In *Minbatiwalla*, JP Morgan Chase Bank N.A. asserted a secured claim against real estate owned by the debtor, attaching only a two-page statement that contained a summary of the principal, interest, and late charges allegedly owed by the debtor. 424 B.R. at 108. The debtor believed a different entity held the mortgage, and requested additional documentation from JP Morgan Chase to support its claim. *Id.* The bank did not provide the requested information. *Id.* The court concluded that "Chase's failure to attach documentation . . . and respond to the Debtor's information requests is fatal to" its claim. *Id.* at 118. Although "[s]ection 502(b) does not identify 'insufficient documentation' as a basis to disallow a claim[,] [c]ourts in this Circuit have sustained 'insufficient documentation objections' resulting in the disallowance of claims." *Id.* at 118-19 (citing *Porter*, 374 B.R. at 480). The court agreed with the rationale of *Porter*, holding "that in certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claims is not sufficient for the objector to concede the validity of a claim." *Id.* at 119. Applying that rule, the *Minbatiwalla* court held that, even though the claimant had attached to its claim the case number, last name of the debtor, part of the loan number, and a summary of the principal, interest, and late charges, "the Debtor requested additional information from the claimant . . . and has received no documents as of the date of the hearing on the claim objection." *Id.* at 120. On this basis, the court disallowed the claim.[5]

22.     In this case, the Claimants provided even less evidence than the claimant in

---

[5] Because the debtor had stated on his Schedule D that another party held a lien on the property in roughly the same amount, the court concluded that "it appears a lien exists on the Property" and thus gave JP Morgan Chase leave to refile the claim with supporting documentation establishing that it held the note and mortgage. *Id.*

12

*Minbatiwalla*, as they provided no evidence whatsoever that the Debtors breached any obligation under any contract with the Claimants. Thus, *Minbatiwalla* dictates that this Court should expunge the claims.

23. The Debtors acknowledge that the *Feinberg* court found that a failure to fully substantiate a claim is not a fatal error, but further delay in resolving these claims is inappropriate here considering the Claimants have had two and a half years since bankruptcy to determine a legal basis for their claims. 442 B.R. at 222. *Feinberg* held that:

> In response to the instant adversary proceeding, Bank of New York as Trustee by its servicer BAC Home Loans produced the original note and mortgage, client declarations explaining how the arrearages were computed, and proof of assignment of the mortgage, and proof that the representative making the assignment had the requisite authority to take such an action.

*Id.* The documentation described, which the court found necessary to avoid disallowance of the claim, constitutes the same documentation that the Debtors have repeatedly requested here; the process of obtaining it through the servicer, which the Claimants argue cannot be accomplished, constitutes the same means employed successfully by the *Feinberg* claimant. Moreover, the claimant in *Feinberg* produced the necessary documentation prior to the adversary proceeding, while the Claimants here have delayed two and a half years since bankruptcy and have produced nothing for literally 99.99% of the loans at issue despite ample opportunity and encouragement from the Debtor to do so.

## Conclusion

24. The Claimants have "set forth the legal and factual basis for the alleged claim" for only .008% of the loans on which they make a claim. First, the Claimants try to excuse this insufficiency by arguing that numbers supporting its damages calculation are legal evidence of a claim. Because there is no alleged legal basis for recovery, however, this argument fails,

13

553985

meaning their claims are not entitled to *prima facie* validity and the burden of persuasion by a preponderance of the evidence still rests with the Claimants. Next, the Claimants incorrectly label their claims as contingent and unliquidated, but their failure to discover breaches that have already occurred does not mean the claims are undiscoverable until a future date as the Bankruptcy Code envisioned. Finally, the Claimants seek yet another delay when they have already had multiple years and opportunities to come forth with the requested information. Such a remedy would needlessly prolong resolution of these matters.

WHEREFORE, for the reasons set forth above and in the Omnibus Objection, the Debtors respectfully request entry of an Order granting the relief requested herein and that the Court enter an order disallowing and expunging the claims submitted by the Claimants for which the Debtors are not liable and grant such other and further relief as the Court may deem just and appropriate.

Dated: June 28, 2011
New York, New York

/s/ Michael A. Rollin
Michael A. Rollin
REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110

Attorneys for Debtors
and Debtors in Possession

553985

## SCHEDULE I

## DISALLOWED CLAIMS

| Claimant Name | Claim Number |
|---|---|
| Citibank, N.A., in its Capacity as Trustee | 22606, 22639, 22717, 22720, 22721, 22775, 22776 |
| Wilmington Trust Company, as Trustee | 22766, 22773 |

553902

## SCHEDULE II

## DISALLOWED CLAIMS EXCEPT AS TO CERTAIN LOANS*[1]

| **Claimant Name** | **Claim Number** |
|---|---|
| Citibank, N.A., in its Capacity as Trustee | 22718, 22761 <br> *15 Loans |
| Citibank, N.A., in its Capacity as Trustee | 22605, 22719 <br> *2 Loans |
| Citibank, N.A., in its Capacity as Trustee | 22604, 22774 <br> *36 Loans |