| Nr. | 0455.240.893 | | C. 5.7 |
|-----|--------------|--|--------|

# STATEMENT OF CAPITAL AND STRUCTURE OF SHAREHOLDINGS

| | Codes | Period |
|---|-------|--------|
| **Shared issued, not representing capital** | | |
| Distribution | | |
| Number of shares held ............................... | 8761 | |
| Number of voting rights attached thereto ............ | 8762 | |
| Allocation by shareholder | | |
| Number of shares held by the company itself ......... | 8771 | |
| Number of shares held by its subsidairies ........... | 8781 | |

**STRUCTURE OF SHAREHOLDINGS OF THE ENTERPRISE AS AT THE ANNUAL BALANCING OF THE BOOKS, AS IT APPEARS FROM THE STATEMENT RECEIVED BY THE ENTERPRISE**

Citadel Tactical Inv. LLC: 68,14%
Börse Berlin AG: 9,90%
Knight Capital Group: 15,38%
Remaining shareholders: 6,58%

| Nr. | 0455.240.893 | | C 5.9 |

# STATEMENT OF AMOUNTS PAYABLE, ACCRUED CHARGES AND DEFERRED INCOME

## ANALYSIS BY CURRENT PORTIONS OF AMOUNTS INITIALLY PAYABLE AFTER MORE THAN ONE YEAR

| | Codes | Period |
|---|---|---|
| **Amounts payable after more than one year, not more than one year** | | |
| Financial debts .......................................................... | 8801 | |
| Subordinated loans ........................................... | 8811 | |
| Unsubordinated debentures ................................. | 8821 | |
| Leasing and other similar obligations ................... | 8831 | |
| Credit institutions .............................................. | 8841 | |
| Other loans ....................................................... | 8851 | |
| Trade debts ............................................................. | 8861 | |
| Suppliers ........................................................... | 8871 | |
| Bills of exchange payable ................................... | 8881 | |
| Advance payments received on contracts in progress | 8891 | |
| Other amounts payable ............................................ | 8901 | |
| **Total amounts payable after more than one year, not more than one year** ......... | (42) | |
| **Amounts payable after more than one year, between one and five years** | | |
| Financial debts .......................................................... | 8802 | 3.244.126,94 |
| Subordinated loans ........................................... | 8812 | |
| Unsubordinated debentures ................................. | 8822 | |
| Leasing and other similar obligations ................... | 8832 | |
| Credit institutions .............................................. | 8842 | |
| Other loans ....................................................... | 8852 | 3.244.126,94 |
| Trade debts ............................................................. | 8862 | |
| Suppliers ........................................................... | 8872 | |
| Bills of exchange payable ................................... | 8882 | |
| Advance payments received on contracts in progress | 8892 | |
| Other amounts payable ............................................ | 8902 | |
| **Total amounts payable after more than one year, between one and five years** ....... | 8912 | 3.244.126,94 |
| **Amounts payable after more than one year, over five years** | | |
| Financial debts .......................................................... | 8803 | |
| Subordinated loans ........................................... | 8813 | |
| Unsubordinated debentures ................................. | 8823 | |
| Leasing and other similar obligations ................... | 8833 | |
| Credit institutions .............................................. | 8843 | |
| Other loans ....................................................... | 8853 | |
| Trade debts ............................................................. | 8863 | |
| Suppliers ........................................................... | 8873 | |
| Bills of exchange payable ................................... | 8883 | |
| Advance payments received on contracts in progress ............ | 8893 | |
| Other amounts payable ............................................ | 8903 | |
| **Total amounts payable after more than one year, over five years** ............ | 8913 | |

Nr. | 0455.240.893

C 5.9

**AMOUNTS PAYABLE GUARANTEED** *(headings 17 and 42/48 of liabilities)*

| | Codes | Period |
|---|---|---|
| **Amounts payable guaranteed by Belgian public authorities** | | |
| Financial debts | 8921 | |
| Subordinated loans | 8931 | |
| Unsubordinated debentures | 8941 | |
| Leasing and other similar obligations | 8951 | |
| Credit institutions | 8961 | |
| Other loans | 8971 | |
| Trade debts | 8981 | |
| Suppliers | 8991 | |
| Bills of exchange payable | 9001 | |
| Advance payments received on contracts in progress | 9011 | |
| Remuneration and social security | 9021 | |
| Other amounts payable | 9051 | |
| **Total amounts payable guaranteed by Belgian public authorities** | 9061 | |
| **Amounts payable guaranteed by real guarantees given or irrevocably promised by the enterprise on its own assets** | | |
| Financial debts | 8922 | |
| Subordinated loans | 8932 | |
| Unsubordinated debentures | 8942 | |
| Leasing and other similar obligations | 8952 | |
| Credit institutions | 8962 | |
| Other loans | 8972 | |
| Trade debts | 8982 | |
| Suppliers | 8992 | |
| Bills of exchange payable | 9002 | |
| Advance payments received on contracts in progress | 9012 | |
| Taxes, remuneration and social security | 9022 | |
| Taxes | 9032 | |
| Remuneration and social security | 9042 | |
| Other amounts payable | 9052 | |
| **Total amounts payable guaranteed by real guarantees given or irrevocably promised by the enterprise on its own assets** | 9062 | |
| **AMOUNTS PAYABLE FOR TAXES, REMUNERATION AND SOCIAL SECURITY** | | |
| **Taxes** *(heading 450/3 of the liabilities)* | | |
| Expired taxes payable | 9072 | |
| Non expired taxes payable | 9073 | 355,29 |
| Estimated taxes payable | 450 | |
| **Remuneration and social security** *(heading 454/9 of the liabilities)* | | |
| Amount due to the National Office of Social Security | 9076 | |
| Other amounts payable relating to remuneration and social security | 9077 | 30.754,98 |

| Nr. | 0455.240.893 | | C 5.9 |
|---|---|---|---|

## ACCRUED CHARGES AND DEFERRED INCOME

**Allocation of the heading 492/3 of liabilities if the amount is considerable**

| | Period |
|---|---|
| Audit Costs | 6.680,00 |
| Fee accountant | 3.550,00 |
| Interest loan BSX | 152.895,80 |
| Deposit annual account | 309,65 |
| Withholding tax | 910,62 |

| Nr. | 0455.240.893 | | C 5.10 |
| --- | --- | --- | --- |

# OPERATING RESULTS

| | Codes | Period | Previous period |
| --- | --- | --- | --- |
| **OPERATING INCOME** | | | |
| **Net turnover** | | | |
| Broken down by categories of activity | | | |
| Allocation into geographical markets | | | |
| **Other operating income** | | | |
| Total amount of subsidies and compensatory amounts obtained from public authorities ........................................................................................ | 740 | | |
| **OPERATING COSTS** | | | |
| **Employees recorded in the personnel register** | | | |
| Total number at the closing date ............................................. | 9086 | 1 | 1 |
| Average number of employees calculated in full-time equivalents ...................... | 9087 | 1,0 | 1,3 |
| Number of actual worked hours ................................................ | 9088 | 1.839 | 2.493 |
| **Personnel costs** | | | |
| Remuneration and direct social benefits .................................... | 620 | 194.345,66 | 233.793,05 |
| Employers' social security contributions ................................... | 621 | 48.384,14 | 56.842,81 |
| Employers' premiums for extra statutory insurances ....................... | 622 | 14.487,63 | 14.677,96 |
| Other personnel costs ...................................................... | 623 | 1.615,30 | -3.542,03 |
| Old-age and widows' pensions .............................................. | 624 | | |
| **Provisions for pensions** | | | |
| Additions (uses and write-back) .................................... (+)/(-) | 635 | | |
| **Amounts written off** | | | |
| Stocks and contracts in progress | | | |
| Recorded ............................................................... | 9110 | | |
| Written back .......................................................... | 9111 | | |
| Trade debtors | | | |
| Recorded ............................................................... | 9112 | | |
| Written back .......................................................... | 9113 | 1.364.433,00 | 1.987,50 |
| **Provisions for risks and charges** | | | |
| Additions ................................................................. | 9115 | | |
| Uses and write-back ...................................................... | 9116 | | 308.898,94 |
| **Other operating charges** | | | |
| Taxes related to operation ................................................ | 640 | 852,50 | |
| Other charges ............................................................ | 641/8 | 2.013,47 | 77.916,74 |
| **Hired temporary staff and persons placed at the enterprise's disposal** | | | |
| Total number at the closing date .......................................... | 9096 | | |
| Average number calculated as full-time equivalents ....................... | 9097 | | |
| Number of actual worked hours ............................................ | 9098 | | |
| Charges to the enterprise ................................................. | 617 | | |

| Nr. | 0455.240.893 | | C 5.11 |
|-----|--------------|--|--------|

# FINANCIAL AND EXTRAORDINARY RESULTS

| | Codes | Period | Previous period |
|---|---|---|---|
| **FINANCIAL RESULTS** | | | |
| Other financial income | | | |
| Amount of subsidies granted by public authorities, credited to income for the period | | | |
|     Capital subsidies ............................................. | 9125 | | |
|     Interest subsidies ........................................... | 9126 | | |
| Allocation of other financial income | | | |
|     Interest bank account | | 20.539,72 | 33.253,52 |
|     Interest deposit account | | | 8.283,28 |
|     Favorable exchange rate differences | | 38.633,01 | |
|     Other interests | | 10.735,26 | |
| Amounts written down off loan issue expenses and repayment premiums ....... | 6501 | | |
| Interests recorded as assets ................................ | 6503 | | |
| Value adjustments to current assets | | | |
|     Appropriations ................................................. | 6510 | | |
|     Write-backs ..................................................... | 6511 | | |
| Other financial charges | | | |
| Amount of the discount borne by the enterprise, as a result of negotiating amounts receivable ................................................. | 653 | | |
| Provisions of a financial nature | | | |
|     Appropriations ................................................. | 6560 | | |
|     Uses and write-backs ....................................... | 6561 | | |
| Allocation of other financial charges | | | |
|     Exchange rates | | | 32.694,80 |
|     Bank costs | | 3.136,36 | 3.669,48 |
|     Payment differences | | | 0,51 |

# EXTRAORDINARY RESULTS

| | Period |
|---|---|
| **Allocation other extraordinary income** | |
|     Compensation insurance | 91,73 |
|     Settlement tax administration | 1.039,69 |
| **Allocation other extraordinary charges** | |

| Nr. | 0455.240.893 | | C 5.12 |
|---|---|---|---|

# INCOME TAXES AND OTHER TAXES

|  | Codes | Period |
|---|---|---|
| **INCOME TAXE** | | |
| Income taxes on the result of the current period | 9134 | |
|    Income taxes paid and withholding taxes due or paid ............................ | 9135 | 3.563,28 |
|    Excess of income tax prepayments and withholding taxes recorded under assets ............ | 9136 | 3.563,28 |
|    Estimated additional taxes ............................ | 9137 | |
| Income taxes on previous periods | 9138 | |
|    Taxes and withholding taxes due or paid ............................ | 9139 | |
|    Estimated additional taxes estimated or provided for ............................ | 9140 | |

In so far as income taxes of the current period are materially affected by differences between the profit before taxes, as stated in the annual accounts, and the estimated taxable profit

An indication of the effect of extraordinary results on the amount of income taxes relating to the current period

|  | Codes | Period |
|---|---|---|
| **Status of deferred taxes** | | |
| Deferred taxes representing assets ............................ | 9141 | 151.741.931,30 |
|    Accumulated tax losses deductible from future taxable profits ............ | 9142 | 151.741.931,30 |
|    Other deferred taxes representing assets | | |
| Deferred taxes representing liabilities | 9144 | |
|    Allocation of deferred taxes representing liabilities | | |

|  | Codes | Period | Previous Period |
|---|---|---|---|
| **THE TOTAL AMOUNT OF VALUE ADDED TAX AND TAXES BORNE BY THIRD PARTIES** | | | |
| The total amount of value added tax charged | | | |
|    To the enterprise (deductible) ............................ | 9145 | 40.223,36 | 47.733,02 |
|    By the enterprise ............................ | 9146 | | 938,51 |
| Amounts retained on behalf of third parties for | | | |
|    Payroll withholding taxes ............................ | 9147 | 73.803,96 | 84.369,46 |
|    Withholding taxes on investment income ............................ | 9148 | | |

| Nr. | 0455.240.893 | | C 5.13 |

## RIGHTS AND COMMITMENTS NOT REFLECTED IN THE BALANCE SHEET

| | Code | Period |
|---|---|---|

**PERSONAL GUARANTEES GIVEN OR IRREVOCABLY PROMISED BY THE ENTERPRISE AS SECURITY FOR DEBTS AND COMMITMENTS OF THIRD PARTIES** .......................................... | 9149 | ———————

**Of which**

Bills of exchange in circulation endorsed by the enterprise ........................................ | 9150 |

Bills of exchange in circulation drawn or guaranteed by the enterprise ........................................ | 9151 |

Maximum amount for which other debts or commitments of third parties are guaranteed by the enterprise ........................................ | 9153 |

### REAL GUARANTEES

**Real guarantees given or irrevocably promised by the enterprise on its own assets as a security of debts and commitments from the enterprise**

Mortgages

Book value of the immovable properties mortgaged ........................................ | 9161 |

Amount of registration ........................................ | 9171 |

Pledging on goodwill - amount of registration ........................................ | 9181 |

Pledging of other assets - Book value of other assets pledged ........................................ | 9191 |

Guarantees provided on future assets - Amount of assets involved ........................................ | 9201 |

**Real guarantees given or irrevocably promised by the enterprise on its own assets as a security of debts and commitments from third parties**

Mortgages

Book value of the immovable properties mortgaged ........................................ | 9162 |

Amount of registration ........................................ | 9172 |

Pledging on goodwill - amount of registration ........................................ | 9182 |

Pledging of other assets - Book value of other assets pledged ........................................ | 9192 |

Guarantees provided on future assets - Amount of assets involved ........................................ | 9202 |

## GOODS AND VALUES, NOT DISCLOSED IN THE BALANCE SHEET, HELD BY THIRD PARTIES IN THEIR OWN NAME BUT AT RISK TO AND FOR THE BENEFIT OF THE ENTERPRISE

## SUBSTANCIAL COMMITMENTS TO ACQUIRE FIXED ASSETS

## SUBSTANCIAL COMMITMENTS TO DISPOSE FIXED ASSETS

## FORWARD TRANSACTIONS

Goods purchased (to be received) ........................................ | 9213 |

Goods sold (to be delivered) ........................................ | 9214 |

Currencies purchased (to be received) ........................................ | 9215 |

Currencies sold (to be delivered) ........................................ | 9216 |

## INFORMATION RELATING TO TECHNICAL GUARANTEES, IN RESPECT OF SALES OR SERVICES

## INFORMATION CONCERNING IMPORTANT LITIGATION AND OTHER COMMITMENTS NOT MENTIONED ABOVE

A cash amount of EUR 637.000 has been pledged in favour of Börse Berlin AG to guarantee that Easdaq is able to indemnify Boerse Berlin for the amount of unrecovered project investment cost that LCH.Clearnet Ltd contractually can charge to Börse Berlin. Boerse Berlin entered into that contract on request of Easdaq . Boerse Berlin will be charged after the initial 3 year period of the contract in case the revenue that is generated at LCH.Clearnet Ltd through the transactions Equiduct sends to them for clearing, does not compensate the project investment cost of LCH.Clearnet Ltd. Currently the opinion of management is that there is a negligible chance that we shall have to pay anything at all.



| Nr. | 0455.240.893 | | C 5.13 |
| --- | --- | --- | --- |

## RIGHTS AND COMMITMENTS NOT REFLECTED IN THE BALANCE SHEET

**IF THEREIS A SUPPLEMENTARY RETIREMENTS OR SURVIVOR'S PENSION PLAN IN FAVOUR OF THE PERSONNEL OR THE EXECUTIVES OF THE ENTERPRISE, A BRIEF DESCRIPTION OF SUCH PLAN OF THE MEASURES TAKEN BY THE ENTERPRISE TO COVER THE RESULTING CHARGES**

| | | Code | Period |
| --- | --- | --- | --- |
| **PENSIONS FUNDED BY THE ENTERPRISE** | | | |
| Estimated amount of the commitments resulting for the enterprise from past services ........................ | | 9220 | |

Methods of estimation

## NATURE AND BUSINESS PURPOSE OF OFF-BALANCE SHEET ARRANGEMENTS

**Provided the risks or benefits arising from such arrangements are material and where the disclosure of such risks or benefits is necessary for assessing the financial position of the company; if required, the financial impact of these arrangements have to be mentioned too:**



| Nr. | 0455.240.893 | | C 5.14 |

# RELATIONSHIPS WITH AFFILIATED ENTERPRISES AND ENTERPRISES LINKED BY PARTICIPATING INTERESTS

|  | Codes | Period | Previous period |
|---|---|---|---|
| **AFFILIATED ENTERPRISES** | | | |
| Financial fixed assets ......................................................... | (280/1) | 1.364.442,00 | |
| Investments ............................................... | (280) | 1.364.442,00 | |
| Amounts receivable subordinated ................... | 9271 | | |
| Other amounts receivable ............................. | 9281 | | |
| Amounts receivable ......................................................... | 9291 | 58.025,02 | 154.616,00 |
| After one year ............................................. | 9301 | | |
| Within one year ........................................... | 9311 | 58.025,02 | 154.616,00 |
| Current Investments ......................................................... | 9321 | | |
| Shares ....................................................... | 9331 | | |
| Amounts receivable ..................................... | 9341 | | |
| Amounts payable ............................................................ | 9351 | 4.732.103,75 | 3.881.018,67 |
| After one year ............................................. | 9361 | 3.244.126,94 | 3.244.126,94 |
| Within one year ........................................... | 9371 | 1.487.976,81 | 636.891,73 |
| Personal and real guarantees | | | |
| Provided or irrevocably promised by the enterprise, as security for debts or commitments of affiliated enterprises ......... | 9381 | | |
| Provided or irrevocably promised by affiliated enterprises as security for debts or commitments of the enterprise ........... | 9391 | | |
| Other substantial financial commitments ................................ | 9401 | | |
| Financial results | | | |
| Income from financial fixed assets ................. | 9421 | | |
| Income from current assets ........................... | 9431 | | |
| Other financial income ................................. | 9441 | | |
| Debts charges ............................................. | 9461 | | 116.252,10 |
| Other financial charges ................................ | 9471 | | |
| Gains and losses on disposal of fixed assets | | | |
| Obtained capital gains ................................. | 9481 | | |
| Obtained capital losses ................................ | 9491 | | |
| **ENTERPRISES LINKED BY PARTICIPATING INTERESTS** | | | |
| Financial fixed assets ....................................................... | (282/3) | | |
| Investments ............................................... | (282) | | |
| Amounts receivable subordinated ................... | 9272 | | |
| Other amounts receivable ............................. | 9282 | | |
| Amounts receivable ......................................................... | 9292 | | |
| After one year ............................................. | 9302 | | |
| Within one year ........................................... | 9312 | | |
| Amounts payable ............................................................ | 9352 | | |
| After one year ............................................. | 9362 | | |
| Within one year ........................................... | 9372 | | |

| Nr. | 0455.240.893 | | C 5.14 |

## RELATIONSHIPS WITH AFFILIATED ENTERPRISES AND ENTERPRISES LINKED BY PARTICIPATING INTERESTS

**TRANSACTIONS WITH RELATED PARTIES OUTSIDE NORMAL MARKET CONDITIONS**

**Mention of such operations if they are material, stating the amount of these transactions, the nature of the relationship with the related party and other information about the transactions necessary for the understanding of the financial position of the company:**

| Period |
| --- |
|  |

| Nr. | 0455.240.893 | | C 5.15 |

# FINANCIAL RELATIONSHIPS WITH

| | Codes | Period |
|---|---|---|

**DIRECTORS AND MANAGERS, INDIVIDUALS OR BODIES CORPORATE WHO CONTROL THE ENTERPRISE WITHOUT BEING ASSOCIATED THEREWITH OR OTHER ENTERPRISES CONTROLLED BY THESE PERSONS, OTHER ENTERPRISES CONTROLLED BY THE SUB B. MENTIONED PERSONS WITHOUT BEING ASSOCIATED THEREWITH**

| | Codes | Period |
|---|---|---|
| Amounts receivable from these persons | 9500 | |
|    Conditions on amounts receivable | | |
| Guarantees provided in their favour | 9501 | |
|    Guarantees provided in their favour - Main condition | | |
| Other significant commitments undertaken in their favour | 9502 | |
|    Other significant commitments undertaken in their favour - Main condition | | |
| Amount of direct and indirect remunerations and pensions, included in the income statement, as long as this disclosure does not concern exclusively or mainly, the situation of a single identifiable person | | |
|    To directors and managers .................................................................................... | 9503 | |
|    To former directors and former managers .......................................................... | 9504 | |

| | Codes | Period |
|---|---|---|
| **AUDITORS OR PEOPLE THEY ARE LINKED TO** | | |
| Auditor's fees .............................................................................................. | 9505 | 7.500,00 |
| Fees for exceptional services or special missions executed in the company by the auditor | | |
|    Other attestation missions ........................................................................ | 95061 | |
|    Tax consultancy ........................................................................................ | 95062 | |
|    Other missions external to the audit .......................................................... | 95063 | 11.250,00 |
| Fees for exceptional services or special missions executed in the company by people they are linked to | | |
|    Other attestation missions ........................................................................ | 95081 | |
|    Tax consultancy ........................................................................................ | 95082 | |
|    Other missions external to the audit .......................................................... | 95083 | |

Mention related to article 133 paragraph 6 from the Companies Code

| Nr. | 0455.240.893 | | C 5.17.1 |
|---|---|---|---|

## INFORMATION RELATING TO CONSOLIDATED ACCOUNTS

## INFORMATION THAT MUST BE PROVIDED BY EACH COMPANY, THAT IS SUBJECT OF COMPANY LAW ON THE CONSOLIDATED ANNUAL ACCOUNTS OF ENTERPRISES

~~The enterprise has drawn up publiced a consolidated annual statement of accounts and a management report*~~

The enterprise has not published a consolidated annual statement of accounts and a management report, since it is exempt for this obligation for the following reason*

    The enterprise and its subsidiaries on consolidated basis exceed not more than one of the limits mentioned in art. 16 of Company Law*

    ~~The enterprise itself is a subsidiary of an enterprise which does prepare and publish consolidated accounts, in which her yearly statement of accounts is included*~~

        If yes, justification of the compliance with all conditions for exemption set out in art. 113 par. 2 and 3 of Company Law:

    Name, full address of the registered office and, for an enterprise governed by Belgian Law, the company number of the parent company preparing and publishing the consolidated accounts required:

## INFORMATION TO DISCLOSE BY THE REPORTING ENTERPRISE BEING A SUBSIDIARY OR A JOINT SUBSIDIARY

    Name, full address of the registered office and, for an enterprise governed by Belgian Law, the company number of the parent company(ies) and the specification whether the parent company(ies) prepare(s) and publish(es) consolidated annual accounts in which the annual accounts of the enterprise are included**

    If the parent company(ies) is (are) (an) enterprise(s) governed by foreign law disclose where the consolidated accounts can be obtained**

---

  *   Delete where no appropriate.
  **  Where the accounts of the enterprise are consolidated at different levels, the information should be given for the consolidated aggregate at the highest level on the one hand and the lowest level on the other hand of which the enterprise is a subsidiary and for which consolidated accounts are prepared and published.



26/29

| Nr. | 0455.240.893 | | C 6 |
|-----|--------------|---|-----|

## SOCIAL REPORT

Numbers of joint industrial committees which are competent for the enterprise: 218

**STATEMENT OF THE PERSONS EMPLOYED**
**EMPLOYEES RECORDED IN THE STAFF REGISTER**

| During the period and the previous period | Codes | 1. Full-time (period) | 2. Part-time (period) | 3. Total (T) or total of full-time equivalents (FTE) (period) | 3P.Total (T) or total of full-time equivalents (FTE) (previous period) |
|---|---|---|---|---|---|
| Average number of employees .......... | 100 | 1,0 | | 1,0   (FTE) | 1,3   (FTE) |
| Number of hours actually worked ....... | 101 | 1.839 | | 1.839   (T) | 2.493   (T) |
| Personnel costs ................................. | 102 | 258.832,73 | | 258.832,73   (T) | 301.771,79   (T) |
| Advantages in addition to wages ........ | 103 | xxxxxxxxxxxxxx | xxxxxxxxxxxxx | (T) | (T) |

| At the closing date of the period | Codes | 1. Full-time | 2. Part-time | 3. Total in full-time equivalents |
|---|---|---|---|---|
| Number of employees recorded in the personnel register | 105 | 1 | | 1,0 |
| **By nature of the employment contract** | | | | |
| Contract for an indefinite period ..................................... | 110 | 1 | | 1,0 |
| Contract for a definite period ......................................... | 111 | | | |
| Contract for the execution of a specifically assigned work | 112 | | | |
| Replacement contract ..................................................... | 113 | | | |
| **According to the gender and by level of education** | | | | |
| Male ........................................................................... | 120 | 1 | | 1,0 |
| primary education ...................................................... | 1200 | | | |
| secondary education .................................................. | 1201 | | | |
| higher education (non-university) ............................... | 1202 | | | |
| university education ................................................... | 1203 | 1 | | 1,0 |
| Female ....................................................................... | 121 | | | |
| primary education ...................................................... | 1210 | | | |
| secondary education .................................................. | 1211 | | | |
| higher education (non-university) ............................... | 1212 | | | |
| university education ................................................... | 1213 | | | |
| **By professional category** | | | | |
| Management staff ........................................................ | 130 | | | |
| Employees ................................................................... | 134 | 1 | | 1,0 |
| Workers ...................................................................... | 132 | | | |
| Other .......................................................................... | 133 | | | |



| Nr. | 0455.240.893 |
|-----|--------------|

| | C 6 |
|--|-----|

## HIRED TEMPORARY STAFF AND PERSONNEL PLACED AT THE ENTERPRISE'S DISPOSAL

| During the period | Codes | 1. Temporary personnel | 2. Persons placed at the disposal of the enterprise |
|---|---|---|---|
| Average number of employees ..................................... | 150 | | |
| Number of hours actually worked ................................. | 151 | | |
| Charges of the enterprise ........................................... | 152 | | |

## TABLE OF PERSONNEL CHANGES DURING THE PERIOD

| ENTRIES | Codes | 1. Full-time | 2. Part-time | 3. Total in full-time equivalents |
|---|---|---|---|---|
| Number of employees recorded on the personnel register during the financial year ............... | 205 | | | |
| By nature of the employment contract | | | | |
| Contract for an indefinite period ................................ | 210 | | | |
| Contract for a definite period ..................................... | 211 | | | |
| Contract for the execution of a specifically assigned work .. | 212 | | | |
| Replacement contract .............................................. | 213 | | | |

| DEPARTURES | Codes | 1. Full-time | 2. Part-time | 3. Total in full-time equivalents |
|---|---|---|---|---|
| The number of employees with a in the staff register listed date of termination of the contract during the period ------- | 305 | | | |
| By nature of the employment contract | | | | |
| Contract for an indefinite period ........................................ | 310 | | | |
| Contract for a definite period ........................................... | 311 | | | |
| Contract for the execution of a specifically assigned work . | 312 | | | |
| Replacement contract ........................................... | 313 | | | |
| According to the reason for termination of the employment contract | | | | |
| Retirement ..................................................... | 340 | | | |
| Early retirement .................................................. | 341 | | | |
| Dismissal ....................................................... | 342 | | | |
| Other reason ................................................... | 343 | | | |
| Of which    the number of persons who continue to render services to the enterprise at least half-time on a self-employed basis .......... | 350 | | | |

| Nr. | 0455.240.893 | | | C 6 |

**INFORMATION WITH REGARD TO TRAINING RECEIVED BY EMPLOYEES DURING THE PERIOD**

| | Codes | Male | Codes | Female |
|---|---|---|---|---|
| **Total number of official advanced professional training projects at company expense** | | | | |
| Number of participating employees .............................................. | 5801 | | 5811 | |
| Number of training hours ............................................................. | 5802 | | 5812 | |
| Costs for the company ................................................................ | 5803 | | 5813 | |
| of which gross costs directly linked to the training ........................ | 58031 | | 58131 | |
| of which paid contributions and deposits in collective funds ................ | 58032 | | 58132 | |
| of which received subsidies (to be deducted)........................................ | 58033 | | 58133 | |
| **Total number of less official and unofficial advance professional training projects at company expense** | | | | |
| Number of participating employees .............................................. | 5821 | | 5831 | |
| Number of training hours ............................................................. | 5822 | | 5832 | |
| Costs for the company ................................................................ | 5823 | | 5833 | |
| **Total number of initial professional training projects at company expense** | | | | |
| Number of participating employees .............................................. | 5841 | | 5851 | |
| Number of training hours ............................................................. | 5842 | | 5852 | |
| Costs for the company ................................................................ | 5843 | | 5853 | |



GEWONE ALGEMENE VERGADERING VAN EASDAQ NV

---

**Volmacht**

---

**Gelieve deze volmacht (die werd vastgesteld door de Raad als standaard volmachtformulier overeenkomstig artikel 30 van de statuten) waar nodig in te vullen en te ondertekenen indien u wenst te worden vertegenwoordigd op de gewone algemene vergadering van Easdaq NV, die zal worden gehouden op of rond 23 juni 2011. Gelieve deze volmacht onmiddellijk na ontvangst, correct ingevuld en ondertekend, via koerier of per fax (+44(0)20 3102 4482) te bezorgen aan EASDAQ NV, 3000 Leuven, Lei 19 bus 11, ter attentie van de heer Anthony Ball (CFO Equiduct Systems Limited), en dit ten laatste op 21 Juni 2011.**

**Alle houders van aandelen op naam dienen, overeenkomstig artikel 29 van de statuten, om toegelaten te worden tot de AV, de Raad kennis te geven van hun intentie de AV bij te wonen, via e-mail op investor-relations@equiduct.eu en dit ten laatste op 21 Juni 2011.**

---

**Ondergetekende:**

**Naam:** _____

**Adres/Zetel:** _____

_____

**Houder van aantal aandelen:** _____

**Stelt als bijzondere lasthebber aan**, individueel en met de macht om in de plaats te stellen:

Anthony Ball, 19 Coleford Road, SW18 1AD, London, Verenigd Koninkrijk

aan wie ondergetekende volmacht verleent om hem/haar te vertegenwoordigen op de gewone algemene vergadering van de vennootschap Easdaq NV, met zetel te Lei 19 bus 11, B-3000 Leuven (België) (ondernemingsnummer 0455.240.893 – RPR Leuven), die zal worden gehouden op de kantoren van Berquin Notarissen, Lloyd Georgelaan 11 te 1000 Brussel, op 23 juni 2011 om 10:00 CET, en die zal beraadslagen omtrent de agenda vermeld als bijlage bij de oproepingsbrief.

De lasthebber mag ondermeer, zonder hiertoe beperkt te zijn:

GEWONE ALGEMENE VERGADERING VAN EASDAQ NV

- Deelnemen aan elke vergadering met dezelfde agenda voor het geval de eerste vergadering niet geldig zou kunnen beraadslagen of niet zou worden (kunnen) gehouden op de hierboven vermelde datum en uur.

- Deelnemen aan alle beraadslagingen en in naam van ondergetekende alle voorstellen die betrekking hebben op de agenda goedkeuren.

- Verklaren dat ondergetekende zichzelf als regelmatig opgeroepen beschouwt, dat hij/zij de bepalingen kent van de artikelen 64 1°, 178, 533 en 535 van het Wetboek van vennootschappen, en dat hij/zij verzaakt aan de oproepingsformaliteiten en -termijn en aan het instellen van een eventuele nietigheidsvordering wegens een onregelmatigheid naar de vorm.

- Verklaren dat ondergetekende de verslagen vermeld op de agenda vooraf heeft ontvangen, dat hij/zij over voldoende tijd beschikte om deze verslagen grondig te bestuderen en dat hij/zij geen vragen of opmerkingen heeft betreffende deze verslagen.

- In het algemeen, stemmen voor alle voorstellen betreffende de agendapunten.

- In het algemeen, alle processen-verbaal, aanwezigheidslijsten, overeenkomsten, bevestigingen, kennisgevingen en ieder ander document tekenen, in de plaats stellen en, in het algemeen, alles doen dat nuttig of noodzakelijk is voor de uitvoering van deze volmacht, voor zover nodig met belofte van bekrachtiging.

Instructies aan de lasthebber

Ondergetekende geeft hierbij uitdrukkelijk opdracht aan de lasthebber om deel te nemen aan de gewone algemene vergaderingen, zelfs indien het bewijs niet voorligt dat de aandeelhouders, de bestuurders, de commissaris en/of de andere relevante houders van effecten geldig zijn opgeroepen tot de gewone algemene vergaderingen en, voor zover toepasselijk, indien de betrokkenen niet allen hebben verzaakt aan (i) de termijnen en de vormvereisten voor oproeping tot de gewone algemene vergaderingen en (ii) het recht om bepaalde verslagen en andere documenten te ontvangen, zoals voorgeschreven door de relevante artikelen van het Wetboek van vennootschappen.

Schadeloosstelling van de lasthebbers

Ondergetekende verbindt er zich hierbij toe om de lasthebber schadeloos te stellen voor elke schade die hij/zij zou kunnen oplopen ten gevolge van enige handeling gesteld ter uitvoering van deze volmacht, op voorwaarde evenwel dat hij/zij de grenzen van zijn/haar bevoegdheden heeft nageleefd. Verder verbindt ondergetekende zich ertoe niet de nietigheid van enig besluit goedgekeurd door de lasthebber te vorderen en geen enkele schadevergoeding van hem/haar te vorderen, op voorwaarde evenwel dat laatstgenoemde de grenzen van zijn/haar bevoegdheden heeft nageleefd.

GEWONE ALGEMENE VERGADERING VAN EASDAQ NV

**Gedaan te:** _____(plaats),

**Op:** _____(datum).


_____          _____
(handtekening)                          (handtekening)


_____          _____
(naam)                                  (naam)


_____          _____
(functie)                               (functie)

*Annual general meeting Easdaq NV on or about 23 June 2011*

*Unofficial English translation of a Dutch original*

## Power of attorney

Please fill out and sign this proxy (which is the proxy format fixed by the Board in accordance with Article 30 of the Articles of Association) in the appropriate spaces if you wish to be represented at the annual general meeting of EASDAQ NV, to be held on or about 23 June 2011 (the "AGM"). Please send this proxy, duly completed and signed, immediately upon receipt by express courier or telefax (+44(0)20 3102 4482) to EASDAQ NV, 3000 Leuven, Lei 19, Box 11, for the attention of Mr. Anthony Ball (CFO of Equiduct Systems Limited), <u>at the latest on 21 June 2011</u>.

In accordance with Article 29 of the Articles of Association, in order to be admitted to the AGM, all owners of registered shares must notify the Board of their intention to attend the AGM by e-mail at <u>investor-relations@equiduct.eu</u> at the latest on 21 June 2011.

### PLEASE ALSO FILL OUT AND SIGN THE DUTCH PROXY FORM ACCORDINGLY

The undersigned:

**Name:** _____

**Address/registered office:** _____

_____

**Holder of number of shares:** _____

**Appoints as its special proxyholder**, individually and with full power of substitution:

Mr. Anthony Ball, 19 Coleford Road, SW18 1AD, London, United Kingdom,

to whom the undersigned gives power of attorney to represent it for the purposes of the annual general meeting of the company Easdaq NV, having its registered offices at Lei 19 box 11, B-3000 Leuven (Belgium) (number 0455.240.893 – RPR Leuven) that will be held at the offices of Berquin Notarissen, Lloyd Georgelaan 11, B-1000 Brussels, on or about 23 June 2011 at 10:00 am CET, and that shall resolve on the agenda attached to the notice.

## The proxyholder may, amongst other things, without limitation:

- Participate in any meeting with the same agenda (possibly, except for minor details) in case the first meeting could not validly deliberate or could not be held on the date mentioned above.

- Participate in all deliberations and in the name and on behalf of the undersigned resolve to approve all proposals in relation to the agenda.

- Declare that the undersigned considers itself as having been validly convened, that it is aware of the provisions of sections 64,1°, 178, 533 and 535 of the Belgian Company Code, and that it renounces to the notice period and formalities and to the right to initiate a possible claim to obtain the nullity of any decision taken on the basis of a formal irregularity.

- Declare that the undersigned has received in advance all reports mentioned on the agenda, that it had sufficient time to review them and that it has no questions regarding or remarks in relation to these reports.

- In general, vote in favour of all proposals contained in the agenda.

- In general, to execute all minutes, attendance lists, agreements, confirmations, notifications and any other document, to substitute and, in general, to do all that is useful or necessary for the performance of this power of attorney, with a promise of ratification, to the extent necessary.

## Instructions to the proxyholder

The undersigned hereby explicitly authorizes and instructs the proxyholder to take part in the annual general meeting, even if no proof is presented that the shareholders, the directors, the statutory auditor and/or the other relevant holders of securities have been validly convened for the annual general meeting and, to the extent applicable, if not all relevant parties have renounced to (i) the notice terms and formalities for the annual general meeting and (ii) the right to receive specific reports and other documents, as provided by the relevant sections of the Belgian Companies Code.

## Indemnification of the proxyholder

The undersigned undertakes to indemnify the proxyholder for any damage it could sustain as a result of any action undertaken by the proxyholder in performing this power of attorney, to the extent that the proxyholder has observed the limits of its powers. In addition, the undersigned undertakes not to claim the nullity of any resolution approved by the proxyholder

*Annual general meeting Easdaq NV on or about 23 June 2011*

*Unofficial English translation of a Dutch original*

and not to claim any damages from it, to the extent that the proxyholder has observed the limits of its powers.

**Done on:**_____(date).


_____                    _____

(signature)                                             (signature)


_____                    _____

(name)                                                 (name)


_____                    _____

(function)                                             (function)



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel +32 16 28 41 10** • **Fax +32 16 28 41 11** • RPR Leuven, VAT BE 0455.

## EASDAQ

Naamloze vennootschap
Maatschappelijke zetel: Lei 19 Bus 11,
B-3000 Leuven, België

RPR Leuven 0455.240.893

(de "Vennootschap")

---

**UITNODIGING VOOR DE BUITENGEWONE ALGEMENE VERGADERING VAN AANDEELHOUDERS VAN
EASDAQ NV DIE ZAAL PLAATSVINDEN OP OF ROND 23 JUNI 2011**

---

*Per aangetekend schrijven.*
*De Bijlagen maken integraal uit van deze uitnodiging.*

Hierbij worden de aandeelhouders, warranthouders, bestuurders en commissaris van EASDAQ NV (de "Vennootschap") uitgenodigd voor een Buitengewone Algemene Vergadering van de aandeelhouders van de Vennootschap ("BAV") die zal plaatsvinden in de kantoren van of Berquin Notarissen, **Lloyd Georgelaan 11, B-1000 Brussel**, om **11:00 CET** op **23 juni 2011**, om te beraadslagen en te beslissen over de punten en voorstellen die hierna zijn uiteengezet.

### Agenda

1. Kennisname van de uitoefening van de Knight Warrant, aan een uitoefenprijs van EUR 4.192.485,39, volledig opgenomen in het kapitaal van de Vennootschap en onmiddellijk volledig volstort, en de uitgifte van 6.024.214 nieuwe gewone aandelen aan Knight Capital Group, Inc.

2. Beslissing tot wijziging van de statuten van de vennootschap substantieel in de vorm zoals hier aangehecht (Bijlage 1).

3. Kennisname en bespreking van het bijzonder verslag van de raad van bestuur overeenkomstig artikel 604 van het Wetboek van vennootschappen ("W. Venn.") met betrekking tot de hernieuwing en wijziging van het toegestaan kapitaal (Bijlage 2).

4. Machtiging aan de Raad van Bestuur om het maatschappelijk kapitaal van de vennootschap te verhogen, in één of meerdere keren, tot een maximum totaal bedrag van EUR 50.000.000; wijziging van de statuten met betrekking tot het toegestaan kapitaal in overeenstemming met het bijzonder verslag van de Raad van Bestuur overeenkomstig artikel 604 W. Venn., aan deze agenda gehecht als Bijlage 2.



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.

5. Volmacht, met mogelijkheid tot indeplaatsstelling, om de nodige formaliteiten te vervullen in verband met de "Kruispuntbank voor Ondernemingen", het "Ondernemingsloket" en de BTW, indien nodig.

6. Volmacht, met mogelijkheid tot indeplaatsstelling, om een gecoördineerde tekst van de statuten op te stellen, te ondertekenen en neer te leggen op de griffie van de bevoegde rechtbank van koophandel

Overeenkomstig artikel 29 van de statuten, dient iedere eigenaar van aandelen op naam, om te worden toegelaten tot de BAV, zijn intentie om aan de BAV deel te nemen, kenbaar te maken aan de raad van bestuur per e-mail aan at investor-relations@equiduct.eu, en dit ten laatste op 21 juni 2011.

Overeenkomstig artikel 30 van de statuten, heeft de raad van bestuur de vorm van de volmachten vastgesteld. Gelieve, aangehecht als Bijlage 3 een kopie te vinden van dit volmachtformulier dat kan worden ingevuld en bezorgd op de zetel van de Vennootschap, en dit ten laatste op 21 juni 2011.

Voor de raad van bestuur,

Artur Fischer
Voorzitter en bijzondere volmachthouder

_Bijlagen (die integraal deel uitmaken van deze oproeping):_
1. Voorstel tot aanpassing van de statuten van de Vennootschap
2. Bijzonder verslag van de Raad van Bestuur overeenkomstig artikel 604 W. Venn.
3. Volmachtformulier voor aandeelhouders

*Unofficial English translation of a Dutch original*



**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

**EASDAQ**

Limited liability company
Registered office: Lei 19 Box 11, 3000 Leuven
Company number: 0455.240.893

(the "**Company**")

**NOTICE FOR THE EXTRAORDINARY GENERAL MEETING OF THE SHAREHOLDERS OF EASDAQ NV TO BE HELD ON OR ABOUT 23 JUNE 2011**

*By registered mail.*
*The Exhibits constitute an integral part of this notice.*

Notice is hereby given to the shareholders, warrant holders, directors and statutory auditor of EASDAQ NV (the "**Company**") for the Extraordinary General Meeting of the Company's shareholders (the "**EGM**") to be held at the offices of Berquin Notarissen, **1000 Brussels, Lloyd Georgelaan 11**, at **11.00 a.m. CET** on **23 June 2011**, to discuss and decide on the items and proposals set out in the following agenda.

<u>**Agenda**</u>

1. Acknowledgement of the exercise of the Knight Warrant, at an exercise price of EUR 4,192,485.39, fully incorporated into the Company's capital and immediately fully paid up, and the issue of 6,024,214 new ordinary shares to Knight Capital Group, Inc.

2. Resolution to amend the Company's Articles of Association substantially in the form as attached hereto (<u>Exhibit 1</u>).

3. Acknowledgement of the Special Report of the Board of Directors prepared in accordance with Article 604 BCC in respect of the renewal and amendment of the authorized capital (<u>Exhibit 2</u>).

4. Authorization to the Board of Directors to increase the Company's share capital, in one or several times, up to a maximum aggregate amount of EUR 50,000,000; amendment of the Articles of Association in relation to the authorized capital in accordance with the special report of the Board of Directors in accordance with Article 604 BCC, attached to this agenda as <u>Exhibit 2</u>;

5. Power of attorney, with power of substitution, to satisfy the required formalities in connection with the "Crossroad Bank for Enterprises", the "Business One-Stop Shops" and the value added tax, if required.

6. Power of attorney, with power of substitution, to draw up a restated version of the Articles of Association, execute such restated Articles of Association, and file such restated Articles of Association with the clerk's office of the competent commercial court.

In accordance with Article 29 of the Articles of Association, in order to be admitted to the EGM, all owners of registered shares must notify the Board of their intention to attend the EGM by e-mail at investor-relations@equiduct.eu at the latest on 21 June 2011.

In accordance with Article 30 of the Articles of Association, the Board has fixed the proxy format. Please find attached as Exhibit 3 a copy of the proxy format that can be completed and deposited at the Company's registered offices at the latest on 21 June 2011.

**Exhibits (which are an integral part of this notice):**

1. Proposal to amend the Company's Articles of Association
2. Special Board Report pursuant to Article 604 BCC
3. Proxy form

# EASDAQ NV

Lei 19 Bus 11, B-3000 Leuven, België
RPR Leuven 0455.240.893

(de **"Vennootschap"**)

---

## BIJZONDER VERSLAG VAN DE RAAD VAN BESTUUR OVEREENKOMSTIG ARTIKEL 604 VAN HET WETBOEK VAN VENNOOTSCHAPPEN ("W.VENN.") MET BETREKKING TOT DE HERNIEUWING EN WIJZIGING VAN HET TOEGESTAAN KAPITAAL

---

De Raad van Bestuur (de "Raad") legt hierbij haar bijzonder verslag met betrekking tot het voorstel tot hernieuwing en wijziging van de machtiging aan de Raad om het kapitaal van de Vennootschap te verhogen binnen het kader van het toegestaan kapitaal.

### 1. HET TOEGESTAAN KAPITAAL – OMSTANDIGHEDEN WAARIN HET TOEGESTAAN KAPITAAL MAG WORDEN GEBRUIKT

De Raad stelt de aandeelhouders van de Vennootschap voor om de machtiging aan de Raad om het kapitaal van de vennootschap te verhogen, daarin inbegrepen door middel van uitgifte van warrants (al dan niet aan een ander effect of schuldinstrument gehecht) of converteerbare obligaties of obligaties terugbetaalbaar in aandelen, in één of meerdere malen, voor een totaal bedrag van maximaal EUR 50.000.000, te hernieuwen en te wijzigen.

Indien de aandeelhouders dit voorstel van de Raad zouden goedkeuren, zouden paragrafen 5 tot 13 van artikel 6 van de statuten van de Vennootschap als volgt worden vervangen om de voorgestelde voorwaarden en modaliteiten waarin het toegestaan kapitaal kan worden aangewend, weer te geven:

*"De raad van bestuur is bevoegd om het geplaatst maatschappelijk kapitaal in één of meer malen te verhogen met een totaal bedrag dat niet hoger is dan vijftig miljoen euro (€ 50.000.000,00) overeenkomstig door de raad te bepalen voorwaarden. Indien de kapitaalverhoging zal gebeuren door middel van een inbreng in geld zal de raad van bestuur (onder voorbehoud van wat hierna wordt bepaald) rekening dienen te houden met het voorkeurrecht van de bestaande aandeelhouders.*

*De verhoging van het kapitaal kan binnen het kader van het toegestaan kapitaal ook gebeuren door inbreng in natura.*

*De verhoging van het kapitaal binnen het kader van het toegestaan kapitaal kan verder ook geschieden door omzetting van reserves of andere eigen vermogensbestanddelen*

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

*die onder het toepasselijke recht kunnen omgezet worden in kapitaal, met of zonder uitgifte van nieuwe aandelen.*

*Het toegestaan kapitaal kan ook worden aangewend door de raad van bestuur, binnen de vermelde grenzen, voor de uitgifte van warrants (al dan niet aan een ander effect of schuldinstrument gehecht) of converteerbare obligaties of obligaties terugbetaalbaar in aandelen.*

*In geval van kapitaalverhoging in het kader van het toegestaan kapitaal, zullen de uitgiftepremies, indien er zijn, op een onbeschikbare rekening "Uitgiftepremies" geplaatst moeten worden die op dezelfde voet als het kapitaal de waarborg der derden zal uitmaken en die in enkel zal kunnen verminderd of afgeschaft worden door een beslissing van de aandeelhouders van de Vennootschap beslissend zoals inzake statutenwijziging, behoudens de omzetting in kapitaal zoals hierboven voorzien.*

*De raad van bestuur kan deze bevoegdheid uitoefenen gedurende vijf jaar te rekenen vanaf de publicatie van de bevoegdheid gegeven door de algemene vergadering van 23 juni 2011, in de Bijlagen tot het Belgisch Staatsblad.*

*Deze bevoegdheid toegekend aan de raad van bestuur kan worden hernieuwd overeenkomstig de geldende wettelijke bepalingen. Wanneer de raad van bestuur aan de algemene vergadering voorstelt deze bevoegdheid te hernieuwen, stelt hij een met redenen omkleed verslag op waarin wordt aangegeven in welke omstandigheden hij gebruik zal kunnen maken van het toegestaan kapitaal en welke doeleinden hij daarbij nastreeft.*

*De raad van bestuur is bevoegd om het voorkeurrecht van de bestaande aandeelhouders te beperken of op te heffen (ook wanneer dit gebeurt ten gunste van één of meer bepaalde personen andere dan personeelsleden van de vennootschap of van haar dochters, in welk geval de bijzondere voorwaarden bepaald in het Wetboek van vennootschappen dienen te worden gerespecteerd), in welk geval hij een verantwoording zal geven in een bijzonder verslag van de raad opgesteld overeenkomstig artikel 596 (en, zover als nodig, 598) van het Wetboek van vennootschappen.*

*De raad van bestuur is niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen, behalve (a) in het geval van uitgifte van effecten: (i) met betrekking tot aandelenoptieplannen voor werknemers; (ii) met betrekking tot incentive plannen voor werknemers; (iii) bij uitoefening van de warrants uitgegeven op 7 augustus 2009 en op 24 juni 2010; of (iv) in ruil voor een inbreng anders dan in geld; of (b) indien Knight daarmee instemt.*

*Elke beslissing van de raad van bestuur om effecten uit te geven binnen het kader van het toegestaan kapitaal is onderworpen aan de wettelijke beperkingen uiteengezet in artikel 603 tot en met 606 van het Wetboek van vennootschappen."*



*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

## 2. SPECIFIEKE OMSTANDIGHEDEN EN DOELEINDEN VOOR HET GEBRUIK VAN HET TOEGESTAAN KAPITAAL

De techniek van het toegestaan kapitaal biedt de Raad een voldoende mate van flexibiliteit en/of snelheid van implementatie, wat belangrijk kan zijn om, onder andere, een optimale financiering of ander doel in het belang van de Vennootschap te bereiken.

Gelet op de onmogelijkheid om *a priori* een limitatieve opsomming te geven van de bijzondere omstandigheden waarin, en de doeleinden waartoe, de Raad het toegestaan kapitaal kan aanwenden, dienen de hieronder vermelde omstandigheden en doeleinden niet als limitatief te worden beschouwd.

De Raad neemt zich voor om van het toegestaan kapitaal gebruik te maken onder meer in de gevallen waarin, in het belang van de Vennootschap, een besluitvorming middels algemene vergadering niet gewenst of opportuun zou zijn.

De Raad zou bijvoorbeeld gebruik kunnen maken van het toegestaan kapitaal wanneer:

- De relatieve complexe, dure en/of tijdrovende procedure voor een vennootschap als Easdaq NV om een buitengewone algemene vergadering bijeen te roepen voor een uitgifte van effecten niet compatibel zou kunnen blijken met bepaalde fluctuaties op de kapitaalmarkten, of met bepaalde interessante mogelijkheden die zich zouden aanbieden voor de Vennootschap (zoals de (volledige of gedeeltelijke) financiering van partnerships of van overnames van ondernemingen en/of belangrijke activa, of het aantrekken van eventuele nieuwe partners of aandeelhouders);
- er een financieringsnood is of een financieringsmogelijkheid ontstaat, waarbij de relevante marktomstandigheden of kenmerken van de beoogde financiering een snel optreden van de Vennootschap aangewezen maken;
- er een behoefte bestaat aan financiering waarbij een inbreng in natura aangewezen is in het belang van de Vennootschap;
- een voorafgaande bijeenroeping van een algemene vergadering zou leiden tot een te vroege aankondiging van de betrokken verrichting, hetgeen in het nadeel van de Vennootschap zou kunnen zijn;
- omwille van dringendheid van de situatie blijkt dat het op korte termijn doorvoeren van een uitgifte van effecten volgens de procedure van het toegestaan kapitaal aangewezen is in het belang van de Vennootschap.

De Raad kan het toegestaan kapitaal ook aanwenden in het kader van het remuneratiebeleid van de Vennootschap, inclusief voor de uitgifte van aandelen, aandelenopties of warrants aan werknemers, bestuurders of consultants van de Vennootschap en haar dochtervennootschappen, alsmede aan andere personen die zich in het kader van hun beroepswerkzaamheid verdienstelijk hebben gemaakt, of waarvan

*Raad van Bestuur van 7 juni 2010*
*Bijzonder verslag van de Raad van Bestuur 560 W. Venn.*

verwacht mag worden dat ze zich verdienstelijk zullen maken, voor de Vennootschap en
haar dochtervennootschappen.

Onder de voorgestelde machtiging is de Raad expliciet gemachtigd om het
voorkeurrecht van de bestaande aandeelhouders op te heffen (ook wanneer dit gebeurt
ten gunste van één of meer bepaalde personen andere dan personeelsleden van de
vennootschap of van haar dochters, in welk geval de bijzondere voorwaarden
uiteengezet in de Wetboek van vennootschappen dienen te worden gerespecteerd). De
Raad is echter niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen,
behalve (a) in het geval van uitgifte van effecten: (i) met betrekking tot
aandelenoptieplannen voor werknemers; (ii) met betrekking tot incentive plannen voor
werknemers; (iii) bij uitoefening van de warrants uitgegeven op 7 augustus 2009 en op
24 juni 2010; of (iv) in ruil voor een inbreng anders dan in geld; of (b) indien Knight
daarmee instemt.

De hierboven vermelde omstandigheden en doeleinden voor het gebruik van het
toegestaan kapitaal door de Raad, zijn niet beperkt tot bovenstaande; het doel van het
toegestaan kapitaal is om in staat te zijn snel te reageren, op een flexibele wijze en/of
een confidentiële wijze, op de verscheidene veranderingen en opportuniteiten die
kunnen ontstaan in de loop van de volgende vijf jaar. De Raad dient daarbij
vanzelfsprekend te handelen in het belang van de Vennootschap.

Gedaan op 6 juni 2011

Voor de raad van bestuur,

Artur Fischer
Voorzitter      en      bijzondere
volmachthouder

*Unofficial English translation of a Dutch original*

**EASDAQ NV**

Lei 19 Box 11, B-3000 Leuven, Belgium
RPR Leuven 0455.240.893

---

**REPORT OF THE BOARD OF DIRECTORS IN ACCORDANCE WITH ARTICLE 604 OF THE BELGIAN COMPANY CODE REGARDING THE RENEWAL AND AMENDMENT OF THE AUTHORISED CAPITAL**

---

The Board of Directors (the "**Board**") hereby presents its special report in relation to the proposal to renew and amend the authorisation to the Board to increase the Company's share capital within the framework of the "authorised capital".

### 1. The authorised capital – circumstances in which the authorised capital may be used

The Board proposes to the shareholders of the Company to renew and amend the authorisation of the Board to increase the Company's share capital, including by way of the issue of warrants (whether or not linked to another security or debt instrument) or convertible bonds or bonds redeemable in shares, in one or more transactions, with an aggregate amount of up to EUR 50,000,000.00.

Should the shareholders of the Company approve this proposal of the Board, then paragraphs 5 to 13 of section 6 of the Company's Articles of Association shall be replaced to reflect the proposed terms and conditions for the use of the authorised capital, as follows:

*"The Board of Directors shall be authorised to increase the subscribed capital in one or more transactions, by an aggregate amount not exceeding fifty million euro (50,000,000 EUR), in accordance with the conditions set by the Board. In case the capital increase is done by way of a contribution in cash, the Board (subject to what is set hereafter) will have to take into account the preferential subscription rights of the existing shareholders.*

*The capital increase through the use of the authorised capital may also be done by way of a contribution in kind.*

*The increase of capital through the use of the authorised capital may also be done by way of the incorporation of reserves or other elements of equity which under applicable law can be converted into capital, with or without the issuance of new shares.*

*The authorised capital can also be used by the Board of Directors, within the aforementioned limits, to issue warrants (whether or not linked to another security or debt instrument) or convertible bonds or bonds redeemable in shares.*

*In case of a capital increase through the use of the authorised capital, the issue premiums (if any) will be booked on an unavailable account "Issuance Premiums", that will constitute the guarantee of third parties in the same manner as the capital, and that can only be decreased or cancelled by*

1

*Unofficial English translation of a Dutch original*

way of a decision of the Company's shareholders taken in accordance with the rules applicable to the amendment of the Articles of Association, except for the conversion into capital as provided above.

The Board of Directors may exercise the powers resulting from the authorised capital during a period of five years following the publication of the authorisation granted by the shareholders meeting of 23 June 2011 in the annexes to the Belgian Official Gazette.

This authorisation granted to the Board of Directors may be renewed in accordance with the applicable legal provisions. When the Board of Directors proposes a renewal of this authorisation, it will draft a motivated report indicating under which circumstances it intends to make use of the authorised capital and which objectives it thereby pursues.

The Board of Directors shall be authorised to cancel or restrict the preferential subscription rights of the existing shareholders (including for the benefit of one or more specific persons, whether or not employees of the Company or one of its subsidiaries, in which case the particular conditions set forth in the Belgian Company Code must be respected), in which case it will provide for a justification in a special Board report to be prepared further to Article 596 (and, as the case may be, 598) of the Belgian Company Code. A report will in that case also be prepared by the statutory auditor further to Article 596 (and, as the case may be, 598) of the Belgian Company Code.

The Board of Directors shall not be entitled to limit or cancel the preferential subscription rights of Knight, except (a) for securities to be issued: (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans; (iii) upon the exercise of the warrants issued on 7 August 2009 and on 24 June 2010 or (iv) in return for non-cash consideration; or (b) if Knight consents thereto.

Any decision by the Board of Directors to issue securities through the use of the authorised capital is subject to the statutory limitations set forth in Articles 603 through 606 of the Belgian Company Code."

## 2. Special circumstances under which, and purposes for which, the authorised capital may be used

The technique of the authorised capital offers the Board a certain degree of flexibility and/or speed of implementation, which may be instrumental , amongst other things, to achieve an optimum funding or other pursuit of the Company's interest.

As it would be impossible to *a priori* provide an exhaustive list of the special circumstances under which, and the purposes for which, the Board may use the authorised capital, the special circumstances/purposes listed below should not be considered to be exhaustive.

The Board intends to use the authorised capital *inter alia* for such situations in which it would, in the interest of the Company, not be desirable or opportune to organise a shareholder meeting.

*Unofficial English translation of a Dutch original*

The Board could, for example, utilise the authorised capital when:

- the relatively complex, expensive and/or time-consuming procedures for a company such as Easdaq NV to convene an extraordinary general shareholders meeting to resolve upon the issue of securities would appear to be incompatible with certain fluctuations on the markets or certain opportunities which may present themselves to the Company (such as the (entire or partial) financing of partnerships or acquisitions of companies and/or assets, or attracting new partners or shareholders).
- there is a need for financing or a financing opportunity arises, whereby the relevant market conditions or terms of the envisaged financing would make swift and efficient action on the part of the Company advisable;
- there is a need for financing in the context of which a contribution in kind is in the interest of the Company;
- prior notice for a shareholders meeting could lead to an early disclosure of the relevant transaction, which could be to the detriment of the Company;
- because of the urgency of the situation, it would appear that the implementation in the near term of an issue of securities under the authorised capital, would be in the Company's interest.

The Board may also use the authorised capital in the context of the remuneration policy of the Company, including for the issuance of shares or warrants to the benefit of employees, directors or consultants of the Company and its subsidiaries, as well as to persons who in the scope of their professional activity have been or may expected to be instrumental to the Company and its subsidiaries.

Under the proposed authorisation, the Board is explicitly authorised to cancel the preferential subscription rights of existing shareholders (including for the benefit of one or more specific persons, whether or not employees of the Company or one of its subsidiaries, in which case the particular conditions set forth in the Belgian Company Code must be respected), however, the Board shall not be entitled to limit or cancel the preferential subscription rights of Knight, except for securities to be issued: (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans; (iii) upon the exercise of the warrants issued on 7 August 2009 and on 24 June 2010 or (iv) in return for non-cash consideration.

The above mentioned circumstances in which, and objectives for which, the Board can make use of the authorised capital, is not limited to the above; the purpose of the authorised capital is to be able to react quickly, in a flexible manner and/or in a confidential manner to the various changes and opportunities that may arise in the course of the next five years. The Board should thereby of course act in the Company's interest.


Done on 6 June 2011.

For the Board of Easdaq NV:

Artur Fischer
Chairman and special proxyholder

**EASDAQ**

Naamloze vennootschap

Lei 19 Bus 11, B-3000 Leuven, België
RPR Leuven 0455.240.893

(de "Vennootschap")

## VOORSTEL TOT AANPASSING VAN DE STATUTEN VAN DE VENNOOTSCHAP

De Raad van Bestuur (de "Raad") legt hierbij haar voorstel tot aanpassing van de statuten van de Vennootschap voor, waarover de buitengewone algemene vergadering die gehouden zal worden op of rond 23 juni 2011 zal besluiten (de "BAV"), waarbij de wijzigingen aan de huidige statuten zijn aangeduid in "track changes". Met betrekking tot de wijzigingen aan artikel 6, verwijst de Raad naar het bijzonder verslag van de Raad overeenkomstig artikel 604 van het Wetboek van vennootschappen, met betrekking tot het voorstel om de machtiging aan de Raad om het kapitaal van de Vennootschap de verhogen binnen het kader van het toegestaan kapitaal te hernieuwen en te wijzigen, waarover de BAV ook zal besluiten.

### a. Artikel 6 zal als volgt worden gewijzigd:

**Artikel 6 – Wijziging van het onderschreven kapitaal**

"Het onderschreven kapitaal kan worden verhoogd of verminderd door een besluit van de algemene vergadering, die beraadslaagt volgens de bepalingen voorzien voor de wijziging van de statuten.

Onverminderd het recht van de algemene vergadering om de voorkeurrechten te beperken of op te heffen overeenkomstig het Wetboek van vennootschappen, moeten de aandelen waarop in geld wordt ingeschreven bij voorrang worden aangeboden aan de aandeelhouders naar evenredigheid van het kapitaal dat door hun aandelen wordt vertegenwoordigd, gedurende een termijn van ten minste vijftien (15) dagen te rekenen vanaf de dag van de opening van de inschrijving. De algemene vergadering bepaalt de prijs van de intekening en de termijn gedurende dewelke het voorkeurrecht kan worden uitgeoefend.

De Aandeelhouders zijn echter niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen, met uitzondering voor het geval van uitgifte van aandelen of effecten converteerbaar in aandelen: (i) met betrekking tot aandelenoptieplannen voor werknemers; (ii) met betrekking tot incentive plannen voor werknemers; (iii) bij uitoefening van de warrants uitgegeven op of rond 24 juni 2010; of (iv) in ruil voor een inbreng anders dan in geld.

Indien de algemene vergadering beslist om betaling van een uitgiftepremie te vragen, dient deze te worden geboekt op een geblokkeerde reserverekening die maar kan

worden verminderd of opgeheven door een beslissing van de algemene vergadering die beraadslaagt volgens de regels voorzien voor de wijziging van de statuten. De uitgiftepremie zal, ten zelfde titel als het kapitaal, de kwalificatie hebben van een gemeenschappelijke waarborg ten gunste van de derden.

De raad van bestuur is bevoegd om het geplaatst maatschappelijk kapitaal in één of meer malen te verhogen met een totaal bedrag dat niet hoger is dan vijftig miljoen euro (€ 50.000.000,00) overeenkomstig door de raad te bepalen voorwaarden. Indien de kapitaalverhoging zal gebeuren door middel van een inbreng in geld zal de raad van bestuur (onder voorbehoud van wat hierna wordt bepaald) rekening dienen te houden met het voorkeurrecht van de bestaande aandeelhouders.

De verhoging van het kapitaal kan binnen het kader van het toegestaan kapitaal ook gebeuren door inbreng in natura.

De verhoging van het kapitaal binnen het kader van het toegestaan kapitaal kan verder ook geschieden door omzetting van reserves of andere eigen vermogensbestanddelen die onder het toepasselijke recht kunnen omgezet worden in kapitaal, met of zonder uitgifte van nieuwe aandelen.

Het toegestaan kapitaal kan ook worden aangewend door de raad van bestuur, binnen de vermelde grenzen, voor de uitgifte van warrants (al dan niet aan een ander effect of schuldinstrument gehecht) of converteerbare obligaties of obligaties terugbetaalbaar in aandelen.

In geval van kapitaalverhoging in het kader van het toegestaan kapitaal, zullen de uitgiftepremies, indien er zijn, op een onbeschikbare rekening "Uitgiftepremies" geplaatst moeten worden die op dezelfde voet als het kapitaal de waarborg der derden zal uitmaken en die in enkel zal kunnen verminderd of afgeschaft worden door een beslissing van de aandeelhouders van de Vennootschap beslissend zoals inzake statutenwijziging, behoudens de omzetting in kapitaal zoals hierboven voorzien.

De raad van bestuur kan deze bevoegdheid uitoefenen gedurende vijf jaar te rekenen vanaf de publicatie van de bevoegdheid gegeven door de algemene vergadering van 23 juni 2011, in de Bijlagen tot het Belgisch Staatsblad.

Deze bevoegdheid toegekend aan de raad van bestuur kan worden hernieuwd overeenkomstig de geldende wettelijke bepalingen. Wanneer de raad van bestuur aan de algemene vergadering voorstelt deze bevoegdheid te hernieuwen, stelt hij een met redenen omkleed verslag op waarin wordt aangegeven in welke omstandigheden hij gebruik zal kunnen maken van het toegestaan kapitaal en welke doeleinden hij daarbij nastreeft.

De raad van bestuur is bevoegd om het voorkeurrecht van de bestaande aandeelhouders te beperken of op te heffen (ook wanneer dit gebeurt ten gunste van één of meer bepaalde personen andere dan personeelsleden van de vennootschap of van haar dochters, in welk geval de bijzondere voorwaarden bepaald in het Wetboek van vennootschappen dienen te worden gerespecteerd), in welk geval hij een verantwoording zal geven in een bijzonder verslag van de raad opgesteld overeenkomstig artikel 596 (en, zover als nodig, 598) van het Wetboek van vennootschappen.

De raad van bestuur is niet gerechtigd het voorkeurrecht van Knight te beperken of op te heffen, behalve (a) in het geval van uitgifte van effecten: (i) met betrekking tot

<table>
<tr><td>Gelöscht: van</td></tr>
<tr><td>Gelöscht: modaliteiten.</td></tr>
<tr><td>Gelöscht: Deze verhoging kan</td></tr>
<tr><td>Gelöscht: in welk geval</td></tr>
<tr><td>Gelöscht: zal</td></tr>
<tr><td>Gelöscht: toegestane</td></tr>
<tr><td>Gelöscht: De raad van bestuur mag evenwel, van het toegestane kapitaal geen gebruik maken om te beslissen tot een kapitaalverhoging die voornamelijk tot stand wordt gebracht door een inbreng in natura die uitsluitend voorbehouden is aan een aandeelhouder die effecten van de vennootschap in zijn bezit houdt waaraan meer dan tien procent van de stemrechten verbonden zijn.</td></tr>
<tr><td>Gelöscht: waartoe, krachtens de bij dit artikel toegekende bevoegdheid wordt besloten,</td></tr>
<tr><td>Gelöscht: Binnen het kader van het</td></tr>
<tr><td>Gelöscht: de raad van bestuur beslissen tot uitgifte van converteerbare obligaties en warrants.</td></tr>
<tr><td>Gelöscht: in geval van kapitaalverhoging</td></tr>
<tr><td>Gelöscht: zal de raad van bestuur</td></tr>
<tr><td>Gelöscht: moeten toewijzen aan</td></tr>
<tr><td>Gelöscht: "</td></tr>
<tr><td>Gelöscht: "</td></tr>
<tr><td>Gelöscht: , zoals</td></tr>
<tr><td>Gelöscht: ,</td></tr>
<tr><td>Gelöscht: voor</td></tr>
<tr><td>Gelöscht: , behoudens de mogelijkheid tot incorporatie</td></tr>
<tr><td>Gelöscht: kapitaal door de raad van bestuur, zoals hiervoor voorzien, slechts</td></tr>
<tr><td>Gelöscht: opgeheven</td></tr>
<tr><td>Gelöscht: krachtens</td></tr>
<tr><td>Gelöscht: algemene vergadering beraadslagend onder de voorwaarden gesteld door artikel 612 van het Wetboek van vennootschappen.</td></tr>
<tr><td>Gelöscht: bekendmaking van deze akte</td></tr>
<tr><td>Gelöscht: bijzondere</td></tr>
<tr><td>Gelöscht: toegestane</td></tr>
<tr><td>Gelöscht: , in welk geval hij zulks verantwoordt in een omstandig v ... [1]</td></tr>
<tr><td>Gelöscht: De Raad van Bestuur</td></tr>
<tr><td>Gelöscht: met uitzondering voor</td></tr>
<tr><td>Gelöscht: aandelen of</td></tr>
<tr><td>Gelöscht: converteerbaar in aandelen</td></tr>
</table>

aandelenoptieplannen voor werknemers; (ii) met betrekking tot incentive plannen voor
werknemers; (iii) bij uitoefening van de warrants uitgegeven op 7 augustus 2009 en op
24 juni 2010; of (iv) in ruil voor een inbreng anders dan in geld; of (b) indien Knight
daarmee instemt.

Elke beslissing van de raad van bestuur om effecten uit te geven binnen het kader van
het toegestaan kapitaal is onderworpen aan de wettelijke beperkingen uiteengezet in
artikel 603 tot en met 606 van het Wetboek van vennootschappen.

| Gelöscht: of rond |
| --- |
| Gelöscht: . |
| Gelöscht: De raad van bestuur is bevoegd het voorkeurrecht te beperken of op te heffen ten gunste van één of meer bepaalde personen, al dan niet personeelsleden van de vennootschap of van haar dochtervennootschappen. In dat geval dienen de voorwaarden gesteld door |
| Gelöscht: nageleefd te worden |

**b.  Artikel 9 zal als volgt worden gewijzigd:**

**Artikel 9 – Overdracht van Aandelen**

Enkele    aandeelhouders    van    de    Vennootschap    hebben    een
aandeelhoudersovereenkomst afgesloten met de Vennootschap op of rond 24 juni 2010,
zoals gewijzigd van tijd tot tijd, dewelke bepaalde bepaling inhoudt omtrent de overdracht
van de aandelen van de Vennootschap. Voorafgaand aan elke overdracht van aandelen zal
de Raad van Bestuur bevestigen dat deze bepalingen zijn nageleefd. Om twijfel te
vermijden, deze bevestiging is slechts een technische vereiste en zal niet zo worden
geïnterpreteerd dat zulk een overdracht van aandelen onderworpen is aan de
goedkeuring van de Raad binnen de betekenis van artikel 510 van her Wetboek Van
Vennootschappen.

**c.  Artikel 18 zal als volgt worden gewijzigd:**

**Artikel 18 – Beraadslaging**

Opdat een vergadering van de raad van bestuur rechtsgeldig kan beraadslagen
en beslissen moet, bovenop de vereisten van het Belgische vennootschapsrecht,
minstens één Citadel Bestuurder en de Knight Bestuurder aanwezig zijn in persoon, per
telefoon of bij wijze van volmacht. Indien echter: (i) het Relevant Citadel
Aandeelhouderschap daalt tot onder 20% kan de raad van bestuur geldig beraadslagen
(indien voldaan is aan de voorwaarden van het Belgische vennootschapsrecht) zelfs
indien geen enkele Citadel Bestuurder aanwezig is; en (ii) het Relevant Knight
Aandeelhouderschap daalt onder 3,75%, kan de raad van bestuur geldig beraadslagen
(indien voldaan is aan de voorwaarden van het Belgische vennootschapsrecht) zelfs
indien de Knight Bestuurder niet aanwezig is. De aanwezigheid van minstens één
Citadel   Bestuurder  zal  opnieuw  vereist  zijn  indien  het  Relevant  Citadel
Aandeelhouderschap opnieuw stijgt tot 20% of meer en de aanwezigheid van de Knight
Bestuurder zal opnieuw vereist zijn indien het Relevant Knight Aandeelhouderschap
daarna opnieuw stijgt tot 3,75% of meer. Indien geen Citadel Bestuurder is benoemd
en/of de Knight Bestuurder niet is benoemd, is de aanwezigheid van een Citadel
Bestuurder en/of de Knight Bestuurder (zoals van toepassing) niet vereist opdat de raad
van bestuur geldig kan beraadslagen. De vereiste van aanwezigheid van de Knight
Bestuurder zal niet van toepassing zijn ten aanzien van enig agendapunt indien de
Knight Bestuurder niet aanwezig is op twee opeenvolgende vergaderingen van de raad

van bestuur, op voorwaarde dat de Knight Bestuurder geldig opgeroepen was tot zulk een vergadering en in kennis werd gesteld van het relevante agendapunt.

In uitzonderlijke gevallen die behoorlijk worden verantwoord door dringende noodzakelijkheid en het belang van de vennootschap, kunnen de beslissingen van de raad van bestuur bij eenparig schriftelijk besluit worden genomen. Van deze procedure kan echter geen gebruik worden gemaakt voor de vaststelling van de jaarrekening of voor een besluit tot kapitaalverhoging in het kader van het toegestaan kapitaal.

De raad van bestuur kan maar rechtsgeldig beraadslagen over punten die niet vermeld zijn op de agenda wanneer alle bestuurders aanwezig of rechtsgeldig vertegenwoordigd zijn en unaniem beslissen om over deze punten te beraadslagen.

Iedere bestuurder kan per brief, fax, e-mail of op een andere schriftelijke manier volmacht geven aan een andere bestuurder om hem te vertegenwoordigen op een vergadering van de raad van bestuur. Een bestuurder kan bij volmacht verscheidene van zijn collega's vertegenwoordigen.

De bestuurders dienen zich te onderwerpen aan de bepalingen betreffende de belangenconflicten in het Wetboek van vennootschappen.

De beslissingen worden genomen met een gewone meerderheid van stemmen. Echter, op voorwaarde dat Citadel een Relevant Citadel Aandeelhouderschap (zoals gedefinieerd in artikel 14) houdt van ten minste 20%, de handelingen opgenomen in onderstaande lijst kunnen slechts door de raad van bestuur worden gesteld en voorstellen daartoe kunnen enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van minstens één Citadel Bestuurder, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van minstens één Citadel Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Citadel heeft het recht om één (of meerdere) Citadel Bestuurder(s) aan te duiden die bevoegd is of zijn om dit goedkeuringsrecht uit te oefenen, in welk geval enkel de aangeduide Citadel Bestuurder(s) dit recht kan of kunnen uitoefenen. Deze handelingen zijn:

- Het opvragen van niet-volgestorte kapitaal van de aandelen van de vennootschap uitgegeven aan Citadel of het uitoefenen van enige rechten met betrekking tot dit niet-volgestort kapitaal;
- Het voorstel tot wijziging van de statuten van de vennootschap (met inbegrip van elk voorstel dat de rechten van Citadel onder deze statuten wijzigt) of van een van haar dochtervennootschappen, in de zin van artikel 6 van het Wetboek van vennootschappen (de vennootschap samen met deze dochtervennootschappen worden hierna de "Easdaq Group" genoemd);
- De uitgifte of de toekenning van aandelen of andere effecten door een lid van de Easdaq Group of de creatie, toekenning of uitgifte van een optie, warrant of het recht om in te schrijven op aandelen van een lid van de Easdaq Group of het recht om deze te verwerven of het recht om effecten om te zetten in aandelen van een lid van de Easdaq Group, of een voorstel om het bovenstaande te doen;
- Een beslissing of voorstel tot vaststelling of betaling van een dividend of de vaststelling of het doen van enige andere uitkering door een lid van de Easdaq Group;
- Een belangrijke wijziging in de aard of de omvang van de activiteiten van de vennootschap;
- Het aangaan van schulden door de vennootschap voor meer dan 25.000 euro (voor de duidelijkheid, de intra-groep schulden tussen de leden van de Easdaq Group niet inbegrepen) of het oplopen van handelskrediet boven 100.000 euro per krediet;

- Het oprichten of verwerven van een verbonden vennootschap door de vennootschap;
- Het toekennen of de toestemming tot het creëren van een zekerheid of een ander recht op een deel van de onderneming, de roerende of onroerende goederen van de vennootschap, met een marktwaarde van meer dan 10.000 euro;
- De beslissing of een voorstel tot ontbinding van een lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van de goederen van de vennootschap;
- Het toekennen van een waarborg of een schadevergoeding door de vennootschap die kan leiden tot een aansprakelijkheid voor een bedrag van meer dan 10.000 euro (uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
- Het aanspannen van een gerechtelijke of arbitrale procedure of het aangaan van een dading in een dergelijke procedure voor een bedrag van meer dan 120.000 euro (andere dan de gewone inning van schuldvorderingen);
- Het aangaan van overeenkomsten of verbintenissen die buiten de normale grenzen vallen van de activiteiten of die over de gehele duur van de overeenkomst voor de vennootschap een uitgave zou meebrengen van meer dan 250.000 euro of die in enig ander opzicht als belangrijk kunnen worden beschouwd voor de activiteiten van de vennootschap;
- Het aangaan van een lening of het toekennen van een krediet door de vennootschap buiten de normale grenzen van haar activiteit (en uitgezonderd met betrekking tot de aansprakelijkheid van een lid van de Easdaq Group);
- Het voorstel tot kapitaalvermindering of het inkopen, kopen of anderszins verwerven door een lid van de Easdaq Group van aandelen of effecten van dat lid van de Easdaq Group (ongeacht of hiervoor kapitaal wordt gebruikt);
- Het voorstel om het kapitaal van een lid van de Easdaq Group verder onder te verdelen, samen te voegen of te herbenoemen, en alle beslissingen of voorstellen om leden van de Easdaq Group te fuseren in of met andere entiteiten, een volledige of partiële splitsing door te voeren van een lid van de Easdaq Group, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
- Een naamsverandering van een lid van de Easdaq Group, of een voorstel in die zin;
- De verplaatsing van de maatschappelijke- of andere zetel van een lid van de Easdaq Group;
- Het verwerven, de verkoop of transfer buiten de Easdaq Group van: (i) cash of cash equivalenten of een ander goed voor een bedrag van meer dan 100.000 euro per transfer (waarbij verbonden transfers worden samengevoegd); of (ii) elk belang van de vennootschap in Equiduct Systems Limited (hierna gedefinieerd als "Equiduct"), behalve indien daartoe reeds een bijzondere goedkeuring werd gegeven in toepassing van een sub paragraaf van dit artikel 18;
- De goedkeuring van het jaarlijkse budget of business plan (dat in overeenstemming dient te zijn met artikel 9.8 van de investeringsovereenkomst tussen Citadel, BSX, Dr. Peeters en de Vennootschap van 20 juli 2009) van de Easdaq Group;
- De terugkoop of overdracht van een belang in aandelen of schuldinstrumenten of een voorstel in dit verband;
- Het verlenen van financieel bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de vennootschap voor de verwerving van aandelen van de vennootschap;

- De benoeming, het vaststellen van de voorwaarden van tewerkstelling (of een wijziging daarvan) of de overdracht of het ontslag van een senior medewerker van de vennootschap wiens basissalaris (commissies en bonussen niet inbegrepen) meer bedraagt dan 100.000 euro per jaar;
- Het aangaan, wijzigen of ontbinden van een overeenkomst of akkoord tussen enerzijds een lid van de Easdaq Group en anderzijds Citadel, BSX, Knight, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van Citadel, BSX, Knight of Dr. Peeters) en/of een andere directe of indirecte aandeelhouder van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap;
- Enige andere transactie of regeling door een lid van de Easdaq Group in het voordeel van Citadel, BSX, Knight, Dr. Peeters (of een verbonden vennootschap of een rechtsopvolger van Citadel, BSX, Knight of Dr. Peeters) en/of een andere directe of indirecte aandeelhouder van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap;
- De registratie van intellectuele eigendom of het aanvragen van een licentie voor deze intellectuele eigendom door de vennootschap, buiten de normale grenzen van haar activiteiten;
- Het overeenkomen van prijzen en andere voorwaarden met deelnemers (i.e. ofwel (i) aan persoon toegelaten tot Börse Berlin, indien deze persoon een deelnemersovereenkomst heeft afgesloten met BSX (of, naargelang het geval, een andere partij) teneinde gebruik te maken van een beurs die wordt ondersteund door de Easdaq Group, of (ii) een deelnemer aan één of meer beurzen of trading platforms waaraan de vennootschap diensten verstrekt) en klanten;
- Het overeenkomen van verbintenissen of voorwaarden met enige publieke overheid;
- De benoeming en het ontslag van de bestuurders van Equiduct of andere leden van de Easdaq Group, anders dan overeenkomstig artikel 14;
- Het vaststellen of wijzigen van de boekhoudkundige richtlijnen voor de vennootschap; en
- Het uitoefenen van aandeelhoudersrechten door een lid van de Easdaq Group met betrekking tot een ander lid van de Easdaq Group.

Indien het Relevant Citadel Aandeelhouderschap daalt tot onder 20%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het Relevant Citadel Aandeelhouderschap daarna opnieuw stijgt tot 20% of meer, komt de uitoefening van de rechten beschreven in dit artikel 18, zesde paragraaf, opnieuw toe aan de Citadel Bestuurders.

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) houdt van ten minste 3,75%, kunnen de handelingen opgenomen in onderstaande lijst slechts door de raad van bestuur worden gesteld en kunnen voorstellen daartoe enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van de Knight Bestuurder, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van de Knight Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn:

- Het voorstel tot wijziging van de statuten van de vennootschap hetwelk de rechten van Knight onder deze statuten wijzigt; en
- Enige transactie door een lid van de Easdaq Group met Citadel, BSX, Dr. Peeters of een andere directe of indirecte aandeelhouder van de

Formatiert: Abstand Nach: 6 pt, Zeilenabstand: Genau 14,4 pt

vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap en elke wijziging aan zulk een bestaande transactie (in alle gevallen andere dan transacties of wijzigingen waarvan de voorwaarden aan "arms length" zijn)

Indien het Relevant Knight Aandeelhouderschap daalt tot onder 3.75%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het Relevant Knight Aandeelhouderschap daarna opnieuw stijgt tot 3.75% of meer, komt de uitoefening van de rechten beschreven in dit artikel 18, zevende paragraaf opnieuw toe aan de Knight Bestuurder.

*Formatiert: Einzug: Erste Zeile: 1,27 cm, Keine Aufzählungen oder Nummerierungen*

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) houdt van ten minste 3.75%, kunnen de handelingen opgenomen in onderstaande lijst slechts door de raad van bestuur worden gesteld op elk tijdstip voor 24 juni 2012 en kunnen voorstellen daartoe enkel worden gedaan aan de aandeelhouders op elk tijdstip voor 24 juni 2012, mits de voorafgaande toestemming van de Knight Bestuurder, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van de Knight Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn:

- elke belangrijke wijziging van de aard van de activiteiten van de Easdaq Group;
- de goedkeuring van het jaarlijkse budget of business plan van de Easdaq Group of elke belangrijke wijziging of afwijking van het jaarlijkse budget en het business plan. Waar van toepassing, indien de Knight Bestuurder het jaarlijkse budget en het business plan of belangrijke wijzigingen of afwijkingen niet goedkeurt, zal het jaarlijks budget van het voorgaande jaar van toepassing zijn op het huidige jaar ten aanzien van het betrokken item (met verhogingen tot en met 20%) en het business plan van het voorafgaande jaar zal van toepassing blijven.

*Formatiert: Schriftart: (Standard) Arial, 10,5 pt, Rechtschreibung und Grammatik prüfen*

*Gelöscht: Tot 24 juni 2012,*

*Gelöscht: Tot 24 juni 2012,*

(De twee voorgaande paragrafen zullen zodanig worden geïnterpreteerd om de ontwikkeling van nieuwe producten door de Easdaq Group, of verwervingen van enige persoon, actief of business toe te laten, voor zover dit gefinancierd wordt door een intern gegenereerde positieve cashflow of door bedragen andere dan de vergoeding verschaft door Knight voor de inschrijving op aandelen, of aan geen substantiële kosten of met de toestemming van de Knight Bestuurder, die niet onredelijk zal worden weerhouden of uitgesteld.);

- elke wijziging van de juridische status van enig lid van de Easdaq Group, welk een rechtstreeks effect heeft op het Equiduct marktsegment zoals geëxploiteerd door BSX, met inbegrip van elke wijziging van of hernieuwing van de afspraken met BSX zoals vastgelegd in de master agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009 en de outsourcing agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009; en

*Gelöscht: Tot 24 juni 2012,*

- de beslissing of een voorstel tot ontbinding van een lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van een lid van de Easdaq Group;

*Gelöscht: .*

*Gelöscht: Tot 24 juni 2012,*

*Gelöscht: en*

Indien, op eender welk tijdstip voor 24 juni 2012, het Relevant Knight Aandeelhouderschap daalt tot onder 3,75%, kunnen alle voormelde beslissingen en voorstellen worden aangenomen met een gewone meerderheid van stemmen. Indien het Relevant Knight Aandeelhouderschap daarna opnieuw stijgt tot 3,75% of meer, komt de uitoefening van de rechten beschreven in dit artikel 18, achtste paragraaf opnieuw toe aan de Knight Bestuurder.

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 12,5%, kunnen de handelingen opgenomen in onderstaande lijst op eender welk tijdstip na 23 juni 2012 slechts door de raad van bestuur worden gesteld en kunnen voorstellen daartoe, op eender welk tijdstip na 23 juni 2012, enkel worden gedaan aan de aandeelhouders, mits de voorafgaande toestemming van minstens één Knight Bestuurder, zodat de beslissingen met betrekking tot de onderstaande handelingen (indien deze kunnen worden genomen door de raad van bestuur), respectievelijk de voorstellen met betrekking tot onderstaande handelingen (indien de beslissing met betrekking tot deze handelingen niet door de raad van bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring van minstens één Knight Bestuurder (en onderstaande zaken kunnen door de raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn de volgende:

– elke belangrijke wijziging van de aard van de activiteiten van de Easdaq Group;
– de goedkeuring van het jaarlijkse budget of business plan van de Easdaq Group of elke belangrijke wijziging of afwijking van het jaarlijkse budget en het business plan. Waar van toepassing. Indien de Knight Bestuurder het jaarlijkse budget en het business plan of belangrijke wijzigingen of afwijkingen niet goedkeurt, zal het jaarlijks budget van het voorgaande jaar van toepassing zijn op het huidige jaar ten aanzien van het betrokken item (met verhogingen tot en met 20%) en het business plan van het voorafgaande jaar zal van toepassing blijven.

(De twee voorgaande paragrafen zullen zodanig worden geïnterpreteerd om de ontwikkeling van nieuwe producten door de Easdaq Group, of verwervingen van enige persoon, actief of business toe te laten, voor zover dit gefinancierd wordt door een intern gegenereerde positieve cashflow of door bedragen andere dan de vergoeding verschaft door Knight voor de inschrijving op aandelen, of aan geen substantiële kosten of met de toestemming van de Knight Bestuurder, die niet onredelijk zal worden weerhouden of uitgesteld.);

– elke wijziging van de juridische status van enig lid van de Easdaq Group, welk een rechtstreeks effect heeft op het Equiduct marktsegment zoals geëxploiteerd door BSX, met inbegrip van elke wijziging van of hernieuwing van de afspraken met BSX zoals vastgelegd in de master agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009 en de outsourcing agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009; en
– de beslissing of een voorstel tot ontbinding van een lid van de Easdaq Group of een verzoek tot aanstelling van een beheerder of een curator van een lid van de Easdaq Group;

Gelöscht: <#>Enige transactie door een lid van de Easdaq Group met Citadel, BSX, Dr. Peeters of een andere directe of indirecte aandeelhouder van de vennootschap die een belang van 1% of meer houdt in de aandelen uitgegeven door de vennootschap en elke wijziging aan zulk een bestaande transactie (in alle gevallen andere dan transacties of wijzigingen waarvan de voorwaarden aan "arms length" zijn)¶

<u>Indien, op eender welk tijdstip na 23 juni 2012, het Relevant Knight
Aandeelhouderschap daalt tot onder 12,5%, kunnen alle voormelde beslissingen
en voorstellen worden aangenomen met een gewone meerderheid van
stemmen. Indien het Relevant Knight Aandeelhouderschap daarna opnieuw stijgt
tot 12,5% of meer, komt de uitoefening van de rechten beschreven in dit artikel
18, negende paragraaf opnieuw toe aan de Knight Bestuurder.</u>

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals
gedefinieerd in artikel 14) aanhoudt van ten minste 10%, kunnen de handelingen
opgenomen in onderstaande lijst slechts door de raad van bestuur worden
gesteld en kunnen voorstellen daartoe enkel worden gedaan aan de
aandeelhouders, mits de voorafgaande toestemming van minstens één Knight
Bestuurder , zodat de beslissingen met betrekking tot de onderstaande
handelingen (indien deze kunnen worden genomen door de raad van bestuur),
respectievelijk de voorstellen met betrekking tot onderstaande handelingen
(indien de beslissing met betrekking tot deze handelingen niet door de raad van
bestuur kan worden genomen), dienen te worden goedgekeurd met een gewone
meerderheid van stemmen van de bestuurders met inbegrip van de goedkeuring
van minstens één Knight Bestuurder (en onderstaande zaken kunnen door de
raad van bestuur niet aan anderen worden gedelegeerd). Deze handelingen zijn
de volgende:

Gelöscht: de warrant uitoefent die
haar was toegekend op of rond 24 juni
2010 en

- Goedkeuring van de vestiging en de voorwaarden van enig
  aandelenoptieplan voor werknemers of incentive plan voor werknemers dat
  een toewijzing of toekenning inhoudt van opties of belangen met betrekking
  tot een aantal aandelen of toewijzing of toekenning van een aantal aandelen,
  dat mogelijk 7% van de aandelen van de vennootschap overschrijdt; en

- op voorwaarde dat Knight en haar Verbonden Vennootschappen tenminste
  10% van het gemiddelde dagelijkse volume van het Easdaq Trading System
  verhandeld heeft tijdens de voorbijgaande drie maanden, de goedkeuring
  van elke wijziging van de juridische status of enig lid van de Easdaq Group,
  welk een rechtstreeks effect heeft op het Equiduct marktsegment zoals
  geëxploiteerd door BSX, met inbegrip van elke wijziging van hernieuwing
  van de afspraken met BSX zoals vastgelegd in de master agreement tussen
  BSX, Equiduct en de vennootschap van 7 augustus 2009 en de outsourcing
  agreement tussen BSX, Equiduct en de vennootschap van 7 augustus 2009.

Gelöscht: <#>Tussen 24 juni 2012 en
24 juni 2014, de goedkeuring van het
jaarlijkse budget of business plan van
de Easdaq Group of elke belangrijke
wijziging of afwijking van het jaarlijkse
budget en het business plan, in de
mate dat het business plan of het
budget of belangrijke wijzigingen of
afwijkingen in belangrijke mate afwijkt
van de business positie van de Easdaq
Group zoals per 24 juni 2012. Waar
van toepassing, indien de Knight
Bestuurder het jaarlijkse budget en het
business plan of belangrijke wijzigingen
of afwijkingen niet goedkeurt, zal het
jaarlijks budget van het voorafgaande
jaar van toepassing zijn op het dan
huidige jaar ten aanzien van het
betrokken item (met verhogingen tot en
met 20%) en het business plan van het
voorafgaande jaar zal van toepassing
blijven;¶
¶
(De twee voorgaande paragrafen zullen
zodanig worden geïnterpreteerd om de
ontwikkeling van nieuwe producten
door de Easdaq Group, of
verwervingen van enige persoon, actief
of business toe te laten, voor zover dit
gefinancierd wordt door een intern
gegenereerde positieve cashflow of
door bedragen andere dan de
vergoeding verschaft door Knight voor
de inschrijving op aandelen, of aan
geen substantiële kosten of met de
toestemming van de Knight Bestuurder,
die niet onredelijk zal worden
weerhouden of uitgesteld); en ¶
¶

Daarenboven, indien Knight een Relevant Knight Aandeelhouderschap (zoals
gedefinieerd in artikel 14) aanhoudt van ten minste 10%, zal Knight ten minste 10
werkdagen op voorhand geraadpleegd worden over de volgende onderwerpen
met betrekking tot elk lid van de Easdaq Group:

- het jaarlijkse budget of business plan van de Easdaq Group;
- De aankoop of verkoop van activa niet opgenomen in het jaarlijkse business
  plan van de Easdaq Group en met een waarde hoger dan €500.000 per
  actief;
- De benoeming, het ontslag, en het vaststellen van de voorwaarden van
  tewerkstelling (of een wijziging daarvan) of de overdracht of het ontslag van
  een senior medewerker van de vennootschap wiens basissalaris
  (commissies en bonussen niet inbegrepen) meer bedraagt dan 100.000 euro
  per jaar;
- De benoeming en het ontslag van de bestuurders van een lid van de Easdaq
  Group, anders dan overeenkomstig artikel 14;

Gelöscht: de warrant uitoefent die
haar was toegekend op of rond 24 juni
2010 en

Indien het Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 10%, en daarna opnieuw stijgt tot deze drempel, worden de rechten van Knight beschreven in dit artikel 18, tiende en elfde paragraaf opnieuw van toepassing."

### d. Artikel 33 zal als volgt worden gewijzigd:

### Artikel 33 - Beraadslaging

Vóór de opening van de zitting wordt een aanwezigheidslijst met de namen van de aandeelhouders en het aantal aandelen dat zij bezitten door elk van de hen of door hun gevolmachtigde ondertekend.

De algemene vergadering kan niet beraadslagen over punten die niet vermeld zijn op de agenda behalve wanneer alle aandeelhouders persoonlijk op de algemene vergadering aanwezig zijn en unaniem beslissen om over deze punten te beraadslagen.

De bestuurders beantwoorden de vragen die hen worden gesteld door de aandeelhouders met betrekking tot hun jaarverslag of de punten vermeld op de agenda. De commissaris(sen) beantwoordt(en) de vragen die hem (hen) worden gesteld door de aandeelhouders met betrekking tot zijn (hun) verslag.

Behoudens een andersluidende wettelijke of statutaire bepaling, wordt iedere beslissing door de algemene vergadering genomen bij gewone meerderheid van stemmen, ongeacht het aantal aandelen dat er is vertegenwoordigd. De blanco of ongeldige stemmen kunnen niet worden toegevoegd aan de uitgebrachte stemmen.

Niettegenstaande de voorgaande paragraaf en zonder afbreuk te doen aan de bepalingen van artikel 18 hierboven en aan een quorumvereisten en/of strengere meerderheidsvereisten die in voorkomend geval door wettelijke bepalingen worden opgelegd, en indien Citadel een Relevant Citadel Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 20%, zullen de hierna volgende beslissingen de instemming vereisen van Citadel, wanneer zij worden voorgelegd aan de vergadering van aandeelhouders (voor alle duidelijkheid wordt gespecificeerd dat het niet de bedoeling is dat dit artikel 33 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het gemeen vennootschapsrecht):

- Iedere wijziging aan de statuten van de vennootschap (met inbegrip van elk voorstel dat de rechten van Citadel onder deze statuten wijzigt);
- De uitgifte of de toekenning van aandelen of andere effecten door de vennootschap of de creatie, toekenning of uitgifte van een optie, warrant of het recht om in te schrijven op aandelen van de vennootschap of het recht om deze te verwerven of het recht om effecten om te zetten in aandelen;
- De vaststelling of uitbetaling van een dividend of de vaststelling of het doen van enige andere uitkering door de vennootschap;
- De ontbinding van de vennootschap;
- De vermindering van het kapitaal of het inkopen, kopen of anderszins verwerven van aandelen of effecten door de vennootschap;
- Het verder onderverdelen, samenvoegen of herbenoemen van het kapitaal van de vennootschap, of een fusie in of met andere entiteiten, een volledige of partiële splitsing van de vennootschap, of een gelijkaardige transactie in de zin van artikel 676 van het Wetboek van vennootschappen;
- De verandering van de naam van de vennootschap;
- De verplaatsing van de zetel van de vennootschap;
- Het verlenen van financiële bijstand (zoals deze uitdrukking is gedefinieerd in artikel 629 van het Wetboek van vennootschappen) door de vennootschap voor de verwerving van aandelen van de vennootschap;
- Het aangaan van schulden door de vennootschap voor meer dan 25.000 euro.

Indien het Relevant Citadel Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 20%, en daarna opnieuw stijgt tot deze drempel, of erboven, worden de rechten van Citadel beschreven in dit artikel 33, vijfde paragraaf opnieuw van toepassing.

Niettegenstaande paragraaf 4 hierboven en zonder afbreuk te doen aan de bepalingen van artikel 18 hierboven en aan quorumvereisten en/of strengere meerderheidsvereisten die in voorkomend geval door wettelijke bepalingen worden opgelegd, en indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 3,75%, zullen de hierna volgende beslissingen de instemming vereisen van Knight, wanneer zij worden voorgelegd aan de vergadering van aandeelhouders (voor alle duidelijkheid wordt gespecificeerd dat het niet de bedoeling is dat dit artikel 33 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het gemeen vennootschapsrecht):

- Iedere wijziging aan de statuten van de vennootschap dewelke de rechten van Knight onder deze statuten wijzigt; en
- Op eender welk tijdstip voor 24 juni 2012, de ontbinding van de ‑ ‑ ‑ [Gelöscht: D] vennootschap.

Indien het Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 3,75%, en daarna opnieuw stijgt tot deze drempel of erboven, worden de rechten van Knight beschreven in dit artikel 33, zesde paragraaf opnieuw van toepassng.

Niettegenstaande paragraaf 4 hierboven en zonder afbreuk te doen aan de bepalingen van artikel 18 hierboven en aan quorumvereisten en/of strengere meerderheidsvereisten die in voorkomend geval door wettelijke bepalingen worden opgelegd, en indien Knight een Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) aanhoudt van ten minste 12,5%, zullen de hierna volgende beslissingen de instemming vereisen van Knight, wanneer zij worden voorgelegd aan de vergadering van aandeelhouders (voor alle duidelijkheid wordt gespecificeerd dat het niet de bedoeling is dat dit artikel 33 aan de vergadering van aandeelhouders bevoegdheden toekent die zij niet heeft onder het gemeen vennootschapsrecht):

-   Op eender welk tijdstip na 23 juni 2012, de ontbinding van de vennootschap.

Indien het Relevant Knight Aandeelhouderschap (zoals gedefinieerd in artikel 14) daalt tot onder 12,5%, en daarna opnieuw stijgt tot deze drempel of erboven, worden de rechten van Knight beschreven in dit artikel 33, zevende paragraaf opnieuw van toepassing.

Met betrekking tot de benoeming van bestuurders en/of de commissaris, wordt, indien bij een stemming over de benoeming van een bestuurder (of een commissaris) geen enkele kandidaat de absolute meerderheid van de stemmen behaalt, overgegaan tot een nieuwe stemming over de twee kandidaten die het hoogste aantal stemmen hebben behaald.

Er wordt gestemd bij handopsteken of bij naamafroeping, tenzij de algemene vergadering er met eenvoudige meerderheid van de uitgebrachte stemmen anders over beslist. Elke bestuurder mag vragen dat er gestemd wordt bij naamafroeping. Het voorgaande doet geen afbreuk aan het recht van iedere aandeelhouder om per brief te stemmen door middel van een formulier dat minstens de volgende vermeldingen bevat: (i) identificatie van de aandeelhouder; (ii) aantal stemmen dat hij kan uitbrengen; (iii) voor iedere beslissing die volgens de agenda door de algemene vergadering moet worden genomen: "ja", "neen" of "onthouding"."

* * *

# EASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

**EASDAQ**

Limited liability company
Registered office: Lei 19 Box 11, 3000 Leuven
Company number: 0455.240.893

(the "**Company**")

---

**PROPOSED AMENDMENTS TO THE ARTICLES OF ASSOCIATION OF THE COMPANY**

---

The Board of Directors (the "**Board**") hereby presents the proposed amendments to the Articles of Association of the Company on which the Extraordinary General Meeting to be held on or about 23 June 2011 will resolve (the "**EGM**"), whereby the changes to the current Articles of Association are marked in "track changes". In respect of the amendments to Article 6, the Board refers to the Special Board Report in accordance with Article 604 of the Belgian Company Code, regarding the proposal to renew and amend the authorisation to the Board to increase the Company's share capital within the framework of the "authorised capital", on which the EGM will also resolve.

*a. Article 6 will be amended as follows:*

**Article 6     Change of the Subscribed Capital**

"The Shareholders, acting in accordance with the provisions applicable to the amendment to the Articles of Association, may decide to increase or lower the subscribed capital.

Without prejudice to the shareholders meeting's right to limit or cancel the pre-emption right in accordance with the Company Code, shares subscribed for in cash must first be offered to the existing shareholders in proportion to the amount of the capital represented by their shares during a period of at least fifteen (15) days from the opening day of the subscription period. The shareholders' meeting shall fix the subscription price and the time limit for exercising this preferential subscription right.

The Shareholders shall however not be entitled to limit or cancel the pre-emption right of Knight, except for shares or securities convertible into shares to be issued : (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans; (iii) upon the exercise of the warrants issued on or about 24 June 2010 or (iv) in return for non-cash consideration.

| Formatiert: Schriftart: 10,5 pt, Schriftartfarbe: Schwarz |
| Gelöscht: Subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, theThe |
| Formatiert: Absatz-Standardschriftart, Schriftart: 10,5 pt, Schriftartfarbe: Schwarz |

1

# EASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium**
**Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893**

If the Shareholders Meeting decides to request payment of an issue premium, the issue premium shall be booked as an inalienable reserve fund which may only be decreased or removed upon a decision of the Shareholders taken in accordance with the provisions applicable to the amendment of the Articles of Association. The issue premium, like the capital, shall constitute a guarantee for third parties.

The Board of Directors shall be authorised to increase the subscribed capital in one or more transactions, by an aggregate amount not exceeding fifty million euro (50,000,000 EUR), in accordance with the conditions set by the Board. In case the capital increase is done by way of a contribution in cash, the Board (subject to what is set hereafter) will have to take into account the preferential subscription rights of the existing shareholders.

| |
|---|
| Gelöscht: once |
| Gelöscht: several times |
| Gelöscht: euros |
| Gelöscht: EURO |
| Gelöscht: through |
| Gelöscht: of |

The capital increase through the use of the authorised capital may also be done by way of a contribution in kind.

| |
|---|
| Gelöscht: through a contribution in kind. The Board of Directors may however not use the authorised capital for a capital increase through contribution in kind which is reserved for a shareholder which holds securities that represent more than 10% of the voting rights |
| Gelöscht: through |

The increase of capital through the use of the authorised capital may also be done by way of the incorporation of reserves or other elements of equity which under applicable law can be converted into capital, with or without the issuance of new shares.

The authorised capital can also be used by the Board of Directors, within the aforementioned limits, to issue warrants (whether or not linked to another security or debt instrument) or convertible bonds or bonds redeemable in shares.

In case of a capital increase through the use of the authorised capital, the issue premiums (if any) will be booked on an unavailable account "Issuance Premiums", that will constitute the guarantee of third parties in the same manner as the capital, and that can only be decreased or cancelled by way of a decision of the Company's shareholders taken in accordance with the rules applicable to the amendment of the Articles of Association, except for the conversion into capital as provided above.

| |
|---|
| Gelöscht: the Board |
| Gelöscht: Directors decides to |
| Gelöscht: the capital |
| Gelöscht: , |
| Gelöscht: , shall |
| Gelöscht: attributed to |
| Gelöscht: inalienable reserve fund "Issue |
| Gelöscht: ". This reserve fund will, like the subscribed capital, |
| Gelöscht: a |
| Gelöscht: for |
| Gelöscht: . Apart from the possibility of incorporation of reserves by the Board of Directors as provided above, this reserve fund may |
| Gelöscht: removed upon |
| Gelöscht: Shareholders |

The Board of Directors may exercise the powers resulting from the authorised capital during a period of five years following the publication of the authorisation granted by the shareholders meeting of [23 June] 2011 in the annexes to the Belgian Official Gazette.

This authorisation granted to the Board of Directors may be renewed in accordance with the applicable legal provisions. When the Board of Directors proposes a renewal of this authorisation, it will draft a motivated report indicating under which circumstances it intends to make use of the authorised capital and which objectives it thereby pursues.

| |
|---|
| Gelöscht: Article 612 |
| Gelöscht: Belgian Company Code. |
| Gelöscht: this authorisation |
| Gelöscht: seeks to fulfil |

2

# EASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

The Board of Directors shall be authorised to cancel or restrict the preferential subscription rights of the existing shareholders (including for the benefit of one or more specific persons, whether or not employees of the Company or one of its subsidiaries, in which case the particular conditions set forth in the Belgian Company Code must be respected). In which case it will provide for a justification in a special Board report to be prepared further to Article 596 (and, as the case may be, 598) of the Belgian Company Code. A report will in that case also be prepared by the statutory auditor further to Article 596 (and, as the case may be, 598) of the Belgian Company Code.

The Board of Directors shall not be entitled to limit or cancel the preferential subscription rights of Knight, except for (a) securities to be issued: (i) in respect of employee share option schemes; (ii) in respect of employee incentive plans; (iii) upon the exercise of the warrants issued on 7 August 2009 and on 24 June 2010 or (iv) in return for non-cash consideration ; or (b) if Knight consents thereto.

Any decision by the Board of Directors to issue securities through the use of the authorised capital is subject to the statutory limitations set forth in Articles 603 through 606 of the Belgian Company Code. The Board of Directors shall be authorised to cancel or restrict the preferential subscription rights, for the benefit of one or more defined persons whether or not employees of the Company or one of its subsidiaries. In that case, the conditions set forth in the Belgian Company Code must be respected."

*b. Article 9 will be amended as follows:*

**Article 9       Transfer of Shares**

"Some of the shareholders of the Company have entered into a shareholders' agreement with the Company on or about 24 June 2010, as amended from time to time, which includes certain provisions dealing with the transfer of the shares of the Company. Prior to any transfer of shares, the Board of Directors shall confirm that these provisions have been complied with. For the avoidance of doubt, this confirmation is only a technical requirement and shall not be construed as making such transfer of shares subject to a prior board approval within the meaning of article 510 of the Belgian Company Code."

*c. Article 18 will be amended as follows:*

**Article 18      Proceedings**

3

# €ASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

"For a meeting of the Board of Directors to be quorate, in addition to the requirements of Belgian company law, a minimum of one Citadel Director and the Knight Director must be present, in person, by telephone or by proxy. However, in the event that: (i) the Citadel Relevant Shareholding falls below 20%, a meeting of the Board of Directors can be quorate (subject to the requirements of Belgian company law) even if no Citadel Director is present; and (ii) the Knight Relevant Shareholding falls below 3.75%, a meeting of the Board of Directors can be quorate (subject to the requirements of Belgian company law) even if no Knight Director is present. The presence of a minimum of one Citadel Director will be required again if the Citadel Relevant Shareholding subsequently increases to 20% or above and the presence of the Knight Director will be required again if the Knight Relevant Shareholding subsequently increases to 3.75% or above. If no Citadel Director has been appointed and/or the Knight Director has not been appointed, the presence of a Citadel Director and/or the Knight Director (as applicable) shall not be required for a Board meeting to be quorate. The requirement for the Knight Director to be present shall be disregarded in respect of any agenda item if the Knight Director is not present at two consecutives meetings of the Board of Directors provided the Knight Director has been given due notice of such meeting and the relevant agenda item.

In exceptional cases duly justified by emergency and corporate interest, the decisions of the Board of Directors may be taken by written and unanimous consent of all directors. This procedure may however not be used to prepare the annual accounts or decide to increase the capital within the limits of the authorised capital.

The Board of Directors may only deliberate on items not listed in the agenda if all the directors are present or validly represented at the meeting and unanimously decide to deliberate on these items.

Any director may authorise another director by letter, facsimile, e-mail or any other written means to represent him at a Board meeting. A director may represent more than one of his colleagues.

The directors shall comply with the provisions relating to conflicts of interests referred to in the Company Code.

Decisions are taken at a simple majority of the votes. However, subject to Citadel having a Citadel Relevant Shareholding (as defined in Article 14) of at least 20%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of at least one Citadel Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of

4

# EASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium**
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

Directors) must be approved by a simple majority of the Directors, including at least one Citadel Director (and the below matters will not be capable of further delegation by the Board of Directors). Citadel may nominate one (or more) Citadel Director(s) to exercise such consent right, in which case only the nominated Citadel Director(s) may exercise such right. These actions are :

- the calling of any unpaid capital on the shares of the Company issued to Citadel or exercising any rights in respect of such uncalled amount for such shares;

- the proposal to amend the Articles of Association of the Company (including any proposal which varies the Citadel's rights thereunder) or of any of its subsidiaries, within the meaning of Article 6 of the Company Code (the Company and any such subsidiary being hereinafter referred to as the "Easdaq Group");

- the issue or allotment of any share capital or any other security by any member of the Easdaq Group or the creation, grant or issue of any option, warrant or right to subscribe or acquire, or convert any security into, any share capital of any member of the Easdaq Group, or any proposal to do any of the above;

- any decision or proposal to declare or pay any dividend or to declare or make any other distribution by any member of the Easdaq Group;

- any material change in the nature or scope of the business of the Company;

- the raising of any indebtedness by the Company in excess of €25,000 (for the avoidance of doubt, excluding inter-company indebtedness between members of the Easdaq Group) or incurring trade credit in excess of €100,000 per occurrence;

- the establishment or acquisition of any affiliate by the Company;

- the granting, or permitting the creation, of any security or other encumbrance over any part of the undertaking, property or assets of, the Company with a fair market value exceeding €10,000;

- the passing of any resolution or proposal for the winding-up of any member of the Easdaq Group or any application for the appointment of a receiver or an administrator over the assets of the Company;

5

# EASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

- the giving of any guarantee or indemnity by the Company which may lead to a liability of more than €10,000 (except in respect of a liability of a member of the Easdaq Group);

- the commencement or settlement of any legal or arbitration proceedings involving an amount exceeding €120,000 (other than routine debt collection);

- the entering into of any contract or commitment which is outside the ordinary course of business or would involve a total outlay by the Company over the term of the contract in excess of €250,000 or which is otherwise material to the business of the Company;

- the making of any loan or the granting of any credit by the Company other than in the ordinary course of business (and except in respect of a liability of a member of the Easdaq Group);

- the proposal to reduce the share capital or any redemption, purchase or other acquisition by any member of the Easdaq Group of any shares or securities of that member of the Easdaq Group (whether out of capital or otherwise);

- the proposal to sub-divide, consolidate or re-denominate the share capital of any member of the Easdaq Group and all decisions or proposals to merge any member of the Easdaq Group into or with other entities, effect a full or partial split of any member of the Easdaq Group or any assimilated transactions within the meaning of Article 676 of the Company Code;

- any change in the name of any member of the Easdaq Group, or any proposal to that effect;

- any change to the registered office or other offices of any member of the Easdaq Group;

- the acquisition, sale or transfer outside of the Easdaq Group of : (i) cash or cash equivalent or any other form of asset exceeding €100,000 per transfer (and aggregating connected transfers); or (ii) any interest of the Company in Equiduct Systems Limited (hereinafter referred to as "Equiduct"), except if already specifically approved under any sub-paragraph of this Article 18;

- agreeing the annual budget or business plan (such business plan to be in accordance with clause 9.8 of the investment agreement between Citadel, BSX, Dr. Peeters and the Company dated 20 July 2009) of the Easdaq Group;

- the repurchase or transfer of any interest in equity or debt or any proposal to that effect;

6

# EASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lel 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

- the giving of financial assistance (as that expression is defined in Article 629 of the Company Code) by the Company for the acquisition of any shares of the Company;

- the appointment, the setting of the terms and conditions of employment (or any change thereto) or the transfer or discharge of any senior employee of the Company whose base salary (excluding any commissions or bonuses) exceeds €100,000 per annum;

- the entering into, alteration or cancellation of any agreement or arrangement between a member of the Easdaq Group on the one side and Citadel, BSX, Knight, Dr. Peeters (or an Affiliate or heirs of Citadel, BSX, Knight or Dr. Peeters) and/or any other direct or indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole on the other;

- any other transaction or arrangement by a member of the Easdaq Group for the benefit of Citadel, BSX, Knight, Dr. Peeters (or an affiliate or heir of Citadel, BSX, Knight or Dr. Peeters) and/or any other direct or indirect shareholder of the Company holding an interest in 1% or more of the issued shares of the Company as a whole;

- the registration of any intellectual property and the licensing of such intellectual property by the Company outside the ordinary course of business;

- agreeing pricing and other terms with participants (i.e., either (i) a person admitted to Börse Berlin, if that person has entered into a participant agreement with BSX (or, as the case may be, another party) to use an exchange which is supported by the Easdaq Group or (ii) a participant on one or more of the stock exchanges or on any trading platforms to which the Company provides services) and customers;

- agreeing any undertakings or terms with any relevant regulatory authority;

- the appointment and removal of any directors of Equiduct or other members of the Easdaq Group other than in accordance with Article 14;

- setting or amending the accounting policies of the Company; and

- the exercise of shareholder rights by a member of the Easdaq Group in respect of any other member of the Easdaq Group.

7

# EASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium**
**Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893**

In the event that the Citadel Relevant Shareholding falls below 20%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Citadel Directors will again be entitled to such rights as set out in this Article 18 paragraph 6 if the Citadel Relevant Shareholding subsequently increases to 20% or above.

In addition, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are :

- the proposal to amend the Articles of Association of the Company which varies Knight's rights thereunder; and

-

- any transactions of a member of the Easdaq Group with Citadel, BSX, Dr Peeters or any other direct or indirect shareholder holding an interest of 1% or more of the issued shares of the Company as a whole and any amendment to any existing such transaction (in either case other than transactions or amendments on arms length terms).

In the event that the Knight Relevant Shareholding falls below 3.75%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Knight Director will again be entitled to such rights as set out in this Article 18 paragraph 7 if the Knight Relevant Shareholding subsequently increases to 3.75% or above.

In addition, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, none of the actions listed below shall be taken by the Board of Directors at any time prior to 24 June 2012 and no resolution in respect of any such actions shall be proposed to the shareholders at any time prior to 24 June 2012, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board

8

# €ASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are :

- any material change in the nature of the business of the Easdaq Group;

- agreeing the annual budget and business plan of the Easdaq Group or any material changes to or deviations from the annual budget and business plan. Where applicable, if the Knight Director does not approve the annual budget and business plan or material changes or deviations, the previous year's annual budget shall apply to the then current year with respect to that line item (with up to 20% increases) and the previous year's business plan shall continue to apply;

(the preceding two paragraphs shall be construed to permit the development of new products by the Easdaq Group or acquisitions of any person, asset or business provided such is funded by internally generated positive cashflow, or amounts other than consideration provided by Knight for the subscription of shares, or at no material cost or with the consent of the Knight Director which shall not be unreasonably withheld or delayed);

- any change in the regulatory status of any member of the Easdaq Group, which has a direct effect upon the Equiduct market segment as operated by BSX, including any amendments to or renewals of the arrangements with BSX as set out in the master agreement between BSX, Equiduct and the Company dated 7 August 2009 and the outsourcing agreement between BSX, Equiduct and the Company dated 7 August 2009; and

- the voting of any resolution or proposal for the winding-up of, or any application for the appointment of a receiver or an administrator over any member of the Easdaq Group.

If, at any time prior to 24 June 2012, the Knight Relevant Shareholding falls below 3.75%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Knight Director will again be entitled to such rights as set out in this Article 18 paragraph 8 if the Knight Relevant Shareholding subsequently increases to 3.75% or above.

In addition, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 12.5%, none of the actions listed below shall be taken by the Board of Directors at any time after 23 June 2012 and no resolution in respect of any such actions shall be proposed to the shareholders at any time after 23 June 2012, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of Directors), respectively proposals in respect

9

# EASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are :

-       any material change in the nature of the business of the Easdaq Group;

-       agreeing the annual budget and business plan of the Easdaq Group or any material changes to or deviations from the annual budget and business plan. Where applicable, if the Knight Director does not approve the annual budget and business plan or material changes or deviations, the previous year's annual budget shall apply to the then current year with respect to that line item (with up to 20% increases) and the previous year's business plan shall continue to apply;

        (the preceding two paragraphs shall be construed to permit the development of new products by the Easdaq Group or acquisitions of any person, asset or business provided such is funded by internally generated positive cashflow, or amounts other than consideration provided by Knight for the subscription of shares, or at no material cost or with the consent of the Knight Director which shall not be unreasonably withheld or delayed);

-       any change in the regulatory status of any member of the Easdaq Group, which has a direct effect upon the Equiduct market segment as operated by BSX, including any amendments to or renewals of the arrangements with BSX as set out in the master agreement between BSX, Equiduct and the Company dated 7 August 2009 and the outsourcing agreement between BSX, Equiduct and the Company dated 7 August 2009; and

-       the voting of any resolution or proposal for the winding-up of, or any application for the appointment of a receiver or an administrator over any member of the Easdaq Group.

•       If at any time after 23 June 2012, the Knight Relevant Shareholding falls below 12.5%, any and

        all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Knight Director will again be entitled to such rights as set out in this Article 18 paragraph 9 if the Knight Relevant Shareholding subsequently increases to 12.5% or above.

In addition, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 10%, none of the actions listed below shall be taken by the Board of Directors and no resolution in respect of any such actions shall be proposed to the shareholders, without the prior consent of the Knight Director, meaning that decisions in respect of the below matters (if capable of being taken by the Board of

10

---

Gelöscht: until 24 June 2012,

Gelöscht: until 24 June 2012,

Gelöscht: ;

Gelöscht: ¶

Gelöscht: any transactions of a member of the Easdaq Group with Citadel, BSX, Dr Peeters or any other direct or indirect shareholder holding an interest of 1% or more of the issued shares of the Company as a whole and any amendment to any existing such transaction (in either case other than transactions or amendments on arms length terms).

Gelöscht: In the event that the Knight Relevant Shareholding falls below 3.75%, any and all of the foregoing decisions and proposals can be taken at a simple majority of the votes. The Knight Director will again be entitled to such rights as set out in this Article 18 paragraph 8

Gelöscht: 3.75

Formatiert: Abstand Vor: 6 pt, Tabstopps: 1,25 cm, Links

Gelöscht: exercising the warrant it was granted on or about 24 June 2010 and

# EASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium**
**Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.693**

Directors), respectively proposals in respect of the below matters (if decisions in such matters are not capable of being taken by the Board of Directors) must be approved by a simple majority of the Directors, including the Knight Director (and the below matters will not be capable of further delegation by the Board of Directors). These actions are:

-       approving the establishment and terms of any employee share option or incentive scheme or plan that involves an allocation or grant of options, awards or interests over a number of shares which may exceed 7% of the Company's shares; and

-       subject to Knight and its Affiliates having traded at least 10% of the average daily volume of the Easdaq Trading System in the preceding three months, approving any change in the regulatory status of any member of the Easdaq Group, which has a direct effect upon the Equiduct market segment as operated by BSX, including any amendments to or renewals of the arrangements with BSX as set out in the master agreement between BSX, Equiduct and the Company dated 7 August 2009 and the outsourcing agreement between BSX, Equiduct and the Company dated 7 August 2009.

Furthermore, subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 10%, Knight shall be consulted at least 10 business days in advance over the following matters in respect of each member of the Easdaq Group:

-       the annual business plan and budget of the Easdaq Group;

-       the acquisition or sale of assets not provided for in the annual business plan of the Easdaq Group and with a value greater than €500,000 per asset;

-       the appointment, dismissal and determination of the terms of employment of any senior employee of the Company whose base salary (excluding any commissions or bonuses) exceeds €100,000 per annum;

-       the appointment and removal of any directors of a member of the Easdaq Group other than in accordance with Article 14.

If the Knight Relevant Shareholding (as defined in Article 14) falls below 10% and subsequently increases to 10% or above, then Knight's rights under Article 18 paragraphs 10 and 11 shall apply again."

11

**Gelöscht:** .
¶
<#>between 24 June 2012 and 24 June 2014, agreeing the annual business plan and budget of the Easdaq Group or any material changes to or deviations from the annual business plan or budget or material changes or deviations materially deviate from the business position of the Easdaq Group as at 24 June 2012. Where applicable, if the Knight Director does not approve the annual budget and business plan or any material changes or deviations the previous year's annual budget shall apply to the current year with respect to that line item (with up to 20% increase) and the previous year's business plan shall continue to apply;¶

**Gelöscht:** (the preceding paragraph shall be construed to permit the development of new products by the Easdaq Group or acquisitions of any person, asset or business provided such is funded by internally generated positive cashflow, or amounts other than consideration provided by Knight for the subscription of shares, or at no material cost or with the consent of the Knight Director which shall not be unreasonably withheld or delayed); and

**Formatiert:** Einzug: Hängend: 0,95 cm, Tabstopps: Nicht an 2,5 cm + 3,75 cm

**Gelöscht:** exercising the warrant it was granted on or about 24 June 2010 and

# EASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

*d. Article 33 will be amended as follows:*

## Article 33    Proceedings

"An attendance list, indicating the shareholders' names and the number of shares held by each shareholder shall be signed by each shareholder or his proxy holder prior to the meeting.

The Shareholders may only discuss matters set out in the agenda, unless all shareholders are present and decide unanimously to discuss other matters.

The directors shall answer the shareholders' questions on the management report or on any other item on the agenda. The statutory auditor(s) shall answer the shareholders' questions on his/their report.

Except as provided by law or by these Articles of Association, all resolutions shall be adopted by the shareholders by a simple majority of the votes cast, irrespective of the number of shares represented at the meeting. Blank and invalid votes shall not be counted in the votes cast.

Notwithstanding the preceding paragraph and without prejudice to the provisions of Article 18 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, and subject to Citadel having a Citadel Relevant Shareholding (as defined in Article 14) of at least 20%, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that this Article 33 does not intend to attribute powers to the shareholders meeting that it does not have under common company law), shall require the consent of Citadel:

-    the amendment of the Articles of Association of the Company (including any proposal which varies the Citadel's rights thereunder);

-    the issue or allotment of any share capital or any other security by the Company or the creation, grant or issue of any option, warrant or right to subscribe or acquire, or convert any security into, any share capital of the Company;

-    the declaration or payment of any dividend or the declaration or making of any other distribution by the Company;

-    the winding-up of the Company;

12

# €ASDAQ

*Unofficial English translation of a Dutch original*

EASDAQ NV • Lei 19 • Box 11 • B-3000 Leuven • Belgium
Tel +32 16 28 41 10 • Fax +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

- the reduction of the share capital or any redemption, purchase or other acquisition of any shares or securities of the Company;

- the sub-division, consolidation or redenomination of the share capital of the Company or any merger into or with other entities, full or partial split of the Company or assimilated transactions within the meaning of Article 676 of the Company Code;

- any change in the name of the Company;

- any change to the registered office of the Company;

- the giving of financial assistance (as that expression is defined in Article 629 of the Company Code) by the Company for the acquisition of any shares of the Company;

- the raising of any indebtedness by the Company in excess of €25,000.

If the Citadel Relevant Shareholding (as defined in Article 14) falls below 20% and subsequently increases to 20% or above, then Citadel's rights under this Article 33 paragraph 5 shall apply again.

Notwithstanding paragraph 4 above and without prejudice to the provisions of Article 18 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, and subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 3.75%, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that this Article 33 does not intend to attribute powers to the shareholders meeting that it does not have under common company law), shall require the consent of Knight :

- the amendment of the Articles of Association of the Company which varies Knight's rights thereunder; and

- at any time prior to 24 June 2012, the winding-up of the Company.

If the Knight Relevant Shareholding (as defined in Article 14) falls below 3.75% and subsequently increases to 3.75% or above, then Knight's rights under this Article 33 paragraph 6 shall apply again.

13

# €ASDAQ

*Unofficial English translation of a Dutch original*

**EASDAQ NV** • Lei 19 • Box 11 • B-3000 Leuven • Belgium
**Tel** +32 16 28 41 10 • **Fax** +32 16 28 41 11 • RPR Leuven, VAT BE 0455.240.893

Notwithstanding paragraph 4 above and without prejudice to the provisions of Article 18 above or, as the case may be, to quorum requirements and/or more stringent majority requirements laid down by law, and subject to Knight having a Knight Relevant Shareholding (as defined in Article 14) of at least 12.5%, the following decisions, when submitted to the shareholders meeting (for the avoidance of doubt, it is specified that this Article 33 does not intend to attribute powers to the shareholders meeting that it does not have under common company law), shall require the consent of Knight :

- at any time after 23 June 2012, the winding-up of the Company.

If the Knight Relevant Shareholding (as defined in Article 14) falls below 12.5% and subsequently increases to 12.5% or above, then Knight's rights under this Article 33 paragraph 7 shall apply again.

In the case of an appointment of directors and/or auditor, if at the vote no candidate obtains the absolute majority, a new vote shall be organized between the two candidates having obtained the highest number of votes.

Voting shall be by a show of hands or by roll call, unless the Shareholders decide otherwise by a simple majority of the votes cast. Any director may call for the vote to be conducted by roll call. The foregoing does not affect the right of each shareholder to vote by letter, by means of a form containing the following points: (i) identification of the shareholder; (ii) number of votes that he/she can exercise; (ii) for each decision that, pursuant to the agenda, must be taken by the Shareholders: "yes", "no" or "abstention"."

* * *

Done on 6 June 2011.

For the Board of Easdaq NV:

Artur Fischer

14

BIJLAGE 3 — BUITENGEWONE ALGEMENE VERGADERING VAN EASDAQ NV

## Volmacht

Gelieve deze volmacht (die werd vastgesteld door de Raad als standaard volmachtformulier overeenkomstig artikel 30 van de statuten) waar nodig in te vullen en te ondertekenen indien u wenst te worden vertegenwoordigd op de buitengewone algemene vergadering van Easdaq NV, die zal worden gehouden op of rond 23 juni 2011 (de "BAV"). Gelieve deze volmacht onmiddellijk na ontvangst, correct ingevuld en ondertekend, via koerier of per fax (+44(0)20 3102 4482) te bezorgen aan EASDAQ NV, 3000 Leuven, Lei 19 bus 11, ter attentie van de heer Anthony Ball (CFO Equiduct Systems Limited), en dit ten laatste op 21 Juni 2011.

Alle houders van aandelen op naam dienen, overeenkomstig artikel 29 van de statuten, om toegelaten te worden tot de AV, de Raad kennis te geven van hun intentie de BAV bij te wonen, via e-mail op investor-relations@equiduct.eu en dit ten laatste op 21 Juni 2011.

Ondergetekende:

Naam:    _____

Adres/Zetel:    _____

    _____

Houder van aantal aandelen:    _____

Stelt als bijzondere lasthebber aan, individueel en met de macht om in de plaats te stellen:

   Anthony Ball, 19 Coleford Road, SW18 1AD, London, Verenigd Koninkrijk

aan wie ondergetekende volmacht verleent om hem/haar te vertegenwoordigen op de buitengewone algemene vergadering van de vennootschap Easdaq NV, met zetel te Lei 19 bus 11, B-3000 Leuven (België) (ondernemingsnummer 0455.240.893 – RPR Leuven), die zal worden gehouden op de kantoren van Berquin Notarissen, Lloyd Georgelaan 11 te 1000 Brussel, op of rond 23 juni 2011 om 11:00 CET, en die zal beraadslagen omtrent de agenda vermeld als bijlage bij de oproepingsbrief.

De lasthebber mag ondermeer, zonder hiertoe beperkt te zijn:

BUITENGEWONE ALGEMENE VERGADERING VAN EASDAQ NV

- Deelnemen aan elke vergadering met dezelfde agenda (mogelijks, met uitzondering van minder belangrijke details) voor het geval de eerste vergadering niet geldig zou kunnen beraadslagen of niet zou worden (kunnen) gehouden op de hierboven vermelde datum en uur.

- Deelnemen aan alle beraadslagingen en in naam van ondergetekende alle voorstellen die betrekking hebben op de agenda goedkeuren.

- Verklaren dat ondergetekende zichzelf als regelmatig opgeroepen beschouwt, dat hij/zij de bepalingen kent van de artikelen 64 1°, 178, 533 en 535 van het Wetboek van vennootschappen, en dat hij/zij verzaakt aan de oproepingsformaliteiten en -termijn en aan het instellen van een eventuele nietigheidsvordering wegens een onregelmatigheid naar de vorm.

- Verklaren dat ondergetekende de verslagen vermeld op de agenda vooraf heeft ontvangen, dat hij/zij over voldoende tijd beschikte om deze verslagen grondig te bestuderen en dat hij/zij geen vragen of opmerkingen heeft betreffende deze verslagen.

- Verklaren dat ondergetekende een integrale kopie heeft ontvangen van het ontwerp van de statutenwijzigingen waarnaar wordt verwezen in de agenda van de buitengewone algemene vergadering.

- Beslissen tot wijziging van de statuten van de vennootschap substantieel in lijn met het ontwerp aangehecht aan de agenda van de buitengewone algemene vergadering;

- Beslissen tot goedkeuring van de hernieuwing en wijziging van de toekenning van het toegestaan kapitaal

- In het algemeen, stemmen voor alle voorstellen betreffende de agendapunten.

- In het algemeen, alle processen-verbaal, aanwezigheidslijsten, overeenkomsten, bevestigingen, kennisgevingen en ieder ander document tekenen, in de plaats stellen en, in het algemeen, alles doen dat nuttig of noodzakelijk is voor de uitvoering van deze volmacht, voor zover nodig met belofte van bekrachtiging.

<u>Instructies aan de lasthebber</u>

Ondergetekende geeft hierbij uitdrukkelijk opdracht aan de lasthebber om deel te nemen aan de buitengewone algemene vergaderingen, zelfs indien het bewijs niet voorligt dat de aandeelhouders, de bestuurders, de commissaris en/of de andere relevante houders van effecten geldig zijn opgeroepen tot de buitengewone algemene vergaderingen en, voor zover toepasselijk, indien de betrokkenen niet allen hebben verzaakt aan (i) de termijnen en de vormvereisten voor oproeping tot de buitengewone algemene vergaderingen en (ii) het recht om bepaalde verslagen en andere documenten te ontvangen, zoals voorgeschreven door de relevante artikelen van het Wetboek van vennootschappen.

BUITENGEWONE ALGEMENE VERGADERING VAN EASDAQ NV

## Schadeloosstelling van de lasthebbers

Ondergetekende verbindt er zich hierbij toe om de lasthebber schadeloos te stellen voor elke schade die hij/zij zou kunnen oplopen ten gevolge van enige handeling gesteld ter uitvoering van deze volmacht, op voorwaarde evenwel dat hij/zij de grenzen van zijn/haar bevoegdheden heeft nageleefd. Verder verbindt ondergetekende zich ertoe niet de nietigheid van enig besluit goedgekeurd door de lasthebber te vorderen en geen enkele schadevergoeding van hem/haar te vorderen, op voorwaarde evenwel dat laatstgenoemde de grenzen van zijn/haar bevoegdheden heeft nageleefd.

**Gedaan te:** _____(plaats),

**Op:** _____(datum).


_____        _____
(handtekening)                          (handtekening)


_____        _____
(naam)                                     (naam)


_____        _____
(functie)                                   (functie)

*Extraordinary shareholders meeting Easdaq NV on or about 23 June 2011*

*Unofficial English translation of a Dutch original*

## Power of attorney

Please fill out and sign this proxy (which is the proxy format fixed by the Board in accordance with Article 30 of the Articles of Association) in the appropriate spaces if you wish to be represented at the extraordinary shareholders meeting of EASDAQ NV, to be held on or about 23 June 2011 (the "EGM"). Please send this proxy, duly completed and signed, immediately upon receipt by express courier or telefax (+44(0)20 3102 4482) to EASDAQ NV, 3000 Leuven, Lei 19, Box 11, for the attention of Mr. Anthony Ball (CFO of Equiduct Systems Limited), at the latest on 21 June 2011.

In accordance with Article 29 of the Articles of Association, in order to be admitted to the EGM, all owners of registered shares must notify the Board of their intention to attend the EGM by e-mail at investor-relations@equiduct.eu at the latest on 21 June 2011.

**PLEASE ALSO FILL OUT AND SIGN THE DUTCH PROXY FORM ACCORDINGLY**

The undersigned:

**Name:** _____

**Address/registered office:** _____

_____

**Holder of number of shares:** _____

**Appoints as its special proxyholder**, individually and with full power of substitution:

Mr.  Anthony  Ball,  19  Coleford  Road,  SW18  1AD, London, United Kingdom,

to whom the undersigned gives power of attorney to represent it for the purposes of the extraordinary general meeting of the company Easdaq NV, having its registered offices at Lei 19 box 11, B-3000 Leuven (Belgium) (number 0455.240.893 – RPR Leuven) that will be held at the offices of Berquin Notarissen, Lloyd Georgelaan 11, B-1000 Brussels, on or about 23 June 2011 at 11:00 am CET, and that shall resolve on the agenda attached to the notice.

*Extraordinary shareholders meeting Easdaq NV on or about 23 June 2011*

*Unofficial English translation of a Dutch original*

**The proxyholder may, amongst other things, without limitation:**

- Participate in any meeting with the same agenda (possibly, except for minor details) in case the first meeting could not validly deliberate or could not be held on the date mentioned above.

- Participate in all deliberations and in the name and on behalf of the undersigned resolve to approve all proposals in relation to the agenda.

- Declare that the undersigned considers itself as having been validly convened, that it is aware of the provisions of sections 64,1°, 178, 533 and 535 of the Belgian Company Code, and that it renounces to the notice period and formalities and to the right to initiate a possible claim to obtain the nullity of any decision taken on the basis of a formal irregularity.

- Declare that the undersigned has received in advance all reports mentioned on the agenda, that it had sufficient time to review them and that it has no questions regarding or remarks in relation to these reports.

- Declare that the undersigned has received an integral copy of the draft amendments to the Articles of Association reference to which is made in the agenda of the EGM.

- Resolve to amend the Articles of Association of the Company substantially in the form as attached to the agenda of the EGM.

- Resolve to vote in favour of the renewal and amendment of the grant of the authorized capital.

- In general, vote in favour of all proposals contained in the agenda.

- In general, to execute all minutes, attendance lists, agreements, confirmations, notifications and any other document, to substitute and, in general, to do all that is useful or necessary for the performance of this power of attorney, with a promise of ratification, to the extent necessary.

**Instructions to the proxyholder**

The undersigned hereby explicitly authorizes and instructs the proxyholder to take part in the extraordinary general meeting, even if no proof is presented that the shareholders, the directors, the statutory auditor and/or the other relevant holders of securities have been validly convened for the extraordinary general meeting and, to the extent applicable, if not all relevant parties have renounced to (i) the notice terms and formalities for the extraordinary

general meeting and (ii) the right to receive specific reports and other documents, as provided by the relevant sections of the Belgian Companies Code.

<u>Indemnification of the proxyholder</u>

The undersigned undertakes to indemnify the proxyholder for any damage it could sustain as a result of any action undertaken by the proxyholder in performing this power of attorney, to the extent that the proxyholder has observed the limits of its powers. In addition, the undersigned undertakes not to claim the nullity of any resolution approved by the proxyholder and not to claim any damages from it, to the extent that the proxyholder has observed the limits of its powers.

**Done on:**_____(date).

_____          _____
(signature)                      (signature)

_____          _____
(name)                           (name)

_____          _____
(function)                       (function)