**Hearing Date and Time: July 20, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: July 13, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons


Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------x

## NOTICE OF MOTION PURSUANT TO SECTIONS 105(a) AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6006, 9014 AND 9019 FOR AUTHORIZATION TO (I) TERMINATE AND SETTLE OR (II) REJECT CERTAIN PREPETITION DERIVATIVES CONTRACTS WITH TRUSTS FOR WHICH U.S. BANK NATIONAL ASSOCIATION SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Brothers Special Financing Inc. as debtor and debtor-in-possession, together with

Lehman Brothers Holdings Inc. and their affiliated debtors in the above-referenced chapter 11

cases (collectively, the "Debtors"), pursuant to sections 105(a) and 365 of the Bankruptcy Code

and Bankruptcy Rules 6006, 9014 and 9019, for authorization to (i) terminate and settle or (ii)

reject certain prepetition derivatives contracts and related relief, all as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **July 20, 2011 at**

**10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Robert J. Lemons, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Elisabetta Gasparini Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Chapman and Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603, Attn:  James E. Spiotto, Esq. and Franklin H. Top, III, Esq., attorneys for U.S. Bank National Association, so as to be so filed and received by no later than **July 13, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: June 28, 2011
     New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons


Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**In re**                                            :      **Chapter 11 Case No.**
                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :      **08-13555 (JMP)**
                                                     :
                              **Debtors.**           :      **(Jointly Administered)**
-------------------------------------------------------------------x

**MOTION PURSUANT TO SECTIONS 105(a) AND 365**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES**
**6006, 9014 AND 9019 FOR AUTHORIZATION TO TERMINATE**
**AND SETTLE OR REJECT CERTAIN PREPETITION DERIVATIVES**
**CONTRACTS WITH TRUSTS FOR WHICH U.S. BANK NATIONAL**
**ASSOCIATION SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF"), as debtor and debtor-in-

possession, together with Lehman Brothers Holdings Inc. ("LBHI") and their affiliated debtors in

the above-referenced chapter 11 cases (collectively, the "Debtors"), file this Motion and

respectfully represent:

**Background**

1.      Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors for the Debtors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On December 16, 2008, this Court entered an order (as amended or supplemented to date, the "Derivatives Settlement Procedures Order") establishing procedures for the settlement or assumption and assignment of prepetition derivatives contracts [Docket No. 2257].

## Jurisdiction

4.    This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

5.    The Debtors request the entry of an order, pursuant to sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 6006, 9014 and 9019, (i) approving the termination of the derivatives contracts listed on Exhibit A annexed hereto (the "Settled Derivatives Contracts") and the settlement of all amounts due under such Derivatives Contracts in the amounts set forth in Exhibit A (the "Settlement Amounts"), (ii) allowing the Claims (as defined below) in the respective Settlement Amounts and (iii) authorizing LBSF's rejection of the derivatives contract listed on Exhibit B annexed hereto (the "Rejected Derivatives Contract" and together with the Settled Derivatives Contracts, the "Derivatives Contracts"), and allowing

the damage claim resulting from the rejection in the amount set forth on <u>Exhibit B</u> hereto  (the "<u>Damage Amount</u>").

## The Derivatives Contracts

6.      In the ordinary course of their businesses prior to the Commencement Date, the Debtors entered into various types of derivatives contracts, including derivatives contracts that (i) provided other parties protection against changes in interest rates (the "<u>Caps and Corridors</u>") and (ii) guaranteed certain interest payments to holders of mortgage backed securities (the "<u>Negative Amortization Trades</u>"), in each case, in exchange for a fee.  Since the Commencement Date, the Debtors have diligently sought to terminate and settle their large portfolio of derivatives contracts in order to fix the amount of their liabilities or receivables under such contracts.

7.      LBSF is party to one or more Derivatives Contracts with the various trusts or special purpose vehicles listed on <u>Exhibits A and B</u> (collectively, the "<u>Trusts</u>").  The Negative Amortization Trades were entered into to guarantee certain payments to the holders of certain mortgage-backed securities.  The terms of certain of the mortgages that underlie the mortgage-backed securities provide that the borrowers may elect to pay only a portion of the accrued interest on the loans and have the remaining amount added to the principal amount of the loans.  If multiple borrowers make such election in any given month, the issuer of the mortgage-backed securities (the "<u>Issuer</u>") may not receive enough proceeds to pay the stated interest rates on its securities.  The Negative Amortization Trades with LBSF provide that if the Issuer does not receive sufficient proceeds from the mortgage loans to pay the stated interest rates on its issued securities, LBSF will pay the shortfall to the Trust.  In exchange, LBSF receives interest on any advances made under the Negative Amortization Trades, and is entitled to be repaid for advances out of any principal payments received by the Issuer on the underlying mortgage loans prior to

the distribution of such principal proceeds to the noteholders.  LBHI guaranteed LBSF's payment obligations under each of the Negative Amortization Trades.  The Negative Amortization Trades are "out-of-the money" to the Debtors and could possibly move further "out-of-the-money."

8.        Pursuant to the terms of some of the Caps and Corridors, the Trusts paid an upfront payment to LBSF and LBSF has an obligation to pay to the Trusts certain amounts to the extent that one-month USD-LIBOR-BBA ("One Month LIBOR") exceeds a specified rate. The Rejected Derivatives Contract provides for the Trust to make periodic payments to LBSF in exchange for certain payments from LBSF.  Under the terms of other of the Caps and Corridors, the Trusts paid an upfront payment to LBSF and LBSF has an obligation to pay to the Trusts certain amounts to the extent that One Month LIBOR is within a specified range of rates.  LBHI guaranteed LBSF's payment obligations under each of the Caps and Corridors.  The Caps and Corridors are "out-of-the money" to the Debtors and, if the One Month LIBOR rate increases dramatically, such contracts could possibly move further "out-of-the-money."

9.        U.S. Bank National Association ("U.S. Bank") serves as indenture trustee or grantor trustee (in such capacity, the "Trustee") for each of the Trusts.

10.       Unlike many of the Debtors' derivatives contracts, these Derivatives Contracts can never move "in-the-money" to the Debtors.  Certain of the Derivatives Contracts have extremely long maturities, up to 36 years in some cases.  Accordingly, the Debtors have determined that it would be prudent to (i) terminate and settle or (ii) reject the Derivatives Contracts in order to fix the amount owed by LBSF and LBHI under the Derivatives Contracts and limit any increase in damages that could be claimed by the Trusts.[1]

---

[1] With respect to five of the Negative Amortization Trades, since the principal amount of the relevant mortgage-backed securities has been reduced to zero dollars, such securities no longer accrue interest and therefore, the

11.     The Debtors are authorized to terminate and settle the Settled Derivatives Contracts without further Court approval pursuant to the Derivatives Settlement Procedures Order.  However, the Trustee has agreed to the terms of the proposed termination and settlement or rejection of the Derivatives Contracts, including the Settlement Amounts and Damage Amount, subject to the filing of this Motion, which provides the Trustee, the Trusts and the holders[2] of the securities issued by the Trusts with notice of, and an opportunity to object to, the proposed termination and settlement or rejection of the Derivatives Contracts.  The Trustee has notified holders of securities issued by the Trusts and requested that they provide instruction with respect to the Derivatives Contracts, but has received no response and has not been directed by such holders to terminate and settle or agree to the damage amount on account of the Derivatives Contracts since the Commencement Date.

### The Claims

12.     Other than with respect to the Rejected Derivatives Contract, the Trustee, in its capacity as Trustee, timely filed proofs of claim with respect to each Derivatives Contract in compliance with the terms of the Bar Date Order[3] asserting claims in unliquidated amounts against (i) LBSF based on the Derivatives Contracts (the "Derivatives Claims") and (ii) LBHI based on LBHI's guarantee of LBSF's payment obligations under the Derivatives Contracts (the "Guarantee Claims," and collectively with the Derivatives Claims, the "Claims").  In

---

Debtors do not have any outstanding liability with respect to such Derivative Contracts.  As a result, the Settlement Amount for such Negative Amortization Trades has been established as $0.

[2] It is the Debtors' understanding that the Trustee will provide notice of the Motion, the hearing and the objection deadline to each of the holders of the securities issued by the Trusts in the manner in which the Trustee ordinarily provides notices to such holders so as to provide securityholders with an opportunity to object to the settlement.  It is the Debtors' understanding that the Trustee will file an Affidavit with the Court describing the notice provided to securityholders.

[3] Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner Thereof and Approving the Proof of Claim Form, entered on July 2, 2009 [Docket No. 4271].

consideration of the termination of the Settled Derivatives Contracts the Debtors and the Trustee have agreed that the Claims will be allowed in the respective Settlement Amounts. Notwithstanding that the Debtors are "out of the money" on a net basis, the Debtors have alleged that certain pre-petition amounts are owed by the Trusts to the Debtors pursuant to ten of these Derivatives Contracts. The Settlement Amounts set forth on the attached Exhibit A are net of any amounts determined to be owed the Debtors pursuant to the Settled Derivatives Contracts.

13.     The Trustee has been unable to produce a copy of the guarantee of LBHI relating to the Derivatives Contract with Lehman XS Trust Mortgage Pass Through Certificates, Series 2006-16N Class 1-A2A and therefore, the claim against LBHI filed by the Trustee on behalf of such trust (the "Excluded Guarantee Claim") is not being allowed pursuant to the proposed Order. This Motion does not address the Excluded Guarantee Claim in any respect. The Debtors reserve all rights to object to the Excluded Guarantee Claim on all grounds, and the Trustee reserves all rights to assert all defenses with respect to such claim. Other than as set forth in this paragraph, the allowed Claims set forth in Exhibit A will fully and completely satisfy the Claims and all claims of the Trusts against LBSF, LBHI and any other Debtor in these cases in connection with the Derivatives Contracts.

14.     The Debtors and the Trustee have agreed that the Derivatives Contracts should be terminated as of the date set forth on Exhibit A (the "Termination Date"). In accordance with section 562 of the Bankruptcy Code, the damages under the Derivatives Contracts following the termination thereof are measured as of the Termination Date. 11 U.S.C. § 562. The Debtors believe that the Settlement Amounts set forth on Exhibit A reflect a fair valuation of all net amounts due from LBSF to the Trusts under the Derivatives Contracts. The Settlement Amounts have been reviewed and determined to be fair to the Trusts an independent

third party retained by the Trustee.  Accordingly, the Debtors request that the Court approve the

settlement of the Derivatives Contracts in the respective Settlement Amounts.  The Settlement

Amounts have also been reviewed and agreed to by the advisors to the Creditors' Committee.

15.    No claims were filed against the Debtors on account of the Rejected

Derivatives Contract or any guarantee thereof.  There is no claim to allow pursuant to a

settlement.  However, pursuant to the Bar Date Order, parties to rejected executory contracts

have 45 days from the date of such rejection to file a claim for damages resulting from the

rejection.  LBSF is seeking to reject the Rejected Derivatives Contract to fix the amount of its

liability under the Rejected Derivatives Contract and limit any increase in damages that could be

claimed by the counterparty following such rejection.  The Trustee has agreed that the Damage

Amount represents the appropriate amount of damages due to the applicable Trust calculated in

accordance with section 562 of the Bankruptcy Code.  The Damage Amount has been reviewed

and determined to be fair to the Trusts by an independent third party retained by the Trustee.

The Damage Amount has also been reviewed and agreed to by the advisors to the Creditors'

Committee.  Since the guarantee is not an executory contract and will not be rejected, the

counterparty will not have an opportunity to file a claim against LBHI based thereon and the

claim against LBSF is the only amount owed by the Debtors in connection with the Rejected

Derivatives Contract.

### The Termination and Settlement of the Settled Derivatives Contracts Is Reasonable and in the Best Interests of the Debtors' Estates and Their Creditors

16.    The termination of the Settled Derivatives Contracts and the settlement of

the Settled Derivatives Contracts in the Settlement Amounts should be approved under section

105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy

Code provides that "[t]he court may issue any order that is necessary or appropriate to carry out

the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in part, that

"[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve

a compromise or settlement." Fed. R. Bankr. P. 9019(a). In granting a motion pursuant to Rule

9019(a), a court must find that the proposed settlement is fair and equitable and is in the best

interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R.

618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993),

*aff'd*, 17 F.3d 600 (2d Cir. 1994).

17.    The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is

the responsibility of a court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18.    While a court must "evaluate … all … factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134

B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact. . . . The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." *Nellis v. Shugrue*, 165 B.R. at 123 (internal citations

omitted).

19.     The court may give weight to the "informed judgments of the … debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. at 802 ("Significantly, that test does not contemplate that [the court] substitute [its] judgment for the Trustee's, but only that [the court] test his choice for reasonableness…. If the Trustee chooses one of two reasonable choices, [the court] must approve that choice, even if, all things being equal, [the court] would have selected the other.").

20.     The Debtors have determined in the sound exercise of their business judgment that the Settled Derivatives Contracts should be terminated. The Settled Derivatives Contracts generally do not mature for many years and, pursuant to their terms, are incapable of becoming "in-the-money" to the Debtors. Accordingly, the Debtors have determined that it is in the best interests of their estates and creditors to fix the amount of liability arising under the Settled Derivatives Contracts. The Settlement Amounts are the product of the well-informed judgment by the Debtors and supported by their professionals and have been reviewed and determined to be fair to the Trusts by an independent third-party valuation agent. The Creditors' Committee has reviewed and agrees with the Settlement Amounts. The aggregate amount of the Settlement Amounts results in allowed claims against each of LBSF and LBHI in the approximate amount of $6 million. In light of these factors and in furtherance of the Debtors' duties to preserve value for their estates, termination of the Settled Derivatives Contracts and allowance of the Claims in the respective Settlement Amounts is an exercise of sound business

judgment, satisfies the standards for approval of settlements under Bankruptcy Rule 9019, and should be approved.

21.      In addition, the Debtors and the Trustee, in its capacity as Trustee, seek to have the settlement of the Settled Derivatives Contracts binding on all investors in the Trusts. The Trustee is providing notice of the termination of the Derivative Contracts and the allowance of the Claims in the respective Settlement Amounts to all registered holders of securities issued by the Trusts, and all other holders who have identified themselves to the Trustee, in accordance with standard procedures with respect to notices, and advising such holders of the filing of this Motion and of their respective opportunity to object thereto.  The Trustee has informed the Debtors that it will file an affidavit setting forth the steps taken by the Trustee to provide notice to the holders of the securities issued by the Trusts

### Rejection of the Rejected Derivatives Contract Is a Sound Exercise of LBSF's Business Judgment and Should Be Approved

22.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993).

23.      Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve such rejection under section 365(a) of the Bankruptcy Code.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing the "business judgment" standard

used to authorize rejection of executory contracts); *Nostas Assocs. v. Costich* (*In re Klein Sleep Products, Inc.*), 78 F.3d 18, 25 (2d Cir. 1996) (recognizing the "business judgment" standard used to authorize rejection of executory contracts); *Control Data Corp. v. Zelman* (*In re Minges*), 602 F.2d 38, 42-43 (2d Cir. 1979) (holding that the "business judgment" test is appropriate for determining when an executory contract can be rejected).  Proper business reasons for rejecting a contract include that it would be financially burdensome or not economically beneficial to the estate if the debtor was required to perform its obligations through expiration of the contract. *Minges*, 602 F.2d at 42; *In re RLR Celestial Homes, Inc.*, 108 B.R. 36, 43 (Bankr. S.D.N.Y. 1989).

24.   LBSF has determined in the sound exercise of its business judgment that the Rejected Derivatives Contract should be rejected.  The Rejected Derivatives Contract does not mature for some time and is "out-of-the-money" to LBSF and could move further out of the money.  Accordingly, LBSF has determined that it is in the best interests of its estate and creditors to fix any damages arising under the Rejected Derivatives Contract now to eliminate the risk of the escalation of unsecured claims against its estate.

25.   LBSF has evaluated the net amount due to the counterparty under the Rejected Derivatives Contract and believes the agreed upon Damage Amount is appropriate in accordance with section 562(a) of the Bankruptcy Code.  The Damage Amount is the product of the well-informed judgment by LBSF and supported by its professionals, has been reviewed and determined to be fair to the Trusts by an independent third-party valuation agent and agreed to by the Trustee.  In light of these factors and in furtherance of LBSF's duties to preserve the value of its estate, rejection of the Derivatives Contract is an exercise of sound business judgment and should be approved.

26.     The Court has previously granted relief in these chapter 11 cases similar to the relief requested by this Motion. *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. December 16, 2010) [Docket No. 13521] (order authorizing the termination and settlement of derivatives contracts with trusts for which the Trustee serves as trustee); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. July 16, 2009) [Docket No. 4426] (order authorizing rejection of derivatives contract between LBSF and Jana Master Fund, Ltd.).

**<u>Notice</u>**

27.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) U.S. Bank; (vii) the Trusts, and (viii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]. The Debtors submit that no other or further notice need be provided.

28.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: June 28, 2011
       New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**

**(Schedule of Settled Derivatives Contracts and Damage Amounts)**

| | Trust<br>(Trust ID) | Date of<br>Confirmation | Termination<br>Date | Claim<br>No.<br>Against<br>LBSF | Claim<br>No.<br>Against<br>LBSF | Amounts<br>Asserted | LBSF<br>Settlement<br>Amount | LBHI<br>Settlement<br>Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | Greenpoint Mortgage Funding Grantor Trust 1-A2A2 Series 2006-AR5 | 9/29/2006 | 6/8/2011 | 32952 | 32957 | Unliquidated | $66,452.20 | $66,452.20 |
| 2 | Greenpoint Mortgage Funding Grantor Trust 1-A3A2 Series 2006-AR5 | 9/29/2006 | 6/8/2011 | 32953 | 32954 | Unliquidated | $49,631.06 | $49,631.06 |
| 3 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 2-A2 | 11/30/2006 | 6/8/2011 | 32971 | 32963 | Unliquidated | $39,144.78 | $39,144.78 |
| 4 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 2-A1 | 11/30/2006 | 6/8/2011 | 32964 | 32965 | Unliquidated | $88,607.87 | $88,607.87 |
| 5 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 1-A2A2 | 11/30/2006 | 6/8/2011 | 32966 | 32970 | Unliquidated | $48,880.43 | $48,880.43 |
| 6 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 1-A3A2 | 11/30/2006 | 6/8/2011 | 32946 | 32945 | Unliquidated | $30,771.35 | $30,771.35 |
| 7 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 1-A3B | 11/30/2006 | 6/8/2011 | 32961 | 32968 | Unliquidated | $0 | $0 |
| 8 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR7, Grantor Trust Class 1-A1B | 11/30/2006 | 6/8/2011 | 32969 | 32967 | Unliquidated | $0 | $0 |

| | Trust (Trust ID) | Date of Confirmation | Termination Date | Claim No. Against LBSF | Claim No. Against LBSF | Amounts Asserted | LBSF Settlement Amount | LBHI Settlement Amount |
|---|---|---|---|---|---|---|---|---|
| 9 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2006-AR8 | 12/29/2006 | 6/8/2011 | 32985 | 32962 | Unliquidated | $93,088.32 | $93,088.32 |
| 10 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2007-AR1 | 2/28/2007 | 6/8/2011 | 32812 | 32813 | Unliquidated | $481,621.25 | $481,621.25 |
| 11 | Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certficates, Series 2007-AR2 | 4/30/2007 | 6/8/2011 | 32816 | 32814 | Unliquidated | $214,965.84 | $214,965.84 |
| 12 | Greenpoint Mortgage Funding Grantor Trust 1-A1A Series 2006-AR6 | 10/31/2006 | 6/8/2011 | 32955 | 32956 | Unliquidated | $45,333.21 | $45,333.21 |
| 13 | Greenpoint Mortgage Funding Grantor Trust 1-A2A2 Series 2006-AR6 | 10/31/2006 | 6/8/2011 | 32943 | 32944 | Unliquidated | $13,829.91 | $13,829.91 |
| 14 | Greenpoint Mortgage Funding Grantor Trust 1-A2B Series 2006-AR6 | 10/31/2006 | 6/8/2011 | 32942 | 32949 | Unliquidated | $0 | $0 |
| 15 | Greenpoint Mortgage Funding Grantor Trust 1-A3B Series 2006-AR6 | 10/31/2006 | 6/8/2011 | 32948 | 32947 | Unliquidated | $0 | $0 |
| 16 | Lehman XS Grantor Trust 1-A2A, Series 2006-16N | 9/29/2006 | 6/8/2011 | 32828 | 32827 | Unliquidated | $110,332.89 | $3,531.00 |
| 17 | Lehman XS Grantor Trust 1-A32A1, Series 2006-16N | 9/29/2006 | 6/8/2011 | 32815 | 32825 | Unliquidated | $147,133.00 | $147,114.00 |
| 18 | Lehman XS Grantor Trust 1-A31, Series 2006-16N | 9/29/2006 | 6/8/2011 | 32826 | 32822 | Unliquidated | $149,131.21 | $149,131.21 |
| 19 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-18N | 11/30/2006 | 6/8/2011 | 32829 | 32823 | Unliquidated | $2,629,904.91 | $2,629,904.91 |
| 20 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-2N | 1/31/2007 | 6/8/2011 | 32824 | 32830 | Unliquidated | $255,235.50 | $255,235.50 |
| 21 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-12N | 6/29/2007 | 6/8/2011 | 32939 | 32938 | Unliquidated | $411,602.33 | $411,602.33 |

| | **Trust**<br>**(Trust ID)** | **Date of**<br>**Confirmation** | **Termination**<br>**Date** | **Claim**<br>**No.**<br>**Against**<br>**LBSF** | **Claim**<br>**No.**<br>**Against**<br>**LBSF** | **Amounts**<br>**Asserted** | **LBSF**<br>**Settlement**<br>**Amount** | **LBHI**<br>**Settlement**<br>**Amount** |
|---|---|---|---|---|---|---|---|---|
| 22 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N | 7/31/2007 | 6/8/2011 | 32937 | 32936 | Unliquidated | $659,303.56 | $659,303.56 |
| 23 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-4N | 3/30/2007 | 6/8/2011 | 32941 | 32940 | Unliquidated | $458,113.71 | $458,113.71 |
| 24 | SASCO 2006-RF1 | 2/28/2006 | 4/29/2011 | 21158 | 16350 | Unliquidated | $24,736.88 | $24,736.88 |

**Exhibit B**

**(Schedule of Rejected Derivatives Contract and Damage Amount)**

|  | **Trust**<br>**(Trust ID)** | **Date of Confirmation** | **Termination Date** | **LBSF Damage Amount** |
|---|---|---|---|---|
| 1 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-10H | 6/27/2007 | 4/29/2011 | $89,607.31 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re                                          :        Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :        08-13555 (JMP)
                                               :
                            Debtors.           :        (Jointly Administered)
---------------------------------------------------------------------x

### ORDER AUTHORIZING THE DEBTORS TO (I) TERMINATE AND SETTLE OR (II) REJECT CERTAIN PREPETITION DERIVATIVES CONTRACTS WITH TRUSTS FOR WHICH U.S. BANK NATIONAL ASSOCIATION SERVES AS INDENTURE TRUSTEE AND RELATED RELIEF

Upon the motion dated June 27, 2011 (the "Motion") of Lehman Brothers Special

Financing Inc. ("LBSF"), as debtor and debtor-in-possession, together with Lehman Brothers

Holdings Inc. ("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases

(collectively, the "Debtors"), pursuant to sections 105(a) and 365 of the Bankruptcy Code[1] and

Bankruptcy Rule 6006, 9014 and 9019, for authorization to (i) terminate and settle or (ii) reject

certain prepetition derivatives contracts and related relief, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Motion having been provided in accordance with the procedures set forth in the

amended order entered June 17, 2010 governing case management and administrative procedures

[Docket No. 9635], and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the Motion; and upon the Court's consideration of the

---
[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Motion and the record of the hearing to consider the relief requested in the Motion; and after due

deliberation and sufficient cause appearing therefor, it is

ADJUDGED, FOUND AND DETERMINED:

A.      The relief sought in the Motion is in the best interests of the Debtors and

their estates and creditors, holders of notes, certificates or investments in the Trusts, and all

parties in interest, and the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein.

B.      U.S. Bank, in its capacity as Trustee, provided reasonable notice of the

Motion to holders of notes, certificates or other investments in the Trusts.

C.      The compromises set forth in the Motion are fair and reasonable and there

is no bona fide basis for any claims or actions against the Debtors or U.S. Bank, as Trustee or in

its individual capacity, arising out of the participation in the negotiation and implementation of

the relief requested in the Motion.

NOW, THEREFORE, IT IS:

ORDERED that, the Motion is granted; and it is further

ORDERED that the Settled Derivatives Contracts are hereby terminated as of the

applicable date set forth on Exhibit A to the Motion (the "Termination Date") and, other than the

Settled Derivatives Claims, the Debtors and the Trusts shall have no further rights, obligations or

liabilities of any kind, nature and character whatsoever arising under or related to the Settled

Derivatives Contracts other than as set forth herein; and it is further

ORDERED that, pursuant to section 365(a) of the Bankruptcy Code and

Bankruptcy Rules 6006 and 9014, the Rejected Derivatives Contract is hereby rejected; and it is

further

ORDERED that, in accordance with section 562 of the Bankruptcy Code, the Settled Derivatives Claims against LBSF and the Guarantee Claims against LBHI shall be allowed in the Settlement Amounts set forth in Exhibit A annexed to the Motion; provided, however, that the aggregate recovery of a Trust from LBSF and LBHI together in respect of its Claims shall not exceed its respective allowed Derivatives Claim; and it is further

ORDERED that the allowed Claims set forth in Exhibit A annexed to the Motion are in full and complete satisfaction of (i) the Claims and all claims of the Trusts against LBSF, LBHI and any other Debtor in connection with the Settled Derivatives Contracts and (ii) all claims of LBSF, LBHI and any other Debtor against the Trusts in connection with the Settled Derivatives Contracts.  Neither the Trusts nor the Debtors shall have any right to assert any other claims or claim amounts under their respective Settled Derivatives Contracts; *provided, however*, that this Order shall not affect the Excluded Guarantee Claim in any respect and the Debtors and the Trustee reserve all rights and defenses with respect thereto; and it is further

ORDERED that all holders of notes, certificates or other investments in the Trusts are bound by, and deemed to have consented to, the termination of the Settled Derivatives Contracts, the settlement of the Settled Derivatives Contracts in the Settlement Amounts and the terms of this Order; and it is further

ORDERED that the Debtors, U.S. Bank, as Trustee or in its individual capacity, and their respective legal counsel and/or financial advisors shall not have any liability for any claims, demands, suits, actions or causes of action arising out of the participation in the negotiation and implementation of the relief requested in the Motion and holders of the relevant securities issued by the Trusts shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims in any way related to the matters that are the

subject of this Motion against U.S. Bank individually or as Trustee and the Debtors; and it is further

ORDERED that, pursuant to section 562(a) of the Bankruptcy Code, any claim for damages arising as a result of the Debtors' rejection of the Rejected Derivatives Contract shall be allowed against LBSF in the Damage Amount set forth on Exhibit B to the Motion; and it is further

ORDERED that the Damage Amount set forth in Exhibit B annexed to the Motion is in full and complete satisfaction of (i) the applicable Trust against LBSF and any other Debtor in connection with the Rejected Derivatives Contract and any guarantee thereof and (ii) all claims of LBSF and any other Debtor against the applicable Trust in connection with the Rejected Derivatives Contract.  Neither the applicable Trust nor the Debtors shall have any right to assert any other claims or claim amounts under their respective Rejected Derivatives Contract or any guarantee thereof; and it is further

ORDERED that, pursuant to Bankruptcy Rules 6006(g) and 9014, the rejection by the Debtors of the Rejected Derivatives Contract constitutes a separate contested matter, and any objection, stay or appeal with respect to the Rejected Derivatives Contract shall not affect the applicability or finality of this Order with respect to the other Derivatives Contracts covered hereby; and it is further

ORDERED that the terms of this Order are effective and enforceable as of the date of this Order; and it is further

ORDERED that Epiq Systems, Inc., the Debtors' court-appointed claims and noticing agent, is authorized and directed to modify the Debtors' official claims registry to reflect the relief provided herein; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate this Order; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____ __, 2011
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE