CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone:  (312) 845-3000
Facsimile:  (312) 701-2361
James E. Spiotto (admitted pro hac vice)
Ann E. Acker (admitted pro hac vice)
Franklin H. Top, III (admitted pro hac vice)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
Telephone: (212) 655-6000
Craig M. Price

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE | CHAPTER 11 CASE NO. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., ET AL., | |
| Debtors. | (Jointly Administered) |

**AFFIDAVIT OF TIMOTHY PILLAR IN CONNECTION WITH THE VARIOUS DEBTOR OBJECTIONS TO RESIDENTIAL REAL ESTATE MORTGAGE LOAN PROOFS OF CLAIM FILED BY U.S. BANK NATIONAL ASSOCIATION OR ITS PREDECESSOR BANK OF AMERICA NATIONAL ASSOCIATION FOR INSUFFICIENT DOCUMENTATION**

I, Timothy Pillar, being first duly sworn on oath, and under penalties of perjury as provided for under the Federal Rules of Civil Procedure, depose and state as follows:

RMBSAffidavit-1.doc

1.      I am presently employed by U.S. Bank National Association as a Vice President in our Corporate Trust Services Group based in our St. Paul, Minnesota offices located at 60 Livingston Street, St. Paul, Minnesota, 55107.  U.S. Bank National Association serves as Trustee under the terms of various similar, but not identical, Trust Agreements under which Structured Asset Securities Corporation ("*SASCO*") sold certain residential mortgage loans (the "*Mortgage Loans*") to the relevant trusts.  In my capacity at U.S. Bank, I have responsibility for overseeing U.S. Bank's role as Trustee in default, bankruptcy or other distressed situations.

2.      I have personal knowledge of the facts stated in this Affidavit, and am competent to testify to these facts if called to do so.

3.      U.S. Bank National Association serves as Trustee (the "*Trustee*") for hundreds of securitizations in which SASCO served as Depositor.  The Trustee serves as trustee under certain trust agreements by and between SASCO, as Depositor, and the Trustee (the "*Trust Agreements*"), with respect to the relevant RMBS Trusts.  The RMBS Trusts are bankruptcy-remote mortgage loan securitization trusts that hold Mortgage Loans purchased by certain of the Debtors in these proceedings and their affiliates and sold and/or assigned to the RMBS Trusts.  Under the terms of the Trust Agreements, the Mortgage Loans were purchased by the RMBS Trusts using funds obtained from investors through the issuance of certificates.  A copy of a Trust Agreement is attached as *Exhibit A*.

4.      The Mortgage Loans giving rise to the Proofs of Claim filed in these proceedings were originated by various third parties (collectively, the "*Originators*"), and were purchased from such third parties by Lehman Brothers Bank F.S.B. or another affiliate thereof (the "*Initial Purchaser*") under the terms of loan purchase and warranty agreements (or similar agreements) (the "*Transfer Agreements*").  Attached hereto as *Exhibit B* is a copy of a Transfer Agreement.

Thereafter, the Initial Purchaser, if not LBHI, sold these loans for value to LBHI (the "*Seller*"), under the terms of Assignment and Assumption Agreements (an "*Assignment Agreement*") between Lehman Brothers Bank F.S.B. (or another appropriate Lehman affiliate) and LBHI. A copy of an Assignment Agreement is attached hereto as *Exhibit C*. In addition to selling the relevant Mortgage Loans, the Assignment Agreement assigned all of the Initial Purchaser's interest in the Transfer Agreements and Servicing Agreements to LBHI.

5.      Thereafter, LBHI sold the Mortgage Loans for value to SASCO (the "*Depositor*") under the terms of Mortgage Loan Sale and Assignment Agreements (the "*MLSA's*"). In addition to selling the Mortgage Loans to the Depositor, the MLSA's assigned all rights and interests of LBHI under each Transfer Agreement and each Servicing Agreement to SASCO. A copy of an MLSA is attached hereto as *Exhibit D*. Under the MLSA, LBHI made certain representations and warranties with respect to the Mortgage Loans, and made certain representations and warranties with respect to the quality of each Mortgage File.

6.      Finally, the chain of ownership of the Mortgage Loans culminates in the securitization of these Mortgage Loans. In exchange for the proceeds from the issuance of certificates, SASCO, as Depositor, transferred and conveyed the Mortgage Loans to the Trustee for the benefit of the holders of the certificates pursuant to the terms of the Trust Agreements. In addition and importantly for claims purposes, the Trustee was assigned all of the Depositor's rights under the MLSA's and all of the rights of SASCO (which SASCO obtained through LBHI and the Initial Purchaser) in the Transfer Agreements.

7.      The transactional documents related to these claims are voluminous. At the request of the Debtors, however, the Trustee uploaded copies of the majority (if not all) of the

relevant transactional documents relating to each securitization onto an extranet site created by or on behalf of the Debtors.

8.      To support the Trustee's "Document Exception" Claim, in early 2009, the Trustee requested that each Custodian provide it a list of remaining Material Defects in each Mortgage File.  The Trustee has provided a list of the Material Defects for each Mortgage Loan for a majority of the transactions for which it serves as Trustee.  As of the date hereof, the Trustee is waiting for a handful of these reports.  Such reports typically include, but are not limited to, the pool from which the loan is included, the outstanding principal balance of the loan and a description of the missing documents.[1]

9.      The master servicers provided the Trustee with a list of breaches of representations and warranties with respect to the Mortgage Loans.  Breaches of representations of warranties have been asserted with respect to approximately 800 loans.  The various types of information given to the Debtors with respect to those Mortgage Loans with known alleged breaches is attached hereto as *Exhibit F*.

10.     Finally, we have been involved in the resolution of these types of claims in a significant number of bankruptcy proceedings.  In my experience, these types of claims have been resolved in the past using two different models – a reserve account to cover claims actually incurred during the duration of the reserve account.  A copy of a reserve account agreement used in a securitization bankruptcy proceeding is attached as *Exhibit G*.  In recent cases, debtors working in concert with trustees have developed formulas to determine allowed claim amounts based on historical data.  These formulas have been in part based on the current unpaid principal

---

[1]      Exhibit E is intentionally omitted.

balance of mortgage loans and take into consideration the age of the portfolio.  A copy of a

questionnaire from the Aegis Mortgage Company bankruptcy proceeding is attached hereto as

*Exhibit H.*

FURTHER AFFIANT SAYETH NOT.

Timothy Pillar
Vice President

Subscribe and Sworn to before me
this 24 day of June 2011.

By 
    Notary Public

My Commission Expires: Jan 31, 2012

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2012