**EXECUTION COPY**

LEHMAN BROTHERS HOLDINGS INC.,

SELLER

and

STRUCTURED ASSET SECURITIES CORPORATION,

PURCHASER

MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT

Dated as of July 1, 2006

Structured Asset Securities Corporation
(Mortgage Pass-Through Certificates, Series 2006-RF2)

# TABLE OF CONTENTS

**Page**

## ARTICLE I
## CONVEYANCE OF MORTGAGE LOANS

Section 1.01.    Mortgage Loans ....................................................................... 2

Section 1.02.    Delivery of Documents ............................................................. 2

Section 1.03.    Review of Documentation ......................................................... 3

Section 1.04.    Representations and Warranties of the Seller ........................... 3

Section 1.05.    Grant Clause ............................................................................. 12

Section 1.06.    Assignment by Depositor .......................................................... 12

## ARTICLE II
## MISCELLANEOUS PROVISIONS

Section 2.01.    Binding Nature of Agreement; Assignment ............................. 13

Section 2.02.    Entire Agreement ..................................................................... 13

Section 2.03.    Amendment ............................................................................... 13

Section 2.04.    Governing Law ......................................................................... 14

Section 2.05.    Severability of Provisions ........................................................ 14

Section 2.06.    Indulgences; No Waivers ......................................................... 14

Section 2.07.    Headings Not to Affect Interpretation ..................................... 14

Section 2.08.    Benefits of Agreement .............................................................. 14

Section 2.09.    Counterparts ............................................................................. 14

## SCHEDULE

SCHEDULE A    Mortgage Loan Schedule

This MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, dated as of July 1, 2006 (the "Agreement"), is executed by and between Lehman Brothers Holdings Inc. (the "Seller") and Structured Asset Securities Corporation (the "Depositor").

All capitalized terms not defined herein shall have the same meanings assigned to such terms in that certain Trust Agreement (the "Trust Agreement"), dated as of July 1, 2006, among the Depositor, Aurora Loan Services LLC, as master servicer ("Aurora" or the "Master Servicer") and U.S. Bank National Association, as trustee (the "Trustee").

W I T N E S S E T H:

WHEREAS, the Seller is a party to the following servicing agreements (collectively, the "Servicing Agreements") pursuant to which the Mortgage Assets are to be initially serviced and administered by certain servicers as indicated below (each, a "Servicer" and, collectively, the "Servicers"):

1.  Servicing Agreement, dated as of July 1, 2006, among the Seller, as seller, and Aurora Loan Services LLC, in the dual capacities of Servicer and Master Servicer;

2.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, ABN AMRO Mortgage Group, Inc., as servicer, and the Master Servicer;

3.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, First Horizon Home Loan Corporation and First Tennessee Mortgage Services, Inc., as servicers, and the Master Servicer;

4.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, GMAC Commercial Mortgage Corporation, as servicer, and the Master Servicer;

5.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, JPMorgan Chase Bank, N.A., as servicer, and the Master Servicer;

6.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, PHH Mortgage Corporation, as servicer, and the Master Servicer;

7.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, Washington Mutual Bank, as servicer, and the Master Servicer; and

8.  Reconstituted Servicing Agreement dated as of July 1, 2006, among the Seller, as seller, Wells Fargo Bank, N.A., as servicer, and the Master Servicer;

WHEREAS, the Seller desires to sell, without recourse, all of its rights, title and interest in and to the Mortgage Loans to the Depositor, except as retained hereunder, and to assign all of its rights and interest under the Transfer Agreements and the Servicing Agreement relating to the Mortgage Loans, and to delegate all of its obligations thereunder, to the Depositor; and

WHEREAS, the Seller and the Depositor acknowledge and agree that the Depositor will convey the Mortgage Loans to a Trust Fund created pursuant to the Trust Agreement, assign all

of its rights and delegate all of its obligations hereunder to the Trustee for the benefit of the Certificateholders, and that each reference herein to the Depositor is intended, unless otherwise specified, to mean the Depositor or the Trustee, as assignee, whichever is the owner of the Mortgage Loans from time to time.

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Seller and the Depositor agree as follows:

## ARTICLE I.

## CONVEYANCE OF MORTGAGE LOANS

Section 1.01.  Mortgage Loans.

(a)  Sale Of Mortgage Loans.  Concurrently with the execution and delivery of this Agreement, the Seller does hereby transfer, assign, set over, deposit with and otherwise convey to the Depositor, without recourse, subject to Sections 1.03 and 1.04, all the right, title and interest of the Seller in and to the Mortgage Loans identified on Schedule A hereto, having an aggregate principal balance as of the Cut-off Date of $158,153,219.63.  Such conveyance includes, without limitation, the right to all distributions of principal and interest received on or with respect to the Mortgage Loans on or after July 1, 2006 other than payments of principal and interest due on or before such date, and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date, together with all of the Seller's right, title and interest in and to each related account and all amounts from time to time credited to and the proceeds of such account, any REO Property and the proceeds thereof, the Seller's rights under any Insurance Policies relating to the Mortgage Loans, the Policy related to each Mortgage Loan and all rights of the Seller thereunder, any Insurance Proceeds, any FHA/VA/RHS Claim Proceeds, the Seller's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, and any proceeds of the foregoing.

(b)  Concurrently with the execution and delivery of this Agreement, the Seller hereby assigns to the Depositor all of its rights and interest under each Servicing Agreement, other than any servicing rights thereunder, and delegates to the Depositor all of its obligations thereunder, to the extent relating to the Mortgage Loans.  Concurrently with the execution hereof, the Depositor tenders the purchase price of $158,153,219.63.  The Depositor hereby accepts such assignment and delegation, and shall be entitled to exercise all the rights of the Seller under each Servicing Agreement, other than any servicing rights thereunder, as if the Depositor had been a party to each such agreement.

(c)  Schedules Of Mortgage Loans.  The Depositor and the Seller have agreed upon which of the Mortgage Loans owned by the Seller are to be purchased by the Depositor pursuant to this Agreement and the Seller will prepare on or prior to the Closing Date a final schedule describing such Mortgage Loans (the "Mortgage Loan Schedule").  The Mortgage Loan Schedule shall conform to the requirements of the Depositor as set forth in this Agreement and to the definition of "Mortgage Loan Schedule" under the Trust Agreement.  The Mortgage Loan Schedule is attached hereto as Schedule A.

2

Section 1.02.    Delivery of Documents.

(a)    In connection with such transfer and assignment of the Mortgage Loans hereunder, the Seller, shall, at least three (3) Business Days prior to the Closing Date, deliver, or cause to be delivered, to the Depositor (or its designee) the documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned, as specified in the related Servicing Agreement.

(b)    For Mortgage Loans (if any) that have been prepaid in full on or after the Cut-off Date and prior to the Closing Date, the Seller, in lieu of delivering the related Mortgage Files, herewith delivers to the Depositor an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Collection Account maintained by the Master Servicer for such purpose have been so deposited.

(c)    On or prior to the Closing Date, or within the period following the Closing Date that is prescribed by applicable Regulations, the Seller shall complete all forms and take such other actions as may be required by FHA, VA and RHS, as applicable, in connection with the transfer of the Mortgage Loans, and shall provide such notices to FHA, VA and RHS in connection therewith as are required under applicable Regulations, and shall, at the request of the Depositor, provide evidence reasonably satisfactory to the Depositor that such notices have provided as so required.

Section 1.03.    Review of Documentation.  The Depositor, by execution and delivery hereof, acknowledges receipt of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by the custodian, LaSalle Bank National Association, J.P. Morgan Trust Company, N.A., and U.S. Bank National Association, as applicable (each, a "Custodian" and together, the "Custodians"), for the Depositor.  Each Custodian is required to review, within 45 days following the Closing Date, each applicable Mortgage File.  If in the course of such review the related Custodian identifies any Material Defect, the Seller shall be obligated to cure such Material Defect or to repurchase the related Mortgage Loan from the Depositor (or, at the direction of and on behalf of the Depositor, from the Trust Fund), or to substitute a Qualifying Substitute Mortgage Loan therefor, in each case to the same extent and in the same manner as the Depositor is obligated to the Trustee and the Trust Fund under Section 2.02(c) of the Trust Agreement.

Section 1.04.    Representations and Warranties of the Seller.

(a)    The Seller hereby represents and warrants to the Depositor that as of the Closing Date:

(i)    the Seller is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, to carry on its business as presently conducted, and to enter into and perform its obligations under this Agreement;

(ii)    the execution and delivery by the Seller of this Agreement have been duly authorized by all necessary corporate action on the part of the Seller; neither the

3

execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Seller or its properties or the certificate of incorporation or bylaws of the Seller;

(iii)    the execution, delivery and performance by the Seller of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv)    this Agreement has been duly executed and delivered by the Seller and, assuming due authorization, execution and delivery by the Depositor, constitutes a valid and binding obligation of the Seller enforceable against it in accordance with its terms except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law; and

(v)    there are no actions, suits or proceedings pending or, to the knowledge of the Seller, threatened or likely to be asserted against or affecting the Seller, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by this Agreement or (B) with respect to any other matter which in the judgment of the Seller will be determined adversely to the Seller and will if determined adversely to the Seller materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under this Agreement.

(b)    As to each Mortgage Loan, the Seller hereby represents and warrants to the Depositor that, as of the Closing Date:

(i)    Mortgage Loans as Described.  The information set forth with respect to the Mortgage Loans on the Mortgage Loan Schedule provides an accurate listing of the Mortgage Loans, and the information with respect to each Mortgage Loan on the Mortgage Loan Schedule is true and correct in all material respects at the date or dates respecting which such information is given;

(ii)    No Defaults.  There are no defaults (other than delinquency in payment) in complying with the terms of any Mortgage, and the Seller has no notice as to any taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing but which have not been paid;

(iii)    No Defenses.  No Mortgage Note is subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of any Mortgage Note or Mortgage, or the exercise

4

of any right thereunder, render such Mortgage Note or Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and no Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated;

(iv)     Hazard Insurance. Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) are insured by an insurer approved by FHA, VA or RHS, as applicable, against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) is located pursuant to insurance policies conforming to the requirements of FNMA and FHLMC. If, upon origination of the Mortgage Loan, the related Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the federal Flood Insurance Administration is in effect, which policy conforms to the requirements of FHA, VA or RHS, as applicable. All individual insurance policies contain a standard mortgagee clause naming the Seller or the Servicer and its respective successors and assigns as mortgagee, and all premiums thereon have been paid. Each Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. Where required by state law or regulation, each Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, *provided* the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. Each hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement. The Seller has not engaged in, and has no knowledge of any Mortgagor's having engaged in, any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(v)     Compliance with Applicable Laws. Any and all requirements of any federal, state or local law, including, without limitation, predatory and abusive lending, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to each Mortgage Loan, including applicable Regulations, have been complied with, and the Seller shall make available upon reasonable notice for the Depositor's inspection, evidence of compliance with all

SASCO 2006-RF2
Mortgage Loan Sale and Assignment Agreement
12474226.4.BUSINESS

such requirements. Each Mortgage Loan was acquired by the Seller in accordance with applicable laws and Regulations;

(vi)    No Satisfaction of Mortgage. No Mortgage has been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the related Mortgaged Property has not been released from the lien of the Mortgage, in whole or, except as permitted under applicable Regulations, in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(vii)    Valid First Lien. Each Mortgage evidences a valid, subsisting, enforceable and perfected first lien on the related Mortgaged Property, including all improvements on such Mortgaged Property. The lien of the Mortgage is subject only to:

(1)    liens of current real property taxes and assessments not yet due and payable, and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute;

(2)    covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to FHA, VA or RHS, as applicable, and specifically referred to in the lender's title insurance policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan; and

(3)    other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes a valid, subsisting and enforceable first lien on the property described therein and the Seller has full right to sell and assign the same to the Depositor. Each Mortgaged Property was not, as of the date of origination of the related Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt or other security instrument creating a lien subordinate to the lien of, the Mortgage.

Each Cooperative Loan is secured by a valid, subsisting and enforceable perfected first lien and security interest in the related Mortgaged Property, subject only, to the extent acceptable to FHA, VA or RHS, as applicable, to (i) the rights of the related Cooperative Corporation to collect Maintenance and assessments from the Mortgagor, (ii) the lien of the Blanket Mortgage, if any, on the Cooperative Property and of real property taxes, water and sewer charges, rents and assessments on the Cooperative Property not yet due and payable, and (iii) other matters to which like Cooperative Units are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement or the use, enjoyment, value or marketability of the Cooperative Unit. Each original UCC financing statement, continuation statement or other governmental filing or recordation necessary to create or

6

preserve the perfection and priority of the first priority lien and security interest in the Cooperative Shares and Proprietary Lease has been timely and properly made. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Cooperative Loan establishes a valid and subsisting perfected first lien on and security interest in the property described therein, and the Seller has full right to sell and assign the same to the Depositor;

(viii)   Validity of Mortgage Documents. Each Mortgage Note and the related Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law). All parties to each Mortgage Note and the related Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver such Mortgage Note and Mortgage and any other related agreement, and each Mortgage Note and Mortgage has been duly and properly executed by such parties;

(ix)   Ownership. Immediately prior to the sale of the Mortgage Loans by the Seller to the Depositor pursuant to this Agreement, the Seller was the sole owner and holder of each Mortgage Loan, each Mortgage Loan had not been assigned or pledged, and the Seller had good and marketable title thereto, and had full right to transfer and sell each Mortgage Loan to the Depositor free and clear, except as described in paragraph (h) above, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and had full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(x)   FHA Insurance. Each Mortgage Loan is an FHA Mortgage Loan, a VA Mortgage Loan or an RHS Mortgage Loan. With respect to each Mortgage Loan, the applicable Policy is in full force and effect, and there exists no defense or impairment to full recovery thereunder to the maximum extent provided thereby, without, in the case of any FHA Mortgage Loan, indemnity to HUD or FHA. Each Policy is the valid, binding and enforceable obligation of FHA, VA or RHS, as applicable, to the full extent provided thereby, without surcharge, set-off or defense, and all actions that are necessary to ensure that each Policy remains so valid, binding and enforceable have been taken. The guaranty amount with respect to each VA Mortgage Loan is equal to the maximum amount applicable to such Mortgage Loan as provided under Section 5.02 of the VA Lenders Handbook Number 26-7. Transfer of the Mortgage Loans hereunder will vest in the Depositor all rights of a mortgagee under the related Policy;

(xi)   Title Insurance. Each Mortgage Loan other than any Cooperative Loan is covered by either (i) an attorney's opinion of title and abstract of title the form and substance of which is acceptable to FHA, VA or RHS, as applicable, or (ii) an ALTA mortgagee title insurance policy or other generally acceptable form of policy of insurance acceptable to FHA, VA or RHS, as applicable, issued by a title insurer acceptable to FHA, VA or RHS, as applicable, and qualified to do business in the jurisdiction where

7

the related Mortgaged Property is located, insuring, subject to the exceptions listed in paragraph (h) above, the Seller, and its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan. If the Mortgaged Property is a condominium unit located in a state in which a title insurer will generally issue an endorsement, then the related title insurance policy contains an endorsement insuring the validity of the creation of the condominium form of ownership with respect to the project in which such unit is located. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such mortgagee title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the named insured and the sole insured of such mortgagee title insurance policy, the assignment to the Depositor of the Seller's interest in such mortgagee title insurance policy does not require the consent of or notification to the insurer (or if such consent or notification is required, such consent has been received, or such notification has been given), and such mortgagee title insurance policy is in full force and effect and will be in force and effect and will inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such mortgagee title insurance policy, and no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything that would impair the coverage of such lender's title insurance policy, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(xii)    No Foreclosure. To the best of the Seller's knowledge, no foreclosure action is being threatened or commenced with respect to any Transferred Mortgage Loan;

(xiii)    Mortgaged Property Undamaged. There is no proceeding pending or threatened for the total or partial condemnation of any Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit). Each Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the related Mortgage Loan or the use for which the premises were intended;

(xiv)    No Mechanics' Liens. There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting any Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(xv)    Loan Origination. Each Mortgage Loan was originated in accordance with applicable Regulations of FHA, VA or RHS, as applicable;

(xvi)    Qualified Mortgage. As of the Closing Date, each Transferred Mortgage Loan is a "qualified mortgage" within the meaning of Section 860G of the Code and Treas. Reg. §1.860G-2 (determined without regard to Treas. Reg. §1.860G-2(f) or any

SASCO 2006-RF2
Mortgage Loan Sale and Assignment Agreement
12474226.4.BUSINESS

similar rule that provides that a defective obligation is a qualified mortgage for a temporary period) and provides for interest at either a single fixed rate or a single "variable rate" (within the meaning of Treas. Reg. §1.860G-1(a)(3)) in effect throughout the term of the Transferred Mortgage Loan;

(xvii)    <u>Interest Accrual</u>.    Each Mortgage Loan provides for accrual of interest on the basis of a 360-day year consisting of twelve 30-day months;

(xviii)    <u>Original Terms Unmodified</u>.    The terms of each Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Depositor, and with respect to which the requirements of Section 2.03 hereof have been satisfied.    The substance of any such waiver, alteration or modification has been approved by the FHA, VA or RHS, as applicable, and the title insurer, to the extent required by the related policy, and its terms are reflected on the Mortgage Loan Schedule. Except as permitted under applicable Regulations, no Mortgagor has been released, in whole or in part, from the obligations imposed by the terms of the related Mortgage Note, and no Mortgaged Property has been released, in whole or in part, from the lien of the related Mortgage, except in connection with an assumption agreement approved by FHA, VA or RHS, as applicable, and the title insurer, to the extent required by the related policy, and which assumption agreement is part of the related Mortgage Loan File and the terms of which are reflected in the Mortgage Loan Schedule;

(xix)    <u>Location and Type of Mortgaged Property</u>.    Each Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a low-rise condominium project, or an individual unit in a planned unit development, or a Cooperative Unit, *provided, however,* that any condominium project, planned unit development or Cooperative Unit shall conform with the applicable requirements of FHA, VA and RHS regarding such dwellings.    At the time of origination, no portion of any Mortgaged Property was used for commercial purposes;

(xx)    <u>Full Disbursement of Proceeds</u>.    Each Mortgage Loan has been closed and the proceeds of each Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.    All costs, fees and expenses incurred in making or closing each Mortgage Loan and the recording of the related Mortgage were paid, and the related Mortgagor is not entitled to any refund of any amounts paid or due under such Mortgage Note or Mortgage;

(xxi)    <u>Location of Improvements; No Encroachments</u>.    All improvements located on or being part of each Mortgaged Property lie wholly within the boundaries and building restriction lines of such Mortgaged Property (and, if such Mortgaged Property is a condominium unit or Cooperative Shares and related Proprietary Lease, such improvements lie wholly within the project) and no improvements on adjoining

9

properties encroach upon such property. As of the date of origination of the Mortgage Loan, no improvement located on or being part of the Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) was in violation of any applicable zoning law or regulation;

(xxii)  Payment Terms. Each Mortgage Note is payable each month in equal monthly installments of principal and interest, with interest calculated and payable in arrears, sufficient to amortize the Mortgage Loan fully by the stated maturity date, over an original term of not more than thirty years from commencement of amortization, with a principal balance at origination not in excess of the applicable limits established by FHA, VA and RHS, as applicable;

(xxiii)  Customary Provisions. Each Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the related Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by a Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of, the related Mortgaged Property pursuant to the proper procedures, the holder of such Mortgage Loan will be able to deliver good and merchantable title to the related Mortgaged Property. There is no homestead or other exemption available to a Mortgagor that would interfere with the ultimate sale of the related Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage;

(xxiv)  Occupancy of the Mortgaged Property. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of each Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting certificates, have been made or obtained from the appropriate authorities. Except as set forth on the Mortgage Loan Schedule, each Mortgagor represented at the time of origination of the related Mortgage Loan that such Mortgagor would occupy the related Mortgaged Property (or, in the case of a Cooperative Loan, the related Cooperative Unit) as such Mortgagor's primary residence;

(xxv)  Deeds of Trust. In the event any Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by the Seller, or any assignee or transferee thereof, to the trustee under the deed of trust, except in connection with a trustee's sale after default by the related Mortgagor;

(xxvi)  Transfer of Mortgage Loans. Each Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the related Mortgaged Property is located;

(xxvii)  No Arranged Sale or Settlement. As of the Cut-off Date, no sale of any Mortgage Loan to a third party has been arranged, no payment in connection with the

SASCO 2006-RF2
Mortgage Loan Sale and Assignment Agreement
12474226.4.BUSINESS

settlement of a Mortgage Loan at a substantial discount has been arranged, and the actual amount of any FHA/VA/RHS Claim Proceeds with respect to a Mortgage Loan has not been determined with relative certainty;

(xxviii)Consolidation of Future Advances.  None of the Mortgage Loans contain any provisions permitting future advances after the Cut-off Date.  Any future advances made prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the related Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FHA, VA or RHS, as applicable.  In each case, the consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(xxix)  Collection Practices; Escrow Deposits; Interest Rate Adjustments.  The servicing and collection practices used with respect to each Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects in compliance with all applicable laws and regulations, including without limitation applicable Regulations and the GNMA Credit and Collection Policy.  With respect to escrow deposits and Escrow Payments, if any, all such payments are in the possession of, or under the control of, the Seller (or the Servicer on behalf of the Seller) and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All Escrow Payments have been collected in full compliance with state and federal law and regulation, including applicable Regulations.  With respect to each Mortgage Loan that provides for Escrow Payments and where Escrow Payments have been collected, an escrow of funds is not prohibited by applicable law and has been established in accordance with Accepted Servicing Practices.  No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note;

(xxx)  No Release.  No Mortgage Loan requires the Mortgagee thereunder to release any portion of the related Mortgaged Property from the lien of the related Mortgage other than upon payment in full of such Mortgage Loan;

(xxxi)  Condominiums/Planned Unit Developments.  If any Mortgaged Property is a condominium unit or a planned unit development (other than a *de minimis* planned unit development) such condominium or planned unit development project meets GNMA eligibility requirements for sale to GNMA or is located in a condominium or planned unit development project that has received GNMA project approval, and the representations and warranties required by GNMA with respect to such condominium or planned unit development have been made and remain true and correct in all respects;

(xxxii) No Denial of Coverage.  No action, inaction, event or circumstance has occurred and no state of facts exists that has resulted or will result in the exclusion from, denial of, or defense to coverage under, or any curtailment or reduction of coverage under, any applicable insurance policy or Policy;

11

(xxxiii)<u>Servicers and Master Servicer</u>. Each Servicer and the Master Servicer is approved by FHA, VA and RHS to own and service the FHA Mortgage Loans;

(xxxiv)<u>No "High-cost" Loans</u>. No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.7 Revised, Appendix E) and no Mortgage Loan originated on or after October 1, 2002, through March 6, 2003, is governed by the Georgia Fair Lending Act; no Mortgage Loan is a "high-cost" loan under any applicable federal, state or local predatory or abusive lending law; and

(xxxv) <u>Mobile Homes</u>. No Mortgage Loan relates to Mortgaged Properties which are mobile homes.

(c)     It is understood and agreed that the representations and warranties set forth herein and the obligations of the Seller set forth in this Section survive the Closing Date. Upon discovery by either the Seller or the Depositor of a breach of any of the foregoing representations and warranties that adversely and materially affects the value of the related Mortgage Loan or the interest of the Depositor therein, the party discovering such breach shall give prompt written notice to the other party; *provided, however,* that a breach of clause (v) or (xxxiv) in Section 1.04(b) shall be considered to have occurred without regard to the manner in which or the degree to which the value of the related Mortgage Loan or the interest of the Depositor therein is affected. Within 60 days of the discovery of any such breach, the Seller shall either (a) cure such breach in all material respects or (b) repurchase such Mortgage Loan or any property acquired in respect thereof from the Depositor at the applicable Purchase Price.

Section 1.05.   <u>Grant Clause</u>. It is intended that the conveyance of the Seller's right, title and interest in and to the Mortgage Loans and other property conveyed pursuant to this Agreement on the Closing Date shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan. However, if any such conveyance is deemed to be in respect of a loan, it is intended that: (1) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (2) the Seller hereby grants to the Depositor a first priority security interest in all of the Seller's right, title and interest in, to and under, whether now owned or hereafter acquired, the Mortgage Loans and other property; and (3) this Agreement shall constitute a security agreement under applicable law.

Section 1.06.   <u>Assignment by Depositor</u>. The Depositor shall have the right, upon notice to but without the consent of the Seller, to assign, in whole or in part, its interest under this Agreement with respect to the Mortgage Loans to the Trustee, and the Trustee then shall succeed to all rights of the Depositor under this Agreement. All references to the rights of the Depositor in this Agreement shall be deemed to be for the benefit of and exercisable by its assignee or designee, specifically including the Trustee.

SASCO 2006-RF2
Mortgage Loan Sale and Assignment Agreement
12474226.4.BUSINESS

ARTICLE II.

MISCELLANEOUS PROVISIONS

Section 2.01.  <u>Binding Nature of Agreement; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 2.02.  <u>Entire Agreement</u>.  This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

Section 2.03.  <u>Amendment</u>.  This Agreement may be amended from time to time by the Seller and the Depositor, without notice to or the consent of any of the Holders, (i) to cure any ambiguity, (ii) to cause the provisions herein to conform to or be consistent with or in furtherance of the statements made with respect to the Certificates, the Trust Fund, the Trust Agreement or this Agreement in the Private Placement Memorandum; or to correct or supplement any provision herein which may be inconsistent with any other provisions herein, (iii) to make any other provisions with respect to matters or questions arising under this Agreement or (iv) to add, delete, or amend any provisions to the extent necessary or desirable to comply with any requirements imposed by the Code and the REMIC Provisions.  No such amendment effected pursuant to clause (iii) of the preceding sentence shall adversely affect in any material respect the interests of any Holder.  Any such amendment shall be deemed not to adversely affect in any material respect any Holder, if the Trustee receives written confirmation from each Rating Agency that such amendment will not cause such Rating Agency to reduce the then current rating assigned to the Certificates, if any (and any Opinion of Counsel requested by the Trustee in connection with any such amendment may rely expressly on such confirmation as the basis therefor).

(a)     This Agreement may also be amended from time to time by the Seller and the Depositor with the consent of the Holders of not less than 66-2/3% of the Class Principal Amount or Class Notional Amount (or Percentage Interest) of each Class of Certificates affected thereby for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Holders; provided, however, that no such amendment may (i) reduce in any manner the amount of, or delay the timing of, payments received on Mortgage Loans which are required to be distributed on any Certificate without the consent of the Holder of such Certificate or (ii) reduce the aforesaid percentages of Class Principal Amount or Class Notional Amount (or Percentage Interest) of Certificates of each Class, the Holders of which are required to consent to any such amendment without the consent of the Holders of 100% of the Class Principal Amount or Class Notional Amount (or Percentage Interest) of each Class of Certificates affected thereby.  For purposes of this paragraph, references to "Holder" or "Holders" shall be deemed to include, in the case of any Class of Book-Entry Certificates, the related Certificate Owners.

13

(b)    It shall not be necessary for the consent of Holders under this Section 2.03 to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Holders shall be subject to such reasonable regulations as the Trustee may prescribe.

Section 2.04.    Governing Law. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS CONFLICT OF LAWS PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 2.05.    Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

Section 2.06.    Indulgences; No Waivers. Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 2.07.    Headings Not to Affect Interpretation. The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 2.08.    Benefits of Agreement. Nothing in this Agreement, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder, any benefit or any legal or equitable right, power, remedy or claim under this Agreement.

Section 2.09.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

SASCO 2006-RF2
Mortgage Loan Sale and Assignment Agreement
12474226.4.BUSINESS

IN WITNESS WHEREOF, the Seller and the Depositor have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By: _____

    Name: Michael Hitzmann

    Title:  Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION

By: _____

    Name: Mary Stone

    Title:  Vice President

IN WITNESS WHEREOF, the Seller and the Depositor have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By:_____

    Name: Michael Hitzmann

    Title:   Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION

By:_____

    Name: Mary Stone

    Title:   Vice President

SCHEDULE A

MORTGAGE LOAN SCHEDULE

Dechert LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Attn: Steven J. Molitor
Telephone: (215) 994-2777
Telecopier: (215) 994-2222