# RESERVE ACCOUNT AGREEMENT

This Reserve Account Agreement (this "Agreement") is dated as of June 23, 2003, by and among U.S. Bank National Association ("U.S. Bank"), as Reserve Account Trustee (in such capacity, together with its permitted successors hereunder, the "Reserve Account Trustee"), Conseco Finance Corp. ("Conseco Finance"), as Depositor (in such capacity, the "Depositor"), U.S. Bank and Wells Fargo Bank Minnesota, National Association ("Wells Fargo"), as trustees pursuant to the Pooling and Servicing Agreements (each, a "Servicing Agreement") listed on Schedule 1 to the Consent Agreement (defined below) (together, the "Trustees") (for convenience, a copy of Schedule 1 is attached hereto as Exhibit 1).  Capitalized terms used but not defined herein shall have the meanings assigned to them in that certain Consent Agreement, dated as of March 14, 2003, by and among Conseco Finance, the Trustees, Federal National Mortgage Association, in its capacity as a Certificateholder with respect to certain of the Trusts, the Official Committee of Unsecured Creditors of Conseco Finance (the "Official Committee"), the Ad Hoc Securitization Holders' Committee on behalf of its members, in their capacity as Certificateholders of certain of the Trusts (the "Ad Hoc Committee" and, together with the Official Committee, the "Committees"), and CFN Investment Holdings LLC ("CFN"), as Purchaser (the "Consent Agreement"), or if such terms are not defined in the Consent Agreement, they shall have the meanings assigned to them in the related Servicing Agreement.

WHEREAS, Conseco Finance is the seller of certain manufactured housing installment sales contracts and installment loan agreements ("Contracts") in each of the securitization transactions (each, a "Transaction") referenced on Schedule 1 to the Consent Agreement (for convenience, a copy of Schedule 1 is attached hereto as Exhibit 1), and Conseco Finance is the Servicer of the Contracts for each Transaction pursuant to the terms and conditions of the related Servicing Agreement;

WHEREAS, Conseco Finance and certain of its affiliates commenced a case under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on December 17, 2002 in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court");

WHEREAS, pursuant to the Consent Agreement, the Consenting Parties have consented to the amendment of the Servicing Agreements and the assumption by the Successor Servicer of Conseco Finance's servicing rights and obligations under the Servicing Agreements, as amended, on the condition that, among other requirements, U.S. Bank, as Reserve Account Trustee, and the Depositor establish and maintain a trust account (the "Reserve Account") for the benefit of the respective trusts related to each Transaction (each, a "Trust"), Trustees and Certificateholders (collectively, the "Beneficiaries") as provided in the Consent Agreement;

WHEREAS, pursuant to its Final Order Approving Servicing Arrangements for Manufactured Housing Securitization Trusts, dated March 14, 2003 (the "Order"), the Bankruptcy Court has directed and instructed the Trustees to modify the Servicing Agreements in accordance with the Consent Agreement and the Order; and

**WHEREAS**, in conjunction with the amendment of the Servicing Agreements, the parties hereto (the "Parties") wish to more specifically set forth the terms and conditions pursuant to which the Reserve Account will be established and maintained.

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

Section 1. <u>Establishment of Reserve Account</u>. The Reserve Account shall be established by the Depositor, as settlor, on June 23, 2003, at which time Depositor shall deposit into the Reserve Account in accordance with Section 4(j)(1) of the Consent Agreement the sum of $35,000,000 (together with all interest, gains and other income earned from time to time with respect thereto, the "Reserve Account Funds"). The Reserve Account shall be a segregated interest bearing trust account administered pursuant to the provisions of this Agreement for the benefit of the Beneficiaries, and shall be maintained in the name of the Reserve Account Trustee and designated "U.S. Bank National Association, as Reserve Account Trustee for the benefit of the Beneficiaries as defined in the Reserve Account Agreement, dated as of June 23, 2003."

Section 2. <u>Segregation of Reserve Account; Tax Matters</u>. The Reserve Account shall be separate from each Trust, and no amount on deposit in the Reserve Account will constitute (i) a part of the property of any Trust or (ii) a part of any REMIC related to any Trust. For federal income tax purposes, the Reserve Account and all amounts deposited therein and investments thereof are owned by the Depositor, and all assets transferred to the Reserve Account are taxable to the Depositor. The Depositor shall be entitled to reimbursement, from funds in the Reserve Account, for its tax liability for all income attributed to the Depositor from the Reserve Account. In order to claim such reimbursement, the Depositor shall submit evidence satisfactory to the Reserve Account Trustee of its tax liability, which the Reserve Account Trustee shall be entitled to verify and confirm. The Reserve Account shall be maintained by the Reserve Account Trustee at all times separate and apart from any other account of the Depositor, the Successor Servicer, the Reserve Account Trustee or any Trust, as an Eligible Account at an Eligible Institution (which may be the Reserve Account Trustee) or in an account otherwise acceptable to Fitch, Moody's and Standard & Poor's.

Section 3. <u>Investment of Reserve Account Funds; Eligible Investments</u>.

(a)     <u>Investment of Reserve Account Funds</u>. The Reserve Account Trustee shall invest all Reserve Account Funds in Eligible Investments. All income and gain realized from any such investments as well as any interest earned on deposits in the Reserve Account shall be deposited and retained in the Reserve Account. Losses, if any, realized on amounts in the Reserve Account invested pursuant to this paragraph shall first be credited against undistributed investment earnings on amounts in the Reserve Account invested pursuant to this paragraph, and shall thereafter be deemed to reduce the amount on deposit in the Reserve Account. The Depositor and the Reserve Account Trustee shall not be liable for the amount of any loss incurred in respect of any investment, or lack of investment, of funds held in the Reserve Account invested in accordance with the provisions hereof. The foregoing sentence does not, however, absolve the Reserve Account Trustee in its commercial capacity as the obligor or guarantor on any such

investment. All income or loss on funds held in the Reserve Account shall be taxable to the Depositor.

(b)    Eligible Investments.  For purposes of this Agreement, "Eligible Investments" are any of the following:

(i)    direct obligations of, and obligations fully guaranteed by, the United States of America, the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, or any agency or instrumentality of the United States of America the obligations of which are backed by the full faith and credit of the United States of America and which are noncallable;

(ii)    (A) demand and time deposits in, certificates of deposit of, bankers' acceptances issued by, or federal funds sold by any depository institution or trust company (including the Reserve Account Trustee or any Affiliate of the Reserve Account Trustee, acting in its commercial capacity) incorporated under the laws of the United States of America or any State thereof and subject to supervision and examination by federal and/or state authorities, so long as, at the time of such investment or contractual commitment providing for such investment, the commercial paper or other short-term deposits of such depository institution or trust company (or, in the case of a depository institution which is the principal subsidiary of a holding company, the commercial paper or other short-term debt obligations of such holding company) are rated at least P-1 by Moody's, at least A-1 by Standard & Poor's and at least F-1 by Fitch (if rated by Fitch) and (B) any other demand or time deposit or certificate of deposit which is fully insured by the Federal Deposit Insurance Corporation;

(iii)    shares of an investment company registered under the Investment Company Act of 1940, whose shares are registered under the Securities Act of 1933 and have the highest credit rating then available from Moody's and Fitch (if rated by Fitch) and are rated AAAm or AAAm-G by Standard & Poor's and whose only investments are in securities described in clauses (i), (ii) above and (iv) below;

(iv)    repurchase obligations with respect to (A) any security described in clause (i) above or (B) any other security issued or guaranteed by an agency or instrumentality of the United States of America, in either case entered into with a depository institution or trust company (acting as principal) described in clause (ii)(A) above;

(v)    securities bearing interest or sold at a discount issued by any corporation incorporated under the laws of the United States of America or any State thereof which has a credit rating of at least Aa2 from Moody's, at least AAA by Standard & Poor's and in one of the two highest rating categories from Fitch (if rated by Fitch) at the time of such investment; *provided, however*, that securities issued by any particular corporation will not be Eligible Investments to the extent that investment therein will cause the then outstanding principal amount of securities issued by such corporation and held as part of the Reserve Account Funds to exceed 10% of amounts held in the Reserve Account; and

Reserve Account Agmt

    (vi)    commercial paper having a rating of at least A-1+ from Standard & Poor's  and at least P-1 from Moody's (if rated by Moody's) at the time of such investment or pledge as a security.

Notwithstanding the foregoing, securities that represent the right to receive payments only of interest due on underlying obligations shall not be included as Eligible Investments, whether or not such securities otherwise fall within (i) through (vi) above.

Section 4.  <u>Claims Against the Reserve Account; Release of Reserve Account Funds</u>. The Reserve Account Trustee shall release Reserve Account Funds only as provided in this Section 4.

    (a)    <u>Availability of Reserve Account Funds</u>.  The Reserve Account shall be available:

    (i)    to pay or reimburse the respective Trusts and Trustees for any claims that a Trust or Trustee may have against Conseco Finance or any affiliate thereof under a Servicing Agreement or any document related to the Trusts, or amounts owing or which would otherwise be owing thereunder, including, without limitation, claims based on Conseco Finance's failure to cure or repurchase any Contract for breaches of any representation or warranty in any Servicing Agreement (contained in Sections 2.02(n), 3.02, 3.03 and 3.05 of the Series 2000-1 Servicing Agreement and  comparable provisions in the other Servicing Agreements) (respecting document exceptions or otherwise) or any failure or alleged failure of Conseco Finance or any affiliate thereof to properly originate or service any Contract;

    (ii)    to pay or reimburse the respective Trusts and Trustees for any other fees, expenses or indemnification payments payable to any Trust or Trustee pursuant to the respective Servicing Agreement;

    (iii)    to indemnify the respective Trusts, Trustees (whether acting as Trustee or in any other capacity on behalf of a Trust) and Certificateholders against any and all costs, expenses, losses, damages, claims and liabilities, including reasonable fees and expenses of counsel and expenses of litigation, in respect of any action taken or omitted to be taken by Conseco Finance as Originator or Servicer with respect to any Contract;

    (iv)    to reimburse Conseco Finance for costs (A) incurred by Conseco Finance on or after June 23, 2003 in connection with the resolution of any breach of a representation or warranty of Conseco Finance made with respect to a Contract, (B) which Contract is then in default, and (C) where such breach impairs the Servicer's ability to enforce the material obligations of the Obligor; and

    (v)    to indemnify the Reserve Account Trustee and to pay the fees and expenses of the Reserve Account Trustee, as provided in Sections 6(g) and 6(h) hereof;

*provided*, *however*, that the aggregate amount that may be paid or transferred with respect to each Trust pursuant to clauses (i), (ii) and (iii) above shall not exceed an amount equal to two times the amount determined by multiplying $35,000,000 by a fraction the numerator of which is

        Reserve Account Agmt

the unpaid principal balance of the Certificates issued with respect to such Trust as of December 17, 2002 and the denominator of which is the unpaid principal balance of the Certificates issued with respect to all Trusts as of December 17, 2002 (with respect to each Trust, such Trust's "Cap"), as further specified on Exhibit 2 hereto; and provided further, if at any time a Claim would cause the Reserve Account Funds to be less than $2,000,000, the Reserve Account Trustee shall set aside from the Reserve Account Funds an amount equal to 50% of the investment income earned to date from the Reserve Account Funds (the "Tax Reserve Account") in that calendar year to reimburse the Depositor for its tax liability from such investment income as provided in Section 2 and for such purposes there will be no further withdrawal from the Tax Reserve Account pending the Depositor filing its final claim for reimbursement for tax liabilities and thereafter the Trustee shall distribute the remaining amounts in the Tax Reserve Account, if any, under Section 4(d).

    (b)    <u>Claims for Release of Reserve Account Funds</u>.

    (i)    <u>Claims</u>. A Trustee, or Conseco Finance, asserting a right to payment from the Reserve Account for a reason set forth in Section 4(a) above shall provide written notice (a "<u>Claim Notice</u>") of such claim (each, a "<u>Claim</u>") to the Reserve Account Trustee, the form of which is attached hereto as Exhibit 3, which Claim Notice shall set forth the name of the Trust and the Trustee, if applicable, and the basis of the Claim, and describe the underlying facts regarding the Claim in reasonable detail. Within 15 days of receiving a Claim Notice, the Reserve Account Trustee shall, subject to subsection (ii) below and only after determining that payment of the amount claimed would not cause the aggregate payments made with respect to the related Trust to exceed such Trust's Cap (if such Claim is submitted pursuant to clauses (i), (ii) or (iii) of Section 4(a) above), distribute to the related Trustee or to Conseco Finance, as applicable, the amount of the Claim, it being understood that if payment in full of the Claim would result in the related Trust's Cap being exceeded, then the Reserve Account Trustee shall distribute to the related Trustee only such amount as would cause the aggregate payments made with respect to such Trust to reach but not exceed such Trust's Cap. The Reserve Account Trustee shall be deemed to have acted prudently in acting upon a Claim Notice satisfying the requirements of this Section 4(b)(i).

    (ii)    <u>Depletion of Reserve Account Funds</u>. If, immediately prior to any Remittance Date (or similar date) the aggregate amount claimed by the Trustees and Conseco Finance pursuant to valid Claims exceeds the amount of Reserve Account Funds on deposit in the Reserve Account (after taking into account the Cap for each Trust), the Reserve Account Trustee shall distribute all of the remaining Reserve Account Funds, pro rata based on the valid Claims submitted as of such date, to the related Trustee or Trustees and Conseco Finance, as applicable, for distribution as set described in Section 4(b)(i) above.

    (c)    <u>2008 Reserve Account Release</u>. On April 1, 2008, the Reserve Account Trustee shall allocate one-half of the Reserve Account Funds then on deposit in the Reserve Account among each of the then existing Trusts, pro rata based on the aggregate Class B-2 Liquidation Loss Amount, Class B-1 Liquidation Loss Amount, and similar liquidation loss amounts for all Classes of Certificates issued with respect to each Trust, including any Class A Principal

    

Deficiency Amount (collectively, the "Liquidation Loss Amount") as of the most recent Remittance Date, and shall pay the amount allocated to each Trust to the related paying agent designated in connection with the related Trust (each, a "Paying Agent") for distribution in the manner set forth in Section 8.03(a) of the related Servicing Agreement, as amended as of the date hereof. Such funds will be distributed to the respective Paying Agents for each Trust, and shall not constitute property of any REMIC related thereto.

(d)    2009 Reserve Account Release. On April 1, 2009, the Reserve Account Trustee shall allocate all of the remaining Reserve Account Funds on deposit in the Reserve Account among each of the then existing Trusts, pro rata based on the aggregate Liquidation Loss Amount (if any) for each Trust as of the most recent Remittance Date, and shall pay the amount allocated to each Trust to the related Paying Agent for distribution in the manner set forth in Section 8.03(a) of the related Servicing Agreement, as amended as of the date hereof. Such funds will be distributed to the respective Paying Agents for each Trust, and shall not constitute property of any REMIC related thereto.

Section 5. Termination. This Agreement shall terminate on the earlier of (a) April 1, 2009 (after distribution of any funds remaining in the Reserve Account pursuant to Section 2 or 4(d) hereof), or (b) the date on which the amount on deposit in the Reserve Account equals zero.

Section 6. Reserve Account Trustee's Rights and Responsibilities. The Reserve Account Trustee agrees to hold the Reserve Account Funds and to perform its obligations in accordance with the terms and provisions of this Agreement. The acceptance by the Reserve Account Trustee of its responsibilities hereunder is subject to the following terms and conditions which the Parties agree shall govern and control with respect to the Reserve Account Trustee's rights, duties and liabilities hereunder:

(a)    Documents. The Reserve Account Trustee shall be protected in acting upon any written notice, request, waiver, consent, receipt or other paper or document furnished to it, not only as to its due execution and validity and the effectiveness of its provisions, but also as to the truth and accuracy of any information therein contained, which the Reserve Account Trustee in good faith believes to be genuine and what it purports to be. Should it be necessary for the Reserve Account Trustee to act upon any instructions, directions, documents or instruments issued or signed by or on behalf of any corporation, partnership, fiduciary or individual acting on behalf of another party hereto, it shall not be necessary for the Reserve Account Trustee to inquire into such corporation's, partnership's, fiduciary's or individual's authority. The Reserve Account Trustee is also relieved from the necessity of satisfying itself as to the authority of the persons executing this Agreement in a representative capacity on behalf of any party hereto.

(b)    Liability. The Reserve Account Trustee shall not be liable for anything which it may do or refrain from doing in connection herewith, except for its own gross negligence, bad faith or willful misconduct.

(c)    Legal Counsel. The Reserve Account Trustee may consult with, and obtain advice from, legal counsel in the event of any question as to any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in good faith

Reserve Account Agmt

in accordance with the opinion and instructions of such counsel. The Reserve Account Trustee may pay its legal fees and expenses from Reserve Account Funds.

(d)     Limitation of Duties. The Reserve Account Trustee shall have no duties except those which are expressly set forth herein and it shall not be bound by any agreement of the other Parties (whether or not it has any knowledge thereof).

(e)     Resignation or Termination of Reserve Account Trustee. The Reserve Account Trustee shall have the right to resign at any time by giving written notice specifying the effective date of such resignation to the Trustees, and the Trustees shall have the right to terminate the services of the Reserve Account Trustee hereunder at any time by giving written notice (with such written notice being signed by each Trustee and specifying the effective date of such termination) to the Reserve Account Trustee. Within 30 days after receiving or delivering the aforesaid notice, as the case may be, the Trustees shall appoint a successor Reserve Account Trustee to which the Reserve Account Trustee shall distribute the property then held hereunder. Any fees and expenses owing to the Reserve Account Trustee hereunder, including legal fees and expenses, as of such date shall be paid out of the Reserve Account Funds. If a successor Reserve Account Trustee has not been appointed and has not accepted such appointment by the end of such 30-day period, the Reserve Account Trustee may apply to a court of competent jurisdiction for the appointment of a successor Reserve Account Trustee, and the costs, expenses and reasonable attorneys' fees which are incurred in connection with any such proceeding shall be paid out of the Reserve Account Funds. Except as otherwise agreed to in writing by the Parties, no Reserve Account Funds shall be released from the Reserve Account unless and until a successor Reserve Account Trustee has been appointed in accordance with this Section 6(e).

(f)     Discharge of Reserve Account Trustee. Upon the delivery of all of the Reserve Account Funds pursuant to the terms of Section 4 above or to a successor Reserve Account Trustee, the Reserve Account Trustee shall thereafter be discharged from any further obligations hereunder. The Reserve Account Trustee is hereby authorized, in any and all events, to comply with and obey any and all final, non-appealable judgments, orders and decrees of any court of competent jurisdiction which may be filed, entered or issued, and all final arbitration awards and, if it shall so comply or obey, it shall not be liable to any other Person by reason of such compliance or obedience.

(g)     Indemnification. The Reserve Account Trustee shall be indemnified for and held harmless against any loss, liability or expense (including reasonable attorneys' fees and expenses) incurred without gross negligence, willful misconduct or bad faith on the part of the Reserve Account Trustee arising out of or in connection with its performance under this Agreement by withdrawal of Reserve Account Funds and, if such amounts are insufficient, by the Trusts, pro rata based on the then-outstanding principal balance of the Certificates issued by such Trusts.

(h)     Reserve Account Trustee Fees and Costs. The Reserve Account Trustee shall be entitled to be paid a fee for its services pursuant to the Fee Schedule attached as Exhibit 4 hereto and to be reimbursed for its reasonable costs and expenses incurred in connection with maintaining the Reserve Account hereunder, which fees, costs and expenses shall be paid out of

the Reserve Account Funds.  The Reserve Account Trustee may pay its legal fees and expenses from the Reserve Account Funds.

      (i)      <u>Limitations on Rights to Reserve Account Funds</u>.  No party shall have the ability to pledge, convey, hypothecate or grant as security all or any portion of the Reserve Account Funds unless and until such Reserve Account Funds have been released pursuant to Section 4 above.  Accordingly, the Reserve Account Trustee shall be in sole possession of the Reserve Account Funds and shall not act as custodian of the Parties under this Agreement for the purposes of perfecting a security interest therein, and no creditor of any of the Parties shall have any right to have or to hold or otherwise attach or seize all or any portion of the Reserve Account Funds as collateral for any obligation and shall not be able to obtain a security interest in any of the Reserve Account Funds unless and until such Reserve Account Funds have been released pursuant to Section 2 above.

      Section 7.  <u>Notices</u>. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given (a) when personally delivered, (b) when receipt is acknowledged, if sent by facsimile, telecopy or other electronic transmission device; *provided, however*, that if receipt is acknowledged after normal business hours of the recipient, notice shall be deemed to have been given on the next business day, (c) one day after deposit with a nationally recognized overnight courier, specifying next day delivery or (d) three days after being sent by registered or certified mail.  Notices, demands and communications will, unless another address is specified in writing, be sent to the address set forth below:

      If to U.S. Bank, as Trustee or as Reserve Account Trustee:

                U.S. Bank National Association
                U.S. Bank Trust Center
                180 East Fifth Street, 2nd Floor
                St. Paul, MN 55101
                Attention:  Structured Finance/Conseco Reserve Account Trustee
                Facsimile No.:  (651) 244-4638

                with a copy to:

                James E. Spiotto
                Chapman and Cutler
                111 West Monroe Street
                Chicago, IL 60603
                Facsimile No.:  (312) 701-2361

Reserve Account Agmt

If to Wells Fargo, as Trustee:

>           Wells Fargo Bank Minnesota, National Association
>           Corporate Trust – Wells Fargo Center
>           Sixth Street & Marquette Avenue
>           Mail Station N9311-161
>           Minneapolis, MN 55479
>           Attention:  Michael G. Luger
>           Facsimile No.:  (612) 446-5755

Section 8.  <u>Entire Agreement; Amendments</u>.  This Agreement, together with the Consent Agreement and the amendments to the Servicing Agreements contemplated by the Consent Agreement, contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes any prior understandings or agreements by or among the Parties, whether written or oral, which may have related to the subject matter hereof in any way.  This Agreement may be amended, or any provision of this Agreement may be waived, so long as such amendment or waiver is set forth in a writing executed by each of the Parties.  No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Agreement of any rights or obligations of any party hereto under or by reason of this Agreement.

Section 9.  <u>Assigns and Assignment</u>.  This Agreement and all actions taken hereunder shall inure to the benefit of and shall be binding upon all of the Parties and upon all of their respective successors and assigns; *provided*, *however*, that the Reserve Account Trustee shall not be permitted to assign its obligations hereunder except as provided in Section 6(e) above and except to any entity into which the Reserve Account Trustee may be merged or consolidated or to any entity to whom the Reserve Account Trustee may transfer all or substantially all of its escrow business as long as such entity assumes all of the obligations of the Reserve Account Trustee hereunder.

Section 10.  <u>No Other Third Party Beneficiaries</u>.  Nothing herein expressed or implied is intended or shall be construed to confer upon or to give any person other than the Reserve Account Trustee, the Parties and their permitted assigns, and the Beneficiaries, any rights or remedies under or by reason of this Agreement.

Section 11.  <u>Interpretation</u>.  The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning hereof.

Section 12.  <u>No Waiver</u>.  No failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, and no single or partial exercise thereof shall preclude any right of further exercise or the exercise of any other right, power or privilege.

Section 13.  <u>Severability</u>.  The Parties agree that (a) the provisions of this Agreement shall be severable in the event that for any reason whatsoever the provisions hereof are invalid, void or otherwise unenforceable, (b) such invalid, void or otherwise unenforceable provisions shall be automatically replaced by other provisions which are as similar as possible in terms to

Reserve Account Agmt

such invalid, void or otherwise unenforceable provisions, but are valid and enforceable and (c) the remaining provisions shall remain enforceable to the fullest extent permitted by law.

Section 14. <u>No Strict Construction</u>.  The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their collective mutual intent, and no rule of strict construction shall be applied against any person.  The term "including" as used herein shall be by way of example, and shall not be deemed to constitute a limitation of any term or provision contained herein.  Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form.

Section 15. <u>Releases on Non-business Days</u>.  In the event that a release of Reserve Account Funds hereunder is required to be made on a date that is not a business day, such release may be made on the next succeeding business day with the same force and effect as if made when required.

Section 16. <u>Governing Law</u>.  All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by, and construed in accordance with, the laws of the State of Minnesota without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Minnesota or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Minnesota.

Section 17. <u>Counterparts</u>.  This Agreement may be executed by the Parties individually or in any combination, in one or more counterparts (including by means of telecopied signature pages), each of which shall be an original and all of which shall together constitute one and the same agreement.

*[Signature Page Follows]*

Reserve Account Agmt

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized effective as of the date above first written.

CONSECO FINANCE CORP., as Depositor

By: _____
Name: Brian F. Corey
Title: Senior Vice President, General Counsel, and Secretary

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Reserve Account Trustee

By: _____
Name:
Title:

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee

By: _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee

By: _____
Name:
Title:

Reserve Account Agmt

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized effective as of the date above first written.

CONSECO FINANCE CORP., as Depositor

By: _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Reserve Account Trustee

By: _____
Name:
Title:

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee

By: _~Michael Glagg~_____
Name: Michael G Gagg
Title: Assistant Vice President

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee

By: _____
Name:
Title:

11

**EXHIBIT 1**

### List of Transactions and
### Related Pooling and Servicing Agreements

1.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1992-1, dated as of September 1, 1992

2.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1992-2, dated as of December 1, 1992

3.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1993-1, dated as of March 1, 1993

4.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1993-2, dated as of June 1, 1993

5.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1993-3, dated as of September 1, 1993

6.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1993-4, dated as of December 1, 1993

7.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-1, dated as of March 1, 1994

8.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-2, dated as of May 1, 1994

9.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-3, dated as of June 1, 1994

10.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-4, dated as of July 1, 1994

11.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-5, dated as of August 1, 1994

12.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-6, dated as of September 1, 1994

13.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-7, dated as of November 1, 1994

14.    Pooling and Servicing Agreement between Green Tree Financial Corporation and First Bank National Association, Series 1994-8, dated as of December 1, 1994

15.   Pooling and Servicing Agreement between Green Tree Financial Corporation and First
      Bank National Association, Series 1995-1, dated as of February 1, 1995

16.   Pooling and Servicing Agreement between Green Tree Financial Corporation and First
      Bank National Association, series 1995-2, dated as of March 1, 1995

17.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1995-3, dated as of May 1, 1995

18.   Pooling and Servicing Agreement between Green Tree Financial Corporation and First
      Bank National Association, Series 1995-4, dated as of June 1, 1995

19.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1995-5, dated as of July 1, 1995

20.   Pooling and Servicing Agreement between Green Tree Financial Corporation and First
      Bank National Association, Series 1995-6, dated as of August 1, 1995

21.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1995-7, dated as of September 1, 1995

22.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1995-8, dated as of October 1, 1995

23.   Pooling and Servicing Agreement between Green  Tree Financial Corporation and
      Firstar Trust Company, Series 1995-9, dated as of November 1, 1995

24.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1995-10, dated as of December 1, 1995

25.   Pooling and Servicing Agreement between Green Tree Financial Corporation and
      Norwest Bank Minnesota, National Association, Series 1996-1, dated as of January 1,
      1996

26.   Pooling and Servicing Agreement between Green Tree Financial Corporation and
      Norwest Bank Minnesota, National Association, Series 1996-2, dated as of March 1,
      1996

27.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1996-3, dated as of April 1, 1996

28.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1996-4, dated as of May 1, 1996

29.   Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar
      Trust Company, Series 1996-5, dated as of June 1, 1996

30.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1996-6, dated as of July 1, 1996

31.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1996-7, dated as of August 1, 1996

32.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1996-8, dated as of September 1, 1996

33.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1996-9, dated as of October 1, 1996

34.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1996-10, dated as of December 1, 1996

35.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-1, dated as of February 1, 1997

36.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-2, dated as of March 1, 1997

37.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-3, dated as of May 1, 1997

38.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-4, dated as of June 1, 1997

39.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-5, dated as of July 1, 1997

40.  Pooling and Servicing Agreement between Green Tree Financial Corporation and Firstar Trust Company, Series 1997-6, dated as of September 1, 1997

41.  Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S. Bank National Association, Series 1997-7, dated as of October 1, 1997

42.  Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S. Bank National Association, Series 1997-8, dated as of December 1, 1997

43.  Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S. Bank National Association, Series 1998-1, dated as of January 1, 1998

44.  Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S. Bank National Association, Series 1998-2, dated as of March 1, 1998

Reserve Account Agmt

45.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-3, dated as of April 1, 1998

46.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-4, dated as of May 1, 1998

47.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-5, dated as of June 1, 1998

48.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-6, dated as of July 1, 1998

49.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-7, dated as of September 1, 1998

50.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1998-8, dated as of October 1, 1998

51.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1999-1, dated as of February 1, 1999

52.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1999-2, dated as of March 1, 1999

53.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1999-3, dated as of May 1, 1999

54.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1999-4, dated as of June 1, 1999

55.    Pooling and Servicing Agreement between Green Tree Financial Corporation and U.S.
Bank National Association, Series 1999-5, dated as of September 1, 1999

56.    Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
Conseco Finance Corp. and U.S. Bank National Association, Series 1999-6, dated as of
November 1, 1999

57.    Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
Conseco Finance Corp. and U.S. Bank National Association, Series 2000-1, dated as of
February 1, 2000

58.    Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
Conseco Finance Corp. and U.S. Bank National Association, Series 2000-2, dated as of
May 1, 2000

Reserve Account Agmt

59.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2000-3, dated as of
        June 1, 2000

60.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2000-4, dated as of
        August 1, 2000

61.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2000-5, dated as of
        October 1, 2000

62.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2000-6, dated as of
        December 1, 2000

63.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2001-1, dated as of
        March 1, 2001

64.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2001-2, dated as of
        June 1, 2001

65.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2001-3, dated as of
        September 1, 2001

66.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp. and U.S. Bank National Association, Series 2001-4, dated as of
        December 1, 2001

67.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp., U.S. Bank National Association, as trustee, and Wells Fargo
        Bank Minnesota, National Association, as back-up servicer, Series 2002-1, dated as of
        April 1, 2002

68.     Pooling and Servicing Agreement between Conseco Finance Securitizations Corp.,
        Conseco Finance Corp., U.S. Bank National Association, as trustee, and Wells Fargo
        Bank Minnesota, National Association, as back-up servicer, Series 2002-2, dated as of
        June 1, 2002

Reserve Account Agmt

**EXHIBIT 2**

## CAP FOR EACH TRANSACTION

Maximum Reserve Account per Trust
Consent Agreement 4.(j)(2), pg 11
(aggregate amount paid to any trust shall not exceed 2 times the amount determined
by multiplying the $35 million times the fraction in which the numerator is UPB of Certificates
for the trust and denominator is UPB of all trusts as of Dec 17)

Formula is;  Maximum = 2*($35 million * bond balance of trust/bond balance of all trusts)

| Deal Name | 17-Dec Bond Balance | Pro Rata % | $35 mill Reserve *2 | Maximum Per Trust |
|-----------|---------------------|------------|---------------------|-------------------|
| GTHC921 | 31,616,948.82 | 0.140% | 70,000,000 | 98,194.66 |
| GTHC922 | 51,075,913.74 | 0.227% | 70,000,000 | 158,629.55 |
| GTHC931 | 45,968,727.11 | 0.204% | 70,000,000 | 142,767.85 |
| GTHC932 | 95,533,434.98 | 0.424% | 70,000,000 | 296,703.95 |
| GTHC933 | 145,957,623.16 | 0.648% | 70,000,000 | 453,309.39 |
| GTHC934 | 168,804,941.01 | 0.749% | 70,000,000 | 524,267.68 |
| GTHC941 | 140,787,420.05 | 0.625% | 70,000,000 | 437,251.98 |
| GTHC942 | 95,013,936.59 | 0.422% | 70,000,000 | 295,090.51 |
| GTHC943 | 52,246,351.97 | 0.232% | 70,000,000 | 162,264.65 |
| GTHC944 | 78,178,883.37 | 0.347% | 70,000,000 | 242,804.87 |
| GTHC945 | 96,528,311.08 | 0.428% | 70,000,000 | 299,793.80 |
| GTHC946 | 122,255,594.85 | 0.542% | 70,000,000 | 379,696.57 |
| GTHC947 | 93,364,452.82 | 0.414% | 70,000,000 | 289,967.61 |
| GTHC948 | 139,792,863.86 | 0.620% | 70,000,000 | 434,163.13 |
| GTHC951 | 100,492,845.53 | 0.446% | 70,000,000 | 312,106.69 |
| GTHC952 | 88,474,670.53 | 0.393% | 70,000,000 | 274,781.12 |
| GTHC953 | 155,610,234.39 | 0.690% | 70,000,000 | 483,288.09 |
| GTHC954 | 106,213,898.87 | 0.471% | 70,000,000 | 329,874.91 |
| GTHC955 | 156,553,066.70 | 0.695% | 70,000,000 | 486,216.30 |
| GTHC956 | 149,378,576.09 | 0.663% | 70,000,000 | 463,934.05 |
| GTHC957 | 133,306,863.10 | 0.591% | 70,000,000 | 414,019.16 |
| GTHC958 | 184,036,187.89 | 0.817% | 70,000,000 | 571,572.29 |
| GTHC959 | 151,451,053.28 | 0.672% | 70,000,000 | 470,370.67 |
| GTHC9510 | 157,030,830.32 | 0.697% | 70,000,000 | 487,700.12 |
| GTHC961 | 158,016,414.19 | 0.701% | 70,000,000 | 490,761.11 |
| GTHC962 | 202,336,910.23 | 0.898% | 70,000,000 | 628,409.94 |
| GTHC963 | 166,590,935.53 | 0.739% | 70,000,000 | 517,391.51 |
| GTHC964 | 208,745,587.98 | 0.926% | 70,000,000 | 648,313.76 |
| GTHC965 | 228,855,480.60 | 1.015% | 70,000,000 | 710,770.27 |
| GTHC966 | 203,278,449.64 | 0.902% | 70,000,000 | 631,334.14 |
| GTHC967 | 203,830,779.46 | 0.904% | 70,000,000 | 633,049.54 |
| GTHC968 | 259,178,544.58 | 1.150% | 70,000,000 | 804,946.43 |

| Deal Name | 17-Dec Bond Balance | Pro Rata % | $35 mill Reserve *2 | Maximum Per Trust |
|---|---|---|---|---|
| GTHC969 | 201,229,437.76 | 0.893% | 70,000,000 | 624,970.40 |
| GTHC9610 | 345,570,692.64 | 1.533% | 70,000,000 | 1,073,259.74 |
| GTHC971 | 229,236,702.15 | 1.017% | 70,000,000 | 711,954.25 |
| GTHC972 | 266,783,713.70 | 1.184% | 70,000,000 | 828,566.27 |
| GTHC973 | 406,469,405.59 | 1.803% | 70,000,000 | 1,262,396.54 |
| GTHC974 | 261,240,886.28 | 1.159% | 70,000,000 | 811,351.57 |
| GTHC975 | 277,615,628.89 | 1.232% | 70,000,000 | 862,207.60 |
| GTHC976 | 555,558,387.71 | 2.465% | 70,000,000 | 1,725,431.18 |
| GTHC977 | 291,380,907.19 | 1.293% | 70,000,000 | 904,959.25 |
| GTHC978 | 475,708,921.60 | 2.111% | 70,000,000 | 1,477,437.88 |
| GTHC981 | 249,187,179.33 | 1.106% | 70,000,000 | 773,915.65 |
| GTHC982 | 430,882,588.52 | 1.912% | 70,000,000 | 1,338,218.04 |
| GTHC983 | 307,737,950.38 | 1.365% | 70,000,000 | 955,760.31 |
| GTHC984 | 314,774,460.88 | 1.397% | 70,000,000 | 977,614.02 |
| GTHC985 | 223,915,370.89 | 0.993% | 70,000,000 | 695,427.47 |
| GTHC986 | 505,648,231.16 | 2.243% | 70,000,000 | 1,570,422.20 |
| GTHC987 | 554,005,150.80 | 2.458% | 70,000,000 | 1,720,607.20 |
| GTHC988 | 917,429,334.92 | 4.070% | 70,000,000 | 2,849,315.61 |
| GTHC991 | 492,366,957.85 | 2.185% | 70,000,000 | 1,529,173.75 |
| GTHC992 | 754,371,974.22 | 3.347% | 70,000,000 | 2,342,898.53 |
| GTHC993 | 578,035,942.45 | 2.565% | 70,000,000 | 1,795,241.08 |
| GTHC994 | 730,995,473.38 | 3.243% | 70,000,000 | 2,270,296.72 |
| GTHC995 | 1,451,639,534.87 | 6.441% | 70,000,000 | 4,508,444.44 |
| CFHC996 | 724,745,063.72 | 3.216% | 70,000,000 | 2,250,884.45 |
| CFHC001 | 652,614,056.66 | 2.896% | 70,000,000 | 2,026,862.83 |
| CFHC002 | 559,875,971.25 | 2.484% | 70,000,000 | 1,738,840.56 |
| CFHC003 | 717,005,355.99 | 3.181% | 70,000,000 | 2,226,846.77 |
| CFHC004 | 960,399,749.96 | 4.261% | 70,000,000 | 2,982,771.42 |
| CFHC005 | 567,260,003.23 | 2.517% | 70,000,000 | 1,761,773.60 |
| CFHC006 | 351,658,815.11 | 1.560% | 70,000,000 | 1,092,167.99 |
| CFHC011 | 484,217,119.63 | 2.148% | 70,000,000 | 1,503,862.31 |
| CFHC012 | 422,664,688.02 | 1.875% | 70,000,000 | 1,312,695.21 |
| CFHC013 | 521,315,691.70 | 2.313% | 70,000,000 | 1,619,081.58 |
| CFHC014 | 416,868,394.16 | 1.850% | 70,000,000 | 1,294,693.31 |
| CFHC021 | 537,861,340.78 | 2.386% | 70,000,000 | 1,670,468.40 |
| CFHC022 | 429,986,689.45 | 1.908% | 70,000,000 | 1,335,435.59 |
| | 22,538,764,505.14 | 100.000% | | |

**EXHIBIT 3**

## FORM OF CLAIM NOTICE

U.S. Bank National Association
180 East Fifth Street
St. Paul, MN 55102

> Re:    Conseco Finance Reserve Account
>           Submission of Claim

Ladies and Gentlemen:

Pursuant to that certain Reserve Account Agreement (the "Reserve Account Agreement") by and among U.S. Bank National Association ("U.S. Bank"), as Reserve Account Trustee (in such capacity, together with its permitted successors hereunder, the "Reserve Account Trustee"), Conseco Finance Corp. and U.S. Bank and Wells Fargo Bank Minnesota, National Association, as Trustees pursuant to the Pooling and Servicing Agreements, the undersigned hereby submits a Claim for $_____ as a result of (check one):

☐      To pay or reimburse the respective Trusts and Trustees for any claims that a Trust or Trustee may have against Conseco Finance or any affiliate thereof under a Servicing Agreement or any document related to the Trusts, or amounts owing or which would otherwise be owing thereunder, including, without limitation, claims based on Conseco Finance's failure to cure or repurchase any Contract for breaches of any representation or warranty in any Servicing Agreement (respecting document exceptions or otherwise) or any failure or alleged failure of Conseco Finance or any affiliate thereof to properly originate or service any Contract.

☐      To pay or reimburse the respective Trusts and Trustees for any other fees, expenses or indemnification payments payable to any Trust or Trustee pursuant to the respective Servicing Agreement.

☐      To indemnify the respective Trusts, Trustees (whether acting as Trustee or in any other capacity on behalf of a Trust) and Certificateholders against any and all costs, expenses, losses, damages, claims and liabilities, including reasonable fees and expenses of counsel and expenses of litigation, in respect of any action taken or omitted to be taken by Conseco Finance as Originator or Servicer with respect to any Contract.

☐      To reimburse Conseco Finance for costs (A) incurred by Conseco Finance on or after June 23, 2003 in connection with the resolution of any breach of a representation or warranty of Conseco Finance made with respect to a Contract, (B) which Contract is then in default, and (C) where such breach impairs the Servicer's ability to enforce the material obligations of the Obligor.

☐      To indemnify the Reserve Account Trustee and to pay the fees and expenses of the Reserve Account Trustee, as provided in Sections 6(g) and 6(h) of the Reserve Account Agreement.

Attached hereto is a detailed description of the facts giving rise to this Claim.

Capitalized terms used herein but not defined have the meaning assigned in the Reserve Account Agreement.

[TRUSTEE]

By: _____
        Name:
        Its:


CONSECO FINANCE CORP.

By: _____
        Name:
        Its:

**EXHIBIT 4**

## U.S. BANK NATIONAL ASSOCIATION

**Schedule of Fees**
**for services as**

### Reserve Account Trustee

**for**

the Reserve Account established pursuant to that certain Reserve Account Agreement by and among U.S. Bank National Association, as Reserve Account Trustee (in such capacity, together with its permitted successors hereunder, the "Reserve Account Trustee"), Conseco Finance Corp., U.S. Bank and Wells Fargo Bank Minnesota, National Association, as Trustees pursuant to the Pooling and Servicing Agreements

| | |
|---|---|
| **Initial Acceptance Fee:** | $5,000 |
| The acceptance fee includes the review and execution of the documents related to the transaction. Payable at the closing. | |
| **Annual Administration Fee:** | $25,000 |
| The administration fee includes the fiduciary activities associated with the Delaware Owner Trust. Payable annually in advance and not subject to proration, with the initial Annual Administration Fee payable at the closing. | |
| **Funds Sweep Fee:** | AT THE BASIS POINT RATE THEN IN EFFECT FOR SUCH INVESTMENT VEHICLE |
| The funds sweep fee will be waived if the Trustee invests Reserve Account Funds in demand and time deposits of U.S. Bank National Associations or an affiliate. | |
| **Out-of Pocket Expenses:** | AT COST |
| Includes all related expenses, including but not limited to: postage, legal counsel fees and their disbursements. | |
| **Extraordinary Expenses:** | AT U.S. BANK'S OPTION EITHER (A) AT A FLAT FEE, OR (B) AT A HOURLY RATE, IN EITHER CASE AS THEN IN EFFECT |
| Extraordinary expenses are expenses related to services, duties or responsibilities of an unusual nature, including without limitation defaults and termination, not provided for in the governing documents or otherwise set forth in this schedule. | |

DATED:  June 23, 2003