Hearing Date and Time: July 20, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                            :   Chapter 11
:
**LEHMAN BROTHERS HOLDINGS INC., et al.,**           :   Case No. 08-13555 (JMP)
:
Debtors.                                  :   (Jointly Administered)
:
-------------------------------------------------------------------x

**LEHMAN COMMERCIAL PAPER INC.'S**
**RESPONSE TO MOTION OF EVANGELICAL**
**CHRISTIAN CREDIT UNION PURSUANT TO SECTION 362(d)**
**OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (the "Debtors," and collectively with their non-debtor affiliates, "Lehman"), submit this response to the motion filed by Evangelical Christian Credit Union ("ECCU"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay (the "Motion"), ECF No. 16259, and respectfully represent:

**Preliminary Statement**

1.     Prior to the commencement of the Debtors' chapter 11 cases, LCPI and three non-Debtor Lehman affiliates, Lehman ALI, Inc., OVC Holdings LLC, and Northlake

Holdings LLC (collectively the "Lehman Creditors"), made loans in excess of $1.8 billion (collectively, the "SunCal Loans") to certain direct or indirect subsidiaries and/or affiliates of SCC Acquisitions, Inc. (collectively, the "SunCal Debtors") pursuant to various separate loan agreements. The proceeds of the SunCal Loans were used by the SunCal Debtors to acquire and develop various real estate projects located in California.

2. Among the SunCal Loans was a loan made by LCPI to SunCal Communities I, LLC and SunCal Communities III, LLC (collectively, the "SunCal Communities Loan Borrowers"), in the approximate aggregate principal amount of $343 million (the "SunCal Communities Loan") pursuant to that certain Credit Agreement, dated as of November 17, 2005 (as amended among the SunCal Communities Loan Borrowers and LCPI, the "SunCal Communities Loan Agreement"). The SunCal Communities Loan was secured by a Guarantee and Collateral Agreement ("SunCal Communities Guarantee Agreement") executed by various SunCal Debtors including SunCal Emerald Meadows, LLC ("SunCal Emerald Meadows") and pursuant to which SunCal Emerald Meadows guaranteed the full repayment of the SunCal Communities Loan. The obligations of SunCal Emerald Meadows under the SunCal Communities Guarantee Agreement were secured, in part, by a deed of trust granted by SunCal Emerald Meadows for the benefit of LCPI (the "Lehman Deed of Trust") on certain real property located in Riverside, California, comprised of various parcels acquired by SunCal Emerald Meadows from various third parties and commonly referred to as the "Emerald Meadows Ranch" development (the "Emerald Meadows Project"). Among the various parcels comprising the Emerald Meadows Project is a parcel consisting of approximately 22 acres that fronts the main road surrounding the Emerald Meadows Project, Rubidoux Boulevard, that was formerly owned by the Life Church of God in Christ (the "Church") and which was conveyed by the

Church to SunCal Emerald Meadows in May, 2006 (the "Old Church Parcel"). The conveyance of the Old Church Parcel by the Church to SunCal Emerald Meadows was subject to a deed of trust (the "ECCU Deed of Trust") granted by the Church in favor of ECCU securing a loan made by ECCU to the Church in the approximate principal amount of $7 million (the "ECCU Loan"). The ECCU Deed of Trust encumbered not only the Old Church Parcel but certain other real estate, including the land and improvements comprising the church, a parking lot and related facilities on which the Church conducts its services, owned by the Church in the surrounding area and mainly along Rubidoux Boulevard (the "Additional Collateral").[1] In September 2008, the Lehman Deed of Trust was modified in order to "spread" the lien granted by the Lehman Deed of Trust onto the Old Church Parcel, which lien was granted subject to the lien securing the ECCU Loan.

3. The Motion seeks relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to permit ECCU to exercise possible state law remedies against the Old Church Parcel, including pursuing a non-judicial foreclosure of the Old Church Parcel. The relief sought in the Motion is improper because (i) the Old Church Parcel is instrumental to the development of the Emerald Meadows Project and, as such, is of value to LCPI's estate and (ii) the impact of the automatic stay on the ECCU Loan is outweighed by the harm to LCPI's interest in the Old Church Parcel (and thus the Emerald Meadows Project) because ECCU has ability to satisfy its claim of approximately $6.6 million, in whole or in part, from the Additional Collateral. ECCU has not moved to lift the automatic stay in the SunCal Emerald Meadows chapter 11 case.

---

[1] As set forth in the Motion, the ECCU Loan is secured by the Property "as well as the real property known as 3349, 3270, 3245 and 3260 Rubidoux Boulevard." *Motion* ¶ 7.

**Background**

4.      In 2003, the Church purportedly entered into an exchange agreement with SunCal Emerald Meadows (as amended, the "Exchange Agreement") pursuant to which, among other things, the Church would deed the Old Church Parcel to SunCal Emerald Meadows, SunCal Emerald Meadows would record a final parcel map with respect to the Emerald Meadows Project (referred to as the "I-Map") and subsequently convey to the Church a newly created parcel in the northeast corner of the Emerald Meadows Project which would be designated for church use (the "New Church Parcel"). The Church was required to cause the ECCU Deed of Trust to be released as to the Old Church Parcel as a condition to the conveyance to the Church of the New Church Parcel.

5.      The Emerald Meadows Project is contemplated to be a residential development with some commercial and other uses (such as the church use contemplated for the New Church Parcel). The specific plan, general plan and the environmental impact report prepared in connection with the development of the Emerald Meadows Project were approved in October 2005. The tentative tract map and final map for the Emerald Meadows Project were in process since the October 2005 approval was obtained. To date, SunCal Emerald Meadows, a chapter 11 debtor, continues to own the Old Church Parcel.

6.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. and the other Debtors commenced with this Court voluntary cases under chapter 11 the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.  Between November 6, 2008 and November 19, 2008, the SunCal Debtors became debtors in various chapter 11 cases (collectively, the "SunCal Cases") which are currently pending in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court") under jointly administered Case No. 8:08-bk-17206-ES.

8.  As set forth in the Lehman Creditors' disclosure statement filed in the SunCal Cases on September 30, 2010, Cal. Bankr. ECF No. 1424, in 2009 the appraised market value of the Emerald Meadows Project was approximately $12 million. No specific value for the Old Church Parcel was obtained. ECCU states that it has an outstanding lien on the Old Church Parcel in excess of $6.6 million and that the appraised market value of the Old Church Parcel is approximately $2.38 million. *See Motion* ¶ 25.

### Response

### I. The Automatic Stay Applies

9.  ECCU asserts that the automatic stay set forth in section 362(d) of the Bankruptcy Code is not applicable because a non-judicial foreclosure proceeding with respect to the Old Church Parcel, or the exercise of any other state law remedies, is not an act to obtain possession or control over property of the Debtors' estate or to enforce a lien against property of the Debtors' estate because LCPI is a junior lienholder. *See Motion* Fn. 1.

10. LCPI's lien on the Old Church Parcel is property of the Debtors' estates. The term "property of the estate" is construed broadly. *See* 11 U.S.C. § 541(a) (providing that, "[s]uch estate is comprised of all of the following property, wherever located and by whomever held…all legal or equitable interests of the debtor in property as of the commencement of the case."); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-205 (1983) (finding that "the scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including

tangible or intangible property, causes of action . . . and all other forms of property . . . .) (citing legislative history of Section 541); *Segal v. Rochelle*, 382 U.S. 375, 379 (1966) (stating that in the bankruptcy contexts "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."); *Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield (In re Mid-Island Hosp., Inc.),* 276 F.3d 123, 128 (2d Cir.), *cert. denied,* 537 U.S. 882 (2002) (defining "property of the estate" to include contingent interests); *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.),* 928 F.2d 565, 572 (2d Cir. 1991) (noting that Congress desired to "bring anything of value that the debtors have into the estate."), *cert denied,* 502 U.S. 821 (1991). Accordingly, LCPI's lien on the Old Church Parcel, whether or not it is a junior lien or a senior lien *vis* a *vis* ECCU's lien, is a valid property interest of the Debtors' estates and thus, section 362 of the Bankruptcy Code applies to automatically stay the relief requested in the Motion.

    11.  Further, this Circuit has applied the strictures of the automatic stay even to a debtor's junior interest in property. *See Fid. Mortgage Investors*, 550 F.2d 47 (finding the automatic stay applicable to stay proceedings by a senior lien holder against a debtor holding a junior deed of trust); *see also In re Three Strokes Ltd. P'ship*, 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008) (holding that "the second lien of the debtor in [the property] is, indeed, a property interest that triggers the protection of the automatic stay. It is a property interest as contemplated under Section 541 of the Bankruptcy Code."). The foreclosure proceedings being contemplated by ECCU could extinguish LCPI's lien on the Old Church Parel and would constitute an exercise of control over property of the estate. Consequently, the automatic stay set forth in section 362 of the Bankruptcy Code is applicable.

## II. ECCU Should Not be Granted Relief From The Automatic Stay At This Time

12. In support of the relief sought in the Motion, ECCU cites to sections 362(d)(1) and (2) of the Bankruptcy Code. *Motion* ¶ 23. ECCU makes several assertions to justify the relief it is requesting, however, its principal theory is (i) "cause" exists to lift the automatic stay, and (ii) LCPI's lien is undersecured by the Old Church Parcel and not necessary for its reorganization.

13. ECCU asserts that it is entitled to relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code for "cause" as such term is explained in the Second Circuit's decision in *In re Sonnax*, 907 F.2d 1280 (2d Cir. 1990). *Sonnax* is the seminal case in the Second Circuit with respect to relief from the automatic stay for cause. In *Sonnax*, the Second Circuit catalogued twelve factors (the "Sonnax Factors") to be considered and balanced when deciding whether the automatic stay should be lifted.[2] The moving party bears the initial burden to demonstrate that cause exists for lifting the stay by reference to certain indicative factors. *See Sonnax*, 907 F.2d at 1285. Not all of the factors are relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and a court need not assign equal weight to each factor. *In re Keene Corporation*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

14. LCPI believes that the fundamental question and essential Sonnax Factor, with respect to this matter, is the impact of the automatic stay on the parties and the balance of the harms. ECCU has asserted that LCPI's estate is not harmed because LCPI has a junior

---

[2] The *Sonnax* Factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286.

interest in the Old Church Parcel that is undersecured.  However, LCPI would be significantly harmed if ECCU were permitted to foreclose on the Old Church Parcel.  The Old Church Parcel is a parcel within a much larger assemblage comprising the Emerald Meadows Project and its inclusion directly and indirectly impacts the value of the entire Emerald Meadows Project, particularly since its location along Rubidoux Boulevard provides access into the rest of the Emerald Meadows Project.  Thus, the Old Church Parcel is an integral component to the overall development of the Emerald Meadows Project and its continued inclusion as part of the Emerald Meadows Project directly impacts the likelihood that LCPI and its estate may be able to recover value from the Emerald Meadows Project in order to satisfy the SunCal Communities Loan, which is guaranteed, in part, by SunCal Emerald Meadows and secured by the Emerald Meadows Project.  Permitting ECCU to exercise state law remedies, including foreclosure, could adversely impact the ability of SunCal Emerald Meadows to develop the Emerald Meadows Project and thus could foreclose LCPI's ability to realize any meaningful value from its collateral.  LCPI has an interest in preserving the Lehman Deed of Trust to capture any excess value from the Old Church Parcel.

15.    Further, ECCU is not greatly harmed by the automatic stay because it may satisfy its claim of approximately $6.6 million out of the Additional Collateral before it seeks any means of satisfaction from the Old Church Parcel.  In fact, under California state law ECCU may be required to satisfy its claim against the Additional Collateral.  The equitable doctrine of marshaling is well established.  *See, e.g., Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456-457 (1925) (stating that "the equitable doctrine of marshalling [*sic*] rests upon the principle that a creditor having two funds to satisfy his debt, may not . . . defeat another creditor, who may resort to only one of the funds."). The Supreme Court in *Meyer v. Unite States*, 375 U.S. 223 (1963),

discussed the relevance of the doctrine and stated that "[i]ts purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved . . ." *Id*. at 238. The scope and application of marshaling must be examined under state law. *In re Teresi*, 134 B.R. 392 (Bankr. E.D. Ca. 1991). In the state of California, a junior lien holder may request a marshaling of assets pursuant to California Civil Code sections 3433 and 2899. Section 3433 of the California Civil Code states:

> Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interesting in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

*Cal. Civ. Code* § 3433; *see also Cal. Civ. Code* § 2899 (providing for same relief).

16.    The Debtors request that the Court not grant the relief requested in the Motion at this time. ECCU may be able to satisfy the ECCU Loan, in whole or in part, from the Additional Collateral, against which LCPI holds no lien or other interest.

17.    For the foregoing reasons, ECCU's claim that an exercise of state law remedies against the Old Church Parcel will not prejudice the interest of Lehman's creditors (*see Motion* ¶ 33) is incorrect. The Debtors' creditors are both directly and indirectly harmed by ECCU's potential foreclosure of its lien on the Old Church Parcel. LCPI reasserts that if ECCU forecloses on the Old Church Parcel, it would destroy LCPI's rights in not only the Old Church Parcel but would also adversely impair the value of the entire Emerald Meadows Project which serves as collateral for the SunCal Communities Loan held by LCPI.

WHEREFORE LCPI respectfully request that the Court deny the Motion at this time and grant LCPI such other and further relief as is just.

Dated:  July 6, 2011
New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession