**Hearing Date and Time:  October 27, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Reply Date and Time:    October 26, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

Steven K. Davidson (*pro hac vice* pending)
George R. Calhoun V (*pro hac vice* pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue
Washington, DC  20036
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902

Evan Glassman
STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, New York 10019
Telephone:  (212) 506-3900
Facsimile: (212) 506-3950

*Attorneys for US Airways, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,      :        08-13555 (JMP)
                                              :
Debtors.                                      :        (Jointly Administered)
                                              :
                                              :
------------------------------------------------------------x

**RESPONSE OF US AIRWAYS, INC. (PROOF OF CLAIM NO. 30598)**
**TO DEBTORS' ONE HUNDRED ELEVENTH OMNIBUS OBJECTION TO CLAIMS**
**("NO LIABILITY CLAIMS")**

US Airways, Inc. ("US Airways") (Proof of Claim ECF No. 30598), by and through its

undersigned counsel, hereby responds to and opposes the Debtors' One Hundred Eleventh

Omnibus Objection to Claims (No Liability Claims) (the "Objection") and states as follows:

## SUMMARY

Lehman Brothers Holdings Inc.'s ("LBHI") Objection does not specifically address US Airways' claim. Rather, LBHI generally contends that it is not liable because the claims it identifies allegedly relate to Lehman Brothers, Inc. ("LBI"), and not LBHI (collectively "Lehman Brothers"). LBHI also contends that it is not liable because US Airways' claims were asserted in separate litigation where LBHI was not named as a party. LBHI's arguments fail as a matter of law and fact.

A timely and properly filed proof of claim is presumptively valid unless the objecting party presents credible evidence to refute an essential allegation of the claim. LBHI fails to offer any *evidence* to overcome the presumption of validity. Indeed, LBHI is directly liable to US Airways as a result of its own wrongful conduct and is derivatively liable under the theories of enterprise liability, alter ego, and veil piercing. LBHI's Objection, thus, fails as a matter of law.

Moreover, the fact that US Airways did not name LBHI as a party in separate litigation – which it could not do as a matter of law because of the automatic stay – has no bearing on LBHI's liability. In December 2009, US Airways commenced a FINRA arbitration against four former employees of LBI for claims arising out of US Airways' purchase of ARS (the "FINRA Arbitration"). Because of the automatic stay, neither LBHI nor LBI was a party to the arbitration. On May 27, 2011, a three-member panel unanimously issued an award in US Airways' favor, finding three of the respondents jointly and severally liable for $15 million.

Even without the benefit of discovery, US Airways has substantial evidence concerning LBHI's liability for its direct actions, including, but not limited to, LBHI's participation in the actionable conduct, LBHI's dominion and control over LBI, LBHI's practice of treating all of

Lehman Brothers as one entity, and its failure to observe corporate formalities.[1]  US Airways submits that, after a reasonable opportunity for discovery, there will be additional evidentiary support to find LBHI liable to US Airways.  Accordingly, US Airways respectfully requests that the Court overrule LBHI's objection, authorize US Airways to take discovery, and, given the complexity of the issues involved, convert the Objection to an adversary proceeding.  *See* Fed. R. Bankr. P. 9014(c).

## BACKGROUND

This claim is based on LBHI's wholly-owned subsidiary LBI recommending to, and purchasing on behalf of, US Airways investments in highly-structured, non-traditional Auction Rate Securities ("ARS"), which were purchased from June 2006 through August 2007, and then LBHI's formation of an *ad hoc* committee to manage Lehman Brother's response to the failed auctions, including setting firm-wide policies, developing talking points for customers, interacting with customers, and ultimately devising a program to repurchase certain illiquid ARS from select customers.  LBHI, a Delaware corporation, was the holding company for hundreds of individual corporate entities, including LBI.  Through those subsidiaries, LBHI was "a global market-maker in all major equity and fixed income products" and principally engaged in the capital markets, investment banking and investment management.  *See* Lehman Bros. Holdings Inc., Annual Report, at 5 (Form 10-K) (Feb. 13, 2007).  LBHI described itself and its subsidiaries collectively as "Lehman" in its 10-K and other public disclosures.  *Id.*

---

[1] US Airways has also developed significant evidence from the FINRA arbitration.  US Airways may be precluded, however, from using that evidence in this proceeding due to a confidentiality agreement entered into by the parties to the FINRA proceeding.  US Airways anticipates that discovery would elicit the same information, and more, that would further support US Airways' Claim.

US Airways' corporate treasury department was charged with managing the company's cash by selecting safe investments that would preserve capital, maintain liquidity, and earn a reasonable yield. Cash is critical to an airline. US Airways must maintain large, liquid, quickly accessible cash balances to counteract volatile changes in, among other contingencies, fuel prices. To meet this need, US Airways relied on professional brokers from what it thought to be the most reputable firms to invest its cash balances safely. US Airways does not employ investment professionals. Instead, it relied on professional brokers, including Lehman Brothers, to manage its cash.

US Airways entrusted Lehman Brothers with over $400 million to invest. Lehman Brothers recommended to, and purchased for, US Airways $134 million of ARS. ARS are long-term bonds whose interest rates are reset at regularly scheduled auctions typically held every 28 days, at which point a holder of the securities has the ability to liquidate its position – thus, these assets were regarded as if they were cash or cash equivalents.

LBHI, as the parent corporation, "managed and directed the affairs" of Lehman Brothers. *See, e.g.*, Examining the Causes of the Current Financial and Economic Crisis of the United States and of the Collapse of Lehman Brothers: Hearing Before Fin. Crisis Inquiry Comm'n, 11 (2010) (statement of Harvey R. Miller, Senior Partner, Weil, Gotshal & Manges, LLP) ("As the parent corporation, LBHI managed and directed the affairs of the Lehman enterprise."). By way of some examples, LBHI was a primary source of LBI's funding and managed the cash generated by the entire Lehman enterprise. *Id.* at 12. "Generally, all such cash was swept each night into concentration accounts at LBHI and each day LBHI disbursed cash to its various subsidiaries and affiliates, as needed." *Id.* The Lehman enterprise also had an integrated electronic accounting and reporting system. *Id.*

4

Additionally, there was substantial overlap on the LBHI and LBI board of directors, with at least four individuals serving on both boards. Richard S. Fuld served as the Chairman of the Board of LBHI and Chairman of the Board and CEO of LBI from 1994 until 2008.[2] John Dewitt Macomber, Christopher Gent and John F. Akers each served as directors for both LBHI and LBI.[3] There was additional overlap in key management roles as well. For example, Thomas Russo was previously vice chairman of LBI and chief legal officer at LBHI.[4]

Significantly, Lehman Brothers managed comprehensive risk and capital requirements on a consolidated basis for the entire enterprise. As explained in its Form 10-K Annual Report for the fiscal year ending November 30, 2006:

> Capital Requirements
>
> LBI . . .and other subsidiaries of Holdings are subject to various capital adequacy requirements promulgated by the regulatory, banking and exchange authorities of the countries in which they operate. . . .
>
> In June 2004, the SEC approved a rule establishing a voluntary framework for comprehensive, group-wide risk management procedures and consolidated supervision of certain financial services holding companies. We applied for permission to operate under the rule and received approval effective December 1, 2005. The rule allows LBI to use an alternative method, based on internal models, to calculate net capital charges for market and derivative-related credit risk. Under this rule, Lehman Brothers is subject to group-wide supervision and examination by the SEC and *is subject to minimum capital requirements on a consolidated basis* generally consistent with the International Convergence of Capital Measurement and Capital Standards published by the Basel Committee on Banking Supervision. . . .

---

[2] *See* Davidson Decl. Ex. 3 (The Faces of the Lehman Crisis, Businessweek.com); Davidson Decl. Ex. 4 (Capital IQ service, Profile of Lehman Brothers Inc.).

[3] *See* Davidson Decl. Ex. 4 (Capital IQ service, Profile of Lehman Brothers Inc.).

[4] *See* Davidson Decl. Ex. 5 (Mindi Westhoff, *AIG Reports 6 Executive Appointments*, SNL Fin. LC, Feb. 3, 2010).

Lehman Bros. Holdings Inc., Annual Report, at 25 (Form 10-K) (Feb. 13, 2007) (emphasis added).

LBHI either knew, or should have known, that LBI's brokers recommended to, and purchased for, US Airways exotic, higher-risk, non-standard ARS. This exotic form of ARS comprised only 5% of the ARS market. These were higher-risk investments because the underlying "asset" securitized were the cash reserves of life insurance and mono-line bond insurance companies. In these complicated structures, which were never explained to US Airways, life insurance and bond insurance companies had the right, at their option, to claw back the cash reserves they had securitized, rendering the ARS illiquid, valueless, or both. These higher risk ARS were not suitable for any investor – like US Airways – interested in preserving principal and maintaining liquidity.

It was no coincidence that Lehman Brothers recommended these particular, higher-risk ARS investments for US Airways. The issuers of the ARS were Lehman Brothers' investment bank clients and Lehman Brothers obtained a handsome fee for issuing ARS on behalf of those clients. In order to continue to satisfy those investment bank clients, earn its fees, and continue to "make" the market for these securities, Lehman Brothers purchased the ARS itself by entering "support bids" at the auctions. On information and belief, LBHI knew that LBI was entering support bids, understood that the market would fail without that support, and approved of LBI's support bids. The byproduct of these purchases was that Lehman Brothers had a significant inventory of exotic ARS in its proprietary account.

But, Lehman Brothers did not want to maintain these higher risk products on its books. Instead, Lehman Brothers decided to transfer these higher risk ARS off of Lehman Brothers' balance sheet and into customer accounts, including US Airways' account, by encouraging

brokers to purchase these ARS for US Airways. This practice of transferring the toxic ARS from Lehman Brothers' to customers' accounts accelerated in the months shortly before the market collapsed. Thus, when Lehman Brothers invested US Airways in the higher risk ARS, the market was not actually liquid – it only appeared to be liquid because of Lehman Brothers' own support bids. When that support was withdrawn – a decision US Airways believes was made with LBHI's knowledge, involvement and assent – the auctions for ARS failed. Once the auctions failed, US Airways (and other investors) were unable to access their cash.

On information and belief, LBHI knew that LBI was sponsoring, structuring, marketing and recommending these exotic ARS to corporate treasury clients, which were unsuitable investments. LBHI knew that LBI created these securities on behalf of Lehman Brothers' investment banking clients, such as life insurance and mono-line insurance companies, with the stated purpose of structuring securities to transfer long-term complex insurance risks to money market investors without fully explaining those facts to such investors, such as US Airways. Indeed, the ARS were purposefully structured so that investors, like US Airways, received short-term yields rather than obtain interest rates that reflected the actual term (up to 30-50 years) and risk of the investment. LBHI either knew or should have known that LBI's brokers did not understand the products they were recommending to US Airways, lacked training, and violated FINRA rules and professional standards.

Beginning in August 2007, many of the auctions associated with ARS began to fail, including those owned by US Airways. As a result, the ARS investments became illiquid and US Airways could not access $134.6 million of the funds it had entrusted to Lehman Brothers. After the failures, LBHI became directly involved in dealing with the consequences of the auction failures. LBHI formed an *ad hoc* committee to manage Lehman Brother's response to

7

the failed auctions, including setting firm-wide policies, developing talking points for customers, interacting with customers, and other managerial steps.

The *ad hoc* committee, comprised of at least some if not all LBHI officers and directors, instituted among other policies, a program to repurchase certain illiquid ARS from select customers (the "Buyback Program").  On information and belief, LBHI officers and directors played an integral part, if not the exclusive role, in determining which customers illiquid ARS would be repurchased.  One of the key individuals involved in the Buyback Program was Kurt Locher, LBHI Vice President.  *See* Davidson Decl. Ex. 2, Lehman Brothers Board Meeting Agenda at 13 (May 11, 2007).  Mr. Locher gathered extensive information from LBI brokers about clients with illiquid auction rate securities.  Mr. Locher then, at minimum, provided that information to the *ad hoc* committee and, on information and belief, participated in the deliberations of the *ad hoc* committee.  US Airways contends that LBHI provided specific instructions to LBI as to which illiquid ARS should be repurchased.  LBI, then, at LBHI's direction, repurchased hundreds of millions of dollars of illiquid ARS from select customers.

The Buyback Program was discriminatory in that it repurchased failed ARS from some but not all customers.  Pursuant to FINRA rules and common law duties, Lehman Brothers was required to treat customers in a fair and equitable fashion as well as to disclose the criteria it used to select which customers could participate in the Buyback Program.  Instead, the *ad hoc* committee failed to satisfy these duties.

During the *ad hoc* committee's efforts to gather information from customers and interact with customers holding illiquid ARS, Mr. Locher, an officer of LBHI and member of the committee, had direct contact with US Airways.  On November 13, 2007, Mr. Locher was the primary spokesperson for Lehman Brothers on a conference call with US Airways concerning

8

the failed ARS.  No one from Lehman Brothers disclosed during that conference call that the firm was engaging in a Buyback Program or that the firm had decided to withdraw its support from the ARS market, which led to, and was the primary reason for, the auction failures.

On September 15, 2008, LBHI and many of its affiliates filed for insolvency protection under Chapter 11 of the U.S. Bankruptcy Code.  Shortly thereafter, LBI filed for protection under the Securities Investor Protection Act ("SIPA").  Both the LBHI bankruptcy and the LBI SIPA proceedings are being adjudicated by this Court.  On or about June 22, 2009, US Airways timely filed proof of claim No. 30598 in the amount of $564,661,009.45 against LBHI (the "Claim").[5]  US Airways filed a proof of claim against LBI as well.

Ordinarily, US Airways would have sued LBHI (and LBI) directly but was prevented from doing so by the automatic stay.  On December 10, 2009, US Airways commenced an arbitration under the auspices of FINRA against individual brokers and their supervisors, Roland Hansalik, Lars Jacobson, George Barclay Perry, and Joseph Arena, for claims arising out of US Airways' purchase of ARS (the "FINRA Arbitration").  Neither LBHI (nor LBI) was a party to the FINRA Arbitration.  On May 27, 2011, a three-member panel unanimously issued a final award in US Airways' favor, finding Hansalik, Perry, and Arena jointly and severally liable for $15 million in damages.  US Airways is continuing, and will continue to pursue LBHI (and LBI) on its claims against those entities until it receives a full recovery on its losses.

On or about March 14, 2011, LBHI filed its Objection contending, without support or evidence of any kind, that that the Claim should be disallowed because it is "based upon the

---

[5] US Airways' unliquidated claim was filed in the amount of $564,661,009.45.  US Airways will offset from its claim any recoveries it receives, including sales on the secondary market (which have occurred) and amounts received on its FINRA Award, including from insurance proceeds.

alleged wrongdoing of non-Debtor parties and for which the Debtors are not liable." Objection

at 4 (filed Mar. 14, 2011), ECF No. 15012.[6] LBHI further argues that the US Airways Claim

should be disallowed because it relates "to pending litigations in which the Debtors are not

defendants." *Id.*

## ARGUMENT

### A.    LBHI Has Not Rebutted the Presumption of Validity

A timely and properly filed proof of claim is *prima facie* evidence of the validity and

amount of the claim. *See* Fed. R. Bankr. P. 3001(t). The Debtors do not dispute that the Claim

was properly and timely filed in accordance with the Bar Date Order and the Bankruptcy Rules.

The Claim is, therefore, *prima facie* valid.

"To overcome this prima facie evidence, the objecting party must come forth with

evidence which, if believed, would refute at least one of the allegations essential to the claim."

*In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d

167 (3d Cir. 1992)); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re DJK

Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (objector must produce "sufficient

evidence" of equal force to filed proof of claim).[7] If, and only if, the objecting party meets its

burden of production, the burden then shifts back to the claimant. *In re Reilly*, 245 B.R. at 773;

*In re Martinez*, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009).

---

[6] The Objection makes this blanket contention with respect to each of the twenty-plus claims to which it applies. The Debtors did not assert any specific legal basis for their objection to Claim.

[7] *See also Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, No. 98-4990, 1999 WL 178788, at *3 (S.D.N.Y. Mar. 31, 1999) ("[o]nce the claimant has established its prima facie case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the prima facie validity of the filed claim") (citation omitted); *In re Woodmere Investors Ltd. P'ship,* 178 B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995) (overruling debtor's objection to claim where debtor had not offered any evidence to support its contentions).

LBHI has not proffered *any* evidence to counter US Airways' Claim; accordingly, the Claim is presumptively valid and the burden has not shifted to US Airways. Rather than come forth with evidence, LBHI instead offers two reasons for why US Airways' Claim should be disallowed: (1) US Airways' Claim relates "to pending litigations in which the Debtors are not defendants," *see* Objection at 4; and (2) US Airways' Claim is "based upon the alleged wrongdoing of non-Debtor parties and for which the Debtors are not liable." *Id.* Neither contention is correct.

### 1.    LBHI was not Named as a Party in Separate Litigation Because of the Automatic Stay

LBHI asserts that because LBHI was not named as a party in the FINRA arbitration it is somehow not liable for US Airways' Claim. The fact that US Airways brought a case against individual non-debtors in the FINRA arbitration has no bearing on whether US Airways has a claim against LBHI. Indeed, when US Airways filed the FINRA arbitration, LBHI was a debtor under chapter 11.[8] Thus, as a matter of law, the automatic stay prevented US Airways from including LBHI in its claims against those individuals. *See* 11 U.S.C. § 362.

"It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). As the Second Circuit has noted, "[a] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing" and to stay a suit against a co-defendant would result in "'vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (declining to extend § 362(a) stay to debtor's co-defendant) (citation omitted). US

---

[8] Although US Airways attached the FINRA arbitration complaint to its proof of claim, that supporting document merely provided supporting evidence concerning the factual background of the Claim.

11

Airways pursued its claims precisely as permitted by the Code – it arbitrated against non-debtor individuals in a separate proceeding while its claims against LBHI were subject to the § 362 stay. The fact that the FINRA arbitration did not name LBHI (or that it is now completed) has no bearing on LBHI's liability, which US Airways is prosecuting through this proceeding.

### 2.    LBHI is Directly Liable to US Airways as a Result of LBHI's Conduct

Although LBHI failed to rebut the presumption of validity, US Airways will nonetheless address the substantive merits of its Claim.  As the Second Circuit explained, the purpose of the claim filing requirement is "to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims."  *In re Chateaugay Corp.*, 94 F.3d 772, 777 (2d Cir. 1996) (quoting *Liona Corp. v. PCH Assocs.*, 949 F.2d 585, 605 (2d Cir. 1991)).  A proof of claim is analogous to initiating a civil action, *see* 9 Collier on Bankruptcy 3007:01(3) (Alan N. Resnick et al. eds, 16th ed. 2010) (citing *Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir. 1962)), and need only contain "a short and plain statement of the claim," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."    Fed. R. Civ. Pro. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  LBHI cannot claim any prejudice or surprise from US Airways' Claim.  The issues discussed herein are based on publically available information, including statements from LBHI and its agents.  The Claim satisfies the applicable standards and provides sufficient notice that LBHI is liable to US Airways for negligence, gross negligence, and negligent misrepresentation.

### a.    LBHI's Actions Constitute Negligence and Gross Negligence

To establish that LBHI was negligent, US Airways must prove:  (1) that LBHI owed a legal duty to US Airways to use due care; (2) that LBHI breached this legal duty; and (3) that the breach was a proximate cause of; (4) plaintiff's injury.  *Solomon v. City of New York*, 489 N.E.

2d 1294, 1294-1295 (N.Y. 1985) (citation omitted).[9]    To establish gross negligence, LBHI's conduct must "evince[] a reckless disregard for the rights of others or 'smack[]' of intentional wrongdoing."  *Colnaghi, U.S.A. v. Jewelers Protection Servs.*, 611 N.E.2d 282, 284 (N.Y. App. Div. 1993) (citation omitted).   US Airways asserted this claim in its Proof of Claim. *See* Davidson Decl. Ex. 1, Proof of Claim, Ex. A, Statement of Claim, ¶¶ 132-138.

As US Airways alleged in its Proof of Claim:  "Respondent has a well-defined obligation to recommend and purchase only 'suitable' securities for [US Airways'] Account.   This obligation is 'fundamental to fair dealing and is intended to promote ethical sales practices and high standards of professional conduct.'  FINRA Rule IM-2310-3."  *See* Davidson Decl. Ex. 1, Proof of Claim, Ex. A, Draft Statement of Claim, ¶ 24.   LBHI either knew, or should have known, that LBI's brokers recommended to, and purchased for, corporate cash customers (like US Airways) exotic, higher-risk, ARS, which comprised only 5% of the ARS market.   LBHI knew or should have known that LBI was sponsoring, structuring, marketing and recommending these unsuitable ARS to corporate treasury clients.   LBHI knew or should have known that LBI created these securities on behalf of Lehman Brothers' investment banking clients, with the stated purpose of structuring securities to transfer risk from these clients to money market investors.   Not only did LBHI fail to train Lehman Brothers' brokers to conduct a suitability

---

[9] Because New York is the forum state, New York choice of law rules shall apply. *Tanges v. Heidelberg N. Am., Inc.*, 710 N.E.2d 205, 252 (1999).  Under New York law, the law of the state that has the "greatest interest in regulating behavior in their borders" should apply for claims like negligence, gross negligence, breach of fiduciary duty, and negligent supervision. *See GlobalNet Financial.Com Inc., v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006).  New York has the greatest interest because LBHI's executive offices are located in New York and based on information and belief.   LBHI's direct involvement with the buyback program occurred in New York.  Therefore, substantive New York law applies to these claims.

analysis properly, but also LBHI failed to disclose, or ensure the disclosure of, the inherent risks involved with these products to customers, such as US Airways.

Moreover, LBHI breached its duty of fair dealing when it failed to buyback securities in an equitable fashion. Under FIRNA Rule 2010,[10] members must observe high standards of commercial honor and just and equitable principles when conducting business with their customers. LBHI became subject to this duty when it interjected itself into the ARS transactions. Thus, LBHI owed US Airways a duty of fair dealing, which it breached when it directed the buyback of illiquid ARS from only certain customers. Under the FINRA Rules, the Buyback Program should have been conducted in an equitable fashion – on a pro rata basis, not favoring one customer over another.

The inequitable Buyback Program, which LBHI directed, recklessly disregarded the rights of US Airways, favoring instead the clients chosen by LBHI. Upon information and belief, LBHI selectively bought back illiquid auction rate securities when it believed it was in its institutional interest in contravention of the FINRA Rules and LBHI's duty to other customers. Such conduct constitutes negligence and reckless disregard for the rights of US Airways.

### b. LBHI Negligently Misrepresented the Inherent Risk of the Investments and the Nature of the Buyback Program to US Airways

LBHI made negligent misrepresentations to US Airways when it: (1) failed to disclose the inherent risks involved with exotic ARS products to customers, or to ensure that such risks were disclosed, and (2) failed to disclose the nature of the Buyback Program and the criteria used in determining which securities it would repurchase. US Airways must establish six elements to substantiate a claim of negligent misrepresentation: (1) LBHI, in the course of business, gave incorrect information for the guidance of others in their business transactions; (2) LBHI

---

[10] Formerly NASD Rule 2110.

intended, or could reasonably foresee, that US Airways would rely on that information; (3) LBHI

failed to exercise reasonable care in obtaining or communicating that information; (4) US

Airways relied on that incorrect information; (5) US Airways' reliance was justified; and (6) US

Airways' reliance was a cause of their damages. *Taeger v. Catholic Family and Cmty Serv.,* 995

P.2d 721, 730 (Ariz. Ct. App. 1999).[11]

As US Airways alleged in its Claim, "Respondent purported to make representations to

Claimant regarding the suitability of securities, while failing to disclose certain material facts

that Respondent had a duty to disclose," *see* Davidson Decl. Ex. 1, Proof of Claim, Ex. A,

Statement of Claim,¶ 115, and "Respondent breached these duties by negligently failing to

inform Claimant of the severe risks to the safety and liquidity of the portfolio that these securities

posed." *Id.* ¶ 128.  LBHI never explained to US Airways that these higher-risk, exotic ARS were

created on behalf of Lehman Brothers' investment banking clients to transfer their long-term

complex-risks to money market investors, such as US Airways, nor did LBHI ensure that anyone

explained the true nature of these instruments to US Airways.  LBHI failed to exercise

reasonable care in communicating information that it knew, or should have known, about the

market conditions and inherent risks-of these instruments to US Airways.

LBHI also failed to disclose to US Airways that it was repurchasing securities from other

customers.  LBHI did not disclose all of the relevant criteria that it assessed to determine which

securities would be repurchased.  That misled US Airways, which, as a result, did not present the

case for repurchase of its security.  LBHI could have reasonably foreseen that US Airways would

---

[11] For negligent misrepresentation claims, New York courts have applied the law of the place where the injury occurred, which would be Arizona.  *BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 991 (S.D.N.Y. 2003).  Arizona law recognizes the tort of negligent misrepresentation as defined by the Restatement (Second) of Torts § 552.  *See St. Joseph's Hosp. v. Reserve Life Ins.*, 742 P.2d 808, 813-16 (Ariz. 1987).

rely upon their written and oral misrepresentations, including those that were made in the November 13, 2007 phone call between LBHI Officer, Kurt Locher, and US Airways. Mr. Locher did not inform US Airways that Lehman Brothers intended to, and was purchasing, illiquid ARS from some customers and not others. Had LBHI exercised due care in making such representations, it would have thoroughly disclosed that some customers' ARS were repurchased, and the relevant criteria that the committee used to determine such buybacks. US Airways justifiably relied on Mr. Locher's misrepresentations, and did not pursue presenting the necessary criteria to the committee for the Buyback Program, which in turn caused US Airways injury.

### B.    LBHI is Liable for LBI's Conduct

In addition to its own wrongful conduct, LBHI is also liable because Lehman Brothers was operated as one enterprise, LBHI is an *alter ego* of LBI, and/or because the corporate veil should otherwise be pierced. These theories are fact-specific and US Airways requires discovery in order to establish its claims. As US Airways alleged in its Proof of Claim:

> Lehman was responsible for supervising its employees who committed the various violations described herein. Lehman failed to supervise reasonably to prevent said violations. Lehman failed to either implement or enforce supervisory and compliance procedures among its employees responsible for making and recommending purchases in the US Airways Account. Had Lehman implemented and enforced protocols for the review of purchases made by its employees, it would have known that unsuitable securities were recommended, that material misrepresentations and omissions were made, and that securities regulations were violated. It is manifest that Lehman failed to maintain and enforce a proper system of internal supervision over its employees. Lehman failed to provide adequate instruction with regard to recommendations made by its registered representatives.

Davidson Decl. Ex. 1, Proof of Claim, Ex. A, Statement of Claim, ¶¶ 140-41.

### 1.    LBHI Operated Lehman Brothers as a Single, Integrated Enterprise

LBHI operated Lehman Brothers as a single, integrated enterprise.   Under such circumstances, it is appropriate for the Court to hold LBHI liable for US Airways' Claim.   *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 487 (3d Cir. 2001).   "[I]t has long been acknowledged that parents may be 'directly' liable for their subsidiaries' actions when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management,' and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership."  *Pearson*, 247 F.3d at 487 (citing *United States v. Bestfoods*, 524 U.S. 51, 64 (1998)); *see also* William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193, 218 (1929)) ("direct intervention or intermeddling by the parent in the affairs of the subsidiary and more particularly in the transaction involved, to the disregard of the normal and orderly procedure of corporate control carried out through the election of the desired directors and officers of the subsidiary and the handling by them of the direction of its affairs, seems to have been determinative in some cases to holding the parent liable.").  Given LBHI's control over the Lehman Brothers enterprise and that LBI is part of that enterprise, it is appropriate to hold LBHI liable.

### 2.    LBHI is the Alter Ego of LBI

Disregard of the corporate form is appropriate under the "alter ego" theory where:  (1) it is required to reach an equitable result; and (2) the shareholder dominated the corporation. *Harper v. Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1084-1086 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991). [12]  A variety of factors are relevant to the alter ego analysis and no

---

[12] Under New York choice of law rules, the law of the state of incorporation determines when the corporate form will be disregarded.  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.

single factor justifies disregarding the corporate entity. *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 205 (5th Cir. 1995) (applying Delaware law) (citation omitted). A key element for liability, in the context of a parent-subsidiary relationship, is the amount of control that the parent exercises over the actions of its subsidiary. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989) ("An alter ego relationship might also lie where a corporate parent exercises complete domination and control over the subsidiary."). Accordingly, since LBHI dominated and controlled LBI, the Court should treat LBHI as an alter ego of LBI for purposes of US Airways' Claim.

### 3.    The Court Should Pierce Lehman Brothers' Corporate Veil

Under Delaware law, courts consider a variety of factors in weighing whether to pierce the corporate veil, and no single factor justifies disregarding the corporate entity. Relevant factors include: gross undercapitalization, failure to observe the corporate formalities, non-functioning officers or similar circumstances indicating that the "subsidiary is merely the shadow of the parent." *Phoenix Canada Oil Co. Ltd v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988).[13] Determining that veil-piercing is appropriate is a "fact specific" inquiry, and courts consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8)

---

1995) (citation omitted). Because LBHI is incorporated in Delaware, Delaware law should apply to the issues of piercing the corporate veil and alter ego.

[13] Under New York law, a court may pierce the corporate veil where 1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and 2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consultant v. Merlin Biomed Group*, 268 F. 3d 58, 63-64 (2nd Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

> whether the corporations are treated as independent profit centers;
> (9) payment or guarantee of the corporation's debts by the
> dominating entity, and (10) intermingling of property between the
> entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997). Accordingly, the

Court should permit discovery so that US Airways can show that Lehman Brothers' veil should

be pierced.

The standards for veil piercing (and alter ego liability) are similar to those weighed by the

court when considering whether to consolidate the estate of the debtor with one or more co-

debtors.[14] As the court is aware, there is presently pending a plan that proposes to consolidate

LBHI with a variety of its subsidiaries and affiliates. *See, e.g.,* Disclosure Statement for the

Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings, Inc.

and Certain of Its Affiliated Debtors Proposed by the Ad Hoc Group of Lehman Brothers

Creditors, at 11-30, (filed Apr. 27, 2011), ECF No. 16316 ("Consolidation Disclosure

Statement"). The evidence marshaled by those seeking consolidation similarly supports

disregarding the corporate form as to LBHI and LBI for purposes of US Airways' Claim.

> **4.      US Airways Has Substantial Evidence to Support These Theories of
> Liability and Requests Discovery To Develop Additional Support for
> These Fact Specific Inquiries**

Because enterprise liability, veil-piercing, and alter ego issues are fact specific, courts

routinely grant discovery in connection with arguments that the corporate form should be

disregarded. *See, e.g., First Bank of the Americas v. Motor Car Funding, Inc.,* 257 A.D.2d 287,

294 (N.Y. App. Div. 1999) (Discovery should be granted in support of veil piercing

---

[14] Substantive consolidation is appropriate where one of the following two factors exists:
(1) creditors transacted with affiliated entities as a single economic unit and did not rely on their
separate identity in extending credit or (2) the affairs of affiliated entities are so entangled that
consolidation will benefit all creditors of those entities. *See Union Sav. Bank v. Augie/Restivo
Baking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518 (2d Cir. 1988).

allegation.).[15]   US Airways submits that based on the record developed thus far from publically

available information the Court could impose liability on LBHI.  US Airways further submits

that with discovery, there will be additional evidentiary support to find LBHI liable.[16]

Indeed, the Debtors themselves have acknowledged the substantial facts that weigh in

favor of enterprise liability, alter ego status and veil piercing.  *See* Consolidation Disclosure

Statement at 12 (citing Debtors' Disclosure Statement at 81).  The Debtors list in their Disclosure

Statement twelve factors that support these arguments and justify further discovery.  The

Debtors' Disclosure Statement provides as follows:

> (i) ***Lehman operated as if it were one company*** that was organized
> by business division, not necessarily by legal entity; (ii) ***LBHI's
> board of directors and executive committee had responsibility for
> Lehman's firm-wide strategy, risk, funding, liquidity, operations
> and products;*** (iii) Foreign Debtors and non-Debtor Affiliates were
> utilized to raise capital in foreign currencies to enable Lehman to
> manage the risk in movements in foreign currencies exchange
> rates; (iv) ***one investment committee existed for all Lehman's
> transactions***; (v) the Debtors shared administrative and back-office
> functions; (vi) ***certain Debtors had certain overlapping directors
> and officers;*** (vii) certain subsidiaries had no employees or
> physical premises, (viii) ***Lehman's cash-management systems
> were centralized and managed on a firm wide basis through
> LBHI;*** (ix) tax returns were filed with the IRS on a consolidated
> basis; (x) ***creditors generally transacted with Lehman as one
> economic enterprise and did not rely on the separate identity or
> credit of any single Affiliate***; (xi) creditors did not have access to
> financial statements of most of the Affiliates; and (xii) LBHI
> purportedly guaranteed all obligations of certain of its subsidiaries.

*Id*. (citing Debtors' Disclosure Statement at 82) (emphasis added).  Thus, LBHI concedes that it

operated Lehman Brothers as one company with overlapping directors and officers who decided

on a unified strategy, which was implemented through integrated systems.  Moreover, LBHI

---

[15] US Airways is presently barred from conducting discovery by the Claims Procedure Order, (filed Apr. 19, 2010), ECF No. 8474.

[16]  In addition to the veil piercing and alter ego issues, US Airways will require discovery concerning substantive issues such as LBHI's role in the discriminatory Buyback Program.

understood that creditors – like US Airways – transacted with Lehman Brothers as one enterprise.

At the September 22, 2010 hearing before the Bankruptcy Court, Mr. Bryan Marsal, the Debtors' Chief Executive Officer, explained that "[t]he company, on the substantive consolidation side, was operated as one company . . . it really was not managed on a legal-entity basis." Status Conference Hr'g Tr. 45:1-45:3, Sep. 22, 2010, ECF No. 12227. Mr. Marsal continued, "[t]here was a centralized cash management system and, really, reliance - - there's no apparent - - as far as we can see, there's no good argument made for separate credit analysis. There was one entity that we saw from a financial credit analysis standpoint that people were looking to." *Id.* at 45:13-17. Justice Briggs, who oversees certain aspects of LBIE's insolvency proceedings, similarly found that "[t]he [Lehman Brothers] Group sought to present itself to the world, and to organize itself internally, as a single integrated business enterprise, rather than a collection of separate legal entities." *In re Lehman Bros. Int'l (Europe) (In Administration)*, [2010] EWHC 2914 (Ch) [49] (the "RASCALS Opinion").

US Airways experienced first-hand that Lehman operated as a single enterprise. After the ARS auctions failed, Mr. Locher, a LBHI officer or director, was the primary contact for Lehman Brothers on a conference call with US Airways to explain the enterprise's response. Of course, Mr. Locher failed to offer any constructive solutions all the while LBI was repurchasing securities from certain customers and not others at, on information and belief, LBHI's direction. Moreover, the main reason ARS auctions failed was because Lehman Brothers stopped issuing support bids. Lehman Brothers, as an enterprise, managed its risk and adequacy of capital on an enterprise basis. It disclosed this fact to the public, including creditors. Yet, when it came time to continue to support investments that Lehman Brothers had recommended to and purchased for

21

US Airways, it balked.  Under these circumstances, it is unfair, on the one hand, to satisfy capital requirements on an enterprise basis and then, on the other hand, rely on corporate formalities during insolvency to prevent creditors from accessing assets that reside with other entities.

Based on the foregoing, disregard of LBHI's separate corporate existence from LBI is appropriate with respect to the Claim.  At a minimum, US Airways should be given an opportunity to conduct meaningful discovery to validate its alter ego, veil piercing, and enterprise liability arguments.

## CONCLUSION

For the foregoing reasons, the Court should overrule the Objection to the Claim.  Should the Court allow the Objection to proceed, however, the Court should authorize US Airways to conduct discovery in support of its arguments.  Because the facts and issues involved in this matter are voluminous and complicated, US Airways submits that this matter is appropriately and best treated as an adversary proceeding. Fed. R. Bankr. P. 9014(c).

Accordingly, for the foregoing reasons, US Airways requests:  (a) that the Objection be denied, or, alternatively, (b) that US Airways be granted sufficient time for the conduct of discovery, and given the complexity of the issues, that the Court consider converting the Objection to an adversary proceeding.

Dated:    New York, New York
          July 7, 2011

Respectfully submitted,

**STEPTOE & JOHNSON LLP**

By:    /s/ EVAN GLASSMAN
Steven K. Davidson (*pro hac vice* pending)
George R. Calhoun V (*pro hac vice* pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue
Washington, DC  20036
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902

Evan Glassman
STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, New York 10019
Telephone:  (212) 506-3900
Facsimile: (212) 506-3950

*Attorneys for US Airways, Inc.*