Daniel F.X. Geoghan, Esq.  Hearing Date: July 21, 2011 at 10:00 a.m.
Young Conaway Stargatt & Taylor, LLP
1270 Avenue of the Americas
Suite 2210
New York, New York 10020
Tel: (212) 332-8840
Fax: (212) 332-8855
DGeoghan@ycst.com

*Counsel for CF Midas Balanced Growth Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :     Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al*                         :     Case No. 08-13555 (JMP)
                                                               :
                        Debtors.                               :     (Jointly Administered)
                                                               :
                                                               :
---------------------------------------------------------------x

## CF MIDAS BALANCED GROWTH FUND'S RESPONSE TO THE DEBTORS' ONE HUNDRED FORTY-THIRD OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

CF Midas Balanced Growth Fund (the "CF Fund"), by and through its undersigned counsel, hereby responds to the Debtors' One Hundred Forty-Third Omnibus Objection to Claims (Late-Filed Claims), and respectfully represents as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The statutory predicate for the relief requested herein is Fed. R. Bankr. P. 9006(b).

## BACKGROUND

2. On September 15, 2008 (the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI,") commenced a case in the United States Bankruptcy Court for the Southern District of New York under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"). With its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors"), the Debtors continue in possession of their properties and the management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On July 2, 2009, the Bankruptcy Court entered the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (the "Bar Date Order"). Docket No. 4271. Among other things, the Bar Date Order established November 2, 2009, as the Securities Programs Bar Date for Lehman Program Securities. Furthermore, the Bar Date Order states that issuances under "that certain *U.S. $100,000,000,000 Euro Medium Term-Note Program*" qualify as Lehman Program Securities.

4. On or about November 8, 2010, the CF Fund filed its proof of claim (Claim No. 67193) in the amount of $4,293,541.60 (the "Claim").

5. The Claim is a guarantee claim against LBHI. LBHI issued a guarantee of Lehman Brothers Treasury Co. B.V.'s ("LBTC") obligations under the *U.S. $100,000,000,000 Euro Medium Term-Note Program.* Boyling Decl. ¶ 4.

6. On or about May 16, 2011, the Debtors filed their One Hundred Forty-Third Omnibus Objection to Claims (Late-Filed Claims) (the "Objection"). Docket No. 16856. In the Objection, the Debtors seek to disallow and expunge the Claim as a late filed claim.

## RELIEF REQUESTED

7. The Claimant hereby requests that the Court deny the Objection and allow the Claim.

## BASIS FOR RELIEF REQUESTED

8. Fed. R. Bankr. P. 9006(b)(1) permits this Court to allow a late filed claim if the creditor failed to comply with the bar date due to "excusable neglect." *See id.* "[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was a result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

9. "Excusable neglect" is not defined by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. However, the United States Supreme Court has held that excusable neglect is a "flexible understanding [that] accords with policies underlying Chapter 11 and the bankruptcy rules." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993).

10. Excusable neglect is generally defined as "an equitable consideration taking all relevant factors of the party's omission and not merely circumstances that were beyond the party's control." *In re Alexander's Inc.*, 176 B.R. 715, 719 (Bankr. S.D.N.Y. 1995) (quoting *Pioneer*, 507 U.S. at 395). The relevant factors that determine whether excusable neglect exists include:

> (a) the danger of prejudice to the debtor, (b) the length of delay and its impact on judicial proceedings, (c) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395.

11. The Claim was received by the Debtors on November 8, 2010, approximately one year after the Bar Date. The reason for the delay is that the CF Fund reasonably relied on the plain language of the notices it received regarding the need to file a direct claim in the LBHI bankruptcy proceedings. Boyling Decl. ¶ 8.

12. The CF Fund received three notices from LBTC, the actual issuer of the note. Boyling Decl. ¶ 4 - 7. All three of the notices stated, with insignificant variations, "If you own a beneficial interest in any notes, it is — until further notice — not required to formally file your claim with us." Boyling Decl. ¶ 5 - 7. In addition, the third notice stated, "The Bankruptcy Trustee aims to coordinate with LBHI the process of filing claims by holders of notes with respect to the LBHI guarantee in the Chapter 11 proceedings of LBHI." Boyling Decl. ¶ 7.

13. The CF Fund was subsequently contacted by the London office of Bank of New York Mellon ("BNYM"), the entity appointed by the depositary to custody the assets of the CF Midas Growth Fund, and supplied what it thought was the necessary information in order to coordinate the process of filing claims, as per the third notice. Boyling Decl. ¶ 9 - 10. BNYM responded, stating that the information was incomplete and advising CF Funds to resubmit. Boyling Decl. ¶ 11. On November 12, 2009, Mr. Eoin Murphy responded to BNYM's email requesting additional information. Boyling Decl. ¶ 12. Mr. Murphy did not receive a further response from BNYM. *Id.*

14. A review of the factors highlighted by the Supreme Court in *Pioneer*, indicates that the CF Fund's failure to file its claim by the bar date constitutes excusable neglect.

15. The first *Pioneer* factor weighs in favor of allowing the CF Fund's late filed claim because the delay in filing could not "jeopardize the success of the reorganization." *See Midland Cogeneration Venture Ltd. P'Ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 130 (2d Cir. 2005) (internal citations and quotations omitted). Simply put, the Claim for $4 million is insignificant in comparison to the size of the estate, which is close to $1 trillion.

16. The second *Pioneer* factor also weighs in favor of allowing the claim. Although the claim was filed approximately one year late, allowing it would have no impact on the judicial proceedings. *See, e.g. In re Beltrami, Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (permitting a claim that was two-years late to be filed); *In re Sage-Dev*, 170 B.R. 46, 52-53 (Bankr. N.D.N.Y. 1994) (permitting a claim that was six months late to be filed).

17. As to the third factor, in *Pioneer*, the Supreme Court found that excusable neglect can extend to "inadvertent delays" and that it is "not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. The Supreme Court also stated, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388. Even if, as in *Pioneer*, it was within the power of the CF Fund to some extent to resolve the confusion, this situation is exactly the type for which the Court's ruling in *Pioneer* offers the opportunity for relief. *Id.* at 389-99.

18. Finally, the CF Fund's reliance upon the notices provided to it by LBTC and its attempts to provide BNYM with the information it requested demonstrate that it acted in good faith. In light of the CF Fund's reliance upon the notices provided by LBTC, the application of principles of equity and fundamental fairness should result in the allowance of the CF Fund's claim.

## **CONCLUSION**

19. For all of the above-stated reasons, it is permissible for this Court to allow the CF Fund's Claim. "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness." *Pioneer*, 507 U.S. at 388 (1993). Therefore, this Court should deny the Debtors' Objection and allow the CF Fund's Claim.

WHEREFORE, the CF Fund respectfully requests that the Court grant the relief requested herein, and grant such other and further relief as is just.

Dated: July 7, 2011

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        */s/ Daniel F. X. Geoghan*
        Daniel F.X. Geoghan, Esq.
        1270 Avenue of the Americas
        Suite 2210
        New York, New York 10020

        *Counsel for CF Midas Balanced Growth Fund*