# DON PROHASKA & ASSOCIATES

3465 Regent Avenue  Eugene, OR. 97401 T (541) 683-9300  Fax (541) 683-9303

June 20, 2011

The Honorable James Peck
US Bankruptcy Judge
Courtroom 601
US Bankruptcy Court, Southern District of NY
One Bowling Green
New York, NY, 10004

RE:   LBHI, et al
      08-13555 (JMP)
      151st Omnibus Objection to Claims

Subject:   Claim #5780 against Lehman Brothers Holdings
           Claim amount: $53,804.48


Judge Peck:

I am in receipt of a notice dated June 7, 2011 indicating LBHI has objected to my claim in the 151st Omnibus Objection to Claims filed with this court and seeks to have it expunged.  Exhibit A lists the reason as "No Liability Claim".  <u>This letter is to oppose the objection and reassert the validity of the claim</u>.

Each of the invoices comprising the claim is based on serices provided to Lehman Brothers at the request of Managing Director Carmine Visone, VP Al Picallo and other LB staff in the Global Real Estate Group offices and/or through Lehman's loan servicing group, Trimont Real Estate Advisors on behalf of Lehman Brothers.  All requests were made verbally as had been the practice over a period of more than 10 years.  With the exception of the October 8, 2008 invoice of $1,324.86 for Centennial Hills, all services were provided prior to the bankruptcy filing.

Services provided to LB on the 222 Broadway property were specifically requested on several occasions to monitor and assist the borrower who was experiencing financial stress and filed for bankruptcy before the project could be completed.  Mr. Visone, his assistant Michael Zito and Mr. Visone's consultant, Joe Speranza of Shopco all telephoned me on several occasions and asked that I increase my oversight and assist the borrower's staff in managing the construction and review their efforts to increase Lehman's participation to recapitalize the project.  These duties were similar to others provided to LB in the past on loan or debt workouts.  Prior invoices through April, 2008 were paid by Lehman.  Invoices addressed to Trimont were done so at the direction of Rick Garvin who advised that following the bankruptcy, he would be better able to get them processed than LB.

Services provided to LB on the Montelucia property were specifically requested by Al Picallo to join his team on site, review the project status and determine the adequacy of the budget and schedule to complete the project.  I delivered a written report to LB and participated in a teleconference between Lehman, Trimont and the construction lender, EuroHypo.  As with 222

Broadway, the borrower was looking for additional financing from Lehman to complete the project.

Services provided on the Centennial Hills property were initially at the request of Masato Inagaki and Ashley Bickford, then of Lehman's Los Angeles office, and Trimont Realty Advisors to provide monthly construction monitoring duties related to monthly loan draws.  Prior invoices through August, 2008 were paid.

As indicated on Exhibit 1, Lehman personnel have acknowledged the validity of the claims and previously approved the invoices for payment.  I am not an attorney but I believe Lehman's claim that they have no liability is wrong and irresponsible.  I performed each of the services in good faith that Lehman would pay me for them as they agreed to do and had always done in the past.  I understand that due to the bankruptcy recovery of the full value of the claims may not be feasible.  However, good faith efforts should be made by LBHI to negotiate a reasonable settlement.

Very truly yours,

Don Prohaska, RA, CCI
3465 Regent Avenue
Eugene, OR.  97401
(541) 683-9300


Exhibit 1:  emails with Alvarez & Marsal from 4/8/09 to 5/5/09