| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------x<br>　　　　　　　　　　　　　　　　　　　：<br>In re　　　　　　　　　　　　　　　　：<br>　　　　　　　　　　　　　　　　　　　：<br>LEHMAN BROTHERS HOLDINGS,　　：<br>　INC., et al.,　　　　　　　　　　　　：<br>　　　　　　　　　　　　　　　　　　　：<br>　　　　　　　　　　　Debtors.　　　：<br>　　　　　　　　　　　　　　　　　　　：<br>------------------------------------------------------x | **Hearing Date and Time:**<br>July 20, 2011, at 10:00 a.m.<br><br>Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**OBJECTION OF THE UNITED STATES TRUSTEE
TO THE APPLICATION OF THE DEBTORS PURSUANT TO
SECTIONS 327(E) AND 328(A) OF THE BANKRUPTCY CODE
AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN
PACHULSKI STANG ZIEHL & JONES LLP AS SPECIAL COUNSEL
TO THE DEBTORS, *NUNC PRO TUNC* TO SEPTEMBER 18, 2009**

TO:　　THE HONORABLE JAMES M. PECK,
　　　　UNITED STATES BANKRUPTCY JUDGE:

　　　　Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through her counsel, hereby submits this objection (the "Objection") to the application (the "Supplemental PSZJ Application") of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors"), pursuant to Sections 327(e) and 328(a) of title 11, United States Code (the "Bankruptcy Code"), to employ and to retain Pachulski Stang Ziehl & Jones LLP ("PSZJ") as special counsel to the Debtors, nunc pro tunc to September 18, 2009.  (ECF Dkt. No. 17154).  In support hereof, the United States Trustee respectfully states:

## I. INTRODUCTION

　　　　The United States Trustee objects to the Debtors' request for authorization to expand the scope of services that PSZJ, its special counsel, may perform nunc pro tunc to

September 18, 2009, a date that is nearly two years ago. By the Supplemental PSZJ Application, the Debtors now seek to retain PSZJ to represent LBHI in two civil actions that have been pending before the United States District Court for the Central District of California since 2003 and 2006, respectively. As of the date hereof, LBHI is not a party to the actions before the California District Court. To the contrary, at all times relevant, PSZJ has been representing another party, namely, Lehman Brothers Bank, FSB ("LBBF"), now known as Aurora Bank, FSB ("Aurora"), a non-debtor affiliate.

The United States Trustee objects to the Debtors' request for nunc pro tunc relief because the Debtors have failed to meet their burden of proof to show, and the relevant facts do not support a finding, that: (i) PSZJ could have been retained as of September 18, 2009, and (ii) the Debtors' delay in requesting this relief was the result of "extraordinary circumstances" or "excusable neglect," the law in the Second Circuit. For these reasons, the United States Trustee respectfully requests that the Court (i) deny the Debtors' request for nunc pro tunc relief and (ii) direct PSZJ to account for and disgorge any funds that the Debtors, without a court order, already paid to PSZJ for these expanded services.

## II. FACTS

**A.     The Chapter 11 Cases**

*Background*

1.     On September 15, 2008, and periodically thereafter (collectively, the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.     Prior to the Petition Date, Lehman Brothers, Inc. ("LBI"), was the fourth largest investment bank in the United States, and, for more than 150 years, had been a

2

leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide. Affidavit of Ian T. Lowitt, Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on September 14, 2008, at ¶ 5. (ECF Dkt. No. 2).

3. By Order dated September 17, 2008, the Debtors' cases are being administered jointly. (ECF Dkt. No. 86).

4. On September 17, 2008, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). (ECF Dkt. No. 62). The constitution of the Creditors' Committee has been amended subsequently from time to time. See ECF Dkt. Nos. 592, 6217, 7034.

5. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI. A trustee (the "SIPA Trustee"), appointed under SIPA, is administering LBI's estate.

6. No trustee has been appointed in these cases.

*Sale to Barclays*

7. Shortly following the Petition Date, the Debtors filed a motion to sell (the "Sale") substantially all of their assets to Barclays Capital Inc. (ECF Dkt. No. 60). By Order (the "Sale Order") dated September 20, 2008, the Court approved the Sale.[1] (ECF Dkt. No. 258).

---

[1] On February 22, 2011, the Court entered an Order denying a motion filed, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, by LBHI, the Creditors' Committee and the SIPA Trustee requesting that the Court modify the Sale Order. (ECF Dkt. No. 14612).

3

*Appointment of the Examiner*

8. On January 16, 2009, the Court directed the appointment of an examiner (the "Examiner") to, among other things, investigate (i) the causes for the Debtors' business failure (ii) possible causes of action arising from the Debtors' financial condition and business failure, (iii) whether there are any administrative or other avoidable transfers and (iv) whether there are any claims arising from the sale to Barclays. (ECF Dkt. No. 2569).

9. By Order dated January 20, 2009, the Court approved the United States Trustee's appointment of Anton R. Valukas as the Examiner. (ECF Dkt. No. 2583).

10. On February 8, 2010, the Examiner filed under seal a report of his investigation, which later was unsealed by Order of the Court dated March 11, 2010. (ECF Dkt. No. 7531).

*LAMCO*

11. On March 15, 2010, the Debtors filed a motion (the "LAMCO Motion") seeking authorization to enter into certain asset and management related agreements that would enable the Debtors to organize new non-debtor entities (collectively, "LAMCO") to provide management services to the Debtors and potentially to third parties. LAMCO Motion at ¶ 3. (ECF Dkt. No. 7579). By Order dated April 15, 2010, the Court approved the LAMCO Motion. (ECF Dkt. No. 8372).

*Status of the Cases - The Chapter 11 Plans*

12. On March 15, 2010, the Debtors filed the proposed Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors. (ECF Dkt. No. 7572).

4

Thereafter, the Debtors filed amended or revised proposed plans. See ECF Dkt. Nos. 8330, 8332, 14150 and 14151.

13. On December 15, 2010, and April 25, 2011, two groups of creditors, hereinafter referred to as the "Ad Hoc Group" and the "Non-Consolidation Group," respectively, filed proposed alternative plans and disclosure statements. See ECF Dkt. Nos. 13504, 13505, 16315, 16316, 16229 and 16230. The primary difference between the Debtors' plan and the alternative plans concerned the proposed substantive consolidation of the Debtors' estates. Id. Each disclosure statement filed by the parties (collectively, the "Disclosure Statements") was accompanied by a motion (collectively, the "Disclosure Statement Motions") seeking approval thereof.

14. A hearing (the "Disclosure Statement Hearing") for the Court to consider the Disclosure Statement Motions initially was scheduled to be held on June 28, 2011. See ECF Dkt. Nos. 15078, 16317 and 16435. Subsequently, the parties adjourned the Disclosure Statement Hearing, as well as the deadlines to object thereto sine die. See ECF Dkt. Nos. 17009, 17112 and 17123.

15. On June 29, 2011, the Debtors filed the proposed Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Second Amended Plan"), together with a disclosure statement (the "Disclosure Statement"). (ECF Dkt. Nos. 18124 and 18125). The Disclosure Statement provides, among other things, that the Debtors and the representative groups of creditors, including substantially all of the members of the Ad Hoc Group and the Non-Consolidation Group, have agreed to the terms of the Plan. Disclosure Statement at § II.A.

16. On July 1, 2011, the Debtors filed another version of the Second Amended Plan and the Disclosure Statement, together with a motion (the "Amended Disclosure Statement Motion") seeking approval of the Second Amended Disclosure Statement. (ECF Dkt. Nos. 18204 and 18205).

17. By Order to Show Cause dated July 6, 2011, the Court ordered that a hearing to consider the Amended Disclosure Statement Motion will be held on August 30, 2011, at 10:00 a.m. (ECF Dkt. No. 18292).

**The Initial PSZJ Application**

18. On June 3, 2009, the Debtors filed an application (the "Initial PSZJ Application"), pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code, seeking authorization to retain and to employ PSZJ as special counsel for LBHI and Lehman Commercial Paper, Inc. ("LCPI") (collectively, the "Lehman Entities") with respect to matters arising in the chapter 11 cases (the "SunCal Chapter 11 Cases") of Palmdale Hills Property, LLC and its related debtors (the "SunCal Debtors"), currently pending in the Bankruptcy Court for the Central District of California, Case No. 08-17206 (ES) (Jointly Administered). Initial PSZJ App. at ¶ 8. (ECF Dkt. No. 3765).

19. By the Initial PSZJ Application, the Debtors sought to engage PSZJ to handle the following matters (the "Initial Representative Matters"):

(i) representing the Lehman Entities in relation to any issues arising with respect to any disclosure statement(s) and plan(s) of reorganization filed by the SunCal Debtors, including pending and anticipated litigation with respect thereto,

(ii) representing the Lehman Entities in relation to prosecuting or defending various other motions and other matters in the SunCal Chapter 11 Cases to protect the Lehman Entities' rights, and

6

(iii)   (iii) representing the Lehman Entities in litigation pending against them in the California Bankruptcy Court, styled Palmdale Hills Property, LLC v. Lehman ALI, Inc., Adv. Pro. No. 09-01005.

Id.

20.   In addition, the Initial PSZJ Application provides that PSZJ's services would be limited to matters in the California Bankruptcy Court and any appellate courts with respect to appeals arising in connection with therewith. Id. By the Initial PSZJ Application, the Debtors requested that its retention of PSZJ be made effective nunc pro tunc to February 25, 2009, approximately three months prior.

21.   In support of the Initial PSZJ Application, the Debtors submitted the Declaration of Dean A. Ziehl, dated June 3, 2009 (the "Initial Ziehl Declaration"). Initial PSZJ App., Ex. A. (ECF Dkt. No. 3765). By his declaration, Mr. Ziehl, a partner of PSZJ, represented that, "In connection with certain of the [Initial] Representative Matters, PSZJ also will be representing the following non-debtor affiliates of the Lehman Entities: Lehman ALI, Inc.; Northlake Holdings, LLC; OVC Holdings, LLC; LBREP II/Suncal Land Fund Member, LLC; Oak Valley, LLC; SCLV Northlake, LLC; and LB/L DUC III Master LLC."[2] Initial Ziehl Decl. at ¶ 5. Mr. Ziehl further states that "PSZJ will be paid by the foregoing non-debtor affiliates for services provided on their behalf in connection with certain of the [Initial] Representative Matters." Id.

22.   By Order dated June 17, 2009, the Court approved the Initial PSZJ Application. (ECF Dkt. No. 4009).

---

[2] It is noted that neither the Initial PSZJ Application nor the Initial Ziehl Declaration discloses that PSZJ also would be representing LV Pacific Point, LLC, another non-debtor affiliate, in the SunCal Chapter 11 Cases. Apparently, this information is first disclosed in the Supplemental PSZJ Application (defined below), nearly two years later. See Supplemental PSZJ Application at ¶ 13.

7

23. PSZJ's representation of the Lehman Entities is ongoing. <u>See</u> Sixth Interim Application of PSZJ Stang Ziehl & Jones LLP for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Debtors for the Period from October 1, 2010 through January 31, 2011 ("Sixth Interim PSZJ Fee Application). (ECF Dkt. No. 16048). According to the Sixth Interim PSZJ Fee Application, PSZJ allocates 30 percent of the fees and expenses that it incurs in connection with the Initial Representative Matters to the Lehman Entities and 70 percent to the non-debtor affiliates. Sixth Interim PSZJ Fee Application at ¶ 21. It appears, therefore, that the approximate $2 million in fees that PSZJ has incurred through September 2010, and sought to be paid by the Debtors' estates, represents only 30 percent of the total fees that PSZJ has incurred in connection with its existing engagement. <u>See</u> <u>id.</u> at 1-2.

**The Supplemental PSZJ Application**

24. On May 26, 2011, the Debtors filed the Supplemental PSZJ Application. (ECF Dkt. No. 17154). By the Supplemental PSZJ Application, the Debtors seek to expand the scope of the PSZJ retention (the "Expanded Services") to include PSZJ's prosecution of two civil actions pending in the United States District Court for the Central District of California (the "California Actions") styled, <u>Lehman Bros.Bank, FSB v. Beverly Hills Estates Funding, Inc.</u>, Case No. CV03-2702-DPP and <u>Lehman Bros. Bank, FSB v. U.S. Bank, N.A.</u>, Case No. CV06-00495-DDP. Supplemental PSZJ App. at ¶ 14. A review of the California District Court's docket reveals that LBBF commenced the California Actions in 2003 and 2006, respectively. According to the

8

Supplemental PSZJ Application, LBBF, now Aurora, is a wholly owned by LBHI. Id. at ¶ 14.

25. The Debtors state that they are requesting the nunc pro tunc relief to September 18, 2009, because PSZJ replaced LBBF's original counsel in the California Actions, Severson & Werson, at that time. Id. at ¶ 15. The Debtors claim that, although "it was initially believed the non-debtor Aurora was the appropriate party plaintiff in the California Actions … in April 2011 and after considerable diligence, it was determined by LBHI that the loss, and any recovery, properly belongs to LBHI, not Aurora." Id. at ¶ 16. The Debtors represent that "LBHI wishes to substitute itself into the case as plaintiff [and] [a]s a result of the substitutions, any recoveries will now inure to the benefit of LBHI, not Aurora." Id.

26. A review of the court's docket in the California Actions reveals that, as of the date hereof, there neither has been an order entered nor an application requesting the substitution of LBHI for Aurora.[3]

27. In addition, by the Supplemental PSZJ Application, the Debtors disclose that since September 18, 2009, to present, PSZJ has incurred fees in an amount less than $40,000.00. Id. at ¶ 18. Notwithstanding the absence of an Order authorizing the retention of PSZJ to perform the Expanded Services, the Debtors have nonetheless paid PSZJ nearly $9,000.00 for these services.

---

[3] It is noted that the Debtors' reference in paragraph 17 of their papers to "the recent substitution of LBHI as the proper party plaintiff," appears to be an error. See Supplemental PSZJ App. at ¶ 17.

9

### III. OBJECTION

A.   **The Governing Law.**

28.   Section 327(e) of the Bankruptcy Code provides that a trustee[4] may employ a professional, for a specified special purpose, other than to represent the trustee in conducting the case, with the bankruptcy court's approval. 11 U.S.C. § 327(e). No service, however, performed by professionals is compensable under Sections 330 and 331 of the Bankruptcy Code unless the court approves the retention. Lamie v. United States Trustee, 540 U.S. 526, 538 (2004).

29.   In the Second Circuit, there is a per se prohibition against compensating professionals for services rendered prior to entry of a retention order. See In re CCT Commc'ns, Inc., No. 07-10210, 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981), cert. denied, 455 U.S. 941 (1982)); Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.), 509 F.2d 1242, 1245-46 (2d Cir. 1975); In re 245 Assocs., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995). Enforcement of such a strict rule enables the court to examine any potential conflicts of interest that a professional may have prior to the rendering of services, see Futuronics, 655 F.2d at 469, and avoids the emotional pressure to award fees which can arise if services have already been rendered. In re Bennett Funding Group, Inc., 213 B.R. 234, 242 (Bankr. N.D.N.Y. 1997) (citing In re Rogers-Pyatt Shellac Co., 51 F.2d 988, 992 (2d Cir. 1931)).

---

[4] Section 1107(a) of the Bankruptcy Code gives a debtor in possession the rights and powers of a trustee. 11 U.S.C. § 1107(a).

10

30. The attorney who renders services without an order of retention has only one chance for compensation to be paid by the estate: nunc pro tunc retention. 245 Assocs., 188 B.R. at 750; see also, In re Motors Liquidation Co., 438 B.R. 365, 378 (Bankr. S.D.N.Y. 2010) (the reason why professionals care about nunc pro tunc retention is that it permits compensation to be awarded on and after the nunc pro tunc date). It is well-settled that professional persons who perform services for a debtor without prior court approval of their retention under Bankruptcy Rule 2014 risk denial of compensation. In re East Hill Mfg. Corp., No. 97-11884, 2001 WL 34808428, at *6 (Bankr. D.Vt. 2001).

31. Nunc pro tunc retention circumvents the per se rule. 245 Assocs., 188 B.R. at 750. Consequently, "[a]s a general rule, the Second Circuit prohibits nunc pro tunc orders." Id. (citing In re Corbi, 149 B.R. 325, 333 (Bankr. E.D.N.Y. 1993) (additional citations omitted)).

32. The Second Circuit has held that nunc pro tunc approval should be granted only in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances. Cushman & Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship), 189 F.3d 86, 87-88 (2d Cir. 1999). "'Simple neglect'" on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief." In re Aquatic Dev. Group, Inc., 352 F.3d 671, 679 (2d Cir. 2003) (quoting Land v. First Nat'l Bank of Alamosa (In re Land), 943 F.2d 1265, 1268 (10th Cir. 1991)).

11

33. Extraordinary circumstances may be established through consideration of "whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service had initial approval not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." In re F/S Airlease II, Inc., 844 F.2d 99, 105-06 (3d Cir. 1988) (citing In re Arkansas, 798 F.2d 645 (3d Cir. 1986)) (denying retroactive approval of fees where counsel waited a year to seek to be retained and seven months after completing services to apply for fees and expenses).

34. In In re Stylianou, No. 01-16121 (AJG), 2010 WL 3719303 at *3 (Bankr. S.D.N.Y. Sept. 15, 2010), an unpublished decision, the bankruptcy court found that the second prong of the test for nunc pro tunc retention is whether the delay in seeking court approval resulted from "excusable neglect."[5] Id. (citing In re Hutter, 215 B.R. 308, 315 (Bankr. D. Conn. 1997);[6] 245 Assocs., 188 B.R. at 750-51). The court held that the factors a court considers to determine "excusable neglect" include: "(i) the danger of prejudice to the debtor, (ii) the length of the delay, including whether it was within the reasonable control of the movant, and (iii) whether the movant acted in good faith." Id. (quoting Hutter, 215 B.R. at 315 (citing In re Inter Urban Broadcasting, 174 B.R. 441, 448 (E.D. La. 1994))). The court also considered the retention application under the

---

[5] In Stylianou, the court noted that in 245 Assocs., 188 B.R. at 750-51, the bankruptcy court had adopted the "excusable neglect" standard used by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, defined as "inadvertence, mistake, or carelessness." Stylianou, 2010 WL 3719303 at *5 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 388 (1993)).

[6] On appeal, the district court in Hutter applied the "extraordinary circumstances" test in affirming the bankruptcy court's decision to grant appointment of counsel nunc pro tunc. See In re Hutter, 40 Fed. Appx. 640, 641 (2d Cir. 2002). The Second Circuit affirmed the district court's ruling. Id.

"extraordinary circumstances" test and determined, that under either test, the nunc pro tunc retention there was warranted. Stylianou, 2010 WL 3719303 at *5, n.9.

35.   The case law and the Bankruptcy Code are unclear as to exactly who has the burden of providing a sufficient explanation for the failure of a law firm to obtain the Bankruptcy Court's approval of its retention. United States Trustee v. Gross, Shuman, Brizdle and Gilfillan, P.C. (In re Platinum Mgm't Corp.), 226 B.R. 762, 763 (W.D.N.Y. 1998). In Platinum Management, however, the district court found that the debtor's counsel, who had failed to obtain court approval of their appointment until more than two years after the bankruptcy filing, held the burden. Id. at 764 (citing 245 Assocs., 188 B.R. at 743 (court-appointed receiver and debtor's counsel had the burden of providing a sufficient explanation)); see also In re Delphi Corp., No. 06 Civ. 863 LTS RLE, 2006 WL 1470929, at *6 (S.D.N.Y. May 30, 2006) (upholding bankruptcy court's factual conclusions that the debtors had carried their burden of showing that their proposed auditor met the disinterestedness standard under Section 327(a) of the Bankruptcy Code); but see In re Coast Trading Co., Inc., 62 B.R. 664 (Bankr. D. Or. 1986) (professional bears the burden of providing sufficient explanation for failure to obtain approval of employment).

**B.    The Court Should Deny the Debtors' Request For Nunc Pro Tunc Relief Because the Debtors Have Failed to Meet Their Burden of Proof to Show that their Request Comports with Second Circuit Law.**

36.   By the Supplemental PSZJ Application, the Debtors seek authorization to retain PSZJ to perform the Expanded Services nunc pro tunc to September 18, 2009. Not only is this date nearly two years ago, but as noted above, see supra ¶¶ 23 and 24, the California Actions were commenced by LBBF and, as of the date hereof, LBHI is not

13

even a party to these actions. Thus, as set forth below, the Debtors have not, and cannot, meet their burden of proof to show that nunc pro tunc relief is appropriate in these circumstances.

> a. *The Court Would Not Have Approved the Debtors' Retention of PSZJ to Represent LBHI for the Expanded Services If the Application Had Been Filed Timely Because PSZJ Has Not Been Representing LBHI in the California Actions.*

37. In order for a Court to grant nunc pro tunc relief, the Second Circuit has held that the applicant must first show that the court would have authorized the employment had the application been filed timely. Keren P'ship, 189 F, 189 F.3d at 87-88. Here, LBBF, then Aurora, a non-debtor affiliate, has been the party plaintiff in the California Actions since 2003 and 2006, respectively. As of the date hereof, LBHI is not a party to these actions. In fact, a review of the California District Court's docket reveals that, as of the date hereof, the Debtors have not even filed an application to substitute LBHI for Aurora in the California Actions. Since its participation in the California Actions, and continuing through today, PSZJ always has represented either LBBF or Aurora.

38. Similarly, even if the Debtors had made the Supplemental PSZJ Application on or shortly following September 18, 2009, the Court would not have approved the application because, again, PSZJ was representing Aurora, a non-debtor affiliate, and not LBHI or any other debtor. Although it is clear that this Court has the equitable power to authorize the post facto employment of counsel if certain factors are met, see Keren, 225 B.R. at 306, this type of employment, at a minimum, presupposes that counsel was performing services on behalf of the applicant (here, LBHI) and not another party.

39. It also is noteworthy that the Debtors do not put forth any case law for their argument that nunc pro tunc relief is appropriate because ultimately any benefit that Aurora would receive in the California Actions will inure to LBHI, when, and if, LBHI is substituted for Aurora. As set forth above, see supra ¶¶ 31-33, this is not the relevant inquiry under the controlling Second Circuit law. Accordingly, the United States Trustee respectfully requests that the Court deny the Debtors' request for nunc pro tunc relief.

    *b.*    *The Debtors Have Not Met Their Burden of Proof to Show that Their Delay In Requesting Nunc Pro Tunc Relief Was Caused by "Extraordinary Circumstances."*

40. Nunc pro tunc retentions generally are disfavored in this Circuit. 245 Assocs., 188 B.R. at 750 (citing In re Corbi, 149 B.R. at 333)). Moreover, the burden of proof to show that a request for nunc pro tunc relief was caused by "extraordinary circumstances" is placed upon the Debtors. See Delphi, 2006 WL 1470929, at *6; Platinum Management, 226 B.R. at 764. It is apparent from reviewing the Supplemental PSZJ Application that the Debtors have failed carry their burden.

41. The California Actions have been pending before the California District Court for eight and five years, respectively. In addition, according to the Supplemental PSZJ Application, PSZJ has been representing Aurora since September 18, 2009, that is, nearly two years. The only reason that the Debtors offer in support of their request for nunc pro tunc relief is that they did not determine until April 2011, "after considerable diligence," that LBHI should be the plaintiff in the California Actions. The Supplemental PSZJ Application is devoid of any other facts to support that extraordinary circumstances caused the Debtors' near two-year delay in filing the Supplemental PSZJ Application.

15

42. In any event, there can be no doubt that the Debtors have not met their burden of proof to show that extraordinary circumstances caused their delay in filing the Supplemental PSZJ Application. Therefore, their request for <u>nunc pro tunc</u> relief should be denied.

    *c.*    *The Debtors Have Failed to Establish That Their Failure to File the Supplemental PSZJ Application Resulted From Excusable Neglect.*

43. Likewise, the Debtors have not met their burden of proof to show that their failure to file the Supplemental PSZJ Application resulted from excusable neglect. In fact, they do not even assert this.

44. Rather, the only effort that the Debtors appear to make to support the Court's grant of <u>nunc pro tunc</u> relief is their claim that they won't be prejudiced because they "have been informed" that PSZJ only has incurred approximately $40,000.00 for in fees for the Expanded Services. Supplemental PSZJ Application at ¶ 18. Although this is a small amount when considered in light of the overall fees incurred to date in these cases, the fact remains that there is no basis on the facts herein or the law of the Second Circuit pursuant to which the Court should grant the requested extraordinary relief. Even if LBHI ultimately is substituted for Aurora, there are no facts before this Court that LBHI will recover anything in the California Actions. Thus, as of today, the $40,000.00 prejudices the Debtors' creditors because it's coming from their potential distributions without an equal or greater benefit to the estates. Moreover, it is evident from the fee applications filed by PSZJ in these cases that PSZJ agrees that it cannot charge the Debtors for services that it performs for non-debtors. <u>See</u> Sixth Interim PSZJ Fee Application at 1-2 (PSZJ allocates 30 percent of the fees and expenses that it incurs to the Debtors and 70 percent of the fees and expenses it incurs to non-debtor affiliates). For

16

these reasons, the United States Trustee respectfully requests that the Debtor's request for nunc pro tunc relief be denied.

**C.  The Court Should Direct PSZJ To Account For and Disgorge Any Funds That It Has Received for Fees Incurred in Connection with the Expanded Services.**

45.     By the Supplemental PSZJ Application, the Debtors disclose that, notwithstanding the absence of an Order from this Court, LBHI paid to Pachulski approximately $8,750.00 for fees incurred in connection with the Expanded Services. Supplemental PSZJ App. at ¶ 18.  The Supreme Court has made absolutely clear that professionals may not be compensated by the estate without a court order approving their retention.  Lamie, 540 U.S. at 538; see also CCT, 2010 WL 3386947, at *5 (there is a per se prohibition against compensating professionals for services rendered prior to entry of a retention order).  Thus, any compensation paid to PSZJ in the absence of a court order, no matter how small, is not reasonable.

46.     Accordingly, pursuant to Section 329(b) of the Bankruptcy Code, the United States Trustee respectfully requests that this Court direct PSZJ to account for and to disgorge any funds that the Debtors have paid to PSZJ for fees and expenses incurred in connection with the Expanded Services.  11 U.S.C. § 329(b).

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) sustain the Objection, (ii) deny the nunc pro tunc relief requested, (iii) direct PSZJ to account for and disgorge any funds that the Debtors have paid to PSZJ for fees

and expenses incurred in connection with the Expanded Services and (iv) grant such

other relief as is just.

Dated: New York, New York  
       July 11, 2011                       Respectfully submitted,

                                              TRACY HOPE DAVIS  
                                              UNITED STATES TRUSTEE

                                              By  */s/ Andrea B. Schwartz*  
                                                    Andrea B. Schwartz, Trial Attorney  
                                                    33 Whitehall Street, 21st Floor  
                                                    New York, New York 10004  
                                                    Tel. No. (212) 510-0500  
                                                    Fax No. (212) 668-2255