**HEARING DATE AND TIME:  August 25, 2011 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE:  August 10, 2011 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (JMP)
                                         :
                    Debtors.             :    (Jointly Administered)
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' OBJECTION TO**
**PROOFS OF CLAIM FILED BY 2138747 ONTARIO LTD.**
**AND 6785778 CANADA INC. (CLAIM NOS. 33583 AND 33586 )**

**PLEASE TAKE NOTICE** that a hearing on the annexed objection (the

"Objection") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-

referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),

to proofs of claim numbered 33583 and 33586, filed by 2138747 Ontario Ltd. and 6785778

Canada Inc., respectively, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**August 25, 2011 at 10:00 am (Eastern Time)** (the "Hearing")**,** or as soon thereafter as counsel

may be heard.

**PLEASE TAKE FURTHER NOTICE** that any response to the Debtors'

Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and

the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

1

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153 (Attn: Robert J. Lemons, Esq. and Mark Bernstein, Esq.); (iii) the

Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York,

New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea B.

Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in

these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York,

New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.);

so as to be so filed and received by no later than **August 10, 2011 at 4:00 p.m. (Eastern Time)**

(the "Response Deadline").

PLEASE TAKE FURTHER NOTICE that if a response to the Objection is not

received by the Response Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

US_ACTIVE:\43756574\04\58399.0003

Dated: July 11, 2011
      New York, New York

/s/ Robert J. Lemons
Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

US_ACTIVE:\43756574\04\58399.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**DEBTORS' OBJECTION TO**
**PROOFS OF CLAIM FILED BY 2138747 ONTARIO LTD.**
**AND 6785778 CANADA INC. (CLAIM NOS. 33583 AND 33586 )**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this objection (the "Objection"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to proofs of claim numbered 33583 and 33586 (together, the "Claims"), filed by 2138747 Ontario Ltd. ("Ontario") and 6785778 Canada Inc. ("Canada," and together with Ontario, "Claimants"), respectively, against LBHI, and respectfully represent as follows:

## **Preliminary Statement**

1.      The Claims should be disallowed and expunged as Claimants have provided no factual or legal basis for asserting any claims against LBHI.  Claimants seek to recover an unknown amount of damages from LBHI based on Claimants' purported status as minority shareholders of SkyPower Corp. ("SkyPower"), a company in which LBHI held shares. Claimants' vague explanation of the nature and basis for the Claims is limited to the statement that they "arise out of or relate to (i) LBHI's failure to adequately fund, or to cause its direct or indirect subsidiaries to adequately fund, SkyPower; (ii) LBHI's breaches and defaults under an Equity Contribution Agreement dated February 22, 2008 . . . and any other wrongful acts relating to the agreement; (iii) LBHI's, or its direct or indirect subsidiaries, breaches and defaults under other agreements, and other wrongful acts, that were in any way associated with LBHI's investment in SkyPower; and (iv) related claims as a result of LBHI's bankruptcy filing."  (*See* Claims, attached hereto as Ex. A.)

2.      Claimants' only documentary "support" for the Claims is a copy of an Amended and Restated Equity Contribution Agreement dated February 22, 2008, among SkyPower, as borrower, LBHI, as sponsor, and HSH Nordbank AG, New York Branch, as collateral agent (the "Equity Contribution Agreement").  Importantly, Claimants are **not** a party to the Equity Contribution Agreement, and they fail to articulate the nature of the claims they purport to assert thereunder or any basis therefor.

3.      The paucity of information that Claimants provide falls far short of their burden under Bankruptcy Rule 3001(f).  And, the "support" they provide—which only relates to one of their four asserted bases of liability—establishes on its face that Claimants have no claim

against the Debtors.  Accordingly, the Claims must be disallowed and expunged in their

entirety.[1]

### Jurisdiction

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5. In June 2007, LBHI became an indirect shareholder in SkyPower, a

Canadian company engaged in business related to wind and solar energy projects.

6. On February 22, 2008, LBHI (as sponsor), SkyPower (as borrower), and

HSH Nordbank AG, New York Branch (as collateral agent), entered into the Equity Contribution

Agreement.  As of that date, LBHI owned approximately 74% of SkyPower's shares.

7. Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under the Bankruptcy Code.  The Debtors' chapter 11 cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

8. On September 17, 2008, the United States Trustee for Region 2 (the "U.S.

Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of

the Bankruptcy Code (the "Creditors' Committee").

---

[1] The Debtors reserve all their rights to object further on any basis to the Claims should the Court not grant the relief requested herein.

9.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner has filed his report pursuant to section 1106(b) of the Bankruptcy Code [Docket No. 7531].

10.     By order, dated July 2, 2009 [Docket No. 4271], this Court established September 22, 2009 as the deadline for each person or entity to file proofs of claim based on prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors.

11.     In or around August 2009, SkyPower filed an insolvency proceeding under the Companies' Creditors Arrangement Act (Canada).  On September 21, 2009, SkyPower filed its original proof of claim numbered 33428 against LBHI based on alleged breaches of the Equity Contribution Agreement.

12.     SkyPower subsequently changed its name to Interwind Corp. ("Interwind").  On March 30, 2010, PricewaterhouseCoopers Inc. ("PwC") was appointed as receiver for Interwind.  On May 6, 2010, PwC, in its capacity as receiver for Interwind, filed its amended proof of claim numbered 66602 against LBHI based on alleged breaches of the Equity Contribution Agreement.[2]

## The Claims Should Be Disallowed and Expunged

13.     The Claims should be disallowed and expunged because Claimants fall far short of satisfying their burden of proof, and the limited information they do provide establishes that they do not have a claim against LBHI.

---

[2] SkyPower's original claim numbered 33428 was disallowed and expunged pursuant to the Debtors' Eleventh Omnibus Objection to Claims (Amended and Superseded Claims) on the basis that it was amended and superseded by Interwind's claim 66602.

**A.  The Claims Lack *Prima Facie* Validity**

14.    As a threshold matter, the Claims fail because they lack *prima facie*

validity as they do no set forth any facts or legal basis in support of their asserted theories of

liability.  Claimants assert that LBHI has liability under four separate theories:  (i) the alleged

failure to adequately fund, or to cause a subsidiary to adequately fund, SkyPower; (ii) alleged

breaches and defaults under the Equity Contribution Agreement and other wrongful acts relating

to the agreement; (iii) alleged breaches and defaults under other agreements and other wrongful

acts associated with LBHI's investment in SkyPower; and (iv) related claims as a result of

LBHI's bankruptcy filing.  (*See* Claims (Ex. A).)  This is the entire statement of the nature and

bases for their Claims against LBHI.  The sole documentary support for the Claims is a copy of

the Equity Contribution Agreement, but Claimants provide no information regarding the

purported "breaches and defaults" thereunder.  These bald assertions of LBHI's liability are

wholly deficient under Bankruptcy 3001(f).

15.    Bankruptcy Rule 3001(f) provides that a proof of claim is *prima facie*

evidence of the validity and amount of such claim.  However, to be entitled to the weight

afforded by Bankruptcy Rule 3001(f), the proof of claim must comply with the Bankruptcy

Rules and set forth the facts necessary to support the claim.  *In re Chain*, 255 B.R. 278, 280

(Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988); *In re FIRSTPLUS*

*Fin., Inc.*, 248 B.R. 60 (Bankr. N.D. Tex. 2000); *In re North Bay Gen. Hosp., Inc.*, 404 B.R. 443

(Bankr. S.D. Tex. 2009).  If the claimant does not allege a sufficient legal basis for the claim, the

claim is not considered *prima facie* valid, and the burden remains with the claimant to establish

the validity of the claim.  *Chain*, 255 B.R. at 281; *Marino*, 90 B.R. at 28.  *Best Payphones, Inc. v.*

*Verizon N.Y., Inc. (In re Best Payphones, Inc.)*, 2006 U.S. Dist. LEXIS 10297 at *9 (S.D.N.Y.

Mar. 14, 2006) ("the ultimate burden of proving the claim by a preponderance of the evidence remains with the claimant").

16.     Further, Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

17.     Accordingly, the burden to establish the validity of the Claims rests solely with Claimants.  Having only offered four vague assertions of LBHI's liability instead of any facts or legal theory in support of the Claims, Claimants have not satisfied their burden of production or proof.  Thus, the Claims are not *prima facie* valid.

**B.  The Claim for Breach of the Equity Contribution Agreement Fails**

18.     The Equity Contribution Agreement is the only documentary support provided by Claimants.  That agreement relates to only one of Claimants' four asserted theories of liability; namely their allegation that LBHI, in some unspecified way, breached the Equity Contribution Agreement and/or committed other wrongful acts relating to that agreement. Importantly, Claimants are **not** a party to the Equity Contribution Agreement, and they fail to articulate the nature of the claims they are asserting thereunder or the basis therefor.  Indeed, Claimants cannot assert any rights or claims under the Equity Contribution Agreement because they are not a party to it.  *See, e.g., Hluch v. Ski Windham Operating Corp.*, --- N.Y.S.2d ----, 2011 WL 2410397, at *2 (N.Y. App. Div. June 14, 2011) ("As a general rule, only parties in privity of contract may enforce terms of the contract.") (internal quotations omitted).

19.    Specifically, under Section 10.01 of the Equity Contribution Agreement entitled "Enforcement," the Sponsor (LBHI) agreed that the "Secured Parties shall have the right to directly enforce the provisions hereof against each of the parties [to the Equity Contribution Agreement]." Unless otherwise defined in the Equity Contribution Agreement, all capitalized terms have the meaning ascribed to them in the Third Amended and Restated Credit Agreement dated as of February 22, 2008, among SkyPower, as Borrower; the Lenders named therein, as Lenders; HSH Nordbank AG, New York Branch, as Administrative Agent and Collateral Agent, as Issuing Bank, and as Sole Mandated Lead Arranger; Bayaerische Landesbank, New York Branch, as Co-Lead Arranger; and Union Bank of California, Canada Branch, as Co-Lead Arranger (the "Credit Agreement"). Pursuant to the Credit Agreement, "Secured Parties" is defined as, collectively, "the Agents, the Issuing Bank, the Lenders and subject to clause (g) of the definition of 'Permitted Liens,' the Hedge Bank." Claimants are not mentioned in the Enforcement clause of the Equity Contribution Agreement or in the definition of Secured Parties. Consequently, according to the express language of the Equity Contribution Agreement, the parties that can enforce the agreement are the Secured Lenders.

## Conclusion

20.    Having failed to provide even the most basic information regarding the nature and bases of their Claims, the Claimants have not carried their burden under Bankruptcy Rule 3001(f), and the Claims are not *prima facie* valid. Further, the claim for breach of the Equity Contribution Agreement fails on its face because Claimants are not a party to the agreement and they do not provide any factual or legal basis for such a claim. Accordingly, the Claims should be disallowed and expunged in their entirety with prejudice.

**Notice**

21.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Objection on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) 2138747 Ontario Ltd.; (vii) 6785778 Canada Inc.; and (viii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

22.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: July 11, 2011
        New York, New York

                            /s/ Robert J. Lemons
                            Robert J. Lemons

                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone: (212) 310-8000
                            Facsimile: (212) 310-8007

                            Attorneys for Debtors
                            and Debtors in Possession

# EXHIBIT A

# Proof of Claim 33583

**ORIGINAL**

| **United States Bankruptcy Court/Southern District of New York** | **PROOF OF CLAIM** |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Lehman Brothers Holdings Inc. | 08-13555(JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000033583

0000033583

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

2138747 Ontario LTD.
c/o Dickstein Shapiro LLP
1633 Broadway
New York, New York 10019
Attn: Shaya M. Berger

Telephone number: (212) 277-6746   Email Address: bergers@dicksteinshapiro.com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number: _____
    (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____   Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ unknown _____

If all or part of your claim is secured, complete item 4; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attachment.
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
      (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $ _____   Annual Interest Rate _____ %
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $ _____   Basis for perfection: _____
   Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FILED
2009 SEP 21  P 2: 23
U.S. BANKRUPTCY COURT
S.D.N.Y.

FOR COURT USE ONLY

| Date: 9/18/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   Kerry Agler, President |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re                                                : Chapter 11
                                                     :
LEHMAN BROTHERS HOLDINGS, INC.                       : Case No. 08-13555
                                                     :
                              Debtor.                :
                                                     :
------------------------------------------------------- x

### ATTACHMENT TO CLAIM OF 2138747 ONTARIO LTD.

     1.     2138747 Ontario LTD ("2138747") submits this attachment to its Proof of Claim against Lehman Brothers Holdings, Inc. ("LBHI"). 2138747 is a minority shareholder of SkyPower Corp. ("SkyPower"), a Canadian company. LBHI, through intermediate holding companies, is a majority shareholder of SkyPower. On August 12, 2009, SkyPower filed for protection under the Companies Creditors Arrangement Act ("CCAA") in Canada. 2138747's claim relates to damages, including incidental and consequential damages, incurred by 2138747 that arise out of or relate to (i) LBHI's failure to adequately fund, or cause its direct or indirect subsidiaries to adequately fund, SkyPower; (ii) LBHI's breaches and defaults under an Equity Contribution Agreement dated February 22, 2008 (a copy of the agreement is attached hereto), and any other wrongful acts relating to the agreement; (iii) LBHI's, or its direct or indirect subsidiaries, breaches and defaults under other agreements, and other wrongful acts, that were in any way associated with LBHI's investment in SkyPower; and (iv) related claims as a result of LBHI's bankruptcy filing.

     2.     The amount of 2138747's claim remains unliquidated as of the date of the filing of this Proof of Claim and 2138747 reserves its right to amend this Proof of Claim when such amounts become fixed.

3.      Without limiting anything herein, 2138747 reserves the right to: (i) amend and/or supplement this Proof of Claim, if necessary, from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this Proof of Claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) amend its request for payment of administrative expenses in accordance with Sections 503 and 507 of the Bankruptcy Code with respect to claims covered by this Proof of Claim or any other claims.  This Proof of Claim is filed without prejudice to the filing by 2138747 or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of the Debtors or any of its affiliates.

4.      Filing of this Proof of Claim is not and should not be construed to be: (i) a consent by 2138747 to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim (except to the extent necessary to the allowance of this Proof of Claim), any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against, or otherwise involving, 2138747; (ii) a waiver of the right of 2138747 to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases; (iii) a waiver of any procedural or substantive defenses or rights with respect to any claim that may be asserted against 2138747 by Debtor or any of its affiliates, any trustee for a Debtor's or any of its affiliates' estate, any other party-in-interest in this bankruptcy case, or any other person or entity whatsoever; (iv) a waiver of any past, present, or future defaults or events of default; (v) a waiver or release of any right of 2138747 or any of its affiliates against any non-debtor, or other entity or person liable for all or

2

part of any claim described herein; (vi) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case against or otherwise involving 2138747 or its affiliates; (vii) a waiver of any right of subordination in favor of 2138747of indebtedness or liens held by a creditor of Debtor or any of its affiliates; (viii) an election of remedies; (ix) a waiver of any right 2138747 may have pursuant to Sections 506(b), 1111(b), or 363(k) of the Bankruptcy Code; (x) a waiver or limitation on the right of 2138747 to vote on any plan or plans of reorganization or liquidation proposed in the above-captioned case; or (xi) a waiver of any additional claims or other rights 2138747 or any of its affiliates may have.

**EXHIBIT 1**

**[CONTRIBUTION AGREEMENT]**

Execution Copy

AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT

Dated as of February 22, 2008

Among

SKYPOWER CORP.,

as Borrower,

LEHMAN BROTHERS HOLDINGS INC.,

as Sponsor,

and

HSH NORDBANK AG, NEW YORK BRANCH,

as Collateral Agent.

LAI - 115204.09

# TABLE OF CONTENTS

                                                                                        Page

SECTION 1.01  Definitions ................................................................................ 1

SECTION 2.01  Equity Contributions ................................................................. 2

SECTION 3.01  Indemnification; Bankruptcy. ................................................... 2

SECTION 4.01    Method and Application of Payment; Event of Default; Overdue
                Interest. ..................................................................................... 3

SECTION 5.01  No Setoff................................................................................... 4

SECTION 6.01  Payments Absolute. .................................................................. 4

SECTION 7.01  Representations and Warranties................................................. 6

SECTION 8.01  Covenants and Agreements ...................................................... 6

SECTION 9.01  Execution in Counterparts ........................................................ 7

SECTION 10.01  Enforcement ........................................................................... 7

SECTION 11.01  Survival.................................................................................. 7

SECTION 12.01  Governing Law and Jurisdiction. ........................................... 7

SECTION 13.01  WAIVER OF JURY TRIAL.................................................. 9

SECTION 14.01  Notices ................................................................................... 9

SECTION 15.01  Amendments .......................................................................... 9

SECTION 16.01  Severability ............................................................................ 9

SECTION 17.01  Assignments.......................................................................... 10

SECTION 18.01  Headings ............................................................................... 10

i

## AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT

This AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT (this "Agreement"), is entered into as of February 22, 2008, by and among SKYPOWER CORP., a Canadian corporation (the "Borrower"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation (the "Sponsor"), and HSH NORDBANK AG, NEW YORK BRANCH, as collateral agent for the Secured Parties (in such capacity, and, together with any successor collateral agent appointed pursuant to Section 7.05 of the Credit Agreement (as defined below), the "Collateral Agent").

### PRELIMINARY STATEMENTS

WHEREAS, in connection with the Second Amended and Restated Credit Agreement dated December 28, 2007, among the Borrower, the Lenders named therein, HSH Nordbank AG, New York Branch, as the Administrative Agent and as the Collateral Agent, the parties entered into an Equity Contribution Agreement dated December 28, 2007 (the "Original ECA");

WHEREAS, the Borrower simultaneously herewith is entering into the Third Amended and Restated Credit Agreement, dated as of the date hereof, among the Borrower, the Lenders named therein, HSH Nordbank AG, New York Branch ("HSHN") as the Administrative Agent and as the Collateral Agent, HSHN as Issuing Bank, HSHN as the Sole Mandated Lead Arranger, Bayerische Landesbank, New York Branch as Co-Lead Arranger and Union Bank of California, Canada Branch as Co-Lead Arranger (as the same may be amended, modified or supplemented from time to time, the "Credit Agreement"), pursuant to which the Lenders will loan certain Advances to the Borrower;

WHEREAS, in connection with the entering into of the Third Amended and Restated Credit Agreement, the parties desire to amend and restate the Original ECA;

WHEREAS, as of the Third Amended and Restated Credit Agreement Effective Date, the Sponsor owns at least 66% of the shares of the Borrower, and the Sponsor shall derive substantial benefit from the extensions of credit to the Borrower by the Lenders, pursuant to the Credit Agreement; and

WHEREAS, it is a condition precedent to the availability of the Advances under the Credit Agreement that the parties hereto enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

LA1 - 115204.09

SECTION 1.01 (a) <u>Definitions</u>. Unless otherwise defined herein, all capitalized terms used herein, including such terms used in the preamble and recitals hereto, which are defined in the Credit Agreement shall have their respective meanings as therein defined, and the rules of construction therein shall apply to this Agreement. All references to sections, schedules and exhibits in or to this Agreement are to sections, schedules and exhibits in or to this Agreement, unless otherwise specified. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The following terms shall have the following meanings:

"<u>Equity Contribution Obligations</u>" shall have the meaning specified in Section 2.01.

"<u>Purchase Price</u>" shall mean $312,500,000 and is intended to represent the aggregate purchase price paid by the Borrower to Terrawinds in consideration for the Terrawinds Project assets.

(b)    <u>Entire Agreement</u>.   This Agreement supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties relating to the subject matter hereof and entered into prior to the date of this Agreement and amends, restates, consolidates and supersedes the Original ECA. This Agreement is and shall for all purposes be deemed to be an amendment and restatement to the Original ECA and does not constitute a discharge or novation of any debt, obligation, covenant or agreement contained in the Original ECA or in any other Basic Documents.

SECTION 2.01 <u>Equity Contributions</u>. The Sponsor agrees to make one or more cash equity contributions to the Borrower (the "<u>Equity Contribution Obligations</u>") as follows:

(a)    On the date of any requested Advance or requested issuance of a Letter of Credit, or following the occurrence and continuance of an Event of Default on the date any Turbine Purchase Costs are then due, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to the sum of (i) 20% of the Purchase Price (less any amounts previously paid toward Purchase Price other than with Advances), plus (ii) 20% of the Contract Price of the Vestas TSA (less any amounts previously paid toward the Contract Price of the Vestas TSA other than with Advances). <u>Schedule 2.01</u> attached hereto and incorporated herein sets forth all amounts paid toward the Purchase Price and the Contract Price of the Vestas TSA on or before the date hereof.

(b)    Within five Business Days following Borrower's receipt of any appraisal pursuant to Sections 3.01(a)(xvi) or 5.01(a) of the Credit Agreement determining that the appraised market value of a TSA (including all Wind Turbines purchased or to be purchased thereunder) is less than, in the case of the GE TSA, the Purchase Price or, in the case of the Vestas TSA, the Contract Price for such TSA, including any such determination following the occurrence and continuance of an Event of Default, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to 80% of the difference between, in the case of the GE TSA, the Purchase Price and the appraised market value of the GE TSA or, in the case of the Vestas TSA, the Contract Price and the appraised market value of the Vestas TSA.

2

(c)    At the times such amounts are due and payable, including following the occurrence and continuance of an Event of Default, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to the aggregate costs (including Turbine Purchase Costs) payable under each TSA not covered by (x) in the case of costs payable under the GE TSA, the sum of the initial aggregate Term Loan Commitment amount under the Credit Agreement (prior to the making of any Advances) plus any equity amount previously advanced toward such TSA costs under Section 2.01(a) above and (y) in the case of costs payable under the Vestas TSA, the sum of the initial Aggregate Letter of Credit Loan Commitment (less the Vestas Sales Tax Amount) plus any equity amount previously advanced toward such TSA costs under Section 2.01(a) above; provided that the aggregate amount paid by the Sponsor pursuant to this Section 2.01(c) shall not exceed $10,000,000.

(d)    On the date any amount described in clauses (i) through (iv) below is due and owing, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to (i) any costs of storage, shipping and transportation, to the extent such costs are contemplated by any TSA, of any of the Wind Turbines to a Project site designated by the Borrower or an Affiliate of the Borrower or, following an Event of Default and the exercise of remedies by the Secured Parties, to a Project designated by the Collateral Agent, (ii) the cost of any additional Services (as defined in the GE TSA) purchased by the Buyer pursuant to Article 4 of the GE TSA, or any services purchased by the Buyer pursuant to the Service and Maintenance Agreement, dated as of November 30, 2007, by and between the Borrower and Vestas, (iii) any sales taxes and duties payable by the Buyer (as defined in the TSAs) under either TSA (including Sales Taxes and GST (each as defined in the Vestas TSA)), and (iv) any interest accrued under the Credit Agreement on any Advance and any payments payable under any Secured Hedge Agreement, provided that the aggregate amount paid by the Sponsor pursuant to this Section 2.01(d)(iv) shall not exceed $34,000,000 less any interest previously paid under the Credit Agreement or payments payable under any Secured Hedge Agreement.

(e)    The aggregate amount paid by the Sponsor pursuant to Sections 2.01(a) and (b) or otherwise previously advanced toward Turbine Purchase Costs (other than with Advances) shall not exceed 48% of the sum of the Purchase Price plus the Contract Price of the Vestas TSA; and any amount required to be paid by Sponsor based on the amounts payable under the TSAs shall be based on the TSAs as in effect on the date hereof or as amended hereafter with the consent of the Sponsor and to the extent permitted under the Credit Agreement.

SECTION 3.01  Borrower Bankruptcy.  The Sponsor hereby irrevocably and unconditionally waives, to the extent it may do so under Applicable Law, any protection it may be entitled to under any Debtor Relief Laws or similar Applicable Laws of any state having jurisdiction, in the event of any Bankruptcy Event with respect to the Borrower.  In the event the trustee in bankruptcy or the debtor-in-possession takes any action (including, without limitation, the institution of any action, suit or other proceeding) following a Bankruptcy Event affecting the Borrower for the purpose of enforcing the obligations of the Sponsor under Section 2.01, the Sponsor agrees not to assert any defense, claim or counterclaim denying liability thereunder on the basis that this Agreement is either (i) a financial accommodation or similar instrument or (ii) an executory contract that cannot be assumed, assigned or enforced or on any other theory

3

LAI - 115204.09

directly or indirectly based on Applicable Law, including any Debtor Relief Laws. If a Bankruptcy Event affecting the Borrower shall occur, the Sponsor agrees, after the occurrence of such Bankruptcy Event, to reconfirm its pre-petition waiver of any protection it may be entitled to under Applicable Law, including any Debtor Relief Laws and, to give effect to such waiver, the Sponsor consents to the assumption and enforcement of each provision of this Agreement by the debtor-in-possession or the Borrower's trustee in bankruptcy, as the case may be.

SECTION 4.01  <u>Method and Application of Payment; Event of Default; Overdue Interest.</u>

(a)     <u>Payment Instructions.</u>  Subject to Section 4.01(b), all payments owing by, or on behalf of, the Sponsor under this Agreement shall be made by, or on behalf of, the Sponsor on the date due in cash in immediately available funds to the Borrower, which, (1) in the case of the payments described in Sections 2.01(a) and (c), shall apply such amounts to pay Turbine Purchase Costs then due or next becoming due and payable under the relevant TSA; (2) in the case of the payments described in Section 2.01(b), shall apply such amounts (i) to the extent the sum of (x) Advances made, (y) the aggregate Maximum Available Amount of the Letter of Credit then outstanding, and (z) following the occurrence and continuance of an Event of Default, any additional amounts paid or being paid by the Lenders or their designees in respect of Turbine Purchase Costs then due and payable are more than 80% of the appraised market value of the relevant TSA (including the Wind Turbines purchased thereunder), immediately to prepayment of the Advances pursuant to Section 2.09(b)(iii) of the Credit Agreement until such time as Advances made, the aggregate Maximum Available Amount of the Letter of Credit then outstanding and, following the occurrence and continuance of an Event of Default, any additional amounts paid or being paid by the Lenders or their designees in respect of Turbine Purchase Costs then due and payable shall equal 80% of the appraised market value of the relevant TSA and (ii) otherwise to pay Turbine Purchase Costs next becoming due and payable under the relevant TSA; and (3) in the case of any payments described in Section 2.01(d), shall apply such amounts to payment of the relevant costs or amounts as and when due and payable.

(b)     <u>Event of Default.</u>  The Sponsor consents to the assignment as collateral security to the Collateral Agent (for the benefit of the Secured Parties) of the Borrower's rights and interest under this Agreement and acknowledges the right, but not the obligation, of the Collateral Agent in the exercise of its rights and remedies under the Security Agreement to, upon notice to Sponsor that an Event of Default has occurred and is continuing under the Credit Agreement, make all demands, give all notices, take all actions and exercise all rights of the Borrower under this Agreement and agrees to accept any such exercise; provided, that upon and following any such exercise of rights and remedies by the Collateral Agent, the Sponsor agrees to make all payments owing by the Sponsor hereunder to or as directed by the Collateral Agent (for the benefit of the Secured Parties), which the Collateral Agent agrees to apply for the same uses as would be required of the Borrower in accordance with Section 4.01(a) if the Borrower had received such funds directly.

(c)     <u>Interest.</u>  If any Equity Contribution Obligations shall not be paid within three days of when such amounts are due and payable by the Sponsor under this Agreement, such Equity Contribution Obligations shall accrue interest until the Sponsor has paid such Equity Contribution Obligations in full at the Default Rate.

4

SECTION 5.01  No Setoff.  The obligations of the Sponsor hereunder shall be satisfied in all events at the times and in the amounts set forth herein, and the Sponsor shall not have the right to withhold or offset against any payment due hereunder for any reason including, without limitation, any dispute between the Borrower and the Sponsor over any matter whatsoever.

SECTION 6.01  Payments Absolute.

(d)    Subrogation.  Notwithstanding any payment or payments made by the Sponsor hereunder, the Sponsor shall not be entitled to be subrogated to any of the rights of the Secured Parties against the Borrower or any collateral security or guaranty held by the Secured Parties for the satisfaction of any Obligations under the Basic Documents, nor shall the Sponsor seek any reimbursement, indemnity, exoneration or contribution from the Borrower in respect of payments made by the Sponsor hereunder, unless and until all Obligations have been indefeasibly paid in full and the Commitments have been terminated or have expired.  If any amount shall be paid to the Sponsor on account of such subrogation rights at any time when all Obligations shall not have been indefeasibly paid in full or the Commitments shall not have been terminated or have expired, such amount shall be held by the Sponsor in trust for the Secured Parties, segregated from other funds of the Sponsor, and shall be turned over to the Collateral Agent for the benefit of the Secured Parties, in the exact form received by the Sponsor (duly endorsed by the Sponsor to the Collateral Agent for the benefit of the Secured Parties, if required).

(e)    Unconditional Obligations.  The Sponsor shall remain obligated hereunder notwithstanding that, without any reservation of rights by or against the Sponsor and without notice to or further assent by the Sponsor, any demand for payment of any amount due pursuant to the Credit Agreement or the other Basic Documents may be rescinded by the Secured Parties, and any of the Advances or other extensions of credit thereunder continued and such amounts, or the liability of any other Person upon or for any part thereof, or any collateral security or guaranty therefor or right of offset with respect thereto, may, from time to time, in whole or part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Secured Parties, and the Credit Agreement, the Notes and any other Basic Documents or any other document executed in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Secured Parties may deem advisable from time to time, and any collateral security or guaranty or right of offset at any time held by the Secured Parties for the payment of such amounts may be sold, exchanged, waived, surrendered or released; provided that no such amendment shall increase any obligations of the Sponsor hereunder without its consent; and provided, further, that nothing contained in this Section 6.01(b) shall constitute a waiver of the right of the Borrower itself to agree to any such amendment, modification, compromise or settlement.  None of the Secured Parties shall have any obligation to protect, secure, perfect or inquire as to any Lien at any time held by it as security for any amount due under the Credit Agreement or any other Basic Document or any property subject to any such Lien, and the failure of any of the Secured Parties to do any of the foregoing shall have no effect on the obligations of the Sponsor hereunder.  None of the Secured Parties shall have any liability for the performance or observance of any of the obligations or duties of the Borrower under the Credit Agreement or under any other Basic Document, and the

5

Borrower's failure to perform any such obligations or duties shall not impair the obligations of the Sponsor hereunder.

(f)     Transfer of Ownership.  The Sponsor's Equity Contribution Obligations under this Agreement shall not be diminished by any transfer by the Sponsor of any of its direct or indirect Equity Interests in the Borrower. In addition, the Change of Control limitations set forth in Section 5.02 of the Credit Agreement shall govern any such transfer of Equity Interests.

(g)     Waiver of Defenses.  The Sponsor hereby waives any and all notice of the creation, renewal or accrual of any amounts due under the Credit Agreement or any other Basic Document, and all such amounts shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Agreement, and all dealings between the Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Agreement. Except as expressly set forth herein, the Sponsor hereby waives diligence, presentment, protest, demand for payment and notice of default or non-payment to or upon the Borrower or itself with respect to any amounts due under the Credit Agreement or any other Basic Document. This Agreement shall be construed as an absolute, irrevocable and unconditional obligation to make the payments described herein without regard to (i) the validity or enforceability of the Credit Agreement, the Notes or any other Basic Documents, or any collateral security or guaranty for any of the foregoing or any right of offset with respect thereto at any time or from time to time held by the Secured Parties, (ii) any defense, set-off or counterclaim (other than a defense of payment or performance in respect of this Agreement) that may at any time be available to or be asserted by or against the Borrower or any other Person, or (iii) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or the Sponsor (other than a defense of payment or performance in respect of this Agreement)) that constitutes or might be construed to constitute an equitable or legal discharge of the Borrower or the Sponsor for the payments described in any of the Basic Documents, in bankruptcy or in any other instance. When pursuing its rights and remedies hereunder against the Sponsor, each of the Secured Parties may, but shall be under no obligation to, pursue such rights and remedies as it may have against any collateral security or right of offset with respect to any amounts due under the Credit Agreement or any other Basic Document, and any failure by the Secured Parties to pursue such other rights or remedies or to collect any payments from the Borrower or any such other Person or to realize upon any collateral security or to exercise any right of offset, or to release the Borrower or any such other Person or any collateral security or right of offset, shall not relieve the Sponsor of any liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Secured Parties against the Sponsor.

(h)     Continuing Obligations.  The obligations set forth herein shall continue to be effective or reinstated, as the case may be, if at any time and for any reason, any payment made hereunder by the Sponsor is rescinded or must otherwise be returned by the Borrower or the Secured Parties, all as though such payment had not been made.

SECTION 7.01 Representations and Warranties.  The Sponsor hereby represents, warrants and certifies to the Collateral Agent, for the benefit of the Secured Parties, that each of the representations and warranties in Section 4.01 of the Credit Agreement to the extent relating to the Sponsor is true and correct and each such representation and warranty is incorporated

6

herein *mutatis mutandis*, to the same extent as if set forth herein.

SECTION 8.01  Covenants and Agreements.  So long as any Advance or other Obligation under the Basic Documents shall remain unpaid, any Lender shall have any Commitment or any Letter of Credit outstanding, the Sponsor hereby covenants and agrees that it shall faithfully observe and fulfill, and shall cause to be observed and fulfilled, each and all of the following covenants applicable to it:

(i)    Maintenance of Existence, Privileges, Etc.  The Sponsor shall preserve and maintain in full force and effect its legal existence and all of its rights, privileges and franchises necessary for the performance of its obligations under this Agreement.

(j)    No Violation of Basic Documents.  The Sponsor shall not take or cause the Borrower to take any action that would cause a violation of any of the provisions of any Basic Document.

(k)    Taxes.  Any and all payments, fundings and cash contributions made by or on behalf of the Sponsor hereunder shall be made free and clear of, and without deduction for, any and all taxes.  If the Sponsor shall be required by Applicable Law to deduct any taxes from or in respect of any sum payable hereunder to the Borrower or any Secured Party (i) the sum payable shall be increased by the amount necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 8.01(d)) the Borrower or such Secured Party shall receive an amount equal to the sum it would have received had no such deductions been made, (ii) the Sponsor shall make such deductions, and (iii) the Sponsor shall pay the full amount deducted to the relevant taxing authority or other Governmental Authority in accordance with Applicable Law.  The Sponsor will indemnify the Borrower and each Secured Party for the full amount of taxes (including any taxes imposed by any jurisdiction on amounts payable under this Section 8.01(d)) paid by the Borrower or such Secured Party, and any liability (including penalties, interest, additions to tax, and other charges) arising therefrom or with respect thereto, whether or not such taxes were correctly or legally asserted.  Such indemnification shall be made within thirty (30) days after the date the Borrower or any Secured Party makes written demand therefor setting forth the amount of such indemnification and the basis for calculation thereof in reasonable detail, which certificate shall be delivered to the Sponsor and shall be conclusive absent manifest error.

(l)    Further Assurances.  From time to time upon the request of the Collateral Agent, the Sponsor shall promptly execute and deliver all further instruments and documents, and take all further action, that may be reasonably necessary, in order to enable the Collateral Agent to exercise and enforce its rights and remedies hereunder.

SECTION 9.01  Execution in Counterparts.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier, facsimile or portable document format ("pdf") shall be effective as delivery of a manually executed counterpart of this Agreement.

7

SECTION 10.01 Enforcement. The Sponsor hereby agrees (a) that the Secured Parties shall have the right to directly enforce the provisions hereof against each of the parties hereto and (b) to pay all costs, including, without limitation, reasonable attorney's fees and expenses that are occasioned by or result from any failure by the Sponsor to perform on a timely basis any of the terms, agreements or covenants to be performed by it hereunder or from the breach by the Sponsor of any representation or warranty made by it herein.

SECTION 11.01 Survival; Term. The terms of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. The provisions of Section 6.01 and all other covenants, agreements, representations and warranties made by the Sponsor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Basic Document shall be considered to have been relied upon by the Secured Parties and shall survive the performance of the obligations contained herein, the making by the Lenders of the Advances, and the execution and delivery to the Lenders of the Notes evidencing such Advances, regardless of any investigation made by any Secured Party or on its behalf, and shall continue in full force and effect until the earlier of (a) the date on which the Equity Contribution Obligations have been indefeasibly paid or satisfied in full and (b) the date of payment in full of the Obligations, the cancellation of the Commitments and the cancellation or termination of any outstanding Letter of Credit, under the Credit Agreement

SECTION 12.01 Governing Law and Jurisdiction.

(m)    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE.

(n)    Jurisdiction, Etc.

(i)    Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the State, City and County of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York State court or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction.

(ii)    Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or

8

relating to this Agreement in any New York State or federal court sitting in the State, City and County of New York. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(iii)    The Sponsor agrees that it will at all times continuously maintain a place of business in the State of New York to receive service of process with respect to any action, suit or proceeding in any courts sitting in the State, City and County of New York on its behalf with respect to each Basic Document to which it is a party. In the event that for any reason the Sponsor shall no longer have a place of business in the State of New York, the Borrower will promptly but in no event later than five days after obtaining knowledge thereof, irrevocably designate and appoint a substitute agent acceptable to the Collateral Agent and advise the Collateral Agent thereof.

(o)    Other Jurisdictions. Nothing contained in this Section 12.01 shall affect the right to effect service of process in any manner provided for under Applicable Law or preclude any of the Secured Parties from bringing any suit, action or proceeding arising out of or relating to the Basic Documents in the courts of any place where the Sponsor or the Borrower or any of its property or assets may be found or located. To the extent permitted by the Applicable Law of any such jurisdiction, each of the Sponsor and the Borrower hereby irrevocably submits to the jurisdiction of any such court and expressly waives, in respect of any such suit, action or proceeding, the jurisdiction of any other court or courts which now or hereafter, by reason of its present or future domicile, or otherwise, may be available to it.

SECTION 13.01 WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER BASIC DOCUMENT OR THE ACTIONS OF THE SECURED PARTIES IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

SECTION 14.01 Notices. All notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be given in accordance with Section 8.02 of the Credit Agreement. All notices, demands, requests and other communications required or permitted hereunder to the Sponsor shall be in writing and given at the following address:

If to the Sponsor:

Lehman Brothers, Inc.
745 Seventh Avenue; New York, NY 10019-6801
Facsimile No.:
Attn:

SECTION 15.01 Amendments.

9

(a) No failure or delay of the Collateral Agent, or any other Secured Party in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of Secured Parties hereunder and under the other Basic Documents are cumulative and not exclusive of any rights or remedies which they would otherwise have. No waiver of any provision of this Agreement or any other Basic Document or consent to any departure by the Borrower or the Sponsor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on the Borrower or the Sponsor in any case shall entitle the Borrower or the Sponsor to any other or further notice or demand in similar or other circumstances.

(b) No modification or waiver of any of the provisions of this Agreement shall be binding on the parties hereto, except as expressly set forth in a writing duly signed and delivered by each such party. This Agreement shall be amended with the written consent of the Sponsor and the Collateral Agent (with the consent of the Required Lenders) in accordance with Section 8.01 of the Credit Agreement.

SECTION 16.01 Severability. In the event any one or more of the provisions contained in this Agreement or in any other Basic Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby. Where provisions of any Applicable Law resulting in such prohibition or unenforceability may be waived, they are hereby waived by each of the parties hereto to the full extent permitted by Applicable Law so that this Agreement shall be deemed a valid, legal and binding agreement, enforceable in accordance with its terms. The parties hereto shall endeavor in good-faith negotiations to replace any invalid, illegal or unenforceable provisions with valid provisions, the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 17.01 Assignments. The Sponsor shall have no right, power or authority to delegate all or any of its obligations hereunder; provided that Sponsor may assign its obligations hereunder to an Affiliate, so long as such Affiliate has ratings of its long-term Debt with Standard & Poor's and Moody's at least equivalent to the Sponsor's current rating or, if not rated, has a tangible net worth of at least $10,000,000,000. The Sponsor hereby expressly agrees that the Collateral Agent may assign all or any of its rights hereunder without the Sponsor's approval to any Person to which the Collateral Agent has assigned its rights under the other Basic Documents or under any TSA. The Collateral Agent or any such assignee shall notify the Sponsor in writing of each such assignment made pursuant to this Section 17.01. In the event of any such assignment, references herein to the "Collateral Agent" shall be deemed to include references to the relevant assignee.

SECTION 18.01 Headings. The table of contents and headings set forth herein and in the other Basic Documents are included for convenience of reference only and shall not affect the interpretation of this Agreement or any other Basic Document.

10

LA1 - 115204.09

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized representatives as of the date hereof.

SKYPOWER CORP.

By:

Name:

Title:

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name:
Title: BARRETT S. DiPAOLO
VICE PRESIDENT

HSH NORDBANK AG, NEW YORK BRANCH

By: _____
    Name:
    Title:

By: _____
    Name: HEESOO YOON
    Title: AVP

## SCHEDULE 2.1

**See Attached**



**Sources and Uses**
(Expressed at A1 CLOSING)

INCREMENTAL SIZE OF FACILITY:    $   30,000,000.00
AMOUNT OF LC ISSUED AT CLOSING:   $   32,354,351.69

**Drawdown**
Lenders Fees and Closing Costs

Lenders Fees and Closing Costs        $   744,976.84
LC Fronting Fee                       $    48,531.53

For Drawdown Notice                   $   793,508.37

**Sources**

| | |
|---|---|
| TSL Drawdown – Dec 28/07 | $ 233,249,028.63 |
| TSL Drawdown – Feb 15/08 | $     793,508.37 |
| TSL Drawdown – LC Feb 15/08 | $  32,354,351.69 |
| Equity Contribution – Dec 28/07 | $  60,000,000.00 |
| Equity Contribution – Versa | $   9,460,336.75 |
| | $ 335,857,215.43 |

**Uses**

| | |
|---|---|
| Repay Terrewindg TSL – Dec 28/07 | $ 212,393,376.73 |
| Deal Costs and Professional Fees – Dec 28/07 | $   4,660,012.54 |
| Cash Proceeds to Terrewindg – Dec 28/07 | $  77,240,640.00 |
| Cash Proceeds to Versa (35% Deposit) | $   9,460,336.75 |
| Deal Costs and Professional Fees – Feb 15/08 | $     793,508.37 |
| Issue LC to Versa – Feb 15/08 | $  32,354,351.69 |
| | $ 336,457,215.43 |

# Proof of Claim 33586

**ORIGINAL**

| United States Bankruptcy Court/Southern District of New York | PROOF OF CLAIM |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000033586

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555(JMP) |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

6785778 Canada Inc.
c/o Dickstein Shapiro LLP
1633 Broadway
New York, New York 10019
Attn: Shaya M. Berger

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
 (If known)

Filed on: _____

Telephone number: (212) 277-6746    Email Address: bergers@dicksteinshapiro.com

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____    Email Address: _____

**1.   Amount of Claim as of Date Case Filed:** $ unknown

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** See attachment.
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
3a.  Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.   Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
Amount of Secured Claim: $_____    Amount Unsecured: $_____

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

2009 SEP 22 P 2: 23
U.S. BANKRUPTCY COURT
S.D.N.Y.
FILED

| Date: 9/18/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. ___ Kerry Adler, President |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x

In re                                          :   Chapter 11
                                               :
LEHMAN BROTHERS HOLDINGS, INC.                 :   Case No. 08-13555
                                               :
                 Debtor.                       :
                                               :
------------------------------------------------ x

## ATTACHMENT TO CLAIM OF 6785778 CANADA INC.

     1.     6785778 Canada Inc. ("6785778") submits this attachment to its Proof of Claim against Lehman Brothers Holdings, Inc. ("LBHI"). 6785778 is a minority shareholder of SkyPower Corp. ("SkyPower"), a Canadian company. LBHI, through intermediate holding companies, is a majority shareholder of SkyPower. On August 12, 2009, SkyPower filed for protection under the Companies Creditors Arrangement Act ("CCAA") in Canada. 6785778's claim relates to damages, including incidental and consequential damages, incurred by 6785778 that arise out of or relate to (i) LBHI's failure to adequately fund, or cause its direct or indirect subsidiaries to adequately fund, SkyPower; (ii) LBHI's breaches and defaults under an Equity Contribution Agreement dated February 22, 2008 (a copy of the agreement is attached hereto), and any other wrongful acts relating to the agreement; (iii) LBHI's, or its direct or indirect subsidiaries, breaches and defaults under other agreements, and other wrongful acts, that were in any way associated with LBHI's investment in SkyPower; and (iv) related claims as a result of LBHI's bankruptcy filing.

     2.     The amount of 6785778's claim remains unliquidated as of the date of the filing of this Proof of Claim and 6785778 reserves its right to amend this Proof of Claim when such amounts become fixed.

3. Without limiting anything herein, 6785778 reserves the right to: (i) amend and/or supplement this Proof of Claim, if necessary, from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this Proof of Claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) amend its request for payment of administrative expenses in accordance with Sections 503 and 507 of the Bankruptcy Code with respect to claims covered by this Proof of Claim or any other claims. This Proof of Claim is filed without prejudice to the filing by 6785778 or any of its affiliates of additional proofs of claim with respect to any other liability or indebtedness of the Debtors or any of its affiliates.

4. Filing of this Proof of Claim is not and should not be construed to be: (i) a consent by 675778 to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this Proof of Claim (except to the extent necessary to the allowance of this Proof of Claim), any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against, or otherwise involving, 675778; (ii) a waiver of the right of 675778 to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases; (iii) a waiver of any procedural or substantive defenses or rights with respect to any claim that may be asserted against 675778 by Debtor or any of its affiliates, any trustee for a Debtor's or any of its affiliates' estate, any other party-in-interest in this bankruptcy case, or any other person or entity whatsoever; (iv) a waiver of any past, present, or future defaults or events of default; (v) a waiver or release of any right of 675778 or any of its affiliates against any non-debtor, or other entity or person liable for all or part of any claim

2

described herein; (vi) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case against or otherwise involving 675778 or its affiliates; (vii) a waiver of any right of subordination in favor of 675778 of indebtedness or liens held by a creditor of Debtor or any of its affiliates; (viii) an election of remedies; (ix) a waiver of any right 675778 may have pursuant to Sections 506(b), 1111(b), or 363(k) of the Bankruptcy Code; (x) a waiver or limitation on the right of 675778 to vote on any plan or plans of reorganization or liquidation proposed in the above-captioned case; or (xi) a waiver of any additional claims or other rights 675778 or any of its affiliates may have.

3

**EXHIBIT 1**

**[CONTRIBUTION AGREEMENT]**

**EXHIBIT 1**

**[CONTRIBUTION AGREEMENT]**

Execution Copy

---

## AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT

Dated as of February 22, 2008

Among

**SKYPOWER CORP.,**

as <u>Borrower</u>,

**LEHMAN BROTHERS HOLDINGS INC.,**

as <u>Sponsor</u>,

and

**HSH NORDBANK AG, NEW YORK BRANCH,**

as <u>Collateral Agent</u>.

---

LA1 - 115204.09

# TABLE OF CONTENTS

Page

SECTION 1.01  Definitions ................................................................................ 1
SECTION 2.01  Equity Contributions ................................................................ 2
SECTION 3.01  Indemnification; Bankruptcy. .................................................. 2
SECTION 4.01  Method and Application of Payment; Event of Default; Overdue
Interest. ........................................................................................................... 3
SECTION 5.01  No Setoff .................................................................................. 4
SECTION 6.01  Payments Absolute. ................................................................ 4
SECTION 7.01  Representations and Warranties .............................................. 6
SECTION 8.01  Covenants and Agreements ..................................................... 6
SECTION 9.01  Execution in Counterparts ....................................................... 7
SECTION 10.01  Enforcement ........................................................................... 7
SECTION 11.01  Survival .................................................................................. 7
SECTION 12.01  Governing Law and Jurisdiction. ........................................... 7
SECTION 13.01  WAIVER OF JURY TRIAL ...................................................... 9
SECTION 14.01  Notices .................................................................................. 9
SECTION 15.01  Amendments .......................................................................... 9
SECTION 16.01  Severability ............................................................................ 9
SECTION 17.01  Assignments ........................................................................ 10
SECTION 18.01  Headings .............................................................................. 10

i

## AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT

This AMENDED AND RESTATED EQUITY CONTRIBUTION AGREEMENT (this "Agreement"), is entered into as of February 22, 2008, by and among SKYPOWER CORP., a Canadian corporation (the "Borrower"), LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation (the "Sponsor"), and HSH NORDBANK AG, NEW YORK BRANCH, as collateral agent for the Secured Parties (in such capacity, and, together with any successor collateral agent appointed pursuant to Section 7.05 of the Credit Agreement (as defined below), the "Collateral Agent").

### PRELIMINARY STATEMENTS

WHEREAS, in connection with the Second Amended and Restated Credit Agreement dated December 28, 2007, among the Borrower, the Lenders named therein, HSH Nordbank AG, New York Branch, as the Administrative Agent and as the Collateral Agent, the parties entered into an Equity Contribution Agreement dated December 28, 2007 (the "Original ECA");

WHEREAS, the Borrower simultaneously herewith is entering into the Third Amended and Restated Credit Agreement, dated as of the date hereof, among the Borrower, the Lenders named therein, HSH Nordbank AG, New York Branch ("HSHN") as the Administrative Agent and as the Collateral Agent, HSHN as Issuing Bank, HSHN as the Sole Mandated Lead Arranger, Bayerische Landesbank, New York Branch as Co-Lead Arranger and Union Bank of California, Canada Branch as Co-Lead Arranger (as the same may be amended, modified or supplemented from time to time, the "Credit Agreement"), pursuant to which the Lenders will loan certain Advances to the Borrower;

WHEREAS, in connection with the entering into of the Third Amended and Restated Credit Agreement, the parties desire to amend and restate the Original ECA;

WHEREAS, as of the Third Amended and Restated Credit Agreement Effective Date, the Sponsor owns at least 66% of the shares of the Borrower, and the Sponsor shall derive substantial benefit from the extensions of credit to the Borrower by the Lenders, pursuant to the Credit Agreement; and

WHEREAS, it is a condition precedent to the availability of the Advances under the Credit Agreement that the parties hereto enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

LAI - 115204.09

SECTION 1.01 (a) <u>Definitions</u>. Unless otherwise defined herein, all capitalized terms used herein, including such terms used in the preamble and recitals hereto, which are defined in the Credit Agreement shall have their respective meanings as therein defined, and the rules of construction therein shall apply to this Agreement. All references to sections, schedules and exhibits in or to this Agreement are to sections, schedules and exhibits in or to this Agreement, unless otherwise specified. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The following terms shall have the following meanings:

"<u>Equity Contribution Obligations</u>" shall have the meaning specified in Section 2.01.

"<u>Purchase Price</u>" shall mean $312,500,000 and is intended to represent the aggregate purchase price paid by the Borrower to Terrawinds in consideration for the Terrawinds Project assets.

(b)    <u>Entire Agreement</u>. This Agreement supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties relating to the subject matter hereof and entered into prior to the date of this Agreement and amends, restates, consolidates and supersedes the Original ECA. This Agreement is and shall for all purposes be deemed to be an amendment and restatement to the Original ECA and does not constitute a discharge or novation of any debt, obligation, covenant or agreement contained in the Original ECA or in any other Basic Documents.

SECTION 2.01 <u>Equity Contributions</u>. The Sponsor agrees to make one or more cash equity contributions to the Borrower (the "<u>Equity Contribution Obligations</u>") as follows:

(a)    On the date of any requested Advance or requested issuance of a Letter of Credit, or following the occurrence and continuance of an Event of Default on the date any Turbine Purchase Costs are then due, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to the sum of (i) 20% of the Purchase Price (less any amounts previously paid toward Purchase Price other than with Advances), plus (ii) 20% of the Contract Price of the Vestas TSA (less any amounts previously paid toward the Contract Price of the Vestas TSA other than with Advances). <u>Schedule 2.01</u> attached hereto and incorporated herein sets forth all amounts paid toward the Purchase Price and the Contract Price of the Vestas TSA on or before the date hereof.

(b)    Within five Business Days following Borrower's receipt of any appraisal pursuant to Sections 3.01(a)(xvi) or 5.01(a) of the Credit Agreement determining that the appraised market value of a TSA (including all Wind Turbines purchased or to be purchased thereunder) is less than, in the case of the GE TSA, the Purchase Price or, in the case of the Vestas TSA, the Contract Price for such TSA, including any such determination following the occurrence and continuance of an Event of Default, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to 80% of the difference between, in the case of the GE TSA, the Purchase Price and the appraised market value of the GE TSA or, in the case of the Vestas TSA, the Contract Price and the appraised market value of the Vestas TSA.

2

(c)    At the times such amounts are due and payable, including following the occurrence and continuance of an Event of Default, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to the aggregate costs (including Turbine Purchase Costs) payable under each TSA not covered by (x) in the case of costs payable under the GE TSA, the sum of the initial aggregate Term Loan Commitment amount under the Credit Agreement (prior to the making of any Advances) plus any equity amount previously advanced toward such TSA costs under Section 2.01(a) above and (y) in the case of costs payable under the Vestas TSA, the sum of the initial Aggregate Letter of Credit Loan Commitment (less the Vestas Sales Tax Amount) plus any equity amount previously advanced toward such TSA costs under Section 2.01(a) above; provided that the aggregate amount paid by the Sponsor pursuant to this Section 2.01(c) shall not exceed $10,000,000.

(d)    On the date any amount described in clauses (i) through (iv) below is due and owing, the Sponsor shall make a cash equity contribution to the Borrower in an amount equal to (i) any costs of storage, shipping and transportation, to the extent such costs are contemplated by any TSA, of any of the Wind Turbines to a Project site designated by the Borrower or an Affiliate of the Borrower or, following an Event of Default and the exercise of remedies by the Secured Parties, to a Project designated by the Collateral Agent, (ii) the cost of any additional Services (as defined in the GE TSA) purchased by the Buyer pursuant to Article 4 of the GE TSA, or any services purchased by the Buyer pursuant to the Service and Maintenance Agreement, dated as of November 30, 2007, by and between the Borrower and Vestas, (iii) any sales taxes and duties payable by the Buyer (as defined in the TSAs) under either TSA (including Sales Taxes and GST (each as defined in the Vestas TSA)), and (iv) any interest accrued under the Credit Agreement on any Advance and any payments payable under any Secured Hedge Agreement, provided that the aggregate amount paid by the Sponsor pursuant to this Section 2.01(d)(iv) shall not exceed $34,000,000 less any interest previously paid under the Credit Agreement or payments payable under any Secured Hedge Agreement.

(e)    The aggregate amount paid by the Sponsor pursuant to Sections 2.01(a) and (b) or otherwise previously advanced toward Turbine Purchase Costs (other than with Advances) shall not exceed 48% of the sum of the Purchase Price plus the Contract Price of the Vestas TSA; and any amount required to be paid by Sponsor based on the amounts payable under the TSAs shall be based on the TSAs as in effect on the date hereof or as amended hereafter with the consent of the Sponsor and to the extent permitted under the Credit Agreement.

SECTION 3.01  Borrower Bankruptcy. The Sponsor hereby irrevocably and unconditionally waives, to the extent it may do so under Applicable Law, any protection it may be entitled to under any Debtor Relief Laws or similar Applicable Laws of any state having jurisdiction, in the event of any Bankruptcy Event with respect to the Borrower. In the event the trustee in bankruptcy or the debtor-in-possession takes any action (including, without limitation, the institution of any action, suit or other proceeding) following a Bankruptcy Event affecting the Borrower for the purpose of enforcing the obligations of the Sponsor under Section 2.01, the Sponsor agrees not to assert any defense, claim or counterclaim denying liability thereunder on the basis that this Agreement is either (i) a financial accommodation or similar instrument or (ii) an executory contract that cannot be assumed, assigned or enforced or on any other theory

3

LA1 - 115204.09

directly or indirectly based on Applicable Law, including any Debtor Relief Laws. If a Bankruptcy Event affecting the Borrower shall occur, the Sponsor agrees, after the occurrence of such Bankruptcy Event, to reconfirm its pre-petition waiver of any protection it may be entitled to under Applicable Law, including any Debtor Relief Laws and, to give effect to such waiver, the Sponsor consents to the assumption and enforcement of each provision of this Agreement by the debtor-in-possession or the Borrower's trustee in bankruptcy, as the case may be.

SECTION 4.01  Method and Application of Payment; Event of Default; Overdue Interest.

(a)    Payment Instructions.  Subject to Section 4.01(b), all payments owing by, or on behalf of, the Sponsor under this Agreement shall be made by, or on behalf of, the Sponsor on the date due in cash in immediately available funds to the Borrower, which, (1) in the case of the payments described in Sections 2.01(a) and (c), shall apply such amounts to pay Turbine Purchase Costs then due or next becoming due and payable under the relevant TSA; (2) in the case of the payments described in Section 2.01(b), shall apply such amounts (i) to the extent the sum of (x) Advances made, (y) the aggregate Maximum Available Amount of the Letter of Credit then outstanding, and (z) following the occurrence and continuance of an Event of Default, any additional amounts paid or being paid by the Lenders or their designees in respect of Turbine Purchase Costs then due and payable are more than 80% of the appraised market value of the relevant TSA (including the Wind Turbines purchased thereunder), immediately to prepayment of the Advances pursuant to Section 2.09(b)(iii) of the Credit Agreement until such time as Advances made, the aggregate Maximum Available Amount of the Letter of Credit then outstanding and, following the occurrence and continuance of an Event of Default, any additional amounts paid or being paid by the Lenders or their designees in respect of Turbine Purchase Costs then due and payable shall equal 80% of the appraised market value of the relevant TSA and (ii) otherwise to pay Turbine Purchase Costs next becoming due and payable under the relevant TSA; and (3) in the case of any payments described in Section 2.01(d), shall apply such amounts to payment of the relevant costs or amounts as and when due and payable.

(b)    Event of Default.  The Sponsor consents to the assignment as collateral security to the Collateral Agent (for the benefit of the Secured Parties) of the Borrower's rights and interest under this Agreement and acknowledges the right, but not the obligation, of the Collateral Agent in the exercise of its rights and remedies under the Security Agreement to, upon notice to Sponsor that an Event of Default has occurred and is continuing under the Credit Agreement, make all demands, give all notices, take all actions and exercise all rights of the Borrower under this Agreement and agrees to accept any such exercise; provided, that upon and following any such exercise of rights and remedies by the Collateral Agent, the Sponsor agrees to make all payments owing by the Sponsor hereunder to or as directed by the Collateral Agent (for the benefit of the Secured Parties), which the Collateral Agent agrees to apply for the same uses as would be required of the Borrower in accordance with Section 4.01(a) if the Borrower had received such funds directly.

(c)    Interest.  If any Equity Contribution Obligations shall not be paid within three days of when such amounts are due and payable by the Sponsor under this Agreement, such Equity Contribution Obligations shall accrue interest until the Sponsor has paid such Equity Contribution Obligations in full at the Default Rate.

4

SECTION 5.01  No Setoff.  The obligations of the Sponsor hereunder shall be satisfied in all events at the times and in the amounts set forth herein, and the Sponsor shall not have the right to withhold or offset against any payment due hereunder for any reason including, without limitation, any dispute between the Borrower and the Sponsor over any matter whatsoever.

SECTION 6.01  Payments Absolute.

(d)     Subrogation.  Notwithstanding any payment or payments made by the Sponsor hereunder, the Sponsor shall not be entitled to be subrogated to any of the rights of the Secured Parties against the Borrower or any collateral security or guaranty held by the Secured Parties for the satisfaction of any Obligations under the Basic Documents, nor shall the Sponsor seek any reimbursement, indemnity, exoneration or contribution from the Borrower in respect of payments made by the Sponsor hereunder, unless and until all Obligations have been indefeasibly paid in full and the Commitments have been terminated or have expired.  If any amount shall be paid to the Sponsor on account of such subrogation rights at any time when all Obligations shall not have been indefeasibly paid in full or the Commitments shall not have been terminated or have expired, such amount shall be held by the Sponsor in trust for the Secured Parties, segregated from other funds of the Sponsor, and shall be turned over to the Collateral Agent for the benefit of the Secured Parties, in the exact form received by the Sponsor (duly endorsed by the Sponsor to the Collateral Agent for the benefit of the Secured Parties, if required).

(e)     Unconditional Obligations.  The Sponsor shall remain obligated hereunder notwithstanding that, without any reservation of rights by or against the Sponsor and without notice to or further assent by the Sponsor, any demand for payment of any amount due pursuant to the Credit Agreement or the other Basic Documents may be rescinded by the Secured Parties, and any of the Advances or other extensions of credit thereunder continued and such amounts, or the liability of any other Person upon or for any part thereof, or any collateral security or guaranty therefor or right of offset with respect thereto, may, from time to time, in whole or part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Secured Parties, and the Credit Agreement, the Notes and any other Basic Documents or any other document executed in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Secured Parties may deem advisable from time to time, and any collateral security or guaranty or right of offset at any time held by the Secured Parties for the payment of such amounts may be sold, exchanged, waived, surrendered or released; provided that no such amendment shall increase any obligations of the Sponsor hereunder without its consent; and provided, further, that nothing contained in this Section 6.01(b) shall constitute a waiver of the right of the Borrower itself to agree to any such amendment, modification, compromise or settlement.  None of the Secured Parties shall have any obligation to protect, secure, perfect or inquire as to any Lien at any time held by it as security for any amount due under the Credit Agreement or any other Basic Document or any property subject to any such Lien, and the failure of any of the Secured Parties to do any of the foregoing shall have no effect on the obligations of the Sponsor hereunder.  None of the Secured Parties shall have any liability for the performance or observance of any of the obligations or duties of the Borrower under the Credit Agreement or under any other Basic Document, and the

5

Borrower's failure to perform any such obligations or duties shall not impair the obligations of the Sponsor hereunder.

(f)    Transfer of Ownership.  The Sponsor's Equity Contribution Obligations under this Agreement shall not be diminished by any transfer by the Sponsor of any of its direct or indirect Equity Interests in the Borrower.  In addition, the Change of Control limitations set forth in Section 5.02 of the Credit Agreement shall govern any such transfer of Equity Interests.

(g)    Waiver of Defenses.  The Sponsor hereby waives any and all notice of the creation, renewal or accrual of any amounts due under the Credit Agreement or any other Basic Document, and all such amounts shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Agreement, and all dealings between the Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Agreement.  Except as expressly set forth herein, the Sponsor hereby waives diligence, presentment, protest, demand for payment and notice of default or non-payment to or upon the Borrower or itself with respect to any amounts due under the Credit Agreement or any other Basic Document.  This Agreement shall be construed as an absolute, irrevocable and unconditional obligation to make the payments described herein without regard to (i) the validity or enforceability of the Credit Agreement, the Notes or any other Basic Documents, or any collateral security or guaranty for any of the foregoing or any right of offset with respect thereto at any time or from time to time held by the Secured Parties, (ii) any defense, set-off or counterclaim (other than a defense of payment or performance in respect of this Agreement) that may at any time be available to or be asserted by or against the Borrower or any other Person, or (iii) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or the Sponsor (other than a defense of payment or performance in respect of this Agreement)) that constitutes or might be construed to constitute an equitable or legal discharge of the Borrower or the Sponsor for the payments described in any of the Basic Documents, in bankruptcy or in any other instance.  When pursuing its rights and remedies hereunder against the Sponsor, each of the Secured Parties may, but shall be under no obligation to, pursue such rights and remedies as it may have against any collateral security or right of offset with respect to any amounts due under the Credit Agreement or any other Basic Document, and any failure by the Secured Parties to pursue such other rights or remedies or to collect any payments from the Borrower or any such other Person or to realize upon any collateral security or to exercise any right of offset, or to release the Borrower or any such other Person or any collateral security or right of offset, shall not relieve the Sponsor of any liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Secured Parties against the Sponsor.

(h)    Continuing Obligations.  The obligations set forth herein shall continue to be effective or reinstated, as the case may be, if at any time and for any reason, any payment made hereunder by the Sponsor is rescinded or must otherwise be returned by the Borrower or the Secured Parties, all as though such payment had not been made.

SECTION 7.01  Representations and Warranties.  The Sponsor hereby represents, warrants and certifies to the Collateral Agent, for the benefit of the Secured Parties, that each of the representations and warranties in Section 4.01 of the Credit Agreement to the extent relating to the Sponsor is true and correct and each such representation and warranty is incorporated

6

herein *mutatis mutandis*, to the same extent as if set forth herein.

SECTION 8.01   Covenants and Agreements.  So long as any Advance or other Obligation under the Basic Documents shall remain unpaid, any Lender shall have any Commitment or any Letter of Credit outstanding, the Sponsor hereby covenants and agrees that it shall faithfully observe and fulfill, and shall cause to be observed and fulfilled, each and all of the following covenants applicable to it:

(i)   Maintenance of Existence, Privileges, Etc.  The Sponsor shall preserve and maintain in full force and effect its legal existence and all of its rights, privileges and franchises necessary for the performance of its obligations under this Agreement.

(j)   No Violation of Basic Documents.  The Sponsor shall not take or cause the Borrower to take any action that would cause a violation of any of the provisions of any Basic Document.

(k)   Taxes.  Any and all payments, fundings and cash contributions made by or on behalf of the Sponsor hereunder shall be made free and clear of, and without deduction for, any and all taxes.  If the Sponsor shall be required by Applicable Law to deduct any taxes from or in respect of any sum payable hereunder to the Borrower or any Secured Party (i) the sum payable shall be increased by the amount necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 8.01(d)) the Borrower or such Secured Party shall receive an amount equal to the sum it would have received had no such deductions been made, (ii) the Sponsor shall make such deductions, and (iii) the Sponsor shall pay the full amount deducted to the relevant taxing authority or other Governmental Authority in accordance with Applicable Law.  The Sponsor will indemnify the Borrower and each Secured Party for the full amount of taxes (including any taxes imposed by any jurisdiction on amounts payable under this Section 8.01(d)) paid by the Borrower or such Secured Party, and any liability (including penalties, interest, additions to tax, and other charges) arising therefrom or with respect thereto, whether or not such taxes were correctly or legally asserted.  Such indemnification shall be made within thirty (30) days after the date the Borrower or any Secured Party makes written demand therefor setting forth the amount of such indemnification and the basis for calculation thereof in reasonable detail, which certificate shall be delivered to the Sponsor and shall be conclusive absent manifest error.

(l)   Further Assurances.  From time to time upon the request of the Collateral Agent, the Sponsor shall promptly execute and deliver all further instruments and documents, and take all further action, that may be reasonably necessary, in order to enable the Collateral Agent to exercise and enforce its rights and remedies hereunder.

SECTION 9.01   Execution in Counterparts.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier, facsimile or portable document format ("pdf") shall be effective as delivery of a manually executed counterpart of this Agreement.

7

SECTION 10.01 Enforcement. The Sponsor hereby agrees (a) that the Secured Parties shall have the right to directly enforce the provisions hereof against each of the parties hereto and (b) to pay all costs, including, without limitation, reasonable attorney's fees and expenses that are occasioned by or result from any failure by the Sponsor to perform on a timely basis any of the terms, agreements or covenants to be performed by it hereunder or from the breach by the Sponsor of any representation or warranty made by it herein.

SECTION 11.01 Survival; Term. The terms of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. The provisions of Section 6.01 and all other covenants, agreements, representations and warranties made by the Sponsor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Basic Document shall be considered to have been relied upon by the Secured Parties and shall survive the performance of the obligations contained herein, the making by the Lenders of the Advances, and the execution and delivery to the Lenders of the Notes evidencing such Advances, regardless of any investigation made by any Secured Party or on its behalf, and shall continue in full force and effect until the earlier of (a) the date on which the Equity Contribution Obligations have been indefeasibly paid or satisfied in full and (b) the date of payment in full of the Obligations, the cancellation of the Commitments and the cancellation or termination of any outstanding Letter of Credit, under the Credit Agreement

SECTION 12.01 Governing Law and Jurisdiction.

(m)    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE.

(n)    Jurisdiction, Etc.

(i)    Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the State, City and County of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York State court or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction.

(ii)    Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or

8

relating to this Agreement in any New York State or federal court sitting in the State, City and County of New York. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(iii)    The Sponsor agrees that it will at all times continuously maintain a place of business in the State of New York to receive service of process with respect to any action, suit or proceeding in any courts sitting in the State, City and County of New York on its behalf with respect to each Basic Document to which it is a party. In the event that for any reason the Sponsor shall no longer have a place of business in the State of New York, the Borrower will promptly but in no event later than five days after obtaining knowledge thereof, irrevocably designate and appoint a substitute agent acceptable to the Collateral Agent and advise the Collateral Agent thereof.

(o)    Other Jurisdictions. Nothing contained in this Section 12.01 shall affect the right to effect service of process in any manner provided for under Applicable Law or preclude any of the Secured Parties from bringing any suit, action or proceeding arising out of or relating to the Basic Documents in the courts of any place where the Sponsor or the Borrower or any of its property or assets may be found or located. To the extent permitted by the Applicable Law of any such jurisdiction, each of the Sponsor and the Borrower hereby irrevocably submits to the jurisdiction of any such court and expressly waives, in respect of any such suit, action or proceeding, the jurisdiction of any other court or courts which now or hereafter, by reason of its present or future domicile, or otherwise, may be available to it.

SECTION 13.01  WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER BASIC DOCUMENT OR THE ACTIONS OF THE SECURED PARTIES IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

SECTION 14.01  Notices. All notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be given in accordance with Section 8.02 of the Credit Agreement. All notices, demands, requests and other communications required or permitted hereunder to the Sponsor shall be in writing and given at the following address:

If to the Sponsor:

Lehman Brothers, Inc.
745 Seventh Avenue; New York, NY 10019-6801
Facsimile No.:
Attn:

SECTION 15.01  Amendments.

9

(a) No failure or delay of the Collateral Agent, or any other Secured Party in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of Secured Parties hereunder and under the other Basic Documents are cumulative and not exclusive of any rights or remedies which they would otherwise have. No waiver of any provision of this Agreement or any other Basic Document or consent to any departure by the Borrower or the Sponsor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on the Borrower or the Sponsor in any case shall entitle the Borrower or the Sponsor to any other or further notice or demand in similar or other circumstances.

(b) No modification or waiver of any of the provisions of this Agreement shall be binding on the parties hereto, except as expressly set forth in a writing duly signed and delivered by each such party. This Agreement shall be amended with the written consent of the Sponsor and the Collateral Agent (with the consent of the Required Lenders) in accordance with Section 8.01 of the Credit Agreement.

SECTION 16.01 _Severability_. In the event any one or more of the provisions contained in this Agreement or in any other Basic Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby. Where provisions of any Applicable Law resulting in such prohibition or unenforceability may be waived, they are hereby waived by each of the parties hereto to the full extent permitted by Applicable Law so that this Agreement shall be deemed a valid, legal and binding agreement, enforceable in accordance with its terms. The parties hereto shall endeavor in good-faith negotiations to replace any invalid, illegal or unenforceable provisions with valid provisions, the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 17.01 _Assignments_. The Sponsor shall have no right, power or authority to delegate all or any of its obligations hereunder; provided that Sponsor may assign its obligations hereunder to an Affiliate, so long as such Affiliate has ratings of its long-term Debt with Standard & Poor's and Moody's at least equivalent to the Sponsor's current rating or, if not rated, has a tangible net worth of at least $10,000,000,000. The Sponsor hereby expressly agrees that the Collateral Agent may assign all or any of its rights hereunder without the Sponsor's approval to any Person to which the Collateral Agent has assigned its rights under the other Basic Documents or under any TSA. The Collateral Agent or any such assignee shall notify the Sponsor in writing of each such assignment made pursuant to this Section 17.01. In the event of any such assignment, references herein to the "Collateral Agent" shall be deemed to include references to the relevant assignee.

SECTION 18.01 _Headings_. The table of contents and headings set forth herein and in the other Basic Documents are included for convenience of reference only and shall not affect the interpretation of this Agreement or any other Basic Document.

10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized representatives as of the date hereof.

SKYPOWER CORP.

By: _____

Name:

Title:

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name:
Title: BARRETT S. DiPAOLO
VICE PRESIDENT

HSH NORDBANK AG, NEW YORK BRANCH

By:

Name:

Title:

By:

Name: HEESOU YOON

Title: AVP

## SCHEDULE 2.1

**See Attached**



DRAWDOWN A3
CLOSING

INCREMENTAL SIZE OF FACILITY:    $    30,000,000.00
AMOUNT OF LC ISSUED AT CLOSING:    $    32,254,351.69

**Drawdown**

Lenders Fees and Closing Costs

Lenders Fees and Closing Costs    $    744,976.04
LC Fronting Fee    $    48,531.33

For Drawdown Notice    $    793,508.37

**Uses**

Repay Terravind/4sg TSL - Dec 28/07    $    212,330,175.79
Deal Costs and Professional Fees - Dec 28/07    $    4,660,013.84
Cash Proceeds to Terravind4s - Dec 28/07    $    72,240,640.00
Cash Proceeds to Vestas (15% Deposit)    $    9,462,336.75
Deal Costs and Professional Fees - Feb 15/08    $    793,508.37
Uses LC to Vestas - Feb 15/08    $    32,254,351.69

$    336,857,726.43

**Sources**

TSL Drawdown - Dec 28/07    $    233,249,026.63
TSL Drawdown - Feb 15/08    $    793,508.37
TSL Drawdown - LC Feb 15/08    $    32,254,351.69
Equity Contribution - Dec 28/07    $    61,000,000.00
Equity Contribution - Vestas    $    9,460,336.75

$    336,857,726.43

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                                                        :
                          **Debtors.**                  :        **(Jointly Administered)**
-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' OBJECTION TO
### PROOFS OF CLAIM FILED BY 2138747 ONTARIO LTD.
### AND 6785778 CANADA INC. (CLAIM NOS. 33583 AND 33586 )

Upon consideration of the objection, dated July 11, 2011 (the "Objection"),[1]

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, of Lehman Brothers Holdings Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (collectively, the "Debtors"), to the proofs of claim numbered 33583 and 33586

(together, the "Claims"), filed by 2138747 Ontario Ltd. and 6785778 Canada Inc., as more fully

described in the Objection; and due and proper notice of the Objection having been provided to

(i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York; (vi) 2138747 Ontario Ltd.; (vii) 6785778 Canada Inc.; and (viii)

all other parties entitled to notice in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for these cases [Docket No. 9635]; and it appearing that no other or further notice

need be provided; and the Court having found and determined that the relief sought in the

Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection.

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent

provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claims

are disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Order supersedes all previous orders regarding the

disposition of the Claims; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: _____, 2011
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE