**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                      :

In re:                      :        **Chapter 11**
                      :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :    **Case No. 08-13555 (JMP)**
                      :

         Debtors.        :    **(Jointly Administered)**
                      :
---------------------------------------------------------------x
                      :

In re:                      :
                      :

**LEHMAN BROTHERS INC.,**        :    **Case No. 08-01420 (JMP) SIPA**
                      :

         Debtor.         :
                      :
---------------------------------------------------------------x

**STIPULATION AND ORDER WITH RESPECT TO (I) CERTAIN CONTRACTS POSTED FOR ASSUMPTION AND ASSIGNMENT IN CONNECTION WITH ASSET PURCHASE AGREEMENT, (II) REJECTION OF AN EXECUTORY CONTRACT AND (III) RESOLUTION OF CERTAIN DISPUTES**

This Stipulation and Order (the "**Stipulation**") is made as of June 13, 2011 (the "**Execution Date**") by and among Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors and debtors in possession (each a "**Debtor,**" and collectively, the "**Debtors**"), SAP America, Inc. ("**SAP**"), successor-in-interest to Business Objects Americas ("**BOA**"), Aurora Bank FSB (f/k/a Lehman Brothers Bank FSB), Aurora Loan Services LLC (together with Aurora Bank FSB, "**Aurora**"), Neuberger Berman Group, LLC ("**Neuberger**"), James W. Giddens (the "**SIPA Trustee**"), the appointed trustee under the Securities Investor Protection Act of 1970, as amended, for the administration of Lehman Brothers Inc. ("**LBI**"), and Barclays Capital Inc. ("**Barclays**" or the "**Purchaser,**" and together with the Debtors, SAP, Aurora, Neuberger and the SIPA Trustee, the "**Parties**" and each a "**Party**"), by and through their respective counsel.

## RECITALS

WHEREAS, commencing on September 15, 2008 and periodically thereafter, the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, on September 16, 2008, LBHI, LB 745 LLC, LBI, and Barclays entered into an asset purchase agreement for the purchase and sale of certain assets (as modified, clarified and/or amended, the "**Asset Purchase Agreement**"). On September 17, 2008, the Debtors filed a motion seeking, among other things, approval of the Asset Purchase Agreement;

WHEREAS, on September 19, 2008, a proceeding (the "**SIPA Proceeding**") was commenced under the Securities Investor Protection Act of 1970, as amended ("**SIPA**"), 15 U.S.C. §§ 78aaa *et seq.*, with respect to LBI and James W. Giddens was appointed as Trustee under the SIPA to administer LBI's estate;

WHEREAS, on September 20, 2008, the Court entered the sale order (the "**Sale Order**") approving the Asset Purchase Agreement.[1] On September 20, 2008, the Court also entered a concurrent order thereby authorizing the SIPA Trustee to consummate the sale transaction on behalf of LBI pursuant to the Asset Purchase Agreement;[2]

WHEREAS, the Asset Purchase Agreement provided that certain contracts related to the assets purchased by Barclays (the "**Related Contracts**") could be designated as Purchased Assets (as defined in the Asset Purchase Agreement). On September 18, 2008, the Debtors and the Purchaser identified the Related Contracts for assumption and assignment to the Purchaser as

---

[1]    Case No. 08-13555 (JMP) [Docket No. 258].

[2]    Case No. 08-1420 (JMP) [Docket No. 3].

of September 22, 2008 (the "**Closing Date**") and posted those Related Contracts in schedules

(the "**Closing Date Schedules**") on http://chapter11.epiqsystems.com/lehman (the "**Website**");

WHEREAS, Lehman Brothers Limited ("**LBL**") and Business Objects (UK) Limited

("**BOU**") entered into an agreement for the license of certain software as specifically described

in the Master Software License and Services Agreement effective August 1, 1996, together with

any amendments, schedules, appendices, certificates, exhibits or addenda (including, without

limitation, the 2002 Addendum defined below) thereto (the "**1996 License Agreement**");

WHEREAS, on or about December 22, 2002, an addendum to the 1996 License

Agreement was entered into, whereby, *inter alia*, the use of the licensed software under the 1996

License Agreement was transferred from LBL to LBI (the "**2002 Addendum**");

WHEREAS, the 1996 License Agreement was included among the Related Contracts on

the Closing Date Schedules posted on the Website;[3]

WHEREAS, subsequent to the posting of the 1996 License Agreement as a Related

Contract on the Closing Date Schedules, in the ordinary course of its business, LBHI entered into

an agreement with BOA for the license of certain software as specifically described in the

Software License and Related Services Agreement effective December 31, 2008, together with

any amendments, schedules, appendices, exhibits or addenda thereto (the "**2008 License**

**Agreement**") and LBHI, Aurora and Neuberger each entered into certain order schedules (each,

an "**Order Schedule**") under the 2008 License Agreement effective December 31, 2008;

WHEREAS, in the ordinary course of its business, Neuberger entered into an agreement

with BOA for the license of certain software as specifically described in the Software License

and Related Services Agreement effective June 5, 2009, together with any amendments,

---

[3]      Although the 1996 License Agreement may have been depicted as multiple agreements on the
Closing Date Schedule, the 1996 License Agreement is a single integrated contract.

schedules, appendices, exhibits or addenda thereto (the "**2009 License Agreement**," and together with the 1996 License Agreement and the 2008 License Agreement, the "**License Agreements**");

WHEREAS, SAP, as successor-in-interest to BOA, acquired all title, right and interest to, under or in the License Agreements by operation of law;

WHEREAS, BOA notified the Purchaser that it objected to the assumption and assignment of the 1996 License Agreement, asserting that under 11 U.S.C. § 365(c)(1) the 1996 License Agreement is not assignable without BOA's consent and that BOA did not consent to such assignment (the "**BOA Objection**");

WHEREAS, in order to resolve the BOA Objection, Purchaser and BOA agreed that the 1996 License Agreement was not assigned to Purchaser and no cure payments were made by Purchaser or any other Party to BOA in respect of the 1996 License Agreement;

WHEREAS, BOA and/or SAP have not filed any proofs of claim against the Debtors or LBI in respect of the 1996 License Agreement;

WHEREAS, various disputes have arisen between SAP, the Debtors, Aurora and Neuberger with respect to the timing and basis of the 2008 License Agreement and the 2009 License Agreement (the "**Disputes**");

WHEREAS, SAP, on the one hand, and the Debtors, Aurora and Neuberger, on the other hand, have determined that it is in their respective best interests to compromise and settle all claims and causes of action which they have asserted, or could have asserted, against each other relating to the Disputes in order to avoid the risks and costs of litigation; and

WHEREAS, the SIPA Trustee further seeks approval of the Court to reject the 1996 License Agreement immediately effective upon the entry of this Stipulation.

**NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING RECITALS, WHICH ARE INCORPORATED INTO THIS STIPULATION, AND THE COVENANTS AND CONDITIONS CONTAINED THEREIN, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS AND, SUBJECT TO COURT APPROVAL, IT SHALL BE ORDERED THAT:**

1.      Notwithstanding any prior order of this Court to the contrary, or any Closing Date Schedule or any notice given by the Purchaser, the Debtors, LBI or the SIPA Trustee, the 1996 License Agreement (i) has not been assumed and assigned to the Purchaser, and (ii) was not purchased by the Purchaser.

2.      The inclusion of the 1996 License Agreement on the Closing Date Schedules and/or any notice shall not give rise to (i) any administrative expense claim or damage claim against any of the Debtors, LBI or their respective estates, whether under § 503(b) of the Bankruptcy Code or otherwise, or (ii) any obligation or liability of Barclays with respect to the 1996 License Agreement, including, without limitation, for payment of cure amounts under section 365(b)(1) of the Bankruptcy Code.

3.      Nothing in this Stipulation shall bind, collaterally estop or otherwise prejudice the rights of the Debtors, LBI, the SIPA Trustee or the Purchaser with regard to the applicability of or requirements under 11 U.S.C. § 365(c)(1) as to any Related Contracts, other than the 1996 License Agreement.

4.      The 1996 License Agreement is hereby rejected by the SIPA Trustee effective immediately upon the entry of this Stipulation.

5.      SAP agrees not to assert and hereby waives all rights to assert any rejection damages claims arising from the rejection of the 1996 License Agreement against LBI, the Debtors, and their respective estates.

6.       The SIPA Trustee and SAP agree that the 1996 License Agreement, including any

remaining right to use any of the software licensed thereunder by LBI, the Debtors, Neuberger,

Aurora, or their respective affiliates is terminated in its entirety.  Notwithstanding the foregoing,

each Party which previously utilized any software licensed under the 1996 License Agreement

shall comply with and shall not be released from any duties upon termination,  in accordance

with the terms of the 1996 License Agreement, except that such Party shall not be required to

deinstall any software that will be licensed under its respective license agreement as set forth in

paragraph 7 hereof.  For the avoidance of doubt, nothing herein shall be construed as an

agreement or determination that any  failure to comply with duties upon termination set forth in

the 1996 License Agreement constitutes an administrative priority expense of the Debtors or LBI

or their respective estates pursuant to section 503(b) of the Bankruptcy Code or otherwise, and

the Debtors', SIPA Trustee's (on behalf of LBI) and SAP's respective rights, claims and

defenses with respect to the forgoing shall be fully preserved.

7.       Upon Court approval of this Stipulation, (i) SAP will transfer the software

licensed under the Neuberger Order Schedule to the 2008 License Agreement to the 2009

License Agreement, (ii) SAP will enter into a separate software license agreement with Aurora

incorporating the material terms of the 2008 License Agreement and the Aurora Order Schedule

thereunder, and (iii) LBHI will retain the 2008 License Agreement and the software licensed

under the LBHI Order Schedule thereunder and may assign same to LAMCO, LLC, an affiliate

of LBHI, in accordance with the assignment provisions of Section 10 of the 2008 License

Agreement, and (iv) SAP will be deemed to have acknowledged and agreed that LAMCO, LLC

was authorized to use the licensed software  under the 2008 License Agreement from March

2010 through the date of any such assignment pursuant to the LBHI Order Schedule provided

that LAMCO, LLC otherwise complied with the terms of the 2008 License Agreement and the

LBHI Order Schedule.

8.       Within fourteen business days of Court approval of this Stipulation, SAP shall

remit the following payments (the "**Payments**") to the respective recipients in accordance with

wire instructions to be provided to SAP by the recipients:

  a.     $ 83,745.00 to LBHI;

  b.     $448,387.50 to Aurora; and

  c.     $496,552.00 to Neuberger.

9.       Subject to payment of the Payments in accordance with paragraph 8 above, each

of the Debtors, Neuberger, Aurora, LBI and the SIPA Trustee (on behalf of LBI), together with

their respective parents and assigns, successors, any affiliated subsidiary corporations that LBHI

has the ability to control or direct, agents, officers, directors, employees, and attorneys

(collectively, the "Releasors"), hereby covenants not to sue and releases SAP and its parent and

its assigns, successors, affiliated parent or subsidiary corporations, agents, officers, directors,

employees, and attorneys from any and all liability, claims, charges, actions, causes of action,

rights, demands, obligations, debts, damages, or accountings of whatever nature, whether at law

or equity, known and unknown, which any Releasor may have had, now has, or hereinafter shall

or may have against SAP arising out of or in any way relating to the Disputes.

10.      SAP together with its respective parent and its assigns, successors, affiliated

parent or subsidiary corporations, agents, officers, directors, employees, and attorneys hereby

covenants not to sue and releases each of the Debtors, Neuberger, Aurora, LBI and the SIPA

Trustee and their respective parents and assigns, successors, affiliated parent or subsidiary

corporations, agents, officers, directors, employees, and attorneys from any and all liability,

claims, charges, actions, causes of action, rights, demands, obligations, debts, damages, or accountings of whatever nature, whether at law or equity, known and unknown, which SAP may have had, now has, or hereinafter shall or may have against each of the Debtors, Neuberger, Aurora, LBI, and the SIPA Trustee arising out of or in any way relating to the Disputes.

11.     Notwithstanding paragraphs 9 and 10 of this Stipulation, the Parties do not waive any future rights and claims, including, but not limited to, rights and claims arising from or relating to a breach of this Stipulation or any other agreement that they may be or become party to, including without limitation, the 2008 License Agreement or the 2009 License Agreement. For the avoidance of doubt, nothing herein shall waive, modify or otherwise amend any rights or obligations under any agreements between Barclays and/or its affiliates, on the one hand, and SAP and/or BOA, on the other hand.

12.     The Parties agree that neither the execution and Court approval of this Stipulation nor the payment of the Payments or other consideration as set forth in this Stipulation shall constitute, be construed as, or be offered or received into evidence as an admission of fault or liability of any kind by any Party with respect to the Disputes. The Parties agree that this Stipulation is entered into to correct the Closing Date Schedules and in compromise and settlement of the Disputes and any claims associated therewith and that fault and liability are expressly denied by the Parties.

13.     For the avoidance of doubt, nothing herein constitutes or shall be construed as any modification or amendment to the Sale Order. For the further avoidance of doubt, and notwithstanding anything else contained herein to the contrary, each of the Debtors', the SIPA Trustee's (on behalf of LBI) and Barclays' rights and defenses with respect to any claims each might have against the other are fully preserved, including without limitation, any rights,

defenses and/or counterclaims asserted in connection with or related to the following shall be fully preserved: (i) the Motion of Debtor to Modify the September 20, 2008 Sale Order and Granting Other Relief (Case No. 08-13555, Docket No. 5148); (ii) the Motion of the Trustee for Relief Pursuant to the Sale Orders or, Alternatively, for Certain Limited Relief Under Rule 60(b) (Case No. 08-01420, Docket No. 1682); (iii) the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, Dated September 20, 2008 (and Related SIPA Sale Order) and Joinder in Debtors' and SIPA Trustees' Motions for an Order Under Rule 60(B) to Modify Sale Order (Case No. 08-13555, Docket No. 5169; Case No. 08-01420, Docket No. 1686); (iv) all joinders thereto and the related adversary proceedings;[4] (v) the Motion of Barclays Capital Inc. to Enforce the Sale Order and Secure Delivery of All Undelivered Assets (Case No. 08-13555, Docket No. 6814; Case No. 08-1420, Docket No. 2581); and (vi) any order or any appeal from any order concerning the foregoing matters (i) through (v).

14.    The Parties shall each bear their respective costs and expenses associated with the negotiation and execution of this Stipulation.

15.    This Stipulation shall have no force and effect unless and until it is approved by the Court.  Upon Court approval of this Stipulation, the Parties are authorized to take all actions to effectuate this Stipulation as described herein.

16.    Each person who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

---

[4]  The adversary proceedings are: Adv. Pro. 09-01732 (JMP), Adv. Pro. 09-01731 (JMP) and Adv. Pro. 09-01733 (JMP), respectively.

17.     This Stipulation constitutes the entire agreement between the Parties hereto and supersedes all prior agreements and understandings, oral or written, between the Parties hereto with respect to the subject matter hereof.  For avoidance of doubt, the 2008 License Agreement and 2009 License Agreement,  as well as the  software license agreement with Aurora as contemplated in Paragraph 7(ii) herein, and their respective Order Schedules, govern the use of the SAP software and nothing herein shall be deemed a waiver or change with respect to such license agreements, including as expressly provided in Paragraph 7 herein.

18.     This Stipulation may be executed with counterparty signature pages in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that this Stipulation and Agreed Order may be executed via facsimile or e-mail transmission and that this Stipulation and Agreed Order executed in such manner shall have full legal force.

19.     This Stipulation and all the provisions hereof shall be binding upon and inure to the benefit of all the Parties hereto, each of their respective executors, heirs, successors and assigns, and all entities claiming by or through any of the Parties.

20.     This Stipulation can only be amended or otherwise modified by a signed writing executed by the Parties.

21.     This Stipulation shall be interpreted, construed and enforced exclusively in accordance with the laws of the State of New York, without regard to its conflicts of law principles, except to the extent that the Bankruptcy Code or SIPA applies.

22.     The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

**IN WITNESS WHEREOF**, the undersigned Parties have executed this

Stipulation by their duly authorized counsel on the Execution Date.


/s/ Jacqueline Marcus
Jacqueline Marcus, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
*Attorneys for the Debtors and*
*Debtors in Possession*

/s/ Kenneth J. Schweiker
Kenneth J. Schweiker, Jr., Esq.
BROWN & CONNERY, LLP
6 North Broad Street, Suite 100
Woodbury, NJ 08096
Telephone: (856) 812 - 8900
Facsimile:  (856) 853 - 9933
*Attorneys for SAP America, Inc.*


/s/ Jeffrey S. Margolin
James B. Kobak, Jr., Esq.
Jeffrey S. Margolin, Esq.
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726

*Attorneys for James W. Giddens, Trustee*
*for SIPA Liquidation of Lehman*
*Brothers Inc.*

/s/ Lisa M. Schweitzer
Lindsee P. Granfield, Esq.
Lisa M. Schweitzer, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225 - 2000
Facsimile:  (212) 225 - 3999

*Attorneys for Barclays Capital, Inc.*


/s/ Andrew B. Allard
Andrew B. Allard, Esq.
Deputy General Counsel
Neuberger Berman Group LLC
605 Third Avenue
New York, New York 10158
Telephone: (646) 497-4669
Facsimile: (646) 537-3160
*Attorneys for Neuberger Berman Group, LLC*

/s/ Michael J. Riela
Michael J. Riela, Esq.
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile:  (212) 751-4864

*Attorneys for Aurora Bank FSB and*
*Aurora Loan Services, LLC*


**SO ORDERED:**

Dated: New York, New York
        July 13, 2011

*s/ James M. Peck*
Honorable James M. Peck
United States Bankruptcy Judge