Edward H. Tillinghast, III, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

*Counsel for Evangelical Christian Credit Union*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.,<br><br>                       Debtors. | Case No. 08-13555 (JMP)<br><br>Chapter 11<br><br>(Jointly Administered) |

**REPLY OF EVANGELICAL CHRISTIAN CREDIT UNION TO**
**LEHMAN COMMERCIAL PAPER INC.'S RESPONSE TO**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Evangelical Christian Credit Union ("**ECCU**"), by and through its undersigned counsel, respectfully submits this reply (the "**Reply**") to *Lehman Commercial Paper Inc.'s Response to Motion of Evangelical Christian Credit Union Pursuant to Section 362(d) of the Bankruptcy Code for Relief from the Automatic Stay*, dated July 6, 2011 [Docket No. 18304] (the "**Response**"), filed by Lehman Commercial Paper Inc. (the "**Debtor**") and the *Joinder of Official Committee of Unsecured Creditors in Lehman Commercial Paper Inc.'s Response to Motion of Evangelical Christian Credit Union Pursuant to Section 362(d) of the Bankruptcy Code for Relief from the Automatic Stay*, dated July 6, 2011 [Docket No. 18305] (the "**Joinder**"), and in further support of its motion (the "**Motion**")[1] pursuant to section 362(d) of title 11 of the United

---

[1] All Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order vacating the automatic stay to permit ECCU to exercise its state law remedies against approximately 22 acres of land located at 3260 Rubidoux Boulevard in Riverside, California (the "**Property**") on which the Debtor holds a subordinate lien that is acknowledged by the Debtor to be fully undersecured. In support of this Reply, ECCU states as follows:

**The Debtor has Acknowledged that its Subordinate Lien on the Property is Completely Undersecured and that it has No Equity in the Property**

1.  In the Response, the Debtor does not dispute the fact that its lien on the Property is completely undersecured or that it has no equity in the Property. Specifically, the Debtor acknowledges that the appraised value of the Property is only $2.38 million (as determined by the Appraisal attached as Exhibit G to the *Declaration of Michael Boblit in support of Motion of Evangelical Christian Credit Union For Relief from the Automatic Stay*, dated April 26, 2011), and that the amount owed to ECCU on the ECCU Loan is in excess of $6.6 million. *See* Response at ¶ 8. Moreover, the Debtor fails to offer any alternate valuation for the Property. Indeed, the Debtor and the Committee fail to submit valuation evidence concerning the Property or any expert opinions concerning its significance to the Emerald Meadows Project. Instead, the Debtor and the Committee merely rely upon their counsel's unsupported arguments concerning real estate development issues in connection with undeveloped land. *See* Response at ¶ 14; Joinder. Such unsupported factual speculation is unpersuasive and should not be relied upon by the Court.

2.  As a result of the foregoing, it is undisputed that the Debtor is totally "out of the money" as to the Property and can be deemed to have admitted that it has no equity in the Property. *See e.g.*, *In re Martens*, 331 B.R. 395 (Bankr. BAP 8th Cir. 2005) (granting lender's

motion for relief from stay to foreclose on deed of trust where, among other things, debtor did not dispute the amount due to the lender or the value of the property and, as such, the court found that "by her own admissions, [the debtor] did not have equity in the property."). Consequently, ECCU has satisfied its burden under the first prong of section 362(d)(2) of the Bankruptcy Code by demonstrating that the Debtor does not have any equity in the Property. *See* 11 U.S.C. § 362(d)(2)(A), 362(g).

**The Debtor has Failed to Meet its Burden of Showing That the**
**Property is Necessary to the Debtor's Effective Reorganization**

3.   As ECCU has met its burden of demonstrating that the Debtor has no equity in the Property, the burden has shifted to the Debtor to demonstrate that "the [P]roperty is essential for an effective reorganization *that is in prospect*." *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) ("Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'").

4.   The Debtor has totally failed to meet this burden. Instead, in the Response, the Debtor argues without any factual support that the Property "is instrumental to the development of the Emerald Meadows Project and, as such, is of value to LCPI's estate." Response at ¶ 3. However, even if the Debtor's unsubstantiated allegations that the Property is necessary to extract value from the Emerald Meadows Project are correct (a statement for which no evidence has been provided), the Debtor has still failed to meet its burden of demonstrating that the Property is necessary for its effective reorganization.

5.   First, as explained in the Motion, the Debtor is not reorganizing – it is liquidating. *See generally Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors* [Docket No. 18204] (the "**Second Amended Plan**") (providing that "[a]fter

the Effective Date [of the Plan], pursuant to the Plan, the Plan Administrator [as defined in the Plan] shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities . . . "); *see also Debtors' Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code*, dated June 29, 2011 [Docket No. 18205]. Thus, the Property is not essential to an effective reorganization because no reorganization is contemplated or occurring. *Cf. B.N. Realty Assoc's*, 238 B.R. 249, 258 (S.D.N.Y. 1999) (stating "[s]ince a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether [the debtor has] equity in the property.").

6. Second, the Debtor's allegations that a loss of the Property through a foreclosure of the ECCU Loan negatively impacts the value of the Emerald Meadows Project, especially when the allegations are only in a memorandum of law that is not supported by any affidavits or expert reports, does not make the Property "essential" for the Debtor's "reorganization." The Second Amended Plan makes no mention of the Property or the Emerald Meadows Project or the Lehman Loan, and the Debtor has presented no evidence that the Property or the Emerald Meadows Project or the recovery on the Lehman Loan is "essential" to its "reorganization." Other than the bare allegations in the Response that the Property is beneficial to the value of the Emerald Meadows Project and the amount that the Debtor will ultimately recover on the Lehman Loan, the Debtor has made no showing of how the Property will result in a greater recovery for its creditors. The indisputable fact is that the Debtor has no equity in the Property (which it doesn't even own, but on which it only has a subordinate, wholly-undersecured lien) and any sale of the Property will not yield any recovery for the Debtor's estate. As the Debtor has failed to make any showing to the contrary, the Debtor has failed to meet its burden of demonstrating that

the Property is <u>essential</u> to its non-existent reorganization and the stay should be lifted to permit ECCU to pursue its state law remedies against the Property under section 362(d)(2) of the Bankruptcy Code.

**The Theoretical Possibility that the Debtor Seeks Marshaling Does not Eliminate
The Harm to ECCU or Diminish the Cause that Exists to Grant ECCU Relief**

7.  In the Response, the Debtor does not challenge the following factors that demonstrate the existence of cause for lifting the stay under section 362(d)(1) of the Bankruptcy Code: (1) relief from the automatic stay would result in the complete resolution of the issues relating to the Property; (2) any proposed foreclosure of ECCU's lien will not interfere with the Debtor's bankruptcy case because the Debtor has no equity in the Property; (3) ECCU's exercise of its state law remedies, including a non-judicial foreclosure of its lien on the Property, is an action primarily involving third parties, namely ECCU and the Church Borrower; (4) neither the Church Borrower nor the Debtor have provided ECCU with adequate protection; and (5) the interests of judicial economy, the convenience of the parties, and the expeditious and economical resolution of the issues would be better served by modifying the automatic stay to permit the issues relating to the ECCU Loan to be resolved between ECCU and the Church Borrower under the laws of California.

8.  Instead of challenging the multitude of factors that strongly support granting ECCU relief from the stay under sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code, the Debtor argues that the only relevant factor is the impact of the automatic stay and the balance of harms, and argues that "the impact of the automatic stay on the ECCU Loan is outweighed by the harm to LCPI's interest in the Old Church Parcel (and thus the Emerald Meadows Project) because ECCU has ability to satisfy its claim of approximately $6.6 million, in whole or in part,

from the Additional Collateral." Response at ¶ 3. Such statements are totally unsubstantiated and are made without any admissible evidence in support thereof.

9. The theoretical ability of the Debtor to demand that the ECCU Loan be marshaled under California law does not diminish the harm to ECCU caused by the imposition of the automatic stay or change the balance of equities that still favor lifting the stay. To be clear, the Debtor has <u>not</u> sought to have the ECCU Loan marshaled under California law, even though this case has been pending for almost three years and this Motion was filed almost three months ago. The Debtor has not moved or cross-moved for a marshaling order, and the Court is not being asked to make a determination on whether the ECCU Loan can or should be marshaled. Instead, the Debtor has raised the possibility that it <u>could</u> demand that the ECCU Loan be marshaled to argue that ECCU is theoretically not being harmed by the automatic stay. Such an argument is flawed because there has yet to be any determination that the ECCU Loan should be marshaled.

10. First, the Debtor has offered no evidence of the purported value of the Additional Collateral (as defined in the Response) and has made no showing that the ECCU Loan could be satisfied by the Additional Collateral. Under the California Civil Code, a junior lienholder can demand that a debtor's assets be marshaled only "so far as it can be done without impairing the right of the [senior lienholder] to complete satisfaction, and without doing injustice to third persons." *See* Cal. Civ. Code § 3433; *see also* Cal. Civ. Code § 2899 (same limitation on statute permitting marshaling of liens). Moreover, "the burden of showing that this condition [of no prejudice to the senior lienholder or third parties] can be met rests on the [junior] creditor. . ." 16A Cal. Jur. 3d CREDITORS' RIGHT AND REMEDIES § 11 (*citing Victor Gruen Associates, Inc. v. Glass*, 338 F.2d 826 (9th Cir. 1964)). Thus, the Debtor bears the burden of demonstrating that the ECCU Loan can or should be marshaled and of establishing that neither ECCU nor any third

parties will be harmed by the marshaling. The Debtor has failed to satisfy this burden because it has presented no evidence that ECCU will not be harmed if it is required to pursue its state law remedies against the Additional Collateral first.

11. Second, the Debtor ignores the possibility that the Church Borrower may make its own demand to marshal the ECCU Loan in a way that conflicts with the Debtor's demand, in which case it will be ECCU's choice of which assets to move against first. In fact, the very case cited by the Debtor to support its marshaling argument states that "where a trustee or debtor-in-possession's and a junior lienholder's power to marshal are held in mutual check, the only available means to allocate a senior lienholder's debt between two or more sources was by choice of the senior lienholder." *In re Teresi*, 134 B.R. 392, 397-98 (Bankr. E.D. Ca. 1991) (lifting automatic stay in respect of two properties because debtor had no equity in either property and properties were not necessary for effective reorganization where determination of whether the debtor had equity in properties was made in accordance with the senior lienholder's allocation of the debt between the two properties).

12. Finally, the Debtor completely ignores the inequity of allowing the Debtor, a completely undersecured junior lienholder, to delay ECCU's exercise of its right to enforce its bargained-for senior lien because of the unsubstantiated <u>possibility</u> that the value of the Emerald Meadows Project will be greater with the inclusion of the Property. Even if the Emerald Meadows Project is valued higher with the Property, the Debtor still has no equity in the Property. The Debtor's creditors will never recover anything from the Property, a situation for which the Debtor bargained when it took a junior lien on the Property.

13. Meanwhile, ECCU is being continually harmed as its senior lien, already undersecured, is being put further underwater and neither the Debtor nor the Church Borrower

have offered ECCU any adequate protection. This Motion has been pending for almost three months to accommodate the Debtor's request to make a proposal to resolve this dispute, but the Debtor has declined to make any proposals and has failed to offer adequate protection payments. While the Debtor and the SunCal Borrowers delay, ECCU is continually damaged by its collateral further diminishing in value. Foreclosure is the only way in which ECCU can protect itself from further harm, and immediate relief from the automatic stay is warranted.

14.    Thus, the Debtor has utterly failed to prove that marshaling of the ECCU Loan would satisfy the ECCU Loan, and has failed to rebut that the stay should be vacated under both section 362(d)(1) and section 362(d)(2) of the Bankruptcy Code. As such, ECCU is entitled to immediate relief from the automatic stay.

## CONCLUSION

WHEREFORE, ECCU respectfully requests that the Court enter an order, substantially in the form attached to the Motion as <u>Exhibit A</u>, terminating the automatic stay with respect to the Property to permit ECCU to exercise its California state law remedies under the ECCU Loan; and granting such other and further relief as may be just and proper.

Dated:   July 15, 2011
         New York, NY

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:    /s/ Edward H. Tillinghast, III
       Edward H. Tillinghast, III, Esq.
       Blanka K. Wolfe, Esq.
       30 Rockefeller Plaza
       New York, New York 10112
       Tel: (212) 653-8700
       Fax: (212) 653-8701
       E-mail: etillinghast@sheppardmullin.com
               bwolfe@sheppardmullin.com

*Counsel for Evangelical Christian Credit Union*