WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (JMP)
                                        :
                    Debtors.            :   (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT**
**TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT AND**
**COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN**
<u>**COMMERCIAL PAPER INC., AND STATE STREET BANK AND TRUST COMPANY**</u>

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "<u>Motion</u>")

of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and Lehman Commercial Paper Inc. ("<u>LCPI</u>", and

together with LBHI and its affiliated debtors in the above-referenced chapter 11 cases, as debtors

and debtors-in-possession, the "<u>Debtors</u>"), for authorization and approval, pursuant to section

105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure to

enter into a settlement and compromise with State Street Bank and Trust Company ("<u>State</u>

<u>Street</u>"), all as more fully described in the Motion, will be held before the Honorable James M.

Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Jacqueline Marcus, Esq., attorney for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn:  Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Bingham McCutchen LLP, One Federal Street, Boston, MA 02110-1726, Attn:  Sabin Willett, Esq. and Andrew Phelan, Esq., attorneys for State Street, so as to be so filed and received no later than **August 10, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 15, 2011
      New York, New York

                              /s/ Jacqueline Marcus
                              Jacqueline Marcus

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                           :

In re                           :        **Chapter 11 Case No.**

                                         :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**

                                         :

                    **Debtors.**      :        **(Jointly Administered)**

                                         :

-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT**
**TO SECTION 105(a) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF A SETTLEMENT**
**AND COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN**
<u>**COMMERCIAL PAPER INC., AND STATE STREET BANK AND TRUST COMPANY**</u>

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

                    Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and Lehman Commercial Paper Inc.

("<u>LCPI</u>" and, together with LBHI and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession, the "<u>Debtors</u>"), file this motion (the "<u>Motion</u>") and

respectfully represent:

<u>**Preliminary Statement**</u>

              1.        LBHI and LCPI (the "<u>Lehman Parties</u>") seek authorization and approval

of a settlement with State Street Bank and Trust Company ("<u>State Street</u>" and, together with the

Lehman Parties, the "Parties") pursuant to the terms of the Settlement Agreement, dated as of July 5, 2011, a copy of which is attached hereto as Exhibit A (the "Settlement Agreement").[1]

2.      The Settlement Agreement resolves certain claims filed by State Street against the Lehman Parties arising out of that certain standard 1996 ISDA Master Repurchase Agreement dated as of May 1, 2007 (as amended, modified or supplemented, the "MRA"), between LCPI and State Street and LBHI's guarantee of LCPI's obligations thereunder.

3.      The Settlement Agreement is fair and reasonable and in the best interests of the Lehman Parties, their estates, and their creditors.  Accordingly, the Settlement Agreement should be approved.

## Relief Requested

4.      Pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Lehman Parties request approval of the Settlement Agreement.   The Lehman Parties also seek authorization to take all steps necessary to consummate the transactions set forth in the Settlement Agreement.

## Background

5.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  LCPI commenced its chapter 11 case on October 5, 2008.  The Debtors' chapter 11 cases have been consolidated for

---

[1] The description and characterization in this Motion of (a) the events, facts and circumstances giving rise to the claims and disputes (and the settlement of certain of those claims and disputes) referenced herein and (b) the claims and disputes themselves, are for information purposes only, and are without prejudice to any claims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs, and causes of action of whatever nature of the Lehman Parties, State Street, and their affiliates, which shall be governed solely by the terms of the Settlement Agreement.

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

6.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S.

Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of

the Bankruptcy Code (the "Creditors' Committee").

7.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

8.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009, ECF No. 2583, the Court approved the U.S. Trustee's appointment of the Examiner.

On March 11, 2010, the Examiner filed its report with the Court, ECF No. 7531.

9.      On July 2, 2009, the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") established September 22, 2009 as the deadline

to file proofs of claim against the Debtors and October 22, 2009 as the deadline for the filing of

questionnaires with respect to any claims based on a derivative contract or a guarantee related to

a derivative contract, ECF No. 4271 (the "Bar Date Order").

10.     On July 1, 2011, the Debtors filed their second amended joint chapter 11

plan pursuant to section 1121 of the Bankruptcy Code (the "Debtors' Second Amended Plan"),

ECF No. 18204, and a related disclosure statement pursuant to section 1125 of the Bankruptcy

Code, ECF No. 18205.

**Jurisdiction**

11.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

12.     Prior to the events leading up to these chapter 11 cases, the Debtors,

together with their non-Debtor affiliates ("Lehman"), were the fourth largest investment bank in

the United States.  For more than 150 years, Lehman has been a leader in the global financial

markets by serving the financial needs of corporations, governmental units, institutional clients

and individuals worldwide.

13.     Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008, ECF No. 2.

**The MRA**

14.     Under the MRA, LCPI and State Street entered into a repurchase

agreement pursuant to which LCPI, as Seller, sold a number of commercial loans and their

attendant servicing rights (the "Purchased Assets") to State Street, as Buyer, for a purchase price

of $1 billion, and LCPI agreed to repurchase the Purchased Assets on a date certain for a

purchase price of $1 billion plus an amount defined in section 2(k) of the MRA as the "Price

Differential" (the "Transaction").  The terms of the Transaction were documented pursuant to a

confirmation (the "Confirmation"), which is a supplement to the MRA.

15.    LBHI guaranteed LCPI's obligations to State Street under the MRA by executing a Guarantee, dated May 1, 2007 and an Amended and Restated Guarantee, dated July 5, 2007 (collectively, the "Guarantee").

16.    State Street has alleged that between September 10 and September 16, 2008, LCPI breached the MRA by failing to pay the required daily Price Differential amounts in an amount no less than $520,000, which breach constituted an event of default under the MRA. On September 17, 2008, State Street sent a letter to LCPI declaring that an event of default had occurred under the MRA.  Pursuant to the MRA, State Street alleges that it became entitled to LCPI's ownership interest in the Purchased Assets and the Price Differential.

17.    Pursuant to the MRA, between December 2008 and January 2009, LCPI began the process of documenting the transfer of the Purchased Assets that were subject to the MRA to State Street.

**The Dispute**

18.    On November 19, 2008, State Street initiated an adversary proceeding in this Court with respect to State Street's alleged rights under the MRA and the Guarantee, *State Street Bank & Trust Co. v. Lehman Commercial Paper Inc.*, Adv. Pro. No. 08-01743-JMP (Bankr. S.D.N.Y.), ECF No. 1605 (the "Adversary Proceeding").

19.    On September 22, 2009, State Street filed a proof of claim (Claim No. 32695) against LBHI, relating to the obligations of LBHI under the MRA and the Guarantee, in an amount not less than $425,000,000 (the "LBHI Claim").  On the same date, State Street filed a proof of claim (Claim No. 32697) against LCPI, relating to the obligations of LCPI under the MRA, in an amount not less than $425,000,000 (the "LCPI Claim," and together with the LBHI Claim, the "Deficiency Claims").  State Street alleges that the Deficiency Claims represent the

repurchase price under the MRA consisting of $1 billion plus the Price Differential minus the value of the Purchased Assets, when measured on the appropriate date. State Street has alleged that, following further analysis of value of the Purchased Assets, the actual amount due in respect of the Deficiency Claims is approximately $638,000,000.

20.    On September 22, 2009, State Street filed a proof of claim (Claim No. 32696) against LCPI (the "In Rem Claim"), which was related to State Street's alleged ownership of a certain loan that was subject to the MRA (the "340 Madison Loan"). Pursuant to a separate settlement agreement by and between the Parties (the "340 Madison Loan Settlement"), State Street filed a notice of withdrawal of the In Rem Claim on or about July 7, 2010, ECF No. 10079. On or about July 9, 2010, State Street amended the Deficiency Claims to reflect that the amounts claimed were reduced pursuant to the 340 Madison Loan Settlement, ECF No. 10225, filed July 15, 2010.

21.    In addition to the LCPI Claim, the LBHI Claim, and the In Rem Claim, State Street and its affiliates have filed numerous proofs of claim against certain of the Debtors for matters unrelated to the MRA, which are not the subject of the Settlement Agreement.

## The Settlement Agreement[2]

22.    In order to resolve the disputes between the Parties regarding the Deficiency Claims and certain other disputes relating to the Purchased Assets, and to avoid protracted, costly, and uncertain litigation, the Parties have entered into a comprehensive resolution pursuant to the Settlement Agreement. The Settlement Agreement principally

---

[2] This summary (the "Settlement Agreement Summary") of the Settlement Agreement is qualified in its entirety by the terms and conditions of the Settlement Agreement. The Settlement Agreement Summary is intended to be used for informational purposes only and shall not in any way affect the meaning or interpretation of the Settlement Agreement.

provides for reduction and allowance of the Deficiency Claims, withdrawal with prejudice of the

Adversary Proceeding (except to a limited extent regarding one of the Purchased Assets), sale of

the ProLogis Loan, and mutual releases, as set forth in more detail below.

(a)    ***The Deficiency Claims***    The Settlement Agreement provides for the reduction and allowance of the Deficiency Claims asserted by State Street against both LCPI and LBHI, as general, unsecured, non-priority claims, each in the fixed, liquidated amount of $400 million, a reduction of approximately 37% from the amount asserted by State Street.  The Settlement Agreement provides that State Street may not recover more than $400 million in the aggregate with respect to the Deficiency Claims.

(b)    ***The Adversary Proceeding***    Pursuant to the Settlement Agreement, State Street has agreed to withdraw the Adversary Proceeding with prejudice; provided however, that if the Hollins Ferry Loan (as hereinafter defined) is not transferred to State Street in accordance with the MRA by the date of this Court's approval of the Settlement Agreement (the "Approval Effective Date"), the Adversary Proceeding need not be withdrawn solely as to the Hollins Ferry Loan.  The Hollins Ferry Loan is the loan made to Mezzanine Borrower-HFR, LLC, pursuant to that certain Mezzanine Loan Agreement, dated as of September 20, 2006.

(c)    ***ProLogis Loan***    The Settlement Agreement provides that LCPI shall either (i) purchase the ProLogis Loan (as hereinafter defined) from State Street for $67.5 million in cash plus the amount of any unpaid interest on the ProLogis Loan accrued through the closing of the sale of the Loan (the "Purchase Price") or (ii) in the alternative and at LCPI's sole option, cause borrower to discharge the ProLogis Loan in full by paying the Purchase Price to State Street.  ProLogis NA3 III LP ("ProLogis") is the borrower under a Loan Agreement dated as of July 11, 2007, as amended (the "ProLogis Loan").  The current amount outstanding under the ProLogis Loan is approximately $82,850,000.  The ProLogis Loan was one of the Purchased Assets transferred to State Street under the MRA.

(d)    ***Mutual Releases***    The Settlement Agreement provides for certain mutual releases between the Lehman Parties, on the one hand, and State Street, on the other hand, of all claims and obligations arising under the MRA, the Guarantee, and the transactions contemplated thereby.

23.    In connection with the Settlement Agreement, State Street has executed an

agreement to support the Debtors' Second Amended Plan, pursuant to which, among other

things, State Street has agreed to (i) file a statement with this Court in support of, the

confirmation and consummation of the Debtors' Second Amended Plan; (ii) subject to the

requirements of section 1125 of the Bankruptcy Code, including the approval by the Bankruptcy

Court of the disclosure statement to the Debtors' Second Amended Plan and its transmittal to

creditors and other parties in interest, timely vote to accept the Debtors' Second Amended Plan;

and (iii) support the approval of the disclosure statement to the Debtors' Second Amended Plan

by filing a statement with the Bankruptcy Court in support thereof. State Street's undertakings

as set out in this paragraph may be terminated if the Settlement Agreement is not timely

approved by the Court.

### The Settlement Agreement is Fair and Equitable and Falls Well Within the Range of Reasonableness and Should Be Approved

24.      The Lehman Parties' entry into the Settlement Agreement is in their best

interests and should be approved under section 105(a) of the Bankruptcy Code and Bankruptcy

Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

105(a). Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and

after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR.

P. 9019(a). In granting a motion pursuant to Rule 9019(a), a court must find that the proposed

settlement is fair and equitable and is in the best interests of the estate. *Fischer v. Pereira* (*In re

47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *Air Line Pilots Ass'n, Int'l v. Am.

Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

25.      The decision to approve a particular settlement lies within the sound

discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). It is

the responsibility of a court to examine a settlement and determine whether it "fall[s] below the

lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d

599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

26.    A court need not conduct a "mini-trial" of the merits of the claims being

settled, *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993), or conduct a full

independent investigation.  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496

(Bankr. S.D.N.Y. 1991).  "The bankruptcy judge does not have to decide the numerous questions

of law and fact. . . The court need only canvass the settlement to determine whether it is within

the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

27.    The Court may give weight to the informed judgment of the debtor that a

compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. at 522; *accord In

re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does

not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for

reasonableness. . . If the Trustee chooses one of two reasonable choices, I must approve that

choice, even if, all things being equal, I would have selected the other.").

28.    The settlement and compromise set forth in the Settlement Agreement

satisfies the standard for approval.  The Lehman Parties have determined that the Settlement

Agreement provides the best framework to resolve their disputes with State Street over the

Deficiency Claim and avoid the expense and risk inherent in litigating such claims.

29.    Because the Lehman Parties recognize they may have substantial

liabilities arising out of the Deficiency Claims, the prospects for success with respect to

defending against the Deficiency Claims are, at best, uncertain, and in any event, will require

costly and protracted litigation with State Street, requiring significant expenditures of both time

and resources by the Lehman Parties and their professionals.  While the Settlement Agreement

allows the Deficiency Claims in the amount of $400 million; such amount is significantly below

the approximately $638 million asserted by State Street with respect to the Deficiency Claims.

Based upon their analysis of the loan attributes, property information, loan performance and

collateral values with respect to the Purchased Assets, the Lehman Parties have determined that

the amount of the Deficiency Claims to be allowed pursuant to the Settlement Agreement is

reasonable, particularly when considered in light of the other benefits of the Settlement

Agreement.

      30.     A portion of the consideration the Lehman Parties offered to State Street

in the Settlement Agreement was offset by State Street's agreement to the sale or discounted

payoff of the ProLogis Loan.  LBHI is owed approximately $21 million by an indirect owner of

ProLogis, a debt that is structurally subordinate in right of payment to the ProLogis Loan.

Property Asset Management Inc., a non-Debtor affiliate, indirectly owns an 80% equity interest

in the entity that indirectly owns ProLogis.  If LBHI purchases the ProLogis Loan at a discount

and the ProLogis Loan is paid in full, then LBHI will benefit to the extent of such discount.  In

the alternative, if State Street receives a discounted payoff, then LBHI would benefit as a result

of payment of a loan to which it is subordinated, rendering it more likely that LBHI's $21

million loan to an affiliate of ProLogis will be paid back.  In either event, the Debtors and their

non-Debtor affiliates will benefit because they will be able to entertain restructuring alternatives

for ProLogis and its affiliates without the necessity for State Street's consent, which the Debtors

believe may materially enhance the value of their existing holdings.

      31.     The terms of the Settlement Agreement are the product of an extended,

good-faith, arms'-length negotiation process.  The Parties, each represented by competent

counsel, have participated in numerous meetings and negotiations.  The terms of the Settlement

Agreement are designed to provide mutually acceptable benefits and burdens to the Parties.

32.     For all of the foregoing reasons, the Settlement Agreement is fair,

reasonable, and in the best interests of the Lehman Parties and their estates and their creditors.

Accordingly, the Court should approve the Settlement Agreement.

### Notice

33.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys

for State Street; and (vii) all other parties entitled to notice in accordance with the procedures set

forth in the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases, ECF No. 9635.  The Debtors submit that no other or

further notice need be provided.

34.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors  respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: July 15, 2011
        New York, New York


                                        /s/ Jacqueline Marcus
                                        Jacqueline Marcus

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**<u>Exhibit A</u>**

**(Settlement Agreement)**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of the Effective Date (defined below), by and between State Street Bank and Trust Company ("State Street"), Lehman Brothers Holdings Inc. ("LBHI"), and Lehman Commercial Paper Inc. ("LCPI" and, together with the other debtors in these chapter 11 cases, the "Debtors," and together with State Street and LBHI, the "Parties," and each individually, a "Party").

WHEREAS, LCPI was the Seller under that certain Master Repurchase Agreement dated May 1, 2007 (as amended, supplemented and otherwise modified from time to time, together with all related documents and agreements entered into in connection therewith, the "MRA") by and among LCPI, as Seller, and State Street, as Buyer;

WHEREAS, LBHI guaranteed the obligations of LCPI under the MRA in favor of State Street by executing a guaranty on May 1, 2007, and by executing a certain Amended and Restated Guarantee on July 5, 2007 (the "Guaranty");

WHEREAS, LBHI commenced a Chapter 11 case on September 15, 2008, under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), that is presently pending under Case No. 08-13555 (JMP), and is being jointly administered with the Chapter 11 cases of certain affiliates and subsidiaries of LBHI, including LCPI (collectively, the "Chapter 11 Cases");

WHEREAS, by order, dated July 2, 2009 [Docket No. 4271] (the "Bar Date Order"), the Bankruptcy Court established:  (i) September 22, 2009 as the deadline to file proofs of claim (each a "Proof of Claim") against the Debtors; and (ii) October 22, 2009 as the deadline for the filing of questionnaires with respect to any claims based on a Derivative Contract or Guarantee (each as defined in the Bar Date Order);

WHEREAS, State Street filed Proof of Claim No. 32,695 against LBHI on September 22, 2009 ("LBHI Claim") relating to certain obligations of LBHI under the Guaranty, in the amount of not less than $425,000,000.00;

WHEREAS, State Street filed Proof of Claim No. 32,696 against LCPI on September 22, 2009 ("In Rem Claim") relating to State Street's *in rem* claim to ownership of a particular asset (the "340 Madison Loan") related to the MRA;

WHEREAS, State Street filed Proof of Claim No. 32,697 against LCPI on September 22, 2009 ("LCPI Claim") relating to certain obligations of LCPI under the MRA, in the amount of not less than $425,000,000.00;

WHEREAS, State Street has alleged that the actual amount due in respect of the LBHI Claim and the LCPI Claim is approximately $638,000,000.00;

WHEREAS, pursuant to a settlement agreement (the "340 Madison Loan Settlement Agreement") by and between the Parties, State Street filed a notice of withdrawal of the *In Rem* Claim (Claim No. 32,696) on or about July 7, 2010 [Docket No. 10079];

A/74417924.1

WHEREAS, pursuant to the 340 Madison Loan Settlement Agreement by and between the Parties, on or about July 9, 2010, State Street amended the LCPI Claim (Claim No. 32,697) and the LBHI Claim (Claim No. 32,695) to reflect that the amount of each claim was reduced per agreement of the Parties by the value of the State Street Ownership Interest as of the Deemed Transfer Date (each as defined in the 340 Madison Loan Settlement Agreement), in an amount to be proven [Docket No. 10,225];

WHEREAS, on January 25, 2011, the Debtors filed the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 14150] (as the same may be amended, the "Plan"),  and the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 14151] (as the same may be amended, the "Disclosure Statement"); and

WHEREAS, the Parties have engaged in good faith negotiations for the purpose of reaching a mutually satisfactory agreement for the resolution under the Plan of the LCPI Claim and the LBHI Claim. In consideration of the mutual covenants, conditions and provisions set forth below, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and each Party intending to be legally bound, the Parties agree as follows:

1.      **IMPLEMENTATION OF AGREEMENT**

a)      Effectiveness.  This Agreement shall become effective on the date that this Agreement has been signed by each of the Parties (the "Effective Date").  The rights and obligations of the Parties set forth in this Agreement are conditioned and contingent upon approval of the same by the Bankruptcy Court (the date of such approval the "Approval Effective Date").  In the event the Approval Effective Date does not occur on or before September 30, 2011, for any reason, this Agreement shall be deemed null and void, each Party shall be relieved and released from any further obligation hereunder, and the Parties may pursue and defend the allowance of their respective claims, if any, without admission by any Party regarding the amount, priority or enforceability of such claims.

b)      Cooperation.  The Parties that agree from and after the Effective Date they will proceed expeditiously to seek the occurrence of the Approval Effective Date, cooperate with each other, and execute and deliver such documents and take such further actions as may be reasonably necessary to implement this Agreement.  LBHI and LCPI will jointly file a motion under Fed. R. Bankr. P. 9019 to approve this agreement within ten days of the Effective Date, and the Parties shall actively seek its prompt approval.

c)      Withdrawal of Adversary Proceeding.  Within 10 days following the Approval Effective Date, State Street shall withdraw with prejudice the adversary proceeding it commenced on November 19, 2008 in the Bankruptcy Court for the Southern District of New York, captioned *State Street Bank & Trust Co. v. Lehman Commercial Paper Inc.*, Adv. Pro. No. 08-01743-JMP; provided, however, that State Street need not withdraw claims in the adversary proceeding with respect to the Hollins Ferry property if the dispute relating to such property has not been resolved to the satisfaction of the Parties by the Approval Effective Date.

- 2 -

## 2.    ALLOWANCE OF CLAIMS

a)    <u>LCPI Claim</u>.  Upon the Approval Effective Date, the LCPI Claim shall be reduced and allowed as a general, unsecured, non-priority claim under 11 U.S.C. § 502 against LCPI in the fixed, liquidated amount of $400,000,000.00 (the "<u>Allowed LCPI Claim</u>").  The Allowed LCPI Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any Proof of Claim.  The Allowed LCPI Claim shall be classified and treated as an Allowed Claim in Class 4A of the Plan (General Unsecured Claims other than those of Designated Entities against LCPI) and shall have the same treatment as other claims within its class under the plan confirmed by the Bankruptcy Court in the chapter 11 case of LCPI.

b)    <u>LBHI Claim</u>.  Upon the Approval Effective Date, the LBHI Claim shall be reduced and allowed as a general, unsecured, non-priority claim under 11 U.S.C. § 502 against LBHI in the fixed, liquidated amount of $400,000,000.00 (the "<u>Allowed LBHI Claim</u>"). The Allowed LBHI Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim. The Allowed LBHI Claim shall be classified and treated as an Allowed Claim in Class 5 of the Plan (Senior Third Party Guarantee Claims against LBHI) and shall have the same treatment as other claims within its class under the plan confirmed by the Bankruptcy Court in the chapter 11 cases of LCPI and LBHI, as applicable.

c)    <u>Limitation on Plan Distributions</u>.  Notwithstanding the provisions of sections 2 (a) and 2 (b) hereof, the aggregate recovery of State Street in respect of the Allowed LCPI Claim and the Allowed LBHI Claim shall not exceed $400,000,000.00.

d)    <u>Title to Claims</u>.  State Street represents and warrants that it owns all of the legal and beneficial interest in, and has good, valid title to the Allowed LCPI Claim and the Allowed LBHI Claim, free and clear of all liens, claims, setoff rights of third parties, security interests, participations or encumbrances, and State Street has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement, including, without limitation, the Allowed LCPI Claim and the Allowed LBHI Claim or any interest therein.

e)    <u>Transfer of Claims</u>.  State Street shall not during the period from the Effective Date until the termination of this Agreement, transfer the Allowed LCPI Claim and/or the Allowed LBHI Claim, or any interest in any of the foregoing, or any rights or interests arising thereunder, in whole or in part, except to a person or entity that agrees that the terms of this Agreement shall be binding in all respects upon such person or entity and shall govern the acts of such person or entity.

## 3.    PROLOGIS LOAN SALE

LCPI, or its designee, will purchase from State Street the loan evidenced by the Loan Agreement dated as of July 11, 2007, as amended, between State Street, as successor in interest to LBHI, and ProLogis NA3 III LP (the "<u>ProLogis Loan</u>") for $67.5 million in cash plus the amount of any unpaid interest on the ProLogis Loan accrued through the closing of the sale of the Loan (the "<u>Purchase Price</u>").  In the alternative, at LCPI's sole option it may satisfy the

ProLogis Loan in full by the payment of the Purchase Price to State Street (such purchase as described in the preceding sentence or the discounted payoff, the "Loan Sale").  State Street agrees that the consummation of the Loan Sale will constitute the full settlement, satisfaction, release and discharge of the ProLogis Loan.  The Loan Sale will be effectuated pursuant to customary documents reasonably acceptable to the Parties and without any representation or warranty by or other recourse to State Street except that State Street will represent that (i) it has not sold or assigned any interest in the ProLogis Loan acquired by it under the MRA, (ii) it has the right to convey the ProLogis Loan, and (iii) the ProLogis Loan is not subject to any security interest, lien or other encumbrance created by or through State Street.  State Street's obligation to sell and LCPI's obligation to purchase the ProLogis Loan under this section will terminate: (i) upon notice from LCPI, delivered to State Street no later than July 29, 2011, that either LCPI or the official committee of unsecured creditors has disapproved the Loan Sale, (ii) if the Bankruptcy Court does not approve the Loan Sale by September 30, 2011, or (iii) if the closing of the Loan Sale does not occur by October 15, 2011.  The termination of the obligations of the Parties under this section 3 will not affect any other obligations of any of the Parties under this Agreement.  This Agreement shall not operate as a waiver of any claim, default or defense of State Street or ProLogis NA3 III LP with respect to the ProLogis Loan, and all rights and remedies of State Street and ProLogis NA3 III LP with respect to the ProLogis Loan are expressly reserved.

4.    **MUTUAL RELEASE**

a)    Except as to the agreement and performance of the obligations set forth in this Agreement and the documents, instruments and agreements executed in connection herewith, effective from and after the Approval Effective Date, State Street, for itself and its affiliates, and their successors and assigns, expressly releases and waives, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured, priority, administrative or otherwise (collectively, "State Street Released Claims"), that State Street or any of its affiliates may have against any LBHI, LCPI, and or any of the other Debtors and/or any of their respective direct or indirect parents, subsidiaries and affiliates, or the respective officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, participants, successors or assigns of any and all of the foregoing, arising under or relating to the MRA, the Guaranty or the transactions contemplated thereby.  Nothing in this Agreement shall constitute a release or waiver of any claims that State Street or any of its affiliates, or any of their respective successors or assigns, may have against any Debtor or any of the Debtors' affiliates relating to any interest that the Debtor or the affiliate may have in any loan that was sold to State Street under the MRA or any assignment document or any interest in or claim against any obligor on that loan or affiliate of the obligor or arising under or related to any settlement, exchange, assignment or assumption of the loan or that otherwise do not arise under or relate to the MRA, the Guaranty or the transactions contemplated thereby.

b)    Except as to the agreement and performance of the obligations set forth in this Agreement and the documents, instruments and agreements executed in connection herewith, effective from and after the Approval Effective Date, each of the Debtors, for themselves, and their successors and assigns, expressly releases and waives, unconditionally and irrevocably, any claims,

counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages, costs and causes of action of whatever nature, whether asserted or unasserted, known or unknown, in contract or tort, unsecured, secured, priority, administrative or otherwise (collectively, the "Lehman Released Claims"), that the Debtors may have against State Street and/or any of its respective direct or indirect parents, subsidiaries and affiliates, or the respective officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, participants, successors or assigns of any and all of the foregoing, arising under or relating to the MRA, the Guaranty or the transactions contemplated thereby, including, without limitation, any Avoidance Actions or claims under section 502(d) that relate to the Lehman Released Claims. Nothing in this Agreement shall constitute a release or waiver of any claims that the Debtors or any of their successors or assigns, may have against State Street or any of its affiliates relating to any interest that the Debtor or the affiliate may have in any loan that was sold to State Street under the MRA or any assignment document or any interest in or claim against any obligor on that loan or an affiliate of the obligor or arising under or related to any settlement, exchange, assignment or assumption of the loan or that otherwise do not arise under or relate to the MRA, the Guaranty or the transactions contemplated thereby.

c)      Nothing in this Agreement shall constitute a release or waiver of any Lehman Released Claims that any Debtor or any of its affiliates may have against any other Debtor or any of its affiliates.

5.      **GENERAL**

a)      Headings.  The section headings herein are provided for convenience only and have no substantive effect on the construction of this Agreement.

b)      No Waiver.  The failure by a Party to exercise or enforce any right hereunder shall not operate as a waiver of such Party's right to exercise or enforce such right or any other right in the future.

c)      Governing Law.  This Agreement and all matters and claims arising out of or relating to this Agreement shall be governed by and interpreted, and construed in accordance with the procedural and substantive laws of the State of New York without reference to its principles as to choice or conflicts of law.

d)      Jurisdiction.  To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.  Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.  If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may

now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or other court of competent jurisdiction as described above and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.  Each Party irrevocably consents to service of process in the manner provided for notices in section h) hereof.  Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

e)    Counterparts.  This Agreement may be executed in counterparts (including via electronic means) and copies may be used instead of originals. The executed counterparts shall be construed as and constitute one document.

f)    Integration.  This Agreement is the final and entire agreement of the Parties regarding the subject matter herein, and supersedes all previous oral and written understandings, negotiations, term sheets, and agreements with respect to the subject matter addressed herein. This Agreement may only be modified by a written amendment signed by an authorized signatory of each Party.

g)    Authorization.  Each Party to this Agreement and each person executing this document on behalf of each Party to this Agreement warrants and represents that he or she has the power and authority to execute and deliver this Agreement.

h)    Notices.  All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

> To the Debtors at:
>
> 1271 Avenue of the Americas, 39th Floor
> New York, New York 10020
> Attn: Jeffrey Fitts
> Facsimile: (646) 834-0874
>
> With a copy (which shall not constitute notice) to:
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attn: Jacqueline Marcus, Esq.
> Facsimile: (212) 310-8007
>
> To State Street at:

State Street Bank and Trust Company
One Lincoln Street
Boston, MA 02111
Attn:  William J. Connolly, Esq., Senior Litigation Counsel
Facsimile:  (617)664-4680

With a copy (which shall not constitute notice) to:

Bingham McCutchen LLP
One Federal Street
Boston, MA 02110
Attn:  Sabin Willett, Esq. and Andrew Phelan, Esq.
Facsimile:  (617)951-8736

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

i)    <u>Waiver of Jury Trial</u>.  EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION j)</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**State Street Bank and Trust Company**

By: _____

Name: David C. Phelan

Title: Executive VP & General Counsel, State Street Corporation

Execution Date: July 5, 2011

LEHMAN COMMERCIAL PAPER INC., a New York corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: David Walsh

Title: VP

Execution Date: 7/5/11

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: David Walsh

Title: VP

Execution Date: 7/5/11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                                   :
In re                                                              :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**        :        **08-13555 (JMP)**
                                                                   :
                                **Debtors.**                       :        **(Jointly Administered)**
                                                                   :
--------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE**
**9019(b) AUTHORIZING AND APPROVING A SETTLEMENT AND**
**COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC., LEHMAN**
**COMMERCIAL PAPER INC., AND STATE STREET BANK & TRUST COMPANY**

Upon the motion (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI")
and Lehman Commercial Paper Inc. ("LCPI"), for an order, pursuant to section 105(a) of title 11
of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"), approving a Settlement Agreement[1] with State
Street Bank & Trust Company ("State Street"), as more fully set forth in the Motion; and the
Court having jurisdiction to consider the Motion and the relief requested therein in accordance
with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges
for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,
1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being
a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court
pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been
provided to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official
Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

US_ACTIVE:\43748597\08\58399.0008

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the attorneys for State Street; and (vii) all other parties entitled to notice in accordance with

the procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases, ECF No. 9635; and the Court having

found and determined that the relief sought in the Motion is in the best interests of LBHI and

LCPI, their estates and their creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Settlement Agreement is approved, and LBHI and LCPI are each duly authorized

to (i) consummate all of the transactions contemplated thereby and (ii) execute and deliver such

documents and instruments and to take such other actions as may be reasonably necessary to

consummate the transactions contemplated by the Settlement Agreement, it being understood

that any actions described in this paragraph taken by LBHI, LCPI or any of the affiliates of LBHI

or LCPI may be taken without the necessity of any further Court proceedings or approval and

shall be conclusive and binding in all respects on all parties in interest in these cases; and it is

further

ORDERED that, upon and subject to the terms and conditions set forth in the

Settlement Agreement, with respect to Claim No. 32697 and Claim No. 32695, filed by State

Street against LCPI and LBHI, respectively (collectively, the "Allowed Deficiency Claims"),

State Street will have a general, unsecured, non-priority claim, against each of LCPI and LBHI in

their respective chapter 11 cases in the fixed, liquidated amount of $400,000,000; provided,

however, that the aggregate recovery of State Street in respect of the Allowed Deficiency Claims shall not exceed $400,000,000; and it is further;

ORDERED that the Debtors' Court-appointed claims agent is authorized to modify the claims register to reflect the reduction and allowance of the Deficiency Claim as provided herein; and it is further

ORDERED that the Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that the Bankruptcy Court retains jurisdiction to enforce the Settlement Agreement and any disputes arising thereunder.

Dated: _____, 2011
          New York, New York


          _____
          UNITED STATES BANKRUPTCY JUDGE