Hearing Date and Time:  July 20, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JCS – 6031)

Attorneys for the Ad Hoc Group
of Lehman Brothers Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------------x

**STATEMENT OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS IN
SUPPORT OF DEBTORS' MOTION FOR (I) APPROVAL OF STIPULATION
AND ORDER REGARDING CHAPTER 11 PLANS
AND (II) STAY OF RELATED DISCOVERY**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Lehman Brothers Creditors (the "Group"), by and through its undersigned counsel, hereby files this statement in support (the "Statement") of the Debtors' Motion for (I) Approval of Stipulation and Order Regarding Chapter 11 Plans and (II) Stay of Related Discovery, dated July 6, 2011 (the "Motion") [Docket No. 18306], filed by Lehman Brothers Holding Inc. ("LBHI") and its affiliated debtors (the "Debtors") in the above-referenced chapter 11 cases. As and for its Statement, the Group respectfully represents as follows:

## **STATEMENT**

1.  For many months, these cases have been clouded over with the potential of a protracted plan litigation process that could threaten to overtake them. Through the hard work of the Court, the Debtors, their counsel and their professionals, coupled with the commitment of certain creditor constituencies willing to forego to some extent their parochial interests, the possibility of peace and a largely consensual plan process now exists. For that, the Debtors should be highly commended, and this Court should do what it can to continue to ensure that the bargain that has now been struck can be effectuated quickly, efficiently and according to the terms of the Debtors' Plan, as currently formulated, and the plan support agreements related thereto.[1]

2.  By the present Motion, the Debtors seek approval of the Stipulation and entry of the Order pursuant to which (i) the Group and the overwhelming majority of the Non-Consolidation Plan Proponents agree to hold in abeyance and not prosecute their proposed chapter 11 plans provided that there has been no Termination Event (as defined in the Stipulation) and (ii) any further discovery deadlines under the Discovery Protocol would be held in abeyance. As noted, the Stipulation and Order, collectively with the Debtors' Plan and related plan support agreements, are the products of many weeks of intense negotiations between and among the Debtors and numerous large creditor groups with positions across the Debtors' capital structure. As a result of these negotiations, the Ad Hoc Group Members have each executed plan support agreements that are identical in form, a copy of which is attached hereto as Exhibit A (each, a "Plan Support Agreement"). The Group's support for the Debtors' Plan, however, is not unconditional and the Group has filed this Statement, in part, to apprise the Court of the nature and terms of such support.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

3.     As the Court is aware, the Group's claims against the Debtors consist largely of Senior Unsecured Claims (as defined in the Debtors' Plan) against LBHI.  On January 25, 2011, the Debtors filed a proposed first amended joint chapter 11 plan (the "Debtors' Prior Plan") [Docket No. 14150] and related disclosure statement (the "Debtors' Prior Disclosure Statement") [Docket No. 14151].  According to the Debtors' estimates, holders of Senior Unsecured Claims were projected to receive recoveries of 21.4% under the Debtors' Prior Plan.  The Debtors stated at the time of its filing that they believed this, along with the other recoveries provided for therein, reflected "a fair economic solution for all the Debtors' claimants . . . ."  (Debtors' Prior Disclosure Statement at 81 (emphasis added).)  Even now, the Debtors have stated that they continue to believe that the settlement proposed in the Debtors' Prior Plan reflects an accurate assessment of the litigation risks attendant to the various plan related issues.  (See Debtors' Disclosure Statement at 63 ("Although the Debtors continue to believe that their analysis of the relative risks associated with the Plan Issues is correct, the adjustments described above reflect a settlement and economic compromise of the differing views of such risks among the Debtors and creditors.").)  Nevertheless, as a result of the negotiations that took place in June, holders of Senior Unsecured Claims are now projected to receive an even lower recovery, which constitutes significant concessions beyond what even the Debtors would say are fair in the interest of forging a settlement and consensual plan process.[2]

---

[2]     Four parties have responded to the Motion asserting that the settlement embodied in the Debtors' Plan does not fairly treat holders of claims against Lehman Commercial Paper Inc. ("LCPI") or that such treatment otherwise renders the Debtors' Plan unconfirmable.  (See, e.g., Response of Danske Bank A/S, London Branch [Docket No. 18531]; Response of Centerbridge Credit Advisors LLC [Docket No. 18533]; Joinder of Anchorage Capital Group, L.L.C.. [Docket No. 18534]; Joinder of Monarch Alternative Capital LP [Docket No. 18559].)  With respect to these assertions, the Group notes that LCPI is highly susceptible to substantive consolidation and likely unable to establish strict deconsolidation.  The asset ownership issues that have arisen between LBHI and LCPI in connection with various forms of relief sought by the Debtors demonstrate the significant entanglement that exists between these estates.  (See, e.g., Lehman Brothers Holdings Inc.'s and Lehman Commercial Paper Inc.'s Motion Pursuant to Section 363 of the Bankruptcy Code for Authority to Transfer Funds to Rosslyn LB Syndication Partner LLC [Docket No. 9238]; Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Rule 9019 of

4.      The Group, however, did not make these concessions lightly. The Group believes that, absent a settlement, it has substantial causes of action and remedies available to it with respect to a plethora of issues and that there is more than a strong possibility that the Court would find in favor of the Group and the LBHI estate if the Group chose to pursue such causes of action and remedies. (See, e.g., Debtors' Disclosure Statement at 51-62.) As a result, the Group made it clear to the Debtors and other participants in the negotiations that it would not forego its rights to litigate if there were a possibility that its bargain might not be respected. In other words, the Group is only willing to settle if the settlement reflects the deal in the Debtors' Plan as currently proposed. The Group has not accepted some other deal reflecting similar economics or even a deal materially identical to the current deal. The Plan Support Agreements and Stipulation leave no flexibility on this point.

5.      To protect the deal agreed to and currently reflected in the Debtors' Plan, the Plan Support Agreements provide the Ad Hoc Group Members with the right to terminate the Plan Support Agreements in a broad array of circumstances. In particular, Section 4.03 of the Plan Support Agreements provides, among other things, as follows:

> Creditor shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if . . . (iii) the Debtors amend the Modified Plan or the Modified Disclosure Statement, or the Debtors of any non-Debtor entity controlled by the Debtors

---

the Federal Rules of Bankruptcy Procedure for Approval of Settlement Agreement Between Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc., Silver Lake Credit Fund, L.P. and Silver Lake Financial Associates, L.P. [Docket No. 9808]; LBHI's Motion Pursuant to Sections 105(a), 363(b)(1) and 363(f) of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Transfer Certain Mortgage Servicing Rights to Aurora Bank FSB [Docket No. 9809]; LBHI's and LCPI's Motion Pursuant to Bankruptcy Rule 9019 to Enter into the Release and Termination of Loan Agreement and Other Documents with TS Boston Core Holdings, L.P.; 125 High Junior Mezz, L.P.; One Federal Intermediate Mezz, L.P.; One Federal Junior Mezz, L.P.; and Other Borrower Affiliates [Docket No. 10462].) In addition, as stated by the Examiner, "Lehman personnel [have] asserted that customers did not rely on the credit ratings" of certain entities, including LCPI. (Examiner's Report Vol. 9 at 1970.) Notwithstanding these significant issues and the significant litigation risk the LCPI estate faces with respect to substantive consolidation, the Debtors estimate that third-party holders of General Unsecured Claims (as defined in the Debtors' Plan) against LCPI will receive recoveries of 55.7%. Under the Debtors' methodologies and data, these holders will recover only minimally less in amount than they would absent such settlement on a fully deconsolidated basis.

> takes any other action or makes any other agreement (including, without limitation, with respect to claims or with respect to asset transfers or allocations, in each case, that, individually, or in the aggregate together with all other such amendments, actions and agreements, would, if and when the Modified Plan were to be consummated, adversely affect the treatment of, estimated recoveries by, distributions to, or proportionate share of the Debtors' assets that are distributable pursuant to the Modified Plan to, holders of Claims in any class in the Modified Plan of LBHI, LCPI, LBSF or LBCS in which Creditor holds a claim . . . .

(Plan Support Agreement § 4.03.)  Importantly, there is no materiality requirement built into this provision.  A right to terminate exists if there is <u>any</u> adverse change, material or otherwise.

6. The right of the Ad Hoc Group Members to declare a Termination Event under the Stipulation is built upon the rights embodied in Section 4.03 of the Plan Support Agreements.  Specifically, Paragraph 7 of the Stipulation provides as follows:

> The Requisite Ad Hoc Group Members shall have the right, at their election in their sole discretion, to declare a "<u>Termination Event</u>" under this Stipulation and Order upon three (3) business days written notice to each of the other Parties if the Plan Support Agreement executed by the Ad Hoc Group Members has been terminated by the Requisite Ad Hoc Group Members pursuant to Section 4.03(iii) thereof only with respect to Senior Unsecured Claims against LBHI.

(Stipulation at ¶ 7.)  In other words, if the majority of Ad Hoc Group Members terminate their Plan Support Agreements as a consequence of an adverse change to Senior Unsecured Claims (material or otherwise) then such Ad Hoc Group Members shall have the right to terminate the Stipulation.  If such a Termination Event is declared under the Stipulation, then the consequences described in paragraph 11 of the Motion, including pursuit of discovery will result.

7. In this context, the Group supports the Motion and the Debtors' Plan, expects that all plan support parties' bargains will be respected going forward, and hopes that these cases can be resolved with a minimum degree of acrimony, delay, burden and expense.

WHEREFORE, for the foregoing reasons, the Group requests that the Court grant the relief sought in the Motion and any other relief the Court deems just and proper.

Dated: July 18, 2011
      New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JS – 6031)

By: /s/ Gerard Uzzi
    Gerard Uzzi

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS