# EXHIBIT A

**(Form of Plan Support Agreement)**

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF ANY CHAPTER 11 PLAN. SUCH SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN WILL NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

## Plan Support Agreement

This Plan Support Agreement (the "Agreement"), is made and entered into as of June 30, 2011, by and among (a) Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors[1] (collectively, the "Debtors") and (b) [_____] (the "Creditor"). The Debtors and the Creditor are referred to hereafter collectively as the "Parties" or each individually as a "Party."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (together, the "Chapter 11 Cases" and each, a "Chapter 11 Case");

WHEREAS, by order, dated July 2, 2009 [Docket No. 4271] (the "Bar Date Order"), the Bankruptcy Court established: (i) September 22, 2009 as the deadline to file proofs of claim (each a "Proof of Claim") against the Debtors; (ii) October 22, 2009 as the deadline for the filing of questionnaires with respect to any claims based on a Derivative Contract or Guarantee (each as defined in the Bar Date Order); and (iii) November 2, 2009 as the deadline to file Proofs of Claim with respect to any Lehman Program Securities (as defined in the Bar Date Order);

WHEREAS, the Creditor owns, controls, or manages, as of the date hereof, the respective claims against one or more Debtors, which are listed on Exhibit A annexed hereto (such claims, together with any claims or interests in claims against the Debtors acquired or that become subject to such Creditor's control or management at any time thereafter, the "Claims");

WHEREAS, on January 25, 2011, the Debtors filed the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 14150], and the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 14151];

---

[1] The affiliated chapter 11 debtors are Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

WHEREAS, on June 29, 2011, the Debtors filed the Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 18124] (as the same may be amended, the "Plan"), and the Debtors' Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 18125] (as the same may be amended, the "Disclosure Statement");

WHEREAS, the creditors of the Debtors identified on Exhibit B annexed hereto (each, a "Supporting Creditor" and collectively, the "Supporting Creditors") comprise the steering committee (the "Steering Committee") of the Ad Hoc Group of Lehman Brothers Creditors, represented by White & Case LLP (the "Ad Hoc Group"), are entering into separate Plan Support Agreements (each, a "Supporting Creditor PSA") with the Debtors substantially similar to this Agreement, and shall (i) pursuant to the terms of the formation agreement governing the Ad Hoc Group, cause the Ad Hoc Group to take the actions contemplated in Section 1.02 of this Agreement (except with respect to voting) and (ii) encourage the other members of the Ad Hoc Group to enter into agreements similar to this Agreement;

WHEREAS, the Supporting Creditors have represented that they or their affiliates, and/or one or more funds or entities that they or their affiliates manage also own, hold economic interests in, control or manage certain claims against the Debtors; and

WHEREAS, the effectiveness of this Agreement is expressly conditioned upon the execution of Supporting Creditor PSAs by each of the Supporting Creditors;

NOW, THEREFORE, in consideration of the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I

### Plan and Plan Support

**Section 1.01.**  Debtors' Obligations.  The Debtors shall, (i) no later than June 30, 2011, file an amended version of the Plan that is identical in all material respects to Exhibit C annexed hereto (the "Modified Plan")[2] and an amended version of the Disclosure Statement that is identical in all material respects to Exhibit D annexed hereto incorporating the terms of the Modified Plan (the "Modified Disclosure Statement"), (ii) use reasonable efforts to obtain approval of the Modified Disclosure Statement and voting procedures with respect thereto, (iii) use reasonable efforts to prosecute the Modified Plan and obtain entry of an order confirming the Modified Plan; (iv) give the Creditor the reasonable opportunity to review any amendment, modification or supplement to the Modified Plan or Modified Disclosure Statement (including, without limitation, the Sequencing Motion (defined below) and any other motion regarding

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed thereto in the Modified Plan.

solicitation and voting procedures), in each case prior to filing such document with the Bankruptcy Court, and to consider in good faith any comments provided by the Creditor;  (v) neither take, nor encourage any other person or entity to take, any action which would, or would reasonably be expected to, breach or be inconsistent with this Agreement or the Modified Plan or delay, impede, appeal against, or take any other negative action, directly or indirectly, to interfere with the acceptance or implementation of the transactions contemplated under the Modified Plan; (vi) provide Creditor with notice of any additional creditor (other than the Supporting Creditors) that executes a plan support agreement relating to the Modified Plan after the date hereof; (vii) in the event that the Debtors enter into any other plan support agreement with any other creditor (excluding this Agreement, an "Other PSA") and such Other PSA that includes (1) any obligations of the Debtors, including any obligation of the Debtors to reimburse such creditor for all or any portion of the attorneys' fees of such creditor incurred in conjunction with this case or (2) any rights of termination of the creditor or remedies on account thereof that are more favorable to such creditor than the terms of this Agreement (except certain specific termination rights granted to holders of, and related to, (x) Guarantee Claims against LBHI for which LBT is the Primary Obligor or (y) derivative-related claims against LBSF and LBHI that are the subject of termination and settlement agreements with one or more of the Debtors) (any such provision under the foregoing clause (1) or (2), a "More Favorable Provision"), promptly (x) notify the Creditor of such More Favorable Provision, and (y) at the request of Creditor, execute, without further precondition, an amendment or modification to this Agreement as is necessary to incorporate the More Favorable Provision into this Agreement; (viii) include in the Modified Disclosure Statement a list of parties that have entered into plan support agreements as of the date hereof; (ix) use reasonable efforts to obtain on an expedited basis approval of the stipulation attached hereto as Exhibit F (the "Sequencing Stipulation").

      **Section 1.02.**  <u>Support for Modified Plan</u>.  Creditor (with respect to any and all Claims) shall (i) support and, to the extent possible, use good faith efforts to promote, including by filing a statement with the Bankruptcy Court in support of, the confirmation and consummation of the Modified Plan; (ii) subject to the requirements of section 1125 of the Bankruptcy Code, including the approval by the Bankruptcy Court of the Modified Disclosure Statement and its transmittal to creditors and other parties in interest, timely vote to accept the Modified Plan (and it shall not thereafter withdraw or change such vote); (iii) support the approval of the Modified Disclosure Statement by filing a statement with the Bankruptcy Court supporting the approval of the Modified Disclosure Statement; and (iv) not (a) oppose or object to the approval of the Modified Disclosure Statement, Modified Plan or the solicitation of the Modified Plan or join in or support any objection to the Modified Plan or the solicitation of the Modified Plan, (b) participate in the formulation of, file, prosecute, consent to or support any chapter 11 plan in the Chapter 11 Cases other than the Modified Plan, or (c) take any other action to alter, delay or impede the confirmation and consummation of the Modified Plan; *provided, however*, that in each case such Modified Plan is not amended in a manner that would enable Creditor to terminate this Agreement in accordance with Section 4.03 hereof, that notwithstanding anything to the contrary contained in the Agreement, Creditor reserves and retains the right to defend against any objection to, or estimation of, any of its Claims; *provided further, however,* notwithstanding anything to the contrary, that Creditor shall have the right to object to the Plan Supplement.  The obligations of Creditor set forth in subsections (i) and (iii) of this Section 1.02 shall be deemed satisfied if taken by the Ad Hoc Group; provided, however,

that Creditor does not take a contrary action with respect to subsections (i) and (iii) of this Section 1.02.

    **Section 1.03.** <u>Solicitation Required in Connection with Plan</u>. Notwithstanding anything contained in Section 1.02 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of votes for the acceptance of the Plan or the Modified Plan pursuant to section 1125 of the Bankruptcy Code or a solicitation of votes for the rejection of any alternative chapter 11 plan. Acceptance of the Plan or the Modified Plan will not be solicited until the Bankruptcy Court has approved the Modified Disclosure Statement and related ballots, and such Modified Disclosure Statement, Modified Plan and related ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

## ARTICLE II

### Representations, Warranties and Covenants

    **Section 2.01.** <u>Representations and Warranties of Each Party</u>. In order to induce the other Party to enter into and perform its obligations under this Agreement, each Party makes the following representations and warranties, solely with respect to itself, to each of the other Parties:

    (a) <u>Authority</u>. (1) Each Party has the power and authority to execute, deliver and perform its obligations under this Agreement; and (2) the execution, delivery and performance by such Party of this Agreement has been duly authorized by all necessary action on the part of such Party.

    (b) <u>Validity</u>. This Agreement has been duly executed and delivered by each Party and constitutes the legal, valid and binding agreement of each Party.

    (c) <u>No Reliance</u>. Each Party (1) is a sophisticated party with respect to the subject matter of this Agreement, (2) has been represented and advised by its attorneys in connection with this Agreement, (3) has adequate information concerning the matters that are the subject of this Agreement, and (4) has independently and without reliance upon any other Party or any officer, employee, agent or representative thereof, and based on such information as each Party has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that Creditor has relied upon each Debtor's express representations, warranties and covenants in this Agreement and the matters contained in the Modified Disclosure Statement, as qualified therein, each Debtor has relied upon Creditor's express representations, warranties and covenants in this Agreement and each Party acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

    **Section 2.02.** <u>Additional Covenant of the Debtors</u>. Unless the Debtors obtain the prior written consent of Creditor: (i) the Debtors will use the information regarding the Claims owned by the Creditor (including, but not limited to, all information provided by Creditor pursuant to Section 3.02 hereof) (the "<u>Confidential Claims Information</u>") solely in connection with this Agreement; and (ii) except as required by law, rule or regulation or by order of a court

or as requested or required by the Securities and Exchange Commission or by any other federal or state regulatory, judicial, governmental, or supervisory authority or body, the Debtors will keep the Confidential Claims Information strictly confidential and will not disclose the Confidential Claims Information to any other person; *provided, further,* that the Debtors may combine the Confidential Claims Information provided to the Debtors by Creditor with the corresponding data provided to the Debtors by the Supporting Creditors and freely disclose such combined data on an aggregate basis.  In the event that the Debtors are requested or required (by law, rule, regulation, deposition, interrogatories, requests for information or documents in legal or administrative proceedings, subpoena, civil investigative demand or other similar process or by any governmental, judicial, regulatory, or supervisory body) to disclose the Confidential Claims Information or the contents thereof, the Debtors shall, to the extent legally permissible, provide Creditor with prompt notice of any such request or requirement so that Creditor may, at its own expense, seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this section.  If, in the absence of a protective order or other remedy or the receipt of a waiver by Creditor, the Debtors believe that they are nonetheless, following consultation with their counsel, so required or requested to disclose the Confidential Claims Information, the Debtors may, without liability hereunder, disclose only that portion of the Confidential Claims Information which they believe, following consultation with such counsel, that they are so required or requested to disclose, provided that they exercise their reasonable efforts to preserve the confidentiality of the Confidential Claims Information, including, without limitation, by marking the Confidential Claims Information "Confidential – Attorneys' Eyes Only" and by reasonably cooperating with Creditor to obtain, at Creditor's expense, an appropriate protective order or other reliable assurance that confidential and attorneys' eyes only treatment will be accorded the Confidential Claims Information.

**Section 2.03.**   Additional Representation, Warranty and Covenant of the Creditor.

(a)     In order to induce the Debtors to enter into and perform their obligations under this Agreement, Creditor represents, warrants and covenants that it owns and has good title and the right to vote the Claims, free and clear of any and all liens, claims, security interests, participations, or encumbrances created or incurred by or against such Creditor as of the date of execution of this Agreement and has not transferred or assigned to any other person any of its Claims that are the subject of this Agreement, in whole or in part.

(b)     Creditor shall not file, support or participate in any objection to the claims or settlement thereof of (i) Lehman Brothers Bankhaus AG (provided that the Bankhaus Settlement Agreement is not terminated in accordance with its terms) and (ii) any creditor that enters into an Other PSA substantially similar to this Agreement on or prior to July 31, 2011, or thereafter solely with respect to Claims allowed pursuant to the Derivatives Claims Framework (as defined in the Modified Disclosure Statement) using the Modified Framework Values (as defined in the Modified Disclosure Statement), in each case so long as such creditor has not terminated its Other PSA; provided, however, that the foregoing shall not be a waiver of Creditor's rights with respect to guarantee claims based solely on a board resolution not otherwise allowed pursuant to the Modified Plan.

(c)     Creditor will use reasonable efforts to cause the Ad Hoc Group to take the actions contemplated in Section 1.02 of this Agreement (except with respect to voting) and

encourage all members of the Ad Hoc Group to enter into an agreement conforming to this Agreement.

       **Section 2.04.**  <u>Acknowledgments</u>.  THIS AGREEMENT, THE MODIFIED PLAN, AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN, ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES.  EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF THE PLAN OR REJECTION OF ANY OTHER CHAPTER 11 PLAN FOR PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE.  THE DEBTORS WILL NOT SOLICIT ACCEPTANCES OF THE MODIFIED PLAN FROM ANY PERSON OR ENTITY UNTIL THE PERSON OR ENTITY HAS BEEN PROVIDED WITH A COPY OF THE MODIFIED DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.  NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (AS AMENDED), THE SECURITIES EXCHANGE ACT OF 1934 (AS AMENDED), ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

## ARTICLE III

### Future Transfer of Claims

       **Section 3.01.**  <u>Transfer of Claims</u>.  Creditor may, at any time, transfer any of its Claims, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to Creditor under the Plan, in whole or in part, so long as the transferee executes a joinder in this Agreement in the form annexed hereto as <u>Exhibit E</u> with respect to such transferred Claims (a "<u>Joinder</u>").  Except as provided in the foregoing sentence, from the date hereof, Creditor shall not make any transfer of Claims, or any rights or interests arising thereunder or related thereto, to parties that do not execute a Joinder, and any such transfers shall be null and void and without effect.  From the date hereof, and for so long as it holds an economic interest in a Claim, Creditor shall not grant any proxies, deposit its Claims into a voting trust, or enter into a voting agreement or any similar agreement with respect thereto, unless such agreement provides, in writing, in a form enforceable by, and satisfactory to, the Debtors for compliance with this Agreement.

       **Section 3.02.**  <u>Creditor's Claims Reports</u>. Creditor shall upon the reasonable written request of Debtors until the earlier of termination of this Agreement and confirmation of a plan in the Chapter 11 Cases, deliver within five (5) business days thereafter to the Debtors an updated list of Claims and summary of the classes and total dollar amounts of Claims as of the date of such report.

## ARTICLE IV

### Termination

**Section 4.01.** <u>Debtors' Right to Terminate</u>.  Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to Creditor if there is a breach, in any material respect, of (i) any representation, warranty or covenant of Creditor hereunder, or (ii) Article III hereof, and, in either case, Creditor shall fail to cure such breach within ten (10) days following receipt of written notice of such breach from the Debtors.

**Section 4.02.** <u>Debtors' Fiduciary Obligations</u>.  Notwithstanding anything to the contrary in this Agreement, (i) nothing herein requires any Debtor to breach any fiduciary obligations it has under applicable law; and (ii) after consultation with its counsel, if Debtor determines that such fiduciary obligations require it to terminate this Agreement, such Debtor may do so without incurring any liability to Creditor, subject to Section 4.03.

**Section 4.03.** <u>Creditor's Right to Terminate</u>.  Creditor shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if (i) there is a breach, in any material respect, of any representation, warranty or covenant of the Debtors hereunder, and the Debtors shall fail to cure such breach within ten (10) days following receipt of written notice of such breach from Creditor; (ii) the Debtors withdraw the Modified Plan or the Modified Disclosure Statement;  (iii) the Debtors amend the Modified Plan or the Modified Disclosure Statement, or the Debtors or any non-Debtor entity controlled by the Debtors takes any other action or makes any other agreement (including, without limitation, with respect to claims or with respect to asset transfers or allocations, in each case, that, individually or, in the aggregate together with all other such amendments, actions, and agreements, would, if and when the Modified Plan were to be consummated, adversely affect the treatment of, estimated recoveries by, distributions to, or proportionate share of the Debtors' assets that are distributable pursuant to the Modified Plan to, holders of Claims in any class in the Modified Plan of LBHI, LCPI, LBSF or LBCS in which Creditor holds a Claim as of the date hereof; *provided, however*, that with respect to this subsection (iii) (x) the Debtors do not guarantee, represent, warrant or otherwise commit that any Creditor will receive any specific recovery amount or proportion under the Modified Plan, (y) variations from or modifications to the projected recovery amounts or percentages set forth in the Modified Disclosure Statement due to or based upon, among other things, any factor, including, without limitation revised projections of asset values or the amount, enforceability, classification and/or priority of any claims as determined pursuant to an order of the Bankruptcy Court following litigation on the merits of such claim(s) (and not based on a settlement, agreement or stipulation with the Debtors) shall not be taken into account or constitute an adverse effect for the purposes of clause (iii) of this section and (z) the refusal of Bankruptcy Court to include in the order confirming the Modified Plan a release and exculpation of the Creditor included in the Modified Plan shall not constitute an adverse effect for the purposes of clause (iii) of this section; (iv) the Bankruptcy Court declines to approve the Modified Disclosure Statement or denies confirmation of the Modified Plan; *provided* that Creditor shall not have the right to terminate this Agreement pursuant to this clause (iv) if the Bankruptcy Court declines to approve the Modified Disclosure Statement or denies confirmation of the Modified Plan subject only to modifications to the Modified Disclosure Statement or Modified Plan that would not otherwise provide the Creditor with a right to terminate this

Agreement; (v) an order approving the Modified Disclosure Statement  shall not have been entered by the Bankruptcy Court on or before October 31, 2011; (vi) an order confirming the Modified Plan, in form and substance reasonably satisfactory to Creditor, shall not have been entered by the Bankruptcy Court on or before February 29, 2012; *provided* that the refusal of Bankruptcy Court to include in the confirmation order the release and exculpation of the Creditor included in the Modified Plan shall not be a reasonable basis for Creditor to assert the order is not satisfactory; (vii) the Modified Plan shall not have become effective on or before March 31, 2012; (viii) there shall have been issued a final order, decree, or ruling by any court or governmental body having jurisdiction, that after appeals have been exhausted, restrains or enjoins the consummation of or renders illegal or unenforceable this Agreement or any of the transactions contemplated by this Agreement; (ix) after the date hereof, the Chapter 11 Cases of any of the Debtors shall have been dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or there shall have been appointed an independent trustee in the Chapter 11 Cases; (x) upon termination of supporting PSA's by at least 50% in number and 66 2/3% in amount of claims subject to such PSA's in the aggregate; (xii) by mutual agreement of the Debtors and the Creditor, in writing signed by each of the Debtors and the Creditor; and (xiii) an order approving the Sequencing Stipulation, which order is reasonably satisfactory to Creditor, is not entered by the Bankruptcy Court on or before July 30, 2011.  The Creditor shall provide the Debtors with written notice of the occurrence of a termination of this Agreement pursuant to this Section 4.03 no later than two (2) business days after such occurrence, provided that the failure to provide such notice shall not affect the termination of this Agreement.

**Section 4.04.**  Termination Upon Effective Date of Modified Plan.  Upon the occurrence of the Effective Date of the Modified Plan, the Parties hereto shall not have any further obligations under this Agreement; *provided* that, Creditor shall remain bound by its obligations in Section 1.02 and 2.03(b) until the earlier of (i) expiration of the period for filing appeals of the order confirming the Modified Plan and (ii) a final order has been entered in connection with any appeal an order confirming the Modified Plan.

**Section 4.05.**  Effect of Termination.  In the event that this Agreement is terminated in accordance with its terms, then (i) nothing in this Agreement shall constitute an admission by either Party or shall be used, referred to or have any probative value in any proceeding, (ii) this Agreement shall not have any *res judicata* or collateral estoppel effect or be of any force or effect, (iii) each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, and (iv) the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto are without waiver of or prejudice to the Parties' rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.  The Parties further agree and represent that, in the event of a termination of this Agreement by any Party, neither this Agreement nor any statements made or actions or inactions taken in connection with this Agreement shall be referenced, or offered into evidence, in any proceeding, including but not limited to the Chapter 11 Cases, except to enforce the Agreement according to its express terms.

## ARTICLE V

### Effectiveness of Agreement

The rights and obligations of the Parties set forth in this Agreement are expressly conditioned upon the execution of Supporting Creditor PSAs, substantially identical to this Agreement, between the Debtors and each of the Supporting Creditors identified on <u>Exhibit B</u>; and this Agreement shall be effective and binding only upon the execution of Supporting Creditor PSAs by each of the Supporting Creditors (the date upon which such condition is satisfied, the "<u>Effective Date</u>"); *provided* that, Creditor's obligation set forth in Section 1.02(ii) is explicitly subject to the approval by the Bankruptcy Court of the Modified Disclosure Statement and its transmittal to creditors and other parties in interest.

## ARTICLE VI

### Notices

All notices and other communications given or made pursuant to this Agreement shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

<u>To the Debtors at:</u>
1271 Avenue of the Americas, 39th Floor
New York, New York 10020
Attn: Daniel J. Ehrmann
Facsimile: (646) 834-0874
Email: dehrmann@alvarezandmarsal.com

With a copy (which shall not constitute notice) to:
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Harvey R. Miller, Esq. and
        Lori R. Fife, Esq.
Facsimile: (212) 310-8007
Email: harvey.miller@weil.com
        lori.fife@weil.com

<u>To the Creditor at:</u>
_____
_____
_____
Attn:
E-Mail:

With a copy (which shall not constitute notice) to:

9

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Attn: Gerard Uzzi, Esq.
E-Mail: guzzi@whitecase.com

or to such other address as may have been furnished by a Party to the other Party by notice given in accordance with the requirements set forth above.  Any notice given by delivery, mail or courier shall be effective when received.  Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

## ARTICLE VII

Section 7.01.  Entire Agreement.  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

Section 7.02.  No Oral Modifications.  This Agreement may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of either Party must be provided in a writing signed by the other Party.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

Section 7.03.  Participation in Chapter 11 Cases.  Nothing in this Agreement shall limit in any way the right of Creditor to participate in the Debtors' Chapter 11 Cases; *provided* that such participation does not violate and is not inconsistent with the terms of this Agreement.  If the transactions contemplated by this Agreement or in the Modified Plan are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.

Section 7.04.  Binding Effect; Successor and Assigns; No Third Party Beneficiaries.  Except as provided in Article III hereof, this Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided, however*, that, except as provided in Article III hereof, no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void ab initio.  The parties to Other PSAs shall be third-party beneficiaries solely with respect to Section 2.03(b) hereof.  Other than as set forth in the preceding sentence, no other person or entity shall be deemed to be a third party beneficiary of this Agreement.

Section 7.05.  Counterparts.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one

agreement.  The signatures of each of the Parties need not appear on the same counterpart.  A facsimile or imaged copy of any signature shall be as valid as the original.

Section 7.06.  Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to either of the parties hereto.  Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

Section 7.07.  Waiver of Jury Trial.  EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 7.06 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

Section 7.08.  Jurisdiction.  This Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to its conflicts of law principles.  Any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or under this Agreement is expressly and irrevocably waived.  Any suit, action or proceeding against the Debtors or Creditor or any of their respective assets arising out of or under this Agreement shall be brought in the Bankruptcy Court, and we and you hereby irrevocably and unconditionally submit to the exclusive jurisdiction of such court over the subject matter of any such suit, action, proceeding, dispute or controversy arising from or under this Agreement.

We and you irrevocably waive and agree not to raise any objection we or you might now or hereafter have to venue or jurisdiction with respect to any such suit, action or proceeding with respect to this Agreement including any objection that the Bankruptcy Court is an inconvenient forum or that there is any other suit, action or proceeding in any other place relating in whole or in part to the same subject matter.

　　　　　IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

**LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC,** as Debtors and Debtors in Possession

By: _____
Name:
Title:

*CREDITOR:* _____

By: _____
Name:
Title:

**LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L.,** as Debtors and Debtors in Possession

By: _____
Name:
Title:

## Exhibit A

Claims

## Exhibit B

## Supporting Creditors

Canyon Capital Advisors LLC
Fir Tree, Inc.
Paulson & Co. Inc.
Taconic Capital Advisors L.P.

## Exhibit C

Modified Plan

## **Exhibit D**

Modified Disclosure Statement

**<u>Exhibit E</u>**

Form of Joinder

## **Exhibit F**

Stipulation