HEARING DATE AND TIME: July 21, 2011 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY TO CERTAIN
RESPONSES TO DEBTORS' FORTIETH AND FORTY-FIRST
OMNIBUS OBJECTIONS TO CLAIMS (LATE-FILED CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), file this omnibus reply (the "Reply") to certain responses received opposing the (i) Debtors' Fortieth Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 11305] and (ii) Debtors' Forty-First Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 11306] (collectively, the "Omnibus Objections")[1] and respectfully represent as follows:

**I.    PRELIMINARY STATEMENT**

1.    The Bar Date Order (as defined below) required that in order for claims to be considered timely-filed, they must have been actually received on or before the applicable

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Omnibus Objections.

deadline. The claims included on Exhibit A[2] (the "Late-Filed Claims") were received after the applicable Bar Date (as defined below), and therefore, should be expunged and disallowed.

2. The Late-Filed Claims were mailed by Claimants in Canada four calendar days prior to the Bar Date. Based on the Debtors' review of information concerning the delivery period for mail from Canada, the Claimants could not have reasonably expected that the Late-Filed Claims would be delivered to the Debtors prior to the Bar Date. The Claimants do not argue that they are entitled to relief pursuant to Bankruptcy Rule 9006(b), but rather merely state they mailed the Late-Filed Claims prior to the applicable deadline. Notwithstanding that the Claimants did not raise such arguments, for the reasons set forth herein, the Claimants cannot satisfy the "hard line" application of the "excusable neglect" standard followed by the Second Circuit and by this Court in these chapter 11 cases.

3. This Court entered an order on June 2, 2009 [Docket No. 4271] (the "Bar Date Order"), establishing (i) September 22, 2009 (the "Bar Date") as the deadline for filing claims against the Debtors based on prepetition claims and (ii) the procedures for the filing of such claims. Despite clear language in the Bar Date Order warning that failure to timely file a claim would result in their claims being barred, the Claimants submitted untimely claims.

4. The Debtors received formal and informal responses to the Omnibus Objections representing over 300 claims. The responses assert a variety of reasons why the untimeliness of the Late-Filed Claims should be excused. The vast majority of excuses relate to

---

[2] Exhibit A lists the holder of each Late-Filed Claim (the "Claimant"), its claim number, the date the claim was postmarked, the date the claim was received, the country of origin, and the method of mailing.

the time that the mail was in transit, particularly with regard to international mail. Through this Reply, the Debtors reply to the eight responses (the "Responses") filed by the Claimants.[3]

## II.    ARGUMENT

### A.    The Second Circuit Strictly Enforces Bar Dates and Sets a High Bar for Excusable Neglect

5.    As this Court has recognized, "bar dates are critically important to the administration of a successful chapter 11 case." *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (internal quotations omitted). A bar date enables debtors to determine with reasonable promptness, efficiency, and finality what claims will be made against their estates—a determination without which they cannot effectively reorganize. *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995); *Florida Dept. of Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993) ("The bar order by forcing creditors to make known their claims against the estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a reorganization plan can be developed.") (internal quotations omitted). Bankruptcy Rule 9006(b) vests the decision to extend the bar date "squarely within the discretion of the bankruptcy judge." *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1008.

6.    Bankruptcy Rule 9006(b)(1) provides that "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Supreme Court, in interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to

---

[3] This Reply only addresses the Responses listed on Exhibit A. The Debtors reserve their right to file reply briefs responding to all other responses received in opposition to the Omnibus Objections.

esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and more commonly, omissions caused by carelessness." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 388 (1993). The determination of whether a claimant's neglect of a deadline is *excusable*, according to *Pioneer*, however, is an equitable determination in which a court should consider all relevant circumstances surrounding the claimant's omission, such as: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

       7.     In applying the *Pioneer* factors to determine whether a late-filed proof of claim was the result of "excusable neglect," the Second Circuit has taken a "hard line" approach that does not give the four factors equal weight. *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005); *In re Lehman Bros. Holdings Inc.*, 433 B.R. at 119-20. The third *Pioneer* factor—the reason for the delay in filing, including whether the cause of such delay was within the reasonable control of the claimant—is the most critical. *See Enron*, 419 F.3d at 122-24. The Second Circuit has noted that the reason for this approach is that the other factors delineated in *Pioneer*—prejudice, length of delay and impact on judicial proceedings, and the claimant's good faith—will typically weigh in favor of the claimant, and the court will therefore focus on the reason for the delay in filing. *Id.* at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003).).

       8.     This Court has followed the Second Circuit's "hard line" approach in applying the *Pioneer* factors in deciding ten prior motions in this case and granting the Debtors' Forty-First, Forty-Second, and Forty-Third Omnibus Objections (Late-Filed Claims and Late-Filed Lehman Programs Securities Claims) on a contested basis as to certain claims. Only on two

occasions, where "creditors consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims," did this Court find the existence of excusable neglect. *In re Lehman Brothers Holdings Inc.*, 433 B.R. at 127. On the other occasions, this Court found that the delay in filing the late claims was within the control of the various claimants and that the "reasons offered by the Movants demonstrate a lack of care or thoughtful attention to the preparation and filing of their proofs of claim." *Id.* The Court should follow its prior decisions and overrule the Responses which allege mere "neglect"—not "excusable neglect"—on the part of the claimants in failing to timely file their claims.

9. The *Pioneer* factors, particularly the reason for Claimants' delay in filing their Claims, the prejudice to the Debtor, and the length of the delay, weigh heavily in favor of the Debtors.

**B.    The Omnibus Objections Should Be Granted
        Because the Claimants Cannot Demonstrate Excusable Neglect**

10. The burden of establishing excusable neglect is squarely on the Claimants, not the Debtors or the Court. *In re Enron Corp.*, 419 F.3d at 121 ("The burden of proving excusable neglect lies with the late-claimant."). The Claimants do not argue that the circumstances surrounding the Late-Filed Claims warrant relief pursuant to Bankruptcy Rule 9006(b), or provide any analysis in support of "excusable neglect" to satisfy their burden.

11. The only argument asserted by the Claimants that their Late-File Claims should be deemed timely-filed is that they mailed their proofs of claims prior to the Bar Date. Contrary to such assertions, postmarking the Late-Filed Claims prior to the Bar Date does not satisfy the Bar Date Order. Pursuant to the Bar Date Order, "[p]roofs of Claim will be deemed timely-filed only if **actually received** by Epiq or the Court on or before the Bar Date." (Bar Date

Order at 3 (emphasis in original).) Similarly, the Bar Date Notice warned, in bold and underlined font, that claims would only be considered timely if **actually received** on or before the Bar Date. (Bar Date Notice at 3.) The Bar Date Notice was widely disseminated.

12. The provisions of the Bar Date Order and the Bar Date Notice were clear and unambiguous. Each stated, in no uncertain terms, that claims would only be deemed timely if *actually received* on or before the Bar Date. Notwithstanding such fact, Claimants have "fail[ed] to follow the clear dictates of a court rule," and they should not be permitted to have their late-filed claims deemed timely simply because they mailed their claim on or before the Bar Date. *See In re Enron Corp.,* 419 F.3d at 123.

13. While the Supreme Court in *Pioneer* recognized that courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control," *Pioneer*, 507 U.S. at 388, 391, the Second Circuit has applied a strict standard in determining whether inadvertence or mistake amounts to excusable neglect, noting that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and … where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." *In re Enron Corp.*, 419 F.3d at 123, 126 (internal quotations omitted).

14. While time in transit can, in some circumstances, constitute excusable neglect, here the facts do not rise to the level of excusable neglect. *See, e.g.*, *In re Bicoastal Corp.*, 136 B.R. 288, 290 (Bankr. M.D. Fla. 1990) (finding excusable neglect where claimant contracted for delivery of proof of claim by specific date, but due to extreme weather conditions, delivery service failed to timely deliver the proof of claim). When, as here, the reason for the late claim is that a claimant waited until too close to the bar date and selected the slowest method of

delivery, courts have not hesitated to prohibit the late-filed claim. *See, e.g.*, *Kmart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004); *In re Diggs*, 220 B.R. 247, 252 (Bankr. M.D.N.C. 1998).

15. It was Claimants' responsibility to mail the Claims sufficiently in advance of the Bar Date to insure that the Late-Filed Claims were received timely. The failure to do so is mere carelessness that was within the control of Claimants and thus does not satisfy the requirements for excusable neglect. *See In re Yankee Distrib. Co., Inc.*, 53 B.R. 222, 223-24 (D. Vt. 1985) (denying motion to have claim that was one day late deemed timely on basis that claimant was responsible for late-filing due to misplaced reliance on postal system to deliver claim timely). For example, in *Kmart*, the claimant's attorney waited until the day before the bar date to mail the claim, and entrusted the claim to a clerk. *Kmart*, 381 F.3d at 712. The clerk, either due to oversight or because the post office could not guarantee next day delivery, checked the box for Second Day Delivery, thereby causing the claim to be delivered on the day after the bar date. *Id.* The Court held that by waiting until the last possible moment to mail the claim and failing to follow up with the clerk, the claimant could not establish excusable neglect. *Id.* at 715. Similarly, in *Diggs*, the court noted that because the claimant waited until the day before the claim was due to mail it and used first class mail, rather than an overnight mail service to ensure compliance with the bar date, the reason for the delay was within the reasonable control of the movant. *Diggs*, 220 B.R. at 250-52.

16. Here, as detailed on Exhibit A, each of the Claimants mailed his Late-Filed Claim(s) from Canada only four calendar days before the Bar Date using first class mail, which is the slowest type of mail and has no guarantee of delivery within any particular timeframe. The Canadian Post Office's delivery guidelines state that mail from Canada to the United States is expected to arrive between four and six *business* days after mailing. The Canadian Post Office

does not state that these are guaranteed time frames for delivery.  (*See* Canada Post Delivery Standards, attached hereto as Exhibit B, *available at* http://www.candapost.ca/cpo/mc/personal/productservices/send/lettersdocuments.jsf).  The Bar Date occurred on a Tuesday, and therefore the Claimants waited to mail the Late-Filed Claims until two business days before the deadline.  Thus, it was not reasonable for the Claimants to believe that the Late-Filed Claims would arrive timely.

          17.     Moreover, the untimeliness of the Late-Filed Claims was squarely within Claimants' control and occurred as a result of Claimants' delay in mailing the Late-Filed Claims and their choice to use the slowest delivery option.  Despite the requirement that claims be *actually received* prior to the Bar Date, the Claimants delayed mailing the Late-Filed Claims until four calendar days (two business days) prior to the Bar Date using Canada's regular mail system.  Claimants elected not to use any priority or express designation, or any overnight services such as FedEx, DHL, or UPS.  Accordingly, the reason for the tardiness of the Late-Filed Claims weighs strongly against a finding of excusable neglect.

### C.    Allowing the Claims Will Prejudice These Estates

          18.     "Prejudice" includes not only the harm to the debtor but also the adverse impact that a late claim may have on the judicial administration of the case, considering the size of the late claim in relation to the estate.  *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1007; *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995).  More than 67,000 claims have been filed against the Debtors.  Enforcement of the Bar Date is critical for the Debtors to manage the enormous task of processing the claims and to proceed with reorganization.  The Debtors' employees and advisors have spent significant amounts of time analyzing the claims, and the Debtors have filed a proposed reorganization plan and disclosure statement.  This Court has already determined that in these

cases "the enormity of the claims allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented setting" and therefore, a "strict application of the Bar Date Order is needed to effectively manage the claims process and that permitting additional claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors." *In re Lehman Brothers Holdings Inc.*, 433 B.R. at 121.

19. While Claimants may argue that the Debtors will not be prejudiced by acceptance of the Late-Filed Claims because "it's only one claim" or because the dollar value is relatively small, this argument should be rejected. It ignores the cumulative effect that permitting the Late-Filed Claims will have on the estate. Permitting exceptions to the Bar Date does not impact "only one claim" and could have a significant economic impact on the estates, including the distributions available to creditors that exercised proper diligence in filing their claims. As this Court has recognized, "[t]he prejudice to the Debtors is not traceable to the filing of any additional single claim but to the impact of permitting exceptions that will encourage others to seek similar leniency." *Id.* at 121.

20. The status of these chapter 11 cases also confirms the prejudice that Debtors will suffer if the Late-Filed Claims are allowed to proceed. The Debtors filed their second amended chapter 11 plan and disclosure statement on June 30, 2011. The filing, in and of itself, of a chapter 11 plan and disclosure statement is a factor that is considered when determining whether a debtor will be prejudiced. *See In re Keene Corp.*, 188 B.R. at 910. The Debtors have spent significant amounts of time and effort negotiating the chapter 11 plan as well as reviewing and objecting to claims. If Claimants are granted leniency on the basis of excusable neglect, then holders of other late-filed claims will seek similar relief. A sudden increase in claims at this time would disrupt the orderly administration of the Debtors' estates.

#### D. The Length of Delay Factor

21. The Late-Filed Claims were received between seven and eight days after the Bar Date. Although the Debtors recognize that the length of delay as to certain Late-Filed Claims was minimal, Claimants never filed a motion with the Court seeking relief under Bankruptcy Rule 9006(b). It was only after the Debtors filed the Omnibus Objections, almost a year after the Bar Date, that these parties raised any argument that their Late-Filed Claims should be deemed timely-filed. If parties are permitted to claim excusable neglect at this stage in the proceeding, then the purpose and effect of the Bar Date will have been diluted. Accordingly, this *Pioneer* factor weighs in favor of the Debtors.

#### E. The Good Faith Factor

22. The Debtors have no evidence that Claimants acted in bad faith when they claimed excusable neglect. However, as discussed above, this factor typically weighs in favor of the party moving to file a late claim and hardly counterbalances the other three *Pioneer* factors which weigh in the Debtors' favor, particularly the "reason for delay" factor, discussed above, which the Second Circuit has deemed to be the most relevant and critical in the equitable determination of whether a movant's neglect is excusable. *See In re Enron Corp.*, 419 F.3d at 122-24.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above and in the Omnibus Objections, the Debtors respectfully request that the Court enter an order disallowing and expunging the Late-Filed Claims in their entirety and grant such other and further relief as the Court may deem just and appropriate.

Dated: July 18, 2011
      New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

# EXHIBIT A

| Claimant Name | Claim Number | Omnibus Objection | Response Docket Number | Date Mailed | Date Received | Country of Origin | Type of Mail |
|---|---|---|---|---|---|---|---|
| Garadex Inc. | 35514 | 40 | 12195 | 9/18/09 | 9/29/09 | Canada | First Class |
| Garadex Inc. | 35516 | 40 | 12099 | 9/18/09 | 9/29/09 | Canada | First Class |
| Garadex Inc. | 35517 | 40 | 12193 | 9/18/09 | 9/29/09 | Canada | First Class |
| Garadex Inc. | 35520 | 40 | 12097 | 9/18/09 | 9/29/09 | Canada | First Class |
| Garadex Inc. | 35844 | 40 | 12191 | 9/18/09 | 10/1/09 | Canada | First Class |
| Gatex Properties, Inc. | 35518 | 40 | 12098 | 9/18/09 | 9/29/09 | Canada | First Class |
| Gatex Properties, Inc. | 35519 | 41 | N/A | 9/18/09 | 9/29/09 | Canada | First Class |
| Gatex Properties, Inc. | 35849 | 41 | 12096 | 9/18/09 | 10/1/09 | Canada | First Class |

# EXHIBIT B



# Send Letters and Documents

**Everything you need to know about sending mail within Canada, to the U.S.A. and internationally.**



**Stamp prices (up to 30 g):**

Within Canada: $0.59
To the U.S.A. : $1.03
Internationally: $1.75

## What is a letter?

Letters include items such envelopes, greeting cards, postcards, bills, specialty stationery, legal documents, magazines, and brochures that fall within certain size and weight requirements.

## Specifications

<u>View specifications for letters within Canada.</u>

<u>View specifications for letters to the U.S.A. and internationally.</u>

## When will your letter get there?

| Within Canada (*Lettermail*™) | U.S.A. and International* (Letter-post) |
|---|---|
| Local - 2 business days | U.S.A. - 4 to 6 business days |
| Within a province - 3 business days | International - 4 to 7 business days |
| National - 4 business days | |

* From major Canadian centres
Note: These service standards do not apply to Northern Regions and remote centres or to redirected or returned items.

## Rates & prices

**Canada - *Lettermail***

| Standard | | Non-standard and Oversize | | | | |
|---|---|---|---|---|---|---|
| Up to 30 g | Over 30 g up to 50 g | Up to 100 g | Over 100 g up to 200 g | Over 200 g up to 300 g | Over 300 g up to 400 g | Over 400 g up to 500 g |
| $0.59 | $1.03 | $1.25 | $2.06 | $2.85 | $3.25 | $3.50 |
| **Medium*** | | | | | | |
| Up to 20 g | Over 20 g up to 50 g | | | | | |
| $1.03 | $1.18 | | | | | |

* Medium Lettermail is only available to consumers

**U.S.A. and International – Letter-post**

| Standard | | | Non-standard and Oversize | |
|---|---|---|---|---|
| **U.S.A.** | | | | |
| Up to 30 g | Over 30 g up to 50 g | Up to 100 g | Over 100 g up to 200 g | Over 200 g up to 500 g |
| $1.03 | $1.25 | $2.06 | $3.60 | $7.20 |
| **International** | | | | |
| Up to 30 g | Over 30 g up to 50 g | Up to 100 g | Over 100 g up to 200 g | Over 200 g up to 500 g |
| $1.75 | $2.50 | $4.10 | $7.20 | $14.40 |

Calculate postage now with **Find a Rate**.

## Where to buy postage

From our online shop. **Buy now**
At a **Post Office** near you

# Get proof of mailing with Registered Mail

When you add Registered Mail as an option to your *Lettermail* or Letter-post items, you get:

A receipt as proof of mailing.
A signature upon delivery. (*Lettermail only*)
Coverage for loss or damage.
Delivery confirmation online or by phone the next business day after delivery. (*Lettermail only*)

| Registered Mail | Price |
|---|---|
| Within Canada | $8.10 (plus applicable *Lettermail* postage) |
| To the U.S.A. and internationally | $13.95 (plus applicable Letter-post postage) |

Read the fine print about Registered Mail:

**Within Canada**
**To the U.S.A. and internationally**

## Prepaid envelopes—buy now, ship anytime

These postage paid, flat-rate envelopes are ideal if you frequently ship documents and small items.
Available for *Priority*™ Next A.M. and *Xpresspost*™ services.
Ship documents and small items within Canada.
Ship documents to the U.S.A. and internationally.

**Read more about prepaid envelopes**
**Buy prepaid envelopes online now**

## In a hurry? Need a signature or to track your item?

Check out our *Priority* Next A.M., *Priority* Worldwide, and our line of *Xpresspost* services. **Read more about these express services** or compare features and pricing with **Find a Rate**.

## Mailing tips

Is your item acceptable for mailing? Did you seal it properly? Read our **Mail and Parcel Preparation Guide** for all the answers, packing tips and more.

## What happens to undeliverable mail?

In Canada, all letters that are undeliverable are either:

Returned to the sender at no charge if a return address appears on the envelope, or

Forwarded to the correct address if a Change of Address Notification is in effect.

Where no return address is provided, our Undeliverable Mail Office opens the letter. If we find a return address within, we return it to the sender for a fee.

Letters bound for the United States and internationally that cannot be delivered or redirected are returned to the sender for free if a Canadian return address appears on the envelope.

## Support

Need help? **Contact us** and we'll gladly answer your questions.

### Now You Can

**Buy stamps and mailing supplies online**
**Find a Rate**
**Find a Post Office**
**Create your own stamps with**
*Picture Postage*™

© 2011 Canada Post Corporation

| Help | News Releases | Find a Postal Code | Personal Shop |
| Legal | Careers | Find a Rate | Collector's Shop |
| Privacy | I'm an Employee | Mail & Ship Online | Comparison Shopper |
| Contact Us | | Find a Post Office | |
| Website feedback | | Track | |

Canada