GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Katherine Stadler (*Pro Hac Vice*)

*Attorneys for the Fee Committee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **LEHMAN BROTHERS HOLDINGS, INC.** *et al.,* | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

# FEE COMMITTEE'S SUMMARY REPORT—FIFTH AND SIXTH INTERIM PERIOD APPLICATIONS FOR FEES AND EXPENSE REIMBURSEMENT

Beginning on January 24, 2011, the Fee Committee accelerated its efforts to review the pending applications for fees and expenses for professional services in these matters, the largest and most complex Chapter 11 proceedings in history. In May, the U.S. Bankruptcy Court entered a series of orders approving interim fee applications for the fifth interim period (February 1 – May 31, 2010) and, this month, the Court will be presented with a series of stipulated proposed orders covering fees and expenses for the sixth interim period (June 1 – September 30, 2010).

The more than 30 Retained Professionals (law firms, financial advisory firms, and accounting firms) subject to review all dealt with the Fee Committee in good faith, though not always in agreement. The audit and analysis of the sixth interim applications under the revised

Fee Committee protocol included a period of discussion and negotiation. The negotiations resulted in specific reductions in the amounts the Retained Professionals initially sought and initiated a dialogue that may eventually bring larger issues (and amounts) to the Court for resolution in subsequent applications. The Retained Professionals now have filed fee applications for the seventh interim period (October 1 through January 2011), and their review later this summer should bring the fee review process current with the substantive Chapter 11 proceedings involving disclosure statement approval--with a hearing scheduled for August 30, 2011--and plan confirmation.

## BACKGROUND

There is no need to recount the history that brought the Debtors into Chapter 11 or the events that have followed. Since September 15, 2008 (the "Petition Date"), the Debtors and the Creditors' Committee, combined, have retained approximately 30 professional firms—not only to provide legal and financial advice but, in essence, to manage the billion-dollar, multi-national, multi-dimensional corporation in the interests of its creditors and, to the extent consistent with the U.S. Bankruptcy Code, its equity holders and other interested parties. These interested parties include some of the largest financial companies and pension funds in the world.

Through September 30, 2010, and six interim fee periods, the Retained Professionals collectively have sought interim court approval for $691,517,999.58 in fees for professional services and $28,117,926.72 in expense reimbursements. This amount does not include the Debtors' payments to Alvarez & Marsal Holdings LLC, retained at the beginning of the cases to provide the Debtors with a Chief Restructuring Officer and additional personnel both to operate

the companies, day-to-day, and to develop and implement the Debtors' strategy for reorganization.[1]

Federal bankruptcy law, the local rules established by the Bankruptcy Court, and the U.S. Trustee fee guidelines establish the framework for fee review and approval. While some areas of uncertainty remain, the challenge in a case of this unprecedented size and scope is not discerning the rules but applying them—consistently, fairly and practically—to more than a billion dollars in fees and expenses requested through thousands of pages of applications.

The Court appointed a Fee Committee with an order entered on May 26, 2009. The Fee Committee's mission, among other things, is to monitor, review, and object if necessary to applications for fees and expenses—in short, to establish measures to help the Court ensure the reasonableness of professional fees and expenses under the Bankruptcy Code and all applicable rules and guidelines. The Fee Committee's appointment did not change, nor could it change, the statutory responsibility of the United States Trustee and the Court for fee review and approval. From its inception, the Fee Committee has consisted of one representative each for the Debtors, the Creditors' Committee and the U.S. Trustee. The order establishing the Fee Committee—and the subsequent fee protocols—also provide for an independent chairman, procedures and timelines. On January 24, 2011, the Court appointed a new chairman for the Fee Committee, Richard Gitlin.

### REVIEW PROCESS

In 2011, so far, the Fee Committee already has met ten times, most often in person, but occasionally by telephone. Reconstituted, the Committee adopted and the Court approved new protocols (the "Amended Fee Protocol") for fee review and resolution— favoring an

---

[1] Pursuant to the Court's Monthly Compensation Order, the Retained Professionals generally have received each month on an interim basis 80 percent of the amounts they have invoiced for their services and 100 percent of their expenses—all subject to adjustment, objection and Court approval.

3

application-by-application process rather than retaining some of the across-the-board policies that had been in use.

The Fee Committee also has reinstituted a budget process that, with the cooperation of the Retained Professionals, will provide both benchmarks and projections for fees to be incurred. To complement the budget process, the Fee Committee has initiated meetings with the Debtors' management team and Creditors' Committee representatives to discuss internal supervision and co-ordination of each of their Retained Professionals and the management of the fee process.

The fee review process for the sixth interim period began, as it had for earlier compensation periods, with a data audit by BrownGreer, a Richmond firm retained by the Debtors when the Fee Committee was appointed. BrownGreer reviewed the applications for accuracy and quantitative inconsistencies. The Fee Committee's counsel, Godfrey & Kahn, S.C., retained with Court approval contemporaneously with the new chairman's appointment, then analyzed the applications virtually line-by-line. The Fee Committee sent each firm a letter report, consistent with the Amended Fee Protocol, raising questions, outlining concerns and defining differences concerning interpretation and application of the Bankruptcy Code, Amended Guidelines, the U.S. Trustee Fee Guidelines, and applicable caselaw. Wherever possible, the Fee Committee negotiated a resolution.

The Fee Committee also has reviewed each professional's compensation-related disclosures. It has sought, where necessary, additional information to obtain clarification and disclosure of any compensation arrangements, particularly when the professional may be compensated in part by non-Debtors and other non-parties-in-interest.

With rare exceptions, the discussions about fees—and the changes in the Amended Fee Protocol that preceded those discussions—were professional. The Fee Committee reviewed, for

4

the sixth interim fee period, roughly $106 million in billed fees and $3 million in expenses. That process has resulted in at least $1.14 million in reductions in the amounts sought, and it has avoided, at least initially, the need for contested hearings. The Fee Committee believes that these negotiations also are likely to lead over time to greater efficiency, reasonableness of fees and fee reductions. Based on stipulations between the Fee Committee counsel and the Retained Professionals, the Court will be asked later this month to enter orders awarding specific fees and out-of-pocket expenses on an interim basis, pending final review at the end of these cases.

With respect to fees and expenses for the fifth interim period, the Fee Committee did not try to reassess the analysis done in the fall of 2010, which had not come to a conclusion. Rather, with the Fee Committee and the Retained Professionals reserving all of their rights on issues of principle, the Fee Committee reached agreements with the Retained Professionals on amounts not in dispute and, working cooperatively, the Fee Committee submitted proposed orders that the Court ultimately entered approving these interim allowances and payment. The Fee Committee has yet to determine an appropriate standard or methodology for reviewing, retrospectively, the significant and varied open issues from the first through fifth interim periods.

## ISSUES

The resolution of disputed amounts for either the sixth or the fifth interim periods did not, by any measure, resolve the substantive issues on which Retained Professionals and the Fee Committee differed and continue to differ. Across the range of Retained Professionals, there were significant variations in the quality of the applications and their compliance with the Bankruptcy Code, the local rules, and the U.S. Trustee fee guidelines.

Some applications were plagued by vague work descriptions, imprecise time-keeping that resulted in block billing, "rounded" time records, and expense reimbursement requests that did not comply with the plain language of the U.S. Trustee's or the Court's own guidelines. In

5

those instances, the Fee Committee recommended reductions, ranging from nominal to 50 percent, of the fees sought in a particular category.  In response to concerns about vague entries, many Retained Professionals supplemented their time detail or provided more comprehensive explanations for the work done.  Some of the Fee Committee's expressed concerns, involving the precision of time-keeping and the vagueness of entries, led to significant negotiated reductions by the Retained Professionals with regard to the amounts ultimately sought for approval.

The amount of time spent by firms on maintaining, reviewing and editing time records and then conforming them appropriately to include in a fee application varies remarkably--from firm to firm and application to application.  The Fee Committee generally has questioned, and will continue to question, compensation for time spent conducting the daily and monthly billing activities ethically and practically required of every professional—inside or outside of the bankruptcy process.  The Fee Committee also directed particular attention to multiple Retained Professionals from the same firm attending the same meeting or hearing with little or no explanation of the need for or the role of each timekeeper at the particular meeting or hearing.

Since the Petition Date, soon to reach its third anniversary, most of the Retained Professionals have unilaterally increased hourly rates from the rates initially approved by the Court, some Retained Professionals markedly so.  Although the Fee Committee has not yet taken a formal position on rate increases, the Fee Committee has noted, in its letter reports to Retained Professionals, some of those rate increases and has commenced a comprehensive analysis of all rate increases.

The Court has not yet decided any contested issues involving fees and expenses.  It has not been asked by any party to do so formally, and neither the Retained Professionals nor any interested parties (including the Fee Committee) have waived or conceded any points of

principle that underlie fee discussions, quantitative compromises, or disagreements.  The law in the Southern District of New York has not changed appreciably since the outset of the proceedings—though several decisions in other matters have added guidance on recurring questions.  *See*, *e.g.*, *Mesa Air Group, Inc.,* No. 10-10018 (MG), 2011 WL 2028519 (Bankr. S.D.N.Y. May 25, 2011); *In re CCT Commc'ns, Inc.*, No. 07-10210 (SMB), 2010 WL 3386947 (Bankr. S.D.N.Y. 2010 Aug. 24, 2010).  The law, no doubt, will continue to develop as the Fee Committee and the Court address fee questions on a magnitude and of a kind not previously contemplated by Congress or anyone else that has played a role in shaping the law.

## CONCLUSION

The Fee Committee's restated goal is to develop and implement, consistently and fairly, a process that helps the Court meet its statutory obligation to review and approve fees.  In any Chapter 11 proceeding—but, notably, this one—Retained Professionals ought to be paid regularly but appropriately for the indispensable work they perform.  They should not be paid for services that are unreasonable or, judged at the time they were provided, unnecessary or unproductive.  Drawing that line remains the challenge for everyone involved in the process.

[Remainder of this page intentionally left blank.]

Dated: Madison, Wisconsin
       July 18, 2011.

                                      GODFREY & KAHN, S.C.

By:    /s/ *Katherine Stadler*
Katherine Stadler
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com

*Attorneys for Fee Committee*

6477576_8

8