# **Exhibit B**

1   Richard M. Pachulski (CA Bar No. 90073)
    Dean A. Ziehl (CA Bar No. 84529)
2   Robert B. Orgel (CA Bar No. 101875)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
4   Telephone: 310/277-6910 / Facsimile:  310/201-0760

5   Edward Soto (admitted *pro hac vice*)
    Alfredo R. Perez (admitted *pro hac vice*)
6   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
7   New York, NY  10153-0119
    Telephone:  (212) 310-8000 / Facsimile:  (212) 310-8007
8
9   Attorneys for Lehman Commercial Paper Inc and Lehman
    ALI, Inc.

10
11              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
                       **SANTA ANA DIVISION**
12
13  In re:                              Case No.: 8:08-bk-17206-
    Palmdale Hills Property, LLC, and its   ES
    Related Debtors,                    Chapter 11
14                        Jointly
                          Administere    Jointly Administered Case
15                        d Debtors      Nos.
                          and Debtors-   8:08-bk-17209-ES; 8:08-
16                        In-            bk-17240-ES;
                          Possession     8:08-bk-17224-ES; 8:08-
17  _____         bk-17242-ES;
                                         8:08-bk-17225-ES; 8:08-
18  Affects:                            bk-17245-ES;
    ☐  All Debtors                       8:08-bk-17227-ES; 8:08-
19  ☑  Palmdale Hills Property, LLC      bk-17246-ES;
    ☑  SunCal Beaumont Heights,          8:08-bk-17230-ES; 8:08-
20  LLC                                  bk-17231-ES;
    ☐  SCC/Palmdale, LLC                 8:08-bk-17236-ES; 8:08-
21  ☑  SunCal Johannson Ranch,           bk-17248-ES;
    LLC                                  8:08-bk-17249-ES; 8:08-
22  ☑  SunCal Summit Valley, LLC         bk-17573-ES;
    ☐  SunCal Emerald Meadows,           8:08-bk-17574-ES; 8:08-
23  LLC                                  bk-17575-ES
    ☑  SunCal Bickford Ranch, LLC        8:08-bk-17404-ES; 8:08-
24  ☑  Acton Estates, LLC                bk-17407-ES;
    ☑  Seven Brothers, LLC               8:08-bk-17408-ES; 8:08-
25  ☐  SJD Partners, Ltd.                bk-17409-ES;
    ☐  SJD Development Corp.             8:08-bk-17458-ES; 8:08-
26  ☑  Kirby Estates, LLC                bk-17465-ES;
    ☑  SunCal Communities I, LLC         8:08-bk-17470-ES; 8:08-
27  ☑  SCC Communities LLC               bk-17472-ES;
    ☐  SunCal Communities III, LLC       and 8:08-bk-17588-ES
28  ☐  North Orange Del Rio Land,
    LLC                                  ~~*SECOND*~~*THIRD*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

☑ Tesoro SF, LLC
☐ LB/L-SunCal Oak Valley, LLC
☐ SunCal Heartland, LLC
☐ LB/L-SunCal Northlake, LLC
☐ SunCal Marblehead, LLC
☐ SunCal Century City, LLC
☐ SunCal PSV, LLC
☐ Delta Coves Venture, LLC
☐ SunCal Torrance Properties, LLC
☐ SunCal Oak Knoll, LLC

**AMENDED JOINT CHAPTER 11 PLAN FOR ELEVEN VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS**

**Hearing:**
Disclosure Hearing: July 22, 2011
Time:            10:00 a.m.

Confirmation Hearing:
        October 24, 2011
Time:            9:30 a.m.

Place:        Courtroom 5A
        411 West Fourth Street
        Santa Ana, CA 92701

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I INTRODUCTION .................................................................................................. 1
   1.1    Prefatory Statement. .................................................................................. 1
   1.2    Groupings, Process, Disclosure, Voting and Recommendation ................. 1
      1.2.1   Groupings of VD Plan Debtors ......................................................... 1
      (a)      Group I Debtors: ................................................................... 1
          (i)     Acton Estates, LLC; .................................................... 1
          (ii)    Palmdale Hills Property, LLC; ..................................... 1
          (iii)   SCC Communities, LLC; .............................................. 1
          (iv)   SunCal Bickford Ranch, LLC; and ............................... 1
          (v)    SunCal Communities I, LLC; ........................................ 1
          (vi)   SunCal Summit Valley, LLC; and ................................. 1
          (vii)  Tesoro SF, LLC; .......................................................... 1
      (b)      Group II Debtors: .................................................................. 1
          (i)     Kirby Estates, LLC; ..................................................... 2
          (ii)    Seven Brothers, LLC; ................................................... 2
          (iii)   SunCal Beaumont Heights, LLC; and ........................... 2
          (iv)   SunCal Johannson Ranch, LLC. ................................... 2
      1.2.2   Process. ............................................................................................ 2
      1.2.3   Special Voting / Election Procedures ................................................ 3
      (a)      Voting –General Unsecured Claims or Reliance Claims Against Any Group I Debtor. ................................................................ 3
      (b)      Voting / Election - Alleged Mechanic's Lien Claims against any Group I Debtor. .... 3
      1.2.4   Disclosure. ....................................................................................... 3
II DEFINITIONS AND RULES OF INTERPRETATION ....................................... 4
   2.1    Definitions. ................................................................................................ 4
   2.2    Rules of Construction. ............................................................................... 4
III PLAN OVERVIEW ........................................................................................... 5
   3.1    Background. ................................................................................................ 5
   3.2    Overview of Treatment of Claims and Relevant Agreements. .................... 6
      3.2.1   Lehman Plan Funding. ...................................................................... 6
      3.2.2   Bond-Backed Claims and Bond Issuer Settlement(s). ....................... 6
      3.2.3   Treatment of Non-Priority Unsecured Claims and Interests. ............. 8
      (a)      Amounts Payable for Class 6 Allowed Reliance Claims against Group I Debtors. .... 8
      (b)      Amounts Payable for Class 7 Allowed General Unsecured Claims against Group I ....................Debtors.9
      (c)      Timing of Payments after the Effective Date for Allowed Class 6 Claims and Allowed Class 7 Claims against Group I Debtors. .... 10
      (d)      Amounts Payable for Class 8 Allowed General Unsecured Claims against Group II Debtors. .................................................. 11
      (e)      Class 9 Settling Bond Issuer-Related Claims. .................... 12
      (f)      Class 10 Interests. .............................................................. 13
      3.2.4   Treatment of Secured Claims and Claims with Statutory Priorities. ... 13
      3.2.5   Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s) and the Lehman VD Lenders. .......................................... 17
IV TREATMENT OF UNCLASSIFIED CLAIMS .................................................. 17
   4.1    Treatment of Allowed Administrative Claims. .......................................... 18
      (a)      Treatment and Repayment of the Lehman Administrative Loan(s). .... 18
      (b)      Administrative Claim Bar Date. ........................................... 18
          (i)     General Administrative Claim Bar Date. ...................... 19
          (ii)    Administrative Tax Claim Bar Date. ............................ 19
   4.2    Treatment of Priority Tax Claims. ............................................................ 20
V CLASSIFICATION OF CLAIMS AND INTERESTS .......................................... 20
VI TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ......................... ~~36~~37

DOCS_LA:~~225266.21~~225266.24 52063-001

i

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.1     Treatment of Allowed Secured Real Property Tax Claims (Class 1). ....................... 3637
    6.1.1   Voting and Impairment. ...................................................................... 3637
    6.1.2   Liens. ........................................................................................... 3637
    6.1.3   Distributions and Distribution Dates. .................................................. 3738
        (a)     Lump Sum Cure Payment - Section 1124(2) Unimpairment............... 3738
        (b)     Quarterly Payments. ................................................................ 3738
        (c)     Simple Unimpairment. ............................................................. 3839
        (d)     Determination of Applicable Treatment. ...................................... 3839
6.2     Treatment of Lehman Secured Claims (Class 2). .............................................. 3840
    6.2.1   Voting. ......................................................................................... 3940
    6.2.2   Liens............................................................................................ 3940
    6.2.3   Claims. ......................................................................................... 3940
    6.2.4   Disposition of Collateral ................................................................. 3940
6.3     Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3). ................... 4041
    6.3.1   Voting and Impairment. ................................................................... 4041
    6.3.2   Liens. ........................................................................................... 4142
    6.3.3   Distributions and Distribution Dates. ................................................. 4142
        (a)     Section 1124(2) Unimpairment. ................................................. 4142
        (b)     Simple Unimpairment. ............................................................. 4243
        (c)     Determination of Applicable Treatment. ...................................... 4243
    6.3.4   Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by
            Consent. ....................................................................................... 4243
    6.3.5   Unsecured Deficiency Claims............................................................ 4344
6.4     Treatment of Allowed Other Secured Claims (Class 4) ...................................... 4344
    6.4.1   Voting and Impairment. ................................................................... 4344
    6.4.2   Liens. ........................................................................................... 4344
    6.4.3   Distributions and Distribution Dates. ................................................. 4445
        (a)     Simple Unimpairment. ............................................................. 4445
        (b)     Unimpairment With Surrender or Abandonment. ........................... 4445
        (c)     Section 1124(2) Unimpairment.................................................. 4445
        (d)     Unsecured Deficiency Claims. ................................................... 4546
6.5     Treatment of Allowed Priority Claims (Class 5). .............................................. 4546
    6.5.1   Voting and Impairment. ................................................................... 4546
    6.5.2   Distributions and Distribution Dates. ................................................. 4546
6.6     Treatment of Allowed Reliance Claims Against Group I Debtors (Class 6). ............ 4647
    6.6.1   Voting and Impairment. ................................................................... 4647
    6.6.2   Distributions. ................................................................................ 4647
        (a)     Lehman Creditor Distribution Funding. ...................................... 4647
            (i)     Lehman Guaranteed Minimum Distribution.............................. 4647
            (ii)    Lehman Distribution Enhancement. ....................................... 4647
        (b)     Distribution of Residual Cash. .................................................. 4748
        (c)     Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 6. ... 4748
    6.6.3   Distribution Dates. ......................................................................... 4748
        (a)     Lehman Creditor Distribution Funding. ...................................... 4849
            (i)     Lehman Guaranteed Minimum Distribution.............................. 4849
            (ii)    Lehman Distribution Enhancement. ....................................... 4849
        (b)     Residual Cash. ...................................................................... 4849
        (c)     Distributions as to a Future Obligation. ...................................... 4849
    6.6.4   Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s)
            by Consent. .................................................................................... 4950
6.7     Treatment of Allowed General Unsecured Claims Against Group I Debtors (Class 7). 4950
    6.7.1   Voting and Impairment. ................................................................... 4950
    6.7.2   Distributions................................................................................. 5051
        (a)     Lehman Creditor Distribution Funding. ...................................... 5051
            (i)     Lehman Guaranteed Minimum Distribution.............................. 5051
            (ii)    Lehman Distribution Enhancement. ....................................... 5051

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(b)      Distribution of Residual Cash. ................................................................ ~~51~~52
(c)      Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 7. .. ~~51~~52
6.7.3   Distribution Dates. ................................................................................... ~~51~~52
(a)      Lehman Creditor Distribution Funding. ................................................ ~~51~~52
(i)     Lehman Guaranteed Minimum Distribution .......................................... ~~51~~52
(ii)    Lehman Distribution Enhancement. ...................................................... ~~51~~52
(b)      Residual Cash. ....................................................................................... ~~51~~52
(c)      Distributions as to a Future Obligation. ............................................... ~~52~~53
6.7.4   Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s)
by Consent. .............................................................................................. ~~52~~53
6.8      Treatment of Allowed General Unsecured Claims Against Group II Debtors (Class 8). ~~53~~54
6.8.1   Voting and Impairment. ............................................................................ ~~53~~54
6.8.2   Distributions:  Lehman Creditor Distribution Funding. ............................ ~~53~~54
6.8.3   Distribution Dates. ................................................................................... ~~53~~54
(a)      Lehman Creditor Distribution Funding. ................................................ ~~53~~54
(b)      Residual Cash. ....................................................................................... ~~54~~55
(c)      Distributions as to a Future Obligation. ............................................... ~~54~~55
6.9      Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 9) ... ~~54~~55
6.9.1   Voting and Impairment. ............................................................................ ~~54~~55
6.9.2   Distributions and Distribution Dates. ....................................................... ~~54~~55
6.10    Treatment of Allowed Interests (Class 10). ............................................... ~~55~~56
VII ACCEPTANCE OR REJECTION OF THE PLAN ................................................. ~~56~~57
7.1      Who May Vote to Accept/Reject the Plan. ............................................... ~~56~~57
7.2      Who Can Vote in More than One Class. ................................................... ~~56~~57
7.3      Votes Necessary for a Class to Accept the Plan. ...................................... ~~56~~57
7.4      Who Is Not Entitled to Vote. .................................................................... ~~56~~57
7.5      Special Provisions for Listed Holders of Mechanic's Lien Claims. ............. ~~57~~58
7.6      Special Provisions for Allowed General Unsecured Claims in Class 7 and Allowed
Reliance Claims in Class 6. ...................................................................... ~~58~~59
7.6.1   Voting Permitted Regardless of Election to Receive the Lehman Distribution
Enhancement. .......................................................................................... ~~58~~59
7.6.2   "Reliance Claim" Status Must Be Asserted on a Ballot. ........................... ~~58~~59
7.7      Receipt of No or Incorrect Ballots. ........................................................... ~~59~~60
7.8      Acceptance of the Plan Contrasted With Confirmation. ............................ ~~59~~60
VIII MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ...................... ~~59~~60
8.1      Introduction. ............................................................................................ ~~59~~60
8.2      The Liquidating Trustee. ........................................................................... ~~60~~61
8.3      Conditions to Confirmation and Plan Effectiveness. ................................. ~~60~~61
8.4      Lehman Plan Funding. ............................................................................. ~~61~~62
(a)      Lehman Creditor Distribution Funding. ................................................ ~~62~~63
(i)     Lehman Guaranteed Minimum Distribution .......................................... ~~62~~63
(ii)    Lehman Distribution Enhancement. ...................................................... ~~62~~63
(b)      Lehman Post-Confirmation Expense Funding. ...................................... ~~63~~64
(c)      Funding with Cash Collateral of a Lehman VD Lender. ......................... ~~63~~64
(d)      Funding with New Cash Payments from a Lehman Related Party. .......... ~~63~~64
(e)      Plan Reserve. ......................................................................................... ~~64~~65
(f)      Terms and Documentation of Lehman Plan Funding. ............................ ~~64~~65
8.5      Post-Confirmation Expenses and Intercompany Loans. ............................
8.6      Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee. ... ~~66~~67
8.7      Disposition and Value of Assets ...............................................................
8.7.1   Disposition and Value of the Plan Projects. .............................................. ~~66~~67
8.7.2   Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining
Other Assets. ........................................................................................... ~~68~~69
8.8      Bond Claims and the Settling Bond Issuer Agreements. ............................ ~~69~~70
8.8.1   Background. .............................................................................................. ~~69~~70
8.8.2   Settling Bond Issuer Agreement. .............................................................. ~~70~~71

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8.8.3   Bond Modification Discussions. ........................................................ ~~73~~74
8.9     Releases for Lehman Released Parties. ............................................. ~~73~~74
8.9.1   Creditors' Assignments / Releases for Lehman. ............................. ~~73~~74
8.9.2   Plan Release for Lehman. ................................................................ ~~77~~78
8.9.3   Dismissal of Pending Litigation ...................................................... ~~78~~79
8.9.4   Process for Execution and Delivery of Creditor's Assignments / Releases for Lehman.  ~~79~~ 80
8.10    Entry of Final Decrees. ................................................................... ~~80~~81
8.11    Dissolution of Voluntary Debtors' Committee and Discharge of Liquidating Trustee. ~~80~~81
IX DISTRIBUTIONS ........................................................................................ ~~81~~82
9.1     Distribution Agent. .......................................................................... ~~81~~82
9.2     Distributions. .................................................................................. ~~81~~82
9.2.1   Dates of Distributions. .................................................................... ~~81~~82
9.2.2   Limitation on Liability. .................................................................... ~~81~~82
9.3     Old Instruments and Securities. ...................................................... ~~82~~83
9.3.1   Surrender and Cancellation of Instruments and Securities. ........... ~~82~~83
9.3.2   Cancellation of Liens. ..................................................................... ~~82~~83
9.4     De Minimis Distributions and Fractional Shares. ........................... ~~82~~83
9.5     Delivery of Distributions. ................................................................ ~~82~~83
9.6     Unclaimed Property. ........................................................................ ~~83~~84
9.7     Disposition of Unclaimed Property. ................................................. ~~83~~84
X OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS ............................ ~~84~~85
10.1    Standing for Objections to Claims. .................................................. ~~84~~85
10.2    Treatment of Disputed Claims. ....................................................... ~~84~~85
10.2.1  No Distribution Pending Allowance. ................................................ ~~84~~85
10.2.2  Distribution After Allowance. .......................................................... ~~85~~86
10.2.3  Reserves for Disputed Claims. ........................................................ ~~85~~86
10.2.4  Certain Disputed Cure Amounts for Secured Real Property Tax Claims. ........... ~~85~~86
10.3    New Anaverde Claims. .................................................................... ~~86~~87
XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... ~~87~~88
11.1    Identification of Executory Contracts and Unexpired Leases. ........ ~~87~~88
11.2    Executory Contracts Being Assumed or Assumed and Assigned. .......... ~~87~~88
11.3    Cure Rights. .................................................................................... ~~88~~89
11.4    Executory Contracts Being Rejected. .............................................. ~~89~~90
11.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee. ............. ~~89~~91
11.6    Continuing Obligations .................................................................... ~~90~~91
11.7    Bar Date for Rejection Damages. .................................................... ~~90~~91
XII EFFECT OF CONFIRMATION OF THE PLAN;  AND PLAN INJUNCTION ................. ~~91~~92
XIII LIMITATION OF LIABILITY .................................................................. ~~92~~93
13.1    No Liability for Solicitation or Participation. ................................. ~~92~~93
13.2    Limitation of Liability. .................................................................... ~~92~~94
XIV CONDITIONS TO CONFIRMATION AND  EFFECTIVENESS OF THE PLAN ......... ~~93~~95
14.1    Conditions Precedent to Entry of the Confirmation Order. ............. ~~93~~95
14.2    Conditions Precedent to Plan Effectiveness. ................................... ~~94~~95
XV RETENTION OF JURISDICTION ............................................................ ~~95~~96
XVI MODIFICATION OR WITHDRAWAL OF PLAN ..................................... ~~95~~96
16.1    Modification of Plan. ....................................................................... ~~95~~96
16.2    Nonconsensual Confirmation. ......................................................... ~~95~~97
XVII MISCELLANEOUS ............................................................................... ~~95~~97
17.1    Changes in Rates Subject to Regulatory Commission Approval. .......... ~~95~~97
17.2    Payment of Statutory Fees. ............................................................. ~~96~~97
17.3    Payment Dates. ............................................................................... ~~96~~97
17.4    Headings. ........................................................................................ ~~96~~98
17.5    Other Documents and Actions. ........................................................ ~~96~~98
17.6    Notices. ........................................................................................... ~~96~~98
17.7    Governing Law. ............................................................................... ~~97~~99

17.8    Binding Effect. ................................................................................ 97 99

17.9    Successors and Assigns. ................................................................... 97 99

17.10   Severability of Plan Provisions. ...................................................... 98 99

17.11   No Waiver. ........................................................................................ 98 99

17.12   Inconsistencies. ................................................................................ 98 100

17.13   Exemption from Certain Transfer Taxes and Recording Fees. ......... 98 100

17.14   Post-Confirmation Status Report. .................................................... 99 100

17.15   Post-Confirmation Conversion/Dismissal. ....................................... 99 101

17.16   Final Decree. .................................................................................... 99 101

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## EXHIBIT LIST

EXHIBIT A - List of Contracts and Leases

EXHIBIT B - List of Projects, Their Owners and Descriptions

EXHIBIT C - Easements, Covenants, Conditions, Restrictions and Other Matters of Record
Affecting Real Property, Leasehold Estates or Personalty or Any Interest Therein

EXHIBIT D - List By Group I Plan Debtor Of Unsecured, Non-Priority Claims And Reliance
Claim Status That Will Not Be Contested, Subject To Applicable Conditions

EXHIBIT E - Definitions

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I

## INTRODUCTION

### 1.1    Prefatory Statement.

This ~~Second~~*Third* Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by the Lehman VD Lenders (the "Plan" [1] or "Joint VD Plan") is filed by the Lehman VD Lenders.

A separate document, entitled *Disclosure Statement With Respect to* ~~Second~~*Third* *Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders* (the "Joint VD Disclosure Statement" or "Disclosure Statement"), is being sent as an accompaniment to the Joint VD Plan, which may be included in the same envelope as this document or under separate cover.

### 1.2    Groupings, Process, Disclosure, Voting and Recommendation.

#### 1.2.1    Groupings of VD Plan Debtors

The Joint VD Plan divides the VD Plan Debtors into three groups:

##### (a)    Group I Debtors:

The Group I Debtors consist of:

      (i)    **Acton Estates, LLC;**

      (ii)    **Palmdale Hills Property, LLC;**

      (iii)    **SCC Communities, LLC;**

      (iv)    **SunCal Bickford Ranch, LLC; and**

      (v)    **SunCal Communities I, LLC;**

      (vi)    **SunCal Summit Valley, LLC; and**

      (vii)    **Tesoro SF, LLC;**

##### (b)    Group II Debtors:

The Group II Debtors consist of:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] All capitalized terms have the meanings set forth in Article II of this Plan.

**(i)      Kirby Estates, LLC;**

**(ii)     Seven Brothers, LLC;**

**(iii)    SunCal Beaumont Heights, LLC; and**

**(iv)     SunCal Johannson Ranch, LLC.**

### 1.2.2    Process.

This Joint VD Plan is essentially a blueprint of how the VD Plan Debtors will be structured or liquidated after or as a result of bankruptcy – whether they will survive, the forms of entities they will be, who will own them, and what distributions will be made or required.  Among other things, the Plan designates Classes of Claims and Classes of Interests, identifies Unimpaired and Impaired Classes, sets forth a proposal for the satisfaction of all Claims against, and Interests in, the Joint VD Plan Debtors, and provides adequate means for the implementation of the Joint VD Plan.

Holders of Claims and Interests entitled to vote on the Joint VD Plan will receive with the Joint VD Plan a Ballot, for voting on the Joint VD Plan, and will receive the Joint VD Disclosure Statement.

It is anticipated that besides the solicitation of votes on the Joint VD Plan by the Lehman VD Lenders for the eleven affected Voluntary Debtors, the Lehman Creditors (*i.e.*, the Lehman VD Lenders, Northlake Holdings and OVC Holdings) simultaneously will be soliciting acceptances for a plan being jointly proposed by the Lehman Creditors and the Trustee for eight Trustee Debtors (the "Joint TD Plan").  There is no overlap between the two plans for which the Lehman VD Lenders or Lehman Creditors are proponents or co-proponents (the Joint TD Plan and the Joint VD Plan) and votes will be solicited separately as to each such plan from the appropriate creditors. Because there is no overlap, both such plans may be confirmed by the Court.  At the same time, however, the Voluntary Debtors, SCC Acquisitions, Inc. ("Acquisitions") and/or other persons simultaneously may be soliciting acceptances for a plan or plans (each an "Alternative Plan") affecting all or some of the same Debtors and Estates as the Joint TD Plan and Joint VD Plan.  After voting, if only one plan affecting a Debtor receives sufficient accepting votes and otherwise qualifies for ~~confirmation~~Confirmation by law and according to its terms, it will be confirmed by the Bankruptcy Court and become effective as to such Debtor.  If both an Alternative Plan and either the Joint VD

Plan and/or Joint TD Plan receive sufficient votes and otherwise qualify for ~~confirmation~~Confirmation as to a particular Debtor, the Bankruptcy Court "shall consider the preferences of creditors and equity security holders in determining which plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code.

### 1.2.3    Special Voting / Election Procedures

(a)    **Voting –General Unsecured Claims or Reliance Claims Against Any Group I Debtor.**

**Ballots for each Holder of a General Unsecured Claim or Reliance Claim against any Group I Debtor also will afford the Holder the opportunity to elect that, if its Claim is Allowed, it would receive the Lehman Distribution Enhancement.  *By such election and execution and delivery of the Ballot, as the Ballot reflects, the Holder also is executing and delivering the Creditor's Assignment / Release for Lehman set forth in the Plan for the benefit of the Lehman Released Parties*.**

(b)    **Voting / Election - Alleged Mechanic's Lien Claims against any Group I Debtor.**

**For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim against any Group I Debtor, the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, thereby affording the Creditor the opportunity to elect to receive the Lehman Distribution Enhancement if its Claim is Allowed.**

### 1.2.4    Disclosure.

The Disclosure Statement is intended to provide Creditors with information sufficient to enable Creditors to vote on the Plan and has been approved by the Bankruptcy Court as containing sufficient information for that purpose.  The Disclosure Statement includes a summary of the VD Plan Debtors' assets and liabilities, a summary of what Holders of Allowed Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for ~~confirmation~~Confirmation of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Each Creditor should thoroughly review both the Plan and Disclosure Statement before deciding whether the Creditor will accept or reject the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved for solicitation purposes by the Bankruptcy Court, have been authorized for use in soliciting acceptances or rejections of the Plan.  The Lehman VD Lenders recommend approval of this Plan.

## II

## DEFINITIONS AND RULES OF INTERPRETATION

### 2.1    Definitions.

The defined terms set forth in **Exhibit "~~D~~E"** are incorporated into the Plan by this reference and shall apply to capitalized terms used in the Plan, provided that any capitalized term that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### 2.2    Rules of Construction.

For purposes of the Plan and Disclosure Statement, unless otherwise provided in the Plan or in the Disclosure Statement, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to a document or to a schedule means such document or schedule as it may have been or may be amended, modified, supplemented or restated pursuant to the Plan or otherwise from time to time; (d) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (e) except as otherwise indicated in the Plan, all references in the Plan or the Disclosure Statement to Sections and Articles are references to Sections and Articles of or to the Plan; (f) unless otherwise indicated, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) unless otherwise provided in the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

conditions; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan or the Disclosure Statement or any other provision in this section.

### III

### PLAN OVERVIEW

The overview of the Plan in this Article III of the Plan is not intended to substitute for the Disclosure Statement or for the more specific terms set forth in the Plan other than in this Article III. of the Plan.  If there are any discrepancies between the overview provided in this Article III. of the Plan and the other provisions of the Plan or the Disclosure Statement, the other provisions shall control.

**3.1**    **Background.**

In the Bankruptcy Court, under case number 8:08-bk-17206-ES, the chapter 11 bankruptcy cases of twenty-six affiliated debtors (the "Debtors") are being jointly administered.  The Debtors include seventeen debtors who continue to manage, and remain in possession of, their assets as debtors and debtors in possession (the "Voluntary Debtors") and nine debtors for whom Steven M. Speier was duly appointed as the chapter 11 trustee (the "Trustee Debtors").  This Plan is a chapter 11 plan for the following eleven Voluntary Debtors (each a "VD Plan Debtor"): Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Johannson, SunCal Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC Communities, and Tesoro.

The proponents of the Plan are the Lehman VD Lenders: (a) Lehman ALI, Inc. and (b) Lehman Commercial, each in its capacity as a lender in its own right and/or as agent for themselves, with respect to the applicable Lehman Loans.  The Lehman VD Lenders are referred to in the Plan as both the "Lehman Proponents," with reference to their role as proponents of the Plan, and as the Lehman VD Lenders, with reference to their other capacities.

Each of the Group I Debtors is insolvent.  Plan Projects are the primary Assets of the Estates of the VD Plan Debtors other than SunCal I, which owns Interests in other VD Plan Debtors that own Plan Projects. The Lehman VD Lenders hold Claims against Group I Debtors aggregating to approximately $711 million, which Claims are secured by deeds of trust on such Debtors' Plan

Projects, and secured by their Cash Collateral and certain other Assets. Approximately $343 million of such amount is owed by SunCal Summit Valley, secured by a pledge of its Interests in Group II Debtors Kirby Estates and Seven Brothers, and owed by SunCal I, secured by, *inter alia,* a pledge of its Interests in Group II Debtors SunCal Beaumont and SunCal Johannson. The Lehman VD Lenders' collateral, including the Plan Projects of the Group I Debtors (other than SunCal Summit Valley) and the equity interests in SunCal Summit Valley and the Group II Debtors, collectively, is worth substantially less than the total amount of the Lehman Secured Claims.

The Lehman VD Lenders are pleased to be able to present this Plan. Under this Plan, Holders of Interests receive nothing. Because the Lehman VD Lenders appreciate that, for the foreseeable future, the VD Plan Debtors have and will have no ability to pay the full amount of the debt owed to the Lehman VD Lenders giving rise to the Lehman Secured Claims and their first priority Liens on certain of the Plan Projects or, without additional funding, to develop the Plan Projects, the Lehman VD Lenders want ownership of all Plan Projects. Thus, upon confirmationConfirmation of this Plan, as more fully set forth below, among other things, the VD Plan Debtors will convey ownership of the Plan Projects to the designees of the Lehman VD Lenders (the Lehman Nominees). In exchange, the Lehman VD Lenders will pay substantial sums for the benefit of other Creditors through the Lehman Plan Funding, as and to the extent provided under this Plan.

### 3.2    Overview of Treatment of Claims and Relevant Agreements.

Essential features of the Plan are summarized in this section, subject to the following sections of the Plan. Because the Cases of the VD Plan Debtors have been jointly administered, but not substantively consolidated, the Plan provides separate treatment for Holders of Claims and Interests against each VD Plan Debtor.

### 3.2.1    Lehman Plan Funding.

Under the Plan, the Lehman VD Lenders, for the benefit of other Creditors, will provide the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding for payment of Post-Confirmation Expenses.

### 3.2.2    Bond-Backed Claims and Bond Issuer Settlement(s).

Many of the Claims against the VD Plan Debtors, or portions thereof, are, or were at some point in time, secured by Project Bonds (the "Bond-Backed Claims") issued by Arch Insurance Company ("Arch") or Bond Safeguard Insurance Company or its Affiliate, Lexon Insurance Company (collectively, "Bond Safeguard" and together with Arch, the "Bond Issuers").  The Bond Issuers have made and may continue to make payments to certain Creditors who are beneficiaries of Project Bonds based on the Bond Issuer's own obligations, which payments and treatment from the Bond Issuers may be different than, and may or may not be in addition to, payments provided under the Plan.  Nonetheless, to facilitate this Plan, unless waived by the Lehman VD Lenders in their sole and absolute discretion, as a condition to entry of the Confirmation Order and prior to the Effective Date, certain Lehman Related Parties must have entered into a Settling Bond Issuer Agreement, summarized in Plan Section 8.8, with each Bond Issuer.  In the event the Lehman VD Lenders do waive the requirement for entry into such a settlement with either or both Bond Issuers and waive attendant rights to withdraw the Plan, the treatment of Claims in the Plan accounts for the possibility of settlements or of no settlements with one or both of the Bond Issuers.  For each Settling Bond Issuer Agreement entered into as required under the Plan, as more fully set forth in Plan Section 8.8.2 below, pursuant thereto and subject to the specific terms and conditions thereof, *inter alia*:  (a) the applicable Settling Bond Issuer will agree to perform under its Future Work Bonds if a demand is made for such performance, (b) to the extent that there is or may be an Allowed Claim for the obligation to perform the relevant Future Work covered by a Future Work Bond of the applicable Settling Bond Issuer, the Lehman Nominee taking title to an applicable Plan Project will cooperate in the performance of such Future Work and will agree to reimburse the Settling Bond Issuer for certain amounts, *e.g.*, with respect to payments made by the Settling Bond Issuer under Future Work Bonds, (c) the Settling Bond Issuer will waive all or part of the payment under the Plan with respect to certain Claims and (d) the Settling Bond Issuer will assign to a Lehman Related Party(ies) (or release) all or part of its Claims against each of the VD Plan Debtors and its related claims against any Bond Obligors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 3.2.3    Treatment of Non-Priority Unsecured Claims and Interests.

(a)    **Amounts Payable for Class 6 Allowed Reliance Claims against Group I Debtors.**

Each of these Claims must be an Allowed Claim against any Group I Debtor for New Value, arising after August 1, 2007 and timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as a Scheduled Claim.  Class 6 Claims are Impaired.  Under the Plan, each Holder of an Allowed Class 6 Claim receives the following Distributions:

- o   The Lehman Guaranteed Minimum Distribution:  An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Reliance Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 6 Claim; and

- o   The Lehman Distribution Enhancement:  An additional Cash Distribution is available to Holders of Allowed Class 6 Claims that increases a Holder's Distributions to 50% of its Allowed Reliance Claim if the Projected Distribution Bump Up is applicable and otherwise 40%.  The Lehman Distribution Enhancement is a part of the Lehman Creditor Distribution Funding and only is being made available to a Holder of an Allowed Class 6 Claim who completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties.  The Projected Distribution Bump Up is applicable only if the aggregate amount of Distributions made under the Plan in respect of all Allowed Reliance Claims and Allowed General Unsecured Claims against the particular, applicable Group I Debtor, excluding certain specified Claims, as described herein, is no greater than such Group I Debtor's specified Bump Up Threshold, which thresholds for all Group I Debtors aggregate to $2.5 million, as more fully set forth in Plan Section 6.6.2(a)(ii); and

- o   Residual Cash:  Each Holder of an Allowed Class 6 Claim also will receive a share of any Residual Cash of the applicable Group I Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable Group I Debtor that are any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of the following: (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7).  Allowed Lehman-Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash.

**(b)    Amounts Payable for Class 7 Allowed General Unsecured Claims against Group I Debtors.**

These Claims consist of Allowed Claims against any Group I Debtor that have no priority or security and do not fit within the definitions of Reliance Claims (Class 6) or Settling Bond Issuer-Related Future Work Claims (Class 9).  Class 7 Claims are Impaired.  Under the Plan, each Holder of an Allowed Class 7 Claim receives the following Distributions:

o   The Lehman Guaranteed Minimum Distribution:  An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed General Unsecured Claim – part of the Lehman Creditor Distribution Funding is to be paid to each Holder of an Allowed Class 7 Claim; and

o   The Lehman Distribution Enhancement:  An additional Cash Distribution is available to Holders of Allowed Class 7 Claims that increases a Holder's Distributions to 5% of its Allowed General Unsecured Claim.  The Lehman Distribution Enhancement is a part of the Lehman Creditor Distribution Funding and only is being made available to a Holder of a Class 7 Claim who completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties; and

o   Residual Cash:  Each Holder of an Allowed Class 7 Claim also will receive a share of any Residual Cash of the applicable VD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable VD Plan Debtor that are any of the following: (1) Sr. Secured Mechanics' Lien Claims (Class 3) that are Allowed Lehman-Owned Settling Bond Issuer-Related Claims, (2) Allowed Reliance Claims (Class 6), and (3) Allowed General Unsecured Claims (Class 7).  Allowed Lehman-

Owned Settling Bond Issuer-Related Claims that are Class 6 or Class 7 Allowed Claims will participate in the sharing of the Residual Cash.

(c)    **Timing of Payments after the Effective Date for Allowed Class 6 Claims and Allowed Class 7 Claims against Group I Debtors.**

For each or the portion of each Allowed Class 6 Claim or Allowed Class 7 Claim that is not a Future Obligation (see description below), the payments due from the Lehman Creditor Distribution Funding are payable as follows:

o   After the Effective Date, within a short time after a Claim is determined to be Allowed, *i.e.*, generally within thirty (30) days following such Claim's Allowance Determination Date, payment is to be made of:

▪   the Lehman Guaranteed Minimum Distribution (the first 1% of the Allowed Claim); and

▪   a payment of or towards the Lehman Distribution Enhancement, if the applicable Claimant executes the Creditor's Assignment / Release for Lehman, in the following amounts:

•   for Reliance Claims in Class 6, the first 39% of the Allowed Claim; and

•   for General Unsecured Claims in Class 7, 4% of the Allowed Claim; and

o   If the amount payable for Allowed Class 6 Claims is not the maximum amount that might be payable upon resolution of all Disputed Claims (which resolution would enable, *inter alia*, a determination of whether the Projected Distribution Bump Up is available), then, the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims; and

o   As to payments due from Residual Cash, if any, with respect to any Allowed Class 6 Claim or Allowed Class 7 Claim or portion thereof that is not a Future Obligation, such payment is to occur, if and as the Liquidating Trustee determines it is available. (*See* Plan Sections 6.6 & 6.7.)

o   For each or the portion of each Allowed Class 6 Claim or Allowed Class 7 Claim that is a Future Obligation, payment is to occur by the later of (a) the date due for such ~~Distirbutions~~Distributions for other Allowed Class 6 Claims or Allowed Class 7 Claims, respectively, and (b) thirty (30) days following the date that the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent) and the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

**(d)      Amounts Payable for Class 8 Allowed General Unsecured Claims against Group II Debtors.**

Under the Plan, after the Effective Date, each Holder of an Allowed Class 8 General Unsecured Claim against a Group II Debtor shall receive as to each such Claim or portion thereof that is not a Future Obligation within a short time after such Claim is determined to be Allowed, *i.e.*, generally within thirty (30) days following such Claim's Allowance Determination Date, a Distribution in Cash equal to the lesser of:

o   100% of the Allowed Amount of such Claim, plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date; and

o   a Pro Rata distribution of: (i) any positive sum resulting from subtracting the Allowed Senior Claims against the applicable Group II Debtor from the Project Value for the applicable Group II Debtor's Plan Project; and (ii) Residual Cash of the Estate of the applicable Group II Debtor, provided that:

   o   such Pro Rata Distribution shall not be less than 1% of the Allowed Claim; and

   o   If the amount payable for Allowed Class 8 Claims is not the maximum amount that might be payable upon resolution of all Disputed Claims, then:

      ▪   the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims; and

- Payments are to be made from Residual Cash, if any, with respect to any Allowed Class 8 Claim or portion thereof that is not a Future Obligation, if and as the Liquidating Trustee determines it is available.

For each or the portion of each Allowed Class 8 Claim that is a Future Obligation, payment from the Lehman Creditor Distribution Funding is to occur by the later of (a) the date due for such a Distribution for other Allowed Class 8 Claims, and (b) thirty (30) days following the date that the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation becomes due, liquidated and non-contingent) and the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

### (e)        Class 9 Settling Bond Issuer-Related Claims.

Settling Bond Issuer-Related Claims include Settling Bond Issuer-Backed Claims and Settling Bond Issuer-Owned Claims.  If a Bond Issuer and the applicable Lehman Related Party(ies) have entered into a Settling Bond Issuer Agreement, the Settling Bond Issuer-Backed Claims will be certain Claims against VD Plan Debtors that are Bond-Backed Claims secured by Project Bonds issued by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims will be those certain Claims against the VD Plan Debtors owned and held by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims will receive treatment under the Plan consistent with the applicable Settling Bond Issuer Agreement.  (*See* Plan Section 8.8.)  Under the Plan, Allowed Settling Bond Issuer-Backed Claims receive the following treatment:

o   *Settling Bond Issuer-Backed Claims which are Sr. Secured Mechanic's Lien Claims (Class 3):* Each of these Secured Claims of Bond-Backed Claimants, if and once Allowed, would receive payment from the Lehman Creditor Distribution Funding of the full amount of the Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract or statute after reinstatement (Section 1124(2) Unimpairment).  (*See* Plan Section 6.3.3(c).)

o   *Settling Bond Issuer-Backed Claims which are Reliance Claims or General Unsecured Claims (Classes 6, 7, and 8):* If Allowed, each such Claim of a Bond-Backed Claimant is to receive the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

applicable treatment in Class 6, Class 7, or Class 8, depending on whether such Claims fits the definition of a Reliance Claim or General Unsecured Claim and depending on which VD Plan Debtor the Claim is against. The Bond Issuer also may have separate obligations to the Bond-Backed Claimants in respect of these Claims such that these Claims may be paid or settled by the Bond Issuer (and possibly acquired by the Bond Issuer as part of any such payment or settlement).

o *Settling Bond Issuer-Backed Future Work Claims (Class 9):* The Settling Bond Issuer is to perform and/or pay in full for the performance of the Future Work obligations with respect to each Settling Bond Issuer-Backed Future Work Claim, if Allowed, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date. The Lehman Nominee that takes title to the Plan Project to which the Claim relates will, *inter alia*, (a) be required to cooperate in connection with the performance of such Future Work obligations, (b) take an assignment from the Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the applicable VD Plan Debtors and Bond Obligors (unless such Claims are released), and (c) reimburse such Settling Bond Issuer agreed amounts, *e.g.*, for payments made by such Settling Bond Issuer under the applicable Future Work Bonds. Nonetheless, the applicable Creditor holding a Settling Bond Issuer-Backed Future Work Claim may agree to forego performance or payment for certain Future Work directly or through release of the applicable Future Work Bond. (*See* Plan Sections 6.8.3(c) and 8.8.);

**(f) Class 10 Interests.**

Class 10 Interests are the ownership interests in each of the VD Plan Debtors. Class 10 is Impaired. Under the Plan, Holders of the Class 10 Interests get nothing and retain nothing.

**3.2.4 Treatment of Secured Claims and Claims with Statutory Priorities.**

(a) For Class 1 Allowed Secured Real Property Tax Claims, at the election of the Lehman VD Lenders, each Holder either (1) would receive a lump sum payment from the Lehman Creditor Distribution Funding of the full amount of its Claim on the Effective Date, exclusive of any penalty or similar amounts (Section 1124(2) Unimpairment), (2) would receive 100% of its Allowed Claim through equal Cash payments, with penalties, payable every third month following the Effective Date until the fifth year anniversary of the applicable VD Plan Debtor's Petition Date, or

(3) would have its rights and remedies unaltered, with the Holder free to pursue its remedies, if any, against the underlying collateral pursuant to nonbankruptcy law (*i.e.*, Simple Unimpairment). If the lump sum cure payment treatment is elected, Holders of Allowed Secured Real Property Tax Claims that dispute the amount of damages are to be timely paid undisputed sums and afforded a mechanism by which to have the disputed amount set aside by the Liquidating Trustee in the Plan Reserve and released to such Holder if authorized by a Final Order. (*See* Plan Sections 6.1 and 10.2.4.)

(b)     For Class 2 Allowed Lehman Secured Claims, generally, the Plan provides for the VD Plan Debtors to convey, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), their respective Plan Projects to the Lehman VD Lenders or Lehman Nominees (provided, however, that the Lehman VD Lenders would have to elect that such conveyance occur with respect to any Seller Financing Encumbered Parcels). (*See* Plan Section 6.2.)

(c)     Class 3 consists of Allowed Sr. Secured Mechanic's Lien Claims.

o   Alleged Holders of Class 3 Claims against Group I Debtors are offered under the Plan an opportunity to elect to have their Claims treated as General Unsecured Claims or Reliance Claims:

▪   The Lehman VD Lenders believe that some Mechanic's Lien Claims are General Unsecured Claims or Reliance Claims (to be treated in Class 6, 7, or 8, if Allowed).  For Group I Debtors (other than SunCal Summit Valley), the Lehman VD Lenders hold Lehman Secured Claims against the relevant Plan Projects and believe that the Liens supporting such Lehman Secured Claims are senior Encumbrances to the Mechanic's Liens Claims. Further, because, generally, the Plan Projects subject to Lehman Secured Claims are worth less than the aggregate outstanding amount of the Lehman Loans that are secured by the Lehman Claim Liens, there is no value in the Plan Projects to which the junior Liens of the Holders of Mechanic's Lien Claims could attach.

▪   If a Creditor with a Mechanic's Lien Claim, that it contends is a Secured Claim (which means such Claim must be senior to the Secured Claim against the applicable Plan Project of the applicable Lehman VD Lender) waits to find out after an objection to such Claim whether its Claim will be Allowed as having the status of a Sr. Secured Mechanic's Lien Claim, General Unsecured Claim or Reliance Claim, then, the Plan offers no opportunity at such later point for the Creditor to avail itself of the Lehman Distribution Enhancement, which, as provided in the Plan, essentially offers Creditors

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

an opportunity on their Ballots to elect to receive an enhanced recovery of 40% to 50% for Allowed Reliance Claims against Group I Debtors, and 5% for Allowed General Unsecured Claims against Group I Debtors.

▪ Thus, each listed Holder of a Mechanic's Lien Claim relating to the Plan Projects of Group I Debtors will be provided a Ballot on which such Holder may elect to vote its Claim as a General Unsecured Claim or a Reliance Claim, as applicable, and will have the opportunity to elect to receive the Lehman Distribution Enhancement in respect of its Allowed Claim (in exchange for the Creditor's Assignment / Release for Lehman). To elect this option, the Creditor must and would waive all contentions that its Claim is a Secured Claim against the applicable Plan Project.  If such Holder does not elect to vote its Claims as General Unsecured Claims or Reliance Claims, thereby electing to proceed as a Holder of Mechanic's Lien Claims, then if it is subsequently determined that such Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be eligible to receive the Lehman Distribution Enhancement.

o Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or otherwise settled by the applicable Bond Issuer.

o With respect to Mechanic's Lien Claims that are Allowed Sr. Secured Mechanic's Lien Claims, under the Plan, at the election of the Lehman VD Lenders, each Holder of such Class 3 Claim either (1) would receive payment from the Lehman Creditor Distribution Funding (or, possibly, from a Settling Bond Issuer for a Settling Bond Issuer-Backed Claim that is a Class 3 Claim) of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract after reinstatement (Section 1124(2) Unimpairment), or (2) would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment).  (*See* Plan Section 6.3.)

o The Settling Bond Issuer(s) (if any) and the Lehman VD Lenders are consenting to less favorable treatment for any Allowed Sr. Secured Mechanic's Lien Claims that are also, respectively, Settling Bond Issuer-Owned Non-Future Work Claims or Lehman-Owned Settling Bond Issuer-Related Claims.

(d)    For Class 4 Allowed Other Secured Claims, each Holder, if any, would have its rights against its collateral left unaltered by the Plan (Simple Unimpairment) or, at the election of the Lehman VD Lenders: either (1) would receive back its collateral through surrender or abandonment (Unimpairment With Surrender or Abandonment) or (2) would receive payment from the Lehman Creditor Distribution Funding of the full amount of its Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and making further payments as required under the applicable contract or statute after reinstatement (Section 1124(2) Unimpairment). (*See* Plan Section 6.4.)

(e)    For Class 5 Allowed Priority Claims and the unclassified Allowed Administrative Claims, and Allowed Priority Tax Claims, the Plan provides for 100% payment from the Lehman Creditor Distribution Funding. (*See* Plan Section 6.5.)

### 3.2.5    Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s) and the Lehman VD Lenders.

(a)    Under the Plan, Lehman VD Lenders holding Class 6 or Class 7 Claims have agreed to take nothing for such Claims unless such Claims are Lehman-Owned Settling Bond Issuer-Related Claims.  Further, for the Lehman-Owned Settling Bond Issuer-Related Claims in Classes 3, 6, and 7 held by the Lehman VD Lenders or held by any Lehman Related Parties, the Lehman Related Parties will receive only their proportional share of Residual Cash of the applicable VD Plan Debtor (sharing Pro Rata with other Holders of Allowed Reliance Claims (Class 6) and Allowed General Unsecured Claims (Class 7)).  Lehman Related Parties may hold Lehman-Owned Settling Bond Issuer-Related Claims, in part, because, under each Settling Bond Issuer Agreement, Settling Bond Issuer-Owned Non-Future Work Claims in Classes 3, 6 and 7 may be transferred to Lehman Related Parties on the Effective Date (in exchange for the consideration afforded the applicable Settling Bond Issuer under the applicable Settling Bond Issuer Agreement); and

(b)    Each Settling Bond Issuer is consenting through the applicable Settling Bond Issuer Agreement to itself receive nothing from the applicable VD Plan Debtors' Estates for certain Settling Bond Issuer-Owned Non-Future Work Claims in Class 6 or Class 7.  (Nonetheless, due to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ongoing liability of the applicable Settling Bond Issuer under the relevant Future Work Bonds, the applicable Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Backed Future Work Claims in Class 9, summarized above.)

## IV

### TREATMENT OF UNCLASSIFIED CLAIMS

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority. However, in accordance with Bankruptcy Code § 1123(a)(1), certain types of Claims are not classified in any Classes under the Plan and the Proponents have not placed such Claims in a Class. These Claims are "unclassified."  As to Allowed Administrative Claims and Allowed Priority Tax Claims, these Claims are not considered Impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  The treatment of these unclassified Claims is as provided below.

**4.1**    **Treatment of Allowed Administrative Claims.** Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different treatment, and subject to the Administrative Claim Bar Date set forth in the Plan, the Liquidating Trustee shall pay each Allowed Administrative Claim in full, in Cash, by the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative Claim representing obligations incurred prior to the Effective Date in the ordinary course of post-petition business by the VD Plan Debtors (including, without limitation, post-petition trade obligations and routine post-petition payroll obligations) shall be paid in full or performed by the Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular obligation.

**(a)**    **Treatment and Repayment of the Lehman Administrative Loan(s).**

The Lehman Administrative Loans (certain post-petition and pre-Confirmation financing provided by Lehman ALI and/or other Lehman Related Parties pursuant to order(s) of the Bankruptcy Court, as more fully defined above) are Allowed in the amount loaned or advanced by

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

Lehman ALI and/or other applicable Lehman Related Parties after the commencement of the Cases net of any repayment thereof, shall be paid in Cash in full on the Effective Date from the Lehman Creditor Distribution Funding or shall be payable from the Lehman Creditor Distribution Funding at such later time and on such other terms as the Lehman VD Lenders may agree.  Pending any such payment or during a period of voluntary deferral by Lehman ALI and/or Lehman Related Parties, the Lehman Administrative Loans shall continue to have a first priority Lien against the respective Assets securing such loans as of the moment prior to the Effective Date, including any Cash of the VD Plan Debtors, such as may be deposited in the Plan Reserve or Post-Confirmation Accounts, and any proceeds thereof.

### (b)      Administrative Claim Bar Date.

Any Administrative Claim that is subject to an Administrative Claim Bar Date and not filed by the applicable Administrative Claim Bar Date shall not be Allowed, and no Distribution shall be made on account of any such Administrative Claim.

### (i)      General Administrative Claim Bar Date.

All applications of Professionals for final Professional Fees for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the VD Plan Debtors' postpetition business, for which no bar date shall apply, and (ii) post-petition tax obligations, for which the bar date described in the following section shall apply) shall be filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than the General Administrative Claim Bar Date (the first Business Day following the sixtieth (60th) day after the Confirmation Date), unless such date is extended by the Bankruptcy Court after notice to the Liquidating Trustee.  Any such request for payment of an Administrative Claim that is subject to the General Administrative Claim Bar Date and that is not filed and served on or before the General Administrative Claim Bar Date shall be forever barred; any party that seeks payment of Administrative Claims that is required to file a request for payment of such Administrative Claims and does not file such a request by the deadline

established in the Plan, shall be forever barred from asserting such Administrative Claims against the VD Plan Debtors, their properties or assets or the successors thereto, including, without limitation, the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

**(ii)** **Administrative Tax Claim Bar Date.**

All requests for payment of Administrative Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date ("<u>Administrative Tax Claims</u>") and for which no bar date has otherwise previously been established, must be filed and served on the Liquidating Trustee on or before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the date that the tax return for such tax year or period to which such Taxes relate is required to be filed with the applicable governmental unit. Any Holder of an Administrative Tax Claim that is required to file a request for payment of such Taxes and does not file and properly serve such a request by the applicable bar date shall be forever barred from asserting any such Administrative Tax Claims against the VD Plan Debtors, their properties or assets or the successors thereto, including, without limitation, the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

**4.2** **Treatment of Priority Tax Claims.**

Priority Tax Claims are certain unsecured income, employment and other Taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each Holder of such a Priority Tax Claim receive the present value of such Claim in deferred Cash payments over a period not exceeding five (5) years from the applicable Petition Date and that such treatment not be less favorable than the treatment accorded to non-priority unsecured creditors.

Allowed Priority Tax Claims, if any, shall receive from the Liquidating Trustee (i) equal Cash payments to be made on the last Business Day of each third full-calendar month following the Effective Date, *provided that* the first payment need not be made any sooner than thirty (30) days following the Effective Date and *provided that* such periodic payments are to be payable until November 6, 2013, on which date the final payment shall be due, with all such payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance from the Effective

Date, calculated at the nonbankruptcy interest rate applicable on the Effective Date, if any, or (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim and the Liquidating Trustee, provided such treatment is on more favorable terms to the applicable VD Plan Debtor's Estate than the treatment set forth in clause (i) hereof; provided that, prepayments shall be made and permitted with the consent or at the direction of a Lehman VD Lender, including payment in full any time on or after the Effective Date.

**V**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. This Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired, and the Plan sets forth the treatment each Class will receive. The table below lists the Classes of Claims established under the Plan and states whether each particular Class is Impaired or left Unimpaired by the Plan. A Class is "Unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass even if not expressly designated as such. Further, in the event that any alleged Secured Claim is not, or only is partially, Allowed as a Secured Claim, the deficiency amount (Unsecured Deficiency Claim) if Allowed and, where applicable, filed by the Unsecured Deficiency Claim Bar Date, will constitute a Class 7 or Class 8 Claim against the applicable VD Plan Debtor, as more fully set forth below, and will receive the same treatment as provided to other Claims in Class 7 or Class 8 of such VD Plan Debtor, as appropriate. The deficiency amounts with respect to the Claims of Lehman VD Lenders (Lehman Creditor Deficiency Claims) are Allowed General Unsecured Claims in Class 7, provided that, under the Plan, no Lehman Creditor Deficiency Claim is afforded against SCC Communities or Tesoro.

The Plan does not intend to and does not provide for substantive consolidation of any of the VD Plan Debtors for any purpose, *e.g.*, for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

including calculations of Distributions among ~~creditors~~Creditors, or for the obligations created under the Plan with respect to Distributions for Creditors. Thus, each Allowed Claim in a Class shall be deemed to be in one or more subclasses of the applicable VD Plan Debtor as the classification tables herein reflect. If at the hearing on Confirmation, the Proponents establish a reasonable good faith belief that a particular Class or subclass contains no Allowed Claims, such Class or subclass shall be disregarded thereat.

THE INVESTIGATION OF CLAIMS AND INTERESTS IS NOT YET COMPLETE, AND THEIR LISTING IN THE PLAN OR IN THE TABLES BELOW SHOULD NOT BE CONSTRUED AS INDICATING OR PROVIDING THAT SUCH CLAIMS ARE ALLOWED UNDER THE PLAN IN ANY RESPECT (WHETHER AS TO AMOUNT OR AS TO STATUS, E.G., AS A SECURED CLAIM, SECURED REAL PROPERTY TAX CLAIM OR SR. SECURED MECHANIC'S LIEN CLAM), EXCEPT AS EXPRESSLY SET FORTH FOR THE PARTICULAR CLAIM.

**ADDITIONALLY, ALTHOUGH THE LISTED *POTENTIAL* CLASS 3 SR. SECURED MECHANIC'S LIEN CLAIMS ARE CLAIMS AS TO WHICH A MECHANIC'S LIEN MAY HAVE BEEN FILED, SOME OF THE IDENTIFIED CLAIMS AGAINST GROUP I DEBTORS OTHER THAN SUNCAL SUMMIT VALLEY ARE BELIEVED TO BE JUNIOR TO THE LEHMAN SECURED CLAIMS AGAINST THE APPLICABLE PLAN PROJECT AND, THUS, ARE NOT BELIEVED TO BE ENTITLED TO THE TREATMENT AFFORDED IN CLASS 3 FOR ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS, BUT, INSTEAD, IF ALLOWED, ENTITLED TO CLASS 6, 7 OR 8 TREATMENT, AS APPLICABLE.**

Reliance Claims are Claims against Group I Debtors as defined herein. No Creditor can obtain treatment under the Plan as a holder of a Reliance Claim unless it indicates on its Ballot that it holds a Reliance Claim against a Group I Debtor and verifies on its Ballot by its signature that its Claim meets the criteria for such status (which also will be set forth on the Ballot). For the convenience and benefit of Creditors, the Lehman VD Lenders have attached to the Plan as **Exhibit "D"** a non-exhaustive list of potential Reliance Claims against Group I Debtors. The Lehman VD

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lenders will not challenge the status of the listed Claims on **Exhibit "D"** as Reliance Claims in the "Reliance Claim Amount" listed thereupon against the therein indicated Group I Debtor IF the Claim ultimately is Allowed in the amount of the "Creditors' Claim Amount" listed thereupon. Creditors not listed at all in **Exhibit "D"** or believing they hold Reliance Claims in higher amounts than listed thereupon may indicate such status and amounts on their Ballots. Such contentions, however, will be subject to potential objection. The inclusion of allegedly Secured Claims in **Exhibit "D"** in no way prejudices such Creditor's Claim. The listing in **Exhibit "D"** is solely for such Creditors' convenience and benefit in the event they elect to waive their security on their Ballot. The listing of a Claim in **Exhibit "D"** also does not establish that the Claim or its amount is Allowed and does not waive or eliminate any existing or potential objection to such Claim other than as to its "Reliance Claim" status, to the extent provided as specified in this paragraph and under the Plan. Thus, other objections to the Claim still may be brought, prosecuted or compromised and, as noted, if the ultimate Allowed Claim amount differs from the "Creditors' Claim Amount" listed or the applicable proof of claim was inaccurate, then the "Reliance Claim Amount" for such Claim also may be reduced or eliminated. The failure to list a Claim on **Exhibit "D"** establishes nothing whatsoever about a Claim. (**Exhibit "D"** was prepared with available information and may not be free from error.)

The Lehman Secured Claims and Lehman Creditor Deficiency Claims set forth in the tables below are calculated using, *inter alia*, the applicable Project Value for the applicable Plan Project and estimates of Cash Collateral from recent monthly operating reports filed by the Voluntary Debtors.

| CLASS 1:  CLASSIFICATION OF SECURED REAL PROPERTY TAX CLAIMS, **IF SO ALLOWED** | Class 1 is Unimpaired | Class 1 Claim Holders are Not Entitled to Vote |
|---|---|---|
| Class | Claims | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | **Group I Debtors** |
| Class 1.1 | Secured Real Property Tax Claim of Los Angeles County against the Ritter Ranch Project | Palmdale Hills; Palmdale Hills 12 |
| Class 1.2 | Secured Real Property Tax Claim of Placer County against the Bickford Ranch Project | SunCal Bickford; SunCal Bickford Scheduled Amount |
| Class 1.3 | Secured Real Property Tax Claim of Los Angeles County against the Acton Project | Acton Estates; Acton Estates 1 |
| Class 1.4 | Secured Real Property Tax Claim of San Bernardino County against the Joshua Ridge Project. | SCC Communities; SCC Communities Scheduled Amount |
| Class 1.5 | None; Class Number Reserved. | |
| Class 1.6.1 | Secured Real Property Tax Claim of Placer County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley; Palmdale Hills 97 |
| Class 1.6.2 | Secured Real Property Tax Claim of San Bernardino County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley |
| Class 1.6.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arthur Riggs pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.6.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.6.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project. | SunCal Summit Valley |

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

| Class 1.6.6 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| --- | --- | --- |
| Class 1.7 | Secured Real Property Tax Claim of Los Angeles County against the Tesoro Project. | Tesoro; Tesoro 2 |
| | | **Group II Debtors** |
| Class 1.8 | Secured Real Property Tax Claim of San Bernardino County against the property Kirby Estates' property. | Kirby Estates; Kirby Estates Scheduled Amount |
| Class 1.9.1 | Secured Real Property Tax Claim of San Bernardino County against Seven Brothers' property, exclusive of Seller Financing Encumbered Parcels. | Seven Brothers |
| Class 1.9.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.9.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.9.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.9.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.10.1 | Secured Real Property Tax Claim of Riverside County against the Beaumont Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Beaumont; SunCal Beaumont 9 |

| Class 1.10.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
|---|---|---|
| Class 1.10.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
| Class 1.10.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project. | SunCal Beaumont |
| Class 1.11 | Secured Real Property Tax Claim of Stanislaus County against the Johannson Ranch Project. | SunCal Johannson; SunCal Johannson Scheduled Amount |

| CLASS 2:  CLASSIFICATION OF LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). | |
| | | **Group I Debtors** | |
| Class 2.1 | **Ritter Ranch Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Palmdale Hills arising ~~form~~from the Ritter Ranch Loan Agreement in the Allowed Amount of $287,252,096.31 and as an Allowed Secured Claim against the Ritter Ranch Project, all Cash Collateral and PH CFD Bonds in the amount of $~~98.5~~94.3 million. | Palmdale Hills; Palmdale Hills: 65 | |
| Class 2.2 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Bickford arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Bickford Ranch Project and all Cash Collateral in the amount of $~~30.1~~30 million. | SunCal Bickford; SunCal Bickford: 16 | |

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

| CLASS 2:  CLASSIFICATION OF LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| Class 2.3 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Acton Estates arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Acton Project and all Cash Collateral in the amount of $6.8 million. | | Acton Estates; Acton Estates: 6 |
| Class 2.4 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against SCC Communities, arising from the Interim Loan Agreement in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Joshua Ridge Project and all Cash Collateral in the amount of $1.2 million. | | SCC Communities; SCC Communities: 9 |
| Class 2.5 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal I arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Interests in SunCal Johannson and SunCal Beaumont and all Cash Collateral in the amount of $3.55 million. | | SunCal I; SunCal I: 1 |
| Class 2.6 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Summit Valley arising from SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against SunCal Summit Valley's portions of the Summit Valley Project, the Interests in Kirby Estates and Seven Brothers, and all Cash Collateral in the amount of $~~5.05~~5.03 million. | | SunCal Summit Valley; SunCal Summit Valley: 12 |
| Class 2.7 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against Tesoro rising from the Interim Loan in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Tesoro Project and all Cash Collateral in the amount of $~~1.9~~1.85 million. | | Tesoro; Tesoro: 7 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, <u>IF SO ALLOWED</u> | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 3.1.1 | Mechanic's Lien Claim of Asphalt Professionals or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | | Palmdale Hills; Palmdale Hills 1 and 46 |
| Class 3.1.2 | Mechanic's Lien Claim of Sierra Cascade Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | | Palmdale Hills; Palmdale Hills 33 |
| Class 3.1.3 | Mechanic's Lien Claim of Staats Construction. Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | | Palmdale Hills; Palmdale Hills 51 |
| Class 3.1.4 | Mechanic's Lien Claim of Southland Farmers, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | | Palmdale Hills; Palmdale Hills 55, 67 and 68 |
| Class 3.1.5 | Mechanic's Lien Claim of Pinnick, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146 (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | Palmdale Hills; Palmdale Hills 62, 63 and 64 |
| Class 3.1.6 | Mechanic's Lien Claim of Chameleon Design Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | | Palmdale Hills; Palmdale Hills 93, 99 |
| Class 3.1.7 | Mechanic's Lien Claim of HD Supply Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | | Palmdale Hills; Palmdale Hills 15 |
| Class 3.1.8 | Mechanic's Lien Claim of Park West Landscape or its assignee or successor against the Ritter Ranch Project in the amount of $27,624.70. | | Palmdale Hills; Palmdale Hills 109 |
| Class 3.2.1 | Mechanic's Lien Claim of MHM Engineers or its assignee or successor against the Bickford Ranch Project in the amount of $8,916. | | SunCal Bickford; SunCal Bickford 5 |

| CLASS 3:  CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.2.2 | Mechanic's Lien Claim of Land Architecture or its assignee or successor against the Bickford Ranch Project in the amount of $100,245. | | SunCal Bickford; SunCal Bickford 6 |
| Class 3.2.3 | Mechanic's Lien Claim of Kiewit Pacific Co. or its assignee or successor against the Bickford Ranch Project in the amount of $1,868,357. | | SunCal Bickford; SunCal Bickford 10 |
| Class 3.2.4 | Mechanic's Lien Claim of ARB, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $1,052,272. | | SunCal Bickford; SunCal Bickford 15 |
| Class 3.2.5 | Mechanic's Lien Claim of Independent Construction or its assignee or successor against the Bickford Ranch Project in the amount of $117,209. | | SunCal Bickford; SunCal Bickford 28 |
| Class 3.2.6 | Mechanic's Lien Claim of Marques Pipeline, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $330,118. | | SunCal Bickford; SunCal Bickford 29 and 30 |
| Classes 3.3 – 3.5 | None; Claim Numbers Reserved. | | |
| Class 3.6 | Mechanic's Lien Claim of Pacific Soils Engineering or its assignee or successor against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | | SunCal Summit Valley; SunCal Summit Valley 9 |
| | | | **Group II Debtors** |
| Classes 3.7 – 3.9 | None; Claim Numbers Reserved. | | |
| Class 3.10 | Mechanic's Lien Claim of Proactive Engineering or its assignee or successor against the Beaumont Heights Project in the amount of $46,188. (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | SunCal Beaumont; SunCal Beaumont 11 and 12 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| CLASS 4:  CLASSIFICATION OF OTHER SECURED CLAIMS, *IF SO ALLOWED* | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | | | **Group I Debtors** |
| Class 4.1 | Allowed Other Secured Claims against Palmdale Hills | | Palmdale Hills |
| Class 4.2 | Allowed Other Secured Claims against SunCal Bickford | | SunCal Bickford |
| Class 4.3 | Allowed Other Secured Claims against Acton Estates | | Acton Estates |
| Class 4.4 | Allowed Other Secured Claims against SCC Communities | | SCC Communities |
| Class 4.5 | Allowed Other Secured Claims against SunCal I | | SunCal I |
| Class 4.6.1 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arthur Riggs, pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $801,900. | | SunCal Summit Valley; SunCal Summit Valley 4 |
| Class 4.6.2 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $668,250. | | SunCal Summit Valley; SunCal Summit Valley 5 |
| Class 4.6.3 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project in the amount of $200,000. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.6.4 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $1,246,500. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.6.4 | Allowed Other Secured Claims against SunCal Summit Valley | | SunCal Summit Valley |
| Class 4.7 | Allowed Other Secured Claims against Tesoro | | Tesoro |
| | | | **Group II Debtors** |
| Class 4.8 | Allowed Other Secured Claims against Kirby Estates | | Kirby Estates |
| Class 4.9.1 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a | | Seven Brothers; SunCal Summit 17 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 4:  CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $1,388,156. | | |
| Class 4.9.2 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $296,910. | | Seven Brothers; Seven Brothers Scheduled Amount |
| Class 4.9.3 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $880,000. | | Seven Brothers; Seven Brothers Scheduled Amount |
| Class 4.9.4 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $862,000. | | Seven Brothers; Seven Brothers Scheduled Amount |
| Class 4.9.5 | Allowed Other Secured Claims against Seven Brother | | Seven Brothers |
| Class 4.10.1 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $136,229. | | SunCal Beaumont; Palmdale Hills 101 |
| Class 4.10.2 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $130,000. | | SunCal Beaumont; SunCal Beaumont Scheduled Amount |
| Class 4.10.3 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Wayne & Francis Lee pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $650,000. | | SunCal Beaumont; SunCal Beaumont Scheduled Amount |
| Class 4.10.4 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first- | | SunCal Beaumont; SunCal Beaumont 6 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | priority deed of trust against certain portions of Beaumont Heights Project in the amount of $154,742. | | |
| Class 4.10.5 | Allowed Other Secured Claims against SunCal Beaumont | | SunCal Beaumont |
| Class 4.11 | Allowed Other Secured Claims against SunCal Johannson | | SunCal Johannson |

| CLASS 5: CLASSIFICATION OF PRIORITY CLAIMS, IF SO ALLOWED | | Class 5 is Unimpaired | Class 5 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 5.1 | Priority Claims (alleged amount - $10,950). | | Palmdale Hills; Palmdale Hills 70 |
| Class 5.2 | Priority Claims (none alleged) | | SunCal Bickford |
| Class 5.3 | Priority Claims (none alleged) | | Acton Estates |
| Class 5.4 | Priority Claims (none alleged) | | SCC Communities |
| Class 5.5 | Priority Claims (none alleged) | | SunCal I |
| Class 5.6 | Priority Claims (none alleged) | | SunCal Summit Valley |
| Class 5.7 | Priority Claims (none alleged) | | Tesoro |
| | | | **Group II Debtors** |
| Class 5.8 | Priority Claims (none alleged) | | Kirby Estates |
| Class 5.9 | Priority Claims (none alleged) | | Seven Brothers |
| Class 5.10 | Priority Claims (none alleged) | | SunCal Beaumont |
| Class 5.11 | Priority Claims (none alleged) | | SunCal Johannson |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 6:  CLASSIFICATION OF RELIANCE CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS | | Class 6 is Impaired | Class 6 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| Class 6.1 | Reliance Claims against Palmdale Hills | | Palmdale Hills - Various Filed and Scheduled |
| Class 6.2 | Reliance Claims against SunCal Bickford | | SunCal Bickford - Various Filed and Scheduled |
| Class 6.3 | Reliance Claims against Acton Estates | | Acton Estates - Various Filed and Scheduled |
| Class 6.4 | Reliance Claims against SCC Communities | | SCC Communities - Various Filed and Scheduled |
| Class 6.5 | Reliance Claims against SunCal I | | SunCal I - Various Filed and Scheduled |
| Class 6.6 | Reliance Claims against SunCal Summit Valley | | SunCal Summit Valley - Various Filed and Scheduled |
| Class 6.7 | Reliance Claims against Tesoro | | Tesoro - Various Filed and Scheduled |

| CLASS 7:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS[2] | | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 7.1 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of Lehman Commercial or its assignee or successor arising from the Ritter Ranch Loan Agreement in the Allowed Amount of $188,777,242192,948,912) | | Palmdale Hills |
| Class 7.2 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of: (a) Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $312,616,387313,264,891 and (b) Lehman ALI or its assignee or successor arising from the Bickford Second Lien Loan Agreement in the Allowed Amount of $56,494,059) | | SunCal Bickford |

[2] The General Unsecured Claims of the Lehman Creditors indicated below are calculated for Lehman Creditor with recourse Secured Claims against a Plan Debtor's Project by deducting the applicable Project Value and Cash Collateral from the total Allowed Claim arising under the subject Lehman Loan, first against the more senior debt.  For a Lehman Creditor of an entity that pledged as collateral to the Lehman Creditor interests in another Plan Debtor that owns a Plan Project, such General Unsecured Claims are calculated by deducting from the total Allowed Amount of the subject Lehman Loan, Cash Collateral of the obligor Debtor and the remainders after deducting Allowed Claims against each subsidiary Plan Debtor that owns a Project from the Project Value and its Cash Collateral.

| CLASS 7:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS[2] | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|
| <u>Class</u> | <u>Claims</u> | <u>VD Plan Debtor</u> |
| | | |
| Class 7.3 | General Unsecured Claims (including the Allowed Lehman Creditor Deficiency Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $336,421,391) | Acton Estates |
| Class 7.4 | General Unsecured Claims | SCC Communities |
| Class 7.5 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $~~339,666,269~~339,667,594) | SunCal I |
| Class 7.6 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $~~338,171,317~~338,187,902) | SunCal Summit Valley |
| Class 7.7 | General Unsecured Claims | Tesoro |

| CLASS 8:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP II DEBTORS | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|
| <u>Class</u> | <u>Claims</u> | <u>VD Plan Debtor</u> |
| Classes 8.1 – 8.7 | None; Claim Numbers Reserved. | |
| Class 8.8 | General Unsecured Claims | Kirby Estates |
| Class 8.9 | General Unsecured Claims | Seven Brothers |
| Class 8.10 | General Unsecured Claims | SunCal Beaumont |
| Class 8.11 | General Unsecured Claims | SunCal Johannson |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 9:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | | | **Group I Debtors** |
| Class 9.1 | Settling Bond Issuer-Related Future Work Claims against Palmdale Hills (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 107 was filed in the aggregate penal amount of $24,859,950, and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 54 was filed in the contingent amount of $155,426,657) | | Palmdale Hills – Various Filed and Scheduled |
| Class 9.2 | Settling Bond Issuer-Related Future Work Claims against SunCal Bickford (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 24 was filed in the amount of $2,827,548) (unliquidated) and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 22 was filed in the contingent amount of $155,426,657) | | SunCal Bickford – Various Filed and Scheduled |
| Class 9.3 | Settling Bond Issuer-Related Future Work Claims against Acton Estates (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 7 was filed in the amount of $1,290,000 (unliquidated), and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | | Acton Estates – Various Filed and Scheduled |
| Class 9.4 | Settling Bond Issuer-Related Future Work Claims against SCC Communities (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, (a) the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 4 was filed in the amount of $25,000, and (b) the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | | SCC Communities – Various Filed and Scheduled |
| Class 9.5 | Settling Bond Issuer-Related Future Work Claims against SunCal I (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which | | SunCal I – Various Filed and Scheduled |

| CLASS 9:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|
| Class | Claims | VD Plan Debtor and Basis for Claims |
| | Proof of Claim No. 2 was filed in the contingent amount of $155,426,657) | |
| Class 9.6 | Settling Bond Issuer-Related Future Work Claims against SunCal Summit Valley (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 15 was filed in the contingent amount of $155,426,657) | SunCal Summit Valley – Various Filed and Scheduled |
| Class 9.7 | Settling Bond Issuer-Related Future Work Claims against Tesoro (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 8 was filed in the contingent amount of $155,426,657) | Tesoro – Various Filed and Scheduled |
| | | **Group II Debtors** |
| Class 9.8 | Settling Bond Issuer-Related Future Work Claims against Kirby Estates (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 2 was filed in the contingent amount of $155,426,657) | Kirby Estates – Various Filed and Scheduled |
| Class 9.9 | Settling Bond Issuer-Related Future Work Claims against Seven Brothers (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 1 was filed in the contingent amount of $155,426,657) | Seven Brothers – Various Filed and Scheduled |
| Class 9.10 | Settling Bond Issuer-Related Future Work Claims against SunCal Beaumont (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the contingent amount of $155,426,657) | SunCal Beaumont – Various Filed and Scheduled |
| Class 9.11 | Settling Bond Issuer-Related Future Work Claims against SunCal Johannson (including, to the extent arising from a Future Work Bond of a VD Plan Debtor, the Claim of Arch, if Allowed, for which Proof of Claim No. 5 was filed in the contingent amount of $155,426,657) | SunCal Johannson – Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 10:  CLASSIFICATION OF INTERESTS, IF ALLOWED | | Class 10 is Impaired | Class 10 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote |
|---|---|---|---|
| Class | Interests (and alleged Holders) | | VD Plan Debtor and Basis for Interests |
| Class 10.1 | Interests in Palmdale Hills (of SCC Palmdale). | | Palmdale Hills Scheduled |
| Class 10.2 | Interests in SunCal Bickford (of SunCal I). | | SunCal Bickford Scheduled |
| Class 10.3 | Interests in Acton Estates (of SunCal I). | | Acton Estates Scheduled |
| Class 10.4 | Interests in SCC Communities (of SCC LLC). | | SCC Communities Scheduled |
| Class 10.5 | Interests in SunCal I (of SCC LLC). | | SunCal I Scheduled |
| Class 10.6 | Interests in SunCal Summit Valley (of SunCal I). | | SunCal Summit Valley Scheduled |
| Class 10.7 | Interests in Tesoro (of SCC LLC). | | Tesoro Scheduled |
| Class 10.8 | Interests in Kirby Estates (of SunCal Summit Valley). | | Kirby Estates Scheduled |
| Class 10.9 | Interests in Seven Brothers (of SunCal Summit Valley). | | Seven Brothers Scheduled |
| Class 10.10 | Interests in SunCal Beaumont (of SunCal I). | | SunCal Beaumont Scheduled |
| Class 10.11 | Interests in SunCal Johannson (of SunCal I). | | SunCal Johannson Scheduled |

# VI

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Any references in the Plan to Classes 1 through 10 are summary references made for convenience only to the group of subclasses of each such Class.  Voting and treatment for each subclass is to remain distinct. Regardless of the treatment provided in the Plan for any Holder of a Claim, the Holder may agree to accept less favorable treatment and no Creditor shall receive more than 100% of its Allowed Claim (plus any interest, fees or other cost or expenses payable under this

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan).  Provisions for treatment below for Holders of Allowed Claims are not an indication that any particular Claim is Allowed unless expressly provided.

### 6.1    Treatment of Allowed Secured Real Property Tax Claims (Class 1).

The treatment of any Allowed Secured Real Property Tax Claims (Class 1) under the Plan is as follows:

#### 6.1.1    Voting and Impairment.

Class 1 is Unimpaired under the Plan, and each Holder of an Allowed Secured Real Property Tax Claim is not entitled to vote on the Plan.

#### 6.1.2    Liens.

As of the Effective Date, each Holder of an Allowed Secured Real Property Tax Claim, on account of such Claim, shall retain its underlying Liens on the applicable real property collateral pending full payment in accordance with this Plan.

#### 6.1.3    Distributions and Distribution Dates.

Each Allowed Secured Real Property Tax Claim shall receive, on account of such Claim, one of the three following alternative treatments identified immediately below, performance of which, when due, shall be undertaken by the owner of the Plan Project serving as collateral for the subject Claim as its own obligation and that of the Liquidating Trustee, in full and final satisfaction of each such Allowed Secured Real Property Tax Claim.

##### (a)    Lump Sum Cure Payment - Section 1124(2) Unimpairment.

On the Effective Date, the applicable Allowed Secured Real Property Tax Claim shall be cured and reinstated, and, as so cured and reinstated, shall receive a lump sum payment in full on the Effective Date from the Lehman Plan Funding.  Under this treatment, the Holder of an Allowed Secured Real Property Tax Claim shall be paid Cash on the Effective Date equal to:

(1)  Base Amount:  The amount of such Allowed Secured Real Property Tax Claim, including any applicable costs, fees or charges, but only to the extent all such amounts were due as of the first date (the "Default Date") when last payable without any amounts that only would be due based on the lack of timely payment (and thus excluding any penalties for untimely payment) (the "Base Amount"); plus

(2)  <u>Minimum Damages</u>:  Interest on the Base Amount from the Default Date until payment payable at the federal judgment interest rate applicable as of the Confirmation Date (the "<u>Minimum Damages</u>"); plus

(3)  <u>Additional Damages or Additional Interest</u>:  To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the Minimum Damages (including any contention that a higher penalty or interest rate applies), it will receive the excess as set forth in Plan Section 10.2.4; or

**(b)**      **Quarterly Payments.**

As permitted by Bankruptcy Code § 1129(a)(9)(D), each Holder of an Allowed Secured Real Property Tax Claim shall receive value as of the Effective Date equal to 100% of its Allowed Secured Real Property Tax Claim through equal Cash payments from the owner of that Plan Project serving as collateral for the subject Claim, as its own obligation and that of the Liquidating Trustee, totaling the Allowed Amount of the Claim, , including any applicable costs, fees or charges and <u>plus</u> any amounts payable under California Revenue & Taxation Code §§ 2618 & 4103 (whether denominated as interest or penalties), with each payment to be made on the last Business Day of each third full-calendar month following the Effective Date (*provided that* the first payment need not be made any sooner than thirty (30) days following the Effective Date).  Such periodic payments shall continue until November 6, 2013, on which date (within the five-year payment period mandated under section 1129(a)(9)(D) the final payment shall be due.  Prepayments are permitted any time on or after the Effective Date, including payment in full of the Allowed Amount of the Claim, including any applicable costs, fees or charges and <u>plus</u> any accrued amounts payable under California Revenue & Taxation Code §§ 2618 & 4103, but only with the consent of (and shall be made if at the direction of) a Lehman VD Lender; or

**(c)**      **Simple Unimpairment.**

As of the Effective Date, the Holder of any Allowed Secured Real Property Tax Claim, on account of such Claim, shall have left unaltered its legal, equitable and/or contractual rights as a

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

Holder of such Allowed Secured Real Property Tax Claim and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

### (d)    Determination of Applicable Treatment.

For subclasses as to which the taxes do <u>not</u> relate to Seller Financing Encumbered Parcels, the first alternative treatment shall be applicable unless the applicable Lehman VD Lender selects and notifies the subject Creditor prior to the Effective Date of its selection of the second or third alternative treatments.

For subclasses as to which the taxes relate to Seller Financing Encumbered Parcels, the third alternative treatment shall be applicable unless the applicable Lehman VD Lender selects and notifies the subject Creditor prior to the Effective Date of its selection of the first or second alternative treatments.

### 6.2    Treatment of Lehman Secured Claims (Class 2).

The treatment of Lehman Secured Claims (Class 2) under the Plan shall be as follows:

### 6.2.1    Voting.

Class 2 is <u>Impaired</u> under the Plan, and each Holder of a Lehman Secured Claim is <u>entitled to vote</u> on the Plan.

### 6.2.2    Liens.

As of the Effective Date, each Holder of a Lehman Secured Claim, on account of such Claim, shall <u>retain its Lehman Claim Liens</u> pending full payment in Cash of both the secured and unsecured portions of its Claim.

### 6.2.3    Claims.

Each Claim of a Lehman VD Lender shall be Allowed for voting and all other purposes of this Plan in the amount and with the status as a Secured Claim or General Unsecured Claim as set forth in the classification tables in Plan Article V. above.

### 6.2.4    Disposition of Collateral

(a)    On the Effective Date, the Plan Projects (other than any Seller Financing Encumbered Parcel designated by a Lehman VD Lender for conveyance in a filed notice) shall be conveyed free and clear of Encumbrances other than the Lehman Claim Liens and other Permitted Liens, as more

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

fully set forth in Plan Section 8.7.1, to one or more Lehman Nominees, as designated by the Lehman VD Lender(s) with a Secured Claim against the applicable Plan Project; and

(b)    On the Effective Date, the Liquidating Trustee will pay all Cash Collateral for a Lehman Secured Claim to the applicable Lehman VD Lender or, may, at the direction of the Lehman VD Lenders, use all or a portion thereof to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof, unless the applicable Lehman VD Lender(s) otherwise directs), with the balance, if any, payable to the applicable Lehman VD Lender; and

(c)    Any other remaining collateral for a Lehman Secured Claim may be retained and liquidated or sold by the Liquidating Trustee with the Net Cash Proceeds therefrom to be paid to the applicable Lehman VD Lender, *provided that:*

(i)    the Liquidating Trustee and Lehman VD Lenders may agree to any alternative disposition of such collateral, including transfer of the collateral to the applicable Lehman VD Lender or abandonment to the applicable VD Plan Debtor, which abandonment shall be deemed to occur on notice from the Liquidating Trustee;

(ii)    the Lehman VD Lender, on reasonable notice to the Liquidating Trustee, may require turnover to it of such collateral, including the PH CFD Bonds; and

(iii)    if no disposition of such collateral occurs within six (6) months after the Effective Date, the Liquidating Trustee shall give the Lehman VD Lenders thirty (30) days' notice indicating the Liquidating Trustee's intention to turn over the collateral to a particular Lehman VD Lender and describing the collateral and:

(1)    If before the expiration of the notice period, the Lehman VD Lender rejects such turn over, the Liquidating Trustee shall abandon such collateral to the applicable VD Plan Debtor, which abandonment shall be deemed to occur on subsequent notice from the Liquidating Trustee to the VD Plan Debtor and applicable Lehman VD Lenders; and

(2)    If the Lehman VD Lender does not reject such turn over, upon expiration of the notice period, the Liquidating Trustee shall turn over such collateral to the applicable Lehman VD Lenders.

**6.3**    **Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3).**

The treatment of any Allowed Sr. Secured Mechanic's Lien Claims (Class 3) under the Plan shall be as follows:

**6.3.1    Voting and Impairment.**

Class 3 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Sr. Secured Mechanic's Lien Claim in Class 3, if any, is <u>not entitled to vote</u> on the Plan.

The Lehman Proponents dispute that any Mechanic's Lien Claims against any Group I Debtor (other than SunCal Summit Valley) could be Allowed as Sr. Secured Mechanic's Lien Claims because they believe that the Lehman VD Lenders' Liens are senior Encumbrances and there is no value in the junior Liens of the Holders of such Mechanic's Lien Claims against any Group I Debtor. For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim against any Group I Debtor, the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, thereby affording the Creditor, as more fully set forth below, the opportunity to elect to receive the Lehman Distribution Enhancement if its Claim is Allowed. **If the Creditor holding a Mechanic's Lien Claim against any Group I Debtor instead waits to see whether its Claim later is deemed to be entitled to "secured" status and it is unsuccessful in such effort, even if its Claim is Allowed as a Reliance Claim or General Unsecured Claim, it will only receive 1% on its Claim plus a proportional share of Residual Cash and it will not have the opportunity to elect to receive the Lehman Distribution Enhancement.**

**6.3.2    Liens.**

As of the Effective Date, each Holder of an Allowed Sr. Secured Mechanic's Lien Claim in Class 3, if any, on account of such Claim, shall <u>retain its underlying Liens</u> on the applicable collateral pending full payment;

### 6.3.3    Distributions and Distribution Dates.

Each Allowed Sr. Secured Mechanic's Lien Claim, if any, shall receive, on account of such Claim, one of the two following alternative treatments identified immediately below in full and final satisfaction of any such Allowed Sr. Secured Mechanic's Lien Claim:

#### (a)    Section 1124(2) Unimpairment.

On the Effective Date, the applicable Allowed Sr. Secured Mechanic's Lien Claim shall be cured and reinstated as of the first date when last payable without interest, fees or penalties.  The Holder of such Claim shall receive from the owner of the Plan Project serving as collateral for the subject Claim (or from the applicable Settling Bond Issuer for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Backed Non-Future Work Claims ), as an obligation of such owner of the Plan Project and the Liquidating Trustee for the applicable Estate, payment in full equal to the amount of such Allowed Sr. Secured Mechanic's Lien Claim due as of the first date when last payable without interest, fees or penalty, plus any interest thereupon from such date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged.  Such amounts shall be payable in Cash as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date or, otherwise, shall be payable by curing any defaults and paying any fees in Cash on the Effective Date and making further payments in Cash as required under the applicable contract after reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)); or

#### (b)    Simple Unimpairment.

As of the Effective Date, the Holder of any such Allowed Sr. Secured Mechanic's Lien Claim, on account of such Claim, shall have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Sr. Secured Mechanic's Lien Claim and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

#### (c)    Determination of Applicable Treatment.

The first treatment indicated above shall be applicable to each subclass <u>unless</u>, as to such subclass either the Lehman VD Lender with a Secured Claim against the applicable Plan Project or

the Lehman Nominee, if any, taking title to such Plan Project selects and, prior to payment, notifies the applicable Creditor or Creditors of its selection of, the second alternative treatment, in which case the second alternative treatment shall be applicable; provided that only the first treatment shall be applicable for Allowed Sr. Secured Mechanic's Lien Claims that are Settling Bond Issuer-Backed Non-Future Work Claims ;

### 6.3.4    Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.

(a)    The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 3, each Holder of an Allowed Lehman-Owned Settling Bond Issuer-Related Claim in Class 3, on account of such Claim, only shall be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) other Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims against Group I Debtors (Class 6) and (ii) Allowed General Unsecured Claims against Group I Debtors (Class 7).

(b)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 3, shall forego certain payments from the VD Plan Debtors' Estates for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date or may waive contentions that such Claim is a Secured Claim.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 9.  (*See* Plan Section 8.8); and

### 6.3.5    Unsecured Deficiency Claims.

If a Holder of an Allowed Sr. Secured Mechanic's Lien Claim contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Sr. Secured Mechanic's Lien Claim then, by the Unsecured Deficiency Claims Bar Date (which is no later than the first Business Day that is at least thirty (30) days following the Effective Date) and regardless of any prior Filing of one or more Proofs of Claim by such Holder, such Holder must file (and serve upon the Liquidating

Trustee and the Lehman VD Lenders) an amended Proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, inter alia, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if Allowed, shall be treated as a General Unsecured Claim in Class 7 or Class 8, as applicable. (With respect to Class 7 treatment, the exchange of a Creditors' Assignment / Release for Lehman for the Lehman Distribution Enhancement is a settlement offer under the Plan to be effectuated through the voting / balloting process for the Plan and is not available thereafter and thus is not available to Claims asserted in accordance with this provision.)

**6.4    Treatment of Allowed Other Secured Claims (Class 4).**

The treatment of any Allowed Other Secured Claims in Class 4 under the Plan shall be as follows:

**6.4.1    Voting and Impairment.**

Class 4 is Unimpaired under the Plan, and each Holder of an Allowed Secured Claim in Class 4, if any, is not entitled to vote on the Plan.

**6.4.2    Liens.**

As of the Effective Date, each Holder of an Allowed Other Secured Claim in Class 4, if any, on account of such Claim, shall retain its underlying Liens on the applicable collateral pending full payment.

**6.4.3    Distributions and Distribution Dates.**

Unless agreed otherwise with the applicable Creditor, each Allowed Other Secured Claim, including, without limitation, any Seller Financing Secured Claim, will receive, in full and final satisfaction of any such Allowed Other Secured Claim, the first following treatment identified immediately below unless the Lehman Proponents or any of them selects the second or third following alternative treatment identified below, in which case the selected alternative treatment shall be applicable:

**(a)    Simple Unimpairment.**

As of the Effective Date, the Holder of any such Allowed Other Secured Claim in Class 4, on account of such Claim, shall have left unaltered its legal, equitable and contractual rights as a Holder

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of such Allowed Other Secured Claim in Class 4 and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; or

(b)    **Unimpairment With Surrender or Abandonment.**The Liquidating Trustee will abandon or surrender to the Holder of any such Allowed Other Secured Claim in Class 4 the property securing such Allowed Other Secured Claim in Class 4 and will turn over possession of such collateral to the Holder of such Allowed Other Secured Claim upon the Filing, prior to the closing of the Case, of a notice so providing therefor either by: (a) any Lehman VD Lender or (b) the Liquidating Trustee, either with the consent of a Lehman VD Lender or upon order of the Court after the refusal of the Lehman VD Lenders to provide reasonable financial support for the maintenance of such property.

(c)    **Section 1124(2) Unimpairment.**

On the Effective Date, the applicable Allowed Other Secured Claim shall be cured and reinstated as of the first date when last payable without interest, fees or penalties.  The Holder of such Claim shall receive, as an obligation of the Liquidating Trustee for the applicable Estate, payment in full equal to the amount of such Allowed Other Secured Claim in Class 4 due as of the first date when last payable without interest, fees or penalty, plus any interest thereupon from such date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged.  Such amounts shall be payable in Cash as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date or, otherwise, shall be payable by curing any defaults and paying any fees in Cash on the Effective Date and making further payments in Cash as required under the applicable contract or statute after reinstatement (s*ee* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)).

(d)    **Unsecured Deficiency Claims.**

If a Holder of an Allowed Other Secured Claim contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Other Secured Claim then, by the Unsecured Deficiency Claims Bar Date (which is no later than the first Business Day that is at least thirty (30) days following the Effective Date) and regardless of any prior Filing of one or more Proofs of Claim

by such Holder, such Holder must file (and serve upon the Liquidating Trustee and the Lehman VD Lenders) an amended Proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, *inter alia*, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if Allowed, shall be treated as a General Unsecured Claim in Class 7 or Class 8, as applicable. (With respect to Class 7 treatment, the exchange of a Creditors' Assignment / Release for Lehman for the Lehman Distribution Enhancement is a settlement offer under the Plan to be effectuated through the voting / balloting process for the Plan and is not available thereafter and thus is not available to Claims asserted in accordance with this provision.)

**6.5**    **Treatment of Allowed Priority Claims (Class 5).**

The treatment of any Allowed Priority Claims in Class 5 under the Plan shall be as follows:

**6.5.1**    **Voting and Impairment.**

Class 5 is Unimpaired under the Plan, and each Holder of an Allowed Priority Claim in Class 5 is not entitled to vote on the Plan.

**6.5.2**    **Distributions and Distribution Dates.**

Each Holder of an Allowed Priority Claim in Class 5 shall be paid, on account of such Claim as an obligation of the Liquidating Trustee for the applicable Estate, the full amount of such Allowed Priority Claim in Cash by the later of (i) the Effective Date, and (ii) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim.

**6.6**    **Treatment of Allowed Reliance Claims Against Group I Debtors (Class 6).**

The treatment of any Allowed Reliance Claims in Class 6 under the Plan shall be as follows:

**6.6.1**    **Voting and Impairment.**

Class 6 is Impaired under the Plan, and each Holder of an Allowed Reliance Claim against a Group I Debtor is entitled to vote on the Plan.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.  For any Creditor to vote its Claim as a Reliance Claim, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.

### 6.6.2   Distributions.

#### (a)      Lehman Creditor Distribution Funding.

##### (i)      Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) shall receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

##### (ii)      Lehman Distribution Enhancement.

A Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a Reliance Claim in Class 6 (against a Group I Debtor), who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with this Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, shall, to the extent its Reliance Claim in Class 6 is Allowed, have reserved the right to the following and thereby shall receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders:

(1)      *Additional 39% Recovery (Increasing Recovery to 40%)*:  The Liquidating Trustee, in addition to the Guaranteed Minimum Distribution, shall pay an additional thirty-nine percent (39%) of the Allowed Amount of the Allowed Class 6 Reliance Claim against the applicable Group I Debtor; and

(2)      *Projected Distribution Bump Up to 50% Recovery:* If the Classes 6/7 Distribution Amount as to a particular Group I Debtor does not exceed the Bump Up Threshold for that Group I Debtor (which Bump Up Thresholds, in the aggregate, total $2.5 million), then, the Projected

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Distribution Bump Up shall apply and the Liquidating Trustee, in addition to the Guaranteed Minimum Distribution, instead, shall pay an additional forty-nine percent (49%) of the Allowed Amount of the Allowed Class 6 Reliance Claim against the applicable Group I Debtor.

**(b)** **Distribution of Residual Cash.**

Each Holder of an Allowed Reliance Claim against a Group I Debtor, shall receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor: (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 7.

**(c)** **Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 6.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed Reliance Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired by such Settling Bond Issuer as part of any such payment or settlement).

**6.6.3** **Distribution Dates.**

Distributions in the amounts provided under this Plan are payable to Holders of Allowed Reliance Claims in Class 6 after the Effective Date as follows:

**(a)** **Lehman Creditor Distribution Funding.**

**(i)** **Lehman Guaranteed Minimum Distribution.**

Any Lehman Guaranteed Minimum Distribution due as to an Allowed Reliance Claim in Class 6 or portion thereof that is not a Future Obligation shall be payable within thirty (30) days following such Claim's Allowance Determination Date;

**(ii)** **Lehman Distribution Enhancement.**

For each Allowed Reliance Claim in Class 6 or portion thereof entitled to the Lehman Distribution Enhancement that is not a Future Obligation, the applicable Lehman Distribution Enhancement shall be payable ~~by the later of (a)~~within thirty (30) days following such Claim's

Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims (which resolution would enable, *inter alia*, a determination of whether the Projected Distribution Bump Up is available), then, the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims.

**(b)    Residual Cash.**

Any Distribution of Residual Cash for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

**(c)    Distributions as to a Future Obligation.**

For an Allowed Class 6 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable by the later of: (a) the date determined as set forth otherwise in the Plan for such a Distribution for an Allowed Class 6 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (e.g., the obligation becomes due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

**6.6.4    Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)    The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 6, for Allowed Reliance Claims of the Lehman VD Lenders against Group I Debtors, if any:

(1)    the Lehman VD Lenders, as the Holders thereof, shall forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)    to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

shall be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 7.

(ii)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 6, shall forego certain payments from the VD Plan Debtors' Estates for any Allowed Reliance Claims in Class 6 that also are Settling Bond Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 9.  (*See* Plan Section 8.8.)

**6.7    Treatment of Allowed General Unsecured Claims Against Group I Debtors (Class 7).**

The treatment of any Allowed General Unsecured Claims in Class 7 under the Plan shall be as follows:

**6.7.1    Voting and Impairment.**

Class 7 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim against a Group I Debtor is entitled to vote on the Plan.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.  A Creditor can vote its Claim as a General Unsecured Claim or, if eligible, may mark its Ballot to indicate that it contends it holds a Reliance Claim.

**6.7.2    Distributions.**

**(a)    Lehman Creditor Distribution Funding.**

**(i)    Lehman Guaranteed Minimum Distribution.**

Each Holder of an Allowed General Unsecured Claim in Class 7 shall receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

### (ii)     Lehman Distribution Enhancement.

A Holder of an Allowed General Unsecured Claim in Class 7 (against a Group I Debtor) will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a General Unsecured Claim in Class 7 (against a Group I Debtor), who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with this Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, shall, to the extent its General Unsecured Claim in Class 7 is Allowed, have reserved the right to the following and thereby shall receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders:

*Increase to 5% Recovery*:  The Liquidating Trustee, in addition to the Guaranteed Minimum Distribution, shall pay an additional four percent (4%) of the Allowed Amount of the Allowed Class 7 General Unsecured Claim against the applicable Group I Debtor.

### (b)     Distribution of Residual Cash.

Each Holder of an Allowed General Unsecured Claim in Class 7, shall receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and (iii) other Allowed General Unsecured Claims in Class 7.

### (c)     Distributions for Allowed Bond-Backed Non-Future Work Claims in Class 7.

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed General Unsecured Claims that are Bond-Backed Claims, which,

thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired as part of any such payment or settlement).

### 6.7.3    Distribution Dates.

Distributions in the amounts provided under this Plan are payable to Holders of Allowed General Unsecured Claims in Class 7 after the Effective Date as follows:

#### (a)    Lehman Creditor Distribution Funding.

##### (i)    Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed General Unsecured Claim in Class 7 or portion thereof that is not a Future Obligation shall be payable within thirty (30) days following such Claim's Allowance Determination Date;

##### (ii)    Lehman Distribution Enhancement.

For each Allowed General Unsecured Claim in Class 7 or portion thereof entitled to the Lehman Distribution Enhancement that is not a Future Obligation, the applicable Lehman Distribution Enhancement shall be payable ~~by the later of (a)~~within thirty (30) days following such Claim's Allowance Determination Date ~~and (b) forty-five days following the Effective Date~~; and

#### (b)    Residual Cash.

Any Distribution of Residual Cash for an Allowed Class 7 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

#### (c)    Distributions as to a Future Obligation.

For an Allowed Class 7 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable by the later of: (a) the date determined as set forth otherwise in the Plan for such a Distribution for an Allowed Class 7 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (*e.g.*, the obligation is due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**6.7.4    Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)      The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 7, for Allowed General Unsecured Claims in Class 7 of the Lehman VD Lenders:

(1)      the Lehman VD Lenders, as the Holders thereof, shall forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)      to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only shall be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and (iii) other Allowed General Unsecured Claims in Class 7.

(ii)      Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 7, shall forego certain payments from the VD Plan Debtors' Estates for Allowed General Unsecured Claims in Class 7 that also are Settling Bond Issuer-Owned Non-Future Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 9.  (*See* Plan Section 8.8.)

**6.8      Treatment of Allowed General Unsecured Claims Against Group II Debtors (Class 8).**

The treatment of any Allowed General Unsecured Claims in Class 8 under the Plan shall be as follows:

### 6.8.1    Voting and Impairment.

Class 8 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim against a Group II Debtor is entitled to vote on the Plan.

### 6.8.2    Distributions:  Lehman Creditor Distribution Funding.

Each Holder of an Allowed General Unsecured Claim in Class 8 shall receive, on account of such Claim, a Distribution in Cash equal to the lesser of:

(a)        100% of the Allowed Amount of such Claim, plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date; and

(b)        a Pro Rata distribution of:

(1)        any positive sum resulting from subtracting the Allowed Senior Claims against the applicable VD Plan Debtor from the Project Value for the applicable VD Plan Debtor's Plan Project; and

(2)        any Residual Cash of the Estate of the applicable VD Plan Debtor;

provided that such Pro Rata Distribution shall not be less than 1% of each Allowed Claim.

### 6.8.3    Distribution Dates.

Distributions in the amounts provided under this Plan are payable to Holders of Allowed General Unsecured Claims in Class 8 after the Effective Date as follows:

#### (a)        Lehman Creditor Distribution Funding.

For each Allowed General Unsecured Claim in Class 8 or portion thereof that is not a Future Obligation, Distributions shall be payable ~~by the later of (a)~~within thirty (30) days following such Claim's Allowance Determination Date ~~and (b) forty-five days following the Effective Date~~; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final resolution of Disputed Claims.

#### (b)        Residual Cash.

Any Distribution of Residual Cash for an Allowed Class 8 Claim or portion thereof that is not a Future Obligation shall be payable at such times as determined in the sole discretion of the

Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

### (c)    Distributions as to a Future Obligation.

For an Allowed Class 8 Claim or portion thereof that is a Future Obligation, each Distribution due under the Plan is payable the later of: (a) the date determined as set forth otherwise in the Plan for such a Distribution for an Allowed Class 8 Claim or portion thereof that is not a Future Obligation; and (b) thirty (30) days following the date that (i) the Claim or portion thereof is not a Future Obligation (e.g., the obligation is due, liquidated and non-contingent) and (ii) the Creditor holding such Claim sends a notice of such change in status of such Claim or portion thereof to the Lehman Proponents at the address set forth in Plan Section 17.6.

### 6.9    Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 9).

The treatment of any Allowed Settling Bond Issuer-Related Future Work Claims in Class 9 under the Plan shall be as follows:

### 6.9.1    Voting and Impairment.

Class 9 is Impaired under the Plan, and the Holders of the Allowed Settling Bond Issuer-Related Future Work Claims are entitled to vote on the Plan.

### 6.9.2    Distributions and Distribution Dates.

Allowed Settling Bond Issuer-Related Future Work Claims consist of Allowed Settling Bond Issuer-Backed Future Work Claims and Allowed Settling Bond Issuer-Owned Future Work Claims. Each Holder of an Allowed Settling Bond Issuer-Related Future Work Claim shall receive the following on account of its Claim:

(i)    The related Future Work obligations shall be performed, with no penalties to be applicable (and, to the extent applicable, with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date);

(ii)    The initial payment for the performance of the Future Work obligations shall be the obligation of the applicable Settling Bond Issuer that issued a Future Work

Bond with respect to the subject Claim and shall not be an obligation of the Liquidating Trustee, Lehman Nominee or any VD Plan Debtor's Estate;

(iii)    The Lehman Nominee that takes title to the Plan Project to which the subject Claim relates shall cooperate in connection with the performance of such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer;

(iv)    As and to the extent provided in the applicable Settling Bond Issuer Agreement (and subject to the terms and conditions thereof):

(1)    A Lehman Related Party(ies) shall take an assignment from the applicable Settling Bond Issuer of certain of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and Bond Obligors (unless such Claims are released); and

(2)    In exchange therefor, the Lehman Nominee that takes title to the Plan Project to which the subject Claim relates is to reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds; and

(v)    Nonetheless, pursuant to the Bond Modification Discussions or otherwise, the Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim may agree to forego performance or payment for certain Future Work, such as may occur specifically as to such performance or payment of Future Work or through release of the applicable Future Work Bond.

**6.10    Treatment of Allowed Interests (Class 10).**

The treatment of any Allowed Interests in Class 10 under the Plan shall be as follows:

(a)    Class 10 is Impaired under the Plan, and each Holder of an Allowed Interest is deemed to reject the Plan and is not entitled to vote; and

(b)    On the Effective Date, all such Allowed Interests shall be cancelled and each Holder thereof shall not be entitled to, and shall not, retain or receive any property or interest in property on account of its Interest.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## VII

## ACCEPTANCE OR REJECTION OF THE PLAN

**7.1**     **Who May Vote to Accept/Reject the Plan.**

Subject to the following, a Holder of a Claim or Interest has a right to vote for or against the Plan if that Holder of the Claim or Interest has a Claim, which is (1) Allowed or Allowed for voting purposes, (2) classified in an Impaired Class and (3) receives something under the Plan.

Allowed Claims in Classes 2, 6, 7, 8, and 9 are classified as Impaired and receive or retain property or rights under the Plan and, thus, Holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

**7.2**     **Who Can Vote in More than One Class.**

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one Ballot for the secured part of the Claim and another Ballot for the Unsecured Claim. Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of General Unsecured Claims (Class 7) and Reliance Claims (Class 6)), and may vote the Allowed Claims held in each Class.

**7.3**     **Votes Necessary for a Class to Accept the Plan.**

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

**7.4**     **Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have not been Allowed; (2) Claims that, pursuant to Bankruptcy Code sections 507(a)(2), (a)(3) or (a)(8), are entitled to priority; (3) Claims in Unimpaired Classes; and (4) Claims in Classes that do not receive or retain any value under the Plan:

(a)     Claims in Unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan.

Classes 1, 3, 4, and 5 are Unimpaired and thus Holders of Allowed Claims in those Classes are not entitled to vote because they are deemed to have accepted the Plan under Bankruptcy Code § 1126(f).

(b)    Claims entitled to priority pursuant to Bankruptcy Code section 507(a)(2), (3) or (8) are not entitled to vote because voting is to determine class acceptance of a Plan under Bankruptcy Code § 1129(a)(8) and such Claims are not to be placed in Classes (and, thus, are unclassified) pursuant to Bankruptcy Code § 1123(a)(1). Instead, such Claims are required to receive certain treatment specified under Bankruptcy Code §§ 1129(a)(9)(A) & (C).

Allowed Administrative Claims and Allowed Priority Tax Claims are unclassified Claims the Holders of which are not entitled to vote.

(c)    Claims in Classes that do not receive or retain any property under the Plan do not vote because such Classes are deemed to have rejected the Plan.

Class 10 Interests are Impaired but Holders of such Interests receive and retain nothing under the Plan in respect of such Interests and, accordingly, these Holders are not entitled to vote because they are deemed to have voted to reject the Plan under Bankruptcy Code § 1126(f).

EVEN IF A CLAIM IS OF THE TYPE DESCRIBED ABOVE, A CREDITOR MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**7.5    Special Provisions for Listed Holders of Mechanic's Lien Claims.**

Although the subclasses of Class 3 are Unimpaired and any Holders of <u>Allowed</u> Sr. Secured Mechanic's Lien Claims are deemed to accept the Plan, the Lehman Proponents dispute the "secured" status of such Claims against all Group I Debtors (other than SunCal Summit Valley) because the Lehman Proponents assert that the aggregate amount of the applicable Lehman Loans secured by Lehman Claim Liens on each applicable Plan Project exceeds the value of such Plan Project, such that there is no value in the junior Liens of the Holders of Mechanic's Lien Claims. Thus, <u>each listed Holder of a Mechanic's Lien Claim against Group I Debtors will be provided a</u> <u>Ballot on which such Holder may elect to vote its Claims as General Unsecured Claims or Reliance</u> <u>Claims, as applicable, in which event the Holder will be waiving contentions that its interest in the</u> <u>collateral securing its Claim has any value and thus will be waiving contentions that it holds a</u>

Secured Claim against the applicable Plan Project.  By holding a General Unsecured Claim or Reliance Claim at the time of voting, the Creditor will have the opportunity, as more fully set forth herein, to elect to receive the Lehman Distribution Enhancement.

**7.6    Special Provisions for Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6.**

**7.6.1    Voting Permitted Regardless of Election to Receive the Lehman Distribution Enhancement.**

Creditors voting a General Unsecured Claim in Class 7 or Reliance Claim in Class 6 may vote for or against the Plan whether or not the Creditor elects to execute and deliver the Creditor's Assignment / Release for Lehman and receive the benefits of the Lehman Distribution Enhancement (applicable only if the Claim is Allowed, Plan is Confirmed and Effective Date occurs).

**7.6.2    "Reliance Claim" Status Must Be Asserted on a Ballot.**

**For any Creditor to vote its Claim as a Reliance Claim in Class 6, and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.**  The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that a Reliance Claim is a Claim (a) for New Value, (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) timely of record as follows: either (1) filed by the Primary Claims Bar Date or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as Scheduled Claims, excluding (d) Insider Claims, Settling Bond Issuer-Related Future Work Claims and Lehman VD Lender Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims).  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims in Classes 6 or 7.

**7.7    Receipt of No or Incorrect Ballots.**

If a Creditor does not receive a Ballot or receives an incorrect Ballot, it may contact the Proponents to receive the correct Ballot.

**7.8     Acceptance of the Plan Contrasted With Confirmation.**

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements include that the Plan must (a) be proposed in good faith, (b) be accepted in accordance with the provisions of the Bankruptcy Code, (c) pay creditors at least as much as creditors would receive in a Chapter 7 liquidation and (d) be feasible. Creditor acceptance of the Plan is only a factor relating to ~~confirmation~~Confirmation.  Even if there are Impaired Classes that do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code and at least one Impaired Class of Claims accepts the Plan. The process by which a plan may be confirmed and become binding on non-accepting classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting Classes of Claims or Interests if it meets all statutory requirements except the voting requirements of Bankruptcy Code § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class that has not voted to accept the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.  The confirmed Plan binds the non-accepting Classes.  The Proponents will ask the Bankruptcy Court to confirm the Plan by cramdown on any Impaired Class if such Class does not vote to accept the Plan.

The requirements described in the Plan may not be the only requirements for ~~confirmation~~Confirmation. PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

**VIII**

**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

**8.1     Introduction.**

This section is intended to address how the Proponents intend to fund and to have implemented the obligations to Creditors under the Plan.  It thus provides information regarding funding sources and mechanisms for the Plan obligations, management of the VD Plan Debtors' Estates after the Effective Date and other material issues bearing upon the performance of the Plan.

**8.2     The Liquidating Trustee.**

The Estate of each VD Plan Debtor shall be managed after the Effective Date by the Liquidating Trustee, who, except as otherwise provided in the Plan, shall oversee and effectuate the Distributions to Creditors under the Plan, the liquidation of the Remaining Other Assets, and the sale and transfer of the Plan Projects to the Lehman Nominees, and otherwise shall implement the Plan. [_____]Steven M. Speier, the individual who currently is the Trustee of the Trustee Debtors, will be the Liquidating Trustee or, if such Person declines to serve, another Person selected by the Lehman Proponents and approved by the Court shall be the Liquidating Trustee. The person who becomes the Liquidating Trustee, while serving in his capacity as the Liquidating Trustee, shall be an agent of each Estate and not a separate taxable entity therefrom. Compensation of the Liquidating Trustee shall be reasonable compensation payable from the VD Plan Debtors' Estates after prior notice to, *inter alia*, the Lehman Creditors, Voluntary Debtors' Committee members, and U.S. Trustee and after order of the Bankruptcy Court.  The Bankruptcy Court may, by order, replace the Liquidating Trustee in its reasonable discretion.  After the Effective Date, the Liquidating Trustee, *inter alia*, will cooperate in granting, perfecting or reflecting perfection of any Liens acknowledged or created or provided for under the Plan, will cooperate with the Lehman Proponents in the claims process and prosecution, resolution or abandonment of any objections to Claims, and will resolve or dismiss any Remaining Litigation Claims, all in accordance with the Plan.

**8.3     Conditions to Confirmation and Plan Effectiveness.**

Under the Plan, as more fully set forth herein, the Lehman VD Lenders are to be conveyed the Plan Projects (through the Lehman Nominees) and receive releases, as more fully set forth below, and the Liquidating Trustee is to cooperate with any Lehman Related Party in connection with Bond Modification Discussions that any Lehman Related Party desires to initiate. As discussed more fully below, unless waived by the Lehman VD Lenders in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order for this Plan, which Confirmation Order will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, or to the occurrence of the Plan's Effective Date are: (a) first, execution of a Settling Bond Issuer Agreement,

as summarized in Plan Section 8.8, by certain of the Lehman Related Parties and each Bond Issuer; (b) second, approval of the role and obligations under the Plan of certain of the Lehman VD Lenders and of each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman VD Lender, and LBHI, which may be a party to the applicable Settling Bond Issuer Agreement (as a guarantor of one or more applicable Lehman Nominee's reimbursement obligations thereunder) and may be a source of funding of the Lehman Plan Funding; (c) third, the Lehman VD Lenders not withdrawing the Plan prior to the Effective Date, which withdrawal may occur if (i) as to the Group I Debtors, the Lehman VD Lenders' good faith estimate of the likely maximum amount for the Lehman Plan Funding exceeds $22 million or (ii) as to the Group II Debtors, the Lehman VD Lenders' good faith estimate of all such Debtors' Allowed Senior Claims exceeds $3 million; (d) fourth, confirmation or (iii) after the filing of the Plan, a material ruling is issued or a material fact is newly discovered with respect to an alleged Litigation Claim against any of the Lehman Released Parties or a material adverse change occurs with respect to an applicable VD Plan Debtor's assets (*e.g.*, a material asset is sold); (d) fourth, Confirmation of the Plan as to all of the VD Plan Debtors; (e) fifth, the Confirmation Order must be a Final Order in form and substance reasonably satisfactory to the Lehman VD Lenders; and (f) sixth, all agreements and instruments contemplated by the Plan have been executed and delivered and all conditions to their effectiveness satisfied or waived.

### 8.4    Lehman Plan Funding.

Under the Plan, the Lehman VD Lenders have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding.  Additionally, except as expressly provided otherwise in the Plan, Cash of an applicable VD Plan Debtor that is not Cash Collateral shall first be used to pay all Allowed Administrative Claims of such applicable VD Plan Debtor, and then Allowed Priority Claims of such applicable VD Plan Debtor, and then Allowed Secured Real Property Tax Claims of such applicable VD Plan Debtor, and any excess thereof may be held as a reserve by the Liquidating Trustee for Post-Confirmation Expenses of such applicable VD Plan Debtor in lieu or prior to becoming Residual Cash for such applicable VD Plan Debtor.  (In addition

to providing the Lehman Plan Funding, the Lehman VD Lenders also have agreed under this Plan to arrange, as provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed Settling Bond Issuer- Backed Future Work Claim and to reimburse the agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond Issuer-Incurred Future Work Obligations arising under any Future Work Bond.)

### (a)    **Lehman Creditor Distribution Funding.**

The Lehman Creditors have agreed under this Plan to fund, to the extent not paid from other designated sources, through permitting use of Cash Collateral or through new transfers of Cash or through other arrangements, the Distributions that Plan Articles IV. and VI. mandate for the following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative treatment set forth in Section 6.4.3 hereof is selected), (viii) the Lehman Guaranteed Minimum Distribution, and (ix) as applicable, the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6.

### (i)    **Lehman Guaranteed Minimum Distribution.**

The Lehman VD Lenders have agreed to fund guaranteed, minimum recoveries, of one percent (1%) of each Allowed General Unsecured Claim in Class 7 and one percent (1%) of each Allowed Reliance Claim in Class 6, regardless of whether the individual Creditor holding such Claim executes and delivers for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman.

### (ii)    **Lehman Distribution Enhancement.**

For Creditors holding Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6 who do execute and deliver for the benefit of the Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman, the Lehman VD Lenders are increasing recoveries for such Allowed Class 6 and 7 Claims (a) by four percent (4%) of each Allowed General Unsecured Claim in Class 7 (for a total recovery of five percent (5%) of such Claims) and (b) by

thirty-nine percent (39%) or forty-nine percent (49%) of each Allowed Reliance Claim in Class 6 (for a total recovery of forty percent (40% or fifty percent (50%) of such Claims), provided that the higher percentage of enhanced recovery shall be applicable only if and once it is determined that the particular Debtor's Bump Up Threshold (aggregate amount for distributions on certain Class 6 and Class 7 Claims) has not been exceeded, as set forth in (as applicable) Plan Sections 6.6.2 and 6.7.2 hereof.

### (b)    Lehman Post-Confirmation Expense Funding.

Under the Plan, the Lehman VD Lenders have agreed to pay an amount (with such amount not to exceed $500,000 and which shall not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

### (c)    Funding with Cash Collateral of a Lehman VD Lender.

If permitted by the applicable Lehman VD Lender, on the Effective Date, the Liquidating Trustee will use Cash Collateral for a Lehman Secured Claim to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof, unless otherwise specified by the applicable Lehman VD Lender) and then to pay the applicable Lehman VD Lender, unless it agrees that the Liquidating Trustee, instead, may hold such Cash Collateral in the Plan Reserve for potential use for payment of Post-Confirmation Expenses.

### (d)    Funding with New Cash Payments from a Lehman Related Party.

On the Effective Date, the Lehman VD Lenders shall cause to be paid to the Liquidating Trustee from new Cash transfers sufficient amounts such that, when combined with other available and designated sources and Cash Collateral for Lehman Secured Claims and Lehman Administrative Loans, the Liquidating Trustee is holding sufficient funds to make the payments required under the Plan to be paid on the Effective Date from Lehman Plan Funding. Thereafter, the Lehman VD Lenders will pay the Liquidating Trustee further amounts at such times as the VD Plan Debtors and

the Liquidating Trustee, as applicable, and the Lehman VD Lenders reasonably determine are necessary to enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan Funding.

### (e)    Plan Reserve.

All Lehman Plan Funding provided by a Lehman Related Party shall be deposited in or held in the Plan Reserve until utilized in accordance with the Plan. The applicable Lehman VD Lender shall report the Cash Collateral, while held in the Plan Reserve, as being owned by it for all applicable federal, state and local income tax purposes.  To enable the applicable Lehman VD Lender to pay its applicable federal, state and local income tax with respect to amounts in the Plan Reserve, the Liquidating Trustee shall distribute to the applicable Lehman VD Lender, or cause to be distributed, forty five percent (45%) of all income and gain earned with respect to amounts in the Plan Reserve no less than annually and prior to any such amounts being otherwise distributed pursuant to the Plan.

### (f)    Terms and Documentation of Lehman Plan Funding.

The Liquidating Trustee shall be obligated to repay to the applicable Lehman Related Party any Lehman Plan Funding not utilized in accordance with the Plan.  The Liquidating Trustee also shall be obligated to repay all of the Lehman Post-Confirmation Expense Funding to the extent of Net Cash Proceeds from Remaining Other Assets, based on such funding being a non-recourse loan against Remaining Other Assets and their Net Cash Proceeds as indicated above.  Repayments shall be due immediately upon funds therefor becoming available.  Repayment obligations shall be secured by a Lien (or replacement Liens as to use of Cash Collateral) (1) of first priority in all funds in the Plan Reserve and in any Post-Confirmation Account(s) until such funds have been utilized in accordance with the Plan and (2) a Lien on any Remaining Other Assets, junior only to any other valid and indefeasible Liens in the Remaining Other Assets.  The Liquidating Trustee shall reasonably execute all documents reasonably requested by a Lehman VD Lender to evidence a loan or use of Cash Collateral constituting Lehman Post-Confirmation Expense Funding and to evidence any Liens or replacement Liens for the use of Cash Collateral, securing the Liquidating Trustee's

repayment obligations, on terms and in a form reasonably requested by such Lehman VD Lender, with customary and reasonable provisions for interest, fees and expenses upon the loan(s).

**8.5    Post-Confirmation Expenses and Intercompany Loans.**

Limited functions are required to implement the Plan after the Effective Date. The Liquidating Trustee will need to distribute Cash to Creditors (most of which is being provided by the Lehman VD Lenders), convey the Plan Projects to the Lehman Nominees, participate and cooperate with the Lehman VD Lenders in the claim reconciliation and objection processes, and liquidate the limited Remaining Other Assets. Post-Confirmation Expenses expected to be incurred include:

(a)    Compensation for the Liquidating Trustee for the period following the Effective Date;

(b)    Expenses for fees of the professionals retained by the Liquidating Trustee following the Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities in respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise on or after the Effective Date consistent with the Plan.

All Post-Confirmation Expenses may be paid by the Liquidating Trustee from the Post-Confirmation Account(s) upon ten (10) days' prior written notice and opportunity to object provided to the Lehman Creditors, but without further notice to any others, including Creditors or Holders of Interests, or approval of the Bankruptcy Court. Any disputes concerning the payment of Post-Confirmation Expenses shall be submitted to the Bankruptcy Court for resolution. To the extent readily determinable, Post-Confirmation Expenses attributable to a particular VD Plan Debtor shall be paid from that VD Plan Debtor's Assets consistent with the provisions of the Plan. To the extent of available Assets from each VD Plan Debtor, other Post-Confirmation Expenses shall be payable by each VD Plan Debtor Pro Rata consistent with the Plan, provided that after a VD Plan Debtor's Available Cash or Assets are exhausted, the other VD Plan Debtors shall absorb such VD Plan Debtor's share of unpaid Post-Confirmation Expenses as provided in the Plan, which shall be Pro Rata to the extent reasonably possible. To the extent one VD Plan Debtor advances funds on behalf of another, the Liquidating Trustee shall book a receivable for the advancing VD Plan Debtor and a

payable for the borrowing VD Plan Debtor.  Payments of intercompany loans between the VD Plan Debtors made prior to the Confirmation Date will not be funded by the Lehman VD Lenders and are waived except to the extent of Remaining Other Assets.

**8.6** **Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee.**

Except as otherwise provided in the Plan or any agreement, instrument or other document relating to the Plan, on and after the Effective Date, all property of each VD Plan Debtor's Estate shall vest in each respective Estate, free and clear of all Liens.  Except as may be provided in the Plan, on and after the Effective Date, the Liquidating Trustee may operate the business of each Estate and may use, acquire or dispose of property and compromise or settle any Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  On motion to the Bankruptcy Court and consent of the Lehman VD Lenders, the Liquidating Trustee may elect hereafter to abandon to the VD Plan Debtors' Assets of inconsequential value.

**8.7** **Disposition and Value of Assets**

The Assets of the Estates of the VD Plan Debtors consist primarily of certain Projects (the Plan Projects).  There also may be some Cash, some of which is Cash Collateral for Lehman Secured Claims and/or Lehman Administrative Loans, and certain Remaining Other Assets, including Remaining Litigation Claims.  (Remaining Litigation Claims possibly could result in affirmative recoveries for the Estates or possibly could reduce the size of the Creditor Claims to share in Available Cash for Distribution.)

**8.7.1** **Disposition and Value of the Plan Projects.**

a.    Pursuant to Bankruptcy Code section 1123(a) and the Plan, each Plan Project and all easements and appurtenances thereto and all associated personal property and rights, including the applicable VD Plan Debtor's Estate's right, title and interest in, to and under any development agreements, plans, engineering reports, permits and community facilities district bonds, but excluding subdivision improvement and monumentation agreements, shall be sold and conveyed by

virtue of the Confirmation Order to the applicable Lehman Nominee (to be identified for each Plan Project by the Lehman VD Lenders by Filing a statement providing such identification) free and clear of any Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) with such Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) not paid in connection with the transaction to attach to the Lehman Creditor Distribution Funding to the extent payment is due therefor pursuant to Plan Article IV. or Plan Article VI. in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transaction.  After conveyance of a Plan Project to a Lehman Nominee, the Lehman Nominee shall report the subject Plan Project and related Assets as being owned by it for all applicable federal, state and local income tax purposes.

b.    To facilitate further conveyances of the Plan Projects, the recording of evidence of the conveyances and the identification of specific Encumbrances from which a Plan Project is being sold free and clear or specific Permitted Liens:

(1)    Separate orders, consistent with this Plan, authorizing such conveyances shall be issued by the Bankruptcy Court as reasonably requested by the Lehman VD Lenders or applicable Lehman Nominee, which orders shall reflect the conveyance of the Plan Projects free and clear of all Encumbrances (other than Lehman Claim Liens and other Permitted Liens) in accordance with the Plan; and

(2)    Entry of the Confirmation Order, without more and thus automatically, shall retroactively and prospectively authorize the VD Plan Debtors and the Liquidating Trustee to take all actions that a Lehman VD Lender or Lehman Nominee believes in good faith to be necessary or appropriate to consummate the transactions contemplated by this Plan, which actions would include execution of the grant deeds, assignments and other documents set forth in a supplemental exhibit to this Plan (Plan Supplement) to be filed by the Lehman Proponents by **October 18, 2011** and which transactions would include conveyance of the Plan Projects to the Lehman VD Lenders or Lehman Nominees as provided in the Plan; and

(3)    At no material cost to the VD Plan Debtors or Liquidating Trustee, upon the reasonable request of a Lehman VD Lender or Lehman Nominee at any time and from time

to time on or after the Effective Date and through the closing of the VD Plan Debtors' Cases, and notwithstanding any prior knowledge of a Lehman Creditor or Lehman Nominee, the VD Plan Debtors, prior to the Effective Date, and the Liquidating Trustee, from and after the Effective Date, shall, do, execute, acknowledge and deliver, and cause to be done, executed, acknowledged and delivered, all such further reasonable acts, deeds, transfers, conveyances, assignments, powers of attorney or assurances as may be required (i) to transfer, assign, convey and grant all of the Plan Projects to the applicable Lehman Nominees in accordance with the terms of the Plan, (ii) for the acquiring Lehman Nominees to record such transfers, assignments and conveyances of the Plan Projects in the applicable filing offices of the applicable governmental entity or (iii) to otherwise implement the Plan.

c.    The conveyances, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), of the Plan Projects of the Group I Debtors to the Lehman VD Lenders or Lehman Nominees under the Plan, result in a deficiency owed to the Lehman VD Lenders under the applicable Lehman Loans (the "Lehman Creditor Deficiency Claims"), provided that, under the Plan, no Lehman Creditor Deficiency Claim is afforded against SCC Communities or Tesoro.  The Allowed General Unsecured Claims of the Lehman VD Lenders and the Allowed Amount thereof with respect to such Lehman Creditor Deficiency Claims shall be fixed for all purposes relevant to the Plan and Disclosure Statement as to all VD Plan Debtors and Creditors at the amounts set forth in Plan Article V., which determination is based, in part, on the Project Values.

d.    Pursuant to the Plan, the Plan Projects of the Group II Debtors shall also be conveyed to the Lehman VD Lenders or Lehman Nominees, free and clear of Encumbrances (other than any Lehman Claim Liens and other Permitted Liens), in exchange for the consideration to be provided to Creditors of the Group II Debtors as set forth in Article VI. hereof and based on the Lehman Secured Claims against the Holders of Interests in the Group II Debtors (SunCal I and SunCal Summit Valley) and the applicable Project Values less Allowed Claims.

### 8.7.2    Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other Assets.

The Remaining Other Assets (other than Cash) shall be liquidated by the Liquidating Trustee, and the Net Cash Proceeds therefrom shall be available for payment of Claims and Creditors in accordance with the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and subject to the compromises, waivers and releases provided in the Plan, the Liquidating Trustee shall retain all Remaining Litigation Claims whether or not pending on the Effective Date. Unless a Litigation Claim is expressly waived, relinquished, released, compromised or settled in the Plan or prior to the Plan's Effective Date in a Final Order, all rights with respect to such Litigation Claims are reserved and the Liquidating Trustee may pursue such Remaining Litigation Claims.  The Liquidating Trustee shall not settle or abandon a Remaining Litigation Claim valued at greater than $100,000, if any, without a Lehman VD Lender's consent; and the Lehman VD Lenders may pursue any Remaining Litigation Claim for the applicable Estate or Estates that, upon request, the Liquidating Trustee does not agree to pursue.  Any disputes concerning the settlement or abandonment of a Remaining Litigation Claim shall be submitted to the Bankruptcy Court for resolution on no less than ten (10) days' notice to the objecting party.  All Net Cash Litigation Recoveries realized or obtained in respect of Remaining Litigation Claims of the Estates shall be promptly deposited into the Post-Confirmation Account(s) or Plan Reserve, as appropriate. Except as otherwise provided in the Plan and the Confirmation Order, the Net Cash Litigation Recoveries shall be free and clear of all Encumbrances and shall only be expended in accordance with the provisions of the Plan.

### 8.8    Bond Claims and the Settling Bond Issuer Agreements.

#### 8.8.1    Background.

Prior to the Petition Dates for the VD Plan Debtors, the Bond Issuers, at the request of certain VD Plan Debtors, issued certain Project Bonds in connection with the development of the Plan Projects owned by such VD Plan Debtors.  These Project Bonds issued by the Bond Issuers for the benefit of the VD Plan Debtors consist of either Payment Bonds or Performance Bonds (certain of which Payment Bonds and Performance Bonds constitute Future Work Bonds), securing payment to the applicable third party for work performed by such third party for or with respect to the applicable

Plan Project and/or for the performance of certain work by the applicable VD Plan Debtor. Although the definitions herein are controlling, the Payment Bonds might typically secure payment to contractors and others who undertook construction work and Performance Bonds might typically guarantee the performance of Bonded Work such as infrastructure improvements to a municipality who has jurisdiction over the development of the applicable Plan Project and who may have executed a development agreement providing for entitlements relating to such Plan Project. Reimbursement to the Bond Issuer for any payments made under or any liabilities or obligations incurred by such Bond Issuer with respect to the Project Bonds were guaranteed or indemnified by the Bond Obligors.

Prepetition, Bond Issuers are believed to have paid and/or settled with some of the third party beneficiaries of Project Bonds (and, in certain instances, received an assignment of the Claims held by such third parties upon such payment or settlement). As a result, the Claims, if any, of a Bond Issuer against the applicable VD Plan Debtor and relating to such Project Bonds would be non-contingent.

As of the applicable Petition Dates, various other third parties with Bond-Backed Claims allege that they held unpaid or unsatisfied Claims secured by Project Bonds of the Bond Issuers. The Claims, if any, of a Bond Issuer relating thereto would have been contingent.

After the Petition Dates, Bond Issuers are believed to have continued paying and/or settling with Bond-Backed Claimants secured by Project Bonds. To the extent such occurred, any Claim of a Bond Issuer relating thereto may have become non-contingent. Still, there remain Bond-Backed Claimants holding Bond-Backed Claims secured by Project Bonds (including Future Work Bonds) that remain unpaid or unsatisfied. The Claims, if any, of a Bond Issuer relating thereto are contingent.

### 8.8.2    Settling Bond Issuer Agreement.

Absent a settlement with each of the Bond Issuers, each Allowed Bond Claim related to a Future Work Bond[3] will be classified and treated under the Plan as either a Reliance Claim in Class

---

[3] Such Allowed Bond Claim would be "related" to a Future Work Bond either because such Claim is a Bond-Backed Claim relating to the payment or performance of Future Work secured by a Future Work Bond or because such Claim is a Bond Issuer Claim arising from the exposure and liability of the Bond Issuer under a Future Work Bond.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6 or a General Unsecured Claim in Class 7 or Class 8, depending on which definition the Claim fits within. Yet, one or both Bond Issuers have contended that: (i) should a Bond Issuer be required to pay or perform under a Project Bond because of a demand from a municipality that is the beneficiary of the Project Bond, the costs for improving the subject Plan Project can be recovered upon sale or transfer of the Plan Project from its subsequent owner; and (ii) absent consent of the applicable Bond Issuer, the Project Bonds must be replaced on sale or transfer of each applicable Plan Project. Although the Lehman Creditors dispute these contentions, to facilitate ~~confirmation~~Confirmation of the Plan, certain of the Lehman Related Parties (including the Lehman Nominees taking title to Plan Projects as to which there are related Bond-Backed Claims secured by Future Work Bonds) are prepared to enter into agreements with respect to certain matters relating to the Allowed Bond-Backed Claims secured by Future Work Bonds.

Under each Settling Bond Issuer Agreement (which shall be subject to further terms and provisions as may be agreed upon by the parties to a Settling Bond Issuer Agreement) and as part of the Lehman Creditor Distribution Funding, the Lehman Nominee that takes title to a Plan Project for which Future Work Bonds were issued and remain outstanding as of the Effective Date, in consideration for an assignment of certain Allowed Claims from the applicable Settling Bond Issuer as described below (or a release thereof), *inter alia*, will reimburse and or commit to reimburse such Settling Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising in connection with the satisfaction of such Settling Bond Issuer's obligations to Bond-Backed Claimants under Future Work Bonds issued by such Settling Bond Issuer and related to such Allowed Claims and may agree to other terms, including with respect to bond premiums, replacement of bonds and others. Such reimbursement obligations of each applicable Lehman Nominee will be collateralized or credit enhanced in one (and only one) of the following two manners (subject to further terms and provisions as may be agreed upon by the parties to a Settling Bond Issuer Agreement), as determined by the Lehman VD Lenders in their sole and absolute discretion (the applicable type of collateral or credit enhancement being provided by any particular Lehman Nominee being referred to herein as the "Future Work Obligation Collateral"): (a) a first Lien deed of trust encumbering the applicable Plan Project owned by such Lehman Nominee and

securing the reimbursement obligations of such Lehman Nominee to the applicable Settling Bond Issuer, or (b) a guarantee of such Lehman Nominee's reimbursement obligations provided by LBHI, which guarantee obligation of LBHI will be an administrative claim in the New York Bankruptcy Cases.  In turn, the applicable Settling Bond Issuer will agree that such Settling Bond Issuer, itself, will not receive the full amount otherwise due under the Plan from the VD Plan Debtors' Estates with respect to the Settling Bond Issuer-Owned Claims or any other Claims it may have (provided that, with respect to Settling Bond  Issuer-Owned Future Work Claims, it will receive the applicable cooperation and reimbursement from the applicable Lehman Nominees and the applicable Future Work Obligation Collateral as described above).  Further, under each Settling Bond Issuer Agreement, the applicable Settling Bond Issuer would agree to cooperate with and assist, if and to the extent agreed to by the parties under the applicable Settling Bond Issuer Agreement, the Lehman Related Parties in connection with the Bond Modification Discussions.

Moreover, under each Settling Bond Issuer Agreement, as reflected in the Plan, the applicable Settling Bond Issuer will agree to assign to the Lehman VD Lenders or another Lehman Related Party (as determined by the Lehman VD Lenders) or otherwise release, effective as of the Effective Date, certain Settling Bond Issuer-Owned Claims held by the applicable Settling Bond Issuer as of the Effective Date and certain Claims acquired by such Settling Bond Issuer thereafter, as well as certain rights and claims that the Settling Bond Issuer may have against the Bond Obligors. Upon assignment by the applicable Settling Bond Issuer of Settling Bond Issuer-Owned Non-Future Work Claims to a Lehman VD Lender or other Lehman Related Party under the Plan, such Lehman VD Lender or other Lehman Related Party shall be entitled to the proportional share of the Residual Cash attributable to such Allowed Claim, as more fully set forth in this Plan.  To the extent that on or after the Effective Date, the applicable Settling Bond Issuer acquires claims that were to be assigned or released if acquired on or before the Effective Date by the Settling Bond Issuer Release for Lehman Released Parties, promptly thereafter, the applicable Settling Bond Issuer shall execute an assignment / release for the benefit of the Liquidating Trustee and Lehman Released Parties.

Thus, whereas other Creditors are to receive the Lehman Distribution Enhancement with respect to each Allowed General Unsecured Claim or Allowed Reliance Claim that they hold if they execute and deliver the Creditor Assignment / Release for Lehman, under a Settling Bond Issuer Agreement, the applicable Settling Bond Issuer is to receive treatment under the Plan providing less for its Settling Bond Issuer-Owned Non-Future Work Claims and is to receive an agreed-upon reimbursement essentially for all of the Settling Bond Issuer-Incurred Future Work Obligations arising from Future Work Bonds relating to the Allowed Settling Bond Issuer-Related Future Work Claims with such Settling Bond Issuer agreeing to waive payment for any obligations which are not required to be reimbursed pursuant to the terms of the applicable Settling Bond Issuer Agreement.

### 8.8.3    Bond Modification Discussions.

There may be discussions and efforts to approach and initiate discussions by Lehman Related Parties, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman VD Lenders or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds (including Holders of Class 9 Settling Bond Issuer-Backed Future Work Claims), regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding ("Bond Modification Discussions").  Pursuant thereto or otherwise, agreement may be reached by all applicable parties either (a) as to the timing, scope or other matters with respect to certain Future Work or its performance or (b) to forego performance or payment for certain Future Work directly or through release of the applicable Future Work Bond.

### 8.9    Releases for Lehman Released Parties.

In exchange for, *inter alia*, the Lehman Plan Funding, various releases are to be afforded for the benefit of the Lehman Released Parties.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

### 8.9.1    Creditors' Assignments / Releases for Lehman.

In exchange for the Lehman Distribution Enhancement, <u>each Creditor who holds a Reliance Claim or General Unsecured Claim against a Group I Debtor and checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written assignment or assignment and release in accordance with this Plan,</u> whether or not the Creditor votes in favor of the Plan, automatically upon the occurrence of the Effective Date, <u>assigns</u> to the applicable Lehman VD Lender (or if multiple applicable Lehman VD Lenders, to the Lehman VD Lender holding the most senior Lien against the applicable Plan Project) all rights, benefits and interests of the assigning Holder, including, without limitation, Proofs of Claim and Encumbrances (each a "<u>Claim Right</u>" and, collectively, the "<u>Claim Rights</u>") with respect to each of such Holder's Reliance Claims, General Unsecured Claims, and, if any, Lehman Released Claims held as of the Disclosure Hearing Date and as might arise after the Disclosure Hearing Date as a result of an avoided transfer, with such assignment to be effective immediately upon the Effective Date. Such assignments are to be effective to the greatest extent permitted by applicable law and shall not require anything or any action for their effectiveness except as expressly provided herein. To the extent any such assignment is not effective to assign all of any such Reliance Claim, General Unsecured Claim or Lehman Released Claim or all of any such Claim Rights, <u>each Holder of the applicable Reliance Claim or General Unsecured Claim who,</u> in exchange for the Lehman Distribution Enhancement, <u>checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written release or assignment and release</u> in accordance with this Plan, automatically upon the occurrence of the Effective Date, <u>unconditionally, irrevocably and generally releases, acquits and forever discharges, waives and relinquishes</u> the Holder's General Unsecured Claims, Reliance Claims and Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the VD Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees, with such release to be effective immediately after the moment that the assignment was to become effective. Such releases are to be effective to the greatest extent permitted by applicable law and shall not require anything or any action for their effectiveness except as expressly provided herein.  **SUCH**

**RELEASES INCLUDE AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each releasing Creditor, by the release, waives and relinquishes any right or benefit that such Creditor has or may have under section 1542 of the California Civil Code or any similar provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent that such releasing Creditor may lawfully waive such rights and benefits pertaining to the subject matter of the release set forth above. In that regard, each such releasing Creditor, by the release, further acknowledges that such Creditor is aware that such Creditor or the attorneys of such Creditor may hereafter discover claims or facts in addition to or different from those which such Creditor or such attorneys now know or believe to exist with respect to the subject matter of the release, and that it is each such releasing Creditor's intention fully, finally, and forever to settle and release the Holder's General Unsecured Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the VD Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees. Through the release, each such releasing Creditor is expressly acknowledging that it understands that, notwithstanding the discovery or existence of any such additional or different claims or facts, the release shall be and remain in full force and effect as a full and complete general release with respect to the Holder's General Unsecured Claims, Reliance Claims, Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) and Claim Rights with respect thereto from and against the VD Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees. Through the release, each such releasing Creditor further

acknowledges that no released Person has made any representation of any kind or character whatsoever in order to induce the execution of the release other than the Disclosure Statement for which certain released Persons are Proponents, subject to its disclaimers.

In each case, neither the assignment nor the release shall include for General Unsecured Claims or Reliance Claims (including such Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) (1) a Creditor's rights under this Plan to the Lehman Creditor Distribution Funding and (2) the proportional share of Residual Cash attributable under the Plan to the Claims so assigned or released.  Moreover, for clarity, (A) neither the assignment nor the release shall preclude a Creditor holding an assigned or released Claim from opposing or responding defensively to the Filing of an objection to such Claim or request for determination of such Claim's status as a Reliance Claim (nor preclude such Filing of an objection to the Claim or request for determination of such Claim's status as a Reliance Claim); (B) neither the assignment nor the release includes any claim of a Creditor against a Bond Issuer arising under a Project Bond to the extent such claim is severable from any and all of such Creditor's General Unsecured Claims, Reliance Claims, Lehman Released Claims and Claim Rights; and (C) neither the assignment nor the release shall preclude a Creditor against which the Liquidating Trustee asserts a Remaining Litigation Claim from opposing or responding defensively to such Remaining Litigation Claim, including assertion of its Claims for offset, recoupment or setoff purposes (nor preclude the Liquidating Trustee from asserting any Remaining Litigation Claims against such Creditor).

On or as soon as practicable after the Effective Date, the assigning and/or releasing Creditor shall dismiss (with prejudice) all litigation pending against a Lehman Released Party with respect to a Lehman Released Claim, with all parties to bear their own costs and professional fees.  The assigning and/or releasing Creditor also shall take all appropriate steps to withdraw, dismiss or release any Encumbrances it may hold or have asserted against any of the Plan Projects or other Assets of the VD Plan Debtors as a condition of receipt of its Distributions under the Plan.

If the Ballot is appropriately marked to indicate the Creditor's election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, the Confirmation Order, without more, shall effectuate the assignment and/or release, waiver and

relinquishment described or referenced in this section for the Lehman Released Parties, in accordance herewith.  Nonetheless, and regardless of whether the Ballot is appropriately marked: (a) the Lehman VD Lenders may require the Creditor electing to receive the Lehman Distribution Enhancement to execute and deliver to the VD Plan Debtors, the Liquidating Trustee or a Lehman Released Party, a separate Creditor's Assignment / Release for Lehman in a form determined by the Lehman Released Party and reasonably consistent herewith; and (b) a condition subsequent to the assignment and release shall be the disallowance of all Claims of the Creditor electing to receive the Lehman Distribution Enhancement prior to the Creditor receiving any of the Lehman Distribution Enhancement.

If such condition subsequent to a particular Creditor's Assignment / Release for Lehman shall occur: (i) the applicable Creditor's Assignment / Release for Lehman shall be void and (ii) if such Creditor dismissed any litigation pending against a Lehman Released Party with respect to a Lehman Released Claim with the dismissal reciting it was based on this Plan's assignment and release for such Lehman Released Party, then such the Lehman Released Party shall stipulate to reinstatement of such litigation (subject to all applicable defenses, objections and other rights of the applicable Lehman Released Party); provided that such voidance of the applicable Creditor's Assignment / Release for Lehman shall not limit or affect any other provision or effect of the Plan, including, without limitation, such voidance of an applicable Creditor's Assignment / Release for Lehman shall not preserve or restore any Encumbrances from which a Plan Project is conveyed free and clear under the Plan.

### 8.9.2    Plan Release for Lehman.

In exchange for the consideration represented by, inter alia, the Lehman Plan Funding, as of the Effective Date, the Estate of each VD Plan Debtor, on behalf of itself and its Affiliates exclusive of other Debtors in these Cases, automatically upon the occurrence of the Effective Date, shall be deemed to unconditionally, irrevocably and generally release, acquit and forever discharge, waive and relinquish any and all Lehman Released Claims against each and every Lehman Released Party.

THE RELEASE GIVEN ABOVE INCLUDES AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each such releasing Person, by the release, waives and relinquishes any right or benefit that such Person has or may have under section 1542 of the California Civil Code or any similar provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent that such releasing Person may lawfully waive such rights and benefits pertaining to the subject matter of the release set forth above. In that regard, each such releasing Person, by the release, further acknowledges that such Person is aware that such Person or the attorneys of such Person may hereafter discover claims or facts in addition to or different from those which such Person or such attorneys now know or believe to exist with respect to the subject matter of the release, and that it is each such releasing Person's intention fully, finally, and forever to settle and release any and all Lehman Released Claims against each and every Lehman Released Party. Through the release, each such releasing Person is expressly acknowledging that it understands that, notwithstanding the discovery or existence of any such additional or different claims or facts, the release shall be and remain in full force and effect as a full and complete general release with respect to any and all Lehman Released Claims against each and every Lehman Released Party. Through the release, each such releasing Person further acknowledges that no released Person has made any representation of any kind or character whatsoever in order to induce the execution of the release.

The Confirmation Order, without more, shall effectuate the release, waiver and relinquishment described or referenced in this section for the Lehman Released Parties in accordance herewith. Nonetheless, the Lehman Released Parties also shall be entitled to issuance of a separate written release, waiver and relinquishment by the Liquidating Trustee in a form acceptable to the Lehman VD Lenders and Liquidating Trustee or as reasonably proposed by the Lehman VD Lenders and approved by the Bankruptcy Court at or after the hearing on Confirmation of the Plan.

### 8.9.3    Dismissal of Pending Litigation

On or as soon as practicable after the Effective Date, the Liquidating Trustee shall dismiss (with prejudice), as to the Estates of all VD Plan Debtors, all litigation pending against a Lehman Released Party on behalf of any VD Plan Debtor's Estate, including, without limitation, (a) the Liquidating Trustee shall dismiss any action seeking equitable subordination, avoidance of fraudulent transfers or other relief against any Lehman Released Party, specifically the ES Action, (b) the Liquidating Trustee shall dismiss any appeals adverse to a Lehman Related Party, including, without limitation, appeals seeking findings relating to the validity or allowance of Proofs of Claim filed by any of the Lehman Related Parties, and (c) the Liquidating Trustee shall withdraw any opposition to any appeals by Lehman Related Parties, with all parties to bear their own costs and professional fees (except as expressly provided in the Plan for the Lehman Post-Confirmation Expense Funding).

### 8.9.4    Process for Execution and Delivery of Creditor's Assignments / Releases for Lehman.

The releases contained in this Plan shall become effective on the Effective Date without further notice or action of any Person or party.  Although execution and delivery of a separate writing reflecting releases contained herein may be required by the Lehman VD Lenders as more fully set forth in this Plan, such requirement shall not affect or diminish the effectiveness of the releases contained herein.  As to a Holder of a General Unsecured Claim or Reliance Claim, its execution and delivery of the Creditor Assignment / Release for Lehman herein shall occur and be deemed to occur upon the delivery to the Liquidating Trustee or any of the Lehman Related Parties of an original, facsimile, electronic formatted or other written Ballot of such Holder marking the appropriate box thereupon signifying its intent to accept the benefits of the Lehman Distribution Enhancement and afford the Lehman Released Parties the benefit of the Creditor Assignment / Release for Lehman herein.  Disallowance in whole of such Creditor's Claim(s) prior to receipt of any Lehman Distribution Enhancement shall be a condition subsequent voiding such release.

The Liquidating Trustee shall be entitled to utilize the following procedure to determine which Creditors have appropriately marked their Ballots or otherwise provided the Creditor's

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

Assignment / Release for Lehman entitling it to the Lehman Distribution Enhancement. The procedure may be modified by the Liquidating Trustee with the consent of the Lehman VD Lenders, which they may grant or withhold in their sole and absolute discretion:

(1)      Within two (2) Business Days after the voting deadline, the VD Plan Debtors (or their designated agent, if any) shall deliver to the appropriate Lehman VD Lenders or as they direct the duly executed original of each Ballot received by the VD Plan Debtors (or their agent) by the voting deadline and each separately executed Creditor's Assignment / Release for Lehman;

(2)      Within fifteen (15) Business Days after receipt of all such Ballots and Creditors' Assignments / Releases for Lehman, the Lehman VD Lenders shall advise the VD Plan Debtors or Liquidating Trustee, as then in place, of any issues with respect to the form or propriety of the execution or delivery of any such Ballots, the marking thereupon of the election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, or any actual Creditors' Assignments / Releases for Lehman;

(3)      Within ten (10) days after expiration of the time for the Lehman VD Lenders to advise the VD Plan Debtors or Liquidating Trustee of issues with respect to the form or propriety of the execution and delivery of such items, if no issues are so raised, the form and propriety of such items shall be deemed adequate to entitle the applicable Creditor to the applicable Lehman Distribution Enhancement, as and to the extent set forth in the Plan and if and to the extent such Creditor holds an Allowed Claim.

**8.10    Entry of Final Decrees.**

The Liquidating Trustee shall cause the entry of a final decree in the Case of each Estate of a VD Plan Debtor at the earliest reasonable opportunity therefor. Such final decrees may be sought and entered individually for each Case.

**8.11    Dissolution of Voluntary Debtors' Committee and Discharge of Liquidating Trustee.**

The Voluntary Debtors' Committee shall dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Cases thirty days following the Effective Date unless the Bankruptcy Court, for good cause shown, extends such date. Except as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

may be necessary to file applications pursuant to Plan Section 4.1, the Professionals retained by the Voluntary Debtors' Committee shall not be entitled to compensation or reimbursement of expenses for any services rendered after the dissolution of the Voluntary Debtors' Committee.  (The Liquidating Trustee may employ Professionals after the Effective Date.)  The Liquidating Trustee shall be discharged upon consummation of the Plan and the entry of a final decree in each Case or as otherwise ordered by the Bankruptcy Court.

## IX

## DISTRIBUTIONS

### 9.1    Distribution Agent.

The Liquidating Trustee shall serve as the Distribution Agent for Distributions due under the Plan. The Distribution Agent may employ one or more subagents on such terms and conditions as it may agree in his discretion and pay such subagent as a Post-Confirmation Expense from the Post-Confirmation Account(s). The Distribution Agent shall not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

### 9.2    Distributions.

#### 9.2.1    Dates of Distributions.

Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter. To minimize the need to estimate certain contingent or unliquidated Claims and the expense thereof, the treatment sections of the Plan provide as to certain Claims that Distributions as to Future Obligations first are to be made only after the Claim or portion of the Claim is no longer a Future Obligation.

#### 9.2.2    Limitation on Liability.

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their Affiliates, nor any of their employees, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other

professionals shall be liable for: (i) any debts arising under the Plan; (ii) any acts or omissions or the damages therefrom (except for damages proximately caused by gross negligence or intentional misconduct of such Person) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, including, without limitation, such Person shall not be liable as to the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan; or (iii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

**9.3**    **Old Instruments and Securities.**

**9.3.1**    **Surrender and Cancellation of Instruments and Securities.**

As a condition to receiving any Distribution pursuant to the Plan in respect of a Claim, each Person holding any note or other instrument or security evidencing such Claim must surrender such instrument or security to the Distribution Agent, if requested.

**9.3.2**    **Cancellation of Liens.**

Except as otherwise provided in the Plan, any Lien against any Assets of any VD Plan Debtors, including any Plan Project, shall be deemed released and discharged, and the Person holding such Lien shall be authorized and directed to release any collateral or other property secured or allegedly secured by such Lien (including, without limitation, any Cash Collateral) held by such Person and to take such actions as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project) to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project).

**9.4**    ***De Minimis* Distributions and Fractional Shares.**

No Cash payment of less than ten dollars ($10) shall be made by the Liquidating Trustee to any Holder of Claims unless a request therefor is made in writing to the Liquidating Trustee. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

not distributed as a consequence of this section shall, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

**9.5    Delivery of Distributions.**

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows: (1) with respect to each Holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Holder as maintained by the Liquidating Trustee; (2) with respect to each Holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected on the Schedules filed by the VD Plan Debtors, provided, however, that if the VD Plan Debtors or the Liquidating Trustee has received a written notice of a change of address for such Holder, the address set forth in such notice shall be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such address as the Holder may specify in writing.

**9.6    Unclaimed Property.**

If either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or other similar instrument used for the Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any Allowed Claim on the date such Distribution first could have been made under the Plan and for one hundred twenty (120) days thereafter, then such applicable Distribution shall be Unclaimed Property under the Plan and the Liquidating Trustee shall be relieved of making such Distribution or any further Distribution to such Holder of such Allowed Claim unless and until the Liquidating Trustee is notified in writing of the then current address of such Holder of an Allowed Claim. Subject to the remainder of this section and the following section, Unclaimed Property shall remain in the possession of the Liquidating Trustee pursuant to this section, and shall be set aside and (in the case of Cash) held in a segregated, interest bearing account to be maintained by the Distribution Agent until such time as the subject Distribution becomes deliverable. Nothing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

contained in the Plan shall require the Liquidating Trustee or any other Person to attempt to locate the Holder of an Allowed Claim as to which there is Unclaimed Property.

**9.7     Disposition of Unclaimed Property.**

If the Person entitled thereto notifies the Liquidating Trustee of such Person's Claim to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial Distribution Date, the Unclaimed Property distributable to such Person, together with any interest or dividends earned thereon, shall be paid or distributed to such Person as soon as practicable. Any Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by the Liquidating Trustee within ninety (90) days after the Holders' initial Distribution Date shall no longer have any Claim to or Interest in such Unclaimed Property, and shall be forever barred from receiving any Distributions under the Plan or otherwise from the Liquidating Trustee.  In such cases, any property held for Distribution on account of such Claims shall become Available Cash and deposited into the Post-Confirmation Account of the VD Plan Debtor's Estate against which the applicable Allowed Claim was asserted.

**X**

**OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

**10.1     Standing for Objections to Claims.**

The Liquidating Trustee and Lehman Creditors may file and resolve for the Estates objections to Claims and requests for the determination of Claims' status as Reliance Claims, may do so jointly or separately, and shall have the exclusive right to do so, except that only the Liquidating Trustee shall have such rights as to any particular Claim for which a disabling conflict exists that precludes all of the Lehman Creditors from performing such functions as determined either by the Lehman Creditors or by the Bankruptcy Court.  The Liquidating Trustee shall cooperate in Filing objections and taking action with respect to Claims identified for objection or action by the Lehman Creditors in good faith, except that the Liquidating Trustee need not object to a Claim or to a Claim's asserted status as a Reliance Claim that he reasonably believes is valid. Any objection to a Claim or any objection to a Claim's status as a Reliance Claim, shall be filed with the Bankruptcy Court and served on the Person holding such Claim on or before the applicable Claims Objection

Deadline, ~~expect~~except as may be expressly provided otherwise as to any particular Claims in the Plan.

### 10.2    Treatment of Disputed Claims.

#### 10.2.1   No Distribution Pending Allowance.

If any portion of a Claim is a Disputed Claim or has no Allowed Amount, no payment or Distribution provided for under the Plan shall be made on account of such Claim unless expressly provided hereunder or unless and until such Claim becomes an Allowed Claim and has an Allowed Amount.  Except as expressly provided in the Plan, Holders of Disputed Claims, pending their allowance, shall forbear from enforcement of the rights entitled to them under the Plan for their Claims were they Allowed Claims; provided that if the Claim is a Secured Claim, the Creditor may seek adequate protection for its Claim from the Bankruptcy Court.  A Claim that has not been Allowed by a Final Order of the Bankruptcy Court and as to which the objection deadline has not passed, including as to its status as a Reliance Claim, may be treated by the Liquidating Trustee as a Disputed Claim and, absent the agreement of the Lehman VD Lenders, the Liquidating Trustee shall so treat any such Secured Claim not expressly Allowed under the Plan and any Reliance Claim to which a payment otherwise would be due from Lehman Creditor Distribution Funding.

#### 10.2.2   Distribution After Allowance.

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

#### 10.2.3   Reserves for Disputed Claims.

In the event that Disputed Claims are pending, the Liquidating Trustee shall establish reasonable reserves, including the Plan Reserve for such Disputed Claims. The Distribution Agent may move the Bankruptcy Court for approval of its determination to reserve certain amounts.

#### 10.2.4   Certain Disputed Cure Amounts for Secured Real Property Tax Claims.

Alternative treatment provisions are provided in the Plan for Allowed Secured Real Property Tax Claims. One such treatment is Section 1124(2) Unimpairment.  In connection with Section

1124(2) Unimpairment (the lump sum cure payment), the lump sum payment payable on the Effective Date to each Holder of an Allowed Secured Real Property Tax Claim excludes penalties. To the extent that any Holder of an Allowed Secured Real Property Tax Claim contends that its damages incurred after the Default Date in reasonable reliance on timely receipt of the tax (in accordance with Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)) exceed the amounts payable under the Plan's Section 1124(2) Unimpairment treatment, such Holder's rights will be fully preserved and such Holder will receive the excess (the "Additional Damages or Additional Interest") as follows:

(i)     Such Holder must specify the amount and components of such Additional Damages or Additional Interest and their nature (*e.g.*, as interest, fees or other charges) in a statement ("Additional Damages Statement") that is served on the Lehman Proponents and filed with the Bankruptcy Court by the deadline established by the Bankruptcy Court for objecting to Confirmation.  If the Holder's proof of claim contains all such information, reference in the Additional Damages Statement to the proof of claim would be adequate.  Such Additional Damages Statement need not include case law or legal argument. Thus, the Additional Damages Statement should be simpler to file than an objection to the Plan.

(ii)     If Confirmation of the Plan occurs, the Liquidating Trustee shall deposit into the Plan Reserve the amount of the Additional Damages or Additional Interest for each Holder of an Allowed Secured Real Property Tax Claim that timely files an Additional Damages Statement.

(iii)     Such Holder shall have until thirty days following the Confirmation Date to file a motion with the Bankruptcy Court, with all appropriate evidence and legal argument, as to why the Additional Damages or Additional Interest are due (the "Damages Motion").

(iv)     Promptly after entry of a Final Order granting the Damages Motion, the Liquidating Trustee shall pay to such Holder the Additional Damages or Additional Interest or such portion thereof as the Bankruptcy Court may award, plus all or any

interest earned thereupon in the Plan Reserve. If no Damages Motion is timely filed, if a Damages Motion is withdrawn or  to the extent a Damages Motion is denied by Final Order, the Liquidating Trustee shall remove from the Plan Reserve the amount (or the applicable portion) of the Additional Damages or Additional Interest, plus any interest earned thereupon in the Plan Reserve, and pay such amounts to the Lehman Creditors (whether as Lehman Plan Funding not utilized in accordance with the Plan or in repayment of Lehman Plan Funding, to the extent thereof).

**10.3**    **New Anaverde Claims.**

Notwithstanding anything to the contrary in Article XII of the Joint VD Plan:  (a) nothing in the Joint VD Plan determines or resolves (any such resolution or determination, hereinafter an "Anaverde Determination") (i) the Litigation Claims of any Debtor or Estate under or with respect to either (x) the Anaverde Agreement or (y) any Cash held pursuant thereto or (ii) either the Claims of New Anaverde, LLC ("New Anaverde") against Palmdale Hills or its Estate or other rights, interests or entitlements of New Anaverde under or with respect to either the Anaverde Agreement or any Cash held pursuant thereto ("Anaverde Claims"); (b) nothing in the Joint VD Plan limits in any manner the ability of New Anaverde to prosecute or defend, as applicable: (i) the Anaverde Claims before the Bankruptcy Court or, with stay relief, to the extent stay relief is required, before any court; or (2) such Litigation Claims before any court, or (c) if an Anaverde Determination determines that all or any part of the Cash still held pursuant to the Anaverde Agreement as of the Effective Date is property of New Anaverde and not any Estate, nothing in the Joint VD Plan limits New Anaverde in exercising or enforcing any remedies to obtain turnover of such Cash from the Plan Trustee or the applicable Estate; and (d) if an Anaverde Determination determines that New Anaverde holds an Allowed Claim against Palmdale Hills or its Estate, nothing in the Joint VD Plan limits New Anaverde in exercising or enforcing any remedies to obtain from the Estate of Palmdale Hills the treatment afforded for such Allowed Claim under the Plan.

# XI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1    Identification of Executory Contracts and Unexpired Leases.

The Lehman Proponents may file and/or amend or modify on or prior to the Confirmation Date an **Exhibit "A"** to the Plan containing, *inter alia*, a list of contracts and leases. The Liquidating Trustee shall assume, assume and assign or reject the executory contracts and unexpired leases on **Exhibit "A"** to the Plan as requested by the Lehman Proponents no later than forty-five (45) days after the Effective Date to be assumed or to be assumed and assigned or to be rejected under the Plan. The Lehman Proponents may add any executory contract or unexpired leases to this exhibit or delete any contract or lease therefrom up to and including the Confirmation Date.

### 11.2    Executory Contracts Being Assumed or Assumed and Assigned.

In accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, any executory contracts and unexpired leases of the VD Plan Debtors' Estates listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that expressly indicates that such contract or lease is to be assumed or assumed and assigned shall be so assumed or assumed and assigned automatically as of the Effective Date, and the provided that, if an objection to assumption of a particular contract or lease is pending as of the Effective Date, as to such contract or lease only, assumption or assumption and assignment shall occur on such later date when the Bankruptcy Court enters a Final Order approving assumption or assumption and assignment thereof. The cure amount therefor shall be paid promptly thereafter as an Administrative Claim under the Plan. (Such assumption or assumption and assignment shall be in addition to all executory contracts and unexpired leases that have been previously assumed by the VD Plan Debtors by order of the Bankruptcy Court.)

The Proponents shall provide notice of any amendments to **Exhibit "A"** to any party with a lease or contract to be assumed under the Plan, to the VD Plan Debtors and to the Voluntary Debtors' Committee and **Exhibit "A"** shall indicate the proposed assignee for any contract or lease proposed to be assigned.

To the extent applicable, all executory contracts or unexpired leases of VD Plan Debtors or their Estates assumed or assumed and assigned pursuant to the Plan shall be deemed modified such that the transactions contemplated by the Plan shall not be a "sale", "transfer", "conveyance", "assignment", "change of control" or words of similar meaning (collectively, a "transfer"), however such transfer may be defined in the relevant executory contract or unexpired lease, and any precondition to a transfer (including without limitation any notice or required consent) under any such contract or lease shall be deemed satisfied by Confirmation of the Plan.

Each executory contract and unexpired lease assumed or assumed and assigned pursuant the Plan (or pursuant to other Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the applicable VD Plan Debtors' Estate or assignee in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

**11.3    Cure Rights.**

Any monetary cure amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash by the later of (a) the ~~Effective Date~~date of assumption or assumption and assignment (or as soon as practicable thereafter), (b) as due in the ordinary course of business or (c) on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assigned, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute ~~and approving the assumption~~.  The Proponents may list cure amounts for executory contracts and unexpired leases on **Exhibit "A."**  The failure of any non-Debtor party to an executory contract or unexpired lease to file and serve an objection to the cure amount listed on **Exhibit "A"** for such party's contract or lease by the deadline for objecting to the Plan shall be deemed consent to such cure amount~~; provided, however, that prior to entry of a Final Order~~

approving the assumption of an executory contract or unexpired lease, the VD Plan Debtors shall be authorized to reject any and, if such objection is filed or the Bankruptcy Court determines that a higher cure amount is owing, an Order shall be issued rejecting such executory contract or unexpired lease to the extent the Lehman Proponents conclude that the amount of the cure obligation as determined by the Bankruptcy Court renders assumption of such executory contract or unexpired lease unfavorableso request.

**11.4    Executory Contracts Being Rejected.**

Any executory contracts and unexpired leases of the VD Plan Debtors' Estates listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that indicates such contract or lease is to be rejected shall be so rejected as of the Confirmation Date. Additionally, there shall be rejected as of the Confirmation Date all executory contracts and unexpired leases of the VD Plan Debtors' Estates not listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, provided that such contracts or leases: (a) have not previously expired or terminated pursuant to their own terms, and (b) were not previously rejected, and (c) are not the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition filed by the VD Plan Debtors on or before the Confirmation Date. or assumed. Further, all executory contracts and unexpired leases of the VD Plan Debtors' Estates that are listed on **Exhibit "A"** to the Plan for assumption or assumption and assignment that are not assumed or assumed and assigned within the deadlines set forth in the Plan are rejected as provided in any Final Order and, if not first so rejected, shall be automatically rejected after suchthe deadline for assumption or assumption and assignment has expired.

**11.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee.**

To the extent that a matter that provides the VD Plan Debtors or their Estates with property rights does not constitute an executory contract or unexpired lease, or the VD Plan Debtors have obtained property rights under the executed portion of an executory contract or unexpired lease, rejection shall not constitute an abandonment by the VD Plan Debtors, the Lehman Nominees or the Liquidating Trustee of any such property rights.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 11.6    Continuing Obligations

Continuing obligations of third parties to the VD Plan Debtors under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the Plan to the extent no obligations to such third party must be cured or assumed as a condition thereto by the VD Plan Debtors, their Estates or their assignees under or pursuant to the Plan, unless otherwise specifically terminated by the ~~VD Plan Debtors~~Liquidating Trustee or by order of Bankruptcy Court.  The deemed rejection provided by the Plan is of executory contracts and unexpired leases and thus shall not apply to any such continuing obligations.

### 11.7    Bar Date for Rejection Damages.

Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the VD Plan Debtors,~~their~~' Estates, the Liquidating Trustee, ~~their Affiliates, their~~the Lehman VD Lenders, the Lehman Nominees, any assignees or other successors, or their properties, and shall not be entitled to any Distribution under the Plan, unless a Proof of Claim for such Claim is timely filed and served.  For rejections occurring prior to Confirmation, such Claims must have been filed by the later of March 31, 2009 or thirty (30) days following the date of entry of the order of the Bankruptcy Court approving rejection.  For Claims related to executory contracts or unexpired leases not listed on **Exhibit "A"** to the Plan that are rejected under the Plan, such Claim must have been filed and served on the ~~VD Plan Debtors~~Trustee (if before the Effective Date) or the Liquidating Trustee and Lehman ~~VD Lenders~~Creditors (if after the Effective Date) within thirty (30) days after the Confirmation Date.  For Claims related to executory contracts or unexpired leases listed for rejection on **Exhibit "A"** to the Plan that are rejected under or in accordance with the Plan, such Claim must have been filed and served on the Liquidating Trustee and Lehman VD Lenders ~~within~~by the ~~later~~earlier of:  (a) thirty (30) days after service upon the non-debtor party to the contract or lease of any notice of the

rejection of the contract or lease, including service of the Plan and its **Exhibit "A"** if the contract or lease is listed for rejection thereupon; and (b) thirty (30) days after the Confirmation Date. For Claims related to executory contracts or unexpired leases listed for assumption or assumption and assignment on **Exhibit "A"** to the Plan that are rejected under or in accordance with the Plan, such Claim must have been filed and served on the Liquidating Trustee and Lehman Creditors by the earlier of:  (a) thirty (30) days after service upon the non-debtor party to the contract or lease of any notice of the rejection of the contract or lease or order specifically providing for rejection of such contract or lease; and (b) sixty (60) days after the date under the Plan to assume or assume and assign such contract or lease has expired.

## XII

## EFFECT OF CONFIRMATION OF THE PLAN;

## AND PLAN INJUNCTION

Following Confirmation, the VD Plan Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Lehman VD Lenders in preparing for the Effective Date and the matters to occur and actions required to be taken in connection therewith.

Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold a debt, Claim, or Interest against a VD Plan Debtor (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units, other than as to matters excepted from the automatic stay by Bankruptcy Code § 362(b)(4), including, without limitation, the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power, including the enforcement of a judgment other than a monetary judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's police or regulatory power) shall be permanently enjoined from:

(a)    taking any of the following actions *on account of any such debt, Claim, or Interest*:[4]

(1)    commencing or continuing in any manner any action or other proceeding against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(2)    enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or order against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(3)    creating, perfecting, or enforcing any Lien or encumbrance against the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(4)    asserting any set off, right of subrogation, or recoupment of any kind against any obligation due to the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(b)    challenging the Distributions to be effected by the Plan or the classification of Claims or Interests set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

## XIII

## LIMITATION OF LIABILITY

### 13.1    No Liability for Solicitation or Participation.

As specified in section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of

---

[4] An action on "account of any such debt, Claim or Interest" does not include an action against the Liquidating Trustee or Lehman Released Parties (or the successors or property of either of them) (a "Target") based upon an independent obligation of such Target (such as, by example, a written guaranty of such Target or an obligation of such Target arising under law based on the Target's current ownership of real property) so long as the obligation is not alleged to arise based upon the Target's post-petition involvement in these Cases or with the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**13.2    Limitation of Liability.**

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their respective Affiliates, nor any of their employees, Professionals, staff, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals shall have any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of ~~confirmation~~Confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the administration of the Plan, the Cases or the property to be distributed under the Plan, or any contract, instrument, document or other agreement entered into pursuant thereto through and including the Effective Date, except: (a) the Liquidating Trustee, in such capacity, shall be liable contractually for the performance of obligations assumed or imposed under or by the Plan; (b) for liability for damages proximately caused by (i) intentional misconduct as finally determined by a Final Order of the Bankruptcy Court and (ii) gross negligence in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, other than liability resulting from the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan. Each of the Liquidating Trustee, his Professionals and staff, and Lehman Related Parties shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under or with respect to the Plan.

## XIV

## CONDITIONS TO CONFIRMATION AND

## EFFECTIVENESS OF THE PLAN

**14.1    Conditions Precedent to Entry of the Confirmation Order.**

Unless waived by the Lehman VD Lenders in their sole and absolute discretion, conditions precedent to entry of the Confirmation Order, which will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions

of the Bankruptcy Code, are:  (i) first, execution of a Settling Bond Issuer Agreement, as summarized in Plan Section 8.8, by certain of the Lehman Related Parties and each Bond Issuer; and (ii) second, approval of the role and obligations under the Plan of certain of the Lehman VD Lenders and each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman VD Lender, and LBHI, which may be a party to the Settling Bond Issuer Agreements and may be a source of funding of the Lehman Plan Funding.

**14.2    Conditions Precedent to Plan Effectiveness.**

The following shall be conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date.

(a)    The Confirmation Order shall be a Final Order in form and substance reasonably satisfactory to the Lehman VD Lenders; and

(b)    Unless waived by the Lehman VD Lenders, all agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, including, without limitation, each of the documents necessary for consummation of the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived other than the occurrence of the Effective Date.

**14.3    Conditions Precedent to Entry of the Confirmation Order and to Plan Effectiveness**

~~Two other~~Other conditions precedent to entry of the Confirmation Order, the effectiveness of the Plan and the occurrence of the Effective Date are:

(a)    The Lehman VD Lenders not withdrawing the Plan prior to the Effective Date, which withdrawal may occur if either:

(1)    As to the Group I Debtors, that the Lehman VD Lenders' good faith estimate of Lehman Plan Funding exceeds $22 million; or

(2)    As to the Group II Debtors, the Lehman VD Lenders' good faith estimate of all such Debtors' Allowed Senior Claims exceeds $3 million~~.~~; or

~~If such withdrawal occurs~~, the Lehman VD Lenders shall file a notice thereof ~~with the Bankruptcy Court; and~~(3)    After the filing of the Plan, a material ruling is issued or a material fact is newly discovered with respect to an alleged Litigation Claim against any of the Lehman Released Parties or a material adverse change occurs with respect to an applicable VD Plan Debtor's assets; and

(b)    Unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, Confirmation of the Plan as to all of the VD Plan Debtors and the ability to have the Effective Date occur for all of the Joint VD Plan Debtors.

If withdrawal occurs under subsections (a) hereof or a waiver is issued under subsection (b), the Lehman VD Lenders shall file a notice thereof with the Bankruptcy Court.

## XV

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court shall retain jurisdiction over the Cases of the VD Plan Debtors and any of the proceedings related to the Cases of the VD Plan Debtors pursuant to Bankruptcy Code § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law.

## XVI

## MODIFICATION OR WITHDRAWAL OF PLAN

**16.1    Modification of Plan.**

At any time prior to ~~confirmation~~Confirmation of the Plan, the Lehman VD Lenders may supplement, amend, modify or restate the Plan or withdraw it as to any VD Plan Debtor. After ~~confirmation~~Confirmation of the Plan, the Lehman VD Lenders or Liquidating Trustee with the consent of the Lehman VD Lenders may (x) apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**16.2** **Nonconsensual Confirmation.**

In the event that any Impaired Class of Claims or Interests shall fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, Lehman VD Lenders (i) may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and in accordance with the Plan, and (ii) may modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

## XVII

## MISCELLANEOUS

**17.1** **Changes in Rates Subject to Regulatory Commission Approval.**

The VD Plan Debtors are not subject to governmental regulatory commission approval of their rates.

**17.2** **Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of Title 28 of the United States Code with respect to the VD Plan Debtors shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall have been established and set aside for payment in full thereof, as required by section 1129(a)(l2) of the Bankruptcy Code.  The Liquidating Trustee shall remain responsible for timely payment of quarterly fees due and payable after the Effective Date with respect to the VD Plan Debtors until each applicable VD Plan Debtor's Case is closed, to the extent required by section 1930(a)(6) of Title 28 of the United States Code.

**17.3** **Payment Dates.**

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.

**17.4** **Headings.**

The headings used in the Joint VD Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Joint VD Disclosure Statement or the Plan

nor in any manner affect the construction of the provisions of the Joint VD Disclosure Statement or the Plan.

**17.5    Other Documents and Actions.**

The VD Plan Debtors and Liquidating Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**17.6    Notices.**

All notices and requests in connection with the Joint VD Disclosure Statement and the VD Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> Edward Soto, Esq.
> Nellie P. Camerik, Esq.
> Weil, Gotshal & Manges LLP
> 1395 Brickell Avenue
> Suite 1200
> Miami, FL 33131
>
> and
>
> Alfredo R. Perez, Esq.
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY  10153-0119

**With copies to:**
> Dean A. Ziehl, Esq.
> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd., 11th Fl.
> Los Angeles, CA  90067

All notices and requests to any Person holding of record any Claim or Interest shall be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this section, which designation will be effective on receipt.

**17.7    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to its conflict of law

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 17.8    **Binding Effect**.

This Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Lehman Creditors, the VD Plan Debtors, the Liquidating Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

### 17.9    **Successors and Assigns**.

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such Person.

### 17.10    **Severability of Plan Provisions**.

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying ~~confirmation~~Confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Lehman Proponents, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

### 17.11    **No Waiver**.

The failure of the VD Plan Debtors, Liquidating Trustee, Voluntary Debtors' Committee or Lehman Creditors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Voluntary Debtors' Committee's, the VD Plan Debtors', the Liquidating Trustee's or the Lehman VD Lenders' right to object to or examine such Claim, in whole or in part.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**17.12** **Inconsistencies.**

In the event the terms or provisions of the Joint VD Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

**17.13** **Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a VD Plan Debtor or its Estate to the Liquidating Trustee, the Lehman Nominees or to any other Person pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the VD Plan Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest), including, without limitation, transfers or sales pursuant to the Confirmation Order or any Sale Order will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**17.14** **Post-Confirmation Status Report.**

By the earlier of 180 days following the entry of the Confirmation Order a status report shall be filed with the Court explaining what progress has been made toward consummation of the confirmed Plan, which report shall be filed by the Liquidating Trustee, if the Effective Date occurs within 120 days following the entry of the Confirmation Order and, otherwise, by the Lehman VD Lenders.  The status report shall be served on the United States Trustee, the list of twenty largest unsecured ~~creditors~~Creditors filed by the VD Plan Debtors for the jointly administered Cases of the Debtors, the Lehman Creditors, the Liquidating Trustee and those parties who have requested special notice. Unless otherwise ordered, further status reports shall be filed every 180 days and served on the same entities.

**17.15    Post-Confirmation Conversion/Dismissal.**

A ~~creditor~~Creditor or party in interest may bring a motion to convert or dismiss any Case of a VD Plan Debtor under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan, subject to the right of any party in interest to object to such motion. If the Court orders any of the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**17.16    Final Decree.**

Once a VD Plan Debtor's Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Liquidating Trustee, or other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case of such VD Plan Debtor.

Dated:    ~~June 20,~~July 15, 2011              PACHULSKI STANG ZIEHL & JONES LLP


                                                By      */s/ Robert B. Orgel*
                                                        Dean A. Ziehl (CA Bar No. 84529)
                                                        E-mail: dziehl@pszjlaw.com
                                                        Robert B. Orgel (CA Bar No. 101875)
                                                        E-mail: rorgel@pszjlaw.com
                                                        Attorneys for Lehman Commercial Paper
                                                        Inc. and Lehman ALI, Inc.

**EXHIBIT "A"**

**List of Contracts and Leases**

**[TO BE FILED]**

EXHIBIT "B"

**List of Projects, Their Owners and Descriptions**

| NAME OF PROJECT AND ITS OWNER | DESCRIPTION |
|---|---|
| 1. Ritter Ranch Project; Palmdale Hills (Voluntary Debtor) | Palmdale Hills owns the Ritter Ranch Project. The Ritter Ranch Project consists of a 10,625 acre site situated in the City of Palmdale, in Los Angeles County, California. Grading of the first phase is complete with master infrastructure nearly 90% complete. The specific plan and the development agreement were approved in 1992 and allow for the development of up to 7,200 residential units. A vesting tentative parcel map consisting of 42 parcels has been processed and was recorded in 1995. Additionally, six vesting tentative tract maps totaling 553 lots were approved by the city in December 1995. All regulatory permits have been received. |
| | Palmdale Hills also owns personal property in the form of cash and the PH CFD Bonds. |
| 2. Acton Project; Acton Estates (Voluntary Debtor) | Action Estates owns the Acton Project consisting of a 175-acre site situated in Los Angeles County, California. The Acton Project is surrounded by mostly equestrian properties and light agricultural vacant land. The Acton Project is expected to consist of 136 units. |
| 3. Beaumont Heights Project; SunCal Beaumont (Voluntary Debtor) | SunCal Beaumont owns the Beaumont Heights Project, that originally consisted of a 1,191-acre site situated in the City of Beaumont, in Riverside County, California. The property is currently designated as low density residential use -rural residential use. The City of Beaumont is in the process of amending the general plan, preparing an environmental impact report and annexing the assemblage. The specific plan and tentative tract map are in the drafting stage. The Beaumont Heights Project was expected to consist of 1,203 units. A portion of the Beaumont Heights Project has been lost through foreclosure sales completed prior to the Petition Date. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| NAME OF PROJECT AND ITS OWNER | DESCRIPTION |
|---|---|
| 4.   Bickford Ranch Project; SunCal Bickford (Voluntary Debtor) | SunCal Bickford owns the Bickford Ranch Project, consisting of a 1,940-acre site situated in the City of Penryn, in Placer County, California. The Bickford Ranch Project is fully entitled with an approved large lot tentative map, small lot tentative map, specific plan, design guidelines, development standards, and a development agreement. The offsite water and sewer improvements are mostly complete. Improvement plans for major roads and in-tract improvements were in process of being completed and a memorandum of understanding between the City and County for the regional sewer pipeline was in process. The Bickford Ranch Project is expected to consist of 2,105 units.

SunCal Bickford owns personal property in the form of cash. |
| 5.   Johannson Ranch Project; SunCal Johannson (Voluntary Debtor) | SunCal Johannson owns the Johannson Ranch Project, consisting of a 501-acre site in the City of Modesto, in Stanislaus County, California. Tentative maps were in the process of being prepared. Engineering plans and preparation of the draft specific plan were commenced prior to the filing of the Debtors' Cases. The SunCal Johansson Project is expected to consist of 921 units. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| NAME OF PROJECT AND ITS OWNER | DESCRIPTION |
|---|---|
| 6. Summit Valley Project; SunCal Summit Valley, Kirby Estates, Seven Brothers (Voluntary Debtors) | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date. Seven Brothers owned 900 acres of the Summit Valley Project, a portion of which has been lost through foreclosure proceedings completed prior to the Petition Date. Kirby Estates owns 27 acres of the Summit Valley Project. (SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.) |
| 7. Joshua Ridge Project; SCC Communities (Voluntary Debtor) | SCC Communities owns the Joshua Ridge Project, consisting of an 80-acre site situated in the City of Victorville in San Bernardino County, California. The Joshua Ridge Project was slated to be sold to the city and the city was scheduled to use the land to build a park or a school. |
| 8. Tesoro Project; Tesoro (Voluntary Debtor) | Tesoro owns the Tesoro Project consisting of a 185-acre site situated in the City of Santa Clarita in Los Angeles County, California. The existing entitlements include a tentative tract map approved by the planning commission, which allows for 45 lots. |

**EXHIBIT "C"**

**Easements, Covenants, Conditions, Restrictions and Other Matters of Record Affecting
Real Property, Leasehold Estates or Personalty or Any Interest Therein**

**[TO BE FILED]**

# EXHIBIT "~~D~~E"

## Definitions

**1.**     **Acquisitions.**  SCC Acquisitions, Inc., a California corporation, and an indirect parent of each of the Debtors, but not a Debtor in any of the Cases.

**2.**     **Acton Estates.**  Acton Estates, LLC, a Delaware limited liability, a Voluntary Debtor in these Cases, and the owner of the Acton Project.

**3.**     **Acton Project.**  The Project owned by Acton Estates, located in Los Angeles County, California, as more particularly described in **Exhibit "B"** to the Plan..

**4.**     **Administrative Claim.**    Any Claim against a VD Plan Debtor or Estate thereof, incurred after the applicable Petition Date for the applicable VD Plan Debtor but before the ~~Confirmation~~Effective Date, for any cost or expense of administration of the Case of the applicable VD Plan Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a VD Plan Debtor under section 1930 of Title 28 of the United States Code.

**5.**     **Administrative Claim Bar Date.**  The General Administrative Claim Bar Date and the Administrative Tax Claim Bar Date.

**6.**     **Administrative Tax Claim**  A request for payment of an Administrative Claim by a governmental unit for Taxes (or for interest or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date.

**7.**     **Administrative Tax Claim Bar Date**  The earlier of (a) any bar date otherwise established by the Bankruptcy Court or (b) on or before the later of (i) sixty (60) days following the Effective Date; and (ii) 180 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.

**8.**     **Affiliate**  As to any Person, any other Person that directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, such Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other equity ownership interest, by contract or otherwise; provided that as to any Lehman Related Party, the term "Affiliate" does not include any Debtor.

**9.**     **Allowance Determination Date**  As to a Claim, the earliest of the following dates after the Effective Date: (a) the first Business Day as of which the Claim is Allowed by a Final Order; (b) the first Business Day as of which both the Claim is Allowed and the last day to timely object to the Claim has passed; and (c) the date, selected in the sole and unfettered discretion of the Lehman VD Lenders, as the first Business Day as of which they have determined that they will not object to the subject Claim and thus are prepared to treat it as Allowed.

**10.**     **Allowed**  This term is used both separately and in conjunction with other defined terms in the Plan (*e.g.*, Allowed General Unsecured Claims) and means:

a.     with respect to any Administrative Claim:  (1) if the Claim is based upon a Fee Application, an unsecured Claim in the amount of such Fee Application that has been approved by a Final Order of the Bankruptcy Court; or (2) if the Claim is based upon any indebtedness or obligation incurred in the ordinary course of business of the VD Plan Debtors and is not otherwise subject to an Administrative Claim Bar Date, in the amount of such Claim and with a status as secured or unsecured as each are asserted by such ~~creditor~~Creditor and not disputed by the Liquidating Trustee or the Lehman Creditors, failing which, the amount and secured or unsecured status thereof as fixed by a Final Order of the Bankruptcy Court; or (3) if the Holder of such Claim was required to file and has filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, (i) in the amount and with the status as secured or unsecured and in the statutory priority as stated in such proof of Administrative Claim if no objection to such proof of Administrative Claim is interposed within the applicable period of time, if any, fixed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court or the Plan, or (ii) in the amount and with the status as secured or unsecured and in the statutory priority as fixed by Final Order of the Bankruptcy Court if an objection to such proof was interposed within any applicable period of time so fixed; or (4) if such Claim is contingent or unliquidated, in the estimated amount and with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

status as secured or unsecured and in the statutory priority as fixed by Final Order of the Bankruptcy Court; or (5) in the amount of zero, if the Holder of such Claim was required to file and has <u>not</u> filed proof thereof with the Bankruptcy Court prior to an Administrative Claim Bar Date, in which event no Distribution shall be made on account of such Claim; and

b. with respect to any Claim which is not an Administrative Claim: (1) if no objection to such Claim was interposed by the Claims Objection Deadline, (i) if the Holder of such Claim did not file proof thereof with the Bankruptcy Court on or before the applicable Claims Bar Date, if a Scheduled Claim, in the amount thereof, with the status as secured or unsecured thereof and with the statutory priority thereof and (ii) if the Holder of such Claim has filed a Proof of Claim therefor with the Bankruptcy Court on or before the applicable Claims Bar Date, in the amount and with the status as secured or unsecured and in the statutory priority as stated in such Proofs of Claim; or (2) if an objection to such Claim was interposed by the Claims Objection Deadline, in the amount or any estimated amount for purposes of allowance and with the status as secured or unsecured and in the statutory priority thereof as fixed by Final Order of the Bankruptcy Court; or (3) if the Holder of such Claim did not file proof thereof with the Bankruptcy Court on or before the applicable Claims Bar Date, the Claim is not a Scheduled Claim, and the Claim is not deemed Allowed under the terms of this Plan, in the amount of zero and no Distribution shall be made on account of such Claim; and

c. with respect to a Claim's status as a Reliance Claim, (1) with such status if it is alleged on the Holder's Ballot in the manner provided therefor and if no objection thereto is interposed by the Claims Objection Deadline, or (2) with such status if it is alleged by the Liquidating Trustee and either (i) the Lehman VD Lenders consent or (ii) no objection thereto is filed by the later of the Claims Objection Deadline or seventy-five (75) days after notice thereof to the Voluntary Debtors' Committee, if surviving, and the Lehman Creditors or (3) as fixed by Final Order of the Bankruptcy Court; and

d. with respect to any Interest, (1) if no objection to such Interest was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, (i) if the Holder of such Interest did not file proof thereof with the

Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and with the nature thereof as listed in the VD Plan Debtors' Schedules if listed as neither disputed, contingent or unliquidated and (ii) if the Holder of such Interest has filed a Proof of Interest therefor with the Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and with the nature thereof as stated in such Proof of Interest, or (2) if an objection to such proof was interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court; but

       e.    with respect to any Administrative Claim, Claim or Interest, the term "Allowed" does not signify whether or not such Administrative Claim, Claim or Interest has been subordinated to another Administrative Claim, Claim or Interest or is entitled to the benefits of such subordination.

**11.**    **Allowed Amount**   The amount in which a Claim or Interest is Allowed. (If the source of allowance of a Claim (*e.g.*, a Proof of Claim) does not specify its amount, there is no Allowed Amount, unless determined by agreement of the payor under the Plan and Holder, by the Bankruptcy Court or by another court of competent jurisdiction.)

**12.**    **Anaverde Agreement**   That certain *Work and Cost Payment Agreement and First Amendment to Reciprocal Easement Agreement and Cooperation Agreement,* between Anaverde LLC and Palmdale Hills, dated as of June 29, 2001.

**13.**    **Arch**   Arch Insurance Company or an Affiliate thereof.

**14.**    **Asset**   Any asset that is property of a VD Plan Debtor pursuant to Bankruptcy Code section 541.

**15.**    **Available Cash**   Cash held by each VD Plan Debtor as of the Effective Date other than Cash Collateral.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**16.**    **Avoidance Actions**   All claims and defenses to Claims accruing to the VD Plan Debtors or their Estates under Bankruptcy Code sections 502(d), 506(c), 506(d), 510(c), 541, 542, 544, 545, 547, 548, 549, 550, 551 or 553.

**17.**    **Ballot**   The ballot to vote to accept or reject the Plan.

**18.**    **Bankruptcy Code**   The Bankruptcy Reform Act of 1978, as amended, as set forth in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Cases.

**19.**    **Bankruptcy Court**   The United States Bankruptcy Court for the Central District of California, having jurisdiction over the Cases of the VD Plan Debtors and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Central District of California; or, in the event such courts cease to exercise jurisdiction over the Cases of the VD Plan Debtors, such court or unit thereof that exercises jurisdiction over the Cases of the VD Plan Debtors in lieu thereof.

**20.**    **Bankruptcy Rules**   Collectively, as now in effect or hereafter amended and as applicable to the Cases, (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules and General Orders applicable to cases pending before the Bankruptcy Court.

**21.**    **Beaumont Heights Project**   The Project owned by SunCal Beaumont, located in the City of Beaumont, California, as more particularly described in **Exhibit "B"** to the Plan.

**22.**    **Bickford Ranch Project**   The Project owned by SunCal Bickford, located in the City of Penryn, California, as more particularly described in **Exhibit "B"** to the Plan.

**23.**    **Bickford Second Lien Loan Agreement**   That certain promissory note, dated as of May 25, 2005, in the maximum aggregate principal amount of approximately $30,000,000, made by SunCal Bickford, as borrower, and payable to the order of Lehman ALI, as lender.  The loan made pursuant to and/or evidenced by the Bickford Second Lien Loan Agreement is secured by a second priority deed of trust on the Bickford Ranch Project.  The outstanding balance of the loan under the Bickford Second Lien Loan Agreement was not less than $54,494,059.38 as of the applicable Petition Date.

**24.**    **Bond-Backed Claim**   A Claim or portion of a Claim against a VD Plan Debtor, the payment of which is or was at any time secured by a Project Bond.  Bond-Backed Claims are further

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

characterized as either Bond-Backed Non-Future Work Claims or Bond-Backed Future Work Claims.

**25.    Bond-Backed Claimant**    Holder(s) of a Bond-Backed Claim other than a Bond Issuer.

**26.    Bond-Backed Future Work Claim**    A Bond-Backed Claim secured by a Future Work Bond.

**27.    Bond-Backed Non-Future Work Claim**    A Bond-Backed Claim secured by a Project Bond other than a Future Work Bond, but excluding any Settling Bond Issuer-Owned Non-Future Work Claims.

**28.    Bond Claim**    A Bond-Backed Claim or a Bond Issuer Claim.

**29.    Bond Issuer**    Bond Safeguard or Arch, each in its capacity as an issuer and surety under a Project Bond.

**30.    Bond Issuer Claim**    A Claim against a VD Plan Debtor held by a Bond Issuer (either directly (including by assignment) or through rights of subrogation), and including a liquidated Claim and a contingent Claim, and arising from, under or in connection with the Bond Issuer's issuance and maintenance of a Project Bond.

**31.    Bond Modification Discussions**    Discussions, including efforts to approach and initiate discussions, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman VD Lenders or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds, regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any Future Work Bonds issued for the benefit of any Plan Project and currently outstanding.

**32.**    **Bond Obligations**    The obligations of the Bond Obligors to indemnify the Bond Issuers for any payments made or any performance obligations undertaken by the Bond Issuers under their respective Project Bonds.

**33.**    **Bond Obligors**    Obligors (other than VD Plan Debtors) who are liable to a Bond Issuer for any payments made or any performance undertaken by such Bond Issuer under its respective Project Bonds.  The Bond Issuers assert that the Bond Obligors under their respective Project Bonds include Acquisitions and Elieff.

**34.**    **Bond Safeguard**    Bond Safeguard Insurance Company, Lexon Insurance Company or an Affiliate thereof.

**35.**    **Bonded Work**    Any work or improvements, the payment, performance and/or completion of which is secured by one or more Project Bonds. Bonded Work is further characterized as either Future Work or Non-Future Work.

**36.**    **Bump Up Threshold**    As to each Group I Debtor, the following indicated threshold to be utilized in determining whether the Projected Distribution Bump Up is available for a Holder of an Allowed Class 6 Claim against such Group I Debtor:

|  | **Group I Debtor** | **Bump Up Threshold** |
|---|---|---|
| (i) | Acton Estates, LLC | $   106,842 |
| (ii) | Palmdale Hills Property, LLC | $1,514,533 |
| (iii) | SCC Communities, LLC | $       6,667 |
| (iv) | SunCal Bickford Ranch, LLC | $   532,304 |
| (v) | SunCal Communities I, LLC | $           0 |
| (vi) | SunCal Summit Valley, LLC | $   292,569 |
| (vii) | Tesoro SF, LLC | $     47,086 |
|  | **TOTAL** | $2,500,000 |

**37.**    **Business Day**    Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a); provided that with reference to the date on which something is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to be filed, it shall not include a day on which the applicable court is inaccessible for the purpose of Filing such paper.

**38.** **Case**   The chapter 11 case of a Debtor pending before the Bankruptcy Court.

**39.** **Cash**   Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

**40.** **Cash Collateral**   This term is used in reference to certain Assets of a VD Plan Debtor's Estate with the same meaning as set forth in Bankruptcy Code section 363(a) and includes, without limitation, any and all Cash that the Lehman VD Lenders assert constitute Cash Collateral and that the applicable VD Plan Debtor may dispute as constituting Cash Collateral, and any and all interests of the applicable VD Plan Debtor in Cash that may be held by the applicable VD Plan Debtor in escrow as of the Effective Date, provided, however, (1) the term shall not include any Cash held by a party other than a VD Plan Debtor pursuant to the Anaverde Agreement, (2) rights of Palmdale Hills with respect to the Anaverde Agreement and amounts held pursuant thereto are Litigation Claims, and (3) any liens or security interests of the Lehman VD Lender that may exist with respect to the Anaverde Agreement and amounts held pursuant thereto are not eliminated or diminished by the exclusion of the same from this definition.

**41.** **Claim**   A claim — as Bankruptcy Code section 101(5) defines the term "claim"— against any VD Plan Debtor or any VD Plan Debtor's property, including, without limitation (a) any right to payment from any of the VD Plan Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the VD Plan Debtors, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**42.** **Claim Right**   The rights, benefits and interests of a Holder with respect to a Claim including, without limitation, Proofs of Claim and Encumbrances securing such Claim.

**43.**    **Claims Bar Date**    The Primary Claims Bar Date or Supplemental Claims Bar Date, as applicable.

**44.**    **Claims Objection Deadline**    For a Claim other than an Administrative Claim and except as otherwise set forth in the Plan, the first Business Day following the one hundred and twentieth (120th) day after the later of (a) the Effective Date or (b) the applicable bar date for the Claim; provided that: (a) upon application to the Bankruptcy Court, the Liquidating Trustee or Lehman VD Lenders may obtain an extension of any such deadline for up to sixty (60) days for cause shown; and (b) any deadline may be extended by agreement of the potential target of the objection and the Liquidating Trustee or a Lehman VD Lender.

**45.**    **Class**    Each group of Claims or Interests classified in Article V. of the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

**46.**    **Classes 6/7 Allowance Determination Date**    The first date, as determined by the Liquidating Trustee in his good faith discretion, as of which the Liquidating Trustee determines that, with respect to each General Unsecured Claim and each Reliance Claim in Classes 6 or 7, as applicable, the Allowance Determination Date has occurred or the Claim has been determined by a Final Order or this Plan not to be susceptible of being an Allowed Claim.

**47.**    **Classes 6/7 Distribution Amount**    The amount due to be distributed in accordance with the Plan in respect of all Classes 6 and 7 Claims that have not been Disallowed, exclusive of amounts to be distributed in respect of:  (a) any of the following Claims: (i) Formerly Secured Claims; (ii) the Allowed Claims, if any, of Elieff, Acquisitions, or any other Bond Obligor, to the extent arising from their liability to a Settling Bond Issuer under an indemnity agreement in favor of such Settling Bond Issuer; and (iii) the Allowed Claims, if any, asserted by a Settling Bond Issuer other than Claims that were originally held by a Bond-Backed Claimant; and (b) any Claim or portion of a Claim that is a Future Obligation.

**48.**    **Confirmation**    As to a particular VD Plan Debtor, the confirming of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**49.**    **Confirmation Date**    The date on which the Confirmation Order is entered in the Bankruptcy Court's docket.

**50.**    **Confirmation Order**    The order entered by the Bankruptcy Court approving Confirmation.

**51.**    **Creditor**    Any Person who is or asserts to be the Holder of a Claim against any VD Plan Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise become due, owing, and payable on or before the applicable VD Plan Debtor's Confirmation Date, including, without limitation, Claims asserted to be of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**52.**    **Creditor's Assignment / Release for Lehman**    The assignment of Claims and/or release of Creditors for the benefit of the Lehman Released Parties as more fully set forth in Section 8.9.1 of the Plan.

**53.**    **Debtor**    A Voluntary Debtor or a Trustee Debtor.

**54.**    **Del Rio**    North Orange Del Rio Land, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**55.**    **Del Rio CFD Bond Proceeds**    All proceeds of those certain bonds to be designated as "City of Orange, Community Facilities District No. 06-01 (Del Rio Public Improvements) 2007 Special Tax Bonds" or similarly designated bonds to be issued by the City of Orange, California in connection with that certain community facilities district established by the City and known as the City of Orange Community Facilities District No. 06-01 (Del Rio Public Improvements).

**56.**    **Delta Coves**    Delta Coves Venture, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**57.**    **Disclosure Hearing Date**    The last day of the hearing on approval of the Disclosure Statement, which hearing commences prior to the time of entry of the order approving the Disclosure Statement.

**58.**    **Disclosure Statement**    The Joint VD Disclosure Statement.

**59.**    **Disputed Claim**    All or any part of a Claim that is not Allowed, including, without limitation, all or part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim and it is not deemed Allowed under the Plan, and either (a) the Claim is not listed in the Schedules or (b) the Claim is listed in the Schedules as unliquidated,

disputed, contingent, unknown or in a zero amount, (ii) the liability for, amount, priority or status of the Claim as secured, status as unsecured or status as a Reliance Claim (a) is the subject of a pending proceeding, whether arbitration, mediation, litigation, adversary proceeding or otherwise; (b) is subject to offset based upon a filed judgment, filed order, filed stipulation or express provision in an executed agreement that was filed or executed, as appropriate, after the alleged right to offset arose; (c) is the subject of a timely objection; or (d) is the subject of a request for estimation made in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court or the Plan, in each case that is filed on or before the Claims Objection Deadline, provided that any such proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

**60.** **Distribution**   A payment to a Holder of an Allowed Claim or Allowed Interest that is provided for under the Plan.

**61.** **Distribution Agent**   The Liquidating Trustee.

**62.** **Distribution Date**   With respect to any Allowed Claim or Allowed Interest, the date on which a Distribution is required to be made under the Plan or as soon as practicable thereafter.

**63.** **Effective Date**   A date selected by the Lehman VD Lenders that is no earlier than the Confirmation Date and no later than the sixtieth (60th) day after the Confirmation Date.

**64.** **Elieff**   Bruce Elieff, an owner of and the manager of Acquisitions, an indirect parent of each of the Debtors.

**65.** **Emerald Meadows Project**   A 178 acre site situated in the City of Rubidoux in Riverside County, California owned by SunCal Emerald.

**66.** **Encumbrance**   Any Lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, unassumed affirmative obligation under a development agreement or subdivision improvement agreement, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject Plan Project, including any right of recovery, tax (including foreign, federal, state and local tax), order of any governmental authority or other claim there against or therein, of any kind or nature (including

(i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that the acquirer is a successor, transferee or continuation of the sellers or their business, and (iv) any leasehold interest, license or other right, in favor of a person other than the transferor in connection with a sale or conveyance, to use any portion of the subject Project), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

**67.**    **ES Action**    That certain adversary proceeding filed in the Cases and pending before the Bankruptcy Court (as Adversary Case No. 8:09-ap-01005).

**68.**    **Estate or Estates**    The bankruptcy estates of the VD Plan Debtors created pursuant to section 541 of the Bankruptcy Code.

**69.**    **Federal Judgment Rate**    The rate of interest applicable to federal civil judgments, as provided in 28 U.S.C. § 1961(a), as of the applicable Petition Date.

**70.**    **Fee Applications**    Applications of Professionals under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Cases of the VD Plan Debtors.

**71.**    **Final Confirmation Order**    The Confirmation Order when it becomes a Final Order.

**72.**    **Final Order**    A final and non-appealable judgment, order, ruling or other decree issued and entered by a court of competent jurisdiction.

**73.**    **Formerly Secured Claim**    An Allowed Claim against a Group I Debtor that is a General Unsecured Claim or Reliance Claim and is Allowed based upon either: (a) there being a Proof of Claim for such Claim against the applicable VD Plan Debtor that alleges that the Claim is a Secured Claim; or (b) the Claim being a Scheduled Claim as to the applicable VD Plan Debtor, with its status indicated as secured on such VD Plan Debtor's Schedules.

**74.**    **Future Obligation**    A Claim or portion of a Claim against a VD Plan Debtor that is not a Settling Bond Issuer-Related Claim, but, at each relevant time: (a) arises from such VD Plan

Debtor's obligation (pursuant to a contract, a permit or otherwise) to perform, complete or pay for certain work in connection with the development of its Plan Project, which work would have constituted Future Work had the payment and/or performance of the same been secured by a Project Bond, and which obligation of such VD Plan Debtor has not yet become due (pursuant to the terms of the applicable contract, permit or other basis for such obligation) without regard to the effect of any acceleration of the type described in clause (b) below ; or (b) is contingent, without regard to an acceleration triggered by a default of the type specified in Bankruptcy Code § 365(b)(2), *e.g.*, a default arising from the fact of the commencement of the bankruptcy case of the VD Plan Debtor, its insolvency, its financial condition or the appointment of the Trustee; or (c) is unliquidated.

**75.**    **Future Work**    That portion of Bonded Work (which may be part of a larger work project):  (a) that relates solely to a particular Plan Project; and (b) that is not performed or otherwise provided to the Plan Project until after the Effective Date.

**76.**    **Future Work Bond**    A Project Bond that secures the payment, completion or performance of Future Work.

**77.**    **Future Work Obligation Collateral**    The collateralization or credit enhancement for the reimbursement obligations to Settling Bond Issuers of each applicable Lehman Nominee, as more fully described in Plan Section 8.8.2.

**78.**    **General Administrative Claim Bar Date**    The last date fixed by the Plan for the filing of Proofs of Claim or requests for payment of Administrative Claims other than for Taxes. Under the Plan, the General Administrative Claim Bar Date shall be the first Business Day following the sixtieth (60th) day after the Confirmation Date.

**79.**    **General Unsecured Claim**    A Claim, , without limitation, a Bond-Backed Claim, Bond Issuer Claim or Claim arising under Bankruptcy Code § 502(h), against a VD Plan Debtor that is not any of the following:

(a) an Administrative Claim;

(b) a Priority Tax Claim;

(c) a Secured Claim;

(d) a Priority Claim;

(e) a Reliance Claim; or

(f) a Settling Bond Issuer-Related Future Work Claim.

**80.** **Group I Debtor**   Any of the following chapter 11 debtors and debtors-in-possession: Acton Estates; Palmdale Hills; SCC Communities; SunCal I; SunCal Bickford; SunCal Summit Valley; or Tesoro.

**81.** **Group II Debtor**   Any of the following chapter 11 debtors and debtors-in-possession:  SunCal Beaumont; SunCal Johannson; Seven Brothers; or Kirby Estates.

**82.** **Holder**   The beneficial owner of any Claim or Interest, including the Lehman VD Lenders as to the Lehman Loans.

**83.** **Impaired**   Not Unimpaired.

**84.** **Insider**   (1) A Person other than a Lehman Related Party that is an "insider" as to any VD Plan Debtor as defined in Bankruptcy Code section 101, (2) an Affiliate of such a Person or (3) without limiting the foregoing, as to all VD Plan Debtors, *inter alia*, each other VD Plan Debtor, SunCal Management, LLC, Acquisitions, Elieff, Voss, Cook & Thel LLP, Greenfield Communications, and SunCal Master Venture Member, LLC.

**85.** **Interest**   Any equity security or interest in any VD Plan Debtor within the meaning of section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the VD Plan Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, or any other equity security or interest.

**86.** **Interim Capped Distribution**   At the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall calculate the following described Distributions payable to Holders of Claims in the following described Classes, assuming for such calculation that all Disputed Claims will become Allowed Claims and, to the extent still possible, that each Bump Up Threshold will be exceeded; and, within forty-five days following the end of each calendar quarter following the Effective Date, the Liquidating Trustee shall make such additional Distributions to holders of Allowed Claims in the applicable Class as such calculation entitles each such Holder. The first such calculation need not be made sooner than forty-five (45) days following the Effective

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Date and the first additional Distributions, if any, with respect to such calculations shall not be payable sooner than ninety (90) days following the Effective Date.  Such calculations only shall be made with respect to: (a) all Distributions due for Holders of Allowed Claims in Class 8 and (b) Distribution due with respect to the Lehman Distribution Enhancement for Holders of Allowed Claims in Class 6 or Class 7.  Such calculations only shall be made with respect to Claims against an applicable VD Plan Debtor so long as the Liquidating Trustee believes, in the Liquidating Trustee's reasonable discretion, that additional amounts may become available: (i) for Distribution of any amounts payable under the Plan for Holders of Class 8 Claims against the applicable VD Plan Debtor; or (ii) for Distribution of the Lehman Distribution Enhancement for Holders of Class 6 or Class 7 Claims against the applicable VD Plan Debtor.

**87.**    **Interim Loan Agreement**    That certain Loan Agreement, dated as of October 31,2007, by and between SCC LLC, as borrower, and Lehman ALI, as agent and lender, pursuant to which the lender thereunder made a loan to the borrower in the maximum aggregate principal amount of approximately $20,000,000.  The outstanding balance of the loan under the Interim Loan Agreement was not less than $23,795,012.59 as of the applicable Petition Date.  The loan made pursuant to and/or evidenced by the Interim Loan Agreement is supported by a Subsidiary Guaranty made by SCC Communities, Tesoro and Del Rio and the obligations of the guarantors thereunder are secured by (a) a first priority deed of trust on the Joshua Ridge Project; (b) a first priority deed of trust on the Tesoro Project; and (c) an assignment of the Del Rio CFD Bond Proceeds.

**88.**    **Johannson Ranch Project**    The Project owned by SunCal Johannson, located in the City of Modesto, California, as more particularly described in **Exhibit "B"** to the Plan.

**89.**    **Joint VD Disclosure Statement**    The *Disclosure Statement With Respect to* ~~Second~~*Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders*.

**90.**    **Joint VD Plan**    The Plan.

**91.**    **Joshua Ridge Project**    The Project owned by SCC Communities, located in the City of Victorville, California, as more particularly described in **Exhibit "B"** to the Plan.

**92.**    **Kirby Estates**  Kirby Estates, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**93.**    **LBHI**  Lehman Brothers Holdings Inc., a Delaware corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases.

**94.**    **Lehman Administrative Loans**  (a) The post-petition financing provided by Lehman ALI to Palmdale Hills, SunCal Bickford, and Acton Estates, under which first priority priming Liens were granted to Lehman ALI on all borrower VD Plan Debtors' assets, and as to which financing, super-priority administrative status was afforded and the automatic stay was modified to the extent necessary to implement the financing; (b) any post-petition financing provided by any Lehman Related Party after September 23, 2009 to any of the VD Plan Debtors or their Estates pursuant to an order of the Bankruptcy Court; and (c) all interest, fees and other charges thereupon.  The aggregate amount of such loans to all of the borrower VD Plan Debtors was not less than approximately $75,000 as of March 28, 2011.

**95.**    **Lehman ALI**  Lehman ALI, Inc., a Delaware corporation.

**96.**    **Lehman Claim Liens**  The Liens that, as of the moment prior to the Effective Date, secure any, all or some of the Claims of any, all or some of the Lehman VD Lenders.

**97.**    **Lehman Commercial**  Lehman Commercial Paper Inc., a New York corporation, which is a debtor and debtor in possession in the New York Bankruptcy Cases.

**98.**    **Lehman Creditor**  A Lehman VD Lender, Northlake Holdings or OVC Holdings.

**99.**    **Lehman Creditor Deficiency Claim**  With respect to each VD Plan Debtor, the Claim of a Lehman VD Lender arising from the deficiency owed to such Lehman VD Lender under the applicable Lehman Loan after the conveyance to a Lehman VD Lender or a Lehman Nominee under the Plan of a Plan Project of a VD Plan Debtor that either is the direct collateral of the Lehman VD Lender or that is owned by an entity the interests in which are collateral of the Lehman VD Lender.  (*See* Plan Article V and Plan Section 8.7.1).

**100.**    **Lehman Creditor Distribution Funding**  The agreement under this Plan of the Lehman VD Lenders:  (a) to fund, through permitting use of Cash Collateral or through new transfers of Cash or other arrangements, the Distributions that Plan Articles IV. and VI. mandate for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the following to the extent not paid from other designated sources: (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third alternative treatment set forth in Section 6.4.3 hereof is selected), (vii) the Lehman Guaranteed Minimum Distribution, (viii) the Lehman Distribution Enhancement for Holders of Allowed General Unsecured Claims in Class 7 and Allowed Reliance Claims in Class 6, and (ix) Allowed General Unsecured Claims in Class 8; and (b) to arrange, as provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of Future Work that is the subject of an Allowed Bond-Backed Future Work Claim and to reimburse the agreed amount to the applicable Settling Bond Issuer for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising under a Future Work Bond, as provided in the applicable Settling Bond Issuer Agreements.

**101.    Lehman Distribution Enhancement**   The enhanced recoveries available under this Plan to be arranged by the Lehman VD Lenders, increasing recoveries to an amount that is (a) five percent (5%) of each Allowed General Unsecured Claim against a Group I Debtor and (b) forty or fifty percent (40% or 50%), as applicable, of each Allowed Reliance Claim against a Group I Debtor, provided, in each case, that the Holder of such Claim executes and delivers to the Lehman Creditors the Creditor's Assignment / Release for Lehman.

**102.    Lehman Guaranteed Minimum Distribution**   The guaranteed, minimum recoveries provided under this Plan to be funded, unconditionally, by the Lehman VD Lenders of one percent (1%) of each Allowed General Unsecured Claim in Class 7 and one percent (1%) of each Allowed Reliance Claim in Class 6.

**103.    Lehman Loan**   Each loan (or series of loans) made pursuant to and/or evidenced by the following agreements: (a) SunCal Communities I Loan Agreement; (b) Bickford Second Lien Loan Agreement; (c) Ritter Ranch Loan Agreement; and (d) Interim Loan Agreement.

**104.    Lehman Nominee**   The Person or any Person designated by the Lehman VD Lenders, or any of them, to take title to a Plan Project and/or any other Asset of a VD Plan Debtor.

**105.**    **Lehman-Owned Settling Bond Issuer-Related Claim**    A Settling Bond Issuer –
Related Claim after assignment to a Lehman Related Party.

**106.**    **Lehman Plan Funding**    The agreement under this Plan of the Lehman VD Lenders
to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution
Funding.

**107.**    **Lehman Post-Confirmation Expense Funding**    The agreement under this Plan of
the Lehman VD Lenders to pay an amount (which amount shall not exceed $500,000 nor shall it be
payable for expenses to be incurred or payable or for services to be rendered from or after two (2)
years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash
transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender,
each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for
such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other
Assets.

**108.**    **Lehman Proponents**    The Lehman VD Lenders, with reference to their status as
Proponents.

**109.**    **Lehman Related Party**    A Lehman Creditor or Lehman Nominee, or an Affiliate of
any of them.

**110.**    **Lehman Released Claims**    Any and all causes of action, actions, rights of action,
suits, judgments, liens, indebtedness, damages, losses, claims, liabilities, obligations, attorneys' fees,
costs, expenses and demands of every kind and character, whether known or unknown, suspected or
unsuspected, disclosed or undisclosed, asserted or unasserted, fixed or contingent, foreseen or
unforeseen, and whether based on contract, tort, statute or other legal or equitable theory of
recovery, including, without limitation, any Litigation Claims, whether for damages, subordination
or other remedies, and including any and all objections or defenses to all Claims, Liens, rights, or
causes of action of all Lehman Related Parties, but (a) not including an obligation of a Lehman VD
Lender expressly set forth as arising under the Plan and (b) as to a Creditor, not including claims of
the Creditor unrelated in any way to its Claims, these Cases, the VD Plan Debtors or the Plan
Projects (*e.g.*, such unrelated claims excluded from this definition may include, by example, a claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to the extent asserted against a TD Plan Debtor for goods or services provided to that TD Plan Debtor or for money lent to that TD Plan Debtor). Without limiting the generality of the foregoing, the Lehman Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the Lehman Creditors and the other Lehman Released Parties, or any of them, including, without limitation, the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any Lehman Creditor or other Lehman Released Party or any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

**111.** **Lehman Released Parties** All of the following Persons: (a) the Lehman Creditors, (b) each of the defendants to any complaint, pending or dismissed, in the ES Action, (c) each, every and any owner, including future owners, of each of the Plan Projects, including the Lehman Nominees, which owner is, was or will be a grantee, transferee, successor or assign of the applicable VD Plan Debtor that owns or owned such Plan Project, (d) LBHI, Property Asset Management, Inc., and any other direct or indirect subsidiary thereof including, without limitation, any entity that is or was a member or partner of any upper-tier joint venture, partnership or limited liability company that is or was a direct or indirect parent of any VD Plan Debtor, (e) Alvarez & Marsal, LLC and (f) the respective Affiliates of all of the foregoing Persons and each of their respective officers, directors, shareholders, members, managers, employees, agents, independent contractors, administrators, consultants, asset managers, attorneys, accountants, trustees, insurers, representatives, successors and assigns.

**112.** **Lehman Secured Claim** A Secured Claim held by a Lehman VD Lender.

**113.** **Lehman VD Lender**  Lehman ALI or Lehman Commercial, including each in its capacity as agent, or agent and lender, with respect to the applicable Lehman Loans. Any funding obligation or similar commitment of the "Lehman VD Lenders" under the Plan is a singular, aggregate obligation as to the amount or obligation specified, and thus will be satisfied by a single satisfaction thereof.

**114.** **Liquidating Trustee**  The Person selected by the Proponents to serve as the Liquidating Trustee for the VD Plan Debtors, with the powers and duties set forth in the Plan, whose identity shall be disclosed by the Proponents prior to the Confirmation Hearing, and/or any successor trustee appointed by the Bankruptcy Court in the event that the initial Liquidating Trustee resigns or is removed by the Bankruptcy Court.

**115.** **Litigation Claim**  Any interest of the Estates, the VD Plan Debtors, the Voluntary Debtors' Committee or the Liquidating Trustee, in any claim, right, cause of action, remedy (including under Bankruptcy Code § 550) or objection or defense (including to a Claim or Lien) that has been or may be commenced or asserted by an Estate, a VD Plan Debtor, the Voluntary Debtors' Committee or the Liquidating Trustee, as the case may be, including, but not limited to:  (i) an Avoidance Action; (ii) a claim, right or cause of action for turnover of property to any VD Plan Debtor's Estate and/or the Liquidating Trustee; (iii) a claim, right or cause of action for the recovery of property by, or payment of money to, a VD Plan Debtor's Estate or the Liquidating Trustee; (iv) the right of the Liquidating Trustee to damages, recoupment, or setoff; or (v) an objection to a Claim.

**116.** **Litigation Recoveries**  Any Cash or other property received by the VD Plan Debtors, the Liquidating Trustee, or the Voluntary Debtors' Committee, as the case may be, from all or any portion of a Remaining Litigation Claim(s), including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise.

**117.** **Mechanic's Lien Claim**  Mechanic's lien claims against a VD Plan Debtor's Project arising pursuant to California Civil Code § 3110, et seq. that were either allegedly perfected prepetition or otherwise and allegedly satisfy the requirements of Bankruptcy Code section 546(b).

**118.**    **Net Cash Litigation Recoveries**   Any Litigation Recoveries consisting of Cash and any Cash proceeds of Litigation Recoveries less associated Post-Confirmation Expenses incurred in connection therewith.

**119.**    **Net Cash Proceeds**   Net Proceeds consisting of Cash.

**120.**    **Net Proceeds**   Gross proceeds of sale, liquidation or refinancing, less costs, expenses, fees, commissions, taxes (including federal, state and local income tax calculated at an assumed rate of forty-five percent (45%)) and other charges incurred directly in the sale, liquidation or refinancing of the underlying Asset, including payment of Encumbrances senior to those of the most senior Encumbrance of a Lehman Related Party.

**121.**    **New Value**   Money or money's worth in, goods, services, or new credit voluntarily transferred or extended to the applicable VD Plan Debtor, but not an obligation substituted forif transferred or extended on account of an existing obligation or satisfaction of an antecedent debt owed by the creditor. .

**122.**    **New York Bankruptcy Cases**   The chapter 11 bankruptcy cases of, *inter alia,* Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., pending before the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 08‑13555 (JMP).

**123.**    **New York Bankruptcy Court**   The United States Bankruptcy Court for the Southern District of New York having jurisdiction over the New York Bankruptcy Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of Title 28 of the United States Code, the United States District Court for the Southern District of New York; or, in the event such courts cease to exercise jurisdiction over the New York Bankruptcy Cases, such court or unit thereof that exercises jurisdiction over the New York Bankruptcy Cases in lieu thereof.

**124.**    **Non-Future Work**   Bonded Work that is not otherwise Future Work.

**125.**    **Northlake Holdings**   Northlake Holdings LLC, a Delaware limited liability company.

**126.**    **Other Secured Claim**    A Secured Claim that is not a Secured Real Property Tax Claim, Lehman Secured Claim or Sr. Secured Mechanic's Lien Claim.  Other Secured Claims include, without limitation, any Seller Financing Secured Claims.

**127.**    **OVC Holdings**    OVC Holdings LLC, a Delaware limited liability company.

**128.**    **Palmdale Hills**    Palmdale Hills Property, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Ritter Ranch Project.

**129.**    **Payment Bond**    A Project Bond (or portion thereof) under which the Bond Issuer guaranteed payment to and for the benefit of contractors and other persons who provide Bonded Work to the applicable Plan Project for which the Payment Bond was issued.

**130.**    **Performance Bond**    A Project Bond (or portion thereof) under which the Bond Issuer guaranteed the performance and completion of Bonded Work  and the payment of any costs and expenses incurred by the beneficiary in connection therewith.  Typically, a Performance Bond would guarantee to the applicable beneficiary (typically a municipality or other governmental entity) that the obligations of a VD Plan Debtor under a specified contract (such as a subdivision improvement agreement), or certain of such obligations, would be performed and satisfied by the subject VD Plan Debtor.

**131.**    **Permitted Liens**    (a) Statutory liens for Secured Real Property Tax Claims to the extent securing amounts required to be paid under the Plan; (b) easements, covenants, conditions, restrictions and other matters of record affecting real property, leasehold estates or personalty or any interest therein (excluding any rights of appeal from the Sale Order) more particularly described on **Exhibit "C"** attached hereto, (c) the Lehman Claim Liens, (d) the effect of any building and zoning regulations, now existing or hereafter in effect with respect to the relevant Plan Project that are not violated by the current use of the Plan Project, (e) oil, mineral and/or water rights, and claims of title thereto, shown by the public records, (f) discrepancies, conflicts in boundary lines, shortages in area or encroachments which an inspection or survey of the subject Plan Project would disclose and (g) other Liens to which the transferee of the property, in connection with such transfer, agrees to take subject, including any Lehman Claim Liens.

**132.**    **Person**    An individual, unincorporated association or organization, joint venture, partnership, limited liability company, joint-stock company, corporation, trust, business trust, government or associated political subdivision, governmental agency, governmental unit, governmental authority, estate, committee or other entity of whatever nature.

**133.**    **Petition Dates**    The following are dates that each of the Voluntary Debtors filed their voluntary chapter 11 petitions:

| Palmdale Hills | November 6, 2008 |
|---|---|
| SunCal Beaumont | November 6, 2008 |
| SunCal Johannson | November 7, 2008 |
| SunCal Summit Valley | November 7, 2008 |
| SunCal Bickford | November 7, 2008 |
| Acton Estates | November 7, 2008 |
| Seven Brothers | November 7, 2008 |
| Kirby Estates | November 7, 2008 |
| SunCal I | November 7, 2008 |
| SCC Communities | November 19, 2008 |
| Tesoro | November 19, 2008 |

**134.**    **PH CFD Bonds**    Those certain bonds of Palmdale Hills, referred to as "CFD" bonds.

**135.**    **Plan**    This ~~Second~~*Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders*, together with the Exhibits hereto, as the same may be amended, modified, supplemented or restated from time to time.

**136.**    **Plan Projects**    All of the Projects of the VD Plan Debtors, as more particularly described in **Exhibit "B"** to the Plan.

**137.**    **Plan Release for Lehman**    In exchange for, *inter alia*, the Lehman Plan Funding, as more fully set forth in Section 8.9.2 of the Plan, the VD Plan Debtors shall release all Lehman Released Claims against all Lehman Released Parties effective as of the Effective Date.

**138.**    **Plan Reserve**    A reserve fund established by the Liquidating Trustee to hold all Cash required or permitted to be deposited therein on the Effective Date pursuant to the terms of the Plan and which funds shall be subject to withdrawal pursuant to the terms of the Plan, including (i) any unencumbered Cash of the VD Plan Debtors and (ii) the amounts to be funded pursuant to the Lehman Plan Funding, all upon the terms and conditions set forth in Article VIII of the Plan.  Such funds shall be held in account(s) to be established at an FDIC insured bank to be selected by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Liquidating Trustee with the consent of the Lehman VD Lenders, which consent shall not be unreasonably withheld.

**139.** **Plan Supplement**  A supplemental exhibit to this Plan, to be filed by the Lehman Proponents by **October 18, 2011**, containing one or more documents that a Lehman VD Lender or Lehman Nominee believes in good faith is necessary or appropriate to consummate one or more of the transactions contemplated by this Plan.

**140.** **Post-Confirmation Account**  An account with a bank, financial institution or similar depository in which the Liquidating Trustee holds Cash or other liquid assets or securities for any VD Plan Debtor, including the Plan Reserve.

**141.** **Post-Confirmation Expenses**  The fees and expenses incurred by the Liquidating Trustee following the Effective Date for the purpose of paying or satisfying:

(a)    Compensation for the Liquidating Trustee for the period following the Effective Date;

(b)    Expenses for fees of the professionals retained by the Liquidating Trustee following the Effective Date;

(c)    Quarterly U.S. Trustee fees for this government agency with responsibilities in respect to bankruptcy cases following the Effective Date; and

(d)    Additional obligations of the Liquidating Trustee (in such capacity) that arise on or after the Effective Date consistent with the Plan.

**142.** **Primary Claims Bar Date**  For Claims, other than Administrative Claims, the last date for Filing Proofs of Claim as was established by order or orders of the Bankruptcy Court, which date was March 31, 2009 for certain Claims; provided that: (a) for Claims arising from the rejection of executory contracts or unexpired leases, the date(s) as set forth in Plan Section 11.6; (b) for Claims resulting from the successful prosecution or settlement of Avoidance Actions, the later of any otherwise applicable date under this paragraph and forty-five (45) days following entry of the Final Order determining such Avoidance Action; and (c) for Claims of governmental units, the later of any otherwise applicable date under this paragraph and 180 days after the date of the applicable order for relief under Bankruptcy Code §§ 301 or 303, as applicable.

**143.** **Priority Claim**    Any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**144.** **Priority Tax Claim**    Any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**145.** **Proof of Claim**    A proof of claim as referenced in Bankruptcy Code section 501(a).

**146.** **Proof of Interest**    A proof of interest as referenced in Bankruptcy Code section 501(a).

**147.** **Professional**    A Person (a) employed by the VD Plan Debtors or the Voluntary Debtors' Committee pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 3291, 330 and 331 of the Bankruptcy Code, (b) employed to perform professional services for the Liquidating Trustee after the Effective Date or (c) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code.

**148.** **Professional Fees**    (a) All Allowed Claims for compensation and for reimbursement of expenses under sections 328, 330 and/or 503(b) of the Bankruptcy Code and (b) reasonable amounts for compensation and reimbursement of expenses for Professionals employed by the Liquidating Trustee.

**149.** **Project Bond**    A payment and performance bond, labor and materials bond, payment bond or any other type of bond issued by a Bond Issuer for the benefit of a particular VD Plan Debtor and with respect to, for the benefit of and in connection with the development of the Plan Project owned by such VD Plan Debtor and with respect to which such Bond Issuer has a Claim. Project Bonds (or portions thereof) are further characterized as either Payment Bonds or Performance Bonds and a single Project Bond can be, in part, a Payment Bond and, in part, a Performance Bond.

**150.** **Project Value**    The following amount under the column titled, "Project Value," for each of the following Projects (or portions thereof) of the following VD Plan Debtors:

| PROJECT | NAME OF DEBTOR | PROJECT VALUE |
|---|---|---|
| | **Group I Debtors:** | |
| Acton Project | Acton Estates | $6,800,000 |
| Ritter Ranch Project | Palmdale Hills | $42,900,000 |
| Joshua Ridge Project | SCC Communities | $1,200,000 |
| Bickford Ranch Project | SunCal Bickford | $29,500,000 |
| Summit Valley Project (portion) | SunCal Summit Valley | $2,200,000 |
| Tesoro Project | Tesoro | $1,850,000 |
| | **Group II Debtors:** | |
| Summit Valley Project (portion) | Kirby Estates | $2,800,000 |
| Summit Valley Project (portion) | Seven Brothers | $200,000 |
| Beaumont Heights Project | SunCal Beaumont | $1,800,000 |
| Johannson Ranch Project | SunCal Johannson | $4,000,000 |

**151.**    **Projected Distribution Bump Up**    A ten percent (10%) increase in the Lehman Distribution Enhancement for each Holder of an Allowed Reliance Claim in Class 6 against a Group I Debtor applicable if the Classes 6/7 Distribution Amount as to the applicable Group I Debtor does not exceed the Bump Up Threshold for that Group I Debtor (which Bump Up Thresholds, in the aggregate, total $2.5 million), whereby the Liquidating Trustee, in addition to the Guaranteed Minimum Distribution shall pay such Holder an additional forty-nine percent (49%) (instead of 39%) of the Allowed Amount of the Holder's Allowed Class 6 Reliance Claim against the applicable Group I Debtor.

**152.**    **Projects**    The Debtors' real estate development projects, together with all rights, remedies, privileges and easements appurtenant thereto and all other real and personal, tangible and intangible, property related thereto.

**153.**    **Proponents**    The Lehman VD Lenders, in their capacity as proponents of the Plan.

**154.**    **Pro Rata**  (a)  With respect to any Distribution in respect of any Allowed Claim, proportionately, so that the ratio of (i)(1) the amount of property distributed on account of such Allowed Claim to (2) the amount of such Allowed Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class or Classes of the applicable Estate sharing in such Distribution to (2) the amount of all Allowed Claims in such Class or Classes of the applicable Estate; and (b) in calculating allocations of responsibility for obligations among VD Plan Debtors, Pro Rata shall be determined in reference to the Liquidating Trustee's reasonable estimate of the gross value of each applicable Estate's Assets as of the Confirmation Date.

**155.**    **Reliance Claim**  A non-priority, unsecured Claim, including a Bond Claim, against a VD Plan Debtor, which Claim has the following attributes:

(i)    The Claim is for ~~New Value (*i.e.*,~~ money ~~or money's worth in,~~ goods, services, or new credit voluntarily transferred or extended to the applicable VD Plan Debtor ~~but not an obligation substituted for an existing obligation or satisfaction of an antecedent debt owed by the creditor) transferred or extended after the Reliance Date and prior to~~ between August 1, 2007 and the applicable Petition Date(s), but not if transferred or extended on account of an existing obligation;

(ii)    The Claim was timely of record as follows: either (1) filed by the Primary Claims Bar Date (which was March 31, 2009 for most non-priority, unsecured claims) or (2) filed late, but by March 25, 2011 in accordance with a Final Order or (3) listed on the filed Schedules by March 25, 2011 as a Scheduled Claim; and

(iii)    The Claim is <u>not</u> ~~any of the following:~~

~~(a)    an Administrative Claim;~~

~~(b)    a Priority Tax Claim;~~

~~(c)    a Secured Claim;~~

~~(d)    a Priority Claim;~~

~~(e)    a Settling Bond Issuer-Related Future Work Claim;(f)    a Claim of~~ either: (1) a Claim at any time held by an Insider; ~~or (g~~2)   a Claim of a Lehman Creditor (other

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

than a Lehman-Owned Settling Bond Issuer-Related Claim); or (3) a Settling Bond Issuer-Related Future Work Claim.

A Creditor alleging it holds a Reliance Claim must timely and properly claim such status on its Ballot. For the convenience and benefit of Creditors, the Lehman VD Lenders have attached to the Plan **Exhibit "D"** setting forth a non-exhaustive list of certain non-duplicative Claims or portions of Claims which, as indicated thereupon, the Lehman VD Lenders would not challenge as being Reliance Claims against the indicated Group I Debtor in the amount of the "Reliance Claim Amount" listed thereupon IF the Claim is Allowed in the amount of the "Creditors' Claim Amount" listed thereupon. *See* the Plan Article, entitled "Classification of Claims and Interests," and Plan **Exhibit "D."**

**156.** **Reliance Claimant**   The Holder of an Allowed Reliance Claim.

**157.** **Reliance Date**   August 1, 2007, the earliest date on which the Lehman VD Lenders (or any of their Affiliates) are alleged to have engaged in inequitable conduct as described in the ES Action.

**158.** **Remaining Litigation Claim**   A Litigation Claim to the extent not expressly waived, relinquished, released, compromised or settled under the Plan or prior to the Plan's Effective Date through entry of a Final Order.

**159.** **Remaining Other Assets**   All of the then remaining Assets of the VD Plan Debtors' Estates excluding the Plan Projects, as of the point in time referenced in any particular utilization of this term in the Plan.

**160.** **Residual Cash**   As to any particular VD Plan Debtor's Estate, Net Cash Proceeds derived from the liquidation by the Liquidating Trustee of any Remaining Other Assets of such Estate, including any applicable Net Cash Litigation Recoveries in which such Estate has an interest, to the extent not subject to a Secured Claim and payable to or for a Holder thereof and remaining after payment or reserve for the Post-Confirmation Expenses, including post-Confirmation Date intercompany payables and reimbursements for Lehman Post-Confirmation Expense Funding, all as more fully set forth in Section 8.3 of the Plan, and Cash other than Cash Collateral if not utilized for any other expense under the Plan.

**161.** **Ritter Ranch Loan Agreement**   That certain Credit Agreement, dated as of February 8, 2007, by and among Palmdale Hills, as borrower, and Lehman Commercial, as administrative agent and lender, pursuant to which the lenders thereunder made loans to the borrower in the maximum aggregate principal amount of approximately $264,000,000.  The loans made pursuant to and/or evidenced by the Ritter Ranch Loan Agreement are secured by, among other things, a first priority deed of trust on the Ritter Ranch Project.  The outstanding balance of the loans under the Ritter Ranch Loan Agreement was not less than $287,252,096.31 as of the applicable Petition Date.

**162.** **Ritter Ranch Project**   The Project owned by Palmdale Hills, located in the City of Palmdale, California, as more particularly described in **Exhibit "B"** to the Plan.

**163.** **Sale Order**   The Final Confirmation Order or other Final Order that effectuates the conveyance of the applicable Plan Project to the applicable Lehman Nominee.

**164.** **SCC Communities**   SCC Communities, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Joshua Ridge Project.

**165.** **SCC LLC**   SCC Acquistions, LLC, a Delaware limited liability company.

**166.** **SCC/Palmdale**   SCC/Palmdale, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**167.** **Scheduled Claim**   A Claim listed in a VD Plan Debtor's Schedules, if listed as neither disputed, contingent or unliquidated, in the amount for such Claim, with the status as secured or unsecured for such Claim and with the statutory priority for such Claim as listed in the VD Plan Debtors' Schedules.

**168.** **Schedules**   The schedules of assets and liabilities and list of equity security holders filed by the VD Plan Debtors, as required by section 521(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(3) and (b)(1), and Official Bankruptcy Form No. 6, as amended from time to time.

**169.** **Section 1124(2) Unimpairment**   Unimpairment that may include the cure or waiver of defaults, reinstatement of the maturity of a Claim that was not fully matured prior to the applicable Petition Date or, in a similar manner to the circumstance in *In re Entz-White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), payment in full on the Effective Date, without payment

of any penalty amounts or other amounts related to the default, of a Claim that was fully matured prior to the applicable Petition Date.

**170.    Secured Claim**   Any Claim, including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code section 506, to the extent that it is secured by a valid and unavoidable Lien on an Asset or Assets of one or more VD Plan Debtors.

**171.    Secured Real Property Tax Claims**   Secured Claims, other than Priority Tax Claims, held by various government entities for real property tax assessments secured by Liens on the underlying real properties owned by the VD Plan Debtors but that are non-recourse to the VD Plan Debtors.

**172.    Seller Financing**   Obligations, incurred to a seller of real property in connection with the sale thereof, secured by a first lien deed of trust on such real property.

**173.    Seller Financing Encumbered Parcels**   Real property with respect to which there is a Seller Financing Secured Claim.

**174.    Seller Financing Secured Claim**   Secured Claims for and on account of Seller Financing.

**175.    Senior Claim**   Any or all of the following: (i) Administrative Claims, (ii) Priority Claims, (iii) Priority Tax Claims, and (iv) Secured Claims other than Seller Financing Secured Claims.

**176.    Settling Bond Issuer**   A Bond Issuer that elects to enter into a Settling Bond Issuer Agreement.

**177.    Settling Bond Issuer Agreement**   That certain agreement(s) summarized in Plan Section 8.8.

**178.    Settling Bond Issuer-Backed Claim**   Any Bond-Backed Claim held by a Bond-Backed Claimant or its assignee that is secured by a Project Bond issued by a Settling Bond Issuer, excluding such a Claim when held by the applicable Settling Bond Issuer or an Affiliate thereof. Settling Bond Issuer-Backed Claims are further characterized as Settling Bond Issuer-Backed Non-Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

**179.** **Settling Bond Issuer-Backed Future Work Claim** A Settling Bond Issuer-Backed Claim secured by a Future Work Bond.

**180.** **Settling Bond Issuer-Backed Non-Future Work Claim** A Settling Bond Issuer-Backed Claim secured by a Project Bond other than a Future Work Bond.

**181.** **Settling Bond Issuer-Incurred Future Work Obligations** Any and all payments made by a Settling Bond Issuer under or in respect of a Future Work Bond issued by such Settling Bond Issuer and/or any liabilities incurred and paid by such Settling Bond Issuer in satisfaction of its obligations under a Future Work Bond issued by such Settling Bond Issuer.

**182.** **Settling Bond Issuer-Owned Claim** A Bond Issuer Claim held by a Settling Bond Issuer or its Affiliate immediately prior to the Effective Date including, without limitation, any Bond-Backed Claims acquired by a Settling Bond Issuer in connection with the payment, performance or settlement of its obligations under any Project Bonds. Settling Bond Issuer-Owned Claims are further characterized as Settling Bond Issuer-Owned Non-Future Work Claims or Settling Bond Issuer-Owned Future Work Claims.

**183.** **Settling Bond Issuer-Owned Future Work Claim.** A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Future Work Bond.

**184.** **Settling Bond Issuer-Owned Non-Future Work Claim** A Settling Bond Issuer-Owned Claim secured by or arising from the issuance of a Project Bond other than a Future Work Bond.

**185.** **Settling Bond Issuer-Related Claim** A Settling Bond Issuer-Owned Claim or a Settling Bond Issuer-Backed Claim.

**186.** **Settling Bond Issuer-Related Future Work Claim** A Settling Bond Issuer-Related Claim arising from or covered by a Future Work Bond. Settling Bond Issuer-Related Future Work Claims are further characterized as Settling Bond Issuer-Owned Future Work Claims and Settling Bond Issuer-Backed Future Work Claims.

**187.** **Settling Bond Issuer Release for Lehman Released Parties** That certain assignment / release to be issued under the Settling Bond Issuer Agreement in favor of the Lehman Released Parties as described in Plan Section **Error! Reference source not found.**.

**188.** **Seven Brothers**  Seven Brothers, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of that portion of the Summit Valley Project not owned by Kirby Estates or SunCal Summit Valley.

**189.** **Simple Unimpairment**  Unimpairment that is not Section 1124(2) Unimpairment or Unimpairment With Surrender or Abandonment.

**190.** **SJD Development**  SJD Development Corp., a California corporation, a Voluntary Debtor in these Cases.

**191.** **SJD Partners**  SJD Partners, Ltd., a California limited partnership, a Voluntary Debtor in these Cases.

**192.** **Sr. Secured Mechanic's Lien Claim**  Mechanic's Lien Claims that are Secured Claims and, under applicable non-bankruptcy law or by agreement, are senior in priority to the Allowed Secured Claim hereunder of the applicable Lehman VD Lender as to the applicable Plan Project.

**193.** **Summit Valley Project**  The Project owned in part by SunCal Summit Valley, Seven Brothers and Kirby Estates, located in the City of Hesperia, California, as more particularly described in **Exhibit "B"** to the Plan.

**194.** **SunCal**  The SunCal Companies, a trade name for Acquisitions and its Affiliates.

**195.** **SunCal I**  SunCal Communities I, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the equity membership interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald.

**196.** **SunCal III**  SunCal Communities III, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases.

**197.** **SunCal Beaumont**  SunCal Beaumont Heights, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Beaumont Heights Project.

**198.** **SunCal Bickford**  SunCal Bickford Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Bickford Ranch Project.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**199.**   **SunCal Century City**   SunCal Century City, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**200.**   **SunCal Communities I Loan Agreement**   That certain Credit Agreement, dated as of November 17, 2005, by and among (i) SunCal I and SunCal III, as borrowers, Lehman Brothers, Inc., as sole advisor, sole lead arranger and sole bookrunner, and Lehman Commercial, as syndication and administrative agent and sole lender, pursuant to which the lenders thereunder made a loan to the borrowers in the maximum aggregate principal amount of approximately $395,313,713.37 (as amended).   The loan made pursuant to and/or evidenced by the SunCal Communities I Loan Agreement is secured directly or indirectly by (a) first priority deeds of trust on the Bickford Ranch Project, the Acton Project, and the Emerald Meadows Project, (b) pledges of SunCal I's Allowed Interest in Acton Estates, SunCal Summit Valley, SunCal Beaumont, SunCal Johannson, SunCal Emerald, and SunCal Bickford; and (c) pledges of SunCal Summit Valley's Allowed Interest in Seven Brothers and Kirby Estates.   The outstanding balance of the loan under the SunCal Communities I Loan Agreement was $343,221,391.06 as of the applicable Petition Date.

**201.**   **SunCal Emerald**   SunCal Emerald Meadows, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Emerald Meadows Project.

**202.**   **SunCal Heartland**   SunCal Heartland, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**203.**   **SunCal Johannson**   SunCal Johannson Ranch, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Johansson Ranch Project.

**204.**   **SunCal Marblehead**   SunCal Marblehead, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**205.**   **SunCal Northlake**   LB/L-SunCal Northlake, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**206.**   **SunCal Oak Knoll**   SunCal Oak Knoll, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**207.**   **SunCal Oak Valley**   LB/L-SunCal Oak Valley, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**208.**    **SunCal PSV**    SunCal PSV, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**209.**    **SunCal Summit Valley**    SunCal Summit Valley, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, the owner of that portion of the Summit Valley Project not owned by Kirby Estates or Seven Brothers, and the Holder of Allowed Interests in Kirby Estates and Seven Brothers.

**210.**    **SunCal Torrance**    SunCal Torrance Properties, LLC, a Delaware limited liability company, a Trustee Debtor in these Cases.

**211.**    **Supplemental Claims Bar Date**    For Claims (other than Administrative Claims) as to which the Holder, at least fifteen (15) days prior to the Primary Bar Date, neither had been served with notice of the applicable Primary Claims Bar Date nor actually knew the applicable Primary Claims Bar Date was a bar date, thirty (30) days following service of the Supplemental Claims Bar Date Notice (but only if the Supplemental Claims Bar Date is later than the Primary Claims Bar Date as to such Claim).

**212.**    **Supplemental Claims Bar Date Notice**    That certain notice of the Supplemental Claims Bar Date as a bar date for Filing Proofs of Claim to be served after approval of the hearing on approval of the Disclosure Statement.

**213.**    **Tax**    Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

**214.**    **TD Plan Debtor**    A Trustee Debtor other than SunCal Century City.

**215.**    **Tesoro**    Tesoro SF, LLC, a Delaware limited liability company, a Voluntary Debtor in these Cases, and the owner of the Tesoro Project.

**216.**    **Tesoro Project**    The Project owned by Tesoro located in the City of Santa Clarita, California, as more particularly described in **Exhibit "B"** to the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**217.** **Trustee**  Steven M. Speier, the duly appointed trustee of the Trustee Debtors or any successor trustee for the Trustee Debtors.

**218.** **Trustee Debtor**  Any of the following chapter 11 debtors for which the Trustee was appointed:  Delta Coves, SunCal Heartland, SunCal Marblehead, SunCal Northlake, SunCal Oak Valley, SunCal Century City, SunCal PSV, SunCal Torrance, or SunCal Oak Knoll.

**219.** **Unclaimed Property**  Cash held for Distribution if either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned to the Liquidating Trustee (*e.g.,* as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or other similar instrument used for the Distribution to the Holder of any Allowed Claim remains uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not have an address for a Holder of any Allowed Claim on the date such Distribution first could have been made under the Plan and for one hundred twenty (120) days thereafter.

**220.** **Unimpaired**  When used with reference to a Claim, subclass or Class, as more specifically set forth in various sections of Plan Article VI., the circumstance where such Claim, subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code § 1124, providing, with certain exceptions, that the Claim have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim.  In accordance with, by example, Bankruptcy Code §§ 365 or 1123(a)(5)(G), unless expressly specified otherwise, such treatment includes the waiver or curing of defaults and the reinstatement of maturity of such Claim, without payment of penalties or other default-related amounts.

**221.** **Unimpairment**  The treatment that makes a Claim Unimpaired.

**222.** **Unimpairment With Surrender or Abandonment**  Unimpairment that includes that collateral for a Secured Claim may be surrendered or abandoned to the Holder of such Claim.

**223.** **Unsecured Claim**  A Claim that is not a Secured Claim.

**224.** **Unsecured Deficiency Claim**  A Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Bankruptcy Code

sections 506(a) and 1111, is less than the Allowed Amount of such Creditor's Claim, after taking into account any election made pursuant to Bankruptcy Code section 1111(b).

**225.**    **Unsecured Deficiency Claim Bar Date**    The date that is the first Business Day that is at least thirty (30) days following the Effective Date, by which, regardless of any prior Filing by such Holder of one or more Proofs of Claim, a Holder of an Allowed Other Secured Claim or Allowed Sr. Secured Mechanic's Lien Claim that contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Other Secured Claim or allowed Sr. Secured Mechanic's Lien Claim must file (and serve upon the Liquidating Trustee and Lehman VD Lenders) an amended proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, *inter alia*, the amount of such Unsecured Deficiency Claim.

**226.**    **VD Plan Debtor**    Any of the following chapter 11 debtors and debtors-in-possession:  Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Johannson, SunCal Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC Communities, or Tesoro.

**227.**    **Voluntary Debtor**    Any of the following chapter 11 debtors and debtors-in-possession:  Palmdale Hills; SunCal I; SunCal III; SCC/Palmdale; Acton Estates; SunCal Beaumont; SunCal Johannson; SunCal Bickford; SunCal Emerald; SunCal Summit Valley; Seven Brothers; Kirby Estates; SJD Partners; SJD Development; SCC Communities; Del Rio; or Tesoro.

**228.**    **Voluntary Debtors' Committee**    The Official Committee of Unsecured Creditors of the Voluntary Debtors appointed in the Cases of the Voluntary Debtors pursuant to section 1102 of the Bankruptcy Code.

Document comparison by Workshare Professional on Monday, July 18, 2011 1:39:31 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_LA/225266/21 |
| Description | DOCS_LA-#225266-v21-Plan_-_VD_Lehman_(For_Ex_D_use_sep_Doc)_(Ex_A_&_C_to_be_filed_at_later_time) |
| Document 2 ID | PowerDocs://DOCS_LA/225266/24 |
| Description | DOCS_LA-#225266-v24-Plan_-_VD_Lehman_(For_Ex_D_use_sep_Doc)_(Ex_A_&_C_to_be_filed_at_later_time) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 276 |
| Deletions | 261 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 545 |