UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                          :

In re                                         :      Chapter 11 Case No.
                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)
                                          :

                    Debtors.            :      (Jointly Administered)
                                          :
-------------------------------------------------------------------x

**AMENDED ORDER PURSUANT TO SECTIONS 105(a) AND
363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 ESTABLISHING PROCEDURES TO (I) RESTRUCTURE,
(II) MAKE NEW DEBT OR EQUITY INVESTMENTS IN, AND/OR
(III) ENTER INTO SETTLEMENTS AND COMPROMISES
IN CONNECTION WITH EXISTING REAL ESTATE INVESTMENTS**

Upon the motion, dated June 1, 2011 (the "Motion")[1], of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), to amend the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt and/or Equity Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, dated November 23, 2009 [Docket No. 5912] (the "Original Order"), as modified in the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 9019(a) for the Establishment of Procedures to Dispose of Real Estate Assets and Modification of the Order Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity Investments in, and/or (III) Enter into Settlements and Compromises in Connection with Existing Real Estate Investments*, dated June 17, 2010 [Docket No. 9633] (the "Real Estate Asset Dispositions Order"), all as more fully described in the Motion; and the

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the Office of the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

        ORDERED that the Motion is granted; and it is further

        ORDERED that the Original Order, as amended by the Real Estate Asset Dispositions Order, is further amended and superseded in its entirety by this Amended Order; and it is further

        ORDERED that the Debtors shall be, and hereby are, authorized to enter into real

estate loan transactions, including (i) restructuring the terms of a Real Estate Investment[2] through various means, including, but not limited to: adjusting interest rates, adjusting the outstanding principal balance, adjusting amortization, changing payment schedules, changing events of default, releasing or obtaining collateral, granting releases of certain of the Debtors' rights as against borrowers (or their affiliates) or guarantors, entering into new intercreditor agreements, adjusting covenants, obtaining equity interests in borrowers, granting forbearances, granting guarantees and/or indemnities, voting on plans of reorganization of borrowers, and/or negotiating, amending, or modifying any of the terms and conditions of the underlying loan or equity agreement ("Restructurings"), (ii) making new discretionary debt or equity investments in connection with an existing Real Estate Investment ("New Investments"), (iii) expending funds in connection with an existing Real Estate Investment (whether directly, or as a result of a capital call made by a joint venture that is the owner and/or the borrower) for (a) ordinary course expenses required for the sound operation and management of a property, including, without limitation, real estate taxes and insurance premium payments, and (b) protective advances permitted by the relevant credit agreement:  (x) to cure a superior loan default in an amount up to and including $5 million, individually, or in the aggregate with respect to a particular property over the preceding six month period; provided, however, that the cure of a superior loan default in the aggregate amount of more than $5 million over the preceding six month period shall be treated as a New Investment under the procedures set forth below, (y) to advance real estate taxes and insurance premiums, and/or (z) for non-discretionary or emergency property related

---

[2] The term "Real Estate Investment" as used herein shall mean: (i) real property owned by the Debtors or in which the Debtors have a direct or indirect interest and, (ii) commercial mortgage loans, commercial mezzanine loans, residential mortgage loans, repurchase facilities and other loans and similar facilities either owned by the Debtors or in which the Debtors have a direct or indirect debt or equity investment or other interest, in each case directly or indirectly, in or secured by real property or interests therein.

3

purposes ("Permitted Expenditures"), and (iv) entering into settlements and compromises with borrowers, lenders, investors, business partners, joint ventures, brokers, and any other person with an interest in, or in the proceeds of, a Real Estate Investment of debt or equity interests and/or claims which include, without limitation, the forgiveness of debt and conveyance of direct or indirect interests in real property, including, without limitation, the release of collateral, borrowers, guarantors, and/or sponsors ("Settlements," and collectively with Restructurings, New Investments, and Permitted Expenditures, "Real Estate Loan Transactions"), in accordance with the following procedures:

    a.    The Debtors may, without further order of the Court or notice to or approval of any party, (i) enter into and consummate a Restructuring or Settlement in connection with an existing Real Estate Investment having an aggregate Estimated Recovery Value[3] of up to and including $10 million, and (ii) make a Permitted Expenditure in connection with any existing Real Estate Investment.

    b.    The Debtors may enter into and consummate Real Estate Loan Transactions that (i) involve (x) a Real Estate Investment having an aggregate Estimated Recovery Value of greater than $10 million but less than or equal to $25 million, and/or (y) the Debtors making a New Investment in an amount up to and including $5 million, and (ii) do not also fall within the parameters set forth below in clauses (c) or (d) of these procedures, without further order of the Court or approval of or notice to any other party; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transactions as soon as practicable but in no event later than promptly following the closing of such transactions. If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (b) and (c) or both clauses (b) and (d) of these procedures, the provisions of clause (c) or (d), respectively, shall govern.

    c.    If a Real Estate Loan Transaction (i) involves (w) a Real Estate Investment having an aggregate Estimated Recovery Value greater than $25 million, (x) the Debtors making a New Investment in an amount greater than $5 million but less than or equal to $25 million, (y) a Restructuring of the Debtors' debt or equity position in a Real Estate Investment or a Settlement resulting in a reduction in the aggregate value of the Real Estate Investment to a value that is

---

[3] "Estimated Recovery Value" as used herein shall mean the Debtors' calculation as of December 31, 2010 of the undiscounted net recovery of all cash flows associated with the Real Estate Investment as agreed to by the Creditors' Committee, or such other value as may be agreed by the Debtors and the Creditors' Committee.

4

less than 50% of the aggregate Estimated Recovery Value of the Real Estate Investment, and/or (z) any party to the Real Estate Loan Transaction being either a person employed by the Debtors at any time on or after September 15, 2007 or an entity unaffiliated with the Debtors for which a person employed by the Debtors at any time on or after September 15, 2007 is materially involved in the negotiations of the Real Estate Loan Transaction, and (ii) does not also fall within the parameters set forth in clause (d) of these procedures, the Debtors will provide to the Creditors' Committee a summary of the proposed Real Estate Loan Transaction identifying the salient terms of the proposed Real Estate Loan Transaction, including without limitation, if clause (z) above is applicable, the name of the person employed by the Debtors at any time on or after September 15, 2007 who is involved in the transaction and such person's role in the transaction (the "Real Estate Loan Transaction Summary"). The Creditors' Committee will be required to submit any objections to a Real Estate Loan Transaction identified in a Real Estate Loan Transaction Summary so as to be received by the Debtors on or before ten (10) business days after service of such Real Estate Loan Transaction Summary; provided, however, that if the Creditors' Committee requests additional information regarding a Real Estate Loan Transaction, its objection period shall be suspended until the requested information has been provided. If the Debtors and the Creditors' Committee are unable to consensually resolve the objection, the Debtors may file a motion with the Court seeking approval of the Real Estate Loan Transaction. If the Creditors' Committee does not timely object to a Real Estate Loan Transaction, or the Debtors and the Creditors' Committee resolve a timely objection, the Debtors may proceed with the Real Estate Loan Transaction without further order of the Court or notice to or approval of any party. If a Real Estate Loan Transaction falls within the parameters set forth within both clauses (c) and (d) of these procedures, the provisions of clause (d) shall govern.

d.     The Debtors will be required to file a motion with the Court seeking approval of (i) any Restructuring or Settlement in connection with an existing Real Estate Investment having an aggregate Estimated Recovery Value greater than $100 million, and (ii) any New Investment in an amount greater than $25 million.

e.     The Debtors may enter into and consummate any Real Estate Loan Transaction that involves a Real Estate Investment having an aggregate Estimated Recovery Value of greater than $25 million without further order of the Court or notice to or approval of any party, if the transaction involves only (i) a non-material amendment to or modification of a Real Estate Investment, as determined by the Debtors after consultation with the Creditors' Committee, and/or (ii) the Debtors making a New Investment in an amount not greater than $5 million; *provided, however*, that the Debtors will provide notice to the Creditors' Committee of such Real Estate Loan Transaction as soon as practicable but in no event later than promptly following the closing of such transaction.

f.     Real Estate Investments that are managed by the Debtors as part of distinct

5

and identifiable portfolios that are cross-collateralized or cross-defaulted shall be aggregated for purposes of applying the thresholds set forth in clauses (b) through (e) of these procedures to Real Estate Loan Transactions.

g.     A Real Estate Loan Transaction involving a New Investment of up to and including $5 million that would otherwise be governed by clauses (b) or (e) of these procedures, will be subject to approval of the Creditors' Committee as set forth in clause (c) of these procedures if (i) the proposed New Investment is being made in connection with a Real Estate Investment that is part of a portfolio of Real Estate Investments with the same sponsor or group of affiliated sponsors (a "Portfolio"), and (ii) the aggregate amount of the proposed New Investment and all New Investments made by the Debtors in the 6-month period preceding the proposed New Investment in connection with Real Estate Investments in the same Portfolio exceeds $5 million.

h.     The Debtors' ability to carry out the actions set forth in the foregoing procedures shall not override any applicable notice, consent or other rights that any third parties may have pursuant to agreements with the Debtors;

and it is further

ORDERED that, as part of the procedures set forth herein, the Debtors will file with the Court, on a quarterly basis beginning on September 30, 2011 (the "Quarterly Reporting"), all New Investments made by the Debtors during the prior three calendar months pursuant to these procedures, (i) identifying the aggregate amount funded by the Debtors with respect to real estate assets owned by the Debtors, and (ii) to the extent the amount funded with respect to individual assets is greater than or equal to $1 million, the Debtors will identify (a) the number and amount of each of such funding on a line item basis and (b) the type of property to which such New Investment relates, in the following format:

6

| | **New Investments Greater Than or Equal to $1 Million** | | | |
|---|---|---|---|---|
| | **Range of Value of Underlying Real Estate Investment** | **Amount of New Investment** | **Type of Property To Which New Investment Relates** | **Type of New Investment (Debt or Equity)** |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |

and it is further

ORDERED that the Debtors will include in their Quarterly Reporting a report of each protective advance for non-discretionary or emergency property-related purposes exceeding $5 million made by the Debtors during the prior three calendar months, as well as the aggregate of all such protective advances made with respect to a particular property if such aggregate exceeds $10 million or any multiple thereof, in the following format:

| | **Protective Advances for Non-Discretionary or Emergency Property Related Purposes** | | |
|---|---|---|---|
| | **Range of Value of Underlying Real Estate Investment** | **Amount of Advance or Aggregate Amount if More Than $10 Million** | **Type of Property To Which Advance Relates** |
| 1. | | | |
| 2. | | | |
| 3. | | | |

and it is further

7

ORDERED that the procedures set forth herein shall not override the procedures previously approved by this Court in the SPE Foreclosure Procedures Order, the Discounted Payoff Procedures Order and the Real Estate Asset Dispositions Order (the "Approved Procedures Orders") and, to the extent a Real Estate Transaction Loan Transaction proposed to be undertaken pursuant to the procedures set forth herein conflicts with the procedures set forth in any of the Approved Procedures Orders, the procedures set forth in the Approved Procedures Orders shall govern; and it is further

ORDERED that nothing in this Order authorizes the transfer of any collateral for securities guaranteed by the Government National Mortgage Association ("GNMA"), including, but not limited to, mortgage loans or related foreclosure judgments or deeds or assignments in lieu of foreclosure, or any Participations or Other Interests as such terms are defined in the guaranty agreements between LBHI and GNMA; and it is further

ORDERED that the Debtors are authorized to execute such documents or other instruments and carry out all other actions as may be necessary to effectuate any Real Estate Loan Transaction in accordance with this Order; and it is further

ORDERED that this Order shall not obligate or require the Debtors to restructure or amend any Real Estate Investment or make any New Investment in connection with an existing Real Estate Investment, nor shall this Order preclude Debtors from settling or compromising any claim upon further application to the Court; and it is further

ORDERED that nothing in this Order shall be construed to limit or otherwise affect the Debtors' ability to assume or reject any credit, loan, security, participation or similar agreement in accordance with the provisions of the Bankruptcy Code; and it is further

8

ORDERED that any stay imposed by Bankruptcy Rule 6004(h) is hereby waived and this Order shall be immediately effective and enforceable; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: New York, New York
       July 21, 2011

                                          *s/ James M. Peck*
                                          HONORABLE JAMES M. PECK
                                          UNITED STATES BANKRUPTCY JUDGE