Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 08-13555-jmp, 08-01420-jmp (SIPA)

5  - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7  LEHMAN BROTHERS HOLDINGS, INC., et al.,

8          Debtors.

9  - - - - - - - - - - - - - - - - - - - - - -x

10  In the Matter of:

11  LEHMAN BROTHERS, INC.,

12          Debtors.

13  - - - - - - - - - - - - - - - - - - - - - -x

14

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              July 20, 2011

20              10:01 AM

21

22  B E F O R E:

23  HON. JAMES M. PECK

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    [Docket No. 18106] Debtors' Motion for Authorization to

3    Terminate and Settle or Reject Certain Prepetition Derivatives

4    Contracts with Trusts for which U.S. Bank National Association

5    Serves as Indenture Trustee and Related Relief

6

7    [Docket No. 17282] Debtors' Motion to Amend the Order

8    Establishing Procedures to (i) Restructure, (ii) Make New or

9    Additional Debt or Equity Investments in, and/or (iii) Enter

10   Into Settlements and Compromises in Connection with Existing

11   Real Estate Investments

12

13   [Docket No. 181221] Debtors' Motion for Authority to (i) Enter

14   into the Second Amended Joint Chapter 11 Plan Proposed by the

15   Lehman Creditors and the SunCal Trustee on Behalf of the SunCal

16   Involuntary Debtors in Eight of the SunCal Involuntary Debtors'

17   Cases; (ii) Enter into the Second Amended Joint Chapter 11 Plan

18   Proposed by the Lehman Lenders in Eleven of the SunCal

19   Voluntary Debtors' Cases; and (iii) Participate in any Auction

20   of the SunCal Debtors' Assets

21

22   [Docket No. 16259] Motion of Evangelical Christian Credit Union

23   for Relief from the Automatic Stay

24

25

Page 3

1

2     [Docket No. 18306] Debtors' Motion for (i) Approval of

3     Stipulation and Order Regarding Chapter 11 Plans and (ii) Stay

4     of Related Discovery

5

6     [Docket No. 18157] Motion of Joseph Arena, Roland Hansalik,

7     George Barclay Perry for an Order Modifying the Automatic Stay

8     to Allow Payment of a Judgment Under the Directors and Officers

9     Insurance Policies Issued to the Debtors

10

11    [Docket No. 18033] Motion of Merrill Lynch Portfolio

12    Management, Inc. and Merrill Lynch Capital Services, Inc. to

13    Compel Specific Performance of Subordination Agreement Terms

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Ellen S. Kolman

Page 4

```
 1

 2    A P P E A R A N C E S :

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:   HARVEY R. MILLER, ESQ.

 9         ALFREDO PEREZ, ESQ.

10         JACQUELINE MARQCUS, ESQ.

11

12

13    BROWN RUDNICK, LLP

14         Attorneys for Official Committee of Unsecured Creditors

15         One Financial Center

16         Boston, MA 02111

17

18    BY:   STEVEN B. LEVINE, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25
```

Page 5

1   IRELL & MANELLA, LLP

2        Attorneys for Official Committee of Unsecured Creditors

3        840 Newport Center Drive

4        Newport Beach, CA 92660

5

6   BY:   ALAN J. FRIEDMAN, ESQ. (TELEPHONICALLY)

7

8

9   MILBANK, TWEED, HADLEY & MCCLOY, LLP

10        Attorneys for Official Committee of Unsecured Creditors

11        One Chase Manhattan Plaza

12        New York, NY 10005

13

14   BY:   DENNIS DUNNE, ESQ.

15        DENNIS O'DONNELL, ESQ.

16        EVAN FLECK, ESQ.

17

18

19   WHITE & CASE, LLP

20        Attorneys for Ad Hoc Group

21        1155 Avenue of the Americas

22        New York, NY 10036

23

24   BY:   CHRISTOPHER SHORE, ESQ.

25        GERARD UZZI, ESQ.

Page 6

1    AKIN GUMP STRAUSS HAUER & FELD

2         Attorneys for Centerbridge Partners/Centerbridge Advisors

3          LLC

4         One Bryan Park

5         New York, NY 10036

6

7    BY:   ABID QURESHI, ESQ.

8

9

10   BERGER & MONTAGUE, P.C.

11        Attorneys for State of New Jersey Department of Treasury,

12         Division of Investment

13        1622 Locust Street

14        Philadelphia, PA 19103

15

16   BY:   MERRILL G. DAVIDOFF, ESQ.

17

18

19   DAVIS POLK & WARDELL, LLP

20        Attorneys for LBIE

21        460 Lexington Avenue

22        New York, NY 10017

23

24   BY:   BRIAN M. RESNICK, ESQ.

25

1  CHAPMAN AND CUTLER LLP

2        Attorneys for U.S. Bank as Indenture Trustee

3        330 Madison Avenue

4        34th Floor

5        New York, NY 10017

6

7  BY:   CRAIG M. PRICE, ESQ.

8        FRANKLIN TOP, ESQ. (TELEPHONICALLY)

9

10

11 DEWEY & LEBOUEF, LLP

12        Attorneys for Bondholders

13        333 South Grand Avenue

14        Los Angeles, CA 90071

15

16 BY:   MONIKA S. WIENER, ESQ. (TELEPHONICALLY)

17

18

19 GIBSON, DUNN & CRUTCHER, LLP

20        Attorneys for LBF, PricewaterhouseCoopers

21        200 Park Avenue

22        New York, NY 10166

23

24 BY:   MATTHEW K. KELSEY, ESQ.

25

Page 8

```
 1   HUGHES HUBBARD & REED, LLP

 2        Attorneys for SIPA Trustee

 3        One Battery Park Plaza

 4        New York, NY 10004

 5

 6   BY:   JEFFREY S. MARGOLIN, ESQ.

 7

 8

 9   JONES DAY

10        Attorneys for Joseph Arena, Roland Hansalik, George

11         Barclay Perry

12        222 East 41st Street

13        New York, NY 10017

14

15   BY:  LISA LAUKITIS, ESQ.

16

17

18   JONES DAY

19        Attorneys for Joseph Arena, Roland Hansalik, George

20         Barclay Perry

21        555 South Flower Street

22        Los Angeles, CA 90071

23

24   BY:  PHILIP E. COOK, ESQ.

25
```

**Page 9**

```
 1   KIRKLAND & ELLIS, LLP

 2        Attorneys for Pulsar

 3        555 California Street

 4        San Francisco, CA 94104

 5   BY:   MICHAEL P. ESSER, ESQ. (TELEPHONICALLY)

 6

 7

 8   KUTAK ROCK, LLP

 9        Attorneys for Merrill Lynch

10        1111 East Main Street

11        Richmond, VA 23219

12

13   BY:   PETER J. BARRETT, ESQ.

14

15

16   LOWENSTEIN SANDLER, P.C.

17        Attorneys for Institutional Lead Plaintiffs and the

18         Securities Class Actions

19        1251 Avenue of the Americas

20        New York, NY 10020

21

22   BY:   MICHAEL S. ETKIN, ESQ.

23

24

25
```

Page 10

1   SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

2        Attorneys for Evangelical Christian Credit Union

3        30 Rockefeller Plaza

4        New York, NY 10112

5

6   BY:   EDWARD H. TILLINGHAST, III, ESQ.

7         BLANKA K. WOLFE, ESQ.

8

9

10  STEPTOE & JOHNSON, LLP

11        Attorneys for U.S. Airways

12        1330 Connecticut Avenue, NW.

13        Washington, DC 20036

14

15  BY:   STEVEN K. DAVIDSON, ESQ.

16

17

18  STEPTOE & JOHNSON, LLP

19        Attorneys for U.S. AIRWAYS

20        750 Seventh Avenue

21        New York, NY 10019

22

23  BY:   EVAN GLASSMAN, ESQ.

24

25

Page 11

1   STUTMAN, TREISTER & GLATT

2        Attorneys for Baupost Group

3        1901 Avenue of the Starts

4        Los Angeles, CA 90067

5

6   BY:   GABRIEL GLAZER, ESQ. (TELEPHONICALLY)

7        ISAAC PACHULSKI, ESQ. (TELEPHONICALLY)

8

9

10  U.S. DEPARTMENT OF JUSTICE

11       Attorneys for U.S. Trustee

12       33 Whitehall Street

13       New York, NY 10004

14

15  BY:   LINDA A. RIFKIN, ESQ.

16

17

18  WHITEFORD TAYLOR PRESTON, LLP

19       Attorneys for Monarch Alternative Capital

20       Seven Saint Paul Street

21       Baltimore, MD 21202

22

23  BY:   DENNIS J. SHAFFER, ESQ. (TELEPHONICALLY)

24

25

1    WINTHROP & COUCHOT, P.C.

2        Attorneys for SunCal

3        660 Newport Center Drive

4        Newport Beach, CA 92660

5

6    BY:   SEAN O'KEEFE, ESQ. (TELEHONICALLY)

7

8

9    ZUCKERMAN SPADER, LLP

10       Attorneys for State of New Jersey Department of Treasury,

11        Division of Investment

12       1800 M. Street, N.W.

13       Washington, DC 20036

14

15   BY:   VIRGINIA WHITEHILL GULDI, ESQ.

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Be seated please.  Good morning.

3              MR. MILLER:  Good morning, Your Honor.

4              THE COURT:  Good morning, Mr. Miller.

5              MR. MILLER:  Harvey Miller from Weil, Gotshal & Manges

6      on behalf of the debtors.

7              If Your Honor, please, may we start with the contested

8      matters?  I believe that will allow --

9              THE COURT:  That might allow people to leave.

10             MR. MILLER:  Yes, Your Honor.

11             THE COURT:  Good.  Let's do that.

12             MR. MILLER:  And it's going to be real hot today.

13             So, we would be starting, Your Honor, with item 5 on

14     the agenda which is the debtors' motion seeking approval of a

15     stipulation and proposed order dated June 30, 2011.

16             Given the history, Your Honor, of these highly

17     accentuated and articulated polar positions that have been

18     taken by different constituencies in these Chapter 11 cases,

19     one might easily have predicted that the events that have

20     produced the subject stipulation were unbelievable except for

21     the fact that they did occur.

22             As a result of an idea suggested by my partner, Lori

23     Fife, that germinate into a course of action on June 16th,

24     2011, over 150 attorneys, financial advisors, financial

25     institutions and others gathered in the offices of Weil to meet

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 14 of 69

Page 14

1   with the debtors' representatives and their professionals in a

2   gigantic effort to try and reconcile the differences among

3   creditors and to achieve a consensus as to the principals to be

4   incorporated into a Chapter 11 plan for the debtors.

5        That initial summit meeting which began at 2 o'clock

6   in the afternoon, extended almost until 5 a.m. the next morning

7   as the debtors' representatives met with different

8   constituencies on a collective basis and then sequentially.

9   Over the course of the following weekend, there were extended

10  telephone conferences and discussions as to the negotiations

11  and positions that had been discussed during the summer

12  conference.

13       The meeting resumed as to many of the constituencies

14  on Monday, June 20 and for a period that consumed the following

15  ten days various meetings, telephone conferences, drafting

16  sessions and extended negotiations were pursued.  These

17  included negotiations that the plan provisions involving the

18  treatment of various classes of claimants, plan support

19  agreements and revisions to the proposed disclosure statement,

20  all of which culminated in the filing of the proposed second

21  amended plan and disclosure statement dated June 29, 2011 that

22  was subsequently modified and revised in light of additional

23  comments received during the evening of June 30 and into the

24  morning of July 1st, 2011 when the debtors filed a revised

25  proposed second amended Chapter 11 plan and related disclosure

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 15

1    statement.

2          In connection with the filing, the debtors noted the

3    second amended plan has the support of claimants holding

4    approximately 100 billion dollars in claims and that 30 plan

5    support agreements have been executed in connection with that

6    plan.

7          During the hectic days and nights, attention also was

8    given to the status of the discovery protocol order dated April

9    14, 2011.  That order established a schedule and procedures in

10   connection with discovery related to plan confirmation and

11   other issues relating to the debtors' plan and alternative

12   plans filed by creditors.

13         It contemplated a very extensive massive discovery

14   process with enormous search mechanics involving many

15   participants and as to which over 850 search requests had

16   already been received.  Among the negotiating parties it was

17   agreed that such extended and costly discovery might become

18   academic assuming the successful prosecution of the debtors'

19   second amended plan and disclosure statement.  The parties then

20   agreed subject to the terms and conditions of the plan support

21   agreements and other commitments that the discovery protocol

22   order should be suspended and discovery held in abeyance during

23   the parties -- among the parties for the proposed stipulation.

24   All of that was agreed to and the stipulation which is before

25   the Court resulted.

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 16

1      Under the terms of the stipulation, the debtors were

2   required to file this motion not later than five business days

3   after June 30, 2011.   Pursuant to the stipulation, the

4   alternative Chapter 11 plans filed in these cases, one by the

5   ad hoc group of LBHI creditors and the other by what we

6   characterize as the nonconsolidation plan proponents will be

7   held in abeyance pending the prosecution of the debtors' second

8   amended plan and disclosure statement subject to the provisions

9   of the plan support agreements.

10      The parties of the stipulation have agreed to stay any

11   and all discovery currently pending against any of the other

12   parties to the stipulation pursuant to the discovery protocol

13   order and all obligations of parties to each other.   To respond

14   to any discovery is stayed.   And finally, that none of the

15   parties to the stipulation will commence any other discovery

16   against any other party relating to the debtors' second amended

17   plan and disclosure statement and each of the alternative

18   plans.   However, if a party to the stipulation terminates a

19   plan support agreement in accordance with its terms, then that

20   party upon three business days notice may pursue any and all

21   discovery that would -- it would be entitled to under the

22   Federal Rules of Civil Procedure, the federal bankruptcy rules

23   of procedure or any other applicable rule, law or court order.

24   And nonterminating parties, likewise, may pursue any and all

25   such discovery against the terminating party.

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 17 of 69

Page 17

1          The right to call a termination event under the

2     stipulation is fairly broad.  Under paragraph 6, any creditor

3     party may declare a termination event if, A, a nonappealee

4     order denying approval of disclosure statement or confirmation

5     is entered or the plan does not become effective by March 31,

6     2012.

7          As pointed out -- I'm sorry; as pointed out in support

8     pleading filed by the ad hoc group of LBHI creditors, any

9     adverse change in the treatment of such claimants under the

10    second amended plan whether material or not may serve as a

11    termination event in the sole discretion and election of the

12    requisite majority of the particular holders.

13         Pursuant to paragraph 10 of the stipulation, if a

14    termination event has been declared before the approval of the

15    second amended disclosure statement, then the debtors agree to

16    adjournment of the Section 1125 hearing to a date that is at

17    least twenty-five days as to the termination event.  The intent

18    is to give the alternative plan proponents the opportunity to

19    have their proposed plans considered and prosecuted.

20         If the termination event is subsequent to the approval

21    of the second amended disclosure statement and it's in the

22    process of solicitation, then the debtors are required to

23    request a determination of the court on not less than twenty-

24    five days notice that the termination event does not require

25    resolicitation before the debtors may proceed to a confirmation

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 18 of 69

Page 18

1    hearing.  And, of course, the terminating parties shall be

2    entitled to oppose such a motion.

3           If resolicitation is required, the debtors will

4    have -- continue to have the right to request sequencing of the

5    solicitation and confirmation process and the proponents of the

6    alternative plans may oppose such requested sequencing.

7           In connection with the motion, Your Honor, pleadings

8    have been filed on behalf of the ad hoc group of LBIH (sic)

9    creditors and the unsecured creditors' committee in support of

10   the instant motion.

11          In addition, there have been two responses filed; one

12   by Centerbridge Credit Advisors and another by Danske Bank, one

13   limited objection by PricewaterhouseCoopers AG (Zurich) and

14   three joinders relating to the response of Centerbridge Credit

15   Advisors and the limited objection of PricewaterhouseCoopers.

16          And point of fact, Your Honor, none of the responses,

17   however characterized, object to the relief requested by the

18   debtors and supported by the unsecured creditors' committee and

19   the ad hoc group of LBHI creditors.

20          Essentially, the responses of Centerbridge Credit

21   Advisors and Danske Bank and the limited objection of

22   PricewaterhouseCoopers on the nature of statements signaling or

23   outlining their respective dislikes and intended rejection of

24   the debtors' second amended Chapter 11 plan, I assume, it is to

25   alert the Court to what their respective positions may be in

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 19

1   connection with the confirmation of that plan.  But the

2   statements and characterizations which are set forth in those

3   pleadings, Your Honor, are not germane or indeed relevant to

4   the consideration of the motion and the approval of a

5   stipulation and the entry of a proposed order.  These

6   statements are superfluous and need not be addressed at this

7   hearing.

8         To accommodate the respondents and consistent with

9   extended discussions with the representatives of LBI (Europe),

10  LBIE, which is not a party to the stipulation or any plan

11  support agreement, the debtors have proposed an amendment to

12  the proposed -- original proposed order attached to the motion

13  to make it clear and unequivocal that the stipulation only

14  applies to the parties that have executed the stipulation.  As

15  to nonparties to the extent appropriate and proper, such

16  parties are not precluded and may undertake discovery pursuant

17  to the Federal Rules of Civil Procedure, federal rules of

18  bankruptcy procedure and such other rules and orders that may

19  be applicable.

20        After meeting and conferring with the appropriate --

21  the person as to who the discovery is directed.  In other

22  words -- and also, Your Honor, there's a -- one pleading refers

23  to targeted discovery and there is no preclusion on targeted

24  discovery by nonparties to the stipulation.

25        The objective of a meet and confer is to attempt to

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 20 of 69

Page 20

1    establish an orderly process so that whatever discovery may be

2    pursued will be efficient, expeditious, and not duplicative.

3    The additional language proposed also provides that if the

4    parties are unable to agree, then discovery will occur as

5    determined by the Court.

6           The precise language of the amendment is, if I may,

7    Your Honor, "Order that nothing in this order shall impair the

8    rights of any party-in-interest other than a party to the

9    stipulation to seek discovery in accordance with the applicable

10   Federal Rules of Civil Procedure and federal rules of

11   bankruptcy procedure so long as the parties seeking discovery

12   meets and confers with the party on which the -- a discovery

13   request is to be served prior to serving the request and

14   subject to whatever additional requirements or procedures that

15   may be agreed to by the parties and/or ordered by the Court."

16          The events that occurred, Your Honor, during the first

17   two weeks of June are attributed to the dedication, diligence

18   and expertise of all parties who participated in the effort to

19   bring consensus to these extraordinary cases.  As in all

20   things, it is not perfect but it is a major step forward in the

21   administration of these cases; a step that may save these cases

22   from the tremendous expense of voluminous and extensive

23   discovery.  The cooperation of the parties and the willingness

24   to give up sleep and other activities to meet with the debtors

25   and their representatives is much appreciated.

Page 21

1          It is the sincere hope of the debtors that the major

2     step forward will not be in vain but rather result in a

3     consensual plan for all the debtors that inures to the benefit

4     of all of the economic stakeholders and the parties-in-

5     interest.

6          The stipulation and order, Your Honor, is an integral

7     part of the process and it is respectfully requested that the

8     Court grant the motion and approve the stipulation and enter

9     the order as amended.

10          Finally, although the discovery protocol order has

11     against all the parties to the stipulation will be suspended,

12     the confidentiality provisions and agreements pursuant to the

13     protocol shall remain in full course in effect.

14          With that, Your Honor, the debtors request that the

15     motion be granted and the stipulation approved and the order

16     entered.  Thank you, Your Honor, unless you have any questions.

17          THE COURT:  Okay.  I don't have any questions.  Thank

18     you, Mr. Miller.

19          Mr. Dunne?

20          MR. DUNNE:  Good morning, Your Honor.  For the record,

21     Dennis Dunne from Milbank, Tweed, Hadley & McCloy on behalf of

22     the official creditors' committee.  And I'll be brief.

23          I echo Mr. Miller's comments and congratulate all the

24     parties on the effort that they put in and success that was

25     actually obtained as a result of those weeks of seemingly

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 22 of 69

Page 22

1    endless negotiations.

2          The committee is very pleased that we've been able to

3    achieve so much progress over the past month and we have

4    garnered significant support among various creditor groups.

5          Prior to entering in the negotiations, the creditors'

6    committee was hoping to achieve two objectives.  One was to get

7    broader creditor support for the plan but to also do so without

8    abandoning the elements, the key framework components of the

9    existing plan in terms of where we believed the litigation

10   probable outcomes were with respect to the various legal issues

11   presenting -- presented to the Court and all the parties.  And

12   I believe we've done that.  We have a consensual plan that does

13   not abandon the pillars of the plan and that we've managed to

14   retain the support of the parties that supported the previous

15   plan even though directionally some of the concessions moved

16   away from the them, frankly, and get support from creditors at

17   the domestic operating company levels that we did not have

18   before.  We worked closely with the debtors and the creditor

19   groups to attain that support within the original framework.

20         One note; while we have made substantial progress on

21   the plan, and I think there was a number of us that were

22   surprised that we made so much of it so soon and I think that

23   is a credit to all the parties who participated, there is more

24   wood to chop.

25         We have more discussions to come with the foreign

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 23 of 69

Page 23

1    affiliates, with LBI, and even some of the domestic creditors.

2    But hopefully, we can build on the substantial progress that

3    we've made to date and get even broader buy-in to the plan as

4    we march towards confirmation.

5          So, in sum, the committee believes the most efficient

6    and economical path forward is for the Court to approve the

7    debtors' motion to suspend prosecution of the other competing

8    plans and to stay any related discovery.  And with that, unless

9    the Court has any questions for the committee, I conclude my

10    remarks.

11          THE COURT:  I don't have any questions for you either.

12          MR. SHORE:  Good morning, Your Honor, Chris Shore from

13    White & Case on behalf of the ad hoc group.

14          THE COURT:  Good morning.

15          MR. SHORE:  I just have two comments.

16          First, we agree with Mr. Miller that this has not been

17    an easy plan negotiation given the capital structure.  To say

18    that the debtors and their counsel have been herding cats is an

19    understatement.  And when handing out credit from the group's

20    perspective, the debtors and their counsel have done a great

21    job in building consensus here and to some extent making

22    everyone a little unhappy.  And I mean that in a good way.

23          We do note that the process of getting everybody in

24    the same room was made easier by the discovery framework which

25    was ordered by this Court and we agree with Mr. Miller that the

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 24 of 69

Page 24

1    timing of the settlement and the launch of discovery were not

2    coincidental.  The fact is that a substantial number of people

3    did get together in the same room and become convinced that on

4    the economics of this plan, peace was better than war.

5         My second point, though, is this is fragile piece as

6    we said in our papers and that the bargain has been struck is

7    literally down to single bases point recoveries within the

8    various groups.  And based on our participation in the

9    negotiations, we feel confident that there really isn't any

10   more to give by any constituency.  Notwithstanding the Court

11   has before it a few statements put forth by parties essentially

12   for the point that they think they deserve more, I'm going to

13   take the lead of Mr. Miller and not rise to debate and debate

14   any of that now; we could be here for hours.

15        I will, however, note, to say that if it's the party's

16   intention to start a war with the idea that they're going to be

17   getting more or that their treatment is unfair, from the

18   group's perspective we think they may be a little naïve in the

19   cost benefit analysis and we'd implore them to get on board on

20   this plan on these economics.

21        THE COURT:  Okay.  Before hearing from parties who

22   have filed responses with limited objections to the extent they

23   wish to be heard after the opening statements that have been

24   made by counsel for the debtor, the ad hoc committee, and the

25   committee, I just want to make a comment which is designed to

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 25 of 69

Page 25

1    not chill presentations but to note that this is not an

2    opportunity to stand on a soap box and make statements about

3    positions that might be asserted at some future date in

4    connection with some future matter to be heard here whether

5    it's the disclosure statement itself or plan confirmation.

6         Everybody who has filed a response is free to comment

7    but limit those comments to the matter which is actually before

8    me which is the motion for approval of the stipulation and

9    order regarding plans and the stay of related discovery.

10   Merits types arguments that have been made in the papers really

11   have no place here.  And so, say what you want to say about the

12   matter which is before me but please refrain from trying to

13   make headlines.  Okay?  I'll hear what people have to say.

14        MR. QURESHI:  Good morning, Your Honor.  For the

15   record, Abid Qureshi, Akin, Gump, Strauss, Hauer & Feld on

16   behalf of Centerbridge.  I certainly don't intend to repeat

17   anything in our papers.  I rise only to advise the Court that

18   we are okay with the language proposed in the debtors' reply

19   that reserves the right of those that continue to object to the

20   amended plan, to take discovery.  We've been informed by the

21   debtors that they will confer with us in the ordinary course

22   and pursuant to the applicable federal rules.  Thank you, Your

23   Honor.

24        THE COURT:  Okay.  Fine.  Thank you.  Is there anybody

25   who is dissatisfied with the language that has been proposed in

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 26 of 69

Page 26

1    the amended order?  Apparently not.  Is there anyone else who

2    wishes to be heard with respect to the order as amended?

3          There's no response.  The motion is approved.

4          MR. MILLER:  Thank you, Your Honor.

5          The next motion, Your Honor, number 6, is Jones Day's

6    motion.

7          THE COURT:  Those who wish to leave as a result of

8    having considered item number 5 may do so.

9          Let's just wait one moment while we allow the

10   courtroom to clear and people to sit down who might want to

11   find seats.

12       (Pause)

13         THE COURT:  This demonstrates the wisdom of taking

14   item number 5 first.

15         MR. MILLER:  Thank you, Your Honor.

16         MS. LAUKITIS:  Good morning, Your Honor.  Lisa

17   Laukitis from Jones Day on behalf of Roland Hansalik, George

18   Barclay Perry and Joseph Arena.  The parties have moved for a

19   comfort order to permit payment of a judgment under the

20   debtors' D&O policies.  I'm here today with my partner Philip

21   Cook.  There is a pro hoc motion pending for Mr. Cook but we

22   would ask that he be authorized to make argument today and we

23   can hand up the order at the conclusion.

24         THE COURT:  As far as I'm concerned, the pro hoc is

25   deemed granted.  But with the change in our rules since July 1,

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 27 of 69

Page 27

1    there's a 200 dollar check that has to be paid at some point.

2         MS. LAUKITIS:  I don't --

3         THE COURT:  It's a fairly steep price to speak but go

4    ahead and be my guest.

5         MS. LAUKITIS:  Mr. Cook is worth every penny, I assure

6    you.

7         THE COURT:  Well, let's find out.

8         UNIDENTIFIED SPEAKER:  Does that take care of the debt

9    limit, Your Honor?

10        MR. COOK:  Thank you, Your Honor.  I appreciate it.

11   With that, we are here on a motion for a comfort order.  As the

12   Court knows, you know, seven prior comfort orders have been

13   entered.  And our view, as we set forth in our motion is that

14   while the cases support the fact that the proceeds of the D&O

15   policy -- while the policies themselves may be the assets of

16   the estate, the proceeds are not and particularly under the

17   circumstances here where entity coverage has been deleted from

18   the policy and there is no evidence of an indemnity obligation

19   under part B.  As the estate has stated on many occasions prior

20   and with their support here, we'd ask that the Court grant the

21   motion to permit the insurance companies to make the payment

22   for the current legal obligation.

23        THE COURT:  Let me just ask a very basic question.

24   This is, as you have styled it, a comfort order.  Is this

25   something that the insurance company has requested as a

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 28 of 69

Page 28

1    condition to making the fifteen million dollar payment under

2    the FINRA award or is this something that the parties

3    themselves have determined is appropriate practice under the

4    circumstances because of reasoned doubt as to whether or not it

5    would be appropriate to make the payment, absent the entry of

6    an order?

7            MR. COOK:  I am here representing three insured

8    persons.

9            THE COURT:  I understand that.

10           MR. COOK:  And it is -- it is, from our view, has been

11   the practice from the outset of the estate and those involved

12   in these proceedings to seek a comfort order.  The cases

13   generally do hold, particularly under the facts here that these

14   proceeds are not assets of the estate and the estate has

15   consistently taken that position.  However, because of other

16   issues, I think I would answer the Court's question about the

17   insurance companies' position somewhat precisely.  They have

18   recognized it is and has been the practice here.

19           I don't think either the moving parties or the

20   insurers believe that the Court has jurisdiction over those and

21   that's why the motion has been styled and argued as it has;

22   that to the extent applicable and necessary, to the extent that

23   these proceeds are assets of the estate, we're seeking a

24   comfort order which will permit them to then pay without

25   concern that they're violating the automatic stay.  There are

Page 29

1   cases that have held -- although I believe under different

2   factual circumstances -- that the estate may have an interest

3   in insurance policy proceeds.

4            THE COURT:  Okay.  Thank you.

5            MR. DAVIDSON:  Good morning, Your Honor.  Steven

6   Davidson with Steptoe & Johnson and my partner Evan Glassman.

7   We represent the claimant in the underlying case U.S. Airways

8   and we support the motion and are here if you have any

9   questions of us.  Thank you.

10           THE COURT:  I don't.

11           MS. MARCUS:  Good morning, Your Honor.  Jacqueline

12  Marcus, Weil Gotshal & Manges on behalf of LBHI and its

13  affiliated debtors.  As indicated in our statement in support,

14  Your Honor, we too support the requested relief.

15           THE COURT:  Okay.

16           MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

17  Tweed, Hadley & McCloy on behalf of the committee.  We also

18  don't have any objections to the relief requested in the

19  motion.  We've noted, as we've noted in the past, that we do

20  reserve our rights with respect to some potential time in the

21  future where the facts might change and the estate might have

22  an interest in these proceeds but agree that, at this point in

23  time, that's a purely speculative interest and we don't have an

24  interest in these proceeds.

25           THE COURT:  Okay.  Is anybody here from New Jersey?

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 30 of 69

Page 30

1            MR. DAVIDOFF:  Yes, Your Honor.  Merrill Davidoff from

2     Berger & Montague.  I'll try to be brief, Your Honor, and not

3     repeat anything that was said in our papers but I would like to

4     supplement the objections that we made with a few observations.

5            There has been no demonstration of the background of

6     this FINRA judgment whatsoever made by the insureds here or by

7     the insurers.  We see that a proceeding was instituted in

8     December of 2009.  There's no basis for coverage, why is that

9     covered by either the 2007/2008 policy year or the 2008/2009

10    policy year.  So there's no demonstration of coverage for this

11    at all.

12            There's no demonstration -- no linkage of the

13    allegations, no demonstration of what was alleged in the FINRA

14    matter and why that should be subject to coverage.  The

15    respondents of the movants made the point that New Jersey has

16    acquiesced in prior attempts to tap the policy, mostly for

17    defense costs and for some settlements.  But that situation has

18    drastically changed.  These policies have been severely

19    depleted.

20            I don't know whether Your Honor received the papers

21    that we sent in yesterday afternoon.  We sent a courtesy copy

22    down to Your Honor's chambers when we filed them.  But the

23    background of this is that twenty-eight approximately or more

24    opt-out actions have been stayed by motions to dismiss the

25    class actions have been pending.  And these policies have been

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 31 of 69

Page 31

1    steadily depleted, mostly to pay defense costs and now to pay a

2    rather sizable settlement.

3           And I'd also like to note our objection -- strenuous

4    objection to the effort to wave the fourteen-day appeal period.

5    We should be given an opportunity to try to put this before the

6    District Court that stayed all of these actions, including New

7    Jersey's action which was forcibly -- forcibly hauled into the

8    MDL in the Southern District of New York, an attempt to put

9    that.  And the attempt to waive the fourteen-day appeal period

10   really is an attempt to trample on and extinguish our appeal

11   rights.

12          I would note that it was over a month from the time

13   that the FINRA judgment was entered in June until the movants

14   actually moved for relief from the automatic stay.  They

15   received an extension from the claimants, they received an

16   extension from FINRA.  No reason to believe they couldn't

17   receive a similar extension of appellate proceedings were

18   pending in the District Court.  The fourteen-day appeal period

19   is very short.

20          So I would urge Your Honor to inquire a little more

21   deeply into this before even considering granting the motion.

22   What is the background of the FINRA judgment, when was it

23   asserted, why is there coverage under the FINRA judgment for

24   this and, if Your Honor determines that the motion should be

25   granted, Your Honor should not -- should strike out, at the

 1    very least, the portion that waives the appeal period to give

 2    the objectors and opportunity to perfect an appeal and get it

 3    before the District Court that has back-burnered all of the

 4    cases, including New Jersey which lost almost 200 million

 5    dollars on Lehman securities, that's back-burnered all of those

 6    cases pending disposition of motions directed to the class

 7    action.

 8         There is an automatic stay for the class action cases.

 9    There is no automatic stay for opt-out cases.  It was a

10    procedural device that was entered by Judge Kaplan.  We also

11    attached as Exhibit 7, if I could call Your Honor's attention

12    just to some language.  This was another effort about a year

13    and a half ago by the class claimants to get discovery and

14    that's Exhibit 7 to the papers we filed yesterday.  And in that

15    opinion, explaining why he would not -- I don't meant the

16    automatic stay; I mean the stay that judge Kaplan had entered

17    in the PSLRA stay.  He distinguished the Worldcom case and

18    analogized the Lehman case to the Revco Securities litigation.

19         And among other things, he say this is a December

20    11th, 2009 order by Judge Kaplan, right around the time,

21    incidentally, that U.S. Airways was filing its initial claim in

22    the FINRA proceeding.  "The facts here are akin instead to In

23    re: Revco Securities litigation and like cases.  Here, unlike

24    Worldcom but like Revco, there are no court-ordered settlement

25    discussions.  Similarly, lead plaintiffs have not demonstrated

1   a risk critical to the outcome in Worldcom that the defendants,

2   as opposed to nonparty Lehamn, will be insolvent if discovery

3   is delayed until after the motion to dismiss currently sub

4   judice is decided," And denied the motions to lift the PSLRA

5   discovery stay.

6        That situation has drastically changed.  At the very

7   least, we should have an opportunity to put this -- to seek to

8   put this before Judge Kaplan on appeal and I urge Your Honor,

9   if he -- in the event that Your Honor does grant the motion,

10  not to grant the portion of the motion that seeks waiver from

11  the fourteen-day appeal period.

12        THE COURT:  I have two --

13        MR. DAVIDOFF:  Thank you, Your Honor.

14        THE COURT:  -- questions for you.

15        MR. DAVIDOFF:  Yes, Your Honor.

16        THE COURT:  The first relates to your standing to

17  object.  There are arguments that I have read in the papers

18  indicating that, under applicable New York law, a party such as

19  the State of New Jersey that is simply waiting in the wings,

20  really can't complain about insurance proceeds going to the

21  first claimant that gets a judgment.  So question number one is

22  what standing do you have to complain in the first instance?

23  Question number two is what have you done between your first

24  knowledge of the FINRA preceding and today to go before Judge

25  Kaplan and seek relief?

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 34

1          MR. DAVIDOFF:  Well, the answer is we have not yet

2    sought relief from Judge Kaplan --

3          THE COURT:  Why not?

4          MR. DAVIDOFF:  That's -- that's a good question, Your

5    Honor, but I think we were focus, having only become aware of

6    this pretty much at the last minute, we were focused on filing

7    our objection before Your Honor and then we -- our intention

8    was present our position before Your Honor and then seek relief

9    in the District Court, preferably before Judge Kaplan if it

10   would be accepted as a related matter.

11         But I think Your Honor asks a good question.  Perhaps

12   we should have done that simultaneously, in hindsight, given

13   Your Honor's question.  But we certainly intend to do that.  I

14   am aware of cases under New York law that hold that, you know,

15   it's basically first come, first served but I think what's

16   happened here is a number of cases have been back-burnered and

17   I don't know why there was no effort to seek a stay of the

18   FINRA proceedings.

19         I'd also argue that these policies are not merely

20   proceeds, they're policies; they were purchased by Lehman.  And

21   I'm aware of the split in the authorities but I think the

22   weight of the authority is that these are property of the

23   estate and relief from the automatic stay is needed.  And under

24   105(a), Your Honor has the discretion, Your Honor has the

25   authority to enter such orders as are equitable, irrespective

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 35 of 69

Page 35

1     of the ordinary rule where, you know, there isn't a bankruptcy

2     proceeding.

3            THE COURT:  Can you explain why the State of New

4     Jersey acquiesced during each of the earlier occasions when

5     comfort orders were sought, with respect to settlements and the

6     use of proceeds to advance defense costs to officers and

7     directors and others who are entitled to coverage under these

8     various policies?

9            MR. DAVIDOFF:  I can answer as to the one occasion

10    where we affirmatively acquiesced by signing onto a stipulation

11    because I was involved in those discussions, Your Honor.  We

12    felt it was inequitable, even though we were adversaries of

13    these insureds, for them to be deprived of funds for their

14    defense costs so we acquiesced, reserving our rights, in a

15    stipulation -- and I don't have that stipulation before me.  It

16    was quite some time ago -- for defense costs to be advanced.

17    And we didn't object on some prior occasions but we have

18    objected on this occasion and -- to put the matter first before

19    Your Honor and, depending on the outcome here, before the

20    District Court.

21            So I think at this point, one thing that the movants

22    and the insurers have not disclosed is how much of these

23    policies have been depleted and why is this FINRA claim, which

24    was filed in December of '09, in either the '07/'08 tranche of

25    policies to the '08/'09 tranche of policies?  I don't

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 36 of 69

Page 36

1    understand that.  Was the claim asserted earlier?  Why is there

2    coverage?  I mean, there has been the sparsest showing, maybe

3    no showing.  And I recognize that we're a lonely objector and a

4    lonely voice objecting and, you know, it's not fun to be --

5    it's not fun to be the guy in the corner but I think something

6    has to be done here or these policies will be completely

7    depleted before any of the opt-out cases have an opportunity to

8    reduce their claims to judgment.

9             THE COURT:  All right.

10            MR. DAVIDOFF:  Thank you, Your Honor.

11            THE COURT:  Mr. Etkin, do you have a dog in this

12    fight?

13            MR. ETKIN:  We did file a reservation of rights, Your

14    Honor.  We did not object to the motion because, dating back to

15    the first of these types of motions where comfort orders were

16    sought from the Court, we were involved in the crafting of the

17    language that made sure that there was no determination that

18    the stay was, in fact, applicable and reserved on the issue of

19    whether the proceeds were property of the estate, rather than

20    have that issue determined because we didn't believe, nor did

21    the movants or the debtor believe, at the time, that that

22    determination was necessary.

23            We have a view that the proceeds are not property of

24    the state, the same view as expressed to you by the movant, the

25    debtor and, to some extent, the committee.  But rather than get

Page 37

1    into hat issue, we didn't feel it was necessary so long as the

2    order carved that out.  We filed the reservation of rights

3    because the debtor had filed papers indicating that there would

4    be some changes to the order that were not identified in the

5    papers so we wanted to make sure that whatever order was

6    ultimately presented to Your Honor reflected those same terms

7    that are contained in the prior orders that Your Honor signed

8    as to those issues that were significant to us.

9           I should state, and I probably didn't state for the

10   record, that we represent the institutional lead plaintiffs and

11   the securities class actions.   Like Mr. Davidoff, we too are

12   obviously concerned about the burn rate with respect to the

13   policies.  But, frankly, we did not object because of the

14   history of orders that have been entered and the issues that

15   have already been raised.  And we've looked at the revised

16   order and it contains the language that we've seen in the prior

17   orders so we have no -- we have no objection.

18          We also filed a reservation of rights because, to the

19   extent that the Court would entertain the -- a determination on

20   the issue at this juncture which, again, we don't believe is

21   necessary, that the proceeds are or are not property of the

22   estate.  And we believe that additional briefing would be

23   necessary and additional argument would be necessary. So we

24   wanted to reserve those rights as well.

25          THE COURT:  But as to the relief that's being sought

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 38 of 69

Page 38

 1    today in the motion, at least in respect to the form of order

 2    that you have reviewed, you have no objection to the entry of

 3    that order?

 4         MR. ETKIN:  That's correct, Your Honor.

 5         THE COURT:  All right.  Thank you.

 6         MR. COOK:  Your Honor, just very briefly in response

 7    to the comments of counsel from New Jersey.  The motion

 8    expressly states that we're not asking the Court to make any

 9    determination as to the rights to coverage, to become involved

10    in whether the insurance companies have defenses.  The order

11    that we sought simply is one that provides comfort to the

12    insurance companies that payment of policy proceeds will not

13    violate the automatic stay.

14         We have shown that, under New York law, we have a

15    contractual right to those policy proceeds.  The insurance

16    companies have not articulated, as we state in the motion, any

17    defense to payment or to those contractual rights.  And we've

18    shown that by August 3rd, if those -- if the award is not paid,

19    the award that was entered by FINRA on March 27th, there will

20    be significant prejudice to the three insured persons who've

21    moved for this order.

22         And I believe Judge Gonzalez, in the Enron case --

23    there's a bench ruling that was attached to the Zurich motion;

24    we've referenced that in our motion.  And he makes clear that

25    in making a decision about whether to enter a similar order, in

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 39 of 69

Page 39

1   finding that the proceeds are not the assets of the estate.

2   That it's not his purview to change the contractual rights of

3   the parties but to merely make a much more limited decision as

4   to whether or not it would violate the terms of the automatic

5   stay to provide and order allowing the insurance payment.

6           THE COURT:  Okay.

7           MR. COOK:  Thank you.

8           THE COURT:  Is there anything more on this?

9           MR. DAVIDOFF:   I have one sentence, if I may be

10  permitted, Your Honor.

11          THE COURT:  Well, you're going to have to come to the

12  podium to express it.

13          MR. DAVIDOFF:  I'm sorry, Your Honor.  I just would

14  note for the record that New Jersey disputes the assertion that

15  the claimants have shown that there's prejudice and that the

16  August 3rd deadline, like the prior deadlines, could not be

17  further extended or that there would be penalties imposed in

18  the event the Court were not to lift the automatic stay by that

19  time.

20          THE COURT:  I don't understand what you just said.

21          MR. DAVIDOFF:  The -- I'm sorry, Your Honor.  Counsel

22  said the award was entered by FINRA on March 27th.  There was a

23  substantial delay in seeking relief from the automatic stay.

24  There were extensions granted by FINRA.  If the Court were to

25  refuse to lift the automatic stay, there's not showing that

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 40

1    there would be any automatic levying of penalties against the

2    insured who are seeking recompense from the policy and there's

3    no showing that there would be any further prejudice.  U.S.

4    Airways would have to stand in line, like other claimants who

5    are equally deserving or more deserving than U.S. Airways.

6    That was the point I was making.  I don't think the papers

7    sufficiently demonstrate prejudice and I wanted to note our

8    position on that.

9            MR. COOK:  Just a quick point of clarification.  I

10    apologize for misspeaking.  I believe it was pointed out to me

11    I said March 27th.  Exhibit B, which we have filed to our

12    motion, is a copy of the FINRA award.  It was entered on May

13    27th.  The first opportunity we had to make the motion after

14    the delivery of that award was on our -- for this omnibus

15    hearing and we filed our motion on June 29th.  I am assured --

16    and counsel for U.S. Airways is here and can assure the

17    Court -- there will be no further delay beyond the arrangement

18    that we have with FINRA and with U.S. Airways to get this paid

19    by early August and the only reason for that concession was so

20    that we could come here and obtain the comfort order.

21            THE COURT:  Okay.  Now we'll hear from U.S. Airways

22    counsel.

23            MR. DAVIDSON:  Just very briefly, Your Honor, to

24    underscore the point that we have agreed to this extension to

25    allow this process to run its course but if the payment is not

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 41 of 69

Page 41

1    forthcoming from the insurance policy, we will then seek to

2    enforce our award against the three individual respondents

3    through whatever means we can.  So that's why we're here today

4    and have agreed to the extension with FINRA and counsel for

5    respondents.

6            THE COURT:  Okay.

7            MR. DAVIDSON:  Thank you.

8            THE COURT:  Mr. Davidoff's throw away lines and the

9    end of the presentation prompted two comments that emphasize

10   that there is actual prejudice to the clients that have moved

11   for what amounts to a comfort order.  These individuals Joseph

12   Arena, Roland Hansalik and George Barclay Perry are seeking a

13   comfort order to permit insurance proceeds to be utilized to

14   satisfy a fifteen million dollar award in an arbitration that

15   was conducted under the FINRA rules in which U.S. Airways was

16   the successful claimant.  I have actually reviewed the FINRA

17   arbitration award which was submitted to my chambers in time

18   for my review of people coming out here today.  And it appears

19   to be a legitimate copy of that arbitration judgment.

20           The State of New Jersey, through counsel, is the only

21   party objecting to what has become a fairly standard protocol

22   in these cases and in other large Chapter 11 cases, mainly

23   coming before the Court to obtain an order permitting insurance

24   proceeds to be used for the advance of defense costs or to

25   satisfy settlements or judgments in connection with individuals

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 42 of 69

Page 42

1    who are covered under officers and directors policies.

2          I don't need to decide the ultimate question which is

3    embedded in a motion of this sort which is whether or not these

4    proceeds are or are not property of the estate.  There seems to

5    be a general recognition on the part of those parties who have

6    moved for relief as well as on the part of -- that Mr. Etkin,

7    who spoke on behalf of the lead plaintiffs, that we're probably

8    not dealing with the property of the estate.  We are dealing,

9    however, with what he claimant's view as a wasting asset

10   because the policy limits in question are being used over time

11   to satisfy the needs of those who come ahead of others in the

12   queue.

13         The State of New Jersey, through its papers and in the

14   presentation just made by its counsel, tells a story of having

15   wasted time in an appellate process in the Third Circuit and

16   then being subjected to a stay in the District Court up the

17   street in which Judge Kaplan is managing multidistrict

18   litigation.  That's not my problem.  The fact that the State of

19   New Jersey is but one representative of what I assume to be a

20   whole host of third parties who may have claims that may

21   someday rise to the level of a claim that could be a claim

22   against proceeds of an insurance policy, is the rankest of

23   speculation in terms of having a right to these proceeds today.

24         The case authority presented in the motion and in some

25   of the supporting papers makes clear that, under applicable New

1    York law, this is a first come, first served issue.  In fact,

2    it promotes a race to judgment.  But that's what the law is.

3    The fact that the State of New Jersey may be waiting in the

4    wings with a claim that may not be subject to applicable

5    insurance coverage is a regrettable fact of life.  I question

6    whether or not New Jersey has actual standing under these

7    circumstances to appeal this judgment and I certainly question

8    whether or not there's the ability to somehow get this before

9    Judge Kaplan as a related matter.  But they're free to do so.

10   I'll enter the order.

11          MR. MILLER:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          MS. MARCUS:  Item 7 on the agenda, Your Honor, is the

14   motion of Merrill Lynch Portfolio Management, Inc and Merrill

15   Lynch Capital Services, Inc. to compel specific performance of

16   subordination agreement.  Mr. Barrett, I believe, will handle

17   that, initially.

18          MR. BARRETT:  Good morning, Your Honor.  Peter Barrett

19   from Kutak Rock on behalf of Merrill Lynch Portfolio

20   Management, Inc. and Merrill Lynch Capital Services, Inc.

21   Merrill Lynch entities have moved under 105 to compel the

22   debtors to comply with the terms of the so ordered stipulation

23   that's been entered in this case as well as the subordination

24   agreement between the parties.  I think initially, if it's okay

25   with Your Honor, there's a couple of housekeeping matters that

Page 44

1   I think may streamline the presentations.

2          First, based on the responses of the debtors and the

3   SIPA trustee, we will not be pursuing any sort of relief and

4   can confirm that we are not seeking a relief against LBI or the

5   SIPA trustee.  Second, of the purposes of this motion, Merrill

6   Lynch withdraws any request for tax and costs against the

7   estates or attorneys' fees.  And third, just to point out that

8   Merrill is not taking the position that any ruling on this

9   matter would prejudice the debtors or the committees with

10  regard to the other four properties that are part of this

11  entire transaction dealing with AHF.  A relief here will not

12  affect their rights.  We don't have relief from stay on those

13  properties.  We have not asked for their consent under the

14  subordination agreement and they have no duty to provide that

15  or to provide evidence of that consent.

16         So, with that out of the way, what we're asking the

17  Court to do is to direct the debtors to comply with the

18  subordination agreement and the so ordered stipulation.

19  Resolution of this motion now, we believe and we assert, will

20  benefit the estates.  We don't believe that any parties,

21  including Merrill or the estates, would benefit from prolonged

22  litigations.  Any proceeds of the sale of this project that

23  we're seeking, the Brampton project, are going to flow to

24  Merrill.  Merrill has over sixty-one million dollars in

25  principle balance outstanding on its bonds.  The most that

1    we're likely to get for this property is ten million dollars.

2            THE COURT:  Can I stop you for a second?

3            MR. BARRETT:  Yes.

4            THE COURT:  As I read the papers filed in opposition

5    to your motion -- and I think it would be good to deal with

6    some of these issues -- there's a threshold question as to

7    whether or not procedurally you can do this by motion instead

8    of by adversary proceeding because you're seeking what amounts

9    to a mandate of the court which is generally only available

10   on -- by bringing an adversarial proceeding.  So I'd likeyou to

11   comment on the procedural question.

12           Secondly, as we have discussed during the course of a

13   telephone conference, which I believe you participated in and

14   helped arrange several weeks ago --

15           MR. BARRETT:  Yes, Your Honor.

16           THE COURT:  -- I reviewed the subordination agreement

17   and, even before seeing the debtors' papers, had questions as

18   to whether or not, as a substantive matter, you were entitled

19   to relief in the first instance.  I'd like you to comment as to

20   why you're entitled to any relief.  And finally, why are you

21   here as opposed to being in a state court in Florida which is

22   best equipped to deal with the applications under Florida real

23   property law.

24           MR. BARRETT:  Your Honor, I'll address all of those.

25   First, the procedural issue.  Yes.  I am completely aware of

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 46 of 69

Page 46

1    the requirements of 7001. However, in this instance, we are

2    asking the Court, as a natural extension of it's so order

3    stipulation that was just entered, to direct the debtors to

4    comply with that.  We don't believe that there's any prejudice

5    to the debtors in this instance.  We also don't believe there's

6    any sort of due process violation.

7           Merrill is -- understands and is mindful of the status

8    of this case, the enormity of this Court's docket.  We're

9    trying to streamline presentation and, in fact, both the

10   debtors and the committee have, in the past, used motions to

11   compel in order to streamline relief from this case.  And the

12   debtors, they filed a motion to compel performance of Metavante

13   to comply with certain obligations.  And the committee filed a

14   motion of the committee to direct the examiner to comply with

15   the Court's order.  And just like Merrill in this case, they

16   were asking the Court for assistance in getting a party to the

17   case to comply with one of the Court's own orders.  I

18   understand that two wrongs don't make a right but I would

19   assert and hope that three might suggest a custom in the case.

20          Going to the substantive --

21          THE COURT:  Before you go to the next point --

22          MR. BARRETT:  Yes?

23          THE COURT:  -- I think there's a fundamental

24   distinction between seeking compliance with court orders that,

25   within their four corners, call for relief and seeking what

Page 47

1   amounts to specific performance of a state law subordination

2   agreement which, on its face, is either obscure or, frankly,

3   can be read completely opposite from the interpretation you're

4   seeking.  I read it as not providing for the relief that you

5   seek.

6           So for me to grant the relief that you seek, I would

7   need to conduct what amounts to a full evidentiary hearing in

8   the context of an adversary proceeding which included full

9   discovery.  I'm not in a position to do what you seek because I

10  don't think you're entitled to that relief.  Not only as a

11  matter of procedure but as a matter of substance.  So you have

12  an almost impossible argument to make right now.  What are you

13  going to say?

14          MR. BARRETT:  Your Honor, I felt, coming in here,

15  based on the telephone conference that it would be an uphill

16  battle and I'm --

17          THE COURT:  You're climbing a cliff.

18          MR. BARRETT:  Exactly, Your Honor.  And, Your Honor,

19  bullheaded or not, I'm happy to press on.  But I --

20          THE COURT:  It's up to you.

21          UNIDENTIFIED SPEAKER:  I would -- Your Honor, I would

22  like to attempt to convince the Court otherwise and I

23  understand that it's a hard attempt but we -- you know, wrongly

24  or not, we do not see the subordination agreement the same way

25  the Court sees it, the same way the debtors see it.

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 48 of 69

Page 48

1          THE COURT:  But see, since that's how I see it, you

2     can't win.  At least you can't win in this context.

3          MR. BARRETT:  I -- no, I --

4          THE COURT:  Both procedurally and substantively.

5          MR. BARRETT:  I understand that and I can try to

6     convince you otherwise.  I -- you know --

7          THE COURT:  The words -- the words aren't there.  I

8     don't --

9          MR. BARRETT:  But the -- Your Honor --

10          THE COURT:  The only way that's there is consent.

11          MR. BARRETT:  No.  No, no, no.  The first word that is

12     there is consent.  And it's -- what the -- whoops.  What the

13     subordination agreement says is that the debtor -- that the

14     debtor shall consent to any relief that AHF asks for.  What

15     they've asked for here is short sale.  They want the debtors'

16     relief -- consent to a short sale.  The only way you can

17     consent to a short sale is by providing releases.  You can't

18     consent to a short sale by saying I consent.  And by the way,

19     we've asked twice for their consent which they concede they

20     must give to us under the subordination agreement and we have

21     not get --

22          THE COURT:  I think you're going to need a Florida

23     court or some other court that's familiar with documents of

24     this sort and with Florida real property law to agree with you

25     that consent, as you have sought to interpret it, means the

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 49 of 69

Page 49

1   grant of a release.

2         MR. BARRETT:  Well, Your Honor, the first sentence

3   says consent, but what the second sentence -- the sentence

4   below that -- says is that those subordinate lenders need to

5   "do, execute, acknowledge, and deliver to Merrill, every such

6   further acts, deeds, conveyance and instruments."  And so, it's

7   not the first sentence.  It's not the consent that gets us

8   through release.

9         It's that we ask for the consent; they have to give it

10  to us.  Then we ask for evidence of that consent, and the

11  evidence of that consent is the release.  And so, what Merrill

12  has put before the Court is a request from AHF to do a short

13  sale, and the position that the only way to consent to a short

14  sale is by delivering that release.

15        THE COURT:  Regrettably, the transactional lawyer who

16  prepared this document either by design or through neglect and

17  oversight did not use the word "release".

18        MR. BARRETT:  Well, Your Honor, and I think --

19  respectfully, I think that that somewhat --

20        THE COURT:  The word "release" does not appear in the

21  document.

22        MR. BARRETT:  Well, Your Honor, I don't think that you

23  need to state a litany of fifty things that you can do --

24        THE COURT:  Lawyers do.

25        MR. BARRETT:  Lawyers do, but you don't need to.

1    Lawyers can --

2          THE COURT:  Lawyers could have said, "and it shall

3    release" --

4          MR. BARRETT:  But, well, sir -

5          THE COURT:  -- "upon a request of Merrill".  It

6    doesn't say that.

7          MR. BARRETT:  Certainly it doesn't say that, and in

8    hindsight, you are correct.  In hindsight, I'm sure whoever the

9    deal lawyer is kicking themselves for the language they've

10   drafted.  But drafting broad language and providing broad

11   relief doesn't mean that that language is ineffective.  It

12   doesn't mean that if you say in a deed of trust or a mortgage

13   that this of yours, all other indebtedness, that you need to

14   list out all in hundreds of the other indebtedness.  It applies

15   to everything.  And here they've said, that you need to --

16   shall give any and all of these further acts, deeds,

17   conveyances.  And that's what we're asking for, and we're

18   asking for them to comply.

19         THE COURT:  Okay.

20         MR. BARRETT:  I can tell you're convinced.

21         THE COURT:  You're not getting that relief from me

22   today.

23         MR. BARRETT:  I understand, Your Honor, but I

24   appreciate your time.

25         THE COURT:  Okay.  I don't know if the debtor wants to

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 51 of 69

Page 51

1    say anything in response.

2            MS. MARCUS:  Jacqueline Marcus, Your Honor, for the

3    debtors.  You've made all of my arguments, so thank you for

4    that.

5            THE COURT:  You're welcome.

6            MS. MARCUS:  I just wanted to clarify a couple of

7    points regarding the language in the subordination agreement.

8            First, with all due respect to Mr. Barrett, he didn't

9    read the whole second sentence.  The sentence that sets forth

10   the litany -- and I'll start in the middle -- "every such

11   further acts, deeds, conveyances, and instruments, as Merrill

12   or the trustee may request for the better assuring and

13   evidencing of the forgoing consent."  And that's critical,

14   because that's the limiting factor.

15           Secondly, Your Honor noted that the section does not

16   mention the word "release".  In fact, it does, but it mentions

17   it in a different context, and I think that leads to our firm

18   belief that people were thinking about releases.  The next

19   sentence talks about the subordinate lenders consenting to and

20   authorizing the release by the senior lenders or the trustee of

21   all or any portion of the project from the lien operation, and

22   in fact, of the senior mortgage documents.  So, within that

23   specific provision, the word "release" was mentioned.  It

24   simply wasn't mentioned in connection with the subordinate

25   lenders.

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 52

1          For all the reasons you alluded to, Your Honor, we

2     request that the motion be denied.

3          THE COURT:  The motion is denied.

4          MS. MARCUS:  Thank you, Your Honor.  Now, we turn back

5     to the beginning of the agenda to the uncontested portion.

6          Item number 1 on the agenda is the debtors' motion for

7     authorization to terminate and settle or reject certain pre-

8     petition derivatives contracts with trust for which U.S. Bank

9     National Association serves as indentured trustee and related

10    relief.  As indicated on the agenda, Your Honor, this is a

11    uncontested motion.  As the Court may recall, we filed a

12    similar motion back in December 2010, and the Court granted the

13    relief requested in that motion.

14         This motion is different in that it replies to

15    different types of derivatives contracts.  In support of the

16    current motion, the debtors have declarations of Robert Hershan

17    of Alvarez & Marsal, and Michael Trickey of Berkshire Partners,

18    and the affidavit of David Duclos of U.S. Bank.  Unless, the

19    Court has any questions, the debtors request that the Court

20    grant the relief requested in the motion, and enter the

21    proposed order.

22         THE COURT:  I don't have any questions, although I'm

23    just going to ask if anybody on behalf of U.S. Bank National

24    Association wishes to say anything.

25         MR. PRICE:  Your Honor, Craig Price, from Chapman and

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 53 of 69

Page 53

1    Cutler.  We're fine.

2          THE COURT:  I'm not sure if you could be heard,

3    because of your distance from the microphone.

4          MR. PRICE:  We have no comments.

5          THE COURT:  Okay.  I was offering you an opportunity

6    because I had read a recently filed affidavit suggesting that

7    there was some concern on the part of U.S. Bank that its

8    various beneficiaries and constituents be notified concerning

9    this course of conduct.  And the docket will speak for itself.

10   Anybody who wants to go to the docket will be able to do that.

11         Can you come back --

12         MS. MARCUS:  Craig?

13         THE COURT:  -- and simply repeat your name for the

14   record.  It didn't come through on the transcript.

15         MR. PRICE:  Craig Price from Chapman and Cutler.  We

16   have no comment.

17         THE COURT:  Okay.

18         MS. MARCUS:  Your Honor, I also might add that as set

19   forth in the -- I think it's in the affidavit of Mr. Duclos --

20   U.S. Bank did serve or did arrange to have -- I won't say

21   serve -- but did arrange to have copies of the motion provided

22   to the noteholders.

23         THE COURT:  That's fine.

24         MS. MARCUS:  Item number 2 on the agenda, Your Honor,

25   is the debtors' motion to amend the order establishing

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 54

1    procedures to restructure, make new or additional debt or

2    equity investments in, and/or enter into settlements and

3    compromises in connection with existing real estate

4    investments.  This matter was originally scheduled to be heard

5    at the June 15th hearing.  However, due to the fact that the

6    debtors were continuing to negotiate the terms of the revised

7    order with the ad hoc group, we adjourned the hearing to today.

8         Late yesterday, we agreed on the form of the proposed

9    order with the ad hoc group, and we filed a revised order last

10   night -- I apologize for the lateness of the hour -- together

11   with two blacklines:  one that marked the proposed order

12   against the proposed order that we filed with the motion, and

13   one that marked the proposed order against the first amended

14   order.  As a result of the resolution with the ad hoc group,

15   the motion is currently uncontested.  For the convenience of

16   the Court and other parties, however, I thought it might make

17   sense to very briefly summarize the changes that were made --

18   the salient changes.

19        First, we have added a new category -- and Your Honor,

20   would you like a copy, or do you have the cleaner -- the

21   blackline?

22        THE COURT:  I'll take a copy, sure.  Thank you.

23        MS. MARCUS:  First, we added a new category of

24   expenditures called "permitted expenditures", as to which the

25   debtors are permitted to expend funds without the need to

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 55 of 69

Page 55

1    provide notice to any party or obtain approval from the Court.

2         Permitted expenditures are, basically, two categories,

3    with some subcategories.  First, there are ordinary course

4    expenses required for the sound operation and management of a

5    property, and second there are protective advances that fall

6    into three categories.  First, to cure a superior loan default

7    in an amount up to and including five million dollars; second,

8    for real estate taxes and insurance premiums, and thirdly for

9    nondiscretionary or emergency properly related purposes.

10        Based on the discussions with the ad hoc group and the

11   creditors' committee, we have further agreed:  first, that the

12   protective advance to cure a superior loan default would be

13   limited to an individual payment of five million dollars, or

14   aggregate payments not in excess of five million dollars, with

15   respect to a particular property, over the proceeding six month

16   period.  In the event that the cure payments for a superior

17   loan default aggregate more than five million over that six

18   month period, than they shall be treated as a new investment

19   and subject to the procedures and thresholds for new

20   investments under the order.

21        Second, we have agreed to include quarterly reporting

22   as to certain permitted expenditures, namely those protective

23   advances for nondiscretionary or emergency property-related

24   purposes exceeding five million dollars, made by the debtors

25   during the prior three months, as well as the aggregate of all

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 56 of 69

Page 56

1    such protective advances made with respect to a particular

2    property if the aggregate exceed ten million dollars or any

3    multiple thereof.  The form of the reporting is included in the

4    proposed order.

5         We have changed the references to market-to-market

6    carrying value, which were used throughout the order to reflect

7    how the debtors and the creditors committee have actually been

8    operating, which is to use estimated recovery value.

9    Calculations for purposes of the reporting requirements will be

10   based on the estimated recovery values as of December 31, 2010,

11   which had been agreed upon by the debtors and the creditors

12   committee.

13        Next, the debtors will no longer need Court approval

14   for new investments greater than five million but less than

15   twenty-five million in connection with existing real estate

16   investments with a value greater than a hundred million.  That

17   provision was deleted because it was really superfluous, and

18   those investments were treated in other categories.

19        In connection with the reporting on new investments,

20   as provided in the first amended order, we have made two

21   modifications.  The debtors will provide a range of value with

22   respect to the relevant property that is consistent with the

23   threshold set forth in the procedures, so that people can

24   monitor our compliance with the procedures.  And rather than

25   including the city in which the property is located, the

08-13555-mg   Doc 18771   Filed 07/21/11   Entered 07/26/11 09:50:27   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 57 of 69

Page 57

1    debtors will identify the type of property using categories

2    consistent with those used by the debtors in their monthly

3    operating reports.

4          Finally, we have included the relevant defined terms

5    in the new order rather than cross-referencing the definitions

6    in the motion to make it easier for people to interpret the

7    order.  And we have made it clear that the term "real estate

8    investment" may apply to situations in which the debtors own a

9    particular parcel of real estate or a loan, and whether the

10   debtors' investment is owned directly or through a joint

11   venture, in which the applicable debtor has an interest.

12         In view of the fact that the sole objection to the

13   motion has been consensually resolved, Your Honor, the debtors

14   request that the Court grant the motion and enter the revised

15   proposed order.  I'm happy to answer any questions that you may

16   have.

17         THE COURT:  I don't have any questions.  I've reviewed

18   the papers, and I approve the motion.

19         MS. MARCUS:  Thank you, Your Honor.  The next item

20   will be handled by my partner, Alfredo Perez.

21         MR. PEREZ:  Good morning, Your Honor, Alfredo Perez on

22   behalf of the debtors.  Your Honor, the next motion is the

23   motion by the debtors to obtain approval to be able to

24   prosecute the various SunCal plans.  We've been before the

25   Court on this, Your Honor, several times.  There's no objection

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 58 of 69

Page 58

1    this time, but I wanted to give the Court a little bit of a

2    status report of where we are, the dates, and the timing.

3         In essence, Your Honor, the debtors filed their

4    original plans in the SunCal cases in September of '09.  Those

5    plans have been amended several times including as late as last

6    Friday, the third amended plans, which we filed on Monday.  In

7    essence, Your Honor, those plans call for -- in both what I

8    with the trustee, and the voluntary cases, in call the trustee

9    cases, pursuant to which we have an agreement which don't have

10   an agreement with the debtors, but we've negotiated with the

11   creditors committee for either LCPI or LBHI or Lehman ALI, the

12   respective debtor, getting a conveyance of the property, a

13   release, and -- pursuant to that, we would pay for various

14   costs associated with funding the plan, in connection with --

15   and the purpose for this particular motion is because the

16   amounts that we had sought last time have increased.

17        So, in connection with the involuntary plans, which is

18   over 1.1 billion of debt and approximately 350 million of

19   value, the amounts that we're seeking are at up to 55 million

20   dollars.  And with respect to the voluptuary cases, in which we

21   have loans totaling about 700 million dollars, and there's

22   about 100 million dollars of value, approximately 22 million

23   dollars to fund.

24        Your Honor, the disclosure statement hearings are set

25   for this Friday, July 22nd; confirmation hearing is currently

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 59 of 69

Page 59

1    scheduled for October 24th.  So, there's on a fairly quick

2    track to get up -- there's significant discovery which may or

3    may not affect those deadlines.  The only other thing Your

4    Honor, was that on June 8th, of this year, the Ninth Circuit

5    did have a -- conduct an oral argument with respect to the

6    initial motion that's been before this Court, as to the

7    applicability of the stay, and that is sub judice with the

8    Ninth Circuit since June of last year.

9            Your Honor, we received no objections.  The creditors

10   committee had some comments to the form of the order we filed,

11   an amended form of order last night, really by means of

12   clarification.  We did make one change.  When we originally

13   filed this motion in June it was the second amended plan.  Now,

14   we subsequently filed a third amended plan, so we've made those

15   types of correcting changes in the proposed form of order.  But

16   other than that, Your Honor, I don't have anything further to

17   say.

18           THE COURT:  There is one thing I noticed in the

19   proposed form of order.  There's a provision that the committee

20   shall have consent rights with respect to aspects of this

21   process.  That strikes me as unusual, and I'd like more

22   information on it.

23           MR. PEREZ:  Yes, Your Honor.  The -- to some extent,

24   they get consent rights on basically two things.  They get

25   consent rights if we're going to exceed, for any reason, exceed

Page 60

1    the caps or the amounts that we think are going to be involved.

2    And they also would get consent rights to the extent that there

3    are competing plans that are also on file.  The competing plans

4    were posed to not allow us to credit bid for the assets.  And

5    as the Court's aware, now we have -- we now have a Seventh

6    Circuit case which says you can't do that pursuant to a plan.

7    We have a Fifth and a Third Circuit case which say you can deny

8    credit bid rights.  To the extent that for some reason -- and

9    we don't think it's go -- it's likely to happen, but to the

10   extent, for any reason, the debtors' plans are approved and the

11   voluntary debtors have filed plans for both the voluntary and

12   the involuntary cases.  So they have, kind of, the same set of

13   plans that we have.  To the extent those are approved and our

14   credit bid rights are taken away, the creditors' committee

15   would have consent rights with respect to the amounts that we

16   would bid at any auction with respect to those assets.

17          Those are really the only two circumstances and they

18   involve, you know, discretionary expenditure that we would have

19   to evaluate at the time, based on litigation risk and all of

20   the other various problems.  And they've been an integral part

21   of the process.  We've had a -- you know, we've had extensive

22   discussion, we had a mediation.  The creditors' committee has

23   participated in all of the things and they've always been,

24   basically, at the table because this is a very high profile

25   and, you know, significant involvement for the Lehman estate.

Page 61

1           THE COURT:  This is a competing plan process in the

2    Central District of California.  Are there any rules of the

3    game that have been established as to the management of that

4    process?

5           MR. PEREZ:  Your Honor, there are -- I'm not quite

6    sure I know exactly what the Court is asking, but there are --

7    you know, there has been extensive pre-trial orders that are

8    entered, that have been entered with respect to the plan

9    process.  There is ongoing discovery.  There is, you know, as I

10   said, the -- this -- I guess, at least second hearing on the

11   amended disclosure statements is set for this Friday.  There's

12   a voting deadline, there's a rejection deadline.  So, there's a

13   process that's been planned out between now and the end of

14   October with respect to the plans, that is currently, you know,

15   still in effect as of this morning.  And I guess will, you

16   know, going forward.

17          THE COURT:  But as far as you know, these plans are

18   being promulgated on the same time table and are being proposed

19   to creditors at the same time?

20          MR. PEREZ:  Exactly, Your Honor.  They're both running

21   in parallel tracks.  The hearing on Friday is on our amended

22   motion to approve the Lehman voluntary debtor plan, the Lehman

23   trustee plan as well as all of the SunCal debtor plans and

24   disclosure statements.  So, yes, they're all running on the

25   same parallel track.

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 62 of 69

Page 62

1          THE COURT:  And I'm a little bit curious as to what

2     happened to the motion that was pending several months ago

3     seeking further intervention from this Court with respect to

4     alleged stay violations.

5          MR. PEREZ:  Your Honor, there was a hearing held

6     before the California Bankruptcy Court in which the California

7     Bankruptcy Court entered an order which I believe was filed in

8     this case in which it -- in which -- and I don't want to

9     characterize the hearing, but as a result of that order, we

10    decided to withdraw our motion.

11         THE COURT:  All right.  So it was not the result of

12    any consensual understanding reached with the voluntary debtors

13    in the SunCal cases?

14         MR. PEREZ:  Correct, Your Honor.

15         THE COURT:  All right.

16         MR. PEREZ:  It -- as a result of that, in abundance of

17    caution, we withdrew the motion.

18         THE COURT:  And I realize that I'm treading in an area

19    here where I probably should stay away.  But, is there any

20    process contemplated that might lead these highly litigated

21    cases to a consensual resolution as opposed to the rather

22    expensive path that you're on now, which is also fraught with

23    some risk and uncertainty?

24         MR. PEREZ:  Your Honor, there was a mediation that

25    occurred that resolved some of the issues.  I think that

Page 63

1    mediation process, while not active, it continues.  And I do

2    think that certainly from the standpoint of the debtor and the

3    committee I know, we are very hopeful that at some point there

4    will be a resolution that will resolve this and avoid, really,

5    the tremendous expense that's going to be incurred between now

6    and October 24th.  There are currently, probably thirty

7    depositions that have been either noticed or we've been told

8    that they're going to be going forward, plus document

9    discovery.  And so, there's very extensive litigation going on

10   in the -- in California.

11         THE COURT:  All right, thank you.

12         MR. ODONNELL:  Your Honor, Dennis O'Donnell, Milbank,

13   Tweed, Hadley & McCloy on behalf of the committee.  Just to

14   reiterate what Mr. Perez said, the committee has, as you

15   probably know, we -- has well been integral to this process,

16   has been involved with the SunCal process for some time.  And

17   the consent rights that are reflected in the order here are

18   consent rights that we've actually had all along.  We had

19   consent rights to the prior plan amounts as well.  And both the

20   debtors here and the debtors there understand that out, you

21   know, our involvement in consent and what happens out there is

22   important.

23         On the other point you raise, Your Honor, in terms of

24   consensual resolution, again, as I think Mr. Perez indicated,

25   we are a strong proponent at this point of finding some kind of

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 64

1    consensual solution here.  Because as he indicated, the process

2    out there looks to be, you know, far from resolution.  We do

3    have a confirmation hearing scheduled for October 24th; we have

4    side by side with that at this point a claims processor that

5    they have, in lieu of proceeding with their equitable

6    subordination complaints that have been subject of several

7    hearings here, that the SunCal debtors have commenced or filed

8    objections to our claims out there which essential mirror the

9    equitable subordination claims.  And that process is now going

10   forward simultaneously.  So, the, you know, the likely expense

11   and complications that could arise out of that dual process are

12   hard to predict at this time and if there's a way to resolve it

13   consensually, we have been urging the debtors to do so and have

14   also been speaking to other parties in the situation, hoping

15   that there is some way to get that done.

16          But in terms of the relief before the Court today, we

17   have no objection to it.  We have been involved in diligencing

18   the amounts involved, that the debtors' proposed to pay under

19   the two plans and will be involved in any decision with respect

20   to bidding, if the debtors -- and we think it's an unlikely

21   prospect, but if the debtors are ultimately required to bid in

22   the event that the SunCal plans are confirmed, we will be

23   involved in determining whether it makes sense to bid and at

24   what level they should bid.

25          THE COURT:  Okay, thank you.

Page 65

1          MR. ODONNELL:  Thank you, Your Honor.

2          THE COURT:  This is approved.

3          MR. PEREZ:  Thank you, Your Honor.

4          Your Honor, with respect to the Merrill motion, would

5    you like us to prepare and submit an order on that?

6          THE COURT:  I think in the interest of good order, you

7    should.

8          MR. PEREZ:  Thank you, Your Honor.

9          Your Honor, the next motion is Mr. Tillinghast's

10   motion, the ECCU.

11         MR. TILLINGHAST:  Good morning, Your Honor.  Edward

12   Tillinghast from Sheppard, Mullin on behalf of Evangelical

13   Christian Credit Union.

14         This is a motion to lift the stay in connection with

15   ECCU's first mortgage lien on a piece of property in Riverside,

16   California.  The — we submitted in connection with the motion

17   an affidavit from Michael Bobbit (sic) on one of their

18   appraisals showing the value of the property was 2.38 million;

19   the amount of ECCU's lien is -- senior lien is 6.6 million.

20   The debtor initially opposed the motion.  The committee joined

21   in the opposition and then subsequent to that, the debtor has

22   withdrawn their opposition.  So we have an order, unless Your

23   Honor has questions, granting the motion.

24         THE COURT:  It's now an opposed motion.

25         MR. TILLINGHAST:  Right.

Page 66

1          THE COURT:  So I don't have any questions.  Except --

2          MR. TILLINGHAST:  May I approach --

3          THE COURT:   -- except what happened?

4          MR. PEREZ:  Your Honor, Alfredo Perez on behalf of the

5     debtors.  Your Honor, this is one of the SunCal debtors,

6     Emerald (sic) -- and --

7          THE COURT:  Right, I read the papers.  And I'm

8     generally familiar with what's involved here.

9          MR. PEREZ:  Generally, Your Honor, we decided that

10    we -- that it didn't make any sense to fight the issue of the

11    marshalling twice.  So we're going to get -- we would have our

12    rights as a creditor on the property in California, our state

13    law rights to request marshalling and then we'll go to

14    California -- they haven't moved to lift the stay in

15    California.  We thought it was premature for them to come here

16    to lift the stay.  We're preserving all of our rights and when

17    and if they ever file a motion in California, we will make the

18    same arguments.

19         THE COURT:  Is this property, in one form or another,

20    to be the subject of the pending SunCal cases or is it a

21    separate matter?

22         MR. PEREZ:  I think it's a separate matter, Your

23    Honor.  Yeah, it's separate.

24         THE COURT:  It just happens to have the SunCal name

25    attached to it?

08-13555-mg    Doc 18771    Filed 07/21/11    Entered 07/26/11 09:50:27    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 67 of 69

Page 67

1          MR. PEREZ:  Well, it's one of the voluntary debtors,

2    but it is a separate matter just like we have the Pool One

3    debtors which are also SunCal, but really run very differently.

4    But it is --

5          THE COURT:  Is this not the subject of the voluntary

6    debtor joint plan or is it separate?

7          MR. PEREZ:  It is separate.  It's not the subject --

8          THE COURT:  All right, understood.  The motion is

9    granted as unopposed.  Do you have a disk?

10          MR. TILLINGHAST:  We can submit it -- I don't have one

11    with me, I'm sorry.

12          THE COURT:  Well, as you probably know, a piece of

13    paper like this is not worth the paper it's written on.

14          MR. TILLINGHAST:  I'll submit it to you, Your Honor.

15          MR. MILLER:  That concludes the calendar, Your Honor.

16          THE COURT:  Fine.  We are adjourned until 2 o'clock.

17          IN UNISON:  Thank you, Your Honor.

18    (Whereupon these proceedings were concluded at 11:22 AM)

19

20

21

22

23

24

25

Page 68

1

2                          I N D E X

3

4                          RULINGS

5                                         Page      Line

6   Motion for approval of stipulation, order     26        3

7   regarding Chapter 11 plans and stay

8   of related discovery, approved

9   Motion of Joseph Arena, Roland Hansalik,      43        10

10    George Barclay Perry for an order modifying

11    the automatic stay to allow payment of a

12    judgment under the directors and officers

13    insurance policies issued to the debtors,

14    approved

15  Merrill Lynch's Motion to compel specific     52        3

16    performance of subordination agreement

17    terms, denied

18  Debtors' Motion to amend the order            57        18

19    establishing procedures, approved

20  Debtors' motion regarding SunCal, granted     65        2

21  ECCU motion for relief from stay, granted     67        9

22

23

24

25

Page 69

1

2                    C E R T I F I C A T I O N

3

4    I, Ellen S. Kolman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Ellen          Digitally signed by Ellen Kolman
                    DN: cn=Ellen Kolman, o, ou,
                    email=digital1@veritext.com,
     Kolman        c=US
                    Date: 2011.07.21 15:09:37 -04'00'
8    _____

9    ELLEN S. KOLMAN (CET**D-568)

10   AAERT Certified Electronic Court Transcriber

11

12   Also transcribed by: Zipporah Geralnik (CET**D-489)

13                        Karen Schiffmiller (CET**D-570)

14                        Sara Davis (CET**D-567)

15

16   Veritext

17   200 Old Country Road

18   Suite 580

19   Mineola, NY 11501

20

21   Date:  July 21, 2011

22

23

24

25