Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - -x

4   In the Matter of:

5   LEHMAN BROTHERS HOLDINGS, INC., et al.,     Main Case No.

6           Debtors.                            08-13555-jmp

7   - - - - - - - - - - - - - - - - - - - - - - - - - -x

8   In the Matter of:

9   LEHMAN BROTHERS, INC.,                      SIPA Case No.

10          Debtor.                             08-01420-jmp

11  - - - - - - - - - - - - - - - - - - - - - - - - - -x

12  In the Matter of:

13      EUROPEAN CREDIT MANAGEMENT LIMITED, et al.,

14          Plaintiffs,

15          v.                                  Adv. Pro. No.

16      LEHMAN COMMERCIAL PAPER, INC.,          09-01262-jmp

17          Defendant.

18  - - - - - - - - - - - - - - - - - - - - - - - - - -x

19  In the Matter of:

20      PULSAR RE LTD.,

21          Plaintiff,                          Adv. Pro. No.

22          v.                                  11-01283-jmp

23      LEHMAN BROTHERS HOLDINGS, INC., et al.,

24          Defendants.

25  - - - - - - - - - - - - - - - - - - - - - - - - - -x

Page 2

1

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

3   In the Matter of:

4       PT BANK NEGARA INDONESIA (PERSERO) TBK,

5            Plaintiff,                          Adv. Pro. No.

6            v.                                  09-01480-jmp

7       LEHMAN BROTHERS SPECIAL FINANCING, INC., et al.,

8            Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10   In the Matter of:

11      KING,

12           Plaintiff,                          Adv. Pro. No.

13           v.                                  11-01875-jmp

14      LEHMAN BROTHERS HOLDINGS, INC., et al.,

15           Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

17

18               U.S. Bankruptcy Court

19               One Bowling Green

20               New York, New York

21

22               July 20, 2011

23               2:03 PM

24

25

Page 3

1

2    B E F O R E :

3    HON. JAMES M. PECK

4    U.S. BANKRUPTCY JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1

2    PRE-TRIAL Conference (Adv. 09-01262)

3

4    PRE-TRIAL Conference (Adv. 11-01283)

5

6    PRE-TRIAL Conference (Adv. 09-01480)

7

8    PRE-TRIAL Conference and Debtors' Motion to Stay Adversary

9    Proceeding (Adv. 11-01875)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sara Davis

Page 5

1

2    A P P E A R A N C E S :

3    WEIL GOTSHAL & MANGES LLP

4          Attorneys for Debtors

5          767 Fifth Avenue

6          New York, NY 10153

7

8    BY:   RICHARD L. LEVINE, ESQ.

9          ZAW WIN, ESQ.

10

11   KLESTADT & WINTERS LLP

12         Attorneys for Novastar Financial, Inc.,

13          Overstock.com, Inc.

14         570 Seventh Avenue, 17th Floor

15         New York, NY 10018

16

17   BY:   JOHN E. JURELLER, JR., ESQ.

18

19   KIRKLAND & ELLIS LLP

20         Attorneys for Pulsar Re

21         555 California Street

22         San Francisco, CA 94104

23

24   BY:   MARK E. MCKANE, ESQ.

25

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  Be seated, please.  Good afternoon.

3            First matter is European Credit Management Limited.

4            MR. LEVINE:  Yes, good morning, Your Honor.  This is a

5    pre-trial conference.  In addition, the debtors have requested

6    permission to move for summary judgment.  The good news is that

7    the parties have had discussions -- it's on a little bit of

8    good news.  And if Your Honor is agreeable, the plaintiffs have

9    withdrawn their objection to a summ -- to having a summary

10   judgment briefing schedule.

11           Just as background, this is a case where the

12   plaintiffs were holders of participations under the English

13   forum, which the debtors, throughout these cases, have

14   distinguished from the American version.  In the English forum,

15   the participant simply has a debtor-creditor relationship with

16   the partici -- with the grantor here, among the Lehman debtors

17   and did not have an equitable interest in the underlying loan.

18   While the debtors early in this case moved for permission to

19   elevate participations under the U.S. form, the LSTA forum,

20   because that did give participants an equitable interest in the

21   underlying loan, the debtors have not taken the same position

22   with respect to the English version, the LMA version.

23           And what the plaintiffs here are seeking is specific

24   performance of elevation request, to actually have themselves

25   substituted in as the lender of record pre-petition -- they

Page 7

1    sent the request in pre-petition.  The debtors did not honor

2    those requests and the issue -- the primary summary judgment

3    issue is whether, as a matter of English law, an English court

4    would grant specific performance.  We think while the -- not

5    surprisingly, the competing experts -- legal experts disagree

6    about what the English court will do, for us, that leaves a

7    legal issue as to whether or not, should they prove their

8    breach of contract, they would even be entitled to specific

9    performance.  Because if they're not, then they have a claim

10   for breach of the participation agreement itself which the

11   debtors don't dispute and the fact that they did not elevate

12   does not impact what their damages claim would be.

13         So, either they're entitled to their performance, in

14   which case they effectively would get 100 cents on the dollar,

15   or they're not and they would get bankruptcy dollars on the

16   claim.  And we want to, with Your Honor's permission, we will

17   negotiate a fairly short-term briefing schedule on the summary

18   judgment motions and go from there.

19         MR. JURELLER:  Good afternoon, Your Honor.  John

20   Jureller from Klestadt & Winters.  We agree with what Mr.

21   Levine says, with the opposite opinion, obviously.  But after

22   discussing it today, we met and conferred and we believe that

23   going forward on the summary judgment may be the way to go

24   here.

25         The issue that is being brought up is a legal issue.

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 8 of 33

Page 8

1   We may, in our opposition, ask the Court as well for summary

2   judgment.  We'll see what they say at this point, but we're

3   ready to go forward with that as long -- the short briefing

4   schedule, as well.

5           THE COURT:  So, do I understand that you're looking

6   for permission, should you choose to decide to do this, to

7   bring your own cross motion for summary judgment?

8           MR. JURELLER:  Yes, Your Honor, that would be correct.

9           THE COURT:  Okay.

10          MR. LEVINE:  We have no opposition, obviously, Your

11  Honor.

12          THE COURT:  I read the letters that you each submitted

13  on this subject and I think you came to the right result

14  because I would have permitted the filing of a summary

15  judgment.  So you've reached a good agreement.

16          MR. LEVINE:  Thank you, Your Honor.

17          MR. JURELLER:  Appreciate it.

18          MR. LEVINE:  So we will submit a proposed schedule,

19  Your Honor?

20          THE COURT:  That's fine.  I'm not suggesting that this

21  is going to be an element of the process, but in certain

22  circumstances in the recent past, I have conducted limited

23  evidentiary hearings with respect to matters that have been

24  controverted in summary judgment motions; Bank of America is

25  one example you may be familiar with.  There's another case

Page 9

1   unrelated to Lehman where I conducted an evidentiary hearing

2   last May for two days, which is sub judice.  I'm not suggesting

3   that that will be required here, but I'm a little bit concerned

4   about the conflicting opinions of English legal authorities and

5   how those conflicts can be addressed simply on papers.  Do you

6   have --

7          MR. LEVINE:  No, Your Honor --

8          THE COURT:  -- any thoughts --

9          MR. LEVINE:  -- that makes perfect sense.

10         THE COURT:  -- on that?

11         MR. LEVINE:  And, frankly, obviously, both sides will

12  be, I'm sure, prepared to bring their English law experts to

13  this courtroom so Your Honor can hear their testimony live and

14  ask whatever question you have.  That's beyond any factual

15  issues.

16         THE COURT:  It's either that or we all go to London.

17         MR. LEVINE:  Well, we've done that --

18         MR. JURELLER:  We've done London and it's beautiful.

19         MR. LEVINE:  And we're happy to go back.

20         THE COURT:  I'll bet you are.

21         No, I assume that the experts will come here.  And --

22  if required.  And we'll just see where that takes us.

23         What's your current thinking on the schedule that

24  you're talking about?

25         MR. LEVINE:  I think we're talking about having the

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 10 of 33

Page 10

 1    motions due sometime in September; my associate actually just

 2    left the country because her mother had surgery, so I have to

 3    figure out when she's back and work that around my vacation.

 4    Well, now I think we're talking about the motions being due in

 5    early September.  Somewhere around there.

 6            MR. JURELLER:  Having all the motions complete -- we'd

 7    like to have a hearing if we could, sub pars (sic), at the

 8    latest, towards the end of October, if possible.  But we can

 9    sit down and talk about it as timing and see how it fits into

10    your court calendar.

11            THE COURT:  What you're really talking about then is

12    having oral argument on the motion for summary judgment

13    following briefing some time in, perhaps, late October?

14            MR. LEVINE:  If we can get it done, yes, Your Honor.

15            THE COURT:  Fine.  I mean, I'm not committing to

16    October at this moment, but if that's in fact doable and

17    everything is complete and there's no need for reply briefs and

18    there's no need to further controvert whatever the opinions are

19    that are being expressed and we can do this in a relatively

20    straightforward way, that's fine.  But I leave open the

21    possibility that it may not be as neat as all that.

22            MR. LEVINE:  I understand, Your Honor.  And since we

23    just kind of agreed in the last few minutes as to what we

24    would -- they withdraw -- they would withdraw their objection

25    to the motion for summary judgment and reserve the right to

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 11 of 33

Page 11

1    make their own motion, we haven't really sat down and worked

2    out the schedule.

3              THE COURT:  Fine.  And I recognize that it may be that

4    with the summer and the holidays, that there may be some delays

5    and that's fine.

6              MR. LEVINE:  Thank you, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              IN UNISON:  Thank you, Your Honor.

9              THE COURT:  The next one is Pulsar Re.

10             MR. LEVINE:  Your Honor, this one is mine, too.

11   Again -- actually, I didn't introduce myself last time.  It's

12   Richard Levine from Weil, Gotshal for the debtors.

13             THE COURT:  Mr. McKane, how are you?

14             MR. MCKANE:  Very good, Your Honor.  It's good to see

15   you.  Mark McKane of Kirkland & Ellis on behalf of Pulsar.

16             MR. LEVINE:  Your Honor, this is a status conference

17   and an adversary proceeding.  The plaintiff submitted a letter

18   to Your Honor Monday afternoon which we have not had an

19   opportunity to respond to in writing.  Just a thumbnail

20   background on this one, Your Honor.  The plaintiffs filed their

21   complaint in late January, they served it in late February.

22   The debtors -- it's LBHI and LCPI, filed a motion to dismiss

23   thirty days later on March 25th.  The plaintiffs in response to

24   the motion to dismiss determined that instead of opposing the

25   motion to dismiss, they would file an amended complaint seeking

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 12 of 33

Page 12

1    to address the issues raised in the motion to dismiss.  Shor --

2    we worked out a briefing schedule on -- or a deadline for the

3    amended complaint and a briefing schedule which was in a

4    stipulated order Your Honor approved.  Subsequently, the

5    plaintiffs determined that they wanted to cite certain

6    documents in their proposed amended complaint -- we haven't

7    seen the proposed amended complaint, but the one they were

8    working on which they had obtained in discovery in the Bermuda

9    proceeding of Lehman Re.  And they -- but they were subject to

10    an applied order of confidentiality in that proceeding and,

11    again, we agreed to a schedule where their amended complaint

12    would be due thirty days -- is it thirty or is two weeks -- I

13    guess it's two weeks after, fourteen days after the Bermuda

14    court issues its order on their request for relief from this

15    implied confidentiality obligation.  That Bermuda proceeding is

16    still ongoing.  The debtors' position is that the plaintiff

17    should not be allowed to use discovery they obtained in Bermuda

18    in order to frame a complaint here.  There is currently no

19    operative complaint; there is -- because of the one we moved to

20    dismiss against has been effectively withdrawn in favor of a

21    to-be-filed amended complaint; there's no document request that

22    has been served; there's no motion before the Court; there's no

23    application other than the letter of two days ago.  In Bermuda,

24    what6 happened is that before this application was filed,

25    Lehman Re had sought from the U.S. debtors various records that

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 13 of 33

Page 13

1   had been maintained in New York related to the business of

2   Lehman Re.  Instead of incurring the time and cost to review

3   the documents, Your Honor, thousands of accounting records, the

4   debtors and Lehman Re entered into what was effectively a

5   confidentiality agreement whereby the debtors were able to just

6   download thousands of documents to Lehman Re under a

7   confidentiality provision.  And these documents included both

8   documents that only related to the Lehman Re, which Lehman Re

9   really was entitled to, but it also included financial records

10  that included information about other debtors, which Lehman Re

11  had no right to, but the debtors made a determination that it

12  wasn't worth the expense to the estate to have lawyers or

13  accountants pore through these documents and redact, you know,

14  two-thirds of the page that related to other debtors or other

15  Lehman entities and instead, under this confidentiality

16  agreement, the documents were just sent down to the joint

17  provisional liquidators in Bermuda to do what they wanted to

18  but under a confidentiality agreement and the debtors never

19  invested time or resources in reviewing these documents.

20          Subsequently, in a Bermuda proceeding, which as I

21  understand -- Mr. McKane can obviously elaborate, where Pulsar

22  Re, the plaintiff in this proceeding here in Your Honor's

23  court, is contesting the use of certain funds by Lehman Re

24  where the money supposedly went to invest in an acquisition,

25  Congress Life.  Pulsar Re obtained the order of discovery from

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 14 of 33

Page 14

1    the Bermuda court which required the joint provisional

2    liquidators of Lehman Re to produce voluminous documents which

3    included the documents that had been passed along from the

4    debtors to Lehman Re.  The debtors, once again, had an

5    opportunity to object to their production in the Bermuda

6    proceeding, but, again, because it was for purposes of the

7    Bermuda proceeding, the debtors made a decision that, again,

8    wasn't worth the debtors' time or expense to do a careful

9    review and did not object to the production by Lehman Re of the

10   debtors' documents -- or documents which included debtor

11   documents to Pulsar Re.

12          Pulsar Re is now seeking to have access to those

13   documents for use in the instant adversary proceeding from the

14   Bermuda court.  The debtors have taken the position that to the

15   extent that they're entitled to these documents, whether

16   they're the documents that originally came from the debtors or

17   even documents that they've obtained from Lehman Re which were

18   pure Lehman Re documents, they should have to get them through

19   the discovery procedures applicable in the U.S., in this Court,

20   and they should not be -- and they should not be able to use

21   those documents to try to frame a complaint when they haven't

22   yet been able to do so.

23          The debtors have, multiple times, asked counsel for

24   Pulsar Re to itemize exactly what documents they want to use in

25   the amended complaint on the theory that it may turn out that

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 15 of 33

Page 15

1    we don't really care and why go through the big fuss, but

2    they've declined to do so on the theory that they want to be

3    able -- it's not just the documents that they might use and I

4    would guess it's only a handful for purposes of a complaint,

5    that they want to have free access to these documents

6    throughout the litigation and therefore they're unwilling to

7    give us a list.  And we've asked for that here in the U.S., our

8    Bermuda counsel's asked their Bermuda counsel for it and

9    counsel for Lehman Re has asked them for the list, and they've

10   declined to give it.  So that issue is still being litigated

11   before the Bermuda court.

12        They've now asked Your Honor by the letter of two days

13   ago to order us to simply turn over, in the absence of any

14   discovery request, in the absence of an operative complaint,

15   the three CDs of documents the debtors originally provided to

16   Lehman Re and they want short term discovery getting started,

17   even though we haven't yet even seen an amended complaint.

18        Just to give a little context, as we understand Pulsar

19   Re's claim, it's that Pulsar Re entered into a contract with

20   Lehman Re, not any of the U.S. debtors, to re-insure some of

21   Lehman Re's insurance obligations.  there was a separate

22   contract pursuant to whi -- again, which none of the debtors

23   were parties to; this is a contract between Pulsar Re, Lehman

24   re and LBI, pursuant to which any monies that Pulsar Re had to

25   advance to Lehman Re as collateral for Pulsar Re's reinsurance

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 16 of 33

Page 16

1    obligations were to be held in a segregated account by -- at

2    LBI.

3              The claim is that Lehman Re, not any debtor, breached

4    those contracts by instead of depositing the funds in a

5    segregated or custodial account with LBI, used them to invest

6    in repurchase -- purchase agreements with U.S. debtor.  And

7    they're claiming that the securities that were sold under the

8    repurchase agreement by the U.S. debtors back to Lehman Re were

9    not worth what they should have been and then there's a

10   shortfall.  And so they're seeking to have a constructive trust

11   imposed over the monies that Lehman Re invested with the U.S.

12   debtors under the repurchase agreements.

13             We have bunches of issues with this.  Number one, the

14   same claim, the assertion that the U.S. debtors owe monies back

15   to Lehman Re because the securities that were provided under

16   the repurchase agreement were to not have sufficient value,

17   there's a claim that's being pursued by Lehman Re.  I mean,

18   this is a contract between Lehman Re and the U.S. debtors where

19   a claim has been filed by Lehman Re and the debtors and Lehman

20   Re, which is obviously under a separate reorganization

21   proceeding or liquidation proceeding under -- in Bermuda, on

22   being under the control of joint provisional liquidators who

23   are unrelated to the U.S. debtors or Alvarez & Marsal or anyone

24   here --

25             THE COURT:  Well, just so it's clear that you know and

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
Pg 17 of 33
LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 17

1    it's on the record of this pre-trial.  Lehman Re is a Chapter

2    15 debtor and that case is assigned to me and the --

3              MR. LEVINE:  That's right, Your Honor --

4              THE COURT:  -- Cadwalader firm --

5              MR. LEVINE:  -- and Your Honor entered --

6              THE COURT:  -- the Cadwalader firm represents the

7    joint provisional liquidators here.

8              MR. LEVINE:  Sorry?

9              THE COURT:  I said on a -- Cadwalader firm --

10             MR. LEVINE:  That is correct.

11             THE COURT:  -- represents the joint --

12             MR. LEVINE:  And Your Honor entered an order --

13             THE COURT:  -- provisional --

14             MR. LEVINE:  -- recognizing the foreign --

15             THE COURT:  -- liquidators.

16             MR. LEVINE:  -- main proceeding.

17             THE COURT:  Okay.

18             MR. LEVINE:  That is correct, Your Honor.

19             So the debtors' position is that to the extent there

20   is a claim, it belongs to Lehman Re, not to Pulsar Re.  The

21   debtors had no contractual relationship with Pulsar Re and even

22   if they could allege facts that would, in some other

23   circumstance, warrant piercing the corporate veil, there's no

24   need to do that because Lehman Re under its current

25   organization is pursuing those very claims.

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 18 of 33

Page 18

 1          We also, obviously, note that constructive trusts are

 2    disfavored in bankruptcy; that they're going to have, we think,

 3    impossible issues of tracing.  So --

 4          THE COURT:  You're not arguing your motion to dismiss,

 5    are you?

 6          MR. LEVINE:  Well, I am in the sense of what the

 7    plaintiffs are seeking is discovery prior to filing an amended

 8    complaint and we obviously think that one of the considerations

 9    Your Honor might want to take into account is that we think

10    they're going to have a real hard time framing an amended

11    complaint that could survive a motion to dismiss.

12          THE COURT:  So this is a preemptive second motion to

13    dismiss the complaint that they haven't been able to frame?

14          MR. LEVINE:  Exactly, Your Honor.

15          THE COURT:  Got it.

16          MR. MCKANE:  It's always nice to have counsel frame

17    the issue for you, I guess.

18          Your Honor, Mark -- again, for the record, Mark McKane

19    of Kirkland & Ellis on behalf of Pulsar Re.  We sent in a

20    letter to your chambers on Monday to frame two issues for this

21    case management, Your Honor.  One is a use issue.  The other is

22    a confirmation procedure.  Given the prelude and framing that

23    debtors' counsel brought up, I'd like to explain the case from

24    our perspective.  I -- one thing I would note that is important

25    is the timing and the time line here.  Because we did file a

1    complaint over five months.  It has not been withdrawn.  In an

2    effort to move the case forward, we agreed to amend to address

3    the Twombly-type arguments that are being raised by the -- this

4    alleged insufficiency of the specificity of the allegations.

5    but it absolutely has been not -- absolutely not been

6    withdrawn.  There is an operative complaint in this case and

7    that's why we're here on a case management conference.

8            But what is the case?  It is not a restatement of the

9    Lehman Re cause of action.

10           THE COURT:  let me break in and ask you a question.

11           MR. MCKANE:  Yes.

12           THE COURT:  I read your letter and I also read the

13   attachment which was a declaration out of the London office of

14   Sidley & Austin.

15           MR. MCKANE:  Right.

16           THE COURT:  Why are you not briefing and arguing the

17   original motion to dismiss?  That's question one.

18           MR. MCKANE:  Sure.

19           THE COURT:  And question two, why are you entitled to

20   any discovery to assist in framing an emended complaint if

21   that's what you're seeking to do?

22           MR. MCKANE:  All right, let me address the second

23   issue first.  All right.  We're not seeking discovery because

24   we already have the disks.  We're see -- the disks have been

25   provided.  The disks that we're discussing today have been

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 20 of 33

Page 20

1      provided by Lehman Re in discovery in a Lehman Re proceeding

2      down in Bermuda --

3              THE COURT:  Let me stop you for a second.

4              MR. MCKANE:  Sure, go ahead.

5              THE COURT:  If you have the disks and you have the

6      documents, then the only issue becomes your freedom without

7      violating in part confidentiality in Bermuda to use those

8      documents.  Have you prepared, on the basis of the documents

9      that you have already reviewed, an amended complaint?

10             MR. MCKANE:  Yes.  It is being reviewed now by the

11     client and the only thing that we are here -- we didn't think

12     we'd have to raise this in front of Your Honor because we had

13     hoped that the Bermuda proceeding would be more advanced than

14     it is right now.  The only reason we don't have a ruling from

15     the Bermuda proceeding was in Bermuda, the judge allowed for

16     additional time to hear objections from LBHI about the use of

17     those documents here.  At the original hearing, the court was

18     inclined to grant our limited request and say that Your Honor

19     could call balls and strikes as to how the documents should be

20     used in this proceeding given it's your forum.  And

21     unfortunately, because of the delays to allow LBHI to better

22     flesh out what its arguments may be, the case was -- the

23     hearing was continued.  It's now not scheduled until the end of

24     August.  We wanted to use this opportunity to come forward to

25     Your Honor and say all we are dealing with now is a use issue.

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 21

1   And if the easiest way to cut through that use issue is to have

2   those same disks that we already have and have already reviewed

3   and have an amended complaint ready to go, provided again here

4   in this proceeding, then that just may be the most practical

5   solution.

6           THE COURT:  Well, I -- it's kind of circular because

7   those disks are effectively black boxes to me.  I don't know

8   what's on them and I don't know what, if any, use you're

9   actually making of the documents on the disk in connection with

10  the preparation of your amended complaint.  So, it may well be

11  that the documents in foreign delegations but are not attached

12  or directly referred to in the amended complaint, in which case

13  it may be perfectly fair use and being able to demonstrate to

14  the Bermuda judge it's an appropriate hearing, here's a copy

15  ofan amended complaint we've prepared using some documents, we

16  didn't attach any copies, we don't believe this file lets any

17  implied confidentiality, out of an abundance of caution, we

18  seek your permission to use this form of amended complaint in

19  New York.  Any problem, Judge?  And the judge will either say

20  yes or no.

21          MR. MCKANE:  Your Honor, it's a little more than that

22  in this regard.  In the Bermuda proceeding, when Lehman Re

23  turned over the documents to us, all the U.S. debtors, all the

24  debtors, had an opportunity to object.  None of them objected

25  to that at that time, so LBHI and LCPI, the defendants in this

Page 22

1    case, did not object to turning them over to Pulsar.  Knowing

2    what they know now, with all the allegations that they make now

3    which -- it's too burdensome to review them, these aren't mass

4    immaterials (sic).

5             The amended complaint, as drafted, it definitely

6    informs the allegations.  it is the -- but there're also

7    specific references to communications between LBHI personnel

8    and Lehman Re personnel about our property, our collateral and

9    how it was taken out of Lehman Re, through a reverse repo,

10   about which we are not a party, and how it was then ushered up

11   to New York to address the liquidity concerns and issues that

12   the Lehman overall, global Lehman, was facing in 2008.  We had

13   450 million dollars of available liquidity and what we've been

14   able to determine through the production that we received in

15   Lehman Re as we are proceeding parallel actions in Bermuda and

16   in New York to recover our property was that there was an

17   aggressive effort to get our cash, our collateral out of

18   Bermuda and into New York to address the liquidity crisis.  And

19   we wanted, in the amended complaint, not just in form, as to

20   why we think a constructive trust is appropriate, but we do

21   quote in the amended complaint in its current form, those

22   proceedings.

23            The reason why we didn't want to come forward and just

24   say here's the handful of documents we intend to use here is,

25   the one thing we've learned about Bermuda proceedings, is they

Page 23

```
 1    take a lot of time.  And we don't want to be in a situation

 2    where we have to go back to Bermuda at every stage where we

 3    want to make reference to a document that was previously turned

 4    over as part of the Lehman Re proceedings.  We just want to get

 5    confirmation for use of that contained, you know, set of

 6    materials that LBHI had turned over and did not object to

 7    providing us in the first places --

 8              THE COURT:  I don't see --

 9              MR. MCKANE:  -- so we could use them here.

10              THE COURT:  Mr. McKane, I don't see how you can

11    shorthand that process here.  It seems to me that the issue

12    that confronts you, if I understand it correctly, is the

13    avoidance of potential liability or sanctions in the Bermuda

14    proceeding as a result of the improper use of materials that

15    were turned over to you in a particular context.  And it seems

16    ot me that since that context was the Bermuda proceeding, the

17    only place where you can get comfort is Bermuda.  if what you

18    are seeking here is some kind of workaround in which I will

19    provide you the functional equivalent of the very same

20    documents you've already seen by saying it's as if they've been

21    turned over in this proceeding, I am not aware of any procedure

22    that would allow me to do that, nor do I think it would be

23    appropriate for me to do it.

24              There is already pending, as I understand it, a

25    proceeding which has been listed for hearing in August in the
```

Page 24

1    Bermuda court and I have no intention of undermining the

2    authority of that proceeding or that court or giving you what

3    amounts to the comfort that you seek here through a separate

4    means.

5            MR. MCKANE:  And Your Honor --

6            THE COURT:  Do I misunderstand this?

7            MR. MCKANE:  Well, a couple things.  We're not asking

8    for a special workaround or a comfort ladder or anything along

9    those lines.

10           THE COURT:  Aren't you asking me to say that it's

11   perfectly fine for the debtor to in effect turn over the same

12   documents to you here so that you're getting what amounts to a

13   second set of the very same documents?  Thereby giving you the

14   ability to say hey, we're not using your documents, we're doing

15   a duplicate set in New York.

16           MR. MCKANE:  Your Honor, we are asking for the same

17   disk, but this is a -- the initial case -- you asked for what

18   authority you have to allow for this type of proceeding to go

19   forward.  This is just discovery in an adversary proceeding

20   under Rule 26 --

21           THE COURT:  This isn't exactly discovery in an

22   adversary proceeding.  Procedurally we are at the -- we haven't

23   yet got a complaint stage.  We're at the -- the complaint has

24   been filed, a motion to dismiss has been lodged with respect to

25   that complaint.  I understand -- unless you want to correct the

Page 25

1    record -- that there was a decision made by your firm as

2    counsel for the plaintiff here not to fight the motion to

3    dismiss, but rather to file an amended complaint in response to

4    the motion to dismiss.  And we're really fussing with the form

5    of that amended complaint and whether or not you have authority

6    to file it in its present form, given that it is something

7    based on documents that you obtained in another context in

8    Bermuda.

9            I think I understand the setting, but to say that this

10   is something that's just governed by discovery rules is to

11   whitewash it.  This is, in effect, discovery in aid of your

12   ability to file an amended complaint.  And you already have a

13   proceeding in place in Bermuda to obtain permission.

14           MR. MCKANE:  I understand the Court's direction, and I

15   understand the message that you giving me.  I simply wanted to

16   spell out that we weren't asking for something untoward or

17   inappropriate.  In an initial case management conference when

18   you have the ability under Rule 26(f) to allow discovery to go

19   forward here, we thought this might be the easiest way to

20   advance the case forward.  That's the only reason we're here

21   today is --

22           THE COURT:  Okay.

23           MR. MCKANE:  -- we're in a situation where we want to

24   advance the case forward, and if the clear message --

25           THE COURT:  Let me then make it absolutely clear.  The

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 26 of 33

Page 26

```
 1    answer is no.

 2            MR. MCKANE:  Understood.  If the clear message of this

 3    Court is I'll see you when you're done with Bermuda --

 4            THE COURT:  Right.

 5            MR. MCKANE:  -- we understand that, and I look forward

 6    to seeing you in the fall.

 7            THE COURT:  Okay.  Have fun in Bermuda.

 8            MR. MCKANE:  Thank you.

 9            MR. LEVINE:  Thank you, Your Honor.

10            Your Honor, it's my understanding -- unless someone

11    corrects me -- that the next item on the agenda has been

12    adjourned, PT Bank Negara Indonesia v. Lehman Brothers Special

13    Financing matter.  Raise up -- Metavante (ph.) has been

14    adjourned --

15            THE COURT:  I was told that one had been adjourned as

16    well.

17            MR. LEVINE:  Okay.  So my colleague Zaw Win is going

18    to represent the debtors with respect to item number 11 on the

19    agenda.

20            MR. WIN:  Good afternoon, Your Honor.  Zaw Win, Weil,

21    Gotshal & Manges on behalf of the debtors.

22            The last item on the agenda today is the adversary

23    proceeding King v. Lehman Brothers Holdings Inc., case number

24    11-01875.  This is a status conference and also the debtors

25    have a motion on file to stay the adversary proceeding.
```

1          THE COURT:  Is Melissa King present in court or is she

2     present on the telephone?  Apparently she's not present.  Did

3     she have actual notice of today's status conference?

4          MR. WIN:  We sent the agenda to the address that she

5     had listed on her pleadings.  Subsequently, we saw a pleading

6     that she filed in her bankruptcy in Georgia listing a different

7     address.

8          THE COURT:  I saw a Pasadena, California address on

9     one of the pleadings.

10         MR. WIN:  Yes.  So we provided the notice to the

11    Georgia address; that was the only address that we had when we

12    sent the notice out, but it's possible that if she has already

13    moved, she has not -- she did not receive actual notice.

14         THE COURT:  All right, I've read the papers here and

15    I'm familiar with the issue.  Can you at least give me a report

16    as to what happened in the Atlanta Bankruptcy Court on July

17    6th?

18         MR. WIN:  Sure.  We understand from local counsel that

19    the court made a bench ruling approving our motion for relief

20    from the automatic stay, but that court has not actually

21    entered the order yet, so we're waiting to see the form of the

22    order that that court actually enters.

23         And we further understand from local counsel that that

24    court entered an -- or dismissed her Chapter 13 case, but

25    again, we haven't seen an actual order that was entered in that

Page 28

1    case dismissing it.  So in some ways, we're sort of in limbo,

2    waiting for that court to enter its orders before we can

3    determine what the appropriate next steps are.

4           THE COURT:  Okay, that means we're in limbo, too.  My

5    understanding of what's going on here is that the plaintiff,

6    Melissa King, acting pro se, has brought an adversary

7    proceeding here against Lehman Brothers Holding Inc. in its

8    capacity as the purchaser of her home at a foreclosure sale,

9    that there has been extensive litigation both in the federal

10   district court and in the State Court of Cobb County, Georgia,

11   with respect to LBHI's entitlement to possession of that

12   property and that Melissa King filed a Chapter 13 petition in

13   Atlanta, commencing her own personal bankruptcy case there.

14   The motion for relief from automatic stay that we've just been

15   talking about was filed there.

16          I accept your representation that you've been at least

17   reliably informed by your local counsel that that motion is

18   being granted, it's just that we don't have the order yet.

19          MR. WIN:  That's correct.

20          THE COURT:  Since your motion to stay was predicated

21   upon the procedural complexity of the current situation and the

22   potential prejudice to LBHI in having to respond to the

23   complaint that has been filed against LBHI here, I'm prepared

24   to grant your stay even without Melissa King's being present,

25   without prejudice to her seeking relief from that stay or

1    coming forward with cause that she might be able to show as to

2    why an answer to the complaint should be filed.  But since

3    she's not here to express her point of view, I'm going to have

4    to leave it to you to be in contact with her, assuming you can

5    find her.  I am guessing that with so much going on in the

6    Atlanta bankruptcy case that she commenced, that someone is

7    going to be reaching out to her concerning that status,

8    especially if the case is being dismissed.

9         Let me ask you this additional question.  Ordinarily,

10   Chapter 13 petitions are not dismissed sua sponte by a

11   bankruptcy court.  Was there, to your knowledge, a motion to

12   dismiss her Chapter 13 case for some reason?

13        MR. WIN:  I don't understand that Lehman's local

14   counsel filed that motion, but it's possible that the Chapter

15   13 may have moved for that relief, but I'm not entirely

16   certain.  I only know certainly that Lehman filed the motion

17   for relief from the automatic stay.

18        THE COURT:  But not a motion to dismiss.

19        MR. WIN:  I'm not aware of that, but it's possible

20   that Lehman's local counsel did file that motion.

21        THE COURT:  All right.  To the extent that what this

22   is really about is protecting the record of the adversary

23   proceeding in which Melissa King has sued Lehman Brothers

24   Holding Inc. and making it clear that no default judgment or

25   other relief adverse to Lehman Brothers Holding Inc. will be

08-13555-mg   Doc 18783   Filed 07/25/11   Entered 07/26/11 13:48:13   Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 30 of 33

Page 30

1   entered here, I can confirm that that's not going to happen.

2   What the right timeline is for the case is something that

3   remains open.  I don't think it's fair for this case to simply

4   be stayed indefinitely.  And in other settings similar to this,

5   LBHI has motions to dismiss that haven't produced outcomes, but

6   motions to dismiss have been filed, and it seems to me that it

7   would be a good idea for this case not to be in permanent

8   limbo.

9           MR. WIN:  Understood.  And all we've requested is

10   thirty days from entry of a final order determining our motion

11   for relief from the automatic stay in that case.  So assuming

12   that that motion is entered in the next week or so, we would be

13   asking for thirty days from that date in order to file our

14   motion to dismiss.

15           THE COURT:  That's fine.  And while that's going on,

16   I'm just going to ask you to use your reasonable best efforts

17   to try to make contact with the plaintiff and provide some

18   actual notice as to what's going on here.

19           MR. WIN:  Of course.

20           THE COURT:  And if, in fact, the residential real

21   property that is the subject of this litigation ultimately is

22   taken through nonbankruptcy proceedings under Georgia law, it

23   is conceivable that the plaintiff may decide that there is no

24   purpose to be served in continuing this litigation.  If that's

25   true and you're able to obtain voluntary dismissal, that would

08-13555-mg    Doc 18783    Filed 07/25/11    Entered 07/26/11 13:48:13    Main Document
LEHMAN BROTHERS HOLDINGS, INC., et al.
Pg 31 of 33

Page 31

1    be very efficient.

2              MR. WIN:  Okay, thank you, Your Honor.

3              THE COURT:  Okay.  Thank you.  There's nothing more

4    for this afternoon.  We're adjourned.

5         (Whereupon these proceedings were concluded at 2:41 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 32

1

2                              I N D E X

3

4                             RULINGS

5                                                    Page      Line

6    Pulsar Re motion denied                    25        1

7    Stay granted                               27        24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 33

1

2                      C E R T I F I C A T I O N

3

4    I, Sara Davis, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7           Sara Davis    Digitally signed by Sara Davis
                          DN: cn=Sara Davis, o, ou,
                          email=digital1@veritext.com,
                          c=US
8    _____   Date: 2011.07.25 17:24:01
                          -04'00'

9    SARA DAVIS

10   AAERT Certified Electronic Transcriber CET**D 567

11

12   Also transcribed by:      Avigayil Roth

13                             Dena Page

14

15   Veritext

16   200 Old Country Road

17   Suite 580

18   Mineola, NY 11501

19

20   Date:  July 25, 2011

21

22

23

24

25