Objection Deadline: August 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., et al., : Case No. 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND
LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE FOR AUTHORITY (I) TO CREATE
TWO AUDITABLE CREDIT-WORTHY GUARANTORS, (II) TO CONTRIBUTE
$50 MILLION TO EACH SUCH ENTITY, AND (III) TO MAKE FUTURE
CONTIBUTION  OF UP TO $50 MILLION TO EACH SUCH ENTITY IF NECESSARY**

   **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors") for an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") for authority to (i) create two entities to be auditable credit-worthy guarantors, (ii) deposit into each such entity, as capital contributions, up to $50 million in cash so that the entity can serve as a guarantor for typical non-recourse carve outs, and (iii) without further Court approval, and only if necessary, deposit into each such entity, as capital contributions, an additional $50 million in cash, when further equity is warranted, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 17, 2011 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

US_ACTIVE:\43763263\05\58399.0008

electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77002, Attn: Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys to the official committee of unsecured creditors appointed in these cases, and (v) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than August 10, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 26, 2011
      Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

Objection Deadline: August 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :    08-13555 (JMP)
                                          :
         Debtors.                         :    (Jointly Administered)
                                          :
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND
LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE FOR AUTHORITY (I) TO CREATE
TWO AUDITABLE CREDIT-WORTHY GUARANTORS, (II) TO CONTRIBUTE
$50 MILLION TO EACH SUCH ENTITY, AND (III) TO MAKE FUTURE
CONTRIBUTION OF UP TO $50 MILLION TO EACH SUCH ENTITY IF NECESSARY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its debtor affiliate Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together with their affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), move for authority to (i) create two entities to be auditable credit-worthy guarantors, (ii) deposit into each such entity, as capital contributions, up to $50 million in cash so that the entity can serve as a guarantor for typical non-recourse carve outs, and (iii) without further Court approval, and only if necessary, deposit into each such

entity, as capital contributions, an additional $50 million in cash, when further equity is warranted, and respectfully represent:

### Relief Requested

1. As Lehman continues to bring foreclosure actions on mezzanine loan transactions to obtain its collateral which is the ownership interest in various real estate related assets, it has become necessary in numerous cases to have a solvent, auditable entity as a guarantor in order to satisfy the requirements of the senior mortgage lender. The absence of such a guarantor has lead to certain lenders declaring a technical default of the loan, leaving Lehman with the choice of either paying off the mortgage loan at par (often with accrued default interest), or walking away from its investment at a loss. The typical requirement by senior mortgage lenders is that the mortgage borrower, including a mezzanine lender that has foreclosed into and assumed the interest in an existing mortgage borrower, provide a guarantor that is solvent and has an auditable net worth. At the present time, however, the Lehman enterprise does not have a solvent entity that can be audited without significant costs and use of resources and can serve as a guarantor.

2. By this Motion, pursuant to section 363 and 105 of title 11 of the United States Code (the "Bankruptcy Code"), LBHI and LCPI seek, authority to (a) create two auditable entities to serve as guarantors, one of which would be a subsidiary of LBHI and the other a subsidiary of LCPI, (b) fund each such subsidiary guarantors through the capital contribution of $50 million in cash, and (c) if necessary, without further Court approval, increase the funding of each subsidiary guarantor with an additional capital contribution of up to $50 million.

**Background**

3. Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

5. On September 19, 2008, a proceeding was commenced under the Security Investor Protection Act of 1970, as amended (the "SIPA") with respect to LBI. A trustee appointed under the SIPA is administering LBI's estate.

6. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [ECF No. 14150] and the Disclosure Statement to the Debtors' First Amended Joint Chapter 11 Plan [ECF No. 14151].

7. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

**Jurisdiction**

8. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Need for Credit-Worthy Guarantors**

9. Prior to filing for chapter 11, the Debtors and their controlled subsidiaries held, as collateral, a vast portfolio of real estate related assets some of which were used to secure mortgages or other secured loans. Although they are non-recourse, substantially all mortgage loans require that the borrower and its principals or a credit-worthy entity, execute a non-recourse carve out guaranty that provides that such guarantor will pay to the lender damages that the lender incurs in the event that the borrower takes certain enumerated actions. Such guaranties either convert a non-recourse loan into a full recourse loan against the borrower or guarantor, or provide for corporate liability against the borrower or principals of the borrower or the guarantor upon the occurrence of certain enumerated bad acts committed by the borrower or its principals. Such enumerated bad acts generally include, but are not limited to: (a) obtaining any subordinate financing or lien on the property; (b) any non-permitted transfer of property or interests therein; (c) opposing foreclosure or other contested enforcement; (d) a voluntary filing of a bankruptcy petition or failure to dismiss an involuntary bankruptcy petition within a specified period; (e) fraud or material misrepresentation; (f) the misappropriation of funds or collateral; or (g) environmental contamination of the underlying property.

10. In order for a lender to accept an entity as a guarantor, the entity is required to be credit-worthy, which typically means that the entity must meet a minimum liquidity threshold , have a minimum net worth, and be able to provide audited financial statements.

11. Prior to the Commencement Date, the majority of Lehman's real estate interests were placed in special purpose entities and Lehman would use its non-Debtor subsidiary Property Asset Management Inc. ("PAMI") as the credit-worthy guarantor. Because PAMI was an indirect subsidiary of LBHI, lenders and services typically waived the requirement for audited financial statements.

12. During the chapter 11 cases, Lehman began to foreclose on certain of its collateral, which in many circumstances is a pledge of the equity interest in the mortgage borrowing entity. In many instances, such foreclosures are the only means for Lehman to realize value in its collateral. As a result of these foreclosures, Lehman is now the holder of the equity in the owner of a number of real estate related projects and, as such, is required, under the terms of the intercreditor agreement between Lehman and the senior lender to substitute the original equity holder guaranty with its own guaranty. In other circumstances, Lehman is able to negotiate a consensual delivery of the ownership entity from its mezzanine borrowers but is unable to consummate the closing because it is unable to provide the senior lender with a substitute guarantor. Additionally, in order to provide the estate with additional liquidity, Lehman has sought to obtain third party non-recourse mortgage financing for certain real estate properties but has been thwarted because it could not provide the third party lender with the required credit-worthy guarantor to execute the non-recourse carve out guaranty.

13. There are currently no entities in the Lehman enterprise, however, that are capable of serving as credit-worthy guarantors, as all Lehman entities are either insolvent, fail the minimum net-worth tests or cannot be audited without significant cost to the estates. The absence of such a guarantor could lead, and in one instance already has led, to the senior lender declaring a technical default on the underlying loan. In such circumstances Lehman is faced

with the choice of paying off the loan at par (often with accrued default interest) or walking away from its investment.  Furthermore, there are also situations where having a credit-worthy guarantor could enhance or accelerate recoveries on a project by allowing a borrowing, such as construction financing.

14.    Lehman seeks authority to establish two entities to act as credit-worthy guarantors and fund such entities with capital contributions so that they meet the required net-worth tests.  As of the date hereof, the Debtors project having to fund each guarantor entity with a capital contribution of approximately $50 million which Lehman believes will be sufficient to meet the required net-worth test.  It is possible, however, that circumstances will require an additional capital contribution investment of up to $50 million to each guarantor entity.  Therefore, by this Motion, the Debtors seek authority to establish the entities and capitalize each up to $50 million, subject to the Debtors' ability to increase such capitalizing by $50 million to each entity, if necessary, without further Court approval.

**Structure of Entities**

15.    The Debtors seek authority to create two subsidiary entities to act as guarantors, with one entity being created as a direct subsidiary of LBHI and one as a direct subsidiary of LCPI.  The entities will be funded with equity investments and the newly created entities will invest such funds in accordance with the Investment Guidelines Order entered in the Debtors' chapter 11 cases [ECF No. 3048].  The board of directors for each guarantor entity will be the same as the standard board that has been appointed for other Debtor and Debtor-Controlled Subsidiaries and affiliates of LBHI, including LCPI.  It is currently contemplated that the subsidiary entities will continue in existence until all or substantially all of Lehman's real estate interests have been liquidated, and thereafter, the entities will be dissolved.  As direct

subsidiaries of LBHI and LCPI, upon dissolution of the entities or as funds are no longer needed to support guaranties, the funds in the entities will flow back up to LBHI and LCPI, respectively, for the benefit of their creditors.

16.  The Debtors will provide notice to, and obtain approval from, the Creditors' Committee of any guarantee issued by either of the subsidiary entities; provided, however that the Debtors may, but shall not be obligated to, give notice to the Creditors' Committee of the exercise of any remedies under any loans which the Debtors reasonably believe will result in the need for such a guarantee.  If the Creditors' Committee's does not object when provided notice of the Debtors exercising remedies under any loan which the Debtors reasonably believe will result in the need for a guarantee from the subsidiary entities, the Creditors' Committee will been deemed to consent to the issuance of such guarantee.  Timing and type of notice will be in accordance with the notice procedures for "Real Estate Loan Transactions" as set forth in the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (I) Restructure, (II) Make New or Additional Debt or Equity Investments in, and/or (III) Enter Into Settlements and Compromises in Connection with Existing Real Estate Investments* (the "Real Estate Protocols Order") [ECF No. 5912].

### The Court Should Approve The Creation of Two Entities to Act as Credit-Worthy Guarantors and the Funding of these Entities

17.  The establishment of the credit-worthy guarantors is necessary for the Debtors to realize maximum value on account of its many real estate projects for the benefit of their estates and creditors.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  *Id.* § 363(b)(1).  When considering a transaction outside the

ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

18. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id*. (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

19. As set forth above, in many instances, the Debtors' only means of realizing value on account of their real estate investments is to foreclose on the project's equity. In this situation, Lehman steps into the shoes of the equity holder and in doing so, is required to substitutes the original equity holder's guaranty with its own guaranty. This guaranty, however, must be provided by a credit-worthy, auditable entity, and there are currently no such entities in the Lehman estate.

20.     If Lehman is unable to establish such credit-worthy, auditable entities to act as guarantors, lenders could declare a default on the loan, which could severely and negatively impact the Debtors' ability to realize recovery on account of certain of their real estate investments.  The nature of the guaranties that will be given is such that the Debtors do not foresee a situation that would give rise to a lender seeking to enforce the guaranty as the enumerated acts that would trigger liability are within Lehman's control and are not acts that would be sanctioned by the estate.  The guarantor is a necessary step to allow the Debtors to continue to manage certain of their real estate projects so that maximum recovery can be generated on account of these investments.

21.     In order for these entities to meet the required net-worth tests, the Debtors project each of the two entities needing funding of approximately $50 million.  Nonetheless, circumstances may require additional funding to each of these entities of up to $50 million.  It is therefore in the best interests of the Debtors and their estates and creditors to authorize the establishment of two entities, one a subsidiary of LBHI, and the other of LCPI, to act as credit-worthy guarantors and to allow the Debtors to fund such entities with up to $50 million each and an additional $50 million each, if necessary and without further Court approval.

**Reservation of Rights**

22.     The Debtors request that nothing contained herein be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LBHI, LCPI, or any of the Debtors or their non-debtor affiliates except as otherwise expressly provided in this Motion, that any of the Debtors or non-debtor affiliates may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including against each other or third parties.  Additionally, the

parties seek authorization to execute such further documentation necessary to reflect this reservation of rights.

## Notice

23.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

24.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: July 26, 2011
       New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

# Annex A

**(Proposed Order)**

US_ACTIVE:\43763263\05\58399.0008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
In re                                                            :    Chapter 11 Case No.
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :    08-13555 (JMP)
                                                                 :
Debtors.                                             :    (Jointly Administered)
                                                                 :
------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE
AUTHORIZING LEHMAN BROTHERS HOLDINGS INC.
AND LEHMAN COMMERCIAL PAPER INC. (I) TO CREATE
TWO AUDITABLE CREDIT-WORTHY GUARNTORS, (II) TO CONTRIBUTE
$50 MILLION TO EACH ENTITY, AND (III) TO MAKE FUTURE CONTRIBUTION
OF UP TO $50 MILLION TO EACH SUCH ENTITY, IF NECESSARY**

Upon the motion, dated July 26, 2011 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") for authority to (i) create two entities to be auditable credit-worthy guarantors, (ii) deposit into each such entity, as capital contributions, up to $50 million in cash to serve as guarantor for typical non-recourse carve outs, and (iii) without further Court approval, and only if necessary, deposit into each such entity, as capital contributions, an additional $50 million in cash, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Motion.

US_ACTIVE:\43763263\05\58399.0008

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the Borrowers and the Guarantor and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their respective estates and creditors, and all parties in interest and the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code, each of LBHI and LCPI are authorized and empowered to establish a direct subsidiary entity to serve as a guarantor for non-recourse loan carve outs as set forth in the Motion (each, a "Subsidiary Guarantor" and, together, the "Subsidiary Guarantors"); and it is further

ORDERED that each of LBHI and LCPI is authorized and empowered to contribute up to $50 million as a capital contribution to each such Subsidiary Guarantor; and it is further

ORDERED that each of LBHI and LCPI are authorized and empowered, without further authority of this Court, to contribute an additional $50 million as a further capital

contribution to each Subsidiary Guarantor, if necessary for such entity to meet the required net worth tests; and it is further

ORDERED that each of LBHI and LCPI are authorized and empowered to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to establish the Subsidiary Guarantors; and it is further

ORDERED that each of LBHI and LCPI are authorized and empowered to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to make the capital contributions to each Subsidiary Guarantor as authorized by this Order; and it is further

ORDERED that each Subsidiary Guarantor will invest any and all funds held by such Subsidiary Guarantor in accordance with the Investment Guidelines Order entered in these chapter 11 cases [ECF No. 3048]; and it is further

ORDERED that upon dissolution of each Subsidiary Guarantor, any and all funds remaining in such Subsidiary Guarantor will flow back to its respective corporate parent; and it is further

ORDERED that the Debtors will provide notice to, and obtain the consent of, the Creditors' Committee of any guarantee issued by either of the Subsidiary Guarantors; provided, however, that the Debtors may, in their sole and absolute discretion, provide notice to the Creditors' Committee of the exercise of any remedies under any loans which the Debtors reasonably believe will result in the need for such a guarantee. The timing and type of such notice will be in accordance with the notice procedures for "Real Estate Loan Transactions" as set forth in the Real Estate Protocols Order [ECF No. 5912]; and it is further

ORDERED that if the Creditors' Committee receives notice of, and does not object to, the Debtors exercising remedies under any loan which the Debtors reasonably believe will result in the need for a guarantee from either of the Subsidiary Guarantors, the Creditors' Committee will been deemed to have consented to the issuance of such guarantee; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that notwithstanding entry of this Order, all other rights, claims and defenses of each of the Debtors are reserved vis a vis each other with respect to the transactions contemplated by the PSA; and it is further.

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August __, 2011
       New York, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE