Objection Deadline: August 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11
                                                               :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                     :    Case No. 08-13555 (JMP)
                                                               :
                    Debtors.                                   :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY TO SELL INTEREST IN ROSSLYN SYNDICATION PARTNERS JV LP

   **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors") for an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") for authority to sell a  78.5% limited partner interest in Rosslyn Syndication Partners JV LP, which owns a 3,000,000 million square foot, 10-property office building portfolio, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 17, 2011 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77002, Attn: Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Andrew G. Dietderich, Esq., counsel to the Potential Purchaser; (iv) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys to the official committee of unsecured creditors appointed in these cases, and (vi) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than August 10, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: July 26, 2011
     Houston, Texas

                                        /s/ Alfredo R. Pérez
                                        Alfredo R. Pérez
                                        WEIL, GOTSHAL & MANGES LLP
                                        700 Louisiana Street, Suite 1600
                                        Houston, Texas 77002
                                        Telephone: (713) 546-5000
                                        Facsimile: (713) 224-9511

                                        Attorneys for Debtors
                                        and Debtors in Possession

Objection Deadline: August 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re                                               :     Chapter 11 Case No.
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :     08-13555 (JMP)
                                                    :
                        Debtors.                    :     (Jointly Administered)
                                                    :
------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.
AND LEHMAN COMMERCIAL PAPER INC. PURSUANT
TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY
TO SELL INTEREST IN ROSSLYN SYNDICATION PARTNERS JV LP**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliate, Lehman Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (together with their affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), move for authority to sell a 78.5% limited partner interest (the "LP Interest") in Rosslyn Syndication Partners JV LP (the "Joint Venture"), which owns a 3,000,000 million square foot, 10-property office building portfolio (the "Rosslyn Portfolio"), and respectfully represent:

US_ACTIVE:\43758251\12\58399.0008

**Relief Requested**

1.  By this Motion, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), the Debtors seek, authority to authorize their non-Debtor subsidiary to enter into a purchase and sale agreement (the "PSA") according to terms substantially similar to those set forth herein, which provides for the private sale of the LP Interest in the Joint Venture to a third-party in exchange for cash proceeds to Lehman of not less than $385 million, subject to adjustment as described below. The Debtors also seek authority to enter into, and to authorize their non-Debtor subsidiaries to enter into, any and all related agreements and consummate any and all related transactions in connection with the sale of the LP Interest, including, without limitation, LCPI's entry into the LCPI Guarantee (as defined below).

**Background**

2.  Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4. On September 19, 2008, a proceeding was commenced under the Security Investor Protection Act of 1970, as amended (the "SIPA") with respect to LBI. A trustee appointed under the SIPA is administering LBI's estate.

5. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [ECF No. 14150] and the Disclosure Statement to the Debtors' First Amended Joint Chapter 11 Plan [ECF No. 14151].

6. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

## Jurisdiction

7. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## The Rosslyn Properties

8. Rosslyn LB Syndication Partner LLC, an indirect, non-Debtor legal or beneficial subsidiary of LBHI, legally or beneficially owns a 78.5% limited partnership interest in the Joint Venture. Affiliates of Monday Properties ("Monday") and affiliates of Lehman Brothers Real Estate Partners II ("LBREP II" and, collectively with Monday, the "JV Partners") each hold approximately 10.8% of the Joint Venture. LBHI continues to retain a 20% limited partner ownership stake in LBREP II.

9. On May 15, 2007, the Joint Venture acquired the Rosslyn Portfolio, which is currently an approximately 3,000,000 square feet, 10-property portfolio located in Rosslyn, Virginia, a submarket located directly across the Potomac River from Washington, D.C. The

Rosslyn Portfolio is well situated in the heart of the Rosslyn submarket of Arlington, Virginia, one of Washington D.C.'s professional and commercial centers.[1]

10. The Rosslyn Portfolio is currently encumbered by multiple tiers of debt which were incurred in connection with the acquisition of the portfolio:

a. A $567,675,000, 10-year loan originally provided by LBHI, which is cross-collateralized by three of the ten properties and matures in May 2017. Prior to the Commencement Date, LBHI securitized and syndicated its position in these mortgages (the "Acquisition Mortgages").

b. A $200,000,000 credit facility (the "Credit Facility") provided by Lehman Commercial Paper Inc. ("LCPI"). The Credit Facility, with an outstanding balance of $198,000,736, is secured by a pledge of equity in the operating partnership and each of its subsidiaries. Prior to the Commencement Date, LCPI syndicated $191,000,000 of the Credit Facility and retained $9,000,000 of the funded balance. The Credit Facility matures in May 2012.

**Prior Motion**

11. On May 25, 2010, the Debtors filed the *Motion of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for Authority to Transfer Funds to Rosslyn LB Syndication Partners LLC* [ECF No. 9238] (the "2010 Rosslyn Motion"). On June 17, 2010, the Court entered an Order approving the 2010 Rosslyn Motion [ECF No. 9644] (the "2010 Rosslyn Order").

12. The 2010 Rosslyn Motion sought, generally, authority for LBHI to cause the transfer of approximately $206 million to fund a capital call and to capitalize a working capital account with respect to the Joint Venture. As explained in the 2010 Rosslyn Motion, these funds were used to repay certain mortgage loans secured by properties in the Rosslyn

---

[1] Additional information on the Rosslyn Portfolio is contained in the 2010 Rosslyn Motion (as defined in paragraph 11 herein).

Portfolio[2] and which, in turn, enabled the Joint Venture to retain the Credit Facility which carries a low coupon.[3] The retention of this relatively well priced and less structured financing increased the marketability of the Joint Venture, so that it could be sold in a more robust real estate market than existed at the time of the 2010 Rosslyn Motion.

13. Currently, Lehman holds $9,000,000 of the Credit Facility (excluding accrued interest and fees), and the approximately $18,000,000 Partner Loan (excluding accrued interest and fees) in addition to the LP Interest.

**2011 Sale Process**

14. Due to a strong recovery in the real estate investment market, the Debtors believe that a sale of the LP Interest at this time will enable the Debtors to receive significant value on account of its interest in the Joint Venture. The Debtors have extensively marketed the LP Interest and have received substantial interest from a number of potential purchasers. The Debtors, however, have been informed by these potential purchasers that any sale of the LP Interest will require a modification of the terms of the Joint Venture, and, therefore the cooperation and consent of the JV Partners. Nonetheless, the Debtors believe that all parties in interest will agree to a sale of the LP Interest pursuant to terms substantially similar to those set forth below, and that the Debtors will have an executed PSA on or before August 11, 2011.

15. A private sale of the LP Interest is appropriate in this instance because the Debtors have thoroughly marketed the LP Interest and believe that any further marketing process

---

[2] These mortgage loans are distinct from the Acquisition Mortgages.

[3] Additionally, pursuant to the authority granted by the 2010 Rosslyn Order, Lehman extended an $18 million partner loan (the "Partner Loan") to Monday to fund its portion of the capital call. The Partner Loan is secured by Monday's interest in the Joint Venture and accrues interest at a rate of 15%. In connection with the sale of the LP Interest Lehman anticipates receiving payment for the Partner Loan at par plus the accrued interest.

would be duplicative of the work already performed and would not result in any increased value to the Debtors' estates.

16. Specifically, on May 6, 2011, the Joint Venture retained Eastdil Secured, LLC ("Eastdil"), a prominent real estate investment bank with vast experience in the Washington D.C. and Northern Virginia real estate market to assist with the marketing of the LP Interest. Shortly thereafter, on May 11, 2011, Eastdil sent an e-teaser to more than 150 distinct institutions, each with differing risk appetite and return objectives, and approximately two weeks later sent a full offering memorandum to the approximately 25 of these institutions that had signed confidentiality agreements. Thereafter, certain of the institutions that had received the confidential memorandum toured the Rosslyn Portfolio.

17. On June 17, 2011, Eastdil sent a "call for offers" to the approximately 150 institutions and received bids from a number of groups of institutions (no single institution bid alone). Following the receipt of these bids, Eastdil continued to market the Rosslyn Portfolio and engaged in negotiations with the bidders that emerged as the highest and best bidders for the LP Interest. On July 5, 2011 Eastdil sent a "best and final call for offers" to those groups which had submitted the best offer for the assets.

18. Through this marketing process, Lehman and Eastdil identified a joint venture in which Goldman Sachs & Co. is the general partner (the "Potential Purchaser") as the potential purchaser that could provide Lehman with the best value for the LP Interest. Since that time, Lehman has extensively negotiated with the Potential Purchaser and the JV Partners and believes it is close to a consensual deal for the LP Interest as set forth herein. Subject to Lehman and the potential purchaser's ability to reach a consensual deal with the JV Partners with respect to a modification of the terms of the Joint Venture, the Debtors seek authority to authorize their

non-Debtor subsidiary to enter into a sale agreement pursuant to terms substantially similar to those set forth below and to consummate any and all transactions in connection therewith.

19. The terms of the PSA will be substantially similar to those set forth in the table below:

| | |
|---|---|
| Potential Purchaser | A subsidiary or affiliate of U.S. Real Estate Opportunities I, L.P., a joint venture in which Goldman Sachs & Co. is the general partner. |
| Purchase Price | The total purchase price will result in proceeds from sale to Lehman of not less than $385 million, subject to adjustment upwards or downwards by the positive or negative value, respectively, of working capital, plus the outstanding principal amount and accrued interest through the closing date on the Partner Loan. This purchase price represents a total valuation of the Joint Venture of approximately $1.257 billion. |
| Contingencies | Potential Purchaser may terminate if (i) the Debtors fail to obtain Bankruptcy Court approval by September 30, 2011; (ii) seller fails to deliver prior to the closing date estoppel certificates from a specified percentage of the space in the Rosslyn Portfolio leased to major tenants; (iii) if the change of control provisions in the Acquisition Mortgages are not complied with; or (iv) typical seller defaults, including breach of representations, warranties and covenants. |
| Closing Date | Twenty business days after Bankruptcy Court approval, subject to a one-time right of Potential Purchaser to extend the closing date up to October 6, 2011, upon payment of an additional deposit |
| Deposit | Not less than $50,000,000. |
| Terms of Sale | All cash at closing. Potential Purchaser may make a claim against seller for breach of seller's representations and warranties for a period to be agreed upon after closing, subject to floor and caps as set forth in the PSA. |
| LCPI Guarantee | LCPI will guarantee (the "LCPI Guarantee") the post-closing obligations of the seller with respect to certain of the representations contained in the PSA for a period to be agreed upon in an aggregate amount not to exceed $15 |

million, provided, however that such guarantee shall be up to the full amount of the Purchase Price for the actual damages of the Potential Purchaser to the extent of the actual fraud committed by the seller or LCPI (without any imputation of knowledge or actions by the JV Partners in the Joint Venture) solely in connection with the seller's and LCPI's representations and the Joint Venture's representations solely related to capitalization, lack of options or rights of first refusal, assets of the Joint Venture and indebtedness and liabilities.

## The Court Should Approve
## Entry into the PSA and the Sale of the LP Interests

20.  The Debtors believe, in its reasoned business judgment, that the sale of its interests in the Rosslyn Portfolio, in the current commercial real estate market, presents the Debtors with the best opportunity to realize maximum value on account of its interest. The Debtors and their advisors have thoroughly marketed the LP Interest and believe that a consensual private sale of these assets according to terms substantially similar to those set forth herein is appropriate under the circumstances.

21.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *Id.* § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

22. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

23. When Lehman initially invested in the Rosslyn Portfolio, it anticipated syndicating the LP Interest. A dramatic shift in credit and real estate markets shortly after this investment made syndication impractical and Lehman retained the LP Interest. Since that time, Lehman has maintained the value of the underlying assets in anticipation of selling the LP Interest in a stronger credit and commercial real estate market.

24. The commercial real estate and capital markets have now significantly recovered which will enable the Debtors' to realize a substantial return on account of their 2010 investment in the Joint Venture. Further, the Debtors do not believe that retaining their interest in the Joint Venture would provide their estates with sufficient increased value on a risk adjusted basis to justify continuing to hold the asset. As set forth above, the Debtors, through Eastdil, have widely marketed the LP Interest.

25. Although the Debtors understand that a Court-approved auction process is often desirable in the chapter 11 context, such a process is not warranted here. In light of all the

circumstances, including the various consent rights of the JV Partners, the Debtors believe that further marketing of the LP Interest would be duplicative of the work already performed and potentially detrimental to the favorable results achieved to date. If the Debtors and the potential purchaser are able to reach a consensual deal with the JV Partners, the private sale will provide the Debtors with cash proceeds of at least $385 million (subject to adjustment as described above) in exchange for the LP Interest. Also, the sale will rid the Debtors of any future obligations with respect to the Rosslyn Portfolio. The Debtors believe that this is substantial value and that the private sale of the LP Interest is in the best interests of the Debtors, their estates and their creditors.

26. Further, the provision of the LCPI Guarantee is in the best interests of the Debtors' estates. As set forth above, the Debtors believe, in their informed business judgment, that the sale of the LP Interest pursuant to the PSA presents the Debtors with the best recovery on their investment in the Joint Venture. Consummation of the sale to the Potential Purchaser requires this guarantee by LCPI. Additionally, the Debtors do not believe that the LCPI Guarantee exposes LCPI to significant risk. The non-Debtor subsidiary selling the LP Interest will be receiving approximately $385 million as a result of this transaction. The Debtors believe that any liability that would result from a breach of the representations in the PSA that LCPI will be backstopping could be covered by seller with the funds received. As a result, LCPI believes that the minimal risk it is assuming is justified in order to consummate this sale of the LP Interest.

**Reservation of Rights**

27. The Debtors request that nothing contained herein be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LBHI, LCPI, or any of the Debtors or their non-debtor affiliates except as otherwise expressly

provided in this Motion, that any of the Debtors or non-debtor affiliates may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including against each other or third parties. Additionally, the parties seek authorization to execute such further documentation necessary to reflect this reservation of rights.

**Notice**

28. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the counsel for the Potential Purchaser; and (vii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

29. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: July 26, 2011
      New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5040
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

# Annex A

# (Proposed Order)

US_ACTIVE:\43758251\12\58399.0008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
: 
In re                                                                          :           Chapter 11 Case No.
                                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :           08-13555 (JMP)
                                                                                  :
                                    Debtors.                             :           (Jointly Administered)
                                                                                  :
-----------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. AND LEHMAN COMMERCIAL PAPER INC. TO SELL INTEREST IN ROSSLYN SYNDICATION PARTNERS JV LP

Upon the motion, dated July 26, 2011 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") for authority to authorize their non-Debtor subsidiary to enter into a purchase and sale agreement which provides for the private sale of the LP Interest[4] in the Joint Venture and to enter into any and all related agreements and consummate any and all related transactions in connection with such sale, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

---

[4] Terms not defined herein shall have the meaning ascribed to them in the Motion.

provided in accordance with the procedures set forth in the second amended order entered June 17, 2010 governing case management and administrative procedures [ECF No. 9635] to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the Potential Purchaser, and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that (a) the Debtors adequately marketed the LP Interest and a private sale of the LP Interest is appropriate under the circumstances; (b) the consideration being exchanged for the LP Interest is fair and reasonable under the Bankruptcy Code, the laws of the United States, and all states, territories, and the District of Columbia; (c) the relief sought in the Motion is in the best interests of the Debtors, their respective estates and creditors, and all parties in interest and (d) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to cause their non-Debtor subsidiary to enter into the PSA and the LCPI Guarantee according to terms substantially similar to those set forth in the Motion, which provides for the sale of the LP Interest in the Joint Venture; and it is further

ORDERED that the Debtors are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and take any and all actions reasonably necessary or appropriate to consummate the transactions contemplated by the

PSA and the LCPI Guarantee and to perform any and all obligations contemplated therein; and it is further

ORDERED that the Debtors are authorized to cause their subsidiary to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the transactions contemplated by the PSA and the LCPI Guarantee, and to perform any and all obligations contemplated therein; and it is further

ORDERED that the Debtors are authorized to amend, modify, or supplement any of the terms of the PSA, the LCPI Guarantee or related transactions documents, without the necessity of further Court proceeding or approval and without the consent of any other party except for those required by such documents, except to the extent that such changes have a material adverse effect on the estates of the Debtors; and it is further

ORDERED that following the close of the transactions contemplated by the PSA, none of the Debtors will have any continuing right, title, or interest in the LP Interest (and to the extent the Debtors previously had any such right, title or interest, it is hereby unconditionally released in consideration of the transaction set forth in the PSA) and that any such right, title or interest that existed will attach to the proceeds of the sale of the LP Interest; and it is further

ORDERED that the LCPI is authorized and empowered to enter into the LCPI Guarantee and to take any and all action required thereunder and pursuant to the terms thereof; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that notwithstanding entry of this Order, all other rights, claims and defenses of each of the Debtors are reserved vis a vis each other with respect to the transactions contemplated by the PSA or the LCPI Guarantee; and it is further.

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: August __, 2011
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE