WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                                            :
In re                                     :  Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :  08-13555 (JMP)
                                                            :
                  Debtors.                :  (Jointly Administered)
                                                            :
                                                            :
------------------------------------------------------------x
```

**DECLARATION OF DAVID DESCOTEAUX IN SUPPORT OF DEBTORS'
MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004 FOR
AUTHORIZATION TO (I) ENTER INTO AN ASSET MANAGEMENT AGREEMENT
FOR THE MANAGEMENT OF THE DEBTORS' COMMERCIAL LOAN PORTFOLIO
AND (II) SELL COMMERCIAL LOANS TO SPECIAL PURPOSE ENTITIES IN
<u>CONNECTION WITH THE ISSUANCE OF COLLATERALIZED LOAN OBLIGATIONS</u>**

Pursuant to 28 U.S.C. § 1746, I, David Descoteaux, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the *Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004 for Authorization to (I) Enter Into an Asset Management Agreement for the Management of the Debtors' Commercial Loan Portfolio and (II) Sell Commercial Loans to Special Purpose Entities in*

*Connection with the Issuance of Collateralized Loan Obligations* (the "Motion"),[1] dated July 27, 2011, of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., and their affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors").

3. I am a Managing Director with Lazard Freres & Co. LLC ("Lazard"), investment banker to the Debtors. I have advised the Debtors on various transactions commencing in September, 2008. Based on discussions I have had with Lazard employees working under my supervision, I have personal knowledge of the facts set forth in this declaration.

4. The Debtors, through their advisors Alvarez and Marsal ("A&M"), contacted Lazard in April, 2011 and informed Lazard that the Debtors were seeking to monetize their portfolio of commercial loans (the "Commercial Loan Portfolio"), that they had decided to seek to execute one or more collateralized loan obligations ("CLOs") and that they would seek to hire an asset management firm to manage both the loans included in the CLO transactions and the loans that are not included in the CLO transactions.

5. The Debtors informed me that they had begun discussing the terms of a management agreement with WCAS │ Fraser Sullivan Investment Management, LLC ("Fraser Sullivan"). The Debtors requested that Lazard advise the Debtors in implementing a process to solicit offers from a representative sample of other qualified market participants to determine whether Fraser Sullivan's proposal was the best proposal that the Debtors could obtain for the management of the Commercial Loan Portfolio.

6. Lazard proposed to the Debtors a list of approximately 30 asset management firms that might have an interest in and that had the capabilities to manage the Commercial Loan

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Portfolio and execute CLOs. Such a list was drawn up based on ability to manage CLO and non-CLO assets, and recent CLO experience. Based on the Debtors' view of the experience and qualifications of such firms managing commercial loans and CLOs, the size of such firms measured by assets under management, and the international operations, the Debtors, in consultation with Lazard, selected nine firms from which to solicit proposals for the opportunity. The nine firms represented a cross-section of the initial list in terms of assets under management. The Debtors also consulted with Houlihan Lokey ("Houlihan"), financial advisors to the Creditors' Committee, regarding such selections.

7.  The Debtors and Lazard agreed on a multi-step process to narrow down the firms to determine the best proposal. Lazard worked with the Debtors and their attorneys to develop a "teaser" which provided limited information regarding the opportunity on a "no-names" basis and requested that the firms to which it was sent indicate whether they were interested in the opportunity. Lazard sent out a form of non-disclosure agreement to all nine firms. Following the execution of non-disclosure agreements, Lazard worked with the Debtors and their attorneys to develop a "Request for Proposal" ("RFP") seeking additional information about the firms and their experience and qualifications. The RFP was sent to each firm that signed a non-disclosure agreement. One of the nine firms declined to provide a response to the RFP. Based on the responses to the RFP, the Debtors, in consultation with Lazard, selected six of the eight firms that responded to the RFP to which they provided certain information about the Commercial Loan Portfolio via an online data room. Lazard, A&M and members of the Portfolio Management team met with each of the six remaining firms to discuss the Commercial Loan Portfolio and answer questions that the firms had. Following such meetings, the firms provided proposals for the management opportunity.

8. In each step in the process, Lazard assisted A&M in analyzing the responses from the firms. In evaluating the various proposals, Lazard analyzed and compared, together with A&M, for each of the firms (i) historical performance; (ii) ability and experience to execute CLOs; (iii) amount of assets under management; (iv) fees proposed; (v) willingness to hire the Portfolio Management Team; and (vi) willingness to abide by the governance provisions. At various stages of the process, A&M, sometimes with Lazard, met with and provided its analysis of the proposals to Houlihan.

9. The process was successful in obtaining good faith proposals from a sample of qualified market participants. The proposals varied widely. One firm submitted a proposal that had lower fees than Fraser Sullivan, but such firm declined to provide for continuity of management. Other firms were willing to provide for continuity of management, but only if the Debtors paid significantly higher fees. One firm was not willing to accept the Debtors' required consent rights regarding the management of the Commercial Loan Portfolio.

10. A&M had indicated to Lazard that the key criteria for selecting asset managers were the continuity of management, the requirement that the Debtors retain certain decision making authority relating to the Commercial Loan Portfolio and the cost of the arrangement to the Debtors. Based on these considerations, A&M, in consultation with Lazard, selected the best two proposals, other than that of Fraser Sullivan. Lazard contacted the two firms and requested that such firms make a "best and final" proposal.

11. Both of such firms improved their proposals. Nevertheless, taking into account all aspects of the various proposals, and the Debtors' stated objectives, the Debtors decided, in consultation with Lazard, that Fraser Sullivan's offer was the best overall proposal. The combination of the amount of the fees, the willingness to hire the Portfolio Management Team

and agree to the Debtors' required governance provisions and the experience executing CLOs make Fraser Sullivan's proposal superior to the proposals of other firms. The process was successful in obtaining good faith proposals from a sample of qualified market participants, thereby testing the market and enabling the Debtors to determine that Fraser Sullivan's proposal was the best available.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 27th day of July 2011.

/s/ David Descoteaux
David Descoteaux