Hearing Date: August 9, 2011 at 2:00 p.m. (ET)

Dennis F. Dunne
Evan R. Fleck
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

David S. Cohen
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――x

In re:                                                                    :       Chapter 11

LEHMAN BROTHERS HOLDINGS INC., *et al.*      :       Case No. 08-13555 (JMP)

                                                    Debtors.           :       (Jointly Administered)

―――――――――――――――――――――――――x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN RESPONSE TO DEBTORS' AMENDED MOTION PURSUANT TO SECTIONS
105(a) AND 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019
FOR APPROVAL OF PROCEDURES FOR DETERMINING THE ALLOWED
AMOUNT OF CLAIMS FILED BASED ON STRUCTURED SECURITIES ISSUED OR
<u>GUARANTEED BY LEHMAN BROTHERS HOLDINGS INC.</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and each of its affiliated debtors in possession (collectively, the "<u>Debtors</u>"), hereby files this statement ("<u>Statement</u>") in response to the Debtors' Amended Motion Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 For Approval of Procedures for Determining the

Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc., dated June 29, 2011 (Docket No. 18127, the "Amended Structured Securities Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Committee has engaged in extensive analysis and lengthy discussions with the Debtors regarding the methodologies employed by the Debtors to determine the value of the claims at issue in the Amended Structured Securities Motion (the "Structured Securities Claims"). The Committee has particularly focused on the Debtors' intention to use LBHI's prepetition general ledger ("GL") as a starting point for valuing certain Structured Securities Claims.

2. Specifically, LBHI's Structured Securities Valuation Methodology[1] for the Structured Securities that the Debtors have categorized as fair market value notes ("FMV Notes")[2] is based on "LBHI's prepetition internal accounting methodology," and is reflected by the values of the Structured Securities listed on the GL. (Amended Structured Securities Motion Ex. B at B-4.) Based on an extensive diligence process on a sampling of the Structured Securities conducted by FTI Consulting, Inc. ("FTI"), financial advisor to the Committee, the prepetition valuation methods used by LBHI appear to be generally consistent with comparable methods employed by broker-dealers for purposes of valuing securities on their financial statements at the time the GL values were determined. The Committee and its advisors recognize, however, that there are other reasonable methods to value these FMV Notes.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Structured Securities Motion.

[2] Structured Securities were categorized by the Debtors into three categories: Par Par Notes, Zero Coupon Notes, and FMV Notes. Out of over 4,000 total Structured Securities, the Debtors have identified 2,893 as FMV Notes.

2

3.     The Amended Structured Securities Motion provides a reasonable mechanism for holders of Structured Securities to accept the values assigned by the Debtors to individual Structured Securities Claims.  (*See* Amended Structured Securities Motion ¶ 25 (detailing Notice and Objection Procedures).)  The Debtors have agreed to amend the proposed order to provide that to the extent any Claimant makes a reasonable request for information from the Debtors with respect to the value of the subject Structured Security, the Debtors will respond to such requests in good faith.

4.     Further, the Committee's review of the Debtors' valuation approach has made clear that valuing each of the thousands of notes underlying the Structured Securities Claims would be very complex, costly and time consuming.  The procedures proposed by the Debtors in the Amended Structured Securities Motion are streamlined and efficient, and preserve the rights of individual holders of Structured Securities Claims to object to the Debtors' valuations of those claims.  In light of the foregoing considerations, the Committee does not oppose the relief sought by the Debtors in the Amended Structured Securities Motion.

5.     A significant portion, but not all, of the holders of the Structured Securities Claims have agreed to support the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), which incorporates a settlement of the Structured Securities Claims of such holders based on the Structured Securities Valuation Methodology set forth in the Amended Structured Securities Motion and the Disclosure Statement.  The Committee files this Statement to provide relevant information regarding the Debtors' valuation methodologies so that each holder of the Structured Securities may make an informed decision whether to accept the values of the Structured Securities to be provided by the Debtors.

**BACKGROUND**

6. Before filing its chapter 11 petition, LBHI and several of its foreign affiliates[3] issued over 4,000 series of Structured Securities. (Amended Structured Securities Motion ¶ 14.)[4] LBHI also guaranteed the payments due on most of the Structured Securities issued by its foreign affiliates. (*Id.*) Many of the Structured Securities were issued as part of the European Medium-Term Note Program ("EMTN"), and most provided that the return to investors at maturity and/or periodic interest payments would be linked to the performance of an underlying asset or group of assets including global indices, single stocks, currencies, interest rates, and various credit derivative instruments and baskets thereof. (*Id.*)

7. On April 27, 2011, the Debtors filed their Motion Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Procedures for Determining the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc. (Docket No. 16294, the "April Structured Securities Motion"). On May 13, 2011, the Committee filed a statement in response to the April Structured Securities Motion (Docket No. 16832), in which the Committee indicated that testing was ongoing, but that "there may be statistically relevant discrepancies between the Debtors' prepetition valuations and the values arrived at through the Committee's sample testing process."

---

[3] These foreign affiliates include Lehman Brothers Treasury Co. B.V. ("LBT"); Lehman Brothers Securities N.V.; Lehman Brothers (Luxembourg) Equity Finance S.A.; Lehman Brothers Finance S.A.; and Lehman Brothers Bankhaus AG. (Amended Structured Securities Motion ¶ 14.)

[4] The procedures set forth in the Amended Structured Securities Motion are intended primarily to address claims based on Structured Securities that do not have an indenture trustee. (Amended Structured Securities Motion ¶¶ 3, 11.) Accordingly, the procedures do not apply to certain Structured Securities, including those Structured Securities issued directly by LBHI as part of its United States Medium-Term Notes Program. To the extent that valuation of Structured Securities not covered by the Amended Structured Securities Motion become subject to procedures similar to those set forth in the Amended Structured Securities Motion, the Committee will facilitate information flow and dispute resolution, as requested, between the Debtors and holders of such claims.

4

8. On June 29, 2011, the Debtors filed the Amended Structured Securities Motion for approval of procedures to determine the allowed amount of claims based on Structured Securities. The methodologies described in the Amended Structured Securities Motion for valuing the FMV Notes rely on values of the Structured Securities listed on the Debtors' GL as of the Commencement Date. (*See* Amended Structured Securities Motion Ex. B at B-4 ("Estimating the value of a FMV Note by the replacement cost of the lost investment (*i.e.*, its fair market value) as of the Commencement Date achieves these objectives, is economically realistic, promotes certainty, and eases the administration of the estate, because it follows LBHI's prepetition internal accounting methodology.").)

## STATEMENT

9. Valuation of the Structured Securities is difficult and time-consuming. Application of the Structured Securities Valuation Methodology represents a reasonable settlement of claims based on Structured Securities to the extent such claims are contingent or unliquidated under section 502(c) of the United States Bankruptcy Code. *See Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 304 (2d Cir. 1997) ("The terms 'liquidated' and 'unliquidated' generally refer to a claim's value . . . and the ease with which that value can be ascertained."); *see also Everett v. MCI, Inc. (In re WorldCom, Inc.)*, No. 07-9590, 2008 U.S. Dist. LEXIS 47596, at n.5 (S.D.N.Y. June 18, 2008) (citing *Mazzeo* and holding that plaintiff's individual claims were liquidated to the extent that they sought compensatory damages that could be readily calculated).

10. Under section 502(c), the amount of a contingent or unliquidated claim can be estimated for the purpose of its allowance when fixing or liquidating the claim would unduly delay the administration of the case. *See* 11 U.S.C. § 502(c)(1); *see also* 4-502 COLLIER

5

ON BANKRUPTCY ¶ 502.04.  A court is given wide latitude in estimating the amount of a contingent or unliquidated claim under 502(c), and may use "whatever method is best suited to the circumstances."  *In re Granite Broadcasting Corp.*, 385 B.R. 41, 49 (S.D.N.Y. 2008) (citing *Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square)*, 160 B.R. 40, 42 (S.D.N.Y. 1993)); *see also In re Thomson McKinnon Secs., Inc.*, 191 B.R. 976, 989 (Bankr. S.D.N.Y. 1996) ("In picking among the myriad options available to the estimating court for liquidating a claim under 11 U.S.C. § 502(c), the bankruptcy court has wide discretion."). Moreover, the procedure chosen by a bankruptcy court to estimate a claim must be consistent with the fundamental policy of chapter 11 that a reorganization "must be accomplished quickly and efficiently."  *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 422–23 (Bankr. S.D.N.Y. 2003).

    11. The methods used prepetition by LBHI to calculate the values listed on the GL were comparable to those used by similarly-situated broker-dealers as of LBHI's petition date to value similarly complex instruments for their financial statements.  Further, the procedures proposed in the Amended Structured Securities Motion offer an efficient solution to a time-consuming valuation process, while still preserving creditors' rights to dispute the proposed values proposed by the Debtors.  Accordingly, the Committee believes the procedures outlined in the Amended Structured Securities Motion are reasonably suited to the circumstances, and promote an efficient solution to valuing the Structured Securities.  The Debtors have also obtained the support of certain stakeholders to the Debtors' Structured Securities Valuation Methodology and to the Debtors' Plan.  Although the Committee is pleased at the support shown to date for the Debtors' Structured Securities Valuation Methodology, the Committee believes it important to make public certain information regarding the Debtors' valuation methodologies so

6

that each holder of a Structured Security may make an informed decision regarding whether to accept the Debtors' proposed values.

### A. The Value Of Complex Structured Securities Can Be Difficult To Ascertain And Be Affected By Multiple Variables

12. Structured securities are complex financial instruments, and can vary widely in their sensitivity to the economic drivers that underpin their value. The more complex the security, the more likely valuation models will vary in determining its value. The Structured Securities at issue here are no exception.

13. The application of differing assumptions and models could lead to different values of the Structured Securities. For purposes of calculating the GL value of the Structured Securities, the Debtors applied models that utilized certain assumptions impacting the total value of the investment represented by a Structured Security (*e.g.*, static hedging). For complex securities, the cost of hedging can vary substantially over time, depending on deviations from expected performance of the underlying referenced instruments. For instance, many of the Structured Securities have payoffs that only accrue if a particular referenced instrument underlying the Structured Security is within a range of pre-established values. Certain other Structured Securities contain payoff structures where the note is terminated in exchange for a payout if the underlying referenced instrument is above or below a pre-established level at a predetermined date. Still others have payoffs that increase or decrease according to a contractual formula depending upon the performance of the underlying referenced instrument. As such, the valuation of securities with similar payoff structures tend to be highly sensitive to deviations in hedging costs.

14. The Debtors have agreed that the Notices of Proposed Claim Amounts described in the Motion that will be provided to Claimants will contain a reference to a copy of

this Statement located on the Debtors' website. If a holder believes that its Structured Security is inaccurately valued under the Structured Securities Valuation Methodology, it will have the opportunity to seek to establish an alternative valuation.

### B. Debtors Have Agreed to Correct Notes Identified With Manifest Errors

15. The Debtors and the Committee identified certain Structured Securities with potential manifest errors and the Debtors have agreed that manifest errors will be corrected. Further, the Debtors have agreed to search the population of Structured Securities to correct particular manifest errors that may be systemic in certain types of Structured Securities. The discussions between the Committee and the Debtors regarding other potential manifest errors are ongoing. The Committee will continue working with the Debtors to reach consensus on the types of valuations that must be corrected for manifest errors.

## CONCLUSION

The Committee does not object to the Amended Structured Securities Motion because it believes the procedures proposed by the Debtors provide a reasonable mechanism for resolving disputes regarding the valuation of the Structured Securities. The Committee believes that the foregoing disclosure of the Debtors' methodology will permit holders of the Structured Securities to make a fully informed decision as to whether to dispute the Debtors' proposed valuations.

Dated:   New York, New York
         August 5, 2011

                               **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

                               By:   /s/ Dennis F. Dunne
                               Dennis F. Dunne
                               Evan R. Fleck
                               1 Chase Manhattan Plaza
                               New York, NY 10005
                               Telephone:  (212) 530-5000

                               David S. Cohen
                               1850 K Street N.W., Suite 1100
                               Washington, DC 20006
                               Telephone: (202) 835-7500

                               Counsel for Official Committee of Unsecured
                               Creditors of Lehman Brothers Holdings Inc., et al.