WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re**  : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : **08-13555 (JMP)**
: 
Debtors. : **(Jointly Administered)**
: 
: 
------------------------------------------------------------------x

**DECLARATION OF DANIEL J. EHRMANN IN SUPPORT OF THE
AMENDED MOTION PURSUANT TO SECTION 105(a) AND 502(b)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR
APPROVAL OF PROCEDURES FOR DETERMINING THE ALLOWED
AMOUNT OF CLAIMS FILED BASED ON STRUCTURED SECURITIES
ISSUED OR GUARANTEED BY LEHMAN BROTHERS HOLDINGS INC.**

Pursuant to 28 U.S.C. § 1746, I, Daniel J. Ehrmann, declare:

1.  I am over the age of 18 years and make these statements of my own personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and/or my consultation with employees of LBHI and Alvarez & Marsal North America, LLC ("A&M"), which was retained by the Debtors, pursuant to this Court's approval, to advise and assist the Debtors in connection with, among other things, their restructuring, managing their assets, and maximizing the realization of their assets. *See* Order entered on December 17, 2008 [Docket No. 2278]. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this Declaration in support of the *Amended Motion Pursuant To Sections 105(a) and 502(b) of The Bankruptcy Code And Bankruptcy Rule 9019 For Approval of Procedures For Determining The Allowed Amount of Claims Filed Based On Structured Securities Issued Or Guaranteed By Lehman Brothers Holdings Inc.* (the "Motion").

### Qualifications And Background

3. I am a Managing Director with A&M. I began my career as an attorney practicing law in France for five years. I have specialized in turnaround and restructuring with A&M since 2000, serving in a variety of interim management, advisory, and financial restructuring roles.

4. I was assigned to the Lehman matter in September 2008. I am a co-head of the derivatives group for the Debtors and have responsibility for the management of all international and foreign matters of the Debtors. In that capacity, I have supervised the Lehman and A&M employees who have developed the Structured Securities Valuation Methodologies and the methodologies used to allocate the maximum amounts owed on each Structured Security to various entities that hold varying positions of such securities (the "Allocation Process").[1] On behalf of the Debtors, I have led negotiations with several holders of Structured Securities, the issuers of such securities, and the advisors to the Creditors' Committee, that have resulted in the development of the Structured Securities Valuation Methodologies and the Allocation Process.

### The Allocation Process

5. As stated in the Motion, the Debtors are not seeking approval of the methodologies used to calculate the Proposed Allowed Claim Amounts. The Motion is only

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

seeking to establish an orderly process whereby the Debtors and the claimants can seek to resolve any disagreements regarding claims filed based on Structured Securities.

6. The purpose of this Declaration is solely to assist this Court, and the Debtors' creditors, in understanding the Allocation Process, whereby the Debtors intend to allocate the Maximum Allowable Amount[2] for each Structured Security to the holders of claims filed based on such Structured Security, in proportion to each claimant's ratable interest in that particular Structured Security.

### I.    Step One:  Determine Maximum Allowable Amount Available For Distributions

7. Typically, each Structured Security is held by multiple holders and divided in varying amounts and proportions. Pursuant to the Bar Date Order, each holder who filed a proof of claim based on that holder's portion of a Structured Security was required to obtain a blocking number from the clearing agencies through which the Structured Securities were traded.[3] Each blocking number that was issued to a holder would correspond to the notional amount of a Structured Security that was held by such holder.

8. The first step in the Allocation Process is to determine the percentage of the total outstanding notional amount for a Structured Security for which a blocking number was issued. The Debtors received lists from the relevant clearing agencies of all of the blocking numbers and respective notional amounts issued in connection with Structured Securities, and compared these lists to their records and the filed proofs of claims.

---

[2]    The Structured Securities Valuation Methodologies, whereby the Debtors determine the Maximum Allowable Amount for each Structured Security, are annexed to the Motion as Exhibit B.

[3]    The blocking number requirement in the Bar Date Order applied only to a subset of the Structured Securities. The Motion and the Structured Securities Valuation Methodologies apply to all Structured Securities, even those for which claimants were not obligated to obtain blocking numbers.

9. For example, two proofs of claim were filed with respect to the Structured Security with ISIN XS0307348234 ("Note 1"), by two holders, each of whom hold a portion of Note 1. As required by the Bar Date Order, each holder requested a blocking number from the clearing agencies with respect to that holder's portion of Note 1. Both blocking numbers were issued to these holders, each corresponding to a portion of the total notional amount of Note 1. The first blocking number, CA18384, corresponds to a notional amount of EUR 8,000. The second blocking number, CA66455, corresponds to a notional amount of EUR 114,390,000. To determine the percentage of Note 1's total notional amount for which blocking numbers were issued, the Debtors will add together the notional amounts for all blocking numbers that were issued (EUR 8,000 + EUR 114,390,000), and compare that sum to the total outstanding notional amount for Note 1 as set forth on Lehman's books and records.



In this example, blocking numbers were issued for 100% of the total outstanding notional amount of Note 1. Therefore, 100% of the Maximum Allowable Amount for Note 1 is available for distribution.

10. Claims were not always filed for 100% of the notional amount of a Structured Security. For example, three proofs of claim were filed with respect to the Structured Security

with ISIN XS0359314225 ("Note 2").  A blocking number was issued for each proof of claim: (i) 6031332 was issued for a notional amount of SEK 60,000,000, (ii) 6031339 was issued for a notional amount of SEK 402,000,000, and (iii) 6045012 was issued for a notional amount of SEK 24,000,000.  However, according to Lehman's books and records, the total outstanding notional amount for Note 2 is SEK 490,000,000:



Therefore, in this example, blocking numbers were issued for only 99.2% of the total outstanding notional amount for Note 2, and therefore, only this amount is available for distribution to claims.

11.    Once the Debtors have determined, for a given Structured Security, the percentage of the total outstanding notional amount for which blocking numbers were issued by the clearing agencies, the Debtors are able to calculate the aggregate amount of the Maximum Allowable Amount that is distributable to claims with respect to that Structured Security.  To do this, the Debtors multiply the Maximum Allowable Amount for a Structured Security by the percentage of the total outstanding notional amount for which blocking numbers were issued.

12. For example, the Maximum Allowable Amounts for Note 1 and Note 2 (as published on www.lehman-docket.com on January 25, 2011) are $126,470,289 and $49,847,118, respectively. Because blocking numbers were issued for 100% of the outstanding notional amount for Note 1, the Debtors determined that the aggregate amount distributable to claims based on Note 1 is $126,470,289. On the other hand, blocking numbers were issued for only 99.2% of Note 2. Therefore, the aggregate amount distributable to claims based on Note 2 is 99.2% of $49,847,118, *i.e.*, $49,440,203.

| | A | x | B | = | C |
|---|---|---|---|---|---|
| ISIN | Maximum Allowable Amount (as published on 1/25/11) | | Percentage of Notional Amount for which Blocking Numbers were Issued by Clearing Agencies | | Aggregate Amount Distributable to Claims Based on Relevant ISIN |
| XS0307348234 | $126,470,289 | | 100% | | $126,470,289 |
| XS0359314225 | $49,847,118 | | 99.2% | | $49,440,203 |

### III. Step Two: Determine A Claimant's Holdings of The Notional Amount For Which Blocking Numbers Were Issued

13. Once the Debtors have determined the aggregate amount distributable for claims based on a particular Structured Security, the Debtors need to allocate this amount among the holders who filed claims based on that Structured Security. To do this, the Debtors use the information contained in the records provided by the clearing agencies and the filed proofs of claim to determine the percentage held by each claimant of the total notional for which a blocking number was issued. In some instances, although a blocking number was issued, no proof of claim was filed and as such, no aggregate amount distributable was allocated to these blocking numbers.

14. For example, of the two claims that were filed based on Note 1, the claim with blocking number CA18384 was filed for the notional amount of EUR 8,000, while the claim with blocking number CA66455 was filed for the notional amount of EUR 114,382,000. The claimant with blocking number CA18384 therefore holds 0.01% of the total outstanding notional amount for Note 1. With respect to Note 2, of the three claims that were filed, the claim with blocking number 6031332 was filed for the notional amount of SEK 60,000,000, the claim with blocking number 6031339 was filed for SEK 402,000,000, and the claim with blocking number 24,000,000 was filed for SEK 24,000,000. Thus, the claimant filing for blocking number 6031332 holds 12.35% of the total outstanding notional amount for which blocking numbers were issued for Note 2.



Following the determination of the percentage of the valid claims filed based on a Structured Security, the Maximum Distributable Amount is allocated on a pro-rata basis.

**IV.     Step Three:  Determination of Proposed Claim Amount Per Blocking Number**

15.    Finally, with respect to each Structured Security, the Debtors are able to determine the proposed claim amount for each blocking number by multiplying (A) a claimant's holdings in that Structured Security as a percentage of the notional amount for which blocking numbers were issued by the clearing agencies with respect to that Structured Security (determined in Step Two), by (B) the aggregate amount distributable to claims for that Structured Security (determined in Step One).  For example, with respect to Note 1, the amount distributable to claims is $126,470,289.  As stated above, the claimant with blocking number CA18384 holds 0.01% of the total outstanding notional amount for Note 1.  Therefore, with respect to blocking number CA18384, the proposed allowed claim is $8,844.85, *i.e.*, 0.01% of $126,470,289.  With respect to Note 2, the amount distributable to claims is $49,440,203.  The claimant with blocking number 6031332 holds 12.35% of the total outstanding notional amount for which blocking numbers were issued for Note 2.  Therefore, the proposed allowed claim amount for blocking number 6031332 is $6,103,728.75, *i.e.*, 12.35% of $49,440,203.



Given that many proofs of claim were filed asserting amounts due based on more than one Structured Security, the Debtors ultimately need to determine, and then aggregate, the proposed claim amounts with respect to each Structured Security included on a proof of claim.

16. Although there are likely to be more complexities that arise during the Allocation Process, the examples above illustrate how the Debtors will start with a Maximum Allowable Amount for a particular Structured Security, and from that amount, determine a proposed allowed claim amount for individual blocking numbers and, ultimately, proofs of claim that contain those blocking numbers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of August, 2011.

/s/ Daniel J. Ehrmann
Daniel J. Ehrmann