CHRIS STOVIC  Pro Se

435 Greeves St.
Kane, PA 16735
1-814-837-7046
       Creditor


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRIC OF NEW YORK

--------------------------------------------------------------x
In re:                                                        :
                                                             : Chapter 11
LEHMAN BROTHERS HOLDING INC., et al.                          :
                                                             : Case No. 08-13555(JMP)
                                     Debtor                           : (Jointly Administered)
--------------------------------------------------------------x

## MOTION TO OBJECT THE SECOND AMENDED JOINT CHAPTER 11 PLAN of LEHMAN BROTHERS HOLDING INC and REQUEST for IMMEDIATE PAYMENT

The Debtor BREACHED the TERMS and CONDITIONS set in the PROSPECTUS SUPPLEMENT (PROSPECTUSE DATED AUGUST 11, 1997) $250,000,000
LEHMAN BROTHERS HOLDINGS INC.
7.20% NOTES DUE 2009


WHEREAS we object the amended joint chapter 11 plan of LBHI for the reasons stated,

### I  FACTS

1    The Debtor Breached the TERMS and CONTITIONS as set in (Contract) PROSPECTUSE,

     it constitute a material breach.

2    The Senior Notes we purchased were book entry.

3    Our first request for payment was stated in December 2008 and in the BRIEF of January 24, 2009.

4    The Prospectus states: "The Notes will mature on August 15, 2009. The Notes may not be redeemed prior to

     maturity and are not subject to any sinking fund."
     INTEREST PAYABLE FEBRUARY 15 AND AUGUST 15

5    It is clearly stated in the PROSPECTUS SUPPLEMENT(TO PROSPECTUS DATED AUGUST 11, 1997)

" In the event

(a) of any insolvency or bankruptcy proceedings, or reorganization in respect of Holdings..."

"(b) that (i) a default shall have occurred with respect to the payment of principal of or interest on or other monetary amounts and payable on any Senior Debt (other than a default in the payment of principal of or interest or other monetary amounts due and payable) with respect to any Senior Debt; permitting the holder or holders thereof to accelerate the maturity thereof..." and

" (c) that the principal of and accrued interest on the Subordinated Debt shall have been declared due and payable upon an Event of Default under the Subordinated Indenture..."

"the holders of all Senior Debt shall first be entitled to receive payment of the full amount unpaid thereon in cash before the holders of any of the Subordinated Debt are entitled to receive a payment on account of the principal, premium, if any, or interest, if any, on such Subordinated Debt."

6   At the heart is the "Indenture affords holders of Debt Securities protection in the event of a substantial transaction, reorganization, restructuring, merger or other similar transaction involving the Company that may adversely affect holders of Debt Securities."

7   In Court hearing date June 3, 2009 of the Bankruptcy court pertaining to the
"MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING DISCOVERY FROM BARCLAYS CAPITAL, INC.
states, purported assumption of up to $4.25 billion in liabilities,"

On page 5, ITEM 10, "An integral component of the Sale Transaction, to Barklays Bank PLC was genuine, adequate and fair consideration for the asset purchase as approved by the Court;" and

ITEM 12. "Accordingly, on September 20, 2008, the Court entered an order (the "Sale Order") approving the Sale Transaction, including the assumed liabilities."

8   The sale transaction confirms it was "a substantial transaction, reorganization, restructuring, merger or other similar transaction involving the Company that may adversely affect holders of Debt Securities" - the Senior Notes 7.20%

9   After the approval of "the petition and the court order" thereafter the Debtor sold - transfer the most

profitable business to Barklays it was "Substantial leveraged transaction" and the court overseeing the Debtor operation failed to compel the Debtor to comply with the condition, terms etc. as set in the Prospectus."

The debtor had " immediately available funds" for full payment and should have deposited the funds in the holders account same day.

10  The Notes were purchase on a promise; "Promise is a contractual obligation" that the notes will be paid in full amount in cash "in an event of insolvency, reorganization" of the "immediately available funds."

11  The PROSPECTUSE in "SALE OF ASSETS" states,

"Holdings may, without the consent of any Holders of Outstanding Debt Securities,.. transfer or lease its assets substantially... to, any Person,... provided that (i) the Person (if other than Holdings) formed by such consolidation or.. which acquires or leases the assets of Holdings substantially... is organized under the laws of any United States jurisdiction and assumes Holdings' obligations on the Debt Securities."

and under the Indenture, (ii) after giving effect to the transaction,..."

## II ARGUMENTS

12  The other than the TERMS set for principal and interest to be paid at the maturity date of the Notes - Indentures 7.20%; The Debtor had the option to ASSUME or REJECT these TERMS and CONDITION of the Prospectus.

13  The SELL of SUBSTANTIAL ASSETS which is directly material breach of the contract TERMS and CONDITION set in the PROSPECTUS.

14  None compliance with executory contracts, "failure to performed constitute a material breach excusing the performance of the other."

15  "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. R. 439, 460 (1973); In re Murexco Petroleum, Inc., 15 F.3d 60 (5th Cir. 1994);

In re Texscan Corp., 976 F.2d 1269 (9th Cir. 1992); United States v. Floyd, 882 F.2d 233, 235 (7th Cir. 1989); Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); In re Speck, 798 F.2d 279, 279-80 (8th Cir. 1986); Gloria Mfg. Corp. v. International Ladies Garment Workers' Union, 734 F.2d 1020, 1021 (4th Cir. 1984).

16  It was the Debtor in Possession duty, responsibilities to comply with the terms, condition of the Prospectus that is, the Purchaser ( Barklays) is required to "assume holdings' obligation on Debt Securities," pertaining to the Senior Notes of 7.20%.

17  Te debtor cannot assume the benefits of an executory contract without assuming its burdens as well. See, e.g., Covington v. Covington Land L.P., 71 F.3d 1221, 1226 (6th Cir. 1995) ("When a debtor assumes the contract under § 365, it must assume both the benefits and the burdens of the contract.

18  A party who assumes an executory contract must assume it in its entirety; it may not be assumed in part and rejected in part. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); Department of the Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1472 (4th Cir. 1990); In re Chicago, R.I. & Pac. R.R., 860 F.2d 267, 272 (7th Cir. 1988); Richmond Leasing Co. v. Capital Bank, 762 F.2d 1303, 1311 (5th Cir. 1985); In re B & L Oil Co., 782 F.2d 155, 157 (10th Cir.1987); Lee v. Schweiker, 739 F.2d 870, 876 (3d Cir. 1984); In re Leslie Fay Companies Inc., 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); In re Village Rathskeller, 147 B.R. 665, 671 Bankr. S.D.N.Y. 1992).

19  The Debtor in Possession breach the duties, responsibility under the terms, condition, contract as set in the Prospectus.

20  RESTATEMENT Section 536, "Misrepresentation is fraudulent if the maker
    (a) knows or believes that the mater is not as he represent it to be,

(b) does not have the confidence in the accuracy of his representation that he states or

(c) know that he does not have the basis for his representation that he states or implies."

### III   STATEMENT and ARGUMENTS

21   At the heart of a Principal protected Notes is the guarantee. Typically, PPNs guarantee 100% of

invested capital, as the note is held to maturity, in the case of LBHI "to accelerate the

maturity thereof.. "

It means, regardless of market conditions, investors receive back all money they invested;

The Fact that "The Notes may not be redeemed to maturity and are not subject to any sinking fund;

"Permitting the holder or holders thereof to accelerate the maturity thereof..."as stated in

Item 3(b) of the "POSPECTUS SUPPLEMENT."

22   Under the " PROSPECTUS SUPPLEMENT (TO PROSPECTUS DATED AUGUST 11, 1997)

The Lehman Brothers Holding Inc. was "insolvent and in bankruptcy proceedings, reorganization permitting

the holder or holders thereof to accelerate the maturity thereof...ITEM 3(b)" that means before "the

maturity date August 15, 2009."   ("The Notes mature on August 15, 2009.")

23   The most important indicator of Notes bond's potential to insolvency, reorganization is its ranking by

one or both of the two most recognized bond-rating services;

24   As late as August 26, 2008 the Senior Notes 7.20% were rated by these reputable rating agency S & P "A"

and   Moody "A2";

25   RESTATMENT section 538 (2) the mater is material if

(a) a reasonable man would attached importance to its existence or nonexistence in determining

his choice of action in transaction in question.

26   The Debor in Possession has engaged in "re- rating the Notes 7.20% as Plain Vanilla - FIXED," as

"Unsecured Nonpriority claims." This in fact is Representation, contrary of the Prospectus.

The Prospectus states "ANY  REPRESENTATION TO THE CONTRARY IS CRIMINAL OFFENSE."

27  The Priority are clearly stated in the prospectus; Please let me briefly state them as per prospectus for

   Senior Notes 7.20%, they are:

   a. Insolvency, Reorganization, Bankruptcy
   b. Permitting the holder or holders thereof to accelerate the maturity thereof.
   c. Guarantee Principal Protection 100%- - Substantial leveraged transaction
   d. Substantial leveraged transaction - Senior Notes will be paid immediately
   e. in immediately available funds
   f. will be paid full amount in cash.
   g. The funds will be deposited same day of the "substantial leveraged transaction"

28  Moody's Investors Service and Standard & Poor's are the two premiere bond-rating services; I have used

   their ranking system for over 35 years; If one of these services does not rate a bond, I would pass on it.

   I have no doubt of their expertise and understanding in their capacities and capability to rate a debt.

29  For the 7.20% Senior Notes, Prospectus state, the Sr. Note holders "shall first be entitled to receive **payment**

   of the full amount unpaid thereon in cash before the holders of any of the Subordinated Debt are entitled to

   receive a payment on account of the principal..." It does not state 21.4%. after see EXIBIT 1.

   It does not state after bonuses are paid, after disclosure statement is approved etc.

30  RESTATMENT section 549 (1) Measure of Damages for fraudulent Misrepresentation is entitled to recover

   as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation

   is a legal cause including

   (a) pecuniary loss suffer as a consequence of the recipient's reliance upon the misrepresentation.

   (b) The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover

   additional damages sufficient to give him the benefit of his contract with the maker.

31 Under PROSPECTUS SUPPLEMENT(TO PROSPECTUS DATED AUGUST 11, 1997)

   "LIMITATION ON LIENS" states,

   " So long as any Debt Securities remain outstanding,.. <u>Holdings will not, permit</u> any <u>Designated</u>

   <u>Subsidiary (as defined below), directly or indirectly, to create, issue, assume,</u>

   <u>incur or guarantee any indebtedness</u> for..." Clearly any Indebtedness issued to the

"PROSPECTUS SUPPLEMENT(TO PROSPECTUS DATED AUGUST 11, 1997) is in violation of the Senior Note holders rights.

32  The Guarantee the principal protections 100% (PPN) are clearly stated, "The Note holders of "Senior Debt shall first be entitled to receive payment of the full amount unpaid thereon in cash..."

33  The facts verifies, that our indentures are not only secured but should have been paid as soon as the transaction was completed with Barklay's.

## IV STATUTE

34  The PROSPECTUS sets the terms and the condition for promise of a contract under which the Debtor sold the instruments. Promise of the Sr. notes is a binding contract under the terms and the conditions set, either that be verbal, by hand shack or written as stated in the prospectus, that it will be paid in full; "

"U.C.C. Sec.3-108(b) Draft is payable on demand."
 (c) The Indenture is payable at a fixed date payable on demand.
 It is also payable before a fixed date as stated, permitting the holder or holders thereof to accelerate the maturity thereof...
 If demand for payment is not made before that date becomes payable as defined in the "prospectus."

35  The Prospectus issued by LBHI sets the contract or agreement. It absolutely and unconditionally define the TERMS for payment of the Notes in "CONSOLIDATION, MERGER AND SALE OF ASSETS"

No contract or agreement is a promissory note .... which does not provide for payment absolutely and unconditionaly.

Chicago T,&S.B. v. Chicago T.&T. Co., 190 Ill. 404, quotd in Matchett, L., Stewart v. McIntosh, 9 N.E. 2d 427, 291 Ill. App. 65, 1993

36  In re Hodgdon, 54 B.R. 688 (Bankr. W.D. Wis. 1985) (contract may be assumed through conduct; conduct must be either express declaration of assumption or specific, unequivocal action leading to no possible conclusion other than assumption).

37  In re Allen, 135 B.R. 856, 864 (Bankr. N.D. Iowa 1992) (assuming a contract under § 365 only allows the debtor to carry on with the contract according to its terms);

38  In re Fitch, 174 B.R. 96, 101 (Bankr. S.D. Ill. 1994) ("debtor cannot change the nature of a contract merely by ... assum[ing] it ... debtor may not 'conditionally' assume such a contract, and ... must assume its burdens as well as its benefits")

39  502 (F) ... a claim arissing in the ordinary course of the Debtor's business or a financial affairs after the commencment of the case, but before the earlier of the appointment of a trustee the order for relief shall be determined as of the date such claim arises and shall be allowed under section (d) and (e).

40  CONSIDERATION. The consideration constitutes reasonably equivalent value of fair consideration as the case is (as those terms are defined in each of the Uniform Fraudulent transfer Act, Uniform Fraudulent Conveyance Act, Bankruptcy code Section 548 and fair consideration under Bankruptcy code and under the laws of United States and any state.

41  Sufficient Consideration to support the notes is the prospectus, in as much as nothing passes under the instrument until it is paid. 3R.C.L. 933, Sec.128, quted by Martin, J., in re Smith's Estate, 277 N.W.141, Wis. 1938.

42  "LBHI schedule F" creditors holding Unsecured Nonpriority Claims list our claim Cusip 524908BQ2 as Plain Vanilla - FIXED meaning worthless. The Debtor and the underwriters were selling the Senior Notes as S & P "A" Meaning "Strong Capacity to meet financial commitment" and Moody "A2" Meaning Subject to "low credit risk"; The underwriters are listed,

| UNDERWRITER | PRINICPAL AMOUNT OF NOTES |
|---|---|
| <S> | <C> |
| Lehman Brothers Inc. | $ 31,250,000 |
| ABN AMRO Chicago Corporation | 31,250,000 |
| Bear, Stearns & Co. Inc. | 31,250,000 |
| First Chicago Capital Markets, Inc. | 31,250,000 |
| First Union Capital Markets Corp. | 31,250,000 |
| HSBC Securities, Inc. | 31,250,000 |
| Nations Banc Capital Markets, Inc. | 31,250,000 |
| UBS Securities LLC | 31,250,000 |
| Total | $ 250,000,000 |

Clearly, "misrepresentation" and Entrapment in violation of the prospectus.

"ANY REPRESENTATION TO THE CONTRARY IS CRIMINAL OFFENSE."

43  Facts basic to the transaction; A basic fact is a fact that is assumed by the parties as a basis for the transaction itself; It is a fact that "investment grade rating" goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargaining for or dealt with.

44  " The Company has agreed to indemnify the Underwriters against certain liabilities, including liabilities under the Securities Act of 1933."

45  Restatement section 551 (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

   (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the fact from being misleading.

46  The Debtor is in delusion believing that the Senior Notes were not protected.

47  The Trustee "WILMINGTON TRUST" failed to protect the Note holders under the terms and Conditions as set in the prospectus.

## V  CONCLUSION

48  The court erred in its decisions by reclassifying the claim from secured to unsecured.

49  The weapon of "Gold digger"... is the action for Breach of Promise".

50  To impair the obligation of the TERMS CONDITIONS of a contract of the Senior Notes - prospectus, within prohibition of Article I, Section 10, U.S. Constitution, is to weaken it, lessen, or make it worse in any respect, and any law which changes the intention and legal effect of the parties, giving to creditors less, or which imposes condition not included in the prospectus.

51  Debtor in Possessions, Trustees of Wilmington Trust, Bankruptcy Courts - "party of two or more in partnership conspiring" to inflict financial and economic harm on the Senior Notes holders of 7.20% of Lehman Brothers Holding Inc. - LBHI.

52  The facts, Restatements, statute, records, documents aver the truth, are clearly stated and unambiguous and the court must give its decision for the creditor - Movant.

53   The second Amendment Chapter 11 plan and the Disclosure Statement does not provide for "immediate payment in full amount in cash," in violation of the PROSPECTUS for 7.20% indenture.

54   For the fact stated the Second Amended Chapter 11 Plan and Disclosure Statement should be denied.

## VI   RELIEF

a.  The injured party must be placed in as good a position as he would have been if the TERMS and CONDITIONS of the - PROSPECTUS, contract, agreement, laws have been performed as agreed.

b.  The court should expedite the relief due to Material breech, responsibilities and negligence.

c.  I am requesting the court to issue an order to compel the debtor to immediately indemnify the creditors C. or N. Stovic.

d.  To compel the Debtor to immediately deposit the funds in our account with Zions Direct, One South Main 17th Floor, Salt Lake City, UT84133.  Telephone No. 1-800-524-8875.

e.  Punitive Damages Restatement Section 908 (2) for conduct that is outrageous, because of Debtors... reckless indifference to the rights of others.

g.  Any other relief as the court deems proper for fees, expenses and time.

h.  Due to Financial, health and other personal problems I will not be present at a hearing;

i.  I reserve the right to respond in writing.

Respectfully,

*Chris Stovic*
Chris Stovic, Pro Se

July 30, 2011

# EXHIBIT 1

WILMINGTON TRUST

## NOTICE TO HOLDERS OF SENIOR NOTES
## OF LEHMAN BROTHERS HOLDINGS INC.
## (SEE ATTACHED EXHIBIT A - LIST OF CUSIP NOS.)

### RE: FILING OF SECOND AMENDED CHAPTER 11
### PLAN AND DISCLOSURE STATEMENT AND
### VALUATION METHODOLOGY APPLICABLE TO STRUCTURED SECURITIES

**This Notice provides an update on important matters in the Lehman Brothers Bankruptcy Cases. No action is required in connection with this Notice.**

Wilmington Trust Company (the "Trustee") is the successor indenture trustee under that certain Indenture dated as of September 1, 1987, as amended, supplemented or modified (the "Indenture"), between Lehman Brothers Holdings Inc. (formerly known as Shearson Lehman Brothers Holdings Inc.) ("LBHI") and the Trustee. Under the Indenture, LBHI issued the senior debt securities identified by CUSIP numbers on the attached Exhibit A (the "Senior Notes"). Holders of the Senior Notes are referred to herein as the "Senior Noteholders."

On September 15, 2008, and at various times thereafter, LBHI and certain of its affiliates commenced cases under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases"). LBHI and its affiliates that are subject to bankruptcy proceedings in the United States are referred to herein as the "Debtors."

On September 2, 2009, as authorized under the indenture, the Trustee filed a proof of claim against LBHI on behalf of the Senior Noteholders (the "Global Proof of Claim"). The Global Proof of Claim asserts claims against LBHI for, among other things, the principal, interest, and other amounts payable to the Senior Noteholders under the Senior Notes (the "Senior Noteholder Claim").

On July 1, 2011, the Debtors filed the Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Second Amended Plan") [docket no. 18204 at www.lehman-docket.com] and the related Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement") [docket no. 18205 at www.lehman-docket.com ]. Thirty institutional creditors, representing over $100 billion in claims against the Debtors, have agreed to support the Second Amended Plan and Disclosure Statement and have signed Plan Support Agreements ("PSAs") with the Debtors. Those creditors who signed PSAs (the "PSA Creditors"), include substantially all of the proponents of the two alternative plans that were filed in the Bankruptcy Cases earlier this year. The proponents of the alternative plans have agreed not to prosecute their plans or seek approval of their disclosure statements while the Debtors seek approval and confirmation of the Second Amended Plan and Disclosure Statement.

The Trustee is a member of the official committee of unsecured creditors (the "Committee") in the Bankruptcy Cases. The Committee supports the Second Amended Plan and will join the Debtors in seeking confirmation of the Second Amended Plan.

A hearing to consider entry of an order determining that the Disclosure Statement contains "adequate information" pursuant to the Bankruptcy Code and approving the Disclosure Statement and the voting procedures and ballots with which creditors, including the Senior Noteholders, will vote on the Second Amended Plan will be held on August 30, 2011. The hearing will be held in Courtroom 601 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10014 on August 30, 2011 at 10:00 a.m. (Eastern Time) (the "Disclosure Statement Hearing"). The deadline for objections and responses to the motion for approval of the Disclosure Statement is August 11, 2011 at 4:00 p.m. (Eastern Time).

The Debtors have not yet finalized the voting procedures and ballots. Once the Debtors have completed the voting procedures and ballots, and the Bankruptcy Court has approved them, the Debtors will send ballots to all voting creditors, including the Senior Noteholders, in advance of the voting deadline.[1]

The Second Amended Plan and Disclosure Statement include, among other things, the Debtors' estimate of the percentage recovery for the allowed amount of the Senior Noteholder Claim. A summary chart setting forth the proposed treatment of the Senior Noteholder Claim is included on page 6 of the Disclosure Statement. The Senior Noteholder Claim is classified as a "Class 3" claim. Class 3 consists of "Senior Unsecured Claims against LBHI." According to the Disclosure Statement, Class 3 claimants are expected to recover 21.1% of the allowed amount of their claims. The Debtors have not yet provided a proposed total allowed amount of the Senior Noteholder Claim, nor has the Bankruptcy Court ruled on the claim. As discussed below, the Debtors have provided a proposed estimated allowed claim amount for those Senior Notes that are Senior Structured Securities (as defined below).

The Disclosure Statement includes information regarding the Debtors' proposed methodology (the "Valuation Methodology") for valuing certain of the Senior Notes that the Debtors consider to be "structured securities" (the "Senior Structured Securities"). Structured securities, according to the Disclosure Statement, are notes in which the return at maturity and/or the payment of periodic interest is linked to the performance of an underlying asset or group of assets, including global indices, single stock, currencies, interest rates, and various credit derivative instruments and baskets thereof. A description of the Valuation Methodology is included at pages 43-44 and Exhibit 11 of the Disclosure Statement. The Debtors have provided a spreadsheet that identifies the Senior Structured Securities by CUSIP number and that includes the estimated allowed claim amount for each Senior Structured Security on the "Case Information" tab of their website, www.lehman-docket.com. **Senior Notes that are not Senior Structured Securities will not appear on the spreadsheet and will not be subject to the Valuation Methodology.** The Debtors intend to republish the maximum allowable claim amounts for each Senior Structured Security on or before August 15, 2011.

On June 29, 2011, the Debtors filed an Amended Motion Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 For Approval of Procedures for Determining the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc. (the "Structured Securities Motion") [docket no. 18127 at www.lehman-docket.com] seeking approval of notice and objection procedures to determine the allowed amount of claims based on certain structured securities issued by various Lehman entities. The Structured Securities Motion seeks to establish claim allowance procedures primarily for structured securities that do not have an indenture trustee, including structured securities issued as part of Lehman's European Medium-Term Note Program. The Global Proof of Claim is not subject to the proposed claim allowance procedures under the Structured Securities Motion. A hearing to consider the Structured Securities Motion is scheduled for August 9, 2011 at 2:00 p.m.

The Debtors do not seek court approval of the Valuation Methodology under the Structured Securities Motion, although they do intend to apply the Valuation Methodology to the structured securities that are subject to the motion, as described in the Disclosure Statement. In response to an earlier version of the Structured Securities Motion, on May 13, 2011, the Committee filed an informational statement that an independent analysis by its financial advisors revealed that there may be statistically relevant discrepancies between the Debtors' valuations according to the Valuation Methodology and the values arrived at through the Committee's sample testing process. The process to determine the appropriate methodology for valuing structured securities, including the Senior Structured Securities, is ongoing. Under the PSAs and the Second Amended Plan, the PSA Creditors have agreed that any structured securities claims that are held by such creditors and that are subject to the Structured Securities Motion will be valued according to the Valuation Methodology.

<u>NO ACTION IS REQUIRED AT THIS TIME</u>. The Trustee will continue to monitor the bankruptcy proceedings, attend court hearings (including the Disclosure Statement Hearing and the hearing on the Structured Securities Motion), and take such further action on behalf of the Senior Noteholders as it deems appropriate. Any Senior Noteholder wishing to take any action in its individual capacity should consult its own professionals.

The Trustee recommends that the Senior Noteholders monitor the Debtors' website (www.lehman-docket.com), the Committee's website (www.lehmancreditors.com), and the Trustee's website (www.wilmingtontrust.com/lehman) for

---

[1] Senior Noteholders are not yet able to vote on the Second Amended Plan as the voting procedures (including the voting deadline) have yet to be approved by the Bankruptcy court. <u>No action is required at this time.</u>

Lehman Brothers Holdings Inc.

Schedule F:
Creditors Holding Unsecured Nonpriority Claims
Debt

08-13555 (JMP)

| Agent/Trustee Name | CUSIP Number | Address 1 | Address 2 | City | State | Zip | Country | Description | Contingent | Unliquidated | Disputed | Current Notional Amount (USD) | Accrued Interest (USD) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Citibank, NA | 52517PSC1 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3ML FRN RESTRUCTURE OF MTN22AA EXTENDIBLE | N | N | N | $ 220,000,000.00 | Undetermined | $ 220,000,000.00 |
| Citibank, NA | 52517PE23 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3Y FRN | N | N | N | $ 472,980,000.00 | Undetermined | $ 472,980,000.00 |
| Citibank, NA | 52517PC41 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3Y FRN | N | N | N | $ 150,000,000.00 | Undetermined | $ 150,000,000.00 |
| Citibank, NA | 52517PG39 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3YR FLOATING RATE NOTE | N | N | N | $ 330,000,000.00 | Undetermined | $ 330,000,000.00 |
| Citibank, NA | 52517PG21 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3YR FLOATING RATE | N | N | N | $ 895,090,000.00 | Undetermined | $ 895,090,000.00 |
| Citibank, NA | 52517PK83 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 3YR FRN | N | N | N | $ 852,435,000.00 | Undetermined | $ 852,435,000.00 |
| Citibank, NA | 52517PVU2 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - 5YR MTN BONY NONY | N | N | N | $ 451,384,000.00 | Undetermined | $ 451,384,000.00 |
| Citibank, NA | 52520MDF5 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - EXTENSION (AGAIN) GLOBAL | N | N | N | $ 175,000,000.00 | Undetermined | $ 175,000,000.00 |
| Citibank, NA | 52520MDK4 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - EXTENDIBLE RESTRUCTURE 1ML +17.19 | N | N | N | $ 97,200,000.00 | Undetermined | $ 97,200,000.00 |
| Citibank, NA | 52490BBQ2 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - FIXED | N | N | N | $ 221,605,000.00 | Undetermined | $ 221,605,000.00 |
| Citibank, NA | 52517PO46 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - GLOBAL 2Y FRN | N | N | N | $ 913,240,000.00 | Undetermined | $ 913,240,000.00 |
| Citibank, NA | 52517PO61 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - GLOBAL 2YR FRN | N | N | N | $ 396,578,000.00 | Undetermined | $ 396,578,000.00 |
| Citibank, NA | 52517PQS3 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - GLOBAL 2YR FRN | N | N | N | $ 604,500,000.00 | Undetermined | $ 604,500,000.00 |
| Citibank, NA | 52517PW56 | 399 Park Avenue | | New York | NY | 10043 | UNITED STATES | Current Portion of Long Term Debt - Plain Vanilla - GLOBAL 2YR FRN | N | N | N | $ 845,000,000.00 | Undetermined | $ 845,000,000.00 |

# CONFIRMATION

MAIL TO:

¶ 020360 XPVL1MT2 000000
CHRIS STOVIC AND NANCY STOVIC
TONY STOVIC & RAMONA BALKE
& MARIJANA STOVIC
435 GREEVES
KANE PA 16735-1517

FOR THE ACCOUNT OF:

CHRIS STOVIC AND NANCY STOVIC
TONY STOVIC & RAMONA BALKE
& MARIJANA STOVIC
435 GREEVES
KANE PA 16735-1517

ACCOUNT NUMBER: AC5-013647
ACCOUNT TYPE: 1

YOUR ACCOUNT EXECUTIVE:
ZIONS DIRECT
A.E. NUMBER: OZD

**YOU BOUGHT:**

LEHMAN BROTHERS HLDGS SR NTS INT RATE  7.200%
MATURITY  08/15/2009 DATED 08/19/1997 BOOK ENTRY ONLY
1ST CPN DTE 02/15/98 CPN PMT SEMI ANNUAL ON FEB 15 AND AUG 15
MOODY RATING A2 S & P RATING A

| | |
|---|---|
| TRADE DATE: | 08-21-08 |
| PROCESS DATE: | 08-21-08 |
| SETTLEMENT DATE: | 08-26-08 |
| CUSIP NUMBER: | 524908-BQ-2 |
| SYMBOL: | LEH.HF |

WE CONFIRM THE BELOW TRADE(S), SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THIS CONFIRMATION

| TRADE NUMBER | QUANTITY | PRICE | PRINCIPAL | INTEREST | COMMISSION COMM EQUIV | SERVICE CHARGE | TRANS. FEE | NET AMOUNT USD | CPTY |
|---|---|---|---|---|---|---|---|---|---|
| Y43546 | 10,000 | 99.875 | 9,987.50 | 22.00 | 10.95 | | | 10,020.45 | 1 |
| YIELD | 7.213% TO | MATURITY | | | | | | | |

INVESTMENT PRODUCTS OFFERED THROUGH ZIONS DIRECT:
* ARE NOT DEPOSITS, OBLIGATIONS OF OR GUARANTEED BY A BANK;
* ARE NOT INSURED BY THE FDIC; AND,
* ARE SUBJECT TO INVESTMENT RISK (PRINCIPAL FLUCTUATIONS), INCLUDING THE POSSIBLE LOSS OF THE PRINCIPAL INVESTED.
NOTE: BANK CDS AND RESERVE INSURED DEPOSITS ARE FDIC INSURED AND BANK GUARANTEED.

| TOTALS | 10,000 | | 9,987.50 | 22.00 | 10.95 | | | 10,020.45 | |
|---|---|---|---|---|---|---|---|---|---|

THIS CONFIRMATION IS AN ADVICE NOT AN INVOICE. REMITTANCE OR SECURITIES ARE DUE ON OR BEFORE SETTLEMENT DATE.

SEE TERMS AND CONDITIONS AND EXPLANATION OF CODED SYMBOLS RELATING TO THIS CONFIRMATION. ON OTHER THAN ROUND LOTS (NORMALLY 100 SHARES) IF DIF APPEARS ABOVE AN ODD-LOT DIFFERENTIAL HAS BEEN CHARGED IN CONNECTION WITH THIS TRANSACTION. THE AMOUNT OF SUCH DIFFERENTIAL WILL BE FURNISHED UPON REQUEST. CLEARING THROUGH PERSHING LLC, A SUBSIDIARY OF THE BANK OF NEW YORK MELLON CORPORATION. MEMBER FINRA, NYSE, SIPC. ONE PERSHING PLAZA, JERSEY CITY, NJ 07399

**Standard & Poot's**

**What do the letter ratings mean?**

The general meaning of our credit rating opinions is summarized below.
'AAA'—Extremely strong capacity to meet financial commitments. Highest Rating.
'AA'—Very strong capacity to meet financial commitments.
'A'—Strong capacity to meet financial commitments.
'BBB'—Adequate capacity to meet financial commitments, but more subject to adverse economic conditions.
'BBB-'—Considered lowest investment grade by market participants.
'BB+'—Considered highest speculative grade by market participants.
'BB'—Less vulnerable in the near-term but faces major ongoing uncertainties to adverse business, financial and economic conditions.
'B'—More vulnerable to adverse business, financial and economic conditions but currently has the capacity to meet financial commitments.
'CCC'—Currently vulnerable and dependent on favorable business, financial and economic conditions to meet financial commitments.
'CC'—Currently highly vulnerable.
'C'—Currently highly vulnerable obligations and other defined circumstances.
'D'—Payment default on financial commitments.

Note: Ratings from 'AA' to 'CCC' may be modified by the addition of a plus (+) or minus (-) sign to show relative standing within the major rating categories.

Specific ratings are also available from Standard & Poor's Ratings Desk by emailing ratings_request@standardandpoors.com

top

Moody's ratings

## Long-term obligation ratings

### Investment grade

**Aaa**: Moody judges obligations rated Aaa to be the highest quality.

**Aa (Aa1, Aa2, Aa3)**: Moody judges obligations rated Aa to be high quality, with "very low credit risk."

**A (A1, A2, A3)**: Moody judges obligations rated A as "upper-medium grade", subject to "low credit risk."

**Baa1, Baa2, Baa3**: Moody judges obligations rated Baa to be "moderate credit risk".

**Speculative grade** (also known as "High Yield" or "Junk").

**Ba1, Ba2, Ba3**: Moody judges obligations rated Ba to have "questionable credit quality."

**B1, B2, B3**: Moody judges obligations rated B as speculative and "subject to high credit risk".

**Caa1, Caa2, Caa3**: Moody judges obligations rated Caa as of "poor standing and are subject to very high credit risk".

**Ca**: Moody judges obligations rated Ca as "highly speculative."

**C**: Moody judges obligations rated C as "the lowest rated class of bonds and are typically in default."