Linda Neufeld                                          Case No. 08 – 13555
105 – 5070 Uplands Drive                              Chapter 11
Suite # 271
Nanaimo,  BC
Canada      V9T 6N1


August 1, 2011


The Honorable James M. Peck
United States Bankruptcy Court
One Bowling Green
New York,  NY    10004
Courtroom:    601


Dear Judge James M. Peck:


RE:                    LEHMAN BROTHERS HOLDINGS INC., et al., Debtors


OBJECTION OF LINDA NEUFELD TO THE

DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT


I, Linda Neufeld, am a Holder of LBHI Capital Trust Preferred Securities –  a LBHI Creditor – and

I have a Claim Value of approximately $ 1,300,500.00.


I hereby file my Objection to the Debtors' Second Amended Disclosure Statement (Filed July 1, 2011)

and in support thereof  I respectfully state the following reasons:


1.        There are  just too many financial inconsistencies and questionable asset

          valuations.

- 2 -

For examples:

a.        The Estimated Plan Recovery/Net Distributable Assets for

the Creditors of LBHI and each of the 22 Affiliate Debtors – as

outlined in the Second Amended Disclosure Statement –  totals

$ 76,298,000,000.00.  This $ 76.298 B does not correspond

with the Estimated Net Recovery of $ 60.1 B that is stated on

Page 3 in the LBHI Plan Status Report – dated Jan 13, 2011.

The Estimated Plan Recovery/Net Distributable Assets of

 $ 76.298 B is outlined in Exhibit 4 – Recovery Analysis

for LBHI and each of the 22 Affiliate Debtors – of the Debtors'

Second Amended Disclosure Statement and the Total is after

Administrative and Operating Expenses have been deducted.

b.        The Commencement Date, June 30, 2010, and Dec 31, 2010

Balance Sheets do not correspond with the Assets/Liabilities

of LBHI and each of the 22 Affiliate Debtors that is stated in

Exhibit 4 – Recovery Analysis for  LBHI and each of the 22

Affiliate Debtors – of the Second Amended Disclosure Statement.

- 3 -

In Exhibit 2A of the Debtors' Second Amended Disclosure

Statement – the Commencement Date Balance Sheets –

the Total Assets/Liabilities for the LBHI Debtor only are

$ 209,440,000,000.00 and $ 189,118,000,000.00, respectively.

The Total Assets exceed the Total Liabilities by $ 20.322 B.

In Exhibit 2B of the Debtors' First Amended Disclosure

Statement – the June 30, 2010 Balance Sheets – the Total Assets/

Liabilities for the LBHI Debtor are $ 147,009,000,000.00

and $ 177,783,000,000.00, respectively.  The Total Assets

decreased significantly by $ 62.431 B and the Total Liabilities

decreased moderately by $ 11.335 B since the Commencement

Date Balance Sheets.

In Exhibit 2 B of the Debtors' Second Amended Disclosure

Statement – the December 31, 2010 Balance Sheets – the

Total Assets/Liabilities for the LBHI Debtor are

$ 149,879,000,000.00 and $ 177,125,000,000.00, respectively.

The Total Assets increased moderately by $ 2.87 B and the

Total Liabilities decreased slightly by $ 658 M since the

June 30, 2010 Balance Sheets.

- 4 -

In Exhibit 4 – Recovery Analysis for LBHI – of the Debtors'
Second Amended Disclosure Statement it states that the Total
Assets/Estimated Allowed Claims are $ 46,872,000,000.00
and $ 272,904,000,000.00, respectively, for the LBHI Debtor.
The Total Assets decreased significantly – for a second time –
by $ 103,007,000,000.00 and the Total Liabilities/Estimated
Allowed Claims increased significantly by $ 95,779,000,000.00
since the December 31, 2010 Balance Sheets.

To summarize,  the Total Assets for the LBHI Debtor only
decreased significantly by a whopping  $ 162.568 Billion
since the Commencement Date Balance Sheets and the
Total Liabilities/Estimated Allowed Claims increased by a
whopping $ 95.779 Billion since the December 31, 2010
Balance Sheets.

The foregoing numbers represent significant changes in the
valuations of the LBHI Debtor's Assets/Liabilities since the
above-noted Balance sheets and in light of such significant
changes I think that the Creditors and Equity Interest Holders
are entitled to significantly more  financial information.

- 5 -

c.      In an extensive July 6, 2009 interview with CNBC, the CEO

Bryan Marsal stated the following in the interview:

" Today, when we started the process there was no cash in the

till.  Today, we have  …..................., an excess of  $ 12 Billion

dollars in the till.  So we are selling and we are collecting but

we are not doing it in a fire sale way. "

A short time later the interview continues as follows:

Interviewer:        " You got $ 12 Billion that you got so far, how

                        much you got left to sell ? "

Bryan Marsal:      "  I'd have to kill ya if I told ya, because

                        then everyone would be trading on it and

                        I'd be in trouble with the same people I'm

                        criticizing. "

Interviewer:        "  Have you sold half, have you unwound

                        half yet? "

Bryan Marsal:      "  No, no, no, no, no, no.   Just a fraction. "

- 6 -

Interviewer:        " Just a fraction at $ 12 B? "

Bryan Marsal:      " Just a fraction.  We still have a significant

amount of assets to go. "

I inferred clearly from the statements of Bryan Marsal that

the $ 12 B in cash was just a small percentage of the Total

Assets left to sell/unwind. A small percentage/just a fraction

implies to me about 5% or less.

$ 12 Billion is 5 % of $ 240 Billion – which number is

more in line with what is stated in  the Commencement

Date, June 30, 2010, and Dec 31, 2010 Balance Sheets

than what is stated in Exhibit 4 – Recovery Analysis for

LBHI and each of the 22 Affiliate Debtors – of the Debtors'

Second Amended Disclosure Statement.

And so how did $ 12 B in cash which was valued by the CEO

Bryan Marsal on July 6, 2009 at "just a fraction" of the Assets,

increase to about 20 % of the Total Assets in the Debtors'

Second Amended Disclosure Statement?

- 7 -

d.      In a recent Feature Article in the FDIC quarterly – " The

Orderly Liquidation of Lehman Brothers Holdings Inc.

Under the Dodd-Frank Act ", it mentions that days prior

to Lehman's  bankruptcy the Bank of America and

Barclays Bank were analyzing the Balance Sheets of LBHI

for a possible acquisition.

And it was determined – between the 2 Banks – that there

were approximately $ 50 – $ 70 B of LBHI Assets that

were of questionable value.

Even if the highest number of $ 70 B was deducted as a

total loss from the Total Assets of the LBHI Debtor only –

which was $ 209,440,000,000.00 as of the Commencement

Date Balance Sheets – the outstanding Total Assets of the

LBHI Debtor would still be significantly higher at

$ 139,440,000,000.00 than the significantly lower Total

Assets of $ 46,872,000,000.00 – as stated in Exhibit 4

– Recovery Analysis of LBHI – of the Debtors' Second Amended

Disclosure Statement.

- 8 -

It just isn't logical or reasonable that LBHI – which had

$209.440 B in Assets and $ 189.118 B in Liabilities

at Commencement Date – has such low valuations of its

Assets.  The Stock Market has recovered significantly and

many Corporations are making record profits and yet the

LBHI Debtor's Assets have decreased by $ 162.568 B in

Dollar Value.

I think that the Debtors need to provide a lot more financial

information in order to clear up the significant financial

inconsistencies and questionable assets/liabilities valuations,

and in compliance with Section 1125  of the US Code.

2.      The Debtors' Second Amended Disclosure Statement does not yet show

the Final Allowed Claims and Net Recovery for LBHI and each of the 22

Affiliate Debtors.

On Page 6 of the LBHI Plan Status Report – Dated Jan 13, 2011 – it states

that as of December 31, 2010 the "Likely Allowed Claims" against LBHI is

$ 272 B and against all other Debtors is $ 50 B.

- 9 -

In Exhibit 4 – Recovery Analysis for LBHI and each of the 22 Debtors –
of the Debtors' Second Amended Disclosure Statement it states that the
Estimated Allowed Claims for the LBHI Debtor  is $ 272,904,000,000.00,
which meets the Debtors' goal of $ 272 B as stated on Page 6 of the LBHI
Plan Status Report.

On the other hand, the Estimated Allowed Claims – in Exhibit 4 – for the
22  Debtors is collectively $ 88,625,000,000.00, which does not meet the
Debtors' goal of $ 50 B as stated in the LBHI Plan Status Report.

As outlined in Exhibit 4, the LBHI Creditors are to receive an average
of 16.02 % Recovery –  based on the Estimated Allowed Claims/Net
Distributable Assets of $ 272.904 B and $ 43.712 B respectively.

 On the other hand, the Creditors of the 22 Debtors are to receive an
 average of 36.77 % Recovery – based on the collective Estimated Allowed
 Claims/Net Distributable Assets of $ 88.625 B and $ 32.586 B respectively.

 If it is  the Debtors' goal to reduce the  Estimated Allowed Claims of
 the 22 Debtors to $ 50 B from the $ 88.625 B will the Net Distributable
 Assets of $ 32.586 B be reduced as well proportionally?

- 10 -

If the Net Distributable Assets will not be reduced as well proportionately then the Recovery for the Creditors of the 22 Affiliate Debtors would soar to an average of 65.17 % – based on the Estimated Allowed Claims of $ 50 B and the collective Net Distributable Assets of  $ 32.586 B.

And if this were to happen how fair will  this be to the LBHI Creditors who will receive an average of 16.02 % Recovery based on the numbers in Exhibit 4?

3.      Other financial inconsistencies I have noticed are as follows:

a.      In the Debtors' First Amended Disclosure Statement – Exhibit 4 – Recovery Analysis for LBHI – the total Estimated Allowed Claims are $ 268.636 B.

In the Debtors' Second Amended Disclosure Statement – Exhibit 4 – Recovery Analysis for LBHI – the total Estimated Allowed Claims have increased by $ 4.268 B to $ 272.904 B.

- 11 -

In comparison, in the Debtors' First Amended Disclosure Statement – Exhibit 4 – Recovery Analysis for the 22 Affiliate Debtors –  the total collective Estimated Allowed Claims are $ 92.550 B.

In comparison, in the Debtors' Second Amended Disclosure Statement – Exhibit 4 – Recovery Analysis for the 22 Affiliate Debtors – the total collective Estimated Allowed Claims have decreased by $ 3.925 B to $ 88.625 B.

The Affiliate Debtor who mainly benefits from the $ 3.925 B decrease in Estimated Allowed Claims is LBSF – $ 3.583 B.

The LBHI Debtor's increase in total Estimated Allowed Claims of $ 4.268 B somewhat corresponds to the 22 Affiliate Debtors' decrease in  collective Estimated Allowed Claims of $ 3.925 B.

I have noticed other similar adjustments in both the total Estimated Allowed Claims and Assets of Debtors, which have the appearance of Claims and Assets being transferred among the Classes and Debtors – if no explanation is provided.

- 12 -

b.        In Exhibit 8A of the Second Amended Disclosure Disclosure – Significant Balances Among Affiliates - it states on Page 1 that the LBHI Debtor's Total Receivable is $ 144.380 B and the Total Payable is $ 73.434 B.  The Receivable is almost twice the amount of the Payable of $ 73.434 B – and exceeds the Payable by $ 70.946 B.

Even if the Total Payable of $ 73.434 B was deducted from the Total Receivable of $ 144.380 B the Net Receivable of $ 70.946 B still does not correspond with the $ 25.913 B of Intercompany Receivables stated in Exhibit 4 – Recovery Analysis for LBHI.

In addition the  Intercompany Claims of $ 52.327 B against the LBHI Debtor is twice as high as the $ 25.913 B in Intercompany Receivables – as stated in Exhibit 4 – Recovery Analysis for LBHI. And yet Exhibit 8A shows LBHI's Receivable at almost twice as high as its Payable.

4.        The Debtors' Second Amended Disclosure Statement does not provide sufficient information about the 2008 NOL.  On Page 124 of the Disclosure Statement it states the following:

- 13 -

" For the tax year ended December 31, 2008, for federal income tax

purposes, the LBHI Group reported a consolidated NOL of

approximately $ 48 billion.  …...................  Under recent legislation,

LBHI elected to carry back its 2008 NOL for five tax years.  The loss

carried back to 2003, the fifth previous tax year, is limited to 50 % of

the taxable income reported for that year. "


The Debtors neither state how much of the $ 48 B in 2008 NOL were used

for a 5-Year Carry Back Tax Credit/Refund, nor what the Debtors received or

are expecting to receive from the 5-Year Carry Back Tax Credit/Refund.


5.      I very much oppose the Classifications and Treatment for the LBHI Sub/

Junior Subordinated Note Holders' Claims as stated on Pages 76 – 78 of

the Debtors' Second Amended Disclosure Statement.

In the Debtors' Initial Disclosure Statement – dated April 14, 2010 – the

LBHI Sub/Junior Subordinated Note Holders' Claims were placed in one

Class and subordinated only to the LBHI Senior Note Holders' Claims –

Class 3 – and which Claims' Total Value is $ 83.724 B.

- 14 -

In the Debtors' First Amended Disclosure Statement the LBHI Sub/Junior

Sub Notes' Claims have  been divided into 3 Classes – 10A, 10B and

10 C – and are  subordinated to an additional 1 – 4 Senior Classes, depending

on which Class – 10A, 10B or 10C – the Sub Notes' Claim was placed in.

The additional Senior Classes and their Total Estimated Claims' Value – as

stated in Exhibit 4 – Recovery Analysis for LBHI – are as follows:

1.  Class 4A – Senior Intercompany Claims - $ 12.689 B

2.  Class 4B – Senior Affiliate Guarantee Claims - $ 10.589 B

3.  Class 5A – Senior Third – Party Guarantee Claims - $ 21.174 B

4.  Class 5B – Senior Third – Party LBT/LBSN Guarantee Claims – $ 31.137 B

The additional Senior Classes that the 3 Classes of Sub/Junior Sub Notes'

Claims are  subordinated to are divided as follows:

1.  Class 10A –   Class 4A

2.  Class 10B –   Class 4A, Class 4B, Class 5A, Class 5B

3.  Class 10C –   Class 4A, Class 4B, Class 5A, Class 5B

- 15 -

In the Debtors' Second Amended Disclosure Statement the LBHI Sub/Junior

Sub Notes' Claims are still divided into 3 Classes – 10A, 10B and

10 C – and are now subordinated to an additional 1 – 3 Senior Classes, depending

on which Class – 10A, 10B or 10C – the Sub Notes' Claim was placed in.

The additional Senior Classes and their Total Estimated Claims' Value – as

stated in Exhibit 4 – Recovery Analysis for LBHI – are as follows:

1.  Class 4A – Senior Affiliate Claims - $ 52.327 B

2.  Class 4B – Senior Affiliate Guarantee Claims - $ 11.563 B

3.  Class 5 – Senior Third – Party Guarantee Claims - $ 52.702 B

The additional Senior Classes that the 3 Classes of Sub/Junior Sub Notes'

Claims are  subordinated to are divided as follows:

1.  Class 10A – Class 4A

2.  Class 10B – Class 4A, Class 4B, Class 5

3.  Class 10C – Class 4A, Class 4B, Class 5

- 16 -

As stated in the Debtors' First Amended Disclosure Statement
Class 10A is subordinated to an additional $ 12.689 B in
"Senior" Claims and Classes 10B and 10C are subordinated to an
additional whopping $ 75.589 B in "Senior" Claims.

And as stated in the Debtors' Second Amended Disclosure Statement
Class 10A  is now subordinated to an additional $ 52.327 B in
"Senior" Claims and Classes 10B and 10C are now subordinated to
an additional whopping $ 116.592 B in "Senior" Claims.

To summarize, the Debtors decide – in the First Amended Disclosure
Statement – Filed Jan 25, 2011 –  that the LBHI Sub/Junior Sub Notes
should also be subordinated to "Senior" Third-Party and Affiliate Guarantee
Claims, and certain "Senior" Intercompany Claims – $ 12.689 B.

The Debtors then decide – in the Second Amended Disclosure Statement
– Filed July 1, 2011 – that the LBHI Sub/Junior Sub Notes' subordination
to only certain "Senior" Intercompany Claims was not contractually
correct after all.  And so the Debtors decide to join all of the LBHI

- 17 -

Intercompany Claims into one Class – 4A – $ 52.327 B.

And to add to the confusion the Debtors decide they do not like the "Intercompany" Class,  and so change it to the "Affiliate" Class, which is not be be confused with the "Affiliate Guarantee" Class.

The Debtors' indecisiveness does not exactly encourage trust that the Debtors can fairly and correctly interpret the subordination clauses within the LBHI Sub/Junior Sub Notes' Indentures/Indenture Supplements.

The reasons stated by the Debtors for dividing the LBHI Sub/Junior Sub Notes into 3 Classes is stated on Page 65 of the Debtors' Second Second Amended  Disclosure Statement and is as follows:

" The governing agreements relating to the Subordinated Notes vary as to the obligations of LBHI that are designated "senior" to such Subordinated Notes.  The Subordinated Notes can be separated into three groups based on the obligations designated "senior" in the respective governing agreements.  "Senior" debt under the governing agreements for all of the Subordinated Notes includes "indebtedness for money borrowed" and "indebtedness evidenced by securities, notes, debentures, bonds or other similar

- 18 -

instruments."  In addition, (i) "senior" obligations under

Subordinated Notes for two of the groups (12 issuances) is defined

to include guarantees of the types of indebtedness described in

the previous sentence, and (ii) "senior" obligations under

Subordinated Notes for one of the groups (2 issuances) include

each of the other issuances of Subordinated Debt.  Certain

Subordinated Note indentures provide that LBHI's obligations

under such Subordinated Notes are also subordinated to "Other

Financial Obligations" (which includes derivatives contracts and

guarantees thereof), but only to the extent of any "Excess Proceeds"

after the "senior debt" has been satisfied in full.  LBHI's "senior

debt" will not be satisfied in full, even after the reallocation from

Subordinated Note holders. "


In order to confirm the validity of the above statements I have reviewed

the Proofs of Claims for 11 of the 17 Sub/Junior Sub Notes that are listed

in Classes 10A – 10C.  One of the Proofs of Claims  I reviewed was for

a Junior Subordinated Note  in Class 10A (a).  The other 10 were all from

Classes 10B (a) – (j) and all Proofs of Claims – including for Class 10A (a) –

were filed by the same Indenture Trustee – The Bank of New York Mellon.

- 19 -

The Claim Nos. for the 11 Proofs of Claims that I reviewed are as follows:

1.  Class 10A (a) –      No. 21804

2.  Class 10B (a) –      No. 21805

3.  Class 10B (b) –      No. 22122

4.  Class 10B (c) –      No. 22123

5.  Class 10B (d) –      No. 21803

6.  Class 10B (e) –      No. 21797

7.  Class 10B (f) –      No. 21801

8.  Class 10B (g) –      No. 21800

9.  Class 10B (h) –      No. 21799

10.  Class 10B (i) –      No. 21802

11.  Class 10B (j) –      No. 21798

In review of the foregoing 11 Proofs of Claims, I found that all of the

Indentures that were filed for Class 10A (a) – Junior Subordinated Notes –

and Classes 10B (a) – (j) – Subordinated Notes – were identical to each other.

The exact 3 identical Indentures/Provisions filed with the Proof of Claim

for each of the 11 above mentioned Sub/Junior Sub Notes are as follows:

- 20 -

1. INDENTURE – dated as of February 1, 1996 – between LBHI
   and CHEMICAL BANK.


2. FIRST SUPPLEMENTAL INDENTURE – dated as of
   February 1, 1996 – between LBHI and CHEMICAL BANK.


3. SHEARSON LEHMAN BROTHERS HOLDINGS INC –
   STANDARD MULTIPLE – SERIES INDENTURE
   PROVISIONS – Dated and Filed with the Security Exchange
   Commission on July 30, 1987 and as Amended and Refiled with
   the Securities Exchange Commission on November 16, 1987.


The only Documents  filed with the Proofs of Claims for the 11 Sub/Junior
Sub Notes that were not always identical to each other in wording were the
Prospectus and the Prospectus Supplement.

Even though  the Prospectus and Prospectus Supplement are legal descriptive
Documents  they are not signed Indentures/Indenture Supplements and certainly
do not take legal precedence over the signed Indentures.

- 21 -

On Page 1 of the Indenture – dated as of February 1, 1996 – it states under

Section 101 as follows:

"Senior Debt" has the meaning specified in Section 1401."

On Page 2 of the Indenture it states under Section 1401 as follows:

ARTICLE FOURTEEN

SUBORDINATION

Section 1401.     Securities Subordinated to Senior Debt.

The Company agrees, and each Holder of the Securities and related

coupons by his acceptance thereof likewise agrees, that the payment of the

principal of (and premium, if any) and interest, if any, on the Securities and

related coupons is subordinated,  to the extent and in the manner provided in

this Article, to the prior payment in full when due of the principal of (and

premium, if any) and interest, if any, on all Senior Debt.

- 22 -

For purposes of this Article, "Senior Debt" means all obligations (whether now outstanding or hereafter created, assumed or incurred) for the payment of which the Company is responsible or liable as obligor, guarantor or otherwise in respect of all principal of (and premium, if any) and interest if any (including any interest, if any, accruing subsequent to the commencement of a proceeding in  bankruptcy by or against the Company) on  (i) any indebtedness for money borrowed or evidenced by bonds, notes, debentures or similar instruments,  (ii) indebtedness under capitalized leases, (iii) any indebtedness representing the deferred and unpaid purchase price of any property or business, and  (iv) all deferrals, renewals, extensions and refundings of any such indebtedness or obligation; provided, that the following shall not constitute Senior Debt:

(a)  indebtedness evidenced by the Securities and related coupons,

(b)  indebtedness which is expressly made equal in right of payment with the Securities or subordinate and subject in right of payment to the Securities,

(c)  indebtedness for goods or materials purchased in the ordinary course of business or for services obtained in the ordinary course of business or indebtedness consisting of trade payables, or  (d) indebtedness which is subordinated to any obligation of the type specified in clauses (i) through (iv) above.

- 23 -

Perhaps the Debtors may have misinterpreted or taken out of context

the wording of the Prospectus and Prospectus Supplement, which may

also  contain definitions of Capital Trust Preferred and Common Securities,

as well as  "subordination" clauses that apply to a  non-bankruptcy situation

such as a deferral of interest payments to pay subsidiary debts.


On Page S-15 of the Prospectus Supplement filed with the Proof of Claim

Nos. 21805, 22122, 22123 and 21803, for Classes 10B (a) – (d), respectively,

it states the following:


"Rights Upon Termination

 .................  Upon any voluntary or involuntary liquidation or bankruptcy

of Holdings, the property trustee, as holder of the subordinated debentures,

would be a subordinated creditor of Holdings, subordinated in right of

payment to all senior debt as set forth in the subordinated indenture …..... "


And on Pages 17 – 18 of the  Prospectus for Classes 10B (a) – (d) Notes

it states as follows:

- 24 -

"Subordination

The Indenture provides that the junior subordinated debt securities are subordinated and junior in right of payment to all senior debt (as defined below) of Lehman Brothers Holdings.  This means that no payment of principal, including redemption payments, premium, if any, or interest on the junior subordinated debt securities may be made if Lehman Brothers Holdings defaults in the payment of any principal of, or premium, if any, or interest on any senior debt when it becomes due and payable after any applicable grace period.

"Senior debt" means:

> (1)     the principal, premium, if any, and interest in respect of (A) indebtedness of Lehman Brothers Holdings for money borrowed and (B) indebtedness evidenced by securities, notes, debentures, bonds or other similar instruments issued by Lehman Brothers Holdings, including the senior debt securities;

- 25 -

    (2)       all capitalized lease obligations of Lehman Brothers Holdings;

    (3)       all obligations of Lehman Brothers Holdings representing the

                deferred purchase price of property; and

    (4)       all deferrals, renewals, extensions and refundings of obligations

                of the type referred to in clauses (1) through (3);

but senior debt does not include:

    (a)       subordinated debt securities;

    (b)       any indebtedness that by its terms is subordinated to, or ranks

                on an equal basis with, subordinated debt securities;

    (c)       indebtedness for goods or materials purchased in the ordinary

                course of business or for services obtained in the ordinary

                course of business or indebtedness consisting of trade

                payables; and

    (d)       indebtedness which is subordinated to an obligation of Lehman

                Brothers Holdings of the type specified in clauses (1) through

                (4) above.

- 26 -

The indenture does not limit the aggregate amount of senior debt  that may

be issued by Lehman Brothers Holdings. "

The foregoing definition of "subordination" – as stated on Pages 17 – 18

of the Prospectus for Classes 10B (a) – (d) – corresponds  with Section 1401

of the Indenture for Class 10B (except for omitting Paragraph 1 and part of 2)

and yet Class 10A (a) – with the exact identical Indenture –  is subordinated

only to an additional 1 "Senior" Class while Class 10B is subordinated to an

additional 3 "Senior" Classes.

I could not locate the Proof of Claims for Classes 10A (b – d) and Class 10C

Notes to review their Indentures/Indenture Supplements  and Prospectus and

I have no opinion on their Classifications and Treatment other than what I state

in the following pages.

The reasons the Debtors divide the LBHI Sub/Junior Sub Notes' Claims into

3 Classes – 10A, 10B and 10C –  with the additional subordinations of  1 – 3

"Senior" Classes, is further explained in Exhibit 10 of the Debtors' Second

Amended Disclosure Statement.

- 27 -

In Exhibit 10 the Debtors base the Classifications and Treatment for

Class 10A (a), Class 10B and Class 10C Notes on the 4th, 5th, 6th, 7th, 8th,

9th, 10th, 11th, 12th, 13th, 14th, 15th and 16th Supplemental Indentures.

In Exhibit 10 the Debtors state that the 8th Supplemental Indenture for

Class 10A (a) amends Section 1401 of the Indenture – shown on Pages

21 – 22 of my Objection – and omits part of Paragraph 2 which in part

states the following:

> "For purposes of this article, "Senior Debt" means all obligations
>
> (whether now outstanding or hereafter created, assumed or incurred)
>
> for the payment of which the Company is responsible or liable as
>
> obligor, guarantor …................."

And so based on the omission of the the above excerpt of Section 1401

of the Indenture, the Debtors decide that Class 10A (a) is not subordinated

to Class 4B and Class 5 "Senior" Guarantee Claims.

On the other hand, in Exhibit 10 the Debtors state that the 4th, 5th, 6th and 7th

Supplemental Indentures for Classes 10B (a) – (d), respectively, do not

amend Section 1401 of the Indenture, and so the Debtors decide that the

Classes 10B (a) – (d) Notes are subordinated to the "Senior" Guarantee Claims.

- 28 -

And yet the Prospectus for Classes 10B (a) – (d) does amend Section 1401 and also omits the foregoing excerpt of Section 1401 – as shown on Pages 23 – 26 of my Objection.

For Classes 10B (e) – (j),  and Classes 10C (a) and (b) the Debtors state – in Exhibit 10 – that their respective  9th, 10th, 13th, 14th, 15th, 16th, 11th and 12th Supplemental Indentures do amend Section 1401 of the Indenture and adds additional subordination to "Other Financial Obligations".

In addition, the Debtors subordinate Classes 10C (a) and (b) to Class 10A and Class 10B Notes.  The reason given by the Debtors is stated on Page 12 of Exhibit 10 and is as follows:

"Unlike the other definitions of "Senior Debt" set forth herein, the definition of "Senior Debt" in the Eleventh and Twelfth Supplemental Indentures does not specifically exclude as constituting Senior Debt any indebtedness that is subordinated to any other indebtedness of LBHI.  Consequently, the LBHI Subordinated Class 10C Notes are subordinated to LBHI Subordinated Class 10A Notes and LBHI Subordinated Class 10B Notes, as well as other Senior Debt."

- 29 -

I am not certain what the foregoing Statement is pertaining to, however I think it is pertaining to what "shall not constitute Senior Debt:  (d) indebtedness which is subordinated to any obligation of the type specified in clauses (i) through (iv) above."   –  Section 1401 of the Indenture.

If I am correct, then I should state at this point that the 8th Supplemental Indenture for  Class 10A (a) also omits this clause. Even though the Debtors only state in Exhibit 10 that the 8th Supplemental Indenture for Class 10A (a) amends Section 1401 – in reference to "Senior" Guarantee  Claims – in actuality the 8th Supplemental Indenture also amends what what "shall not constitute Senior Debt" in Section 1401 of the Indenture.

For comparison, Section 1401 of the Indenture states the following:

"the following shall not constitute Senior Debt:

(a)  indebtedness evidenced by the Securities and related coupons,

(b)  indebtedness which is expressly made equal in right of payment to the Securities or subordinate and subject in right of payment to the Securities,

- 30 -

(c)  indebtedness for goods or materials purchased in the ordinary

course of business or indebtedness consisting of trade payables, or

(d)  indebtedness which is subordinated to any obligation of the type

specified in clauses (i) through (iv) above."   ("Senior Debt")


As stated in Exhibit 10 for Class 10A (a) Notes:

"but Senior Debt does not include:


(a)  any indebtedness that its terms is subordinated to, or ranks on

an equal basis with, subordinated debt securities; and

(b)  indebtedness for goods or materials purchased in the ordinary

course of business or for services obtained in the ordinary

course of business or indebtedness consisting of trade payables."


As stated in Exhibit 10 for Class 10C Notes:

"provided, that the following shall not constitute Senior Debt:


(a)  indebtedness which is expressly made equal in right of payment

with the Junior Subordinated Debentures or subordinate and subject

in right of payment to the Junior Subordinated Debentures and

(b)  indebtedness for goods or materials purchased in the

ordinary course of business or for services obtained in

the ordinary course of business or indebtedness consisting

of trade payables."

It is clear to me that Class 10A (a) and Class 10C Notes' Supplemental

Indenture's definition of what "shall not constitute Senior Debt" is more

in line with each others than with Section 1401 of the Indenture, and yet

Class 10A (a) is not subordinated to Classes 10A (b) – (d), and Class 10B

Notes as are Class 10 C Notes.

In Exhibit 10, the Debtors point out in Footnotes 8 and 9 what could be

possible typographical and omission errors in Class 10C's 11th and 12th

Supplemental Indentures.

Since the Debtors are basing – in part – the Classifications and Treatment

for Class 10A (a) and Class 10C Notes on their respective 8th, 11th and 12th

Supplemental Indenture's omission of clauses in Section 1401 of the

Indenture, how then can I be certain that these omissions are not errors

if the Debtors point out a possible omission error in the 11th and 12th

Supplemental Indentures?

- 32 -

In my review of the Proofs of Claims for Class 10A (a) and Class 10B

Notes, and the Documents filed thereof by the Indenture Trustee – BNYM –

I could not locate any such Documents  entitled 4th, 5th, 6th, 7th, 8th, 9th, 10th,

13th, 14th, 15th and 16th Supplemental  Indenture.

I thought, perhaps, that the Debtors were referring to the Prospectus

Supplements for the Classes 10A (a), 10B and 10C Notes in Exhibit 10

however the dates – although close in time – do not correspond.

It is my opinion that Exhibit 10 does not provide sufficient information and

contains contradictions which warrant the Debtors' Classifications and

Treatment for Classes 10A, 10B and 10C Notes to be further questioned.

Wherefore I, Linda Neufeld, do respectfully Object  to the Debtors' Second Amended Disclosure

Statement for the reasons stated herein.  The Debtors' Second Amended Disclosure Statement does

not provide adequate information in compliance with Section 1125 of the US Code.

Respectfully,

Linda Neufeld

<u>CERTIFICATE  OF  SERVICE</u>

I, Linda Neufeld, hereby certify that service of the foregoing "Objection of Linda Neufeld to the Debtors' Second Amended Disclosure Statement" was made on August 2, 2011 by Priority Mail to the Honorable Judge Peck and by First Class Canada Post Mail to the following parties:

| | | | |
|---|---|---|---|
| (i) | Office of the US Trustee | Attn: | Tracy Hope Davis, Esq. |
| | 33 Whitehall Street | | Elisabetta Gasparini, Esq. |
| | 21st Floor | | Andrea Schwartz, Esq. |
| | New York, NY    10004 | | |
| (ii) | Milbank Tweed Hadley & McCloy LLP | Attn: | Dennis F. Dunne, Esq. |
| | 1 Chase Manhattan Plaza | | Dennis O'Donnell, Esq. |
| | New York, NY    10005 | | Evan Fleck, Esq. |
| (iii) | Weil Gotshal & Manges LLP | Attn: | Harvey R. Miller, Esq. |
| | 767 Fifth Avenue | | Lori R. Fife, Esq. |
| | New York, NY    10153 | | Alfredo R. Perez, Esq. |
| (iv) | White & Case LLP | Attn: | Gerard Uzzi, Esq. |
| | 1155 Avenue of the Americas | | Christopher Shore, Esq. |
| | New York, NY    10036 | | |

Date _____August 2,  2011_____               _____Linda  Neufeld_____