**HEARING DATE AND TIME:** August 25, 2011 at 10:00 a.m. (EST)
**RESPONSE DEADLINE:** August 10, 2011 at 4:00 p.m. (EST)

SEWARD & KISSEL LLP
Ronald L. Cohen (RC-3897)
Justin L. Shearer (JS-1823)
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Zephyr Recovery II-B LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>Debtors. | Chapter 11 Case No.<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**RESPONSE OF ZEPHYR RECOVERY II-B LP
TO DEBTORS' ONE HUNDRED SIXTY-SECOND
OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

TO THE HON. JAMES PECK, UNITED STATES BANKRUPTCY JUDGE:

      Zephyr Recovery II-B LP ("Zephyr"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' (the "Debtors") One Hundred Sixty-Second Omnibus Objection to Claims (Valued Derivative Claims), dated July 11, 2011 (the "Objection").  In support of its Response, Zephyr respectfully states as follows:[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Master Agreement (as defined below).

**Background**

**Zephyr's Proof of Claim**

1.  On or about September 22, 2009, Zephyr filed a proof of claim against Lehman Brothers Special Financing Inc. ("LBSF") (Claim No. 34317) seeking (i) recovery of an aggregate amount of $1,467,179.00, (ii) an unliquidated amount of fees and expenses that will continue to accrue, (iii) unliquidated interest at the default rate, to the extent permitted under applicable law, and (iv) an unliquidated amount for LBSF's potential breaches under the Master Agreement (as defined below) (the "LBSF Proof of Claim").[2]

2.  Zephyr entered into an ISDA Master Agreement with LBSF, dated as of March 8, 2007, (together with the Schedule thereto and the Credit Support Annex part thereof, the "Master Agreement"). Under the terms of the Master Agreement, and as set forth in the LBSF Proof of Claim, Zephyr and LBSF agreed to enter into one or more derivative transactions, each evidenced by a confirmation.[3]

3.  LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to the Guarantee of LBHI relating to the Master Agreement (the "Guarantee"). The Guarantee is a Credit Support Document as contemplated by the Master Agreement. LBHI also fully guaranteed the payment of all liabilities, obligations and

---

[2] Zephyr also filed a corresponding proof of claim against Lehman Brothers Holdings Inc. ("LBHI") (Claim No. 33654) seeking, in addition to other amounts unrelated to the Master Agreement, recovery under the LBHI Guarantees (as defined below) of (a) $1,467,179.00 with respect to the Master Agreement, (b) an unliquidated amount of fees and expenses that will continue to accrue, (c) unliquidated interest at the default rate, to the extent permitted under applicable law, and (d) an unliquidated amount for LBSF's potential breaches under the Master Agreement (the "LBHI Proof of Claim"). While the LBHI Proof of Claim was not included in the Objection, or in any other objection filed by the Debtors, any determination of this Court as to the value of the LBSF Proof of Claim will necessarily impact the LBHI Proof of Claim.

[3] All relevant documentation was uploaded to the Debtors' Supplemental Questionnaire website in satisfaction of the Derivative Questionnaire requirements set forth in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered on July 2, 2009.

2

commitments of certain of its subsidiaries, including LBSF, pursuant to a resolution of its board of directors, dated June 9, 2005 (together with the Guarantee, the "LBHI Guarantees").

4. The filing by debtor guarantor LBHI of a chapter 11 petition on September 15, 2008 constituted an Event of Default under Section 5(a)(vii) of the Master Agreement. Pursuant to Section 6 of the Master Agreement, which gives Zephyr the right to terminate all outstanding transactions following an Event of Default, on September 15, 2008, Zephyr sent LBSF a Notice of Termination, which set an Early Termination Date of September 15, 2008.

5. Part 1(f) and Section 6(e) of the Master Agreement apply to determine payments owing if the Early Termination Date results from an Event of Default. Section 6(e)(i) of the Master Agreement provides as follows:

> If the Early Termination Date results from an Event of Default, the Early Termination Amount will be an amount equal to (1) the sum of (A) the Termination Currency Equivalent of the Close-Out Amount or Close-Out Amounts (whether positive or negative) determined by the Non-defaulting Party for each Terminated Transaction or group of Terminated Transactions, as the case may be, and (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the non-Defaulting Party less (2) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If the Early Termination Amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting party will pay the absolute value of the Early Termination Amount to the Defaulting Party.

6. "Close-Out Amount" has the following meaning, as provided in Section 14 of the Master Agreement:

> [W]ith respect to each Terminated Transaction or each group of Terminated Transactions and a Determining Party, the amount of the losses or costs of the Determining Party that are or would be incurred under then prevailing circumstances (expressed as a

3

positive number) or gains of the Determining Party that are or would be realised under then prevailing circumstances (expressed as a negative number) in replacing, or in providing for the Determining Party the economic equivalent of, (a) the material terms of that Terminated Transaction or group of Terminated Transactions, including the payments and deliveries by the parties under Section 2(a)(i) in respect of that Terminated Transaction or group of Terminated Transactions that would, but for the occurrence of the relevant Early Termination Date, have been required after that date (assuming satisfaction of the conditions precedent in Section 2(a)(iii)) and (b) the option rights of the parties in respect of that Terminated Transaction or group of Terminated Transactions.

7.  Section 14 of the Master Agreement also provides that the Close-Out Amount is to be established in the following manner:

Any Close-Out Amount will be determined by the Determining Party (or its agent), which will act in good faith and use commercially reasonable procedures in order to produce a commercially reasonable result. The Determining Party may determine a Close-Out Amount for any group of Terminated Transactions or any individual Terminated Transaction but, in the aggregate, for not less than all Terminated Transactions. Each Close-Out Amount will be determined as of the Early Termination Date or, if that would not be commercially reasonable, as of the date or dates following the Early Termination Date as would be commercially reasonable.

8.  Calculating its Close-Out Amount, Zephyr asserted a claim against LBSF in the amount of $1,467,179.00 for amounts owing under the Master Agreement, in addition to certain unliquidated amounts as set forth in paragraph 1 above and as discussed in greater detail below.

9.  As set forth in the LBSF Proof of Claim, under the Master Agreement, LBSF agreed to indemnify Zephyr and pay all reasonable out-of-pocket expenses, including legal fees and stamp tax, as a result of enforcement of its rights under the Master Agreement or any Credit Support Document, such as the Guarantee. The LBSF Proof of Claim includes

4

Zephyr's legal fees and expenses, including legal fees and expenses in an amount to be determined.

10. Pursuant to the Master Agreement, Zephyr is also entitled to interest at the default rate on all amounts due and owing. The LBSF Proof of Claim includes all interest and default interest to the extent permitted under applicable law in amounts to be determined.

11. In addition, LBSF made certain representations and warranties under the Master Agreement. The LBSF Proof of Claim includes damages to Zephyr for any breaches of representations and warranties made by LBSF in the Master Agreement, to the extent applicable under the Master Agreement and related documents in amounts to be determined.

**The Debtors' Objection to the LBSF Proof of Claim**

12. The Debtors state in the Objection that they had examined Zephyr's LBSF Proof of Claim and that such proof of claim should be reduced and allowed "on the basis that the amounts listed on the [LBSF Proof of Claim] are greater than the fair, accurate, and reasonable values determined by the Debtors after a review of Zephyr's supporting documentation and the Debtors' books and records. . . ." Objection at ¶ 2.

13. Based on such statement, and no further evidence, the Debtors seek to reduce the LBSF Proof of Claim from $1,467,179.00 to $1,131,275.00 (the "Debtors' Modified Claim Amount").

**Argument**

14. The Debtors' Objection to the LBSF Proof of Claim is baseless. As the non-defaulting party, Zephyr is entitled, under the express terms of the Master Agreement, to calculate the amounts underlying the LBSF Proof of Claim, and Zephyr so calculated such amounts. The Debtors do not offer any evidence to dispute this fact. Further, the Debtors erroneously claim that the burden of proof with respect to the LBSF Proof of Claim lies with

5

Zephyr even though the Debtors' own cited case law is unequivocal that the proof of claim is *prima facie* valid and that the burden of proving otherwise rests squarely with the Debtors.

**The Debtors Provide No Evidence To Dispute the Amount in the LBSF Proof of Claim**

15.     As set forth above, Zephyr calculated the amount in the LBSF Proof of Claim as required by the terms of the Master Agreement. The Debtors do not provide any evidence to dispute the amounts asserted by Zephyr in the LBSF Proof of Claim.

16.     The Debtors do not even address the terms of the Master Agreement in their Objection. Instead, the Objection discusses only the general process – unrelated to the terms of the Master Agreement – that resulted in their conclusion that the amount in the LBSF Proof of Claim should be reduced. The Debtors do not provide a single calculation or a single document in support of their position – just their bare conclusion that the amount in the LBSF Proof of Claim should be reduced.[4] Neither the Debtors' general process nor its conclusion is supported by the Master Agreement. In fact, the Debtors' process and conclusion are wholly inconsistent with the terms of the Master Agreement.

**The Debtors Misstate the Burden of Proof**

17.     The Debtors not only ignore the terms of the Master Agreement that govern the calculation of the amounts in the LBSF Proof of Claim but, even according to their own cited case law, they misstate the applicable burden of proof. The Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Objection at ¶ 12 *citing In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Comms Corp.*, Ch. 11 Case No. 02-41729

---

[4]     "[F]or a more comprehensive discussion of the valuation process," the Debtors refer in footnote 2 of their Objection to the Declaration of Gary H. Mandelblatt in Support of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form. However, that declaration does not provide any information that is specific to Zephyr.

6

(REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

18. To the contrary, "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." *Oneida*, 400 B.R. at 389 (emphasis added). The burden would only shift to Zephyr if the Debtors had produced "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* In other words, to shift the burden of proof to Zephyr, the Debtors must first produce sufficient evidence to overcome the "prima facie validity" of the LBSF Proof of Claim. *Adelphia*, 2007 Bankr. LEXIS 660 at *15-16; *Rockefeller*, 272 B.R. at 539.

19. The Debtors have not produced information sufficient to shift the burden of proof to Zephyr; indeed, the Debtors have not produced any information at all. The Objection does not provide any data, numerical or otherwise, in support of how the Debtors' Modified Claim Amount was calculated and does not even refer to the Master Agreement, which defines the obligations of the parties and which governs the calculation of the amount set forth in the LBSF Proof of Claim. The Objection merely describes a general process that was purportedly used to reach the Debtors' Modified Claim Amount. This general process has no basis in, and is in fact inconsistent with, the express terms of the Master Agreement. The Debtors' Objection should be denied.

## Conclusion

WHEREFORE, for the foregoing reasons, Zephyr respectfully requests that this Court deny the Debtors' Objection and grant Zephyr such other, further, and different relief as this Court deems just and proper.

New York, New York
August 9, 2011

                        SEWARD & KISSEL LLP

                        By:   /s/ Ronald L. Cohen
                              Ronald L. Cohen (RC-3897)
                              Justin L. Shearer (JS-1823)
                              One Battery Park Plaza
                              New York, New York 10004
                              Telephone: (212) 574-1200
                              Facsimile: (212) 480-8421

                        *Attorneys for Zephyr Recovery II-B LP*