**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
                                                                 :
In re                                                            :  Chapter 11
                                                                 :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :  Case No. 08-13555 (JMP)
                                                                 :
                        Debtors.                                 :  (Jointly Administered)
                                                                 :
                                                                 :
---------------------------------------------------------------- X

**OBJECTION OF THOMAS COOK AG TO DEBTORS'
ONE HUNDRED SIXTY-THIRD OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY DERIVATIVES CLAIMS)
AND NOTICE OF APPLICABILITY OF FOREIGN LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1**

Thomas Cook AG ("**Thomas Cook**"), by and through its undersigned counsel, Loeb & Loeb LLP, hereby submits its (i) objection (this "**Objection**") to the above-captioned debtors' (the "**Debtors**") one hundred sixty-third omnibus objection to claims (the "**Claims Objection**") and (ii) notice of applicability of foreign law pursuant to Federal Rule of Civil Procedure 44.1, incorporated into this proceeding by Bankruptcy Rule 9017. In support of this Objection, Thomas Cook respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      The Claims Objection is completely unsupported by evidence and is therefore insufficient as a matter of law to overcome the prima facie validity of Thomas Cook's claims. Further, the Claims Objection lacks merit, in that Thomas Cook validly terminated the Thomas Cook Agreement (as defined below) and promptly and properly replaced the appropriately terminated trades in accordance with the Thomas Cook Agreement. As a result, Thomas Cook is entitled to compensation under the Thomas Cook Agreement to the extent set forth in its claims.

For those reasons, the Claims Objection should be denied.

2.  In addition to being grossly deficient and devoid of merit, the Claims Objection is premature and wasteful of estate assets.  Specifically, Thomas Cook has for some considerable time sought to engage in meaningful negotiations with the Debtors with the aim of resolving its claims out of court and without costly and time-consuming litigation.  To that end, less than three weeks before the Claims Objection was filed, Thomas Cook's counsel sent a letter to the Debtors' counsel in Germany stating Thomas Cook's most recent settlement position, setting forth an updated settlement offer and inviting further dialog, all in the hopes that the disputes between Thomas Cook and the Debtors could be resolved amicably.  Thomas Cook was disappointed to see that, without so much a phone call, the Debtors responded to that letter by filing the Claims Objection and bringing this dispute before the Court.

## BACKGROUND

3.  On September 15, 2008, Lehman Brothers Holdings Inc. ("**LBHI**") filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  On October 3, 2008, Lehman Brothers Commodity Services Inc. ("**LBCS**") filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

4.  Thomas Cook is a travel company, based in Germany.  Prior to the Debtors' bankruptcy filings, Thomas Cook and LBCS entered into and were party to an agreement entitled Rahmenvertrag für Finanztermingeschäfte dated as of April 20, 2007 (the "**Thomas Cook Agreement**").  The Thomas Cook Agreement prescribed the terms under which Thomas Cook and LBCS could enter into fuel hedging transactions.  The Thomas Cook Agreement, the Thomas Cook Agreement is governed by the laws of the Federal Republic of Germany.  Thomas Cook Agreement at § 11.2.

5. As an important precondition to entering into the Thomas Cook Agreement, Thomas Cook required that the obligations of LBCS under the Thomas Cook Agreement be guaranteed by LBHI. Thomas Cook obtained such assurance pursuant to the Guarantee of Lehman Brothers Holdings Inc., dated as of April 16, 2007 (the "**LBHI Guarantee**"). That the LBHI Guarantee was an important precondition of Thomas Cook's entry into the Thomas Cook Agreement is evidenced by the execution by LBHI of the LBHI Guarantee at least four days <u>before</u> the effectiveness of the Thomas Cook Agreement.

6. As a result of LBHI's bankruptcy filing, and in accordance with the terms of the Thomas Cook Agreement and governing German law, Thomas Cook properly terminated the Thomas Cook Agreement by letter dated September 17, 2008 (the "**Termination Notice**") pursuant to Section 7.1 of the Thomas Cook Agreement, which provides for termination for a "material reason." Under Section 8.1 of the Thomas Cook Agreement, the terminating party's damages are to "be determined on the basis of replacement transactions, to be effected without undue delay." As a result of this provision and the termination of the Thomas Cook Agreement, Thomas Cook was left in the unfamiliar and unenviable position of having to replace hedging transactions having a volume of 160,000 tonnes within just a few days, a volume which is greatly in excess of Thomas Cook's typical fuel hedging requirements for an entire month. Thomas Cook is a travel company and not a major financial or trading institution, and prior to the Lehman Brothers collapse, none of its hedging counterparties had ever become insolvent, so it had never been forced to replace any hedging transactions.

7. Although Thomas Cook was very much in uncharted waters, Thomas Cook acted quickly and diligently after termination to replace 16 terminated trades in a very compressed timeframe. Indeed, the replacement of all but two of those trades was completed by

September 23, 2008 (i.e., within just four business days of termination), and the final two trades were replaced the very next day, on September 24, 2008. The replacement trades were entered into "without undue delay" in accordance with the terms of the Thomas Cook Agreement and governing German law. As a result of the foregoing, LBCS (and LBHI as guarantor) owes substantial amounts to Thomas Cook under Section 8.1 of the Thomas Cook Agreement.

8. On September 22, 2009, Thomas Cook timely filed proofs of claim against LBCS and LBHI in the amount of $65,191,886 in respect of LBCS's and LBHI's indebtedness to Thomas Cook under the Thomas Cook Agreement (the "**Claims**"). On September 22, 2009, Thomas Cook timely submitted properly completed Derivative and Guarantee Questionnaires (the "**Questionnaires**") and uploaded voluminous information and documents in support of the Claims, as required by the Bar Date Order (as that term is defined in the Claims Objection).[1]

9. On or about July 11, 2011, the Debtors filed the Claims Objection. Based almost entirely on the Debtors' conclusory statement that "[a]fter a review of the claimants' supporting documentation and the Debtors' books and records, the Debtors have determined that, based on the fair, accurate and reasonable values of the subject Derivative Contracts and the netting provisions thereunder, the Debtors do not owe any amounts to the claimants . . . ." (Claims Objection at ¶ 11), and without any evidence or legal analysis, the Debtors ask the Court to disallow and expunge the Claims in their entirety. For the reasons set forth below, the Claims Objection is deficient and without merit and should be denied, and the Claims should be allowed.

10. The Debtors recite in the Claims Objection that "the Debtors engage in, to the extent the holder is willing to so engage, lengthy negotiations with the holder of the Derivatives Claims that are often very detailed and may extend over a period of months." This was simply

---

[1] Copies of the Thomas Cook Agreement, the Termination Notice and evidence of the replacement trades, among other things, were attached to the Questionnaires and thus were incorporated into the Claims.

not so here. While Thomas Cook sought to engage in meaningful negotiations with the Debtors, the Debtors' "negotiations" with Thomas Cook entailed the Debtors sending three letters from the Debtors' business people and German attorneys, all of which were substantively identical, demanding that Thomas Cook pay the exact same amount of money – which just happened to be the full amount the Debtors believe is owed to them, plus two types of interest – as well as a few brief phone calls between Thomas Cook representatives and a representative of the Debtors.

11.     During the course of communications between Thomas Cook and the Debtors, Thomas Cook provided additional information and analysis regarding the merits of the Claims and made good faith settlement offers to the Debtors that were increasingly favorable to the Debtors' estates. Indeed, not three weeks before the Claims Objection was filed, Thomas Cook's counsel sent a letter to the Debtors' German counsel providing substantial analysis in support of the Claims, setting forth a renewed good faith settlement offer and inviting renewed dialog, in the hopes of reaching a consensual resolution. Unfortunately, it appears that this letter was ignored (or that the Debtors' German counsel did not communicate adequately with his American counterparts), because without any further discussions (or even so much as a courtesy phone call), the Debtors (this time by a team of American attorneys) responded by filing the Claims Objection, thereby prematurely escalating this dispute to litigation.

12.     At the same time, the Debtors served on Thomas Cook an ADR Notice, as contemplated by the Claims Objection. Claims Objection at ¶ 14. Contrary to the Debtors' representations that such notice is intended "to resolve differences between the Debtors and claimants," the ADR Notice provides that the Debtors do not intend to negotiate regarding the Claims at all and that only the Debtors' affirmative demands for payment will be considered. Id. Such an approach would not, of course, be an efficient or effective way of conducting a

negotiation that purports to resolves the "differences between the Debtors and claimants," since resolution of the parties' claims against one another arise out of precisely the same set of facts and legal issues. Negotiation of either party's claims against the other, in a vacuum, would undoubtedly lead to redundancy, the risk of inconsistency, the hardening of positions and greatly increased costs for both parties. All of this has been wasteful of estate and Thomas Cook resources and brings into question the Debtors' good faith.

## THE CLAIMS OBJECTION SHOULD BE DENIED

13. It is black-letter law that a properly filed proof of claim is <u>prima facie</u> evidence of the validity and amount of the claim. <u>See</u> 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."); <u>Calderon v. CitiMortgage, Inc.</u>, 437 B.R. 25, 28, fn. 2 (D.P.R. 2010) ("a claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case.") (quotations omitted). "In order to rebut the presumption that attaches to a proof of claim, a party objecting must produce <u>substantial</u> <u>evidence</u>." <u>In re Campano</u>, 293 B.R. 281, 285 (D.N.H. 2003) (emphasis added); Resnick and Sommer, 9 Collier on Bankruptcy ¶ 3001.09[2] (16th ed. rev. 2010) ("The party objecting to the claim has burden of going forward and <u>of introducing evidence sufficient to rebut the presumption of validity</u>.") (emphasis added). Absent such substantial evidence, a mere formal objection, such as the Claims Objection, must fail. <u>See</u> <u>Calderon</u>, 437 B.R. at 28, fn. 2 ("A proof of claim will prevail over a mere formal objection.") (quotations omitted).

14. The Debtors, by the Claims objection, seek to turn this well-settled law on its head, arguing that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Claims Objection at ¶ 12. This attempt at improper burden shifting should be rejected. Indeed, this incorrect

standard for burden shifting is not even the standard articulated by the cases cited by the Debtors for this proposition. Rather, those cases explicitly provide that in order to shift any burden to Thomas Cook, the Debtors would need to provide "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (emphasis added); see also In re Adelphia Communications Corporation, No. 02-41729, docket no. 13211, at *15 (Bankr. S.D.N.Y. Feb. 20, 2011) ("Because a properly filed proof of claim is deemed allowed until objected to, 'such allowance compels the objecting party to go forward and produce sufficient evidence to rebut claimant's prima facie case.") (quotations omitted; emphasis added); In re Rockefeller Center Properties, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim.") (emphasis added).

15. As noted above, Thomas Cook timely and properly filed the Claims on September 22, 2009. The Claims Objection does not contest the timely or proper filing of the Claims. As a result, the Claims are prima facie evidence of the validity and amount of the indebtedness owed to Thomas Cook by LBCS and LBHI. Fed. R. Bankr. P. 3001(f); In re Oneida Ltd., 400 B.R. at 389 ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion."). Moreover, Thomas Cook buttressed the prima facie validity of the Claims by uploading substantial evidence in support of the Claims (far in excess of the evidence generally required to support the prima facie validity of a proof of claim), including, among other things, agreements, notices, proofs of mailing, market quotations, spreadsheets, calculations, trade confirmations, written summaries

and other supporting data and documents, along with the Questionnaires in support of the Claims.

16. In the face of the prima facie validity afforded to the Claims, and the substantial documentary and other evidence submitted by Thomas Cook in support thereof, the Claims Objection contains essentially a naked disclaimer of liability. The Debtors have offered no evidence at all that would refute the Claims, much less the requisite "evidence equal in force to the prima facie case" necessary to overcome the prima facie validity of the Claims and to shift any burden to Thomas Cook. In re Oneida Ltd., 400 B.R. at 389. Indeed, the Debtors have provided no evidence of or information relating to, among many other things, (i) the inputs (if any) they used in valuing the Claims, (ii) the calculations (if any) used in valuing the Claims, (iii) the extent to which the Debtors' valuation calculations complied (or failed to comply) with the provisions of the Thomas Cook Agreement or (iv) any other data or information that would permit Thomas Cook or the Court to evaluate or test the valuation conclusions arrived at by the Debtors. Rather, the Debtors merely assert, in conclusory fashion, that based on their "review of the claimants' supporting documentation and the Debtors' books and records, the Debtors have determined that . . . the Debtors do not owe any amounts to the claimants. . . ." Claims Objection at ¶ 11. This mere formal objection is insufficient and is prejudicial to Thomas Cook's ability to respond meaningfully to the Claims Objection. See Calderon, 437 B.R. at 28, fn. 2 ("A proof of claim will prevail over a mere formal objection.") (quotations omitted). Accordingly, the Claims Objection should be denied.

17. The Claims Objection should be denied on the merits as well. Thomas Cook had "material reason" under Section 7.1 of the Thomas Cook Agreement to terminate the Thomas Cook Agreement as a result of the bankruptcy filing of LBHI. Thomas Cook timely and

properly terminated the Thomas Cook Agreement under Section 7.1 of the Thomas Cook Agreement and replaced all of the terminated fuel hedges that required replacement properly and "without undue delay" as required in accordance with the terms of Section 8.1 the Thomas Cook Agreement and governing German law. As a result of LBHI's bankruptcy filing, and the related termination of the Thomas Cook Agreement and replacement of certain of the terminated transactions thereunder, Thomas Cook is entitled to substantial compensation under Section 8.1 of the Thomas Cook Agreement, to the extent set forth in the Claims. The Claims thus are valid, and the Claims Objection should be denied.

## RESERVATION OF RIGHTS

18.     As noted above, the Claims Objection is devoid of substance in a way that is unacceptable under well-settled law and that is prejudicial to Thomas Cook's ability meaningfully to respond. Thomas Cook therefore reserves the right, if necessary, to supplement, amend or modify this Objection at any time to address any facts, assertions, allegations, arguments, legal theories, legal analysis or similar additional items that may be raised by the Debtors or any party, as well as the right to take discovery relating to the Claims Objection and to request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amount of the Claims.

## NOTICE OF APPLICABILITY OF FOREIGN LAW

19.     The Thomas Cook Agreement is governed by German law. Thomas Cook therefore anticipates that determination of the validity of the Claims, which arise under the Thomas Cook Agreement, will require a determination of the respective rights of Thomas Cook, LBCS and LBHI under and in respect of the Thomas Cook Agreement by application of German law. Specifically, German law is expected to apply with respect to the following issues, perhaps among others: (i) the appropriate date of termination of the Thomas Cook Agreement, (ii) the

timeliness of Thomas Cook's entry into the replacement trades and (iii) the propriety of the replacement trades entered into by Thomas Cook. Thomas Cook hereby provides notice to the Court, the Debtors and parties in interest of the applicability of German law in respect of those issues, perhaps among others, pursuant to F.R.C.P. 44.1, incorporated in this proceeding by Bankruptcy Rule 9017, and reserves the right to supplement this notice to the extent necessary.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Thomas Cook respectfully requests that this Court enter an order (i) denying the Claims Objections, (ii) allowing the Claims in full against the LBCS and LBHI estates and (iii) granting such other, further or different relief as this Court deems just and proper.

Dated: August 10, 2011
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**LOEB & LOEB LLP**

　　　　　　　　　　　　　　　　　　　　By:　　/s/ Walter H. Curchack
　　　　　　　　　　　　　　　　　　　　　　　Walter H. Curchack
　　　　　　　　　　　　　　　　　　　　　　　Daniel B. Besikof
　　　　　　　　　　　　　　　　　　　　　　　345 Park Avenue
　　　　　　　　　　　　　　　　　　　　　　　New York, New York  10154
　　　　　　　　　　　　　　　　　　　　　　　(212) 407-4000

　　　　　　　　　　　　　　　　　　　　*Attorneys for Thomas Cook AG*