**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York  10022
Telephone: (212) 906-1200
Fax: (212) 751-4864
Mark A. Broude
Blair Connelly
Email:  Mark.Broude@lw.com
            Blair.Connelly@lw.com

Attorneys for Bundesverband deutscher Banken e.V.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | ) |
| | ) Case No. 08-13555 (JMP) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |

**OBJECTION OF BUNDESVERBAND DEUTSCHER BANKEN E.V. TO DEBTORS' AMENDED MOTION (I) FOR APPROVAL OF THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN**

TO THE HONORABLE JAMES M. PECK.
UNITED STATES BANKRUPTCY JUDGE:

The Association of German Banks (*Bundesverband deutscher Banken e.V.*) ("BdB"), the national association of German private sector banks, hereby files this objection (the "Objection") to the *Amended Motion (I) For Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No.

NY\1811965.7

18126] (the "Motion"), filed on June 29, 2011 by Lehman Brothers Holdings, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") in the above-referenced chapter 11 cases, and respectfully submits:

## BACKGROUND

1. On September 15, 2008 and periodically thereafter, the Debtors including LBHI[1] and certain of its subsidiaries commenced with this Court voluntary cases (these "Cases") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1531 (as amended, the "Bankruptcy Code"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

2. On January 25, 2011 the Debtors filed the *First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 14150] and *Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code* [Docket No. 14151]. On March 16, 2011 the Debtors filed the *Motion (I) For Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 15078].

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Disclosure Statement (as defined below).

2

NY\1811965.7

3. On April 25, 2011, the Non-Consolidation Plan Proponents (the "Non-Consolidation Group") filed the *Joint Chapter 11 Plan for Lehman Brothers Holdings Inc., and Its Affiliated Debtors other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents* [Docket No. 16629] and *Disclosure Statement for the Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents* [Docket No. 16630].

4. On April 27, 2011 the Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group") filed the *Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Proposed by the Ad Hoc Group of Lehman Brothers Creditors* [Docket No. 16315] and *Disclosure Statement for the Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors* [Docket No. 16316].

5. On June 29, 2011, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 18124] (the "Debtors' Plan") and *Debtors' Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code* [Docket No. 18125] (the "Disclosure Statement"). Also on June 29, 2011, the Debtors filed the Motion.

6. On July 6, 2011 the Debtors filed the *Debtors' Motion for (i) Approval of Stipulation and Order Regarding Chapter 11 Plans and (ii) Stay of Related Discovery* [Docket

3

No. 18306] and on July 21, 2011 this Court entered the *Order Granting Debtors' Motion for (i) Approval of Stipulation and Order Regarding Chapter 11 Plans and (ii) Stay of Related Discovery* [Docket No. 18686] (the "Stipulation"). Pursuant to the Stipulation, the Non-Consolidation Group and the Ad Hoc Group agreed to hold in abeyance and not to prosecute or seek confirmation of their respective plans, subject to the terms of the Stipulation.

7. A hearing to consider entry of an order approving the Disclosure Statement is scheduled for August 30, 2011.

## ARGUMENT

### I. THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION

8. To gain this Court's approval, the Disclosure Statement must provide creditors with information that would enable a hypothetical investor to make an informed judgment about the Debtors' Plan. The Debtors' Disclosure Statement fails to meet this standard for a number of reasons. First, the Debtors' Plan is premised in large part upon the Plan Adjustment, which purports to compromise the issue of substantive consolidation in these Cases. However, the Disclosure Statement fails to discuss the merits of substantive consolidation on an entity-by-entity basis, particularly as the issue relates to non-Debtor Affiliates outside of the United States and outside of this Court's jurisdiction. This omission leaves creditors guessing as to whether the Plan Adjustment presents a fair compromise. Second as a result of material open issues, creditor recoveries will be subject to extreme variance under the Debtors' Plan; however, the Disclosure Statement fails to provide creditors with the information necessary to assess the risk that actual results will vary from the Debtors' projections set forth in the Recovery Analysis. For those and other reasons discussed herein, this Court should not approve the Disclosure Statement.

4

NY\1811965.7

A. **Legal Standard for Adequate Disclosure**

9. A disclosure statement "containing adequate information" must be approved by the court before the solicitation process to confirm a plan of reorganization can commence. 11 U.S.C. §1125(b). The Bankruptcy Code defines "adequate information" in relevant part as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. §1125(a); *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp)* 25 F.3d 1132, 1136 (2d Cir. 1994). What constitutes "adequate information" in any particular case must be considered on a case-by-case basis. *See Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 866 (E.D.N.Y. 2008).

10. Under the Bankruptcy Code, the standard for what constitutes adequate information is that amount of information which "a hypothetical reasonable investor typical of holders of claims . . .would enable such a hypothetical investor . . .to make an informed judgment about the plan . . ." *See* 11 U.S.C. § 1125(a); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The animating philosophy behind the disclosure requirement is to provide "adequate information to creditors to enable them to decide whether to accept or reject the proposed plan." *In re Ferretti*, 128 B.R. 16, 17 (Bankr. D. N. H. 1991). A disclosure statement must clearly and succinctly inform a stakeholder "**what it is going to get, when it is going to get it and what contingencies there are to getting its distribution**." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991) (emphasis added).

11. A disclosure statement cannot be approved when it fails to provide relevant information relating to risks to voting parties. *In re Adana Mortgage Bankers, Inc.*, 14 B.R. 29, 31 (Bankr. N.D. Ga. 1981) (rejecting debtor's proposed disclosure statement which failed to

provide relevant financial information and did "not provide any information relevant to the risks of the Creditors under the terms and provisions of Debtor's Plan"); *In re New Haven Radio, Inc.*, 18 B.R. 977, 979 (Bankr. D. Conn. 1982) (holding that a disclosure statement should "provide the 'hypothetical investor' with the kind of information to evaluate the risk of acceptance of the plan"); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (relevant factors for evaluating adequacy of disclosure include "information relevant to the risks posed to creditors under the plan") (citing *Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D.Ga. 1984)).

12. Not only does the disclosure statement have to provide sufficient information of the appropriate nature, but the information must also be accurate. As Judge Gerber aptly stated in *Adelphia*, "an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information there, but also that what is said is not misleading…. [S]tatements of fact should be accurate, and I don't think a court properly can approve supplemental solicitation material when it believes or suspects that the facts are inaccurate, or leave out mention of other facts of which the court is aware whose omission makes the facts that were disclosed misleading." *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600-601 (Bankr. S.D.N.Y. 2006).

13. A plan ultimately governs the recovery creditors can expect to receive and the disclosure statement is the means for protecting their interests. The Debtors' Disclosure Statement fails to provide adequate information to the Debtors' creditors so that they can reasonably evaluate the merits of the Debtors' Plan.

NY\1811965.7

B.     <u>The Disclosure Statement Fails to Provide an Analysis of Substantive Consolidation Risk on an Entity-by-Entity Basis</u>

14.     The Debtors' Plan purports to resolve potential litigation concerning the substantive consolidation of the Debtors and certain of their non-debtor Affiliates. *See* DS § X.B.1.b. On account of the purported risk that certain Debtors and other Affiliates could be substantively consolidated, the Debtors' Plan would reallocate distributions from certain classes of Claims (namely, (i) unsecured Claims against the Participating Subsidiary Debtors[2] and (ii) the guarantee creditors of LBHI) to other creditors (namely, the non-guarantee unsecured creditors of LBHI) through the Plan Adjustment.[3]

15.     The Plan Adjustment, as applied to holders of claims against LBHI's subsidiary Debtors, implicitly recognizes the obvious fact that different LBHI subsidiaries are differently-situated and some have higher substantive consolidation risk profiles than others. Thus, while the Debtors' Plan reduces recoveries for holders of direct Claims against the Participating Subsidiary Debtors pursuant to the Plan Adjustment, it does not reduce recoveries for holders of direct Claims against other LBHI's other subsidiary Debtors. Though the Debtors' Plan employs a drastically different distribution scheme for Claims against Participating Subsidiary Debtors on the one hand and against LBHI's other subsidiary Debtors on the other hand, the Disclosure Statement itself provides ***no*** detailed analysis of substantive consolidation on an entity-by-entity basis. Rather, the Disclosure Statement discusses substantive

---

[2]     The Participating Subsidiary Debtors are LCPI, LBCS, LBSF, LOTC and LBCC.

[3]     Specifically, the Plan Adjustment reduces the distributions to holders of (i) the following claims against the Participating Subsidiary Debtors: General Unsecured Claims, Affiliate Claims of Participating Subsidiary Debtors and Affiliate Claims of Affiliates other than Participating Debtors and (ii) the following claims against LBHI: Senior Third-Party Guarantee Claims, Senior Third Party LBT/LBSN Guarantee Claims and Derivative Guarantee Claims. *See* DS § X.B.1.b. The Plan Adjustment increases the distributions to holders of Senior Unsecured, and General Unsecured Claims against LBHI. *Id.*

7

consolidation risk only in the most general terms. *See, e.g.* DS § X.B.1.b ("The Participating Subsidiary Debtors are generally the Lehman entities that had continuous and active operations prior to the Commencement Date."); *see also id.* at 54-57 (chart of *Drexel* entanglement factors provides virtually no analysis at an entity-by-entity level).

16. The omission of this critical information makes it impossible for creditors to understand whether the Plan Adjustment appropriately reflects the true risk that a given Affiliate would be substantively consolidated if the issue were litigated. Without an explanation of substantive consolidation risk on an entity-by-entity basis, the Disclosure Statement cannot provide creditors with adequate information to assess the merits of the Debtors' proposed substantive consolidation "compromise."

    C.    <u>Treatment of Certain Third-Party Guarantee Claims is not Explained</u>

17. The Debtors' failure to provide an entity-by-entity analysis of substantive consolidation risk is particularly pronounced when it comes to the treatment of holders of Third-Party Guarantee Claims against LBHI. The Plan Adjustment would reduce the recoveries on account of *all* Senior Third-Party Guarantee Claims and Third-Party Guarantee Claims other than those of the Racers Trusts by 20%, apparently to account for the risk that LBHI and a given Primary Obligor may be substantively consolidated. *See* DS § X.B.1.b. The Plan Adjustment would impose this across-the-board 20% reduction notwithstanding the material differences among the various Primary Obligors and their differing substantive consolidation risk profiles.

18. As discussed above, the differing treatment between the holders of direct claims against the Participating Subsidiary Debtors and LBHI's other subsidiary Debtors appears to recognize that certain Subsidiaries are at risk of substantive consolidation while others are not. Yet the Disclosure Statement utterly fails to articulate a reason why particular Primary Obligors other than the Participating Subsidiary Debtors could be substantively consolidated with the

8

NY\1811965.7

Debtors. The Disclosure Statement limits its explanation of the Plan Adjustment in this context to a single, completely uninformative sentence: "As to Guarantee Claims for which the primary obligor is an entity other than the Participating Subsidiary Debtors, 20% of the Distributions on account of such Allowed Claims will be reallocated." DS § X.B.1.b. This sentence provides no explanation whatsoever as to why a 20% Plan Adjustment represents a fair compromise and why the same Plan Adjustment for all Third-Party Guarantee Claims is appropriate notwithstanding the fact that many Primary Obligors present unique facts and analyses.

19. The Disclosure Statement's failure to address substantive consolidation on an entity-by-entity level is even more perplexing in light of the fact that a number of the Primary Obligors are foreign subsidiaries of LBHI. The Disclosure Statement acknowledges that cross-border substantive consolidation may not even be possible as a matter of United States bankruptcy law and the local law applicable to a given Primary Obligor. DS § X.B.1.c(iii) ("***Potentially***, the Bankruptcy Court may order an alternative remedy that would have an impact similar to substantive consolidation on the creditors of Foreign Debtors . . .") (emphasis added). What the Disclosure Statement fails to explain is why, despite this uncertainty, the same Plan Adjustment applies with respect to Third-Party Guarantee Claims against LBHI for which (i) the Primary Obligor is a foreign subsidiary against LBHI and (ii) the Primary Obligor is a domestic subsidiary of LBHI.

20. Beyond the legal uncertainties regarding cross-border substantive consolidation, each Primary Obligor (including each foreign Primary Obligor) presents a unique set of facts that requires a very particularized analysis of the risks of substantive consolidation. The Primary Obligor against whom BdB has primary claims is Lehman Brothers Bankhaus AG ("Bankhaus"). Bankhaus is a regulated German bank, subject to separate local accounting and

regulatory requirements, but nowhere does the Disclosure Statement explain why substantive consolidation of the Debtors with a foreign regulated bank is appropriate, or even possible, as a matter of United States or German law.  The Disclosure Statement's only discussion of the regulation of certain LBHI subsidiaries implies that substantive consolidation of such entities would be inappropriate.  DS § X.B.1.b (chart of *Drexel* entanglement factors at pp. 55 states: "Regulated entities maintained adequate capital levels.")  Nor does the Disclosure Statement explain why substantive consolidation of LBHI and Bankhaus is *as likely as* substantive consolidation of LBHI and any other subsidiary (domestic or foreign, regulated or unregulated), as is implied by the across-the-board 20% reduction.  Indeed, the 20% Plan Adjustment that would apply to BdB's Guarantee Claim is based on the premise that substantive consolidation of LBHI with Bankhaus is *as likely as* substantive consolidation of LBHI with the Participating Subsidiaries.

21. The Disclosure Statement must include a detailed explanation of the Debtors' views as to why they believe such a position is both supportable and appropriate. Without such an explanation, LBHI Class 5 and 9A creditors with primary claims against Bankhaus (or for that matter any other foreign Primary Obligor) are left guessing as to why the Debtors' Plan treats them the same as LBHI Class 5 and 9A creditors with primary claims against different LBHI Affiliates (such as Participating Subsidiary Debtors).  There is quite simply insufficient information to allow creditors in Classes 5 and 9A to determine whether the Debtors' Plan proposes a fair compromise with respect to substantive consolidation.

D.  Disclosure Statement Fails to Provide Information Concerning Material Risks

22. Creditors' recoveries under the Debtors' Plan are dependent in large part upon both the pools of Allowed Claims against each Debtor and the ultimate value of each Debtors' assets. Because the Debtors' Plan does not resolve those variable inputs with any

finality, it is important for creditors to understand the risks associated with their projected recoveries should actual results of Claims litigation and asset realization deviate from the Debtors' projections. The Disclosure Statement discusses at a high level the assumptions that the Debtors employed to arrive at the recoveries projected in their Recovery Analysis. However, it fails to provide creditors with sufficient information to (i) assess whether the Debtors' assumptions are sound or (ii) understand how recoveries will be affected if the Debtors' assumptions turn out not to be correct. The Debtors' Disclosure Statement fails to apprise creditors of the substantial risks underlying the Debtors' Plan and arm creditors with information necessary to assess those risks; therefore, it cannot be approved. *In re Adana Mortgage Bankers, Inc.*, 14 B.R. at 31; *In re New Haven Radio, Inc.*, 18 B.R. at 979.

        a.    **Allowed Claims Pools**

23. The Debtors' projected recoveries, set forth in their Recovery Analysis, are driven in large part by the pools of Allowed Claims against each Debtor. Changes to the Debtors' projected Allowed Claims pools could alter projected recoveries materially. But the Disclosure Statement does not explain sufficiently what analysis the Debtors have done with respect to the allowability of various pools of Claims. Nor does it address the Debtors' expected time frame for litigating or otherwise resolving the allowability of such Claims. Finally, and most importantly, the Disclosure Statement does not explain how outcomes of litigation over or resolution of such Claims in a manner not exactly consistent with the assumptions underlying the Recovery Analysis will affect creditor recoveries. Three categories of these unresolved Claims pools that illustrate the uncertainties underlying the Debtors' Plan are: (i) Guarantee Claims, (ii) Claims based on Structured Securities and (iii) Claims on account of Loan Purchase and Sale Agreements.

11

(1)   *Guarantee Claims*

24.   The Debtors' Plan is not implemented through substantive consolidation; therefore, Guarantee Claims are fully respected to the extent such Claims are Allowed, subject to Plan Adjustments. *See* DS § X.B.1.b.  A total of approximately $570 billion of Guarantee Claims have been filed against LBHI. *See* DS § V.C. ($315 billion in Affiliate Guarantee Claims and $255 billion in Third Party Guarantee Claims).  The Debtors' Recovery Analysis estimates that only approximately $154 billion of those claims will be Allowed. *See* DS Ex. 6, Annex B-1, 2 ($59,015,000 in Affiliate Guarantee Claims and $94,640,000 in Third Party Guarantee Claims).  With limited exceptions, the Debtors' Plan does not resolve the issues surrounding the Allowed amounts of such Guarantee Claims – those issues are left to settlement or adjudication outside of the Debtors' Plan.[4]  Given the enormity of asserted Guarantee Claims, even small changes to the Debtors' projections could have material impacts on recoveries.  Yet the Recovery Analysis fails to (i) disclose adequately the Debtors' assumptions behind the projected Guarantee Claims pool and (ii) explain the effect on creditor recoveries if the actual Guarantee Claims pool varies from the Debtors' projections.[5]

---

[4]   The Debtors' Plan does provide that the Debtors will not challenge the validity or enforceability of Third-Party Guarantee Claims based on LBT Issues Notes. *See* DS § X.B.4.  However, the Debtors' Plan still does not resolve the Allowed amounts of such Claims; it merely establishes that the Allowed amounts of such Claims will not be zero.  Additionally, the Debtors' Plan provides that LBHI Class 4B Senior Affiliate Guarantee Claims filed by LBHI's subsidiary Debtors will form part of such subsidiary Debtors' Allowed Claim against LBHI, in an amount set forth on the Debtors' Claim Schedule, attached to the Disclosure Statement as Exhibit 9. *See* DS §§ X.B.4; X.C.2.a.(v).  However, the Debtors' Claim Schedule lists a single Allowed Claim for each subsidiary Debtor against LBHI, and does not specify what portion of that Claim is on account of its Senior Affiliate Guarantee Claim – therefore, the information in the Disclosure Statement regarding the Guarantee Claims pool is far from complete.

[5]   The Debtors' assertion that they have "significant defenses to the enforceability of many of the asserted Guarantee Claims" does not sufficiently explain the assumptions

12

(2)  *Structured Securities Claims*

25.  The Debtors propose to resolve Claims relating to Structured Securities through Structured Securities Claims procedures separate from the Debtors' Plan, meaning the Debtors' Plan itself does not fix the Allowed amounts of Claims based on Structured Securities. *See* DS § V.D. Creditors filed approximately $55 billion in claims against the Debtors based on Structured Securities; however, the Debtors' Recovery Analysis assumes that only $37 billion of those Claims will be Allowed. *See id*. As with the Guarantee Claims, the Disclosure Statement fails to explain the Debtors' assumptions behind the projection of $37 billion in Allowed Claims based on Structured Securities, or sensitize that projection to variances in the Debtors' assumptions.

(3)  *Residential Mortgage Loan Representations and Warranty Claims*

26.  According to the Disclosure Statement, approximately 1,100 Claims representing more than $73 billion in the aggregate have been filed on account of Loan Purchase and Sale Agreement Claims. *See* DS § V.F. The Debtors believe that their liability "could ultimately be approximately $10.4 billion" on account of these Claims. *See id*. The Disclosure Statement discusses the Debtors' process in arriving at their estimated Loan Purchase and Sale Agreement Claim pool in only the most general terms. *See id*. ("To arrive at their estimates, the Debtors utilized their past experience analyzing and identifying the rates at which claims asserting breaches of representations and warranties have been validated.") Without substantially more detail on the Debtors' estimation process, the assumptions underlying their estimates and sensitivities for variations to those estimates – at the very least – the Disclosure

---

underlying their projections of the Guarantee Claims pool, as reflected in their Recovery Analysis. *See* DS § V.C.

13

Statement fails to provide adequate information regarding the Loan Purchase and Sale Agreement Claims pool.

27. To meet their burden under Section 1125, the Debtors need to say more than "actual results may vary." Without sufficient information regarding the Allowed Claims pools, the Debtors' underlying assumptions and the sensitivities to those assumptions, creditors are simply unable to make informed decisions about the merits of the Debtors' Plan.

b. **Asset Valuation and Timing of Realization**

28. Both the Debtors' Recovery Analysis and Liquidation Analysis lack crucial information concerning the Debtors' assumptions regarding asset values and the assumed timing for realization of such values. It appears that the projected recoveries set forth in the Disclosure Statement do not reflect any present valuing of distributions that may not be made for several years. Unless the Debtors can definitively say that all assets will be converted to cash and all cash distributed within a sufficiently short period of time to make present valuing an immaterial exercise, the Disclosure Statement must clearly state whether the projected recoveries reflect any present valuing of future distributions and to provide a sensitivity analysis as to how the present value of projected recoveries will be affected by potential delays in asset realization. Additionally, the Disclosure Statement lacks analysis of how variations to the Debtors' projected assets realization would affect projected creditor recoveries. Without an explanation of these fundamental assumptions which drive the recovery and liquidation analyses, creditors have no means of understanding or believing the projections that the Debtors offer.

E. <u>The Disclosure Statement Incorrectly States that Confirmation of the Debtors' Plan Would Avoid Litigation over Substantive Consolidation</u>

29. The Disclosure Statement states that the confirmation of the Debtors' Plan will "eliminate the necessity of [] complex litigation" over substantive consolidation. DS §

14

X.B.1.a.  This statement is wishful thinking and ultimately divorced from the reality of the confirmation process.  It would be true only if all classes accepted the Debtors' Plan and no creditor objected to the Debtors' Plan (including its "compromise" of alleged substantive consolidation issues).  However, the fact that creditors will most likely object to confirmation of the Debtors' Plan and the Debtors' proposed "compromise" of substantive consolidation means that there will in fact be litigation over substantive consolidation.  Because the Debtors' Plan does not in fact eliminate such litigation, the Disclosure Statement's proclamation that it does is simply inaccurate.  A disclosure statement with facially inaccurate information cannot be approved.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. at 600-601.

## CONCLUSION

30.  For the foregoing reasons, the Disclosure Statement does not contain the adequate information that would enable creditors to properly evaluate the Debtors' Plan.  Therefore, BdB requests that the Court deny approval of the Disclosure Statement.

Dated: August 11, 2011  
New York, New York

Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ *Mark A. Broude*

Mark A. Broude  
Blair Connelly  
885 Third Avenue, Suite 1000  
New York, New York 10022  
Telephone: (212) 906-1200  
Facsimile: (212) 751-4864

Counsel for Bundesverband deutscher Banken e.V.

NY\1811965.7