COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
Michael B. Hopkins
Susan Power Johnston
Martin E. Beeler
Amanda Raboy

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :
                                                    :    Chapter 11
LEHMAN BROTHERS HOLDINGS INC., *et al.*             :
                                                    :    Case No. 08-13555 (JMP)
                                                    :
                                Debtors.            :    (Jointly Administered)
                                                    :
---------------------------------------------------------------x

**OBJECTION OF WILMINGTON TRUST COMPANY, AS INDENTURE
TRUSTEE, TO THE DEBTORS' AMENDED MOTION (I) FOR APPROVAL OF
THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE OF
THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION
AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING,
AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR
<u>CONFIRMATION OF THE DEBTORS JOINT CHAPTER 11 PLAN</u>**

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

Wilmington Trust Company ("<u>Wilmington Trust</u>" or the "<u>Indenture Trustee</u>"), as successor indenture trustee under the Indenture, dated as of September 1, 1987 (as amended, supplemented, or modified, the "<u>Senior Indenture</u>"), between Lehman Brothers Holdings Inc. (f/k/a Shearson Lehman Brothers Holdings Inc.) ("<u>LBHI</u>") and Wilmington Trust (as successor trustee to Citibank, N.A.), by and through its undersigned counsel, submits this objection to the Debtors' Amended Motion (i) for Approval of the Disclosure Statement (the "<u>Disclosure Statement</u>") and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and

NY: 720834-3

(iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors Joint Chapter 11 Plan, dated June 29, 2011 (the "Motion") [Docket No. 18126].

**PRELIMINARY STATEMENT**

1. Wilmington Trust files this objection because the Disclosure Statement contains confusing and inadequate disclosure regarding the valuation and proposed allowed claim amounts for certain Structured Securities[1] issued by LBHI under the Senior Indenture (the "Senior Structured Notes"), and the procedures applicable to them going forward.

2. First, the Disclosure Statement should include a discussion of the conclusions reached by the Official Committee of Unsecured Creditors (the "Committee") regarding the structured securities valuation methodologies (the "Valuation Methodologies") that will be employed by the Debtors to determine the allowed claim amounts for the Senior Structured Notes. The Committee advised the Court in the statement it filed in response to the Structured Securities Motion (as defined below) (the "Committee Statement") [docket no. 19042], that it has engaged in extensive analysis and lengthy discussions with the Debtors regarding the Valuation Methodologies, as a result of which it concluded that the methodologies were reasonable. The Committee's assessment is the only publicly available independent assessment of the Debtors' Valuation Methodologies. It provides essential information about the reasonableness of the methodologies that will assist the holders of Senior Structured Notes in evaluating the treatment of their claims under the proposed Valuation Methodologies, and it should be included in the Disclosure Statement.

3. Second, the Structured Securities Order entered on August 9, 2011, expressly excludes the Senior Structured Notes from the notice and objection procedures related

---

[1] Capitalized terms not otherwise defined shall have the meaning given to them in the Disclosure Statement.

2

to claim allowance to be implemented under the Structured Securities Order. The Disclosure Statement is inconsistent with the Structured Securities order: it states that the holders of all Structured Securities, which by definition includes the Senior Structured Notes, will be subject to those procedures. To avoid confusion, the Disclosure Statement should be amended so that it is consistent with the Structured Securities Order.

4. On August 9, 2011, Wilmington Trust provided the proposed revisions to the Disclosure Statement, attached as Exhibit A, to the Debtors, but has not had a response from the Debtors before the deadline to file this objection.

## FACTS

The Senior Indenture and the
Global Proof of Claim

5. As successor Indenture Trustee under the Senior Indenture, Wilmington Trust is a fiduciary for the holders of one of the largest unsecured claims against the LBHI estate. On September 2, 2009, Wilmington Trust filed a proof of claim (the "WTC Global Proof of Claim") (Claim No. 10082) on behalf of itself and the holders of the securities issued under the Senior Indenture (the "Noteholders"), in the range of $49,214,955,480.71 (the total outstanding amount of securities issued under the Senior Indenture, based on information provided by the Predecessor Trustee) to $73,162,259,495.49 (the total outstanding amount provided on the Debtors' Master List of Securities).

6. The WTC Global Proof of Claim encompasses 791 CUSIP numbers, including 563 CUSIPs classified by the Debtors as Structured Securities. Based on the Debtors'

3

classification of the Senior Notes under the Valuation Methodologies, the aggregate notional amount of the Senior Structured Notes is approximately $5.2 billion.[2]

7.   The Senior Notes, including the Senior Structured Notes, are held by thousands of beneficial holders.  Many of the Senior Structured Notes are held by "retail" investors who purchased the notes in relatively small amounts, rather than large institutions or wealthy individuals.  These small holders are typically not organized to take positions in this case or to assess on their own the reasonableness of the Valuation Methodologies.

The Valuation Methodologies
Applicable to Structured Securities

8.   In the Disclosure Statement, the Debtors characterize Structured Securities as securities that "predominately provide that the return at maturity and/or the payment of interest is derived from or linked to the performance of an underlying asset or groups of assets including global indices, single stocks, currencies, interest rates, and various credit derivative instruments and baskets thereof." (Disclosure Statement at 43.)  The Debtors further explain that "[i]n some instances principal and/or interest due under such Structured Securities may be partially or wholly 'protected.'" (*Id*.)  The Disclosure Statement defines "Structured Securities" to include the Senior Structured Notes.

9.   Under the Valuation Methodologies the Debtors categorize certain of the Structured Securities as Fair Market Value Notes ("<u>FMV Notes</u>").  (Disclosure Statement at Exhibit 11-1 to 11-2.)  The Debtors propose to value the FMV Notes based on their fair market value as reflected on the Debtors' books and records as of the petition date:

> The FMV Notes present unique circumstances and challenges due to the diversity and complexity of their structures, the number of issuers and consequent

---

[2] Wilmington Trust does not hereby consent to, or otherwise agree with, the Debtors' classification of the Senior Notes for purposes of the Valuation Methodologies, or the outstanding notional amounts provided by the Debtors, and reserves all rights to challenge any such outstanding amount or classification.

4

>intercompany relationships they entail, and the numerosity and dispersion of investors. Estimating the value of a FMV Note by the replacement cost of the lost investment (*i.e.*, its fair market value) as of the Commencement Date achieves these objections, is economically realistic, promotes certainty, and eases the administration of the estate, because it follows LBHI's prepetition internal accounting methodology.

(Disclosure Statement at Exhibit 11-4.)

10. According to the Disclosure Statement, the Valuation Methodologies are consistent with the methodologies that Lehman used prepetition to record its liabilities for Structured Securities on its books and records, subject to certain adjustments. (Disclosure Statement at Exhibit 11-2; Structured Securities Motion at ¶ 20.) As the Debtors explained to the Court during the hearing on the Structured Securities Motion on August 9, 2011, it was the Debtors' practice prepetition to mark the Structured Securities to market values every day, and the Debtors believe that their prepetition general ledger reflects the fair market values of the Structured Securities as of the petition date. Transcript 8/9/11 at pp. 15-16. However, as the Debtors also advised the Court on August 9, 2011, there is judgment involved in the analysis. Transcript 8/9/11 at pp. 14-15. Reasonable people can disagree about the values. The calculation of allowed claim amounts under the Valuation Methodologies represents a compromise and settlement of the claims based on Structured Securities, (Structured Securities Motion at ¶ 20), which after extensive review and discussion with the Debtors and their professionals the Committee has concluded is reasonable. (Committee Statement at ¶ 9.)

11. The Disclosure Statement advises creditors that the Debtors have posted a spreadsheet on their website that contains their calculation of the maximum allowable claim amounts of each LBHI Structured Note, identified by CUSIP number, using the Valuation Methodologies. (Disclosure Statement at 44.)

5

12. 209 Senior Structured Notes, or 37% of the individual CUSIP numbers that make up the Senior Structured Notes, are characterized by the Debtors as FMV Notes (the "Senior FMV Notes"). The aggregate claim amount for the Senior Structured Notes generated by the Valuation Methodologies is $4,925,041,181 of which $1,174,946,511 are Senior FMV Notes. (Disclosure Statement, Exhibit 11-6).

The Structured Securities Order

13. On August 9, 2011, the Court entered an Order (the "Structured Securities Order") [docket no. 19120] granting the Debtors' Amended Motion Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Procedures for Determining the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc. (the "Structured Securities Motion") [docket no. 18127]. The Structured Securities Motion and the Structured Securities Order implement notice and objection procedures (the "Structured Securities Procedures") to determine the allowed amount of claims based on certain Structured Securities issued by various Lehman entities. (Structured Securities Motion at ¶ 14.)

14. The Structured Securities Procedures are designed primarily to address claims based on Structured Securities that do not have an indenture trustee. (Structured Securities Motion at ¶¶ 3, 11.) The WTC Global Proof of Claim is expressly excluded from the Structured Securities Procedures. The Structured Securities Motion provides that "LBHI intends to negotiate the allowed claim amount for claim number 10082 with Wilmington Trust Company and therefore claim 10082 is not subject to this Motion." (Structured Securities Motion at ¶ 15.)

6

# OBJECTION

## 1. The Information Regarding the Valuation Methodologies Provided in the Committee Statement Should be Included in the Disclosure Statement

15. The Disclosure Statement does not provide a basis on which creditors could conclude that the claim values derived by the Debtors using the Valuation Methodologies are reasonable. In contrast, the Committee Statement provides a publicly available independent assessment that the Valuation Methodologies are reasonable, and contains essential information that will assist the holders of Senior Structured Notes in evaluating the proposed treatment of their claims.

16. The Committee Statement explained that the Valuation Methodologies for the FMV Notes[3], which are based on the "LBHI's prepetition accounting methodology," reflect the values carried on LBHI's prepetition general ledger ("GL"). (Committee Statement at ¶ 2.) The Committee concluded that:

> Based on an extensive diligence process on a sampling of the Structured Securities conducted by FTI Consulting, Inc. ("FTI"), financial advisor to the Committee, the prepetition valuation methods used by LBHI appear to be generally consistent with comparable methods employed by broker-dealers for purposes of valuing securities on their financial statements at the time the GL values were determined. The Committee and its advisors recognize, however, that there are other reasonable methods to value these FMV Notes.

(Committee Statement at ¶ 2.)

17. The Committee further noted that "[t]he application of differing assumptions and models could lead to different values of the Structured Securities." (Committee

---

[3] Although the Committee Statement explicitly discusses only the Valuation Methodologies as applied to "the claims at issue in the [Structured Securities Motion]," (Committee Statement at ¶ 1.), the Committee's conclusions regarding the Valuation Methodologies are generally applicable to the Senior Structured Notes because the Valuation Methodologies apply to all Structured Securities, including the Senior Structured Notes.

7

Statement at ¶ 13.) The Committee Statement specifically identified variations in the treatment of hedging costs under different models as a factor that could lead to different values. (*Id.*)

18. The Committee concluded that valuation of the Structured Securities pursuant to the Valuation Methodologies "represents a reasonable settlement of claims based on Structured Securities to the extent such claims are contingent or unliquidated under section 502(c) of the United States Bankruptcy Code." (Committee Statement at ¶ 9.)

19. Finally, the Committee noted that it had identified certain manifest errors in connection with the valuation of Structured Securities, that the Debtors had agreed to correct such errors and that the Committee would work with the Debtors to identify and correct additional manifest errors. (Committee Statement at ¶ 15.)

20. The information contained in the Committee Statement about the Valuation Methodologies, including their reasonableness, is relevant to a Structured Security holder's evaluation of how the Plan will treat its claim, and should be included in the Disclosure Statement.

**2. The Disclosure Statement Should Explicitly State that the WTC Global Proof of Claim is not Subject to the Structured Securities Procedures.**

21. The Disclosure Statement includes a number of statements that imply that WTC Global Proof of Claim will be subject to the Structured Securities Procedures. For example, the Disclosure Statement describes the Structured Securities Motion as "seeking to establish procedures pursuant to which . . . the Debtors will provide individualized noticed to each holder of a claim based on a *Structured Security* that sets forth the Debtors' proposed allowed claim amount for such calculated in accordance with the Structured Securities Valuation Methodologies." (Disclosure Statement at 44.) (emphasis supplied) As defined in the Disclosure Statement, "Structured Securities" includes the Senior Structured Notes. (*Id.* at 43.)

22. To avoid confusion, and to reflect the Debtors' intentions as set forth in the Structured Securities Procedures, the Disclosure Statement should be revised to expressly state that the WTC Global Proof of Claim is not subject to such procedures.

23. A blackline of the relevant pages of the Disclosure Statement reflecting revisions that address the issues raised in this Objection is attached as Exhibit A.

24. Wilmington Trust reserves all rights regarding the WTC Global Proof of Claim, including all rights related to the proposed valuation of the Senior Structured Notes pursuant to the Valuation Methodologies.

## CONCLUSION

25. For the reasons set forth above, Wilmington Trust requests that the Court (i) require the Debtors to include the proposed language attached as Exhibit A, or similar appropriate language, in the Disclosure Statement, and (ii) grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 11, 2011

COVINGTON & BURLING LLP

By: /s/ Michael B. Hopkins
Michael B. Hopkins
Susan Power Johnston
Martin E. Beeler
Amanda Raboy

The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone No. (212) 841-1000
Facsimile No.  (212) 841-1010

Attorneys for Wilmington Trust Company,
as Indenture Trustee

9

**EXHIBIT A**

**(Blacklined Disclosure Statement Pages)**

08-13555-mg    Doc 19149    Filed 08/11/11    Entered 08/11/11 13:25:03    Main Document
Pg 10 of 15

**Proposed Changes to Section V.D. of Debtors' Disclosure Statement:**

### D. Valuation of Structured Securities Claims

Lehman issued a significant amount of securities to investors through LBHI and its Foreign Affiliates, including certain (i) structured notes issued by LBT ("LBT Issued Notes"), (ii) certificates and warrants issued by LBSN (the "LBSN Certificates and Warrants"), (iii) structured notes issued by LBHI (the "LBHI Structured Notes"), (iv) structured notes issued by Bankhaus (the "Bankhaus Structured Notes"), (v) structured securities issued by Lehman Brothers (Luxembourg) Equity Finance S.A. (the "LB Lux Structured Securities") and (vi) certificates issued by Lehman Brothers Finance S.A. (the "LB Finance Structured Securities", and collectively with the LBT Issued Notes, the LBSN Certificates and Warrants, the LBHI Structured Notes, the Bankhaus Structured Notes and the LB Lux Structured Securities, the "Structured Securities"). LBT, LBSN, Bankhaus, LBHI, LB Lux and Lehman Brothers Finance S.A. are collectively referred to herein as the "Structured Securities Issuers."

Many of these Structured Securities were issued as part of the European Medium Term Note Program. These Structured Securities predominately provide that the return at maturity and/or the payment of interest is derived from or linked to the performance of an underlying asset or groups of assets including global indices, single stocks, currencies, interest rates, and various credit derivative instruments and baskets thereof. In some instances principal and/or interest due under such Structured Securities may be partially or wholly "protected." The Structured Securities Issuers generally transferred the proceeds of such issuances to LBHI and have asserted a claim against LBHI for such amounts. A large number of holders of securities issued by Structured Securities Issuers filed claims against LBHI based on its purported guarantee of the Structured Securities (or based directly on the securities in the case of LBHI Structured Notes).

LBHI filed a Form 8-K (the "October 29th 8K") on October 29, 2010 which sets forth the methodology it intended to use for determining the allowed amount of Guarantee Claims filed against it as the alleged guarantor of the LBT Issued Notes. The methodologies were developed in consultation with the court-appointed administrators of LBT, various individuals and groups of creditors that hold claims against LBHI based on LBT Issued Notes, and the Creditors' Committee. The Debtors also posted to www.lehman-docket.com a list containing the proposed maximum valuation for each LBT Issued Note in accordance with such valuation methodologies and principles.

Based on input from holders of Structured Securities, administrators of the estates of the Structured Securities Issuers and the Creditors' Committee, LBHI modified the methodologies described in the October 29th 8K. The Structured Securities Valuation Methodologies represent a

negotiated resolution of the valuation methodologies initially proposed by the Debtors and the methodologies proposed by various creditors. Since many of the Structured Securities are similar in nature to the LBT Issued

Notes, LBHI will apply the valuation methodologies, as revised, to similar structured securities issued by LBSN, LBHI, Bankhaus, LBF and LB Lux. A description of the valuation methodologies for the Structured Notes is set forth on Exhibit 11 annexed hereto (the "<u>Structured Securities Valuation Methodologies</u>").[1] The Structured Securities Valuation Methodologies were utilized to calculate the maximum allowable claim amounts for each Structured Security. The maximum allowable claim amounts for the Structured Securities were posted on www.lehman-docket.com on January 25, 2011. The Debtors will re-publish the maximum allowable claim amounts for each Structured Security incorporating a modification to the Structured Securities Valuation Methodologies to convert amounts owed on account of Structured Securities denominated in foreign currencies to U.S. Dollars using the exchange rates in effect on September 15, 2008 and set forth on Exhibit 15 hereto.

**Because many of the Structured Securities do not have indenture trustees that are authorized to file global proofs of claim on behalf of a class of individual note holders, individual record and beneficial holders have filed Claims against the Debtors based on Structured Securities (the "Individual Holder Claims").** More than 21,000 Claims asserting claims of approximately $55 billion were filed against the Debtors based on Structured Securities. Due to the complexity and idiosyncratic nature of many of the Structured Securities, the filed **Individual Holder** Claims assert incorrect amounts. In order to efficiently administer and reconcile ~~these~~**the Individual Holder** Claims, **on June 29, 2011,** the Debtors ~~intend to file~~**filed** a motion (the "Structured Securities Procedures Motion") **[docket no. 18127]** with the Bankruptcy Court seeking to establish procedures for the determination of the allowed amount of the ~~claims~~**Individual Claims** for the purposes of voting and distributions under the Plan~~. The motion will seek to establish procedures pursuant to which~~ **(the "Structured Securities Procedures"). On August 9, 2011, the Bankruptcy Court granted the relief requested in the Structured Securities Procedures Motion. The Structured Securities Procedures provide**

---

[1] Nothing herein shall be construed to (i) characterize the Structured Securities as "securities contracts" or "swap agreements" under the Bankruptcy Code, (ii) modify or pertain to the terms of any over-the-counter derivatives or similar contract between LBHI or any of its Affiliates and any other person; or (iii) limit or otherwise modify the application of Section 562 of the Bankruptcy Code to such over-the-counter derivatives or similar contracts. The Structured Securities Methodology has been developed by LBHI solely for the purpose of determining the Allowed Claims based on valid and timely filed proofs of claim solely for the purposes of voting and Distributions under the Plan.

2

that (i) the Debtors will provide individualized notices to each holder of ~~claim~~an Individual Holder Claim based on a Structured Security that sets forth the Debtors' proposed allowed claim amount for such claim calculated in accordance with the Structured Securities Valuation Methodologies, (ii) claimants will have an opportunity to respond and dispute such proposed amount and (iii) disputes regarding such claim amounts, that are not otherwise settled, may utilize the court-approved alternative dispute resolution procedures.  The global proof of claim (claim number 10082) filed by Wilmington Trust Company as indenture trustee on behalf of the holders of securities issued by LBHI under the Indenture dated September 1, 1987, including the holders of certain LBHI Structured Notes (the "Senior Note Claim"), is expressly excluded from the Structured Securities Procedures.  The Debtors intend to negotiate the allowed claim amount of the Senior Note Claim with Wilmington Trust Company.

On August 6, 2011, in response to the Structured Securities Procedures Motion, the Creditors' Committee filed a statement regarding the Structured Securities Valuation Methodologies (the "Committee Statement").  The Committee Statement explains that the Valuation Methodologies for Structured Securities that are characterized by the Debtors as FMV Notes are based on LBHI's prepetition accounting methodology and reflect the values carried on LBHI's prepetition general ledger ("GL"). (Committee Statement, ¶ 2.) The Creditors' Committee concluded that:

> Based on an extensive diligence process on a sampling of the Structured Securities conducted by FTI Consulting, Inc. ("FTI"), financial advisor to the Committee, the prepetition valuation methods used by LBHI appear to be generally consistent with comparable methods employed by broker-dealers for purposes of valuing securities on their financial statements at the time the GL values were determined.  The Committee and its advisors recognize, however, that there are other reasonable methods to value these FMV Notes. (Committee Statement, ¶ 2.)

The Creditors' Committee further noted that "[t]he application of differing assumptions and models could lead to different values of the Structured Securities." (Committee Statement, ¶ 13.)  The Committee Statement specifically identifies variations in the treatment of hedging costs under different models as a factor that could lead to different values.  (*Id*.)

The Creditors' Committee concluded that valuation of the Structured Securities pursuant to the Valuation Methodologies "represents a reasonable settlement of claims based on Structured Securities to the extent such claims are contingent or unliquidated under section 502(c) of the United States Bankruptcy Code." (Committee Statement, ¶ 9.)

3

**Finally, the Creditors' Committee noted that it had identified certain manifest errors in connection with the valuation of Structured Securities, that the Debtors had agreed to correct such errors and that the Committee would work with the Debtors to identify and correct additional manifest errors. (Committee Statement, ¶ 15.)**

The Debtors estimate that the Structured Securities Claims will be Allowed in the aggregate amount of $37 billion. This amount is subject to revision as the Debtors obtain additional information regarding the valuation of certain of the Structured Securities.

Document comparison by Workshare Professional on Thursday, August 11, 2011 12:36:38 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://CBNY/NY/720695/1 |
| Description | #720695v1<NY> - Objection Exhibit |
| Document 2 ID | interwovenSite://CBNY/NY/720695/3 |
| Description | #720695v3<NY> - Objection Exhibit |
| Rendering set | C&B |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 16 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 21 |