UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                       :

In re                                 :

LEHMAN BROTHERS HOLDINGS,  :
  INC., et al.,                    :

                     Debtors.    :

------------------------------------------------------x

Hearing Date and Time:
August 30, 2011, at 10:00 a.m.

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

## OBJECTION OF THE UNITED STATES TRUSTEE TO AMENDED MOTION (I) FOR APPROVAL OF THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN

TO:    THE HONORABLE JAMES M. PECK,
       UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through her counsel, hereby submits this objection (the "Objection") to the amended motion (the "Amended Motion") of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors"), pursuant to Sections 105, 502, 1125, 1126 and 1128 of title 11, United States Code (the "Bankruptcy Code"), for approval of the disclosure statement (the "Disclosure Statement") that describes the Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors dated June 30, 2011 (the "Plan").[1]  (ECF Dkt. Nos. 18124, 18125 and 18126).  In support hereof, the United States Trustee respectfully states:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Disclosure Statement and Plan.

# I.  INTRODUCTION

The United States Trustee objects to the Amended Motion because the Disclosure

Statement does not provide adequate information concerning the Plan to creditors whose

votes will be solicited, as required by Section 1125 of the Bankruptcy Code.  The United

States Trustee has identified 23 informational deficiencies where adequate information is

not contained in the Disclosure Statement, including:

- ° the lack of adequate information in the Plan Overview concerning the contemplated liquidation, the extent thereof, and the time permitted for the liquidation to occur under the Plan;

- ° the lack of adequate information concerning the Debtors' future plans for LAMCO and its employees;

- ° the lack of adequate information concerning the Debtors' current financial condition, including current balance sheets;

- ° the lack of adequate information concerning the formation of, and justification for, the Plan Trust for LBHI's assets;

- ° the lack of adequate information concerning the justification for the proposed retention by Equity Holders of their Equity Interests when General Unsecured Creditors are not being paid in full under the Plan;

- ° the lack of adequate information concerning the justification for the plan adjustments and the automatic reallocations of distributions, among others, from senior creditors to junior creditors;

- ° the lack of adequate information concerning the Fee Committee and the contemplated role of the Fee Committee post-confirmation;

- ° the lack of adequate information concerning the professional fees that the Debtors have incurred to date and the amount of professional fees anticipated through the Effective Date;

- ° the lack of adequate information concerning the justification for payment by the Debtors of fees incurred by professionals (including lawyers) engaged by the indenture trustees and individual members of the Creditors' Committee;

    °    the lack of adequate information concerning the risks to creditors if the Debtors' dispute with the SIPA Trustee concerning the PIK Note or the IP PIK Note is not resolved favorably to the Debtors;

    °    the lack of adequate information concerning the differences between the Plan, the Ad Hoc Group Plan and the Non-Consolidation Plan, and the pros and cons of each;

    °    the lack of adequate information concerning the Guarantee Claims and the impact that the "likely litigation" will have upon the Debtors' creditors;

    °    the lack of adequate information concerning transactions/relationships with LBIE and the impact the resolution of these proceedings will have upon the Debtors' creditors;

    °    the lack of adequate information concerning the amount of Administrative Expense Claims that will be paid on the Effective Date;

    °    the lack of adequate information concerning the Plan Administrator, including the justification for appointing LBHI, a holding company and a Debtor, as Plan Administrator;

    °    the lack of adequate information concerning the justification for imposing an additional requirement solely upon creditors holding Allowed Claims in amounts less than $500.00 in order to receive their distributions under the Plan;

    °    the lack of adequate information concerning, and justification for, the proposed non-debtor third-party releases, exculpation provisions, limitations of liability and injunction;

    °    the lack of adequate information concerning the legal justification for the proposed discharge of the Debtors;

    °    the lack of adequate information concerning the justification for the proposed limitation of liability of the Plan Administrator;

    °    the lack of adequate information concerning the Debtors' proposed exemption from transfer taxes;

    °      the lack of adequate information concerning (i) the justification for including UST Fees together with Administrative Expense Claims, and (ii) the Debtors' obligation to pay UST Fees through entry of a final decree, dismissal or conversion of each Debtor's Chapter 11 case;

    °      the lack of adequate information concerning the justification for the Debtors' Proposed Exemption/Modification Of The Post-Confirmation Reporting Required By Section 1106(7) of the Bankruptcy Code, Local Bankruptcy Rule 3021-1 and the UST Chapter 11 Operating Guidelines; and

    °      the lack of adequate information concerning the justification for the Debtors' proposed modifications of Section 1129 of the Bankruptcy Code to provide that payments required to be made "on the Effective Date" may be made "as soon thereafter as is practicable."

In addition, the United States Trustee objects to the Amended Motion because the Debtors seek, without proper court authorization and disclosure, to retain Epiq Bankruptcy Solutions, LLC ("Epiq") as their solicitation and voting agent. If the Debtors wish to retain Epiq to provide these services, they must apply to the Court for this authorization by separate application under the applicable sections of the Bankruptcy Code and provide the required disclosures.

Absent amendment of the Disclosure Statement and the Plan as set forth herein, the Disclosure Statement fails to meet the requirements of Sections 1125 of the Bankruptcy Code and the Amended Motion should be denied.

## II.  FACTS

**A.**    **The Chapter 11 Cases**

*Background*

1.      On September 15, 2008, and periodically thereafter (collectively, the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      Prior to the Petition Date, Lehman Brothers, Inc. ("LBI"), was the fourth largest investment bank in the United States, and, for more than 150 years, had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Affidavit of Ian T. Lowitt, Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on September 14, 2008, at ¶ 5.  (ECF Dkt. No. 2).

3.      By Order dated September 17, 2008, the Debtors' cases are being administered jointly.  (ECF Dkt. No. 86).

4.      On September 17, 2008, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").  (ECF Dkt. No. 62). The constitution of the Creditors' Committee has been amended subsequently from time to time.  See ECF Dkt. Nos. 592, 6217, 7034.

5.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI.  A trustee (the "SIPA Trustee"), appointed under SIPA, is administering LBI's estate.

6.      No trustee has been appointed in these cases.

*Claims and Noticing Agent*

7.      On September 16, 2008, the Debtors filed an application (the "Claims

Agent Application"), pursuant to Section 156(c) of title 28, United States Code ("Title

28") and Local Bankruptcy Rule 5075-1 of the Southern District of New York (the

"Local Bankruptcy Rules"), seeking an order (the "Claims Agent Order") authorizing

them to retain Epiq as their claims and noticing agent.  (ECF Dkt. No. 40).

8.      On the same date, the Court signed the Claims Agent Order, which

authorized the Debtors to retain Epiq to provide the following services:

(a)     notifying all potential creditors of the filing of the chapter 11
        petitions and of the setting of the first meetings of creditors
        pursuant to section 341(a) of the Bankruptcy Code;

(b)     assisting with and maintaining an official copy of the Debtor's
        schedule of assets and liabilities and statement of financial affairs
        (collectively, the "Schedules"), listing the Debtor's known
        creditors and the amounts owed thereto;

(c)     designing, maintaining, and operating in conjunction with the
        Debtor a website, as a centralized location, where the Debtor will
        provide information about the Debtor's case, including, at the
        Debtor's discretion, certain orders, decisions, claims, or other
        documents filed in this chapter 11 case;

(d)     maintaining a copy service from which parties may obtain copies
        of relevant documents in this chapter 11 case;

(e)     notifying all potential creditors of the existence and amount of
        their respective claims as set forth in the Schedules;

(f)     furnishing a form for the filing of proofs of claim, after approval of
        such notice and form by this Court;

(g)     filing with the Clerk, within ten (10) days of service, a copy of the
        proof of claim notice, a list of persons to whom it was mailed (in
        alphabetical order), and the date the notice was mailed;

(h)     docketing all claims received, maintaining the official claims register (the "Claims Register") for the Debtor on behalf of the Clerk, and providing the Clerk with immediate web access to the Claims Register upon request;

(i)     specifying in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification of the claim (e.g., secured, unsecured, priority, etc.);

(j)     relocating, by messenger, all of the actual proofs of claim filed with the Court, if necessary to Epiq, not less than weekly;

(k)     recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(l)     making changes in the Claims Register pursuant to Court Order;

(m)     upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Register for the Clerk's review;

(n)     maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk;

(o)     thirty (30) days prior to the close of this case, submitting an Order dismissing the Agent and terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of this case; and

(p)    at the conclusion of this chapter 11 case, boxing and transporting all original documents in proper format, as specified by the Clerk's Office, to the Federal Records. [2]

(ECF Dkt. No. 50).

*Barclays Sale*

9.    Shortly following the Petition Date, the Debtors filed a motion to sell (the "Barclays Sale") substantially all of their assets to Barclays Capital Inc.  (ECF Dkt. No. 60).  By Order (the "Barclays Sale Order") dated September 20, 2008, the Court approved the Barclays Sale.[3]  (ECF Dkt. No. 258).

*Examiner*

10.    On January 16, 2009, the Court directed the appointment of an examiner (the "Examiner") to, among other things, investigate (i) the causes for the Debtors' business failure (ii) possible causes of action arising from the Debtors' financial condition and business failure, (iii) whether there are any administrative or other avoidable transfers and (iv) whether there are any claims arising from the sale to Barclays.  (ECF Dkt. No. 2569).

---

[2] As discussed below at ¶¶ 87-90, annexed to the Claims Agent Application as Exhibit A is a copy of Epiq's engagement letter with the Debtors.  See ECF Dkt. No. 40, Ex. A. Attached to the engagement letter is a "Pricing Schedule" that lists "Voting Tabulation and Reports."  Id.  The Pricing Schedule, however, does not set forth any prices for voting tabulation and reports.  Id.  In addition, neither the Claims Agent Application nor the Claims Agent Order expressly states that the Debtors were seeking to, or were authorized to, retain Epiq to provide solicitation and balloting services under the Claims Agent Order.  See ECF Dkt. Nos. 40, Ex. A, and 50.

[3] On February 22, 2011, the Court issued an Opinion denying a motion (the "Rule 60(b) Motion"), pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, that LBHI, the Creditors' Committee and the SIPA Trustee had filed requesting that the Court modify the Barclays Sale Order.  (ECF Dkt. No. 14612).  On July 15, 2011, the Court entered an Order (the "60(b) Order") consistent with its Opinion.  (ECF Dkt. No. 18541).  On July 28, 2011, the Creditors' Committee appealed from the 60(b) Order to the District Court. (ECF Dkt. No. 18849).  As of the date hereof, the appeal remains pending.

11.     By Order dated January 20, 2009, the Court approved the United States Trustee's appointment of Anton R. Valukas as the Examiner.  (ECF Dkt. No. 2583).

12.     On February 8, 2010, the Examiner filed under seal a report of his investigation, which later was unsealed by Order of the Court dated March 11, 2010. (ECF Dkt. No. 7531).

*Fee Committee*

13.     On May 26, 2009, the Court entered an Order (i) appointing a committee (the "Fee Committee"), among other things, to review the fees incurred by professionals retained by the Estates in these cases, and (ii) approving a fee protocol by which the Fee Committee would operate.  (ECF Dkt. No. 3651).  The Fee Committee consisted of four members, including: (i) a representative of the Debtors, (ii) a representative appointed by the Creditors' Committee, (iii) the United States Trustee and (iv) an independent member.

14.     On January 24, 2011, following the resignation of the independent member, the Fee Committee recommended Richard Gitlin to serve as the successor independent member.  (ECF Dkt. No. 14112).  By Order of the same date, the Court approved the appointment of Mr. Gitlin to the Fee Committee.  (ECF Dkt. No. 14117).

15.     By Order dated April 6, 2011, the Court authorized the Fee Committee to retain Godfrey & Kahn, S.C. as its counsel.  (ECF Dkt. No. 15663).

16.     By Order dated April 14, 2011, the Court approved the implementation of an amended fee protocol (the "Amended Fee Protocol"), under which the composition of the Fee Committee remained the same.  (ECF Dkt. No. 15998).  Pursuant to the Amended Fee Protocol, the Fee Committee is charged with: "[m]onitoring, reviewing and, where

appropriate, objecting to applications for fees and expenses filed by [retained

professionals] … and to "[e]stablish measures to help the Court ensure that compensation

and expenses paid by the Estate are reasonable, actual and necessary under the

Bankruptcy Code."  Amended Fee Protocol at B and C.

17.    Upon information and belief, the fees incurred by professionals retained in

these cases to date exceeds $1 billion.

*LAMCO*

18.    On March 15, 2010, the Debtors filed a motion (the "LAMCO Motion")

seeking authorization to enter into certain asset and management related agreements that

would enable the Debtors to organize new non-debtor entities (collectively, "LAMCO")

to provide asset management services to the Debtors and potentially to third parties.

LAMCO Motion at ¶ 3.  (ECF Dkt. No. 7579).  By Order dated April 15, 2010, the Court

approved the LAMCO Motion.  (ECF Dkt. No. 8372).

*Chapter 11 Plans*

19.    On March 15, 2010, the Debtors filed the proposed Joint Chapter 11 Plan

of Lehman Brothers Holdings Inc. and Its Affiliated Debtors.  (ECF Dkt. No. 7572).

Thereafter, the Debtors filed amended or revised proposed plans.  See ECF Dkt. Nos.

8330, 8332, 14150 and 14151.

20.    On December 15, 2010, and April 25, 2011, two groups of creditors,

hereinafter referred to as the "Ad Hoc Group" and the "Non-Consolidation Group,"

respectively, filed proposed alternative plans and disclosure statements.  See ECF Dkt.

Nos. 13504, 13505, 16315, 16316, 16229 and 16230.  A central difference among the

three plans concerns whether the Debtors' estates could or should be substantively

10

consolidated.  Id.  Each disclosure statement filed by the parties was accompanied by a motion (collectively, the "Disclosure Statement Motions") seeking approval thereof.

21.    Although a hearing for the Court to consider the Disclosure Statement Motions initially was scheduled to be held on June 28, 2011, see ECF Dkt. Nos. 15078, 16317 and 16435, the parties subsequently adjourned that hearing, as well as the deadlines to object thereto sine die.  See ECF Dkt. Nos. 17009, 17112 and 17123.

22.    On June 29, 2011, the Debtors filed the Disclosure Statement and Plan. (ECF Dkt. Nos. 18124 and 18125).

23.    On July 1, 2011, the Debtors filed another version of the Disclosure Statement and Plan, together with a motion (the "Disclosure Statement Motion") seeking (i) approval of the Disclosure Statement and the form and manner of notice of the hearing (the "Disclosure Statement Hearing") to consider the Disclosure Statement Motion, (ii) establishing solicitation and voting procedures (the "Solicitation Procedures"), (iii) scheduling a confirmation hearing and (iv) establishing notice and objection procedures for confirmation of the Plan.[4]  (ECF Dkt. Nos. 18204, 18205, 18126 and 18497).

24.    By Order to Show Cause dated July 6, 2011, the Court ordered that the Disclosure Statement Hearing be held on August 30, 2011, at 10:00 a.m., and fixed August 11, 2011, at 4:00 p.m. as the deadline for filing objections thereto.  (ECF Dkt. No. 18292).

---

[4] It is noted that the ballots and various forms that the Debtors seek approval of in connection with the Amended Motion each state that the Debtors filed the Plan on June 29, 2011.  In light of the fact that the Debtors filed another version of the Disclosure Statement and Plan on July 1, 2011, each dated June 30, 2011, see ECF Dkt Nos. 18204 and 18205, notices relating to the Disclosure Statement and Plan, as well as all ballots issued in connection with solicitation should be amended to reflect the appropriate date.

*Discovery*

25.     On March 11, 2011, the Debtors filed a motion (the "Discovery Procedures Motion") for an Order establishing and implementing procedures governing plan-related discovery.  (ECF Dkt. No. 14867).

26.     On March 31, 2011, and April 6, 2011, the Debtors filed amended Orders setting forth amended discovery procedures (the "Discovery Procedures").  (ECF Dkt. Nos. 15539 and 15682).

27.     On April 6, 2011, the United States Trustee filed a response (the "UST Response") requesting that the Discovery Procedures be amended (i) to provide for the full participation of the United States Trustee, (ii) to include various Freedom of Information Act and Privacy Act provisions and (iii) to delete a provision that permitted the "automatic sealing" of documents sought to be filed with the Court if the documents were designated during discovery as "confidential" or "attorneys' eyes only."  (ECF Dkt. No. 15680).

28.     The Debtors thereafter made revisions to the Discovery Procedures and addressed all of the issues that the United States Trustee had raised, with the exception of the "automatic sealing" provision.

29.     On April 14, 2011, following lengthy oral argument, the Court entered the Discovery Procedures Order, which included the "automatic sealing" provision.  (ECF Dkt. No. 16003).

30.     On July 6, 2011, the Debtors filed a motion, with the consent of the Ad Hoc Group and the Non-Consolidation Group, seeking an Order (the "Discovery Stay Order") staying discovery while the Debtors prosecute the Plan.  (ECF Dkt. No. 18306).

31.     On July 21, 2011, the Court entered the Discovery Stay Order.  (ECF Dkt.

No. 18686).  Upon information and belief, as of the date hereof, plan-related discovery

remains stayed.

*Structured Securities Motion*

32.     On April 27, 2011, the Debtors filed a motion seeking entry of an order

approving procedures for determining the allowed amount of claims based upon various

structured securities issued or guaranteed by LBHI for the purposes of voting and

distributions under the Plan.  (ECF Dkt. No. 16294).

33.     Thereafter, several objections were filed and, on June 29, 2011, the

Debtors filed an amended motion (the "Amended Structured Securities Motion").[5]  (ECF

Dkt. No. 18127).

34.     By Order dated August 10, 2011, the Court granted the Amended

Structured Securities Motion.  (ECF Dkt. No. 19120).

### III.  OBJECTION

**A.      The Governing Law.**

35.     Section 1125 of the Bankruptcy Code provides that a disclosure statement

must contain "adequate information" describing a confirmable plan.  11 U.S.C. § 1125;

see also, In re Quigley Co., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).  If the plan is

patently unconfirmable on its face, the application to approve the disclosure statement

must be denied.  Id.  (citing In re Beyond.com Corp., 289 B.R. 138, 140 (Bankr. N.D.

Cal. 2003) (collecting cases); In re 266 Washington Assocs., 141 B.R. 275, 288 (Bankr.

---

[5] Approval of the Amended Structured Securities Motion is a condition precedent to
confirmation of the Plan.  Plan at Art. § 12.1.

E.D.N.Y.) aff'd, 147 B.R. 827 (E.D.N.Y. 1992); In re Filex, 116 B.R. 37, 41 (Bankr.

S.D.N.Y. 1990)).

36.     The Bankruptcy Code defines adequate information" as:

Information of a kind, and in sufficient detail, as far as is reasonably
practicable in light of the nature and history of the debtor and the
condition of the debtor's books and records, including a discussion of the
potential material Federal tax consequences of the plan to the debtor, any
successor to the debtor, and a hypothetical investor typical of the holders
of claims or interests in the case, that would enable such a hypothetical
reasonable investor of the relevant class to make an informed judgment
about the plan . . . .

11 U.S.C. § 1125(a)(1); see also, Momentum Mfg. Corp. v. Employee Creditors Comm.

(In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994); Kunica v. St. Jean

Fin., Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999).

37.     To be approved, a disclosure statement must include sufficient information

to apprise creditors of the risks and financial consequences of the proposed plan.  See In

re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial

information with respect to the ramifications of any proposed plan will have to be

provided to, and digested by, the creditors and other parties in interest in order to arrive at

an informed decision concerning the acceptance or rejection of a proposed plan").

Although the adequacy of the disclosure is determined on a case-by-case basis, the

disclosure must "contain simple and clear language delineating the consequences of the

proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives ...."

In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

38.     Section 1125 of the Bankruptcy Code is biased towards more disclosure

rather than less.  See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr.

S.D.N.Y. 1990).  The "adequate information" requirement merely establishes a floor, and

not a ceiling for disclosure to voting creditors.  In re Adelphia Commc'ns Corp., 352 B.R.

592, 596 (Bankr. S.D.N.Y. 2006) (citing Century Glove, Inc. v. First American Bank of

New York, 860 F.2d 94, 100 (3d Cir. 1988)).  Once the "adequate disclosure" floor is

satisfied, additional information can go into a disclosure statement too, at least so long as

the additional information is accurate and its inclusion is not misleading.  Adelphia, 352

B.R. at 596.  The purpose of the disclosure statement is to give creditors enough

information so that they can make an informed choice of whether to approve or reject the

debtor's plan.  In re Duratech Indus., 241 B.R. 291, 298 (Bankr. E.D.N.Y.), aff'd, 241

B.R. 283 (E.D.N.Y. 1999).  The disclosure statement must inform the average creditor

what it is going to get and when, and what contingencies there are that might intervene.

In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).  For the reasons set forth below, the

Disclosure Statement does not provide sufficient disclosures appropriate to the

circumstances of these cases.

**B.      The Disclosure Statement Should Be Amended to Provide Adequate
Information As Required By Section 1125 of the Bankruptcy Code.**

39.      The Lehman bankruptcy cases represent the largest and most complex

bankruptcy filings that ever have occurred in the history of the United States bankruptcy

system.  It is, therefore, not surprising that the proposed Plan contains a myriad of

complex and intricate provisions that will govern the distributions to the Debtors' many

creditors.

40.      "The circumstances of these proceedings may be exceptional, but the core

legal principles are familiar ones that are generally applicable in other chapter 11 cases."

In re Lehman Bros., Inc., 445 B.R. 143, 149 (Bankr. S.D.N.Y. 2011).  It may be

anticipated that many of the interested parties in these cases already have, or will seek

legal, financial or other professional advice to assist them in considering whether to vote to accept or reject the Plan.  The Bankruptcy Code requires that the Debtors' Disclosure Statement provide adequate information to inform the average creditor what it is going to get and when, and what contingencies may arise.  Ferretti, 128 B.R. at 19.

41.     A review of the Disclosure Statement reveals that the Disclosure Statement should be amended to provide additional information so that it includes "adequate information" of a nature sufficient to meet the requirements of Section 1125 of the Bankruptcy Code.

a.     *The Disclosure Statement Should Be Amended Because The "Plan Overview" Does Not Contain Adequate Information Concerning The Contemplated Liquidation, The Extent Thereof Or The Time Permitted For Liquidation Under The Plan.*

42.     The Disclosure Statement begins with a section titled, "Overview of the Plan."  Disclosure Statement at II.  Although this section purports to set forth a "snapshot" view of the Plan, it contains no mention that the Plan calls for a liquidation of the Debtors' assets or the extent of the liquidation.  In addition, neither the title of the Disclosure Statement nor the title of the Plan include the word "liquidating" or "liquidation."  See ECF Dkt. Nos. 18204 and 18205.  In fact, the Debtors do not state that the Plan "contemplates a liquidation" until page 115 of the 144-page Disclosure Statement.  See Disclosure Statement at 115.

43.     The "Overview" section of the Disclosure Statement also does not disclose the period of time permitted for the liquidation under the Plan.  A review of the Plan reveals that the Plan Administrator must "wind-down, sell and otherwise liquidate the assets of the Debtors and or Debtor-Controlled Entities" within three years after the Effective Date, and can even extend longer under certain circumstances.  Plan at Art. §

7.6.  The liquidation of the Debtors' assets presumably will affect, at a minimum, the timing of, and perhaps the amount of, certain distributions to creditors.  Thus, the fact that the Plan is a liquidating plan and that it contemplates a three-year liquidation period is the type of "simple and clear language" that is embodied in the concept of "adequate information" under Section 1125 of the Bankruptcy Code.  There can be no doubt that the ultimate objective of the Plan here, i.e., liquidation, is a central plan component warranting that information concerning it should be included at the beginning of the Disclosure Statement.  Accordingly, the Disclosure Statement should be amended to include information in the "Overview" section concerning the Debtors' contemplated liquidation, the extent thereof and the time permitted for liquidation under the Plan.

> b.  *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Debtors' Plans For LAMCO And Its Employees.*

44.  The Disclosure Statement provides that, "[a]lthough LBHI is not currently pursuing a strategic relationship with a third party with respect to LAMCO, including the possibility of selling an equity stake in LAMCO to a potential partner, or otherwise entering into mutually beneficial ventures and arrangements with third parties, it has reserved the option to be able to do so in the future."  Disclosure Statement at IX.  The Disclosure Statement further provides that, "[a]t the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan."  Id.  The Disclosure Statement does not, however, disclose the Debtors' future plans for LAMCO and does not contain information concerning how the liquidation, contemplated to span a

three-year period, will affect the existence of LAMCO and the Debtors' (and their

creditors') various interests in LAMCO and the assets it manages.

45.     In addition, the majority of the Debtors' pre-petition employees that have

remained with the Debtors are now employed by LAMCO.  The Disclosure Statement

does not provide any information concerning the Debtors' plans with respect to these

employees.  Accordingly, the Disclosure Statement should be amended to provide this

information.

> c.     *The Disclosure Statement Should Be Amended To Provide*
> *Adequate Information Concerning The Debtors' Current Financial*
> *Condition And Current Balance Sheets.*

46.     The Disclosure Statement and the Plan that it describes provide many

variables relating to the liquidation and distributions to creditors.  A review of the

Disclosure Statement reveals that some of the financial information upon which various

assumptions and calculations concerning distributions are based does not appear to be

current.  For example, in the section titled, "Administration of the Debtors' Assets During

the Chapter 11 Plan," the Debtors state that information about the Debtors' assets can be

found on their balance sheets, annexed to the Disclosure Statement at Exhibit 2B, dated

as of December 31, 2010.  Disclosure Statement at IV.G.  The Debtors do not disclose the

reason why they have not annexed more current balance sheets or whether they intend to

supplement the Disclosure Statement with current financial information before they

solicit votes for the Plan.

47.     There is also no information in the Disclosure Statement about how more

current information may impact the anticipated distributions to creditors.  Similarly, the

Disclosure Statement provides that the Debtors and the Debtor-Controlled Entities have

collected in excess of $3.0 billion from the Real Estate Assets through March 31, 2010.

Disclosure Statement at IV.G.2.  No explanation is provided regarding why more current

information is not disclosed in the Disclosure Statement.  Compare Disclosure Statement

at IV.H.a. (principal amount of the notes issued by Securitization Issuer and the Debtors'

interests in each of the Securitization Issuers as of May 31, 2011).

48.     In light of the number of sophisticated financial professionals that have

been engaged by the Debtors, the Creditors' Committee and other parties in interest in

these cases, it is fundamental that the assumptions and projections regarding distributions

to creditors that are communicated as part of the solicitation process be based upon the

most current financial information.  Accordingly, the Debtors should amend the

Disclosure Statement either (i) to provide information based upon the most current

financial information possible or (ii) to provide an explanation as to why more current

financial information has not been utilized, and (iii) to provide the likely consequences

that differences in the Debtors' use of more current information may have upon the

projected distributions disclosed in the Disclosure Statement.

*d.     The Disclosure Statement Should Be Amended To Provide
       Adequate Information Concerning The Formation Of The Plan
       Trust And A Justification For The Plan Provisions That Permit
       Equity Holders To Retain Their Interests In The Debtors When
       General Unsecured Creditors Are Not Being Paid In Full Under
       The Plan.*

49.     The Plan provides that the "Plan Trust" will be established on the

Effective Date and shall continue in existence until the Closing Date.  Plan at Art. § 7.4;

Disclosure Statement at X.11.A.3.  The sole purpose of the Plan Trust is to hold the Plan

Trust Stock, defined as "one new share of LBHI common stock to be issued to the Plan

Trust upon cancellation of the LBHI Stock in accordance with Section 4.17(b) of the

Plan." Plan at Art. § 1.117; Disclosure Statement at X.11.A.3  The Disclosure Statement

should provide information concerning (i) the reasons for the establishment of the Plan

Trust, (ii) the rationale underlying the structure contemplated thereby where LBHI

cancels its existing stock on the Effective Date and issues one new share of common

stock to the Plan Trust and (iii) the impact that this structure has upon the Debtors'

creditors.

50.     In addition, the Disclosure Statement should be amended to provide

adequate information concerning the reason why the securities of each Debtor are not

being canceled on the Effective Date and the justification for the Plan provisions that

permit Equity Holders to retain their interests in the Debtors irrespective of the fact that

General Unsecured Creditors are not being paid in full under the Plan.[6]  11 U.S.C. §

1129(b)(2)(B); see also, DBSD Network Corp. v. DBSD North America (In re DBSD

North America), 634 F.3d 79 (2d Cir. 2011); Coltex Loop Cent. Partners, L.P. v. BT/SAP

Pool C. Assocs., L.P. (In re Coltex Loop Cent. Partners, L.P.), 138 F.3d 39, 42 (2d Cir.

1998) (a plan that provides that former equity holders, who are junior to unsecured

creditors, will receive property or retain their former interest is not fair and equitable

under the Code).

51.     Based upon the Disclosure Statement, the Debtors do not plan to make any

distributions to Equity Holders and, as a consequence, they are not being solicited and are

---

[6] It is recognized that the Disclosure Statement provides that the existing stock and other
equity interests in one Debtor, namely LBHI, will be canceled on the Effective Date.
Disclosure Statement at X.C.2.a.  The Disclosure Statement, however, also provides that
the holders of the "old equity" in LBHI will hold the same interests in the new Plan Trust
Stock in LBHI consistent with their former relative priority and economic entitlements.
Id.  Thus, the former equity holders of LBHI will still hold equity in the new stock of
LBHI.

deemed to reject the Plan.  See Disclosure Statement at II.B.  The Disclosure Statement

provides that all of the Equity Holders are retaining their Equity Interests (and former

equity holders of LBHI are receiving "new equity" interests in the Plan Trust Stock of

LBHI as described above) and, in the event that all of the creditors ahead of the Equity

Holders for a particular Debtor are paid in full, the Equity Holders will share in any

residual assets.  The Disclosure Statement should be amended to provide a justification

for these Plan provisions.

52.      In addition, the Disclosure Statement should be amended to provide

information concerning whether the Equity Holders of Debtors other than LBHI are being

treated the same as Equity Holders of LBHI, particularly in view of the establishment of

the Plan Trust.

> e.      *The Disclosure Statement Should Be Amended To Provide*
> *Adequate Information Concerning The Justification For The Plan*
> *Adjustments And The Automatic Reallocations Of Distributions*
> *From Senior Creditors to Junior Creditors.*

53.      The Disclosure Statement sets forth a description of the complex

distribution scheme that is contemplated by the Plan.  This Disclosure Statement,

however, does not provide voting creditors with a clear and concise explanation of the

distribution scheme.  In addition, the Disclosure Statement contains no information

concerning the legal justification for reallocating to a junior class of creditors, a portion

of the distributions due to holders of a senior class and skipping over intermediate classes

that are not being paid in full under the Plan.  See DBSD, 634 F.3d at 79.  Accordingly,

the Disclosure Statement should be amended to provide this information.

f.      *The Disclosure Statement Should Be Amended To Provide
Adequate Information Concerning The Fee Committee And The
Amount of Professional Fees Incurred To Date And Anticipated
Through The Effective Date.*

54.     The Disclosure Statement contains a lengthy narrative summary of the events that have taken place during the nearly three years that the Debtors have been under Chapter 11 protection.  Disclosure Statement at IV.  The narrative does not, however, contain any information concerning the Court's formation of the Fee Committee or its role in these cases.

55.     In addition, the Disclosure Statement provides little to no information concerning the role that the Debtors contemplate for the Fee Committee post-confirmation, noting only that "[a]ll applications for compensation for services rendered and reimbursement of expenses are subject to approval of the Bankruptcy Court after review by the Fee Committee appointed in the Chapter 11 Cases."  Disclosure Statement at X.C.1.b.

56.     Further, the Disclosure Statement should be amended to provide current information concerning the amount of professional fees that the Estates have incurred to date as well as the amount of professional fees that the Estates anticipate will be incurred by the estates through the Effective Date to voting creditors.  See 11 U.S.C. § 1129(a)(11) (requiring that confirmation of a plan is not likely to be followed by the need for further financial reorganization of the debtor); see also, McLean, 87 B.R. at 834 (voting creditors should be provided with sufficient information to apprise them of the risks and financial consequences of the proposed plan).

g.      *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Proposed Payment By The Debtors For Professional Fees (Including Lawyers' Fees) Incurred By The Indenture Trustees and Individual Creditors' Committee Members.*

57.      The Disclosure Statement provides that under the Plan, the Debtors intend to pay the "reasonable fees and expenses (including attorneys fees)" of (i) the indenture trustees for the Senior Notes and the Subordinated Notes, and (ii) the individual members of the Creditors' Committee, in each case incurred in their capacities as indenture trustee or members of the Creditors' Committee, and without any review by the Bankruptcy Court.  Disclosure Statement at X.D.1.c; Plan at Art. § 6.7.  The Debtors propose to pay these fees as Administrative Expense Claims, which means that for the Plan to be confirmed, they must be paid in cash, in full on the Effective Date.  11 U.S.C. § 1129(a)(9)(A).  For the reasons set forth in the following paragraphs, the Disclosure Statement should be amended to provide adequate information concerning the amount of these anticipated fees and the legal justification upon which the Debtors base their ability to make these payments.

58.      Section 503(b)(3) of the Bankruptcy Code authorizes the Court to allow, as an administrative expense, "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4)" incurred by (i) an indenture trustee in making a substantial contribution in a Chapter 11 case, see 11 U.S.C. § 503(b)(3)(D), and (ii) a member of a creditors' committee, if such expenses are incurred in the performance of the duties of such committee.  11 U.S.C. § 503(b)(F); see also, In re Summit Metals, Inc., 379 B.R. 40, 68 (Bankr. D. Del. 2007) (expenses that individual committee members may be allowed include expenses for travel, lodging and meals while attending

committee meetings or court hearings).  The Bankruptcy Code, however, expressly

excludes professional fees, such as lawyers and accountants, from the allowable expenses

that may be paid to individual members of creditors' committees under Section

503(b)(3)(F).  11 U.S.C. § 503(b)(4).  Thus, the need for information in the Debtors'

Disclosure Statement concerning the Debtors' rationale for proposing to pay the

professional fees incurred by individual members of the Creditors' Committee should be

disclosed to voting creditors.

59.     In addition, the Debtors propose to pay these professional fees in

undisclosed amounts and without court approval.  Disclosure Statement at X.D.3.c; Plan

at Art. § 6.7.  These provisions do not comply with, among others, Section 1129(a)(4) of

the Bankruptcy Code which requires that any payments made for services or for costs and

expenses of the Chapter 11 cases (i) be disclosed and (ii) be approved by the Court.  11

U.S.C. § 1129(a)(4); see, e.g., In re Washington Mutual, Inc., No. 08-12229 (MFW),

2011 WL 57111, at *43 (Bankr. D. Del. Jan. 7, 2011) (bankruptcy court denying

confirmation where proposed plan provided for payment of fees to indenture trustees,

settling noteholders and liquidating trustee without notice and approval by the court); In

re Journal Register Co., 407 B.R. 520, 536 (Bankr. S.D.N.Y. 2009) (The requirements

under Section 1129(a)(4) are two-fold:  (i) first there must be disclosure of the fees and

(ii) the court must approve the reasonableness of the payments).  Further, the Disclosure

Statement does not provide any binding authority that supports the proposed payments or

the manner in which they are proposed to be made in these cases.  Cf. In re Adelphia

Commc'ns Corp., 441 B.R. 6 (Bankr. S.D.N.Y. 2010) (the reasonable professional fees of

unsecured creditors that were incorporated as part of a global settlement embodied in

confirmed Chapter 11 plan could be paid absent a showing of substantial contribution).

For all of these reasons, the Disclosure Statement should be amended to provide this

information.

> h.      *The Disclosure Statement Should Be Amended To Provide*
> *Adequate Information Concerning The PIK Note Or*
> *The IP PIK Note.*

60.     According to the Disclosure Statement, prior to the commencement of

LBI's SIPA proceedings, LBI transferred to Lehman ALI Inc. ("Lehman ALI"), all of

LBI's interests in the share of those subsidiaries of LBI.  Disclosure Statement at IV.C.

In exchange for the transfer of these shares, Lehman ALI provided a note (the "PIK

Note") to LBI in an amount equal to the fair market value of the shares of such entities as

of September 19, 2008.  Id.  In addition, in consideration for the transfer to Lehman ALI

of certain patents and trademarks, Lehman ALI issued another note (the "IP PIK Note"

and together with the PIK Note, the "PIK Notes") to LBI.  Id.  The Debtors disclose that

currently they are engaged in a dispute with the SIPA Trustee concerning the value of the

PIK Notes.  Id.  Although the Disclosure Statement provides that the parties are in

discussions regarding a possible resolution, the Disclosure Statement does not provide

any information concerning the risks associated with this dispute or the financial

consequences that may result if, for example, the SIPA Trustee commences litigation and

prevails.  Accordingly, the Disclosure Statement should be amended to include this

information.

i.   *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Differences Among The Alternative Plans And The Pros And Cons of Each.*

61.   The Disclosure Statement provides some information concerning the history and genesis of the Plan, including that the proponents of the two alternative plans have agreed to support the Plan at the present time.  See Disclosure Statement at IV.F. The Disclosure Statement does not, however, provide adequate information concerning the differences among the three plans and the pros and cons of each.  It is understood that the primary difference between the Plan and the Ad Hoc Group's plan is that the Plan does not provide for substantive consolidation of the Debtors' estates, whereas the Ad Hoc Group's plan does.  The Non-Consolidation Group's plan, however, like the Plan, does not contemplate substantive consolidation.  Notwithstanding, there is no information in the Disclosure Statement that describes why creditors should vote to accept the Plan as opposed to the plan filed by the Non-Consolidation Group.[7]  The Disclosure Statement provides very little information concerning why the Debtors believe that the Plan puts forth the better approach or why, if the Non-Consolidation Group's plan is prosecuted a great deal of litigation would ensue.  See Disclosure Statement at IV.F.2 and 3.  These generalized statements do not provide adequate information that will inform voting creditors whether they ought to vote in favor of the Plan, or reject the Plan with the hopes that one of the alternative plans, or another plan will be filed.  Indeed, the Disclosure Statement must inform the average creditor what it is going to get and when, and what

---

[7] The Disclosure Statement uses two terms, apparently interchangeably, to describe the Non-Consolidation Group, that is, "Non-Con Plan Proponents," see Disclosure Statement at IV.F.3, and "Opco Plan Proponents."  See Disclosure Statement at XII.A.1.  Neither term is defined in the Disclosure Statement and the use of two terms to reference the same party is confusing.  The Disclosure Statement should be amended to clarify this point.

contingencies there are that might intervene.  Ferretti, 128 B.R. at 19.  Accordingly, the

Disclosure Statement should be amended to include this information.

> j.    *The Disclosure Statement Should Be Amended To Provide*
> *Adequate Information Concerning the Securitization Structures.*

62.    The Disclosure Statement provides limited information concerning certain

securitization structures that the Debtors sold or in which the Debtors participated, and

clarification is necessary.  Disclosure Statement at IV.H.  For example, the Disclosure

Statement provides that (i) LBHI and LCPI terminated the SASCO 2008-C2

securitization and (ii) LCPI terminated the Pine securitization.  Id. at IV.H.a.  The table

(the "Securitization Table") showing the outstanding securitizations, however, does not

include the Pine securitization, but still includes the SASCO 2008-C2 securitization.  Id.

The Disclosure Statement does not provide any information concerning why the SASCO

2008-C2 securitization, notwithstanding that it was terminated, remains in this chart.[8]  Id.

63.    In addition, it is not clear how interest has been treated in terms of the

figures included in the Securitization Table.  Specifically, the Disclosure Statement reads,

"The amounts set forth in the below table exclude any interest accrued and unpaid

through the date hereof, but include any unpaid interest that has been added to the

principal amounts in accordance with the terms of the notes."  Id.  Accordingly, the

Disclosure Statement should be amended to clarify these points.

---

[8] Included in the footnotes to the Securitization Table is "footnote 4."  There does not,
however, appear to be a correlative cell in the Securitization Table to which footnote 4
applies.  See Disclosure Statement at V.C.n.4.  There also appears to be an error in
footnote 6 wherein the phrase "was either the issuer of administrative agent," apparently
should read, "was either the issuer or administrative agent."

k.  *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Guarantee Claims And The Impact That "Likely Litigation" Will Have Upon The Debtors' Creditors.*

64.    The Disclosure Statement provides that, "in the aggregate approximately (a) $315 billion of Guarantee Claims were filed against LBHI by its Affiliates and (b) $255 billion of Guarantee Claims were filed against LBHI by third-parties that are not Affiliates of the Debtors.  Disclosure Statement at V.C.  The Disclosure Statement states only that the Debtors "have significant defenses to the enforceability of many of the asserted Guarantee Claims" … and that the Debtors' analysis of these claims "could result in substantial discovery among the parties and likely active litigation."  Given the magnitude of these claims, the Debtors should provide additional information concerning these claims including, among others, when the Debtors plan on commencing discovery with respect to these claims, the anticipated time frame for resolution of these claims and the amount of value that the Debtors anticipate they will ascribe to these claims.  Accordingly, the Disclosure Statement should be amended to provide this information.

l.  *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning Transactions/Relationships With LBIE To Assess The Impact, If Any, Of These Proceedings Upon The Plan And The Debtors' Creditors.*

65.    The Disclosure Statement should provide additional information concerning the Debtors' relationships with LBIE, Lehman's European registered broker/dealer.  The Disclosure Statement briefly describes certain foreign transactions concerning LBIE in which the Debtors are involved, but does not set forth the impact, if any, that the ultimate resolution of these foreign proceedings may have upon the Debtors' creditors and the Plan.  See Disclosure Statement at VII.  As one example, the Disclosure

Statement does not provide adequate information concerning the "RASCALS" decision or the impact, if any, that a resolution of the appeals thereof will have upon creditors of the Debtors.  Disclosure Statement at VII.(i).  See Adelphia, 352 B.R. at 596 ("Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading."  Accordingly, the Disclosure Statement should be amended to provide this information.

> m.    *The Disclosure Statement Should Be Amended To Provide*
>       *Adequate Information Concerning The Fenway Claim.*

66.    Under the Disclosure Statement section titled, "Rationale Underlying Plan Treatment of Claims," the Disclosure Statement provides that the Plan includes a compromise of the substantive consolidation and related issues.  Disclosure Statement at X.B.1.b.  In describing the settlement and compromise, the Disclosure Statement provides that a portion of the distribution to various holders of claims will be reallocated automatically to Senior Unsecured Claims and General Unsecured Claims against LBHI. Id.  In this section, the Disclosure Statement references General Unsecured Claims of Designated Entities, such as the Racers Trust and Fenway.  Id.  Whereas the Disclosure Statement contains a section on the Racers Trust, there is no corollary section on Fenway. A reading of the Plan provides that "Fenway" relates to a claim in the amount of $230 Million.  Plan at Art. § 6.5(h).  The significance of this claim, its genesis and its impact upon the Plan or upon the Debtors' creditors is not provided in the Disclosure Statement. Accordingly, the Disclosure Statement should be amended to include this information.

n.    *The Disclosure Statement Should Be Amended To Provide*
*Adequate Information Concerning Administrative Expense Claims.*

67.    The Disclosure Statement provides that "[t]he Debtors estimate that

Allowed Administrative Expense Claims payable on the Effective Date, including,

repayments to LBHI from Subsidiary Debtors for operating expenses paid on their behalf,

compensation and reimbursement of expenses payable to professionals retained in the

Chapter 11 Cases, will be approximately $1.5 billion."  Disclosure Statement at X.C.1.a.

Neither this section of the Disclosure Statement, nor, as noted in ¶ 57 above, does any

other section of the Disclosure Statement provide any information that sets forth a

breakdown of these expenses.  In addition, the Disclosure Statement provides that this

figure does not include amounts where the Debtors have asserted setoff rights and may

increase if the Debtors' setoff rights ultimately prove to be invalid.  The amount of

administrative claims necessary to be paid on the Effective Date is critical information

and should be disclosed in detail to voting creditors.  Accordingly, the Disclosure

Statement should be to include this information.

o.    *The Disclosure Statement Should Be Amended To Provide*
*Adequate Information Concerning The Plan Administrator And the*
*Justification For Appointing LBHI, Holding Company and A*
*Debtor, As The Plan Administrator.*

68.    The Disclosure Statement should provide additional information

concerning the selection of LBHI as the Plan Administrator.  Although the Disclosure

Statement sets forth the rights and obligations of the Plan Administrator, the Disclosure

Statement does not set forth the rationale for appointing LBHI, which is a holding

company and a Debtor, as the Plan Administrator.  In addition, the Disclosure Statement

does not identify who will execute the duties and responsibilities of the Plan Administrator.

69.     The Disclosure Statement provides that "[f]ollowing the Effective Date, the board of directors of LBHI shall consist of nine persons."  Disclosure Statement at XII.A.1.  The Disclosure Statement also states that the initial board of directors will be selected by the Directors Selection Committee, which also will be comprised of nine members, including: (i) Rutger Schimmelpennick (in his capacity as co-bankruptcy trustee (curatoren) for LBT), (ii) the LBB Administrator, (iii) the Debtors, (iv) each of the co-chairs of the Creditors' Committee, (v) one member chosen by the Opco Plan Proponents who are PSA Creditors, (vi) one member chosen by the Ad Hoc Group who are PSA Creditors, (vii) two individuals chosen collectively by the following PSA Creditors:  Carval Investors UK Limited, Davidson Kempner Capital Management LLC, Elliott Management Corporation, King Street Capital Management LP., Och-Ziff Capital Management Group LLC, The Baupost Group LLC and Varde Partners LP.  Id.  The Disclosure Statement does not provide when these board members will be selected and when their identities will be disclosed to the public.  See 11 U.S.C. § 1129(a)(5) (the disclosure of known identities and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor is a plan confirmation standard); see also, JPMorgan Chase Bank, N.A. v. Charter Commc'ns Op. LLC (In re Charter Commc'ns), 419 B.R. 221, 260, n.30 (Bankr. S.D.N.Y. 2009) (confirmation standard is satisfied where debtor discloses known directors at time of confirmation).  Accordingly, the Disclosure Statement should be amended to include this information and to clarify when this information will be made available to the public.

p.      *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Justification For Imposing An Additional Requirement Solely Upon Creditors Holding Allowed Claims In Amounts Less Than $500.00 To Receive Their Distributions Under the Plan.*

70.     The Disclosure Statement provides that "no payment of Cash less than five-hundred dollars ($500.00) will be made by the Debtors to any holder of an Allowed Claim unless a request therefor is made in writing to the Plan Administrator." Disclosure Statement at X.E.4.b. The Disclosure Statement should be amended to provide the legal justification for the treatment of creditors holding small claims in this manner. The Disclosure Statement should be amended either (i) to delete this provision or (ii) to provide additional information concerning the legal justification for this treatment.

q.      *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Proposed Non-Debtor Third-Party Releases, Exculpations, Limitations of Liability and Injunctions.*

71.     The Disclosure Statement provides that the Plan calls for broad releases of liability for the "Released Parties" and the PSA Creditors.[9] As an initial matter, the Disclosure Statement does not provide adequate information because it does not provide the identities of the "Released Parties." Under the Plan, the Released Parties are defined as:

> The Debtors, the Independent Directors, the Plan Administrator, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers,

---

[9] The PSA Creditors are creditors that executed plan support agreements ("PSAs") with the Debtors. Plan at Art. § 1.126. A list of the PSA Creditors is annexed to the Exhibit 20 to the Disclosure Statement.

32

members, accountants, financial advisors, investment bankers, agents,
restructuring advisors, attorneys, representatives, or other professionals
serving during the pendency of the Chapter 11 cases.

Plan at Art. § 1.131.  The fact that all of these parties, that is, Debtors and non-debtor

third parties, are receiving broad releases under the Plan should be disclosed in the

Disclosure Statement.  See In re Forest Grove, LLC, 448 B.R. 729, 737-38 (Bankr.

D.S.C. 2011) (creditors should not be required to go on a treasure hunt throughout

multiple filings in order to ascertain that information).

72.     The Disclosure Statement should also be amended to set forth the legal

justification for the Debtors to provide non-debtor third party releases, exculpations,

limitations on liability and injunctions, and the United States Trustee reserves the right to

object to confirmation of the Plan to the extent that these provisions are inconsistent with

the Second Circuit's decisions in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008)

("Manville II"), vacated & remanded on other grounds, _____ U.S._____, 129 S.Ct.

2195, 174 L.Ed.2d 99 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010)

("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re

Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).[10]

73.     In Metromedia, the court concluded that a third-party non-debtor release

"is proper only in rare circumstances."  Id.  The Second Circuit emphasized that:

---

[10] Among other things, it is noted that the Release contained in the Disclosure Statement
and the Plan provides that, "nothing in this Plan shall limit the liabilities of professionals
of the Debtors or the Creditors' Committee or the PSA Creditors to their respective
clients pursuant to DR 6-102 of the Model Code of Professional Liability."  Disclosure
Statement at X.H.1; Plan at Art. 13.3.  Effective April 1, 2009, however, New York
abandoned the ABA Model Code of Professional Responsibility, i.e., the Disciplinary
Rules, and adopted the New York Rules of Professional Conduct.  Thus, to the extent that
any release is included in the Disclosure Statement and Plan, release should provide that
it will not limit the liability of professionals pursuant to N.Y. Comp. Codes R. & Regs.
tit. 22 § 1200.8, Rule 1.8(h)(1) (2009).

> [A] nondebtor release is a device that lends itself to abuse. By it, a
> nondebtor can shield itself from liability to third parties. In form, it is a
> release; in effect, it may operate as a bankruptcy discharge arranged
> without a filing and without the safeguards of the Code. The potential for
> abuse is heightened when releases afford blanket immunity.

Id. at 142. The court held that "[a] nondebtor release in a plan of reorganization should

not be approved absent the finding that truly unusual circumstances render the release

terms important to success of the plan...." Id. at 143; see also, In re Chemtura Corp., 439

B.R. 561, 611 (Bankr. S.D.N.Y. 2010) (bankruptcy court declared third-party non-debtor

releases and exculpation provisions unenforceable noting that although they may be

appropriate under some circumstances, they are not permissible as a routine matter); In re

DBSD North America, Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009).

74.    Two bankruptcy courts in this District have noted that the Second

Circuit's later decisions in Manville II and Manville III have raised the question of

whether the Metromedia standard for evaluating third-party non-debtor releases was

enough. See, e.g., In re Dreier, LLP, 429 B.R. 112 (Bankr. S.D.N.Y. 2010); In re

Metcalfe & Mansfield Alt. Invs., 421 B.R. 685 (Bankr. S.D.N.Y. 2010). In Dreier, the

bankruptcy court provided a full discussion of the Supreme Court's and Second Circuit's

decisions in the Manville cases. The ultimate state of the law as applied in this District,

see Dreier, is that before this Court may examine whether "rare circumstances exist" that

warrant approval of the proposed third-party non-debtor releases, exculpation, limitations

on liability and injunctions contained in the Disclosure Statement and Plan, the Court

must first determine whether it has jurisdiction over these provisions under the strictures

of Manville II. Dreier, 429 B.R. at 132.

75.     The Disclosure Statement in these cases lacks any information addressing

the significant legal justification necessary for approval of these provisions under either

the <u>Manville</u> cases or <u>Metromedia</u>.  In addition, the Disclosure Statement lacks any

information concerning the justification for the Court to grant releases post-Effective

Date.  Further, the Disclosure Statement does not provide any information as to the

justification that the Released Parties may under any circumstances be released from acts

of fraud, criminal conduct or breaches of fiduciary duties.  Accordingly, the Disclosure

Statement should be amended to provide this information.

> r.     *The Disclosure Statement Should Be Amended To Provide*
> *Adequate Information Concerning The Legal Justification For The*
> *Debtors' Discharge.*

76.     The Disclosure Statement and Plan provide that:

> Except as expressly provided in the Plan, upon the date that all
> Distributions under the Plan have been made, (a) each holder (as well as
> any trustees and agents on behalf of each holder) of a Claim against or
> Equity Interest in a Debtor shall be deemed to have forever waived,
> released and discharged the Debtors, to the fullest extent permitted by
> section 1141 of the Bankruptcy Code, of and from any and all Claims,
> Equity Interests, rights and liabilities that arose prior to the Effective Date
> and (b) all such holders shall be forever precluded and enjoined, pursuant
> to section 524 of the Bankruptcy Code, from prosecuting or asserting any
> discharged Claim against or terminated Equity Interest in the Debtors.

Disclosure Statement at IV.H.2; Plan at Art. § 13.4. [11]  A review of Section 1141(d)(3) of

the Bankruptcy Code, however, reveals that confirmation of the Debtors' Plan in these

cases does not entitle them to  the proposed discharge.

---

[11] Section 524(a) of the Bankruptcy Code provides that a discharge in a case under title 11
operates, among other things, as an injunction against the commencement or the
continuation of an action.  <u>See</u> 11 U.S.C. § 524(a).  Accordingly, although the language
in section 9.2 of the Bankruptcy Code is crafted as an injunction of actions against the
Debtors as well as third parties, this provision has the same effect as a discharge under
Section 1141(d)(3) of the Bankruptcy Code.

77.     Section 1141(d)(3) provides that:

The confirmation of a plan does not discharge a debtor if –

(A)     the plan provides for the liquidation of all or substantially
all of the property of the estate;

(B)     the debtor does not engage in business after consummation
of the plan; and

(C)     the debtor would be denied a discharge under section
727(a) of this title if the case were a case under chapter 7 of
this title.

11 U.S.C. § 1141(d)(3).

78.     All three prongs of this statute are met in these cases.  First, the Plan

provides for the liquidation of the Debtors' assets.  See Disclosure Statement at XI.C.2.

115.  Second, there is no information contained in the Disclosure Statement or the Plan

that provides that the Debtors will engage in business after consummation of the Plan.

Rather, the Plan provides that the Plan Administrator must, subject to limited

circumstances, "wind-down, sell and otherwise liquidate the assets of the Debtors and or

Debtor-Controlled Entities" within three years after the Effective Date.  Plan at Art. § 7.6.

Third, the Debtors are not individuals and, therefore, would be denied a discharge under

Section 727(a) of the Bankruptcy Code.  11 U.S.C. § 727(a)(1).  In light of the fact that

all three elements of the statute are present in these cases, these Debtors are not entitled

to a discharge.  11 U.S.C. § 1141(d)(3).  Accordingly, the Disclosure Statement and Plan

should be amended either to (i) delete this provision or (ii) provide adequate information

concerning the justification for the Debtors' receipt of a discharge in these cases.

s.       *The Disclosure Statement Does Not Provide Adequate Information
         Concerning The Limitation of Liability of the Plan Administrator.*

79.      The Disclosure Statement provides that, "[t]he Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Plan Administrator." Disclosure Statement at X.D.1.b; Plan at Art. § 6.1(c).  The Disclosure Statement provides no information concerning the justification for this limitation on liability or the justification therefor, including the basis for limiting the liability of the Plan Administrator for acts of fraud, criminal conduct or breaches of fiduciary duties.  Further, for the reasons set forth in ¶¶ 72-75 above, the Disclosure Statement should be amended to provide adequate information concerning the justification for this limitation of liability sought to be provided for the Plan Administrator under the Plan.

t.       *The Disclosure Statement Should Be Amended To Provide
         Adequate Information Concerning The Debtors' Proposed
         Exemption from Transfer Taxes.*

80.      The Disclosure Statement provides that:

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition of assets contemplated by the Plan (including by a Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

Disclosure Statement at X.J.8; Plan at Art. § 15.4.

81.    The Disclosure Statement provides no information concerning the justification for stamp or similar tax exemption.  Specifically, it is not clear from the Disclosure Statement that the proposed exemptions apply only if the transfers occur after the Plan is confirmed.  See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008) (transfer of assets that occurs prior to confirmation of a plan does not entitle debtors to an exemption from a stamp tax liability).  In addition, the Disclosure Statement does not include information supporting its contention that real estate transfer taxes, mortgage recording taxes and sales taxes are "stamp or similar taxes" from which the Debtors are exempt under Section 1146(a) of the Bankruptcy Code.  Accordingly, the Disclosure Statement should be amended to provide this information.

u.    *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning (I) the Improper Inclusion of UST Fees with Administrative Expense Claims, and (II) the Debtors' Obligation to Pay UST Fees Through the Entry of a Final Decree, Dismissal or Conversion of Each Debtor's Chapter 11 Case.*

82.    The Disclosure Statement contains no information concerning the Debtors obligations to pay statutory fees and charges to the United States Trustee ("UST Fees") on all disbursements pursuant to Section 1930 of Title 28 and, if applicable, interest pursuant to Section 3717 of title 31, United States Code.  Article 1.1 of the Plan improperly includes the UST Fees within the definition of "Administrative Expense Claim," and purports to pay UST Fees in the same manner as Administrative Expense Claims are paid under the Plan.  Plan at § Art. 1.1.  The Debtors' obligations to pay UST Fees on all disbursements, including payments pursuant to the Plan in and outside the ordinary course of the Debtors' business, continue through entry of a final decree in each

of the Debtors' cases, dismissal of a case or conversion of a case to a case under Chapter

7 of the Bankruptcy Code.  See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev.

Group, Inc.), 352 F.2d 671, 675, n.4 (2d Cir. 2003) (quoting United States Trustee v.

Boulders on the River, Inc. (In re Boulders on the River, Inc.), 218 B.R. 528, 537 (D. Or.

1997)); see also, In re Citadel Broadcasting Corp., No. 09-17442 (BRL), 2010 WL

2010808, *42 (Bankr. S.D.N.Y. May 19, 2010) (bankruptcy court confirmed plan that

provided for payment of UST fees through entry of a final decree, or dismissal or

conversion of the Chapter 11 case).

83.     Although UST Fees are excepted from class designation under Section

1123(a)(1) of the Bankruptcy Code, the Plan must separately provide for the payment of

UST Fees and must provide that UST Fees due and owing as of the Confirmation Date

have been, or will be paid in cash on the effective date of the Plan in order for the Plan to

be confirmed.  11 U.S.C. § 1129(a)(9) and (12).  The Disclosure Statement similarly must

disclose that each Debtor has the obligation to pay UST Fees, and should include an

estimate of what these fees will be for each Debtor on the Effective Date and over the

course of the anticipated three-year liquidation period.  Accordingly, the Disclosure

Statement and Plan should be amended to provide this information.

> v.     *The Disclosure Statement Should Be Amended To Provide
> Adequate Information Concerning The Justification For The
> Debtors' Proposed Exemption/Modification Of The Post-
> Confirmation Reporting Requirements of Section 1106(a)(7), Local
> Bankruptcy Rule 3021-1 and the UST Chapter 11 Operating
> Guidelines.*

84.     The Disclosure Statement discloses that the Debtors seek to propose their

own requirements for post-confirmation reporting.  Under the Debtors' proposal, among

other things, the Plan Administrator or the board of directors or manager for each Debtor,

as applicable, is permitted to elect to modify or include less information in such reports than otherwise required by the Plan if they determine in their reasonable discretion to omit this information.  See Disclosure Statement at X.J.12.  These post-confirmation reporting provisions in the Plan do not conform to the post-confirmation reporting requirements of Section 1106(a)(7), Local Bankruptcy Rule 3021-1 or the United States Trustee's Chapter 11 Operating Guidelines.  The Disclosure Statement does not provide any information concerning the justification for the Debtors' proposed exemption/modification of these requirements.  In addition, the Disclosure Statement and Plan should provide that any post-confirmation report which is filed must include a report on the disbursements of each of the Debtors.  Accordingly, the Disclosure Statement should be amended either (i) to incorporate the provisions of Local Bankruptcy Rule 3021-1 and the UST Chapter 11 Operating Guidelines, or (ii) to provide information setting forth the justification for the Debtors' proposed exemption/modification of the requirements set forth therein.

> w. *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Justification For The Debtors' Proposed Modifications To Section 1129 Of The Bankruptcy Code To Provide That Payments Required To Be Made On The Effective Date May Be Made "As Soon Thereafter As Is Practicable."*

85.    The Disclosure Statement provides that in several instances where the Bankruptcy Code requires for plan confirmation that payments be made "on the effective date" of the plan, the Debtors seek to modify the Bankruptcy Code by providing that these payments may be made on the Effective Date "or as soon thereafter as is practicable."  By way of example only, the Disclosure Statement provides that administrative expense claims will be paid on the Effective Date "or as soon thereafter as

is practicable." Disclosure Statement at X.C.1; Plan at Art. § 2.1. Section 1129(a)(9) of

the Bankruptcy Code, however, requires that, in order for the Court to confirm a plan, it

must provide for the payment of these claims in full, in cash and "on the effective date of

the plan." 11 U.S.C. § 1129(a)(9).

86.    The Disclosure Statement and Plan should be revised so that (i) all

provisions where the Debtors have modified the requirements of Section 1129 of the

Bankruptcy Code are eliminated or (ii) the Disclosure Statement be amended to include

information concerning the justification for these statutory modifications.

### C.    The Court Should Not Approve the Solicitation Procedures Because Epiq Has Not Been and Cannot Be Retained As Solicitation and Balloting Agent Under 28 U.S.C. § 156(c).

87.    By the Amended Motion, the Debtors seek the Court's approval of

proposed solicitation and balloting procedures (the "Solicitation Procedures"). Amended

Motion at II. The Amended Motion provides that, "[f]or purposes of implementing the

proposed procedures, the Debtors have retained Epiq Bankruptcy Solutions, LLC

("Epiq") to act as claims, solicitation, and balloting agent." Id., at II, ¶ 26. As support,

the Debtors cite to the "Order Pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1(a)(i)

Authorizing the Employment of Epiq Bankruptcy Solutions, LLC as Claims and Noticing

Agent for the Debtor, and (ii) Appointing Epiq Bankruptcy Solutions, LLC as Agent of

the Bankruptcy Court (the "Claims Agent Order"), entered by this Court on September

16, 2008. Id., at II, ¶ 26, n.4.; see ECF Dkt. No. 50. A careful review of the Claims

Agent Order, as well as Section 156(c) of Title 28 and Local Bankruptcy Rule 5075-1

makes clear that the Court has not yet authorized Epiq to perform solicitation and

balloting services.

88.     Section 156(c) of Title 28 provides in pertinent part:

(c)     Any court may utilize facilities or services, either on or off the
court's premises, which pertain to the provision of notices, dockets,
calendars, and other administrative information to parties in cases filed
under the provisions of title 11, United States Code, where the costs of
such facilities or services are paid for out of the assets of the estate and are
not charged to the United States.

28 U.S.C. § 156(c).  To implement this statute, the Court promulgated Local Bankruptcy

Local Bankruptcy Rule 5075-1, which provides:

(a)     The Court may direct, subject to the supervision of the Clerk, the
use of agents either on or off the Court's premises to file Court records,
either by paper or electronic means, to issue notices, to maintain case
dockets, to maintain Judges' calendars, and to maintain and disseminate
other administrative information where the costs of such facilities or
services are paid for by the estate.

LBR 5075-1.  In addition, the Court entered General Order M-409 dated September 22,

2010, which provides that "certain administrative duties of the Clerk of Court – such as

providing notice and claims processing – may be performed by a facility or service,

provided that the costs of such facility or service are paid out of estate assets."  General

Order M-409.

89.     As detailed above at ¶ 8, the 16 enumerated services that the Court

authorized Epiq to perform on the Debtors, which each involve either noticing or claims

services, fall within the parameters of Section 156(c) of Title 28, Local Bankruptcy Rule

5075-1 and General Order M-409.  Although the schedule annexed to the engagement

letter annexed to the Application includes a pricing schedule for "Voting Tabulation and

Reports," the Debtors never mentioned these services expressly in the Claims Agent

Application and they are not enumerated in the Claims Agent Order.  Indeed, they could

not be because these types of services are not services that fall within the scope of the duties and services performed by the Clerk of the Court.

90.     If the Debtors wish to retain Epiq as their solicitation and voting agent, then the Debtors must seek authorization from the Court to retain Epiq pursuant to Section 327(a) of the Bankruptcy Code, and Epiq must comply with the other Bankruptcy Code provisions, Bankruptcy Rules, Court Rules and UST Fee Guidelines that pertain to retention of professionals under Section 327(a) of the Bankruptcy Code.  See 11 U.S.C. §§ 327(a), 330 and 331, Bankruptcy Rules 2014 and 2016, Local Bankruptcy Rules 2014-1 and 2016-1, General Order M-389 and the UST Fee Guidelines.  See, e.g., General Growth Props., No. 09-11977 (ALG), Findings of Fact, Conclusions of Law, and Order Confirming the Plan Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Modified, dated October 21, 2010.  (ECF Dkt. No. 6240); In re Mesa Air Group, Inc., No. 10-10018 (MG), Order Confirming Third Amended Joint Plan of Reorganization of Mesa Air Group, Inc. and Affiliated Debtors Under Chapter 11 of the Bankruptcy Code, dated January 20, 2011.  (ECF Dkt. No. 1448).  Absent compliance with these statutes, rules and guidelines, the United States Trustee proposes that the portion of the Amended Motion seeking to engage Epiq as solicitation and balloting agent should be denied.

## IV.  OBJECTIONS TO CONFIRMATION

91.     If applicable, the objections raised herein are, by way of this Objection, being asserted as objections to confirmation of the Plan.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i)

sustain the Objection, (ii) direct the Debtors to amend the Disclosure Statement and Plan

to cure the informational inadequacies and to address the issues identified in the

Objection and (iii) grant such other relief as is just.

Dated: New York, New York
      August 11, 2011                     Respectfully submitted,

                                       TRACY HOPE DAVIS
                                       UNITED STATES TRUSTEE

                            By  */s/ Andrea B. Schwartz*
                                       Andrea B. Schwartz, Trial Attorney
                                       Susan D. Golden, Trial Attorney
                                       33 Whitehall Street, 21st Floor
                                       New York, New York 10004
                                       Tel. No. (212) 510-0500
                                       Fax No. (212) 668-2255