**Hearing Date and Time:  August 30 at 11 a.m. EDT**
**Objection Deadline:  August 11, 2011 at 4:00 p.m. EDT**

Walter B. Stuart
Patrick D. Oh
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001
walter.stuart@freshfields.com
patrick.oh@freshfields.com

and

Jane Lee Vris
Steven M. Abramowitz
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone:  (212) 237-0000
Facsimile: (212) 237-0100
jvris@velaw.com
sabramowitz@velaw.com

*Attorneys for Deutsche Bundesbank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF DEUTSCHE BUNDESBANK TO DEBTORS' DISCLOSURE STATEMENT FOR SECOND AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Deutsche Bundesbank ("Bundesbank"), by and through its undersigned counsel, hereby files this objection (this "Objection") in the above-referenced cases (the "Lehman US Bankruptcy Cases") to the Debtors' Disclosure Statement [Docket No. 18205] (the "Disclosure Statement") for the Debtors' Second Amended Joint Chapter 11 Plan [Docket No. 18204] (the

"Plan") of Lehman Brothers Holdings Inc. ("LBHI") and Its Affiliated Debtors (collectively, the "Debtors") Pursuant to Section 1125 of the Bankruptcy Code.  In support of this Objection, Bundesbank[1] respectfully states as follows:

## STATEMENT

1.    The Lehman US Bankruptcy Cases have unquestionably been complex.  And yet, given that the Plan calls for complete liquidation, the basic question for Bundesbank is relatively straightforward: should the proceeds of the liquidation be distributed by the proposed settlement under the Plan or by legal priority under chapter 7.  To answer that, Bundesbank needs to know what it would receive with and without substantive consolidation if the Plan is not confirmed. The Disclosure Statement nowhere provides this information.  Under the Plan, the liquidation value allocated to guarantee claims at LBHI, including value reallocated from subordinated debt, is discounted by 20% to settle the risk of substantive consolidation.[2]  But the Disclosure Statement does not disclose what these same guarantee claims would receive absent the Plan settlement discount – either with substantive consolidation or, as the Debtors believe is far more likely than not, without consolidation (either directly or, as the Disclosure Statement suggests, through other unorthodox equitable remedies, indirectly).  *See* Disc. Stat. § X.B.1.b, at 51. Instead, their chapter 7 liquidation analysis appears to start with the Plan settlement discount of 20% and then take an additional discount of approximately 27%.  This information is irrelevant –

---

[1] For the nature and amount of claim in respect of which this Objection is filed, please see paragraph 5 below.
[2] Bundesbank has no way of determining whether the other settlements embedded in the Plan are material to its recovery and thus no way of knowing whether the lack of any disclosure about Bundesbank's recovery without those settlements is material, either under the Plan or the alternative.

-2-

under no scenario would recovery for a Class 5 Claim[3] absent the Plan be a discount off of the proposed substantive consolidation settlement.

2.      In most chapter 11 cases, the plan value so far exceeds the chapter 7 alternative as to render the alternative irrelevant.  Not so here.  In fact, under each of the two plans previously proposed by non-Debtors and now resolved as part of the settlements embedded in the Plan, Bundesbank would have received exactly the same or less than under the alternative chapter 7 scenario.  *See* Ad Hoc Disc. Stat. Ex. 2 at 2-11 and Ex. 3 (estimating a 13.6% recovery to Class 8A – 8n if all classes accept versus a 16.5% recovery in liquidation); Non-Consolidation Disc. Stat. Ex. 5 (estimating same recovery for Class 5A under plan and chapter 7).[4]  Here, even if one accepts the Debtors' valuation without challenge, the difference between creditor recoveries under chapter 7 (without applying the Plan settlement discount of 20%) and under the Plan (with the 20% settlement discount) may be so close that Class 5 Claims could recover more in a chapter 7.  Disputes about valuation can wait for confirmation, but clearly the alternative here is relevant to a creditor asked to vote on the Plan.

3.      As it is possible that Bundesbank might receive more under the chapter 7 alternative to the Plan, it is vitally important that Bundesbank know what that alternative recovery would be. The relevant information is recovery with and without substantive consolidation.  Thus, the

---

[3] Bundesbank believes its claim falls within Class 5 under the Plan (a "Class 5 Claim").  *See* Plan § 4.6, at 25.  It also notes that the recovery for the Class 5 Claims is significantly less than 80% of the recovery for Class 3 senior unsecured claims, an issue it leaves for confirmation.  In any event, the chapter 7 recovery includes at a minimum the 20% substantive consolidation discount.

[4] *Disclosure Statement for the Amended Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings, Inc. and Certain of its Affiliated Debtors other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Proposed by the Ad Hoc Group of Lehman Brothers Creditors* [Dkt. No. 16316] and *Disclosure Statement for the Joint Chapter 11 Plan for Lehman Brothers Holdings, Inc. and Certain of its Affiliated Debtors other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Proposed by Non-Consolidation Plan Proponents* [Dkt. No. 16230], respectively.

Disclosure Statement should include at a minimum the following; (1) without substantive consolidation, what would creditors holding Class 5 Claims receive (it is not as simple as adding 20% back to the number); and (2) with substantive consolidation, what would the recovery be for holders of Class 5 Claims, taking into account all unencumbered assets (not just liabilities) of the consolidated entities, both Debtor and non-Debtor.   Given the relative closeness of recovery under each scenario, it is also important to understand whether recoveries under both scenarios are presented in the Disclosure Statement on a consistent basis without discounting for present value.    Bundesbank is also concerned that creditors with dissimilar rights have been classified together but leaves this for confirmation.   To avoid this potential issue, it would be helpful to know whether the Debtors believe that all entities share roughly the same risk of consolidation, or if the risks differed significantly among the various entities, what methodology the Debtors utilized to arrive at a uniform settlement discount rate of 20%.[5]

4.     This basic information Bundesbank seeks should not be burdensome and it is information the Debtors most likely already have.   The Debtors have the books and records for each entity and have already analyzed the claims at each entity.   To determine the reasonableness of the 20% discount as a settlement, they most likely have already done the analysis of recovery

---

[5] To be clear, as the central bank of Germany, Bundesbank believes that US law would respect the separate corporate identity of LBHI's German deposit holding, bank subsidiary regulated under German banking laws and currently administered by an administrator appointed by a German court, and it does not accept a 20% discount as a reasonable assessment of the litigation risk. The Debtors appear to acknowledge the insurmountable difficulty in compelling a foreign administrator to turn over assets and suggest achieving the same economic result through special orders affecting their intercompany claims. *See* Disc. Stat. § X.B.1.c.iii, at 57-59 (suggesting that claims of the foreign affiliates could be disallowed to achieve a type of synthetic substantive consolidation).   Apart from the highly questionable approach of trying to achieve substantive consolidation through other means, the Disclosure Statement provides no meaningful analysis as to whether this approach is even possible; are there sufficient claims subject to setoff held by the foreign affiliates to reach the same result as substantive consolidation through disallowance of those claims? The Disclosure Statement does not say.

-4-

with or without substantive consolidation.  In any event, this information is necessary to evaluate the proposed treatment under the Plan.

## BACKGROUND

5.    Bundesbank, the national central bank of Germany and a member of the European System of Central Banks (the "Eurosystem"), has asserted a claim of US$12,162,605,456 against LBHI [Claim No. 19951], which arises from a guarantee issued by LBHI in connection with obligations of Lehman Brothers Bankhaus AG (in Insolvenz) ("LBB"), a German deposit holding, bank affiliate of LBHI.  Those obligations arise under certain open market operations (e.g., on the basis of collateralized loans) intended to provide liquidity to financially sound institutions subject to the Eurosystem's minimum reserve system.  As such, Bundesbank is one of few third party guarantee claimholders of LBHI whose primary obligor is a governmentally regulated bank.  This distinguishing fact is critical to Bundesbank's evaluation of the Plan, because Bundesbank must evaluate whether the Plan's uniform 20% settlement discount fairly reflects the risk that the Debtors might be consolidated, not with other US affiliates, but with a regulated German bank.

## OBJECTION

6.    Bankruptcy Code § 1125(b) conditions a plan proponent's solicitation of votes on a proposed chapter 11 plan on the bankruptcy court's determination that the disclosure statement contains "adequate information."  The Bankruptcy Code defines adequate information as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of claims or interests in the relevant class to make an informed judgment about the plan . . .

-5-

11 U.S.C. § 1125(a)(1); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of the chapter 11 process is the requirement that holders of claims in impaired classes be furnished a proper disclosure statement 'that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan.'") (quoting H.R. Rep. No. 95-595, at 408- 09 (1977)). The Disclosure Statement must provide enough information to enable the Debtors' creditors and this Court to make an informed judgment about the Plan. *See Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("'The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.'") (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). The Disclosure Statement must include "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives so that they can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Accordingly, it is impossible to "overemphasize the debtor's obligation to provide sufficient data to satisfy the Bankruptcy Code standard of 'adequate information.'" *Kunica*, 233 B.R. at 54 (quoting *Oneida*, 848 F.2d at 417).

## A.    The Disclosure Statement's Liquidation Analysis Is Materially Misleading and Incomplete

7.      The Disclosure Statement's chapter 7 liquidation analysis, the so-called "best interests" analysis, improperly preserves the settlements embedded in the Plan when allocating value to each class of unsecured creditors. The Debtors' best interests liquidation analysis provides creditors of LBHI with the same recovery they would receive under the Plan settlements less a further chapter 7 discount of approximately 27%. *See* Disc. Stat. Ex. 5. Clearly, this is not the pro rata treatment which would occur under chapter 7, the relevant

comparison for the best interests test. *See* Bankruptcy Code §§ 1129(a)(7)(A)(ii) and 726(b); *In re Baker & Getty Fin. Servs., Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997) (in chapter 7, "general unsecured creditors receive a pro rata share of the debtor's assets after payment of priority claims."). The liquidation analysis in the Disclosure Statement is materially misleading if it portrays an outcome that would never occur; the analysis should reflect legal priorities not settlements. Recovery for Class 5 Claims should be calculated based on recovery for senior unsecured claims after reallocation from subordinated debt and without discount for the risk of substantive consolidation. Any other presentation of the chapter 7 scenario lacks meaningful information and is misleading. *See Crowthers McCall*, 120 B.R. at 300-01 (disclosure statement with faulty chap. 7 analysis significantly in error; even though best interests test satisfied, confirmation denied and debtor must resolicit). If the Debtors believe this is necessary, the presentation can also include recovery assuming substantive consolidation, but this presentation should include not only the liabilities but also the unencumbered assets of the consolidated entities as well as the reallocation of recovery for subordinated debt.[6]

8.      The chapter 7 liquidation analysis also does not provide sufficient information about the assumptions used in valuing the cash distributions. The Plan is a liquidation plan; creditors will receive cash although not necessarily when the Plan becomes effective. The timing of cash receipts may be delayed as a result of the claims allowance process and the liquidation process. *See* Disc. Stat. § X.E.4, at 96. Potential for delay exists under the chapter 7 alternative as well. Thus, the difference in the time value of money under the two scenarios is relevant, potentially

---

[6] Without explanation, the Plan settlement discounts the value reallocated to Class 5 Claims from the subordinated debt by the same 20%. This assumes there is no legal or equitable basis for enforcing subordination when the equitable remedy of consolidation is ordered or the Debtors' synthetic substantive consolidation is used, a proposition which Bundesbank rejects and which, in the context of this approximately $75 billion liquidation Plan, seems unlikely to go unchallenged by other guarantee creditors.

-7-

material, information. The recovery analysis under the Plan assumes that cash is distributed over a four year period and the Disclosure Statement discloses that no present value analysis has been done; the cash has not been discounted. *See* Disc. Stat. Ex. 4, at 4-1. The Debtors have assumed in preparing recoveries under the chapter 7 liquidation that a chapter 7 trustee would liquidate the same assets over a shorter time, one and a half to two years, but would take longer to begin distributions. *See* Disc. Stat. Ex. 5, at 5-2. The Disclosure Statement should either confirm that no discount has been applied to the cash on account of this delay. *See In re Featherworks Corp.*, 25 B.R. 634, 643 (Bankr. E.D.N.Y. 1982) (refusing to confirm plan where debtor provided insufficient evidence to support liquidation assumptions), or alternatively, use the same discount for both.

**B.    The Disclosure Statement Fails to Inform Creditors of Value Released Under the Plan**

9.    Bundesbank submits that when the recovery under the Plan is so close to recovery without the Plan that the benefits of chapter 11 may be tenuous, the Disclosure Statement should also clearly identify those rights creditors will be waiving or giving up through the Plan which they would not be required to forego in chapter 7. It is not clear, for example, whether the "best interest" discussion in the Disclosure Statement accounts for the value of claims against third parties which creditors are required to release under the Plan. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 359-60 (Bankr. D. Del. 2011) ("In a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at least as well under the chapter 11 plan as they would in a chapter 7 liquidation."); Plan § 13.3.

10.    Additional types of value and rights which creditors will relinquish under the Plan but not in chapter 7 include (as examples) for Class 5 Claims, effectively eliminating any contractual

-8-

waiver of subrogation which may exist in the underlying guarantee, Plan § 8.13, eliminating 20%

of value which should be reallocated from the subordinated debt, Plan § 6.4, a Plan-created right

of triangular set-off among affiliates without regard to whether the right is recognized under

applicable law, Plan § 8.15, and a type of double or triple jeopardy for the claims allowance

process, Plan § 9.3. For the "whole truth" about the alternative to the Plan, the Disclosure

Statement should disclose this.

**C.     The Disclosure Statement Should Address the Possibility That No Plan Can Be
        Confirmed In These Cases Without Litigating Substantive Consolidation**

11.     The Debtors state that "[o]ne of the Debtors' guiding principles in formulating the

Plan has been the avoidance of litigation of substantive consolidation . . . ." Disc. Stat. § X.A, at

50. The Debtors' efforts to avoid litigation of substantive consolidation may be misguided,

however. For the Plan to be confirmed, the Debtors must show that creditors receive more under

the Plan than they would under a chapter 7 liquidation. *See* Bankruptcy Code § 1129(a)(7). To

make that showing, the Debtors may be required to demonstrate that the Debtor against which an

objecting creditor holds a claim could have been substantively consolidated, because it is quite

possible (even without challenging the Debtors' valuation assumptions at this point) that such a

creditor would receive a higher distribution under a chapter 7 than it would under a Plan which

contains a 20% discount for a non-existent consolidation risk. Thus, the Disclosure Statement

should disclose the possibility that even within the Plan process, substantive consolidation may

be litigated before confirmation can be achieved. *See* Disc. Stat. § X.B.1, at 51 (discussion of

substantive consolidation). The Disclosure Statement should also address, in light of the

Supreme Court's recent ruling in *Stern v. Marshall*, whether the Bankruptcy Court would have

jurisdiction to enter final judgment on the various legal issues "settled" under the Plan and if not,

-9-

whether it may properly approve settlements of claims over which it lacks jurisdiction, particularly given the class consent mechanism of chapter 11. *See* 131 S. Ct. 2594 (2011).

**D.    The Disclosure Statement Fails to Provide Adequate Information Regarding the Classification of Bundesbank under the Plan**

12.    The Disclosure Statement provides inadequate disclosure of the rationale for classifying Bundesbank's claim with other unsecured claims that are subject to a risk of substantive consolidation. *See* Disc. Stat. § X.C.2.a.vi, at 74 (describing claims in Class 5). Unlike many other third party guarantee creditors, the primary obligor of Bundesbank's guarantee claim, LBB, is a foreign regulated deposit holding bank under administration in a foreign jurisdiction.   The Plan fails to disclose, and Bundesbank is unaware of, any US or international precedent in which a court has ordered substantive consolidation of a domestic debtor with a foreign regulated financial institution that is subject to separate administrative proceedings in a foreign jurisdiction.   Nor have the Debtors provided creditors with any statutory authority or precedent for the suggestion that claims of foreign affiliates opposing substantive consolidation could be disallowed or expunged, absent substantive consolidation. *See* Disc. Stat. § X.B.1.c.iii, at 58.   At a minimum, the Disclosure Statement must provide sufficient information to understand why one uniform 20% settlement discount rate is fair and appropriate for entities with undoubtedly vastly different risks of consolidation.[7]

13.    It is unclear why the Debtors separately classify affiliate and third party guarantee claims, and why senior affiliate guarantee claims are entitled to recoveries superior to senior

---

[7] Bundesbank also submits that classifying a creditor whose claim would not be adversely affected by substantive consolidation with creditors whose duplicate claims would be eliminated altogether through substantive consolidation is patently impermissible.   When treatment for a class is based on risk of substantive consolidation, the common legal characteristic for proper classification is not the guarantee, but the risk of substantive consolidation.   A creditor with a guarantee claim against LBHI and a foreign primary obligor which is not substantively consolidated might receive more -- not less -- on account of that guarantee claim in the event the US debtors were substantively consolidated.

US 985850v.10

third party guarantee claims.  *See* Disc. Stat. § II.B, at 6 (providing estimated recovery to senior affiliate guarantee claims of 15.2%; recovery to senior third-party guarantee claims of 12.2%); *Compare* Disc. Stat. § X.C.2.a.v, at 73 (describing claims in Class 4B) *with* Disc. Stat. § X.C.2.a.vi, at 74 (describing claims in Class 5).  The disclosure statement does not explain why affiliates are entitled to superior treatment.

## RESERVATION OF RIGHTS

14.    Bundesbank continues to analyze the Disclosure Statement and Plan.  As such, this Objection is submitted without prejudice to, and with a full reservation of, Bundesbank's rights to supplement this Objection in advance of or in connection with the hearing to consider the approval of the Disclosure Statement.  In addition, Bundesbank reserves the right to object to confirmation of the Plan or any other plan on any grounds whatsoever, regardless of whether those grounds are addressed herein.

## CONCLUSION

WHEREFORE Bundesbank respectfully requests that the Court (i) deny the approval of the Disclosure Statement unless the modifications to the Disclosure Statement set forth in this Objection are adopted by the Debtors and (ii) provide Bundesbank with such other and further relief as is just and proper.

US 985850v.10

Dated:  August 11, 2011
      New York, New York

Respectfully submitted,

*/s/ Jane Lee Vris*
Walter B. Stuart
Patrick D. Oh
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001
walter.stuart@freshfields.com
patrick.oh@freshfields.com

and

Jane Lee Vris
Steven M. Abramowitz
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone:  (212) 237-0000
Facsimile: (212) 237-0100
jvris@velaw.com
sabramowitz@velaw.com

*Attorneys for Deutsche Bundesbank*

US 985850v.10