**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
Scott Cargill, Esq.
Erin S. Levin, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
212. 262.6700  (Telephone)
212. 262.7402  (Facsimile)

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel to LibertyView (as defined below)*

**IN THE UNITED STATES BANKRUPTCY**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP) Jointly Administered |
| Debtors. | Re:  Doc. Nos. 18205 and 18126 |

**LIBERTYVIEW'S LIMITED OBJECTION TO DEBTORS'**
**DISCLOSURE STATEMENT FOR SECOND AMENDED**
**JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS**
**HOLDINGS INC. AND ITS AFFILIATED DEBTORS**
**PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

LibertyView (as defined below), through its undersigned counsel, respectfully submits this limited objection (the "Objection") to the Debtors' *Amended Motion (I) For Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 18126] (the "Motion"), and states the following:

22312/14
08/11/2011 18111867.4

# BACKGROUND

**A.    LibertyView**

1.    LibertyView is a group of investment funds[1] (collectively, "LibertyView") that hold claims against multiple Lehman Brothers entities (defined below), including several of the Debtors, as a result of agreements entered into and business conducted prior to the Commencement Date (defined below).

2.    LibertyView's transactions were conducted pursuant to certain Customer Account Prime Brokerage Agreements (each a "PBA"), executed between the various LibertyView entities, Lehman Brothers, Inc. ("LBI"), Lehman Brothers (Europe), Inc. ("LBIE") and certain Debtor entities, including Lehman Brothers Holding Inc. ("LBHI").  LibertyView is also a party to certain Margin Lending Agreements (each a "MLA") LBIE.  The MLAs provide that loans of securities made pursuant to the MLAs are governed by the terms of a standard-form Global Master Securities Lending Agreement (May 2000 version) (the "GMSLA") as modified and supplemented by the Schedule to GMSLA and 2000 U.K. Tax Addendum (collectively with the PBAs and MLAs, the "Agreements").

**B.    The Chapter 11 Proceedings**

3.    On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On and after the Petition Date, affiliates of LBHI (together with LBHI, the "Debtors") also filed petitions for relief under Chapter 11 (together with the LBHI petition, the "Chapter 11 Cases").  The Debtors' Chapter 11 Cases are being administered jointly in this Court.

---

[1]    The funds include LibertyView Credit Opportunities Fund, L.P., LibertyView Credit Select Fund, LP, LibertyView Funds, L.P., LibertyView Global Risk Arbitrage Fund, L.P., and LibertyView Special Opportunities Fund, L.P.

4.    On September 19, 2008 (the "Commencement Date"), a proceeding (the "SIPC Proceeding") was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI, the regulated broker/dealer subsidiary of LBHI. James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed by the Securities Investor Protection Corporation on that date. The SIPC Proceeding was referred to and is also being administered in this Court.

5.    As of the Commencement Date, LibertyView held a positive net position against LBIE and all of its affiliated counterparties to the PBAs (collectively, "Lehman Brothers"), including LBHI and LBI, on account of the Agreements in excess of $1.1 billion. LibertyView also holds and has asserted unliquidated claims against LBHI and other debtors in the Chapter 11 Proceedings for damages and costs related to Lehman Brothers' failure to return LibertyView's securities, cash and other instruments (the "Customer Property") held by Lehman Brothers in connection with the Agreements. In addition, LibertyView holds a claim for all cash and consideration that was received by Lehman Brothers after the Commencement Date on account of LibertyView's Customer Property, including, but not limited to interest payments, dividends and maturities of securities, which LibertyView is entitled to receive pursuant to the Agreements and applicable law.

6.    In September 2009, LibertyView timely filed proofs of claim against LBHI, Lehman Brothers Financial SA ("LBFSA") and Lehman Brothers Special Financing Inc. ("LBSF"), all parties to the PBAs whose cases are being administered in the Chapter 11 Proceedings.[2]

7.    On July 1, 2011, the Debtors filed their Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliates [Doc. No. 18204] (the "Plan"), together with the Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers

---

[2]    Each of the investment funds constituting LibertyView filed timely proof of claims for: (i) direct claims against LBHI, LBFSA and LBSF, and (ii) claims based on a guarantee against LBHI.

-3-

Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Doc. No. 18205] (the "Disclosure Statement"). On June 29, 2011, the Debtors filed the Motion. The hearing on the Motion is scheduled for August 30, 2011.

## OBJECTION

8. A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan); *In re The Plane Broker, Inc.*, 2007 WL 145538 (2007) (D. Conn. 2007); *In re New Haven Radio, Inc.*, 18 B.R. 977 (Bankr. D. Conn. 1982). Courts have ample discretion to determine what constitutes adequate information. *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed by, in part, affirmed by, in part*, 184 B.R. 648 (S.D.N.Y. 1995) (citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)). Although adequacy is determined on a case-by-case basis under a fact-specific, flexible standard, *id*., a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

9. In certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain certain broad and ambiguous provisions and/or omit material facts that (i) may mislead holders of claims or interests or (ii) should be available to holders of claims or interests. Therefore, absent the modifications proposed in this Objection, the Motion must be denied.

C. **The Notice Procedure Proposed to Allow the Setoff of Amounts Outstanding Against Claims Improperly Shifts the Burden to Object Onto Claimants.**

10. Section 8.10 of the Plan provides the Debtors with the right to "setoff or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the Claimant" by giving the Claimant written notice of ten (10) Business Days. *See* Plan, § 8.10. Then, the Claimant is saddled with the responsibility to object to the proposed setoff or recoupment. *Id.* No explanation is provided or basis given in the Disclosure Statement for this procedure which essentially and improperly shifts the burden onto the Claimants.

11. A debtor's setoff right is governed by principles of established setoff law. *In re Braniff Airways, Inc.*, 42 B.R. 443, 450 (Bankr. N.D.T.X. 1984) ("this Court declines to view [Section 106(b)] as a mandate that the debtor's setoff right is not governed by any principles of established setoff law but is *carte blanche* authority for the debtor to do as it pleases"). The right to setoff arises as a defense under state law which is preserved by section 558 of the Bankruptcy Code. *In re Women First Healthcare, Inc.*, 345 B.R. 131, 134 (Bankr. D. Del. 2006). The right of setoff must be <u>established</u> by the party wishing to utilize such right in order to assert the setoff as a defense reserved by section 588. *Id.*

12. The Debtors' proposed procedure for asserting alleged rights of setoff is flawed. The Debtors seek to impose a procedure whereby they need only provide a written notice,

-5-

instead of filing a motion with this Court to obtain the requisite authority to exercise whatever setoff rights the Debtor may hold. As a result, an inappropriate assumption is created that the Debtors have a right of setoff. Effectively, they are removing the requirement that they must first establish before the Court that they have the right to setoff under state law.

13. The proposed process is particularly inappropriate here, where perhaps millions of dollars may be at stake and the Debtors require a Claimant to file a written objection with the Court within ten (10) Business Days of receiving the written notice of setoff. Shifting the burden from the Debtors to the Claimants is inconsistent with established law that debtors do not have *carte blanche* authority to setoff any amounts they believe are owed against Claims without establishing that they are entitled to the setoff pursuant to state law. *Cf. In re Braniff Airways, Inc.*, 42 B.R. at 450.

14. The Debtors must be required, absent agreement with the Claimant, to file a motion seeking the right to setoff against its Claim, in the event they determine they would like to request such relief. The filing of a motion is the expected, appropriate and routine procedure to request the right to setoff. The proposed procedure would be wholly inadequate to allow the Debtors to setoff any amount they believe is owed against a Claim.

15. Section 8.10 of the Plan should be modified as follows:

> <u>Setoffs and Recoupment</u>. **As approved by the Court,** any Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim or any Claims of any nature whatsoever that the Debtor may have against Claimant; **[deletion];** *provided, however,* that neither the failure to setoff against or recoup from any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

16. At the very least, a basis or an explanation for the procedure outlined in the Plan should be provided in the Disclosure Statement as well as an indication that certain parties object to the procedure.

-6-

D. **The Disclosure Statement Fails to Provide Any Justification For an Injunction Against a Claimants' Rights to Setoff.**

17. The Disclosure Statement describes, and the Plan provides, for the release of, and to the extent released, the permanent injunction of, Claims of entities which held, hold or may hold Claims against or Interests in the Debtors, against the Debtors and certain non-Debtors. D.S., §X.H.1 and 3; Plan, §13.3 and 13.5. Also, the Plan releases Claims against Released Parties and the PSA Creditors.[3]

18. Likewise, to the extent a Claim or Cause of Action is released, the Plan Injunction permanently enjoins such holders of Claims against or Interests in the Debtors from commencing, continuing or conducting in any manner any proceeding against a Released Party. D.S., §X.H.3; Plan, §13.5. Because the Plan Injunction provision is directly related to the Plan Release provision, to the extent the Plan Release provision is deemed improper (*see* ¶34, *supra*), the Plan Injunction should likewise not be permitted.

19. The Plan release and injunction provisions may be interpreted to impact, enjoin, prohibit and/or preclude a creditor from asserting its right to setoff against the Debtors but allow other parties, specifically the United States Government, to enjoy rights of setoff notwithstanding the release provisions. Section 13.6 of the Plan provides that nothing in the Plan shall discharge, release or otherwise preclude any valid right of setoff or recoupment of the United States Government. Section 13.5 enjoins all other Claimants from asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated by the Plan. *See* Plan, §13.5. Therefore, the Plan creates an inequity in creditors' ability to exercise the right to setoff.

---

[3] A PSA Creditor is an entity (listed on D.S., Exhibit 20; Plan Schedule 4) that is a party to a Plan Support Agreement and any officer or director thereof who served during the pendency of the Chapter 11 cases. Plan, § 1.126. Released Parties include, *inter alia*, the Debtors, the Independent Directors, as well as the Debtors' officers and directors serving during the pendency of the Chapter 11 cases. Plan, §1.131.

20. These provisions are improper and require further explanation in the Disclosure Statement given their significance and the disparate treatment involved. Without modification and explanation, the Plan is flawed and creditors are left to guess at the impact on their setoff rights.

E. **The Disclosure Statement Fails to Make Clear that the Debtors Are Entitled to a Right to Subrogation Only After the Creditor is Actually Paid in Full.**

21. Pursuant to Section 8.14 of the Plan, the Debtor is entitled to be subrogated to the rights of any Creditor on account of Distributions made to such Creditor and the Creditor is deemed to have consented to the subrogation of its right against any third-party, including a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution. *See* Plan, § 8.14.

22. With respect to this provision, LibertyView requests a clarification. To the extent it allows the right to subrogation prior to the Creditor being paid in full, the Debtors need to explain the basis for that right in the Disclosure Statement or modify the provision. Imposing a limitation whereby the Creditor must first be paid in full is appropriate and reasonable due to the likelihood that in these Chapter 11 Cases, Creditors' Guarantee Claims which are otherwise valid may not be paid in full by the Primary Obligors. For example, as contemplated in section 8.13(a) of the Plan, if LibertyView has an Allowed Claim on the basis of a guarantee from LBHI but LBHI believes the Claim is being paid by another entity or the payment is expected but has not yet been received, LBHI should not be afforded the status of subrogee for LibertyView. Due to the complexity of these Chapter 11 Cases as well as the SIPC Proceeding and the LBIE Administration in the U.K., prior to LBHI being able collect reasonable costs, LibertyView must first actually be made whole (i.e., be in receipt of payment). To provide otherwise in the Plan would be inequitable and would lead to increased and unnecessary costs and litigation.

## RESERVATION OF RIGHTS

23. To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, LibertyView reserves its right to assert such objection, as well as any other objections, to confirmation of the Plan. Furthermore, to the extent LibertyView generally is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan that may be filed after any Disclosure Statement or Plan confirmation objection deadline, LibertyView reserves its right to object thereto. LibertyView also reserves the right to raise further and other objections to the Disclosure Statement prior to or at the hearing thereon.

## CONCLUSION

24. Based on the foregoing, LibertyView respectfully requests that the Disclosure Statement and Plan be modified in accordance with the objections set forth above.

Dated: August 11, 2011
New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ Michael S. Etkin
Michael S. Etkin, Esq.
Scott Cargill, Esq.
Erin S. Levin, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and –

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Counsel for LibertyView*