LOWENSTEIN SANDLER PC
Michael S. Etkin
Ira M. Levee
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
212. 262.6700  (Telephone)
212. 262.7402  (Facsimile)

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the MBS Class*

**IN THE UNITED STATES BANKRUPTCY
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP)<br>Jointly Administered |
| Debtors. | Re:  Doc. Nos. 18205 and 18126 |

**MBS LITIGATION LEAD PLAINTIFF'S LIMITED
OBJECTION TO DEBTORS' DISCLOSURE STATEMENT
FOR SECOND AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED
<u>DEBTORS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE</u>**

Locals 302 and 612 of the International Union of Operating Engineers–Employers

Construction Industry Retirement Trust (the "<u>Retirement Trust</u>"), the court-appointed lead

plaintiff (the "<u>Lead Plaintiff</u>") in the consolidated securities class action pending in the United

States District Court for the Southern District of New York (the "<u>District Court</u>") entitled *In re*

*Lehman Brothers Mortgage Backed Securities Litigation*, Case No. 08-6762 (LAK) (the "<u>MBS</u>

Litigation"),[1] by and through its undersigned counsel, submits this limited objection (the "Objection") to the Debtors' Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Doc. No. 18205] (the "Disclosure Statement"), and states the following:

## BACKGROUND

**A.    The MBS Litigation**

1.    On July 23, 2009, a class action entitled *New Jersey Carpenters Health Fund, et al. v. Lehman XS Trust Series 200S-5N, et al.*, was filed in the Supreme Court of the State of New York, County of New York.  On July 29, 2008, defendants Lehman Brothers, Inc. ("LBI") and Structured Asset Securities Corporation ("SASCO", one of the Debtors herein), removed the action to the District Court pursuant to 28 U.S.C. §§1441 and 1446.  The case was assigned Case No. 08-6762.  Thereafter, another case (08-10686) asserting similar causes of action was filed.

2.    On December 31, 2008, the Retirement Trust moved for appointment as lead plaintiff in the MBS Litigation cases.  On January 9, 2009, Judge Lewis A. Kaplan, U.S.D.J., entered an order consolidating Case No. 08-10686) with Case No. 08-6762 and appointing the Retirement Trust as Lead Plaintiff.  On February 23, 2009, Lead Plaintiff, together with New Jersey Carpenters Health Fund ("Carpenters") and Boilermakers-Blacksmith National Pension Trust ("Boilermakers"), on their own behalf and as a class on behalf of all persons and entities (the "MBS Class") who purchased or otherwise acquired interests in the Issuing Trusts (identified in ¶ 32 of the Operative Complaint, defined below) pursuant or traceable to false and misleading Registration Statements with accompanying Prospectuses filed with the SEC by

---

[1]    By order of the Judicial Panel on Multidistrict Litigation, the MBS Litigation has been consolidated with a number of other federal actions against Lehman Brothers Holdings, Inc. and other defendants under the caption *In re Lehman Brothers Securities and ERISA Litigation*, Master Case No. 09-MD-2017 (LAK).

SASCO on September 26, 2005 and August 8, 2006, filed a consolidated securities class action complaint (the "Operative Complaint").

3.      The defendants in the MBS Litigation[2] are Mark L. Zusy, Samir Tabet, James J. Sullivan, Lana Franks, Edward Grieb, Kristine Smith and Richard McKinney (the "Individual Defendants") and ratings agency underwriters (the "Underwriter Defendants", together with the Individual Defendants the "Non-Debtor Defendants").

4.      In summary, the MBS Litigation arises from the role of LBHI and LBI, among others, in the conversion of hundreds of thousands of primarily subprime "Alt-A" residential mortgages into $93.24 billion of purportedly instrument grade residential mortgage backed securities, which were then sold to Lead Plaintiff and members of the MBS Class pursuant to the relevant offering documents.  Among other allegations, the Operative Complaint alleges that the relevant offering documents contained material misstatements and omitted material information in violation of Sections 11, 12 and 15 of the Securities Act of 1933.

5.      On February 5, 2010, the District Court entered an Order granting motions to dismiss the MBS Litigation as to the Underwriter Defendants.  That Order is currently on appeal to the Second Circuit Court of Appeals.  On February 17, 2010 (as amended on February 24, 2010), the District Court granted in part and denied in part, the Individual Defendants' motions to dismiss the MBS Litigation.

**B.      The Chapter 11 Case.**

6.      On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  On and after the Petition Date, SASCO and other affiliates of LBHI (together with LBHI, the "Debtors") also filed petitions for

---

[2]      By virtue of these chapter 11 cases, the MBS Litigation is stayed against the Debtors; thus, the Operative Complaint, which was filed in the MBS Litigation after the Petition Date, does not assert claims against any of the Debtors.  As set forth in paragraph 8, *infra*, Lead Plaintiff timely filed a proof of claim against LBHI for damages based in large part on the claims asserted in the Securities Litigation.

relief under Chapter 11.  The Debtors' Chapter 11 Cases are being administered jointly in this Court.

7.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108(a).

8.      On September 21 and 22, 2009, Lead Plaintiff, individually and on behalf of the MBS Class, Carpenters and Boilermakers timely filed individual and Class Proofs of Claim (the " MBS Securities Claims") for claims arising out of the Debtors' violations of federal securities laws as described in the MBS Litigation.

9.      On July 1, 2011, the Debtors filed their Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliates [Doc. No. 18204] (the "Plan"), together with the Disclosure Statement.[3]   On June 29, 2011, the Debtors filed the Amended Motion for approval of the Disclosure Statement and related relief.   [Doc. No. 18126] (the "Disclosure Statement Approval Motion").  The hearing on the Disclosure Statement Approval Motion is scheduled for August 30, 2011.

## OBJECTION

10.      A  disclosure  statement  may  be  approved  as  adequate  only  if  it  contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."  11 U.S.C. §1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must

---

[3]      Previously, the Ad Hoc Group of Lehman Brothers Creditors and the Non-Consolidation Plan Proponents filed alternative competing Plans and Disclosure Statements.  On July 21, 2011, this Court entered an Order approving the stipulation by the alternative plan proponents whereby the Ad Hoc Group and the Non-Consolidation Plan Proponents agreed to, *inter alia*, hold in abeyance and not prosecute their proposed alternative plans, subject to a termination event as defined in the stipulation.  Lead Plaintiff reserves its rights in the event either of the alternative plan proponents attempts to prosecute an alternative plan.

contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan). Courts have ample discretion to determine what constitutes adequate information. *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed, in part, and affirmed, in part*, by 184 B.R. 648 (S.D. N.Y. 1995), citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Although adequacy is determined on a case-by-case basis under a fact-specific flexible standard, *id*., a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

11.    Lead Plaintiff believes that in certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain broad and ambiguous provisions and/or omit material facts that (i) may mislead holders of claims or interests or (ii) should be available to holders of claims or interests.

12.    *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, Lead Plaintiff reserves its right to assert such objection, as well as any other objections, to confirmation of the Plan. Furthermore, to the extent Lead Plaintiff or any member of the putative MBS Class is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan, which may be filed*

*after any Disclosure Statement or Plan confirmation objection deadline, Lead Plaintiff*

*reserves its right to object thereto.*

13.    Lead Plaintiffs objects to the adequacy of the Disclosure Statement and to the Plan (subject to the above reservation of rights) on the following grounds:

(a)    the Disclosure Statement fails to provide a description of the MBS Litigation, including its current status and its potential impact on the estate;

(b)    the Disclosure Statement fails to describe and the Plan fails to provide an adequate protocol for the preservation and/or destruction of the Debtors' records or documents;

(c)    the Disclosure Statement does not provide any basis for the extension of stays or injunctions for a period beyond the Effective Date and such extension is inappropriate and prejudicial to Lead Plaintiff;

(d)    the Disclosure Statement fails to adequately describe available insurance as it relates to the Claims of Lead Plaintiff and the putative MBS Class asserted in the Chapter 11 Cases and in the MBS Litigation or disclose whether the Plan intends to deny Lead Plaintiff and the MBS Class the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions, discharge or distribution under the Plan;

(e)    the Plan Release and Injunction provisions are overly broad and ambiguous and unless they clearly and affirmatively exclude Claims of Lead Plaintiff and members of the MBS Class against the Non-Debtor Defendants and any other non-Debtors, may be improper, and;

(f)        the Disclosure Statement and Plan do not provide for the classification and treatment of the MBS Securities Claims.

14.        In order to bring the Disclosure Statement into compliance with 11 U.S.C. §1125(a), the Disclosure Statement and Plan must be modified.  Unless and until the Plan and Disclosure Statement are revised, the Disclosure Statement should not be approved.

**A.        The Disclosure Statement Must Provide a Complete and Accurate Description of the MBS Litigation, Including Its Current Status.**

15.        The Disclosure Statement fails to provide a complete and accurate description of the MBS Litigation and its impact (if any) on distributions to creditors.  The Disclosure Statement should include a description of the nature of the claims asserted in the MBS Litigation, identify the defendants and their relationship to the Debtors, the current status of the MBS Litigation and the potential impact on the estate of the claims asserted in the MBS Litigation.

16.        Indeed, the Disclosure Statement does not even refer to the MBS Litigation.  The allegations asserted or to be asserted in the MBS Litigation are significant and relevant as well as the potential liability of the Debtors' estates.  The status of the MBS Litigation must be included in the Disclosure Statement so that creditors are adequately informed as to its existence and potential effect.

17.        Other than the SIPA Proceeding, the Disclosure Statement fails to disclose the existence and results of any governmental regulatory investigations or inquiries involving the Debtors, which should be disclosed to afford creditors and other parties in interest full disclosure of not only such events preceding the Chapter 11 filing, but also those pending after the filing. Indeed, if there are no such pending investigations, that should be affirmatively disclosed.

**B.      The Disclosure Statement Fails to Describe and the Plan Fails to Provide an Appropriate Mechanism for the Preservation of Documents.**

18.      Under certain circumstances, the Plan Administrator is authorized to establish a liquidating trust for a Debtor in order to liquidate and distribute that Debtor's assets.  *See* Disclosure Statement ("D.S."), §X.I.1; Plan, §§10.1 and 10.2.  A liquidating trust shall be dissolved no later than three (3) years from its creation (subject to a three (3) year extension).  D.S., §X.I.4; Plan §10.10.

19.      The Plan Administrator shall continue the operations of those Debtors, for which a liquidating trust is not established, until such time as the Plan Administrator determines to dissolve the Debtor and wind down its operations.  D.S., §X.D.1; Plan, §§7.5 and 7.6.  Although the Plan appears to provide for the continued corporate existence of the Debtors, D.S., §§X.D.1 and XII.5; Plan, §7.5, it also provides for the ultimate dissolution and winding down of each Debtor within the sole discretion of the Plan Administrator.  D.S., *id*; Plan, §7.6.  For all intents and purposes, this is a liquidating Plan.  There appears to be no "reorganized debtor".

20.      Although the Plan Administrator is charged with maintaining the books and accounts of the Debtors upon the Effective Date,[4] D.S., § X.D.3.a(vii); Plan, §6.1(b)(vii), the Plan fails to provide for a protocol for the preservation or abandonment of the Debtors' assets, including books, records, accounts and other documents, in any format (*e.g.*, electronic or hard copy) (collectively, "Documents") after the Plan Administrator determines (in its sole discretion) to dissolve or wind-down a Debtor, the duties of the Plan Administrator are terminated or the Debtors' assets are transferred to a liquidating trust.

21.      Indeed, whether the Debtors' assets are within the control, possession or custody of the Plan Administrator or a liquidating trustee, a document preservation protocol must be

---

[4]      During the Chapter 11, the Debtors are compelled to maintain and preserve their assets unless authorized by the Court to abandon them after notice and a hearing.  11 U.S.C. §554(a).

established to prevent the destruction or abandonment of Documents, especially where the Documents may include critical information relevant to the MBS Litigation and/or the MBS Securities Claims, and may not be available elsewhere.

22.    The absence of such a protocol prejudices the rights of Lead Plaintiff, members of the MBS Class and other parties in interest.  At the very least, some mechanism for providing notice and an opportunity to be heard by this Court or a court of competent jurisdiction must be established before any such Documents are abandoned, destroyed or rendered otherwise unavailable.

23.    The Debtors, the Plan Administrator and any liquidating trustees must advise parties in interest through the Plan of their intention with respect to the Documents.  Therefore, the Plan should include the following language:

> From and after the Effective Date, the Debtors, the Plan Administrator, any Liquidating Trustee or any transferee of the Debtors' Documents (defined *infra*) shall preserve and maintain all of the Debtors' books, records, documents, files, electronic data (collectively, the "Documents"), and the Debtors, the Plan Administrator, any Liquidating Trustee and any other transferee of the Documents shall not destroy or otherwise abandon any such Documents absent further order of this Court, or a court of competent jurisdiction, after a hearing on notice to parties in interest, including Lead Plaintiff, with an opportunity to be heard.

24.    To the extent the Debtors do not intend to preserve or provide for the preservation of the Documents or object to the inclusion of the foregoing language in the Plan or in any order confirming the Plan, the Disclosure Statement should explain why.

**C.    The Extension of Stays and Injunctions under the Plan is Inappropriate and Prejudicial.**

25.    Pursuant to the Plan, stays and injunctions pursuant to 11 U.S.C. §105 or 362, extant on the Confirmation Date remain in effect until the closing of *all* of the Chapter 11 cases. D.S., §X.H.6; Plan, §13.7.  There are more than twenty (20) Debtors.  Plan, §1.38.

26.    A case cannot be closed until after it has been fully administered and the Plan Administrator has obtained authority from the Court to close the Case.  Plan, §6.6.  Therefore, the extension of stays and injunctions are not fixed and no outside date is even suggested, and remains within the control of the Plan Administrator.

27.    Pursuant to the Plan, the Plan Administrator is authorized to prosecute all of the Debtors' Causes of Action (Litigation Claims).  D.S., § X.D.3.a(iv); Plan, §6.1(a)(iv).  To the extent these Litigation Claims include the Estates' causes of action against the Debtors' current and/or former officers and directors, underwriters or others, they may have some of the same factual predicates as the claims of Lead Plaintiff arising from the allegations in the MBS Litigation.

28.    Because of the Plan's indefinite extension of stays and injunctions, the Plan Administrator can prevent or, at the very least, significantly delay Lead Plaintiff from ever obtaining access to relevant discovery, while pursuing these competing Estate claims.  Indeed, there is no basis for the Plan Administrator to be able to assert the automatic stay (as a sword, not a shield) beyond the Effective Date of the Plan to frustrate Lead Plaintiff's ability to obtain relevant documents in the MBS Litigation, while having those documents available to pursue its own claims.  This is precisely the type of offensive use of the automatic stay that courts refuse to tolerate.  *Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. LEXIS 24828, *13 (E.D. Pa. 1986), citing *Bohack corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1979) (finding that a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where the debtor is in the position of assailant rather than victim").  Indeed, "[o]ur system of laws universally frowns on a party that would use the stay as both a sword and a shield."  *In re A.H. Robbins & Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983)

(accepting the view that the bankruptcy protective shield should not be unfairly converted into a sword of aggression); *see also Maritime Electric Co. v. Untied Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).

29.    The Disclosure Statement provides no explanation to justify any extension of the automatic stay (or other stays or injunctions) beyond the Plan Effective Date or the entry of the Order confirming the Plan.  The automatic stay should not be available to the Plan Administrator or any liquidating trustee for an extended period of time to frustrate the prosecution of the claims of Lead Plaintiff against common defendants to gain a fundamentally unfair litigation advantage.

**D.    The Disclosure Statement Fails to Adequately Describe Available Insurance as It Relates to the Claims of Lead Plaintiff and the MBS Class Asserted in the Chapter 11 Cases and in the MBS Litigation or Disclose Whether the Plan Intends to Deny Lead Plaintiff the Right to Proceed with its Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan.**

30.    Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies") in favor of their directors and officers for claims asserted in the MBS Litigation, as well as for claims against the Debtors directly for violations of federal securities laws.  The Disclosure Statement fails to specifically identify any D&O Policies or to disclose the extent of the coverage provided by such D&O Policies and those parties who may have a right to access the proceeds thereof.[5]  The Disclosure Statement should provide such information.

31.    Lead Plaintiff maintains that the MBS Class is entitled to look to the proceeds of such insurance for payment in connection with the claims of Lead Plaintiff and the MBS Class and may, at least, pursue these Claims against the Debtors to the extent of such available insurance post-Confirmation.  Because Lead Plaintiff may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be

---

[5]    The Plan provides that to the extent any insurance policy constitutes an executory contract, it shall be deemed assumed under the Plan.  D.S., §X.F.4; Plan, §11.5.

accessed through the pursuit of the claims asserted in the MBS Litigation.  Accordingly, the Plan

should not impact the rights of Lead Plaintiff or the MBS Class to pursue their claims against the

Debtors to the extent of the proceeds of the D&O Policies.

32.    Therefore, the Plan and Disclosure Statement should provide that:

> Nothing in the Plan, or in any Order confirming the Plan, shall
> preclude Lead Plaintiff and the putative MBS Class from pursuing
> their Claims against the Debtors to the extent of available
> insurance coverage and proceeds.  The Claims of Lead Plaintiff
> and the putative MBS Class against the Debtors, to the extent of
> available insurance, are preserved and not discharged by the Plan.

**E.    The Plan Release and Injunction Provisions Appear Overly Broad and Ambiguous
and Therefore Should Clearly and Affirmatively Exclude the Claims of Lead
Plaintiff and the Putative MBS Class Against Non-Debtors.**

33.    The Disclosure Statement describes, and the Plan provides, for the release of, and

to the extent released, the permanent injunction of, Claims of entities which held, hold or may

hold Claims against or Interests in the Debtors, against certain non-Debtors, including some of

the Individual Defendants in the Securities Litigation.  D.S., §X.H.1 and 3; Plan, §13.3 and 13.5.

The Plan releases Claims against Released Parties and the PSA Creditors.  Released Parties

include, *inter alia*, the Debtors, the Independent Directors, as well as the Debtors' officers and

directors serving during the pendency of the Chapter 11 Cases.  Plan, §1.131.  The Individual

Defendants were officers and/or directors of one or more of the Debtors and may have served in

that capacity during the pendency of the Chapter 11 Cases.  A PSA Creditor is an entity (listed

on D.S., Exhibit 20; Plan Schedule 4) that is a party to a Plan Support Agreement and any officer

or director thereof who served during the pendency of the Chapter 11 cases.  Plan, §1.126.

34.    While the Plan appears to release only those claims for acts taken or omitted to be

taken during the Chapter 11 Cases and excludes claims for acts taken or omitted to be taken prior

to the Commencement Date (September 15, 2008), D.S. §X.H.1; Plan §13.3, to the extent that

some of the Claims asserted in the MBS Litigation against Non-Debtor Defendants may have

arisen on or after the Commencement Date, the release is improper.  Furthermore, as stated above, the terms of service of the Individual Defendants may result in the release of claims, which is not permissible (*see* ¶37, *infra*).

35.    Likewise, to the extent a Claim or Cause of Action is released, the Plan Injunction permanently enjoins such holders of Claims against or Interests in the Debtors from commencing, continuing or conducting in any manner any proceeding against a Released Party. D.S., §X.H.3; Plan, §13.5.  Because the Plan Injunction provision is directly related to the Plan Release provision, to the exent the Plan Release provision is deemed improper (*see* ¶34, *supra*), the Plan Injunction should likewise not be permitted.

36.    The Plan release and injunction are ambiguous to the extent they may be interpreted to impact, enjoin, prohibit and/or preclude Lead Plaintiff from asserting Claims in the MBS Litigation or seeking discovery post-Effective Date.    The Plan offers no basis or justification for such broad release and injunction provisions which are justified, if at all, only in the most extraordinary and unusual circumstances, none of which exist or have been demonstrated herein.

37.    As a result of the ambiguous language of the aforesaid Plan provisions, non-debtors who, in the absence of unusual circumstances are not entitled to the protections of the Bankruptcy Code, may very well benefit therefrom.    Therefore, to the extent any of Lead Plaintiff's claims in the MBS Litigation may be subject to the Plan Injunction and/or Release provisions, the provisions are improper.  *See Deutsche Bank AG London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005) (holding that non-debtor releases are proper only in rare cases and may be "tolerated only if the affected creditor consents").

38.    Furthermore, any discharge of the Debtors provided by the Plan is improper.  As previously stated (¶19, *supra*), despite the purported continued corporate existence of a Debtor (until the Plan Administrator determines to dissolve or wind down that Debtor), this is no more than a liquidating plan.  Pursuant to 11 U.S.C. §1141(d)(d), confirmation of a plan does not discharge a liquidating debtor.  Therefore, any provision of the Plan purporting to grant a discharge is improper and must not be allowed.  *See* D.S., §X.H.2; Plan, §13.4 (purporting to discharge the Debtors).

39.    If it is the Debtors' intent to release and enjoin third-party claims against non-Debtors, including any of the claims asserted in the MBS Litigation, then the Disclosure Statement should make that clear.  If, on the other hand, the Debtors do not intend such impermissible releases, the following language should be included in the Disclosure Statement and the Plan should be modified accordingly:

> Nothing in the Plan or in any order confirming the Plan shall or is intended to (i) affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any Non-Debtor Defendants in the MBS Litigation or any non-Debtor, or (ii) preclude Lead Plaintiff and/or the MBS Class from seeking discovery from the Debtors, the Plan Administrator or such other transferee of the Debtors' assets.

**F.    The Disclosure Statement and Plan Fail to Provide for the Classification and Treatment of the MBS Securities Claims.**

40.    Based upon the description of the various Plan classes, it is unclear how the Debtors intend to classify and treat the MBS Securities Claims.  Until such time as the classification and ultimate treatment of mortgage backed securities claims is made clear, Lead Plaintiff cannot take a position with respect thereto and reserves its rights to object to the classification and treatment of the MBS Securities Claims and any subsequent disclosure with respect thereto.

41.     While this may be an issue left for confirmation, any proposed classification and treatment of the MBS Securities Claims should be addressed now or, at the very least, as a matter of disclosure.

## CONCLUSION

42.     Based on the foregoing, Lead Plaintiff respectfully requests that an order be entered (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 11, 2011
      New York, New York              Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: */s/ Michael S. Etkin* _____
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York  10022

-- and --

65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the MBS Class*

-- and --

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman
Christopher Lometti
Daniel B. Rehns
88 Pine Street, 14th Floor
New York, New York  10005
212.838.7797 (Telephone)
212.838.7745 (Facsimile)

*Lead Counsel for Lead Plaintiff and the MBS Class*