**Objection Deadline: August 11, 2011 at 4:00 p.m. (Eastern)**
**Hearing Date and Time: August 30, 2011 at 10:00 a.m. (Eastern)**

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel. (212) 506-2500
Fax (212) 262-1910
Jeffrey G. Tougas (JT-5533)
Christine A. Walsh (CW-2727)

*COUNSEL TO SUMITOMO MITSUI BANKING CORPORATION*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**OBJECTION OF SUMITOMO MITSUI BANKING CORPORATION, PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE, TO DEBTORS' DISCLOSURE STATEMENT IN CONNECTION WITH DEBTORS'**
**SECOND AMENDED JOINT CHAPTER 11 PLAN**

**TO:  THE HONORABLE JUDGE JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE:**

Sumitomo Mitsui Banking Corporation ("**SMBC**"), by and through its undersigned attorneys, hereby objects to approval of the Debtors' proposed Disclosure Statement in connection with the Debtors' Second Amended Joint Chapter 11 Plan (the "**Disclosure Statement**," or "**DS**") [Docket No. 18205], dated June 30, 2011 and filed on July 1, 2011, by

700382607

Lehman Brothers Holdings Inc. ("**LBHI**") and its affiliated debtors (collectively, with LBHI, the "**Debtors**").[1] In support thereof, SMBC respectfully states as follows:

## PRELIMINARY STATEMENT

The Bankruptcy Court should deny approval of the Disclosure Statement because it fails to meet the requirements for approval of section 1125 of the Bankruptcy Code.

The Disclosure Statement fails to disclose material information that is necessary to enable SMBC -- and other impaired creditors -- to understand the Debtors' proposed approach[2] to valuation under the Plan of their respective claims on account of Derivatives Contracts. Such inadequate disclosure falls within a number of categories.

Moreover, because the Plan violates the Absolute Priority Rule, it is, on its face, patently unconfirmable.

## BACKGROUND

1. On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

2. On various dates thereafter, LBHI's affiliated Debtors in these cases filed voluntary petitions for relief under the Bankruptcy Code, whereupon, the Debtors' cases were administratively consolidated by the Bankruptcy Court.

3. On July 2, 2009, the Bankruptcy Court entered its Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings assigned to such terms in the Disclosure Statement.

[2] SMBC reserves all of its rights and remedies under all documentation giving rise to its claims in these cases including, without limitation, all state-law rights and remedies relating to the calculation of SMBC's damages arising upon the default of one or more of the Debtors thereunder.

Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "**Bar Date Order**") in these cases.

4. On June 29, 2011, the Debtors filed their Amended Motion (i) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan (the "**Disclosure Statement Motion**") [Docket No. 18126].

5. On July 1, 2011, the Debtors filed the Plan and the Disclosure Statement with the Bankruptcy Court seeking the Bankruptcy Court's approval of the Disclosure Statement [Docket Nos. 18204 and 18205].

6. On July 6, 2011, the Bankruptcy Court entered its Order to Show Cause and Notice Fixing the Objection Deadline, Reply Deadline, And Hearing Date On the Disclosure Statement Motion [Docket No. 18292].

7. On July 13, 2011, the Debtors filed their supplement to the Disclosure Statement Motion [Docket No. 18497].

8. Having filed proofs of its claims in these cases in compliance with the Bar Date Order, SMBC is the holder of multiple claims, against certain of the Debtors, in an aggregate amount in excess of one billion dollars.

## ARGUMENT

**I.   The Disclosure Statement cannot be approved because it does not disclose adequate information, a requirement of the Bankruptcy Code.**

9. Section 1125 of the Bankruptcy Code defines "**adequate information**" as:

> *information of a kind, and in sufficient detail*, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, *that*

> *would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.*

11 U.S.C. § 1125 (emphasis added).

10. The Disclosure Statement does not allow SMBC to make an informed decision whether to accept, or reject, the Plan. For example, the Disclosure Statement does not give SMBC sufficient information to value those of SMBC's claims that arise out of Derivatives Contracts and guarantees thereof. To the extent that certain of the Debtors have entered into settlement agreements with certain of their Derivatives Contract creditors, the terms of such agreements are not disclosed. The only "disclosure" that is made with respect to these settlement agreements is that they were settled pursuant to something that is variously referred to as a "Derivatives Framework Value" [DS at p. 5], a "Modified Framework Value," [DS at p. 45], and a "Framework Value" [DS at p. 45]. As a result, SMBC -- and other creditors under Derivative Contracts -- are given insufficient disclosure as to how the Debtors intend to approach valuation of their Derivatives Contract claims.

11. The Disclosure Statement states that "[t]he Debtors anticipate filing additional objections addressing a substantial portion of the remaining filed proofs of claim" [DS at p. 41]. The Disclosure Statement also states that, in the case of the Big Bank Counterparties, any that do not accept the Debtors' settlement proposal will be subjected to a "vigorous contest" pursuant to which the Debtors will seek to reduce such claims to amounts "lower than those proposed in the Derivatives Framework" [DS at p. 45]. The "Derivatives Claims Settlement Framework," dated May 27, 2011, is no longer a formal element of the Plan. SMBC is, therefore, without Disclosure Statement guidance as to how the Debtors will approach Derivative Contract-based claims valuation.

12. Certain aspects of these cases remain undisclosed. For example, such settlement agreements as have been reached, whether:

- with certain Big Bank Counterparties;
- the parties to the "Dante" litigation;
- regarding the Racers Claims -- we are simply told that the Racers 2007-A Trust will "have" Allowed Claims against certain of the Debtors in the aggregate amount of almost $9 billion; or
- with certain of the Debtors' foreign affiliates – we are simply told that LBT will "have" an Allowed Senior Affiliate Claim against LBHI in the amount of $34.5 billion;

or otherwise, are generally on undisclosed terms. As a result, SMBC is not informed as to whether the proposed allowed amount of its Derivatives Contract-based claims -- once SMBC learns what it will be -- is "fair and equitable" when compared with the proposed allowed amount of other general unsecured creditors' Derivatives Contract-based claims, or whether it has been "unfairly discriminated against" under the Plan. Section 1129(b) requires transparency on such matters.

13. The Debtors disclose that allocation of costs and expenses of the Debtors, now over $1 billion, will be the subject of a future agreement. Given the scale of the costs and expenses in these cases, the allocation thereof across the Debtors' estates, a material item, should be expressed, at least, as a formula under the Disclosure Statement.

14. It is disclosed that the Debtors will not contest the validity or enforceability of the guarantee related to any Third-Party Guarantee Claim based on a Structured Security Issued by LBT [DS at p. 5]. Elsewhere in the Disclosure Statement, it is disclosed that "the Debtors have

significant defenses to the enforceability of many of the asserted Guarantee Claims." The amount of the LBT guarantee claims is a multi-billion dollar determination by the Debtors, which SMBC and other creditors may, or may not, support. There is inadequate information disclosed with respect to this item.

**15.** The Debtors disclosure of their proposed treatment of Intercompany-Only Repurchase Transactions is inadequate. Creditors learn from the Disclosure Statement that, as of the Commencement Date, there were open repos between LBHI, as seller, and LCPI, as buyer, with an unpaid purchase price of over $4 billion [DS at p. 48]. The Debtors disclose that the Debtors "are treating" these particular repos as secured loans, rather than true sales. Such treatment results in a substantial financial benefit to LCPI creditors [DS at p. 48]. Other repos, however, between LBHI, as seller, and LCPI, as buyer, are characterized as ones with respect to which "LCPI has a valid and enforceable security interest." [DS at p. 48]. Creditors are left to determine whether there were two sets of repos between LBHI and LCPI -- one set with plainly-evident, valid and enforceable security interests, and one set where "intent" and "circumstances" had to be examined to find a lien. The dichotomy suggests that the intent of the parties with respect to the second set was to create other than secured loans, *i.e.*, simple repos. The Disclosure Statement leads creditors to the conclusion that LBHI and LCPI knew how to create a valid and enforceable security interest when they wanted to do so. Disclosure as to the judgment call made by the Debtors here does not rise to the level of "adequate information" with respect to this large item.

**16.** The Disclosure Statement indicates that LAMCO has played, and will continue to play, a major role in the administration of the Debtors' estates. LAMCO is a wholly-owned subsidiary of LBHI, but is not a Debtor in these cases. Accordingly, creditors may conclude that

LAMCO's fees and expenses are not subject to allocation under the to-be-entered "allocation agreement" among the Debtors. Since LAMCO does not file fee applications with the Bankruptcy Court, creditors do not receive disclosure of adequate information about the nature and extent of LAMCO's historical and *pro forma* compensation, or how it will be allocated.

17. Section 1129(a)(7)(A)(ii) requires the Debtors to perform an analysis of a hypothetical liquidation under chapter 7 of the Bankruptcy Code in order to demonstrate that each holder of a claim in the same class "will receive … under the plan on account of such claim … property of a value … that is not less than the amount that such holder would so receive … if the debtor were liquidated under chapter 7 [of the Bankruptcy Code]". Although valuing returns in a hypothetical chapter 7 liquidation, especially cases of this size and complexity, is, by its very nature, speculative, courts nonetheless require that any such valuation must be based on "evidence, not assumptions." *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990) (citation omitted); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. S.D.N.Y. 1988) ("[T]he Court is reluctant to approve a Disclosure Statement premised on an unsupported and self-serving valuation …."); *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) (holding that "while the debtor cannot be expected to unerringly predict the future," conclusory allegations or opinions without supporting facts are generally not sufficient). The Disclosure Statement's language that "THE PLAN AFFORDS SUBSTANTIALLY GREATER BENEFITS TO HOLDERS OF IMPAIRED CLAIMS THAN WOULD…LIQUIDATION UNDER ANY CHAPTER OF THE BANKRUPTCY CODE" is unsubstantiated. [DS at p. 137 (all caps in original)]. The "Liquidation Analysis for Each Debtor," contained in Exhibit 5 to the Disclosure Statement, is based on an extensive set of assumptions that are insufficiently supported. Because the Disclosure Statement falls short of

700382607                                                    7

providing a meaningful analysis with respect to liquidation under chapter 7 of the Bankruptcy Code, the Bankruptcy Court should not approve the Disclosure Statement unless and until the mandatory liquidation analysis is appropriately supplemented and its numerous assumptions shown to be reasonable.

**18.**  The harm in failing to provide adequate information to creditors is elementary: without it, no creditor can assess, among other things, whether the Plan is feasible or offered in good faith, or whether proposed plan distributions amount to fair and equitable treatment.  *See In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991).  ("The purpose of a disclosure statement is to provide adequate information to creditors to enable them to decide whether to accept or reject the proposed plan.").  The requirement that a disclosure statement contain adequate information has been described as "the very heart of the consolidation of the various reorganization chapters." *Id*. at 788-89 (citing H.R. Rep. 95-595, 95th Cong. 1st Sess. 408 (1977)); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983).  ("The key to the reorganization Chapter, therefore, is disclosure").  A disclosure statement may not serve simply as a "sales brochure" proclaiming the virtues of a particular plan, but must make a balanced presentation.  *In re Egan*, 33 B.R. 672, 675-76 (Bankr. N.D. Ill. 1983) (A disclosure statement "is not intended to be an advertisement or a sales brochure."); *see also In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) ("Conclusory allegations or opinions without supporting facts are generally not acceptable" in a disclosure statement.).  In short, the Disclosure Statement lacks sufficient detail to enable SMBC and other creditors to evaluate the real economic substance of the Plan.  Congress left to each court's discretion the determination of what constitutes adequate information.  As SMBC sets forth herein, the Bankruptcy Court has a sufficient basis to deny approval of the Disclosure Statement because it presents a Plan that does not comply with section 1129 of the Bankruptcy

Code and because the Disclosure Statement, in any event, lacks sufficient detail, as required by section 1125 of the Bankruptcy Code to enable SMBC and other creditors to evaluate the real economic substance and viability of the Plan.

II. **The Disclosure Statement cannot be approved because the Plan violates the Absolute Priority Rule and is, therefore, not confirmable on its face.**

19. The Disclosure Statement cannot be approved because the Plan is not confirmable on its face. *See In re Unichem Corp.,* 72 B.R. 95 (Bankr. N.D. Ill. 1987) ("Although the issue of whether a plan meets the requirements of § 1129(a) is usually reserved for the hearing on confirmation … it is appropriate for the court to consider the issue at the hearing on the disclosure statement … where it is readily apparent that the plan accompanying the disclosure statement could never legally be confirmed."); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures.") (citations omitted); *In re O'Leary*, 183 B.R. 338, 338-39 (Bankr. D. Mass. 1995) ("[C]ourts may refuse to approve disclosure statements that describe plans that cannot be confirmed.").

20. Because of its "Plan Adjustments," "compromises," "contributions," and "reallocations," (which are, themselves, inadequately disclosed) the Plan violates the Absolute Priority Rule. One of several examples of this is the Plan's ultimate impermissible redistribution to equity (LBHI) of value that should, under well-settled authority in this Circuit, be distributed to general unsecured creditors of LBSF.

21. The Bankruptcy Code permits the confirmation of a chapter 11 plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or

interests that is impaired under, and has not accepted, the plan." 11 U.S.C. §1129(b)(1). The "Absolute Priority Rule" requires that:

> "With respect to a class of unsecured claims -- (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest *any* property…"

11 U.S.C. §1129(b)(2)(B)(i-ii) (emphasis supplied).

22.   The Absolute Priority Rule bars junior classes of claims or interests from receiving any property when all senior classes of claims are not paid in full. *See id*. "Absent the consent of all impaired classes of unsecured claimants, therefore, a confirmable plan must ensure either (i) that the dissenting class receives the full value of its claim, or (ii) that no classes junior to that class receive any property under the plan on account of their junior claims or interests." *In re DBSD N. Am.*, 634 F.3d 79, 95 (2d. Cir. 2011).

23.   The redistribution of value under the Plan violates the Absolute Priority Rule, deeming the Plan facially unconfirmable. For example, the general unsecured class of LBSF is not receiving full value on account of its allowed claims because of a reallocation to LBSF's equity holder (LBHI). It is axiomatic that no class junior to the general unsecured class of LBSF is permitted to receive value (assuming that the class does not vote in favor of the Plan). Few legal rules are so universally recognized as to be referred to as "absolute." The payment of any amount to equity before debt is absolutely prohibited. *See id*. at 93-97; *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 US 434, 450 (1999).

## CONCLUSION; RELIEF REQUESTED

The Disclosure Statement is inadequate and is made in respect of a Plan that is unconfirmable on its face.

**WHEREFORE**, SMBC respectfully requests that the Bankruptcy Court enter an order (i) denying approval of the Disclosure Statement, (ii) denying approval of the Disclosure Statement Motion, and (iii) granting such other relief as is necessary or appropriate.

Dated: New York, New York
August 11, 2011

Respectfully submitted,

/s/  Jeffrey G. Tougas

Jeffrey G. Tougas (JT-5533)
Christine A. Walsh (CW-2727)
**MAYER BROWN LLP**
1675 Broadway
New York, New York 10019
(212) 506-2500 (phone)
(212) 262-1910 (fax)

*Counsel to Sumitomo Mitsui Banking Corporation*

\*   \*   \*