Hearing Date and Time: August 30, 2011 at 10:00 a.m.
Objection Deadline: August 11, 2011 at 4:00 p.m.

LOWENSTEIN SANDLER PC
Michael S. Etkin
Ira M. Levee
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
212. 262.6700  (Telephone)
212. 262.7402  (Facsimile)

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs*

**IN THE UNITED STATES BANKRUPTCY
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (JMP)<br>Jointly Administered |
| Debtors. | Re: Doc. Nos. 18205 and 18126 |

**SECURITIES LITIGATION LEAD PLAINTIFFS' LIMITED
OBJECTION TO DEBTORS' DISCLOSURE STATEMENT
FOR SECOND AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED
DEBTORS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local Government Officers' Superannuation Committee, City of Edinburgh Council as Administering Authority of the Lothian Pension Fund and Operating Engineers Local 3 Trust Fund, the court-appointed lead plaintiffs (collectively, the "Lead Plaintiffs") in the consolidated securities class action pending in the United States District Court for the Southern District of New York (the "District Court") entitled *In re Lehman Brothers*

*Equity/Debt Securities Litigation*, Case No. 08-05523 (LAK) (the "Securities Litigation")[1], by and through their undersigned counsel, submit this limited objection (the "Objection") to the Debtors' Disclosure Statement for Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Doc. No. 18205] (the "Disclosure Statement"), and states the following:

## BACKGROUND

**A.    The Securities Litigation**

1.    On April 29, 2008, a securities class action styled *Southeastern Pennsylvania Transportation Authority v. Lehman Brothers Holdings Inc., et al.*, No. 08-CV-2431, was filed in the Northern District of Illinois against LBHI[2] and certain of its officers. On June 18, 2008, the Securities Litigation was commenced in the District Court. Conforming to the lead plaintiff deadlines established by the Private Securities Litigation Reform Act of 1995 and repeated in the notices circulated in connection with the *Southeastern Pennsylvania Transportation Authority* action on June 30, 2008, Lead Plaintiffs moved for appointment as lead plaintiffs in the Securities Litigation. On July 31, 2008, Judge Lewis A. Kaplan, U.S.D.J., entered an order appointing Lead Plaintiffs and approving Lead Plaintiffs' selection of counsel. On April 23, 2010, Lead Plaintiffs filed the third amended class action complaint (the "Operative Complaint") with the District Court.

---

[1]    By order of the Judicial Panel on Multidistrict Litigation, the Securities Litigation has been consolidated with a number of other federal actions against Lehman Brothers Holdings, Inc. and other defendants under the caption *In re Lehman Brothers Securities and ERISA Litigation*, Master Case No. 09-MD-2017 (LAK).

[2]    Capitalized terms shall have the meaning ascribed to them in the Disclosure Statement and the Plan (defined below), unless defined otherwise herein.

2.  The defendants in the Securities Litigation[3] are Richard S. Fuld, Jr., the Debtors' former president and chief executive officer; Christopher M. O'Meara, the Debtors' former chief financial officer, controller and executive vice president; Joseph M. Gregory, the Debtors' former chief operating officer; Erin Callan, the Debtors' former chief financial officer and executive vice president; Ian Lowitt, the Debtors' former chief financial officer; former directors of the Debtors: Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (all of the foregoing officers and directors are, collectively, the "<u>Individual Defendants</u>"); underwriters of certain of the Debtors' securities (the "<u>Underwriter Defendants</u>") and the Debtors' auditor (the "<u>Auditor Defendant</u>," and together with the Individual Defendants and the Underwriter Defendants, the "<u>Non-Debtor Defendants</u>").

3.  In summary, the Securities Litigation arises from LBHI's undisclosed exposure to losses from distressed mortgage and asset-backed securities. Throughout the Class Period (defined below), LBHI, one of the largest financial institutions in the United States, purchased and packaged residential and commercial mortgages and other collateralized debt obligations into complex securities that were sold to investors or held for LBHI's own benefit.

4.  Lead Plaintiffs are, and represent, persons and entities (the "<u>Securities Class</u>") who purchased or acquired certain LBHI debt and equity securities between June 12, 2007 and September 15, 2008, inclusive (the "<u>Class Period</u>"), pursuant or traceable to materially false and misleading registration statements and prospectuses and certain documents incorporated therein by reference, and who were damaged thereby. Further, Lead Plaintiffs are, and represent, persons and entities who purchased or otherwise acquired LBHI common stock, call options,

---

[3] By virtue of these chapter 11 cases, the Securities Litigation is stayed against the Debtors; thus, the Operative Complaint, which was filed in the Securities Litigation after the Petition Date, does not assert claims against any of the Debtors. Lead Plaintiffs timely filed proofs of claim against LBHI for damages based in large part on the claims asserted in the Securities Litigation.

and/or who sold put options between June 12, 2007 and September 15, 2008 inclusive and who were damaged thereby.

5. On July 27, 2011, the District Court granted in part and denied in part motions to dismiss the Securities Litigation by the Non-Debtor Defendants.

**B.    The Chapter 11 Case.**

6. On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  On and after the Petition Date, affiliates of LBHI (together with LBHI, the "Debtors") also filed petitions for relief under Chapter 11.  The Debtors' Chapter 11 Cases are being administered jointly in this Court.

7. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108(a).

8. On or about September 22, 2009, Lead Plaintiffs, individually and on behalf of the Securities Class, together with other individual members of the Securities Class, timely filed Proofs of Claim (the "Securities Claims") for claims arising out of the Debtors' violations of federal securities laws as described in the Securities Claims and the Operative Complaint.

9. On July 1, 2011, the Debtors filed their Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliates [Doc. No. 18204] (the "Plan"), together with the Disclosure Statement.[4]  On June 29, 2011, the Debtors filed the Amended Motion for approval of the Disclosure Statement and related relief.  [Doc. No. 18126] (the "Disclosure Statement Approval Motion").  The hearing on the Disclosure Statement Approval Motion is scheduled for August 30, 2011.

---

[4] Previously, the Ad Hoc Group of Lehman Brothers Creditors and the Non-Consolidation Plan Proponents filed alternative competing Plans and Disclosure Statements.  On July 21, 2011, this Court entered an Order approving the stipulation by the alternative plan proponents whereby the Ad Hoc Group and the Non-Consolidation Plan Proponents agreed to, *inter alia*, hold in abeyance and not prosecute their proposed alternative plans, subject to a termination event as defined in the stipulation.  The Lead Plaintiffs reserve their rights in the event either of the alternative plan proponents attempts to prosecute an alternative plan.

-4-

**OBJECTION**

10. A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *see also In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999) (the disclosure statement must contain information that is "reasonably practicable [to permit an] informed judgment" by holders of claims or interests to vote on the plan). Courts have ample discretion to determine what constitutes adequate information. *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995), *appeal dismissed, in part, and affirmed, in part*, *by* 184 B.R. 648 (S.D.N.Y. 1995), citing, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Although adequacy is determined on a case-by-case basis under a fact-specific flexible standard, *id.*, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

11. Lead Plaintiffs believe that in certain material respects, the Disclosure Statement does not contain sufficient information to enable a reasonable person to make an "informed judgment about the Plan." Indeed, the Disclosure Statement and the Plan contain broad and

ambiguous provisions and/or omit material facts that (i) may mislead holders of claims or interests or (ii) should be available to holders of claims or interests.

12. *To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan rather than, or in addition to, an objection to the adequacy of the Disclosure Statement, Lead Plaintiffs reserve their right to assert such objection, as well as any other objections, to confirmation of the Plan.  Furthermore, to the extent Lead Plaintiffs or any member of the putative Securities Class is impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan, which may be filed after any Disclosure Statement or Plan confirmation objection deadline, Lead Plaintiffs reserve their right to object thereto.*

13. Lead Plaintiffs object to the adequacy of the Disclosure Statement and to the Plan (subject to the above reservation of rights) on the following grounds:

> (a) the Disclosure Statement fails to provide a description of the Securities Litigation, including its current status and its potential impact on the estate;
>
> (b) the Disclosure Statement fails to describe and the Plan fails to provide an adequate protocol for the preservation and/or destruction of the Debtors' records or documents;
>
> (c) the Disclosure Statement does not provide any basis for the extension of stays or injunctions for a period beyond the Effective Date and such extension is inappropriate and prejudicial to Lead Plaintiffs;
>
> (d) the Disclosure Statement fails to adequately describe available insurance as it relates to the Lead Plaintiffs' and the putative Securities Class' claims asserted in the Chapter 11 Cases and in the Securities Litigation or

disclose whether the Plan intends to deny Lead Plaintiffs and the Securities Class the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions, discharge or distribution under the Plan;

(e) the Plan Release and Injunction provisions are overly broad and ambiguous and unless they clearly and affirmatively exclude Lead Plaintiffs' claims against the Non-Debtor Defendants and any other non-Debtors, may be improper; and

(f) the Disclosure Statement fails to provide an explanation for the improper treatment and classification of certain subordinated claims under the Plan.

14. In order to bring the Disclosure Statement into compliance with 11 U.S.C. §1125(a), the Disclosure Statement and Plan must be modified. Unless and until the Plan and Disclosure Statement are revised, the Disclosure Statement should not be approved.

**A.    The Disclosure Statement Must Provide a Complete and Accurate Description of the Securities Litigation, Including Its Current Status.**

15. The Disclosure Statement fails to provide a complete and accurate description of the Securities Litigation and its impact (if any) on distributions to creditors. The Disclosure Statement should include a description of the nature of the claims asserted in the Securities Litigation, identify the defendants and their relationship to the Debtors, the current status of the Securities Litigation and the potential impact on the estate of the claims asserted in the Securities Litigation

16. Indeed, the Disclosure Statement does not even refer to the Securities Litigation. The allegations asserted or to be asserted in the Securities Litigation are significant and relevant as well as a potential liability of the Debtors' estates. The status of the Securities Litigation must

be included in the Disclosure Statement so that creditors are adequately informed as to its existence and potential effect.

17. Other than the SIPA Proceeding, the Disclosure Statement fails to disclose the existence and results of any governmental regulatory investigations or inquiries involving the Debtors, which should be disclosed to afford creditors and other parties in interest full disclosure of not only such events preceding the Chapter 11 filing, but also those pending after the filing. Indeed, if there are no such pending investigations, that should be affirmatively disclosed.

**B.    The Disclosure Statement Fails to Describe and the Plan Fails to Provide an Appropriate Mechanism for the Preservation of Documents.**

18. Under certain circumstances, the Plan Administrator is authorized to establish a liquidating trust for a Debtor in order to liquidate and distribute that Debtor's assets. *See* Disclosure Statement ("D.S."), §X.I.1; Plan, §§10.1 and 10.2. A liquidating trust shall be dissolved no later than three (3) years from its creation (subject to a three (3) year extension). D.S., §X.I.4; Plan §10.10.

19. The Plan Administrator shall continue the operations of those Debtors, for which a liquidating trust is not established, until such time as the Plan Administrator determines to dissolve the Debtor and wind down its operations. D.S., §X.D.1; Plan, §§7.5 and 7.6. Although the Plan appears to provide for the continued corporate existence of the Debtors, D.S., §§X.D.1 and XII.5; Plan, §7.5, it also provides for the ultimate dissolution and winding down of each Debtor within the sole discretion of the Plan Administrator. D.S., *id*; Plan, §7.6. For all intents and purposes, this is a liquidating Plan. There appears to be no "reorganized debtor."

20. Although the Plan Administrator is charged with maintaining the books and accounts of the Debtors upon the Effective Date,[5] D.S., § X.D.3.a(vii); Plan, §6.1(b)(vii), the

---

[5] During the Chapter 11, the Debtors are compelled to maintain and preserve their assets unless authorized by the Court to abandon them after notice and a hearing. 11 U.S.C. §554(a).

-8-

Plan fails to provide for a protocol for the preservation or abandonment of the Debtors' assets, including books, records, accounts and other documents, in any format (*e.g.*, electronic or hard copy) (collectively, "Documents") after the Plan Administrator determines (in its sole discretion) to dissolve or wind-down a Debtor, the duties of the Plan Administrator are terminated or the Debtors' assets are transferred to a liquidating trust.

21.  Indeed, whether the Debtors' assets are within the control, possession or custody of the Plan Administrator or a liquidating trustee, a document preservation protocol must be established to prevent the destruction or abandonment of Documents, especially where the Documents may include critical information relevant to the Securities Litigation and/or the Securities Claims, and may not be available elsewhere.

22.  The absence of such a protocol prejudices the rights of Lead Plaintiffs, members of the putative Securities Class and other parties in interest. At the very least, some mechanism for providing notice and an opportunity to be heard by this Court or a court of competent jurisdiction must be established before any such Documents are abandoned, destroyed or rendered otherwise unavailable.

23.  The Debtors, the Plan Administrator and any liquidating trustees must advise parties in interest through the Plan of their intention with respect to the Documents. Therefore, the Plan should include the following language:

> From and after the Effective Date, the Debtors, the Plan Administrator, any Liquidating Trustee or any transferee of the Debtors' Documents (defined *infra*) shall preserve and maintain all of the Debtors' books, records, documents, files, electronic data (collectively, the "Documents"), and the Debtors, the Plan Administrator, any Liquidating Trustee and any other transferee of the Documents shall not destroy or otherwise abandon any such Documents absent further order of this Court, or a court of competent jurisdiction, after a hearing on notice to parties in interest, including Lead Plaintiffs, with an opportunity to be heard.

24. To the extent the Debtors do not intend to preserve or provide for the preservation of the Documents or object to the inclusion of the foregoing language in the Plan or in any order confirming the Plan, the Disclosure Statement should explain why.

### C. The Extension of Stays and Injunctions under the Plan is Inappropriate and Prejudicial.

25. Pursuant to the Plan, stays and injunctions pursuant to 11 U.S.C. §105 or 362, extant on the Confirmation Date remain in effect until the closing of *all* of the Chapter 11 cases. D.S., §X.H.6; Plan, §13.7. There are more than twenty (20) Debtors. Plan, §1.38.

26. A case cannot be closed until after it has been fully administered and the Plan Administrator has obtained authority from the Court to close the Case. Plan, § 6.6. Therefore, the extension of stays and injunctions are not fixed and no outside date is even suggested, and remains within the control of the Plan Administrator.

27. Pursuant to the Plan, the Plan Administrator is authorized to prosecute all of the Debtors' Causes of Action (Litigation Claims). D.S., § X.D.3.a(iv); Plan, §6.1(a)(iv). To the extent these Litigation Claims include the Estates' causes of action against the Debtors' current and/or former officers and directors, underwriters or others, they may have some of the same factual predicates as the claims of Lead Plaintiffs arising from the allegations in the Securities Litigation.

28. Because of the Plan's indefinite extension of stays and injunctions, the Plan Administrator can prevent or, at the very least, significantly delay Lead Plaintiffs from ever obtaining access to relevant discovery, while pursuing these competing Estate claims. Indeed, there is no basis for the Plan Administrator to be able to assert the automatic stay (as a sword, not a shield) beyond the Effective Date of the Plan to frustrate Lead Plaintiffs' ability to obtain relevant documents in the Securities Litigation, while having those documents available to pursue its own claims. This is precisely the type of offensive use of the automatic stay that

courts refuse to tolerate. *Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. LEXIS 24828, *13 (E.D. Pa. 1986), citing *Bohack corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1979) (finding that a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where the debtor is in the position of assailant rather than victim"). Indeed, "[o]ur system of laws universally frowns on a party that would use the stay as both a sword and a shield." *In re A.H. Robbins & Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983) (accepting the view that the bankuptcy protective shield should not be unfairly converted into a sword of aggression); *see also Maritime Electric Co. v. Untied Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).

29.   The Disclosure Statement provides no explanation to justify any extension of the automatic stay (or other stays or injunctions) beyond the Plan Effective Date or the entry of the Order confirming the Plan. The automatic stay should not be available to the Plan Administrator or any liquidating trustee for an extended period of time to frustrate the prosecution of the claims of Lead Plaintiffs against common defendants to gain a fundamentally unfair litigation advantage.

**D.    The Disclosure Statement Fails to Adequately Describe Available Insurance as It Relates to the Lead Plaintiffs' and the Securities Class' Claims Asserted in the Chapter 11 Cases and in the Securities Litigation or Disclose Whether the Plan Intends to Deny Lead Plaintiffs the Right to Proceed with their Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan.**

30.   Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies") in favor of their directors and officers for claims asserted in the Securities Litigation, as well as for claims against the Debtors directly for violations of federal securities laws. The Disclosure Statement fails to specifically identify any D&O Policies or to disclose the

-11-

extent of the coverage provided by such D&O Policies and those parties who may have a right to access the proceeds thereof.[6] The Disclosure Statement should provide such information.

31. Lead Plaintiffs also maintain that the putative Securities Class is entitled to look to the proceeds of such insurance for payment in connection with the claims of Lead Plaintiffs and the putative Securities Class and may, at least, pursue these Claims against the Debtors to the extent of such available insurance post-Confirmation. Because Lead Plaintiffs may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be accessed through the pursuit of the claims asserted in the Securities Litigation. Accordingly, the Plan should not impact the rights of Lead Plaintiffs or the putative Securities Class to pursue their claims against the Debtors to the extent of the proceeds of the D&O Policies.

32. Therefore, the Plan and Disclosure Statement should provide that:

> Nothing in the Plan, or in any Order confirming the Plan shall preclude Lead Plaintiffs and the putative Securities Class from pursuing their Claims against the Debtors to the extent of available insurance coverage and proceeds. The Claims of Lead Plaintiffs and the putative Securities Class against the Debtors, to the extent of available insurance, are preserved and not discharged by the Plan.

**E.    The Plan Release and Injunction Provisions Appear Overly Broad and Ambiguous and Therefore Should Clearly and Affirmatively Exclude the Claims of Lead Plaintiffs and the Putative Securities Class Against Non-Debtors.**

33. The Disclosure Statement describes, and the Plan provides, for the release of, and to the extent released, the permanent injunction of, Claims of entities which held, hold or may hold Claims against or Interests in the Debtors, against certain non-Debtors, including some of the Individual Defendants in the Securities Litigation. D.S., §X.H.1 and 3; Plan, §13.3 and 13.5. The Plan releases Claims against Released Parties and the PSA Creditors. Released Parties

---

[6]    The Plan provides that to the extent any insurance policy constitutes an executory contract, it shall be deemed assumed under the Plan. D.S., §X.F.4; Plan, §11.5.

include, *inter alia*, the Debtors, the Independent Directors, as well as the Debtors' officers and directors serving during the pendency of the Chapter 11 cases. Plan, §1.131. The Independent Directors (except for Jerry A. Grundhofer) (Plan, § 1.63) are included among the Individual Defendants in the Securities Litigation (*see* ¶ 2, *supra*). A PSA Creditor is an entity (listed on D.S., Exhibit 20; Plan Schedule 4) that is a party to a Plan Support Agreement and any officer or director thereof who served during the pendency of the Chapter 11 cases. Plan, § 1.126. Two of the PSA Creditors appear to be affiliates of the Underwriter Defendants.

34.     While the Plan appears to release only those claims for acts taken or omitted to be taken during the Chapter 11 Cases and excludes claims for acts taken or omitted to be taken prior to the Commencement Date (September 15, 2008), D.S. §X.H.1; Plan §13.3, some of the Claims asserted in the Securities Litigation against Non-Debtor Defendants may have arisen on the Commencement Date (the Class Period is February 13, 2007 through September 15, 2008). Thus, at the very least, there could be some ambiguity regarding whether those claims as against the Non-Debtor Defendants are or are not released. The Disclosure Statement (and Plan) should eliminate any such ambiguity.

35.     Likewise, to the extent a Claim or Cause of Action is released, the Plan Injunction permanently enjoins such holders of Claims against or Interests in the Debtors from commencing, continuing or conducting in any manner any proceeding against a Released Party. D.S., §X.H.3; Plan, §13.5. Because the Plan Injunction provision is directly related to the Plan Release provision, to the exent the Plan Release provision is deemed improper (*see* ¶34, *supra*), the Plan Injunction should likewise not be permitted.

36.     The Plan release and injunction are ambiguous to the extent that they may be interpreted to impact, enjoin, prohibit and/or preclude Lead Plaintiffs from asserting Claims in the Securities Litigation or seeking discovery post-Effective Date. The Plan offers no basis or

-13-

justification for such broad release and injunction provisions which are justified, if at all, only in the most extraordinary and unusual circumstances, none of which exist or have been demonstrated herein.

37. As a result of the ambiguous language of the aforesaid Plan provisions, non-debtors who, in the absence of unusual circumstances are not entitled to the protections of the Bankruptcy Code, may very well benefit therefrom. Therefore, to the extent any of Lead Plaintiffs' claims in the Securities Litigation may be subject to the Plan Injunction and/or Release provisions, the provisions are improper. *See Deutsche Bank AG London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005) (holding that non-debtor releases are proper only in rare cases and may be "tolerated only if the affected creditor consents").

38. Furthermore, any discharge of the Debtors provided by the Plan is improper. As previously stated (¶19, *supra*), despite the purported continued corporate existence of a Debtor (until the Plan Administrator determines to dissolve or wind down that Debtor), this is no more than a liquidating plan. Pursuant to 11 U.S.C. §1141(d)(d), confirmation of a plan does not discharge a liquidating debtor. Therefore, any provision of the Plan purporting to grant a discharge is improper and must not be allowed. *See* D.S., §X.H.2; Plan, §13.4 (purporting to discharge the Debtors).

39. If it is the Debtors' intent to release and enjoin third-party claims against non-Debtors, including any of the claims asserted in the Securities Litigation, then the Disclosure Statement should make that clear. If, on the other hand, the Debtors do not intend such impermissible releases, the following language should be included in the Disclosure Statement and the Plan should be modified accordingly:

> Nothing in the Plan or in any order confirming the Plan shall or is intended to (i) affect, release, enjoin or impact in any way the

>prosecution of the claims asserted, or to be asserted, against any Non-Debtor Defendants in the Securities Litigation or any non-Debtor, or (ii) preclude Lead Plaintiffs and/or the Securities Class from seeking discovery from the Debtors, the Plan Administrator or such other transferee of the Debtors' assets.

**F.      The Disclosure Statement and Plan Fail to Provide an Adequate Explanation for the Improper Treatment and Classification of Claims Arising from the Purchase of Debt Securities.**

40.     The Claims of Lead Plaintiffs and members of the Securities Class arise from the purchase of debt *and* equity securities of LBHI and are subject to subordination consistent with 11 U.S.C. §510(b), which provides that claims for damages arising from the purchase or sale of a security of a debtor are "subordinated to all claims or interests that are senior to or equal the claim or interest represented by that security" except if the security is common stock.

41.     The Plan classifies claims arising from the purchase or sale of securities of LBHI, other than equity, as Class 11 Section 510(b) Claims.[7] Plan, §1.135. Holders of Claims in Class 11 receive no distribution under the Plan and as a result, are deemed to reject the Plan.

42.     It is improper to place all Claims subject to subordination under 11 U.S.C. §510(b) in the same Plan Class (Class 11) regardless of the security involved (except for common stock) because claims subject to subordination under 11 U.S.C. §510(b) are subordinated only to claims that are senior to or equal the claim of current holders of the subject security. Several debt securities are involved in the Securities Litigation.

43.     Lead Plaintiffs submit that the language of 11 U.S.C. §510(b) does not subordinate claims for damages in connection with the purchase of unsecured debt instruments to holders of junior debt instruments that are subordinated to the security at issue. This is the only construction that gives effect to the plain language and purposes of 11 U.S.C. §510(b). One must

---

[7]     Section 510(b) Claims arising from the purchase of equity securities are in Class 12 Equity Interests in LBHI.

-15-

look to the nature of the underlying security to determine whether other claims are senior or equal to the claim represented by that security and the extent of subordination.

44. Under the Plan, claims subject to subordination under 11 U.S.C. §510(b) (other than those in Plan Class 12) are defined as "Section 510(b) Claims" and are classified in Class 11. They are all treated the same, notwithstanding that different debt instruments may be involved. The Disclosure Statement offers no explanation for this treatment.

45. LBHI issued numerous debt securities across the capital structure of LBHI, which are classified differently under the Plan. Section 510(b) does not say that a claim based upon the purchase or sale of a security will be subordinated to *all* claims, but only to those claims senior or equal to the claims of the holders of that particular security. The Disclosure Statement does not provide any basis for the classification of all Securities Claims as Section 510(b) Claims under the Plan which violates 11 U.S.C. §1122(a) and 11 U.S.C. §1123(a)(4). Although the Plan properly excludes holders of Claims arising from the purchase of equity securities from Class 11 Claims, there is no discussion in the Disclosure Statement of why purchasers of all debt securities are lumped together in Class 11.

46. While this may be an issue ultimately left for confirmation, the flawed classification described in the Disclosure Statement and the Plan should be addressed now or, at the very least, as a matter of disclosure.

## **CONCLUSION**

47. Based on the foregoing, Lead Plaintiffs respectfully request that an order be entered (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 11, 2011
     New York, New York

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *Michael S. Etkin*
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)
*Bankruptcy Counsel to Lead Plaintiffs and the Class*

-- and --

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
David R. Stickney
Jon Worm
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
858.793.0070 (Telephone)
858.793.0323 (Facsimile)

-- and --

**KESSLER TOPAZ MELTZER & CHECK, LLP**
David Kessler
John A. Kehoe
280 King of Prussia Road
Radnor, PA 19087
610.667.7706 (Telephone)
610.667.7056 (Facsimile)

*Co-Lead Counsel to Lead Plaintiffs and the Class*