Robin E. Keller, Esq.
Scott W. Reynolds, Esq.
**HOGAN LOVELLS US LLP**
875 Third Avenue
New York, New York 10022
Telephone:   (212) 919-3000
Facsimile:   (212) 919-3200

*Attorneys for QVT Fund LP & Quintessence Fund L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**RESPONSE OF QVT FUND LP & QUINTESSENCE FUND LP TO
DEBTORS' ONE HUNDRED FIFTY-FIFTH OMNIBUS OBJECTION
TO CLAIMS (VALUED DERIVATIVE CLAIMS – CLAIM NOS.  20421,
 21138, 21139, 21140 21144, 21145, 21146, 21202, 21205, 21217, 21222 and 21225)**

QVT Fund LP ("**QVT Fund**") and Quintessence Fund L.P. ("**Quintessence**") (collectively, "**QVT**"), by and through their undersigned counsel, hereby submit this response (the "**Response**") to the *Debtors' One Hundred Fifty-Fifth Omnibus Objection to Claims (Valued Derivative Claims)* [Docket No. 17468] (the "**Objection**"). In support of this Response, QVT Fund and Quintessence respectfully state as follows:

**BACKGROUND**

1. QVT Fund and Quintessence, investment funds managed by QVT Financial LP, entered into multiple ISDA Master Agreements, including the Schedules, Confirmations and Credit Support Annexes to those ISDA Master Agreements (each a "**Master Agreement**" and

collectively, the "**Master Agreement Documents**"),[1] with various subsidiaries and affiliates of Lehman Brothers Holdings Inc. ("**LBHI**"), including Lehman Brothers Commodity Services Inc. ("**LBCS**"),[2] Lehman Brothers Special Financing Inc. ("**LBSF**")[3] and Lehman Brothers OTC Derivatives Inc. ("**LBOTC**").[4]

2. Pursuant to the Master Agreement Documents, QVT Fund and Quintessence entered into numerous equity, credit default, interest rate and commodity derivative transactions with LBOTC, LBSF and LBCS. Each transaction under the Master Agreement Documents was explicitly and unconditionally guaranteed by LBHI, which guaranteed the "due and punctual payment of all amounts payable" (each a "**LBHI/QVT Guarantee**" and collectively, the "**LBHI/QVT Guarantee Documents**").[5]

3. Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its affiliates, including LBCS, LBSF and LBOTC (collectively, the "**Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), thereby triggering multiple events of default under the Master Agreement Documents, including but not limited to, Section 5(a)(vii) of each of the Master Agreements, entitling QVT Fund and Quintessence to terminate the Master Agreements.

4. By letters dated September 15, 2008, QVT Fund and Quintessence provided to the Debtors notices specifying the events of default and designating September 15, 2008 as the Early

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Master Agreements.
[2] LBCS entered into Master Agreements with QVT Fund and Quintessence on June 14, 2007.
[3] LBSF entered into a Master Agreement with QVT Fund on February 25, 2005 and with Quintessence on June 18, 2007.
[4] LBOTC entered into Master Agreements with QVT Fund and Quintessence on September 25, 2007.
[5] QVT Fund entered into LBHI/QVT Guarantee Documents with respect to its Master Agreement with LBCS on July 6, 2007, its Master Agreement with LBOTC on October 8, 2007 and its Master Agreement with LBSF on February 25, 2005. Quintessence entered into LBHI/QVT Guarantee Documents with respect to its Master Agreement with LBCS on July 6, 2007, its Master Agreement with LBOTC on October 8, 2007 and its Master Agreement with LBSF on July 9, 2007.

2

\\\NY - 002509/000004 - 2332176 v6

Termination Date with respect to all outstanding transactions under the Master Agreement Documents (the "**Notice of Default & Early Termination**"). Pursuant to Section 6(d)(i) of each of the Master Agreements, QVT Fund and Quintessence subsequently provided to the Debtors Statements of Calculations as required by the Master Agreement Documents, which Statements of Calculations subsequently were revised by QVT Fund and Quintessence (the "**Statements of Calculations**").

5. On July 2, 2009, this Court entered the *Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the "**Bar Date Order**").

## The QVT Claims

6. On or about September 21, 2009, QVT Fund and Quintessence timely filed numerous claims against the Debtors, including the following claims (the "**QVT Claims**"):

- Claim No. 21222 by QVT Fund against LBOTC in the amount of $8,430,170.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21139 by QVT Fund against LBHI in the amount of $8,430,170.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21217 by QVT Fund against LBSF in the amount of $257,669,148.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21140 by QVT Fund against LBHI in the amount of $257,669,148.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21202 by QVT Fund against LBCS in the amount of $1,340,737.00 (plus unliquidated amounts including interest and legal fees)

3

- Claim No. 21138 by QVT Fund against LBHI in the amount of $1,340,737.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21225 by Quintessence against LBOTC in the amount of $905,461.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21145 by Quintessence against LBHI in the amount of $905,461.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21205 by Quintessence against LBCS in the amount of $264,750.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21144 by Quintessence against LBHI in the amount of $264,750.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 20421 by Quintessence against LBSF in the amount of $28,959,067.00 (plus unliquidated amounts including interest and legal fees)

- Claim No. 21146 by Quintessence against LBHI in the amount of $28,959,067.00 (plus unliquidated amounts including interest and legal fees)[6]

7. Pursuant to the terms of the Bar Date Order, on October 21, 2009, QVT Fund and Quintessence timely completed and uploaded the required Derivative Questionnaires and Guarantee Questionnaires in connection with the QVT Claims (together, the "**Questionnaires**").

8. QVT Fund and Quintessence submitted the following supporting documentation when they uploaded the Questionnaires: copies of the Master Agreements, the LBHI/QVT Guarantee Documents, the Notice of Default & Early Termination, the Statements of Calculations, and related documentation providing information about each of the QVT Claims.

9. Starting in early 2010, QVT was approached by representatives of the Debtors and

---

[6] The claim amounts as filed have been amended from time to time as numbers have been refined, as described in materials presented to the Debtors and discussions with the Debtors' representatives.

4

\\\NY - 002509/000004 - 2332176 v6

asked to engage in voluntary discussions with the Debtors' representatives regarding its claims. QVT met repeatedly with representatives of the Debtors and provided extensive additional information regarding the nature, amount and methodology of calculation of its claims with a view towards resolving any dispute with respect to the QVT Claims.

10. Notwithstanding QVT's good-faith efforts to resolve disputes regarding the QVT Claims as evidenced by the extensive documentation it provided in confidence to the Debtors' representatives of the reasonable basis for its calculations under the Master Agreement Documents -- as to which the Debtors utterly failed to reciprocate by providing QVT with any comparably detailed support for their objections -- on June 7, 2011, the Debtors filed the Objection seeking reduction of the QVT Claims against the Debtors. The Objection is based solely on the Debtors' assertion that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values" of the QVT Claims as determined by the Debtors. Objection ¶ 2 and ¶ 11. The Debtors submitted no documentary or other evidence in support of the Objection. In fact, the Objection fails to provide any logical reason or basis for the proposed reduction of the QVT Claims beyond the Debtors' unsubstantiated assertion that their "blackbox" internal claim valuation process is "fair, accurate, and reasonable value of such claims." Objection ¶ 14.

11. Further, the Debtors did not address the unliquidated claims set forth in the QVT Claims. For example, in accordance with Section 11 of the Master Agreements, QVT expressly claimed legal fees and costs incurred in connection with the enforcement of its rights under the Master Agreements and indicated that a statement of all amounts due and owning under the Master Agreements would be presented to the Debtors upon request.

5

**ARGUMENT**

**A.     Applicable Legal Standard**

12.     A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") constitutes *prima facie* evidence of the validity of the claim. *See* Fed. R. Bankr. P. 3001(f); *See also In re DJK Residential LLC,* 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009); *In re Alper Holdings USA,* 2008 Bankr. LEXIS 86 at *9 (Bankr. S.D.N.Y. 2008); *In re MarketXT Holdings Corp.,* 2007 Bankr. LEXIS 740 at *17 n.8 (Bankr. S.D.N.Y. 2007).

13.     If a party in interest files an objection to a proof of claim, the burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *In re Alper Holdings USA,* 2008 Bankr. LEXIS 86 at *9; *In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660 * 15 (Bankr. S.D.N.Y., Feb 20, 2007). Specifically, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's sufficiency, as "the objector bears the initial burden of persuasion." *DJK Residential,* 416 B.R. at 104; *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-174 (3d Cir. 1992), quoting *In re Holm*, 931 F. 2d 620, 623 (9th Cir. 1991). Thus, the burden of proof does not shift to QVT until the objector has first met its burden by providing sufficient evidence to overcome the *prima facie* validity of the claim. *Id.*; *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) ("the objecting party [must] . . . go forward and produce sufficient evidence to rebut the claimant's *prima facie* case"). "Mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence. *See Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *

6

3-4 (S.D.N.Y. March 31, 1999).

**B.     The Debtors Have Failed to Meet Their Burden of Going Forward.**

14.     The Debtors provide no evidence to support their Objection as to the QVT Claims. The bald assertion that the Claims are "greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records" is insufficient to overcome the *prima facie* validity and amount of the QVT Claims. The Debtors ask this Court to reduce the QVT Claims without reference to any specific reason for doing so. Their unsubstantiated statement does not constitute "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's sufficiency." *See Alper Holdings USA,* 2008 Bankr. LEXIS 86 at *10; *DJK Residential,* 416 B.R. at 104. Merely filing a claim objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *Juniper Dev. Group v.Kahn* (*In re Hemingway Transport, Inc.*), 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in the original). Allegations of overvaluation are not evidence. Therefore, the Debtors have failed to offer any evidence, let alone substantial evidence.

15.     Similarly, the Debtors have also failed to offer any concrete support as to why QVT's calculation of the QVT Claims is in any way flawed. In contrast, QVT gave the Debtors extensive documentation to support the basis for its calculations.

16.     For the reasons set forth above, the Objection does not negate the *prima facie* validity of the Claims and should be denied.

**C.     QVT Has Met Its Burden of Proving the Validity of Its Claims.**

17.     Should the Court find that the Debtors' unsupported Objection has transferred the burden of proof to QVT, QVT respectfully submits that it already has met that burden. The

QVT Claims, the Questionnaires (complete with all relevant supporting documentation) and the additional supporting documentation subsequently provided by QVT to the Debtors in confidence for purposes of settlement during the course of the claims filing process (which QVT is more than willing to provide to the Court in confidence) constitute more than sufficient evidence of the accuracy and validity of the amount of the QVT Claims.

18.     The QVT Claims were calculated according to the contractually agreed-upon methodologies and the Debtors have not offered any justification for deviating from those terms. To the extent that the Debtors have offered any explanation of their valuation methodology, in conversations with QVT they have in each instance relied on demonstrably inadequate, stale and unrealistic data that renders absurd outcomes.  Subsequent analysis by QVT has yielded no basis for further reducing the QVT Claims as provided for in the Objection.  Moreover, even if the Debtors may have calculated the loss differently (of course, to their own advantage), they cannot substitute their judgment for the reasonable judgment of QVT for the simple reason that the Master Agreement Documents do not permit that.  The Master Agreements expressly designate the Non-defaulting Party (as such term is defined in the Master Agreements), i.e., QVT, as the party to calculate the Settlement Amount. See Master Agreement § 6(e)(i)(3).  The right to determine the Settlement Amount belongs exclusively to QVT as the Non-defaulting Party. Thus, to the extent the Debtors challenge QVT's calculation of the Settlement Amount under each Master Agreement, the Court should overrule the Objection as inconsistent with the terms of the Master Agreements, since the Debtors do not provide evidence of any unreasonableness in QVT's calculations, but simply propose to substitute the Debtors' calculations without a contractual right to do so and without explanation or evidentiary support.

19.     Further, the allowed amount of the QVT Claims should also reflect the

outstanding legal fees owed to QVT under the Master Agreement Documents. *See Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F.3d 143 (2d Cir. 2009), cert. denied, 2010 WL 531913 (U.S. 2010) (Bankruptcy Code allows an unsecured creditor to collect post-petition attorney's fees authorized by a pre-petition contract that is valid under state law).

20. In the event this Court finds that QVT has not met its ultimate burden of proof as to the validity of the QVT Claims, QVT: (a) requests discovery from the Debtors as to their valuation of the QVT Claims; (b) reserves the right to supplement or otherwise amend this response to the Objection; and (c) requests, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amounts of the QVT Claims.

[*Remainder of Page Intentionally Left Blank*]

\\\NY - 002509/000004 - 2332176 v6

**CONCLUSION**

For the foregoing reasons, QVT respectfully request that this Court: (a) overrule the Objection; (b) allow each of the QVT Claims in the amounts set forth in Annex 1 attached hereto, plus amounts yet to be liquidated; (c) in the alternative, schedule a hearing on the merits of the QVT Claims after QVT has had an opportunity to conduct discovery on the Debtors as to their valuation of the QVT Claims; and (d) grant such other, further relief as this Court may deem just and proper.

| | |
|---|---|
| Dated: August 12, 2011<br>New York, New York | **HOGAN LOVELLS US LLP**<br><br>By: /s/ Robin E. Keller<br>Robin E. Keller<br>Scott W. Reynolds<br>875 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 919-3000<br>Facsimile: (212) 919-3200<br>Email: robin.keller@hoganlovells.com<br>           scott.reynolds@hoganlovells.com<br><br>*Attorneys for QVT Fund LP &*<br>*Quintessence Fund L.P.* |

\\\NY - 002509/000004 - 2332176 v6

# ANNEX 1
## QVT Claims[1]

1. Claim No. 21222 by QVT Fund against LBOTC in the amount of $8,430,170.00

2. Claim No. 21139 by QVT Fund against LBHI in the amount of $8,430,170.00

3. Claim No. 21217 by QVT Fund against LBSF in the amount of $257,669,148.00

4. Claim No. 21140 by QVT Fund against LBHI in the amount of $257,669,148.00

5. Claim No. 21202 by QVT Fund against LBCS in the amount of $1,340,737.00

6. Claim No. 21138 by QVT Fund against LBHI in the amount of $1,340,737.00

7. Claim No. 21225 by Quintessence against LBOTC in the amount of $905,461.00

8. Claim No. 21145 by Quintessence against LBHI in the amount of $905,461.00

9. Claim No. 21205 by Quintessence against LBCS in the amount of $264,750.00

10. Claim No. 21144 by Quintessence against LBHI in the amount of $264,750.00

11. Claim No. 20421 by Quintessence against LBSF in the amount of $28,959,067.00

12. Claim No. 21146 by Quintessence against LBHI in the amount of $28,959,067.00

---

[1] The claim amounts as filed have been amended from time to time as numbers have been refined, as described in materials presented to the Debtors and discussions with the Debtors' representatives.