Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
**In re:**                                        :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC., et al.,**        :        **08-13555 (JMP)**
:
**Debtors.**                           :        **(Jointly Administered)**
:
------------------------------------------------------------------ x

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF THE DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004 FOR
AUTHORIZATION TO (I) ENTER INTO AN ASSET MANAGEMENT AGREEMENT FOR
THE MANAGEMENT OF THE DEBTORS' COMMERCIAL LOAN PORTFOLIO AND
(II) SELL COMMERCIAL LOANS TO SPECIAL PURPOSE ENTITIES IN CONNECTION
WITH THE ISSUANCE OF COLLATERALIZED LOAN OBLIGATIONS**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. and each of its affiliated debtors in possession (collectively, the

"Debtors") hereby files this statement in support of the Debtors' Motion Pursuant to Sections

105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004 for

Authorization to (i) Enter into an Asset Management Agreement for the Management of the

Debtors' Commercial Loan Portfolio (the "AMA") and (ii) Sell Commercial Loans to Special

Purpose Entities in Connection with the Issuance of Collateralized Loan Obligations [Docket No. 18810] (the "<u>Motion</u>").[1]

**<u>STATEMENT</u>**

1. The Committee supports the relief requested in the Motion and agrees with the Debtors that the engagement of Fraser Sullivan to administer the Commercial Loan Portfolio is in the best interests of the Debtors' estates and their creditors. In reaching this conclusion, the Committee and its professionals have evaluated the applicable issues and considerations, including the following:

   a. whether the AMA and the transactions contemplated thereby are consistent with the objective of maximizing value distributable to the Debtors' creditors under the Second Amended Plan;

   b. whether the costs associated with the AMA, including Fraser Sullivan's management fees, are reasonable and appropriate, and compare favorably to the available alternatives;

   c. whether the process of identifying an asset manager was appropriate and ensured robust bidding by interested parties;

   d. whether Fraser Sullivan possesses the requisite experience to effectively manage the Commercial Loan Portfolio; and

   e. whether the extent of the Debtors' and Committee's oversight and control with respect to the Managed Assets is appropriate.

2. <u>Maximizing Distribution to Creditors</u>. Early in these cases, the Debtors and the Committee agreed that, to maximize creditor recoveries from the Commercial Loan Portfolio, the underlying assets should not be sold immediately. Instead, it was decided that the assets would be managed by the Debtors, and the estates' fiduciaries would determine, on a credit-by-credit basis, the appropriate time and circumstances under which to monetize the assets

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

based on timing of distributions to creditors, market conditions and factors specific to each credit.

3. At this juncture in the cases, as the Debtors and Committee prepare for the post-emergence period, the focus naturally has shifted to monetizing the portfolio for distribution to creditors. Retaining a third-party manager capable of pooling loans in one or more CLO investment vehicles, which is a creative, value-maximizing alternative, and managing the remaining loan portfolio, is the correct approach to accelerate and maximize returns to creditors from these assets. The management of the Commercial Loan Portfolio by a respected third-party professional experienced in managing commercial loans and establishing CLOs provides the Debtors with the opportunity to monetize a significant portion of the loan portfolio assets in a manner and on a schedule that is not supportable under the current management structure. Thus, the relief requested in the Motion will allow creditors to realize maximum value from the Commercial Loan Portfolio and assure a more expeditious wind-down of the Debtors' estates.

4. <u>Cost of the AMA</u>. The cost to the estates of implementing the arrangement contemplated by the AMA is uncertain because we do not know now the extent to which one or more CLOs will be launched. Nevertheless, to the extent the costs under the AMA exceed the current cost of managing the Commercial Loan Portfolio, the additional amounts will not be material. <u>See</u> AMA § 9, Schedule C. In connection with the transition of management to Fraser Sullivan, the Debtors will shutter their commercial loan management operation thereby eliminating existing employees from the estates' payroll.

5. The Committee does not think the Debtors needed to offer Fraser Sullivan a success fee to motivate it to perform its obligations under the AMA. Nevertheless, because it will be payable at the sole discretion of the board(s) of directors of the reorganized Debtors and

3

will not exceed $5 million, the Committee determined that the success fee did not warrant withholding the Committee's support for the Motion.  See AMA § 9(c).  Moreover, the Committee believes that the benefits of the third-party management proposal outweigh any potential nominal increase in cost that might result from the fee structure of the AMA.

6.  Adequacy of Marketing Process.  The Committee and its advisors became involved in the development of the contemplated transactions early in the process.  The Committee closely monitored and/or participated in all developments, including Lazard's canvassing of potential manager candidates, and evaluated the salient terms of all proposals submitted.  This was particularly important given the Debtors' determination that a public auction process would not be necessary or possible.  The Committee agreed with the Debtors that the terms offered by Fraser Sullivan were the most competitive in respect of the cost, the acceptance of the governance and reporting requirements, and the continuity of certain of the existing Commercial Loan Portfolio management.  The Committee has also taken comfort from the fact that the AMA remains subject to a higher or better offers, which, if accepted, would require only that the Debtors seek authority from the Court to reimburse Fraser Sullivan's expenses of up to $500,000.  See Motion ¶ 38.

7.  Fraser Sullivan's Qualifications.  Fraser Sullivan is a recognized asset manager, experienced in administering commercial loans and establishing and managing CLOs.  Fraser Sullivan currently manages over $2.5 billion in assets, has issued six CLOs, and is one of a small number of firms to have successfully established CLOs since the recent credit crisis.  Fraser Sullivan's co-owners have over 40 years of combined, direct experience with similar assets.  To preserve such important leadership, the AMA is terminable in the event of a departure

4

of Fraser Sullivan's senior management – John Fraser and Tighe Sullivan.  See AMA § 18(b)(3).[2]

8. <u>Continued Control and Oversight by the Debtors and the Committee</u>.  Under the terms of the AMA, the Debtors (and their successors), in consultation with the Committee, retain absolute discretion to determine whether to establish any CLO and the terms of such CLO.  See AMA § 2(a)(v).  The Debtors will also retain all of their rights to, among other things, receive collections of principal, interest or other proceeds from the loans that are not incorporated into CLOs.  See AMA § 2(a)(vii).

9. Through the Effective Date of the Second Amended Plan, the Committee will retain its substantial oversight rights under the applicable loan-related protocols established during these chapter 11 cases including, without limitation, with respect to the establishment of a CLO.  See Motion ¶ 39; Proposed Order at 4.  Thus, despite introducing a third-party manager, the estates' fiduciaries are not relinquishing their control over the disposition of the Commercial Loan Portfolio.

[Remainder of Page Intentionally Left Blank]

---

[2] At the Debtors' request, Fraser Sullivan has agreed to hire certain of the current estate employees administering the Commercial Loan Portfolio.  See AMA § 19.  The Committee was initially concerned that the LAMCO employees transitioning to Fraser Sullivan would enjoy employment agreements containing terms far more favorable than their current arrangements with the Debtors.  Upon review of the relevant agreements, however, the Committee is comfortable that the employment terms for such personnel are appropriate under the circumstances.

5

## **CONCLUSION**

For all the reasons set forth herein and in the Motion, the Committee respectfully requests that the Court (i) grant the Motion, and (ii) grant the Committee such other relief as is just.

Dated:  New York, New York
        August 12, 2011

        **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

        By: /s/ Dennis F. Dunne
        Dennis F. Dunne
        Evan R. Fleck
        Dennis C. O'Donnell
        1 Chase Manhattan Plaza
        New York, NY 10005
        Telephone: (212) 530-5000

        Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.