Hearing Date and Time: August 30, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: August 15, 2011 at 4:00 p.m. (Prevailing Eastern Time)

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York  10020
Telephone:  (212) 307-5500
Facsimile: (212) 307-5598
Carollynn H.G. Callari
Michael K. Madden

*Counsel For Danske Bank A/S, London Branch*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| **In re:** : | |
| : | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : | |
| : | **Case No. 08-13555 (JMP)** |
| **Debtors.** : | |
| : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**OBJECTION OF DANSKE BANK A/S, LONDON BRANCH TO
DEBTORS' AMENDED MOTION (I) FOR APPROVAL OF THE
DISCLOSURE STATEMENT AND THE FORM AND MANNER OF
NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II)
ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III)
SCHEDULING A CONFIRMATION HEARING, AND (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR
CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Danske Bank A/S, London Branch ("Danske") hereby submits this objection and

reservation of rights (the "Objection") to the amended motion, dated June 29, 2011 (the

"Motion"), of the above-captioned debtors and debtors-in-possession (each a "Debtor" and

collectively, the "Debtors") (i) for approval of the Disclosure Statement[1] and the form and

----

[1]        Disclosure Statement shall refer to the *Debtors' Disclosure Statement for Second Amended Joint Chapter*

manner of notice of the Disclosure Statement hearing, (ii) establishing solicitation and voting procedures, (iii) scheduling a confirmation hearing, and (iv) establishing notice and objection procedures for confirmation of the Debtors' joint chapter 11 Plan [Docket No. 18126], and respectfully states as follows:

## PRELIMINARY STATEMENT[2]

Under the circumstances surrounding the formulation of the Plan, the omission of specific information regarding the "global compromise and settlement" that underpins the treatment of claims under the Plan dictates finding that the Disclosure Statement does not contain "adequate information" within the meaning of the Bankruptcy Code. The Disclosure Statement generally describes certain disputes and highlights certain redistributions contained in the Plan that resulted from the Debtors' settlement discussions with the Alternative Plan Proponents, among others. Based on those general descriptions, creditors reviewing the Disclosure Statement may be misled into believing that their interests were adequately represented and that each participant in the negotiations made fair concessions. However, that may not be accurate. For instance, if LCPI claims against LBHI were initially undervalued then the settlement may not have afforded proper value to LCPI for those claims. Also, if the majority of participants in the negotiation (and counterparties to the Plan Support Agreements) hold their primary claim at LBHI or LBSF, then LCPI creditors may not have been adequately represented.

Further, while the Debtors' efforts to formulate a creative and consensual resolution to plan disputes in lieu of litigation is commendable, a plan that reflects the capitulation to the demands of certain large creditors, at the expense of other creditors not

---

11 *Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code* [Docket No. 18125]. Unless otherwise indicated elsewhere in the Objection, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

[2]       Capitalized terms used but not defined in this Preliminary Statement shall have the meaning ascribed to them elsewhere in this Objection.

71504.7

involved in the negotiations, cannot satisfy the fair and equitable test, and a settlement that violates the absolute priority rule by imposing redistributions of recoveries cannot be approved without the consent of the affected classes.  Therefore, the Disclosure Statement should disclose the risk that the Plan may not be confirmed under such circumstances.  Further, even if the Court found that the Plan possibly could satisfy the fair and equitable requirements for confirmation, disclosure of the underlying details of the settlements is necessary to enable creditors to make their own determination whether the settlement embodied in the Plan is, in fact, fair and equitable as to their claims in order for them to make an informed voting decision.

Danske has had informal discussions with the Debtors about these concerns and, to the extent necessary, intends to conduct discovery on these and related issues.  Nevertheless, in light of the substantial financial impact the settlement has had on expected recoveries under the Plan, specific disclosure respecting the settlement and the parties involved therewith should be made for all creditors to make their own informed decisions respecting the Plan.

## BACKGROUND

I.     The Plan and Disclosure Statement

1.     On March 15, 2010 and April 14, 2010, the Debtors filed their first proposed *Joint Chapter 11 Plan for Lehman Brothers Holding, Inc. and its Affiliated Debtors* (the "Debtors' Original Plan") and related disclosure statement [Docket Nos. 7572, 14150, 14151].  On January 25, 2010, the Debtors filed their *First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "First Amended Plan") and a related disclosure statement [Docket Nos. 14150, 14151].

2.     Following the expiration of the Debtors' exclusivity period, on December 15, 2010, an ad hoc group of Lehman Brothers creditors (the "Ad Hoc Group") filed a *Joint*

*Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC* (as revised, the "Ad Hoc Group Plan") and related disclosure statement [Docket Nos. 13504, 13505] providing for substantive consolidation of the Debtors.  The Ad Hoc Group disclosure statement, and any other disclosure statement and related plan filed by a party in interest that complied with the terms of the Initial Scheduling Order (as defined below), would be considered concurrently with the Debtors' motion to approve their disclosure statement.  See *Order Establishing Schedule for Disclosure Statement Hearing and Related Deadlines for Alternative Disclosure Statements and Approving Form and Manner of Notice of Disclosure Statement Hearing* dated April 21, 2011 (the "Initial Scheduling Order") [Docket No. 16180].

3.      On April 25, 2011, a self-styled group of Non-Consolidation Plan Proponents (the "Non-Con Plan Proponents" and together with the Ad Hoc Group, the "Alternative Plan Proponents") filed a *Joint Chapter 11 Plan for Lehman Brothers Holding Inc. and its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC* (the "Non-Consolidation Plan" and together with the Ad Hoc Group Plan, the "Alternative Plans") and related disclosure statement [Docket Nos. 16229, 16230], which did not provide for substantive consolidation of the Debtors.

4.      After negotiations with the Alternative Plan Proponents, among others, on July 1, 2011, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan" or the "Debtors' Plan") and related Disclosure Statement [Docket Nos. 18204, 18205], which is the subject of the Motion.

5.      The Debtors' Plan purportedly embodies the result of negotiations among the Debtors and certain large creditors comprising, among others, members of both groups of

Alternative Plan Proponents.  In exchange for the modifications made by the Debtors to their Plan, many of these creditors executed a "plan support agreement."  Under the terms of the plan support agreements, the supporting creditors agreed to hold in abeyance and not to prosecute or seek confirmation of either of the Alternative Plan Proponents' plans or related disclosure statements at this time.  See *Debtors' Motion for (i) Approval of Stipulation and Order Regarding Chapter 11 Plans and (ii) Stay of Related Discovery* [Docket No. 18306], ¶¶ 1, 10-12.

6.      On June 29, 2011, the Debtors filed the Motion seeking approval of the Disclosure Statement and related relief.

7.      By agreement with the Debtors, the deadline for filing this Objection was extended to August 15, 2011.  A hearing on the Motion is scheduled for August 30, 2011.

II.      Danske's Claim

8.      Danske holds a general unsecured claim in excess of $700 million, one of the largest claims against Lehman Commercial Paper Inc. ("LCPI"), a Debtor in these cases.  In connection with ongoing negotiations with the Debtors, Danske has informed the Debtors that its actual claim amount exceeds the originally filed amount.  Danske is one of the few, perhaps only, large general unsecured creditors of LCPI with its primary claim against LCPI and not the estate of another Debtor.  Danske did not participate in the Debtors' Plan negotiations, nor was it invited to the negotiation session(s).

9.      It is Danske's understanding that the Debtors are working with certain creditors that intend to object to the Plan to formulate a new discovery protocol respecting the Plan.  Danske has been in informal discussions with the Debtors in an attempt to have many of its questions and issues respecting the Plan answered and resolved.  To the extent a resolution is

not reached, Danske intends to participate in the Plan discovery and hereby reserves all its rights with respect thereto.

## <u>OBJECTION</u>

10.    While the Disclosure Statement clearly contains an abundance of information (to wit, hundreds of pages of information), it cannot be approved in its current form because it does not contain "adequate information" as required by section 1125(b) of the Bankruptcy Code. The Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable [a hypothetical investor typical of the holders of claims or interests  in the case] of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

11.    Adequate information in a disclosure statement is critical to ensuring that parties in interest may form a reasoned opinion as to whether to vote in favor of the proposed plan.  See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) (disclosure must be "full and fair"); Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988).  What constitutes adequate information will depend on the unique facts of a plan and the underlying case.  Oneida Motor Freight, Inc., 484 F.2d at 417 ("adequate information will be determined [based upon] the facts and circumstances of each case").  Moreover, adequate disclosure requires not only enough information "but also that what is said is not misleading."  In re Adelphia Commc'ns Corp., 352 B.R. 592, 600-601 (Bankr. S.D.N.Y. 2006) ("[A]n adequate disclosure determination requires a bankruptcy court to find not just that there is enough

information there, but also that what is said is not misleading. . . . [A] court properly [cannot] approve . . . solicitation material when it believes or suspects that the facts are inaccurate, or leave out mention of other facts . . . whose omission makes the facts that were disclosed misleading.").

12.     Here, the Plan is founded upon a settlement reached between the Debtors and primarily two groups of creditors that had proposed competing Alternative Plans.  Upon information and belief, those groups of creditors hold their primary claims against either LBSF or LBHI,[3] and the Creditors' Committee is predominantly comprised of LBHI bondholder representatives.  Although the Disclosure Statement certainly provides a plethora of information, specific information respecting the factors and considerations leading to the settlement, and the parties involved therewith, cannot be readily ascertained from the Disclosure Statement such that a reasonable creditor could make an informed decision about whether to accept or reject the Plan. For instance, the Disclosure Statement raises the following questions, among others:

- What value was given to various claims of LCPI against LBHI that appear to have been ultimately forfeited?  For example, the Debtors use a wholly inappropriate analysis to value LCPI's REPO claims against LBHI and such distorted methodology is self-serving and gives too much value to LBHI.  Under the proper analysis, tens of million dollars would be reallocated to LCPI just based on the inter-company REPO relating to Danske's REPO alone.

- Once certain distributions are taken from creditors of LCPI and other Debtors, and turned over to the LBHI bondholders as proposed under the Plan, what are the estimated and maximum recoveries that the LBHI bondholders could receive, and how do those amounts compare to the recoveries under a full substantively consolidated plan as initially sought by the LBHI bondholders under the Ad Hoc Group Plan?

- How was LCPI's preference claim against LBHI respecting its transfer of notes relating to a series of securitization vehicles to LBHI during the

---

[3]     While the parties that have signed plan support agreements may have claims scattered throughout these cases, Danske believes such parties' primary claims are against LBSF or LBHI.

ninety (90) days prior to LCPI's Petition Date valued in the global settlement?

- Why is LCPI, which through the Petition Date was a wholly-owned subsidiary of LBI, a regulated entity, subject to as much as a 20% risk of substantive consolidation with LBHI?

13.    Moreover, while the Disclosure Statement lists various creditors that support the Plan, it should also disclose the class in which such creditors hold their largest claim (for which they remain the beneficial holder).  If, for example, the primary claim of most of the plan support creditors is against LBHI or LBSF, omitting such information from the Disclosure Statement may give other creditors the misimpression that support for the Plan crosses more classes of claims than it really does.  This lack of specificity surrounding the settlement and the parties involved therewith could unduly influence votes is therefore a material omission from the Disclosure Statement in these cases.

14.    After filing their First Amended Plan, the Debtors noted that they had "been laboring in negotiations to gain consensus and support for their plan," and that the First Amended Plan was "the result of extended discussions and creditor input and propose[d] to resolve the multifaceted issues raised by the [cases] . . . in a fair and reasonable manner and obviate[] potentially extended, prolix, and burdensome litigation."  *Debtors' Opposition and Objection to Motion of the Ad Hoc Group of Lehman Brothers Creditors,* [Docket No. 15744] at ¶¶ 2-3.  Nevertheless, the Debtors subsequently engaged in negotiations with the Alternative Plan Proponents.  Notwithstanding the Debtors' and other parties' efforts in reaching a consensus concerning these "multifaceted issues" in their second amended Plan, litigation risks still are not yet obviated (a point which the Disclosure Statement should clarify).  And despite threats that the current Plan can not be altered without losing all support, to the extent the settlement, and consequently the Plan's terms, unduly favors certain creditors, the Plan can likely still be

71504.7

creatively fashioned to balance the impact of the settlement, resulting in a truly global resolution and substantially consensual Plan.

15.     As mentioned above, and for the reasons stated herein, Danske intends to conduct discovery respecting these Plan and Disclosure Statement related issues in order to make its own ultimate determination about whether the Plan is fair and equitable as to LCPI general unsecured creditors and whether Danske should accept the Plan.  Nevertheless, Danske submits that, because the settlement with Alternative Plan Proponents was such a key factor to the formulation of the terms of the Plan, more specific information surrounding the settlement and the Plan provisions that resulted from such settlement is warranted in these cases and should be disclosed and available for all creditors to review and evaluate.

16.     Lastly, Danske objects to one aspect of the proposed voting procedures. Paragraph 34 of the Motion proposes, for the purposes of voting, to give the Debtors unilateral authority to value timely filed proofs of claim that they deem contingent, unliquidated, or disputed in part, at either "one dollar ($1.00)" or solely "in the amount that is liquidated, non-contingent, and undisputed."  Motion, ¶ 34(c)-(d).

17.     Such proposal will unfairly prejudice creditors with legitimate, timely-filed claims based simply on the thinly-veiled premise that the Debtors "dispute" the value of the claim.  The proposed procedures also conflict with Bankruptcy Rule 3018(a), which provides that "the court after notice and hearing may temporarily allow [any] claim or interest **in an amount which the court deems proper** for the purpose of accepting or rejecting a plan."  Bankr. R. 3018(a) (emphasis added).

18.     Danske submits that a timely filed proof of claim should be allowed in the amount of the timely filed claim (or any amended claim to the extent the Court allows such

amended claim) or any amount which *the Court* deems proper.  In particular, in connection with settlement discussions with the Debtors concerning Danske's claims (which discussions commenced shortly after the Petition Date), Danske has informed the Debtors that the actual amount of its claim exceeds the minimum amount set forth in the filed proof of claim.  The Debtors should not be have the unilateral right to determine the amount that claims will be allowed for estimation purposes solely by virtue of their filing an objection to the claim amount.  Pursuant to Bankruptcy Rule 3018, creditors should be afforded sufficient time and an opportunity to present evidence to support allowance, for voting purposes, of a claim amount higher than the purportedly undisputed amount in connection with any estimation hearing.

## RESERVATION OF RIGHTS

19.    Danske expressly reserves its rights to supplement and amend this Objection, seek discovery with respect to same, and introduce evidence at any hearing relating to this Objection, the Disclosure Statement or Plan, without in any way limiting any other rights that Danske may have.  Danske expressly reserves its rights to object to confirmation of the Plan on any grounds, as may be appropriate, including without limitation those set forth herein.

71504.7

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Danske respectfully requests that

the Court deny the Motion unless revised as set forth herein, and grant such other and further

relief as the Court deems just and proper.

Dated: New York, New York
   August 15, 2011

         Respectfully submitted,

         VENABLE LLP

    By:    */s/ Carollynn H.G. Callari*
         Carollynn H.G. Callari
         Michael K. Madden
         Rockefeller Center
         1270 Avenue of the Americas, 24th Floor
         New York, New York  10020
         Telephone:  (212) 307-5500
         Facsimile:  (212) 307-5598
         ccallari@venable.com
         mmadden@venable.com

         *Counsel For Danske Bank A/S, London Branch*

71504.7