WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
**In re**                 :      **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :      **08-13555 (JMP)**
:
            **Debtors.**    :      **(Jointly Administered)**
:
----------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**

**EIGHTH INTERIM FEE APPLICATION**

Name of Applicant:      **Weil, Gotshal & Manges LLP**

Time Period:      February 1, 2011 through and including May 31, 2011

Role in the Case:      Attorneys for the Debtors and Debtors in Possession

Current Application:      Total Fees Requested:  $39,247,426.00

                        Total Expenses Requested:  $1,000,547.07

Prior Applications[1]:   First Interim Fee Application, filed April 13, 2009 [ECF No. 3343], for the period from September 15, 2008 through and including January 31, 2009

    Total Fees & Expenses Requested:  $55,140,791.25

    Total Fees & Expenses Allowed:  $55,140,197.25


Second Interim Fee Application, filed August 14, 2009 [ECF No. 4825], for the period from February 1, 2009 through and including May 31, 2009

    Total Fees & Expenses Requested:  $46,462,615.85

    Total Fees & Expenses Allowed:  $46,191,429.23


Third Interim Fee Application, filed December 14, 2009 [ECF No. 6205], for the period from June 1, 2009 through and including September 30, 2009

    Total Fees & Expenses Requested:  $46,615,231.42

    Total Fees & Expenses Allowed:  $46,266,463.77


Fourth Interim Fee Application, filed April 16, 2010 [ECF No. 8395], for the period from October 1, 2009 through and including January 31, 2010

    Total Fees & Expenses Requested:  $41,385,606.04

    Total Fees & Expenses Allowed:  $40,252,444.70


Fifth Interim Fee Application, filed August 16, 2010 [ECF No. 10791], for the period from February 1, 2010 through and including May 31, 2010

    Total Fees & Expenses Requested:  $47,819,947.03

    Total Fees & Expenses Allowed:  $47,029,684.29


Sixth Interim Fee Application, filed December 15, 2010 [ECF No. 13496], for the period from June 1, 2010 through and including September 30, 2010

    Total Fees & Expenses Requested:  $43,669.789.45

    Total Fees & Expenses Allowed:  Application Pending


Seventh Interim Fee Application, filed June 2, 2011 [ECF No. 17347], for the period from October 1, 2010 through and including January 31, 2011

    Total Fees & Expenses Requested:  $38,071,928.64

    Total Fees & Expenses Allowed:  Application Pending

---

[1] Weil, Gotshal & Manges LLP has reserved all rights with respect to any fees and expenses that have been requested but not yet allowed.

## SUMMARY SHEET FOR THE EIGHTH INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $1,000.00 | 421.80 | $421,800.00 |
| Peter Gruenberger | LIT | 1961 | $1,000.00 | 987.70 | $987,700.00 |
| Ralph I. Miller | LIT | 1972 | $1,000.00 | 383.50 | $364,050.00 |
| Richard P. Krasnow | BFR | 1972 | $1,000.00 | 564.50 | $564,500.00 |
| Gregory D. Hull | LIT | 1973 | $760.00 | 247.50 | $188,100.00 |
| Thomas A. Roberts | CORP | 1973 | $1,000.00 | 9.00 | $9,000.00 |
| Irwin H. Warren | LIT | 1975 | $1,000.00 | 167.10 | $167,100.00 |
| Howard B. Comet | LIT | 1976 | $925.00 | 12.60 | $11,655.00 |
| T. Ray Guy | LIT | 1976 | $900.00 | 143.30 | $128,970.00 |
| William H. Horton, Jr. | TAX | 1976 | $925.00 | 11.70 | $10,822.50 |
| Edward Soto | LIT | 1978 | $1,000.00 | 415.00 | $415,000.00 |
| Elaine Stangland | CORP | 1978 | $975.00 | 12.00 | $11,700.00 |
| Richard A. Rothman | LIT | 1978 | $1,000.00 | 10.60 | $10,600.00 |
| Rupert J. L. Jones | CORP | 1978 | $945.00 | 18.80 | $17,293.50 |
| David I. Bower | TAX | 1979 | $900.00 | 26.90 | $24,210.00 |
| Robert L. Messineo | CORP | 1979 | $1,000.00 | 91.40 | $91,400.00 |
| Alfredo R. Perez | BFR | 1980 | $1,000.00 | 497.00 | $489,500.00 |
| Peter D. Isakoff | LIT | 1980 | $975.00 | 188.80 | $184,080.00 |
| W. M. Bond | CORP | 1980 | $1,000.00 | 662.70 | $662,700.00 |
| Mike Francies | CORP | 1981 | $1,000.00 | 6.00 | $6,000.00 |
| Mindy J. Spector | LIT | 1981 | $1,000.00 | 23.30 | $23,300.00 |
| Jacqueline Marcus | BFR | 1983 | $950.00 | 521.80 | $492,242.50 |
| Alexander D. Lynch | CORP | 1984 | $1,000.00 | 5.40 | $5,400.00 |
| Brenda Coleman | TAX | 1984 | $1,000.00 | 5.90 | $5,900.00 |
| Daniel J. Mette | CORP | 1984 | $865.00 | 64.00 | $55,360.00 |
| Lawrence J. Baer | LIT | 1984 | $780.00 | 36.90 | $28,782.00 |
| Lori R. Fife | BFR | 1984 | $1,000.00 | 718.60 | $708,600.00 |
| Richard A. Morrison | CORP | 1984 | $975.00 | 824.10 | $803,497.50 |
| Richard L. Levine | LIT | 1984 | $950.00 | 309.20 | $288,420.00 |
| Stuart J. Goldring | TAX | 1984 | $1,000.00 | 196.90 | $196,900.00 |

BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jonathan D. Polkes | LIT | 1985 | $1,000.00 | 40.20 | $40,200.00 |
| Andrew N. Norwood | CORP | 1986 | $1,000.00 | 5.60 | $5,600.00 |
| Matthew Bloch | CORP | 1986 | $1,000.00 | 13.60 | $13,600.00 |
| Michael K. Kam | TAX | 1987 | $1,000.00 | 11.00 | $11,000.00 |
| Richard W. Slack | LIT | 1987 | $950.00 | 304.80 | $289,560.00 |
| Annemargaret Connolly | CORP | 1988 | $900.00 | 13.80 | $12,420.00 |
| Jeffrey B. Hitt | CORP | 1988 | $900.00 | 8.30 | $7,470.00 |
| Juliet Blanch | LIT | 1988 | $1,000.00 | 16.40 | $16,200.00 |
| Larry J. Gelbfish | TAX | 1988 | $925.00 | 59.10 | $54,667.50 |
| Eric J. Peterman | CORP | 1989 | $975.00 | 238.20 | $232,245.00 |
| Frank P. Nocco | CORP | 1989 | $1,000.00 | 108.60 | $108,600.00 |
| John B. Strasburger | LIT | 1989 | $875.00 | 36.70 | $32,112.50 |
| Nellie P. Camerik | CORP | 1989 | $925.00 | 830.80 | $761,321.25 |
| Nellie P. Camerik | CORP | 1989 | $845.00 | 30.00 | $25,350.00 |
| Penny P. Reid | LIT | 1989 | $950.00 | 165.80 | $157,510.00 |
| Vernon S. Broderick | LIT | 1989 | $875.00 | 120.10 | $105,087.50 |
| Andrew J. Colao | CORP | 1990 | $925.00 | 37.10 | $34,317.50 |
| Barry Fishley | CORP | 1990 | $990.00 | 16.40 | $16,236.00 |
| Christopher Cox | LIT | 1990 | $900.00 | 275.10 | $247,590.00 |
| Joanne Etherton | TAX | 1990 | $1,000.00 | 52.60 | $52,600.00 |
| Steven M. Margolis | TAX | 1990 | $780.00 | 41.10 | $32,058.00 |
| Adam B. Plainer | BFR | 1991 | $1,000.00 | 259.60 | $259,600.00 |
| Christopher R.J. Pace | LIT | 1991 | $900.00 | 75.30 | $67,770.00 |
| Craig W. Adas | CORP | 1991 | $1,000.00 | 41.10 | $41,100.00 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 49.80 | $49,800.00 |
| Jacky Kelly | CORP | 1991 | $1,000.00 | 10.00 | $10,000.00 |
| Michael E. Lubowitz | CORP | 1991 | $1,000.00 | 75.80 | $75,800.00 |
| Robert N. Chiperfield | CORP | 1991 | $1,000.00 | 363.00 | $363,000.00 |
| Steven K. Ong | CORP | 1991 | $990.00 | 307.00 | $303,930.00 |
| Yvette Ostolaza | LIT | 1992 | $925.00 | 74.60 | $69,005.00 |
| Rodney D. Miller | CORP | 1993 | $1,000.00 | 9.50 | $9,500.00 |
| Vance L. Beagles | LIT | 1993 | $875.00 | 167.30 | $146,387.50 |
| Beatriz Azcuy-Diaz | CORP | 1994 | $850.00 | 332.60 | $282,710.00 |
| Richard A. Ginsburg | CORP | 1994 | $925.00 | 7.40 | $6,845.00 |

| PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Sarah Priestley | TAX | 1994 | $1,000.00 | 8.00 | $8,000.00 |
| Holly E. Loiseau | LIT | 1995 | $850.00 | 129.50 | $110,075.00 |
| Y. S. Grossman | CORP | 1995 | $925.00 | 80.00 | $74,000.00 |
| David E. Wohl | CORP | 1996 | $850.00 | 44.80 | $38,080.00 |
| Jeffrey D. Osterman | CORP | 1996 | $925.00 | 55.70 | $51,522.50 |
| Anthony J. Albanese | LIT | 1997 | $875.00 | 13.30 | $11,637.50 |
| David B. Hird | LIT | 1997 | $900.00 | 5.80 | $5,220.00 |
| Jane E. Morgan | CORP | 1997 | $1,000.00 | 17.00 | $17,000.00 |
| Matthew Shankland | LIT | 1997 | $1,000.00 | 251.20 | $251,200.00 |
| Robert Frastai | TAX | 1997 | $900.00 | 102.30 | $92,070.00 |
| Scarlett E. Collings | LIT | 1997 | $760.00 | 681.50 | $509,010.00 |
| Shai Y. Waisman | BFR | 1997 | $925.00 | 146.70 | $135,697.50 |
| David R. Fertig | LIT | 1998 | $850.00 | 283.90 | $241,315.00 |
| Scott M. Sontag | TAX | 1998 | $900.00 | 67.00 | $60,300.00 |
| Arnold Buessemaker | CORP | 1999 | $745.00 | 80.90 | $60,270.50 |
| Gregory S. Silbert | LIT | 1999 | $760.00 | 5.60 | $4,256.00 |
| Linton Bloomberg | BFR | 1999 | $945.00 | 125.30 | $118,408.50 |
| Nancy E. Lynch | CORP | 1999 | $760.00 | 289.00 | $219,640.00 |
| Randi W. Singer | LIT | 1999 | $850.00 | 240.80 | $204,680.00 |
| Yolanda C. Garcia | LIT | 1999 | $800.00 | 26.30 | $21,040.00 |
| Ardith Bronson | LIT | 2000 | $760.00 | 299.50 | $227,620.00 |
| Elisa R. Lemmer | BFR | 2000 | $760.00 | 136.90 | $104,044.00 |
| David Herman | CORP | 2001 | $790.00 | 580.60 | $458,674.00 |
| David Herman | CORP | 2001 | $700.00 | 10.20 | $7,140.00 |
| Robert J. Lemons | BFR | 2001 | $850.00 | 344.10 | $287,385.00 |
| Paullette C. Deruelle | LIT | 2002 | $760.00 | 203.50 | $154,660.00 |
| Ronit J. Berkovich | BFR | 2002 | $810.00 | 113.70 | $92,097.00 |
| **Total:** | | | | **16,125.40** | **$14,880,818.25** |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | LIT | 1975 | $665.00 | 162.90 | $108,328.50 |
| Ricardo P. Pellafone | LIT | 1985 | $645.00 | 51.70 | $33,346.50 |
| Alan R. Kusinitz | LIT | 1986 | $750.00 | 11.70 | $8,775.00 |
| Jessica Costa | LIT | 1991 | $495.00 | 37.40 | $18,513.00 |
| Ariel Kronman | CORP | 1993 | $700.00 | 251.20 | $174,895.00 |
| Leslie S. Smith | CORP | 1995 | $750.00 | 22.50 | $16,875.00 |
| Elizabeth A. Martialay | CORP | 1996 | $740.00 | 118.20 | $87,468.00 |
| Laura S. Mello | LIT | 1996 | $290.00 | 10.00 | $2,900.00 |
| Melissa Meyrowitz | CORP | 1996 | $750.00 | 10.00 | $7,500.00 |
| Meredith Parenti | LIT | 1996 | $750.00 | 300.00 | $225,000.00 |
| Konrad Von Buchwaldt | CORP | 1998 | $540.00 | 10.70 | $5,778.00 |
| Konstantin Hoppe | CORP | 1998 | $540.00 | 58.20 | $31,428.00 |
| David W. Dummer | LIT | 1999 | $750.00 | 509.70 | $366,112.50 |
| Eugene J. Ng | CORP | 1999 | $740.00 | 157.40 | $116,476.00 |
| Christy K. Kailis | BFR | 2000 | $865.00 | 291.20 | $251,888.00 |
| Kirsten A. Noethen | CORP | 2000 | $630.00 | 11.60 | $7,308.00 |
| Kristen D. Perrault | LIT | 2000 | $290.00 | 110.70 | $32,103.00 |
| Andrew R. Swartz | LIT | 2001 | $750.00 | 33.60 | $25,200.00 |
| Astrid N. Sandberg | LIT | 2001 | $770.00 | 26.20 | $20,174.00 |
| Elliot Ganchrow | CORP | 2001 | $750.00 | 5.50 | $4,125.00 |
| Inbal Naveh | LIT | 2001 | $430.00 | 5.20 | $2,236.00 |
| Marcie R. Kaufman | LIT | 2001 | $685.00 | 72.90 | $49,731.00 |
| Margarita Platkov | LIT | 2001 | $740.00 | 128.40 | $85,951.00 |
| Robyn Lewis | LIT | 2001 | $430.00 | 53.20 | $22,876.00 |
| Adam M. Schloss | LIT | 2002 | $750.00 | 131.70 | $98,775.00 |
| Airi Hammalov | CORP | 2002 | $685.00 | 7.00 | $4,795.00 |
| Arman Kuyumjian | CORP | 2002 | $740.00 | 114.20 | $84,508.00 |
| Charles J. Maples | LIT | 2002 | $825.00 | 168.60 | $139,095.00 |
| Eleanor H. Gilbane | LIT | 2002 | $750.00 | 340.30 | $249,412.50 |
| Jay H. Park Jr. | CORP | 2002 | $685.00 | 16.40 | $11,234.00 |
| Nathanael J. Christensen | CORP | 2002 | $740.00 | 12.70 | $9,398.00 |
| Andrew W. Nelson | CORP | 2003 | $740.00 | 11.30 | $8,362.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation,  ** – UK Trainee Associate,
‡ – Not yet admitted to the bar

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Denise Alvarez | LIT | 2003 | $750.00 | 92.90 | $69,675.00 |
| Edward McCarthy | LIT | 2003 | $740.00 | 433.10 | $320,494.00 |
| Erin D. Eckols | LIT | 2003 | $740.00 | 514.80 | $371,998.00 |
| Lavell Malloy | LIT | 2003 | $750.00 | 55.30 | $41,475.00 |
| Lori M. Schiffer | CORP | 2003 | $750.00 | 22.30 | $16,725.00 |
| Marisa L. Ferraro | CORP | 2003 | $750.00 | 238.90 | $179,175.00 |
| Alcira Moncada | LIT | 2004 | $290.00 | 59.20 | $17,168.00 |
| Allen S. Blaustein | LIT | 2004 | $720.00 | 296.20 | $213,264.00 |
| Benjamin L. Stewart | LIT | 2004 | $685.00 | 118.90 | $81,446.50 |
| Caroline Hickey Zalka | LIT | 2004 | $685.00 | 8.60 | $5,891.00 |
| David R. Singh | LIT | 2004 | $740.00 | 93.50 | $69,190.00 |
| Garrett Fail | BFR | 2004 | $740.00 | 734.90 | $536,611.00 |
| Hannah L. Field | LIT | 2004 | $825.00 | 358.60 | $287,471.25 |
| John T. O'Connor | LIT | 2004 | $600.00 | 401.30 | $232,680.00 |
| Jordan K. Kolar | TAX | 2004 | $740.00 | 6.90 | $5,106.00 |
| Liani G. Kotcher | LIT | 2004 | $720.00 | 213.70 | $153,864.00 |
| Max A. Goodman | TAX | 2004 | $740.00 | 138.20 | $102,268.00 |
| Michael Firestone | LIT | 2004 | $740.00 | 335.10 | $247,974.00 |
| Mirella B. Hart | CORP | 2004 | $825.00 | 463.90 | $382,717.50 |
| Oliver D. Walker | TAX | 2004 | $825.00 | 47.50 | $39,187.50 |
| Robert C. Shmalo | CORP | 2004 | $740.00 | 286.90 | $212,306.00 |
| Robert Konig | CORP | 2004 | $685.00 | 51.70 | $35,414.50 |
| Robert S. Velevis | LIT | 2004 | $720.00 | 538.90 | $366,228.00 |
| Blandine Perret | BFR | 2005 | $770.00 | 444.10 | $341,957.00 |
| Gemma Bullmore | LIT | 2005 | $770.00 | 434.80 | $333,140.50 |
| Hyun K. Kim | CORP | 2005 | $720.00 | 202.60 | $145,872.00 |
| Hyun Kang Kim | CORP | 2005 | $495.00 | 56.10 | $27,769.50 |
| Jaime S. Kaplan | LIT | 2005 | $685.00 | 363.00 | $233,208.25 |
| Julian Chatterton | LIT | 2005 | $470.00 | 96.60 | $45,143.50 |
| Julie A. Markum | CORP | 2005 | $685.00 | 338.10 | $231,598.50 |
| Kevin F. Meade | LIT | 2005 | $720.00 | 42.20 | $30,384.00 |
| Kirsten A. Noethen | CORP | 2005 | $720.00 | 9.30 | $6,444.00 |
| Mark I. Bernstein | BFR | 2005 | $720.00 | 693.50 | $498,780.00 |
| Pejman Razavilar | CORP | 2005 | $740.00 | 549.20 | $406,408.00 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Robert C. Roesch | LIT | 2005 | $685.00 | 11.50 | $7,877.50 |
| Samuel J. Comer | CORP | 2005 | $720.00 | 348.70 | $251,064.00 |
| Benay H. Lizarazu | CORP | 2006 | $750.00 | 99.80 | $74,850.00 |
| Benay H. Lizarazu | CORP | 2006 | $695.00 | 30.10 | $20,919.50 |
| Benton B. Bodamer | CORP | 2006 | $645.00 | 23.60 | $15,222.00 |
| Bryant S. York | LIT | 2006 | $685.00 | 105.00 | $71,616.75 |
| Damon P. Meyer | BFR | 2006 | $685.00 | 130.90 | $89,666.50 |
| Emily L. Gold | CORP | 2006 | $685.00 | 386.20 | $262,766.00 |
| Emily L. Gold | CORP | 2006 | $595.00 | 34.80 | $20,706.00 |
| Lauren B. Lipson | CORP | 2006 | $685.00 | 110.40 | $75,624.00 |
| Lauren Hoelzer | LIT | 2006 | $645.00 | 295.50 | $190,597.50 |
| Marc Weinroth | LIT | 2006 | $600.00 | 127.10 | $72,870.00 |
| Naomi Munz | CORP | 2006 | $750.00 | 72.90 | $54,675.00 |
| Thomas Caldwell | CORP | 2006 | $645.00 | 54.00 | $34,830.00 |
| Tomasz Kulawik | CORP | 2006 | $560.00 | 41.70 | $23,352.00 |
| Aida P. Santillan | TAX | 2007 | $685.00 | 18.80 | $12,878.00 |
| Alicia L. Speake | CORP | 2007 | $665.00 | 22.30 | $14,829.50 |
| Amanjit Arora | BFR | 2007 | $645.00 | 745.60 | $479,299.50 |
| Andrew R. Fox | LIT | 2007 | $665.00 | 66.10 | $43,956.50 |
| Ariane Newell | LIT | 2007 | $600.00 | 151.70 | $91,020.00 |
| Cassie Waduge | CORP | 2007 | $600.00 | 49.80 | $29,880.00 |
| Christine Doktor | LIT | 2007 | $600.00 | 569.90 | $341,940.00 |
| Conray C. Tseng | BFR | 2007 | $645.00 | 174.00 | $112,230.00 |
| Evert J. Christensen | LIT | 2007 | $600.00 | 50.70 | $30,420.00 |
| Jennifer M. Oliver | LIT | 2007 | $600.00 | 14.30 | $8,580.00 |
| John Butenas | CORP | 2007 | $750.00 | 428.20 | $321,150.00 |
| Julio C. Gurdian | BFR | 2007 | $645.00 | 8.70 | $5,611.50 |
| Justin D. Pauls | BFR | 2007 | $600.00 | 105.50 | $63,300.00 |
| Lara Kuehl | LIT | 2007 | $665.00 | 245.50 | $163,257.50 |
| Lynn Bodkin | CORP | 2007 | $750.00 | 19.00 | $14,250.00 |
| Marisa L. Ferraro | CORP | 2007 | $685.00 | 19.20 | $13,152.00 |
| Ramon E. Mercedes | CORP | 2007 | $600.00 | 22.90 | $13,740.00 |
| Sarah M. Decker | LIT | 2007 | $645.00 | 281.10 | $173,311.50 |
| Sunny J. Thompson | LIT | 2007 | $560.00 | 386.90 | $211,512.00 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Sunny Singh | BFR | 2007 | $645.00 | 769.90 | $495,489.00 |
| Thomas A. Falkus | CORP | 2007 | $665.00 | 12.60 | $8,379.00 |
| Allison M. Warner | LIT | 2008 | $720.00 | 34.00 | $24,480.00 |
| Amanda M. Hendy | BFR | 2008 | $560.00 | 694.70 | $389,032.00 |
| Aubree L. Corallo | CORP | 2008 | $560.00 | 28.40 | $15,904.00 |
| Brandon E. Cherry | CORP | 2008 | $645.00 | 10.60 | $6,837.00 |
| Brennan Hackett | BFR | 2008 | $600.00 | 495.00 | $296,400.00 |
| Brianna N. Benfield | BFR | 2008 | $560.00 | 5.50 | $3,080.00 |
| Carrie Suen | CORP | 2008 | $435.00 | 12.40 | $5,394.00 |
| Casey A. Burton | LIT | 2008 | $560.00 | 164.40 | $92,064.00 |
| Christina M. Manthei | BFR | 2008 | $600.00 | 145.70 | $87,420.00 |
| Debora Hoehne | BFR | 2008 | $600.00 | 6.30 | $3,780.00 |
| Elizabeth R. Todd | CORP | 2008 | $590.00 | 14.80 | $8,732.00 |
| Emily L. Katz | LIT | 2008 | $600.00 | 70.60 | $42,360.00 |
| Farbod Solaimani | TAX | 2008 | $600.00 | 43.00 | $25,800.00 |
| Frank Martire | CORP | 2008 | $600.00 | 20.50 | $12,300.00 |
| Jakub Biernacki | CORP | 2008 | $600.00 | 66.30 | $39,780.00 |
| Jennifer D. Larson | LIT | 2008 | $560.00 | 144.20 | $80,752.00 |
| Joseph Abadi | CORP | 2008 | $600.00 | 36.40 | $21,840.00 |
| Joyce Du | CORP | 2008 | $400.00 | 7.90 | $3,160.00 |
| Julie T. Friedman | BFR | 2008 | $500.00 | 411.60 | $205,800.00 |
| June Kyung Lee | LIT | 2008 | $600.00 | 175.30 | $97,080.00 |
| Justin G. Mapes | CORP | 2008 | $740.00 | 139.10 | $102,934.00 |
| Kate McGovern | LIT | 2008 | $290.00 | 50.80 | $14,732.00 |
| Kristen L. Depowski | CORP | 2008 | $560.00 | 230.90 | $129,304.00 |
| Lacey Laken | BFR | 2008 | $600.00 | 51.90 | $31,140.00 |
| Lauren L. Zerbinopoulos | LIT | 2008 | $560.00 | 593.20 | $332,192.00 |
| Lisa N. Cloutier | LIT | 2008 | $600.00 | 39.40 | $23,640.00 |
| Marisa A. Sotomayor | CORP | 2008 | $600.00 | 83.40 | $50,040.00 |
| Maurice Horwitz | BFR | 2008 | $600.00 | 644.70 | $381,690.00 |
| Melissa Colon-Bosolet | LIT | 2008 | $600.00 | 177.20 | $105,900.00 |
| Neil H. Vaishnav | LIT | 2008 | $495.00 | 17.40 | $8,613.00 |
| Philip Ratner | CORP | 2008 | $600.00 | 12.00 | $7,200.00 |
| Qiong Sun | CORP | 2008 | $645.00 | 14.70 | $9,481.50 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Richard I. Ellenbogen | CORP | 2008 | $590.00 | 43.50 | $25,665.00 |
| Richard R. Cook | LIT | 2008 | $600.00 | 23.20 | $13,920.00 |
| Simon Saitowitz | CORP | 2008 | $590.00 | 5.60 | $3,304.00 |
| Stacey M. Mayer | LIT | 2008 | $560.00 | 16.60 | $9,296.00 |
| Stephen Edwards | TAX | 2008 | $590.00 | 8.90 | $5,251.00 |
| Steven B. Stein | CORP | 2008 | $600.00 | 47.30 | $28,380.00 |
| Sujan H. Trivedi | LIT | 2008 | $645.00 | 580.80 | $373,971.00 |
| Sumana Setty | CORP | 2008 | $650.00 | 43.80 | $28,470.00 |
| Susan Fiore | CORP | 2008 | $600.00 | 76.20 | $45,720.00 |
| Victoria Neave | LIT | 2008 | $430.00 | 100.30 | $43,129.00 |
| Vigdis Bronder | CORP | 2008 | $600.00 | 23.70 | $14,220.00 |
| Abraham Sinensky | TAX | 2009 | $430.00 | 24.70 | $10,621.00 |
| Adam B. Banks | LIT | 2009 | $560.00 | 114.10 | $63,896.00 |
| Adam J. Feit | CORP | 2009 | $560.00 | 7.20 | $4,032.00 |
| Alexander R. Liroff | CORP | 2009 | $495.00 | 619.20 | $306,504.00 |
| Alicia F. Castro | LIT | 2009 | $495.00 | 107.80 | $53,361.00 |
| Allen T. Yancy | LIT | 2009 | $645.00 | 201.80 | $126,065.25 |
| Andrew Pelzer | TAX | 2009 | $430.00 | 11.40 | $4,902.00 |
| Bambo Obaro | LIT | 2009 | $495.00 | 57.70 | $28,561.50 |
| Blaire Cahn | BFR | 2009 | $600.00 | 84.90 | $50,940.00 |
| Brandon E. Miller | LIT | 2009 | $600.00 | 6.80 | $4,080.00 |
| Brian C. Drozda | CORP | 2009 | $560.00 | 67.10 | $37,576.00 |
| Cariza D. Arnedo | LIT | 2009 | $430.00 | 31.30 | $13,459.00 |
| Caroline K. Simons | LIT | 2009 | $560.00 | 204.10 | $114,296.00 |
| Cassie Kimmelman | CORP | 2009 | $560.00 | 17.50 | $9,800.00 |
| Christopher G. Bradley | LIT | 2009 | $495.00 | 145.70 | $72,121.50 |
| Christopher T. Luise | LIT | 2009 | $560.00 | 26.20 | $14,672.00 |
| Daniel S. Klein | LIT | 2009 | $600.00 | 213.80 | $128,280.00 |
| David A. Cohen | CORP | 2009 | $560.00 | 224.60 | $125,776.00 |
| David P. Byeff | LIT | 2009 | $560.00 | 62.40 | $34,944.00 |
| Edward Wu | BFR | 2009 | $495.00 | 87.10 | $43,114.50 |
| Eileen Hren Citron | LIT | 2009 | $495.00 | 209.00 | $103,455.00 |
| Elizabeth M. Velez | LIT | 2009 | $495.00 | 85.00 | $42,075.00 |
| Eric Kasenetz | BFR | 2009 | $495.00 | 653.60 | $323,358.75 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Hongan N. Tran | LIT | 2009 | $495.00 | 28.70 | $14,206.50 |
| Jannelle M. Seales | CORP | 2009 | $600.00 | 52.80 | $31,680.00 |
| Jenna E. Schaeffer | CORP | 2009 | $560.00 | 5.60 | $3,136.00 |
| Jennifer Cheng | CORP | 2009 | $600.00 | 97.10 | $58,260.00 |
| Jodie A. Dunlap | BFR | 2009 | $530.00 | 43.10 | $22,843.00 |
| John C. Ligon | LIT | 2009 | $430.00 | 110.60 | $47,558.00 |
| Kathy A. Le | CORP | 2009 | $645.00 | 138.10 | $89,074.50 |
| Kavita Christina Desai | LIT | 2009 | $560.00 | 268.10 | $150,136.00 |
| Kristen M. Echemendia | LIT | 2009 | $560.00 | 95.10 | $53,256.00 |
| Lane E. Morgan | TAX | 2009 | $495.00 | 14.90 | $7,375.50 |
| Lee J. Goldberg | BFR | 2009 | $560.00 | 497.00 | $277,844.00 |
| Nadya Salcedo | LIT | 2009 | $560.00 | 230.90 | $129,304.00 |
| Olivia Miller | LIT | 2009 | $430.00 | 141.30 | $60,759.00 |
| Patricia Astorga | LIT | 2009 | $560.00 | 152.40 | $85,344.00 |
| R. Todd Hatcher | TAX | 2009 | $560.00 | 5.40 | $3,024.00 |
| Scott M. Litvinoff | LIT | 2009 | $560.00 | 165.50 | $92,680.00 |
| Tanya Forde-Chandler | CORP | 2009 | $560.00 | 12.90 | $7,224.00 |
| Tara Lancaster | TAX | 2009 | $430.00 | 52.10 | $22,403.00 |
| Tashanna B. Pearson | LIT | 2009 | $560.00 | 50.80 | $28,448.00 |
| Tracy K. Bookspan | CORP | 2009 | $560.00 | 26.90 | $15,064.00 |
| U-Hyeon Kwon | CORP | 2009 | $645.00 | 41.30 | $26,638.50 |
| William J. Carter | CORP | 2009 | $530.00 | 45.50 | $24,115.00 |
| Zaw Win | BFR | 2009 | $560.00 | 601.50 | $335,860.00 |
| Abeer Garousha | BFR | 2010 | $470.00 | 337.10 | $158,437.00 |
| Ajit Gokhale | TAX | 2010 | $560.00 | 237.60 | $133,056.00 |
| Andrea Y. Loh | LIT | 2010 | $560.00 | 79.00 | $44,240.00 |
| Avon Khowong | CORP | 2010 | $430.00 | 5.00 | $2,150.00 |
| Candace Arthur | BFR | 2010 | $495.00 | 689.60 | $341,352.00 |
| Carlos Larkin | CORP | 2010 | $430.00 | 94.40 | $40,592.00 |
| Catherine Gurney | LIT | 2010 | $470.00 | 447.20 | $210,184.00 |
| Christina M. Trapani | LIT | 2010 | $430.00 | 584.30 | $251,249.00 |
| Christopher Gismondi | LIT | 2010 | $495.00 | 10.60 | $5,247.00 |
| Devin Cain | LIT | 2010 | $430.00 | 85.80 | $36,894.00 |
| Elana R. Pollak | LIT | 2010 | $560.00 | 385.30 | $215,488.00 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Emily Wapples | CORP | 2010 | $470.00 | 521.70 | $245,199.00 |
| Eric S. Wolfish | LIT | 2010 | $495.00 | 10.70 | $5,296.50 |
| Erika del Nido | BFR | 2010 | $495.00 | 782.20 | $387,189.00 |
| Jaclyn M. Essinger | LIT | 2010 | $430.00 | 21.40 | $9,202.00 |
| Janelle Weinstock | CORP | 2010 | $430.00 | 12.50 | $5,375.00 |
| Jennifer M. Nelsen | LIT | 2010 | $600.00 | 428.20 | $254,880.00 |
| Jennifer N. Ganesh | BFR | 2010 | $560.00 | 87.90 | $49,224.00 |
| Justin C. Lee | CORP | 2010 | $495.00 | 90.70 | $44,896.50 |
| Justin D. Yi | CORP | 2010 | $495.00 | 6.30 | $3,118.50 |
| Kyle J. Ortiz | BFR | 2010 | $430.00 | 117.50 | $50,525.00 |
| Lara Bueso | LIT | 2010 | $430.00 | 30.90 | $13,287.00 |
| Laura Friederike Brauers | CORP | 2010 | $340.00 | 19.80 | $6,732.00 |
| Lynn Shanshal | CORP | 2010 | $470.00 | 290.10 | $136,347.00 |
| Paul T. DeRousselle | LIT | 2010 | $430.00 | 25.70 | $11,051.00 |
| Peter J. Ibrahim | BFR | 2010 | $530.00 | 139.70 | $74,041.00 |
| Rachel S. Vigneaux | CORP | 2010 | $430.00 | 72.20 | $31,046.00 |
| Sam Limmer | CORP | 2010 | $495.00 | 167.40 | $82,863.00 |
| Shrutee Raina | LIT | 2010 | $495.00 | 124.70 | $61,726.50 |
| Tracy Burgess | CORP | 2010 | $495.00 | 58.70 | $29,056.50 |
| Amy B. Wolper | BFR | 2011 | $430.00 | 65.20 | $28,036.00 |
| Amy Reed | LIT | 2011 | $430.00 | 7.00 | $3,010.00 |
| Joshua I. Schlenger | LIT | 2011 | $430.00 | 199.70 | $85,871.00 |
| Markus Stappmanns | CORP | 2011 | $335.00 | 139.90 | $46,866.50 |
| Matthew E. Schwartz | CORP | 2011 | $430.00 | 55.50 | $23,865.00 |
| Mei Dan | CORP | 2011 | $430.00 | 53.10 | $22,833.00 |
| Raquel Kellert | LIT | 2011 | $430.00 | 162.30 | $69,789.00 |
| Christopher Marks | LIT | ** | $250.00 | 56.00 | $13,250.00 |
| Emma Robinson | CORP | ** | $255.00 | 135.50 | $34,552.50 |
| Emma Rubin | CORP | ** | $295.00 | 165.10 | $48,704.50 |
| Frazer Money | TAX | ** | $295.00 | 27.90 | $8,230.50 |
| Hayley Lund | BFR | ** | $255.00 | 38.30 | $9,766.50 |
| Helen Jones | CORP | ** | $295.00 | 21.50 | $5,900.00 |
| James Crook | CORP | ** | $295.00 | 36.80 | $10,856.00 |
| James Nierinck | CORP | ** | $295.00 | 12.20 | $3,481.00 |

| ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Oliver Prakash-Jenkins | LIT | ** | $255.00 | 140.40 | $33,978.75 |
| Rosemary Whittington | LIT | ** | $255.00 | 207.30 | $51,063.75 |
| Sandra Y. Fusco | LIT | ** | $495.00 | 33.20 | $16,434.00 |
| Seunghi Ha | LIT | ** | $255.00 | 319.90 | $81,192.00 |
| Thomas Wheaton | CORP | ** | $255.00 | 37.60 | $9,460.50 |
| Tomasz Rodzoch | LIT | ** | $255.00 | 123.80 | $30,829.50 |
| Adam Lavine | BFR | ‡ | $430.00 | 98.60 | $42,398.00 |
| Arezo S. Yazd | CORP | ‡ | $430.00 | 55.40 | $23,822.00 |
| Ryan Martin | BFR | ‡ | $430.00 | 606.20 | $260,666.00 |
| **Total:** | | | | **38,543.40** | **$22,971,535.75** |

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Kathleen Lee | BFR | $310.00 | 167.00 | $51,770.00 |
| Alcira Moncada | LIT | $290.00 | 19.00 | $5,510.00 |
| Christopher A. Stauble | BFR | $290.00 | 565.00 | $163,850.00 |
| Kate McGovern | LIT | $290.00 | 17.40 | $5,046.00 |
| Suzanne Inglis | LIT | $290.00 | 100.40 | $29,116.00 |
| Snjezana Pesa | LIT | $275.00 | 7.20 | $1,980.00 |
| Angela Oliva | LIT | $265.00 | 27.60 | $7,314.00 |
| Barbara Frayle | CORP | $265.00 | 214.20 | $56,763.00 |
| Crystal McCray | LIT | $265.00 | 97.80 | $25,917.00 |
| Deborah C. Flinn | LIT | $265.00 | 5.10 | $1,351.50 |
| Jo Nan Burns | LIT | $265.00 | 5.30 | $1,404.50 |
| John A. Ellsworth | CORP | $265.00 | 64.90 | $17,198.50 |
| Lori A. Seavey | BFR | $265.00 | 171.60 | $45,474.00 |
| Lougran Potter | LIT | $265.00 | 8.40 | $2,226.00 |
| Nancy P. Cade | LIT | $265.00 | 146.10 | $38,716.50 |
| Odalys C. Smith | LIT | $265.00 | 118.00 | $31,270.00 |
| Sarah B. Roberts | BFR | $265.00 | 74.70 | $19,795.50 |
| Bill K. Chan | CORP | $250.00 | 21.40 | $5,212.50 |
| Camille A. George | LIT | $250.00 | 99.40 | $24,850.00 |
| Christine Guthrie | CORP | $250.00 | 44.00 | $11,000.00 |
| Daniel Decker | LIT | $250.00 | 197.60 | $49,400.00 |
| Doe Y. Oh | CORP | $250.00 | 55.60 | $13,900.00 |
| Francheska Marquez | CORP | $250.00 | 10.60 | $2,650.00 |
| Herbert Chan | LIT | $250.00 | 97.30 | $24,325.00 |
| Jeremy A. Sykes | LIT | $250.00 | 33.30 | $8,325.00 |
| Tashan Q. Reid | CORP | $250.00 | 24.60 | $6,150.00 |
| William H. Gordon | LIT | $250.00 | 30.40 | $7,600.00 |
| Amy Sacks | LSS | $235.00 | 11.50 | $2,702.50 |
| Cheryl Eng-Bendel | LSS | $235.00 | 10.10 | $2,373.50 |
| Kim Wu | LSS | $235.00 | 29.20 | $6,862.00 |
| Ann M Scarpa | LIT | $230.00 | 208.20 | $47,886.00 |
| Dannan Fan | LIT | $230.00 | 23.10 | $5,313.00 |

* BFR – Business Finance & Restructuring,  CORP – Corporate,  LIT – Litigation, LSS – Litigation Support Services,  LIB – Library

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Duke Amponsah | BFR | $230.00 | 63.10 | $14,375.00 |
| Elizabeth E. Melson | LIT | $230.00 | 99.60 | $22,908.00 |
| Nicole K. Aliseo | BFR | $230.00 | 177.40 | $40,802.00 |
| Pauline Justice | LIT | $230.00 | 11.90 | $2,737.00 |
| Sean P. Devaney | CORP | $230.00 | 9.20 | $2,116.00 |
| Victoria A. Bennett | LIT | $230.00 | 57.80 | $13,294.00 |
| Artur Robin | LSS | $220.00 | 7.60 | $1,672.00 |
| Jason E. Masurka | LSS | $220.00 | 6.50 | $1,430.00 |
| Julie B. Mukendi | LIT | $220.00 | 132.10 | $29,062.00 |
| Justin Benjamin | LSS | $220.00 | 23.90 | $5,258.00 |
| Lara Calabrese | LSS | $220.00 | 18.40 | $4,048.00 |
| Peter Nudelman | LSS | $220.00 | 9.80 | $2,156.00 |
| MaryAnne Bollen | LSS | $215.00 | 34.30 | $7,374.50 |
| Merlyn Aaron-Betton | LIT | $210.00 | 5.80 | $1,218.00 |
| Robert Condon | LIT | $210.00 | 164.00 | $34,440.00 |
| Andrea Wilmer | BFR | $200.00 | 78.00 | $15,500.00 |
| Bill K. Chan | CORP | $200.00 | 9.50 | $1,900.00 |
| Donald Etienne | BFR | $200.00 | 344.10 | $66,230.00 |
| LaSonya R. Stewart | LIT | $200.00 | 5.70 | $1,140.00 |
| Matthew Schoenfeld | BFR | $200.00 | 614.30 | $122,860.00 |
| Melissa J. Friedman | LIT | $200.00 | 10.00 | $2,000.00 |
| Michael P. Welby | LSS | $200.00 | 35.90 | $7,180.00 |
| Michael T. Tily | CORP | $200.00 | 23.50 | $4,700.00 |
| Pilar Villa | LIT | $200.00 | 77.00 | $15,400.00 |
| Rachel Shapiro | BFR | $200.00 | 221.90 | $44,380.00 |
| Sabrina M. Ialuna | LIT | $200.00 | 21.80 | $4,360.00 |
| Stephanie A. Schiffman | LIT | $200.00 | 8.80 | $1,760.00 |
| Susana I. Lagasse | LIT | $200.00 | 200.80 | $40,160.00 |
| Daniel F. McLaughlin | LIB | $195.00 | 11.90 | $2,320.50 |
| Martina Boehmfeldt | CORP | $195.00 | 6.00 | $1,170.00 |
| Michael Brien | TAX | $195.00 | 11.20 | $2,184.00 |
| Sadys Rodrigo Espitia | LIB | $195.00 | 8.90 | $1,735.50 |
| Andrew H. Lyon | BFR | $175.00 | 557.40 | $97,440.00 |

| Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Danielle Z. Sawaya | CORP | $175.00 | 120.70 | $21,122.50 |
| Jacob A. Grover | CORP | $175.00 | 7.70 | $1,347.50 |
| John Badman | CORP | $175.00 | 27.80 | $4,865.00 |
| Priya K. Ghodasara | BFR | $175.00 | 42.90 | $7,507.50 |
| R.T. Winston Berkman | CORP | $175.00 | 33.40 | $5,845.00 |
| Sherri Bell | LIT | $175.00 | 26.20 | $4,585.00 |
| Trisha Pande | LIT | $175.00 | 50.60 | $8,855.00 |
| Deidra M. Mulligan | LIB | $140.00 | 7.40 | $1,036.00 |
| Elio Bettini | LIB | $125.00 | 5.60 | $700.00 |
| Maximiliano Greco | LIB | $85.00 | 7.60 | $646.00 |
| **Total:** | | | **6,104.0** | **$1,395,072.00** |

| TOTALS: | BLENDED RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $922.81 | 16,125.40 | $14,880,818.25 |
| Associates | $595.99 | 38,543.40 | $22,971,535.75 |
| Paraprofessionals | $228.55 | 6,104.00 | $1,395,072.00 |
| **Blended Attorney Rate** | **$692.39** | | |
| **Total Fees Incurred** | | **60,772.80** | **$39,247,426.00** |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                  :

**In re**                             :        **Chapter 11 Case No.**
                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                  :

                   **Debtors.**      :        **(Jointly Administered)**
                                  :

-------------------------------------------------------------------x

**EIGHTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP,**
**AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1, 2011 THROUGH MAY 31, 2011**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Weil, Gotshal & Manges LLP ("Weil"), attorneys for Lehman Brothers Holdings

Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together with LBHI, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), for its eighth application, pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the interim allowance of compensation for professional

services performed by Weil for the period commencing February 1, 2011, through and including

May 31, 2011 (the "Eighth Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Eighth Compensation Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      Weil's services during the Eighth Compensation Period continued to substantially advance the administration of the Debtors' chapter 11 cases, yield major recoveries for the Debtors' estates, preserve the value of some of the Debtors' largest remaining assets, and meaningfully reduce the number and aggregate value of claims asserted in these cases. Specifically:

- Weil participated in numerous meetings among the Debtors and various foreign and domestic creditors regarding the Debtors' first amended joint chapter 11 plan (the "Amended Plan") and related disclosure statement (the "Disclosure Statement"), which Weil drafted and filed in previous application periods.  Weil worked with the Debtors and creditor groups to formulate and obtain Court approval of a coordinated protocol to govern discovery related to disputed issues in connection with the confirmation of a plan in the Debtors' chapter 11 cases.  As a result of negotiations regarding potential plan amendments, the Debtors filed their second amended joint chapter 11 plan (the "Second Amended Plan") and related disclosure statement in the next application period with the support of more than 30 of the Debtors' largest creditors asserting claims of over $100 billion.  Proponents of both alternative plans filed in these cases were among the creditors supporting the Second Amended Plan, and the majority of the creditors seeking discovery agreed to stand down.

- With Weil's counseling and active participation in negotiations and mediations, during the Eighth Compensation Period, the Debtors recovered $200 million through negotiated settlements with 16 counterparties in separate alternative dispute resolution ("ADR") proceedings, pursuant to an order Weil obtained approving ADR procedures for the Debtors' affirmative claims under their more than 10,000 derivatives contracts (the "Derivative Contracts"). Through the Eighth Compensation Period, Weil's services have enabled the Debtors to recover more than $759 million for the Debtors' estates through negotiated settlements with 95 counterparties in 84 ADR matters.

- Weil expended substantial resources to assist the Debtors in formulating and proposing a common settlement approach for the derivatives claims of thirteen of the Debtors' largest derivatives counterparties (the "Big Bank Counterparties").  As a result of Weil's efforts in the Eighth Compensation Period, the Debtors subsequently entered into settlement agreements with eight of the Big Bank Counterparties, reducing such claims by more than approximately $3.4 billion from their filed amounts.  These significant milestones in these cases were achieved as a result of hours of research, drafting, counseling, and negotiating by Weil.

- Weil continued to advise and represent the Debtors in negotiations with the foreign administrators of the approximately 80 foreign affiliates that have become the subject of a foreign liquidation or rehabilitation proceeding. The negotiations concern global issues, such as the terms of the Amended Plan, the reconciliation of hundreds of billions of dollars of claims among the parties, ownership of assets, potential litigation and other matters. Significantly, Weil aided the Debtors in connection with their entry into a global settlement with their German affiliate, Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. ("Bankhaus"), and obtained approval of the Bankruptcy Court for an initial portion of the settlement within the Eighth Compensation Period.

- Weil's multi-disciplinary real estate team continued to devote substantial resources to preserving, restructuring, and disposing of the Debtors' billions of dollars of residential and commercial real estate assets. This effort required Weil's involvement in more than 50 different projects and resulted in the consummation of several significant transactions, as described below in greater detail.

- Weil negotiated and drafted an agreement pursuant to which Lehman Commercial Paper Inc. ("LCPI") purchased certain notes issued by Pine CCS, Ltd. for $805 million. Simultaneously, Weil negotiated an agreement among multiple parties to terminate the Pine securitization and permit LCPI to acquire loans previously participated to Pine. Weil drafted and successfully prosecuted a motion for approval of these complicated transactions.

- Weil obtained Bankruptcy Court orders granting 41 omnibus objections to claims, reducing, reclassifying, disallowing and/or expunging more than 4,200 proofs of claim that asserted more than $11 billion (plus unliquidated amounts) against the Debtors. Weil prepared and filed 63 additional omnibus objections to reduce, reclassify, disallow and/or expunge approximately 9,550 claims asserting more than $87 billion (plus unliquidated amounts) against the Debtors.

2. As the Debtors' lead bankruptcy attorneys, Weil is responsible for the daily administration of these cases. During the Eighth Compensation Period, Weil was required to review and in many instances respond to the more than 3,500 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented. Weil drafted and filed over 400 motions, objections, replies, applications, stipulations or other pleadings on behalf of the Debtors. In addition, Weil filed two reply memoranda in support of motions to dismiss, an opposition to a motion to intervene, three motions to dismiss, and many other pleadings in the 111 adversary proceedings that were pending during the Eighth Compensation Period (the

"Adversary Proceedings"). Weil also prepared, reviewed and responded to numerous mediation statements in the over 140 ADR matters that were pending during the Eighth Compensation Period. Each of these filings, and the 243 filings that Weil reviewed in the SIPA Proceeding (defined below), required careful consideration and substantial resources from Weil.

3.      Weil's multidisciplinary teams supported the day-to-day management and strategic long-term administration of the Debtors' diverse assets around the world. Members and associates in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax Departments worked closely with the Debtors' Real Estate, Private Equity and Principal Investment, Derivatives, Bank, and Loan and Investment teams on transactions across North and South America, Europe and Asia.

4.      Since the commencement of these cases, Weil has coordinated its efforts with the Alvarez and Marsal North America LLC ("A&M"), the Debtors' restructuring advisors, the professionals of the Creditors' Committee (defined below), the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign administrators appointed to administer the insolvency proceedings of the Debtors' foreign affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented and all of the Debtors' constituents were apprised of major developments.

5.      Weil's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Eighth Compensation Period were actual and necessary and of substantial benefit to the Debtors' estates and their creditors. In the perspective of the complexity and scale of these cases, Weil's charges for professional services performed and expenses incurred are reasonable under the applicable standards. Weil

respectfully requests that the Court grant this application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Eighth Compensation Period as requested.

## **BACKGROUND**

6.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On October 8, 2008, the Debtors filed an application to employ Weil as their attorneys.  No objections were filed to Weil's retention and, pursuant to an order, dated November 21, 2008 [ECF No. 1660], the Debtors were authorized to retain Weil as their attorneys to render legal services in the prosecution of their chapter 11 cases.  Weil filed affidavits in support of its retention on March 4, 2009 [ECF No. 2985], August 12, 2009 [ECF No. 4779], March 30, 2010 [ECF No. 7904], July 21, 2010 [ECF No. 10358], September 20, 2010 [ECF No. 11466], October 26, 2010 [ECF No. 12302], and January 28, 2011 [ECF No. 14182].

8.      On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

9.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to administer LBI's estate under the SIPA (the "SIPA Proceeding").

10.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner (the "Examiner") and by order, dated January 20, 2009, the Bankruptcy Court approved the U.S. Trustee's appointment of the Examiner.  On March 11, 2010, the Examiner issued his report pursuant to section 1106(b) of the Bankruptcy Code.  On July 13, 2010, the Bankruptcy Court entered an order discharging the Examiner and his professionals.

11.    On January 24, 2011, the Bankruptcy Court entered an order modifying the composition of the fee committee (the "Fee Committee") that had previously been appointed in these chapter 11 cases [ECF No. 14117].  On April 14, 2011, the Bankruptcy Court entered an order approving a revised fee protocol (the "Fee Protocol") setting forth certain procedures and guidelines with respect to the fees and expenses of retained professionals in these cases [ECF No. 15998].

12.    Weil filed applications for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and the Court entered the orders as to such applications, on:

| Application | Order |
|---|---|
| April 13, 2009 [ECF No. 3343] | August 13, 2009 [ECF No. 4795] |
| August 14, 2009 [ECF No. 4825] | April 9, 2010 [ECF No. 8205] April 9, 2010 [ECF No. 8207] |
| December 14, 2009 [ECF No. 6205] | April 9, 2010 [ECF No. 8218] |
| April 16, 2010 [ECF No. 8395] | September 7, 2010 [ECF No. 11186] |
| August 16, 2010 [ECF No. 10791] | May 19, 2011 [ECF No. 16979] |
| December 15, 2010 [ECF No. 13496] | Application Pending |
| June 2, 2011 [ECF No. 17347] | Application Pending |

13.    The Debtors have advised Weil that all quarterly fees due to the U.S. Trustee during the Eighth Compensation Period have been paid.  The Debtors filed monthly operating reports on March 18, 2011 [ECF No. 15194], April 28, 2011 [ECF No. 16322], May 23, 2011 [ECF No. 17010], and June 20, 2011 [ECF No. 17912] that are relevant to the Eighth Compensation Period.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

14.    Weil requests a further allowance of interim compensation for professional services performed during the Eighth Compensation Period in the amount of $39,247,426 and for reimbursement of expenses incurred in connection with the performance of such services in the amount of $1,000,547.07.    These amounts include certain charges and expenses incurred prior to the Eighth Compensation Period which were to be, but were not, paid by third parties for which the Debtors are primarily responsible.[1]

15.    During the Eighth Compensation Period, Weil attorneys and paraprofessionals expended a total of 60,772.8 hours in connection with the necessary services performed.    Of the aggregate time expended, 16,125.4 recorded hours were expended by partners and counsel of Weil, 38,543.4 recorded hours were expended by associates, and 6,104 recorded hours were expended by paraprofessionals of Weil.    To the extent that time or disbursement charges for services performed or disbursements incurred relate to the Eighth Compensation Period, but are processed subsequent to the preparation of this application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.    In accordance with the Administrative Order, Weil received payments

---

[1] As described in Weil's prior applications, in certain instances, Lehman may be entitled to reimbursement from third parties, or third parties may be obligated to pay Lehman's professionals directly, for legal services provided and expenses incurred in connection therewith.    For example, in many instances, borrowers may be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.    After consultation and upon agreement with the U.S. Trustee, Weil endeavored to segregate legal fees and expenses that may be subject to payment by third parties, and such fees and expenses may not be contained within this Application.    Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to reimbursement from third parties, Weil has opened, or will open, a new billing account.    Weil has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts, which will not be subject to any holdback.    Weil has not, and is not required to, submit monthly fee statements to the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which point Weil would seek payment from the Debtors, but will reflect amounts charged and payments received on account of such matters, in summary fashion, in interim fee applications.    References to the Eighth Compensation Period made herein shall include prior periods in which Weil incurred fees and expenses with respect to which Weil has not previously sought Court approval.

totaling $24,355,983.48 for the Eighth Compensation Period, consisting of $23,594,371.20, representing 80% of the charges, and $761,612.28, representing 100% of the expenses invoiced for the Eighth Compensation Period. Weil has not yet received payment for either the fees or expenses invoiced for May 2011.

16.    This application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy Court on April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 3102] (the "Administrative Order," and together with the Local Guidelines and the UST Guidelines, the "Guidelines"). Further, Weil has endeavored to comply with the directions provided by the Fee Committee made in connection with Weil's prior applications. Pursuant to the Fee Protocol, the Debtors will provide a copy of this application to the Fee Committee.

17.    Weil's hourly charges are billed based on Weil's existing billing rates and procedures in effect during the Eighth Compensation Period. The hourly charges for the services performed by Weil professionals and paraprofessionals are at the same rates Weil charges for such services performed in comparable bankruptcy and non-bankruptcy related matters. The

hourly charges are based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters.

18.     In the regular course of its business Weil adjusts its billing rates from time to time.  The customary hourly rates in Weil's domestic offices during the Eighth Compensation Period were $760 and $1,075 per hour for members and counsel, between $430 and $750 for associates, and from $85 to $310 for paraprofessionals.  Applicable charges in Weil's foreign offices, subject to change from time to time, range from $745 and $1,000 for members, and from $250 to $865 for associates.  Weil has voluntarily capped its domestic hourly charges at $1,000 per hour for members and counsel in these chapter 11 cases.  Weil establishes its hourly charges after analysis of, among other things, the hourly charges of comparable law firms and the costs of maintaining its professionals and other staff members and its business operations.  As is standard in the profession, the charges for individual attorneys may be adjusted annually to reflect such attorneys increased seniority and experience.

19.     During the Eighth Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly charges ranging from $335 to $1,000 per hour for domestic attorneys and $250 to $1,000 for foreign attorneys.[2]  Allowance of compensation in the amount requested would result in a blended hourly billing charge of approximately $692.39 (based on 54,668.8 recorded hours for attorneys at Weil's regular billing rates in effect at the time of the performance of services).

20.     Weil consistently monitors its charges and expenses before and after the submission of monthly fee statements for possible errors or charges that might be inappropriate or otherwise should be reduced.  As a result, prior and subsequent to the submission of monthly

---

[2] Not including staff attorneys or contract attorneys.

fee statements for the Eighth Compensation Period, Weil reduced its charges by $699,896.50 and its expenses by $179,008.59, for a total of $878,905.09 in voluntary reductions.   Weil will continue to diligently monitor its charges and expenses and, where appropriate, make applicable reductions.   As of the date hereof, Weil has voluntarily reduced its charges and expenses requested for reimbursement by $5,066,063.03 in aggregate since the Commencement Date.

21.    There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.   Except as explained immediately below, during the Eighth Compensation Period, other than pursuant to the Administrative Order, Weil received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

22.    During the Eighth Compensation Period, Weil has received payment in the aggregate of approximately $759,900, from third parties related to representations of Lehman entities (as described in footnote 1) listed on <u>Exhibit A</u> hereto.   Weil may have incurred, but not yet received payment from third parties for additional charges and expenses in connection with these and other matters.   To the extent any third party fails to reimburse Weil for such charges or expenses, however, Weil is authorized to seek reimbursement from the Debtors or Lehman in accordance with the Administrative Order.[3]

23.    As of the date hereof, Weil has a remaining credit balance in favor of the Debtors for future professional services to be performed, and expenses to be incurred, in the amount of $4,431,478.82.   Weil will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in charges to such credit.

---

[3] As noted in footnote 1 above, based upon an agreement with the U.S. Trustee, Weil is not required to maintain or provide detailed task codes or billing increments for such engagements.

24.     Annexed hereto as <u>Exhibit B</u> is a certification regarding compliance with the Guidelines.

25.     Pursuant to the UST Guidelines, the Summary Sheet filed in connection with this Application includes a schedule of Weil professionals and paraprofessionals who have performed services for the Debtors during the Eighth Compensation Period, the capacities in which each such individual is employed by Weil, the legal department and discipline in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and charges billed therefor.

26.     Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which Weil is seeking reimbursement and the total amount for each such expense category.   An itemized schedule of all such expenses will be provided to the Debtors, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

27.     Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a summary of Weil's time records billed during the Eighth Compensation Period using project categories hereinafter described.   Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.   Copies of these computerized records will be furnished to the Debtors and, subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtors' estates, the Bankruptcy Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee in the format specified by the UST Guidelines.

**SUMMARY OF SERVICES PERFORMED BY
WEIL DURING THE EIGHTH COMPENSATION PERIOD**

28.     More than half of the charges incurred and hours recorded in the Eighth

Compensation Period relate to the protection and maximization of Debtors' derivatives and real

estate assets.  Another approximately thirteen percent of the charges incurred and hours recorded

relate to the Debtors' Amended Plan and Disclosure Statement, including the negotiation of

various plan support agreements, and reconciliation and reduction of the Debtors' non-derivative

claims.  Descriptions of some of the more significant tasks performed by Weil during the Eighth

Compensation Period are set forth below.

29.     <u>Derivatives</u>.     As has been the case since the Commencement Date, during

the Eighth Compensation Period, Weil devoted substantial resources to implementing the

Debtors' global strategies to maximize the value of their derivatives assets.  As widely noted, the

volume, size and complexity of the Debtors' Derivative Contracts are unprecedented in the

context of chapter 11 cases and will have an enormous impact on recoveries to creditors in these

cases.  At any one time, Weil's multi-disciplinary derivatives team may be engaged in a large

number of research and other derivatives-related projects.

30.     During the Eighth Compensation Period, Weil devoted significant

resources and attention to the Debtors' efforts in resolving the claims of the Big Bank

Counterparties.  The Big Bank Counterparties asserted the largest and most complicated

derivatives claims against the Debtors, which, if left unresolved, would result in significant

litigation that could potentially lead to reduced and significantly delayed recoveries to creditors.

With Weil's assistance, the Debtors formulated and proposed a common settlement approach for

the allowance of derivatives claims of the Big Bank Counterparties pursuant to standardized,

uniform and transparent principles and methodologies (the "<u>Derivatives Framework</u>").  Weil

participated in multiple group and individual meetings among the Debtors and Big Bank Counterparties and their professionals regarding legal principles and disputes underlying the Derivatives Framework and modifications and adjustments to the Derivatives Framework proposed by the Big Bank Counterparties. Weil also prepared and negotiated a settlement agreement for the resolution of such claims. With Weil's efforts, the Debtors ultimately settled with eight Big Bank Counterparties that had asserted over $9.6 billion in claims for allowed claims in the aggregate amount of approximately $6.2 billion. The settlements with the eight Big Bank Counterparties (all of which also executed plan support agreements with the Debtors) marks a significant milestone in the Debtors' chapter 11 cases and will maximize and accelerate recoveries to creditors of many of the Debtors. Weil continues to represent the Debtors in their discussions and strategies with respect to the remaining five Big Bank Counterparties and other creditors asserting derivatives claims against the Debtors.

31.    Throughout the Eighth Compensation Period, Weil continued to represent the Debtors' interests in various other disputes, including those related to invalid contract terminations, counterparties' non-performance, and assertions of rights of setoff. These issues were raised both informally in negotiations, and formally, in ADR and in pleadings filed with the Bankruptcy Court. Weil devoted significant time and effort, in particular, representing the Debtors in affirmative ADR matters to maximize the Debtors' recovery on Derivative Contracts with recovery potential. During the Eighth Compensation Period, over 140 ADR matters were pending, requiring a devoted team of over 40 Weil attorneys to address complex legal and factual issues, including disputes over valuation of termination payments due under Derivative Contracts, *ipso facto* provisions, triangular setoffs and the scope of the safe-harbor provisions. Each ADR is a mini-trial that requires an efficient and targeted effort from Weil. Weil was

required to coordinate its efforts with those of the Creditors' Committee's and the Debtors' other professionals.

32.    During the Eight Compensation Period, Weil also secured an order of the Court establishing an alternative dispute resolution procedure for the Debtors' affirmative claims based on Derivatives Contracts with special purpose vehicles (the "SPV ADR Order").  Unique issues and constraints that delayed the Debtors' efforts in resolving their disputes with special purpose vehicles required the Debtors and Weil to formulate a strategy and develop a targeted process to facilitate settlements with such parties.  Weil resolved or successfully overcame 12 objections to entry of the SPV ADR Order.  Weil devoted substantial resources to preparing pleadings, engaging in negotiations with counterparties and the Creditors' Committee regarding the order and participating in oral argument.  Weil engaged in substantial appellate work on the two appeals of the SPV ADR Order, including supplementing the appellate dockets and drafting briefs opposing the appeals.

33.    In addition, Weil prepared and served ten subpoenas on derivative counterparties pursuant to Bankruptcy Rule 2004 during the Eighth Compensation Period and negotiated discovery schedules to facilitate the exchange of information and establish parameters for potential settlements.  Weil has and expects to continue to devote substantial resources to maximizing the value of the Debtors' derivatives assets for the benefit of the Debtors' estates.

34.    Real Estate.  Throughout the Eighth Compensation Period, Weil continued to provide services to protect the Debtors' interests in the California-based chapter 11 cases (the "SunCal Cases") of Palmdale Hills Property, LLC and its affiliated debtors (collectively, the "SunCal Debtors").  Prior to the Commencement Date, certain of LBHI's Debtor and non-Debtor subsidiaries provided over $2 billion in senior secured financing (the "SunCal Financing") to the

SunCal Debtors, which was used to acquire and develop residential real estate projects in California. Following the commencement of the SunCal Cases, the SunCal Debtors commenced an adversary proceeding seeking, among other things, to subordinate Lehman's claims relating to the SunCal Financing. In addition, Lehman and the SunCal Debtors engaged in a number of other disputes that required Weil to represent Lehman both in the Debtors' chapter 11 cases and in the SunCal Cases in order to preserve Lehman's interests in the SunCal Debtors' respective estates.

35.    During the Eighth Compensation Period, Weil proposed and filed revised plans of reorganization on behalf of Lehman with respect to almost all of the SunCal Debtors. The revised plans contemplate a settlement with the creditors of the SunCal Debtors and a transfer of the SunCal Debtors' assets to Lehman. Weil devoted a considerable amount of time to completing the mediation process that had began during the prior compensation period, negotiating settlements with each of the bond sureties, addressing several additional actions and responding to claims objections filed by the SunCal Debtors with respect to Lehman's loans and security interests and engaging in considerable discovery with respect to the plan confirmation process and the claims objections.

36.    Weil also devoted significant resources to identify grounds for objections to the numerous intercompany claims that were filed against the SunCal Debtors by their non-Debtor affiliates. If prosecution of these claims objections is successful, the aggregate value of the claims filed against the SunCal Debtors would be reduced by approximately half, and the expected recoveries to Debtors and their controlled affiliates in the SunCal Cases would increase.

37.     During the Eighth Compensation Period, Weil also negotiated and assisted the Debtors in closing a transaction pursuant to which Lehman purchased Bankhaus' interests in notes held by Bankhaus in the SASCO, Spruce and Verano securitization structures (in an aggregate principal amount of approximately $1.543 billion) for a total purchase price of approximately $957 million.  This transaction greatly enhanced Lehman's ability to control the underlying loans and other assets that were put into these structures and to ultimately collapse the SASCO securitization structure resulting in servicing and administrative cost savings to Lehman.

38.     Weil also successfully negotiated and secured Bankruptcy Court approval of a settlement between the Debtors and Swedbank AB, New York Branch.  LCPI and Swedbank were parties to a repurchase agreement, pursuant to which LCPI sold to Swedbank certain mortgage loans.  Certain of LCPI's obligations under the repurchase agreement were guaranteed by LBHI.  On September 24, 2008, Swedbank declared an event of default under the repurchase agreement as a result of the commencement of the LBHI's chapter 11 case and accordingly, became entitled to LCPI's ownership interest in the mortgage loans.  As a result of LCPI's failure to repurchase the mortgage loans pursuant to the terms of the repurchase agreement, Swedbank filed proofs of claim, asserting a deficiency claims arising under the repurchase agreement in excess of $565 million.   The settlement, among other things, (i) reduced Swedbank's deficiency claims to $325 million in full satisfaction of such claims and (ii) provided for the exchange of certain loans and interests in loans between LBHI and Swedbank, which allowed LBHI to consolidate its interests in certain real estate projects.

39.     In addition, during the Eighth Compensation Period, Weil assisted the Debtors in obtaining authorization from the Bankruptcy Court to make additional investments of

up to $25.1 million with respect to properties located at 25 Broad Street and 45 Broad Street in lower Manhattan.  Weil also assisted the Debtors in obtaining Bankruptcy Court approval of the Debtors' consent to a transaction of Lehman ALI Inc. ("ALI"), a non-Debtor subsidiary of LBHI, pursuant to which ALI agreed to (i) enter into a commitment letter among Five Mile Capital II Pooling REIT LLC and certain subsidiaries of Innkeepers USA Trust ("Innkeepers") and (ii) support the Innkeepers' chapter 11 plan.  The commitment letter provided for a joint stalking horse bid by ALI and Five Mile Capital pursuant to which ALI would, generally, exchange its interest in Innkeepers for 50% of the equity in 64 of Innkeepers' 71 hotel properties and a cash payment of at least $61 million, plus other consideration.  Finally, Weil obtained Bankruptcy Court approval of LBHI's entry into a settlement agreement that will clear the way for a stalking horse auction of real property located at 1107 Broadway in Manhattan.  This transaction will allow LBHI to monetize its interest in 1107 Broadway, avoid significant litigation with the borrowers, and resolve claims with a face amount of over $126 million.

40.    Amended Plan and Disclosure Statement.    Throughout the Eighth Compensation Period, Weil continued to work with the Debtors to investigate, research, and advise on numerous factual and legal issues that could have a significant impact on recoveries to creditors, such as substantive consolidation, the validity of enforceability of intercompany and guarantee claims, the characterization of intercompany balances, the potential equitable, contractual or statutory subordination of certain claims, and the methodologies and principles for the valuation of claims based on Derivative Contracts and certain securities issued or guaranteed by LBHI.  Weil also dedicated significant resources to assist the Debtors in their efforts to achieve a consensual confirmation process.  In that regard, Weil participated in numerous meetings among the Debtors, the Creditors' Committee and its professionals, and the Debtors'

various domestic creditor constituencies, including ad hoc and other groups as well as individual creditors. Weil continues to represent the interests of the Debtors in their discussions with other constituencies to garner support for the Second Amended Plan.

41.    Among these constituencies are the Debtors' foreign affiliates. During the Eighth Compensation Period, Weil participated in numerous meetings both in New York and in Europe, and devoted considerable recourses in drafting and negotiating the terms of plan settlement agreements with foreign administrators of approximately 80 of the Debtors' foreign affiliates. The plan settlement agreements encompass a number of global issues, including asset ownership disputes, the resolution of potential litigation, and the reconciliation of hundreds of billions of dollars of claims among the parties, in order to fully and finally resolve all outstanding issues between the Debtor and their foreign affiliates. As these agreements are in various states of completion, Weil continues to advise the Debtors in the ongoing negotiation of these agreements with the administrators of the Debtors' foreign affiliates.

42.    During the Eighth Compensation Period, Weil devoted substantial resources to work with the Debtors to formulate and obtain Court approval of an efficient protocol governing discovery related to disputed issues that may arise in connection with the confirmation of a plan in the Debtors' chapter 11 cases. Formulation of the plan discovery protocol was the product of numerous calls and meetings among Weil and the Debtors and extensive negotiations with creditor groups and their counsel over a period of months. These negotiations resulted in an exhaustive 81-page protocol that established procedures, guidelines, and deadlines governing all the various types of discovery that might be implicated by the multiple plans proposed in these chapter 11 cases, including document discovery, depositions, interrogatories, and expert discovery. Weil drafted, filed with the Court, and prosecuted a

motion to approve the plan discovery protocol, which was challenged by over 100 parties through 21 objections and required further extended negotiations with various creditor groups and extensive revisions to the protocol initially filed with the Court. Due to its complex and far-reaching structure and interest from various creditor groups, Weil amended the discovery protocol three times before it was finalized and approved by the Court.

43.     As evidenced by the overwhelming creditor interest and participation in the protocol formulation process, it is clear that the establishment of the plan discovery protocol in these chapter 11 cases was a necessary and critical step in moving the cases towards confirmation. Given (i) the numerous factual and legal issues implicated by these cases and (ii) the number of interested creditors and creditor groups involved, conducting plan discovery without an organized, coordinated, and efficient process would have been unduly burdensome and costly to the Debtors, time consuming, and would have posed a significant delay to the confirmation of a chapter 11 plan and distributions to creditors.

44.     After the plan discovery protocol was approved by the Court, Weil participated in weekly meetings and calls with the Debtors to discuss the plan discovery process, discovery strategy, and issues attendant thereto. Weil also assisted the Debtors in reviewing and analyzing over 90 notices of intent to participate in plan discovery, populating a data repository required by the protocol to house the voluminous document discovery anticipated through the plan discovery process, and advising the Debtors in connection with over 800 document requests.

45.     Claims Resolution.     During the Eighth Compensation Period, Weil devoted substantial time and effort to assisting the Debtors in their analysis of the thousands of claims filed in these chapter 11 cases and, where appropriate, objecting to such claims. The

claims objection process is an enormous undertaking that has required significant dedication by a team of Weil professionals that coordinates with the Debtors to process, review, analyze, and identify thousands of claims for objection and to prepare, prosecute, and secure orders granting the Debtors' objections to same.

46.    As noted above, during the Eighth Compensation Period, Weil obtained orders granting 41 omnibus objections with respect to more than 4,200 claims and filed 63 additional objections with respect to approximately 9,550 additional claims. These accomplishments alone exceed the scope of the entire claims process in the life of most any chapter 11 case. During the Eighth Compensation Period, Weil also performed factual and legal research to advance or resolve omnibus objections that were filed in previous compensation periods. Weil further analyzed and identified additional claims that the Debtors intend to object to in the future.

47.    Weil closely coordinated its efforts with the Debtors' Bankruptcy Court-approved claims and noticing agent, to provide notice to all claimants whose claims were subject to objections. For each omnibus objection, Weil designated a specific attorney whom claimants could contact with any questions or concerns. A team of Weil attorneys responded to hundreds of informal inquiries and addressed formal objections of claimants. Substantial attorney time and resources were spent responding to claimant inquiries and addressing issues raised, resulting in a significant reduction in the number of formal responses that were ultimately filed and prosecuted by parties in interest.

48.    Other professional services rendered by Weil during the Eighth Compensation Period, organized in accordance with Weil's project codes, are described below.

a.    Case Administration Issues

(i)    General Case Strategy Meetings

- Conducted meetings, conferences, and teleconferences regarding the chapter 11 case strategy, including the preparation of and responses to various motions and applications; business issues, including numerous transactions of the Debtors and their non-Debtor affiliates; general litigation strategy in connection with the Debtors' various adversary proceedings and non-bankruptcy related litigations; governmental and other investigations; corporate governance; inter-company issues, and related international issues.

(ii)    Project Monitoring/Court Calendar & ECF Maintenance

- Reviewed, analyzed, monitored and distributed filings in the Debtors' 23 chapter 11 cases, three related chapter 15 cases, nine appeals, and numerous adversary proceedings, and non-Bankruptcy Court litigations pending during the Eighth Compensation Period to the appropriate Debtor and Weil teams; and
- maintained work-in-progress reports and case calendars and distributed same to Debtor and Weil teams to ensure coordination and coverage.

(iii)    Hearings and Court Communications

- Prepared for and participated in numerous hearings, including omnibus Bankruptcy Court hearings on February 16, March 23, April 13, and May 18, 2011, and non-omnibus hearings in the Bankruptcy Court and other courts on February 5, 15, 16 and 18, March 1, 2, 3, 11, 21, 30 and 31, April 28, and May 9, 10, 11, 13 and 27, 2011;
- participated in additional telephonic and in-person conferences with the Bankruptcy Court and other courts;
- coordinated regularly with the Bankruptcy Court and parties in interest, including the U.S. Trustee and attorneys for the SIPA Trustee, regarding hearings and agenda items and prepared hearing agendas in accordance with the Bankruptcy Court's orders and requests; and
- prepared summaries of significant pleadings considered at various hearings and distributed same to Debtor and Weil teams to ensure coordination.

b.    Constituency and Coordination-Related Issues

(i)    Interested Party Communications/Website/Lehman Team Hotline

- Had a leading role in assisting the Debtors' disclosure process, providing information and transparency to the Debtors' stakeholders by maintaining a "Lehman Team Hotline"; and

- responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including customers, vendors, shareholders, secured and unsecured creditors and potential purchasers of assets regarding Debtors' chapter 11 cases.

(ii)  Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- Prepared for and participated in regularly scheduled and other meetings and teleconferences with the Creditors' Committee and its professionals regarding, among other things, the status of the chapter 11 cases, the Amended Plan and related issues, pending and potential causes of action, various asset-disposition and other protocols, various document demands, asset sales, loan restructurings, derivative transactions, inter-company and international issues.

(iii)  Secured Creditors Issues/Meetings/Communications

- Prepared side letter to the collateral disposition agreement between the Debtors and JPMorgan Chase Bank N.A., and participated in conferences and teleconferences regarding same.

(iv)  LBI/SIPA Coordination and Issues

- Conducted meetings and teleconferences with the Debtors' and the SIPA Trustee's professionals to address numerous issues, including reconciling customer claims and non-customer claims of Lehman's domestic and foreign affiliates and misdirected wire transfers;
- participated in meetings with the Debtors, their professionals, the SIPA Trustee, its professionals, and the Creditors' Committee and its professionals regarding a settlement agreement between LBI and JPMorgan Chase Bank, N.A. related to the compromise of certain claims and prepared discovery requests regarding same;
- conducted legal and factual research, analyzed documents, and drafted memoranda regarding various claims issues, including those related to third party collateral, equitable subordination, and enforceability of certain agreements under state law, misdirected wire transfers, recoupment and setoff of subordinated claims, SIPA treatment of futures contracts, customer and broker-dealer claims, and certain unclaimed property;
- participated in meetings among the Debtors and the SIPA Trustee's professionals to address informal discovery issues related to subordination dispute;
- reviewed materials related to "PIK" notes issued to LBI by Lehman ALI Inc. and participated in meetings with the Debtors regarding same; and
- reviewed and monitored case docket for the SIPA proceeding.

c.    General Business Operation Issues

   (i)   Cash Management

   ▪   Participated in conferences and teleconferences with Lehman, the Creditors' Committee, the U.S. Trustee, the SIPA Trustee's professionals and various parties-in-interest regarding Lehman's cash management systems, prepetition deposits, misdirected wire transfers, setoffs and conducted legal research and analysis relating to the same; and

   ▪   drafted letters, stipulations and agreements regarding same.

   (ii)   Insurance Issues

   ▪   Prepared and obtained Bankruptcy Court approval of Debtors' motion for an order modifying the automatic stay to allow settlement payments under 2007-2008 directors and officers insurance policies by Zurich America Insurance Co.; and

   ▪   reviewed and responded to other issues regarding the Debtors' insurance policies and coverage, including directors and officers policies.

   (iii)   Employee/ERISA/Benefits/Pension Issues

   ▪   Advised the Debtors' New York and London teams regarding UK pension issues, including with respect to preparation for two appeals: (i) appeal to the UK Court of Appeal as to interpretation of pensions and insolvency statutes and (ii) appeal to the Upper Tribunal of decision by Determinations Panel against LBHI and certain affiliates as to their potential pensions liability in the UK; consulted with and provided instructions to Queen's Counsel regarding both appeals; communicated with certain affiliates, the Creditors' Committee and its professionals, and the UK Pensions Regulator regarding the same; drafted, reviewed, and revised submissions, memoranda, and other documents in preparation for appeals to the UK Court of Appeal and the Upper Tribunal; performed related fact-gathering and legal research regarding the same; prepared supporting documentation and costs schedule for negotiations with the UK Pensions Regulator as to judicial review costs order and engaged in settlement negotiations as to the same;

   ▪   participated in meetings and conducted research regarding LB UK RE pension issues;

   ▪   prepared reply memorandum of law in further support of motion to dismiss the adversary complaint in *Uvino v. LBHI, et. al.* [Adv. Pro. No. 10-05428] pursuant to Federal Rule of Civil Procedure 12(b)(6), which was granted in part and denied in part, and participated in meetings and conducted research regarding issues related to the dismissal of same; and

   ▪   participated in meetings, conducted research and responded to inquiries regarding the Debtors' employee-related issues.

(iv)  Customer / Vendor Issues

- Reviewed and revised various contracts, agreements, and related documents for the supply of goods and services to the Debtors.

(v)  Intellectual Property

- Negotiated, drafted, and revised several agreements related to the Debtors' use or provision of intellectual property and information technology;
- drafted amendments to transition services agreement with Barclays Capital and participated in meeting regarding same; and
- attended to additional issues related to data sharing among the Debtors and their non-Debtor affiliates.

(vi)  Tax Issues

- Drafted first, second, and third supplemental letter submission to request a ruling from the Internal Revenue Service ("IRS") in connection with the Debtors' proposed chapter 11 plan, and subsequent submissions in connection with the Amended Plan and in response to requests from the IRS;
- assisted the Debtors in negotiating and settling certain corporate franchise tax claims of the New York State Department of Taxation and Finance, prepared, filed and obtained Bankruptcy Court approval of motion authorizing the Debtors to settle and satisfy such claims, and participated in internal conferences and meetings regarding same; this settlement resulted in a significant reduction of New York State's claim;
- conducted regular conferences and teleconferences with the Debtors, the Creditors' Committee's professionals, the SIPA Trustee's professionals and others and conducted research regarding various tax matters, including those relating to the Amended Plan and Disclosure Statement, issues discussed in the IRS Private Letter Ruling, derivatives issues, certain UK tax issues, LAMCO, transfer tax issues, securitization alternatives, tax claims and tax efficient structures for various asset sales and restructurings.

(vii) Corporate Governance

- Attended meetings of LBHI's board of directors, prepared briefing memorandum and drafted and reviewed resolutions and minutes for same;
- conducted research and reviewed and drafted various consents, resolutions, audit letters, by-laws, merger forms, organizational documents for the Debtors and their various direct and indirect subsidiaries and affiliates, and advised their directors and officers regarding same and on issues arising in these chapter 11 cases; and
- prepared and filed forms 4, 8-K, 10-K, 12B-25, 13D, 13F and other documents with the United States Securities and Exchange Commission.

(viii) Other General Business Operation Issues

- Advised the Debtors daily on issues relating to their general business operations, including by telephonic and in person meetings, correspondence, and memoranda;
- researched, drafted and reviewed documents, including organizational charts, in connection with, and participated in meetings regarding, among other things, the dissolution of certain non-Debtor subsidiaries; and
- participated in meetings with Debtor and Weil teams regarding simplification of the over 4,000 entities within the Debtors' control.

(ix)   Intercompany Issues

- Advised the Debtors in the preparation of intercompany promissory notes and related security documents to ensure compliance with the Bankruptcy Court's orders governing cash management and other transactions;
- prepared, filed motion, and obtained Bankruptcy Court authorization for BNC to enter into intercompany services agreement with Aurora Bank FSB, and  reimburse Aurora Bank FSB for certain administrative expenses, and participated in meetings regarding same;
- represented the Debtors in German insolvency proceedings over the assets of LB Capital GmbH and Bankhaus, among others, including communications with the Bankhaus administrator, review of the administrator's reports, advising the Debtors with respect to the Debtors' interest in the contemplated distribution from Bankhaus' estate and participation in creditors' meetings; advised Debtors in determining termination dates of inter-company  derivative master agreements with Bankhaus and in calculating close-out-netting amounts; advised the Debtors on various legal insolvency issues with respect to the Debtors' settlements with Bankhaus;
- advised LBHI with regard to the more than $35 billion in claims asserted against LBHI by Deutsche Bundesbank and Bundesverband Deutscher Banken e.v.;
- assisted the Debtors in dissolving and liquidating Sadio Neunundachtzigste Vermögensverwaltungs GmbH;
- monitored and participated in the UK insolvency proceedings (including court hearings) of 20 English companies with PricewaterhouseCoopers LLP as joint administrators and advised with respect to their respective effects on the Debtors' chapter 11 cases;
- counseled the Debtors in their role on the official committee of unsecured creditors in the UK insolvency cases of Lehman Brothers International Europe ("LBIE"), Lehman Brothers Europe Limited, Lehman Brothers Limited, LB UK Re Holdings Limited, and Lehman Brothers Holdings Plc, including attendance at LBIE's and Lehman Brothers Europe Limited's creditors committee meetings;

- participated in meetings and internal calls regarding claims and guarantees asserted by affiliates, including LBIE, and reviewed documents regarding same;
- conducted research regarding various international solvency issues including mistake at law and misrepresentations;
- participated in meetings regarding foreign affiliate settlements and drafted, reviewed, and revised multiple documents related to same;
- advised the Debtors in relation to filing claims against entities that are subject to English administration proceedings as well as in respect of claims which relate to trust assets; advised LBHI in respect of several entities currently in administration and proposals relating to the best strategy in order to achieve the best return for creditors as a whole;
- advised the Debtors with respect to issues relating to inter-company side-letters and set-off rights; possible English insolvency proceedings relating to certain of the Debtors' investments, certain construction disputes, potential exit strategies, the Debtors' rights and interest as creditors of LB UK Re Holdings Limited, and various tax issues;
- advised LBHI in relation to potential asset and loan portfolio disposals;
- represented the Debtors in litigation in the Cayman Islands in respect of disputes relating to certain outstanding loans;
- assisted the Debtors in dissolving and unwinding a number of partnership structures;
- advised LBHI on a number of structuring and corporate governance issues within the UK and Europe;
- coordinated and facilitated the list of authorized signatories, directors and officers and the replacement of directors for various Asian entities; and
- conducted research, prepared documents, drafted memoranda, participated in conferences and teleconferences with the Debtors, the Creditors' Committee's professionals and others regarding numerous intercompany issues including intercompany repurchase agreements, intercompany claims, loans, transfers, and prepared resolutions, promissory notes and collateral documents for intercompany loans.

d.    Asset Class-Related Issues

(i)    Real Estate Matters

- negotiated and sought Bankruptcy Court approval of various settlements and restructuring of Lehman's real estate-related investments;
- represented the Debtors' interests in the chapter 11 cases of borrowers under various real estate-related loans and agreements entered into by the Debtors prior to the Commencement Date;
- sought and obtained Bankruptcy Court approval to make new investments with respect to various properties;
- monitored and actively participated in the chapter 11 cases of Moonlight Basin Ranch L.P., *et al.* in order to protect the Debtors' interests in such cases and, with respect to the related adversary proceeding, drafted

numerous briefs, including a reply in support of the Debtors' motion for summary judgment, prepared for a potential trial of remaining issues in the adversary proceeding, negotiated, prepared, and agreed to documentation outlining a settlement of all such litigation and other outstanding issues in the Moonlight Basin Ranch LP chapter 11 cases, and negotiated and drafted a settlement agreement memorializing the terms of such settlement;

▪ as discussed above in greater detail, litigated numerous matters relating to the SunCal Debtors in both the Debtors' chapter 11 cases and the SunCal Debtors' chapter 11 cases, including drafting and filing a motion to impose the automatic stay with respect to SunCal's alleged "recoupment" claims against the Debtors; participated in extensive negotiations with certain bondholders in the SunCal Debtors' chapter 11 cases to draft and enter into plan settlements; successfully negotiated and entered into a stipulation with certain of the SunCal Debtors with respect to modifying the automatic stay for limited relief; and filed a first amended chapter 11 plan in both the involuntary and voluntary SunCal Debtors' cases;

▪ prepared and filed disclosure notices to meet reporting requirements set forth in various protocols and orders of the Bankruptcy Court;

▪ organized and participated in regular meetings and teleconferences with Lehman, A&M and various other domestic and international professionals in connections with the Debtors' efforts to restructure their real estate holdings; and

▪ conducted legal research and factual due diligence, including with respect to corporate structure, assets and liabilities, tax considerations, employee and transfer considerations, regulatory and other consents required for settlements and sales, transfers and other dispositions of real estate assets.

(ii)   Private Equity

▪ Reviewed and counseled Debtors on strategic alternatives with respect to credit facilities, third party agreements, bridge financing arrangements, and extensions, amendments, and restructurings of certain credit facilities; extensively diligenced transactions and underlying investments of funds; developed structures for other possible transactions; counseled on potential litigation and negotiated and drafted transaction documents (including transaction and purchase agreements, settlement agreements, trust agreements, consents, transition services agreements), as well as notes, collateral agreements, advisory agreements and partnership agreements on various miscellaneous sales by various Lehman affiliates of their interests in private equity investments, including certain follow-on investments made by Lehman Brothers Merchant Banking Partners III L.P. and parallel investment vehicles, including Trilantic;

▪ conducted diligence, engaged in negotiations, and drafted various documents and pleadings in connection with restructurings and other transactions and consent processes related to Lehman Real Estate Partners,

certain European mezzanine loan funds, and certain merchant banking funds;

▪ counseled Debtors on Hart-Scott Rodino Act compliance issues in connection with LAMCO and revised LAMCO compliance manual;

▪ engaged in negotiations, conducted diligence and drafted documents in connection with amendments to purchase and sale agreement governing sale of Debtors' Investment Management Division to Neuberger Berman Group LLC and potential restructurings in connection with same; and

▪ reviewed and revised materials and counseled Debtors on strategies related to transfers of warrants held by the Debtors in connection with various public companies.

(iii) Derivatives/SWAP Agreement Issues (Including Derivatives-Related Adversary Proceedings, Alternative Dispute Resolution, and Claims Reconciliation and Litigation)

▪ Assisted the Debtors in formulating the Derivatives Framework and participated in numerous group and individual meetings among the Debtors and the Big Bank Counterparties and their professionals regarding the same;

▪ formulated strategy with the Debtors to develop a targeted process to facilitate settlements with special purpose vehicle counterparties to derivatives contracts and secured the SPV ADR Order; engaged in negotiations with counterparties and the Creditors' Committee regarding the SPV ADR Order and consensually resolved the majority of the 12 objections that were filed with respect to the SPV ADR Order; and, prepared for and participated in oral argument with respect to those objections to the SPV ADR Order that were not resolved consensually;

▪ engaged in substantial appellate work with respect to two putative appeals to the SPV ADR Order;

▪ successfully opposed two motions to intervene filed by noteholders in the stayed avoidance action, Adversary Proceeding No. 10-03545 (JMP), and prepared and filed a motion to dismiss the related appeals;

▪ drafted a motion seeking and obtained Court approval granting authorization to take certain actions in connection with 1271 LLC, a wholly-owned non-debtor subsidiary of LBSF, to maximize the value thereof;

▪ drafted and proposed to the Court a sixth supplemental order providing authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts in order to effect a technical amendment to the procedures;

▪ drafted and served numerous ADR notices, replies, and related documents for mediation and participated in settlement conferences and mediations with counterparties;

▪ analyzed various claims against the Debtors based on derivatives contracts and drafted and filed omnibus objections with respect to certain derivatives claims;

- prepared and served numerous subpoenas on derivatives counterparties pursuant to Bankruptcy Rule 2004 and negotiated related discovery schedules;

- negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto and conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations, and negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto; and

- advised the Debtors with respect to jurisdictional issues related to foreign swaps, subordination agreements, valuation issues relating to termination calculations, conflicts of law, safe harbor and set-off issues, nonperforming counterparties, and intercompany trades.

(iv)   Loans and Investments

- Participated in strategy meetings, teleconferences, and negotiations regarding monetization of loan portfolio, including proposed sale of CLO assets; reviewed and revised term sheets and drafted court filings for proposed CLO transactions;

- negotiated, drafted and obtained Bankruptcy Court approval of stipulation between LCPI and Citigroup regarding the Starwood and the Colonial participation agreements that resulted in a payment to LCPI of nearly $3 million;

- reviewed the Pine securitization agreements to maximize the value of the Debtors' investments in the notes issued by Pine; negotiated an agreement with Barclays pursuant to which LCPI acquired the Class A-1 Note issued by Pine, which resulted in the Debtors obtaining all of the outstanding notes issued by Pine; negotiated a transaction with US Bank, as trustee for Pine, and Barclays, pursuant to which the Pine securitization was terminated and LCPI received all of the loans that were previously participated to Pine;

- reviewed and revised FSA application for UK securities transaction with LBI; and

- performed research and analysis and reviewed corporate documents and term sheets regarding Neuberger Berman investment.

(v)   Domestic Bank and Related Regulatory Issues

- Reviewed documents, prepared agreements and advised Debtors regarding transfer and assignment of master servicing rights by LBHI to Aurora Bank FSB and related matters and participated in numerous meetings and conference calls with Debtors, counsel for the Banks and the Banks' other professionals, counsel for the Creditors' Committee, and counsel for Fannie Mae and Freddie Mac regarding the same.

e.    International Insolvency Issues

- Reviewed documents, prepared for, and participated in, foreign affiliate global protocol meetings with representations of over 36 affiliates on March 23 and April 29, 2011, and reviewed minutes from same.

(i)    Non-Derivative Automatic Stay/Safe Harbor Issues

- Negotiated, prepared, filed and obtained Bankruptcy Court approval of 2 stipulations providing for relief from the automatic stay with, among others, BNC Mortgage LLC and HSBC Bank USA, NA and Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc.;
- negotiated, prepared and filed stipulations providing for relief from the automatic stay with (i) BNC Mortgage, LLC, LEX Special Assets LLC and U.S. Bank National Association with respect to certain real property, (ii) LB 745 LLC and Raymond Hernandez with respect to certain state court action, (iii) Sumitomo Mitusi Banking Corporation with respect to modifying adequate protection and providing for payment of secured claim, and (iv) Saint Joseph's University with respect to a certain state court action;
- prepared and filed Debtors' objection to motions of Colorado Plaintiffs for (i) relief from the automatic stay, and (ii) examination of LBHI, Pami Statler Arms LLC, and LB Rose Ranch LLC pursuant to Rule 2004;
- drafted letters to various third parties related to the automatic stay; and
- addressed various issues related to state court actions commenced or continued in violation of the automatic stay, including calls and correspondence with interested parties and counsel.

(ii)    Miscellaneous Asset Sales/363 Issues

- Participated in meetings and teleconferences regarding issues related to Lehman's artwork and reviewed and analyzed various documents, including notice of abandonment of certain artwork and purchase agreement, related to the purchase of certain artwork;
- participated in meetings with the Debtors and their professionals regarding the best strategy to monetize commercial loan portfolio and the development of a strategy to solicit bids from market participants for the management of the commercial loan portfolio;
- negotiated and drafted asset management agreement between the Debtors and WCAS Fraser Sullivan Investment Management LLC for the management of the commercial loan portfolio and the execution of collateralized loan obligations and drafted motion seeking approval of the asset management agreement and the sale of loans into collateralized loan obligations;
- prepared and filed monthly reports of assets disposed of pursuant to the De Minimis Asset Sale or Abandonment Procedures;

- participated in internal meetings with the Debtors regarding two note purchase agreements, the SASCO Agreement and the Spruce Verano Agreement with the Insolvency Administrator of Bankhaus, reviewed documents, prepared resolutions, revised power of attorney and prepared, filed and obtained approval of the motion for same; and

- attended to issues related to LAMCO, including the preparation of amended and restated LLC agreement for LAMCO Holdings, registered investment advisor documents including Form ADV and compliance manual, subscription agreement, LAMCO Holdings LLC agreement, and prepared and reviewed corporate documents including term corporate sheet, subscription and membership purchase agreement, and LAMCO purchase agreement, and participated in meetings and teleconferences regarding same.

(iii)  Non-Derivative Executory Contracts/365 Issues

- Prepared and filed motion for Bankruptcy Court authorization to assume and assign settlement agreement and to enter into sharing agreement with Urbanism-Coral Way LLC and participated in meetings and conducted research regarding same;

- participated in teleconferences and meetings with Debtors and opposing counsel regarding the motion of Factiva Inc. to compel assumption or rejection of an executory contract;

- participated in meetings and teleconferences regarding the Debtors' motion to assume aircraft lease agreements including agreement with Executive Fliteways Inc. and prepared and filed revised order regarding same;

- participated in meetings, conducted research and prepared memorandum regarding the treatment of LCPI loans and strategies to maximize the Debtors' recoveries therefrom; and

- researched and drafted memos regarding various issues related to executory contracts, including treatment of unfunded commitments and assumption and assignment of executory contracts.

(iv)  Plan of Reorganization

- Worked closely with the Debtors and A&M regarding possible amendments to the Plan;

- participated in bi-lateral and multi-lateral meetings and teleconferences with the Creditors' Committee and its professionals, the principals, and professionals of the Debtors' many foreign affiliates, and various other creditors and groups of creditors of the various Debtors regarding the Amended Plan;

- analyzed competing plans proposed by the Ad Hoc Group of Creditors and Non-Consolidation Plan Proponents;

- analyzed term sheets and plan proposals submitted by various creditors and groups of creditors of the various Debtors and prepared responses to same;
- participated in meetings, negotiated and drafted numerous plan support agreements and plan settlement agreements with various parties;
- drafted Debtors' motion to sequence consideration of alternative disclosure statements and chapter 11 plans and participated in meetings and conducted research regarding same;
- drafted and negotiated multiple proposals, term sheets and settlement agreements with the Debtors and their many foreign affiliates to resolve the claims asserted among the parties in connection with the Amended Plan and participated in meetings and teleconferences regarding same;
- negotiated and drafted nondisclosure and confidentiality agreements with various creditors and creditor groups to facilitate diligence and discovery in connection with, among other things, the Amended Plan, the Debtors' pre- and postpetition activities, assets and liabilities, and the potential for substantive consolidation of the Debtors' estates;
- negotiated, drafted and filed motion for approval of protocols, procedures and a protective order to streamline discovery related to plan confirmation and prepared and filed omnibus reply to the numerous objections to Debtors' motion and obtained authorization to implement discovery protocols; participated in meetings regarding numerous comments related to the discovery protocol received from various interested parties;
- drafted and revised discovery protocol and related protective order and participated in numerous meetings regarding same; participated in meetings and attended to issues related to the document repository for plan discovery; reviewed and analyzed notices of intent to participate in plan discovery;
- reviewed documents and participated in meetings regarding the treatment of certain claims under the Amended Plan;
- conducted extensive legal and factual research and drafted memoranda in connection with the Amended Plan; and
- analyzed and participated in meetings and teleconferences with the Debtors and numerous parties in interest regarding valuation of the thousands of structured notes issued by Lehman Brothers Treasury Co. B.V. and guaranteed by LBHI.

(v)  Disclosure Statement/Solicitation/Voting

- Drafted potential amendments to the Debtors' disclosure statement and participated in teleconferences and meetings regarding same;
- reviewed and analyzed disclosure statements filed by the Ad Hoc Group of Creditors and the Non-Consolidation Plan Proponents;
- prepared and filed Debtors' opposition and objection to the motion of the Ad Hoc Group of Creditors for scheduling of the Ad Hoc Group of Creditors' proposed disclosure statement related to the Ad Hoc Plan; and

- coordinated with the Debtors and the Debtors' agent for claims, noticing, balloting and solicitation to draft motion for approval of the Disclosure Statement, the form and manner of notice of a hearing thereon, solicitation and voting procedures, and the related schedule of hearing and filing deadlines, and filed motion and supplement to motion requesting authorization for same.

(vi) Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues

- Prepared and filed Debtors' motion for approval of procedures for determining the allowed amount of claims filed based on structured securities issued or guaranteed by LBHI and participated in numerous teleconferences and meetings regarding same; participated in conference calls with the Debtors and the advisors to the Creditors' Committee regarding the valuation methodologies and their application to the various types of securities; created the procedures for providing notice to the holders of the securities and resolving disputes regarding the valuation of any securities;

- analyzed claims for and drafted and filed the Debtors' eighty-fifth through one hundred forty-seventh omnibus objections to proofs of claim;

- performed research, presented oral argument and obtained Bankruptcy Court orders approving the Debtors' second, fifth, sixth, thirty-fourth, thirty-fifth, fifty-fourth through fifty-sixth, sixty-third, sixty-fourth, sixty-seventh, seventy-first through seventy-third, seventy-sixth through ninety-seventh, one hundredth through one hundred-eighth and one hundred-tenth through one hundred-sixteenth omnibus objections to proofs of claim;

- analyzed and responded to thousands of items of correspondence, court filings and telephone calls from creditors whose claims were subject to the 147 omnibus claims objections on file during the Eighth Interim Compensation Period;

- drafted motion for approval of, and obtained Bankruptcy Court authorization for, a settlement between LBHI and Aegis Mortgage Corp. related to claims asserted by Aurora Loan Services against the bankruptcy estate of Aegis;

- prepared and filed (i) an omnibus reply to twenty-three responses to Debtors' seventy-third omnibus objection to claims (to reclassify proofs of claim as equity interests), (ii) reply to three objecting claimants to Debtors' seventy-fourth omnibus objection to claims (to reclassify proofs of claim as equity interests), (iii) omnibus reply to certain responses to Debtors forty-first, forty-second and forty-third omnibus objections to claims (late-filed claim and late-filed Lehman programs securities claims), and (iv) reply to response of Robert Zito opposing Debtors' seventy-fifth omnibus objection to claims (to reclassify proofs of claim as equity interests);

- performed research, analyzed and participated in various meetings with the Debtors and the Creditors' Committee and their professionals

regarding the approximately $570 billion of guarantee claims asserted against the Debtors;

- prepared, filed and obtained Bankruptcy Court authorization for a settlement agreement between LCPI and certain Glenview entities regarding settlement of claims and turnover of certain future payments;

- researched, analyzed, and participated in meetings with the Debtors, the Creditors' Committee, their professionals and various third party creditors and creditor groups regarding various matters, including the valuation of the approximately 3,800 structured notes issued by Lehman Brothers Treasury Co. B.V., with an aggregate notional amount in excess of $30 billion;

- participated in internal meetings and teleconferences with the Debtors, the Creditors Committee and its professionals regarding claims of various foreign affiliates, including LB Lux, LBF, and LBIE;

- participated in teleconferences with the Debtors regarding the $4 billion claim filed by Canary Wharf Management Limited and certain of its affiliates against the Debtors arising from an alleged guarantee of a lease agreement for real property located in London, which was formerly occupied by certain non-Debtor foreign affiliates and related settlement stipulation and reviewed various documents related to same;

- performed legal research and prepared memoranda regarding guarantee claims, subordination of claims and setoff of same, claims estimation, issues related to prime brokerage accounts, indemnity claims against affiliates, late-filed amendments to proofs of claim and other claims related issues;

- prepared and filed quarterly report pursuant to Bankruptcy Court Order obtained approving procedures for settlement of claims asserted against the Debtors; and

- analyzed claims filed in the international proceedings.

(vii)  Other Bankruptcy Motions and Matters

- Prepared tolling agreements, extensions of tolling agreements and letters of termination of tolling agreements with various third parties, including foreign and domestic affiliates, in connection with potential avoidance actions;

- prepared and filed 3 complaints against third parties, including Bullet Communications Inc., Perficient Inc., and Sark Master fund Ltd. in connection with prepetition transfers to the Debtors;

- prepared, filed and obtained Bankruptcy Court authorization for the implementation of procedures for the settlement of avoidance actions and participated in internal meetings regarding same;

- performed legal research, factual diligence, and analysis in connection with avoidance actions commenced by the Debtors;

- drafted motion for approval of, and obtained Bankruptcy Court authorization to extend the deadline for service of avoidance actions through and including June 30, 2011 and prepared and filed motion for an

additional stay of activity in avoidance actions commenced by the Debtors and an additional extension of the service deadline of avoidance action summons and complaints;

- drafted motion and obtained Bankruptcy Court authorization to compel the Ad Hoc Group of Lehman Brothers creditors to comply with Bankruptcy Rule 2019 and prepared and filed Debtors' reply in further support of the motion to compel the Ad Hoc Group of Creditors to comply with Rule 2019;

- participated in meetings and teleconferences regarding avoidance actions against affiliates, including foreign affiliates; and

- prepared and filed three motions for dismissal, seven notices of dismissal, and prepared various settlement agreements with respect to avoidance actions.

f.   Litigation Related Issues

(i)   Non-Derivative Adversary Proceedings Preparation and Litigation

- Attended to various issues relating to the following adversary proceedings, including the preparation of various documents, preparation for and participation in depositions, meetings, teleconferences, and hearings, and prepared summaries of hearings, conducted research, and engaged in discovery and document production regarding same: (i) *Bank of America, N.A. v. LBSF & LBHI* [Adv. Pro. No. 08-01753] (seeking declaratory relief regarding the setoff of certain amounts allegedly owed by the Debtors), (ii) *European Credit Management Limited Relative European Value S.A., et al., v. LCPI* [Adv. Pro. No. 09-01262] (seeking specific performance with respect to certain participations), (iii) *LH 1440 v. State Street Bank & Trust Company, LCPI and LBHI* [Adv. Pro. No. 09-01138] (seeking declaratory and injunctive relief with respect to a loan agreement), (iv) *Pulsar Re, LTD v. LBHI and LCPI* [Adv. Pro. No. 11-01283 (seeking the imposition of a constructive trust on certain assets allegedly held by LBHI and LCPI), (v) *LBHI v. JPMorgan Chase Bank, N.A.* [Adv. Pro. No. 10-03266] (seeking multiple forms of relief, including damages and the disallowance or subordination of certain claims), (vi) *Kathleen Arnold and Timothy Cotton v. Lehman Brothers Holding Inc.* [Adv. Pro. No. 11-01540 ] (seeking various relief related to a residential real property loan), (vii) *Melissa King v. LBHI* [Adv. Pro. No. 11-01875] (seeking determination of interest in certain real property), and (viii) *The Brooklyn Hospital Center v. Aurora Bank FSB* [Adv. Pro. No. 11-01353] (seeking determination of the extent, validity and priority of a certain lien).

(ii)   Non-Bankruptcy Litigation

- Provided continuing counsel on litigation and bankruptcy issues in connection with *Simeon Moreno v. Property Asset Management, Inc.,*

> *Mortgage Electronic Registration Systems, Inc., and Litton Loan Servicing Limited Partnership* [Case No. 08-17715] adversary proceeding and underlying bankruptcy, *In re Simeon Moreno* [08-17715-FJB D. Mass.];

- participated in meetings, conducted research, and prepared respondents' opposition to petitioner Gregory Pipkin's first amended petition for pre-action discovery in connection with *In re Gregory Pipkin* [S.D.N.Y. Case No. 1:11-MC-00018-P1];

- prepared motion to dismiss and reply to Cambium's opposition to motion to dismiss in *Cambium Ltd. v. Trilantic Capital Partners III L.P. f/k/a Lehman Brothers Merchant Banking Fund III L.P. and L.B. TCP Associates III L.P. f/k/a Lehman Brothers Merchant Banking Associates L.P.* [Del Ch. Case No. 5857];

- participated in meetings and teleconferences, conducted research, prepared discovery demands, prepared for oral argument in support of motion to dismiss amended complaint and participated in meetings and calls with joint defense group regarding motion to dismiss complaint and motion to dismiss amended complaint in *Aetna Life Insurance Company v. Appalachian Asset management Corp., et al*, [Index No. 103913/2010]; and

- participated in mediations; prepared for and conducted interviews; reviewed, drafted and analyzed complaints, claims and pleadings; performed researched, conducted document review, and responded to document requests in multiple foreign and domestic litigations commenced by and against Lehman entities.

(iii)  2004 Issues

- Prepared and served ten notices of subpoena, pursuant to an order Weil obtained authorizing the Debtors to issue subpoenas for the production of documents and the examination of persons and entities;

- drafted and filed LBHI's preliminary response to motion of Colorado Plaintiff's for order authorizing examination of Debtors pursuant to Bankruptcy Rule 2004 and conducted research and participated in meetings regarding same;

- prepared Debtors' objection to motion of Monti Family Holding Company Ltd. for Rule 2004 examination and participated in meetings regarding same; and

- reviewed documents and/or prepared document requests pursuant to Bankruptcy Rule 2004.

(iv)  Appeals

- Engaged in substantial appellate work related to Swedbank's appeal to the United States Court of Appeals for the Second Circuit of the District Court's opinion in the Swedbank matter and participated in meetings regarding same [Second Circuit Case No. 11-800];

▪ attended to issues related to Bank of America's appeal of the Bankruptcy Court's order granting the Debtors' summary judgment including the review of and preparation of documents, and participation in meetings regarding same [S.D.N.Y. Case No. 1:11-cv-03958-DAB].

g.    US Trustee/SEC/DOJ/Examiner Issues

(i)    US Trustee Related Issues

▪ Conferred and corresponded with U.S. Trustee on numerous issues including fee committee status and related issues;

▪ reviewed and filed monthly operating reports for January, February, March and April 2011, a supplemental operating report for December 2010, and addressed issues related to same; and

▪ monitored compliance with the UST Guidelines.

(ii)    SEC/DOJ Issues

▪ Assisted the Debtors with respect to their preparation and participation in numerous meetings and teleconferences with various governmental and regulatory entities and as witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and

▪ performed and coordinated document review, including the collection and production of documents in response to various governmental and regulatory requests and created and reviewed various privilege logs related to same.

(iii)   Examiner Issues

▪ Participated in teleconferences regarding various issues related to the production of materials to the Examiner; and

▪ created privilege and clawback logs, conducted diligence, and prepared (e.g., redaction and review for confidential information) materials for production to the Examiner.

h.    Fee-Related Issues

(i)    Firm's Own Billing/Fee Applications

▪ Prepared Weil's seventh interim application for compensation and reimbursement and prepared monthly fee statements in compliance with the Guidelines; and

▪ addressed various issues raised by the Fee Committee regarding Weil's third, fourth, fifth and sixth interim application for compensation and reimbursement and prepared response to same.

(ii)  Firm's Own Retention Issues

- Prepared Weil's eighth supplemental affidavit in support of the Debtors' engagement of Weil in these cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

(iii)  Third Party Retention/Fee Application/Other Issues

- Obtained Bankruptcy Court approval of, after preparing and filing applications for, (i) the amended engagement of Lazard Feres & Co. LLC as investment banker, (ii) to expansion of the scope of the Debtors' retention of Latham & Watkins LLP as special counsel, (iii) the retention of Sidley & Austin LLP as special counsel, (iv) the retention of Locke, Lord, Bissell & Liddell LLP as special counsel, (v) the retention of Foster, Graham, Milstein & Calisher, LLP as special counsel and (vi) the modification of the procedures for compensating and reimbursing Kramer Levin Naftalis & Franklin LLP as special counsel to the Debtors;
- prepared applications (i) to retain Milbank, Tweed, Hadley & McCloy LLP as special counsel with respect to certain tax related matters, (ii) to expand the scope of retention of CB Richard Ellis, Inc. as real estate consultant, (iii) to expand the scope of Pachulski Stang Siehl & Jones LLP as special counsel, and (iv) additional applications for certain other professionals;
- prepared supplemental declaration in connection with order authorizing the employment and retention of Gibson, Dunn & Crutcher LLP, as special counsel to the Debtors;
- assisted the Debtors in negotiating engagement letters with numerous ordinary course professionals, other professionals, and certain other parties;
- regularly conferred with certain of the more than 205 ordinary course professionals in these cases regarding retention procedures and conflicts issues; and
- participated in meetings with retained professionals, the Creditors' Committee, the U.S. Trustee, and the Fee Committee regarding guidelines, orders, and protocols established for all professionals retained in these chapter 11 cases.

49.     The professional services performed by Weil were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their economic stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

50.     Professionals in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax departments in numerous offices across three continents provided the necessary services to support the Debtors in the administration of these chapter 11 cases. Weil's Business Finance & Restructuring practice is preeminent and enjoys an international reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WEIL

51.     As set forth in Exhibit C hereto, Weil has disbursed $1,000,547.07 as expenses incurred in providing professional services during the Eighth Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases. For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require Weil attorneys to work long hours, engage in numerous long distance and international communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

52.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required Weil's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors. Such services were essential to meet deadlines, timely respond to motions and objections, and to satisfy the extraordinary demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

53.     While Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their costs for

transportation from the office to home.  Weil's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the U.S. Trustee Guidelines.

54.     With respect to photocopying expenses, Weil's domestic offices charge all of Weil's clients $.10 per page for black-and-white copies.  With respect to facsimile expenses, in compliance with the U.S. Trustee Guidelines, Weil does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into the Weil hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit C are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

55.     In addition, because of the global scope of the Debtors' businesses, frequent long distance and international telephone calls are required.  On many occasions, overnight delivery of documents and other materials was required as a result of circumstances

necessitating the use of such express services.  These disbursements are not included in Weil's overhead for the purpose of setting billing rates.  Weil has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

56.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Bankruptcy Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  Id. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

57.    The services for which Weil seeks compensation and reimbursement of expenses in this application were necessary for and beneficial to the Debtors' preservation, the orderly administration of the Debtors' estates, and the prosecution of their chapter 11 cases. Weil has worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process.    The professional services were performed expediently and efficiently.    Whenever possible, Weil sought to minimize the costs of its services to the Debtors by employing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration.    Groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.    The compensation requested is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.    Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.    Furthermore, Weil has voluntarily reduced its requests for charges and expenses incurred during the Eighth Compensation Period by the aggregate amount of $878,905.09.    Approval of the compensation for professional services and reimbursement of expenses requested is warranted.

## CONCLUSION

58.    Weil respectfully requests the Bankruptcy Court allow interim compensation for professional services rendered during the Eighth Compensation Period in the amount of $40,247,973.07 consisting of $39,247,426.00, representing 100% of charges incurred during the Eighth Compensation Period, and reimbursement of $1,000,547.07, representing 100% of actual and necessary expenses incurred during the Eighth Compensation Period, without prejudice to Weil's right to seek additional compensation for services performed and

expenses incurred during the Eighth Compensation Period, which were not processed at the time

of this application, and (ii) direct payment by the Debtors of the difference between the amounts

allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Bankruptcy Court grant

the relief requested and such other and further relief as is just.


Dated: August 15, 2011
       New York, New York


/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

## (Third Party Representations)

| Lehman Entity Represented | Amount Paid |
|---|---|
| Lehman Commercial Paper Inc. | $16,157.90 |
| Lehman Commercial Paper Inc. | $8,520.20 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $31,107.50 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $86,355.97 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $521,551.98 |
| Lehman Commercial Paper Inc. | $15,597.50 |
| Lehman Commercial Paper Inc. | $54,006.91 |
| Lehman Commercial Paper Inc. | $11,894.57 |
| Lehman Commercial Paper Inc. | $14,684.19 |
| **Total:** | **$759,876.72** |

## EXHIBIT B

**(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                                         :     **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,     :     **08-13555 (JMP)**
:
**Debtors.**                  :     **(Jointly Administered)**
:
-------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES**
**AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT**
**OF EIGHTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP**
**FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, Harvey R. Miller, hereby certify that:

1.     I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("Weil"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Bankruptcy

Court on June 20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases adopted by the Bankruptcy Court on April 19, 1995 (together with the Fee and

Disbursement Guidelines, the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 3102] (the "Administrative Order," and together with the Local Guidelines and the U.S. Trustee Guidelines, the "Guidelines").

2.    This certification is made in respect of Weil's application, dated August 15, 2011 (the "Application"), for interim compensation and reimbursement of expenses for the period commencing February 1, 2011 through and including May 31, 2011 in accordance with the Guidelines.

3.    In respect of section A.2 of the Fee and Disbursement Guidelines, I certify that Weil reviewed the fee application and has approved it.

4.    In respect of section B.1 of the Local Guidelines, I certify that:

a.    I have read the Application;

b.    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Weil and generally accepted by Weil's clients; and

d.    in providing a reimbursable service, Weil does not make a profit on that service, whether the service is performed by Weil in-house or through a third party.

5.    In respect of section B.2 of the Local Guidelines and as required by the Administrative Order, I certify that Weil has complied with these provisions requiring it to provide counsel for the statutory committee of unsecured creditors appointed in these cases (the "Committee") and the Debtors, with a statement of Weil's charges and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not always provided within the timetables set forth in the Local Guidelines and the Administrative Order.

6.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, attorneys for the Committee, and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated: August 15, 2011
     New York, New York

/s/ Harvey R. Miller
Harvey R. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors in Possession

**EXHIBIT C**

**EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE
EIGHTH INTERIM PERIOD OF FEBRUARY 1, 2011 THROUGH MAY 31, 2011**

| EXPENSES | AMOUNTS |
|---|---|
| Business Meals | $41,454.72 |
| Computerized Research / Other Research | $332,733.80 |
| Consultant / Witness / Deposition Fees | $69,126.93 |
| Corporation Service | $23,024.89 |
| Court / Filing / Regulatory Fees | $9,456.88 |
| Court Reporting | $53,788.05 |
| Duplicating | $192,056.06 |
| E-Discovery Services / Document Scanning and Coding | $7,304.37 |
| Legal Notices / Publication | $19,470.16 |
| Messenger / Process Service | $9,731.06 |
| Online News Monitoring | $1,517.66 |
| Outside Temps-Paralegals / Other | $105.84 |
| Postage and Express Mail | $14,679.71 |
| Telephone / Facsimile | $3,618.54 |
| Translation Fees | $23,397.70 |
| Travel and Transportation | $199,080.70 |
| **Total:** | **$1,000,547.07** |

**EXHIBIT D**

**COMPENSATION BY WORK TASK CODE FOR SERVICES
RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR EIGHTH
INTERIM PERIOD OF FEBRUARY 1, 2011 THROUGH MAY 31, 2011**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 0100 | General Case Administration | 259.3 | $93,773.00 |
| 0200 | General Case Strategy Meetings | 266.9 | $206,823.00 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 682.6 | $322,629.50 |
| 0400 | Hearings and Court Communications | 760.6 | $323,208.50 |
| 0500 | Non-Working Travel | 658.7 | $225,904.50 |
| 0600 | Interested Party Communications/Website/Lehman Team Hotline | 200.4 | $133,393.50 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 40.9 | $36,001.50 |
| 0900 | Secured Creditors' Issues/Meetings/Communications | 28.9 | $21,768.00 |
| 1100 | LBI/SIPC Coordination and Issues | 919.7 | $530,020.50 |
| 1200 | Cash Management | 55.5 | $36,505.00 |
| 1300 | Insurance Issues | 28.1 | $20,981.50 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 520.0 | $357,438.50 |
| 1500 | Customer/Vendor Issues | 38.3 | $27,536.50 |
| 1700 | Intellectual Property | 116.5 | $93,795.00 |
| 1800 | Tax Issues | 1,166.6 | $820,798.50 |
| 1900 | Corporate Governance | 413.9 | $191,713.00 |
| 2000 | Other General Business Operation Issues | 333.8 | $213,443.50 |
| 2100 | Intercompany Issues | 1,643.0 | $1,201,032.00 |
| 2200 | Data Preservation/Migration | 2.0 | $1,850.00 |
| 2300 | Real Estate Matters | 13,216.7 | $9,269,588.00 |
| 2400 | Private Equity | 769.2 | $496,015.50 |
| 2500 | All Derivatives (Adversaries, ADR, Claims, etc.) | 19,545.4 | $13,168,728.50 |
| 2600 | Loans/Investments | 1,566.3 | $949,761.50 |
| 2700 | Domestic Bank and Related Regulatory Issues | 106.6 | $90,288.00 |

| 2800 | International Insolvency Issues | 46.0 | $39,330.00 |
|---|---|---|---|
| 3000 | Non-Derivative Automatic Stay/Safe Harbor Issues | 216.3 | $119,742.50 |
| 3100 | Miscellaneous Asset Sales/363 Issues | 1,423.4 | $1,114,611.50 |
| 3200 | Non-Derivative Executory Contracts/365 Issues | 151.6 | $81,339.00 |
| 3300 | DIP Financing | 1.3 | $962.00 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 4,412.6 | $3,055,231.50 |
| 3600 | Disclosure Statement/Solicitation/Voting | 807.1 | $537,095.00 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation and ADR | 3,438.0 | $2,107,215.00 |
| 3800 | Other Bankruptcy Motions and Matters | 831.4 | $469,231.50 |
| 3900 | Non-Derivative Adversary Proceeding Prep and Litigation | 1,511.7 | $942,609.00 |
| 4000 | Non-Bankruptcy Litigation | 350.0 | $223,205.00 |
| 4100 | 2004 Issues | 90.6 | $49,069.00 |
| 4200 | Appeals | 98.4 | $62,980.00 |
| 4300 | US Trustee Related Issues | 17.6 | $12,421.00 |
| 4400 | SEC/DOJ Issues | 1,196.7 | $505,427.50 |
| 4500 | Examiner Issues | 274.4 | $165,134.00 |
| 4600 | Firm's Own Billing/Fee Applications | 1,919.7 | $647,858.50 |
| 4700 | Firm's Own Retention Issues | 176.7 | $45,696.00 |
| 4800 | Third Party Retention/Fee Application/Other Issues | 469.4 | $235,271.00 |
| **Total Disbursements Requested:** | | **60,772.8** | **$39,247,426.00** |