QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------- x
In re:                                    :    Chapter 11 Case
                                          :
LEHMAN BROTHERS HOLDINGS INC.,            :    No. 08-13555 (JMP)
et al.                                    :
                                          :    Jointly Administered
                              Debtors.    :
--------------------------------------------------------- x
```

## SUMMARY SHEET

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al</u>. |
| **Date of Retention** | October 21, 2008, (<u>nunc pro tunc</u> to September 15, 2008) |
| **Compensation Period** | February 1, 2011 – May 31, 2011 |
| **Fees Incurred for Counsel** | $5,557,558.50 |
| **Expenses Incurred** | $194,469.22 |
| **Prior Interim Applications Filed** | This is the Eighth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $459.92 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $389.68 |

**Schedule 1**

**Hours, Rate and Fees for Services Rendered during the Eighth Interim Fee Period.**

| Time Keeper | Initials | Title | Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| John B. Quinn | JBQ | Partner | $995 | 48.90 | $48,655.50 |
| Daniel P. Cunningham | DPC | Partner | $995 | 168.50 | $167,657.50 |
| Daniel Bromberg | DHB | Partner | $885 | 5.30 | $4,690.50 |
| Susheel Kirpalani | SK2 | Partner | $885 | 0.50 | $442.50 |
| Andrew J. Rossman | AJR | Partner | $885 | 186.10 | $164,698.50 |
| James C. Tecce | JCT | Partner | $850 | 455.50 | $387,175.00 |
| Eric D. Winston | EDW | Partner | $825 | 149.00 | $122,925.00 |
| Erica Taggart | ET | Partner | $750 | 747.60 | $560,700.00 |
| Matthew Bunting | MJB | Partner | $750 | 6.00 | $4,500.00 |
| Eric M. Kay | EMK | Counsel | $700 | 214.70 | $150,290.00 |
| William G. Berry | WGB | Counsel | $670 | 4.20 | $2,814.00 |
| Kristin Madigan | KJM | Associate | $595 | 100.40 | $59,738.00 |
| Christopher D. Kercher | CDK | Associate | $595 | 430.00 | $255,850.00 |
| Robert K. Dakis | RKD | Associate | $595 | 516.50 | $307,317.50 |
| Tyler G. Whitmer | TGW | Associate | $535 | 932.00 | $498,620.00 |
| Leah M. Ray | LMR | Associate | $535 | 126.70 | $67,784.50 |
| James Shaerf | JS3 | Associate | $495 | 2.80 | $1,386.00 |
| Matthew R. Scheck | MS3 | Associate | $495 | 588.50 | $291,307.50 |
| Olga M. Urbieta | OMU | Associate | $460 | 356.90 | $164,174.00 |
| Zena Mount-Namson | ZMX | Associate | $460 | 16.20 | $7,452.00 |
| Ben Odell | BOX | Associate | $400 | 745.20 | $298,080.00 |
| Tigran Vardanian (Rate Change)[1] | TV | Associate | $535 | 137.10 | $73,348.50 |
| Tigran Vardanian (Changed Title to Hourly Associate) | TV | Associate | $400 | 116.60 | $46,640.00 |
| Tigran Vardanian (Staff Attorney) | TV | Attorney | $320 | 49.90 | $19,960.00 |
| Cash Rowden | CR | Attorney | $320 | 676.70 | $216,544.00 |
| Lauren Rosenthal | LR | Attorney | $320 | 280.50 | $89,760.00 |
| Stephen Chiu | SC1 | Attorney | $320 | 347.50 | $111,200.00 |
| Heather Nolan | HN | Attorney | $320 | 496.30 | $158,816.00 |
| Kathleen Fay | KMF | Attorney | $320 | 566.70 | $181,344.00 |
| Haley Siman | HS | Attorney | $320 | 326.10 | $104,352.00 |
| Christopher Clark | CC4 | Attorney | $320 | 474.50 | $151,840.00 |
| SoYun Roe | SR1 | Attorney | $320 | 829.30 | $265,376.00 |

---

[1]    Mr. Vardanian's status within the firm changed twice during this interim period.  He changed from staff attorney to an hourly associate, and then to a full associate.  Mr. Vardanian's current rate takes into account both his legal experience and the year he graduated from law school.

| Time Keeper | Initials | Title | Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Irene Tokar | ILT | Attorney | $320 | **300.70** | **$96,224.00** |
| Kate Lydon | KLX | Law Clerk | $320 | **483.10** | **$154,592.00** |
| Nicholas Hoy | NH | Law Clerk | $320 | **23.10** | **$7,392.00** |
| Roy Nelson | RN | Managing Clerk | $305 | **14.60** | **$4,453.00** |
| Joan Collopy | JC | Paralegal | $270 | **696.60** | **$188,082.00** |
| Kristina Grosso | KG | Paralegal | $270 | **4.60** | **$1,242.00** |
| Cheyoon Im | CI | Paralegal | $270 | **265.50** | **$71,685.00** |
| Shahreen Mehjabeen | SXM | Paralegal | $270 | **0.40** | **$108.00** |
| Lindsey Kelleher | LK | Paralegal | $270 | **87.40** | **$23,598.00** |
| Eva Korol | EK1 | Paralegal | $270 | **4.00** | **$1,080.00** |
| Ian Ibarra | II | Paralegal | $270 | **64.50** | **$17,415.00** |
| Christine Martinez | CM1 | Paralegal | $270 | **5.20** | **$1,404.00** |
| Danny Rose | DR | Lit Support | $150 | **0.80** | **$120.00** |
| Raul Vasquez | RV2 | Lit Support | $150 | **13.20** | **$1,980.00** |
| Cyrus Wilcox | CW1 | Lit Support | $150 | **0.80** | **$120.00** |
| Linda Jovel | LJ | Lit Support | $150 | **3.70** | **$555.00** |
| Jonathan Espinosa | JE | Lit Support | $250 | **1.50** | **$375.00** |
| Jonathan Espinosa (Rate Lowered) | JE | Lit Support | $150 | **11.30** | **$1,695.00** |
| TOTALS | | | | **12,083.70** | **$5,557,558.50** |

**Schedule 2**

**Hours and Fees for the Eighth Interim Compensation Period As Rendered By Category**

| TASK | TOTAL HOURS | TOTAL FEES |
|---|---|---|
| 0100    General Case Administration | 29.60 | $9,472.00 |
| 0400    Hearings and Court Communications | 48.50 | $40,847.50 |
| 0500    Non-Working Travel | 199.90 | $119,570.50 |
| 0800    Unsecured Creditors Issues/Meetings/Communication | 96.10 | $75,243.50 |
| 2000    Other General Business Operation Issues | 125.50 | $90,749.50 |
| 2500    Derivatives/SWAP Agreement Issues | 612.10 | $423,031.00 |
| 3500    Plan of Reorganization/Plan Confirmation | 0.10 | $82.50 |
| 3900    Non-Derivative Adversary Proceedings | 10368.50 | $4,567,621.50 |
| 4600    Firm's Own Billing/Fee Applications | 562.00 | $209,178.00 |
| 4700    Firm's Own Retention Issues | 9.20 | $4,237.00 |
| 4800    Third Party Retention/Fee Application | 32.20 | $17,525.50 |
| TOTALS | 12,083.70 | $5,557,558.50 |

## Schedule 3

| EXPENSES | TOTAL |
|---|---|
| Air travel (airfare and related fees) | $29,553.91 |
| Attorney Service (subpoena service) | $6,808.93 |
| Color Printing (@ $0.50 per page) | $759.00 |
| Conference Fee | $835.90 |
| Deposition Transcripts | $6,147.05 |
| Digital Prints (blowbacks and slipsheets) | $1,814.85 |
| Document Reproduction (@ $0.10 per page) | $24,751.80 |
| Express Mail | $4,936.72 |
| Filing Fee (pro hac vice fee) | $25.00 |
| Hosting Per GB | $22,080.00 |
| Hotel (room rates, taxes, surcharges ) | $17,400.02 |
| iConnect Licensing Fees | $4,469.79 |
| Local Meals | $5,202.73 |
| Local Travel (taxi & car service) | $3,303.40 |
| Meals During Travel | $1,808.95 |
| Media Create/Dup (per unit) | $1,630.00 |
| Messenger | $320.05 |
| OCR (per page) | $0.51 |
| Off-Site Document Services (document reproduction/binding) | $19,162.01 |
| Online Research | $22,363.95 |
| Other Lit Support Services (maintenance of databases, data retrieval) | $1,243.22 |
| Outside Record Production (obtaining records from libraries and other outside sources) | $120.00 |
| Outside Velobind | $19.00 |
| PACER Service | $213.68 |
| Parking | $125.50 |
| Postage | $26.50 |
| Professional Services (public records retrieval) | $18,350.85 |
| Scanning | $23.20 |
| Telecopier (@$0.24 per transmitted page) | $35.76 |
| Telephone | $235.09 |
| Translation (foreign document production) | $250.00 |
| Travel Internet | $371.85 |
| Witness fee | $80.00 |
| TOTAL | $194,469.22 |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| -------------------------------------------------------- x | | |
| In re: | : | Chapter 11 Case |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., | : | No. 08-13555 (JMP) |
| <u>et al.</u> | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| -------------------------------------------------------- x | | |

**EIGHTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART
& SULLIVAN, LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED DURING
<u>THE PERIOD FEBRUARY 1, 2011 THROUGH MAY 31, 2011</u>**

Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated April 14, 2011, (as amended, the "<u>Compensation Order</u>"), for allowance of

interim compensation for professional services rendered in the amount of $5,557,558.50 and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the amount of $194,469.22, during the period beginning February 1, 2011 through and including May 31, 2011 (the "Fee Period" or the "Eighth Interim Compensation Period"), and, in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    As special counsel to the Committee, Quinn Emanuel is responsible for, among other things, investigating and prosecuting claims and causes of action against major financial institutions that were parties to myriad complex transactions with Lehman, such as JPMorgan Chase Bank, N.A. ("JPMC"), Barclays Capital, Inc. ("Barclays"), and Bank of America, N.A. ("BofA").  Additionally, Quinn Emanuel is tasked with the review of claims filed by these, and other, entities.  Quinn Emanuel is also involved with the comprehensive derivatives alternative dispute resolution process and responsible for all other matters that arose in the chapter 11 cases where the Committee's lead counsel is conflicted.  The resources devoted by Quinn Emanuel to these tasks enables the Committee to substantially advance the rights of all unsecured creditors.

2.    Throughout this Fee Period, Quinn Emanuel attorneys spent a significant amount of time investigating claims, prosecuting estate causes of action, drafting hundreds of pages of briefs and memoranda, and participating in numerous derivatives-related meetings and mediations.  As a direct result of the contributions of Quinn Emanuel, the Committee, and the Debtors' other professionals, the estates obtained significant judgments and have preserved and significantly enhanced the value of estate assets.

3.    <u>JPMC Litigation</u>.  During this Fee Period, Quinn Emanuel devoted significant resources to prosecuting significant causes of action against JPMC seeking the recovery of billions of assets the estates maintain were transferred fraudulently.  Pursuant to a litigation protocol among the Debtors and the Committee, Quinn Emanuel plays a lead role in prosecuting this action.  During this period, Quinn Emanuel managed and participated in the extensive ongoing fact discovery process and in filing and arguing dispositive motions.  Quinn Emanuel has a lead role in propounding and reviewing discovery from third parties.  In furtherance of this responsibility, Quinn Emanuel attorneys issued numerous document and deposition requests, held meet and confer sessions with subpoena recipients, and reviewed the resulting document productions.  Together with the attorneys for the estate, Quinn Emanuel attorneys coordinated and reviewed millions of pages of discovery received thus far.  Additionally, Quinn Emanuel prepared for and took twenty-three (23) depositions of JPMC and third party witnesses and supported Debtors' counsel in taking another eleven (11) depositions.

4.    Quinn Emanuel attorneys have also been engaged in substantial pre-trial motion practice.  On August 25, 2010, JPMC filed a lengthy motion to dismiss the JPMC Complaint (defined below).  Additional parties filed statements addressing alleged market implications arising from the litigation.  Quinn Emanuel attorneys spent considerable time performing legal and factual research in formulating a response to the motion to dismiss and the related statements.  On May 10, 2011, Quinn Emanuel prepared extensively for and argued against JPMC's motion to dismiss before the Court.  Quinn Emanuel, working with Debtors' counsel, spent a great deal of time and effort preparing for and conducting this argument, which was necessary and appropriate given the significance of this argument to the estate's multi-billion dollar action against JPMC.

5.         In addition to its motion to dismiss, JPMC filed counterclaims against the estates seeking billions in damages from LBHI.  During this period, Quinn Emanuel attorneys reviewed these claims, conducted significant legal research, and drafted a motion to dismiss these counterclaims.

6.         Besides its work on the adversary proceeding with JPMC, Quinn Emanuel continued during the Fee Period to work with co-counsel, the estate and the estate's financial advisor to research JPMC's claims against the estate as part of the claim review and reconciliation process.  In particular, Quinn Emanuel attorneys took the lead in drafting an objection to JPMC's claims against the LBHI estate related to derivatives contracts between Lehman Brothers Special Finance and Washington Mutual Bank, FA.  After the WaMu Objection was filed, Plaintiffs engaged in negotiations with JPMC leading to an agreement through which JPMC did not oppose the WaMu Objection, which resulted in an $80.3 million reduction in claims against the estate.  The Court signed its order to this effect on June 3, 2011.

7.         Barclays Litigation.  During this Fee Period, Quinn Emanuel attorneys dedicated resources to analyzing the Court's memorandum opinion on the Rule 60(b) motions filed by the Committee, Lehman Brothers Holdings Inc. ("LBHI"), and the SIPA Trustee (together, the "Movants").  Quinn Emanuel attorneys devoted time to researching, writing, and preparing a memorandum to the Committee regarding recommendations on next steps.  Quinn Emanuel attorneys also were involved in negotiating the appropriate form of orders that were ultimately submitted to the Court to effectuate the Court's decision.

8.         Derivative Transactions.  Quinn Emanuel attorneys devoted significant time to reviewing numerous derivatives transactions to which the Debtors were parties.  Quinn Emanuel attorneys dedicated time to diligencing certain of these transactions to ensure that

4

the value for unsecured creditors has been maximized.  Additionally, Quinn Emanuel attorneys prepared for and attended numerous derivatives mediations on behalf of the Committee.

9.          Lastly, on matters where Quinn Emanuel represents the Committee and where the estates are also a party, Quinn Emanuel makes every effort to coordinate its efforts with estate counsel and avoid unnecessary duplication.  The fees and expenses charged by Quinn Emanuel were reasonable, necessary and beneficial to these estates.

## II.          JURISDICTION AND VENUE

10.          This Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and amended April 21, 1995 (the "Local Guidelines"), a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

## III.          GENERAL BACKGROUND

11.          On September 15, 2008, and periodically thereafter (the "Petition Date"), LBHI, and certain of its subsidiaries and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

12.          On September 17, 2008, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

5

13.       On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July 13, 2010, the Examiner was discharged of its duties to investigate, <u>inter alia</u>, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

## IV.       <u>RETENTION OF QUINN EMANUEL</u>

14.       On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Application</u>").

15.       On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. <u>et al.</u>, <u>Nunc Pro Tunc</u> to September 17, 2008 (the "<u>Retention Order</u>").  A true and correct copy of the Retention Order is attached hereto as Exhibit B.

16.       On October 11, 2008, the Debtors filed a Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "<u>Compensation Motion</u>").

17.       The Compensation Order establishes a procedure for, <u>inter alia</u>, the payment of interim fees and expenses to professionals employed by the Committee on a monthly basis.  Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1]  A copy of the Compensation Order is attached as Exhibit C.

## V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

18.        Quinn Emanuel submitted its first quarterly fee application on April 10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing September 15, 2008 through January 31, 2009.

19.        Quinn Emanuel submitted its second quarterly fee application on August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period commencing February 1, 2009 through May 31, 2009.

20.        Quinn Emanuel submitted its third quarterly fee application on December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period commencing June 1, 2009 through September 30, 2009.

21.        Quinn Emanuel submitted its fourth quarterly fee application on April 16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period commencing October 1, 2009 through January 31, 2010.

22.        Quinn Emanuel submitted its fifth quarterly fee application on August 16, 2010 requesting $3,480,537.09 in fees and $281,095.21 in expenses for the period commencing February 1, 2010 through May 31, 2010.

23.        Quinn Emanuel submitted its sixth quarterly fee application on December 16, 2010 requesting $3,187,890.63 in fees and $259,395.28 in expenses for the period commencing June 1, 2010 through September 30, 2010.

---

[1]        Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

24.        Quinn Emanuel submitted its seventh quarterly fee application on June 2, 2011 requesting $4,835,788.00 in fees and $155,800.04 in expenses for the period commencing October 1, 2010 through January 31, 2011.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G.

25.        This Application is Quinn Emanuel's eighth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from February 1, 2011 through May 31, 2011.

26.        This Application requests that the Court (a) approve interim fees in the total amount of $5,557,558.50 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $194,469.22 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

27.        During the Fee Period, Quinn Emanuel submitted four monthly fee statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn Emanuel has requested interim fee compensation in the amount of $4,446,047.00 (representing 80% of the fees billed by Quinn Emanuel from February 1, 2011 through May 31, 2011) and expenses incurred in the total amount of $194,469.22 (100% of the expenses billed by Quinn Emanuel from February 1, 2011 through May 31, 2011).  For the period commencing on February 1, 2011 through February 28, 2011, Quinn Emanuel requested payment of $878,360.40 in fees (representing 80% of the $1,097,950.50 in fees for that period) and $32,715.04 in expenses.  For

8

the period commencing on March 1, 2011 through March 31, 2011, Quinn Emanuel requested

payment of $1,007,219.60 in fees (representing 80% of the $1,259,024.50 fees for that period)

and $35,126.29 in expenses.  For the period commencing on April 1, 2011 through April 30,

2011, Quinn Emanuel requested payment of $1,126,403.20 in fees (representing 80% of the

$1,408,004.00 in fees for that period) and $39,345.31 in expenses.  For the period commencing on

May 1, 2011 through May 31, 2011, Quinn Emanuel requested payment of $1,434,063.60 in fees

(representing 80% of the $1,792,579.50 in fees for that period) and $87,282.58 in expenses.[2]

28.     The fees and expenses requested are reasonable, and all amounts

requested were for actual and necessary services rendered on behalf of the Committee.

29.     Quinn Emanuel has not entered into any agreement, express or

implied, with any other party for the purpose of fixing or sharing fees or other compensation to be

paid for professional services rendered in these cases.  No promises have been received by Quinn

Emanuel or any member thereof as to compensation in connection with these cases other than in

accordance with the provisions of the Bankruptcy Code.

## VI.     SUMMARY OF PROFESSIONAL SERVICES RENDERED

30.     Pursuant to the guidelines promulgated by the United States Trustee,

Quinn Emanuel classified all services performed for which compensation is sought into separate

categories.  Quinn Emanuel attempted to place the services performed in the category that best

relates to the services provided.  However, because certain services may relate to one or more

categories, services pertaining to one category may be included in another category.  Schedule 1,

attached hereto, lists each timekeeper, his or her respective billing rate, professional information,

---

[2]     Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the

professional and paraprofessional time expended by project category.  Timekeeping entries and

Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these

categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an

hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description

of services performed by each attorney and paraprofessional on behalf of the Committee.[3]

       31.       The following summary is intended only to highlight key services

rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has

expended a considerable number of hours on behalf of the Committee, and is not meant to be a

detailed description of all of the work performed.

### A.    <u>General Case Administration (Hours: 29.60; Fees: $9,472.00)</u>

       32.       Quinn Emanuel serves as special counsel to the Committee in respect

of numerous matters, including various estate litigations against major financial institutions.  As

special counsel, Quinn Emanuel also represents the Committee on matters where its main

counsel, Milbank Tweed, is conflicted.  To that end, its attorneys must keep abreast of the

various pleadings filed in the Chapter 11 Cases and in various adversary proceedings.

Accordingly, during this Fee Period, a Quinn Emanuel staff attorney spent time reviewing

pleadings filed each day in the Lehman cases and various adversary proceedings.  In order to

create cost savings to the estate, Quinn Emanuel has arranged for a specially trained staff

attorney (who bills at a rate lower than a first year associate) to conduct a review and assessment

of newly filed pleadings (including, without limitation, whether the pleadings raise issues of

---

[3]      Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not
being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States
Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

concern to the Committee, or were filed in proceedings where the Committee is a party).  These charges are part of Quinn Emanuel's efforts to prosecute valuable estate claims, are integral to the litigation effort, and are an important part of its role as special counsel to the Committee.

**B.**     **Hearings and Court Communications (Hours: 48.50; Fees: $40,847.50)**

33.     Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus hearings where matters being handled by Quinn Emanuel were being presented for consideration, and specially scheduled hearings with respect to adversary proceedings where it represents the Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing documents, including correspondence and pleadings, and conducting independent legal and factual research.

34.     Quinn Emanuel attorneys also include in "Court Hearings" time spent in court arguing against the JPMC motion to dismiss.  As discussed in more detail below, on May 10, 2011, Quinn Emanuel attorneys participated in the day-long argument on JPMC's motion to dismiss all of the estates' claims against JPMC.  The motion to dismiss was extensive, covering issues ranging from routine theories applying bankruptcy and state law to novel and complex constructions of the Bankruptcy Code safe harbor provisions.  Given the complexity and breadth of the issues raised in JPMC's motion to dismiss, and the significance of this dispositive motion to the multi-billion action against JPMC, Quinn Emanuel tasked different attorneys with reviewing and formulating counterarguments for specific issues.  In order to streamline trial presentation, John Quinn took a lead role of presenting the Committee's position; however, given the importance of the argument and the breadth of the issues, those attorneys responsible for specific issues were also present at the hearings.

11

| TIME KEEPER | DUTIES |
|---|---|
| Daniel P. Cunningham | Responsible for JPMC derivatives-related matters. |
| Erica Taggart | Responsible for preparing John Quinn for oral argument; responsible for overall JPMC case knowledge and strategy; responsible for litigation aspects of JPMC case. |
| John B. Quinn | Presented oral argument on JPMC's motion to dismiss. |
| James C. Tecce | Responsible for preparing John Quinn for oral argument; responsible for overall knowledge of Lehman case and background; responsible for bankruptcy aspects of JPMC case. |
| Andrew J. Rossman | Assisted in preparation of John Quinn for oral argument; responsible for overall JPMC case knowledge and strategy; responsible for litigation aspects of JPMC case. |

**C.    Non-Derivative Adversary Proceedings (Hours: 10,368.50; Fees: $4,567,621.50)**

35.        Time billed to this category generally relates to litigation that Quinn Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors. Consistent with Quinn Emanuel's role as special counsel to the Committee, the majority of the services Quinn Emanuel provides relate to litigation.  For that reason, most of the time in Quinn Emanuel's application falls into this category.

36.        JPMorgan Litigation.  On December 2, 2009, the Committee and LBHI ("Plaintiffs") co-signed a memorandum (the "Protocol") governing, among other things, the joint prosecution of claims against JPMC.  The Protocol provides that the Committee, through its counsel Quinn Emanuel, will play a significant role in any litigation involving the prosecution of these claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), to develop potential claims against JPMC, conduct the legal and fact research required effectively to plead those claims, draft and defend an adversary complaint, and spearhead discovery in support of those claims.

12

37.     On May 26, 2010, LBHI and the Committee filed an adversary complaint against JPMC (the "JPMC Complaint").  The JPMC Complaint seeks the return of billions of dollars in value to the LBHI estate by invalidating, under both bankruptcy and state law, certain guaranties and security agreements entered into in the weeks before LBHI filed for bankruptcy relief.

38.     During this Fee Period, Quinn Emanuel attorneys devoted substantial time to prosecuting Plaintiffs' claims against JPMC and defending against counterclaims asserted by JPMC.  In particular, Quinn Emanuel attorneys were involved in (i) continuing document discovery in connection with the adversary proceeding with JPMC, (ii) preparing for and taking twenty-three (23) depositions of JPMC and third party witnesses and coordinating and supporting Curtis in taking an additional eleven (11) depositions of former Lehman employees and other third party witnesses, (iii) preparing responsive papers regarding JPMC's motion to dismiss the JPMC Complaint, (iv) preparing for and arguing JPMC's motion to dismiss before the Court, (v) briefing Plaintiffs' motion to dismiss JPMC's amended counterclaims, (vi) working with retained experts to analyze issues central to the litigation with JPMC, and (vii) analyzing and preparing a number of different objections to JPMC's claims against the LBHI estate.

39.     *Continued Document Discovery*.  During this Fee Period, Quinn Emanuel attorneys continued to spend significant amounts of time meeting and conferring with counsel for both JPMC and for third parties that received document subpoenas, working toward agreements on the scope and extent of document discovery.  Quinn Emanuel has taken the lead in third party discovery, including issuing subpoenas, meeting and conferring with subpoena recipients and reviewing the resulting document productions (consisting of millions of pages).

Document production in response to those subpoenas continued during this Fee Period, including from both government entities and third party financial institutions.

40.        Quinn Emanuel continued in the Fee Period to coordinate and direct a group team of contract attorneys billed directly to the estate through Alvarez & Marsal ("A&M"). Quinn Emanuel staff attorneys and associates worked to direct the document review process, including managing the day-to-day workings of the review team and providing substantive guidance as the review team supported Quinn Emanuel attorneys working on fact development and deposition preparation.  During this Fee Period, under the management and guidance of Quinn Emanuel attorneys, the review team completed the primary review of the bulk of these productions – approximately 450,000 total documents containing millions of pages.  The contract attorneys working under the supervision of Quinn Emanuel staff attorneys and associates coded documents on a digital document review platform, isolating important documents for further in-depth review by Quinn Emanuel attorneys.

41.        Quinn Emanuel attorneys also spent significant time in detailed analysis of the key documents identified by the document review team.  Through this analysis, Quinn Emanuel developed document chronologies and factual analyses of key issues in the litigation with JPMC.  Combining these chronologies and analyses with legal research on such key issues, the attorneys developed detailed memoranda analyzing these material documents in the context of the overall legal and factual theories of these cases.  Quinn Emanuel and Curtis have relied extensively on these memoranda (or "modules") to prepare for depositions and assess the substance of Plaintiffs' claims and JPMC's counterclaims.

42.        *Continued Deposition Discovery*.  Quinn Emanuel has taken the lead in deposition discovery with respect to current and former JPMC witnesses and the bulk of third party witnesses and government entity witnesses.  Curtis, on behalf of the estate, has focused on former Lehman employees and the remaining third parties.  During the Fee Period, Quinn Emanuel issued and began service of deposition subpoenas to many third parties, including both government entities and third-party financial institutions, along with engaging in resulting meet and confer discussions with counsel for those parties.  In March, Quinn Emanuel began to negotiate deposition dates for JPMC witnesses.

43.        During this Fee Period, Quinn Emanuel attorneys took the depositions of sixteen (16) JPMC witnesses, including both present and former employees.  These witnesses included, by way of example, (i) one of the lead JPMC negotiators of the guaranties and security agreements at issue in the JPMC litigation, (ii) a key JPMC credit officer involved in decision making around JPMC's extensions of credit to Lehman, and (iii) a senior manager of JPMC's credit trading desk.  Quinn Emanuel attorneys also took the lead for Plaintiffs for the depositions of seven (7) third party witnesses, primarily from third-party financial institutions, including Perella Weinberg and Barclays.  Quinn Emanuel has employed a streamlined deposition-taking process.

44.        To prepare for each deposition, Quinn Emanuel leveraged the remaining contract attorneys from its document review team to identify relevant documents, which were then passed to an associate or staff attorney.  The associate or staff attorney further analyzed the documents to prepare an appropriate set of documents for potential use with the witness at deposition.  The partner or associate taking the deposition used the resulting binder of documents to create the outline or notes for use during the deposition.

45.        In addition to the depositions it led, Quinn Emanuel attorneys worked with Curtis to identify issues and documents central to the eleven (11) depositions of former Lehman employees and third-parties that Curtis took the lead on during the Fee Period.

46.        *Case Development: Experts*.  In addition to the substantial document and deposition discovery undertaken by Quinn Emanuel during the Fee Period, Quinn Emanuel attorneys also spent significant time working with expert witnesses, including identifying and engaging appropriate experts and working on expert analysis of the key issues in the litigation.  In all areas of Plaintiffs' work with experts, Quinn Emanuel attorneys have taken the lead, but worked in concert with Curtis, A&M and the estate to ensure that pre-existing estate and A&M resources are leveraged appropriately to assist and support the work of experts retained specifically for the JPMC adversary proceeding and analysis of JPMC's claims against the LBHI estate.

47.        *Briefing and Argument: JPMC's Motion to Dismiss*.  On August 25, 2010, JPMC filed its motion to dismiss the JPMC Complaint in its entirety.  In response, Plaintiffs amended the JPMC Complaint on September 15, 2010.  JPMC moved to dismiss the amended complaint in its entirety on October 19, 2010, and Plaintiffs opposed the motion on December 15, 2010.

48.        JPMC filed a further reply brief in support of its motion to dismiss Plaintiffs' complaint on February 2, 2011.  That same day, the International Swaps and Derivatives Association, Inc. and the Securities Industry and Financial Markets Association (together, "Amici"), moved for leave to file a brief as amici curaie in support of JPMC's motion to dismiss.

16

49.        After negotiating with Amici and JPMC, the parties stipulated to allow Plaintiffs a brief in response to the filing by Amici.  Quinn Emanuel took the lead in drafting the response to the Amici's brief, filed on March 4, 2011.  The drafting of that response required legal research on the application of the Bankruptcy Code safe harbors and analysis of the practical impacts of the arguments in Plaintiffs' opposition to JPMC's motion to dismiss.

50.        The Court heard oral argument on JPMC's motion to dismiss on May 10, 2011.  To prepare for the hearing, Quinn Emanuel attorneys updated legal research related to the motion and developed notes and outlines to be used during oral argument.  Using the materials prepared for the oral argument, Quinn Emanuel attorneys engaged in multiple meetings and preparation sessions in advance of the argument.  Included in these preparations was a joint preparation session with Curtis, which took the lead on certain issues addressed in the motions.  Quinn Emanuel attorneys then participated in the oral argument hearing, including taking the lead on arguing the Bankruptcy Code claims and against application of the safe harbors.  A chart containing a list of the attorneys and their tasks at the motion to dismiss hearing was provided above, below paragraph 34.

51.        *Briefing: Plaintiffs' Motion to Dismiss JPMC's Counterclaims*.  On February 17, 2011, JPMC filed its amended counterclaims against LBHI in response to Plaintiffs' motion to dismiss JPMC's original counterclaims.  Quinn Emanuel, working with Curtis, took the lead in preparing Plaintiffs' motion to dismiss the amended counterclaims in their entirety.  Quinn Emanuel researched and drafted sections of the brief seeking to dismiss JPMC's counterclaim for fraudulent concealment on several grounds.  First, JPMC failed to plead reasonable reliance because (i) its own pleadings showed that JPMC did not rely on the alleged misrepresentations, (ii) it claims to have relied on statements made outside the contracts governing the triparty repo

transactions at issue, and (iii) it cannot have reasonably relied on LBHI's statements about

Barclays future conduct in light of Barclays' own representations on the topic. Second, JPMC

failed to plead an actionable misrepresentation because (i) LBHI's predictions of Barclays' future

conduct are not actionable, (ii) JPMC failed to allege that anyone at LBHI made any oral

representation known at the time to be false, and (iii) claims that the Asset Purchase Agreement

between LBHI and Barclays contained fraudulent misrepresentations run counter to the Court's

ruling in prior litigation. Third, JPMC's scienter allegations were inadequate because they failed

to include allegations that LBHI intended to commit fraud or engaged in reckless conduct. Quinn

Emanuel also drafted the portions of the brief seeking to dismiss JPMC's counterclaims for

fraudulent omission and fraudulent inducement to lend on the same grounds as the fraudulent

misrepresentation counterclaim, as well as the additional ground that LBHI had no duty to

disclose to JPMC. Additionally, Quinn Emanuel drafted the portions of the brief seeking to

dismiss JPMC's counterclaims for aiding and abetting frauds by LBI and Barclays because JPMC

failed adequately to plead the underlying fraud or LBHI's knowledge or substantial assistance.

Plaintiffs filed the motion to dismiss on April 4, 2011.

52.      *Claims Reconciliation Process: Analysis of JPMC Claims.* JPMC has

filed claims against the estates in excess of $25 billion. In addition to its work on the adversary

proceeding with JPMC, Quinn Emanuel continued during the Fee Period to work with Curtis, the

estate and A&M to research JPMC's asserted claims against the estate as part of the claim review

and reconciliation process. As part of that process, Quinn Emanuel attorneys worked throughout

the Fee Period analyzing JPMC's claims, including in-depth analysis of JPMC's claims related to

(i) its clearance and triparty services to Lehman Brothers Inc. ("LBI" and the claims, the

"Clearance Claims"), (ii) derivatives contracts between JPMC and its subsidiaries, on the one

hand, and LBHI and its subsidiaries, on the other (the "<u>Derivatives Claims</u>"), and (iii) losses by investment funds managed by JPMC and/or its subsidiaries (the "<u>Claimant Funds</u>") related to the Lehman bankruptcy (the "<u>Asset Management Claims</u>").

53.      Quinn Emanuel attorneys worked during the Fee Period on legal research related to developing arguments to support objections to all of JPMC's claims against the estates.  Quinn Emanuel attorneys also worked with the experts retained by Plaintiffs to develop and define theories for objecting to the claims.  Quinn Emanuel attorneys took the lead in negotiating with counsel for the claimant funds regarding voluntary discovery related to the claimant funds and the Asset Management Claims.

54.      *Claims Objection Process: WAMU Objection.*  During this Fee Period, Quinn Emanuel attorneys took the lead in drafting an objection to JPMC's claims against the LBHI estate related to derivatives contracts between Lehman Brothers Special Finance ("<u>LBSF</u>") and Washington Mutual Bank, FA ("<u>WaMu</u>" and the objection the "<u>WaMu Objection</u>").  As part of that objection, Quinn Emanuel attorneys engaged in extensive legal research on the ability of a claimant to apply collateral pledged pursuant to a pre-petition security agreement to claims acquired by the claimant post-petition.  Plaintiffs filed the WaMu objection on April 15, 2011.

55.      After the WaMu Objection was filed, Plaintiffs engaged in negotiations with JPMC leading to an agreement through which JPMC did not oppose the WaMu Objection, which resulted in an $80.3 million reduction in claims against the estate.  The Court signed its order to this effect on June 3, 2011.

56.      *Misc. Case Issues*.  Quinn Emanuel attorneys spent considerable time negotiating with counsel for JPMC on a wide variety of litigation- related topics, ranging from discovery to scheduling issues.  For example, JPMC and Plaintiffs negotiated an extension to the schedule for the JPMC adversary proceeding that was filed on March 2, 2011 and signed by the Court on March 22, 2011.  Quinn Emanuel attorneys also spent considerable time coordinating with Curtis, A&M and the estate on all issues in the litigation, from strategy to logistics, to avoid duplication of efforts, to ensure appropriate distribution of labor and to ensure the effective and efficient use of estate resources.

57.      Barclays' Transaction Litigation.  On September 15, 2009 Quinn Emanuel filed the Rule 60(b) motion on the Committee's behalf seeking relief from the sale order dated September 20, 2008 (the "Sale Order") approving the sale of assets related to Lehman Brothers' North American broker dealer business to Barclays (the "Rule 60(b) Motion") arguing, among other things, that billions in assets were transferred to Barclays without Court approval. The other Movants (i.e., LBHI and the SIPA Trustee) filed the Rule 60(b) Motions on the same day seeking similar relief.

58.      After extensive discovery, the trial started on April 9, 2010 and continued (non-consecutively) through October 21, 2010.  Ultimately, the Movants and Barclays submitted post-trial briefs and findings of fact/conclusions of law on November 22, 2010.  On February 22, 2011, the Bankruptcy Court issued its memorandum opinion finding that Rule 60(b) relief was not appropriate.

59.      During this Fee Period, Quinn Emanuel attorneys spent extensive time reviewing the Court's opinion and analyzing potential next steps with respect to the same, including examinations of the impact of the decision on other estate litigations and possible

additional litigation.  Quinn Emanuel's analysis of the opinion included drafting a memorandum to the Committee discussing the opinion's implications and recommendations.  Moreover, the Court requested a status conference with the parties, which Quinn Emanuel attorneys attended on behalf of the Committee.  Also, in this period, Quinn Emanuel attorneys negotiated and drafted proposed orders with respect to the Court's opinion.  Coordination was required among the Movants in the drafting of such orders.

       60.              <u>Bank of America Litigation</u>.  Quinn Emanuel attorneys actively participated on the Committee's behalf in the litigation between the estates and BofA.  On January 29, 2010, February 1, 2010 and February 2, 2010, an evidentiary hearing was conducted regarding BofA's purported right to offset $509 million maintained in an LBHI bank account against amounts purportedly owed by LBHI and LBSF under certain LBSF derivative contracts.  Quinn Emanuel represented the Committee, as intervenor, in connection with the BofA litigation.  At the conclusion of the evidentiary hearing, the Court directed the parties to submit post-trial briefing.

       61.              On November 16, 2010, the Bankruptcy Court issued its decision (the "<u>BofA Decision</u>") granting motions for summary judgment filed by LBHI and LBSF (and joined by the Committee) against BofA.  The Court directed BofA to return $500 million plus interest to the Debtors, holding that the account at issue "was intended to function and in practice did function as a segregated account established for the special limited purpose of securing any indebtedness that might arise on account of intra-day overdrafts."  As such, BofA's seizure of the collateral violated the automatic stay imposed by section 362 of the Bankruptcy Code, and BofA was not entitled to setoff the $500 million.

62.        On May 20, 2011, the Bankruptcy Court entered final judgment against BofA on all counts of the Complaint, and in favor of LBHI on its counterclaim asserted in the adversary proceeding, in the amount of $501,800,000.00 (the "Funds"), plus simple interest on the Funds calculated at the rate of 9% per annum from November 10, 2008 through December 3, 2010 (the "Final Judgment").  Subject to BofA's appellate rights, BofA agreed to reimburse the Debtors' and the Committee's attorneys' fees incurred in connection with BofA's stay violation up to $1.25 million dollars.

63.        Quinn Emanuel attorneys spent time during this Fee Period negotiating, drafting, and revising the settlement agreement with respect to the attorneys' fees and the supersedeas bond related to the Final Judgment.  The parties also disputed the appropriate interest calculations for the setoff and the scope of the Court's November decision.  After the Court issued the Final Judgment, BofA filed a notice of appeal on May 23, 2011.  BofA has filed its statement of issues and the parties have filed the designation of the record on appeal.  During this Fee Period, Quinn Emanuel attorneys began reviewing BofA's appeal and researching potential responses to BofA's arguments on behalf of the Committee.

64.        Citibank.  During this Fee Period, Quinn Emanuel attorneys continued working with the estates to analyze possible claims and causes of action among Citi and the estates, including Citi's derivatives claims and other claims to estate assets.  In connection with these discussions, Quinn Emanuel continued to work with the estates to review key documents, and conduct research.  Of note, Quinn Emanuel attorneys prepared for and participated in various meetings regarding claims against Citi, setoff, and next steps.  Quinn Emanuel, on behalf of the Committee, and Citi engaged in negotiations to extend the tolling agreement to June 2011.

65.        <u>Investigation of Claims and Assessment of Pleadings.</u>  During the Fee

Period, Quinn Emanuel attorneys spent a significant amount of time conducting investigations

regarding certain parties to determine whether the estates would need to commence actions or

otherwise take steps to preserve the estates' rights against these parties.  During this period, Quinn

Emanuel attorneys worked closely with the estates' professionals in the analysis of potential

claims against such entities.  The investigations entailed: (i) in-depth research, (ii) multiple

conferences, (iii) document review, (iv) drafting memoranda of law regarding potential claims,

(v) reviewing filed proofs of claim, and (vi) the drafting of pleadings relating to these institutions.

Due to the confidential nature of these investigations, this fee application only discusses this

investigation in general terms.

66.        Quinn Emanuel attorneys also spent time conducting in-depth

analysis of pleadings filed during this Fee Period.  Quinn Emanuel's analysis entailed drafting,

researching and writing memoranda to the Committee regarding such pleadings.  Notably, during

this Fee Period, Quinn Emanuel spent time reviewing (i) LBI's complaint against Citi, (ii) debtor-

in-possession financing and consideration motion, (iii) the settlement between LBI and JPMC,

and (iv) LCPI's settlement with Sumitomo.

67.        *Settlement Between LBI and JPMC.*  On April 20, 2011, James W.

Giddens, as trustee (the "<u>Trustee</u>") for the Securities Investor Protection Act ("<u>SIPA</u>") liquidation

of LBI and JPMC entered into a settlement agreement (the "<u>Settlement</u>") involving certain

disputes between the parties.  On April 21, 2011, the Trustee filed a motion (the "<u>Settlement

Motion</u>") pursuant to Rule 9019(a) of the Bankruptcy Rules seeking approval of the Settlement.

68.     Since the filing of the Settlement Motion, Quinn Emanuel has worked closely with the Debtors' counsel, Weil Gosthal and Curtis, Milbank Tweed and FTI to obtain additional information with respect to the Settlement from the Trustee.

69.     The parties met on May 12, 2011, to address the questions and concerns that the LBHI and Committee advisors had regarding the Settlement.  As a result of the meeting, the Court's order approving the Settlement between the Trustee and JPMC established that the Settlement would not affect the rights, claims, defenses or standing asserted by LBHI or the Committee.

**D.     Derivatives  (Hours: 612.10, Fees: $423,031.00)**

70.     During the Fee Period, Quinn Emanuel attorneys devoted time to reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The Debtors have been in the process of reconciling and winding down their considerable derivatives trading activities.  Quinn Emanuel attorneys devoted time to diligencing certain of these transactions involving various counterparties, including large financial institutions, to ensure that the value for unsecured creditors has been maximized.

71.     The Debtors have challenged whether counterparties had the right to unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11 filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated transactions, and the value of such transactions to the estates, the outcome of such challenges can have substantial effect on the Chapter 11 Cases.  On behalf of the Committee, and working with the Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn Emanuel attorneys have devoted substantial time to examining issues, researching legal issues, drafting memoranda, attending mediations, settlement meetings, and hearings, and providing

updates to the Committee and its derivatives sub-committee concerning such challenges.  Among

the litigation matters handled by Quinn Emanuel are: the Libra Adversary Proceeding (Adv. Pro.

No. 09-01177) and disputes with parties involved in the Libra and MKP Vela transactions; the

Ballyrock Adversary Proceeding (Adv. Pro. No. 09-01032); and aspects of the so-called Bank of

America "flip" Adversary Proceeding (Adv. Pro. No. 10-03547).

72.        <u>Big Bank Settlement Framework</u>.  During this Fee Period, Quinn

Emanuel attorneys devoted time to reviewing and analyzing a proposed framework for resolving

disputes regarding over $20 billion in derivatives claims filed by 13 financial institutions.  This

"Big Bank" settlement process involved the review of a complex manual outlining LBSF's

proposed calculation of a settlement framework as well as attending multiple meetings with LBSF

and the various derivatives counterparties affected by the framework.

73.        <u>Derivatives ADR Process</u>.  During this Fee Period, Quinn Emanuel

attorneys also represented the Committee in a number of mediation sessions arising through the

Court-ordered derivatives alternative dispute resolution process.  Specifically, Quinn Emanuel

represented the Committee in five mediation sessions and one additional matter that will soon be

in mediation (the counterparties to which are confidential pursuant to the order commencing the

ADR process).  Before each session, Quinn Emanuel attorneys would review the confidential

mediation statements submitted by the estates and the counterparty, review all the underlying

transaction documents and any related correspondence, and prepare a detailed memorandum to

the Committee discussing the transaction and recommending an appropriate settlement floor.

Quinn Emanuel attorneys would also liaise with representatives for the estates in advance of each

mediation session.

**E.    Nonworking Travel  (Hours: 199.90, Fees: $119,570.50)**

74.        Time billed under this category was for the necessary time that Quinn
Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings,
depositions and court hearings.  Given the compressed time and magnitude of the litigation in
which Quinn Emanuel is involved, it was necessary for attorneys outside of Quinn Emanuel's
New York office to travel to New York to participate in meetings, hearings, and settlement
negotiations.  As discussed above, the attendance of these attorneys was necessary to the effective
and efficient representation of the Committee.  Thus, time billed during this Fee Period, included
cross-country air travel relating to this litigation.[4]  Quinn Emanuel attorneys also spent time
traveling locally to Court, depositions and in-person meetings with the Debtors and other third
parties.

**F.    Quinn Emanuel Fee Applications (Hours: 562.00, Fees: $209,178.00)**

75.        Pursuant to the Bankruptcy Code, Local Rules, and the Compensation
Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements")
for approval and allowance of compensation for actual, reasonable and necessary professional
services rendered, and reimbursement of expenses for actual reasonable and necessary expenses
incurred during those fee periods.  Each Fee Statement contained extensive records of the work
performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared the Seventh Interim Fee
Application during this Fee Period.  Preparing the Seventh Interim Fee Application involved
consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and preparing
a detailed narrative in the pleading describing these efforts.  Extensive time was also spent
organizing the time entries and preparing the charts and the summary descriptions of the work

---

[4]        The airfare incurred was not billed at business class fares.

done throughout the Seventh Interim Fee Application. Lastly, Quinn Emanuel attorneys spent

time reviewing and revising the overall litigation budget and amending Quinn Emanuel's budget

accordingly.

## VII.    ALLOWANCE OF COMPENSATION

76.        The factors to be considered in awarding attorneys fees as enumerated

in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

1991). Indeed, a majority of the First Colonial factors are now codified in section 330(a)(3). See,

e.g., 3 L. King, et al., Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

77.        Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent

part, that the Court may award to a professional person, "reasonable compensation for actual,

necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature of
> the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

78.        The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases.  In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

### A.        The Time and Labor Required

79.        The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.  During the compensation period, approximately 12,083.70 recorded hours were expended by Quinn Emanuel' s partners, associates, and legal assistants in providing the requested professional services.  Quinn Emanuel's hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly charges its hourly clients.

B.    **The Necessity of The Services and Benefit to the Estate**

80.        These Chapter 11 Cases are generally regarded as among the most complex and active bankruptcy cases ever filed.  Indeed, many of the complex issues regarding the Debtors' financial contracts are issues of first impression, with far reaching ramifications.  As detailed above, the services Quinn Emanuel provided to the Committee were necessary to preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the Debtors' unsecured creditors.  Quinn Emanuel's services have furthered and will continue to further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will continue to maximize estate value.

81.        As discussed above, given the significance and complexity of the JPMC litigation, it was necessary for multiple attorneys to participate in accelerated discovery and attend the motion to dismiss argument.  During this Fee Period, the attorneys on the litigation team were tasked with crucial tasks such as (i) the formulation of trial strategy, (ii) motion to dismiss argument, (iii) knowledge of the documentary evidence, and (iv) spot research assignments, and (v) depositions.  As such, the presence of multiple attorneys at the JPMC motion to dismiss hearing was necessary and proper in order for Quinn Emanuel to properly represent the Committee.

82.        Quinn Emanuel nonetheless made every effort to avoid duplication. On any matter where Quinn Emanuel attorneys work with estate counsel, Quinn Emanuel aims to coordinate efforts and maintain efficiency.

C.    **The Novelty and Difficulty of Issues Presented in the Cases**

83.    Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered. In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

D.    **The Experience, Reputation and Ability of the Attorneys**

84.    Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations. Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas. The skill and competency of the Quinn Emanuel attorneys who have represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

VIII.    **DISBURSEMENTS**

85.    Quinn Emanuel has incurred a total of $194,469.22 in expenses in connection with representing the Committee during the Eighth Interim Compensation Period. Quinn Emanuel records all expenses incurred in connection with the performance of professional services. A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

86.    In connection with the reimbursement of expenses, Quinn Emanuel's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other

30

charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research, and transcription costs.

87.        Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

88.        In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

89.        Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications.  Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

90.        Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Eighth Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## IX.    NOTICE

91.        Notice of this Application, as set forth in the Interim Compensation Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors and (e) the chairperson of the fee committee.

## X.    CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fee Period in the amount of $5,557,558.50 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $194,469.22, for a total award of $5,752,027.72; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Eighth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  August 15, 2011
          New York, New York

                    QUINN EMANUEL URQUHART
                    & SULLIVAN, LLP

                    By:  _/s James C. Tecce_____
                          James C. Tecce

                    Susheel Kirpalani (SK8926)
                    James C. Tecce (JT5910)
                    Robert K. Dakis (RD0626)
                    51 Madison Avenue, 22nd Floor
                    New York, New York 10010
                    Telephone No.:  (212) 849-7000
                    Facsimile No.:  (212) 849-7100

                    *Special Counsel to Official Committee Of
                    Unsecured Creditors Of Lehman Brothers
                    Holdings Inc., et al.*