Hearing Date and Time: August 17, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: August 10, 2011 at 4:00 p.m. (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                              :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
:
Debtors.                          :    (Jointly Administered)
:
:
---------------------------------------------------------------x

**DECLARATION OF ASHISH GUPTA IN SUPPORT OF**
**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**AND LEHMAN COMMERCIAL PAPER INC. PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY**
**TO SELL INTEREST IN ROSSLYN SYNDICATION PARTNERS JV LP**

Pursuant to 28 U.S.C. § 1746, I, Ashish Gupta, declare:

1. I submit this declaration in support of the *Motion of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for Authority to Sell Interest in Rosslyn Syndication Partners JV LP* [ECF No. 18794] (the "Motion")[1] filed on July 26, 2011 in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI" and, together with LBHI and their debtor affiliates, the "Debtors" and, collectively with their non-Debtor affiliates, "Lehman").

2. I am currently a Senior Vice President at LAMCO LLC and am responsible for the day-to-day management and oversight of Lehman's commercial office investments, including management and oversight of the real estate, real estate finance and related activities that are the subject of the Motion and this Declaration. Prior to working at LAMCO LLC, I worked in Lehman Brothers' Real Estate Group where I was employed since

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

US_ACTIVE:\43781210\03\58399.0008

2004. While at Lehman, I specialized in real estate acquisitions and structured and closed several complex balance sheet equity investments in single-asset, portfolio and take-private transactions and assisted in the syndication of debt and equity interests to institutional, sovereign and high net worth investors. I received a bachelor's degree from the Massachusetts Institute of Technology.

3. In my current capacity, I have been actively involved in, and have overseen Lehman employees who have been actively involved in, finalizing the terms of the transactions described in the Motion and this Declaration.

## The Rosslyn Properties

4. Rosslyn LB Syndication Partner LLC, an indirect, non-Debtor legal or beneficial subsidiary of LBHI, legally or beneficially owns a 78.5% limited partnership interest in the Joint Venture. Affiliates of Monday Properties ("Monday") and affiliates of Lehman Brothers Real Estate Partners II ("LBREP II" and, collectively with Monday, the "JV Partners") each hold approximately 10.8% of the Joint Venture. LBHI continues to retain a 20% limited partner ownership stake in LBREP II.

5. In or around June 2010, LBHI, after obtaining Court approval, caused the transfer of approximately $206 million to fund a capital call and to capitalize a working capital account with respect to the Joint Venture. Doing so enabled the Joint Venture to retain relatively well priced and less structured financing, which increased the marketability of the Joint Venture. This was done, in part, so that the Joint Venture could be sold in a more robust real estate market than existed at that time.

6. Currently, Lehman holds $9,000,000 of the Credit Facility (excluding accrued interest and fees), and the approximately $18,000,000 Partner Loan (excluding accrued interest and fees) in addition to the LP Interest.

## 2011 Sale Process

7. Due to a strong recovery in the real estate investment market, the Debtors believe that a sale of the LP Interest at this time will enable the Debtors to receive significant value on account of its interest in the Joint Venture. The Debtors have extensively marketed the LP Interest and have received substantial interest from a number of potential purchasers. Specifically, on May 6, 2011, the Joint Venture retained Eastdil to assist with the marketing of the LP Interest. Shortly thereafter, on May 11, 2011, Eastdil sent an e-teaser to more than 150 distinct institutions, each with differing risk appetite and return objectives, and approximately two weeks later sent a full offering memorandum to the approximately 25 of these institutions that had signed confidentiality agreements. Thereafter, certain of the institutions that had received the confidential memorandum toured the Rosslyn Portfolio.

8. On June 17, 2011, Eastdil sent a "call for offers" to the approximately 150 institutions and received bids from a number of groups of institutions. Following the receipt of these bids, Eastdil continued to market the Rosslyn Portfolio and engaged in negotiations with the bidders that emerged as the highest and best bidders for the LP Interest. On July 5, 2011 Eastdil sent a "best and final call for offers" to those groups which had submitted the best offer for the assets.

9. The Debtors, after significant internal discussions and discussions with the Creditors' Committee, believe that the sale process that has been conducted has been fulsome and that any further marketing would be duplicative of the marketing that has already been

performed and would not result in any increased value. Further, the Debtors have been informed by potential purchasers that any sale of the LP Interest will require a modification of the terms of the Joint Venture, and, therefore the cooperation and consent of the JV Partners. Because a sale of the LP Interest will require the consent and cooperation of the JV Partners and because the Debtors have thoroughly marketed the LP Interest, I believe that a private sale of the LP Interest is appropriate and necessary under the circumstances.

10. Through the marketing process, Lehman and their advisors identified a joint venture in which Goldman Sachs & Co. is the general partner (the "Potential Purchaser") as the potential purchaser of the LP Interest that could provide Lehman with the best value in exchange for the LP Interest. Upon consummation, the transaction will result in proceeds to Lehman of not less than $385 million (subject to a working capital adjustment), which is a substantial return on account of Lehman's 2010 investment in the Joint Venture. Furthermore, the transaction will result in payment of the outstanding principal amount and accrued interest through the closing date on the Partner Loan.

11. The Debtors believe that a sale of the LP Interest to the Potential Purchaser at this time is in the best interests of the Debtors and their estates. The commercial real estate and capital markets have now significantly recovered and the Debtors do not believe that retaining their interest in the Joint Venture would provide their estates with sufficient increased value on a risk adjusted basis to justify continuing to hold the asset.

### The LCPI Guarantee

12. The provision of the LCPI Guarantee is in the best interest of the Debtors' estates and is reasonable in light of the transaction. LCPI's liability as part of the LCPI Guarantee is capped at $15 million unless a breach of the representations is the result of actual

fraud committed by the seller or LCPI (without any imputation of knowledge or actions by the JV Partners in the Joint Venture), in which case liability is capped at the amount of the Purchase Price. In other words, in no event can LCPI's liability as a result of the LCPI Guarantee be larger than the amount of the Purchase Price of the transaction and therefore, any payment made by LCPI on account of the LCPI Guarantee could be covered by the funds received under the transaction. Additionally, Lehman does not believe that execution of the LCPI Guarantee exposes LCPI to any material risk. As such, the provision of the LCPI Guarantee, which is necessary to consummate the sale to the Potential Purchaser, is in the Debtors' business judgment.

## Conclusion

13. Entry into the PSA and consummation of the sale of the LP Interest to the Potential Purchaser (including the provision of the LCPI Guarantee) is in the best interest of the Debtors and there estates. Lehman, through Eastdil, extensively marketed the LP Interest and engaged in good-faith and arms'-length negotiations with a number of interested parties. Through this extended process, Lehman identified the Potential Purchaser as the party that provided the most value to the Debtors and the least execution risk. The Debtors do not believe that any further marketing of the LP Interest will result in any additional value to the estates. Therefore, authorizing their subsidiary to enter into the PSA and consummate the transactions contemplated thereby is in the Debtors' business judgment.

14. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 16th day of August, 2011.

_____
Ashish Gupta