Michael J. Reilly
Joshua Dorchak
Erin K. Mautner
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York  10022
(212) 705-7000

*Attorneys for Wells Fargo Bank Northwest, N.A,*
*as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**OBJECTION OF WELLS FARGO BANK NORTHWEST, N.A.,**
**AS INDENTURE TRUSTEE, TO DEBTORS' AMENDED MOTION FOR**
**(I) APPROVAL OF THE DISCLOSURE STATEMENT AND THE FORM AND**
**MANNER OF NOTICE OF THE DISCLOSURE STATEMENT HEARING,**
**(II) ESTABLISHING SOLITICATION AND VOTING PROCEDURES,**
**(III) SCHEDULING A CONFIRMATION HEARING, AND**
**(IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR**
**CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN**

Wells Fargo Bank Northwest, N.A., solely in its capacity as Indenture Trustee for the holders of certain notes issued by OMX Timber Finance II, LLC (in such capacity, the "Trustee"), by and through its counsel, Bingham McCutchen LLP, hereby files this objection to the Motion, dated June 29, 2011 (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and its affiliate debtors in the above-referenced chapter 11 cases (the "Debtors") for an order (i) approving the disclosure statement and notice of the disclosure statement; (ii) establishing solicitation and voting procedures; (iii) scheduling a confirmation hearing; and (iv) establishing notice and objection procedures for confirmation of the Debtors' Second Amended Joint Chapter

A/74456668.6

11 Plan, dated June 29, 2011 (the "Plan"). In support of this objection, Wells Fargo respectfully states as follows.[1]

## PRELIMINARY STATEMENT

1. The Trustee duly and timely filed a proof of claim against LBHI (claim no. 24151) based on an LBHI guarantee (the "Claim"). The Claim is uncommon, by comparison with virtually all of the other Guarantee Claims filed against LBHI in these cases, in two significant respects. First, the Claim is based on LBHI's guarantee of obligations of an entity that is <u>not</u> a member of the Lehman corporate family. Second, the guarantee underlying the Claim was separately and specifically paid for by a "Guarantee Fee" to LBHI of approximately $1.2 million per year.

2. Although the Claim is uncommon, it may not be unique: other claimants may have filed claims based on LBHI's guarantee of non-Lehman entities' obligations (collectively, "Non-Lehman Guarantee Claims"). In any event, the Disclosure Statement does not mention the Claim, and does not discuss any Non-Lehman Guarantee Claims. As a result, the Trustee cannot determine from the Disclosure Statement how the Claim would be treated under the Plan.

3. The Disclosure Statement explains that the "Plan includes a compromise of substantive consolidation and related issues," which results in, among other things, an automatic reallocation of 20% of the recovery on claims in the two classes of Third-Party Guarantee Claims against LBHI to two classes of unsecured claims against LBHI (the "Subcon Reallocation").

4. The Subcon Reallocation cannot properly impair the Claim -- or any Non-Lehman Guarantee Claims -- because such claims, unlike claims based on LBHI's guarantee of its affiliates' obligations, carry absolutely no risk of being impaired in an actual substantive

---

[1] The Debtors extended the Trustee's deadline to file this objection to August 16, 2011 at 5:00 p.m.

- 2 -

A/74456668.6

consolidation. On the contrary: the Claim would not only survive subcon; it would actually <u>benefit</u> from subcon (like the general unsecured claims that receive the Subcon Reallocation under the Plan), by the elimination of intercompany claims and claims based on LBHI's guarantees of its affiliates' obligations.

5. Because the Claim would benefit from an actual subcon, and because the Claim enjoys the benefits of Class 10B and Class 10C subordination, the Claim should be in a class that both is senior and is benefitted by (rather than impaired by) the Subcon Reallocation. The Trustee can conclude from the Disclosure Statement that the Debtors do not appreciate the nature of the Claim. But the Trustee cannot conclude from the Disclosure Statement how the Debtors propose to classify the Claim.

6. Unless and until the Disclosure Statement describes the Debtors' intended classification of Non-Lehman Guarantee Claims under the Plan <u>and</u> the grounds for such classification, the Trustee cannot make an informed judgment about the Plan.

## BACKGROUND

7. The Trustee provides below a simplified description of the transaction that gave rise to the Claim.

8. On October 29, 2004, OfficeMax, Inc. sold certain timberlands assets to entities owned by Boise Land and Timber Holdings Corp. As consideration for the sale, the buyers provided OfficeMax, Inc. with $15 million in cash and three installment notes in the aggregate amount of $1.635 billon, which were issued by two Boise Land and Timber subsidiaries. One of the installment notes, in the face amount of $817.5 million (the "Installment Note"), was issued by Boise Land & Timber II, LLC (the "Installment Note Issuer").

A/74456668.6

9. In a separate but related transaction, the Installment Note Issuer paid $817.5 million to LBHI, in exchange for a promissory note (the "Collateral Note"), on which LBHI was obligated to make periodic payments that generally matched the periodic payments due from the Installment Note Issuer on the Installment Note.

10. In another separate but related transaction, LBHI agreed to absolutely guarantee the Installment Note Issuer's obligations under the Installment Note pursuant to a certain Guaranty (the "Guaranty"). In exchange for the Guaranty, the Installment Note Issuer paid LBHI an annual "Guaranty Fee" of approximately $1.2 million. The Installment Note Issuer (a Boise Cascade entity) is not an affiliate of LBHI.

11. The Guaranty on which the Claim is based was not a supplement to a trade engaged in by a subsidiary of LBHI, but was, rather, an independent, compensated suretyship. On information and belief, no LBHI guarantee of any Lehman affiliate (domestic or foreign) carried an annual fee.

12. OfficeMax Inc. later assigned its rights under the Installment Note and the Guaranty to a wholly owned special purpose entity, OMX Timber Finance II, LLC ("OMX"). In December 2004, OMX issued indenture notes in an aggregate amount of $735 million (the "Indenture Notes") to certain investors (the "Noteholders"), with the Trustee serving as Indenture Trustee, in exchange for OMX's rights under the Installment Note and the Guaranty.

13. On September 15, 2008, LBHI commenced the above-captioned case. On and after October 29, 2008, LBHI failed to make payments due under the Collateral Note, and the Installment Note Issuer failed to make payments due under the Installment Note.[2] Accordingly,

---

[2] On information and belief, the Installment Note Issuer filed a claim (claim no. 3813) against LBHI based on its outstanding obligations under the Collateral Note.

- 4 -

A/74456668.6

the Trustee notified LBHI of its obligation to honor the Guaranty, and later duly and timely filed the Claim, based on the Guaranty.[3]

14. On June 29, 2011 (revised on July 1, 2011), the Debtors filed the Plan and accompanying Disclosure Statement. The Disclosure Statement describes, among other things, certain classes of unsecured claims and guarantee claims against LBHI, and the Subcon Reallocation described above. The Disclosure Statement makes no mention of the Claim or of any Non-Lehman Guarantee Claim.

## ARGUMENT

15. Section 1125(b) of the Bankruptcy Code provides that the Court may approve a disclosure statement only if it contains "adequate information." 11 U.S.C. § 1125(b). Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1); *see, e.g.*, *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). For this purpose, the debtor must engage in full and fair disclosure, providing creditors with detailed information. *E.g., In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600-01 (Bankr. S.D.N.Y. 2006).

16. The Disclosure Statement does not provide the Trustee with full and fair disclosure or detailed information that would enable the Trustee to determine how the Debtors intend to classify or otherwise treat the Claim. *See id.* The Disclosure Statement does not

---

[3] On information and belief, OMX filed a claim against LBHI (claim no. 1439), later amended (claim no. 17120), based on the Guaranty, of which the Trustee is the beneficiary. The Trustee does not seek a double recovery based on OMX's claim and the Claim.

- 5 -

mention any Non-Lehman Guarantee Claim. The Debtors apparently did not substantively account for any Guarantee Claim against LBHI being based on LBHI's guarantee of obligations of a Non-Lehman entity.

17. The Disclosure Statement adopts a definition of "Guarantee Claim" that encompasses LBHI's guarantees of "any entity." The Disclosure Statement describes two classes of Third Party Guarantee Claims against LBHI: namely, LBHI Class 5, Senior Third-Party Guarantee Claims, and LBHI Class 9A, Third-Party Guarantee Claims. All of these claims are subject to the Subcon Reallocation. But the Subcon Reallocation cannot properly be applied to the Claim (or any Non-Lehman Guarantee Claim), because the primary obligor is "an[ ] entity" that could never be substantively consolidated with LBHI. Where there is no subcon risk, self-evidently, there should be no subcon "compromise."

18. If the Debtors mean to include Non-Lehman Guarantee Claims, which would benefit from an actual subcon, in a "Guarantee Claim" class that suffers the Subcon Reallocation, then the Disclosure Statement is, at best, unfocused, and, at worst, misleading. In either case, however, clarification is required by section 1125 of the Bankruptcy Code.

19. The Trustee cannot make an informed judgment about the Plan unless the Debtors clarify the Claim's classification and, if applicable, articulate why such a classification -- or, more to the point, the Subcon Reallocation -- could possibly be appropriate for the Claim.

20. The Trustee believes that the Claim would be best classified under the current Plan in LBHI Class 3 -- because it benefits from Class 10B and Class 10C subordination, and is not subject to subcon risk – and the Trustee reserves its right to object to any classification of the Claim in due course. The Disclosure Statement, however, does not provide the Trustee with adequate information concerning how the Debtors currently intend to treat the Claim.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court decline to approve the Disclosure Statement unless and until the Debtors both clarify and justify their intended classification and treatment of the Claim.

Dated: August 16, 2011
New York, New York

**BINGHAM MCCUTCHEN LLP**

By: /s/ Michael J. Reilly
Michael J. Reilly
michael.reilly@bingham.com
Joshua Dorchak
joshua.dorchak@bingham.com
Erin K. Mautner
erin.mautner@bingham.com
399 Park Avenue
New York, New York 10022
212.705.7000

*Attorneys for Wells Fargo Bank Northwest, N.A., as Indenture Trustee*