WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                              :        Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :        08-13555 (JMP)
                                                   :
                            Debtors.               :        (Jointly Administered)
-------------------------------------------------------------------x
```

**OBJECTION TO CAISSE DES DÉPÔTS ET CONSIGNATIONS'
MOTION FOR ENTRY OF AN ORDER TO PERMIT A LATE-FILED CLAIM
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)(1)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

          Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), respectfully submit this response in opposition (the "Objection") to the motion, dated

June 23, 2011 (the "Motion"), of Caisse des Dépôts et Consignations ("CDC") for an order

permitting CDC to file a late proof of claim pursuant to Bankruptcy Rule 9006(b)(1), and

respectfully represent as follows:

<h2 style="text-align:center">PRELIMINARY STATEMENT[1]</h2>

          1.     CDC asserts that the reason it is entitled to file a late claim against the

Debtors is that it was not aware of the Bar Date.   This argument must fail because (i) CDC

---

[1] Capitalized terms used but not defined in this section shall have the meanings set forth below in this Objection.

received actual notice of the Bar Date at more than one location and (ii) CDC was put on

constructive notice of the Bar Date by the publication of notice of the Bar Date in various

newspapers.

2.      In accordance with the Bar Date Order, the Debtors provided actual notice

of the deadline to file proofs of claim (the "Bar Date Notice") against the Debtors to, among

others, all parties known to the Debtors as having potential claims against the Debtors' estates,

including CDC, at least 71 days prior to the Bar Date.   Indeed, the Bar Date Notice was

actually served on CDC at the **three** different addresses set forth for CDC in the Debtors' books

and records:   (i) Caisse des Dépôts et Consignations, 56 rue de Lille, 75356 Paris, Cedex 07,

France (the "Scheduled Address")$^{2}$; (ii) Caisse des Dépôts et Consignations, Attn: CDC Capital,

9 West 57th Street, 36th Floor, New York, New York, 10019 (the "New York Address"); and

(iii) Caisse des Dépôts et Consignations, 137 rue de Luniversite, Paris 75007, France (the

"Other Paris Address").   The relevant pages of the affidavit of service demonstrating that CDC

was served with the Bar Date Notice at such addresses are annexed hereto as Exhibit A.

3.      CDC concedes that the Bar Date Notice mailed to the Scheduled Address

was actually delivered to and received by the mail department at such location.   However,

because the Scheduled Address did not include specific personnel within the CDC, the mail

department refused delivery and returned such Notice to sender.   As a result, CDC claims that it

did not receive notice of the Bar Date and did not become aware of the Bar Date until nearly

eight months after it had passed.   Notwithstanding CDC's refusal to accept delivery of the Bar

Date Notice at the Scheduled Address, CDC received the Bar Date Notice by mail at the New

---

[2] LBSF included an executory contract with CDC on Schedule G of its amended schedules of assets and liabilities
(the "Schedules"), which contract was described in the Schedules as a "Derivatives Master Account."   The
Schedules set forth the Scheduled Address for CDC with respect to such executory contract.

York Address and the Other Paris Address.   *See* Affidavit of Herb Baer (the "<u>Baer Affidavit</u>"),

attached hereto as <u>Exhibit B</u>.   Moreover, CDC was on constructive notice of the Bar Date as the

Bar Date Notice was published in three international newspapers, each of which is circulated

throughout France.

4.   CDC's failure to timely file the Claim was entirely within its own control

and falls far short of the level of "excusable" neglect required by Rule 9006(b) of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and recognized by this Court and

courts in the Second Circuit.   Moreover, CDC's assertions that it has virtually no familiarity

with the bankruptcy laws and procedures of the United States or that few employees speak

English is not persuasive.   CDC is a sophisticated party that engaged in complex derivatives

trading with LBSF pursuant to an ISDA Master Agreement written in English and governed by

the laws of the State of New York.   Accordingly, the Motion should be denied.

## BACKGROUND

### Chapter 11 Case Background

5.   Commencing on September 15, 2008 (the "<u>Commencement Date</u>") and

periodically thereafter, as applicable, Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and certain of

its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>").   LBSF commenced a voluntary case under

chapter 11 of the Bankruptcy Code on October 3, 2010.   The Debtors' chapter 11 cases have

been consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).   The Debtors are authorized to operate their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

6.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

7.      On July 1, 2011, the Debtors filed their second amended joint chapter 11 plan (the "Plan") pursuant to section 1121 of the Bankruptcy Code [ECF No. 18204] and related disclosure statement (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code [ECF No. 18205].   A hearing for the approval of the disclosure statement is scheduled for August 30, 2011.

**The Bar Date**

8.      By order dated July 2, 2009 (the "Bar Date Order"), the Court established (a) September 22, 2009 at 5:00 p.m. as the deadline (the "Bar Date") for filing proofs of claim against any of the Debtors in these chapter 11 cases and (b) October 22, 2009 at 5:00 p.m. as the deadline (the "Questionnaire Deadline") for the filing of Derivative Questionnaires and Guarantee Questionnaires against the Debtors in these chapter 11 cases.   (Bar Date Order at 2, 7-8.)   The Bar Date Order expressly provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order . . . including filling out the Derivative Questionnaire or the Guarantee Questionnaire . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto) . . . ."   (*Id.*   at 9-10.)   A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

9.     In addition to providing the Bar Date Notice by mail to all parties known to the Debtors as having potential claims against the Debtors' estates, the Bar Date Notice was published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times.   The Bar Date Notice prominently stated the Bar Date and in bold-face type that "any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date . . . for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim) . . . ." (*Id.* at 6.)   While only 35 days of notice of a bar date is recommended by the Second Amended Procedural Guidelines for Filing Requests for Bar Date Orders in the United States Bankruptcy Court for the Southern District of New York, in this case, the Debtors provided creditors more than 71 days notice of the Bar Date.   The Bar Date occurred more than a year after the Commencement Date, and 82 days after the entry of the Bar Date Order, providing ample time for creditors to determine, prepare, and file their claims against the Debtors.   More than 66,000 proofs of claim were received on or before the Bar Date.

**The Claim**

10.     LBSF and CDC entered into a standard 1992 International Swap Deal Association ("ISDA") Master Agreement dated as of July 29, 1994 (the 1992 ISDA Master Agreement and schedule thereto collectively referred to as, the "Master Agreement").   LBHI acted as credit support provider for the payment obligations of LBSF under the Master Agreement.   On September 19, 2008, CDC purported to designate an Early Termination Date under the Master Agreement based on the commencement of LBHI's chapter 11 case.   On September 29, 2008, CDC sent LBSF notice (the "Valuation Statement") of the amount due to

CDC by LBSF on such Early Termination Date.   CDC asserts that it is owed an amount not

less than $3,077,434 million under the Master Agreement (the "<u>Claim</u>").

## THE MOTION SHOULD BE DENIED

**I.**    <u>CDC Received Notice of the Bar Date</u>

11.    CDC argues that it should be permitted to file a late claim because the

Debtors failed to provide notice of the Bar Date to the attention of the CDC personnel identified

in the Master Agreement and, as a result, CDC did not receive notice of the Bar Date.    CDC's

argument must fail however because (i) the Debtors were not required to provide notice of the

Bar Date in accordance with the terms of the Master Agreement for such notice to be legally

sufficient and adequate and (ii) CDC received actual and constructive notice of the Bar Date.

12.    The Supreme Court has held that "[a]n elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice,

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections."   *Mullane v. Central

Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   Additionally, Bankruptcy Rule

2002(g)(2) provides that when notice is served on a creditor by mail and that creditor has not

filed a request designating a mailing address, then notice shall be mailed "to the address shown

on the list of creditors or schedule of liabilities, whichever is filed later."   FED. R. BANKR. P.

2002(g)(2).

13.    CDC argues that the attempted service of the Bar Date Notice on CDC at

the Scheduled Address was incorrect because the address on the mailing did not include

"Attention:   Service FMP 20/Back Office Monétaire" as purportedly required under the Master

Agreement, and, therefore, notice was improper.   However, sending notice to the Scheduled

Address in accordance with Bankruptcy Rule 2002(g)(2) was proper because CDC never filed a request designating a different mailing address.

14.     Even if this Court were to find, which it should not, that service on CDC at the Scheduled Address was not sufficient or reasonable under the circumstances of these cases, CDC's argument still fails because CDC received actual notice of the Bar Date by mail at the New York Address and the Other Paris Address as well as by publication notice.

15.     "Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail." *In re Dana Corp.*, 2007 Bankr. LEXIS 1934, at *12-13 (Bankr. S.D.N.Y. May 30, 2007); *Hagner v. United States,* 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932) ("the rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"). "While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by mere affidavit to the contrary." *In re Dana Corp.*, 2007 Bankr. LEXIS 1934, at *13 (listing cases).

16.     The Motion ignores the service of the Bar Date Notice on the New York Address and the Other Paris Address. However, the Bar Date Notices mailed to the New York Address and the Other Paris Address were properly addressed, stamped, and deposited in the mail system, and were never returned as undeliverable. *See* Baer Affidavit. CDC's general assertion that it was not aware of the Bar Date until nearly eight months after it had passed is not enough to overcome the presumption that it actually received the Bar Date Notice at the New York Address and the Other Paris Address. *See In re Dana Corp.*, 2007 Bankr. LEXIS

1934, at *13-15 (citing *Ms. Interpret v. Rawe Druck-Und-Veredlungs-GMBH (In re Ms.*

*Interpret),* 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (a party must do more than merely assert

that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient,

standing alone, to rebut the presumption)).   Thus, this Court should presume that CDC

received the Bar Date Notice at both the New York Address and the Other Paris Address.

17.    Once a bankruptcy notice is delivered, it is the responsibility of the

creditor to distribute such notice to the appropriate party within its organization.   *In re Drexel*

*Burnham Lambert Group, Inc.*, 129 B.R. 22 (Bankr. S.D.N.Y 1991); *see also In re Petroleum*

*Prod. Mgmt. Co.*, 240 B.R. 407, 414-15 (Bankr. D. Kan. 1999) ("A creditor who chooses to

operate its business by dividing its activities into various departments cannot shield itself

against notice properly sent to the creditor in its name and at its place of business.").   Thus,

upon receipt of the Bar Date Notice, it was the responsibility of CDC's personnel to route such

notice appropriately within the CDC.

18.    This Court's decision in *Drexel* is particularly instructive here.   In *Drexel*,

Barclays Bank PLC ("Barclays") moved the Court to enlarge the time to file a proof of claim,

arguing that the appropriate office to deal with such notice was located in London and did not

receive notice of the bar date.   *Id.*   The debtors in that case served notice of the bar date on

Barclays at its offices in Connecticut, New York City, and Australia.   *Id.* at 24.   Barclays

conceded receipt of actual notice of the bar date at its offices in New York and in Australia.

*Id.*   The Court also presumed receipt by Barclays at its Connecticut office because Barclays did

not address or assert that the mailing of the bar date notice to such Connecticut office was

addressed improperly.   *Id.*   Barclays, however, argued that notice was improper because

notice of the bar date should have been sent to Barclays London.   *Id.*   The Court held that a

"worldwide banking institution" such as Barclays is responsible "for having adequate systems in place to ensure that legal notices and other communications reach the appropriate parts of its business empire." *Id.* Accordingly, Barclays London received proper notice of the bar date vis-à-vis the notice that was provided to Barclays' offices in New York, Connecticut, and Australia. *Id.* Consistent with the Court's decision in *Drexel*, this Court should find that CDC received proper notice vis-à-vis actual receipt of notice at the New York Address and the Other Paris Address. *Id.*

19.     The *Drexel* Court also considered the debtors' publication of the bar date, and held that Barclays received not only actual notice by mail, but also actual notice by publication. *Id.* at 24-25. Consequently, the Court was satisfied that Barclays received adequate and legally sufficient notice of the claims bar date to timely file a proof of claim. *Id.* As set forth above, the Debtors published notice of the Bar Date in three international and widely distributed newspapers, each of which is circulated throughout France. Thus, given that CDC received actual notice of the Bar Date by mail and by publication notice, this Court should find that CDC received adequate and sufficient notice of the Bar Date to timely file the Claim.

20.     Furthermore, the cases CDC cites in support of its argument are inapposite. First, in *Randbre Corp.*, 66 B.R. 482 (Bankr. S.D.N.Y. 1986), the debtor sent a notice of a motion to expunge a creditor's claim to "660 E. 15 Mile Rd." rather than the creditor's correct address, "6600 E. 15 Mile Rd.," and, as a result, the notice was not delivered to the creditor's correct address. Second, in *Joseph B. Dahlkemper Co., Inc.,* 170 B.R. 853, 857 (Bankr. W.D. Pa. 1994), the debtor sent notices of the bar date to the creditor's predecessor-in-interest, which notices were not forwarded to the creditor. The facts presented

in *Randbre* and *Dahlkemper* are clearly distinguishable from those present here.    In neither

case was the notice actually delivered to the creditor.

21.    CDC is a sophisticated party that received actual notice of the Bar Date.

CDC's failure to internally transfer mail does not amount to a violation of due process or serve

as a valid excused for CDC's failure to timely file a claim.

## II.    CDC Cannot Demonstrate Excusable Neglect

22.    CDC also argues that it should be able to file a claim under the

"excusable" neglect standard of Bankruptcy Rule 9006(b).    The Bankruptcy Rules direct a

bankruptcy court to establish bar dates in chapter 11 cases.    Bankruptcy Rule 3003(c)(3)

requires that the bankruptcy court "fix and for cause shown may extend the time within which

proofs of claim or interest may be filed."    Fed. R. Bankr. P. 3003(c)(3).    Given the critical

importance of the bar date to the successful administration of a chapter 11 case, requests for

extensions of time to file proofs of claim are "strictly scrutinized" by courts.    *Florida Dept. of*

*Ins. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 148

B.R. 1002, 1005 (S.D.N.Y. 1993).

> 'The setting of a bar date is an important event in Chapter 11 cases.   The
> bar order by forcing creditors to make known their claims against the
> estate, enables the bankruptcy judge to tally up the debtor's assets and
> liabilities so that a reorganization plan can be developed.'   Thus, it may
> be said that harm to creditors who have acted in reliance on the certainty
> of a firm bar date is precisely the reason why an [sic] motion to extend the
> bar date must be strictly scrutinized and may be granted only if excusable
> neglect is found in 'extraordinary circumstances.'

*Id.* (quoting *Hooker Investments, Inc.*, 122 B.R. 659, 664 (S.D.N.Y. 1991), *appeal denied*, 937

F.2d 833 (2d Cir. 1991)).    Bankruptcy Rule 9006(b) vests the decision to extend the bar date

"squarely within the discretion of the bankruptcy judge."    *Id.* at 1008.

23.     Bankruptcy Rule 9006(b)(1) provides that "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Supreme Court, in interpreting the term "excusable neglect," has held that the term "neglect" in its ordinary sense means "to give little attention or respect to a matter, or . . . to leave undone or unattended to esp[ecially] through carelessness . . . and encompasses both simple, faultless omissions to act and more commonly, omissions caused by carelessness." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993). The determination of whether a claimant's neglect of a deadline is *excusable*, according to the *Pioneer* Court, however, is an equitable determination in which a court should consider all relevant circumstances surrounding the claimant's omission, including:   "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

24.     In applying the *Pioneer* factors to determine whether a late-filed proof of claim was the result of "excusable neglect," the Second Circuit has taken a "hard line" approach that does not give the four factors equal weight but rather focuses on the third *Pioneer* factor— the reason for the delay in filing, including whether the cause of such delay was within the reasonable control of the movant—as the most critical.   *In re Enron Corp.*, 419 F.3d 115, 122-24 (2d Cir. 2005). The Second Circuit has noted that the reason for this approach is that the other factors delineated in *Pioneer* – prejudice, length of delay and impact on judicial proceedings, and the movant's good faith – will typically weigh in favor of the movant, and the

court will therefore focus on the reason for the delay in filing. *Id*. at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003)).

25.     This Court has followed the Second Circuit's "hard line" approach in applying the *Pioneer* factors in deciding nine prior motions in this case.   Only on two occasions, where "creditors consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims," did this Court find the existence of excusable neglect.   *In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 127 (Bankr. S.D.N.Y. 2010), *aff'd.* 445 B.R. 137 (S.D.N.Y. 2011).   With respect to all other motions filed in this case seeking to have late filed claims deemed timely pursuant to Bankruptcy Rule 9006(b), this Court found that the delay in filing the late claims was within the control of the various movants and that "reasons offered by the Movants demonstrate a lack of care or thoughtful attention to the preparation and filing of their proofs of claim." *Id.*   CDC does not allege confusion regarding the application of the Bar Date Order and CDC's excuse does not relate to the bespoke provisions of the Bar Date Order regarding certain esoteric securities.   Therefore, the Court should follow its prior decision and deny the Motion which alleges facts that evidence nothing more than mere "neglect" on the part of CDC to ensure that legal notices and other communications delivered to it reach the appropriate parts of its organization.

26.     The *Pioneer* factors, particularly the reason for CDC's delay in filing the Claim, the prejudice to the Debtor and the length of the delay, weigh in favor of the Debtors.

<u>CDC's Reason for the Delay Was Solely Within CDC's Control</u>

27.     The sole reason asserted by CDC for its delay in filing the Claim is that it did not receive notice of the Bar Date.   Such reason is conclusively refuted by the fact that

12

CDC received actual notice of the Bar Date by mail at no less than two locations as well as by publication notice. Any of these forms of notice by itself should be held to be adequate notice. CDC's failure to file the Claim in a timely manner was caused solely and entirely by CDC's failure to adequately communicate within its own organization. As discussed above, this Court has held that errors within the control of a claimant do not warrant a finding of excusable neglect. *Id.*

28.    Moreover, courts in the Second Circuit and elsewhere have held that such "office mixups, clerical mistakes, and failure to follow office procedure do not generally constitute excusable neglect." *In re Dana Corp.*, No. 06-10354 (BRL), 2008 WL 2885901, at *5 (Bankr. S.D.N.Y. July 23, 2008) (where notice of the bar date was inadvertently filed away without any action being taken, "movant's failure to file a timely proof of claim was entirely within his and his attorneys' reasonable control and does not constitute excusable neglect"); *Pruitt v. Metcalf Eddy Inc.*, No. 03 Civ. 4780 (DF), 2006 WL 760279, at *2 (S.D.N.Y. Mar. 24, 2006) (failure to timely file notice of appeal did not constitute excusable neglect where movant's counsel misplaced notice of appeal after arranging for attorney service to pick up and file it and then failed to follow up with attorney service to determine if the notice had been picked up and filed); *In re Chateaugay Corp.*, No. 92 Civ. 8722 (LJF), 1993 WL 1127180, at *6 (S.D.N.Y. Apr. 22, 1993) (movant's failure to timely file proof of claim due to failure of movant's own internal procedures in forwarding bankruptcy matters to its appropriate department for review did not constitute excusable neglect); *In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004) (notwithstanding that movant missed bar date by only one day, movant's failure to file a timely proof of claim did not constitute excusable neglect where movant's counsel delegated the filing of the proof of claim to an office clerk, failed to follow up with the clerk to

ensure that he had followed counsel's instructions on filing, and failed to take simple steps to confirm that the claim had been filed in a timely manner); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 898031, at *7 (Bankr. S.D.N.Y. Mar. 29, 2006) (State of Montana's delay in filing proof of claim for a damage award stemming from Federal Energy Regulatory Commission ("FERC") proceedings did not constitute excusable neglect where State of Montana mistakenly assumed that FERC would protect its interests by filing a proof of claim on its behalf in the debtors' bankruptcy proceedings).   The facts and circumstances do not justify a finding of excusable neglect in this case.

29.    The Bar Date in LBSF's case occurred more than one year after the commencement of LBHI's chapter 11 proceeding and nearly a year after CDC provided the Valuation Statement to LBSF.   CDC had ample time and access to relevant information to determine the claims that it held against the various Lehman entities.   CDC is a sophisticated party that failed to conduct the proper diligence on its claims.   Accordingly, the Motion should be denied.

Allowing CDC's Claim Will Prejudice These Estates

30.    "Prejudice" includes not only the harm to the debtor but also the adverse impact that a late claim may have on the judicial administration of the case, considering the size of the late claim in relation to the estate.   *See In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. at 1007; *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y. 1995).   This Court has already determined that in these cases "the enormity of the claims allowance process is self-evident, and prejudice needs to be evaluated in this unprecedented setting" and therefore, a "strict application of the Bar Date Order is needed to effectively manage the claims process and that

permitting additional claims will lead to an opening of the claims process with foreseeable

prejudice to the Debtors." *In re Lehman Brothers Holdings Inc.*, 433 B.R. at 120.

31.     On July 1, 2011, the Debtors filed the Plan and Disclosure Statement.   A

hearing for the approval of the disclosure statement is scheduled for August 30, 2011.   The

Debtors have spent significant amounts of time and effort negotiating the Plan with various

creditor groups.   A sudden increase in claims at this time would disrupt the orderly

administration of the Debtors' estates and could potentially disrupt the compromises the

Debtors have reached in connection with the Plan.

32.     In addition, the Debtors have spent significant time and effort reviewing

and objecting to claims.   CDC argues that the Debtors will not be prejudiced by its late-filed

Claim because the facts presented in the Motion are exceptionally narrow.   The Debtors have

objected to more than 1,600 claims on the grounds that such claims were not timely filed.[3]

This Court has granted the Debtors' objections to 1,269 of such claims and the Debtors'

objections to the remaining claims are pending before this Court.   If CDC is permitted to file

the Claim and such Claim is deemed timely filed by the Court as a result of excusable neglect,

other claimants may make similar arguments and seek similar relief.   This Court has previously

held that prejudice to the Debtors "is not traceable to the filing of any single additional claim

but to the impact of permitting exceptions that will encourage others to seek similar leniency."

*Id.* at 121.

<u>Length of Delay</u>

33.     CDC has not filed the Claim to date – <u>nearly two years after the Bar Date</u>.

Moreover, CDC did not file the Motion until more than one year after it purports to have first

---

[3] The Debtors withdrew their objections to 25 of such claims.

learned of the Bar Date.   The length of the delay in seeking relief from the Court pursuant to
Bankruptcy Rule 9006(b)(1) is beyond any of the other motions filed in this case.   If CDC is
permitted to file a claim for the first time pursuant to the Motion, and other creditors seek and
receive similar relief, the purpose and effect of a bar date will have been diluted.

Good Faith

34.      The Debtors have no evidence that CDC acted in bad faith when it filed
the Motion, but as discussed above this factor typically weighs in favor of the party moving to
file a late claim and does not outweigh the other *Pioneer* factors that weigh in the Debtors'
favor, particularly the third *Pioneer* factor, discussed above, which the Second Circuit has
deemed to be the most relevant and critical in the equitable determination of whether a
movant's neglect is excusable.   *See In re Enron Corp.*, 419 F.3d at 122-24.   Accordingly, the
Motion should be denied.

## **RESERVATION OF RIGHTS**

35.      In the event that the Court determines to grant the relief requested in the
Motion, the Debtors reserve all of their rights to object to the validity and amount of any claims
that may be filed by CDC.

36.      The Debtors reserve the right to conduct discovery as to the matters raised
in the Motion and to supplement this filing as a result thereof.

WHEREFORE the Debtors respectfully requests the Court deny the Motion and

grant such other and further relief as is just and proper.

Dated: August 17, 2011
New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York   10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor and
Debtor In Possession

## Exhibit A

**Affidavit of Service**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------x
                                     :

In re                                 :        **Chapter 11 Case No.**
                                       :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :        **08-13555 (JMP)**
                                       :

             **Debtors.**          :        **(Jointly Administered)**
                                       :
---------------------------------------------------------------------------x    **Ref. Docket Nos. 4271, 4349**

<u>**CORRECTED AFFIDAVIT OF SERVICE**</u>

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK  )

HERB BAER, being duly sworn, deposes and says:

1.     I am over the age of eighteen years and am not individually a party to the above-captioned proceedings.

2.     I am a Director of Client Services of Epiq Bankruptcy Solutions, LLC ("Epiq"), located at 757 Third Avenue, 3rd Floor, New York, New York 10017.  Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

3.     Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") retained Epiq as their Claims and Noticing Agent pursuant to an Order of the Court dated September 16, 2008.  Accordingly, Epiq maintains the official claims register reflecting all claims listed in the Debtor's Schedules of Liabilities, as amended, and all filed proofs of claim (the "Claims Database").  Additionally, Epiq maintains a database of names and addresses of all potential creditors of the Debtors listed in their Creditor Matrix (together with the Claims Database, the "Master Mailing List").

AFFIDAVIT OF HERB BAER – Page 1

4.    On July 8, 2009, I caused to be served the "NOTICE OF DEADLINES FOR

FILING PROOFS OF CLAIM", dated July 8, 2009 and a Proof of Claim Form upon on all

names and addresses in the Master Mailing List as they existed at the time (the "Bar Date

Mailing").

5.    My "Affidavit of Service" dated July 10, 2009 details all parties that were served,

and the manner in which they were served [Docket # 4349](the "Prior Service Affidavit").  The

Prior Service Affidavit incorrectly listed the address of certain parties that were served.  To

correct any errors on the Prior Service Affidavit, I hereby submit this Corrected Affidavit of

Service which fully supersedes the Prior Service Affidavit and hereby certify that all parties were

served at the addresses included on the Master Mailing List as it existed as of July 8, 2009,

which addresses are set forth on Exhibits D, E, and F, as described below.

6.    The Bar Date Mailing was completed as follows:

On July 8, 2009, I caused to be served the:

a)    "NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM", dated July 8,

    2009, a copy of which is attached as Exhibit A (the "Bar Date Notice"),

b)    "PROOF OF CLAIM" form, a copy of which is attached hereto as Exhibit B, (the

    "General Proof of Claim Form"), and

c)    "PROOF OF CLAIM" form with a legend stating "Notice of Scheduled Claim", a

    copy of which is attached hereto as Exhibit C, (the "Schedule Proof of Claim

    Form")

by causing true and correct copies of the:

a)    Bar Date Notice and a blank General Proof of Claim Form to be enclosed securely

    in separate postage pre-paid envelopes and delivered by first class mail to those

    parties listed on the attached Exhibit D,

AFFIDAVIT OF HERB BAER – Page 2

b) Bar Date Notice and a General Proof of Claim Form, personalized to include the name and address of the creditor, to be enclosed securely in separate postage pre-paid envelopes and delivered by first class mail to those parties listed on the attached Exhibit E, and

c) Bar Date Notice and a Schedule Proof of Claim Form, personalized to include the name and address of the creditor and debtor, amount, nature, classification and description of the scheduled claim, to be enclosed securely in separate postage pre-paid envelopes and delivered by first class mail to those parties listed on the attached Exhibit F.

7.    All envelopes utilized in the service of the foregoing contained the following legend:  "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

_____
Herb Baer

Sworn to before me this
2nd day of June, 2010

_____
Notary Public

SIDNEY J. GARABATO
NOTARY PUBLIC, STATE OF NEW YORK
No. 01GA6218946
Qualified in New York County
Commission Expires March 15, 2014

AFFIDAVIT OF HERB BAER – Page 3

# Exhibit "E"

| Claim Name | Address Information |
|---|---|
| FRANCE | RUE DE MADRID PARIS 75008 FRANCE |
| CAISSE D AMORTISSEMENT DE LA DETTE SOCIALE | ATTN:FRANCOISE BLONDEEL 139, RUE DE BERCY CEDEX 12 PARIS 75572 FRANCE |
| CAISSE D'EPARGNE ET DE PREVOYANCE | PICARDIE DIRECTION FINANCIERE – PATRICK COLLAS 2 BOULEVARD JULES VERNE BP 727-80007 AMIENS CEDEX 1 FRANCE |
| CAISSE D'EPARGNE ET DE PREVOYANCE | MIDI-PYRENEES 10 AVENUE MAXWELL BP 22306-31023 GERARD FERRAN DIRECTEUR DU CONTENTIEUX TOULOUSE CEDEX FRANCE |
| CAISSE D'EPARGNE ET DE PREVOYANCE | AUVERGNE LIMOUSIN DIRECTION JURIDIQUE, 63 RUE MONTLOSIER 63961 CLERMONT-FERRAND CEDEX 9 FRANCE |
| CAISSE D'EPARGNE ET DE PREVOYANCE | ILE DE FRANCE DIRECTION POLE FINANCE ARNAUD QUEFFEULOU 19 RUE DU LOUVRE PARIS 75001 FRANCE |
| CAISSE DE DEPOT | 1000 PLACE JEAN-PAUL-RIOPELLE MONTREAL QUEBEC H2Z 2B3 CANADA |
| CAISSE DE DEPOT | 1981 AVENUE MCGILL COLLEGE 9TH FLOOR MONTREAL CANADA H3A 3C7 CANADA |
| CAISSE DE DEPOT ET PLACEMENT DU QUEBEC | ATTN:VICE PRESIDENT CAISSE DE DEPOT ET PLACEMENT DU QUEBEC 1000, PLACE JEAN PAUL RIOPELLE MONTREAL QB H2Z 2B3 CANADA |
| CAISSE DE DEPOT ET PLACEMENT DU QUEBEC | ATTN: VICE PRESIDENT 1000, PLACE JEAN PAUL RIOPELLE MONTREAL QC CANADA |
| CAISSE DE DEPOT ET PLACEMENT DU QUEBEC | 100 PL. JEAN-PAUL RIOPELLE MONTREAL H2Z 2B3 CANADA |
| CAISSE DE DEPOT ET PLACEMENT DU QUEBEC | 909 A STREET TACOMA WA 98402-5120 |
| CAISSE DES DEPOTS ET CONSIGNAT IONS | ATTN: CDC CAPITAL 9 WEST 57TH STREET 36TH FLOOR NEW YORK NY 10019 |
| CAISSE DES DEPOTS ET CONSIGNATIONS | 137 RUE DE LUNIVERSITE PARIS 75007 FRANCE |
| CAISSE FEDERALE DU CREDIT MUTUEL DE MAINE-ANJOU | 43 BOULEVARD VOLNEY 53083 LAVAL CEDEX FRANCE |
| CAISSE NATIONAL DES CAISSES D EPARGNE | ATTN:LEGAL DEPT 77 BOULEVARD SAINT JACQUES PARIS CEDEX 14 75673 FRANCE |
| CAISSE NATIONALE DE CREDIT AGRICOLE | 91-93 BOULEVARD PASTEUR PARIS F-75015 FRANCE |
| CAIT CLEGG | 1333 SOUTHWYCK DRIVE CHAGRIN FALLS OH 44022 |
| CAIT CLEGG | 133 SOUTHWYCK DRIVE CHAGRIN FALLS OH 44022 |
| CAIT CLEGG | 3701 LINDELL BLVD, #6B ST. LOUIS MO 63108 |
| CAIT CLEGG | 3701 LINDELL BLVD CORONADO PLACE 6B ST. LOUIS MO 63108 |
| CAITLIN CASSIDY | 5354 WENONAH DALLAS TX 75209 |
| CAITLIN COYNE | 176 ASHDALE AVENUE LOS ANGELES CA 90049 |
| CAITLIN E. PRENDERGAST | 434 RIVERSIDE DRIVE NEW YORK NY 10025 |
| CAITLIN E. PRENDERGAST | 122 BOWDOIN ST APT 42 BOSTON MA 021082715 |
| CAITLIN E. PRENDERGAST | 6 OLD PACES PLACE NW ATLANTA GA 30327 |
| CAITLIN HAGAN | 1452 WEST SCHOOL #2 CHICAGO IL 606 |
| CAITLIN HAGAN | 1600 S. INDIANA AVE. #702 CHICAGO IL 60616 |
| CAITLIN HORN | 8113 RAYBURN ROAD BETHESDA MD 20817 |
| CAITLIN HUGHES | 2600-101 CALLIOPE WAY RALEIGH NC 27616 |
| CAITLIN JONES | 22 ATLANTIC WALK ROCKAWAY POINT NY 11697 |
| CAITLIN LAYNG | 389 EAST 89TH ST. APT. 8F NEW YORK NY 10128 |
| CAITLIN LAYNG | 389 EAST 89TH ST. APT. 14F NEW YORK NY 10128 |
| CAITLIN LOWREY | 106 B MIDDLETON ROAD LONDON E8 4LN UNITED KINGDOM |
| CAITLIN LOWREY | 1 CHRISTIE ROAD LONDON E9 5EA UNITED KINGDOM |
| CAITLIN LOWREY | 65 ALBERT HALL MANSIONS KENSINGTON GORE LONDON SW7 2AG UNITED KINGDOM |
| CAITLIN LOWREY | 260 W 54TH ST NEW YORK NY 10019 |
| CAITLIN LOWREY | 150 W 47TH ST 11C NEW YORK NY 10036 |
| CAITLIN MAHON | CARE OF LEHMAN BROTHERS 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| CAITLIN MIOSEK | 11A LINDEN STREET MARBLEHEAD MA 01945 |
| CAITLIN MIOSEK | 81 EAST BERKLEY STREET APT #3 BOSTON MA 02118 |
| CAITLIN MIOSEK | 1408  COMMONWEALTH AVENUE APT#17 BRIGHTON MA 02135 |
| CAITLIN MIOSEK | 8 VERNDALE STREET APT G BROOKLINE MA 02446 |

**Exhibit "F"**

| Claim Name | Address Information |
|---|---|
| CABRERA,ROGER | 420 RIVER ROAD CHATHAM NJ 07928 |
| CACEIS BANK LUX / CAAM(PORTFOLIO FOREX TRDG) GIVE- | 5 ALLE SCHEFFER LUXEMBOURG LUXEMBOURG |
| CACERES,MIRIAM | 78-06 64TH PLACE GLENDALE NY 11385 |
| CADBURY CORPORATION | 2150 ROUTE 38 CHERRY HILL NJ 08002-4302 |
| CADWALADER WICKERSHAM & TAFT | P.O. BOX 5929 GENERAL POST OFFICE NEW YORK NY 10087-5929 |
| CADWALADER WICKERSHAM & TAFT | P.O. BOX 5929 GENERAL POST OFFICE NEW YORK NY 10087-5929 |
| CAESAR A., TRELLES | 4 FIRETHORNE ROAD OLD BRIDGE NJ 08857 |
| CAFFARONE,RICARDO LUIS | AV. STA MARIA 6365 TIGRE 1648 ARGENTINA |
| CAFFREY,BRIAN J. | 100 ROBERTSON QUAY UNIT # 04-13 238250 SINGAPORE |
| CAFFREY,KEVIN M. | FLAT F, 15/F TOWER 2 STARCREST, 9 STAR STREET WANCHAI HONG KONG |
| CAGUIAT,ERLINDA R. | 104 CARTERET STREET STATEN ISLAND NY 10307 |
| CAHILL,EDWINA E | 15 PATTEN ROAD LONDON SW18 3RH GREAT BRITAIN |
| CAI LAY, THOONG | 60 BROOMFIELD STREET POPLAR LONDON E14 6BQ UNITED KINGDOM |
| CAI,LEE T. | 7 HUDSON CT. WEST WINDSOR NJ 08550 |
| CAIAZZA,OSCAR | 157-16 101 STREET HOWARD BEACH NY 11414 |
| CAIN BROTHERS & COMPANY LLC | 452 FIFTH AVE NEW YORK NY 10018 |
| CAIN,CONNIE | 145 FUCHSIA COURT FREEDOM CA 95019 |
| CAIRNS,LARA P. | 316 SLEEPY HOLLOW LANE FRANKLIN LAKES NJ 07417 |
| CAISSE D' AMORTISSEMENT DE LA DETTE SOCIALE | 139, RUE DE BERCY 75572 PARIS CEDEX 12 FRANCE |
| CAISSE DE DEPOT ET PLACEMENT DU QUEBEC | 1000, PLACE JEAN PAUL RIOPELLE MONTREAL QC CANADA |
| CAISSE DES DEPOTS ET CONSIGNAT IONS | 56 RUE DE LILLE 75356 PARIS CEDEX 07 FRANCE |
| CAISSE DES DEPOTS ET CONSIGNATIONS | 9 WEST 57TH STREET 36TH FLOOR NEW YORK NY 10019 |
| CAISSE REGIONAL CREDIT AGRICOLE PARIS ILE DE FRANC | SIEGE SOCIAL: 26, QUAI DE LA RAPEE PARIS CEDEX 12 7 FRANCE |
| CAISSE REGIONALE DE CREDIT AGRICOLE MUTUEL DU CENT | 3 AVE. DE LA LIBERATION CLERMONT FERRAND F-63045 CEDEX 9 FRANCE |
| CAISSE REGIONALE DE CREDIT AGRICOLE MUTUEL NORD DE | 10 AVENUE FOCH LILLE FRANCE |
| CAISTOR TRADING BV | ATRIUM STRAWINSKYLAAN 3105 AMSTERDAM 1077ZX NETHERLANDS |
| CAITLIN P., HURD | 1 S. PASSAIC AVE., APT 2 CHATHAM NJ 07928 |
| CAITLIN, COYNE | 337 W. 14TH ST. #23 NEW YORK NY 10014 |
| CAITLIN, HAGAN | 1452 WEST SCHOOL #2 CHICAGO IL 60657 |
| CAITLIN, JONES | 532 WASHINGTON STREET APT 3S HOBOKEN NJ 07030 |
| CAITLIN, LANDY | 416 EAST 71ST STREET #23 NEW YORK NY 10021 |
| CAITLIN, LAYNG | 360 EAST 88TH ST. APT. 19B NEW YORK NY 10128 |
| CAITLIN, RHODES | 6626 LAKESHORE DRIVE DALLAS TX 75214 |
| CAIXA D'ESTALVIS DE SABADELL | CALLE GRACIA 17 08021 SABADELL SPAIN |
| CAIXA D'ESTALVIS DEL PENEDES | RAMBLA NOSTRA SENYAORA, 2 I 4 VILAFRANCA DEL PENEDES SPAIN |
| CAIXA GERAL DE DEPOSITOS LONDON GB | AV JOAO XXI, 63 LISBOA CODEX, 1017 PORTUGAL SPAIN |
| CAJA DE AHORROS DE CASTILLA LA MANCHA | PARQUE DE SAN JULIAN 20 CUENCA SPAIN |
| CAJA DE AHORROS Y MONTE DE PIEDAD DE MADRID | PASEO DE LA CASTELLANA, 189 MADRID 28046 SPAIN |
| CAJA DE AHORROS Y MONTE DE PIEDAD DE MADRID | PASEO DE LA CASTELLANA, 189 MADRID 28046 SPAIN |
| CAJA DE AHORROS Y PENSIONES DE BARCELONA (LA CAIX) | AVENIDA DIAGONAL 621-629 PLANTA 16 BARCELONA SPAIN |
| CAJA DE AHORROS Y PENSIONES DE BARCELONA (LA CAIX) | AVENIDA DIAGONAL  621-629 PLANTA 16 BARCELONA 8208 SPAIN |
| CAJA LABORAL BOLSA GARANTIZADO IX FIM | CAJA LABORAL GESTION SGIIC SA PASEO D. J.M. ARIZMENDIARRETA 5 ARRASATE ( |

## Exhibit B

**Affidavit of Herb Baer**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------x
                                                          :
In re                                                     :          **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                :          **08-13555 (JMP)**
                                                          :
                              Debtors.                    :          **(Jointly Administered)**
                                                          :
----------------------------------------------------------------------------x

### AFFIDAVIT OF HERB BAER

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )

HERB BAER, being duly sworn, deposes and says:

  1.  I am over the age of eighteen years and am not individually a party to the above-captioned proceedings.

  2.  I am a Director of Client Services of Epiq Bankruptcy Solutions, LLC ("Epiq"), located at 757 Third Avenue, 3rd Floor, New York, New York 10017. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

  3.  Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") retained Epiq as their Claims and Noticing Agent pursuant to an Order of the Court dated September 16, 2008. Accordingly, Epiq maintains the official claims register reflecting all claims listed in the Debtor's Schedules of Liabilities, as amended, and all filed proofs of claim (the "Claims Database"). Additionally, Epiq maintains a database of names and addresses of all potential creditors of the Debtors listed in their Creditor Matrix (together with the Claims Database, the "Master Mailing List").

AFFIDAVIT OF HERB BAER – Page 1

4.       On July 8, 2009, I caused to be served the "NOTICE OF DEADLINES FOR

FILING PROOFS OF CLAIM", dated July 8, 2009 and a Proof of Claim Form (a "Bar Date

Notice") upon on all names and addresses in the Master Mailing List as they existed at the time

(the "Bar Date Mailing").  My Affidavit of Service dated June 3, 2010 details all parties that

were served, and the manner in which they were served [Docket # 9395](the "Bar Date Service

Affidavit").

5.       As indicated in the Bar Date Service Affidavit, a Bar Date Notice was mailed to

Caisse Des Depots Et Consignations at the following three addresses:

Address 1:
CAISSE DES DEPOTS ET CONSIGNATIONS
56 RUE DE LILLE
75356 PARIS CEDEX 07 FRANCE

Address 2:
CAISSE DES DEPOTS ET CONSIGNATIONS
ATTN: CDC CAPITAL
9 WEST 57TH STREET 36TH FLOOR
NEW YORK NY 10019

Address 3:
CAISSE DES DEPOTS ET CONSIGNATIONS
137 RUE DE LUNIVERSITE
PARIS 75007 FRANCE

6.       As indicated in the Bar Date Service Affidavit, all envelopes used in the Bar Date

Mailing bore a legend that said: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO

ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

7.       Additionally, all envelopes used in the Bar Date Mailing bore the words "Address

Service Requested," requesting that the United States Post Office (the "Post Office") notify Epiq

of all mail that is forwarded to another address for the addressee pursuant of a change of address

request submitted by the addressee to the Post Office.

8.     As part of Epiq's ongoing maintenance of the Master Mailing List for future

mailings, Epiq records all mail that is either (i) Returned by the Post Office as Undeliverable, (ii)

Forwarded by the Post Office or (iii) Returned by the Post Office with forwarding information.

9.     I have examined the Master Mailing List and have determined that the Bar Date

Notice mailed to Address 1 was returned to our office by the Post Office, however, the Bar Date

Notice mailed to Address 2 and Address3 were neither returned by the Post Office nor forwarded

by the Post Office.

Herb Baer

Sworn to before me this
16th day of August, 2011

Notary Public

PANAGIOTIS CARIS
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01CA6237515
COMM. EXP. MARCH 21, 2015

AFFIDAVIT OF HERB BAER – Page 3