# EXHIBIT 3

**Stock Purchase Agreement
dated as of June 11, 2007**

DOCSNY-475441v1

*EXECUTION VERSION*

## STOCK PURCHASE AGREEMENT
dated as of June 11, 2007
by and between

### LB SKYPOWER INC.,

as Purchaser,

### 1328392 ALBERTA ULC,

as Acquisitionco,

### SKYPOWER CORP.,

as SkyPower,

### THOSE PERSONS LISTED ON SCHEDULE A ATTACHED HERETO,

as the Shareholders,

### 6785778 CANADA INC.

as Shareholder Holdco

### THE PERSONS LISTED ON SCHEDULE B ATTACHED HERETO,

as the Option Holders,

### HSH NORDBANK AG,

as HSHN

### 2138746 ONTARIO INC.

as Adler Holdco I,

### 2138747 ONTARIO INC.

as Adler Holdco II, and

### KERRY ADLER

as Kerry Adler, and together with Adler Holdco, Adler.

## TABLE OF CONTENTS

Page

ARTICLE I TRANSACTION AND CLOSING ........................................................................3

1.01    Transaction.................................................................................................3
1.02    Closing .......................................................................................................4
1.03    Withholding Taxes......................................................................................6

ARTICLE II REPRESENTATIONS AND WARRANTIES OF THE SKYPOWER
SHAREHOLDERS AS TO SKYPOWER...............................................6

2.01    Organization; Authority..............................................................................6
2.02    Capital Stock...............................................................................................7
2.03    Subsidiaries.................................................................................................7
2.04    [Section 2.04 Intentionally Not Used].......................................................8
2.05    No Conflicts................................................................................................8
2.06    Governmental Approvals and Filings.........................................................8
2.07    Books and Records .....................................................................................9
2.08    Financial Statements...................................................................................9
2.09    Absence of Changes ..................................................................................10
2.10    No Undisclosed Liabilities .......................................................................12
2.11    Taxes.........................................................................................................12
2.12    Legal Proceedings.....................................................................................14
2.13    Compliance with Laws .............................................................................15
2.14    Benefit Plans .............................................................................................15
2.15    Real Property ............................................................................................16
2.16    Tangible Personal Property; Investment Assets.......................................17
2.17    Intellectual Property Rights ......................................................................17
2.18    Contracts ...................................................................................................19
2.19    Licenses.....................................................................................................20
2.20    Insurance ...................................................................................................21
2.21    Affiliate Transactions ...............................................................................21
2.22    Employees; Labor Relations.....................................................................22
2.23    Environmental Matters .............................................................................23
2.24    No Powers of Attorney .............................................................................24
2.25    Accounts Receivable; Accounts Payable .................................................24
2.26    Brokers; Structuring Fees .........................................................................24
2.27    Propriety of Past Payments.......................................................................24
2.28    Development Projects................................................................................24
2.29    Disclosure .................................................................................................25
2.30    No United States Assets............................................................................25
2.31    No Terra Winds Liabilities .......................................................................25

ARTICLE III ADDITIONAL REPRESENTATIONS AND WARRANTIES OF ADLER
AND THE SKYPOWER SHAREHOLDERS.......................................26

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

3.01    Authority ............................................................................................................26
3.02    No Conflicts .......................................................................................................26
3.03    Capital Stock......................................................................................................26
3.04    Not a Non-Resident ...........................................................................................27
3.05    Governmental Approvals and Filings.................................................................27
3.06    Legal Proceedings..............................................................................................27
3.07    Purchase for Investment ....................................................................................27

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE PURCHASER...............27

4.01    Organization.......................................................................................................27
4.02    Authority ............................................................................................................28
4.03    No Conflicts .......................................................................................................28
4.04    Governmental Approvals and Filings.................................................................28
4.05    Legal Proceedings..............................................................................................28
4.06    Purchase for Investment ....................................................................................28
4.07    Funding ..............................................................................................................29

ARTICLE V REPRESENTATIONS AND WARRANTIES OF ACQUISITIONCO .................29

5.01    Organization.......................................................................................................29
5.02    Authority ............................................................................................................29
5.03    No Conflicts .......................................................................................................29
5.04    Governmental Approvals and Filings.................................................................30
5.05    Legal Proceedings..............................................................................................30
5.06    Purchase for Investment ....................................................................................30
5.07    Funding ..............................................................................................................30
5.08    No Other Business ..............................................................................................30

ARTICLE VI COVENANTS OF THE SKYPOWER SHAREHOLDERS AND
            SKYPOWER...................................................................................................30

6.01    Regulatory and Other Approvals........................................................................31
6.02    Investigation by Acquisitionco ..........................................................................31
6.03    No Solicitations..................................................................................................31
6.04    Conduct of Business ...........................................................................................32
6.05    Financial Statements and Reports; Filings .........................................................33
6.06    Employee Matters...............................................................................................33
6.07    Certain Restrictions............................................................................................34
6.08    Affiliate Transactions ........................................................................................35
6.09    Notice and Cure .................................................................................................36
6.10    Fulfillment of Conditions ..................................................................................36
6.11    Additional Covenants.........................................................................................36
6.12    Brokers; Structuring Fees ..................................................................................36
6.13    Insurance ............................................................................................................36

ARTICLE VII COVENANTS OF ACQUISITIONCO AND PURCHASER ..............................37

7.01    Regulatory and Other Approvals........................................................................37
7.02    Notice and Cure .................................................................................................37
7.03    Fulfillment of Conditions ..................................................................................38

7.04     Additional Covenants ...............................................................................................38

ARTICLE VIII CONDITIONS TO OBLIGATIONS OF PURCHASER AND
        ACQUISITIONCO ...........................................................................................38

8.01     Representations and Warranties ...............................................................................38
8.02     Operative Agreements ..............................................................................................39
8.03     Performance ..............................................................................................................39
8.04     Officer's Certificates.................................................................................................39
8.05     Orders and Laws .......................................................................................................39
8.06     Regulatory Consents and Approvals ........................................................................39
8.07     Third Party Consents ................................................................................................40
8.08     Opinion of Counsel...................................................................................................40
8.09     Restructuring of Advisory Board, Board of Directors and Officers .........................40
8.10     Intentionally Omitted................................................................................................40
8.11     Due Diligence ...........................................................................................................40
8.12     Proceedings...............................................................................................................40
8.13     Independent Engineer; Environmental Review.........................................................41
8.14     Budget; Business Plan; Projections ..........................................................................41
8.15     No Material Adverse Change ....................................................................................41
8.16     Excluded Assets........................................................................................................41
8.17     Employee Benefit Documents...................................................................................41
8.18     Payment of Fees........................................................................................................41
8.19     Exclusive Contribution Right ...................................................................................41

ARTICLE IX CONDITIONS TO OBLIGATIONS OF SKYPOWER AND THE
        SKYPOWER SHAREHOLDERS .................................................................42

9.01     Representations and Warranties ...............................................................................42
9.02     Operative Agreements ..............................................................................................42
9.03     Performance ..............................................................................................................42
9.04     Officers' Certificates.................................................................................................42
9.05     Orders and Laws .......................................................................................................43
9.06     Regulatory Consents and Approvals ........................................................................43
9.07     Proceedings...............................................................................................................43
9.08     No Material Adverse Change ....................................................................................43

ARTICLE X [ INTENTIONALLY NOT USED].......................................................................43

ARTICLE XI SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS
        AND AGREEMENTS ....................................................................................43

11.01    Survival of Representations, Warranties, Covenants and Agreements......................43

ARTICLE XII INDEMNIFICATION ........................................................................................44

12.01    Indemnity by SkyPower and the SkyPower Shareholders.........................................44
12.02    Indemnification by Purchaser....................................................................................45
12.03    Claims for Indemnification........................................................................................45
12.04    Defense .....................................................................................................................45
12.05    Limitations on Damages............................................................................................46

12.06    Nature of Remedies ................................................................................................47
12.07    Offset; Unpaid Claims ............................................................................................48
12.08    Indemnity Amounts to be Computed on After-Tax Basis; Interest ...........................48

ARTICLE XIII TERMINATION ............................................................................................48

13.01    Termination ............................................................................................................48
13.02    Effect of Termination ..............................................................................................49

ARTICLE XIV DEFINITIONS ................................................................................................49

14.01    Defined Terms .........................................................................................................49

ARTICLE XV MISCELLANEOUS ..........................................................................................60

15.01    Notices ....................................................................................................................60
15.02    Entire Agreement ....................................................................................................61
15.03    Expenses .................................................................................................................61
15.04    Confidentiality; Publicity ........................................................................................62
15.05    Waiver .....................................................................................................................62
15.06    Amendment ..............................................................................................................62
15.07    No Third Party Beneficiary .....................................................................................63
15.08    No Assignment; Binding Effect ...............................................................................63
15.09    Headings .................................................................................................................63
15.10    Dispute Resolution; Arbitration ..............................................................................63
15.11    Invalid Provisions ...................................................................................................65
15.12    Governing Law ........................................................................................................65
15.13    Judicial Proceedings; Waiver of Jury Trial; Designation of Agent ..........................65
15.14    Counterparts ............................................................................................................66

## SCHEDULES AND EXHIBITS

| | |
|---|---|
| SCHEDULE A | SkyPower Corp. Shares to be Sold, Shareholders, and Consideration |
| SCHEDULE B | SkyPower Corp. Option Holders |
| SCHEDULE C | Persons Executing Employment Agreements |
| SCHEDULE D | Non-Canadian Shareholders |
| SCHEDULE E | Acquisitionco Shares |
| SCHEDULE F | Closing Date Board of Directors and Officers of SkyPower Corp. |
| EXHIBIT A-1 | Officer's Certificate of SkyPower |
| EXHIBIT A-2 | Officer's Certificate of Shareholder Holdco |
| EXHIBIT A-3 | Officer's Certificate of Adler Holdco I |
| EXHIBIT A-4 | Officer's Certificate of Adler Holdco II |
| EXHIBIT B-1 | Opinion of Counsel to SkyPower and the Shareholders (Alberta) |
| EXHIBIT B-2 | Opinion of Counsel to SkyPower and the Shareholders (Ontario) |
| EXHIBIT B-3 | Opinion of Counsel to SkyPower and the Shareholders (New York) |
| EXHIBIT B-4 | Opinion of Counsel to Purchaser |
| EXHIBIT C | Officer's Certificate of Purchaser |
| EXHIBIT D | Rights |
| EXHIBIT E | Terms of Employee Stock Option Agreement |
| EXHIBIT F | Escrow Agreement |

This **STOCK PURCHASE AGREEMENT** dated as of June 11, 2007 is made
and entered into by and between LB SKYPOWER INC., a Delaware corporation ("**Purchaser**"),
1328392 Alberta ULC, an unlimited liability company organized in the Province of Alberta
("**Acquisitionco**"), SkyPower Corp., a corporation incorporated under the federal laws of
Canada ("**SkyPower**"), the Persons listed on Schedule A attached hereto (each, a "**Shareholder**"
and together, the "**Shareholders**"), 6785778 Canada Inc., a company incorporated under the
laws of Canada ("**Shareholder Holdco**"), the Persons listed on Schedule B attached hereto
(each, an "**Option Holder**" and together, the "**Option Holders**" ), HSH Nordbank AG
("**HSHN**"), 2138746 Ontario Inc., a corporation incorporated under the laws of Ontario ("**Adler
Holdco I**"), 2138747 Ontario Inc., a corporation incorporated under the laws of Ontario ("**Adler
Holdco II**") and Kerry Adler ("**Kerry Adler**" and, together with Adler Holdco, "**Adler**").
Capitalized terms not otherwise defined herein have the meanings set forth in Section 14.01.
Collectively, the Shareholders, Shareholder Holdco, the Option Holders, HSHN, Adler Holdco I,
Adler Holdco II and Adler are referred to as the "**SkyPower Shareholders**").

**WHEREAS**, Acquisitionco has proposed to issue (i) 2,702,258 shares of its
Class A Common Stock ("**Class A Common Stock**"), (ii) 1,973,103 shares of its Class B
Common Stock ("**Class B Common Stock**"), (iii) 616,800 shares of its Class C Common Stock
("**Class C Common Stock**"), (iv) options to acquire 112,341 shares of its Class D Common
Stock ("**Convertible Common Stock**") and (v) certain rights to purchase an aggregate of one
billion (1,000,000,000) additional shares of Class A Common Stock and Convertible Preferred
Stock, evidenced in the form attached hereto as Exhibit F (the "**Rights**");

**WHEREAS**, Purchaser desires to purchase from Acquisitionco and
Acquisitionco desires to issue and sell to Purchaser, the Class A Common Stock;

**WHEREAS**, Acquisitionco desires to grant to Purchaser, and Purchaser desires to
hold, the Rights;

**WHEREAS**, (i) the Shareholders hold an aggregate of 625,075 shares of Class A
Common stock of SkyPower (the "**Shareholder Shares**"); (ii) Shareholder Holdco holds
625,075 shares of Class A Common stock of SkyPower (the "**Shareholder Holdco Shares**");
(iii) Adler Holdco I holds an aggregate of 1,339,821.5 shares of Class A Common stock, of
SkyPower (the "**Adler Holdco I Shares**"); (iv) Adler Holdco II holds an aggregate of
1,348,028.5 shares of Class A Common stock, of SkyPower (the "**Adler Holdco II Shares**" and
together with the Adler Holdco I Shares, the "**Adler Shares**"); (v) HSHN holds an aggregate of
1,233,600 shares of Class B Common stock of SkyPower (the "**HSHN Shares**"); and (vi) the
Option Holders hold options ("**the Options**") to purchase an aggregate of 232,902 shares of
Class A Common stock of SkyPower;

**WHEREAS**, SkyPower desires to redeem the Adler Holdco I Shares and Adler
Holdco I desires to sell such Adler Holdco I Shares back to SkyPower (the "**Adler
Redemption**");

**WHEREAS**, the Option Holders other than Adler have elected, in respect of fifty
percent (50%) of the Options, and Adler has elected in respect of one hundred percent (100%) of

his Options, to receive a cash payment equal to the aggregate fair market value of the shares of common stock of SkyPower issuable on the exercise of such Options less the aggregate exercise price (net of any applicable withholdings or deductions) (the "**Option Payment**") and the Option Payment has been paid in cancellation of such Options by SkyPower issuing to each Option Holder a demand non-interest bearing promissory note (collectively, the "**Option Notes**") with a principal amount equal to such Option Payment and SkyPower desires to repay the Option Notes;

**WHEREAS**, SkyPower has a need for capital to effect the Adler Redemption and to pay the Option Payment and it is in the best interest of Acquisitionco to advance SkyPower US$47,369,639 on an interest-free basis for such transactions (the "**Advance**");

**WHEREAS**, following the Adler Redemption and the Option Payment, Acquisitionco desires to purchase shares of Class A Common stock of SkyPower and SkyPower desires to sell such shares to Acquisitionco;

**WHEREAS**, SkyPower desires to use the subscription proceeds received from Acquisitionco to repay the Advance;

**WHEREAS**, Adler Holdco II desires to exchange the Adler Holdco II Shares for Class B Common Stock of Acquisitionco and Acquisitionco desires to issue the Class B Common Stock in exchange for the Adler Holdco II Shares;

**WHEREAS**, Shareholder Holdco desires to exchange the Shareholder Holdco Shares for Class B Common Stock of Acquisitionco and Acquisitionco desires to issue the Class B Common Stock in exchange for the Shareholder Holdco Shares;

**WHEREAS**, the Shareholders desire to sell the Shareholder Shares to Acquisitionco and Acquisitionco desires to purchase the Shareholder Shares;

**WHEREAS**, HSHN desires to sell and exchange the HSHN Shares to Acquisitionco in consideration for a cash payment (as to fifty percent (50%) of the HSHN Shares) and in exchange for Class C Common Stock (as to fifty percent (50%) of the HSHN Shares) and Acquisitionco desires to purchase the HSHN Shares and issue such Class C Common Stock;

**WHEREAS**, the Option Holders desire to exchange their remaining fifty percent (50%) of the Options for options to acquire Class B Common Stock of Acquisitionco (the "**Class B Options**") and Acquisitionco desires to issue such Class B Options in consideration for the cancellation of the remaining Options; and

**NOW, THEREFORE**, in consideration of the mutual promises, representations, warranties and covenants contained in this Agreement, the adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I

## TRANSACTION AND CLOSING

1.01    Transaction.  On the terms and subject to the conditions set forth in this Agreement:

(a) Sale of Class A Common Stock: Grant of Rights

(i)    Acquisitionco agrees to sell to Purchaser, and Purchaser agrees to purchase from Acquisitionco Two million Seven Hundred and Two Thousand, Two Hundred and Fifty Eight (2,702,258) shares of the Class A Common Stock of Acquisitionco and the Rights on the Closing Date.

(ii)    The aggregate purchase price for the purchase by Purchaser of the Class A Common Stock of Acquisitionco and the Rights to purchase Class A Common Stock of Acquisitionco is US$87,500,000 payable in the manner provided in Section 1.02 (the "**Class A Purchase Price**").

(b) SkyPower Advance: Option Purchase; Purchase of SkyPower Common Stock

(i)    Acquisitionco agrees to make the Advance to SkyPower and SkyPower agrees to repay the Advance on the Closing Date.

(ii)    SkyPower agrees to repay the Option Notes.

(iii)   SkyPower agrees to sell to Acquisitionco and Acquisitionco agrees to purchase from SkyPower 1,460,382.5 shares of Class A Common stock of SkyPower on the Closing Date, for consideration equal to US$47,369,639, payable in the manner provided in Section 1.02 (the "**SkyPower Common Stock Purchase Price**").

(c) Shareholder Holdco Class B Common Stock Exchange

Shareholder Holdco agrees to sell to Acquisitionco and Acquisitionco agrees to purchase from Shareholder Holdco on the Closing Date, the number of Shareholder Holdco Shares set on Schedule A attached hereto, in exchange for the number of shares of Class B Common Stock of Acquisitionco set forth on Schedule E attached hereto and evidenced in the manner provided in Section 1.02 (the "**Shareholder Holdco Purchase Price**").

(d) Purchase of Shareholder Shares

Each Shareholder, severally and not jointly, agrees to sell to Acquisitionco and Acquisitionco agrees to purchase from such Shareholder on the Closing Date, the number of Shareholder Shares set forth aside such Shareholders name on Schedule A attached hereto for the consideration set forth opposite such Shareholder's name on Schedule A attached hereto in the manner provided in Section 1.02 (the "**Shareholder Share Purchase Price**").

- 3 -

(e) Option Exchange

Each Option Holder (other than Adler), severally and not jointly, agrees to sell for
cancellation fifty percent (50%) of the Options set forth aside such Option Holder's name on
Schedule B attached hereto for consideration equal to the number of options to purchase shares
of Class B Common Stock of Acquisitionco set forth opposite the name of such Option Holder
on Schedule B attached hereto (the "**New Options**").

(f) Redemption of Adler Holdco I Shares

Adler Holdco I agrees to sell to SkyPower and SkyPower agrees to receive from Adler
Holdco I and redeem on the Closing Date, that number of the Adler Holdco I Shares set forth
aside Adler Holdco I's name on Schedule A attached hereto in exchange for the consideration
equal to the amount of cash set forth aside Adler Holdco I's name on Schedule A, evidenced in
the manner provided in Section 1.02 (the "**Adler Holdco I Share Redemption Price**").

(g) Exchange of Adler Holdco II Shares

Adler Holdco II agrees to sell to Acquisitionco and Acquisitionco agrees to purchase
from Adler Holdco II on the Closing Date, that number of the Adler Holdco II Shares set forth
aside Adler Holdco II's name on Schedule A attached hereto in exchange for that number of
shares of Class B Common Stock of Acquisitionco set forth aside Adler Holdco II's name on
Schedule E, evidenced in the manner provided in Section 1.02 (the "**Adler Class B Common
Stock Purchase Price**").

(h) Purchase of HSHN Shares

HSHN agrees to sell to Acquisitionco and Acquisitionco agrees to purchase from HSHN
on the Closing Date, the number of HSHN Shares set out on Schedule A attached hereto, for the
cash consideration set forth aside HSHN's name on Schedule A attached hereto and in exchange
for the number of shares of Class C common Stock of Acquisitionco set forth on Schedule E
attached hereto, each in the manner provided in Section 1.02 (the "**HSHN Purchase Price**").

1.02   Closing. The Closing will take place at the offices of Goodmans LLP, 250
Yonge Street, Toronto, Ontario or at such other place as the Parties mutually agree, at 10:00
A.M. local time, on the Closing Date. At the Closing, the following transactions will occur in
the following order:

(a) Purchaser will pay US$$87,500,000 to Acquisitionco (the "**Aggregate
Purchase Price**") by wire transfer of immediately available funds to such account as
Acquisitionco may reasonably direct by written notice delivered to Purchaser by Acquisitionco
at least two (2) Business Days before the Closing Date and Acquisitionco will issue Purchaser a
certificate or certificates representing 2,702,258 shares of Class A Common Stock of
Acquisitionco and the Rights in genuine and unaltered form, duly endorsed in blank or
accompanied by duly executed stock powers endorsed in blank with requisite stock transfer tax
stamps, if any, attached and containing any legends required by the Shareholders Agreement;

(b) Acquisitionco will advance to SkyPower US$47,369,639;

(c) SkyPower will pay to Adler Holdco I, the Adler Share Redemption Price by wire transfer of immediately available funds to such account as Adler Holdco I may reasonably direct by written notice delivered to SkyPower by Adler Holdco I at least two (2) Business Days before the Closing Date.

(d) SkyPower will repay the Option Notes.

(e) Acquisitionco will pay to (which transactions will take place simultaneously):

    (i)    each Shareholder, the Shareholder Share Purchase Price set forth opposite such Person's name on Schedule A attached hereto;

    (ii)    Adler Holdco II, the Adler Class B Common Stock Purchase Price;

    (iii)    Shareholder Holdco, the Shareholder Holdco Purchase Price; and

    (iv)    HSHN, the HSHN Purchase Price

in each case, net of any applicable withholdings or deductions, by wire transfer of immediately available funds to such account as payee may reasonably direct by written notice delivered to Acquisitionco by such payee at least two (2) Business Days before the Closing Date;

(f) Acquisitionco will issue and deliver to Shareholder Holdco, Adler Holdco and HSHN, a certificate or certificates representing the number and class of shares set beside such Person's name on the attached Schedule E, genuine and unaltered form, duly endorsed in blank or accompanied by duly executed stock powers endorsed in blank with requisite stock transfer tax stamps, if any, attached and containing any legends required by the Shareholders Agreement.

(g) Acquisitionco will pay to SkyPower, the SkyPower Common Stock Purchase Price by wire transfer of immediately available funds to such account as SkyPower may reasonably direct by written notice delivered to Acquisitionco by SkyPower at least two (2) Business Days before the Closing Date.

(h) SkyPower will repay US$47,369,639 to Acquisitionco by wire transfer of immediately available funds to such account as Acquisitionco may reasonably direct by written notice delivered to SkyPower by Acquisitionco at least two (2) Business Days before the Closing Date.

(i) Sk yPower will issue and deliver to Acquisitionco a certificate or certificates representing 1,460,382.5 shares of Class A Common stock of SkyPower, in genuine and unaltered form, duly endorsed in blank or accompanied by duly executed stock powers endorsed in blank, with requisite stock transfer tax stamps, if any, attached.

(j) Acquisitionco will issue and deliver to the Option Holders the New Options.

(k) At the Closing, there shall also be delivered to the respective Parties, as applicable, the opinions, certificates and other documents and instruments to be delivered under Articles VI and VII.

1.03    Withholding Taxes. Subject to this Section 1.03, each Non-Canadian Shareholder will take all reasonable steps to obtain and deliver to Acquisitionco, on or before the Closing, a certificate issued by the Minister of National Revenue pursuant to section 116 of the Tax Act in respect of the sale of such Non-Canadian Shareholder's Shares to Acquisitionco (the "**Certificate**").

If a Certificate specifying a certificate limit in an amount which is not less than a portion of total purchase price allocable to such Non-Canadian Shareholder (the "**Pro Rata Shareholder Purchase Price**"), is not delivered to Acquisitionco at or before the Closing, Acquisitionco shall be entitled to withhold from the Pro Rata Shareholder Purchase Price the amount that Acquisitionco may be required to remit pursuant to subsection 116(5) of the Tax Act in connection with such purchase (the "**Withheld Amount**"), which Withheld Amount will be held by the Escrow Agent pursuant to the Escrow Agreement. The Withheld Amount deposited with the Escrow Agent shall be deemed to have been paid to such Non-Canadian Shareholder to satisfy Acquisitionco's obligations to such Non-Canadian Shareholder under Section 1.02.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES OF THE SKYPOWER SHAREHOLDERS AS TO SKYPOWER

The SkyPower Shareholders hereby represent and warrant as to SkyPower as follows:

2.01    Organization; Authority. SkyPower is a corporation duly organized, validly existing and in good standing under the Laws of Canada. SkyPower has full corporate power and authority to conduct its business as and to the extent now conducted and to own, use and lease its Assets and Properties. SkyPower has full corporate power and authority to execute and deliver the Operative Agreements to which it is a party and to perform its obligations thereunder and to consummate the transactions contemplated thereby. Section 2.01 of the Disclosure Schedule lists all lines of business in which SkyPower is participating or engaged. SkyPower is duly qualified, licensed or admitted to do business and is in good standing in those jurisdictions specified in Section 2.01 of the Disclosure Schedule, which are the only jurisdictions in which the ownership, use or leasing of its Assets and Properties, or the conduct or nature of its business, makes such qualification, licensing or admission necessary. The name of each director and officer of SkyPower on the date hereof, and the position held by each, are listed in Section 2.01 of the Disclosure Schedule. The SkyPower Shareholders will deliver or cause SkyPower to deliver, prior to the Closing, to Acquisitionco, true and complete copies of the charter documents of SkyPower as in effect on the date hereof.

2.02    Capital Stock. The authorized capital stock of SkyPower consists solely
of an unlimited number of shares of Class A Common stock, Class B Common stock, Class C
Common stock, Class D Preference stock, Class E Preference stock, Class F Preference stock,
and Class G Preference stock of SkyPower (collectively, the "**SkyPower Shares**"). The
SkyPower Shares are duly authorized, validly issued, outstanding, fully paid and nonassessable.
Except as disclosed in Section 2.02 of the Disclosure Schedule, there are no outstanding Options
with respect to SkyPower. Neither SkyPower nor any Subsidiary is party to any agreement
pursuant to which either such Person has granted preemptive rights, rights of first refusal,
registration rights and similar rights with respect to the SkyPower Shares or any other shares of
capital stock of SkyPower or any agreement relating to voting of the SkyPower Shares or any
other shares of capital stock of SkyPower.

2.03    Subsidiaries. Section 2.03 of the Disclosure Schedule lists the name of
each Subsidiary and all lines of business in which each Subsidiary is participating or engaged.
Each Subsidiary is duly organized, validly existing and in good standing under the Laws of its
jurisdiction of organization, and has full power and authority to conduct its business as and to the
extent now conducted and to own, use and lease its Assets and Properties. Each Subsidiary is
duly qualified, licensed or admitted to do business and is in good standing in those jurisdictions
specified in Section 2.03 of the Disclosure Schedule, which are the only jurisdictions in which
the ownership, use or leasing of such Subsidiary's Assets and Properties, or the conduct or nature
of its business, makes such qualification, licensing or admission necessary. Section 2.03 of the
Disclosure Schedule lists for each Subsidiary all record owners of the outstanding capital stock
of each Subsidiary and the number of shares held by each such record owner. Except as
disclosed in Section 2.03 of the Disclosure Schedule, all of the outstanding shares of capital
stock of each Subsidiary have been duly authorized and validly issued, are fully paid and
nonassessable, and are owned, beneficially and of record, by SkyPower or the Subsidiaries
wholly owned by SkyPower free and clear of all Liens. Except as disclosed in Section 2.03 of
the Disclosure Schedule, there are no outstanding Options with respect to any Subsidiary. The
name of each director and officer of each Subsidiary on the date hereof, and the position with
such Subsidiary held by each, are listed in Section 2.03 of the Disclosure Schedule. Neither any
Shareholder, SkyPower nor any Subsidiary is party to any agreement pursuant to which any
Shareholder, SkyPower or such Subsidiary has granted preemptive rights, rights of first refusal,
registration rights or similar rights with respect to the capital stock of such Subsidiary or any
other Subsidiary or any agreement relating to voting of shares of capital stock of such Subsidiary
or any other Subsidiary. No Subsidiary has granted any Person rights to cause the registration
for sale under any securities Laws of any shares of capital stock of such Subsidiary. The
SkyPower Shareholders will cause SkyPower to provide Acquisitionco with access to true and
complete copies of the certificate or articles of incorporation and by-laws (or other comparable
corporate charter documents) of each of the Subsidiaries as in effect on the date hereof. Neither
SkyPower nor any of its Subsidiaries, directly or indirectly, owns any capital stock of or other
equity interests in any corporation, partnership or other entity or Person other than the
Subsidiaries or has made any loan or entered into any commitment to purchase equity interests
issued by or lent money to any Person. Pursuant to that certain Exchange Agreement, dated as of
December 23, 2005, by and among SkyPower, SkyPower Wind Energy Fund LP, SkyPower I
GP Inc., and Terra Winds Resources Corp. ("**Terra Winds**"), SkyPower, directly or indirectly
through its Subsidiaries, was granted and currently holds certain exchange rights with respect to
Terra Winds (the "**Exchange Rights**"). Neither SkyPower nor any of its Subsidiaries has sold,

LA1:#6351530v20                                    - 7 -

transferred, granted, waived, assigned or otherwise alienated or incumbered any of the Exchange Rights.

2.04    [Section 2.04 Intentionally Not Used]

2.05    No Conflicts. The execution and delivery by SkyPower and the SkyPower Shareholders of this Agreement do not, and the execution and delivery by SkyPower and the SkyPower Shareholders of the Operative Agreements, the performance by SkyPower and the SkyPower Shareholders of their obligations, including, in the case of the SkyPower Shareholders, obligations to cause SkyPower actions, under this Agreement and such Operative Agreements and the consummation of the transactions contemplated hereby and thereby will not:

(a) conflict with or result in a violation or breach of any of the terms, conditions or provisions of the certificate or articles of incorporation or by-laws (or other comparable organizational documents) of SkyPower or any Subsidiary;

(b) subject to obtaining the consents, approvals and actions, making the filings and giving the notices disclosed in Section 2.05 of the Disclosure Schedule, conflict with or result in a violation or breach of any term or provision of any Law or Order applicable to SkyPower or any Subsidiary or any of their respective Assets and Properties; or

(c) except as disclosed in Section 2.05 of the Disclosure Schedule, (i) conflict with or result in a violation or breach of, (ii) constitute (with or without notice or lapse of time or both) a default under, (iii) require SkyPower or any Subsidiary to obtain any consent, approval or action of, make any filing with or give any notice to any Person as a result or under the terms of, (iv) result in or give to any Person any right of termination, cancellation, acceleration or modification in or with respect to, (v) result in or give to any Person any additional rights or entitlement to increased, additional, accelerated or guaranteed payments under, or (vi) result in the creation or imposition of any Lien upon SkyPower or any Subsidiary or any of their respective Assets and Properties under, any Contract or License to which SkyPower or any Subsidiary is a party or by which any of their respective Assets and Properties is bound, except as would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.

2.06    Governmental Approvals and Filings. No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of SkyPower, any SkyPower Shareholder or any Subsidiary is required in connection with the execution, delivery and performance of this Agreement or any of the Operative Agreements to which any of them is a party or the consummation of the transactions contemplated hereby or thereby.

2.07    Books and Records. The minute books and other similar records of SkyPower and the Subsidiaries as made available to Purchaser prior to the Closing contain a true and complete record, in all material respects, of all action taken at all meetings and by all written consents in lieu of meetings of the stockholders, the Boards of Directors and committees of the Boards of Directors of SkyPower and such Subsidiaries. The stock transfer ledgers and other similar records of SkyPower and the Subsidiaries as made available to Purchaser prior to the Closing accurately reflect all record transfers prior to the Closing in the capital stock of

LA1:#6351530v20                                 - 8 -

SkyPower and such Subsidiaries. Except as set forth in <u>Section 2.07 of the Disclosure Schedule</u>, neither SkyPower nor any Subsidiary has any of its Books and Records recorded, stored, maintained, operated or otherwise wholly or partly dependent upon or held by any means (including any electronic, mechanical or photographic process, whether computerized or not) which (including all means of access thereto and therefrom) are not under the exclusive ownership and direct control of SkyPower or the Subsidiaries.

2.08    <u>Financial Statements</u>. The SkyPower Shareholders will deliver or cause SkyPower to deliver to Acquisitionco prior to the Closing true and complete copies of the following financial statements:

(a) Unaudited consolidated financial statements of SkyPower for the year ended December 31, 2004 and period ended December 31, 2003, including balance sheet, cash flows, shareholders equity and statement of operations and notes thereto;

(b) Draft audited consolidated financial statements of SkyPower for the years ended December 31, 2006 and 2005, including balance sheet, cash flows, shareholders equity and statement of operations and notes thereto with final auditor's report.

All financial statements (i) were prepared in accordance with GAAP applied consistently throughout the periods involved, except as disclosed therein, (ii) fairly present the consolidated financial condition and results of operations of each of SkyPower and its consolidated subsidiaries as of the respective dates thereof and for the respective periods covered thereby, and (iii) were compiled from the Books and Records of each of SkyPower and its consolidated subsidiaries, as applicable, regularly maintained by management and used to prepare the financial statements of each of SkyPower and its consolidated subsidiaries in accordance with the principles stated therein. Each of SkyPower and its subsidiaries have maintained their Books and Records in accordance with reasonable business practices, including the maintenance of an adequate system of internal controls, and in a manner sufficient to permit the preparation of financial statements in accordance with GAAP. The financial condition and results of operations of each Subsidiary are, and for all periods referred to in this <u>Section 2.08</u> have been, consolidated with those of SkyPower.

2.09    <u>Absence of Changes</u>. Except for the execution and delivery of this Agreement and the transactions to take place pursuant hereto on or prior to the Closing Date, since the Audited Financial Statement Date there has not been any SkyPower Material Adverse Effect, or any event or development which, individually or together with other such events, could reasonably be expected to result in a SkyPower Material Adverse Effect. Without limiting the foregoing, except as disclosed in <u>Section 2.09 of the Disclosure Schedule</u>, there has not occurred between the Audited Financial Statement Date and the date hereof:

(i)    any declaration, setting aside or payment of any dividend or other distribution in respect of the capital stock of SkyPower or any Subsidiary not wholly owned by SkyPower, or any direct or indirect redemption, purchase or other acquisition by SkyPower or any Subsidiary of any such capital stock of or any Option with respect to SkyPower or any Subsidiary not wholly owned by SkyPower;

- 9 -

(ii)     any authorization, issuance, sale or other disposition by SkyPower or any Subsidiary of any shares of capital stock of or Option with respect to SkyPower or any Subsidiary, or any modification or amendment of any right of any holder of any outstanding shares of capital stock of or Option with respect to SkyPower or any Subsidiary;

(iii)    (x) any increase in the salary, wages or other compensation of any officer, employee or consultant of SkyPower or any Subsidiary; (y) any establishment or modification of (A) targets, goals, pools or similar provisions in respect of any fiscal year under any Benefit Plan, employment-related Contract or other employee compensation arrangement or (B) salary ranges, increase guidelines or similar provisions in respect of any Benefit Plan, employment-related Contract or other employee compensation arrangement; or (z) any adoption, entering into or becoming bound by any Benefit Plan, employment-related Contract or collective bargaining agreement, or amendment, modification or termination (partial or complete) of any Benefit Plan, employment-related Contract or collective bargaining agreement, except to the extent required by applicable Law and, in the event compliance with legal requirements presented options, only to the extent the option which SkyPower or Subsidiary reasonably believed to be the least costly was chosen;

(iv)    (A) incurrences by SkyPower or any Subsidiary of any Liability or Indebtedness with respect to which the obligations of SkyPower or its Subsidiaries exceed $50,000, or (B) any voluntary purchase, cancellation, prepayment or complete or partial discharge in advance of a scheduled payment date with respect to, or waiver of any right of SkyPower or any Subsidiary under, any Indebtedness of or owing to SkyPower or any Subsidiary;

(v)     any physical damage, destruction or other casualty loss (whether or not covered by insurance) affecting any of the plant, real or personal property or equipment of SkyPower or any Subsidiary in an aggregate amount exceeding $50,000;

(vi)    other than as may be required as a result of changes in GAAP, any material change in (x) any pricing, investment, accounting, financial reporting, inventory, credit, allowance or Tax practice or policy of SkyPower or any Subsidiary, or (y) any method of calculating any bad debt, contingency or other reserve of SkyPower or any Subsidiary for accounting, financial reporting or Tax purposes, or any change in the fiscal year of SkyPower or any Subsidiary;

(vii)   other than as may be required as a result of changes in GAAP, any write-off or write-down of or any determination to write off or write down any of the Assets and Properties of SkyPower or any Subsidiary outside the ordinary course of business consistent with past practice;

(viii)  any acquisition or disposition of, or incurrence of a Lien (other than a Permitted Lien) on, any Assets and Properties of SkyPower or any Subsidiary, other than in the ordinary course of business consistent with past practice;

(ix)    any (x) amendment of the certificate or articles of incorporation or by-laws (or other comparable corporate charter documents) of SkyPower or any Subsidiary,

LA1:#6351530v20                               - 10 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

(y) recapitalization, reorganization, liquidation or dissolution of SkyPower or any Subsidiary or (z) merger or other business combination involving SkyPower or any Subsidiary and any other Person;

(x)     any entering into, amendment, modification, termination (partial or complete) or granting of a waiver under or giving any consent with respect to (A) any Contract which is required (or had it been in effect on the date hereof would have been required) to be disclosed in Section 2.18 of the Disclosure Schedule or (B) any material License held by SkyPower or any Subsidiary;

(xi)     capital expenditures or commitments for additions to property, plant or equipment of SkyPower and/or the Subsidiaries constituting capital assets outside the ordinary course of business consistent with past practice;

(xii)     any commencement or termination by SkyPower or any Subsidiary of any line of business;

(xiii)     any transaction by SkyPower or any Subsidiary with SkyPower, any SkyPower Shareholder, officer, director or Affiliate (other than SkyPower or any Subsidiary) of SkyPower or any Subsidiary (A) outside the ordinary course of business consistent with past practice or (B) other than on an arm's-length basis, other than pursuant to any Contract in effect on the Audited Financial Statement Date and disclosed pursuant to Section 2.18 of the Disclosure Schedule;

(xiv)     an y disposition or lapse of any rights SkyPower or any of its Subsidiaries has under Intellectual Property or disposition of or disclosure to any Person of any trade secret, formula, process, know-how, software, or other Intellectual Property not theretofore a matter of public knowledge;

(xv)     any other adverse change in any rights SkyPower or any of its Subsidiaries has under or to Intellectual Property, other than the expiration thereof in accordance with its terms as described in Section 2.09 of the Disclosure Schedule;

(xvi)     the cre ation of any new Subsidiary;

(xvii)     any entering into of a Contract to do or engage in any of the foregoing after the date hereof; or

(xviii)     any other transaction involving or development affecting SkyPower or any Subsidiary outside the ordinary course of business consistent with past practice.

2.10     No Undisclosed Liabilities.  Except as reflected or reserved against in the balance sheet included in the Audited Financial Statements or in the notes thereto, there are no Liabilities against, relating to or affecting SkyPower or any Subsidiary or any of their respective Assets and Properties.

LA1:#6351530v20                              - 11 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

2.11   Taxes. Except as set forth in Section 2.11 of the Disclosure
Schedule (with references to the applicable paragraph below):

(a) SkyPower and each Subsidiary have filed all Tax Returns required to be filed
by applicable Law. All Tax Returns were (and, as to Tax Returns not filed as of the date
hereof, will be) true, complete and correct and filed on a timely basis. SkyPower and each
Subsidiary (i) has paid all Taxes that are due, or claimed or asserted by any taxing authority
to be due, from SkyPower and such Subsidiary for the periods covered by the Tax Returns or
(ii) has duly and fully provided reserves adequate to pay all Taxes in accordance with GAAP;

(b) SkyPower and each Subsidiary have established and will maintain on its
Books and Records reserves adequate to pay all Taxes not yet due and payable and such
reserves are clearly identified as reserves for current Taxes;

(c) there are no Liens for Taxes upon the assets of SkyPower (or any Subsidiary)
except Permitted Liens;

(d) SkyPower and each Subsidiary have complied and will comply with all
applicable Laws, rules, and regulations relating to the payment and withholding of Taxes and
have, within the time and in the manner prescribed by Law, withheld from employee wages and
paid over to the proper Governmental or Regulatory Authority all required amounts;

(e) neither SkyPower nor any Subsidiary has requested (and no request has been
made on its behalf) any extension of time within which to file any Tax Return. Neither
SkyPower nor any Subsidiary has executed any outstanding waivers or comparable consents
regarding the application of the normal reassessment period as defined in the Tax Act ("**normal
reassessment period**") for any Taxes or Tax Returns (and no extensions have been executed on
their behalf). The normal reassessment period for the assessment of all Taxes has expired for
all applicable Tax Returns of SkyPower and each of its Subsidiaries through the date hereof.
Tax Returns for SkyPower and each of its Subsidiaries have been examined by the appropriate
taxing authorities for all periods through the date hereof. No deficiency for any Taxes has been
suggested, proposed, asserted or assessed against SkyPower or any Subsidiary that has not been
resolved and paid in full;

(f) no audits or other administrative proceedings or court proceedings are
presently pending or, to the Knowledge of any SkyPower Shareholder, threatened with regard
to any Taxes or Tax Returns of SkyPower or any Subsidiary;

(g) no power of attorney currently in force has been granted by SkyPower or any
Subsidiary concerning any Tax matter;

(h) neither SkyPower nor any Subsidiary has received any written ruling of a
taxing authority relating to Taxes, or any other written and legally binding agreement with a
taxing authority relating to Taxes;

(i) no ag reement as to indemnification for, contribution to, or payment of Taxes
exists between any SkyPower or any Subsidiary, on the one hand, and any other person, on the
other including without limitation SkyPower, including pursuant to any Tax sharing agreement,

LA1:#6351530v20                                         - 12 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

lease agreement, purchase or sale agreement, partnership agreement or any other agreement. Neither SkyPower or any Subsidiary has any liability for Taxes of any person, or as a transferee or successor, by contract or otherwise;

(j) the Sk yPower Shareholders have provided Acquisitionco with access to, or have caused SkyPower to provide Acquisitionco with access to, (or, in the case of Tax Returns to be filed on or before the Closing Date, will make available) complete and accurate copies of all Tax Returns and associated work papers filed by or on behalf of SkyPower and the Subsidiaries for all taxable years ending on or prior to the Closing Date;

(k) no jurisdiction in which SkyPower or any Subsidiary has not filed a specific Tax Return has asserted that SkyPower or such Subsidiary is required to file such Tax Return in such jurisdiction. Section 2.11 of the Disclosure Schedule lists all jurisdictions and nations in which SkyPower or any Subsidiary files any Tax Returns and indicates in the case of income or franchise Tax filings whether such filings are made on a consolidated, combined or unitary basis and the allocation factors for the most recent taxable year for which filings have been made;

(l) neither Sk yPower nor any Subsidiary has claimed, nor will it claim in any Tax Return for a period ending at or before the Closing Date, any reserve under any one or more of subparagraph 40(1)(a)(iii), paragraphs 20(1)(m) or 20(1)(n) of the Tax Act or any equivalent provincial provision, if such amount could be included in the income of SkyPower or any Subsidiary for any period ending after the Closing Date.

(m)SkyPower and each Subsidiary has duly and timely collected all amounts on account of GST and any other sales or transfer taxes, including goods and services, harmonized sales and provincial or territorial sales taxes, required by Law to be collected by it and has duly and timely remitted to the appropriate Authority any such amounts required by Law to be remitted by it.

(n) neither SkyPower nor any Subsidiary has, either directly or indirectly, transferred property to or acquired property from a Person with whom SkyPower or such Subsidiary was not dealing at arm's length for purposes of the Tax Act for consideration other than consideration equal to the fair market value of the property at the time of disposition or acquisition.

(o) neither SkyPower nor any Subsidiary is a party to any Tax sharing, tax allocation agreement or similar agreement or arrangement pursuant to which it will have any obligation to make payments on or after the Closing Date.

(p) SkyPower and each Subsidiary is duly registered under subdivision (d) of Division V of Part IX of the ETA with respect to the goods and services tax and harmonized sales tax and, as applicable, under Division I of Chapter VIII of Title I of the *Quebec Sales Tax Act* with respect to the Quebec sales tax.

(q) neither SkyPower nor any Subsidiary will at any time be deemed to have a capital gain pursuant to subsection 80.03(2) of the Tax Act as a result of any transaction or event taking place in any taxation year ending on or before the Closing Date.

LA1:#6351530v20

- 13 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

(r) there are no circumstances existing which could result in the application of
section 78 of the Tax Act or any equivalent provincial legislation to SkyPower or any
Subsidiary.

(s) SkyPower and each Subsidiary has non capital losses and net operating loss
carryforwards and tax credit carryforwards available to offset future income in the amounts and
with the expiration dates set forth on Section 2.11 of the Disclosure Schedule. None of the net
operating loss carryforwards are subject to a separate return limitation year limitation.

(t) none of the Class A Common shares or Class B Common shares of
SkyPower are, or will be at any time up to and including Closing, "taxable preferred shares", as
defined in the Tax Act.

2.12   Legal Proceedings. Except as disclosed in Section 2.12 of the Disclosure
Schedule (with paragraph references corresponding to those set forth below):

(a) there are no Actions or Proceedings pending or, to the Knowledge of any
SkyPower Shareholder, threatened against, relating to or affecting SkyPower or any Subsidiary
or any of their respective Assets and Properties;

(b) there are no facts or circumstances Known to any SkyPower Shareholder that
could reasonably be expected to give rise to any such Action or Proceeding, except as would
not, individually or in the aggregate, reasonably be expected to have a SkyPower Material
Adverse Effect; and

(c) there are no Orders outstanding against SkyPower or any Subsidiary.

2.13   Compliance with Laws. Prior to the Closing, Acquisitionco will have had
access to all responses of counsel for SkyPower and the Subsidiaries to auditors' requests for
information delivered in connection with the Audited Financial Statements (together with any
updates provided by such counsel) regarding Actions or Proceedings pending or threatened
against, relating to or affecting SkyPower or any Subsidiary. SkyPower and each of its
Subsidiaries have complied in a timely manner with all Laws and Orders that materially affect
the Business or Condition of SkyPower and no notice, charge, claim, action or assertion has been
received by SkyPower or any of its Subsidiaries or has been filed, commenced or, to the
Knowledge of any SkyPower Shareholder, threatened against SkyPower or any of its
Subsidiaries alleging any violation of any of the foregoing.

2.14   Benefit Plans. Section 2.14 of the Disclosure Schedule contains a true and
complete list of each Benefit Plan. Neither SkyPower nor any Subsidiary has scheduled or
agreed upon future increases of benefit levels (or creations of new benefits) with respect to any
Benefit Plan, and no such increases or creation of benefits have been proposed, made the subject
of representations to employees or requested or demanded by employees under circumstances
which make it reasonable to expect that such increases will be granted. Except as disclosed in
Section 2.14 of the Disclosure Schedule, no loan is outstanding between SkyPower or any
Subsidiary and any employee.

LA1:#6351530v20                                  - 14 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

(a) Acquisitionco has been given access to complete and correct copies of the following documents prior to the Closing: (i) all Benefit Plans and any predecessor plans referred to therein, any related trust agreements, and service provider agreements, insurance contracts or agreements with investment managers, including without limitation, all amendments thereto; (ii) current summary plan descriptions of each Benefit Plan; (iii) any applicable tax Law determination with respect to any Benefit Plan; (iv) the two most recent financial statements prepared with respect to each Benefit Plan with respect to which such statements are prepared; and (v) the two most recent actuarial reports of the qualified actuary of any Benefit Plan with respect to which actuarial valuations are conducted.

(b) Neither SkyPower nor any Subsidiary maintains or is obligated to provide benefits under any life, medical or health plan which provides benefits to retirees or other terminated employees. Neither SkyPower, any Subsidiary, nor any other corporation or organization controlled by or under common control with any of the foregoing has at any time contributed to any "multiemployer plan."

(c) Each of the Benefit Plans is, and its administration is and has been since inception, in all material respects in compliance with, and has been administered in compliance with, and neither SkyPower nor any Subsidiary has received any claim or notice that any such Benefit Plan is not in compliance with, the documentation referred to in Section 2.14(a) and all applicable Laws and Orders. Each Benefit Plan intended to provide for the deferral of income, the reduction of salary or other compensation or to afford other Tax benefits complies with the requirements of the applicable provisions of the Laws required in order to provide such Tax benefits.

(d) Neither SkyPower nor any Subsidiary is in default in performing any of its contractual obligations under any of the Benefit Plans or any related trust agreement or insurance contract. All contributions and other payments required to be made by SkyPower or any Subsidiary to any Benefit Plan with respect to any period ending before or at or including the Closing Date have been made or reserves adequate for such contributions or other payments have been or will be set aside therefor and have been or will be reflected in Financial Statements in accordance with GAAP. There are no material outstanding liabilities of, or related to, any Benefit Plan, other than liabilities for benefits to be paid to participants in such Benefit Plan and their beneficiaries in accordance with the terms of such Benefit Plan.

(e) No benefit under any Benefit Plan, including, without limitation, any severance or parachute payment plan or agreement, will be established or become accelerated, vested, funded or payable by reason of any transaction contemplated under this Agreement.

(f) No Benefit Plan of SkyPower or any Subsidiary is a Pension Plan.

(g) There are no pending or, to the Knowledge of any SkyPower Shareholder, threatened claims by or on behalf of any Benefit Plan, by any Person covered thereby, or otherwise, which allege any violation of Law which could reasonably be expected to result in liability on the part of SkyPower, any Subsidiary or any fiduciary of any such Benefit Plan, nor is there any basis for such a claim, except as would not, individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.

2.15    Real Property. Section 2.15 of the Disclosure Schedule contains a true
and correct list as of the Effective Date of (i) each parcel of real property leased (which, for the
purposes of this Section 2.15, includes any sub-lease) by SkyPower or any Subsidiary (as lessor
or lessee), (ii) each parcel of real property, including, without limitation, the Optioned Lands, in
which SkyPower or any Subsidiary has an option or similar right to acquire an interest in real
property, including, without limitation, the Options to Lease (including information as to the
grantor of each Option to Lease and the term of each Option to Lease); and (iii) to the
Knowledge of SkyPower, all Liens (other than Permitted Liens) relating to or affecting any
parcel of real property referred to in clauses (i) and (ii). Since the Effective Date, neither
SkyPower nor any Subsidiary has entered into any agreement relating to or affecting any parcel
of real property referred to in clauses (i) and (ii), nor has either SkyPower or any Subsidiary
purchased, leased or otherwise gained interest in any real property.

(a)    Neither SkyPower nor any Subsidiary owns, directly or indirectly, any real
property.

(b)    The SkyPower Shareholders have no reason to believe that any of the leases
included in Section 2.15 of the Disclosure Schedule are not enforceable against the lessors
thereunder (except to the extent provided in Section 2.15 of the Disclosure Schedule.) The
SkyPower Shareholders have no reason to believe that the Options to Lease described in
Section 2.15 of the Disclosure Schedule can not be exercised (individually or in the aggregate)
such that SkyPower is not reasonably likely to be able to complete development of any of the
Development Projects (except to the extent provided in Section 2.15 of the Disclosure
Schedule.) The SkyPower Shareholders have no reason to believe that the counterparties under
the leases of Options to Lease do not have good and marketable title in fee simple to the
property subject thereto, free and clear of all Liens, including, without limitation, any prior
options, which could interfere in any material respect with SkyPower's ability to complete the
Development Projects (except to the extent provided in Section 2.15 of the Disclosure
Schedule.)

(c)    Except as disclosed in Section 2.15 of the Disclosure Schedule, to the
Knowledge of the SkyPower Shareholders, the improvements on the real property identified in
Section 2.15 of the Disclosure Schedule and necessary for any project described in Section 2.28
of the Disclosure Schedule are in good operating condition and in a state of good maintenance
and repair, ordinary wear and tear excepted, are adequate and suitable for the purposes for
which they are presently being used and, to the Knowledge of any SkyPower Shareholder, there
are no condemnation or appropriation proceedings pending or threatened against any of such
real property or the improvements thereon.

(d)    Neither SkyPower nor any Subsidiary has any obligation or liability in
respect of real property that was leased or optioned in connection with the Business which is no
longer occupied or which was disposed of prior to the date hereof.

2.16    Tangible Personal Property; Investment Assets. SkyPower or a Subsidiary
is in possession of and has good title to, or has valid leasehold interests in or valid rights under
Contract to use, all tangible personal property used in or reasonably necessary for the conduct of

LA1:#6351530v20                                         - 16 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

their business, including all tangible personal property reflected on the balance sheet included in the Unaudited Financial Statements and tangible personal property acquired since the Unaudited Financial Statement Date other than property disposed of since such date in the ordinary course of business consistent with past practice. All such tangible personal property is free and clear of all Liens, other than Permitted Liens and Liens disclosed in Section 2.16 of the Disclosure Schedule, and is in good working order and condition, ordinary wear and tear excepted, and its use complies in all material respects with all applicable Laws.

(a) Section 2.16 of the Disclosure Schedule describes each Investment Asset owned by SkyPower or any Subsidiary on the date hereof. Except as disclosed in Section 2.16 of the Disclosure Schedule, all such Investment Assets are owned by SkyPower or a Subsidiary free and clear of all Liens other than Permitted Liens.

2.17    Intellectual Property Rights.  SkyPower has developed certain water pump technology described on Section 2.17 of the Disclosure Schedule (the "**Water Pump Technology**," and together with all trade secrets and confidential business information of SkyPower and its Subsidiaries, the "**SkyPower Confidential Technology and Information**") and is seeking to patent the Water Pump Technology. Once a patent is issued, SkyPower or a Subsidiary will have all right, title and interest in the Water Pump Technology. SkyPower is seeking registration in Canada of the word "SkyPower" as a trademark, and to the SkyPower Shareholders' Knowledge there is no reason why such registration might be denied. Except as hereinbefore set forth, neither SkyPower nor any Subsidiary has licensed or otherwise allowed any other Person to use the Water Pump Technology. Neither SkyPower nor any Subsidiary has interests in, nor any contractual rights or license to use, any Intellectual Property and no such rights are necessary or advisable in the conduct of the business of SkyPower or any Subsidiary.

(a) With respect to each item of SkyPower Confidential Technology and Information:

(i)    the item is not subject to any outstanding injunction, judgment, order, decree, ruling or charge, nor, to the Knowledge of any SkyPower Shareholder, is any of the foregoing threatened;

(ii)    no claim or investigation is pending or, to the Knowledge of any SkyPower Shareholder, threatened which challenges the legality, validity, enforceability, use or ownership of the item;

(iii)    none of SkyPower or any of the Subsidiaries has agreed to indemnify any Person for or against any interference, infringement, misappropriation or other violation with respect to the item;

(iv)    none of SkyPower or any of the Subsidiaries has taken, or is aware of nor is any SkyPower Shareholder aware of, any actions, including a sale or offer for sale, the disclosure of which could lead to the invalidity of any such item; and

(v)    the SkyPower Shareholders have delivered or caused SkyPower to deliver to Acquisitionco prior to the Closing documentation with respect to any invention, process, design, computer program or other know-how or trade secret included in or represented

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

by the item, which documentation is accurate in all material respects and reasonably sufficient in detail and content to identify and explain such invention, process, design, computer program or other know-how or trade secret and to facilitate its full and proper use without reliance on the special knowledge or memory of any Person, except, in each case, to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.

(b) SkyPower and the Subsidiaries have taken reasonable security measures to protect the secrecy, confidentiality and value of their SkyPower Confidential Technology and Information, including without limitation, any trade secrets.

(c) No claim has been threatened or asserted by any Person that SkyPower or any of the Subsidiaries has interfered with, infringed upon, misappropriated or otherwise violated any Intellectual Property rights of any third party, and no claim has been asserted by any alleging any such interference, infringement, misappropriation or violation (including any claim that SkyPower or any Subsidiary must license or refrain from using any Intellectual Property rights of any third party), and to the Knowledge of any SkyPower Shareholder, there is no valid basis for any such claim, except, to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect. To the Knowledge of any SkyPower Shareholder, no third party has interfered with, infringed upon, misappropriated or otherwise violated any rights of SkyPower or any of the Subsidiaries with respect to SkyPower Confidential Technology and Information, except, to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect. The SkyPower Shareholders have made available or have caused SkyPower to make available to Acquisitionco all infringement and validity studies, including opinions of counsel, prepared by or on behalf of any SkyPower or any of the Subsidiaries.

2.18   Contracts. Section 2.18(a) of the Disclosure Schedule (with paragraph references corresponding to those set forth below) contains a true and complete list of each of the following Contracts or other arrangements (Acquisitionco having been given access to true and complete copies or, if none, reasonably complete and accurate written descriptions of which, together with all amendments and supplements thereto and all waivers of any terms thereof prior to the Closing), to which SkyPower or any Subsidiary is a party or by which any of their respective Assets and Properties is bound:

(i)   (A) all Contracts (excluding Benefit Plans) providing for a commitment of employment or consultation services for a specified or unspecified term or otherwise relating to employment or the termination of employment; and (B) any written or unwritten representations, commitments, promises, communications or courses of conduct (excluding Benefit Plans and any such Contracts referred to in clause (A)) involving an obligation of SkyPower or any Subsidiary to make payments in any year, other than with respect to salary or incentive compensation payments in the ordinary course of business, to any employee exceeding $35,000 or any group of employees exceeding $100,000 in the aggregate;

(ii)     all Contracts with any Person containing any exclusivity provision
or covenant prohibiting or limiting the ability of SkyPower or any Subsidiary to engage in any
business activity or compete with any Person or prohibiting or limiting the ability of any Person
to compete with SkyPower or any Subsidiary;

(iii)     all shareholder agreements and all partnership, joint venture or
other similar Contracts with any Person;

(iv)     all Contracts relating to Indebtedness of SkyPower or any
Subsidiary or to preferred stock issued by SkyPower or any Subsidiary;

(v)     all Contracts with consultants, advisors, salesmen, distributors,
dealers, manufacturer's representatives, sales agencies, franchisees or customers that are not
cancelable by SkyPower or any Subsidiary or notice of not more than thirty (30) days and
without liability, penalty or premium, and all Contracts providing for the payment of any bonus
or commission based on sales or earnings;

(vi)     all Contracts relating to (A) the future disposition or acquisition of
any Assets and Properties, other than dispositions or acquisitions in the ordinary course of
business consistent with past practice, and (B) any merger or other business combination;

(vii)     all Contracts between or among SkyPower or any Subsidiary on
the one hand, and any officer, director or Affiliate of SkyPower, on the other hand, and all
Contracts between any one or more of the foregoing;

(viii)     all collective bargaining or similar labor Contracts;

(ix)     all Contracts that (A) limit or contain restrictions on the ability of
SkyPower or any Subsidiary to declare or pay dividends on, to make any other distribution in
respect of or to issue or purchase, redeem or otherwise acquire its capital stock, to incur
Indebtedness, to incur or suffer to exist any Lien, to purchase or sell any Assets and Properties,
to change the lines of business in which it participates or engages or to engage in any merger,
consolidation or other business combination or (B) require SkyPower or any Subsidiary to
maintain specified financial ratios or levels of net worth or other indicia of financial condition;

(x)     all other Contracts that (A) involve the purchase or sale of
equipment (including supply and warranty of turbines), real property, construction (including
turbine installation and balance of plant), and project operations and service; or that (B)
(i) involve the payment or potential payment, pursuant to the terms of any such Contract, by or to
SkyPower or any Subsidiary of more than $250,000 at one time or in any twelve (12) month
period or (ii) cannot be terminated within thirty (30) days after giving notice of termination
without resulting in any material cost or penalty to SkyPower or any Subsidiary;

(xi)     all Contracts with any Band; and

(xii)     all Contracts, including licenses, sublicenses, agreements and
permissions, by which SkyPower or any of the Subsidiaries uses the Intellectual Property owned
by a third party or a third party uses SkyPower Confidential Technology and Information.

LA1:#6351530v20                                    - 19 -

(b) Except as disclosed in <u>Section 2.18 of the Disclosure Schedule</u> neither SkyPower, any Subsidiary nor, to the Knowledge of any SkyPower Shareholder, any other party to such Contract is, or has received notice of termination or notice that it is, in violation or breach of or default under any such Contract (or with notice or lapse of time or both, would be in violation or breach of or default under any such Contract) in any material respect, except to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.. There are no outstanding claims for indemnification under any such Contract.

2.19   Licenses. <u>Section 2.19 of the Disclosure Schedule</u> contains a true and complete list of all Licenses used in and material, individually or in the aggregate, to the business or operations of SkyPower or any Subsidiary (and all pending applications for any such Licenses), setting forth the grantor, the grantee, the function and the expiration and renewal date of each. Prior to the Closing, The SkyPower Shareholders have delivered to Acquisitionco true and complete copies of all such Licenses. Except as disclosed in <u>Section 2.19 of the Disclosure Schedule</u>:

(i)   SkyPower and each Subsidiary owns or validly holds all Licenses that are material, individually or in the aggregate, to its business or operations; and

(ii)   neither SkyPower nor any Subsidiary is, or has received any notice that it is, in default (or with the giving of notice or lapse of time or both, would be in default) under any such License, except, to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.

2.20   Insurance. <u>Section 2.20 of the Disclosure Schedule</u> contains a true and complete list of all liability, property, workers' compensation, directors' and officers' liability and other insurance policies currently in effect that insure the business, operations or employees of SkyPower or any Subsidiary or affect or relate to the ownership, use or operation of any of the Assets and Properties of SkyPower or any Subsidiary and that (i) have been issued to SkyPower or any Subsidiary or (ii) have been issued to any Person (other than SkyPower or any Subsidiary) for the benefit of SkyPower or any Subsidiary. The insurance coverage provided by any of the policies described in clause (i) above will not terminate or lapse by reason of the transactions contemplated by this Agreement. Each policy listed in <u>Section 2.20 of the Disclosure Schedule</u> is valid and binding and in full force and effect, no premiums due thereunder have not been paid and neither SkyPower, any Subsidiary nor the Person to whom such policy has been issued has received any notice of cancellation or termination in respect of any such policy or is in default thereunder. The insurance policies listed in <u>Section 2.20 of the Disclosure Schedule</u>, in light of the respective business, operations and Assets and Properties of SkyPower and the Subsidiaries, are in amounts and have coverages that are reasonable and customary for Persons engaged in such businesses and operations and having such Assets and Properties and are placed with insurers that are reputable and, to the Knowledge of any SkyPower Shareholder, financially sound. Neither SkyPower, any Subsidiary nor the Person to whom such policy has been issued has received notice that any insurer under any policy referred to in this <u>Section 2.20</u> is denying liability with respect to a claim thereunder or defending under a reservation of rights clause.

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

2.21    Affiliate Transactions. Except as disclosed in Section 2.21 of the
Disclosure Schedule, (i) there are no Liabilities between SkyPower or any Subsidiary, on the one
hand, and any officer, director or Affiliate (other than SkyPower or any Subsidiary) of SkyPower
or a Subsidiary, on the other, (ii) no such officer, director or Affiliate provides or causes to be
provided any assets, services or facilities to SkyPower or any Subsidiary, (iii) neither SkyPower
nor any Subsidiary provides or causes to be provided any assets, services or facilities to any such
officer, director or Affiliate and (iv) neither SkyPower nor any Subsidiary beneficially owns,
directly or indirectly, any Investment Assets issued by any such officer, director or Affiliate.
Except as disclosed in Section 2.21 of the Disclosure Schedule, each of the Liabilities and
transactions listed in Section 2.21 of the Disclosure Schedule was incurred or engaged in, as the
case may be, on an arm's-length basis. Except as disclosed in Section 2.21 of the Disclosure
Schedule, since the Audited Financial Statement Date, all settlements of intercompany Liabilities
between SkyPower or any Subsidiary, on the one hand, and any such officer, director or
Affiliate, on the other, have been made, and all allocations of intercompany expenses have been
applied, in the ordinary course of business consistent with past practice.

2.22    Employees; Labor Relations.

(a) Except as disclosed in Section 2.22 of the Disclosure Schedule, no employee
of SkyPower or any Subsidiary is presently a member of a collective bargaining unit and, to the
Knowledge of any SkyPower Shareholder, there are no threatened or contemplated attempts to
organize for collective bargaining purposes any of the employees of SkyPower or any
Subsidiary. Since the organization of SkyPower, there has been no work stoppage, strike or
other concerted action by employees of SkyPower or any Subsidiary. During that period,
SkyPower and the Subsidiaries have complied in all material respects with all applicable Laws
relating to the employment, including, without limitation those relating to wages, hours and
collective bargaining;

(b) Section 2.22 of the Disclosure Schedule contains a complete list of all
employees of SkyPower and each Subsidiary, as well as their length of service, salary and other
compensation (other than pursuant to the Benefit Plans listed on the Disclosure Schedule); and
(ii) a complete list of all employees on leave, the reason for leave and an expected date of
return. SkyPower has not received any information that would lead it to believe that any of
such Persons will or may cease to be employees for any reason because of the consummation of
the transactions contemplated by this Agreement;

(c) There are no written employment contracts with any employees of SkyPower
or any Subsidiary and there are no employment contracts with employees which are not
terminable on the giving of reasonable notice in accordance with applicable Law;

(d) All material liabilities to employees of SkyPower and each Subsidiary have
or shall have been paid or accrued to the Closing Date in respect of remittance and assessments
in respect of any Statutory Plan for income tax and any other employment related legislation,
accrued wages, taxes, salaries and commissions. There are no material outstanding, or, to the
knowledge of SkyPower or any Subsidiary, pending or threatened assessments, actions, claims,
orders, prosecutions or suits against SkyPower or any Subsidiary or its directors or officers
pursuant to or under any applicable rules, regulations, orders, Statutory Plans or applicable

LA1:#6351530v20                                      - 21 -

Law, including unemployment insurance, employer health tax, employment standards, labour
relations, occupational health and safety, human rights, workers' compensation and pay equity;

(e)  SkyPower and each Subsidiary is in compliance in all material respects with
all applicable Law respecting employment, employment practices and standards, terms and
conditions of employment, wages and hours, occupational health and safety, human rights,
labour relations, pay equity and workers compensation; and

(f)  All accruals for vacation pay, premiums for employment insurance, health
premiums, Canada Pension Plan premiums, all other Statutory Plans, accrued wages, salaries,
bonuses and commissions up to the Date of Closing have either been paid in full by SkyPower
and each Subsidiary or have been reflected in their books and records.

2.23    Environmental Matters.  Each of SkyPower and the Subsidiaries has
obtained all Licenses which are required under applicable Environmental Laws in connection
with the conduct of the business or operations of SkyPower or such Subsidiary.  Each of such
Licenses is in full force and effect and each of SkyPower and the Subsidiaries is in compliance in
all material respects with the terms and conditions of all such Licenses and with all applicable
Environmental Laws.  In addition:

(a)  no Order has been issued, no Environmental Claim has been filed, no penalty
has been assessed and no investigation or review is pending or, to the Knowledge of any
SkyPower Shareholder, threatened by any Governmental or Regulatory Authority with respect
to any alleged failure by SkyPower or any Subsidiary to have any License required under
applicable Environmental Laws in connection with the conduct of the business or operations of
SkyPower or any of the Subsidiaries or with respect to any generation, treatment, storage,
recycling, transportation, discharge, disposal or Release of any Hazardous Material generated
by SkyPower or any Subsidiary, and, to the Knowledge of any SkyPower Shareholder, there are
no facts or circumstances in existence which could reasonably be expected to form the basis for
any such Order, Environmental Claim, penalty or investigation;

(b)  neither SkyPower nor any Subsidiary owns, operates or leases a treatment,
storage or disposal facility requiring a permit under any resource conservation or other Laws;
and, without limiting the foregoing, (i) no polychlorinated biphenyl is or has been present,
(ii) no asbestos or asbestos-containing material is or has been present, (iii) there are no
underground storage tanks or surface impoundments for Hazardous Materials, active or
abandoned, and (iv) no Hazardous Material has been Released in a quantity reportable under, or
in violation of, any Environmental Law or otherwise Released, in the cases of clauses (i)
through (iv), at, on or under any site or facility now or previously owned, operated or leased by
SkyPower or any Subsidiary or, to the Knowledge of any SkyPower Shareholder, at, on or
under any Optioned Lands;

(c)  no Hazardous Material generated by SkyPower or any Subsidiary has been
recycled, treated, stored, disposed of or Released by SkyPower or any Subsidiary at any
location;

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

(d) no Liens have arisen under or pursuant to any Environmental Law on any site or facility owned, operated or leased by SkyPower or any Subsidiary, or, to the Knowledge of any SkyPower Shareholder, on any Optioned Lands, and no federal, provincial or local Governmental or Regulatory Authority action has been taken or, to the Knowledge of any SkyPower Shareholder, is in process that could subject any such site or facility to such Liens, and neither SkyPower nor any Subsidiary would be required to place any notice or restriction relating to the presence of Hazardous Materials at any site or facility owned by it or, to the Knowledge of any SkyPower Shareholder, on any Optioned Lands, in any deed to the real property on which such site or facility is located; and

(e) there have been no environmental investigations, studies, audits, tests, reviews or other analyses conducted by, or that are in the possession of, SkyPower or any Subsidiary in relation to any site or facility now or previously owned, operated or leased by SkyPower or any Subsidiary or on any Optioned Lands which have not been delivered to Acquisitionco prior to the Closing, except, in each case, to the extent that would not individually or in the aggregate, reasonably be expected to have a SkyPower Material Adverse Effect.

2.24    No Powers of Attorney. Neither SkyPower nor any Subsidiary has any powers of attorney or comparable delegations of authority outstanding.

2.25    Accounts Receivable; Accounts Payable. The accounts and notes receivable of SkyPower and the Subsidiaries reflected on the balance sheet included in the Unaudited Financial Statements, and all accounts and notes receivable arising subsequent to the Unaudited Financial Statement Date, (i) arose from bona fide sales transactions in the ordinary course of business and are payable on ordinary trade terms, (ii) are not subject to any valid set-off or counterclaim, (iii) do not represent obligations for goods sold on consignment, on approval or on a sale-or-return basis or subject to any other repurchase or return arrangement, (iv) are collectible in the ordinary course of business consistent with past practice in the aggregate recorded amounts thereof, net of any applicable reserve reflected in the balance sheet included in the Unaudited Financial Statements, and (v) are not the subject of any Actions or Proceedings brought by or on behalf of SkyPower or any Subsidiary.

2.26    Brokers; Structuring Fees. Except as provided in Section 6.12 hereof, and except for an aggregate amount not to exceed U.S.$6 million in respect of Marathon Capital and Genuity Capital which will be paid at Closing by SkyPower, there are no fees, commissions and expenses due to any Person for a structuring fee, finder's fee, brokerage commission or similar payment with respect to the Transaction.

2.27    Propriety of Past Payments. No payment has been made by or on behalf of SkyPower or any of its Subsidiaries with the understanding that any part of such payment is to be used for any purpose other than that described in the documents supporting such payment, and neither SkyPower nor any of its Subsidiaries, any director, officer, employee or agent of SkyPower or any of its Subsidiaries or any other Person associated with or acting for or on behalf of SkyPower and any of its Subsidiaries has, directly or indirectly, made any illegal contribution, gift, bribe, rebate, payoff, influence payment, kickback or other payment to any Person, private or public, regardless of form, whether in money, property or services, to obtain

any benefit for SkyPower or any of its Subsidiaries, or any of their Affiliates in violation of any
federal, provincial, local, municipal, foreign, international, multinational or other administrative
statute, regulation, order, ordinance, treaty or Law. Neither SkyPower nor any of its Subsidiaries
has accepted or received any unlawful contribution, payment, gift, kickback, expenditure or other
item of value.

2.28    Development Projects. Section 2.28 of the Disclosure Schedule describes
the wind and solar projects currently in development by SkyPower and its Subsidiaries (the
"**Development Projects**") and includes a summary of each Development Project. There is no
fact or circumstance currently known or reasonably foreseeable (based on the information
currently available to the SkyPower Shareholders) that is likely to cause any Development
Project not to achieve its respective schedule or to exceed its expected development budget, as
such budget was delivered to Purchaser via electronic mail on May 29, 2007 at 2:40am eastern
standard time in a file labeled "SkyPower Corp_Monthly Budget_May 23_07v3.xls", except as
set out in Section 2.28 of the Disclosure Schedule. To the Knowledge of the SkyPower
Shareholders, the plans and budget for each Development Project are adequate to see such
project through to completion. Except as set forth on Section 2.28 of the Disclosure Schedule,
SkyPower has obtained or in the ordinary course of business will obtain interconnection of, or
transmission capacity for, all such Development Projects, and the SkyPower Shareholders, in
good faith, know of no facts, circumstances or other issues which would preclude or hamper
completion or commercial operation of the Development Projects, including without limitation,
access to transmission lines or availability of turbines.

2.29    Disclosure. All material facts relating to the Business or Condition of
SkyPower and its Subsidiaries have been disclosed to Acquisitionco in or in connection with this
Agreement. No representation or warranty contained in this Agreement, and no statement
contained in the Disclosure Schedule or in any certificate, list or other writing furnished to
Acquisitionco pursuant to any provision of this Agreement (including without limitation the
Financial Statements and the Operative Documents), contains any untrue statement of a material
fact or omits to state a material fact necessary in order to make the statements herein or therein,
in the light of the circumstances under which they were made, not misleading other than that
they were prepared in good faith on the basis of reasonable assumptions. The factual statements
made by the SkyPower Shareholders on their own behalf and on behalf of SkyPower in response
to the written inquiries submitted by Acquisitionco or Purchaser are accurate and responsive in
all material respects and documents provided to Acquisitionco in response to such written
inquiries are materially complete and accurate versions of such documents.

2.30    No United States Assets. Neither SkyPower nor any Subsidiary has any
ownership interest whatsoever to assets located in the United States and or has made any sales in
or into the United States in the last fiscal year.

2.31    No Terra Winds Liabilities. Except as set forth in Section 2.31 of the
Disclosure Schedule, neither SkyPower nor any Subsidiary has any obligation, directly or
indirectly, for any liabilities of Terra Winds.

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

ARTICLE III
ADDITIONAL REPRESENTATIONS AND WARRANTIES OF ADLER AND THE
SKYPOWER SHAREHOLDERS

Adler and each SkyPower Shareholder hereby individually represents and
warrants on its own behalf as follows:

3.01   Authority. Adler has full power and authority to execute and deliver the
Operative Agreements on behalf of Adler and on behalf of each of the other SkyPower
Shareholders. Adler holds a voting trust and power of attorney on behalf of HSHN and has the
authority to bind HSHN with respect to this Agreement, and in particular to the transfer of shares
contemplated hereby, as its attorney whenever such a transfer is required pursuant to the
provisions hereof. Upon the execution and delivery of the Operative Agreements by Adler on
behalf of each of the SkyPower Shareholders, the Operative Agreements will constitute the legal,
valid and binding obligations of Adler and of each of the SkyPower Shareholders in accordance
with their terms subject to bankruptcy, insolvency and other applicable Laws affecting creditors'
rights generally and to principles of equity. The performance by each SkyPower Shareholder of
its obligations hereunder and under each of the Operative Agreements to which it is a party, have
been duly and validly authorized.

3.02   No Conflicts. The execution and delivery by such SkyPower Shareholder
of this Agreement does not, and the execution and delivery by such SkyPower Shareholder of the
Operative Agreements to which it is a party, the performance by such SkyPower Shareholder of
its obligations under this Agreement and such Operative Agreements and the consummation of
the transactions contemplated hereby and thereby will not:

(a)   conflict with or result in a violation or breach of any term or provision of any
Law or Order applicable to such SkyPower Shareholder; or

(b)   (i) conflict with or result in a violation or breach of, (ii) constitute (with or
without notice or lapse of time or both) a default under, (iii) require such SkyPower
Shareholder to obtain any consent, approval or action of, make any filing with or give any
notice to any Person as a result or under the terms of, (iv) result in or give to any Person any
right of termination, cancellation, acceleration or modification in or with respect to, (v) result in
or give to any Person any additional rights or entitlement to increased, additional, accelerated or
guaranteed payments under, or (vi) result in the creation or imposition of any Lien upon such
SkyPower Shareholder or any of its Assets and Properties under, any Contract or License to
which such SkyPower Shareholder is a party or by which any of its respective Assets and
Properties is bound.

3.03   Capital Stock. The SkyPower Shares represent all the issued and
outstanding capital stock of SkyPower. The SkyPower Shares are duly authorized, validly
issued, outstanding, fully paid and nonassessable. The SkyPower Shares are duly authorized and
validly issued and outstanding. Such SkyPower Shareholder owns the SkyPower Shares set
forth in Schedule A beside each such SkyPower Shareholder's name, respectively, beneficially
and of record, free and clear of all Liens. The delivery of a certificate or certificates at the

LA1:#6351530v20                                         - 25 -

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

Closing representing the SkyPower Shares in the manner provided in Article I will transfer good and valid title to the SkyPower Shares owned by such SkyPower Shareholder, free and clear of all Liens.

        3.04    Not a Non-Resident.

        Other than those Persons listed on Schedule D hereto, each SkyPower Shareholder is a resident of Canada under the Tax Act.

        3.05    Governmental Approvals and Filings. No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of any SkyPower Shareholder is required in connection with the execution, delivery and performance of this Agreement or the Operative Agreements to which it is a party or the consummation of the transactions contemplated hereby or thereby.

        3.06    Legal Proceedings. There are no Actions or Proceedings pending or, to the Knowledge of any SkyPower Shareholder, threatened against, relating to or affecting such SkyPower Shareholder or any of its Assets and Properties which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement or any of the Operative Agreements.

        3.07    Purchase for Investment. The stock acquired by any SkyPower Shareholder will be acquired by such SkyPower Shareholder for its own account for the purpose of investment. Such SkyPower Shareholder will refrain from transferring or otherwise disposing of any of such stock, or any interest therein, in such manner as to cause Acquisitionco to be in violation of any securities Laws registration requirements.

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

        Purchaser hereby represents and warrants to the SkyPower Shareholders as follows:

        4.01    Organization. Purchaser is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware. Purchaser has full corporate power and authority to execute and deliver this Agreement and the Operative Agreements to which it is a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

        4.02    Authority. The execution and delivery by Purchaser of this Agreement and the Operative Agreements to which it is a party, and the performance by Purchaser of its obligations hereunder and thereunder, have been duly and validly authorized by the Board of Directors of Purchaser, no other corporate action on the part of Purchaser or its stockholders being necessary, except such action as shall be obtained in the ordinary course of business. This Agreement has been duly and validly executed and delivered by Purchaser and constitutes, and

LA1:#6351530v20                - 26 -

upon the execution and delivery by Purchaser of the Operative Agreements to which it is a party, such Operative Agreements will constitute, legal, valid and binding obligations of Purchaser enforceable against Purchaser in accordance with their terms subject to bankruptcy, insolvency and other applicable Laws affecting creditors' rights generally and to principles of equity.

          4.03   No Conflicts. The execution and delivery by Purchaser of this Agreement do not, and the execution and delivery by Purchaser of the Operative Agreements to which it is a party, the performance by Purchaser of its obligations under this Agreement and such Operative Agreements, and the consummation of the transactions contemplated hereby and thereby will not conflict with or result in a violation or breach of any of the terms, conditions or provisions of the articles of incorporation or by-laws (or other comparable corporate charter document) of Purchaser.

          4.04   Governmental Approvals and Filings. No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of Purchaser is required in connection with the execution, delivery and performance of this Agreement or the Operative Agreements to which it is a party or the consummation of the transactions contemplated hereby or thereby.

          4.05   Legal Proceedings. There are no Actions or Proceedings pending or, to the knowledge of Purchaser, threatened against, relating to or affecting Purchaser or any of its Assets and Properties which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement or any of the Operative Agreements.

          4.06   Purchase for Investment. The SkyPower common stock will be acquired by Purchaser for its own account for the purpose of investment, it being understood that the right to dispose of such common stock shall be entirely within the discretion of Purchaser (or such assignee, as the case may be). Purchaser will refrain from transferring or otherwise disposing of any of the SkyPower common stock, or any interest therein, in such manner as to cause the SkyPower Shareholders to be in violation of any securities Laws registration requirements.

          4.07   Funding. Purchaser has sufficient funds on hand or otherwise available pursuant to credit facilities or capital commitments to satisfy its obligations under this Agreement at or prior to Closing.

## ARTICLE V

### REPRESENTATIONS AND WARRANTIES OF ACQUISITIONCO

          Acquisitionco hereby represents and warrants to the Purchaser and to the SkyPower Shareholders as follows:

          5.01   Organization. Acquisitionco is an unlimited liability company duly organized, validly existing and in good standing under the Laws of Alberta, Canada. Acquisitionco has full power and authority to execute and deliver this Agreement and the

LA1:#6351530v20

- 27 -

Operative Agreements to which it is a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

5.02    Authority. The execution and delivery by Acquisitionco of this Agreement and the Operative Agreements to which it is a party, and the performance by Acquisitionco of its obligations hereunder and thereunder, have been duly and validly authorized by the Board of Directors of Acquisitionco, no other action on the part of Acquisitionco or its stockholders being necessary, except such action as shall be obtained in the ordinary course of business. This Agreement has been duly and validly executed and delivered by Acquisitionco and constitutes, and upon the execution and delivery by Acquisitionco of the Operative Agreements to which it is a party, such Operative Agreements will constitute, legal, valid and binding obligations of Acquisitionco enforceable against Acquisitionco in accordance with their terms subject to bankruptcy, insolvency and other applicable Laws affecting creditors' rights generally and to principles of equity.

5.03    No Conflicts. The execution and delivery by Acquisitionco of this Agreement do not, and the execution and delivery by Acquisitionco of the Operative Agreements to which it is a party, the performance by Acquisitionco of its obligations under this Agreement and such Operative Agreements, and the consummation of the transactions contemplated hereby and thereby will not conflict with or result in a violation or breach of any of the terms, conditions or provisions of the articles of incorporation or by-laws (or other comparable corporate charter document) of Acquisitionco;

5.04    Governmental Approvals and Filings. No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of Acquisitionco is required in connection with the execution, delivery and performance of this Agreement or the Operative Agreements to which it is a party or the consummation of the transactions contemplated hereby or thereby.

5.05    Legal Proceedings. There are no Actions or Proceedings pending or, to the knowledge of Acquisitionco, threatened against, relating to or affecting Acquisitionco or any of its Assets and Properties which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement or any of the Operative Agreements.

5.06    Purchase for Investment. The SkyPower Shares will be acquired by Acquisitionco for its own account for the purpose of investment, it being understood that the right to dispose of such SkyPower Shares shall be entirely within the discretion of Acquisitionco (or such assignee, as the case may be). Acquisitionco will refrain from transferring or otherwise disposing of any of the SkyPower Shares, or any interest therein, in such manner as to cause the SkyPower Shareholders to be in violation of any securities Laws registration requirements.

5.07    Funding. Upon Purchaser providing funds to Acquisitionco, Acquisitionco will have sufficient funds on hand or otherwise available pursuant to credit facilities or capital commitments to satisfy its obligations under this Agreement at or prior to Closing.

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

5.08    No Other Business. Acquisitionco has not engaged in any business other than the Business or entered into any agreements other than this Agreement and the other Operative Agreements to which it is a party.

## ARTICLE VI

### COVENANTS OF THE SKYPOWER SHAREHOLDERS AND SKYPOWER

Each of the SkyPower Shareholders and SkyPower covenant and agree that, at all times from and after the date hereof until the Closing, and, where expressly provided, after Closing, SkyPower and such SkyPower Shareholders will comply with all covenants and provisions of this Article VI, except as specifically provided otherwise in Article VI of the Disclosure Schedule, as required by applicable Law or to the extent Acquisitionco or Purchaser may otherwise consent in writing.

6.01    Regulatory and Other Approvals. Each SkyPower Shareholder, SkyPower and the Subsidiaries will, as promptly as practicable (a) take all commercially reasonable steps necessary or desirable to obtain all consents, approvals or actions of, make all filings with and give all notices to Governmental or Regulatory Authorities or any other Person required of such SkyPower Shareholder, SkyPower or any Subsidiary to consummate the transactions contemplated hereby and by the Operative Agreements, (b) provide such other information and communications to such Governmental or Regulatory Authorities or other Persons as Acquisitionco or such Governmental or Regulatory Authorities or other Persons may reasonably request in connection therewith and (c) cooperate with Acquisitionco in connection with the performance of their obligations. Each SkyPower Shareholder, SkyPower and the Subsidiaries will provide prompt notification to Acquisitionco when any such consent, approval, action, filing or notice referred to in clause (a) above is obtained, taken, made or given, as applicable, and will advise Acquisitionco of any communications (and, unless precluded by Law, provide copies of any such communications that are in writing) with any Governmental or Regulatory Authority or other Person regarding any of the transactions contemplated by this Agreement or any of the Operative Agreements.

6.02    Investigation by Acquisitionco. Each SkyPower Shareholder, SkyPower and the Subsidiaries will (a) provide Acquisitionco and its officers, directors, employees, agents, counsel, accountants, financial advisors, consultants and other representatives (together "**Representatives**") with full access, upon reasonable prior notice and during normal business hours, to all officers, employees, agents and accountants of SkyPower and the Subsidiaries and their Assets and Properties and Books and Records, and (b) furnish Acquisitionco and such other Persons with all such information and data (including without limitation copies of financial information, Contracts, Benefit Plans and other Books and Records) concerning the business and operations of SkyPower and the Subsidiaries as Acquisitionco or any of such other Persons reasonably may request in connection with such investigation.

6.03    No Solicitations. Each SkyPower Shareholder, SkyPower and the Subsidiaries will not take, nor will they permit, SkyPower or any of its Affiliate or Subsidiaries

*Stock Purchase Agreement – Lehman/SkyPower – June 2007*

(or authorize or permit any investment banker, financial advisor, attorney, accountant or other Person retained by or acting for or on behalf of SkyPower, the Subsidiaries or any such Affiliate) to take, directly or indirectly, any action to solicit, encourage, receive, negotiate, assist or otherwise facilitate (including by furnishing confidential information with respect to SkyPower or any Subsidiary or permitting access to the Assets and Properties and Books and Records of SkyPower or any Subsidiary) any offer or inquiry from any Person concerning an Acquisition Proposal. If any SkyPower Shareholder, SkyPower, any Subsidiary or any such Affiliate (or any such Person acting for or on their behalf) receives from any Person any offer, inquiry or informational request referred to above, such SkyPower Shareholder will promptly advise such Person, by written notice, of the terms of this Section 6.03 and will promptly, orally and in writing, advise Acquisitionco of such offer, inquiry or request and deliver a copy of such notice to Acquisitionco.

6.04    Conduct of Business. Each SkyPower Shareholder, SkyPower and the Subsidiaries will conduct business only in the ordinary course consistent with past practice. Without limiting the generality of the foregoing, each SkyPower Shareholder, SkyPower and the Subsidiaries will:

(a)   use commercially reasonable efforts to (i) preserve intact the goodwill and the present business organization and reputation of SkyPower and the Subsidiaries, (ii) keep available (subject to dismissals and retirements in the ordinary course of business consistent with past practice) the services of the present officers, employees and consultants of SkyPower and the Subsidiaries, (iii) maintain the Assets and Properties of SkyPower and the Subsidiaries in good working order and condition, ordinary wear and tear excepted, (iv) maintain the good will of any Persons with whom SkyPower or any Subsidiary has significant business relationships and (v) continue all current activities relating to the business and operations of SkyPower and the Subsidiaries;

(b)   except to the extent required by applicable Law or as a result of changes in GAAP, (i) cause the Books and Records to be maintained in the usual, regular and ordinary manner, (ii) not permit any material change in (A) any pricing, investment, accounting, financial reporting, credit, allowance or Tax practice or policy of SkyPower or any Subsidiary, or (B) any method of calculating any bad debt, contingency or other reserve of SkyPower or any Subsidiary for accounting, financial reporting or Tax purposes and (iii) not permit any change in the fiscal year of SkyPower or any Subsidiary;

(c)   (i) use, and will cause SkyPower and the Subsidiaries to maintain in full force and effect substantially the same levels of coverage as the insurance afforded under the Contracts listed in Section 2.18 of the Disclosure Schedule, and (ii) cause any and all benefits under such Contracts paid or payable (whether before or after the date of this Agreement) with respect to the business, operations, employees or Assets and Properties of SkyPower and the Subsidiaries to be paid to SkyPower and the Subsidiaries; provided, however, that SkyPower may purchase run-off directors' and officers' insurance providing coverage reasonably equivalent to the policies of SkyPower currently in effect, subject to terms and conditions no less advantageous to the directors and officers of SkyPower than those contained in the policy currently in effect, for all present and former directors and officers of SkyPower, covering claims made prior to or within six years after the Closing arising from facts or events which

LA1:#6351530v20                                        - 30 -