SECTION 5.01 No Setoff. The obligations of the Sponsor hereunder shall be satisfied in all events at the times and in the amounts set forth herein, and the Sponsor shall not have the right to withhold or offset against any payment due hereunder for any reason including, without limitation, any dispute between the Borrower and the Sponsor over any matter whatsoever.

SECTION 6.01 Payments Absolute.

(d) Subrogation. Notwithstanding any payment or payments made by the Sponsor hereunder, the Sponsor shall not be entitled to be subrogated to any of the rights of the Secured Parties against the Borrower or any collateral security or guaranty held by the Secured Parties for the satisfaction of any Obligations under the Basic Documents, nor shall the Sponsor seek any reimbursement, indemnity, exoneration or contribution from the Borrower in respect of payments made by the Sponsor hereunder, unless and until all Obligations have been indefeasibly paid in full and the Commitments have been terminated or have expired. If any amount shall be paid to the Sponsor on account of such subrogation rights at any time when all Obligations shall not have been indefeasibly paid in full or the Commitments shall not have been terminated or have expired, such amount shall be held by the Sponsor in trust for the Secured Parties, segregated from other funds of the Sponsor, and shall be turned over to the Collateral Agent for the benefit of the Secured Parties, in the exact form received by the Sponsor (duly endorsed by the Sponsor to the Collateral Agent for the benefit of the Secured Parties, if required).

(e) Unconditional Obligations. The Sponsor shall remain obligated hereunder notwithstanding that, without any reservation of rights by or against the Sponsor and without notice to or further assent by the Sponsor, any demand for payment of any amount due pursuant to the Credit Agreement or the other Basic Documents may be rescinded by the Secured Parties, and any of the Advances or other extensions of credit thereunder continued and such amounts, or the liability of any other Person upon or for any part thereof, or any collateral security or guaranty therefor or right of offset with respect thereto, may, from time to time, in whole or part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Secured Parties, and the Credit Agreement, the Notes and any other Basic Documents or any other document executed in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Secured Parties may deem advisable from time to time, and any collateral security or guaranty or right of offset at any time held by the Secured Parties for the payment of such amounts may be sold, exchanged, waived, surrendered or released; provided that no such amendment shall increase any obligations of the Sponsor hereunder without its consent; and provided, further, that nothing contained in this Section 6.01(b) shall constitute a waiver of the right of the Borrower itself to agree to any such amendment, modification, compromise or settlement. None of the Secured Parties shall have any obligation to protect, secure, perfect or inquire as to any Lien at any time held by it as security for any amount due under the Credit Agreement or any other Basic Document or any property subject to any such Lien, and the failure of any of the Secured Parties to do any of the foregoing shall have no effect on the obligations of the Sponsor hereunder. None of the Secured Parties shall have any liability for the performance or observance of any of the obligations or duties of the Borrower under the Credit Agreement or under any other Basic Document, and the

5

LA1-115204.09

Borrower's failure to perform any such obligations or duties shall not impair the obligations of the Sponsor hereunder.

(f) <u>Transfer of Ownership</u>. The Sponsor's Equity Contribution Obligations under this Agreement shall not be diminished by any transfer by the Sponsor of any of its direct or indirect Equity Interests in the Borrower. In addition, the Change of Control limitations set forth in Section 5.02 of the Credit Agreement shall govern any such transfer of Equity Interests.

(g) <u>Waiver of Defenses</u>. The Sponsor hereby waives any and all notice of the creation, renewal or accrual of any amounts due under the Credit Agreement or any other Basic Document, and all such amounts shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Agreement, and all dealings between the Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Agreement. Except as expressly set forth herein, the Sponsor hereby waives diligence, presentment, protest, demand for payment and notice of default or non-payment to or upon the Borrower or itself with respect to any amounts due under the Credit Agreement or any other Basic Document. This Agreement shall be construed as an absolute, irrevocable and unconditional obligation to make the payments described herein without regard to (i) the validity or enforceability of the Credit Agreement, the Notes or any other Basic Documents, or any collateral security or guaranty for any of the foregoing or any right of offset with respect thereto at any time or from time to time held by the Secured Parties, (ii) any defense, set-off or counterclaim (other than a defense of payment or performance in respect of this Agreement) that may at any time be available to or be asserted by or against the Borrower or any other Person, or (iii) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or the Sponsor (other than a defense of payment or performance in respect of this Agreement)) that constitutes or might be construed to constitute an equitable or legal discharge of the Borrower or the Sponsor for the payments described in any of the Basic Documents, in bankruptcy or in any other instance. When pursuing its rights and remedies hereunder against the Sponsor, each of the Secured Parties may, but shall be under no obligation to, pursue such rights and remedies as it may have against any collateral security or right of offset with respect to any amounts due under the Credit Agreement or any other Basic Document, and any failure by the Secured Parties to pursue such other rights or remedies or to collect any payments from the Borrower or any such other Person or to realize upon any collateral security or to exercise any right of offset, or to release the Borrower or any such other Person or any collateral security or right of offset, shall not relieve the Sponsor of any liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Secured Parties against the Sponsor.

(h) <u>Continuing Obligations</u>. The obligations set forth herein shall continue to be effective or reinstated, as the case may be, if at any time and for any reason, any payment made hereunder by the Sponsor is rescinded or must otherwise be returned by the Borrower or the Secured Parties, all as though such payment had not been made.

SECTION 7.01 <u>Representations and Warranties</u>. The Sponsor hereby represents, warrants and certifies to the Collateral Agent, for the benefit of the Secured Parties, that each of the representations and warranties in Section 4.01 of the Credit Agreement to the extent relating to the Sponsor is true and correct and each such representation and warranty is incorporated

6

LA1 - 115204.09

herein *mutatis mutandis*, to the same extent as if set forth herein.

SECTION 8.01 Covenants and Agreements. So long as any Advance or other Obligation under the Basic Documents shall remain unpaid, any Lender shall have any Commitment or any Letter of Credit outstanding, the Sponsor hereby covenants and agrees that it shall faithfully observe and fulfill, and shall cause to be observed and fulfilled, each and all of the following covenants applicable to it:

(i) Maintenance of Existence, Privileges, Etc. The Sponsor shall preserve and maintain in full force and effect its legal existence and all of its rights, privileges and franchises necessary for the performance of its obligations under this Agreement.

(j) No Violation of Basic Documents. The Sponsor shall not take or cause the Borrower to take any action that would cause a violation of any of the provisions of any Basic Document.

(k) Taxes. Any and all payments, fundings and cash contributions made by or on behalf of the Sponsor hereunder shall be made free and clear of, and without deduction for, any and all taxes. If the Sponsor shall be required by Applicable Law to deduct any taxes from or in respect of any sum payable hereunder to the Borrower or any Secured Party (i) the sum payable shall be increased by the amount necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 8.01(d)) the Borrower or such Secured Party shall receive an amount equal to the sum it would have received had no such deductions been made, (ii) the Sponsor shall make such deductions, and (iii) the Sponsor shall pay the full amount deducted to the relevant taxing authority or other Governmental Authority in accordance with Applicable Law. The Sponsor will indemnify the Borrower and each Secured Party for the full amount of taxes (including any taxes imposed by any jurisdiction on amounts payable under this Section 8.01(d)) paid by the Borrower or such Secured Party, and any liability (including penalties, interest, additions to tax, and other charges) arising therefrom or with respect thereto, whether or not such taxes were correctly or legally asserted. Such indemnification shall be made within thirty (30) days after the date the Borrower or any Secured Party makes written demand therefor setting forth the amount of such indemnification and the basis for calculation thereof in reasonable detail, which certificate shall be delivered to the Sponsor and shall be conclusive absent manifest error.

(l) Further Assurances. From time to time upon the request of the Collateral Agent, the Sponsor shall promptly execute and deliver all further instruments and documents, and take all further action, that may be reasonably necessary, in order to enable the Collateral Agent to exercise and enforce its rights and remedies hereunder.

SECTION 9.01 Execution in Counterparts. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by telecopier, facsimile or portable document format ("pdf") shall be effective as delivery of a manually executed counterpart of this Agreement.

7

LA1 - 115204.09

SECTION 10.01 Enforcement. The Sponsor hereby agrees (a) that the Secured Parties shall have the right to directly enforce the provisions hereof against each of the parties hereto and (b) to pay all costs, including, without limitation, reasonable attorney's fees and expenses that are occasioned by or result from any failure by the Sponsor to perform on a timely basis any of the terms, agreements or covenants to be performed by it hereunder or from the breach by the Sponsor of any representation or warranty made by it herein.

SECTION 11.01 Survival; Term. The terms of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. The provisions of Section 6.01 and all other covenants, agreements, representations and warranties made by the Sponsor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Basic Document shall be considered to have been relied upon by the Secured Parties and shall survive the performance of the obligations contained herein, the making by the Lenders of the Advances, and the execution and delivery to the Lenders of the Notes evidencing such Advances, regardless of any investigation made by any Secured Party or on its behalf, and shall continue in full force and effect until the earlier of (a) the date on which the Equity Contribution Obligations have been indefeasibly paid or satisfied in full and (b) the date of payment in full of the Obligations, the cancellation of the Commitments and the cancellation or termination of any outstanding Letter of Credit, under the Credit Agreement.

SECTION 12.01 Governing Law and Jurisdiction.

(m) Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE.

(n) Jurisdiction, Etc.

(i) Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the State, City and County of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York State court or, to the extent permitted by law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction.

(ii) Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or

8

relating to this Agreement in any New York State or federal court sitting in the State, City and County of New York. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(iii)    The Sponsor agrees that it will at all times continuously maintain a place of business in the State of New York to receive service of process with respect to any action, suit or proceeding in any courts sitting in the State, City and County of New York on its behalf with respect to each Basic Document to which it is a party. In the event that for any reason the Sponsor shall no longer have a place of business in the State of New York, the Borrower will promptly but in no event later than five days after obtaining knowledge thereof, irrevocably designate and appoint a substitute agent acceptable to the Collateral Agent and advise the Collateral Agent thereof.

(o)    Other Jurisdictions. Nothing contained in this Section 12.01 shall affect the right to effect service of process in any manner provided for under Applicable Law or preclude any of the Secured Parties from bringing any suit, action or proceeding arising out of or relating to the Basic Documents in the courts of any place where the Sponsor or the Borrower or any of its property or assets may be found or located. To the extent permitted by the Applicable Law of any such jurisdiction, each of the Sponsor and the Borrower hereby irrevocably submits to the jurisdiction of any such court and expressly waives, in respect of any such suit, action or proceeding, the jurisdiction of any other court or courts which now or hereafter, by reason of its present or future domicile, or otherwise, may be available to it.

SECTION 13.01    WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER BASIC DOCUMENT OR THE ACTIONS OF THE SECURED PARTIES IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

SECTION 14.01    Notices. All notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be given in accordance with Section 8.02 of the Credit Agreement. All notices, demands, requests and other communications required or permitted hereunder to the Sponsor shall be in writing and given at the following address:

If to the Sponsor:

Lehman Brothers, Inc.
745 Seventh Avenue; New York, NY 10019-6801
Facsimile No.:
Attn:

SECTION 15.01    Amendments.

9

LA1 - 115204.09

(a) No failure or delay of the Collateral Agent, or any other Secured Party in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of Secured Parties hereunder and under the other Basic Documents are cumulative and not exclusive of any rights or remedies which they would otherwise have. No waiver of any provision of this Agreement or any other Basic Document or consent to any departure by the Borrower or the Sponsor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on the Borrower or the Sponsor in any case shall entitle the Borrower or the Sponsor to any other or further notice or demand in similar or other circumstances.

(b) No modification or waiver of any of the provisions of this Agreement shall be binding on the parties hereto, except as expressly set forth in a writing duly signed and delivered by each such party. This Agreement shall be amended with the written consent of the Sponsor and the Collateral Agent (with the consent of the Required Lenders) in accordance with Section 8.01 of the Credit Agreement.

SECTION 16.01 Severability. In the event any one or more of the provisions contained in this Agreement or in any other Basic Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby. Where provisions of any Applicable Law resulting in such prohibition or unenforceability may be waived, they are hereby waived by each of the parties hereto to the full extent permitted by Applicable Law so that this Agreement shall be deemed a valid, legal and binding agreement, enforceable in accordance with its terms. The parties hereto shall endeavor in good-faith negotiations to replace any invalid, illegal or unenforceable provisions with valid provisions, the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 17.01 Assignments. The Sponsor shall have no right, power or authority to delegate all or any of its obligations hereunder; provided that Sponsor may assign its obligations hereunder to an Affiliate, so long as such Affiliate has ratings of its long-term Debt with Standard & Poor's and Moody's at least equivalent to the Sponsor's current rating or, if not rated, has a tangible net worth of at least $10,000,000,000. The Sponsor hereby expressly agrees that the Collateral Agent may assign all or any of its rights hereunder without the Sponsor's approval to any Person to which the Collateral Agent has assigned its rights under the other Basic Documents or under any TSA. The Collateral Agent or any such assignee shall notify the Sponsor in writing of each such assignment made pursuant to this Section 17.01. In the event of any such assignment, references herein to the "Collateral Agent" shall be deemed to include references to the relevant assignee.

SECTION 18.01 Headings. The table of contents and headings set forth herein and in the other Basic Documents are included for convenience of reference only and shall not affect the interpretation of this Agreement or any other Basic Document.

10

LA1 - 115204.09

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized representatives as of the date hereof.

SKYPOWER CORP.

By: _____
Name:
Title:

Signature Page to A&R Equity Contribution Agreement

LEHMAN BROTHERS HOLDINGS INC.

By: *[signature]*

Name:
Title: BARRETT S. DiPAOLO
VICE PRESIDENT