*Place*
*in File*

SHEARSON LEHMAN HUTTON MORTGAGE CORPORATION

DEFERRED COMPENSATION PLAN

Effective:  October 1, 1987
Amended and Restated in its Entirety:  September 15, 1989

SHEARSON LEHMAN HUTTON MORTGAGE CORPORATION
DEFERRED COMPENSATION PLAN

1.    Statement of Purpose

The purpose of the Shearson Lehman Hutton Mortgage
Corporation Deferred Compensation Plan (the "Plan") is to aid
Shearson Lehman Hutton Mortgage Corporation (the "Company")
in attracting and retaining key employees by providing a
non-qualified compensation deferral vehicle.

2.    Definitions

2.1    Beneficiary - "Beneficiary" means the person or persons
designated as such in accordance with Section 8.

2.2    Compensation - "Compensation" means the Participant's
bonus and salary for the year.

2.3    Cycle - "Cycle" means the twelve month pay-in period
for each deferral; provided, however, that the initial
Cycle shall commence on October 5, 1987 and end on
December 31, 1988, the second Cycle shall commence on
June 13, 1988 and end on December 31, 1988, the third
Cycle shall commence on August 8, 1988 and end on
December 31, 1988, the fourth Cycle shall commence on
March 20, 1989 and end on December 31, 1989, the fifth
Cycle shall commence on February 20, 1989 and end on
December 31, 1989, and the sixth Cycle shall commence
on September 4, 1989 and end on December 31, 1990.

2.4    Deferral Amount - "Deferral Amount" means the amount of
Elective Deferred Compensation actually deferred by the
Participant.

2.5    Deferred Compensation Account - "Deferred Compensation
Account" means the account maintained on the books of
account of the Company for each Participant pursuant to
Section 6.

2.6    Distribution Date - "Distribution Date" means the date
on which the Company makes distributions from the
Participant's Deferred Compensation Account.

2.7    Election Form - "Election Form" means the form or forms
attached to this Plan and filed with the Executive
Compensation Committee by the Participant in order to
participate in the Plan.  The terms and conditions
specified in the Election Form(s) are incorporated by
reference herein and form a part of the Plan.

2.8    Elective Deferred Compensation - "Elective Deferred
Compensation" means the amount elected to be deferred
by an Eligible Employee in his Election Form, subject
to approval by the Executive Compensation Committee.

2.9   **Eligible Employee** - "Eligible Employee" means those employees of the Company who have been selected by the Executive Compensation Committee.

2.10  **Executive Compensation Committee** - "Executive Compensation Committee" (also referred to as the "Committee") means the committee appointed by the Board of Directors who will administer the Plan pursuant to Section 3.

2.11  **Moody's** - "Moody's" means the annual average composite yield on Moody's Seasoned Corporate Bond Yield Index for the twelve month period ending on the last day of October immediately preceding the Valuation Date, as determined from Moody's Bond Record published by Moody's Investors Service, Inc. (or any successors thereto), or, if such yield is no longer published, a substantially similar average selected by the Company.

2.12  **Non-Elective Deferred Compensation** - "Non-Elective Deferred Compensation" means the amount awarded to a Participant by the Executive Compensation Committee pursuant to Section 4.2.

2.13  **Participant** - "Participant" means an Eligible Employee participating in the Plan in accordance with the provisions of Section 4.

2.14  **Plan Year** - "Plan Year" means the twelve month period beginning on the first day of the first Cycle in which the Eligible Employee elects to participate in the Plan; provided however, that the initial Plan Year for the first, second, and third Cycles shall end on December 31, 1988, the initial Plan Year for the fourth and fifth Cycles shall end on December 31, 1989, and the initial plan year for the sixth Cycle shall end on December 31, 1990.

2.15  **Substantially Equal Installments** - "Substantially Equal Installments" means a series of annual payments, such that equal payments over the remaining payment period would exactly amortize the Deferred Compensation Account balance as of the Distribution Date if the credited interest rate remained constant at the level credited as of the Valuation Date immediately preceding the Distribution Date for the remainder of the payment period.

2.16  **Termination of Employment** - "Termination of Employment" means the termination of a Participant's employment with the Company for any reason.

ii. The minimum deferral for a Cycle shall be $3,000.

iii. The maximum deferral for a Cycle shall be the amount specified by the Committee.

b. A Participant's election to defer future Compensation is irrevocable upon the filing of his Election Form with the Committee, provided, however, that the election may be terminated with respect to Compensation not yet earned by mutual agreement in writing between the Participant and the Committee. Such termination if approved shall be effective immediately.

4.2    **Non-Elective Participation**. The Executive Compensation Committee can, in its discretion, award to an Eligible Employee Non-Elective Deferred Compensation. Any such award shall, except as otherwise provided, be subject to the same terms, conditions, and benefits as Elective Deferred Compensation for the Cycle.

5. Vesting of Deferred Compensation Account

A Participant's interest in his Deferred Compensation Account shall vest immediately.

6. Accounts and Valuations

6.1    **Deferred Compensation Accounts**. The Committee shall establish and maintain a separate Deferred Compensation Account for each Participant for each Cycle. Any Elective Deferred Compensation shall be credited to the Participant's Deferred Compensation Account when deferred. Any Non-Elective Deferred Compensation awarded to a Participant shall be credited to the Participant's Deferred Compensation Account on such date as specified by the Committee.

6.2    **Interest Rate Credited**. Each Participant's Deferred Compensation Account shall be credited with interest. The rate of accrual shall be redetermined annually as follows:

a. for the Participant's first Plan Year interest shall be credited at Moody's minus two (2) percentage points;
b. for the Participant's second Plan Year interest shall be credited at Moody's minus one (1) percentage point;
c. for the Participant's third Plan Year interest shall be credited at Moody's; and
d. thereafter, interest shall be credited at Moody's plus eight (8) percentage points.

Notwithstanding the foregoing, in the event of a
Participant's Termination of Employment for any reason
other than death prior to being a Vested Participant,
he shall receive a return of his Deferral Amount with
interest credited at a rate equal to the Treasury Bill
Rate.

6.3   Timing of Crediting of Interest.   Each Deferred
Compensation Account of each Participant shall be
revalued and credited with interest as of each
Valuation Date.   As of each Valuation Date, the value
of each Deferred Compensation Account shall consist of
the balance of such Deferred Compensation Account as of
the immediately preceding Valuation Date, plus the
amount of any Elective Deferred Compensation and
Non-Elective Deferred Compensation credited to the
Participant's Deferred Compensation Account since the
preceding Valuation Date, minus the amount of all
distributions, if any, made from such Deferred
Compensation Account since the preceding Valuation
Date.   As of each Valuation Date, interest shall be
credited on the average daily balance of the
Participant's Deferred Compensation Account since the
immediately preceding Valuation Date after adjustment
for any additions thereto (including interest) or
distributions therefrom.   Normal benefit distributions
(under Section 7.1) made on or before February 15 of
the year of payment will be considered to have been
made from the account and deducted from the account
balance as of January 1 of such year for the purpose of
crediting interest under this Section 6.3.

7.   Benefits

7.1   Normal Benefit

a.   A Participant's Deferred Compensation Account shall
be paid to the Participant in accordance with the
terms of the Employee's Election Form, subject to
the terms and conditions specified in the Election
Form.   If a Participant elects to receive payment
of his Deferred Compensation Account in
installments, payments shall be made in
Substantially Equal Installments.   Unless the
Executive Compensation Committee determines
otherwise, and subject to the provisions of Section
7.6 as to when payments shall commence,
installments shall be paid on the first day of
February of each year.

b.  If a Participant dies after Termination of Employment or after distributions have commenced for a Cycle, but before receiving his or her total account balance for that Cycle, his Beneficiary shall be entitled to the remaining account balance.  The Participant may specify that any amounts payable to any Beneficiary under this provision shall be paid either by continuing the payments when due to the Participant or, in a lump sum, equal to the value of the Deferred Compensation Account at the time of the Participant's death.  In the event a Participant fails to so specify, payments shall be made to his Beneficiary when due to the Participant.

7.2  Hardship Benefit.  In the event that the Executive Compensation Committee, upon written petition of the Participant, determines in its sole discretion, that the Participant has suffered an unforeseeable financial emergency, the Company may pay to the Participant, as soon as practicable following such determination, an amount necessary to meet the emergency, not in excess of the Deferred Compensation Account credited to the Participant.  The Deferred Compensation Account of the Participant shall thereafter be reduced to reflect the payment of a Hardship Benefit.  The Participant shall specify in his written petition from which Cycle the Hardship Benefit shall be paid.

7.3  Request to Committee for Delay in Payment.  Except as otherwise provided in Section 7.2, a Participant shall have no right to modify in any way the schedule for the distribution of amounts from his Deferred Compensation Account which he has specified in his Election Form. However, the Executive Compensation Committee may, upon a written request submitted by the Participant to the Committee:

o  Postpone one time the date on which payment shall commence; and/or

o  Increase one time the number of installments(to a number not to exceed fifteen(15)).

Any such request must be made at least ninety (90) days prior to the earlier of (a) the beginning of the year which the Participant has elected for distribution to commence, or (b) the Termination of Employment..

7.4    <u>Request to Committee for Acceleration of Payment</u>. Except as otherwise provided in Section 7.2, a Participant shall have no right to modify in any way the schedule for the distribution of amounts from his Deferred Compensation Account which he has specified in his Election Form. However, in the event of the Termination of Employment of a Participant, the Executive Compensation Committee may, upon a written request submitted by the Participant to the Committee:

o    Accelerate the date on which payment shall commence; and/or

o    Decrease one time the number of installments.

Any such request must be made at least ninety (90) days prior to the beginning of the year which the Participant has elected for distribution to commence.

7.5    <u>Taxes; Withholding</u>.    To the extent required by law, the Company shall withhold from payments made hereunder an amount equal to at least the minimum taxes required to be withheld by the federal or any state or local government.

7.6    <u>Commencement of Payments</u>.    Except as otherwise provided in this Plan, payments under this Plan shall begin on or before the fifteenth (15th) day of February of the calendar year following receipt of notice by the Executive Compensation Committee of an event which entitles a Participant (or Beneficiary) to payments under the Plan, or at such earlier date as may be determined by the Executive Compensation Committee.

8.    Beneficiary Designation

A Participant shall have the right at any time, and from time to time, to designate and/or change or cancel any person, persons, or entity as his Beneficiary or Beneficiaries (both principal and contingent) to whom payment under this Plan shall be paid in the event of his death prior to complete distribution to Participant of the benefits due him under the Plan.    Each beneficiary designation shall become effective only when filed in writing with the Executive Compensation Committee during the Participant's lifetime on a form provided by the Executive Compensation Committee.    The filing of a new beneficiary designation form will cancel all beneficiary designations previously filed.    Any finalized divorce of a Participant subsequent to the date of filing of a beneficiary designation form shall revoke such designation.    The spouse of a married Participant domiciled in a community property jurisdiction shall join in any designation of Beneficiary or Beneficiaries other than the spouse.

If a Participant fails to designate a Beneficiary as provided above or if his beneficiary designation is revoked by divorce, or otherwise, without execution of a new designation, or if all designated Beneficiaries predecease the Participant or die prior to complete distribution of the Participant's benefits, then the distribution of such benefits shall be made to the Participant's estate.

If any distribution to a Beneficiary is to be made in installments, and the primary Beneficiary dies before receiving all installments, the remaining installments, if any, shall be paid to the estate of the primary Beneficiary.

9.  Amendment and Termination of Plan

    9.1    Amendment.  The Board of Directors may at any time amend the Plan in whole or in part, provided, however, that except as provided in 9.2, no amendment shall be effective to decrease the benefits under the Plan payable to any Participant or Beneficiary with respect to any Elective Deferred Compensation deferred prior to the date of the amendment.  Written notice of any amendments shall be given to each individual then participating in the Plan.

    9.2    Termination of Plan

        a.    Company's Right to Terminate.  The Board of Directors may at any time terminate the Plan, if, in exercising good faith business judgment, it determines that the economic viability of the Plan has been substantially impaired or eliminated.

        b.    Payments Upon Termination.  Upon any termination of the Plan under this section, Compensation shall prospectively cease to be deferred and, with respect to Compensation previously deferred, the Company will, depending upon the Participant's election: (i) pay to the Participant, in a lump-sum, the value of his Deferred Compensation Account; or (ii) continue to defer the Compensation, but with the interest rate credited on all future Valuation Dates equal to the Treasury Bill Rate.  In the event a Participant elects to continue to defer Compensation, the balance of the terms and conditions of this Plan will continue to apply to such Compensation.

10.  Miscellaneous

    10.1    Unsecured General Creditor.  Participants and their beneficiaries, heirs, successors and assignees shall have no legal or equitable rights, interests, or other

claims in any property or assets of the Company, nor
shall they be beneficiaries of, or have any rights,
claims, or interests in any life insurance policies,
annuity contracts, or the policies therefrom owned or
which may be acquired by Company ("policies"). Such
policies or other assets of Company shall not be held
under any trust for the benefit of Participants, their
beneficiaries, heirs, successors, or assigns, or held
in any way as collateral security for the fulfilling of
the obligations of Company under this Plan. Any and
all of the Company's assets and policies shall be and
remain general, unpledged, unrestricted assets of the
Company. The Company's obligation under the Plan shall
be that of an unfunded and unsecured promise of the
Company to pay money in the future.

10.2 <u>Successors and Mergers, Consolidations or Change in
Control</u>. The terms and conditions of this Plan shall
enure to the benefit of and bind the Company, the
Participants, their successors, assignees, and personal
representatives. If substantially all of the stock or
assets of the Company are acquired by another
corporation or entity or if the Company is merged into,
or consolidated with, another corporation or entity,
then the obligations created hereunder shall be
obligations of the acquiror or successor corporation or
entity.

10.3 <u>Non-Assignability</u>. Neither a Participant nor any other
person shall have any right to commute, sell, assign,
transfer, pledge, anticipate, mortgage, or otherwise
encumber, transfer, hypothecate, or convey in advance
of actual receipt the amounts, if any, payable
hereunder, or any part thereof, which are, and all
rights to which are, expressly declared to be
unassignable and nontransferrable. No part of the
amounts payable shall, prior to actual payment, be
subject to seizure or sequestration for the payment of
any debts, judgments, alimony or separate maintenance
owed by a Participant or any other person, nor be
transferrable by operation of law in the event of a
Participant's or any other person's bankruptcy or
insolvency.

10.4 <u>Employment Or Future Eligibility to Participate Not
Guaranteed</u>. Nothing contained in this Plan nor any
action taken hereunder shall be construed as a contract
of employment or as giving any Eligible Employee any
right to be retained in the employ of the Company.
Designation as an Eligible Employee may be revoked at
anytime by the Executive Compensation Committee with
respect to any Compensation not yet deferred.

10.5  <u>Gender, Singular and Plural</u>. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, or neuter, as the identity of the person or persons may require. As the context may require, the singular may be read as the plural and the plural as the singular.

10.6  <u>Captions</u>. The captions to the articles, sections, and paragraphs of this Plan are for convenience only and shall not control or affect the meaning or construction of any of its provisions.

10.7  <u>Applicable Law</u>. This Plan shall be governed and construed in accordance with the laws of the State of California.

10.8  <u>Validity</u>. In the event any provision of this Plan is held invalid, void, or unenforceable, the same shall not affect, in any respect whatsoever, the validity of any other provision of this Plan.

10.9  <u>Notice</u>. Any notice or filing required or permitted to be given to the Executive Compensation Committee shall be sufficient if in writing and hand delivered, or sent by registered or certified mail, to the principal office of the Company, directed to the attention of the President of the Company. Such notice shall be deemed given as of the date of delivery or, if delivery is made by mail, as of the date shown on the postmark on the receipt for registration or certification.