Hearing Date and Time: August 30, 2011 at 10:00 a.m. (ET)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
**In re:**                                                   :    Chapter 11 Case No.
                                                             :
**LEHMAN BROTHERS HOLDINGS INC., et**                        :    08-13555 (JMP)
**al.,**
                                                             :
            **Debtors.**                                     :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF THE DISCLOSURE STATEMENT
FOR THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF
LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS
PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of

Lehman Brothers Holdings Inc. and each of its affiliated chapter 11 debtors in possession

(collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases") hereby files this statement (the "Statement") in support of the approval of the

Debtors' Disclosure Statement (the "Disclosure Statement")[1] for the Second Amended

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Motion (i) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors Joint Chapter 11 Plan (ECF No. 18126; the "Motion"), or the Disclosure Statement, as applicable.

Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"). In support of the Statement, the Committee respectfully states as follows:

## STATEMENT

1.  The Committee has concluded that the Disclosure Statement, as amended in response to the objections (collectively, the "Objections") filed by various objecting parties in interest (collectively, the "Objectors") and updated to reflect recent developments, provides information that is adequate to allow any creditor to make an informed decision with respect to the Plan. In light of the complexity of the Chapter 11 Cases, and the knowledge-base that it has developed through the course of these cases, the Committee is, it respectfully submits, uniquely situated to determine whether the Disclosure Statement accurately and completely reflects the critical issues at play in the Chapter 11 Cases and the settlements relating thereto embodied in the Plan. From this perspective, the Committee has reviewed the Disclosure Statement and the supplemental disclosures provided by the Debtors in the Debtors' Response to Objections to Approval of Proposed Disclosure Statement [ECF No. 19448] (the "Debtors' Response") and determined that the Disclosure Statement contains adequate information, as required by section 1125 of the Bankruptcy Code. Accordingly, and as described more fully herein, the Committee supports the approval of the Disclosure Statement in its current form by the Court.

### A. The Committee's Role in the Chapter 11 Cases and Plan Settlement Negotiations

2.  The Committee is uniquely qualified to assess the adequacy of the information contained in the Disclosure Statement. The Committee has been involved, from the very outset of the Chapter 11 Cases, in every aspect of Debtors' asset

2

stabilization, liquidation, and claims reconciliation efforts. The Committee's professionals have worked (and continue to work) closely with the Debtors, through various Court-approved and informal protocols, in the management and wind-down of each of the Debtors' discrete asset classes, including the administration and settlement of derivative transactions, the management of the corporate loan portfolio, and the administration of the real estate and private equity portfolios.

3. The Committee has also spent considerable time, working in conjunction with the Debtors and through the independent diligence of its own advisors, evaluating the claims and contentions of all of the key constituencies in these cases. It has analyzed the proofs of claim filed by the largest third-party creditors and fully examined the merits of all material affiliate claims. Its advisors have devoted substantial time to the review of theories, such as substantive consolidation, claims recharacterization, and related issues, that would have the effect of reallocating value distributable under the Plan from certain creditor groups to others.

4. Finally, the Committee and its advisors -- through the development of numerous recovery scenarios for all the major Debtor estates and non-Debtor entities, numerous "public-information only" meetings with ad hoc creditor groups to understand their views on a number of topics, and in-depth analyses on complex intercompany, guarantee and other claims and asset issues -- ultimately developed a plan construct that provided a framework for the Second Amended Plan filed by the Debtors, including the "distribution reallocation" concept in the Plan. The Committee remained involved in the negotiation of the various settlements reflected in the Plan (the "Plan Settlements"), and many of its comments and recommendations with respect to implementing these

3

settlements were directly integrated into the Plan. Since the filing of the Plan, the Committee has continued to work with the Debtors to address the remaining unresolved issues, in the hope that a fully consensual Plan can be confirmed by this Court prior to the end of 2011.

5.  In light of all of the foregoing, the Committee has acquired a unique ability to assess the adequacy of the information provided in the Disclosure Statement. The Committee and its advisors have developed both a comprehensive knowledge of the details of the Debtors' asset base and claims pool and a global perspective on the key value drivers and the dynamics of achievable compromises. The Committee appreciates that parties in interest will always desire more information, but understands as well that if the information requested by such parties is not material to the outcome of the Chapter 11 Cases or the level of creditor recoveries, its inclusion may be neither necessary nor desirable. The material must be segregated from the immaterial. It is from this perspective, and with this objective in mind, that the Committee has evaluated the Disclosure Statement, as amended, and concluded, as set forth herein, that no additional disclosure should be required. The Disclosure Statement should be approved in its current form.

### B. The Disclosure Statement Provides Adequate Information Pursuant to Section 1125 of the Bankruptcy Code

6.  A disclosure statement may be approved as adequate only if it contains "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records," that will enable "a hypothetical investor typical of the holders of claims or interests in the case . . . to make an informed judgment about the plan." 11 U.S.C.

4

§ 1125(a)(1). Additionally, the Court must consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." *Id.* A disclosure statement is intended to aid creditors "in evaluating the plan on its face so its approval is not intended to be the primary focus of litigation in a contested Chapter 11 proceeding." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988). Approval should not be withheld if a disclosure statement contains information that allows "all creditors and equity shareholders [to] make an intelligent and informed decision as to whether to accept or reject the plan." *Id.*[2]

7.  The determination of whether a disclosure statement contains adequate information is "subjective and made on a case by case basis" and what constitutes adequate information "is largely within the discretion of the bankruptcy court." *In re WorldCom, Inc.*, No. M-47 (HB), 2003 U.S. Dist. LEXIS 11160, at *30 (S.D.N.Y. June 30, 2003) (citing *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988)).[3] As a general principle, however, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what

---

[2] Section 1125 "effects what Congress believed to be the best compromise between insuring the meaningful disclosure of financial information necessary to evaluate a plan of reorganization and allowing parties to that bankruptcy proceeding the greatest possible freedom in developing such a plan of reorganization." *Id.* at 979 (quoting *Public Serv. Co. v. Consol. Utils. & Commc'ns, Inc.*, 846 F.2d 803, 808 (1st Cir. 1988)).

[3] *See also Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008) (noting that the standard for disclosure is "flexible" and "what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis"); H.R. REP. No. 595, 95th Cong, 1st Sess. 408-09 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5963, 6365 ("Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.").

contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

8. The Committee believes that the Disclosure Statement provides adequate, legally sufficient, and accurate information to allow any creditor to make an informed decision with respect to the Plan. The Chapter 11 Cases are highly complex and involve extremely technical factual and legal issues. Nevertheless, the Committee is uniquely situated not only as a fiduciary, but, as set forth above, as an active participant in the Chapter 11 Cases that has overseen the Debtors' affairs and the Plan Settlement negotiations and interacted directly with thousands of unsecured creditors, to evaluate whether the Disclosure Statement provides adequate information.

9. The Disclosure Statement, as amended in response to the Objections and updated to reflect recent developments, provides a sufficient basis for a creditor to make an informed decision to vote on the Plan. The Disclosure Statement adequately describes the history of the Debtors' operations, the relevant transactions near the time of the Commencement Date, the Debtors' postpetition litigations, claims against the Debtors' estates, the Debtors' assets and their value, the tax consequences of the Plan, the factual basis for the Plan Settlements, and the effect of those settlements on the implementation of the Plan and distributions to creditors. In light of the complexity of the issues and facts involved in these cases, no additional information would aid a creditor in making a decision with respect to the Plan.

10. By way of illustration, one of the Objectors has demanded that additional information be provided with respect to the "risks to creditors if the Debtors' dispute with the SIPA Trustee concerning the PIK Note or the IP PIK Note is not

6

resolved favorably to the Debtors." Objection of the United States Trustee to the Motion ("UST Obj.") at 3. [ECF No. 19157]. While, as is the case with respect to hundreds of issues referenced in the Disclosure Statement, more information could be provided with respect to the PIK Note and the IP PIK Note, none was because, in the view of both the Debtors and Committee (based upon hundreds of hours of evaluating these notes), the "risks" referenced were not material to creditor recoveries.

11. Equally unavailing are the demands of certain Objectors for additional information regarding other alternative or possible chapter 11 plans. *See, e.g.*, UST Obj. ¶ 61.[ECF No. 19157]. As a threshold matter, section 1125 of the Bankruptcy Code expressly provides that a disclosure statement "need not include such information about any other possible or proposed plan." 11 U.S.C. § 1125(a)(1); *see, e.g., In re WorldCom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401, at *165 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that "the [d]ebtors are not obligated to provide information regarding any other possible or proposed plan of reorganization"). More relevant, for present purposes, is the fact that the Plan is the only plan of reorganization currently being proposed; prosecution of the Ad Hoc and Non-Consolidation Plans has been held in abeyance pursuant to the Court's July 21, 2011 order granting the Debtors' motion for approval of a stipulation among the Ad Hoc Group Members and the Non-Consolidation Plan Proponent Parties (each as defined therein). Hence, these alternative plans are irrelevant to the voting decision of creditors with respect to the Plan.

12. The inclusion of information in a disclosure statement (or the exclusion of the same therefrom) necessarily involves judgment calls by the plan proponent. Not all of the decisions by the Debtors to exclude information from the

7

Disclosure Statement were as clear-cut or uncontroversial as the foregoing examples, but, based upon its extensive knowledge of the Chapter 11 Cases and its role in the chapter 11 plan process, the Committee is comfortable that the information ultimately included in the Disclosure Statement is adequate within the meaning of section 1125 of the Bankruptcy Code.

### C. Remaining Objections Raise Plan Confirmation Issues and Should Not Be Decided at This Time

13. Any concerns that the Committee may have had with respect to deficiencies in the Disclosure Statement have been addressed by the Debtors through additional disclosure. With the supplemental information provided, the Committee is satisfied that the Debtors have provided enough information for a hypothetical investor to make an informed decision on the Plan.

14. The remaining objections, which cannot be addressed through additional disclosure, are objections to the confirmability of the Plan and not to the adequacy of the information included in the Disclosure Statement.[4] These objections, which question the validity or fairness of certain provisions of the Plan and/or claim treatment, should be addressed at the Confirmation Hearing.

15. Most notable among these are the various objections to the merits of the Plan Settlements. While framed in various ways, the gravamen of each of these objections is that the Debtors will be unable to satisfy the Bankruptcy Rule 9019 standard with respect to these settlements at the Confirmation Hearing. It is well settled, however, that disputed issues of this kind relate to the confirmability of chapter 11 plans and,

---

[4] The Committee reserves all of its rights with respect to such objections that are not decided in connection with the approval of the Disclosure Statement.

8

therefore, should be decided at the confirmation hearing. *In re Waterville Timeshare Group*, 67 B.R. 412, 414 (Bankr. D.N.H. 1986) (recognizing that a settlement embodied in a plan that was contested in a disclosure statement objection will be "prime issue" at the confirmation hearing, where parties in interest "will have a full opportunity to voice and have heard their objections to the compromise at that time"); *see In re Copy Crafters Quickprint, Inc.*, 92 B.R. at 980 (cautioning that "care must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing"); *see also In re Cardinal-Congregate I*, 121 B.R. 760, 763-64 (Bankr. S.D. Ohio 1990) (deferring ruling on objections to classification and treatment of claims and feasibility of the plan to the confirmation hearing); *In re Dakota Rail, Inc.*, 104 B.R. 138, 144 (Bankr. D. Minn 1989)(stating that an objection that raised the issue of whether the plan violated the absolute priority rule was prematurely raised at the disclosure statement hearing and should be addressed at confirmation).

16. The details of the Plan Settlements are set forth at length in the Disclosure Statement. *See* Disclosure Statement §§ X.A., "*Considerations Regarding the Chapter 11 Plan*"; X.B.1., "*Description of the Plan and Compromise of Substantive Consolidation and Related Issues*"; X.B.4., "*Plan Negotiations With Certain Creditors.*" The information provided in the Disclosure Statement is adequate to enable claimants to make an informed judgment to accept or reject the Plan without waiving any right to object to the confirmation of the Plan and the compromises integrated therein. It will be the Debtors' burden to establish at the confirmation hearing that the compromises are in the best interests of the Debtors' estates and their creditors and otherwise consistent with the Bankruptcy Code and applicable precedent.

9

17. Thus, the Committee believes that the Court should defer consideration of these and any other objections to the confirmability of the Plan until the time of the Confirmation Hearing.

### D. Objections to Liquidation Analysis and Solicitation Procedures Are Without Merit

18. Separately, the Committee concurs in the Debtors' view that the objections to the propriety of the Exhibit 5 Liquidation Analysis for Each Debtor (the "Liquidation Analysis"), and the solicitation procedures as set forth in paragraph 5 of the order (the "Solicitation Procedures Order") proposed by the Motion, asserted by a number of Objectors are entirely without merit.

19. The Liquidation Analysis properly reflects the Plan Settlements incorporated in the Plan. As courts in this and other districts have uniformly held, for purposes of evaluating a chapter 11 plan, the disclosure statement liquidation analysis should be prepared using the same or substantially similar assumptions as used in the proposed plan to enable creditors to compare the potential results under the plan and alternatively, under chapter 7 of the Bankruptcy Code. *See*, *e.g.*, *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252-55 (Bankr. S.D.N.Y. 2007) ("it is reasonable to assume that a chapter 7 trustee would adopt settlements similar to the Settlement . . . embodied within the Plan in order to avoid the risks, length, cost and uncertainties of litigation," thus, "[c]omparing the estimated recovery for each impaired creditor under the Plan with its estimated recovery in a hypothetical chapter 7 case requires examining . . . the Settlement embodied in the Plan."); *In re Enron Corp.*, No. 01-16034, 2004 Bankr. LEXIS 2549, at *118 (Bankr. S.D.N.Y. July 15, 2004) (holding that the debtors' liquidation analysis appropriately assumed "that the many issues resolved by the [chapter

11 plan's] global compromise would remain and require resolution in a conversion to chapter 7, [and] . . . it is more useful for [c]reditors to compare estimated recoveries using the same assumptions regarding these issues").

20.    Equally without merit is the contention that the Solicitation Procedures Order somehow deprives claimants of the ability to have their claims estimated for voting purposes in a higher amount than proposed by the Debtors. Objection of PricewaterhouseCoopers AG, Zurich, as Bankruptcy Liquidator of Lehman Brothers Finance AG, in Liquidation to the Disclosure Statement and Motion ¶ 6 [ECF No. 19172]; Objection Of Danske Bank A/S, London Branch to the Motion ¶ 16 [ECF No. 19257].  The language that the Objectors find troubling in the Solicitation Procedures Order does not negate pre-existing notice requirements pursuant to Bankruptcy Rule 3018, which provides that "the court after notice and a hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  *See* Fed. R. Bankr. P. 3018(a).  Moreover, the Solicitation Procedures Order elsewhere expressly provides a procedure by which "any claimant/creditor [may elect] to challenge the disallowance or classification of its claim for voting purposes" by filing a Temporary Allowance Request Motion "pursuant to Bankruptcy Rule 3018(a) requesting such relief as it may assert is proper, including the temporary allowance or reclassification of its claim for voting purposes."  Solicitation Procedures Order ¶ 6.

WHEREFORE, the Committee respectfully requests that the Court (i) approve the Disclosure Statement; (ii) grant the relief requested in the Motion; and (iii) grant the Committee such other relief as is just.

Dated: New York, New York
August 23, 2011

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: _Dennis F. Dunne_
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.