**<u>Exhibit 14B</u>**

**Bankhaus Settlement Agreement**

EXECUTION COPY

## AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of March 1, 2011 (the "Execution Date"), by and among the Debtors[1] and certain of their Non-Debtor Affiliates[2] (collectively, "Lehman US"), and Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) (the "LBB InsAdmin") of Lehman Brothers Bankhaus AG (*in Insolvenz*) ("Bankhaus"). Lehman US and Bankhaus, acting through the LBB InsAdmin, shall each be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on November 12, 2008, the German banking regulator filed insolvency proceedings against Bankhaus (the "Bankhaus Proceeding"), and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main (the "German Insolvency Court") opened insolvency proceedings and appointed Dr. Michael C. Frege as the LBB InsAdmin;

WHEREAS, on April 29, 2009, the LBB InsAdmin on behalf of Bankhaus filed his Verified Petition Under Chapter 15 of the Bankruptcy Code for Recognition of Foreign Representative and Foreign Main Proceeding and for Additional Relief Under 11 U.S.C. Section 1521 [Docket No. 2], *In re Lehman Brothers Bankhaus AG (in Insolvenz)*, Case No. 09-12704 (JMP) (Bankr. S.D.N.Y.) (the "Bankhaus Chapter 15 Case"), and on May 22, 2009, the Bankruptcy Court entered an Order Granting Recognition of Foreign Representative and Foreign Main Proceeding and for Additional Relief Under 11 U.S.C. § 1521 [Docket No. 25] in the Bankhaus Chapter 15 Case;

WHEREAS, Bankhaus has filed or is the owner of the proofs of claim listed on Schedule A attached hereto against certain Debtors (collectively, the "Proofs of Claim");

WHEREAS, Lehman US has filed the claims listed on Schedules B-1 and B-2 attached hereto against Bankhaus (the "Liquidation Claims");

---

[1]  As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation ("LBCC"); Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc. ("LBCS"); Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

[2]  As used herein, "Non-Debtor Affiliates" means LB3 GmbH, Lehman Brothers Europe Inc., LB 1 Group Inc., Lehman Brothers International Services Inc., Lehman Brothers Offshore Partners Ltd., Luxembourg Finance S.à.r.l., PAMI Harbour Park, and Property Asset Management Inc.

US_ACTIVE:\43625059\07\58399.0008



WHEREAS, the Parties have entered into that certain amended tolling agreement with respect to the US Avoidance Actions and German Avoidance Actions, dated as of September 24, 2010 (the "Tolling Agreement"); and

WHEREAS, pursuant to an order of the Bankruptcy Court entered on January 14, 2010 [Docket No. 6665], authorizing and approving that certain settlement agreement with the LBB InsAdmin dated December 15, 2009 (the "Initial Bankhaus Settlement"), which order was supplemented by a stipulation so ordered by the Bankruptcy Court on August 5, 2010 [Docket No. 10642], a portion of the LBB InsAdmin's claim against LBHI, Claim No. 0000058233, was allowed in the amount of $1,380,900,000 (subject to certain adjustments) (the "Initially Allowed LBHI SCA Claim"), and a portion of the LBB InsAdmin's claim against LCPI, Claim No. 0000059006, was allowed in the amount of $1,015,500,000 (the "Initially Allowed LCPI SCA Claim");

WHEREAS, the Parties are desirous of resolving all disputes and all other outstanding issues between the Parties and avoiding extensive and expensive litigation;

WHEREAS, on January 25, 2011, the Debtors filed the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 14150] (the "Plan") and the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 14151] (the "Disclosure Statement"); and

WHEREAS, the Debtors will file an amended chapter 11 plan that will incorporate the terms and conditions of this Agreement (said plan and any amendments, modifications, and supplements thereto, the "Amended Plan");

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    ***Definitions***

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Allowed Bankhaus Claims" has the meaning ascribed to it in section 2.1(e).

"Allowed US Claims" has the meaning ascribed to it in section 2.1(e).

"Amended Plan" has the meaning ascribed to it in the Recitals.

"Asset Sale" means the sale to LBHI of (i) Spruce and Verano for the Spruce-Verano Purchase Price; and (ii) SASCO for the SASCO Purchase Price.

"Assigned BH Interest" has the meaning ascribed to it in section 3.5(b).

"Assigned US Interest" has the meaning ascribed to it in section 4.4(b).

"Bankhaus Chapter 15 Case" has the meaning ascribed to it in the Recitals.



"Bankhaus Creditor Groups" has the meaning ascribed to it in section 2.3(b)(2)

"Bankhaus Creditors Assembly" has the meaning ascribed to it in section 2.3(b)(2)

"Bankhaus Creditors Committee" has the meaning ascribed to it in section 2.3(b)(2)

"Bankhaus Proceeding" has the meaning ascribed to it in the Recitals.

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"BH Claim Transferee" has the meaning ascribed to it in section 3.5(b).

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Chapter 15 Order" means an order of the Bankruptcy Court entered in the Bankhaus Chapter 15 Case (i) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (ii) authorizing the LBB InsAdmin to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Confirmation Date" means the date of the entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Order" means an order of the Bankruptcy Court (i) confirming the Amended Plan or an Other Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Effective Date" means the date that the Amended Plan or an Other Plan becomes effective as provided for therein.

"German Avoidance Actions" means all avoidance actions and causes of action against Lehman US pursuant to sections 129, *et seq*., of the German Insolvency Code (*Insolvenzordnung*).

"German Insolvency Court" has the meaning ascribed to it in the Recitals.

"Initial Bankhaus Settlement" has the meaning ascribed to it in the Recitals.

"Initially Allowed LBHI SCA Claim" has the meaning ascribed to it in the Recitals.

"Initially Allowed LCPI SCA Claim" has the meaning ascribed to it in the Recitals.

"Insolvency Plan" has the meaning ascribed to it in section 2.3(c).

"LB Banque Claim" has the meaning ascribed to it in section 2.2(a)(1).

"LBCCA ISDA Claim" has the meaning ascribed to it in section 2.1(a)(4).

"LCPI 7th Avenue Claim" has the meaning ascribed to it in 2.1(c).



"Liquidation Claims" has the meaning ascribed to it in the Recitals.

"LPS Claim" has the meaning ascribed to it in 2.1(a)(3).

"Other Plan" means a chapter 11 plan or plans, proposed by parties other than the Debtors, that incorporate the settlements provided for in this Agreement.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

"Remaining LBHI SCA Claim" has the meaning ascribed to it in section 2.1(a)(2).

"SASCO" means the security with ISIN 78403WAA6.

"SASCO Purchase Price" means an amount equal to $625,000,000 subject to a payment of an additional $100,000,000 in the event that the Confirmation Order is not entered on or before December 31, 2012; provided, however, that such additional payment shall not be required to be paid (i) in the event that the LBB InsAdmin terminates this Agreement pursuant to sections 11.3(a) or 11.3(d), or (ii) in the event that Lehman US terminates this Agreement pursuant to section 11.2(c); provided, further, that in the event that Lehman US terminates this Agreement pursuant to section 11.2(d), such additional payment shall be reduced by an amount equal to the difference between the actual recoveries realized in the Bankhaus Proceeding in respect of the Allowed US Claims and the recoveries that would have been realized in the Bankhaus Proceeding in respect of the Allowed US Claims if the LBB InsAdmin did not allow and provide for materially different treatment of claims held by other creditors of Bankhaus that are factually and legally similar to the Allowed US Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement in respect of the Allowed US Claims.

"Secured 7th Avenue Claims" has the meaning ascribed to it in section 2.1(b).

"Secured 7th Avenue Series 3 Claim" has the meaning ascribed to it in section 2.1(b).

"Secured 7th Avenue Series 4 Claim" has the meaning ascribed to it in section 2.1(b).

"Series 3 Swap Collateral Proceeds" has the meaning ascribed to it in section 2.1(b).

"Series 4 Swap Collateral Proceeds" has the meaning ascribed to it in section 2.1(b).

"Spruce" means the securities with ISIN 852079AA0.

"Spruce-Verano Purchase Price" means an amount equal to $332,000,000.

"Swap Collateral Proceeds" has the meaning ascribed to it in section 2.1(b).

"Tolling Agreement" has the meaning ascribed to it in the Recitals.

"Total 7th Avenue Series 3 Claim" has the meaning ascribed to it in section 2.1(b).

"Total 7th Avenue Series 4 Claim" has the meaning ascribed to it in section 2.1(b).

"Unsecured 7th Avenue Claims" has the meaning ascribed to it in section 2.1(b).

"Unsecured 7th Avenue Series 3 Claim" has the meaning ascribed to it in section 2.1(b).



"Unsecured 7th Avenue Series 4 Claim" has the meaning ascribed to it in section 2.1(b).

"US Avoidance Actions" all actions under chapter 5 of the Bankruptcy Code or similar actions under applicable state law.

"US Claim Transferee" has the meaning ascribed to it in section 4.4(b).

"Verano" means the securities with ISIN 92336PAB2.

   2.    *Settlement of Claims.*

        2.1.    *The LBB InsAdmin's Claims Against the Debtors.*

        (a)    *Claim Against LBHI.*

                (1)    That portion of the LBB InsAdmin's claim against LBHI, Claim No. 0000058233, that relates to intercompany foreign exchange swap trades will be allowed and accepted as a non-priority, non-senior, unsecured claim in an aggregate amount of $7,867,140.

                (2)    The balance of the LBB InsAdmin's claim against LBHI, Claim No. 0000058233, that relates to the Security & Collateral Agreement, net of the amount of the Initially Allowed LBHI SCA Claim, will be allowed in an aggregate amount of $6,425,000,000 (the "Remaining LBHI SCA Claim") as a non-priority, unsecured claim.

                (3)    The LBB InsAdmin's claim against LBHI, Claim No. 0000058241, that is based in whole or in part on LBHI's guarantee of Lehman Programs Securities (the "LPS Claim") will be allowed as a non-priority, unsecured claim in an aggregate amount of $19,191,840.

                (4)    That portion of the LBB InsAdmin's claim against LBHI, Claim No. 0000058233, on account of any and all claims arising under that certain ISDA Master Agreement & Credit Support Annex with Lehman Brothers Commercial Corporation Asia Ltd. (the "LBCCA ISDA Claim") will be allowed as a non-priority, non-senior unsecured claim in an aggregate amount of $16,256,461.

        (b)    *7th Avenue Claims Against LBSF*: The LBB InsAdmin's claim against LBSF, Claim No. 0000027947, on account of that certain Multi-Structure Note Programs for 7th Avenue and Master Trust Deed, dated September 12, 2002, will be allowed (A) in an aggregate amount of $200,000,000 (the "Total 7th Avenue Series 3 Claim") as follows: (i) as a secured claim against LBSF (the "Secured 7th Avenue Series 3 Claim"), in an amount equal to the net proceeds realized (less reasonable expenses incurred in connection with the collection of such proceeds) from the swap agreements listed on Schedule C1 hereto (the "Series 3 Swap Collateral Proceeds"), and to the extent that the Series 3 Swap Collateral Proceeds do not fully satisfy the Total 7th Avenue Series 3 Claim, (ii) as a non-priority, non-senior unsecured claim against LBSF in an amount equal to the Total 7th Avenue Series 3 Claim less the Series 3 Swap Collateral Proceeds (the "Unsecured 7th Avenue Series 3 Claim"); and (B) in an aggregate amount of $1,000,000,000 (the "Total 7th Avenue Series 4 Claim") as follows: (i) as a secured claim against LBSF (the "Secured 7th Avenue Series 4 Claim" and, together with the Secured 7th Avenue Series 3 Claim, the "Secured 7th Avenue Claims"), in an amount equal to the net proceeds realized (less reasonable expenses incurred in connection with the collection of such proceeds) from the swap agreements listed on Schedule C2 hereto (the "Series 4 Swap Collateral Proceeds" and, together with the Series 3 Swap Collateral Proceeds, the "Swap Collateral Proceeds"), and to the extent that the Series 4 Swap Collateral Proceeds do not fully satisfy the Total 7th Avenue Series 4 Claim, (ii) as a non-



priority, non-senior unsecured claim against LBSF in an amount equal to (x) the Total 7th Avenue Series 4 Claim less the Series 4 Swap Collateral Proceeds (the "<u>Unsecured 7th Avenue Series 4 Claim</u>" and, together with the Unsecured 7th Avenue Series 3 Claim, the "<u>Unsecured 7th Avenue Claims</u>") less (y) the $320,904,908 representing the amount of LBSF's allowed claims against Bankhaus referred to in section 2.2(b) below.

(1)    As soon as practicable following the Effective Date, but no later than 30 days following the Effective Date, LBSF shall make a distribution to LBB InsAdmin of the Swap Collateral Proceeds collected and held by LBSF as of the Confirmation Date, with periodic distributions six months after the Effective Date, and every six months thereafter, of received and collected Swap Collateral Proceeds, if any, provided that a distribution will be made as promptly as possible if at any time after the Effective Date, (i) the amount of Swap Collateral Proceeds received and collected, but not yet distributed, either is equal to or greater than $1,000,000, or (ii) represents the final amount of the collected Swap Collateral Proceeds. To the extent that either the Secured 7th Avenue Series 3 Claim or the Secured 7th Avenue Series 4 Claim is satisfied in full from the Series 3 Swap Collateral Proceeds or the Series 4 Swap Collateral Proceeds, respectively, all liens of the LBB InsAdmin in respect of any proceeds securing such fully satisfied claim or claims shall be deemed released and discharged.

(2)    For the purpose of establishing distribution reserves, as of the Confirmation Date, (i) the Unsecured 7th Avenue Series 3 Claim shall be estimated in an amount equal to the Total 7th Avenue Series 3 Claim less the Series 3 Swap Collateral Proceeds received and collected by LBSF as of the Confirmation Date, and (ii) the Unsecured 7th Avenue Series 4 Claim shall be estimated in an amount equal to the Total 7th Avenue Series 4 Claim less the Series 4 Swap Collateral Proceeds received and collected by LBSF as of the Confirmation Date. That estimate shall be reduced as and when additional amounts of the Swap Collateral Proceeds are distributed to LBB InsAdmin. The amounts of the Unsecured 7th Avenue Series 3 Claim and Unsecured 7th Avenue Series 4 Claim shall be determined and fixed in amount and allowed in that amount, and thereafter, LBSF will make a distribution to LBB InsAdmin in accordance with the terms of the Amended Plan as to each such finally allowed claim when, with respect to the Unsecured 7th Avenue Series 3 Claim, all Series 3 Swap Collateral Proceeds have been distributed to LBB InsAdmin and, with respect to the Unsecured 7th Avenue Series 4 Claim, all Series 4 Swap Collateral Proceeds have been distributed to LBB InsAdmin, or the Parties have agreed on fixed amounts for the Secured 7th Avenue Claims and Unsecured 7th Avenue Claims, based upon total collections and the LBB InsAdmin's waiver in respect of its liens on any unpaid balances. LBSF currently estimates that the ultimate aggregate amount of the Series 3 Swap Collateral Proceeds may total at least $209,000,000, and the ultimate aggregate amount of the Series 4 Swap Collateral Proceeds may total $479,000,000, it being understood that this estimate is not Lehman US's guarantee of such amount nor a commitment of any kind whatsoever. The Debtors will provide the LBB InsAdmin with periodic, and in any event, on the 15th of January and June of each year, information on the amounts of collected Swap Collateral Proceeds and unpaid balances on an ongoing basis.

(c)    *7th Avenue Claim Against LCPI*: The LBB InsAdmin's claim against LCPI, Claim No. 0000059006, on account of that certain master repurchase agreement dated October 16, 1998, as amended from time to time, between, *inter alia*, Bankhaus and LCPI will be allowed as a non-priority unsecured claim in an amount equal to the amount of (i) $1,279,401,572 less the Swap Collateral Proceeds and all distributions received by Bankhaus with respect to the Unsecured 7th Avenue Claims under the Amended Plan (the "<u>LCPI 7th Avenue Claim</u>"); less (ii) the $69,344,378, representing the amount of LCPI's allowed claims against Bankhaus referred to in section 2.2(e) below. For the purpose of establishing distribution reserves, as of the Confirmation Date, the LCPI 7th Avenue Claim shall be estimated in an amount to be determined based on the amount of Swap Collateral Proceeds as of the date immediately preceding the Confirmation Date. That estimated amount shall be reduced as and when further distributions of the Unsecured 7th Avenue Claims are made. The amount of the LCPI 7th Avenue



Claim shall be finally determined and fixed in such amount and allowed in that amount, and an appropriate distribution made pursuant to the Amended Plan as to said claim, contemporaneously with all distributions made based on the allowed Unsecured 7th Avenue Claims or when the Parties have agreed on fixed amounts for the Secured 7th Avenue Claims and the Unsecured 7th Avenue Claims as provided in section 2.1(b)(2).

(d)    Other than the claims to be allowed as set forth in section 2.1(a)-(c) hereof, the Initially Allowed LBHI SCA Claim and the Initially Allowed LCPI SCA Claim, all other claims asserted or held by Bankhaus or the LBB InsAdmin against Lehman US, including without limitation, those claims that are reflected in <u>Schedule A</u> annexed hereto, will be deemed expunged.

(e)    The allowed claims of the LBB InsAdmin as set forth in this section 2.1 (the "<u>Allowed Bankhaus Claims</u>") shall not, except as otherwise specifically provided for herein, be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors; provided that in the event that any party objects to any of the claims of Lehman US that are allowed pursuant to this Agreement (the "<u>Allowed US Claims</u>"), until such time as such Allowed US Claims are allowed by the German courts or otherwise settled in a manner acceptable to the Parties, Lehman US shall be entitled to withhold from distributions that would otherwise be made under the Amended Plan in respect of the Allowed Bankhaus Claims an amount that is equal to the amount of distributions that would otherwise be made with respect to the Allowed US Claims that are the subject of an objection.

2.2.    *Lehman US's Claims Against Bankhaus.*

(a)    *LBHI*

(1)    LBHI has acquired a claim against Bankhaus from Lehman Brothers Banque S.A. (the "<u>LB Banque Claim</u>"). LBHI acknowledges the LBB InsAdmin's intent to treat the LB Banque Claim as a subordinated claim within the meaning of § 39 German Insolvency Code (*Insolvenzordnung*). LBHI will not challenge such treatment of the LB Banque Claim.

(2)    As provided in the Initial Bankhaus Settlement, (i) LBHI agrees that any cash collateral provided by LBHI to the LBB InsAdmin under the Security & Collateral Agreement shall remain with the LBB InsAdmin, and the LBB InsAdmin and Bankhaus shall under no circumstance be required to repay such cash collateral to LBHI, and (ii) LBHI expressly waives all of its rights with respect to such cash collateral including, but not limited to, all rights pursuant to the doctrines of set-off, recoupment, retention or any other legal or equitable theory.

(b)    *LBSF*: The claims asserted by LBSF (Claimant No. 432) against Bankhaus will be allowed in an aggregate amount of $320,904,908, which will be satisfied by reducing the LBB InsAdmin's claim against LBSF by such allowed amount, as provided in section 2.1(b) hereof.

(c)    *LBCC*: The claims asserted by LBCC (Claimant No. 456) against Bankhaus will be allowed as non-priority, non-senior, unsecured claims (§ 38 German Insolvency Code (*Insolvenzordnung*)) in an aggregate amount of $101,979,146.

(d)    *LBCS*: The claims asserted by LBCS (Claimaint No. 457) against Bankhaus will be allowed as non-priority, non-senior, unsecured claims (§ 38 German Insolvency Code (*Insolvenzordnung*)) in an aggregate amount of $149,747,293.



(e)    *LCPI:* The claims asserted by LCPI (Claimant No. 435) against Bankhaus will be allowed in an aggregate amount of $69,344,378, which will be satisfied by reducing the LBB IndAdmin's claim against LCPI by such allowed amount, as provided in section 2.1(c) hereof.

(f)    *Luxembourg Finance S.à.r.l.:* Luxembourg Finance S.à.r.l. acknowledges the LBB InsAdmin's intent to treat the claim asserted by Luxembourg Finance S.à.r.l. in an amount equal to €273,546,795.05 (Claimant No. 433) (the "Lux Finance Claim") as a subordinated claim within the meaning of § 39 German Insolvency Code (*Insolvenzordnung*). Luxembourg Finance S.à.r.l. will not challenge such treatment of the Lux Finance Claim.

(g)    Lehman US acknowledges the LBB InsAdmin's intent to treat the claims set forth on Schedule B-2 as subordinated claims within the meaning of § 39 German Insolvency Code (*Insolvenzordnung*). All other claims asserted or held by Lehman US against Bankhaus, including without limitation those claims that are set forth in Schedule B-1 annexed hereto, will be deemed expunged.

(h)    The allowed claims of Lehman US as set forth in this section 2.2 shall not, except as otherwise specifically provided for in section 2.2(a)(1), be subject to further objections or defenses by the LBB InsAdmin, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim that would have the effect of subordinating such claims to the claims of other general unsecured creditors.

2.3.    *Plan Support.*

(a)    *The Debtors' Obligations.* Within a reasonable period of time following the Execution Date, the Debtors will (a) file with the Bankruptcy Court and prosecute (i) the Amended Plan, (ii) the approval of a disclosure statement with respect to the Amended Plan and establishing voting procedures, and (iii) entry of a Confirmation Order with respect to the Amended Plan, and (b) seek approval of the settlements provided for under this Agreement and defend any objections thereto.

(b)    *The LBB InsAdmin's Obligations.* The LBB InsAdmin agrees to perform and comply with the following obligations as to the Amended Plan, which obligations shall become effective upon the Execution Date notwithstanding the terms and conditions of section 10 below, or any other provisions of this Agreement:

(1)    The LBB InsAdmin shall not commence any proceeding or otherwise prosecute, join in, or support any objection to, or oppose or object to, the Amended Plan, and will not consent to, support, or participate in the formulation of any other chapter 11 plan in the Chapter 11 Cases, provided that entry of the Confirmation Order has not been denied with prejudice or this Agreement is otherwise terminated pursuant to section 11 of this Agreement.

(2)    The LBB InsAdmin shall promptly seek authority from the Bankhaus creditors' committee (*Gläubigerausschuss*) ("Bankhaus Creditors Committee") and the Bankhaus creditors' assembly (*Gläubigerversammlung*) ("Bankhaus Creditors Assembly" and, together with the Bankhaus Creditors Committee, the "Bankhaus Creditor Groups") to perform all of the obligations set forth in this Agreement prior to the deadline for voting on the Amended Plan.

(3)    Subject to having obtained authority only from the Bankhaus Creditor Groups, the LBB InsAdmin shall timely vote to accept the Amended Plan; provided, that he has been solicited pursuant to section 1125 of the Bankruptcy Code.

(4)    Subject to having obtained authority from the Bankhaus Creditor Groups, the LBB InsAdmin shall support, and use good faith diligent efforts to promote, the confirmation and consummation of the Amended Plan, and shall recommend that creditors of Bankhaus who have filed claims against the Debtors and have been solicited pursuant to section 1125 of the Bankruptcy Code timely vote to accept the Amended Plan.

(5)    The LBB InsAdmin shall not object to or contest the claims asserted against any Lehman US entity by other affiliates of the Debtors that have entered into agreements with the Debtors settling claims and receivables among such parties.

(c)    This Agreement is not and shall not be deemed to be a solicitation for consents to the Amended Plan. The acceptance of the LBB InsAdmin will not be solicited until the LBB InsAdmin has received a Disclosure Statement in respect of the Amended Plan that has been approved by the Bankruptcy Court.

(d)    *Intended German Insolvency Plan.*  The LBB InsAdmin may consider proposing an insolvency plan in the Bankhaus Proceeding (the "Insolvency Plan"). *Provided* that the Debtors are afforded an opportunity to review, at a minimum, a summary of the salient terms of the Insolvency Plan a reasonable and appropriate time, but in no event not less than 30 days prior to submission of the Insolvency Plan to the German Insolvency Court, and are reasonably satisfied that the Insolvency Plan is consistent with the terms of this Agreement and does not materially impact the Debtors' interests and recoveries in the Bankhaus Proceeding from what it could expect in a German insolvency proceedings, and treats creditors consistent with German insolvency law, and knowing that the LBB InsAdmin will not be guaranteeing any specific recovery amount under the Insolvency Plan; the Debtors will (i) support, use good faith efforts to promote, the confirmation and consummation of the Insolvency Plan in the Bankhaus Proceeding, (ii) not commence any proceeding, otherwise prosecute, join in, support an objection to, or oppose or object to the Insolvency Plan; (iii) *provided* that they have been properly solicited and are entitled to a voting right, timely vote to accept the Insolvency Plan; (iv) *provided* that the creditors of the Debtors who are also creditors of Bankhaus have been properly solicited and are entitled to a voting right, ask that all such creditors timely vote to accept the Insolvency Plan; and (v) seek authority, to the extent necessary, from the Bankruptcy Court, to perform all of the foregoing prior to the deadline for the voting on the Insolvency Plan.

3.    **The LBB InsAdmin's Representations and Warranties**.  In order to induce Lehman US to enter into and perform their obligations under this Agreement, the LBB InsAdmin hereby represents, warrants and acknowledges as follows:

3.1.    *Authority.*  Subject to the Bankhaus Creditor Groups each having approved the execution and delivery of, and the performance of the obligations of the LBB InsAdmin under, this Agreement and the transactions contemplated herein (i) the LBB InsAdmin has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by the LBB InsAdmin of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the LBB InsAdmin and no other proceedings on the part of the LBB InsAdmin are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

3.2.    *Validity.*  Subject to the Bankhaus Creditor Groups each having approved the execution and delivery of, and the performance of the obligations of the LBB InsAdmin under, this Agreement and the transactions contemplated herein, this Agreement has been duly executed and



delivered by the LBB InsAdmin and constitutes the legal, valid and binding agreement of the LBB InsAdmin, enforceable against the LBB InsAdmin in accordance with its terms.

3.3.    *Authorization of Governmental Authorities and Creditors*.    No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the LBB InsAdmin pursuant to this Agreement other than as set forth in section 3.1 above.

3.4.    *No Reliance*.    The LBB InsAdmin (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any Non-Debtor Affiliate or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as the LBB InsAdmin has deemed appropriate, made his own analysis and decision to enter into this Agreement, except that the LBB InsAdmin has relied upon each Debtor's and each Non-Debtor Affiliate's express representations, warranties and covenants in this Agreement, the LBB InsAdmin acknowledges that it has entered into this Agreement voluntarily and of his own choice and not under coercion or duress.

3.5.    *Title; No Prior Transfer of Claims*.

(a)    Other than the Initially Allowed LBHI SCA Claim and the Initially Allowed LCPI SCA Claim, which were previously sold and assigned, the LBB InsAdmin (i) owns the Proofs of Claim free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by the LBB InsAdmin, (ii) is not aware of any third party rights with respect to the Proofs of Claim as of the Execution Date, and (iii) has not transferred or assigned to any other person any of the Proofs of Claim, in whole or in part.

(b)    The LBB InsAdmin may only convey, transfer, assign, or participate any of the claims or receivables that are the subject of this Agreement, or any rights or interests arising thereunder, in whole or in part, after the earlier of the Effective Date or December 31, 2011 (in each case, an "Assigned BH Interest"), to any party or parties (in each case, a "BH Claim Transferee") provided that any such conveyance, transfer, assignment, or participation is consummated pursuant to a written agreement that provides (i) that the terms and provisions of this Agreement shall be binding in all respects upon the BH Claim Transferees, and any successor transferees, and shall govern their acts, and (ii) that the LBB InsAdmin shall retain all rights with respect to the Assigned BH Interests, to vote on any chapter 11 plan proposed in the Chapter 11 Cases in his sole discretion and in a manner that is consistent with the terms of this Agreement. No such conveyance, transfer, assignment, or participation shall be valid unless (i) Lehman US receives a copy of said written agreement executed by the transferor and the transferee and (ii) Lehman US does not object to the proposed conveyance, transfer, assignment, or participation, based on the failure of said written agreement to contain the foregoing provisions; provided, however, that the foregoing restriction on objections shall not apply with respect to any objections premised on any orders entered in the Chapter 11 Cases relating to the trading of claims. Any such conveyance, transfer, assignment, or participation shall not relieve the LBB InsAdmin of any of his obligations under this Agreement.

4.    ***Lehman US's Representations and Warranties***.    In order to induce the LBB InsAdmin to enter into and perform its obligations under this Agreement, each Debtor and each Non-Debtor Affiliate hereby represents, warrants and acknowledges as follows:

4.1.    *Authority.*

(a)    Subject to the occurrence of the Effective Date, (i) each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

(b)    (i) Each Non-Debtor Affiliate has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Non-Debtor Affiliate of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Non-Debtor Affiliate and no other proceedings on the part of such Non-Debtor Affiliate are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2.    *Validity.*

(a)    Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

(b)    This Agreement has been duly executed and delivered by each Non-Debtor Affiliate and constitutes the legal, valid and binding agreement of each Non-Debtor Affiliate, enforceable against each Non-Debtor Affiliate in accordance with its terms.

4.3.    *Authorization of Governmental Authorities.*    No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and each Non-Debtor Affiliate of this Agreement, other than entry of the Confirmation Order.

4.4.    *Title; No Transfer of Claims.*

(a)    Lehman US (i) owns the Liquidation Claims free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Lehman US, (ii) is not aware of any third party rights with respect to the Liquidation Claims as of the Execution Date, and (iii) has not transferred or assigned to any other person any of the Liquidation Claims, in whole or in part.

(b)    Lehman US may only convey, transfer, assign, or participate any of the claims or receivables that are the subject of this Agreement, or any rights or interests arising thereunder, in whole or in part, after the earlier of the Effective Date or December 31, 2011 (in each case, an "Assigned US Interest"), to any party or parties (in each case, a "US Claim Transferee") provided that any such conveyance, transfer, assignment, or participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Agreement shall be binding in all respects upon the US Claim Transferees, and any successor transferees, and shall govern their acts. No such conveyance, transfer, assignment, or participation shall be valid unless (i) the **LBB** InsAdmin receives a copy of said written agreement executed by the transferor and the transferee and (ii) the LBB InsAdmin does not



object to the proposed conveyance, transfer, assignment, or participation, based on the failure of said written agreement to contain the foregoing provisions. Any such conveyance, transfer, assignment, or participation shall not relieve Lehman US of any of its obligations under this Agreement.

4.5.  *No Reliance.* Each Debtor and each Non-Debtor Affiliate (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and (except for the information provided to the LBB Ins Admin or Bankhaus, respectively, by LBSF and/or by or through LAMCO acting on its behalf under the Cash Segregation Stipulation with respect to (i) the amount of funds collected from 7th Avenue Series 3 and Series 4 counterparties and (ii) any factual circumstances in writing (including electronic text communication) when seeking LBB Ins Admin's agreement to any settlements or any alternative dispute resolution results with any counterparty) without reliance upon the LBB InsAdmin, and based on such information as such Debtor or such Non-Debtor Affiliate has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor or such Non-Debtor Affiliate has relied upon the LBB InsAdmin's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

5.  ***Due Diligence on Avoidance Actions.*** The Parties will perform the necessary due diligence with respect to US Avoidance Actions and German Avoidance Actions and will complete such diligence prior to entry of an order by the Bankruptcy Court approving the disclosure statement related to the Amended Plan, but in no event earlier than April 30, 2011. The Parties will cooperate with each other during the due diligence period and work together in a working-group. The Parties will examine the transactions between the Parties that occurred in the period of one year prior to September 15, 2008. The contractual understanding of the Parties is that this examination takes place in an appropriate time period and on a cooperative, transparent way. Promptly upon the completion of such diligence, the Parties will either commence any Avoidance Actions or provide notice to the other Party that, subject to the effectiveness of this Agreement, such Party will not commence any Avoidance Actions against any other Party.

6.  ***Asset Sale.*** The LBB InsAdmin will sell to LBHI (i) Spruce and Verano for the Spruce-Verano Purchase Price, and (ii) SASCO for the SASCO Purchase Price, subject to the Parties entering into definitive documentation and obtaining requisite approvals, which shall be obtained as soon as reasonably possible prior to the Effective Date. The obligation of the LBB InsAdmin to sell to LBHI and of LBHI to purchase SASCO, Spruce and Verano shall survive the termination of this Agreement.

7.  ***Surviving Contracts.*** The contracts and any non-binding agreements listed in <u>Schedule D</u> shall survive the execution, consummation or termination of this Agreement. All·other contracts between Lehman US and the LBB InsAdmin or Bankhaus that are not included on <u>Schedule D</u> shall be rejected pursuant to Section 365 of the Bankruptcy Code in accordance with the Amended Plan. Any claims that arise from the rejection of contracts between Lehman US and the LBB InsAdmin are deemed to be satisfied in full by the claims allowed pursuant to section 2 hereof.

8.  ***Cooperation.*** The Parties will continue to exchange data relating to the respective bankruptcy cases and insolvency proceedings based on the data sharing agreement and the cross border international protocol in order to assist each other in resolving claims of affiliates and other creditors and in order for the LBB InsAdmin to reasonably monitor the Swap Collateral Proceeds collection.



9.    *Releases.*

9.1.    *Lehman US's Releases.*  Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in section 2 hereof, (ii) Lehman US's distribution entitlements in the Bankhaus Proceeding, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (iv) the performance of the obligations set forth herein, (v) the agreements, promises, settlements, representations and warranties set forth in the Initial Bankhaus Settlement, (vi) the claims, if any, arising under the surviving contracts set forth on Schedule D, and (vii) the duties and obligations of the LBB InsAdmin as Insolvency Administrator (*Insolvenzverwalter*) of Bankhaus, and subject to the effectiveness of this Agreement in accordance with section 10 below, and in consideration of the foregoing and the LBB InsAdmin's execution of this Agreement, each Debtor and each Non-Debtor Affiliate on behalf of itself, its estate (where applicable), its successors and assigns, will fully and forever release, discharge and acquit the LBB InsAdmin, and his respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including all US Avoidance Actions and any claims based upon an asserted right of subrogation, including but not limited to any such subrogation claims in connection with distribution to Bankhaus' creditors based upon a guarantee or similar document by LBHI or any of its affiliates.

9.2.    *LBB InsAdmin's Releases.*  Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in section 2 hereof, (ii) the LBB InsAdmin's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (iv) the performance of the obligations set forth herein, and (v) the agreements, promises, settlements, representations and warranties set forth in the Initial Bankhaus Settlement, and (vi) the claims, if any, arising under the surviving contracts set forth on Schedule D, and subject to the effectiveness of this Agreement in accordance with section 10 below, and in consideration of the foregoing and each Lehman US entity's execution of this Agreement, the LBB InsAdmin, the Bankhaus estate, and their successors and assigns, will fully and forever release, discharge and acquit each Lehman US entity, and their respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, (i) any administrative expense claims arising under section 503 of the Bankruptcy Code, and (ii) all German Avoidance Actions. The LBB InsAdmin agrees that he will not bring or assert any claims against Lehman US pursuant to sections 117 and 311 of the German Stock Corporation Act (*Aktiengesetz*).

10.    *Effectiveness of Agreement.*  This Agreement shall be effective upon the Execution Date, provided that effectiveness of this Agreement, with the exception of sections 2.3, 5, 6, and 8 above, and section 11 below, and as long as this Agreement has not been terminated pursuant to section 11 below, is subject to (i) the Effective Date having occurred, (ii) the LBB InsAdmin's procurement of the necessary authority stated above in section 3.1 hereof, (iii) the consummation of the Asset Sale, and (iv) entry of the Chapter 15 Order, provided that entry of the Chapter 15 Order shall not be a prerequisite to the LBB InsAdmin voting in respect of the Amended Plan, so long as the requirements of section 2.3(b)(3) are satisfied; and this entire Agreement shall be null and void, and each of the Parties' respective interests

rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, except as to this section 10, if the entry of the Confirmation Order is denied with prejudice.

11.    *Termination.*

11.1.    *Automatic Termination.* This Agreement shall automatically terminate on any date on which (i) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtor and Bankhaus, (ii) the Bankruptcy Court denies the motion seeking the Confirmation Order with prejudice, (iii) the Amended Plan is not confirmed on or before December 31, 2012, or (iv) the LBB InsAdmin is unable, after good faith efforts, to obtain the authority necessary to perform its obligations under this Agreement prior to the deadline for submitting votes on the Amended Plan.

11.2.    *Lehman US's Right to Terminate.* Each Debtor and each Non-Debtor Affiliate shall have the right, at its election, to terminate this Agreement by written notice to the LBB InsAdmin if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the LBB InsAdmin hereunder, taken as a whole, and the LBB InsAdmin shall fail to cure such breach within ten (10) days following written notice of such breach from Lehman US, (b) the LBB InsAdmin terminates the Tolling Agreement, (c) the LBB InsAdmin fails to obtain approval of this Agreement from the Bankhaus Creditor Groups, or (d) other than as set forth herein, the LBB InsAdmin allows and provides for materially different treatment of claims held by other creditors of Bankhaus that are factually and legally similar to the Allowed US Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement in respect of the Allowed US Claims.

11.3.    *The LBB InsAdmin's Right to Terminate.* The LBB InsAdmin shall have the right, at his election, to terminate this Agreement by written notice to Lehman US if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of Lehman US hereunder, taken as a whole, and Lehman US shall fail to cure such breach within ten (10) days following written notice of such breach from the LBB InsAdmin; (b) the Debtors make a material modification to the structure, classification or distribution scheme under the Amended Plan that would materially reduce the recovery estimates set forth in the Disclosure Statement with respect to classes that include the Allowed Bankhaus Claims; (c) the Amended Plan provides for materially different treatment of claims held by other creditors that are factually and legally similar to the claims of the LBB InsAdmin allowed hereunder that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement provided for in the Amended Plan in respect of the LBB InsAdmin's allowed claims; provided, however, that with respect to sections 11.3(b) and 11.3(c), (i) the Debtors are not guaranteeing or committing to any specific recovery amount under the Amended Plan, and (ii) modifications to the projected recovery amounts set forth in the disclosure statement approved by the Bankruptcy Court with respect to the Amended Plan that are based upon revised projections of asset values shall not constitute material modifications to the Amended Plan; or (d) any Debtor terminates the Tolling Agreement; provided, further, that the termination right in section 11.3(d) must be exercised no later than ten (10) business days prior to the hearing for approval of the disclosure statement with respect to the Amended Plan. The Parties have agreed to amend section 11.3(b) of this Agreement to replace the Contemplated Recoveries with the recovery estimates in the proposed disclosure statement with respect to the Amended Plan provided such recovery estimates are consistent with the Contemplated Recoveries.

11.4.    *Effect of Termination.* In the event that this Agreement is terminated in accordance with its terms by any Party, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Amended Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if



this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

12. ***Venue and Choice of Law.***

12.1. *Venue.* To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court; provided that, any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims or the German Avoidance Actions shall be the exclusive jurisdiction of the German courts. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or with the German courts, solely relating to any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims or the German Avoidance Actions, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in section 13 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

12.2. *Choice of Law.* This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code; provided, however, that any claims and disputes arising out of the Liquidation Claims and the German Avoidance Actions shall be governed by and construed in accordance with German law except as otherwise provided in the underlying agreements.

13. ***Notices.*** All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020



U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Facsimile: (212) 310-8007

To the LBB InsAdmin at:

To LBB InsAdmin at:
Lehman Brothers Bankhaus AG i. Ins.
c/o CMS Hasche Sigle
Barckhausstraße 12-16
60325 Frankfurt a.M.
Germany
Attn:  Dr. Michael Frege
Facsimile:  00-49-69-717-01-40410

With a copy (which shall not constitute notice) to:

SNR Denton US LLP
1221 Avenue of the Americas
New York, New York,  10020
U.S.A.
Attn:  D. Farrington Yates
Facsimile:  (212) 768-6800

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

14.    **Expenses**.  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

15.    Intentionally deleted.

16.    **Accounting**.  The Parties will consider evaluation of the potential accounting treatment relating to the Security & Collateral Agreement.

17.    **No Admission of Liability**.  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.



18.    *Entire Agreement*.  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Amended Plan and the terms of this Agreement, the terms of this Agreement shall control.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

19.    *No Oral Modifications*.  This Agreement may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of Lehman US must be provided in a writing signed by the LBB InsAdmin.  Any waiver of compliance with any term or provision of this Agreement on the part of the LBB InsAdmin must be provided in a writing signed by each Debtor and each Non-Debtor Affiliate.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

20.    *Construction*.  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

21.    *Binding Effect; Successor and Assigns*.  Any declaration or statement of the LBB InsAdmin shall only be made in his capacity and function as LBB InsAdmin as Insolvency Administrator (*Insolvenzverwalter*) of Bankhaus, and shall in no circumstance be construed as being a declaration or statement of the LBB InsAdmin on his own and personal behalf.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided, however*, that no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

22.    *Counterparts*.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

23.    *Headings; Schedules and Exhibits*.  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule herein shall be to the Schedules attached hereto.

24.    *No Personal Liability*.  The Parties (and solely for the purposes of this section 25, including the LBB InsAdmin also acting on his own and personal behalf) accept and agree that this Agreement and all actions and measures contained herein do not give rise to any personal liability on the part of the LBB InsAdmin, his firm and its partners and employees, and his representatives or other professional advisors as well as members of the Bankhaus Creditors Committee, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against him, his firm and its partners and employees, and his representatives and other professional advisors and members of the Bankhaus Creditors Committee, personally.  The LBB InsAdmin further accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, asset managers, representatives or professional advisors of Lehman US and to the extent any such personal

liability existed, the LBB InsAdmin explicitly waives any and all potential rights and claims against all of the aforementioned persons. Any claim by a Party against the LBB InsAdmin or Bankhaus arising under or relating to this Agreement shall only be satisfied out of the assets of the insolvency estate of Bankhaus, and any claim by a Party against Lehman US arising under or relating to this Agreement shall only be satisfied out of the assets of such Debtor or such Non-Debtor Affiliate.

25.    ***Severability and Construction***. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

26.    ***Waiver of Jury Trial***. EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 27</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.



IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) of Lehman Brothers Bankhaus AG (in Insolvenz)

By: _____ 640

By: _____

Name: Dr. Michael C. Frege

Name: Daniel J. Ehrmann
Title: Vice President

Title: Insolvency Administrator (*Insolvenzverwalter*)

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name:  Daniel J. Ehrmann
Title:  Vice President

Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) of Lehman Brothers Bankhaus AG (in Insolvenz)

By: _____

Name:  Dr. Michael C. Frege

Title:  Insolvency Administrator (*Insolvenzverwalter*)

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEMAN BROTHERS OTC DERIVATIVES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS DERIVATE PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMODITY SERIVCES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS SCOTTISH FINANCE L.P. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its general partner Property Asset Management Inc.

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

CES AVIATION LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

CES AVIATION V LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title: Vice President

CES AVIATION IX LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

EAST DOVER LIMITED, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Duly Authorized Officer

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Manager

BNC MORTGAGE LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: William J. Fox
Title: Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB ROSE RANCH LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

LB 2080 KALAKAUA OWNERS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

MERIT LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its Manager Lehman Commercial Paper Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB PREFERRED SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB 745 LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

PAMI STATLER ARMS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

LB3 GMBH

By: _____
Name: Daniel J. Ehrmann
Title: Director

LEHMAN BROTHERS EUROPE INC.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB I GROUP INC.

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President


LEHMAN BROTHERS INTERNATIONAL SERVICES INC.

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President


LEHMAN BROTHERS OFFSHORE PARTNERS LTD.

By: _____
Name:  William J. Fox
Title:  Director


LUXEMBOURG FINANCE S.À.R.L.

By: _____
Name:  Daniel J. Ehrmann
Title:  Manager


PAMI HARBOUR PARK

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President


PROPERTY ASSET MANAGEMENT INC.

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

**Schedule A**

<u>Proofs of Claim</u>

| Claim Number | Debtor Against Which Claim is Asserted | Claim Amount |
|---|---|---|
| 0000019847 | LBSF | $200,000,000 plus interest and costs |
| 0000024293 | LBSF | $1,000,000,000 plus interest and costs |
| 0000024366 | LBHI | $1,000,000,000 plus interest and costs |
| 0000025792 | LBHI | $200,000,000 plus interest and costs |
| 0000027946 | LBHI | $1,200,000,000 plus interest |
| 0000027947 | LBSF | $1,200,000,000 plus interest |
| 0000058232 | LBSF | Not less than $395,691.74 |
| 0000058233 | LBHI | Not less than $3,459,204,038.33 |
| 0000058241 | LBHI | $21,354,000 |
| 0000058242 | LBCC | Not less than $1,136,979.22 |
| 0000059006 | LCPI | Not less than $1,243,497,721.16 |

**Schedule B-1**

Liquidation Claims

| Claimant | Claimant No. | Claim Amount | Accrued Interest |
|---|---|---|---|
| Lehman Brothers Commercial Corporation | 456 | 1.00 EUR | - |
| Lehman Brothers Commodity Services Inc. | 457 | 1.00 EUR | - |
| Lehman Brothers Holdings Inc. | 445 | 1,697,721,757.08 EUR | - |
| | | 6,064,103.28 EUR | - |
| | | 29,069.83 EUR | - |
| | | 5,092,500.00 EUR | 290,896.67 EUR |
| | | 1,456,000.00 EUR | 17,298.86 EUR |
| | | 1,397,828,022.00 EUR | - |
| Lehman Brothers Special Financing Inc. | 432 | 43,542,146.13 EUR | - |
| Lehman Commercial Paper Inc. | 435 | 169,724,643.66 EUR | - |
| | | 10,166,476.38 EUR | - |
| | | 134,114,400.00 EUR | - |
| Lehman Commercial Paper Inc. | *435* | *152,675,248.21 EUR* | - |
| | | *(191,250,467.50 USD)* | - |
| | | *57,991,847.58 EUR* | - |
| | | *48,534,500.00 EUR* | - |
| | | *(35,000,000.00 GBP)* | - |
| Luxembourg Finance S.à r.l. | 433 | 273,546,795.05 EUR | - |

In addition to the entities listed in the table above, claims have also been filed for (i) Lehman Brothers Luxembourg Equity Finance SA in the amount of EUR 39,855.00 and (ii) Lehman Brothers Services SNC in the amount of EUR 1,063.63. Since Lehman Brothers Luxembourg Equity Finance SA is under Luxembourg insolvency administration and Lehman Brothers Services SNC is the 100% subsidiary of Lehman Brothers France which is under French liquidation, the authority to dispose of assets of these entities is with the respective administrator/liquidator. Thus, these claims cannot be waived by a Party to this settlement agreement.

**Schedule B-2**

Subordinated Claims

| Claimant | Claimant No. | Claim Amount | Accrued Interest |
|---|---|---|---|
| LB3 GmbH | 439 | 16,857444.00 EUR | 140,064.28 EUR |
| Lehman Brothers Europe Inc. | 442 | 1,371,897.34 EUR | - |
| Lehman Brothers 1 Group Inc. | 447 | 434,492.45 EUR | - |
| Lehman Brothers International Services Inc. | 440 | 16,401.47 EUR | - |
| Lehman Brothers Offshore Partners Ltd | 436 | 1,261.01 EUR | - |
| Pami Harbour Park | 438 | 1,158.33 EUR | - |
| Property Asset Management Inc. | 437 | 6,987.52 EUR | - |

## Schedule C

### Swap Agreements

| CP/Master ID | Counterparty Name |
|---|---|

**Series 3 :**

| CP/Master ID | Counterparty Name |
|---|---|
| 112702LBRE | LEHMAN BROTHERS REAL ESTATE PARTNERS LP |
| 091002PH02 | PHOENIX SERIES 2002-2 |
| 071802PHOE | PHOENIX SERIES 2002-1 |
| 122401LCOR | LCOR ALEXANDRIA LLC - PATENT A ND   TRADEMARK OFFICE PROJECT |
| 0109032WCA | ADVENTIST HEALTH SYSTEM SUNBELT HEALTHCARE CO |
| 120997AMV | ASBURY ATLANTIC INC |
| 021398GU | GEORGETOWN UNIVERSITY |
| 70311EKSP | EKSPORTFINANS ASA |
| 070302VICM | ONE MADISON INVESTMENTS (CAYCO) LIMITED |
| 090398LKC | LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT |
| 120803BCRA | BUCK INSTITUTE FOR AGE RESEARCH |
| 22223MBT | MASSACHUSETTS BAY TRANSPORTATION AUTHORITY |
| 71593CCPA | HSBC FRANCE |
| 102596NABL | NATIONAL AUSTRALIA BANK LTD |
| 72893SWLB | LANDESBANK BADEN-WUERTTEMBERG |
| 122398ENIF | ENI SPA |
| 50598DDBK | DANSKE BANK A/S |
| 060295WLGF | WGZ-BANK WESTDEUTSCHE GENOSSENSCHAFTS-ZENTRALBANK AG |

**Series 4 :**

| CP/Master ID | Counterparty Name |
|---|---|
| 051094KDBS | KOREA DEVELOPMENT BANK |
| 021904CPER | CALIFORNIA PUBLIC EMPLOYEES RETIREMENT SYSTEM |
| 72707SSBT | STATE STREET BANK AND TRUST COMPANY |
| 041207LEHM | THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO |
| 050500PIMF | PUTNAM INCOME FUND |
| 110105PUTN | PUTNAM U.S. GOVT INCOME TR |
| 71693CWOM | COMMONWEALTH OF MASSACHUSETTS |
| 110493ROUC | REGENTS OF THE UNIVERSITY OF CALIFORNIA |
| 082100UNOP | UNIVERSITY OF PITTSBURGH - OF THE COMMONWEALTH** |
| 121800CLPU | CLARK COUNTY PUBLIC UTILITY DISTRICT #1 |
| 060607ALAB | POWERSOUTH ENERGY COOPERATIVE |
| 110993AMHF | AMERICAN HONDA FINANCE CORPORATION |
| 92893MTAU | METROPOLITAN TRANSPORTATION AUTHORITY |
| 051906SAIN | SAINT JOSEPH'S UNIVERSITY |
| 042794RMH | ROCKFORD MEMORIAL HOSPITAL |
| 65187NCHB | THE NORINCHUKIN BANK |
| 012395STIN | STAPLES INC. |
| 050902GELI | GENWORTH LIFE AND ANNUIT Y INSURANCE COMPANY |
| 082495KEY | KEYCORP |
| 60394NBNC | BANK OF AMERICA NATIONAL ASSOCIATION |
| 65994DBAG | DEUTSCHE BANK AG |
| 71499MLCS | MERRILL LYNCH CAPITAL SERVICES INC |
| 071700BNPP | BNP PARIBAS SA |
| 073107GIAN | GIANTS STADIUM, LLC |
| 50862KRED | KREDITANSTALT FUER WIEDERAUFBAU |
| 69836FHBA | FEDERAL HOME LOAN BANK OF ATLANTA |
| 50111FNMA | FEDERAL NATIONAL MORTGAGE ASSOCIATION |
| 30690HP | HEWLETT-PACKARD COMPANY |
| 38090FUNC | WACHOVIA BANK NATIONAL ASSOCIATION |
| 042994BBL | ING BELGIUM SA/NV |
| 11593BLBM | BAYERISCHE LANDESBANK |
| 61803RNBN | HSBC BANK USA, NATIONAL ASSOCIATION |
| 35716RNPU | RABOBANK NEDERLAND |
| 36166TORD | TORONTO-DOMINION BANK (THE) |
| 61843SNBK | KEYBANK NATIONAL ASSOCIATION |
| 010501PMAR | MARSH MCLENNAN CO US RET PLAN-LONG DURATION FXD IN |
| 112598RHF | RETIREMENT HOUSING FOUNDATION |
| 052907FINA | FSA INC A/C FSA CPT 265 |
| 040594INCM | ING CAPITAL MARKETS LLC |
| 061799BHFU | PB CAPITAL CORPORATION |
| 070104MGFL | MICROSOFT GLOBAL FINANCE |

**Schedule D**

## Surviving Contracts

1. Settlement Agreement, dated as of December 15, 2009, by and among Lehman Brothers Holdings Inc., Lehman Brothers ALI, Inc., Lehman Commercial Paper Inc. and Dr. Michael C. Frege in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins.

2. That certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies dated as of May 12, 2009.

3. Any data sharing agreements entered into by the LBB InsAdmin and one or more of the Debtors subsequent to November 13, 2008.

4. Stipulation And Order Restricting Use of Alleged Cash Collateral Pursuant To 11 U.S.C. §363(c)(2) and (4) And Bankruptcy Rule 4001(d) Between Lehman Brothers Special Financing Inc. And Dr. Michael C. Frege In His Capacity As Insolvency Administrator (Insolvenzverwalter) Over The Assets of Lehman Brothers Bankhaus Aktiengesellschaft I. Ins. [Docket No. 6824].

5. Note Sale Agreement to be entered into by and between Lehman Brothers Holdings Inc. and Dr. Michael C. Frege in his capacity as Insolvency Administrator *(Insolvenzverwalter)* over the assets of Lehman Brothers Bankhaus AG *(i. Ins.)*, with respect to the sale of Spruce and Verano.

6. Note Sale Agreement to be entered into by and between Lehman Brothers Holdings Inc. and Dr. Michael C. Frege in his capacity as Insolvency Administrator *(Insolvenzverwalter)* over the assets of Lehman Brothers Bankhaus AG *(i. Ins.)*, with respect to the sale of SASCO.

AMENDMENT #1 TO AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Amendment #1 to the Amended and Restated Settlement Agreement dated as of March 1, 2011 (the "Settlement Agreement") is made and entered into as of March 18, 2011 (the "Amendment"), by and among the Debtors[1] and certain of their Non-Debtor Affiliates[2] (collectively, "Lehman US"), and Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzerwalter*) (the "LBB InsAdmin") of Lehman Brothers Bankhaus AG (*in Insolvenz*) ("Bankhaus"). Lehman US and Bankhaus, acting through the LBB InsAdmin, shall each be referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, the Parties entered into the Settlement Agreement on January 14, 2011 in order to resolve outstanding disputes and other issues between them; and

WHEREAS, the Parties now desire to amend the Settlement Agreement in certain respects;

NOW, THEREFORE, in consideration of the recitals stated above, the agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

*1.*     ***Definitions.*** Initially capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

*2.*     ***Amendments to Settlement Agreement.***

2.1. The Recitals are amended by deleting the following tenth "WHEREAS" clauses thereof, and substituting the following "WHEREAS" clauses thereafter.

WHEREAS, each of the Debtors, either individually or jointly, will file an amended chapter 11 plan that will incorporate the terms and conditions of this Agreement (said individual or joint plan and any amendments, modifications and supplements thereto, collectively, the "Amended Plan");

2.2 Section 1 is amended by adding the following definition: "Non-Conforming Plan" shall mean any chapter 11 plan that is not an Amended Plan or Other Plan.

---

[1]     As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation ("LBCC"); Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc. ("LBCS"); Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.à.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

[2]     As used herein, "Non-Debtor Affiliates" means LB3 GmbH. Lehman Brothers Europe Inc., Lehman Brothers I Group Inc., Lehman Brothers International Services Inc., Lehman Brothers Offshore Partners Ltd., Luxembourg Finance S.à.r.l., PAMI Harbour Park and Property Asset Management Inc.

2.3. The definition of "Other Plan" is deleted and the following is substituted therefore: "Other Plan" means a chapter 11 plan or plans proposed by parties other than the Debtors that incorporates all of the provisions of the Agreement other than section 2.3 hereof."

2.4. The definition of "SASCO Purchase Price" is amended by adding the following sentence at the end thereof: "For the avoidance of doubt, no additional payment shall be due if, on or before December 31, 2012, the Agreement has not been terminated pursuant to Section 11; provided, however, that nothing contained herein shall limit or restrict the LBB InsAdmin's termination rights under the Agreement with respect to the Amended Plan, an Other Plan or a Non-Conforming Plan."

2.5 Section 11.1 (iii) is deleted and the following is substituted therefore: "(iii) the Bankruptcy Court does not enter an order confirming the Amended Plan, an Other Plan or a Non-Conforming Plan on or before December 31, 2012;"

2.6 Section 11.3 is deleted in its entirety and the following is substituted therefore:

11.3    *The LBB InsAdmin's Right to Terminate.* The LBB InsAdmin shall have the right, at his election, to terminate this Agreement by written notice to Lehman US if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of Lehman US hereunder, taken as a whole, and Lehman US shall fail to cure such breach within ten (10) days following written notice of such breach from the LBB InsAdmin; (b) the Debtors make a material modification to the structure, classification or distribution scheme under the Amended Plan that would materially reduce the recovery estimates set forth in the Disclosure Statement with respect to classes that include the Allowed Bankhaus Claims or any Other Plan or Non-Conforming Plan is confirmed that would materially reduce the recovery estimates set forth in the Disclosure Statement with respect to classes that include the Allowed Bankhaus Claims; (c) the Amended Plan provides for materially different treatment of claims held by other creditors that are factually and legally similar to the claims of the LBB InsAdmin allowed hereunder that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement provided for in the Amended Plan in respect of the LBB InsAdmin's allowed claims or any Other Plan or Non-Conforming Plan is confirmed that provides for materially different treatment of claims held by other creditors that are factually and legally similar to the claims of the LBB InsAdmin allowed hereunder that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement provided for in the Amended Plan in respect of the LBB InsAdmin's allowed claims; provided, however, that with respect to sections 11.3(b) and 11.3(c), (i) the Debtors are not guaranteeing or committing to any specific recovery amount under the Amended Plan, and (ii) modifications to the projected recovery amounts set forth in the disclosure statement approved by the Bankruptcy Court

with respect to the Amended Plan that are based upon revised
projections of asset values shall not constitute material modifications to
the Amended Plan;  (d) any Debtor terminates the Tolling Agreement;
provided, further, that the termination right in section 11.3(d) must be
exercised no later than ten (10) business days prior the hearing for
approval of the disclosure statement with respect to the Amended Plan;
or (e) a Non-Conforming Plan is confirmed which does not incorporate all
of the provisions of the Agreement other than Section 2.3.

3.    **Effect of Amendment**.  Except as expressly amended hereby, the
Settlement Agreement shall remain unmodified and in full force and effect.  To the extent of any
inconsistency between the terms of the Settlement Agreement and this Amendment, this
Amendment shall govern and control.

4.    **Further Amendments**.  Any waiver, alteration, supplement, amendment or
modification of this Amendment shall be valid only if made in writing and signed by each of the
parties hereto.

5.    **Choice of Law**.  This Amendment and all claims and disputes arising out
of or in connection with this Amendment shall be governed by and construed in accordance with
the laws of the State of New York and the Bankruptcy Code, without regard to choice of law
principles to the extent such principles would apply a law other than that of the State of New
York or the Bankruptcy code; provided, however, that any claims and disputes arising out of the
Liquidation Claims and the German Avoidance Actions shall be governed by and construed in
accordance with German law except as otherwise provided in the underlying agreement.

6.    **Binding Effect; Successors and Assigns**.  The provisions of Section 22 of
the Settlement Agreement are incorporated herein as if fully sent forth in this Amendment and
are made applicable to this Amendment.

7.    **Counterparts**.  This Amendment may be executed in counterparts, each of
which constitutes an original, and all of which, collectively, constitute only one agreement. The
signatures of all of the Parties hereto need not appear on the same counterpart.

8.    **Execution**.  Signatures to this Amendment may be exchanged by facsimile
transmission and/or electronic mail and shall constitute originals for all purposes.

**EXECUTION VERSION**

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date hereof:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) of Lehman Brothers Bankhaus AG *(in Insolvenz)*

By:_____

Name:  Daniel J. Ehrmann
Title:    Vice President

By:_____   663

Name:  Dr. Michael C. Frege
Title:    Insolvency Administrator (*Insolvenzverwalter*)

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York. Case No. 08-13555 (JMP)

By:_____
Name:  Daniel J. Ehrmann
Title:    Vice President

By:_____
Name:  Daniel J. Ehrmann
Title:    Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:_____
Name:  Daniel J. Ehrmann
Title:    Vice President

By:_____
Name:  Daniel J. Ehrmann
Title:    Vice President

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date hereof:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name:  Daniel J. Ehrmann
Title:   Vice President

Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) of Lehman Brothers Bankhaus AG *(in Insolvenz)*

By: _____

Name:  Dr. Michael C. Frege
Title:   Insolvency Administrator (*Insolvenzverwalter*)

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:   Vice President

4

LEMAN BROTHERS OTC DERIVATIVES
INC., as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York, Case
No. 08- 13555 (JMP)

By:
Name: Daniel J. Ehrmann
Title:  Vice President

LEHMAN BROTHERS DERIVATE PRODUCTS
INC., as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York, Case
No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN BROTHERS COMMODITY
SERVICES INC., as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By:
Name: Daniel J. Ehrmann
Title:  Vice President

LEHMAN SCOTTISH FINANCE L.P. as Debtor
and Debtor in Possession in its chapter 11 case in
the United States Bankruptcy Court for the
Southern District of New York, Case No. 08-13555
(JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

CES AVIATION LLC, as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Vice President

CES AVIATION V LLC, as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

CES AVIATION IX LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Vice President

EAST DOVER LIMITED, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Vice President

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Manager

BNC MORTGAGE LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  William J. Fox
Title:  Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION, as Debtor arid Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Vice President

LB ROSE RANCH LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:  Authorized Signatory

LB 2080 KALAKAUA OWNERS LLC, as Debtor
and Debtor in Possession in its chapter 11 case in
the United States Bankruptcy Court for the
Southern District of New York, Case No. 08-1
3555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

MERIT LLC, as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District of New
York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LB SOMERSET LLC, as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LB PREFERRED SOMERSET LLC, as Debtor
and Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LB 745 LLC, as Debtor and Debtor in Possession
in its chapter 11 case in the United States
Bankruptcy Court for the Southern District of New
York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

PAMI STATLER ARMS LLC, as Debtor and
Debtor in Possession in its chapter 11 case in the
United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By:
Name:  Daniel J. Ehrmann
Title:   Authorized Signatory

LB 3 GMBH

By:
Name:  Daniel J. Ehrmann
Title:   Director

LEHMAN BROTHERS EUROPE INC

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LB 1 GROUP INC.

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN BROTHERS INTERNATIONAL
SERVICES INC.

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

LEHMAN BROTHERS OFFSHORE
PARTNERS LTD.

By:
Name:  William J. Fox
Title:   Director

LUXEMBOURG FINANCE S.A.R.L.

By:
Name:  Daniel J. Ehrmann
Title:   Manager

PAMI HARBOUR PARK

By:
Name:  Daniel J. Ehrmann
Title:   Vice President

PROPERTY ASSET MANAGEMENT INC.

By:
Name:  Daniel J. Ehrmann
Title:   Vice President