DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

Attorneys for Michael Ainslie, John F. Akers, Roger S.
Berlind, Thomas H. Cruikshank, Marsha Johnson Evans,
Sir Christopher Gent, Roland A. Hernandez, Henry
Kaufman and John D. Macomber

[*Also filed by Richard S. Fuld, Jr., Christopher
M. O'Meara, Joseph M. Gregory, Erin Callan
and Ian T. Lowitt*]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------x
                                     :
In re                                :    Chapter 11 Case No.
                                     :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                     :
                Debtors.             :    (Jointly Administered)
                                     :
----------------------------------------------------------x
```

## NOTICE OF INSURED PERSONS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE EQUITY/DEBT CLASS ACTION

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Richard S.

Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian T. Lowitt, Michael

Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir

Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively,

the "Insured Persons"), for relief from the automatic stay, to the extent applicable, to permit the

third-party insurers of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases (the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman") to make payments in connection with a certain settlement agreement, all as

more fully described in the Motion, will be held before the Honorable James M. Peck, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on **September 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

　　　　　　　PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Dechert LLP, 1095 Avenue of the Americas, New York, New York, 10036,

Attn: Adam J. Wasserman, Esq., attorneys for Michael Ainslie, John F. Akers, Roger S. Berlind,

Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez,

Henry Kaufman and John D. Macomber; (iii) Allen & Overy LLP, 1221 Avenue of the

Americas, New York, New York, 10020, Attn: Patricia M. Hynes, Esq., attorneys for Richard S.

Fuld, Jr.; (iv) Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York,

New York, 10004, Attn: Audrey Strauss, Esq., attorneys for Joseph M. Gregory; (v) Simpson

Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Michael J.

Chepiga, Esq., attorneys for Christopher M. O'Meara; (vi) Willkie Farr & Gallagher LLP, 787

Seventh Avenue, New York, New York, 10019, Attn: Kelly M. Hnatt, Esq., attorneys for Ian T.

Lowitt; (vii) Proskauer Rose, 11 Times Square, New York, New York, 10036, Attn: Robert J.

Cleary, Esq., attorneys for Erin Callan; (viii) Weil Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (ix) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Andy Velez-Rivera,

Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (x) Milbank,

Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:

Dennis F. Dunne, Esq., Evan Fleck, Esq. and Dennis O'Donnell, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (xi) Walker Wilcox Matousek LLP,

225 W. Washington Street, Chicago, Illinois 60606, Attn: James Huberty, Esq. and Paul F.

Matousek, Esq., attorneys ACE Bermuda Insurance Ltd.; (xii) Bailey Cavalieri LLC, One

Columbus, 10 West Broad St. Suite 2100, Columbus, Ohio 43215, Attn: Thomas E. Geyer, Esq.

and Robert Eblin, Esq., attorneys for St. Paul Mercury Insurance Company; (xiii) Bates & Carey

LLP, 191 W. Wacker Dr., Suite 2400, Chicago, Illinois 60606, Attn: Ommid C. Farashahi, Esq.

and Charles Madden, Esq., attorneys for Axis Reinsurance Company; (xiv) D'Amato & Lynch,

LLP, Two World Financial Center, New York, New York 10281, Attn: Mary Jo Barry, Esq. and

Catherine Casavant, Esq., attorneys for Liberty Mutual Insurance Company; (xv) Bailey

Cavalieri LLC, One Columbus, 10 West Broad St. Suite 2100, Columbus, Ohio 43215, Attn:

Thomas E. Geyer, Esq. and Robert Eblin, Esq., attorneys for Arch Insurance Company; (xvi)

White and Williams LLP, One Penn Plaza, Suite 4110, New York, New York 10119, Attn: John

F. McCarrick, Esq., Maurice Pesso, Esq., Daniel H. Simnowitz, Esq., attorneys for Allied World

Assurance Company, Ltd.; and (xvii) Wilson Elser Moskowitz Edelman & Dicker LLP, 150 East

42nd Street, New York, New York 10017, Attn: Jonathan Meer, Esq., Scott Schaffer, Esq. and

David Sheiffer, Esq., attorneys for Endurance Specialty Insurance, Ltd., so as to be so filed and

received by no later than **September 7, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: August 24, 2011
       New York, New York

DECHERT LLP
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-8099

Attorneys for Michael Ainslie, John F.
Akers, Roger S. Berlind, Thomas H.
Cruikshank, Marsha Johnson Evans, Sir
Christopher Gent, Roland A. Hernandez,
Henry Kaufman and John Macomber

*Patricia M Hynes*

ALLEN & OVERY LLP
Patricia M. Hynes
Todd S. Fishman
Molly C. Spieczny

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

Attorneys for Richard S. Fuld, Jr.


*Israel David*

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
Audrey Strauss
Israel David

One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Attorneys for Joseph M. Gregory


*Mary E McGarry*

SIMPSON THACHER & BARTLETT LLP
Michael J. Chepiga
Mary Elizabeth McGarry

425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Attorneys for Christopher M. O'Meara

_Kelly M. Hnatt_

WILKIE FARR & GALLAGHER LLP
Kelly M. Hnatt

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Attorneys Ian T. Lowitt

_Mark E. Davidson_

PROSKAUER ROSE
Robert J. Cleary
Mark E. Davidson
Seth David Fier

11 Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Attorneys for Erin Callan

14207344.1.LITIGATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                              :          **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*       :          **08-13555 (JMP)**
                                                   :
                               **Debtors**         :          **(Jointly Administered)**
                                                   :
---------------------------------------------------------------x

## [PROPOSED] ORDER GRANTING INSURED PERSONS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE EQUITY/DEBT CLASS ACTION

Upon the motion, dated August 24, 2011 (the "Motion"), of Richard S. Fuld, Jr.,

Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian T. Lowitt, Michael Ainslie, John

F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher

Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively, the "Insured

Persons"), pursuant to section 362(d) of title 11 to the United States Code (the "Bankruptcy

Code") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for an order modifying the automatic stay provided for in section 362(a) of the

Bankruptcy Code, to the extent applicable, to allow the Excess Policy Insurers[1] to make a

payments in connection with the terms of an agreement for settlement relating to the action *In re*

*Lehman Brothers Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK), as more fully described

in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [Docket No. 9635] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Debtors; (iii) the attorneys for the Official

Committee of Unsecured Creditors; (iv) attorneys for Lead Plaintiffs in the Equity/Debt

Securities Class Action; (v) the Securities and Exchange Commission; (vi) the Internal Revenue

Service; (vii) the United States Attorney for the Southern District of New York; (viii) all parties

who have requested notice in these chapter 11 cases; and (ix) attorneys for ACE Bermuda, St.

Paul Mercury, Liberty, Arch, Allied and Endurance, and it appearing that no other or further

notice need be provided; and a hearing having been held to consider the relief requested in the

Motion; and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest, that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein, that

modifying the automatic stay will not harm the Debtors' estates, and that any rights the Debtors

have to the proceeds are contractually subordinated to the rights of the individual Insureds

pursuant to the priority of payments clause; and after due deliberation and sufficient cause

appearing therefor, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow the Excess Policy Insurers to pay the Settlement Amount provided for in the settlement on behalf of the Insured Persons in accordance with the terms of the Excess Insurance Policies; and it is further

ORDERED that the Insured Persons and the Debtors are authorized to execute all documentation necessary to allow the Excess Policy Insurers to fund the Settlement Amount on behalf of the Insured Persons pursuant to the settlement; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Excess Policy Insurers, the Debtors or the Insured Persons provided for under the terms and conditions of the Excess Insurance Policies; and it is further

ORDERED that all parties to the Excess Insurance Policies reserve all rights and defenses with respect to the Excess Insurance Policies that they would otherwise have; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Excess Insurance Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Excess Insurance Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: September ___, 2011
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

14207346.1.LITIGATION

3

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

Attorneys for Michael Ainslie, John F. Akers, Roger S.
Berlind, Thomas H. Cruikshank, Marsha Johnson Evans,
Sir Christopher Gent, Roland A. Hernandez, Henry
Kaufman and John D. Macomber

*[Also filed by counsel for Richard S. Fuld, Jr.,
Christopher M. O'Meara, Joseph M. Gregory,
Erin Callan and Ian T. Lowitt]*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                                              :
**In re**                                                     :     **Chapter 11 Case No.**
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                  :     **08-13555 (JMP)**
                                                              :
                                         **Debtors.**         :     **(Jointly Administered)**
                                                              :
                                                              :
--------------------------------------------------------------x

### INSURED PERSONS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE EQUITY/DEBT CLASS ACTION

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan,

Ian T. Lowitt, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha

Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D.

Macomber (collectively, the "Insured Persons"), former and current officers and directors of

Lehman Brothers Holdings Inc. ("LBHI") and/or its affiliated debtors in the above-referenced

chapter 11 cases (the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file

this motion and respectfully represent:

## Preliminary Statement

1.    On nine prior occasions, the Court has modified the automatic stay

provided for under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code"),

to the extent applicable, to remove any impediments to payment by certain of the Debtors'

insurers of directors and officers coverage of a judgment, settlement amounts or defense costs or

fees that current or former directors, officers, and employees of the Debtors incurred or were

incurring as defendants in ongoing lawsuits, arbitration proceedings, and regulatory or other

investigations.[1]  By this Motion, the Insured Persons seek identical relief to assure (i) ACE

Bermuda Insurance Ltd. subscribing to policy number LEHM-11742D ("ACE Bermuda"), (ii)

St. Paul Mercury Insurance Company subscribing to policy number 590CM2698 ("St. Paul

Mercury"), (iii) Axis Reinsurance Company subscribing to policy number RNN713535/01/2007

("Axis"), (iv) Liberty Mutual Insurance Company subscribing to policy number 078365-017

("Liberty"), (v) Arch Insurance Company subscribing to policy number DOX0006634-02

---

[1] *See* Orders dated March 25, 2009 [Docket No. 3220] (modifying the automatic stay to allow advancement of defense costs with respect to XL Specialty Insurance Company); November 23, 2009 [Docket No. 5906] (modifying the automatic stay to allow advancement of defense costs with respect to Federal Insurance Company); December 17, 2009 [Docket No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company and Federal Insurance Company); August 20, 2010 [Docket No. 10945] (modifying the automatic stay to allow advancement of defense costs with respect to Continental Casualty Company, Certain Underwriters at Lloyd's, London and London Market Company, and U.S. Specialty Insurance Company (HCC)); November 18, 2010 [Docket No. 12896] (modifying the automatic stay to allow advancement of defense costs with respect to Zurich American Insurance Company, ACE Bermuda Insurance Ltd, St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal Insurance Company); November 18, 2010 [Docket No. 12895] (modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters at Lloyd's, London and London Market Company); January 13, 2011 [Docket No. 13929] (modifying the automatic stay to allow payment of settlement amount by U.S. Specialty Insurance Company and Zurich American Insurance Company); March 23, 2011 [Docket No. 15277] (modifying the automatic stay to allow payment of settlement amounts by Zurich American Insurance Company); July 21, 2011 [Docket No. 18691] (modifying the automatic stay to allow payment of an arbitral award by Zurich American Insurance Company and ACE Bermuda Insurance Ltd.) (collectively, the "Prior Stay Orders").

("Arch"), (vi) Allied World Assurance Company subscribing to policy number C002007/005

("Allied World"), and (vii) Endurance Specialty Insurance Ltd. subscribing to policy number

P005332003 ("Endurance"), the Debtors' sixth through twelfth level excess insurers under the

Debtors' 2007-2008 directors' and officers' liability insurance program or, if Endurance has

exhausted its applicable limits of liability, the appropriate subsequent insurer or insurers that are

paying under the Debtors' 2007-2008 directors' and officers' liability insurance program

(together, the "Excess Policy Insurers"),[2] that they are authorized to make a settlement payment

in the amount of $90,000,000 (the "Settlement Amount") in connection with a settlement

between a purported class of investors who purchased or otherwise acquired Lehman common

stock, call options and/or who sold put options between June 12, 2007 and September 15, 2008

(the "Equity/Debt Class") and the Insured Persons, in the action *In re Lehman Brothers*

*Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) (the "Equity/Debt Securities Class

Action"), without concern that, if the automatic stay is otherwise applicable, they are violating

the automatic stay.

2.    For Claims[3] made against individual Insureds during the period from May

16, 2007 to May 16, 2008 (the "Policy Period"), the Debtors purchased a primary D&O

insurance policy from XL Specialty Insurance Company ("XL," and said policy the "2007-2008

Primary D&O Policy") plus additional excess insurance coverage for this period from a number

---

[2] Copies of the primary D&O Policy, together with the ACE Bermuda and St. Paul Mercury policies (among others), were attached to the *Debtors' Motion Pursuant to Section 362 of the Bankruptcy Code, For An Order Modifying the Automatic Stay To Allow Advancement Under (I) 2007 2007-2008 Directors And Individual Defendants Insurance Policies By Zurich American Insurance Company, Ace Bermuda Insurance Ltd. And St. Paul Mercury Insurance Company, And (II) 2008-2009 Directors And Individual Defendants Insurance Policies By XL Specialty Insurance Company And Federal Insurance Company* [Docket No. 12369] (the "Zurich Comfort Motion"), and are incorporated herein by reference. Copies of the Axis, Liberty, Arch, Allied World and Endurance policies for 2007-2008 are attached hereto as Exhibit A through Exhibit E, respectively.
[3] Capitalized terms that are used but not otherwise defined herein shall have the meanings ascribed to them in the Excess Insurance Policies.

of other carriers of up to $250 million in the aggregate. The excess policies, including the policies of the Excess Policy Insurers (the "Excess Insurance Policies"), are all "follow form" policies governed by the terms, conditions, limitations and exclusions of the 2007-2008 Primary D&O Policy, and subject to additional independent terms and conditions set forth in the Excess Insurance Policies, such as Limits of Liability, and attach only after all Loss within the respective Limits of Liability of the underlying policies have been paid.

3.      Confirming the Excess Policy Insurers' ability to make the proposed settlement payment is in the best interests of the Debtors' estates and creditors because, *inter alia*, the interests of the Debtors' estates, if any, in the proceeds of the Excess Insurance Policies are expressly subordinate to the interest of the individual Insureds. Specifically, the Excess Insurance Policies provide that the Debtors have a right to the insurance proceeds only after the individual Insureds are fully reimbursed for any "Loss," including defense costs and settlement payments. As such, granting the relief requested by this Motion is unlikely to have any adverse effect on the Debtors' estates and creditors. Moreover, validating that the Excess Policy Insurers are authorized to fund certain settlement payments without violating the automatic stay will also eliminate or reduce potential indemnification claims that may be asserted against the Debtors. Accordingly, granting the relief requested herein is in the best interest of the Debtors' estates and creditors.

## Background

4.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

4

"Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.          On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.          On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

7.          On July 1, 2011, the Debtors filed a second amended joint chapter 11 plan and disclosure statement [Docket Nos. 18204 and 18205].

8.          On June 18, 2008, plaintiff Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund filed a class action complaint in the U.S. District Court for the Southern District of New York, asserting claims under the Securities Exchange Act of 1934 against, *inter alia*, certain current and former Lehman officers in the Equity/Debt Securities Class Action, denominated Case No. 08 Civ. 5523. On October 27, 2008, eleven plaintiffs filed an Amended Class Action Complaint asserting, *inter alia*, claims under the Securities Act of 1933 against, *inter alia*, certain current and/or former Lehman officers and directors. This action was consolidated for all pretrial purposes on January 9, 2009 with actions bearing the case numbers 08 Civ. 5523, 08 Civ. 8225, 08 Civ. 9404, 08 Civ. 9578, 08 Civ. 9793, 08 Civ. 10008, 08 Civ. 10058, and 08 Civ. 10206, and collectively referred to as *In re Lehman Brothers Equity/Debt Securities Litigation*. On February 23, 2009, a Second Amended Consolidated Class Action Complaint was filed in this action. Defendants moved to dismiss the

5

Second Amended Consolidated Class Action Complaint on April 27, 2009. On March 17, 2010,

pursuant to Judge Kaplan's Pre-Trial Order No. 14, in light of the then-recent filing of the

Examiner's Report, the pending motions to dismiss were denied without prejudice and the

Equity/Debt Securities Class was granted leave to further amend the complaint on or before

April 23, 2010.

9.    A Third Amended Complaint was filed in the Equity/Debt Securities Class

Action on April 23, 2010, in which the Equity/Debt Class alleged, *inter alia*, that various

Lehman offering materials and securities filings contain alleged misrepresentations and

omissions regarding the company's financial condition prior to the bankruptcy and asserts claims

for violations of the Securities Act of 1933 and/or the Securities Exchange Act of 1934.

10.    The settlement between the Equity/Debt Class and the Insured Persons is

conditioned upon, *inter alia*, the Bankruptcy Court entering a Final order authorizing relief from

the automatic stay.

## Jurisdiction

11.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

12.    The Insured Persons seek the entry of an order granting relief from the

automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it

applies, to allow the Excess Policy Insurers to pay the Settlement Amount of $90,000,000 solely

from the available proceeds of the Excess Insurance Policies in accordance with the terms of an

agreement for settlement between the Equity/Debt Class and the Insured Persons (together, the

"Equity/Debt Settling Parties"), subject to the terms of the Excess Insurance Policies.

6

## Waiver of Bankruptcy Rule 4001(A)(3)

13.     As the proceeds of the D&O Policies are finite and, as this Court has observed, these finite proceeds of the D&O Policies may be claimed on a first-come, first-served basis, the Insured Persons request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

## The Debtors' Directors and Officers Liability Insurance Policies

14.     Pursuant to, inter alia, their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors' and officers' liability ("D&O") insurance, which provides coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

15.     Subject to the terms, conditions, limitations and exclusions of the Excess Insurance Policies, the Excess Policy Insurers cover Loss (defined as Defense Expenses, settlements and judgments, among other things) of $115 million in excess of $85 million incurred as a result of Claims made during the Policy Period for Wrongful Acts allegedly committed by individual Insureds Persons in their capacity as directors, officers, and/or employees of LBHI and certain of its subsidiaries.[4]  Coverage under Insuring Agreement (A) ("Side A") of the Excess Insurance Policies is immediately available to Insured Persons under

---

[4] As the sixth excess insurer for the Policy Period, ACE Bermuda provides coverage of $25 million in excess of $85 million.  As the seventh excess insurer for the Policy Period, St. Paul Mercury provides coverage of $15 million in excess of $110 million.  As the eighth excess insurer for the Policy Period, Axis provides coverage of $15 million in excess of $125 million.  As the ninth excess insurer for the Policy Period, Liberty provides coverage of $10 million in excess of $140 million.  As the tenth excess insurer for the Policy Period, Arch provides coverage of $15 million in excess of $150 million.  As the eleventh excess insurer for the Policy Period, Allied World provides coverage of $15 million in excess of $165 million.  As the twelfth excess insurer for the Policy Period, Endurance provides coverage of $20 million in excess of $180 million.

the Excess Insurance Policies for any Loss resulting from Claims made against them that cannot

be advanced or indemnified by the Debtors by reason of their financial insolvency.

16.    Furthermore, the Excess Insurance Policies contain "Priority of Payments"

provisions, which provide that when competing claims for coverage under both Insuring

Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are

made under the Excess Insurance Policies, "the Insurer shall pay that Loss, if any, which the

Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)... ."

Thus, the Excess Insurance Policies, by virtue of Insuring Agreement (A) and the Priority of

Payments provisions, provide for the immediate payment of the Settlement Amount on behalf of

the individual Insureds ahead of any payment that may be made to the Debtors.

### The Action

17.    Both prior to and after the collapse of the Lehman enterprise in September

2008, various securities actions were commenced against certain current and former officers and

directors of Lehman in both federal and state courts.  The Equity/Debt Securities Class Action

contends, *inter alia*, that various Lehman offering materials and other securities filings contained

alleged misrepresentations and omissions regarding the company's financial condition prior to

the bankruptcy and asserts claims for violations of the Securities Act of 1933 and/or the

Securities and Exchange Act of 1934.

18.    Court-appointed Lead Plaintiffs include the Alameda County Employees'

Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local

Governmental Officers' Superannuation Committee, City of Edinburgh Council as Administering

Authority of the Lothian Pension Fund, and Operating Engineers Local 3 Trust Fund.  The

defendants in the Equity/Debt Securities Class Action include the Insureds (among whom eight

are current directors of the LBHI Estate), as well as various underwriter defendants and Ernst & Young LLP.

19.     It is the Insured Persons' understanding that the Equity/Debt Securities Class Action is seeking billions of dollars in damages on behalf of the purported class.

20.     Neither LBHI nor any of the other Debtors is named as a defendant in the Equity/Debt Securities Class Action and none of the Debtors are party to the settlement.

21.     On June 4, 2010, the Insured Persons, in conjunction with other defendants in the Equity/Debt Securities Class Action, moved to dismiss the Third Amended Complaint. On July 27, 2011, the district court issued an Opinion granting in part and denying in part those motions to dismiss. As ordered by the district court, the parties on August 19, 2011 submitted a proposed order which aims more fully to set forth the rulings in the Opinion. Pursuant to this order, certain of plaintiffs' claims remain pending against all the insureds.

### The Settlement Agreement

22.     In connection with the Equity/Debt Securities Class Action, to eliminate the uncertainties, burden, and expense of further litigation, without any admission or concession of any fault, liability, or wrongdoing, the Equity/Debt Settling Parties, through arms-length negotiations, have agreed to settle all disputes outstanding between them under a set of binding term sheets that set forth the material terms and obligations of the parties, subject to execution of a written settlement agreement and preliminary and final approval by Judge Kaplan. The relevant terms of the term sheets, as they relate to the Debtors, are as follows:[5]

---

[5] To the extent there is an inconsistency between this summary and the term sheets, the terms of the term sheets shall control. Copies of the term sheets has not been attached to this Motion because the Debtors are not parties thereto and the provisions thereof that are relevant to the Debtors are those described in paragraph 22 hereof with respect to the payment of the Settlement Amount from proceeds of the Excess Insurance Policies.

(i)    the effectiveness of any settlement is subject to entry of an order in the Chapter 11 Cases granting relief from the automatic stay to permit the Excess Policy Insurers to pay the Settlement Amount and subject to preliminary and final approval by the district court, after any and all appeals have been exhausted;

(ii)   payment of the Settlement Amount of $90,000,000 into a jointly controlled escrow account within the later of ten business days following the entry of an order granting the requested relief from the automatic stay or the execution of stipulation of settlement and release;

(iii)  an agreed upon timetable for the filing of a motion for preliminary approval;

(iv)   a stipulation to certification of a class of plaintiffs for settlement purposes only;

(v)    the exchange of certain documents and financial information;

(vi)   mutual releases between the Equity/Debt Class and the Insured Persons (and other releasees) and dismissal with prejudice of all claims against the Insured Persons;

(vii)  the release by the Equity/Debt Class of the Debtors as to all claims, rights, remedies, demands, liabilities, or causes of action that have been alleged or could have been alleged in the Third Amended Complaint or in any preceding complaints that (i) are based upon or arise from any of the allegations, transactions, facts, matters, events, disclosures, statements, occurrences, circumstances, representations, conduct, acts, or omissions or failures to act that have been alleged or asserted in the Third Amended Complaint or in any preceding complaints (or in any forum or proceeding or otherwise), and (ii) are based upon the purchase or acquisition of the Lehman securities during the class period;

(viii) the release by the Equity/Debt Class of the Debtors, including the withdrawal of proofs of claim filed against the Debtors that fall within the release of the Debtors, which include but are not limited to proofs of claim nos. 27759 and 27762; and

(ix)   entry of an appropriate bar order.

### Cause Exists to Grant the Relief Requested

23.    Pursuant to the Prior Stay Orders, this Court has granted the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and the Insured Persons that are governed by the same terms and conditions as the as the Excess Insurers Policies.

10

Accordingly, because cause to modify the automatic stay was found to exist under the Prior Stay

Orders, *a fortiori*, such cause exists here as well. If, however, the Insured Persons must

independently demonstrate that such cause exists to allow the Excess Policy Insurers to pay the

Settlement Amount, as described below, it is beyond peradventure that such a modification of the

automatic stay is warranted.

A.    The Proceeds Are Not Property of the Estate

        24.        Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay

of any action seeking to obtain possession or exercise control over property of the bankruptcy

estate. It is well settled that insurance policies are property of the estate and covered by the

automatic stay provisions of the Bankruptcy Code. *See MacArthur Co. v. Johns-Manville Corp.*,

837 F.2d 89 (2d Cir 1988). However, courts have distinguished between ownership of a policy

and ownership of the *proceeds* of a policy. While courts have not been uniform in their analysis,

where a policy provides for payment only to a third party – such as payments to officers and

directors under an executive insurance policy – or where the debtor has a right of coverage or

indemnification, but such right is hypothetical or speculative, courts have held that the proceeds

of such policy are not property of the bankruptcy estate. *See, e.g., In re Adelphia Commc'ns

Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of

the estate where it had not been suggested that debtors had made any payment for which they

may be entitled to indemnification under policy or that any such payments were then

contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004)

(holding that proceeds of D&O insurance policy were not property of the estate where debtor's

indemnification right under the policy was speculative and direct coverage of debtor under

policy was hypothetical); *In re La World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(holding that proceeds of a D&O policy belonged only to the officers and directors and,

11

therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805,

809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers

and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity

coverage were highly remote and therefore proceeds were not property of estate).

25.    In determining whether proceeds are property of the estate, courts review

the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. See also *In re*

*CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455

(Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must

be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the

pertinent contractual provisions under applicable state law").

26.    The Excess Insurance Policies contain an unambiguous priority of

payments endorsement that expressly subordinate any potential rights of the Debtors to proceeds

payable under the Excess Insurance Policies to the rights of the individual Insureds.  The priority

of payment endorsements is an enforceable contractual provision and should be upheld for the

benefit of the individual Insureds as intended. *See In re Enron Corp.*, Case No. 01-16034

(Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that priority of payment provision

was an enforceable contractual right).[6]

27.    Consistent with the purpose of such policies, the Debtors purchased the

Excess Insurance Policies primarily to provide insurance coverage to their officers and directors,

including the Insured Persons. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y.

1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director

---

[6] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit F.

interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which would be payable only in the event that the Debtors indemnified the individual Insureds and which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of the Settlement Amount.

       28.      Even if the proceeds from the Excess Insurance Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of the Settlement Amount as required under the Excess Insurance Policies.  It is not uncommon for courts to grant stay relief to allow payment of settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

       29.      Allowing the Excess Policy Insurers to pay the Settlement Amount will, in fact, benefit the Debtors' estates.  The Debtors have an obligation under their by-laws to advance the settlement costs incurred by the individual Insureds, including the Insured Persons.  If the Excess Policy Insurers are barred from advancing the Settlement Amount due to the enforcement of the automatic stay, the Insured Persons may assert indemnification claims against the Debtors for such amounts.[7]  Consequently, payment of the Settlement Amount under the Excess Insurance Policies will reduce or eliminate the claims that the Insured Persons could assert against the Debtors.

---

[7] Many of the Insured Persons have filed protective claims against LBHI for indemnification and advancement of defense costs (*See, e.g.*, Proof of Claim Nos. 4645, 4646, 4860, 7388, 7389, 7390, 7391, 7392, 32550 [Mr. Gregory]; 16194 [Mr. Fuld]; 19433 [Mr. O'Meara]; 66183 [Mr. Hernandez]; 66184 [Mr. Macomber]; 66185 [Mr. Cruikshank]; 66188 [Mr. Kaufman]; 66190 [Sir Gent]; 66189 [Ms. Evans]; 66186 [Mr. Berlind];  66192 [Mr. Akers]; 66193 [Mr. Ainslie]).

30.      Modifying the automatic stay will not harm the Debtors' estates. As explained above, any rights the Debtors have to the proceeds are contractually subordinated to the rights of the individual Insureds pursuant to the priority of payments clause.

31.      Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the Excess Insurance Policies, the Insured Persons submit that any such interest is nominal and in any event cannot be determined until the Insured Persons' losses have been quantified and paid. Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Excess Policy Insurers to make payment of the Settlement Amount pursuant to the terms of the settlement and subject to the terms of the Excess Insurance Policies.

32.      In making this Motion, neither the Debtors, the Insured Persons, nor the Excess Policy Insurers are waiving any of their respective rights under the Excess Insurance Policies or any other insurance policy. In addition, the Insured Persons are not seeking a determination of the Excess Policy Insurers' obligation to pay any settlement costs under the Excess Insurance Policies. Rather, the Insured Persons seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow the Excess Policy Insurers to make payment of the Settlement Amount.

## Notice

33.      No trustee has been appointed in these cases. The Insured Persons have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Debtors; (iii) the attorneys for the Creditors' Committee; (iii) attorneys for the Equity/Debt Securities Class Lead Plaintiffs; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi)

14

the United States Attorney for the Southern District of New York; (vii) all parties who have requested notice in these chapter 11 cases; and (viii) the attorneys for ACE Bermuda, St. Paul Mercury, Axis, Liberty, Arch, Allied World, and Endurance. The Insured Persons submit that no other or further notice need be provided.

WHEREFORE the Insured Persons respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: August 24, 2011
     New York, New York

DECHERT LLP
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-8099

Attorneys for Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John Macomber

ALLEN & OVERY LLP
Patricia M. Hynes
Todd S. Fishman
Molly C. Spieczny

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

Attorneys for Richard S. Fuld, Jr.

_Israel David_ (by)

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
Audrey Strauss
Israel David

One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Attorneys for Joseph M. Gregory

_Mary E. McGarry_ (by)

SIMPSON THACHER & BARTLETT LLP
Michael J. Chepiga
Mary Elizabeth McGarry

425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

Attorneys for Christopher M. O'Meara

_Kelly M. Hnatt_ (by)

WILKIE FARR & GALLAGHER LLP
Kelly M. Hnatt

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Attorneys Ian T. Lowitt

16

PROSKAUER ROSE
Robert J. Cleary
Mark E. Davidson
Seth David Fier

11 Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Attorneys for Erin Callan

14207342.1.LITIGATION

**<u>EXHIBIT A</u>**

**(Axis 2007-2008 Policy)**



## SECUREXCESS DECLARATIONS – NEW YORK

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, AND TO THE EXTENT THE UNDERLYING INSURANCE PROVIDES COVERAGE ON A CLAIMS-MADE BASIS FOR LIABILITY ASSERTED AGAINST AN INSURED: 1) THIS POLICY MAY ONLY PROVIDE COVERAGE FOR A CLAIM MADE AGAINST AN INSURED DURING THE POLICY PERIOD; 2) NO COVERAGE EXISTS FOR A CLAIM MADE AFTER THE END OF THE POLICY PERIOD; 3) NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE POLICY PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER; AND 4) DURING THE FIRST SEVERAL YEARS OF A CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS AND DEFENSE COSTS SHALL BE APPLIED TO THE RETENTION OR DEDUCTIBLE, IF ANY. THE INSURER IS NOT OBLIGATED TO PAY ANY LOSS AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF LOSS. PLEASE READ THIS POLICY CAREFULLY.

| COMPANY: Axis Reinsurance Company | POLICY NUMBER:  RNN 713535/01/2007 |
| --- | --- |

| Item 1.  Policyholder:<br>Lehman Brothers Holdings Inc.<br>1301 Avenue of the Americas<br>New York, NY 10019 | Item 2.  Policy Period:<br>a.  Inception Date: May 16, 2007<br>b.  Expiration Date: May 16, 2008<br>Both dates at 12:01 a.m. at the<br>address listed in Item 1 |
| --- | --- |

Item 3.  Limits of Liability (inclusive of defense costs):
a.  Each Claim                                                                    $ 15,000,000
b.  Maximum aggregate Limit of Liability for all Claim(s)
     During the Policy Period of all Insurance Products    $ 15,000,000

Item 4.  Underlying Insurance and Insurance Products:  See Endorsement No. 1

Item 5.  Endorsements Attached at Inception: SE1000, SEFTZ0526, Manuscript Endorsement #3, Manuscript Endorsement #4, Manuscript Endorsement #5, Manuscript Endorsement #6

Class 1: ✓
Class 2: ✓
Class Code:
2-14176

SE FTZ 0528 (Ed. 06.05)                                            Printed in U.S.A.

Item 6.  Notices to **Insurer**:

| Notice of **Claim(s) To Be Sent To**: | All Other Notices To Be Sent To: |
|---|---|
| Axis Financial Insurance Solutions Claims | Axis Financial Insurance Solutions |
| Address:  Connell Corporate Park | Address:  Connell Corporate Park |
| Three Connell Drive | Three Connell Drive |
| P.O. Box 357 | P.O. Box 357 |
| Berkeley Heights, NJ 07922-0357 | Berkeley Heights, NJ 07922-0357 |

Or to the **Insurer's** authorized agent in
the state of New York at the following
address:

Marsh USA, Inc.
1166 Avenue of the Americas
New York, NY 10019

| Item 7.  Pending and Prior Claim Date: 5/16/2003 | Item 8.  Terrorism Coverage Premium: N/A |
|---|---|

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid
unless also signed by another duly authorized representative of the Insurer.

_____          DEC 0 7 2007
Authorized Representative                 _____
                                          Date

_Richard T. Gregg_                        _Michael E. Morrill_

          Secretary                                 President

SE FTZ 0528 (Ed. 06.05)                                      Printed In U.S.A.

# SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows:

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## I. INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

## II. DEFINITIONS

**A.** **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

**B.** **Insurance Product** means each separate type of insurance identified as an **"Insurance Product"** in Endorsement No. 1 to this Policy.

**C.** **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

**D.** **Insurer** means the company identified as **"Insurer"** in the Declarations.

**E.** **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

**F.** **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

**G.** **Primary Policy** means the specific policy identified as the **"Primary Policy"** under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

**H.** **Sublimit** means any **Underlying Limits** which:

    1.   applies only to a particular grant of coverage under such **Underlying Insurance**; and

    2.   reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

**I.** **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

**J.** **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.



Class 1:
Class 2:
Class Code:
2-14176

SE 0001 (Ed. 02 03)                    Page 1 of 4                    Printed in U.S.A.

K. **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

## III. CONDITIONS OF COVERAGE

A. For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

1. All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

2. All **Insureds** shall comply fully with all of the provisions of this Policy.

B. As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

C. If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the Insurer so agrees in writing. The Insurer may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the Insured paying any additional premium required by the Insurer for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

## IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

A. If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

B. If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

C. If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

## V. LIMITS OF LIABILITY

A. The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

**B.** The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all **Insurance Products.**

**C.** This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

**D.** Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

## VI. SETTLEMENTS AND DEFENSE

**A.** No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

**B.** The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

**C.** The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

## VII. SUBROGATION

**A.** In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

**B.** Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the **Insurer** and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

## VIII. AUTHORIZATION

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

## IX. NOTICE

**A.** With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy**.

**B.** All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 6. in the Declarations.

**X.    MODIFICATION, CANCELLATION AND NONRENEWAL**

    **A.**  No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

    **B.**  The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

    **C.**  The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

    **D.**  The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

    **E.**  The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

    **F.**  Notwithstanding anything to the contrary set forth elsewhere in the Policy, in the event that any **Underlying Insurance** is rescinded by agreement or legal process for fraud or other material misrepresentation by the **Policyholder** or any of the **Insureds**, then this Policy shall be deemed to be automatically and immediately rescinded, but only with respect to any **Insurance Product** containing such rescinded **Underlying Insurance**.

**XI.  EXCLUSIONS**

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    **A.**  Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

    **B.**  Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

## SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Schedule of Underlying Insurance and Insurance Products is as follows:

A. **Insurance Product:** Directors and Officers Liability

1. **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | May 16, 2007-May 16, 2008 |

2. **Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| Federal Insurance Company | 7043-0875 | $15,000,000 | May 16, 2007-May 16, 2008 |
| Continental Casualty Company | DOX 267996454 | $10,000,000 | May 16, 2007-May 16, 2008 |
| Lloyd's of London | B0509QA016907 | $10,000,000 | May 16, 2007-May 16, 2008 |
| U.S. Specialty Insurance Company | 24-MGU-07-A14479 | $15,000,000 | May 16, 2007-May 16, 2008 |
| Zurich American Insurance Company | ELU097792-07 | $15,000,000 | May 16, 2007-May 16, 2008 |
| ACE Bermuda Insurance Ltd. | LEHM-11742D | $25,000,000 | May 16, 2007-May 16, 2008 |
| St. Paul Mercury Insurance Company | 590CM2698 | $15,000,000 | May 16, 2007-May 16, 2008 |

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1: ___
Class 2: ✓
Class Code:
2-14176

SE 1000 (Ed. 02 03)              Page 1 of 2              Printed in U.S.A.

All other provisions remain unchanged.

_____
Authorized Representative

DEC 0 7 2007
_____
Date

Endorsement No. 2

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

# NEW YORK AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

1. The second paragraph of Section I. **INSURING AGREEMENT**, is amended by the addition of the following:

   Provided, however, the **Insurer** agrees not to treat a delay by the **Underlying Insurer** in making payment as a failure to exhaust the **Underlying Insurance** provided the **Underlying Insurance** is exhausted by payment.

2. Section III. **CONDITIONS OF COVERAGE**, paragraph B. is amended by deleting the words "but in no event later than thirty (30) days thereafter".

3. Section III. **CONDITIONS OF COVERAGE**, paragraph C. is amended by deleting the words "but in no event later than thirty (30) days."

4. Section V. **LIMITS OF LIABILITY** is amended by the addition of the following:

   **E.**    If with respect to a **Claim** where this policy provides coverage solely for defense costs and such amounts qualify as legal services insurance pursuant to NY Regulation 162, then where required by New York Regulation No. 107(f), no more than twenty-five percent (25%) of this policy's limit of liability may be reduced by the payment of such legal defense costs.

5. Section VI. **SETTLEMENTS AND DEFENSE**, paragraph A. is amended by the addition of the following:

   The **Insured** has the option to consent to any settlement recommended by the **Insurer**. However, such consent shall not be unreasonably withheld.

6. Notwithstanding anything to the contrary in the Declarations or the Policy's Section IX. **NOTICE**, notice of any **Claim** may also be provided to any authorized agent of the **Insurer** located within the state of New York.

7. Section X., **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph C. is deleted and replaced by the following:

   **C.**    The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** at the mailing address shown in the Policy and to the **Policyholder's** authorized agent or broker written notice stating when, not less than fifteen (15) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice. The notice of cancellation shall include the reason for cancellation and shall state the amount due.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1: ☐
Class 2: ✓
Class Code:
2-1417 6

SE FTZ 0526 (Ed. 0605)                                                                Printed in U.S.A.

8.    Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph **E.** is deleted and replaced by the following:

**E.**    The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, or conditions its renewal upon a change in the limit of liability, a change in type of coverage, reduction of coverage, increased deductible or retention (if any), the addition of any exclusion, or an increase in premium in excess of 10% (exclusive of any premium increase generated as a result of increased exposure limits or as a result of experience rating, loss rating, retrospective rating or audit), then the **Insurer** shall mail or deliver written notice of the refusal to renew or the conditional renewal to the **Policyholder** at the mailing address shown on the Policy and to the **Policyholder's** authorized agent or broker, at least thirty (30) days but not more than one hundred and twenty (120) days before the expiration date of the Policy. Such notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the **Insurer** does not provide notice of nonrenewal or conditional renewal as provided above, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Policyholder**, during this 60-day period, has replaced the coverage or elects to cancel, in which event cancellation shall be on a pro rata premium basis; provided, however, that if the **Policyholder** elects to renew on the basis of the conditional renewal notice, then such terms, conditions and rates shall govern the Policy upon expiration of such 60-day period unless such notice was provided at least thirty (30) days prior to the expiration date of the Policy, in which event the terms, conditions and rates set forth in the conditional renewal notice shall apply as of the renewal date.

If the **Insurer** provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another **Policy Period**, at the lower of the current rates or the prior period's rates, unless the **Policyholder**, during the additional **Policy Period**, has replaced the coverage or elects to cancel in which event cancellation shall be on a pro rata premium basis. The maximum aggregate Limit of Liability of the expiring Policy shall be increased in proportion to the policy extension provided for in this paragraph.

The **Insurer** will not send the **Policyholder** a notice of nonrenewal or conditional renewal if the **Policyholder**, their authorized agent or broker or another insurer of the **Policyholder** provide notice that the Policy has been replaced or is no longer desired.

If the **Policyholder** elects to accept the terms, conditions and rates of the conditional renewal notice, a new aggregate Limit of Liability shall become effective as of the inception date of the renewal, subject to regulations promulgated by the Superintendent of Insurance.

9.    Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph **F.** is deleted in its entirety.

10.    This Policy is amended by the addition of the following:

If the **Insurer** does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the **Insured** or its attorney and the **Insurer**, then an action may be brought against the **Insurer** under the terms of the Policy for the amount of judgment not exceeding the amount of the applicable limit of liability under the Policy, except during a stay or limited stay of execution against the **Insured** or such judgment.

Notice given by or on behalf of the **Insureds** or written notice on behalf of the injured person or any other claimant, to any licensed agent of the **Insurer** in this state shall be deemed notice to the **Insurer**.

Provided, however, that failure by the **Insureds** and the **Policyholder** to give such notice shall not invalidate any **Claim** under the Policy if the **Insureds** and the **Policyholder** show that it was not reasonably possible to do so and that notice was given as soon as was reasonably possible.

SE FTZ 0526 (Ed. 0605)                                                                           Printed in U.S.A.

Bankruptcy or insolvency of the **Policyholder** or of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defense under this Policy.

Loss Information

Upon written request by the **Policyholder** or the **Policyholder's** authorized agent or broker, the **Insurer** shall mail or deliver the following loss information to the **Policyholder** for the time the Policy was in effect within twenty (20) days of such request:

1. information on closed **Claims**, including the date and description of the **Claim**, and any payments;

2. information on open **Claims**, including the date and description of the **Claim**, and amounts of any payments; and

3. information on notice of any wrongful acts, including the date and description of such notice.

All other provisions remain unchanged.

_____
Authorized Representative

DEC 0 7 2007
_____
Date

Endorsement No. 3

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that:

1.     The following shall be added to Section IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS of this Policy:

If any loss arising from a claim made against any **Insured**, as covered by the **Primary Policy** under Endorsement # 38, OUTSIDE DIRECTORSHIP ENDORSEMENT (hereinafter "ODL Claim"), is covered under any other valid and collectible policy(ies) issued by the **Insurer** or any insurance company owned by or affiliated with Axis Capital Limited, then the total amount the **Insured** shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim, the **Underlying Limit** shall be deemed to be depleted or exhausted as a result of the issuers of the **Underlying Insurance** or any of the member companies of the issuers of the **Underlying Insurance** and/or the **Insured(s)**, paying loss covered under the **Underlying Insurance**.

Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

2.     Solely with respect to an ODL Claim, Section IV. C. of this Policy is deleted.

All other provisions remain unchanged.

Authorized Representative

DEC 0 7 2007

Date

Class 1: ___
Class 2: ✓
Class Code:
2-14176

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## FOLLOW FORM ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that in the event of any conflict between the provisions of this Policy and the terms and conditions of the **Primary Policy**, then the terms and conditions of the **Primary Policy** shall control, except with regard to premium, limits of liability, retention or attachment point, and the Pending and Prior Claim Date; and in no event shall the coverage provided under this Policy be more broad than the coverage under the **Primary Policy** or any **Underlying Insurance**.

It is further understood and agreed that in any case where this Policy contains any provision which is not referenced in the terms and conditions of the **Primary Policy**, then the provisions of this Policy shall prevail.

The title and any headings in this Endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other provisions remain unchanged.

Authorized Representative

DEC 0 7 2007
Date

Class 1: ___
Class 2: ✓
Class Code:
2-14176

**Page 1 of 1**

**Printed in USA**

Endorsement No. 5

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## MANUSCRIPT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that the second paragraph of Section I Insuring Agreement of the Policy is deleted and amended to read in its entirety as follows:

> The insurance afforded under this Policy shall apply only after the **Underlying Insurers** and/or the **Insureds** or the **Policyholder** shall have paid, in currency of legal tender, the full amount of the **Underlying Limits** for covered loss under the **Underlying Insurance** and the **Policyholder** or the **Insureds** shall have paid the full amount of the applicable retention amount under any **Underlying Insurance**.

All other provisions remain unchanged.

Authorized Representative

DEC 07 2007

Date

Class 1: ___
Class 2: ✓
Class Code:
2-14176

**Page 1 of 1**                                    Printed in USA

Endorsement No. 6

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

## MANUSCRIPT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that:

1.  Section I. INSURING AGREEMENT of this Policy is deleted and amended to read in its entirety as follows:

    I.  **INSURING AGREEMENT**

    With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

    The insurance afforded under this Policy shall apply only after the **Underlying Insurers** and/or the **Insureds** or the **Policyholder** shall have paid, in currency of legal tender, the full amount of the **Underlying Limits** for covered loss under the **Underlying Insurance** and the **Policyholder** or the **Insureds** shall have paid the full amount of the applicable retention amount under any **Underlying Insurance**, except that in the event of financial impairment or insolvency of an insurer of any policy of **Underlying Insurance** (an "Underlying Policy"), coverage otherwise afforded by this Policy shall drop down and attach, to the extent of the unexhausted portion of such Underlying Policy's limit of liability (but subject in all events to this Policy's own limit of liability as set forth in Item 3. of the Declarations), at the point where such Underlying Policy would have attached had such financial impairment or insolvency not occurred.

2.  Section III. CONDITIONS OF COVERAGE A. 1. of this Policy is deleted.

3.  Section V. LIMITS OF LIABILITY, C. of this Policy is amended by deleting the words "including without limitation" and inserting the words "other than".

All other provisions remain unchanged.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Authorized Representative

DEC 0 7 2007

Date

Class 1:
Class 2: ✓
Class Code:
2-14176

Page 1 of 1

Printed in USA

Endorsement No. 7

Effective date of this endorsement:  12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

## DELETE SPECIFIED ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that Endorsement No. 1 of the Policy is deleted.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date:    DEC 9 8 2007

NOTICE:  THESE  POLICY  FORMS  AND  THE  APPLICABLE  RATES  ARE  EXEMPT  FROM  THE  FILING  REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1: ✓
Class 2: ✓
Class Code:
2-14176

MU 1053 (Ed. 0606)            Page 1 of 1                        Printed in USA

Endorsement No. 8

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT, HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Schedule of Underlying Insurance and Insurance Products is as follows:

A. **Insurance Product:**   **Directors and Officers Liability**

1. **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | May 16, 2007-May 16, 2008 |

2. **Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Federal Insurance Company | 7043-0876 | $15,000,000 | May 16, 2007-May 16, 2008 |
| Continental Casualty Company | DOX 267996454 | $10,000,000 | May 16, 2007-May 16, 2008 |
| Lloyd's of London | 609QA016907 | $10,000,000 | May 16, 2007-May 16, 2008 |
| U.S. Specialty Insurance Company | 24-MGU-07-A14479 | $15,000,000 | May 16, 2007-May 16, 2008 |
| Zurich American Insurance Company | DOC 7995104 09 | $15,000,000 | May 16, 2007-May 16, 2008 |
| ACE Bermuda Insurance Ltd. | LEHM-11742D | $25,000,000 | May 16, 2007-May 16, 2008 |
| St. Paul Mercury Insurance Company | 590CM2698 | $15,000,000 | May 16, 2007-May 16, 2008 |

Class 1:
Class 2: ✓
Class Code:
2-14176

SE 1000 (Ed. 02 03)                    **Page 1 of 2**                    Printed in U.S.A.

All other provisions remain unchanged.

_____

Authorized Representative

_____

SEP 2 6 2007

Date

Endorsement No. 9

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: RNN 713535/01/2007
Issued to: Lehman Brothers Holdings Inc.
By: Axis Reinsurance Company

**DELETE SPECIFIED ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In consideration of the premium charged, it is agreed that Endorsement No. *3* of the Policy is deleted.

All other provisions remain unchanged.

_____
Authorized Representative

DEC 2 6 2007
_____
Date

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1: _____
Class 2: ✓
Class Code:
2-14176    MU 1053 (Ed. 0606)          Page 1 of 1          Printed in USA

Endorsement No. <u>10</u>

Effective date of this endorsement: 12:01 a.m. on: <u>May 16, 2007</u>
To be attached to and form part of Policy Number: <u>RNN 713535/01/2007</u>
Issued to: <u>Lehman Brothers Holdings Inc.</u>
By: <u>Axis Reinsurance Company</u>

## ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that:

1.      The following shall be added to Section IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS of this Policy:

If any loss arising from a claim made against any **Insured**, as covered by the **Primary Policy** under Endorsement # 38 Amend Insured Person Endorsement, including any revisions or amendments made to Endorsement # 38 that are agreed to in writing by the **Insurer** (hereinafter "ODL Claim"), is covered under any other valid and collectible policy(ies) issued by the **Insurer** or any insurance company owned by or affiliated with Axis Capital Limited, then the total amount the **Insurer** shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim, the **Underlying Limit** shall be deemed to be depleted or exhausted as a result of the issuers of the **Underlying Insurance** or any of the member companies of the issuers of the **Underlying Insurance** and/or the **Insured(s)**, paying loss covered under the **Underlying Insurance**.

Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

2.      Solely with respect to an ODL Claim, Section IV. C. of this Policy is deleted.

All other provisions remain unchanged.

Authorized Representative

DEC 2 8 2007

Date

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Class 1:
Class 2: ✓
Class Code:
2-14176

## EXHIBIT B

**(Liberty 2007-2008 Policy)**



Liberty International

## LIBERTY MUTUAL INSURANCE COMPANY
### (A Mutual Insurance Company, herein called the Insurer)

### EXCESS FOLLOW FORM POLICY

### DECLARATIONS

Policy Number:   078365-017

Item 1. Named Insured:   Lehman Brothers Holdings Inc.

Item 2. Principal Address:   1301 Avenue of the Americas
New York, NY 10019

Item 3. Limit of Liability:

    Each Policy Period            $10,000,000

Item 4. Underlying Policies:

  (A)   **Primary Policy:**
        Insurer:                    XL Specialty Insurance Company
        Policy Number:              ELU097792-07
        Limits:                     $20,000,000
        Deductible:                 $0/$10,000,000
        Policy Period:              May 16, 2007 to May 16, 2008

  (B)   **Other Policy(ies):**
        Insurer:                    Federal Insurance Company
        Policy Number:              7043-0876
        Limits:                     $15,000,000
        Excess of:                  $20,000,000
        Policy Period:              May 16, 2007 to May 16, 2008

        Insurer:                    Continental Casualty Company
        Policy Number:              267996454
        Limits:                     $10,000,000
        Excess of:                  $35,000,000
        Policy Period:              May 16, 2007 to May 16, 2008

        Insurer:                    Lloyd's of London
        Policy Number:              QA016907/1
        Limits:                     $10,000,000
        Excess of:                  $45,000,000
        Policy Period:              May 16, 2007 to May 16, 2008

Member of Liberty Mutual Group

- 2 -

| | |
|---|---|
| Insurer: | U.S. Specialty Insurance Company |
| Policy Number: | 24-MGU-07-A14479 |
| Limits: | $15,000,000 |
| Excess of: | $55,000,000 |
| Policy Period: | May 16, 2007 to May 16, 2008 |

| | |
|---|---|
| Insurer: | Zurich American Insurance Company |
| Policy Number: | DOC 7995104 09 |
| Limits: | $15,000,000 |
| Excess of: | $70,000,000 |
| Policy Period: | May 16, 2007 to May 16, 2008 |

| | |
|---|---|
| Insurer: | ACE Bermuda Insurance Ltd. |
| Policy Number: | LEHM 11742D |
| Limits: | $25,000,000 |
| Excess of: | $85,000,000 |
| Policy Period: | May 16, 2007 to May 16, 2008 |

| | |
|---|---|
| Insurer: | St. Paul Mercury Insurance Company |
| Policy Number: | 509CM2698 |
| Limits: | $15,000,000 |
| Excess of: | $110,000,000 |
| Policy Period: | May 16, 2007 to May 16, 2008 |

| | |
|---|---|
| Insurer: | AXIS Reinsurance Company |
| Policy Number: | RNN 713535/01/2007 |
| Limits: | $15,000,000 |
| Excess of: | $125,000,000 |
| Policy Period: | May 16, 2007 to May 16, 2008 |

Item 5. Policy Period:        From    12:01 a.m. on **May 16, 2007**
                             To      12:01 a.m. on **May 16, 2008**

                                    Local time at the address shown in Item 2.

Item 6. Endorsement(s) Effective at Inception:        6; LMIC CG21701102 (01/05)

Item 7. Termination of Prior Policy(ies):            078365-016

In witness whereof, the Insurer has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned below by a duly authorized representative.

_Edmund F. Kelly_
President

_Dexter R. Legg_
Secretary

_Kirk A. Anne Teller_
AUTHORIZED REPRESENTATIVE

_7/3/07_
DATE

LM EFF-001(6/96)



## LIBERTY MUTUAL INSURANCE COMPANY
### (A Mutual Insurance Company, herein called the Insurer)

**POLICY TERMS**

Relying upon the completeness and accuracy of the statements and disclosures in the application for this Policy and upon all other information provided to the Insurer, in consideration of the payment of the premium of this Policy, the Insurer agrees as follows:

1.  **Incorporation of Primary Policy:** This Policy incorporates by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the **Primary Policy** and as described in the materials submitted to the **Insurer** in connection with the application for this Policy except as regards the premium, the limit of liability, the policy period, and except as otherwise provided herein. Any changes to the **Primary Policy** shall not be binding on the **Insurer** unless specifically endorsed hereon.

2.  **Definitions:** The following terms, whenever printed in boldface type in this Policy, shall have the meanings indicated below.

    2.1.   **"Insurer"** means the entity issuing this Policy as named on the **Declarations**.

    2.2.   **"Named Insured"** means the entity identified in Item 1 of the **Declarations**.

    2.3.   **"Primary Policy"** means the policy identified in Item 4.(A) of the **Declarations**.

    2.4.   **"Underlying Limit of Liability"** means the combined limits of liability of the **Underlying Policies**, less any reduction or exhaustion of the limits of liability due to payment of loss under those policies.

    2.5.   **"Underlying Policies"** means the policies identified in Items 4.(A) and 4.(B) of the **Declarations**.

3.  **Limit of Liability:** The **Insurer** will pay all of loss in excess of both the **Underlying Limit of Liability** plus the applicable retention or deductible under the **Primary Policy**, up to the Limit of Liability stated in Item 3 of the **Declarations**. The **Insurer's** maximum liability under this Policy for loss shall be the amount shown in Item 3 of the **Declarations**. In the event the Limit of Liability stated in Item 3 of the **Declarations** is exhausted by payment of loss, any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished.

4.  **Maintenance of Underlying Policies:** It is a condition precedent to the coverage afforded under this Policy that the insureds maintain the **Underlying Policies** with retentions/deductibles, participation/co-insurance and limits of liability (subject to reduction or exhaustion as a result of loss payments), as set forth in Items 4.(A) and 4.(B) of the **Declarations**. Except as provided in paragraph 4.1., this Policy only provides coverage when the **Underlying Limit of Liability** is exhausted by reason of the insurers of the **Underlying Policies** paying or being held liable to pay in legal currency the full amount of the **Underlying Limit of Liability** as loss.

    4.1   In the event one or more of the insurers under the **Underlying Policies** fails to pay loss in connection with any claim covered under the **Underlying Policies** as a result of the insolvency, bankruptcy or liquidation

LM EXF-001(6/96)

- 4 -

of said insurer, then the insureds shall be deemed self-insured for the amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

5.    **Reduction or Exhaustion:**  In the event of reduction of the Underlying Limits of Liability by reason of payment of loss, this Policy shall pay excess of the reduced limits.  In the event of exhaustion of the Underlying Policies, this Policy shall continue in force as primary insurance; provided, however, this Policy shall only pay excess of the retention or deductible applicable to the Primary Policy, which shall be applied to any subsequent loss in the same manner as specified in the Primary Policy.

    5.1   If any Underlying Policies bear an effective date which is prior to the Policy inception date, and any such insurance becomes exhausted or impaired by payment of loss, with respect to any claim which shall be deemed to be made prior to the Policy inception date, then with respect to any claim made after the Policy inception date, the insureds shall be deemed to be self-insured for the amount of any such Underlying Policies which are exhausted or impaired by payment of such loss with respect to such claim made prior to the Policy inception date.

6.    **Defense and Settlement:**  The insureds shall not admit liability for, offer to settle or settle any claim or incur costs of defense, where the liability, settlement and/or costs of defense are reasonably likely to involve the limit of liability of this Policy, without the Insurer's prior written consent, which consent shall not be unreasonably withheld.

7.    **Notice of Claim:**  The insureds shall give the Insurer notice of any claim in the same manner required by the terms and conditions of the Primary Policy and shall give the Insurer such information and cooperation as it may reasonably require.  Notices to the Insurer shall be sent via express mail to:

Liberty International Underwriters
55 Water Street
18th Floor
New York, NY 10041

Such notice shall be effective on the date of receipt by the Insurer at the above address.

8.    **Policy Termination:**  This Policy may be cancelled in the same manner as provided by the terms and conditions of the Primary Policy.

9.    **Subrogation:**  If any payment is made hereunder, the Insurer will act in concert with all other interests concerned (including those of the insureds) in the exercise of rights of recovery against any person or other entity.  If any amounts are recovered, they shall be apportioned as follows:

    a.    Any interests (including those of the insureds) that paid an amount by or on behalf of the insureds over and above any payment made by the Insurer under this Policy shall be reimbursed first up to the amount paid by them;

    b.    then, the Insurer shall be reimbursed out of any balance then remaining up to the amount paid; and

    c.    then, the interests (including those of the insureds) of which this coverage is in excess are entitled to claim the residue, if any.

10.   **Assignment:**  Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

11.   **Conformity to Statute:**  Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy are hereby amended to conform to such laws.

- 5 -

12.    **Entire Agreement:** By acceptance of this Policy, the insureds and the Insurer agree that this Policy, including the Declarations, the application and any written endorsements attached hereto, constitute the entire agreement between the parties.

13.    **Representation by the Named Insured:** The Named Insured shall act on behalf of all the insureds for all purposes including, but not limited to, the negotiation and purchase of this Policy, the giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

14.    **Mutual Policy Conditions:** This Policy is nonassessable. The Named Insured is a member of the Insurer's company and shall participate to the extent and upon the conditions fixed and determined by the board of directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.


*Edmund F. Kelly*

Edmund F. Kelly
President


*Dexter R. Legg*

Authorized Representative of
Liberty Mutual Insurance Company


LM-EFF-001(6/96)



### LIBERTY MUTUAL INSURANCE COMPANY

**(A Mutual Insurance Company, hereinafter called the Insurer)**

#### ENDORSEMENT NO. 1

| | | |
|---|---|---|
| This endorsement, effective | May 16, 2007 | forms part of |
| Policy No.    078365-017 | issued to: | Lehman Brothers Holdings Inc. |

In consideration of the premium charged for this Policy, it is understood and agreed that the Policy is amended by the addition of the following paragraph:

15.1    Exclusion:  the Insurer shall not be liable to make any payment in connection with any claim based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    a.    any prior and/or pending litigation, administrative proceeding or investigation as of May 16, 2003; or

    b.    any fact, circumstance, situation, event or transaction underlying or alleged in such litigation, administrative proceeding or investigation,

regardless of the legal theory upon which such claim is predicated.

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative of
Liberty Mutual Insurance Corporation

_____
Date

03/97   US/D&O.34                                    PRIOR PENDING LITIGATION EXCLUSION



**LIBERTY MUTUAL INSURANCE COMPANY**

(A Mutual Insurance Company, hereinafter called the Insurer)

**ENDORSEMENT NO. 2**

| This endorsement, effective | May 16, 2007 | forms part of |
|---|---|---|
| Policy No.   078365-017 | issued to: | Lehman Brothers Holdings Inc. |

## AMEND SECTIONS 1 AND 3 FOR NON-INDEMNIFIABLE LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed:

(1) Solely with respect to loss covered under Insuring Agreement I.(A) of the **Primary Policy**, the second sentence of Section 1 Insuring Clause of this Policy is amended to read in its entirety as follows:

Coverage hereunder shall attach only after the insurers of the Underlying Policies shall have paid in legal currency the full amount of the **Underlying Limit of Liability** for such policy period; except that in the event of financial impairment or insolvency of an insurer of any policy of **Underlying Policies** (an "Underlying Policy"), coverage otherwise afforded by this Policy shall drop down and attach, to the extent of the unexhausted portion of such Underlying Policy's limit of liability (but subject in all events to this Policy's own limit of liability as set forth in Item 3 of the Declarations), at the point where such Underlying Policy would have attached had such financial impairment or insolvency not occurred.

(2) Solely with respect to loss covered under Insuring Agreement I.(A) of the **Primary Policy**, Section 5. Reduction or Exhaustion of this Policy is deleted and replaced with the following:

5. Only in the event of:

   (a) exhaustion of the **Underlying Limit of Liability** by reason of the insurers of the **Underlying Policies** paying in legal currency loss which, except for the amount thereof, would have been covered hereunder; or

   (b) financial impairment or insolvency of the insurers of the **Underlying Policies**,

this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the Primary Policy, which retention shall be applied to any subsequent loss in the same manner specified in the Primary Policy.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms and conditions of the Policy remain unchanged.


_____
Authorized Representative of
Liberty Mutual Insurance Company

7|3|07
_____
Date



## LIBERTY MUTUAL INSURANCE COMPANY

### (A Mutual Insurance Company, hereinafter called the Insurer)

### ENDORSEMENT NO. 3

| | | |
|---|---|---|
| This endorsement, effective | May 16, 2007 | forms part of |
| Policy No.    078365-017 | issued to: | Lehman Brothers Holdings Inc. |

### ODL NON—ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

1.    The following Section is added to the policy:

    15.  Non-Accumulation of Limits

If any loss arising from a claim made against any **Insured**, as covered by the **Primary Policy** under Endorsement #27 AMENDED INSURED PERSON ENDORSEMENT (hereinafter "ODL Claim"), including any revisions or amendments made to this endorsement, is covered under any other valid policy(ies) issued by any member company of the Liberty Mutual Group of Insurance Companies, then the total amount the Company shall pay under all such policies for all covered loss an account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by Lehman Brothers Holdings Inc. and by the **Underlying Policies** for loss arising from a claim made against any **Insured** which is covered by any member of the **Underlying Policies** and the **Primary Policy** for Lehman Brothers Holdings Inc., as being part of the **Underlying Limit of Liability** with respect to an ODL Claim.

Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative of
Liberty Mutual Insurance Company

7/3/07
_____
Date



**LIBERTY MUTUAL INSURANCE COMPANY**

(A Mutual Insurance Company, hereinafter called the Insurer)

**ENDORSEMENT NO. 4**

| | | |
|---|---|---|
| This endorsement, effective | **May 16, 2007** | forms part of |
| Policy No.    **078365-017** | issued to: | **Lehman Brothers Holdings Inc.** |

Paragraph 4 of the Policy is deleted in its entirety and replaced with the following:

4.    **Maintenance of Underlying Policies:** The insureds shall maintain the **Underlying Policies** with retentions/deductibles, participation/co-insurance and limits of liability (subject to reduction or exhaustion as a result of loss payments), as set forth in Items 4.(A) and 4.(B) of the Declarations. Except as provided in paragraph 4.1, this Policy only provides coverage when the **Underlying Limit of Liability** is exhausted by reason of the insurers of the **Underlying Policies** or Insureds paying or being held liable to pay in legal currency the full amount of the **Underlying Limit of Liability** as loss. However, if the Underlying Policies are not so maintained, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Policies been so maintained.

4.1    Except with respect to loss covered under Insuring Agreement 1(A) of the primary policy, in the event one or more of the insurers under the **Underlying Policies** fails to pay loss in connection with any claim covered under the **Underlying Policies** as a result of the insolvency, bankruptcy or liquidation of said insurer, then the insureds shall be deemed self-insured for the amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

As a condition precedent to any such payment by the Insured, the Insured must promptly notify the Insurer and obtain the Insurer's written consent. In no way, shall such payment by the Insured constitute a waiver of any terms, conditions or exclusion of the Underlying Policies or this policy.

The Insurer's maximum liability for loss under this Policy shall be the amount set forth in Item 3 of the Declarations. However, if the Insureds have (for any reason other than the finacial impairment or insolvency of an insurer of the **Underlying Policies**) made any payment of loss, that would otherwise be covered under this policy, and such payment has contributed to the exhaustion of an **Underlying Policy**, the limit of liability of this Policy shall be reduced by the highest percentage by which any **Underlying Policies** were reduced as a result of such payment and the Insureds shall bear such percentage amount uninsured.

All other terms and conditions of the Policy remain unchanged.

Authorized Representative of
Liberty Mutual Insurance Company

7/3/07

Date



## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Insurer)

### ENDORSEMENT NO. 5

| | | |
|---|---|---|
| This endorsement, effective | May 16, 2007 | forms part of |
| Policy No.        078365-017 | issued to: | Lehman Brothers Holdings Inc. |

### NOTICE ENDORSEMENT

Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of Liberty Mutual Holding Company Board of Directors in compliance with any laws that apply.

SECRETARY

PRESIDENT

Authorized Representative of
Liberty Mutual Insurance Company

Date

GPO 4885 01 07

 **Liberty Mutual.**

### LIBERTY MUTUAL INSURANCE COMPANY
### (A Mutual Insurance Company, hereinafter called the Insurer)

### ENDORSEMENT NO.  6

This endorsement, effective        **May 16, 2007**        forms part of

Policy No.    **078965-017**        issued to:    **Lehman Brothers Holdings Inc.**

---

### POLICYHOLDER NOTICE

### TERRORISM RISK INSURANCE ACT

This Notice addresses requirements of the Terrorism Risk Insurance Act.

**Definitions**

"Act" means the Terrorism Risk Insurance Act and any amendments.

"Act of terrorism" means any act that is certified by the U.S. Secretary of the Treasury, in concurrence with the U.S. Secretary of State, and the Attorney General of the United States: to be an act of terrorism; to be an act that is violent or dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of United States missions or certain air carriers or vessels; to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured terrorism loss" means any loss resulting from an "act of terrorism" (including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at United States missions or to certain air carriers or vessels.

"Insurer deductible" means the amount established in the Act that must be paid by us before the U.S. federal government can pay its share of the compensation for insured terrorism losses.

**Notice of U.S. Federal Share of Losses and Premium Charge**

If an individual insurer's losses exceed its insurer deductible, the U.S. federal government will reimburse the insurer for 90% of losses paid in excess of the deductible, provided that aggregate industry losses from such an act exceed $50 million.  In 2007, the U.S. federal government's percentage share of losses paid above the insurer deductible will be 85% and will only be triggered if aggregate losses exceed $100 million.

The premium charge for insured terrorism losses covered under the Terrorism Risk Insurance Act is:

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.

LMIL00EO450011106



## Cap on Losses from Certified Acts of Terrorism

This endorsement, which is effective at 12:01AM on        May 16, 2007
Forms a part of policy number        078365-017
Issued to        Lehman Brothers Holdings Inc.
By  Liberty Mutual Insurance Company

The following is hereby added to the Policy and shall apply to all coverages:

With respect to any one or more "certified acts of terrorism", Liberty Mutual Insurance Company (hereinafter "we" or "us") will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1.    The act resulted in aggregate losses in excess of $5 million; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

**All other terms and conditions of this policy remain unchanged.**

Includes copyrighted material by Insurance Services Office, Inc. with its permission.

## Liberty Mutual Insurance Company

### Notice of Membership in Liberty Mutual Holding Company Inc.
### and
### Notice of Annual Meeting

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc. Liberty Mutual Insurance Company is a Massachusetts stock insurance company subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. Insurance is provided by Liberty Mutual Insurance Company. The named insured first named in the declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117, Attention: Corporate Secretary.

**<u>EXHIBIT C</u>**

**(Arch 2007-2008 Policy)**



# Arch
## Insurance Group

## ARCH INSURANCE COMPANY
(A Missouri Corporation)

Home Office Address:
3100 Broadway, Suite 511
Kansas City, MO 64111

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
Tel: (800) 817-3252

## EXCESS INSURANCE POLICY

**UNLESS OTHERWISE PROVIDED IN THE UNDERLYING POLICY(IES), THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS AND EXPENSES.**

### DECLARATIONS

Terms appearing in **bold** in these Declarations are defined in the Policy.

Policy No.: DOX0006634-02

Item 1. **Named Entity:**     Lehman Brothers Holdings Inc.
**Principal Address:**   1301 Avenue of the Americas
New York, NY 10019

Item 2. **Policy Period:**

From:   May 16, 2007 at 12:01 a.m. (local time at the address stated in Item 1.)

To:     May 16, 2008 at 12:01 a.m. (local time at the address stated in Item 1.)

Item 3. **Limit of Liability** (inclusive of defense costs and expenses):

a.   Each **Claim:**                                              $15,000,000

b.   Maximum aggregate Limit of Liability for
all **Claims** during the **Policy Period:**                      $15,000,000

Item 4. **Followed Policy:**

Issuing Carrier:   XL Specialty Insurance Company

Form:   DO 71 00 09 99 / Management Liability and Company Reimbursement

Policy Number:   ELU097792-07

Limit of Liability:  $20,000,000

Deductible or Self Insured Retention:   $10,000,000

Item 5.  Underlying and Excess Insurer Policy(ies):

| | Issuing Company | Policy No. | Limits of Liability | Attachment |
|---|---|---|---|---|
| **A.  Primary Policy:** | | | | |
| | XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | N/A |
| **B.  Underlying Excess Policy(ies)** | | | | |
| First Excess: | Federal Insurance Company | 7043-0876 | $15,000,000 | $20,000,000 |
| Second Excess: | Continental Casualty Company | 267996454 | $10,000,000 | $35,000,000 |
| Third Excess: | Lloyd's of London | QA016907 | $10,000,000 | $45,000,000 |
| Fourth Excess: | U.S. Specialty Insurance Company | 24-MGU-07-A14479 | $15,000,000 | $55,000,000 |
| Fifth Excess: | Zurich American Insurance Company | DOC7995104 09 | $15,000,000 | $70,000,000 |
| Sixth Excess: | ACE Bermuda Insurance Ltd. | LEHM-11742D | $25,000,000 | $85,000,000 |
| Seventh Excess: | St. Paul Mercury Insurance Company | 590CM2698 | $15,000,000 | $110,000,000 |
| Eighth Excess: | AXIS Reinsurance Company | RNN 713535/01/2007 | $15,000,000 | $125,000,000 |
| Ninth Excess: | Liberty Mutual Insurance Company | 078365-017 | $10,000,000 | $140,000,000 |
| | Arch Insurance Co. | DOX0006634-02 | $15,000,000 | $150,000,000 |

| | |
|---|---|
| Item 6.  Premium: | $261,040 |
| Premium Attributable to Terrorism Risk Insurance: | $0 |
| (Included In Policy Premium ☒) | |
| (In Addition To Policy Premium ☐) | |

Item 7.  Endorsements Applicable to Coverage at Inception of Policy:  (See attached Schedule of Forms and Endorsements.)

Item 8.  Notices to Excess Insurer:

Notice Of Claim(s) To Be Sent To:
Executive Assurance Claims
Arch Insurance Company
One Liberty Plaza, 53rd Floor
New York, NY 10006
Fax: (646) 746-8111

All Other Notices To Be Sent To:
Executive Assurance Underwriting
Arch Insurance Company
One Liberty Plaza, 53rd Floor
New York, NY 10006
Fax: (212) 651-6499

**NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY, THE APPLICATIONS FOR ALL **UNDERLYING INSURANCE**, ALL MATERIALS SUBMITTED THEREWITH AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE EXCESS INSURANCE POLICY.

The **Excess Insurer** has caused this Policy to be signed and attested to by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the **Excess Insurer**.

_Jennifer Belling_ _____      _7/24/09_ _____
Authorized Representative                                    Date

Secretary                               President

## SCHEDULE OF FORMS AND ENDORSEMENTS

INSURED: Lehman Brothers Holdings Inc.         TERM: May 16, 2007 to May 16, 2008
POLICY NUMBER: DOX0006634-02

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
|  | 00 DOX0112 00 04 03 | EXCESS INSURANCE POLICY |
| 1 | 00 ML0207 00 11 03 | MANUSCRIPT – AMENDED APPLICATION ENDORSEMENT (EXCESS) |
| 2 | 00 ML0207 00 11 03 | MANUSCRIPT – AMENDED PRIOR NOTICE EXCLUSION (EXCESS) |
| 3 | 00 DOX0047 00 01 03 | PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS) |
| 4 | 00 ML0207 33 03 04 | UNDERLYING LIMITS REDUCTION ENDORSEMENT |
| 5 | 00 ML0207 33 03 04 | MANUSCRIPT - ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT |
| 6 | 00 ML0207 33 03 04 | MANUSCRIPT - DIC PROVISION TO SIDE A CLAIMS ENDORSEMENT |
| 7 | 00 DOX0129 33 11 03 | NEW YORK AMENDATORY ENDORSEMENT |
|  | 00 MLT0027 00 02 06 | TERRORISM COVERAGE DISCLOSURE NOTICE |
|  | 00 DOX0186 00 10 06 | EXCESS POLICY ISSUANCE NOTICE |
|  | 00 MLT0038 00 01 07 | ADDENDUM TO TERRORISM DISCLOSURE NOTICE |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 ML0012 00 09 04
2-13000

## EXCESS INSURANCE POLICY

In consideration of the payment of the premium set forth in Item 6. of the Declarations of this Policy, and in reliance upon all statements made in the Application for this Policy, in the applications for all **Underlying Insurance** and in any other materials submitted to the Insurer designated in the Declarations of this Policy (hereinafter "the **Excess Insurer**"), which are incorporated into and constitute part of this Policy, and subject to the Limit of Liability set forth in Item 3. of the Declarations of this Policy, the **Excess Insurer** agrees with the **Insureds** as follows:

### SECTION I

INSURING AGREEMENT.

A.  The **Excess Insurer** shall provide the **Insureds** coverage for **Claims** in excess of the **Underlying Insurance**.

B.  The insurance coverage afforded by this Policy shall apply only after exhaustion of the **Underlying Limit** solely as a result of actual payment, in legal currency, under the **Underlying Insurance** in connection with **Claim(s)** and after the **Insureds** shall have paid the full amount of any applicable deductible or self insured retentions.

C.  Except with respect to premium and Limit of Liability and as provided in this Policy, the insurance coverage afforded by this Policy shall apply in conformance with the terms and conditions of the **Followed Policy** and in conformance with any terms and conditions further limiting or restricting coverage in this Policy or in any other **Underlying Insurance**. In no event shall this Policy grant broader coverage than that provided by the most restrictive policy included in the **Underlying Insurance**.

### SECTION II

LIMIT OF LIABILITY.

A.  The amount stated in Item 3.b. of the Declarations of this Policy shall be the maximum amount payable by the **Excess Insurer** on account of all **Claims** during the **Policy Period**.

B.  All payments by the **Excess Insurer** in connection with a **Claim** shall be part of and not in addition to the Limit of Liability set forth in Item 3. of the Declarations of this Policy, and shall reduce such Limit of Liability.

### SECTION III

DEFINITIONS.

All terms defined in this Policy appear in **bold**.

A.  **Claim(s)** shall have the same meaning in this Policy as given to it in the **Followed Policy**.

B.  **Insured(s)** means any person(s) or entity(ies) that are entitled to coverage under the **Followed Policy** at its inception.

C.  **Followed Policy**, **Named Entity**, **Primary Policy**, **Policy Period** and **Underlying Excess Policies**, are as identified in the Declarations of this Policy.

D.  **Underlying Insurance** means the **Primary Policy** and any **Underlying Excess Policies** listed in Item 5. of the Declarations of this Policy.

E.  **Underlying Limit** means an amount equal to the aggregate of all limits of liability for all **Underlying Insurance**, plus the deductible or self insured retention, if any, applicable under the **Primary Policy**.

## SECTION IV

## MAINTENANCE OF AND CHANGES TO UNDERLYING INSURANCE.

A.  As a condition to the coverage of this Policy, the **Insureds** shall maintain all **Underlying Insurance** in full force and effect with solvent insurers during the **Policy Period**, except for reduction or exhaustion of the **Underlying Limit** by payment in connection with **Claims**.

B.  In the event of depletion of the **Underlying Limit** by payment in connection with **Claim(s)**, this Policy shall, subject to the Limit of Liability stated in Item 3. of the Declarations of this Policy, continue to apply as excess insurance over the amount of insurance remaining under such **Underlying Insurance**.

C.  In the event of exhaustion of all of the **Underlying Limit** by payment in connection with **Claim(s)**, this Policy shall, subject to the Limit of Liability stated in Item 3. of the Declarations of this Policy, continue in force as primary insurance subject to the terms and conditions and the deductible or self insured retention under the **Primary Policy**, which deductible or self insured retention shall be applied to any subsequent **Claim** in the same manner as specified in the **Primary Policy**.

D.  This Policy shall drop down only in the event of reduction or exhaustion of all of the **Underlying Limit** by payment in connection with **Claim(s)**, and shall not drop down for any other reason including, but not limited to: (i) any exhaustion of a sublimit of any **Underlying Insurance**; or (ii) uncollectibility, in whole or in part, of any **Underlying Insurance** whether due to financial impairment or insolvency, liquidation, or for any other reason; or (iii) failure of the **Insured** to maintain any **Underlying Insurance**. The risk of any gaps in coverage or uncollectibility for any reason is expressly retained by the **Insured**, and is not assumed or insured by the **Excess Insurer**.

E.  As a condition precedent to coverage under this Policy, the **Insureds** shall give to the **Excess Insurer** written notice and the full particulars of: (i) cancellation of any **Underlying Insurance**; (ii) reduction and or exhaustion of the **Underlying Limit**; (iii) additional or return premium in connection with any **Underlying Insurance**; (iv) any changes to the **Underlying Insurance** by rewrite, endorsement or otherwise; and (v) the initiation of any receivership, liquidation, dissolution, rehabilitation or similar proceeding by any regulatory authority or any other person or entity against the issuing company of any **Underlying Insurance**. Such notice shall be sent to the **Excess Insurer** immediately upon receipt of such notice by the **Named Entity** or any **Insured**.

F.  In the event of any changes to any **Underlying Insurance** during the **Policy Period**, this Policy shall become subject to any such changes upon the effective date of the changes in the **Underlying Insurance** only if and to the extent that consent of the **Excess Insurer** is expressly endorsed hereon and provided that the **Insureds** shall pay any additional premium reasonably required by the **Excess Insurer** for such changes.

G.  This Policy shall terminate immediately upon the termination of any **Underlying Insurance**, whether by the **Insured** or by the issuer of the **Underlying Insurance**. Notice of cancellation or non-renewal of all or part of the **Underlying Insurance** duly given by any such insurer shall serve as notice of the cancellation or non-renewal of this Policy by the **Excess Insurer**. Return premium, if any, shall be as provided in Section VIII.C. below.

SECTION V

DUTIES IN THE EVENT OF A CLAIM.

A. With respect to any **Claim(s)** that, alone or combined, might result in payment pursuant to the insurance coverage afforded under this Policy, the **Insured** shall not admit liability and shall not agree to settle any **Claim** without the **Excess Insurer's** consent.

B. The **Insured** shall give notice under this Policy as provided in the **Followed Policy** and at the address shown in Item 8. of the Declarations of this Policy. Notice to the issuer of the **Followed Policy**, the **Primary Policy**, or any other **Underlying Insurer** shall not constitute notice to the **Excess Insurer**.

C. With respect to any **Claim(s)** that, alone or combined, might result in payment pursuant to the insurance coverage afforded under this Policy, no costs, charges or expenses for investigation or defense of any **Claim** shall be incurred, or settlements made, without the **Excess Insurer's** consent, such consent not to be unreasonably withheld.

D. If legal proceedings are begun, the **Insured** shall forward to the **Excess Insurer** a copy of each pleading or document received by the **Insured** or the **Insured's** representatives, together with copies of reports or investigations made by the **Insured** or the **Insured's** representatives with respect to such proceedings.

E. The **Excess Insurer** may, at its sole option, elect to effectively participate in the investigation, settlement or defense of any **Claim** against any **Insured** for matters covered by this Policy even if the **Underlying Limit** has not been exhausted. The **Excess Insurer** may, at its own expense, elect to appeal any judgment which may involve the insurance provided by this Policy.

SECTION VI

COOPERATION. The **Insured** shall give the **Excess Insurer** such information and cooperation as the **Excess Insurer** may reasonably require.

SECTION VII

SUBROGATION AND RECOVERIES. In the event of any payment under this Policy, the **Excess Insurer** shall be subrogated to all of the **Insureds'** rights of recovery against any person or organization, and the **Insured** shall execute and deliver all instruments and papers and do whatever else may be necessary to secure such rights.

Any amount recovered after payment under this Policy shall be apportioned in the inverse order of payment to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the same ratio as the recoveries.

SECTION VIII

CANCELLATION.

A. This Policy may be cancelled by the **Named Entity** at any time by written notice or by surrender of this Policy to the **Excess Insurer** at the address listed in Item 8. of the Declarations of this Policy, stating when thereafter the cancellation shall be effective.

B. Except as provided in Section IV.G. above, this Policy may be cancelled by or on behalf of the **Excess Insurer** by mailing or delivering to the **Named Entity** at the address shown in Item 1. of the Declarations of this Policy written notice stating when such cancellation shall be effective. Notice of cancellation will be provided at least ten (10) days before the effective date of cancellation if the **Excess Insurer** is cancelling this Policy for nonpayment of premium. Notice of cancellation will be

00 DOX0112 00 04 03
2-13000

provided at least sixty (60) days before the effective date of cancellation if this Policy is cancelled for any other reason. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall become the end of the **Policy Period**. Delivery of such notice shall be equivalent to mailing.

C. If this Policy is cancelled by the **Named Entity**, the **Excess Insurer** shall retain the customary short-rate portion of the premium. If this Policy is cancelled by the **Excess Insurer**, the **Excess Insurer** shall send the applicable portion of the pro-rata premium refund to the **Named Entity** at the address shown in Item 1. of the Declarations of this Policy. Premium adjustment may be made as soon as practicable after cancellation is effective and payment or tender of any unearned premium by the **Excess Insurer** shall not be a condition precedent to the effectiveness of cancellation.

## SECTION IX

ASSIGNMENT. This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Excess Insurer**.

## SECTION X

NAMED ENTITY AUTHORIZATION CLAUSE. By acceptance of this Policy, the **Insureds** and the **Named Entity** agree that the **Named Entity** will act on behalf of all of the **Insureds** as well as the **Named Entity** with respect to the giving and receiving of all notices, the payment of premiums, and the receiving of any return premium that may become due.

## SECTION XI

CAPTIONS. The headings or captions used in this Policy are for the purposes of reference only and shall not otherwise affect the meaning of this Policy.

---

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**APPLICATION ENDORSEMENT (EXCESS)**

In consideration of the premium charged, it is hereby understood and agreed that:

The term "Application" or "Renewal Application," as used in this Policy shall have the same meaning as the Followed Policy.

All other terms and conditions of this Policy remain unchanged.

> **NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Endorsement Number: 1

Policy Number: DOX0006634-02

Named Insured: Lehman Brothers Holding Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

00 ML0207 00 11 03

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDED PRIOR NOTICE EXCLUSION (EXCESS)**

In consideration of the premium charged, it is hereby understood and agreed that:

1. The **Excess Insurer** shall not be liable to make any payment in connection with a **Claim** alleging, arising out of, based upon or attributable to:

   a. any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any policy, for which this Policy is a renewal or replacement of; or

   b. any **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, constitute **Interrelated Wrongful Acts**.

2. **"Wrongful Act"** means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.

3. **"Interrelated Wrongful Acts"** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

All other terms and conditions of this Policy remain unchanged.

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Endorsement Number: 2

Policy Number: DOX0006634-02

Named Insured: Lehman Brothers Holding Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

00 ML0207 00 11 03                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS)**

In consideration of the premium charged, it is hereby understood and agreed that:

1. The Excess Insurer shall not be liable to make any payment in connection with a **Claim** arising out of, based upon or attributable to:

    a. any litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** occurring prior to, or pending as of, May 16, 2003;

    b. any subsequent litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** arising from or based on any matter alleged in such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**; or

    c. any **Wrongful Act** which gave rise to such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**, or any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described above, constitute **Interrelated Wrongful Acts**.

2. "**Wrongful Act**" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.

3. "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

All other terms and conditions of this Policy remain unchanged.

---

**NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

Endorsement Number:3

Policy Number: DOX0006634-02

Named Insured: Lehman Brothers Holding Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

00 DOX0047 00.01.03
2-13000

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNDERLYING LIMITS REDUCTION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that:

1.  Section I.B is amended to read in its entirety as follows:

    B.  The insurance coverage afforded by this Policy shall apply only after:

        1.  the insurer(s) of the **Underlying Insurance**, and/or

        2.  the **Insureds**, either (i) pursuant to a Limit Reduction Agreement (as defined below) with the insurer(s) of the **Underlying Insurance**, or (ii) by reason of the financial insolvency of the insurer(s) of the **Underlying Insurance**,

        shall have paid in legal currency loss covered under the **Underlying Insurance** equal to the full amount of the **Underlying Limit**.

2.  For purposes of this Policy, the **Underlying Limit** shall be deemed to be depleted or exhausted solely as the result of the insurer(s) of the **Underlying Insurance** and/or the **Insureds** paying loss covered under the **Underlying Insurance** as provided in Section I.B above.

3.  Notwithstanding anything in this Policy to the contrary, if with respect to any covered **Claim** the **Underlying Limit** is reduced or exhausted by payments by the **Insureds** as provided in Section I(B) above, then subject to all other terms, conditions and exclusions under this Policy, the unexhausted Limit of Liability under this Policy applicable to such **Claim** shall be reduced by at least the largest percentage savings of the **Underlying Insurance's** Limit(s) of Liability as provided in the Limit Reduction Agreements applicable to such **Claim**.

4.  For purposes of this Endorsement, a Limit Reduction Agreement is an agreement between the **Insureds** and one or more insurer(s) of the **Underlying Insurance** pursuant to which such insurer(s) agrees to pay a portion of its unexhausted Limit of Liability in exchange for a release from the **Insureds**, provided the sole basis for such agreement and release is the compromise of good faith coverage issues under the **Underlying Insurance** and such basis does not relate to coverage issues, terms, conditions or premiums under any other policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:   4

Policy Number:        DOX0006634-02

Named Insured:        Lehman Brothers Holding Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein.

Endorsement Effective Date: May 16, 2007

00 ML0207 33 03 04                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ODL Non-Accumulation of Limits and Recognition of Insured Participation Endorsement

In consideration of the premium charged, it is hereby understood and agreed that:

If a **Claim** made against any **Insured(s)** is covered under this Policy by virtue of the terms of Endorsement No. 27 of the **Followed Policy, including any revisions or amendments made to Endorsement No. 27,** and the **Claim** is also covered under any other valid and collectible director and officers liability policies issued by any member company of the **Excess Insurer** (hereinafter "ODL Claim"), then the total amount the **Excess Insurer** shall pay under all such policies for all covered loss on account of such **Claim(s)** shall not exceed the combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim, the **Underlying Limit** shall be deemed to be depleted or exhausted as a result of the issuers of the **Underlying Insurance** or any of the member companies of the issuers of the **Underlying Insurance,** and/or the **Insured(s),** paying loss covered under the **Underlying Insurance.**

This endorsement shall not increase the Limit of Liability set forth in Item 3 of the Declarations.

All other terms and conditions of this Policy remain unchanged.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Endorsement Number: 5

Policy Number:        DOX0008634-02

Named Insured:        Lehman Brothers Holdings Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

00 ML0207 33 03 04                                        Page 1 of 1

2-13080

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DIC PROVISION TO SIDE A CLAIMS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that:

Notwithstanding Section IV.D. (ii) of the Policy, this Policy shall drop down in the event of the inability of an Issuer of **Underlying Insurance** to indemnify due to financial impairment or insolvency but only to the extent that a **Claim** implicates Insuring Clause 1(A) Non-Indemnifiable Loss of the **Followed Policy**, in whole or in part.

All other terms and conditions of this Policy remain unchanged.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Endorsement Number:  6

Policy Number:        DOX0006634-02

Named Insured:        Lehman Brothers Holdings Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

QO ML0207 33 03 04

2-13000

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NEW YORK AMENDATORY ENDORSEMENT**

1.  **SECTION I, INSURING AGREEMENT.**, B. is deleted and replaced by the following:

    The insurance coverage afforded by this Policy shall apply only after exhaustion of the **Underlying Limit** solely as a result of actual payment under the **Underlying Insurance** in connection with **Claim(s)** and in excess of any applicable deductible or self insured retentions. However, the **Excess Insurer** agrees not to treat a delay in payment made under any **Underlying Insurance** as a failure to exhaust the **Underlying Insurance.**

2.  **SECTION IV, MAINTENANCE OF AND CHANGES TO UNDERLYING INSURANCE.**, G. is deleted in its entirety.

3.  **SECTION V, DUTIES IN THE EVENT OF A CLAIM,** A. is amended by the addition of the following:

    The **Insured** has the option to consent to any settlement recommended by the **Excess Insurer**. However, such consent shall not be unreasonably withheld.

4.  Notwithstanding anything to the contrary in the Declarations or the Policy's **SECTION V, DUTIES IN THE EVENT OF A CLAIM,** B., notice of any **Claim** may also be provided to any authorized agent of the **Excess Insurer** located within the state of New York.

5.  **SECTION VIII, CANCELLATION.**, B. is deleted and replaced by the following:

    B.  If this Policy has been in effect for sixty (60) days or less, and is not a renewal of a Policy previously issued by the **Excess Insurer**, this Policy may be cancelled by or on behalf of the **Excess Insurer** by mailing or delivering to the **Named Entity's** authorized agent or broker and to the **Named Entity** at the address shown in Item 1. of the Declarations written notice of cancellation stating the reason for cancellation at least twenty (20) days before the effective date of cancellation.

        After this Policy has been in effect for more than sixty (60) days or after the effective date of renewal, this Policy may only be cancelled by or on behalf of the **Excess Insurer** for one of the following reasons:

        1)  nonpayment of premium;

        2)  conviction of a crime arising out of acts increasing the hazard insured against;

        3)  discovery of fraud or material misrepresentation in obtaining the Policy or in the presentation of a **Claim** thereunder;

        4)  after issuance of this Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

        5)  a determination by the Superintendent that continuation of the present premium volume of the **Excess Insurer** would jeopardize the **Excess Insurer's** solvency or be hazardous to the interests of policyholders of the **Excess Insurer**, its creditors or the public;

6)    a determination by the Superintendent that the continuation of the Policy would violate, or would place the **Excess Insurer** in violation of New York law; or

7)    cancellation of one or more of the **Underlying Excess Policies** providing primary or intermediate coverage, where such cancellation is based upon any of reasons 1) through 6) above and such policies are not replaced without lapse.

Cancellation shall be effected by mailing or delivering to the **Named Entity's** authorized agent or broker and to the **Named Entity** at the address shown in Item 1. of the Declarations written notice of cancellation specifying the grounds for cancellation at least fifteen (15) days before the effective date of cancellation.

6.    **SECTION VIII** is amended by the addition of the following:

NONRENEWAL AND RENEWAL.    Should the **Excess Insurer** decide to nonrenew this Policy or conditions its renewal upon a change in the Limit of Liability, change in type of coverage, reduction of coverage, increased retention, the addition of any exclusion or an increase in premium in excess of 10%, then the **Excess Insurer** shall mail or deliver written notice of the refusal to renew or the conditional renewal to the **Named Entity** at the principal address shown in Item 1. of the Declarations and to the **Insureds'** authorized agent or broker, if applicable, at least sixty (60) days but not more than one hundred and twenty (120) days before the end of the of the **Policy Period**.    Such notice shall contain the specific reasons for the nonrenewal or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the **Excess Insurer** does not provide notice of nonrenewal or conditional renewal as provided in Section VIII, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered unless the **Named Entity**, during this 60-day period, has replaced the coverage or elects to cancel in which event such cancellation shall be on a pro rata premium basis; provided, however, that if the **Insured** elects to renew on the basis of the conditional renewal notice, then such terms, conditions and rates shall govern the Policy upon expiration of such sixty (60) day period unless such notice was provided at least thirty (30) days prior to the expiration date of the Policy, in which event the terms, conditions and rates set forth in the conditional renewal notice shall apply as of the renewal date.

If the **Excess Insurer** provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior **Policy Period's** rates, unless the **Named Entity**, during the additional policy period, has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

The **Excess Insurer** will not send the **Named Entity** notice of nonrenewal or conditional renewal if the **Named Entity**, its authorized agent or another insurer of the **Insureds** mail or deliver notice that the Policy has been replaced or is no longer desired.

If the **Named Entity** elects to accept the terms, conditions and rates of the conditional renewal notice pursuant to Section VIII, a new aggregate Limit of Liability shall become effective as of the inception date of renewal, subject to regulations promulgated by the Superintendent of Insurance.

7.    The Policy is amended by the addition of the following:

Bankruptcy or insolvency of the **Named Entity** or any **Insured** or the insolvency of the **Insured's** estate shall not relieve the **Excess Insurer** of its obligations nor deprive the **Excess Insurer** of its rights or defenses under this Policy.

If the **Excess Insurer** does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the **Insured** or its attorney and the **Excess Insurer**, then an action may be brought against the **Excess Insurer** under the terms of the Policy for the amount of judgment not exceeding the amount of the applicable Limit of Liability under the Policy, except during a stay or limited stay of execution against the **Insured** on such judgment.

Notwithstanding anything to the contrary in this Policy, the insurance coverage afforded by this Policy as respects operations in New York State shall conform to the requirements of the applicable New York State Insurance Laws and the applicable New York State Insurance Department Regulations. However, the Limit of Liability provided by this Policy shall be excess of the Limit of Liability of any **Underlying Insurance** or self-insurance as stated in the Declarations or any endorsements attached thereto.

All other terms and conditions of this Policy remain unchanged.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

Endorsement Number: 7

Policy Number: DOX0006634-02

Named Insured: Lehman Brothers Holdings Inc.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: May 16, 2007

00 DOX0129 33 11 03

# TERRORISM COVERAGE DISCLOSURE NOTICE

## TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

**The Terrorism Risk Insurance Act of 2002 and amendments thereto established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses that exceed five million dollars. The act of terrorism must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.**

In accordance with the Terrorism Risk Insurance Act of 2002 and amendments thereto, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage; or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if terrorism results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

**Your premium will include the additional premium for terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

## DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% in 2006 and 85% in 2007 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

## DISCLOSURE OF PREMIUM

Your premium for terrorism coverage is:
(This charge/amount is applied to obtain the final premium.)
**You may choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage. If you chose to accept this offer, this form does not have to be returned.**

REJECTION STATEMENT: I hereby decline to purchase coverage for certified acts of terrorism.
I understand that an exclusion of certain terrorism losses will be made part of this policy.

_____
Policyholder/Legal Representative/Applicant's
Signature

Lehman Brothers Holding Inc.
_____
Named Insured

_____
_____

_____
Print Name of Policyholder/Legal
Representative /Applicant

Arch Insurance Company
_____
Insurance Company

Date:                                              Policy Number: DOX0006634-02

**NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 MLT0027 00 02 06
2-13000

**EXCESS POLICY ISSUANCE NOTICE**

NOTICE:    This excess policy has been issued prior to our receipt of any
underlying insurance policy.  This excess policy has been
issued based upon the underlying insurance policy information
specified in the application for this policy or in the underlying
insurance binders furnished to us.  By issuing this excess
policy, we do not waive our rights to seek appropriate legal
remedies based upon any discrepancies between the underlying
insurance policy information furnished to us at the time that this
excess policy was bound and the actual policy provisions of any
underlying insurance furnished to us after the issuance of our
binder.

00 DOX0186 00 10 06                                                          Page 1 of 1

## ADDENDUM TO TERRORISM DISCLOSURE NOTICE

### Excluded lines of insurance

If your policy contains insurance for fidelity, burglary and theft, commercial auto, medical malpractice or professional liability, the **TERRORISM COVERAGE DISCLOSURE NOTICE** does not apply to such lines of insurance because they are excluded from the federal Terrorism Risk Insurance Act Program ("Program").

### Potential Terrorism Risk Insurance Act Program Change

For lines of insurance subject to the Program, the Program will terminate at the end of December 31, 2007 unless renewed, extended, or replaced by the federal government. Your policy will become effective (or will be renewed) while the Program is still in effect, but prior to a decision by the federal government on extension of the Program. Since the timetable for any further United States Government action is unknown at this time, we continue to offer the terrorism coverage described in the second paragraph of the **TERRORISM COVERAGE DISCLOSURE NOTICE** for the period of time from your policy inception until 12/31/07.

If the Program is renewed, extended or replaced during the term of your policy with the requirement that we make terrorism available, the treatment of terrorism under your policy will continue to be applicable subject to all the terms, definitions, exclusions, and conditions of your policy unless we are required to make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply under this policy.

If the Program terminates, or is renewed, extended or replaced during the term of your policy without a requirement that we make terrorism available, the treatment of terrorism under your policy may change and a conditional terrorism endorsement may be effective.

### Terrorism Premium Impact

If you are charged Terrorism Premium for the period through 12/31/2007 and the Program is renewed, extended or replaced during the term of your policy and we are required to continue to offer terrorism coverage, we will calculate the premium for such period of time from January 1, 2008 until the Expiration date of your policy and provide you with notice and charge additional premium which will be due as specified in the notice.

If you are charged Terrorism Premium for the period up to the Expiration of your policy and the Program terminates, or is renewed, extended or replaced with certain changes, during the term of your policy, then your acceptance of the offer of the terrorism coverage described in the second paragraph of the **TERRORISM COVERAGE DISCLOSURE NOTICE** will only be effective up to December 31, 2007 and the treatment of terrorism thereafter under your policy may change. Unless similar Terrorism Coverage continues to be provided for such period of time from January 1, 2008 until the Expiration date of your policy, any unearned premium for terrorism coverage no longer applicable under your policy, if paid by you, will be returned.

If the Program is renewed, extended or replaced during the term of your policy and we are required to continue to offer terrorism coverage but the level or terms of the Program change to the extent that our premium may not be appropriate, we may recalculate the premium and provide you with notice and charge additional premium which will be due as specified in the notice.

## EXHIBIT D

**(Allied World 2007-2008 Policy)**

 **ALLIED WORLD ASSURANCE COMPANY LTD**
27 Richmond Road, Pembroke HM 08, Bermuda
TEL - 441-278-5400 FAX - 441-296-3428

## ALL PRODUCTS EXCESS FOLLOW FORM POLICY

THIS POLICY DOES NOT PROVIDE ANY DUTY TO DEFEND. THE COVERAGE UNDER THIS POLICY IS GENERALLY LIMITED TO CLAIMS MADE AND REPORTED DURING THE POLICY PERIOD WITH DEFENSE EXPENSES INCLUDED IN THE LIMITS OF LIABILITY. THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY EXPENSES INCURRED FOR COVERED LEGAL DEFENSE.

THE PREMIUM PAYABLE TO THE INSURER DOES NOT INCLUDE ANY AMOUNT WITH RESPECT TO INSURANCE PREMIUM TAXES OR EXCISE TAXES. UNDER THE TERMS OF THE POLICY, IT IS THE OBLIGATION OF THE INSURED TO BE LIABLE FOR AND PAY ANY INSURANCE PREMIUM TAXES OR EXCISE TAXES EITHER ITSELF OR THROUGH ITS BROKER. ALLIED WORLD ASSURANCE COMPANY, LTD WILL BE INDEMNIFIED AND FULLY REIMBURSED BY THE INSURED FOR ANY PREMIUM TAXES (AND COSTS ASSOCIATED WITH COLLECTION, INCLUDING LEGAL COSTS) IN THE EVENT THE INSURED OR ITS BROKER FAILS TO PAY.

THIS POLICY SHALL FOLLOW ALL THE TERMS AND CONDITIONS OF EXCEPT AS HEREIN STATED. TERMS DEFINED IN THE PRIMARY POLICY ARE USED HEREIN WITH THE MEANING ASSIGNED TO THEM IN THE PRIMARY POLICY UNLESS OTHERWISE INDICATED.

**DECLARATIONS**                                    **POLICY NO.:**    C002007/005

**ITEM 1.**    NAMED INSURED:        Lehman Brothers Holdings Inc.

            ADDRESS:            130 Avenue of the Americas
                                    New York, NY 10019

**ITEM 2.**    POLICY PERIOD:        From:    16 May 2007        To:    16 May 2008
                                  (12:01 A.M. standard time at the address stated in Item 1.)

**ITEM 3.**    LIMIT OF LIABILITY:    USD 15,000,000
                                  aggregate for coverages combined (including Defense Costs)

            EXCESS OF TOTAL
            UNDERLYING LIMITS OF:    USD 165,000,000

**ITEM 4:**
**Primary Policy:**
Issued By:            XL Specialty Insurance Company
Policy Form:          DO 71 00 09 99
Policy Number:        ELU097792-07
Limit of Liability:   USD 20,000,000
Policy Period:        16 May 2007 to 16 May 2008



**ALLIED WORLD**
ASSURANCE COMPANY

| Insurer | Limits | Policy Period |
|---|---|---|
| **Excess Policies:** | | |
| Federal Insurance Company | USD 15M x 20M | 16 May 2007 to 16 May 2008 |
| Continental Casualty Company | USD 10M x 35M | 16 May 2007 to 16 May 2008 |
| Lloyds | USD 10M x 45M | 16 May 2007 to 16 May 2008 |
| U.S. Specialty Insurance Company | USD 15M x 55M | 16 May 2007 to 16 May 2008 |
| Zurich American Insurance Company | USD 15M x 70M | 16 May 2007 to 16 May 2008 |
| ACE Bermuda Insurance Ltd. | USD 25M x 85M | 16 May 2007 to 16 May 2008 |
| St. Paul Mercury Insurance Company | USD 15M x 110M | 16 May 2007 to 16 May 2008 |
| Axis Reinsurance Company | USD 15M x 125M | 16 May 2007 to 16 May 2008 |
| Liberty Mutual Insurance Company | USD 10M x 140M | 16 May 2007 to 16 May 2008 |
| Arch Insurance Company | USD 15M x 150M | 16 May 2007 to 16 May 2008 |

**ITEM 5.**   PENDING & PRIOR LITIGATION DATE:   16 May 2003

**ITEM 6.**   PREMIUM:   USD 256,760

**ITEM 7.**   A. DISCOVERY PERIOD PREMIUM:   150% of premium set forth in Item 6.

        B. DISCOVERY PERIOD:   12 Month(s).

**ITEM 8.**   ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

      **ALLIED WORLD ASSURANCE COMPANY, LTD**
      **ATTN:   CLAIMS DEPARTMENT**
      **27 RICHMOND ROAD**
      **PEMBROKE HM 08**
      **BERMUDA**

**ITEM 9.**   POLICY FORM:   ALL PRODUCTS EXCESS FOLLOW FORM POLICY
                                 (APEX 6-05)

      ENDORSEMENT(S):   Amend Follow Form Provision for Side 'A' Claims
                                 Non-Accumulation of ODL Limits & Recognition of
                                  Insured Participation Endorsement

      BROKER:   Marsh Global Broking (Bermuda) Ltd.
                  Craig Appin House
                  8 Wesley Street
                  Hamilton
                  Bermuda

The INSURER hereby causes this Policy to be signed on the Declarations page by a duly authorized
representative of the Insurer.

                                                        **Authorized Representative**



**ALLIED WORLD ASSURANCE COMPANY LTD**
27 Richmond Road, Pembroke HM 08, Bermuda
TEL - 441-278-5400  FAX - 441-296-3428

## ALL PRODUCTS EXCESS FOLLOW FORM POLICY

In consideration of premium paid and subject to the Declarations and Endorsements made a part hereof and the terms, conditions and limitations set forth herein and therein, Allied World Assurance Company, Ltd. (herein referred to as the "Insurer") agrees as follows:

**I.    INSURING CLAUSE**

The Insurer shall pay the Insured as defined in the Primary Policy (also referred to herein as the "Insured") for Loss by reason of exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations or the Insureds, subject to:

   A.    the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

   B.    the Limit of Liability as stated in Item 3 of the Declarations; and

   C.    the terms and conditions of, and the endorsements attached to, this Policy.

Notwithstanding the above, this Policy shall not provide coverage broader than that provided by any Underlying Policy listed in Item 4 of the Declarations, or any policy issued by any participating quota share insurer, unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

**II.    TERMS AND CONDITIONS**

   A    PUNITIVE DAMAGES COVERAGE

   This Policy shall cover punitive damages to the same extent punitive damages are covered under the Primary Policy; provided, however, if the Primary Policy coverage for punitive damages is solely contingent on the insurability of such damages under applicable law then this Policy shall provide coverage for punitive damages.

   B.    LOSS PROVISIONS

      1.    This Policy shall follow the notice of claim provisions of the Primary Policy, except as stated otherwise herein.

      2.    Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.

      3.    The Insured shall give the Insurer such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.



4.    The Insurer shall maintain full and complete claims control as respects its portion of any claims or losses arising under the Policy. The Insurer shall investigate, adjust, and settle its portion of such claims or losses. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as Loss under the terms of this Policy.

C.    REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this Policy, and the Insured agrees, that all applications, warranty statements, together with attachments and any other materials submitted for this Policy and any Underlying Policy(ies), shall be deemed attached to and made a part of this Policy.

D.    FOLLOWING FORM

1.    This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof. The Insured shall furnish to the Insurer copies of all proposed rewrites or changes by endorsement or otherwise to the Primary Policy prior to the effective date of such rewrites or changes. The Insured agrees that should any change to the Primary Policy be made by rewrite, endorsement or otherwise, this Policy shall not be changed without the prior written consent of the Insurer, which consent shall be at the sole discretion of the Insurer and endorsed hereon. It is further agreed, should any change of this Policy be approved, then the premium hereon may be adjusted accordingly.

2.    In the event of the depletion of the limits of liability of the Underlying Policy(ies) solely as a result of payment of losses thereunder, by the Underlying Insurers and/or the Insureds, this Policy shall, subject to the limit of liability set forth in Item 3 of the Declarations and to the other terms of this Policy, continue to apply for subsequent losses as excess insurance over the amount of insurance remaining under such Underlying Policy. In the event of the exhaustion of all of the limits of liability of such Underlying Policy(ies) solely as a result of payment of losses thereunder, by the Underlying Insurers and/or the Insureds, the remaining limits available under this Policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this Policy, continue for subsequent losses as primary insurance and any retention specified in the Underlying Policy shall be imposed under this Policy.

3.    The Insurer's obligations under this Policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down or make any payment for any reason, including but not limited to the receivership, insolvency, or inability or refusal to pay of any underlying insurer, the cancellation of the Underlying Policy(ies) or the existence of any State Amendatory endorsement or a sub-limit of liability in the Underlying Policy. In the event of the receivership, insolvency, or inability or refusal to pay of any underlying insurer, or the cancellation of the Underlying Policy, the Insured may pay any Losses otherwise payable under the Underlying Policy and such payments by the Insured shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of



coverage under this Policy. In the event a State Amendatory endorsement of a sub-limit of liability exists in the Underlying Policy, any payments of Loss that are subject to such an amendatory or sub-limit shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy.

E.    CANCELLATION OF UNDERLYING POLICY

The Insured shall give notice to the Insurer as soon as practicable of the cancellation of any Underlying Policy.

In the event any Underlying Policy shall be cancelled by the insurer thereon (other than for non-payment of premiums), this Policy shall continue in full force and effect for the remainder of the Policy Period and the Insurer shall be liable to the same extent that it would have been liable if such Underlying Policy had remained in effect.

F.    CANCELLATION CLAUSE

This Policy shall follow the cancellation terms of the Primary Policy except that in the event the Insurer cancels this Policy for non-payment of premium, this Policy shall be void as of the inception date of the Policy Period.

G.    ARBITRATION

Any and all disputes arising under or relating to this Policy, including its formation and validity, and whether between the Insurer and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.



The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render a decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability, nor shall the Insurer be impleaded by the Insured or their legal representatives. The Insurer and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in a jurisdiction or forum other than that set forth in this clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits). The Insured will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Insured shall be entitled to assert claims against the Insurer for coverage under this Policy including, without limitation, for amounts by which the Insured reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this clause; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.



H.    CHOICE OF LAW

This Policy shall be construed and enforced in accordance with the internal laws of the law applicable to the Primary Policy (with the exception of the procedural law required by paragraph G above, which shall be construed and enforced in accordance with the laws of Bermuda), except insofar as such laws may prohibit payment hereunder in respect of punitive damages; provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this Policy are to be construed in an evenhanded fashion between the Insured and the Insurer.

**IN WITNESS WHEREOF**, the Insurer has caused this Policy to be signed by its authorized officer and signed on the Declarations Page by a duly authorized representative.

_____
AUTHORIZED REPRESENTATIVE

ENDORSEMENT NO:       1

This endorsement, effective:    16 May 2007

Policy Number:         C002007/005

Issued to:           Lehman Brothers Holdings Inc.

By:                Allied World Assurance Company, Ltd.


### AMEND FOLLOW FORM PROVISION FOR SIDE 'A' CLAIMS


It is understood and agreed that paragraph D., FOLLOWING FORM, of Clause II., TERMS AND CONDITIONS, is amended by adding the following:


Notwithstanding any other provision in this Policy to the contrary and solely with respect to a Loss covered under Insuring Agreement (A) of the Primary Policy, this Policy shall drop down below its stated attachment point in the event any portion of the limits of liability of the Underlying Policy(ies) is uncollectible due to the financial impairment or insolvency of any Underlying Insurer.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Authorized Representative


Date of Issuance: 7/14/2006

**ENDORSEMENT NO:**    **2**

This endorsement, effective:    16 May 2007

Policy Number:    C002007/005

Issued to:    Lehman Brothers Holdings Inc.

By:    Allied World Assurance Company, Ltd.

## NON-ACCUMULATION OF ODL LIMITS &
## RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

It is hereby understood and agreed that solely as respects any ODL Claim that is covered by this Policy and also covered by any other policy issued by any member company of Allied World Assurance Company Holdings, Ltd. (hereinafter "Allied World Assurance Policy"), the Insurer's combined and maximum Limit of Liability under both such policies shall not exceed $25,000,000. Therefore, this Policy's Limit of Liability shall be reduced in an amount equal to any payments made under the Allied World Assurance Policy as respects an ODL Claim.

Further, the Insurer shall recognize the erosion of the limits of liability of the Underlying Policy(ies) in an amount equal to any payment made by Lehman Brothers Holdings, Inc. as respects an ODL Claim but only to the extent that such payment is excess of all payments made by the Underlying Insurers and their affiliates or subsidiaries as respects an ODL Claim.

This endorsement does not serve to increase the Limit of Liability of this Policy or the Allied World Assurance Policy.

The term "ODL Claim" means any claim that is covered under Endorsement No. 27, AMEND INSURED PERSON ENDORSEMENT, including any revisions or amendments made to endorsement #27, of the Primary Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Authorized Representative**

Date of Issuance: 7/31/2007

## <u>EXHIBIT E</u>

**(Endurance 2007-2008 Policy)**



**Endurance**
*Specialty Insurance Ltd.*
(Hereinafter referred to as the "Insurer")
Wellesley House, 90 Pitts Bay Road, Pembroke HM 08, Bermuda
Telephone: 441-278-0400
Facsimile: 441-296-1474
For Claim Matters Only: Facsimile: ECLAIMS@ENDURANCE.BM

BERMUDA FOLLOW FORM
EXCESS LIABILITY INSURANCE POLICY

NOTICE: PLEASE READ CAREFULLY

This Policy shall follow all the terms and conditions of the Followed Form except as stated, herein. Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

DECLARATIONS

POLICY NO.: EX05332003
Renewal of: EX05332002

**ITEM 1.**  NAMED INSURED:          Lehman Brothers Holdings Inc.
             ADDRESS:               1301 Avenue of Americas
                                    New York, NY 10019, USA

**ITEM 2.**  POLICY PERIOD:

             From:   May 16, 2007          To:   May 16, 2008
             (12:01 A.M. at the address stated in Item 1.)

**ITEM 3.**  LIMIT OF LIABILITY:                          US$ 20,000,000      Aggregate
             (Including Defense Costs)

             EXCESS OF TOTAL UNDERLYING LIMITS OF:        US$ 180,000,000     Aggregate

**ITEM 4.**  FOLLOWED FORM:

             Issued By:             XL Specialty Insurance Company
             Policy No.:            ELU097193-07
             Policy Period:         From: May 16, 2007          To:   May 16, 2008
             (12:01 A.M. standard time at the address stated in Item 1.)

             Limits of Liability:   US$ 20,000,000
             Coverage:              Directors & Officers Liability

1 of 2

Date of Issuance -        July 19, 2007
ESIL PL X5432 Declaration
Ed. (3/03)



**Endurance**
*Specialty Insurance Ltd.*
(hereinafter referred to as the "Insurer")
Wellesley House, 90 Pitts Bay Road, Pembroke HM 08, Bermuda
Telephone: 441-278-0400
Facsimile: 441-296-1474
For Claim Matters Only: Facsimile: ECLAIMS@ENDURANCE.BM

**BERMUDA FOLLOW FORM
EXCESS LIABILITY INSURANCE POLICY**

**NOTICE: PLEASE READ CAREFULLY**

DECLARATIONS (Continued)                          POLICY NO.: P00533200?3

ITEM 5.    PENDING & PRIOR LITIGATION DATE:        May 16, 2003
This policy is intended to follow the Pending & Prior Litigation Exclusion of the Followed Form, subject to the date indicated in Item 5. of the Declarations.

ITEM 6.    PREMIUM:                    US$ 325,225
           COMMISSION:                 5%

ITEM 7.    A.    DISCOVERY PERIOD PREMIUM:    150% of Premium indicated in Item 6.
           B.    DISCOVERY PERIOD:            1 Year

ITEM 8.    ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

           ENDURANCE SPECIALTY INSURANCE LTD.
           ATTN: CLAIMS DEPARTMENT
           THE WELLESLEY HOUSE, 90 PITTS BAY ROAD
           PEMBROKE HM 08, BERMUDA
           ECLAIMS@ENDURANCE.BM OR FACSIMILE: 441-296-5151

ITEM 9.    ENDORSEMENTS AT ISSUANCE        1    to    4.

ITEM 10.   REPRESENTATIVE OF THE INSUREDS        Marsh Global Markets (Bermuda) Ltd.
                                                  Craig Appin House
                                                  8 Wesley Street
                                                  Hamilton HM JX, Bermuda

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_F.K. Geehe_
_____
Authorized Representative

2 of 2

Date of Issuance -        July 19, 2007
ESH Po 23.02 Declaration
(04-1407)



Endurance Specialty Insurance Ltd.
(Hereinafter referred to as the "Insurer")
The Wellesley House, 90 Pitts Bay Road, Pembroke HM08, Bermuda
Telephone: 441-278-0400 Facsimile: 441-296-1474
For Claims Matters Only: ECLAIMS@ENDURANCE.BM

BERMUDA FOLLOW FORM
EXCESS LIABILITY INSURANCE POLICY

In consideration of premium paid and subject to the Declarations and endorsements made a part hereof and the terms, conditions and limitations set forth herein and therein, ENDURANCE SPECIALTY INSURANCE LTD. (herein referred to as the "Insurer") agrees as follows:

## I. INSURING CLAUSE

The Insurer shall pay the Insured as defined in the Followed Form (also referred to herein as the "Insured") for loss by reason of exhaustion by payments of all underlying limits of all underlying policies as are on file with the Insurer (henceforth "Underlying Policies"), by the underlying insurers issuing such Underlying Policies or the Insureds, subject to:

A.  the terms and conditions of the Followed Form as in effect the first day of the Policy Period;

B.  the Limit of Liability as stated in Item 3 of the Declarations; and

C.  the terms and conditions of, and the endorsements attached to, this policy;

Notwithstanding the above, this policy shall not provide coverage broader than that provided by all Underlying Policies, or any policy issued by any participating quota share insurer, unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

## II. TERMS AND CONDITIONS

### A. PUNITIVE DAMAGES COVERAGE

This policy shall cover punitive damages to the same extent punitive damages are covered under the Followed Form; provided, however, if the Followed Form coverage for punitive damages is solely contingent on the insurability of such damages under applicable law then this policy shall provide coverage for punitive damages.

### B. LOSS PROVISIONS

1.  This policy shall follow the notice of claim provisions of the Followed Form, except as stated otherwise herein.

2.  Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.

3.  The Insured shall give the Insurer such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.

4.  The Insurer shall maintain full and complete claims control as respects its portion of any claims or losses arising under the policy. The Insurer shall investigate, adjust, and settle its portion of such claims or losses. Only those settlements, stipulated judgments and defense costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as loss under the terms of this policy.

C.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this policy, and the Insured agrees, that all applications, warranty statements, together with attachments and any other materials submitted for this policy and any Underlying Policy shall be deemed attached to and made a part of this policy.

D.  FOLLOWING FORM

1.  This policy, except as stated herein, is subject to all terms, conditions, agreements and limitations of the Followed Form in all respects as if in effect on the date hereof. The Named Insured shall furnish to the Insurer copies of all proposed rewrites or changes by endorsement or otherwise to the Followed Form as soon as reasonably practicable. The Named Insured agrees that should any change to the Followed Form be made by rewrite, endorsement or otherwise, this policy shall not be changed without the written consent of the Insurer, which consent shall be at the sole discretion of the Insurer. Any subsequent issuance of an endorsement reflecting such change shall also be at the sole discretion of the Insurer. It is further agreed, should any change of this policy be approved, then the premium hereon may be adjusted accordingly.

2.  In the event of the depletion of the limits of liability from any of the Underlying Policies, solely as a result of payment of losses thereunder by either the underlying insurer issuing such underlying policy or the Insureds, this policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this policy, continue to apply for subsequent losses as excess insurance over the amount of insurance remaining under any such Underlying Policy. In the event of the exhaustion of all the limits of liability of all Underlying Policies, solely as a result of payment of losses thereunder by the underlying insurers issuing such Underlying Policies or the Insureds, the remaining limits available under this policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this policy, continue for subsequent losses as primary insurance and any retention specified in any of such Underlying Policies shall be imposed under this policy.

3.  The Insurer's obligations under this policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down or make any payment by reason of the receivership, insolvency, or inability or refusal to pay of any underlying insurer, the cancellation of any of the Underlying Policies or the existence of any state amendatory endorsement, any service of suit, clause or endorsement, or a sub-limit of liability in any of the Underlying Policies. In the event of the receivership, insolvency, or inability or refusal to pay of any underlying insurer, or the cancellation of any of the Underlying Policies, the Insured may pay any losses otherwise payable under such Underlying Policy and such payments by the Insured shall be deemed to apply toward exhaustion of the limits of liability of such Underlying Policy for purposes of coverage under this policy. In the event a state amendatory endorsement or a sub-limit of liability exists in any of the Underlying Policies, any payments of loss that are subject to such an amendatory or sub-limit shall be deemed to apply toward exhaustion of the limits of liability of Underlying Policy for purposes of coverage under this policy.

2

E.  CANCELLATION CLAUSE

This policy shall follow the cancellation terms of the Followed Form.

F.  DISCOVERY PERIOD

Subject to the Discovery Period Premium and Discovery Period indicated in Item 7 of the Declarations, the Insured shall be entitled to a Discovery Period pursuant to the terms and conditions of the Followed Form. The Discovery Period shall not be available unless the Insured has elected the Discovery Period in all Underlying Policies and has provided proof thereof to the Insurer. The Limit of Liability or remaining part thereof for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. The Discovery Period is not cancelable. The additional premium for the Discovery Period shall be fully earned at inception of the Discovery Period.

G.  ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall, fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render a decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability, nor shall the Insurer be impleaded by the Insured or their legal representatives. The Insurer and the Insured agree that, in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in a jurisdiction or forum other than that set forth in this clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits). The Insured will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this policy. The Insured shall be entitled to assert claims against the Insurer for coverage under this policy including, without limitation, for amounts by which the Insured reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this clause; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

H.    CHOICE OF LAW

This policy shall be construed and enforced in accordance with the internal laws of The State of New York (with the exception of the procedural law required by paragraph G above which shall be construed and enforced in accordance with the laws of Bermuda), except insofar as such laws may prohibit payment hereunder in respect of punitive damages; provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this policy are to be construed in an evenhanded fashion between the Insured and the Insurer.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Chairman, Chief Executive Officer and President.

*[signature]*

KENNETH J. LESTRANGE
CHAIRMAN, CHIEF EXECUTIVE OFFICER AND PRESIDENT

ESII, PL-XS-02 Policy ID: 03/07

Endorsement No:                1
This Endorsement, effective:   May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in Item 1. of the Declarations)
forms a part of Policy No:     P005332003
Issued To:                     Lehman Brothers Holdings Inc.
by:                            Endurance Specialty Insurance Ltd.


## PENDING & PRIOR LITIGATION ENDORSEMENT

It is agreed that Declarations Item 5, Pending and Prior Litigation Date, is replaced with the following:

The Insurer shall not be liable for loss in connection with any claim, circumstance or other matters made against any Insureds alleging, arising out of, based upon or attributable to any pending or prior litigation as of May 16, 2003 including but not limited to arbitration, administrative or regulatory proceedings or investigation(s).

All other terms and conditions of this policy remain unchanged.


F.K. Ceele

———————————————————
Authorized Representative


Date of Issuance –    19-Jul-07
237 PL-XS-02 (Ed. 3/07)
1_2003_237 p1

Endorsement No:          2
This endorsement, effective:   May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)
forms a part of Policy No:     P005332003
Issued to:                Lehman Brothers Holdings Inc.
by:                       Endurance Specialty Insurance Ltd.

## AMENDED ARBITRATION

It is hereby understood and agreed that Section G. ARBITRATION, is deleted in its entirety and is replaced with the following:

## G. ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render a decision on the matter or matters in controversy in writing and shall

Date of Issuance:        July 19, 2007

Manuscript 1110—Lehman Amended Arbitration

Endorsement No:            2
This endorsement, effective:    May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1 of the Declarations)
forms a part of Policy No:.    P005332003
Issued to:                Lehman Brothers Holdings Inc.
by:                    Endurance Specialty Insurance Ltd.

## AMENDED ARBITRATION, Continued

cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability, nor shall the Insurer be impleaded by the Insured or their legal representatives. The Insurer and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in a jurisdiction or forum other than that set forth in this clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits). The Insured will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this policy. The Insured shall be entitled to assert claims against the Insurer for coverage under this policy including, without limitation, for amounts by which the Insured reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this clause; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any

2 of 3

Date of Issuance:        July 19, 2007

Mancave 1110 –Lehman Amended Arbitration

Endorsement No:           2
This endorsement, effective:   May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)
forms a part of Policy No:     P005332003
Issued to:                Lehman Brothers Holdings Inc.,
by:                       Endurance Specialty Insurance Ltd.

### AMENDED ARBITRATION, Continued

defenses under this policy and any other defenses (other than jurisdictional defenses) as it
would have been entitled to raise in the action or proceeding with such insurers.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

3 of 3

Date of Issuance:        July 19, 2007
Manuscript HD eLehman Amended Arbitration

| | |
|---|---|
| Endorsement No: | 3. |
| This endorsement, effective: | May 16, 2007 |
| (at 12:01 A.M. prevailing time at the address of the Named Insured as shown in Item 1 of the Declarations) | |
| forms a part of Policy No: | P005332003 |
| Issued to: | Lehman Brother Holdings Inc. |
| by: | Endurance Specialty Insurance Ltd. |

## ENDORSEMENT

It is agreed that notwithstanding the provisions of Section I. Insuring Clause and Section II. Terms and Conditions, Subsection D. Followed Form, any reduction or exhaustion or erosion of the aggregate Limit of Liability of the Underlying Policies will apply, for purposes of attachment of this policy, to the extent such reduction, exhaustion or erosion results from any underlying insurer's inability to pay a covered claim, by reason of such underlying insurer's insolvency or Financial Impairment.

Financial Impairment means the status of an organization resulting from (a) the appointment by any state or federal official agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such organization; or (b) such organization becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any country.

All other terms and conditions of this policy remain unchanged.

F.K. Creolia

**Authorized Representative**

Date of Issuance:        July 19, 2007
Manuscript 1652 – Insolvency Drop Down Endt

Endorsement No:             4
This endorsement, effective:   May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)
forms a part of Policy No:     P005332003
Issued to:                  Lehman Brothers Holdings Inc.
by:                         Endurance Specialty Insurance Ltd.

## ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED
## PARTICIPATION ENDORSEMENT

It is agreed that the policy is amended to include the following:

If any Loss or Damages arising from a claim made against any Insured, as covered by Endorsement No. 38 (AMEND INSURED PERSON ENDORSEMENT) of the Followed Policy (hereinafter "ODL Claim"), including any revisions or amendments made to Endorsement No. 38, is covered under any other valid and collectable policy(ies) issued by any member company of Endurance Specialty Holdings Ltd, then the total amount the Insurer shall pay under all such policies for all covered Loss or Damages on account of such claim shall not exceed the aggregate Limit of Liability of $25,000,000. Nothing in this endorsement shall be construed as increasing the respective limits of liability beyond the amount stated in each of the respective policies. Further, all other terms and conditions of this policy remain unchanged.

Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by the insurers of the Underlying Insurance or any of the member companies of the insurers of the Underlying Insurance or the Insureds for Loss or Damages as being part of the Underlying Limit of Liability with respect to an ODL Claim.

F. K. Geehie

_____
Authorized Representative

Date of Issuance -        July 19, 2007
Manuscript 114 – ODL Non Accumulation of Limits Endt

## EXHIBIT F

### (*Enron* Bench Ruling)

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

In the Matter of:

ENRON CORP., ET AL.,

                                    Case No.

                                    01-16034

          Debtor.

------------------------------------------x


                    April 11, 2002
                    2:00 p.m.
                    United States Custom House
                    One Bowling Green
                    New York, New York

B E F O R E:

        HON. ARTHUR J. GONZALEZ, U.S. BANKRUPTCY JUDGE

Ruling in reference to:  One, the schedules; two,
exclusivity; and three, the D&O insurance issue

Reported by:
Linda D. Noto, RPR, CSR

2

ENRON CORP., ET AL.,

A p p e a r a n c e s:

      WEIL, GOTSHAL & MANGES, LLP
         Attorneys for Debtors
         767 Fifth Avenue
         New York, New York 10153-0119

    BY:   MARTIN J. BIENENSTOCK, ESQ.
           - and -
         RICHARD L. LEVINE, ESQ.
             - and -
         HANS S. HWANG, ESQ.

      WEIL, GOTSHAL & MANGES, LLP
         Attorneys for Debtors
         1501 K Street, N.W., Suite 100
         Washington, D.C. 20005
    BY:   DAVID R. BERZ, ESQ.

      WEIL, GOTSHAL & MANGES, LLP
         Attorneys for Debtors
         700 Louisiana, Suite 1600
         Houston, Texas 77002
    BY:   STEPHEN T. LODEN, ESQ.

  OFFICE OF THE ATTORNEY GENERAL - STATE OF TEXAS
         JOHN CORNYN
         Post Office Box 12548
         Austin, Texas 78711-2548
    BY:   JEFF BOYD, DEPUTY ATTORNEY
         GENERAL FOR LITIGATION
            - and -
         HAL F. MORRIS, ASSISTANT ATTORNEY
         GENERAL - SENIOR ATTORNEY
         BANKRUPTCY & COLLECTIONS DIVISION

3

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

THOMPSON & KNIGHT LLP
        Attorneys for Dunhill Group
        1700 Pacific Avenue, Suite 3300
        Dallas, Texas 75201
BY:    DAVID M. BENNETT, ESQ.


CARRINGTON COLEMAN SLOMAN & BLUMENTHAL L.L.P.
        Attorneys for Kenneth Lay
        200 Crescent Court, Suite 1500
        Dallas, Texas 75201-1848
BY:    RUSSELL F. NELMS, ESQ.


CADWALADER, WICKERSHAM & TAFT
        Attorneys for PG&E
        100 Maiden Lane
        New York, New York 10038
BY:    EDWARD A. SMITH, ESQ.

4

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

CLIFFORD CHANCE ROGERS & WELLS LLP
       Attorneys for PE&E, GTN
       200 Park Avenue
       New York, New York 10166-0153
BY:   WENDY ROSENTHAL, ESQ.


REED SMITH LLP
       Attorneys for The Wiser Oil Company
       375 Park Avenue, 17th Floor
       New York, New York 10152
BY:   DEBORAH A. REPEROWITZ, ESQ.


McCLAIN & SIEGEL, P.C.
       Attorneys for The Employment
       Related Issues Committee
       909 Fannin, Suite 4050
       Houston, Texas 77010

BY:   DAVID McCLAIN, ESQ.

5

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)

KRONISH LIEB WEINER & HELLMAN, LLP
        Attorneys for The Employee
        Related Issues Committee
        1114 Avenue of the Americas
        New York, New York 10036-7798

BY:    RONALD R. SUSSMAN, ESQ.

BARRY A. BROWN, ESQ.
        Attorney for Upstream Energy Services
        as agent for the gas producers
        The Arena Tower, Suite 1100
        7322 Southwest Freeway
        Houston, Texas 77074

ARTER & HADDEN, LLP
        Attorneys for AEGIS Insurance
        101 West Broad Street, Suite 2100
        Columbus, Ohio  43215-3422

BY:    DAN A. BAILEY, ESQ.

6

ENRON CORP., ET AL.,

A p p e a r a n c e s:   (Continued)


PHILLIPS NIZER, LLP
        Attorneys for AEGIS
        600 Old Country Road
        Garden City, New York  11530-2011
BY:   LOUIS A. SCARCELLA, ESQ.


TOGUT, SEGAL & SEGAL LLP
        Attorneys for Enron et al
        One Penn Plaza
        New York, New York  10119
BY:   FRANK A. OSWALD, ESQ.
            -and-
        SCOTT RATNER, ESQ.


NICKENS, LAWLESS & FLACK, L.L.P.
        Attorneys for Officers Regarding
        Insurance Carriers
        1000 Louisiana Street, Suite 5360
        Houston, Texas 77002


BY:   JACK C. NICKENS, ESQ.

7

ENRON CORP., ET AL.,

A p p e a r a n c e s:    (Continued)

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
        Attorneys for Appaloosa Management L.P.,
        Oaktree Capital Management, LLC,
        Angelo Gordon & Co., L.P.,
        Elliott Associates, L.P.
        1633 Broadway
        New York, New York  10019-6799

BY:    RICHARD F. CASHER, ESQ.

GOLUB & GOLUB, LLP
        Attorneys for Rio Piedras
        225 Broadway, Suite 1515
        New York, New York  10007

BY:    CHRISTOPHER P. BRUNDAGE, ESQ.
              - and -
        FRANK JAKLITSCH, ESQ.

MILBANK, TWEED, HADLEY & MCCLOY LLP
        Attorneys for Official Comm. of the
        Unsecured Creditors Committee
        1 Chase Manhattan Plaza
        New York, New York  10005-1413
BY:    LUC A. DESPINS, ESQ.
              - and -
        MATTHEW BARR, ESQ.

8

ENRON CORP., ET AL.,

A p p e a r a n c e s:  (Continued)

DALTON GOTTO SAMSON & KILGARD
        Attorneys for Tittle
        Suite 900, National Bank Plaza
        3101 N. Central Avenue
        Phoenix, Arizona  85012

BY:    GARY A. GOTTO, ESQ.


ENTWISTLE & CAPPUCCI LLP
        Attorneys for Florida State Board
        of Administration
        200 Park Avenue
        New York, New York  10171-1499
BY:    ANDREW J. ENTWISTLE, ESQ.


GIBBS & BRUNS, L.L.P.
        Attorneys for Enron Outside Directors
        1100 Louisiana, Suite 5300
        Houston, Texas  77002
BY:    ROBERT MADDEN, ESQ.

9

ENRON CORP., ET AL.,

A p p e a r a n c e s:  (Continued)

GENOVESE JOBLOVE & BATTISTA, P.A.
        Attorneys for Class Claimants
        in Houston Action
        Bank of America Tower
        100 Southeast Second Street, 36th Floor
        Miami, Florida  33131
BY:    CRAIG P. RIEDERS, ESQ.
            - and -
        JOHN GENOVESE, ESQ.


TONKON TORP LLP
        Attorneys for Ken L. Harrison
        1600 Pioneer Tower
        888 SW Fifth Avenue
        Portland, Oregon  97204


BY:    ZACHARY W.L. WRIGHT, ESQ.


SHEARMAN & STERLING
        Attorneys for Citigroup
        599 Lexington Avenue
        New York, New York  10022-6069


BY:    FREDRIC SOSNICK, ESQ.

10

ENRON CORP., ET AL.,

A p p e a r a n c e s:  (Continued)

DAVIS POLK & WARDWELL
        Attorneys for JP Morgan Chase Bank
        450 Lexington Avenue
        New York, New York  10017
BY:   MARSHALL SCOTT HUEBNER, ESQ.


ROPES & GRAY
        Attorneys for Present and Former
        Outside Directors
        One International Place
        Boston, Massachusetts  02110-2624

BY:   WILLIAM F. MCCARTHY, ESQ.

APPEARING TELEPHONICALLY
        NEBENZAHL KOHN DAVIS & LEFF LLP
            ALBERT DAVIES, ESQ.
            MERTON RANDEL DAVIES, ESQ.
        WOLLMUTH, MAHER & DEUTSCH LLP
            KIRSTIN PETERSON, ESQ.

        VORYS, SATER, SEYMOUR & PEASE
            JONATHAN AIREY, ESQ.
        WEIL, GOTSHAL & MANGES LLP
            MARGARITA COALE, ESQ.


        ROPES, GRAY
            GREG KADEN, ESQ.

1             ENRON CORP., ET AL.,

2             THE COURT:  Please be seated.

3             All right.  My recollection, if I

4    left something out I'll have to go back in and get

5    some more papers, but my recollection is that

6    there are three decisions I have to read into the

7    record:  One, the schedules; two, exclusivity; and

8    three, the D&O insurance issue.

9             Was there anything else that I

10   reserved on this morning?

11            All right.  I'll deal first with

12   exclusivity and then I'll read a decision with

13   respect to the D&O.  And when I deal with

14   exclusivity, I'll deal as well with the schedules.

15            Cause exists to extend the Debtors

16   exclusive periods as to all the Debtors.

17            With respect to ENA, the Court will

18   do the following:  One, extend ENA's exclusive

19   period to August 31st, 2002; two, sua sponte

20   expand the ENA Examiner's role to that of the

21   facilitator of a plan in the ENA case and direct

22   him to file a report regarding the status of those

23   efforts including a recommendation as to any

24   further extension of ENA's exclusivity; three,

25   such report shall be filed on or before July 26,

12

1           ENRON CORP., ET AL.,

2     2002.

3               With respect to the other Enron

4     Debtors, the exclusive period is extended as

5     requested by the Debtor and the Committee for the

6     six-month period sought.

7               With respect to the schedules, the

8     Court grants the Debtors' request for the

9     additional 60 days and the related relief sought.

10    And the Debtor is to serve an order with respect

11    to both of those issues, and obviously settle it

12    upon the ENA Examiner with respect to the

13    exclusivity issue.

14               Regarding the AEGIS motion and the

15    outside directors.  Concerning the motions filed

16    by AEGIS and the outside directors to lift the

17    automatic stay to allow AEGIS to pay amounts under

18    the AEGIS D&O Policy and the AEGIS Fiduciary and

19    Employee Benefit Liability Policy, first, as set

20    forth by the Movants, their motion to lift the

21    stay is the procedurally correct method to have

22    this matter presented to the Court.

23               Therefore, currently at issue is

24    the payment of the defense costs incurred by the

25    officers and directors.

212-867-8220     Doyle Reporting, Inc.   Doylerpt1@aol.com

2ace9960-508e-11d6-bfa1-0050da59f9be

13

1           ENRON CORP., ET AL.,

2           The D&O Policy provides for

3   coverage of the directors and officers,

4   indemnification coverage for the Debtor, and

5   entity coverage for the Debtor.

6           Pursuant to the terms of the D&O

7   Policy, the directors have a right to advancement

8   of defense costs under a priority of payments

9   endorsement.

10          The Debtors' entity coverage and

11   its indemnification coverage are expressly

12   subordinated to the rights of the directors and

13   officers under the AEGIS D&O policy.

14          As the Debtors' property rights are

15   defined by state law, it is that law that governs

16   the contractual obligation; thus, any directors

17   and officers currently due defense costs covered

18   by the policy must be paid from the proceeds of

19   the policy first.  The Debtors are then entitled

20   to have their own claims for defense costs paid.

21          The Debtors note the importance of

22   providing the officers and directors with this

23   type of coverage.  The Debtors assert that the

24   Debtor, itself, is entitled to currently-due

25   defense costs and will seek payment once the

14

1               ENRON CORP., ET AL.,

2      directors and officers receive payments for the

3      amounts currently due them.

4               With respect to the payment of

5      officers and directors' defense costs, to the

6      extent that any such payments would negatively

7      impact the Debtors' interest in the proceeds of

8      the D&O policy, that result is dictated by the

9      negotiated terms of the policy.

10              As certain officers and directors

11     may have present rights to payment of defense

12     costs, the fact that certain parties may in the

13     future assert claims and potentially become

14     entitled to payment from the insurance policies

15     does not preclude those who are currently entitled

16     to payment from receiving it.

17              In any case, the parties are bound

18     by the contractual provisions of the policy.  The

19     Debtors' interest in the policy is limited by its

20     contractual provisions including a priority

21     advancement and payment obligations contained in

22     those policies.  The Court cannot rewrite the

23     provisions of the contract.

24              The Objectants acknowledge the

25     terms of the contract.  Some of the Objectants

15

```
 1                    ENRON CORP., ET AL.,
 2    argue that because AEGIS and the outside directors
 3    are seeking to invoke this Court's jurisdiction
 4    concerning the lifting of the stay, that gives
 5    this Court leeway to set conditions upon which the
 6    stay would be lifted.  However, in this case, any
 7    such action would result in changing the terms of
 8    the contract.
 9                    The Court finds that, while
10    exercising jurisdiction concerning the issue of
11    lifting the stay, it should not exercise
12    jurisdiction over the terms of the contract and
13    will not interfere with those terms.
14                    Under the AEGIS Fiduciary Policy,
15    the coverage afforded the relevant Debtors is
16    co-extensive with the coverage afforded the
17    individual insureds.  However, that policy
18    provides a special $10 million fund earmarked for
19    defense costs.
20                    Payment from that fund will protect
21    the coverage that is available for payment of
22    settlements and judgements.  Moreover, payment
23    from the special funds requires written approval
24    from the Debtor.  These two aspects protect the
25    Debtors' interest.
```

16

1              ENRON CORP., ET AL.,

2                   In addition, the Debtors have

3      referenced the estates' interest in having

4      individual defendants vigorously defend themselves

5      in light of the potential for vicarious liability.

6                   The Debtors also have asserted that

7      the payment of the individual claimants' defense

8      cost from the special $10 million fund should not

9      limit the availability of proceeds that may be

10     required by the Debtor.

11                  Based upon the pleadings filed and

12     the record of this hearing, the Court finds that

13     because of the entity coverage, the stay is

14     implicated.  However, the Debtors' interest appear

15     minimal.

16                  Moreover, the Debtors' interest

17     should not be expanded by this Court.  They should

18     receive no greater protection than their contract

19     rights afford them.

20                  The Court finds cause to lift the

21     stay and grant the motion to permit the parties to

22     exercise their contractual rights under the D&O

23     Policy.

24                  In addition, the Court grants the

25     motion to lift the automatic stay to the extent

17

1              ENRON CORP., ET AL.,

2    that the individual insureds and the Debtors may

3    exercise their contractual rights against the

4    $10 million special fund portion of the Fiduciary

5    Policy.

6              The Movants shall settle an order

7    upon the appropriate parties.

8              We will begin again, I think, at

9    2:30.  Thank you.

10

11              (Time noted:  2:05 p.m.)

12                      oOo

13

14

15

16

17

18

19

20

21

22

23

24

25

18

# C E R T I F I C A T E

STATE OF NEW YORK      )

                           )SS.:

COUNTY OF NEW YORK     )

        I, LINDA D. NOTO, a Certified

Shorthand Reporter, Registered

Professional Reporter and Notary Public

within and for the State of New York, do

hereby certify:

        I reported the proceedings in the

within entitled matter, and that the

within transcript is a true record of

such proceedings.

        I further certify that I am not

related, by blood or marriage, to any of

the parties in this matter and that I am

in no way interested in the outcome of

this matter.

        IN WITNESS WHEREOF, I have hereunto

set my hand this 11th day of April, 2002.

_____

LINDA D. NOTO, C.S.R., R.P.R.

License Number XI 01887 - N.J.

License Number 001002 - N.Y.

212-867-8220     Doyle Reporting, Inc.    Doylerpt1@aol.com

2ace9860-508a-11d6-bfa1-0050da59f9be