Hearing Date and Time: TBD

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**SUPPLEMENTAL APPLICATION OF THE**
**DEBTORS PURSUANT TO SECTION 327(a) OF THE**
**BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES**
**OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EXPAND THE**
**RETENTION OF EPIQ AS SOLICITATION AND VOTING AGENT TO THE**
**DEBTORS, EFFECTIVE SEPTEMBER 1, 2011**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter

11 cases, as debtors in possession (together, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), submit this supplemental application to expand the scope of their existing

retention of Epiq Bankruptcy Solutions, LLC and Epiq Class Action & Claims Solutions, Inc.

(together, "Epiq") as its solicitation and voting agent ("Agent"), effective September 1, 2011,

and respectfully represent:

**Preliminary Statement**

1.          On August 11, 2011 the Office of the United States Trustee for Region 2 (the "U.S. Trustee") filed an objection to the Debtors' *Amended Motion (i) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors Joint Chapter 11 Plan* [ECF No. 18126] (the "Motion", and the related order, once entered, the "Solicitation Order"),[1] contesting, among other things, the Debtors' authority to retain Epiq as its Agent [ECF No. 19157] (the "U.S. Trustee's Objection").

2.          The U.S. Trustee's Objection asserts that the Debtors "must retain Epiq as their solicitation and voting agent . . . pursuant to Section 327(a) of the Bankruptcy Code, and Epiq must comply with the other Bankruptcy Code provisions, Bankruptcy Rules, Court rules and UST Fee Guidelines that pertain to the retention of professionals under Section 327(a) of the Bankruptcy Code." *U.S. Trustee's Objection* at ¶ 90.  The U.S. Trustee further argues that the Debtors must apply to the Court for this authorization by separate application.  *See U.S. Trustee's Objection* at 4.[2]  The request for the Debtors to retain Epiq to perform the solicitation services contemplated in the Motion pursuant to section 327(a) of the Bankruptcy Code is novel and the two recent orders cited by the U.S. Trustee appear to be the only situations where a claims agent providing solicitation and voting services is treated as a "professional" as such term is used in section 327 of the Bankruptcy Code.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Debtors have been unable to locate separate applications to retain and employ a claims agent pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 to provide solicitation and voting services in either *In re Mesa Air Group, Inc.*, No. 10-10018 (MG) or *General Growth Props.*, No. 09-11977 (ALG).

3.        Notwithstanding the Debtors' belief that they are already authorized to

retain Epiq to perform the services contemplated in the Motion and such services are not that of a

professional under section 327 of the Bankruptcy Code, in an effort to resolve objections and

avoid unnecessary delay to the confirmation process, the Debtors submit this supplemental

application.

## Background

4.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors'

chapter 11 cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

5.        On September 17, 2008, the U.S. Trustee appointed the statutory

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the

"Creditors' Committee").

6.        On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [ECF No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy

Code on March 11, 2010 [ECF No. 7531].

8.     On August 24, 2011, the Debtors filed a revised second amended joint

chapter 11 plan (the "Plan") and disclosure statement [ECF Nos. 19482 and 19484].

### Jurisdiction

9.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Epiq's Retention

10.     On September 16, 2008 the Debtors filed their *Application Pursuant to 28*

*U.S.C. §156(c) and Local Rule 5075-1(a) for Authorization to (i) Employ and Retain Epiq*

*Bankruptcy Solutions, LLC Claims and Noticing Agent for the Debtor, and (ii) Appoint Epiq*

*Bankruptcy Solutions, LLC as Agent for the Bankruptcy Court* (the "Retention Application")

[ECF No. 40] and the Court entered an order approving the Retention Application on September

16, 2008 (the "Retention Order") [ECF No. 50].  Pursuant to the Retention Order and the terms

and conditions of the Standard Bankruptcy Services Agreement dated September 15, 2008 (the

"Engagement Agreement"), a copy of which is attached as Exhibit A to the Retention

Application, Epiq has been serving as the Debtors' claims and noticing agent throughout the

course of these chapter 11 cases.

### Relief Requested

11.     The Debtors request authorization, pursuant to section 327(a) of the

Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to expand the

scope of Epiq's retention to provide solicitation services (the "Solicitation Services") in

connection with the Debtors' solicitation of votes for the Plan, as outlined in the Motion.

**Scope of Services to be Provided**

12.        Pursuant to the supplemental engagement agreement dated August 30,

2011, between the Debtors and Epiq (the "Supplemental Engagement Agreement"), annexed

hereto as Exhibit A, the Debtors propose that Epiq provide the voting and tabulation services

originally contemplated and agreed upon in the Engagement Agreement, and detailed in the

Motion, which include the following:[3]

- Consulting with the Debtors and its professionals regarding solicitation and balloting issues;

- Taking telephone calls from creditors and other parties who may have questions about the Plan and solicitation;

- Receiving and tabulate all Ballots and Master Ballots in accordance with the Solicitation Order;

- Preparing any related affidavits of service;

- Preparing the certification of Plan votes in accordance with the Solicitation Order;

- Attending related hearings, as may be requested by the Debtors or its counsel; and

- Preparing fee applications for Solicitation Services in accordance with the required procedures approved by the Court and as provided in paragraph 16 herein.

13.        Furthermore, the Debtors request that authorization to expand the scope of

Epiq's retention to provide the Solicitation Services be made effective as of September 1, 2011

to ensure that Epiq may prepare the solicitation packages and serve all required parties during the

---

[3] The following is a summary of the Solicitation Services detailed in the Supplemental Engagement Agreement. To the extent the following summary is inconsistent with the terms of the Supplemental Engagement Letter, the terms of the Supplemental Engagement Letter shall control.

time frame proposed in the Motion.  Additionally, the Debtors want to ensure that Epiq is

compensated for the Solicitation Services which are a benefit to the Debtors, their estates and

creditors.

### Compensation

14.     The Debtors propose to pay Epiq for the Solicitation Services at

discounted hourly rates, as set forth below and in the declaration of Jane Sullivan in support of

this supplemental application to expand the scope of Epiq's retention as solicitation and voting

agent for the Debtors, annexed hereto as Exhibit B (the "Sullivan Declaration"), and to reimburse

Epiq pursuant to its customary reimbursement policies, in accordance with sections 330(a) and

331 of the Bankruptcy Code.

15.     Epiq has informed the Debtors that the following hourly rates, as set forth

in the Engagement Agreement, shall apply:

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $34 - $51 per hour | $42.50 |
| Case Manager (Level 1) | $80 - $140 per hour | $110.00 |
| IT Programming Consultant | $100 - $161 per hour | $130.50 |
| Case Manager (Level 2) | $125 - $150 per hour | $137.50 |
| Senior Case Manager | $175 - $233 per hour | $204.00 |
| Senior Consultant | $250 per hour | $250.00 |

The Debtors believe that such compensation rates are reasonable and appropriate for services of

this nature and a case of this size and complexity.

16.     The Debtors understand that in connection with providing the Solicitation

Services Epiq will seek reimbursement of reasonable and necessary expenses.  All of Epiq's fees

and expenses incurred during these chapter 11 cases on or after September 1, 2011, solely with

respect to the Solicitation Services, will be subject to approval of the Court upon proper

application by Epiq in accordance with sections 330 of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, and the guidelines promulgated by the U.S. Trustee, as those procedures

may be modified or supplemented by order of this Court, including this Court's Fourth Amended

Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [ECF No. 15997], this Court's Order Amending the Fee Protocol [ECF No. 15998]

and General Order M-389.

## Basis for Relief

17.        Section 327(a) provides, in relevant part, that the Debtors "with the court's

approval, may employ. . . professional persons, that do not hold or represent an interest adverse

to the estate, and that are disinterested persons, to represent or assist" the debtor in fulfilling its

duties under the Bankruptcy Code.

18.        The Debtors' knowledge, information, and belief regarding the matters set

forth in this supplemental application are based on and made in reliance upon (a) the Affidavit of

Daniel C. McElhinney in Support of the Application to Employ and Retain Epiq as Claims and

Noticing Agent for the Debtor, dated September 16, 2008, that was filed with the Retention

Application (the "Original McElhinney Affidavit"), (b) the supplemental declaration of Daniel

C. McElhinney submitted on October 14, 2008 [ECF No. 946] (together with the Original

McElhinney Affidavit, the "McElhinney Declarations"), (c) the declaration of Jayne Menard of

Epiq Class Action & Claims Solutions, Inc. in support of this supplemental application and

attached hereto as Exhibit C (the "Menard Declaration"), and (d) the Sullivan Declaration

(together, with the McElhinney Declarations and the Menard Declaration, the "Epiq

Declarations"). The Debtors believe that Epiq does not hold or represent an interest adverse to

their estates and satisfies the disinterestedness requirement of section 327(a) of the Bankruptcy

Code.

**Epiq Holds No Interest Adverse**
**to the Debtors or the Debtors' Estates**

19.        To the best of the Debtors' knowledge, and as set forth in the Epiq

Declarations, the Debtors believe that (a) Epiq is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy

Code, and holds no interest adverse to the Debtors or their estates, as required by section 327(a)

of the Bankruptcy Code; and (b) other than the services currently being provided for the Debtors,

Epiq has no connection with the Debtors, their creditors, the U.S. Trustee or the persons

employed in her office, or other parties in interest in these chapter 11 cases.

20.        The Debtors have been informed that Epiq will conduct an ongoing review

of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or

relationships are discovered, Epiq will supplement its disclosure to the Court.

21.        Based on the foregoing and on the disclosures set forth in the Epiq

Declarations, the Debtors believe that Epiq does not hold or represent an interest adverse to the

Debtors' estates that would impair Epiq's ability to perform professional services for the

Debtors, objectively and in accordance with section 327(a) of the Bankruptcy Code, regarding

the Solicitation Services.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: August 30, 2011
     New York, New York

                                /s/ Alfredo R. Pérez
                                Alfredo R. Pérez
                                WEIL, GOTSHAL & MANGES LLP
                                700 Louisiana Street, Suite 1600
                                Houston, Texas  77002
                                Telephone: (713) 546-5000
                                Facsimile: (713) 224-9511

                                Attorneys for Debtors
                                and Debtors in Possession

## EXHIBIT A

**(Supplemental Engagement Agreement)**

P 646 282 2500 F 646 282 2501
752 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

## EPIQ BANKRUPTCY SOLUTIONS, LLC

### SUPPLEMENT AS OF SEPTEMBER 1, 2011 TO STANDARD BANKRUPTCY SERVICES AGREEMENT DATED SEPTEMBER 15, 2008

This is to supplement the agreement between Epiq Bankruptcy Solutions, LLC and Epiq Class Action & Claims Solutions, Inc. (collectively, "Epiq") and Lehman Brothers Holdings Inc. and its affiliated debtors (collectively, "LBHI") dated as of September 15, 2008 (the "2008 Agreement"). The 2008 Agreement is incorporated herein by reference, and all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2008 Agreement.

The 2008 Agreement is supplemented hereby (the "Supplement") to specifically incorporate the solicitation services outlined below (the "Solicitation Services") during the time period outlined below (the "Supplement Duration"). All charges for Solicitation Services will be as outlined in the 2008 Agreement.

### Solicitation Services

Epiq will provide Solicitation Services in connection with the LBHI solicitation of votes for its joint chapter 11 plan (the "Plan"), as outlined in the *Amended Motion (I) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* (the "Motion," and the related order, once entered, the "Order").

Epiq shall implement the solicitation procedures outlined in the Order, which will include, but is not limited to, the following:

- Consult with Debtors and its professionals regarding solicitation and balloting issues;
- Take telephone calls from creditors and other parties who may have questions about the Plan and solicitation;
- Receive and tabulate all Ballots and Master Ballots in accordance with the Order;
- Prepare any related affidavits of service;
- Prepare the certification of Plan votes in accordance with the Order;
- Attend related hearings, as may be requested by LBHI or its counsel;
- Prepare fee applications for Solicitation Services in accordance with the required procedures approved by the court.



**Limitation of Liability, Warranty and Indemnity**

Notwithstanding anything to the contrary in the 2008 Agreement and solely as it relates to the Solicitation Services: (a) Epiq may be held liable to the Customer with respect to special or consequential damages (including loss of anticipated profits) solely in the event such damages were incurred as a result of Epiq's gross negligence or willful misconduct; (b) Epiq may be held liable to the Customer for punitive damages pursuant to a final order issued by a Court of competent jurisdiction; and (c) Epiq affiliates are not entitled to the protections made applicable by Section 7.4 of the 2008 Agreement.

**Supplement Duration**

This Supplement covers Solicitation Services provided by Epiq, and shall become effective on the later of September 1, 2011 and the date Epiq's supplemental retention is approved by the Court, and shall be in force until the date the LBHI Plan is confirmed by the court or such other date as may be ordered by the court (the "Supplement Duration"). Prior to the effectiveness of the Supplement and after the termination of the Supplement, Epiq shall invoice LBHI for all work performed solely pursuant to the 2008 Agreement. During the Supplement Duration, Epiq shall invoice LBHI in accordance with the Supplement for any Solicitation Services, and shall invoice LBHI in accordance with the 2008 Agreement for all other services.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

_____

Name:  Daniel C. McElhinney
Title:   Managing Director, Corporate Restructuring

-and-

**EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC.**

_____

Name:  Jayne Menard
Title:   Senior Vice President & General Manager

**LEHMAN BROTHERS HOLDINGS INC. AND AFFILIATED DEBTORS**

By:_____

Name:
Title:

## **EXHIBIT B**

**(Sullivan Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| In re | : | Chapter 11 Case No. |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : |
| Debtors. | : | (Jointly Administered) |
| | : |

------------------------------------------------------------x

### DECLARATION OF JANE SULLIVAN IN
### SUPPORT OF THE SUPPLEMENTAL APPLICATION
### OF THE DEBTORS PURSUANT TO SECTION 327(a) OF
### THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL
### RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO
### EXPAND THE SCOPE OF THE RETENTION OF EPIQ AS SOLICITATION
### AND VOTING AGENT TO THE DEBTORS, EFFECTIVE SEPTEMBER 1, 2011

I, Jane Sullivan, hereby declare that the following is true to the best of my

knowledge, information and belief:

1.      I am an Executive Vice President of Epiq Bankruptcy Solutions, LLC

("Epiq") which provides chapter 11 claims management, noticing, case administration and

related services.  I submit this supplemental affidavit in support of the supplemental application

(the "Supplemental Application")[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in

the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), to

expand the retention of Epiq and its affiliate Epiq Class Action & Claims Solutions, Inc. as

solicitation and voting agent ("Agent") to the Debtors, effective September 1, 2011.

2.      On September 16, 2008, my colleague Daniel C. McElhinney submitted

an affidavit in support of the Retention Application (the "Original McElhinney Affidavit") [ECF

No. 50], which was later supplemented by a declaration submitted by Mr. McElhinney on

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Supplemental
Application.

October 14, 2008 [ECF No. 946] (together with the Original McElhinney Affidavit, the

"McElhinney Affidavits"). The McElhinney Affidavits are incorporated herein by reference and

together with the Retention Application fully describe the services Epiq was authorized to render

as the Debtors' Agent and its disinterestedness.

        3.      By the Supplemental Application, the Debtors request authorization to

expand the scope of Epiq's retention to provide solicitation services (the "Solicitation Services")

in connection with the Debtors' solicitation of votes for the Plan, as outlined in the Motion and

pursuant to the terms of the supplemental engagement agreement dated August 25, 2011 between

the Debtors and Epiq (the "Supplemental Engagement Agreement"), annexed to the

Supplemental Application as Exhibit A.

        4.      The Solicitation Services will include the following tasks:[2]

- Consulting with the Debtors and its professionals regarding solicitation and balloting issues;

- Taking telephone calls from creditors and other parties who may have questions about the Plan and solicitation;

- Receiving and tabulate all Ballots and Master Ballots in accordance with the Solicitation Order;

- Preparing any related affidavits of service;

- Preparing the certification of Plan votes in accordance with the Solicitation Order;

- Attending related hearings, as may be requested by the Debtors or its counsel; and

- Preparing fee applications for Solicitation Services in accordance with the required procedures approved by the Court and as set forth in paragraph 6 herein.

---

[2] The following is a summary of the Solicitation Services detailed in the Supplemental Engagement Agreement. To the extent the following summary is inconsistent with the terms of the Supplemental Engagement Letter conflict, the terms of the Supplemental Engagement Letter shall control.

5.  As compensation for the Solicitation Services, Epiq will charge the rates set

forth on the "Pricing Schedule" attached to the Engagement Agreement.  The hourly rates for the

applicable consultants providing the Solicitation Services are as follows:

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $34 - $51 per hour | $42.50 |
| Case Manager (Level 1) | $80 - $140 per hour | $110.00 |
| IT Programming Consultant | $100 - $161 per hour | $130.50 |
| Case Manager (Level 2) | $125 - $150 per hour | $137.50 |
| Senior Case Manager | $175 - $233 per hour | $204.00 |
| Senior Consultant | $250 per hour | $250.00 |

These rates are less than those Epiq charges in the ordinary course to chapter 11 debtors for

similar services.  Accordingly, I submit that the fees associated with the Solicitation Services are

reasonable and appropriate.  Epiq will not receive, nor intends to seek, a retainer for the

Solicitation Services as contemplated in the Engagement Agreement for services rendered as the

Debtors' claims and noticing agent.  Epiq intends to invoice the Debtors for reimbursement of

expenses incurred in providing the Solicitation Services in accordance with the rates set forth in

the Engagement Agreement.

6.  Solely with respect to Epiq's fees and expenses incurred during these chapter

11 cases on or after September 1, 2011 in connection with providing the Solicitation Services,

Epiq – together with affiliate Epiq Class Action & Claims Solutions, Inc – will apply to the

Court upon proper application for approval of such compensation and reimbursement in

accordance with sections 330 of title 11 of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and the guidelines promulgated by the U.S. Trustee, as those procedures may be

modified or supplemented by order of this Court, including this Court's Fourth Amended Order

Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

3

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 15997] and this Court's Order Approving the Amended Fee Protocol [ECF No. 15998] and General Order M-389.

      7.     Epiq will not share with any person or firm, other than Epiq's own partners, and employees, the compensation to be paid for the Solicitation Services or other Court authorized professional services, rendered in connection with these chapter 11 cases.

      8.     Epiq is well qualified to render the requested Solicitation Services for the Debtors. Epiq specializes in providing claims management, noticing, case administration and related services to chapter 11 debtors in connection with the administration, reconciliation and negotiation of claims and solicitation of votes to accept or reject chapter 11 plans. Epiq has provided identical or substantially similar services as those contemplated in the Supplemental Engagement Agreement to chapter 11 debtors in other cases, including, among others: *In re Steve & Barry's Manhattan LLC, et al.*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 10, 2008) [ECF No. 51]; *In re Lexington Precision Corp., et al.*, No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008) [ECF No. 24]; *In re PRC, et al.*, No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [ECF No. 35]; *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [ECF No. 31]; *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [ECF No. 102]; and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002) [ECF No. 1191]. Further, Epiq has provided services to the Debtors as its claims and noticing agent since the commencement of these chapter 11 cases and are thus uniquely situated to provide the Solicitation Services.

4

### "Connections" of Epiq

9.    Pursuant to the Retention Order, Epiq has performed ongoing reviews of its files to ensure that no conflicts or other disqualifying circumstances exist or arise with respect to its retention by the Debtors. As the Debtors' claims and noticing agent and uniquely familiar with the Debtors, its creditors or other parties in interest in these chapter 11 cases, based upon the McElhinney Affidavits and to the best of my knowledge, Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and (a) holds no interest adverse to the Debtors or their estates, as required by section 327(a) of the Bankruptcy Code; and (b) other than services currently being provided for the Debtors, Epiq has no connection with the Debtors, their creditors, the U.S. Trustee or the persons employed in her office, or other parties in interest in these chapter 11 cases.

10.    Epiq does not have or represents any interest adverse to the interests of the Debtors' estates. Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 case and Epiq will continue to decline any engagement or perform any service for any such entity or person. Epiq may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, provided that such services do not relate to the Debtors or its chapter 11 case. In addition, Epiq may utilize services provided by vendors that may be creditors or parties in interest of the Debtors.

11.    Epiq will comply with all of its obligations and responsibilities under the Protocol for the Employment of Claims Agents, dated May 8, 2006, issued by the Clerk of the Court.

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2011

_____

Name:  Jane Sullivan
Title:  Executive Vice President

# EXHIBIT C

**(Menard Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x
In re                                              :        Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :        08-13555 (JMP)
                                                   :
            Debtors.                               :        (Jointly Administered)
                                                   :
                                                   :
——————————————————————x

### DECLARATION OF JAYNE MENARD IN SUPPORT OF THE SUPPLEMENTAL APPLICATION OF THE DEBTORS PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EXPAND THE SCOPE OF THE RETENTION OF EPIQ AS SOLICITATION AND VOTING AGENT TO THE DEBTORS, EFFECTIVE SEPTEMBER 1, 2011

I, Jayne Menard, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am Senior Vice President and General Manager of Epiq Class Action & Claims Solutions, Inc. ("ECA") which provides noticing, call center and related services. I submit this supplemental affidavit in support of the supplemental application (the "Supplemental Application")[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), to expand the retention of Epiq Bankruptcy Solutions, LLC and ECA (together, "Epiq") as solicitation and voting agent ("Agent") to the Debtors, effective September 1, 2011.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Supplemental Application.

2.    By the Supplemental Application, the Debtors request authorization to expand the scope of Epiq's retention to provide solicitation services (the "Solicitation Services") in connection with the Debtors' solicitation of votes for the Plan, as outlined in the Motion and pursuant to the terms of the supplemental engagement agreement dated August 25, 2011 between the Debtors and Epiq (the "Supplemental Engagement Agreement"), annexed to the Supplemental Application as Exhibit A.

3.    The Solicitation Services will include the following tasks:[2]

- Consulting with the Debtors and its professionals regarding solicitation and balloting issues;

- Taking telephone calls from creditors and other parties who may have questions about the Plan and solicitation;

- Receiving and tabulate all Ballots and Master Ballots in accordance with the Solicitation Order;

- Preparing any related affidavits of service;

- Preparing the certification of Plan votes in accordance with the Solicitation Order;

- Attending related hearings, as may be requested by the Debtors or its counsel; and

- Preparing fee applications for Solicitation Services in accordance with the required procedures approved by the Court and as set forth in paragraph 6 herein.

4.    It is anticipated that the services to be provided by ECA will be limited to operating a call center to field and respond to creditor calls relating to the Plan solicitation. In connection with the operation of the call center, ECA would also anticipate consulting with the Debtors and its professionals regarding the Plan and solicitation.

---

[2] The following is a summary of the Solicitation Services detailed in the Supplemental Engagement Agreement. To the extent the following summary is inconsistent with the terms of the Supplemental Engagement Letter conflict, the terms of the Supplemental Engagement Letter shall control.

5.      ECA will charge the same rates as set forth in the Declaration of Jane
Sullivan in Support of the Supplemental Application, annexed to the Supplemental Application
as Exhibit C.  ECA will not receive, nor intends to seek, a retainer for the Solicitation Services.
ECA intends to invoice the Debtors for reimbursement of expenses incurred in providing the
Solicitation Services in accordance with the rates set forth in the Engagement Agreement.

6.      Solely with respect to ECA's fees and expenses incurred during these
chapter 11 cases on or after September 1, 2011 in connection with providing the Solicitation
Services, ECA – together with Epiq Bankruptcy Solutions, LLC – will apply to the Court upon
proper application for approval of such compensation and reimbursement in accordance with
sections 330 of title 11 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the
guidelines promulgated by the U.S. Trustee, as those procedures may be modified or
supplemented by order of this Court, including this Court's Fourth Amended Order Pursuant to
Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing
Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals
[ECF No. 15997] and this Court's Order Approving the Amended Fee Protocol [ECF No. 15998]
and General Order M-389.

7.      ECA will not share with any person or firm, other than Epiq's own
partners and employees, the compensation to be paid for the Solicitation Services or other Court
authorized professional services, rendered in connection with these chapter 11 cases.

8.      ECA has performed an initial conflict review with respect to the Debtors
and certain of their major creditors.  Based on this review, and to the best of my knowledge,
ECA is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy
Code, as modified by section 1107(b) of the Bankruptcy Code and: (a) holds no interest adverse

3

to the Debtors or their estates, as required by section 327(a) of the Bankruptcy Code; and (b) other than services currently being provided for the Debtors, ECA has no connection with the Debtors, their creditors, the U.S. Trustee or the persons employed in her office, or other parties in interest in these chapter 11 cases. ECA will conduct ongoing reviews of its files to ensure that no conflicts or other disqualifying circumstances exist or arise with respect to its retention by the Debtors and will supplement this declaration as appropriate based on that ongoing review.

        9.     ECA does not have or represent any interest adverse to the interests of the Debtors' estates. ECA has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases and ECA will continue to decline any engagement or perform any service for any such entity or person. ECA may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, provided that such services do not relate to the Debtors or this chapter 11 case. In addition, ECA may utilize services provided by vendors that may be creditors or parties in interest of the Debtors.

[This space is intentionally left blank]

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2011

Name:  Jayne Menard
Title:  Senior Vice President and General Manager

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                 :

In re                              :       Chapter 11 Case No.
                                   :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :       **08-13555 (JMP)**
                                   :

                 Debtors.        :       **(Jointly Administered)**
                                   :

------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 327(a)
### OF THE BANKRUPTCY CODE AND RULE 2014 OF THE
### FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING
### THE EXPANSION OF THE RETENTION OF EPIQ AS SOLICITATION
### AND VOTING AGENT TO THE DEBTORS, EFFECTIVE SEPTEMBER 1, 2011

Upon consideration of the supplemental application, dated August 30, 2011 (the "Supplemental Application"),[1] of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors-in-possession (collectively, the "Debtors"), pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to expand the scope of the Debtors' retention of Epiq Bankruptcy Solutions, LLC and Epiq Class Action & Claims Solutions, Inc. (together, "Epiq") as its Agent, effective September 1, 2011; and upon the declaration of Jane Sullivan in support of the Supplemental Application and annexed thereto as Exhibit B, and the declaration of Jayne Menard of Epiq Class Action & Claims Solutions, Inc. in support of this Supplemental Application and annexed thereto as Exhibit C; and the Court being satisfied, based on the representations made in the Supplemental Application and the Epiq Declarations, that Epiq represents no interest adverse to the Debtors or the Debtors' estates, under section 327 of the Bankruptcy Code as modified by

---

[1]  Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the Application.

section 1107(b); and the Court having jurisdiction to consider the Supplemental Application and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Court having found and determined that the relief sought in the Supplemental Application is

in the best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Supplemental Application establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Supplemental Application is approved as set forth herein; and

it is further

ORDERED that, pursuant to section 327(a) of the Bankruptcy Code, the Debtors

are hereby authorized to expand the scope of the retention of Epiq as Agent to the Debtors, to

include the Solicitation Services, effective September 1, 2011, which include the following:

- Consulting with the Debtors and its professionals regarding solicitation and balloting issues;

- Taking telephone calls from creditors and other parties who may have questions about the Plan and solicitation;

- Receiving and tabulate all Ballots and Master Ballots in accordance with the Solicitation Order;

- Preparing any related affidavits of service;

- Preparing the certification of Plan votes in accordance with the Solicitation Order;

- Attending related hearings, as may be requested by the Debtors or its counsel; and

2

- Preparing fee applications for Solicitation Services in accordance with the required procedures approved by the Court and set forth herein.

Epiq will provide the Solicitation Services in accordance with the terms and conditions of the Supplemental Engagement Agreement and this Order; and it is further

ORDERED that, notwithstanding anything to the contrary in the Supplemental Application, Supplemental Engagement Agreement or the Engagement Agreement that is incorporated within the Supplemental Engagement Agreement, Epiq shall apply for compensation and reimbursement of expenses, solely with respect to the Solicitation Services, in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or may be fixed by order of this Court, including but not limited to the Court's Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No. 4165], and the Court's Order Amending the Fee Protocol [ECF No. 3651] and General Order M-389; and it is further

ORDERED that Epiq must provide notice within ten business days to the Debtors, the U.S. Trustee and any official committee prior to any increases in any of Epiq's rates for any individual retained by Epiq, and such notice must be filed with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code, provided, however, that this provision is only applicable to the Solicitation Services authorized by this Order; and it is further

3

ORDERED that the rights of the US Trustee are expressly reserved with respect to the indemnification provisions contained in the Original Engagement Agreement and incorporated by the Supplemental Engagement Agreement, and any claim for indemnification that Epiq may make shall be upon separate application to the Court on not less than ten days notice to the US Trustee and any official committee appointed in these cases.

ORDERED that to the extent this Order is inconsistent with the Supplemental Application, the Supplemental Engagement Agreement or the Original Engagement Agreement, this Order shall govern; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated:  September [ ], 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE