MEISTER SEELIG & FEIN LLP
140 East 45th Street, 19th Floor
New York, NY 10017
Phone: (212) 655-3500
Facsimile: (212) 655-3535
Stephen B. Meister, Esq.
Christopher J. Major, Esq.

**Hearing Date:  September 14, 2011, 2:00 p.m.**
**Objection Deadline: September 7, 2011, 4:00 p.m.**

and

RICHARD AND RICHARD, P.A.
825 Brickell Bay Drive
Tower III, Suite 1748
Miami, FL  33131
Telephone: (305) 374-6688
Facsimile: (305) 374-0384
Dennis Richard, Esq.
Michael R. Tolley, Esq.

*Attorneys for Plaintiffs*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al., | 08-13555 (JMP) |
| Debtor, | (Jointly Administered) |
| TURNBERRY/CENTRA SUB, LLC, TURNBERRY/ CENTRA OFFICE SUB, LLC, TURNBERRY RETAIL HOLDING, L.P., JACQUELYN SOFFER, and JEFFREY SOFFER, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 09-01062 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC. and LEHMAN BROTHERS BANK, FSB, | |
| Defendants. | |

4947-002  # 107

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY COURT

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to Section 362(d) of the Bankruptcy Code, Plaintiffs Turnberry/Centra Sub, LLC, Turnberry/Centra Office Sub, LLC, Turnberry Retail Holding, L.P., Jacquelyn Soffer, and Jeffrey Soffer (collectively "Turnberry"), move for relief from the automatic stay to litigate all issues in their dispute in one action in Nevada and for this Court to abstain and defer to the Nevada court on the liquidation, adjudication, and allowance of Turnberry's monetary claims against Lehman Brothers Holdings Inc. and Lehman Brothers Bank, FSB (together as "Lehman") including setoff, but reserve jurisdiction to provide for the payment of Turnberry's claim in accordance with the outcome of the Nevada litigation and pursuant to the terms of Lehman's plan of reorganization once it is confirmed.

### Jurisdiction

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.     The statutory predicate for the relief requested herein is Section 362(d) of the United States Bankruptcy Code.

### Background

3.     On February 27, 2009, Turnberry filed this adversary proceeding against Lehman asserting claims arising out of Lehman's failure to fund a $625 million loan for Turnberry's Town Square project, located in Las Vegas, Nevada.  Lehman answered Turnberry's complaint on March 30, 2009, and asserted counterclaims against Jacquelyn and Jeffrey Soffer to collect on a $95 million promissory note.  Lehman made the $95 million loan as an interim advance under the promised $625 million Town Square loan, which Lehman ultimately failed to fund.  As

partial security for the interim advance loan, Lehman received a security interest in a portion of the Town Square project.

4.      Concerned with the impact that Nevada's "one-action rule" could have on Lehman's ability to foreclose on its collateral, Lehman later amended its counterclaims, converting all of its direct claims for breach of the note and the other loan documents to claims for declaratory judgment.  Thus, rather than suing for breach of the promissory note, Lehman was instead suing for a declaration that the promissory note had been breached.  Turnberry moved to dismiss Lehman's amended counterclaims on the grounds that Lehman's declaratory judgment claims were improper under the Federal Declaratory Judgment Act because they did not seek prospective relief, but instead required the adjudication of conduct that had already allegedly occurred.

5.      On June 15, 2011, the Court heard Turnberry's motion to dismiss Lehman's amended counterclaims.  At the hearing the Court instructed the parties to try to reach an agreement that would resolve the procedural issues created by Nevada's one-action rule.  Since that hearing, Lehman has initiated a non-judicial foreclosure proceeding in Nevada, which all parties agree is the only forum in which Lehman can do so.  Turnberry's defenses to that foreclosure will require a Nevada court to resolve the same factual issues raised in Turnberry's complaint in this action.  Thus, as things currently stand, the same issues will be litigated in two different courts at the same time.

6.      To avoid such a waste of judicial resources, and the potential for conflicting rulings, Turnberry seeks relief from the automatic stay so that it can assert its monetary claims against Lehman in Nevada, including setoff, together with its defense to the foreclosure, all of which arise out of the same contested facts.  Moreover, Turnberry respectfully requests that the

Court defer to the Nevada court on the adjudication and allowance of Turnberry's monetary claims against Lehman, including setoff. This will allow all of the claims and defenses relating to this dispute – arising from the same facts – to be litigated in one action in Nevada.

### Applicable Authority

7.    Section 362(d) of the Bankruptcy Code provides, in relevant part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

> (1) for cause . . . .

8.    While "cause" is not defined in section 362(d), the Second Circuit has listed several factors that may be relevant in determining whether there is cause to lift the stay to permit litigation in another forum. *See*, *e.g.*, *In re Sonnax Industries*, *Inc.*, 907 F.2d 1280, 1286 (2d. Cir. 1990). The factors relevant to this proceeding are (1) "whether relief [from the automatic stay] would result in a partial or complete resolution of the issues," and (2) "the interests of judicial economy and the expeditious and economical resolution of litigation." *Id*. at 1286.

9.    With respect to Turnberry's request for this Court to abstain from exercising jurisdiction over this action, federal courts have repeatedly relied on the Supreme Court's reasoning in *Colorado River Water Conservation Dist. v. U.S.*, 96 S. Ct. 1236 (1976), which authorizes a federal court to decline jurisdiction in certain situations in favor of a parallel or duplicative state court proceeding if it is in the "interests of wise judicial administration and gives regard to conservation of judicial resources and comprehensive disposition of litigation." *See Dore v. Wormley*, 690 F. Supp. 2d 176, 191 (S.D.N.Y. 2010) (granting *Colorado River*

abstention motion and dismissing claim).[1]    Courts within the Second Circuit have summarized the *Colorado River* abstention doctrine as setting forth a six-factor test in which no single factor is determinative and "the weight to be given to any one factor may vary greatly from case to case." *See Goldentree Asset Mgmt., L.P. v. The Longaberger Co.*, 448 F. Supp. 2d 589 (S.D.N.Y. 2006) (dismissing complaint based on *Colorado River* abstention doctrine and summarizing Second Circuit precedent regarding same).    The six factors under *Colorado River* are: (1) assumption by either court of jurisdiction over the *res* or property; (2) the geographical inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained in the alternate forum and the relative progress of the federal action; (5) whether state or federal law governs the action; and (6) whether the rights of the party seeking a federal forum will be adequately protected in the state court. *Id.* at 594.

## Grounds for Requested Relief

10.    Here, each of the factors referenced above weigh in favor of lifting the stay.  First, all of Turnberry's defenses to the Nevada foreclosure raise the same factual issues as Turnberry's affirmative claims in this adversary proceeding.  Thus, granting Turnberry relief from the stay so that it can assert its claims against Lehman and raise its defenses to the foreclosure in one action will result in a complete resolution of the issues in this dispute.  Second, without relief from the stay, the Nevada court and this Court will both be required to decide the same issues.  Not only will this create the potential for conflicting rulings, but it will also be a significant waste of judicial resources.  Accordingly, granting Turnberry relief from the stay will serve the interests of judicial economy and the expeditious and economical resolution of litigation.

---

[1] *See also Monumental Enters., Inc. v. Loab, Inc.*, 2008 U.S. Dist. Lexis 95325 (E.D.N.Y. 2008) (granting *Colorado River* abstention motion and dismissing complaint); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 2010 U.S. Dist. Lexis 104636 (N.D.N.Y. 2010) (finding abstention to be warranted under both *Colorado River* and *Wilton* abstention doctrines).

11.     Applying the six-factor *Colorado River* test to the circumstances at hand, it is clear that abstention in favor of litigation in the Nevada state court is justified. The first factor weighs heavily in favor of abstention because the Nevada court is the only court that can adjudicate the foreclosure since it has jurisdiction over the real property in Las Vegas that constitutes Lehman's collateral.

12.     For the same reason, the second factor (the geographical inconvenience of the federal forum) and the third factor (avoidance of piecemeal litigation) both warrant abstention. As Lehman has conceded before this Court, the parties' dispute cannot be litigated in one action in New York, but it can be efficiently litigated in one action in Nevada. The same facts that comprise Turnberry's affirmative claims in this action will be litigated in Nevada to defend against Lehman's claims for foreclosure, the appointment of a receiver, and for a deficiency money judgment in the Nevada court. Thus, the third factor dealing with the avoidance of piecemeal litigation unquestionably weighs in favor of abstention. This factor evaluates whether the two competing actions constitute "virtually identical suits" thereby wasting judicial resources and inviting duplicative effort by the courts. *See Goldentree Asset Mgmt.*, 448 F. Supp. 2d at 594 (granting abstention under *Colorado River* doctrine). This Court has held this factor to be one of the most important factors in the *Colorado River* analysis. *See Dore*, 690 F. Supp. 2d at 191 (dismissing action on *Colorado River* abstention grounds). Notably, the case law within the Second Circuit is well-settled that if the two actions have substantially the same issues and involve primarily the same parties –"avoidance of piecemeal litigation is best served by leaving these suits in the state court." *Goldentree Asset Management*, 448 F. Supp. 2d at 594. Therefore, abstention is warranted in order to avoid piecemeal litigation in the two different courts.

13.    The fourth *Colorado River* factor inquiring into the order of jurisdiction and the relative progress of the federal action is a wash.  The case law is well-settled in the Second Circuit that the filing order of the two parallel suits is not dispositive.  "In assessing the order in which jurisdiction was obtained, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Goldentree Asset Mgmt.*, 448 F. Supp. 2d at 594 (granting abstention motion because the state court action was significantly more advanced in the pleadings stage and discovery than the federal action which experienced no "significant activity" and had not even commenced discovery); *see also Dore,* 690 F. Supp. 2d at 192 (granting abstention motion because state court action significantly more advanced than the federal action); *Bank of America v. Sharim, Inc.*, 2010 U.S. Dist. Lexis 131624, at *13 (S.D.N.Y. 2010) (granting abstention motion because there was no progress in the federal action).  Here, this action has not progressed despite having been filed in 2009.  No discovery has commenced and the pleadings have not even been finalized (Lehman has been unable to confirm whether it will pursue counterclaims in this action out of concern over Nevada's "one action rule," and those concerns would disappear if this Court abstained and deferred to the Nevada state court for adjudication of all of the parties' claims in a single action).  Indeed, Lehman's counsel recently characterized this action as being in its "infancy."  *See* Transcript of June 15, 2011 Hearing, copy annexed hereto as Exhibit A.

14.    Finally, the fifth factor, analyzing whether state or federal law governs the dispute, and the sixth factor, inquiring into whether the rights of the party seeking the federal forum will be adequately protected in the state court, both weigh heavily in favor of abstention. Courts in the Second Circuit have routinely granted abstention motions when the actions in question were governed exclusively by state law.  *See Goldentree Asset Mgmt.*, 448 F. Supp. 2d

at 594 (granting abstention motion since only state law claims were implicated in the litigation).[2]

The parties' respective claims are exclusively based on state law relating to Lehman's breach of a loan commitment and Lehman's allegations that Turnberry breached promissory notes and guaranties. Thus, the claims are exclusively state law claims. Accordingly, all of the *Colorado River* factors favor abstention.

### Notice

15.     In accordance with Federal Rule of Bankruptcy Procedure 4001, Turnberry is filing and serving this Motion, together with the Notice of Motion and Proposed Order, via the ECF system in the main Lehman bankruptcy case and the above-captioned adversary proceeding to ensure that all parties receiving ECF notification in the Lehman bankruptcy cases will receive notice of this Motion. In addition, Turnberry is providing those parties entitled to notice under Federal Rule of Bankruptcy Procedure 4001 with hard copies via Federal Express overnight delivery. Turnberry respectfully submits that such notice is adequate.

16.     Turnberry further requests relief from the Case Management Order [Docket No. 9635] to the extent that Order requires twenty-one (21) days notice for motions from relief from the automatic stay. During the status conference on August 17, 2011, the Court requested that the parties report back to the Court on September 14, 2011 regarding the various procedural and venue issues in this adversary proceeding. Since Turnberry to date has been unable to obtain Lehman's assent to adjudicate the parties' dispute in one action in Nevada, Turnberry prepared this Motion for filing. However, absent the relief from the Case Management Order requested herein, the next regularly scheduled hearing date in these cases is October 19, 2011, and waiting

---

[2]*See also Caisse Nationale De Credit Agricole v. Bank of Tokyo-Mitsubishi Trust Co.*, 1997 U.S. Dist. Lexis 8730, at *15 (S.D.N.Y. 1997) (granting abstention because federal action was based on diversity jurisdiction and implicated exclusively state law); *Sharim, Inc.*, 2010 U.S. Dist. Lexis 131624, at *13 (same).

until that date would further delay the resolution of the procedural issues in this case (including the concerns over Nevada's "one-action rule" raised by Lehman).  Moreover, the Motion raises a discrete issue concerning the venue of the parties' dispute in the adversary proceeding, such that broader and longer notice is not necessary as would be for a motion, for example, to exercise rights over collateral.  Therefore, Turnberry respectfully requests that the Court only require fourteen (14) days notice for this Motion.

### Waiver of Local Rule 9013-1(b)

17.    Turnberry respectfully requests that the Bankruptcy Court waive the requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that any motion or other application for relief be accompanied by a memorandum of law.  This Motion does not raise any novel issues of law, and Turnberry respectfully submits that the contents of this Motion provide a sufficient basis for the requested relief.  Should the Court determine that additional briefing is necessary, Turnberry will promptly submit such additional briefing.  In addition, Turnberry reserves the right to file a reply brief in response to any opposition to this Motion.

### Conclusion

WHEREFORE, for all of the reasons set forth above, Turnberry respectfully requests that the Court grant Turnberry relief from the automatic stay so that Turnberry can assert its monetary claims against Lehman, including setoff,  in the Nevada foreclosure, allowing all of the issues in this dispute to be resolved in one action. Turnberry further requests that the Court defer to the Nevada court on the liquidation, adjudication and allowance of those claims, but reserve jurisdiction to provide for the payment of Turnberry's claims in accordance with the outcome of the Nevada litigation and pursuant to the terms of Lehman's plan once it is confirmed.

Respectfully submitted, this 30th day of August, 2011,

| RICHARD AND RICHARD, P.A. | MEISTER, SEELIG & FEIN, LLP |
|---|---|
| Dennis Richard, Esq.<br>Michael Tolley, Esq.<br>825 Brickell Bay Drive<br>Tower III, Suite 1748<br>Miami, Florida 33131<br>Telephone: (305) 374-6688<br>Facsimile: (305) 374-0384<br>E-mail:  dennis@richardandrichard.com<br>*Attorneys for Plaintiffs* | By: /s/ Christopher J. Major<br>    Stephen B. Meister, Esq.<br>    Christopher J. Major, Esq.<br>    Two Grand Central Tower<br>    140 E. 45th Street, 19th Floor<br>    New York, New York 10017<br>    Telephone: (212) 655-3500<br>    Facsimile:  (212) 655-3535<br>    E-mail:  sbm@msf-law.com<br>            cjm@msf-law.com<br>*Attorneys for Plaintiffs* |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 30th day of August, 2011, the above and foregoing pleading was filed electronically using the Court's CM/ECF system, which will cause a notice of the electronic filing to be served on all CM/ECF participants and by serving all parties on the Master Service List via email.  In addition, I served true hard copies of the foregoing by FedEx overnight delivery, addressed to the following:

Hon. James M. Peck
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green, Rm 601
New York, NY 10004

Shai Y. Waisman, Esq.
Richard P. Krasnow, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Edward McCarthy, Esq.
Elisa R. Lemmer, Esq.
Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Ste 1200
Miami, FL 33131

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Milbank, Tweed, Hadley &
McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

Office of the U.S. Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004
Attn: Andy Valez-Rivera, Esq.
Paul Schwartzberg, Esq.
Brian Masumoto, Esq.
Linda Riffkin, Esq.

By: /s/ Christopher J. Major
    Christopher J. Major, Esq.

# EXHIBIT A

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6                                            Case No.

7    LEHMAN BROTHERS HOLDINGS INC., ET AL.,   08-13555-jmp

8           Debtors.

9

10   - - - - - - - - - - - - - - - - - - -x

11   In the Matter of:

12                                           Case No.

13   LEHMAN BROTHERS INC.,                   08-01420-jmp SIPA

14          Debtor.

15

16   - - - - - - - - - - - - - - - - - - -x

17   LEHMAN BROTHERS SPECIAL FINANCING INC.

18               Plaintiff,                  Adv. No.

19          v.                               09-01032-jmp

20

21   BALLYROCK ABS CDO 2007-I LIMITED

22               Defendant.

23

24   - - - - - - - - - - - - - - - - - - -x

25

Page 2

```
1    - - - - - - - - - - - - - - - - - - -x

2    KATHLEEN ARNOLD AND TIMOTHY COTTEN,

3                    Plaintiffs,              Adv. No.

4            v.                               11-01540-jmp

5

6    LEHMAN BROTHERS HOLDINGS INC., ET AL.,

7                    Defendants.

8

9    - - - - - - - - - - - - - - - - - - -x

10   TURNBERRY, ET AL.,

11                   Plaintiffs,              Adv. No.

12           v.                               09-01062-jmp

13

14   LEHMAN BROTHERS HOLDINGS INC., ET AL.,

15                   Defendants.

16

17   - - - - - - - - - - - - - - - - - - -x

18   LEHMAN BROTHERS HOLDINGS INC., ET AL.,

19                   Plaintiffs,              Adv. No.

20           v.                               10-02821

21   J. SOFFER, FONTAINBLEAU RESORTS, LLC.,

22                   Defendant

23   - - - - - - - - - - - - - - - - - - -x

24

25
```

Page 3

1    - - - - - - - - - - - - - - - - - - - -x

2    LEHMAN BROTHERS HOLDINGS INC., ET AL.,

3                    Plaintiffs,              Adv. No.

4            v.                               10-02823

5    J. SOFFER, FONTAINBLEAU RESORTS, LLC.,

6                    Defendant

7    - - - - - - - - - - - - - - - - - - - -x

8

9

10

11            U.S. Bankruptcy Court

12            One Bowling Green

13            New York, New York

14            June 15, 2011

15            10:04 AM

16

17

18

19

20

21

22    B E F O R E:

23    HON. JAMES M. PECK

24    U.S. BANKRUPTCY JUDGE

25

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 100

1          MS. LEMMER:  There are three related matters;

2    Turnberry, Lehman Brothers v. J. Soffer and another one, Lehman

3    v. J. Soffer.  I'll take appearances.

4          MS. LEMMER:  Good afternoon, Your Honor.  Elisa Lemmer

5    from Weil Gotshal & Manges on behalf of the debtors.  Just as a

6    housekeeping matter, a pro hac vice motion was filed by one of

7    my colleagues on my behalf yesterday afternoon.  I checked the

8    docket this morning, an order entering the pro hac vice motion

9    has not been entered as of when I checked it.  So if you would

10   orally --

11          THE COURT:  We'll consider you admitted.

12          MS. LEMMER:  Thank you, Your Honor.  The motions that

13   are before the Court are not our motions.  They're motions

14   filed by Turnberry and Ms. Soffer.  I am happy to present but

15   because they're the movants, I'm happy to cede the podium to

16   them and respond accordingly, as well.

17          THE COURT:  Well let me first take appearances.

18          MR. RICHARD:  My name, Your Honor, is Dennis Richard

19   the law firm is Richard & Richard.  I am here as the attorney

20   for Mr. Jeffrey Soffer.

21          MR. BLUMENTHAL:  Good afternoon, Your Honor.  Elliot

22   Blumenthal from Buchannan Ingersoll & Rooney, here on behalf of

23   the Turnberry entities, Jacqueline Soffer, as well as Jeffrey

24   Soffer.

25          MR. ROMINE:  Good afternoon, Your Honor. Mario A.

Page 101

1    Romine.  I'm here on behalf of Fontainebleau Resorts, LLC.

2            THE COURT:  I couldn't hear you.

3            MR. ROMINE:  I'm here on behalf of Fontainebleau

4    Resorts, LLC.

5            THE COURT:  Okay.

6            MR. COHEN:  Good afternoon, Your Honor.  David Cohen,

7    Milbank Tweed Hadley & McCloy here on behalf of the official

8    committee of unsecured creditors.

9            MR. RICHARD:  One clarification, Your Honor.  I also

10   represent Jackie Soffer and Mr. Romine also put in pro hac vice

11   papers yesterday that had not yet been acted on.

12           THE COURT:  Okay.  Everybody who has pending pro hac

13   vice papers will be deemed admitted for the purposes of today's

14   argument.  And since I've never denied such an application, I'm

15   very confident that you will be actually admitted.

16           Now what's the order of play here?

17           MR. RICHARD:  Of the three related cases, the three

18   motions, we've reached agreement on two of them which encases

19   2821 and 2823 in which we've agreed to withdraw those motions

20   and file answers to those complaints on August 1.  July 31 is a

21   Sunday, so August 1.

22           THE COURT:  Okay.  I wish somebody had told me that

23   before I prepared so thoroughly for both of them.

24           MR. RICHARD:  We only reached the agreement just

25   before the hearing, Your Honor.  We apologize.  And we decided

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 102

1    that the area was gray on those motions at this stage of the

2    proceeding, having analyzed all cases and the lawyers that

3    actually drew those motions are no longer present in 2821 and

4    2823.

5            So we are prepared to argue the motion on the cased

6    called the Town Square case, as well call it, with the Town

7    Square entities and Jeffrey Soffer.  That's case number 13555.

8    That's the motion to dismiss the four declaratory judgment

9    actions.

10           THE COURT:  Okay.  That's the one that involves the

11   Nevada single action rule?

12           MR. RICHARD:  Yes, sir.

13           THE COURT:  All right.

14           MR. RICHARD:  Yes.  Shall I begin?

15           THE COURT:  Sure.

16           MR. RICHARD:  The motion involves a single ground for

17   dismissal of Counts One through Four and two rounds for

18   dismissal of Count Four.  The single ground that is addressed

19   to all counts, each of which is a declaratory judgment count,

20   alleging a breach of one kind or another that occurred on or

21   before March of 2009; all four counts allege that.

22           The fourth, the breach, I'm using the word loosely

23   because it's alleging a violation of the automatic stay, Counts

24   One, Two and Three, allege a breach of -- Counts Two and Three,

25   a breach of loan agreements, Count Three an unjust enrichment

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 103

1    prior to March of 2009.  All of the events in these DJ actions

2    occurred on or before March of 2009.

3         The first ground for dismissal of the DJ actions is

4    that the federal DJ Act is not available to adjudicate past

5    breaches or past events.  Lehman does not -- the debtor does

6    not dispute this.  Instead, the debtor argues and they actually

7    have a sentence that sums up their whole argument on page 4 of

8    their opposition which I quote, "is the uncertainty that

9    surrounds Lehman's right to foreclose on the collateral while

10   at the same time asserting the counterclaims required to defend

11   this action.

12        And the core of the uncertainty arises out of Nevada's

13   One Action Rule and their argument is that under the One Action

14   Rule, they must foreclose on their collateral before they

15   pursue claims to a monetary judgment.  And if they don't do

16   that, if they pursue claims to a monetary judgment, they can

17   forfeit their right to foreclose on the collateral.

18        THE COURT:  Is there anybody in the courtroom who is

19   an expert on the Nevada One Action Rule?  Is there a Nevada

20   lawyer in the room?

21        MR. RICHARD:  There is not to my knowledge, Your

22   Honor.

23        THE COURT:  So a bunch of non-Nevada lawyers are

24   arguing to a non-Nevada Judge about the application of the

25   Nevada One Action Rule which I presume is something that Nevada

Page 104

1    lawyers know a lot about.

2            MR. RICHARD:  There are practically no annotations to

3    either the Nevada DJ Act which is also an exception to the

4    Nevada One Action Rule or for that matter, the One Action Rule

5    itself.  And that doesn't mean that Nevada lawyers wouldn't

6    have more expertise in this area, I would suggest that we have

7    four arguments that we think we could make relating to it

8    regardless of what the Nevada One Action Rule means.

9            THE COURT:  Yes, but you read a sentence from Lehman's

10   papers and I suppose I read that sentence along with all the

11   sentences that surrounded it in preparation for the argument

12   but as I read their papers, they were saying that in order to

13   preserve in a manner that is safe under the One Action Rule of

14   Nevada, claims that would otherwise be styled as monetary

15   damage claims, we've chosen to do that as declaratory judgment

16   claims.  And that doing it in this manner is somehow consistent

17   with what would occur in Nevada where practitioners finesse the

18   One Action Rule by styling claims for relief as if they are

19   declaratory judgment claims.  Now did I misread that?

20           MR. RICHARD:  I read that into their position as well.

21   However, I believe in Nevada, if Lehman were to have filed this

22   action in Nevada, it would be one action seeking to recover the

23   monetary judgment and to foreclose on the collateral.  It would

24   all be in one action.

25           It's only the division of this -- and it would be in

Page 105

1    Nevada obviously that they would have to foreclose on the

2    Nevada collateral.  And I would submit that it's only the

3    division of this litigation between two different courts and

4    two different jurisdictions that results in this anomaly.

5            THE COURT:  Well is this thing a purely procedural

6    issue because it seems to me that if in Nevada Lehman could

7    bring a unitary action that would both seek to foreclose and

8    seek a monetary judgment and not violate local practice, that

9    there should be a means to permit the same kind of relief in

10   this adversary proceeding or there may be other means that

11   Nevada lawyers or those familiar with local practice would

12   follow in order to permit a deviation from the One Action Rule,

13   so as not to waive rights.

14            What I believe has happening in the motion to dismiss

15   is that there's an attempt to wipe out all damage claims under

16   the guise of declaratory judgment claims on the theory that

17   declaratory judgment claims are impermissible.  But I also

18   understand that the declaratory judgment claims are product of

19   an amended pleading and that the amendment which was unopposed

20   was designed to get around the One Action Rule.

21            So what relief are you really seeking?  Are you

22   seeking outright dismissal of these claims because that's not

23   going to happen.  They're going to have leave to amend.

24            MR. RICHARD:  I understand, Your Honor.  The answer is

25   partially implicated with the rest of the argument of the

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 106

1   debtor.  The One Action Rule argument is coupled with an

2   argument under Rule 15 of the Federal Rules.  That being, that

3   we're required to bring all claims, all claims arising out of

4   the same transaction or occurrence as counterclaims in this

5   case in which my client is the plaintiff.

6         The problem with the approach they're taking, the flaw

7   in that argument is the initial claims which they amended were

8   suits on the note for a monetary judgment.  They're no longer

9   bringing those claims now.  We recognize that there may be a

10  means of dealing with this by way of amendment.  We are not

11  Nevada lawyers.  We believe that this -- this much we do know,

12  that the way that they have done it now is simply not

13  permissible under the Federal DJ Act.

14        There is nothing in the current complaint about the

15  Nevada One Action Rule.  All of the facts giving rise to the

16  current complaint are based upon past alleged breaches.  All of

17  the defenses that they claim they need to make my client's

18  complaint, as a result of the One Action Rule are already

19  pleaded as defenses.

20        And nothing about the One Action Rule in Nevada can by

21  rule amend or broaden what the Federal DJ Act can be used for

22  both under the plains word of the act and Brillhart and its

23  progeny as to how to use that act.  So that we would just

24  submit yes, we don't expect these claims to be dismissed with

25  prejudice.  We think that the debtor has choices here and that

08-13555-mg   Doc 19592   Filed 08/30/11   Entered 08/30/11 20:32:11   Main Document
Pg 23 of 40
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 107

1    the DJ, however, is not one of those choices.  They have

2    choices of filing in Nevada where the collateral may be

3    sufficient to cover their indebtedness.  They have a number of

4    choices.  We just submit that one of those choices is not a DJ

5    action because no Nevada rule can change a federal statute.

6           THE COURT:  Well I must say, it's not clear to me that

7    these claims arise under a federal statute.

8           MR. RICHARD:  The statute that they're using is the

9    Federal Declaratory Judgment Act.

10          THE COURT:  Well, what I believe they're doing is

11   finessing the claims that are really damage claims by

12   characterizing them as declaratory judgment claims and doing so

13   openly as a means to avoid the potential adverse impact of the

14   One Action Rule that we've been talking about in Nevada.  So I

15   think it may be more of a labelling than it is anything else.

16          Now I hear what you're saying.  One way or another

17   they're going to bring these claims and one way or another

18   these claims are going to be brought in a manner that doesn't

19   prejudice their rights under Nevada law.  But everybody who is

20   talking about these issues, by their own admission, are not

21   Nevada lawyers.  That was my first question to the group.

22          So what do you want me to do?  Because I'm not going

23   to wipe out, and you know I'm not going to wipe out, these

24   affirmative defenses and counterclaims.

25          MR. RICHARD:  Well --

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 108

1          THE COURT:  It's really just a question of how do you

2     properly plead in order to get around the potential adverse

3     impact of a local practice?

4          MR. RICHARD:  We haven't moved to strike their

5     affirmative defenses which was one of our four arguments that

6     when they said we need this in order to defend, all of the

7     allegations of the DJ are in their affirmative defenses to our

8     claim.  We're not challenging those in any way.  That's number

9     one.

10          Number two, what we would like this court to do is to

11     dismiss without prejudice the way that it has been approached

12     now to create an opportunity to plead it the correct way under

13     either Nevada law or the law applicable in this jurisdiction.

14     And of course we've got a little bit of a conflict of laws

15     issue here because a lot of the documents are subject to New

16     York law.

17          THE COURT:  But the remedies are subject to Nevada

18     law.

19          MR. RICHARD:  The remedies are subject to Nevada law.

20     So I think that it requires more thought to do it correctly.

21     When one factors in Rule 15 of the Federal Rules, by saying

22     that we are not going to proceed with our claims on the note

23     suing for a money judgment and we're deliberately not doing

24     that, they raise the spectre of exactly the issue that they are

25     arguing they're trying to avoid and that's waiver of a

Page 109

1    compulsory counterclaim because what the compulsory

2    counterclaim Rule 15 says is either bring the claim, in this

3    case for a monetary judgment or forever hold your peace.  And

4    so that by saying we're going to amend out of that claim into a

5    DJ claim, it doesn't accomplish the purpose and the rationale

6    behind what they're saying they're doing.

7           And so that we're suggesting that at his stage, that

8    it should be dismissed, these -- at least three or four DJ

9    counts without prejudice to see if they can amend, to perhaps

10   after consultation with Nevada counsel.  And that's our

11   commentary on three of the four counts.  There's still a fourth

12   count that we haven't addressed.

13          THE COURT:  The stay violation.

14          MR. RICHARD:  Yes.

15          THE COURT:  Do you want to go to that?

16          MR. RICHARD:  Yes.  The stay violation, the first

17   argument is the same that it's not an action on the stay

18   violation.  It's to declare that there was a stay violation.

19   So that ground we've already argued.  There's no one action

20   rule involved there.  They're using the DJ Act to try and get

21   an adjudication by way of declaration that some prior past

22   conduct was, in fact, a violation of the automatic stay.

23          The second ground for dismissal of the stay -- of the

24   automatic stay declaration, the way that we raised it in our

25   motion to dismiss is as we read the complaint, we thought that

Page 110

1    they were seeking a declaration that our adversary action

2    itself was a violation of the automatic stay.  And we argued

3    that way in our motion.

4            In their response, they've come back and they indicate

5    no, that's not the basis of our assertion.  Of course it's not

6    the basis because you could bring an adversary action.  Instead

7    they say the basis for violation of the automatic stay is

8    alleged in paragraphs 4 through 14 and 40 through 42 of their

9    counterclaim.  I've examined those paragraphs and the only

10   factual allegations in those paragraphs is a breach of a

11   promise to pay indebtedness.

12           The two cases that the debtor Lehman cites in their

13   response, the Citizen Bank v. Strumpf, which is a U.S. Supreme

14   Court case and Holden v. IRS, both say on their face that a

15   breach of a promise to pay is not a violation of the automatic

16   stay.  The examples of cases that they give in their brief

17   where the automatic stay was violated are cases where the IRS

18   or a bank puts a hold on money that belongs to the debtor and

19   exercises dominion and control over that money.  And, in fact,

20   those were factors in both of those cases.

21           In one case, which was the U.S. Supreme Court case,

22   Strumpf, they pointed out that under the law of that case the

23   money in the bank account was actually not money that belonged

24   to the debtor.  It was money that was owed by the bank to the

25   debtor, i.e, a promise to pay.  And then the Supreme Court goes

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 111

1    on to say that "breach of a promise to pay is never a basis for

2    violation of the automatic stay."

3         And the other case that they cite, Holden v. IRS, IRS

4    put a hold on a two thousand dollar -- it was a two thousand

5    dollar tax refund because the debtor owed the IRS 120 OR 170

6    dollars.  And they put a hold on the entire two thousand

7    dollars.

8         In that case, it was found that that was a violation

9    or might be a violation of the automatic stay.  The bankruptcy

10   court dismissed the action and the district court reinstated it

11   saying there may be a violation of the automatic stay but

12   emphasized citing Strumpf that if all it was was a breach of a

13   promise to pay, there could not have been a violation of the

14   automatic stay.

15        So our basis for seeking to dismiss Count Four is

16   those two bases.  It's an improper use of the DJ act and number

17   two, based upon all of the allegations there can't be a

18   violation of the automatic stay here.

19        THE COURT:  Okay.  Understood.

20        MS. LEMMER:  I'd like to clarify some of the points

21   that Your Honor aptly brought up earlier.  The plaintiffs

22   brought the action to this court first.  On the day that the

23   loan that Lehman had made to the plaintiffs matured, the very

24   same day they filed a breach of contract action, among other

25   things, against Lehman and Lehman as counsel pointed out, was

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 112

1   compelled to answer and assert its compulsory counterclaims.

2        They filed its compulsory counterclaims and asserted

3   its damage actions and upon further review of the Nevada

4   statute, it recognized that that could potentially foreclose

5   its right to foreclose later on.

6        Now nothing that Lehman has done has been in a

7   sinister or a secret way.  As Your Honor noted, Lehman has been

8   very open about the reasons that it sought to amend its

9   compulsory counterclaims and that motion was actually unopposed

10  by the plaintiffs.

11       I understand that no one in this courtroom, Your Honor

12  -- I apologize, I'm having difficulties -- no one in this

13  courtroom, Your Honor, is a Nevada attorney but if it would

14  please the Court, I have copies of the Nevada One Action

15  statute with me and I'm happy to walk through Your Honor and

16  counsel, how it is that Lehman arrived at its decisions to

17  amend its counterclaims and show that the amendment that Lehman

18  sought is perfectly consistent with the language of the Nevada

19  statute.

20       Now Mr. Richard acknowledges there's a paucity of case

21  law on this issue but even reading the statute on its face it's

22  consistent with that.  If I could approach, I'm happy to hand

23  Your Honor a copy of the statute, as well as counsel and we can

24  go through this.

25       THE COURT:  If it will facilitate your argument, I'll

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 113

1    take a look at it.  I'm not happy about taking a look at it but

2    I'll take a look at it.

3              MS. LEMMER:  Well, Your Honor, I'm not interested in

4    disturbing the Court.

5              THE COURT:  Well, no, it's not that.  It's just it's

6    kind of consistent with how I started this discussion and

7    reading the pleadings in all three cases, it is apparent that

8    these cases one way or another tie to the same Fontainebleau

9    real estate project or Town Center project in Las Vegas.  No

10   doubt, given the sophistication of the parties involved, there

11   are plenty of Las Vegas lawyers who touched the documents.  So

12   it shouldn't be a mystery how one would go about exercising

13   remedies, at least under Nevada law and in a Nevada state

14   court.

15             I suppose the mystery or the question may be how the

16   Nevada One Action Rule, which you're about to take me through,

17   applies in an adversary proceeding within the Lehman

18   bankruptcy.  I rather suspect that there is nothing directly on

19   point in the material you're about to show me but I'm happy to

20   look at it.

21             MS. LEMMER:  Correct, Your Honor.  The material I was

22   about to show you is not to relate the Nevada One Action Rule

23   to the Lehman adversary but instead it was to point out the

24   bases for the amendments.  So, I'm happy not to walk Your Honor

25   through.  However, what the Nevada One Action Rule does provide

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 114

1    is to the extent that an action has been commenced, that

2    violates the One Action Rule. Then to the extent that the

3    plaintiff, who commences that action, converts under Nevada

4    statute 40.35, converts that action to a declaratory action

5    that is not violative, then they won't risk -- that plaintiff

6    won't risk implicating the Nevada One Action Rule.

7         THE COURT:  And who says that?  Is that part of the

8    statute or is that commentary?

9         MS. LEMMER:  Yes, Your Honor.  It's part of the

10   statute.

11        THE COURT:  And under what authority would that

12   declaratory judgment be brought?

13        MS. LEMMER:  Well it could be brought under the

14   federal -- the DJA, Your Honor, or it could be brought under

15   whatever state declaratory judgment statute was in place.  The

16   Nevada statutes don't provide specifically which declaratory

17   judgment authority the plaintiff must rely upon.

18        THE COURT:  I think I understand this because I even

19   engaged in colloquy with your adversary in which I discussed --

20        MS. LEMMER:  Yes.

21        THE COURT:  -- my understanding of your papers to be

22   that the declaratory judgment styling of the counterclaims was

23   specifically undertaking within Delaware One Action Rule

24   practice to avoid waiving foreclosure rights.

25        MS. LEMMER:  Correct.

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 115

1    THE COURT:  So I don't know that I need to see the

2    statute.  I gather that -- I'll look at it but I understand the

3    argument.  Your argument is that this is actually something

4    that's consistent with the statute.  That doesn't get us to the

5    next step which is is it consistent with federal pleading?

6    MS. LEMMER:  Well, Your Honor, yes.  We've sought --

7    the issue with federal pleading that counsel has raised is what

8    is the uncertainty and what is the harm and they allege that

9    the issues complained of were past acts.  But again, the

10   uncertainty and the harm as we've noted in our papers, is that

11   if we were to continue to pursue monetary damage claims as they

12   had been previously styled, we would risk violating the One

13   Action Rule.  Conversely --

14   THE COURT:  Let me just break in and better understand

15   that risk.  And again, I'm by no means expert in this area of

16   local practice and I think we've all confirmed that there's

17   nobody in the room who is an expert in this practice.  We could

18   probably find such a person.  But as I understand your papers,

19   the problem is triggered not by the pleading but by the entry

20   of a judgment.

21   MS. LEMMER:  Correct.

22   THE COURT:  Is that correct?

23   MS. LEMMER:  That's correct.

24   THE COURT:  So if we are at the pleading stage, and

25   you have all kinds of preparatory language in your complaint

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 116

1    that says everything that we're doing in this pleading is

2    designed to avoid any waiver that might arise under the Nevada

3    One Action Rule as it relates to foreclosure and money

4    judgments.  And there are footnotes and all kinds italics and

5    that you can't miss that that's your position.  And we actually

6    end up in the unlikely event and I view it as unlikely, of a

7    trial of this particular adversary proceeding and you win, in

8    connection with your counterclaims, can't you control the

9    adverse effect, if any, of having won on any of your

10   counterclaims by simply not then entering judgment?

11          We were dealing with this at the very beginning of

12   this afternoon's adversary docket because I entered a

13   memorandum decision last month.  Nobody has an appealable order

14   yet.  There's no judgment yet.  Lawyers get together and they

15   work these things out.  Can't that happen here?

16          MS. LEMMER:  It's possible, Your Honor.  But there is

17   a concern that a judgment could be entered and there is a

18   concern that whatever the effect of that victory, that

19   hypothetical victory would be, could be construed as a judgment

20   for the purposes of the Nevada One Action Rule.

21          So rather than engage in a long process where parties

22   are incurring expenses litigating claims, monetary -- the

23   natural result of which could be a judgment, it seemed the more

24   prudent move to act consistent with the Nevada One Action

25   statute and convert as that statute provides to a declaratory

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 117

1    action and seek declaratory relief.

2         THE COURT:  I understand that but you're now needing a

3    motion to dismiss that says you're not entitled to that relief

4    and that it was a nice try but you fail.  And let's just say

5    that I were to grant their motion to dismiss and gave you leave

6    to amend, what would you do?

7         MS. LEMMER:  Well --

8         THE COURT:  What could you do?

9         MS. LEMMER:  We would have to evaluate, Your Honor,

10   whether we would want to amend and see and request the same

11   monetary damages that we had earlier or alternatively ask the

12   Court to stay this action, so that we could pursue rights in

13   Nevada.  Unfortunately, these were not the choices that Lehman

14   had.  Lehman was put in this position because they were sued

15   first and they had a choice of either submitting their

16   compulsory counterclaims and proceeding as set forth or waiving

17   those compulsory counterclaims.  Neither choice seemed an

18   appropriate choice.

19        THE COURT:  Well I think that what you have here is a

20   procedural dilemma that should have a practical resolution.  I

21   am not inclined to do anything here that will adversely affect

22   the substantive rights of Lehman simply because there's a

23   procedural snag under applicable non-bankruptcy law; here,

24   Nevada One Action Rules.

25        If this had been instead of an adversary proceeding, a

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 118

1    proof of claim and I believe there are proofs of claim that

2    have been filed that cover the same subject matter; isn't that

3    right?

4              MS. LEMMER:  Yes.

5              THE COURT:  Lehman would not, it seems to me, be

6    precluded from objecting to the proof of claim and raising any

7    number of affirmative defenses to that proof of claim; would

8    that procedural posture implicate the One Action Rule?

9              MS. LEMMER:  Your Honor, again I don't purport to be

10   an expert on Nevada law but I would see an affirmative defense

11   as different than a counterclaim.  That said, could someone

12   later say you raised an affirmative defense in connection with

13   the litigation of the proof of claim.  There was a judgment

14   obtained.  As a result of that judgment, you're now foreclosed

15   from seeking to foreclose in Nevada, that's a possibility.

16             So all we're asking the Court is we do not want to

17   deprive counsel of their rights to object and raise any

18   arguments that they wish to raise.  All we're seeking to do is

19   insure that we are not prevented or excuse me, that we don't

20   forfeit any of our substantive rights under the Nevada statute.

21             THE COURT:  Here's what I'd like to accomplish.  I can

22   rule one way or the other on this.  I think we all understand

23   what we're talking about.  We're talking about a very narrow

24   question and there isn't a person in the room who has true

25   expertise on the subject matter.

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 119

1          I understand that Lehman simply trying to avoid a risk

2     which may be purely theoretical as opposed to real, so as not

3     to inadvertently waive a right of action under local law;

4     correct?

5          MS. LEMMER:  Correct.

6          THE COURT:  Have the parties in the literally years

7     since this litigation has been pending, endeavored to explore

8     some kind of thoughtful lawyer-like way to come up with a means

9     to protect everybody's rights so that there are no inadvertent

10    waivers and all rights are reserved?

11         MS. LEMMER:  Your Honor, some of the parties that have

12    been involved have switched over as counsel advised the Court

13    earlier.  To my knowledge, the discussions between the parties

14    has been more towards the aim of ultimately settling the

15    disputes between the parties as opposed to resolving the

16    differences that are -- the procedural differences that are at

17    issue before the Court today.

18         I know -- I can anticipate where Your Honor is going

19    with this.  I'm happy to try to discuss this with counsel and

20    arrive at essentially some sort of agreement or settlement that

21    would have the effect of protecting everyone's rights.  But

22    absent that, Your Honor, I don't believe that anyone has

23    specifically aimed in any other settlement conversations or any

24    other discussions dealing with this One Action situation.

25         THE COURT:  Okay.  Well it's obvious to me from having

Page 120

1    looked at all three of these cases and the procedural posture

2    of the cases, that the cases have, and I say this charitably,

3    languished at least as it relates to docketed activity.

4            MS. LEMMER:  Uh-hum.

5            THE COURT:  The motions to dismiss are not dispositive

6    motions and in the end don't really affect one way or the other

7    the rights of the parties.  The violation of the automatic stay

8    issue which we haven't even addressed is frankly something that

9    I have some problems with and I'm going to give you an

10   opportunity to respond to that.  But I don't -- I see this as a

11   dispute over payment and performance under various loan

12   documents.  These were sophisticated parties who engaged in a

13   sophisticated real estate deal and they have claims against

14   each other.  That's apparent.

15           If you are, in fact, engaged in substantive

16   discussions that may lead to an overall resolution, that's

17   great.  I note that these cases have been adjourned on any

18   number of occasions, such that we end up addressing these

19   motions to dismiss today for reasons that escape me.  I don't

20   know why the parties decided that this was the time to have it

21   out but even then you ended up resolving by agreement two of

22   them.

23           It's not a happy pattern from my perspective because

24   to the extent that I am involved, I'm doing work, my clerks are

25   doing work, we're thinking about the issues, we're being paid

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 121

1   for that but it's terribly wasteful if you're in fact then

2   going to reach agreements.

3           Is there an ability to reach an agreement with respect

4   to the one matter that we're arguing?  It seems to me that the

5   parties are capable of that.  It's about reservations of rights

6   and avoiding inadvertent adverse consequences.  No?

7           MS. LEMMER:  Correct, Your Honor.  I agree.  I would

8   be happy to explore reaching an agreement with the Soffers and

9   Turnberry.

10          THE COURT:  Okay.  Here's what I am going to suggest.

11  I'm going to carry this to the next scheduled omnibus hearing

12  with -- just as a holding date and I'm not suggesting that

13  people actually need to travel here from Florida unnecessarily.

14  But I would urge the parties to either accept the pleadings as

15  they are with the understanding that they are slightly

16  imperfect as they relate to declaratory judgment relief but

17  nonetheless congruent with what appears to be the teachings of

18  the Nevada One Action Rule, so there is at least some ability

19  to say that a declaratory judgment action can be brought in

20  lieu of a damage claim.

21          Or that there be a further amendment of the claims

22  that are at issue to restyle them.  But in the end, it doesn't

23  matter.  The plaintiffs know what it is that you're asserting

24  and we're dealing with procedural niceties that are frankly

25  wasteful.  So, I would suggest that you spend a little time

Page 122

1  trying to work out some kind of stipulation that accomplishes

2  everybody's objectives and that avoids further waste.

3      MS. LEMMER:  Thank you, Your Honor.  I agree with that

4  suggestion.

5      THE COURT:  Is that all right with you?

6      MR. RICHARD:  Yes, Your Honor.

7      THE COURT:  As far as the count for stay violation, I

8  frankly don't see it and while this isn't a ruling, it's a

9  comment.  This appears to be a non-payment.  It's not the

10  exercise of control over debtor property.  Unless you can

11  demonstrate to me that there is a good claim to be made, that

12  there is a fund of property that is being held by your

13  adversary that constitutes what amounts to a fund that could be

14  used to offset the obligations owed to you, that might be a

15  different setting.  But if it's just money due and owing, I

16  don't see this as a stay violation in the least.

17      MS. LEMMER:  Your Honor, at this stage of the

18  litigation, we do not know if they're holding a fund because

19  this litigation is essentially as Your Honor has pointed out,

20  in its infancy.  We haven't been able to conduct any discovery.

21  So to the extent that they have a fund, we don't know either

22  way.

23      However, just to address and I understand Your Honor

24  may be issuing an advisory opinion or cautioning us, but the

25  Strumpf decision that was cited -- that we cited and that

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 123

1    counsel discussed, that supreme court had a narrow holding

2    there.  The issue there was that the bank had placed an

3    administrative freeze but it was a temporary administrative

4    freeze while it sought stay relief to essentially offset --

5                 THE COURT:  Yes, but it was exercising the right of

6    setoff.  That case is routinely cited in the setoff context.

7    This isn't a setoff case, as far as I know.  This is a claim

8    for breach of contract and money due and owing.

9                 MS. LEMMER:  Well again, Your Honor, it's in its

10   infancy.  I would submit that to the extent that that's the

11   case, counsel has the opportunity to raise that argument but in

12   the motion to dismiss stage, we still don't know.

13                THE COURT:  I'm prepared to grant the motion to

14   dismiss as it relates to the alleged stay violation but without

15   prejudice to your ability to in effect amend later.

16   Everybody's on notice of this.  If a fact should develop that

17   would give rise to such a claim.  But on its face, it appears

18   to be a claim that would not ordinarily be appropriate.

19                MS. LEMMER:  Okay.  Thank you, Your Honor.

20                THE COURT:  And I suggest that you might use these

21   comments as guidance to develop an agreed resolution of the

22   pleading issues that relate to this one case.

23                MS. LEMMER:  We will.  Thank you, Your Honor.

24                THE COURT:  Okay.  So let's carry this to the next

25   omnibus hearing date with the hope that I don't have to see you

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 124

1      then.

2              MS. LEMMER:  Thank you.

3              THE COURT:  I think that takes care of the afternoon

4      calendar.  We're adjourned.

5          (Whereupon these proceedings were concluded at 3:20 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25