HEARING DATE AND TIME: September 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)
OBJECTION DATE AND TIME: September 7, 2011 at 4:00 p.m. (Prevailing Eastern Time)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

David S. Cohen
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

Counsel for the Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,                  :    08-13555 (JMP)
                                                        :
              Debtors.                                  :    (Jointly Administered)
                                                        :
------------------------------------------------------- x
```

**MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL.,
PURSUANT TO 11 U.S.C. §§ 1103(c) AND 1109(b), FOR ENTRY OF AN ORDER
GRANTING LEAVE, STANDING AND AUTHORITY TO PROSECUTE AND, IF
APPROPRIATE, SETTLE CAUSES OF ACTION ON BEHALF OF
LEHMAN COMMERCIAL PAPER INC.**

The Official Committee of Unsecured Creditors (the "Committee") of Lehman

Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the

"Debtors") hereby files this motion (the "Motion"), pursuant to sections 1103(c) and 1109(b) of

title 11 of the United States Code (as amended, the "Bankruptcy Code"), for entry of an order

granting the Committee standing to prosecute and, if appropriate, settle: (1) certain adversary

proceedings previously commenced by Lehman Commercial Paper Inc. ("LCPI")[1]; and (2) additional claims and/or causes of action against any persons or entities (the "LMA Participants") that received the Transfers (as defined below) pursuant to Loan Market Association agreements (the "LMA Agreements") and entered into tolling agreements with LCPI (together with the Pending Adversary Proceedings, collectively, the "Adversary Proceedings"). LCPI has consented to the Committee's obtaining standing to prosecute and, potentially settle, the Adversary Proceedings.[2] The LMA Participants received the Transfers either as preferential transfers within the ninety-day period prior to LCPI's bankruptcy filing (the "Pre-Petition Period") or avoidable post-petition transfers in the period following LCPI's bankruptcy filing (the "Post-Petition Period"). In support of the Motion, the Committee respectfully states as follows:

### I.   PRELIMINARY STATEMENT

1.     The LMA Participants received either avoidable preferential transfers or avoidable post-petition transfers when their unsecured participation interests in the principal and interest payments on account of certain loans held by LCPI (the "Underlying Loans") were elevated to ownership interests (the "Transfers") during either LCPI's Pre-Petition Period or

---

[1] The pending adversary proceedings at issue in this Motion are: (1) Lehman Brothers Commercial Paper Inc. v. Bluebay Asset Mgmt. PLC et al., Adv. Pro. No. 10-03831 (Bankr. S.D.N.Y.); (2) Lehman Brothers Commercial Paper Inc. v. Adagio III CLO PLC and AXA Inv. Managers Paris S.A., Adv. Pro. No. 10-03832 (Bankr. S.D.N.Y.); (3) Lehman Brothers Commercial Paper Inc. v. Confluent V Ltd. and AXA Inv. Managers Paris S.A., Adv. Pro. No. 10-03830 (Bankr. S.D.N.Y.); (4) Lehman Brothers Commercial Paper Inc. v. Matignon Derivatives Loans and AXA Inv. Managers Paris S.A., Adv. Pro. No. 10-03833 (Bankr. S.D.N.Y.); and (5) Lehman Brothers Commercial Paper Inc. v. Sark Master Fund Ltd., Adv. Pro. No. 11-01697 (Bankr. S.D.N.Y.) (collectively, the "Pending Adversary Proceedings").

[2] Although LCPI has consented to the Committee's prosecution of the Adversary Proceedings, out of an abundance of caution, the Committee files the Motion (rather than a stipulation and order) in light of the holdings in Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.), 277 B.R. 493, 503-04 (Bankr. S.D.N.Y. 1999) and Crowthers McCall Pattern, Inc. v. Lewis, 114 B.R. 407, 409 (S.D.N.Y. 1990), which suggest that a motion and hearing is required for the Committee to gain standing to prosecute the Adversary Proceedings.

Post-Petition Period. With the consent of LCPI and pursuant to sections 1103(c) and 1109(b) of the Bankruptcy Code, the Committee seeks exclusive authority to prosecute the Adversary Proceedings. The Court should grant the Committee such standing because the claims underlying the Adversary Proceedings are "colorable," and prosecution of the Adversary Proceedings by the Committee is (a) in the best interest of LCPI's estate and (b) "necessary and beneficial" to the fair and efficient resolution of LCPI's bankruptcy case.

2.   <u>First</u>, the claims asserted (or to be asserted) in the Adversary Proceedings are viable and colorable. As discussed more fully below, the Transfers to the LMA Participants during: (a) the Pre-Petition Period are avoidable as preferential transfers pursuant to section 547(b) of the Bankruptcy Code; and (b) the Post-Petition Period are avoidable as post-petition transfers pursuant to section 549(a) of the Bankruptcy Code.

3.   <u>Second</u>, prosecution of the Adversary Proceedings is in the best interest of LCPI's estate because successful resolution of the Adversary Proceedings will result in incremental recoveries to LCPI's creditors of approximately $60 million. The resources required to pursue the Adversary Proceedings would be minimal by comparison.

4.   <u>Third</u>, pursuing the Adversary Proceedings is necessary and beneficial to the fair and efficient resolution of LCPI's bankruptcy case because recovering the Transfers will ensure the equality of distributions to similarly situated creditors of LCPI.

## II.   <u>JURISDICTION AND VENUE</u>

5.   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code.

### III. BACKGROUND

**A.    The LMA Agreements**

6.     Before LCPI filed its chapter 11 petition on October 5, 2008, LCPI extended commercial loans to various borrowers. From time to time, LCPI would sell to third parties the right to receive principal and interest payments on the Underlying Loans, which were known as loan participations (the "Loan Participations"). The Loan Participations governed by the LMA Agreements did not vest the third parties with an ownership interest in the Underlying Loans. Instead, the Loan Participations created a debtor-creditor relationship between LCPI and the third party.

7.     The Loan Participations at issue in the Adversary Proceedings were governed by the LMA Agreements. Under the terms of certain of the LMA Agreements, the LMA Participants had the right to request that LCPI "elevate" their status from participants through LCPI to lenders of record on the Underlying Loans. As participants, the LMA Participants only had unsecured claims against LCPI. As lenders, the LMA Participants would receive ownership interests in the Underlying Loans. Specifically, upon elevation LCPI would transfer to the LMA Participants the estate's interest in all future principal and interest payments, and its right to any collateral. The LMA Participants were then entitled to receive payment directly from the borrowers on the Underlying Loans and to vote their interests in the Underlying Loans under the terms of the applicable credit agreements.

**B.    The Loan Transfers and LCPI's Claims Against the LMA Participants**

8.     During LCPI's Pre-Petition Period and Post-Petition Period, the LMA Participants requested and obtained the Transfers. The Transfers became effective throughout September and October of 2008.

4

9.     LCPI subsequently filed five adversary complaints against the LMA Participants, seeking to recover the Transfers under sections 547(b), 549(a) and 550(a) of the Bankruptcy Code. In addition, LCPI executed tolling agreements with several of the LMA Participants. These tolling agreements have the effect of preserving LCPI's claims and causes of action against the LMA Participants.

C.     **The Committee's Investigation of the Claims**

10.    Since identifying the Transfers as either avoidable preferential transfers or avoidable post-petition transfers, the Committee has worked with LCPI to recover the Transfers by, among other things, analyzing and valuing potential causes of action and helping LCPI frame the issues for the Adversary Proceedings.

## IV.     RELIEF REQUESTED

11.    With the support of LCPI, the Committee hereby requests that this Court grant leave, standing, and exclusive authority to the Committee to prosecute the Adversary Proceedings on behalf of LCPI's estate and, if appropriate, propose and effectuate settlements in respect of all or a portion of the Adversary Proceedings, subject to notice and approval by the Debtors consistent with the notice and approval rights afforded to the Committee by the Court's Order Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing the Debtors to Implement Procedures for the Settlement of Avoidance Claims, dated May 18, 2011 [Docket No. 16940] (the "Settlement Order"), including the ability by the Committee to seek Court approval pursuant to Bankruptcy Rule 9019 if the Debtors object to any such settlement.

## V.     ARGUMENT

12.     In the Second Circuit, "it is permissible, not uncommon, and often desirable for official committees to seek and obtain the right to assert [a] claim on behalf of the estate . . . when the debtor consensually cedes control of the litigation over to the committee." Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.), 285 B.R. 848, 855 (Bankr. S.D.N.Y. 2002) (internal citations omitted).  The Second Circuit has recognized an "implied, but qualified" right, under sections 1103(c)(5) and 1109(b) of the Bankruptcy Code for an unsecured creditors' committee to "assert claims . . . likely to benefit the reorganization estate." Official Comm. of Equity Sec. Holders of Adelphia Commc'ns Corp. v. Official Comm. of Unsecured Creditors of Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 544 F.3d 420, 423-24 (2d Cir. 2008); see also Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 904-05 (2d Cir. 1985).

13.     For the Committee to acquire standing to assert claims on behalf of LCPI's estate, the Second Circuit requires the claims to be "colorable." See In re STN Enters., 779 F.2d at 905; see also Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.), 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005); see also In re Hydrogen, L.L.C., No. 08-14139, 2009 WL 2913448, at *1 (Bankr. S.D.N.Y. May 7, 2009).  The requisite showing for establishing that claims are colorable is a "relatively easy one to make." In re Adelphia Commc'ns Corp., 330 B.R. at 376.  The Court need not engage in an extensive merits review or conduct a mini-trial. Id.; see also In re STN Enters., 779 F.2d at 905.  Rather, standing should be denied only if the claims are "facially defective." In re Adelphia Commc'ns Corp., 330 B.R. at 376 (citing Official Comm. of Unsecured Creditors of Am.'s Hobby Ctr. v. Hudson United Bank (In re Am.'s Hobby Ctr., Inc.), 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998)).

14. Assuming the Committee meets the threshold requirement of showing that the claims are colorable, it can then obtain standing to prosecute the claims by meeting the multi-part test set forth by the Second Circuit in <u>In re Commodore Int'l Ltd.</u> (the "Commodore Test"). <u>See Commodore Int'l v. Gould (In re Commodore Int'l Ltd.)</u>, 262 F.3d 96, 100 (2d Cir. 2001). This test provides that "[a] creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." <u>Id.</u>

**A.    The Committee Has Colorable Claims Against the LMA Participants**

15. On their face, the preferential transfer and post-petition transfer claims asserted (or to be asserted) in the Adversary Proceedings are viable and colorable. First, with respect to the preferential transfer claims, section 547(b) of the Bankruptcy Code provides that a debtor in possession may avoid any transfer of an interest of the debtor in property: (a) "to or for the benefit of a creditor"; (b) "for or on account of an antecedent debt owed by the debtor before such transfer was made"; (c) "made while the debtor was insolvent"; (d) made on or within 90 days before the debtor's bankruptcy filing; and (e) that enables such creditor to receive more than it would receive in a case under chapter 7 of the Bankruptcy Code if the transfer had not been made. 11 U.S.C. § 547(b). The preferential transfer claims against the LMA Participants satisfy each of these requirements.

16. <u>First</u>, the Transfers constituted a transfer of LCPI's interest in property, namely, LCPI's ownership interests in the Underlying Loans. <u>Second</u>, the Transfers were to or for the benefit of LCPI's creditors and for or on account of antecedent debts because the LMA Agreements created a debtor-creditor relationship between LCPI and the LMA Participants on

7

account of their participation interests.  Third, the Transfers occurred throughout September and early October of 2008 and, thus, occurred within LCPI's Pre-Petition Period.  Pursuant to section 547(f) of the Bankruptcy Code, LCPI is presumed to have been insolvent during this time.  Fourth, the Transfers allowed the LMA Participants to receive a far greater recovery than they would have received as ordinary unsecured creditors of LCPI if LCPI had been liquidated under Chapter 7 of the Bankruptcy Code.

17.    The post-petition transfer claims also are colorable.  Section 549(a) of the Bankruptcy Code provides that a debtor may avoid any transfer of an interest of the debtor in property "(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title, or (B) that is not authorized under this title or by the Court."  11 U.S.C. § 549(a).  The post-petition transfer claims against the LMA Participants satisfy each of these requirements.

18.    First, after October 5, 2008, LCPI's petition date, LCPI transferred its ownership interest in the Underlying Loans to certain LMA Participants.  Second, the Transfers were neither authorized by the Bankruptcy Code nor authorized by the Court.

19.    As the Second Circuit has noted, only claims that are "facially defective" fail to meet the "colorable claim" requirement for derivative standing.  In re Adelphia Commc'ns Corp., 330 B.R. at 376.  Because sufficient facts have been pleaded to support each element of a preferential transfer claim under section 547(b) and post-petition transfer claim under section 549(a), the Committee easily meets this threshold requirement.

B.    **The Committee Satisfies the Commodore Test**

20.    Because the Committee has received LCPI's consent to prosecute the Adversary Proceedings, the Motion should be granted so long as the Committee satisfies the remaining

8

elements of the Commodore Test.  Here, the Committee easily satisfies these remaining factors as prosecution of the Adversary Proceedings is (i) in the best interests of LCPI's estate; and (ii) necessary and beneficial to the fair and efficient resolution of LCPI's bankruptcy case.

> 1. **Prosecution of the Adversary Proceedings is in the Best Interest of LCPI's Estate**

21. To establish that a suit is in the best interest of a bankruptcy estate, the Second Circuit has noted that the Committee does not have to show that the estate is guaranteed a recovery.  See Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 71 (2d Cir. 2002).  Instead, bankruptcy courts will engage in a limited merits assessment to ensure "that there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that initiation and continuation of litigation will likely produce."  In re Adelphia Commc'ns Corp., 330 B.R. at 374 (quoting In re STN Enters., 779 F.2d at 901); see also In re Housecraft Indus. USA, Inc., 310 F.3d at 64.  In other words, there must be "a fair chance that the benefits to be obtained from the litigation will outweigh its costs."  In re Am.'s Hobby Ctr., Inc., 223 B.R. at 284 (granting a committee standing to pursue certain colorable claims after determining that the anticipated recoveries would exceed likely litigation costs).

22. To the extent the Transfers are avoided as either preferential or post-petition transfers, LCPI will recover either the ownership interests in the Underlying Loans or the value thereof, which is estimated to be worth approximately $60 million.  Such a recovery would clearly benefit LCPI's creditors by increasing their recovery from LCPI's estate.  Moreover, the Committee does not expect that the costs to be incurred in prosecuting the Adversary Proceedings will be significant in relation to the potential recovery.  See In re Adelphia Commc'ns Corp., 330 B.R. at 386 (noting that litigation costs must be considered, but a court need only have comfort that the prosecution of claims represents a sensible expenditure of the

9

estate's resources). Here, where the potential benefit to LCPI's estate is a recovery of approximately $60 million, the benefit of prosecuting the Adversary Proceedings will clearly outweigh any associated costs.

    2. **Prosecution of the Adversary Proceedings is Necessary and Beneficial to the Fair and Efficient Resolution of LCPI's Bankruptcy Case**

23. In determining whether prosecution of a proceeding is "necessary and beneficial" to the fair and efficient resolution of a bankruptcy case, courts in the Second Circuit have considered whether: (1) the estate would be able to recover without the proceeding; and (2) there would be a fair distribution of the estate's assets. See In re Housecraft Indus. USA, Inc., 310 F.3d at 71; see also In re Levine, No. 00-15511, 2007 WL 2048670, at *4 (Bankr. S.D.N.Y. July 10, 2007). Both factors are satisfied here.

24. First, LCPI's estate will not be able to recover the Transfers unless the Adversary Proceedings are prosecuted. The LMA Participants dispute that the Transfers constituted either avoidable preferential or post-petition transfers and, accordingly, will not voluntarily relinquish their interests in the Underlying Loans or the value thereof. Moreover, to the Committee's knowledge, no other actions have been proposed as a means to seek recovery of these interests.

25. Second, the Committee's pursuit of the Adversary Proceedings will help ensure a fair distribution of LCPI's assets. Through the Transfers, the LMA Participants were able to improve their positions at the expense of LCPI's other, general unsecured creditors. If the Committee is successful, the Transfers will be avoided and the LMA Participants, upon disgorgement of the preferential or post-petition transfers, will share ratably with LCPI's other unsecured creditors in the distributions from LCPI's estate.[3]

---

[3] In addition to the foregoing, granting the Committee standing to prosecute the Adversary Proceedings comports with the Committee's proper discharge of its fiduciary duties to LCPI's unsecured creditors. A

10

## VI.     RESERVATION OF RIGHTS

26.     The Committee reserves its right to seek authority to commence and prosecute other claims and/or causes of action against the LMA Participants and other parties, on behalf of LCPI's estate.

## VII.     NOTICE

27.     This Motion has been served on (i) the Chambers of the Honorable James M. Peck, United States Bankruptcy Judge; (ii) the attorneys for the Debtors; (iii) the U.S. Trustee; (iv) all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002. The Committee submits that no other or further notice need be provided.

## VIII.     CONCLUSION

**WHEREFORE**, the Committee requests that the Court enter an order, substantially in the form annexed hereto as Exhibit A granting the Committee: (i) leave, standing and exclusive authority to commence and prosecute the Adversary Proceedings on behalf of LCPI's estate; (ii) authority, subject to the Settlement Order, to compromise and settle any Adversary Proceeding; and (iii) such other and further relief as the Court may deem just.

---

committee's duties include "perform[ing] such ... services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5).

Dated:   New York, New York
         August 31, 2011

                          By:      /s/ Dennis F. Dunne
                               Dennis F. Dunne
                               Evan R. Fleck
                               Dennis C. O'Donnell
                               Milbank, Tweed, Hadley & M$^c$Cloy LLP
                               1 Chase Manhattan Plaza
                               New York, NY 10005
                               Telephone: (212) 530-5000

                               David S. Cohen
                               Milbank, Tweed, Hadley & M$^c$Cloy LLP
                               1850 K Street N.W., Suite 1100
                               Washington, D.C. 20006
                               Telephone: (202) 835-7500

                        Counsel for the Official Committee
                        of Unsecured Creditors of Lehman Brothers
                        Holdings Inc., et al.

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re:                                                        :   Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,                        :   08-13555 (JMP)
                                                              :
                                  Debtors.                    :   (Jointly Administered)
                                                              :
------------------------------------------------------------- x

**ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL., TO PROSECUTE AND, IF APPROPRIATE, SETTLE CAUSES OF ACTION ON BEHALF OF LEHMAN COMMERCIAL PAPER INC.**

Upon the motion (the "Motion")[1] of the Official Committee of Unsecured Creditors (the "Committee") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the "Debtors") for entry of an order granting the Committee leave, standing, and exclusive authority to prosecute and, if appropriate, settle avoidance actions on behalf of Lehman Commercial Paper Inc.'s ("LCPI") estate pursuant to 11 U.S.C. §§ 1103(c) and 1109(b), all as more particularly described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered on

---

[1]   Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion (as defined below).

June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635, on (i) the U.S. Trustee; (ii) the attorneys for the Debtors; and (iii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** that the Motion is granted as provided herein; and it is further

**ORDERED** that all objections, if any, to the Motion or the relief requested therein, that have not been withdrawn, waived, or settled, are overruled; and it is further

**ORDERED** that the Committee shall be, and hereby is, granted, on behalf of LCPI's estate, leave, standing, and exclusive authority to prosecute the Adversary Proceedings; and it is further

**ORDERED** that proceeds, if any, recovered by the Committee on behalf of LCPI in connection with prosecuting or settling the Adversary Proceedings shall constitute property of LCPI's estate; and it is further

**ORDERED** that the Committee shall receive the benefit of all tolling agreements entered between LCPI and any LMA Participant; and it is further

**ORDERED** that the Committee is authorized to enter into settlements with the LMA Participants on behalf of LCPI's estate pursuant to the Court's Order Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing the Debtors to Implement Procedures for the Settlement of Avoidance Claims, dated May 18, 2011 [Docket No. 16940] (the "Settlement Order"); and it is further

2

**ORDERED** that to the extent the Committee negotiates and enters into settlements on behalf of LCPI's estate with respect to the Adversary Proceedings, such settlements shall be subject to notice and approval by the Debtors consistent with the notice and approval rights afforded to the Committee by the Settlement Order, including the ability by the Committee to seek Court approval pursuant to Bankruptcy Rule 9019 if the Debtors object to any such settlement.; and it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the construction, performance, enforcement, and implementation of the terms of this Order.

Dated:
New York, New York

_____
HON. JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

3