1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-13555-jmp

5    - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS INC., et al.,

9

10            Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - -x

13

14                U.S. Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                August 25, 2011

19                10:03 AM

20

21    B E F O R E:

22    HON. JAMES M. PECK

23    U.S. BANKRUPTCY JUDGE

24

25

1

2    Hearing re:  Debtors' Sixty-Seventh Omnibus Objection to Claims

3    (Valued Derivative Claims)

4

5    Hearing re:  Debtors' One Hundred Fifty-Fifth Omnibus Objection

6    to Claims (Valued Derivative Claims)

7

8    Hearing re:  Debtors' One Hundred Sixty-Second Omnibus

9    Objection to Claims (Valued Derivative Claims)

10

11   Hearing re:  Debtors' One Hundred Fifty-First Omnibus Objection

12   to Claims (No Liability Claims)

13

14   Hearing re:  Debtors' One Hundred Fifty-Seventh Omnibus

15   Objection to Claims (Amended and Superseded Claims)

16

17   Hearing re:  Debtors' One Hundred Fifty-Eighth Omnibus

18   Objection to Claims (Late-Filed Claims)

19

20   Hearing re:  Debtors' One Hundred Fifty-Ninth Omnibus Objection

21   to Claims (Invalid Blocking Number LPS Claims)

22

23   Hearing re:  Debtors' One Hundred Sixtieth Omnibus Objection to

24   Claims (Settled Derivatives Claims)

25

1

2  Hearing re:  Debtors' One Hundred Sixty-First Omnibus Objection

3  to Claims (Settled Derivatives Claims)

4

5  Hearing re:  Debtors' One Hundred Ninth Omnibus Objection to

6  Claims (Insufficient Documentation)

7

8  Hearing re:  Debtors' One Hundred Sixty-Third Omnibus Objection

9  to Claims (No Liability Derivatives Claims)

10

11  Hearing re:  Debtors' One Hundred Sixty-Fourth Omnibus

12  Objection to Claims (Duplicative LPS Claims)

13

14  Hearing re:  Debtors' One Hundred Eighteenth Omnibus Objection

15  to Claims (To Reclassify Proofs of Claim as Equity Interests)

16

17  Hearing re:  Debtors' Seventy-Fourth Omnibus Objection to

18  Claims (To Reclassify Proofs of Claim as Equity Interests)

19

20  Hearing re:  Debtors' One Hundred Fifty-Second Omnibus

21  Objection to Claims (Amended and Superseded Claims)

22

23  Hearing re:  First Motion of Mark Glasser to Extend Time for

24  Claim

25  Transcribed by:  Hana Copperman

Page 4

1

2  A P P E A R A N C E S :

3  WEIL, GOTSHAL & MANGES LLP

4       Attorneys for Debtors and Debtors-in-Possession

5       767 Fifth Avenue

6       New York, NY 10153

7

8  BY:   MARK BERNSTEIN, ESQ.

9        NADYA SALCEDO, ESQ.

10

11

12  WEIL, GOTSHAL & MANGES LLP

13       Attorneys for Debtors and Debtors-in-Possession

14       200 Crescent Court

15       Suite 300

16       Dallas, TX 75201

17

18  BY:   ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25

Page 5

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         One Chase Manhattan Plaza

6         New York, NY 10005

7

8   BY:   BRADLEY SCOTT FRIEDMAN, ESQ.

9         DENNIS O'DONNELL, ESQ.

10

11

12   ALSO APPEARING:

13         MICHAEL PINKO

14         PARTY PRO SE

15

16         MARK GLASSER

17         PARTY PRO SE

18

19

20

21

22

23

24

25

08-13555-mg    Doc 19700    Filed 08/26/11    Entered 09/02/11 15:34:38    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 6 of 48

Page 6

1                    P R O C E E D I N G S

2            MS. SALCEDO:  Good morning, Your Honor.  My name is

3    Nadya Salcedo with Weil here on behalf of the debtors.  I'll be

4    addressing agenda items 1 through 3.  Each of these omnibus

5    objections seek to reduce and allow valued derivative claims on

6    a nonconsensual basis, and each of these omnibus objections are

7    going forward today uncontested.

8            Going to the first agenda item, the sixty-seventh

9    omnibus objection.  This omnibus objection was filed in

10   November of last year objecting to 128 claims.  Debtors have

11   successfully resolved more than half of these claims and

12   continue to attempt to settle the balance of the claims in this

13   objection.  Debtors have successfully settled an additional

14   claim from the sixty-seventh omnibus objection filed by the

15   counterparty Castlerigg Master Investment.  Castlerigg has

16   agreed that debtors should proceed with this settled claim on

17   an uncontested basis today at the hearing.  We therefore

18   respectfully request that Your Honor grant the proposed sixth

19   supplemental order reducing and allowing Castlerigg Master

20   Investment's claim number 27310 to its modified amount as set

21   out in the debtors' sixty-seventh omnibus objection to valued

22   derivative claims.

23            THE COURT:  That relief is granted.

24            MS. SALCEDO:  Thank you.  Moving on to the second

25   agenda item, with respect to the one hundred and fifty-fifth

Page 7

1    omnibus objection since the original claims hearing on July 21,

2    2011 one additional counterparty, Blue Angel Claims LLC, has

3    failed to file a response to the omnibus objection.  We

4    therefore respectfully request that Your Honor grant the

5    proposed supplemental order reducing and allowing Blue Angel

6    Claims' claim numbers 4413 and 4414 to their modified amount as

7    set out in the omnibus objection.

8            THE COURT:  Relief is granted as to Blue Angel Claims.

9            MS. SALCEDO:  Thank you, Your Honor.  Turning now to

10   the one hundred and sixty-second omnibus objection, the debtors

11   are seeking to reduce, reclassify in some instances and allow

12   twenty-three claims relating to fourteen counterparties, all of

13   which did not file a response to the hundred and sixty-second

14   omnibus objection.  There are twenty-one remaining claims named

15   in this objection which belong to fifteen counterparties.

16   These counterparties either filed timely responses or were

17   granted extensions to the response deadline by debtors.

18   Settlement discussions have begun in a number of these, and

19   debtors respectfully request that this Court adjourn these

20   hearings as to the twenty-one claims to October 5, 2011 so the

21   debtors may try to resolve these claims with the

22   counterparties.

23           We have a proposed order for both the reduction and

24   the adjournments for Your Honor and respectfully request that

25   you grant the debtors a hundred and sixty-second omnibus

Page 8

1    objection reducing, reclassifying in some instances and

2    allowing the twenty-three claims for which debtors received no

3    response and adjourning the balance of the claims.

4           THE COURT:  That relief is granted as to the one

5    hundred and sixty-second omnibus objection.

6           MS. SALCEDO:  Thank you, Your Honor.  If there are no

7    questions I'll turn the podium to my colleagues.

8           THE COURT:  All right.

9           MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

10   with Weil for the debtors.  I will be handling the uncontested

11   agenda items 4 through 10 this morning, starting with agenda

12   item number 4.  This is a carryover item from the debtors' a

13   hundred and fifty-first omnibus objection that was heard and

14   granted at the July 21, 2011 claims hearing.  The a hundred and

15   fifty-first omnibus objection sought to disallow and expunge

16   claims for which the debtors have no liability.  Today we are

17   proceeding solely as to claim 30569 by Clayton Services, Inc.

18   Counsel for Clayton Services had requested an adjournment and

19   then notified the debtors that Clayton did not oppose the

20   objection.  Accordingly, the debtors are proceeding today

21   uncontested and respectfully request that the Court grant the

22   hundred and fifty-first omnibus objection as to claim 30569.

23          THE COURT:  The objection is granted as to claim

24   30569.

25          MS. ECKOLS:  Moving to agenda item number 5, the

08-13555-mg   Doc 19700   Filed 08/26/11   Entered 09/02/11 15:34:38   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 9 of 48

Page 9

1   hundred and fifty-seventh omnibus objection, it seeks to

2   disallow and expunge claims that were amended and superseded by

3   subsequently filed claims by the same creditor for the same

4   obligation.  The debtors did not receive any responses to the

5   objection and respectfully request that the Court grant the

6   debtors a hundred and fifty-seventh omnibus objection.

7        THE COURT:  A hundred and fifty-seventh omnibus

8   objection to claims is granted.

9        MS. ECKOLS:  Moving to agenda item number 6, this is

10  the debtors' a hundred and fifty-eighth omnibus objection.  It

11  seeks to disallow and expunge claims that were filed after the

12  applicable bar date.  The debtors received one formal response,

13  which has been resolved, and the debtors notified the claimant

14  accordingly.  The debtors also adjourned the objection as to

15  three other claims.

16       The debtors are moving today as to the balance of the

17  claims on an uncontested basis and respectfully request that

18  the Court grant the hundred and fifty-eighth omnibus objection.

19       THE COURT:  The hundred and fifty-eighth omnibus

20  objection to claims is granted on an uncontested basis.

21       MS. ECKOLS:  Moving to agenda item number 7, the

22  debtors' a hundred and fifty-ninth omnibus objection, seeks to

23  disallow and expunge claims for Lehman program securities that

24  provided blocking numbers that were invalid.  The bar date

25  order required claimants seeking to recover for Lehman program

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 10

1   securities to obtain a blocking number from the applicable

2   clearing agency, Euroclear or Clearstream, and to provide it

3   with their claim.

4         For the claims on the hundred and fifty-ninth omnibus

5   objection the debtors were unable to reconcile the blocking

6   numbers provided by the claimants with the blocking numbers

7   provided by the issuing clearing agencies.  The debtors have

8   been able to resolve the objection as to certain claims on the

9   hundred and fifty-ninth omni and have adjourned the objection

10  as to other claims while the parties seek a potential

11  resolution.

12        The debtors are moving on an uncontested basis today

13  as to the balance of the claims on the hundred and fifty-ninth

14  omnibus objection and respectfully request that the Court grant

15  the objection.

16        THE COURT:  The objection is granted on an uncontested

17  basis.

18        MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

19  item number 8, the one hundred and sixtieth omnibus objection

20  to claims, it seeks the modification and allowance of claims

21  for which the parties have reached an agreement with respect to

22  the claim amount, classification and/or debtor entity that is

23  not reflected on the claimant's proof of claim.  The omnibus

24  objection is seeking to modify those claims to conform to the

25  parties' agreement.  The debtors received one formal response

Page 11

1    from Barton Creek Senior Living Center.  The debtors agreed to

2    withdraw the objection as to the Barton Creek claims, and the

3    response from Barton Creek was a reservation of rights.  Per

4    the debtors' agreement the Barton Creek claims are identified

5    as claims for which the objection has been withdrawn on the

6    order that is being submitted today.

7            The debtors also adjourned the objection as to three

8    claims.  The debtors are moving on an uncontested basis as to

9    the balance of the claims on the hundred and sixtieth omnibus

10   objection and respectfully request that the Court grant the

11   objection.

12           THE COURT:  I am prepared to do that.  I just have a

13   question about the disposition of the Barton Creek response.

14   Is the withdrawal of that objection with respect to Barton

15   Creek with or without prejudice?

16           MS. ECKOLS:  It's without prejudice, Your Honor.  It's

17   my understanding that the termination agreement that was signed

18   contained an error in it, and the parties are seeking to

19   correct that, Your Honor.

20           THE COURT:  All right.  It's granted in the manner

21   that you've described on the record.

22           MS. ECKOLS:  Thank you, Your Honor.  Agenda item

23   number 9 is the debtors' one hundred and sixty-first omnibus

24   objection.  It seeks the disallowance and expungement of

25   derivative claims that have been settled between the parties

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 12

```
 1    such that the debtors have no liability for those claims.  The

 2    omnibus objection is seeking to expunge those derivative claims

 3    to effectuate the parties' agreement.  The debtors did not

 4    receive any response to the objection and are moving on an

 5    uncontested basis as to all the claims on said objection.

 6    Accordingly, the debtors respectfully request that the Court

 7    grant the debtors a hundred and sixty-first omnibus objection.

 8         THE COURT:  The hundred and sixty-first omnibus

 9    objection to claims is granted.

10         MS. ECKOLS:  Thank you, Your Honor.  I'm now going to

11    pass the podium to my colleague, Mark Bernstein.

12         THE COURT:  Okay.

13         MR. BERNSTEIN:  Good morning, Your Honor.  Mark

14    Bernstein from Weil for the Lehman Chapter 11 debtors.  The

15    next item on the agenda is the hundred and ninth omnibus

16    objection to claims.  This relates to certain claims relating

17    to RMBS securitizations.  The claims are based on breaches of

18    representations and warranties that the claim acknowledges

19    claimant made when they sold the loans into the

20    securitizations.  This objection is a carryover from a prior

21    hearing.  These particular claims of HSBC as trustee, the

22    objection deadline was extended for these claims.  The

23    objection deadline has now passed.  HSBC no longer opposes the

24    expungement and disallowance of these particular claims, so we

25    request Your Honor grant this hundred and ninth omnibus
```

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 13

1    objection as to the HSBC claims on an uncontested basis.

2           THE COURT:  It's granted as to that claim on an

3    uncontested basis.

4           MR. BERNSTEIN:  Thank you.  The hundred and sixty-

5    third omnibus objection relates to certain derivative contracts

6    where claims were filed against the debtors.  The debtors have

7    reviewed these contracts and determined that either no amounts

8    are owed by the debtors or, in fact, the debtors are actually

9    owed money on these derivative contracts.  There are two

10   responses filed to this objection.  Both of those -- the

11   objection as to both of those responses and both of those

12   claims has been adjourned, and we are going forward on an

13   uncontested basis and respectfully request Your Honor grant the

14   hundred and sixty-third omnibus objection.

15          THE COURT:  One hundred and sixty-third omnibus

16   objection is granted on an uncontested basis.

17          MR. BERNSTEIN:  Thank you, Your Honor.  The hundred

18   and sixty-fourth omnibus objection relates to duplicative

19   claims that were filed based on the Lehman program securities.

20   In some cases these claims are duplicative because the claim

21   was filed by the beneficial holder and also the record holder,

22   or in other cases two claims were filed by the same beneficial

23   holder.  In either case there were no responses filed, and this

24   is going forward on an uncontested basis, and we respectfully

25   request Your Honor granted the hundred and sixty-fourth omnibus

Page 14

1    objection.

2         THE COURT:  A hundred and sixty-fourth omnibus

3    objection is granted on an uncontested basis.

4         MR. BERNSTEIN:  Thank you, Your Honor.  The last

5    uncontested item is the hundred and eighteenth omnibus

6    objection.  This objection seeks to reclassify certain claims

7    filed based on restricted stock units as equity interests

8    against the estate rather than claims.  This also is a

9    carryover item where the debtors have previously extended the

10   objection deadline for the claims remaining on this objection.

11   Parties did not respond prior to the objection deadline, and

12   therefore we're going forward again on an uncontested basis and

13   respectfully request Your Honor grant the hundred and

14   eighteenth omnibus objection.

15        THE COURT:  It's granted on an uncontested basis.

16        MR. BERNSTEIN:  Thank you, Your Honor.  I will turn

17   the podium back over to Erin to handle the contested matters.

18        THE COURT:  All right.

19        MS. ECKOLS:  Your Honor, Erin Eckols again for the

20   debtors.  I will be handling contested agenda items 14 and 15.

21   Agenda item 14 is a carryover item from the seventy-fourth

22   omnibus objection.  Today we are moving solely as to claim

23   34908 by Michael Pinko LTD.  Mr. Pinko filed a response to the

24   objection at docket number 14068.  The omnibus objection should

25   be granted as to Mr. Pinko's claim.  His claim should be

1    reclassified as an equity interest, because the claim

2    unambiguously states that it is based on ownership of the

3    debtor's stock.  Stock is an equity security under the

4    Bankruptcy Code, and, thus, Mr. Pinko has an equity interest

5    in, but not a claim against, the debtors.  Mr. Pinko's response

6    does not set forth any legal argument for objecting to the

7    classification of his proof of claim as equity.  The response

8    is limited to the bare statement that his claim should not be

9    reclassified, and this is not a legally valid basis for

10   opposing the seventy-fourth omnibus objection.

11           Mr. Pinko is a disappointed shareholder in the

12   debtors, and he should be treated as such by having his proof

13   of claim reclassified.  Accordingly, the debtors respectfully

14   request that the Court grant the seventy-fourth omnibus

15   objection as to claim 34908.

16           THE COURT:  Mr. Pinko, are you on the telephone?  Are

17   you there, sir?

18           MR. PINKO:  Yes.  Hello?

19           THE COURT:  Are you Mr. Pinko?

20           MR. PINKO:  Yes, My Honor.  I am Michael Pinko.  I

21   call you from Israel.  First I want to apologize of my not

22   enough English for the Court, and I want to talk about my

23   point.  My point that company like this company cannot be

24   broken.  It's the worst for the investor; it's the worst for

25   everybody.  And this is my point, to one.  Two, I want to ask,

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 16

1   to know the Court, how can be that company, a big company like

2   Lehman Brothers, it's not to -- it was not controlled by the

3   Federal Reserve or the -- or through the public money or they

4   understand.  I cannot -- I cannot understand.  I don't ask the

5   Judge.  I -- I want that my voice to be -- be -- to be listen

6   and some -- in some place.

7          THE COURT:  Okay.  Well, let me just make sure I

8   understand what you're saying.  As to the last point, I'm a

9   bankruptcy judge, and I unable to comment on what the United

10  States government did prior to the failure of Lehman Brothers.

11  That's not something that I can comment on.  And you are

12  entitled to your own opinion with respect to that.

13          As to the objection to your proof of claim, that

14  objection is based upon your being an owner of Lehman

15  securities, equity securities, and, as a result, not having a

16  proper claim as an unsecured creditor.  Do you acknowledge that

17  your claim is based upon an equity interest in the debtors?

18          MR. PINKO:  My Honor, this was my point.  My point

19  that company like Lehman Brothers cannot be closed.  Maybe it's

20  childish, but this company made to be the built -- built again

21  and maybe and then, yes, they will stay off of their legs.

22  This is my point, My Honor.

23          THE COURT:  Yes, but do you acknowledge that you're

24  speaking in your capacity as an equity security holder of

25  Lehman and not as a creditor?

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 17

1          MR. PINKO:  Yes, I understand.  The more I cannot tell

2    you nothing.

3          THE COURT:  Okay.  But you're a stockholder.  You're

4    not a claimant as an unsecured creditor.

5          MR. PINKO:  Okay.

6          THE COURT:  Is that the --

7          MR. PINKO:  Okay.  Thank you.  Thank you very much.

8          THE COURT:  Mr. Pink --

9          MR. PINKO:  Okay.  Thank you very much.

10          THE COURT:  Okay.  Thank you, Mr. Pinko.  I think what

11   I've heard you say, although you haven't said it in direct

12   response to my questions, is that you're upset about the fact

13   that Lehman is in bankruptcy at all, believe that it would be

14   desirable for the company to have been maintained as a going

15   concern, and that you wish, as a result, that your equity might

16   be worth something someday.  That's what I have taken from your

17   remarks.

18          I can't change the facts.  The facts are that Lehman

19   Brothers current is in a bankruptcy case and has been for

20   almost three years.  That bankruptcy case, while under Chapter

21   11, is a liquidation of Lehman's assets not only in the United

22   States but in other jurisdictions where Lehman affiliates are

23   being administered.  Under the circumstances I am going to

24   grant the objection as to your proof of claim inasmuch as that

25   proof of claim is based upon your ownership of stock and not a

1    claim in your capacity as an unsecured creditor.  As to that

2    very technical matter, I am granting the debtors' objection.

3    As to any of your own personal opinions you're, of course,

4    entitled to them and may assert them anyplace you like, but the

5    objection is granted.

6            MR. PINKO:  Thank you, Mr. -- thank you very much for

7    your explanation, and thank you very much.

8            THE COURT:  All right.  Thank you.

9            MR. PINKO:  Thank you.

10           THE COURT:  Now we'll proceed to the next agenda item.

11           MS. ECKOLS:  Thank you, Your Honor.  Agenda item

12   number 15 is the debtors' one hundred and fifty-second omnibus

13   objection.  This is a carryover item from the objection which

14   Your Honor heard and granted at the July 21st claims hearing.

15   The hundred and fifty-second omnibus objection sought to

16   disallow and expunge claims that were amended and superseded by

17   subsequently filed claims by the same creditors for the same

18   alleged obligations.

19           Today the debtors are moving with respect to two

20   claims.  Claim 34834 by Rolf Lautenschlager.  Mr.

21   Lautenschlager's response is docket entry 18521.  We're also

22   moving with respect to claim 1715 by Helge-Christian Schmitt.

23   Mr. Schmitt filed an informal response that the debtors do not

24   believe was docketed.

25           The hundred and fifty-second omnibus objection should

1  be granted as to the Lautenschlager and Schmitt claims.  With

2  respect to Mr. Lautenschlager's claim, 34834, it seeks to

3  recover for a Lehman program security.  Mr. Lautenschlager

4  subsequently filed claim 64469 to provide the required blocking

5  number for that security.  Accordingly, Mr. Lautenschlager's

6  claim 64469 amends his earlier filed claim, 34834.

7       Mr. Lautenschlager's response appears based on the

8  incorrect belief that the debtors are seeking to expunge his

9  later filed claim, 64469.  The crux of Mr. Lautenschlager's

10  response is that he did not realize when he filed his original

11  claim that a blocking number was required.  However, this is

12  irrelevant to the relief the debtors are seeking in the hundred

13  and fifty-second omnibus objection.  The debtors are simply

14  seeking to expunge claim 34834, so the claims register reflects

15  that Mr. Lautenschlager is only prosecuting one claim in these

16  Chapter 11 cases.

17       With respect to Mr. Schmitt's claim, 1715, it is

18  seeking to recover for a certain Lehman Brothers security.  Mr.

19  Schmitt subsequently filed claim 2110 based on that same

20  security.  Although it is not entirely clear from the claims,

21  it appears that Mr. Schmitt filed claim 2110 to provide

22  information regarding the conversion rate for dollars to euros.

23  Mr. Schmitt's response is limited to the bare statement that he

24  opposes the objection and that his claim, quote, "hasn't been

25  discharged by now and is still existing".

08-13555-mg   Doc 19700   Filed 08/26/11   Entered 09/02/11 15:34:38   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 20 of 48

Page 20

1           This is not a legally valid basis for opposing the

2    debtors' a hundred and fifty-second omnibus objection.  Through

3    the hundred and fifty-second omnibus objection the debtors are

4    simply seeking to expunge claim 1715 so the claims register

5    reflects that Mr. Schmitt is only prosecuting one claim in

6    these proceedings.

7           In conclusion, Mr. Lautenschlager and Mr. Schmitt have

8    provided no legally cognizable basis for opposing the hundred

9    and fifty-second omnibus objection, and the debtors

10   respectfully request that it be granted as to claims 34834 and

11   1715.

12          THE COURT:  All right.  Thank you.  Let me ask if

13   either Mr. Lautenschlager or Mr. Schmitt are in court or on the

14   telephone to participate in today's hearing.

15          THE OPERATOR:  No telephonic appearance, Your Honor.

16          THE COURT:  I'm sorry?  I could not hear.

17          THE OPERATOR:  There are no telephonic appearances.

18          THE COURT:  All right.  There are no telephonic

19   appearances.

20          THE OPERATOR:  By those two names, no, Your Honor.

21          THE COURT:  All right.  And who is this speaking?

22          THE OPERATOR:  The CourtCall operator.

23          THE COURT:  All right.  I just wanted the record to

24   reflect who that was.  I've reviewed the written response of

25   Mr. Lautenschlager.  I did not see a response of Mr. Schmitt,

1    but I accept the representation of counsel concerning its

2    content, and I understand the relief that the debtor now seeks

3    to be limited to claim 34834 as to Mr. Lautenschlager and claim

4    1715 as to Mr. Schmitt, and that both of these gentlemen have

5    surviving claims, in the Lautenschlager 64469, in the case of

6    Schmitt 2110.  Under the circumstances the rights of these

7    individuals will not be adversely affected by granting the

8    relief, but, rather, the claims register will be clarified.

9    Under the circumstances the motion is granted.

10          MS. ECKOLS:  Thank you, Your Honor.  And now I'm going

11   to turn over the podium to my colleague, Mark Bernstein, for

12   the final item on today's agenda.

13          THE COURT:  All right.

14          MR. BERNSTEIN:  Your Honor, Mark Bernstein here from

15   Weil on behalf of the Lehman debtors.  The final item on the

16   agenda is a motion of Mark Glasser pursuant to Bankruptcy Rule

17   9006(b) seeking to file a late claim in these cases.  The

18   debtors have objected to this claim and asserted that Mr.

19   Glasser has not satisfied the excusable neglect standard in

20   order to be able to file a late claim and Mr. Glasser has

21   sought to have an evidentiary hearing on this matter, and I

22   believe I see Mr. Glasser in the courtroom today.

23          The debtors are prepared and would like a few minutes

24   to cross-examine Mr. Glasser if he, in fact, does put on direct

25   testimony.

08-13555-mg   Doc 19700   Filed 08/26/11   Entered 09/02/11 15:34:38   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 22 of 48

Page 22

```
 1              THE COURT:  Mr. Glasser, why don't you come forward?

 2              MR. GLASSER:  To the desk?

 3              THE COURT:  Well, you can start by coming to the

 4    podium.  Mr. Glasser, do you intend to present evidence today?

 5              MR. GLASSER:  Yes.

 6              THE COURT:  And do you intend to do that by means of

 7    your own testimony?

 8              MR. GLASSER:  Yes.

 9              THE COURT:  Do you have any documents to present in

10    support of anything you're going to say?

11              MR. GLASSER:  Not with me at this time, but I can

12    provide documentation on part of what I'm going to say.

13              THE COURT:  What documentation would you provide if

14    you were in a position to provide it?

15              MR. GLASSER:  Well, there are a few reasons why I felt

16    that I should be allowed to file late.

17              THE COURT:  But before we get into that, I'm just

18    asking a very narrow question relating to documents.  What

19    documents would you want to present as evidence to support your

20    position that you are an individual who should be allowed to

21    file a late claim?

22              MR. GLASSER:  Well, I'd like to file a document that

23    actually explains why this claim is an unusual claim that's a

24    one-of-a-kind claim.  Secondly, I'd like to file -- I'd like to

25    bring with me a document that shows that I never received
```

Page 23

1    notification of this, because I was also at the same time,

2    moving, and information possibly by affidavit that the office

3    in fact had moved during the same period of time, and made it

4    impossible for me to receive information.  I had no idea that

5    these claims were due.  And I can show that in, like, three or

6    four different ways.

7         THE COURT:  Well, one of the problem -- before we go

8    forward, one of the problems with your now requesting the

9    opportunity to present documents in support of your position is

10   that this is a matter which has been pending for quite a long

11   time.  Your declaration, which I have before me, is dated

12   November 30, 2009 which is about a year and three-quarters ago.

13   The matters relating to your motion to file a late claim have

14   been on the docket repeatedly and have been adjourned.  We

15   don't need to go into the reason --

16        MR. GLASSER:  Severe health problems, including bypass

17   surgery.

18        THE COURT:  I'm sorry about your health issues.  But

19   when last we were together, I think I made it clear that today

20   was the day that we were going to go forward with evidence, and

21   you either needed to get a lawyer, or you're going to proceed

22   on your own.  I take it because you're here without counsel

23   that you intend to proceed on your own.

24        MR. GLASSER:  Yes.  Yes, Your Honor.

25        THE COURT:  Did you make any efforts to obtain

1    counsel?

2            MR. GLASSER:  I talked to a few attorneys.

3            THE COURT:  I don't need to know about those

4    conversations.  I just want to know whether or not after

5    exploring the option of obtaining counsel to represent you, you

6    have elected to proceed on your own.  Is that correct?

7            MR. GLASSER:  Yes.  Yes, Your Honor.

8            THE COURT:  All right.  I'd like to hear from the

9    debtor before we move forward as to the debtors' position with

10   regard to today's contested hearing.  One possible

11   interpretation of Mr. Glasser's informal remarks on the podium

12   would be that he would like an opportunity to present

13   additional evidence after today or would like today's hearing

14   to be put off to that day in the future when he has those

15   documents.  I'd like to know the debtors' position with respect

16   to that matter.

17           MR. BERNSTEIN:  Your Honor, the debtors were prepared

18   to go forward today.  Based on your comments at the last

19   hearing, we had thought this was the day that this would

20   actually go forward.  Having said that, if Mr. Glasser is going

21   to present, I guess, documents at some point in the future, I'm

22   not sure it makes sense to have part of the evidentiary hearing

23   today and part in the future, if he is going to be able to

24   actually provide some documents.

25           So while we're prepared to go forward today, if the --

Page 25

1    any evidence he presents in the future will be considered in

2    making a determination, I would think that you might as well do

3    it all together, maybe at the next claims hearing.

4            THE COURT:  Okay.  Does the debtor wish to take

5    discovery or is that something that you will simply defer until

6    he presents whatever documents he has to present?

7            MR. BERNSTEIN:  The debtors do not wish to take

8    discovery in this matter.

9            THE COURT:  All right.  Mr. Glasser, let me ask you

10   another question, if you can come forward.  I'd like to know if

11   the documents that you have identified are in your possession.

12           MR. GLASSER:  Two of them are, two out of the four.

13           THE COURT:  And I'd like a listing, if you can provide

14   it, of what these documents are, because what I don't want to

15   have is a misunderstanding as to what it is that you would be

16   proposing to offer in evidence.  To the extent that these

17   documents can be stipulated to with the debtor as to their

18   authenticity and their admissibility, that will make it a lot

19   easier for us to proceed.  You don't have counsel, but the

20   rules of evidence still apply.  What are the documents?

21           MR. GLASSER:  Well, two of the documents are my two

22   leases that indicate that I was in transition between

23   apartments at the time and didn't receive my mail.  And I can

24   show what happened and why things got lost.  Those are in my

25   possession.  The part that's not in my possession right now,

1   but I can obtain it fairly quickly, is the part of the document

2   that relates to actually what the original claim is about.  And

3   because of the unusual nature of how it came about, it wasn't

4   clear which category it fell into and it made it very, very

5   difficult to figure out what type of claim I had to produce, or

6   if I had to produce a claim at all.

7           Thirdly, at the same time that I was involved in

8   moving personally, we moved offices as well.  Lehman had --

9   Barclays had no big -- Barclays moved our offices from one

10  place to another.  So I wasn't even in contact with other

11  people around me.  I mean, we were sort of isolated in the new

12  office and the date came up very quickly, and truly I found out

13  about this about a month after.  So I can produce that as well.

14          THE COURT:  What's the document you would produce in

15  reference to --

16          MR. GLASSER:  In that case, I would produce --

17          THE COURT:  Let me just finish what I'm saying; I'm in

18  the middle of a sentence.  What is the document that you would

19  produce in reference to your being in a remote location?

20          MR. GLASSER:  I'll get a floor plan.  I'll get the

21  floor plan from Barclays where we were put and what happened.

22          THE COURT:  I don't need a document, nor do I think it

23  would be useful evidence.  Your testimony concerning your

24  alleged isolation will be sufficient and will be subject to

25  cross-examination on grounds of credibility.  I don't know the

08-13555-mg    Doc 19700    Filed 08/26/11    Entered 09/02/11 15:34:38    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 27 of 48

Page 27

1    date that you allegedly were relocated.  I don't know the

2    people who moved with you.  I don't know the group that moved.

3    I don't know the nature of the communications that took place

4    between that group and others at Barclays.  I don't know the

5    nature of e-mail contact that you had with Barclays' employees.

6         Physical location is a matter of relative unimportance

7    when it comes to information concerning this case, in light of

8    the global nature of the case.  So if it's someone who was as

9    close to Lehman as you were, to claim ignorance as to a global

10   bankruptcy case that had a date of published importance that

11   everybody in the world who was involved in the Lehman case knew

12   about, and for you to say you knew nothing about it, is

13   extraordinary and it goes to your credibility, not to

14   documents.

15        MR. GLASSER:  No, I didn't say that I didn't know that

16   something had to be done.  Actually in my case --

17        THE COURT:  If you knew that something had to be done,

18   you have just acknowledged that you knew about the bar date or

19   the inquiry notice and should have done more to find this out.

20   But I'm not prejudging your case.  I'm telling you that if you

21   look at the cases I've already decided in this area, and if you

22   knew something about the excusable neglect standard in the

23   Second Circuit, you would realize that you have an almost

24   impossible burden.

25        MR. GLASSER:  My attorney before he resigned from the

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 28

1    case several months ago told me that one of the things that

2    this case would revolve around was the fact that it was

3    definitely not a very credible argument that you would not know

4    from your colleagues what was going on.  And he said -- he

5    asked me at that time to focus on that as one of the things

6    that I should look at in this case.  If I'm given the chance,

7    I'll do the best I can to produce the documents that you need

8    to decide the case in my favor.

9         THE COURT:  Well, the only reason that we're talking

10   about this at all -- otherwise you would you have been on the

11   stand and sworn as a witness and exposed to cross-examination

12   as to your credibility.

13        MR. GLASSER:  Okay.

14        THE COURT:  As you've just acknowledged, this is much

15   more a case about your personal credibility than it is about

16   pieces of paper.  But to the extent that there are documents

17   that you need to support your case and you don't have them with

18   you, I want to give you that opportunity and the debtor seems

19   not to be objecting to an adjournment to give you that

20   opportunity.

21        MR. GLASSER:  Right.

22        THE COURT:  But you've known about this for some time.

23   You've had counsel representing you until the time of counsel's

24   withdrawal.  Presumably, you've had an opportunity to discuss

25   issues relating to your claim with counsel.  I don't wish to

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 29

1    know anything about those conversations, nor should you talk

2    about them unless you choose to waive privilege.  And that's

3    your -- yours to waive if you choose to.

4         Does the debtor wish to say anything about all this?

5         MR. BERNSTEIN:  Yeah.  One comment, Your Honor.  Now

6    having heard the documents that Mr. Glasser is offeri -- or may

7    offer in the future, if it really -- if the documents are his

8    leases and show his -- the residence that he lived at at

9    different times, that, I don't think, changes the debtors'

10   position on this and would take Mr. Glasser's representation

11   about this, where he lived.  And if that's all he's going to

12   produce, we would then be prepared to go forward today and --

13   with questioning.  Because I don't think that affects our

14   questioning or does change the situation.

15        THE COURT:  Fine.

16        MR. GLASSER:  In addition to that, there's one

17   significant thing that I do want to produce, the thing that

18   caused the confusion.  It's what the claim arose from.  It's

19   not clear whether this arose from compensation or that the

20   claim arose from 200 and some-odd thousand dollars was taken

21   from me accidentally and it was promised to me the following

22   month, they made a mistake in terms of -- I could go into the

23   compensation and I can certainly prove that.  it was very, very

24   difficult to find out or talk to anybody about where this claim

25   or how this claim should be filed because it wasn't clear which

Page 30

1    part of the bankruptcy procedure this thing should have been --

2    they took additional compensation from me, money that should

3    have been paid to me in cash and they converted it to

4    restricted stock units incorrectly and then, then later on, you

5    know, when it was supposed to be paid in Sep -- in the

6    following month, intervening, there was the bankruptcy.

7         And so it was very, very confusing as to what should

8    be done with this and how this thing should have been handled.

9    And that's one of the things that I wanted to produce.

10        THE COURT:  Well, you can certainly say what you want

11   to say about the kind of claim you would bring or what the

12   claim is based on, but that's not what's really before the

13   Court.  The issue before the Court is whether you should be

14   given the permission to file a late claim, whatever that claim

15   may consist of.  So, I don't know that we need those documents

16   in order to get to the question of excusable neglect.  The

17   excusable neglect standard would apply regardless of the nature

18   of the claim and regardless of how confused you were at the

19   time about the claim.

20        I know generally what you're talking about because I

21   have your declaration from November 30th, 2009 before me, which

22   makes some reference to these issues.  Your declaration,

23   presumably, was made based upon your personal knowledge at the

24   time it was made and will be the subject for cross-examination.

25   Whether or not debtors' counsel chooses to cross-examine you on

Page 31

1    that is, frankly, up to them, but I may ask you some questions

2    about this, too.  I don't think we need documents in order to

3    get into that question.

4           The real question here is what cause do you assert for

5    not having filed a timely claim.  That's the issue.

6           MR. GLASSER:  Do you want a response or --

7           THE COURT:  No, I think we're going to move into a

8    much more formal phase because, based upon this discussion

9    about the documents, the documents themselves seem not to be

10   particularly pertinent to the issue at hand.

11          So, if you're ready to go forward, you can become a

12   witness.

13          MR. GLASSER:  Okay.

14          THE COURT:  Stand over there and please raise your

15   right hand.

16      (Witness sworn)

17          THE COURT:  Be seated please and be sure to peak into

18   the microphone which is at the table.

19          Now, one of the issues here that makes this a little

20   bit unusual is that Mr. Glasser doesn't have counsel to ask him

21   questions on direct nor is direct examination being presented

22   by means of a formal declaration unless Mr. Glasser's

23   declaration of November 30, 2009 is treated as the functional

24   equivalent of his direct examination testimony.

25          So, before we proceed with what may be cross-

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 32

1    examination, I'm going to ask Mr. Glasser if he has a copy of

2    his declaration.

3            THE WITNESS:  No, I don't.

4            THE COURT:  I'm going to -- do you have an extra copy?

5            MR. BERNSTEIN:  I do.

6            THE COURT:  We're going to hand you a copy of the

7    declaration that was submitted in November of 2009 and I'm

8    going to ask you to read that and to confirm whether or not

9    this is, for all practical purposes, a recorded statement of

10   the testimony that you would give as a live witness today.

11           THE WITNESS:  There's a few things that are slightly

12   different.

13           THE COURT:  In what respect would you modify the

14   statements made in your declaration?

15           THE WITNESS:  Statement number 8; I didn't move my

16   residence in 111 Fourth Avenue.  Rather, I moved it from 117

17   East 57th Street over to Fourth Avenue as my legal residence

18   for tax purposes.  I own that apartment.  And I moved from 117

19   East 57th to 200 East 65th.  I mean, that is so shown.  But I

20   wasn't living -- you know, I wasn't at 111 Fourth Ave, you

21   know, as a regular address.  I did go there and I did receive

22   some mail there, but I didn't -- I wanted to clarify that

23   confusion.

24           The second thing is that number 4; "Since that time,

25   misallocation resulted in my receiving approximately 200,000

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 33

1   less in cash and I should have received" -- that was reduced to

2   100,000 because Barclays picked up half of it after I remained

3   with Barclays for one year.  In other words, in September of

4   2010, I received half of that.

5          THE COURT:  All right.  With those clarifications, are

6   you --

7          THE WITNESS:  The claim isn't as large as --

8          THE COURT:  Fine.  With those clarifications, do you

9   agree with the statements made in your declaration from

10  November of 2009?

11         THE WITNESS:  Yes.

12         THE COURT:  Are you prepared to treat the declaration

13  as the equivalent of your direct testimony?

14         THE WITNESS:  Well, with regard to the confusion in

15  number -- with the exception of the regard to confusion in

16  number 8 and the fact that the claim's been reduced in half in

17  number 4, yes.

18         THE COURT:  Fine.  Let's treat this as Mr. Glasser's

19  direct testimony and you may now cross-examine.

20         MR. BERNSTEIN:  Thank you, Your Honor.

21  CROSS-EXAMINATION

22  BY MR. BERNSTEIN:

23  Q.  Good morning, Mr. Glasser.  Thank you for appearing here

24  today.

25        We're here today because you filed a motion seeking

1    authority to file a claim after the bar date, is that correct?

2    A.   Yes.

3    Q.   And the claim you're seeking to file is in the

4    approximately amount of, as you just clarified, about 100,000

5    dollars?

6    A.   Yes.

7    Q.   And that's a material amount of money, correct?

8    A.   Yes.

9    Q.   You used to be an employee of Lehman Brothers?

10   A.   Yes.

11   Q.   When did you start working at Lehman?

12   A.   2006.

13   Q.   What was your position there?

14   A.   Director.

15   Q.   In what area?  What were your -- what was the --

16   A.   Broker --

17   Q.   -- job -- broker?

18        When did you leave Lehman?

19   A.   They went bankruptcy in 2008 and then Lehman was gone.

20   Lehman left me.

21   Q.   Right, right, right.  Right after the bankruptcy.  So you

22   were at Lehman a little over two years?

23   A.   I would say -- just about two years.  I believe I joined

24   Lehman in October of 2006, I believe.  I'd have to look it up.

25   Q.   That's okay.  That's a good amount of time.  You must have

Page 35

1   developed some relationships or some friendships with some of

2   your colleagues at Lehman?  Is that right?

3   A.    Some.

4   Q.    And along with the more than 10,000 other employees that

5   worked at Lehman, you went over to Barclays with that group of

6   employees right after the bankruptcy?  Right?

7   A.    Yes.

8   Q.    Some of the people that you knew at Lehman went over to

9   Barclays with you?

10  A.    I didn't know many people at Lehman.  I knew people in

11  management, I knew very few other brokers at Lehman.

12  Q.    You were aware that Lehman was involved in a bankruptcy

13  case though, right?

14  A.    Most definitely.

15  Q.    And the Lehman case was all over in the news in -- back in

16  2008.  Did you ever discuss the Lehman case with any of your

17  former colleagues or anyone at Barclays?

18  A.    Mostly my branch manager.  A couple of the other

19  employees -- when the bankruptcy happened, everything was very

20  confusing.  A lot of people didn't know what to make of it and

21  I really didn't spend a lot of time discussing it with a lot of

22  those people.

23  Q.    Did you ever read about the case in the newspapers?

24  A.    Sure.  Yes.

25  Q.    Did you ever go on the internet and try to read about the

1   case online and try to see what was happening?

2   A.   Not very much.

3   Q.   What is your role at Barclays now?

4   A.   Director.

5   Q.   Same?  As a --

6   A.   Same --

7   Q.   -- broker, as well?

8   A.   -- same, yes.

9   Q.   So in a normal day at Barclays, as you said, you -- do you

10   come interact -- do you interact with other former Lehman

11   employees?  I think you mentioned your branch manager?

12   A.   My branch manager, sales manager, people who work with me,

13   a few of the other brokers that I know very well.  Apart

14   from -- unless I have specific business to do with other

15   brokers, there are very few other ones that I interact with

16   and -- five, six.

17   Q.   As a broker, is it part of your job to stay up on news and

18   other financial events occurring in the world?

19   A.   Specifically the ones related to the stuff that I do with

20   my clients, yes.

21   Q.   And how do you stay up to date on those events?  You read

22   the Times?  New York Times?

23   A.   I read the Times, I read -- not the whole thing, I read

24   the Wall Street Journal, I read The Post, I look at Bloomberg

25   News --

08-13555-mg   Doc 19700   Filed 08/26/11   Entered 09/02/11 15:34:38   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 37 of 48

Page 37

```
 1    A.    How about the Financial Times, you ever read that?

 2    A.    Very rarely.

 3    Q.    Mr. Glasser, in your affidavit, as you just clarified

 4    today, you used to live at 117 East 57th Street.  Is that

 5    correct?

 6    A.    Yes.

 7    Q.    And I assume you received mail at that address.  Is that

 8    correct?

 9    A.    Yes, I did.

10    Q.    When did you move from that address?  Approximately.

11    A.    It's a complicated story, but I still had the apartment

12    until September of 2009, as per an agreement within had with

13    the landlord.  But I moved from the address or began to move

14    from the address in February of '09, when I took the new lease

15    on 65th Street.

16          I was basically in between two residences.

17    Q.    And when you moved to -- I'm sorry; what street was it?

18    65th Street?

19    A.    65th Street.

20    Q.    When you moved to 65th Street, I -- did you continue to

21    receive your mail at that address?

22    A.    I received some mail there as well.

23    Q.    Did you -- bills, newspapers, magazines --

24    A.    Some bills.  Some bills, I was automatically billed for.

25    Some bills I received via internet.
```

Page 38

1    A.    Did you contact any of the -- the cable company, the

2    electric companies, let them know that you had moved?

3    A.    Cable company was typically paid for -- at 65th Street,

4    the cable company was paid for, I believe, by their retainer --

5    it was a sublet and it was -- I was renting the apartment from

6    someone.  So, some of the bills were paid for directly.

7    Q.    Sure.  But other newspapers or other magazines, did you

8    contact the publishers and let them know that you had moved and

9    they should deliver it to the new address?

10   A.    Newspapers, yes.

11   Q.    Did you ever contact Lehman to tell them that you had

12   moved?

13   A.    Sure.  I mean, I would've told them that that was not the

14   address that I -- I always had an address that I received mail.

15   For some reason, in the conclusion, I didn't get the actual

16   mail.  I don't know where it went, I don't know what happened

17   to it, but I didn't get it.

18   Q.    But after the bankruptcy -- I'm not sure I understood your

19   answer.  After the bankruptcy, did you contact Lehman to tell

20   them that you had moved?

21   A.    After the bankruptcy, no.  After the bankruptcy, it would

22   have been Barclays.  And they always had a legal address for

23   me.

24   Q.    Did you receive any information from Lehman following the

25   bankruptcy?  Did you get notice of the bankruptcy at the 57th

08-13555-mg   Doc 19700   Filed 08/26/11   Entered 09/02/11 15:34:38   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 39 of 48

Page 39

1    Street address?

2    A.    I'm sure that I did.  I'm sure that I did.

3    Q.    Thank you for your time, Mr. Glasser; that's all the

4    questions I have for you today.

5          THE COURT:  Now, this is an unusual proceeding, Mr.

6    Glasser, but on the basis of anything that you've been asked by

7    counsel for Lehman and different answers that you've made, is

8    there anything more that you wish to add?

9          THE WITNESS:  No, I -- well, other than the fact that

10   I really did not know that -- maybe it was my fault, but I

11   really did not see the documents that said that I had to file

12   this by a certain date.  And maybe that was because of my

13   problem was already starting, concerning some health problems

14   which led to my bypass surgery the following year and it's

15   entirely possible that mail was sent to one or more of the

16   addresses, but I just never actually remember reading anything.

17         THE COURT:  Let me ask you a couple questions, if I

18   may.  There's a period from February of 2009 through September

19   of 2009 when you have access to two apartments, correct?

20         THE WITNESS:  Actually three, yes.

21         THE COURT:  Okay, well, I'm dealing with the two that

22   we're focused on.  One of those apartments is the one where you

23   had been living which is at 117 East 57th Street, and the new

24   apartment, the sublet that you referenced in your testimony,

25   that's 200 East 65th Street.  Those apartments are

 1    approximately eight blocks apart.

 2             THE WITNESS:  Right.

 3             THE COURT:  Did you, on a regular basis, go back and

 4    forth between the two apartments because they're effectively in

 5    the same neighborhood to deal with matters that related to your

 6    occupancy in those two apartments?

 7             THE WITNESS:  Not on a regular basis.  Well, biweekly,

 8    let's say.

 9             THE COURT:  Okay, so by biweekly, do you mean a couple

10    of times a month, at least?

11             THE WITNESS:  Couple of times a month.

12             THE COURT:  And when you went from the 65th Street

13    apartment to the apartment at 117 East 57th Street, did you, on

14    occasion, pick up accumulated mail?

15             THE WITNESS:  Yes, I did.

16             THE COURT:  All right, thank you.  Those are my

17    questions.

18             Now, on the basis of the questions that I've asked,

19    does the debtor have any questions to ask?

20             MR. BERNSTEIN:  I have no further questions.

21             THE COURT:  All right.

22             Is there anything more that you wish to say, Mr.

23    Glasser?

24             MR. GLASSER:  No.

25             THE COURT:  All right, thank you.  You're excused.

1         Now, if Mr. Glasser had counsel, one of the things

2   that would happen now is that I would ask the parties to make a

3   brief argument as to how the evidence that has been presented

4   either supports the relief which is being sought or

5   demonstrates that the relief should not be granted.

6         Do you wish to make an argument?

7         MR. BERNSTEIN:  Sure, yes, Your Honor.  I'll make a

8   couple brief statements.

9         The debtors have an affidavit of service that they

10  delivered notice of the bar date -- bar date notice to Mr.

11  Glasser at the 117 East 57th Street address.  Mr. Glasser has

12  conceded that he had access to that apartment and did receive

13  mail at that address during the period of time when the notice

14  was delivered.  Therefore, the actual notice was provided to

15  Mr. Glasser at the address that he at least had access to.

16        In addition, the notice of the bar date was published

17  in The Times, The Wall Street Journal which Mr. Glasser

18  conceded that he reads on a regular basis as part of his job,

19  and Mr. Glasser has conceded that he, at times, speaks with

20  former Lehman employees while working at Barclays and certainly

21  had an opportunity to discuss the Lehman case and whether or

22  not the parties were filing claims against Lehman, what they

23  were doing about their various claims.

24        The debtors' position is that Mr. Glasser has not

25  satisfied the excusable neglect standard.  Any reason that he

Page 42

1   would not file a claim was solely as a result of his own

2   actions or inactions.  He certainly had sufficient notice of

3   the case and the goings on and the ability to at least inquire

4   as to whether or not and when he had to file a claim.

5   Therefore, the debtors do not believe he should be granted

6   relief pursuant to 9006(b).

7           THE COURT:  Okay, Mr. Glasser, do you have anything

8   you wish to say at this point as to why you should be given the

9   opportunity to file a late claim.  If you have anything -- you

10  don't have to say anything, but if you wish to say anything,

11  this is your time.

12          MR. GLASSER:  I actually note it's quite possible that

13  something was delivered to that address.  I honestly don't

14  remember receiving it or seeing it.  Certainly if I had, and

15  read it, I certainly would have done something about it.  The

16  way I actually found out about the bar date was that I happened

17  to walk into somebody's office who was one of the executives of

18  Lehman Brothers and moved over to Barclays, and he told me that

19  the bar date had already passed.  If it's deemed that it's my

20  fault, then I have nothing to say.  I mean, it's just -- that's

21  the way it is and I'll suffer the consequences.

22          THE COURT:  Okay, I understand your position.  Thank

23  you, Mr. Glasser.

24          Based upon the declaration of Mr. Glasser, which as

25  modified, constitutes his direct testimony and the cross-

Page 43

1    examination by debtors' counsel, it is clear to the Court that

2    Mr. Glasser does not have an excuse for why he did not receive

3    actual notice of the bar date and has, in a very candid way,

4    acknowledged that it may be because of his own failure to have

5    either noticed the mailing or to have picked it up at the

6    address at 117 East 57th Street where he acknowledges he

7    received mail.  While this is an unusual circumstance, one of

8    the quirks of Manhattan life is that 65th Street and 57th

9    Street represent, effectively, the same neighborhood, and it's

10   not as if he moved to Santa Monica, California.  This was a

11   move up the street.

12        For that reason, even though he was not physically

13   present in the apartment at 117 East 57th Street throughout the

14   relevant period, he did have regular access to that unit and

15   was able to collect, at his personal convenience, mail that

16   accumulated there.  Under the circumstances, I do not believe

17   that Mr. Glasser has satisfied the rather rigid standards that

18   are applicable in the Second Circuit for demonstrating

19   excusable neglect in the failure to comply with a conspicuous,

20   clearly-published bar date.

21        I make no findings one way or the other as to whether

22   Mr. Glasser should have known more about the bar date as a

23   result of his being an employee of Barclays, and circumstances

24   surrounding where he worked and his relationship with other

25   brokers really doesn't change the result.  In fact, the

Page 44

1   statement made that he discovered about the bar date from a

2   fellow employee but it was too late demonstrates that employees

3   did talk to one another.  It's just in this particular

4   circumstance, the conversation took place after the bar date,

5   rather than before the bar date.

6         The real issue is not whether he could have found out

7   or whether notice of the bar date was properly sent by the

8   debtor to a residence address for this individual where he had

9   access to the mail, and in fact, he did.  Under the

10  circumstances, excusable neglect has not been shown under the

11  Pioneer standard, and the debtor is sustained in its position.

12        Mr. Glasser, you should at least feel some

13  satisfaction that you were paid the other 100,000, that you are

14  dealing with less money than you started with.

15        I will entertain an order submitted by the debtor

16  reflecting the results of today's hearing.  And unless there is

17  anything more for today, we're adjourned.

18        Fine, we're adjourned.

19     (Whereupon these proceedings were concluded at 11:05 AM)

20

21

22

23

24

25

Page 45

1

2                         **I N D E X**

3

4    WITNESS                EXAMINATION BY        PAGE

5    Mark Glasser           Mr. Bernstein         33

6

7                              RULINGS

8                                                 Page   Line

9    Granting of Debtors' Sixty-Seventh           6      23

10   Omnibus Objection to Claims

11

12   Granting of Debtors' One Hundred Fifty-Fifth  7      8

13   Omnibus Objection to Claims as to as to Blue

14   Angel Claims

15

16   Granting of Debtors' One Hundred Sixty-Second 8      4

17   Omnibus Objection to Claims

18

19   Granting of Debtors' One Hundred Fifty-First  8      23

20   Omnibus Objection to Claims as to Claim 30569

21

22   Granting of Debtors' One Hundred Fifty-Seventh 9     8

23   Omnibus Objection to Claims

24

25

Page 46

1

2    Granting of Debtors' One Hundred Fifty-Eighth      9    20

3    Omnibus Objection to Claims

4

5    Granting of Debtors' One Hundred Fifty-Ninth      10    16

6    Omnibus Objection to Claims

7

8    Granting of Debtors' One Hundred Sixtieth         11    20

9    Omnibus Objection to Claims as Described

10   on the Record

11

12   Granting of Debtors' One Hundred Sixty-First      12     9

13   Omnibus Objection to Claims

14

15   Granting of Debtors' One Hundred Ninth            13     2

16   Omnibus Objection to Claims as to the HSBC

17   Claim

18

19   Granting of Debtors' One Hundred Sixty-Third      13    16

20   Omnibus Objection to Claims

21

22   Granting of Debtors' One Hundred Sixty-Fourth     14     3

23   Omnibus Objection to Claims

24

25

Page 47

1

2    Granting of Debtors' One Hundred Eighteenth      14    15

3    Omnibus Objection to Claims

4

5    Granting of Debtors' Seventy-Fourth              18     2

6    Omnibus Objection to Claims

7

8    Granting of Debtors' One Hundred Fifty-Second    21     9

9    Omnibus Objection to Claims

10

11   Denial of First Motion of Mark Glasser to        44    11

12   Extend Time for Claim

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1

2                              C E R T I F I C A T I O N

3

4     I, Hana Copperman, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7         Hana                    Digitally signed by Hana
                                   Copperman
                                   DN: cn=Hana Copperman, o, ou,
          Copperman               email=digital1@veritext.com,
8                                  c=US
                                   Date: 2011.08.26 13:54:36 -04'00'

9     HANA COPPERMAN

10    AAERT Certified Electronic Transcriber CET**D 487

11    Also transcribed by:

12    Sara Davis, AAERT Certified Electronic Transcriber CET**D-567

13    Karen Schiffmiller, AAERT Certified Electronic Transcriber

14    CET**D-570

15    Dena Page

16

17    Veritext

18    200 Old Country Road

19    Suite 580

20    Mineola, NY 11501

21

22    Date:  August 26, 2011

23

24

25