Presentment Date and Time: September 9, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: September 8, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): September 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

*Counsel for the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
In re                                                   :   Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,                  :   08-13555 (JMP)
                                                        :
          Debtors.                                      :   (Jointly Administered)
------------------------------------------------------- x
```

### NOTICE OF PRESENTMENT OF MOTION OF LEHMAN COMMERCIAL PAPER INC. PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF THAT CERTAIN SETTLEMENT AGREEMENT BY AND AMONG LBREP/L-SUNCAL MCALLISTER RANCH, LLC, LEHMAN COMMERCIAL PAPER, INC., GRAMERCY WAREHOUSE FUNDING I, LLC, SQUARE MILE STRUCTURED FINANCE (ONE), LLC, SQUARE MILE STRUCTURED FINANCE (TWO), LLC, FIDELITY NATIONAL TITLE INSURANCE COMPANY, AMERICAN TITLE INSURANCE COMPANY, MCALLISTER RANCH IRRIGATION DISTRICT, AND SUPERIOR PIPELINES, INC.

**PLEASE TAKE NOTICE** that the undersigned will present the annexed motion

(the "Motion") of Lehman Commercial Paper Inc. ("LCPI", together with its affiliated debtors in

the above-referenced chapter 11 cases, the "Debtors") pursuant to section 105(a) of the

Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of

that certain settlement agreement by and among LBREP/L-Suncal McAllister Ranch, LLC,

LCPI, Fidelity National Title Insurance Company, First American Title Insurance Company, McAllister Ranch Irrigation District, and Superior Pipelines, Inc., all as more fully described in the Motion, to the Honorable James M. Peck, United States Bankruptcy Judge, for approval and signature on **September 9, 2011 at 12:00 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77027, Attn: Alfredo R. Pérez, Esq.; (iii) King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, Attn: Arthur Steinberg, Esq., attorneys for LCPI; (iv) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan R. Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (vi) Day Pitney LLP, One Audubon Street, 6th Floor, New Haven, CT 06511, Attn: Joshua W. Cohen, attorneys for Fidelity and First American; (vii) Miller Starr Regalia, 1331

North California Boulevard, 5th Floor, Walnut Creek, CA 94596, Attn: Tara Castro Narayanan, Esq., attorneys for Fidelity and First American, and (iix) Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, 650 Town Center Drive, Suite 950, Costa Mesa, CA 92626, Attn: Robert S. Marticello, Esq., attorneys for the liquidating trustee of the SunCal Debtors, so as to be filed and received no later than **September 8, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

        **PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **September 14, 2011, at 10:00 a.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408. If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 2, 2011
     New York, New York

                      /s/ Alfredo R. Pérez
                      Alfredo R. Pérez
                      WEIL, GOTSHAL & MANGES LLP
                      700 Louisiana Street, Suite 1600
                      Houston, Texas 77027
                      Telephone: (713) 546-5000
                      Facsimile: (713) 224-9511

                      KING & SPALDING LLP
                      1185 Avenue of the Americas
                      New York, New York 10036
                      Telephone: (212) 556-2100
                      Facsimile: (212) 556-2222
                      Arthur Steinberg

                      *Counsel for the Debtors*
                      *and Debtors-in-Possession*

Presentment Date and Time: September 9, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline: September 8, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): September 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

*Counsel for the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

**In re**                                            :    **Chapter 11 Case No.**
                                                     :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**           :    **08-13555 (JMP)**
                                                     :
          **Debtors.**                               :    **(Jointly Administered)**

---------------------------------------------------------------- x

**MOTION OF LEHMAN COMMERCIAL PAPER INC.
PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR
APPROVAL OF THAT CERTAIN SETTLEMENT AGREEMENT BY AND
AMONG LBREP/L-SUNCAL MCALLISTER RANCH, LLC, LEHMAN
COMMERCIAL PAPER, INC., FIDELITY NATIONAL TITLE INSURANCE
COMPANY, FIRST AMERICAN TITLE INSURANCE COMPANY, MCALLISTER
RANCH IRRIGATION DISTRICT, AND SUPERIOR PIPELINES, INC.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

          Lehman Commercial Paper Inc. ("LCPI," together with its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors", and collectively with their non-debtor affiliates,

"Lehman"), files this Motion pursuant to Section 105 of Title 11 of the United States Code

("Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and respectfully represents:

## Preliminary Statement

1.      By this Motion, LCPI seeks the Court's approval of a settlement of the disputes between (a) LBREP/L-SunCal McAllister Ranch, LLC ("McAllister"),[1] (b) Lehman Commercial Paper, Inc. ("LCPI"), as administrative agent for the first-position secured lenders on the Property (the "First Lien Lenders"), (c) Fidelity National Title Insurance Company ("Fidelity"), (d) First American Title Insurance Company ("First American", and together with Fidelity, the "Insurers"), (e) McAllister Ranch Irrigation District ("MRID"), and (f) Superior Pipelines, Inc. ("Superior," and together with McAllister, LCPI, the Insurers and MRID, the "Parties") with respect to Superior's adversary proceeding pending in the SunCal Court under adversary proceeding no. 09-1318-ES (the "Superior Lawsuit") against McAllister, LCPI, Gramercy Warehouse Funding I, LLC ("Gramercy"), as administrative agent for the second-position secured lenders on the Property (the "Second Lien Lenders"), Square Mile Structured Debt (One), LLC and Square Mile Structured Debt (Two), LLC (collectively "Square Mile"), as administrative agent for the third-position secured lenders on the Property (the "Third Lien Lenders") and MRID (collectively, as defendants to the Superior Lawsuit, the "Defendants") concerning the validity and priority of Superior's asserted liens against the real estate development project commonly known as "McAllister Ranch" and certain personal property of McAllister (collectively, the "Property").

---

[1] McAllister is a debtor pursuant to chapter 11 of the Bankruptcy Code, whose bankruptcy case is being jointly administered, along with the bankruptcy cases of LBREP/L-SunCal Master I, LLC, LBREP/L-SunCal McSweeny Farms, LLC and LBREP/L-SunCal Summerwind Ranch, LLC (collectively with McAllister, the "SunCal Debtors"), under case number 08-15588 in the United States Bankruptcy Court for the Central District of California (the "SunCal Court").

2.    The terms of the settlement among the Parties are embodied in the Agreement for Settlement of Contractor Claims With Mutual Releases and Covenants Not to Sue (the "Agreement"), attached hereto as Exhibit 1.  Pursuant to the Agreement, Superior will receive a payment of $1,800,000 from the Insurers[2] and MRID in exchange for Superior's consent to the dismissal of the Superior Lawsuit and prior-filed state law actions, and the assignment of Superior's claims and secured interests to the Insurers.  The Parties are also seeking approval of the Agreement in the SunCal Court.  Approval of both this Court and the SunCal Court is a condition to the effectiveness of the Agreement.

3.    As discussed in further detail below, in the Superior Lawsuit, Superior seeks, inter alia, the recovery of approximately $7,400,000 in damages and a determination that its asserted liens against the Property are senior to the other interests asserted therein.  The Defendants and the Insurers[3] dispute Superior's contentions and raise several defenses and counterclaims, including that Superior's liens are contractually subordinated to LCPI's lien and, in the alternative, that LCPI's lien is equitably subrogated to its affiliate's prior, and senior, lien interest on the Property.  Superior has vigorously defended its claims, and the Parties have spent considerable time, money, and effort litigating the Superior Lawsuit, including engaging in mediation.

4.    LCPI believes that the Agreement is a fair and reasonable compromise, and that its approval is in the best interests of LCPI's estate.  The Agreement resolves the pending litigation between the Parties, and its approval will save LCPI's bankruptcy estate substantial administrative expense, will eliminate the risk associated with litigation, and will allow LCPI

---

[2] Pursuant to a separate agreement being negotiated among the Trustee, LCPI and the Insurers, a portion of the proceeds from the sale of the Property in this amount will be set aside pending resolution of certain other disputes between LCPI and the Insurers.

[3] As explained in further detail below, the Insurers defended the Lenders' interests in the Superior Lawsuit.

and the Insurers to proceed with the resolution of other mechanic's lien claims asserted against the Property and hasten the distribution of the proceeds from the sale of the Property to, among others, LCPI for the benefit of LCPI's bankruptcy estate and creditors.  LCPI believes that the concessions made by it under the Agreement are reasonable in view of the benefits derived therefrom.

### Relief Requested

5.      By this Motion, LCPI seeks entry of an order pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Agreement and authorizing LCPI's entry into and consummation of the settlement and the transactions contemplated therein.

### Background

6.      Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the Bankruptcy Code. On October 5, 2008, LCPI commenced its voluntary case under the Bankruptcy Code. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for the Southern District of New York ( "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code ( "Creditors' Committee").

8.      On September 1, 2011, the Debtors filed a third amended chapter 11 plan and disclosure statement [ECF Nos. 19627 and 19629].

## Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

10.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these Chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications filed on September 15, 2008 [ECF No. 2].

## Jurisdiction

11.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## History of the SunCal Bankruptcy Cases

12.      On September 10 and 11, 2008, (the "SunCal Petition Dates"), involuntary petitions under Chapter 11 of the Bankruptcy Code were filed against the SunCal Debtors.  On April 22, 2011, the SunCal Court entered an order confirming the Second Amended Chapter 11 Plan (Dated April 21, 2011) (the "SunCal Plan") for the SunCal Debtors and a separate order approving the sale of the SunCal Debtors' properties to PVCO Land Holdings, LLC ("PVCO"). On May 23, 2011, PVCO completed its acquisition of the SunCal Debtors' properties.  Alfred H. Siegel, who was the SunCal Debtors' duly-appointed chapter 11 trustee prior to confirmation of

the SunCal Plan, now serves as the liquidating trustee (the "Liquidating Trustee") of the post-confirmation liquidating trust created on the effective date of the SunCal Plan.

**Prepetition Deeds of Trust and State Court Action**

13.    On January 23, 2006, a deed of trust (the "First Deed of Trust") was recorded in the County of Kern, State of California against the Property for the benefit of LCPI, as administrative agent for the First Lien Lenders, to secure a loan in the principal amount of $235,000,000.  Fidelity issued a title insurance policy to LCPI with respect to this loan (the "First Loan Policy"),[4] and First American agreed to provide co-insurance with respect to this policy.[5]

14.    Beginning in April 2006, Superior entered into eight written agreements with McAllister, each titled "Construction Contract with Liability Wrap," to provide labor, services, materials, and equipment for improvement of the Property (the "Written Contracts").  During 2007, Superior also allegedly entered into an oral agreement with McAllister to provide certain materials for enclosure of the James Canal on the Property (the "Oral Contract", and together with the Written Contracts, the "Contracts").

15.    On February 14, 2008, and April 2, 2008, Superior recorded mechanic's lien claims against the Property in the total principal amount of $6,698,577.42 (collectively, "Mechanic's Liens").  On April 14, 2008, Superior commenced an action in the Superior Court of Kern County, California, titled *Superior Pipelines, Inc. v. LBREP/L-SunCal McAllister Ranch,*

---

[4] Also on January 23, 2006, a deed of trust was recorded in the County of Kern, State of California against the Property for the benefit of LCPI, as administrative agent for Second Lien Lenders, to secure a loan in the principal amount of $ 85,000,000.  Fidelity issued three polices of title insurance to LCPI with respect to this loan, and by assignment, Gramercy has succeeded LCPI as administrative agent for the Second Lien Lenders.  In addition, on February 9, 2007, a deed of trust was recorded in the County of Kern, State of California, against the Property for the benefit of LCPI, as administrative agent for the Third Lien Lenders, to secure a loan in the principal amount of $75,000,000.  Fidelity issued a policy of title insurance to LCPI with respect to this loan, and by assignment, Square Mile has succeeded LCPI as administrative agent for the Third Lien Lenders.

[5] First American also agreed to provide co-insurance with respect to certain of the additional title insurance policies.

LLC, *et al.*, Case No. S-1500-CV-263573, in which Superior asserted claims against the Defendants to recover damages of approximately $7,400,000 and to foreclose its Mechanic's Liens (the "State Court Action").  In connection with the State Court Action, Superior recorded a Notice of Pendency of Action in the Kern County Recorder's Office on May 30, 2008 (the "Notice of Pendency").

### The Superior Lawsuit

16.     Following the SunCal Petition Dates, Superior removed the State Court Action to McAllister's bankruptcy case, thus commencing the Superior Lawsuit.  On January 16, 2009, this Court entered an order approving a stipulation between Superior and LCPI granting Superior limited relief from the automatic stay in order to litigate the Superior Lawsuit in the SunCal Court [ECF No. 2566].  On September 17, 2009, Superior filed proof of claim number 14729 against the bankruptcy estate of LCPI, asserting a secured claim in the amount of $7,460,120.74 (the "LCPI Reorganization Claim").[6]  Pursuant to the terms of the First Loan Policy, the Insurers are providing a defense under a reservation of rights on behalf of LCPI and the First Lien Lenders with respect to the Superior Lawsuit and other actions brought by various holders of mechanic's lien claims asserting priority over the First Deed of Trust.[7]

17.     In the Superior Lawsuit, Superior alleges, inter alia, that McAllister is in breach of the Contracts and that the Mechanic's Liens are senior in priority to the First Deeds of Trust, and seeks approximately $7.4 million in damages and a declaration and determination that the Mechanic's Liens' are the senior interests on the Property.  The Defendants dispute these contentions for a number of reasons, and, on November 6, 2009, LCPI asserted an equitable

---

[6] Superior also filed a proof of claim in McAllister's bankruptcy case in the amount of $7,460,120.74 (the "Superior Claim").

[7] The Insurers are providing this defense under a full reservation of rights and have not determined their duty to indemnify LCPI under its title policies since the Insurers have not complete their investigation of coverage.

subrogation counterclaim, arguing that Superior's Mechanic's Liens against the Property are junior to LCPI's interests because, among other reasons, LCPI's First Deed of Trust holds the priority of that certain senior deed of trust held in favor of Lehman ALI, Inc. ("Lehman ALI").

18.    On January 20, 2011, LCPI filed a motion for partial summary judgment on its counterclaim and certain of Superior's claims, arguing that (i) the Mechanic's Liens are subordinated to LCPI's liens pursuant to the terms of the Written Agreements, (ii) because a portion of LCPI's loan was used to pay and release Lehman ALI's lien, the First Deed of Trust is equitably subrogated to the senior position of the Lehman ALI lien and therefore senior in priority to the Mechanic's Liens, and (iii) the Mechanic's Liens did not attach to unused goods delivered under the Oral Contract pursuant to California state law.  Superior opposed LCPI's summary judgment motion, arguing that (i) the Written Agreements' contractual subordination clauses are inapplicable to LCPI's loan facilities and in any event are invalid under California state law, (ii) LCPI is not entitled to equitably subrogate into Lehman ALI's lien position, and (iii) the fact that the goods delivered under the Oral Contract were never used does not provide LCPI a basis for summary judgment on its equitable subrogation or contractual subordination arguments.

19.    On March 24, 2011, following briefing and oral argument on LCPI's partial summary judgment motion but before any ruling, the SunCal Court entered an order approving a stipulation between Superior and the Defendants deferring the SunCal Court's ruling pending mediation of the disputes.  These mediation efforts proved successful and resulted in the instant Agreement.

8

## Summary of Terms of the Compromise

20.     The Parties have entered into the Agreement, a copy of which is attached hereto

as Exhibit 1, to settle the Superior Lawsuit, the State Court Action, and any and all other claims

that Superior may have against McAllister, the Lenders, the First Lien Lenders, the Second Lien

Lenders, the Third Lien Lenders, or MRID.  The salient terms of the Agreement are as follows:

- **Bankruptcy Court Approval**:  The Agreement is subject to approval by this Court and the SunCal Court.

- **Payment of Settlement Amount**: Superior shall receive a settlement payment in the aggregate amount of $1,800,000 (the "Settlement Amount") to be paid as follows: (a) $1,740,000 from the Insurers; and (b) $60,000 from MRID.

- **Assignment of Superior's Claims**: In consideration for the payment of the Settlement Amount, Superior shall assign to the Insurers any and all claims and rights to receive payment on the Contracts and all liens and other collateral interests securing such claims and rights to receive payment, including the LCPI Reorganization Claim, the Superior Claim, and the Mechanic's Liens.  The Insurers will not enforce any assigned liens or claims in any manner that would prejudice the rights of the First Lien Lenders under the First Loan Policy, meaning that any sums payable or received by the Insurers based on the assignment under the Agreement will immediately be turned over to LCPI unless and until the First Lien Lenders have received complete recovery on the $235,000,000 loan.  Upon execution and delivery of the assignment under the Agreement, the Insurers shall withdraw with prejudice the LCPI Reorganization Claim from LCPI's bankruptcy case, and the Superior Claim shall be allowed solely as a secured claim in the amount of $7,460,120.74 in McAllister's bankruptcy case (the "Assigned Claim").  Because the Assigned Claim is being allowed solely as a secured claim against McAllister, there will not be any distributions on that claim as a general unsecured claim from the Liquidating Trust's unencumbered assets.  In other words, the Assigned Claim will be paid only from the proceeds of the sale of the Property consistent with the terms of the Agreement and the terms and conditions of the SunCal Plan, and otherwise will be non-recourse to the Liquidating Trust.  Moreover, the Assigned Claim will not be considered a "Senior Lien" (as defined in the SunCal Plan) for the purpose of calculating the Trustee's Participation (as defined in the SunCal Plan).

- **Dismissals of Proceedings**:  Superior will also prepare and deliver an executed and recordable notice of withdrawal of the Notice of Pendency of Action, an executed request to dismiss the State Court Action, and a stipulation pursuant to Federal Rule of Bankruptcy Procedure 7041 seeking dismissal of the Superior

Lawsuit with prejudice, each of which LCPI and Superior shall cooperatively file in the appropriate forum.

### The Agreement Meets the Legal Standard Established Under Bankruptcy Rule 9019 and Is in the Best Interests of LCPI's Estate

21.     The proposed settlement is in the best interests of LCPI's estate and should be approved under Bankruptcy Rule 9019, which provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  Drexel, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  Drexel, 134 B.R. at 505. See also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization."  TMT Trailer Ferry, 390 U.S. at 424 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

22.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).  Additionally, a

court may exercise its discretion "in light of the general public policy favoring settlements." <u>In re Hibbard Brown & Co., Inc.</u>, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate." <u>In re Best Products</u>, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

23.    While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," <u>Anderson</u>, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, <u>W.T. Grant Co.</u>, 699 F.2d at 608, or conduct a full independent investigation.  <u>Drexel</u>, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact. . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." <u>Nellis</u>, 165 B.R. at 123 (internal citations omitted).

24.    The Court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." <u>Drexel</u>, 134 B.R. at 505 (internal citations omitted); <u>see also</u> <u>In re Purofied Down Prods. Corp.</u>, 150 B.R. 519, 522 (S.D.N.Y. 1993); <u>accord</u> <u>In re Ashford Hotels Ltd.</u>, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

25.     Applying the standards set forth above, LCPI believes that the proposed settlement of the Parties' disputes regarding the priority of the Mechanic's Liens is in the best interests of LCPI's estate.

26.     LCPI believes that it has the stronger argument and that Superior does not hold security interests in the Property and the proceeds from its sale that are senior to the security interests of the First Lien Lenders under the First Deeds of Trust.  It is undisputed that the Written Agreements contain subordination clauses that serve as waivers of the priority of Superior's lien rights to LCPI's financing of the McAllister development project.  In addition, California state law supports LCPI's equitable subrogation argument because LCPI unequivocally paid off Lehman ALI's senior encumbrances in order to secure its financing with the First Deed of Trust.  For these reasons, LCPI believes that the Defendants would ultimately prevail in the Superior Lawsuit.

27.     Superior has, however, attempted to refute the Defendant's arguments.  First, Superior argues that there was never an enforceable agreement to subordinate the Mechanic's Liens because such provisions are unenforceable under California state law, Superior never intended to enter into such an agreement, and the cited subordination clauses do not support LCPI's subordination argument.  Second, Superior contends that California state law does not acknowledge LCPI's equitable subrogation argument and that even if the theory were so recognized, it is inapplicable to the facts of this case.  Superior also maintains that its work on the Property relates back to the first work performed on the Property, which was prior to the recording of the First Deed of Trust, and that the Mechanic's Liens are therefore senior in priority pursuant to California state law.

28.     Thus, while LCPI believes that it has the stronger position and would prevail in the Superior Lawsuit, the likelihood of LCPI's success remains uncertain, and the Superior Lawsuit could continue for an extended period of time.

29.     Approval of the compromise will avoid the costs and delays associated with further litigation.   The Parties have litigated the Superior Lawsuit to the verge of summary judgment before the SunCal Court, and have spent significant time and expense in doing so, including completing discovery, briefing, and otherwise preparing for trial, the result of which remains uncertain for both sides.[8]   The proposed compromise will avoid any additional expense and conclude what has already proven to be a lengthy proceeding.   Resolution of this action will allow LCPI, the Insurers and the SunCal Trustee to proceed with the resolution of this and other mechanic's lien claims asserted against the Property, as contemplated by the SunCal Plan.   The completion of this process will expedite the distribution of the Property's sale proceeds to LCPI for the benefit of LCPI's estate.   Finally, the compromise was entered into in good faith and was negotiated at arm's length by the Parties' respective counsel.

30.     Based on the foregoing, LCPI requests that this Court enter an order pursuant to Bankruptcy Rule 9019 authorizing LCPI to enter into the Agreement and approving the terms of the settlement as agreed upon by the Parties.

### Notice

31.     No trustee has been appointed in these chapter 11 cases. LCPI has served notice of this Motion in accordance with the procedures set forth in the amended order entered on June 17, 2010 governing case management and administrative procedures [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange

---

[8] As recited in the Agreement, Superior alone claims to have incurred $600,000 in legal fees during the course of the Superior Lawsuit.

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the SunCal Trustee; (vii) the attorneys for Superior; (viii) the attorneys for the Insurers; (ix) the attorneys for MRID; and (viii) all parties who have requested notice in these chapter 11 cases. LCPI submits that no other or further notice need be provided.

32.    No previous request for the relief sought herein has been made by LCPI to this Court.

WHEREFORE LCPI respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: September 2, 2011
       New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg

*Counsel for the Debtors*
*and Debtors-in-Possession*

# Exhibit 1

## AGREEMENT FOR SETTLEMENT OF CONTRACTOR CLAIMS

## WITH MUTUAL RELEASES AND COVENANTS NOT TO SUE

This Agreement for Settlement of Contractor Claims with Mutual Releases and Covenants Not to Sue ("**Agreement**") is entered into as of April 15, 2011 by and among the following parties (sometimes referred to individually as "**Party**" and collectively as "**Parties**"):

| | |
|---|---|
| **"Owner":** | LBREP/L-SUNCAL MCALLISTER RANCH, LLC ("**Owner**"), |
| **"Contractor":** | SUPERIOR PIPELINES, INC., a California corporation ("**Contractor**"), |
| **"LCPI":** | LEHMAN COMMERCIAL PAPER, INC., a Delaware corporation, as the administrative agent for the First Lien Lenders, as defined below ("**LCPI**"). |
| **"Title Companies":** | FIDELITY NATIONAL TITLE INSURANCE COMPANY ("**Fidelity**") and FIRST AMERICAN TITLE INSURANCE COMPANY ("**First American**").    (Fidelity and First American collectively shall be referred to as the "**Title Companies**"), and |
| **"MRID":** | MCALLISTER RANCH IRRIGATION DISTRICT, a local publicly owned electrical utility ("**MRID**"), |

with reference to the following facts:

## Recitals

A.      On January 23, 2006, a deed of trust was recorded in the County of Kern, State of California as Document No. 0206016535 against certain real property commonly known as McAllister

LA2071689.1

207866-10058

LA2072532.2

207866-10058

LA2120668.2

207866-10051

LA2160224.2

207866-10051

Ranch ("***Property***") for the benefit of LCPI as administrative agent for a group of lenders (collectively, the "***First Lien Lenders***") to secure a loan in the principal amount of $ 235,000,000.    Fidelity issued a policy of title insurance to LCPI with respect to this loan, policy no. 27-44-94-120334 (the "***First Loan Policy***"). First American agreed to provide co-insurance with respect to the First Loan Policy.

B.    On January 23, 2006, a deed of trust was recorded in the County of Kern, State of California as Document No. 0206016537 against the Property for the benefit of LCPI as administrative agent for a group of lenders (collectively, "***Second Lien Lenders***") to secure a loan in the principal amount of $ 85,000,000.    Fidelity issued a policy of title insurance to LCPI with respect to this loan, policy no. 27-44-94-120335 (the "***Second Loan Policy***").    First American agreed to provide co-insurance with respect to the Second Loan Policy.    By assignment, Gramercy Warehouse Funding I, LLC, a Delaware limited liability company ("***Gramercy***"), succeeded LCPI as administrative agent for the Second Lien Lenders.

C.    On February 9, 2007, a deed of trust was recorded in the County of Kern, State of California as Document No. 0207032341 against the Property for the benefit of LCPI as administrative agent for a group of lenders (collectively, the "***Third Lien Lenders***") to secure a loan in the principal amount of $ 75,000,000.    Fidelity issued a policy of title insurance to LCPI with respect to this loan, policy number CAFNT0925-0925-0199-0259902517 (the "***Third Loan Policy***").    First American agreed to provide co-insurance with respect to the Third Loan Policy.    By assignment, Square Mile Structured Debt (One), LLC, a Delaware limited liability company and Square Mile Structured Debt (Two), LLC, a Delaware limited liability company (collectively "***Square Mile***"), succeeded LCPI as administrative agent for the Third Lien Lenders.

D.    Commencing in April 2006 and from time-to-time thereafter, Contractor entered into eight written agreements with Owner, each titled "Construction Contract with Liability Wrap," to provide labor, services, materials and equipment for improvement of the Property.    During 2007, Contractor also entered into an oral agreement with Owner to provide certain materials for enclosure of the James Canal on the Property.    (The written and oral agreements between Contractor and Owner are referred to collectively as the "***Contracts***.")

E.    Contractor recorded claims of mechanic's lien against the Property on February 14, 2008 as Document Nos. 0208023212 – 0208023220 and on April 2, 2008 as Document Nos. 0208051365 – 0208051373 in the total principal amount of $6,698,577.42 (collectively, "***Claims of Mechanic's Lien***"). On April 14, 2008, Contractor commenced an action in the Superior Court of Kern County, titled *Superior Pipelines, Inc. v. LBREP/L-SunCal McAllister Ranch, LLC, et al.,* Case No. S-1500-CV-263573, in which Contractor asserted claims against Owner, LCPI, Gramercy, Square Mile and MRID to recover damages of approximately $7,400,000 and to foreclose its Claims of Mechanic's Lien ("***State Court Action***").    In connection with the State Court Action, Contractor recorded a Notice of Pendency of Action on May 30, 2008 as Document No. 208085822 ("***Notice of Pendency of Action***").

F.    On September 11, 2008, an involuntary bankruptcy case was commenced against Owner in the United States Bankruptcy Court for the Central District of California as Case No. 08-15637-ES, an order for relief was subsequently entered by the Court, a Chapter 11 Trustee (**the "*Trustee*"**) was subsequently appointed, and the bankruptcy case is now under joint administration with United States Bankruptcy Court Case No. 08-15588-ES ("***Owner Reorganization***").    Contractor filed a Proof of Claim in the Owner Reorganization in the amount of $7,460,120.74 ("***Owner Reorganization Claim***").

G.      On October 5, 2008, LCPI commenced a case under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York as Case No. 08-13900-JMP, which is now under joint administration with United States Bankruptcy Court Case No. 08-13555-JMP ("*LCPI Reorganization*").    Contractor filed a Proof of Claim in the LCPI Reorganization in the amount of $7,460,120.74 ("*LCPI Reorganization Claim*").

H.      Contractor removed the State Court Action to the Owner Reorganization as an adversary proceeding pending in the United States Bankruptcy Court for the Central District of California and bearing Adversary Proceeding No. 09-1318-ES ("*Bankruptcy Action*").

I.      The Court in the Owner Reorganization has approved the plan of reorganization submitted by the Trustee pursuant to which the Property was sold under Section 1123 and 363 of the Bankruptcy Code, with the Claims of Mechanic's Lien attaching to the proceeds of the sale to the extent that the Claims of the Mechanic's Lien were senior or equal in priority to that held by the First Lien Lenders.    Alfred H. Siegel was the Trustee prior to plan confirmation, and is now the Liquidating Trustee    (the "*Liquidating Trustee*") of the Liquidating Trust created under the confirmed plan (the "*Liquidating Trust*") and is signing this agreement on behalf of Owner solely in his capacity as the Liquidating Trustee, not in an individual capacity.

J.      Contractor obtained relief from the automatic stay in the LCPI Reorganization to proceed with the Bankruptcy Action, and the Parties have spent substantial money and time in the litigation, including in taking numerous depositions and completing discovery, pursuing summary judgment and other pre-trial motions, and otherwise preparing for trial.    Through this process, Contractor claims to have incurred over $600,000 in attorneys' fees.    To avoid further litigation costs and the risk of loss at trial, Contractor, LCPI, Title Companies, Owner and MRID enter into this Agreement to settle the Bankruptcy Action, the State Court Action and any and all other claims that the Contractor may have against the Owner, LCPI, Gramercy, Square Mile, the First Lien Lenders, the Second Lien Lenders, the Third Lien Lenders and/or MRID.

## Agreement

The Parties agree:

1.      **Settlement Amount; Payment Method; Closing Deadline**.    Payment to Contractor pursuant to this Agreement shall be in the amount shown below ("*Settlement Amount*").    The Settlement Amount shall be wired by the Parties required herein to the trust account of Loeb & Loeb described below ("*Escrow*").    The Settlement Amount shall be delivered to Contractor via wire transfer instructions as shown below as soon as all of the Closing Conditions specified herein have been satisfied.

Settlement Amount:          $1,800,000.00

Closing Deadline:           Five (5) days after delivery of the Notice of Approvals, as defined below.

| | | |
|---|---|---|
| Escrow Account: | Bank Name: | [Prior to execution of this Agreement, wire transfer instructions for delivery to Escrow shall have been transmitted separately to counsel for Fidelity and MRID to preserve the privacy of that financial information.] |
| | Bank Address: Account Name: Account No.: Routing/ABA No.: Reference: | |
| Wire Transfer Delivery Instructions for Payment of Settlement Amount to Contractor | Account Name: | [Prior to execution of this Agreement, wire transfer delivery instructions shall have been transmitted separately to counsel for Fidelity to preserve the privacy of that financial information.] |
| | Account No.: Bank Name: Bank ABA No.: Notify: | |

2.    **Bankruptcy Court Approval.**

    2.1    Promptly after execution of this Agreement by all parties:

    2.1.1    The Owner shall seek an Order (the "*Owner Reorganization Approval Order*") from the United States Bankruptcy Court for the Central District of California in the Owner Reorganization approving and authorizing the settlement between the Parties and the terms of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 by motion to be filed no later than September 2, 2011, on a no hearing basis, provided that the Owner shall schedule such motion to be heard on the court's earliest available hearing date in the event that any party timely objects to the requested relief.    Owner shall submit the proposed Owner Reorganization Approval Order for entry by the court no later than one (1) business day following the hearing; and

    2.1.2    LCPI shall seek an Order (the "*LCPI Reorganization Approval Order*") from the United States Bankruptcy Court for the Southern District of New York in the LCPI Reorganization approving and authorizing the settlement between the Parties and the terms of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 by motion to be filed no later than September 2, 2011, on a no hearing basis, provided that LCPI shall schedule such motion to be heard on the court's earliest available hearing date in the event that any party timely objects to the requested relief.    LCPI shall submit the proposed LCPI Reorganization Approval Order for entry by the court no later than one (1) business day following the hearing.

    2.2    Once each of the Owner Reorganization Approval Order and the LCPI Reorganization Approval Order has become a final, non-appealable Order of the Court fourteen (14) days after entry of the Orders, subject to the provisions of Federal Rules of Bankruptcy Procedure Rule 8002,

AGREEMENT FOR SETTLEMENT OF CONTRACTOR CLAIMS
(SUPERIOR PIPELINES, INC.)

LCPI promptly shall deliver to the Escrow a "***Notice of Approvals***" which shall contain or attach both of the following:

2.2.1    A true copy of the Owner Reorganization Approval Order.

2.2.2    A true copy of the LCPI Reorganization Approval Order**.**

2.3    If LCPI fails to deliver the Notice of Approvals to the Escrow within ten (10) days after both the LCPI Reorganization Approval Order and the Owner Reorganization Approval Order have become final, non-appealable Orders of the Court, Contractor may prepare and deliver the Notice of Approvals to the Escrow.

2.4    This Agreement shall be subject to approval by the Court in both the Owner Reorganization and the LCPI Reorganization.    In the absence of such Court approval, this Agreement shall be null, void and of no force or effect.

3.    **Assignment.**    In consideration of payment of the Settlement Amount, Contractor agrees to assign to the Title Companies any and all claims and rights to receive payment on the Contracts, including, without limitation, the Owner Reorganization Claim, and any and all liens and encumbrances securing such claims and rights to receive payment, including, without limitation, the Claims of Mechanic's Lien.    In furtherance of this requirement, through the Escrow, Contractor shall duly execute and deliver to the Title Companies the Assignment in the form attached as Exhibit "1" ("***Assignment***").    Such assignment shall not include any claims of lien, including but not limited to any attachment lien, alleged by Contractor as to MRID, and Contractor hereby releases any and all such claims of lien alleged as to MRID. The Title Companies agree that they will not enforce any liens or claims obtained by this Agreement or the Assignment in any way that would prejudice the rights of the First Lien Lenders under the First Loan Policy. By way of example, any payments payable to or received by the Title Companies from the Owner or any other party based on this Agreement and the Assignment, whether it be on account of the Claims of Mechanic's Lien or the Owner Reorganization Claim, shall be immediately turned over to LCPI unless and until the First Lien Lenders have been paid in full with respect to the $235,000,000 loan.    To the extent not otherwise extinguished in accordance with the terms of this Agreement, the Title Companies agree to the withdrawal with prejudice in the LCPI Reorganization of any claims acquired by the Title Companies pursuant to this Agreement or the Assignment.    Upon execution and delivery of the Assignment, Owner acknowledges and agrees that the Owner Reorganization Claim shall be finally allowed in the Owner Reorganization as a secured claim only, and not as a general unsecured claim, in the amount of $7,460,120.74 (the "***Assigned Claim***").    In furtherance thereof, the Owner Reorganization Approval Order shall contain a provision allowing the Assigned Claim as a secured claim and providing for distributions on account of the Assigned Claim as a secured claim consistent with the terms of this paragraph and the terms and conditions of the Plan.    The Assigned Claim will not be paid under the Plan as a general unsecured claim or be considered a "Senior Lien" (as such term is defined in the Plan) for the purpose of calculating the "Trustee's Participation" (as such term is defined in the Plan).

4.    **Withdrawal, Dismissal and Stipulations.**    Through the Escrow, Contractor shall deliver to LCPI:

4.1    A duly executed and recordable Notice of Withdrawal ("***Withdrawal***"), withdrawing the Notice of Pendency of Action in the form attached as Exhibit "2;"

4.2     A fully executed Request for Dismissal, on the Judicial Council form, seeking dismissal of the entire State Court Action with prejudice and with each Party bearing its own fees and costs ("**Request for Dismissal**"); and

4.3     Two fully executed Stipulations pursuant to Federal Rule of Bankruptcy Procedure 7041 seeking approval of the Assignment and dismissal of the Bankruptcy Action with prejudice and with each Party bearing its own fees and costs ("**Stipulations**"), in the form attached collectively as Exhibit "3."

5.     **Closing Through Escrow.**    Closing hereunder shall occur through the Escrow only when all the conditions in Sections 5.1 to 5.5 below have been satisfied ("**Closing Conditions**"), all of which shall be satisfied on or before the Closing Deadline:

5.1     Immediately upon execution of this Agreement, Contractor shall deliver to the Title Companies, through Fidelity's counsel in the Owner Reorganization, a completed Form W-9, including Contractor's tax identification number.

5.2     Contractor shall have delivered each of the following to the Escrow:

5.2.1     Eight fully executed counterparts of this Agreement;

5.2.2     The Assignment;

5.2.3     The Withdrawal;

5.2.4     The Request for Dismissal; and

5.2.5     The Stipulations duly executed by Contractor.

5.3     MRID shall have delivered each of the following to the Escrow:

5.3.1     Eight fully executed counterparts of this Agreement;

5.3.2     The Stipulations duly executed by MRID; and

5.3.3     The sum of $60,000 ("**MRID Funds**").

5.4     LCPI shall have delivered the following to the Escrow:

5.4.1     Eight fully executed counterparts of this Agreement;

5.4.2     The Stipulations duly executed by LCPI; and

5.4.3     The Notice of Approvals.

5.5     Owner shall have delivered each of the following to the Escrow:

5.5.1     Eight fully executed counterparts of this Agreement; and

5.5.2     The Stipulations duly executed by the Owner.

5.6 The Title Companies shall have delivered each of the following to the Escrow:

5.6.1 Eight fully executed counterparts of this Agreement; and

5.6.2 The sum of $1,740,000.

5.7 When all Closing Conditions have been satisfied, the Escrow shall be authorized and directed on the Closing Deadline to simultaneously deliver:

5.7.1 To Contractor, by delivery to its attorneys in the Bankruptcy Action or as otherwise set forth herein:

5.7.1.1 One counterpart of this Agreement containing original execution signatures by all Parties; and

5.7.1.2 The Settlement Amount.

5.7.2 To LCPI, by delivery to LCPI's attorneys in the Bankruptcy Action:

5.7.2.1 Three counterparts of this Agreement containing original execution signatures by all Parties;

5.7.2.2 The Request for Dismissal;

5.7.2.3 The Stipulations; and

5.7.2.4 The Withdrawal.

5.7.3 To Title Companies, by delivery to Fidelity's attorneys in the Owner Reorganization:

5.7.3.1 Two counterparts of this Agreement containing original execution signatures by all Parties; and

5.7.3.2 The Assignment.

5.7.4 To MRID, by delivery to its attorneys in the Bankruptcy Action:

5.7.4.1 One counterpart of this Agreement containing original execution signatures by all Parties.

5.7.5 To Owner, by delivery to its attorneys in the Bankruptcy Action:

5.7.5.1 One counterpart of this Agreement containing original execution signatures by all Parties.

6. **Filing of the Stipulations and Dismissal; Recording of the Withdrawal**

6.1     After Closing of Escrow, LCPI promptly shall file the Stipulations and shall seek to obtain dismissal of the Bankruptcy Court Action.

6.2     After Closing of Escrow, LCPI promptly shall file the Request for Dismissal.

6.3     After Closing of Escrow, LCPI promptly shall record the Withdrawal.

6.4     Contractor shall provide full cooperation to LCPI in connection with its efforts to obtain dismissal of the Bankruptcy Court Action and the State Court Action.    In addition, Contractor shall provide full cooperation to the Title Companies in connection with their enforcement of the Assigned Claim.

6.5     Other than as expressly set forth in Section 3, above, the acts of dismissing the State Court Action and the Bankruptcy Action and withdrawing the Notice of Pendency of Action are not intended as and shall not be deemed to be a release or waiver of any liens or claims obtained by the Title Companies pursuant to this Agreement or the Assignment.

7.     **Mutual Releases and Covenant Not to Sue**.

7.1     Excepting only the rights and obligations created by or preserved by this Agreement and those claims, rights and obligations transferred to the Title Companies by the Assignment, effective upon closing of Escrow, Contractor unconditionally releases, acquits and forever discharges MRID, LCPI, Gramercy, Square Mile, the First Lien Lenders, the Second Lien Lenders, the Third Lien Lenders, the Trustee/Liquidating Trustee, the Liquidating Trust, Owner and Owner's bankruptcy estate, the Title Companies and the Property of and from, and covenants not to assert against or sue, directly or indirectly, any of them on or for, any and all claims, complaints, charges, liabilities, liens, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs) of whatsoever kind or nature, arising in law, equity or otherwise under the law of any jurisdiction, known or unknown, foreseen or unforeseen, hidden or concealed, which it has, had or may hereafter have based on any fact, matter, cause, thing, transaction or event, including but not limited to any matter or thing that has been alleged or could have been alleged in the State Court Action or the Bankruptcy Action or both (collectively "***Contractor-Released Claims***"). Without limiting the forgoing releases, and except for those claims assigned by the Assignment, the Contractor unconditionally releases all Claims for Mechanic's Liens against the Property.

7.2     Excepting only the rights and obligations created by or preserved by this Agreement, effective upon closing of Escrow, MRID, LCPI and the Title Companies unconditionally release, acquit and forever discharge Contractor of and from, and covenant not to assert against or sue it, directly or indirectly, on or for, any and all claims, complaints, charges, liabilities, liens, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs) of whatsoever kind or nature, arising in law, equity or otherwise under the law of any jurisdiction, known or unknown, foreseen or unforeseen, hidden or concealed, arising from the Claims of Mechanic's Lien, the State Court Action and/or the Bankruptcy Action (collectively "***Lender Released Claims***".)

7.3     Each party giving a release acknowledges and agrees that its release provided above is intended to include unknown Contractor Released Claims or Lender Released Claims, as the case

may be, and expressly waives any and all rights which it may have under Section 1542 of the California Civil Code, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each party giving a release hereby warrants that it is familiar with, has read and has consulted legal counsel of its choosing with respect to California Civil Code Section 1542 and that it understands that factual matters now unknown to it may have given or may hereinafter give rise to actions, legal or administrative proceedings, claims, liens, demands, debts, controversies, damages, costs, losses, liabilities and expenses which are presently unknown, unanticipated and unsuspected, but are nevertheless intended to be encompassed within its release.

7.4    Consistent with the releases given by Contractor herein, the LCPI Reorganization Approval Order shall contain a provision disallowing in its entirety and expunging the LCPI Reorganization Claim effective upon the closing of Escrow.

8.    **Representations and Warranties**. The Parties represent and warrant to and agree with each other as follows:

8.1    Each Party has received independent legal advice from attorneys of its choice with respect to the advisability of making this Agreement and the releases provided herein and with respect to the advisability of executing this Agreement.

8.2    Except as expressly stated in this Agreement, no Party has made any statement or representation to any other Party regarding any fact, which statement or representation is relied upon by any other Party in entering into this Agreement.    In connection with the execution of this Agreement or the making of the settlement provided for herein, no Party to this Agreement has relied upon any statement, representation or promise of any other Party not expressly contained herein.

8.3    All Parties hereto and their counsel have made such investigation of the facts pertaining to the releases contained herein as they deem necessary.

8.4    The terms of this Agreement are contractual and are the result of arm's length negotiation among the Parties.

8.5    Each of the Parties has carefully read, knows and freely understands the contents of this Agreement.    Each Party executing this Agreement signs this Agreement freely.

8.6    Each Party covenants and agrees not to bring any action, claim, suit or proceeding against any Party hereto directly or indirectly, regarding or relating to the matters released hereby, and each Party further covenants and agrees that this Agreement is a bar to any such claim, action, suit or proceeding.    Notwithstanding the foregoing, each Party shall retain the right to bring an action, claim, suit or proceeding to enforce this Agreement or to otherwise resolve any bona fide dispute concerning any ambiguity in this Agreement.

AGREEMENT FOR SETTLEMENT OF CONTRACTOR CLAIMS
                                                                        (SUPERIOR PIPELINES, INC.)

8.7     Each Party represents and agrees that this Agreement is freely negotiated and that it enters into this Agreement of its own free will and that this Agreement is acceptable to the Parties as a fair and reasonable resolution of the matters released herein.

9.     **Covenant Re Assignment**.   Each Party hereto represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and other matter which it purports to release herein, and that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm, association, corporation or other entity any right, title or interest in any such claim or other matter.   In the event that such representation is false and/or any such claim or matter is asserted against any Party hereto (and/or the successor of such Party) by any party or entity who is the assignee or transferee of such claim or matter, then the Party hereto who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party (and its successors) against whom such claim or matter is asserted from all actual costs, fees, expenses, liabilities and damages which that Party (and/or its successors) incurs as a result of the assertion of such claim or matter.

10.     **Warranty of Authority.**   Each Party represents and warrants as follows:

10.1     Subject to obtaining the Owner Reorganization Approval Order (as it relates to the Owner) and the LCPI Reorganization Approval Order (as it relates to LCPI), it has the power and authority to execute this Agreement and to perform as required by its terms;

10.2     Except for obtaining the Owner Reorganization Approval Order and the LCPI Reorganization Approval Order, it has obtained all consents and approvals and taken all corporate or charter action necessary to authorize the execution and delivery of this Agreement and each instrument and document required by this Agreement; and

10.3     It has fully authorized the person executing this Agreement to do so on its behalf.

11.     **Indemnity**.   Each Party shall indemnify each other Party from all liability, loss, cost, expense and damage proximately resulting from breach by the indemnifying Party of any representation or warranty in this Agreement.

12.     **Survival of Warranties**.   The representations and warranties contained in this Agreement are deemed to and do survive the execution hereof.

13.     **Modifications**.   This Agreement may not be amended, canceled, revoked or otherwise modified except by written agreement subscribed by all Parties to be charged with such modification.

14.     **No Admission of Liability**.   The Parties hereto explicitly acknowledge that this Agreement represents a settlement, and that by entering into this Agreement no Party admits or acknowledges any liability or wrongdoing.

15.     **Co-operation to Execute Documents.**   Contractor agrees to sign and acknowledge documents for recording and to take other reasonable actions at the request of LCPI and/or the Title Companies to remove all claims of lien, notices of action and other matters of record affecting title to the Property as may have arisen out of or as a consequence of the Claims of Mechanic's Lien, the State Court Action or the Bankruptcy Action or any other rights or interests Contractor has or may assert against the Property.   In addition, Contractor shall fully cooperate with the Title Companies in connection with their

enforcement of the claims, rights and obligations assigned to the Title Companies pursuant to the Assignment, including the Owner Reorganization Claim and/or the Assigned Claim.

16.    **Governing Law**.    This Agreement is governed by and is to be interpreted and enforced in accordance with the laws of the State of California, without regard to any choice of law provisions that would cause the law of any other state to govern.

17.    **Attorneys Fees**.    In the event that any action, motion or proceeding is brought to enforce or interpret the terms of this Agreement or the Assignment, the prevailing parties shall be entitled to recover, in addition to statutory costs, all expenses incurred in connection with the dispute, including but not limited to reasonable attorneys, expert consultant and expert witness fees.    Notwithstanding the foregoing, the prevailing parties shall not have the right to recover fees and costs in connection with the resolution of any bona fide dispute over any ambiguity in this Agreement or the Assignment.

18.    **Counterparts**.    This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original, and all of which when executed shall constitute one and the same instrument.

19.    **Entire Agreement**.    Except as expressly provided herein, this Agreement contains the entire agreement of the Parties and supersedes all existing negotiations, representations or agreements, and all other oral, written or other communications between them concerning the subject matter of this Agreement.

20.    **Successors and Assigns**.    This Agreement shall be binding upon the Parties, their successors and assigns, including any bankruptcy trustee, post-confirmation liquidating agent, liquidating trustee or similar party appointed in connection with the Owner Reorganization and/or the LCPI Reorganization.

21.    **Reservation of Rights.**    Nothing contained in this Agreement is intended to modify and nothing herein shall modify the rights and obligations of the Title Companies, LCPI, Gramercy, Square Mile and/or the First Lien Lenders, the Second Lien Lenders and/or the Third Lien Lenders under the First Loan Policy, the Second Loan Policy, the Third Loan Policy and that certain Interim Funding Agreement entered into by and between the Title Companies and LCPI, including any and all reservations of rights previously asserted by the Title Companies, LCPI, Gramercy, Square Mile, the First Lien Lenders, the Second Lien Lenders and/or the Third Lien Lenders with respect to the First Loan Policy, the Second Loan Policy and/or the Third Loan Policy.

22.    **Limitation on Liability.**    Notwithstanding anything to the contrary contained herein, Alfred H. Siegel is signing this Agreement on behalf of Owner solely in his capacity as the Liquidating Trustee, not in an individual capacity, and in no event whatsoever shall Alfred H. Siegel have any personal liability of any kind, nature or amount as a result of this Agreement, including, without limitation, any performance, failure of performance, breach, default or other circumstance arising from or related to this Agreement, the implementation thereof, or the transactions contemplated herein

**CONTRACTOR:**

SUPERIOR PIPELINES, INC., a California corporation

By: _____
Name:   Walter Alexander
Its:    President

**LCPI:**

LEHMAN COMMERCIAL PAPER, INC., a Delaware corporation

By: _____
Name:   _____
Its:    _____

**MRID:**

MCALLISTER RANCH IRRIGATION DISTRICT, a local publicly owned electrical utility

By: _____
Name:   _____
Its:    _____

**TITLE COMPANIES:**

FIDELITY NATIONAL TITLE INSURANCE COMPANY

By: _____
Name:   _____
Its:    _____

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
Name:   _____
Its:    _____

LA2071689.1

207866-10058

LA2072532.2

207866-10058

LA2120668.2

207866-10051

LA2160224.2

207866-10051

**OWNER:**

LBREP/L-SUNCAL MCALLISTER RANCH, LLC


By: _____
Name:    Alfred H. Siegel
Solely in his Capacity as the Liquidating Trustee
for the Owner Reorganization

# Exhibit 1

## ASSIGNMENT OF LIENS AND CLAIMS

This Assignment of Liens and Claims ("**Assignment**") is made as of April 15, 2011 by and between

| | |
|---|---|
| "**Assignor**": | SUPERIOR PIPELINES, INC., a California corporation ("**Assignor**"), |
| and | |
| "**Assignees**": | FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, as to an undivided one-half interest, and FIRST AMERICAN TITLE COMPANY, a California corporation, , as to an undivided one-half interest (collectively "**Assignees**"), |

with reference to the following facts:

### Recitals

A.      Assignor contributed labor, services, materials and equipment to the improvement of certain real property known as McAllister Ranch ("**Property**") pursuant to written contracts and an oral contract (collectively, the "**Contracts**") with LBREP/L-SunCal McAllister Ranch, LLC as owner of the Property ("**Owner**").

B.      Assignor recorded claims of mechanic's lien against the Property in the total principal amount of $ 6,698,577.4 as Document Nos. 0208023212 – 0208023220 and 0208051365 – 0208051373 (collectively, "**Claims of Mechanic's Lien**"); and, on April 14, 2008, Assignor commenced an action in the Superior Court of Kern County, California, titled *Superior Pipelines, Inc. v. LBREP/L-SunCal McAllister Ranch, LLC, et al.,* Case No. S-1500-CV-263573, in which Assignor asserted claims against Owner and others to recover damages of approximately $ 7,400,000 and to foreclose its Claims of Mechanic's Lien (collectively, "**Contractor's Claims**").

C.      On September 11, 2008, a reorganization proceeding was commenced against Owner in the United States Bankruptcy Court for the Central District of California as Case No. 08-15637-ES ("**Owner Reorganization**").  Assignor filed a Proof of Claim in the Owner Reorganization in the amount of $ 7,460,120.74 ("**Owner Reorganization Claim**").

D.      On October 5, 2008, a reorganization proceeding was commenced against LCPI in the United States Bankruptcy Court for the Southern District of New York as Case No. 08-13900-JMP, which is under joint administration with United States Bankruptcy Court Case No. 08-13555-JMP ("**LCPI Reorganization**").  Assignor filed a Proof of Claim in the LCPI Reorganization in the amount of $ 7,460,120.74 ("**LCPI Reorganization Claim**").

E.      Having concurrently entered into an Agreement for Settlement of Contractor Claims with Mutual Releases and Covenants Not to Sue ("**Agreement**"), Assignor desires to sell and assign, and

*LA2159471.1*
*207866-10051*

Assignees desire to acquire and accept, all of Assignor's rights and interest in the Claims of Mechanic's Lien, the Owner Reorganization Claim and the LCPI Reorganization Claim.

**Agreement**

The parties agree:

1.    **Assignment of Claims**.  Assignor has received a payment pursuant to the Agreement for, among other purposes described in the Agreement, purchase of the rights, benefits and privileges below. Therefore, in exchange for such payment and other consideration, Assignor hereby assigns to Assignees all of the following:

1.1    All claims and rights to receive payment on the Contracts, including without limitation the Contractor's Claims, the Owner Reorganization Claim and the LCPI Reorganization Claim;

1.2    All Claims of Mechanic's Lien, including without limitation, all rights and remedies inherent in or afforded to an owner of the Claims of Mechanic's Lien; and

1.3    Any and all distributions, proceeds, awards or other benefits that may arise out of or derive from any of the foregoing.

(All of the foregoing are collectively referred to as the "***Assigned Rights and Claims***").

2.    **Restrictions and Limitations on Assignment.**  The Assignment under Section 1 above and the Assigned Rights and Claims are subject to the terms, restrictions and limitations in the Agreement which Agreement is incorporated herein by reference.

3.    **Warranties of Assignor.**  Assignor warrants as follows:

3.1    It is the sole owner of all Assigned Rights and Claims;

3.2    There exist no lien, security interest, encumbrance, attachment, UCC financing statement, other restriction on transfer of or claim against such Assigned Rights and Claims, whether in favor of a lender to Assignor, any other creditor or any other person or entity;

3.3    It has obtained all consents and approvals and has taken all corporate action necessary to authorize execution and delivery of this Assignment; and

3.4    The person executing this Assignment is fully authorized to do so on its behalf.

4.    **Further Documents and Cooperation.**  Assignor shall cooperate with Assignees and any successor to either or both of them by providing, upon a request by either of Assignees or any successor to either or both of them, copies of documents and records supporting or otherwise relating to the Contracts or Claims of Mechanic's Lien or both, interview, deposition, hearing and trial testimony, as well as such other cooperation as may reasonably be required to assert or enforce any of the rights, privileges or benefits within the scope of this Assignment.

---

5.    **Governing Law**.  This Assignment is governed by and is to be construed and enforced in accordance with the laws of the State of California, without regard to any choice of law provisions that would cause the law of any other state to govern.

6.    **Attorneys Fees.**  In the event that any action, motion, or proceeding is brought to enforce or interpret the terms of this Assignment, the prevailing party shall be entitled to recover, in addition to statutory costs, all expenses incurred in connection with the dispute, including but not limited to reasonable attorneys, expert consultant and expert witness fees.

**ASSIGNOR:**                                   **ASSIGNEES:**

SUPERIOR PIPELINES, INC., a California          FIDELITY NATIONAL TITLE INSURANCE
corporation                                     COMPANY, a California corporation


By: _____             By: _____
Name:  Walter Alexander                            Name:  _____
   Its:  President                                    Its:  _____


                                                FIRST AMERICAN TITLE COMPANY, a
                                                California corporation


                                                By: _____
                                                   Name:  _____
                                                      Its:  _____

# Exhibit 2



Recording requested by and
when recorded return to:

LOEB & LOEB LLP
ALAN WILKEN (SBN 063790)
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone:    310-282-2000
Facsimile:    310-282-2200

Attorneys for Defendant and Counter-
Claimant LEHMAN COMMERCIAL
PAPER, INC. and Defendants
GRAMERCY WAREHOUSE LENDING
I, LLC, SQUARE MILE STRUCTURED
FINANCE (ONE), LLC and  SQUARE
MILE STRUCTURED FINANCE
(TWO), LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:08-bk-15637-ES |
| LBREP/L-SUNCAL MCALLISTER RANCH, LLC, | Consolidated under No.8:08-bk-15588-ES |
| Debtor. | Judge:  Erithe A. Smith |
| | Adv. Proc. No. 8:09-01318 |
| SUPERIOR PIPELINES, INC., a California corporation, | |
| Plaintiff, | |
| vs. | **WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION** |
| LBREP/L-SUNCAL MCALLISTER RANCH, LLC, a Delaware limited liability company; etc., et al., | |
| Defendants. | |

LA2141542.1
207866-10051

WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION
RECORDED AS DOCUMENT NO. 0208085822

1

2      **NOTICE IS GIVEN** that the Notice of Pendency of Action by Superior Pipelines, Inc.

3  against LBREP/L SunCal McAllister Ranch, LLC and others affecting property described on

4  Exhibit "A" and recorded in the Official Records of the County of Kern, California on May 30,

5  2008, as Document No. 0208085822 is withdrawn.

6

7  Dated: _____, 2011          KLEIN, DeNATALE, GOLDNER, COOPER,
                            ROSENLIEB & KIMBALL, LLP

8

9                            By:_____

10                                T. Scott Belden
                                Terrence T. Egland

11                                Attorneys for Plaintiff and Counter-
                                Defendant Superior Pipelines, Inc.

12

13

14  State of California          )
    County of _____ )

15

16  On _____, 2011, before me, _____,
  Notary Public, personally appeared _____, personally

17  known to me or proved to me on the basis of satisfactory evidence to be the person whose

18  name is subscribed to the within instrument and acknowledged to me that he/she executed
  the same in his/her authorized capacity, and that by his/her signature on the instrument the

19  person, or the entity upon behalf of which the person acted, executed the instrument.

20      I certify under PENALTY OF PERJURY under the laws of the State of California that the
  foregoing paragraph is true and correct.

21

22      WITNESS my hand and official seal.

23
                               _____

24                                Signature of Notary

25

26

27

28

LA2141542.1
207866-10051          WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION
                  RECORDED AS DOCUMENT NO. 0208085822

# Exhibit 3

1  LOEB & LOEB LLP
   ALAN WILKEN (SBN 063790)
2  awilken@loeb.com
   DERRICK TALERICO (SBN 223763)
3  dtalerico@loeb.com
   10100 Santa Monica Boulevard, Suite 2200
4  Los Angeles, California 90067-4120
   Telephone:   310-282-2000
5  Facsimile:   310-282-2200

6  Attorneys for Defendant and Counter-
   Claimant LEHMAN COMMERCIAL
7  PAPER, INC.

8

9                  UNITED STATES BANKRUPTCY COURT

10          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

11

12  In re                              )  **Case No. 8:08-15588 (ES)**
                                       )
13  LBREP/L-SUNCAL MCALLISTER          )
    RANCH, LLC,                        )
14                                     )  Jointly Administered with Case Nos.:
            Debtor.                    )  8:08-bk-15637-ES; 8:08-bk-15639-ES
15  _____)  and 8:08-bk-15640-ES
                                       )
16  __ Affects LBREP/L-SunCal Master I LLC )
    Only                               )  **Chapter 11**
17                                     )
                                       )
18  X Affects LBREP/L-SunCal McAllister )
    Ranch LLC Only                     )
19                                     )  **STIPULATION FOR ORDER**
                                       )  **APPROVING ASSIGNMENT**
20  __ Affects LBREP/L-SunCal McSweeny )
    Farms LLC Only                     )
21                                     )
                                       )
22  __ Affects LBREP/L-SunCal Summerwind )
    Ranch LLC Only                     )
23
    __ Affects All Debtors
24  _____

25

26

27

28

1    Pursuant to Federal Rule of Bankruptcy Procedure 7041, incorporating Federal Rule

2  of Civil Procedure 41(a)(1)(A)(ii), plaintiff and counter-defendant Superior Pipelines, Inc.

3  ("Superior"), Debtor and Defendant LBREP/L-SunCal McAllister Ranch, LLC ("Owner"),

4  defendant and counter-claimant Lehman Commercial Paper, Inc. ("LCPI"), and defendant

5  McAllister Ranch Irrigation District ("MRID") hereby enter into this stipulation, through

6  their respective counsel of record.

7

8                                              **RECITALS**

9    A.    On September 11, 2008, an involuntary bankruptcy case was commenced

10  against Owner in the United States Bankruptcy Court for the Central District of California

11  as Case No. 08-15637-ES (the "Owner Bankruptcy Case").

12   B.    Superior filed a Proof of Claim in the Owner Bankruptcy Case in the

13  amount of $7,460,120.74 ("Owner Reorganization Claim").

14   C.    Superior commenced an adversary action (the "Adversary Action") to

15  recover damages and to enforce claims of mechanic's lien against real property commonly

16  known as McAllister Ranch and to enforce the lien of a writ of attachment against funds in

17  the possession of MRID.  The action is proceeding on Superior's First Amended

18  Complaint.

19   D.    LCPI filed an Answer and Counterclaim seeking declaratory relief as to the

20  priority of a First Lien Deed of Trust securing a debt in the principal amount of

21  $235,000,000 and a Second Lien Deed of Trust securing a debt in the principal amount of

22  $85,000,000 on theories of the date of recording, subordination by contract, equitable

23  subrogation and others.  MRID filed an Answer, alleging its prior right to the funds in its

24  possession

25   E.    A Motion for Partial Summary Judgment by LCPI was argued on March 3

26  and 24, 2011.  Pursuant to Stipulation in anticipation of settlement, the Court deferred

27  announcement of its ruling.

28

LA2160607.1
207866-10051              STIPULATION FOR ORDER APPROVING ASSIGNMENT

F.      With the assistance of a Mediator, the parties have entered into a Settlement Agreement (the "Settlement Agreement") under which, among other things, Superior has assigned to Fidelity National Title Insurance Company and First American Title Insurance Company the Owner Reorganization Claim and claims to enforce its asserted mechanic's liens against the property (the "Assignment").

G.      Alfred H. Siegel was the duly-appointed chapter 11 trustee in the Owner Bankruptcy Case, and is now the liquidating trustee  (the "Liquidating Trustee") of the liquidating trust created under the plan confirmed in the Owner Bankruptcy Case, and is signing this stipulation on behalf of Owner solely in his capacity as the Liquidating Trustee, not in an individual capacity.

## STIPULATION

Pursuant to the Settlement, the parties hereby stipulate, and request a court order thereon, as follows:

1.      The Owner Reorganization Claim shall be deemed assigned to Fidelity National Title Insurance Company and First American Title Insurance Company.

2.      The Adversary Action shall be dismissed in its entirety with prejudice.

3.      Each party shall bear its own fees and costs.

4.      The parties shall seek an order for this stipulated relief in both the Adversary Action and the jointly administered bankruptcy cases of In re LBREP/L-SunCal Master I LLC, No. 08-15588-ES (Bankr. C.D. Cal.).

*[SIGNATURE PAGE FOLLOWS]*

1

2   Dated as of April 15, 2011                KLEIN, DeNATALE, GOLDNER, COOPER,
                                              ROSENLIEB & KIMBALL, LLP
3

4                                             By:_____
                                                 T. Scott Belden
5                                                Terrence T. Egland
                                                 Attorneys for Plaintiff and Counter-
6                                                Defendant Superior Pipelines, Inc.

7
    Dated as of April 15, 2011                LOEB & LOEB LLP
8

9                                             By:_____
                                                 Alan Wilken
10                                               Attorneys for Defendant and Counter-
                                                 Claimant Lehman Commercial Paper, Inc.
11

12  Dated as of April 15, 2011                YOUNG WOOLDRIDGE, LLP

13

14                                            By:_____
                                                 Michael Kaia
15                                               Attorneys for Defendant McAllister Ranch
                                                 Irrigation District
16

17  Dated as of April 15, 2011                WEILAND, GOLDEN, SMILEY, WANG,
                                              EKVALL & STROK, LLP
18

19                                            By: _____
20                                                 Evan D. Smiley
                                                   Attorneys for Alfred H. Siegel, Solely in
21                                                 his Capacity as Liquidating Trustee

22

23

24

25

26

27

28

    LA2160607.1
    207866-10051          STIPULATION FOR ORDER APPROVING ASSIGNMENT

LOEB & LOEB LLP
ALAN WILKEN (SBN 063790)
awilken@loeb.com
DERRICK TALERICO (SBN 223763)
dtalerico@loeb.com
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone:    310-282-2000
Facsimile:    310-282-2200

Attorneys for Defendant and Counter-
Claimant LEHMAN COMMERCIAL
PAPER, INC. and Defendants
GRAMERCY WAREHOUSE LENDING
I, LLC, SQUARE MILE STRUCTURED
FINANCE (ONE), LLC and  SQUARE
MILE STRUCTURED FINANCE
(TWO), LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:08-bk-15637-ES |
| LBREP/L-SUNCAL MCALLISTER RANCH, LLC, | Consolidated under No.8:08-bk-15588-ES |
| Debtor. | Judge:  Erithe A. Smith |
| SUPERIOR PIPELINES, INC., a California corporation, | Adv. Proc. No. 8:09-01318 |
| Plaintiff, | |
| vs. | **STIPULATION FOR ORDER APPROVING ASSIGNMENT** |
| LBREP/L-SUNCAL MCALLISTER RANCH, LLC, a Delaware limited liability company; etc., et al., | |
| Defendants. | |

1    Pursuant to Federal Rule of Bankruptcy Procedure 7041, incorporating Federal Rule

2  of Civil Procedure 41(a)(1)(A)(ii), plaintiff and counter-defendant Superior Pipelines, Inc.

3  ("Superior"), debtor and defendant LBREP/L-SunCal McAllister Ranch, LLC ("Owner"),

4  defendant and counter-claimant Lehman Commercial Paper, Inc. ("LCPI"), and defendant

5  McAllister Ranch Irrigation District ("MRID") hereby enter into this stipulation, through

6  their respective counsel of record.

7

8                                    **RECITALS**

9    A.    On September 11, 2008, an involuntary bankruptcy case was commenced

10  against Owner in the United States Bankruptcy Court for the Central District of California

11  as Case No. 08-15637-ES (the "Owner Bankruptcy Case").

12    B.    Superior filed a Proof of Claim in the Owner Bankruptcy Case in the

13  amount of $7,460,120.74 (the "Owner Reorganization Claim").

14    C.    Superior commenced this adversary action (the "Adversary Action") to

15  recover damages and to enforce claims of mechanic's lien against real property commonly

16  known as McAllister Ranch and to enforce the lien of a writ of attachment against funds in

17  the possession of MRID.  The action is proceeding on Superior's First Amended

18  Complaint.

19    D.    LCPI filed an Answer and Counterclaim seeking declaratory relief as to the

20  priority of a First Lien Deed of Trust securing a debt in the principal amount of

21  $235,000,000 and a Second Lien Deed of Trust securing a debt in the principal amount of

22  $85,000,000 on theories of the date of recording, subordination by contract, equitable

23  subrogation and others.  MRID filed an Answer, alleging its prior right to the funds in its

24  possession

25    E.    A Motion for Partial Summary Judgment by LCPI was argued on March 3

26  and 24, 2011.  Pursuant to Stipulation in anticipation of settlement, the Court deferred

27  announcement of its ruling.

28

LA2126601.4
207866-10051                    STIPULATION FOR ORDER APPROVING ASSIGNMENT

F.      With the assistance of a Mediator, the parties have entered into a Settlement Agreement (the "Settlement Agreement") under which, among other things, Superior has assigned to Fidelity National Title Insurance Company and First American Title Insurance Company the Owner Reorganization Claim and claims to enforce its asserted mechanic's liens against the property (the "Assignment").

G.      Alfred H. Siegel was the duly-appointed chapter 11 trustee in the Owner Bankruptcy Case, and is now the liquidating trustee  (the "Liquidating Trustee") of the liquidating trust created under the plan confirmed in the Owner Bankruptcy Case, and is signing this stipulation on behalf of Owner solely in his capacity as the Liquidating Trustee, not in an individual capacity.

## STIPULATION

Pursuant to the Settlement, the parties hereby stipulate, and request a court order thereon, as follows:

1.      The Owner Reorganization Claim shall be deemed assigned to Fidelity National Title Insurance Company and First American Title Insurance Company.

2.      The Adversary Action shall be dismissed in its entirety with prejudice.

3.      Each party shall bear its own fees and costs.

4.      The parties shall seek an order for this stipulated relief in both the Adversary Action and the jointly administered bankruptcy cases of In re LBREP/L-SunCal Master I LLC, No. 08-15588-ES (Bankr. C.D. Cal.).

*[SIGNATURE PAGE FOLLOWS]*

1

2   Dated as of April 15, 2011          KLEIN, DeNATALE, GOLDNER, COOPER,
                                         ROSENLIEB & KIMBALL, LLP
3

4                                        By:_____
                                            T. Scott Belden
5                                           Terrence T. Egland
                                            Attorneys for Plaintiff and Counter-
6                                           Defendant Superior Pipelines, Inc.

7
    Dated as of April 15, 2011          LOEB & LOEB LLP
8

9                                        By:_____
                                            Alan Wilken
10                                          Attorneys for Defendant and Counter-
                                            Claimant Lehman Commercial Paper, Inc.
11                                          and Defendants Gramercy Warehouse
                                            Lending I, LLC, Square Mile Structured
12                                          Finance (One), LLC and Square Mile
                                            Structured Finance (Two), LLC
13

14  Dated as of April 15, 2011          YOUNG WOOLDRIDGE, LLP

15
                                         By:_____
16                                          Michael Kaia
                                            Attorneys for Defendant McAllister Ranch
17                                          Irrigation District

18
    Dated as of April 15, 2011          WEILAND, GOLDEN, SMILEY, WANG,
19                                       EKVALL & STROK, LLP

20

21                                       By: _____
                                             Evan D. Smiley
22                                           Attorneys for Alfred H. Siegel, Solely in
                                             his Capacity as Liquidating Trustee
23

24

25

26

27

28

    LA2126601.4
    207866-10051          STIPULATION FOR ORDER APPROVING ASSIGNMENT

# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

In re                                         :    **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**    :    **08-13555 (JMP)**
                                              :
         **Debtors.**                         :    **(Jointly Administered)**

------------------------------------------------------------- x

**ORDER PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR
APPROVAL OF THAT CERTAIN SETTLEMENT AGREEMENT BY AND
AMONG LBREP/L-SUNCAL MCALLISTER RANCH, LLC, LEHMAN
COMMERCIAL PAPER, INC., FIDELITY NATIONAL TITLE INSURANCE
COMPANY, AMERICAN TITLE INSURANCE COMPANY, MCALLISTER RANCH
<u>IRRIGATION DISTRICT, AND SUPERIOR PIPELINES, INC.</u>**

Upon the motion, dated September 2, 2011 ( "<u>Motion</u>"),[1] of Lehman Commercial

Paper Inc. ("<u>LCPI</u>" and, together with its affiliated debtors in the above-referenced chapter 11

cases, the "<u>Debtors</u>"), pursuant to section 105 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure ( "<u>Bankruptcy</u>

<u>Rules</u>") for authorization to enter into and approval of a settlement pursuant to the Agreement for

Settlement of Contractor Claims With Mutual Releases and Covenants Not to Sue (the

"<u>Agreement</u>"); and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or
the Agreement.

the Motion having been provided in accordance with the procedures set forth in the amended

order entered June 17, 2010 governing case management and administrative procedures [ECF

No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) counsel to the SunCal Trustee, and (vii) all parties who have

requested notice in these chapter 11 cases, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Motion is in

the best interests of LCPI and its estate and that the legal and factual bases set forth in the

Motion and on the record establish just cause for the relief granted herein; and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Section 105 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Agreement is approved, and LCPI is duly authorized to (i) consummate all of the

transactions contemplated thereby and (ii) execute and deliver such documents and instruments

and to take such other actions as may be reasonably necessary to consummate the transactions

contemplated by the Agreement, it being understood that any actions described in this paragraph

taken by LCPI or its affiliates may be taken without the necessity of any further Court

proceedings or approval and shall be conclusive and binding in all respects on all parties in

interest in these cases; and it is further

ORDERED that the LCPI Reorganization Claim asserted by the Insurers against

LCPI is disallowed with prejudice and the Insurers shall promptly file a notice with the Court,

instructing the claims agent to expunge proof of claim number 14729 from the claims register;

and it is further

ORDERED that the Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto, in a writing

signed by such parties, and in accordance with the terms thereof, without further order of the

Court, *provided*, *however*, that any material modification, amendment or supplement shall be

presented for Court approval by motion of the parties thereto; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation or interpretation of this Order;

provided, however nothing contained in this decretal paragraph is intended to reduce the

exclusive jurisdiction of or predetermine any concurrent jurisdiction otherwise vested in the

Bankruptcy Court for the Central District of California in the SunCal Debtors' cases.

Dated: New York, New York
      September [ ], 2011

_____
UNITED STATES BANKRUPTCY JUDGE