NORRIS, McLAUGHLIN & MARCUS, PA  
Attorneys for The Estate of Fannie Marie Gaines  
875 Third Avenue, 8th Floor  
New York, New York 10022  
(212) 808-0700  
Mitchell G. Mandell (MM-9453)

<u>Hearing Date and Time:</u>  
**October 19, 2011 at 10:00 am**

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In Re:

LEHMAN BROTHERS HOLDINGS INC. *et al.*,

Debtors.

Chapter 11

Case No. 08-13555 (JMP)

------------------------------------------------------------X

## MOTION OF THE ESTATE OF FANNIE MARIE GAINES FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKR. P. 4001 GRANTING RELIEF FROM THE AUTOMATIC STAY TO NAME THE DEBTOR IN PENDING STATE COURT LITIGATION

The Estate of Fannie Marie Gaines ("Gaines") by and through its attorneys, Norris McLaughlin and Marcus, P.A., hereby file this motion (the "Motion") for entry of an order pursuant to Section 362(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking relief from the automatic stay to permit Gaines to name and serve the debtor, Lehman Brothers Holdings, Inc. (the "Debtor") in an action currently pending in the Superior Court for the County of Los Angeles, Central District entitled *Fannie Marie Gaines v. Tornberg, et al.*, Case No. BC361 768 (the "California Action"). In support of the Motion, Gaines respectfully represents as follows:

536402-2

## **PRELIMINARY STATEMENT**

1.      Gaines brings this Motion seeking relief from the automatic stay, pursuant to Section 362(d)(1) of the Bankruptcy Code, to name the Debtor in the California Action. The California Action is a quiet title action with respect to real property for which the Debtor holds a deed of trust to secure a loan in the amount of $865,000. In November of 2006, the late Fannie Marie Gaines commenced the California Action against various defendants seeking to obtain title back to her personal residence located at 1259/1261 South Longwood Avenue, Los Angeles, California 90019 (the "Property"). In addition to other causes of action for damages against eleven named defendants, the California Action is primarily based on California Civil Code Section 1695 *et. seq.* which is intended to protect California homeowners in foreclosure from being taken advantage of by home equity purchasers.

2.      At all times relevant to the allegations asserted in the California Action, Ms. Gaines was in excess of sixty-five years old and not financially sophisticated. She became the victim of a fraud after she and her husband defaulted on an approximately $554,000 loan from Countrywide Home Loans, Inc. ("Countrywide"). At the time of the default, Gaines and her husband had sufficient equity in their home, which was appraised at approximately $1,000,000. Nonetheless, they were advised by a representative of Countrywide, A.J. Roop, that Countrywide denied their request to obtain refinancing. Thereafter, A.J. Roop directed the Gaines to work with her fiancé, Joshua Tornberg ("Tornberg") and his business associates, Craig Johnson and Ray Management Group, Inc., to obtain refinancing. Tornberg and his cohorts informed Gaines that they could not obtain refinancing. Thereafter, they fraudulently and illegally induced Gaines to sell the Property to Tornberg under the guise that he would lease the Property back to them with an option to purchase. Viewing this proposal as the only way to save their home, the

Gaines agreed to do so. Tornberg then illegally encumbered the Property with the loan now held by the Debtor that is the subject of the California Action.

3. Tornberg and his cohorts failed to live up to their promises and ultimately sought to enter into a month to month lease with the Gaines. By the time they defaulted on their agreement to Gaines, Gaines had already been damaged as the escrow agent for the transaction released the Warranty Deed to Tornberg without waiting for the parties to reach a written lease agreement. Tornberg and his cohorts further encumbered the Property with two deeds of trusts. Initially, Gains believed Aurora Loan Servicing Corp. ("Aurora") was the holder of one deed of trust securing a loan of $865,000.

4. By asserting a quiet title claim in the California Action, Ms. Gaines initially named Aurora as a defendant in the California Action. Aurora admitted in a Verified Answer that it was the owner of the subject deed of trust. Months later, Aurora filed a motion seeking to file an Amended Verified Answer and advising that the Debtor is the owner of the subject deed of trust. Thereafter, Ms. Gaines passed away and her son continues such action as the Executor of her estate. In order to obtain relief in the California Action for the Estate of Ms. Gaines, Gaines brings this motion seeking relief from the automatic stay, pursuant to Section 362(d)(1) of the Bankruptcy Code, to name the Debtor in the California Action. If Gaines is not permitted to name the Debtor in the California Action, Gaines cannot obtain complete relief – title to the Property.

## JURISDICTION

5. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1344.

6. Consideration of this Motion is core proceeding pursuant to 28 U.S.C. § 157(b).

7. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicate for the relief sought herein is Section 362 of the Bankruptcy Code, as complemented by Bankruptcy Rule 4001.

## FACTUAL BACKGROUND

### The Debtors' Chapter 11 Cases

9. Commencing on September 15, 2008 and periodically thereafter, the debtor, Lehman Brothers Holdings, Inc. and certain of its subsidiaries (collectively the "Debtors") commenced voluntary cases under Chapter 11 of the Bankruptcy Code.

10. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

11. The Debtors are authorized to operate their businesses and manage their properties as debtors in position pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

12. On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code.

**The California Action and the Allegations in the Fifth Amended Complaint**

13. The Motion arises from an action entitled *Fannie Marie Gaines vs. Joshua Tornberg, et al.* currently pending before the Los Angeles Superior Court Case No. BC361768 (previously defined as the "California Action").

14. On or about November 13, 2006, Gaines commenced the California Action against various defendants seeking, among other relief, a declaratory ruling that she is the owner of her personal residence as well as to void various deeds of trust placed on the Property. See Declaration of W. Keith Wyatt, Esq., submitted herewith (hereinafter "Wyatt Dec.") at ¶ 4.

15. The allegations raised by Gaines in the California Action are well set forth in the most recent Complaint filed therein, the Verified Fifth Amended Complaint, dated January 28, 2010 (hereinafter the "Fifth Amended Complaint"). See Exhibit "A" to Wyatt Dec.

   a. In the Fifth Amended Complaint, Gaines alleges that prior to February 2006, she and her husband owned the Property, which was encumbered by an existing first deed of trust in the amount of approximately $554,000 made by defendant, Countrywide. Id. at ¶ 20. Upon information and belief, in 2006, Gaines had equity in the Property in excess of $500,000. Id. at ¶ 21.

   b. On or about February 2, 2006, Gaines and her husband received notice from Countrywide that they defaulted on their loan. Id. at ¶ 23. In an effort to save their home, Gaines and her husband began efforts to refinance their loan with Countrywide. Id. at ¶ 24. Specifically, they contacted defendant, A. J. Roop ("Roop"), a representative of Countrywide. Id. at ¶ 25.

   c. In or about June or July 2006, Roop advised Gaines that their loan application had been rejected by Countrywide, which was peculiar given the Property was appraised at $1 million. Id. at ¶¶ 25 and 29.

   d. Thereafter, Roop contacted Gaines and offered to have her fiancé, defendant, Joshua Tornberg assist Gaines and her husband in refinancing the loan. Gaines was advised that Tornberg worked with defendants, Craig Johnson ("Johnson") and Ray Management Group, Inc. ("Ray Management") (hereinafter Tornberg, Johnson and Ray Management shall collectively be referred to as the "Tornberg Defendants") and they assisted people who had difficulty in obtaining loans. Id. at ¶ 30.

e. In or about July 2006, the Tornberg Defendants contacted Gaines to begin the process of obtaining a refinancing loan on the Property. While the Property was appraised at approximately $1.25 million, the Tornberg Defendants informed Gaines that they were unable to obtain a refinance loan for her. Id. at ¶ 37.

f. In lieu of obtaining a refinancing loan for her, the Tornberg Defendants offered to purchase the Property for $950,000 and lease the Property back to Gaines and her husband with an option to re-purchase the Property. Id.

g. The Tornberg Defendants caused Gaines and her husband to execute a Warranty Deed to transfer title of the Property to Tornberg. Id. at ¶ 39. Upon information and belief, the Tornberg Defendants altered the version of the Warranty Deed and recorded a deed which was not signed by Gaines and her husband. Id. at ¶ 40. The Warranty Deed executed by Gaines was not a recordable deed and did not convey title to the Property to Tornberg. Id. at ¶ 41.

h. Thereafter, the Tornberg Defendants failed to live up to their prior agreement with respect to the lease. Rather than providing Gaines and her husband with a lease with an option to purchase the Property, the Tornberg Defendants presented Gaines with a month-to-month rental agreement. Id. at ¶ 47.

i. Upon information and belief, Gaines believes that after their acquisition of the Property, the Tornberg Defendants encumbered the Property in violation of Civil Code § 1695.6 by obtaining two loans from Green Point in the amount of $865,000 and a second loan in the amount of $150,000, which were both secured by deeds of trust on the Property. Id. at ¶ 49.

j. With respect to the $865,000 loan from Green Point (hereinafter the "Loan"), Gaines believed that it was transferred to Aurora. Id. at ¶ 50.

k. The Fifth Amended Complaint alleges the following causes of action against the respective defendants:

| CAUSES OF ACTION | DEFENDANTS |
|---|---|
| Count I – Fraud | Tornberg Defendants and Roop |
| Count II – Recession of Contract of Sale and Warranty Deed | Tornberg Defendants and Roop |
| Count III – Violation of Home Equity Sales Contract California Statutory Requirements | Tornberg Defendants and Roop |
| Count IV – Cancellation of Warranty Deed | Tornberg Defendants, Roop, GreenPoint Mortgage Funding, Inc., Aurora Loan, United |

536402-2                                                6

|  | Mortgage & Loan Investment, LLC and UM Acquisitions, LLC[1] |
|---|---|
| Count V – Constructive Trust | Tornberg Defendants and Roop |
| Count VI – Quiet Title | GreenPoint, Aurora Loan, United Mortgage, UM Acquisitions, and Tornberg Defendants |
| Count VII – Intentional Infliction of Emotional Distress | Tornberg Defendants and Roop |
| Count VIII – Negligence and Assisting of Elder Financial Abuse | Tornberg Defendants and Roop |
| Count IX – Negligence | Fidelity National Title Insurance Company ("Fidelity") and Bonnie Jo Rybicki ("Rybicki")[2] |
| Count X – For Assisting in Elder Financial Abuse | Fidelity and Rybicki |
| Count XI – Breach of Fiduciary Duty | Fidelity and Rybicki |

**The $865,000 Loan**

16.   As set forth above, Gaines believed that the $865,000 loan was owned by Aurora. Wyatt Dec. at ¶ 6.

17.   On or about March 18, 2008, counsel for Gaines, Keith Wyatt, Esq., received a letter from Scott Drosdick, who indicated that he was in-house counsel for Aurora. In said correspondence, Mr. Drosdick represented that Aurora was the current holder of the $865,000 loan on the Property, that the $865,000 loan did encumber the Property, and that the Property was currently being foreclosed upon by GMAC as an agent for Aurora. See Wyatt Dec. at ¶ 7 and Exhibit "B."

18.   Thereafter, on January 20, 2009, Aurora filed a Verified Answer to the Complaint (the "Verified Answer") to the Fourth Amended Complaint, which included Counts IV and VI as set forth above. See Exhibit "C" to Wyatt Dec. In paragraph 9 of the Verified Answer, Aurora admitted that " . . . it now has the rights to the $865,000 loan and possesses or could obtain the rights of the holder of the note and deed of trust." Id. at ¶ 9.

---

[1] Gaines alleges that UMLIC is the current owner of the $150,000 loan and that UM Acquisitions, LLC services such loan on its behalf.
[2] Fidelity and Rybicki served as the escrow agents for the subject transaction.

536402-2                                                     7

19. Later, in paragraph 18 of the Verified Answer, Aurora again admitted that ". . . it claims an interest in the subject property as alleged in this answer." Id. at ¶ 18.

20. Approximately ten months from its filing of the Verified Answer, on November 6, 2009, Aurora filed a motion in the California Action seeking leave to file an amended answer (hereinafter the "Aurora Motion"). See Exhibit "D" to Wyatt Dec. In its motion, Aurora confirmed that it had previously filed a Verified Answer in which it admitted that it ". . . claimed an interest in the subject property. . . " Id. at ¶ 18. However, Aurora further contended that it does not actually hold the interest which it had claimed it held in its Verified Answer. Id.

21. Instead, the Aurora Motion indicated that the owner of the subject loan was the Debtor, which counsel for Aurora represented was a Chapter 11 debtor before this Court. In the Aurora Motion, counsel for Aurora submitted that the Los Angeles Superior Court could not enter a judgment as to the lien of the deed of trust that Aurora serviced without violating the automatic stay. Id.

22. As set forth above, on January 28, 2010, Gaines filed the Fifth Amended Complaint. As it remained unclear as to whether the Debtor was the owner of the Loan, Gaines alleged that Aurora was the owner of the Loan. Wyatt Dec. at ¶ 12.

23. On or about August 19, 2010, Aurora filed a verified answer to the Fifth Amended Complaint (hereinafter the "Revised Answer"). See Exhibit "E" to Wyatt Dec. In paragraph 9 of the Revised Answer, Aurora denied that it was the owner of the $865,000 promissory note or that it possessed any rights against the Property other than such rights as it may have as the master servicer of the loan. Id. at ¶ 9. However, in paragraph 18 of the Revised Answer, Aurora again admitted that ". . . it claims an interest in the subject property as alleged in this answer." Id. at ¶ 18.

536402-2

8

24.     Given the several confusing and inconsistent allegations and contentions made by Aurora, counsel for Gaines requested that counsel for Aurora produce the instrument by which the Debtor claimed an interest in the Property. Counsel for Aurora produced a December 10, 2010 Assignment of Deed of Trust and Request for Special Notice, which reflects the assignment of a Deed of Trust, dated September 25, 2006, to Lehman Brothers Holdings, Inc. See Exhibit "F" to Wyatt Dec.

25.     It must be emphasized that in 2007, GMAC, the entity which was servicing the Loan on behalf of Aurora, attempted to foreclose on the Loan. On or about June 13, 2007, the late Fannie Marie Gaines paid the sum of $30,730.30 to reinstate the Loan and stop the foreclosure. See Wyatt Dec. at ¶ 15 and Exhibit "G."

**The Debtor as an Indispensable Party to the California Action**

26.     In the California Action, the trial judge has repeatedly indicated that the matter should not proceed to trial unless the issues related to title to the Property can be resolved in said trial, which can only occur if the Debtor is named in the action. The trial judge has indicated that it is not an efficient use of judicial resources to allow this litigation to proceed to trial on other issues and require a second trial to resolve the issues related to title. Therefore, Gaines believes that the Debtor, as the alleged holder of title to the subject property, is an indispensable party to the subject litigation. In fact, the trial judge advised that the California Action would be dismissed for lack of prosecution if the Debtor is not named in the California Action by September 28, 2011. Given the return date of the Motion, counsel for Gaines is requesting an extension of this deadline in the California Action. See Wyatt Dec. at ¶ 16.

27.     Gaines desires to name the Debtor in the California Action and to assert the following causes of action against the Debtor: (a) a claim to cancel the subject Warranty Deed;

and (b) a claim for quiet title of the Property. These claims are set forth as Counts IV and VI of the Fifth Amended Complaint. Id. at ¶ 17.

28. The California Action has been in litigation since November 13, 2006. All defendants appeared in the action. Written discovery has been exchanged between all parties with the exception of the Tornberg Defendants who have failed to respond to written discovery demands. The following depositions have taken place: Fannie Marie Gaines (by videotape), representatives of Countrywide and representatives of Fidelity. Id. at ¶ 18.

29. It should be noted that counsel for the Tornberg Defendants moved to withdraw as counsel for such defendants, which motion was granted on March 26, 2009. Since such time, the Tornberg Defendants have persisted in their failure to respond to discovery and have not appeared for any proceedings in the California Action. Id. at ¶ 19.

30. The California Action was scheduled for trial on August 20, 2009. The parties were fully prepared to proceed to trial at that time. However, Gaines reached a settlement agreement with Countrywide prior to the trial date. Because of the settlement, the trial date was continued as to all other parties so that further settlement discussions could occur among the remaining parties and so that the matter could be rescheduled for trial based upon the issues that remained to be tried against the non-settling defendants. Id. at ¶ 20.

31. As of today's date, no trial date is currently scheduled. Id. at ¶ 21.

32. If relief from the stay is granted and the Debtor is named in the California Action, counsel for Gaines believes that the Debtor will be allowed a reasonable period of time to conduct discovery and otherwise defend itself in the subject litigation. Id. at ¶ 22.

**Title Insurance for Gaines' Claims Against the Debtor**

33. Upon information and belief based on discussions between counsel for Aurora and counsel for Gaines, the Debtor may have title insurance for the claims that Gaines seeks to assert against the Debtor in the California Action. Id. at ¶ 23.

34. In July of 2011, this firm contacted counsel for the Debtor to inquire whether the Debtor has the requisite title insurance and to determine whether the parties could reach a resolution of the instant motion. See Declaration of Melissa A. Peña, submitted herewith ("Peña Dec.") at ¶ 3.

35. On July 15, 2011, this firm sent an email to counsel for the Debtor to determine if the matter could be resolved and to inquire as to the availability of title insurance. See Peña Dec. at Exhibit "A."

36. On July 25, 2011, counsel for the Debtor advised that the firm was reviewing this matter and would provide us with a response later that week. Id. at Exhibit "B."

37. To date, this firm has not received a response from the Debtor. Id. at ¶ 6.

38. While Gaines remains willing to discuss a resolution of the instant Motion with the Debtor, the California state court is requiring that efforts be made to name the Debtor in the California Action by September 28, 2011, which deadline Gaines is currently seeking to extend. See Wyatt Dec. at ¶ 16.

**Relief Requested and Basis Therefore**

39. By way of the Motion, Gaines respectfully request relief from the automatic stay, pursuant to Section 362(d) of the Bankruptcy Code, to name the Debtor in the California Action and assert the following claims against the Debtor: (a) a claim to void the Warranty Deed; and (b) a Quiet Title claim.

08-13555-mg    Doc 19707    Filed 09/06/11    Entered 09/06/11 13:38:51    Main Document
Pg 12 of 19


40. Section 362(d) of the Bankruptcy Code provides, in pertinent part; as follows:

(d) On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this [Section], such as by terminating, annulling, modifying, or conditioning such stay (1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C § 362(d)(1) (emphasis added).

41. "Cause" is not defined by the Bankruptcy Code and, consequently, whether "cause" exists to lift the automatic stay is determined on a case by case basis. In re Countryside Manor, Inc., 188 B.R. 489, 490 (Bankr. D. Conn. 1995). A movant seeking relief from the stay has the initial burden of establishing "cause" and, thereafter, the decision to lift the stay is in the sound discretion of the bankruptcy judge. In re Sonnax Insutries, Inc., 907 F.2d 1280, 1285 (2d Cir. 1990).

42. In determining whether there is "cause" to lift the automatic stay to allow a claimant to proceed with litigation in another forum, the Second Circuit considers the following factors:

*[a] whether relief would result in a partial or complete resolution of all issues;*

*[b] lack of any connection with or interference with the bankruptcy case;*

[c] whether the other proceeding involves the debtor as a fiduciary;

*[d] whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;*

*[e] whether the action primarily involves third parties;*

*[f] whether litigation in another forum would prejudice the interest of other creditors;*

[g] whether the judgment claim arising from the other action is subject to equitable subordination;

[h] whether movant's success in the other proceeding would result in a judicial lien avoidable by a debtor;

*[i] the interests of judicial economy and the expeditious economic resolution of litigation;*

*[j] whether the parties are ready for trial in the other proceeding; and*

*[k] the impact of the stay on the parties and the balance of harms.*

In re: Burger Boys, Inc., 183 B.R. 682, 688 (S.D.N.Y. 1994) *citing* In re: Sonnax Industries, Inc., *supra* at 1280 (emphasis added).[3]

43.     "[O]nly those factors relevant to a particular case need [to be] considered, . . . and the Court need not assign them equal weight." In re Burger Boys, Inc., *supra* at 688 quoting In re Helen Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). See also In re: Laventhol & Haworth, 139 B.R. 109, 117 (S.D.N.Y. 1992) (granting motion to lift automatic stay to allow clamant to proceed with prepetition litigation in another district based solely on the following factors: the interests of judicial economy, the expeditious and economical resolution of litigation, and the parties' readiness for trial). As detailed below, it is evident that the above italicized factors warrant the granting of Gaines' motion.

44.     First and foremost, this Court should grant Gaines relief from the automatic stay to name the Debtor in the California Action as (i) litigation in such action will result in a complete resolution of all issues; (ii) the California state court is the proper forum for such action; (iii) the litigation involves third parties; and (iv) proceeding with the California Action is in the interest of judicial economy.

---

[3] Although Gaines did not name the Debtor in the California Action prior to the commencement of the bankruptcy case, these factors would still apply to its efforts to do so now. See In re: Countrywide Manor, Inc., *supra* at 490 (applying Sonnax factors to defendants' motion seeking to modify the automatic stay to allow defendants to file a counterclaim against the debtor).

536402-2                                                          13

45.    "Cause" exists to vacate the automatic stay when it is "necessary to permit litigation to be *concluded* in another forum, particularly if the non-bankruptcy suit involves multiple parties *or* is ready for trial." In re: Mid-Atlantic Handling Systems, 304 B.R. 111, 130 (D.N.J. 2003) (emphasis added). The legislative history of Section 362(d)(1) provides as follows:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

Id. quoting S. Rep. No. 95-989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.

46.    In In re: Overview Equities, Inc., 240 B.R. 683 (Bankr. E.D.N.Y. 1999), the Court considered whether a claimant should be granted relief from the automatic stay to proceed with a state court fraudulent conveyance action whereby the claimant sought the equitable relief of obtaining title to the debtor's sole asset, real property. Prior to the commencement of the bankruptcy action, the debtor acquired the real property from an individual. A few months after the transfer, claimant obtained a judgment against the individual in excess of $2,000,0000 and commenced a state court action seeking to set aside the transfer of the property to the debtor as a fraudulent conveyance. Claimant also sought to void various liens placed on the property by the debtor. Id. at 694.

47.    In determining that the automatic stay should be lifted to allow the claimant to proceed with the state court action, the Overview Equities court reasoned as follows:

> Based on the factors set forth in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir. 1990), vacatur of the stay is warranted. First, continuation of the state court action will result in complete resolution of the issues in regard to the ownership interest of the Debtor in the Property. Some court must hear the allegations of the Claimant regarding the alleged fraudulent conveyance of the Property, and the state court is poised to hear the matter to its conclusion.

\* \* \*

> The interests of judicial economy will be served by permitting the state court to try the fraudulent conveyance action. It is alleged that the state court action is ready for trial and [the state court judge] is ready to take the case on consecutive days, and hear it to its conclusion. The issues raised in the state court action concern purely state law issues, and the state court has sufficient expertise to hear this matter. It would be a waste of judicial resources for this Court to determine the issues the state court is to hear in the fraudulent conveyance action.

Id. at 687.

48.  Here, similar to the holding in Overview Equities, this Court should vacate the automatic stay to allow Gaines to name and serve the Debtor in the California Action. Currently, there remains eight non-debtor defendants in the California Action, all of which/whom have appeared in the action. It is questionable whether this Court has jurisdiction over such defendants.

49.  If Gaines was required to assert her claims separately against the Debtor in the Bankruptcy Court, there is a risk that there will be inconsistent results between the two forums. See In re: Davis, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988) ("Cause for lifting the stay exist here, principally because of the risk if the stay is not lifted, of inconsistent results in two forums, of a conflict in the interpretation of state law between this court and the state court, and of duplication of lawyer and judicial effort."). If the California court is even inclined to hear the action in the absence of the Debtor being named as a defendant therein, a determination of this matter by the California court may differ from this Court. As detailed in the Wyatt Dec., the Tornberg Defendants have failed to appear for any proceedings in the California Action since 2009. Due to their failure to provide discovery and/or failure to appear for a trial, it is likely that the California Superior Court will enter default judgments against such defendants upon Gaines establishing its proofs under California state law. If Gaines were to proceed against the Debtor

536402-2                                15

in Bankruptcy Court, this Court's application of California state law may differ thereby resulting in a determination that Gaines is not entitled to obtain title to the Property. Under these circumstances, there will be no way to reconcile the default judgments entered by the California Superior Court and the holding of this Court.

50. Furthermore, it should not be lost on this Court that the parties have engaged in significant discovery in the California Action. Although no trial date has been established by the California Superior Court, all parties have exchanged discovery with the exception of the Tornberg Defendants and the parties have conducted the depositions of Ms. Gaines, representatives of Countrywide and representatives of Fidelity. This discovery can easily be shared with the Debtor and the Debtor can quickly be brought up to speed. It would be an utter waste of judicial resources if this Court were to deny the instant motion and cause Gaines to assert her claims against the Debtor in the Bankruptcy Court thereby starting the approximately five year litigation from square one.

51. Furthermore, Gaines respectfully submits that the California Superior Court is the proper forum to hear the instant dispute. See In re: Conference of African Union First Colored Methodist Protestant Church, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is "cause" for relief under Code § 362(d)(1)."). The causes of action at issue in the California Action involve solely California state law, including interpretation of California statutes. Specifically, Gaines alleges that Roop and the Tornberg Defendants violated the Home Equity Sales Contract Act ("HESCA")/California Civil Code Sections 1695.2 to 1695.6. Gaines further alleges that the act of the Tornberg Defendants taking out of the Loan without Gaines' written consent violated HESCA/California Civil Code section 1695.6(e). The subject statutory provisions are intended to

prevent homeowners whose residences are in foreclosure from being subjected to fraud, deception, and unfair dealing by home equity purchasers. The California Superior Court frequently rules upon these claims and, as such, the California state court is the more appropriate forum to hear the matter.

52. Moreover, allowing Gaines to proceed against the Debtor in the California Action will not prejudice the Debtor's bankruptcy estate. The $865,000 loan is of little import to the Debtor's bankruptcy case and a finding that the subject deed of trust is void will not derail the Debtors' Chapter 11 cases. Furthermore, upon information and belief, the Debtor has title insurance, which covers the underlying dispute and, thus, any judgment obtained by Gaines will not diminish the assets available for distribution to creditors.

53. Lastly, a balancing of the equities favors granting Gaines relief from the automatic stay. If Gaines is denied relief from the automatic stay, Gaines will be unable to obtain complete relief - title to the Property. Gaines commenced the California Action in 2006. At the time, Ms. Gaines litigated the action in an effort to obtain title back to her personal residence. In 2007, Ms. Gaines was forced to pay GMAC the sum of $30,700 to stop the foreclosure of the Loan when she did not receive any of the $865,000 loaned to the Tornberg Defendants. Three years into the litigation, on November 29, 2009, Ms. Gaines passed away. Her son was appointed as the Executor of her estate and continues to prosecute the California Action on behalf of the Estate. Ms. Gaines and her Estate have invested significant time and energy in the California Action. The Estate will be irreparably harmed if Gaines is not provided with its day in Court against the Tornberg Defendants. In contrast, if the Debtor is required to defend against the California Action, the Debtor will have ample time to proceed with discovery

and, upon information and belief, the costs associated with litigating the matter may be covered by its title insurance policy.

54. Based on the foregoing, Gaines respectfully requests that the Court enter an Order granting her relief from the automatic stay to name and serve the Debtor in the California Action.

55. As detailed in the Wyatt Dec., the California Superior Court is requiring that Gaines makes efforts to name the Debtor in such action by September 28, 2011. While Gaines is seeking an extension of such deadline, it is anticipated that any extension will be brief and correspond with the October 19th return date for the instant motion. Accordingly, if the Court is inclined to grant the Motion, Gaines respectfully requests the Court order that the 10-day stay provided under Bankruptcy Rule 4001(a)(3) shall not apply with respect to Gaines naming the Debtor in the California Action.

## WAIVER

56. Because this Motion does not present any novel issues of law, Gaines respectfully requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of the Motion. Gaines reserves the right, however, to submit a reply memorandum of law in the event objections to this Motion are filed.

## CONCLUSION

57. For these reasons Gaines respectfully requests entry of an Order, substantially in the form of the proposed order annexed hereto as Exhibit A.

WHEREFORE, for the reasons set forth herein, Gaines requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated:    September 6, 2011
         New York, New York

                              NORRIS MCLAUGHLIN & MARCUS, P.A.
                              *Attorneys for The Estate of Fannie Marie Gaines*

By:    /s/Mitchell G. Mandell
       Mitchell G. Mandell (MM-9453)
       875 Third Avenue – 8th Floor
       New York, New York 10022
       Telephone: (212) 808-0700
       Facsimile: (212) 808-0844