NORRIS, McLAUGHLIN & MARCUS, PA
Attorneys for The Estate of Fannie Marie Gaines
875 Third Avenue, 8th Floor
New York, New York 10022
(212) 808-0700
Mitchell G. Mandell (MM-9453)

<u>Hearing Date and Time:</u>
**October 19, 2011 at 10:00 am**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

In Re:

LEHMAN BROTHERS HOLDINGS INC. *et al.*,

        Debtors.

Chapter 11

Case No. 08-13555 (JMP)

-----------------------------------------------------------------X

**DECLARATION OF W. KEITH WYATT IN SUPPORT OF THE MOTION OF THE ESTATE OF FANNIE MARIE GAINES FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKER. P. 4001 GRANTING RELIEF FROM THE AUTOMATIC STAY TO NAME THE DEBTOR IN PENDING STATE COURT <u>LITIGATION</u>**

I, W. Keith Wyatt, declare under the penalty of perjury, as follows:

1.    I am an attorney duly licensed to practice law in the State of California, and I am a member of the law firm of Ivie McNeill & Wyatt, the counsel of record for plaintiff, Fannie Marie Gaines/the Estate of Fannie Marie Gaines ("Gaines") in an action entitled *Fannie Marie Gaines vs. Joshua Tornberg, et al.* currently pending before the Los Angeles Superior Court Case No. BC361768 (hereinafter the "California Action"). As such, I have knowledge of the facts set forth herein.

2.     I submit this Declaration in support of Gaines' motion (the "Motion") for entry of an order pursuant to Section 362(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* and Rule 4001 of the Federal Rules of Bankruptcy Procedure seeking relief from the automatic stay to permit Gaines to name and serve the debtor, Lehman Brothers Holdings, Inc. (the "Debtor") in the California Action.

3.     On or about October 5, 2006, my firm was retained to represent Ms. Fannie Marie Gaines in connection with her efforts to reclaim title to her personal residence located at 1259/1261 South Longwood Avenue, Los Angeles, California 90019 (the "Property").

**The California Action and the Allegations in the Fifth Amended Complaint**

4.     On or about November 13, 2006, Gaines[1] commenced the California Action against various defendants seeking, among other relief, a declaratory ruling that she is the owner of her personal residence as well as to void various deeds of trust placed on the Property.

5.     The allegations raised by Gaines in the California Action are well set forth in the most recent Complaint filed therein, the Verified Fifth Amended Complaint, dated January 28, 2010 (hereinafter the "Fifth Amended Complaint"). Annexed hereto as Exhibit "A" is a true and accurate copy of the Fifth Amended Complaint.

    a. In the Fifth Amended Complaint, Gaines alleges that prior to February 2006, she and her husband owned the Property, which was encumbered by an existing first deed of trust in the amount of approximately $554,000 made by defendant, Countrywide. Id. at ¶ 20. Upon information and belief, in 2006, Gaines had equity in the Property in excess of $500,000. Id. at ¶ 21.

    b. On or about February 2, 2006, Gaines and her husband received notice from Countrywide that they defaulted on their loan. Id. at ¶ 23. In an effort to save their home, Gaines and her husband began efforts to refinance their loan with

---

[1] The late Fannie Marie Gaines commenced the California Action. Three years into the litigation, on November 29, 2009, Ms. Gaines passed away. Her son was appointed as the Executor of her estate and continues to prosecute the California Action on behalf of the Estate.

536844-1                                2

Countrywide. Id. at ¶ 24. Specifically, they contacted defendant, A. J. Roop ("Roop"), a representative of Countrywide. Id. at ¶ 25.

c. In or about June or July 2006, Roop advised Gaines that their loan application had been rejected by Countrywide, which was peculiar given the Property was appraised at $1 million. Id. at ¶¶ 25 and 29.

d. Thereafter, Roop contacted Gaines and offered to have her fiancé, defendant, Joshua Tornberg assist Gaines and her husband in refinancing the loan. Gaines was advised that Tornberg worked with defendants, Craig Johnson ("Johnson") and Ray Management Group, Inc. ("Ray Management") (hereinafter Tornberg, Johnson and Ray Management shall collectively be referred to as the "Tornberg Defendants") and they assisted people who had difficulty in obtaining loans. Id. at ¶ 30.

e. In or about July 2006, the Tornberg Defendants contacted Gaines to begin the process of obtaining a refinancing loan on the Property. While the Property was appraised at approximately $1.25 million, the Tornberg Defendants informed Gaines that they were unable to obtain a refinance loan for her. Id. at ¶ 37.

f. In lieu of obtaining a refinancing loan for her, the Tornberg Defendants offered to purchase the Property for $950,000 and lease the Property back to Gaines and her husband with an option to re-purchase the Property. Id.

g. The Tornberg Defendants caused Gaines and her husband to execute a Warranty Deed to transfer title of the Property to Tornberg. Id. at ¶ 39. Upon information and belief, the Tornberg Defendants altered the version of the Warranty Deed and recorded a deed which was not signed by Gaines and her husband. Id. at ¶ 40. The Warranty Deed executed by Gaines was not a recordable deed and did not convey title to the Property to Tornberg. Id. at ¶ 41.

h. Thereafter, the Tornberg Defendants failed to live up to their prior agreement with respect to the lease. Rather than providing Gaines and her husband with a lease with an option to purchase the Property, the Tornberg Defendants presented Gaines with a month-to-month rental agreement. Id. at ¶ 47.

i. Upon information and belief, Gaines believes that after their acquisition of the Property, the Tornberg Defendants encumbered the Property in violation of Civil Code § 1695.6 by obtaining two loans from Green Point in the amount of $865,000 and a second loan in the amount of $150,000, which were both secured by deeds of trust on the Property. Id. at ¶ 49.

j. With respect to the $865,000 loan from Green Point (hereinafter the "Loan"), Gaines believed that it was transferred to Aurora. Id. at ¶ 50.

536844-1                                    3

k.  The Fifth Amended Complaint alleges the following causes of action against the respective defendants:

| CAUSES OF ACTION | DEFENDANTS |
| --- | --- |
| Count I – Fraud | Tornberg Defendants and Roop |
| Count II – Recession of Contract of Sale and Warranty Deed | Tornberg Defendants and Roop |
| Count III – Violation of Home Equity Sales Contract California Statutory Requirements | Tornberg Defendants and Roop |
| Count IV – Cancellation of Warranty Deed | Tornberg Defendants, Roop, GreenPoint Mortgage Funding, Inc., Aurora Loan, United Mortgage & Loan Investment, LLC and UM Acquisitions, LLC[2] |
| Count V – Constructive Trust | Tornberg Defendants and Roop |
| Count VI – Quiet Title | GreenPoint, Aurora Loan, United Mortgage, UM Acquisitions, and Tornberg Defendants |
| Count VII – Intentional Infliction of Emotional Distress | Tornberg Defendants and Roop |
| Count VIII – Negligence and Assisting of Elder Financial Abuse | Tornberg Defendants and Roop |
| Count IX – Negligence | Fidelity National Title Insurance Company ("Fidelity") and Bonnie Jo Rybicki ("Rybicki")[3] |
| Count X – For Assisting in Elder Financial Abuse | Fidelity and Rybicki |
| Count XI – Breach of Fiduciary Duty | Fidelity and Rybicki |

**The $865,000 Loan**

6.  As set forth above, Gaines believed that the $865,000 loan was owned by Aurora.

7.  On or about March 18, 2008, I received a letter from Scott Drosdick, who indicated that he was in-house counsel for Aurora. In said correspondence, Mr. Drosdick represented that Aurora was the current holder of the $865,000 loan on the Property, that the $865,000 loan did encumber the Property, and that the Property was currently being foreclosed upon by GMAC as an

---

[2] Gaines alleges that UMLIC is the current owner of the $150,000 loan and that UM Acquisitions, LLC services such loan on its behalf.
[3] Fidelity and Rybicki served as the escrow agents for the subject transaction.

536844-1                                    4

agent for Aurora. Annexed hereto as Exhibit "B" is a true and accurate copy of the March 18, 2008 correspondence from Scott Drosdick.

8. Thereafter, on January 20, 2009, Aurora filed a Verified Answer to the Complaint (the "Verified Answer") to the Fourth Amended Complaint, which included Counts IV and VI as set forth above. Annexed hereto as Exhibit "C" is a true and accurate copy of the Verified Answer. In paragraph 9 of the Verified Answer, Aurora admitted that " . . . it now has the rights to the $865,000 loan and possesses or could obtain the rights of the holder of the note and deed of trust." Id. at ¶ 9.

9. Later, in paragraph 18 of the Verified Answer, Aurora again admitted that " . . . it claims an interest in the subject property as alleged in this answer." Id. at ¶ 18.

10. Approximately ten months from its filing of the Verified Answer, on November 6, 2009, Aurora filed a motion in the California Action seeking leave to file an amended answer (hereinafter the "Aurora Motion"). Annexed hereto as Exhibit "D" is a true and accurate copy of the Aurora Motion. In its motion, Aurora confirmed that it had previously filed a Verified Answer in which it admitted that it " . . . claimed an interest in the subject property. . . " Id. at ¶ 18. However, Aurora further contended that it does not actually hold the interest which it had claimed it held in its Verified Answer. Id.

11. Instead, the Aurora Motion indicated that the owner of the subject loan was the Debtor, which counsel for Aurora represented was a Chapter 11 debtor before this Court. In the Aurora Motion, counsel for Aurora submitted that the Los Angeles Superior Court could not enter a judgment as to the lien of the deed of trust that Aurora serviced without violating the automatic stay. Id.

12. As set forth above, on January 28, 2010, Gaines filed the Fifth Amended Complaint. As it remained unclear as to whether the Debtor was the owner of the Loan, Gaines alleged that Aurora was the owner of the Loan.

13. On or about August 19, 2010, Aurora filed a verified answer to the Fifth Amended Complaint (hereinafter the "Revised Answer"). Annexed hereto as Exhibit "E" is a true and accurate copy of the Revised Answer. In paragraph 9 of the Revised Answer, Aurora denied that it was the owner of the $865,000 promissory note or that it possessed any rights against the Property other than such rights as it may have as the master servicer of the loan. Id. at ¶ 9. However, in paragraph 18 of the Revised Answer, Aurora again admitted that ". . . it claims an interest in the subject property as alleged in this answer." Id. at ¶ 18.

14. Given the several confusing and inconsistent allegations and contentions made by Aurora, I requested that counsel for Aurora produce the instrument by which the Debtor claimed an interest in the Property. Counsel for Aurora produced a December 10, 2010 Assignment of Deed of Trust and Request for Special Notice, which reflects the assignment of a Deed of Trust, dated September 25, 2006, to Lehman Brothers Holdings, Inc. Annexed hereto as Exhibit "F" is a true and accurate copy of the December 10, 2010 Assignment Deed of Trust and Request for Special Notice.

15. It must be emphasized that in 2007, GMAC, the entity which was servicing the Loan on behalf of Aurora, attempted to foreclose on the Loan. On or about June 13, 2007, the late Fannie Marie Gaines paid the sum of $30,730.30 to reinstate the Loan and stop the foreclosure. Annexed hereto as Exhibit "G" are true and accurate copies of documents evidencing Ms. Gaines' payment.

**The Debtor as an Indispensable Party to the California Action**

16.     In the California Action, the trial judge has repeatedly indicated that the matter should not proceed to trial unless the issues related to title to the Property can be resolved in said trial, which can only occur if the Debtor is named in the action. The trial judge has indicated that it is not an efficient use of judicial resources to allow this litigation to proceed to trial on other issues and require a second trial to resolve the issues related to title. Therefore, I believe that the Debtor, as the alleged holder of title to the subject property, is an indispensable party to the subject litigation. In fact, the trial judge advised that the California Action would be dismissed for lack of prosecution if the Debtor is not named in the California Action by September 28, 2011. Given the return date of the Motion, I am requesting an extension of this deadline in the California Action. I anticipate that any extension will be brief and correspond with the October 19th return date for the instant motion.

17.     Gaines desires to name the Debtor in the California Action and to assert the following causes of action against the Debtor: (a) a claim to cancel the subject Warranty Deed; and (b) a claim for quiet title of the Property. These claims are set forth as Counts IV and VI of the Fifth Amended Complaint.

18.     The California Action has been in litigation since November 13, 2006. All defendants appeared in the action. Written discovery has been exchanged between all parties with the exception of the Tornberg Defendants who have failed to respond to written discovery demands. The following depositions have taken place: Fannie Marie Gaines (by videotape), representatives of Countrywide and representatives of Fidelity.

19.     It should be noted that counsel for the Tornberg Defendants moved to withdraw as counsel for such defendants, which motion was granted on March 26, 2009. Since such time, the

Tornberg Defendants have persisted in their failure to respond to discovery and have not appeared for any proceedings in the California Action.

20. The California Action was scheduled for trial on August 20, 2009. The parties were fully prepared to proceed to trial at that time. However, Gaines reached a settlement agreement with Countrywide prior to the trial date. Because of the settlement, the trial date was continued as to all other parties so that further settlement discussions could occur among the remaining parties and so that the matter could be rescheduled for trial based upon the issues that remained to be tried against the non-settling defendants.

21. As of today's date, no trial date is currently scheduled.

22. If relief from the stay is granted and the Debtor is named in the California Action, I believe that the Debtor will be allowed a reasonable period of time to conduct discovery and otherwise defend itself in the subject litigation.

23. Upon information and belief based on discussions between counsel for Aurora and my firm, the Debtor may have title insurance for the claims that Gaines seeks to assert against the Debtor in the California Action.

Dated: Los Angeles, California
       September 2, 2011

_____
W. Keith Wyatt

536844-1                                    8