Hearing Date and Time: September 14, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Michael C. Ledley

Counsel for the SASCO Defendants

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
:
In re                                            :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,         :    08-13555 (JMP)
:
Debtors.                         :    (Jointly Administered)
:
---------------------------------------------------------------------x

**OBJECTION OF THE SASCO DEFENDANTS TO THE MOTION OF THE
EQUITY/DEBT DEFENDANTS, PURSUANT TO SECTION 362 OF THE
BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO
ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS
INSURANCE POLICY TO SETTLE THE EQUITY/DEBT CLASS ACTION**

Lana Franks Harber, Edward Grieb, Richard McKinney, Kristine Smith, James J. Sullivan, Samir Tabet, and Mark Zusy (collectively, the "SASCO Defendants"), former officers and directors of Debtor Structured Asset Securities Corporation ("SASCO"), through their undersigned counsel, hereby object to the Motion of Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian T. Lowitt, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively, the "Equity/Debt Defendants"), Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Settlement Payment Under Directors and Officers Insurance Policy to

Settle the Equity/Debt Class Action (the "Motion").[1]  In support of this objection, the SASCO Defendants state as follows:

### Preliminary Statement

1.     The SASCO Defendants submit this objection to prevent the Equity/Debt Defendants from expending a disproportionate and inequitable portion of the available directors' and officers' liability ("D&O") insurance for their own benefit, while at the same time certain Equity/Debt Defendants are threatening to prevent the use of D&O insurance proceeds to enter into a reasonable settlement of billions of dollars in claims against the SASCO Defendants. Permitting one class of insureds to use such tactics to divert a disproportionate share of insurance proceeds for their own benefit to the exclusion of other classes of insureds is inequitable, contrary to the purpose of the available D&O insurance and would have an adverse economic impact on the Debtors' estates.

2.     Therefore, the SASCO Defendants respectfully request that the Court deny the Motion and enter an order, pursuant to Sections 362 and 105(a) of the Bankruptcy Code, preserving the remaining limits of 2007-08 D&O Policy and providing for a fair and reasonable allocation of the remaining proceeds among the SASCO Defendants and the Equity/Debt Defendants to resolve pending and future claims.

3.     The SASCO Defendants recognize that the Court previously overruled an objection by the State of New Jersey, Department of Treasury, Division of Investments, a plaintiff in a pending securities action, and, on July 21, 2011, entered an order authorizing payment of D&O insurance proceeds to satisfy an arbitration award [Docket No. 18691]. However, the SASCO Defendants respectfully submit that the present Motion and the SASCO Defendants' objection present very different issues.  Unlike the New Jersey Division of

---

[1]     Capitalized terms not defined herein shall have the meanings set forth in the Motion.

2

Investments, the SASCO Defendants are not mere claimants with, at best, an indirect, contingent interest in the proceeds of the D&O policies. The SASCO Defendants are direct insureds who are being denied insurance protection to which they are entitled. The SASCO Defendants also have unconditional rights to indemnification from the Debtors for any uninsured losses they incur in the MBS Class Action and other MBS-related securities actions, and therefore any uninsured losses they incur will have a direct, adverse impact the Debtors' estates.

**Background**

4. Since 2007, numerous securities actions have been filed against current and former officers and directors of Debtor Lehman Brothers Holdings, Inc. ("LBHI") and its various debtor affiliates, including SASCO. The SASCO Defendants have been named in a number of securities actions arising out of the issuance of mortgage-backed securities ("MBS"), including a putative class action pending in an MDL proceeding the Southern District of New York before Judge Lewis Kplan captioned *In re Lehman Brothers Mortgage-Backed Securities Litigation*, No. 08-CV-6762 (LAK) (the "MBS Class Action").[2] Plaintiffs in the MBS Class Action assert claims under the Securities Act of 1933 on behalf of a putative class of purchasers of more than $24 billion in MBS issued by SASCO and sponsored by LBHI and seek alleged damages in excess of $4 billion. *See* Ex. A (September 7, 2011 letter from plaintiffs' counsel asserting that their estimate of damages "exceeds $4 billion"). On February 17, 2010, Judge Kaplan granted in part and denied in part the SASCO Defendants' Motion to Dismiss. However, the MBS Class Action was stayed pending a decision on motions to dismiss in the Equity/Debt Class Action,

---

[2] The SASCO Defendants are also named in two other MBS-related securities actions: (1) *Stichting Pensioenfronds ABP v. Merrill Lynch & Co., Inc., et al.*, 10 Civ. 651325 (LAK), pending before Judge Kaplan in the Southern District of New York; and (2) *Federal Home Loan Bank of Boston v. Franks, et al.*, Civil Action No. 11-10924 (O'Toole, D.J.), currently pending in the District of Massachusetts.

3

which Judge Kaplan issued on July 27, 2011.  Class discovery in the MBS Class Action is expected to begin later this month.

5. Debtors LBHI and SASCO owe the SASCO Defendants indemnification obligations pursuant to their respective by-laws.  In connection with these indemnification obligations, the Debtors purchased primary and excess D&O insurance, which provides coverage for the Debtors' current and former officers and directors, including both the SASCO Defendants and the Equity/Debt Defendants, in connection with civil, criminal and regulatory proceedings.  Specifically, the Debtors purchased two "towers" of primary and excess D&O insurance effective, respectively, from May 16, 2007 to May 16, 2008 (the "2007-08 D&O Policy") and from May 16, 2008 to May 16, 2009 (as later extended through the purchase of "tail" coverage to May 16, 2011) (the "2008-09 D&O Policy").  The 2007-08 D&O Policy and the 2008-09 D&O Policy each provide for (i) "Side A" coverage for losses on claims asserted against insured directors and officers, and (ii) "Side B" coverage for indemnification claims asserted against the Debtors.  Each Policy has aggregate primary and excess limits totaling $250 million.

6. The SASCO Defendants and the Debtors contend that the securities claims asserted against them in the MBS Class Action and other MBS-related actions are covered under the 2008-09 D&O Policy.  The Debtors' D&O insurers, however, have taken the position that the claims in the MBS Class Action and other MBS actions, although first asserted during the term of the 2008-09 D&O Policy, relate back to other claims first asserted during term of the 2007-08 D&O Policy and therefore are covered under that policy.  The D&O insurers have refused to pay any amounts out of the 2008-09 D&O Policy in respect of the MBS Class Action, and defense costs incurred in connection with the MBS Class Action have been paid out of the 2007-08 D&O Policy.  Accordingly, proceeds under the 2008-09 D&O Policy are unavailable to the SASCO

4

Defendants unless the SASCO Defendants and/or the Debtors commit to costly and time consuming litigation with the D&O insurers.[3]

7.      The plaintiffs in the MBS Class Action have made a demand on the SASCO Defendants to settle the MBS Class Action for $45 million.  Ex. A (September 7, 2011 letter from Plaintiffs' counsel).  The SASCO Defendants understand the $45 million demand to be within the remaining limits of the 2007-08 D&O Policy.  The SASCO Defendants believe that $45 million falls within the range of reasonableness and are prepared to negotiate an agreement in that range.  Certain Equity/Debt Defendants, however, have threatened litigation if any substantial portion of the proceeds of the 2007-08 D&O Policy is used to settle the MBS Class Action.

8.      To date, tens of millions of dollars in defense costs have been paid out under the 2007-08 D&O Policy and a large portion of those defense costs were incurred by the Equity/Debt Defendants in connection with various civil, criminal and regulatory proceedings. On August 24, 2011, the Equity/Debt Defendants sought authorization from the Court to use $8.25 million to settle a securities action commenced by the New Jersey Division of Investment. By this Motion, the Equity/Debt Defendants seek to use another $90 million of proceeds from the 2007-08 D&O Policy to settle the Equity/Debt Class Action.  Moreover, the SASCO Defendants expect that the Equity/Debt Defendants will quickly attempt to settle other claims asserted against them, exhausting the remaining limits under the 2007-08 D&O Policy.  In short, the Equity/Debt Defendants already have expended substantial amounts of the 2007-08 D&O Policy in defending the various civil, criminal and regulatory actions and seek to appropriate all

---

[3]  The SASCO Defendants do not waive, and hereby expressly reserve, all rights under both the 2007-08 D&O Policy and the 2008-09 D&O Policy, including the right to seek coverage under the 2008-09 D&O Policy.

5

of the remaining proceeds under the 2007-08 D&O Policy for their own benefit, to the exclusion of the SASCO Defendants.

## Argument

9.    Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action to obtain possession or take control over property of the bankrupt estate. 11 U.S.C. § 362(a)(3). As the Equity/Debt Defendants acknowledge, insurance policies are property of the bankrupt estate and covered by the automatic stay provisions of the Bankruptcy Code. Motion, ¶ 24 (*citing MacArthur C. v. Johns-Mannville Corp.*, 837 F.2d 89 (2d Cir. 1988)).

10.    The law is unsettled, however, as to whether the proceeds of a D&O policy are property of the bankrupt estate and subject to the automatic stay. *Compare In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995) (holding that proceeds of D&O policy were property of the estate); *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517 (9th Cir. 1986) (same); *In re Jasmine, Ltd.*, 258 B.R. 119 (D.N.J. 2000) (same); *In re Spectrum Info. Techs., Inc.*, 183 B.R. 360 (Bankr. E.D.N.Y. 1995) (same); *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413 (Bankr. E.D. Pa. 1995) (same); *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990) (same) *with In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003); Motion, ¶ 24 (citing other cases).

11.    It is undisputed that the remaining limits of the 2007-08 D&O Policy are insufficient to cover all of the pending securities claims, and both the SASCO Defendants and the Equity/Debt Defendants have filed proofs of claim for indemnification pursuant to the Debtors' by-laws for potential uninsured liabilities in connection with the pending securities claims. *See*, *e.g.*, Exs. B (Proofs of Claim of the SASCO Defendants), C (Proof of Claim of Christopher M. O'Meara), D (Proof of Claim of Richard S. Fuld, Jr.). Moreover, on September

21 and 22, 2009, the plaintiffs in the MBS Class Action filed individual and class proofs of claim against the Debtors premised on the same purported securities violations alleged in the MBS Class Action.  Under these circumstances – where the proceeds of the insurance policy clearly are insufficient to cover the pending securities claims, proofs of claim have been asserted against the debtor, and therefore the estate faces significant exposure arising out of the pending securities claims – courts have deemed the right to insurance proceeds to be property of the estate.  *See, e.g., In re Spectrum Info. Techs., Inc.*, 183 B.R. at 364 (holding that proceeds of insurance policy constitute estate property because the debtor's potential obligation to indemnify its directors and officers would "undoubtedly affect the amount of any dividend to be paid to its unsecured creditor body"); *cf. In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (permitting payment of insurance proceeds where, unlike here, "the harm to the Debtor . . . is speculative given the fact that there are presently no claims for indemnification" and there was no immediate risk that the policy proceeds would be exhausted); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (finding D&O proceeds were not property of estate where, unlike here, no securities claims had been asserted against the debtor during the pendency of the bankruptcy).

12.     Even if the proceeds of the D&O policies are not deemed property of the bankrupt estate, the Court has broad powers under Section 105(a) of the Bankruptcy Code to extend the automatic stay to prevent actions that could have adverse economic consequences on the debtor. *See In re Adelphia*, 29 B.R. at 54 (citing cases).  Here, permitting the Equity/Debt Defendants to use up the available insurance proceeds for their own benefit and prevent resolution of the MBS Class Action could adversely impact the Debtors' estate in significant ways.  *First*, it would force the Debtors and the SASCO Defendants to litigate the issue of coverage under the 2008-09

7

D&O Policy, the cost of which would be born in large part by the Debtors.[4] *Second*, in the event the insurers prevailed in the coverage litigation and no coverage was available for the MBS Class Action under the 2008-09 D&O Policy, the Debtors would be subjected to the risk of significant liability in connection with (i) indemnification claims by the SASCO Defendants for potential uninsured liabilities, and (ii) the MBS plaintiffs' direct proofs of claim against the Debtors (which likely would be withdrawn or released in connection with a settlement of the MBS Class Action). The Equity/Debt Defendants make exactly this argument in reverse, asserting that use of the available insurance proceeds to settle the Equity/Debt Class Action "will reduce or eliminate the [indemnification] claims that the Insured Persons could assert against the Debtors." Motion, ¶ 29. By the same token, depriving the SASCO Defendants of the benefit of the available insurance will increase the Debtors' exposure to indemnification claims by the SASCO Defendants. The existence of competing claims on the insurance proceeds and parallel indemnification claims by different classes of directors and officers for potential uninsured liabilities militates in favor of an equitable allocation of insurance proceeds by the Court to minimize the potential indemnification obligations of the Debtors.

13.    Moreover, it would inequitable to permit the Equity/Debt Defendants to expend all of the remaining available insurance proceeds for their own benefit and leave the SASCO Defendants without protection. The Equity/Debt Defendants argue that the core purpose of the D&O insurance is "to provide insurance coverage to their officers and directors." Motion, ¶ 27. While that may be so, the SASCO Defendants have an equal right to insurance protection. It would be inconsistent with the purpose of the D&O insurance to permit one class of insureds to monopolize the protection afforded by the D&O insurance and leave other classes of insureds

---

[4]  The Debtors would likely seek to prosecute the coverage litigation using their own coverage counsel. Moreover, by order dated July 21, 2011 [Docket No. 18689], the Court authorized the Debtors to advance to the SASCO Defendants amounts to cover legal fees incurred in the potential coverage litigation.

8

with no protection. *See In re National Century Fin. Enterprises, Inc.*, Case No. 02-65235, 2005 Bankr. LEXIS 1052, *23 (Bankr. S.D. Ohio Jan. 10, 2005) (holding that it "would not serve the underlying reason for the issuance of D&O policies" to allow one insured to "take a mammoth portion of the Proceeds"). Thus, the court in *National Century* adopted an allocation scheme pursuant to which each of the individual officers and directors received a *per capita* share of the proceeds because a *pro rata* allocation would have inequitably favored some individual insureds over others. *Id.* at *31-34. Finally, it is irrelevant that the SASCO Defendants have a potential claim to coverage under the 2008-09 D&O Policy. *See id.* at *37-38 (allocating an equal share of insurance proceeds to outside directors despite their potential claim to coverage under other D&O policies). The D&O insurers have aggressively rejected the SASCO Defendants' claim to coverage under the 2008-09 D&O Policy. Although the SASCO Defendants believe their claim to coverage under the 2008-09 D&O Policy is meritorious, it its clear that obtaining that coverage would require costly and time consuming litigation the outcome of which would be uncertain. Given this uncertainty it would be inequitable to deprive the SASCO Defendants of the protection of the 2007-08 D&O Policy, which the D&O insurers contend applies to the MBS Class Action.

14. To be clear, the SASCO Defendants do not contend that the $90 million settlement of the Equity/Debt Class Action is unreasonable, nor do they dispute that the claims asserted in the Equity/Debt Class Action are covered under the terms of the 2007-08 D&O Policy. The SASCO Defendants simply object to the use of $90 million in insurance proceeds to settle the Equity/Debt Class action when they are precluded from using $45 million of the remaining insurance proceeds to enter into a reasonable settlement of the MBS Class Action.

9

**No Waiver of Bankruptcy Rule 4001(A)(3)**

15. In the event the Court grants the Motion over the SASCO Defendants' objection, the SASCO Defendants respectfully request that the Court deny the request to waive the requirements of Bankruptcy Rule 4001(A)(3) so that the SASCO Defendants may seek a stay of the Court's order pending appeal to the District Court. The D&O insurance proceeds are limited, and once paid out they cannot be recovered. Accordingly, waiver of the 14-day stay under Bankruptcy Rule 4001(A)(3) would effectively abrogate the SASCO Defendants' right to appeal.

WHEREFORE, the SASCO Defendants respectfully request that the Motion be denied and that the Court enter an order pursuant to Sections 362 and 105(a) of the Bankruptcy Code preserving the proceeds of the 2007-08 D&O Policy and providing for a fair and reasonable allocation of the remaining proceeds among the SASCO Defendants and the Equity/Debt Defendants to resolve pending and future claims.

Dated: September 8, 2011
       New York, New York

                               **WOLLMUTH MAHER & DEUTSCH LLP**

                               By:  /s/ William A. Maher
                                     William A. Maher
                                     Michael C. Ledley
                                     500 Fifth Avenue
                                     New York, NY 10110
                                     (212) 382-3300

*Counsel for the SASCO Defendants*