Presentment Date and Time: September 23, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: September 23, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

-------------------------------------------------------------------x
:
In re                                                                    :        Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :        08-13555 (JMP)
:
Debtors.                              :        (Jointly Administered)
:
-------------------------------------------------------------------x

## NOTICE OF PRESENTMENT OF
## SUPPLEMENTAL APPLICATION OF THE
## DEBTORS PURSUANT TO SECTION 327(e) AND 328 OF
## THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL
## RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO
## MODIFY THE TERMS OF COMPENSATING AND REIMBURSING FOSTER
## GRAHAM MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO THE
## DEBTORS, EFFECTIVE AS OF  MARCH 1, 2011

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Supplemental Application (the "Supplemental Application") of the Debtors Pursuant to Sections

327(e) and 328 of title 11 of the United States Code and Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to modify the terms of

compensating and reimbursing Foster Graham Milstein & Calisher, LLP ("Foster Graham") as

special counsel to the Debtors, effective as of  March 1, 2011, all as more fully described in the

Supplemental Application, to the Honorable James M. Peck, United States Bankruptcy Judge, at

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court") for approval and signature on **September 23, 2011 at 12:00 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Supplemental Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Foster Graham, 621 17th Street, Denver, CO 80293, Attn: Dan Calisher, Esq., **so as to be so filed and received by no later than September 23, 2011 (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **October 19, 2011 at 10:00 am (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable

James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York

10004-1408.  If an objection is filed the moving and objecting parties are required to attend the

hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 9, 2011
        New York, New York

                      /s/ Richard P. Krasnow
                      Richard P. Krasnow
                      WEIL GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007

                      Attorneys for Debtors
                      and Debtors in Possession

Presentment Date and Time: September 23, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: September 23, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed): October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
                          Debtors.         :    (Jointly Administered)
                                           :
-------------------------------------------------------------------x
```

**SUPPLEMENTAL APPLICATION OF THE**
**DEBTORS PURSUANT TO SECTIONS 327(e) AND 328 OF**
**THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO**
**MODIFY THE TERMS OF COMPENSATING AND REIMBURSING FOSTER**
**GRAHAM MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO THE**
**DEBTORS, EFFECTIVE AS OF MARCH 1, 2011**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this Supplemental Application for authorization to modify the payment terms for Foster Graham Milstein & Calisher, LLP ("Foster Graham") as special counsel to the Debtors, effective as of March 1, 2011, and respectfully represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order dated January 20, 2009 [ECF No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [ECF No. 7531].

5.      On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan and disclosure statement [ECF Nos. 19627 and 19629].

## Jurisdiction

6.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

## Foster Graham's Retention

9.      Pursuant to the procedures set forth in this Court's Amended Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated March 25 2010 [ECF No. 7822] (the "Amended OCP Order"), Foster Graham has provided legal services to the Debtors as a professional utilized in the ordinary course in these chapter 11 cases.  Such retention became effective upon the filing of the Affidavit of and Disclosure Statement of Daniel K. Calisher on Behalf of Foster Graham [ECF No. 2946] on February 26, 2009 and the expiration of the relevant objection period.

10.      By order dated March 9, 2011 [ECF No. 14868] (the "Retention Order"), Foster Graham was retained by the Debtors as special counsel, to (i) prosecute claims in connection with the recovery of losses related to the purchase, sale, transfer, and/or securitization of mortgage loans and/or pre-filing settlement negotiations against sellers of mortgage loans on the secondary market and ancillary matters arising in such lawsuits (the

"<u>Loss Recovery Litigation</u>") and (ii) represent LBHI in connection with defense of claims made against it for losses related to the purchase, sale, transfer, and/or securitization of mortgage loans and ancillary matters arising in such lawsuits (together with the Loss Recovery Litigation, the "<u>Representative Matters</u>").  Under the Retention Order, Foster Graham agreed to charge LBHI on an hourly basis for services rendered with respect to the Representative Matters.

11.    Foster Graham has represented LBHI, directly or through its subsidiary Aurora Loan Services, LLC, ("<u>Aurora</u>") since 2003 in the Loss Recovery Litigation.  In the ordinary course the Loss Recovery Litigation was against large loan originators, *i.e.,* Correspondents.  These matters were handled by Foster Graham solely on an hourly basis.

12.    In addition to Loss Recovery Litigation against Correspondents, LBHI requested that Foster Graham pursue the Loss Recovery Litigation against a new set of defendants, composed in part of mortgage brokers and appraisers ("<u>Non-Correspondents</u>").  As discussed more fully in the affidavit of Michael Milstein (the "<u>Milstein Affidavit</u>") filed in support of this Supplemental Application and attached hereto as <u>Exhibit A</u>, while the claims against Non-Correspondents are similar to the claims against Correspondents and pursuant to the Retention Order the Debtors have been authorized to retain Foster Graham to provide legal services in connection therewith, the Debtors and Foster Graham have discussed and agreed that there exists certain differences between claims against Correspondents versus Non-Correspondents that would warrant a modified compensation structure.  In particular, the Debtors have noted that the Non-Correspondents are generally smaller entities and the legal obligations and risks associated with pursuing such entities are greater.

13.    Accordingly, the Debtors have requested, and Foster Graham has agreed, that in order to lessen the Debtors' estates' fee exposure and risk—while also pursuing

legitimate and potentially valuable claims against responsible third parties, Foster Graham will

handle the Loss Recovery Litigation against certain Non-Correspondents on a part-hourly and

part-contingency basis.  Foster Graham agreed to receive the following modified

compensation:  (1) during the initial evaluation/viability phase Foster Graham will not receive

any contingency fee and instead will receive the reduced hourly rate of $150/hour for all

attorneys, rather than the approved rates which range from $325/hour to $425/hour for partners

and $225/hour to $325/hour for associates and will receive the reduced hourly rate of $50/hour

for paraprofessionals, rather than the approved rates which ranged from $100/hour to

$150/hour; and (2) in a later, claims pursuit/litigation phase, will receive the reduced hourly rate

of $125/hour for lawyers and $50/hour for paraprofessionals, plus a contingency fee.  Pursuant

to this arrangement, Foster Graham would be entitled to a contingency fee that varies from 15%

(if a recovery is made prior to filing a lawsuit) up to 50% (if a recovery is made after a trial or

judgment).  A copy of the hourly/contingency fee agreement is annexed hereto as <u>Exhibit B</u> (the

"<u>Modified Fee Agreement</u>").

14.    The Modified Fee Agreement will be applied on a case-by-case basis.

Upon the evaluation of relevant claims and an assessment of any risks associated with pursuing

litigation, the Debtors will determine whether the Loss Recovery Litigation against Non-

Correspondents will be handled on the hourly basis that was previously approved by this Court

or on the part-hourly, part-contingency fee basis set forth in the Modified Fee Agreement.

15.    The Debtors request that the new payment terms for the Loss Recovery

Litigation against Non-Correspondents be made effective March 1, 2011 to allow Foster

Graham to be compensated for work performed on behalf of the Debtors pursuant to the

Retention Order, but prior to the submission of this supplemental application to modify the

payment structure.  The Debtors submit that retroactive approval to March 1, 2011 is warranted as Foster Graham provided necessary services to the Debtors and such services have been approved by this Court, effective as of such date.

### Basis for Relief Requested

16.     The modification of Foster Graham's retention, specifically the terms of compensation, is appropriate under sections 327(e) and 328 of the Bankruptcy Code.  This application is solely intended to put in place a different fee structure with respect to Foster Graham's fees and expenses incurred in providing those legal services it has been authorized by the Court to provide.

17.     Section 327(e) provides for the appointment of special counsel where the proposed counsel does not possess any interest that is materially adverse to the debtor with regard to the matter that will be handled by counsel.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

18.     Accordingly, section 327(e) of the Bankruptcy Code authorizes the retention of counsel who previously represented a debtor prepetition provided that: (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the specified special purpose for which counsel is being retained does not rise to the level of conducting the bankruptcy case for the debtor in possession.  *See In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is*

*retained*, there is no conflict and the representation can stand") (emphasis in original); *In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994).

19.    The Debtors submit that each of the above factors is satisfied with respect to Foster Graham, as demonstrated in the Debtors' application to retain and employ Foster Graham as special counsel and the affidavit of Daniel K. Calisher attached thereto, submitted on February 2, 2011 [ECF No. 14263].   Further, as discussed more fully in the Milstein Affidavit, Foster Graham represents no interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged, under section 327(e) of the Bankruptcy Code as modified by section 1107(b). Therefore, Foster Graham's modified retention which would result in the payment of lower hourly rates than approved under the Retention Order, for services which are a benefit to the Debtors' estates and its creditors, should be approved under section 327(e) of the Bankruptcy Code.

20.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Foster Graham on reasonable terms and conditions.  Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

21.    As recognized by numerous courts, Congress intended section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin &*

*Jenrette Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-3 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").  Accordingly, section 328 permits the compensation of professionals on terms that reflect the nature of their services and market conditions.

22.    The Modified Fee Agreement, particularly the contingency portion, reflects the nature of the services provided by Foster Graham.  Considering the services that Foster Graham will provide the Debtors submit that the Modified Fee Agreement is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfill the requirements of Rule 2014-1 of the Local Rules.  Thus, the Debtors request approval of the Modified Fee Agreement and reimbursement of reasonable expenses, pursuant to section 328(a) of the Bankruptcy Code.

## Professional Compensation

23.    The Debtors understand that with respect to services provided in connection with the Loss Recovery Litigation against Non-Correspondents, that the Debtors do not believe warrant payment under the Modified Fee Agreement, Foster Graham intends to apply to the Court for allowances of compensation for the hourly portion of the fees and reimbursement of expenses pursuant to the Retention Order and in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines promulgated by the U.S. Trustee, as those procedures may be modified or supplemented by order of this Court, including this Court's Fourth Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [ECF No.

15997], this Court's Order Amending Fee Protocol [ECF No. 15998] and General Order M-389.

24.    For services rendered by Foster Graham with respect to the Loss Recovery Litigation against Non-Correspondents that are to be compensated pursuant to the Modified Fee Agreement, the Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, all guidelines promulgated by the U.S. Trustee, and orders of the Court, propose to pay Foster Graham at the reduced hourly rates that are set forth in the Modified Fee Agreement along with a contingency fee should Foster Graham recover judgments on behalf of the estate.  As discussed more fully in the Milstein Affidavit, the rates that are currently in effect for the professionals involved with those services subject to the Modified Payment Arrangement range from $50 for paraprofessionals to $150 for all lawyers.  It is the Debtors' understanding that Foster Graham will disclose any contingency fees in the filing of any interim or final fee application.  Upon approval by this Court under section 328(a) of the Bankruptcy Code, Foster Graham's contingency fee arrangement shall not be subject to a "full post-hoc reasonableness inquiry."

## Notice

25.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Supplemental Application in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) all parties who have requested notice in these chapter 11 cases; and (vii) Jones Day.  The

Debtors submit that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.


Dated:    New York, New York
          September 9, 2011

                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

# EXHIBIT A

**(Milstein Affidavit)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                  )        Chapter 11 Case No.
                                                       )
LEHMAN BROTHERS HOLDINGS, INC., *et al.,*               )        08-13555 (JMP)
                                                       )
              Debtors.                                 )        (Jointly Administered)
-------------------------------------------------------------------x

### AFFIDAVIT OF MICHAEL MILSTEIN FILED ON BEHALF OF FOSTER GRAHAM MILSTEIN & CALISHER, LLP IN SUPPORT OF DEBTORS' SUPPLEMENTAL APPLICATION PURSUANT TO SECTIONS 327(e) AND 328 OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO MODIFY THE TERMS OF COMPENSATING AND REIMBURSING FOSTER GRAHAM MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO THE DEBTORS <u>EFFECTIVE AS OF MARCH 1, 2011</u>

STATE OF COLORADO                    )
                                     )ss.
CITY AND COUNTY OF DENVER            )

        I, Michael Milstein, being duly sworn, states the following based upon personal

knowledge and review of relevant documents:

        1.        I am a principal partner of the law firm Foster Graham Milstein & Calisher, LLP

("Foster Graham" or "Firm"), located at 621 Seventeenth Street, Suite 1900, Denver, Colorado

80293 and am admitted to practice law in:  (a) the State of Colorado; (b) the State of California;

(c) the United States District Court for the District of Colorado; (d) the United States Court of

Appeals for the Tenth Circuit; (e) the United States District Court for the Southern District of

California; (f) the United States District Court for the Eastern District of California; (g) the

United States District Court for the Central District Of California; (h) the United States District

Court for the Northern District Of California; and (i) the United States Court of Appeals for the Ninth Circuit.

2.        Capitalized terms used in this affidavit but not otherwise defined shall have the same meaning as they do in the Supplemental Application as defined below.

3.        I submit this affidavit in support of the supplemental application dated September 9, 2011 seeking authorization to modify the payment terms for Foster Graham as special counsel to Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned Chapter 11 cases, as debtors and debtors in possession (collectively "Debtors") for certain Loss Recovery Litigation against Non-Correspondents (the "Supplemental Application").    In the Retention Order of March 9, 2011, this Court approved the Debtors' retention of Foster Graham to handle any Loss Recovery Litigation.   Foster Graham has prosecuted many Loss Recovery Litigation matters on behalf of the Debtors under the Retention Order and charged the Debtors according to the hourly basis approved by the Retention Order.

4.        However, since the Court entered the Retention Order, the Debtors requested that Foster Graham handle certain Loss Recover Litigation against Non-Correspondents on a part-hourly and part contingency fee basis, rather than on a strictly hourly basis.   The purpose of the part-hourly, part-contingency fee agreement is to lessen the bankruptcy estate's fee exposure and risk while also allowing Foster Graham to pursue legitimate and potentially valuable Loss Recovery Litigation claims.

5.        All facts set forth in this affidavit are based upon my personal knowledge or information I obtained from others at Foster Graham regarding conflict matters.   The statements herein regarding conflicts are based in part on a review of the conflicts checklist provided to

Foster Graham by Weil Gotshal & Manges LLP ("WGM"), the Debtors' general bankruptcy counsel, setting forth certain creditors and other parties in interest relating to Debtors ("Conflicts Checklist"). I am authorized to submit this affidavit on behalf of Foster Graham.

6.     The Conflict Checklist was reviewed for conflicts by:  (i) persons within Foster Graham responsible for maintaining records of the Firm's representations, with the assistance of an attorney at Foster Graham; and (ii) the Firm's Accounting Department personnel.  Based on the foregoing review, if I were called upon to testify, I could and would testify competently to the facts set forth herein and in the prior affidavit submitted by Daniel Calisher in connection with the application to retain Foster Graham as special counsel, which affidavit is incorporated herein by reference.  Foster Graham has no connection to the Debtors except as set forth herein and in the prior Calisher affidavit.  Furthermore, Foster Graham does not currently represent any of the persons or entities identified in the Conflicts Checklist with only the following limited exceptions:  (a) two of Debtors' non-debtor affiliates (Aurora and Aurora Bank); and (b) representation of all plaintiffs in a mortgage loss recovery case (including LBHI, Aurora, and their co-plaintiffs U.S. Bank National Association and Citibank, N.A., not individually but solely in their capacities as trustees of certain securitized trusts); however, that single case has settled in principal and there is no conflict between LBHI, Aurora, and their co-plaintiffs.  Foster Graham has not been and is not currently adverse to the Debtors or their affiliates.  Foster Graham will not represent any party whose interest would be adverse to the Debtors or their estates with respect to the matters for which Foster Graham is being retained hereunder.  Foster Graham will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if

any new relevant facts or relationships are discovered, Foster Graham will supplement its disclosure to the Court.

## **Foster Graham's Services**

7.        In or around 2003 I began representing LBHI's wholly owned subsidiary, Aurora Loan Services, LLC ("Aurora"), in connection with mortgage related matters.    Such representation included litigation to enforce repurchase rights or to recover losses resulting from defective residential mortgage loans.  Such litigation, and similar loss recovery efforts, generally centered upon the purchase and sale of mortgage loans on the secondary market, and included claims against loan originators ("Correspondents") who, in connection with the transactions, made certain representations and warranties regarding the quality and/or characteristics of the loans.

8.        My efforts in this regard—as well as the efforts of other lawyers at Foster Graham over a number of years—was focused on filing lawsuits to recover money (from Correspondents, appraisers, title/escrow companies, brokers, borrowers, and other responsible parties) for Aurora in its representative capacity as master servicer.  In this role, Aurora was acting on behalf and for the benefit of "upstream" secondary market investors (loan or loss holders) such as LBHI, its wholly owned subsidiary Aurora Bank, FSB f/k/a Lehman Brothers Bank, FSB ("Aurora Bank"), and certain securitized trusts.

9.        Foster Graham's representation included claims in many parts of the country and often included "repurchase or indemnity litigation" against Correspondents, specifically for breach of representations and/or warranties contained in the subject purchase and sale documents, and to force such responsible parties to either:  (a) repurchase defective mortgage

loans; or (2) recover money, via indemnity or otherwise, relating to losses suffered on defective loan(s).

10.    Foster Graham served for some time as Aurora's key outside counsel for the purpose of coordinating, commencing, and advising as to litigation (and other loss recovery efforts) relating to various "downstream" responsible parties.  Pre-petition, Foster Graham represented Aurora in various state and federal courts in many lawsuits, particularly with respect to claims against mortgage loan sellers.

11.    Foster Graham has extensive knowledge and experience in representing parties in connection with residential mortgage disputes, particularly claims arising from defective loans (such as repurchase and/or indemnity claims and defenses).

12.    After the Debtors filed bankruptcy, Foster Graham was retained by LBHI to prosecute Loss Recovery Litigation.  It initially did so as an Ordinary Course Professional, but then was retained as special counsel pursuant to the Retention Order to, among other things, prosecute Loss Recovery Litigation.

13.    Post-petition, Foster Graham has continued to represent both Aurora and LBHI in bringing claims against responsible parties in the mortgage loan context.

14.    During its longstanding representation of Aurora and LBHI, Foster Graham has filed dozens of pre-petition and post-petition lawsuits, and has otherwise assisted in obtaining judgments and/or settlements in favor of Aurora and/or LBHI (in the approximate aggregate amount of $50,000,000).  Foster Graham's fees in connection with such matters were a tiny fraction of the amount of the judgments and/or settlements.

15.     Foster Graham is a leading mortgage litigation and trial firm that has represented LBHI, its affiliates, and similarly situated parties in the types of mortgage matters for which it has been retained.

16.     The Loss Recovery Litigation handled by Foster Graham for LBHI has primarily focused on claims against Correspondents, which are usually larger companies that are believed to have the resources to pay sizeable judgments. However, on or about March 1, 2011 LBHI asked Foster Graham if it would look into claims against other responsible parties such as brokers and appraisers ("Non-Correspondents") and prosecute Loss Recovery Litigation against these Non-Correspondents. Claims against Non-Correspondents are similar to claims against the Correspondents in some respects, but also differ materially. The Non-Correspondents often have fewer resources than Correspondents to pay prospective judgments.

17.     Also, the claims against Non-Correspondents are slightly different than claims against Correspondents.   For example, the representations and warranties made by Non-Correspondents often significantly differ than the representations and warranties made by the Correspondents, which make the claims slightly different. Furthermore, the legal theories differ. Claims against Correspondents are uniformally contract based. By contrast, claims against Non-Correspondents may be contract based, but may also be tort based, as is often the case with appraisers.

18.     Claims against Non-Correspondents often have lower over-all damages than claims against Correspondents. For example, a claim against an appraiser may relate to a single mortgage, whereas claims against Correspondents generally relate to many mortgages.

19.        Because of the differences between Correspondents and Non-Correspondents, Loss Recovery Litigation against Non-Correspondents is generally more risky than making a similar claim against a Correspondent.   Accordingly, LBHI asked Foster Graham to analyze the viability of such claims.   However, due to the greater risks involved, BHI did not want to pay Foster Graham its regular hourly rates to analyze or prosecute the claims against Non-Correspondents.

20.        LBHI asked Foster Graham to first do an analysis of the viability of claims against Non-Correspondents at the greatly reduced rate of $150 per hour for attorneys and $50 per hour for paraprofessionals with no contingency fee during this phase.   This was called the "Viability Phase."

21.        Foster Graham's regular rates approved by the Court in connection with providing these types of services are $325/hour to $425/hour for partners; its associates' rates range from $225/hr to $325/hour; and its paralegals and other non-lawyer professionals' rates range from $100/hour to $150/hour.

22.        If the claims against Non-Correspondents were viable, and LBHI decided to pursue these claims (the "Recovery Phase"), LBHI believed that these claims would have greater risk than claims against Correspondents.   To account for the greater risk and to lessen the bankruptcy estate's fee exposure—while also pursuing legitimate and potentially valuable claims against responsible third parties, ultimately for the benefit of LBHI's creditors—LBHI asked Foster Graham to handle the Recovery Phase on a part hourly and part contingency basis.   In the Reocvery Phase, LBHI is to pay Foster Graham the greatly reduced rate of $125 per hour for attorneys and $50 per hour for paralegals, plus a contingency fee should the estate recover from

the Non-Correspondents. The contingency fee varies from 15% if a recovery is made prior to filing a lawsuit and up to 50% if a recovery is made after a trial or judgment.

23.      To date, Foster Graham has performed the Viability Phase. Foster Graham analyzed the Non-Correspondents and whether they were viable to pay a judgment, analyzed contracts, looked at client documents, analyzed the claims and legal theories, and did a survey of potential limitations and statutory obstacles for such claims.

24.      Based on the analysis of the Viability Phase, LBHI has requested that Foster Graham begin the Recovery Phase and file claims against certain Non-Correspondents. LBHI retains the discretion to determine if Foster Graham will bill under its regular hourly rates pursuant to the Retention Order or under the part hourly, part contingency Modified Fee Agreement.

25.      The hourly rates and contingency fee percentages set forth in the Modified Fee Agreement are set at a level designed to fairly compensate Foster Graham for the work of its attorneys and paralegals, to account for the risks taken by Foster Graham, and to cover fixed and routine overhead expenses.

## Fee Application

26.      Foster Graham intends to apply for compensation for professional services rendered in connection with these Chapter 11 cases subject to approval of the Bankruptcy Court and in compliance with applicable provisions of the Bankruptcy Code, on an hourly basis for Loss Recovery Litigation against Correspondents or claims against Non-Correspondents that LBHI determines it does not want handled pursuant to the Modified Fee Agreement.

27.    For claims that LBHI determines are to be handled against Non-Correspondents

under the Modified Fee Agreement, Foster Graham will submit monthly bills to LBHI showing

its hourly fees, costs and expenses.  Foster Graham will disclose any contingency fees it receives

in its interim or final fee applications, along with a statement of the total hourly fees it received

under the Modified Fee Agreement.

[This space is intentionally left blank]

Dated September 8, 2011.

FURTHER AFFIANT SAYETH NOT.

_____
Michael Milstein

STATE OF COLORADO                    )
                                     ) ss.
CITY AND COUNTY OF DENVER            )

On September 8, 2011, Michael Milstein the Affiant, personally appeared before me, and personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

Witness my hand and official seal.

_____
Notary Public

My commission expires: 10/04/15

DEC-1751751-1

## **<u>EXHIBIT B</u>**

**(Modified Fee Agreement)**



**FOSTER GRAHAM MILSTEIN & CALISHER, LLP**
ATTORNEYS AT LAW

T  303-333-9810
F  303-333-9786
621 Seventeenth Street
19th Floor
Denver, Colorado 80293

August 18, 2011

*VIA EMAIL*

Lehman Brothers Holdings, Inc.
c/o Scott Drosdick, Esq.
5445 DTC Parkway, Penthouse 4
Greenwood Village, CO 80111

Re:    Engagement Letter (Non-Correspondent Cases)

Dear Scott:

Thank you very much for selecting Foster Graham Milstein & Calisher, LLP ("FGMC") to represent Lehman Brothers Holdings, Inc. ("Client") in the matter described below. We want to make sure Client understands the basis for determining the fees we intend to charge, and that FGMC and Client agree on the scope of our services.

In connection with this matter, Client: (1) agrees to execute a mutually acceptable Contingent Fee Agreement ("CFA"); (2) acknowledges the "blended" fee structure applicable here, i.e. a reduced hourly rate combined with a Contingent Fee, shall govern only this matter (except as set forth in writing between Client and FGMC); and (3) acknowledges FGMC's engagement and CFA shall be deemed to have been in full force and effect since FGMC's initial involvement in this matter (about March, 2011).

*Client and FGMC both acknowledge this engagement and FGMC's fees relating to this matter are subject to approval (if required) in Client's bankruptcy proceeding, and the manner, amount, and/or method of payment will be governed by any and all applicable bankruptcy rules and procedures (to the extent required and/or inconsistent herewith).*

FGMC's fees will be determined, in part, upon the time spent by the individuals who provide the legal or related services. This matter will have, essentially, two phases: (1) the initial "viability" phase (in which the underlying facts and legal claims are evaluated, and third parties are investigated as potential loss recovery targets); and (2) the subsequent "recovery" phase (in which claims against third parties will be pursued via litigation or otherwise).

In connection with the initial "viability" phase, all FGMC attorneys will bill at the significantly reduced rate of $150.00/hour, and its paralegals/legal assistants will bill at the significantly reduced rate of $50.00/hour. FGMC will have no contingent fee in this phase.

In connection with the subsequent "recovery" phase, all FGMC attorneys will bill at the significantly reduced rate of $125.00/hour, and its paralegals/legal assistants will bill at the significantly reduced rate of $50.00/hour. In addition to the significantly reduced hourly rates set forth above, in this subsequent phase FGMC's fees will also include: (1) a 15% contingent fee for all sums recovered from any source prior to the filing of a lawsuit or other legal proceeding; (2) a 20% contingent fee for all sums recovered from any source after the filing of a lawsuit or other legal proceeding up to the time the Trial Management Order (or its equivalent) is filed with the Court; (3) a 30% contingent fee for all sums recovered from any source after the filing of the Trial Management Order (or its equivalent) through the end of trial; and (4) a 50% contingent fee for all sums recovered post trial or judgment.

Client acknowledges the applicable hourly rates of FGMC attorneys and other personnel (for this kind of specialized mortgage litigation) are significantly higher than the hourly rates being charged to Client in connection with this matter, including, by way of example: Daniel K. Calisher, $385.00/hour; Steve A. Fermelia, $330.00/hour; Julia R. Harvey, $260.00/hour; and paralegals/legal assistants, $120/hour.

We will bill Client for expenses incurred on Client's behalf, including photocopying, filing and recording fees, courier/messenger charges, travel expenses, computerized research charges, and other out-of-pocket expenses. Our statements are rendered monthly and, unless other arrangements are made in writing, payment in full is due within 30 days after the date of the statement. Interest may be charged at one percent (1%) per month on all balances outstanding for more than 60 days. If you have questions concerning any FGMC bill, please raise them promptly. You agree to pay all attorneys' fees and collection costs FGMC incurs if we have to file an action against Client to collect sums due FGMC.

The scope of the services we have agreed to provide is as follows: pre-litigation evaluation and claims pursuit (initial phase), followed by litigation (subsequent phase) against certain mortgage brokers and appraisers identified by Client. Client acknowledges the decisions regarding which third parties to pursue, as well as when and how to pursue such parties, will involve many factors, including but not limited to: business judgment and concerns, fee/cost exposure, the underlying merits of the claims, the number and viability of the prospective defendants, economies of scale, and logistical/timing issues. These factors may result in some claims not being pursued, or being barred by one or more statutes of limitation to the extent they have not already passed, for which FGMC will have no responsibility. The scope of FGMC's representation does not include post-judgment work, appeals, or bankruptcy proceedings, unless agreed upon by Client and FGMC in writing.

We are required by federal law to inform you of our policies regarding privacy of client information. In the course of advising you, we may collect nonpublic personal information from you. However, you should know all nonpublic personal information we receive from you is held in confidence and is not released to people outside the firm except as necessary to carry out our representation of you, as otherwise agreed to by you, or as required under an applicable law. While federal law requires us to inform you of our policy, it does not limit the attorney-client privilege or the confidentiality rules which are governed by state law and the rules of professional conduct. In order to guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards.

At this time, FGMC does not require a retainer from Client in connection with this matter. We will request payment from you monthly via invoice, but will also have the right, at FGMC's option, to request a retainer and, thereafter, deduct from the retainer all fees and expenses earned or incurred by FGMC. Also, FGMC may deduct its fees and/or costs from sums collected from third parties before distributing the net recovery to Client.

Additionally, it is contemplated that once individual third parties, such as mortgage brokers and/or appraisers, are targeted for pursuit in litigation (on a case by case basis), a separate matter will be opened relating to each such third party. However, this engagement letter and the CFA will govern such matters.

I look forward to working closely with you on this matter. While the firm cannot guarantee the results which will be achieved, we will do our best to provide you with legal services of the highest quality. If you have any questions concerning the matters set forth in this letter or the services we are providing to you, please do not hesitate to call me.

The firm and I thank you very much for entrusting us with this matter, and we look forward to a successful working relationship with you.

Sincerely,

Daniel K. Calisher

Daniel K. Calisher
for
FOSTER GRAHAM MILSTEIN & CALISHER, LLP

**ACCEPTED AND AGREED TO:**

**Lehman Brothers, Holdings, Inc.**

By:

Its:                                        Dated: Aug 19 , 2011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
:
**In re**                                                                           :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*          :          **08-13555 (JMP)**
:
**Debtors.**          :          **(Jointly Administered)**
:
-------------------------------------------------------------------x

### ORDER GRANTING SUPPLEMENTAL APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328 OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO MODIFY THE TERMS OF COMPENSATING AND REIMBURSING FOSTER GRAHAM MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO THE <u>DEBTORS, EFFECTIVE AS OF  MARCH 1, 2011</u>

Upon the Supplemental Application, dated September 9, 2011 (the "<u>Supplemental Application</u>"), of Lehman Brothers Holdings Inc., as debtor in possession ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases (together with LBHI,  the "<u>Debtors</u>"), pursuant to sections 327(e) and 328 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for entry of an order authorizing and approving the modification of the terms for compensating and reimbursing Foster Graham as special counsel to the Debtors, effective as of  March 1, 2011, solely with respect to those services subject to the Modified Fee Agreement,[1] all as more fully described in the Supplemental Application; and upon the affidavit of Michael Milstein (the "<u>Milstein Affidavit</u>"), annexed as <u>Exhibit A</u> to the Supplemental Application; and the Court having jurisdiction to consider the Supplemental Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for

---

[1]      Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Seventh Supplemental Application.

the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Supplemental Application and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Supplemental

Application having been provided in accordance with the procedures set forth in the Second

Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c)

and 9007 Implementing Certain Notice and Case Management Procedures [ECF No. 9635] to (i)

the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal

Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi)

Foster Graham, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Supplemental Application is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and

factual bases set forth in the Supplemental Application establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Supplemental Application is approved as set forth herein; and it

is further

ORDERED that pursuant to section 327(e) of the Bankruptcy Code, the Debtors are

hereby authorized to modify the terms of compensating and reimbursing Foster Graham as special

counsel to the Debtors with respect to the Loss Recovery Litigation against Non-Correspondents,

effective as of  March 1, 2011, on the terms set forth in the Supplemental Application, the Modified

Fee Agreement and this Order; and it is further

ORDERED that Foster Graham shall apply for compensation for the portion of its

hourly fees and reimbursement of expenses in accordance with the procedures set forth in sections

2

330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of

the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or

may be fixed by order of this Court, including but not limited to the Court's Fourth Amended Order

Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [ECF No. 15997], the Court's Order Amending the Fee Protocol [ECF No. 15998]

and General Order M-389; and it is further

ORDERED that the contingency component of the Modified Fee Agreement is

hereby approved and Foster Graham shall be subject to the standard of review provided in section

328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330

of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding the foregoing, the United States Trustee retains all

rights to object to any contingency fees payable to Foster Graham based on the reasonableness

standard provided for in section 330 of the Bankruptcy Code; *provided*, *however*, that the number

of hours expended by Foster Graham shall not be the determinant of such reasonableness; and it is

further

ORDERED that to the extent this Order is inconsistent with the Supplemental

Application, this Order shall govern; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

Dated: September ___, 2011
      New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE