DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

Attorneys for Michael Ainslie, John F. Akers, Roger S.
Berlind, Thomas H. Cruikshank, Marsha Johnson Evans,
Sir Christopher Gent, Roland A. Hernandez, Henry
Kaufman and John D. Macomber

[*Also filed by counsel for Richard S. Fuld, Jr.,
Christopher M. O'Meara, Joseph M. Gregory,
Erin Callan and Ian T. Lowitt*]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                  :
In re                                             :          **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :          **08-13555 (JMP)**
                                                  :
                                  Debtors.        :          **(Jointly Administered)**
                                                  :
------------------------------------------------------------------ x

### INSURED PERSONS' REPLY IN SUPPORT OF MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE EQUITY/DEBT CLASS ACTION

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian T.

Lowitt, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha

Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D.

Macomber (collectively, the "Insured Persons"), former and current officers and directors of

Lehman Brothers Holdings Inc. ("LBHI") and/or its affiliated debtors in the above-referenced

chapter 11 cases (the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file

this reply to the limited objection of Essex Equity Holdings USA, LLC ("Essex Plaintiff") (dated

September 7, 2011, [D.E. 19758]) and the objection of the SASCO Defendants (dated September

8, 2011, [D.E. 19791])[1] to the Insured Persons' motion modifying the automatic stay to allow

payment under the directors and officers insurance policies ("D&O Policies") to settle *In re*

*Lehman Brothers Equity/Debt Secs. Litig.*, 08 Civ. 5523 (LAK) (the "Equity/Debt Securities

Class Action") (the "Motion") [D.E. 19488].  For the reasons discussed below, neither objection

is meritorious and the Insured Persons' motion to lift the stay should be granted.[2]

### Background

1.    On August 24, 2011, the Lehman director/officer defendants executed a

term sheet to settle the purported class action brought by LBHI's debt/equity holders in the wake

of Lehman's bankruptcy.  This agreement settled allegedly billions of dollars in potential claims

for $90 million.  In addition to settling the case against the Lehman director/officer defendants,

the settlement also calls for, *inter alia*, the release of claims that had been or could have been

alleged against the Debtors in the Equity/Debt Securities Class Action and the withdrawal of

related proof of claims that have been filed by Plaintiffs against LBHI in this Bankruptcy Action.

*See* Motion at ¶¶ 17-21.

2.    Also on August 24, the Insured Persons filed their motion seeking entry of

an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy

Code, to the extent that it applies, to allow Excess Policy Insurers to pay the settlement amount

---

[1] The Insured Persons provided the SASCO Defendants' a one-day extension to file their
objection.

[2] The ERISA Class Action Plaintiffs also filed a "response" to the motion "reserving all of their
rights," to the extent they have such rights, but not objecting to it.

in the Equity/Debt Securities Class Action from the available proceeds of the Excess Insurance

Policies in accordance with the terms of agreement for settlement, subject to the Excess

Insurance Policies.[3]  In response, only two parties—the Essex Plaintiff and SASCO

Defendants—have filed objections, despite having acquiesced to each of the nine prior

modifications (including the last modification in connection with the payment of the $15 million

U.S. Air arbitration award, to the relief sought by this Motion.

   3.  As noted in the Insured Persons' Motion, on **nine** prior occasions, the

Court has modified the automatic stay provided for under section 362(a) of the Bankruptcy

Code, to remove any impediments to payment by certain of the Debtors' insurers of directors and

officers coverage of a judgment, settlement amounts or defense costs or fees that current or

former directors, officers, and employees of the Debtors incurred or were incurring as defendants

in ongoing lawsuits, arbitration proceedings, and regulatory or other investigations.  *See* Motion

at ¶ 1 & n.1.  Indeed, just in July of this year, as the SASCO Defendants concede, this Court

observed that such relief "has become a fairly standard protocol in these cases and other large

Chapter 11 cases."  *See* Excerpts of transcript of hearing on July 20, 2011 (attached hereto as

Exhibit A) at 41:21-22.  The instant motion is no different from these prior motions and the

result should be no different now.  As will be discussed below, the Essex Plaintiff and the

SASCO Defendants' objections are without merit and should be rejected.

### Response to Essex Plaintiff's Objection

   4.  The Essex Plaintiff objects to the motion on a "limited" basis, claiming

that there is insufficient evidence presented "that the intended proceeds to pay the settlement of

---

[3] On September 7, 2011, the Insured Persons submitted an amended proposed order at the request of the Debtors, which further provided that the relevant proof of claims filed against the Estate relating to the Equity/Debt Securities Class Action would be disallowed with prejudice.

the Equity/Debt Securities Class Action are properly attributed to the 2007-08 Policy." Essex

Obj. at ¶ 1.

       5.     As an initial matter, the Essex Plaintiff does not have any standing to

make its limited objection.  In January 2008, the Essex Plaintiff initiated a FINRA arbitration

proceeding against Lehman Brothers, Inc. ("LBI") and LBI's directors and officers.  *Id*. at ¶¶ 4-

5, 10.  Notably, however, the Essex Plaintiff does not—and cannot—assert that it has obtained a

judgment in its favor in that case, reached a settlement with any defendants, or is otherwise

presently entitled to any proceeds from the D&O Policies.  As a consequence, just as in the State

of New Jersey's objection to a comfort order motion filed by defendants in the U.S. Air

Arbitration (the "U.S. Air Comfort Order"), which the Court rejected in July, the Essex Plaintiff

is but "one representative of . . . a whole host of third parties who may have claims that could be

a claim against proceeds of an insurance policy" who is without standing to object.  Ex. A at

42:18-22.

       6.     Moreover, there is no dispute—other than the Essex Plaintiff's contrived

question—that the settlement of the Equity/Debt Class Action is covered by the 2007-08 Policy.

Notably, in response to the Insured Person's motion, neither Debtors, nor the insurers, nor

anyone else—including the Essex Plaintiff—has claimed that this settlement is not covered under

the 2007-08 Policy.  Indeed, essentially the same objection was raised in the objection to the U.S.

Air Comfort Order (claiming that "there's no demonstration of coverage for this [the U.S. Air

award] at all"), which was rejected by this Court.  *See* Ex. A at 30:5-11.  Consequently, the

Essex Plaintiff's objection is without merit and should be rejected.

## Response to SASCO Defendants' Objection

7.        The SASCO Defendants' objection is equally baseless and should be rejected for several reasons.  First, this Court less than two months ago in connection with the U.S. Air Comfort Order rejected what is essentially the same grounds for objection raised by the SASCO Defendants – namely that the payment sought from the D&O Policies would diminish the proceeds available to pay their claim, if any.  *See* Ex. A  at 42:8-18 ("We are dealing, however, with what [t]he claimant's view as a wasting asset because the policy limits in question are being used over time to satisfy the needs of those who come ahead of others in the queue. . . .").  Yet, despite this argument, the Court overruled the objection to the U.S. Air Comfort Order because, *inter alia*, of lack of standing and the "first in time, first in right" priority of payment rule under New York law.  *See* Ex. A at 41:20-43:10.  The SASCO Defendants do not stand in any better position than the State of New Jersey in that case, and their objection should similarly be overruled.[4]

8.        Second, despite their erroneous assertion that they are insureds under the D&O Policies, the SASCO Defendants lack standing to object as a matter of fact and law.  To establish standing, "a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is 'fairly traceable' to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *In re Teligent, Inc.*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The SASCO Defendants fall far short of meeting this standard for several reasons.  As an initial matter, the SASCO Defendants lack

---

[4] The SASCO Defendants attempt to distinguish their situation from that presented by the objector to the U.S. Air Comfort Order (arguing, among other things, that they are "direct insureds who are being denied insurance protection").  SASCO Obj. at ¶ 3.  Yet, as will be discussed in more detail below, their arguments are unavailing.

standing as a matter of fact because, even if they had ascertainable and ripe claims, they candidly

admit that even they believe their claims fall within the coverage of the 2008-11 Policy – not the

2007-2008 D&O Policies at issue in this Motion.  *See* SASCO Obj. at ¶ 6 ("The *SASCO*

*Defendants* and the *Debtors* contend that the securities claims asserted against them in the MBS

Class Action and other MBS-related actions *are covered under the 2008-11 Policy*." (emphases

added)).  Moreover, as was the case in the rejected objection to the U.S. Air Comfort Order, the

SASCO Defendants have not presented a cognizable interest in the lifting of the automatic stay

to permit insurers to make the relevant settlement payment other than their immaterialized desire

to seek coverage from the 2007-08 D&O Policies themselves in the future on unsettled claims –

should they ultimately be unable to obtain coverage under the 2008-11 D&O Policies that the

SASCO Defendants believe actually apply to their case.  Under these circumstances, the SASCO

Defendants' claim to any right to any insurance coverage remains "the rankest of speculation"

and, consequently, they have no standing to object to the requested order on that ground alone.

*See* Ex. A at 42:22-23.

9.    Third, there is no basis for the SASCO Defendants' assertion of the

previously unavailing argument that the D&O Policies' proceeds are the property of the estate

and should be "fair[ly]" allocated between all current and future claimants.  *See* SASCO Obj. at

¶¶ 2, 11.[5]  As this Court observed in connection with the objection to the U.S. Air Comfort

Order, "[t]here seems to be general recognition on the part of those parties who have moved for

---

[5] Indeed, the SASCO Defendants provide no support for their conclusory statement (which is
their factual predicate for this argument) that the Insured Persons "seek to appropriate *all* of the
remaining proceeds under the 2007-08 D&O Policy for their own benefit, to the exclusion of the
SASCO Defendants and other potential insureds."  SASCO Obj. at ¶ 8 (emphasis added); *see
also id.* at ¶ 13.  Indeed, after payment of the Equity/Debt Securities Class Action settlement,
there still should be additional layers of excess coverage available to future claimants.  *See*
Motion at ¶ 15 & n.4.

relief . . . that we're probably not dealing with the property of the estate." Ex. A at 42:4-8.

Moreover, the cases the SASCO Defendants cite to support their contention that insurance

proceeds should be considered part of the estate "where the proceeds of the insurance policy are

clearly insufficient" are wholly distinguishable.  As an initial matter, none of the cases involves

controlling New York insurance law.  Instead, the principal cases upon which the SASCO

Defendants rely are entirely beside the point.  *In re Spectrum Info. Techs, Inc.*, 183 B.R. 360, 364

(Bankr. E.D.N.Y. 1995), concerns whether an automatic stay should be lifted against the debtor

in connection with an arbitration, does not concern competing claims to insurance proceeds, and

merely holds that the question of the availability of D&O insurance could impact a bankruptcy

estate such as to make adjudication of the question a core proceeding under 28 U.S.C.

§ 157(b)(2)(O).  Similarly, *In re Nat'l Century Fin. Enters., Inc.*, No. 02-65235, 2005 Bankr.

LEXIS 1052, *23 (S.D. Ohio Jan. 10, 2005), does not support the SASCO Defendants' assertion

that there should be an "allocation" of the D&O Policies proceeds here.  The quoted language

from that case involved the allocation of proceeds between the *debtor* and covered individuals,

and not the priority of payment among covered individuals as presented here.  *See id*. at *23.[6]

---

[6]  The SASCO Defendants unpersuasively attempt to distinguish *In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass 2002) and *In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999).  *In re CyberMedica* held that the automatic stay should be lifted because movants, as here, "may suffer substantial and irreparable harm" if not permitted to exercise their claim to coverage from the D&O Policies to settle their claims.  280 B.R. at 18.  Despite the SASCO Defendants' bald assertion to the contrary, their "claims" are, as in *CyberMedica*, also speculative and there is no evidence of an immediate risk that the 2007-2008 Policy will be exhausted.  *Id*.  *In re First Cent. Fin. Corp.* held that D&O proceeds were *not* property of the estate, but the SASCO Defendants seek to distinguish this outcome by noting the irrelevant fact that "no securities claims had been asserted against the debtor."  SASCO Obj. at 7.

Otherwise, the case involved an allocation of D&O proceeds among officers and directors who all appeared to have ripe, identifiable, and contemporaneous claims.  None of this is true here.[7]

10.    Fourth, irrespective of whether the D&O proceeds are part of the Estate, the SASCO Defendants' concern that the settlement may diminish or extinguish the proceeds of the D&O Policies to pay any future, hypothetical claims for which they may seek coverage, is outweighed by the tremendous benefit the settlement confers upon the Estate and that otherwise justify lifting the stay.  The settlement of the Equity/Debt Securities Class Action for $90 million from the D&O Policies spares the Debtors the risk of being potentially liable, *inter alia*, through its indemnification obligations, for a far greater judgment given that plaintiffs were seeking **billions of dollars** in damages.  In addition, the Debtors will receive a release of proofs of claims made against it in the bankruptcy proceeding by plaintiffs as part of the settlement.  The extinguishment of the claims presented in the Equity/Debt Securities Class Action, as well as the release of the Debtors from proofs of claims, is an enormous benefit to the Estate (and all of its creditors by extension), which greatly outweighs any speculative prejudice that the SASCO Defendants present.[8]  Conversely, failure to permit the payment of the settlement from the D&O

---

[7] The SASCO Defendants cite *In re Adelphia Communs. Corp.*, 298 B.R. 49 (Bankr. S.D.N.Y. 2003) for the proposition that the Court can refuse to lift the stay when doing so could adversely affect the debtor.  *See* SASCO Obj. at ¶ 12.  However, the *Adelphia* court overturned the bankruptcy court's refusal to lift the stay where the only justification provided was the "adverse" impact on the estate without more.  *Id.* at 55.  The SASCO Defendants have primarily objected to the speculative adverse impact to *them*, which does not justify denying the Insured Persons' Motion.

[8] This is especially true given that, as the SASCO Defendants have stated, both they and the Debtors believe that settlement of the MBS Class Action should be covered by an entirely separate 2008-2011 insurance policy.  SASCO Obj. at ¶ 6.  Indeed, the Debtors have already successfully petitioned this Court to permit them to use the "Legal Cost Fund" to litigate such coverage issues with the insurers, if necessary.  *See* Debtors' Motion to Expand Legal Cost Fund (dated June 28, 2011) [D.E. 18118] at 8-9 (requesting advancement of legal funds to Lehman officers to litigate dispute with insurers concerning coverage between 2007-08 and 2008-11

Policies could be extremely prejudicial to the Insured Persons and the Debtors because the settlement is conditioned on the granting of this Motion and payment from the insurers.  Thus, absent the requested relief, the Insured Persons and Debtors may lose the benefits of the settlement and, once again, potentially be subject to enormous liability in the billions of dollars. *See* Motion at ¶ 22.[9]

## Conclusion

Accordingly, for the aforementioned reasons and those discussed in our Motion, the Insured Persons respectfully request that the Court grant the relief requested in their Motion, grant the Equity/Debt Securities Class Action comfort order, and provide such other and further relief as is just and proper.

Dated: September 11, 2011
      New York, New York

 

*/s/ Adam J. Wasserman*
DECHERT LLP
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-8099

Attorneys for Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John Macomber

---

D&O Policies); Order Granting Debtors' Motion to Expand Legal Cost Fund (dated July 21, 2011) [D.E. 18689].

[9] Just as the Court waived the 14-day stay provided under Bankruptcy Code § 4001(a)(3) with respect to its rejection of the objection to the U.S. Air Comfort Order, the Court should do the same in this instance as the SASCO Defendants have provided no different justification for not doing so.  *See* Order Granting Motion to Lift Stay to Pay U.S. Air Arbitration Judgment (dated July 21, 2011) [D.E. 18691].

*/s/ Patricia M. Hynes*
ALLEN & OVERY LLP
Patricia M. Hynes
Todd S. Fishman
Molly C. Spieczny

Attorneys for Richard S. Fuld, Jr.


*/s/ Israel David*
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
Audrey Strauss
Israel David

Attorneys for Joseph M. Gregory


*/s/ Mary Elizabth McGarry*
SIMPSON THACHER & BARTLETT LLP
Michael J. Chepiga
Mary Elizabeth McGarry

Attorneys for Christopher M. O'Meara


*/s/ Kelly M. Hnatt*
WILKIE FARR & GALLAGHER LLP
Kelly M. Hnatt

Attorneys Ian T. Lowitt


*/s/ Mark E. Davidson*
PROSKAUER ROSE
Robert J. Cleary
Mark E. Davidson
Seth David Fier

Attorneys for Erin Callan

14212642.11.LITIGATION