# EXHIBIT A

Excerpt of Transcript of Hearing on July 20, 2011, pages 26-43.

Page 1

1
2   UNITED STATES BANKRUPTCY COURT
3   SOUTHERN DISTRICT OF NEW YORK
4   Case No. 08-13555-jmp, 08-01420-jmp (SIPA)
5   - - - - - - - - - - - - - - - - - -x
6   In the Matter of:
7   LEHMAN BROTHERS HOLDINGS, INC., et al.,
8           Debtors.
9   - - - - - - - - - - - - - - - - - -x
10  In the Matter of:
11  LEHMAN BROTHERS, INC.,
12          Debtors.
13  - - - - - - - - - - - - - - - - - -x
14
15              U.S. Bankruptcy Court
16              One Bowling Green
17              New York, New York
18
19              July 20, 2011
20              10:01 AM
21
22  B E F O R E:
23  HON. JAMES M. PECK
24  U.S. BANKRUPTCY JUDGE
25

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 26

1   the amended order?  Apparently not.  Is there anyone else who
2   wishes to be heard with respect to the order as amended?
3           There's no response.  The motion is approved.
4           MR. MILLER:  Thank you, Your Honor.
5           The next motion, Your Honor, number 6, is Jones Day's
6   motion.
7           THE COURT:  Those who wish to leave as a result of
8   having considered item number 5 may do so.
9           Let's just wait one moment while we allow the
10  courtroom to clear and people to sit down who might want to
11  find seats.
12          (Pause)
13          THE COURT:  This demonstrates the wisdom of taking
14  item number 5 first.
15          MR. MILLER:  Thank you, Your Honor.
16          MS. LAUKITIS:  Good morning, Your Honor.  Lisa
17  Laukitis from Jones Day on behalf of Roland Hansalik, George
18  Barclay Perry and Joseph Arena.  The parties have moved for a
19  comfort order to permit payment of a judgment under the
20  debtors' D&O policies.  I'm here today with my partner Philip
21  Cook.  There is a pro hoc motion pending for Mr. Cook but we
22  would ask that he be authorized to make argument today and we
23  can hand up the order at the conclusion.
24          THE COURT:  As far as I'm concerned, the pro hoc is
25  deemed granted.  But with the change in our rules since July 1,

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 27

1   there's a 200 dollar check that has to be paid at some point.

2         MS. LAUKITIS: I don't --

3         THE COURT: It's a fairly steep price to speak but go
4   ahead and be my guest.

5         MS. LAUKITIS: Mr. Cook is worth every penny, I assure
6   you.

7         THE COURT: Well, let's find out.

8         UNIDENTIFIED SPEAKER: Does that take care of the debt
9   limit, Your Honor?

10        MR. COOK: Thank you, Your Honor. I appreciate it.
11  With that, we are here on a motion for a comfort order. As the
12  Court knows, you know, seven prior comfort orders have been
13  entered. And our view, as we set forth in our motion is that
14  while the cases support the fact that the proceeds of the D&O
15  policy -- while the policies themselves may be the assets of
16  the estate, the proceeds are not and particularly under the
17  circumstances here where entity coverage has been deleted from
18  the policy and there is no evidence of an indemnity obligation
19  under part B. As the estate has stated on many occasions prior
20  and with their support here, we'd ask that the Court grant the
21  motion to permit the insurance companies to make the payment
22  for the current legal obligation.

23        THE COURT: Let me just ask a very basic question.
24  This is, as you have styled it, a comfort order. Is this
25  something that the insurance company has requested as a

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 28

1   condition to making the fifteen million dollar payment under

2   the FINRA award or is this something that the parties

3   themselves have determined is appropriate practice under the

4   circumstances because of reasoned doubt as to whether or not it

5   would be appropriate to make the payment, absent the entry of

6   an order?

7             MR. COOK:  I am here representing three insured

8   persons.

9             THE COURT:  I understand that.

10            MR. COOK:  And it is -- it is, from our view, has been

11  the practice from the outset of the estate and those involved

12  in these proceedings to seek a comfort order.  The cases

13  generally do hold, particularly under the facts here that these

14  proceeds are not assets of the estate and the estate has

15  consistently taken that position.  However, because of other

16  issues, I think I would answer the Court's question about the

17  insurance companies' position somewhat precisely.  They have

18  recognized it is and has been the practice here.

19            I don't think either the moving parties or the

20  insurers believe that the Court has jurisdiction over those and

21  that's why the motion has been styled and argued as it has;

22  that to the extent applicable and necessary, to the extent that

23  these proceeds are assets of the estate, we're seeking a

24  comfort order which will permit them to then pay without

25  concern that they're violating the automatic stay.  There are

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 29

1  cases that have held -- although I believe under different
2  factual circumstances -- that the estate may have an interest
3  in insurance policy proceeds.
4          THE COURT:  Okay.  Thank you.
5          MR. DAVIDSON:  Good morning, Your Honor.  Steven
6  Davidson with Steptoe & Johnson and my partner Evan Glassman.
7  We represent the claimant in the underlying case U.S. Airways
8  and we support the motion and are here if you have any
9  questions of us.  Thank you.
10         THE COURT:  I don't.
11         MS. MARCUS:  Good morning, Your Honor.  Jacqueline
12 Marcus, Weil Gotshal & Manges on behalf of LBHI and its
13 affiliated debtors.  As indicated in our statement in support,
14 Your Honor, we too support the requested relief.
15         THE COURT:  Okay.
16         MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,
17 Tweed, Hadley & McCloy on behalf of the committee.  We also
18 don't have any objections to the relief requested in the
19 motion.  We've noted, as we've noted in the past, that we do
20 reserve our rights with respect to some potential time in the
21 future where the facts might change and the estate might have
22 an interest in these proceeds but agree that, at this point in
23 time, that's a purely speculative interest and we don't have an
24 interest in these proceeds.
25         THE COURT:  Okay.  Is anybody here from New Jersey?

1   MR. DAVIDOFF: Yes, Your Honor. Merrill Davidoff from
2   Berger & Montague. I'll try to be brief, Your Honor, and not
3   repeat anything that was said in our papers but I would like to
4   supplement the objections that we made with a few observations.
5       There has been no demonstration of the background of
6   this FINRA judgment whatsoever made by the insureds here or by
7   the insurers. We see that a proceeding was instituted in
8   December of 2009. There's no basis for coverage, why is that
9   covered by either the 2007/2008 policy year or the 2008/2009
10  policy year. So there's no demonstration of coverage for this
11  at all.
12      There's no demonstration -- no linkage of the
13  allegations, no demonstration of what was alleged in the FINRA
14  matter and why that should be subject to coverage. The
15  respondents of the movants made the point that New Jersey has
16  acquiesced in prior attempts to tap the policy, mostly for
17  defense costs and for some settlements. But that situation has
18  drastically changed. These policies have been severely
19  depleted.
20      I don't know whether Your Honor received the papers
21  that we sent in yesterday afternoon. We sent a courtesy copy
22  down to Your Honor's chambers when we filed them. But the
23  background of this is that twenty-eight approximately or more
24  opt-out actions have been stayed by motions to dismiss the
25  class actions have been pending. And these policies have been

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 31

1  steadily depleted, mostly to pay defense costs and now to pay a
2  rather sizable settlement.
3          And I'd also like to note our objection -- strenuous
4  objection to the effort to wave the fourteen-day appeal period.
5  We should be given an opportunity to try to put this before the
6  District Court that stayed all of these actions, including New
7  Jersey's action which was forcibly -- forcibly hauled into the
8  MDL in the Southern District of New York, an attempt to put
9  that. And the attempt to waive the fourteen-day appeal period
10 really is an attempt to trample on and extinguish our appeal
11 rights.
12         I would note that it was over a month from the time
13 that the FINRA judgment was entered in June until the movants
14 actually moved for relief from the automatic stay. They
15 received an extension from the claimants, they received an
16 extension from FINRA. No reason to believe they couldn't
17 receive a similar extension of appellate proceedings were
18 pending in the District Court. The fourteen-day appeal period
19 is very short.
20         So I would urge Your Honor to inquire a little more
21 deeply into this before even considering granting the motion.
22 What is the background of the FINRA judgment, when was it
23 asserted, why is there coverage under the FINRA judgment for
24 this and, if Your Honor determines that the motion should be
25 granted, Your Honor should not -- should strike out, at the

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 32

1  very least, the portion that waives the appeal period to give
2  the objectors and opportunity to perfect an appeal and get it
3  before the District Court that has back-burnered all of the
4  cases, including New Jersey which lost almost 200 million
5  dollars on Lehman securities, that's back-burnered all of those
6  cases pending disposition of motions directed to the class
7  action.
8        There is an automatic stay for the class action cases.
9  There is no automatic stay for opt-out cases. It was a
10 procedural device that was entered by Judge Kaplan. We also
11 attached as Exhibit 7, if I could call Your Honor's attention
12 just to some language. This was another effort about a year
13 and a half ago by the class claimants to get discovery and
14 that's Exhibit 7 to the papers we filed yesterday. And in that
15 opinion, explaining why he would not -- I don't meant the
16 automatic stay; I mean the stay that judge Kaplan had entered
17 in the PSLRA stay. He distinguished the Worldcom case and
18 analogized the Lehman case to the Revco Securities litigation.
19       And among other things, he say this is a December
20 11th, 2009 order by Judge Kaplan, right around the time,
21 incidentally, that U.S. Airways was filing its initial claim in
22 the FINRA proceeding. "The facts here are akin instead to In
23 re: Revco Securities litigation and like cases. Here, unlike
24 Worldcom but like Revco, there are no court-ordered settlement
25 discussions. Similarly, lead plaintiffs have not demonstrated

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 33

1  a risk critical to the outcome in Worldcom that the defendants,

2  as opposed to nonparty Lehamn, will be insolvent if discovery

3  is delayed until after the motion to dismiss currently sub

4  judice is decided," And denied the motions to lift the PSLRA

5  discovery stay.

6       That situation has drastically changed.  At the very

7  least, we should have an opportunity to put this -- to seek to

8  put this before Judge Kaplan on appeal and I urge Your Honor,

9  if he -- in the event that Your Honor does grant the motion,

10 not to grant the portion of the motion that seeks waiver from

11 the fourteen-day appeal period.

12       THE COURT:  I have two --

13       MR. DAVIDOFF:  Thank you, Your Honor.

14       THE COURT:  -- questions for you.

15       MR. DAVIDOFF:  Yes, Your Honor.

16       THE COURT:  The first relates to your standing to

17 object.  There are arguments that I have read in the papers

18 indicating that, under applicable New York law, a party such as

19 the State of New Jersey that is simply waiting in the wings,

20 really can't complain about insurance proceeds going to the

21 first claimant that gets a judgment.  So question number one is

22 what standing do you have to complain in the first instance?

23 Question number two is what have you done between your first

24 knowledge of the FINRA preceding and today to go before Judge

25 Kaplan and seek relief?

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 34

1      MR. DAVIDOFF:  Well, the answer is we have not yet
2 sought relief from Judge Kaplan --
3      THE COURT:  Why not?
4      MR. DAVIDOFF:  That's -- that's a good question, Your
5 Honor, but I think we were focus, having only become aware of
6 this pretty much at the last minute, we were focused on filing
7 our objection before Your Honor and then we -- our intention
8 was present our position before Your Honor and then seek relief
9 in the District Court, preferably before Judge Kaplan if it
10 would be accepted as a related matter.
11      But I think Your Honor asks a good question.  Perhaps
12 we should have done that simultaneously, in hindsight, given
13 Your Honor's question.  But we certainly intend to do that.  I
14 am aware of cases under New York law that hold that, you know,
15 it's basically first come, first served but I think what's
16 happened here is a number of cases have been back-burnered and
17 I don't know why there was no effort to seek a stay of the
18 FINRA proceedings.
19      I'd also argue that these policies are not merely
20 proceeds, they're policies; they were purchased by Lehman.  And
21 I'm aware of the split in the authorities but I think the
22 weight of the authority is that these are property of the
23 estate and relief from the automatic stay is needed.  And under
24 105(a), Your Honor has the discretion, Your Honor has the
25 authority to enter such orders as are equitable, irrespective

08-13555-mg    Doc 19850-1    Filed 09/11/11    Entered 09/11/11 18:52:41    Exhibit A
-Excerpt of Transcript of Hearing on July 20   2011    pages 26-43.    Pg 12 of 20

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 35

1   of the ordinary rule where, you know, there isn't a bankruptcy

2   proceeding.

3           THE COURT: Can you explain why the State of New

4   Jersey acquiesced during each of the earlier occasions when

5   comfort orders were sought, with respect to settlements and the

6   use of proceeds to advance defense costs to officers and

7   directors and others who are entitled to coverage under these

8   various policies?

9           MR. DAVIDOFF: I can answer as to the one occasion

10  where we affirmatively acquiesced by signing onto a stipulation

11  because I was involved in those discussions, Your Honor. We

12  felt it was inequitable, even though we were adversaries of

13  these insureds, for them to be deprived of funds for their

14  defense costs so we acquiesced, reserving our rights, in a

15  stipulation -- and I don't have that stipulation before me. It

16  was quite some time ago -- for defense costs to be advanced.

17  And we didn't object on some prior occasions but we have

18  objected on this occasion and -- to put the matter first before

19  Your Honor and, depending on the outcome here, before the

20  District Court.

21          So I think at this point, one thing that the movants

22  and the insurers have not disclosed is how much of these

23  policies have been depleted and why is this FINRA claim, which

24  was filed in December of '09, in either the '07/'08 tranche of

25  policies to the '08/'09 tranche of policies? I don't

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 36

1   understand that. Was the claim asserted earlier? Why is there
2   coverage? I mean, there has been the sparsest showing, maybe
3   no showing. And I recognize that we're a lonely objector and a
4   lonely voice objecting and, you know, it's not fun to be --
5   it's not fun to be the guy in the corner but I think something
6   has to be done here or these policies will be completely
7   depleted before any of the opt-out cases have an opportunity to
8   reduce their claims to judgment.
9           THE COURT: All right.
10          MR. DAVIDOFF: Thank you, Your Honor.
11          THE COURT: Mr. Etkin, do you have a dog in this
12  fight?
13          MR. ETKIN: We did file a reservation of rights, Your
14  Honor. We did not object to the motion because, dating back to
15  the first of these types of motions where comfort orders were
16  sought from the Court, we were involved in the crafting of the
17  language that made sure that there was no determination that
18  the stay was, in fact, applicable and reserved on the issue of
19  whether the proceeds were property of the estate, rather than
20  have that issue determined because we didn't believe, nor did
21  the movants or the debtor believe, at the time, that that
22  determination was necessary.
23          We have a view that the proceeds are not property of
24  the state, the same view as expressed to you by the movant, the
25  debtor and, to some extent, the committee. But rather than get

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 37

1  into hat issue, we didn't feel it was necessary so long as the
2  order carved that out.  We filed the reservation of rights
3  because the debtor had filed papers indicating that there would
4  be some changes to the order that were not identified in the
5  papers so we wanted to make sure that whatever order was
6  ultimately presented to Your Honor reflected those same terms
7  that are contained in the prior orders that Your Honor signed
8  as to those issues that were significant to us.
9         I should state, and I probably didn't state for the
10 record, that we represent the institutional lead plaintiffs and
11 the securities class actions.  Like Mr. Davidoff, we too are
12 obviously concerned about the burn rate with respect to the
13 policies.  But, frankly, we did not object because of the
14 history of orders that have been entered and the issues that
15 have already been raised.  And we've looked at the revised
16 order and it contains the language that we've seen in the prior
17 orders so we have no -- we have no objection.
18         We also filed a reservation of rights because, to the
19 extent that the Court would entertain the -- a determination on
20 the issue at this juncture which, again, we don't believe is
21 necessary, that the proceeds are or are not property of the
22 estate.  And we believe that additional briefing would be
23 necessary and additional argument would be necessary. So we
24 wanted to reserve those rights as well.
25         THE COURT:  But as to the relief that's being sought

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 38

1  today in the motion, at least in respect to the form of order
2  that you have reviewed, you have no objection to the entry of
3  that order?
4          MR. ETKIN: That's correct, Your Honor.
5          THE COURT: All right. Thank you.
6          MR. COOK: Your Honor, just very briefly in response
7  to the comments of counsel from New Jersey. The motion
8  expressly states that we're not asking the Court to make any
9  determination as to the rights to coverage, to become involved
10 in whether the insurance companies have defenses. The order
11 that we sought simply is one that provides comfort to the
12 insurance companies that payment of policy proceeds will not
13 violate the automatic stay.
14         We have shown that, under New York law, we have a
15 contractual right to those policy proceeds. The insurance
16 companies have not articulated, as we state in the motion, any
17 defense to payment or to those contractual rights. And we've
18 shown that by August 3rd, if those -- if the award is not paid,
19 the award that was entered by FINRA on March 27th, there will
20 be significant prejudice to the three insured persons who've
21 moved for this order.
22         And I believe Judge Gonzalez, in the Enron case --
23 there's a bench ruling that was attached to the Zurich motion;
24 we've referenced that in our motion. And he makes clear that
25 in making a decision about whether to enter a similar order, in

1  finding that the proceeds are not the assets of the estate.
2  That it's not his purview to change the contractual rights of
3  the parties but to merely make a much more limited decision as
4  to whether or not it would violate the terms of the automatic
5  stay to provide and order allowing the insurance payment.
6              THE COURT:  Okay.
7              MR. COOK:  Thank you.
8              THE COURT:  Is there anything more on this?
9              MR. DAVIDOFF:  I have one sentence, if I may be
10 permitted, Your Honor.
11             THE COURT:  Well, you're going to have to come to the
12 podium to express it.
13             MR. DAVIDOFF:  I'm sorry, Your Honor.  I just would
14 note for the record that New Jersey disputes the assertion that
15 the claimants have shown that there's prejudice and that the
16 August 3rd deadline, like the prior deadlines, could not be
17 further extended or that there would be penalties imposed in
18 the event the Court were not to lift the automatic stay by that
19 time.
20             THE COURT:  I don't understand what you just said.
21             MR. DAVIDOFF:  The -- I'm sorry, Your Honor.  Counsel
22 said the award was entered by FINRA on March 27th.  There was a
23 substantial delay in seeking relief from the automatic stay.
24 There were extensions granted by FINRA.  If the Court were to
25 refuse to lift the automatic stay, there's not showing that

1  there would be any automatic levying of penalties against the

2  insured who are seeking recompense from the policy and there's

3  no showing that there would be any further prejudice.  U.S.

4  Airways would have to stand in line, like other claimants who

5  are equally deserving or more deserving than U.S. Airways.

6  That was the point I was making.  I don't think the papers

7  sufficiently demonstrate prejudice and I wanted to note our

8  position on that.

9          MR. COOK:  Just a quick point of clarification.  I

10 apologize for misspeaking.  I believe it was pointed out to me

11 I said March 27th.  Exhibit B, which we have filed to our

12 motion, is a copy of the FINRA award.  It was entered on May

13 27th.  The first opportunity we had to make the motion after

14 the delivery of that award was on our -- for this omnibus

15 hearing and we filed our motion on June 29th.  I am assured --

16 and counsel for U.S. Airways is here and can assure the

17 Court -- there will be no further delay beyond the arrangement

18 that we have with FINRA and with U.S. Airways to get this paid

19 by early August and the only reason for that concession was so

20 that we could come here and obtain the comfort order.

21         THE COURT:  Okay.  Now we'll hear from U.S. Airways

22 counsel.

23         MR. DAVIDSON:  Just very briefly, Your Honor, to

24 underscore the point that we have agreed to this extension to

25 allow this process to run its course but if the payment is not

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 41

1  forthcoming from the insurance policy, we will then seek to
2  enforce our award against the three individual respondents
3  through whatever means we can. So that's why we're here today
4  and have agreed to the extension with FINRA and counsel for
5  respondents.
6          THE COURT: Okay.
7          MR. DAVIDSON: Thank you.
8          THE COURT: Mr. Davidoff's throw away lines and the
9  end of the presentation prompted two comments that emphasize
10 that there is actual prejudice to the clients that have moved
11 for what amounts to a comfort order. These individuals Joseph
12 Arena, Roland Hansalik and George Barclay Perry are seeking a
13 comfort order to permit insurance proceeds to be utilized to
14 satisfy a fifteen million dollar award in an arbitration that
15 was conducted under the FINRA rules in which U.S. Airways was
16 the successful claimant. I have actually reviewed the FINRA
17 arbitration award which was submitted to my chambers in time
18 for my review of people coming out here today. And it appears
19 to be a legitimate copy of that arbitration judgment.
20         The State of New Jersey, through counsel, is the only
21 party objecting to what has become a fairly standard protocol
22 in these cases and in other large Chapter 11 cases, mainly
23 coming before the Court to obtain an order permitting insurance
24 proceeds to be used for the advance of defense costs or to
25 satisfy settlements or judgments in connection with individuals

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 42

1  who are covered under officers and directors policies.

2      I don't need to decide the ultimate question which is

3  embedded in a motion of this sort which is whether or not these

4  proceeds are or are not property of the estate. There seems to

5  be a general recognition on the part of those parties who have

6  moved for relief as well as on the part of -- that Mr. Etkin,

7  who spoke on behalf of the lead plaintiffs, that we're probably

8  not dealing with the property of the estate. We are dealing,

9  however, with what he claimant's view as a wasting asset

10 because the policy limits in question are being used over time

11 to satisfy the needs of those who come ahead of others in the

12 queue.

13     The State of New Jersey, through its papers and in the

14 presentation just made by its counsel, tells a story of having

15 wasted time in an appellate process in the Third Circuit and

16 then being subjected to a stay in the District Court up the

17 street in which Judge Kaplan is managing multidistrict

18 litigation. That's not my problem. The fact that the State of

19 New Jersey is but one representative of what I assume to be a

20 whole host of third parties who may have claims that may

21 someday rise to the level of a claim that could be a claim

22 against proceeds of an insurance policy, is the rankest of

23 speculation in terms of having a right to these proceeds today.

24     The case authority presented in the motion and in some

25 of the supporting papers makes clear that, under applicable New

LEHMAN BROTHERS HOLDINGS, INC., et al.

Page 43

1   York law, this is a first come, first served issue. In fact,

2   it promotes a race to judgment. But that's what the law is.

3   The fact that the State of New Jersey may be waiting in the

4   wings with a claim that may not be subject to applicable

5   insurance coverage is a regrettable fact of life. I question

6   whether or not New Jersey has actual standing under these

7   circumstances to appeal this judgment and I certainly question

8   whether or not there's the ability to somehow get this before

9   Judge Kaplan as a related matter. But they're free to do so.

10  I'll enter the order.

11           MR. MILLER: Thank you, Your Honor.

12           THE COURT: Thank you.

13           MS. MARCUS: Item 7 on the agenda, Your Honor, is the

14  motion of Merrill Lynch Portfolio Management, Inc and Merrill

15  Lynch Capital Services, Inc. to compel specific performance of

16  subordination agreement. Mr. Barrett, I believe, will handle

17  that, initially.

18           MR. BARRETT: Good morning, Your Honor. Peter Barrett

19  from Kutak Rock on behalf of Merrill Lynch Portfolio

20  Management, Inc. and Merrill Lynch Capital Services, Inc.

21  Merrill Lynch entities have moved under 105 to compel the

22  debtors to comply with the terms of the so ordered stipulation

23  that's been entered in this case as well as the subordination

24  agreement between the parties. I think initially, if it's okay

25  with Your Honor, there's a couple of housekeeping matters that