Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 08-13555-jmp

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS INC., ET AL.,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              August 30, 2011

19              10:09 AM

20

21   B E F O R E:

22   HON. JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    Amended motion (i) for Approval of the Disclosure Statement and

3    the Form and Manner of Notice of the Disclosure Statement

4    Hearing, (ii) Establishing Solicitation and Voting Procedures,

5    (iii) Scheduling a Confirmation Hearing, and (iv) Establishing

6    Notice and Objection Procedures for Confirmation of the

7    Debtors' Joint Chapter 11 Plan [ECF No. 18126]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Aliza Chodoff

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         700 Louisiana

6         Suite 1600

7         Houston, TX 77002

8

9    BY:   ALFREDO R. PEREZ, ESQ.

10        LORI FIFE, ESQ.

11        HARVEY MILLER, ESQ.

12

13

14   DAVIS POLK & WARDWELL

15        Attorneys for Lehman Brothers International (Europe)

16        450 Lexington Avenue

17        New York, NY 10017

18

19   BY:   MARSHALL S. HUEBNER, ESQ.

20        BRIAN RESNICK, ESQ.

21

22

23

24

25

Page 4

1

2   BROWN RUDNICK LLP

3         Attorneys for LBI Ad Hoc Group

4         Seven Times Square

5         New York, NY 10036

6

7   BY:   MARTIN S. SIEGEL, ESQ.

8         REBECCA L. FORDON, ESQ.

9

10

11   MILBANK, TWEED, HADLEY & MCCLOY LLP

12         Attorneys for Creditors' Committee

13         One Chase Manhattan Plaza

14         New York, NY 10005

15

16   BY:   EVAN R. FLECK, ESQ.

17         DENNIS F. DUNNE, ESQ.

18         DENNIS C. O'DONNELL, ESQ.

19

20

21

22

23

24

25

Page 5

1

2   KLESTADT & WINTERS, LLP

3        Attorneys for OMX Timber

4        570 Seventh Avenue

5        17th Floor

6        New York, NY 10018

7

8   BY:   CARRIE V. HARDMAN, ESQ.

9

10   LATHAM & WATKINS LLP

11        Attorneys for Bundesverband Deutscher Banken

12        885 Third Avenue

13        New York, NY 10022

14

15   BY:   MARK A. BROUDE, ESQ.

16

17

18   UNITED STATES DEPARTMENT OF JUSTICE

19        Office of the United States Trustee

20        33 Whitehall Street

21        21st Floor

22        New York, NY 10004

23

24   BY:   TRACY HOPE DAVIS, UST, ESQ.

25        ANDREA B. SCHWARTZ, ESQ.

Page 6

```
 1

 2    WHITE & CASE LLP

 3         Attorneys for Ad Hoc Group of Lehman Brothers Creditors

 4         1155 Avenue of the Americas

 5         New York, NY 10036

 6

 7    BY:   CHRISTOPHER SHORE, ESQ.

 8         GERARD UZZI, ESQ.

 9

10

11    AKIN GUMP STRAUSS HAUER & FELD LLP

12         Attorneys for Centerbridge Partners

13         One Bryant Park

14         New York, NY 10036

15

16    BY:   PHILIP C. DUBLIN, ESQ.

17         ABID QURESHI, ESQ.

18

19

20

21

22

23

24

25
```

Page 7

1

2   VINSON & ELKINS LLP

3        Attorneys for Shinsei Bank

4        666 Fifth Avenue

5        26th Floor

6        New York, NY 10103

7

8   BY:   DOV KLEINER, ESQ.

9

10

11   BINGHAM MCCUTCHEN LLP

12        Attorneys for Wells Fargo as Trustee

13        399 Park Avenue

14        New York, NY 10022

15

16   BY:   MICHAEL J. REILLY, ESQ.

17

18

19   VINSON & ELKINS LLP

20        Attorneys for Deutsche Bundesbank

21        666 Fifth Avenue

22        26th Floor

23        New York, NY 10103

24

25   BY:   JANE LEE VRIS, ESQ.

Page 8

1

2    KRAMER LEVEIN NAFTALIS & FRANKEL LLP

3         Attorneys for Rutger Schimmelpenninck and Frederic

4            Verhoeven as Trustees for Lehman Brothers Treasury Co.,

5            BU

6         1177 Avenue of the Americas

7         New York, NY 10036

8

9    BY:   THOMAS MOERS MAYER, ESQ.

10         JENNIFER R. SHARRET, ESQ.

11

12

13   HUGHES HUBBARD & REED LLP

14         Attorneys for SIPA Trustee

15         One Battery Park Plaza

16         New York, NY 10004

17

18   BY:   JAMES B. KOBAK, JR., ESQ.

19

20

21

22

23

24

25

1

2    DAY PITNEY LLP

3          Attorneys for Fidelity National Title Insurance Company

4          One Audubon Street

5          New Haven, CT 06511

6

7    BY:   JOSHUA W. COHEN, ESQ.

8

9

10   VENABLE LLP

11         Attorneys for Danske Bank A/S London Branch

12         1270 Avenue of the Americas

13         25th Floor

14         New York, NY 10020

15

16   BY:   CAROLLYNN H.G. CALLARI, ESQ.

17

18

19   SUSMAN GODFREY L.L.P.

20         Attorneys for Mason Capital Management

21         1201 Third Avenue

22         Suite 3800

23         Seattle, WA 98101

24

25   BY:   DREW HANSEN, ESQ.

Page 10

1

2    MAYER BROWN

3          Attorneys for Sumitomo Mitsui Banking Corporation

4          1675 Broadway

5          New York, NY 10019

6

7    BY:    JEFFREY G. TOUGAS, ESQ.

8

9

10   SNR DENTON US LLP

11         Attorneys for Bankhause

12         1221 Avenue of the Americas

13         New York, NY 10020

14

15   BY:    PATRICK C. MAXCY, ESQ. (TELEPHONICALLY)

16

17

18   CHAPMAN & CUTLER LLP

19         Attorneys for US Bank

20         330 Madison Avenue

21         34th Floor

22         New York, NY 10017

23

24   BY:    FRANKLIN TOP, ESQ. (TELEPHONICALLY)

25

Page 11

1

2   ALSO PRESENT:

3          HOLLY CLACK, Alvarez and Marsal (Telephonically)

4          ISAAC PACHULSKI, ESQ., Stutman, Treister & Glatt

5             (Telephonically)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1                    P R O C E E D I N G S

2           THE COURT:  Be seated, please, those who can.  Before

3     Mr. Miller starts, I'm going to make a plea for the good of the

4     room that those people who do not have foreseeable speaking

5     roles today please consider going either into room 608 or Judge

6     Lane's courtroom upstairs.  It's already warm in here, and it's

7     going to get warmer as we continue breathing.  So if -- this is

8     a test of your civic responsibility.  If you don't have

9     speaking roles and aren't needed to assist someone with a

10    speaking role, I ask you to go into another room where you will

11    have complete ability to hear and observe.

12           Okay, it looks like it's going to be a very long day

13    since no one has moved.

14           MR. MILLER:  I hope not, Your Honor.

15           THE COURT:  Okay.

16           MR. MILLER:  Good morning, Your Honor.  Harvey Miller,

17    Weil Gotshal & Manges, on behalf of the debtors.

18           It has been quite a week, Your Honor.  August 24th; an

19    earthquake, August 27th and 28th; a one in a hundred years

20    hurricane.  And today is a landmark date in the continuing saga

21    of Lehman Brothers and its decline and fall.  As I waited to

22    pass through security this morning, Your Honor, I thought of

23    the remarks of Winston Churchill.  When he was asked to comment

24    on the status of World War II at the end of 1942, he replied it

25    was not the end.  It was not even the beginning of the end, but

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 13

1    it was perhaps the end of the beginning.

2         It's the debtors' sincere hope and belief that today

3    is not the end of the beginning, but rather the beginning of

4    the end of these unique and extraordinary Chapter 11 cases.

5    And I'm sure there are many in the audience that would agree

6    with that.  The debtors are before the Court today pursuant to

7    Section 1125 of the Bankruptcy Code, requesting the approval of

8    the debtors' revised and amended second disclosure statement

9    and related solicitation procedures for their joint Chapter 11

10   plan.

11        It has been almost three years since the commencement

12   of these historic cases and the chaos that engulfed the global

13   financial markets and the economy.  As many will recall, the

14   early days of these cases were, in many respects, horrendous as

15   fear and panic ruled the financial markets and created an

16   environment that also exacerbated the administration of these

17   cases.  Initially, the debtors had little access to reliable

18   financial information.  In many foreign jurisdictions there was

19   a race to the courthouse and the seizure of Lehman assets; a

20   process that resulted in eighty foreign insolvency proceedings

21   under the supervision of receivers and administrators.

22        At the same time, while the sale and transfer of

23   Lehman's North American capital markets business to Barclays

24   Capital Corp that occurred and was approved within the first

25   five days of the commencement of the LBHI Chapter 11 case.  And

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 14

1    on the first day of the Securities Investor Protection Act

2    proceedings for Lehman Brothers Inc. the debtors' U.S. broker

3    dealer affiliate resulted in significant benefits to customers

4    of LBI and allowed the SIPA trustee and Barclays Capital to

5    expeditiously return approximately ninety-two billion dollars

6    to customers at LBI as well as preserve asset values.  It

7    denuded the Chapter 11 debtors of operating personnel.

8            Essentially, all of the Lehman employees in the

9    metropolitan area were transferred to Barclays Capital.  To

10   meet the challenge the debtors engaged Bryan Marsal of Alvarez

11   and Marsal as their chief restructuring officer and Alvarez and

12   Marsal as the debtors' financial advisers and management

13   support.  Under Mr. Marsal's leadership, Alvarez and Marsal

14   quickly introduced hundreds of A&M personnel to fill the roles

15   of corporate and operational management and to collect and

16   administer and preserve the assets and value of the debtors'

17   estates.

18           There was a precarious and hazardous period of

19   sustained pressure, anxieties, and indeed chaos and doubts.

20   Nonetheless, with the support of teams of skilled professionals

21   and the statutory general unsecured creditors' committee and

22   its professionals, Mr. Marsal and A&M created order out of

23   chaos and set the course for an extremely efficient and

24   beneficial administration of the Chapter 11 cases.  Some might

25   say that Mr. Marsal was suitably rewarded by his appointment as

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 15

1   chief executive officer of the debtors, and A&M by the

2   appointment of John Suckow as the debtors' president and chief

3   operating officer.

4        The bankruptcy process started in September 2008 with

5   the stabilization of the administration of the debtors' assets

6   and operations, the collection and preservation of data and

7   information and the creation of financial statements from the

8   information available as well as identifying many issues and

9   alleged conflicts that permeated the Chapter 11 cases in terms

10  of claimed rights, asset ownership, avoidance actions,

11  jurisdiction, and ultimately finding the potential solutions of

12  the issues that would allow the cases to get to the point of

13  making distributions to holders of allowed claims.

14        It has not been a cake walk.  As the Court has

15  observed in the many matters that have been heard in this

16  courtroom, proceedings which Your Honor has noted just

17  presented the tip of the iceberg.  Despite the many obstacles

18  and challenges, it is as a result of the dedication of the

19  debtors' team led on a day-by-day basis by Mr. Suckow and ably

20  supported by the ever persistent Daniel Herman and a remarkable

21  host of A&M and Lehman persons, guided by knowledge, ingenuity

22  and innovative skills of professionals and particularly, Your

23  Honor, I would note an inspired team led by my partner, Lori

24  Fife, and her band of merry pizza eating partners and

25  associates and paras and brought together the different

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 16 of 92

Page 16

1    claimant constituencies that have moved these cases to the

2    beginning of the end.

3          I would be remiss if I did not also acknowledge the

4    significant contributions of the unsecured creditors'

5    committee, its members, and retained professionals,

6    particularly Milbank, Tweed as well as the representatives and

7    members of the ad hoc group of LBHI senior creditors and its

8    attorneys, and Mr. Uzzi and White & Case and the so-called OPCO

9    creditors, many of the foreign representatives and various

10   individual claimants, and all of their retained professionals;

11   each of whom joined in the good faith intensive efforts that

12   led to the development and formulation of the proposed plan, a

13   plan that the debtors and many of the more substantial

14   claimants in groups believe should be considered for acceptance

15   by all impaired creditor claimants.

16          As a result of the hundreds of hours expanded and the

17   extreme efforts of many efforts, on July 1, 2011, the debtors

18   filed their second amended disclosure statement and a proposed

19   second amended Chapter 11 plan.  However, that was not the end

20   of the dedication and extended efforts.  Subsequent to the

21   filing date, the negotiations continued right up to the

22   beginning of this hearing to refine the disclosure statement

23   and proposed Chapter 11 plan and to resolve objections to the

24   disclosure statement.  The last filed documents in relation to

25   this hearing, Your Honor, were made on October 24th.

1          Since that date, there have been additional changes in

2    the disclosure statement and in the plan, which we will

3    distribute before this hearing is over, Your Honor.  I would

4    just allude to the changes that have been added since August

5    24th.  There has been added a description in the disclosure

6    statement in the Singapore and LBT settlements at pages 31 and

7    14 -- Exhibit 14E-1 and 14G-1 of the changed places -- pages

8    blackline.  The Singapore and LT -- LBT settlement agreements

9    are attached as Exhibits 14F and 14H, respectively.  There has

10   been added disclosure requested by Fannie Mae that provides

11   that Fannie Mae reserves the right to assert that 2.7 billion

12   dollars of its 19 billion dollar should be treated as a

13   priority claim under the Hera, H-E-R-A, statute, and that's at

14   page 54 and Exhibit 4-8 and 5-10.  Added disclosure requested

15   by LBF that it believes the setoff provisions of section 13.5

16   of the plan impinge on their setoff rights has been set out at

17   page 72 of the changed pages.

18          Added disclosure has been requested by LBF and

19   incorporated that in their belief is that the plan cannot be

20   confirmed if section 8.15 of the plan is not modified and that

21   section 8.15 violates Section 1123(a)(4) of the Bankruptcy Code

22   and the principles of comedy at page 107 of the changed pages.

23   In the description of the claims included in each class debtors

24   have moved guaranteed claims based on prime brokerage accounts

25   from class 5 senior third party guaranteed claims to class 9a

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 18

1    third party guaranteed claims based on further analysis and

2    determination that such claims do not qualify as senior debt

3    under the relevant indentureds.  And that's at pages 82 and 85

4    of the blackline.

5        Added clarifications have been made to the disclosure

6    requested by class action plaintiffs regarding their claims and

7    classification, which is set forth at page 87 of the blackline.

8    Clarifications have been made to the maximum distribution

9    section to clarify that the provision relates to the

10   satisfaction of a claim and not a holder of a claim, and that's

11   pages 108 and 109 of the changed pages.  Added disclosure has

12   been made to provide that any additional settlement agreements

13   entered into by the debtors with foreign affiliates will be

14   included in the plan supplement, and that's at page 122 of the

15   changed blackline.  Further, there has been added the Singapore

16   entities and LBT -- I'm sorry, let me rephrase that.  There has

17   been added to the plan support provisions the Singapore

18   entities and LBT.  They have executed plan support agreements,

19   and changes will be made to pages 20-2 of the blackline.

20       In addition, just ten minutes ago, agreement was

21   reached with Wells Fargo Bank as acting on behalf of OMX and

22   objector to, in effect, withdraw the objections based upon an

23   agreement and language to be added.  Wells Fargo and OMX have

24   asserted that their claims, to the extent allowed, should be

25   properly classified in LBHI class 3.  The debtors are reviewing

08-13555-mg    Doc 19935    Filed 08/31/11    Entered 09/14/11 10:47:03    Main Document
Pg 19 of 92
LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 19

1    the classification of these claims and have agreed to address

2    that issue prior to the voting deadline.

3         Changes to the plan, Your Honor, we have incorporated

4    the Singapore settlement agreement into the plan.  The

5    agreement provides the allowance of certain claims among the

6    Lehman Singapore entities against the debtors and certain

7    nondebtor affiliates.  In addition to Singapore, entities have

8    agreed to support the plan, and that's in section 6.5.  We have

9    incorporated the LBT settlement.  The debtors have incorporated

10   the LBT settlement with the LBT trustees.  The agreement has

11   been finalized and executed between the parties.  The

12   settlement provides for the allowance of LBT senior

13   intercompany claims against LBHI in the amount of 34.548

14   million dollars as well as the claims of LBSF and LBCS against

15   LBT.  In addition, the LBT trustees would agree to support the

16   plan, and the debtors have agreed to support and facilitate the

17   LBT trustees' restructuring in the Netherlands.  And that'll be

18   in section 6.5(b)(3).

19        Additional settlement agreements with foreign

20   affiliates and creditors; the debtors expect to finalize

21   additional settlements with their foreign affiliates and other

22   creditors and will incorporate additional language to provide

23   that such settlements will be included in the plan supplement

24   that is to be filed at least ten days prior to the voting

25   deadline, which is approximately October 25.  That will be

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1      section 6.5.

2              In addition, the debtors have clarified section 8.13

3      of the plan regarding maximum distributions to make clear that

4      the satisfaction in full is tied to the claims and not holders.

5      Further, we have made an additional change in the plan in

6      respect to the fee committee to satisfy a comment of the United

7      States Trustee.  The debtors will incorporate the role of the

8      fee committee post-effective date as agreed.  The fee committee

9      will continue to exist for the purpose of reviewing

10     professional fees incurred prior to the effective date,

11     including final fee applications.  And that will be section

12     15.1(b).

13             So, Your Honor -- let me just get back to where I was,

14     Your Honor.  Just a one more minute, Your Honor.  Notice of

15     today's hearing in accordance with the Bankruptcy Code and

16     related rules and requirements was given to approximately

17     110,000 claimants and entities.  Objections to the approval of

18     the disclosure statement were required to be filed by August

19     11, 2011.  As the Court may recall, approximately 67,000 claims

20     were filed against the debtors, asserting claims aggregating

21     approximately 1.2 trillion dollars.  Over 180 omnibus motions

22     objecting to claims have been filed and heard.  As a result,

23     approximately 22,500 claims aggregating approximately 223

24     billion dollars that either have been withdrawn, reduced,

25     reclassified, disallowed or expunged.

1           The debtors project that the aggregate amount of

2    allowed claims will approximate 360 billion dollars.  In

3    connection with the disclosure statement and prior to the

4    objection deadline, certain claimants informed the debtors that

5    they had questions and potential objections to the approval of

6    the disclosure statements and the solicitation of acceptances

7    or rejections of the plan.  Wherever possible, Your Honor,

8    meetings and conferences were established to review and resolve

9    potential objections through clarification, additional language

10   or otherwise.  A relative high level of success was achieved.

11   By the end of the objection deadline, from the 110,000 entities

12   served with notices of the motion only 17 claimants and the

13   United States Trustee filed objections to the approval of the

14   disclosure statement.

15           Three claimants filed joinders to certain of the

16   objections.  And of the seventeen objections filed, four

17   objections are made by pro se claimants who are objectors.

18   Since August 11, 2011, and as a result of further meetings,

19   conferences and communications, eight of the seventeen

20   objections, including the objections of the U.S. Trustee, have

21   been substantially resolved, at least to the extent that they

22   purported to raise issues as to the approval of the disclosure

23   statement or deferred to the confirmation hearing as to

24   confirmation issues.  In all cases, the potential objector or

25   actual objector is reserving any and all rights to pursue its

1  objections and any other objections it may conjure up at the

2  time the Court considers the confirmation of the plan.

3       In addition to the unsecured creditors' committee,

4  Your Honor, the ad hoc group of LBI senior creditors and

5  approximately forty-seven claimants, and that number will

6  increase, Your Honor, asserting well over one hundred billion

7  dollars in claims against the debtors and who are parties to

8  plan support agreements have filed pleadings in support of the

9  approval of the disclosure statement.

10      The issue to be determined by the Court today if

11  whether the disclosure statement contains adequate information

12  in light of the nature and history of the debtors and the

13  condition of their books and re -- books and records that would

14  enable a hypothetical investor typical of the holders of claims

15  or interest in these cases to make an informed judgment about

16  the plan.  In making that determination, the Court is to

17  consider the complexity of the cases, the benefit of additional

18  information to creditors and other parties-in-interest, and the

19  cost of providing additional information.  As the Court has

20  recognized, these are extremely complex cases.  Further, the

21  great -- all of the claimants are very sophisticated creditors.

22  Indeed, many of them acquired their claims after the

23  commencement of the Chapter 11 cases as distressed day traders

24  and speculators.

25      They are very conversant with financial transactions,

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 23

1   credit analyses and the like, particularly as they related to

2   the debtors.  As noted in the support pleading filed by the

3   unsecured creditors' committee, the representative of the

4   general creditor body, and all of the respective

5   constituencies, it is very satisfied and comfortable with the

6   level of disclosure contained in the disclosure statement as

7   being compliant with the requirements of Section 1125 of the

8   Bankruptcy Code.

9          The costs of preparing the disclosure statement has

10  been substantial.  The efforts to resolve objections, while

11  successful in certain cases, was costly and required extended

12  participation by the debtors' financial and, to an extent, the

13  operational management as well as many of their professionals.

14  The blackline disclosure statement, which was filed on August

15  24th, has -- illustrates the extensive additional language that

16  has been incorporated into the disclosure statement since July

17  1, 2011, as a result of negotiation with parties-in-interest.

18  As such, the disclosure statement is compliant with Section

19  1125 of the Bankruptcy Code.

20         Approval of the disclosure statements does not result

21  in any substantive relief.  It does not determine substantive

22  issues relating to the confirmation of the plan.

23  Unfortunately, in practice, as involving the bankruptcy arena,

24  of using Section 1125 hearings as the bully pulpit by

25  disgruntled, unhappy, and disappointed creditors and interest

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 24 of 92

Page 24

1  holders to vent and broadcast their objections to a pln.  The

2  practice has been recognized by courts as being

3  counterproductive to the orderly process contemplated by

4  Chapter 11.  Recently, in connection with the approval of the

5  stipulation order regarding plans and stay of discovery on July

6  20, 2011 the Court recognized the problem and cautioned

7  attorneys not to use that hearing as a soap box and make

8  statements about positions that they might assert at some

9  future hearing in connection with some future matter to be

10  heard, such as the confirmation hearing.

11        In the Chapter 11 cases of General Motors Corporation,

12  prior to the 11 -- Section 1125 hearing, Judge Gerber advised

13  claimants and others and their attorneys that objections

14  directed to the confi -- to the confirmation of the General

15  Motors plan would not be allowed or considered in determining

16  the approval of the disclosure statement.  Many other courts

17  follow that principle, and the authorities have cited in the

18  debtors' response at paragraph 7 and 8.  Despite this general

19  principle that applied in this district, a majority of the

20  remaining of the active objections to the debtors' disclosure

21  statement, although cleverly worded, raise confirmation issues

22  that should be deferred to the confirmation hearing.  The

23  debtors' amended response to the filed objections identifies

24  those objections that present confirmation issues and, as such,

25  should be deferred to the confirmation hearing.

Page 25

1          Those objections should not be allowed to delay the

2     approval of the disclosure statement, which hopefully will

3     bring these cases to a point of making distributions to holders

4     of allowed claims and to the closing of these unique cases.  As

5     the district court noted in, in re Royal Comp, the

6     determination of what is adequate information is subjective and

7     made on a case-by-case basis.  The determination is largely

8     within the discretion of the bankruptcy court.  In that

9     context, as the Court is aware, a principle foundation of the

10    debtors' plan is the compromises incorporated in the plan that

11    would significantly accelerate the conclusion of these cases

12    and largely avoid extensive, complex and expensive litigation

13    of issues, including those relating to the doctrine of

14    substantive consolidation.

15          Inherent in the confirmation of the plan is a

16    necessity that the Court approve these compromises.

17    Nevertheless, a number of objections focus on the propriety of

18    the compromises and in some instances demand justification for

19    the proposed compromises.  Such objections patently are direct

20    to the substantive issue of approval of the compromises.

21    However, as stated, approval of the disclosure statement does

22    not equate to approval of the compromises.  And the debtors are

23    not requesting or seeking to limit in any way, to constrain a

24    particular objectors in raising, prosecuting proper objections

25    to the compromises and the confirmation of the plan at the

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 26

1    appropriate time.

2            As noted in the Waterville, Tennessee -- Waterville

3    time share cited in the response, the wisdom of the compromise

4    in that case, which was a critical element of the Waterville

5    claim, was a prime issue for the confirmation hearing and not

6    an objection to the approval of the disclosure statement in

7    that case.  Similarly, in other cases involving plans that

8    incorporated major and integral compromises, objections to a

9    disclosure statement based upon a lack of justification for the

10   compromises or the failure to include a professional evaluation

11   of the compromise were rejected as premature as the particular

12   disclosure statements contained a concise statements of the

13   existing issues and did not require speculation as to future

14   uncertainties, including the consequences of a potential

15   outcome of litigation.  Essentially, these cases hold that a

16   disclosure statement or the hearing for approval is simply not

17   the place to argue various theories of recovery to demonstrate

18   results of what if kinds of proof.  And I would refer Your

19   Honor to in re Texas Extrusion Corp at 844 F.2d 1142, 5th

20   Circuit, 1988, Colorado & Mountain Express v. Aspen Limousine

21   Service in 193 B.R. 325, District Court Colorado, 1996, Cadle,

22   C-A-D-L-E, Company of Roman Two Inc. v. PC Liquidation Corp,

23   383 B.R. 856, Eastern District of New York, 2008, in re CDECO,

24   C-D-E-C-O, Maritime Construction Inc. 101 B.R. 499, Bankruptcy

25   Northern District of Ohio, 1989.

Page 27

```
 1          The debtors' disclosure statement, consisting of over
 2    150 pages of text without exhibits, contains more than adequate
 3    information consistent with Section 1125 of the Bankruptcy
 4    Code.  Therefore, in the exercise of the Court's discretion, it
 5    should be approved and impaired claimants given the opportunity
 6    to accept or reject the plan.  Attached to the disclosure -- to
 7    the response, Your Honor, is Exhibit A, a chart prepared by the
 8    debtors that succinctly sets forth each filed objection and
 9    debtors' responses to the particular objection.  As a result of
10    the pre-hearing meetings and conferences, the following
11    objections have been resolved by consent, and where appropriate
12    by incorporating into the disclosure statement language as set
13    forth in the blackline of the disclosure statement that was
14    filed on August 24th or described today.
15          And those objections that have been withdraw -- they
16    are withdrawn as they relate to the approval of the disclosure
17    statement or by agreement that the objections would be reserved
18    for the confirmation hearing.  The withdrawing objections or
19    withdrawing objectors, Your Honor; the Wilmington Trust
20    Company, which is listed as number 1 on the chart, which
21    alludes to the pages that have been changed.
22          The next one is Liberty View, which -- represented by
23    Mr. Etkin and which he has agreed to reserve his objections to
24    the confirmation hearing.
25          Numbers 3 and 4, which are both lead plaintiffs in
```

1    consolidated class actions, we have added language describing

2    those actions to the satisfaction of Mr. Etkin.  And I would

3    point, Your Honor, that number 4 is the subject of a pending

4    motion to be heard by Your Honor in September to approve the

5    settlement of that action in consideration of ninety million

6    dollars that is paid out insurance proceeds and which will, if

7    approved, will result in the release to the debtors.

8            Number 5, Your Honor, is PriceWaterhouseCoopers AG in

9    Zurich.  We have agreed to incorporate some language that is --

10   have been blacklined.

11           And jumping over, Your Honor, to number 16; the

12   objections -- extended objections, let me say, Your Honor, of

13   the United States Trustee have been resolve pursuant to

14   agreements with the Office of the United States Trustee.  There

15   has been substantial additions to the disclosure statement and

16   to the plan, and also the U.S. Trustee reserves all objections

17   and rights to add objections at the appropriate time in

18   connection with the confirmation hearing.

19           And going back up to number 7, Your Honor, which I

20   referred to as BDD -- BDB, called Bundersverband Deutscher

21   Banken likewise, Your Honor, reserving objections to the

22   confirmation hearing.

23           And finally, Your Honor, the resolution that was

24   reached just five minutes before the commencement of this

25   hearing, number 15, Wells Fargo Bank Northwest, and that

1    includes the joinder OMX Timber Finance.  The language that I

2    read into the record earlier during this hearing, Your Honor,

3    resolves that objection so far as it relates to the approval of

4    confirmation hearing.

5            So, Your Honor, there are nine remaining objections,

6    of which four of those objections are made by pro se objectors.

7    And if we go through this chart, Your Honor, the first

8    objection that is still outstanding is number 6, which is the

9    objection with Fidelity.  This objection, Your Honor, relates

10   to coverage on insurance policies.  There are, as I understand,

11   Your Honor, literally maybe thousands of these polices.  Most

12   of them are title insurance policies.  And the objection states

13   that the debtors have failed to identify the insurance policies

14   to be assumed.  The debtors have provided that insurance

15   policies, to the extent they constitute executory common --

16   contracts, shall be deemed assumed under the plan.  It's our

17   understanding, Your Honor, that one of the issues is the

18   contention by Fidelity that in some way assumption made

19   preclude the insurance companies from denying coverage.

20           The debtors have agreed, Your Honor, that -- and

21   acknowledge that the plan and the assumption, if there should

22   be an assumption -- and I might say, Your Honor, we're not sure

23   that these are executory contracts.  In most cases, these are

24   fully paid up insurance policies.  In any event, that if there

25   is assumption it shall not foreclose Fidelity from raising and

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 30

1    denying issue -- denying coverage in any appropriate

2    proceeding.  I don't know if that would satisfy Fidelity, but

3    that's what the debtors are prepared to do, Your Honor.  As to

4    the objections in connection with Stern v. Marshall, we submit

5    that that is a confirmation objection.  And the assumption and

6    assignment procedures of the plan are not adequate.  That,

7    again, Your Honor, we would submit is a confirmation issue.

8            THE COURT:  Let me just break in and try to get my

9    bearing as to where we are in this process.  In identifying a

10   variety of objections to the disclosure statement that have

11   been resolved, unless somebody has a problem with what you've

12   said, I assume that's off the agenda for purposes of

13   discussion.  And I've kind of checked that off in the resolved

14   column.  But as you're now going into this apparently alive

15   objection, unless your comments resolve the objection, of

16   Fidelity National Title Insurance Company, I'm not sure whether

17   we're identifying the live objections to be addressed when

18   you're done with the list or whether we're going item-by-item

19   and, in effect, going into the specific objections.

20           I would prefer to defer going into the specific

21   objections on the merits until after you have completed, in

22   effect, your status report.  I'd then like to give major

23   parties-in-interest who have supported the disclosure

24   statement, including the creditors' committee and the ad hoc

25   committee, who filed reply papers along with you, a chance to

1    say anything if they choose to.  And once we're done with that,

2    I'd like to take stock as to where we are in terms of the order

3    of play for the day, particularly since there are so many

4    people who are standing and are in overflow rooms.

5            If this is going to be a prolonged process, we're

6    going to need to talk about breaks, lunch, and when we come

7    back from lunch so as not to disable the elevators for other

8    judges who have hearings in the building today.  And

9    additionally, to the extent that we're going to have an

10   admonition from the bench, which is going to limit confirmation

11   objections, I'm going to do that.  It's just a question of when

12   I do that.  But before we get into the merits of the specific

13   arguments, I wanted to be clear that I am not going to permit

14   the disclosure statement hearing to become what amounts to a

15   preview of coming attractions of what will be presented at the

16   time of a confirmation hearing.

17           But to the extent that there are disagreements on the

18   part of objectors as to the debtors' characterization of their

19   objections as confirmation objections or concerns with respect

20   to the adequacy of disclosure that arise within the context of

21   an objection which the debtor has characterized as a

22   confirmation objection, we need to hear those.  And so, we're

23   going to get to those, but we're not to going to have what

24   amounts to a disorderly process in which I'm going to learn

25   what I've already read anyway.

1          MR. MILLER:  Yes, sir.  We will proceed in accordance

2     with your instructions.

3          THE COURT:  Fine.

4          MR. MILLER:  So the open objections, Your Honor, so to

5     speak, are number 6, Fidelity National Title Insurance Company,

6     number 8, Deutsche Bundesbank, number 9, Sumitomo and the Sumi

7     Banking Corporation, number 10, Centerbridge Credit Advisers;

8     to which there are two joinders; Anchorage Capital Group,

9     Monarch Alternative Capital LP, number 13, Danske, D-A-N-S-K-E,

10    Bank A/S London Branch, number 14, Mason Capital Management

11    LLC, and then, Your Honor, the four pro se; number 18, Chris

12    Stovic, S-T-O-V-I-C, number 19, Linda Neufeld, N-E-U-F-E-L-D,

13    number 20, Tommy Tewalt, number 21, Gary A. Cutler.

14         So, as I said, Your Honor, there are nine remaining

15    objections; of which four are the ad hocs.  So there are five

16    claim -- I should say institutional objections.

17         THE COURT:  I'd just like to find out for purposes of

18    planning whether or not the objections that have been lodged by

19    pro se creditors who are not represented by counsel are being

20    pressed today by parties who are either present in court or

21    participating in the hearing on the telephone.  Is Mr. Stovic,

22    Ms. Neufeld, Mr. Tewalt or Mr. Cutler present?

23         I hear no comment.  I'm assuming, as a result, that

24    unless somebody rises to speak as to each of these that these

25    are objections that are not being prosecuted today and will

Page 33

1    simple be resolved on the papers.

2         MR. MILLER:  Yes, sir.

3         So, Your Honor, just to conclude, it's the debtors'

4    position that the disclosure statement is complete and contains

5    more than adequate information to enable all of the claimants

6    against these debtors, including the very sophisticated

7    claimants who have been so active in these cases to make an

8    informed to judgment to accept or reject the debtors' plan.

9    Each of the objections that remain, we believe, have been

10   appropriately responded to by the debtors and should be

11   overruled.  The debtors' disclosure statement and the related

12   solicitation procedures that have been described in the motion

13   should be approved.

14        I would note, Your Honor, we don't have any objections

15   to the solicitation procedures, that I'm aware of.  Unless Your

16   Honor has some questions, I will yield to Mr. Dunne.

17        THE COURT:  I don't have any questions at this moment.

18        MR. MILLER:  Thank you, Your Honor.

19        THE COURT:  Mr. Dunne.

20        MR. DUNNE:  Good morning, Your Honor.  Dennis Dunne of

21   Milbank, Tweed, Hadley, McCloy, on behalf of the official

22   committee of unsecured creditors.

23        For almost three years now the committee has worked

24   extensively with the debtors, the various ad hoc groups that

25   have formed in these cases, and other parties-in-interest to

1    achieve a consensual plan of reorganization.  Through the

2    diligence and hard work of all of these parties and after

3    extended negotiations we believe we have achieved such a plan,

4    and it is the debtors' plan, and it has substantial creditor

5    support.  While certain issues in connection with the plan have

6    not yet been resolved and a few key parties are not yet on

7    board, the committee is satisfied and pleased with the progress

8    that has been made to date and is hopeful that a plan can be

9    successfully confirmed before the end of this year.

10          In connection with the prosecution of their plan, the

11   debtors have requested approval of the disclosure statement.

12   The committee has evaluated the disclosure statement and the

13   supplemental disclosures provided by the debtors in response to

14   objections to the disclosure statement.  The committee has

15   concluded that the disclosure statement, as revised, provides

16   information that is adequate to allow all creditors to make an

17   informed judgment with respect to acceptance or rejection of

18   the plan.

19          We believe that the committee, given its statutory

20   obligations and fiduciary duties, is uniquely qualified to

21   assess the adequacy of the information contained in the

22   disclosure statement.  As the Court is aware, the committee has

23   been involved from the outset of these cases in virtually every

24   aspect of the debtor's asset stabilization, liquidation of

25   assets and claims reconciliation efforts.  Through Court

Page 35

1    approved, as well informal protocols, the committee's

2    professionals have worked closely with the estates in the

3    management and wind down of each of the debtors' discrete asset

4    classes, including the administrations and settlement of

5    derivative transactions, the management of the corporate long

6    portfolio, and the administration of the real estate and

7    private equity asset classes.

8            In preparation for the plan formulation and

9    negotiation process, the committee carefully evaluated, and

10   Milbank accorded litigation outcome probabilities to a number

11   of threshold legal theories, including substantive

12   consolidation, whether intercompany can be properly

13   recharacterized as capital contributions, the scope of senior

14   debt definitions, and subordinated debt documents, the

15   treatment of intercompany repurchase agreements and related

16   issues.  At stake in each of these legal issues is the

17   allocation or reallocation of distributive value under the

18   plan.

19           Finally, the committee and its advisers played a

20   critical role in developing the fundamental framework for the

21   plan with the debtors.  Thereafter, the committee was involved

22   in crafting and negotiating the various settlements that are

23   now embodied in the plan.  And today, the committee continues

24   to work with the debtors to address the remaining unresolved

25   issues.

Page 36

1           The committee recognizes that certain creditors desire

2     more information than what is currently contained, even as

3     modified, in the disclosure statement.  However, the committee

4     also believes because the information requested by such parties

5     is not mandated by the statute or the case law that its

6     inclusion is neither necessary nor desirable.  From this

7     perspective, the committee has evaluated the amended disclosure

8     statement and concluded that no additional disclosure is

9     required.

10          I will not go over the applicable legal standards, for

11    Mr. Miller has.  But suffice it to say that the committee

12    submits that the disclosure statement provides adequate,

13    legally sufficient, and accurate information to allow creditors

14    to vote on an informed basis to accept or reject the plan.  The

15    disclosure statement adequately describes the history of the

16    debtors' operations, the relevant transactions entered into

17    immediately prior to the commencement date, the debtors' post-

18    petition litigations strategies, claims against the various

19    debtors' estates, the debtors' assets and their value, the tax

20    consequences of the plan and the factual bases for the plan

21    settlements as well as the effect of those settlements on the

22    implementation of the plan and the distribution to creditors.

23          Notwithstanding, these eighteen parties-in-interest

24    have filed objections.  Through the debtors' efforts we have

25    whittled them down to a handful.  The remaining ones express a

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 37

1    contrary view and demand additional information on a variety of

2    topics.   The debtors, as Mr. Miller has told the Court, have in

3    fact resolved a number of those objections by providing

4    supplemental information.   The committee submits that the

5    supplemental information that the debtors have chosen to

6    include in the revised disclosure statement is sufficient.   In

7    response to the U.S. Trustee's objection, for example, the

8    debtors have provided a number of clarifications, cross

9    references, and supplemental disclosures which should make the

10   average creditor's review of the disclosure statement less

11   challenging.

12          Similarly, in response to objections filed by certain

13   of the securities class action plaintiffs, the debtors have

14   provided a more thorough discussion of the pending securities

15   class action suits as well as the available insurance coverage.

16   Most significantly, the debtors have provided, while reserving

17   their rights with respect thereto, an extensive discussion of

18   the contentions of certain creditors of LCPI with respect to

19   claims, treatment and classification and avoidance action

20   issues they have raised.

21          The demands of certain other objecting parties for

22   additional information regarding alternative Chapter 11 plans

23   or recovery scenarios are without merit, in the committee's

24   view.   Under Section 1125, a disclosure statement need not

25   include such information about any other possible or proposed

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 38

1    plan.  More relevant is the fact that the debtors' plan is the

2    only plan of reorganization currently being approved for

3    solicitation and hopefully confirmation.  The prosecution of

4    the ad hoc and nonconsolidation plans have been held in

5    abeyance pursuant to this Court's July 21st, 2011 order.  As a

6    result, these alternative plans are not germane to the voting

7    decisions of creditors with respect to the debtors' plan.

8         Based upon its extensive knowledge of these cases and

9    its fiduciary role in the Chapter 11 process, the committee is

10   comfortable that the information ultimately included in the

11   disclosure statement is adequate within the purview of Section

12   1125, and no supplemental information if required under

13   applicable law.

14        The remaining objections, as both Mr. Miller and

15   Your -- and the Court have noted, are objections to the

16   confirmability of the plan.  These objections that question the

17   fairness or validity of certain provisions of the plan or claim

18   treatment should be addressed at the confirmation hearing.

19   Most notable among these objections are the various objections

20   to the merits of the plan settlements.  The essence of each of

21   these objections, Your Honor, is that the debtors will be

22   unable to satisfy Bankruptcy Rule 9019 and its standards with

23   respect to confirmation.  It is well settled that disputes of

24   this kind relate to the confirmability of Chapter 11 plans and

25   should be decided then at the confirmation hearing and not at

1      the disclosure statement.

2            For purposes of today, the details of the plan

3      settlements are set forth at length in the disclosure

4      statement, and the information provided in the disclosure

5      statement is adequate to enable claimants to make an informed

6      judgment.  The Court should thus defer consideration of those

7      objections until the confirmation hearing.

8            Finally, the committee concurs in the debtors' view

9      that the objections to the propriety of the liquidation

10     analysis and the solicitation procedures proposed by the motion

11     lack merit.  The liquidation analysis properly reflects the

12     plan settlements incorporated in the plan, and it is fair and

13     reasonable to assume that any Chapter 7 trustee acting

14     rationally would have reached similarly equitable settlements

15     in any hypothetical liquidation.  With that, Your Honor, the

16     committee submits that the disclosure statement provides

17     adequate information.  The information contained in the

18     disclosure statement is comprehensive.  It is accurate, and it

19     provides creditors with sufficient information to make an

20     informed decision on the merits of the plan.

21           Your Honor should overrule any remaining objections to

22     the adequacy of the disclosure statement.  And unless the Court

23     has any questions for the committee, I conclude my remarks on

24     behalf of the committee.

25           THE COURT:  I don't have any questions for the

Page 40

1    committee.

2         And I'll hear from the ad hoc group now.  Mr. Shore.

3         MR. SHORE:  Good morning, Your Honor.  Chris Shore

4    from White & Case, for the ad hoc group.

5         We stand in support of the motion to approve the

6    disclosure statement.  At the outset, we'd like to add thanks

7    to the Court and the staff for providing immediate stability to

8    the process, and then ultimately the framework that allowed the

9    clients and their lawyers to get to this point.  It seemed very

10   far away back in 2008.  We have filed a statement in support

11   and a supplement.  I'm not going to repeat those.  I just want

12   to address two points.

13        With respect to the objections as to the disclosure

14   surrounding the settlement, the current disclosure of the

15   underlying merits is we believe adequate and balanced right

16   now.  More disclosure of the parties' position, I think, is

17   just going to beget more disclosure as everybody feels

18   compelled, then, to lay out their battle plans for war that

19   we're trying to avoid.  And while we all like to advocate, I

20   just don't think it's going to be helpful in the context of

21   getting to confirmation.  It could probably be

22   counterproductive to the -- to consensus building.

23        With respect to the confirmation objections, I'm just

24   going to add that these plan settlements are constructed around

25   the concept of a quick and peaceful exit.  To that end, we'd

1    ask the Court to schedule a confirmation hearing, set the

2    deadlines, provide the framework, then, for allowing those

3    objections to either be resolved consensually or judicially at

4    confirmation.  But we need to move forward now.

5            THE COURT:  Okay.  Apparently, this is becoming open

6    season.  I'm not sure -- before we hear from Mr. Mayer, just in

7    the interest of good order, because I'm seeing a number of

8    people getting in position to come to the podium, I wanted to

9    hear before hearing from any objectors or other parties who

10   have comments to make from those who are principle supporters

11   of the disclosure statement.  I recognize that there are any

12   number of parties to plan support agreements that filed pro

13   forma statements in support of the disclosure statement, which

14   I have read.  I read them to see if they were long or short, to

15   see if they were in any way conditioned, and I paid to

16   attention to them.

17           So there's no need for anyone who is a supporter of

18   what has already been said by the debtors, the committee, and

19   the ad hoc committee to speak.  But I'm seeing Mr. Mayer here,

20   and I know that there was a recent statement by Mr. Miller that

21   LBT has entered into and confirmed a settlement, which is part

22   of a plan modification.  To the extent that Mr. Mayer is

23   speaking in respect of that or other issues that would be

24   helpful to the disclosure statement process, since he's

25   standing, and I note him, I'm going to let him speak.

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 42

1           MR. MILLER:  Before he does, Your Honor, I have to

2    correct the record.  I misread a series of e-mails, and I

3    indicated to Your Honor that BDB, Bundesver -- Bundes Bank --

4    not Bundes Bank, the BDB had withdrawn their objection.

5           THE COURT:  They have not?

6           MR. MILLER:  That's incorrect, Your Honor.

7           THE COURT:  So you read a yes as a no, a no as a yes?

8    What did -- what -- how --

9           MR. MILLER:  I read -- I misread it, and I thought

10   that -- I interpreted what was said that they had withdrawn it.

11   And Mr. Broude has advised me that's not accurate.

12          THE COURT:  Then we will hear from Mr. Broude to the

13   extent that --

14          MR. MILLER:  Yes, Your Honor.

15          THE COURT:  -- that he wishes to speak to the

16   disclosure.

17          MR. MILLER:  Yes, Your Honor.

18          THE COURT:  Fine.

19          MR. MILLER:  I also -- just to add to the record, Your

20   Honor, I skipped over a line.  I would also like to acknowledge

21   the leadership that was provided by Mr. Perez in connection

22   with all of the negotiations that led to these various

23   settlements.  Thank you, Your Honor.

24          THE COURT:  Fine.

25          MR. MAYER:  Thank you, Your Honor.  Thomas Moers Mayer

1      of Kramer Levin Naftalis & Frankel, on behalf of two clients.

2              I wanted to confirm for the record that Lehman

3      Singapore does have an agreement with the debtors as recited.

4      And I wanted to confirm at some great length that Lehman

5      Brothers Treasury reached agreement approximately an hour and a

6      half ago.  My clients are Rutger Schimmelpenninck and Frederic

7      Verhoeven are here from Amsterdam and signed their agreement in

8      this courtroom.  And in accordance with that agreement and

9      pursuant thereto, we are in support of the disclosure statement

10     and its approval.

11             And I just wanted to alert the Court also we expect to

12     post that settlement agreement on our website for the benefit

13     of our 100,000 creditors.  Thank you.

14             THE COURT:  Thank you.  And Mr. Shimmelpenninck,

15     welcome to the courtroom.

16             Now, I'm just not sure how many attorneys for parties

17     who are supporters of the disclosure statement in its present

18     form wish to be heard.  If you're simply stating that you're in

19     support and I've already read your supporting statement,

20     there's no need to say anything.  If you have something

21     material to add and it relates to supporting the disclosure

22     statement, we can do that now.

23             MR. REILLY:  Good morning, Your Honor.  Michael Reilly

24     from Bingham McCutchen, on behalf of Wells Fargo, trustee.

25     With me in the courtroom is Carrie Hardman from the Klestadt

1      Winters firm, on behalf of OMX.

2            I want to take thirty seconds to address what Mr.

3      Miller said about the withdrawal of our objection on the OMX

4      bonds to just underscore the point that this is all about

5      classification and voting.  It's not about confirmation.  We

6      need to know who we vote with and why we should vote for it.

7      We have resolved the first step in the disclosure statement by

8      asserting the dispute about how we're classified, and we now

9      have a commitment to try to resolve that before voting takes

10     place.  If not, I'll be coming with a motion under Rule 3013

11     for classification again before voting.  But I'm hopeful that

12     we can resolve it with the committee and with the debtors.  I

13     appreciate their cooperation today.

14            As said to them, we have a billion-six in claims.

15     We're trying to get on board with this train.  But before we

16     can vote and before we can hopefully support, we need to know

17     where we sit.  So it's just not a confirmation issue, but I may

18     be coming back.  But I agree with Mr. Miller's --

19            THE COURT:  Fine.

20            MR. REILLY:  -- withdrawal.

21            THE COURT:  I --

22            MR. REILLY:  Thank you.

23            THE COURT:  -- I don't mean to very simplistic, but

24     what I'm trying to achieve in terms of good order at this

25     moment is that those who are now speaking aren't speaking in

Page 45

```
 1   reference to withdrawn objections or reservations of rights,

 2   but rather those who are supporting approval of the disclosure

 3   statement by saying something beyond what is already set forth

 4   in previously filed documents of support.  Those who are going

 5   to be talking about reservations of rights or clarification of

 6   anything that Mr. Miller said in terms of otherwise resolved

 7   objections or who are planning to make statements in support of

 8   their objections would be going later.

 9          So --

10          MR. REILLY:  Okay.

11          THE COURT:  -- Mr. Reilly, no offense --

12          MR. REILLY:  I apologize.

13          THE COURT:  -- but you're out of order.

14          MR. REILLY:  Okay.  I apologize, Your Honor for

15   stepping in too early.

16          THE COURT:  Okay.

17          MR. HUEBNER:  Hey, Your Honor.  All right, so what are

18   you going to tell me, Your Honor?  Let me be guided by you

19   because it's not clear, frankly, exactly where you would have

20   us fit.  So I'll ask you to tell me.  For the record, I am

21   Marshall Huebner of Davis Polk & Wardwell, on behalf of Lehman

22   Brothers International in Europe and its twenty-nine

23   affiliates.

24          Your Honor, we do have some agreements reached with

25   the debtors that are important to us and need to be on the
```

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 46 of 92

Page 46

1   record in connection with our no longer objection to the

2   disclosure statement.  If that's a later issue, it won't be

3   consented.  It won't take very long.  I'm happy to do it later,

4   if that's the Court's pleasure.  It seems that the other major

5   parties who no long have issues have now spoken.  We are

6   certainly in that category.  But if your wish is to let Mr.

7   Miller begin the truly contested, clearly I will sit down and

8   wait through all of that, if that's the Court's pleasure.

9           THE COURT:  Well, I read your -- I think it was five-

10  page statement that was not a statement in support but

11  identification and certain clarifying language in a statement

12  of your ongoing willingness to work cooperatively and in good

13  faith -- assiduously, I think, was the term you used -- to move

14  the process forward and ensure that you are going to speak in

15  that spirit, but I think we would be very close to when it's

16  time for you to speak --

17          MR. HUEBNER:  Perfect.  So then, I'll be waiting.

18          THE COURT:  -- so let's just find out before we open,

19  not the floodgate, but the door to others who have clarifying

20  comments to make to see if there's anyone else who is a

21  supporter of approval of the disclosure statement who wishes to

22  say something that wasn't already stated in filed documents in

23  support of approval of the disclosure statement and are in a

24  category different from the debtor, the ad hoc committee, and

25  the creditors' committee that has already spoken in support of

08-13555-mg    Doc 19935    Filed 08/31/11    Entered 09/14/11 10:47:03    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 47 of 92

Page 47

1    approval.

2            Since there are no takers, Mr. Huebner, you now fall

3    into the next spot.

4            MR. HUEBNER:  They doubted me.

5            THE COURT:  You were well lined -- lined up for this

6    particular role.

7            MR. HUEBNER:  So I was thinking of various World War

8    II philosophers to cite in response to Mr. Miller's references

9    to Churchill, but I'm not sure the occasion quite merits that

10   level etymology.  Your Honor, for the record, I'm Marshall

11   Huebner of Davis Polk & Wardwell, representing LBI and its

12   twenty-nine affiliates.

13           Your Honor, as you know, I have spoken only once in a

14   year and a half in this case.  I have not, unlike other

15   parties, littered the docket with we don't object, we do

16   object, we sort of object when it's not necessary.  So I'm

17   actually going to be very brief today as well.  We did not

18   telescope in our disclosure statement pleading objections that

19   we might well have with confirmation, but I think that it is

20   important for the Court to know certain things that we agreed

21   to with the debtors and our go forwards since we may be the

22   largest unresolved party in this case.  And if not, we are

23   certainly one of the very largest.

24           Number one; we have agreed with the debtors that the

25   approval of the order -- the entry of the order today in the

 1    form of file absolutely does not preclude from arguing that the

 2    confirmation hearing cannot be held in December and must be

 3    adjourned.  That was a clear agreed reservation of rights,

 4    which we discussed and also put in our pleading, which they

 5    actually reviewed.  To be clear, we will be commencing

 6    discovery in the coming days with respect to the confirmation

 7    process and with respect to the deals that led up to the June

 8    19th second amended plan.

 9         Given that the fact that the original discovery

10    schedule, as I'm sure Your Honor well remembers, and the

11    protocol that, frankly, we had an awful lot to do with drafting

12    stretched on for many, many months beyond December.  The fact

13    that certain parties are now -- were part of a negotiation

14    process that we were not and have now reached a deal that we

15    are not a part of certainly simplifies the issues somewhat.

16    But whether it allows for the most complex case and history to

17    go from a filed plan with some support, but by no means

18    unanimous, to a confirmation hearing in a matter of a very

19    small number of months is an issue that is ahead of us and not

20    yet behind us.

21         Second, Your Honor, I do want to give you comfort,

22    because I think it's also important to know, that we are

23    working very hard and in very good faith to try to obviate the

24    need to either seek to extend the confirmation schedule or to

25    file what will be very intense and serious objections to

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 49

1   confirmation.  We'll work with them on a voting stipulation.

2   We're discussing reserve issues, and we have a absolutely dead

3   serious in-person senior clients summit planned in London for

4   mid-September, which we very much hope will add us the long

5   list of supporters of the plan.

6          Your Honor, why are we not objecting to the disclosure

7   statement?  Because on the main, I actually agree with the

8   comments that have been made so far, which is whether or not

9   this plan is legal and passes muster is not today's issue.

10  There's a lot the parties need to know about this plan if it is

11  to be contested, including exactly how were these deals

12  reached.  Who was in the room?  Who wasn't in the room?  Did

13  the debtor have authority without Court approval to enter into

14  plan support agreements?  But none of those things are today's

15  issue because the disclosure statement was resolved, for our

16  purposes, by changing two provisions in the plan that were very

17  important to us.

18         And I would just want to be clear.  The 815 I want

19  resummarized, because Your Honor read the pleadings, and you

20  know how they changed it.  8.4; Your Honor also knows they

21  changed it.  It was a simple matter of equity.  It was not a

22  LBI specific point, neither really was 815, but I want to be

23  very clear for the record.  8.4 contains a provision that I

24  haven't -- that is brand new that came in on June 29th that I

25  have never seen in my life that says that the debtors can move

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 50

1   in the future to take out all the cash in the reserve if there

2   are other noncash assets.  This is arguably very prejudicial to

3   the creditors whose claims are allowed later and very, very

4   good to creditors whose claims were already allowed.  And

5   whether or not that's an issue, we'll see.

6        The oth -- the only other thing, Your Honor, that I

7   really want to address today is that the disclosure statement

8   approval also provides for the 3018 mechanics, and we have

9   already served the debtors with our discovery in connection

10  with 3018 because as Your Honor probably knows we have tens of

11  billions of dollars in claims.  And the amount in which we vote

12  those claims is very important to us.  By and large, we reached

13  agreement with the debtors on the language that governs

14  temporary allowance of claims.  There are only two things I

15  want to point out; both of which were discussed, and I think

16  more or less agreed with the debtors.

17       Number one is that paragraph 6 of the disclosure

18  statement approval order contains language that says that if

19  the Court has not ruled on a 3018 motion by November 4th it's

20  basically deemed disallowed, whereas we lose by default.  So if

21  we file a massive 3018 motion exactly timely and has hundreds

22  of pages of exhibits and all that stuff and the Court just

23  doesn't get around to it, it just gets thrown in the garbage,

24  and our provisional ballot gets shredded.  We and the debtors

25  have agreed that, at least as to Liberty, that sort of can't

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
Pg 51 of 92
LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 51

1   and shouldn't take place and that we will figure out,

2   obviously, some flexible appropriate way.  Obviously, it's the

3   Court's calendar and the Court's pleasure that we all serve at.

4        How we will -- if we are unable to reach an agreement

5   on voting, we will resolve that because a default rule that

6   says if the Court is simply overburdened we don't vote at all,

7   and our provisional ballot gets thrown away, there are other

8   provisions in that disclosure statement approval order that

9   seems to suggest that that shouldn't be the outcome.  But there

10  is that second sentence in paragraph 6 that basically says in

11  black and white that if the Court has not ruled on a 3018 by

12  November 4th the creditor just doesn't vote in the amount of

13  provisional ballot.

14       So I don't think that's a today issue.  I think it

15  will get resolved, but it was obviously, for obvious reasons,

16  critical to us that our votes not accidentally get thrown in

17  the garbage by an accident of timing give our view that we're a

18  very material creditor.

19       The other issue, Your Honor, which I do think is

20  important to highlight because it was ultimately resolved with

21  a conversation and a level of trust that we were very happy to

22  place, both, in Alvarez & Marsal and in Weil, Gotshal is that

23  another paragraph of the disclosure statement approval order,

24  paragraph 28 says that for any reason, essentially in their

25  sole discretion, the debtors can extend the voting deadline for

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 52

1    any individual creditor, individual claim or individual ballot.

2    As you can imagine, in a hypothetical world where you don't

3    know who the debtors' professionals are, a provision like that

4    that says I'm the plan proponent.  This is the voting deadline

5    except that in my sole discretion anyone I want to can have a

6    different or a better one has at least the potential for

7    mischief.  We're completely comfortable, and Ms. Fife very

8    graciously added the phrase in good faith to that provision for

9    us, and we don't need more than that because we trust this team

10   completely that the ballot extension will happen only for

11   proper reasons and not as one might hypothetically in a sort of

12   dark world that is not the world before us to further ensure

13   plan support.

14        So, Your Honor, with those couple of changes -- now,

15   unfortunately, I think that we will have to work kind of a

16   little bit to try desperately hard, which is -- I can assure

17   you with all my heart and soul we are doing -- to settle by

18   day.  but we also will have to work with the debtors on an

19   accelerated timeframe to get ready to litigate by night,

20   because as you can imagine for us in particular, where LBI

21   affiliates have billions and billions of dollars of claims

22   where LBI is the primary obligor, the argument that Europe's, I

23   think, largest broker dealer should be somehow with the U.S.

24   debtors, and all those guaranteed claims get thirty-five

25   percent less than the guaranteed claims of third parties is a

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 53

1    very hard one to swallow.

2          So I'm hoping that we'll be able to resolve it and

3    obviate the need and be able to join the victory lap and the

4    victory dance that others have already begun this morning.

5    Thank you.

6          THE COURT:  I don't view what has happened this

7    morning as a victory lap as much as I view it as an

8    acknowledgement that heroic efforts have achieved a very

9    important transition point in the case.  And I don't -- well,

10   Miller tends to a rhetorical flourish there, but I think the

11   disclosure statement hearing is not a victory lap.  It is a

12   statutory step that must be taken.  And in case of this

13   consequence represents an extraordinary and noble achievement.

14   And I view the comments made by counsel for the debtors, the

15   creditors' committee and the ad hoc committee as being an

16   acknowledgement that this is an important day.

17         Regardless of the outcome of the hearing and

18   regardless of the outcome of future hearings, to have marshaled

19   the resources that were marshaled for this process and to have

20   achieved substantial consensus leading to the agreement of

21   proponents of competing plans to support this debtors' plan

22   borders on the miraculous.  And this all happened in an

23   environment where the debtor did not enjoy the statutory

24   benefit of exclusivity or extension of exclusivity because

25   we're beyond eighteen months, and Congress wouldn't let us do

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 54 of 92

Page 54

1   it.

2           So we are dealing in a completely unchartered

3   territory using plan support agreements, whether or not Court

4   approved, that are achieving a highly desirable purpose,

5   orderliness in lieu of unnecessary litigation.  So I appreciate

6   your remarks, but far moved by your comment to interject my own

7   observation, which I appreciate what the professionals have

8   done and are doing, including yourself.  But today is not about

9   reserving rights.  Everybody's rights are reserved.

10  Everybody's right are reserved for a confirmation hearing

11  assuming this disclosure statement is approved.  Everybody is

12  encouraged to work assiduously to work out agreements.  Whether

13  their claims are monstrous or moderate, everybody is encouraged

14  to behave as grownups in our enlightened economic self interest

15  to produce outcomes in this remarkable case but I can't make

16  happen unless you all behave.

17          MR. HUEBNER:  I -- it goes without saying that I agree

18  with every one of those sentiments, and I -- as an aesthetic

19  manner, the fact that the two opposite poles were brought

20  together I think it justifies some of the adjectives Your Honor

21  described.  That said, what it may need to be discussed at some

22  point is a; that not everybody was in the room, and some of the

23  people from whom things were taken to cut those deals have yet

24  to be brought into the tent.  It may look a little bit less

25  miraculous when the full record actually comes out.  And number

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 55 of 92

Page 55

1   two; we hope to be brought into the tent, and that's an

2   important thought that I want to leave with, which is LBI, in

3   particular, and I are working as hard as is humanly possible to

4   get a deal done and join the list of those who are on board.

5          I did not mean any disrespect to the process or to the

6   professionals' achievements, but the fact that seemingly two

7   opposite sides with them and not many of others in the room

8   during that summit meet agreed to something does not

9   necessarily make it legal or confirmable.  And hopefully we

10  won't have to test that issue.  And, again, Your Honor, to be

11  clear.  We didn't file the twenty-pager.  You're right.  We

12  filed a five-pager.  We didn't telescope issues.  As I said,

13  this is the second time in fifteen months I have ever stood up

14  here.  I don't burden the docket with prequels and things like

15  that.  But some of the issues that I raised today were things

16  that were critical to our agreement, not to object to

17  disclosure, that were not in our pleading.  We thought it was

18  very important for the Court to know.

19          So to the extent that Mr. Miller, Mr. Shore, Mr. Dunne

20  thought that I was disrespecting their achievement in bringing

21  the ad hocs and the LBSF trade creditors together, I certainly

22  was not.  But they did that in part, at least it may one day be

23  argued, by taking from people that they did not invite to this

24  party.  And that may have to be discussed.

25          THE COURT:  Okay.  Here's what I'm going to propose at

Page 56

1   this point.  It's 11:17 by the clock on the back wall, and at

2   some point we're going to need to take a break.  I'd like to do

3   it in an orderly way.  And given the numbers that we have,

4   there's the potential that any break will be prolonged simply

5   because people have to go out and come back.  So what I'm going

6   to propose is that we have all of the speeches before we take a

7   break, and then take a break and go into the merits of the

8   objections.

9          So if there are speeches that need to be made, let's

10  do that now.  and by speeches I mean clarifications,

11  reservations of rights that you feel are necessary even though

12  I have just said that everybody has a full reservation of all

13  rights with respect to confirmation, anything that you feel

14  needs to be said so that I better understand anything that has

15  already been said in writing or anything that has already been

16  said on the record about you.  So let's have those comments,

17  whatever they may be, and that may also apply to any resolved

18  objections to the extent that you need to say anything to

19  clarify and emphasize a point.

20          I'll hear from counsel for the U.S. Trustee.

21          MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

22  Schwartz for the United States Trustee, Tracy Hope Davis, who

23  is here in the courtroom today.

24          Your Honor, I listened very carefully what you said,

25  and I have just two brief comments.  First of all, Your Honor,

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 57

1    as you're aware, we filed the objection to the disclosure

2    statement.  And as Mr. Miller advised the Court, they worked

3    very cooperatively with the United States Trustee's office to

4    resolve many of the informational deficiencies that we cited.

5    In fact, they've added disclosure to fourteen issues that we

6    identified, and we thank the debtors' counsel for working as

7    cooperatively with the United States Trustee as they have.

8            As Mr. Miller said, there are nine issues that have

9    now been deferred to confirmation.  I won't go into the

10   reservation of rights.  We set that forth.  I do want to

11   clarify, though, for the Court that with respect to the

12   solicitation procedures debtors' are going to be filing a

13   retention application for Epic Solutions.  And I will defer to

14   Mr. Miller or Mr. Perez to advise the Court when that

15   application will be filed.  Thank you very much, Your Honor.

16           MR. PEREZ:  Good morning, Your honor.  Alfredo Perez,

17   on behalf of the debtors.

18           Your Honor, Ms. Sullivan is here in the courtroom, but

19   we do intend to file the application probably as soon as we get

20   back to the office.  I think it's ready to go.  Traditionally,

21   Your Honor, you didn't have to retain a -- the sol -- the party

22   as a solicitation and balloting agent.  As a result of the

23   issues raised by the U.S. Trustee, we're going to file a

24   separate 327(a) application to retain Epic and one of its

25   affiliates to do just the solicitation and balloting work as

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 58 of 92

Page 58

1    opposed to the normal mailing and administrative work and

2    serving all of the plans, which will be done by the Epic that

3    has already been retained in the case.

4         THE COURT:  Okay.

5         MR. PEREZ:  Thank you, Your Honor.

6         MR. COHEN:  Good morning, Your Honor.  Joshua Cohen,

7    on behalf of Fidelity National Title Insurance Company.

8         Your Honor, the goal with regard to the insurance

9    policy issues and the objection that Fidelity filed was to

10   achieve a ride through or a pass through regarding coverage

11   issues and the like that may or may not manifest themselves in

12   the future and may result in extensive litigation in the future

13   and to avoid having unnecessary litigation at this time.

14   that's what caused us to include in our objection and to

15   discuss with the debtors originally what we described as the

16   ride through alternative.

17        If I heard Mr. Miller correctly this morning, it

18   sounds as though -- although this is the first we're hearing

19   it -- that the debtors are in agreement with that proposal.  I

20   would suggest that we would use the break to try to work out

21   some language to effectuate that and to, consistent with Your

22   Honor's observations, avoid yet another series of litigation

23   that may happen in the future.

24        THE COURT:  I'm certainly happy to have you talk and

25   reach an agreement.  I don't know that I view the Fidelity

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 59 of 92

Page 59

1    National Title Insurance Company as a disclosure statement

2    objection as much as I view it as a plan related objection.  if

3    your objection can be obviated by agreement, that's fine.  and

4    if it's not resolved by agreement, it's going to be overruled.

5         MR. COHEN:  I respectfully hear what you're saying,

6    Your Honor.  I would like to at least be heard.  If we don't

7    resolve it, I would like to at least be heard with respect

8    to --

9         THE COURT:  I read it, and I discounted it as I was

10   reading it before I even saw a reply from the debtors that this

11   was a misuse of the disclosure statement objection to in fact

12   achieve a different purpose.  And you've acknowledged that

13   that's the purpose that you filed it for by saying that you

14   were looking for a ride through, which is plant treatment.  So

15   since what you're really concerned with is a totally parochial

16   issue, you're certainly free to discuss that and reach an

17   agreement that makes your objection go away.

18        But if you don't reach an agreement that makes your

19   objection go away, I'm going to wipe it away.

20        MR. COHEN:  And I would ask Your Honor that I at least

21   be allowed to make a record with respect to why there are --

22        THE COURT:  You can make whatever --

23        MR. COHEN:  -- disclosure statement issues --

24        THE COURT:  -- records you want, but I have read --

25        MR. COHEN:  -- embedded within it --

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 60

1           THE COURT:  -- it.  It speaks for itself.  I've

2     considered it carefully, and you can have whatever time you

3     think you need consistent with the crowd that's here for

4     disclosure issues to talk about your prior concerns.  But I

5     would urge you that that be a very limited amount of time.

6           MR. COHEN:  I understand, Your Honor.  thank you very

7     much.

8           THE COURT:  Okay.  is there anybody else who wishes to

9     make a comment or two at this point or shall we take our

10    morning break?  Before we take the morning break, I do have a

11    question which I'd like the proponents of this plan to consider

12    during break, and then you can discuss this with me when we

13    resume.  One of the curiosities for the Court has been just

14    when we're having a confirmation hearing assuming that the

15    disclosure statement is approved today.

16           I recognize the timeline that's laid out in the papers

17    and the fact that early November is a time period for voting

18    and objections.  I also note from the comments made by Mr.

19    Huebner that December has been identified as a time when the

20    confirmation hearing might commence.  No one has contacted my

21    chambers to reserve any time in any month this year for

22    purposes of confirmation.  And in anticipation of today's

23    hearing I have been engaged in some internal planning and

24    speculation as to just what dates might be needed.'

25           Before anybody assumes anything about calendar year

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 61

1    2011, I think parties should at least give some thought to how

2    much time would be needed for the confirmation process.  As Mr.

3    Uzzi knows well, having sat in about that position some time

4    ago in a different confirmation hearing that was before me when

5    he represented one of the objectors, contested confirmation

6    hearings in cases that are large and complex but much smaller

7    than this one can take a very long time.  And so, at some point

8    in today's hearing I would like greater clarification from the

9    parties as to what you're thinking about in terms of

10   preparation for confirmation and allocation of time on this

11   calendar for purposes of doing all this in an orderly way

12   consistent with your needs and the Court's needs.

13          And I think for these purposes you should assume that

14   everyone with a disclosure statement objection is characterized

15   here as a confirmation objection would be pressed as

16   confirmation objections unless they are otherwise resolved and

17   that it is conceivable that there will be other objections that

18   haven't been raised as disclosure statements objections that

19   may in the future be raised as confirmation objections because

20   thoughtful counsel may have decided why telegraph our position

21   now.  we'll wait.

22          so recognizing the uncertainty of the process I'd like

23   to at least know what the parties are thinking about, and let's

24   take a break now, it's about 11:30, and resume at 10 minutes to

25   12.  That gives people who want to go home or do something else

08-13555-mg    Doc 19935    Filed 08/31/11    Entered 09/14/11 10:47:03    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 62 of 92

Page 62

1    a chance to leave, those people who want to take a little walk

2    around and take a break a chance to take a break.  And we'll be

3    back promptly at 10 of, and I assume that people are going to

4    rush back to their same seats, although they are not reserved.

5    We're adjourned.

6         (Recess from 11:30 a.m. until 11:58 a.m.)

7              THE COURT:  Be seated, please.

8              MR. MILLER:  Your Honor, may I approach?  This is --

9              THE COURT:  Yes.

10             MR. MILLER:  -- a schedule.  In terms of the timing

11   for a confirmation and after discussion with various parties,

12   Your Honor, and assuming no resolution of all of the issues and

13   some more, which I'm sure we'll conjure up, and Mr. Huebber --

14   Mr. Huebner referred to, LBI thinks that it will need two weeks

15   to present its objections.  So I would say, Your Honor, it's a

16   minimum of two weeks and probably three weeks for confirmation

17   here.  And we would like -- it's aspirational, I grant you,

18   Your Honor, to start it on December 6th, 2011.

19             THE COURT:  All right.  Well, December 6th has already

20   been booked.  We've also set aside, subject to the movement of

21   some items the following week, for the absorption of a Lehman

22   omnibus hearing date which I believe is the following week on

23   December 14 and the conversion of that into a confirmation

24   hearing date.  I can give you a solid two weeks less a day,

25   because we're starting on December 6th, that week into the end

Page 63

 1    of the following week subject to moving a SIPC claims hearing

 2    which is set for that second week.  And if that can be moved

 3    into the week immediately after that, and I'm seeing what look

 4    like nods from counsel for the SIPC trustee but you don't have

 5    to agree now.

 6              MR. KOBAK:  I just need to go back to my office and

 7    check.

 8              THE COURT:  Fine.  We don't need to wrap that up at

 9    this moment on the fly but I can give you almost two weeks

10    solid if we make those adjustments.

11              MR. MILLER:  Thank you, Your Honor.

12              THE COURT:  And as far as additional time is

13    concerned, we'll deal with that when we get closer to those

14    days.

15              MR. MILLER:  Thank you, Your Honor.

16              THE COURT:  All right.  Was anything worked out with

17    counsel for Fidelity National Title Insurance Company during

18    the break?

19              MR. COHEN:  Your Honor, Joshua Cohen again on behalf

20    of Fidelity.

21              Based on Your Honor's statements regarding

22    reservations of rights and Mr. Miller's statements earlier on

23    the record agreeing and acknowledging on behalf of the debtors

24    that the plan and assumption should not foreclose Fidelity for

25    raising and denying coverage of any proceeding, Fidelity will

Page 64

1    rest on their reservation of rights and proceed at a later date

2    as it sees appropriate.

3              THE COURT:  That sounds fine.

4              MR. COHEN:  Thank you, Your Honor.

5              THE COURT:  Okay.  The next objection that I have

6    that's an unresolved objection is Deutsche Bundesbank.

7              MR. MILLER:  Your Honor, if I may, number 7, Your

8    Honor.  That's the one I mis -- I misread their e-mails.

9              THE COURT:  Oh.

10             MR. MILLER:  So, it's --

11             THE COURT:  It's BDB.

12             MR. MILLER:  -- that's right, Your Honor.

13             MR. BROUDE:  Good morning, Your Honor.  Mark Broude of

14   Latham & Watkins on behalf of Bundesverband deutscher Banken.

15             I appreciate Mr. Miller's confusion because he was in

16   part correct.  BDB is not pressing an objection asking you to

17   deny a proof of the disclosed and we've sort of narrowed

18   ourselves to, in effect, a request.

19             As Mr. Huebner said, one of the big issues that will

20   be part of the confirmation hearing is substantive

21   consolidation and particularly as it relates to cross-border

22   international substantive consolidation involving regulated

23   banks and banking institutions.  The debtor in the disclosure

24   statement spends a lot of time talking about the factual bases

25   for its position on substantive consolidation domestically but

Page 65

1    effectively no time talking about the bases, at least factual,

2    for international and regulated substantive consolidation.  We

3    believe it will be helpful to develop the issues for

4    confirmation if the debtors do provide some information about

5    why they believe there is a factual predicate for that type of

6    substantive consolidation.  That's all that we have left in our

7    objection, Your Honor.  Obviously, you can determine whether

8    the debtor should provide that information but that's really

9    what we have left.

10           THE COURT:  Okay.

11           The next one is Deutsche Bundesbank.

12           MS. VRIS:  Your Honor, I -- this is Jane Vris for

13   Vinson & Elkins on behalf of Deutsche Bundesbank.  I learned

14   two useful -- well, one useful thing but two things this

15   morning.  First I learned this is a little like Lake Wobegon.

16   It seems that everyone's creditors -- everyone's claims are a

17   little bit larger than normal here so I won't talk about the

18   size of our claim.  The other thing I learned and it was the

19   more useful one is that I should keep this very short so I

20   will.

21           We filed our objection.  We know you have read it.

22   Our client would like us to inform the Court that we are in

23   negotiations with the debtors.  We are hopeful that we would

24   reach a settlement and we appreciate that the debtors are

25   making time to meet with us even this week to try and continue

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 66 of 92

Page 66

1   those discussions.  But at the moment what we have is a plan

2   that we must consider based on the disclosure statement before

3   us.

4         I acknowledge that classification is definitively a

5   confirmation issue and I appreciate that the correct standard

6   for the best interest test will be a confirmation issue and is

7   not relevant for this time.  So, what I would like to do

8   instead is focus, just as Mr. Broude did, really, is on our

9   concern about the disclosure for the reasonableness of the

10  settlement on substantive consolidation because that's really

11  the issue for my client in assessing the plan.

12        In looking at the disclosure statement, there are, I

13  think, two and a half pages that do apply the Drexel factors to

14  the Lehman debtors.  Those are on pages 55 to 57.  The

15  difficulty we have with that disclosure is that the application

16  is somewhat generic.  It talks about whether the factors could

17  be applicable to any of the Lehman entities, affiliates,

18  subsidiaries, whatever.  So, we cannot tell looking at this

19  which they think might be applicable to our primary obligor

20  which is LBB.  For that matter, as Mr. Broude said, we can't

21  quite tell what would even be applicable to the foreign debtors

22  generally.

23        For disclosure, I think -- the debtors mention Enron

24  in their reply papers and I think it's actually instructive to

25  look at what the debtors' professionals in Enron, whoever they

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 67

1   might have been, did there to disclose why they felt that the

2   settlement they were proposing for the debtors in that case on

3   the substantive consolidation issue was a reasonable one.

4            Attached as what was Appendix M to their disclosure

5   statement was their substantive consolidation analysis.  They

6   went entity by entity, applied thirty-one factors to each of

7   those entities which was very informative for creditors.  They

8   were able to see in the debtors' assessment and as a basis for

9   why the debtors felt that their plan was reasonable and

10  preferable, assess what the debtor sought was a substantive

11  consolidation risk.

12           I appreciate that not every entity is going to be the

13  same and it's a range and it's a compromise.  The difficulty,

14  honestly, that we are having is that we see no factors

15  supporting substantive consolidation.  So, other creditors may

16  not care as much about this point, I appreciate that, and maybe

17  they just need to do this for the foreign entities or for LBB,

18  but we do believe it would be very useful for the disclosure

19  statement to at least describe which of the factors they think

20  are applicable to, if not LBB, then at least the foreign

21  regulated entities because I think there is a distinction

22  there.

23           The debtors did address our concern about the

24  evaluation of cash and we appreciate that.  That resolved our

25  objection there.  And as I mentioned before, classification is

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 68

1    clearly a confirmation issue.  That leaves just one category of

2    objection that we had and it wasn't included in the summary; I

3    know you will have noticed it.  It was merely that there are in

4    addition to the provisions in the plan that provide for

5    distribution to creditors, certain provisions that either give

6    rights to the debtors or ask creditors to give up certain

7    rights and we believe that a number of those would not be

8    applicable in a Chapter 7 again staying away from what the

9    standards are or aren't for the best interest test, we just

10   thought it would be useful if the debtors would say whether

11   they believe some of those provisions would not be applicable

12   in Chapter 7 and that they've at least taken that into

13   consideration in their recommendation.

14          By way of example, they have creditors giving up

15   claims against creditors.  That would obviously not exist in a

16   Chapter 7.  They may have appreciated that and they may have

17   taken it into consideration.  We just believe it would be

18   helpful if the disclosure statement would aid the creditors by

19   sharing the debtors' reasoning on those types of provisions in

20   the plan.  Did they take it into consideration and do they

21   still believe that this is better than not any plan but the

22   Chapter 7 alternative.  And, Your Honor, with that, I would

23   rest.  Thank you.

24          THE COURT:  All right.  Thank you.  Sumitomo.

25          MR. TOUGAS:  Good afternoon, Your Honor, Jeffrey

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 69 of 92

Page 69

1   Tougas, Mayer Brown, counsel to Sumitomo Mitsui Banking

2   Corporation.

3          Your Honor, Sumitomo Mitsui Banking Corporation will

4   rest on its papers as filed with the Court reserving our rights

5   to the extent that our objections go to confirmation.  We've

6   had a conversation with the debtors' counsel and are hopeful to

7   begin settlement discussions in the near future.

8          THE COURT:  All right.  Fine.

9          MR. TOUGAS:  Thank you, Your Honor.

10         THE COURT:  Thank you.  Centerbridge Credit Advisors.

11         MR. QUERSHI:  Good afternoon, Your Honor.  For the

12   record, Abid Quershi, Akin Gump Strauss Hauer & Feld, on behalf

13   of Ceterbridge Partners.

14         THE COURT:  Let me just ask you one question about the

15   joinders.  Do you know whether or not you're speaking on behalf

16   only of Centerbridge or also on behalf of Anchorage and Monarch

17   Alternative Capital?

18         MR. QUERSHI:  On behalf of the joinder parties as

19   well, Your Honor.

20         THE COURT:  Fine.  So, I won't call on them.

21         MR. QUERSHI:  Thank you, Your Honor.  Very briefly,

22   Your Honor.

23         A number of our concerns were addressed in the amended

24   disclosure statement.  There are a number of additional

25   disclosures that we still think should be required and I can go

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 70

1    through those quite quickly, Your Honor.

2            First, with respect to the Bankhaus claims, though we

3    do think that there should have been more discussion in the

4    disclosure statement explaining their treatment of those

5    claims, we are prepared to defer those issues to confirmation.

6    So, that leaves us, Your Honor, with half a dozen what I think

7    are pretty straightforward points where additional specific

8    disclosure we think should be required.  The first of those

9    relates to the note transfers from LCPI to LBHI.  This, Your

10   Honor, is addressed in paragraph 15 of our objection.  And the

11   thrust of this one, Your Honor, is that there were certain

12   notes that were transferred from LCPI to LBHI.  In return for

13   which LCPI did not receive cash or its equivalent but instead a

14   reduction in its intercompany indebtedness.

15           We believe that these transfers that occurred may be

16   preferences and, Your Honor, the debtors in their disclosure

17   statement didn't dispute that and say that there may be valid

18   differences.  But there's no discussion or analysis at all of

19   what those potential defenses might be, what provisions of the

20   Code they might be relying on or any analysis of why they think

21   those defenses might be applicable.

22           Again, we think that it would be helpful to creditors

23   to understand from the debtors' perspective what these defenses

24   are and why the debtors' believe them to be applicable.

25           A very similar issue, Your Honor, with respect to

08-13555-mg    Doc 19935    Filed 08/31/11    Entered 09/14/11 10:47:03    Main Document
Pg 71 of 92
LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 71

1    capital contributions.  This one is addressed at paragraph 20

2    of our objection.  That's on page 12.  And again, here, LCBI

3    received capital contributions in excess of a billion dollars

4    from its parent, from LBI.  LCPI never recorded those infusions

5    as assets.  Instead, the cash was transferred to LBHI, again,

6    in return for a reduction of LCPI's intercompany indebtedness.

7            Again, we think that these transactions may well be

8    preferences.  And again, there's no discussion in the

9    disclosure statement of the defenses that the debtors believe

10   might be applicable to these transactions.  And again, we think

11   it would be helpful for creditors to understand that.

12           Moving onto our third point, Your Honor, this relates

13   to the so-called intercompany only repurchase transaction.

14   This one is addressed at paragraph 25 of our objection on page

15   16.  And very briefly, Your Honor, this involves LCPI having a

16   valid security interest and approximately two and a quarter

17   billion dollars of assets that were subject to an intercompany

18   only repurchase transaction.

19           The disclosure statement explains that LCPI has not

20   taken possession of those assets but instead recorded a secured

21   receivable against LBHI in the amount of a little over a

22   billion dollars.  What we think should be added to the

23   disclosure statement here, Your Honor, is an explanation of the

24   following.  If LBHI, as is explained in the disclosure

25   statement, retained assets for the benefit of LCPI, there

Page 72

1    should be an explanation as to why those assets were not

2    monetized to reduce the risk to LCPI of a diminution in the

3    value of those assets.

4         And the second point, Your Honor, is the amended

5    disclosure statement states that the transfer of those assets

6    to LCPI would have been operationally costly and burdensome and

7    might have been detrimental to default provisions in other

8    agreements.

9         There's no analysis of that.  There's not even any

10   mention of what other agreements the debtors are referring to

11   in the disclosure statement.  So, again, given that these

12   assets reduced in value by over a billion dollars, we do think

13   that additional discussion is warranted on that point.

14        Next, Your Honor, a very straightforward one, the

15   allocation of cost and expenses.  This is the second bullet on

16   paragraph 25 of our objection.  The amended disclosure

17   statement provides that the debtors will be party to a debtor

18   allocation agreement to share administrative expenses but the

19   terms of that agreement aren't discussed and quite simply, we

20   think that the terms of that agreement should be disclosed.

21        And next, Your Honor, the LBI purchase of Bankhaus

22   notes.  This is addressed on page 17 of our objection.  In

23   summary, Your Honor, LBHI purchased certain notes from

24   Bankhaus.  The disclosure statement explains the benefits to

25   LBHI of that transaction.  The debtors acknowledge that LCPI

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 73

1     could also have purchased those notes but there's no cost or

2     benefit analysis disclosed as to why it made sense for LBHI as

3     opposed to LCPI to purchase those notes.  And again, we think

4     that should be disclosed so that creditors can determine

5     whether this is a transaction that did or did not benefit LCPI.

6          Last point, Your Honor, this is addressed on page 18

7     in the last bullet point of our objection, this involves the

8     transfer of certain assets from LCPI to various special purpose

9     entities.  LCPI sold or participated portions of these assets

10    to various SPEs.  The disclosure statement, Your Honor,

11    concludes that these were true sales and not financings and to

12    the extent they were financings they were validly and properly

13    perfected; but those are conclusory statements.  There's no

14    indication at all as to why the debtor believes that to be the

15    case.  Again, we think it would be helpful for there to be some

16    discussion of why the debtors came to that conclusion.

17         That, Your Honor, is all we have unless the Court has

18    any questions.

19         THE COURT:  I don't have any questions.

20         MR. QUERSHI:  Thank you.

21         THE COURT:  Danske Bank.

22         MS. CALLARI:  Good afternoon, Your Honor.  Carollynn

23    Callari with Venerable on behalf of Danske Bank, London Branch.

24         Your Honor, we will be brief.  It's not -- the debtor

25    has resolved some of our issues and one of the benefits of

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 74

1   going last is you don't need to repeat things that others have

2   already said.  So, I just need to, one, respond to one of the

3   comments that Mr. Miller made about some of the remaining

4   objectors.

5           Danske is not a claim straighter.  It is not a

6   creditor that obtained its claim post-petition.  It's ordinary

7   course creditor that has the misfortune of being one of the

8   largest unsecured creditors of LCPI.  With that, we have

9   similar concerns raised by Mr. Huebner which we will deal with

10  at confirmation and we accept that.  We acknowledge that the

11  debtor did resolve some of our concerns with additional

12  information and we do appreciate that.  As well as Ms. -- we

13  continue to have a concern as Ms. Vris pointed out with respect

14  to a specific kind of substantive consolidation analysis with

15  respect to LCPI that was a subsidiary of a regulated entity up

16  to the petition date and understanding, really, how books and

17  records can be so comingled at this point that subsequent

18  consolidation really would be warranted.  But we also

19  understand that we can probably deal with that later but as a

20  creditor, really coming at this trying to understand, we're one

21  of the largest LCPI creditors and yet we were not invited to

22  the global negotiations.  And since filing this objection to

23  the disclosure statement, the debtors had not sought to confer

24  with us to try and resolve the objection.  Now, they have with

25  some of the points; there's only a couple of points we have

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 75

1   left.  But one of the issues really is we truly want to

2   understand the reasonableness of this settlement since we were

3   not there and we don't have all of the specific details.

4        With that, one of the pieces of information that I

5   think will be helpful to us and other reasonable investors, the

6   debtors -- we had requested to understand who kind of was there

7   at this negotiation.  And if we can't get into those details

8   now, that's fine; we can do it through discovery and we'll work

9   that out with the debtors.  But understanding the plan support

10  agreement list, all we asked was to really understand -- out of

11  those people who signed plan support agreements, where's their

12  primary claim?  Who is it against?  If you see that, I think

13  there were thirty of a twenty-five that LBHI and five at LBSF

14  or perhaps that disclosure will help see that they really are

15  scattered throughout all of these debtors including at LCPI.

16  But telling 110,000 creditors that might get notice of this

17  confirmation that they have to each go to the claims register,

18  compare them to the plan support agreement counterparties,

19  figure out where all their claims are and in which one of those

20  is really their real primary claim, that's unreasonable.  Where

21  it's not unreasonable for the debtor to talk to thirty

22  counterparties and say, okay, identify for us where your

23  primary claim is, list it, which debtor, that's one disclosure

24  I think is reasonable and would be helpful to really take away

25  any kind of bad connotations with who's really supporting this

Page 76

1    agreement as opposed to this, it's a global resolution.  We

2    have a concern at LCPI and we'll deal with that later.

3            The other -- only other point I would like to raise is

4    a continued concern on the estimation hearing procedures.

5    Similar to as Mr. Huebner pointed out, just in the confirmation

6    order, if any creditor, including Danske, were to file a timely

7    estimation motion and for scheduling reasons or whatever didn't

8    satisfy the November 4th deadline to get an order, I don't

9    believe that creditor should be prejudiced by that deadline and

10   not have its claim allowed or counted for voting purposes, Your

11   Honor.

12           So, with those, we are okay on all of the other

13   reservations of rights and the other clarifications that the

14   debtor made, Your Honor, including the points that counsel for

15   Centerbridge made for LCPI.  Thank you, Your Honor.

16           THE COURT:  Okay.  Thank you.  The last of the

17   institutional objections is Mason Capital.

18           MR. HANSEN:  Good morning, Your Honor.  May it please

19   the Court, I'm Drew Hansen -- I'm Drew Hansen.  I'm a little

20   bit taller than the microphone.  Maybe I'll just hold it Elvis

21   style if the Court doesn't mind.

22           THE COURT:  Okay.  It's a little trick for people who

23   are pro hac admitted.

24           MR. HANSEN:  Thank you.  It fools me every time.

25           I'm from the Susman Godfrey law firm.  I represent

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 77

1   Mason Capital Management a creditor who holds about 380 million

2   dollar of notes issued by Lehman Brothers Treasury BV, a Dutch

3   company.  And as the Court knows from our papers is in

4   insolvency proceedings in district court in Amsterdam right

5   now.

6           This class in the aggregate owns about thirty-four

7   billion dollars worth of claims, about ten billion of which we

8   are relatively certain is held by institutional investors.  The

9   remainder of which it's not tremendously clear who holds it but

10  at least some nontrivial portion is held by retail investors

11  most likely overseas since and most likely in the Netherlands

12  since that's where the company is.

13          Our disclosure objection is a relatively simple one.

14  The disclosure statement describes some value transfer schemes

15  that are in our view unusual if not totally unprecedented and

16  we think there's insufficient disclosure of the authority

17  behind them.  Very quickly, there are three that we raise in

18  our papers.

19          First, the authority for a twenty percent risk of

20  substantive consolidation of an entity that is not a debtor and

21  is subject to insolvency proceedings in a foreign country is

22  the related to the objection raised by Deutsche Bundesbank

23  earlier.

24          Second, the authority for taking the proceeds of a

25  settlement of substantive consolidation and distributing them

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 78 of 92

Page 78

      1    not to the estate as a whole but rather directly into the

      2    pockets of particular classes of creditors.

      3         Third, the authority for the proposition that if LBT

      4    and other noteholders who are similarly situated can't share in

      5    the proceeds of the settlement of their own substantive

      6    consolidation claim, then why do they not at least get to share

      7    in the proceeds of settlement of substantive consolidation

      8    where the consolidation of those entities would actually

      9    benefit LBT because the proceeds would go to the estate.

     10         The debtors' counsel has been kind enough to confer

     11    extensively with us since we filed our objection.  We have told

     12    the debtors' counsel that we will withdraw our objection if

     13    they will either propose some language that provides the

     14    authority for these three procedures or, two, just say that

     15    there is no authority but the debtors going to go forward with

     16    them.

     17         The debtors' counsel was not willing to do this which

     18    is why we're here and they were gracious enough to offer that

     19    we could have language setting out our view that there is no

     20    authority for these procedures with the explicit disclaimer

     21    that is our view and we have proposed language of that sort to

     22    them.  We would be delighted to see language like that in the

     23    disclosure statement.  It would make it more instructive than

     24    it is now which is all for the good.  But it doesn't resolve

     25    our objection.  There is plenty of language in the disclosure

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 79

1    statement already that is effectively he said she said.  Some

2    people say this, the debtor disagrees.  And if you are the

3    hypothetical reasonable investor particularly one overseas,

4    that's not terribly helpful because it doesn't tell you if

5    there is a cognizable debate here or whether the debtors, in

6    fact, don't have any authority for their possessions.

7            So, that's our objection, Your Honor.  As we've said,

8    it's a relatively easy one to fix.  Either insert some language

9    that gives the authority or say there is none but we haven't

10   seen that language yet so that's why we're here.

11           THE COURT:  Let me just understand something.

12           MR. HANSEN:  Yes, sir.

13           THE COURT:  Did I hear you say that the debtor is

14   prepared to accept certain language that you might propose that

15   sets forth your position noting that it's your position and

16   they disagree with it and that's acceptable to you?

17           MR. HANSEN:  The debtors indicated that they may be

18   willing to do this.  I'm not going to speak on their behalf but

19   we have told them that we would not resolve -- that doesn't

20   resolve our objection.

21           THE COURT:  Well, it has to resolve your disclosure

22   objection.  It may not resolve your objection to the extent

23   it's a confirmation objection but you can't be telling me that

24   if your language is inserted you're not satisfied?

25           MR. HANSEN:  That's exactly what I'm telling you, Your

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 80

1    Honor.  It's that the language that says Mason believes, dunt,

2    dunt, dunt, dunt, dunt.  The debtor disagrees.  To our view,

3    that doesn't help say -- that doesn't solve the disclosure

4    problem which is --

5            THE COURT:  It sure does.

6            MR. HANSEN:  -- what in the debtors' view is

7    different?

8            THE COURT:  It sure does.  It's over.  If you get

9    that, you're probably getting more than you're entitled to get.

10   So, I would screw in the microphone and sit down.

11           MR. HANSEN:  Thank you, Your Honor.

12           THE COURT:  We have objections by four pro se

13   individuals.  I had called to see if these individuals were

14   present in court or on the telephone earlier in the proceeding

15   and heard no response.  I just want to double-check to make

16   sure that these people have not shown up or joined the call;

17   Chris Stovic, Linda Neufeld, Tommy Tewalt, Gary Cutler.  Are

18   any of those individuals present in person or by phone?

19       (No response)

20           THE COURT:  They're not.  Their objections will be

21   overruled for failure to prosecute.

22           Now, we've gone through each of the currently

23   outstanding objections.  I just would like to give the debtors

24   an opportunity to comment and respond and this is that time.

25           MR. MILLER:  Thank you, Your Honor.

1          Your Honor, starting with BDB as Mr. Broude said, I

2     think I heard him say they're not pressing the objection.  And

3     he made a suggestion or just a suggestion as to additional

4     language as to the ability to substantively consolidate an

5     international subsidiary.

6          We believe, Your Honor, that the information in the

7     disclosure statement which refers to international stipulation

8     that says specifically that "Certain foreign debtors and their

9     assets are subject to jurisdiction of regulators of foreign

10    courts."  Potentially, the bankruptcy court may order an

11    alternative remedy that would have an impact similar to

12    substantive consolidation on the creditors of foreign debtors

13    that relates to the distribution of dividends out of this

14    estate, Your Honor.  We believe that there is ample authority

15    in the Bankruptcy Code that if we can establish the 9019

16    standards with respect to the substantive consolidation and

17    giving the worldwide jurisdiction, maybe not recognize that

18    this bankruptcy court, Your Honor, that you can substantively

19    consolidate an international affiliate.  Now, it may be that an

20    international court will refuse to enforce the order, but that

21    doesn't detract from the jurisdiction of this Court.

22          Insofar, Your Honor, as Ms. Vris' objections on behalf

23    of Deutsche Bundesbank, I'm glad that she acknowledged that we

24    are in negotiations and hopefully will resolve that entirely.

25    The objection is basically, in part, at least the same as Mr.

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 82

1      Broude's.

2              Insofar, Your Honor, as the disclosure for the

3      stipulation analysis is concerned, Your Honor, it complies with

4      the standards which are applicable to liquidation analyses.  It

5      contains the debtors' best judgment as to what would happen in

6      a Chapter 7 liquidation.  And again, Your Honor, it's a

7      confirmation issue as to the valuations which Your Honor will

8      have to decide as part of the confirmation hearing.  So, we

9      would submit, Your Honor, that it is a confirmation issue.

10             The issues as to substantive consolidation again, Your

11     Honor, relate back to Rule 9019 and the ability to satisfy Your

12     Honor that this is a compromise in settlement that should be

13     approved.

14             As to the time value of money, we have added

15     additional language at page 5-1 of Exhibit 5 of the blackline

16     to note that we have not applied a present value discount.

17             With that, Your Honor, I think we've responded to

18     objections of Bundesbank.

19             Sumito --

20             THE COURT:  Let me --

21             MR. MILLER:  I'm sorry.

22             THE COURT:  -- let me -- let me just break in and ask

23     you a question though.  There's a theme that surrounds a number

24     of the objections especially those lodged by counsel for

25     certain foreign creditors on the subject of substantive

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 83

1   consolidation.  And one of the themes has to do with the nature

2   of the settlement itself which is an across the board twenty

3   percent reallocation in respect of a substantive consolidation

4   risk that is for purposes of the plan viewed as class-wide.

5   For disclosure purposes, Ms. Vris is arguing that it would be

6   more helpful, and I realize that she's arguing this with a

7   particular objective in mind, but that it would be more helpful

8   if there were an entity by entity assessment of substantive

9   consolidation risk parameters and I just have a question for

10  you.  Is that feasible to do, is it relevant to a creditors

11  decision-making, and why is it that this is a fight?

12          MR. MILLER:  Going in reverse order, Your Honor.  I

13  don't understand why it is a fight.  But when it comes to the

14  confirmation hearing, Your Honor, since this is not a

15  consolidation plan, it will be the debtors' burden to show this

16  on a debtor by debtor aspect as part of the compromise in

17  settlement.  But, Your Honor, basically will be -- if you

18  confirm these case -- this plan, Your Honor, you will basically

19  be confirming twenty-three different plans.

20          In terms of -- Ms. Vris held it up and I think it was

21  just about this thick -- a portion of the disclosure statement

22  from the Enron case, that would be a very costly endeavor right

23  now, Your Honor.  We anticipate that between the approval of

24  disclosure statement and the confirmation hearing, there will

25  be substantial amounts of discovery.  And if there are

08-13555-mg   Doc 19935   Filed 08/31/11   Entered 09/14/11 10:47:03   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 84 of 92

Page 84

1    objectors or potential objectors who are concerned about this

2    issue, that's where it should take place in anticipation of

3    confirmation, Your Honor.

4            THE COURT:  Okay.  Thank you.

5            MR. MILLER:  Okay.  Your Honor, the next one is

6    Sumitomo Mitsui Banking Corporation and I believe counsel said

7    he was resting on his papers.

8            THE COURT:  Right.

9            MR. MILLER:  So, I likewise will rest on the papers.

10           Turning to Centerbridge, Your Honor, as Your Honor

11   will have noted, there have been substantial additions to the

12   disclosure statement to deal with the objections that were

13   interposed by Centerbridge and I believe that counsel said that

14   those were helpful.  Basically, counsel is focusing on

15   transfers, capital contribution, repo transactions, and what

16   the disclosure statement points out, Your Honor, is that these

17   are allegations that may be made and that there are potential

18   defenses.  In connection with preferences, obviously, there are

19   defenses under Section 547(b) relating whether this was an

20   antecedent debt or there was contemporaneous valuation and all

21   of the defenses that are in Section 547 that could be pursued.

22           Similarly, with respect to capital contributions and

23   the other allegations, there were questions as to whether these

24   were fraudulent transfers, whether LBHI got adequate

25   consideration for writing off an entire intercompany receivable

08-13555-mg    Doc 19935    Filed 08/31/11    Entered 09/14/11 10:47:03    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 85 of 92

Page 85

1    from LCPI.

2         Again, Your Honor, this is in relation to how

3    ultimately Centerbridge's claims and the claims of the two

4    joinders are going to be considered.  It is focused on that

5    aspect of it and it may, Your Honor, that purely by accident

6    maybe Centerbridge and the others bought the wrong notes and

7    the holding notes that may not have the value they thought they

8    were going to have.  But again, Your Honor, these are discovery

9    issues in anticipation of confirmation.

10        And as I said, Your Honor, we have extensively added

11   language to the disclosure statement to meet the objections of

12   Centerbridge and the two joinders.

13        And as I said, Your Honor, there will be -- I'm sure

14   that they will be taking discovery, there will be substantial

15   discovery and all these issues can be flushed out.  But take

16   into consideration, Your Honor, the fact is going to a

17   disclosure statement, this would be a big delay and it would be

18   very costly and we don't believe that it's in the interest of

19   all the creditors that there be a further delay in the approval

20   of the disclosure statement while a 200 page supplement to the

21   disclosure statement is prepared.  That can be taken care of

22   because they relate to confirmation issues.

23        THE COURT:  Okay.

24        MR. MILLER:  I think, Your Honor, that may -- that may

25   conclude -- oh, Mason, Your Honor.  I'm sorry?  Oh, Danske.

1        Again, Your Honor, counsel's statements basically

2    relate to confirmation from our perspective.  The question as

3    to whether the 8020 as we sometimes refer to it is appropriate

4    for the compromise in settlement.  Your Honor will have to

5    decide at the time of confirmation.

6        As I said, the authority of the bankruptcy court to

7    order substantive consolidation should the facts support it, I

8    think Your Honor has that authority.  This is a court on very

9    broad jurisdiction not withstanding Stern v. Marshall.  Your

10   Honor has that authority, Your Honor has exercised that

11   authority, and that will be a confirmation issue.

12       And the distribution and ability of certain creditors

13   to participate under the plan adjustment, again, Your Honor,

14   those are confirmation issues.

15       Mason, Your Honor, again, the three objections,

16   basically, which have been set forth by Mason are -- have been

17   discussed before by other objectors.  And it goes to the

18   approval of the compromise in settlement.  We did make a

19   proposal to Mason in which we offered to include in the

20   disclosure statement a clear and concise statement of Mason's

21   position and with a caveat that the debtor disagreed.  And that

22   as I recalled, Your Honor, is about a page and a half.  It did

23   not -- when we asked Mason if that would satisfy for the

24   purpose of this hearing, their objection to the answer was not

25   so we did not include it, Your Honor.  We are perfectly willing

1    to include that in the disclosure statement to obviate any

2    further consideration of this objection, Your Honor.  We

3    believe the disclosure statement, Your Honor, is complete.  As

4    Mr. Dunne says it satisfies the standards of 1125(a)(1) and we

5    should get this process going to get these cases completed.

6    Thank you, Your Honor.

7            THE COURT:  Okay.  Is there anyone who wishes to be

8    heard with respect to the pending objections who hasn't spoken?

9        (No response.)

10           THE COURT:  Okay.

11           I'm going to -- I don't think anybody should move but

12   I'm going to take about a five minute break and collect some of

13   my thoughts and then come back.

14           MR. MILLER:  May we stand up, Your Honor?

15           THE COURT:  You can stand up when I say we're

16   adjourning for five minutes and that's a sign of great respect

17   and then you can walk around if you like.  It will be about a

18   five minute break.

19       (Recess from 12:38 p.m. to 12:49 p.m.)

20           THE COURT:  Be seated, please.

21           Mr. Miller started out the day talking in metaphors

22   relating to recent meteorological and other events and I can't

23   resist.  After all, it isn't every week that you have an

24   earthquake that rattles this building followed by a colossal

25   storm threatening to flood Lower Manhattan followed by this

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 88

1    beautiful light summer day of relative but incomplete

2    consensus.  You can draw your own personal parallels to the

3    seismic and weather patterns of this historic case.  This

4    hearing is the most significant achievement and I congratulate

5    the many professionals including the multitude who labor

6    without speaking roles for getting the case to this particular

7    point.

8            The parties, not all of them, that are a remarkable

9    cross-section of active and involved creditors have united in

10   their support of a plan proposed by the debtors after the

11   expiration of exclusivity that embodies a settlement and

12   compromise of sharply conflicting views in relation to one

13   particular issue; substantive consolidation, that if litigated

14   will take an unpredictable long time, cost a great deal of

15   money, and be a source of ongoing legal uncertainty.

16           The numbers are compelling.  Parties holding in excess

17   of one hundred billion dollars in claims have entered into plan

18   support agreements.  These are sophisticated parties who have

19   made what seems to be a classic business decision based on the

20   avoidance of cost and risk in the time value of money to move

21   forward with a compromise that promises to yield prompt

22   recoveries to all creditors of these estates.  Only time will

23   tell if this compromise plan in its current form or as it may

24   be amended will be confirmed.  The proponents and those

25   creditors who have indicated their support for the plan are in

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 89

1   my judgment now entitled to move ahead with solicitation of

2   acceptances in the rigorous process of endeavoring to satisfy

3   the confirmation standards of the Code.

4          By any measure, disclosure here as the committee has

5   observed, is abundant and adequate as to the issues in this too

6   big to fail enterprise that are probably also too complicated

7   to understand without a team of dedicated financial analysts.

8          The complexities are such that retail creditors are

9   unlikely to read or fully comprehend the disclosures that have

10  been made.  And the sophisticated distressed investors have

11  already gone through their own independent analysis, have

12  plumbed the depths of the issues that concern them, and do not

13  need more disclosure.  Their needs can be satisfied by means of

14  confirmation related discovery.

15         In the exercise of my discretion, having considered

16  all of the objections carefully, I overrule them and I am

17  prepared to enter an order approving the disclosure statement

18  in the form proposed by the debtors with such tweaks and

19  adjustments as I may make.  For that reason, you're now in a

20  position to submit an order and move ahead with preparations

21  for confirmation with the confirmation hearing now having been

22  set to begin on December 6.

23         Is there anything more?

24         MR. MILLER:  No, Your Honor.

25         THE COURT:  In that case, we're adjourned.

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

1          IN UNISON:   Thank you, Your Honor.

2       (Whereupon these proceedings were concluded at 12:54 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 91

```
 1

 2                          I N D E X

 3

 4                          RULINGS

 5                                          Page      Line

 6    Amended motion (i) for Approval of    89        17

 7    The Disclosure Statement and the Form

 8    And Manner of Notice of the Disclosure

 9    Statement Hearing, (ii) Establishing

10    Solicitation and Voting Procedures,

11    (iii) Scheduling a Confirmation Hearing,

12    And (iv) Establishing Notice and Objection

13    Procedures for Confirmation of the Debtors'

14    Joint Chapter 11 Plan [ECF No. 18126]

15    Granted

16

17

18

19

20

21

22

23

24

25
```

Page 92

1

2                     C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7         Aliza          Digitally signed by Aliza Chodoff
                          DN: cn=Aliza Chodoff, o, ou,
                          email=digital1@veritext.com,
8         Chodoff         c=US
                          Date: 2011.08.31 14:40:59 -04'00'

9    ALIZA CHODOFF

10

11   Also transcribed by:

12   Ellen Kolman, AAERT Certified Electronic Transcriber CET**D-568

13

14   Veritext

15   200 Old Country Road

16   Suite 580

17   Mineola, NY 11501

18

19   Date:  August 31, 2011

20

21

22

23

24

25