## EXHIBIT A

| United States Bankruptcy Court/Southern District of New York | PROOF OF CLAIM |
|---|---|

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555(JMP) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                    0000029883

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Citibank, N.A.
388 Greenwich Street
New York, New York 10013-2375
Attention: Edward G. Turan
With copies to Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, Attention: Douglas R. Davis

Telephone number: (212) 373-3000          Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

---

**1. Amount of Claim as of Date Case Filed: $ Please See Attachment**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2. Basis for Claim:** Please See Attachment
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☑ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____

Amount of Secured Claim: $ See Attachment    Amount Unsecured: $ See Attachment

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
(See instruction #6 on reverse side.)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$_____

---

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain: Please See Attachment

**FOR COURT USE ONLY**

**FILED / RECEIVED**
SEP 22 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 9/9/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Edward Turan  Vice President |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Citibank, N.A.
LBHI Guarantee Claims

## ATTACHMENT TO PROOF OF CLAIM OF CITIBANK, N.A.
## AGAINST LEHMAN BROTHERS HOLDINGS INC.

1.      Commencing on September 15, 2008 (the "Petition Date") and periodically

thereafter, Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries (LBHI,

together with such subsidiaries, the "Debtors"), filed voluntary petitions (the "Chapter 11

Cases") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code"). The Chapter 11 Cases are being jointly administered under Chapter

11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. 2008).

2.      On July 2, 2009, the Bankruptcy Court entered that certain *Order Pursuant to*

*Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the*

*Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and*

*Approving the Proof of Claim Form* [Docket No. 4271] (the "Bar Date Order") which, among

other things, establishes September 22, 2009 at 5:00 pm (ET) as the general deadline (the "Bar

Date") for each person or entity (including, without limitation, each individual, partnership, joint

venture, corporation, estate, trust and governmental unit) to file proofs of claim based on

prepetition claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtors.

3.      Citibank, N.A. (the "Claimant") accordingly files this proof of claim (the "Proof

of Claim") for various amounts owing to Claimant by LBHI on account of LBHI's various

guarantees of obligations and amounts owing to Claimant by Lehman Brothers Commodity

Services Inc. ("LBCS"), Lehman Brothers Commercial Corporation ("LBCC"), Lehman

Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Finance SA ("LB Finance"),

Lehman Brothers International (Europe) ("LBIE"), Lehman Brothers Commercial Corporation

Asia Limited ("LBCCA"), Lehman Brothers Inc. ("LBI"), Lehman Brothers Securities N.V.

("LB Securities"), Lehman Brothers Treasury Co. B.V. ("LBTC"), ALI, Inc. ("Lehman ALI"),

Citibank, N.A.
LBHI Guarantee Claims

Lehman Brothers Equity Finance (Cayman) Ltd ("Lehman Cayman"), and Structured Asset

Securities Corporation ("SASCO").

4.      LBHI's guarantee obligations arise under: (a) numerous guarantees LBHI made

in relation to derivative contracts entered into between Claimant and various subsidiaries of

LBHI, each as described below, under which LBHI guaranteed the obligations of its subsidiaries

under transactions (each a "Transaction") under the derivative contracts (collectively, the "ISDA

Guarantees");[1] (b) that certain Unanimous Written Consent of the Executive Committee of the

Board of Directors of Lehman Brothers Holdings Inc. dated June 9, 2005, under which LBHI

guaranteed payment of all liabilities, obligations and commitments of numerous LBHI

subsidiaries (the "LBHI Board Guarantee"); (c) that certain Guaranty dated January 7, 2004, as

amended on September 9, 2008, under which LBHI guaranteed to Citigroup Inc., and each

subsidiary or affiliate thereof, including Claimant, the payment of all Obligations (as defined

therein) of various subsidiaries of LBHI (as amended, the "January 2004 Guarantee"); (d) that

certain Guaranty dated July 26, 2005, under which LBHI guaranteed to Citigroup Inc., and each

subsidiary or affiliate thereof, including Claimant, the payment of all Obligations (as defined

therein) of various subsidiaries of LBHI (the "July 2005 Guarantee"); and (e) that certain

Guarantee of Lehman Brothers Holdings Inc. as addressed to Standard & Poor's Rating Services,

dated January 4, 2008, under which LBHI guaranteed payment of all liabilities, obligations and

commitments of LBIE (the "S&P Guarantee").

## A.      LBHI's Guarantee of Obligations of LBCS

*(i)      Obligations of LBCS under LBCS ISDA Master Agreement*

---

[1]   The Bar Date Order requires holders of claims against a Debtor based on amounts owed pursuant to a guarantee to complete an electronic Guarantee Questionnaire (as such term is defined in the Bar Date Order). Bar Date Order at p. 7. The Bar Date Order further provides that any such claimant "electronically upload supporting documentation and evidence of the underlying claim amount on the website, as required in the Guarantee Questionnaire, rather than attaching such documents to the Proof of Claim." Bar Date Order at pp. 7-8.

Citibank, N.A.
LBHI Guarantee Claims

5.        LBHI guaranteed the obligations of LBCS under Transactions governed by and

entered into under that certain ISDA Master Agreement dated as of February 21, 2006 by and

between Lehman Brothers Commodity Services Inc. and Citibank, N.A. (the "LBCS ISDA

Master Agreement").

6.        In connection with the LBCS ISDA Master Agreement, Claimant and LBCS

entered into that certain Schedule to the Master Agreement dated as of February 21, 2006 (the

"LBCS Schedule") and that certain Credit Support Annex to the Schedule (the "LBCS Credit

Support Annex," and together with the LBCS ISDA Master Agreement and the LBCS Schedule,

all as separately amended, supplemented and otherwise modified and in effect from time to time,

the "LBCS Agreement"). Specified as Credit Support Provider in the LBCS Agreement, on

February 21, 2006 LBHI issued and executed a guarantee (the "LBCS ISDA Guarantee"), in

connection with the LBCS Agreement in favor of LBCS for the benefit of Claimant. Among

other things, the LBCS ISDA Guarantee provides that LBHI unconditionally guarantees to

Claimant the due and punctual payment of all amounts payable by LBCS under each

Transaction.

7.        On or about January 7, 2004, LBHI executed the January 2004 Guarantee,

which was amended on September 9, 2008. Among other things, the January 2004 Guarantee

provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain

of LBHI's subsidiaries, including LBCS.

8.        Claimant is a swap participant and the LBCS Agreement, together with the

LBCS ISDA Guarantee and the other applicable guarantees, is a swap agreement within the

meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. On

September 15, 2008, pursuant to that certain Notice of Event of Default and Designation of Early

3

Citibank, N.A.
LBHI Guarantee Claims

Termination Date (the "LBCS Termination Notice") delivered by Claimant to LBCS, Claimant

exercised its contractual right to terminate all outstanding Transactions under the LBCS

Agreement and designated September 15, 2008 as the Early Termination Date under the LBCS

Agreement for all outstanding Transactions (each a "Terminated Transaction").

9.       In accordance with the terms of the LBCS Agreement, Claimant calculated the

amount (the "LBCS Early Termination Amount") payable in respect of the Early Termination

Date and furnished to LBCS that certain ISDA Section 6(d)(i) Calculation Notice dated

September 16, 2009 (the "LBCS Valuation Statement"). The aggregate LBCS Early

Termination Amount payable by LBCS as a result of the designation of an Early Termination

Date under the LBCS Agreement in respect of all Terminated Transactions equals USD

2,210,646.

10.      As of the filing of this Proof of Claim, Claimant has not received the LBCS

Early Termination Amount or any portion thereof from LBCS or from LBHI.  Accordingly,

pursuant to the terms of the LBCS ISDA Guarantee and the January 2004 Guarantee, LBHI

continues to owe Claimant the full LBCS Early Termination Amount.  In addition, LBHI, as

guarantor, remains liable to Claimant for any deficiency, interest, and reasonable expenses and

fees in connection with, as a consequence of, or arising or resulting from the occurrence of the

close-out or early termination of all Transactions and the enforcement and protection of

Claimant's rights under the LBCS Agreement.

*(ii)    Account Overdraft Obligations of LBCS*

11.      Prior to the October 3, 2008 (the "LBCS Petition Date"), LBCS maintained

general deposit account No. 11291769, held at Claimant's London Branch (the "LBCS

Account").  As of the LBCS Petition Date, LBCS had overdrawn the LBCS Account by CHF

Citibank, N.A.
LBHI Guarantee Claims

96,564, which using the exchange rate applicable on the LBCS Petition Date is equal to approximately USD 85,296 (the "LBCS Overdraft").

12.     As of the filing of this Proof of Claim, Claimant has not received payment for the LBCS Overdraft or any portion thereof from LBCS or LBHI. Accordingly, pursuant to the terms of the January 2004 Guarantee, LBHI continues to owe Claimant the full amount of the LBCS Overdraft.

**B.     LBHI's Guarantee of Obligations of LBCC**

13.     LBHI guaranteed the obligations of LBCC under Transactions governed by and entered into under that certain ISDA Master Agreement dated as of March 29, 1993 by and between Lehman Brothers Commercial Corporation and Citibank, N.A. (the "LBCC ISDA Master Agreement").

14.     In connection with the LBCC ISDA Master Agreement, Claimant and LBCC entered into that certain Schedule to the Master Agreement dated as of March 29, 1993 (the "LBCC Schedule") and that certain Credit Support Annex to the Schedule (the "LBCC Credit Support Annex," and together with the LBCC ISDA Master Agreement and the LBCC Schedule, all as separately amended, supplemented and otherwise modified and in effect from time to time, the "LBCC Agreement"). Specified as Credit Support Provider in the LBCC Agreement, on March 29, 1993 LBHI issued and executed a guarantee (the "LBCC ISDA Guarantee"), in connection with the LBCC Agreement in favor of LBCC for the benefit of Claimant. Among other things, the LBCC ISDA Guarantee provides that LBHI unconditionally guarantees to Claimant the due and punctual payment of all amounts payable by LBCC under each Transaction.

5

Citibank, N.A.
LBHI Guarantee Claims

15.    On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

Guarantee.  Among other things, the Board Guarantee provides a full guarantee of the payment

of all liabilities, obligations and commitments of certain of LBHI's subsidiaries, including

LBCC.

16.    Claimant is a swap participant and the LBCC Agreement, together with the

LBCC ISDA Guarantee and the other applicable guarantees, is a swap agreement within the

meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code.  On

September 15, 2008, pursuant to that certain Notice of Event of Default and Designation of Early

Termination Date (the "LBCC Termination Notice") delivered by Claimant to LBCC, Claimant

exercised its contractual right to terminate all outstanding Transactions under the LBCC

Agreement and designated September 15, 2008 as the Early Termination Date under the LBCC

Agreement for all outstanding Transactions (each a "Terminated Transaction").

17.    In accordance with the terms of the LBCC Agreement, Claimant calculated the

amount (the "LBCC Early Termination Amount") payable in respect of the Early Termination

Date and furnished to LBCC that certain ISDA Section 6(d)(i) Calculation Notice dated

September 16, 2009 (the "LBCC Valuation Statement").  The aggregate LBCC Early

Termination Amount payable by LBCC as a result of the designation of an Early Termination

Date under the LBCC Agreement in respect of all Terminated Transactions equals USD

8,387,458.

18.    As of the filing of this Proof of Claim, Claimant has not received the LBCC

Early Termination Amount or any portion thereof from LBCC or from LBHI.  Accordingly,

pursuant to the terms of the LBCC ISDA Guarantee and LBHI Board Guarantee, LBHI

6

Citibank, N.A.
LBHI Guarantee Claims

continues to owe Claimant the full LBCC Early Termination Amount. In addition, LBHI, as

guarantor, remains liable to Claimant for any deficiency, interest, and reasonable expenses and

fees in connection with, as a consequence of, or arising or resulting from the occurrence of the

close-out or early termination of all Transactions and the enforcement and protection of

Claimant's rights under the LBCC Agreement.

### C. LBHI's Guarantee of Obligations of LBSF

*(i)      Obligations of LBSF under LBSF ISDA Master Agreement*

19.      LBHI guaranteed the obligations of LBSF under Transactions governed by and

entered into under that certain ISDA Master Agreement dated as of May 14, 1992 by and

between Lehman Brothers Special Financing Inc. and Citibank, N.A. (the "LBSF ISDA Master

Agreement").

20.      In connection with the ISDA Master Agreement, Claimant and LBSF entered

into that certain Schedule to the Master Agreement dated as of May 14, 1992 (the "LBSF

Schedule") and that certain Credit Support Annex to the Schedule (the "LBSF Credit Support

Annex," and together with the LBSF ISDA Master Agreement and the LBSF Schedule, all as

separately amended, supplemented and otherwise modified and in effect from time to time, the

"LBSF Agreement"). Specified as Credit Support Provider in the LBSF Agreement, on May 14,

1992 LBHI issued and executed a guarantee (the "LBSF ISDA Guarantee"), in connection with

the LBSF Agreement in favor of LBSF for the benefit of Claimant. Among other things, the

LBSF ISDA Guarantee provides that LBHI unconditionally guarantees to Claimant the due and

punctual payment of all amounts payable by LBSF under each Transaction.

21.      On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

7

Citibank, N.A.
LBHI Guarantee Claims

Guarantee. Among other things, the Board Guarantee provides a full guarantee of the payment

of all liabilities, obligations and commitments of certain of LBHI's subsidiaries, including LBSF.

22.     On or about January 7, 2004, LBHI executed the January 2004 Guarantee,

which was amended on September 9, 2008. Among other things, the January 2004 Guarantee

provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain

of LBHI's subsidiaries, including LBSF.

23.     Claimant is a swap participant and the LBSF Agreement, together with the

LBSF ISDA Guarantee and the other applicable guarantees, is a swap agreement within the

meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. On

September 15, 2008, pursuant to that certain Notice of Event of Default and Designation of Early

Termination Date (the "LBSF Termination Notice") delivered by Claimant to LBSF, Claimant

exercised its contractual right to terminate all outstanding Transactions under the LBSF

Agreement and designated September 15, 2008 as the Early Termination Date under the LBSF

Agreement for all outstanding Transactions (each a "Terminated Transaction").

24.     In accordance with the terms of the LBSF Agreement, Claimant calculated the

amount (the "LBSF Early Termination Amount") payable in respect of the Early Termination

Date and furnished to LBSF that certain ISDA Section 6(d)(i) Calculation Notice dated

September 16, 2009 (the "LBSF Valuation Statement"). The aggregate LBSF Early Termination

Amount payable by LBSF as a result of the designation of an Early Termination Date under the

LBSF Agreement in respect of all Terminated Transactions equals USD 1,645,640,431.

25.     As of the filing of this Proof of Claim, Claimant has not received the LBSF

Early Termination Amount or any portion thereof from LBSF or from LBHI. Accordingly,

pursuant to the terms of the LBSF ISDA Guarantee, the LBHI Board Guarantee and the January

8

Citibank, N.A.
LBHI Guarantee Claims

2004 Guarantee, LBHI continues to owe Claimant the full LBSF Early Termination Amount. In addition, LBHI, as guarantor, remains liable to Claimant for any deficiency, interest, and reasonable expenses and fees in connection with, as a consequence of, or arising or resulting from the occurrence of the close-out or early termination of all Transactions and the enforcement and protection of Claimant's rights under the LBSF Agreement.

   *(ii)    Obligations of LBSF under CLS Agreement*

   26.    On October 28, 2004, Claimant, LBI, and LBCC entered into the Citibank CLS Settlement Services Amended and Restated Agreement for CLS User Members (the "CLS Agreement"). Pursuant to an Affiliate Election Agreement dated as of November 8, 2007, LBSF agreed to become subject to and be bound by the CLS Agreement. The CLS Agreement provided that Claimant would advance funds on LBSF's and/or its permitted affiliates' behalf to settle foreign currency exchange transactions and LBSF agreed to reimburse Claimant for any net balances arising out of those transactions and granted Claimant a right of setoff against any balances following an event of default with respect to any of them. The bankruptcy filing of LBHI on September 15, 2008 gave Claimant the right to terminate the CLS Agreement without prior notice. On September 15, 2008, Citibank notified LBSF that it was terminating the CLS Agreement.

   27.    Since September 2008, Claimant has undertaken extensive efforts to calculate its damages arising under the CLS Agreement. The aggregate amount payable by LBSF as a result of the early termination of the CLS Agreement equals USD 584,897 (the "LBSF CLS Obligation").

9

Citibank, N.A.
LBHI Guarantee Claims

28.     Claimant is a swap participant and the CLS Agreement is a swap agreement within the meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. Under the terms of the CLS Agreement, Claimant has the right to reduce the amount of any payment obligation whether matured or unmatured owed by it or any of Claimant's branches, affiliates or subsidiaries against the amount of the LBSF CLS Obligation.

29.     As of the filing of this Proof of Claim, Claimant has not received the LBSF CLS Obligation or any portion thereof from LBSF or from LBHI. Accordingly, pursuant to the terms of the LBHI Board Guarantee and the January 2004 Guarantee, LBHI continues to owe Claimant the full LBSF CLS Obligation.

**D.     LBHI's Guarantee of Obligations of LB Finance**

30.     LBHI guaranteed the obligations of LB Finance under Transactions governed by and entered into under that certain ISDA Master Agreement dated as of June 29, 1992 by and between Lehman Brothers Finance S.A. and Citibank, N.A. (the "LB Finance ISDA Master Agreement").

31.     In connection with the ISDA Master Agreement, Claimant and LB Finance entered into that certain Schedule to the Master Agreement dated as of June 29, 1992 (the "LB Finance Schedule") that certain Credit Support Annex to the Schedule (the "LB Finance Credit Support Annex") and that certain Security Agreement (the "LB Finance Security Agreement," and together with the LBSF ISDA Master Agreement, the LB Finance Schedule, and the LB Finance Credit Support Annex, all as separately amended, supplemented and otherwise modified and in effect from time to time, the "LB Finance Agreement"). Specified as Credit Support Provider in the LB Finance Agreement, on June 29, 1992 LBHI issued and executed a guarantee (the "LB Finance ISDA Guarantee"), in connection with the LB Finance Agreement in favor of

10

Citibank, N.A.
LBHI Guarantee Claims

LB Finance for the benefit of Claimant. Among other things, the LB Finance ISDA Guarantee

provides that LBHI unconditionally guarantees to Claimant the due and punctual payment of all

amounts payable by LB Finance under each Transaction.

32.     On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

Guarantee. Among other things, the Board Guarantee provides a full guarantee of the payment

of all liabilities, obligations and commitments of certain of LBHI's subsidiaries, including LB

Finance.

33.     Claimant is a swap participant and the LB Finance Agreement, together with the

LB Finance ISDA Guarantee and the other applicable guarantees, is a swap agreement within the

meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. On

September 15, 2008, pursuant to that certain Notice of Event of Default and Designation of Early

Termination Date (the "LB Finance Termination Notice") delivered by Claimant to LB Finance,

Claimant exercised its contractual right to terminate all outstanding Transactions under the LB

Finance Agreement and designated September 15, 2008 as the Early Termination Date under the

LB Finance Agreement for all outstanding Transactions.

34.     In accordance with the terms of the LB Finance Agreement, Claimant calculated

the amount (the "LB Finance Early Termination Amount") payable in respect of the Early

Termination Date and furnished to LB Finance that certain ISDA Section 6(d)(i) Calculation

Notice dated September 16, 2009 (the "LBIE Valuation Statement"). Claimant has preliminarily

determined that, as a result of the designation of an Early Termination Date under the LB

Finance Agreement in respect of all Terminated Transactions, Claimant owes money to LB

Citibank, N.A.
LBHI Guarantee Claims

Finance with respect to the LB Finance Early Termination Amount (the "LB Finance Early Termination Payable").

35.    By asserting the LB Finance Early Termination Payable in this Proof of Claim, Claimant reserves and preserves its right to reassert a claim against LB Finance under the LB Finance Agreement based on amounts that are ultimately determined to be owed between Claimant and LB Finance under the LB Finance Agreement as well as any rights of setoff that Claimant may have in respect of the LB Finance Early Termination Payable.

36.    In the event it is ultimately determined that LB Finance owes Claimant with respect to the LB Finance Early Termination Amount, then LBHI is liable, pursuant to the terms of the LB Finance ISDA Guarantee and the LBHI Board Guarantee, for any amount ultimately determined to be owed by LB Finance to Claimant under the LB Finance Agreement. In addition, LBHI, as guarantor, remains liable to Claimant for any deficiency, interest, and reasonable expenses and fees in connection with, as a consequence of, or arising or resulting from the occurrence of the close-out or early termination of all Transactions and the enforcement and protection of Claimant's rights under the LB Finance Agreement.

### E.    LBHI's Guarantee of Obligations of LB Securities

37.    On November 29, 2007 Claimant, LBHI and LB Securities, among others, entered into that certain Amended and Restated Principal Paying Agency Agreement (the "Agency Agreement"), pursuant to which Claimant agreed to act as the principal paying agent for certificates (the "Certificates") issued by LB Securities pursuant to that certain Programme Prospectus, dated November 29, 2006. LBHI guaranteed the obligations of LB Securities to Claimant under the Agency Agreement (the "LBHI Agency Agreement Guarantee").

38.    On August 14, 2008, pursuant to Claimant's obligations under the Agency Agreement, Claimant made a payment of CHF 2,663,957 on behalf of LB Securities to holders

12

Citibank, N.A.
LBHI Guarantee Claims

of Certificates issued by LB Securities and identified by ISIN CH0027120762 (the "Certificates

Payment"). LB Securities was, pursuant to the terms of the Agency Agreement, required to

reimburse Claimant an amount equal to the Certificates Payment. LB Securities attempted to

transfer an amount equal to the Certificates Payment to Claimant but used an incorrect IBAN

reference in the transfer, which, as a result, failed. As LB Securities attempted to re-transfer the

funds to Claimant, LB Securities, the Debtors and numerous affiliates of the Debtors worldwide

began to enter insolvency proceedings. LB Securities never reimbursed Claimant for the

Certificates Payment and remains liable for such payment. Additionally, LB Securities remains

liable for interest, expenses and fees incurred in connection with the Certificates Payment, which

equal approximately USD 214,399 (together with LB Securities obligation to reimburse

Claimant for the Certificates Payment, the "LB Securities Claim").

39.    On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

Guarantee. Among other things, the LBHI Board Guarantee provides a full guarantee of the

payment of all liabilities, obligations and commitments of certain of LBHI's subsidiaries,

including LB Securities.

40.    As of the filing of this Proof of Claim, Claimant has not been reimbursed for the

LB Securities Claim or any portion thereof from LB Securities or from LBHI. Accordingly,

pursuant to the terms of the LBHI Agency Agreement Guarantee and the LBHI Board

Guarantee, LBHI continues to owe Claimant the full amount of the LB Securities Claim.

F.    **LBHI's Guarantee of Obligations of LBIE**

(i)    *Obligations of LBIE under LBIE ISDA Master Agreement*

13

Citibank, N.A.
LBHI Guarantee Claims

41.    LBHI guaranteed the obligations of LBIE under Transactions governed by and entered into under that certain ISDA Master Agreement dated as of October 30, 1997 by and between Lehman Brothers International (Europe) and Citibank, N.A. (the "LBIE ISDA Master Agreement").

42.    In connection with the LBIE ISDA Master Agreement, Claimant and LBIE entered into that certain Schedule to the Master Agreement dated as of October 30, 1997 (the "LBIE Schedule") and that certain Credit Support Annex to the Schedule (the "LBIE Credit Support Annex," and together with the LBIE ISDA Master Agreement and the LBIE Schedule, all as separately amended, supplemented and otherwise modified and in effect from time to time, the "LBIE Agreement"). Specified as Credit Support Provider in the LBIE Agreement, on October 30, 1997 LBHI issued and executed a guarantee (the "LBIE ISDA Guarantee"), in connection with the LBIE Agreement in favor of LBIE for the benefit of Claimant. Among other things, the LBIE ISDA Guarantee provides that LBHI unconditionally guarantees to Claimant the due and punctual payment of all amounts payable by LBIE under each Transaction.

43.    On or about June 9, 2005, the Executive Committee of the Board of Directors of LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board Guarantee. Among other things, the LBHI Board Guarantee provides a full guarantee of the payment of all liabilities, obligations and commitments of certain of LBHI's subsidiaries, including LBIE.

44.    On or about January 7, 2004, LBHI executed the January 2004 Guarantee, which was amended on September 9, 2008. Among other things, the January 2004 Guarantee provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain of LBHI's subsidiaries, including LBIE.

14

Citibank, N.A.
LBHI Guarantee Claims

45.    On or about January 4, 2008, LBHI executed the S&P Guarantee.  Among other

things, the S&P Guarantee provides a full guarantee of the payment of all liabilities, obligations

and commitments of LBIE.

46.    Claimant is a swap participant and the LBIE Agreement, together with the LBIE

ISDA Guarantee and the other applicable guarantees, is a swap agreement within the meaning of

sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. On September 15, 2008,

pursuant to that certain Notice of Event of Default and Designation of Early Termination Date

(the "LBIE Termination Notice") delivered by Claimant to LBIE, Claimant exercised its

contractual right to terminate all outstanding Transactions under the LBIE Agreement and

designated September 15, 2008 as the Early Termination Date under the LBIE Agreement for all

outstanding Transactions.

47.    In accordance with the terms of the LBIE Agreement, Claimant calculated the

amount (the "LBIE Early Termination Amount") payable in respect of the Early Termination

Date and furnished to LBIE that certain ISDA Section 6(d)(i) Calculation Notice dated

September 16, 2009 (the "LBIE Valuation Statement").  The aggregate LBIE Early Termination

Amount payable by LBIE as a result of the designation of an Early Termination Date under the

LBIE Agreement in respect of all Terminated Transactions equals USD128,195,144.

48.    As of the filing of this Proof of Claim, Claimant has not received the LBIE

Early Termination Amount or any portion thereof from LBIE or from LBHI.  Accordingly,

pursuant to the terms of the LBIE ISDA Guarantee, the LBHI Board Guarantee, the January

2004 Guarantee and the S&P Guarantee,  LBHI continues to owe Claimant the full LBIE Early

Termination Amount.  In addition, LBHI, as guarantor, remains liable to Claimant for any

deficiency, interest, and reasonable expenses and fees in connection with, as a consequence of, or

15

Citibank, N.A.
LBHI Guarantee Claims

arising or resulting from the occurrence of the close-out or early termination of all Transactions

and the enforcement and protection of Claimant's rights under the LBIE Agreement.

   *(ii)    Obligations of LBIE under Custody Agreements*

   49.    On May 20, 1992, Claimant and LBIE entered into that certain Direct Custody

Agreement For Citibank, N.A., Subsidiaries and Affiliates And Lehman Brothers International

Ltd.[2] (the "1992 Custody Agreement"). Pursuant to the 1992 Custody Agreement, LBIE opened

and maintained custody accounts with Claimant, and Claimant provided LBIE with securities

clearing, settlement, and custodial services (the "Custody Services"), for which Claimant earned

fees and commissions from LBIE. Claimant provided Custody Services to LBIE from affiliates

of Claimant located throughout the world. Each affiliate of Claimant that provided Custody

Services to LBIE executed a schedule (each a "Schedule") to the 1992 Custody Agreement,

which set forth the terms and conditions for providing Custody Services to LBIE. In early

September 2008, Claimant and LBIE negotiated a replacement agreement to the 1992 Custody

Agreement, and preliminarily agreed on that certain Direct Custodial Services Agreement

between Lehman Brothers International (Europe) and Citibank N.A., dated as of September 11,

2008 (the "2008 Custody Agreement," and together with the 1992 Custody Agreement, the

"Custody Agreements"). As of September 15, 2008, the date LBIE entered into insolvency

proceedings in the United Kingdom, certain affiliates of Claimant provided Custody Services to

LBIE pursuant to the 1992 Custody Agreement while other affiliates provided LBIE Custody

Services pursuant to the 2008 Custody Agreement.

   50.    As of the filing of this Proof of Claim, LBIE is liable to Claimant, either directly

or as agent or representative of its subsidiaries and affiliates that acted as custodians under the

---

[2] Lehman Brothers International Ltd. was the predecessor in interest to LBIE.

Citibank, N.A.
LBHI Guarantee Claims

Custody Agreements, for no less than USD 1,107,170 for Custody Services provided to LBIE

pursuant to the Custody Agreements (the "Custody Services Claim").

51.   As of the filing of this Proof of Claim, Claimant has not received payment for the

Custody Services Claim or any portion thereof from LBIE or from LBHI.  Accordingly, pursuant

to the terms of the LBHI Board Guarantee, the January 2004 Guarantee and the S&P Guarantee,

LBHI continues to owe Claimant the full amount of the Custody Services Claim.

*(iii)   Obligations of LBIE under Wire Transfers*

52.   On September 11, 2008, LBIE wire transferred USD 4,500,000 to Claimant's

New York Branch (the "LBIE Wire Transfer"), with instructions that Claimant apply the wired

funds to a Euro denominated account maintained by Credit Suisse Securities (Europe) ("Credit

Suisse," and the "Credit Suisse Account").  LBIE made the LBIE Wire Transfer to satisfy a

liability that LBIE owed to Credit Suisse.  Because the LBIE Wire transfer required Claimant to

convert the funds from U.S. Dollars into Euros, Claimant was required to seek approval from

Credit Suisse.  On September 12, 2008, and again on September 16, 2008, Claimant sought

approval from Credit Suisse to convert the LBIE Wire Transfer, but received no response from

Credit Suisse.  On September 22, 2008, Claimant returned the LBIE Wire Transfer to LBIE.

53.   On September 24, 2008, Credit Suisse contacted Claimant seeking explanation as

to why the LBIE Wire Transfer had not been credited to the Credit Suisse Account.  Claimant

informed Credit Suisse that the LBIE Wire Transfer had been returned to LBIE because no

response was received from Credit Suisse.

54.   In the event that Claimant is hereafter held liable to Credit Suisse for the LBIE

Wire Transfer, Claimant reserves its right to assert a claim against LBIE equal in  amount to any

such amount for which Claimant is liable to LBIE (the "LBIE Wire Transfer Claim").

*(iv)   Obligation of LBIE under Certificate Issuances*

17

Citibank, N.A.
LBHI Guarantee Claims

55.  Pursuant to the Agency Agreement (as described in paragraph 37), Claimant acted as agent for LBIE with respect to the issuance of various Certificates and LBIE agreed to pay Claimant for its services.  By invoices dated August 7, 2008 and September 2, 2008, Claimant instructed LBIE to pay USD 4,950 and USD 6,600, respectively, for services Claimant performed pursuant to the Agency Agreement ( collectively, the "LBIE Agency Claim").

56.  As of the filing of this Proof of Claim, Claimant has not received payment for the LBIE Agency Claim or any portion thereof from LBIE or from LBHI.  Accordingly, pursuant to the terms of the LBHI Board Guarantee, the January 2004 Guarantee and the S&P Guarantee, LBHI continues to owe Claimant the full amount of the LBIE Agency Claim.

*(v)   Obligation of LBIE under Manufactured Dividend Taxes*

57.  On April 1, 2008, the Swiss Federal Tax Administration (the "SFTA") issued Circular No. 21, which, among other things, required custodian banks in Switzerland to tax manufactured dividend payments that resulted from short sales at a rate of 35% and to pay this tax to the SFTA (the "Manufactured Dividend Tax").  Pursuant to the Custody Agreements, LBIE maintained a custody account at Claimant's Zurich branch (the "Swiss Custody Account").

58.  Due to technical difficulties, there was a delay in receiving the necessary information from the central securities depository, SIS, which prohibited Claimant from properly enforcing the Manufactured Dividend Tax with respect to the Swiss Custody Account.  On or about September 18, 2008, Claimant received the requisite information from SIS and assessed the Manufactured Dividend Tax on manufactured dividends paid to the Swiss Custody Account.  Claimant determined that LBIE owed CHF 22,313, or approximately USD 19,951 using the exchange rate applicable on the Petition Date, on account of unpaid Manufactured Dividend Taxes, and paid such amount to the SFTA on behalf of LBIE (the "Dividend Tax Payment").

Citibank, N.A.
LBHI Guarantee Claims

59.    As of the filing of this Proof of Claim, Claimant has not received payment for the

Dividend Tax Payment or any portion thereof from LBIE or from LBHI. Accordingly, pursuant

to the terms of the LBHI Board Guarantee, the January 2004 Guarantee and the S&P Guarantee,

LBHI continues to owe Claimant the full amount of the Dividend Tax Payment.

### G.    LBHI's Guarantee of Obligations of LBCCA

*(i)    Obligations of LBCCA under LBCCA ISDA Master Agreement*

60.    LBHI guaranteed the obligations of LBCCA under Transactions governed by

and entered into under that certain ISDA Master Agreement dated as of July 12, 2007 by and

between Lehman Brothers Commercial Corporation Asia Limited and Citibank, N.A. (the

"LBCCA ISDA Master Agreement").

61.    In connection with the LBCCA ISDA Master Agreement, Claimant and

LBCCA entered into that certain Schedule to the Master Agreement dated as of July 12, 2007

(the "LBCCA Schedule") and that certain Credit Support Annex to the Schedule (the "LBCCA

Credit Support Annex," and together with the LBCCA ISDA Master Agreement and the LBCCA

Schedule, all as separately amended, supplemented and otherwise modified and in effect from

time to time, the "LBCCA Agreement"). Specified as Credit Support Provider in the LBCCA

Agreement, on July 12, 2007 LBHI issued and executed a guarantee (the "LBCCA

ISDA Guarantee"), in connection with the LBCCA Agreement in favor of LBCCA for the

benefit of Claimant. Among other things, the LBCCA ISDA Guarantee provides that LBHI

unconditionally guarantees to Claimant the due and punctual payment of all amounts payable by

LBCCA under each Transaction.

62.    On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

19

Citibank, N.A.
LBHI Guarantee Claims

Guarantee. Among other things, the LBHI Board Guarantee provides a full guarantee of the

payment of all liabilities, obligations and commitments of certain of LBHI's subsidiaries,

including LBCCA.

63.　　On or about January 7, 2004, LBHI executed the January 2004 Guarantee,

which was amended on September 9, 2008. Among other things, the January 2004 Guarantee

provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain

of LBHI's subsidiaries, including LBCCA.

64.　　Claimant is a swap participant and the LBCCA Agreement, together with the

LBCCA ISDA Guarantee and the other applicable guarantees, is a swap agreement within the

meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code. On

September 15, 2008, pursuant to that certain Notice of Event of Default and Designation of Early

Termination Date (the "LBCCA Termination Notice") delivered by Claimant to LBCCA,

Claimant exercised its contractual right to terminate all outstanding Transactions under the

LBCCA Agreement and designated September 15, 2008 as the Early Termination Date under the

LBCCA Agreement for all outstanding Transactions.

65.　　In accordance with the terms of the LBCCA Agreement, Claimant calculated

the amount (the "LBCCA Early Termination Amount") payable in respect of the Early

Termination Date and furnished to LBCCA that certain ISDA Section 6(d)(i) Calculation Notice

dated September 16, 2009 (the "LBCCA Valuation Statement"). The aggregate LBCCA Early

Termination Amount payable by LBCCA as a result of the designation of an Early Termination

Date under the LBCCA Agreement in respect of all Terminated Transactions equals USD

841,032.

Citibank, N.A.
LBHI Guarantee Claims

66.    As of the filing of this Proof of Claim, Claimant has not received the LBCCA

Early Termination Amount or any portion thereof from LBCCA or from LBHI.  Accordingly,

pursuant to the terms of the LBCCA ISDA Guarantee, the LBHI Board Guarantee and the

January 2004 Guarantee,  LBHI continues to owe Claimant the full LBCCA Early Termination

Amount.  In addition, LBHI, as guarantor, remains liable to Claimant for any deficiency, interest,

and reasonable expenses and fees in connection with, as a consequence of, or arising or resulting

from the occurrence of the close-out or early termination of all Transactions and the enforcement

and protection of Claimant's rights under the LBCCA Agreement.

*(ii)    Obligations of LBCCA as stated in LBCCA Proof of Debt*

67.    On September 19, 2008, a winding-up petition was presented against LBCCA and

the High Court of the Hong Kong Special Administrative Region (the "Hong Kong Court")

appointed provisional liquidators (the "Provisional Liquidators") to LBCCA to preserve the

assets and records of LBCCA until the substantive hearing of the winding-up petition.  A

winding-up order was made against LBCCA by the Hong Kong Court on  November 26, 2008

and the Provisional Liquidators were subsequently appointed as the Liquidators of LBCCA by

the Hong Kong Court on March 20, 2009, and charged with overseeing the liquidation of

LBBCA the ("LBCCA's Liquidation Proceeding").  By notice dated July 24, 2009, the

Liquidators of LBCCA called for creditors of LBCCA to prove their debts by completing a proof

of debt and lodging it with the Liquidators on or before  August 14, 2009.  Further to such

notice, on or about August 14, 2009, the Claimant submitted a proof of debt in LBCCA's

Liquidation Proceeding (the "LBCCA Proof of Debt").

68.    In the LBCCA Proof of Debt, Claimant asserted numerous claims against

LBCCA, including, without limitation, those claims identified on Attachment A thereto which

Citibank, N.A.
LBHI Guarantee Claims

include  CLAIM 1: Revolving Loan Facility in the liquidated amount of USD 281,225,562

CLAIM 2: Fees and Expenses under an Undertaking Deed in the liquidated amount of USD

175,498, CLAIM 3: Redemption Amounts in the aggregate liquidated amount of USD 76,780

together with accrued and unpaid interest or other return, CLAIM 4: Securities Claim in the

aggregate liquidated amount of USD 26,040,000 together with accrued and unpaid interest or

other return, CLAIM 5: Derivatives Claim in an unliquidated amount[3] (each as defined in the

LBCCA Proof of Debt, and collectively, the "LBCCA Claims").  Claimant hereby incorporates

the LBCCA Claims asserted in Claimant's LBCCA Proof of Claim, including the liquidated and

unliquidated claim amounts specified therein, as if the LBCCA Claims were fully set forth herein

and hereby reserves and preserves all rights asserted in the LBCCA Proof of Claim as if fully set

forth herein and reserves and preserves all rights available to Claimant in the LBCCA

Liquidation Proceeding.

     69.     On or about July 26, 2007, LBHI issued and executed a guarantee of LBCCA's

obligations identified and asserted in the LBCCA Proof of Debt as "CLAIM 5: Derivatives

Claim" (the "LBCCA ISDA Guarantee"), for the benefit of Claimant.  Among other things, the

LBCCA ISDA Guarantee provides that LBHI unconditionally guarantees to Claimant the due

and punctual payment of all amounts payable by LBCCA as asserted in Claim 5: Derivatives

Claim.

     70.     On or about August 30, 2007, LBHI issued and executed a guarantee of LBCCA's

obligations identified and asserted in the LBCCA Proof of Debt as "CLAIM 1: Revolving Loan

Facility" (the "Loan Guarantee"), for the benefit of Claimant.  Among other things, the Loan

Guarantee provides that LBHI unconditionally guarantees to Claimant the due and punctual

---

[3] Claimant did not provide a liquidated amount for Claim 5 in Claimant's LBCCA Proof of Debt.  Since Claimant filed the LBCCA Proof of
Debt on August 14, 2009, Claimant has determined that the amount of Claim 5 is equal to USD 841,032, as described above in paragraphs

Citibank, N.A.
LBHI Guarantee Claims

payment of all amounts payable by LBCCA as identified and asserted in CLAIM 1: Revolving

Loan Facility.

71.    On or about January 7, 2004, LBHI executed the January 2004 Guarantee, which

was amended on September 9, 2008. Among other things, the January 2004 Guarantee provides

a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain of

LBHI's subsidiaries, including LBCCA.

72.    On or about June 9, 2005, the Executive Committee of the Board of Directors of

LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board

Guarantee. Among other things, the LBHI Board Guarantee provides a full guarantee of the

payment of all liabilities, obligations and commitments of certain of LBHI's subsidiaries,

including LBCCA.

73.    As of the filing of this Proof of Claim, Claimant has not received payment for the

LBCCA Claims or any portion thereof from LBCCA or from LBHI. Accordingly, pursuant to

the terms of the LBCCA ISDA Guarantee, the Loan Guarantee, the January 2004 Guarantee and

the LBHI Board Guarantee, LBHI continues to owe Claimant the full amount of the LBCCA

Claims.

## H.    LBHI's Guarantee of Obligations of LBI

*(i)    Obligation of LBI as set forth in LBI Proof of Claim*

74.    On September 19, 2008, LBI commenced a liquidation proceeding pursuant to the

provisions of the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* (as

amended, "SIPA, and the "LBI SIPA Proceeding"). On or about May 29, 2009, Claimant

submitted a proof of claim against LBI (the "LBI Proof of Claim"), in accordance with that

_____

51 through 57.

Citibank, N.A.
LBHI Guarantee Claims

certain *Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA* [Docket No. 241], which, among other things, established June 1, 2009 as the deadline by which all creditors of LBI must file proofs of general claims in the LBI SIPA Proceeding.

75.    In the LBI Proof of Claim, Claimant asserted numerous claims against LBI, including, without limitation, that certain CLS Claim in the liquidated amount of USD 259,827,691, Derivatives Payable in the liquidated amount of USD 62,448,929, Securities Lending Claim in the liquidated amount of USD 1,199,775, Pre-Filing Date Custody Claim in the liquidated amount of USD 33,180, Post-Filing Date Claim in the liquidated amount of USD 49,165, Late Settlement Claim in the liquidated amount of USD 308,686, Overdraft Claim in the liquidated amount of USD 12,199,628, Account Service Fees Claim in the liquidated amount of USD 42,627 and Misdirected Transfers Claim in the liquidated amount of 12,795,775 (each as defined in the LBI Proof of Claim, and collectively, the "LBI Claims"). Claimant hereby incorporates the LBI Claims asserted in Claimant's LBI Proof of Claim, including the liquidated and unliquidated claim amounts specified therein, as if the LBI Claims were fully set forth herein and hereby reserves and preserves all rights asserted in the LBI Proof of Claim as if fully set forth herein.

76.    On or about January 7, 2004, LBHI executed the January 2004 Guarantee, which was amended on September 9, 2008. Among other things, the January 2004 Guarantee provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain of LBHI's subsidiaries, including LBI.

24

Citibank, N.A.
LBHI Guarantee Claims

77.    As of the filing of this Proof of Claim, Claimant has not received payment for the LBI Claims or any portion thereof from LBI or from LBHI. Accordingly, pursuant to the terms of the January 2004 Guarantee, LBHI continues to owe Claimant the full amount of the LBI Claims.

(ii)    *Obligations of LBI under 2006 Check*

78.    As set forth in the LBI Proof of Claim, LBI maintained various cash deposit accounts with Claimant. Based on information and belief, on or about November 2006 LBI issued a check for USD 35,388.90 (the "Check") from one such deposit account, payable to a payee (the "Payee"). The Check was fraudulently altered so as to name someone other than the Payee as beneficiary, and later credited to an account at JP Morgan Chase ("Chase") that did not belong to the Payee. In early 2007, Claimant granted a provisional credit to LBI in the amount of USD 35,388.90. Claimant sought reimbursement from Chase, who denied Claimant's claim in January 2009. LBI is liable to Claimant for no less than USD 35,388.90 in respect of the foregoing (the "LBI Check Fraud Claim"). Accordingly, pursuant to the terms of the January 2004 Guarantee, LBHI continues to owe Claimant the full amount of the LBI Check Fraud Claim.

**I.    LBHI's Guarantee of Obligations of Lehman ALI**

79.    Prior to the Petition Date, Lehman ALI maintained general deposit account No. 40610006 with Claimant's New York, Wall Street Branch (the "Lehman ALI Account"). As of the Petition Date, Lehman ALI had overdrawn the Lehman ALI Account by USD 116,206 (the "Lehman ALI Overdraft").

80.    On or about July 26, 2005, LBHI executed the July 2005 Guarantee. Among other things, the July 2005 Guarantee provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain of LBHI's subsidiaries, including Lehman ALI.

Citibank, N.A.
LBHI Guarantee Claims

81.    As of the filing of this Proof of Claim, Claimant has not received payment for the

Lehman ALI Overdraft or any portion thereof from Lehman ALI or LBHI.  Accordingly,

pursuant to the terms of the July 2005 Guarantee, LBHI continues to owe Claimant the full

amount of the Lehman ALI Overdraft.

### J.    LBHI's Guarantee of Obligations of CLS Parties

82.    As described in paragraph 26 of this Proof of Claim, on October 28, 2004,

Claimant, LBI, and LBCC entered into the CLS Agreement.  Pursuant to an Affiliate Election

Agreement dated as of November 8, 2007, LBSF and LBIE agreed to become subject to and be

bound by the CLS Agreement.  The CLS Agreement provided that Claimant would advance

funds on behalf of LBI, LBIE, LBCC and LBSF (the "Lehman CLS Parties") to settle foreign

currency exchange transactions and the Lehman CLS Parties agreed to reimburse Claimant for

any net balances arising out of those transactions and granted Claimant a right of setoff against

any balances following an event of default with respect to any of them.  The bankruptcy filing of

LBHI on September 15, 2008 gave Claimant the right to terminate the CLS Agreement without

prior notice.  On September 15, 2008, Citibank notified LBSF that it was terminating the CLS

Agreement.

83.    Later on September 15, 2008, Claimant, LBI and LBCC entered into an

agreement (the "Letter Agreement"), which provided that Claimant would continue providing

foreign exchange settlement services to LBI and LBCC under the CLS Agreement through the

end of the day on September 16, 2008, so long as LBI deposited USD 1,000,000,000 into a

deposit account at Claimant.  Further, the Letter Agreement provided that Claimant would have a

right to setoff the USD 1,000,000,000 deposit against any obligations of LBI and/or LBCC under

the CLS Agreement.  Pursuant to additional letter agreements, Claimant continued providing

foreign exchange settlement services only to LBI on a day-by-day basis from September 17,

26

Citibank, N.A.
LBHI Guarantee Claims

2008 through September 19, 2008, on the condition that at any time Claimant could setoff the

USD 1,000,000,000 deposit against any of LBI's obligations under the CLS Agreement. On

September 19, 2008 at 1:13 p.m. EST, Claimant transferred the USD 1,000,000,000 deposit to an

administrative holding account and credited that amount against USD 1,000,000,000 in liabilities

LBI had outstanding to Claimant under the CLS Agreement (the "September 19 Setoff").

84.    Since September 2008, Claimant has undertaken extensive efforts to calculate

its damages arising under the CLS Agreement. The aggregate net amount payable by the

Lehman CLS Parties as a result of the early termination of the CLS Agreement, after accounting

for the September 19 Setoff, equals USD 47,424,651, (the "Lehman CLS Obligation").

85.    Claimant is a swap participant and the CLS Agreement is a swap agreement

within the meaning of sections 101(53C) and 101(53B), respectively, of the Bankruptcy Code.

Under the terms of the CLS Agreement, Claimant has the right to reduce the amount of any

payment obligation whether matured or unmatured owed to any Lehman CLS Party by Claimant

or any of Claimant's branches, affiliates or subsidiaries against the amount of the Lehman CLS

Obligation.

86.    As of the filing of this Proof of Claim, Claimant has not received payment for the

Lehman CLS Obligation or any portion thereof from any of the Lehman CLS Parties or from

LBHI. Pursuant to the January 2004 Guarantee, the LBHI Board Guarantee and the S&P

Guarantee, LBHI unconditionally guaranteed the obligations of each of the Lehman CLS Parties,

and is accordingly liable for the full amount of the Lehman CLS Obligation.

87.    In the event that Claimant's September 19 Setoff is later reversed, avoided, or

invalidated, in whole or in part, or must be repaid in whole or in part (each of the foregoing, a

"Reversal"), Claimant hereby asserts and reserves its right to assert a claim against LBHI in the

27

Citibank, N.A.
LBHI Guarantee Claims

amount of and the extent of any such Reversal; provided that in no way shall the foregoing

reservation of rights constitute an admission by Claimant of any wrongdoing on its part or of the

reversibility, avoidability or invalidity of the September 19 Setoff.

### K. LBHI's Guarantee of Obligations of LBTC, LBIE and LBCCA With Respect To Lehman Programs Securities

88.    LBTC issued structured notes pursuant to, among other things, that certain Base

Prospectus dated August 9, 2006, as supplemented, for the U.S.$60,000,000,000 Euro Medium-

Term Note Program, which included six series of notes identified by ISINs XS0311101652,

XS0309186145, XS0309790797, XS0310085062, XS0313536962 and XS0313537184 (the

notes of such series, collectively, the "2006 LBTC Notes"). The 2006 LBTC Notes were

unconditionally and irrevocably guaranteed by LBHI pursuant to that certain Guarantee

Agreement dated August 9, 2006 (the "2006 LBTC Notes Guarantee"). LBTC also issued

structured notes pursuant to, among other things, that certain Base Prospectus dated July 24,

2007, as supplemented, for a U.S.$100,000,000,000 Euro Medium-Term Note Program, which

included three series of notes identified by ISINs XS0313950031, XS0319159702 and

XS0319159454 (the notes of such series, collectively, the "2007 LBTC Notes" and together with

the 2006 LBTC Notes, in each case held of record by Claimant, the "Lehman Program Notes").

The 2007 LBTC Notes were unconditionally and irrevocably guaranteed by LBHI pursuant to

that certain Guarantee Agreement dated July 24, 2007 (the "2007 LBTC Notes Guarantee" and

together with the 2006 LBTC Notes Guarantee, the "Lehman Program Notes Guarantees"). As

of September 15, 2008, the aggregate outstanding principal amount of the Lehman Program

Notes was equal to USD 26,040,000 together with accrued and unpaid interest or other return as

of September 15, 2008.

Citibank, N.A.
LBHI Guarantee Claims

89.    The Lehman Program Notes are included in the list of Lehman Programs

Securities published by LBHI at http://www.lehman-docket.com. Pursuant to the Bar Date

Order, claims relating to Lehman Programs Securities, including the Lehman Program Notes, are

subject to a November 2, 2009 bar date (the "Securities Programs Bar Date"), as well as separate

proofs of claim forms (each a "Securities Programs Proof of Claim Form") and filing procedures.

The Bar Date Order requires, among other things, that holders of Lehman Programs Securities,

including the Lehman Program Notes, obtain either a Euroclear electronic instruction reference

number or a Clearstream blocking reference number (each a "Blocking Number"). In order for

Claimant to comply with the Bar Date Order and complete a Securities Programs Proof of Claim

Form for the Lehman Program Notes, Claimant must obtain a Blocking Number from the entity

that is the custodian of the Lehman Program Notes.

90.    Claimant, through its Indonesia Branch, and LBIE entered into that certain Master

Custody Agreement dated June 4, 2007 (the "Master Custody Agreement"), pursuant to which

Claimant opened and maintained one or more custody accounts with LBIE (each a "Custody

Account"). Pursuant to the Master Custody Agreement, LBIE was authorized to delegate its

custodial duties to agents, which included any member of the Lehman Brothers organization.

Claimant's Indonesia Branch also maintained a brokerage account, number 050-54422, with

LBCCA (the "LBCCA Brokerage Account").

91.    Claimant, through its Indonesia Branch, acquired the Lehman Program Notes

from LBCCA and distributed the Lehman Program Notes to Claimant's customers in Indonesia

(the "Customers"). Despite the sale of the Lehman Program Notes to Claimant's Customers,

Claimant remained the record holder of the Lehman Program Notes through the LBCCA

Brokerage Account. The Lehman Program Notes were delivered to LBIE, to be held by LBIE in

29

Citibank, N.A.
LBHI Guarantee Claims

a Custody Account for Claimant as the record holder, pursuant to the Master Custody Agreement and certain operational arrangements with LBCCA.

92.    Following the commencement of LBIE's insolvency proceeding in the United Kingdom on September 15, 2008, Claimant has sought the return of the Lehman Program Notes it understood were held by LBIE. On September 23, 2008, Claimant sent a letter to LBIE terminating the Master Custody Agreement, and requested that LBIE return the Lehman Program Notes. On October 28, 2008, Claimant sent another letter to LBIE, and again requested that LBIE return the Lehman Program Notes. By a letter to LBIE dated August 4, 2009, Claimant requested confirmation that LBIE was holding the Lehman Program Notes, and again requested that LBIE return the Lehman Program Notes. By an email dated August 11, 2009, the Trust Property Team of the Joint Administrators of LBIE instructed Claimant to direct all inquiries regarding the Lehman Program Notes to LBCCA. Upon receipt of the e-mail of August 11, 2009, Claimant was led to believe that custody of the Lehman Program Notes may have been transferred by LBIE to LBCCA.

93.    By a letter dated August 14, 2009, followed by an email dated August 20, 2009, Claimant asked the Liquidators for LBCCA whether custody of the Lehman Program Notes had been transferred to LBCCA. On September 2, 2009, the Liquidators of LBCCA confirmed to Claimant that the Lehman Program Notes were presently held in a segregated Euroclear account in the name of LBIE.

94.    As of the filing of this Proof of Claim, LBIE has failed to deliver the Lehman Program Notes to Claimant notwithstanding Claimant's termination of the Master Custody Agreement and repeated requests for the return of the Lehman Program Notes. Additionally, LBIE has failed to account in any manner to Claimant for the value of the Lehman Program

Citibank, N.A.
LBHI Guarantee Claims

Notes. LBIE's failure to return the Lehman Program Notes and other acts and omissions of

LBIE as custodian of the Lehman Program Notes may prevent Claimant from obtaining the

requisite Blocking Numbers and timely filing Securities Programs Proof of Claim Forms in

respect of the Lehman Program Notes for the benefit of its Customers against LBHI prior to the

Securities Programs Bar Date.

95.    In the event that Claimant is unable to comply with the Lehman Program

Securities Bar Date in any manner arising out of or related to LBIE's conduct as custodian of the

Lehman Program Notes, LBIE is liable to Claimant for any loss that Claimant incurs, whether

directly or on behalf of Claimant's Customers, in relation to the Lehman Program Notes.

Accordingly, pursuant to the terms of the LBHI Board Guarantee, the January 2004 Guarantee

and the S&P Guarantee, LBHI is liable to Claimant to the same extent as LBIE.

96.    In the event that Claimant's Lehman Program Notes are ultimately determined to

be held at LBCCA, or LBCCA is otherwise responsible for the return or value of Claimant's

Lehman Program Notes, LBCCA is liable to Claimant for any loss that Claimant incurs, whether

directly or on behalf of Claimant's Customers, in relation to the Lehman Program Notes.

Accordingly, pursuant to the terms of the LBHI Board Guarantee and the January 2004

Guarantee, LBHI is liable to Claimant to the same extent as LBCCA. Claimant hereby

incorporates Claim 4 of the LBCCA Claims asserted in Claimant's LBCCA Proof of Claim (as

described above in paragraph 68), including the liquidated and unliquidated claim amounts

specified therein, as if Claims 4 of the LBCCA Claims were fully set forth herein and hereby

reserves and preserves all rights asserted in the LBCCA Proof of Claim as if fully set forth herein

and reserves and preserves all rights available to Claimant in the LBCCA Liquidation

Proceeding.

Citibank, N.A.
LBHI Guarantee Claims

97.    In the event that Claimant is unable to file a Securities Programs Proof of Claim

Form in respect of the Lehman Program Notes as a result of the actions or omissions of LBIE,

LBCCA, or any other Lehman entity that is ultimately found to have custody of the Lehman

Program Notes, LBHI is liable, pursuant to the Lehman Program Note Guarantees and the LBHI

Board Guarantee, to Claimant for the full amount of the Lehman Program Notes to the same

extent as LBTC, including any distributions that Claimant would have been entitled to receive as

a result of a properly filed Securities Programs Proof of Claim Form in respect to the Lehman

Program Notes.

### L.    LBHI's Guarantee of Obligations of Lehman Cayman

98.    On July 6, 2009, Lehman Brothers Asia Holdings Limited passed a special

resolution placing Lehman Cayman into voluntary liquidation and appointing Simon Whicker

and Edward Middleton of KPMG as joint voluntary liquidators of Lehman Cayman. On August

12, 2009, the Grand Court of the Cayman Islands (the "Grand Court") ordered the liquidation to

be continued under the supervision of the Grand Court (the "Lehman Cayman Liquidation

Proceeding") and appointed Simon Whicker and Edward Middleton as joint official liquidators

of Lehman Cayman (the "Official Liquidators"). The Official Liquidators requested that proof

of debt forms be lodged with them on or before September 18, 2009. Further to such request, on

or about September 18, 2009, the Claimant submitted a proof of debt in Lehman Cayman's

Liquidation Proceeding (the "Lehman Cayman Proof of Debt").

99.    As set forth in the Lehman Cayman Proof of Debt, on June 16, 2003, Lehman

Cayman and Citibank N.A. entered into that certain Overseas Securities Lender's Agreement (as

amended, the "Cayman OSLA"). As of the filing of this Proof of Claim, Lehman Cayman may

be liable to Claimant for approximately USD 18 million or 20 million for obligations arising

from an undertaking by Lehman Cayman contained in the OSLA (the "Lehman Cayman

Citibank, N.A.
LBHI Guarantee Claims

Contingent Claim"). Claimant hereby incorporates the Lehman Cayman Contingent Claim asserted in Claimant's Lehman Cayman Proof of Debt as if the Lehman Cayman Contingent Claim were fully set forth herein and hereby reserves and preserves all rights asserted in the Lehman Cayman Proof of Debt as if fully set forth herein and reserves and preserves all rights available to Claimant in the Lehman Cayman Liquidation Proceeding.

100.    On or about June 9, 2005, the Executive Committee of the Board of Directors of LBHI executed a unanimous written consent pursuant to which it issued the LBHI Board Guarantee.  Among other things, the LBHI Board Guarantee provides a full guarantee of the payment of all liabilities, obligations and commitments of certain of LBHI's subsidiaries, including Lehman Cayman.

101.    As of the filing of this Proof of Claim, Claimant has not received payment for the Lehman Cayman Contingent Claim or any portion thereof from Lehman Cayman or from LBHI. Accordingly, pursuant to the terms of the LBHI Board Guarantee, LBHI continues to owe Claimant the full amount of the Lehman Cayman Contingent Claim.

**M.    LBHI's Guarantee of Obligations of SASCO**

102.    SASCO is liable to Claimant for various amounts owed under numerous certificates as identified in the following table (collectively, the "SASCO Certificates"):

| Description | CUSIP | Maturity Date | Offering Documents | Principal Amount in USD |
|---|---|---|---|---|
| SASC 2005-6 Class 3A1 | 863576CC6 | 5/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated January 25, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005–6), dated April 26, 2005. | 269,223,000 |

33

Citibank, N.A.
LBHI Guarantee Claims

| Description | CUSIP | Maturity Date | Offering Documents | Principal Amount in USD |
|---|---|---|---|---|
| SASC 2005-10 Class 1A1 | 86359DFM4 | 6/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated January 25, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005-10), dated May 23, 2005. | 333,873,000 |
| SASC 2005-10 Class 8A1 | 86359DGX9 | 6/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated January 25, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005-10 ), dated May 23, 2005. | 199,435,000 |
| SASC 2005 14 Class 4A1 | 86359DKA4 | 7/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated June 27, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005–14), dated June 28, 2005. | 190,503,000 |
| SASC 2005-15 Class 4A1 | 86359DNW3 | 8/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated July 26, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005–15), dated July 27, 2005. | 158,762,000 |
| SASC 2005-16 Class 3A1 | 86359DQS9 | 9/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated July 26, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2005–16), dated August 26, 2005. | 125,000,000 |
| SASC 2005-5 Class 3A1 | 863576AK0 | 4/25/2035 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated January 25, 2005, supplemented by Prospectus Supplement (Mortgage Pass-Through | 93,770,000 |

Citibank, N.A.
LBHI Guarantee Claims

| Description | CUSIP | Maturity Date | Offering Documents | Principal Amount in USD |
|---|---|---|---|---|
| | | | Certificates, Series 2005-5), dated March 24, 2005. | |
| SASC 2002-25A Class 2A1 | 86359ADV2 | 12/25/2032 | Prospectus (Asset-Backed Certificates Asset-Backed Notes), dated October 28, 2002, supplemented by Prospectus Supplement (Mortgage Pass-Through Certificates, Series 2002-25A), dated November 25, 2002. | 279,764,000 |
| | | | **Total:** | 1,650,330,000 |

103.    Claimant holds SASCO Certificates in the aggregate principal amount of USD 1,650,330,000 for which SASCO remains liable to Claimant (the "SASCO Certificates Claim").

104.    On or about July 26, 2005, LBHI executed the July 2005 Guarantee.  Among other things, the July 2005 Guarantee provides a full guarantee of the Obligations (as defined in the January 2004 Guarantee) of certain of LBHI's subsidiaries, including SASCO.

105.    Pursuant to the terms of the July 2005 Guarantee, LBHI continues to owe Claimant the full amount of the SASCO Certificates Claim plus all applicable premiums, interest, fees, costs, expenses, advances, charges, and other amounts of any kind that may be due or will become due on the SASCO Certificates.

*    *    *    *    *

106.    Claimant has filed this Proof of Claim under compulsion of the Bar Date Order and to protect the Claimant from forfeiture of Claimant's claims against the Debtors by reason of the Bar Date.  Claimant reserves the right to amend and/or supplement this Proof of Claim at any time, including after any bar date, in any manner, and/or to file additional proofs of claim for any

35

Citibank, N.A.
LBHI Guarantee Claims

additional claims which may be based on the same or additional documents or grounds of

liability.

107.    The filing of this Proof of Claim shall be without prejudice to any previous,

contemporaneous or future claims made by or on behalf of Claimant or any of its affiliates

against LBHI or any of its affiliates in this or any other proceeding, including, without limitation,

any proofs of claim filed against Lehman Brothers Inc. ("LBI") under compulsion of that certain

*Order Approving Form and Manner of Publication and Mailing of Notice of Commencement;*

*Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing*

*a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA* [Docket

No. 241], which, among other things, established (a) January 30, 2009 as the deadline by which

all customers of LBI must file proofs of customer claim in LBI's liquidation proceeding in order

to receive the maximum possible protection under the Securities Investor Protection Act of 1970,

15 U.S.C. §78aaa *et* seq. as amended ("SIPA"); and (b) June 1, 2009 as the deadline by which all

creditors of LBI must file proofs of general claims in LBI's liquidation proceeding.

108.    Claimant hereby expressly reserves the right to amend and/or supplement this

Proof of Claim at any time and in any manner, including without limitation to assert: (a) claims

for interest, fees, penalties, charges, attorneys' fees and expenses accrued before or after the

Petition Date; (b) claims for any future distributions or rights to distributions arising from any of

the securities identified herein (*e.g.*, dividends, coupons, warrants, etc.); and (c) any claims

arising from the successful prosecution or settlement (if any) of any avoidance causes of action

(or any other cause of action seeking recovery of payments made to, or setoffs or nettings

effectuated by, Claimant) against Claimant whether or not related to or arising from the

Citibank, N.A.
LBHI Guarantee Claims

transactions and agreements set forth herein. Claimant further reserves the right to file additional

proofs of claim or applications for allowance of administrative expenses or other priority status

in this or any other proceeding arising from or related to the claims described herein, including

for treatment as provided in section 503(b) of the Bankruptcy Code.

109.    Without limiting the rights otherwise asserted in this Proof of Claim, Claimant

hereby preserves and reserves all rights of setoff against LBHI whether in respect of claims

directly between Claimant and LBHI, claims between affiliates of Claimant and LBHI or claims

between Claimant, or its affiliates, and affiliates of LBHI, including, without limitation, under

sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 553, 555, 556, 559, 560 and 561 of the

Bankruptcy Code, under any agreement or other instrument, under applicable non-bankruptcy

law or otherwise.

110.    In executing and filing this Proof of Claim, Claimant does not waive (a) any

obligation owed to Claimant under the contracts described herein and attached as exhibits hereto,

or (b) any past, present or future breaches of such contracts by the Debtors or any of their

affiliates. Claimant further does not waive (and this Proof of Claim shall not be deemed or

construed to waive) any claims or right to assert any claims, or preserve any remedies, including

setoff and recoupment, that Claimant has against any of the Debtors, LBI, Lehman Brothers

International (Europe) or any other affiliates of the Debtors, whether arising from or related to

transactions described herein or otherwise.

111.    The filing of this Proof of Claim is not and shall not be deemed or construed as:

(a) a waiver or release of Claimant's rights against any person, entity, or property, or a waiver of

37

Citibank, N.A.
LBHI Guarantee Claims

the right to compel the Debtors to return property of Claimant currently in the possession of the

Debtors; (b) a consent by Claimant to the jurisdiction of this Court or any other court with

respect to proceedings, if any, commenced in any case against or otherwise involving Claimant;

(c) a waiver or release of Claimant's right to trial by jury in this Court or any other court in any

proceeding as to any and all matters so triable herein, whether or not the same be designated

legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding

the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2),

and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a

consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any

and all matters so triable herein or in any case, controversy, or proceeding related hereto,

pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have

any and all final orders in any and all non-core matters or proceedings entered only after *de novo*

review by a United States District Court Judge or, if applicable, the Second Circuit Court of

Appeals; (f) a waiver of the right to move to withdraw the reference with respect to the subject

matter of this Proof of Claim, any objection thereto or other proceeding which may be

commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

112.    All notices regarding this Proof of Claim should be sent to: Citibank, N.A., 388

Greenwich Street, New York, New York 10013-2375, <u>Attention</u>: Edward G. Turan, with copies

to Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York,

New York 10019-6064, Telephone number: (212) 373-3000, <u>Attention</u>: Douglas R. Davis.



H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 22 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

3:44

| RECEIVED BY: | DATE | TIME |