HEARING DATE AND TIME: October 27, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: October 17, 2011 at 4:00 p.m. (Eastern Time)

---

**DEBTORS HAVE FILED AN OBJECTION TO YOUR CLAIM IN THE ABOVE REFERENCED CASES.  YOUR CLAIM MAY BE REDUCED, MODIFIED, OR DISALLOWED.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL, MICHAEL A. ROLLIN, AT (303) 893-6100.**

---

REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110
Michael A. Rollin

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
|  | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | : 08-13555 (JMP) |
|  | : |
| Debtors. | : (Jointly Administered) |

-------------------------------------------------------------------x

**NOTICE OF HEARING ON DEBTORS' OBJECTION
TO PROOF OF CLAIM NO. 66099 FILED BY SYNCORA GUARANTEE, INC.**

  **PLEASE TAKE NOTICE** that on September 16, 2011, Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), filed an objection to proof of claim number 66099 (the "Debtors' Objection"), and that a hearing (the "Hearing") to consider the Debtors' Objection will be held before the Honorable James M. Peck, United States Bankruptcy Judge, in Courtroom 601

of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on October 27, 2011, at 10:00 a.m. **(Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Debtors' Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq.) and Reilly Pozner LLP, 1900 16th Street, Suite 1700, Denver, Colorado 80202 (Attn: Michael Rollin, Esq.); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.); so as to be so filed and received by no later than **October 17, 2011 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and served with respect to the Debtors' Objection or any claim set forth thereon, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Debtors' Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: September 16, 2011

*/s/* Michael A. Rollin
Michael A. Rollin
REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110

Attorneys for Debtors
and Debtors in Possession

HEARING DATE AND TIME: October 27, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: October 17, 2011 at 4:00 p.m. (Eastern Time)

REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110
Michael A. Rollin

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**DEBTORS' OBJECTION TO PROOF OF CLAIM**
**NO. 66099 FILED BY SYNCORA GUARANTEE, INC.**

---

**DEBTORS HAVE FILED AN OBJECTION TO YOUR CLAIM IN THE ABOVE REFERENCED CASES. YOUR CLAIM MAY BE REDUCED, MODIFIED, OR DISALLOWED.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT DEBTORS' COUNSEL, MICHAEL A. ROLLIN, AT (303) 893-6100.**

---

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent:

**Relief Requested**

1.  The Debtors file this objection seeking to disallow the entirety of proof of claim number 66099 brought by Syncora Guarantee Inc. (the "Claim," attached hereto as *Exhibit A*) pursuant to section 502(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.  Syncora Guarantee Inc. ("Syncora") asserts its claim against the Debtors seeking reimbursement for litigation expenses it incurred and indemnification for alleged breaches of representations and warranties. Syncora's claim should be dismissed under section 502(b)(1), because the claim is unenforceable against the Debtors under any agreement or applicable law.

3.  The Debtors reserve their rights to object to the claim on any other basis if the Court does not grant the relief requested herein.

**Jurisdiction**

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

5.  Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [ECF No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner has filed his report pursuant to section 1106(b) of the Bankruptcy Code [ECF No. 7531].

8. Syncora initially filed proof of claim 13909 on September 16, 2009 for $1.3 million. Syncora then filed amended proof of claim 66099, at issue here, on January 13, 2010 to replace and upwardly revise to 1.3 billion its total request as stated in the official claims register.

## Syncora's Claim

9. Syncora brings its claim as the insurer of notes issued by the GPMF 2006-HE1 trust (the "Trust"). The mortgage-backed notes at issue here are backed by a pool of home equity line of credit loans ("HELOCs" or "loans") originated by GreenPoint Mortgage Funding Inc. ("GreenPoint"). Pursuant to numerous representations and warranties, GreenPoint sold bundles of HELOCs to Transferor GMAC, which transferred them to LBHI's subsidiary Lehman Brothers Bank, FSB ("LBB," k/n/a Aurora Bank FSB). LBB thereafter assigned its rights to LBHI in its capacity as Seller and Sponsor of the Trust. Approximately one month from the date GMAC transferred the loans to LBB, LBHI sold the loans to Depositor SASCO by way of a Mortgage Loan Sale and Assignment Agreement ("MLSAA," attached hereto as *Exhibit B*). Finally, after acquiring the loans from SASCO, the issuer of the

3

Trust, GMPF 2006-HE1 (the "Issuer"), offered shares notes to investors though an Indenture Agreement ("Indenture," attached hereto as *Exhibit C*) with U.S. Bank acting as Indenture Trustee.

10. The Issuer offered two classes of notes to investors through the Indenture: $1,331,838,000 worth of Class Ax loans and $500,000,000 worth of Class Ac loans. In both classes, independent insurance companies unconditionally and irrevocably guaranteed payments through Insurance and Indemnification Agreements of principal and interest on the notes to the investors. Syncora insured the Class Ax notes.

11. Soon after the loans were securitized, Syncora entered into an Indemnification and Insurance Agreement (the "I & I Agreement") with LBHI, among other parties. In the I & I Agreement, LBHI agreed to indemnify Syncora for expenses, fees and losses arising out of breaches of representations and warranties that LBHI made in any "Operative Document" (as that term is defined in the I & I Agreement) with respect to the loans. In its claim, Syncora alleges that LBHI "remade as its own GreenPoint's representations and warranties" and agreed to indemnify Syncora for losses incurred in connection with breaches of GreenPoint's representations and warranties, including all payouts Syncora made to noteholders (the "Indemnification Claim"). Claim at ¶ 12. This is not true. LBHI did not remake GreenPoint's representations and warranties but rather made its own separate and distinct set of representations and warranties that covered the limited time period after LBB acquired the loans and before the Trust transaction closed.

12. US Bank in their capacity as Trustee also filed a claim—Proof of Claim No. 20587—against Debtors seeking recovery for the same breaches of representations and warranties for the same loans at issue in Syncora's claim. Syncora's claim is duplicative of US

4

Bank's Claim.

13. In addition to filing its claim against LBHI, Syncora also participated in a lawsuit that U.S. Bank as Indenture Trustee brought against GreenPoint for the full value of the Class Ax and Class Ac Notes (the "GreenPoint Action"). Syncora filed as a co-plaintiff with U.S. Bank for the value of the Class Ax loans. In that suit, Plaintiffs alleged that GreenPoint breached representations and warranties made in sales agreements which resulted in the losses suffered by the Trust's noteholders, and by extension, Syncora as insurer.[1] In addition to substantive defenses, Defendant GreenPoint challenged Syncora's standing to bring suit based on representations and warranties in sales agreements to which Syncora was not a party. The court agreed with GreenPoint and dismissed Syncora, reasoning that Syncora was not a named party in the agreements and the plain language of the sales agreement did not demonstrate that an insurer was an intended third-party beneficiary. A copy of the court's decision is attached hereto as *Exhibit D*.[2]

14. Syncora's Indemnification Claim should be disallowed because LBHI did not "remake" Greenpoint's representations and warranties, rather, LBHI's representations and warranties are unique and separate from GreenPoint's. Thus, breaches of GreenPoint's representations and warranties do not necessarily equate to breaches of LBHI's representations and warranties.

15. In its claim, Syncora is also seeking reimbursement of the expenses it has incurred by participating in the GreenPoint Action (the "Reimbursement Claim").

---

[1] The applicable sales agreements were a September 26, 2005 Flow Revolving Credit Loan Purchase and Warranties Agreement and a July 26, 2006 Flow Mortgage Loan Purchase and Warranties Agreement by which GreenPoint sold the loans to GMAC.

[2] Syncora is currently preparing a Third Amended Complaint based on an Indemnification Agreement it entered into with GreenPoint at the time of the transaction.

5

Syncora's Reimbursement Claim for expenses incurred in litigating the GreenPoint Action also should be disallowed because Syncora's attempt to participate in the GreenPoint Action has thus far been rejected by the trial court therefore the expenses incurred were not "reasonably incurred."

## The Indemnification Claim Should Be Disallowed

### A.     Syncora's Indemnification Claim is Duplicative

16.     In Clam No. 20587, US Bank as Trustee for numerous trusts, including the Trust at issue here, seeks recovery from Debtors for losses in the Trust stemming from breaches of representations and warranties "with respect to individual Mortgage Loans which materially and/or adversely affected the value of such Mortgage Loans." Claim No. 20587. The "Mortgage Loans" US Bank refers to include the same loans underlying Syncora's Indemnification Claim. Because Syncora has subrogation rights for any recovery by the Trust, *see* I & I Agreement, Syncora stands to recover from Debtors twice. The Debtors cannot be required to pay on the same claim more than once. *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey,* 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed.").

17.     These same loans also form the basis for the GreenPoint Action, which was brought jointly by US Bank and Syncora, at the direction of Syncora. *See* Ex. A at Ex. 2. In essence, Syncora is attempting to recover for the same injury *three* times—twice in this bankruptcy action and once in state court in New York. Accordingly, to avoid the possibility of Syncora receiving duplicative or multiple recoveries on its claim, the Debtors request the claim be disallowed.

### B.     The Governing Agreements

6

18.     The I & I Agreement contains an indemnification provision which reads in pertinent part:

> [T]he Sponsor [LBHI] agrees on behalf of itself . . . to pay, and to protect, indemnify and save harmless, the Insurer . . . from and against any and all claims, losses, liabilities . . . of any nature arising out of or relating to the breach by the Sponsor . . . of any of the representations and warranties contained in Section 2.01 . . . ."

I & I Agreement, § 3.04(a). Section 2.01 includes a lengthy list of representations and warranties, subsection (m) of which incorporates all warranties LBHI ever made in any Operative Document as if set forth in full in the I&I Agreement. *See id.* at § 2.04. As discussed in greater detail below, in the MLSAA between LBHI and SASCO, LBHI made various representations and warranties as to the loans. Therefore, subsection (m) incorporates into the I & I all of LBHI's representations and warranties from the MLSAA.

19.     The specific representations and warranties that Syncora asserts LBHI "remade" are found in Section 1.04 of the MLSAA, titled "Representations and Warranties of the Seller [LBHI]." In Subsection 1.04(b)(iii), LBHI made the warranties specified on Schedules B, C and D of the MLSAA to the Depositor, the Issuer, the Indenture Trustee and the Insurers "as of the Closing Date." MLSAA at 1.04(b)(iii). These schedules consist of a list of the warranties originally made by GreenPoint and passed on by GMAC to LBB. Thus, Syncora's claim that LBHI "remade" GreenPoint's warranties appears to rely on Subsection 1.04(b)(iii) of the MLSAA.

20.     However, Section 1.04(b) contains a paragraph limiting the scope of the warranties made by LBHI in the following subsections, including Subsection 1.04(b)(iii). Specifically:

> The Depositor [SASCO] acknowledges and agrees that the representations and warranties of the Seller in this Section 1.04(b) [except those in Subsection

7

> 1.04(b)(i)] *are applicable only to facts, conditions or events that do not constitute a breach of any representation or warranty made by the Transferor in the Transfer Agreements.* (emphasis added).

MLSAA § 1.04(b). Subsection 1.04(b)(iii) acknowledges this limiting language, and begins with the language, "Subject to the foregoing . . . ." *Id.* at § 1.04(b)(iii).

## C.    LBHI did not "Remake" GreenPoint's Representations and Warranties in the MLSAA

21.    The foregoing contractual language demonstrates that LBHI's representations and warranties contained in Subsection 1.04(b)(iii) merely complemented, and did not "remake," GreenPoint's representations and warranties contained in the Transfer Agreements that GMAC passed on and/or made to LBB. Instead, LBHI's representations and warranties in Subsection 1.04(b)(iii) act as gap representations and warranties designed to cover the period of time GreenPoint's representations and warranties do not cover.

22.    Specifically, GreenPoint's representations and warranties as to the quality of the mortgage loans and the practices pursuant to which the loans were originated and underwritten were made as of the date GMAC passed them on to LBB—July 28, 2006. *See* MLSAA at § 1.04(b)("The representations and warranties of the Transferor with respect to the Loans in the Transfer Agreements were made as of the date of the Transfer Agreements."). LBHI's representations and warranties in Subsection 1.04(b)(iii) can therefore *only* apply to facts, conditions or events that constitute a breach of any representation or warranty in the period after GMAC transferred the loans to LBB and before the Closing Date specified in the MLSAA—July 28 through August 28, 2006. In other words, mortgage loans that did not breach of any of GreenPoint's warranties may have breached the same warranties subsequently made by LBHI due to events such as cancellations of hazard insurance, the filing of mechanics liens,

8

mortgagor defaults, and the like. *see* MLSAA, Schedule B at (b), (c), (d), (f), (e), (h), (i), (j), (l), (n), (o), (p), (r), (s), (t), (v), (y), (z), (cc), (ee), (ff), (gg), (hh), (ii), (kk), (mm), (nn), (vv), (fff).

23. Syncora's interpretation of the MLSAA, that LBHI wholly remade GreenPoint's representations and warranties in Subsection 1.04(b)(iii), would render the limiting language in Section 1.04 meaningless. Such an interpretation violates one of the basic tenets of contract interpretation, that "[e]ffect and meaning must be given to every term of the contract" and "reasonable effort must be made to harmonize all of its terms." *In re El-Roh Realty Corp.*, 74 A.D.3d 1796, 1799 (N.Y. App. Div. 2010) ("Effect and meaning must be given to every term of the contract and reasonable effort must be made to harmonize all of its terms. Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose.") (internal citations omitted).

D.  **Syncora's Indemnification Claim Does Not Contemplate Breaches that Occurred After GMAC transferred the loans to LBB**

24. Syncora relies on GreenPoint's alleged breaches of its representations and warranties as articulated in the GreenPoint Action to prove breaches of LBHI's representations and warranties.

25. Specifically, Syncora concludes that "because GreenPoint, as 'Originator,' has breached numerous representations and warranties, and covenants—and because Lehman, which remade as its own GreenPoint's representations and warranties, has also breached them—and those breaches have caused Syncora to pay claims and incur losses . . . Syncora is entitled to payment and indemnification from Lehman pursuant to Section 3.04(a) of the I & I Agreement." POC ¶ 12. Syncora is essentially arguing that because GreenPoint's representations and warranties were breached, LBHI's "remade" representations and warranties must also have been breached.

9

26. Contrary to Syncora's erroneous assumption, LBHI did not remake GreenPoint's representations and warranties, so LBHI cannot be liable for breaches of GreenPoint's representations and warranties. Furthermore, Syncora does not allege, in its claim or in the GreenPoint action, any facts amounting to breaches of LBHI's unique representations and warranties. Syncora's Indemnification Claim against LBHI should be disallowed.

### The Reimbursement Claim Should be Disallowed

27. Syncora also claims that the Debtors must reimburse it for expenditures made as part of the GreenPoint Action under Section 3.03(c) of the I & I Agreement. Section 3.03(c) states in relevant part:

> The Sponsor [LBHI] agrees to pay to the Insurer [Syncora] any and all charges, fees, costs and expenses that the Insurer may *reasonably* pay or incur, including *reasonable* attorneys' and accountants' fees and expenses, in connection with . . . (ii) the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding . . . relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction . . . .

I & I Agreement, Section 3.03(c) (emphasis added).

28. The key aspect of the reimbursement provision is the reasonableness requirement, which makes the Debtors responsible for reimbursing Syncora only when litigation expenses are reasonable. The reasonableness requirement is necessary to curtail the inherent hazard that the party holding a blank check to pursue litigation not abuse its power. *See Gerow v. Rohm & Haas Co.*, 308 F.3d 721, 726 (7th Cir. 2002). "[W]e read the word 'reasonably' in context to curtail this hazard by requiring not only that the time devoted to advocacy must be reasonable in light of the litigation's nature (a requirement in every fee-shifting situation) but also that the litigating position must be "reasonable" (a filter necessitated

10

by the promise to reimburse even if the claim is unsuccessful)." *Id*. Indeed, Judge Easterbrook continued that, "[a] position may be rendered less reasonable, indeed may be shown to be *un-reasonable*, by a judicial decision exposing its fallacies." *Gerow v. Rohm & Haas Co.*, 308 F.3d 721, 726 (7th Cir. 2002) (finding a litigant's claim for reimbursement for legal fees grew unreasonable after a ruling against his interests).

29. The decision in the GreenPoint Action to dismiss Syncora for lack of standing demonstrates that Syncora's participation in the case against GreenPoint (certainly to date) was unreasonable. In the GreenPoint Action, Syncora argued that it was a third-party beneficiary of the Sales Agreements, the agreements by which GreenPoint sold the loans to GMAC, so it could sue based on the representations and warranties therein. *See* Ex. C (*U.S. Bank Nat'l Ass'n v. GreenPoint Mortgage Funding, Inc.*, No. 600352/09, at 7 (N.Y. Sup. Ct. filed Mar. 3, 2010)). But Syncora's position ignored the decisive element in the test for third-party beneficiaries, a "clear intention to confer the benefit of the promised performance" on a third party. *PT Bank Mizuho Indonesia v. PT Indah Kiat Pulp & Paper Corp.*, 25 A.D.3d 470, 471 (1st Dept. 2006); *U.S. Bank*, No. 600352/09 at 7; *State of California Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (N.Y. App. 2000). The Sales Agreements were not executed with some future insurer's benefit in mind, and the representations and warranties therein were not offered in order to induce a future insurer like Syncora to issue an insurance policy. Judge Fried in the GreenPoint Action recognized this logic, holding "there cannot be read into the various agreements an intent to apply the warranties and representations contained in the Sale Agreements to the Insurers." *U.S. Bank*, No. 600352/09 at 8. Similarly, he observed that the "Insurers' conclusory allegations that they are somehow beneficiaries of these warranties through other, later, documents, such as the [Prospective Supplement] and

11

Indemnification Agreements, fail to show that they were ever intended beneficiaries to any warranties or representations made by GreenPoint in the original Sales Agreements between GreenPoint and GMAC, or any of the later assignees." *Id*. at 9.

30. Moreover, Syncora did not need to participate in the case even if it had standing because the Indenture Trustee had the power to fully protect the rights of the trust, notes, and insurers. Indenture, § 5.03(c), (f). Syncora's attempt to directly participate was superfluous and plainly unnecessary. As the court's decision in the GreenPoint Action illustrated, the Indenture Trustee had standing to pursue the case, unlike Syncora. Exhibit C at No. 600352/09 at 9-15. Any recovery by the Indenture Trustee would have been for the benefit of the trust in general and would have gone to the insurer under the priorities list in section 5.04 of the Indenture. The Debtors acknowledge that section 5.20(a) of the Indenture gives Syncora the ability to initiate claims in its own discretion, but the Debtors contend that by choosing to independently litigate a futile, pyrrhic argument that it had standing in its own right when the Indenture Trustee would have adequately protected its interests, Syncora exercised its discretion in an unreasonable manner and on the Debtors' dime. As Judge Easterbrook noted, the inclusion of the reasonableness requirement in a reimbursement clause is necessary to prevent entities not responsible for their own legal fees from abusing their power and pointlessly litigating cases. By attempting to litigate the GreenPoint Action without standing and when the Indenture Trustee was committed to protecting its rights, Syncora's proof of claim demanding reimbursement for the GreenPoint Action should be dismissed because the Debtors are not contractually responsible for unreasonable decisions to litigate.

## Notice

31. No trustee has been appointed in these chapter 11 cases. The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for Region 2; (vi) attorneys for Syncora; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]. The Debtors submit that no other or further notice need be provided.

32. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: September 16, 2011

*/s/* Michael A. Rollin
Michael A. Rollin
REILLY POZNER LLP
1900 16th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 893-6100
Facsimile: (303) 893-6110

Attorneys for Debtors
and Debtors in Possession