DINN HOCHMAN & POTTER, LLC

5910 Landerbrook Drive
Suite 200
Cleveland, Ohio 44124
440-446-1100
440-446-1240 (FAX)
dhp@dhplaw.com (E-mail)

ATTORNEYS

Writer's Direct Dial
(440) 544-1129
bcarnahan@dhplaw.com

July 11, 2011

Charles J. Roederscheimer
Thompson & DeVeny Co. LPA
1340 Woodman Drive
Dayton, Ohio 45432

**Re: Michael A. Couch and Melissa A. Couch, Debtors**
**Michael A. Couch, et al. v. Property Asset Management, Inc., et al.**
**U.S. Bankruptcy Court, Southern District of Ohio, Western Division**
**Adv. Pro. No. 10-03239; Chapter 13**

Dear Mr. Roedersheimer:

As you know, we are due to file a Joint Status Report with the Court on or before July 15, 2011 relative to whether we have resolved the issue as to whether the Lehman Brothers Holding, Inc. ("Lehman Bros.") bankruptcy stay applies, in any fashion, to your clients' claims in the above matter. In advance of our status report, I provide you with the enclosed materials, which include:

1. An affidavit by an Ocwen Loan Servicing, LLC ("Ocwen") loan analyst;
2. The governing Servicing Agreement between Lehman Bros. and Ocwen;
3. The mortgage, note and assignments/allonges thereto, showing that Lehman Bros. is the owner of the note and mortgage;
4. Email correspondence relative to the loan between Ocwen and Aurora Loan Services, LLC ("Aurora"); and,



5. An Individual Settlement and Release Agreement executed by your clients, which releases some, or all, of the claims asserted by your clients in the instant matter.

Please accept these documents as a supplement to Ocwen's previously provided discovery response to your Request for Production. As the documents show, at the time the subject Proof of Claim ("POC") was filed, Lehman Bros.' designee was Property Asset Management, Inc. ("PAMI"). Ocwen was instructed to initiate all filings/actions in that name.

*Subsequent* to the POC filing and *prior* to your clients' adversary proceeding filing, Ocwen was advised that all further action on certain loans, including the loan in this matter, must be conducted in the name of Lehman Bros., as a result of the Lehman Bros. September, 2008 bankruptcy. *See,* Exhibit "C". The allonges and assignment of mortgage chains show that the current holder and assignee of the note and mortgage is Lehman Bros. These transfers occurred nearly a year before your clients' adversary proceeding was filed; however, because of the Lehman Bros. bankruptcy filing, Ocwen was unable, or unsure of its ability, to file an Amended Proof of Claim.

In light of the foregoing, it is my clients' position that all claims in this matter which seek a determination of the extent of loan's security or seek monetary claims against PAMI or Lehman Bros. must be stayed until the appropriate relief from stay is obtained. In addition, because Ocwen was loan servicer for Lehman Bros. at the time these events transpired and the issues are so intertwined, I submit that the claims against Ocwen should also be stayed until the appropriate relief is obtained.

Please review the enclosed materials and contact me to discuss formulating our joint status report at your earliest convenience.

Very truly yours,

Benjamin D. Carnahan

BDC:sms
enclosure(s)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL A. COUCH**<br>**MELISSA A. COUCH** | : | CASE NO. 08-32763 |
| | : | Chapter 13 |
| Debtors, | : | JUDGE LAWRENCE S. WALTER |
| ______________________________ : | | |
| **MICHAEL A. COUCH, et al.** | : | Adv. Pro. No. 10-03239 |
| Plaintiffs, | : | |
| -vs- | : | |
| **PROPERTY ASSET MANAGEMENT, INC., et al.** | : | |
| | : | |
| Defendants. | | |

**<u>AFFIDAVIT OF Paul Myers</u>**

STATE OF FLORIDA )
) ss:
COUNTY OF PALM BEACH )

1. I am employed by Ocwen Loan Servicing, LLC, successor in interest to Ocwen Federal Bank, FSB ("Ocwen") in the position of Loan Analyst. Ocwen was the servicer and attorney-in-fact for Lehman Brothers Holdings, Inc. ("Lehman Brothers") until Friday, July 1, 2011. *See* Flow Interim Servicing Agreement ("Servicing Agreement"), dated 12/5/03, attached hereto as Exhibit A.

2. I have reviewed the file which contains copies of loan origination documents pertaining to the subject loan, and have knowledge of its contents. I have also reviewed Plaintiffs'



transaction history and the servicing history of this loan. I make this affidavit based on my own personal knowledge obtained from reviewing this information.

3. Lehman Brothers is the current assignee holder of Plaintiffs' mortgage loan secured by the subject property ("the Loan"). *See* Mortgage, Note, Allonge, and Assignments of Mortgage, attached hereto as Exhibit "B".

4. When this Loan was originally securitized, it was part of SASCO 1999-BC1 or Pool #339—a number used for Ocwen's internal tracking purposes; however, this pool collapsed on August 5, 2004 due to insufficient remaining assets.

5. On that same day—August 5, 2004—due to the pool collapse, the Loan reverted back to Lehman Brothers and became part of Lehman Scratch and Dent Interim Flow or Pool #232—a number used for Ocwen's internal tracking purposes.

6. Because the Loan was tagged as litigated due to previous litigation with these borrowers, the Loan could not be re-securitized and packaged into another pool, and consequently, Lehman Brothers held onto it.

7. Ocwen filed the Proof of Claim in this matter in the name of Property Asset Management Inc. ("PAMI") pursuant to its loan servicing agreement with Lehman Brothers, as Lehman Brothers designee.

8. The Servicing Agreement states: "In the event that title to any Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be taken in the name of the Owner's designee . . ." and defines Owner as "Lehman Brothers Bank, FSB, or its successors in interest and assigns." *See* Servicing Agreement, at 26, 6.

9. As of October 13, 2008, due to the Lehman bankruptcy, Ocwen was instructed to change the designee to Lehman Brothers for all Lehman wholly-owned loans, including this Loan. *See* Email from Robert Maglio, dated 10/13/08, attached hereto as Exhibit "C".

10. Due to the bankruptcy of Lehman Brothers and the recent service transfer of the Loan, Ocwen cannot file an amended Proof of Claim in this case.

11. Ocwen previously entered into an Individual Settlement and Release Agreement with these borrowers which released many of the claims they are currently bringing in this adversary proceeding. *See* Individual Settlement and Release Agreement, a copy of which is attached hereto as Exhibit "D".

FURTHER AFFIANT SAYETH NAUGHT.

Name: Paul Myers
Position: Loan Analyst
Ocwen Loan Servicing, LLC

Subscribed and sworn to before me, a notary public in and for said county and state on the 8 day of July, 2011.

Notary Public

My commission expires: 10-21-14

Notary Public State of Florida
Kristen Wagner
My Commission EE036344
Expires 10/21/2014

LS Draft No. 2
12/5/03

OCWEN FEDERAL BANK FSB,

as Servicer

and

LEHMAN BROTHERS BANK, FSB,

as Owner

# FLOW INTERIM SERVICING AGREEMENT

Dated as of November 1, 2003

Group No. 2003-INTERIMFLOW

11767/16
03/21/2005 1429692.02



## TABLE OF CONTENTS

Page

### ARTICLE I.

DEFINITIONS

### ARTICLE II.

OWNER'S ENGAGEMENT OF SERVICER TO PERFORM SERVICING RESPONSIBILITIES


Section 2.01. Contract for Servicing; Possession of Servicing Files. ....11
Section 2.02. Books and Records. ....11
Section 2.03. Custodial Agreement; Delivery of Documents. ....12
Section 2.04. Owner Covenants With Respect to Transfer of Servicing. ....12
Section 2.05. Servicer Covenants With Respect to Transfer of Servicing. ....15


### ARTICLE III.

SERVICING OF THE MORTGAGE LOANS


Section 3.01. Servicer to Service. ....16
Section 3.02. Collection of Mortgage Loan Payments. ....16
Section 3.03. Establishment of and Deposits to Custodial Account. ....17
Section 3.04. Permitted Withdrawals From Custodial Account. ....18
Section 3.05. Establishment of and Deposits to Escrow Account. ....19
Section 3.06. Permitted Withdrawals From Escrow Account. ....20
Section 3.07. Notification of Adjustments. ....21
Section 3.08. [Reserved.] ....21
Section 3.09. Protection of Accounts. ....21
Section 3.10. Maintenance of Hazard Insurance. ....21
Section 3.11. Maintenance of Mortgage Impairment Insurance. ....23
Section 3.12. Maintenance of Fidelity Bond and Errors and Omissions Insurance. ....24
Section 3.13. Inspections. ....24
Section 3.14. Restoration of Mortgaged Property. ....24
Section 3.15. Maintenance of PMI Policy and/or LPMI Policy; Claims. ....25
Section 3.16. Title, Management and Disposition of REO Property. ....26
Section 3.17. Real Estate Owned Reports. ....28
Section 3.18. Liquidation Reports. ....28
Section 3.19. Reports of Foreclosures and Abandonments of Mortgaged Property. ....29
Section 3.20. Prepayment Charges. ....29
Section 3.21. Credit Reporting. ....29

Section 3.22. Safeguarding Customer Information....30

ARTICLE IV.

PAYMENTS TO OWNER

Section 4.01. Remittances....30
Section 4.02. Statements to Owner....31
Section 4.03. Monthly Advances by Servicer....31
Section 4.04. Due Dates Other Than the First of the Month....32

ARTICLE V.

GENERAL SERVICING PROCEDURES

Section 5.01. Servicing Compensation....32
Section 5.02. Annual Audit Report....33
Section 5.03. Annual Officer's Certificate....33

ARTICLE VI.

REPRESENTATIONS, WARRANTIES AND AGREEMENTS

Section 6.01. Representations, Warranties and Agreements of the Servicer....34
Section 6.02. Remedies for Breach of Representations and Warranties of the Servicer....35
Section 6.03. Representations and Warranties of the Owner....36

ARTICLE VII.

AGENCY TRANSFER; WHOLE LOAN TRANSFER; PASS-THROUGH TRANSFER

Section 7.01. Removal of Mortgage Loans from Inclusion Under this Agreement Upon an Agency Transfer, a Pass-Through Transfer or a Whole Loan Transfer on One or More Reconstitution Dates....37
Section 7.02. Transfer of Servicing Following Reconstitution....39
Section 7.03. Owner's Repurchase and Indemnification Obligations....40
Section 7.04. Additional Indemnification....41

ARTICLE VIII.

THE SERVICER

Section 8.01. Merger or Consolidation of the Servicer....42
Section 8.02. Limitation on Liability of the Servicer and Others....42
Section 8.03. Limitation on Resignation and Assignment by the Servicer....43

ARTICLE IX.

TERMINATION

Section 9.01. Termination for Cause. ....43
Section 9.02. Termination Without Cause. ....45

ARTICLE X.

MISCELLANEOUS PROVISIONS

Section 10.01. Successor to the Servicer. ....46
Section 10.02. Costs. ....47
Section 10.03. Protection of Confidential Information. ....47
Section 10.04. Notices. ....48
Section 10.05. Severability Clause. ....49
Section 10.06. No Personal Solicitation. ....49
Section 10.07. Counterparts. ....50
Section 10.08. Place of Delivery and Governing Law ....50
Section 10.09. Further Agreements. ....50
Section 10.10. Intention of the Parties. ....50
Section 10.11. Successors and Assigns; Assignment of Servicing Agreement. ....50
Section 10.12. Waivers. ....50
Section 10.13. Exhibits. ....51
Section 10.14. General Interpretive Principles. ....51
Section 10.15. Reproduction of Documents. ....51
Section 10.16. WAIVER OF TRIAL BY JURY ....52
Section 10.17. LIMITATION OF DAMAGES. ....52

EXHIBITS

EXHIBIT A RESERVED
EXHIBIT B CUSTODIAL ACCOUNT LETTER AGREEMENT
CUSTODIAL ACCOUNT CERTIFICATION
EXHIBIT C ESCROW ACCOUNT LETTER AGREEMENT
ESCROW ACCOUNT CERTIFICATION
EXHIBIT D OFFICER'S CERTIFICATE

(c) The execution, delivery and performance of this Agreement by the Owner will not result in any violation of any material contract, instrument or undertaking of the Owner to which the Owner is a party or by which the Owner is bound.

(d) No finder's fees, commissions or other similar payments are or will be required to be paid to any person or entity on account of the transactions contemplated by this Agreement.

(e) The Owner knows of no litigation, claim, proceeding or governmental investigation pending or threatened against the Owner, which, in the opinion of the Owner, may materially and adversely affect the Owner's ability to perform its obligations hereunder.

(f) The Owner is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency in connection with the execution, delivery, performance, validity or enforceability of this Agreement, except such as have been obtained or made.

**ARTICLE VII.**

AGENCY TRANSFER; WHOLE LOAN TRANSFER; PASS-THROUGH TRANSFER

Section 7.01. Removal of Mortgage Loans from Inclusion Under this Agreement Upon an Agency Transfer, a Pass-Through Transfer or a Whole Loan Transfer on One or More Reconstitution Dates.

(a) The Owner and the Servicer agree that with respect to some or all of the Mortgage Loans, from time to time the Owner shall:

(1) Effect an Agency Transfer, and/or

(2) Effect a Whole Loan Transfer, and/or

(3) Effect a Pass-Through Transfer,

in each case retaining the Servicer as the servicer thereof to service the Mortgage Loans on a "scheduled/scheduled" basis. On the related Reconstitution Date, the Mortgage Loans transferred shall cease to be covered by this Agreement, except with respect to the right of the Owner to cause a transfer of the servicing responsibilities with respect to the Mortgage Loans in accordance with Section 7.02 hereof.

(b) The Servicer shall cooperate with the Owner in connection with any Agency Transfer, Pass-Through Transfer or Whole Loan Transfer contemplated by the Owner pursuant to this Section 7.01. In that connection, the Servicer shall:

(i) execute any Reconstitution Agreement within a reasonable period of time after receipt of any Reconstitution Agreement which time shall be sufficient for the Servicer and Servicer's counsel to review such Reconstitution Agreement, but such time shall not exceed ten (10) Business Days after such receipt; in the case of any Agency Transfer, the Reconstitution Agreements shall be those customarily employed by Fannie Mae or Freddie Mac for transactions of such nature. Such Reconstitution Agreement may require the Servicer to remit premium payments with respect to any LPMI Policy to the related insurer;

(ii) to cooperate fully with the Owner, Fannie Mae, Freddie Mac, the trustee or a third party purchaser and any prospective purchaser, at the Owner's expense, with respect to all reasonable requests and due diligence procedures including participating in meetings with rating agencies, Fannie Mae, Freddie Mac, bond insurers, guarantors, loss mitigation advisors and such other parties as the Owner shall designate and participating in meetings with prospective purchasers of the Mortgage Loans or interests therein and providing information contained in the Mortgage Loan Schedule including any diskette or other related data tapes provided as reasonably requested by such purchasers;

(iii) to negotiate and execute one or more loss mitigation advisory agreements between the Servicer and any loss mitigation advisor designated by the Owner in its sole discretion;

(iv) to deliver to the Owner and to any Person designated by the Owner (a) for inclusion in any prospectus or other offering material such publicly available information regarding the Servicer, its financial condition and its mortgage loan delinquency, foreclosure and loss experience and any additional information requested by the Owner, (b) any similar non-public, unaudited financial information (which the Owner may, at its option and at its cost, have audited by certified public accountants) and such other information as is reasonably requested by the Owner and which the Servicer is capable of providing without unreasonable effort or expense, and to indemnify the Owner and its affiliates for material misstatements contained in such information, and (c) such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Servicer pursuant to clause (a) above as shall be reasonably requested by the Owner; and

(v) to provide, on an ongoing basis from information obtained through its servicing of the Mortgage Loans, any information necessary to enable the "tax matters person" for any REMIC in a Pass-Through Transfer, including any master servicer or trustee acting in such capacity, to perform its obligations in accordance with applicable law and customary secondary mortgage market standards for securitized transactions.

(c) The Servicer shall provide to the Owner or issuer, as the case may be, and any other participants in such Agency Transfer, Whole Loan Transfer or Pass-Through Transfer,

(i) any and all information with respect to itself, its servicing portfolio or the Mortgage Loans and appropriate verification of information which may be reasonably available to the Servicer, whether through letters of its auditors and counsel or otherwise, as the Owner or any such other participant shall reasonably request and (ii) such additional representations, warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Servicer as are reasonably believed necessary by Fannie Mae, Freddie Mac, the trustee, such third party purchaser, any master servicer, any Rating Agency or the Owner, as the case may be, in connection with such transactions.

(d) To the extent required by the applicable Reconstitution Agreements or otherwise requested by the Owner in connection with a Reconstitution, the Servicer shall prepare Assignments of Mortgage in form and substance acceptable to Fannie Mae, Freddie Mac, the trustee or such third party, as the case may be, for each Mortgage Loan that is part of a Reconstitution. The Servicer shall execute each Assignment of Mortgage, track such Assignments of Mortgage to ensure they have been recorded and deliver them as required by Fannie Mae, Freddie Mac, the trustee or such third party, as the case may be, upon the Servicer's receipt thereof. The Owner shall pay all pre-approved, reasonable and necessary fees associated with the preparation, recording and tracking of such Assignments of Mortgage.

All Mortgage Loans not sold or transferred pursuant to an Agency Transfer, Pass-Through Transfer or Whole Loan Transfer and any and all Mortgage Loans repurchased by the Owner pursuant to Section 7.03 below with respect to an Agency Transfer, Pass-Through Transfer or Whole Loan Transfer shall be subject to this Agreement and shall continue to be serviced in accordance with the terms of this Agreement and with respect thereto this Agreement shall remain in full force and effect.

Section 7.02. Transfer of Servicing Following Reconstitution.

Following a Reconstitution of Mortgage Loans, the Owner or its designee (which may include the master servicer, trustee, insurer, guarantor or certificateholders) shall have the right, in its sole discretion, to cause the Servicer at any time under any Reconstitution Agreement to transfer the servicing responsibilities and duties with respect to some or all of the Mortgage Loans serviced thereunder to the Owner or any designee of the Owner; provided, however, that the Owner shall provide the Servicer with 30 days prior written notice, and provided further that such transfer shall be subject to the approval of Fannie Mae or Freddie Mac, as the case may be, with respect to Agency Transfers, the trustee, master servicer or Rating Agency with respect to Pass-Through Transfers or any relevant third party purchaser with respect to Whole Loan Transfers. No termination fee or Deboarding Fee shall be paid or payable for any Mortgage Loans with respect to which any payment is more than 90 days past due as of the date of such termination. The Servicer agrees to cooperate with the Owner in such transfer of servicing responsibilities and shall comply with the termination procedures set forth in Sections 9.01 and 10.01 hereof.

Section 7.03. Owner's Repurchase and Indemnification Obligations.

Upon receipt by the Servicer of notice from Fannie Mae, Freddie Mac or other such third party purchaser of a breach of any Owner representation or warranty contained in any Reconstitution Agreement or a request by Fannie Mae, Freddie Mac, the trustee or such third party purchaser, as the case may be, for the repurchase of any Mortgage Loan transferred to Fannie Mae or Freddie Mac pursuant to an Agency Transfer or to a trustee pursuant to a Pass-Through Transfer or to a third party purchaser pursuant to a Whole Loan Transfer, the Servicer shall promptly notify the Owner of same and shall, at the direction of the Owner, use its commercially reasonable efforts to cure and correct any such breach and to satisfy the requests or concerns of Fannie Mae, Freddie Mac, the trustee or the third party purchaser related to such deficiencies of the related Mortgage Loans transferred to Fannie Mae, Freddie Mac, the trustee or other such third party purchaser.

The Owner shall repurchase through payment to the Servicer any Mortgage Loan transferred to Fannie Mae or Freddie Mac pursuant to an Agency Transfer or to a trustee pursuant to a Pass-Through Transfer or to a third party purchaser pursuant to a Whole Loan Transfer with respect to which the Servicer has been required by Fannie Mae, Freddie Mac, the trustee or such third party purchaser to cause the Owner to repurchase such Mortgage Loan due to a breach of a representation or warranty made by the Owner with respect to the Mortgage Loans, or the servicing thereof prior to the transfer date to Fannie Mae, Freddie Mac, the trustee or any third party purchaser in any Reconstitution Agreement and not due to a breach of the Servicer's obligations thereunder or pursuant to this Agreement. The repurchase price to be paid by the Owner to the Servicer shall equal that repurchase price to be remitted by the Servicer to Fannie Mae, Freddie Mac, or the third party purchaser plus all reasonable costs and expenses borne by the Servicer in connection with the cure or attempted cure of said breach of a representation or warranty made by the Owner and in connection with the repurchase of such Mortgage Loan from Fannie Mae, Freddie Mac, the trustee or the third party purchaser, including, but not limited to, reasonable and necessary attorneys' fees.

At the time of repurchase, the Custodian and the Servicer shall arrange for the reassignment of the repurchased Mortgage Loan to the Owner according to the Owner's instructions and the delivery to the Custodian of any documents held by Fannie Mae, Freddie Mac, the trustee or other relevant third party purchaser with respect to the repurchased Mortgage Loan pursuant to the related Reconstitution Agreement. In the event of a repurchase, unless otherwise specified by the Owner, the Mortgage Loan Schedule shall be deemed to have been amended to reflect the addition of the repurchased Mortgage Loan to this Agreement. In connection with any such addition, the Servicer and the Owner shall be deemed to have made as to such repurchased Mortgage Loan the representations and warranties set forth in this Agreement except that all such representations and warranties set forth in this Agreement shall be deemed made as of the date of such repurchase.

Section 7.04. Additional Indemnification.

(a) The Servicer shall indemnify the Owner and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses (collectively, the "Liabilities") that the Owner may sustain in any way related to the failure of the Servicer to perform its duties and service the Mortgage Loans in accordance with the terms of this Agreement or any Reconstitution Agreement entered into pursuant to Section 7.01. The Servicer shall immediately notify the Owner if a claim is made by a third party with respect to this Agreement or any Reconstitution Agreement or the Mortgage Loans, that may result in such Liabilities, and the Servicer shall assume (with the prior written consent of the Owner) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Owner in respect of such claim and follow any written instructions received from the Owner in connection with such claim. The Owner promptly shall reimburse the Servicer for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Servicer's indemnification pursuant to Section 6.02, or the failure of the Servicer to service and administer the Mortgage Loans in accordance with the terms of this Agreement or any Reconstitution Agreement. In the event a dispute arises between the Servicer and the Owner with respect to any of the rights and obligations of the parties pursuant to this Agreement, and such dispute is adjudicated in a court of law, by an arbitration panel or any other judicial process, then the losing party shall indemnify and reimburse the winning party for all attorney's fees and other costs and expenses related to the adjudication of said dispute.

(b) The Owner shall indemnify the Servicer and hold it harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Servicer may sustain in any way related to (i) any breach by the Owner of any of its obligations or representations or warranties in this Agreement, (ii) any material errors or unlawful acts or omissions in connection with the origination of any Mortgage Loan, (iii) the servicing of any Mortgage Loan prior to the related Transfer Date, or (iv) the Servicer's inability to service a Mortgage Loan properly to the extent such inability was due solely to the fact that the Owner did not deliver to the Servicer one or more documents that were reasonably necessary to enable the Servicer to service such Mortgage Loan properly; *provided*, that within 60 days following the related Transfer Date for such Mortgage Loan, the Servicer shall have notified the Owner in writing that such document(s) were not delivered to the Servicer and that such document(s) were reasonably necessary to enable the Servicer to service the Mortgage Loan properly. The party receiving notice thereof shall promptly notify the other if a claim that the Owner is obligated to indemnify the Servicer against hereunder is made by a third party with respect to this Agreement or the Mortgage Loans, and the Owner shall assume (with the prior written consent of the Servicer) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Servicer in respect of such claim and follow any written instructions received from the Servicer in connection with such claim. In the event a dispute arises between the Owner and the Servicer with respect to any of the rights and obligations of the parties pursuant to this Agreement, and

such dispute is adjudicated in a court of law, by an arbitration panel or any other judicial process, then the losing party shall indemnify and reimburse the winning party for all attorney's fees and other costs and expenses related to the adjudication of said dispute.

## ARTICLE VIII.

## THE SERVICER

Section 8.01. Merger or Consolidation of the Servicer.

Subject to the following paragraph, the Servicer shall keep in full effect its existence, rights and franchises as a federal savings bank, and shall obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which the Servicer may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Servicer shall be a party, or any Person succeeding to the business of the Servicer, shall be the successor of the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding, provided, however, that the successor or surviving Person shall be an institution (i) having a net worth of not less than $25,000,000, and (ii) which is a Fannie Mae- and Freddie Mac-approved servicer in good standing.

Section 8.02. Limitation on Liability of the Servicer and Others.

Neither the Servicer nor any of the directors, officers, employees or agents of the Servicer shall be under any liability to the Owner for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment, provided, however, that this provision shall not protect the Servicer or any such person against any breach of warranties or representations made herein, or failure to perform its obligations in accordance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. The Servicer and any director, officer, employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its opinion may involve it in any expense or liability; *provided*, *however*, that the Servicer may, with the consent of the Owner, undertake any such action which it may deem necessary or desirable in respect of this Agreement and the rights and duties of the parties hereto. In such event, the Servicer shall be entitled to reimbursement from the Owner for the reasonable legal expenses and costs of such action.

**Maren Ludwig**

**From:** Maglio, Robert <IMCEAEX-_O=OCWEN_OU=FIRST+20ADMINISTRATIVE+20GROUP_CN=RECIPIENTS_CN=MAGLIOR@ocwen.com>
**Sent:** Monday, October 13, 2008 10:17 AM
**To:** Kettle, Karen; Miller, Johnna; Marvel, Denise
**Cc:** Thomas, Kristen; Simmons, Christopher
**Subject:** FW: Lehman Whole Loan Preferred FC Action and Titling
**Attachments:** Ocwen LBHI and LBB Loans (3).xls

**Importance:** High

Good Morning,

Aurora is asking OCWEN to change our FC action name (**foreclosure in the name of LBHI**) on Lehman wholly owned loans due to the Lehman BK.

Additionally, they would like OCWEN to (**take title in the name of LBHI for all LBHI owned assets**) on Lehman wholly owned loans.

Attached is a list of the loans that Aurora has identified that have differentiating ownership as of September 15, 2008.

Should I coordinate a call with Aurora to discuss this request? Thanks

| Investor Number | LEHMAN BROTHERS (LBHI) | LEHMAN BROTHERS BANK FSB | Total |
|---|---|---|---|
| 2288 | 192 | | 192 |
| 2324 | 30 | | 30 |
| 2507 | 1 | | 1 |
| 351 | 195 | 12 | 207 |
| 366 | 7 | | 7 |
| 588 | 1 | | 1 |
| Total | 426 | 12 | 438 |

---

**From:** Goldman, Christal R [redacted]
**Sent:** Friday, October 10, 2008 6:55 PM
**To:** Maglio, Robert
**Cc:** Investor Requests; Darden, Emily D; Lenhart, Deborah
**Subject:** Lehman Whole Loan Preferred FC Action and Titling
**Importance:** High

Rob:

We are asking our Servicers to modify their process as it relates to foreclosure action on Lehman owned loans.

Lehman had preferred Servicers to foreclose in their own name on Lehman wholly owned loans. However, if the Servicer's business decision was not to foreclose in their own name and as long as allowed by all applicable rules and regulations, they were to foreclose in the name of Lehman Brothers Holdings Inc. (LBHI) and bid at the foreclosure sale and take title in the name of RAM Holdco LLC rather than the entity of PAMI. Lehman requested Servicers to implement this change immediately.

**In light of the recent bankruptcy filing by LBHI, we now must reach out to all Servicers to advise that effective immediately, all Servicers must initiate the foreclosure action in the name of LBHI as well as take**



EXHIBIT
tabbies
D

**title in the name of LBHI for all LBHI owned assets. Attached is a list of the loans differentiating ownership as of September 15, 2008.**

The following are answers to potential scenarios that might present themselves:

- Foreclosure initiated in the name of any other entity than LBHI will require a Transfer Deed to be executed without causing undue delay. If the FC sale has not yet been held, one option would be to bid at the sale as LBHI, resulting in taking title as LBHI.
- REO asset held in the name of any other entity than LBHI will also require a Transfer Deed to be executed without causing undue delay.

**However, please be advised that if the whole loan is a Lehman Brothers Bank (LBB) asset rather than an LBHI asset, you should initiate foreclosure in the name of LBB as well as take title in the name of LBB.**

Should the loan be a government loan, you can continue to proceed under the standard guidelines.

We apologize for any inconvenience and we appreciate your prompt attention to implementing this process change.

Should you have any questions, please feel free to contact Deb Lenhart, Emily Darden, or myself directly.

Christal R. Goldman
Master Servicing - Default Advisory/High Risk
Aurora Loan Services LLC
10350 Park Meadows Drive
Littleton, Colorado 80124
Phone: 720-945-4745 Fax: 720-945-5420
E-mail: [redacted]

---

This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of any offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Aurora Loan Services LLC. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice.

-------------------------- This message is intended only for the personal and confidential use of the designated recipient(s) named. If you are not the intended recipient of this message, you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Aurora Loan Services. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice.