KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9210
Facsimile: (212) 715-8000
Juliana Oliveira
Joshua Friedman

*Counsel to Windermere Private Placement I S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X
In re                                                                    :   Chapter 11 Case No.
                                                                         :
    LEHMAN BROTHERS HOLDINGS INC., et al.,                         :   08-13555 (JMP)
                                                                         :
                      Debtors.                                            :   (Jointly Administered)
------------------------------------------------------------------------ X

**RESPONSE OF WINDERMERE PRIVATE PLACEMENT I S.A.**
**TO DEBTORS' ONE HUNDRED EIGHTY-SECOND OMNIBUS OBJECTION**
**TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

        Windermere Private Placement I S.A. ("Windermere") by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' One Hundred Eighty-Second Omnibus Objection to Claims (Valued Derivative Claims), dated August 19, 2011 (the "Objection").  In support of this response, Windermere respectfully states as follows:

**BACKGROUND**

        1.    Windermere and Lehman Brothers Special Financing Inc. ("LBSF") entered into that certain 1992 ISDA Master Agreement (Multicurrency-Cross Border), dated March 30, 2006 (including the Schedule and any amendments thereto, the "Master Agreement").[1]

---

[1] Pursuant to the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution

1

2. Pursuant to the terms of the Master Agreement, Lehman Brothers Holding Inc. ("LBHI") served as Credit Support Provider to LBSF.[2] On March 30, 2006, LBHI executed a guarantee (the "Transaction Guarantee"), unconditionally guaranteeing the obligations of LBSF in connection with the Transaction. In addition, LBHI, acting through the Executive Committee of its Board of Directors, guaranteed all obligations of LBSF (together with the Transaction Guarantee, the "Guarantee").

3. Beginning on September 15, 2008 and periodically thereafter, LBHI, LBSF and certain of their affiliates (collectively, the "Debtors") commenced voluntary cases under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures.

4. LBSF's chapter 11 filing constituted an Event of Default under the Master Agreement, which, pursuant to Section 6(a) of the Master Agreement, entitled Windermere as the Non-defaulting Party to designate an Early Termination Date, by which all outstanding transactions under the Master Agreement would be terminated. As a result, in the exercise of its rights under Section 6(a) of the Master Agreement, on July 13, 2009, Windermere delivered to LBSF a notice terminating all outstanding transactions under the Master Agreement and designating July 13, 2009 as the Early Termination Date (the "Termination Notice").

5. Windermere subsequently delivered to LBSF, pursuant to Section 6(d) of the Master Agreement, a statement of calculations (the "Calculation Statement"), which included a

---

Procedures for Claims Against Debtors, dated April 19, 2010, all of the information Windermere submitted in connection with the Proofs of Claim and Questionnaires are part of the record, and Windermere need not resubmit them in connection with this Response.

[2] Capitalized terms used herein and not otherwise defined have the meanings given to them in the Master Agreement.

2

calculation in the amount of EUR 1,996,034 owed by LBSF to Windermere in respect of the terminated transactions. Consistent with the terms of the Master Agreement, the Calculation Statement set forth the amount payable upon termination (the "Termination Amount"): (i) the Settlement Amount of the Terminated Transactions, determined under the Market Quotation methodology, as more fully explained below, plus (ii) unpaid amounts owing to the Non-defaulting Party from the Defaulting Party less (iii) unpaid amounts owing to the Defaulting Party from the Non-defaulting Party. In addition, Windermere claimed payment of its out-of-pocket costs and expenses pursuant to section 11 of the Master Agreement, while reserving the right to claim payment of additional out-of-pocket costs and expenses incurred in connection with the enforcement and protection of its rights under the Master Agreement or in connection with early termination.

6.      On July 2, 2009, the Bankruptcy Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order"). The Bar Date Order established September 22, 2009 as the deadline to file proofs of claims (the "Bar Date").

7.      Pursuant to the Bar Date Order, on or about September 22, 2009, Windermere timely filed (a) a proof of claim against LBSF (Claim No. 34227) seeking recovery under the Master Agreement in an amount no less than $2,786,463.46 (the "LBSF Claim") and (b) a proof of claim against LBHI (Claim No. 34226) seeking recovery under the Guarantee in an amount no less than $2,786,463.46 (the "LBHI Claim"; together with the LBSF Claim, the "Windermere Claims"). Consistent with the requirements of the Bar Date Order, Windermere filed additional

3

supporting facts and materials in connection with their submission of the derivative and guarantee questionnaires (together, the "Questionnaires").[3]

8.  Subsequent to the filing of the Windermere Claims and the completion of the Questionnaires, the Debtors and Windermere have engaged in discussions in order to resolve their differences regarding the amount of the Windermere Claims. At the request of the Debtors, Windermere has provided additional supporting information regarding its claim calculations.

9.  On August 19, 2011, the Debtors filed the Objection. The Debtors state in the Objection that the Windermere Claims should be reduced on the basis that the "asserted claim amount is greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records." (Objection at ¶¶ 5-6).

10. Based on only the Debtors' assertion, and no further evidence, the Debtors seek to reduce each of the LBSF Claim and the LBHI Claim from $2,786,463.46 to $176,780.87 (the "Debtors' Modified Claim Amounts").

**ARGUMENT**

11. It is well-settled law that the Windermere Claims are presumptively valid. By putting forward no evidence whatsoever in support of their Objection, the Debtors have not even attempted to satisfy their burden of persuasion that the Claims should be reduced. In fact, there is no compelling evidence that the Debtors could have proffered in support of their Objection. All of the information and documentation filed in support of the Windermere Claims demonstrate that Windermere calculated the Termination Amount in a fair, accurate and reasonable manner, consistent with the terms of the Master Agreement. Accordingly, the Court

---

[3] Consistent with its rights to collect additional expenses, including attorneys' fees, in connection the enforcement and protection of its rights under the Master Agreement, Windermere anticipates amending the Windermere Claims to seek reimbursement for costs that have accrued since their original filing.

4

should deny the Debtors' Objection and allow the Windermere Claims against each of LBSF and LBHI in the amount of $2,786,463.46.

A. **The Debtors Have Failed to Rebut the Validity of the Windermere Claims**

12. Notwithstanding the Debtors' gross mischaracterization of the applicable burden of proof, a properly filed proof of claim is prima facie evidence of that claim. See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). In other words, "If proper objection is made, the objecting party has the burden of presenting evidence sufficient to overcome the *prima facie* validity of the claim." Lawrence P. King, Collier on Bankruptcy, ¶ 501.02[3][d] (15th ed. rev. 1986). Although the Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim", (Objection ¶ 5, citing In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd, sub nom. Solomon v. Oneida Ltd., No. 09/Civ. 2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)), Oneida itself states that "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." 400 B.R. at 389 (emphasis added)(citations omitted). As such, the burden of proof would only shift to Windermere if the Debtors had produced "'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" Id. (citations omitted).

13. Far from having satisfied this burden, the Objection appears to be an unsubstantiated attempt by the Debtors to extract significant, unjustified reductions to Windermere's valid, timely and properly filed proofs of claims. The Debtors have not produced

5

any specific information regarding the Windermere Claims, let alone information sufficient to shift the burden of proof to Windermere. The Debtors' unsubstantiated and vague assertion that the claims are not reasonable based on a review of supporting documentation and the Debtors' internal books and records is not evidence in equal force to the substantial evidence provided in support of the Windermere Claims. On this basis alone, the Objection should be overruled.

> **B.** **The Windermere Claims are Supported by the Master Agreement**

14. The Windermere Claims properly reflect Windermere's claims arising under the Master Agreement and the Guarantee. Windermere, as the Non-defaulting Party, was the appropriate party to determine the Termination Amount under the Master Agreement. See Master Agreement, Section 6(a). The Debtors' attempt to impose the Modified Claim Amounts as the amount due under the Master Agreement contravenes the Master Agreement's clear terms that it is Windermere, as the Non-defaulting Party – and not LBSF, as the Defaulting Party – that is entitled to determine the Termination Amount. In this regard, the very posture of the Objection – that the Debtors may substitute their own judgment as to what is the proper amount due under the Master Agreement for that of Windermere as the Non-defaulting Party – is fallacious.

15. Moreover, the Windermere Claims amply demonstrate that the Termination Amount was fair, reasonable and consistent with the provisions of the Master Agreement. In proper application of the Market Quotation methodology, Windermere obtained three quotations to enter into replacement transactions, as of the applicable Early Termination Date. The Settlement Amount was then determined by reference to the median price quote of the three quotations. See id. ("If exactly three such quotations are provided, the Market Quotation [is] the quotation remaining after disregarding the highest and lowest quotations"). Windermere's

6

service of the Termination Notice as well as the Calculation Statement, which also reflected Windermere's right to recover all reasonable out-of-pocket expenses (including legal fees) was timely and proper in all respects.

16. In sum, the Windermere Claims are well-supported and present a clear and accurate case for the Termination Amount, i.e., the amount owed under the Master Agreement and Guarantee. The Debtors have not satisfied their burden of proof in objecting to the Windermere Claims, and, even if they had, the evidence provided by Windermere would have been sufficient to overcome the burden-shifting. Accordingly, the Objection should be denied and the Windermere Claims should be allowed in full.

## **RESERVATION OF RIGHTS**

17. To the extent this Court finds that Windermere has not met its burden of proof regarding the Windermere Claims and does not overrule the Objection, Windermere reserves the right to: (i) seek discovery from the Debtors regarding the Debtors' valuation of the Windermere Claims; (ii) supplement or amend the Response; and (iii) request a full evidentiary hearing pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amount of the Windermere Claims.

[The remainder of this page intentionally has been left blank.]

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Windermere respectfully requests that this Court deny the Debtors' Objection as to the Windermere Claims, allow the Windermere Claims in the amount of $2,786,463.46 against each of LBSF and LBHI, and grant such other relief as this Court deems just and proper.

Dated: New York, New York
September 20, 2011

          Respectfully submitted,

          Kramer Levin Naftalis & Frankel LLP

          By:  */s/* Juliana Oliveira
                Juliana Oliveira
                Joshua Friedman
          1177 Avenue of the Americas
          New York, New York 10036
          Telephone: (212) 715-9489
          Fax: (212) 715-8000

          *Counsel to Windermere Private Placement I S.A.*