Hearing Date and Time: October 5, 2011 at 10:00 a.m. (prevailing Eastern time)
Response Deadline: September 20, 2011 at 4:00 p.m. (prevailing Eastern time)

A. James Boyajian, Esq.
Law Office of A. James Boyajian
355 S. Grand Avenue, Ste. 2450
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile:  424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, ) | Case No. 08-13555 (JMP) |
| ) | **Jointly Administered** |
| Debtors. ) | |

**RESPONSE OF PRIORITY CLAIMANT JEFFERY K. WARDELL (CLAIM # 24545) OPPOSING "DEBTORS' ONE HUNDRED SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)"**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Jeffery K. Wardell ("Priority Claimant") hereby responds in opposition to "Debtors' One Hundred Seventy-Sixth Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interests)," filed on 8/19/2011 ("Debtors' Objection") by Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-captioned cases (collectively, the "Debtors"). Priority Claimant is an individual who timely filed two separate proofs of claim against Debtor LBHI in the above-captioned cases, including a claim for $50,638.80 related to prepetition services he performed as a Senior Vice President ("SVP") employee of LBHI in their San Francisco office ("Claim #24545").

This response is filed in preparation of the hearing set for 10/5/2011 (10:00 A.M. Eastern Time) in this Court, and pursuant to §§ 501, 502, and 507 of the United States Bankruptcy Code ("Bankruptcy Code"), Rules 3001, *et. seq.,* and 7001, *et. seq.*, of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), General Orders M-182 and M-399, and the Second Amended Case Management Order [Docket #9635] ("Second Amended Order"). Priority Claimant respectfully represents as follows:

### Relief Requested

1.  Priority Claimant asks this Court to overrule Debtors' Objection only as to his Claim #24545 and to deny its reclassification as an equity interest for the following reasons.

2.  Restricted Stock Units ("RSUs") were not granted to Priority Claimant in exchange for the aggregate $50,638.80 (the "Amount") deducted and withheld from his paychecks. The Amount is wages Priority Claimant earned for prepetition services he already performed for Debtor LBHI, but which LBHI deducted from in various monthly increments for the purpose of granting RSUs pursuant to their employment contract and "2008 Equity Award Plan." LBHI breached the employment contract when it failed to perform in granting the promised RSUs. Claim #24545 for the Amount cannot possibly be an equity interest because Priority Claimant received neither the promised RSUs nor any equity in LBHI. Debtors cite no authority that requires classifying undistributed RSUs as equity. Therefore, Priority Claimant has a legal and equitable right to a payment in the Amount under §101(5) of the Bankruptcy Code.

3.  Claim #24545 is correctly classified as a priority claim under §507(a). The Amount was withheld as a contribution to an employee benefit plan arising from services rendered. While the Bankruptcy Code would allow other reclassifications such as §507(a)(4)

"fourth priority" status and general unsecured status, Claim #24545 is most accurately classified as a §507(a)(5) "fifth priority" claim and must be maintained as such.

4. Even if the RSUs had been granted to Priority Claimant as contractually promised, Debtors' Objection should be denied because the RSUs would not have been vested when Debtors filed their petition for bankruptcy in the above-captioned cases. Unvested RSUs do not constitute any equity interest in a corporation. RSUs are different from equity interests such as common stock, preferred stock, phantom stock, warrants and stock options because RSUs have a high risk of forfeiture prior to vesting any ownership stake in the company. Debtors' Objection does not cite any authoritative statute or case law which requires classifying RSUs as equity interests. Claim #24545 would therefore still be entitled to a priority status.

5. Any amounts falling outside priority status should be reclassified as general unsecured claims, since under no circumstance can unvested RSUs (whether granted or not) be appropriately characterized as equity.

6. Finally, Claim #24545 should proceed as a priority claim in the above captioned cases because to reclassify it as a subordinated equity interest would render an unfair and unjust result that contradicts the Bankruptcy Code's strong preference for protecting employees.

## Jurisdiction

6. This Court has proper jurisdiction to consider and determine a resolution to this matter pursuant to 28 U.S.C. §§ 157 and 1334, because this is a "core proceeding" which will affect ultimate administration of and distributions from Debtors' bankruptcy estate.

## Background

7. Priority Claimant was employed as a SVP at LBHIs' San Francisco office for over seven years, from April 6, 2001 to September 17, 2008 (Exhibit 1 ¶ 2).

8.    Under their employment contract, Debtor LBHI was to pay Priority Claimant "cash commissions and RSUs" in exchange for his services (<u>Exhibit 1A</u>). As an SVP, Priority Claimant was enrolled in the LBHI "Employee Incentive Plan," which was given only to "selected officers, employees, consultants and directors of Holdings and its subsidiaries" (<u>Exhibit 1B</u>). Various amounts were thereafter withheld from his paychecks to grant him RSUs.

9.    Throughout his employment, Priority Claimant received cash compensation, RSUs, as well as equity interests in Lehman Brothers such as common stock and stock options. However, he did not receive a grant or distribution of the promised RSUs for the payroll Amount withheld for the months of 12/2007 to 08/2008 as promised under the 2008 Equity Award Program, totaling $50,638.80 (<u>Exhibit 1</u>, ¶¶ 5-13).

10.    Debtors, including Priority Claimant's employer LBHI, commenced these Chapter 11 bankruptcy cases on Monday, 9/15/2008; Priority Claimant handed in his resignation and exited the office building with all of his personal effects two days later on 9/17/2008 (<u>Exhibit 1</u>, ¶¶ 3-4).

11.    The RSUs promised in exchange for the Amount were neither granted to nor received by Priority Claimant when LBHI filed for Chapter 11 bankruptcy (<u>Exhibit 1</u>, ¶¶ 9, 13).

12.    In early September 2009, Priority Claimant was provided with blank "proof of claim" forms by Epiq Bankruptcy Solution, LLC ("Epiq") and instructed to file any claims he had against Debtors (<u>Exhibit 1</u>, ¶10). He immediately filed two proofs of claim, on September 13 and 14, 2009, against LBHI for unpaid wages, salaries, and commissions as well as unpaid contributions to an employee benefit plan. (<u>Exhibit 1</u>, ¶11).

13.    To date, Debtor LBHI has failed to both pay Priority Claimant for debts owed in unpaid employee compensation and reimburse him the withheld payroll Amount of $50,638.80

4

for which it never issued RSUs as contractually obligated under the "2008 Equity Awards Plan" (Exhibit 1, ¶¶ 6, 12).

## Claim #24545 is a Valid Claim

14.     The Amount in Claim #24545 is for prepetition financial services Priority Claimant rendered as an employee for LBHI. Debtor LBHI deducted the Amount from his wages for the contractual purpose of granting RSUs under its "2008 Equity Award Plan." But LBHI failed to grant the RSUs. This constitutes a breach of contract, a violation of the New York Labor Law,[1] and a breach of fiduciary duties.[2] Since those RSUs were never distributed or credited to Priority Claimant, Claim #24545 is properly classified as a valid "claim."

15.     This Court should deny Debtors' Objection as to Claim #24545 because (A) Debtors' Objection misunderstands it, (B) it is a valid "claim" since the RSUs were never granted, and (C) it is properly classified as a "priority claim" under § 507(a).

---

[1] Any employer who fails to pay the wages of its employees is liable to a civil penalty of a specified amount for each such failure, to be recovered by the commissioner of labor in a civil action. NY Lab. Law 197. An employer may not make any deduction from the wages of an employee, except deductions which are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or are expressly authorized in writing by the employee and are for the benefit of the employee. NY Lab. Law 193(1). Priority Claimant never agreed to the withholding of these amounts if RSUs would not be issued. An account executive employed by a securities and commodities brokerage firm, who exercised independent judgment in determining which customers to solicit and the extent to which he should advise them and accept their order to buy and sell, but who did not assume the "risk of loss," is an employee entitled to the protection of N.Y. Lab. Law 193, which prohibits deductions from an employee's wages not authorized by law or in writing by the employee and for the benefit of the employee; the account executive falls within definition of a commission salesman (NY Lab Law 190(6)) entitled to protection since the exclusion from subdivision 6 of an employee whose principal activity is of a supervisory, managerial, executive, or administrative nature is inapplicable to an account executive who has not assume the "risk of loss." Dean Witter Reynolds, Inc. v. Ross, 75 A.D.2d 373 (1st Dep't 1980). Moreover, the employer cannot make any charge against wages or require an employee to make any payment by separate transaction unless such charge or payment constitutes a permissible deduction. Such authorized deductions are limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for US bonds, payment for dues or assessments to a labor organization, and similar payments for the benefit of the employee. NY Lab. Law 193(1)(b). Notice that this list does not include payroll deductions for granting restricted stock units at a later time. In addition to any other penalty or punishment otherwise prescribed by law, any employer who is a party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within 30 days after such payments are required to be made, is guilty of a misdemeanor. NY Lab. Law 198-a3.

[2] If an employer accepts employee contributions to a welfare benefit plan and uses that cash (which is a plan asset) to pay expenses not related to the plan, the plan fiduciary may be found to have breached his or her fiduciary duties to act solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and beneficiaries. See ERISA 404(a)(1), 29 USC 1104(a)(1); Phaler, 517 F.3d 816. The plan fiduciary may have also engaged in a prohibited transaction under the IRC and ERISA.

5

A. <u>Debtors' Objection Misunderstands Claim #24545</u>

16. The inclusion of Claim #24545 in Debtors' Objection as one of the "Equity Awards"[3] is a mischaracterization. While the RSUs were to be granted under the "2008 Equity Award Plan," they were not granted and are nonexistent. Claim #24545 is therefore improperly grouped with other claims for which reclassification as equity may be appropriate.

17. Debtors' Objection equivocates between distributed and undistributed interests. "The Equity Awards provided grantees with a right to acquire common stock in LBHI upon satisfaction of certain conditions precedent, similar to stock options or the right to exercise stock options." (Debtors' Objection, ¶ 14). This ignores the fact that undistributed RSUs do not exist and thus cannot confer any right to acquire common stock in LBHI.

18. Debtors' Objection mentions undistributed interests only once and without giving any justification based on statutory or case law authority: "Certain of the Equity Awards were distributed or vested, while others were not distributed or unvested." (Debtors' Objection, ¶ 2). Debtors fail to explain *why* and on *what basis* undistributed restricted stock units are equity interests. None of the authorities Debtors cite[4] provides a legal basis to reclassify undistributed RSUs as equity interests.[5]

---

[3] Debtors' Objection unfairly lumps together many unrelated types of claims. "The proofs of claim listed on Exhibit A annexed hereto (collectively, the "Compensation Claims") were filed by current and/or former employees of the Debtors and/or their affiliates on the basis of either restricted stock units, contingent stock awards, stock options, or other equity-related compensation (together, the "Equity Awards")." Debtors' Objection, ¶ 2.

[4] Debtors' Objection ¶ 13 states: "Courts have interpreted the definition of equity security to include a range of stock-based transactions, including transactions based on a right to acquire stock, such as stock options and stock assignments. *E.g., In re Enron Corp.*, 341 B.R. 141, 162 (Bankr. S.D.N.Y. 2006) (holding that a phantom stock purchase program where delivery of shares was deferred for tax purposes qualified as a "security" under the Bankruptcy Code); *see also In re Baldwin-United Corp.*, 52 B.R. 549, 552 (Bankr. S.D. Ohio 1985) (holding that claims to exercise stock option portion of plan were equity security interests for purposes of determining priority)."

[5] In In re Wireless Corporation, Inc. 384 B.R. 713, 718 (Bankr. D. Del. 2008); In re Med Diversified Inc., 461 F.3d 251, 256 (2d Cir. 2006); In re Touch Am. Holding, Inc., 381 B.R. 95, 104 (Bankr. D. Del. 2008); Enron, 341 B.R. at 150. None of these cases cited by Debtors address undistributed RSUs or similar promised but nonexistent interests. *See also*, In re Marketxt Holdings Corp., 361 B.R. 369 (Bankr. S.D.N.Y., 2007) (Denying subordination based on 510(b) because it would go beyond the plain text of that statute).

6

19. Debtors' argument that subordination agreements require reclassification[6] does not apply to Claim #24545. Priority Claimant is unaware of any subordination provision in the LBHI "2008 Equity Awards Plan" policy he received from LBHI (<u>Exhibit</u> 1C). Debtors' Objection does not cite any such subordination provision in that plan. Even if there is such a provision, and even if it applies to unvested RSUs, it could not possibly subordinate RSUs which do not exist.

B. <u>Valid "Claim" Where LBHI Failed to Grant the RSUs</u>

20. Priority Claimant timely and accurately filed Claim #24545 on September 14, 2009. (See <u>Exhibit</u> 1, ¶11). Because Debtor LBHI failed to grant the RSUs after deducting the Amount from Priority Claimant's prepetition wages, Priority Claimant has a right to a reimbursement payment and therefore a valid claim.

21. A claim is valid if it gives right to a payment, whether by law or in equity. The Bankruptcy Code defines "claim" a "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."[7] Whereas, an "equity security" includes a share in a corporation or similar "security," including "stock, "treasury stock," "other claim or interest commonly known as 'security,'" "certificate of interest or participation in," and "warrant or right

---

[6] "Subordination Provisions Present in Certain of the Agreements Are Enforceable Pursuant to Bankruptcy Code Section § 510(a)." Debtors Objection, ¶ B.
[7] 11 U.S.C. §101(5); *See* Debtors' Objection, ¶ 12.

7

to subscribe to or purchase or sell, a security."[8] Under §510(b), a claim for damages arising from the purchase or sale of a security shall have the same priority as the security.[9]

22.     Claim #24545 cannot properly be classified as an equity interest under the Bankruptcy Code. Undistributed RSUs in lieu of cash wages, salaries, or commissions neither equate to a "share in a corporation" nor fit the definition of a "security" under the Securities Act of 1933 or any other controlling definition.[10] Moreover, an RSU is not a "security" or equity interest simply because it contains the word "stock."[11] Stocks are securities if they feature four traditional characteristics: dividends conditioned on an apportionment of profits, subjection to pledge, voting rights proportional to number of shares owned, and possibility of appreciation in value. Further, a stock that does not meet these traditional characteristics may still be a "security" if it fulfills the "investment contract" analysis under *Howey* and its progeny.[12] Under the *Howey* test, any interest that "involves an investment of money in a common enterprise with profits to come solely from the efforts of others" is an investment contract and thus a "security."[13] The undistributed RSUs at issue here neither fulfill the traditional characteristics of a "stock" security nor fulfill the *Howey* test requirements for an "investment contract" security since there were no dividends, voting rights, possibility of appreciation in value, or profits from the sole efforts of others (i.e., Priority Claimant was contributing to those efforts as an employee). Lastly, because there was no transaction of the RSUs, the damages in Claim #24545 do not arise from the "purchase or sale of a security" for purposes of §520(b) subordination.

---

[8] 11 U.S.C. §§ 101(16) and 101(49)(A); *See* Debtors' Objection, ¶ 12.
[9] 11 U.S.C. § 510(b); *See* Debtors Objection, ¶ 18.
[10] *See*, *e.g*., SEC No-Action Letter regarding Facebook issuance of RSUs. Available at: http://sec.gov/divisions/corpfin/cf-noaction/2008/facebook101408-12gh.htm (last visited 9/20/2011).
[11] *See*, *e.g*., *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975).
[12] *Landreth Timber Company v. Landreth*, 471 U.S. 681, 686 (1985).
[13] 328 U.S. 293 (1948); *See also*, SEC v. Edwards, 540 U.S. 389 (2004).

8

23. Claim #24545 arises out of withholding of compensation, not the holding, purchase, or sale of a security. In contrast to Claim #24545, Priority Claimant also holds thousands of unrelated common stocks, stock options, and other equity interests, for which he did not file proofs of claim since he concedes them to be equity interests.

24. Since Priority Claimant never received the quid-pro-quo RSUs he was promised in exchange for the deductions from his monthly paychecks, he has a right to be reimbursed the withheld amounts. This amounts to both a legal "right to payment" under § 101(5)(A) and a "right to an equitable remedy for breach of performance" as such breach gives rise to a right to payment under § 101(5)(B).

C. Claim #24545 is Properly Classified as a "Priority" Claim

25. The Amount withheld is most properly classified as a fifth priority claim under § 507(a)(5) because the Amount deducted was a "contribution to an employee benefit plan".

26. "Employee benefit plan" is undefined in the Bankruptcy Code and should be construed broadly in light of the Bankruptcy Code's strong interest in protecting employees. Pension plans, health insurance plans, and the majority of employee benefit programs qualify for fifth priority status.[14] The moneys deducted from Priority Claimant's monthly wages were for the purpose of him participating in an LBHI employee benefit plan called the "2008 Equity Awards Plan." The "contributions" were made in the form of monthly paycheck deductions, but the "benefit" (RSUs) was not received.

---

[14] See 4 Collier on Bankruptcy § 507.06; But see Howar Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651 (2006) (workers' compensation provider's claims for unpaid premiums were denied priority because the premiums were not bargained-for benefits in lieu of increased wages). See Cornell, et. al, A Collier Monograph: Employee Benefits and Executive Compensation in Corporate Bankruptcy.

9

27. Employee benefit claims may be aggregated into a class having the option of accepting a proposed payout scheme in a reorganization plan.[15] Employee contributions to a benefit plan that are withheld from an employee's paycheck or otherwise paid to the employer become plan assets as soon as they can be "reasonably segregated from the employer's general assets" even if the amounts have not been paid to the plan.[16] For each plan, fifth priority status is granted only to the extent of (i) the number of employees covered by each such plan multiplied by $11,725 minus (ii) the aggregate amount paid to such employees under § 507(a)(4) plus the aggregate amount paid by the debtor on behalf of such employees to any other employee benefit plan.

28. Even if this Court finds the fifth priority to be unavailable in this case, withheld compensations deserve at least fourth priority claim for unpaid wages, salaries, or commissions up to $11,725 per employee under § 507(a)(4).[17] Even though fourth priority generally does not extend to fringe benefits or other perquisites of employment,[18] the Amount is for prepetition services rendered for which no benefits, perquisites, or equity interests were actually granted.

---

[15] 11 U.S.C. § 1129(a)(9)(B); In enacting § 507(a)(5), Congress recognized that collective bargaining agreements often substitute employee fringe benefits for wage demands. H.R. Rep. No. 595, 95th Congress, 1st Sess. 357 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 69 (1978). See e.g., Bankr. N.D. Ohio 1995).

[16] 29 C.F.R. § 2510.3-102(a).

[17] Under state law, all employees have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner. N.Y. Lab .Law § 198(3). *See also*, Diamond v. Davis, 62 N.Y.S.2d 362 (Sup 1945) (finding that every benefit firmly offered or authoritatively fixed for an employee, which in the course of fair dealing and reasonable conduct should rightfully be expected, may be regarded as part of a just increment to the compensation payable for the work, labor, or service performed or to be performed in a specified period).

[18] *See* Collier on Bankruptcy ¶ 507.06[2]. Courts have declined to grant fourth priority status to claims for moving expenses, stock option rights of employees and workers compensation claims. Baldwin-United Corp., 52 B.R. 549 (denying administrative priority to stock option rights, holding that such rights were not analogous to compensation for continuing services rendered or termination of employment).

29. Any amounts in excess of allowed priority status under § 507(a) are normally relegated to general nonpriority status.[19] Though, Priority Claimant deserves the fullest priority status allowed for employee prepetition services under the Bankruptcy Code.

### **Even if Granted, Unvested RSUs Would be a Valid Claim**

30.  Had LBHI performed under its contractual obligation and delivered the RSUs to Priority Claimant for the withheld Amount, such RSUs would not have been vested by the time LBHI and affiliated entities filed a petition for bankruptcy in the above captioned cases.

31.  Stock-based compensation may be treated differently depending on whether it is actual ownership equity in the company (e.g., restricted shares) as opposed to a contract right that calls for the delivery of equity of the employer upon the satisfaction of stated conditions (e.g., performance shares or restricted stock units).[20] These interests are not interchangeable and should not be grouped together.

32.  RSUs resemble restricted stock options conceptually, but differ in that they are an unsecured promise by the employer to grant a set number of shares of stock to the employee upon the completion of the vesting schedule. Actual shares of stock are not to be issued until the underlying conditions are met. Therefore, shares of stock cannot be delivered until vesting and forfeiture requirements have been satisfied and release is granted, which means RSU recipients will have no voting rights or transfer rights until the conditions are met and the shares have vested. For these reasons, RSUs granted by an employer were not an adequate substitute for stock options promised to constitute "substantial performance" under employment contract.[21]

---

[19] Norton Bankruptcy Law and Practice (third edition) §49:45. See 4 Collier on Bankruptcy, ch. 507.
[20] Cornell, et. al, A Collier Monograph: Employee Benefits and Executive Compensation in Corporate Bankruptcy 8[3].
[21] Diab v. Textron, Inc., 2009 WL 1748038 (E.D. Mich., 2009).

33. Unvested RSUs, even if granted and received, are not equity interests. In a recent case, holders of RSUs who never satisfied RSU plan's requirements for stockholder status were not stockholders and therefore had no cause of action against majority stockholder for breach of fiduciary duty.[22] Debtors' Objection even admits that ownership shares would not be granted at all unless certain conditions were fulfilled: "The Equity Awards were compensation awards which, among other things, provided the employee with the right to shares of LBHI common stock on a future date upon the satisfaction of certain conditions." (Debtors' Objection, ¶ 2). A conditional promise to grant a possible equity stake in the future is not an equity interest.

### Claim # 24545 Should be Not Be Reclassified as an Equity Interest because that Would Render an Unjust Result that is Contrary to the Bankruptcy Code

34. This Court should allow Claim #24545 to proceed as a priority claim because to reclassify it as equity would be an unjust result; Debtor LBHI would be unjustly enriched by the prepetition services performed by Priority Claimant while Priority Claimant would get nothing.

35. Reclassification of this § 507(a) priority claim as an equity interest would be unfair because Priority Claimant's hard work benefitted Debtors and he would likely have no other recourse to recover these claims for contributions to an employee benefit plan and unpaid wages, salaries, and commissions from non-Debtor entities.

36. Moreover, the Bankruptcy Code is designed to protect employees by giving them priority. Workers are among the highest priority classes in bankruptcy because Congress found it important to compensate people for their hard work and help them transition after losing their

---

[22] FleetBoston Financial Corp. v. Alt, 668 F. Supp. 2d 277 (D. Mass., 2009) ("First, the Plan explicitly states that the ownership of RSUs does not provide ALT with any stockholder rights… A plan participant can become a stockholder if (i) shares of common stock are issued and transferred to him . . . In sum, ALT were not stockholders as holders of RSUs and they never acquired stockholder status.").

12

jobs. Judge Learned Hand, in a case under the Bankruptcy Act, observed that: "The statute was intended to favor those who could not be expected to know anything of the credit of their employer, but must accept a job as it comes, to whom the personal factor in employment is not a practicable consideration."[23]

37. Because reclassifying Priority Claimant's legal and equitable rights to payment for unpaid employee compensation into an equity interest would effectively result in a forfeiture of that claim, this Court should deny Debtors' Objection as to Claim #24545.

## Reservation of Rights

38. Priority Claimant reserves the right to amend this response, conduct discovery, and add any additional relevant details to the extent allowed under law and by this Court. Priority Claimant also reserves all rights to object on any basis to any other claims, objections, or responses made by Debtors at the hearing, in subsequent court filings, and in unrelated cases and controversies involving both Debtors and any non-debtor entities. Priority Claimant does not agree to release any non-debtor parties from liability regardless of the outcome of this issue.

## Representation

39. Priority Claimant has granted to Armen James Boyajian, Esq., his attorney in fact and attorney at law whom is duly admitted to practice *pro hac vice* in this Court, the ultimate authority to reconcile, settle, or otherwise resolve Claim # 24545 on his behalf. Any replies by Debtors or questions regarding this response should be directed to the Law Office of A. James Boyajian, at its below-stated address, e-mail address, or telephone number.

---

[23] In re Estey, 6 F.Supp. 570 (D.C.N.Y.).

**Service**

40. Pursuant to the Second Amended Order, counsel for Priority Claimant, A. James Boyajian hereby declares under penalty of perjury under the laws of the State of California that he has served this response on all required parties, via hand-delivery made by Lawson Legal Services in New York City, New York (Telephone Phone # 646.667.3437), on 09/20/2011 prior to the Response Deadline of 4:00 PM Eastern Time at the following addresses: (i) Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Robert J. Lemons, Esq. & Mark Bernstein); (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.). Priority Claimant understands and submits that no other service need be provided and that this paragraph supplements the "Affidavit of Service" filed along with this response.

WHEREFORE, Priority Claimant respectfully requests (1) denial of Debtors' Objection request for reclassifying Claim #24545 as an equity interest, (2) allowance of Claim #24545 to proceed as a valid priority status claim against Debtor LBHI under 11 U.S.C. § 507(a)(5), and (3) such other further relief as this Court deems appropriate in the interest of justice.

Dated: September 20, 2011          By: /s/ A. James Boyajian
Los Angeles, California               A. James Boyajian, Esq.
                                                 Law Office of A. James Boyajian

355 S. Grand Avenue, Ste. 2450
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell.

A. James Boyajian, Esq.
Law Office of A. James Boyajian
355 S. Grand Avenue, Ste. 2450
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile:  424.298.4377

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: )<br> )<br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*, )<br> )<br>                                        Debtors. )<br> ) | **Chapter 11**<br>**Case No. 08-13555 (JMP)**<br>**Jointly Administered** |

## AFFIDAVIT OF SERVICE

I, A. James Boyajian, Esq., do hereby swear and certify that:

1) I am an attorney and counsel to Jeffery K. Wardell, a priority claimant in this action. I am over the age of twenty-one years. I am not a party of interest to this proceeding.

2) On this 20th day of September, 2011, I caused a copy of the RESPONSE OF PRIORITY CLAIMANT JEFFERY K. WARDELL (CLAIM # 24545) OPPOSING "DEBTORS' ONE HUNDRED SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)" to be served via hand delivery by Lawson Legal Service, a New York City legal document service company, on the following parties:

(1)   The Chambers of the Honorable James M. Peck
Re: Courtesy Copy in Ch. 11 Case # 08-13555 (JMP)
Courtroom 601
One Bowling Green
New York, New York 10004

(2)   Weil, Gotshal & Manges LLP
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Robert J. Lemons, Esq.
& Mark Bernstein, Esq.

767 Fifth Avenue
New York, New York 10153

(3) Office of the U.S. Trustee for Region 2,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Tracy Hope Davis, Esq.;
& Elisabetta Gasparini, Esq.;
& Andrea B. Schwartz, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

(4) Milbank, Tweed, Hadley & McCloy LLP
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Dennis F. Dunne, Esq.;
& Dennis O'Donnell, Esq.;
& Evan Fleck, Esq.
1 Chase Manhattan Plaza
New York, New York 10005


Dated: September 20, 2011
Los Angeles, California                By:  /s/  A. James Boyajian_____
                                       A. James Boyajian, Esq.
                                       Law Office of A. James Boyajian
                                       355 S. Grand Avenue, Ste. 2450
                                       Los Angeles, California 90071
                                       E-mail: JamesBoyajian@gmail.com
                                       Telephone: 424.258.0777
                                       Facsimile:  424.298.4377

                                       Attorney for Priority Claimant Jeffery K. Wardell