Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

Attorneys for Michael L. Ainslie, John F. Akers, Roger S.
Berlind, Thomas H. Cruikshank, Marsha Johnson Evans,
Sir Christopher Gent, Roland A. Hernandez, Henry
Kaufman and John D. Macomber

*[Also filed by Richard S. Fuld, Jr., Christopher
M. O'Meara, and Erin M. Callan]*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :        **08-13555 (JMP)**
                                          :
                          **Debtors.**    :        **(Jointly Administered)**
                                          :
-------------------------------------------------------------x

## INSURED PERSONS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE CALIFORNIA MUNICIPALITIES ACTIONS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Richard S. Fuld, Jr., Christopher M. O'Meara, Erin M. Callan, Michael Ainslie, John F.

Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent,

Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively, the "Insured

Persons"), former and current officers and directors of Lehman Brothers Holdings Inc. ("LBHI")

1

Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

and/or its affiliated debtors in the above-referenced chapter 11 cases (the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this motion and respectfully

represent:

### Preliminary Statement

1.      On *ten* prior occasions (most recently on September 15, 2011), the Court

has modified the automatic stay provided for under section 362(a) of title 11 of the United States

Code (the "Bankruptcy Code"), to the extent applicable, to remove any impediments to payment

by certain of the Debtors' insurers of directors and officers coverage of a judgment, settlement

amounts or defense costs or fees that current or former directors, officers, and employees of the

Debtors incurred or were incurring as defendants in ongoing lawsuits, arbitration proceedings,

and regulatory or other investigations.[1]  By this Motion, the Insured Persons seek similar relief to

---

[1] *See* Orders dated March 25, 2009 [Docket No. 3220] (modifying the automatic stay to allow
advancement of defense costs with respect to XL Specialty Insurance Company); November 23,
2009 [Docket No. 5906] (modifying the automatic stay to allow advancement of defense costs
with respect to Federal Insurance Company); December 17, 2009 [Docket No. 6297] (modifying
the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company
and Federal Insurance Company); August 20, 2010 [Docket No. 10945] (modifying the
automatic stay to allow advancement of defense costs with respect to Continental Casualty
Company, Certain Underwriters at Lloyd's, London and London Market Company, and U.S.
Specialty Insurance Company (HCC)); November 18, 2010 [Docket No. 12896] (modifying the
automatic stay to allow advancement of defense costs with respect to Zurich American Insurance
Company, ACE Bermuda Insurance Ltd, St. Paul Mercury Insurance Company, XL Specialty
Insurance Company and Federal Insurance Company); November 18, 2010 [Docket No. 12895]
(modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters
at Lloyd's, London and London Market Company); January 13, 2011 [Docket No. 13929]
(modifying the automatic stay to allow payment of settlement amount by U.S. Specialty
Insurance Company and Zurich American Insurance Company); March 23, 2011 [Docket No.
15277] (modifying the automatic stay to allow payment of settlement amounts by Zurich
American Insurance Company); July 21, 2011 [Docket No. 18691] (modifying the automatic
stay to allow payment of an arbitral award by Zurich American Insurance Company and ACE
Bermuda Insurance Ltd.); September 15, 2011 [Docket No. 20017] (modifying the automatic
stay to allow payment of settlement of New Jersey Action by ACE Bermuda Insurance Ltd. and
St. Paul Insurance Co.) (collectively, the "Prior Stay Orders").

Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

assure, to the extent applicable, (i) ACE Bermuda Insurance Ltd. subscribing to policy number

LEHM-11742D ("ACE Bermuda"), (ii) St. Paul Mercury Insurance Company subscribing to

policy number 590CM2698 ("St. Paul Mercury"), (iii) Axis Reinsurance Company subscribing

to policy number RNN713535/01/2007 ("Axis"), (iv) Liberty Mutual Insurance Company

subscribing to policy number 078365-017 ("Liberty"), (v) Arch Insurance Company subscribing

to policy number DOX0006634-02 ("Arch"), (vi) Allied World Assurance Company subscribing

to policy number C002007/005 ("Allied World"), (vii) Endurance Specialty Insurance Ltd.

subscribing to policy number P005332003 ("Endurance"), and (viii) Certain Underwriters at

Lloyd's, London, subscribing to policy number 509/QA017007 ("Lloyd's"), the Debtors' sixth

through thirteenth level excess insurers under the Debtors' 2007-2008 directors' and officers'

liability insurance program or, if all of these layers of excess insurance have exhausted their

applicable limits of liability by actual payment of "Loss," the appropriate subsequent insurer or

insurers that are or would be paying under the Debtors' 2007-2008 directors' and officers'

liability insurance program (together, the "Excess Policy Insurers"),[2] that they are authorized to

make a settlement payment in the amount of $1,050,000 (the "Settlement Amount") in

---

[2] Copies of the primary D&O Policy, together with the ACE Bermuda and St. Paul Mercury policies (among others), were attached to the *Debtors' Motion Pursuant to Section 362 of the Bankruptcy Code, For An Order Modifying the Automatic Stay To Allow Advancement Under (I) 2007 2007-2008 Directors And Individual Defendants Insurance Policies By Zurich American Insurance Company, Ace Bermuda Insurance Ltd. And St. Paul Mercury Insurance Company, And (II) 2008-2009 Directors And Individual Defendants Insurance Policies By XL Specialty Insurance Company And Federal Insurance Company* [Docket No. 12369] (the "Zurich Comfort Motion"), and are incorporated herein by reference. Copies of the Axis, Liberty, Arch, Allied World and Endurance policies for 2007-2008 were attached to the *Insured Persons' Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Settlement Payment under Directors and Officers Insurance Policy to Settle the Equity/Debt Class Action* [Docket No. 19488]. A copy of the Lloyd's policy for 2007-2008 is attached hereto as Exhibit A.

3

connection with a settlement agreement between the City of Long Beach, California, the City of

Fremont, California, the City of Cerritos, California, the City of South San Francisco, California,

the County of Alameda, California, and the County of Tuolumne, California (the "California

Municipalities") and the Insured Persons, in the actions *City of Long Beach v. Fuld, et al., Case*

*No. 1:09-cv-03467-LAK; City of Fremont v. Citigroup Global Markets, Inc., et al., Case No.*

*1:09-cv-03478-LAK; City of Cerritos v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-*

*07878-LAK; City of South San Francisco v. Citigroup Global Markets, Inc., et al., Case No.*

*1:09-cv-01946-LAK; County of Alameda v. Ernst & Young, LLP, et al., Case No. 1:09-cv-07877-*

*LAK;* and *County of Toulumne v. Ernst & Young, LLP, et al., Case No. 1:09-cv-03468-LAK* (the

"California Municipalities Actions") without concern that, if the automatic stay is otherwise

applicable, they are violating the automatic stay.

      2.     For Claims[3] made against individual Insureds during the period from May

16, 2007 to May 16, 2008 (the "Policy Period"), the Debtors purchased a primary D&O

insurance policy from XL Specialty Insurance Company ("XL," and said policy the "2007-2008

Primary D&O Policy") plus additional excess insurance coverage for this period from a number

of other carriers of up to $250 million in the aggregate.  The excess policies, including the

policies of the Excess Policy Insurers (the "Excess Insurance Policies"), are all "follow form"

policies governed by the terms, conditions, limitations and exclusions of the 2007-2008 Primary

D&O Policy, and subject to additional independent terms and conditions set forth in the Excess

Insurance Policies, such as Limits of Liability, and attach only after all Loss within the

respective Limits of Liability of the underlying policies have been paid.

---

[3] Capitalized terms that are used but not otherwise defined herein shall have the meanings
ascribed to them in the Excess Insurance Policies.

3.    Confirming the Excess Policy Insurers' ability to make the proposed settlement payment is in the best interests of the Debtors' estates and creditors because, *inter alia*, the interests of the Debtors' estates, if any, in the proceeds of the Excess Insurance Policies are expressly subordinate to the interest of the individual Insureds. Specifically, the Excess Insurance Policies provide that the Debtors have a right to the insurance proceeds only after the individual Insureds are fully reimbursed for any "Loss," including defense costs and settlement payments. As such, granting the relief requested by this Motion is unlikely to have any adverse effect on the Debtors' estates and creditors. Moreover, validating that the Excess Policy Insurers are authorized to fund certain settlement payments without violating the automatic stay will also eliminate or reduce potential indemnification claims that may be asserted against the Debtors. Accordingly, granting the relief requested herein is in the best interest of the Debtors' estates and creditors.

### Background

4.    Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5

5.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

7.     On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan and disclosure statement [Docket Nos. 19627 and 19629]. Also on September 1, 2011, the Bankruptcy Court entered an amended order [Docket No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.

8.     The California Municipalities Actions were all initially filed in various California state courts. The actions were then removed to federal court and coordinated with the master MDL case, *In re: Lehman Brothers Securities and ERISA Litigation*, Master Docket No. 09 MD 2017 (LAK) (S.D.N.Y.), for pretrial proceedings. *See, e.g., id.* [Docket Nos. 27, 29, 31, 33].

9.     The settlement agreement between the California Municipalities and the Insured Persons is conditioned upon, *inter alia*, the Bankruptcy Court entering a Final order authorizing relief from the automatic stay.

## Jurisdiction

10.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6

## Relief Requested

11.     The Insured Persons seek the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow the Excess Policy Insurers to pay the Settlement Amount of $1,050,000 solely from the available proceeds of the Excess Insurance Policies in accordance with the terms of a settlement agreement (the "Settlement Agreement") between the California Municipalities and the Insured Persons (together, the "Settling Parties"), subject to the terms, conditions, and limitations of the respective Excess Insurance Policies.

## Waiver of Bankruptcy Rule 4001(A)(3)

12.     As the proceeds of the D&O Policies are finite and, as this Court has observed, these finite proceeds of the D&O Policies may be claimed on a first-come, first-served basis, the Insured Persons request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

## The Debtors' Directors and Officers Liability Insurance Policies

13.     Pursuant to, *inter alia*, their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors' and officers' liability ("D&O") insurance, which pursuant to the respective policies' terms, conditions, and limitations provides coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

14.     Subject to the terms, conditions, limitations and exclusions of the Excess Insurance Policies, the Excess Policy Insurers cover Loss (defined as Defense Expenses, settlements and judgments, among other things) of $125 million in excess of $85 million

7

incurred as a result of Claims made during the Policy Period for Wrongful Acts allegedly committed by individual Insureds Persons in their capacity as directors, officers, and/or employees of LBHI and certain of its subsidiaries.[4]  Coverage under Insuring Agreement (A) of the Excess Insurance Policies is available to Insured Persons under the Excess Insurance Policies for any Loss resulting from Claims made against them that cannot be advanced or indemnified by the Debtors by reason of their financial insolvency.

15.    Furthermore, the Excess Insurance Policies contain "Priority of Payments" provisions, which provide that when competing claims for coverage under both Insuring Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are made under the Excess Insurance Policies, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A) . . . ."  Thus, the Excess Insurance Policies, by virtue of Insuring Agreement (A) and the Priority of Payments provisions, provide for the immediate payment of the Settlement Amount on behalf of the individual Insureds ahead of any payment that may be made to the Debtors.

---

[4] As the sixth excess insurer for the Policy Period, ACE Bermuda provides coverage of $25 million in excess of $85 million.  As the seventh excess insurer for the Policy Period, St. Paul Mercury provides coverage of $15 million in excess of $110 million.  As the eighth excess insurer for the Policy Period, Axis provides coverage of $15 million in excess of $125 million. As the ninth excess insurer for the Policy Period, Liberty provides coverage of $10 million in excess of $140 million.  As the tenth excess insurer for the Policy Period, Arch provides coverage of $15 million in excess of $150 million.  As the eleventh excess insurer for the Policy Period, Allied World provides coverage of $15 million in excess of $165 million.  As the twelfth excess insurer for the Policy Period, Endurance provides coverage of $20 million in excess of $180 million.  As the thirteenth excess insurer for the Policy Period, Lloyd's provides coverage of $10 million in excess of $200 million.

## The Actions

16.    Both prior to and after the collapse of the Lehman enterprise in September 2008, various securities actions were commenced against certain current and former officers and directors of Lehman in both federal and state courts.

17.    Plaintiffs in the California Municipalities Actions are the City of Long Beach, California, the City of Fremont, California, the City of Cerritos, California, the City of South San Francisco, California, the County of Alameda, California, and the County of Tuolumne, California.

18.    The California Municipalities Actions allege misrepresentations and omissions in Lehman offering materials and assert claims for violations of California's securities laws and for violations of California statutory and common law, arising from the California Municipalities' purchases of approximately $35 million in Lehman securities allegedly purchased between January 3, 2007 and September 3, 2008.

19.    Neither LBHI nor any of the other Debtors is named as a defendant in the Actions and none of the Debtors are party to the settlements.

## The Settlement Agreement

20.    In connection with the California Municipalities Actions, to eliminate the uncertainties, burden, and expense of further litigation, without any admission or concession of any fault, liability, or wrongdoing, the Settling Parties, through arms-length negotiations, have agreed to settle all disputes outstanding between them under the terms and conditions set forth in

the Settlement Agreement. The relevant terms of the Settlement Agreement, as they relate to the Debtors, are as follows:[5]

> (i)  the effectiveness of the Settlement Agreement is subject to entry of an order in the Chapter 11 Cases granting relief from the automatic stay to permit the Excess Policy Insurers to pay the Settlement Amount;

> (ii)  payment of the Settlement Amount of $1,050,000 into an escrow account within twenty business days following the entry of an order in the Chapter 11 Cases granting the requested relief from the automatic stay;

> (iii)  payment of the Settlement Amount of $1,050,000 from the escrow account to the California Municipalities within a specific time period following the entry of (a) a final order granting the requested relief from the automatic stay, and (b) a final order barring claims for contribution or indemnification against any Insured Person and the other Releasees based upon, arising from, relating to, or in connection with the Released Claims; and

> (iv)  mutual releases between the California Municipalities and the Insured Persons and other releasees and dismissal with prejudice of all claims against the Insured Persons.

### Cause Exists to Grant the Relief Requested

21.  Pursuant to certain of the Prior Stay Orders, this Court has granted similar relief to that sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and the Insured Persons that are governed by the same terms and conditions as the Excess Insurers Policies. Accordingly, because cause to modify the automatic stay was found to exist under the Prior Stay Orders, *a fortiori*, such cause exists here as well. If, however, the Insured Persons must independently demonstrate that such cause exists to allow the Excess Policy Insurers to pay

---

[5] To the extent there is an inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control. A copy of the Settlement Agreement has not been attached to this Motion because the Debtors are not parties thereto and the provisions thereof that are believed to be relevant to the Debtors are those described in paragraph 20 hereof with respect to the payment of the Settlement Amount from proceeds of the Excess Insurance Policies.

10

the Settlement Amount, as described below, it is beyond peradventure that such a modification of the automatic stay is warranted.

A.    The Proceeds Are Not Property of the Estate

22.    Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988). However, courts have distinguished between ownership of a policy and ownership of the *proceeds* of a policy. While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate. *See, e.g., In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers

11

and not the estate, the proceeds are not property of the estate); *see In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

23.      In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. See also *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

24.      The Excess Insurance Policies contain an unambiguous priority of payments endorsement that expressly subordinate any potential rights of the Debtors to proceeds payable under the Excess Insurance Policies to the rights of the individual Insureds. The priority of payment endorsements is an enforceable contractual provision and should be upheld for the benefit of the individual Insureds as intended. *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) (transcript) [Docket No. 3278] (holding that priority of payment provision was an enforceable contractual right) (attached hereto as Exhibit B).

25.      Consistent with the purpose of such policies, the Debtors purchased the Excess Insurance Policies primarily to provide insurance coverage to their officers and directors, including the Insured Persons. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which would be payable only in the event that the Debtors indemnified the individual Insureds and which are subject to an express contractual subordination provision,

12

should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates._

B.    Cause Exists to Modify the Automatic Stay, to the Extent
That it Applies, to Allow Payment of the Settlement Amount.

26.    Even if the proceeds from the Excess Insurance Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of the Settlement Amount as required under the Excess Insurance Policies.  It is not uncommon for courts to grant stay relief to allow payment of settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

27.    Allowing the Excess Policy Insurers to pay the Settlement Amount will, in fact, benefit the Debtors' estates.  The Debtors have an obligation under their by-laws to advance the settlement costs incurred by the individual Insureds, including the Insured Persons.  If the Excess Policy Insurers are barred from advancing the Settlement Amount due to the enforcement of the automatic stay, the Insured Persons may assert indemnification claims against the Debtors for such amounts.[6]  Consequently, payment of the Settlement Amount under the Excess Insurance Policies may reduce or eliminate the claims that the Insured Persons could assert against the Debtors.

28.    Modifying the automatic stay will not harm the Debtors' estates.  As explained above, any rights the Debtors have to the proceeds are contractually subordinated to the rights of the individual Insureds pursuant to the priority of payments clause.

---

[6] Many of the Insured Persons have filed protective claims against LBHI for indemnification and advancement of defense costs (*See, e.g.*, Proof of Claim Nos. 16194 [Mr. Fuld]; 19433 [Mr. O'Meara]; 66183 [Mr. Hernandez]; 66184 [Mr. Macomber]; 66185 [Mr. Cruikshank]; 66188 [Mr. Kaufman]; 66189 [Ms. Evans]; 66192 [Mr. Akers]; 66193 [Mr. Ainslie]).

13

29.    Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the Excess Insurance Policies, the Insured Persons submit that any such interest is nominal and in any event cannot be determined until the Insured Persons' losses have been quantified and paid.  Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Excess Policy Insurers to make payment of the Settlement Amount pursuant to the terms of the Settlement Agreement and subject to the terms of the Excess Insurance Policies.

30.    In making this Motion, neither the Debtors, the Insured Persons, nor the Excess Policy Insurers are waiving any of their respective rights under the Excess Insurance Policies or any other insurance policy.  The Excess Policy Insurers are not parties to this Motion, the above-referenced chapter 11 cases, nor the California Municipalities Actions, and specifically ACE Bermuda, Endurance and any other Bermuda insurers are not being deemed in any way to be conducting business in the United States or submitting to the jurisdiction of any state, federal or bankruptcy court in the United States.  In addition, the Insured Persons are not seeking a determination of the Excess Policy Insurers' obligation to pay any settlement costs under the Excess Insurance Policies.  Rather, the Insured Persons seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow the Excess Policy Insurers to make payment of the Settlement Amount.

### Notice

31.    No trustee has been appointed in these cases.  The Insured Persons have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Debtors; (iii) the

14

attorneys for the Creditors' Committee; (iv) the attorneys for the California Municipalities; (v)

the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vi) the United

States Attorney for the Southern District of New York; (viii) all parties who have requested

notice in these chapter 11 cases; and (ix) the attorneys for the Excess Policy Insurers named in

paragraph 1.  The Insured Persons submit that no other or further notice need be provided.

WHEREFORE the Insured Persons respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: September 27, 2011
       New York, New York

/s/ Adam J. Wasserman
DECHERT LLP
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-8099

Attorneys for Michael L. Ainslie, John F.
Akers, Roger S. Berlind, Thomas H.
Cruikshank, Marsha Johnson Evans, Sir
Christopher Gent, Roland A. Hernandez,
Henry Kaufman and John Macomber


/s/ Patricia M. Hynes
ALLEN & OVERY LLP
Patricia M. Hynes
Todd S. Fishman
Molly C. Spieczny

Attorneys for Richard S. Fuld, Jr.

*/s/ Mary Elizabeth McGarry*
SIMPSON THACHER & BARTLETT LLP
Michael J. Chepiga
Mary Elizabeth McGarry

Attorneys for Christopher M. O'Meara,


*/s/ Mark E. Davidson*
PROSKAUER ROSE
Robert J. Cleary
Mark E. Davidson
Seth David Fier

Attorneys for Erin M. Callan

14228617.5.LITIGATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                                    :        Chapter 11 Case No.
                                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                 :        08-13555 (JMP)
                                                         :
                         Debtors                         :        (Jointly Administered)
                                                         :
----------------------------------------------------------------x

### [PROPOSED] ORDER GRANTING INSURED PERSONS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS INSURANCE POLICY TO SETTLE THE CALIFORNIA MUNICIPALITIES ACTIONS

Upon the motion, dated September ___, 2011 (the "Motion"), of Richard S. Fuld, Jr., Christopher M. O'Meara, Erin M. Callan, Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively, the "Insured Persons"), pursuant to section 362(d) of title 11 to the United States Code (the "Bankruptcy Code") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order modifying the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent applicable, to allow the Excess Policy Insurers[1] to make a payments in connection with the terms of a settlement agreement and supplemental stipulation (the "Settlement Agreement") relating to *City of Long Beach v. Fuld, et al., Case No. 1:09-cv-03467-LAK; City of Fremont v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-03478-LAK; City of Cerritos v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-07878-LAK; City of South San Francisco v. Citigroup Global Markets, Inc., et al., Case No. 1:09-cv-01946-LAK; County of Alameda v. Ernst &*

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

*Young, LLP, et al., Case No. 1:09-cv-07877-LAK; County of Toulumne v. Ernst & Young, LLP,*

*et al., Case No. 1:09-cv-03468-LAK* (the "California Municipalities Actions"), as more fully

described in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [Docket No. 9635] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Debtors; (iii) the attorneys for the Official

Committee of Unsecured Creditors; (iv) the attorneys for the California Municipalities; (v) the

Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the United States

Attorney for the Southern District of New York; (viii) all parties who have requested notice in

these chapter 11 cases; and (ix) the attorneys for the named Excess Policy Insurers, and it

appearing that no other or further notice need be provided; and a hearing having been held to

consider the relief requested in the Motion; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; that modifying the automatic stay will not harm the Debtors'

estates, and that any rights the Debtors have to the proceeds are contractually subordinated to the

rights of the individual Insureds pursuant to the priority of payments clause; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code, the automatic stay, to the extent applicable, is hereby modified to, and without further order of this Court, allow the Excess Policy Insurers to pay the Settlement Amount provided for in the Settlement Agreement on behalf of the Insured Persons in accordance with the terms, condition, and limitations of the Excess Insurance Policies; and it is further

ORDERED that the Insured Persons and the Debtors are authorized to execute all documentation necessary to allow the Excess Policy Insurers to fund the Settlement Amount on behalf of the Insured Persons pursuant to the Settlement Agreement; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Excess Policy Insurers, the Debtors or the Insured Persons provided for under the terms, conditions, and limitations of the Excess Insurance Policies; and it is further

ORDERED that all parties to the Excess Insurance Policies reserve all rights and defenses with respect to the Excess Insurance Policies that they would otherwise have; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Excess Insurance Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Excess Insurance Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

3

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: October ___, 2011
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

4