Joshua Dorchak
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
Telephone: 212.705.7000

*Attorneys for The Financial Services
Compensation Scheme Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | **Chapter 11 Case No.**<br>**08-13555 (JMP)**<br>(Jointly Administered) |

**RESPONSE OF THE FINANCIAL SERVICES COMPENSATION SCHEME LIMITED
TO DEBTORS' ONE HUNDRED FORTY-THIRD
OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

The Financial Services Compensation Scheme Limited ("FSCS") hereby responds to the Debtors' One Hundred Forty-Third Omnibus Objection to Claims (Late-Filed Claims) (the "Objection"), with respect to Claim No. 63359.

**SUMMARY**

1. In the Objection, the Debtors seek to disallow Claim No. 63359 (the "Claim"), filed by FSCS on November 2, 2009, as being late-filed. The Claim was not filed prior to November 2, 2009 because (i) FSCS did not acquire any interest in the securities on which the Claim is based (the "DE Securities") until October 2009 and (ii) FSCS initially believed that all of the DE Securities were "Lehman Programs Securities" ("LPS"), to which the separate bar date of November 2, 2009 applied (the "LPS Bar Date"). The DE Securities, like the LPS, were issued by a foreign affiliate of LBHI and guaranteed by LBHI. To this date, FSCS remains

uncertain why the DE Securities are not included among the LPS. Because the Claim was filed by the LPS Bar Date, and in light of all of the circumstances described below, this Court should overrule the Objection and should deem the Claim to have been timely filed on grounds of excusable neglect.

## BACKGROUND

**The Bar Date Order**

2.   On May 26, 2009, the Debtors filed a motion seeking to establish a deadline for the filing of proofs of claim in this jointly administered case [Docket No. 3654] (the "Bar Date Motion"). The Bar Date Motion initially sought an order requiring that creditors wishing to assert claims against LBHI based on the issuance or guaranty of securities issued by Lehman entities (other than certain designated "Master Securities" and equity securities) file proofs of claim and (if applicable) complete a "Guarantee Questionnaire" on or before a fixed bar date.

3.   Many holders of such securities objected to the Bar Date Motion because of the burdens that it would impose on them. At the urging of the Court, the Debtors engaged in discussions with representatives of the objecting parties to resolve these objections. These discussions led to the inclusion of exceptional procedures for claims based on certain securities -- namely, the LPS -- in this Court's July 2, 2009 Order Pursuant To Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing The Deadline for Filing Proofs Of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof Of Claim Form [Docket No. 4271] (the "Bar Date Order").

4.   The Bar Date Order established September 22, 2009 as the generally applicable bar date (the "General Bar Date") and November 2, 2009 as the LPS Bar Date. The Bar Date Order also set forth special procedures to file claims based on LPS, including the requirement that the claimant use a unique proof of claim form and provide the ISIN or CUSIP for each LPS,

2

as well as a "blocking number" and an account number for the clearing agency holding the LPS. *See* Bar Date Order at 12-13.

5. The Bar Date Order required the Debtors to publish a list of LPS by July 6, 2009. *See id.* at 13. The LPS list published by the Debtors on July 6, 2009 consisted of 55 pages of tables with several thousand securities identification numbers in small print. The Bar Date Order further required the Debtors to work in good faith with interested parties to agree on a final list of LPS by July 13, 2009, and to publish the final list on July 17, 2009. *See id.* at 13. The LPS list published by the Debtors on July 17, 2009 was 74 pages long and included approximately 3,000 more securities than the initial list.

**The Claim**

6. FSCS is an agency of the United Kingdom that administers a statutory compensation scheme for depositors and investors in certain regulated financial products and services, established pursuant to Part XV of the UK Financial Services and Markets Act 2000. Declaration of James Darbyshire in Support of FSCS's Response to the Objection ("Darbyshire Declaration") ¶ 3. The compensation scheme is administered by FSCS in accordance with rules laid down by the UK Financial Services Authority in its Handbook (the "Scheme Rules"). *Id.* In summary, the Scheme Rules permit FSCS to pay compensation to an investor who has suffered a loss where a regulated financial services firm is "in default" and the firm has a civil liability to the investor in respect of a regulated investment. *Id.* Where FSCS pays compensation to an investor in respect of a particular investment, the Scheme Rules provide for it to take an assignment of that investor's rights in relation to that investment and pursue recoveries where it is cost effective for it to do so. *Id.* FSCS is funded in part by the recoveries it makes, with the shortfall being funded by levies on the UK financial services industry. *Id.*

3

7.      On October 14, 2009 two UK financial services firms called NDF Administration Limited ("NDF") and Defined Returns Limited ("DRL") went into an insolvency process known as "administration" in the UK.  *Id.* ¶ 4.  On October 26, 2009 a further firm called Arc Capital and Income Plc ("Arc") also went into administration.  *Id.*  NDF, DRL and Arc had all sold investment plans to UK investors underpinned by securities issued by Lehman entities (the "Subject Securities").  *Id.*  In particular, DRL had sold one such investment plan underpinned by the securities that are the subject of the Objection.  *Id.*

8.      Under the Scheme Rules NDF, DRL and Arc each became "in default" when they entered into administration.  *Id.* ¶ 5.  FSCS then became obliged to assess whether investors in the investment plans sold by those firms were eligible for compensation.  *Id.*  On December 11, 2009, having concluded its assessment, FSCS publicly invited investors in a number of the investment plans (the "Investors") to submit claims for compensation.  *Id.*  Since then, FSCS has received about 2,000 claims from Investors, and continues to receive and process further claims.  *Id.*

9.      As of October 2009, FSCS became aware that it may be required to pay compensation to Investors in Subject Securities and subsequently to take assignments from the Investors of their rights in the Subject Securities and pursue recoveries in performance of its statutory functions.  *Id.* ¶ 6.  However, FSCS did not at that time hold any Subject Securities.  *Id.*  Nonetheless, FSCS began to consider what steps it might need to take to preserve the value of the Subject Securities in the insolvency processes of the various Lehman entities, including LBHI.  *Id.*  FSCS's initial investigations led it to believe that the Subject Securities consisted of sixty-seven securities issued by LBHI's affiliates and guaranteed by LBHI and that all of the

4

Subject Securities qualified as LPS. *Id.* Accordingly FSCS anticipated filing a proof of claim for all the Subject Securities by the LPS Bar Date. *Id.*

10. In late October 2009, as FSCS was preparing its LPS proof of claim, FSCS discovered that six of the sixty-seven Subject Securities held by the Investors were not included in the final list of LPS. *Id.* ¶ 7. These six securities were the DE Securities, issued by Lehman Brothers Bankhaus AG and guarantied by LBHI, which had ISINs that began with "DE…" *Id.*, Ex. B (Appendix to the Claim). Because the DE Securities appeared to be of the appropriate type for inclusion on the LPS list, FSCS was uncertain whether the LPS would eventually be amended to include the DE Securities. *Id.*

11. Accordingly, in an abundance of caution, FSCS filed (i) a proof of claim (Claim No. 63358) in the LPS format based on all sixty-seven Subject Securities, with the DE Securities broken out in a separate subsection of the schedule to the proof of claim (the "Complete Claim"), and (ii) the Claim, which is in the standard Lehman proof of claim format and is based solely on the DE Securities. *Id.* ¶ 8, Ex. A (Claim No. 63358), Ex. B (Claim No. 63359). Each of these proofs of claim expressly described FSCS's confusion about whether the DE Securities were LPS and FSCS's belief that the DE Securities should be LPS. *Id.*, Ex. A-B. The Claim expressly cross-referenced the Complete Claim. *Id.*, Ex. B.[1] The Claim and the Complete Claim were signed on October 30, 2009 and were received by the Debtors' claims agent on the LPS Bar Date. *See id.*, Ex. A-B.

12. Since the LPS Bar Date, FSCS has acquired Subject Securities in an aggregate face amount of approximately $2.09 million as a result of compensating the Investors. *Id.* ¶ 10. The process of receiving and considering investor compensation claims, paying compensation to

---

[1] FSCS does not, of course, seek to recover on the DE Securities through both the Claim and the Complete Claim. If this Court overrules the Debtors' objection to the Claim, FSCS will promptly amend the Complete Claim to delete the DE Securities. *Id.* ¶ 9.

investors, and taking assignments of investors' Subject Securities is ongoing, and FSCS expects to continue to acquire further Subject Securities in the near future. *Id.*

## ARGUMENT

13. Bankruptcy Rule 9006(b)(1) authorizes the Court in its discretion to permit the filing of an untimely proof of claim if the delay is the result of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 382-83 (1993). In *Pioneer*, the Supreme Court stated that the excusable neglect standard is an "elastic concept" that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 392, 395. Four factors are considered in the excusable neglect analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Id*. at 395.

14. Not all of these factors must weigh in favor of the claimant for relief to be granted. *See In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 21756785, at *4 (Bankr. S.D.N.Y. July 30, 2003) (noting that "[t]he relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party," and granting relief even though court found against claimant on reason for delay). The decision whether to grant relief rests within the Bankruptcy Court's discretion. *See In re Enron Corp.*, 419 F.3d 115, 125 (2d Cir. 2005) ("[T]he discretion of a bankruptcy court to allow or disallow late filed claims is well established.").

15. The Claim was filed after the General Bar Date -- but on the LPS Bar Date -- as a result of the fact that due to the nature of FSCS's role, it had no connection to the Subject Securities whatsoever until October 2009, when its statutory duties first arose to consider

6

whether Investors might be entitled to receive compensation and assign Subject Securities to FSCS. Darbyshire Decl. ¶¶ 5-6. After that time FSCS took prompt action to file claims prior to the LPS Bar Date, at which point it became aware that it had wrongly believed all the Subject Securities were on the extraordinarily lengthy, dense and changing list of LPS. *Id.* ¶ 7. This Court has recognized that confusion over the claim procedures for LPS can be a valid basis for permitting a late-filed claim. In short, the late filing of the Claim was caused by excusable neglect. Accordingly, this Court should overrule the Objection.

        A.        **The Delay Was Justified in the Circumstances.**

16.      Under *Pioneer*, excusable neglect may include "inadvertent delays" and is "not limited strictly to omissions caused by circumstances beyond the control of the [claimant]." 507 U.S. at 392. The *Pioneer* Court noted that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id*. at 388. Nonetheless, within the Second Circuit, the reason for the delay is weighed most heavily among the *Pioneer* factors. *Enron*, 419 F.3d at 122-23. Specifically, courts consider whether the delay was in the reasonable control of the claimant. *Id*.

17.      The extent to which a bar date order is unusual or outside of the ordinary is a factor that courts consider in determining whether a delay was justified. *See Pioneer*, 507 U.S. at 399. The *Pioneer* Court found relief to be appropriate, even while recognizing that such confusion may be within the power of the claimant to resolve to some extent. *Pioneer*, 507 U.S. at 389-99. Here, the complex structure of the claim procedures, including multiple bar dates for different categories of claims and the changing list that governed which claims would be in which categories, almost inevitably caused some confusion, including the confusion that caused the Claim to be filed on the LPS Bar Date.

7

A/74528464.1

18.     The facts here are also readily distinguishable from those cases in which courts typically do not find excusable neglect because a creditor inadvertently missed the claims bar date, *e.g. In re Enron Corp.*, 419 F.3d at 120 (creditor was occupied with other negotiations with debtors and failed to file claims until after case had progressed), or failed to understand the bankruptcy rules regarding claims and bar dates, *e.g. In re New York Seven-Up Bottling Co.*, 153 B.R. 21, 23 (Bankr. S.D.N.Y. 1993) (creditor chose not to file proofs of claim after receipt of notice based on assumption that claims were not disputed), or mistakenly believed that the bar date was a later, different date, *e.g. U.K. Northridge, Inc. v. Au Coton, Inc. (In re Au Coton, Inc.)*, 171 B.R. 16, 17 (S.D.N.Y. 1994) (counsel missed bar date without any dispute as to clarity of notice). Here, the delay was caused by (i) FSCS's unique role, whereby FSCS became a potential successor to holders of Lehman securities in October 2009, and (ii) FSCS's understandable confusion as to what Lehman securities were LPS. Darbyshire Decl. ¶¶ 6-8.

19.     This Court has noted the unprecedented complexity of this case and the claims procedures, particularly with regard to LPS, in granting permission to file late claims. *See* Bench Decision December 14, 2009; December 17, 2009 Order Deeming PB Capital's Proof of Claim Timely Filed [Docket No. 6284], December 22, 2009 Order Deeming Banesco's Claim to be Timely Filed [Docket No. 6333]. Likewise, here, the delay in filing the Claim was justified.

  **B.**  <u>The Debtors Were Not Prejudiced by the Delay.</u>

20.     The *Pioneer* factor regarding prejudice to the Debtor clearly favors FSCS. First, the Claim was filed only about a month after the General Bar Date, and on the LPS Bar Date. The Debtors cannot reasonably assert that they were blindsided by the Claim after they had already made an initial thorough assessment of the claims filed in this case. Second, the Claim would have only an infinitesimal effect on the LPS claims pool -- and the Second Circuit has found alleged dilutive effect not to be an important factor. *See Enron*, 419 F.3d at 130 ("[W]e

8

agree with the observation that the [Supreme] Court must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims . . . . Otherwise, virtually all late filings would be condemned by this factor . . . ") (internal citations and quotations omitted).

21.     Permitting the Claim to stand would not open the proverbial floodgates. There are not likely to be many more claims beyond the few that have already surfaced based on quasi-LPS filed after the General Bar Date but by the LPS Bar Date. *See In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (rejecting floodgates argument where there was no evidence that "hordes of claimants" would file claims). Any hypothetical floodgates argument that may be raised by the Debtors would not constitute prejudice. *See In re O'Brien Envtl. Energy*, 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not an imagined or hypothetical harm . . . .").

### C.     The Length of the Delay Was *De Minimis*.

22.     The *Pioneer* factor regarding length of delay clearly weighs in favor of FSCS. As noted above, the Claim was filed about a month after the General Bar Date and by the LPS Bar Date. Although the issue of the Claim's timing has not been raised until now, when the Debtors have filed a disclosure statement and plan, the potential allowance of the Claim will have no discernable effect on the plan process or disrupt the judicial administration of this case in any way. *See, e.g., Pioneer*, 507 U.S. at 398-99 (permitting filing proof of claim twenty days after bar date); *In re Sage-Dey, Inc.*, 170 B.R. 46, 52-53 (Bankr. N.D.N.Y. 1994) (permitting filing of proof of claim six months after bar date); *In re Beltrami*, 178 B.R. at 392 (permitting filing of claim two years after bar date).

9

### D.     FSCS Has Acted in Good Faith.

23. The final *Pioneer* factor, regarding good faith, also favors FSCS. As of the General Bar Date, FSCS had no interest in or connection with the Subject Securities, including the DE Securities. Darbyshire Decl. ¶¶ 5-6. When it became prudent for FSCS to consider whether to file claims in respect of the Subject Securities that were held by the Investors, FSCS at first believed those securities to be LPS. *Id.* In any event, upon discovering that the DE Securities were not in the final LPS list, FSCS promptly filed the Claim and even flagged the issue for the Debtors in the Claim. *See id.* ¶ 8, Ex. B (Appendix).

### CONCLUSION

For the reasons set forth herein, FSCS respectfully requests that the Court (i) overrule the Objection with respect to Claim No. 63359, (ii) rule that Claim No. 63359 is deemed timely filed, and (iii) grant such other and further relief as may be just and proper.

Dated:   New York, New York
          September 27, 2011

**BINGHAM MCCUTCHEN LLP**

By: /s/ Joshua Dorchak
    Joshua Dorchak
    joshua.dorchak@bingham.com
    399 Park Avenue
    New York, NY 10022
    Telephone: 212.705.7000

*Attorneys for The Financial Services Compensation Scheme Limited*