Joshua Dorchak
**BINGHAM MCCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
212.705.7000

*Attorneys for Deutsche Bank AG*

Objection Deadline: October 12, 2011 at 4 p.m.
Reply Deadline: October 17, 2011 at 12 p.m.
Hearing Date: October 19, 2011 at 10 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |

**MOTION OF DEUTSCHE BANK AG PURSUANT TO SECTION 105(A)
AND RULE 3013 TO ENFORCE SETTLEMENT APPROVAL ORDER
AND TO CORRECT MISCLASSIFICATION OF CLAIMS**

Deutsche Bank AG ("Deutsche Bank"), through its undersigned attorneys, hereby moves this Court, pursuant to Section 105(a) of the Bankruptcy Code and Rule 3013 of the Federal Rules of Bankruptcy Procedure, to enforce this Court's January 14, 2010 Order (the "Settlement Approval Order") approving a certain settlement agreement (the "Settlement Agreement") between Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI" and, with LBHI, the "Settling Debtors"), Lehman ALI, Inc., and Dr. Michael C. Frege, as the Insolvency Administrator (the "Administrator") for Lehman Brothers Bankhaus AG ("Bankhaus"), by entering an Order that classifies the "general unsecured claims" allowed in favor of Bankhaus against LCPI and LBHI by the Settlement Order and the Settlement Agreement as General Unsecured Claims (LCPI Class 4A and LBHI Class 7) under the Third Amended Joint Chapter 11 Plan and as generic, general unsecured claims under any other chapter 11 plan that may be confirmed in this case.

A/74529169.1

## PRELIMINARY STATEMENT

1. After lengthy and complex negotiations, the Settling Debtors and the Administrator executed the Settlement Agreement, which, among other things, expressly provided that the Administrator shall have (i) "an allowed and accepted non-priority unsecured claim in the amount of $1,015,500,000 against LCPI" (the "LCPI Claim," later assigned Claim No. 59006) and (ii) "an allowed and accepted unsecured claim as a creditor against LBHI . . . in an aggregate amount equal to $1,380,900,000," subject to certain potential reductions (the "LBHI Claim," later assigned Claim No. 58233) (the LCPI Claim and the LBHI Claim together, the "Claims"). The Settlement Agreement further expressly provides:

> For the avoidance of doubt, except as otherwise provided in this Section 12, [the Claims] shall be treated in a like manner to that of other general unsecured claims against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other general unsecured claims against LBHI and LCPI, and shall not be subject to further defenses . . . ."

2. The effectiveness of the Settlement Agreement was conditioned upon this Court's approval in this case and in Bankhaus's Chapter 15 case. In their motions seeking that approval, the Settling Debtors and the Administrator described the Claims precisely as they are described above. At the hearing on the motions, the Settling Debtors and the Administrator and/or their counsel described the Claims as "general unsecured claims." Neither the Settling Debtors nor the Administrator ever stated, or even implied, that the Claims were to be treated like affiliate or guaranty claims in any Chapter 11 plan. This Court granted both motions, approved the Settlement Agreement, and on January 14, 2010, entered the Settlement Approval Order, which repeats verbatim the descriptions of the Claims quoted above.

3. In July 2010, Deutsche Bank acquired the Claims from the Administrator, who confirmed that his understanding of the mutual intent of the parties to the Settlement Agreement

was that the Claims were to be classified as general unsecured claims, not as affiliate claims or other claims that were impaired in any way.

4.  For purposes of the first and second versions of the Chapter 11 plan proposed by the Debtors in this case (in March 2010 and January 2011), both of the Claims appear to be correctly classified as "General Unsecured Claims" against LCPI and LBHI. In the Disclosure Statement for the current plan, however, the LCPI Claim is misclassified as an "Affiliate Claim other than those of LBHI and Participating Subsidiary Debtors" (LCPI Class 5C) against LCPI, and the LBHI Claim is misclassified as a "Senior Affiliate Guarantee Claim" (LBHI Class 4B) against LBHI. The recovery rates for claims in these classes are substantially lower than for General Unsecured Claims against these Debtors.

5.  At this point, while reserving its rights on the subject, Deutsche Bank need not accuse the Debtors of gerrymandering, robbing Peter to settle with Paul, or the like. Whatever the Debtors' motives in removing the Claims from their proper classes (where they were in the prior versions of the plan), the current classification is wrong, and must be corrected.

6.  Each of the Claims is in a face amount of over $1 billion. Even in this case, a billion-dollar-plus claim is significant, including for purposes of voting on a plan. Indeed, the LCPI Claim, properly classified, represents almost one third of the total estimated allowed general unsecured claims against LCPI. For these reasons, it is crucial -- not only for Deutsche Bank but for all creditors of LCPI and LBHI -- that this Court restore the Claims to their proper classes in advance of the voting deadline, rather than risk a post-certification or post-confirmation ruling that the Claims were voted in the wrong classes.

7.  Accordingly, Deutsche Bank respectfully requests that this Court, under Section 105(a) and Rule 3013, enforce the plain terms of the Settlement Approval Order and the

Settlement Agreement, by entering an order that expressly classifies the Claims as General Unsecured Claims against the Settling Debtors for all purposes under the Current Plan or any subsequent chapter 11 plan that may be confirmed in these cases.

## BACKGROUND

8. On or about December 15, 2009, the Settling Debtors and the Administrator entered into the Settlement Agreement. *See generally* Declaration of Joshua Dorchak in Support of the Motion ("Declaration") Ex. 1. The Settlement Agreement resolves several complex disputes between the Settling Debtors and the Administrator, including (i) whether or not certain participations of loans between the Settling Debtors and Bankhaus constituted true sales, and (ii) whether or not a certain Security & Collateral Agreement, whereby LBHI agreed to post collateral to Bankhaus in the event the subject loans were impaired, was a guaranty. *See* Decl. Ex. 2 (*Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authorization and Approval of a Settlement Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz)*) (the "Approval Motion") at 6-9.

9. The Settlement Agreement describes the LCPI Claim and the LBHI Claim in the following detailed and bespoke terms:

> d. the [Settlement Approval Order] shall provide that the [Administrator] has an allowed and accepted non-priority unsecured claim in the amount of $1,015,500,000 against LCPI . . .;
>
> e. except as hereinafter provided, the [Settlement Approval Order] shall provide that the [Administrator] has an allowed and accepted unsecured claim as a creditor against LBHI on account of any and all claims arising under the Security & Collateral Agreement relating to [certain loans] in an aggregate amount equal to $1,380,900,000 less the amount of any distributions that are received by [the Administrator] in respect of the [LCPI Claim]; provided, however, that the Lehman Parties reserve the right to

seek a reduction or disallowance of the [LBHI Claim] in the event that LCPI is substantively consolidated with LBHI; and provided further, that the [Administrator] reserves all rights, claims, defenses and objections related thereto . . .

\*\*\*

**k.    For the avoidance of doubt, except as otherwise provided in this Section 12, [the Claims] shall be treated in a like manner to that of other general unsecured claims against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other general unsecured claims against LBHI and LCPI,** and shall not be subject to further defenses, whether by way of setoff, recoupment, counterclaim or otherwise, or any claim under Section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating the [LCPI Claim] or the [LBHI Claim] to the claims of other general unsecured claims.

Decl. Ex. 1, § 12 (emphasis added) (§ 12(k) quoted above, the "Clarifying Clause").

10.    The effectiveness of the Settlement Agreement was conditioned upon this Court's approval in this case and in Bankhaus's Chapter 15 case. On December 18, 2009, the Settling Debtors filed the Approval Motion, in which the Settling Debtors quoted verbatim the provisions quoted above, including the Clarifying Clause. Decl. Ex. 2 at 14-15. On the same date, the Administrator filed a motion for approval of the Settlement Agreement in Bankhaus's Chapter 15 case (the "Bankhaus Approval Motion"), in which the Administrator quoted verbatim the provisions quoted above, including the Clarifying Clause. Decl. Ex. 3 at 7-8.

11.    On January 13, 2010, this Court held a hearing on both Approval Motions (the "Hearing"). *See generally* Decl. Ex. 4 (1/13/10 Hr'g Tr.) at 26-54. At the Hearing, counsel for the Settling Debtors proffered the testimony of Daniel Ehrmann of A&M, the lead negotiator for the Settling Debtors, to the effect that, "Under the settlement agreement the administrator is to be granted a non-priority **general unsecured claim** against LCPI . . .," and that, "The administrator will also be granted a non-priority **general unsecured claim** against LBHI under the security

and collateral agreement . . . ." *Id.* at 28:20 - 29:10, 36:4 - 37:2 (emphasis added).  At the Hearing, counsel for the Administrator stated that Bankhaus "receives substantial allowed **general unsecured claims** against certain Lehman entities," and proffered the testimony of the Administrator to the effect that he had "heard the description of the settlement agreement from Mr. Ehrman[n] and would concur with his description." *Id.* at 46:22 - 47:4, 49:9-13 (emphasis added).  This Court approved both motions from the bench.  *Id.* at 42:11-12, 52:9 - 53:3.

12. On January 14, 2010, this Court entered the Settlement Approval Order, which expressly orders that:

> the [LCPI Claim], Claim No. 0000059006, relating to Category 3 Loans, is allowed and accepted as a non-priority unsecured claim in the amount of $1,015,500,000 . . .;
>
> the [LBHI Claim], Claim No. 0000058233, on account of any and all claims arising under the Security & Collateral Agreement relating to the Category 3 Loans and to one of the Category 1 Loans . . . is allowed and accepted as a non-priority unsecured claim in an aggregate amount equal to $1,380,900,000 less the amount of any distributions that are received by [the Administrator] in respect of the [LCPI Claim]; *provided, however,* that the Lehman Parties reserve the right to seek a reduction or disallowance of the [LBHI Claim] in the event that LCPI is substantively consolidated with LBHI; and *provided further,* that the [Administrator] reserves all rights, claims, defenses and objections related thereto . . .;
>
> **the Allowed Claims shall be shall be treated in a like manner to that of other general unsecured claims against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other general unsecured claims against LBHI and LCPI,** and shall not be subject to further defenses, whether by way of setoff, recoupment, counterclaim or otherwise, or any claim under Section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating the [LCPI Claim] or the [LBHI Claim] to the claims of other general unsecured claims.

Decl. Ex. 5 (*Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedures 9019 Authorizing and Approving of a Settlement Agreement with the*

*Insolvency Administrator of Lehman Brothers Bankhaus AG (in Insolvenz)*) at 3-4 (emphasis added).[1]

13. On April 14, 2010, the Debtors filed the Disclosure Statement for their Joint Chapter 11 Plan. In this Disclosure Statement, consistent with the plain terms of the Settlement Approval Order, the Debtors described the Claims as "general unsecured Claim[s]," and appear to have correctly classified the LCPI Claim as a "General Unsecured Claim" (LCPI Class 3) against LCPI, and the LBHI Claim as a "General Unsecured Claim" (LBHI Class 4) against LBHI. *See* Decl. Ex. 6 at 55-56 & at Ex. 4 (Recovery Analyses for LCPI & for LBHI).

14. In July 2010, Deutsche Bank and the Administrator entered into an Agreement Regarding the Sale and Assignment of Claims (the "Assignment Agreement"), whereby Deutsche Bank purchased the Claims. In the Assignment Agreement, the Administrator expressly stated as follows:

> The Insolvency Administrator acknowledges and confirms that his intention and understanding of the status and treatment of the Claims, in entering into the Settlement Agreement, were that (and his understanding of the Debtors' intentions and understandings, in entering into the Settlement Agreement, was that):
>
> (i) the LCPI Claim will be classified and treated as an allowed and accepted **general unsecured claim, equal to all other general unsecured claims against LCPI, and not as a claim of an affiliate or an intercompany claim or a claim that is otherwise impaired,** capped, subordinated or subject to any further defenses . . .;
>
> (ii) the LBHI Claim will be classified and treated as an allowed and accepted **general unsecured claim, equal to all other general unsecured claims against LBHI, and not as the claim of an affiliate or an intercompany claim or a claim that is otherwise impaired,** capped, subordinated or subject to any further defenses . . ., subject only to the express terms of the Settlement Agreement . . . .

---

[1] *Cf. Order Granting Motion by Insolvency Administrator for Authorization to Enter into Settlement Agreement with Lehman Parties* [case no. 09-12704, docket no. 33].

Decl. Ex. 7 (Agreement Regarding the Sale and Assignment of Claims, dated as of July 12, 2010) at § 8(3) (emphasis added).

15. After purchasing the Claims, Deutsche Bank sold participations in the Claims to other persons, while retaining a substantial portion of each of the Claims in its own right.[2]

16. On January 25, 2011, the Debtors filed the Disclosure Statement for their First Amended Joint Chapter 11 Plan. In this Disclosure Statement, the Debtors again described the Claims as "general unsecured Claims," and again, correctly, classified the LCPI Claim as a "General Unsecured Claim" (LCPI Class 4) against LCPI, and the LBHI Claim as a "General Unsecured Claim" (LBHI Class 7) against LBHI. *See* Decl. Ex. 8 at 47 & at Ex. 4 (Recovery Analyses for LCPI & for LBHI).

17. In advance of the filing of the disclosure statement for the Debtors' Second Amended Plan (the "Second Amended Disclosure Statement") on June 30, 2011, Deutsche Bank became aware that Debtors had changed course and now intended to classify the Claims as affiliate and/or guaranty claims in connection with the anticipated amended plan. Deutsche Bank protested the change, but the Debtors would not concede that the Claims were now misclassified.

18. The Debtors disclosed this dispute in the Second Amended Disclosure Statement:

> Since the [Claims] are based on a contractual obligation of LCPI to an Affiliate, the Debtors have included the [LCPI Claim] in LCPI Class 5C as a Claim of an Affiliate other than LBHI and the Participating Subsidiary Debtors, and the . . . [LBHI Claim] in LBHI Class 4B as a Senior Affiliate Guarantee Claim. Deutsche Bank disputes such classifications and asserts that such Claims should be included in LCPI Class 4A as a General Unsecured Claim against LCPI and in LBHI Class 7 as a General Unsecured Claim against LBHI.

---

[2] Among those other persons are funds managed by Centerbridge Credit Advisors LLC, Monarch Alternative Capital LP, and Anchorage Capital Group, L.L.C., which support the relief sought herein.

Decl. Ex. 9 at Ex. 4, p. 4-9.  And yet, in the same Disclosure Statement, the Debtors also admitted that the Settlement Agreement "provided that [the Claims] will be Allowed as **general unsecured claims** against LCPI . . . and against LBHI . . . ."  *Id.* at Ex. 14A, p. 14A-1 (emphasis added).  The Disclosure Statement for the Third Amended Plan (the "Current Plan") is the same as the Second Amended Disclosure Statement with respect to this and other classification issues. *See* Decl. Ex. 10 at Ex. 4, pp. 4-9 - 4-10 & at Ex. 14A, p. 14A-1.

19. Thus, the Debtors' new position is that the Claims, which are admittedly "general unsecured claims," should not be classified as "General Unsecured Claims."  *See id.*

20. General Unsecured Claims in LCPI Class 4A are projected to receive an estimated recovery of 55.7%, while Affiliate Claims in LCPI Class 5C are projected to receive an estimated recovery of 52.1%.  Decl. Ex. 10 at Ex. 4 (Recovery Analysis for LCPI).  General Unsecured Claims in LBHI Class 7 are projected to receive an estimated recovery of 19.9%, whereas Senior Affiliate Guarantee Claims in LBHI Class 4B are projected to receive an estimated recovery of 15.2%.  Decl. Ex. 10 at Ex. 4 (Recovery Analysis for LBHI).

21. Properly classified in LCPI Class 4A, the LCPI Claim would account for about 1.015/3.371, or 30%, of the total estimated allowed claims in this class.  *See* Decl. Ex. 10 at Ex. 4 (Recovery Analysis for LCPI).

## RELIEF REQUESTED

22. Deutsche Bank respectfully requests that this Court promptly enter an order that (i) classifies the LCPI Claim (Claim No. 59006) in LCPI Class 4A for all purposes under the Current Plan, (ii) classifies the LBHI Claim (Claim No. 58233) in LBHI Class 7 for all purposes under the Current Plan, and (iii) directs that each of the LCPI Claim and the LBHI Claim shall be

classified as generic, non-priority, non-affiliate, non-guaranty, general unsecured claims in any other chapter 11 plan that may be confirmed in LCPI's and LBHI's cases.

## ARGUMENT

23. The Debtors' attempt to reclassify these admittedly "general unsecured claims" as anything other than General Unsecured Claims in the Current Plan contradicts the plain terms of the Settlement Approval Order, the Settlement Agreement, and every other relevant representation made to this Court in this case and in Bankhaus's Chapter 15 case -- including the Debtors' own prior Disclosure Statements. This Court should promptly restore the Claims to their proper classes.

### A. Prompt Correction of the Misclassification is Necessary and Appropriate.

24. This Court has authority under Section 105(a) and the inherent authority to enforce its own orders at any and all times. *E.g., Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43-44 (1st Cir. 2008) (cited by, e.g., *In re Dickerson,* 2009 WL 4666457, *9 (Bankr. N.D.N.Y. 2009) ("In bankruptcy, 11 U.S.C. section 105(a) authorizes bankruptcy courts . . . to take any action or make any 'determination necessary or appropriate to enforce or implement court orders . . . .'")). This Court also has authority under Rule 3013 to resolve claim classification disputes prior to plan confirmation, prior to solicitation, or even prior to a plan being formulated. *500 Fifth Ave. Assocs. v. Gen. Elec. Capital Corp.* (*In re 500 Fifth Ave. Assocs.),* 148 B.R. 1010, 1017 n.7 (Bankr. S.D.N.Y.) ("Issues of claim classification raised pursuant to [] Rule 3013 may be ripe for determination prior to a confirmation hearing."), *aff'd,* 1993 WL 316183 (S.D.N.Y. 1993); Advisory Committee Note to Rule 3013 ("This rule . . .

recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated.")[3]

25. Especially here, where the Debtors' position contradicts this Court's own order, where each of the Claims is in a face amount greater than $1 billion, and where the LCPI Claim constitutes about one third of the aggregate estimated allowed claims in its proper class, it is "desirable and necessary to establish proper classification" prior to the close of the solicitation process. *See, e.g., 500 Fifth Ave.,* 148 B.R. at 1017 n.7 (finding Rule 3013 motion to be ripe for determination "before a plan can be formulated" and granting creditor's motion).[4] The prompt resolution of this matter will avoid the risk of a post-confirmation ruling that the Claims were misclassified. *See, e.g., Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.),* 913 F.2d 873, 879-80 (11th Cir. 1990) (affirming reversal of confirmation order, based on debtors' failure to classify commonly controlled creditor's claim in general unsecured class).

  **B.**  **The Settlement Order is Unambiguous and Should be Enforced.**

26. The Settlement Approval Order was clearly intended to enforce the terms of the Settlement Agreement. The Settlement Agreement, which is governed by New York law, Decl. Ex. 1 at § 16(b), must be interpreted according to its plain and unambiguous terms, and so as to avoid making any of those terms a nullity. *E.g., Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.,* 775 N.Y.S.2d 765, 767 (N.Y. 2004) ("[W]hen parties set down their agreement in a clear,

---

[3] Advisory Committee Notes are authoritative evidence of intent. *E.g., Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) (deferring to "authoritative commentary in the advisory committee notes"); *In re DRW Prop. Co.*, 60 B.R. 505, 511 (N.D. Tex. 1986) (relying on advisory committee notes in ruling on Rule 3013 motion).

[4] *See also, e.g., In re Am. Family Enter.*, 256 B.R. 377, 401 (D.N.J. 2000) ("Bankruptcy Rule 3013 permits the Court to make determinations on the classification of claims before the Confirmation Hearing."); *In re E. Me. Elec. Coop., Inc.,* 125 B.R. 329, 333 (Bankr. D. Maine 1991) (serious issues classification issues to be considered in context of disclosure statement approval); *In re DRW Prop. Co.,* 60 B.R. at 506 ("Rule 3013 . . . authorizes court approval of voter classification prior to the solicitation . . . ."); 10 Collier on Bankruptcy ¶ 3013.01 (15th ed. rev. 2008).

complete document, their writing should . . . be enforced according to its terms.") (internal quotations omitted); *Nautilus Ins. Co. v. Matthew David Events, Ltd.*, 893 N.Y.S.2d 529, 532 (1st Dep't 2010) ("a court should not adopt a construction of a contract which will operate to leave a provision of a contract . . . without force and effect . . ."). The plain and unambiguous terms of the Settlement Agreement's Clarification Clause dictate that the Claims must be classified and allowed as general unsecured claims: i.e., <u>not</u> as affiliate unsecured claims or guaranty unsecured claims. *See id.*; Decl. Ex. 1 at § 12(k).

27. The parties clearly intended for the Settlement Agreement to be a "clear, complete document" that would resolve substantial, complex disputes with finality. *See Vt. Teddy Bear,* 775 N.Y.S.2d at 767. The section of the Settlement Agreement that describes the Claims occupies two pages and has eleven subsections. Decl. Ex. 1 at § 12. The Clarifying Clause was included "[f]or the avoidance of doubt." *Id.* § 12(k). The specific terms that the parties negotiated -- including the term "general unsecured claims" -- should be effected, not ignored. *See Nautilus Ins. Co.,* 893 N.Y.S.2d at 532. The Debtors themselves effected those terms in the prior plans that they filed in this case. *See* Decl. Ex. 6 at 56 & at Ex. 4 (Recovery Analyses for LCPI & LBHI); Decl. Ex. 8 at 47 & at Ex. 4 (Recovery Analyses for LCPI & LBHI).

28. And yet, the Debtors now assert that the Claims should be classified as affiliate claims because Bankhaus is an affiliate of the Settling Debtors. *See* Decl. Ex. 10 at Ex. 4, p. 4-9. But the Debtors were aware that Bankhaus was an affiliate when they negotiated the Settlement Agreement. It is unthinkable that the Debtors and their counsel intended for the Claims to be treated as one of the myriad affiliate claims in this case -- and not only neglected to say so, but somehow agreed expressly to the contrary. To the extent the Debtors' new theory is an afterthought, it comes nineteen months too late. *See In re Lafayette Dial, Inc.*, 92 B.R. 798, 800

(Bankr. N.D. Ind. 1988) ("Having once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement. Indeed, attempts to do so are frequently condemned in the strongest possible terms.").

29. The Debtors also now assert that the LBHI Claim should be classified as a guaranty claim. *See* Decl. Ex. 10 at Ex. 4, p. 4-9. The Settling Debtors agreed to the contrary. The LBHI Claim is based on the Security & Collateral Agreement. The Settlement Agreement resolved a substantial dispute over whether or not the Security & Collateral Agreement -- whereby LBHI was required to post collateral to Bankhaus to protect against impairment of loans -- was a guaranty. Decl. Ex. 2 (Approval Motion) at 6-9. At the Hearing, the Debtors' counsel and the Administrator's counsel both made this point:

> As Mr. Krasnow also mentioned, Bankhaus receives substantial allowed **general unsecured claims** against certain entities. And, again, **as opposed to litigating those issues with respect to guarantee, whether they're not guarantee,** whether the security and collateral agreement has the effect that Mr. Krasnow suggested, **these are all issues that could be litigated but they're resolved pursuant to the settlement agreement**.

Decl. Ex. 4 at 46:22 - 47:4 (Administrator's counsel); *see id.* at 32:9-24, 39:13 - 40:2 (Debtors' counsel).

30. To resolve the dispute about the nature of the claim based on the Security & Collateral Agreement, the parties ultimately agreed that the LBHI Claim would be reduced by "the amount of any distributions that are received by [the Administrator] in respect of the [LCPI Claim]," and that the Debtors "reserve[d] the right to seek a reduction or disallowance of the [LBHI Claim] in the event that LCPI is substantively consolidated with LBHI." Decl. Ex. 1 at § 12(e). Otherwise, the parties agreed that the LBHI Claim (and the LCPI Claim) "shall be treated in a like manner to that of other general unsecured claims against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other general

unsecured claims against LBHI and LCPI." *Id.* at § 12(k). The Debtors cannot reasonably argue that these bespoke terms were meant to provide, implicitly, that the LBHI Claim could be <u>further</u> impaired by being classified along with guaranty claims at the Debtors' discretion. The whole point of the Clarifying Clause was, "[f]or the avoidance of doubt," to end the guaranty-or-not debate on conclusive, known and agreed terms. *See id.*

31. Likewise, any argument that the parties intended for either of the Claims to be unsecured claims of a type to be determined must fail, because it equates to reading the phrase "[f]or the avoidance of doubt" and the repeated word "general" out of the Clarification Clause, contrary to New York contract law. *See, e.g., Nautilus,* 893 N.Y.S.2d at 532 (quoting *Ruttenberg v. Davidge Data Sys. Corp.,* 626 N.Y.S.2d 174 (1st Dep't 1995)) ("An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation."). Moreover, any open-ended interpretation of the Clarifying Clause would contradict the parties' clear intent, in entering into the Settlement Agreement, to achieve closure in a complex and longstanding dispute.

32. Because the only reasonable interpretation of the Clarifying Clause is that the parties intended for the Claims to be classified as truly "general" unsecured claims, the Settlement Agreement is unambiguous on this point. *See, e.g., Greenfield v. Philles Records, Inc.,* 750 N.Y.S.2d 565, 570 (N.Y. 2002) (contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning"). Because the Settlement Agreement is unambiguous, the Settlement Approval Order is also unambiguous. Accordingly, this Court should enter an order enforcing the plain terms of this Court's order and the parties' agreement. *See, e.g., Metropolitan Life Ins. Co. v. RJR Nabisco*, 906 F.2d 884, 889 (2d Cir. 1990).[5]

---

[5] Deutsche Bank reserves its rights to take discovery and otherwise in the event that the Settling Debtors assert, or this Court finds, that the Settlement Approval Order or the Settlement Agreement is ambiguous.

## CONCLUSION

For the reasons set forth above, Deutsche Bank respectfully requests that this Court promptly enter an order that (i) classifies the LCPI Claim (Claim No. 59006) in LCPI Class 4A for all purposes under the Current Plan, (ii) classifies the LBHI Claim (Claim No. 58233) in LBHI Class 7 for all purposes under the Current Plan, and (iii) directs that each of the LCPI Claim and the LBHI Claim shall be classified as generic, non-priority, non-affiliate, non-guaranty, general unsecured claims in any other chapter 11 plan that may be confirmed in LCPI's and LBHI's cases.

Dated: September 27, 2011
       New York, New York

**BINGHAM MCCUTCHEN LLP**

By: /s/ Joshua Dorchak
Joshua Dorchak
399 Park Avenue
New York, New York 10022
Telephone: 212.705.7000
Facsimile: 212.702.3667
Email: joshua.dorchak@bingham.com

*Attorneys for Deutsche Bank AG*