**EXHIBIT 6**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

**DEBTORS' DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Dated: April 14, 2010
New York, New York

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. OVERVIEW OF THE PLAN ..... 2
A. Summary of the Plan ..... 2
B. Classification, Treatment and Estimated Recovery for Each Class Under the Plan ..... 3
C. Holders of Claims Entitled to Vote ..... 23
D. Voting Procedures ..... 24
E. Confirmation Hearing ..... 25
III. GENERAL INFORMATION ..... 26
A. Overview of Chapter 11 ..... 26
B. Description and History of the Business of Lehman ..... 28
1. General Information Regarding Lehman ..... 28
2. Business Segments ..... 29
a. Capital Markets Division ..... 29
b. Investment Banking Division ..... 29
c. Investment Management Division ..... 29
3. Corporate Structure ..... 30
4. Description of the Business of Each Debtor ..... 32
a. Lehman Brothers Holdings Inc ..... 32
b. Lehman Commercial Paper Inc ..... 32
c. Lehman Brothers Commodity Services Inc ..... 32
d. Lehman Brothers Special Financing Inc., Lehman Brothers Derivative Products Inc. and Lehman Brothers Financial Products Inc ..... 32
e. Lehman Brothers OTC Derivatives Inc ..... 32
f. Lehman Brothers Commercial Corporation ..... 32
g. LB 745 LLC ..... 32
h. PAMI Statler Arms, LLC ..... 32
i. CES Aviation LLC, CES Aviation V LLC and CES Aviation IX LLC ..... 32

**TABLE OF CONTENTS**
**(continued)**

**Page**


j. East Dover Limited ... 32
k. Lehman Scottish Finance L.P ... 33
l. Luxembourg Residential Properties Loan Finance S.a.r.l ... 33
m. BNC Mortgage LLC ... 33
n. LB Rose Ranch LLC ... 33
o. Structured Asset Securities Corporation ... 33
p. LB 2080 Kalakaua Owners LLC ... 33
q. Merit LLC ... 33
r. LB Somerset LLC and LB Preferred Somerset LLC ... 33

5. Description of Debtors' Principal Non-Debtor Affiliates ... 33
a. Lehman Brothers Inc. ... 33
b. Lehman Brothers Bankhaus AG (in Insolvenz) ... 33
c. Lehman Brothers Treasury Co. B.V ... 33
d. Lehman Brothers Finance A.G. a.k.a. Lehman Brothers Finance S.A ... 33
e. Lehman Brothers International (Europe) ... 34
f. LB I Group ... 34
g. Property Asset Management Inc ... 34

6. Directors and Executive Officers of LBHI ... 34
a. Directors ... 34
b. Executive Officers ... 36

7. Capital Structure ... 36
a. Prepetition Short Term Borrowings ... 36
b. Prepetition Long-Term Borrowings ... 37
c. Prepetition Credit Facilities ... 38
d. Other Secured Borrowings ... 39
e. Bank Platforms ... 39
f. Preferred Stock ... 39
g. Common Stock ... 41

**TABLE OF CONTENTS**
**(continued)**

**Page**


h. Trust Securities ..... 41

8. Liquidity Pool ..... 42

IV. EVENTS LEADING UP TO CHAPTER 11 ..... 42

V. THE CHAPTER 11 CASES ..... 45

A. Stabilization of the Business ..... 45

1. Retention of A&M and Other Professionals ..... 47

2. Creditors' Committee ..... 48

B. Lehman Brothers Inc.'s SIPA Proceeding; Lehman ALI ..... 49

C. Sale of the North American Capital Markets and Investment Banking Business to Barclays Capital Inc ..... 50

D. Significant Developments During the Chapter 11 Case ..... 53

1. Significant Asset Dispositions ..... 53

a. Sale of Investment Management Division ..... 53

b. Sale of European and Asian Assets and Businesses to Nomura ..... 54

c. De Minimis Sale Order ..... 55

2. Significant Settlements and Transactions ..... 55

a. Settlement with the Pension Benefit Guaranty Corporation ("PBGC") ..... 55

b. Settlement with Lehman Brothers Bankhaus AG ..... 55

c. Transaction with JPMorgan ..... 56

3. Cross Border Insolvency Protocol ..... 58

a. Summary of Material Terms of the Protocol ..... 58

b. Meetings and Benefits of the Protocol ..... 59

4. Appointment of Examiner ..... 60

5. Employee Retention Programs ..... 61

a. Retention and Recruitment Program ..... 61

b. Derivatives Group Employees Incentive Plan ..... 61

E. Administration of the Debtors' Assets During the Chapter 11 Cases ..... 62

**TABLE OF CONTENTS**
**(continued)**

**Page**


1. Derivatives Contracts ... 62
   a. Derivatives Protocols ... 63
   b. Key Litigation Relating to Derivative Contracts ... 65
   c. Updated Information Regarding Derivative Contracts ... 66
2. Real Estate Assets ... 67
   a. Real Estate Protocols Established by the Debtors ... 67
   b. Significant Transactions/Restructurings/Sales ... 68
   c. Updated Information Regarding the Debtors' Real Estate Assets ... 70
3. Commercial Loans ... 70
   a. Termination of Unfunded Commitment and Restructurings ... 71
   b. Settlements of Prepetition Open Trades ... 71
   c. Updated Information Regarding the Debtors' Commercial Loan Portfolio ... 72
4. Bank Platforms ... 73
   a. Transactions with Woodlands Commercial Bank ... 73
   b. Transactions with Aurora Bank ... 74
   c. Updated Information Regarding the Debtors' Interest in the Banks ... 76
5. Private Equity/Principal Investments ... 76
   a. Significant Transactions/Sales ... 76
   b. Updated Information Regarding the Debtors' Private Equity/Principal Investments ... 78

F. Adversary Proceedings ... 78

VI. CLAIMS PROCESS AND BAR DATE ... 78
   A. Schedules and Statements ... 78
   B. Claims Bar Date ... 79

VII. DEBTORS' RELATIONSHIP WITH LEHMAN BROTHERS INC ... 81

VIII. INTERCOMPANY CLAIMS ... 81

**TABLE OF CONTENTS**
**(continued)**

**Page**

IX. LAMCO ..... 82

X. SUMMARY OF THE CHAPTER 11 PLAN ..... 84

A. Considerations Regarding the Chapter 11 Plan ..... 84

1. Substantive Consolidation ..... 84

2. Non-Substantive Consolidation of the Debtors ..... 85

3. The Plan is a Fair Proposal to the Economic Stakeholders ..... 85

B. Rationale Underlying Plan Treatment of Claims ..... 87

1. Economic Solutions With Respect To Third-Party Guarantee Claims and Affiliate Guarantee Claims ..... 87

a. Third Party Guarantee Claims ..... 88

b. Affiliate Guarantee Claims ..... 90

2. Treatment of Intercompany Claims ..... 92

C. Classification and Treatment of Claims and Equity Interests ..... 93

1. Treatment of Unclassified Claims ..... 93

a. Administrative Expense Claims ..... 93

b. Compensation and Reimbursement Claims ..... 94

c. Priority Tax Claims ..... 94

2. Summary of Classes ..... 96

a. Treatment of Classified Claims Against and Equity Interests in LBHI ..... 96

b. Treatment of Classified Claims Against and Equity Interests in the Subsidiary Debtors ..... 100

D. Means for Implementation of the Plan ..... 101

1. Continued Corporate Existence of Debtors ..... 101

2. Revesting of Assets ..... 101

3. Plan Administrator ..... 102

a. Authority of the Plan Administrator ..... 102

b. Liability of Plan Administrator ..... 103

c. Indenture Trustee and Creditors' Committee Members Fees ..... 103

**TABLE OF CONTENTS**
**(continued)**

**Page**

4. Treatment of Disputed Claims .... 103
E. Provisions Governing Distributions .... 104
1. Obligations to Make Distributions .... 104
2. Post Petition Interest .... 104
3. Method of Distributions Under the Plan .... 104
a. In General .... 104
b. Distributions of Cash .... 105
4. Timing of Distributions .... 105
a. Distributions of Available Cash .... 105
b. Distributions on Claims After Allowance .... 105
c. Distribution Record Date .... 106
d. Time Bar to Cash Payment Rights .... 106
5. Unclaimed Distributions .... 106
6. Withholding and Reporting Requirements .... 106
7. Setoff and Recoupment .... 107
F. Treatment of Executory Contracts and Unexpired Leases .... 107
1. Rejected Contracts and Leases of the Debtors .... 107
2. Assumed Contracts and Leases of the Debtors .... 107
3. Right to Modify Schedules of Assumed Contracts .... 108
4. Insurance Policies .... 108
5. Cure of Defaults .... 108
6. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan .... 108
G. Conditions Precedent to Plan's Confirmation and Effective Date .... 109
1. Conditions to Confirmation of the Plan .... 109
2. Conditions to Effective Date .... 109
3. Waiver of Conditions .... 109
H. Effect of Confirmation of the Plan .... 109
1. Release, Exculpation and Limitation of Liability .... 109

**TABLE OF CONTENTS**
**(continued)**

**Page**


2. Injunction ..... 110
3. Retention of Litigation Claims and Reservation of Rights ..... 110
4. Terms of Injunctions or Stays ..... 111

I. Summary of Other Provisions of Plan ..... 111
1. Amendment or Modification of the Plan ..... 111
2. Survival of Debtors’ Reimbursement Obligations of Officers and Directors ..... 112
3. Allocation of Plan Distributions Between Principal and Interest ..... 112
4. Maximum Distribution ..... 112
5. Revocation or Withdrawal of the Plan ..... 112
6. Dissolution of the Creditors’ Committee ..... 113
7. Exemption from Transfer Taxes ..... 113
8. Effectuating Documents and Further Transactions ..... 113
9. Retention of Jurisdiction ..... 113
10. Plan Supplement ..... 114

J. Summary of Recovery Analysis Under the Plan ..... 115

XI. CONFIRMATION AND CONSUMMATION OF THE PLAN ..... 115

A. Solicitation of Votes ..... 115
B. The Confirmation Hearing ..... 116
C. Confirmation ..... 116
1. Acceptance ..... 116
2. Unfair Discrimination and Fair and Equitable Tests ..... 117
3. Feasibility ..... 118
4. Best Interests Test ..... 118

D. Consummation ..... 121

XII. CORPORATE GOVERNANCE AND MANAGEMENT OF THE DEBTORS ON THE EFFECTIVE DATE ..... 121

A. Board of Directors and Management ..... 121
1. Board of Directors ..... 121

**TABLE OF CONTENTS**
**(continued)**

**Page**


2. Management of the Debtors ........ 122
3. Holders of the Stock of Debtors On Effective Date ........ 122
4. Plan Administrator ........ 122
5. Corporate Existence ........ 122
6. Certificates of Incorporation and By-laws ........ 123
7. Wind-Down ........ 123
8. Other Corporate Governance Matters ........ 123

XIII. SECURITIES LAWS MATTERS ........ 123

XIV. CERTAIN RISK FACTORS TO BE CONSIDERED ........ 124
A. Certain Bankruptcy Law Considerations ........ 124
B. Conditions Precedent to Consummation of the Plan ........ 125
C. Asset Sales ........ 125
D. Estimation of Allowed Claims ........ 125
E. Certain Tax Considerations ........ 125

XV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ........ 125
A. Consequences to LBHI and Subsidiary Debtors ........ 127
1. Tax Filing Status; Tax Attributes ........ 127
2. General Discussion of Plan ........ 128
a. Asset Dispositions ........ 128
b. Plan Distributions ........ 128
3. Tax Impact of the Plan on the Debtors ........ 129
a. Cancellation of Debt ........ 129
b. Limitation of NOL Carryforwards and other Tax Attributes ........ 130
c. Non-U.S. Income Tax Matters ........ 131
B. Consequences to Holders of Claims and LBHI Equity Interests ........ 132
1. Realization and Recognition of Gain or Loss, In General ........ 132

**TABLE OF CONTENTS**
**(continued)**

**Page**


2. Holders of Allowed General Unsecured Claims (for LBHI, Classes 3, 4, 6, 7 and 8; for all other Debtors, Classes 3 and 4) ..... 132
3. Allocation of Consideration to Interest ..... 133
4. Withholding on Distributions, and Information Reporting ..... 133

XVI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ..... 134
A. Alternative Plan(s) ..... 134
B. Liquidation under Chapter 7 ..... 135

XVII. VOTING PROCEDURES AND REQUIREMENTS ..... 136
A. Ballots and Voting Deadline ..... 136
B. Voting Procedures ..... 137
C. Special Note for Holders of Notes Issued Directly by LBHI ..... 137
1. Beneficial Owners ..... 138
2. Nominees ..... 138
a. Pre-Validated Ballots ..... 138
b. Master Ballots ..... 139
3. Securities Clearing Agencies ..... 139
4. Miscellaneous ..... 139
D. Fiduciaries and other Representatives ..... 140
E. Parties Entitled to Vote ..... 140
F. Agreements Upon Furnishing Ballots ..... 141
G. Waivers of Defects, Irregularities, Etc ..... 141
H. Withdrawal of Ballots; Revocation ..... 142
I. Further Information; Additional Copies ..... 143

XVIII. CONCLUSION AND RECOMMENDATION ..... 144

Schedule A- Definitions

**TABLE OF CONTENTS**
**(continued)**

**Page**

**Exhibits**

| | |
|---|---|
| Exhibit 1 | Chapter 11 Plan |
| Exhibit 2A | Balance Sheets of Each Debtor, as of September 14, 2008 |
| Exhibit 2B | Balance Sheets of Each Debtor, as of the Applicable Commencement Date |
| Exhibit 2C | Balance Sheets of Each Debtor, as of June 30, 2009 |
| Exhibit 2D | Balance Sheets of Each Debtor, as of December 31, 2009 (To Be Provided When Issued) |
| Exhibit 3 | Balance Sheets of Aurora Bank and Woodlands, as of December 31, 2009 |
| Exhibit 4 | Recovery Analysis for Each Debtor |
| Exhibit 5 | Liquidation Analysis for Each Debtor |
| Exhibit 6 | Debtors' Estimates of Claims and Claims Data |
| Exhibit 7 | Five-Year Cash Flow Estimates |
| Exhibit 8 | Corporate Structure Charts of LBHI and its Subsidiaries |
| Exhibit 9 | Significant Intercompany Balances |
| Exhibit 10 | Third-Party Guarantee Class Maximum (Schedule 6 to the Plan) |
| Exhibit 11 | Affiliate Third Derivative Liabilities |
| Exhibit 12 | Foreign Administrators (Schedule 2 to the Plan) |
| Exhibit 13 | Foreign Proceedings (Schedule 3 to the Plan) |
| Exhibit 14 | Primary Obligors (Schedule 4 to the Plan) |
| Exhibit 15 | Schedule 5 Affiliates (Schedule 5 to the Plan) |

transitional basis to the Debtors. In exchange for Nomura's transition services, LBHI agreed to continue to provide those services that were being provided by LBHI (or the Debtor-Controlled Entities) prior to acquisition by Nomura under the Nomura Purchase Agreements. The transaction resulted in approximately 7,000 former Lehman employees obtaining employment with Nomura.

**c. De Minimis Sale Order**

In order to liquidate some of the Debtors' less valuable assets in an efficient manner, the Debtors sought approval of procedures that would enable the Debtors to sell *de minimis* assets without seeking further approval of the Bankruptcy Court. On June 17, 2009, the Bankruptcy Court, *inter alia*, established procedures for the Debtors' sale or abandonment of certain property and interests in property free and clear of all liens, claims, and encumbrances without further court approval. Pursuant to the *de minimis* sales procedures, through the latest monthly filing as of March 15, 2010, the Debtors have sold personal property and real property and related assets for approximately $7 million.

**2. Significant Settlements and Transactions**

**a. Settlement with the Pension Benefit Guaranty Corporation ("PBGC")**

Prior to and during these Chapter 11 Cases, LBHI sponsored a defined benefit plan (the "Lehman Pension Plan") that provided pension benefits for approximately 22,000 then-current and former Lehman employees and their beneficiaries. On December 12, 2008, in response to concern that the Lehman Pension Plan was underfunded by approximately $200 million, the PBGC commenced an action in the United States District Court for the Southern District of New York (the "PBGC District Court Action"), Civ. No. 08 CIV 10792 (HB), to terminate the pension plan, take over the plan's assets and set a plan termination date of December 12, 2008. Arm's-length negotiations aimed at resolving the PBGC's Claims commenced shortly thereafter, and resulted in a settlement agreement between the Debtors and the PBGC (the "PBGC Settlement Agreement"), which was approved by the Bankruptcy Court on June 3, 2009. The PBGC Settlement Agreement provides, among other things, for termination of the Lehman Pension Plan and a payment of $128 million to the PBGC in respect of pension benefits as statutory trustee to administer the Lehman Pension Plan's assets. On August 11, 2009, a joint stipulation of dismissal between the PBGC and LBHI's employee benefit plans committee, dated June 18, 2009, was entered on the PBGC District Court Action's docket.

**b. Settlement with Lehman Brothers Bankhaus AG**

Prior to the Commencement Date, with respect to commercial and real estate loans, LBHI, LCPI, and Lehman ALI (collectively, the "Lehman Parties") and Bankhaus often entered into transactions with one another, or their wholly owned

subsidiaries, whereby one of the parties acted as the lender of record and/or agent (the "Lender") for certain loans, and the other party or parties would acquire interests in those loans through a participation (the "Participant"). Following the Commencement Date, a dispute arose among the Lehman Parties and Dr. Michael C. Frege, the Foreign Administrator of Bankhaus, over the ownership of certain of the loans. Specifically, the dispute centered on whether Bankhaus, as the Participant, had an ownership interest in certain of the loans, or just an unsecured claim against the Lender. Following nearly a year of extensive, arm's length negotiations between the Lehman Parties and Dr. Frege, the parties agreed to the terms of a settlement agreement (the "Bankhaus Agreement"), which was approved by the Bankruptcy Court on January 14, 2010. Pursuant to the Bankhaus Agreement, the Lehman Parties acquired 86 loans with a total outstanding balance due of approximately $2.9 billion, for a purchase price of approximately $1 billion, which amount accounts for (i) litigation risks associated with the dispute, and (ii) commercial risks attendant to collections. Other loans that were not a part of the dispute were also included in the transaction, and were acquired by the Lehman Parties at a discount. As a result of their efficient administration of the loans, the Lehman Parties expect to recover substantial value. The Lehman Parties also agreed that certain Claims of Bankhaus with respect to other participations will be Allowed as general unsecured Claims against LCPI, in the amount of $1,015,000,000, and against LBHI, in the amount of $1,380,900,000 (subject to certain adjustments). Additional information regarding the Bankhaus Agreement is contained in the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authorization and Approval of a Settlement Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz) [Docket No. 6303].

**c. Transaction with JPMorgan**

Prior to the commencement of the Chapter 11 Cases, JPMorgan served as Lehman's primary bank, providing clearing services to Lehman's primary broker/dealer, LBI, pursuant to a clearance agreement, whereby JPMorgan executed trades and transactions with third parties on behalf of Lehman. In connection with such clearance agreement, Lehman was required to pledge collateral to JPMorgan to secure Lehman's obligations with respect to such trades or transactions. During the course of that relationship, and particularly in September, 2008, JPMorgan required LBI to deposit substantial collateral as security for clearing and settlement services performed by JPMorgan and its affiliates. In addition, JPMorgan required LBHI to execute a series of guaranties, security agreements, and amendments to the clearance agreement, which purportedly enlarged the obligations of various Debtors and together required LBHI to provide collaterally secured guaranties of the obligations of all Lehman entities to JPMorgan and all of its affiliates. In connection therewith, LBHI pledged over $14 billion as collateral security to JPMorgan through September 2008.

JPMorgan and its affiliates have filed proofs of Claim against the Debtors and LBI asserting Claims exceeding $29 billion in the aggregate (the "JPMorgan Claims") and asserting that the JPMorgan Claims are secured primarily by the collateral deposited by LBI and LBHI in connection with the agreements described above.

# LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

## Plan Recovery Analysis

The analysis contained herein is based on data, estimates, projections and assumptions provided by the Debtors and their current management. The data, estimates, projections and assumptions underlying this analysis have not been independently verified and actual results may differ materially from those reflected herein.

**Exhibit 4: Recovery Analysis for Each Debtor**

Lehman Brothers Holdings Inc. and its Affiliated Debtors

*($ in millions)*

**1 LBHI**

| Class | Designation | | Filed Claims[1] | Plan Estimated Claims[2] | Estimated Plan Recovery Amount | Estimated Plan Recovery %[3] |
|---|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims against LBHI | | $5,332 | $22 | $22 | 100.0% |
| 2 | Secured Claims against LBHI | | $32,126 | $2,359 | $2,359 | 100.0% |
| 3[4] | Senior Unsecured Claims | | $100,476 | $83,723 | $14,573 | 17.4% |
| 4 | General Unsecured Claims against LBHI | | $63,225 | $2,598 | $382 | 14.7% |
| 5 | Subordinated Unsecured Claims | | $18,848 | $15,284 | -- | -- |
| | Initial Recovery Amount | $2,250 | | | | |
| | Amount allocated to Class 3 due to subordination | (2,250) | | | | |
| | Net Recovery | $0 | | | | |
| 6[5] | Intercompany Claims against LBHI | | $56,380 | $43,239 | $6,364 | 14.7% |
| 7A[6] | Third-Party Guarantee Claims for which LBSF is the Primary Obligor on the corresponding Primary Claims | | $41,552 | $15,861 | $2,335 | 14.7% |
| 7B[6] | Third-Party Guarantee Claims for which LBCS is the Primary Obligor on the corresponding Primary Claims | | $2,776 | $2,776 | $409 | 14.7% |
| 7C[6] | Third-Party Guarantee Claims for which LBCC is the Primary Obligor on the corresponding Primary Claims | | $353 | $353 | $52 | 14.7% |
| 7D[6] | Third-Party Guarantee Claims for which LOTC is the Primary Obligor on the corresponding Primary Claims | | $310 | $310 | $46 | 14.7% |
| 7E[6] | Third-Party Guarantee Claims for which LBDP is the Primary Obligor on the corresponding Primary Claims | | $702 | -- | -- | -- |
| | The total amount of Allowed Claims is $201 million. The claim is reduced to $0 because LBDP creditors already recover 100% from the primary obligor's assets. | | | | | |
| 7F[6] | Third-Party Guarantee Claims for which LCPI is the Primary Obligor on the corresponding Primary Claims | | $1,162 | $1,162 | $171 | 14.7% |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0".

[1] Filed claims, as adjusted to take into account clear errors, duplications and non-controversial corrections that are appropriate, as of March 9, 2010.

[2] "Plan Estimated Claims" means, for all Classes except LBHI Class 7 and LBHI Class 8, the Debtors' estimate of Allowed Claims, and for LBHI Class 7, the Permitted Third-Party Guarantee Claims, and for LBHI Class 8, the Allowed Affiliate Guarantee Claims.

[3] Estimated recovery as a percentage of Plan Estimated Claims.

[4] Any amounts allocated to LBHI Class 5 are reallocated to LBHI Class 3 in accordance with the Plan.

[5] Pre-petition Intercompany Claims only. Post-petition Intercompany Claims are Administrative Expense Claims.

[6] Claim amount is maximum allowed for calculation of Distributions. See Plan Section 4.7 and Plan Schedule 6.

**Exhibit 4: Recovery Analysis for Each Debtor**

Lehman Brothers Holdings Inc. and its Affiliated Debtors

*($ in millions)*

**1 LBHI (cont'd)**

| Class | Designation | Filed Claims[1] | Plan Estimated Claims[2] | Estimated Plan Recovery Amount | Estimated Plan Recovery %[3] |
|---|---|---|---|---|---|
| 7G[6] | Third-Party Guarantee Claims for which LBIE is the Primary Obligor on the corresponding Primary Claims | $18,203 | $18,203 | $2,679 | 14.7% |
| 7H[6] | Third-Party Guarantee Claims for which LBL is the Primary Obligor on the corresponding Primary Claims | $4,477 | $2,439 | $359 | 14.7% |
| 7I[6] | Third-Party Guarantee Claims for which LBT is the Primary Obligor on the corresponding Primary Claims | $28,159 | $26,411 | $3,887 | 14.7% |
| 7J[6] | Third-Party Guarantee Claims for which LBB is the Primary Obligor on the corresponding Primary Claims | $37,829 | $19,410 | $2,857 | 14.7% |
| 7K[6] | Third-Party Guarantee Claims for which LB Finance is the Primary Obligor on the corresponding Primary Claims | $2,763 | $2,763 | $407 | 14.7% |
| 7L[6] | Third-Party Guarantee Claims for which LB Securities is the Primary Obligor on the corresponding Primary Claims | $746 | $746 | $110 | 14.7% |
| 7M[6] | Third-Party Guarantee Claims for which LBJ is the Primary Obligor on the corresponding Primary Claims | $410 | $410 | $60 | 14.7% |
| 7N[6] | Third-Party Guarantee Claims for which LBHJ is the Primary Obligor on the corresponding Primary Claims | $1,289 | $1,289 | $190 | 14.7% |
| 7O[6] | Third-Party Guarantee Claims for which Sunrise is the Primary Obligor on the corresponding Primary Claims | $622 | $622 | $92 | 14.7% |
| 7P[6] | Third-Party Guarantee Claims for which LBCCA is the Primary Obligor on the corresponding Primary Claims | $142 | $142 | $21 | 14.7% |
| 7Q[6] | Third-Party Guarantee Claims for which LBI is the Primary Obligor on the corresponding Primary Claims | $748 | $748 | $110 | 14.7% |
| 7R[6] | Third-Party Guarantee Claims for which a Schedule 5 Affiliate is the Primary Obligor on the corresponding Primary Claims | $292 | $292 | $43 | 14.7% |
| 8 | Affiliate Guarantee Claims against LBHI[7] | $223,917 | $21,186 | $3,118 | 14.7% |
| 9 | Equity Interests in LBHI | -- | -- | -- | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0".

1 Filed claims, as adjusted to take into account clear errors, duplications and non-controversial corrections that are appropriate, as of March 9, 2010.

2 "Plan Estimated Claims" means, for all Classes except LBHI Class 7 and LBHI Class 8, the Debtors' estimate of Allowed Claims, and for LBHI Class 7, the Permitted Third-Party Guarantee Claims, and for LBHI Class 8, the Allowed Affiliate Guarantee Claims.

3 Estimated recovery as a percentage of Plan Estimated Claims.

6 Claim amount is maximum allowed for calculation of Distributions. See Plan Section 4.7 and Plan Schedule 6.

7 For illustrative purposes, some recovery (approximately $161 million in total) has been allocated to Debtor-Controlled Entities based on the Pro Rata Share of Filed Claims in Class 8. Per Plan Section 4.8(b), within six months after the Effective Date, the Plan Administrator will propose an allocation method, which at least 2/3 in amount and more than 1/2 in number of holders of Allowed Affiliate Guarantee Claims, must accept to become binding. If the proposal is not accepted, allocation will be determined by the Bankruptcy Court.

**Exhibit 4: Recovery Analysis for Each Debtor**

Lehman Brothers Holdings Inc. and its Affiliated Debtors

*($ in millions)*

**2 LCPI**

| Class | Designation | Filed Claims[1] | Plan Estimated Claims[2] | Estimated Plan Recovery Amount | Estimated Plan Recovery %[3] |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims against LCPI | $12 | -- | -- | -- |
| 2 | Secured Claims against LCPI | $18,996 | $13 | $13 | 100.0% |
| 3 | General Unsecured Claims against LCPI | $8,359 | $4,543 | $2,010 | 44.2% |
| 4[5] | Intercompany Claims against LCPI | $20,411 | $20,411 | $9,029 | 44.2% |
| 5 | Equity Interests in LCPI | -- | -- | -- | |

**3 LBCS**

| Class | Designation | Filed Claims[1] | Plan Estimated Claims[2] | Estimated Plan Recovery Amount | Estimated Plan Recovery %[3] |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims against LBCS | $3 | -- | -- | -- |
| 2 | Secured Claims against LBCS | $234 | $36 | $36 | 100.0% |
| 3 | General Unsecured Claims against LBCS | $3,645 | $4,134 | $1,108 | 26.8% |
| 4[5] | Intercompany Claims against LBCS | $1,861 | $1,861 | $499 | 26.8% |
| 5 | Equity Interests in LBCS | -- | -- | -- | |

**4 LBSF**

| Class | Designation | Filed Claims[1] | Plan Estimated Claims[2] | Estimated Plan Recovery Amount | Estimated Plan Recovery %[3] |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims against LBSF | $0 | -- | -- | -- |
| 2 | Secured Claims against LBSF | $18,765 | $311 | $311 | 100.0% |
| 3 | General Unsecured Claims against LBSF | $47,291 | $15,861 | $3,824 | 24.1% |
| 4[5] | Intercompany Claims against LBSF | $23,983 | $23,983 | $5,782 | 24.1% |
| 5 | Equity Interests in LBSF | -- | -- | -- | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0".

1 Filed claims, as adjusted to take into account clear errors, duplications and non-controversial corrections that are appropriate, as of March 9, 2010.

2 "Plan Estimated Claims" means, for all classes, the Debtors' estimate of Allowed Claims.

3 Estimated recovery as a percentage of Plan Estimated Claims.

5 Pre-petition Intercompany Claims only. Post-petition Intercompany Claims are Administrative Expense Claims.