**<u>EXHIBIT 8</u>**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.     :   08-13555 (JMP)
                                          :
                     Debtors.             :   (Jointly Administered)
                                          :
-------------------------------------------------------------------x
```

**DEBTORS' DISCLOSURE STATEMENT FOR**
**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN**
**BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**
**PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

Dated: January 25, 2011
New York, New York

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     OVERVIEW OF THE PLAN......................................................................................... 2

        A.      Summary of the Plan....................................................................................... 2

        B.      Classification, Treatment and Estimated Recovery for Each Class
                Under the Plan.............................................................................................. 3

        C.      Holders of Claims Entitled to Vote..................................................................... 35

        D.      Voting Procedures........................................................................................... 35

        E.      Confirmation Hearing ..................................................................................... 36

III.    GENERAL INFORMATION ......................................................................................... 38

        A.      Overview of Chapter 11................................................................................... 38

        B.      General Information Regarding Lehman ........................................................... 39

IV.     THE CHAPTER 11 CASES .......................................................................................... 39

        A.      Stabilization of the Business............................................................................. 39

        B.      Creditors' Committee...................................................................................... 40

        C.      Lehman Brothers Inc.'s SIPA Proceeding; Lehman ALI ..................................... 41

        D.      Sale of the North American Capital Markets and Investment Banking
                Business to Barclays Capital Inc....................................................................... 42

        E.      Significant Developments During the Chapter 11 Case ....................................... 45

                1.      Significant Asset Dispositions .................................................................. 45

                        a.      Sale of Investment Management Division................................... 45

                        b.      Sale of European and Asian Assets and Businesses to
                                Nomura .................................................................................... 46

                2.      Significant Settlements and Transactions .................................................. 47

                        a.      Settlement with Lehman Brothers Bankhaus AG........................ 47

                        b.      Transaction with JPMorgan ...................................................... 47

                3.      Cross Border Insolvency Protocol / Negotiations With Foreign
                        Debtors.................................................................................................. 49

                        a.      Description of Protocol.............................................................. 50

                        b.      Settlement Negotiations ............................................................. 50

                4.      Appointment of Examiner....................................................................... 51

i

# TABLE OF CONTENTS
## (continued)

**Page**

5. The Ad Hoc Group Plan ........................................................................ 52

F. Administration of the Debtors' Assets During the Chapter 11 Cases ................. 52

 1. Derivative Contracts ...................................................................... 52

  a. Derivative ADR Procedures ...................................... 53

  b. Key Litigation Relating to Derivative Contracts ........................ 53

  c. Updated Information Regarding Derivative Contracts ................ 55

 2. Real Estate Assets ......................................................................... 55

  a. Real Estate Protocols Established by the Debtors ....................... 56

  b. Significant Transactions/Restructurings/Sales........................... 56

  c. Updated Information Regarding the Debtors' Real Estate Assets ............................................................. 59

 3. Commercial Loans ........................................................................ 60

  a. Loans with Unfunded Commitments ......................................... 60

  b. Updated Information Regarding the Debtors' Commercial Loan Portfolio ......................................... 60

 4. Bank Platforms............................................................................ 61

 5. Private Equity/Principal Investments.................................................. 62

  a. Significant Transactions/Sales .................................... 63

  b. Updated Information Regarding the Debtors' Private Equity/Principal Investments .................................... 64

G. Securitization Structures ...................................................................... 65

  a. Pine, Spruce, Verano, SASCO 2008-C2 and Kingfisher............. 65

  b. The RACERS Transaction ........................................................ 66

  c. Fenway Funding....................................................................... 69

H. Adversary Proceedings .......................................................................... 70

I. Avoidance Actions ............................................................................... 71

V. CLAIMS PROCESS AND BAR DATE....................................................... 71

A. Schedules and Statements ..................................................................... 71

B. Claims Bar Date.................................................................................... 72

## TABLE OF CONTENTS
### (continued)

**Page**

VI.   RESIDENTIAL MORTGAGE LOAN REPRESENTATION/WARRANTY
      CLAIMS AND RECOVERIES ............................................................. 73

VII.  DEBTORS' RELATIONSHIP WITH LEHMAN BROTHERS INC ........................... 74

VIII. CERTAIN TRANSACTIONS/RELATIONSHIPS WITH LBIE ................................ 74

      A.   RASCALS ............................................................................ 75

      B.   Extended Lien ...................................................................... 75

      C.   Client Monies ....................................................................... 76

IX.   TREATMENT OF INTERNAL REPURCHASE AGREEMENTS ........................... 77

X.    LAMCO ...................................................................................... 79

XI.   SUMMARY OF THE CHAPTER 11 PLAN ................................................. 80

      A.   Considerations Regarding the Chapter 11 Plan ................................ 80

      B.   Rationale Underlying Plan Treatment of Claims ............................... 81

           1.   Description and Analysis of Plan Issues ................................ 81

                a.   Substantive Consolidation of the Debtors and Their
                     Affiliates ....................................................... 81

                b.   Validity and Enforceability of Guarantee Claims ................ 83

                c.   Allowance of Certain Intercompany Claims ..................... 84

                d.   Allowed Amount of Derivative Claims .......................... 85

                e.   Valuation of Structured Securities .............................. 85

                f.   Ownership of Assets ............................................ 87

           2.   Mechanisms To Resolve the Plan Issues ............................... 87

                a.   Reallocation of A Portion of Distributions Among
                     Certain Classes ................................................ 87

                b.   Allowed Amount of Claims Filed by Affiliates .................. 88

                c.   Reduction of Distributions on LBHI's Claims Against
                     Subsidiary Debtors ............................................. 89

                d.   Allowed Amount of Derivative Claims Against the
                     Debtors ........................................................ 89

                e.   Third-Party Guarantee Claims For Which LBT/LBSN
                     is the Primary Obligor ......................................... 90

# TABLE OF CONTENTS
## (continued)

**Page**

|  |  | f. | Redistribution of Distributions From Subordinated Claims to Claims in Senior Classes | 91 |

C. Classification and Treatment of Claims and Equity Interests ... 92

    1. Treatment of Unclassified Claims ... 92

        a. Administrative Expense Claims ... 92

        b. Compensation and Reimbursement Claims ... 92

        c. Priority Tax Claims ... 93

    2. Summary of Classes ... 95

        a. Treatment of Classified Claims Against and Equity Interests in LBHI ... 95

        b. Treatment of Classified Claims Against and Equity Interests in the Subsidiary Debtors ... 103

D. Means for Implementation of the Plan ... 111

    1. Continued Corporate Existence of Debtors ... 111

    2. Revesting of Assets ... 111

    3. Plan Administrator ... 111

        a. Authority of the Plan Administrator ... 111

        b. Liability of Plan Administrator ... 112

        c. Indenture Trustee and Creditors' Committee Members Fees ... 113

    4. Treatment of Disputed Claims ... 113

E. Provisions Governing Distributions ... 114

    1. Obligations to Make Distributions ... 114

    2. Post Petition Interest ... 114

    3. Method of Distributions Under the Plan ... 114

        a. In General ... 114

        b. Distributions of Cash ... 114

    4. Timing of Distributions ... 115

        a. Distributions of Available Cash ... 115

        b. Distributions on Claims After Allowance ... 115

# TABLE OF CONTENTS
## (continued)

**Page**

|  |  |  |  |
|---|---|---|---|
| | c. | Claims Register to Remain Open | 115 |
| | d. | Time Bar to Cash Payment Rights | 115 |
| 5. | | Unclaimed Distributions | 116 |
| 6. | | Withholding and Reporting Requirements | 116 |
| 7. | | Setoff and Recoupment | 116 |
| 8. | | Distributions to Non-Controlled Affiliates | 117 |
| 9. | | Maximum Distribution | 117 |
| 10. | | Subrogation | 117 |
| F. | | Treatment of Executory Contracts and Unexpired Leases | 118 |
| 1. | | Rejected Contracts and Leases of the Debtors | 118 |
| 2. | | Assumed Contracts and Leases of the Debtors | 118 |
| 3. | | Right to Modify Schedules of Assumed Contracts | 118 |
| 4. | | Insurance Policies | 119 |
| 5. | | Cure of Defaults | 119 |
| 6. | | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 119 |
| G. | | Conditions Precedent to Plan's Confirmation and Effective Date | 119 |
| 1. | | Conditions to Confirmation of the Plan | 119 |
| 2. | | Conditions to Effective Date | 119 |
| 3. | | Waiver of Conditions | 120 |
| H. | | Effect of Confirmation of the Plan | 120 |
| 1. | | Release, Exculpation and Limitation of Liability | 120 |
| 2. | | Discharge | 121 |
| 3. | | Injunction | 121 |
| 4. | | United States Government Carveout | 121 |
| 5. | | Retention of Litigation Claims and Reservation of Rights | 122 |
| 6. | | Terms of Injunctions or Stays | 122 |
| I. | | Liquidating Trust | 122 |
| 1. | | Certain Provisions Regarding a Liquidating Trust | 122 |
| 2. | | Federal Income Tax Treatment of Liquidating Trust | 123 |

# TABLE OF CONTENTS
## (continued)

**Page**

3. Tax Reporting ........................................................................................ 123

4. Dissolution of a Liquidating Trust ........................................................ 125

J. Summary of Other Provisions of Plan ............................................................. 125

1. Amendment or Modification of the Plan ............................................... 125

2. Survival of Debtors' Reimbursement Obligations of Officers and Directors ............................................................................................ 126

3. Allocation of Plan Distributions Between Principal and Interest .......... 126

4. Revocation or Withdrawal of the Plan .................................................. 126

5. Post-Effective Date Role of Creditors' Committee .............................. 126

6. Issuance of New Securities ................................................................... 127

7. Exemption from Securities Laws .......................................................... 127

8. Exemption from Transfer Taxes ........................................................... 127

9. Effectuating Documents and Further Transactions................................ 128

10. Retention of Jurisdiction ...................................................................... 128

11. Plan Supplement ................................................................................... 129

K. Summary of Recovery Analysis Under the Plan .............................................. 129

XII. CONFIRMATION AND CONSUMMATION OF THE PLAN .................................... 130

A. Solicitation of Votes ........................................................................................ 130

B. The Confirmation Hearing ............................................................................... 131

C. Confirmation .................................................................................................... 131

1. Acceptance ............................................................................................ 131

2. Unfair Discrimination and Fair and Equitable Tests ............................ 131

3. Feasibility.............................................................................................. 132

4. Best Interests Test ................................................................................. 133

D. Consummation ................................................................................................. 135

XIII. CORPORATE GOVERNANCE AND MANAGEMENT OF THE DEBTORS ON THE EFFECTIVE DATE ........................................................... 135

A. Board of Directors and Management ................................................................ 135

1. LBHI Board of Directors and Officers ................................................. 135

2. Subsidiary Debtor Post-Effective Date Management ........................... 136

# TABLE OF CONTENTS
## (continued)

**Page**

|  |  |  |  |
|---|---|---|---|
| | 3. | Plan Trust .................................................................................. | 137 |
| | 4. | Plan Administrator ..................................................................... | 137 |
| | 5. | Corporate Existence ................................................................... | 137 |
| | 6. | Certificates of Incorporation and By-laws ............................... | 137 |
| | 7. | Wind-Down ................................................................................ | 138 |
| XIV. | SECURITIES LAWS MATTERS ............................................................. | | 138 |
| XV. | CERTAIN RISK FACTORS TO BE CONSIDERED ................................ | | 138 |
| | A. | Certain Bankruptcy Law Considerations ................................... | 139 |
| | B. | Conditions Precedent to Consummation of the Plan .................. | 139 |
| | C. | Asset Sales ................................................................................ | 139 |
| | D. | Estimation of Allowed Claims .................................................. | 139 |
| | E. | Certain Tax Considerations ........................................................ | 140 |
| XVI. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............. | | 140 |
| | A. | Consequences to LBHI and Subsidiary Debtors ........................ | 141 |
| | | 1. Tax Filing Status; Tax Attributes ........................................ | 141 |
| | | 2. General Discussion of Plan .................................................. | 142 |
| | | a. Asset Dispositions ......................................................... | 142 |
| | | b. Plan Distributions .......................................................... | 142 |
| | | 3. Tax Impact of the Plan on the Debtors ................................ | 143 |
| | | a. Cancellation of Debt ..................................................... | 143 |
| | | b. Limitation of NOL Carryforwards and other Tax Attributes ........................................................................ | 144 |
| | | c. Non-U.S. Income Tax Matters ....................................... | 145 |
| | | 4. Transfer of Liquidating Trust Assets to a Liquidating Trust ............... | 145 |
| | B. | Consequences to Holders of Claims and LBHI Equity Interests ....................... | 146 |
| | | 1. Realization and Recognition of Gain or Loss, In General ..................... | 146 |

# TABLE OF CONTENTS
## (continued)

2.      Holders of Allowed Senior Unsecured Claims, Senior Intercompany Claims, Senior Third-Party Guarantee Claims, Senior Affiliate Guarantee Claims, Senior Third-Party LBT/LBSN Guarantee Claims, Derivative Claims, General Unsecured Claims, Intercompany Claims, Affiliate Guarantee Claims and Derivative Guarantee Claims ................................ 147

3.      Allocation of Consideration to Interest ................................ 147

C.      Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests ................................ 148

1.      Classification of the Liquidating Trust ................................ 148

2.      General Tax Reporting by the Liquidating Trust and Beneficiaries ................................ 148

3.      Tax Reporting for Assets Allocable to Disputed Claims ................................ 150

D.      Withholding on Distributions, and Information Reporting ................................ 150

XVII.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ................................ 151

A.      Alternative Plan(s) ................................ 151

B.      Liquidation under Chapter 7 ................................ 152

XVIII. VOTING PROCEDURES AND REQUIREMENTS ................................ 153

A.      Ballots and Voting Deadline ................................ 153

B.      Parties Entitled to Vote ................................ 154

C.      Further Information; Additional Copies ................................ 155

XIX.  CONCLUSION AND RECOMMENDATION ................................ 1

**Exhibits**

| | |
|---|---|
| Exhibit 1 | First Amended Joint Chapter 11 Plan |
| Exhibit 2A | Balance Sheets of Each Debtor, as of the Applicable Commencement Date |
| Exhibit 2B | Balance Sheets of Each Debtor, as of June 30, 2010 |
| Exhibit 2C | Reconciliation of Cash Flow Estimates (Gross Receipts) to the Balance Sheets, as of June 30, 2010 |
| Exhibit 3 | Condensed Balance Sheets of Woodlands and Aurora Bank, as of September 30, 2010 |
| Exhibit 4 | Recovery Analysis for Each Debtor |
| Exhibit 5 | Liquidation Analysis for Each Debtor |
| Exhibit 6 | Debtors' Estimates of Claims and Claims Data |
| Exhibit 7 | Cash Flow Estimates Through 2014 |
| Exhibit 8 | Significant Intercompany Balances |
| Exhibit 9 | Description of Business and Capital Structure of Lehman Prior to the Commencement Date |
| Exhibit 10 | Reallocation of Distributions from Subordinated Notes to Senior Obligations |
| Exhibit 11 | Structured Securities Valuation Methodologies |

## 2.    Significant Settlements and Transactions

### a.    Settlement with Lehman Brothers Bankhaus AG

Prior to the Commencement Date, with respect to commercial and real estate loans, LBHI, LCPI, and Lehman ALI (collectively, the "Lehman Parties") and Bankhaus often entered into transactions with one another, or their wholly owned subsidiaries, whereby one of the parties acted as the lender of record and/or agent (the "Lender") for certain loans, and the other party or parties would acquire interests in those loans through a participation (the "Participant"). Following the Commencement Date, a dispute arose among the Lehman Parties and Dr. Michael C. Frege, the Foreign Administrator of Bankhaus, over the ownership of certain of the loans. Specifically, the dispute centered on whether Bankhaus, as the Participant, had an ownership interest in certain of the loans, or just an unsecured claim against the Lender. Following nearly a year of extensive, arm's length negotiations between the Lehman Parties and Dr. Frege, the parties agreed to the terms of a settlement agreement (the "Bankhaus Agreement"), which was approved by the Bankruptcy Court on January 14, 2010. Pursuant to the Bankhaus Agreement, the Lehman Parties acquired 86 loans with a total outstanding principal balance due of approximately $2.9 billion, for a net purchase price of approximately $1 billion, which amount accounts for (i) litigation risks associated with the dispute, and (ii) commercial risks attendant to collections. Other loans that were not a part of the dispute were also included in the transaction, and were acquired by the Lehman Parties at a discount. The Lehman Parties also agreed that certain Claims of Bankhaus with respect to other participations will be Allowed as general unsecured Claims against LCPI, in the amount of $1,015,500,000 (the "Allowed Claim Against LCPI"), and against LBHI, in the amount of $1,380,900,000 (less the amount of any distributions that are received by Bankhaus as a distribution on the Allowed Claim Against LCPI). The Bankhaus Agreement further provides that LCPI and LBHI may not setoff claims held against Bankhaus against the Claims deemed Allowed by the Bankhaus Agreement. Additional information regarding the Bankhaus Agreement is contained in the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authorization and Approval of a Settlement Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (In Insolvenz) [Docket No. 6303].

### b.    Transaction with JPMorgan

Prior to the commencement of the Chapter 11 Cases, J.P.Morgan Chase Bank., N.A. ("JPMorgan") served as Lehman's primary bank and provided clearing services to Lehman's primary broker/dealer, LBI, pursuant to a clearance agreement, whereby JPMorgan executed trades and transactions with third parties on behalf of Lehman. In connection with such clearance agreement, LBI was required to pledge collateral to JPMorgan to secure LBI's obligations with respect to such trades or transactions. In 2008 the clearance agreement was amended to add LBHI as a party. Beginning in August 2008, JPMorgan required LBHI to execute a series of agreements pursuant to which LBHI purportedly became the guarantor, ultimately, of the obligations of all Lehman entities to JPMorgan and all of its purported affiliates. In connection with these guaranties, LBHI pledged $8.6 billion of cash and cash equivalents and billions of dollars of securities as collateral security to JPMorgan through September 2008.

**Recovery Analysis for LBHI**

($ in millions)

| | Estimated Plan Assets | | | Estimated Allowed Claims[2] | Estimated Plan Recovery $ | % |
|---|---|---|---|---|---|---|
| Cash & Cash Equivalents | $2,704 | Class 1: | Priority Non-Tax Claims | $3 | $3 | 100.0% |
| Restricted Cash | 2,910 | Class 2: | Secured Claims | 2,447 | 2,447 | 100.0% |
| Financial Instruments & Other Inventory | | Class 3: | Senior Unsecured Claims | 83,582 | 17,912 | 21.4% |
| Real Estate | 2,753 | Class 4A:[3] | Senior Intercompany Claims | 12,689 | 2,106 | 16.6% |
| Loans | 457 | | | | | |
| Principal Investments | 1,722 | Class 4B:[3] | Senior Affiliate Guarantee Claims | 10,589 | 1,706 | 16.1% |
| Derivatives & Other Contracts | -- | | | | | |
| Other Assets | 2,732 | Class 5A: | Senior Third-Party Guarantee Claims | 21,174 | 2,721 | 12.9% |
| **Operating Asset Recoveries** | **$13,278** | Class 5B: | Senior Third-Party LBT/LBSN Guarantee Claims | 31,137 | 3,501 | 11.2% |
| Intercompany Receivables | 31,214 | Class 6: | Derivative Claims | -- | -- | -- |
| Equity Interests in Affiliates | 2,823 | Class 7: | General Unsecured Claims | 12,281 | 2,430 | 19.8% |
| **TOTAL ASSETS** | **$47,315** | Class 8A:[3] | Intercompany Claims | 38,430 | 5,746 | 15.0% |
| Administrative Expenses[1] | | Class 8B:[3] | Affiliate Guarantee Claims | 1,654 | 247 | 15.0% |
| Administrative Expenses & Other | ($2,651) | | | | | |
| Post-Petition Intercompany Payables | (1,695) | Class 9: | Derivative Guarantee Claims | 39,386 | 4,711 | 12.0% |
| Operating Disbursements | (716) | | | | | |
| | | Class 10A: | Subordinated Class 10A Claims | 3,393 | -- | -- |
| | | Class 10B: | Subordinated Class 10B Claims | 10,368 | -- | -- |
| | | Class 10C: | Subordinated Class 10C Claims | 1,503 | -- | -- |
| **DISTRIBUTABLE ASSETS** | **$42,253** | Class 11: | Section 510(b) Claims | -- | -- | -- |
| Recovery From Plan Adjustments | $1,277 | Class 12: | Equity Interests | | -- | -- |
| **NET DISTRIBUTABLE ASSETS** | **$43,530** | **TOTALS** | | **$268,636** | **$43,530** | |

| | |
|---|---|
| Note: | All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0". |
| 1 | Comprised of administrative expenses, professional compensation and priority tax claims. |
| 2 | Debtor's best estimate of the amount of claims ultimately allowed consistent with Plan settlements. |
| 3 | Represents Claims after the effects of set-off. |

**Recovery Analysis for LCPI**

($ in millions)

| | Estimated Plan Assets | | | Estimated Allowed Claims[2] | Estimated Plan Recovery | |
|---|---|---|---|---|---|---|
| | | | | | $ | % |
| Cash & Cash Equivalents | $1,862 | Class 1: | Priority Non-Tax Claims | -- | -- | -- |
| Restricted Cash | 39 | Class 2: | Secured Claims | $104 | $104 | 100.0% |
| Financial Instruments & Other Inventory | | Class 3: | Derivative Claims | 41 | 21 | 51.9% |
| Real Estate | 5,474 | | | | | |
| Loans | 4,373 | Class 4: | General Unsecured Claims | 2,916 | 1,513 | 51.9% |
| Principal Investments | 1,084 | | | | | |
| Derivatives & Other Contracts | 99 | Class 5A:[3] | Intercompany Claims of LBHI | 23,285 | 11,539 | 49.6% |
| Other Assets | 80 | Class 5B:[3] | Intercompany Claims of Participating Subsidiary Debtors | 891 | 430 | 48.3% |
| **Operating Asset Recoveries** | **$13,011** | Class 5C:[3] | Intercompany Claims of Affiliates other than Participating Debtors | 3,888 | 2,017 | 51.9% |
| Intercompany Receivables | $4,047 | Class 6: | Equity Interests | -- | -- | -- |
| Recovery on Affiliate Guarantees | -- | | | | | |
| Equity Interests in Affiliates | 289 | | | | | |
| **TOTAL ASSETS** | **$17,347** | | | | | |
| Administrative Expenses[1] | | | | | | |
| Administrative Expenses & Other | ($144) | | | | | |
| Post-Petition Intercompany Payables | (88) | | | | | |
| Operating Disbursements | (805) | | | | | |
| **DISTRIBUTABLE ASSETS** | **$16,310** | | | | | |
| Contribution to Plan Adjustments | ($687) | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$15,624** | **TOTALS** | | **$31,126** | **$15,624** | |

| | | |
|---|---|---|
| Note: | All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0". |
| 1 | Comprised of administrative expenses, professional compensation and priority tax claims. |
| 2 | Debtor's best estimate of the amount of claims ultimately allowed consistent with Plan settlements. |
| 3 | Represents Claims after the effects of set-off. |