**<u>EXHIBIT 9</u>**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.** | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**DEBTORS' DISCLOSURE STATEMENT FOR
SECOND AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN
BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS
PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

Dated: June 30, 2011
New York, New York

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    OVERVIEW OF THE PLAN ................................................................ 2

    A.    Summary of the Plan ................................................................... 2

    B.    Classification, Treatment and Estimated Recovery for Each Class
Under the Plan ............................................................................... 5

    C.    Holders of Claims Entitled to Vote ............................................ 15

    D.    Voting Procedures ....................................................................... 15

    E.    Confirmation Hearing ................................................................. 16

III.    GENERAL INFORMATION ............................................................... 18

    A.    Overview of Chapter 11 .............................................................. 18

    B.    General Information Regarding Lehman ..................................... 19

IV.    THE CHAPTER 11 CASES ................................................................. 19

    A.    Stabilization of the Business ....................................................... 19

    B.    Creditors' Committee .................................................................. 20

    C.    Lehman Brothers Inc.'s SIPA Proceeding; Lehman ALI .......... 21

    D.    Sale of the North American Capital Markets and Investment Banking
Business to Barclays Capital Inc. ............................................... 22

    E.    Significant Developments During the Chapter 11 Case ............. 24

        1.    Sale of Investment Management Division and European and
Asian Operations ............................................................ 24

        2.    Transaction with JPMorgan ............................................ 24

        3.    Appointment of Examiner ............................................... 27

        4.    Cross-Border Insolvency Protocol / Negotiations With Foreign
Debtors ............................................................................ 27

            a.    Description of Cross-Border Insolvency Protocol ...... 28

            b.    Settlement Negotiations with Foreign Debtors ........... 28

    F.    Alternative Chapter 11 Plans ...................................................... 29

        1.    Plan Proposed by the Ad Hoc Group .............................. 29

        2.    Plan Proposed by the Non-Con Plan Proponents ............ 30

        3.    Debtors' Oppose the Ad Hoc Plan and the Non-Con Plan .... 30

# TABLE OF CONTENTS
## (continued)

**Page**

G.    Administration of the Debtors' Assets During the Chapter 11 Plan ................... 31

    1.    Derivative Contracts ...................................................... 31

    2.    Real Estate Assets ........................................................ 32

    3.    Commercial Loans ........................................................ 33

    4.    Private Equity/ Principal Investments ............................ 33

    5.    Bank Platforms ............................................................ 34

H.    Securitization Structures ......................................................... 35

    a.    Pine, Spruce, Verano, SASCO 2008-C2 and Kingfisher ............ 35

    b.    The RACERS Transaction ........................................... 37

I.    Avoidance Actions .................................................................. 40

V.    CLAIMS FILED AGAINST THE DEBTORS ....................................... 40

A.    Schedules and Statements ........................................................ 40

B.    Claims Bar Date ...................................................................... 41

C.    Validity and Enforceability of Guarantee Claims ................................. 42

D.    Valuation of Structured Securities Claims ........................................ 43

E.    Claims Based on Derivatives Contracts .......................................... 44

    1.    Derivatives Framework ................................................ 44

    2.    Estimate of Allowed Derivatives Claims ....................... 45

F.    Residential Mortgage Loan Representation/Warranty Claims ........... 46

VI.    DEBTORS' RELATIONSHIP WITH LEHMAN BROTHERS INC ........... 47

VII.    CERTAIN TRANSACTIONS/RELATIONSHIPS WITH LBIE ................. 47

VIII.    TREATMENT OF INTERNAL REPURCHASE AGREEMENTS .............. 48

IX.    LAMCO ............................................................................................... 49

X.    SUMMARY OF THE CHAPTER 11 PLAN ................................................. 50

A.    Considerations Regarding the Chapter 11 Plan ................................ 50

B.    Rationale Underlying Plan Treatment of Claims ............................... 51

    1.    Description of the Plan and Compromise of Substantive Consolidation and Related Issues ........................................... 51

    a.    Substantive Consolidation of the Debtors and Their Affiliates ................................................... 51

# TABLE OF CONTENTS
## (continued)

**Page**

b.    Description of Settlement and Compromise Regarding Substantive Consolidation Included in the Plan .......................... 52

c.    The Settlement and Compromise is in the Best Interests of the Economic Stakeholders ..................................... 54

2.    Characterization of Certain Claims of LBHI Against Subsidiary Debtors................................................... 60

3.    Claims Filed by Affiliates........................................ 62

4.    Plan Negotiations With Certain Creditors ............................... 63

5.    Redistribution of Distributions From Subordinated Claims to Claims in Senior Classes.......................................... 66

6.    Convenience Classes.............................................. 67

C.    Classification and Treatment of Claims and Equity Interests............................. 68

1.    Treatment of Unclassified Claims ......................................... 68

a.    Administrative Expense Claims................................. 68

b.    Compensation and Reimbursement Claims................................. 68

c.    Priority Tax Claims.......................................... 69

2.    Summary of Classes................................................ 71

a.    Treatment of Classified Claims Against and Equity Interests in LBHI........................................... 71

b.    Treatment of Classified Claims Against and Equity Interests in the Subsidiary Debtors ............................... 80

D.    Means for Implementation of the Plan................................................ 91

1.    Continued Corporate Existence of Debtors ............................. 91

2.    Revesting of Assets............................................... 91

3.    Plan Administrator ................................................ 92

a.    Authority of the Plan Administrator .......................... 92

b.    Liability of Plan Administrator................................... 93

c.    Indenture Trustee and Creditors' Committee Members Fees ....................................................... 93

4.    Treatment of Disputed Claims .......................................... 93

E.    Provisions Governing Distributions................................................ 95

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 1. | Obligations to Make Distributions | 95 |
| 2. | Post Petition Interest | 95 |
| 3. | Method of Distributions Under the Plan | 95 |
| | a. | In General | 95 |
| | b. | Distributions of Cash | 95 |
| 4. | Timing of Distributions | 96 |
| | a. | Distributions of Available Cash | 96 |
| | b. | Distributions on Claims After Allowance | 96 |
| | c. | Claims Register | 96 |
| | d. | Time Bar to Cash Payment Rights | 97 |
| 5. | Unclaimed Distributions | 97 |
| 6. | Withholding and Reporting Requirements | 97 |
| 7. | Setoff and Recoupment | 98 |
| 8. | Distributions to Non-Controlled Affiliates | 98 |
| 9. | Maximum Distribution | 98 |
| 10. | Rights of Reimbursement | 100 |
| F. | Treatment of Executory Contracts and Unexpired Leases | 100 |
| 1. | Rejected Contracts and Leases of the Debtors | 101 |
| 2. | Assumed Contracts and Leases of the Debtors | 101 |
| 3. | Right to Modify Schedules of Assumed Contracts | 101 |
| 4. | Insurance Policies | 101 |
| 5. | Cure of Defaults | 102 |
| 6. | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 102 |
| G. | Conditions Precedent to Plan's Confirmation and Effective Date | 102 |
| 1. | Conditions to Confirmation of the Plan | 102 |
| 2. | Conditions to Effective Date | 102 |
| 3. | Waiver of Conditions | 103 |
| H. | Effect of Confirmation of the Plan | 103 |
| 1. | Release, Exculpation and Limitation of Liability | 103 |

# TABLE OF CONTENTS
## (continued)

**Page**

2. Discharge ........................................................................................... 104

3. Injunction ......................................................................................... 104

4. United States Government Exception To Discharge ............................. 104

5. Retention of Litigation Claims and Reservation of Rights.................... 105

6. Terms of Injunctions or Stays ............................................................ 105

I. Liquidating Trust ........................................................................................ 105

1. Certain Provisions Regarding a Liquidating Trust ............................... 105

2. Federal Income Tax Treatment of Liquidating Trust ........................... 106

3. Tax Reporting .................................................................................... 107

4. Dissolution of a Liquidating Trust...................................................... 108

J. Summary of Other Provisions of Plan ........................................................ 108

1. Amendment or Modification of the Plan ............................................ 108

2. Survival of Debtors' Reimbursement Obligations of Officers and Directors ................................................................................ 109

3. Allocation of Plan Distributions Between Principal and Interest .......... 109

4. Revocation or Withdrawal of the Plan................................................ 109

5. Post-Effective Date Role of Creditors' Committee .............................. 109

6. Issuance of New Securities ................................................................ 110

7. Exemption from Securities Laws........................................................ 110

8. Exemption from Transfer Taxes ........................................................ 111

9. Effectuating Documents and Further Transactions.............................. 111

10. Retention of Jurisdiction ................................................................... 111

11. Plan Supplement ............................................................................... 112

12. Post-Effective Date Reporting ........................................................... 113

K. Summary of Recovery Analysis Under the Plan .......................................... 113

XI. CONFIRMATION AND CONSUMMATION OF THE PLAN................................. 114

A. Solicitation of Votes ................................................................................. 114

B. The Confirmation Hearing.......................................................................... 114

C. Confirmation ............................................................................................ 115

1. Acceptance ....................................................................................... 115

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 2. | Feasibility | 115 |
| 3. | Best Interests Test | 116 |
| 4. | Unfair Discrimination and Fair and Equitable Tests | 118 |
| D. | Consummation | 119 |

XII. CORPORATE GOVERNANCE AND MANAGEMENT OF THE DEBTORS ON THE EFFECTIVE DATE ............... 119

| | | |
|---|---|---|
| A. | Board of Directors and Management | 119 |
| 1. | LBHI Board of Directors and Officers | 119 |
| 2. | Subsidiary Debtor Post-Effective Date Management | 120 |
| 3. | Plan Trust | 121 |
| 4. | Plan Administrator | 121 |
| 5. | Corporate Existence | 121 |
| 6. | Certificates of Incorporation and By-laws | 121 |
| 7. | Wind-Down | 122 |

XIII. SECURITIES LAWS MATTERS ............... 122

XIV. CERTAIN RISK FACTORS TO BE CONSIDERED ............... 122

| | | |
|---|---|---|
| A. | Certain Bankruptcy Law Considerations | 123 |
| B. | Conditions Precedent to Consummation of the Plan | 123 |
| C. | Asset Sales | 123 |
| D. | Estimation of Allowed Claims | 123 |
| E. | Certain Tax Considerations | 124 |

XV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............... 124

| | | |
|---|---|---|
| A. | Consequences to LBHI and Subsidiary Debtors | 125 |
| 1. | Tax Filing Status; Tax Attributes | 125 |
| 2. | General Discussion of Plan | 126 |
| a. | Asset Dispositions | 126 |
| b. | Plan Distributions | 126 |
| 3. | Tax Impact of the Plan on the Debtors | 127 |
| a. | Cancellation of Debt | 127 |

# TABLE OF CONTENTS
## (continued)

**Page**

      b.    Limitation of NOL Carryforwards and Other Tax Attributes ................................................................. 128

      c.    Non-U.S. Income Tax Matters .................................................. 129

    4.    Transfer of Liquidating Trust Assets to a Liquidating Trust ................. 130

B.    Consequences to Holders of Claims and LBHI Equity Interests ....................... 130

    1.    Realization and Recognition of Gain or Loss, In General ..................... 130

    2.    Holders of Allowed Senior Unsecured Claims, Senior Affiliate Claims, Senior Third-Party Guarantee Claims, Senior Affiliate Guarantee Claims, Convenience Claims, Convenience Guarantee Claims, General Unsecured Claims, Affiliate Claims and Third-Party Guarantee Claims ........................................................ 131

    3.    Allocation of Consideration to Interest .................................................. 132

C.    Tax Treatment of a Liquidating Trust and Holders of Beneficial Interests ........................................................................................................... 132

    1.    Classification of the Liquidating Trust .................................................. 132

    2.    General Tax Reporting by the Liquidating Trust and Beneficiaries ......................................................................................... 132

    3.    Tax Reporting for Assets Allocable to Disputed Claims ...................... 134

D.    Withholding on Distributions, and Information Reporting ............................... 135

XVI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ................................................................................................................ 135

A.    Alternative Plan(s) ............................................................................................. 136

B.    Liquidation under Chapter 7 ............................................................................. 137

XVII.    VOTING PROCEDURES AND REQUIREMENTS ...................................................... 138

A.    Ballots and Voting Deadline .............................................................................. 138

B.    Parties Entitled to Vote ...................................................................................... 138

C.    Further Information; Additional Copies ............................................................ 139

XVIII.    CONCLUSION AND RECOMMENDATION ............................................................. 140

**Exhibits**

| | |
|---|---|
| Exhibit 1 | Second Amended Joint Chapter 11 Plan |
| Exhibit 2A | Balance Sheets of Each Debtor, as of the Applicable Commencement Date |
| Exhibit 2B | Balance Sheets of Each Debtor, as of December 31, 2010 |
| Exhibit 2C | Reconciliation of Cash Flow Estimates (Gross Receipts) to the Balance Sheets, as of December 31, 2010 |
| Exhibit 3 | Condensed Balance Sheets of Woodlands Bank and Aurora Bank, as of March 31, 2011 |
| Exhibit 4 | Recovery Analysis for Each Debtor |
| Exhibit 5 | Liquidation Analysis for Each Debtor |
| Exhibit 6 | Debtors' Estimates of Claims and Claims Data |
| Exhibit 7 | Cash Flow Estimates Through 2014 |
| Exhibit 8A | Significant Balances Among Affiliates |
| Exhibit 8B | Reconciliation of Balance Sheets as of December 31, 2010 and estimated Affiliate Claim Amounts |
| Exhibit 9 | Debtors' Claims Schedule |
| Exhibit 10 | Reallocation of Distributions from Subordinated Notes to Senior Obligations |
| Exhibit 11 | Structured Securities Valuation Methodologies |
| Exhibit 12 | Plan Adjustment Percentages |
| Exhibit 13 | Participating Subsidiary Debtor Convenience Class Distribution Percentage |
| Exhibit 14A | Description of Bankhaus Settlements |
| Exhibit 14B | Bankhaus Settlement Agreement |
| Exhibit 15 | Exchange Rates |
| Exhibit 16 | Summary of Alternative Plans |
| Exhibit 17 | Diagram of Reallocation of Distributions Included in Plan |
| Exhibit 18 | Certain Significant Transactions Regarding Debtors' Assets |
| Exhibit 19 | Description of Business and Capital Structure of Lehman Prior to the Commencement Date |
| Exhibit 20 | List Of Creditors That Have Executed Plan Support Agreements |

(i)        **Settlements with Bankhaus**

The Debtors have entered into two settlement agreements with Dr. Michael C. Frege, the Foreign Administrator of Bankhaus.  Pursuant to the first settlement agreement (the "Bankhaus Loans Settlement Agreement") (i) the parties settled disputes between LBHI, LCPI, and Lehman ALI (collectively, the "Lehman Parties") and Dr. Frege regarding the ownership of certain loans subject to participations, (ii) the Lehman Parties purchased loans from Bankhaus and (iii) certain claims of Bankhaus against LBHI and LCPI were Allowed.  A description of the terms of the Bankhaus Loans Settlement Agreement is included on Exhibit 14A hereto.

Pursuant to the second settlement agreement (the "Bankhaus Claims Settlement Agreement"), the Debtors and Dr. Frege (a) settled all claims among the Debtors and certain Debtor-Controlled Entities and Bankhaus, (b) subject to certain conditions, Bankhaus agreed to support the Plan and the Debtors agreed to support a plan in Bankhaus's Foreign Proceeding, and (c) LBHI agreed to purchase certain securities owned by Bankhaus.  The Bankhaus Claims Settlement Agreement is subject to (i) the confirmation of a Plan which incorporates the Bankhaus Claims Settlement Agreement and (ii) authority from Bankhaus' Creditors' Committee and Creditors Assembly.  A description of the terms of the Bankhaus Claims Settlement Agreement is included on Exhibit 14A, and an executed copy of the Bankhaus Claims Settlement Agreement is annexed hereto as Exhibit 14B hereto.  The Debtors are requesting that the Bankruptcy Court approve the settlement between the Debtors and Bankhaus pursuant to Bankruptcy Rule 9019 as part of the Plan.

## F.        Alternative Chapter 11 Plans

### 1.        Plan Proposed by the Ad Hoc Group

On December 15, 2010, an ad hoc group of LBHI creditors (the "Ad Hoc Group")[4] proposed a joint substantively consolidating chapter 11 plan for all of the Debtors other than Merit, Somerset and Preferred Somerset and a related disclosure statement.  On April 27, 2011, the Ad Hoc Group filed its amended joint substantively consolidating chapter 11 plan (the "Ad Hoc Plan") and an amended disclosure statement (the "Ad Hoc Disclosure Statement").  The Ad Hoc Plan is premised on the Bankruptcy Court ordering substantive consolidation of (a) the Debtors, (b) Lehman Brothers Treasury Co. B.V. ("LBT") and Lehman Brothers Securities N.V. ("LBSN") and (c) certain of the Debtors' foreign Affiliates; *provided*, *however*, if LBT, LBSN or certain of the foreign Affiliates vote to accept the Plan, such Affiliates will not be substantively consolidated with the Debtors.  A summary of the Ad Hoc Plan is included on Exhibit 16 hereto.

---

[4] The Ad Hoc Group consists of California Public Employees' Retirement System, Canyon Capital Advisors LLC, City of Costa Mesa, City of Fremont, County of San Mateo, Fiduciary Counselors Inc., Fir Tree, Inc., Gruss Asset Management, L.P., Owl Creek Asset Management, L.P., on behalf of the funds it manages or advises, Paulson & Co. Inc., Perry Capital LLC, on behalf of one or more investment funds for which it or an affiliate acts as investment advisor or general partner, Taconic Capital Advisors L.P. and Vallejo Sanitation and Flood Control District.

US_ACTIVE:\43750126\05\58399.0008

### h.    Intercompany Claims

The Recovery Analysis assumes that all Intercompany Claims are recognized beginning in the amounts set forth on the balance sheets as of the applicable Commencement Date. The material Intercompany Balances are set forth on Exhibit 8A. For purposes of the Recovery Analysis, these balances are subject to reconciliation, adjustment and the effect of certain Plan provisions, and have been netted to reflect the set-off of mutual debts (i.e., pre-petition debts against pre-petition debts, post-petition against post-petition (See Exhibit 8B)). With respect to Affiliate Guarantee Claims, the Recovery Analysis reduces such Claims to take into account the risk to such claimants of numerous issues, including (i) substantive consolidation and (ii) the enforceability of specific Guarantees.

Intercompany payables consist of (i) Derivative Contracts recorded at fair value in the Debtors' records as of September 14, 2008, (or the applicable termination date), (ii) intercompany payables derived from financings which are reflected net of collateral inventory and (iii) normal course intercompany funding.

Any intercompany transactions that occurred on or after the Commencement Date are treated as Administrative Claims. In accordance with the terms of the Plan, setoff of Intercompany Claims is calculated based on the Allowed amount of such Claims.

Certain of the Debtors have claims against Debtor-Controlled Entities, which entities may be insolvent. The Debtors may ultimately collect only a portion of the claim amounts against such entities.

Deutsche Bank acquired the Allowed Claim Against LCPI and the related Allowed Guarantee Claim Against LBHI (defined below in Exhibit 14A) from Bankhaus. Since such Claims are based on a contractual obligation of LCPI to an Affiliate, the Debtors have included the Allowed Claim Against LCPI in LCPI Class 5C as a Claim of an Affiliate other than LBHI and the Participating Subsidiary Debtors, and the Debtors have included the Allowed Guarantee Claim Against LBHI in LBHI Class 4B as a Senior Affiliate Guarantee Claim. Deutsche Bank disputes such classifications and asserts that such Claims should be included in LCPI Class 4A as a General Unsecured Claim against LCPI and in LBHI Class 7 as a General Unsecured Claim against LBHI.

### 4.    Net Distributable Assets, Recovery Analysis And Reconciliation Tables.

Included in this Exhibit are tables containing the Net Distributable Assets for each Debtor, the Recovery Analysis for each Debtor and Reconciliation Tables for LBHI and the Participating Subsidiary Debtors. The Reconciliation Tables provide detail regarding the effects of the Plan provisions on the recoveries to certain creditors of LBHI and the Participating Subsidiary Debtors.

The Plan provides that a portion of Distributions to certain other classes will be reallocated to holders of Allowed Claims in LBHI Classes 3 and 7. The gross

**Recovery Analysis for LBHI**

($ in millions)

| | Estimated Plan Assets | | | Estimated Allowed Claims[3] | Estimated Plan Recovery | |
|---|---|---|---|---|---|---|
| | | | | | $ | % |
| Cash & Cash Equivalents | $2,723 | Class 1: | Priority Non-Tax Claims | $3 | $3 | 100.0% |
| Restricted Cash | 3,515 | Class 2: | Secured Claims | 2,481 | 2,481 | 100.0% |
| Financial Instruments & Other Inventory | | Class 3: | Senior Unsecured Claims | 83,724 | 17,678 | 21.1% |
| Real Estate | 4,353 | Class 4A:[4] | Senior Affiliate Claims | 52,327 | 8,147 | 15.6% |
| Loans | 596 | | | | | |
| Principal Investments | 1,613 | Class 4B:[4] | Senior Affiliate Guarantee Claims | 11,563 | 1,758 | 15.2% |
| Derivatives & Other Contracts | -- | | | | | |
| Other Assets | 2,486 | Class 5: | Senior Third-Party Guarantee Claims | 52,702 | 6,410 | 12.2% |
| **Operating Asset Recoveries** | **$15,285** | Class 6A: | Convenience Claims | 54 | 14 | 26.0% |
| Recovery on Intercompany Receivables | 25,913 | Class 6B: | Convenience Guarantee Claims | 332 | 56 | 17.0% |
| Recovery on Other Receivables | 2,946 | | | | | |
| Equity Interests in Affiliates | 2,727 | Class 7: | General Unsecured Claims | 11,390 | 2,267 | 19.9% |
| **TOTAL ASSETS** | **$46,872** | Class 8:[4] | Affiliate Claims | 1,446 | 208 | 14.4% |
| Administrative Expenses[1] | | Class 9A: | Third-Party Guarantee Claims other than those of the Racers Trusts | 39,658 | 4,555 | 11.5% |
| Administrative Expenses & Other[2] | ($2,592) | Class 9B: | Third-Party Guarantee Claims of the Racers Trusts | 1,948 | 136 | 7.0% |
| Post-Petition Intercompany Payables | (2,316) | | | | | |
| Operating Disbursements | (641) | Class 10A: | Subordinated Class 10A Claims | 3,436 | -- | -- |
| | | Class 10B: | Subordinated Class 10B Claims | 10,343 | -- | -- |
| | | Class 10C: | Subordinated Class 10C Claims | 1,499 | -- | -- |
| | | Class 11: | Section 510(b) Claims | -- | -- | -- |
| **DISTRIBUTABLE ASSETS** | **$41,322** | Class 12: | Equity Interests | -- | -- | -- |
| Plan Adjustment from Part. Debtors | $2,390 | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$43,712** | **TOTALS** | | **$272,904** | **$43,712** | |

Note:       All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0".
1          Comprised of administrative expenses, professional compensation and priority tax claims.
2          Includes $300 million for Debtor Allocation Agreement in accordance with Section 6.3 of the Plan.
3          Debtor's best estimate of the amount of claims ultimately allowed consistent with Plan settlements.
4          Represents Claims after the effects of setoff.

**Recovery Analysis for LCPI**

($ in millions)

| | Estimated Plan Assets | | | Estimated Allowed Claims[2] | Estimated Plan Recovery | |
|---|---|---|---|---|---|---|
| | | | | | $ | % |
| Cash & Cash Equivalents | $2,951 | Class 1: | Priority Non-Tax Claims | -- | -- | -- |
| Restricted Cash | 41 | Class 2: | Secured Claims | $144 | $144 | 100.0% |
| Financial Instruments & Other Inventory | | Class 3: | Convenience Claims | 1 | 0 | 60.0% |
| Real Estate | 5,334 | | | | | |
| Loans | 4,093 | Class 4A:[4] | General Unsecured Claims other than those of Designated Entities | 2,752 | 1,533 | 55.7% |
| Principal Investments | 663 | | | | | |
| Derivatives & Other Contracts | 49 | Class 4B: | General Unsecured Claims of Designated Entities | 5,230 | 2,534 | 48.4% |
| Other Assets | 124 | Class 5A:[34] | Affiliate Claims of LBHI | 17,857 | 8,216 | 46.0% |
| **Operating Asset Recoveries** | **$13,255** | Class 5B:[3] | Affiliate Claims of Participating Subsidiary Debtors | 5 | 3 | 48.4% |
| Recovery on Intercompany Receivables | $4,096 | Class 5C:[3] | Affiliate Claims other than those of Participating Debtors | 4,871 | 2,537 | 52.1% |
| Recovery on Affiliate Guarantees | -- | | | | | |
| Equity Interests in Affiliates | 273 | Class 6: | Equity Interests | -- | -- | -- |
| **TOTAL ASSETS** | **$17,624** | | | | | |
| Administrative Expenses[1] | | | | | | |
| Administrative Expenses & Other | ($585) | | | | | |
| Post-Petition Intercompany Payables | (124) | | | | | |
| Operating Disbursements | (668) | | | | | |
| **DISTRIBUTABLE ASSETS** | **$16,248** | | | | | |
| Contribution to Plan Adjustments | ($1,280) | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$14,967** | **TOTALS** | | **$30,861** | **$14,967** | |

| | | |
|---|---|---|
| Note: | All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0". |
| 1 | Comprised of administrative expenses, professional compensation and priority tax claims. |
| 2 | Debtor's best estimate of the amount of claims ultimately allowed consistent with Plan settlements. |
| 3 | Represents Claims after the effects of setoff. |
| 4 | The first $100 million of Distributions made to Class 5A on account of its Allowed Affiliate Claim has been redistributed to Class 4A in accordance with Section 6.5(e) of the Plan. |

## Exhibit 14A

### Bankhaus Settlements

### 1.        Loans Settlement Agreement

Prior to the Commencement Date, with respect to commercial and real estate loans, LBHI, LCPI, and Lehman ALI (collectively, the "Lehman Parties") and Bankhaus periodically entered into transactions with one another, or their wholly owned subsidiaries, whereby one of the parties acted as the lender of record and/or agent (the "Lender") for certain loans, and the other party or parties would acquire interests in those loans through a participation (the "Participant"). Following the Commencement Date, a dispute arose among the Lehman Parties and Dr. Michael C. Frege, the Foreign Administrator of Bankhaus, over the ownership of certain of the loans. The Lehman Parties and Dr. Frege entered into a settlement agreement (the "Bankhaus Loans Settlement Agreement") pursuant to which, the Lehman Parties acquired 86 loans with a total outstanding principal balance due of approximately $2.9 billion, for a net purchase price of approximately $1 billion, which amount accounts for (i) litigation risks associated with the dispute, and (ii) commercial risks attendant to collections. Other loans that were not a part of the dispute were also included in the transaction, and were acquired by the Lehman Parties at a discount. The Bankhaus Loans Settlement Agreement also provided that certain Claims of Bankhaus with respect to other participations will be Allowed as general unsecured Claims against LCPI, in the amount of $1,015,500,000 (the "Allowed Claim Against LCPI"), and against LBHI, in the amount of $1,380,900,000 (less the amount of any distributions that are received by Bankhaus as a distribution on the Allowed Claim Against LCPI). Such Claim against LBHI will be treated as a Senior Affiliate Guarantee Claim in LBHI Class 4B. The Allowed Claim Against LCPI is treated as a Affiliate Claim in Class 5C. The Bankhaus Loans Settlement Agreement further provides that LCPI and LBHI may not setoff claims held against Bankhaus against the Claims deemed Allowed by the Bankhaus Loans Settlement Agreement.

### 2.        Claims Settlement Agreement and Plan Support

On March 1, 2011, the Debtors and certain Debtor-Controlled Entities entered into a settlement agreement with Bankhaus (the "Bankhaus Claims Settlement Agreement"), a copy of which is annexed hereto as Exhibit 14B. Pursuant to such agreement, the parties agreed that the Plan would incorporate and seek approval for a settlement of the allowed amount of all Claims of the Debtors and certain Debtor-Controlled Entities against Bankhaus, and all Claims of Bankhaus against the Debtors, and released each other from and against all other claims. A summary of the Allowed Claims of each party is set forth in the table below.

Pursuant to the Bankhaus Claims Settlement Agreement, Bankhaus agreed to vote to accept the Plan, subject to being properly solicited pursuant to an approved disclosure statement under section 1125 of the Bankruptcy Code. Furthermore, Bankhaus agreed neither to object to the Plan nor to support or participate in the formulation of any other chapter 11 plan, and not to object to the Claims of any Foreign Debtors that have entered into similar plan settlement agreements with the Debtors. Similarly, the Debtors have agreed to support an insolvency plan in Bankhaus's liquidation (if Bankhaus elects to propose an insolvency plan),

provided that the Debtors are afforded an opportunity to review the insolvency plan and are reasonably satisfied that its terms are consistent with the terms of the Bankhaus Claims Settlement Agreement.

The Bankhaus Claims Settlement Agreement provides for certain termination rights, including that the LBB InsAdmin may terminate the Bankhaus Claims Settlement Agreement if (i) the Debtors make a material modification to the structure, classification or Distribution scheme under the Plan that would materially reduce recoveries to Bankhaus as set forth in herein, or (ii) if the Plan provides for materially different treatment of Claims held by other creditors that are factually and legally similar to the Claims of Bankhaus, resulting in such other creditors having a recovery entitlement in respect of said Claims that is materially higher than the recovery entitlement provided for in the Plan in respect of the Bankhaus's Allowed Claims. Similarly, the Debtors may terminate the agreement if the LBB InsAdmin allows and provides for materially different treatment of claims held by other creditors of Bankhaus that are factually and legally similar to the claims of the Debtors and certain Debtor-Controlled Entities, resulting in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement of the Debtors and the relevant Debtor-Controlled Entities.

The Bankhaus Claims Settlement Agreement is subject to (i) the confirmation of the Plan which incorporates the Bankhaus Claims Settlement Agreement and (ii) the necessary authority from Bankhaus' Creditors' Committee (*Gläubigerausschuss*) and Creditors Assembly (*Gläubigerversammlung*).[10]  The Debtors and the Creditors' Committee spent a significant amount of time and efforts analyzing the various transactions between the Debtors and Bankhaus. The terms of the Bankhaus Claims Settlement Agreement are the result of more than two years of arms-length negotiations with the LBB InsAdmin.  In the Debtors' business judgment the terms of the Bankhaus Claims Settlement Agreement are in the best interest of the Debtors' estates. The Debtors request that the Bankruptcy Court approve the settlement between the Debtors and Bankhaus pursuant to Bankruptcy Rule 9019.

As part of the Bankhaus Claims Settlement Agreement, the Debtors agreed to purchase from Bankhaus the notes issued by certain securitizations. On March 23, 2011, the Bankruptcy Court approved two note purchase agreements [Docket No. 15287] pursuant to which LBHI purchased all of Bankhaus's interests in notes issued by Spruce CCS, Ltd., Verano CCS, Ltd. and SASCO 2008-C2, LLC (the "Purchased Notes") with an aggregate outstanding principal amount of approximately $1,543 million, free and clear of all liens, claims, and encumbrances, for an aggregate purchase price of $957 million. LBHI agreed to purchase the Purchased Notes for two reasons. First, LBHI acquired the Purchased Notes at a discount to the outstanding principal amount, and has the opportunity to realize a profit in the long term from the Purchased Notes. Second, the acquisition of the Purchased Notes will enable the Debtors to maximize the value of real estate loans and commercial loans held by Spruce CCS, Ltd., Verano CCS, Ltd. and SASCO 2008-C2, LLC, and thus also maximize the value of the Debtors' interests in the other notes issued by and equity interest in Spruce CCS, Ltd., Verano CCS, Ltd.

---

[10]    The Debtors are advised that Bankhaus has obtained the requisite authority from its Creditors' Committee and its Creditors' Assembly.

and SASCO 2008-C2, LLC.  Specifically, by purchasing Bankhaus's interests in the Purchased Notes, LBHI and LCPI have obtained control over 100% of the capital structure of such securitization issuers, thereby enabling the Debtors to manage the underlying assets more efficiently.  The acquisition of the Purchased Notes is part of the Debtors' overall settlement with Bankhaus.  To the extent the a chapter 11 plan incorporating the terms of the Bankhaus Claims Settlement Agreement is not confirmed on or before December 31, 2012, LBHI is obligated to pay an additional $100 million dollars to Bankhaus as further consideration for Bankhaus's sale of its interest in note issued by SASCO 2008-C2.

| Claims of Bankhaus | | |
| --- | --- | --- |
| **Debtor** | **Amount** | **Description** |
| LCPI | $1,015,500,000[11] | Security & Collateral Agreement |
| | Up to $1,279,401,572[12] | Repurchase Agreement in connection with 7th Avenue Program |
| LBHI | $1,380,900,000 (less the amount of any distributions that are received by Bankhaus as a distribution on the Allowed Claim Against LCPI) | Security & Collateral Agreement |
| | $6,425,000,000 | Security & Collateral Agreement |
| | $19,191,840 | Guarantee of Lehman Programs Securities |
| | $16,256,461 | Guarantee of Derivative Contract |
| LBSF | Up to $1.2 billion[13] | Swap Agreements in connection with the 7th Avenue Program |

| Claims of Debtors Against Bankhaus | |
| --- | --- |
| **Debtor** | **Claim Amount** |
| LBSF | $320,904,908[14] |
| LBCC | $101,979,146 |
| LBCS | $149,747,293 |
| LCPI | $69,344,378[15] |

---

[11]  This Claim was Allowed pursuant to the Bankhaus Loans Settlement Agreement.

[12]  This Claim amount is subject to certain reductions, as described in detail in the Bankhaus Claims Settlement Agreement.

[13]  This Claim amount is subject to certain reductions, as described in detail in the Bankhaus Claims Settlement Agreement.  A portion of this claim will be a secured claim and a portion will be an unsecured claim.

[14]  This Claim will be netted against Bankhaus's Claims against LBSF, reducing Bankhaus's Allowed Claims against LBSF.

[15]  This Claim will be netted against Bankhaus's Claims against LCPI, reducing Bankhaus's Allowed Claims against LCPI relating to the repurchase agreement in connection with the 7th Avenue transaction.