**Hearing Date and Time:  October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
In re                                                              :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                                                   :
                                    Debtors.                       :        **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT
## TO SECTION  362 OF THE BANKRUPTCY CODE
## FOR AN ORDER MODIFYING THE AUTOMATIC STAY
## TO ALLOW ADVANCEMENT OF DEFENSE EXPENSES UNDER
## THE 2007-2008 DIRECTORS AND OFFICERS INSURANCE
## POLICIES BY THE EXCESS POLICY INSURERS

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of

Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") pursuant to section 362 of title 11 of the United States Code for

an order modifying the automatic stay, to the extent applicable, to permit certain of the Debtors'

insurers of directors' and officers' liability to make payment of covered "Defense Expenses,"

advancement of covered "Defenses Expenses" or both, incurred by the Debtors' current and

former officers, directors, and employees that have been named as defendants in various legal

proceedings, all as more fully described in the Motion, will be held before the Honorable James

M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court"), on **October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York,

New York 10004, Attn:  Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B.

Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell,

Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v)

Wilson Elser Moskowitz Edelman & Dicker LLP, 150 East 42nd St., New York, New York

10017, Attn:  Scott Schaffer, Esq. and Jonathan Meer, Esq., Mendes & Mount, LLP, 750 Seventh

Avenue, New York, New York 10019, Attn:  Arthur Washington, Esq. and Pamela Passarello,

Esq., Bressler, Amery & Ross, P.C., 17 State Street, New York, NY 10004, Attn: Robert

Novack, Esq., and Wilson Elser Moskowitz Edelman & Dicker LLP, 3 Gannett Drive, White

Plains, New York 10604, Attn:  Alicia Silver Santocki, Esq., attorneys or representatives for the

respective Excess Policy Insurers, so as to be so filed and received by no later than **October 12,**

**2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

        PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  September 27, 2011
      New York, New York

                /s/ Richard P. Krasnow
                Richard P. Krasnow

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Debtors
                and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------- x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :          08-13555 (JMP)
                                          :
                     Debtors.             :          (Jointly Administered)
                                          :
------------------------------------------------------------------- x
```

## DEBTORS' MOTION PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT OF DEFENSE EXPENSES UNDER THE 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICIES BY THE EXCESS POLICY INSURERS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this motion and respectfully represent:

### Preliminary Statement

1.    On ten prior occasions, the Court has modified the automatic stay provided for under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code"),

to the extent applicable, to remove any impediments to payment by certain of the Debtors'

insurers of directors' and officers' coverage of settlement amounts, Defense Expenses[1] or fees

that current or former directors, officers, and employees of the Debtors incurred or were

incurring as defendants in ongoing lawsuits, arbitration proceedings, regulatory and other

investigations.[2] By this Motion, the Debtors seek relief to modify the automatic stay to permit

the payment of covered Defense Expenses, advancement of covered Defense Expenses or both,

by (i) Endurance Specialty Insurance Ltd. subscribing to policy number P005332003

("Endurance"), Certain Underwriters at Lloyd's, London, subscribing to policy number

QA017007 ("Lloyd's"), and Illinois National Insurance Company subscribing to policy number

7421436 ("Illinois National"), the Debtors' twelfth, thirteenth and fourteenth level excess

insurers respectively, under the Debtors' 2007-2008 directors and officers liability insurance

program (the "2007-2008 D&O Policies") attached hereto as Exhibit A, and (ii) Chartis Excess

Limited (f/k/a Starr Excess Liability Insurance International Limited) subscribing to policy

number 6299064 ("Chartis Excess") and Axis Specialty Limited Bermuda subscribing to policy

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the applicable Excess Insurance Policies (as defined herein).

[2] *See* Orders dated March 25, 2009 [ECF No. 3220] (modifying the automatic stay to allow advancement of Defense Expenses with respect to XL Specialty Insurance); November 23, 2009 [ECF No. 5906] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Federal Insurance Company); December 17, 2009 [ECF No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company and Federal Insurance Company); August 20, 2010 [ECF No. 10945] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Continental Casualty Company, Certain Underwriters at Lloyd's, London, and U.S. Specialty Insurance Company (HCC)); November 18, 2010 [ECF No. 12896] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Zurich American Insurance Company, ACE Bermuda Insurance Ltd, St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal Insurance Company); November 18, 2010 [ECF No. 12895] (modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters at Lloyd's, London and London Market Company); January 13, 2011 [ECF No. 13929] (modifying the automatic stay to allow payment of settlement amount by U.S. Specialty Insurance Company and Zurich American Insurance Company); March 23, 2011 [ECF No. 15277] (modifying the automatic stay to allow payment of settlement amounts by Zurich American Insurance Company); July 21, 2011 [ECF No. 18691] (modifying the automatic stay to allow payment of an arbitral award by Zurich American Insurance Company and ACE Bermuda Insurance Ltd.); September 15, 2011 [ECF No. 20017] (modifying the automatic stay to allow payment of settlement amounts by certain excess policy insurers) (collectively, the "Prior Stay Orders").

number 1130900107QA ("Axis Bermuda"), the Debtors' fifteenth level excess quota-share

insurers under the 2007-2008 D&O Policies and, together with Endurance, Lloyd's and Illinois

National, the "Excess Policy Insurers" and their respective policies "Excess Insurance

Policies").[3]

2.    For Claims made against the certain former and current directors,

officers, and employees of the Debtors (collectively, the "Individual Defendants") during the

period from May 16, 2007 to May 16, 2008 (the "2007-2008 D&O Policy Period"), the Debtors

purchased primary directors liability insurance from XL Specialty Insurance Company ("XL")

plus additional excess coverage from sixteen (16) other carriers of up to $250 million in the

aggregate.  The excess policies, including the Excess Insurance Policies, are all "follow form"

policies subject to additional independent terms and conditions.  That is, the terms and conditions

of the primary 2007-2008 D&O Policy govern the terms and conditions of each of the excess

2007-2008 D&O Policies, except that each of the excess insurer's respective obligations are

subject to certain additional terms and conditions, such as limits of liability, and attach only after

all "Loss" (defined as Defense Expenses, settlements and judgments, among other things) within

the respective limits of liability of the underlying policies has been paid.

3.    As noted above, the Court has entered Prior Stay Orders, four of which

have modified the automatic stay to allow for the payment of Defense Expenses and fees by the

Debtors' primary and first through seventh excess insurers for the 2007-2008 D&O Policy

Period, providing coverage of $125 million in the aggregate.  To date, the limits of liability of the

XL Policy, the Federal Policy, the Continental Policy, the Lloyd's of London Policy (policy

number QA016907), the USSIC Policy, and the Zurich Policy have been fully exhausted by

---

[3] The Excess Insurance Policies are attached hereto as Exhibit B.

payment of Loss, including Defense Expenses.[4]  Further, the limit of liability of ACE Bermuda

Insurance Ltd. subscribing to policy number LEHM-11724D ("ACE Bermuda Policy") has been

and is being substantially exhausted by payment of Loss.  If the Court approves the *Insured*

*Persons Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the*

*Automatic Stay to Allow Settlement Payment Under Directors and Officers Insurance Policy to*

*Settle the Equity/Debt Action* [ECF No. 19488], the ACE Bermuda Policy, along with St. Paul

Mercury Insurance Company subscribing to policy number 590CM2698, Axis Reinsurance

Company subscribing to policy number RNN 713535/01/2007, Liberty Mutual Insurance

Company subscribing to policy number 078365-017, Arch Insurance Company subscribing to

policy number DOX0006634-02 and Allied World Assurance Company Ltd. subscribing to

policy number C002007/05, will be fully and completely exhausted, and Endurance policy

number P005332003 ("Endurance Policy") would also be substantially exhausted, by a

contribution to the settlement amount contemplated therein.

> 4.      It is anticipated that the proceeds available under those levels of the

2007-2008 D&O Policies for which relief from the automatic stay, to the extent applicable, has

been authorized or authorization is currently pending will be exhausted by approximately the end

of November 2011.  Accordingly, the individual Insureds will need to look to the twelfth,

thirteenth, fourteenth and fifteenth level excess insurers for the 2007-2008 D&O Policy Period

for coverage, which was procured pre-petition by the Debtors for the benefit of their directors,

---

[4] XL Specialty Insurance Company subscribing to policy number ELU097792-07 ("XL Policy"), Federal Insurance
Company subscribing to policy number 7043-0876 ("Federal Policy"), Continental Casualty Company subscribing
to policy number 267996454 ("Continental Policy"), U.S. Specialty Insurance Company subscribing to policy
number 24-MGU-07-A14479 ("USSIC Policy"), Zurich American Insurance Company subscribing to policy
number DOC 7995104-09 ("Zurich Policy").

officers, and employees.  Collectively, the Excess Policy Insurers provide $70 million in

coverage for the 2007-2008 D&O Policy Period.[5]

5.     As with the Prior Stay Orders, the Debtors seek to assure the insurers

that are the subject of this Motion that they can make payment of directors' and officers'

insurance coverage of Defense Expenses without concern that, if the automatic stay is otherwise

applicable, they are violating the automatic stay.  Granting the relief requested by this Motion is

unlikely to have any adverse effect on the Debtors' estates and creditors because the interests of

the Debtors, if any, in the proceeds of the D&O Policies is expressly subordinate to the interest

of the individual Insureds.  Specifically, the applicable insurance policies provide that the

Debtors have rights to the insurance proceeds only after the insured individuals are fully

reimbursed for any "Loss," including Defense Expenses.  In addition, confirming the Excess

Policy Insurers' ability to pay such Defense Expenses is in the best interests of the Debtors

because it will avoid the possible collateral estoppel effect on the Debtors that could result if the

individual Insureds' inability to defend themselves were to give rise to judgments and findings

that impacted direct claims against the Debtors or to indemnification claims against the Debtors.

### Background

6.     Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced

voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

---

[5] Specifically, Endurance provides coverage of $20 million in excess of $180 million, Lloyd's provides coverage of $10 million in excess of $200 million, Illinois National provides coverage of $20 million in excess of $210 million, Axis Bermuda and Chartis Excess collectively provides coverage of $20 million in excess of $230 million.

"Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

9.      On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos. 19627 and 19629].  On September 1, 2011, the Bankruptcy Court entered an amended order [ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.

## Jurisdiction

10.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

11.     The Debtors seek the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by the Excess Policy Insurers of Defense

Expenses that are, or will become, owing to the Individual Defendants pursuant to the terms,

conditions and limitations of their respective policies.  The Debtors further request that the Court

waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the

requested relief be effective immediately.

### The Debtors' Directors' and Officers' Liability Insurance Policies

12.    Pursuant to their advancement and indemnification obligations

expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and

excess directors' and officers' liability ("D&O") insurance, which provides coverage for the

Debtors' current and former officers, directors, and employees in connection with civil, criminal,

regulatory and other actions and investigations.  As noted above, for Claims made against the

Individual Defendants during the 2007-2008 D&O Policy Period, the Debtors purchased the

primary 2007-2008 D&O Policy and sixteen excess D&O Policies providing, in the aggregate,

$250 million in D&O coverage.

13.    Subject to their terms, conditions, limitations and exclusions, the 2007-

2008 D&O Policies cover Loss incurred as a result of Claims made during the 2007-2008 Policy

Period for Wrongful Acts allegedly committed by the Individual Defendants in their capacity as

directors, officers or employees of LBHI and its subsidiaries.  Coverage under Insuring

Agreement (A) for non-indemnifiable loss ("Side A") of the D&O Policies is  available to

Insured Persons, which includes certain of the Debtors' present and former officers, directors,

and employees, for any Loss resulting from Claims made under the D&O Policies that is not

otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

14.    Furthermore, the 2007-2008 D&O Policies contain "Priority of

Payments" provisions, which provide that when competing claims for coverage under both Side

A, as described above, and Insuring Agreement (B) (covering indemnifiable Claims made

against present and former officers, directors and employees) are made, "the Insurer shall pay

that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under

Insuring Agreement (A)… ." *See* 2007-2008 D&O Policies, Endorsement 22.  Thus, the Excess

Insurance Policies, by virtue of Insuring Agreement A and the Priority of Payments provision,

provides for the payment of Defense Expenses on behalf of the Individual Defendants ahead of

any payment that may be made to the Debtors.

## The Legal Proceedings

15.    The Individual Defendants are defendants in one or more multiple civil

actions brought on behalf of purported classes and individuals and/or are within the scope of

certain arbitrations or criminal, regulatory or other investigations (collectively, the "Legal

Proceedings"), more fully described below.   Although certain Debtors were named as

defendants in some of the Legal Proceedings, they are not participating in those proceedings

pursuant to the automatic stay.

16.    Both prior to and after the collapse of the Lehman enterprise in

September 2008, various securities actions were commenced against certain current and former

officers and directors of Lehman in both federal and state courts.  In addition, the Individual

Defendants are involved in various actions, investigations and arbitrations arising out of

Lehman-issued securities, mortgage back securities sold through Lehman affiliates and auction-

rate securities, and other alleged conduct of the Individual Defendants, asserting claims under the

federal securities laws, various state laws and/or common law, and arising from various allegedly

wrongful actions of certain of the Individual Defendants.  Further, both the United States

Department of Justice (by and through the United States Attorney's Offices for the Southern and

Eastern Districts of New York, and for the District of New Jersey) as well as the United States

Securities and Exchange Commission, the New York Attorney General and the New Jersey

Bureau of Securities, have commenced formal grand jury and regulatory investigations

concerning the circumstances surrounding the collapse of the Lehman enterprise and have issued

various requests and subpoenas to both the Debtors and various Individual Defendants.

17.     In connection with the Legal Proceedings, the Individual Defendants

have incurred and will continue to incur Defense Expenses.  Prior to the Commencement Date,

in the ordinary course of business and pursuant to the terms of their by-laws, the Debtors

indemnified and covered their officers and directors for Defense Expenses incurred in legal

proceedings.  Subsequent to the Commencement Date, however, the Debtors have been unable to

continue to advance Defense Expenses to the Individual Defendants.  That is why the Debtors

sought the Prior Stay Orders.  As noted above, however, the existing layers of D&O coverage for

which stay relief has been authorized or authorization is pending under the 2007-2008 D&O

Policies have been, or will shortly become, exhausted.  Thus, the policies of the Excess Policy

Insurers for the 2007-2008 D&O Policy Period will soon be triggered.  Accordingly, the Debtors

are seeking the relief requested herein to ensure that the Individual Defendants will continue to

have access to funding of additional Defense Expenses under, and consistent with, the terms,

conditions and limitations of the respective policies of these insurers.

### Cause Exists to Grant the Relief Requested

18.     Pursuant to certain of the Prior Stay Orders, this Court has granted

relief that is identical to the relief sought in this Motion, based on rights and obligations *vis-à-vis*

the Debtors and Individual Defendants that are governed by the same terms and conditions as the

Excess Insurance Policies.[6]  Accordingly, because cause to modify the automatic stay to allow

for the advancement of insurance proceeds to pay Defense Expenses was found to exist in the

Prior Stay Orders, *a fortiori*, such cause exists here as well.  If, however, the Debtors must

independently demonstrate that such cause exists, as described below, it is beyond peradventure

that such a modification of the automatic stay is warranted.

A.      The Proceeds Are Not Property of the Estate

               19.     Section 362(a)(3) of the Bankruptcy Code provides for an automatic

stay of any action seeking to obtain possession or exercise control over property of the

bankruptcy estate.  It is well settled that insurance policies are property of the estate and covered

by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville

Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a

policy and ownership of the *proceeds* of a policy.  While courts have not been uniform in their

analysis, where a policy provides for payment only to a third party – such as payments to officers

and directors under an executive insurance policy – or where the debtor has a right of coverage

or indemnification, but such right is hypothetical or speculative, courts have held that the

proceeds of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia

Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not

property of the estate where it had not been suggested that debtors had made any payment for

which they may be entitled to indemnification under policy or that any such payments were then

---

[6] *See* Orders dated March 25, 2009 [ECF No. 3220] (modifying automatic stay to allow advancement of Defense Expenses with respect to XL Specialty Insurance Co. with respect to the 2007-2008 Policy Period); November 23, 2009 [ECF No. 5906] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Federal Insurance Co. with respect to the 2007-2008 D&O Policy Period); August 20, 2010 [ECF No. 10945] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Continental Casualty Co., Certain Underwriters at Lloyd's London, and U.S. Specialty Insurance Co. with respect to the 2007-2008 D&O Policy Period); and November 18, 2010 [ECF no. 12896] (modifying the automatic stay to allow advancement of Defense Expenses with respect to Zurich, ACE Bermuda, St. Paul Mercury, XL and Federal Insurance).

contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004)

(holding that proceeds of D&O insurance policy were not property of the estate where debtor's

indemnification right under the policy was speculative and direct coverage of debtor under

policy was hypothetical); *In re La World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(holding that proceeds of a D&O policy belonged only to the officers and directors and,

therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805,

809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers

and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity

coverage were highly remote and therefore proceeds were not property of estate).

   20. In determining whether proceeds are property of the estate, courts

review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. See also

*In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455

(Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must

be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the

pertinent contractual provisions under applicable state law").

   21. The 2007-2008 D&O Policies contain an unambiguous priority of

payments endorsement that expressly subordinates any potential rights of the Debtors to

proceeds payable under the policies to the rights of the Individual Defendants.  The priority of

payment endorsements are an enforceable contractual provision and should be upheld for the

benefit of the Individual Defendants as intended.  *See In re Enron Corp.*, Case No. 01-16034

(Bankr. S.D.N.Y. Apr. 11, 2002) [ECF No. 3278] (holding that priority of payment provision

was an enforceable contractual right).

22.    Consistent with the purpose of such policies, the Debtors purchased the 2007-2008 D&O Policies primarily to provide insurance coverage to their officers and directors, including the Individual Defendants. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which would be payable only in the event that the Debtors indemnified the Individual Defendants and which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of Defense Expenses

23.    Even if the proceeds from the Excess Insurance Policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of Defense Expenses as required under the Excess Insurance Policies. It is not uncommon for courts to grant stay relief to allow payment of Defense Expenses to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

24.    Allowing the insurers to advance Defense Expenses to the Individual Defendants will, in fact, benefit the Debtors' estates. The Legal Proceedings are highly complex. If the Individual Defendants are not adequately represented, it is foreseeable that a finding of wrongdoing or liability against the Individual Defendants may be used, or attempted to be used, to judicially prejudice or prosecute claims against the Debtors. Granting the requested relief will also alleviate the Individual Defendants' concern that they will personally be liable for their own Defense Expenses.

25.      Additionally, the Debtors believe that they have an obligation under their by-laws to advance the Defense Expenses incurred by the Individual Defendants.  In connection with the Legal Proceedings, the Individual Defendants have and will continue to incur significant Defense Expenses, which, if unsatisfied, may potentially be asserted by those Individual Defendants that have filed proofs of claims against the Debtors' estates.  Consequently, coverage of the Individual Defendants under the Policies will reduce or eliminate the claims that the Individual Defendants could assert against the Debtors.

26.      Modifying the automatic stay will not harm the Debtors' estates.  As explained above, any rights the Debtors have to the proceeds of the D&O Policies are contractually subordinated to the rights of the Individual Defendants pursuant to the priority of payments clauses.  In addition, at this time, the Debtors' need for coverage is speculative given that the Debtors are not making advancements to the Individual Defendants during the chapter 11 cases for their Defense Expenses.

27.      Accordingly, the Debtors respectfully submit that there are no legal impediments to the direct payment or advancement by the Excess Policy Insurers under the 2007-2008 D&O Policies to the Individual Defendants for their costs of defense incurred with respect to the Legal Proceedings.  Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the 2007-2008 D&O Policies, the Debtors submit that any such interest is nominal and in any event cannot be determined until the Individual Defendants' losses have been quantified and paid.  Advancing the Individual Defendants' Defense Expenses pursuant to the 2007-2008 D&O Policies is necessary to minimize those losses.  Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Excess Policy Insurers to commence payment of outstanding

and ongoing Defense Expenses incurred by the Individual Defendants pursuant to the terms and conditions of the 2007-2008 D&O Policies.

28.    In making this Motion, neither the Debtors, the Individual Defendants, nor the Excess Policy Insurers are waiving any of their respective rights under the Excess Insurance Policies or any other insurance policy.  In addition, the Debtors are not seeking a determination of the Excess Policy Insurers' obligation to pay any particular expense or claim of the Individual Defendants.  Rather, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow these insurers to fulfill their obligations, if any and whatever they may be, to pay Defense Expenses of the Individual Defendants under the terms of the 2007-2008 D&O Policies, including amounts incurred both pre and post-petition, if and when they arise.  Lastly, the Excess Policy Insurers are not signatories to this Motion and have advised the Debtors that it is the position of Endurance, AXIS Bermuda, Chartis Excess and any other Bermuda insurer that they are not in any way conducting business in the United States and have not submitted to the jurisdiction of any state, federal or bankruptcy court in the United States.

### Waiver of Bankruptcy Rule 4001(a)(3)

29.    As the proceeds of the 2007-2008 D&O Policies are finite and, to facilitate a smooth transition and avoid any interruption in coverage for Defense Expenses, the Debtors request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

### Notice

30.    No trustee has been appointed in these cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these

cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee;

(iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) the attorneys or representatives of

each of the Excess Policy Insurers; and (vii) all parties who have requested notice in these

chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: September 27, 2011
     New York, New York

                                                /s/ Richard P. Krasnow
                                                Richard P. Krasnow
                                                WEIL, GOTSHAL & MANGES LLP
  767 Fifth Avenue
  New York, New York 10153
  Telephone: (212) 310-8000
  Facsimile: (212) 310-8007

  Attorneys for Debtors
  and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                        :
In re                                                   :    **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            :    **08-13555 (JMP)**
                                                        :
                         **Debtors.**                   :    **(Jointly Administered)**
                                                        :
-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION
### PURSUANT TO SECTION  362 OF THE BANKRUPTCY
### CODE FOR AN ORDER MODIFYING THE AUTOMATIC STAY
### TO ALLOW ADVANCEMENT OF DEFENSE EXPENSES UNDER
### THE 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICIES
### <u>BY THE EXCESS POLICY INSURERS</u>

Upon the motion, dated September 27, 2011 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and, together with their non-

debtor affiliates, "<u>Lehman</u>"), pursuant to section 362(d) of title 11 to the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), for an order modifying the automatic stay, to the extent applicable, to

allow the Excess Policy Insurers under the 2007-2008 D&O Policies, to pay covered Defense

Expenses, advance covered Defense Expenses or both, incurred by the Individual Defendants

that have been named as defendants in the Legal Proceedings, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [ECF No. 9635] to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii)

the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United

States Attorney for the Southern District of New York; (vi) the attorneys or representatives of

each of the Excess Policy Insurers; and (vii) all parties who have requested notice in these

chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates

and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow payment of covered Defense Expenses, advancement of covered Defense

Expenses, or both from the Excess Policy Insurers to the Individual Defendants pursuant to the

terms of their respective Policies; and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to

allow the Excess Policy Insurers to pay covered Defense Expenses, advance covered Defense

Expenses or both, incurred by the Individual Defendants in the Legal Proceedings; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Excess Policy Insurers, the Debtors or the Individual Defendants provided for under the terms, conditions and limitations of the Policies; and it is further

ORDERED that all parties to the Excess Insurance Policies reserve all rights and defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Excess Insurance Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Excess Insurance Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that nothing in this Order shall prevent the Court from issuing additional order(s) to allow payment of other Loss by the Excess Policy Insurers on behalf of the Individual Defendants in the Legal Proceedings subject to the terms, conditions and limitations of the Excess Insurance Policies; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: October __, 2011
    New York, New York

                                  _____
                                  UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

## **(2007-2008 PRIMARY D&O POLICY)**

**Policy Number:** **ELU097792-07**

☐ **Greenwich Insurance Company**

**Renewal of Number** ELU092534-06

☒ **XL Specialty Insurance Company**

Members of the XL America Companies

| MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS |
| --- |

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY PROVIDES FOR THE INSURER TO DEFEND ANY CLAIM MADE AGAINST AN INSURED EXCEPT UNDER THOSE CERTAIN SPECIFIED CIRCUMSTANCES WHERE THE INSURED CHOOSES TO PROVIDE ITS OWN DEFENSE. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1.** **Name and Mailing Address of Parent Company:**

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, NY  10019

**Item 2.** **Policy Period:** **From:** May 16, 2007 **To:** May 16, 2008

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

**Item 3.** **Limit of Liability:**

$20,000,000 Aggregate each **Policy Period** (including Defense **Expenses**)

**Item 4.** **Retentions:**

$0 each **Insured Person** under INSURING AGREEMENT I (A)

$10,000,000 each **Claim** under INSURING AGREEMENT I (B)

N/A each **Claim** under INSURING AGREEMENT I (C)

**Item 5.** **Optional Extension Period:**

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period: One Year: $3,113,625.00

Two Years: N/A

**Item 6.** **Pending and Prior Litigation Date:** March 31, 1989

**Item 7.** **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

DO 70 00 11 01

Page 1 of 2

## MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT POLICY DECLARATIONS

| | | |
|---|---|---|
| **Item 8.** | **Premium:** | |
| | Taxes, Surcharges or Fees: | $0.00 |
| | Total Policy Premium: | $2,075,750.00 |

**Item 9.**   **Policy Forms and Endorsements Attached at Issuance:**

DO 71 00 09 99   XL 80 39 04 05   XL 80 24 03 03   DO 85 01 01 02   DO 85 02 02 00   DO 96 04 02 00
DO 96 02 02 00   DO 85 00 05 00   DO 80 142 10 01   DO 80 266 03 04   DO 80 122 06 01   DO 80 44 07 00
DO 80 48 07 00   DO 80 353 05 06   DO 83 33 08 01   XL 80 22 05 02   DO 80 286 08 04   DO 80 354 05 06
DO 80 02 03 00   DO 80 118 05 01   Manuscript 1236 08 04   Manuscript 1150 06 04
Manuscript 6189 05 06   Manuscript 1034 02 04   Manuscript 1151 06 04   Manuscript 6191 05 06
Manuscript 1102 05 04   Manuscript 6474 09 06   DO 83 134 01 07   Manuscript 6192 05 06
Manuscript 6193 05 06   Manuscript 87 01 01   Manuscript 6190 05 06   Manuscript 6473 09 06
Manuscript 7142 05 07   Manuscript 7141 05 07

Countersigned: _____   By: _____
                           Date                                        Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

DO 70 00 11 01

# POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.

However, the applicable federal law described above is set to expire on December 31, 2007 and it is unclear if such statutory provision will be extended past such date.  In the event such federal law expires without such extension, any losses caused by certified acts of terrorism would not be partially reimbursed by the United States.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:    **XL Specialty Insurance Company**
Policy Number:      **ELU097792-07**

# IN WITNESS ENDORSEMENT

XL SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:   SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:   1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
John R. Glancy
President

_____
Kenneth P. Meagher
Secretary

IL MP 9104 0406 XLS

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files. All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us. Analysis of your private information allows us to provide to you excellent service and products. Your trust in us depends upon the security and integrity of our records. Thus, We promise to:

1) Follow strict security standards. This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management. We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information. We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) Attempt to keep our records complete and exact.
8) Advise you how and where to access your account (unless prohibited by law).
9) Advise you how to correct errors or make changes to your account.
10) Inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect comes from the following sources:
- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.
- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.

The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:

1)     your coverage choices;
2)     premiums; billing; and payment records,
3)     claims history; and
4)     other data related to your account.

- **Claims** – We maintain records on any claims that are made under your policies. The investigation of a claim involves collection of a broad range of information. It also involves many issues, some of which do not directly involve you. We will share with you facts that we collect about your claim; unless prohibited by law. The process of claim investigation also involves advice; opinions; and comments from many people. These may include attorneys and experts. This will help us determine how best to handle your claim. To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.
- **Credit and Financial Reports** – We may receive your credit history. This is to support information you provided during the submission and quote processes. This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods. If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law. Information may be shared with a third party for necessary servicing of the product. It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons. We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group. "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing. We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law. The law allows us to share a customer's financial data within Our Group for marketing purposes. The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:

- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies. This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order. This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation. This applies whether the transaction is proposed or complete;

- a professional peer review group.  This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer.  However, such consent shall not be prohibited, limited or sought for certain insurance functions.  This includes, but is not limited to:

a.    claims administration;
b.    fraud prevention;
c.    underwriting; policy placement or issuance; loss control or auditing.

## Access to Your Information

The following persons will have access to personal information we collect:
employees of Our Group and third party service providers.  Information will only be collected as is needed in transactions with you.

## Violation of the Privacy Policy

Any person violating this Policy will be subject to discipline. This may include termination.

For questions regarding this privacy statement, please contact your broker.

# MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

## I.   INSURING AGREEMENTS

(A)   The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)   The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act**.

(C)   The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act**.

## II.   DEFINITIONS

(A)   **"Application"** means:

(1)   the application attached to and forming part of this Policy; and

(2)   any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)   **"Change In Control"** means:

(1)   the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

(2)   the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

(3)   the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)   **"Claim"** means:

(1)   a written demand for monetary or non-monetary relief;

(2)   any civil proceeding in a court of law or equity, or arbitration;

(3)    any criminal proceeding which is commenced by the return of an indictment; and

(4)    a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act**.

(D)    "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to GENERAL CONDITIONS VI (D).

(E)    "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the **Company** in connection with a **Securities Claim**.

(F)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

(1)    wrongful termination of employment whether actual or constructive;

(2)    employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

(3)    sexual or other harassment in the workplace; or

(4)    wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(I)    "**Insured**" means the **Insured Persons** and the **Company**.

(J)    "**Insured Person**" means:

(1)    any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

(2)    any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

(3)    an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

(4)    any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

DO 71 00 09 99

(5)     the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any **Claim** solely in their capacity as a spouse of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(K)     "**Interrelated Wrongful Acts**" means any **Wrongful Act, Company Wrongful Act**, or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L)     "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the **Parent Company**, either directly or through one or more **Subsidiary(s)**;

(1)     owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

(2)     has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three (33%) of those persons described in (L)(1) above.

(M)     "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

(1)     the multiplied portion of any damage award;

(2)     fines, penalties or taxes imposed by law; or

(3)     matters which are uninsurable under the law pursuant to which this **Policy** is construed.

**NOTE:** With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the **Insured**.

(N)     "**Non-Profit Entity**" means a corporation or organization other than the **Company**, which is exempt from taxation under Section 501(c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O)     "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P)     "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q)    "**Securities Claim**" means a **Claim** made against an **Insured** for:

    (1)    any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

    (2)    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(R)    "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S)    "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

    (1)    **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

    (2)    **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

    (3)    **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.    EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)    for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a **Claim** made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE:** EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in **ITEM 6** of the Declarations;

(E)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)    brought about or contributed to in fact by any:

    (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)    profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled;

    as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)    by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

    (1)    is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of an **Insured Person** or the **Company**; or

    (2)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)    by, on behalf of, at the direction of or in the name or right of any **Non-Profit Entity** or **Joint Venture** against an **Insured Person** for a **Wrongful Act** or **Employment Practices Wrongful Act** while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.


## IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in **ITEM 4** of the Declarations up to the Limit of Liability set forth in **ITEM 3** of the Declarations.

(B)    The amount set forth in **ITEM 3** of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)   With respect to the **Company's** indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)   The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)   If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such **Loss**, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)   Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no Retention shall apply to such **Claim** and the Insurer will reimburse those **Defense Expenses** incurred by the **Insured** if:

  (1)   the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

  (2)   there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

  (3)   there is a final judgment of no liability obtained after trial, in favor of the **Insured**, after the exhaustion of all appeals.

  Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

  (a)   the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

  (b)   the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

## V.   DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)   It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)   No **Insured** may incur any Defense Expenses or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)   Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including Defense Expenses paid to or on behalf of the **Insured** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)   If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** is made against both the **Insured** and others (including the **Company** for **Claims** other than **Securities Claims**) not insured

under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of **Loss** that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the **Insured** and others.

(E)   In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.   GENERAL CONDITIONS

(A)   NOTICE

(1)   As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)   If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the **Insured**:

(a)   provides the Insurer with written notice of the specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the **Insured** first became aware of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**; and

(b)   requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

(3)   All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

(B)   INTERRELATED CLAIMS

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

(C)   OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES

(1)   All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2)     All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the Company, regardless of the name or title by which such position is designated, of a **Joint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or **Joint Venture** by reason of their service as such.

(D)    **MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)     If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2)     If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a)     the Insurer receives written notice containing full details of the transaction(s); and

(b)     the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)     With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4)     If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(5)     If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

(a)     coverage will cease with respect to any **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

(b)     the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(E)   **CANCELLATION AND RENEWAL OF COVERAGE**

(1)   Except for the nonpayment of premium, as set forth in (E)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)   The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured**, if applicable.

(3)   The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(F)   **OPTIONAL EXTENSION PERIOD**

(1)   If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act, Company Wrongful Act,** or **Employment Practices Wrongful Act,** occurring prior to the Policy Expiration Date.

(2)   As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)   If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)   The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(G)   **ASSISTANCE, COOPERATION AND SUBROGATION**

(1)   The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)   In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(H)    **EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person(s) who signed the **Application**. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(J)    **ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)    there has been full compliance with all of the terms and conditions of this Policy; and

(b)    the amount of the obligation of the **Insured** has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

(K)    **AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)    the payment of the premiums;

(2)    the receiving of any return premiums that may become due under this Policy;

(3)    the giving of all notices to the Insurer as provided herein; and

(4)    the receiving of all notices from the Insurer.

(L)    ENTIRE AGREEMENT

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.

Endorsement No.: 1
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

XL 80 39 04 05
Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

Notices required to be given to the Insurer must be addressed to:

Notice to Claim Dept:

XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept

All other Notices:

XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 2
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

XL 80 24 03 03

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| Endorsement No.: 3 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

## NEW YORK ADDENDUM TO DECLARATIONS

1.  The Declarations to the Management Liability and Company Reimbursement Insurance Policy is amended by the addition of the following:

    **THIS IS A CLAIMS MADE POLICY, EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD, THE AUTOMATIC EXTENSION PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. NO COVERAGE EXISTS FOR CLAIMS MADE AFTER THE END OF THE POLICY PERIOD OR THE AUTOMATIC EXTENSION PERIOD UNLESS, AND TO THE EXTENT, THE OPTIONAL EXTENSION PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENSION PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM AN OPTIONAL EXTENSION PERIOD OF AT LEAST ONE YEAR CAN BE PURCHASED AS INDICATED IN ITEM 5 OF THE DECLARATIONS. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE AUTOMATIC EXTENSION PERIOD OR, IF PURCHASED, THE OPTIONAL EXTENSION PERIOD, WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER. DURING THE FIRST SEVERAL YEARS OF A CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.**

2.  Item 5. is deleted in its entirety and amended to read as follows:

    **Item 5.    Optional Extension Period and Premium (if purchased at the election of the Parent Company):**

    | Length of Optional Extension Period | Optional Extension Premium |
    |---|---|
    | 1 year ................................................. | 90% of policy premium |
    | 2 years ............................................... | 180% of policy premium |
    | 3 years ............................................... | 205% of policy premium |

3.  Item 7. is amended by the addition of the following:

    Notwithstanding the foregoing, notice given by or on behalf of the Insured or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the Insurer in this state shall be deemed notice to the Insurer.

**DO 85 02 02 00**

| | |
|---|---|
| Endorsement No.: 4 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# NEW YORK COINSURANCE ENDORSEMENT

Solely for the purpose of the coverage provided under Insuring Agreement I.A., in accordance with New York State Laws BCL section 726(a)(3):

1.   the **Insured Persons** are liable to coinsure 0.5% of **Loss** in excess of the applicable Retention for the first $1,000,000 of coverage; and

2.   the retention (under Insuring Agreement I.A.) shall be $5,000 each **Insured Person**, not to exceed $50,000 in the aggregate.

The **Insured Persons** shall not be liable to coinsure any **Loss** in excess of the first $1,000,000 of **Loss** in excess of the applicable retention.

Endorsement No.: 5                                          **Effective: May 16, 2007**
**Named Insured: Lehman Brothers Holdings Inc.**           **12:01 A.M. Standard Time**
**Policy No.: ELU097792-07**                               **Insurer: XL Specialty Insurance Company**

# NEW YORK DEFENSE EXPENSES DISCLOSURE

Defense Expenses reduce and may completely exhaust the Limit of Liability.  To the extent the Limit of Liability is exceeded, the Insurer shall not be liability for Defense Expenses or for the amount of any judgment or settlement. Defense Expenses are also applied to the Retention.

This form shall be attached to and made part of the Policy.

The below Officer of the Parent Company, on behalf of the Insureds, acknowledges that he/she read this form and understands the above provisions.

**Endorsement No.: 6**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# NEW YORK DISCLOSURE STATEMENT

This Policy is a claims-made policy.

Coverage under this Policy or any subsequent renewal of this Policy, subject to the terms of the applicable policy, applies only to any "Claim" (as defined herein) made against the Insureds, or specific Wrongful Act, Employment Practices Wrongful Act or Company Wrongful Act reported during the Policy Period of this Policy or the applicable renewal policy.  All coverage under this Policy ceases upon Termination of Coverage, except for the Automatic Extension Period unless the Optional Extension Period is purchased.

The below officer of the Parent Company, on behalf of the Insureds, acknowledges that he/she has received information from the Insurer or its agent explaining the limitations and potential gaps in coverage of a claims-made policy and that he/she understands these limitations and potential gaps in coverage.

This Policy includes a 60-day automatic extended reporting period, referred to as the Automatic Extension Period.

This Policy provides the Insured with the option to purchase for an additional premium at least a one-year Optional Extension Period from the termination of this Policy.  The premium for the Optional Extension Period is indicated in Item 5. of the Policy's Declarations.

During the first several years of a claims-made relationship between the Insureds and the Insurer, claims-made rates are relatively lower than occurrence rates, and the Insured can expect substantial annual premium increases independent of overall rate level increases, until the claims-made relationships reaches maturity.

Endorsement No.: 7                                          Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.                12:01 A.M. Standard Time
Policy No.: ELU097792-07                                    Insurer: XL Specialty Insurance Company

# NEW YORK AMENDATORY ENDORSEMENT

1.  Clause II. DEFINITIONS (G)(2) is deleted and replaced by the following:

(2)  vicarious liability for employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status; or disparate impact discrimination in employment.

2.  Clause II. DEFINITIONS (G)(3) is deleted and replaced by the following:

(3)  vicarious liability for sexual or other harassment in the workplace: or

3.  Clause II. DEFINITIONS (M) is deleted and replaced by the following:

(M)  "Loss" means damages, judgments, settlements or other amounts and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay.  Loss will not include:

(1) punitive damages or exemplary damages or the multiplied portion of any damage award;

(2) fines, penalties or taxes imposed by law; or

(3) matters which are uninsurable under the law pursuant to which this Policy is construed.

4.  Clause II. DEFINITIONS is amended by addition of the following:

"(T)  'Termination of Coverage' means (1) the Policy expiration date set forth in Item 2., of the Declarations, or its earlier cancellation date, or (2) a decrease in limits, a reduction in coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the Insured."

5.  Clause III. EXCLUSIONS (F) is deleted and replaced by the following:

"(F)  brought about or contributed to by any:

(1)  intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2) profit or remuneration gained by any Insured to which such Insured is not legally entitled; "

6.  Notwithstanding anything to the contrary in the Declarations and Clause VI. GENERAL CONDITIONS (A), notice of any Claim may also be provided to any authorized agent of the Insurer located within the state of New York".

7.  Clause VI. GENERAL CONDITIONS (C) OTHER INSURANCE AND SERVICE IN CONNECTION WITH  NON-PROFIT ENTITIES AND JOINT VENTURES (1) is deleted and replaced by the following:

"(1)  "If any Loss resulting from any Claim is insured under any other policy(ies), this Policy shall apply only to the extent Loss exceeds the amount paid under such other valid and collectible insurance whether such other insurance is stated to be primary, contributory,

excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Policy."

8.    Clause VI. GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (3) is deleted and replaced by the following:

"(3)    The Insurer is under no obligation to renew this Policy upon its expiration.  Once the Insurer chooses to non-renew this Policy or conditions its renewal upon a change in the Limit of Liability, change in type of coverage, reduction of coverage, increased retention, the addition of any exclusion or an increase in premium in excess of 10%, then the Insurer shall mail or deliver written notice of the refusal to renew or the conditional renewal to the Parent Company at the mailing address shown on the Policy and to the Insureds' authorized agent at least sixty (60) days but not more than one hundred and twenty (120) days in advance of the expiration date of the Policy.  Such notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the Insurer does not provide notice of nonrenewal or conditional renewal as provided in Clause VI.(E)(3), coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the Parent Company, during this 60-day period, has replaced the coverage or elects to cancel.

If the Insurer provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another Policy Period, at the lower of the current rates or the prior period's rates, unless the Parent Company, during the additional Policy Period, has replaced the coverage or elects to cancel.

The Insurer will not send the Insureds notice of nonrenewal or conditional renewal if the Insureds, their authorized agent or another insurer of the Insureds mail or deliver notice that the Policy has been replaced or is no longer desired.

If the Insureds elect to accept the terms, conditions and rates of the conditional renewal notice pursuant to Clause VI.(E)(3), a new aggregate Limit of Liability shall become effective as of the inception date of renewal, subject to regulations promulgated by the Superintendent of Insurance."

9.    Clause VI. GENERAL CONDITIONS (F) OPTIONAL EXTENSION PERIOD is deleted and replaced by the following:

"(1)    If either the Parent Company or the Insurer cancels or does not renew this Policy, or if the Parent Company or Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, an increase in premium in excess of 10% over the current Policy's premium, or any change in coverage less favorable to the Insured, then, without any additional premium being required, there shall be an automatic extension of the coverage granted by this Policy with respect to any Claim first made during a period of sixty (60) days immediately following the Termination of Coverage, but only with respect to a Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act committed before the Termination of Coverage, provided such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act is otherwise covered by this Policy.  This 60-days period shall be referred to as the 'Automatic Extension Period'  The granting of such Automatic Extension Period shall not serve to increase the Limit of Liability set forth in Item 3., of the Declarations applicable to the Policy Period and Automatic Optional Extension Period.

(2)    If either the Parent Company or the Insurer cancels or does not renew this Policy, or if the Parent Company or Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, an

increase in premium in excess of 10% over the current Policy's premium, or any change in coverage less favorable to the Insured, then the Parent Company shall have the right, upon payment of an additional premium set forth in Item 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any Claim first made during the period of time set forth in Item 5 of the Declarations after the date upon which the Automatic Extension Period ends.  However, the extension of coverage applies only to a Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act committed before the Termination of Coverage provided such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act is otherwise covered by this Policy.  This additional period of coverage shall be referred to as the 'Optional Extension Period'  Except in the Declarations to the Policy and this Clause VI., the Automatic Extension Period may also be referred to as the Optional Extension Period.

(3)     The Limit of Liability applicable to the Optional Extension Period, if any, shall be at least equal to the amount of coverage remaining in the Policy's Limit of Liability set forth in Item 3. of the Declarations.

(4)     The Insurer shall provide written notice to the Parent Company of the Automatic Optional Extension Period and the availability of, the premium for, and the importance of purchasing, the Additional Optional Extension Period within thirty (30) days after the Termination of Coverage.

(5)     The right to purchase the Optional Extension Period shall terminate unless written notice is given to the Insurer within sixty (60) days from the Termination of Coverage, or within thirty (30) days after the mailing or delivery of the notice provided by the Insurer under Clause VI.(4), above, which ever is greater, together with full payment of the premium for the Additional Optional Extension Period.  If such notice and premium payment are not so given to the Insurer, the Parent Company will not be able to exercise the right to purchase the Additional Optional Extension Period.

(6)     If the Optional Extension Period is purchased, the entire premium shall be deemed earned at its commencement and if the Parent Company terminates the Optional Extension Period before its term, the Insurer shall not be liable to return any portion of the premium paid for the Additional Optional Extension Period.  The premium charged for the Additional Optional Extension Period shall be based upon the rates in effect on the date this Policy was issued or last renewed.

(7)     In the event the Parent Company is in liquidation or bankruptcy, or permanently ceases operation, and if the Parent Company or its designated trustee, although entitled to, does not purchase the Optional Extension Period, any Directors and Officers insured under this Policy who request the Optional Extension Period within 120 days of the Termination of Coverage may purchase the Optional Extension Period, as provided in Clause VI.(2), above.

(8)     A person employed or otherwise affiliated with the Insured and covered by this Policy during such affiliation shall continue to be covered under this Policy and any Optional Extension Period after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

(9)     Upon Termination of Coverage, any return premium due the Insured shall be applied to the premium for the Optional Extension Period if the Insured elects to purchase such coverage.  Where the premium is due to the Insurer, any payment received by the Insurer from the Insured as payment for the Optional Extension Period shall be first applied to any premium due for the Policy.

(10)    In the event similar insurance to that provided by this Policy is in force during the Optional Extension Period, the coverage afforded during the Optional Extension Period shall be excess over any such valid and collectible insurance."

10.     Clause VI. GENERAL CONDITIONS (I) REPRESENTATION CLAUSE is amended by the addition of the following:

"However, no misrepresentation shall be deemed material unless knowledge by the Insured of the facts misrepresented would have led to a refusal by the Insurer to issue the Policy."

11.    Clause VI. GENERAL CONDITIONS (J) ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY (4) is deleted and replaced by the following:

"Notice given by or on behalf of the Insured or written notice by or on behalf of the injured person or any other claimant, to any licensed agent to the Insurer in this state shall be deemed notice to the Insurer."

12.    Clause VI. GENERAL CONDITIONS (J) ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY (1) is amended by addition of the following:

"(c)    If the Insurer does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the Insured or its attorney and the Insurer, then an action may be brought against the Insurer under the terms of the Policy for the amount of judgment not exceeding the amount of the applicable Limit of Liability under the Policy, except during a stay or limited stay of execution against the Insured on such judgment."

13.    This Policy is amended by the addition of the following:

"The insolvency or bankruptcy of the Insureds, or the insolvency of their estates, shall not release the Insurer from the payment of Loss not otherwise excluded under this Policy."

**Endorsement No.: 8**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 9**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# DELETE INSURING AGREEMENT (C) ENDORSEMENT

In consideration of the premium charged:

(1)     Section I Insuring Agreement (C) of the Policy is deleted in its entirety and all references in the Policy to Insuring Agreement (C) are deleted.

(2)     The term "Company Wrongful Act," as defined in Section II Definitions (E) of the Policy, is deleted in its entirety and all references in the Policy to "Company Wrongful Act" are deleted.

(3)     Section II Definitions (Q) is deleted in its entirety and replaced by the following:

(Q)     "Securities Claim" means a Claim made against an Insured Person for:

(1)     any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

(2)     any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market;

(3)     any actual or alleged violation of any federal, state or local law (whether statutory or common law), rule or regulation in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market."

(4)     Item 4. of the Declarations Page is deleted and replaced by the following:

Item 4     Retentions:

$0  each Insured Person under INSURING AGREEMENT I(A)
$10,000,000 each Claim under INSURING AGREEMENT I(B)"

(5)     Solely with respect to Securities Claims made against any of the Insured Persons, Item 4 of the Declarations is amended to read as follows:

Item 4     Retentions:

$0  each Insured Person under INSURING AGREEMENT I(A)
$10,000,000 each Claim under INSURING AGREEMENT I(B)"

With respect to all other Claims, Item 4 of the Declarations shall remain unchanged.

(6)     Solely in the event of a Securities Claim made against an Insured Person(s) and the Company, if both Loss covered by this Policy and loss not covered by this Policy are incurred because such Securities Claim is made against both the Insured Person and the Company (which is not insured under this Policy), the portion of Loss allocated to Insured Persons under this Policy shall in no event be less than one hundred percent (100%).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 10**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND MERGERS & ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (D)(2) of the Policy is amended to read in its entirety as follows:

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed twenty percent (20%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act, Company Wrongful Act, or Employment Practices Wrongful Act that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 11**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NOTICE OF CLAIM

In consideration of the premium charged, for purposes of Section VI (A) Notice, the Insured will be deemed to have given the Insurer notice of a Claim as soon as practicable after such Claim is first made if the Risk Manager gives the Insurer written notice of such Claim as soon as practicable after first becoming aware thereof.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 44 07 00

Endorsement No.: 12
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

DO 80 48 07 00
Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF COMPANY

In consideration of the premium charged, Section II (D), Definition of "Company," is amended to include:

Any Non Profit foundation that is under the management control of the Company

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 13**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NON-PROFIT ENTITY ENDORSEMENT

In consideration of the premium charged, the term "Non-Profit Entity," as defined in Section II Definitions (N) of the Policy, is amended to read in its entirety as follows:

 (N)  'Non-Profit Entity' means any not-for-profit entity or not-for-profit organization.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 14**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND EXCLUSION (F) ENDORSEMENT

In consideration of the premium charged, Section III Exclusions (F) of the Policy is amended to read in its entirety as follows:

(F)    brought about or contributed to in fact by any:

   (1)    intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

   (2)    profit or remuneration gained by any Insured to which such Insured is not legally entitled;

   as determined by a final adjudication."

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 22 05 02

Endorsement No.: 15
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# DEBTOR IN POSSESSION ENDORSEMENT

In consideration of the premium charged, the term "Insured" shall include the Company as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 16                              Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.     12:01 A.M. Standard Time
Policy No.: ELU097792-07                         Insurer: XL Specialty Insurance Company

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 17**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SPECIFIED OTHER INSURANCE ENDORSEMENT

In consideration of the premium charged:

(1)    Solely with respect to any Employment Practices Claim, it is understood and agreed that the coverage provided under this Policy will be specifically excess of, and will not contribute with, Policy Number BM00022400EP06A issued by XL Insurance (Bermuda) Ltd. and any other policy or policies excess thereof issued to the Insured, and no coverage will be available under this Policy for Claims as to which such other insurance applies unless and until the limit or limits of liability of such other insurance shall have been completely exhausted by the payment of loss thereunder.  Nothing herein shall be construed to limit, restrict or otherwise affect coverage under this Policy for Loss, including Defense Expenses, not covered under such other insurance.

(2)    Nothing in this endorsement is intended, nor shall it be construed, to make this Policy subject to any terms of any other insurance policy.

(3)    Section VI General Conditions (C) of the Policy shall be deemed to have been amended as necessary to effect the purpose and intent of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 18**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include those individuals holding the following positions for the Company:

Position(s)

De Facto Directors

All other terms, conditions and limitations of this policy shall remain unchanged.

**Endorsement No.: 19**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND GENERAL CONDITIONS (A)(2) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(2) of the Policy is amended to read in its entirety as follows:

(2)     If, during the Policy Period, or if applicable the Optional Extension Period, the Insured first becomes aware of a specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act and if, during the Policy Period, or if applicable the Optional Extension Period, the Insured:

(a)     provides the Insurer with written notice of the specific Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act; and

(b)     requests coverage under this Policy for any subsequently resulting Claim for such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act;

then any Claim subsequently made arising out of such Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act will be treated as if it had been first made during the Policy Period.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 20
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)    'Loss' means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law and any prejudgment and post-judgment interest awarded on any judgment) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include:

   (1)    the multiplied portion of any damage award;

   (2)    fines, penalties or taxes imposed by law;

   (3)    taxes or wages; or

   (4)    matters which are uninsurable under the law pursuant to which this Policy is construed.

   NOTE:  With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 21**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# GENERAL E&O ENDORSEMENT
# (WITH MANAGEMENT CARVE-BACK)

In consideration of the premium charged:

(1)   No coverage will be available under this Policy for Claims for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for others or for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy; provided that this exclusion will not apply solely with respect to a Claim to which Insuring Agreement (A) applies.

(2)   Paragraph (1) above is not intended, however, nor shall it be construed, to apply to a Claim against an Insured to the extent that such Claim is for a Wrongful Act by such Insured in connection with the management or supervision of any division, Subsidiary or group of the Parent Company offering any of the aforementioned services.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6189 05 06

**Endorsement No.: 22**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIORITY OF PAYMENTS ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, at the request of the chief financial officer of the Parent Company, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

(1)    first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

(2)    second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

(3)    third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 1034 02 04

**Endorsement No.: 23**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INSURING AGREEMENT (A) ENDORSEMENT

In consideration of the premium charged, solely with respect to Claims made under Section I Insuring Agreements (A) of the Policy, the Insurer may not void and/or rescind this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 24
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include those individuals holding the following positions for the Company; provided that the Company indemnifies such individuals with respect to such position(s):

Position(s)

Trustees
Consultants
Officials or Advisors to the Company's Board of Directors

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6191 05 06

| | |
|---|---|
| Endorsement No.: 25 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# LIMITED LIABILITY COMPANY ENDORSEMENT

In consideration of the premium charged:

(1)　　The term "Subsidiary", as defined in Section II Definitions (R) of the Policy, is amended to include any limited liability company organized under the laws of any state, during any time in which the Company and/or the Insured Persons own(s), directly or indirectly, the right to elect, appoint or designate fifty percent (50%) or more of the members of such company's Board of Managers provided that the Company has "management control" of such entity and has an obligation to indemnify such entity's Insured Persons.

(2)　　The term "Change In Control," as defined in Section II Definitions (B) of the Policy, is amended to read in its entirety as follows:

　　"(B)　　'Change In Control' means:

　　　　(1)　　the acquisition of the Parent Company by another entity, or the merger of the Parent Company into another entity such that the Parent Company is not the surviving entity, or the consolidation of the Parent Company with another entity, or the acquisition of substantially all of the assets of the Parent Company by another entity; or

　　　　(2)　　the acquisition at any time or over a period of time during the Policy Period of record or beneficial ownership or control by any person, entity or affiliated group of persons or entities of fifty percent (50%) or more of the outstanding securities representing the present right to vote for the election of directors or member of the Board of Managers, as the case may be, of the Parent Company."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 1102 05 04

| | |
|---|---|
| **Endorsement No.: 26** | **Effective: May 16, 2007** |
| **Named Insured: Lehman Brothers Holdings Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU097792-07** | **Insurer: XL Specialty Insurance Company** |

# CLARIFICATION ENDORSEMENT

In consideration of the premium charged, in the event that there is an inconsistency between a state amendatory attached to this Policy and any term or condition of this Policy, then it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of either the state amendatory or the Policy which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6474 05 07

Endorsement No.: 27                                   Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.       12:01 A.M. Standard Time
Policy No.: ELU097792-07                     Insurer: XL Specialty Insurance Company

# AMEND INSURED PERSON ENDORSEMENT

In consideration of the premium charged:

I.        The definition of "Insured Person," as set forth in Section II Definition (J) of the Policy, is amended to include the following:

        "(6)     an individual identified in (J)(1) above who, at the request of the Company, is, was or will be serving as a director, officer, regent or governor of an Outside Entity;

        (7)      the following individuals, in their capacity as a director or officer of the entities set forth below:

            Henry Lentz – Peabody Energy Corp.
            James Peet – SevenSpace, Inc.
            James Peet – OpenReach, Inc.
            James Peet – Network Telephone Corporation
            James Peet – EpicRealm, Inc.
            John Cecil – CP Kelco
            Peter Cohen – First Capital Holdings
            Richard Descherer – First Capital Holdings
            William Mack – First Capital Holdings
            Hingge Hsu - Aerovance
            Hingge Hsu – Fluidigm
            Hingge Hsu – Peak Surgical
            Keith Greengrove – Grande Asset Development Public Co. Ltd.
            Erik Van Kuelen – Grande Asset Development Public Co. Ltd.
            Jason Dunn – Grande Asset Development Public Co. Ltd.
            Xie Bingwu – Grande Asset Development Public Co. Ltd.
            Mark Newman – Grande Asset Development Public Co. Ltd.
            Kenneth Burd – Grande Asset Development Public Co. Ltd.
            Jerome Calvet – SOFCO
            Glenn McKenzie – Lehman Brothers Private Equity Advisers LLC and its portfolio companies
            Nick Hill – Carpeta Center Comercio Internacional e Servicos Lda
            Nick Hill – Lusotel – Industria Hoteleira Lda
            Nick Hill – Sociedade Hoteleira Sao Lourenco Lda
            Nick Hill – Sociedade Turistica da Penina SA
            Richard E. Wenz – Hunter Fan Company
            Richard E. Wenz – Hunter Fan Holdings, Inc.
            Emilio Novela – Patentes Talgo
            Jack Pope – Patentes Talgo
            David Williams – European Seafood 1 Sarl, Heinz Seafood Luxemborg
            David Williams – MW Brands SAS, Heinz Seafood France
            Jose Arozamena - European Seafood 1 Sarl, Heinz Seafood Luxemborg
            Jose Arozamena - MW Brands SAS, Heinz Seafood France
            Michael Castleman – Touchstone Health Partnership Inc.
            Michael Castleman – FuelQuest, Inc.

(8)     an individual identified in (J)(1) above who, at the request of the company is, was or will be serving as a director, officer, trustee, regent or governor of any entity as described in Section III of this endorsement, other than a Shadow Director Entity;

(9)     William Wesp in his capacity as a director, officer, trustee, regent or governor of Conseco Inc.;

(10)    an individual identified in (J)(1) above who is, was or will be serving as a Shadow Director of any Shadow Company (other than a Company or Joint Venture) that is incorporated or domiciled in the United Kingdom, as defined in Section 741 of the Companies Act 1985 (such entity, "Shadow Director Entity");

(11)    the lawful spouse or domestic partner of any person set forth in subparagraph (6)-(10) above, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse or domestic partner of such persons, and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse or domestic partner, or property transferred from such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in J(1)-(10) above, any Claim against the estate, heirs, legal representatives or assigns of such individual for a Wrongful Act or Employment Practices Wrongful Act of such individual will be deemed to a Claim against such individual."

II.     For purposes of this endorsement, the following terms shall have the meanings set forth below:

(1)     "Outside Entity" means any Non-Profit Entity (regardless if private or public) or any non-public for-profit entity, other than any Company or Joint Venture.

(2)     "New Public Outside Entity" means any public, for-profit entity, other than any Company, Joint Venture, Specified Entity, as described in Section III of this Endorsement, or Shadow Director Entity.

(3)     "Specified Entity" means:

     (a)     the entities set forth in Section I paragraph (J)(7) of this Endorsement; and

     (b)     the following entities:

          Peabody Energy Corp
          Seven Space, Inc.
          Open Reach, Inc.
          Network Telephone Corporation
          Epic Realm, Inc.
          CP Kelco APS
          First Capital Holdings
          St. Mary's NHS Trust
          RSI Holding Corporation
          Newcastle Investment Holdings Corp.
          Weatherford International Ltd.
          Gulfmark Offshore, Inc.
          Link Energy, LLC
          Walter Industries, Inc.
          Interstate Hotels Corp./Interstate Hotels & Resorts Inc.
          Blount International, Inc.
          R.G. Barry Corp.
          Automatic Data Processing

Delta – Galil Industries Ltd.
L-3 Communications Corporation
Imperial Sugar Company
Mahogany Capital Limited
Antero Resources Corporation
Pacific Energy Management LLC
Gulfmark International
Pemstar, Inc.
Regeneration Technologies, Inc.

(4)     "Directorship Entity" means any Outside Entity, New Public Outside Entity, Specified Entity, Non-Profit Entity, or Shadow Director Entity.

III.     New Positions

If, during the Policy Period, an individual identified in Section II Definition (J)(1) of the Policy provides service as a director, officer, trustee, regent or governor of a New Public Outside Entity upon the request of the Company, it shall be the Company's responsibility to report such position to the Insurer within 30 days of Company's risk management group's knowledge of such position.  Upon receiving such notice from the Company, the Insurer will then have 30 days, from its date of notice, to underwrite the risk and advise the Company if it will: (1) provide coverage for such Insured Person's service with the New Public Outside Entity pursuant to Section IV(1) of this Endorsement for no additional premium; (2) provide coverage for such Insured Person's service with the New Public Outside Entity pursuant to Section IV(1) of this Endorsement for an additional premium; or (3) provide coverage for such Insured Person's service with the New Public Outside Entity specifically excess of and without contributing to any other insurance or indemnification available to such Insured Person from any source, including from such New Public Outside Entity or the Company pursuant to Section IV(2) of this Endorsement.  If the Insurer does not provide the Company with its determination within 30 days, coverage for such New Public Outside Entity position will apply pursuant to Section IV.(1) of this Endorsement.

IV.

(1)     All coverage under this Policy for Loss from Claims made against the Insured Persons while acting their capacity as a director, officer, trustee, regent or governor of an Outside Entity, Specified Entity, New Public Outside Entity or Shadow Director Entity (if applicable), will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from such Outside Entity, Specified Entity, New Public Outside Entity or Shadow Director Entity.

(2)     All coverage under this Policy for Loss from Claims made against the Insured Persons while acting in their capacity as a director, officer, regent or governor of any New Public Outside Entity so designated by the Insurer pursuant to Section III of this Endorsement will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from any source, including from such New Public Outside Entity or the Company.  Accordingly, coverage is only available under this Policy in connection with Loss arising under Insuring Agreement (A) of the Policy.

(3)     All coverage under this Policy for Loss from Claims made against William Wesp in his capacity as a director, officer, trustee, regent or governor of Conseco Inc., as set forth in Section II Definition (J)(9), as amended above, will be specifically excess of and will not contribute with any other insurance or indemnification available to such Insured Person from any source, including from Conseco Inc. or the Company.  Accordingly, coverage is only available under this Policy in connection with Loss arising under Insuring Agreement (A) of the Policy.

(4)    With respect to any Directorship Entity's indemnification of its Insured Persons, the certificate of incorporation, charter, partnership agreement or other organizational and operational documents of such Directorship Entity, including bylaws and resolutions, shall be deemed to provide indemnification to the Insured Person for his or her service with respect to such Directorship Entity to the fullest extent permitted by law.

V.  Wrongful Act

The definition of "Wrongful Act," as set forth in Section II Definition (S)(2) of the Policy, is amended to read in its entirety as follows:

"(2)    Insured Person of the Company who, at the request of the Company is serving as a director, officer, trustee, regent or governor of a Directorship Entity."

VI.    Exclusions

(1)    Section III Exclusions is amended to include the following paragraphs:

"(J)    by, on behalf of, at the direction or in the name or right of any Directorship Entity (including any parent company, holding company, controlling entity of any kind or subsidiary thereof, of any Directorship Entity) or past, present or future director or officer thereof, except and to the extent that such Claim:

(1)    is brought derivatively by a security holder of the Directorship Entity (including any subsidiary thereof) who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person, a Directorship Entity (including any subsidiary thereof) or any director or officer of the Directorship Entity (including any subsidiary thereof), (other than any solicitation, assistance or participation for which Section 806 of the Sarbanes-Oxley Act of 2002, or any similar "whistleblower" protection provision of any applicable federal, state, local or foreign securities law, affords protection to such Insured Person or director or officer of the Directorship Entity) ;

(2)    alleges an Employment Practices Wrongful Act by a director, officer, trustee, governor or regent of the Directorship Entity (including any subsidiary thereof);

(3)    is brought and maintained by a director, officer, trustee, governor or regent, or those persons serving in a functionally equivalent role, of any Directorship Entity (including any subsidiary thereof) and brought and maintained in a jurisdiction outside the United States of America, including its territories and possessions;

(4)    is brought in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this policy;

(5)    is brought by the Bankruptcy Trustee or Examiner of the Directorship Entity (including any subsidiary thereof) or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator or Liquidator or comparable authority of the Directorship Entity (including any subsidiary thereof);

(6)    is brought and maintained by a director or officer of any Directorship Entity (including any subsidiary thereof):

(a)    who has not served as a director, officer, or employee of such Directorship Entity (including any subsidiary thereof) for at least four years prior to the date such Claim is first made; and

      (b)    who is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person, a Directorship Entity (including ay subsidiary thereof) or any director or officer of the Directorship Entity (including any subsidiary thereof);"

(2)    Section III Exclusion (I) of the Policy is amended to read in its entirety as follows:

      "(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an Insured Person acting in their capacity as an Insured Person of any entity other than the Company, Joint Venture or Directorship Entity.

VII.    Miscellaneous

      (a)    If any Claim made against any Insured Person gives rise to coverage under both this Policy and under any other policy or policies of management liability and company reimbursement, directors and officers liability or other similar insurance issued by the Insurer to any Directorship Entity, the Insurer's maximum aggregate limit of liability under all such policies for all Loss, including Defense Expenses, in respect of such Claim shall not exceed $35,000,000. It is understood and agreed that to the extent that there are any excess insurers that follow form to the terms and conditions of this policy and this Section (VII)(a) of this Endorsement is pertinent with respect to coverage hereunder, such excess insurers shall treat such event as exhaustion of this policy as though the Insurer paid such Loss under this Policy.

      (b)    In the event loss resulting from a Claim is covered in part under this Policy and in part under any other policy or policies of management liability and company reimbursement, directors and officers liability or other similar insurance issued by the Insurer to any Directorship Entity, the applicable retention or deductible, as the case may be, set forth in the Declarations of each such policy, and the sum of the retentions or deductibles, as the case may be so, shall constitute the Retention applicable to all Loss resulting from such Claim; provided, however, that the total Retention as finally determined shall in no event exceed the largest single retention or deductible, as the case may be, set forth in the Declarations of either policy.

      (c)    Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the Insurer to pay Loss, including Defense Expenses, under the Policy in respect of such Claim in any amount exceeding the available Limit of Liability under this Policy. Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the Insurer to pay loss, including all costs and expenses of defense, under any other policy in respect to any such Claim in any amount exceeding the available limit of liability under such other policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 6474 05 07

DO 83 134 01 07

Endorsement No.: 28                              Effective: May 16, 2007
Named Insured: Lehman Brothers Holdings Inc.     12:01 A.M. Standard Time
Policy No.: ELU097792-07                         Insurer: XL Specialty Insurance Company

# AMEND INSURED v. INSURED EXCLUSION

In consideration of the premium charged: Section III Exclusions (G) of the Policy is amended to read in its entirety as follows:

"(G)    by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

(1)    is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company (other than any solicitation, assistance or participation for which Section 806 of the Sarbanes-Oxley Act of 2002, or any similar "whistleblower" protection provision of an applicable federal, state, local or foreign securities law, affords protection to such Insured);

(2)    is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy;

(3)    is brought by an Insured Person and brought and maintained in a jurisdiction outside the United States of America, including its territories and possessions;

(4)    is brought and maintained by an Insured Person:

(a)    who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least four (4) years prior to the date such Claim is first made; and

(b)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company;

(5)    is an Employment Practices Claim; or

(6)    is brought by the Bankruptcy Trustee or Examiner of the Company of any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 6192 05 06**

Endorsement No.: 29
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) of the Policy is amended to read in its entirety as follows:

"(C)    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation; provided that this EXCLUSION (C):

    (1)    will not apply to a Securities Claim brought by a security holder of the Company other than an Insured Person;

    (2)    will only apply to any pension, employee benefit or welfare plan sponsored by the Company; and

    (3)    will not apply to Claims made under Section I Insuring Agreement (A) of the Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Endorsement No.: 30
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# FOREIGN JURISDICTION ENDORSEMENT

In consideration of the premium charged:

(1)    Where legally permissible, this Policy shall apply to any Claim made against an Insured Person anywhere in the world.

(2)    With respect to any Claim brought and maintained solely in a Foreign Jurisdiction, as defined below, against an Insured Person of a Foreign Company, as defined below, for a Wrongful Act committed or allegedly committed in such Foreign Jurisdiction, the Insurer shall apply those terms and conditions (and related provisions) of the Foreign Policy, as defined below, registered with the appropriate regulatory body in such Foreign Jurisdiction that are more favorable to the Insured Person than the terms and conditions of this Policy; provided, however, this paragraph (2) shall only apply to the following sections of the Policy and the comparable provisions of the Foreign Policy:

Sections I, II, III, VI (D), VI (E), VI (F), VI (G), VI (I), VI (J) and VI (K)

In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

(3)    Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

(a)    "Foreign Company" means any Company formed and operating in any Foreign Jurisdiction.

(b)    "Foreign Jurisdiction" means any jurisdiction, other than the United States of America or any of its territories or possessions.

(c)    "Foreign Policy" means the Insurer's or an affiliated company of the Insurer's (collectively "XL"), management liability policy (including all mandatory endorsements, if any) approved by XL to be sold within the Foreign Jurisdiction that provides coverage substantially similar to the coverage afforded under this Policy. If more than one such policy exists, then "Foreign Policy" means the standard policy most recently registered in the local language of the Foreign Jurisdiction, or if no such policy has been registered, then the policy most recently registered in that Foreign Jurisdiction. The term "Foreign Policy" shall not include any partnership managerial, pension trust or professional liability coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 31**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

"(I)      REPRESENTATION CLAUSE

The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured. In the event that any of the particulars or statements in the Application are untrue, this Policy will be void with respect to any Insured who knew of such untruth."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 6190 05 06**

**Endorsement No.: 32**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# LOCAL TAX ENDORSEMENT

In consideration of the premium charged, in the event the Insurer is unable to pay any Loss in the country where such Loss is incurred because of local law or otherwise, to the degree allowable, such Loss shall be paid in the United States of America. In the event of the payment of such Loss by the Insurer, the Insurer shall also pay the Insured an additional amount required to offset any tax(es) on income as a result of local tax(es) on income payable by the Insured in the country of payment, that accrues because of such payment, which amount is part of, and not in addition to, the maximum aggregate Limit of Liability for all Loss from all Claims under this Policy as set forth in Item 3 of the Declarations. Any such additional amount shall be reduced to the extent of any reduction in tax(es) on income as a result of local tax treatment of the loss in the country where the loss occurred.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 6473 09 06**

Endorsement No.: 33
Named Insured: Lehman Brothers Holdings Inc.
Policy No.: ELU097792-07

Effective: May 16, 2007
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND SUBSIDIARY DEFINITION ENDORSEMENT

In consideration of the premium charged, Section II Definition (R) of the Policy is amended to read in its entirety as follows:

"(R)    'Subsidiary' means any entity during any time in which the Parent Company owns, directly or through one or more Subsidiary(s), fifty percent (50%) or greater of the outstanding securities representing the right to vote for the election of such entity's directors provided that, only in the case where the Parent Company owns, directly or through one or more Subsidiary(ies), fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors, the Company has "management control" of such entity and has an obligation to indemnify such entity's Insured Persons."

All other terms, conditions and limitations of this Policy shall remain unchanged.

Manuscript 7142 05 07

| | |
|---|---|
| Endorsement No.: 34 | Effective: May 16, 2007 |
| Named Insured: Lehman Brothers Holdings Inc. | 12:01 A.M. Standard Time |
| Policy No.: ELU097792-07 | Insurer: XL Specialty Insurance Company |

# EMPLOYED LAWYERS ENDORSEMENT

In consideration of the premium charged:

(1)  The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against any Employed Lawyer of the Company (an "Employed Lawyer Claim").

(2)  The term "Employed Lawyer" means any employee of the Company if and to the extent such employee is or, during the course of such person's employment was,"

    (a)  admitted to the practice of law; and

    (b)  employed within the Company for the purpose of providing legal services to or for the benefit of the Company.

(3)  The term "Insured Person" also includes any Employed Lawyer.

(4)  The term "Wrongful Act" also includes any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Employed Lawyer, but only in connection with an Employed Lawyer's performance of, or actual or alleged failure to perform, legal services to or for the benefit of the Company within the scope of his or her employment.

(5)  No coverage will be available under this endorsement for Loss, including Defense Expenses, from any Claim against an Employed Lawyer based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    (a)  the service by any such person in any capacity, whether or not with the Company, other than those explicitly set forth in this endorsement; or

    (b)  an Employed Lawyer's performance of, or actual or alleged failure to perform, any legal services other than legal services to or for the benefit of the Company within the scope of the Employed Lawyer's employment.

(6)  It is understood and agreed that Endorsement No. 21 shall not apply to the coverage afforded by this Endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 7141 05 07**

**Endorsement No.: 35**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AUSTRALIAN CLAIM ENDORSEMENT

In consideration of the premium charged, solely with respect to Defense Expenses, Section III Exclusion (G) will not apply to the extent a Claim is brought and maintained in Australia.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 218 04 03

**Endorsement No.: 36**
**Named Insured: Lehman Brothers Holdings Inc.**
**Policy No.: ELU097792-07**

**Effective: May 16, 2007**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CHANGE IN CONTROL ENDORSEMENT

In consideration of the premium charged, Section II Definitions (B)(3) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

## **EXHIBIT B**

## **(EXCESS INSURANCE POLICIES)**



## Endurance
*Specialty Insurance Ltd.*

(Hereinafter referred to as the "Insurer")

Wellesley House, 90 Pitts Bay Road, Pembroke HM 08, Bermuda
Telephone: 441-278-0400
Facsimile: 441-296-1474
For Claim Matters Only: Facsimile: ECLAIMS@ENDURANCE.BM

### BERMUDA FOLLOW FORM
### EXCESS LIABILITY INSURANCE POLICY

### NOTICE: PLEASE READ CAREFULLY

The Policy shall follow all the terms and conditions of the Followed Form except as stated, herein.  Terms defined in the Followed Form are used herein with the meaning assigned to them in the Followed Form unless otherwise indicated.

DECLARATIONS

POLICY NO.:  P005332003
Renewal of: P005332002

ITEM 1.   NAMED INSURED:
ADDRESS:

Lehman Brothers Holdings Inc.
1301 Avenue of Americas
New York, NY 10019, USA

ITEM 2.   POLICY PERIOD:

From:     May 16, 2007        To:     May 16, 2008
(12:01 A.M. at the address stated in Item 1.)

ITEM 3.   LIMIT OF LIABILITY:                           US$  20,000,000        Aggregate
(Including Defense Costs)

EXCESS OF TOTAL UNDERLYING LIMITS OF:     US$  180,000,000     Aggregate

ITEM 4.   FOLLOWED FORM:

Issued By:                    XL Specialty Insurance Company
Policy No.:                   ELU097792-07
Policy Period:                From: May 16, 2007          To:   May 16, 2008
(12:01 A.M. standard time at the address stated in Item 1.)

Limits of Liability:          US$   20,000,000
Coverage:                     Directors & Officers Liability

1 of 2

Date of Issuance -        July 19, 2007
ESIL PL-XS 02 Declaration
Ed. (3/07)



**Endurance**
*Specialty Insurance Ltd.*
(Hereinafter referred to as the "Insurer")
Wellesley House, 90 Pitts Bay Road, Pembroke HM 08, Bermuda
Telephone: 441-278-0400
Facsimile: 441-296-1474
For Claim Matters Only: Facsimile: ECLAIMS@ENDURANCE.BM

BERMUDA FOLLOW FORM
EXCESS LIABILITY INSURANCE POLICY

NOTICE: PLEASE READ CAREFULLY

DECLARATIONS (Continued)                      POLICY NO.:  P005332003

ITEM 5.    PENDING & PRIOR LITIGATION DATE:          May 16, 2003
This policy is intended to follow the Pending & Prior Litigation Exclusion of the Followed Form, subject to the date indicated in Item 5, of the Declarations.

ITEM 6.    PREMIUM:                    US$ 325,225
           COMMISSION:                 5%

ITEM 7.    A.    DISCOVERY PERIOD PREMIUM:     150% of Premium indicated in Item 6.
           B.    DISCOVERY PERIOD:             1 Year

ITEM 8.    ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

           ENDURANCE SPECIALTY INSURANCE LTD.
           ATTN: CLAIMS DEPARTMENT
           THE WELLESLEY HOUSE, 90 PITTS BAY ROAD
           PEMBROKE HM08, BERMUDA
           ECLAIMS@ENDURANCE.BM OR FACSIMILE: 441-296-5151

ITEM 9.    ENDORSEMENTS AT ISSUANCE:         1   to   4

ITEM 10.   REPRESENTATIVE OF THE INSURED:     Marsh Global Markets (Bermuda) Ltd.
                                              Craig Appin House
                                              8 Wesley Street
                                              Hamilton HMJX, Bermuda

The insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

F.K. Geelio
_____
Authorized Representative

2 of 2

Date of Issuance -    July 19, 2007
ESIL PL-XS-02 Declaration
Ed. (M07)



**Endurance Specialty Insurance Ltd.**
(Hereinafter referred to as the "Insurer")
The Wellesley House, 90 Pitts Bay Road, Pembroke HM08, Bermuda
Telephone: 441-278-0400 Facsimile: 441-296-1474
For Claims Matters Only: ECLAIMS@ENDURANCE.BM

## BERMUDA FOLLOW FORM
## EXCESS LIABILITY INSURANCE POLICY

In consideration of premium paid and subject to the Declarations and endorsements made a part hereof and the terms, conditions and limitations set forth herein and therein, ENDURANCE SPECIALTY INSURANCE LTD. (herein referred to as the "Insurer") agrees as follows:

## I.    INSURING CLAUSE

The Insurer shall pay the Insured as defined in the Followed Form (also referred to herein as the "Insured") for loss by reason of exhaustion by payments of all underlying limits of all underlying policies as are on file with the Insurer (henceforth "Underlying Policies"), by the underlying insurers issuing such Underlying Policies or the Insureds, subject to:

A.    the terms and conditions of the Followed Form as in effect the first day of the Policy Period;

B.    the Limit of Liability as stated in Item 3 of the Declarations; and

C.    the terms and conditions of, and the endorsements attached to, this policy.

Notwithstanding the above, this policy shall not provide coverage broader than that provided by all Underlying Policies, or any policy issued by any participating quota share insurer, unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

## II.    TERMS AND CONDITIONS

### A.    PUNITIVE DAMAGES COVERAGE

This policy shall cover punitive damages to the same extent punitive damages are covered under the Followed Form; provided, however, if the Followed Form coverage for punitive damages is solely contingent on the insurability of such damages under applicable law then this policy shall provide coverage for punitive damages.

### B.    LOSS PROVISIONS

1.    This policy shall follow the notice of claim provisions of the Followed Form, except as stated otherwise herein.

2.    Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.

3.  The Insured shall give the Insurer such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.

4.  The Insurer shall maintain full and complete claims control as respects its portion of any claims or losses arising under the policy. The Insurer shall investigate, adjust, and settle its portion of such claims or losses. Only those settlements, stipulated judgments and defense costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as loss under the terms of this policy.

## C.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this policy, and the Insured agrees, that all applications, warranty statements, together with attachments and any other materials submitted for this policy and any Underlying Policy, shall be deemed attached to and made a part of this policy.

## D.  FOLLOWING FORM

1.  This policy, except as stated herein, is subject to all terms, conditions, agreements and limitations of the Followed Form in all respects as if in effect on the date hereof. The Named Insured shall furnish to the Insurer copies of all proposed rewrites or changes by endorsement or otherwise to the Followed Form as soon as reasonably practicable. The Named Insured agrees that should any change to the Followed Form be made by rewrite, endorsement or otherwise, this policy shall not be changed without the written consent of the Insurer, which consent shall be at the sole discretion of the Insurer. Any subsequent issuance of an endorsement reflecting such change shall also be at the sole discretion of the Insurer. It is further agreed, should any change of this policy be approved, then the premium hereon may be adjusted accordingly.

2.  In the event of the depletion of the limits of liability from any of the Underlying Policies, solely as a result of payment of losses thereunder by either the underlying insurer issuing such underlying policy or the Insureds, this policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this policy, continue to apply for subsequent losses as excess insurance over the amount of insurance remaining under any such Underlying Policy. In the event of the exhaustion of all the limits of liability of all Underlying Policies, solely as a result of payment of losses thereunder by the underlying insurers issuing such Underlying Policies or the Insureds, the remaining limits available under this policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this policy, continue for subsequent losses as primary insurance and any retention specified in any of such Underlying Policies shall be imposed under this policy.

3.  The Insurer's obligations under this policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down or make any payment by reason of the receivership, insolvency, or inability or refusal to pay of any underlying insurer, the cancellation of any of the Underlying Policies or the existence of any state amendatory endorsement, any service of suit, clause or endorsement, or a sub-limit of liability in any of the Underlying Policies. In the event of the receivership, insolvency, or inability or refusal to pay of any underlying insurer, or the cancellation of any of the Underlying Policies, the Insured may pay any losses otherwise payable under such Underlying Policy and such payments by the Insured shall be deemed to apply toward exhaustion of the limits of liability of such Underlying Policy for purposes of coverage under this policy. In the event a state amendatory endorsement or a sub-limit of liability exists in any of the Underlying Policies, any payments of loss that are subject to such an amendatory or sub-limit shall be deemed to apply toward exhaustion of the limits of liability of such Underlying Policy for purposes of coverage under this policy.

E.  CANCELLATION CLAUSE

This policy shall follow the cancellation terms of the Followed Form.

F.  DISCOVERY PERIOD

Subject to the Discovery Period Premium and Discovery Period indicated in Item 7 of the Declarations, the Insured shall be entitled to a Discovery Period pursuant to the terms and conditions of the Followed Form. The Discovery Period shall not be available unless the Insured has elected the Discovery Period in all Underlying Policies and has provided proof thereof to the Insurer. The Limit of Liability or remaining part thereof for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. The Discovery Period is not cancelable. The additional premium for the Discovery Period shall be fully earned at inception of the Discovery Period.

G.  ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render a decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board.  The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability, nor shall the Insurer be impleaded by the Insured or their legal representatives.   The Insurer and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in a jurisdiction or forum other than that set forth in this clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits).  The Insured will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this policy.  The Insured shall be entitled to assert claims against the Insurer for coverage under this policy including, without limitation, for amounts by which the Insured reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this clause; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

H.   CHOICE OF LAW

This policy shall be construed and enforced in accordance with the internal laws of The State of New York (with the exception of the procedural law required by paragraph G above, which shall be construed and enforced in accordance with the laws of Bermuda), except insofar as such laws may prohibit payment hereunder in respect of punitive damages; provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this policy are to be construed in an evenhanded fashion between the Insured and the Insurer.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Chairman, Chief Executive Officer and President.

KENNETH J. LESTRANGE
CHAIRMAN, CHIEF EXECUTIVE OFFICER AND PRESIDENT

ESIL PL-XS-02 Policy Ed. 03/07

Endorsement No:                    1

This Endorsement, effective:       May 16, 2007

(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in Item 1. of the Declarations)

forms a part of Policy No:         P005332003

Issued To:                         Lehman Brothers Holdings Inc.

by:                                Endurance Specialty Insurance Ltd.


## PENDING & PRIOR LITIGATION ENDORSEMENT

It is agreed that Declarations Item 5, Pending and Prior Litigation Date, is replaced with the following:

The Insurer shall not be liable for loss in connection with any claim, circumstance or other matters made against any Insureds alleging, arising out of, based upon or attributable to any pending or prior litigation as of May 16, 2003 including but not limited to arbitration, administrative or regulatory proceedings or investigation(s).

All other terms and conditions of this policy remain unchanged.


_F.K. Geelse_

_____
            Authorized Representative


Date of Issuance -     19-Jul-07

237 PL-XS-02 (Ed. 3/07)
1_2007_237 pl

**Endorsement No:**     2

This endorsement, effective:  May 16, 2007

(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)

forms a part of Policy No:    **P005332003**

Issued to:              Lehman Brothers Holdings Inc.

by:                 Endurance Specialty Insurance Ltd.

## AMENDED ARBITRATION

It is hereby understood and agreed that Section G. ARBITRATION, is deleted in its entirety and is replaced with the following:

### G. ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render a decision on the matter or matters in controversy in writing and shall

Date of Issuance:      July 19, 2007

Manuscript 1110 – Lehman Amended Arbitration

**Endorsement No:**          2

This endorsement, effective:   May 16, 2007

(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)

forms a part of Policy No:    **P005332003**

Issued to:                    Lehman Brothers Holdings Inc.

by:                           Endurance Specialty Insurance Ltd.

### AMENDED ARBITRATION, Continued

cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insured to determine the Insured's liability, nor shall the Insurer be impleaded by the Insured or their legal representatives. The Insurer and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insured's other insurers in a jurisdiction or forum other than that set forth in this clause, the Insured will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits). The Insured will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Insurer would have been liable to such insurers for indemnity or contribution pursuant to this policy. The Insured shall be entitled to assert claims against the Insurer for coverage under this policy including, without limitation, for amounts by which the Insured reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the Insured pursuant to this clause; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any

2 of 3

Date of Issuance:        July 19, 2007

Manuscript 1110 –Lehman Amended Arbitration

**Endorsement No:**           2
This endorsement, effective:   May 16, 2007
(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)
forms a part of Policy No:     **P005332003**
Issued to:                     Lehman Brothers Holdings Inc.
by:                            Endurance Specialty Insurance Ltd.

### AMENDED ARBITRATION, Continued

defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

3 of 3

Date of Issuance:          July 19, 2007
Manuscript 1110 – Lehman Amended Arbitration

**Endorsement No:**           3

This endorsement, effective:    May 16, 2007

(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in Item 1 of the Declarations)

forms a part of Policy No:      **P005332003**

Issued to:                      Lehman Brother Holdings Inc.

by:                             Endurance Specialty Insurance Ltd.

## ENDORSEMENT

It is agreed that notwithstanding the provisions of Section I. Insuring Clause and Section II. Terms and Conditions, Subsection D. Followed Form, any reduction or exhaustion or erosion of the aggregate Limit of Liability of the Underlying Policies will apply, for purposes of attachment of this policy, to the extent such reduction, exhaustion or erosion results from any underlying insurer's inability to pay a covered claim, by reason of such underlying insurer's insolvency or Financial Impairment.

Financial Impairment means the status of an organization resulting from (a) the appointment by any state or federal official agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such organization; or (b) such organization becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any country.

All other terms and conditions of this policy remain unchanged.

_F.K. Geodud_
_____
**Authorized Representative**

Date of Issuance:                July 19, 2007

Manuscript 1052 –Insolvency Drop Down Endt

**Endorsement No:**           **4**

This endorsement, effective:   May 16, 2007

(at 12:01 A.M. prevailing time at the address of the Named Insured as shown in item 1. of the Declarations)

forms a part of Policy No:     P005332003

Issued to:                     Lehman Brothers Holdings Inc.

by:                            Endurance Specialty Insurance Ltd.

### ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

It is agreed that the policy is amended to include the following:

If any Loss or Damages arising from a claim made against any Insured, as covered by Endorsement No. 38 (AMEND INSURED PERSON ENDORSEMENT) of the Followed Policy (hereinafter "ODL Claim"), including any revisions or amendments made to Endorsement No. 38, is covered under any other valid and collectable policy(ies) issued by any member company of Endurance Specialty Holdings Ltd, then the total amount the Insurer shall pay under all such policies for all covered Loss or Damages on account of such claim shall not exceed the aggregate Limit of Liability of $25,000,000. Nothing in this endorsement shall be construed as increasing the respective limits of liability beyond the amount stated in each of the respective policies. Further, all other terms and conditions of this policy remain unchanged.

Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by the insurers of the Underlying Insurance or any of the member companies of the insurers of the Underlying Insurance or the Insureds for Loss or Damages as being part of the Underlying Limit of Liability with respect to an ODL Claim.

F. K. Geelud

_____

**Authorized Representative**

Date of Issuance -        July 19, 2007

Manuscript 1114 – ODL Non Accumulation of Limits Endt



THE INSURED IS REQUESTED TO **READ THIS POLICY.** IF IT IS INCORRECT, PLEASE RETURN IT
IMMEDIATELY TO YOUR BROKER OR AGENT FOR ALTERATION.

**IN ALL COMMUNICATIONS** THE POLICY NUMBER APPEARING OVERLEAF SHOULD BE QUOTED

**DECLARATIONS**
**EXCESS LIABILITY POLICY**

SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY CLAIM MADE AGAINST
THE ASSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY AVAILABLE
TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED
BY AMOUNTS INCURRED AS REASONABLE AND NECESSARY LEGAL FEES AND
EXPENSES IN DEFENDING THE ASSUREDS.  THIS POLICY DOES NOT PROVIDE FOR ANY
DUTY BY UNDERWRITERS TO DEFEND THE ASSUREDS.

These Declarations along with the completed and signed Application, and the Policy with
endorsements shall constitute the contract between the Assureds and Underwriters.

**Policy Number:** 509/QA017007

**Item A.**   **Named Insured:**

Lehman Brothers Holdings, Inc.

**Principal Address:**

1301 Avenue of the Americas
New York
NY 10019
USA

**Item B.**   **Policy Period:**

From:   16th May, 2007
To:      16th May, 2008
Both days at 12:01 a.m. local standard time at the Principal Address stated in Item A.

**Item C.**   **Limit of Liability:**

USD 10,000,000      in the aggregate for the Policy Period.

**Item D.**   **Premium:**

USD 146,400, including TRIA

**Item E.**     **Notification to Underwriters pursuant to Clause V. shall be given via:**

Arthur Washington
Mendes & Mount, LLP
750 Seventh Avenue
New York
NY 10036-6829
USA

**Item F.**     **Primary Policy:**

| | |
|---|---|
| Primary Carrier: | XL Specialty Insurance Company |
| Policy Number: | ELU097792-07 or renewal thereof |
| Limit: | USD 20,000,000 |
| Retention: | USD 10,000,000 |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

**Item G.**     **Underlying Excess Policies:**

| | |
|---|---|
| 1st Excess Carrier: | Chubb |
| Policy Number: | 7043-0876 or renewal thereof |
| Limit: | USD 15,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

| | |
|---|---|
| 2nd Excess Carrier: | CNA |
| Policy Number: | 267996454 or renewal thereof |
| Limit: | USD 10,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

| | |
|---|---|
| 3rd Excess Carrier: | Certain Underwriters at Lloyd's, London |
| Policy Number: | QA016907 |
| Limit: | USD 10,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

| | |
|---|---|
| 4th Excess Carrier: | U.S. Specialty Insurance Company |
| Policy Number: | 24-MGU-07-A14479 |
| Limit: | USD 15,000,000 |
| Retention: | As per Primary |
| Period: | 12 months from 16th May, 2007 at 12:01 a.m. local standard time |

5th Excess Carrier:    Zurich American Insurance Company
Policy Number:         DOC 7995104 09
Limit:                 USD 15,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

6th Excess Carrier:    Ace Bermuda Insurance Limited
Policy Number:         LEHM - 11742D
Limit:                 USD 25,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

7th Excess Carrier:    St. Paul Mercury Insurance Company
Policy Number:         ECO9000713
Limit:                 USD 15,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

8th Excess Carrier:    Axis Reinsurance Company
Policy Number:         RNN 713535/01/2007
Limit:                 USD 15,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

9th Excess Carrier:    Liberty Mutual Insurance Company
Policy Number:         078365-017
Limit:                 USD 10,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

10th Excess Carrier:   Arch Insurance Company
Policy Number:         DOX0006634-01
Limit:                 USD 15,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

11th Excess Carrier:   AWAC
Policy Number:         C002007/005
Limit:                 USD 15,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

12th Excess Carrier:   Endurance Specialty Insurance
Policy Number:         P0055332003
Limit:                 USD 20,000,000
Retention:             As per Primary
Period:                12 months from 16th May, 2007 at 12:01 a.m. local standard time

**Item H.     Service of process in any suit pursuant to Clause VI. shall be made upon:**

Mendes & Mount, LLP
750 Seventh Avenue
New York
NY 10036-6829
USA

**Dated in London:** 15th May, 2007

## EXCESS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in the Application and subject to the provisions of this Policy, Underwriters and the Assureds agree as follows:

**I.   CONFORMANCE WITH UNDERLYING POLICIES**

Except as regards:

A.   the premium, and

B.   the amount and Limit of Liability, and

C.   the subject matter of Clauses II, III, IV, V, VI, VII and VIII, and

D.   as otherwise may be provided herein,

this Policy is subject to the same insuring clauses, definitions, terms, conditions, exclusions and other provisions as those set forth in the Underlying Policies as described in the materials submitted to Underwriters in connection with the Application for this Policy. No changes to the Underlying Policies as so described shall be binding upon Underwriters under this Policy unless specifically agreed in writing by Underwriters hereon.

**II.   DEFINITIONS**

The following terms whenever used in this Policy shall have the meanings indicated.

A.   "Assureds" shall mean all persons or entities insured under the Primary Policy.

B.   "Primary Policy" shall mean the policy identified in Item F. of the Declarations.

C.   "Underlying Limits of Liability" shall mean the combined limits of liability of the Underlying Policies as set forth in Items F and G of the Declarations, less any reduction or exhaustion of said limits of liability due to payment of loss under said policies.

D.   "Underlying Policies" shall mean the policies identified in Items F and G of the Declarations.

**III.    MAINTENANCE OF UNDERLYING POLICIES**

This Policy provides excess coverage only.  It is a condition precedent to the coverage afforded under this Policy that the Assureds maintain the Underlying Policies with retentions/deductibles, and limits of liability (subject to reduction or exhaustion as a result of loss payments), as set forth in Items F and G of the Declarations.  This Policy does not provide coverage for any loss not covered by the Underlying Policies except and to the extent that such loss is not paid under the Underlying Policies solely by reason of the reduction or exhaustion of the Underlying Limits of Liability through payments of loss thereunder.  In the event the insurer under one or more of the Underlying Policies fails to pay loss in connection with any claim under Insuring Agreements (B) and (C) of the Primary Policy as a result of the insolvency, bankruptcy or liquidation of said insurer, then the Assureds shall be deemed self-insured for the amount of the limit of liability of said insurer which is not paid as a result of such insolvency, bankruptcy or liquidation.

**IV.    LIMIT OF LIABILITY**

A.    Underwriters shall be liable to pay loss which is in excess of:

    1.    the Underlying Limits of Liability plus

    2.    the applicable retention or deductible under the Primary Policy

up to the Limit of Liability as shown under Item C of the Declarations resulting from each claim made against the Assureds.

B.    The amount shown in Item C of the Declarations shall be the maximum aggregate Limit of Liability of Underwriters under this Policy.

C.    Underwriters shall be liable only after the insurers under each of the Underlying Policies have paid or have been held liable to pay the full amount of the Underlying Limits of Liability.

D.    In the event of the reduction or exhaustion of the Underlying Limits of Liability by reason of payment of loss, or under Insuring Agreement (A) of the Primary Policy, by reason of failure to pay loss as a result of a claim due to insolvency, bankruptcy or liquidation of an insurer under one or more of the Underlying policies this Policy shall:

    1.    in the event of reduction, pay excess of the reduced limits, and

    2.    in the event of exhaustion, continue in force as primary insurance; provided, however that in the case of exhaustion this Policy shall only pay excess of the retention or deductible applicable to the Primary Policy as set forth in Item F of the Declarations, which shall be applied to any subsequent loss in the same manner as specified in the Primary Policy.

V.      **NOTIFICATION**

Notice to Underwriters of any claims shall be given to the firm shown under Item E of the Declarations.

VI.     **WARRANTY CLAUSE**

It is warranted that the particulars and statements contained in the Application, a copy of which is attached hereto, are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy, the Assureds agree:

A.      that the statements in the Application are their representations, that they shall be deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this Policy and that this Policy is issued in reliance upon the truth of such representations;

B.      that in the event that the Application contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and of no effect whatsoever with respect to those Assureds who made or had knowledge of such misrepresentations; and

C.      that, except as provided in Clause VI.B, this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the Assureds.

VII.    **CHOICE OF LAW AND JURISDICTION**

It is agreed that in the event of Policy disputes between the Assured and the Underwriter, this insurance shall be governed by the laws of New York but subject always to the provisions of NMA1998 below.

**SERVICE OF SUIT**

It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of any person or entity insured hereunder will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon the firm shown under Item H of the Declarations, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The firm shown under Item H of the Declarations is authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of any person or entity insured hereunder to give a written undertaking to such person or entity that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to the statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or any of their successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any person or entity insured hereunder or any beneficiary hereunder arising out of this Policy, and hereby designate the firm shown under Item H of the Declarations as the firm to whom the said officer is authorised to mail such process or a true copy thereof.

24/4/86
NMA1998 (amended)

## VIII.   OUTSIDE DIRECTORSHIP PROVISIONS

If any loss arising from any claim made against any of the Assureds, as covered by XL Specialty Insurance Company Primary Policy No. ELU097792-07 or renewal thereof, Endorsement No. 12 (Outside Directorship Liability Endorsement) is insured under any other valid policy(ies) issued by Underwriters, then the total amount Underwriters shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined Aggregate Limit of Liability of USD 25,000,000.

Further, and solely with respect to an Outside Directorship Liability claim, this Policy shall recognise any payment made by Lehman Brothers Holdings, Inc. in excess of payments paid by XL Specialty Insurance Company for loss arising from a claim made against any of the Assureds which is covered by XL Specialty Insurance Company (or any other member of the XL Capital Family) under an outside entity policy and the Primary Policy for Lehman Brothers Holdings, Inc., as being part of the Primary Policy Limit of Liability with respect to an Outside Directorship Liability Claim.

LSW1045 (amended)

### NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Assured the earned premium shall be computed as follows:

A.     For Insurance written for one year:

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 | .......................................... | 5 | 154-156 | .......................................... | 53 |
| 2 | .......................................... | 6 | 157-160 | .......................................... | 54 |
| 3-4 | .......................................... | 7 | 161-164 | .......................................... | 55 |
| 5-6 | .......................................... | 8 | 165-167 | .......................................... | 56 |
| 7-8 | .......................................... | 9 | 168-171 | .......................................... | 57 |
| 9-10 | .......................................... | 10 | 172-175 | .......................................... | 58 |
| 11-12 | .......................................... | 11 | 176-178 | .......................................... | 59 |
| 13-14 | .......................................... | 12 | 179-182 | (6 months)......................... | 60 |
| 15-16 | .......................................... | 13 | 183-187 | .......................................... | 61 |
| 17-18 | .......................................... | 14 | 188-191 | .......................................... | 62 |
| 19-20 | .......................................... | 15 | 192-196 | .......................................... | 63 |
| 21-22 | .......................................... | 16 | 197-200 | .......................................... | 64 |
| 23-25 | .......................................... | 17 | 201-205 | .......................................... | 65 |
| 26-29 | .......................................... | 18 | 206-209 | .......................................... | 66 |
| 30-32 | (1 month)......................... | 19 | 210-214 | (7 months)......................... | 67 |
| 33-36 | .......................................... | 20 | 215-218 | .......................................... | 68 |
| 37-40 | .......................................... | 21 | 219-223 | .......................................... | 69 |
| 41-43 | .......................................... | 22 | 224-229 | .......................................... | 70 |
| 44-47 | .......................................... | 23 | 230-232 | .......................................... | 71 |
| 48-51 | .......................................... | 24 | 233-237 | .......................................... | 72 |
| 52-54 | .......................................... | 25 | 238-241 | .......................................... | 73 |
| 55-58 | .......................................... | 26 | 242-246 | (8 months)......................... | 74 |
| 59-62 | (2 months)......................... | 27 | 247-250 | .......................................... | 75 |
| 63-65 | .......................................... | 28 | 251-255 | .......................................... | 76 |
| 66-69 | .......................................... | 29 | 256-260 | .......................................... | 77 |
| 70-73 | .......................................... | 30 | 261-264 | .......................................... | 78 |
| 74-76 | .......................................... | 31 | 265-269 | .......................................... | 79 |
| 77-80 | .......................................... | 32 | 270-273 | (9 months)......................... | 80 |
| 81-83 | .......................................... | 33 | 274-278 | .......................................... | 81 |
| 84-87 | .......................................... | 34 | 279-282 | .......................................... | 82 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 88-91 | (3 months)........................ | 35 | 283-287 | ........................................ | 83 |
| 92-94 | ........................................ | 36 | 288-291 | ........................................ | 84 |
| 95-98 | ........................................ | 37 | 292-296 | ........................................ | 85 |
| 99-102 | ........................................ | 38 | 297-301 | ........................................ | 86 |
| 103-105 | ........................................ | 39 | 302-305 | (10 months)...................... | 87 |
| 106-109 | ........................................ | 40 | 306-310 | ........................................ | 88 |
| 110-113 | ........................................ | 41 | 311-314 | ........................................ | 89 |
| 114-116 | ........................................ | 42 | 315-319 | ........................................ | 90 |
| 117-120 | ........................................ | 43 | 320-323 | ........................................ | 91 |
| 121-124 | (4 months)........................ | 44 | 324-328 | ........................................ | 92 |
| 125-127 | ........................................ | 45 | 329-332 | ........................................ | 93 |
| 128-131 | ........................................ | 46 | 333-337 | (11 months)...................... | 94 |
| 132-135 | ........................................ | 47 | 338-342 | ........................................ | 95 |
| 136-138 | ........................................ | 48 | 343-346 | ........................................ | 96 |
| 139-142 | ........................................ | 49 | 347-351 | ........................................ | 97 |
| 143-146 | ........................................ | 50 | 352-355 | ........................................ | 98 |
| 147-149 | ........................................ | 51 | 356-360 | ........................................ | 99 |
| 150-153 | (5 months)........................ | 52 | 361-365 | (12 months)...................... | 100 |

B.   For Insurances written for more or less than one year:

   1.   If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

   2.   If insurance has been in force for more than 12 months;

      a.   Determine full annual premium as for an insurance written for a term of one year.

      b.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written

      c.   Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

09/02/58
NMA45

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction:

(a)    with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

(a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)    the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility

is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

## RADIOACTIVE CONTAMINATION EXCLUSION
## CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.    war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.    any act of terrorism.

       For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

## SPECIAL CANCELLATION CLAUSE

In the event that an Underwriter:

(a)    ceases underwriting; or

(b)    is the subject of an order or resolution for winding up or formally proposes a scheme of
       arrangement; or

(c)    has its authority to carry on insurance business withdrawn,

the Assured may terminate that Underwriter's participation on this risk forthwith by giving notice and
the premium payable to that Underwriter shall be pro rata to the time on risk.  In the event there are
any notified, reserved or paid losses or circumstances, premium shall be deemed fully earned.  Any
return of premium shall also be subject to a written full release of liability from the Assured.

30/05/03
NMA2975

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NEW & RENEWAL BUSINESS ENDORSEMENT

This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

In consideration of an additional premium of USD1,464 paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31st, 2007, the date on which the TRIA Program is scheduled to terminate or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.


22/12/05
LMA5052

## EXCESS PRIOR AND PENDING LITIGATION

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Underwriters shall not be liable to make any payment for loss in connection with any claim made against the Assureds based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.      any prior and/or pending litigation as of 12:01 a.m. Local Standard Time on 16th May, 2006, or

2.      any fact, circumstance, situation, transaction or event underlying or alleged in such litigation,

regardless of the legal theory upon which such claim is predicated.


06/01
LSW888A


## WAIVER OF APPLICATION (EXCESS)

In consideration of the payment of the premium charged for the Policy, it is hereby understood and agreed as follows:

1.      The first paragraph of the Policy is deleted and the following is substituted therefor:

"In consideration of the payment of the premium, in reliance upon the statements in any Application for previous policies issued providing continuous coverage until the inception date of this Policy, and subject to the provisions of this Policy, Underwriters and the Assureds agree as follows:"

2.      The first paragraph of Clause VI. Warranty Clause is deleted and the following is substituted therefor:

"It is warranted that the particulars and statements contained in any Application for this Policy or contained in any Application for any policy issued by Underwriters of which this Policy is a renewal thereof and any material submitted therewith are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy."


02/97
LSW957 (amended)

## PREMIUM PAYMENT WARRANTY

The Premium must be paid to and received by Underwriters on or before 24.00hrs on 30th June, 2007. If this warranty is not complied with, then this Insurance shall be cancelled ab initio.

## ADDENDUM NUMBER 1

It is agreed that Underwriters hereon follow:

(a)     the terms of the "Outside Directorship Liability Non Accumulation Endorsement";

(b)     the terms "Amend Insuring Clause and Apply Coinsurance Endorsement";

(c)     the terms of the "Follow Form Endorsement";

(d)     the addition of de facto directors to the definition of Insured Person;

(e)     the addition of pre/post judgement interest to the definition of Loss;

(f)     defence costs exception to the Insured versus Insured Exclusion, specific to Australia;

(g)     the amendment to the Extended Reporting Period to allow for Notice of Circumstances;

(h)     the provision that Outside Entity versus Insured exceptions applicable to the Outside Directorship Liability coverage will be the same as those provided for under the Insured versus Insured clause;

all as stated in the Underlying Chubb Policy, and

(g)     the "Employed Lawyers" endorsement as stated in the Primary XL Insurance Policy and Underlying Chubb Policy.

## ADDENDUM NUMBER 2

It is hereby understood and agreed that wherever the words "Insured" and "Insurers" appear in this Policy same shall be deemed to read "Assured" and "Underwriters" respectively.

## ADDENDUM NUMBER 3

It is understood and agreed that no account taken hereunder of Robert L. Garber or Doris Staehr actions.

All other terms and conditions of the Policy remain unchanged.

## Endorsement No. 1

Attaching to Lloyd's Policy Number 509/QA017007

In the name of  Lehman Brothers Holdings, Inc.

---

It is agreed that, effective from 16th May 2007 at 12.01 a.m. local standard time, the
following amendments are made to the policy:

1.   Under Item G. of the Declarations:

   - The Policy Number of the 7th Excess Carrier, being St Paul Mercury Insurance
     Company is amended to 590CM2698.
   - The Policy Number of the 10th Excess Carrier, being Arch Insurance Group is
     DOX0006634-02

2.   Clause VIII. Outside Directorship Provisions, is amended to read as follows:

   If any loss arising from a claim made against any of the Assureds under
   endorsement #38 to XL Specialty Insurance Company's Primary Policy No.
   ELU097792-07 or renewal thereof, AMEND INSURED PERSON
   ENDORSEMENT, including any revisions or amendments made to endorsement
   #38, (hereinafter "ODL Claim"), is covered under any other valid and collectible
   policy(ies) issued by Underwriters, then the total amount the Insurer shall pay under
   all such policies for all covered loss an account of such claim shall not exceed the
   combined aggregate Limit of liability of $25,000,000.

   Further, and solely with respect to an ODL Claim, the Underlying Limits of
   Liability shall be deemed to be depleted or exhausted as a result of the issuers of the
   Underlying Insurance or any of the members of the issuers of the Underlying
   Insurance, and/or the Assureds, paying loss covered under the Underlying
   Insurance.

4.   The Excess Prior and Pending Litigation Clause is amended by deleting the word
   "Assureds" and replacing it with the words "directors and officers".

5.   Addendum Number 1 attached to the policy is amended to read as follows:

### "ADDENDUM NUMBER 1

   It is agreed that Underwriters hereon follow:

   1.   the terms "Amend Insuring Clause and Depletion of Underlying Limits
      Section Endorsement"

   2.   the terms of the "Follow Form Endorsement"

   All as stated in the Underlying Chubb Policy





The Table of Syndicates referred to on the face of this Policy follows:

**BUREAU REFERENCE**   61251 15/06/07        **BROKER NUMBER**   0509

**BUREAU REFERENCE**   61253 15/06/07        **BROKER NUMBER**   0509

| PROPORTION % | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 100.00 | 2987 | TF587K07B000 |

| TOTAL LINE 100.00 | No. OF SYNDICATES 1 |
|---|---|

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 2007
YEAR OF ACCOUNT

BUREAU USE ONLY
USL1  55    2987

Page  1 of  1

# AIG AIG EXECUTIVE LIABILITY [SM]

Insurance provided by the following member of American International Group, Inc.

## Illinois National Insurance Company

A capital stock company

---

### EXCESS INSURANCE POLICY

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

POLICY NUMBER: *742-14-36*          REPLACEMENT OF POLICY NUMBER: *672-10-71*

### DECLARATIONS

ITEM 1.    NAMED INSURED: *LEHMAN BROTHERS HOLDINGS INC.*

MAILING ADDRESS: *1301 AVENUE OF THE AMERICAS*
*NEW YORK, NY 10019*

STATE OF INCORPORATION/FORMATION OF THE NAMED INSURED:
*Delaware*

ITEM 2.    (a)  FOLLOWED POLICY shall be the following:

INSURER: *XL Specialty Insurance Company*
POLICY NO.: *ELU097792-07*

(b)  FOLLOWED POLICY SECTION
This policy shall follow the terms and conditions of the following coverage sections of the Followed Policy only:

| Coverage Section | Form Number |
| --- | --- |
| *Management Liability and Company Reimbursement* | *do 71 00 09 99* |

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*1113463*

*2-13000*

74674 (11/99)

1

ITEM 3.    POLICY PERIOD: From: *May 16, 2007*    To: *May 16, 2008*
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.    (a)  LIMIT OF LIABILITY:**$20,000,000**          aggregate for all coverages and all
Insured(s) afforded coverage under this policy combined and excess of Total
Underlying Limits in Item 4(b) (including Defense Costs),

(b)  TOTAL UNDERLYING LIMITS: **$210,000,000**

ITEM 5.    SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Primary Policy:<br>*XL Specialty Insurance Company* | *ELU097792-07* | *$20,000,000* | *05/16/2007–05/16/2008* |
| Underlying Excess Policy:<br>*Federal Insurance Company* | *7043-0876* | *$15,000,000<br>Excess of<br>$20,000,000* | *05/16/2007–05/16/2008* |
| *Continental Casualty Company* | *267996454* | *$10,000,000<br>Excess of<br>$35,000,000* | *05/16/2007–05/16/2008* |
| *Lloyd's of London* | *QA016907 / 1* | *$10,000,000<br>Excess of<br>$45,000,000* | *05/16/2007–05/16/2008* |
| *U.S. Specialty Insurance Company* | *24-MGU-07A14479* | *$15,000,000<br>Excess of<br>$55,000,000* | *05/16/2007–05/16/2008* |
| *Zurich American Insurance company* | *DOC 7995104 09* | *$15,000,000<br>Excess of<br>$70,000,000* | *05/16/2007–05/16/2008* |
| *ACE Bermuda Insurance Ltd.* | *LEHM-11742D* | *$25,000,000<br>Excess of<br>$85,000,000* | *05/16/2007–05/16/2008* |
| *St. Paul Mercury Insurance Company* | *590CM2698* | *$15,000,000<br>Excess of<br>$110,000,000* | *05/16/2007–05/16/2008* |
| *AXIS Reinsurance Company* | *RNN713535/01/07* | *$15,000,000<br>Excess of<br>$125,000,000* | *05/16/2007–05/16/2008* |
| *Liberty Mutual Insurance Company* | *078365-017* | *$10,000,000<br>Excess of<br>$140,000,000* | *05/16/2007–05/16/2008* |
| *ARCH Insurance Company* | *DOX0006634-02* | *$15,000,000<br>Excess of<br>$150,000,000* | *05/16/2007–05/16/2008* |
| *AWAC* | *C002007/005* | *$15,000,000<br>Excess of<br>$165,000,000* | *05/16/2007–05/16/2008* |
| *Endurance Specialty Insurance Ltd.* | *P0055332003* | *$20,000,000<br>Excess of<br>$180,000,000* | *05/16/2007–05/16/2008* |
| *Lloyd's of London* | *QA017007 / 1* | *$10,000,000<br>Excess of<br>$200,000,000* | *05/16/2007–05/16/2008* |

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*1113463*
**2-13000**

74674 (11/99)                                2

ITEM 6.    PREMIUM: *$274,500*

> *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $2,718 included in policy premium.*
> *Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
>
> *A copy of the TRIA disclosure sent with the original quote is attached hereto.*

ITEM 7.    NAME AND ADDRESS OF INSURER ("Insurer")

*Illinois National Insurance Company*
*175 Water Street*
*New York, NY 10038*

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*1113463*
**2-13000**
74674 (11/99)                    3

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE & DATE

_____
COUNTERSIGNED AT

MARSH USA, INC.
1166 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

1113463

**2-13000**

74674 (11/99)

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER
## TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage.  The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review.  There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act.  Under this formula the United States pays 85% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *LEHMAN BROTHERS HOLDINGS INC.*


Policy Number: *742-14-36*
Policy Period Effective Date From: *May 16, 2007*        To: *May 16, 2008*

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**2-13000**

81285 (1/03)

**AIG** **AMERICAN INTERNATIONAL COMPANIES**®

### EXCESS INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the Insurer, agrees as follows:

### I.    INSURING AGREEMENTS

This policy shall provide the Insureds and the Company with coverage in accordance with the same terms, conditions, exclusions and limitations of the Followed Policy as listed in Item 2 of the Declarations as they were in existence on the inception date of this policy as described in Item 3 of the Declarations (except as regards the premium, limits of liability and the policy period) subject to:

(a)    the warranties, terms, conditions, exclusions and limitations of this policy, including any endorsement attached hereto, and

(b)    the provision that, notwithstanding any other provision of this policy, in no event shall this policy provide coverage broader than that provided by the Followed Policy, unless such broader coverage is specifically agreed to by the Insurer and identified as broader coverage in a written endorsement attached hereto.

### II.    DEFINITIONS

**Unless otherwise indicated below, the Definitions of the Followed Policy shall have the same meaning in this policy.**

(a)    "Claim", "Discovery Clause", "Insured(s)", "Loss", "Subsidiary" and "Wrongful Act" shall have the same meaning in this policy as is attributed to it in the Followed Policy.

(b)    "Company" shall mean the Named Insured and any Subsidiary thereof.

(c)    "Followed Policy" shall mean the policy listed in Item 2 of the Declarations.

(d)    "Insurer" shall mean the entity listed in Item 7 of the Declarations.

(e)    "Policy Period" shall mean the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(f)    "Total Underlying Limits" shall mean the amount set forth in Item 4(b) of the Declarations, which is the aggregate sum of the limit of liability of all Underlying Policies.

(g)    "Underlying Insurers" means the insurer(s) of each respective Underlying Policy.

(h)    "Underlying Policy(ies)" means any policy set forth in Item 5 of the Declarations.

### III.    LIMIT OF LIABILITY

The Limit of Liability stated in Item 4(a) of the Declarations is the limit of the Insurer's liability for all Loss in excess of the Total Underlying Limit, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy; however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit

DEPARTMENT, HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

74675 (2/01)                                           Page 1 of 5

of Liability for the Policy Period. Further, any Claim that is made subsequent to the Policy Period or Discovery Period (if applicable), which, pursuant to Clause V(b), is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4(a). of the Declarations.

It is expressly agreed that liability for any covered Loss with respect to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy shall attach to the Insurer only after the Underlying Insurers and/or the Insureds or the Company shall have paid the full amount of the Total Underlying Limits, and the Company or the Insureds shall have paid the full amount of the applicable Retention amount under any Underlying Policy. In the event, and only in the event, of exhaustion of the Total Underlying Limits by reason of the Underlying Insurers and/or the Insured or the Company paying Loss covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Total Underlying Limits, and (ii) in the event of exhaustion, continue in force as primary insurance.

This policy shall "drop down" (continue in force as primary insurance) only in the event of exhaustion of the Total Underlying Limits as described above and shall not drop down for any other reason, including, but not limited to, uncollectability (in whole or in part) of any limit of liability of any Underlying Policy, existence of a sub-limit of liability in any Underlying Policy, or any Underlying Policy containing terms and conditions different from the Followed Policy.

## IV.    UNDERLYING LIMITS

It is a condition of this policy that each Underlying Policy shall be maintained in full effect with solvent insurers during the Policy Period, except for any reduction or exhaustion of each Underlying Policy's respective part of the Total Underlying Limits contained therein by reason of Loss(es) paid, for which the Underlying Insurer has agreed to pay or for which the Underlying Insurer been held liable to pay under their respective Underlying Policy (as provided for in Clause III above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Insurer shall be liable only to the extent that it would have been liable had the Insureds and the Company complied with such condition.

Unless the Insurer otherwise agrees in writing, this policy shall immediately and automatically terminate if the Company fails to notify the Insurer as set forth in Clause V(c) of this policy that any Underlying Policy has ceased to be in full effect. If such notification is made, then this policy shall continue in effect, but the Company, the Insured(s) or an insurer providing replacement coverage (if such replacement coverage is obtained) shall be liable for the amount of the underlying limit of such ceased Underlying Policy, and the Insurer shall be liable only to the extent that it would have been liable had the Underlying Policy not ceased. Unless the Insurer otherwise agrees in writing, this policy shall automatically terminate 30 days following the date any Underlying Insurer becomes subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or is taken over by any regulatory authority, unless the Named Insured obtains replacement coverage for such Underlying Policy within such 30 day period.  The risk of uncollectability of (in whole or in part) of any limit of liability of any Underlying Policy, whether because of financial impairment or insolvency of an Underlying Insurer, or for any other reason, is expressly retained by the Insureds and the Company and is not in any way or under any circumstances insured or assumed by the Insurer.

If, during the Policy Period or any Discovery Period (if applicable), the terms, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Company or the Insureds shall, as a condition precedent to their rights under this policy, give to the

REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

74675 (2/01)

Insurer, as soon as practicable, written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, but only upon the condition that the Insurer agrees to follow such changes by written endorsement attached hereto, and the Named Insured agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such changes. Further, such new coverage is conditioned upon the Named Insured paying, when due, any additional premium required by the Insurer relating to such changes.

## V.  NOTICES AND CLAIM REPORTING PROVISIONS

(a)  The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer at the address indicated in Item 7 of the Declarations page in the same manner and to the extent permitted by the terms and conditions of the Followed Policy, of any Claim made against the Insureds.

(b)  If during the Policy Period or during the Discovery Period (if applicable), (i) written notice of a Claim has been given to the Insurer pursuant to Clause V(a) above, or ( ii) to the extent permitted by the terms and conditions of the Followed Policy, written notice of circumstances that might reasonably be expected to give rise to a Claim has been given to the Insurer, then any Claim that is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim or circumstances of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim or circumstances of which such notice has been given, shall be considered made at the time such Claim or circumstances has been given to the Insurer.

(c)  The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of the following events as soon as practicable, but in no event later than 30 days after an Insured or the Company becoming aware of the following:

(i)  The cancellation or nonrenewal of any Underlying Policy or any Underlying Policy otherwise ceasing to be in effect or any part of the Total Underlying Limits being uncollectible (in part or in whole); or

(ii)  Any Underlying Insurer becoming subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding, or being taken over by any regulatory authority.

(iii)  The Named Insured consolidating with or merging into, or selling all or substantially all of its assets to, any other person or entity or group of persons or entities acting in concert; or

(iv)  Any person or entity or group of persons or entities acting in concert acquiring an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Insured, or acquiring the voting rights of such an amount of such securities.

## VI.  CLAIM PARTICIPATION

The Insurer shall have the right, in its sole discretion, but not the obligation, to associate effectively with the Company and the Insureds in the defense and settlement of any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, including, but not limited to effectively associating in the negotiation of a settlement. The Insureds shall defend and contest any such Claim. The Company and the Insureds shall give the Insurer

THESE POLICY FORMS INSURERS
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

full cooperation and such information as it may reasonably require. The failure of the Insurer to exercise any right under this paragraph at any point in the handling of the defense and settlement of a Claim shall not act as a waiver of or limit the right of the Insurer to exercise such rights at any other point in the handling of the defense and settlement of a Claim, including the right to associate effectively in the negotiation of a settlement.

The Insurer does not assume any duty to defend any Claim, unless the terms and conditions of the Followed Policy state otherwise, and in such event only to the extent permitted or required by the terms and conditions of the Followed Policy.  The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs, in regard to any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs that have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to associate effectively in the defense and the negotiation of any settlement of any Claim in order to reach a decision as to reasonableness.

## VII.  CANCELLATION CLAUSE

This policy may be canceled by the Named Insured by mailing prior written notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent at the address set forth in Item 7 of the Declarations and within the time period and in the manner set forth in the Followed Policy. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Insured or by mailing to the Named Insured, by registered, certified, or other first class mail, at the Named Insured's address set forth in the Declarations, written notice stating when, not less than the time period set forth in the Followed Policy (15 days for cancellation due to failure to pay premium) the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Insured, the Insurer shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## VIII.  OTHER CONDITIONS

The Insurer shall be entitled to all the rights, privileges and protections afforded to the insurer of the Followed Policy in accordance with all the terms and conditions of the Followed Policy, specifically including, but not limited to, the right of subrogation, other insurance,  notice and authority, assignment and action against the insurer.

## IX.  PREMIUM

The premium under this policy is a flat premium and is not subject to adjustment except as otherwise provided herein.

NOTICE:   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**X.    CHANGES**

Notice to or knowledge possessed by any person shall not effect a waiver of or a change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

**XI.    DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the dispute resolution process ("ADR") set forth in this clause.

Either the Insurer and the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Insured. The Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

**XII.    HEADINGS**

The descriptions in the headings and any subheadings of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**NOTICE:**  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**ENDORSEMENT# *1***

This endorsement, effective *12:01 am    May 16, 2007*    forms a part of
policy number *742-14-36*
issued to *LEHMAN BROTHERS HOLDINGS INC.*

by    *Illinois National Insurance Company*

### NEW YORK AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, Named Insured, Named Entity or Insured stated in the declarations page;

The policy is hereby amended as follows:

I.    The Cancellation and When We Do Not Renew provisions are deleted and replaced by the following:

(a)    CANCELLATION BY THE INSURED

This policy may be cancelled by the Insured by surrender of this policy to the Insurer or by giving written notice to the Insurer stating when thereafter such cancellation shall be effective. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

(b)    CANCELLATION, NONRENEWAL AND CONDITIONAL RENEWAL BY THE INSURER

(i)    If this policy has been in effect for sixty (60) or fewer days when cancellation notice is mailed, and this policy is not a renewal of a policy issued by the Insurer, then this policy may be cancelled by the Insurer by mailing or delivering to the Insured, and to his authorized insurance agent or broker, written notice stating when not less than twenty (20) days thereafter (fifteen (15) days thereafter if cancellation is because of one of the reasons for cancellation set forth in subsection (ii) below) the cancellation shall be effective. Notice of cancellation issued by the Insurer shall specify the grounds for cancellation.

(ii)    If this policy has been in effect for more than sixty (60) days when notice of cancellation is mailed, or if this policy is a renewal of a policy issued by the Insurer, then this policy may be cancelled by the Insurer by mailing or delivering to the Insured, and to his authorized insurance agent or broker, written notice stating when not less than fifteen (15) days thereafter the cancellation shall be effective; however, such cancellation must be based on one or more of the following:

(A)    nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

(B)    conviction of a crime arising out of acts increasing the hazard insured against;

(C)    discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(D)    after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current Policy Period;

NOTICE
APPROVED FORMS ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END 001*

*2-13000*

69898 (9/06)

**ENDORSEMENT# _1_**    (continued)

(E)    material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F)    required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the Insurer would jeopardize the Insurer's solvency or be hazardous to the interests of Insureds of the Insurer, its creditors or the public;

(G)    a determination by the New York Superintendent of Insurance that the continuation of the policy would violate, or would place the Insurer in violation of, any provision of the New York Insurance Law;

(H)    revocation or suspension of an Insured's license to practice his profession; or

(I)    where the Insurer has reason to believe that there is a probable risk or danger that the Insured will destroy or permit the destruction of the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

(1)    a notice of cancellation on this ground shall inform the Insured in plain language that the Insured must act within ten days if review by the department of the ground for cancellation is desired pursuant to item (3) of this subparagraph (I);

(2)    notice of cancellation on this ground shall be provided simultaneously by the Insurer to the department; and

(3)    upon written request of the Insured made to the department within ten days from the Insured's receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not the Insurer has satisfied the criteria for cancellation specified in this subparagraph; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

Notice of cancellation by the Insurer shall specify the grounds for cancellation.

(iii)

(A)    The Insurer shall mail to the Insured, and to his authorized insurance agent or broker, written notice indicating the Insurer's intention:

(1)    not to renew this policy;

(2)    to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusions or upon increased premiums in excess of ten percent (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating, loss rating, or audit);

NOT APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 001

_2-13000_

69898 (9/06)

**ENDORSEMENT#** *1*    (continued)

(3)    that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the Insured that a second notice shall be mailed at a later date indicating the Insurer's intention as specified in subparagraph (1) or (2) of this paragraph (A) and that coverage shall continue on the same terms, conditions and rates as expiring, until the later of the expiration date or sixty (60) days after the second notice is mailed or delivered; such alternative renewal notice also shall advise the insured of the availability of loss information and, upon written request, the request, the insurer shall furnish such loss information within ten (10) days to the insured.

(B)    A nonrenewal notice as specified in subparagraph (1), a conditional renewal notice as specified in subparagraph (2), and the second notice described in subparagraph (3) of paragraph (A) of this subsection (iii) shall contain the specific reason or reasons for nonrenewal or conditional renewal, and set forth the amount of any premium increase and nature of any other proposed changes.

(C)    The notice required by paragraph (A) of this subsection (iii) shall be mailed at least sixty (60) but not more than one hundred twenty (120) days in advance of the end of the Policy Period.

(D)

(1)    If the Insurer employs an alternative renewal notice as authorized by subparagraph (3) of paragraph (A) of this subsection (iii), the Insurer shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date or sixty (60) days after the mailing of the second notice described in such subparagraph.

(2)    Prior to the expiration date of the policy, in the event that an incomplete or late conditional renewal notice or a late nonrenewal notice is provided by the Insurer, the Policy Period shall be extended, at the same terms and conditions as the expiring policy, except that the annual aggregate limit of the expiring policy shall be increased in proportion to the policy extension, and at the lower of the current rates or the prior period's rates, until sixty (60) days after such notice is mailed, unless the Insured elects to cancel sooner.

(3)    In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the insurer on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required policy period, and at the lower of the current rates or the prior period's rates unless the insured during the additional required policy period has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(iv)    Nothing herein shall be construed to limit the grounds for which the Insurer may lawfully rescind this policy or decline to pay a claim under this policy.

APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 001

*2-13000*

69898 (9/06)

Page 3 of 4

**ENDORSEMENT#** *1*    (continued)

(v)     Notice required herein to be mailed to the Insured shall be mailed to the Insured at the address shown in Item 1 of the Declarations.

Notice required herein to be mailed by the Insurer shall be sent by registered, certified or other first class mail. Delivery of written notice shall be equivalent to mailing.

Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period shall terminate at the effective date and hour of cancellation or nonrenewal specified in such notice.

(vi)    If this policy shall be cancelled by the Insured, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition of cancellation, but such payment shall be made as soon as practicable.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

NOTICE:    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-13000*

69898 (9/06)

END 001

Page 4 of 4

ENDORSEMENT # 2

This endorsement, effective *12:01 am    May 16, 2007*        forms a part of
policy number *742-14-36*
issued to    *LEHMAN BROTHERS HOLDINGS INC.*

by    *Illinois National Insurance Company*

### Follow Form Endorsement – General E&O

In consideration of the premium charged it is hereby understood and agreed that this policy follows the terms and conditions of the Followed Policy, (pursuant to the terms, conditions and exclusions of this policy), except that with respects to the Endorsement titled, "General E & O Endorsement (With Management Carveback)", we will replace "Insured" with "Insured Persons".

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-13000

END 2

This endorsement, effective *12:01 am     May 16, 2007*                forms a part of
policy number  *742-14-36*
issued to   *LEHMAN BROTHERS HOLDINGS INC.*

by      *Illinois National Insurance Company*

### Follow Form Endorsement – ODL Non–Accumulation of Limits and Recognition of Participation

In consideration of the premium charged, it is hereby understood and agreed that if any loss arising from a claim made against any Insured, as covered by the Primary Policy under endorsement #38, AMEND INSURED PERSON ENDORSEMENT (hereinafter "ODL Claim"), including any revisions or amendments made to Endorsement #38, is covered under any other valid policy(ies) issued by any member company of the Insurer, then the total amount the Insurer shall pay under all such policies for all covered loss on account of such claim shall not exceed the combined aggregate Limit of liability of $25,000,000.

Further, and solely with respect to an ODL Claim, the Underlying Limit shall be deemed to be depleted or exhausted as a result of the issuers of the Underlying Insurance or any of the member companies of the issuers of the Underlying Insurance, and/or the Insured(s), paying loss covered under the Underlying Insurance.

Nothing in this endorsement shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED."

2-13000

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
END 3

AUTHORIZED REPRESENTATIVE

ENDORSEMENT # 7

This endorsement, effective  *12:01 am*   *May 16, 2007*      forms a part of
policy number  *742-14-36*
issued to   *LEHMAN BROTHERS HOLDINGS INC.*

by   *Illinois National Insurance Company*

### Follow Form Endorsement – Recognition of Exhaustion of Underlying Limits

In consideration of the premium charged, it is hereby understood and agreed that this
policy will follow the Chubb wording on their "Amend Insuring Clause and Depletion of
Underlying Limits Section Endorsement"

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

NOTICE:  THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

2-13000

*END 4*

ENDORSEMENT #5

This endorsement, effective *12:01 am*    *May 16, 2007*        forms a part of
policy number  *742-14-36*
issued to   *LEHMAN BROTHERS HOLDINGS INC.*

by      *Illinois National Insurance Company*

### Follow Form Endorsement – Drop Down Endorsement for Side A Claims

In consideration of the premium charged, it is hereby understood and agreed that this policy will follow the Chubb wording on their "Amend Sections 1 and 3 For Non-Rescindable Loss Endorsement".


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE:**    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*END 5*

2-13000

**ENDORSEMENT# 6**

This endorsement, effective *12:01 am    May 16, 2007*                forms a part of
policy number   *742-14-36*
issued to *LEHMAN BROTHERS HOLDINGS INC.*

by     *Illinois National Insurance Company*

### PENDING AND PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s):

> alleging, arising out of, based upon or attributable to any pending or prior litigation as of *May 16, 2006*        or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*END 006*

*2-13000*

**ENDORSEMENT# *7***

This endorsement, effective *12:01 am     May 16, 2007*                    forms a part of
policy number   *742-14-36*
issued to *LEHMAN BROTHERS HOLDINGS INC.*

by      *Illinois National Insurance Company*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

**NOTICE:**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 007

**2-13000**

89644 (7/05)

Page 1 of 1

ENDORSEMENT# *8*

This endorsement, effective *12:01 am    May 16, 2007*                    forms a part of
policy number *742-14-36*
issued to *LEHMAN BROTHERS HOLDINGS INC.*

by    *Illinois National Insurance Company*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 74674 | 11/99 | Excess insurance policy NU Dec |
| 81285 | 01/03 | Tria Dec Disclosure Form |
| 74675 | 02/01 | Excess insurance policy NU |
| 69898 | 09/06 | NEW YORK AMENDATORY - CANCELLATION/NONRENEWAL |
| MNSCPT | | Follow Form Endorsement - General E&O |
| MNSCPT | | Follow Form Endorsement - ODL Non-Accumulation of Limits and Recognition of Participation |
| MNSCPT | | Follow Form Endorsement - Recognition of Exhaustion of Underlying Limits |
| MNSCPT | | Follow Form Endorsement - Drop Down Endorsement for Side A Claims |
| PENMAN | | PENDING AND PRIOR LITIGATION EXCLUSION |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | Forms Index Endorsement |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

NOTICE:    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-13000*

78859 (10/01)

*END 008*

**STARR EXCESS** International

Bermuda Branch
29 Richmond Road, Pembroke HM 08 Bermuda
P.O. Box HM 152, Hamilton HM AX, Bermuda
Telephone:          (441) 295 - STAR (7827)
Facsimile:          (441) 292 - 8099

## EXCESS FINANCIAL LINES INSURANCE POLICY

**NOTICE:**          EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:**          THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT STATED IN THE PRIMARY POLICY.

**NOTICE:**          THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

## DECLARATIONS

**POLICY NO.: 6299064**

**ITEM 1.**    **NAMED CORPORATION**:          Lehman Brothers Holdings Inc.
            MAILING ADDRESS:              1301 Avenue of the Americas
                                        New York, NY 10019

            STATE OR OTHER JURISDICTION
            OF INCORPORATION OF THE
            **NAMED CORPORATION**:          Delaware

**ITEM 2.**    POLICY PERIOD:      From: May 16, 2007      To: May 16, 2008
            (12:01 A.M. standard time at the mailing address stated in Item 1.)

**ITEM 3.**    (A)    LIMIT OF LIABILITY: US $10,000,000 Part of US $20,000,000
                in the aggregate (including Defense Costs)

            (B)    EXCESS OF TOTAL UNDERLYING AGGREGATE LIMIT OF: US $230,000,000

**ITEM 4.**    PREMIUM: US $137,250

**ITEM 5.**    (A)    DISCOVERY PERIOD PREMIUM:          See Endorsement #4.
            Premium indicated in Item 4 or as per Underlying Insurance (whichever is greater).

            (B)    DISCOVERY PERIOD:              See Endorsement #4.

**ITEM 6.**    NOTICE OF CANCELLATION PERIOD:          See Endorsement #3.

**ITEM 7.**    ENDORSEMENT(S) EFFECTIVE AT INCEPTION DATE:    Four (4).

**ITEM 8.**    PENDING OR PRIOR DATE:          May 16, 2006.

Date of Issuance: July 18, 2007

Starr.BDA.xsfl.001 (Ed. 5/05)

Starr Excess Liability Insurance International Limited
Incorporated in the Republic of Ireland



# DECLARATIONS (CONT'D)

**POLICY NO.: 6299064**

ITEM 9.    UNDERLYING INSURANCE:

| Insurer | Policy No. | Limits | Policy Period |
|---|---|---|---|
| **Followed Policy:** | | | |
| XL Specialty Insurance Company | ELU097792-07 | $20,000,000 | 16-May-07 to 16-May-08 |
| **Schedule of Underlying Policies** | | | |
| Federal Insurance Company | 7043-0876 | $15,000,000 | 16-May-07 to 16-May-08 |
| Continental Casualty Company | 267996454 | $10,000,000 | 16-May-07 to 16-May-08 |
| Lloyd's of London | B0509QA016907 | $10,000,000 | 16-May-07 to 16-May-08 |
| U.S. Specialty Insurance Company | 24-MGU-07-A14479 | $15,000,000 | 16-May-07 to 16-May-08 |
| Zurich American Insurance Company | DOC 7995104 09 | $15,000,000 | 16-May-07 to 16-May-08 |
| ACE Bermuda Insurance Ltd. | LEHM-11742D | $25,000,000 | 16-May-07 to 16-May-08 |
| St. Paul Mercury Insurance Company | 590CM2698 | $15,000,000 | 16-May-07 to 16-May-08 |
| Axis Reinsurance Company | RNN 713535/01/2007 | $15,000,000 | 16-May-07 to 16-May-08 |
| Liberty Mutual Insurance Company | 078365-017 | $10,000,000 | 16-May-07 to 16-May-08 |
| Arch Insurance Company | DOX0006634-02 | $15,000,000 | 16-May-07 to 16-May-08 |
| Allied World Assurance Company Ltd. | C002007/005 | $15,000,000 | 16-May-07 to 16-May-08 |
| Endurance Specialty Insurance Ltd. | P0055332003 | $20,000,000 | 16-May-07 to 16-May-08 |
| Lloyd's of London | B0509QA017007 | $10,000,000 | 16-May-07 to 16-May-08 |
| Illinois National Insurance Company | 742-14-36 | $20,000,000 | 16-May-07 to 16-May-08 |

BROKER:    Marsh Global Broking (Bermuda) Ltd.
Craig Appin House
8 Wesley Street
Hamilton HM11

Authorized Representative

**July 18, 2007**
**Date**

Date of Issuance: July 18, 2007
Starr.BDA.xsfl.001 (Ed. 5/05)



# EXCESS FINANCIAL LINES INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon material statements made by application, warranty or other means as more fully set forth in Clause VI, which form a part hereof, STARR EXCESS LIABILITY INSURANCE INTERNATIONAL, LTD. herein called the **"Insurer"**, agrees as follows:

## I.    INSURING AGREEMENT

The **Insurer** shall provide the **Insureds** with insurance excess of the **Underlying Aggregate Limit** as set forth in Item 3(B) of the Declarations. Coverage hereunder shall attach only after the **Underlying Insurers** shall have paid the full amount of the **Underlying Aggregate Limit**. Coverage hereunder shall then apply in accordance with the warranties, terms, conditions, exclusions and limitations of the **Followed Policy**, as amended by any more restrictive warranties, terms, conditions, exclusions and limitations of any other policy designated in Item 9 of the Declarations, subject to the warranties, terms, conditions, exclusions and limitations of this policy, including any endorsement attached hereto.

## II.    DEFINITIONS

(a)    The term "**Followed Policy**" shall mean the policy identified in Item 9(A) of the Declarations.

(b)    The term "**Insureds**" shall mean those persons or entities insured under the **Underlying Insurance**.

(c)    The term "**Loss**" or "**Damages**" shall have the same meaning in this policy as is attributed to it in the **Underlying Insurance** except that the term "**Loss**" or "**Damages**" shall in no event include civil or criminal fines or penalties, the multiplied portion of multiplied damages or any amounts for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Loss** or **Damages** shall include punitive damages to the same extent as are part of **Loss** or **Damages** under the **Underlying Insurance**; provided, however, if in the **Underlying Insurance** coverage for punitive damages is solely contingent on the insurability of such damages under applicable law then this policy shall provide coverage for punitive damages.

(d)    The term "**Policy Period**" shall mean the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(e)    The term "**Underlying Insurance**" shall mean the Primary and Underlying Excess Policies set forth in Item 9 of the Declarations.

(f)    The term "**Underlying Insurer(s)**" shall mean the insurer(s) of the **Underlying Insurance**.

(g)    The term "**Underlying Aggregate Limit**" shall mean an amount equal to the aggregate of all the limits of the **Underlying Insurance** combined (excess of their retentions).

## III.    LIMIT OF LIABILITY

The **Insurer's** maximum Limit of Liability for **Loss** shall be the amount stated in Item 3(A) of the Declarations. Purchase of a Discovery Period (if applicable) shall not increase the Limit of Liability.

In the event and only in the event of the reduction or exhaustion of the **Underlying Aggregate Limit** by reason of the **Underlying Insurers** paying, or the **Insureds** paying **Loss** covered hereunder in the event of the insolvency of any **Underlying Insurer**, this policy shall:

(i)    in the event of reduction, pay excess of the reduced **Underlying Aggregate Limit**, and

(ii)    in the event of exhaustion, continue in force as primary insurance; provided that this policy shall only pay excess of any applicable retention amount(s) under the **Primary Policy** which shall be applied to any subsequent **Loss** in the same manner as specified in the **Primary Policy**.

Starr.BDA.xsfl.002 (Ed. 5/05)



#### IV.    UNDERLYING LIMITS

It is a condition of this policy that the **Underlying Insurance** shall be maintained in full effect with solvent insurers during the **Policy Period** except for any reduction or exhaustion of the aggregate limits contained therein by reason of **Loss** paid thereunder (as provided for in Clause III above).  Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the **Insurer** shall be liable only to the extent that it would have been liable had the **Insureds** complied with such condition.

This policy shall pay only in the event of reduction or exhaustion of the **Underlying Aggregate Limit** as described above and shall not drop down for any reason including, but not limited to, uncollectability (in whole or in part) of the **Underlying Aggregate Limit**, the existence of State Amendatory endorsements in any **Underlying Insurance** or the existence of a sub-limit of liability in any **Underlying Insurance**, provided however that this policy will recognize erosion of any **Underlying Insurance** due to the existence of a sub-limit. The risk of uncollectability of such underlying insurance (in whole or in part) whether because of the financial impairment or insolvency of an **Underlying Insurer,** the existence of State Amendatory endorsements in any **Underlying Insurance** or the application of any underlying sub-limit of liability is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the **Insurer.**

If during the **Policy Period** or any Discovery Period the terms, conditions, exclusions or limitations of the **Underlying Insurance** are changed in any manner, the **Insureds** shall as a condition precedent to their rights under this policy give to the **Insurer** as soon as practicable written notice of the full particulars thereof.  This policy shall become subject to any such changes upon the effective date of the changes in the **Underlying Insurance**, but only upon the condition that the **Insurer** agrees to follow such changes by written endorsement attached hereto and the **Insureds** agree to any additional premium and/or amendment of the provisions of this policy relating to such changes.  Further, any new coverage is conditioned upon the **Insureds** paying when due any additional premium.

#### V.    EXCLUSIONS

This policy shall not cover any **Loss** or **Damages** in connection with any claim:

    (i)    alleging, arising out of, based upon or attributable to:

        (a)  the facts alleged; or

        (b)  any Wrongful Act which is the same or related to any Wrongful Act

        alleged or contained

        in any claim which has been reported, or in any

        circumstances of which notice has been given, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time.

    (ii)    alleging, arising out of, based upon or attributable to any:

        (a)  litigation; or

        (b)  administrative or regulatory proceeding or investigation

        of which an **Insured** had notice as of the **Pending or Prior Date** listed in Item 8 of the Declarations, or any Wrongful Act which is the same or related to any Wrongful Act alleged or contained in any of the foregoing.

#### VI.    RELIANCE ON REPRESENTATIONS

It is agreed that the **Insurer** has issued this policy in reliance upon the accuracy of:

    (i)    any material statements made and documents or other information furnished to the **Insurer** by or on behalf of the **Insureds** in connection with the application process for this policy, including all prior policies;

    (ii)    any material statements made and information incorporated in the **Named Corporation's** Annual Report(s), 10K(s) filed with the SEC, 10Q(s) filed with the SEC, proxy statement(s) (or other notice(s) to shareholders) and registration statements filed with the SEC.

Starr.BDA.xsfl.002 (Ed. 5/05)



### VII.    NOTICE OF CLAIM

The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** in accordance with the terms and conditions of the **Primary Policy**, of any claim made or circumstances that might reasonably be expected to give rise to a claim against the **Insureds**. Such written notice shall be provided to the **Insurer** at the following address: American International Building, 29 Richmond Road, Pembroke HM 08, Bermuda, P.O. Box HM 152, Hamilton HM AX, Bermuda, Attention Claims Department.

If during the **Policy Period** or during the Discovery Period (if applicable) (i) written notice of a claim has been given to the **Insurer** as set forth in this Clause, or (ii) to the extent permitted by the terms and conditions of the **Primary Policy**, written notice of circumstances that might reasonably be expected to give rise to a claim against the **Insureds**, has been given to the **Insurer** and all **Underlying Insurers**, then any Claim which is subsequently made against the **Insureds** and reported to the **Insurer** and all **Underlying Insurers** alleging, arising out of, based upon or attributable to the facts alleged in the claim or circumstances of which such notice has been given, or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged or contained in the claim or circumstances of which such notice has been given, shall be considered made at the time notice of such claim or circumstances has been given to the **Insurer.**

### VIII.    NOTICE OF MATERIAL CHANGE

The **Insureds** shall give written notice to the **Insurer** of the following events as soon as practicable after the **Insureds** become aware of the event:

(i)     Any **Underlying Insurance** being canceled or non-renewed or otherwise ceasing to be in effect or being uncollectible (in part or in whole);

(ii)    Any **Underlying Insurer** being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority; or

(iii)   Any other changes to the **Underlying Insurance, the Underlying Insurers**, or the **Insureds** that would require notice to be given pursuant to the terms and conditions of the **Underlying Insurance**.

### IX.    CLAIM PARTICIPATION

The **Insurer** shall have the right, in its sole discretion, but not the obligation to effectively associate with the **Insureds** in the defense and settlement of any claim that appears to be reasonably likely to involve the **Insurer,** including but not limited to effectively associating in the negotiation of a settlement. The **Insureds** shall defend any such claim. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. The failure of the **Insurer** to exercise any right under this paragraph at any time shall not act as a waiver or limit the right of the **Insurer** in any manner to exercise such rights at any other time including the right to effectively associate in the negotiation of a settlement.

The **Insurer** does not under this policy assume any duty to defend. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the **Insurer** with respect to any claim that appears reasonably likely to involve the **Insurer**. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim in order to reach a decision as to reasonableness.

### X.    DISCOVERY CLAUSE

The **Insureds** shall be entitled to a Discovery Period (or Extended Reporting Period, hereinafter, "Discovery Period") pursuant to the terms and conditions of the **Underlying Insurance**. The Discovery Period is not available unless the **Insureds** have elected the Discovery Period in all **Underlying Insurance**. The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. The Discovery Period and the Discovery Period Premium for this policy is specified in Item 5 of the Declarations. In no circumstances can the Discovery Period hereunder be longer than the shortest Discovery Period provided under any **Underlying Insurance**.

Starr.BDA.xsfl.002 (Ed. 5/05)



## XI.    CANCELLATION CLAUSE

This policy may be canceled by the **Named Corporation** only by mailing written notice to the **Insurer** or by surrender of this policy to the **Insurer** and within the time period and in the manner set forth in the **Underlying Insurance**. This policy may also be canceled by or on behalf of the **Insurer** by delivering written notice to the **Named Corporation** or by mailing to the **Named Corporation**, by registered, certified, or other first class mail, at the **Named Corporation's** address set forth in the Declarations. Except for non-payment of the premium, such written notice shall state when, not less than the period set forth in Item 6 of the Declarations thereafter the cancellation shall be effective. In the event the **Insurer** cancels this policy for non-payment of the premium, this policy shall be void effective as of the inception of the **Policy Period**. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the **Named Corporation**, the **Insurer** shall retain the customary short rate proportion of the premium hereon.

If this policy shall be canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

## XII.    ARBITRATION

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the **Insurer** and the **Insureds** or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:

Either party to the dispute, once a claim or demand on its part has been denied or remains unsatisfied for a period of twenty (20) calendar days by the other party, may notify the other party of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify the other party of the name of the arbitrator selected by it. The other party who has been so notified shall within ten (10) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within ten (10) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of ten (10) calendar days, apply to the Supreme Court of Bermuda for the appointment of the second arbitrator and in such a case the arbitrator appointed by the Supreme Court of Bermuda shall be deemed to have been nominated by the party who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within ten (10) calendar days after the appointment of the second arbitrator choose a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Arbitration Board for the controversy in question shall be deemed fixed.

The Arbitration Board shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing, at the option of said Arbitration Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

The Board, shall, within ninety (90) calendar days following the conclusion of the hearing, render decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board.

Each party shall bear the expense of its own arbitrator. The remaining cost of the arbitration shall be borne equally by the parties to such-arbitration.

All awards made by the Arbitration Board shall be final and no right of appeal shall lie from any award rendered by the Arbitration Board. The parties agree that the Supreme Court of Bermuda: (i) shall not grant leave to appeal any award based upon a question of law arising out of the award; (ii) shall not grant leave to make an application with respect to an award; and (iii) shall not assume jurisdiction upon any application by a party to determine any issue of law arising in the course of the arbitration proceeding, including but not limited to whether a party has been guilty of fraud.

All awards made by the Arbitration Board may be enforced in the same manner as a judgment or order from the Supreme Court of Bermuda and judgment may be entered pursuant to the terms of the award by leave from the Supreme Court of Bermuda.

Starr.BDA.xsfl.002 (Ed. 5/05)



No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives. The **Insurer** and the **Insureds** agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the **Insurer** by any of the **Insureds'** other **Insurer**s in a jurisdiction or forum other than that set forth in this clause, the **Insureds** will in good faith take all reasonable steps requested by the **Insurer** to assist the **Insurer** in obtaining a dismissal of these claims (other than on the merits.) The **Insureds** will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the **Insurer** would have been liable to such insurers for indemnity or contribution pursuant to this policy. The **Insureds** shall be entitled to assert claims against the **Insurer** for coverage under this policy including, without limitation, for amounts by which the **Insureds** reduced judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the **Insurer** and the **Insureds** pursuant to this clause; provided, however, that the **Insurer** in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers.

XIII.    **CHOICE OF LAW**

This policy shall be construed in accordance with the internal laws of the State of New York (with the exception of the procedural law required by Clause XII, which shall be construed and enforced in accordance with the laws of Bermuda); provided, however, that, notwithstanding any legal principles to the contrary, the warranties, terms, conditions, exclusions and limitations of this policy are to be construed in an evenhanded fashion between the **Insureds** and the **Insurer**. Without limitation, where the language of this policy is deemed to be ambiguous or otherwise unclear, the issues shall be resolved in the manner most consistent with the warranties, terms, conditions, exclusions and limitations viewed as a whole (without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer**).

XIV.    **CHANGES TO POLICY**

No change, modification or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

XV.    **HEADINGS**

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed by its President.

GEOFFREY J. SMITH, President
Starr Excess International

Starr.BDA.xsfl.002 (Ed. 5/05)

| | |
|---|---|
| **Endorsement No:** | 1 |
| This endorsement, effective: | May 16, 2007 |
| forms a part of Policy No: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

### SIDE A DROP DOWN FOR FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that **Section III, Limit of Liability**, and **Section IV, Underlying Limits** are amended by the addition of the following provisions:

**Section III., LIMIT OF LIABILITY**, is amended by adding the following:

Notwithstanding any other provision in this policy to the contrary and solely with respect to a **Loss** covered under **Section I., Insuring Agreements (A)** of the **Followed Policy**, this policy shall "drop down" below its stated attachment point only in the event any portion of the **Underlying Aggregate Limit** is uncollectible due to the financial impairment or insolvency of any **Underlying Insurer**. In the event one or more **Underlying Insurers** also drop down, this policy shall remain excess to the aggregate Limit of Liability of such **Underlying Insurer(s)** after such drop down. Nothing contained herein shall be construed to increase the Limit of Liability in Item 3 of the Declarations. In all events, the **Insurer** shall not be liable for any **Loss** the Company pays to or pays on behalf of the **Insureds.**

**Section IV. UNDERLYING LIMITS**, is amended by adding the following:

Notwithstanding any other provision in this policy to the contrary, and solely with respect **to Loss** covered under **Section I., Insuring Agreements (A)** of the **Followed Policy, Section IV. UNDERLYING LIMITS,** paragraphs 1 and 2 will not apply to claims brought under Insuring Agreement (A).

All other terms and conditions of this policy remain the same.

_____
**Authorized Representative**

Date of Issuance – July 18, 2007
Lehman.DO.End1.07-08
166.01{EXT_REP}

**ENDORSEMENT NO:**  **2**
This endorsement, effective:  May 16, 2007
forms a part of policy number:  6299064
Issued to:  Lehman Brothers Holdings Inc.
by:  Starr Excess Liability Insurance International Limited

## FOLLOW FORM ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that, subject to the terms, conditions and exclusions of this Policy, this Policy shall follow the terms, conditions and exclusions of Endorsement No. 21 of the **Followed Policy** No. ELU097792-07.

All other terms and conditions remain the same.

_____
Authorized Representative

Date of Issuance:  July 18, 2007
513.01{followform std}
Lehman.DO.End2.07-08

| | |
|---|---|
| **ENDORSEMENT NO:** | **3** |
| This endorsement, effective: | May 16, 2007 |
| forms a part of policy number: | 6299064 |
| Issued to: | Lehman Brothers Holdings Inc. |
| by: | Starr Excess Liability Insurance International Limited |

## CANCELLATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Section XI. **CANCELLATION CLAUSE** is hereby deleted and replaced with the following:

### XI.    CANCELLATION CLAUSE

This policy may be canceled only in the manner set forth in the **Followed Policy** No. ELU097792-07.

Notwithstanding the above cancellation provision, written prior notice of such cancellation must be given to Starr Excess International at the address set forth within the Declarations.

All other terms and conditions remain the same.

**Authorized Representative**

**ENDORSEMENT NO:**          **4**
This endorsement, effective:          May 16, 2007
forms a part of policy number:          6299064
Issued to:          Lehman Brothers Holdings Inc.
by:          Starr Excess Liability Insurance International Limited


## DISCOVERY ENDORSEMENT


In consideration of the premium charged, it is hereby understood and agreed that Section **X. DISCOVERY CLAUSE** is hereby deleted in its entirety and replaced with the wording as provided by the Followed Policy No. ELU097792-07.



All other terms and conditions remain the same.


_____
**Authorized Representative**


Date of Issuance:  July 18, 2007
532.01{discovery as followed}
Lehman.DO.End4.07-08

| | |
|---|---|
| **ENDORSEMENT NO:** | **5** |
| This endorsement, effective: | |
| forms a part of Policy number: | May 16, 2007 |
| Issued to: | 6299064 |
| by: | Lehman Brothers Holdings Inc. |
| | Starr Excess Liability Insurance International Limited |

## SHAVING OF LIMITS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause **III. LIMIT OF LIABILITY,** is hereby amended to include the following:

**Insurer** shall be liable only after the **Underlying Insurers** have paid or have been held liable to pay the full amount of the **Underlying Aggregate Limit**. Notwithstanding the foregoing, in the event that the **Insureds** and one or more of the **Underlying Insurer(s)** under any of the **Underlying Insurance** policies reach an agreement in compromise of coverage issues whereby one or more of the **Underlying Insurer(s)** agrees to pay **Loss** or **Damages** in an amount less than the applicable limit of one or more of the policies of **Underlying Insurance**, the **Insureds** shall pay the remainder of the applicable **Underlying Insurance** Limit of Liability and such payment by the **Insureds** shall be deemed to apply toward exhaustion of the **Underlying Aggregate Limit**. In such event, the **Limit of Liability** as set forth in **ITEM 3** of the DECLARATIONS of this policy shall be reduced by the highest percentage by which any **Underlying Insurance** Limit of Liability was reduced as a result of such agreement and the **Insureds** shall bear such remaining percentage amount uninsured and at their own risk. The **Insureds** agrees to provide **Insurer** with a copy of any/each such agreement upon request.

All other terms, conditions and exclusions remain unchanged.

_____
**Authorized Representative**

**ENDORSEMENT NO:**  **6**

This endorsement, effective:  May 16, 2007
(at 12:01 A.M. prevailing time at the address shown in Item 1 of the Declarations)
forms a part of Policy number:  6299064
Issued to:  Lehman Brothers Holdings, Inc.
by:  **AIG Excess Liability Insurance International Limited**

## OUTSIDE DIRECTOR LIABILITY – RECOGNITION OF INSURER PARTICIPATION ENDORSEMENT
### *(EROSION OF LIMITS DUE TO PAYMENT OF OTHER AIG POLICY)*

In consideration of the premium charged, it is understood and agreed that clause **III. LIMIT OF LIABLITY** is amended by the addition of the following:

Notwithstanding the above, and solely with respect to **Loss** or **Damages** arising from a claim made against any **Insured**, pursuant to the **Followed Policy** Endorsement #38, AMEND INSURED PERSON ENDORSEMENT (hereinafter "ODL Claim(s)"), including any revisions or amendments made to Endorsement #38, is covered under any other valid and collectable policy(ies) of insurance underwritten by **AIG Excess Liability Insurance Company Ltd.**® or **AIG Excess Liability Insurance International Limited**SM (hereinafter "Other AIG Cat Excess Policy(ies)"), then the total amount the ***Insurer*** shall pay under all such policies for all covered **Loss** or **Damages** on account of such claim shall not exceed the sum of the limits available under all such policies, not to exceed a combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim(s), the **Underlying Aggregate Limit** shall be deemed to be depleted or exhausted as a result of the issuers of the **Underlying Insurance** or any of the member companies of the issuers of the **Underlying Insurance**, and/or the **Insured(s)**, paying **Loss** or **Damages** covered by the **Underlying Insurance**.

Nothing set forth in this endorsement or in the Other AIG Cat Excess Policy(ies) shall be construed to increase the **Insurer's Limit of Liability** as set forth in **Item 3** of the Declarations of this policy (which shall remain the maximum liability of the **Insurer** for all claims combined under this policy) or the limit of liability of any Other AIG Cat Excess Policy(ies) or to cause this policy, or any Other AIG Cat Excess Policy(ies), to drop down.

Solely for the purpose of this endorsement ***"Insurer"*** shall mean, the issuing insurance company for any policy of insurance underwritten by **AIG Excess Liability Insurance Company Ltd.**® or **AIG Excess Liability Insurance International Limited**SM.

All other terms, conditions and exclusions remain unchanged.

_____
**Authorized Representative**



## EXCESS POLICY DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**ALL DISPUTE RESOLUTIONS BY BINDING ARBITRATION HELD IN BERMUDA PURSUANT TO THE BERMUDA ARBITRATION ACT OF 1993 AND THE UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW ("UNCITRAL") ARBITRATION RULES. BERMUDA LAW IS THE GOVERNING LAW UNDER THIS POLICY. THE INSURED WAIVES ANY REQUIREMENT THAT THE INSURER POST A BOND AS A CONDITION PRECEDENT TO THE FILING OF ANY PLEADING IN ANY DISPUTE. PLEASE REFER TO THE APPLICABLE SECTIONS OF THIS POLICY.**

| **COMPANY:** Axis Specialty Limited | **POLICY NUMBER:** 1130900107QA |
|---|---|

| Item 1. **Policyholder:** |
|---|
| Lehman Brothers Holdings Inc. |
| 1301 Avenue of the Americas |
| New York, NY  10019 |
| USA |

| Item 2.  **Policy Period:** |
|---|
|    a.  Inception Date:  May 16, 2007 |
|    b.  Expiration Date: May 16, 2008 |
|    Both dates at 12:01a.m. at the address listed in Item 1 |

| Item 3.  **Limits of Liability** (inclusive of defense costs): |
|---|
|    a.  Each Claim - $10,000,000 part of $20,000,000 excess of $ 230,000,000 |
|    b.  Maximum aggregate Limit of Liability for all Claim(s) during the Policy Period of all Insurance Products - $10,000,000 part of $20,000,000 excess of $ 230,000,000 |

| Item 4.  **Underlying Insurance** and **Insurance Products**:  See Endorsement 1 |
|---|

| Item 5.  Notices to **Insurer**: |
|---|
| Notice of **Claim(s)** to be sent to: |
| Axis Specialty Limited Claims |
| 92 Pitts Bay Road |
| Pembroke, HM 08, |
| Bermuda |
| All other notices to be sent to: |
| Axis Specialty Limited |
| 92 Pitts Bay Road |
| Pembroke, HM 08 |
| Bermuda |

| Item 6.  Pending and Prior Claim Date: May 16, 2006 |
|---|

Authorization

**IN WITNESS WHEREOF, this policy has been made, entered into, executed, issued and delivered by the undersigned in Pembroke, Bermuda on this** _____ **day of** _____ **, 200___ .**

By: _____

Title: _____

## EXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows.

### I.   INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**.   In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

### II.   DEFINITIONS

**A.   Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

**B.   Insurance Product** means each separate type of insurance identified as an **"Insurance Product"** in Endorsement No. 1 to this Policy.

**C.   Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

**D.   Insurer** means the company identified as **"Insurer"** in the Declarations.

**E.   Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

**F.   Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

**G.   Primary Policy** means the specific policy identified as the **"Primary Policy"** under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

**H.   Sublimit** means any **Underlying Limits** which:

1.       applies only to a particular grant of coverage under such **Underlying Insurance**; and
2.       reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4. of the Declarations.

**I.   Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

**J.   Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

**K.   Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the

uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

## III.  CONDITIONS OF COVERAGE

A.  For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

1.  All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

2.  All **Insureds** shall comply fully with all of the provisions of this Policy.

B.  As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

C.  If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change.  No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the Insurer so agrees in writing.  The Insurer may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

## IV.  REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

A.  If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

B.  If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

C   If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

## V.  LIMITS OF LIABILITY

A.  The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

B.  The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all **Insurance Products**.

C.  This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

D.  Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

## VI. SETTLEMENTS AND DEFENSE

A.  No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

B.  The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

C.  The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

## VII. SUBROGATION

A.  In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

B.  Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the Insurer and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

## VIII. AUTHORIZATION

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

## IX. NOTICE

A.  With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy**.

B.  All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 5. in the Declarations.

## X. MODIFICATION, CANCELLATION AND NONRENEWAL

**A.** No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

**B.** The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

**C.** The **Insurer** may cancel this Policy by delivering or mailing to the **Policyholder** written notice stating when, not less than thirty (30) days thereafter or ten (10) in the event of nonpayment of premium, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

**D.** The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

**E.** The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

**F.** Notwithstanding anything to the contrary set forth elsewhere in the Policy, in the event that any **Underlying Insurance** is rescinded by agreement or legal process for fraud or other material misrepresentation by the **Policyholder** or any of the **Insureds**, then this Policy shall be deemed to be automatically and immediately rescinded, but only with respect to any **Insurance Product** containing such rescinded **Underlying Insurance**.

## XI. EXCLUSIONS

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

**A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 6 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

**B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

## XII. GOVERNING LAW, ARBITRATION, JURISDICTION AND WAIVER OF PRE-ANSWER BOND

This Policy shall be governed and construed in accordance with the laws of Bermuda. However, the provisions, stipulations, exclusions and conditions of this Policy shall be construed in an evenhanded fashion as between the **Insured** and the **Insurer**. Without limitation, if the language of the Policy is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant provisions, stipulations exclusions and conditions without regard to authorship of such language, without any presumption or arbitrary interpretation or construction in favor of either the **Insured** or the **Insurer**, and without reference to parol evidence.

Any and all disputes or differences between the parties which arise from or relate to this Policy, including but not limited to the express or implied rights or obligations of one party to the other, or the alleged breach, termination or validity thereof, shall be resolved and settled by final and binding arbitration held in Bermuda in accordance with the provisions of the Bermuda International Conciliation and Arbitration Act 1993 (exclusive of the Conciliation Part of such Act), of any statutory modification or reenactment thereof, and the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules in effect as of the date of this Policy.

Unless the parties agree upon the selection of a sole arbitrator within forty-five (45) days after receipt of notice of intent to arbitrate, the sole arbitrator shall be appointed in accordance with such UNCITRAL Arbitration Rules. The arbitrator shall be a present or former officer of a property or casualty insurance or reinsurance company. The appointing authority shall be the Appointments Committee of the Chartered Institute of Arbitrators Bermuda Branch and the case shall be administered by the Bermuda International Commercial Arbitration Center in accordance with its "Services for Arbitrations under the UNCITRAL Arbitration Rules." Any award for damages by the arbitrator shall be compensatory only. Such decision by the arbitrator shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion.

This Policy is an honorable engagement and the arbitrator shall be absolved from all judicial formalities with respect to the admissibility of evidence and contractual interpretation and shall interpret this Policy with a view to effecting its general purpose in a commercially reasonable manner.

Each party shall extend to the arbitrator full cooperation and assistance in the obtaining of information relevant to determination of the dispute. The absence or default of a party shall not prevent or hinder the award unless the arbitrator shall otherwise determine.

Fees for the arbitrator shall be reasonable and shall be established by the arbitrator in consultation with the parties.

The costs of arbitration, including attorney's fees, shall be borne by the unsuccessful party. The arbitrator shall apportion each of such costs between the parties in those situations where the arbitrator cannot determine, taking into account the circumstances of the case, which party is the successful party.

If a party hereunder seeks judicial intervention, the parties agree to irrevocably submit to the jurisdiction of any Court of competent jurisdiction within Bermuda and will comply with all requirements necessary to give such Court jurisdiction and all matters arising thereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit or proceeding may be made upon any legal representative or officer of the **Insured**, wherever located, and upon an officer of the Insurer who is a resident of Bermuda. The parties will abide by the final decision of such Court or of any Appellate Court in Bermuda or the United Kingdom in the event of an appeal.

The **Insured** represents itself to be a sophisticated purchaser of insurance and to have independently reviewed the **Insurer's** financial strength and found it to be adequate. In consideration for the Insurer issuing this Policy, **Insured** hereby agrees not to request, seek or demand a bond as a condition precedent to the **Insurer's** filing of any pleading in any action, suit or proceeding relating to this Policy. Without limitation on the foregoing, **Insured** irrevocably waives any obligation imposed upon the **Insurer** under applicable statutes and regulations to take any action(s) set forth therein, in connection with the **Insurer's** participation, as a party or otherwise, in any action, suit or proceeding. **Insured** hereby acknowledges that the applicable statutes and regulations are intended solely for its benefit, and not for a public reason, as may be contemplated by applicable statutes and regulations.

Endorsement No 1.

Effective date of this endorsement: 12:01 a.m. on: May 16, 2007
To be attached to and form part of Policy Number: 1130900107QA
Issued to: Lehman Brothers Holdings Inc.
By: Axis Specialty Limited

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

**Insurance Products**: Directors and Officers Liability Insurance

**Schedule of Underlying Insurance**:

(A)     **Primary Policy**
Insurer: XL Specialty Insurance
Policy No: ELU 097792-07
Limit of Liability: $20,000,000
Policy Period: May 16, 2007 to May 16, 2008

**Other Underlying Policies:**
Insurer: Federal Insurance Company
Policy No: 7043-0876
Limit of Liability: $15,000,000 excess of $20,000,000

Insurer: Continental Casualty Company
Policy No: 267996454
Limit of Liability: $10,000,000 excess of $35,000,000

Insurer: Lloyds
Policy No: B0509QA016907
Limit of Liability: $10,000,000 excess of $45,000,000

Insurer: US Specialty Insurance Company
Policy No: 24-MGU-07-A14479
Limit of Liability: $15,000,000 excess of $55,000,000

Insurer: Zurich American Insurance
Policy No: DOC 7995104-09
Limit of Liability: $15,000,000 excess of $70,000,000

Insurer: ACE Bermuda Insurance Ltd.
Policy No: LEHM-11742D
Limit of Liability: $25,000,000 excess of $85,000,000

Insurer: St. Paul Mercury Insurance Company
Policy No: 590CM2698
Limit of Liability: $15,000,000 excess of $110,000,000

Insurer:  Axis Reinsurance Company
Policy No:  RNN 713535/01/2007
Limit of Liability: $15,000,000 excess of $125,000,000

Insurer:  Liberty Mutual Insurance Company
Policy No:  078365-017
Limit of Liability: $10,000,000 excess of $140,000,000

Insurer:  Arch Insurance Group
Policy No:  DOX 0006634-02
Limit of Liability: $15,000,000 excess of $150,000,000

Insurer:  Allied World Assurance Company
Policy No:  C002007/005
Limit of Liability: $15,000,000 excess of $165,000,000

Insurer:  Endurance Specialty Insurance Ltd.
Policy No:  P005332003
Limit of Liability: $20,000,000 excess of $180,000,000

Insurer:  Lloyds
Policy No:  B0509QA017007
Limit of Liability: $10,000,000 excess of $200,000,000

Insurer:  Illinois National Insurance Company
Policy No:  742-14-36
Limit of Liability: $20,000,000 excess of $210,000,000

All other provisions remain unchanged.

_____
Authorized Representative

_____9/13/07_____
Date

Endorsement No 2.

Effective date of this endorsement:  12:01 a.m. on:  May 16, 2007
To be attached to and form part of Policy Number:  1130900107QA
Issued to: Lehman Brothers Holdings Inc.
By: Axis Specialty Limited

## PRIOR NOTICE EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that the **Insurer** shall not be liable for any amount from any **Claim** which is based upon, arising from, or attributable to or in consequence of any fact, circumstance or situation which before the inception date of this Policy has been the subject of any written notice given under any policy of directors, officers and/or corporate liability insurance

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date

Endorsement No 3.

Effective date of this endorsement:  12:01 a.m. on:  May 16, 2007
To be attached to and form part of Policy Number:  1130900107QA
Issued to: Lehman Brothers Holdings Inc.
By: Axis Specialty Limited

## NOT FOLLOW ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In consideration of the premium charged, it is agreed that notwithstanding anything contained in this Policy to the contrary, this Policy shall not follow any state amendatory or state specific endorsement to the **Primary Policy** or any **Underlying Insurance**.

All other provisions remain unchanged.

_____
Authorized Representative

_____ 8/22/07 _____
Date

**Page 1 of 1**

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on May 16, 2007
To be attached to and form part of Policy Number: 1130900107QA
Issued to: Lehman Brothers Holdings Inc.
By: Axis Specialty Limited

## FOLLOWED FORM ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that

1.  Section I. Insuring Agreement is deleted and amended to read in its entirety as follows:

    **I.      INSURING AGREEMENT**

    With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Followed Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance.**  In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

    The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Followed Policy** and other exhausted **Underlying Insurance**.

2.  Section III C. of the Policy is deleted and amended to read in its entirety as follows:

    **C.**  If during the **Policy Period** the provisions of the **Followed Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change.  No amendment to any **Followed Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the Insurer so agrees in writing.  The Insurer may, in its sole discretion, condition its agreement to follow any changes to the **Followed Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

    As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

3.  Section IV. B. of the Policy is deleted and amended to read in its entirety as follows:

    **B.**  If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Followed Policy(ies)** shall apply under this Policy.

4.      Section V. A. of the Policy is deleted and amended to read in its entirety as follows:

   A.      The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Followed Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

5.      Section IX.A of the Policy is deleted and amended to read in its entirety as follows:

   A.      With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Followed Policy**.

6.      For the purposes of this policy the term **Followed Policy** means: *DFI Excess Professional Liability Policy, Federal Insurance Company, 7043-0876.*

_____
Authorized Representative

_____
Date          8/22/07