Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                          :      Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :      08-13555 (JMP)
                                               :
                         Debtors.              :      (Jointly Administered)
-------------------------------------------------------------------x
```

## NOTICE OF MOTION PURSUANT TO SECTIONS
## 105 AND 363 OF THE BANKRUPTCY CODE FOR APPROVAL
## OF THE TERMINATION OF THE SPRUCE CCS, LTD. SECURITIZATION

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and

their affiliated debtors in the above-referenced chapter 11 cases as debtors and debtors in

possession (together, the "Debtors"), pursuant to sections 105 and 363 of the Bankruptcy Code,

for approval of the termination of the Spruce CCS, Ltd. securitization, as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **October 19,**

**2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Jacqueline Marcus, Esq. and Mark Bernstein, Esq., attorneys for the Debtors; (iii)

Chapman and Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603, Attn: James E.

Spiotto, Esq. and Franklin H. Top, III, Esq., attorneys for U.S. Bank National Association; (iv)

Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York, 10020, Attn: Lawton

Camp, Esq. and Jonathan Lee, Esq., attorneys for Spruce CCS, Ltd. (v) SNR Denton, 1221

Avenue of the Americas, New York, New York 10020, Attn: D. Farrington Yates, Esq. and

Patrick C. Maxcy, Esq., attorneys for the Insolvency Administrator of Lehman Brothers

Bankhaus Aktiengesellschaft (in Insolvenz); (vi) the Office of the United States Trustee for

Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004

Attn: Elisabetta G. Gasparini, Esq., Andrea B. Schwartz, Esq., and Tracy Hope Davis, Esq.; and

(vii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys

for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed

and received by no later than **October 12, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 28, 2011
       New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (JMP)
                                              :
                    Debtors.                  :    (Jointly Administered)
-------------------------------------------------------------------x
```

MOTION PURSUANT TO SECTIONS
105 AND 363 OF THE BANKRUPTCY CODE FOR APPROVAL
OF THE TERMINATION OF THE SPRUCE CCS, LTD. SECURITIZATION

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

   Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc.

("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together, the "Debtors"), submit this motion (the "Motion") and respectfully

represent:

### Preliminary Statement

   1.  LBHI and LCPI collectively own all of the remaining notes issued by

Spruce CCS, Ltd. ("Spruce"), a special purpose entity formed to hold interests in commercial

loans and other assets and to issue securities supported by the cash-flows from such interests.

The Debtors have determined that the value of the underlying real estate assets held by Spruce

(the "Underlying Assets") can be maximized through active management, which is impeded by the current structure of the Spruce securitization.

2.    This Motion seeks approval of the termination of the Spruce securitization pursuant to a Termination Agreement, a copy of which is attached hereto as Exhibit A (the "Termination Agreement"), among LCPI, LBHI, Spruce, Spruce CCS, Corp. (the "Co-Issuer," and together with Spruce, the "Co-Issuers") and U.S. Bank National Association, as trustee and collateral administrator ("U.S. Bank"). The mezzanine notes held by LBHI are expected to be repaid in full prior to the consummation of the transactions set forth in the Termination Agreement. The repayment of such notes will result in LCPI owning all of the remaining economic interests in Spruce. In order to facilitate administration and maximize the value of the Underlying Assets, the Termination Agreement provides for the termination of the Spruce securitization.

3.    As more fully set forth below and in the declaration of David Walsh filed in support hereof (the "Walsh Declaration"), LCPI's decision to enter into the Termination Agreement and to terminate and unwind the Spruce securitization represents a reasonable exercise of LCPI's business judgment, and is in the best interests of its estate and creditors. Accordingly, the relief requested in this Motion should be granted.

**Background**

4.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The

Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009, ECF No. 2583, the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court, ECF No. 7531.

8.      On September 1, 2011, the Debtors filed their third amended joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, ECF No. 19267, and disclosure statement for their third amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code, ECF No. 19629 (the "Disclosure Statement").  The Court approved the Disclosure Statement later that day, ECF No. 19631.  On September 15, 2011, the Court entered an order approving a modification to the Disclosure Statement, ECF No. 20016.

## Jurisdiction

9.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).

## Lehman's Business

10.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

11.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008, ECF No. 2.

### Relief Requested

12.     It is not clear that LCPI is required to obtain the authorization of the Court in order to terminate the Spruce Indenture and the other Transaction Documents (as both terms are defined or used herein).  Out of an abundance of caution, however, pursuant to sections 105 and 363 of the Bankruptcy Code this Motion seeks approval of the termination of the Spruce securitization in the manner set forth in the Termination Agreement.

### The Spruce Securitization

13.     Prior to the Commencement Date, in order to increase liquidity, LCPI sold participations (the "Participations") in the Underlying Assets to Spruce.  LCPI remains the lender of record for most of the Underlying Assets and may own other loans or interests related to the participated assets.  Spruce, in turn, together with the Co-Issuer, issued notes in various classes and priorities secured by the Participations and the cash flow therefrom (the "Spruce Notes").

14.     The most senior Spruce Notes are the floating rate notes in the original principal amount of $1,462,050,000, due October 15, 2017 (the "Senior Notes").  As of the filing of this Motion, the Senior Notes have been repaid in full.

15.    The Spruce Notes that are next in priority are the floating rate notes in the original principal amount of $243,670,000, due October 15, 2017 (the "Mezzanine Notes").  As of the date of this Motion, LBHI owns 100% of the Mezzanine Notes.  LBHI purchased the Mezzanine Notes from Lehman Brothers Bankhaus AG ("Bankhaus") in April 2011 pursuant to an order entered by this Court on March 23, 2011, ECF No. 15278 (the "Bankhaus Order").  Based on anticipated repayment of certain of the Underlying Assets, the Mezzanine Notes are expected to be repaid within several months and, in any event, before termination of the Spruce securitization is effected.[1]

16.    The most junior Spruce Notes are the notes in the principal amount of $168,700,000, due October 15, 2017 (the "Subordinated Notes").   LCPI owns 100% of the Subordinated Notes.

17.    Upon repayment of the Mezzanine Notes, LCPI will own the only remaining notes issued by Spruce and the Co-Issuer, resulting in LCPI having complete control over Spruce as the sole economic stakeholder.  Nevertheless, the structure of the Spruce securitization, in which Spruce holds Participations[2] in the Underlying Assets, will prevent LCPI from efficiently and economically managing the Underlying Assets.  Specifically, the Master Participation Agreement and the Indenture, dated as of April 28, 2008 (as amended,

---

[1] The Note Sale Agreement, dated as of March 1, 2011 by and between LBHI and Dr. Michael C. Frege, in his capacity as insolvency administrator over the assets of Bankhaus (the "Note Sale Agreement"), provides that following the occurrence of certain events, LBHI may require Bankhaus to repurchase the Mezzanine Notes from LBHI.  The Note Sale Agreement further provides that to the extent the Spruce securitization has been terminated, instead of transferring the Mezzanine Notes back to Bankhaus, LBHI will have the right to transfer to Bankhaus the proceeds from the Underlying Assets that would have been paid to the holder of the Mezzanine Notes had they remained outstanding.  The Debtors' right to require Bankhaus to repurchase the Mezzanine Notes expires on October 19, 2011, before the Termination Agreement will be effective.  At this time, the Debtors have no intention of seeking to have Bankhaus repurchase the notes or proceeds thereof.  The relief requested herein does not prejudice Bankhaus's rights under the Note Sale Agreement in any respect.

[2] Spruce acquired the participations in the Underlying Assets pursuant to the Master Participation Agreement, dated as of April 28, 2008, among Bankhaus and LCPI, as sellers, and Spruce, as purchaser (the "Master Participation Agreement").

supplemented or otherwise modified from time to time, the "Indenture"), impose various restrictions and/or require consents in order for LCPI to take actions with respect to the Underlying Assets, including the sale of such assets.  The Underlying Assets require active management if such assets are in default or if there is an opportunity for a sale of such assets on short notice.

18.    Furthermore, certain Debtors, including LCPI, have entered into an asset management agreement with WCAS│Fraser Sullivan Investment Management, LLC ("Fraser Sullivan"), pursuant to which Fraser Sullivan has been hired to manage the Debtors' commercial loan portfolio and to explore issuances of collateralized loan obligations ("CLOs").  The Debtors may wish to include certain of the Underlying Assets in one or more CLOs.  Termination of the Spruce securitization is necessary to be able to include such loans in a CLO.

19.    Inasmuch as upon the full repayment of the Mezzanine Notes LCPI will be the sole economic stakeholder in Spruce, the termination of the Spruce securitization in the manner set forth in the Termination Agreement is in the best interest of the Debtors' estates and their creditors because it will enable LCPI to maximize the value of the Underlying Assets.

**The Termination Agreement**

20.    The salient terms of the Termination Agreement are set forth below.[3]

| *Termination of the Spruce Securitization* | On the Effective Date:<br><br>(i) LCPI shall deliver all of the outstanding Subordinated Notes to U.S. Bank for cancellation;<br><br>(ii) Each of the Transaction Documents shall be terminated; and<br><br>(iii) The Issuer shall release its interests in the Participations, and the |

---

[3] This summary, as well as the other descriptions of the Termination Agreement contained in the Motion (the "Summary") are qualified in their entirety by the provisions of the Termination Agreement.  This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Termination Agreement.  Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to such terms in the Termination Agreement.

Underlying Assets shall revert to LCPI.

| | |
|---|---|
| ***Indemnification of U.S. Bank*** | LCPI will indemnify U.S. Bank, as trustee and collateral administrator, and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses arising out of, or resulting from entering into the Termination Agreement and consummating the transactions contemplated thereby, other than those resulting from gross negligence or willful misconduct. |
| ***Releases*** | LCPI and LBHI each agree to release U.S. Bank and the Co-Issuers from all claims, damages, costs and other liabilities arising out of or relating to the Indenture and the other Transaction Documents, and all obligations thereunder (including payment on the Spruce Notes), and the negotiation, execution and performance of the termination of any of the Indenture, the Transaction Documents and the Spruce Notes, other than those resulting from gross negligence or willful misconduct. |
| ***Conditions to Closing*** | The consummation of the transactions set forth in the Termination Agreement is subject to the approval of the Court. |

## The Termination of the Spruce Securitization
## <u>Represents An Appropriate Exercise of The Debtors' Business Judgment</u>

21.    Ample authority exists for approval of the proposed termination of the

Spruce securitization as set forth in the Termination Agreement.  Section 363 of the Bankruptcy

Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease,

other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

22.    While section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the sale, disposition or other use of

a debtor's assets, courts in the Second Circuit and others, in applying this section, have required

that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*,

973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must

find from the evidence presented a good business reason to grant such application); *Comm. of*

*Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

23.    In the motion filed with this Court seeking approval of the Note Sale Agreement, ECF No. 14743, the Debtors explained that part of the justification for the purchase of the Mezzanine Notes was the benefit that LBHI and LCPI would receive from the termination of the Spruce securitization.  The termination of the Spruce securitization is the next step in effectuating the Bankhaus Order; it will permit LCPI to eliminate the approval procedures and other provisions currently in place that restrict the modification, restructuring or sale of the Underlying Assets.  *See* Walsh Declaration ¶ 9.  The Underlying Assets and related interests require active management, which may include modification of terms, restructurings, sales or inclusion in a future CLO transaction in order to maximize their value.  Often it is necessary to enter into such transactions on short notice.  The flexibility to manage the Underlying Assets will permit LCPI to take the necessary actions to maximize the value of such assets.  For similar reasons, this Court previously approved the termination of the Pine CCS, Ltd. securitization and the SASCO 2008-C2 LLC securitization by orders, dated April 14, 2011, ECF No. 16001 (the "Pine Termination Order"), and June 6, 2011, ECF No. 17752, respectively.

24.    In connection with the effectuation of the termination of the Spruce securitization, the Debtors seek authority to provide U.S. Bank and the Co-Issuers with an indemnification against any and all liability incurred in connection with the termination of the Spruce securitization.  Such indemnity is typically required by indenture trustees and issuers in connection with noteholder's directions and requests for specific actions.  Since LCPI will be the sole stakeholder following the repayment of the Mezzanine Notes, there will not be any other party with the right, or the interest, to pursue a claim against U.S. Bank or the Co-Issuers for

their participation in the termination of the Spruce securitization.  As a result, the risk to the Debtors in providing the indemnification to U.S. Bank and Co-Issuers is minimal.

25.    The proposed order granting the relief requested herein (the "<u>Proposed Order</u>") contains reservations of rights regarding intercompany transfers of the Spruce Notes among the Lehman entities prior to the Commencement Date that is consistent with language in the Pine Termination Order.

26.    The Debtors have kept the Creditors' Committee's professionals appraised of the Debtors' negotiations with U.S. Bank and the Co-Issuers and of the terms of the Termination Agreement.

27.    For all the foregoing reasons, approval of the Termination Agreement and the termination of the Spruce securitization represent an exercise of the Debtors' sound business judgment, are in the best interests of the Debtors' estates and creditors, and all other parties in interest, and should be approved.

<u>**Notice**</u>

28.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for U.S. Bank; (vii) the attorneys for Spruce; (viii) the Co-Issuer; (ix) the attorneys for Bankhaus; and (x) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, ECF No. 9635.  The Debtors submit that no other or further notice need be provided.

29.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court enter the Proposed

Order and grant the Debtors such other and further relief as it deems just and proper.

Dated:  September 28, 2011
        New York, New York


/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## **Exhibit A**

**Termination Agreement**

## SPRUCE TERMINATION AGREEMENT

This Termination Agreement (the "Agreement") is entered into as of September 27, 2011, among Spruce CCS, Ltd., as issuer ("Issuer"), Spruce CCS, Corp, as co-issuer (together with the Issuer, the "Co-Issuers"), U.S. Bank National Association as trustee ("Trustee") and as collateral administrator ("Collateral Administrator"), Lehman Commercial Paper Inc., as the Subordinated Noteholder (as defined herein) and administrative agent ("LCPI") and Lehman Brothers Holdings Inc., as guarantor and as Mezzanine Noteholder ("LBHI") (collectively, the "Parties" and individually a "Party").

WHEREAS, the Issuer, the Co-Issuer and the Trustee are parties to that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "Indenture") dated as of April 28, 2008;

WHEREAS, the Senior Notes (as such term is defined in the Indenture) have been paid in full on or prior to the date of this Agreement;

WHEREAS, the Mezzanine Notes (as such term is defined in the Indenture) are expected to be paid in full soon after the date of this Agreement (the date of such payment in full (or, if later, the date on which the order referred to in Section 2 becomes a Final Order (as defined herein)) the "Effective Date");

WHEREAS, LCPI is the holder of all the outstanding Subordinated Notes (as such term is defined in the Indenture); and

WHEREAS, the Parties desire to terminate the Transaction Documents (as defined herein) and the transactions contemplated by such Transaction Documents;

NOW, THEREFORE, the Parties for valuable consideration the sufficiency of which is hereby acknowledged agree as follows:

1.    Definitions.  Capitalized terms used herein and not otherwise defined shall have the meanings specified in the Indenture.

Closing Time means 2:00 pm New York time on the Effective Date.

"Final Order" means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each of the Parties or, in the event that an appeal, writ for certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or

move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Transaction Documents" means the Indenture, the Master Participation Agreement, the LBHI Guarantee, the Collateral Administration Agreement, the Administration Agreement and the Administrative Agency Agreement.

2.      Approval by Bankruptcy Court.  (a)  The Parties acknowledge that the consummation of the transaction contemplated herein is subject to the entry of an order of the Bankruptcy Court, in form and substance reasonably acceptable to the Parties, approving the terms of this Agreement, which order shall be in full force and effect as of the Closing Time.   (b)   LCPI shall diligently move for such approval and use its commercially reasonable efforts to resolve any objections thereto or appeal thereof.

3.      Cash Disposition.   Provided that the Subordinated Notes have been delivered in accordance with Section 4 prior to the Closing Time, LCPI, as the holder of all the Subordinated Notes, hereby directs the Trustee to pay the balance of all monies of the Issuer held by the Trustee on the Effective Date (after payment in full of any fees, costs and expenses of the Trustee, the Collateral Administrator, the Issuer and the Co-Issuer, and payment in full of the Mezzanine Notes) to LCPI.

4.      Cancellation of the Notes.  As of the Effective Date, LCPI, as the holder of all of the Subordinated Notes, agrees, and the Trustee, at the direction of LCPI, acknowledges that (i) all sums payable by the Co-Issuers under the Transaction Documents have been paid and (ii) all of the obligations of the Issuer and Co-Issuer in respect of the Subordinated Notes have been fully extinguished, and LCPI further agrees that it shall surrender all of the Subordinated Notes to the Trustee for cancellation in accordance with the terms of the Indenture prior to the Closing Time.

5.      Termination of the Transaction Documents.  Subject to the satisfaction of the agreements contained in each of the preceding Sections, each of the Parties agrees to the termination and discharge of the Indenture and other Transaction Documents and any and all duties and obligations thereunder.  Each Party herby confirms for the benefit of the Co-Issuers that no fees, costs or expenses will become payable by the Co-Issuers to it by reason of the discharge of the Indenture or any other Transaction Document.

6.      Release of Assets.  In furtherance of the transactions contemplated by this Agreement and conditioned upon the payment of the fees, costs and expenses of the Issuer, Co-Issuer, Collateral Administrator and Trustee, the Trustee and the Co-Issuers hereby release their respective liens on and interests in the Collateral and the rights and claims of the Issuer under the Master Participation Agreement at the Closing Time.  In connection with such release, the Trustee and the Co-Issuers hereby authorize the filing of one or more UCC-3 financing statements with (a) The District of Columbia Recorder of

Deeds, (b) the Secretary of State of New York and (c) any other applicable authority in any other applicable jurisdiction to evidence the release of the lien on such Collateral.

7.       <u>Release of Trustee, Collateral Administrator and Co-Issuers.</u>       In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, LCPI, LBHI and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits U.S. Bank National Association and the Co-Issuers, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that LBHI and LCPI ever had or claimed to have, or now has or claims to have currently or at any future date, against any Released Party arising under or related to the Indenture, the obligations thereunder including but not limited to payments on the Notes issued thereunder, or the Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination (each a "<u>Claim</u>"), other than Claims resulting from a Released Party's own gross negligence or willful misconduct.

8.       <u>Waiver of Notices and Conditions</u>. Each Party hereby agrees that (i) any and all conditions precedent (including, without limitation, any notices required to be delivered) contained in any of the Transaction Documents or other agreements referred to herein or contemplated hereby relating to the subject matter of this Agreement are hereby waived with respect to each Party, (ii) the terms of the Indenture and the other Transaction documents shall be deemed amended or otherwise waived in any manner necessary and appropriate to satisfy all of the respective conditions precedent relating to the discharge of the Indenture and the termination of the Transaction Documents and to accommodate the transactions contemplated herein, and (iii) each termination described herein shall be effective without any further action by any Party and notwithstanding any event, notice, waiting period or other condition provided for in any such Transaction Document or such other agreements referred to herein or contemplated hereby.

9.       <u>Further Assurances</u>. Each Party hereby agrees to duly execute and deliver to LCPI or LBHI all such other and further instruments of conveyance, transfer and assignment and to take such other action as LCPI or LBHI may reasonably deem necessary to effectuate the release of the Collateral and to take such further actions as may be reasonably requested by LCPI or LBHI to obtain the full and complete benefit of such release of the rights and property intended to be released hereunder subject, in each case to the payment by LCPI or LBHI of such other Party's costs and expenses (including reasonable counsel fees and disbursements) in connection therewith; <u>provided</u>, <u>however</u>,

that a Party shall not be required to take any action which it reasonably believes is contrary to any applicable law.

10.    <u>Indemnification.</u>  LCPI shall indemnify U.S. Bank National Association, individually and as Trustee and Collateral Administrator, and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses ("<u>Losses</u>") arising out of, or resulting from entering into this Agreement and consummating the transactions contemplated hereby other than Losses resulting from their gross negligence or willful misconduct.

11.    <u>Execution in Counterparts</u>.  This Agreement may be executed by the Parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

12.    <u>Direction to Co-Issuers and Trustee</u>.  LBHI and LCPI, as holders as of the date of this Agreement of all outstanding Notes and Subordinated Notes, by their respective signatures hereto direct the Co-Issuers, the Collateral Administrator and the Trustee to enter into this Agreement and to consummate the transactions contemplated hereby.

13.    <u>Governing Law</u>.  THIS AGREEMENT AND ANY CLAIMS ARISING HEREFROM SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO OTHERWISE APPLICABLE PRINCIPLES OF CONFLICT OF LAWS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

14.    <u>Waiver of Trial by Jury</u>.  EACH PARTY HERETO HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY RELATED TRANSACTION, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

15.    <u>Headings</u>.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof or thereof.

16.    <u>Execution by the Trustee and Collateral Administrator</u>.  U.S. Bank National Association is executing this Agreement solely in its capacity as Trustee and Collateral Administrator.  None of U.S. Bank National Association, in its individual capacity, or its respective officers, directors, shareholders or agents shall be liable for any claim, liability or obligation arising out of this Agreement.

17.    <u>Successors and Assigns</u>.  (a)  All terms and provisions of this Agreement shall be binding only upon and inure to the benefit of and be enforceable by the respective heirs, representatives, successors and assigns of the Parties hereto.  No other person is intended to, or shall, be a third party beneficiary of the promises of any Party made herein.

(b)  No Party may assign its rights or obligations under this Agreement without the prior written consent of the other Parties, and any purported assignment without such consent shall be void.

18.    <u>Entire Agreement</u>.    This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all previous agreements, promises or representations, whether written or oral, among the Parties.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of day and year first above written.

LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900

By: _____
Name: DAVID WALSH
Title: VP

LEHMAN BROTHERS HOLDINGS INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555

By: _____
Name: DAVID WALSH
Title: VP

[SPRUCE –TERMINATION AGREEMENT]

U.S. BANK NATIONAL
ASSOCIATION not individually but
as trustee and collateral administrator

By: _____

Name:  Brand Hosford
Title:    Vice President

SPRUCE CCS, LTD.

By: _____

Name:      **Martin Couch**
Title:      Director

SPRUCE CCS, CORP.

By: _____
     Name:  Donald J. Puglisi
     Title:   President

## Exhibit B

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,             :    08-13555 (JMP)
                                                    :
                              Debtors.              :    (Jointly Administered)
                                                    :
                                                    :
--------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING THE TERMINATION OF THE SPRUCE CCS, LTD. SECURITIZATION

Upon the motion, dated September 28, 2011 (the "Motion"), of Lehman

Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession

pursuant to sections 105 and 363 of the Bankruptcy Code, for approval of the termination of the

Spruce CCS, Ltd. securitization, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York; (vi) the attorneys for U.S. Bank; (vii) the attorneys for Spruce;

(viii) the Co-Issuer; (ix) the attorneys for Bankhaus; and (x) all other parties entitled to notice in

accordance with the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases, ECF No. 9635; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and their creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that objections, if any, to the Motion, that have not been resolved or

withdrawn, are overruled; and it is further

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105 and 363(b) of the Bankruptcy Code, the

Termination Agreement is approved, and LCPI and LBHI are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Termination

Agreement and all obligations contemplated therein; and it is further

ORDERED that LCPI and LBHI are authorized to amend, modify, or supplement

any of the terms of the Termination Agreement, without the necessity of further Court

proceedings or approval and without the consent of any other party, except to the extent that such

changes have a material adverse effect on LCPI's or LBHI's estate; and it is further

ORDERED that, notwithstanding the entry of this Order, all rights, claims and

defenses of LBHI and LCPI with respect to (i) the ownership of the Spruce Notes and (ii) any

transfer by LBHI and LCPI of the Spruce Notes prior to the Commencement Date shall be

reserved and not affected by the transactions contemplated by the Termination Agreement and

the Motion; and it is further

ORDERED that nothing in the Motion, this Order, or the Termination Agreement

shall bind, be collateral estoppel or res judicata, constitute an admission of the parties in, or

otherwise prejudice, any other matter (other than approval of the matters and the Termination

Agreement herein, and the performance thereof) in this case or in the Chapter 11 Cases with

respect to the legal or factual assertions set forth in the Termination Agreement and the Motion;

and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order and the Agreement.

Dated: October __, 2011
    New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE