**Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x

# NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO GRANT LIMITED RELEASES TO CERTAIN INSURERS UNDER THE DIRECTORS AND OFFICERS INSURANCE POLICIES

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code for authorization to grant limited releases to certain insurers under the Debtors' directors and officers insurance policies, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) Walker Wilcox Matousek LLP, 225 W. Washington Street, Chicago, Illinois 60606, Attn:  Paul F. Matousek, Esq. and James Huberty, Esq., Bailey Cavalieri, LLC, 10 West Broad Street, Suite 2100, Columbus, Ohio 43215, Attn:  Thomas E. Geyer, Esq. and Robert Eblin, Esq., Bates Carey Nicolaides LLP, 191 N. Wacker Drive, Suite 2400, Chicago, Illinois 60606, Attn:  Ommid C. Farashahi, Esq. and Charles Madden Esq., D'Amato & Lynch, LLP, Two World Financial Center, New York, New York 10281, Attn:  Mary Jo Barry, Esq. and Catherine Casavant, Esq.,

White & Williams LLP, One Penn Plaza, Suite 4110, New York, New York 10119, Attn: John F. McCarrick, Esq. and Maurice Pesso, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 150 East 42nd St., New York, New York 10017, Attn: Scott Schaffer, Esq. and Jonathan Meer, Esq., attorneys for the respective Excess Policy Insurers, so as to be so filed and received by no later than **October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline")

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 28, 2011
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: October 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                        :   Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :   08-13555 (JMP)
                                                             :
           Debtors.                                   :   (Jointly Administered)
                                                             :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS
105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR
AUTHORIZATION TO GRANT LIMITED RELEASES TO CERTAIN
INSURERS UNDER THE DIRECTORS AND OFFICERS INSURANCE POLICIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above

captioned chapter 11 cases, as debtors in possession (together, the "Debtors" and, collectively

with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and respectfully

represent:

**Preliminary Statement**

1. On September 15, 2011, the Court entered an order [ECF No. 20017]

granting the motion of Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin

Callan, Ian T. Lowitt, David Goldfarb, Herbert H. McDade, III, Thomas Russo, Mark Walsh,

Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson

Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber (collectively, the "NJ Insured Persons") entitled *Insured Persons Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Settlement Payment Under Directors and Officers Insurance Policy to Settle the New Jersey Action* (the "NJ Lift Stay Motion") [ECF No. 19480], seeking to modify the automatic stay set forth in section 362 of title 11 of the United States Code (the "Bankruptcy Code") to assure certain of the Debtors' insurance carriers that they may make a settlement payment from the proceeds of certain insurance policies in the amount of $8,250,000 (the "NJ Settlement Amount") in connection with the settlement of an action that is pending in the United States District Court for the Southern District of New York captioned *The State of New Jersey, Department of Treasury, Division of Investment v. Richard S. Fuld, Jr., et. al.*, 10 Civ. 05201 (LAK) (the "New Jersey Action").

2.  On August 24, 2011, Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian T. Lowitt, Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman and John D. Macomber, former and current officers and directors of the Debtors (collectively, the "Debt/Equity Insured Persons" and, together with the NJ Insured Persons, the "Insured Persons"), filed the *Insured Persons Motion, Pursuant to Section 362 of the Bankruptcy Code, for an Order Modifying the Automatic Stay to Allow Settlement Payment Under Directors and Officers Insurance Policy to Settle the Equity/Debt Securities Class Action* (the "Equity/Debt Lift Stay Motion" together with the NJ Lift Stay Motion, the "Lift Stay Motions") [ECF No. 19488] seeking authority to modify the automatic stay extant in section 362(a) of the Bankruptcy Code to assure certain of the Debtors' insurance carriers that they may

make a settlement payment in the amount of $90,000,000 (the "Equity/Debt Settlement Amount") from the proceeds of certain insurance policies in connection with the settlement of an action brought by a purported class of investors (the "Equity/Debt Class") that is pending in the United States District Court for the Southern District of New York captioned *In re Lehman Brothers Equity/Debt Securities Litigation*, 08 Civ. 5523 (LAK) (the "Equity/Debt Securities Class Action" and, together with the New Jersey Action, the "Actions"). The Equity/Debt Lift Stay Motion is currently pending before the Court.

3. Although the Debtors are not a party to either of the foregoing settlements, because the payments are to be made under certain of the Debtors' directors and officers liability insurance policies the relevant insurers have requested that the Debtors grant them a limited release of claims solely relating to their making said payments. Specifically, in connection with the settlement of the Equity/Debt Securities Class Action, the following excess insurers under the Debtors' 2007-2008 directors and officers liability insurance program have requested that the Debtors and the Equity/Debt Insured Persons provide them with a release of existing and potential claims relating to the Equity/Debt Securities Class Action pursuant to a release agreement substantially in the form of Exhibit A annexed hereto (the "Equity/Debt Release Agreement"): (i) ACE Bermuda Insurance Ltd. subscribing to policy number LEHM-11742D ("ACE Bermuda"), (ii) St. Paul Mercury Insurance Company subscribing to policy number 590CM2698 ("St. Paul Mercury"), (iii) Axis Reinsurance Company subscribing to policy number RNN713535/01/2007 ("Axis"), (iv) Liberty Mutual Insurance Company subscribing to policy number 078365-017 ("Liberty"), (v) Arch Insurance Company subscribing to policy number DOX0006634-02 ("Arch"), (vi) Allied World Assurance Company subscribing to policy number C002007/005 ("Allied World"), and (vii) Endurance Specialty Insurance Ltd.

subscribing to policy number P005332003 ("Endurance" and, together with ACE Bermuda, St. Paul, Axis, Liberty, Arch, and Allied World, the "Excess Policy Insurers"). In connection with payment of the NJ Settlement Amount and contribution to the Equity/Debt Settlement Amount, ACE Bermuda has also made a request to receive a similar release from the Debtors and the NJ Insured Persons pursuant to a release agreement substantially in the form of Exhibit B annexed hereto (the "NJ Release Agreement" and, together with the Equity/Debt Release Agreement, the "Release Agreements").

           4. As described in the Lift Stay Motions, each of the aforementioned settlements is beneficial to the Debtors' estates. The Debtors have an obligation under their by-laws to advance the settlement costs incurred by their current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations. Accordingly, at no cost to the Debtors, settlement of the Actions will reduce or eliminate any existing or potential claims against the estates that the Insured Persons may have based on the Debtors' obligation under their by-laws or based on indemnification obligations. Additionally, the Equity/Debt Class will also be withdrawing certain claims that have been filed in these chapter 11 cases against one or more of the Debtors. Thus, it is in the estates' interests to facilitate these settlements. As described more fully below, the Debtors believe that they do not have any existing or potential claims with respect to the Actions against any of the Excess Policy Insurers that may be affected by providing the limited releases requested herein. Based upon the totality of the circumstances, granting the relief requested by this Motion will not have any adverse effect on the Debtors' estates and creditors and will provide a benefit at no cost to the Debtors. Accordingly, the Debtors request authorization to grant the requested releases.

**Background**

5. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

7. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

8. On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos. 19627 and 19629]. On September 1, 2011, the Bankruptcy Court entered an amended order [ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.

**Jurisdiction**

9. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

10.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code the Debtors request authorization to release (i) ACE Bermuda, solely in connection to the New Jersey Action and pursuant to the terms and conditions set forth in the NJ Release Agreement, and (ii) the Excess Policy Insurers, solely in connection with the Equity/Debt Securities Action, pursuant to the terms and conditions set forth in the Equity/Debt Release Agreement.

## The Debtors' Directors' and Officers' Liability Insurance Policies

11.     Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary directors' and officers' liability insurance from XL Specialty Insurance Company ("XL") plus additional excess coverage from sixteen (16) other carriers of up to $250 million in the aggregate (the "2007-2008 D&O Policies"), providing coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations. The 2007-2008 D&O Policies covered Claims[1] made against the individual Insureds during the period of May 16, 2007 to May 16, 2008 (the "2007-08 Policy Period").

12.     The excess 2007-2008 D&O Policies generally "follow form" to the primary policy, subject to certain additional terms and conditions, such as limits of liabilities, and are triggered only after all "Loss" (defined as Defense Expenses, settlements and judgments, among other things) within the underlying layers of coverage has been paid. Subject to their terms, conditions, limitations and exclusions, the 2007-2008 D&O Policies cover Loss incurred as a result of Claims made during the 2007-08 Policy Period for Wrongful Acts allegedly committed by the individual Insureds in their capacity as directors, officers or employees of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the applicable Excess Insurance Policies.

LBHI and its subsidiaries. Coverage under Insuring Agreement (A) for non-indemnifiable loss ("Side A") of the 2007-2008 D&O Policies is immediately available to the Insured Persons, which includes certain of the Debtors' present and former officers, directors, and employees, for any Loss resulting from Claims made under the 2007-2008 D&O Policies that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

13.     Furthermore, the 2007-2008 D&O Policies contain "Priority of Payments" provisions, which provide that when competing claims for coverage under both Side A, as described above, and Insuring Agreement (B) ("Side B") (covering indemnifiable Claims made against present and former officers, directors and employees) are made, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)... ." *See* 2007-2008 D&O Policies, Endorsement 22. Thus, the Excess Insurance Policies, by virtue of Insuring Agreement A and the Priority of Payments provision, provides for the immediate payment of settlement costs on behalf of the Insured Persons ahead of any payment that may be made to the Debtors.

**New Jersey Action**

14.     As set forth more fully in the NJ Lift Stay Motion, plaintiff in the New Jersey Action is the State of New Jersey, Department of Treasury, Division of Investment. According to the amended complaint filed in the New Jersey Action on or about April 13, 2011, the Division of Investment is one of the largest managers of public pension funds in the United States, and manages investments for at least seven major retirement systems for New Jersey public employees.

15.     The New Jersey Action alleges, *inter alia*, misrepresentations and omissions in Lehman offering materials and/or securities filings, and asserts claims for violations

of the Securities Act of 1933 and for violations of New Jersey statutory and common law seeking approximately $192 million in damages. Neither LBHI nor any of the other Debtors have been named as a defendant in the New Jersey Action or are a party to the agreement settling the New Jersey Action. The Court has granted relief from the automatic stay for certain Excess Policy Insurers to pay the NJ Settlement Amount.

### The NJ Release Agreement

16. It is anticipated that the limits of liability of the ACE Bermuda policy will be partially exhausted by ACE Bermuda's funding of the NJ Settlement Amount, and will be fully and completely exhausted by its additional contribution to the Equity/Debt Settlement Amount. ACE Bermuda demanded that as a condition to its paying the NJ Settlement Amount it receive certain releases from LBHI and the NJ Insured Persons. After extensive arms-length negotiations, the parties have agreed to the terms of such releases as provided under the NJ Release Agreement, pursuant to which ACE Bermuda will receive a release of claims relating to the New Jersey Action in accordance with the following relevant terms, but only if it contributes to the Equity/Debt Settlement Amount: [2]

(i) on behalf of the NJ Insured Persons, ACE Bermuda shall make a payment, and such payment shall contribute towards the NJ Settlement Amount of $8,250,000, into a jointly controlled escrow account within the later of ten business days following the entry of the order granting the NJ Lift Stay Motion;

(ii) upon the Effective Date, the Debtors and the NJ Insured Persons release ACE Bermuda from any and all actual or potential actions arising out of or in anyway connected with or related to the exhausted or partially exhausted ACE Bermuda Policy or ACE Bermuda's investigation, evaluation or handling of the Claim;

---

[2] This summary is intended to be used for informational purposes only and shall not, in any way, affect the meaning or interpretation of the NJ Release Agreement. The summary is qualified in its entirety by the provisions of the NJ Release Agreement. In the event of any inconsistency between this summary and the NJ Release Agreement the NJ Release Agreement shall control. Capitalized used in this summary but not defined shall have the meanings ascribed to them in the NJ Release Agreement.

      (iii)    the release of ACE Bermuda with respect to the portion of the Policy's limit of liability to be paid toward the settlement of the Equity/Debt Litigation is conditioned on such payment by ACE Bermuda; however, in any event, the Insured Parties and ACE Bermuda recognize and agree that ACE Bermuda is released herein only to the extent of the Policy's limit of liability paid or to be paid as Loss in connection with the Settlement and defense of the Lawsuit, and not with respect to any other insurance policy issued by ACE Bermuda.

### Equity/Debt Securities Class Action

17. As set forth more fully in the Equity/Debt Lift Stay Motion, both prior to and after the Commencement Date, various securities actions were commenced against certain current and former officers and directors of Lehman in both federal and state courts. On June 18, 2008, plaintiff Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund filed a class action complaint in the U.S. District Court for the Southern District of New York, asserting claims under the Securities Exchange Act of 1934 against, *inter alia*, certain current and former Lehman officers. The complaint was subsequently amended to contend that various Lehman offering materials contained alleged misrepresentations and omissions regarding the company's financial condition prior to the bankruptcy and to assert claims for violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934.

18. The court-appointed lead plaintiffs include the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, Northern Ireland Local Governmental Officers' Superannuation Committee, City of Edinburgh Council as Administering Authority of the Lothian Pension Fund, and Operating Engineers Local 3 Trust Fund. The defendants include the Equity/Debt Insured Persons, among whom eight are current directors of LBHI, various underwriter defendants and Ernst & Young LLP.

19. None of the Debtors are named as a defendant in the Equity/Debt Securities Class Action. Although none of the Debtors are party to the agreement settling the

Equity/Debt Securities Class Action for $90,000,000, they will obtain the benefit of certain releases. *See* Equity/Debt Lift Stay Motion ¶ 22 (releasing proof of claim numbers 27762 and 27759 asserted against the Debtors).

### The Equity/Debt Release Agreement

20. The Excess Policy Insurers have demanded that, as a condition to their paying the Equity/Debt Settlement Amount, they receive certain releases from LBHI and the Equity/Debt Insured Persons. After extensive arms-length negotiations, the parties have agreed to the terms of such releases as provided in the Equity/Debt Release Agreement, pursuant to which the Excess Policy Insurers will receive a release in accordance with the following relevant terms:[3]

(i) on behalf of the Equity/Debt Insured Persons, each Excess Policy Insurer shall make a payment, and such payment shall contribute towards the Settlement Amount of $90,000,000, into a jointly controlled escrow account within the later of ten business days following the entry of an order granting the Equity/Debt Lift Stay Motion;

(ii) no Excess Policy Insurer required to contribute to the Equity/Debt Settlement Amount shall be liable for or responsible to contribute more than its remaining limit of liability under its respective policy.

(iii) upon the Effective Date, the Debtors and the Equity/Debt Insured Persons release those Excess Policy Insurers that have fully paid their respective limits of liability from any and all actual or potential actions arising out of or in anyway connected with or related to the exhausted or partially exhausted Policies or the Excess Policy Insurers' investigation, evaluation or handling of the Claim;

(iv) Endurance is released only to the extent of its limits of liability of the Endurance Policy paid or to be paid as Loss in connection with the Equity/Debt Settlement Amount and defense of the Equity/Debt Securities Class Action.

---

[3] This summary is intended to be used for informational purposes only and shall not, in any way, affect the meaning or interpretation of the Equity/Debt Release Agreement. The summary is qualified in its entirety by the provisions of the Equity/Debt Release Agreement. In the event of any inconsistency between this summary and the Equity/Debt Release Agreement the Equity/Debt Release Agreement shall control. Capitalized terms used but not defined in this summary shall have the meanings ascribed to them in the Equity/Debt Release Agreement.

**The Release Agreements Are Supported By Sound
Business Judgment And Should Be Approved**

21.	The Debtors seek authority to grant the Excess Policy Insurers the limited releases set forth in the Release Agreements pursuant to sections 105 and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that the court may issue any order that is "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

22.	It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

23. As described above, absent settlement of the Actions, the Debtors are potentially exposed to claims of indemnification by the Insured Persons against the estates and may be liable for the payment of the respective settlement amounts pursuant to the advancement obligations set forth in their by-laws. None of the Debtors are named as defendants in the Actions and none are party to the agreements settling the Actions. Nevertheless, the Debtors will receive the benefit of reducing or extinguishing potential claims against the estates. The sole request that is being made of the Debtors to achieve these beneficial results is that LBHI give a limited release to ACE Bermuda and the Excess Policy Insurers of claims that it "might" have under the 2007-2008 D&O Policies relating to the New Jersey Action and the Equity/Debt Securities Action and the settlements thereof.

24. As described above, given the structure of the 2007-2008 D&O Policies, any claim that the Debtors might have thereunder are limited to "Side B" reimbursement claims. The Debtors have no reimbursement claims, and even if they did they would be subordinated to the Insured Persons "Side A" claims. Accordingly, LBHI has no claims against ACE Bermuda or the Excess Policy Insurers. It is for that reason that the Debtors have brought this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code rather than Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that this very same rationale demonstrates beyond peradventure that reasonable and sound business justification exists for LBHI's granting ACE Bermuda and the Excess Policy Insurers the releases that they have requested pursuant to the terms of the NJ Release Agreement and Equity/Debt Release Agreement, respectively, i.e., the Debtors will reap the benefits of the settlements of the Actions

with no costs to the Debtors' estates. The Debtors submit, therefore, that, under the circumstances there is more than ample justification for granting the relief sought herein.

### Notice

25.      No trustee has been appointed in these cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Debtors; (iii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for the respective Excess Policy Insurers; (vii) the attorneys for the Insured Persons; and (viii) all parties who have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: September 28, 2011
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
In re                                                        :   Chapter 11 Case No.
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :   08-13555 (JMP)
                                                             :
            Debtors.                                         :   (Jointly Administered)
                                                             :
------------------------------------------------------------x

### ORDER GRANTING NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO GRANT LIMITED RELEASES TO CERTAIN INSURERS UNDER THE DIRECTORS AND OFFICERS INSURANCE POLICIES

Upon the motion, dated September 28, 2011 (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105(a) and 363(b) of title 11 to the United States Code (the "Bankruptcy Code"), for an order authorizing the Debtors to release (i) the Excess Policy Insurers, solely in connection with the Equity/Debt Securities Action, pursuant to a release agreement substantially in the form of the unsigned agreement annexed as Exhibit A to the Motion (the "Equity/Debt Release Agreement"), and (ii) ACE Bermuda, solely in connection to the New Jersey Action and pursuant to a release agreement substantially in the form of the unsigned agreement annexed as Exhibit B to the Motion (the "NJ Release Agreement" and, together with the Equity/Debt Release Agreement, the "Release Agreements"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for the respective Excess Policy Insurers; (vii) attorneys for the Insured Persons; and (viii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 1105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to grant the limited releases set forth in the agreements substantially in the form of the Release Agreements; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Excess Policy Insurers, the Debtors or the Insured Persons provided for under the terms, conditions and limitations of the Policies; and it is further

ORDERED that all parties to the Excess Insurance Policies reserve all rights and defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Excess Insurance Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Excess Insurance Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: October __, 2011
      New York, New York

                               UNITED STATES BANKRUPTCY JUDGE