# AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is entered into this 27th day of September 2011, by and among the following parties ("Parties"): ACE Bermuda Insurance Ltd. ("ACE"); Richard S. Fuld, Jr., Christopher M. O'Meara, Joseph M. Gregory, Erin Callan, Ian Lowitt, David Goldfarb, Herbert H. McDade, III, Thomas Russo, Mark Walsh, Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (collectively, the "Insured Persons"); and Lehman Brothers Holdings Inc. ("LBHI").

WHEREAS, ACE issued to LBHI the following insurance policy that, subject to the terms and conditions of the policy, provides certain insurance to the Insured Persons: ACE Bermuda Insurance Ltd. Policy No. LEHM-11742D ("Policy");

WHEREAS, the Insured Persons were named as defendants in the lawsuit captioned <u>The State of New Jersey, Department of Treasury, Division of Investment v. Fuld et al.</u>, No. 10 Civ. 05201 (LAK), United States District Court for the Southern District of New York ("Lawsuit");

WHEREAS, the Lawsuit was submitted to ACE and other insurers for coverage ("Claim");

WHEREAS, ACE raised certain coverage issues and defenses with respect to the Lawsuit and otherwise reserved all of its rights and defenses;

WHEREAS, the Insured Persons reserved all of their rights and defenses with respect to insurance coverage for the Lawsuit;

WHEREAS, a mediation was held to negotiate the potential settlement of the Lawsuit under the supervision of The Honorable Daniel H. Weinstein (Ret.);

WHEREAS, with the concurrence of LBHI, the Insured Persons agreed to settle the claims asserted against them in the Lawsuit for, among other things, a payment of eight million two hundred fifty thousand dollars ($8,250,000), and executed a Settlement Agreement and Mutual Release in the Lawsuit that will, subject to court approvals and other conditions, fully compromise and settle the claims against them in the Lawsuit ("Settlement"), a fully executed copy of which has been provided to ACE;

WHEREAS, ACE has agreed to contribute on behalf of the Insured Persons eight million two hundrend fifty thousand dollars ($8,250,000) to fund the Settlement to resolve all claims by the Insured Persons and LBHI with respect to the Lawsuit;

WHEREAS, on September 15, 2011, the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") entered an Order authorizing relief from the automatic stay to the extent applicable and approving the use of the proceeds of the Policy to fund the Settlement ("Comfort Order");

WHEREAS, the limit of liability of the Policy has been and is being partially exhausted by ACE funding the Settlement and other Loss, and will be fully and completely exhausted by its payment of the Settlement and its contribution to the settlement of In Re Lehman Brothers Equity/Debt Securities Litigation, No. 08 CV 5523 (S.D.N.Y.) ("Equity/Debt Litigation");

WHEREAS, in exchange for such payment by ACE, LBHI and the Insured Persons have agreed to release ACE as provided below.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

1. For good and valuable consideration the receipt of which is hereby acknowledged: (a) ACE shall pay eight million two hundred fifty thousand dollars ($8,250,000) ("Payment") into escrow (as provided for in the Settlement Agreement and Mutual Release) no later than ten (10) business days after the entry of the Comfort Order, provided that, prior to such Payment, ACE has received sufficient payment instructions and a fully executed copy of this Agreement; and (b) LBHI shall seek entry by the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") of an Order approving LBHI's release of ACE as set forth at Paragraph 2 below ("Bankruptcy Order").

2. Upon the Effective Date (as defined in the Settlement Agreement and Mutual Release), LBHI, on its own behalf and on behalf of those of its affiliates that it controls, and the Insured Persons, on their own behalf and on behalf of their respective parents, affiliates and direct and indirect subsidiaries, heirs, executors, estates, administrators, principals, agents, successors and assigns ("Insured Parties"), hereby release and forever discharge ACE and its respective parents, affiliates and direct and indirect subsidiaries, and their respective present or former directors, officers, partners, members, associates, employees, shareholders, attorneys, accountants, auditors, advisors, insurers, reinsurers, representatives, heirs, executors, administrators, principals, agents, successors and assigns ("ACE Parties"), from any and all actual or potential actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever, in law or in equity, known or unknown, now existing or hereafter arising, whether contractual, extra-contractual, in tort or otherwise ("Causes of Action"), which the Insured Parties had, have, or may have in the future against the ACE Parties based upon, arising out of, attributable to, or in any way connected with or related to the Policy, or ACE's investigation, evaluation or handling of the Claim, or any alleged "bad faith," breach of any oral or written promise or breach of any duty grounded in law or in contract relating to the Policy, the Lawsuit and the Claim (the "Release"). Notwithstanding the foregoing, the Insured Parties' release of the ACE Parties with respect to the portion of the Policy's limit of liability to be paid toward the settlement of the Equity/Debt Litigation is conditioned on such payment by ACE; however, in any event, the Insured Parties and the ACE Parties recognize and agree that the ACE Parties are released herein only to the extent of the Policy's limit of liability paid or to be paid as Loss in connection with the Settlement and defense of the Lawsuit, and not with respect to any other insurance policy issued by ACE.

3. Upon the Effective Date (as defined in the Settlement Agreement and Mutual Release), the ACE Parties hereby release and forever discharge the Insured Parties from all and

any Causes of Action which the ACE Parties had, have, or may have in the future against the Insured Parties with respect to the Policy (but consistent with the Insured Parties' release of the ACE Parties in Paragraph 2), or the Insured Parties' investigation, evaluation or handling of the Claim.

      4.    In the event that the Settlement is terminated, voided or otherwise fails to obtain the necessary final court approvals, then the Payment set forth in Paragraph 1 above shall be fully repaid to ACE directly from the escrow account, plus any interest or other income earned thereon, but less any reasonable administration costs actually paid or incurred not to exceed $15,000, and the releases by the Insured Parties of the ACE Parties and by the ACE Parties of the Insured Parties shall have no force and effect.

      5.    This Agreement represents a compromise of disputed claims, and payment hereunder shall not be construed as an admission of coverage on the part of the ACE Parties.

      6.    The Parties represent and warrant that there has been no, and agree that there will be no, assignment or other transfer of any interest in any part of the Release which they release and discharge pursuant to this Agreement.

      7.    In the event any of the provisions of this Agreement are deemed to be invalid and unenforceable, those provisions shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties.

      8.    The Parties agree and acknowledge that this Agreement constitutes the entire agreement among the Parties regarding the settlement and release of the matters specified herein and that this Agreement shall not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a duly executed writing by all of the Parties.

      9.    All Parties participated in the drafting of this Agreement.

      10.    Each Party to this Agreement understands, acknowledges and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that this Agreement shall and will remain effective notwithstanding any such difference in fact.

      11.    The Parties agree New York law (without regard to New York's conflict of law rules) shall govern the interpretation and enforcement of this Agreement.

      12.    The Parties hereby acknowledge that they have been represented and advised by counsel in connection with the execution of this Agreement.

      13.    The Parties agree and acknowledge that the negotiation, execution, and performance of this Agreement and any actions by ACE, or its respective attorneys or agents, in connection with this Agreement shall not be deemed to be and shall not constitute any admission of or any evidence that ACE in any way does business in the United States, or any state, territory, or possession of the United States, or that ACE is subject to the jurisdiction of any United States federal or bankruptcy court, or of any court of any state, territory or possession of the United States.

14. Any dispute among the Parties regarding this Agreement shall in the first instance be referred to The Honorable Daniel H. Weinstein (Ret.) or other agreed-upon neutral for mediation.

15. The Parties agree that this Agreement may be executed in one or more counterparts, and in both original form and one or more photocopies, each of which shall be deemed to be an original, but all of which shall be deemed to be and constitute one and the same instrument.

16. This Agreement may be executed on behalf of any Party by the Party's attorney or other representative with the same force and effect as if the Party had personally executed this Agreement. Each person signing this Agreement warrants and represents that he or she has read this Agreement and has the necessary authority to execute this Agreement individually and on behalf of his or her respective principals, if any.

IN WITNESS WHEREOF, the authorized representatives of the Parties execute this Agreement on behalf of their principals.

ALLEN & OVERY

BY: _____
Patricia M. Hynes
Todd Fishman

*Counsel for Defendant Richard S. Fuld, Jr.*

SILLS CUMMIS & GROSS, P.C.

BY: _____
Jeffrey J. Greenbaum

*Counsel for Defendants Christopher M. O'Meara, Joseph M. Gregory, Ian Lowitt, David Goldfarb, Herbert H. McDade III, and Thomas Russo*

PROSKAUER ROSE LLP

BY: _____
Robert J. Cleary
Mark E. Davidson

*Counsel for Defendant Erin Callan*

08-13555-mg    Doc 20350-2    Filed 09/28/11    Entered 09/28/11 16:55:12    Exhibit B
Pg 5 of 5

SPEARS & IMES LLP

BY: _____
David Spears
Laurie F. Richardson

*Counsel for Defendant Mark Walsh*

DECHERT LLP

BY: _____
Andrew J. Levander
Kathleen N. Massey
Adam J. Wasserman

*Counsel for Defendants Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber*

LEHMAN BROTHERS HOLDINGS INC.

BY: _____

ITS: _____


ACE BERMUDA INSURANCE LTD.

BY: _____

ITS: _____

{File: 00325441.DOCX / }    5
5