**Hearing Date and Time: October 19, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  October 12, 2011  at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                Debtors.                    :    (Jointly Administered)
                                            :
-----------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE AND**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR**
**AUTHORITY TO ENTER INTO SETTLEMENT WITH BOND SAFEGUARD**
**INSURANCE COMPANY AND LEXON INSURANCE COMPANY**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")[1]

of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11

cases, including Lehman Commercial Paper Inc., as debtors-in-possession (together, the

"Debtors"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for authority to enter into a settlement with Bond Safeguard Insurance Company and its affiliate

Lexon Insurance Company (together, "Bond Safeguard"), all as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **October 19, 2011 at**

**10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of

New York, shall set forth the name of the objecting party, the basis for the objection and the

specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance

with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users

of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch

disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format (with two hard copies delivered directly to Chambers), and shall be filed

with the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York

10004, Courtroom 601; and served upon (i) Weil Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153, Attn: Alfredo R. Pérez, Esq., attorneys for the Debtors; (ii) the

Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York,

New York 10004 Attn: Tracy Hope Davis, Esq., Andrea B. Schwartz, Esq., Elisabetta G.

Gasparini, Esq.; (iii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New

York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck,

Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (iv)

The Lobel Firm, LLP, 840 Newport Center Drive, Suite 750, Newport Beach, CA 92660, Attn:

William N. Lobel, Esq., attorneys for the SunCal Trustee, and (v) Broker & Associates

Professional Corporation, 18191 Von Karman Avenue, Suite 470, Irvine, California 92612-7114,

Attn: Jeffrey W. Broker, Esq., and Harris Beach, Pllc, 300 South State Street, Syracuse, New York 13202, Attn: Lee Woodard, Esq., attorneys for Bond Safeguard, so as to be so filed and received by no later than **October 12, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing. If an objection is filed the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: September 28, 2011
   Houston, Texas

        /s/ Alfredo R. Pérez     
        Alfredo R. Pérez

        WEIL, GOTSHAL & MANGES LLP
        700 Louisiana Street, Suite 1600
        Houston, Texas  77002
        Telephone: (713) 546-5000
        Facsimile: (713) 224-9511

        Attorneys for Debtors
        and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                          :
                    **Debtors.**          :        **(Jointly Administered)**
                                          :
-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE**
**AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR**
**AUTHORITY TO ENTER INTO SETTLEMENT WITH BOND SAFEGUARD**
**INSURANCE COMPANY AND LEXON INSURANCE COMPANY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

    Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors-in-

possession (together, the "Debtors," and collectively with their non-debtor affiliates, "Lehman"),

file this motion (the "Motion") seeking approval to enter into a settlement with Bond Safeguard

Insurance Company and its affiliate Lexon Insurance Company (together, "Bond Safeguard"),

pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and respectfully

represent:

**Preliminary Statement**

1.        Prior to the commencement of the Debtors' chapter 11 cases, LCPI and three non-Debtor Lehman affiliates, Lehman ALI, Inc. ("ALI"), OVC Holdings LLC ("OVC Lender"), and Northlake Holdings LLC ("Northlake Lender, and together with LCPI, ALI and OVC Lender, the "Lehman Creditors") provided approximately $1.8 billion in senior secured financing (the "Financing") to certain direct or indirect subsidiaries and/or affiliates of SCC Acquisitions, Inc. ("SCC Acquisitions"), pursuant to various separate loan agreements.  The Financing was used by such subsidiaries and/or affiliates to acquire and develop certain real estate projects located in California.

2.        After the commencement of the Debtors' chapter 11 cases, certain of such subsidiaries and/or affiliates of SCC Acquisitions became involuntary debtors (the "SunCal Involuntary Debtors")[1] or voluntary debtors (the "SunCal Voluntary Debtors"[2] and together with the SunCal Involuntary Debtors, the "SunCal Debtors") in cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "California Bankruptcy Court").  The real estate projects owned by the SunCal Debtors are collectively referred to herein as the "SunCal Properties."

---

[1] The SunCal Involuntary Debtors are:  SunCal Oak Knoll, LLC ("SunCal Oak Knoll"); SunCal Torrance Properties, LLC ("SunCal Torrance"); SunCal Marblehead, LLC ("SunCal Marblehead"); SunCal Heartland, LLC ("SunCal Heartland"); LB/L-SunCal Northlake, LLC ("SunCal Northlake"); LB/L-SunCal Oak Valley, LLC ("SunCal Oak Valley"); SunCal PSV, LLC ("SunCal PSV"); Delta Coves Venture, LLC ("Delta Coves"); and SunCal Century City, LLC ("SunCal Century").  Following the commencement of the chapter 11 cases of the SunCal Involuntary Debtors (the "SunCal Involuntary Debtors' Cases"), Steven Speier was appointed as trustee (the "SunCal Trustee") to administer such cases.

[2] The SunCal Voluntary Debtors are: Palmdale Hills Property, LLC ("Palmdale"); SunCal Bickford Ranch, LLC ("Bickford Ranch"); Acton Estates, LLC ("Acton"); SunCal Summit Valley, LLC ("Summit Valley"); SCC Communities LLC ("SCC Communities"); Tesoro SF, LLC ("Tesoro"); SunCal Communities I, LLC ("SunCal I"); Seven Brothers, LLC ("Seven Brothers"); Kirby Estates, LLC ("Kirby"); SunCal Beaumont Heights, LLC ("Beaumont Heights"); SunCal Johannson Ranch, LLC ("Johannson Ranch"); SJD Development Corp.; SunCal Communities III, LLC; SCC/Palmdale, LLC; SJD Partners, Ltd.; North Orange Del Rio Land, LLC ("Del Rio"); and SunCal Emerald Meadows, LLC ("SunCal Emerald").

3.      Prior to the commencement of the SunCal Debtors' chapter 11 cases, Arch

Insurance Company ("Arch") and Bond Safeguard (together, the "Bond Issuers") issued certain

surety bonds, including subdivision, payment, performance and other bonds, in connection with

the SunCal Debtors' development of certain of the SunCal Properties (the "Project Bonds").  The

Bond Issuers contend that they are owed tens of millions of dollars in respect of the Project

Bonds and have asserted claims exceeding two hundred million dollars, in the aggregate, against

the SunCal Debtors.

4.      As set forth in more detail in the *Debtors' Motion Pursuant*

*to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for*

*Authority to (I) Enter Into the Second Amended Joint Chapter 11 Plan Proposed By the Lehman*

*Creditors and the SunCal Trustee on Behalf of the SunCal Involuntary Debtors In Eight of the*

*SunCal Involuntary Debtors' Cases; (II) Enter Into the Second Amended Joint Chapter 11 Plan*

*Proposed By the Lehman Lenders In Eleven of the SunCal Voluntary Debtors' Cases; and*

*(III) Participate In Any Auction of the SunCal Debtors' Assets*, dated June 28, 2011 [ECF No.

18122] (the "Plan Authority Motion"), the Lehman Creditors and the SunCal Trustee proposed a

chapter 11 plan in eight of the SunCal Involuntary Debtors' chapter 11 cases (the "Lehman TD

Plan")[3] and certain of the Lehman Creditors proposed a chapter 11 plan in 11 of the SunCal

Voluntary Debtors' chapter 11 cases (the "Lehman VD Plan"[4] and collectively, with the Lehman

TD Plan,  the "Lehman-SunCal Plans"), respectively.[5]  Pursuant to the Plan Authority Motion,

---

[3] *Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed By the Trustee and Subject Lehman Creditors,* dated July 15, 2011 and filed on August 23,2011.

[4] *Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed By the Lehman VD Lenders,* dated July 15, 2011 and filed on August 23, 2011.

[5] The salient terms of the Lehman-SunCal Plans are summarized in the Plan Authority Motion.  In the event of any inconsistency between the summaries contained in the Plan Authority Motion and the Lehman SunCal Plans, the Lehman-SunCal Plans control.

the Debtors sought, among other things, approval to effectuate the transactions contemplated in

the Lehman-SunCal Plans.  On July 21, 2011, this Court entered an order granting the relief

requested in the Plan Authority Motion [ECF No. 18685].  The hearing to consider confirmation

of the Lehman-SunCal Plans is currently scheduled to commence in the California Bankruptcy

Court on October 24, 2011.

        5.      The Lehman-SunCal Plans provide for (and require, as a condition

precedent to the entry of a confirmation order confirming the Lehman-SunCal Plans, which

condition may be waived by the Lehman Creditors in their sole and absolute discretion) the

consummation of a settlement between the Lehman Creditors, as applicable, and the Bond

Issuers.  In connection therewith, Lehman has negotiated a term sheet (the "Bond Safeguard

Term Sheet")[6] that sets forth the material terms, provisions and conditions of, and the obligations

of the parties to the settlement; a settlement which resolves Bond Safeguard's various claims

against the SunCal Debtors (except as expressly provided otherwise in the Bond Safeguard Term

Sheet).  The Bond Safeguard Term Sheet, attached hereto as Exhibit A, contemplates that the

parties will enter into two separate settlement agreements, one with respect to the SunCal

Involuntary Debtors and one with respect to the SunCal Voluntary Debtors, each of which will

be conditioned upon the confirmation and effectiveness of the applicable Lehman-SunCal Plan,

memorializing the terms, provisions and conditions set forth in the Bond Safeguard Term Sheet,

including, without limitation, the (i) terms, provisions and conditions that relate to Bond

Safeguard's obligations with respect to those SunCal Properties for which Bond Safeguard has

issued Project Bonds that remain outstanding, and (ii) terms, provisions and conditions that relate

---

[6] It is contemplated that the parties to the settlement will include Bond Safeguard, LBHI, LCPI, ALI, OVC Lender and the various Lehman affiliates that will take title to the projects for which Bond Safeguard has issued Project Bonds (collectively, the "Lehman Parties").

to LBHI's guarantee obligations with respect to the Lehman Nominees' (as defined below) respective obligations under the settlement, including without limitation, their reimbursement obligations to Bond Safeguard (collectively, the "Bond Settlement Agreements").[7]  As set forth in more detail below, in exchange for certain reimbursement and other obligations to be undertaken by the Lehman Parties, the Bond Safeguard Term Sheet contemplates, among other things, (i) full and final settlement of Bond Safeguard's claims against the SunCal Debtors (except as expressly otherwise provided for in the Bond Safeguard Term Sheet and more particularly described in the summary below under "Releases") and, (ii) that Bond Safeguard will forego certain distributions on its claims under the Lehman-SunCal Plans and the payment of certain bond premiums in the future.

6.        The Debtors believe that entry into the Bond Settlement Agreements is critical to the resolution of Bond Safeguard's claims in the SunCal Debtors' chapter 11 cases and, more importantly, integral to confirming the Lehman-SunCal Plans. The Bond Settlement Agreements were anticipated under and are in furtherance of the consummation of the Lehman-SunCal Plans and the transactions contemplated thereunder, including without limitation, the conveyance of the SunCal Properties owned by the SunCal Debtors that are subject to the Lehman-SunCal Plans to affiliates of the Lehman Creditors.   Absent a settlement with Bond Safeguard, there could be no assurance that the claims asserted by Bond Safeguard against the SunCal Debtors would not be estimated by the California Bankruptcy Court at an amount or amounts that would exceed certain caps and thresholds provided for in the Lehman-SunCal Plans, which would then require the Lehman Creditors, as plan proponents, either to elect to

---

[7] The Debtors do not anticipate that the Lehman Parties and Bond Safeguard will enter into the Bond Settlement Agreements prior to the filing of this Motion, however, pursuant to the Bond Safeguard Term Sheet the Bond Settlement Agreements will memorialize the terms, provisions and condition set forth in the Bond Safeguard Term Sheet, which the Debtors have attached to this Motion.

withdraw the applicable Lehman-SunCal Plan(s) (despite all of their efforts in seeking

confirmation of such plans) or proceed to confirmation and effectiveness of such plans and, in so

doing, commit to make payments and distributions to creditors in excess of estimated aggregate

amounts and/or the caps and thresholds provided for in the Lehman-SunCal Plans and/or likely

incur significant expense and risk in litigating Bond Safeguard's claims.  Further, absent a

settlement with Bond Safeguard, the likely increase in the aggregate estimated unsecured claim

amounts created by the addition of Bond Safeguard's claims would reduce distributions to other

creditors if certain thresholds are exceeded.

### Relief Requested

7.     The Debtors request, pursuant to section 363 of the Bankruptcy Code and

Bankruptcy Rule 9019, as applicable, authority for LBHI and LCPI to enter into the Bond

Settlement Agreements, in accordance and consistent with the terms, provisions and conditions

set forth in the Bond Safeguard Term Sheet, and to consummate the transactions contemplated

thereunder including, without limitation, LBHI guaranteeing obligations of each Lehman

Nominee pursuant to a form of guarantee/indemnity agreement attached as Exhibit D to the Bond

Safeguard Term Sheet.

### Jurisdiction

8.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**A.     General**

9.     Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10.    Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and the other Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

12.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [ECF No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner. The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [ECF No. 7531].

13.    On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos. 19627 and 19629].  On September 1, 2011, this Court entered an amended order [ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.

14.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

**B.      The SunCal Debtors' Chapter 11 Cases and the Bond Safeguard Issued Bonds**

15.     As noted above, the SunCal Debtors are owners of various real estate projects in California, that, prior to the filing of the chapter 11 cases on various dates in November 2008 (the "SunCal Petition Dates"), received Financing from the Lehman Creditors on a senior secured basis in the approximate amount of $1.8 billion.  Also prior to the SunCal Petition Dates, Bond Safeguard issued certain Project Bonds with respect to real estate projects owned by certain of the SunCal Debtors in exchange for the payment of bond insurance premiums and certain indemnity obligations from the applicable SunCal Debtors and certain principals thereof.

16.     With respect to the SunCal Involuntary Debtors, Bond Safeguard issued Project Bonds (collectively, the "Bond Safeguard TD Bonds") in connection with the real estate development of (a) a project comprised of, in part, approximately 247 acres of real property owned by SunCal Marblehead (the "Marblehead Project"), (b) a project comprised of, in part, approximately 985 acres of real property owned by SunCal Oak Valley (the "Oak Valley Project"), (c) a project comprised of, in part, approximately 752 acres of real property owned by SunCal PSV (the "PSV Project"), (d) a project comprised of, in part, approximately 417 acres of real property owned by SunCal Heartland (the "Heartland Project"), and (e) a project comprised of, in part, approximately 310 acres of real property owned by Delta Coves (the "Delta Coves

Project" and collectively, with the Marblehead Project, Oak Valley Project, PSV Project, Heartland Project and Delta Coves Project, the "Bond Safeguard TD Projects").  With respect to the SunCal Voluntary Debtors, Bond Safeguard issued Project Bonds (collectively, the "Bond Safeguard VD Bonds" and, together with the Bond Safeguard TD Bonds, the "Bond Safeguard Bonds") in connection with the real estate development of (a) a project comprised of, in part, approximately 175 acres owned by Acton (the "Acton Project"), (b) a project comprised of, in part, approximately 10,625 acres owned by Palmdale (the "Ritter Ranch Project"), and (c) a project comprised of, in part, approximately 1,940 acres of real property owned by Bickford Ranch (the "Bickford Ranch Project" and collectively, with the Acton Project and Ritter Ranch Project, the "Bond Safeguard VD Projects" and, together with the Bond Safeguard TD Projects, the "Bond Safeguard Projects").

17.     As a result of the issuance of Bond Safeguard TD Bonds and Bond Safeguard VD Bonds and, in some instances, the issuance of surety bonds for other SunCal Debtors and/or affiliates of SCC Acquisitions that are not debtors in the SunCal chapter 11 cases, Bond Safeguard asserts that it is owed, collectively, by the SunCal Debtors tens of millions of dollars.  This aggregate amount includes claims in respect of Bond Safeguard's contingent liability to others, including other creditors of the SunCal Debtors, such as contractors and municipalities, who may be beneficiaries of the Project Bonds issued by Bond Safeguard.

C.    **The Lehman-SunCal Plans**[8]

### (i) The Lehman VD Plan

18.    On or about August 23, 2011, LCPI and ALI filed, in the California

Bankruptcy Court, the Lehman VD Plan in respect of the following 11 SunCal Voluntary

Debtors: (1) Acton; (2) Palmdale; (3) SCC Communities;  (4) Bickford Ranch; (5) SunCal

Communities I; (6) Summit Valley; (7) Tesoro; (8) Kirby; (9) Seven Brothers; (10) Beaumont

Heights; and (11) Johannson Ranch (the "VD Plan Debtors").  The Lehman VD Plan provides

that, upon confirmation and effectiveness of the Lehman VD Plan, the VD Plan Debtors will

convey ownership of the real estate projects they own (as specifically set forth in the Lehman

VD Plan) to nominees of LCPI and/or ALI.  In exchange, LCPI and ALI will provide certain

funding (i) to provide for the settlement of claims of settling creditors and a minimum

guaranteed payment of 1% to non-settling creditors holding allowed claims against the VD Plan

Debtors and (ii) for payment of certain post-confirmation expenses.

### (ii) The Lehman TD Plan

19.    Also, on or about August 23, 2011, the Lehman Creditors, along with the

SunCal Trustee, filed in the California Bankruptcy Court, the Lehman TD Plan in respect of the

following eight SunCal Involuntary Debtors: (1) SunCal Oak Valley; (2) SunCal Heartland; (3)

SunCal Marblehead; (4) SunCal PSV; (5) Delta Coves; (6) SunCal Torrance; (7) SunCal

Northlake and (8) SunCal Oak Knoll (collectively, the "TD Plan Debtors" and, together with the

VD Plan Debtors, the "Plan Debtors").  Similar to the Lehman VD Plan, the Lehman TD Plan

provides that, upon confirmation and effectiveness of the Lehman TD Plan, the TD Plan Debtors

---

[8] The brief descriptions of the Lehman-SunCal Plans contained herein are included for convenience only.  Nothing
herein is intended to supersede the terms of the Lehman-SunCal Plans.  In the event of any inconsistencies between
the Lehman-SunCal Plans and the descriptions herein, the Lehman-SunCal Plans control.

will convey ownership of the real estate projects they own (as specifically set forth in the

Lehman TD Plan) to nominees of the Lehman Creditors.  In exchange, the Lehman Creditors

will provide certain funding (i) to provide for the settlement of claims of settling creditors and a

minimum guaranteed payment of 1% to non-settling creditors holding allowed claims against the

TD Plan Debtors and (ii) for payment of certain post-confirmation expenses.

        20.      The Lehman-SunCal Plans contemplate that, on or after the effective date,

certain designees owned and/or controlled by Lehman (the "Lehman Nominees") will take title

to, among others, the Bond Safeguard Projects pursuant to the applicable Lehman-SunCal Plan.

The Lehman-SunCal Plans are also premised, in part, on obtaining settlements with the Bond

Issuers.  Many of the claims asserted against the Plan Debtors, or portions thereof, arise from

Project Bonds issued by the Bond Issuers.  The Bond Issuers have made and continue to make

payments to certain creditors of the SunCal Debtors and others who are beneficiaries of the

Project Bonds issued by the Bond Issuers.  Accordingly, the Bond Issuers have asserted claims

against certain of the SunCal Debtors that, in aggregate (and without duplication), exceed two

hundred million dollars.  The Bond Issuers have contended that (i) if a Bond Issuer is required to

pay or perform under a Project Bond because of a demand from a municipality that is the

beneficiary of such Project Bond, the costs for improving the subject SunCal Property can be

recovered upon sale or transfer of such SunCal Property from its subsequent owner, and (ii)

absent consent of the applicable Bond Issuer, the Project Bonds must be replaced on sale or

transfer of each applicable SunCal Property.  The Lehman Creditors dispute these contentions.

        21.      Accordingly, the Lehman-SunCal Plans contemplate a settlement with the

Bond Issuers whereby the Bond Issuers agree, in essence, that (a) as to amounts a Bond Issuer

actually incurs with respect to certain bonded work performed for the benefit of a Plan Debtor's

project, such Bond Issuer would be reimbursed by a Lehman Nominee for all or a portion

thereof; (b) the Bond Issuers would forego certain distributions under the Lehman-SunCal Plans

on certain of their claims and (c) the Bond Issuers would assign to the Lehman Creditors or their

designees, or otherwise release, all or part of the Bond Issuers' claims against the Plan Debtors

and their related claims against any indemnitors or other obligors who provided indemnities to

the Bond Issuers for any losses incurred in respect of the Project Bonds.

**D.      The Bond Safeguard Term Sheet**

22.      Consistent with the parameters indicated in the Lehman-SunCal Plans, on

or about September 26, 2011, the Debtors negotiated and LBHI entered into the Bond Safeguard

Term Sheet, subject to this Court's approval.  The salient terms of the Bond Safeguard Term

Sheet are described below.[9]

| | |
|---|---|
| **Debtors to be Party to the Bond Settlement Agreements:** | LBHI and LCPI |
| **Other non-Debtor Lehman Entities to be Party to the Bond Settlement Agreements:** | ALI and OVC Lender |
| **Projects Covered:** | • Marblehead Project<br>• Oak Valley Project<br>• PSV Project<br>• Heartland Project<br>• Delta Coves Project<br>• Acton Ranch Project<br>• Ritter Ranch Project<br>• Bickford Ranch Project |
| **Bond Safeguard's** | • Bond Safeguard agrees that the Bond Safeguard Bonds will remain |

---

[9] This summary is intended to be used for informational purposes only and shall not, in any way, affect the meaning or interpretation of the Bond Safeguard Term Sheet.  The summary is qualified in its entirety by the provisions of the Bond Safeguard Term Sheet.  In the event of any inconsistency between this summary and the Bond Safeguard Term Sheet the Bond Safeguard Term Sheet shall control.  Capitalized terms used in this summary but not defined shall have the meanings ascribed to them in the Bond Safeguard Term Sheet.

| | |
|---|---|
| **Obligations** | outstanding and that Bond Safeguard will pay and perform its obligations in accordance with such bonds until such bonds with respect to any particular Bond Safeguard Project are required to be replaced on the earlier of (a) the sale, transfer or conveyance of such project to a third party unaffiliated with Lehman, (b) the modification, amendment, substitution or replacement of any subdivision improvement agreement or development agreement that contemplated or required the issuance of such bonds or (c) the applicable Lehman Nominee voluntarily initiates development of such project by commencing actual construction of improvements that (i) are being made pursuant to the development agreement and/or subdivision improvement agreement applicable to the project and (ii) are not improvements that have been demanded be made by any obligee on any bonds or which are being made solely to address, mitigate or respond to any life/safety issues or public nuisances or hazards. |
| **Lehman Nominees Payment Obligations** | • The Lehman Nominees will pay Bond Safeguard annual bond premiums for the outstanding Bond Safeguard Bonds per an agreed upon schedule, provided, however that Bond Safeguard will agree to waive all such annual premiums until the earlier of (a) 24 months following the effective date of the applicable Lehman-SunCal Plan, (b) December 31, 2013, or (c) with respect to any particular bonds, the date on which such bonds are substituted or replaced by new surety bonds issued by Bond Safeguard or another surety company relating to the same work or improvements that were the subject of the replaced bonds.  Bond Safeguard will agree to waive (and cause any bond brokers to waive) all outstanding past due bond premiums. |
| **Treatment of Bonded Claims** | • <u>Settled Claims</u>:  For all bonded claims settled by Bond Safeguard (except as provided in the Bond Safeguard Term Sheet), Bond Safeguard will represent that it has acquired 100% of all such claimants' rights against the applicable SunCal Debtor and, on the effective date of the applicable Lehman-SunCal Plan, will assign such claims to the Lehman Parties or to a designated Lehman entity.<br><br>• <u>Pending Claims</u>:  The parties have agreed to specific treatment of certain pending bonded claims that have not been settled or otherwise resolved with Bond Safeguard as provided in the Bond Safeguard Term Sheet. |
| **Payment Bond Claims** | • With respect to any payment bond claims made against Bond Safeguard after September 22, 2011 and prior to the effective date of the applicable Lehman-SunCal Plan, Bond Safeguard will reimburse the Lehman Parties for 50% of any distributions made by the Lehman Parties under said plan with respect to such claims regardless of the ultimate disposition of such claims against Bond Safeguard. |
| **Performance Bond Claims** | • With respect to any performance bond claims made against Bond Safeguard after September 22, 2011 but prior to the effective date of the applicable Lehman-SunCal Plan or February 1, 2012 (the earlier date being referred to as the "<u>Liability Switch Date</u>"), if Bond Safeguard determines (and/or is ordered by a court) that work must be performed to satisfy Bond Safeguard's obligations under its bonds, then, unless the applicable Lehman Nominee elects to complete the work itself, Bond Safeguard must perform the bonded work.  Bond Safeguard will pay for the cost of all such work performed prior to the applicable Liability Switch Date and the applicable |

|  | Lehman Nominee will reimburse Bond Safeguard for the cost of all such work performed after the Liability Switch Date. The cost of post-Liability Switch Date work to be paid by the Lehman Parties must be paid upon the effective date of the applicable Lehman-SunCal Plan (to the extent already paid by Bond Safeguard) or secured with cash or letter of credit held in trust pursuant to a collateral trust agreement in the form attached to the Bond Safeguard Term Sheet. The applicable Lehman Nominee may elect, in its sole discretion, to complete such work to be performed after the effective date of the applicable Lehman-SunCal Plan (in which case no cash or letter of credit will need to be provided). |
|  | • With respect to performance bond claims made against Bond Safeguard after the Liability Switch Date, if Bond Safeguard determines (and/or it is ordered by a court) that work must be performed to satisfy Bond Safeguard's obligations under its bonds then, unless the applicable Lehman Nominee elects to complete the work itself, Bond Safeguard must perform the bonded work. On the effective date of the applicable Lehman-SunCal Plan, the applicable Lehman Nominee will reimburse Bond Safeguard for the cost of all such work paid by Bond Safeguard to date and secure the applicable Lehman Nominee's reimbursement obligation with cash or letter of credit to be held in trust pursuant to a collateral trust agreement. The applicable Lehman Nominee may elect, in its sole discretion, to complete such work to be performed after the effective date of the applicable Lehman-SunCal Plan (in which case no cash or letter of credit will need to be provided). |
| **Terms Specific to the Ritter Ranch Project** | • With respect to certain work to be performed by Bond Safeguard for Elizabeth Lake Road at the Ritter Ranch Project, pursuant to a settlement agreement between Bond Safeguard and the City of Palmdale, the applicable Lehman Nominee will reimburse Bond Safeguard for a portion of any expenditures in respect of such work in an amount equal to the lesser of 1/2 of the aggregate amount of such expenditures or $800,000. |
| **Terms Specific to the Heartland Project** | • In connection with the claim made against Bond Safeguard by the City of Beaumont for certain work on the Heartland Project, Bond Safeguard is in the process of determining whether valid defenses to such claim can be made. If Bond Safeguard must perform the work demanded, the applicable Lehman Nominee will reimburse Bond Safeguard for a portion of any expenditures in respect of such work in an amount equal to the lesser of 1/2 of the aggregate amount of such expenditures or $450,000. |
| **Releases** | • To the extent not otherwise assigned to the Lehman Parties, Bond Safeguard will dismiss all of its claims against each of the SunCal Debtors (except certain claims more particularly described in the Bond Safeguard Term Sheet) and release the Lehman Parties from all claims arising from the Bond Safeguard Projects, the Bond Safeguard Bonds, and the SunCal Debtors (except the excluded claims), other than claims arising under the Bond Safeguard Settlement Agreements or other documents in connection therewith. |
| **LBHI Guarantee** | • LBHI and Bond Safeguard will enter into a guarantee/indemnity agreement pursuant to which LBHI will guarantee all of the Lehman Nominees' respective obligations under the Bond Settlement Agreements. A form of the guarantee/indemnity agreement is attached to the Bond Safeguard Term |

| | |
|---|---|
| | Sheet. |
| **Indemnity Claims** | • On the effective date of the applicable Lehman-SunCal Plan, Bond Safeguard will assign to the Lehman Parties or their designee all of Bond Safeguard's rights and claims against the Elieffs or any other SunCal principal or entity under any indemnity agreement in favor of Bond Safeguard with respect to its losses incurred under the Bond Safeguard Bonds. |

23.    As set forth in the Bond Safeguard Term Sheet, the economic costs to be incurred in connection with effectuating the Bond Settlement Agreements is subject to certain variables, including, without limitation, the extent and cost of the work to be performed by Bond Safeguard on the Bond Safeguard Projects.  The Lehman Parties anticipate that the Lehman Nominees, and to the extent applicable the Lehman Parties, will at most, be responsible for reimbursement to Bond Safeguard for all, or in certain instances, a portion, of any expenditures in respect of such work.  Pursuant to the Bond Settlement Agreements such potential reimbursement obligations include an amount equal to the lesser of 1/2 of the aggregate amount of such expenditures or a maximum of $800,000, solely with respect to the Elizabeth Lake Road work on the Ritter Ranch Project, and capped at a maximum of $450,000 solely with respect to certain claims made by the City of Beaumont for work on the Heartland Project.

## The Relief Requested Should be Approved Pursuant to Rule 9019 and Section 363 of the Bankruptcy Code

24.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R.

618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993),

*aff'd*, 17 F.3d 600 (2d Cir. 1994). A decision to accept or reject a compromise or settlement is

within the sound discretion of the Court. *Drexel Burnham Lambert Group*, 134 B.R. at 505.

Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). The

settlement need not result in the best possible outcome for the debtor, but must not "fall beneath

the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at

505; *see also Cosoff v. Rodman* (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); *In re

Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

25.    The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert

Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522-23 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802

(Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my

judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee

chooses one of two reasonable choices, I must approve that choice, even if, all things being

equal, I would have selected the other.") (internal citations omitted).

26.    Significantly, there is no requirement that "the value of the compromise …

be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-

28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

27.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  In addition, section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

28.    It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.  *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

29.     The Bond Safeguard Term Sheet, to be ultimately memorialized in the
Bond Settlement Agreements, satisfies the legal standards established under Bankruptcy Rule
9019 and section 363(b) of the Bankruptcy Code and is in the best interests of the Debtors'
estates.  The terms of the Bond Safeguard Term Sheet are the product of a good-faith, arms'
length negotiation process between Bond Safeguard and the Lehman Parties.  The parties to the
Bond Safeguard Term Sheet were each represented by counsel and have participated in
numerous meetings and discussions.  The parties have negotiated the terms of the Bond
Safeguard Term Sheet over the course of many months, and as a result of this successful
negotiation process, the Lehman Parties and Bond Safeguard have arrived at the agreed set of
terms described herein that provide mutually acceptable benefits and burdens to all concerned.
Further, this Court has already authorized the Debtors to enter into, and perform the obligations
under, the Lehman-SunCal Plans (which said plans specifically contemplated entry into
settlement agreements with the Bond Issuers).

30.     The Lehman-SunCal Plans are intended to account for the Lehman
Creditors' awareness that the SunCal Debtors have (and will have) no ability to pay, in the
foreseeable future, the full amount of the debt owed to the Lehman Creditors and, thus, reflect
the Lehman Creditors desire of immediate ownership of their collateral.  The Debtors believe
that entering into the Bond Settlement Agreements will enable the Lehman Creditors to confirm
the Lehman-SunCal Plans without Bond Safeguard's claims increasing the estimated claims and
distributions to be made by the Lehman Creditors under the Lehman-SunCal Plans beyond the
caps and thresholds provided for in the Lehman-SunCal Plans and without having to incur
significant expense and risk in litigating Bond Safeguard's claims.  Further, absent a settlement
with Bond Safeguard the likely increase in the estimated aggregate unsecured claim amounts

created by the addition of Bond Safeguard's claims would reduce distributions to other creditors

if certain thresholds are exceeded. Thus, entry into the Bond Settlement Agreements will relieve

a potential obstacle to confirmation and effectiveness of the Lehman-SunCal Plans.

31.    The Lehman Creditors are cognizant of their litigation exposure with

respect to Bond Safeguard's claims against the SunCal Debtors and the uncertainty attendant in

litigating said claims. In addition to the Lehman Creditors' uncertain prospects of success in

litigating Bond Safeguard's claims against the SunCal Debtors, such litigation will likely be

prolonged and costly. The Bond Settlement Agreements and the settlements embodied therein

resolve the risk of entering into costly and prolonged litigation where the outcome is uncertain.

After analyzing various alternatives, the Lehman Creditors have determined that entering into

settlements with Bond Safeguard on the terms described in the Bond Safeguard Term Sheet will

provide the best framework for resolving disputes with Bond Safeguard.

32.    The cost of entering into the Bond Settlement Agreements, namely the

agreement by the Lehman Parties to reimburse certain expenditures Bond Safeguard incurs in

connection with certain Project Bond claims, and for LBHI to guarantee said reimbursement

obligations, is outweighed by the benefits of obtaining a resolution of Bond Safeguard's claims

against the SunCal Debtors (subject to specific exceptions as described above) that results in

Bond Safeguard waiving, releasing and/or assigning certain claims and/or rights it has against the

SunCal Debtors and the bond indemnitors who provided indemnities to Bond Safeguard in

respect of the Project Bonds issued by Bond Safeguard. In light of such benefits, the Bond

Settlement Agreements, based upon the terms, provisions and conditions of the Bond Safeguard

Term Sheet, are fair and reasonable, benefit the Debtors, their estates, and their creditors and

should be approved.

33.    For the reasons set forth above, granting authority for LBHI and LCPI to enter into the Bond Settlement Agreements in accordance with the terms set forth in the Bond Safeguard Term Sheet and to consummate the transactions contemplated thereunder including, without limitation, LBHI guaranteeing the obligations of each Lehman Nominee, is in the best interests of the Debtors' estates and a proper exercise of the Debtors' business judgment and should be approved.

## **Reservation of Rights**

34.    Nothing contained in the Bond Safeguard Term Sheet or this Motion shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI, LCPI or any other Lehman Creditor, that such entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties.

35.    Further, as among the Debtors and non-Debtor affiliates, all pre- and post-petition rights, claims and defenses, including, but not limited to those associated with the costs and benefits of the Bond Safeguard Term Sheet and this Motion, are preserved.

## **Notice**

36.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the SunCal Trustee; (vii) counsel for Bond Safeguard; and

(vii) all parties who have requested notice in these chapter 11 cases.  No other or further notice

need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: September 28, 2011
       Houston, Texas

                                    /s/ Alfredo R. Pérez
                                    Alfredo R. Pérez

                                    WEIL, GOTSHAL & MANGES LLP
                                    700 Louisiana Street, Suite 1600
                                    Houston, Texas  77002
                                    Telephone: (713) 546-5000
                                    Facsimile: (713) 224-9511

                                    Attorneys for Debtors
                                    and Debtors in Possession

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (JMP)**
                                                    :
                        **Debtors.**                :        **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 363**
**OF THE BANKRUPTCY CODE AND FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING**
**THE DEBTORS TO ENTER INTO SETTLEMENT WITH BOND**
**SAFEGUARD INSURANCE COMPANY AND LEXON INSURANCE COMPANY**

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI")

and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman

Commercial Paper Inc. ("LCPI"), as debtors and debtors in possession (collectively, the

"Debtors"), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

for an order authorizing the Debtors to enter into two settlements with Bond Safeguard Insurance

Company and its affiliate Lexon Insurance Company (together, "Bond Safeguard") in

accordance with that certain negotiated term sheet entered into on September 26, 2011 between

the Lehman Parties and Bond Safeguard (the "Bond Safeguard Term Sheet") that sets forth the

material terms, provisions and conditions of, and the obligations of the parties to the Bond

Settlement Agreements, and consummate the transactions contemplated thereunder, all as more

particularly described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meanings ascribed to them in the Motion.

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the SunCal Trustee; (vii) counsel to Bond; and (vii) all parties who have requested notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors are duly authorized, but not directed, to (i) enter into the Bond Settlement Agreements, in accordance with terms, provisions and conditions set forth in the Bond Safeguard Term Sheet, (ii) execute and deliver such documents, instruments, certificates and agreements and to take such other actions as may be reasonably necessary to consummate the transactions contemplated under the Bond Settlement Agreements, and (iii) consent to any amendment, restatement, waiver, supplement or other modification of any of the documents contemplated under the Bond Settlement Agreements; and it is further

ORDERED that the Debtors are authorized, but not directed, to make all payments contemplated to be made by the Debtors under the Bond Settlement Agreements, it being understood that any actions described in this paragraph taken by the Debtors or their affiliates may be taken without the necessity of (x) any further court proceedings or approval or (y) any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI, LBHI, or any other Lehman entity that is a party to the Bond Safeguard Term Sheet or will be party to the Bond Settlement Agreements or the Lehman-SunCal Plans, that such Lehman entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties, and the Debtors are hereby authorized and directed to execute such further documents to evidence such reservations; and it is further

ORDERED that nothing contained in the Bond Safeguard Term Sheet or that will be contained in the Bond Settlement Agreements or in the Motion shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI, LCPI or any other Lehman Creditor, that such entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties; and it is further

ORDERED that any and all pre- and post-petition claims, rights and obligations that the Debtors may have against each other in connection with the subject matter of the Motion or the transactions contemplated by the Bond Safeguard Term Sheet or the Bond Settlement

Agreements upon execution are hereby fully preserved and shall not be prejudiced by the entry

of this Order; and it is further

ORDERED that the allocation of costs and benefits between or among the

Debtors and non-Debtor affiliates in connection with the Bond Settlement Agreements is

preserved; and it is further

ORDERED that the Bond Safeguard Term Sheet and, once executed, the Bond

Settlement Agreements, may be modified, amended or supplemented by the proponents thereof

without further order of the Court, and any agreements, documents or other instruments related

to the Bond Settlement Agreements, documents or other instruments may be modified, amended

or supplemented by the parties thereto, in a writing signed by such parties, and in accordance

with the terms, provisions and conditions thereof, *provided* that, in each case, any such

modification, amendment or supplement does not have a material adverse effect on the Debtors'

estates; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order;

*provided*, *however*, that nothing contained in this Order is intended to reduce the jurisdiction of

or predetermine any concurrent jurisdiction otherwise vested in the Bankruptcy Court for the

Central District of California in the chapter 11 cases of the SunCal Debtors.


Dated: October __, 2011
     New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE