WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                Debtors.                    :    (Jointly Administered)
                                            :
                                            :
-------------------------------------------------------------------x
```

## DECLARATION OF DANIEL EHRMANN IN SUPPORT OF DEBTORS' MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS WITH (I) BANK OF AMERICA, N.A. AND (II) MERRILL LYNCH & CO. INC. AND ITS AFFILIATES

Pursuant to 28 U.S.C. § 1746, I, Daniel Ehrmann, declare:

1.      I am over the age of 18 years and make these statements of my own personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), and/or my consultation with employees of the Debtors.  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I submit this Declaration in support of the *Debtors' Motion for Approval of Settlement Agreements with (I) Bank of America, N.A. and (II) Merrill Lynch International and*

*Its Affiliates* (the "<u>Motion</u>").[1]  I have reviewed the Motion, and I adopt the representations

contained therein, as if set forth in full in this Declaration.

3.        I am a Managing Director with Alvarez & Marsal North America, LLC.  I was

assigned to the Lehman matter in September 2008.  Among my other responsibilities, I am a co-

head of the derivatives group for the Debtors.  In that capacity, I am responsible for and manage

all derivatives-related matters of the Debtors.

4.        I am familiar with and have personal knowledge of the Debtors' pre-petition

derivatives transactions with BOA and with the Merrill Counterparties that are the subject of the

Motion as well as the primary and guarantee derivatives claims asserted by BOA and the Merrill

Counterparties in the Debtors' chapter 11 cases.   I am also familiar with the litigation between

the Debtors and BOA, including the Appeal.  The Motion accurately describes each of the

foregoing.

5.        Since the commencement of the chapter 11 cases, the Debtors have sought to

unwind their derivatives contracts, collect amounts owed to them, and crystallize amounts

payable by the Debtors.  The Debtors have also been analyzing the more than 8,000 primary and

guarantee derivatives claims that have been filed asserting more than $75 billion in amounts due

from the Debtors.  Within this group of claims are the Bank Derivatives Claims – the derivatives

and derivatives guarantee claims of corporate groups comprising thirteen of the Debtors' largest

counterparties, including BOA and the Merrill Counterparties (the "<u>Bank Counterparties</u>"),

aggregating in excess of $20 billion, as described in the Motion.

6.        The derivatives transactions between the Debtors and the Bank Counterparties,

including BOA and the Merrill Counterparties, involve the most sophisticated, complex and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

esoteric financial instruments in existence at the time of the Lehman bankruptcy having notional amounts in the billions of dollars. The Bank Derivatives Claims are not only massive in amount, but are enormously difficult to analyze. The Debtors established a team of over 50 highly qualified full-time employees to unwind the derivatives trades of the Bank Counterparties, each which had at least 5,000 open transactions with the Debtors as of September 15, 2008. For more than two years, this team has devoted substantial resources to gathering and collating trade data with respect to the Bank Derivatives Claims to determine and reconcile trade values and evaluate the validity of such claims. As part of the process, the team also engaged in extended discussions and negotiations with the Bank Counterparties.

7.    After an in-depth review of the Bank Derivatives Claims and following such negotiations with the Bank Counterparties, the Debtors, in consultation with their attorneys and the Creditors' Committee and its professionals, concluded that the Bank Derivatives Claims, if left unresolved, would result in protracted and very expensive litigation to fix and determine the valid and accurate amounts of the Bank Derivatives Claims. In an effort to avoid such extensive and costly litigation and to maximize and accelerate recoveries to creditors, the Debtors, in consultation with the Creditors' Committee, formulated and proposed a common settlement approach for the Bank Derivatives Claims pursuant to standardized, uniform and transparent principles and methodologies (the "Derivatives Framework"). I was the Debtors' primary representative in the formulation of the Derivatives Framework as well as in the negotiations with Bank Counterparties as to the resolution of their respective claims in amounts calculated pursuant to the Derivatives Framework. The Motion accurately describes the Derivatives Framework and the settlements reached with the Settled Counterparties at the Framework

Values.  The Debtors believe that the Derivatives Framework is a fair and reasonable method to resolve the enormously complex Bank Derivatives Claims.

8.       I have also been the primary representative for the Debtors in connection with negotiation of the Settlement Agreements.  I have reviewed the Settlement Agreements, and the Motion accurately reflects the terms of the Settlement Agreements.  The Debtors will realize multiple benefits as a result of the Settlement Agreements, including:

- The termination and withdrawal of BOA's appeal from the judgment entered by the Court reversing BOA's setoff of $500 million.  *See* BOA Settlement Agreement § 14.

- The return of approximately 71% of the set off funds (approximately $356 million) by BOA to LBHI plus interest.  *See* BOA Settlement Agreement § 5(b).

- The resolution of BOA's primary and guarantee derivatives claims in accordance with the Derivatives Framework, pursuant to which BOA has agreed to reduce its primary derivatives claims by approximately $2.4 billion and its corresponding derivatives guarantee claims against LBHI by approximately $2.1 billion (taking into account the permitted setoff under the agreement), for a total reduction of BOA's derivatives claims of approximately $4.5 billion.  *See* BOA Settlement Agreement § 6.

- The resolution of the Merrill Counterparties' primary and guarantee derivatives claims in accordance with the Derivatives Framework, pursuant to which the Merrill Counterparties have agreed to reduce their primary derivatives claims by approximately $1.5 billion and their corresponding derivatives guarantee claims against LBHI by approximately the same amount, for a total reduction of the Merrill Counterparties' derivatives claims of approximately $3 billion.  *See* Merrill Settlement Agreement § 4.

- The execution and delivery to the Debtors of plan support agreements from BOA and the Merrill Counterparties.  *See* BOA Settlement Agreement § 1(c); Merrill Settlement Agreement § 1(c).

9.       Significantly, the Settlement Agreements provide that the primary and guarantee derivatives claims of BOA and the Merrill Counterparties will be allowed at the Framework Values, which as noted is a substantial reduction from the filed amounts of such claims.  The

Framework Values are the product of months of extended discussions and negotiations between

the Debtors, certain of the Bank Counterparties and the Creditors' Committee.  The Creditors'

Committee was consulted and consented to each of the settlements with the eight Settled

Counterparties at the Framework Values.

10.     The BOA Transactions and the Merrill Transactions are highly speculative and

very sophisticated, complex financial transactions, the resolution of which, in the absence of the

Derivatives Framework, would entail extensive, protracted litigation that would likely delay and

reduce distributions to creditors.  At the time of the termination of the BOA Agreements and the

Merrill Agreements, the Lehman Entities and BOA and the Merrill Counterparties were parties,

respectively, to more than 22,000 BOA Transactions and 27,000 Merrill Transactions.  The

novelty of the underlying legal issues may swing values widely, with a risk that the primary and

guarantee derivatives claims of BOA and the Merrill Counterparties could be allowed in amounts

greatly in excess of the Framework Values.  The Settlement Agreements reduce such claims by

billions of dollars, which will enhance distributions to other creditors.  The Settlement

Agreements will also accelerate distributions to holders of allowed claims because the Debtors

will not have to provide large reserve amounts for such unresolved claims.

11.     BOA and the Merrill Counterparties expended considerable resources and time

negotiating the Framework Values and each has made material concessions by agreeing to the

reductions of the amounts previously asserted.  In recognition thereof, and in light of the fact that

certain other Bank Counterparties have not yet agreed to the allowance of their respective

Derivatives Claims at the Framework Values, consistent with settlement agreements with the

Settled Counterparties, the Debtors agreed to provide BOA and the Merrill Counterparties MFT

Protection to induce them to enter into the Settlement Agreements.  Such protection is a fundamental and critical component of the Derivatives Framework.

12.    The BOA Settlement Agreement also enables the Debtors to avoid the risks and costs associated with the Appeal.  I have consulted with the Debtors' management and employees and have also been advised by the Debtors' attorneys of the risks to the Debtors of the Appeal.  Although the Debtors believe that the Court's decision granting the Debtors summary judgment in the Adversary Proceeding should be affirmed, the results of litigation are never certain and further litigation (including the potential for a drawn out appellate process) necessarily will be time-consuming and costly to the Debtors.  The Debtors have already spent substantial amounts prosecuting the Adversary Proceeding.  The proposed BOA Settlement Agreement avoids continued litigation of the Appeal and eliminates the risks associated with that litigation while providing for a substantial guaranteed recovery to LBHI of over $356 million – more than 71% of the Account Balance – plus interest at the annual rate of (i) 2.84% (non-compounded) from November 10, 2008 through December 3, 2010 and (ii) 6 basis points from December 4, 2010 through the date of transfer to LBHI.  *See* BOA Settlement Agreement § 5(b).

13.    The resolution of the Appeal was also considered by the Debtors in the perspective of the global compromise and the recognition that the Settlement Agreements are integrated transactions.  During my negotiations with BOA and the Merrill Counterparties, it became clear that they would not make certain concessions that are reflected in the Settlement Agreements without concessions from the Debtors on other issues, including the Appeal.  In that context and in addition to the independent justifications for the various components of the Settlement Agreements, the Debtors concluded that the Settlement Agreements are fair, reasonable and in the best interests of the Debtors and all of their economic stakeholders.

14.     The Settlement Agreements were each negotiated over a period of several months, in good faith, and at arm's-length.  The settlements are not the product of fraud or collusion. Significant resources have been invested by the Debtors in evaluating all of the issues resolved by the Settlement Agreements.  The Debtors believe that the Settlement Agreements are sound exercises of business judgment that resolve highly complex issues and far outweigh the alternative of continuing the Appeal or objecting to the allowance of BOA's or the Merrill Counterparties' derivatives claims.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of September 2011.

/s/ Daniel Ehrmann
Daniel Ehrmann