08-13555-mg    Doc 20371    Filed 09/28/11    Entered 09/28/11 19:16:28    Main Document
                                         Pg 1 of 7

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                                                                    :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
:
Debtors.                       :    **(Jointly Administered)**
:
:
------------------------------------------------------------x

# DECLARATION OF ROBERT HERSHAN IN SUPPORT OF
# DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b)(1)
# OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO IMPLEMENT 2012
# DERIVATIVES INCENTIVE PROGRAM AND CERTAIN RELATED RELIEF

Pursuant to 28 U.S.C. § 1746, I, Robert Hershan, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated chapter 11 debtors (the "Debtors"), and/or my consultation with employees of the Debtors. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the Debtors' motion (the "Motion"), Pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, for Authorization to Implement the 2012 Derivatives Incentive Program and Certain Related Relief.[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

3. I am a Managing Director with Alvarez and Marsal. I was assigned to the Lehman matter on September 17, 2008. My primary areas of responsibility include managing all post-petition employment related matters of the Debtors and also managing a portfolio of the Debtors' derivatives transactions with counterparties that are special purpose entities. I have participated in the development of the Derivatives Incentive Plan, the modifications to the Retention and Recruitment Program with respect to derivatives employees and the Motion. I was also one of the primary representatives for the Debtors in the development and implementation of the Prior Derivatives Incentive Plans that were approved by the Court.

LAMCO

4. Pursuant to the authority granted by the Court to establish the LAMCO Entities, the members of the Derivatives Workforce were transferred to the LAMCO Entities on or about May 1, 2010. The members of the Derivatives Workforce continue to provide the same services and perform the same functions for the Debtors as they did prior to such transfer. The Debtors will be funding payments under the 2012 Incentive Plan to such LAMCO employees.

The Substantial Efforts of the Derivatives Workforce

5. The Derivatives Incentive Plan was developed by the Debtors primarily to maintain the momentum and the success the Debtors have realized in the ongoing wind down of the Debtors' derivatives businesses. Through the efforts of the Derivatives Workforce, as of August 30, 2011, the Debtors have recovered $1.4 billion in cash in 2011, bringing the total amount of cash recovered by the Debtors on account of their derivatives assets since September 15, 2008 to more than $13.6 billion. It is the opinion of the most senior members of the Debtors' management that the Derivatives Workforce continues to exceed expectations and the collective performance of the Derivatives Workforce has been exceptional.

6. On a day-to-day basis, among other things, the Derivatives Workforce gathers and collates trade data, determines and reconciles trade values, engages with counterparties to negotiate and recover payments or collateral, and reconciles derivatives claims against the Debtors. Given the unique nature of Lehman's derivative unwind activities, the Derivatives Workforce is being asked to perform and undertake tasks that are not normally performed in the derivatives marketplace. The Debtors do not believe that there are comparable entities either in or out of bankruptcy that are engaged in the unwind of a derivatives portfolio of the size and scale of the Debtors. Derivatives-related assets are the most significant assets of certain of the Debtors' estates. Accordingly, the Derivatives Workforce is subject to exceptional demands, complexities and pressures.

7. To perform these extremely complex tasks in an efficient fashion, the Debtors require the expertise of highly qualified individuals with in-depth knowledge of Lehman's pre-petition business and counterparties. Currently, approximately 56% of the Derivatives Workforce is made up of Lehman legacy employees and 93% of the workforce has been assisting the Debtors unwind their derivatives business for more than 12 months. These individuals have significant institutional knowledge and Lehman process knowledge and have developed a core understanding of Lehman's derivatives transactions and counterparties, which would make replacing them very difficult. The loss of key individuals with knowledge of the Debtors' derivatives assets and developed counterparty relationships causes delay and frustrates the Debtors' goals and objectives of maximizing the value of their derivatives businesses. In addition, with the general focus of the chapter 11 cases now being on confirmation of a chapter 11 plan and the Debtors having made significant progress on the collection of derivatives

receivables and review of derivatives claims, the Debtors believe there is a sense of uncertainty within the Derivatives Workforce regarding their continued employment with the Debtors.

8.  Although the Prior Derivatives Incentive Plans were not primarily structured as retention plans, nevertheless, they have helped the Debtors reduce attrition of the Derivatives Workforce and its attendant costs.  The attrition rate for the Derivatives Workforce in 2011 was an average of 1.5 voluntary terminations per month from an average of 5.5 voluntary terminations per month in 2009 prior to the inception of the 2010 Incentive Plan.

Development of the Derivatives Incentive Plan

9.  The description of the Derivatives Incentive Plan set forth in the Motion is true and accurate.  The Debtors have carefully selected the benchmarks set by the Derivatives Incentive Plan, which have been reviewed by the financial advisors to the Creditors' Committee and are consistent with the Prior Derivatives Incentive Plans, and believe that they are reasonably calculated to achieve the desired result of maximizing value for creditors.  The Debtors have set the benchmarks based upon their organizational goals, experience in these cases, the progress made to date, a review of their derivatives portfolio, including counterparties and risks associated with litigation, and an assessment of the size, qualification and performance to date of the Derivatives Workforce.  The Debtors also considered, to the extent relevant, certain market information.  The Debtors believe that the Derivatives Incentive Plan will enable them and the LAMCO Entities to compete with the compensation and prospect of long-term employment offered by their competitors taking into account the constraints of the Bankruptcy Code.

10.  The Derivatives Incentive Plan is constructed on the same principles as the Prior Derivatives Incentive Plans, which have been very successful in accomplishing the Debtors'

goals for their derivatives businesses. Like the Prior Derivatives Incentive Plans, the Derivatives Incentive Plan is designed to motivate and reward members of the Derivatives Workforce for their services to the Debtors that result in direct benefit to their stakeholders through recovery on, or preservation of, the Debtors' derivatives assets and mitigation of derivatives claims against the Debtors.

11. The criteria for contributions to the Derivatives Incentive Pool under the Derivatives Incentive Plan are also largely the same criteria as the 2011 Derivatives Incentive Plan. The Debtors have made certain modifications to the Derivatives Incentive Plan to reflect the evolution of these cases. For example, the Debtors recognize that the focus of the Derivatives Workforce in 2012 on reviewing and reconciling derivatives claims will continue to increase. Accordingly, the contribution to the Derivatives Incentive Pool for claims mitigation has been increased from 30 basis points to 40 basis points for claims mitigated (other than certain derivatives guarantee claims) in excess of $12.6 billion to further motivate the Derivatives Workforce.

12. The modifications do not, however, alter the underlying premise of the Derivatives Incentive Plan: to motivate and reward the Derivatives Workforce for value created or preserved on account of the Debtors' derivatives assets and claims. No payments will be made unless the specified performance metrics are satisfied. The Debtors believe that the total cost of the Derivatives Incentive Plan is reasonable and appropriate in the context and size of the Debtors' cases.

Modifications to the Retention and Recruitment Program

13. As described in the Motion, two modifications will be made to the Retention and Recruitment Program for derivatives employees. First, in 2012, other than the Lehman legacy

Derivatives Co-Head, unless a derivatives employee is terminated for cause, he or she will be entitled to receive their 2012 Contractual Bonus if he or she is employed by the estate through December 31, 2012 and provides satisfactory services to the Debtors in 2012 that are consistent with the level of effort and dedication put forth by such employee in prior years. Second, derivatives employees terminated without cause in 2012 will receive, in addition to their pro rated 2012 Contractual Bonus, 50% of their pro rated Contractual Bonus for the remaining commitment period.

14. The modifications to the Retention and Recruitment Program for derivatives employees are necessary to balance the Debtors' need to minimize disruption to their derivatives businesses from derivatives employee attrition with the Debtors' goal of incentivizing the members of the Derivatives Workforce to continue to excel at their highest and best levels in the wind down of the Debtors' derivatives businesses. In order to minimize the disruption that could be caused to the Debtors' businesses from attrition of the Derivatives Workforce and to continue to realize the best results from the Derivatives Workforce, after due consideration and discussions with the Creditors' Committee's financial advisors, the Debtors have determined that the modifications to the Retention and Recruitment Program are in their best interest.

No Participation by "Insiders"

15. Like the 2011 Derivatives Incentive Plan, none of the employees that are eligible for participation in the Derivatives Incentive Plan are officers, directors or persons in control of the Debtors or have extensive control over the Debtors or the LAMCO Entities that would afford them the opportunity for self-dealing in any respect. Also, as was the case with the Prior Derivatives Incentive Plans, no employee will make any decisions or have the ability to influence or control his or her incentive payment.

16. The Creditors' Committee must consent to the maximum allocations of all participants under the Derivatives Incentive Plan (such consent not to be unreasonably withheld).[2] The financial advisors to the Creditors' Committee have been apprised of the individuals that are eligible to participate in the Derivatives Incentive Plan and their maximum incentive allocation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of September 2011.

/s/ Robert Hershan
Robert Hershan

---

[2] As noted in various sections of the Motion, the Creditors' Committee has the right to consent to certain aspects of the Derivatives Incentive Plan and Retention and Recruitment Program, as modified. The Plan provides that the Creditors' Committee will be dissolved on the Effective Date other than for limited purposes. *See* Plan § 15.1(a). Accordingly, such consent of the Creditors' Committee will only be required for so long as the Creditors' Committee remains in existence.