# WACHTELL, LIPTON, ROSEN & KATZ

| | | | | |
|---|---|---|---|---|
| MARTIN LIPTON | STEPHANIE J. SELIGMAN | 51 WEST 52ND STREET | RACHELLE SILVERBERG | JOHN F. LYNCH |
| HERBERT M. WACHTELL | JOHN F. SAVARESE | NEW YORK, N.Y. 10019-6150 | DAVID C. BRYAN | WILLIAM SAVITT |
| BERNARD W. NUSSBAUM | SCOTT K. CHARLES | | STEVEN A. COHEN | ERIC M. ROSOF |
| LAWRENCE B. PEDOWITZ | DAVID S. NEILL | TELEPHONE: (212) 403-1000 | GAVIN D. SOLOTAR | MARTIN J.E. ARMS |
| PAUL VIZCARRONDO, JR. | JODI J. SCHWARTZ | FACSIMILE:  (212) 403-2000 | DEBORAH L. PAUL | GREGORY E. OSTLING |
| PETER C. HEIN | ADAM O. EMMERICH | | DAVID C. KARP | DAVID B. ANDERS |
| HAROLD S. NOVIKOFF | GEORGE T. CONWAY III | | RICHARD K. KIM | ADAM J. SHAPIRO |
| KENNETH B. FORREST | RALPH M. LEVENE | GEORGE A. KATZ (1965-1989) | JOSHUA R. CAMMAKER | NELSON O. FITTS |
| MEYER G. KOPLOW | RICHARD G. MASON | JAMES H. FOGELSON (1967-1991) | MARK GORDON | JEREMY L. GOLDSTEIN |
| THEODORE N. MIRVIS | DOUGLAS K. MAYER | | JOSEPH D. LARSON | JOSHUA M. HOLMES |
| EDWARD D. HERLIHY | MICHAEL J. SEGAL | OF COUNSEL | LAWRENCE S. MAKOW | DAVID E. SHAPIRO |
| DANIEL A. NEFF | DAVID M. SILK | | JEANNEMARIE O'BRIEN | DAMIAN G. DIDDEN |
| ERIC M. ROTH | ROBIN PANOVKA | WILLIAM T. ALLEN      ERIC S. ROBINSON | WAYNE M. CARLIN | ANTE VUCIC |
| ANDREW R. BROWNSTEIN | DAVID A. KATZ | PETER C. CANELLOS     PATRICIA A. ROBINSON* | JAMES COLE, JR. | IAN BOCZKO |
| MICHAEL H. BYOWITZ | ILENE KNABLE GOTTS | DAVID M. EINHORN      LEONARD M. ROSEN | STEPHEN R. DiPRIMA | MATTHEW M. GUEST |
| PAUL K. ROWE | DAVID M. MURPHY | THEODORE GEWERTZ     MICHAEL W. SCHWARTZ | NICHOLAS G. DEMMO | DAVID E. KAHAN |
| MARC WOLINSKY | JEFFREY M. WINTNER | RICHARD D. KATCHER   ELLIOTT V. STEIN | IGOR KIRMAN | DAVID K. LAM |
| DAVID GRUENSTEIN | TREVOR S. NORWITZ | THEODORE A. LEVINE    WARREN R. STERN | JONATHAN M. MOSES | BENJAMIN M. ROTH |
| STEPHEN G. GELLMAN | BEN M. GERMANA | ROBERT B. MAZUR       PATRICIA A. VLAHAKIS | T. EIKO STANGE | JOSHUA A. FELTMAN |
| STEVEN A. ROSENBLUM | ANDREW J. NUSSBAUM | PHILIP MINDLIN         J. BRYAN WHITWORTH | DAVID A. SCHWARTZ | |
| | | ROBERT M. MORGENTHAU  AMY R. WOLF | | |

* ADMITTED IN THE DISTRICT OF COLUMBIA

COUNSEL

MICHELE J. ALEXANDER    NANCY B. GREENBAUM
LOUIS J. BARASH         MAURA R. GROSSMAN
DIANNA CHEN             IAN L. LEVIN
ANDREW J.H. CHEUNG      J. AUSTIN LYONS
PAMELA EHRENKRANZ       AMANDA N. PERSAUD
ELAINE P. GOLIN         HOLLY M. STRUTT
PAULA N. GORDON

DIRECT DIAL: (212) 403-1208
DIRECT FAX: (212) 403-2208
E-MAIL: PVizcarrondo@WLRK.com

October 4, 2011

**BY HAND**

The Honorable James M. Peck
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:    *In re Lehman Bros. Holdings Inc. et al.*, No. 08-13555 (Bankr. S.D.N.Y.)

Dear Judge Peck:

      We represent JPMorgan Chase Bank, N.A. ("JPMorgan") in the above-captioned chapter 11 case and related litigation. As stated in our letter of September 30, 2011, we write with respect to a discovery dispute between Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), and other LBHI chapter 11 debtor-subsidiaries (collectively, the "Debtors") and Nomura. We share Nomura's interest in ensuring that the Debtors provide the holders of derivatives claims to which the Debtors object with highly material and relevant information — uniquely in the possession of the Debtors — regarding the termination and close-out of derivatives transactions.

      The Debtors have objected to Nomura's derivatives claims on the basis that, among others, Nomura's terminations and close-outs were not "commercially reasonable," as such term is used in the definition of "Close-out Amount" in the ISDA 2002 Master Agreement

Hon. James M. Peck
October 4, 2011
Page 2

(an industry-standard agreement). As we noted in our September 30 letter, JPMorgan expects the Debtors to raise similar objections to JPMorgan's derivatives claims against LBSF and several other Debtors, claims that were guaranteed by LBHI. In their dispute with Nomura, the Debtors have refused to provide basic information about how other counterparties closed out derivatives trades with the Debtors after LBHI commenced its chapter 11 case.

This information is uniquely in the Debtors' possession. As this Court is aware, the Debtors obtained an order from this Court requiring that each derivatives claimant file, in addition to a usual proof of claim, a "Derivatives Questionnaire" containing detailed, transaction-by-transaction information regarding the close-outs of their derivatives transactions with the Debtors and the calculation of their claims.[1] Unlike proofs of claim, however, the derivatives questionnaires and the related information, as well as any other information about the derivatives close-outs in the Debtors' possession, are not available to the holders of disputed claims.

Though few courts have defined what "commercially reasonable" means in the context of ISDA Master Agreements, consideration of whether a counterparty acted in a commercially reasonable manner must, at the very least, include the practices of other market participants in similar situations and conditions. The Lehman situation is clearly unique — there has never before been a failure of a major derivatives dealer and the market conditions during the week of September 15, 2008 were extraordinary — so the information in the Debtors' possession regarding the close-outs of the Debtors' derivatives transactions by other major counterparties is not only material and relevant; there is no substitute.

Thus, the Debtors currently have an inequitable informational advantage over the holders of derivatives claims. For example, so long as the Debtors are in sole possession of the derivatives close-out information, they can cherry-pick the data that favor their arguments and disregard the data that support the disputed claims. They certainly have no incentive to bring to the Court's attention any information that may undermine their arguments. With tens of thousands of transactions to pick from, it is inevitable that the Debtors will be able to find at least some close-out information that they will claim supports their position even if a fair presentation of the information would reveal that other — or even more — evidence contradicts their

---

[1] *See* Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form at 10-11 (asking the Court to required counterparties to submit this questionnaire so that Debtors can "efficiently evaluate the accuracy and validity of [counterparties'] claim amounts") [D.I. 3654]; Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [D.I. 4271].

Hon. James M. Peck
October 4, 2011
Page 3

position. Without access to such information, the holders of disputed derivatives claims will be severely handicapped in responding to such an unbalanced attack by the Debtors.

Moreover, it is no answer for the Debtors to say that they will only produce the information if they intend to use it. All of this information is material, relevant and unique, and a decision by the Debtors not to use the information is a strong indicator that it undermines their position. In any event, the Debtors should not be the arbiters of the use of this information; regardless of whether or not they choose to use the information, JPMorgan and other claimants are entitled to examine it and determine whether they want to use it in opposing the Debtors' objections. It is certainly not a valid basis for the Debtors to withhold from the claimants material, relevant and unique information simply because the Debtors and their experts have determined that that information does not support the Debtors' arguments.

Accordingly, JPMorgan respectfully asks this Court to grant the relief that Nomura seeks regarding counterparties' derivatives terminations and close-outs. If the Court determines to schedule a hearing or conference on the matter, JPMorgan requests an opportunity to be heard.

Respectfully submitted,

*Paul Vizcarrondo Jr./ecb*

Paul Vizcarrondo, Jr.