WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
William A. Maher
Paul R. DeFilippo

Attorneys for Plaintiff

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.,*<br><br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |
| ROSSLYN LB SYNDICATION PARTNER LLC,<br><br>Plaintiff,<br>v.<br><br>USREO/ROSSLYN INVESTORS, LLC<br><br>Defendant. | Adversary Proceeding<br>No. 11-_____ (___)<br><br>**COMPLAINT** |

Plaintiff Rosslyn LB Syndication Partner LLC ("Plaintiff"), for its complaint against Defendant USREO/Rosslyn Investors, LLC ("Defendant"), alleges with knowledge as to its own actions, and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1.  This action arises out of Defendant's unjustified repudiation and termination of an approximately $1.257 Billion transaction related to an office building portfolio in Arlington, Virginia. Under the agreed transaction, Plaintiff, a non-debtor subsidiary of Lehman Brothers Holdings Inc. ("LBHI") and its affiliate, Lehman Commercial Paper Inc.

("LCPI") as debtors and debtors in possession in the above-captioned Chapter 11 Case, was to sell its interests in a limited partnership to Defendant, an affiliate of Goldman Sachs & Co. This Court specifically approved of the proposed transaction on August 17, 2011, finding that it was "in the best interests of the Debtors, their respective estates and creditors, and all parties in interest."

2. Two days before the transaction was scheduled to close, however, Defendant repudiated and unilaterally terminated the parties' purchase agreement based on pretextual reasons. Defendant's unilateral (and groundless) termination of the agreement was wrongful since it prevented Plaintiff from exercising its express contractual right to extend the closing date if necessary for 15 days to satisfy any deficiencies and unsatisfied conditions to closing the transaction. Defendant's breach relieved Plaintiff from the obligation to satisfy any of the alleged unsatisfied conditions, and Defendant's obligations (which it failed to perform) are absolute. Accordingly, Plaintiff seeks liquidated damages in the amount of $100,000,000.00 as a result of defendant's breach, a declaratory judgment, and (alternatively) specific performance of the parties' agreement.

## PARTIES

3. Plaintiff Rosslyn LB Syndication Partner LLC is a Delaware limited liability company with its principal place of business in New York, New York. Plaintiff is a non-debtor subsidiary of LBHI and its affiliate, LCPI.

4. Defendant USREO/Rosslyn Investors, LCC is a Delaware limited liability company with a principal place of business in New York, New York. Defendant is a subsidiary or affiliate of U.S. Real Estate Opportunities I, L.P., a joint venture in which Goldman Sachs & Co. is the general partner.

2

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 157(c) because this adversary proceeding and the claims asserted by Plaintiffs arise under, arise in and/or relate to the Chapter 11 proceedings of the above-captioned Debtors Lehman Brothers Holdings, Inc. *et al.*, wherein this Court entered an Order [ECF No. 19316], dated August 17, 2011 (the "Approval Order"), approving the sale of Plaintiff's interest in Rosslyn Syndication Partners JV LP as being "in the best interests of the Debtors, their respective estates and creditors, and all parties in interest," and retaining jurisdiction "with respect to all matters arising from or related to the implementation of [that] Order." Defendant consented to entry of the Approval Order and to this Court's retention of jurisdiction as provided therein. Pursuant to the standing order of reference of the United States District Court for the Southern District of New York, dated July 10, 1984, all proceedings arising in, arising under and/or related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and pursuant to 28 U.S.C. 1409(a) because this adversary proceeding and the claims asserted by Plaintiffs arise in and/or relate to the Chapter 11 proceedings of Debtors Lehman Brothers Holdings, Inc. *et al.*, Chapter 11 Case No. 08-13555 (JMP). In addition, the parties have agreed that venue of any matter concerning the enforcement of the parties contracts should lie exclusively in the courts of New York.

**RELEVANT FACTS**

A. **The Purchase Agreement**

7. On August 16, 2011, Plaintiff (as "Seller") and Defendant (as "Buyer") entered into a Purchase and Sale Agreement (the "Purchase Agreement") for the sale of Plaintiff's 78.481% partnership interest in Rosslyn Syndication Partners JV LP (the "Partnership"). The Purchase Agreement is attached hereto as Exhibit A.[1] The primary asset of the Partnership is a 3,000,000 million square foot, 10-property office building portfolio in Arlington, Virginia.

8. On August 17, 2011, this Court granted the motion of LBHI and LCPI and their affiliated debtors in the above-captioned Chapter 11 case as debtors and debtors-in-possession (the "Debtors"), pursuant to Sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") for authority to authorize Plaintiff (their non-Debtor subsidiary) to enter into the Purchase Agreement.

9. Pursuant to Section 3.1(i) of the Purchase Agreement, Defendant made an "Initial Deposit" of $66,000,000.00 with First American Title National Commercial Services (the "Escrow Agent"). Pursuant to Section 10.1 of the Purchase Agreement, Defendant also made an "Additional Deposit" of $34,000,000.00 with the Escrow Agent. Such funds (collectively defined as the "Deposit") are presently in the custody or possession of the Escrow Agent.

10. Section 10.1 of the Purchase Agreement provides that the "Closing Date" for the purchase and sale transaction was to be twenty business days after the Bankruptcy Court approved the transaction. The Bankruptcy Court approved the transaction on August 17, 2011. Pursuant to Section 10.1, Defendant exercised its right to a "one-time right to extend the Scheduled Closing Date to October 6, 2011."

---

[1] The Purchase Agreement's voluminous schedules are not annexed as part of Exhibit A.

4

11.     With respect to the Closing Date, Section 16.10 of the Purchase Agreement provides that "[t]ime is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that TIME IS OF THE ESSENCE with respect to any date set out in this Agreement."

12.     The Purchase Agreement also provides Plaintiff with its own contractual right to extend the scheduled Closing Date. Specifically, the Agreement provides that Plaintiff "shall be permitted to extend the Closing Date for any period of time up to fifteen (15) days in the aggregate . . . in order to satisfy any of the conditions [to closing]." As discussed below, prior to the extended Closing Date, Defendant unilaterally repudiated and "terminated" the Purchase Agreement altogether based on purported unspecified failures of conditions without "permit[ting] [Plaintiff] to extend the Closing Date . . . in order to satisfy any of those conditions."

### B.     Defendant's Repudiation of the Purchase Agreement

13.     Despite the parties having discussed final closing logistics as recently as October 3, 2011 and without any prior notice (or even suggestion) to Plaintiff, on October 4, 2011 – just two days before the scheduled Closing Date – Defendant unilaterally "terminate[d] the Purchase Agreement" and asserted that Plaintiff had "failed to satisfy the condition precedent to [Defendant's] obligation to close." Defendant further demanded that the Escrow Agent refund Defendant's Deposit of $100,000,000.00. Defendant's actions constitute a repudiation and material breach of the Purchase Agreement. A copy of Defendant's notice of termination of the Purchase Agreement is attached hereto as Exhibit B.

14.     Defendant purported to justify its right to "terminate[]" on the ground that "the estoppel certificates that have been delivered by [property tenants] Boeing, Northrop Grumman, Raytheon, APA, and Arlington County are not in compliance with the requirements

5

of Section 9.1.5" of the Purchase Agreement.  In addition, Defendant purported to justify its contention that Plaintiff failed "to satisfy the condition precedent" to closing on the ground that "1812 Holdings, LLC and Monday Properties Services, LLC are parties to that certain Property Management and Leasing Agreement, dated October 16, 2007 (the '1812 Management Agreement'), which . . . was not disclosed on Schedule 7.3.11 to the Purchase Agreement," and Defendant "regards" this non-disclosure "to be a material breach of the Partnership's representations contained in Section 7.3.11 of the Purchase Agreement."

15.     As discussed below, Defendant's purported justifications for its repudiation are entirely pretextual and a blatant attempt to avoid its contractual obligations. Moreover, Defendant's unilateral termination of the Purchase Agreement prevented Plaintiff from exercising its express contractual right to adjourn the Closing Date for up to 15 days to allow Plaintiff the opportunity to satisfy any purportedly unsatisfied conditions to closing, and constitutes a default under the Purchase Agreement.

### C.  Defendant Breached the Purchase Agreement by Preventing Plaintiff from Satisfying any Purportedly Unsatisfied Conditions

16.     Assuming *arguendo* that the alleged discrepancies in the estoppel certificates or the omission of the 1812 Management Agreement could conceptually support a termination or excuse Defendant's performance (they cannot, for reasons discussed below), they are, by the plain terms of the Purchase Agreement, condition failures that are subject Plaintiff's *right to extend the Closing Date for 15 days to satisfy unsatisfied conditions to closing*. Defendant's repudiatory termination, however, *prevented* Plaintiff from exercising its right to extend the Closing Date for 15 days and thus *caused* the non-occurrence of the conditions.  As a result, the conditions to closing are *excused* and Defendant's duty to perform (by purchasing the Partnership interests ) is absolute and unconditional.

6

17. Section 9.1.15 of the Purchase Agreement provides that Plaintiff's "failure to satisfy [a condition to closing] shall not be deemed to be a default hereunder . . . but rather, same shall merely be a failure of a condition to Closing, in which event Purchaser's sole remedy . . . shall be to (i) waive such condition(s) as provided above, or (ii) terminate this Agreement and receive a refund of the Deposit." Nevertheless, Section 9.1.15 also provides that before Defendant may exercise its right to terminate, Plaintiff "*shall be permitted* to extend the Closing Date for any period of time up to fifteen (15) days in the aggregate in order to satisfy any of the conditions set forth in . . . Section 9.1." Both of the conditions Defendant alleges that Plaintiff failed to satisfy are "conditions set forth in . . . Section 9.1" – *i.e.*, Section 9.1.2 ("Representations and Warranties") and Section 9.1.5 ("Tenant Estoppels").

18. Defendant does not concede that it failed to satisfy any conditions to closing. Indeed, as late as October 3, 2011, the parties were working cooperatively on the mechanics for effectuating the closing. Defendant's repudiation and termination constitutes a material breach of Section 9.1.15 of the Purchase Agreement. Due to Defendant's breach, Plaintiff is prevented from exercising its right to extend the closing date to satisfy any allegedly unsatisfied conditions. Defendant's material breach thus *caused* the non-occurrence of the conditions. As a result, the conditions to closing are *excused* and Defendant's duty to perform its obligations under the Purchase Agreement is absolute and unconditional.

**D.  Defendant Breached the Purchase Agreement by Failing
to Consummate the Transaction on the Closing Date**

19. Because all conditions precedent to the closing of the transaction were satisfied as of the Closing Date, Section 10.3 of the Purchase Agreement obligated Defendant to perform the following at the closing: (i) "execute, acknowledge (if necessary) and deliver originals of" the Assignment of Partnership Interests; (ii) "deliver the balance of the Purchase

7

Price payable at Closing"; and (iii) pay all costs allocated to [Defendant] pursuant to Section 10.5." On the Scheduled Closing Date, however, Defendant failed to perform *any* of its closing obligations.

### E. Plaintiff's Remedies

20. Section 12.5 of the Purchase Agreement provides that "[i]f, because of a default by Purchaser, Purchaser fails to consummate the purchase of the Partnership Interests on the Closing Date or fails to perform any of its other covenants or obligations hereunder when performance is required on or prior to the Closing Date, then Seller as its sole and exclusive remedy shall be entitled to terminate this Agreement by giving written notice thereof to Purchaser prior to or at the Closing and to retain the Deposit . . . as liquidated damages."

21. Defendant has materially breached the Purchase Agreement by its repudiation and unauthorized termination of the same. Because Defendant terminated the Purchase Agreement, it "fail[ed] to consummate the purchase of the Partnership Interests." Accordingly, Plaintiff's are entitled to retain the Deposit of $100,000,000.00.

22. Defendant's repudiation of the Purchase Agreement has also prevented Plaintiff from exercising its right to terminate the Purchase Agreement. Thus, to the extent Plaintiff's notification of termination is deemed a condition precedent to retaining the Deposit as liquidated damages, such condition has been excused as a result of Defendant's prevention of its occurrence.

### F. The Estoppel Certificates Do Not Allow Termination or Excuse Defendant's Performance in the First Place

23. Section 9.1.5 of the Purchase Agreement provides that Defendant is to receive "estoppel certificates" in a form specified in Schedule 9.1.5(A) of the Agreement executed by certain tenants of the properties owned by the Partnership. Specifically, Defendant

8

was to receive estoppel certificates from "(i) the private sector tenants identified in Schedule 9.1.5(B) . . . as 'Major Tenants'" and (ii) certain other tenants identified in Schedule 9.1.5(B) as "Non-Major Tenants." If any of the estoppel certificates from a "private sector tenant" "contain any material and adverse qualifications or modifications to the form attached . . . as Schedule 9.1.5(A)," then Defendant may "elect to terminate [the Purchase] Agreement and receive and immediate return of the Deposit." Defendant was required to provide contractual notice to Plaintiff within 5 business days of receipt of an estoppel certificate whether it claimed such certificate was deficient.

24. One of the estoppel certificates Defendant relied on for its purported right to terminate the Purchase Agreement was not from a "private sector tenant." Instead, it was from a *public* sector tenant, named on the certificate as the "County Board of Arlington County, Virginia, *a body politic*." Thus, any non-conformance in this tenant's estoppel certificate cannot support a right to terminate.

25. Section 9.1.5 of the Purchase Agreement also provides that "if Purchaser fails to object to a Requisite Tenant Estoppel Certificate within five (5) Business Days after Purchaser's receipt thereof from the Partnership or a Property Owning Subsidiary, Purchaser shall be deemed to have approved such Requisite Tenant Estoppel Certificate." Under Section 14.1, any such objections "must be in writing and must be given [in a specified manner of delivery] to all parties referenced in Section 14.3".

26. The estoppel certificate of APA, was delivered to Defendant on September 1, 2011, the estoppel certificate of Boeing was delivered on September 19, 2011, and the estoppel certificate of Raytheon was delivered to Defendant on September 26, 2011. Defendant did not make a written objection to those estoppel certificates until October 4, 2011 – more than

9

five business days after it received them. And even that written objection was not given to the Partnership, as required by Section 14.1. Thus, Defendant is "deemed to have approved" such estoppel certificates and cannot rely on any deficiencies in their form as a ground to "terminate" the Purchase Agreement.

27. Finally, the variations in the estoppel certificate of Northrop Grumman are simply not material.

**G.    Likewise, the 1812 Management Agreement Does Not
Allow Termination or Excuse Performance**

28. Under Section 7.3.11 of the Purchase Agreement, the Partnership represented and warranted that:

> Except for the contracts entered into by the Owner Entities ("Contracts") referenced on Schedule 7.3.11 and any Non-Material Contracts (hereafter defined), there are no currently outstanding contracts for construction or architecture, employment, parking, maintenance, management, leasing or brokerage services, service, or supply in effect (other than purchase orders) that will bind any Owner Entity after Closing. The Partnership has provided Purchaser with true, complete and correct copies of all Contracts (other than Non-Material Contracts), including all amendments and modifications thereof, prior to the execution and delivery of this Agreement by Purchaser and Seller.

29. Notwithstanding this provision, Section 12.1 of the Purchase Agreement provides that:

> if [Plaintiff] or the Partnership has delivered or made available to [Defendant] information in a due diligence website or "war room' or as set forth in tenant estoppel certificates at any time prior to the Closing, and such information is inconsistent with any of the representations and warranties herein and/or indicate that any such representations and warranties were not true when made, [Defendant] shall be deemed to have actual knowledge of such misrepresentation and shall give notice of same to the Defaulting Party within ten (10) days after the date on which [Defendant] shall have been deemed to have acquired such knowledge and the Defaulting Party shall have fifteen (15) days from the receipt of such notice to cure same. . . . Notwithstanding the foregoing, if Purchaser fails to give the Defaulting Party notice of a breach or default or misrepresentation within ten (10) days after the date on which the Purchaser Knowledge Party acquired (or was deemed to acquire) actual knowledge of same, Purchaser shall be deemed to have waived its right to terminate this Agreement on account of

10

such breach or default or misrepresentation.

30. On September 26, 2011, Plaintiff informed Defendant that a copy of one (and only one) contract was inadvertently not provided in the due diligence website maintained with respect to the transaction contemplated by the Purchase Agreement. The underwriting model and the marketing book for the transaction were delivered to Defendants as early as June 3, 2011. These materials clearly set forth the economic terms of the 1812 Management Agreement. Moreover, by referencing the economic terms of the 1812 Management Agreement, these materials were "inconsistent with" the Partnership's representation and warranty that it provided copies of all contracts to Defendant. Thus, at the latest, on the date the Purchase Agreement was executed (August 16, 2011), Defendant was "deemed to have actual knowledge of" the fact that a copy of the 1812 Management Agreement was not provided. Because Defendant did not provide any form of notice of this supposed default until October 4, 2011 (more than 10 days after August 16, 2011), it is "deemed to have waived its right to terminate this Agreement on account of such breach or default or misrepresentation."

31. Moreover, Defendant acknowledged that it "acquired actual knowledge on September 26, 2011" of the supposed omission. Yet it has *never* provided notice to the "Defaulting Party," in this case, the *Partnership*. Defendant's October 4, 2011 letter is addressed only to Plaintiff and others, but is *not* addressed to the *Partnership*. For this additional reason, Defendant is also "deemed to have waived its right to terminate this Agreement on account of such breach or default or misrepresentation."

32. Finally, the purported failure to provide a copy of the 1812 Management Agreement is simply not material.

11

## COUNT I
**(Breach of Contract)**

33. Plaintiff repeats and realleges each of the allegations contained in the previous paragraphs above as if fully set forth herein.

34. Plaintiff and Defendant entered into the Purchase Agreement.

35. The Purchase Agreement is a valid and binding contract.

36. Plaintiff has performed its obligations under the Purchase Agreement.

37. Defendant breached the Purchase Agreement as alleged herein.

38. Defendant has breached the implied duty of good faith and fair dealing.

39. Plaintiff has suffered and/or will, in the future, suffer damages as a result of Defendant's breach.

40. Plaintiff is entitled to liquidated damages in the amount of $100,000,000.00 as a result of Defendant's breach.

## COUNT II
**(Declaratory Judgment)**

41. Plaintiff repeats and realleges each of the allegations contained in the previous paragraphs above as if fully set forth herein.

42. Plaintiff and Defendant entered into the Purchase Agreement.

43. The Purchase Agreement is a valid and binding contract.

44. Plaintiff has performed its obligations under the Purchase Agreement.

45. Defendant breached the Purchase Agreement as alleged herein.

46. Defendant has breached the implied duty of good faith and fair dealing.

47. Plaintiff has suffered and/or will, in the future, suffer damages as a result of Defendant's breach.

48. Plaintiff is entitled to a declaration that:

      a.      Defendant has breached the Purchase Agreement;

      b.      Defendant has no right to recover the Deposit; and

      c.      the Escrow Agent should deliver the Deposit to Plaintiff.

## COUNT III
### (Specific Performance)

49.    Plaintiff repeats and realleges each of the allegations contained in the previous paragraphs above as if fully set forth herein.

50.    Plaintiff and Defendant entered into the Purchase Agreement.

51.    The Purchase Agreement is a valid and binding contract.

52.    Plaintiff has performed its obligations under the Purchase Agreement.

53.    Defendant breached the Purchase Agreement as alleged herein.

54.    Defendant has breached the implied duty of good faith and fair dealing.

55.    Plaintiff has suffered and/or will, in the future, suffer damages as a result of Defendant's breach.

56.    In the event the liquidated damages clause of the Purchase Agreement is deemed invalid or inapplicable, Plaintiff will have no adequate remedy at law.

57.    In the event the liquidated damages clause of the Purchase Agreement is deemed invalid or inapplicable, Plaintiff is entitled to an order that Defendant specifically perform its obligations under the Purchase Agreement.

## COUNT IV
### (Attorneys Fees)

58.    Plaintiff repeats and realleges each of the allegations contained in the previous paragraphs above as if fully set forth herein.

59.    Section 16.14 of the Purchase Agreement provides that "[i]n the event either party is required to resort to litigation to enforce its rights under this Agreement, the

prevailing party in such litigation will be entitled to collect from the other party all reasonable costs, expenses and attorneys' fees incurred in connection with such action."

60. As a result of Defendant's breaches of contract, Plaintiff was required to initiate this proceeding to enforce its rights under the Purchase Agreement.

61. Accordingly, Plaintiff is entitled to an award of costs, expenses and attorneys' fees incurred in connection with this proceeding.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. On Count I, liquidated damages in the amount of $100,000,000.00;

B. On Count II, a declaration that (i) Defendant has breached the Purchase Agreement; (ii) Defendant has no right to recover the Deposit; and (iii) the Escrow Agent should deliver the Deposit to Plaintiff;

C. On Count III, an order that Defendant specifically perform its obligations under the Purchase Agreement;

D. On Count IV, and award of costs, expenses and attorneys' fees incurred in connection with this proceeding; and

        E.        On all Counts, such other and further relief that the Court deems just and proper.

Dated:   New York, New York,
              October 6, 2011

                        Respectfully submitted,

                        WOLLMUTH MAHER & DEUTSCH LLP


                        By:      /s/ William A. Maher
                              William A. Maher
                              (wmaher@wmd-law.com)
                              Paul R. DeFilippo
                              (pdefilippo@wmd-law.com)
                              William F. Dahill
                              (wdahill@wmd-law.com)
                              Randall R. Rainer
                              (rrainer@wmd-law.com)
                              Michael P. Burke
                              (mburke@wmd-law.com)


500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Plaintiff*

15