# EXHIBIT D

## SETTLEMENT AGREEMENT

AGREEMENT dated as of December 5, 2008 among JPMORGAN CHASE BANK, N.A. ("JPMorgan"), BARCLAYS CAPITAL INC. ("BarCap"), and JAMES W. GIDDENS, AS TRUSTEE ("Trustee") IN THE SECURITIES INVESTOR PROTECTION ACT ("SIPA") LIQUIDATION OF LEHMAN BROTHERS INC. ("LBI") (JPMorgan, BarCap and Trustee each a "Party" and collectively the "Parties").

### Background

A.  BarCap was asked by the Federal Reserve Bank of New York (the "Fed") and agreed to purchase a group of securities that had, as of the evening of September 17, 2008, been pledged by LBI to the Fed (the "Fed Portfolio") by entering into a reverse repurchase transaction with LBI in which BarCap would fund $45 billion to LBI for the Fed Portfolio (such reverse repurchase transaction, the "Replacement Transaction").

B.  On September 18, 2008, much of the Fed Portfolio was transferred to BarCap by LBI through JPMorgan, as clearing bank, against payment of $45 billion by BarCap to LBI, but the Fedwire and Depository Trust Company ("DTC") services closed for the day before the Replacement Transaction could be completed.

C.  The securities required to complete the Replacement Transaction were not delivered to BarCap before the commencement of LBI's SIPA liquidation (the "SIPA Proceeding") on September 19, 2008. JPMorgan asserts that a portion of the undelivered Fed Portfolio securities is currently in certain LBI accounts against which JPMorgan asserts it has liens (such Fed Portfolio securities as listed on Annex A hereto, the "Settlement Consideration Fed Portfolio Securities"), while the remaining portion of the undelivered Fed Portfolio securities were liquidated by JPMorgan and, thus, are no longer available for delivery.

D.  JPMorgan and BarCap agree that $7 billion was transferred by LBI to an account at JPMorgan early on the morning of September 19, 2008 as a result of the fact that not all of the Fed Portfolio securities were delivered to BarCap under the Replacement Transaction (the "Subject Funds"). Thereafter, the Subject Funds were moved by JPMorgan into what JPMorgan asserts is an LBI account. This resulted in BarCap no longer having the benefit of either the Subject Funds or the securities required to complete the Replacement Transaction. BarCap asserts that the Subject Funds were moved from the account at JPMorgan without its prior knowledge or consent, that BarCap is the owner of the Subject Funds and that BarCap is entitled to $7 billion in cash or securities of equivalent value. JPMorgan asserts that it properly moved the Subject Funds and properly applied the Subject Funds in reduction of advances JPMorgan asserts it made to LBI under a clearance agreement (including without limitation any advance made by JPMorgan to LBI to fund the payment of the Subject Funds) (all such actual outstanding advances, the "Advances").

E.  When BarCap and LBI agreed to engage in the Replacement Transaction, it was BarCap's and LBI's intention that the securities in the Fed Portfolio would be included in "Purchased Assets" as defined in the Asset Purchase Agreement dated as of September 16, 2008,

CONFIDENTIAL

Exhibit
Kaplan-13
Jane Rose Reporting
1-800-825-3341

JPM-LBHI02123906

as amended (the "Asset Purchase Agreement"), which Asset Purchase Agreement was authorized and approved by an order of the court (the "Bankruptcy Court") presiding over LBI's SIPA liquidation case on September 20, 2008. Because LBI had failed to finish delivering to BarCap the securities that had been part of the Fed Portfolio, the inclusion of such undelivered securities as "Purchased Assets" under the Asset Purchase Agreement was not possible. Consequently, the securities listed on Schedule A to the Clarification Letter dated as of September 20, 2008 (the "Clarification Letter"), which was entered into in connection with the Asset Purchase Agreement and filed with the bankruptcy court presiding over the bankruptcy cases of Lehman Brothers Holdings Inc. and certain of its affiliates on September 22, 2008, include only the securities that actually had then been delivered by LBI to BarCap on September 18, 2008 (the "Delivered Securities") and do not include the portion of the Fed Portfolio securities that had not been delivered by that time.

F.    JPMorgan, BarCap and Trustee desire to provide for the resolution of their disputes on the terms and conditions set forth below.

**THEREFORE, IT IS AGREED:**

Terms and Conditions

1.    Transfers to BarCap. At the Effective Time (as defined below), JPMorgan shall transfer to BarCap, from securities and cash that were in the LBI clearance account with JPMorgan on the close of business on September 19, 2008 (but in any event excluding any securities and cash in customer or segregated accounts or accounts bearing the name of a customer on the close of business on September 19, 2008), and proceeds of such securities (collectively, the "Specified Property Pool"):

(a)    $1.25 billion in immediately available funds by wire transfer to BarCap in accordance with the following wire instructions (the "Cash Wire Instructions"):

ABA # 021000018
BK OF NYC
Account Number: GLA111569
Name: BZW
Ref: Barclays Capital, Attn John Rodefeld

(b)    $14,942,677.88 in immediately available funds by wire transfer to BarCap in accordance with the Cash Wire Instructions (representing principal and interest payments, and any other distributions, on the Delivered Securities attributable to the period on and after September 18, 2008 which were received in LBI and/or JPMorgan accounts and not heretofore paid to BarCap), plus interest accrued thereon from the time of receipt to the time of payment at the effective fed funds rate from time to time during such period, and

(c)    (x)(A) The Settlement Consideration Fed Portfolio Securities to BarCap in accordance with the Securities Wire Instructions at the end of this Section 3(c), together with (B) all principal and interest payments and any other distributions on the Settlement Consideration Fed Portfolio Securities (including, without limitation, the proceeds at

2

maturity of any securities) attributable to the period on and after September 18, 2008, and (y) $7,103,500 in immediately available funds by wire transfer to BarCap in accordance with the Cash Wire Instructions (representing the proceeds of certain Fed Portfolio securities that initially were understood to be among the Settlement Consideration Fed Portfolio Securities but in fact have been liquidated by JPMorgan), plus, in the case of each of (x)(B) and (y), interest accrued thereon from the time of receipt to the time of payment at the effective fed funds rate from time to time during such period (such funds, interest and securities described in clauses (a), (b) and (c) collectively, the "Settlement Consideration"). The Securities Wire Instructions are:

> Fed Eligible Securities Wire Instructions
> ABA # 021000018
> BK OF NYC/BARCLAYS
>
> DTC Eligible Securities Wire Instructions
> DTC 7256

As between JPMorgan and the Trustee only, the cash amounts paid to BarCap pursuant to this Section 1 shall, to the extent that JPMorgan has a valid and first priority perfected lien (not subject to avoidance) against the LBI cash included in the Specified Property Pool (which matter is not addressed by this Settlement Agreement), be deemed to have been paid only from such cash against which JPMorgan has such a valid and first priority lien (not subject to avoidance).

2.   **Trustee Consent and Acknowledgement.**  Trustee consents and agrees to the transfer of the Settlement Consideration in accordance with Section 1 above. As of the Effective Time, Trustee acknowledges and agrees that (a) the Subject Funds were applied to reduce (dollar-for-dollar) the Advances, (b) the Settlement Consideration was not and shall not be applied to reduce the Advances, and (c) Trustee shall not assert that the Subject Funds should not have been applied to reduce the Advances or that the Settlement Consideration should be applied to reduce the Advances. JPMorgan shall not, prior to, on or after the Effective Time, assert against the Trustee or LBI any right to any replacement collateral in respect of the Settlement Consideration.

3.   **Rights in Property.**  (a) Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, (i) JPMorgan and Trustee shall be deemed to have released, waived and discharged all of their right, title and interest in and to the Settlement Consideration, and (ii) subject to the remaining provisions of this Section 3, BarCap shall be deemed to have accepted the Settlement Consideration in full release, waiver and discharge of any right, title and interest it may have to the Subject Securities, together with the proceeds of the Subject Securities (including without limitation all principal and interest payments and any other distributions on the Subject Securities (including, without limitation, the proceeds at maturity of any Subject Securities)) received on and after September 19, 2008, in each case other than the Settlement Consideration. For purposes of this Section 3, "Subject Securities" shall mean the securities identified on a CUSIP number by CUSIP number basis in the listings provided to BarCap by JPMorgan on October 23, 2008 (the "Subject Securities List"), which securities JPMorgan represents to each of BarCap and the Trustee were all of the securities in what JPMorgan has described to BarCap as LBI's clearance account with

3

JPMorgan (the "Clearance Account") at the close of business on September 19, 2008. For purposes of entering into this Settlement Agreement, each of BarCap and the Trustee has relied on JPMorgan's representations (A) as to the identification of the Subject Securities in the Subject Securities List, and (B) that JPMorgan has a prior perfected security interest with respect to (I) the Subject Securities (including the Settlement Consideration Fed Portfolio Securities) or, in the case of Subject Securities that have been liquidated, the proceeds thereof, in each case subject to any rights that BarCap may have therein, and (II) the Settlement Consideration other than the Settlement Consideration Fed Portfolio Securities. Each of JPMorgan and BarCap represent to the other and to the Trustee that (aa) as of the date of this Settlement Agreement and subject to possible exceptions as notified by the Trustee to JPMorgan and BarCap prior to the date hereof, it is not aware, and (bb) prior to such notification it was not aware, that any of the Subject Securities are property of, or held by or on behalf of LBI or a transferee broker for the benefit of, or to secure any obligation of, any customer or former customer of LBI, the account of which has been, is to be or may in the future be transferred to BarCap.

(b)     Notwithstanding the provisions of Section 3(a)(ii) hereof, for the avoidance of doubt, BarCap shall not be deemed to have released, waived or discharged any interest it may have in the Subject Securities (or the proceeds thereof) to the extent any of the Subject Securities consist of (i) property of, or held by or on behalf of LBI or a transferee broker for the benefit of or to secure any obligation of, any customer or former customer of LBI, the account of which has been, is to be or may in the future be transferred to BarCap, (ii) securities or balances held in any reserve or segregated account maintained at any time by or on behalf of LBI in accordance with Rule 15c3-3 under the Securities Exchange Act of 1934, (iii) securities or other assets held in any lien-free account at DTC or any other depository, clearing organization or clearing bank (including, without limitation, JPMorgan), (iv) securities or other assets posted or held in respect of listed or exchange-traded contracts, including margin or collateral held by or for the benefit of any exchange, depository, clearing firm, clearing organization or other facility, and (v) securities and other assets as to which JPMorgan did not, at the close of business on September 19, 2008, have a prior perfected security interest, including in each case of clauses (i) through (v) above, the proceeds thereof. Nothing in the immediately preceding sentence shall be construed to imply that any right, title or interest which has not been released, waived or discharged by BarCap with respect to any property described therein is prior to or free of any right, title or interest of JPMorgan with respect to such property. Nothing in this Settlement Agreement shall release, waive or discharge, (i) any claim that BarCap or its affiliates may have against LBI in the SIPA Proceeding, or against LBHI and its affiliates in their respective bankruptcy cases (in each case other than claims related to the failure to deliver the complete Fed Portfolio as part of the Replacement Transaction, which is being settled by delivery and payment of the Settlement Consideration as specifically set forth in this Settlement Agreement, and otherwise other than as set forth in Section 4(c) hereof), including, without limitation, BarCap (to extent it has allowed claims) being entitled to share as a creditor in such cases in any proceeds of any recoveries that those estates may have related to the Subject Securities or the proceeds thereof or any claims of those estates against any party, including, without limitation, JPMorgan except as specifically set forth in Section 4(c) hereof, or (ii) any claim that the Trustee or LBI may have against any person (except as set forth in Sections 2, 3(a)(i) and 4(d) hereof). Moreover, nothing contained in this Section 3 shall be deemed to restrict BarCap from performing any services on behalf of the Trustee, LBI or any customers or counterparties of LBI pursuant to the Transition Services Agreement entered into in connection with the Asset Purchase Agreement or otherwise. For the

4

CONFIDENTIAL

JPM-LBHI02123909

avoidance of doubt, the release set forth in Section 3(a)(ii) hereof shall not apply to any claim relating to securities (other than the Subject Securities) that are fungible with the Subject Securities.

4. Releases. (a) Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, (1) this Settlement Agreement shall be deemed to supersede Sections 2 and 4 of the Services and Settlement Agreement dated as of September 22, 2008 (the "Services Agreement") in their entirety (other than Schedule A thereto), (ii) such Sections of the Services Agreement shall have no further force or effect, and (iii) except as so superseded hereby, the Services Agreement shall be deemed to be in full force and effect.

(b) Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, BarCap shall promptly cause the lawsuit identified on Schedule A to the Services Agreement (the "Lawsuit") to be dismissed with prejudice against all of the defendants therein (the "Defendants"). Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, BarCap further covenants to cause the plaintiff not to re-institute or seek to prosecute in any forum any claims or causes of action based in whole or part on any act, omission, transaction or other occurrence described in or related to the matters described in the complaint in the Lawsuit (the "Lawsuit Claims") and shall indemnify and hold harmless each of the Defendants and their respective current and former officers, directors, employees, subsidiaries, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives from and in respect of any and all claims, causes of action, liabilities, costs, fees or expenses (including reasonable attorneys' fees) that they may suffer or incur as a result of any failure by BarCap to cause the dismissal of the Lawsuit or any threat or prosecution of any of the Lawsuit Claims by BarCap or any of its affiliates. The Parties agree to keep confidential all information contained in Schedule A to the Services Agreement, subject to any requirements of law mandating disclosure.

(c) Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, each of JPMorgan and BarCap (in each case, on its own behalf and on behalf of each of its affiliates) hereby does and shall be deemed to forever release, waive and discharge each other, the Trustee, LBI and the LBI estate, their respective property and their respective current and former officers, directors, employees, subsidiaries, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives (collectively, "Representatives") from and in respect of all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, remedies and liabilities (other than the right to enforce the obligations of the Parties set forth in this Agreement) (collectively, "Claims"), whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, relating to the Subject Funds, the Replacement Transaction or the Delivered Securities. Nothing in this Settlement Agreement shall release, waive or discharge any claims that JPMorgan or its affiliates may have against LBI in the SIPA Proceeding, or against LBHI and its affiliates in their respective bankruptcy cases, in each case with respect to the Advances remaining outstanding after giving effect to this Settlement Agreement and other transactions unrelated to the Subject Funds, the Replacement

5

Transaction and the Delivered Securities.

(d) Upon the receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, the Trustee, on behalf of LBI and the LBI estate, hereby does and shall be deemed to forever release, waive and discharge each of JPMorgan and BarCap, their respective property and their respective current and former Representatives (for the avoidance of doubt, in (and only in) such current or former Representatives' respective capacities as such) from and in respect of all Claims, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, relating to the Subject Funds, the Replacement Transaction or the Delivered Securities.

(e) Upon receipt of the Settlement Consideration by BarCap in accordance with Section 1 above following the Effective Time, each of JPMorgan and BarCap (in each case, on its own behalf and on behalf of each of its affiliates) hereby does and shall be deemed to forever release, waive and discharge each other and their respective property and their respective current and former Representatives from and in respect of all Claims, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, relating to any alleged agreement of BarCap to enter into one or more triparty or other repurchase transactions involving LBI.

(f) From September 22, 2008 until the earlier of the date on which (i) the Authorizing Order (as defined below) becomes final and no longer subject to further appeal or review and (ii) the Settlement Agreement terminates, each Party agrees to toll any applicable statute of limitations in respect of any claim against it by any other Party that would be released by Section 4(c), (d) or (e) if such sections become and remain effective.

5. Entire Agreement. This Settlement Agreement and the Services Agreement (to the extent it is effective and not expressly superseded hereby) constitute the entire contract among the Parties relative to the subject matter hereof. This Settlement Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, except the Services Agreement (to the extent it is effective and not expressly superseded hereby). No supplement, modification, or amendment of this Settlement Agreement, or waiver of rights hereunder or thereunder, shall be binding unless executed in writing by the Party affected thereby. Nothing in this Settlement Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any rights, remedies, obligations or liabilities under or by reason of this Settlement Agreement. In the event that this Settlement Agreement and the Services Agreement (to the extent it is effective and not expressly superseded hereby) shall be construed to conflict in any way, the terms of this Settlement Agreement shall control.

6. No Admissions. Nothing in this Settlement Agreement or any negotiations or proceedings in connection herewith shall be claimed to be evidence of an admission by any Party or its affiliates of any liability, violation of law or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any Party. Neither this Settlement Agreement, nor any negotiations or proceedings in connection herewith, may be used in any

CONFIDENTIAL                                                         JPM-LBHI02123911

proceeding against any Party or its affiliates for any purpose except with respect to the validity, effectuation and enforcement of this Settlement Agreement. Nothing contained herein shall be deemed (a) an admission by BarCap that any of the provisions of the Services Agreement are currently effective, (b) an admission by JPMorgan or Trustee that any of the provisions of the Services Agreement are not effective, (c) an admission by any Party of any assertions made herein by any other Party or (d) without limitation of Sections 2, 3(a)(i) and 4(d) hereof, an admission by the Trustee as to any matter.

7. Counterparts; Signatures. This Amendment may be executed in one or more counterparts, all of which taken together shall constitute one instrument. This Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

8. Effective Time. (a) Except for Sections 8(b) through (e) below, the last sentence of Section 4(b) above and Sections 4(f) and 6 above (and in relation thereto, Sections 9 and 11 and the first sentence of Section 10), this Settlement Agreement shall not become effective until (the "Effective Time") the later to occur of (i) the entry of an order that has not been stayed (the "Authorizing Order") authorizing the execution, delivery and performance of this Settlement Agreement by Trustee by the Bankruptcy Court (or other court of competent jurisdiction) and (ii) the execution and delivery of this Agreement by the Trustee.

(b) In the event that the Bankruptcy Court declines to enter the Authorizing Order (or a court enters an order precluding the entry of an order that would qualify as the Authorizing Order), this Settlement Agreement shall terminate and be of no further force or effect.

(c) Effective upon the execution and delivery of this Settlement Agreement by JPMorgan and BarCap (even if not yet executed and delivered by Trustee) and for so long as this Settlement Agreement shall not have been terminated, each of them shall (i) reasonably cooperate with Trustee to obtain as soon as reasonably practicable the entry and finality of the Authorizing Order, provided that this clause shall not be interpreted to require JPMorgan or BarCap to agree to any change in the provisions of this Settlement Agreement, and (ii) not take any action inconsistent with this Settlement Agreement, including without limitation commencing any litigation based on claims or causes of action to be released under Sections 4(c), (d) or (e) above.

(d) This Settlement Agreement shall automatically terminate and be of no force and effect if (i) the Effective Time has not occurred by December 23, 2008 or (ii) the Authorizing Order is stayed or vacated after the Effective Time but before the transfer of the Settlement Consideration to BarCap in accordance with Section 1 above.

(e) If this Settlement Agreement terminates in accordance with Section 8(d) above, each provision contained in this Settlement Agreement shall be of no further force and effect from and after such date of termination and each of the releases granted by the Parties in Sections 3 and 4 shall be void *ab initio*; provided, however, that the last sentence of Section 4(b) above and Sections 4(f) and 6 above (and in relation thereto, Sections 9 and 11 and the first sentence of Section 10) shall survive any termination of this Settlement Agreement and nothing in Section 8(d) above or this Section 8(e) shall relieve the Parties' obligations under the last sentence of Section 4(b) above and Sections 4(f) and 6 above (and in relation thereto, Sections 9

7

and 11 and the first sentence of Section 10).

9.  Governing Law; Jurisdiction. THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each of JPMorgan and BarCap hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the New York state court located in the Borough of Manhattan, City of New York, the United States District for the Southern District of New York or the United States Bankruptcy Court for the Southern District of New York as applicable (the "New York Court"), and any appellate court from any such court, in any proceeding arising out of or relating to this Settlement Agreement, or for recognition or enforcement of any judgment resulting from any such proceeding, and each of JPMorgan and BarCap hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in the New York Court. The Trustee hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any appellate court from such court, in any proceeding arising out of or relating to this Settlement Agreement that is brought against the Trustee, or for recognition or enforcement of any judgment resulting from any such proceeding against the Trustee, and each Party hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall have exclusive jurisdiction of any action, suit or proceeding by or against the Trustee arising out of or relating to this Settlement Agreement. Each Party hereby irrevocably and unconditionally waives, to the full extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any proceeding arising out of or relating to the Settlement Agreement in the applicable New York Court or Bankruptcy Court specified above, (ii) the defense of an inconvenient forum to the maintenance of such proceeding in any such court, and (iii) the right to object, with respect to such proceeding, that such court does not have jurisdiction over such Party. Each Party irrevocably consents to service of process in any manner permitted by law.

10.  Binding Effect. This Settlement Agreement shall bind, and be for the benefit of, the Parties hereto and their respective successors and assigns. All persons and entities released pursuant to Sections 4(c), (d) and (e) of this Settlement Agreement are intended beneficiaries of such release.

11.  Non-Severability. Each of the provisions of this Settlement Agreement has been agreed upon in consideration of each other provision of this Settlement Agreement. No Party would have entered into this Settlement Agreement unless each of the provisions hereof was valid, binding and enforceable against each other Party. If any provision of this Settlement Agreement is determined not to be valid, binding and enforceable against each Party, this Settlement Agreement shall be terminated and the Parties restored to their respective positions existing immediately before entry into this Settlement Agreement.

IN WITNESS WHEREOF the Parties have executed this Settlement Agreement as of the date first set forth above.

[Remainder of page intentionally left blank]

8

CONFIDENTIAL                                    JPM-LBHI02123913

JPMORGAN CHASE BANK, N.A.

By_____

BARCLAYS CAPITAL INC.

By_____

JAMES W. GIDDENS, AS TRUSTEE IN THE SECURITIES INVESTOR PROTECTION ACT LIQUIDATION OF LEHMAN BROTHERS INC., ON BEHALF OF HIMSELF AND LEHMAN BROTHERS INC.

By_____

Signature Page to Settlement Agreement dated as of December 5, 2008

CONFIDENTIAL                                                                                    JPM-LBHI02123914

JPMORGAN CHASE BANK, N.A.

By  *(signature)*

BARCLAYS CAPITAL INC.

By

JAMES W. GIDDENS, AS TRUSTEE IN THE SECURITIES INVESTOR PROTECTION ACT LIQUIDATION OF LEHMAN BROTHERS INC., ON BEHALF OF HIMSELF AND LEHMAN BROTHERS INC.

By

Signature Page to Settlement Agreement dated as of December 5, 2008

60443925_15 DOC 1

CONFIDENTIAL                    JPM-LBHI02123915

JPMORGAN CHASE BANK, N.A.

By_____


BARCLAYS CAPITAL INC.

By_____
Name:    Richard T. Ricci
Title:   Chief Operating Officer,
         Investment Banking &
         Investment Management


JAMES W. GIDDENS, AS TRUSTEE IN THE SECURITIES INVESTOR PROTECTION ACT LIQUIDATION OF LEHMAN BROTHERS INC., ON BEHALF OF HIMSELF AND LEHMAN BROTHERS INC.

By_____


Signature Page to Agreement Regarding Settlement Agreement dated as of December 5, 2008

60471270_1.DOC i

CONFIDENTIAL                                                                                JPM-LBHI02123916

# ANNEX A

## TO BE FILED UNDER SEAL

CONFIDENTIAL                                                                                           JPM-LBHI02123917