# EXHIBIT DD

OFFICE COPY

Lawrence Byrne
Lance Croffoot-Suede
Ruth E. Harlow
Brenda D. DiLuigi
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Tel: (212) 903-9000
Fax: (212) 903-9100

Attorneys for Plaintiff, Barclays Bank PLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-----------------------------------------------------------x

BARCLAYS BANK PLC,

                    Plaintiff,

         v.

BEAR STEARNS ASSET MANAGEMENT INC.,
RALPH CIOFFI, MATTHEW TANNIN, BEAR,
STEARNS & CO. INC., and THE BEAR
STEARNS COMPANIES INC.,

                    Defendants.

-----------------------------------------------------------x

Case No. 07 Civ. 11400 (LAP)

JURY TRIAL DEMANDED

## THIRD AMENDED COMPLAINT

Plaintiff, Barclays Bank PLC ("Barclays"), brings this action against Bear Stearns Asset Management Inc. ("BSAM"), Ralph Cioffi, Matthew Tannin (collectively, the three "BSAM Defendants"), Bear, Stearns & Co. Inc. ("Bear Stearns"), and The Bear Stearns Companies Inc. ("Bear Stearns Companies" or the "Company").

**I.    SUMMARY OF THE ACTION**

1.     This action arises from one of the most high-profile and shocking hedge fund failures in the last decade:  In a matter of days in June 2007, Bear Stearns Companies' and

458. The nature of the actions alleged above indicates that other individuals, yet to be specifically identified, at Bear Stearns Companies or Bear Stearns also were likely involved in knowingly assisting and implementing the breach of BSAM's fiduciary duties during this period, and perpetuating Bear Stearns Companies' and Bear Stearns' harm to Barclays.

E.   "NO VALUE LEFT"

459. BSAM stated in late June that a final NAV for May would not be released until July 16, 2007, one month late and well past this critical June period for the Enhanced Fund.

460. On July 17, BSAM released a May NAV for the Feeder Funds and an estimated June NAV for those funds, and in doing so, explicitly confirmed the devastating news that there was "effectively no value left" for the Feeder Fund investors.

461. In a letter dated July 17, but sent by email to Simran Sethi of Barclays late on the night of July 18, PFPC reported to Barclays that the Enhanced Fund had declined 38.27% in May. Neither PFPC nor BSAM provided a report to Barclays for June's results and month-end NAV.

462. On or about July 23, Barclays hand delivered to BSAM the appropriate notice to terminate the swaps and redeem its hedge of shares in the Enhanced Fund simultaneously on the next dealing date, August 3, 2007.

463. On July 31, 2007, the Enhanced Fund applied to the Grand Court of the Cayman Islands for the appointment of joint provisional liquidators and commenced an insolvency proceeding.

464. After their appointment, those joint provisional liquidators then appeared *ex parte* on July 31 in the U.S. Bankruptcy Court in the Southern District of New York to seek various forms of temporary relief for the fund.

465. The July 31 papers filed by the Enhanced Fund's joint provisional liquidators in the U.S. Bankruptcy Court recounted that "the Foreign Petition states that Enhanced Fund is insolvent and unable to pay its debts as they come due."

466. On August 2, 2007, BSAM, on behalf of the Enhanced Fund, faxed to Barclays a letter stating that the Enhanced Fund Board of Directors purportedly declared a suspension of the redemption of shares in the Enhanced Fund on July 25, 2007, that allegedly applied to Barclays and informed Barclays of the Cayman Islands' appointment of the joint provisional liquidators.

467. Based on the insolvency filing and subsequent reports regarding assets and liabilities from the now official liquidators, either all or almost all the value in the Enhanced Fund portfolio is gone. Thus, all or almost all of Barclays' $400,000,000 financial commitment to the structure has disappeared. By the beginning of June, Barclays was owed fees of almost $12,000,000, which were also to be paid from the Enhanced Fund assets.

## XII. THE BSAM DEFENDANTS MISLED BARCLAYS WITH MISSTATEMENTS AND OMISSIONS AND THAT DECEPTION CAUSED LOSSES TO BARCLAYS

468. As alleged above, BSAM and Tannin made numerous misstatements regarding BSAM's actions and capabilities with regard to managing liquidity and they did so intentionally or at a minimum recklessly to deceive Barclays. The many specific representations pled above concerning BSAM's ability to maintain liquidity such that Barclays' leverage could be "dialed" up or down at any time, its ability to avoid "freaked-out repo counterparty risk," and its ability to invest in assets with the "greatest liquidity" and "greatest value," all proved to be false statements.

469. The Enhanced Fund structure ended up collapsing because BSAM, Cioffi and Tannin had not managed liquidity effectively, triggered "freaked-out repo counterparties," and

had filled the portfolio with especially illiquid assets rather than those structured credit assets with the "greatest liquidity" and "greatest value."

470.    Moreover, BSAM, Cioffi and Tannin falsely described BSAM's capabilities, while at the same time intentionally or recklessly omitting any disclosure to Barclays of the liquidity problems in the High-Grade Fund at the time of the Enhanced Fund's spin-off, the continuation of those liquidity problems, or of the later, mounting liquidity issues in the Enhanced Fund itself.

471.    BSAM, Cioffi and Tannin, for example, represented that all the Enhanced Fund repo counterparties were "very happy" in February and that the fund structure remained "very stable" in March; and they never disclosed the truth about the repo counterparties and the fund's liquidity stresses to Barclays until the repo counterparties had reached the end of escalating steps to protect themselves amidst instability and had themselves demanded a meeting in June. The months of deception by BSAM, Cioffi and Tannin with regard to the Enhanced Fund structure's liquidity caused losses to Barclays.

472.    Likewise, BSAM's and Tannin's repeated statements that their proprietary risk management system used voluminous information to ensure contemporaneous, rigorous and quantitative credit monitoring, that BSAM's system provided an early warning and could "quickly identify and sell suspect assets before credit deterioration," and that those capabilities would be employed to warn Barclays and protect Barclays' interests, all also proved to be false. BSAM's supposedly "prudent" approach and its descriptions of especially tight risk management were false representations about BSAM's operations when those statements were made; and they continued to be false as the Enhanced Fund descended into trouble. As with all the other alleged

## PRAYER FOR RELIEF

WHEREFORE, Barclays demands judgment and permanent relief against Defendants as follows:

(a) awarding Barclays compensatory and punitive damages in amounts to be determined at trial, together with pre-judgment interest at the maximum rate allowable by law;

(b) awarding Barclays its reasonable costs and expenses incurred in this action, including, to the extent applicable, counsel fees; and

(c) awarding Barclays all such other relief as the Court deems just and proper.

## JURY DEMAND

Barclays hereby demands a trial by jury.

Dated:   July 15, 2008
         New York, New York

*/s/ Lawrence Byrne*

Lawrence Byrne
Lance Croffoot-Suede
Ruth E. Harlow
Brenda D. DiLuigi
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000 (phone)
(212) 903-9100 (fax)

Attorneys for Plaintiff, Barclays Bank PLC