Robert A. Rich
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0005
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Creditor Hunton & Williams LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 Case No. |
| | ) |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.* | ) 08-13555 (JMP) |
| | ) Jointly Administered |
| Debtors. | ) |

**HUNTON & WILLIAMS LLP'S RESPONSE TO DEBTORS'**
**ONE HUNDRED FIFTY-FIRST OMNIBUS OBJECTION**
**TO CLAIMS (NO LIABILITY CLAIMS)**

**In re: Claim No. 2701**

Hunton & Williams LLP ("H&W") responds as follows to the One Hundred Fifty-First Omnibus Objection to Claims ("Objection") filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, "Debtors") on June 7, 2011. H&W disputes Debtors' contention that H&W's claim for $1,673,335.78 in unpaid legal fees, submitted on February 11, 2009 ("H&W Claim"),[1] pertains to an entity that is not one of the Debtors in this matter and should thus be disallowed and expunged. Counsel for Debtors has agreed to an extension of time for H&W to file this response until October 12, 2011, with a hearing date of October 27, 2011.

---
[1] *See* Exhibit A, attached hereto.

**Background of H&W Representation**

1.  Beginning April 1, 2007, H&W provided legal services to Lehman Brothers, Inc. ("LBI") in regard to a wind energy facility located in Sacramento County, California, known as the Solano project (the "Project"). Those services included legal advice relating to project structuring, diligence, formation and capitalization of a special purpose entity created for investment in the Project, negotiation of a purchase and sale agreement with the Sacramento Municipal Utility District ("SMUD"), negotiation of a long term power purchase agreement with SMUD, preparation of Project documents, and related work.

2.  The terms of H&W's representation were memorialized in an engagement letter sent to Elizabeth Yee, a Vice President of LBHI, LBI's parent company.[2] Ms. Yee edited the letter to indicate that the work was being done for LBI but at the same time, rejected H&W's stipulation that H&W did not represent "other affiliates of" LBI in connection with the Project.

3.  In addition, Ms. Yee provided H&W with "Outside Counsel Policies" that were "applicable to all assignments you receive from Lehman Brothers," including the Project.[3] Although the broad reference to "Lehman Brothers" was undefined, it was clearly meant to refer to LBHI. In particular, the Policies stated:

> Lehman Brothers' conflict of interest rules apply on an enterprise-wide basis to Lehman Brothers and all of our affiliates. . . . <u>You should regard your client in **all** Lehman matters as **Lehman Brothers Holdings Inc.**</u> and its direct and indirect subsidiaries, affiliates and divisions. . . . [W]e attach a list of major subsidiaries and affiliates in Appendix A.[4]

---

[2] *Id.* at Attachment 2.

[3] *Id.* at Attachment 3.

[4] *Id.* at Attachment 3, pp. 1-2 (emphasis added).

2

4.  LBHI personnel were regularly included in substantive work on the Project, including frequent conference calls and correspondence with the H&W legal team and various third parties involved in the Project. These LBHI personnel included Carl Weatherly-White, LBHI's Managing Director and Global Head of Project Finance, as well as Jonathan Abelmann, Kelly Cheng, Rahul Dembla, Jason Fromberg, Billy Pratner, John Veech, Christopher Yonan, and Sanda Zawacki. These client contacts had "lehman.com" e-mail addresses and e-mail signatures identifying themselves as working simply for "Lehman Brothers," not for any particular Lehman subsidiary or affiliate.

5.  H&W's invoices were sent directly *to LBHI*, to the attention of Ms. Yee,[5] and were paid by "Lehman Brothers."[6]

## H&W's Claim for Legal Fees

6.  LBHI filed its bankruptcy petition on September 15, 2008 in this court. On September 19, 2008, LBI filed a separate bankruptcy petition in this court pursuant to the Securities Investor Protection Act of 1970 (SIPA) (15 U.S.C. §§ 78aaa *et seq*.) (Case No. 08-10420 (JMP) SIPA).

7.  In February 2009, H&W filed a proof of claim for $1,673,335.78 in outstanding legal fees *both* in the LBHI case *and* the LBI case, based on the same invoices.[7] Although Debtors provide no detailed explanation in the Objection for their request to disallow the H&W Claim, H&W understands the Objection to mean that LBI alone – and not LBHI – is responsible

---

[5] H&W did not attach the invoices to its proof of claim, nor does it attach them here, because they may contain privileged or confidential information that H&W cannot disclose in the public record.

[6] Specifically, H&W received one payment of $634,356.48 on February 11, 2008. It arrived as an ACH payment with the originator noted as "Lehman Brothers."

[7] Exhibits A and B, attached hereto.

3

for payment of H&W's legal fees.  To the contrary, however, LBHI and LBI are jointly and severally liable for the full amount of fees.

8.  As discussed above, LBHI blurred the distinction between LBHI and LBI for purposes of engaging, working with, and paying H&W as legal counsel for the Project.  LBHI personnel, including Elizabeth Yee and others, were involved in retaining H&W and played an active role throughout the Project.  Those client contacts regularly identified themselves as working for "Lehman Brothers," rather than designating any particular Lehman subsidiary or affiliate.  H&W was provided with "Outside Counsel Policies" referring generally to "Lehman Brothers," the context of which made clear that "Lehman Brothers" was meant to designate LBHI.  Those Policies required H&W to consider LBHI as its client for conflicts purposes.

9.  Moreover, H&W invoices were sent directly to LBHI and were paid by "Lehman Brothers," which, based on the Policies and the parties' course of dealings, H&W reasonably understood to mean LBHI.

10.  Given LBHI's substantial involvement in all aspects of H&W's legal work on the Project, LBHI cannot now take the position that it has no responsibility for the nearly $1.7 million in legal fees incurred.  *See*, *e.g.*, *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632, 633 (N.Y. App. Div. 1997)  ("a parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract . . . or if the subsidiary is controlled by the parent for the parent's own purposes."); *Warnaco, Inc. v. VF Corp.*, 844 F. Supp. 940 (S.D.N.Y. 1994) ("A parent corporation may become a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract.").

11.     In short, although H&W agrees that LBI was its actual client, LBHI nevertheless clearly manifested its intent to bind itself to a contract with H&W as well by negotiating the engagement, imposing LBHI's outside counsel guidelines on H&W, and paying H&W's invoices.

## **Conclusion**

12.     It is well-settled law that the H&W Claim is presumptively valid. 11 U.S.C. § 502(a); Fed. Bankr. P. 3001(f); *In re Armstrong*, 434 B.R. 120, 126 (Bankr. S.D.N.Y. 2010). Debtors have put forward no evidence whatsoever in support of their Objection, instead offering nothing more than a conclusory and non-specific assertion that the H&W Claim "state[s] on [its] face and/or the supporting documentation that [it is a] claim[] against a non-Debtor entity." Objection at ¶ 12. LBHI provides no further information to support this unsubstantiated and vague assertion and thus has thus failed to satisfy its burden of persuasion that the H&W Claim should be rejected.

13.     For the reasons stated above, LBHI is jointly and severally liable for $1,673,335.78 in unpaid legal fees owed to H&W for its work on the Project. At a minimum, Debtors' request to disallow and expunge the H&W claim is premature until H&W has had an opportunity to seek discovery and develop the record regarding LBHI's control over LBI and involvement in the Project and LBHI's role in negotiating and paying for H&W's legal services.

WHEREFORE, H&W respectfully requests that this Court deny Debtors' request that the H&W Claim, Claim No. 2701, be disallowed and expunged.

Dated: October 12, 2011
New York, New York

            Respectfully submitted,

            */s/ Robert A. Rich*
            Robert A. Rich

            HUNTON & WILLIAMS LLP
            200 Park Avenue, 52nd Floor
            New York, New York 10166-0005
            Telephone: (212) 309-1000
            Facsimile: (212) 309-1100

            *Attorneys for Creditor Hunton & Williams LLP*