Hearing Date: October 19, 2011 at 10:00 a.m. (ET)

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
In re:                                              :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :    08-13555 (JMP)
                                                    :
                       Debtors.                     :    (Jointly Administered)
                                                    :
------------------------------------------------------------------ x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY CODE**
**FOR AUTHORIZATION TO IMPLEMENT 2012 DERIVATIVES**
**INCENTIVE PROGRAM AND CERTAIN RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the "Debtors"), hereby files this statement in support of the Debtors' motion, dated September 28, 2011 [Docket No. 20370] (the "Motion"), pursuant to sections 105(a) and 363(b)(1) of title 11 of the United States Code (as amended, the "Bankruptcy Code") for authorization to implement a 2012 derivatives employees incentive plan (the "2012 Incentive Plan"), and respectfully states as follows:

**BACKGROUND**

1. On December 17, 2009 and November 18, 2010, the Debtors, with the Committee's support, obtained the Court's authorization to implement derivatives employees incentive programs for 2010 and 2011, respectively. By the Motion, the Debtors request: (i) authorization to implement a new derivatives employees incentive program for 2012, and (ii) approval of administrative expense priority for the claims that accrue thereunder.

**STATEMENT**

2. The Committee's principal goal is to maximize recoveries to the Debtors' unsecured creditors. Given that the 2012 Incentive Plan will increase the administrative costs of the estates, it should be approved only when carefully calibrated to motivate employees to take actions that will ultimately enhance recoveries to the Committee's constituency. The Committee believes that the 2012 Incentive Plan embodies a properly targeted program that provides appropriate incentives to the professionals who are working hard to maximize the value of the Debtors' portfolio of derivatives contracts.

3. The 2012 Incentive Plan will also assist the Debtors in retaining highly qualified individuals who have in-depth knowledge of Lehman's derivatives business and counterparties. The Committee is acutely aware of the risks attendant to losing key employees with the sophistication and the specialized knowledge of the Debtors' derivatives assets necessary to analyze and reconcile trade data and to effectively manage and negotiate claims of, and against, the applicable estates.

4. Having come to the conclusion that continuing the 2011 Incentive Plan through 2012 is necessary and appropriate under the circumstances of these cases, the Committee worked with the Debtors to develop the 2012 Incentive Plan. In general, the 2012 Incentive

Plan provides for a maximum additional $12 million Incentive Pool[1] for eligible employees, calculated based upon the total value recovered or preserved by the Debtors' Derivatives Workforce through December 31, 2012. The benchmarks to receive an incentive payment under the 2012 Incentive Program have been modified to provide fair targets and rewards that befit the Debtors' current derivatives portfolio. Particularly during this stage of the chapter 11 cases, value maximization requires focus on claims mitigation. Accordingly, the Claims Mitigation component of the 2012 Incentive Program has been emphasized to a greater degree than in prior years. Employees will receive incentive payments only after the achievement of greater than $12.6 billion of claims mitigation or claims settlement offers, with ratcheted contributions to the Incentive Pool upon achieving the first $2 billion of clams mitigation or claims settlement offers for guarantee claims where the primary obligor is a Non-Controlled Affiliate. Asset recoveries must exceed $16.1 billion for contributions based thereon to be made to the Incentive Pool.

     5.  The 2012 Incentive Plan provides the Committee with considerable oversight authority, which it will exercise to ensure that the Plan is implemented in a manner that balances stated objectives with a particular view to minimizing the Debtors' administrative costs. To that end, as set forth in the Motion, the Committee's consent is required for a number of key determinations under the 2012 Incentive Plan (not to be unreasonably withheld), including: (i) the maximum amount paid to each participant, see Motion ¶¶ 25 & 26; (ii) calculation of the value of certain assets contributed to the Incentive Pool, see id. at ¶¶ 27, 31-33, taking into account cash collections, Realizable Asset Value, and counterparty settlement offers; and

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

(iii) Claims Mitigation, based on reductions in the dollar values of derivatives claims as a result of the efforts of the derivatives team, see id. at ¶ 34.[2]

6.  The Committee shares the Debtors' view that adopting the 2012 Incentive Plan represents a sound exercise of the Debtors' business judgment. The 2012 Incentive Plan will create benefits that outweigh both its costs and the amounts that would otherwise be incurred to hire and train new employees. The Committee believes that economic motivation and retention of employees with the knowledge required to perform the formidable tasks assigned to them is in the best interests of the Debtors' estates and their unsecured creditors.

7.  Additionally, the Committee shares the Debtors' view that the heightened evidentiary requirements for approval of payments made to insiders to induce them to remain in the Debtors' employ are not applicable to the approval of the 2012 Incentive Plan.[3] In particular, the Debtors have submitted that no officer, director, or person in control of any of the Debtors will participate in the 2012 Incentive Plan and also confirmed to the Committee that, while certain members of the Derivatives Workforce who were formerly considered nominal "officers" of the Debtors will participate in the 2012 Incentive Plan, such individuals will participate as employees (and not officers) of the LAMCO Entities and will not have discretionary authority as to their own allocations under the 2012 Incentive Plan. Such allocations are also subject to the

---

[2] As noted in the Motion, the Committee has the right to consent to certain aspects of the 2012 Incentive Plan. The Chapter 11 Plan provides that the Committee's Derivatives Subcommittee will continue functioning after the Effective Date as to certain litigation and derivatives matters, which may include the 2012 Incentive Plan (or any future such incentive or retention and recruitment plans). See Plan § 15.1(a).

[3] See 11 U.S.C. § 503(c)(1) ("there shall neither be allowed nor paid – (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business…"); id. at § 503(c)(3) ("other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefits of, officers, managers or consultants hired after the date of the filing of the petition.").

4

Committee's reasonable approval. Furthermore, the Committee is satisfied that the 2012 Incentive Plan is not a retention plan within the contemplation of section 503(c)(1) of the Bankruptcy Code, but rather is incentivizing in nature. The 2012 Incentive Plan is intended to reward members of the Derivatives Workforce based upon their performance.[4]

8. Further, the Committee shares the Debtors' view that the requirements of section 503(c)(3), to the extent such requirements are applicable to the 2012 Incentive Plan, are satisfied. The Committee believes that amounts payable under the 2012 Incentive Plan are appropriately linked to the value created or preserved by the recipients. The Committee is also satisfied that all members of the Derivatives Workforce will be treated on the same terms and that no such member will make decisions with respect to his or her own allocations under the 2012 Incentive Plan. Finally, as noted above, the Committee retains approval rights with respect to individual allocations under the 2012 Incentive Plan.

9. Based upon its careful consideration of the issues and its active role in crafting the 2012 Incentive Plan, the Committee believes that the relief requested in the Motion, if granted, will provide appropriate financial incentives to encourage exemplary performance by, and allow the Debtors to retain, professionals who are essential to the Debtors' value maximization efforts. Accordingly, the Committee supports the relief requested in the Motion.

---

[4] See In re Nellson Nutraceutical, Inc., 369 B.R. 787, 802-03 (Bankr. D. Del. 2007) (employee incentive plan for payment of bonuses to senior management was approved by bankruptcy court as complying with requirements of Section 503(c), where incentive plan established aspirational goals early in year that were reviewed in light of performance at end of year).

**CONCLUSION**

10.      For all of the foregoing reasons, the Committee respectfully requests that the Court grant the Motion and such other relief as it deems just.

Dated:   New York, New York
           October 12, 2011

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By:  /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.