Hearing Date: October 19, 2011; 2:00 p.m.(EST)

Robert Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Elisa R. Lemmer
Edward McCarthy
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
**In re**                                                         :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :    **08-13555 (JMP)**
                                                                  :
                                       **Debtors.**               :    **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x
                                                                  :
**TURNBERRY CENTRA SUB, LLC;**                                    :    **Adversary Proc. No.**
**TURNBERRY CENTRA OFFICE SUB, LLC**                              :
**TURNBERRY RETAIL HOLDING, L.P.,**                               :    **09-01062 (JMP)**
**JACQUELYN SOFFER, and JEFFREY SOFFER**                          :
                                                                  :
                                       **Plaintiffs**             :
                                                                  :
**v.**                                                            :
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC. and**                             :
**LEHMAN BROTHERS BANK, FSB**                                     :
                                                                  :
                                       **Defendants**             :
------------------------------------------------------------------x

**DEBTORS' OBJECTION TO PLAINTIFFS' MOTION FOR RELIEF FROM STAY**

US_ACTIVE:\43796754\04\58399.0008

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers, FSB ("FSB")[1] and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), submit this objection ("Objection") to the motion of Turnberry Centra Sub, LLC; Turnberry Centra Office Sub, LLC; Turnberry Retail Holding, L.P.; Jacquelyn Soffer, and Jeffrey Soffer (collectively, the "Turnberry Parties") for relief from stay, filed August 30, 2011 [D.E. 19591] (the "Motion"), and respectfully state:

## PRELIMINARY STATEMENT[2]

1.  The Turnberry Parties seek blanket relief from the automatic stay under section 362 of the Bankruptcy Code to be able to initiate litigation against the Debtors in Nevada, "litigate all issues in their dispute," and adjudicate and liquidate *any* monetary claims they may have against the Debtors, "including setoff." In essence, they ask this Court to grant them unfettered stay relief, which (save for the administrative task of actual payment on their claims) would vest in a Nevada court every decision or ruling this Court might otherwise make with respect to any of the Turnberry Parties' claims against the Debtors or their non-debtor affiliates. The Turnberry Parties, however, fail to meet their burden of establishing good cause under *Sonnax,* the seminal case in this Circuit that outlined factors courts consider in determining whether to grant stay relief.

2.  In fact, the Turnberry Parties reference in their Motion only two of the twelve *Sonnax* factors. *See* Motion at 4 ("The factors relevant to this proceeding are (1)

---

[1] Lehman Brothers, FSB is not a debtor in the above-captioned proceedings.

[2] Capitalized terms used in this Preliminary Statement, but not otherwise defined below, shall have the meanings ascribed to them elsewhere in this Objection.

"whether relief [from the automatic stay] would result in a partial or complete resolution of the issues," and (2) "the interests of judicial economy and the expeditious and economical resolution of litigation." (citing *Sonnax*)).  In their fleeting – one paragraph – discussion of these two factors, the Turnberry Parties do not come close to establishing good cause.  *See* Motion at 5.  They merely state without much, if any, support that granting relief from the stay "will result in a complete resolution of the issues in this dispute" and avoid "the potential for conflicting rulings" and "waste of judicial resources."  *Id.*  The Turnberry Parties are wrong.

3. The factors cited by the Turnberry Parties weigh *against* granting the requested relief.  First, adjudication of "all issues in their dispute" in Nevada will not "result in a complete resolution" of all issues or serve the interests of judicial economy.  At a minimum, the Turnberry Parties have represented to the Debtors that some of these issues will mimic those that are currently pending before, and will be litigated in, this Court in the Fontainebleau Adversary Proceedings.[3]  If stay relief were to be granted, two courts would preside over and adjudicate identical factual and legal issues, resulting in judicial waste and potentially conflicting rulings.  Further, *all* of the litigants would be forced to devote extensive financial and professional resources in fighting identical cross-country disputes.

4. The Motion also fails to establish good cause under *Sonnax* because the Turnberry Parties seek broad-based relief that exceeds the scope of defending the non-judicial foreclosure by LBHI of certain real property located in Las Vegas, Nevada (the "Town Square Property") owned by one of the Turnberry Parties  -  Turnberry/Centra Office Sub, LLC ("Centra").  The Turnberry Parties contend that stay relief is necessary to defend against the foreclosure sale, but their request is not limited to potential disputes between LBHI and Centra in

---

[3]   The "Fontainebleau Adversary Proceedings" are two adversary proceedings currently pending in this Court styled as: (i) *Lehman Brothers Holdings Inc. v. Jeffrey Soffer, Fontainebleau Resorts, LLC,* Adv. Proc. No. 10-2821 (JMP) and (ii) *Lehman Brothers Holdings Inc. v. Jeffrey Soffer, Fontainebleau Resorts, LLC,* Adv. Proc. No. 10-2823 (JMP).

respect of the non-judicial foreclosure.  Instead, they state their claims *may* resemble those they previously asserted in their Complaint and, as noted, have advised the Debtors telephonically that they *may* make other claims that track those raised in the Fontainebleau Adversary Proceedings concerning the Debtors' financial condition prepetition and their repurchase transactions.  Specifically, the Complaint seeks, among other things, to absolve the Soffers from having to repay their debts to LBHI because, the Turnberry Parties allege, FSB (a non-debtor)[4] or "Lehman" failed to provide certain financing to Turnberry Associates (which is not one of the Turnberry Parties).  It also seeks to offset claims of the Turnberry Parties against the amounts owed by the Soffers to LBHI.   The Motion does not justify, however, why the ability to litigate all claims that any Turnberry Party (or perhaps one of its affiliates) could have against LBHI, FSB or "Lehman," in general, is integral to the defense of the non-judicial foreclosure in Nevada or why this Court should lift the stay and enable the Turnberry Parties to effectuate impermissible setoffs.  Ultimately, the Turnberry Parties fail to establish that good cause exists under either of the two *Sonnax* factors they cite to grant the unfettered stay relief they seek.

        5.        Having failed to demonstrate good cause under *Sonnax*, stay relief should be denied, and the burden does not shift to the Debtors to affirmatively show that stay relief is inappropriate.  Nonetheless, the other *Sonnax* factors, though not cited by the Turnberry Parties, similarly weigh *against* stay relief.  Litigation of these issues have not advanced in Nevada (indeed, no judicial action is pending).  The issues allegedly in dispute primarily relate to New York state law breach of contract issues and bankruptcy issues of solvency and setoff, and accordingly, do not require a Nevada court's specialized expertise.[5]  Further, a Nevada litigation

---

[4]     Although FSB is not a party to the loan documents at issue in the Town Square Adversary Proceeding, FSB has been named as a defendant therein.

[5]     Notably, the only legal issue governed by Nevada law is the real property foreclosure.  The other issues allegedly in dispute are governed by New York law or federal bankruptcy law.

could intersect with the Debtors' bankruptcy cases insofar as other parties may seek to invoke the findings made there concerning the Debtors' prepetition financial condition in proceedings before this Court or to the extent the Turnberry Parties attempt to effectuate an offset in the Nevada litigation that is prohibited by the Bankruptcy Code. Finally, none of the other factors often cited by courts in granting stay relief (e.g., availability of insurance to fund litigation costs or litigation among third parties) apply here. As envisioned, the Debtors would be "front and center" in any Nevada litigation.

6. The Turnberry Parties also ask this Court to abstain from adjudicating the Town Square Adversary Proceeding in favor of a Nevada action. Absention is not warranted under the circumstances. There is no parallel state court proceeding pending in Nevada in favor of which this Court could abstain – the foreclosure commenced by LBHI in Nevada was an out-of-court, non-judicial foreclosure. Further, even if the Turnberry Parties were to initiate a state court proceeding in Nevada in connection with the foreclosure, as set forth in more detail below, abstention over the Town Square Adversary Proceeding would not be warranted for the same reasons that dictate against stay relief. Because the Turnberry Parties have failed to establish the requisite cause to grant stay relief or to abstain in favor of a to-be-commenced state court action, the Motion should be denied.

**RELEVANT BACKGROUND**

7. On or about July 25, 2007, LBHI entered into a loan agreement (the "Town Square Loan Agreement") pursuant to which LBHI agreed to lend to Jacquelyn Soffer and Jeffrey Soffer (collectively, the "Soffers") a maximum amount of approximately $95 million (the "Town Square Loan"). Among other things, the Soffers' obligations under the Town Square Loan Agreement were guaranteed by Turnberry Retail Holding, L.P. pursuant to a Guaranty Agreement dated July 25, 2007. The obligations also were secured pursuant to a Deed of Trust

and Security Agreement dated October 3, 2007, pursuant to which Centra granted a security interest in the Town Square Property for the benefit of LBHI.

8. On February 27, 2009, the day the Town Square Loan became due, the Turnberry Parties initiated the above-captioned adversary proceeding (the "Town Square Adversary Proceeding") against both LBHI and FSB by filing a complaint (the "Complaint") in this Court.[6] In the Complaint, the Turnberry Parties alleged, among other things, that FSB breached its alleged "commitment" to provide additional financing to the Turnberry Parties and, as a result of *FSB's* alleged breach, the Turnberry Parties should be excused from satisfying their obligations to LBHI in connection with the Town Square Loan.[7]

9. Following the commencement of the Town Square Adversary Proceeding, the Debtors asserted their compulsory counterclaims against the Turnberry Parties.[8] Concerned, however, that their counterclaims would violate Nevada's "one action" rule,[9] the Debtors later sought and received permission to amend their counterclaims and assert them as claims for declaratory relief, without any opposition from the Turnberry Parties. Following the Debtors' amendment of their counterclaims,[10] the Turnberry Parties filed a motion to dismiss (the "Motion to Dismiss")[11] the Debtors' request for declaratory relief. In June 2011, this Court held a hearing

---

[6] *See* Complaint, dated February 27, 2009, Adv. Proc. 09-01062 (JMP) [D.E. 1].

[7] *See* Complaint, ¶¶ 123-125.

[8] *See* Answer, Affirmative Defenses and Counterclaims of Defendants Lehman Brothers Holdings, Inc. and Lehman Brothers Bank, FSB, dated March 30, 2009 [D.E. 8]

[9] *See* Nev. Rev. Stat. § 40.430.

[10] *See* Amended Answer, Affirmative Defenses and Counterclaims of Defendants Lehman Brothers Holdings, Inc. and Lehman Brothers Bank, FSB, dated July 12, 2010 [D.E. 30]

[11] *See Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims for Failure to State a Claim Upon Which Relief May Be Granted,* Adv. Proc. No. 09-01062 (JMP), dated July 29, 2010 [D.E. 32]

to consider the Motion to Dismiss, ultimately instructing the parties to attempt to consensually address the Debtors' concerns regarding the "one action" rule.

10. In August 2011, LBHI initiated a non-judicial foreclosure in Nevada so as to foreclose on the Town Square Property owned by Centra. LBHI took no other action against any of the other Turnberry Parties in Nevada, including the Soffers (who are the sole borrowers under the Town Square Loan). No judicial proceeding by Lehman in connection with the Town Square Property is currently pending in Nevada against any of the Turnberry Parties. Nonetheless, the Turnberry Parties contend (without legal or factual support) that, in order to defend against the prospective foreclosure sale, *each* of them must be able to assert *any* claim they may have against the Debtors and FSB in Nevada. For this reason, they ask this Court to grant them unfettered relief from stay to enable a Nevada court to adjudicate and liquidate any such claims against the Debtors and effectuate a setoff. The Motion does not specify the claims the Turnberry Parties hope to bring; instead, the Turnberry Parties state the claims will be substantially similar to those asserted against LBHI and FSB in the Complaint. However, they also have noted that they will add more claims, including some that "will track" those asserted by Jeffrey Soffer and Fontainebleau Resorts, LLC against the Debtors in the Fontainebleau Adversary Proceedings.[12] The Debtors believe that such claims lack merit and, in any event, do not bear on the defense by Centra of the foreclosure sale.

---

[12] In their amended counterclaims filed recently in the Fontainebleau Adversary Proceedings, Jeffrey Soffer and Fontainebleau Resorts, LLC assert claims for fraudulent concealment and fraudulent inducement that they argue are based on the statements made in the report prepared in the Debtors' bankruptcy case by the examiner appointed by this Court (the "Examiner's Report"). *See* Defendants' Answer, Affirmative Defenses, and Counterclaims, Adv. Proc. No. 10-2821, [D.E. 39] and Defendants' Answer, Affirmative Defenses, and Counterclaims, Adv. Proc. No. 10-2823, [D.E. 39].

## ARGUMENT

### A. THE TURNBERRY PARTIES HAVE NOT MET THEIR BURDEN OF DEMONSTRATING CAUSE FOR LIFTING OF THE STAY

11. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986) (quotation omitted). Section 362's stay against "the commencement or continuation . . . of a judicial . . . proceeding" or "any act to obtain possession . . . or to exercise control over property of the estate" (11 U.S.C. § 362(a)(1) and (3)) "is crucial for the benefit and protection of creditors and the central bankruptcy objective of equal treatment of creditors." *Delta Air Lines, Inc. v. Bibb (In re Delta Air Lines)*, 359 B.R. 454, 459 (Bankr. S.D.N.Y. 2006).

12. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances. 11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000). Specifically, relief from the stay will be granted only where the party seeking relief demonstrates "cause":

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).[13] Section 362(d)(1) does not define "cause." Courts in this Circuit, however, have determined that, in examining whether cause exists to modify the stay, they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the

---

[13] Sections 362(d)(2)-(4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to the Motion.

debtor, and the estate." *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

13. The seminal decision in this Circuit on whether cause exists to lift the automatic stay is *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating District Court order granting stay relief where Bankruptcy Court had not applied *Sonnax* factors, made only sparse factual findings, and ultimately did not provide appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). In *Sonnax*, the Second Circuit outlined twelve factors to be considered when deciding whether to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the other proceeding involves the debtor as a fiduciary;
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> (6) whether the action primarily involves third parties;
>
> (7) whether litigation in another forum would prejudice the interests of other creditors;
>
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
>
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  Only those factors relevant to a particular case need be considered, and the court need not assign them equal weight.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).  The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors.  *Sonnax*, 907 F.2d at 1285.  If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.  *Id*.  Further, the cause demonstrated must be "good cause."  *Morgan Guar. Trust Co. v. Hellenic Lines, Ltd*., 38 B.R. 987, 998 (S.D.N.Y. 1984).

14.    The Turnberry Parties cannot sustain their burden under *Sonnax*.  First, they ask this Court to allow any of (i) Turnberry Centra Sub, LLC, (ii) Centra; (iii) Turnberry Retail Holding, L.P.; (iv) Jacquelyn Soffer and/or (v) Jeffrey Soffer to assert **any** monetary claims against LBHI (and FSB) – including claims for setoff – in Nevada.  The parties state that the claims they will assert likely will resemble those contained in the Complaint, but also have represented that they will bring additional claims that mimic those asserted against the Debtors in the Fontainebleau Adversary Proceedings.  Ultimately, though, the Motion lacks any concrete detail concerning the scope of the claims the Turnberry Parties may bring in Nevada.

15.    Nonetheless, even if the issues to be litigated in Nevada were confined *solely* to the claims asserted in the Complaint, the Turnberry Parties do not explain why Centra's defense to the foreclosure sale "require[s] a Nevada court to resolve the same factual issues raised in [the Turnberry Parties'] complaint in [the Town Square Adversary Proceeding.]" Mot., p. 3.  The non-judicial foreclosure involves only two parties – LBHI and Centra, but the claims asserted in the Complaint involve not only LBHI and Centra, but also FSB, Turnberry

Associates, and "Lehman," generally. Among other things, the Turnberry Parties seek a judgment finding that, as a result of ***FSB's*** alleged breaches of its alleged financing commitments to developer ***Turnberry Associates***, the ***Soffers*** should be absolved of their obligations to repay the Town Square Property Loan made to them by ***LBHI***.[14] Although not styled as a setoff,[15] this contemplated setoff is impermissible under section 553 of the Bankruptcy Code, which requires at a minimum mutuality of parties.[16] FSB, as noted above, is not a debtor and is not a party to any of the loan documents memorializing the Town Square Loan on which the non-judicial foreclosure is based. Similarly, Turnberry Associates is not a Turnberry Party, is not a party to the loan documents concerning the Town Square Loan, and is not the owner of the Town Square Property.

16. Further, the Motion fails because the Turnberry Parties reference in their Motion only two of the twelve *Sonnax* factors, and both of those factors weigh in favor of denying relief from stay.

---

[14] *See* Complaint, ¶¶ 123-125 ("[FSB] failed to honor its contract to provide the Permanent Financing….Accordingly, the [Turnberry Parties] are entitled to judgment for all ordinary and special damages resulting from [FSB's] breach of its commitment to provide the Permanent Financing, plus interest, costs and fees. [The Turnberry Parties] are also entitled to judgment declaring that as a result of Lehman's breaches, they are excused from any liability or obligation to perform under the [loan documents relating to the Town Square Property Loan.]"; *see also* ¶ 134 ("On multiple occasions, Defendants verbally committed to provide the Permanent Financing to [Turnberry Associates], as part of the overall Lehman Financing, in the amount of $625 million.")

[15] The Complaint contains a separate express cause of action for setoff whereby the Turnberry Parties seek to offset any amounts they owe to LBHI against any amounts determined by LBHI owed to them. *See* Complaint, ¶¶ 164-167. Again, this request may, likewise, lack the requisite mutuality under section 553 of the Bankruptcy Code.

[16] *See In re Lehman Brothers, Inc.,* No. 08-01420 (JMP), 2011 WL 4553015, at *4 (Bankr. S.D.N.Y. Oct. 4, 2011) (noting that to be eligible for a setoff under section 553 of the Bankruptcy Code, there must be, among other things, mutuality between the parties and noting that debts are mutual "only when they are 'in the same right and between the same parties, standing in the same capacity'") (citing *Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 743 F. Supp. 176, 183 (S.D.N.Y. 1990)); *see also MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615, 618 n.2 (2d Cir. 1989) ("Under federal bankruptcy law, a subsidiary's debt may not be set off against the credit of the parent.").

**(i) *Sonnax* Factor 1: Whether Relief Would Result In A Partial Or Complete Resolution Of The Issues**

17.     The Turnberry Parties state that granting relief from stay would result in a complete resolution of the issues in dispute. Given that, as described in the Motion, the question of "who is suing whom for what" remains amorphous, it is difficult to determine in a vacuum that all of the issues between and among LBHI and the Turnberry Parties would be completely resolved in Nevada. Indeed, this seems unlikely, as some of the claims that may be asserted are bankruptcy-specific claims that a Nevada judge might defer to this Court. In light of the Turnberry Parties' failure to show how all of the issues by and among LBHI and the Turnberry Parties would be resolved in Nevada, this factor weighs against granting relief.

**(ii) *Sonnax* Factor 10: The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation**

18.     The Turnberry Parties state in the Motion that they seek relief from the automatic stay "to avoid a waste of judicial resources, and the potential for conflicting rulings." Yet, they have indicated orally that they intend to bring claims against LBHI that are identical to those asserted in the amended counterclaims filed in the Fontainebleau Adversary Proceedings. Thus the very situation that the Turnberry Parties claim in their Motion they wish to avoid is the one they will create if two courts (this Court and a Nevada state court) are both charged with adjudicating, possibly concurrently, the Turnberry Parties' claims. The risk of inconsistent rulings would, likewise, be present and could result in additional litigation.

19.     Further, any Nevada court considering such issues will be considering them on first impression, without any prior involvement or experience with the Debtors' bankruptcy cases. Where this Court has already presided over these chapter 11 cases for over three years and has been privy to many of the issues raised by the parties concerning the Debtors' prepetition events, a Nevada court would be reviewing *all* of these issues on first

impression, issuing rulings on New York state law, and bankruptcy-related allegations. Addressing these issues would more likely delay the litigation than expedite it. The Turnberry Parties fail to address how it *would not* be a waste of judicial resources to have this Court and a Nevada court (with no prior experience with these matters) adjudicate essentially identical factual issues in two separate cross-country proceedings. Relief from stay would frustrate the interests of judicial economy and would result in judicial waste.

20. In light of the foregoing, the Turnberry Parties cannot show good cause for lifting the automatic stay under *Sonnax*. Thus, the Motion should be denied, and the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. *Sonnax*, 907 F.2d at 1285. Nevertheless, the remaining *Sonnax* factors relevant to this case (discussed below) weigh heavily against lifting of the automatic stay to allow the Turnberry Parties to proceed with their affirmative claims at this juncture.

**(iii) *Sonnax* Factor 7: Whether Litigation In Another Forum Would Prejudice the Interests of Other Creditors and *Sonnax* Factor 2: Lack of Any Connection With or Interference with the Bankruptcy Case**

21. The second and seventh *Sonnax* factors each weigh against granting stay relief. In the Motion, the Turnberry Parties state that they desire to litigate all of their claims against FSB (a non-debtor) and LBHI in Nevada and request that this Court defer all liquidation, adjudication and allowance of such claims, including setoff claims, to a Nevada court. Section 553 of the Bankruptcy Code preserves the right of setoff and provides that a creditor may offset a "mutual debt owing by such creditor to the debtor that arose before the commencement of the case under [the Bankruptcy Code] against the claim of such creditor against the debtor that arose before the commencement of the case." As this Court stated, absent mutuality, no right of setoff exists. *See In re Lehman Brothers Holdings, Inc.,* 2011 WL at *4. Nonetheless, as styled in the Motion, the relief sought by the Turnberry Parties may envision a setoff of debts allegedly owed

by FSB to any of the Turnberry Parties or affiliates of the Turnberry Parties against any debt owed to LBHI. This is impermissible under section 553 of the Bankruptcy Code. Effectuating such a "setoff" would, undoubtedly, deplete assets from LBHI's estate that otherwise would be available to satisfy the claims of its creditors.

22. Further, if stay relief is granted, LBHI will be forced to litigate identical factual disputes against some of the same parties in two different forums (the claims already made in the Fontainebleau Adversary Proceedings in this Court and the claims to be made in a Nevada action) – all during a critical time when LBHI is focusing its resources on plan confirmation and ultimate emergence from bankruptcy. Dual cross-country litigation will not only be a waste of judicial resources, but also will also impose an unnecessary added burden on the Debtors in terms of financial and professional resources devoted to litigating what may essentially be identical disputes in certain respects. Further, such litigation could result in inconsistent rulings between this Court and a Nevada action. Consequently, litigating the broad claims the Turnberry Parties seek to litigate in Nevada will necessarily affect the Debtors' estate and their creditors.

**(iv) *Sonnax* Factor 4: Whether a Specialized Tribunal With the Necessary Expertise Has Been Established to Hear the Cause of Action**

23. Although foreclosure is available only in Nevada and the Turnberry Parties contend they are merely seeking to defend against a foreclosure sale of the Town Square Property, the claims they seek to assert extend beyond the scope of the foreclosure and into issues of New York state law (which governs the loan documents) and issues concerning the timing of the Debtors' alleged insolvency and the repurchase transactions into which they entered – issues that affect the Debtors' chapter 11 cases. These are not issues as to which a Nevada court has any specialized expertise. In fact, the contrary is true. This Court is better

suited to address issues that bear on the Debtors' bankruptcy cases. Accordingly, this factor weighs against granting stay relief.

### (v) *Sonnax* Factor 11: Whether The Parties Are Ready For Trial In The Other Proceeding

24.  There is no judicial proceeding currently pending in Nevada with respect to the Town Square Property or the Town Square Loan. The foreclosure is non-judicial. Any judicial proceeding in Nevada would first have to be commenced by the Turnberry Parties. Accordingly, this factor weighs against granting relief from stay.

### (vi) *Sonnax* Factor 5: Whether The Debtor's Insurer Has Assumed Full Responsibility For Defending It

25.  The Debtors are not aware of any insurer that has assumed full responsibility for defending the claims at issue. Accordingly, this factor weighs against granting relief.

### (vii) *Sonnax* Factor 6: Whether The Action Primarily Involves Third Parties

26.  Unlike in certain circumstances where stay relief is sought to proceed against a third party, here the stay relief sought would directly affect the Debtors and their estates. Accordingly, this factor weighs against granting relief.

### (viii) *Sonnax* Factor 3: Whether the Proceeding Involves the Debtor as Fiduciary

27.  The Nevada state court litigation that the Turnberry Parties would initiate would not involve the Debtors as fiduciaries for other parties. Accordingly, this factor, likewise, weighs against granting stay relief.

### (ix) *Sonnax* Factor 12: The Impact of the Stay On The Parties and the Balance of Harms

28.  For the reasons noted above, if stay relief were granted in the manner requested by the Turnberry Parties, among other things, the Turnberry Parties would be free to

assert any claims they desired against the Debtors in Nevada (regardless of whether such claims were necessary to defend against the non-judicial foreclosure), duplicative litigation would ensue, and the Turnberry Parties would be able to attempt to effectuate a setoff that would be impermissible under the Bankruptcy Code. As such, the balance of harms weighs in favor of denying the Motion.

### B.    ABSTENTION IS NOT WARRANTED

29.    The Turnberry Parties ask this Court to abstain from adjudicating the Town Square Adversary Proceeding, in favor of a Nevada state court action that they would subsequently commence and cite a number of cases in support of their position. To be clear, no judicial proceeding in respect of the Town Square Property is currently pending in Nevada, so there is no state court action to which this Court should defer. Nonetheless, even if a Nevada action were currently pending, this Court should not abstain in favor of such an action for reasons similar to why it should deny the requested blanket relief from stay.

30.    Cited by the Turnberry Parties in the Motion, in *Goldentree Asset Management, L.P. v. Longaberger Co.,* 448 F.Supp.2d 589 (S.D.N.Y. 2006), the court summarized the six factors employed by courts in the Second Circuit when determining whether stay an action under the *Colorado River* abstention doctrine. These factors are: (i) jurisdiction over the *res* or property; (ii) inconvenience of the federal forum; (iii) avoidance of piecemeal litigation; (iv) the order in which jurisdiction was obtained; (v) whether state or federal law applies; and (vi) whether the state forum will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.* (citing *FDIC v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir. 1999)). Each of these factors weighs against abstention. First, the Turnberry Parties commenced the Adversary Proceeding in this Court; consequently, this forum is not "inconvenient" to them. Second, no court in Nevada currently has assumed jurisdiction over the

*res* because no judicial proceeding is currently pending there.  Third, abstention would not avoid piecemeal litigation of the issues the Turnberry Parties hope to raise in an omnibus Nevada state court action for the reasons stated above; such piecemeal litigation can only be avoided by this Court adjudicating the issues common to or overlapping in the Turnberry Adversary Proceeding, the Fontainebleau Adversary Proceedings, and potentially other adversary proceedings.  Fourth, the claims the Turnberry Parties may potentially bring could involve mixed questions of federal law (e.g., bankruptcy setoff issues) and state law (New York contract law).  Even as to the state law issues, other than the foreclosure of the Town Square Property itself (which is governed by Nevada law), all other state law issues among the parties are to be determined by applying New York law.  Accordingly, a Nevada court would not be in a better position to evaluate such issues.  Finally, the parties' rights will be better served if the claims asserted by them are addressed in this Court.  Among other things, this Court is in a better position to address the bankruptcy and insolvency specific claims potentially to be asserted by the Turnberry Parties.  For the foregoing reasons, abstention is not appropriate.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully submit that stay relief is not appropriate and should be denied.

WHEREFORE the Debtors respectfully request that the Court deny the Motion and the relief requested therein and enter any other and further relief as is just and proper.

Dated:  October 13, 2011
       New York, New York

/s/ Robert Lemons
Robert Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

-and-

Elisa R. Lemmer
Edward McCarthy
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159


Attorneys for Debtors
and Debtors in Possession