**HEARING DATE AND TIME: October 27, 2011 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE: October 13, 2011 at 4:00 p.m. (Eastern Time)**

Richard S. Miller
Robert Honeywell
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

Attorneys for AllianceBernstein L.P.
As Investment Adviser to Philips Pension Trustees Limited as
Trustee of the Philips Pension Fund

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., | : |
| *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

**RESPONSE OF ALLIANCEBERNSTEIN L.P. TO DEBTORS' ONE HUNDRED
NINETY-EIGHTH OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)
[Docket No. 19902]**

AllianceBernstein L.P. ("AllianceBernstein"), as investment adviser to Philips Pension

Trustees Limited as Trustee of the Philips Pension Fund (the "Pension Fund" or the "Fund"), and

in the name of and on behalf of the Pension Fund pursuant to Rule 3005 of the Federal Rules of

Bankruptcy Procedure, hereby responds to the Debtors' One Hundred Ninety-Eighth Omnibus

Objection to Claims (Late-Filed Claims) [Docket No. 19902] (the "Claim Objection").   In

support of its response (the "Response"), AllianceBernstein states the following:

## I.    SUMMARY OF RESPONSE

1.    The Debtors previously filed a similar claim objection to eighteen (18) other

claims that AllianceBernstein had filed pursuant to Rule 3005 of the Federal Rules of

Bankruptcy Procedure ("Rule 3005").[1]  AllianceBernstein respectfully refers the Court to its prior response, filed herein on June 15, 2011 [Docket No. 17710].  That claim objection is currently set for hearing on December 21, 2011, pursuant to a notice of adjournment filed herein on September 28, 2011 [Docket No. 20344].  The arguments set forth herein are substantially the same as those set forth in the prior response.

2.      In their omnibus claim objection, the Debtors ask the Court to disallow the claim of the Pension Fund (Claim No. 43934) (the "Rule 3005 Claim"), by grouping it with sixteen (16) other claims in Exhibit A to the objection and alleging that all of them were late-filed – *i.e.*, "after the applicable bar date."  Claim Objection, Par. 2.  The Debtors make no mention that the Pension Fund's Rule 3005 Claim expressly states, in an attachment to the filed claim, that it was filed pursuant to Rule 3005.[2]

3.      Rule 3005 gives *any* entity that may be liable with the debtor to a creditor an additional thirty (30) days after a bar date to file a proof of claim in the name of that creditor.

---

[1] *See* Debtors' One Hundred Forty-Third Omnibus Objection to Claims (Late-Filed Claims), dated May 16, 2011 [Docket No. 16856].  The proofs of claim addressed by that claim objection (and covered by the prior response filed by AllianceBernstein) were filed in the name of and on behalf of the following creditors: ACM Global Credit – U.S. Sub-Fund (Claim Nos. 43951, 43952); AllianceBernstein Alternative Investments (Master) – Fixed Income High Alpha Portfolio (Claim Nos. 43949, 43950); AllianceBernstein Bond Fund, Inc. – AllianceBernstein Intermediate Bond Portfolio (Claim Nos. 43944, 43945); AllianceBernstein Pooling Portfolios – AllianceBernstein Intermediate Duration Bond Portfolio (Claim Nos. 43942, 43943); AllianceBernstein Variable Products Series Fund Inc. – AllianceBernstein Intermediate Bond Portfolio (Claim Nos. 43938, 43939); AllianceBernstein Collective Investment Trust Series – US Strategic Core-Plus Fixed Income Collective Trust (Claim Nos. 43935, 43936); AllianceBernstein Collective Investment Trust Series – AllianceBernstein US Core Fixed Income Collective Trust (Claim Nos. 43937, 43946); Sanford C. Bernstein Fund II, Inc. – Bernstein Intermediate Duration Institutional Portfolio (Claim Nos. 43947, 43948); and Sanford C. Bernstein Fund, Inc. – Intermediate Duration Portfolio (Claim Nos. 43940, 43941) (collectively, the "Independent Funds").

[2] Attached as Exhibit "A" hereto is a copy of the Rule 3005 Claim.  The attachment indicates in its title that the claim was being filed "UNDER BANKRUPTCY RULE 3005" and also states, in the first paragraph, that the claim was being filed under Rule 3005 by AllianceBernstein in the name of the Pension Fund.  The cover sheet and text of the attachment indicate that the claim was filed against Lehman Brothers Holdings Inc. ("LBHI") pursuant to its guaranty of the Pension Fund's ISDA agreement with Lehman Brothers International (Europe) ("LBIE").

AllianceBernstein filed the Rule 3005 Claim in the name of the Pension Fund on October 22, 2009, within thirty (30) days after the September 22, 2009 bar date in these cases. AllianceBernstein also completed the derivatives and guaranty questionnaires for this claim and uploaded the related contract documents by October 22, 2009, as required by the Court's bar date order.

4.    The Debtors simply ignore the claim's citation to Rule 3005 and make no argument against the application of Rule 3005 to this claim. As shown below, the Rule is available because AllianceBernstein is "liable with" the Debtors (specifically, LBHI) to the Pension Fund with respect to this claim, and was thus entitled to invoke Rule 3005 and file the claim in the name of the Fund on or before October 22, 2009.  AllianceBernstein thus timely filed the Rule 3005 Claim, and it cannot be disallowed on the basis of a blanket assertion that it was "late filed."

## II.    BACKGROUND

5.    As the Debtors state in the Claim Objection, on July 2, 2009, the Court entered an order establishing deadlines and procedures for creditors to file proofs of claim [Docket No. 4271] (the "Bar Date Order").  The Bar Date Order established a September 22, 2009 deadline (the "General Bar Date") for creditors to file proofs of claim.   The Bar Date Order also established an October 22, 2009 deadline for the holders of claims related to derivative contracts or guaranties to provide additional information on their claims by completing the prescribed questionnaires and uploading related contract documents (the "Questionnaire Deadline").

6.    As set out in detail in its Rule 3005 Claim, the Pension Fund holds a claim against LBHI pursuant to its guaranty (the "Guaranty") of the obligations of LBIE under an ISDA agreement (the "Swap Agreement") which was terminated on or about September 15, 2008.  The Debtors have not objected to the claim amount asserted against LBHI in the Rule 3005 Claim.

7.      The Pension Fund is a distinct legal entity, formed as a trust under the laws of the United Kingdom ("UK"), and is subject to a regulatory and fiduciary regime designed to ensure its independence and compliance with its fiduciary duties towards its beneficiaries.  The Pension Fund has an independent trustee, Philips Pension Trustees Limited, which has its own independent counsel, and its beneficiaries are limited to certain UK-based employees of the Philips company.[3]

8.      The Swap Agreement and Guaranty executed by LBIE and LBHI make clear that the swap counterparty and guaranty beneficiary was the Pension Fund, acting through its trustee, Philips Pension Trustees Limited.  Attached as Exhibit "C" hereto are the relevant pages from the Swap Agreement which list the Pension Fund as "Party B," and the full text of the Guaranty which lists "Party B" as the beneficiary.

9.      The Rule 3005 Claim asserts amounts owed to the Pension Fund under its Guaranty with LBHI.  With respect to the Rule 3005 Claim, then, the Pension Fund is the "creditor" (as defined in Bankruptcy Code § 101(10)) holding a "claim" (as defined in Bankruptcy Code § 101(5)) against LBHI.

10.     The Pension Fund did not file a proof of claim related to the Guaranty before the September 22, 2009 General Bar Date.  However, AllianceBernstein filed the Rule 3005 Claim in the name of the Pension Fund within thirty (30) days after the General Bar Date, on October 22, 2009, and also completed the related derivatives and guaranty questionnaires and uploaded the required contract documents on the same date.  As a result, by the Questionnaire Deadline, the Debtors had received all required information on the claim of the Pension Fund under the Guaranty.

---

[3] Affidavit of James P. Wallin ("Wallin Affidavit"), attached as Exhibit "B" hereto, at Paragraph 4.

### III.   ARGUMENT

11.   Rule 3005 provides:

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), *any entity that is or may be liable with the debtor to that creditor*, or who has secured that creditor, may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c) whichever is applicable.   (emphasis added)

Thus, if a creditor in these cases did not file a proof of claim by the September 22, 2009 General Bar Date, any entity that "is or may be liable with" the Debtors to that creditor could file a proof of claim by October 22, 2009.

12.   As explained in greater detail below, AllianceBernstein is an entity "liable with" LBHI to the Pension Fund with respect to its swap termination claims.  Accordingly, Rule 3005 gave AllianceBernstein the right to timely file a proof of claim in the name of the Pension Fund by October 22, 2009.

### A.   ALLIANCEBERNSTEIN IS LIABLE WITH THE DEBTORS TO THE PENSION FUND

#### i.   Scope of "Liable with the Debtor" as Used in Rule 3005

13.   Rule 3005 is drafted broadly, granting a thirty (30) day window *after* a bar date to anyone that is "liable with the debtor" to a creditor to file a proof of claim in that creditor's name.  The statutory basis for the Rule, Section 501(b) of the Bankruptcy Code, provides:

> If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

The Advisory Committee that drafted Rule 3005 underscored the broad availability of the Rule:

> Together with § 501(b) of the Code, the rule makes clear that *anyone who may be liable on a debt of the debtor, including a surety, guarantor, indorser, or other codebtor*, is authorized to file in the name of the creditor of the debtor.

Notes of the Advisory Committee on Bankruptcy Rules (1983) (emphasis added). *See also Collier on Bankruptcy*, Vol. 4 ¶ 501.02 at 501-16 (16th ed. 2011) ("Federal Rule of Bankruptcy Procedure 3005, in conjunction with section 501(b), makes clear that any entity that may be liable on a debt of the debtor is authorized to file in the name of the creditor."). The plain language of Section 501(b) and Rule 3005, coupled with the Advisory Committee's statement, demonstrates that Rule 3005 means exactly what it says: that *any* party that could be compelled to pay a creditor the amounts owed by a debtor has the right to file a proof of claim to preserve that creditor's right to payment during the 30-day period after a bar date.

14.    Section 501(b) is part of a statutory scheme for treating various types of claims of parties sharing liabilities with debtors, sometimes referred to as "co-debtors." The same terminology ("liable with the debtor") appears in three different Bankruptcy Code sections:

§ 501(b)       The statutory basis for Rule 3005, quoted above;

§ 502(e)(1)    The treatment of reimbursement or contribution claims of "*an entity that is liable with the debtor*"; and

§ 509(a)       The treatment of subrogation claims of "*an entity that is liable with the debtor.*"

15.    Courts look to the case law for these three Bankruptcy Code sections interchangeably for guidance on whether a party is "liable with the debtor." *See*, *e.g.*, *In re Wedtech Corp.*, 87 B.R. 279, 283-87 (Bankr.S.D.N.Y. 1988) (reading § 502(e)(1) together with § 501(b) and § 509(a) for the meaning of "an entity that is liable with the debtor"); *In re Denby Stores, Inc.*, 86 B.R. 768, 773-76 (Bankr.S.D.N.Y. 1988) (interpreting claims under § 502(e)(1), § 509 and Rule 3005); *In re Morgan*, 2003 WL 1728667 at *1-2 (Bankr.S.D.Ga. 2003) (applying §§ 501(b), 502(e)(1) and 509 to filed claims).

16.    Courts applying these Code sections to claims disputes have ruled that *any* party that is an alternate source of recovery for a creditor looking for payment of the same debt that the

6

creditor holds against a debtor qualifies as a party "liable with the debtor," regardless of the legal basis for the creditor's recovery from the co-debtor. *In re Baldwin-United*, 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985) ("The phrase 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis."). The source of or legal theory behind a party's co-liability plays no role in this analysis: "… co-liability exists when each party is obligated to pay the same person for the same benefits even if the obligations of each party arise from a different source." *In re Dow Corning*, 244 B.R. 705, 715 (Bankr.E.D.Mich. 1999).

17.    The courts have found various types of shared liability to constitute such "co-liability" for purposes of the Bankruptcy Code, such as: (i) an entity required by statute or regulation to cover the debtor's payment obligation as an alternative source of recovery, even if such entity had no involvement in the debt being covered;[4] (ii) a joint tortfeasor, even if its liability was based on its own, independent behavior rather than the debtor's;[5] or (iii) a "responsible person" for a debtor's tax obligations.[6]

---

[4] *Dow Corning*, 244 B.R. 705, 714-15 (Bankr.E.D.Mich. 1999) (U.S. government agencies that were statutorily bound to pay medical costs related to breast implants manufactured by the debtor were co-liable with the debtor); *In re White Motor Corp.*, 731 F.2d 372, 374 (6th Cir. 1984) (PBGC was statutorily bound to cover pension benefits of the debtor's employees, so it was co-liable with the debtor).

[5] *Wedtech*, 87 B.R. at 283-87 (accounting firm was potentially co-liable with the debtor defense contractor for securities violations related to securities issued by the debtor); *In re Baldwin-United*, 55 B.R. 885, 890-92 (Bankr.S.D.Ohio 1985) (brokers were co-liable with the debtor that issued annuities); *In re Provincetown-Boston Airlines*, 72 B.R. 307, 309-10 (Bankr.M.D.Fla. 1987) (underwriter was co-liable with the debtor that issued securities); *In re The Charter Company*, 81 B.R. 644, 646-48 (M.D.Fla. 1987), *aff'd*, 862 F.2d 1500 (11th Cir. 1989) (co-defendants in hazardous waste suits were co-liable with the debtor); *In re The Celotex Corp.*, 289 B.R. 460, 465-66 (Bankr.M.D.Fla. 2003) (manufacturer of asbestos products was co-liable with the debtor that also manufactured asbestos products); *In re Amatex Corp.*, 110 B.R. 168, 169-72 (Bankr.E.D.Pa. 1990) (same).

[6] *In re Fiesole Trading Corp.*, 315 B.R. 198, 204-7 (Bankr.D.Mass. 2004) (person legally responsible for withholding taxes that the debtor failed to pay was co-liable with the debtor); *In re Leonard*, 112 B.R. 67, 72-73 (Bankr.D.Conn. 1990) (same).

18.    As the bankruptcy court stated in *Celotex*, in the context of interpreting the meaning of "liable with the debtor" in Section 502(e)(1):

> First, the term "liable with the debtor" in § 502(e)(1) connotes *a wide spectrum of co-obligors, far beyond the mere guarantor or surety. Wedtech,* 87 B.R. at 287; *Baldwin-United,* 55 B.R. at 890-91.
> ….
> These claimants lose because the terms in § 502 such as "liable with the debtor" and the terms "reimbursement or contribution claim" have been determined to be *extremely inclusive and do not have to be based on a specific co-obligor theory, or on an adjudication of joint liability. Amatex Corp.,* 110 B.R. at 171.

*Celotex*, 289 B.R. at 465-66 (emphasis added).  As noted above, courts have interpreted "liable with the debtor" interchangeably under §§ 501(b), 502(e)(1) and 509(a).

19.    Courts have thus found any entities that provide alternate sources of recovery for a creditor to be "*liable with the debtor*," despite the legal basis of their liability being different and independent from the basis of the debtor's liability.  The use of "liable with the debtor" in Rule 3005 thus casts a very broad ambit and empowers any party that a creditor could look to as an alternate source of payment on the creditor's claim against the debtor to file that creditor's claim during the 30-day period after the bar date.

ii.    **AllianceBernstein's Co-Liability with LBHI to the Pension Fund**

20.    At the time the Pension Fund entered into the Swap Agreement with LBIE (and the related Guaranty with LBHI), AllianceBernstein assumed a fiduciary duty as an investment adviser – and potential legal exposure – that could make AllianceBernstein liable for any losses incurred by the Pension Fund in its swap investment if such losses are shown to be based on AllianceBernstein's conduct in managing the swap.  AllianceBernstein in effect served as a "contingent surety" on the swap, agreeing to make the Pension Fund whole on its losses if such losses were based on certain future events, such as AllianceBernstein's own conduct in managing the swap as the Fund's investment adviser.

8

21.    AllianceBernstein's potential liability to the Pension Fund arises from contractual and regulatory requirements and common law precedents, and is grounded in well-known securities industry and fiduciary practices.  The SEC has consistently articulated the underlying principle that investment advisers owe fiduciary duties to their client funds, including affirmative duties of good faith, loyalty and care.[7]  More specifically, the SEC has stated that investment advisers are responsible for correcting trading errors in their clients' accounts.[8]  In addition, state law may provide clients with common law remedies for breach of fiduciary duty or negligence.[9]

22.    In accordance with this industry practice, AllianceBernstein has adopted an error correction policy by which it has incorporated this fiduciary standard to its management of client accounts.[10]  Specifically, this policy states that AllianceBernstein serves as a fiduciary to its

---

[7] SEC Staff, Study on Investment Advisers and Broker-Dealers As Required by Section 913 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Jan. 2011) (the "SEC Dodd-Frank Study"), at 22:

> Under the Advisers Act, an adviser is a fiduciary. This fiduciary standard applies to the investment adviser's entire relationship with its clients and prospective clients, imposes upon investment advisers the "affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation to 'employ reasonable care to avoid misleading'" their clients and prospective clients.
> Fundamental to the federal fiduciary standard are the duties of loyalty and care.  The duty of loyalty requires an adviser to serve the best interests of its clients, which includes an obligation not to subordinate the clients' interests to its own.  (citations omitted)

See also SEC Division of Investment Management and Office of Compliance Inspection and Examinations, Information for Newly-Registered Investment Advisers, Nov. 23, 2010 ("As an investment adviser, you are a 'fiduciary' to your advisory clients. This means that you have a fundamental obligation to act in the best interests of your clients and to provide investment advice in your clients' best interests").

[8] SEC No-Action Letter provided to Charles Lerner, Esq. (pub. avail. Oct 25, 1988) ("if an investment manager makes an error while placing a trade for [a customer] account, then the investment manager, in order to comply with its obligation to its customer, must bear any costs of correcting such trade").

[9] SEC Dodd-Frank Study, at 45, citing state law cases ("Other remedies a client has against prohibited action by an investment adviser depend on applicable state law.  A client could make a state common law claim that the adviser has violated its fiduciary duty, was negligent or committed fraud.") (case citations omitted).

[10] Wallin Affidavit, at Paragraph 5.

clients and, when it discovers it has made a mistake in performing any of its responsibilities, its policy is to timely correct the error and "put the client in the position they would have been in had we not made the error."  The Pension Fund is subject to this error correction policy.[11] Consistent with this policy and with the fiduciary standards described above, to the extent that AllianceBernstein's investment advice to the Pension Fund played a role in the Fund's failure to file a proof of claim by the General Bar Date, the Pension Fund might have the right to look to AllianceBernstein as an alternate source of payment for its claim against LBHI.  It is possible that the Fund might hold AllianceBernstein liable for the failure to timely file its claim against LBHI by the General Bar Date of September 22, 2009.  As a result, AllianceBernstein has taken the necessary steps as a public company to reflect this potential liability to the Pension Fund on its books and records.[12]

23.    This potential liability arose at the same time as the Pension Fund's claim against LBHI arose: when the Fund first entered into the Swap Agreement with LBIE and the related Guaranty with LBHI, which is precisely when AllianceBernstein's fiduciary duties to the Fund with respect to this particular swap investment also arose.  AllianceBernstein's potential liability, moreover, is identical to that owed by LBHI to the Fund, because to the extent that AllianceBernstein might be found liable to the Fund with respect to the late filing, the damages it would owe would be identical to the creditor recoveries the Fund would have received from LBHI had the claim been timely filed.  To the extent any distributions would have been paid on such claim under the Debtors' confirmed chapter 11 plan of reorganization, AllianceBernstein might be liable to the Fund for the amount of such "missed" distributions.

---

[11] *Id.*  The relevant text from the error correction policy is set forth in the Affidavit.

[12] Wallin Affidavit, at Paragraphs 6-7.

24.     In other words, the debt that AllianceBernstein might owe to the Pension Fund with respect to the late-filed claim is the same debt and arose at the same time as the damages that LBHI would owe to the Fund on the swap.  Both debts arose from the underlying Swap Agreement and Guaranty, and the amount paid by either AllianceBernstein or the Debtors on such claim would be identical.

**B.**     **RULE 3005 EMPOWERED ALLIANCEBERNSTEIN, AS AN ENTITY LIABLE WITH THE DEBTORS TO THE PENSION FUND, TO FILE THE RULE 3005 CLAIM ON OR BEFORE OCTOBER 22, 2009**

25.     As a legal and practical matter, AllianceBernstein is thus clearly an entity that "is or may be liable with" LBHI to the Pension Fund with respect to the Fund's swap-related claim. AllianceBernstein is a co-debtor with LBHI for purposes of Rule 3005, and was entitled to file the Rule 3005 Claim during the 30-day window provided by the Rule.

26.     Under the facts described above, and under the courts' broad reading of "liable with the debtor" as it is used in the Bankruptcy Code, AllianceBernstein timely filed the Rule 3005 Claim on October 22, 2009, within 30 days after the General Bar Date.  The Debtors improperly objected to this claim as "late filed," notwithstanding the clear, unambiguous statements in the claim that it was being filed pursuant to Rule 3005.  The Debtors have otherwise made no objection to the amount or substance of the claim, and it should be allowed as filed.

## <u>CONCLUSION</u>

27.    For the reasons set forth herein, AllianceBernstein respectfully requests that the Court (a) deny the Claim Objection as it relates to the Rule 3005 Claim, (b) rule that the Rule 3005 Claim was timely filed; and (c) grant such other and further relief as may be just and appropriate with respect to such claim.

DATE: October 13, 2011                          Respectfully submitted,


By:  _____*/s/* Robert Honeywell_____

Richard S. Miller
Robert Honeywell
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile:  (212) 536-3901

ATTORNEYS FOR ALLIANCEBERNSTEIN, L.P.,
AS INVESTMENT ADVISER TO PHILIPS
PENSION TRUSTEES LIMITED AS TRUSTEE OF
THE PHILIPS PENSION FUND