# EXHIBIT C

(Multicurrency-Cross Border)

# ISDA

International Swaps and Derivatives Association, Inc.

# MASTER AGREEMENT

dated as of January 22, 2007

| LEHMAN BROTHERS INTERNATIONAL (EUROPE) | AllianceBernstein Limited, as Investment Manager for each entity listed on Annex I attached hereto, severally and not jointly ("Party B") |

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1.  **Interpretation**

(a)     *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)     *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purposes of the relevant Transaction.

(c)     *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2.     **Obligations**

(a)     *General Conditions.*

   (i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

   (ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

   (iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

ANNEX I

To the
SCHEDULE to the Master Agreement
dated as of January 22, 2007

Each UK Pension Fund listed below, each shall constitute a separate agreement with respect to each UK Pension Fund, as if each had executed a separate agreement naming only itself as Party B.

| Full Legal name of Counterparty (each a "Party B" or "UK Pension Fund") | |
|---|---|
| Philips Pension Trustees Limited as Trustee of the Philips Pension Fund | |

For purposes of Notices under Section 12(a) of the Agreement and as further provided in Part 4(a)(ii), notices and communication shall be provided as follows:

Address:    Philips Electronics UK Limited

            Cross Oak Lane
            Redhill
            Surrey
            RH1 5HA
Attention:  Valerie Benton

Facsimile No: 01293 815494
Telephone No: 01293 815533

"Operative Documents" with respect to this Party B shall mean the Trust Deed dated 11 April 1997, the Fund Rules, Party B's Statement of Investment Principles, the Discretionary Fund Management Agreement between Philips Pension Trustees Limited as Trustee of the Philips Pension Fund and AllianceBernstein Limited, the Memorandum and Articles of Association of the Trustee and other constituent documents, investment policies, procedures, restrictions, or guidelines and the then-current disclosure document of this Party B.

"Trustee" with respect to this Party B shall mean Philips Pension Trustees Limited.

# LEHMAN BROTHERS

### GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC. (London Branch)

LEHMAN BROTHERS INTERNATIONAL (EUROPE) ("Party A") and AllianceBernstein Limited, as Investment Manager for each entity listed on Annex I ("Party B") have entered into a Master Agreement dated as of January 22, 2007 as amended from time to time (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC. (London Branch), a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a)   Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A in connection with each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement (whether at maturity, by acceleration or otherwise).. Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b)   Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c)   Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into any amendments to the Agreement, additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defense of payment or statute of limitations, neither of which is waived) provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d)   This Guarantee shall remain in full force and effect until the first to occur of (i) receipt by Party B of a written notice of termination from Guarantor or (ii) none of the obligations of Party A remain outstanding.. Termination of this Guarantee shall not affect Guarantor's liability hereunder as to obligations incurred or arising out of Transactions entered into prior to the termination hereof.

(e)   Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f)   Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

1

LEHMAN BROTHERS HOLDINGS INC.
25 BANK STREET E14 5LE TELEPHONE +44 (0)20 7102 1000
REGISTERED IN ENGLAND (NO. FC022460) AT THE ABOVE ADDRESS.
LEHMAN BROTHERS HOLDINGS INC. IS INCORPORATED IN THE
STATE OF DELAWARE, U.S.A (NO. 2024634)
WITH ITS HEAD OFFICE AT 745 SEVENTH AVENUE, NEW YORK, NEW YORK 10019

# LEHMAN BROTHERS

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.<br>
(London Branch)

By:

*[signature]*
JAMES J. KILLERLANE, VICE PRESIDENT

Name: James J. Killerlane III
Title: Vice President
Date: February 5, 2007

LEHMAN BROTHERS HOLDINGS INC.
25 BANK STREET E14 5LE TELEPHONE +44 (0)20 7102 1000
REGISTERED IN ENGLAND (NO. FC022460) AT THE ABOVE ADDRESS.
LEHMAN BROTHERS HOLDINGS INC. IS INCORPORATED IN THE
STATE OF DELAWARE, U.S.A (NO. 2024634)
WITH ITS HEAD OFFICE AT 745 SEVENTH AVENUE, NEW YORK, NEW YORK 10019