JEFFREY L. LIDDLE, ESQ.  
MICHAEL E. GRENERT, ESQ.  
LIDDLE & ROBINSON, L.L.P.  
*Attorneys for James G. Lister*  
800 Third Avenue, 8th Floor  
New York, New York 10022  
(212) 687-8500

Hearing Date: October 27, 2011  
10:00 AM

**Claim No. 17624**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------X  
In re  
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  

                      Debtors.  
------------------------------------------------------------X

: Chapter 11  
:  
: Case No. 08-13555 (JMP)  
:  
: (Jointly Administered)

### RESPONSE OF JAMES G. LISTER TO DEBTORS' ONE HUNDRED EIGHTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (COMPOUND CLAIMS)

**TO THE HONORABLE JAMES M. PECK**  
**UNITED STATES BANKRUPTCY JUDGE:**

        James G. Lister ("Lister"), by his attorneys, Liddle & Robinson, L.L.P., as and for his response to Debtors' One Hundred Eighty-Fifth Omnibus Objection to Claims ("Objection"), specifically objecting to the allowance of the proof of claim submitted by Lister (Claim No. 17624), represents to this Court as follows:

#### SUMMARY OF ARGUMENT

        1.    In their Objections, Debtors first seek to reclassify Mr. Lister's claim based on his deferred compensation in the form of restricted stock units ("RSUs") and stock options as an equity interest. Debtors' argument should be rejected, however, for the following reasons.

a. Mr. Lister's claim is <u>not</u> that he should receive the RSUs and stock options or the value thereof. Rather, Mr. Lister's claim is that pursuant to the New York Labor Law, Section193, his compensation should have been paid 100% in cash, and therefore, he should never have been paid in the form of RSUs and stock options in the first place. Mr. Lister was awarded annual bonus compensation. The New York Labor Law requires that such compensation be paid in cash. Instead, Mr. Lister was paid partially in cash and partially in RSUs and stock options. As discussed further below, New York Labor Law section 193 prohibits such deductions from an employee's wages where, as in Mr. Lister's case, he did not expressly authorize the Firm in writing to make such deductions, and the deductions were not for the benefit of the employee. Thus, Mr. Lister should have been paid all in cash. His claim in this bankruptcy proceeding is for the <u>cash</u> that he should have received, instead of the RSUs and stock options. This claim, therefore, is not a claim for an equity interest.

b. In the alternative, even if the award of RSUs and stock options to Mr. Lister were proper under the New York Labor Law, his claim for the RSUs and stock options is not a claim for an equity interest. The RSUs and stock options were in substance bonus compensation, not the issuance of equity to an investor.

2. Debtors' arguments should be rejected, however, because Lehman Holdings' own actions caused Mr. Lister, along with numerous other former employees of Lehman Inc., to file their claims for unpaid severance payments in the Lehman

2

Holdings bankruptcy. Specifically, Lehman Holdings sent letters to Mr. Lister and others cutting off their severance payments when the bankruptcy proceeding commenced. This led Mr. Lister and many others to file their claims in the Lehman Holdings bankruptcy. Therefore, under the Court's powers of equity and the doctrine of unclean hands, Mr. Lister should be allowed to pursue his claim for unpaid severance in this Lehman Holdings bankruptcy proceeding, or, alternatively, be permitted to move his claim for unpaid severance payments to the Lehman Inc. bankruptcy, with his filing date deemed to be when he initially filed his claim in the Lehman Holdings bankruptcy.

## FACTS

3. On September 18, 2009, Mr. Lister filed a proof of claim for the total amount of $5,332,393.02 for unpaid deferred compensation and unpaid severance pay ("Lister Proof of Claim"), attached hereto as Exhibit 1. The deferred compensation is comprised of unpaid and unvested RSUs related to Mr. Lister's employment for the years 2003 through 2008 ($4,564,437.24) and stock options provided to Mr. Lister in the period from 2001 through 2003 ($575,679.70). The unpaid severance amount is $192,265.08. As stated in the Lister Proof of Claim, Mr. Lister seeks interest at 9% per year under New York CPLR 5001 and 5004 for the unpaid severance claim.

4. In their Objections, Debtors seek to reclassify Mr. Lister's unpaid deferred compensation claim as an equity interest. As for Mr. Lister's unpaid severance claim, Debtors argue that by having filed his proof of claim in the Lehman Holdings bankruptcy proceeding rather than the Lehman Inc. bankruptcy proceeding, Mr. Lister's claim should be disallowed and expunged.

5. Debtors's Objections should be denied for the reasons stated below.

## ARGUMENT

### I. MR. LISTER'S UNPAID DEFERRED COMPENSATION CLAIM

6.  Lehman unilaterally deferred portions of employee bonuses in the form of RSUs and stock options, both of which vested over a period of time ranging from 5 years (RSUs) to 10 years (stock options). This deferral of compensation was not optional. Employees had no choice but to accept the deferral of their earned bonuses. For the reasons set forth below, this was a wrongful deduction of wages in violation of New York Labor Law § 193. Mr. Lister should have been paid his wages in cash rather than having the wages deferred vis-à-vis RSUs and stock options. Since part of Mr. Lister's claim is that he should have been paid in cash and not RSUs and stock options in the first place, his claim should not be reclassified as an equity interest.

7.  Alternatively, even if no violation of New York Labor Law § 193 is found, Mr. Lister's bonuses in the form of unvested and unpaid RSUs and stock options should not be reclassified as equity interests because their characteristics are more akin to wages than to equity interests.

#### A.   Violation of New York Labor Law § 193
         (Restricted Stock Units And Stock Options)

8.  Mr. Lister received various equity awards of restricted stock in Lehman Brothers Holdings Inc. as an employee of a subsidiary. (A copy of those awards is attached as Exhibit A to the Lister Proof of Claims attached hereto as Exhibit 1.) While those awards were worth $23,203.69 based on the .26 stock price at the beginning of September 15, 2008 (.26 x. 89,244.98 shares), the day the bankruptcy case was filed, Mr. Lister's claim is for the $4,564,437.24 value of those awards on the dates the restricted stock awards were initially granted to him. The reason for this is that Lehman's deferral of a portion of his bonus

compensation each year into restricted stock was an unlawful deduction from wages in violation of Section 193 of the New York Labor Law.

9. While Mr. Lister's bonuses were awarded in cash amounts, Lehman required that part of the bonuses be deferred in the form of restricted stock that Mr. Lister could not sell immediately but that instead vested over time. Lehman did not obtain express written authorization from Mr. Lister to deduct a specific dollar portion of his bonuses and defer it into restricted stock rather than pay it to him in cash.

10. Lehman's forced deferral of a portion of Mr. Lister's bonuses into restricted stock, rather than pay him in cash, violated Section 193 of the New York Labor Law and its related regulation. Section 193 provides that:

> 1. No employer shall make any deduction from the wages of an employee, except deductions which:
>    a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>    b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

11. The regulations to this section of the New York Labor Law provide that Section 193, subsection 1(b), of the New York State Labor Law permits an employer to make deductions from an employee's wages for certain enumerated items and also for "similar payments for the benefit of the employee." Permitted deductions for all such non-enumerated items shall not exceed, in the aggregate, 10 percent of the gross wages due the employee for a payroll period. NYCRR §195.1.

5

12. Lehman's deferral of a portion of Mr. Lister's bonuses into restricted stock that was subject to forfeiture, rather than paying all of the bonus in cash, was not "expressly authorize[] in writing by" Mr. Lister. "Express authority" means "[a]uthority delegated to agent by words which expressly authorize him to do a delegable act. Authority distinctly, plainly expressed". Black's Law Dictionary 691 (Rev. 4th ed. 1968). Mr. Lister did not provide Lehman with such express written authority to deduct a specific dollar amount of his bonuses each year and defer it into restricted stock and stock options. Rather, when Lehman informed Mr. Lister at the end of each year of the amount of his bonus for the year, it determined the portion that would be deferred.

13. Nor was this deferral "for the benefit of the employee." Rather, it was for the benefit of Lehman to serve as a retention device incentivizing employees to remain at Lehman so that they did not forfeit their restricted stock, and as an incentive for laid off employees to sign a release of any legal claims against Lehman so that they did not forfeit their restricted stock.

14. In addition, restricted stock is not among the list in the Labor Law of deductions that could be expressly authorized in writing.

15. Furthermore, even if the deferral of a portion of Mr. Lister's compensation into restricted stock were permitted under the Labor Law, Lehman violated the 10% limit set forth in the Labor Law's regulations.

16. The portion of Mr. Lister's bonuses that were deferred in the form of restricted stock and stock options, and the number of shares awarded to him, were based upon the value of Lehman's stock at the time of the awards (the values on the grant dates are contained

in an email from Lehman to Mr. Lister attached as <u>Exhibit B</u> to the Lister Proof of Claim attached hereto as <u>Exhibit 1</u>). The value at the time of the awards was thus calculated as follows:

```
12/10/03 award 15,969.62 shares x $35.6950 value as of 12/10/03 = $570,035.59
12/9/04  award 19,114.22 shares x $42.9000 value as of 12/9/04  = $820,000.04
11/30/05 award 13,968.26 shares x $63.0000 value as of 11/30/05 = $880,000.38
12/8/06  award 15,578.64 shares x $77.0300 value as of 12/8/06  = $1,200,022.64
12/7/07  award 15,124.92 shares x $63.4700 value as of 12/7/07  = $959,978.67
7/1/08   award 6,412.21 shares x $20.9600 value as of 7/1/08   = $134,399.92
TOTAL                                                             $4,564,437.24
```

17. Under Section 198 of the Labor Law, which provides the remedies for the violation of Section 193, Lehman is also liable to Mr. Lister for his attorneys' fees and costs incurred in obtaining payment of the withheld wages, and liquidated damages in the amount of 25 percent of the withheld wages because Lehman's failure to pay the wages was "willful." New York Labor Law § 198(1-a).

B.  Mr. Lister's Unpaid and Unvested RSUs
Are Not Equity Interests Subject to Subordination

18. In the alternative, even if the deferred compensation awarded in the form of RSUs and stock options is proper under the New York Labor Law, it is not an equity interest subject to subordination. In its Objection, Debtors do not seek to disallow Mr. Lister's claim based on unvested and unpaid RSUs. Instead, Debtors argue that such compensation is an equity interest subject to subordination and therefore should be reclassified. This is nothing more than a sleight of hand to deprive Mr. Lister of his earned bonuses.

19. On the one hand, by not arguing that Mr. Lister has forfeited his rights to the RSUs, Debtors are conceding that Mr. Lister still has a right to his earned bonus compensation. On the other hand, reclassifying Mr. Lister's RSUs as equity interests will have the effect of depriving Mr. Lister of any portion of his earned bonuses because, realistically, there will be no funds available in the Debtors' estate once their creditors have been paid.

Knowing that there is no legal basis to argue that Mr. Lister is not entitled to his earned bonus compensation, Debtors have resorted to a procedural runaround to avoid their obligations to pay Mr. Lister his earned compensation.

20.     Debtors' reliance on In re Enron Corp., 341 B.R. 141 (Bankr. S.D.N.Y. 2006), fails to distinguish between the facts in that case from the facts in this proceeding as they relate to Mr. Lister's claim. The Court in Enron was determining whether vested stock options, not unvested RSUs, could be subordinated in a bankruptcy proceeding under Section 510 of the Bankruptcy Code. It made no decision with regard to whether compensation in the form of unvested RSUs could be subordinated. In fact, the Court went so far as to state that "its conclusions apply only to stock options similar to those presented here. The Court issues no opinion as to whether stock options might be designed in such fashion that would result in different treatment under section 510(b)." Enron, 341 B.R. at 144 n. 3.

21.     Stock options are markedly different from RSUs as a form of deferred compensation. Stock options, being nothing more than a right to purchase shares of stock on a future date and at a pre-determined price, function primarily to allow employees to participate in and benefit from the future success of their employer. The Enron court also noted in that case that "stock options were frequently issued to employees to encourage higher quality work and to grant employees an equity stake in the company." Id. at 145.

22.     If at the time of vesting the stock options are "under water," then the employees have lost nothing more than the opportunity to purchase shares of company stock at a low price and sell the stock at a gain. Employees are not losing any earned compensation but are merely losing an opportunity to participate in profit-sharing. This is not the case with the RSUs granted to Mr. Lister.

23. For each year that he received bonus compensation, Mr. Lister had no choice but to accept a portion of his bonus in the form of RSUs. From a fixed and discrete bonus value for each year, a portion was attributed to cash and another portion attributed to RSUs. This is in marked contrast to an employee's decision "to trade the relative safety of cash compensation for the upside potential of shareholder status." In re WorldCom, Inc., Case No. 02-13533 (AJG), 2006 BL 125817 (Bankr. S.D.N.Y. Dec. 21, 2006), quoting Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F.3d 251, 257-58 (2d Cir. 2006). Mr. Lister was never presented with an opportunity to choose between an all-cash bonus and a mixed bonus of cash and RSUs. This was forced upon him.

24. The method of using RSUs to compensate Mr. Lister had nothing to do with providing Mr. Lister with the opportunity in the future to participate in profit-sharing based on the Debtors' success. Instead, it was structured to pressure Mr. Lister to remain with Lehman Inc. in order to receive what he was already owed. This only benefited the Debtors, not Mr. Lister.

25. Additionally, these RSUs did not provide Mr. Lister with the rights typically associated with owners of equity interests. Debtors made clear that these "RSUs cannot be sold, traded, or pledged" during the five-year vesting period. (See Exhibit A to the Lister Proof of Claim attached hereto as Exhibit 1.) Having stripped away Mr. Lister's rights as an equity holder under the RSU compensation plan, Debtors now seek utilize equity holder status to strip away his rights to his earned compensation and putting him on par with shareholders.[1]

---

[1] Debtors also cited Enron for the Court's holding in that case related to a phantom stock claim. This citation is misplaced because the claimant had purchased phantom stock shares and his ownership had vested prior to the bankruptcy petition date. See In re Enron, 341 B.R. 141 (Bankr. S.D.N.Y. 2006). The issue before the Court was whether Enron's failure to deliver the purchased phantom stock to the claimant would preclude the subordination of his claim. The Court ruled in favor of subordination. The claimant in Enron was no different from a shareholder or security holder in that he had purchased phantom stock (which vested), notwithstanding his not having physical possession of the stock. In Lister's case, there was no purchase of RSUs nor did they ever vest prior to the petition

9

26. From the beginning, Debtors have structured the RSU compensation scheme for their own benefit at the cost of their employees. Now in bankruptcy, Debtors once again seek to gain at the expense of their employees. Having never given Mr. Lister the status of an equity holder when they granted him bonuses in the form of RSUs, Debtors cannot now attempt to label him as an equity holder to avoid their obligation to return to Mr. Lister the value that he had earned and continues to be owed.

## II.   MR. LISTER'S UNPAID SEVERANCE CLAIM

27. Debtors also seek to deny Mr. Lister his severance payments based on an over-simplified argument that Mr. Lister was never an employee of Lehman Holdings.

28. Mr. Lister timely filed his proof of claim on September 18, 2009 in the Lehman Holdings bankruptcy proceeding.

29. As a quick review of Lehman Holdings' bankruptcy docket will demonstrate, Lehman Holdings created mass confusion among former employees of Lehman Inc. who were filing claims for their severance payments owed to them under their separation agreements. Around the end of September and in early October 2008, Lehman Holdings notified Lehman Inc.'s employees that they would no longer be receiving the severance payments due to the commencement of bankruptcy proceedings. In its October 7, 2008 letter to Mr. Lister ("October Letter"), Lehman Holdings described the status of various employee benefits in light of the bankruptcy proceedings as well as how to proceed to make claims for unpaid severance payments. (See October 7 Letter, attached hereto as Exhibit 2.) An identical letter, dated September 30, 2008, was sent to many other Lehman Inc. employees.   Based on this

---

date in this bankruptcy proceeding. There are no grounds for classifying Lister as an equity holder under these circumstances.

10

communication, many employees, including Mr. Lister, believed that Lehman Holdings was now in control of all matters pertaining to benefits and severance payments and therefore was the proper entity for the filing of unpaid severance claims.

30. Having caused this widespread confusion, Lehman Holdings now seeks to avoid its obligations to pay Mr. Lister the amounts owed to him under his separation agreement (see Exhibit D of Lister's Proof of Claim attached hereto as Exhibit 1) by arguing that Mr. Lister was not an employee of Lehman Holdings.

31. Lehman Holdings should not be permitted to benefit from its unclean hands. Having led so many of Lehman Inc.'s employees to believe that the parent entity was in control of all employee-related claims in the bankruptcy proceedings, Lehman Holdings cannot now seek to disclaim any responsibility for creating such confusion.

32. "As a court of equity, this Court may exercise its equitable power to ensure that substantial justice is achieved." In re Johns-Manville Corp., 440 B.R. 604, 614 (Bankr. S.D.N.Y. 2010), citing Pepper v. Litton, 308 U.S. 295, 304-05 (1939). Given how many Lehman Inc. employees, including Mr. Lister, have filed their severance claims in the Lehman Holdings bankruptcy proceeding, fairness concerns dictate that this Court establish a proper remedy to prevent the unjust result of depriving employees who filed their claims on a timely basis and in good faith reliance upon the instructions of Lehman Holdings contained in the September Letter. Equitable considerations weigh strongly in favor of allowing Mr. Lister's claim for owed severance payments to proceed by either having his severance claim transferred to the Lehman Inc. bankruptcy proceeding, or, alternatively, permitting Mr. Lister to file his severance claims in the Lehman Inc. bankruptcy proceeding at this time.

WHEREFORE, for all of the foregoing reasons, Claimant James G. Lister requests that this Court deny Debtors' One Hundred Eighty-Fifth Omnibus Objection to Claims, together with such other and further relief as is just and proper.

Dated: New York, New York
October 13, 2011

                                          LIDDLE & ROBINSON, L.L.P.

                                          By: /s/ Jeffrey L. Liddle
                                                Jeffrey L. Liddle
                                                Michael E. Grenert
                                        800 Third Avenue
                                        New York, New York 10022
                                        (212) 687-8500
                                        *Attorneys for Claimant James G. Lister*

To:

Weil, Gotshal & Manges LLP
*Attorneys for the Debtors*
767 Fifth Avenue
New York, New York  10153
Attn:  Robert J. Lemons, Esq.
         Mark Bernstein, Esq.


Office of the United States Trustee for Region 2
33 Whitehall Street, 21st Floor
New York, New York  10004
Attn:  Tracy Hope Davis, Esq.
         Elisabetta Gasparini, Esq.

    Andrea B. Schwartz, Esq.

Milbank, Tweed, Hadley & McCloy LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
<u>Attn</u>: Dennis F. Dunne, Esq.
   Dennis O'Donnell, Esq.
   Evan Fleck, Esq.