# Exhibit 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

## PROOF OF CLAIM

| | |
|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings, Inc.** | Case No. of Debtor<br>**08-13555** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

James G. Lister
4 Mayfair Road
St. Louis, MO 63124

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
 (If known)

Filed on: _____

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al
08-13555 (JMP)     0000017624

Telephone number: (314) 567-5009   Email Address: iamjlister@gmail.com

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:     Email Address:

---

**1.   Amount of Claim as of Date Case Filed:** $ 5,332,393.02

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** Restricted stock and stock option awards, and severance
(See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
    3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

**4.   Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other

Describe: _____

Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ 10,950

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED
SEP 1 8 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>9/18/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>*Michael C. Bracket, Partner - Liddle & Robinson, L.L.P. Attorney for Creditor* |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, PO Box 5076**
**New York, NY 10150-5076**

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**Proof of Claim for Creditor James G. Lister**
**Case No. of Debtor Lehman Brothers Holdings Inc. 08-13555**

## SUMMARY

1.    The $5,332,393.02 "amount of claim as of date case filed" was calculated by adding the amounts in a, b, and c below.

     a.    Restricted stock.  Mr. Lister received various equity awards of restricted stock in Lehman Brothers Holdings Inc. as an employee of a subsidiary.  (A copy of those awards is attached hereto as Exhibit A.)    While those awards were worth $23,203.69 based on the .26 stock price at the beginning of September 15, 2008 (.26 x. 89,244.98 shares), the day the bankruptcy case was filed, Mr. Lister's claim is for the $4,564,437.24 value of those awards on the dates the restricted stock awards were initially granted to him.  The reason for that is that Lehman's deferral of a portion of his bonus compensation each year into restricted stock was an unlawful deduction from wages in violation of Section 193 of the New York Labor Law.

     While Mr. Lister's bonuses were awarded in cash amounts, Lehman required that part of the bonuses be deferred in the form of restricted stock that Mr. Lister could not sell immediately but that instead vested over time.  Lehman did not obtain express written authorization from Mr. Lister to deduct a specific dollar portion of his bonuses and defer it into restricted stock rather than pay it to him in cash.

     Lehman's forced deferral of a portion of Mr. Lister's bonuses into restricted stock, rather than pay him in cash, violated Section 193 of the New York Labor Law and its related regulation.  Section 193 provides that:

     1.    No employer shall make any deduction from the wages of an employee, except deductions which:
          a.    are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
          b.    are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises.  Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

The regulations to this section of the New York Labor Law provide that

Section 193, subsection 1(b), of the New York State Labor Law permits an employer to make deductions from an employee's wages for certain enumerated items and also for "similar payments for the benefit of the

employee." Permitted deductions for all such non-enumerated items shall not exceed, in the aggregate, 10 percent of the gross wages due the employee for a payroll period. [NYCRR §195.1.]

Lehman's deferral of a portion of Mr. Lister's bonuses into restricted stock that was subject to forfeiture, rather than paying all of the bonus in cash, was not "expressly authorize[] in writing by" Mr. Lister. "Express authority" means "[a]uthority delegated to agent by words which expressly authorize him to do a delegable act. Authority distinctly, plainly expressed". Black's Law Dictionary 691 (Rev. 4th ed. 1968). Mr. Lister did not provide Lehman with such express written authority to deduct a specific dollar amount of his bonuses each year and defer it into restricted stock and stock options. Rather, when Lehman informed Mr. Lister at the end of each year of the amount of his bonus for the year, it determined the portion that would be deferred.

Nor was this deferral "for the benefit of the employee." Rather, it was for the benefit of Lehman to serve as a retention device incentivizing employees to remain at Lehman so that they did not forfeit their restricted stock, and as an incentive for laid off employees to sign a release of any legal claims against Lehman so that they did not forfeit their restricted stock.

In addition, restricted stock is not among the list in the Labor Law of deductions that could be expressly authorized in writing.

Furthermore, even if the deferral of a portion of Mr. Lister's compensation into restricted stock were permitted under the Labor Law, Lehman violated the 10% limit set forth in the Labor Law's regulations.

The portion of Mr. Lister's bonuses that were deferred in the form of restricted stock, and the number of shares awarded to him, were based upon the value of Lehman's stock at the time of the awards (the values on the grant dates are contained in an email from Lehman to Mr. Lister attached as Exhibit B). The value at the time of the awards was thus calculated as follows:

12/10/03 award 15,969.62 shares x $35.6950 value as of 12/10/03 = $570,035.59
12/9/04 award 19,114.22 shares x $42.9000 value as of 12/9/04 = $820,000.04
11/30/05 award 13,968.26 shares x $63.0000 value as of 11/30/05 = $880,000.38
12/8/06 award 15,578.64 shares x $77.0300 value as of 12/8/06 = $1,200,022.64
12/7/07 award 15,124.92 shares x $63.4700 value as of 12/7/07 = $959,978.67
7/1/08 award 6,412.21 shares x $20.9600 value as of 7/1/08 = $134,399.92
TOTAL                                                          $4,564,437.24

Under Section 198 of the Labor Law, which provides the remedies for the violation of Section 193, Lehman is also liable to Mr. Lister for his attorneys' fees and costs incurred in obtaining payment of the withheld wages, and liquidated

damages in the amount of 25 percent of the withheld wages because Lehman's failure to pay the wages was "willful." New York Labor Law § 198(1-a).

b.  Stock options. Mr. Lister received various equity awards of stock options in Lehman Brothers Holdings Inc. as an employee of a subsidiary. (A copy of those awards is attached hereto as Exhibit A.) While those options were "under water" based on the .26 stock price at the beginning of September 15, 2008, the day the bankruptcy case was filed, Mr. Lister's claim is for the $575,679.70 value of those awards on the dates the options were initially granted to him. The reason for that is that Lehman's deferral of a portion of his bonus compensation each year into stock options was an unlawful deduction from wages in violation of Section 193 of the New York Labor Law, as discussed in section 1.a. above.

The portion of Mr. Lister's bonuses that were deferred in the form of stock options, and the number of options awarded to him, were based upon the value of Lehman's stock at the time of the awards (the values of the options on the grant dates are contained in an email from Lehman to Mr. Lister attached as Exhibit C). The value at the time of the awards was thus calculated as follows:

12/20/01 award 4,536 options x $7.165 value as of 12/20/01 = $32,500.44
12/3/01 award 18,166 options x $10.51 value as of 12/3/01 = $190,924.66
12/11/02 award 24,028 options x $9.125 value as of 12/11/02 = $219,255.50
12/10/03 award 13,676 options x $9.725 value as of 12/10/03 = $132,999.10
TOTAL                                                                                  $575,679.70

c.  Severance. Mr. Lister was given an agreement and release dated September 9, 2008 (which is attached hereto as Exhibit D), which he signed. Pursuant to that agreement, Lehman was obligated to pay him two months' salary from September 9, 2008 to November 8, 2008. It paid him through October 18, and so owes him $11,506.85 for October 18 to November 8, 2008 (21/365 x. $200,000 salary). Pursuant to the agreement, Lehman also owes Mr. Lister 45 weeks of severance pay, which amounts to $173,076.92 (45/52 x $200,000), and 2 weeks of unused vacation pay, which amounts to $7,692.31 (2/52 x $200,000). The total owed pursuant to the agreement is $192,276.08. Mr. Lister also seeks interest at 9% per year under New York CPLR 5001 and 5004.

3

# Exhibit A

**ALL TERMS REMAIN SUBJECT TO THE RULING OF THE U.S. BANKRUPTCY COURT.***

# LEHMAN BROTHERS
### Executive Compensation Summary
#### JAMES G. LISTER

## EQUITY AWARDS

| Grant Date | Plan | Shares Granted | Number of Shares | Status |
|---|---|---|---|---|
| December 10, 2003 | MD Award | 15,969.62 | 5,589.36 | Vested |
| | | | 10,380.26 | Unvested |
| December 9, 2004 | MD Award | 19,114.22 | 6,689.98 | Vested |
| | | | 12,424.24 | Unvested |
| November 30, 2005 | MD Award | 13,968.26 | 13,968.26 | Unvested |
| December 8, 2006 | MD Award | 15,578.64 | 15,578.64 | Unvested |
| December 7, 2007 | MD Award | 15,124.92 | 15,124.92 | Unvested |
| July 1, 2008 | LBSAP | 6,412.21 | 6,412.21 | Unvested |
| | Dividend Reinvestment | 3,077.11 | 598.77 | Vested |
| | | | 2,478.34 | Unvested |
| | **Total Shares Vested:** | | **12,878.11** | |
| | **Total Shares Unvested:** | | **76,366.87** | |
| | **Total Shares Outstanding:** | | **89,244.98** | |

**2003 - 2007 MD Award:** These Restricted Stock Units ("RSUs") are subject to restrictions for a period of five years. The RSUs cannot be sold, traded, or pledged for that five-year period. Half of the principal portion (35% of your award) vests approximately three years after the grant date and the remaining half of the principal portion (35% of your award) and the discount portion (30% of your award) vest approximately five years after the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor. Notwithstanding the vesting schedule, RSUs will be forfeited in the event of a termination with Cause or if you engage in Detrimental Activity prior to the share payment date.

**July 2008 LBSAP:** These Restricted Stock Units ("RSUs") are subject to restrictions for a period of three years. The RSUs cannot be sold, traded, or pledged for that three-year period. The award vests in equal increments on November 30th of the first through third anniversaries of the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor. Notwithstanding the schedule above, RSUs will be forfeited in the event of a termination prior to November 30, 2008, in the event of a termination with Cause, or if you engage in Detrimental Activity prior to the share payment date.

**Dividend Reinvestment:** Until your RSUs convert to common stock, if dividends are declared, you will receive dividend equivalents. Your dividend equivalents will be automatically reinvested as additional RSUs. The RSUs you receive as dividend equivalents will be subject to the same conditions as the underlying RSUs to which they relate. In the event the underlying RSUs are forfeited, the related dividend reinvested RSUs will also be forfeited.

## STOCK OPTIONS

| Grant Date | Plan | Exercise Price | Options Outstanding | Options Exercisable | Expiration Date |
|---|---|---|---|---|---|
| September 20, 2001 | MD Options | $23.3200 | 4,536 | 4,536 | September 19, 2011 |
| December 3, 2001 | MD Options | $31.7000 | 18,166 | 18,166 | November 29, 2011 |
| December 11, 2002 | MD Options | $27.2100 | 24,028 | 24,028 | November 29, 2012 |
| December 10, 2003 | MD Options | $35.6950 | 13,676 | 4,786 | November 29, 2013 |
| | **Total Options:** | | **60,406** | **51,516** | |

**MD Options (except options granted in 2002):** Half of the principal portion (35% of your award) becomes exercisable approximately three years after the grant date, and the remaining half of the principal portion plus the discount portion (65% of your award) become exercisable approximately five years after the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor and engaging in Detrimental Activity.

**2002 MD Options:** The principal portion (75% of your award) becomes exercisable approximately two years after the grant date and the discount portion (25% of your award) becomes exercisable approximately five years after the grant date. Your entitlement is subject to your refraining from the activities outlined under the terms of the program, including working for a competitor and engaging in Detrimental Activity.

**NOTE: ALL TERMS AND CONDITIONS OF THE AWARDS ARE SUBJECT TO THE APPLICABLE CONTROLLING PLAN DOCUMENTS, INCLUDING BUT NOT LIMITED TO YOUR RESTRICTED STOCK UNIT AWARD AGREEMENT, THE STOCK OPTION AWARD AGREEMENT, THE EMPLOYEE INCENTIVE PLAN, THE EMPLOYEE INCENTIVE PLAN PROSPECTUS, THE 2005 STOCK INCENTIVE PLAN, AND THE 2005 STOCK INCENTIVE PLAN PROSPECTUS.**

* AS A RESULT OF LEHMAN BROTHERS HOLDINGS INC.'S BANKRUPTCY FILING, THE TREATMENT OF ALL OUTSTANDING EQUITY AWARDS REMAIN SUBJECT TO SUCH PROCEEDING IN THE U.S. BANKRUPTCY COURT.

Data as of September 12, 2008
Prepared on July 16, 2009

# Exhibit B

---------- Forwarded message ----------
From: Britz, Jamie (LBH) <jamibrit@lehman.com>
Date: Tue, Sep 15, 2009 at 2:12 PM
Subject: RE: Request for Deferred Compensation Data
To: James Lister <iamjlister@gmail.com>


Apologies - I have been sending so many of these out!  Please see the attached..

Let me know if you need anything else.

Thanks,
Jamie
_____

From: James Lister [mailto:iamjlister@gmail.com]

Sent: Tuesday, September 15, 2009 2:03 PM

To: Britz, Jamie (LBH)
Subject: Re: Request for Deferred Compensation Data


Thanks.  I was hoping for the plan documents.  Can you send them please?

Jamie
917-716-1111

--------

1

Sent from my iPhone...please excuse any typos.

On Sep 15, 2009, at 12:50 PM, "Britz, Jamie (LBH)" <jamibrit@lehman.com> wrote:


Hello Jamie,

As per your request, please see the attached Executive Compensation Summary. This details any outstanding shares that you have as part of the Equity Award Program, subject to such proceeding in the U.S. Bankruptcy Court.

For reference, I have included the FMV's on the grant dates for the awards that you were granted:

    12/10/2003 Award: $35.6950
    12/9/2004 Award: $42.9000
    11/30/2005 Award: $63.0000
    12/8/2006 Award: $77.0300
    12/7/2007 Award: $63.4700
    7/1/2008 Award: $20.9600

Hopefully this is helpful, please let me know if you have any additional questions.

Thanks,



Jamie Britz
Human Resources
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Phone: 646-333-8308
Email: <mailto:jamibrit@lehman.com> jamibrit@lehman.com


---

From: James Lister [mailto:iamjlister@gmail.com]
Sent: Tuesday, September 15, 2009 10:02 AM
To: Britz, Jamie (LBH)
Subject: Re: Request for Deferred Compensation Data


Jamie,

A few months ago you were kind enough to help me obtain my Executive Compensation Summary. I am hoping you can help me yet again with a request. I am looking for the MD RSU plan documents for 2003-2007. Please let me know if you have access to these documents or, if not, where I might turn next.

Many thanks!

Jamie

--
Jamie Lister
4 Mayfair Road
St. Louis, MO  63124

home:  314-567-5009
mobile:  917-716-1111
email: <mailto:iamjlister@gmail.com> iamjlister@gmail.com

2

On Thu, Jul 16, 2009 at 10:39 AM, Britz, Jamie (LBH) < <mailto:jamibrit@lehman.com>
jamibrit@lehman.com> wrote:

Hi Jamie,

As per your request below, please see attached a copy of your Executive
Compensation Summary.  This details any shares that you have outstanding as part of the
Equity Award Program as of September 12, 2008, subject to such proceeding in the U.S.
Bankruptcy Court.

With regards to any of the forms you have received, you will need to contact
either an individual listed or phone number provided on the Epiq Claim form as I am not
familiar with those details.

Hope this is helpful, please feel free to contact me with any additional
questions you may have.

Kind Regards,
Jamie

Jamie Britz
Human Resources
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Phone: 646-333-8308
Email: <mailto:jamibrit@lehman.com> jamibrit@lehman.com

---

From: James Lister [mailto: <mailto:iamjlister@gmail.com>
iamjlister@gmail.com]
Sent: Wednesday, July 15, 2009 11:51 AM
To: Britz, Jamie (LBH)
Subject: Request for Deferred Compensation Data

Hello Jamie,

I recently learned that the deadline for filing claims is September 22, 2009.
I have also heard and seen on the claim website that a number of Lehman people including
some senior level executives have filed for their RSUs/Options they received as deferred
compensation.

If at all possible, would you be able to provide me with a summary of all my
grants?

I also was wondering why I was listed on the Epiq website as a Schedule G.
Don't have the faintest idea what that is.

Many thanks for your help.

Regards,

Jamie
--
Jamie Lister
145 West 67th Street, PH-G
New York, NY  10023

cell:  917-716-1111
email: <mailto:iamjlister@gmail.com> iamjlister@gmail.com

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

```
        --
        Jamie Lister
        4 Mayfair Road
        St. Louis, MO  63124

        home:  314-567-5009
        mobile:  917-716-1111
        email: <mailto:iamjlister@gmail.com> iamjlister@gmail.com
```

- - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

        <Lister, James.pdf>

This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

```
--
Jamie Lister
4 Mayfair Road
St. Louis, MO  63124
```

home:  314-567-5009
mobile:  917-716-1111
email: iamjlister@gmail.com

# Exhibit C

---------- Forwarded message ----------
From: **Britz, Jamie (LBH)** <jamibrit@lehman.com>
Date: Thu, Sep 17, 2009 at 8:43 AM
Subject: RE: Request for Deferred Compensation Data
To: James Lister <iamjlister@gmail.com>


Hello Jamie,

As per your request, please see the attached signed severance agreement and the Q&A for the July RSU grant
that was made.

The Black Scholes values for the options you have outstanding are as follows:

9/20/2001: $7.165
12/3/2001: $10.51
12/11/2002: $9.125
12/10/2003: $9.725

Please let me know if you have any additional questions.

Thanks,
Jamie


*Jamie Britz*

Human Resources
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Phone: 646-333-8308
Email: jamibrit@lehman.com


---------------------------------------------------------------------

**From:** James Lister [mailto:iamjlister@gmail.com]
**Sent:** Wednesday, September 16, 2009 2:56 PM
**To:** Britz, Jamie (LBH)
**Subject:** Re: Request for Deferred Compensation Data


9/17/2009

Jamie,

I know I'm driving you crazy, but I promise that this is the last and final request.

Is there anyway you can send me the severance agreement I signed with Lehman? Also, do you have award statements or any documents indicating how much Lehman valued my stock options at when they were awarded to me? Finally, do you have any documents relating to the 7/1/08 RSU award?

I am so sorry to bother you with all of this. I wish there was some other way for me to obtain this info. If only I had kept better records, but who knew we'd need this stuff someday.

I owe you big for all of your assistance.

Many, many thanks,

Jamie

--
Jamie Lister
4 Mayfair Road
St. Louis, MO 63124

home:  314-567-5009
mobile:  917-716-1111
email: iamjlister@gmail.com

On Thu, Jul 16, 2009 at 10:39 AM, Britz, Jamie (LBH) <jamibrit@lehman.com> wrote:
Hi Jamie,

As per your request below, please see attached a copy of your Executive Compensation Summary. This details any shares that you have outstanding as part of the Equity Award Program as of September 12, 2008, subject to such proceeding in the U.S. Bankruptcy Court.

With regards to any of the forms you have received, you will need to contact either an individual listed or phone number provided on the Epiq Claim form as I am not familiar with those details.

Hope this is helpful, please feel free to contact me with any additional questions you may have.

Kind Regards,
Jamie

*Jamie Britz*
Human Resources
Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY 10020
Phone: 646-333-8308
Email: jamibrit@lehman.com

---

**From:** James Lister [mailto:iamjlister@gmail.com]
**Sent:** Wednesday, July 15, 2009 11:51 AM

9/17/2009

**To:** Britz, Jamie (LBH)
**Subject:** Request for Deferred Compensation Data

Hello Jamie,

I recently learned that the deadline for filing claims is September 22, 2009. I have also heard and seen on the claim website that a number of Lehman people including some senior level executives have filed for their RSUs/Options they received as deferred compensation.

If at all possible, would you be able to provide me with a summary of all my grants?

I also was wondering why I was listed on the Epiq website as a Schedule G. Don't have the faintest idea what that is.

Many thanks for your help.

Regards,

Jamie
--
Jamie Lister
145 West 67th Street, PH-G
New York, NY 10023

cell: 917-716-1111
email: iamjlister@gmail.com
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change

9/17/2009

without notice. -------- IRS Circular 230 Disclosure: Please be advised that any discussion of U.S. tax matters contained within this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

--
Jamie Lister
4 Mayfair Road
St. Louis, MO  63124

home:  314-567-5009
mobile:  917-716-1111
email: iamjlister@gmail.com

9/17/2009

# Exhibit D

# LEHMAN BROTHERS

MARC A. THOMAS
VICE PRESIDENT

RECEIVED

SEP 1 6 2008

Lehman Brothers
Employee Relations Department

September 9, 2008

James Lister
By Hand

Dear Jamie:

This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive the payments and benefits discussed below.

**Effective Dates, Payments and Benefits**

1.  November 8, 2008 will be the last day that you are expected to report to work.

2.  Provided you sign and comply with this agreement, you are eligible to continue to receive your current base salary and benefits coverage through the earlier of October 3, 2009 or the date on which you become actively employed with another firm (the "separation date"), as follows:

    a.  You will continue to remain an active employee through November 8, 2008 (the "working notice period"), provided you adhere to all policies, procedures and other requirements applicable to your employment, including meeting performance, attendance and compliance standards as evaluated by Firm management. For your employment during this working notice period, you will continue to receive your current base salary and benefits coverage.

    b.  Immediately after the working notice period and in lieu of a lump sum separation payment consisting of 45 weeks of severance pay and two weeks of unused vacation pay, you will continue to receive your current base salary and certain benefits continuation, including medical benefits, through October 3, 2009.

    Salary continuation will be paid on a biweekly basis at your current biweekly base salary rate, in accordance with the Firm's regular payroll practices. While you are on salary continuation, you will be eligible to continue your benefits coverage under the terms of our plans. All payments will be subject to withholding, payroll taxes and other applicable deductions.

3.  Lehman Brothers has retained Right Management Consultants to provide you with outplacement counseling services. These services are designed to assist you with counseling on resume writing, interviewing skills, networking techniques, and a job search campaign. We encourage you to take advantage of these services in order to ensure a smooth career transition. To sign up, please call John Henrikson at (800) 490-8494.

4.  You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

5.  Your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

LEHMAN BROTHERS INC.
745 SEVENTH AVENUE, NEW YORK, NY 10019
(212) 526-4028

James Lister
page 2

6. Should you become employed by another firm as an employee, consultant or independent contractor at any time while you are on salary continuation, you are obligated to inform the Firm so that you can be terminated from the Firm's payroll at that time. This date will be your separation date for purposes of this agreement. As of this separation date, your salary and benefits coverage continuation will end. Provided you have signed and complied with this agreement, you will receive a lump sum payment representing the remainder of the payments described in paragraph 2, payable within 4 weeks of your separation date.

7. Should you be rehired by Lehman or any of its subsidiaries or affiliates as an employee, consultant or independent contractor at any time through your separation date you will no longer be eligible to receive the remainder of the payments described in paragraph 2.

8. As you are aware, for certain of your outstanding and unvested restricted stock unit awards ('RSUs') granted to you in connection with the Lehman Brothers Equity Award Program, you are expressly required to execute a release agreement as a condition of 'involuntary termination without cause' treatment under those awards. If you sign and comply with this separation agreement, you will satisfy the release requirement applicable to such awards.

**Complete Release**

You agree to forever release Lehman Brothers Inc., any of its affiliated companies, past and present parents, subsidiaries, divisions and present and former employees, officers, directors, successors and assigns from all claims you may now have based on your employment with any Lehman affiliate or the separation of that employment, to the maximum extent permitted by law. This includes a release, to the maximum extent permitted by law, of any rights or claims you may have under: the Age Discrimination Employment Act, which generally prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, which generally prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which generally prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which generally prohibits discrimination on the basis of disability; the Employee Retirement Income Security Act of 1974, which governs the provision of pension and welfare benefits; and all other federal, state or local laws prohibiting employment discrimination. This also includes a release by you of any claims for wrongful discharge, any compensation claims, or any other claims under any statute, rule, regulation, or under the common law. This release covers both claims that you know about and those you may not know about.

**Non-disclosure Provisions**

You agree not to disclose to anyone except your immediate family, accountant, and lawyer any information relating to the subject matter or existence of this agreement, including the dollar amount set forth, except to the extent required by legal process. Any disclosure to your immediate family, accountant or lawyer shall be made only upon their agreement not to disclose these terms to another person. Notwithstanding the foregoing, the parties may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to either party relating to such tax treatment.

**Firm Property; Confidential Information**

You agree that all proprietary or confidential information concerning Lehman, its business or customers which you learned, received, or developed while an employee of Lehman is and shall remain the exclusive property of Lehman. You agree that you will not, without Lehman's express

James Lister
page 3

written consent, (1) disclose any of Lehman's confidential or proprietary information to any entities or individuals outside of Lehman, including to any competitors, the media, or other third parties, or (2) use such information for your own personal benefit or for the benefit of any individual or entity other than Lehman. You further agree to return to Lehman any and all Lehman property that you possess, including Lehman confidential or proprietary information, within one week after your last day of active employment.

## Registration

If you are currently registered with Lehman, your registration will cease as of your last day of active employment.   Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

## Disparaging Remarks

You agree not to make any remarks now or at any time in the future to any third party, including to a client, a competitor, or the media, that could be detrimental in any way to Lehman or to individual directors or employees of Lehman. This does not restrict your ability to respond to any inquiry that you may receive from applicable regulatory authorities or to disclose information pursuant to subpoena or legal process.

## Future Cooperation

You agree to reasonably cooperate with Lehman, its financial and legal advisors and/or government officials in connection with any business matters in which you were involved or any claims, investigations, administrative proceedings or lawsuits which relate to your Lehman employment. Related travel and accommodation expenses will be reimbursed in accordance with Lehman's standard policies.

## Arbitration

Any controversy arising out of or relating to this agreement shall be submitted to arbitration pursuant to the constitution and rules of the Financial Industry Regulatory Authority (FINRA).

## Consultation with Attorney

You have been advised to consult with an attorney concerning this agreement and acknowledge that you have had ample opportunity to do so before signing.

## Separation Booklet

You acknowledge that you have received and reviewed a copy of the Firm's booklet, "Guide to Leaving Lehman Brothers."

## Employment Inquiries

It is the Firm's policy to provide only limited information to non-Lehman individuals or organizations. Verify Job System, the vendor retained to provide this information, will disclose dates of employment and your last job title.  Requestors can access the verification system online at www.vjsus.com or by calling 800-800-4857. Requestors will need your Social Security number in

James Lister
page 4

order to verify your employment information for a nominal fee. This shall not restrict Lehman's ability to provide complete information with respect to your employment when expected to do so under applicable regulatory requirements.

## Entire Agreement

This agreement constitutes the entire agreement between the parties and cannot be altered except in writing signed by both parties. The terms of this agreement supersede any other oral or written arrangement between you and the Firm with respect to your employment or the separation of your employment by the Firm including but not limited to any entitlements you may have under the Firm's severance policy. Both parties acknowledge that no representations were made to induce execution of this agreement, which are not expressly contained in this agreement.

## Successorship; Controlling Law

This agreement will be binding on Lehman and its successors and assigns and will also be binding on you, your heirs, administrators, executors and assigns. This agreement will be construed under the substantive law of the State of New York, without regard to conflict of law principles.

## Separation Program

You acknowledge that the separation payments and benefits recited in this agreement are being offered to you as part of a separation program (the 'Program') offered to certain employees whose employment is being terminated. The Program is described in Appendix A, which is attached to this agreement. The provisions of Appendix A are incorporated into this agreement and considered a part of this agreement.

## Period for Review and Consideration of Agreement

You have been given a period of forty-five (45) days from the date of this letter to review and consider this agreement before signing it. Please return this document to my attention in one of the following ways:

| By Mail: | 745 Seventh Avenue |
| | New York, NY 10019 |
| or by Fax: | (646) 758-3409 |
| or by E-Mail: | lara.rosenberg@lehman.com |

You may use as much of this of forty-five (45) day period as you wish prior to signing. If you have not signed and returned this agreement by that date, you will not be eligible to receive the payments and benefits described in this agreement.

## Employee's Rights to Revoke Agreement

You may revoke this agreement within seven (7) days of your signing it. Revocation can be made by delivering a written notice of revocation to my attention at the address noted above. If you revoke this agreement it shall not be effective or enforceable and you will not receive the payments described in this agreement.

James Lister
page 5

You acknowledge that you have read this agreement, understand it and are voluntarily entering into it.

LEHMAN BROTHERS INC.

Marc A. Thomas

James Lister

Date 9/14/08

September 15, 2008

Marc,

Please consider this my request that my outstanding salary continuation (notice, severance and vacation pay) be paid to me in a lump sum. I understand that benefits continuation will stop at that time unless I elect COBRA.  Also, please note that I have taken the option not to work through the working notice period.

Regards,

Jamie Lister