**HEARING DATE AND TIME:  October 27, 2011 at 10:00 a.m. (Eastern Time)**
**RESPONSE DEADLINE:  October 13, 2010 at 4:00 p.m. (Eastern Time)**

Steve Jakubowski
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone:  (312) 606-8641
Facsimile:  (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorney for Robert A. Schoellhorn Trust,
Claimant No. 30439

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                                    :        **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :        **08-13555 (JMP)**
                                                             :
                                                             :
                          **Debtors.**                       :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

**RESPONSE OF ROBERT A. SCHOELLHORN TRUST IN OPPOSITION TO DEBTORS'**
**186TH OMNIBUS OBJECTION TO CLAIMS AS MISCLASSIFIED SECURED CLAIMS**

The Robert A. Schoellhorn Trust (the "Trust"), by and through its attorneys, files this

response in opposition to the specific objection contained in the 186th omnibus objection of

Lehman Brothers Holdings, Inc. and its affiliated debtors (the "Debtors") to Claim No. 30439

(the "Claim") filed by the Trust.  In support thereof, the Trust states as follows:

**Background**

1.        The Trust is a party to a prepaid forward contract (the "Hospira Prepaid Contract"

or "Contract") with Lehman Brothers OTC Derivatives, Inc. ("LOTC"), dated March 26, 2008

relating to 100,000 shares of Hospira, Inc. ("Hospira").  A copy of the Hospira Prepaid Contract is attached to the Claim filed with the Court.[1]

2.      The Hospira Prepaid Contract was not terminated by either the Trust or LOTC and settled out by its terms on or about March 25, 2010 (after the time that the deadline for filing proofs of claims arising under derivative contracts passed) (the "Termination Date").

3.      Because the Hospira Prepaid Contract had not been terminated as of the September 22, 2009 filing date of the Trust's Claim, there was no basis for calculating the amount due the Trust, so a value of $0.00 was written in as the "Claimed Amount."  The Addendum to the Proof of Claim, however, expressly stated that there was nothing yet due only because the Contract had not been terminated and would settle out by its terms on or about March 25, 2010 (long after the bar date had passed).

4.      Under the Hospira Prepaid Contract, LOTC prepaid the Trust $3,877,330 at inception and agreed to pay an additional amount on the Termination Date to the extent that the price of Hospira's stock exceeded the "forward floor price" of $43.24, up to the "forward cap price" of $51.89.

5.      As collateral for this prepayment, the Trust posted as collateral 100,000 shares that it owned of Hospira (the "Collateral Shares").  Evidence of the Trust's ownership of the Collateral Shares on the Petition Date is established by the Trust's "Derivative Collateral Account" statement at August 31, 2008, a copy of which is attached to the Claim filed with the Court, showing that the existence of the Collateral Shares in a "Derivative Account" at Lehman Brothers, Inc., titled in the name of the Trust.

---

[1]      Contrary to the assertions in the Claim Objection, the Trust included ample detail and documentary support for the setoff rights that secure the Claims.

6.      The Hospira Prepaid Contract provided that the "default settlement method" on the Termination Date would occur through "physical settlement," whereby ownership of the Collateral Shares would automatically be transferred from to LOTC.  (*See* Contract at p. 3.)

7.      As is customary in the industry, permitted under the Hospira Prepaid Contract,[2] and consistent with past practice between the parties, in the event money was due to the Trust upon termination of the Hospira Prepaid Contract, "physical settlement" of amounts due the Trust would be settled by the Trust's transferring to LOTC a net number of Collateral Shares due after accounting for offsetting amounts due to the Trust (with the number of offsetting shares calculated based on the amount due the Trust divided by the market price per share of the Collateral Shares on the Termination Date).

8.      On the Termination Date, Hospira was trading at a price of approximately $56.00, well in excess of the "forward cap price" under the Contract of $51.89 per share.  As a result, on the Termination Date, LOTC owed the Trust $865,000 (representing the 100,000 shares pledged times the $8.65 difference between the "forward floor price" and the "forward cap price" under the Contract) (the "Net Settlement Amount").

9.      Bankruptcy Code section 506(a)(1) provides in relevant part:

> An allowed claim of a creditor … that is subject to setoff under section 553 of this title is a secured claim … to the extent of the amount subject to setoff.

10.     Bankruptcy Code section 553 provides in relevant part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under the title against a claim of such

---

[2]     Additionally, in the "Schedule" to the ISDA Master Agreement (the "ISDA Schedule"), a copy of which is attached in the response to the Derivative Questionnaire, LOTC acknowledged the right of the Trust "to set-off or apply any obligation of [the Trust] owed to [LOTC or its affiliates] … against any obligation of [LOTC or its affiliates] owed to [the Trust].  *See* ISDA Schedule, Part V.

creditor against the debtor that arose before the commencement of the
case under this title.

11.     Bankruptcy Code section 560 of the Bankruptcy Code provides, in

relevant part:

> The exercise of any contractual right of any swap participant … to
> offset or net out any termination values or payment amounts arising
> under or in connection with the termination, liquidation, or
> acceleration of one or more swap agreements shall not be stayed,
> avoided or otherwise limited by operation of any provision of this
> title or by order of a court.

12.     Both the obligation of the Trust to physically deliver the Collateral Shares to

LOTC on the Termination Date and the obligation of LOTC to pay the Trust the Net Settlement

Amount on the Termination Date constituted mutual debts owed from one to the other that arose

prepetition.  In addition, the plain language of Bankruptcy Code section 560 allows the Trust to

exercise its contractual setoff rights regardless of any limitations that may be imposed on such

rights under Bankruptcy Code section 553.

13.     To the extent that LOTC took physical delivery of the Collateral Shares (or

received an equivalent value from the liquidation of those shares after the Termination Date,

against which amounts the Trust asserts a constructive trust and other equitable rights of

ownership), the Trust asserts a setoff right against those Shares or their equivalent value in the

amount of $865,000, plus interest and fees.[3]

14.     To establish the precise manner in which the Trust's setoff rights may be

exercised under the Hospira Prepaid Contract, the Trust will need to obtain limited discovery

from the Debtors and their affiliates to determine, among other things, what happened to the

---

[3]     The supporting ISDA Master Agreement (the "ISDA Agr.") between LOTC and the Trust dated as of
September 2, 2005, a copy of which is attached in the response to the Derivative Questionnaire, further allowed
the Trust to obtain in the event of a breach of the Prepaid Contract (including failure to remit amounts due on
the Termination Date) both (i) compound default interest (ISDA Agr. ¶2(e)) (ii) reasonable attorneys (ISDA
Agr. ¶11).  These amounts are additionally claimed against LOTC as subject to the Trust's rights of setoff
against the Collateral Shares or their equivalent value.

Collateral Shares (which appear to no longer reside in the Trust's Derivative Collateral Account) and what benefit or value LOTC or any of its affiliates obtained from the liquidation of the Collateral Shares.

15.    The Trust, therefore, respectfully requests that the Court deny the objection and (A) allow the parties to meet and confer under Rule 9014 (which incorporates Bankruptcy Rule 7026) regarding the scope of discovery requested, the identity of persons having knowledge relevant to the Trust's asserted setoff rights, and the time needed for the Debtors to reasonably comply with the Trust's discovery requests, (B) report back to the Court within 28 days with a projected discovery schedule, and (C) set a status hearing after the close of discovery in which the parties identify for the Court the factual and legal matters in dispute so that a pre-trial scheduling order may be entered for resolution of these disputed matters.

Dated:  October 13, 2011                          ROBERT A. SCHOELLHORN TRUST

                                                  By:    /s/ Steve Jakubowski
                                                         One of Its Attorneys

                                                  Steve Jakubowski (admitted *pro hac vice*)
                                                  THE COLEMAN LAW FIRM
                                                  77 West Wacker Drive, Suite 4800
                                                  Chicago, IL  60601
                                                  Tel:  (312) 606-8641
                                                  Fax:  (312) 444-1028
                                                  sjakubowski@colemanlawfirm.com