HEARING DATE AND TIME:  October 27, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE:  October 13, 2010 at 4:00 p.m. (Eastern Time)

Steve Jakubowski
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone:  (312) 606-8641
Facsimile:  (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorney for Robert A. Schoellhorn Trust,
Claimant No. 30438

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11 Case No.
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.* :    08-13555 (JMP)
                                                               :
                                                               :
                    Debtors.                                   :    (Jointly Administered)
                                                               :
---------------------------------------------------------------x

**RESPONSE OF ROBERT A. SCHOELLHORN TRUST IN OPPOSITION TO DEBTORS'
187TH OMNIBUS OBJECTION TO CLAIMS AS MISCLASSIFIED SECURED CLAIMS**

The Robert A. Schoellhorn Trust (the "Trust"), by and through its attorneys, files this response in opposition to the specific objection contained in the 187th omnibus objection of Lehman Brothers Holdings, Inc. and its affiliated debtors (the "Debtors") to Claim No. 30438 (the "Claim") filed by the Trust.  In support thereof, the Trust states as follows:

**Background**

1.     The Trust is a party to a prepaid forward contract (the "ABT Prepaid Contract" or "Contract") with Lehman Brothers OTC Derivatives, Inc. ("LOTC"), dated February 8, 2007 in

respect of 100,000 shares of Abbott Laboratories, Inc. ("ABT").  A copy of the ABT Prepaid Contract is attached to the Claim filed with the Court.[1]

2.  As permitted under 11 U.S.C. § 560, the Trust exercised its rights to terminate the ABT Prepaid Contract effective November 12, 2008 (the "Termination Date").[2]  A copy of the Trust's termination letter of November 12, 2008 is attached hereto to the Claim filed with the Court (the "Termination Letter").

3.  Under the ABT Prepaid Contract, LOTC prepaid the Trust $4,552,606.60 at the inception of the contract and agreed to pay the Trust an additional amount on the Termination Date if the price of ABT's stock exceeded the "forward floor price" of $53.02978 (adjusted downward on each dividend date by $0.295).  The maximum to be paid the Trust on the Termination Date was capped at a "forward cap price" of $63.635736 (also adjusted downward on each dividend date by $0.295).  (*See* Contract, at pp. 2, 4.)

4.  As collateral for this prepayment, the Trust posted as collateral 100,000 shares that it owned of ABT (the "Collateral Shares").  Evidence of the Trust's ownership of the Collateral Shares on the Petition Date is established by the Trust's "Derivative Collateral Account" statement at August 31, 2008 (copy attached to the Claim filed with the Court), which shows the existence of the Collateral Shares in "Derivative Account" No. 953-00031 at Lehman Brothers, Inc., titled in the name of the Trust.

---

[1] Contrary to the assertions in the Claim Objection, the Trust included ample detail and documentary support for the setoff rights that secure the Claims.

[2] 11 U.S.C. § 560 provides that "the exercise of any contractual right of any … financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of a condition of the kind specified in section 365(e)(1) of this title or to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order or a court or administrative agency in any proceeding under this title."

5. The ABT Prepaid Contract provided that the "default settlement method" on the Termination Date would occur through "physical settlement," whereby ownership of the Collateral Shares would automatically be transferred from the Trust to LOTC. (*See* Contract at p. 3.)

6. As is customary in the industry, permitted under the ABT Contract,[3] and consistent with past practice between the parties, in the event money was due to the Trust upon termination of the ABT Prepaid Contract, "physical settlement" of amounts due the Trust would be settled by the Trust's transferring to LOTC a net number of Collateral Shares due after accounting for offsetting amounts due to the Trust (with the number of offsetting shares calculated based on the amount due the Trust divided by the market price per share of the Collateral Shares on the Termination Date).

7. On the Termination Date, the ABT Prepaid Contract (per Bloomberg) had a value of $5,052,500 (the "Contract Termination Value"). On the Termination Date, ABT's closing price was $54.50 per share, so the Collateral Shares had a value of $5,450,000 on that date (the "Collateral Shares Market Value"). The $397,523 difference between the Collateral Shares Market Value and the Contract Termination Value (the "Net Settlement Amount") represented the amount due under the Contract to the Trust on the Termination Date.

8. In the Termination Letter, the Trust offered to settle the mutual debts due under the Contract by surrendering 92,706 Collateral Shares to LOTC in complete satisfaction of the $5,052,500 due LOTC from the Trust, with a new stock certificate for the remaining 7,294

---

[3] In the "Schedule" to the ISDA Master Agreement (the "ISDA Schedule"), a copy of which is attached in the response to the Derivative Questionnaire, LOTC acknowledged the right of the Trust "to set-off or apply any obligation of [the Trust] owed to [LOTC or its affiliates] … against any obligation of [LOTC or its affiliates] owed to [the Trust]. *See* ISDA Schedule, Part V.

shares to be issued in favor of the Trust in complete satisfaction of the $397,523 Net Settlement Amount due the Trust from LOTC.

9. The Contract provided that the Trust was entitled to retain $36,000 in quarterly dividends paid by ABT on the Collateral Shares. The Trust, however, never received the $72,000 in aggregate dividends (the "Unpaid Dividends") it was entitled to receive for the record dates of November 15, 2008 and February 15, 2009. The Trust's Claim includes this claimed amount for Unpaid Dividends (along with dividends paid on the 7,294 shares that should have been issued on the settlement date), which also is asserted by way of setoff against amounts due LOTC under the Contract.

10. Bankruptcy Code section 506(a)(1) provides in relevant part:

> An allowed claim of a creditor … that is subject to setoff under section 553 of this title is a secured claim … to the extent of the amount subject to setoff.

11. Bankruptcy Code section 553 provides in relevant part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under the title against a claim of such creditor against the debtor that arose before the commencement of the case under this title.

12. Bankruptcy Code section 560 of the Bankruptcy Code provides, in relevant part:

> The exercise of any contractual right of any swap participant … to offset or net out any termination values or payment amounts arising under or in connection with the termination, liquidation, or acceleration of one or more swap agreements shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by order of a court.

13. Both the obligation of the Trust to physically deliver the Collateral Shares to LOTC on the Termination Date and the obligation of LOTC to pay the Trust the Net Settlement

4

Amount on the Termination Date constituted mutual debts owed from one to the other that arose prepetition. In addition, the plain language of Bankruptcy Code section 560 allows the Trust to exercise its contractual setoff rights regardless of any limitations that may be imposed on such rights under Bankruptcy Code section 553.

14. To the extent that LOTC took physical delivery of the Collateral Shares (or received an equivalent value from the liquidation of those shares after the Termination Date, against which amounts the Trust asserts a constructive trust and other equitable rights of ownership), the Trust asserts a setoff right against those Shares or their equivalent value in the amount of $469,523 (representing the Net Settlement Amount plus Unpaid Dividends due), plus interest and reasonable attorneys' fees.[4]

15. To establish the precise manner in which the Trust's setoff rights may be exercised under the ABT Prepaid Contract, the Trust will need to obtain limited discovery from the Debtors and their affiliates to determine, among other things, what happened to the Collateral Shares (which appear to no longer reside in the Trust's Derivative Collateral Account) and what benefit or value LOTC or any of its affiliates obtained from the liquidation of the Collateral Shares.

16. The Trust, therefore, respectfully requests that the Court deny the objection and (A) allow the parties to meet and confer under Rule 9014 (which incorporates Bankruptcy Rule 7026) regarding the scope of discovery requested, the identity of persons having knowledge relevant to the Trust's asserted setoff rights, and the time needed for the Debtors to reasonably

---

[4] The supporting ISDA Master Agreement (the "ISDA Agr.") between LOTC and the Trust dated as of September 2, 2005, a copy of which is attached in the response to the Derivative Questionnaire, further allowed the Trust to obtain in the event of a breach of the Prepaid Contract (including failure to remit amounts due on the Termination Date) both (i) compound default interest (ISDA Agr. ¶2(e)) (ii) reasonable attorneys (ISDA Agr. ¶11). These amounts are additionally claimed against LOTC as subject to the Trust's rights of setoff against the Collateral Shares or their equivalent value.

comply with these requests, (B) report back to the Court within 28 days with a projected discovery schedule, and (C) set a status hearing after the close of discovery in which the parties identify for the Court the factual and legal matters in dispute so that a pre-trial scheduling order may be entered for resolution of these disputed matters.

Dated: October 13, 2011

ROBERT A. SCHOELLHORN TRUST

By: /s/ Steve Jakubowski
     One of Its Attorneys

Steve Jakubowski (admitted *pro hac vice*)
THE COLEMAN LAW FIRM
77 West Wacker Drive, Suite 4800
Chicago, IL  60601
Tel:  (312) 606-8641
Fax:  (312) 444-1028
sjakubowski@colemanlawfirm.com