and all matters and issues raised in the Claim and Action including, but not limited to, the incurred to date interest, attorney's fees and litigation costs of the Parties herein, and covenant not to file suit of any other legal proceeding against each other with respect to the Claim and Action.

(b) This Agreement does not release, waive, negate, impact or otherwise affect the City's right to compel any third parties, including but not limited to Developer, or successors, assigns, or any other entity desirous to develop the Property to complete Elizabeth Lake Road, and/or other improvements which were contemplated in the Subdivision Improvement Agreements which are the subject of the Action, and post new bonds related thereto.

(c) Nothing in this Agreement shall in anyway whatsoever extinguish, negate, impact, or otherwise affect the City's authority to exercise to the full extent of applicable law its police power and regulatory land use authority in connection with the Property.

(d) The City will provide Bond Safeguard with a written letter of exoneration of each of the Bonds (except those remaining obligations in Section 6 herein) upon the full and complete of payment and performance obligations by Bond Safeguard under this Agreement.

6.    **INDEMNITY**

Bond Safeguard agrees to defend (including the appointment of defense counsel of the City's choosing), indemnify, and hold the City, its employees, officials, agents, and/or attorneys, harmless from and against any and all claims,

P6399-1243\131070404v4.doc – Execution Copy                8    GML

demands, lawsuits arising solely out of and/or related to Bond Safeguard's performance of the obligations set forth in this Agreement, and/or the performance of the Improvements.

7.    **DISMISSALS AND RELEASE DOCUMENTS**

Within 10 days after the settlement payments required by Paragraph 3 of this Agreement have been made by Bond Safeguard, the City will file a Request for Dismissal of the Action, without prejudice.  City shall retain the right to file a subsequent action to enforce the Bonds, or to enforce the obligations of this Agreement, at the City's choosing, until Bond Safeguard has fully performed the obligations set forth in Paragraph 3 of this Agreement.

8.    **REPRESENTATIONS AND WARRANTIES**

(a)  Each Party has made such investigation of the facts pertaining to this Agreement and of all the matters pertaining to it, as it deems necessary.

(b)  Each Party or responsible officer or agent thereof has read this Agreement and understands its contents.  Each of the individuals executing this Agreement on behalf of the respective Party possesses the power, capacity and authority to do so and to thereby bind that respective Party.

(c)  The Parties acknowledge that in entering into this Agreement, each of them is relying solely on the recitals, statements and other terms of this Agreement and the advice of its own attorneys and other advisors.  The Parties acknowledge, further, that they are not relying on any written or oral statement, representation or warranty made by any other Party, or the representative of any other Party, except

P6399-1243\1310704v4.doc – Execution Copy                9        G·M·L

as referenced in this Agreement. Except with respect to the representations and warranties made in this Agreement, each Party, in entering into this Agreement, assumes the risk that any fact upon which it relied in entering into this Agreement proves to be false, or that its understanding of the facts or the law was incorrect.

(d) This Agreement is binding upon and shall inure to the benefit of each of the Parties hereto and to their respective parent companies, subsidiaries, affiliates, joint ventures, successors and assigns.

(e) The Parties agree to execute, acknowledge, and/or deliver any and all documents and to perform any and all acts reasonably necessary to carry out and perform their obligations hereunder.

(f) Subject to the limitations, reservations and exceptions specifically set forth in this Agreement, the Parties, and each of them, acknowledge that they are aware that they or their attorneys may hereafter discover facts different from or in addition to the facts which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention hereby to, and they hereby do, fully, finally, absolutely, and forever settle any and all claims, disputes and differences which do now exist, may exist, or heretofore have existed between them related to the Claim, the Bonds, the Property and the Action, and that in furtherance of such intention, the releases herein given by said Parties shall be and remain in effect as full and complete releases notwithstanding the discovery of any different or additional facts.

(g) The Parties intend this Agreement to be effective as a full and final accord and satisfactory release of each and every matter specifically or generally referred to herein upon completion of Bond's payment and performance obligations under Section 3 hereof. In furtherance of this intention, the Parties expressly acknowledge that they are familiar with California Civil Code §1542 ("Section 1542"), which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Parties waive and relinquish any rights and benefits which they may have under Section 1542 upon Bond Safeguard's completion of its payment and performance obligations under this Agreement. The Parties acknowledge that they may hereafter discover facts in addition to or different from those which it now knows or believes to be true with respect to the subject matter of this Agreement, but it is the Parties' intention fully, finally, and forever to settle and to release any and all such matters, disputes and differences known or unknown, suspected or unsuspected, which do now exist, may exist or heretofore have existed as against any other party with respect to the matters set forth in the Recitals. In furtherance of this intention, the release herein will be and remain in effect as a full and complete general release of such released matters notwithstanding the discovery or existence of any such additional or different facts. The Parties warrant and represent to one another that the effect and import of the provisions of Section

1542 have been fully explained to it by its attorneys and the parties expressly acknowledge their respective understanding of the same.

(h) The Parties acknowledge that this Agreement represents a compromise of disputed claims, and shall not be deemed as admission of liability on behalf of any Party.

(i) The Parties represent and warrant that none of them has voluntarily, involuntarily, or by operation of law, granted, assigned or transferred, or purported to assign or transfer to any third person or entity whatsoever any right, cause of action, or claim that is based on, arises out of, or is in connection with the Claim.

9.    **THIRD PARTY BENEFICIARIES:**

This Agreement is not intended to create, nor shall it be in any way interpreted or construed to create, any third party beneficiary rights in any other person or entity not a Party hereto unless otherwise expressly provided herein.

10.    **GOVERNING LAW**

This Agreement shall be interpreted, enforced and governed by and under the local laws of California.

11.    **INTEGRATION**

This Agreement memorializes and constitutes the final expression and the complete and exclusive statement of agreement and understanding between and among the Parties.  Except as expressly provided in this Agreement, this Agreement supersedes and replaces all prior negotiations, proposed agreements,

and agreements, whether written or oral. Neither Bond Safeguard nor City executed this Agreement in reliance upon any promise, representation, statement, or warranty whatsoever, express or implied, which is not expressly contained in this Agreement, nor did Bond Safeguard or City execute this Agreement in reliance upon any belief as to any fact not expressly recited herein.

### 12.   ATTORNEY'S FEES IN LAWSUIT ON AGREEMENT

The prevailing party in any lawsuit to enforce the terms of this Agreement shall be entitled to recover all attorney's fees and costs incurred as a result of enforcing the obligations under this Agreement as a damage arising from the breach of this Agreement.

### 13.   NO CHANGES OR AMENDMENTS

No changes in, additions to, or modifications of this Agreement shall be valid unless set forth in writing and executed by all parties hereto.

### 14.   INDEPENDENT ADVICE

The Parties each acknowledge that they have received independent legal advice with respect to the advisability of making this Agreement.

### 15.   SEVERANCE

If a provision of this Agreement is adjudged illegal or invalid, such provision shall: (1) be rewritten by the court to be legal and valid as long as the rewritten provision remains consistent with the Parties' mutual intentions expressed in this Agreement; or (2) be deemed severed and deleted, but only if any

P6399-1243\1310764v4.doc -- Execution Copy      13   GML

such severance and deletion will not affect the benefits of the Agreement which, according to its terms or as a whole, any Party is to receive.

**16.    COUNTERPARTS**

This Agreement may be executed in one or more counterparts all of which together shall constitute one and the same Agreement. Facsimile signatures shall be deemed original signatures for all purposes.

**17.    EFFECTIVE DATE**

This Agreement will become effective when it has been signed by authorized representatives of all Parties, and each party has transmitted a copy of the signed Agreement to all other Parties.

**18.    NOTICES**

The Parties shall send the notices required by this Agreement, if any, to the following Party representatives at the address written below:

Bond Safeguard Insurance Company

Jeremy T. Sentman
Surety Management Company
900 South Frontage Road, Suite 250
Woodridge, IL 60517

City of Palmdale

Mike Mischel; Chuck Heffernan
City of Palmdale
38300 North Sierra Highway
Palmdale, CA 93550

**19.    INTERPRETATION**

The Parties have each agreed to the use of the particular language of the provisions of this Agreement, and any question of doubtful interpretation shall not,

P6399-1243\1310704v4.doc – Execution Copy                 14    GML

be resolved by any rule of interpretation providing for interpretation against the

Parties who cause an uncertainty to exist or against the draftsperson.

Date: 2-16-20Y

City of Palmdale

By: _____

        Mayor

Attest: _____

    Acting City Clerk

Date: _____

Bond Safeguard Insurance Company

By: _____

    David E. Campbell

**APPROVED AS TO FORM:**

Date: February 10, 2011

Steven R. Orr
RICHARDS, WATSON & GERSHON
A Professional Corporation

By: _____

Attorneys for City of Palmdale

Date: _____

Bruce L. Maas
HARRIS BEACH, PLLC

By: _____

Attorneys for Bond Safeguard Insurance
Company

be resolved by any rule of interpretation providing for interpretation against the

Parties who cause an uncertainty to exist or against the draftsperson.

Date:_____          City of Palmdale

                            By: _____
                                        Mayor

                            Attest:

                                _____
                                        City Clerk


Date: 2/17/11               Bond Safeguard Insurance Company

                            By: _____
                                    David E. Campbell


**APPROVED AS TO FORM:**
Date:_____          Steven R. Orr
                            RICHARDS, WATSON & GERSHON
                             A Professional Corporation

                            By: _____
                            Attorneys for City of Palmdale


Date: 2/18/11               ~~Bruce L. Maas~~  Gavin M. Lankford
                            HARRIS BEACH, PLLC

                            By: _____
                            Attorneys for Bond Safeguard Insurance
                            Company


P6399-1243\1310704v4.doc – Execution Copy        15   GML

## EXHIBIT A

### Interim Facilities Stage

1. **Interim Storm Drain Improvement Plans:** Bond Safeguard will engage a Completion Contractor to prepare interim improvement plans for culverts and storm drains at the following locations:

   A.   Culvert at mile marker 6.55; design for pipe to extend to graded channel south of inlet to allow for positive drainage

   B.   Re-design inlet to existing 18" culvert

   C.   Re-design outlet structure at mile marker 5.95

   D.   Re-design outlet structure at mile marker 5.83

   E.   Re-design outlet structure at mile marker 5.65

   F.   Re-design outlet structure at mile marker 5.45

   G.   Re-design outlet structure at mile marker 5.32

   H.   Re-design outlet structure at mile marker 5.27

   I.   Re-design outlet structure at mile marker 5.11

   J.   Design culvert crossing at Joshua Ranch road

2. **Interim Grading and Drainage Plans:** Bond Safeguard will engage a Completion Contractor to prepare Interim Grading and Drainage Plans for the area on the north side of ELR, east of the Donato property/Buffalo Ranch.

3. **Interim Erosion Control Plans:** Bond Safeguard will engage a Completion Contractor to prepare Erosion Control Plans in accordance with all applicable codes to protect existing drainage facilities and proposed grading and improvements.

4. **Construction:** Bond Safeguard will engage a Completion Contractor to construct the interim improvements according to the plans referenced above.

*GML*

P6399-1243\1314833v1.doc

**EXHIBIT B**

**Permanent Facilities Stage**

1. **Triple-Box Culvert Plans:** Bond Safeguard will engage a Completion Contractor to prepare and process storm drain plan and profile for the extension of the partially completed triple-box culvert at the Joshua Ranch Road intersection. These plans will take into consideration the existing condition of both the storm drain and the grading in the vicinity. The scope for this item includes a grading and drainage plan which covers the area impacted by the construction of the culvert.

2. **Detour and Traffic Control Plan:** Bond Safeguard will engage a Completion Contractor to prepare temporary Detour Plans for diverting traffic during construction of the triple-box culvert, including traffic control and staging by plan and/or description. All work under this item will be in accordance with the latest version of the WATCH Manual for traffic control devices.

3. **Paving Transition:** Bond Safeguard will engage a Completion Contractor to prepare and process plan and profile drawings for a transition from the full width street to existing Elizabeth Lake Road. Horizontal and vertical alignment will be in accordance with latest CALTRANS and City of Palmdale design criteria.

4. **Permanent Erosion Control Plan:** Bond Safeguard will engage a Completion Contractor to prepare and process Permanent Erosion Control Plans for the areas disturbed by the grading and construction of the triple-box culvert and roadway improvements described above. All plans will be prepared in accordance with the latest City of Palmdale design criteria for erosion control.

5. **Signing and Striping Plans:** Bond Safeguard will engage a Completion Contractor to prepare and process Signing and Striping plans for the segment of roadway described in Item 3 above in accordance with the latest CALTRANS and City of Palmdale design criteria.

6. **Construction:** Bond Safeguard will engage a Completion Contractor to construct the permanent facilities improvements according to the plans referenced above.

GML

P6399-1243\1314837v1.doc

## SCHEDULE 6

## BOND CLAIMS AND BONDED CLAIMS

### SunCal Bickford Ranch, LLC 8:08-17231 ES (Bickford Ranch)

| Bond No. | Bond Amount | Claimant Name | Claim Amount Against Bond(s) | Status of Claim Against Bond Safeguard | Amount and Date of Payment Made | Extent of BK Claim Assignment to Bond Safeguard |
|---|---|---|---|---|---|---|
| 5024793 | $327,548.00 | Marques Pipeline, Inc. | $330,118.00 | Settled | $5,000 4/8/2010 | NONE |

### Palmdale Hills Property, LLC 8:08-17206 ES (Ritter Ranch)

| Bond No. | Bond Amount | Claimant Name | Claim Amount Against Bond(s) | Status of Claim Against Bond Safeguard | Amount and Date of Payment Made | Extent of BK Claim Assignment to Bond Safeguard |
|---|---|---|---|---|---|---|
| 5020969 5020971 - 5020973 5026507 | $10 million + for all bonds | City of Palmdale | None Specified | Partially Settled Claim still pending for ELR Phase 2 completion work. Estimated cost to complete is $1.2 million. | $127,000.00 (reimbursement for City's attorneys' fees and expenses) 3/9/2011 $12,861.40 (reimbursement for repair work the City performed following wildfire damage) 3/9/2011 $30,007.56 to Engineering Solutions to correct emergency erosion control issues on the project 3/9/2011, 4/14/2011, 5/20/2011, | NONE |

US_ACTIVE:\43829170\04\58399.0008

| Bond No. | Bond Amount | Claimant Name | Claim Amount Against Bond(s) | Status of Claim Against Bond Safeguard | Amount and Date of Payment Made | Extent of BK Claim Assignment to Bond Safeguard |
|---|---|---|---|---|---|---|
| 5029502 | $684,150.00 | The Masonry Group | $686,760.62 | SunCal tendered defense. Settled by Radco – details unknown. | N/A | N/A |
| 5020972 5020973 | $6 million + for all bonds | Samrod Corporation | Unknown | SunCal tendered defense. Settled by Radco – details unknown. | N/A | N/A |
| 5020971- 5020973 5024772 5025395 5026507 5026525 5026530 5026546 5029502 5029503 | $14 million + for all bonds | Professional Pipeline Contractors, Inc. | $2,156,081.30 for all bonds | SunCal tendered defense. Settled by Radco – details unknown. | N/A | N/A |

US_ACTIVE:\43829170\04\58399.0008

## EXHIBIT A

## TERMS OF LETTER OF CREDIT

| | |
|---|---|
| Form of Letter of Credit: | Irrevocable, unconditional, standby letter of credit issued by a commercial bank reasonably acceptable to the applicable Bond Company |
| Beneficiary: | Applicable Bond Company, as trustee under a Collateral Trust Agreement |
| Stated Amount: | Aggregate cost of Gap Bonded Work or New Bonded Work (whichever is applicable) to be performed after the applicable Effective Date pursuant to binding contract(s) with contractor(s) retained to perform such work |
| Expiry Date: | Guaranteed completion date under binding contract(s) or, if no guaranteed completion date, a completion date reasonably estimated by applicable Bond Company, with respect to the Gap Bonded Work or New Bonded Work, as applicable, plus 30 days |
| Draw Requirements: | Upon presentation by beneficiary to issuing bank of a draw certificate in form to be agreed upon or as otherwise prescribed by the issuing bank but which shall not otherwise require the delivery of any documents to the issuing bank other than the draw certificate itself |
| Transferability | Letter of Credit shall not be transferable nor shall any proceeds from the Letter of Credit be assignable to any person without prior written consent of applicable Bond Company and applicable Project Transferee |
| Renewal of LOC: | Unless (i) all Gap Bonded Work or New Bonded Work, as applicable, for which the Letter of Credit was issued has been completed and fully paid for by applicable Bond Company, and (ii) applicable Bond Company has been fully reimbursed for payments made by such Bond Company in respect of such work, all prior to the 30th day preceding the Expiry Date, then the applicable Project Transferees shall cause the Letter of Credit to be extended by 30 days (by no later than 30 days prior to the Expiry Date), failing which such Bond Company may direct the trustee of the Reimbursement Trust to draw upon the remaining amount available under the Letter of Credit and deposit the proceeds of such draw into the Reimbursement Trust |
| Conditions to Draw: | As prescribed under the terms of the applicable Collateral Trust Agreement. |

**EXHIBIT B**

**FORM OF COLLATERAL TRUST AGREEMENT**

See Attached.

## COLLATERAL TRUST AGREEMENT

This **COLLATERAL TRUST AGREEMENT** ("Agreement") is dated as of the [____] day of [_____], 201[ ] and is entered into between [NAME OF LB NOMINEE], a [_____] ("LB Nominee") and BOND SAFEGUARD INSURANCE COMPANY, an Illinois corporation, both in its capacity as the issuer of the Bonds (as hereinafter defined) (the "Surety") and as trustee hereunder (the "Trustee"). All initially capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement (as hereinafter defined).

## RECITALS

WHEREAS, the LB Nominee and the Surety, among others, are parties to that certain Settlement Agreement, dated as of [_____], 2011 (the "Settlement Agreement") relating, in part, to [that] [those] certain surety bond[s] issued by the Surety and more particularly described on Exhibit A attached hereto (the "Bonds"); and

WHEREAS, a demand has been made on the Bond[s] by the obligee thereof for performance by the Surety of the work more particularly described on Exhibit B attached hereto (collectively, the "Bonded Work") and the Surety is prepared to perform and complete the Bonded Work in accordance with its obligations under the Bond[s];

WHEREAS, the Surety is prepared to retain [NAME OF CONTRACTOR[S]] (the "Contractor[s]") to perform the Bonded Work pursuant to the terms and provisions and subject to the conditions set forth in [that] [those] certain contract[s] and agreement[s] more particularly described on Exhibit C attached hereto (the "Bonded Work Contract[s]");

WHEREAS, the aggregate [maximum] [estimated] cost of all Bonded Work to be performed by the Contractor[s] pursuant to the Bonded Work Contracts is $_____ (the "Bonded Work Cost Amount");

WHEREAS, as provided under the terms of the Settlement Agreement, the LB Nominee is required to deposit with the Trustee, to be held by the Trustee in the Reimbursement Trust (as hereinafter defined), an amount equal to the Bonded Work Cost Amount to provide for reimbursement to the Surety of amounts actually paid by the Surety to the Contractor[s] for performance of the Bonded Work (the "Bonded Work Reimbursement Obligations");

WHEREAS, in satisfaction of its obligations under the Settlement Agreement, the LB Nominee desires to deposit [cash] [and] [a Letter of Credit] in the [stated] amount of $_____ (the "Original Trust Property" and, together with any Additional Trust Property (as hereinafter defined), the "Trust Property") into the Reimbursement Trust to be held by the Trustee and to be disbursed by the Trustee in accordance with the terms of this Agreement.

## AGREEMENT

NOW THEREFORE, the LB Nominee, Trustee and Surety hereby agree as follows:

## ARTICLE I
## (CREATION OF TRUST)

1.1 <u>Declaration of Trust.</u> The LB Nominee hereby delivers the Trust Property to the Trustee, in trust, to be held and disbursed upon the terms and conditions set forth in this Agreement. The trust created hereby shall be referred to as the "<u>Reimbursement Trust.</u>" All Trust Property comprised of cash shall be deposited into that certain account more particularly described on <u>Exhibit D</u> attached hereto in the name of the Trustee in trust for the benefit of the LB Nominee and the Surety pursuant to this Collateral Trust Agreement (the "<u>Cash Account</u>"). For purposes of this Agreement, "<u>Cash Trust Property</u>" shall mean any and all cash deposited into the Cash Account and all interest earned thereon, and "<u>LOC Trust Property</u>" shall mean any Letter of Credit delivered to the Trustee, as beneficiary thereof, to be held by the Trustee and drawn upon as provided in this Agreement.

1.2 <u>Acceptance of Trust.</u> The Trustee hereby accepts the Trust Property in trust pursuant to the terms of this Agreement, and agrees to hold, administer and distribute the Trust Property strictly in accordance with the terms of this Agreement.

## ARTICLE II
## (DUTIES OF THE TRUSTEE)

2.1 <u>Retention and Disbursement of Trust Property.</u> The Trustee shall hold the Trust Property and disburse the same as follows:

(a) Upon the Trustee's and LB Nominee's receipt of written confirmation from the Surety that a payment has been made by the Surety to [the] [a] Contractor for amounts due to such Contractor in respect of Bonded Work performed by such Contractor (a "<u>Contractor Payment</u>"), together with (i) copies of any invoices, bills, statements or requests for payment from such Contractor and a certification from the Surety that all applicable Bonded Work has been performed in accordance with the terms of the applicable Bonded Work Contract ("<u>Completed Work</u>") and that the obligee under the applicable Bonds has approved such Completed Work, (ii) a check or evidence of wire transfer evidencing the Surety's payment in the amount of the Contractor Payment, and (iii) copies of executed lien waivers from such Contractor for the applicable Completed Work (the foregoing items described in clauses (i) through (iii), inclusive, being collectively referred to as "<u>Reimbursement Backup Documents</u>"), the LB Nominee shall confirm in writing to the Trustee that all Reimbursement Backup Documents have been provided to the LB Nominee. Upon its receipt of such written confirmation from the LB Nominee, the Trustee shall disburse an

amount equal to the amount of the Contractor Payment to the Surety, first from any Cash Trust Property and then from the proceeds of a draw under any LOC Trust Property and confirm such disbursement in writing to the LB Nominee; provided, however, that if there is no response from the LB Nominee within two (2) Business Days following the LB Nominee's receipt of all Reimbursement Backup Documents, the Surety shall have the right to require the Trustee to make a disbursement to the Surety as provided above (upon certification from the Surety that all Reimbursement Backup Documents have in fact been provided to the LB Nominee but that the LB Nominee has not responded within two (2) Business Days of such receipt by the LB Nominee) subject to the LB Nominee's right to review the Reimbursement Backup Documents and either confirm or deny that all required Reimbursement Backup Documents have in fact been provided to the LB Nominee and if denied, the Surety shall either provide any requested documents to the LB Nominee (to the extent the same are Reimbursement Backup Documents) or, if the parties are in dispute as to whether or not the required Reimbursement Backup Documents have in fact been provided to the LB Nominee, return the disbursement paid to the Surety back to the Trustee pending resolution of any such dispute.

(b)    With respect to any draw to be made by the Trustee under a Letter of Credit as provided in Section 2.1(a), such draw shall be made by presentment of a draw certificate in the form prescribed by the Letter of Credit.

(c)    If, by the thirtieth (30th) day prior to the expiration date of any Letter of Credit comprising LOC Trust Property held by the Trustee (an "LOC Expiry Date"), such LOC Expiry Date has not otherwise been extended by at least thirty (30) days from the current LOC Expiry Date and, as of such date, the Reimbursement Trust Termination Date (as hereinafter defined) has not yet occurred, then, upon the written direction of the Surety, the Trustee shall draw upon all undrawn amounts available under such Letter of Credit and deposit the proceeds thereof into the Cash Account. All such amounts shall thereafter be deemed to be Cash Trust Property and shall be held and disbursed as provided in this Agreement with respect to Cash Trust Property.

(d)    Within two (2) Business Days following receipt of a written confirmation from the Surety and the LB Nominee that all Bonded Work has been completed, all Contractors have been fully paid, and the Surety has been reimbursed for all Contractor Payments (the date of Trustee's receipt of such written acknowledgement being referred to herein as the "Reimbursement Trust Termination Date"), all Trust Property remaining in the Reimbursement Trust, including all Cash Trust Property in the Cash Account and the originals of any Letters of Credit comprising LOC Trust Property, shall be disbursed to the LB Nominee.

2.2    Monthly Statements. The Trustee shall deliver to the LB Nominee and Surety a monthly statement with respect to any Cash Trust Property and a written statement

acknowledging and confirming the amounts available for drawing under any LOC Trust Property.

2.3 <u>Additional Trust Property</u>.    If and to the extent that the LB Nominee is required pursuant to the terms of the Settlement Agreement to deposit with the Trustee additional cash and/or a Letter of Credit in respect of the Bonded Work (the "<u>Additional Trust Property</u>"), upon receipt of such Additional Trust Property, the Trustee shall accept the same and hereby agrees hold and disburse such Additional Trust Property as provided herein.

## ARTICLE III
## POWERS OF THE TRUSTEE

3.1 <u>Powers.</u>

(a)    The Trustee shall have the power to take any and all actions as in the judgment of the Trustee is necessary or convenient to facilitate the discharge of its duties hereunder, including but not limited to, each power expressly granted in subsection (b) below and any power reasonably identical thereto.

(b)    Without limiting the generality of subsection (a) above, the Trustee shall have the following powers:

(i.)    To withdraw and/or draw upon the Trust Property or a portion thereof, and deliver the cash proceeds thereof to the Surety, the LB Nominee or itself, in accordance with Section 2.1 or 3.1(b)(ii) of this Agreement, as the case may be.

(ii.)    To reimburse itself, from the Trust Property or a portion thereof, for costs and expenses reasonably incurred, including the reasonable fees and expenses of counsel in the event advice of counsel is sought as provided in Section 5.2 of this Agreement, in connection with carrying out its duties set forth in this Agreement, provided, however, the LB Nominee's consent shall be required for any reimbursement of such costs and expenses which exceed $[_____] in the aggregate.

## ARTICLE IV
## RELIANCE BY TRUSTEE

4.1 <u>General Reliance.</u>  The Trustee may rely, and shall be fully protected in acting upon any resolution, statement, certificate, instrument, opinion, report, notice request, consent, order, bond or other paper or document which it in good faith does not believe to be other than genuine and to have been signed or presented by the proper party or parties

or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties.

## ARTICLE V
## LIMITATION ON LIABILITY: ADVICE OF COUNSEL

5.1 <u>Limitation of Liability.</u>  The Trustee shall not be liable for any act done or step taken or omitted by it except to the extent that any act or omission constitutes gross negligence or willful misconduct.

5.2 <u>Advice of Counsel.</u>  The Trustee may consult with, and obtain advice from legal counsel in the event of any dispute or question as to the construction of any of the provision of this Agreement or its duties under this Agreement, and it shall incur no liability and be fully protected in acting in good faith in accordance with the advice of such counsel.

5.3 <u>Duties of Trustee.</u>  The Trustee (in such capacity) undertakes to perform only such duties and obligations as are expressly set forth herein and no other duties or obligations shall be read into this Agreement against Trustee.

## ARTICLE VI
## TERMINATION

6.1 <u>Termination.</u>  This Agreement shall terminate upon the delivery of any remaining Trust Property to the LB Nominee in accordance with Section 2.1(d) of this Agreement.

## ARTICLE VII
## MISCELLANEOUS

7.1 <u>Notices.</u>  All notices, requests or other communications required or permitted to be made under this Agreement shall be in writing and delivered at the address designated below, or sent by telecopy pursuant to the instructions listed below, or by United States first class mail with postage prepaid or by nationally recognized overnight air courier service, addressed as follows, or to such other address or addresses as may hereafter be furnished by the LB Nominee or the Surety to the Trustee or by the Trustee to the LB Nominee or the Surety in compliance with the terms hereof:

To the Trustee:

Bond Safeguard Insurance Company
256 Jackson Meadow Drive, Suite 201
Hermitage, TN 37076
Attn: David Campbell, President
Tel.: (615) 250-3043
Fax (615) 250-3044

To the Surety:

Bond Safeguard Insurance Company
256 Jackson Meadow Drive, Suite 201
Hermitage, TN 37076
Attn: David Campbell, President
Tel.: (615) 250-3043
Fax (615) 250-3044

To the LB Nominee:

[NAME OF LB NOMINEE]

_____

_____

Attn: _____
Tel.: _____
Fax: _____

In case of notice given by mail, notice shall be deemed given and received on the fifth calendar day after posting; in case of notice given by nationally recognized overnight air courier service, notice shall be deemed given and received on the following business day after posting; and in the case of notice by telecopier or hand delivery, on the date of actual transmission or personal delivery, as the case may be.

7.2  Entire Agreement; Amendments.  This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements and understandings relating to such subject matter. This Agreement may not amended or modified except in writing signed by the LB Nominee, Surety and Trustee.

7.3  Severability.  Should any provision of this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

7.4  Governing Law.  This Agreement  and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement or any matters of construction, validity and performance relating to this Agreement and the obligations arising hereunder), shall be governed by, and construed in accordance with, the internal laws of the State of New York.

7.5  Consent to Jurisdiction.  The Trustee, Surety and LB Nominee hereby irrevocably submit to the nonexclusive jurisdiction of any United States Federal or New

York State court sitting in New York County, New York in any action or proceeding arising out of or relating to this Agreement, and the Trustee, Surety and LB Nominee hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in any such United States Federal or New York State court and the Trustee, Surety and LB Nominee hereby waive any objection, including, without limitation, any objection to the venue or based on the grounds of forum non conveniens which it may now or hereafter have to bringing of any such action or proceeding in such respective jurisdictions. As a method of service, the Trustee, Surety and LB Nominee also irrevocably consent to the service of any and all process in any such action or proceeding brought in any court in or of the State of New York by delivery of copies of such process to the Trustee, Surety or the LB Nominee, as applicable, at its address specified in Section 7.1 or by certified mail direct to such address, such service to be effective upon such delivery or five (5) days after such mailing.

7.6 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.

7.7 Successors and Assigns. This Agreement shall inure to the benefit of the successors and assigns of the Trustee, Surety and LB Nominee and shall be binding upon the successors and assigns of the Trustee, Surety and LB Nominee. No party hereunder may assign any of its rights or obligations hereunder without the prior written consent of the other parties hereto, which may be withheld in each party's sole and absolute discretion.

7.8 Parties in Interest. Nothing in this Agreement, express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any person other than the parties hereto and their respective permitted successors and permitted assigns.

7.9 Descriptive Headings; Exhibits and Schedules. The captions in this Agreement are for convenience of reference only and shall not define or limit the provisions hereof. All exhibits, schedules, annexes and appendices attached and referred to in this Agreement are hereby incorporated herein as if fully set forth in this Agreement.

7.10 Further Assurances; Time of Essence. At any time and from time to time, upon request of any party hereto, the other parties hereto shall provide such further executed documents which are necessary to effectuate or implement the objectives and purposes of this Agreement. Time is of the essence of this Agreement and of each provision hereof in which time is an element.

7.11 Interpretation. This Agreement has been prepared with the cooperation of counsel for each of the parties, and shall not be construed against any particular party as its drafter.

7.12 WAIVER OF JURY TRIAL. TRUSTEE, SURETY AND LB NOMINEE HEREBY KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY, IRREVOCABLY

AND INTENTIONALLY FOREVER WAIVE ANY RIGHT EACH MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PERSON OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**TRUSTEE:**

BOND SAFEGUARD INSURANCE COMPANY,
an Illinois corporation

By: _____
Name: _____
Title: _____

**SURETY:**

BOND SAFEGUARD INSURANCE COMPANY,
an Illinois corporation

By: _____
Name: _____
Title: _____

**LB NOMINEE:**

[NAME OF LB NOMINEE]
a [_____]

By: _____
Name: _____
Title: _____

# EXHIBIT A

**BONDS**

[TO BE PROVIDED]

## EXHIBIT B

**BONDED WORK**

[TO BE PROVIDED]

## EXHIBIT C

### BONDED WORK CONTRACT[S]

[TO BE PROVIDED]

## **EXHIBIT D**

**CASH ACCOUNT**

[TO BE PROVIDED]

## EXHIBIT C

## FORM OF LBHI GUARANTY

See Attached.

# GUARANTEE/INDEMNITY AGREEMENT

THIS GUARANTEE/INDEMNITY AGREEMENT (the "**Guarantee**"), dated as of _____, 2011, is executed by Lehman Brothers Holdings, Inc. (hereinafter the "**Guarantor**") for the benefit of Bond Safeguard Insurance Company and Lexon Insurance Company (collectively, "**Bond Safeguard**"), with reference to the following facts:

A.    Bond Safeguard, Guarantor, Lehman ALI, Inc., **[OVC Holdings LLC, Northlake Holdings LLC]**[1] and Lehman Commercial Paper Inc. entered into that certain Settlement Agreement, dated as of _____, 2011, which was amended by that certain Amendment to Settlement Agreement, dated as of _____, 2011, to provide for the joinder of **[DESCRIBE EACH OF THE LB NOMINEES]** as LB Nominees thereunder (as so amended, the "**Settlement Agreement**").    The Settlement Agreement pertains to all outstanding subdivision, payment, performance and other bonds issued by Bond Safeguard with respect to the Projects as more particularly described in the Settlement Agreement (collectively, the "**Bonds**").   All terms not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

B.    In order to induce Bond Safeguard to enter into the Settlement Agreement in accordance with the terms and conditions contained therein for the benefit of the applicable LB Nominees and the Guarantor, pursuant to the terms of the Settlement Agreement, Guarantor has agreed to execute this Guarantee in favor of Bond Safeguard on or prior to the Closing Date. Bond Safeguard would not have entered into the Settlement Agreement without the Guarantor's agreement to enter into this Guarantee on or prior to the Closing Date.

C.    The Plan has been confirmed by the California Bankruptcy Court as to all or certain of the **[TD][VD]** Debtors and has become effective on and as of the date hereof.  As contemplated in and pursuant to the terms of the Settlement Agreement, Guarantor is entering into this Guarantee in favor of Bond Safeguard in order to secure the payment of the Settlement Obligations by the respective LB Nominees.

D.    This Guarantee, the Settlement Agreement, together with any other instruments, agreements, or documents which may hereafter be executed by the parties for the purpose of implementing the Settlement Agreement, are collectively referred to herein as the "**Settlement Documents.**"

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged by Guarantor, Guarantor hereby agrees and covenants in favor of Bond Safeguard as follows:

1.    Guarantee.

a.    The Guarantor hereby absolutely, irrevocably and unconditionally guarantees the punctual payment and performance of all Settlement Obligations (as hereinafter defined) of the applicable LB Nominee if, when and as the same may become due and payable under the

---

[1] To be included in Guarantee/Indemnity Agreement for Settlement Agreement relating to TD Debtors

Settlement Agreement and the other Settlement Documents (such obligations of the Guarantor being referred to herein as the "**Guarantee Obligations**").

b.     The Guarantor hereby agrees that this Guarantee is a continuing guarantee of payment and not of collection, that it is a primary, independent obligation of the Guarantor, and that the Guarantor's obligations hereunder shall be absolute, unconditional and irrevocable, irrespective of the following: any invalidity, illegality or unenforceability of, or defeat in, or any change in, or amendment, modification or waiver of, any term or condition in the Settlement Documents giving rise to any of the applicable Settlement Obligations; or any settlement or compromise thereof; or the absence of any action to enforce the same; or any waiver or consent by Bond Safeguard with respect to any provision thereof; or the recovery of any judgment against the applicable LB Nominee; or any action to enforce the same; or the recovery of any claim under any applicable insurance; or any other action or circumstance (other than complete, irrevocable payment) which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

c.     The Guarantor hereby waives (i) notice of acceptance of this Guarantee or the consummation of the Settlement Documents thereafter evidencing any Settlement Obligations of the applicable LB Nominee, (ii) marshaling of assets, diligence, presentment, demand for payment, protest, filing of a claim first against the applicable LB Nominee, any other person, or any collateral security for any of the Settlement Obligations (except as provided in Section 1.f. hereof), and (iii) notice of default, dishonor or non-payment, or any other notice and all demands whatsoever except for such notices or demands as may be expressly required under this Guarantee or the Settlement Documents.

d.     The Guarantor hereby agrees to indemnify Bond Safeguard and hold it harmless from and against any and all losses, expenses and damages incurred by Bond Safeguard in connection with or as a result of the assertion of any and all claims for the return of moneys (including the proceeds of any collateral) received or applied by Bond Safeguard in partial or full payment of the Settlement Obligations, including without limitation all claims based upon allegations that the payment of such moneys or the giving of such collateral to Bond Safeguard constituted a preference or fraudulent transfer under the Bankruptcy Code or any other applicable statute. This indemnity shall extend to and include all moneys recovered from or paid over by Bond Safeguard as a result of such claims, regardless of the basis thereof, and all costs and expenses including reasonable attorneys' fees incurred by Bond Safeguard in investigating, evaluating and contesting such claims. The Guarantor's liability pursuant to this subsection shall survive any termination of this Guaranty to the extent of all moneys (including proceeds of any collateral) received by Bond Safeguard on account of that portion of the Settlement Obligations (and any renewals, modifications or extensions thereof, or replacements therefor, whether made before or after such termination) for which the Guarantor under the terms of this Guaranty remains liable notwithstanding such termination, whether such moneys are recovered from, or paid over by, Bond Safeguard before or after such termination.

e.     As used herein, the term "**Settlement Obligations**" shall mean any and all payment, performance and other obligations and liabilities of the respective LB Nominees to Bond Safeguard arising under the Settlement Agreement or any of the other Settlement

Documents.  Guarantor is presently in a chapter 11 case pending in the United States Bankruptcy Court, Southern District of New York, Case No. 08-13555-JMP (the "**Bankruptcy Case**"). Guarantor warrants and represents that its entry into this Guarantee and the obligations created hereunder (i) have been authorized by the Bankruptcy Court in the Bankruptcy Case and (ii) will constitute allowed administrative obligations of Guarantor in the Bankruptcy Case.

f.      Notwithstanding anything to the contrary contained in this Guarantee, prior to and as a condition to proceeding against Guarantor hereunder, Bond Safeguard shall first have sought payment of any outstanding Settlement Obligations from available funds (whether in the form of cash or Letter of Credit) in any Reimbursement Trust established to provide for the payment of such Settlement Obligations; provided, that the parties hereby agree, without prejudice to Guarantor's rights and defenses hereunder, that funds shall not be deemed to be available for purposes of this Section 1.f. if, despite Bond Safeguard's compliance with all conditions to the release of such funds as set forth in the applicable Collateral Trust Agreement, Bond Safeguard is legally unable to obtain access to such funds within thirty (30) days following its demand for payment of any Settlement Obligations with such funds due to the bankruptcy of the applicable LB Nominee having an interest in such funds or otherwise due to any injunctive relief or other affirmative action taken by such LB Nominee to prevent any disbursement of such funds to Bond Safeguard.

2.    Waiver.

a.      Guarantor hereby unconditionally and absolutely waives, and agrees not to assert, plead, or in any manner whatsoever, claim or take advantage of, any and all defenses or rights, which Guarantor may have now or in the future, under any statute, or at law or equity, or otherwise, (1) subject to Section 1.f. hereof, to require Bond Safeguard to proceed against, or enforce or exhaust its rights, remedies or recourse against the applicable LB Nominee or other party, or any security or collateral held by Bond Safeguard at any time, or to pursue any other remedy in its power before being entitled to payment and performance by Guarantor of the Guarantee Obligations or before proceeding against Guarantor; (2) with respect to the defense of the statute of limitations in any action hereunder or for the collection of the Guarantee Obligations; (3) with respect to any right of subrogation against the applicable LB Nominee, but only until all Settlement Obligations of such LB Nominee have been finally and irrevocably discharged in full; (4) with respect to any defense that may arise by reason of (a) the lack of authority or dissolution of the applicable LB Nominee, (b) the revocation or repudiation of this Guarantee by Guarantor or the revocation or repudiation of any of the Settlement Documents by any LB Nominee or any other person or persons, (c) the failure of Bond Safeguard to file or enforce a claim against an applicable LB Nominee (either in bankruptcy or any other proceeding), (d) the unenforceability in whole or in part of any Settlement Documents or any other instrument, document or agreement referred to in this Guarantee, or any provision thereof; (5) with respect to any defense based upon an election of remedies which destroys or otherwise impairs the subrogation rights of Guarantor or the right of Guarantor to proceed against any applicable LB Nominee for reimbursement, or both; (6) with respect to any defense to the effect that the obligation of a surety must be neither larger in amount or in other respects more burdensome than that of the principal; (7) except as provided in Section 1.f. hereof, with respect to any defense based upon any taking, modification or release of any collateral or guarantees for

any indebtedness of any applicable LB Nominee to Bond Safeguard, or any failure to perfect any security interest in, or the taking of, or failure to take, any other action with respect to any collateral securing payment or performance of the Settlement Obligations; (8) with respect to any requirement of Bond Safeguard to advise Guarantor of any information known to Bond Safeguard including without limitation information regarding the financial condition of any applicable LB Nominee; (9) with respect to any defense based on the alteration, in any respect, of any of the Settlement Obligations, without the consent of Guarantor, or upon the impairment or suspension, in any way, of the rights or remedies of Bond Safeguard against any applicable LB Nominee; or (10) with respect to any rights or defenses based upon an offset by Guarantor against any obligation now or hereafter owed to Guarantor by any applicable LB Nominee, it being the intention of this Guarantee that Guarantor shall remain liable with respect to all Guarantee Obligations, to the extent set forth in this Guarantee, until the Guarantee Obligations have been fully, finally and irrevocably discharged, performed and paid in full notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor.

b.  Without limiting the generality of the foregoing or any other provisions of this Guarantee but subject to Section 2.g. hereof, Guarantor hereby expressly waives any and all benefits or defenses which might otherwise be available to Guarantor under California Civil Code Sections 2809, 2810, 2819, 2821, 2839, 2845, 2847, 2848, 2849, 2850, 2854, 2855, 2899 and 3433 and California Code of Civil Procedure Section 337. Notwithstanding anything to the contrary contained herein, Guarantor hereby waives any rights of reimbursement, subrogation, or indemnification which Guarantor may have against any applicable LB Nominee until all Guarantee Obligations arising from the Settlement Obligations of such LB Nominee have been paid in full or otherwise satisfied.

c.  In addition, without limiting the generality of the foregoing or any other provisions of this Guarantee but subject to Section 2.g. hereof, Guarantor hereby unconditionally and absolutely waives all rights and defenses set forth in California Civil Code Section 2856, including, without limitation, Guarantor's rights of subrogation, reimbursement, indemnification, and contribution and other rights and defenses that are or may become available to the Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

d.  Without limiting the generality of the foregoing or any other provisions of this Guarantee but subject to Section 2.g. hereof, Guarantor hereby expressly waives and agrees not to assert or take advantage of and shall not be released or exonerated as a result of:

(1)  An assertion or claim that the automatic stay provided by 11 U.S.C. §362 or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable as a result of the voluntary or involuntary bankruptcy proceeding of any applicable LB Nominee, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Bond Safeguard to enforce any of its rights, whether now or hereafter acquired, which Bond Safeguard may have against Guarantor; and

(2)    Any modification of the Settlement Documents without the consent of Guarantor or any modification of the Settlement Obligations by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect.

e.    Guarantor covenants and agrees that upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against any applicable LB Nominee, Guarantor shall not seek or accept any benefit of a supplemental stay or otherwise seek or accept any benefit of, pursuant to 11 U.S.C. §105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law, or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Bond Safeguard to enforce any of its rights against Guarantor by virtue of this Guarantee or otherwise.

f.    It is agreed between Guarantor and Bond Safeguard that the foregoing waivers by Guarantor are of the essence and that, but for the Guarantor's agreement to enter into this Guarantee and provide such waivers, Bond Safeguard would not have entered into the Settlement Agreement or any of the other Settlement Documents in the first instance.

g.    Notwithstanding the foregoing or anything to the contrary contained herein, the Guarantee Obligations shall never exceed or otherwise extend beyond the Reimbursement Obligations as the same may be modified from time to time in accordance with the terms of the Settlement Documents.

3.    <u>Subordination and Subrogation.</u>

a.    The Guarantor hereby subordinates all present and future claims, now held or hereafter acquired, against an LB Nominee as a creditor or contributor of capital, or otherwise, to the prior and final performance and payment in full to Bond Safeguard of all Settlement Obligations of such LB Nominee.  If any payment shall be made to Guarantor on any such claims against an LB Nominee prior to the final and complete payment and performance to Bond Safeguard of all of the Settlement Obligations of such LB Nominee, the Guarantor shall hold such amounts in trust for the benefit of Bond Safeguard, and each and every amount so paid shall forthwith be paid to Bond Safeguard to be credited and applied upon any then outstanding Settlement Obligations of such LB Nominee with the rest to be held as security for any future Settlement Obligations of such LB Nominee until such time as all Bonds issued with respect to the Project owned by such LB Nominee have been released and/or otherwise exonerated.

b.    The obligations of Guarantor under this Guarantee are independent of the obligations of any applicable LB Nominee and if Bond Safeguard, under any applicable law, proceeds to realize any rights, remedies or benefits which it may have in connection with the Settlement Obligations or any Settlement Documents giving Bond Safeguard a lien upon, or a security interest in, any collateral, Bond Safeguard may, at its sole option but subject to Section 1.f. hereof, determine which of its remedies or rights to pursue without affecting any of its rights and remedies under this Guarantee.  If in the exercise of any of its rights or remedies in

connection with the Settlement Obligations, Bond Safeguard shall be deemed to have waived or forfeited any of its rights or remedies, including its right to obtain a deficiency judgment against an applicable LB Nominee, whether because of any applicable law pertaining to an election of remedies, or otherwise, Guarantor hereby consents and agrees that Bond Safeguard may bring any action which it deems appropriate, and Guarantor hereby waives any claim or defense which Guarantor might otherwise have in connection with such action, even if such action by Bond Safeguard shall result in a full or partial loss of any rights of subrogation which Guarantor might otherwise have had but for such action by Bond Safeguard.

4.    <u>Events of Default</u>.  An event of default shall occur hereunder if Guarantor fails to pay or perform any Guarantee Obligations as and when the same are required to be paid or performed pursuant to the terms of this Guarantee.

5.    <u>Modification of Settlement Obligations</u>.  At any time and from time to time, without the consent of, or notice to, Guarantor, without incurring any liability to Guarantor and without impairing or releasing the obligations of Guarantor under this Guarantee (except to the extent of any modifications affecting the Settlement Obligations), Bond Safeguard may, in addition to Bond Safeguard's other rights under this Guarantee:

      a.    Agree to change or extend the manner, place or terms of payment of the Settlement Obligations;

      b.    Take any action under or with respect to the Settlement Obligations in the exercise of any remedy, power or privilege available to Bond Safeguard in connection therewith, at law, equity, or otherwise, or waive or refrain from exercising any such remedies, powers or privileges;

      c.    Extend or waive the time for any applicable LB Nominee's payment of any Settlement Obligations;

      d.    Apply any sums by whoever paid or however realized to any amounts owing by any applicable LB Nominee to Bond Safeguard, in such manner as Bond Safeguard shall determine in its sole and absolute discretion.

6.    <u>Attorneys' Fees</u>.  In the event any action be instituted by a party to enforce this Guarantee, the prevailing party in such action (as determined by the court, agency or other authority before which such suit or proceeding is commenced), shall be entitled to such reasonable attorneys' fees, costs and expenses as may be fixed by the decision maker.  The foregoing includes, but is not limited to, reasonable attorneys' fees, expenses and costs of investigation incurred in (1) appellate proceedings relating to the enforcement of this Guarantee; (2) in any post-judgment proceedings to collect or enforce the judgment with respect to this Guarantee; (3) establishing the right to indemnification; and (4) any action or participation in, or in connection with, the Bankruptcy Case; provided, however, that the foregoing shall not include any fees or expenses incurred by Bond Safeguard in connection with its monitoring of the Bankruptcy Case or otherwise in connection with the Bankruptcy Case other than in respect of Bond Safeguard's enforcement of this Guarantee.

7.    Termination of Guarantee.  This Guarantee shall terminate with respect to the Settlement Obligations of any particular LB Nominee upon the earlier of (a) the release or exoneration of all Bonds issued with respect to the Project owned by such LB Nominee and payment in full of any Settlement Obligations then outstanding, and (b) the mutual agreement of Bond Safeguard and the Guarantor.

8.    Notices; Payments.  Any notice or demand upon any party hereto shall be deemed to have been sufficiently given or served for all purposes hereof when delivered in person, the Business Day after delivery to a nationally recognized overnight courier marked for next Business Day delivery, or three (3) Business Days after it is mailed certified mail postage prepaid, return receipt requested, addressed as follows:

If to Guarantor:          _____
                                          _____
                                          _____
                                          _____

With a copy to:         _____
                                           _____
                                           _____
                                           _____

If to Bond Safeguard:     _____
                                           _____
                                           _____
                                           _____

With a copy to:         Harris Beach PLLC
                                           Attn:  Bruce L Maas, Esq.
                                           99 Garnsey Road
                                           Pittsford, NY 14534

Any payments made hereunder shall be payable at the office of Bond Safeguard referred to herein, or such other office as Bond Safeguard may elect, and shall be made in United States dollars and in immediately available funds, free and clear of and without set-off, counterclaim, withholding for any taxes or other charges or other deduction whatsoever.

9.    No Waiver; Remedies Cumulative.  No failure or delay on the part of Bond Safeguard in exercising any right, power or privilege hereunder and no course of dealing between the Guarantor and Bond Safeguard or the applicable LB Nominee and Bond Safeguard shall operate as a waiver of, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise of any other right, power or privilege.  The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which Bond Safeguard would otherwise have.

10.  <u>Benefit of Guarantee</u>.  This Guarantee shall inure to the benefit of the successors and assigns of Bond Safeguard and shall be binding upon the successors and assigns of the Guarantor.  The Guarantor may not assign any of Guarantor's rights or obligations hereunder without the prior written consent of Bond Safeguard, which may be withheld in Bond Safeguard's sole and absolute discretion.  Nothing contained in this Guarantee shall impair or limit any of the Settlement Obligations of any applicable LB Nominee.

11.  <u>Governing Law; Consent to Jurisdiction</u>.  This Guarantee and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Guarantee, or the negotiation, execution or performance of this Guarantee (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Guarantee or as an inducement to enter into this Guarantee or any matters of construction, validity and performance relating to this Guarantee and the obligations arising hereunder), shall be governed by, and construed in accordance with, the internal laws of the State of California.  To the maximum extent permissible by law, each of Bond Safeguard and Guarantor expressly consent and submit to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") over any actions or proceedings relating to the enforcement or interpretation of this Guarantee or any documents executed and delivered in connection herewith and any party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.  Each of Bond Safeguard and Guarantor agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by law.  If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Guarantee or any other documents executed and delivered in connection herewith and/or any actions or proceedings arising hereunder or thereunder, then Bond Safeguard and Guarantor agree that venue shall be in any court in the State of New York having proper jurisdiction.  Each of Bond Safeguard and Guarantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Guarantee or any other documents executed and delivered in connection herewith with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York; and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.  Each of Bond Safeguard and Guarantor irrevocably consents to service of process in the manner provided for notices in Section 8 hereof.  Nothing in this Guarantee will affect the right, or requirement, of Bond Safeguard or Guarantor to serve process in any other manner permitted or required by law.

12.  <u>Entire Agreement; Amendments</u>.  This Guarantee contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements and understandings relating to such subject matter.  This Guarantee cannot be amended or supplemented except by a written agreement signed by Guarantor and Bond Safeguard.

13.  <u>Severability</u>.  In the event that any one or more of the provisions contained in this Guarantee shall be determined to be invalid, illegal or unenforceable in any respect, for any reason, the validity, legality and enforceability of any such provision or provisions in every other respect, and of the remaining provisions of this Guarantee, shall not be in any way impaired.

14.     <u>Descriptive Headings</u>.  The captions in this Guarantee are for convenience of reference only and shall not define or limit the provisions hereof.

15.     <u>Further Assurances</u>.  At any time and from time to time, upon request of Bond Safeguard, Guarantor shall provide such further executed documents which Bond Safeguard may consider necessary or desirable to effectuate or implement the objectives and purposes of this Guarantee.

16.     <u>Interpretation</u>.  This Guarantee has been prepared with the cooperation of counsel for each of the parties, and shall not be construed against any particular party as its drafter.

17.     <u>Warranty of Authority</u>.  The individual whose signature appears below represents and warrants to Bond Safeguard that he or she has the full authority to execute this Guarantee on behalf of the Guarantor, and that he or she is acting within the scope of such authority.

18.     **<u>WAIVER OF JURY TRIAL</u>.  BOND SAFEGUARD, BY ACCEPTING THIS GUARANTEE, AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY, IRREVOCABLY AND INTENTIONALLY FOREVER WAIVE ANY RIGHT ANY OF THEM MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS GUARANTEE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PERSON OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THIS GUARANTEE (INCLUDING, WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS GUARANTEE OR ANY CLAIMS OR DEFENSES ASSERTING THAT THIS GUARANTEE WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).**

[SIGNATURE ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guarantee as of the date first above written.

**GUARANTOR:**

Lehman Brothers Holdings, Inc., as debtor and debtor in possession in its Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Its: _____

## EXHIBIT D

## FORM OF CONTINUATION CERTIFICATE

See Attached.

# Bond Safeguard INSURANCE COMPANY

256 Jackson Meadows Dr., Hermitage, TN  37076    (615)250-3040

## CONTINUATION  CERTIFICATE

THIS IS TO CERTIFY that Bond Number _____ in which

_____.

_____

_____

is the Principal, and _____

Bond Safeguard Insurance Company
256 Jackson Meadows Dr.
Hermitage, TN  37076

is the Surety, and

_____

_____

_____

is the Obligee, _____

dated _____ in the amount of $_____,is in full
force and effect.

This Continuation Certificate and any further such Certificates issued
relative to this Bond shall not cause cumulative liability and the amount
of the liability of the Surety herein shall not be greater than the penal
sum set forth in the Bond.

SIGNED,SEALED AND DATED this _____ day of _____ 20 ___.


BOND SAFEGUARD INSURANCE COMPANY


By: _____ _____
      Attorney-In-Fact

## SCHEDULES

| | |
|---|---|
| Schedule 1 | Definitions |
| Schedule 2 | Bonds |
| Schedule 3 | SunCal Debtors |
| Schedule 4 | Bond Safeguard/Lexon Proofs of Claim |
| Schedule 5 | ELR Settlement |
| Schedule 6 | Bond Claims and Bonded Claims |

## EXHIBITS

| | |
|---|---|
| Exhibit A | Terms of Letter of Credit |
| Exhibit B | Form of Collateral Trust Agreement |
| Exhibit C | Form of LBHI Guaranty |
| Exhibit D | Form of Continuation Certificate |