# EXHIBIT B

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Lead Case Nos. 08-13555-JMP and 08-01420-JMP (SIPA)

Adversary Case No. 1-09-01482

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHES HOLDINGS INC., et al.



        Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHER INC.



        Debtor.

- - - - - - - - - - - - - - - - - - - -x

CYNTHIA SWABSIN, et al.,

                  Plaintiffs,

        -against-

LEHMAN BROTHERS HOLDINGS INC.,

                  Defendant.

- - - - - - - - - - - - - - - - - - - -x

        (CONTINUED ON NEXT PAGE)

2

1

2               United States Bankruptcy Court

3               One Bowling Green

4               New York, New York

5

6               January 21, 2010

7               2:07 PM

8

9    B E F O R E:

10   HON. JAMES M. PECK

11   U.S. BANKRUPTCY JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1

2      HEARING re Motion Filed by Merrill Lynch International for

3      Relief from the Automatic Stay.

4

5      HEARING re Motion Filed by the California Public Employees

6      Retirement System for Relief from the Automatic Stay.

7

8      HEARING re Pre-Trial Conference and Motion Filed by the

9      Defendant to Dismiss.

10

11     HEARING re Motion Filed by the California Public Employees

12     Retirement System for Relief from the Automatic Stay to Effect

13     Setoff Against LBI Funds Currently Held by Securities Finance

14     Trust Company.

15

16

17

18

19

20

21

22

23

24     Transcribed by:   Pnina Eilberg

25

4

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Lehman Brothers Holdings, Inc.

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   RICHARD P. KRASNOW, ESQ.

9          DAVID R. FERTIG, ESQ.

10

11

12   WEIL, GOTSHAL & MANGES LLP

13        Attorneys for Lehman Brothers Holdings, Inc.

14        700 Louisiana

15        Suite 1600

16        Houston, TX 77002

17

18   BY:   ELEANOR H. GILBANE, ESQ.

19

20

21

22

23

24

25

5

1

2      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3            Attorneys for Merrill Lynch

4            Four Times Square

5            New York, NY 10036

6

7      BY:   GEORGE A. ZIMMMERMAN, ESQ.

8            ANDREW M. THAU, ESQ.

9

10

11     KRAMER LEVIN NAFTALIS & FRANKEL LLP

12            Attorneys for Rutger Schimmelpennick, Frederic Verhoeven

13            1177 Avenue of the Americas

14            New York, NY 10036

15

16     BY:   THOMAS MOERS MAYER, ESQ.

17            P. BRADLEY O'NEILL, ESQ.

18

19

20

21

22

23

24

25

6

1

2    FELDERSTEIN FITZGERALD WILLOUGHY & PASCUZZI LLP

3          Attorneys for CalPERS

4          400 Capitol Mall

5          Suite 1450

6          Sacramento, CA 95814

7

8    BY:   STEVEN H. FELDERSTEIN, ESQ.

9          HOLLY A. ESTIOKO, ESQ. (TELEPHONICALLY)

10

11

12    MILBANK, TWEED, HADLEY & MCCOLOY LLP

13          Attorneys for Committee

14          International Square Building

15          1850 K Street, NW

16          Washington, DC 20006

17

18    BY:   DAVID S. COHEN, ESQ.

19

20

21

22

23

24

25

7

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for Committee

4         One Chase Manhattan Plaza

5         New York, NY 10005

6

7   BY:   EVAN R. FLECK, ESQ.

8

9

10   OUTTEN & GOLDEN LLP

11         Attorneys for Plaintiffs

12         3 Park Avenue

13         New York, NY 10016

14

15   BY:   JACK A. RAISNER, ESQ.

16

17

18

19

20

21

22

23

24

25

8

1

2    STUTMAN, TREISTER & GLATT, PROFESSIONAL CORPORATION

3         Attorneys for Interested Party

4         1901 Avenue of the Stars

5         12th Floor

6         Los Angeles, CA 90067

7

8    BY:   JEFFREY H. DAVIDSON, ESQ. (TELEPHONICALLY)

9         MARINA FINEMAN, ESQ. (TELEPHONICALLY)

10        WHITMAN L. HOLT, ESQ. (TELEPHONICALLY)

11

12

13   CHAPMAN & CUTLER LLP

14        Attorneys for Creditor, US Bank

15        111 West Monroe Street

16        Chicago, IL 60603

17

18   BY:   JAMES HEISER, ESQ. (TELEPHONICALLY)

19        FRANKLIN TOP, ESQ. (TELEPHONICALLY)

20

21

22   ALSO PRESENT TELEPHONICALLY:

23        MICHAIL ZEKYRGIAS, Interested Party

24

25

48

1          THE COURT:  Is there more for this?

2      (No response)

3          THE COURT:  Okay.  We have one more matter.  I'm going

4      to take a ten minute break and resume at 3:30.  Anyone who

5      wishes to be excused, obviously is free to leave.  Anyone who

6      wishes to stay for the proceedings at 3:30, you're welcome to

7      stay.  I'll see you at 3:30.  We'll take a ten minute break.

8      (Recess from 3:19 p.m. until 3:34 p.m.)

9          THE COURT:  Be seated, please.

10         MR. O'NEILL:  Good afternoon, Your Honor.  Brad

11     O'Neill of Kramer Levin, special counsel to the debtors.

12         We're here this afternoon on a motion to dismiss this

13     adversary proceeding.  Your Honor has seen this fact pattern

14     before, although it arose in a somewhat different procedural

15     context.  And the motion has both substantive and procedural

16     dimensions, with your indulgence I'd like to start with the

17     substantive side because I think it simplifies the procedure.

18         The facts, as alleged in the complaint, are as

19     follows.  The plaintiffs were employees of Lehman who were

20     terminated early in September of 2008.  The week before the

21     petition date they were given forms of separation agreement,

22     which they signed before the petition date.

23         The terms of the separation agreement provide a --

24     contain a complete release of all claims arising from the

25     plaintiffs' employment, including all claims arising under the

49

1    severance policy of Lehman.  In return for that release, among

2    other things, the separation agreement provides each of the

3    plaintiffs with a fixed stream of payments payable in two-week

4    intervals over varying periods of time for each employee.  For

5    one I think it's six months and for the other it's in excess of

6    a year.

7         On the substantive side, the plaintiffs have filed

8    this adversary proceeding seeking, A, a declaration that they

9    are entitled to both administrative claims and/or priority

10   claims in respect of amounts due but unpaid under the

11   agreement -- I left something out.  The initial payment was

12   made under these agreements, the initial payment was made, I

13   think, two days after the petition date.  Thereafter, the

14   debtors sent notice to each of the plaintiffs that they would

15   not be making further payments.  And the claims have, in fact,

16   been scheduled for each of these plaintiffs.

17        The plaintiffs seek a declaratory judgment that the

18   claims to which they're entitled are in fact administrative

19   claims or, in the alternative, priority claims.

20        THE COURT:  Let me follow up on something you said a

21   moment ago.  Is it the case that the debtors' schedules

22   schedule claims for unpaid compensation pursuant to the

23   severance agreements as to all of the plaintiffs that are in

24   the punitive class that these nominal plaintiffs would seek to

25   represent in the adversary proceeding?

50

1          MR. O'NEILL:  I believe -- I don't know the answer

2     with certainty but I believe the answer to be yes.

3          THE COURT:  Okay.

4          MR. O'NEILL:  The -- and secondarily they assert a

5     claim for breach of these separation agreements.

6          First with respect to the claim for administrative

7     priority.  The typical standard or the applicable standard for

8     the allowance of an administrative claim requires a transaction

9     with the estates, not with the prepetition debtor.  And it

10    requires that the transaction or administrative claim is only

11    allowed to the extent there is actually benefit to the estate.

12    Here it's clear that the, and I don't think there's any

13    dispute, that the contract on which these claims are based is a

14    prepetition claim made with the prepetition debtor.  And I

15    don't think there's even any dispute about whether or not there

16    was benefit conferred on the estate.  There isn't an allegation

17    in the complaint that there was benefit and I don't think that,

18    I could be wrong but I don't think you're going to hear that

19    these employees who did not work for even a single day for the

20    debtors postpetition, conferred benefit on the estate.

21         The theory, rather, is strictly Straus-Duparquet.  And

22    the argument, as I understand it is, Straus-Duparquet says that

23    an employee who is terminated postpetition becomes entitled to

24    -- and is entitled to severance -- his right to severance is

25    deemed to accrue at the time of termination as compensation for

1    hardship.  These employees, it is asserted, were terminated

2    postpetition because under nonbankruptcy employment law they

3    are considered employed until their salary payments cease.  So

4    in other words, you're an employee until the day you stop

5    getting salary, thereafter you stop being an employee therefore

6    that's the date of your termination.

7         Under the terms of the separation agreements, the

8    payments were supposed to continue into the postpetition

9    period.  They did continue briefly but then they stopped almost

10   immediately after the petition.

11        I think the simple response is, this case isn't

12   Straus-Duparquet.  This is not a case in which these plaintiffs

13   had a right to a payment upon termination.  While they may, at

14   one point prepetition, have had rights under a severance

15   policy, they surrendered those rights when they signed the

16   separation agreements.

17        Under the separation agreements, they do not have a

18   right to payment upon termination; they have simply a right to

19   a fixed schedule of payments.  So any right they have is

20   founded exclusively on that agreement and it is a prepetition

21   agreement and therefore a prepetition claim.  And I think, in

22   fact, the underlying theory of the plaintiff's argument here,

23   which is that we're not terminated until you stop paying us, it

24   doesn't make sense on its own terms because under their theory

25   they're not terminated until no further payments are do.  And

52

1    so in other words, you pay me everything I'm owed and then I'm

2    terminated.

3            So if that's right, I don't think it is but if it is,

4    when you're terminated there's nothing else due and you're not

5    entitled to severance.  So it doesn't -- the theory, I think,

6    doesn't hold water on its own terms.  It also doesn't hold

7    water under Straus-Duparquet or under basic bankruptcy law.

8    And in fact, Your Honor has considered, as I've said before,

9    you've considered this fact pattern before.

10           Marie Hunter, who was another employee terminated in

11   the same reduction in force, filed a motion for payment of an

12   administrative expense back in the fall making essentially the

13   same arguments.  There were some minor variations but it's

14   essentially the same argument.  And Your Honor concluded that

15   the fact that the contract was entered into prepetition was

16   determinative and entered an order specifically denying her

17   claim for an administrative expense to the extent that it was

18   premised upon Straus-Duparquet.  You did allow her to -- it was

19   without prejudice to her ability to come back and demonstrate

20   that she conferred benefit on the estate; she had actually

21   worked for the estate postpetition.

22           Now on to the procedural side of things.  The

23   plaintiffs are asserting essentially prepetition claims.  They

24   have filed proofs of claim, which in our view is the

25   appropriate procedure to follow.  But they've also commenced an

53

1       adversary proceeding, which in our view is not the appropriate

2       procedure to follow.  We have cited Your Honor to a series of

3       cases which support that.  The proper procedure to follow is to

4       file proofs of claim, it gives the -- those claims are deemed

5       allowed immediately so that there is no need to have litigation

6       if the debtor does not dispute the claims.  And it also

7       provides for a more orderly administration of the claims

8       process.  In a large case such as this one, if every claimant

9       was allowed to push to the front of the line by filing an

10      adversary proceeding, we would have chaos.

11          The response to that is that is presented by the

12      debtors is -- by the plaintiffs, excuse me, is that Rule 7001

13      contemplates that a motion or an action to recover money or

14      property is properly styled as an adversary proceeding.  While

15      that is an accurate quotation of the rule, the Rule 7001

16      adversary proceeding is expressly not intended to displace the

17      proof of claim process.  It's instead intended to allow the

18      debtor to assert claims for money or property or to allow

19      creditors to assert claims to specific items of property in the

20      possession of the estate.  It's not intended to provide an

21      alternative avenue to assert prepetition claims or the district

22      claims.

23          In fact, when you look at the advisory notes they're

24      very clear that proofs of claim only become adversary

25      proceedings A, once they're objected to and B, if the trustee

54

1    or the debtor objecting to them actually seeks relief of the

2    type specified in Rule 7001.

3         Finally, the plaintiffs seek to style this as a class

4    action.  And there is well developed case law in this district

5    that says in an adversary proceeding perhaps, or an adversary

6    proceeding Rule 7023 applies.  It does not, however, apply

7    under -- in a contested matter under Rule 9014 unless Your

8    Honor, in your discretion, decides it should.  And there are no

9    fewer than four cases decided in this district over the last

10   decade or so which lay out standards which may guide your

11   exercise of discretion and they particularly specify three

12   factors which you should consider.  The first of which is has

13   the movant sought authority to proceed on the class basis.

14   It's true that this issue comes up primarily in the context of

15   proofs of claim but it is applicable, I think -- there's no

16   basis to limit it to that.

17        There's no argument, I think, here that the plaintiffs

18   have not sought that authority.  Also, under the relevant cases

19   there are fairly limited circumstances in which courts have

20   exercised their discretion to allow class actions, in

21   particular cases where a class has been certified prepetition

22   or where there's some showing that notice is inadequate.  Here,

23   clearly there isn't a prepetition class but also there's no

24   issue of notice.

25        The former employees, going back three years, were

55

1    provided with notice of the case.  This matter, presumably, was

2    fresh in everybody's mind at the time of the filing.  And in

3    fact, well over a hundred people have filed proofs of claim

4    asserting claims in respect of these separation agreements.  So

5    I think there's no argument that notice was adequate, however

6    that does take us to the next issue which is, is a class action

7    consistent with the policies of bankruptcy, which are to

8    centralize claims, to achieve a just, orderly, economic and

9    expeditious resolution of claims.  And I think here we would

10   argue that the answer is no.  There has been ample notice to

11   the class, the punitive class.  Many members of that class have

12   taken advantage of the opportunity to file proofs of claim;

13   those claims are, for present purposes, allowed.  And there's

14   no need to have anyone represent the interests of people who

15   have not expressed an interest in being represented for what

16   may be entirely unnecessary.

17          THE COURT:  Let me break in on something you said.

18   You said these claims are, for present purposes, allowed?

19          MR. O'NEILL:  Proofs of claim are deemed allowed until

20   they're objected to.

21          THE COURT:  All right.  But for purposes of the motion

22   to dismiss, there are certain claims that have been scheduled,

23   certain claims that are the subject of a proof of claim and at

24   the moment at least, I'm not clear as to whether members of

25   this punitive class are within the category of proofs of claim

56

1   filed or schedule claims or both.

2           MR. O'NEILL:  Both.

3           THE COURT:  So there are some members of the class

4   that have claims that have been scheduled but have not filed

5   proofs of claim, is that right?

6           MR. O'NEILL:  I believe the number is around 150, Your

7   Honor.

8           THE COURT:  A hundred and fifty that have been

9   scheduled?

10          MR. O'NEILL:  Scheduled but no proof of claim.

11          THE COURT:  And as to the scheduling of these claims,

12  are they scheduled as prepetition unsecured claims?

13          MR. O'NEILL:  Yes.

14          THE COURT:  And as to the proofs of claim that have

15  been filed, are they claims that have been filed for priority

16  status, for administrative status and unsecured status or are

17  they, sort of, all over the lot?

18          MR. O'NEILL:  I think there is some variation in them.

19  I'm not going to tell you I've reviewed every one.  I would say

20  the majority of them assert priority status.

21          THE COURT:  All right.  Go ahead.

22          MR. O'NEILL:  And that raises an additional point,

23  which is that to the extent a class action is certified, class

24  actions are opt out as opposed to bankruptcy which is really

25  opt in.  And to the extent that one were to permit -- certify

1    an opt out class and permit people who have not filed proofs of

2    claim to opt in, they would essentially be getting a second

3    bite at the bar date.  And that raises due process concerns, I

4    think, for those who actually did see and comply with the bar

5    date.

6         The only -- and then finally, before exercising

7    discretion to allow a class action to proceed in a contested

8    matter, courts have required a showing that the plaintiff

9    comply with Rule 23 and have conducted analyses of the various

10   Rule 23 factors.

11        We have outlined our position on those factors in our

12   papers.  There really has been no response in the plaintiff's

13   papers.  To be brief, we argued that you can't show superiority

14   because basically bankruptcy's different.  Bankruptcy does most

15   of the things a class action is supposed to do.  And

16   introducing the class action concept compromises bankruptcy in

17   some way by adding an additional layer of procedural

18   complexity, adding cost and monkeying around with the bar date.

19        We also pointed out that they will have trouble

20   showing luminosity because this class, the punitive class, is

21   not large by class standards.  In fact, we've cited cases

22   showing -- refusing to certify classes, punitive classes that

23   were much larger on this ground.  And also because the class

24   members are geographically not disbursed, undisbursed.  They're

25   located in the tri-state area, overwhelming.  Not exclusively

58

1   but overwhelmingly.  And those -- that factor is directly

2   relevant to the class action analysis.  Plus, there are also

3   individual issues such as are people insiders and does that

4   render these agreements avoidable under the modifications to

5   Section 548(a).  There are provisions in the CFR relating to

6   golden parachute payments, all of which are individual not

7   class specific.

8        And in addition, the primary rationale that I think

9   you're offered to certify a class -- why a class is appropriate

10  here is because there are asserted to be common legal issues

11  and the Court can efficiently resolve common legal issues in

12  the context of a class action.  And while that's true as far as

13  it goes, I'm not sure it justifies having a class action here

14  because, frankly, everything's centralized in front of you

15  already.  And as you pointed out in the proceeding before the

16  break, your decisions are law of the case and anything you do

17  in this case -- if you were to do it in an individual matter

18  it's going to be generally applicable to the other people who

19  are in the same situation.

20       So you don't need a class action in order to have

21  uniformity of decisions.  You're not going to have a conflict

22  in decisions.  There's only one decision maker and we know

23  enough, once you've ruled, not to bring the same thing back to

24  you again and again.

25       For each of those reasons, Your Honor, the debtor

59

1    would argue that the complaint should be dismissed and the

2    plaintiffs' claims for an administrative claim should be denied

3    and they should otherwise be -- but they should otherwise be

4    allowed to proceed on an individual basis with their proofs of

5    claims as filed.

6           THE COURT:  Let me, before you sit down; ask you the

7    follow up on that comment about administrative claims being

8    denied.  Procedurally, this is a motion to dismiss an adversary

9    proceeding brought by two named former employees purportedly on

10    behalf all similarly situated employees seeking a determination

11    that all members of the class are entitled to administrative

12    claim status.

13           Is it your position that if I were to grant your

14    motion to dismiss and relegate the individual members of this

15    class to managing their claims through the individual proof of

16    claim process, that there is any preclusive impact upon their

17    ability, if they've already filed an appropriate claim for

18    administrative claims status, to later prosecute that claim as

19    an administrative claim.  Or for that matter, to the extent

20    that there is no administrative bar date yet set, does there --

21    is there anything about granting the motion to dismiss that

22    would preclude members of this purported class from

23    individually filing, prior to an administrative bar date, an

24    administrative claim.

25           MR. O'NEILL:  I do not believe that until the class is

60

1    certified that the non-named plaintiffs -- in other words, the

2    punitive class members how aren't named plaintiffs are parties

3    to the proceeding and so therefore I don't believe they are

4    bound by your ruling.  I think the only parties who are bound

5    are the plaintiffs -- the individual plaintiffs themselves.

6            THE COURT:  I understand that but I was really

7    focused, perhaps myopically, on the comment you made about

8    ordering that members of this class would not have

9    administrative claims status if I were to grant your motion to

10   dismiss.  I don't think that's right and I'm not sure --

11           MR. O'NEILL:  If that is what I said --

12           THE COURT:  -- that's what you're asking for.

13           MR. O'NEILL:  It is not what I'm asking for.  If it's

14   what I said, I misspoke.  To the extent that I'm asking you to

15   deny a request for an administrative expense claim, it is only

16   as it relates to these two named plaintiffs.  I do not -- I'm

17   not attempting to foreclose anyone else from coming in, I don't

18   think you can at this point.  If they want to come in and

19   assert a motion for an administrative claim, I don't think --

20   I'm not asking you to preclude them, I'm not sure you can.

21           THE COURT:  Well, I'm not sure that -- I'll hear from

22   the plaintiffs on this, it's a small point.  But if I were to

23   determine that the procedural choices made by these plaintiffs

24   are inappropriate and that claim allowance is a matter not to

25   be handled by means of adversary proceeding but by other means

61

1    during the course of the case, including, to the extent

2    appropriate, the filing of administrative claims assuming such

3    claims are still viable, it seems to me that even if I were to

4    dismiss their complaint it would be without prejudice to their

5    ability to at least attempt to assert administrative claims

6    status unless it's your position that the granting of your

7    motion to dismiss requires a determination as to the

8    applicability of Straus-Duparquet to these claims.  Because

9    you've made both a procedural and a substantive argument, I

10   believe that I would only be precluding these individual

11   plaintiffs from asserting an administrative claim if I were to

12   grant the motion on the basis of Straus-Duparque as opposed to

13   granting the motion on a purely procedural basis.

14           MR. O'NEILL:  I agree with that.  If I understood Your

15   Honor properly, your question was if you grant it on just the

16   procedural basis would they be precluded and I think the answer

17   to that is no.

18           THE COURT:  Okay.  Thank you.

19           MR. RAISNER:  Good afternoon, Your Honor.  Jack

20   Raisner on behalf of the plaintiffs.

21           The piece that's missing from Mr. O'Neill's

22   presentation, Your Honor, is what makes for this adversary to

23   be appropriate and for this type of claim in the adversary to

24   be appropriate.  And the piece that's missing is that we're

25   talking about compensation for employees who have lost their

62

1    jobs.  In the vast panoply of claims that come before Your

2    Honor, there's a special status that's been accorded because of

3    concerns over the welfare of employees who lose their job, both

4    in bankruptcy, in the Code, in the Second Circuit decisions and

5    in the general law in our society.  If a person loses their job

6    they can go to the Unemployment Bureau to get money

7    immediately.

8           The Second Circuit, in Straus-Duparquet, obviously has

9    accorded a special status as an administrative claim for

10   certain severance claims.  The Bankruptcy Code, in 2005 was

11   amended by Congress to add to Section 503(b)(1)(A)(ii) a back

12   pay claim for employees whose pay has stopped wrongfully.  And

13   their back pay claim, if it is contemporaneous with the

14   postpetition period, they have an administrative claim for that

15   back pay.

16          THE COURT:  But one of the problems you have though,

17   is that these employees entered into prepetition severance

18   agreements.  And the claims that they have, as I understand it,

19   arise out of agreements that were entered into on September 12,

20   the Friday before the Monday filing of LBHI.  And as noted by

21   counsel, I'm familiar with the issue and dealt with it at least

22   in another setting a couple of months ago when Ms. Hunter,

23   through counsel, raised the same Straus-Duparquet argument and

24   obviously it was a different procedural setting but the law's

25   the same.  I found that there was no basis for claiming, under

63

1    that severance agreement, that there was a right to a

2    postpetition administrative claim.  I also distinguished the

3    prepetition agreement from the collective bargaining agreement

4    that was applicable in the Straus-Duparquet situation because

5    there the employees were terminated postpetition.

6         I also noted, during the course of that argument and

7    colloquy, that as a matter of bankruptcy planning very

8    frequently parties contemplating a bankruptcy in the Second

9    Circuit will rather self-consciously and deliberately enter

10   into severance arrangements with their employees in a reduction

11   of force prebankruptcy so as to avoid the impact of Straus-

12   Duparquet and the creation of administrative expense liability.

13        That being the case, how, if at all, do you

14   distinguish the plaintiffs in your adversary proceeding from

15   the situation that I've already addressed, recognizing, as has

16   been mentioned by counsel, that I'm the same judge who heard

17   that last one and unless you can distinguish this situation

18   from that you're not likely to prevail.

19        MR. RAISNER:  Your Honor, I had a chance to look at

20   the transcript of the hearing in the Hunter matter and read it

21   very carefully.  I was surprised because, with all due respect

22   Your Honor, you took the position that you did believe that

23   Straus-Duparquet stands for the proposition that the only

24   instance in which there'll be administrative claim is when the

25   claimant has made an agreement postpetition with the debtor in

64

1    possession.  And Straus-Duparquet is not ambiguous on that

2    point, Your Honor.  The case says very clearly that the

3    collective bargaining agreement was with the debtor.  The

4    termination was by the debtor in possession.

5         THE COURT:  Postpetition.

6         MR. RAISNER:  The termination was postpetition.

7         THE COURT:   Termination was postpetition.

8         MR. RAISNER:  But the underlying severance policy, the

9    plan, was a contract with the debtor prepetition.

10        THE COURT:  But in this circumstance --

11        MR. RAISNER:  Yes.

12        THE COURT:  -- the severance agreements were entered

13   into prepetition and the employment relationship was terminated

14   prepetition.

15        MR. RAISNER:  That, Your Honor, is a question of fact.

16   The agreement said the separation would only occur months

17   later.  The employees were carried on the payroll as employees

18   with their salary on payroll, with their benefits completely

19   unaffected.

20        For Your Honor to say that as a matter of fact

21   conclusively state that the termination took place when the

22   debtor says it took place is putting the facts in the best

23   light for the debtor but there's a dispute, as Mr. O'Neill

24   said.  Employment law generally doesn't look to when you agree

25   to a termination, it's when things happen down the road that

1      affect the termination.  And here there is a spectrum of

2      events, and I appreciate Your Honor's point about planning,

3      that these are carefully designed.  That they were designed to

4      continue the employee through something called a notice period,

5      through something called a separate period after that, for a

6      long period of time when they are on the books as employees and

7      from my experience, Your Honor, if employers during that period

8      can take advantage of saying that the termination takes place

9      at some later point, they will do that.

10          For instance, in this case, the separation first

11     starts in September but I bet if there was some government

12     program that gave the employer a kickback or a return on some

13     tax rebates if termination is set to take place in January of

14     the following year, they could show to the government yes this

15     was still an employee of ours in January of the following year.

16     Look, he's got all -- he's been on the books, we can take

17     advantage of some other -- for some other purpose that's

18     advantageous to us.

19          I think this deliberate ambiguity in these continued

20     relationships, sometimes called guard and leave where the

21     person is, sort of, half in and half out, I think that's why

22     there's an issue of fact for a little discovery Your Honor

23     before we can say that the termination took place prior to the

24     filing of the bankruptcy.  Because there are theories, there's

25     law, good law on, saying that the termination hasn't taken

66

1    place until certain things happen.  We think that this stopping

2    of payment, cutting off the compensation, is more an event of

3    severance than anything else that took place until then.  And

4    that certainly took place postpetition, there's no question

5    about that.

6              THE COURT:  Is there any factual dispute as to the

7    members of your class, your punitive class, that all of these

8    individuals did no work for the debtor postpetition?

9              MR. RAISNER:  We have -- we don't know all of the

10   class members' identity.  We've been approached by and have

11   spoken to 150 or so.  There are individuals among them who did

12   provide services.  I don't know how many but we do know of

13   some, like Ms. Hunter.

14             Your Honor, in terms of Ms. Hunter's situation, let's

15   be clear that she was not seeking what we're seeking.  She was

16   seeking a 160,000 dollar "special payment".  That is not what I

17   consider to be a Straus-Dup0arquet severance.  I think Your

18   Honor had grounds to look at that aspect of it, you could have

19   denied the motion on that basis.

20             We are looking for those payroll payments that she

21   wasn't even asking for for the notice period, for that eight

22   weeks until November 8th.  And try to understand, what was that

23   if it wasn't employment.  This is the issue that I don't think

24   is actually even in conflict with your previous ruling, Your

25   Honor.

67

1           THE COURT:  I have a fundamental problem that you

2     might as well address now that is somewhat comparable to the

3     issue that I raised in a very different setting earlier today,

4     if you were sitting through the CalPERS argument, where I was

5     concerned about some case administration consequences of

6     granting CalPERS relief from the automatic stay.

7           I have some similar case administration concerns with

8     respect to the procedural approach that you have adopted here

9     on behalf of members of this proposed class.

10          As you may or may not be aware, the claims

11    administration process in the context of the Lehman bankruptcy

12    cases is a massive undertaking that involves some sixty-plus

13    thousand claims aggregating some 800 and some odd billion

14    dollars.  And based upon representations that have been made to

15    the Court, the aggregate claims may swell, at some point, to

16    more than a trillion dollars.  And there is a very rigorous and

17    carefully conceived claims process that has been established in

18    this case, including the proof of claim process, process by

19    which the debtors and their professionals are reviewing proofs

20    of claim to determine those that may be worthy of objection and

21    those that may be allowed.  And what I don't understand is why

22    it is appropriate for any claimants that have filed proofs of

23    claim or that have scheduled claims to be asserting anything

24    with respect to claim allowance in the context of an adversary

25    proceeding.  That's a real problem I have and that means it's a

68

1    problem you have.

2        MR. RAISNER:  I admit I didn't follow the CalPERS

3    argument all that well, Your Honor.

4        THE COURT:  You don't need to have even listened to

5    it.

6        MR. RAISNER:  No, but I did hear the word piecemeal,

7    Your Honor, and the concern about piecemeal claims assessments.

8    Our experience, and we largely do one-action cases for the same

9    type of back pay in bankruptcy courts around the country, our

10   experience is that we actually are of some help to making the

11   claims process for these types of situations more expeditious,

12   more economical, in touch with the Court and not at odds with

13   the Court.

14       There are, obviously, hundreds of proofs of claims

15   that are coming through like Ms. Hunter's that are factually

16   different in what the person has written down.  They're going

17   for one amount; we're going for different amounts.  They seem,

18   superficially, to be alike but they're very much different and

19   many of them, as a result, have issues of proofs of fact or

20   nuances that we think that we're in a good position to be able

21   to sort through for the Court and can explain to people and to

22   give an alternative to having 150 Ms. Hunters come before Your

23   Honor and go over some issues which are the same, some of which

24   are somewhat different.  If they're not contested, Your Honor,

25   I do step back.  If the debtor's position is to allow all of

69

1    the proofs of claim at the levels that everyone has asked and

2    there's no contention and there's no dispute, then I don't see

3    the need for counsel for anybody.

4         But if there's a denial of the claim, for someone

5    who's seeking relatively small amounts of money, at that time

6    they've lost because we all know that they can't afford a

7    lawyer to even ask the questions why have I been denied a

8    priority, what can I do about it.  And there's no one to step

9    in and do that.  We serve -- we see ourselves serving the

10   Court, as officers of the Court, to be an intermediary and to

11   make this a lot more efficient then it usually is.

12        If Your Honor's figured out a process which is much

13   different then the traditional, ordinary bankruptcy procedures,

14   then there is an opportunity for Your Honor, if you were to

15   grant us status, if we're a class, we can make a motion for

16   class certification, we can go over which is the better process

17   and you can deny class certification.  So allowing us to go the

18   next step certainly hasn't precluded an analysis of which is

19   the best process for these types of claims in this procedure.

20        Very often, most often, in fact almost always the

21   debtor will stipulate to the class with us because with limited

22   funds to hear individual people piecemeal, it's better to just

23   have it done by one lawyer speaking who can do it for everyone

24   and that is in concert with, I think, the Grant (ph.) case,

25   Your Honor, where the speaking in unison for low level claims

70

1    for individuals who were not sophisticated, to have one lawyer

2    able to do that for the group helps everyone's claim to come

3    forward and not be lost in the mix and to have someone speak

4    for them and, as I say, to actually make things easier for the

5    Court.

6            THE COURT:  Well, I appreciate your desire to ease my

7    burden but the real issue that I'm focused on is whether, under

8    these circumstances, it is appropriate, as a matter of

9    bankruptcy law, for a particular class of creditors, regardless

10   of whether they be former employees or swap counterparties, to

11   be separately represented in an adversary proceeding that

12   accelerates to an earlier phase of the case a claim allowance

13   process that is well regulated, well respected, has bankruptcy

14   rules that specifically relate to it and in this case a series

15   of procedural orders that have been specially crafted to the

16   needs of the case.  Why would it ever be appropriate for one

17   lawyer to purport to represent any subclass of claimants

18   through an adversary proceeding when there already exists a set

19   of procedures designed to deal with claim allowance?

20           MR. RAISNER:  Obviously the adversary proceeding, Rule

21   7000, is part of the Bankruptcy Code and so it does have its

22   uses.

23           THE COURT:  Yes, I have a whole docket of adversary

24   proceedings.

25           MR. RAISNER:  Right.  Okay.  And I appreciate the

1  concern of more than just gate keeping, that if it's us why not

2  everybody, which is a big problem.  I think, going back to my

3  first statement Your Honor, that the claims of employees for

4  wages, having a special status both with regard to the

5  substance and the procedure.  The 7001 speaks to enforce

6  declaratory judgments which could be why everyone could

7  conceivably have one.  But 7001(7), equitable relief, is for

8  types of claims that are different form the plain vanilla money

9  claim.

10  In our case, back pay has been considered equitable by

11  virtually all courts, from the Supreme Court down.  We have

12  benefits which was promised our individuals which are ERISA

13  benefits.  Contrary to Mr. O'Neill, they did not give up their

14  benefits.  They did not give up their severance in the releases

15  that our people signed.  They have specific employee-related

16  equitable claims that are not going to be had by swap vendors

17  and other counterparties.

18  So both for the use of the adversary and for class

19  certification, we are probably the thin pin on the map that is

20  different from the rest that others will not fit into and yet,

21  that pin has been elevated and accorded a special status in

22  bankruptcy law and elsewhere, which is the rationale, Your

23  Honor, for why the making of a difference for the use of Rule

24  23 for which, as you know, the adversary says is appropriate is

25  good in keeping with the WT Grant line of cases of the Second

72

1    Circuit, that for employees this is the thing that works for

2    them and it's part of the bankruptcy rules and it does not

3    apply to the plain vanilla swap claimants.

4          You won't find a run on the use of adversary

5    proceedings, Your Honor, if you say in the limited circumstance

6    of employees with back pay, ERISA types of claims, the use of

7    the equitable mechanism of adversary combined with a quick look

8    to see if there is a class action or not, and perhaps to do

9    that early rather than later so that other creditors know if

10   there's going to be a priority claim.  It makes some sense;

11   we're not trying to get ahead of the line.  Ms. Hunter came

12   before us, there's no prejudice.

13         THE COURT:  It seems to me -- I'm just going to

14   disagree with you.  You are getting ahead of the line by having

15   filed this on behalf of the class that you purport to

16   represent.  And in talking about back pay I think you may be

17   using a term that's inapplicable.  These are claims, not for

18   back pay but claims for payments otherwise payable pursuant to

19   agreements entered into prior to the bankruptcy.  These are

20   payments in lieu of back pay.  These are payments being made,

21   if they're made at all, pursuant to a separate undertaking that

22   was entered into as a prepetition contract arrangement which I

23   believe distinguishes this from situations that you're probably

24   referring to where parties have been -- have unpaid wages

25   pursuant to the employment policies of a particular debtor in

73

1    possession, some of which may be prepetition, some of which may

2    be postpetition and all of which are accorded the status that

3    they're accorded under the Bankruptcy Code, some

4    administrative, some priority, some neither.

5             So this is -- with respect to your argument, I view

6    this as a clearly different situation.  And in terms of case

7    administration, not your adversary proceeding but the overall

8    Lehman cases, I view it as very bad policy for anybody to be

9    jumping the line that happens to have proofs of claim already

10   filed.

11            MR. RAISNER:  We're not seeking payment ahead of

12   anyone.  We're --

13            THE COURT:  You are seeking a determination of rights

14   under the prepetition contracts that would give rise to a right

15   to payment.  The broad definition of a claim in bankruptcy is a

16   right to payment.  This is a claim allowance adversary

17   proceeding.

18            MR. RAISNER:  The designation of the rights or the

19   determination of the rights in the adversary, again I don't

20   know the -- how many separate proofs of claim like Ms. Hunter's

21   you've already heard but it seems as if it's within the period

22   in which claims are being determined of this sort, in both the

23   proof of claim process --

24            THE COURT:  Let me assure you --

25            MR. RAISNER:  Yes.

1    THE COURT:  -- I have not determined the validity of

2    any proof of claim and don't anticipate that that will happen

3    any time soon.  We're at a very, relatively early, stage of the

4    most complex claim administration exercise ever undertaken in

5    any bankruptcy court anywhere.

6    MR. RAISNER:  I appreciate that, Your Honor.  If there

7    were a way to forestall the hearing of the adversary that would

8    be in keeping with the overall schedule, I don't think it would

9    prejudice anyone to fall into place, that's up to, it seems to

10   me, calendar scheduling.  I don't think that we have a right to

11   insist that the adversary move at any particular speed or with

12   any particular scheduling order.  And again, if Your Honor

13   senses that having these claims determined early is bad and not

14   good, Your Honor certainly can order that, I think, without

15   dismissing the adversary.  If it otherwise could make sense to

16   aggregate these claims of this group of people and take them in

17   a group under one roof and not have a piecemeal process of

18   having to go through them separately.  We are really not trying

19   to get ahead of the line by bringing the adversary.  It's more

20   a matter of trying to keep it economical.

21   THE COURT:  Okay.  Anything more from the debtor?

22   MR. O'NEILL:  One very short point.  The substance of

23   the Straus-Duparque and that is there was some discussion about

24   when these folks were terminated and I would suggest that it

25   really doesn't matter when they were terminated because as soon

75

1    as they signed the separation agreements they no longer had a

2    right to payment upon termination, which is all that Straus-

3    Duparquet talks about.  Once they signed the separation

4    agreements they had a right to be paid every two weeks for a

5    specific period, it didn't matter whether they were employed or

6    not, they had that right to payment.  It's not Straus-Duparquet

7    where they had a right under the collective bargaining

8    agreement, a contingent right to payment when and if you are

9    terminated.  That doesn't exist under those agreements -- under

10   these separation agreements.  And, in fact, any right they had

11   to that sort of payment is explicitly released.

12        So I don't think that while they go to great lengths

13   to say terminated cause -- I don't think it matters.  I think

14   these -- the separation agreements disposed of that issue and

15   that's the only clarification we'd make.

16        THE COURT:  Okay.  I'm granting the debtors' motion to

17   dismiss but it is without prejudice to the rights of the named

18   plaintiff in the adversary proceeding and is also without

19   prejudice to the rights of those members of the proposed class,

20   some of whom have filed proofs of claim, some of whom may have

21   scheduled claims an some of whom may not know the difference

22   between an administrative and priority claim.

23        This is not a determination with respect to the merits

24   of the legal rights of these individuals under Straus-

25   Duparquet.  This is a purely procedural ruling and I've already

1    spoken, in the course of the Hunter litigation, with respect to

2    the application of Strauss-Duparquet to these severance

3    agreements.  But I accept the argument of plaintiff's counsel

4    here that I do not yet have a full evidentiary record on the

5    basis of which to make ultimate conclusions as to the rights of

6    these individuals.

7         It appears to me, based upon the papers that I have

8    reviewed, that Straus-Duparquet is inapplicable to these

9    prepetition severance agreements but I am not precluding any

10   member of the class at a later point in the case from being

11   able to make whatever arguments can be fashioned to try to fit

12   these agreements into a Straus-Duparquet construct.  I think it

13   will be difficult to do, if not impossible, but this ruling is

14   not fundamentally determinative of those rights.  This is

15   simply a procedural ruling on a motion to dismiss.

16        I'm granting the motion because I'm convinced that an

17   adversary proceeding is procedurally improper under these

18   circumstances.  Bankruptcy Rule 7001 authorizing adversary

19   proceedings is no substitute for the filing of a proof of claim

20   nor is it used to adjudicate the priority of a proof of claim,

21   see Dade County School District v. Johns-Mansville, 53 B.R.

22   346, 352 (S.D.N.Y. 1985).

23        Additionally, the advisory committee notes Rule 7001

24   provides "Filing of proofs of claim and the allowances thereof

25   are governed by Rules 3001 to 3005."  The rules that govern and

77

1    are applicable to the filing, treatment, classification and

2    objections to claims are governed by Rules 3001 to 3008.  It is

3    through these procedures that the plaintiffs can seek to have

4    their claims adjudicated.

5         This process, particularly in the context of this

6    bankruptcy case, promotes judicial economy and insures a

7    fairness of distribution among all creditors.  Because I find

8    that the adversary proceeding is an inappropriate procedural

9    means to deal with these issues of claim allowance, I also find

10   that it is impermissible to deal with class certification

11   issues in this setting.

12        Ordinarily, Rule 23 provisions are applied sparingly

13   in Chapter 11 cases.  The reason for that is that the

14   bankruptcy process itself allows for a multitude of claimants

15   to have their claims heard and determined in a single court.

16        As was stated recently in the Bally Total Fitness

17   case, as a general matter "There is no absolute right to file a

18   class proof of claim under the Bankruptcy Code."  Under these

19   circumstances, without prejudice to the rights of the

20   plaintiffs, a class action is, in the Court's view, an entirely

21   unnecessary and inappropriate procedure.  And for that reason I

22   grant the motion to dismiss.

23        To the extent that there are substantive arguments

24   that have been made in the motion and in the argument made

25   today by counsel for the debtors, those substantive points are

78

1    reserved for a future determination, if that ever happens in

2    the context of the claim allowance process.

3            I'll accept an order consistent with this ruling.

4            MR. O'NEILL:  Very well, Your Honor.

5            MR. RAISNER:  Thank you, Your Honor.

6            THE COURT:  We're adjourned.

7            MR. O'NEILL:  Thank you, Your Honor.

8        (Proceedings Concluded at 4:29 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25