# EXHIBIT A

**Excerpt of Transcript of Hearing on September 14, 2011, pages 20-27**

Page 1

```
 1  UNITED STATES BANKRUPTCY COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  Lead Case No. 08-13555(JMP); 08-01420(JMP)(SIPA)
 4  - - - - - - - - - - - - - - - - - - - - -x
 5  In the Matters of:
 6
 7  LEHMAN BROTHERS HOLDINGS INC., et al.,
 8           Debtors.
 9  - - - - - - - - - - - - - - - - - - - - -x
10  In the Matters of:
11
12  LEHMAN BROTHERS INC.,
13           Debtor.
14  - - - - - - - - - - - - - - - - - - - - -x
15              U.S. Bankruptcy Court
16              One Bowling Green
17              New York, New York
18
19              September 14, 2011
20              10:02 AM
21
22  B E F O R E:
23  HON. JAMES M. PECK
24  U.S. BANKRUPTCY JUDGE
25
```

08-13555-mg    Doc 20884-1    Filed 10/17/11    Entered 10/17/11 08:38:16    Exhibit A -
Excerpt of Transcript of Hearing on September 14, 2011    Pg 3 of 10

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 20

1    term tower one to describe an insurance stack, and I'm not

2    comfortable using that term.  So I'm not going to do it again

3    particularly --

4             MR. WASSERMAN:  Yes, Your Honor.

5             THE COURT:  -- in a week that includes September 11.

6    But I'd like to hear from the insurer.  Is the insurer here?

7             Apparently, the insurer is so lacking in concern

8    about the coverage question that the insurer is unrepresented;

9    is that correct?

10            MR. WASSERMAN:  I am not sure if the insurer is

11   represented.  I know that we have insurance counsel for the

12   estate present who can address that issue.  And I am happy to

13   address our understanding of that issue if it pleases the

14   Court.

15            THE COURT:  I'm not looking for an evidentiary

16   showing on the question of coverage as much as I'm trying to

17   get a sense as to whether or not the Essex objection is purely

18   theoretical or if there's any substance to it.

19            MR. WASSERMAN:  Well, the basis why we believe it is

20   theoretical and that there isn't any substance to it, Your

21   Honor, is that according to the insurers there was a case filed

22   in February 22nd, 2008, which was the Reese case, which was a

23   securities class action, which would have been covered by the

24   2007/2008 policy.

25            It is our belief and I believe it is also the

Page 21

1  estate's belief, though I will let the estate speak for itself,
2  that the Reese case involved securities questions, which
3  related to allegations relating to LBHI securities and relating
4  to whether or not there were misstatements or omissions in
5  connection to Lehman's financial condition and/or exposure to
6  mortgages.  So that is the initial case, which triggered the
7  2007-2008 policy.
8         The New Jersey case, similarly, is a case by an
9  investor who is claiming a securities case against the
10 defendants.  And their case is also based on the similar types
11 of alleged misstatements and/or omissions relating to Lehman's
12 or LBHI's financial condition and/or exposure to various
13 mortgage and real estate assets.  So because the New Jersey
14 action is related to this action that was first filed in what
15 is a claims made policy, it is our understanding that it is in
16 fact covered.
17         And I will defer to either counsel for the estate or
18 counsel for -- or insurance counsel for the estate if you have
19 any additional questions on that.
20         MR. KRASNOW:  Good morning, Your Honor.  Richard
21 Krasnow, Weil, Gotshal & Manges on behalf of the debtors.  We
22 are not insurance counsel, but just a few introductory
23 comments.
24         Your Honor, the debtors have no objection to the
25 granting of the motion for the reasons that Mr. Wasserman

08-13555-mg  Doc 20884-1  Filed 10/17/11  Entered 10/17/11 08:38:16  Exhibit A -
Excerpt of Transcript of Hearing on September 14, 2011  Pg 5 of 10

Page 22

```
 1   outlined.  And we concur with his views with respect to the one
 2   objection that was filed.
 3               I would make one observation in response to Your
 4   Honor's question as to whether or not this is a theoretical
 5   issue.  Your Honor, we believe that Essex, if you will, stands
 6   in the shoes that New Jersey wore when it opposed the last
 7   motion where relief was sought to lift the stay to allow for
 8   insurance payments to be made, which is to say that ethic,
 9   excuse me, Essex's standing is nonexistent.
10               It does -- it has asserted claims.  There is
11   litigation with respect to its claims.  But it has no rights
12   with respect to either the policies at issue or the policies
13   that it alluded to, which I believe is the 2008/2009 policy
14   years.
15               With respect to the 2007/2008 policy years, I will
16   defer to Mr. Hirsch from the Reed Smith firm, who is insurance
17   counsel to the debtors.  But again, my understanding is
18   consistent with what Mr. Wasserman said, which is that the
19   claims that have been asserted by New Jersey are similar to
20   claims that were previously asserted during the 2007/2008
21   policy year.  And therefore, under the policies in question and
22   applicable insurance law, there is a relation back.
23               Your Honor, if I could introduce Mr. Hirsch, he is
24   with the firm of Reed Smith.  It wasn't clear that he was going
25   to need to speak today.  He is admitted in the State of
```

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 23

1  Illinois.  He is not admitted in New York.  We had not filed
2  any pro hac papers because it might just be a one-day matter.
3  But we would request that he be admitted pro hac for the
4  purpose of today's hearing.
5              THE COURT:  He's --
6              MR. HIRSCH:  Good morning, Your Honor.
7              THE COURT:  He's admitted pro hac, and he needs to
8  recognize that that carries with a $200 payment obligation.
9              MR. HIRSCH:  I think my firm can cover it, Your
10 Honor.
11             THE COURT:  Good.  And we appreciate all
12 contributions to our treasury.
13             MR. HIRSCH:  Your Honor, Mr. Wasserman I believe did
14 state accurately why the New Jersey matter should fall within
15 the '07/'08 tower.  I can answer any other questions you have
16 if you have any.  But I'd also say there really isn't any
17 dispute on behalf of the estate.  If there were a basis to
18 dispute, then I think we would.  It would be in the estate's
19 interests.  But there really isn't.
20             THE COURT:  Okay.  I -- Mr. Duffy can speak for
21 himself, but I view his limited objection as being more in the
22 nature of a reservation of rights as to whether or not a
23 particular claim is covered under the 2007/2008 policy or under
24 the 2008/2011 policy.  Is there any current question in the
25 mind of the debtor or, if you know, in the mind of the

Page 24

1  insurance carriers and their representatives as to applicable
2  coverage concerns?
3         MR. HIRSCH:  No, there is no question.  And I know
4  the position of the insurance carriers because we have
5  correspondence from the insurance carriers.  There's no
6  dispute.  They took -- the insurance carriers took the position
7  that this matter is in the '07/'08 tower because it relates
8  back to claims first made during that policy period.  And
9  again, that's reflected in correspondence.  And neither the
10 estate nor any of the insureds has disputed that.
11         THE COURT:  Okay.  I appreciate your comments.
12         MR. HIRSCH:  Thank you, Your Honor.
13         THE COURT:  I'll hear from Mr. Duffy.  But I'll hear
14 from Mr. Duffy on the same basis that I heard from the State of
15 New Jersey on July 21.
16         MR. DUFFY:  Yes, Your Honor.  For the record, Todd
17 Duffy, Anderson Kill and Olick on behalf of Essex Equity
18 Holdings Limited.
19         Our objection is, as the Court rightly characterized
20 it, was more of a reservation of rights.  We believe that there
21 will be a policy question as to which policy these charges will
22 be associated with and not only these but others.  If you see
23 the SASCO objection, they say they've been stuffed into the
24 2007/2008 tower when they really believe that they should be in
25 the 2008/2009 -- or 2008/2009 tower.

08-13555-mg    Doc 20884-1    Filed 10/17/11    Entered 10/17/11 08:38:16    Exhibit A - Excerpt of Transcript of Hearing on September 14, 2011    Pg 8 of 10

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 25

1       Now, all of these representations on the record from
2   the debtors' insurance counsel, Mr. Wasserman, they were not in
3   the papers.  So we contacted or reached out to debtors' counsel
4   and asked could we see the notice of claim, which usually comes
5   from the risk managers.  We received nothing.
6       So I am not an insurance coverage attorney, but our
7   concern is merely that it's not to object to this -- to the
8   Court entering any order granting -- lifting the stay for the
9   settlement.  Our objection is that -- our concern is that later
10  on someone will use this order to say this esteemed Court said
11  that this belongs in the 2007/2008 policy tower.  And this
12  simple reservation of rights in the order, I don't see why
13  anybody -- if in fact this is the correct tower, I don't see
14  why anybody else would have any objection to that.  Thank you,
15  Your Honor.
16          THE COURT:  Okay.
17          MR. HIRSCH:  Your Honor, may I step up just to
18  clarify one matter?  I want to be absolutely clear on this.
19  When I answered your question a moment ago, I understood you
20  were asking about the New Jersey case, which is what we're
21  talking about now.
22          There is a coverage dispute, not before Your Honor
23  right now, regarding whether or not the -- what we call the
24  SASCO litigation, the mortgage-backed securities cases, whether
25  that falls under the '07/'08 tower or the '08/'09 tower.

Page 26

1   There's a large dispute about that.  I wasn't addressing that,
2   and that's not before Your Honor at this moment.
3           THE COURT:  Understood.  Thank you.
4           MR. DUFFY:  Your Honor, may I have one moment?  I'm
5   sorry.
6           THE COURT:  All right.  It has to be quick.  This is
7   -- we're already spending more time on this than I think it
8   probably warrants.
9           MR. DUFFY:  Yes, Your Honor.  Someone mentioned the
10  Reese case previously.  And honestly, I think that the Reese
11  case may involve securities questions that are similar to this
12  question.  But I -- my understanding from my insurance coverage
13  partners is that that type of, quote, notice to the insurance
14  company suspect, that it's not always considered rock solid
15  notice of claim.  So as a result, there may actually be a
16  question, but I don't have anything in front of me to question
17  that.
18          THE COURT:  Look --
19          MR. DUFFY:  Thank you, Your Honor.
20          THE COURT:  -- I've heard enough on this whole
21  subject.  This is not a hearing to determine a coverage dispute
22  nor as far as I can tell in the matter before the Court is
23  there any coverage dispute.  In fact, based upon the
24  representations of counsel for the insured persons, for the
25  estate, both general bankruptcy counsel for the estate and

08-13555-mg    Doc 20884-1    Filed 10/17/11    Entered 10/17/11 08:38:16    Exhibit A - Excerpt of Transcript of Hearing on September 14, 2011    Pg 10 of 10

Page 27

1   special insurance counsel for the estate, there is no question

2   but that the proposed settlement to be authorized by virtue of

3   granting the motion is a settlement that falls within the

4   2007/2008 D&O coverage.

5           However, one thing is clear.  The motion itself is a

6   motion for what we conveniently describe as a comfort order

7   that authorizes the parties-in-interest to proceed with the

8   proposed settlement but in no way constitutes a determination

9   as to underlying insurance coverage issues.  That's a matter

10  that I presume the parties have satisfied themselves is not an

11  issue.  Also, I will note for whatever it may be worth that at

12  least in my experience, an insurance carrier rarely if ever

13  will pay out significant settlement proceeds whenever there is

14  a legitimate coverage dispute then pending without involving

15  other carriers that might share the load.

16          So without ruling on the question, I do overrule the

17  Essex Equity Holdings limited objection.  And I'm satisfied by

18  the representations that I've heard that there really is no

19  coverage issue here.  However, even if there had been no

20  objection by Essex Equity Holdings, the grant of this motion

21  would not have constituted and does not constitute a

22  determination of any coverage issues.  That's one of the

23  reasons why this has been largely a waste of time.  The motion

24  is granted.

25          MR. WASSERMAN:  May I approach to give a CD to your