Alan Kolod
Mark N. Parry
**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Telephone:  (212) 554-7800
Fax:  (212) 554-7700

*Attorneys for Deutsche Bank AG*

Hearing Date:  October 19, 2011 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**REPLY OF DEUTSCHE BANK AG IN FURTHER SUPPORT OF MOTION
PURSUANT TO SECTION 105(A) AND RULE 3013 TO ENFORCE SETTLEMENT
APPROVAL ORDER AND TO CORRECT MISCLASSIFICATION OF CLAIMS**

Deutsche Bank AG ("Deutsche Bank"), through its undersigned attorneys, hereby replies to the Debtors' Response and Objection to the Motion of Deutsche Bank Pursuant to Section 105(a) and Rule 3013 to Enforce Settlement Approval Order and to Correct Misclassification of Claims (the "Response") and in further support of the Motion states as follows.[1]

**PRELIMINARY STATEMENT**

1.  Deutsche Bank's Motion seeks enforcement of the express terms of Section 12(k) of the Settlement Agreement which mandates that the Claims "**be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims against LBHI and LCPI.**" The Motion, accordingly, also seeks the proper classification of the

---

[1] Capitalized terms not defined herein are used as defined in the Motion.

Claims as general unsecured claims in the LCPI and LBHI cases.  Deutsche Bank's Motion requires that the Claims be classified under the current Plan in LCPI Class 4A and LBHI Class 7, respectively, the only classes of general unsecured claims in those cases.  This is what the Settlement Agreement requires and, therefore, it is also what the rules governing claim classification require.

2.    Under well settled-law, the burden rests on the Debtors, as plan proponents, to justify their classification of claims.  *Boston Post Road Ltd. Partnership v. F.D.I.C. (In re Boston Post Road Ltd. Partnership)*, 21 F.3d 477, 483 (2d Cir. 1994).  The fundamental rule governing classification is that, for purposes of a Chapter 11 reorganization plan, "dissimilar claims may not be classified together…" *The Aetna Casualty and Surety Company v. Clerk, US Bankruptcy Court, New York, NY (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d. Cir. 1996); 11 U.S.C. 1122(a).  The Plan breaches the Settlement Agreement and also violates this rule by classifying Deutsche Bank's Claims with affiliate claims that are not treated as general unsecured claims under the Plan and that are being treated differently, and less favorably than, general unsecured claims, contrary to Section 12(k) of the Settlement Agreement approved by this Court.

3.    Instead of providing justification for the improper classification of the Claims together with claims receiving less favorable treatment than that to which the Claims are entitled, the Response speculates at great length (and immaterially) about Deutsche Bank's and the Administrator's states of mind when Deutsche Bank bought the Claims -- six months after the Settlement Agreement was approved by this Court.  The Response does not dispute the Administrator's representations as to the intent of the parties to the Settlement Agreement to treat the Claims as general unsecured claims.  Instead, it accuses Deutsche Bank of seeking a windfall in enforcing the terms of the Settlement Agreement.  It asserts, rhetorically, that Deutsche Bank

893215                                                    2

is suffering from "buyer's remorse." It mischaracterizes Deutsche Bank's Motion as claiming the right to receive the highest recovery of any class of unsecured creditors, when it is plain that all Deutsche Bank seeks is treatment of its Claims in a manner equal to the treatment of general unsecured claims. Incredibly, the Response denies that the phrase "general unsecured claim", (commonly used in bankruptcy parlance to refer to generic unsecured claims that are not entitled to priority and are neither senior nor subordinate to other unsecured claims), has any meaning other than "non-priority unsecured claims." Finally, it arrogates to the Debtors the right arbitrarily to call any class of claims a class of general unsecured claims and to classify (and treat) the Deutsche Bank Claim equally with that class.

4.   But nowhere in their Response do the Debtors meet their burden of justifying the inferior treatment the Plan proposes for the Claims. The Debtors simply ignore the legal status of the Claims as defined by the Settlement Agreement and the fact that the express terms of the Settlement Agreement, requiring that the Claims "be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims against LBHI and LCPI", necessarily render the Claims substantially dissimilar to the claims of affiliates, which are singled out to receive inferior treatment to general unsecured claims in order to settle litigation risk.

5.   The Motion is not about Deutsche Bank's post-settlement state of mind. It is about the Debtors' repudiation of the terms of the Settlement Agreement in order to satisfy the demands of other creditors. But enforcement of the Settlement Agreement by this Court in accordance with its terms, to the best of Deutsche Bank's understanding, will not impair any plan support agreements the Debtors have negotiated and will permit confirmation of the Plan to proceed. The Motion is about the Debtors' understanding of Settlement Agreement as evidenced

by their prior plan proposals and about the material economic harm this attempted repudiation imposes on Deutsche Bank. With the rhetoric stripped away, the issue before this Court is the legal effect of the unambiguous Settlement Agreement approved by this Court. The undisputed clauses of the Settlement Agreement grant the Administrator "allowed and accepted non-priority unsecured claim[s]." But they do more. The Clarifying Clause further provides, "**[f]or the avoidance of doubt**," that the Claims "shall be treated in a like manner to that of other **general unsecured claims** against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other **general unsecured claims** against LBHI and LCPI . . . **and shall not be subject to further defenses, … or any claim** under Section 510 of the Bankruptcy Code or otherwise **which would have the effect of subordinating the [LCPI Claim] or the [LBHI Claim] to the claims of other general unsecured claims** ." (emphasis added).

6.     Deutsche Bank asserts that the Clarifying Clause must be interpreted so as to give effect to each of its provisions, including the repeated word "general" and to the requirement that the Claims "be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims against LBHI and LCPI." The sole exception to this requirement permitted by the Settlement Agreement was the potential for reduction or disallowance of the Claim against LBHI in the event of substantive consolidation of LBHI and LCPI. Settlement Agreement, § 12(e). Nothing in the Settlement Agreement preserved any other right of the Debtors to challenge or subordinate or otherwise disadvantage the Claims relative to other general unsecured claims. The Administrator represented that this was his understanding and intention and, to the best of his knowledge, the understanding and intention of the Debtors in agreeing to the Settlement Agreement. The Debtors do not deny that this was the actual understanding of the parties to the Settlement Agreement. Instead, they ignore the

893215                                                    4

Administrator's representations, ignore the Clarifying Clause of the Settlement Agreement and ignore the meaning of "general" in the phrase "general unsecured claims," in order to try to evade their obligations.

7. The Debtors assert that "Deutsche Bank's contention that the Settlement Agreement requires the Debtors to classify the Bankhaus Claims as General Unsecured Claims (LCPI Class 4A and LBHI Class 7) is *patently inconsistent* with the terms of the Settlement Agreement . . . ." Response ¶ 30 (italics added). It is facially absurd for the Debtors to assert that the express provision that the Claims "be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims" is "*patently inconsistent*" with classification of the Claims as "General Unsecured Claims."

8. The Debtors argue that the term "general unsecured claims" is not a defined term and, therefore, does not necessarily have the same meaning as the Plan's defined term "General Unsecured Claim." But they fail to give any meaning to the phrase "general unsecured claims" and they fail to explain why the classes defined as "General Unsecure Claims" are not the correct classes of general unsecured claims. The term "general unsecured claims" is not meaningless, and it means more than "unsecured claims." What the Settlement Agreement requires is that the Claims "be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims against LBHI and LCPI." Settlement Agreement, ¶ 12(k). Thus, the Settlement Agreement required that the Debtors identify which class of LCPI claims and which class of LBHI claims are the classes of "general unsecured claims" as to each Debtor, justify that identification, and classify the Claims so that they receive treatment like and equal to those classes. The Response does not make the slightest effort to do that. It does not make any effort to explain how the affiliate classes can qualify as the classes of "general unsecured

claims," when they have been singled out to receive lesser and inferior treatment. The affiliate classes patently are not classes of general unsecured claims, because those classes suffer reductions in their distributions in order to increase the distributions to other classes, in order to settle potential litigation risk, simply as a result of the nature of the claim or claimant.

9.  Moreover, the Debtors admit that they _themselves_ followed this allegedly "patently inconsistent" interpretation of the Clarifying Clause in both the first (March 2010) and second (January 2011) versions of the plan and disclosure statement that they filed in these cases. *See* Response ¶¶ 20-21, 26-27. In both of those versions of the plan, the Debtors indeed classified the Claims as "General Unsecured Claims," just as Deutsche Bank asserts they should be classified today, and _not_ in the "Affiliate" or "Affiliate Guarantee" Classes, which the Debtors now insist, with no justification, to be appropriate. The only rhetorical rebuttal required here is that actions speak louder than words.

10. The best excuse that the Debtors can make, to explain away the fact that they published two versions of the plan that effectuated the Clarifying Clause in exactly the manner Deutsche Bank asks this Court to do, is that those versions of the plan were "not the result of substantive negotiations with creditors." Response ¶¶ 20, 27. It is undoubtedly true that the Debtors' capitulation to demands of other creditors to disregard the Settlement Agreement is what causes the Debtors to take the positions they do in the Response. But it cannot be true that the Debtors' negotiations with other creditors in mid-2011 somehow retrospectively elucidated the intent of the Clarifying Clause that the Debtors and the Administrator negotiated and this Court approved at the end of 2009.

11. In any event, the Debtors' newfound interpretation of the Clarifying Clause -- that it is vague enough to afford them the discretion to classify the Claims however they see fit --

impermissibly reads the word "general" right out of the phrase "general unsecured claims," and contradicts the express intent of the Clarifying Clause to "avoid[ ] doubt" as well as the general purpose of the Settlement Agreement to achieve clarity and finality. *See* Response ¶¶ 2-3, 32.

12. This Court should restore the Claims to the General Unsecured Claims classes, which are the only classes that treat "general unsecured claims" and, therefore, are the classes in which the parties clearly intended the Claims to be classified.

## ARGUMENT

13. The Settlement Agreement settled billions of dollars of disputes between the parties thereto. The Settlement Agreement involved the transfer of assets by Bankhaus to the Debtors, payments by the Debtors to Bankhaus and the allowance of certain claims of Bankhaus against the Debtors. The Settlement Agreement was heavily negotiated prior to the formulation of any plan and, therefore, required unusual detail as to how the Claims would be treated, which is what Deutsche Bank means by "bespoke." The settlement with respect to Bankhaus' LCPI Claim and LBHI Claim provided that all parties had no knowledge that the relationship between them with respect to the claims was other than that of debtor and creditor. Settlement Agreement, § 12(a-c). It then provided the following detailed terms:

> d.  the [Settlement Approval Order] shall provide that the [Administrator] has an allowed and accepted non-priority unsecured claim in the amount of $1,015,500,000 against LCPI . . .;
>
> e.  except as hereinafter provided, the [Settlement Approval Order] shall provide that the [Administrator] has an allowed and accepted unsecured claim as a creditor against LBHI on account of any and all claims arising under the Security & Collateral Agreement relating to [certain loans] in an aggregate amount equal to $1,380,900,000 less the amount of any distributions that are received by [the Administrator] in respect of the [LCPI Claim]; **provided, however, that the Lehman Parties reserve the right to seek a reduction or disallowance of the [LBHI Claim] in the event that LCPI is substantively consolidated with LBHI**; and

> provided further, that the [Administrator] reserves all rights, claims, defenses and objections related thereto . . .
>
> \*\*\*
>
> **k.    For the avoidance of doubt, except as otherwise provided in this Section 12, [the Claims] shall be treated in a like manner to that of other general unsecured claims against LBHI and LCPI and receive treatment and distribution on account of such claims equal to that of other general unsecured claims against LBHI and LCPI,** and shall not be subject to further defenses, whether by way of setoff, recoupment, counterclaim or otherwise, or any claim under Section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating the [LCPI Claim] or the [LBHI Claim] to the claims of other general unsecured claims.

Decl. Ex. 1, § 12 (emphasis added) (§ 12(d), (e) and (k) quoted above, the "Clarifying Clause").

14.    The Settlement Agreement should be interpreted to effect the intent of the parties, as expressed by the plain language of their written agreement. *See, e.g., Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.,* 775 N.Y.S.2d 765, 767 (N.Y. 2004). Deutsche Bank asserts that the requirement in the Clarifying Clause that the Claims be "be treated in a like manner to … and receive treatment and distribution … equal to … other general unsecured claims against LBHI and LCPI" means (for purposes of the Current Plan) that they must be classified as "General Unsecured Claims" in LCPI Class 4A and LBHI Class 7.  That is effectively how the Administrator represented that he understood the Settlement Agreement. That is also how the Debtors implemented the Settlement Agreement in the first and second versions of the plan. Now, however, the Debtors sidestep the question of the parties' actual intentions. They present no evidence whatsoever that they had a different understanding or intent at the time of the Settlement Agreement. Instead, they attempt to argue that the term "general unsecured claims" in the Clarifying Clause is vague, has no meaning other than "non-priority unsecured claims"

and, therefore could mean virtually any class of unsecured claim at all, subject to the "judgment of the Debtors." *See* Response ¶ 2.

15.     Deutsche Bank's interpretation of the Settlement Agreement is reasonable, natural and unstrained. It comports with the common understanding of "general unsecured claims" as generic unsecured claims, not subject to priority, enhancement or diminution simply as a result of the nature of the claim or claimant. And it is supported by the language of section 12(k) of the Settlement Agreement (i) requiring that the Claims be treated "like" general unsecured claims and receive "equal treatment and distribution" to general unsecured claims, (ii) eliminating all defenses to the Claims and (iii) precluding any claim of any nature that has the effect of subordinating the Claims. In contrast, the Debtors' interpretation is strained and unnatural; not supported by any evidence of their contemporaneous intent; implausibly asserts that the phrase "general unsecured claims" can include claims in many different classes receiving different treatments; defeats the Settlement Agreement's requirement of treatment "like" general unsecured claims and "equal treatment"; and fails to provide any justification for their selection of the disadvantaged classes of affiliate claims (that are expressly excluded from the definition of "General Unsecured Claims" in the Plan because they are penalized and partially subordinated[2]) as the true classes of "general unsecured claims", rather than the classes defined as "General Unsecured Claims", which are actually treated as general unsecured claims as to each debtor. The Debtors' interpretation of the Settlement Agreement and their defense of how they are now implementing it leaves the Administrator's negotiated settlement to the Debtors' whim and is simply implausible. The Motion should be granted.

---

[2] *See* Plan § 1.60.

> **A.    The Claims Must be Classified To Give Effect to the Entirety of the Settlement Agreement, including the Clarifying Clause, and Cannot be Classified with Claims that Are Not Treated Like General Unsecured Claims or Do Not Receive Treatment and Distribution Equal to that Received by General Unsecured Claims**

16.    New York law dictates that the Settlement Agreement must be interpreted, if possible, so as to give effect to all of its terms -- including the word "general" in the repeated phrase "general unsecured claims" in the Clarifying Clause. *See, e.g., Nautilus Ins. Co. v. Matthew David Events, Ltd.,* 893 N.Y.S.2d 529, 532 (1st Dep't 2010) ("a court should not adopt a construction of a contract which will operate to leave a provision of a contract . . . without force and effect . . ."). Deutsche Bank's interpretation comports with this rule; the Debtors' does not.

17.    The initial clauses quoted above provide that each of the Claims is allowed as a *non-priority unsecured claim.* Ex. 1, §§ 12(d)-(e). The Clarifying Clause, however, goes on to provide, in its second half, that the Claims are not subject to any other defenses or any claims that would *have the effect of subordinating* them. *Id.* § 12(k)(italics supplied). That provision makes it improper to classify the Claims in any class of claims that are afforded a lesser treatment in order to settle possible defenses or claims of any nature that would have the effect of subordinating them. *In re Fairfield Executive Associates*, 161 B.R. 595, 600 and fn. 6 (D.N.J. 1993) (only claims with the same legal rights can be classified together). The Debtors translate this into much less, saying it is merely an agreement that the Claims "would not be singled out for unfavorable treatment." Response ¶ 34. But even then, the Plan ignores this second half of the Clarifying Clause by classifying the Claims with affiliate claims that are being singled out for unfavorable treatment relative to unsecured claims in order to settle and avoid potential litigation.

18. But the Clarifying Clause also has a first half that the Debtors ignore entirely. That first portion specifies how the Claims must be *treated* under any plan by providing, "[f]or the avoidance of doubt," that the Claims must "**be treated like other general unsecured claims**… **and receive treatment and distribution on account of such claims equal to that of other general unsecured claims against LBHI and LCPI**." The Debtors dismiss this provision entirely, denying without explanation that it is a "reference to classification." Response, ¶34. It is more than a reference to classification; it is a command that the Claims be treated like and equally to the class of general unsecured claims of each of LPCI and LBHI. The phrase "general unsecured claims" here means something beyond "unsecured claims"; otherwise, the first half of the Clarifying Clause is superfluous, since the Claims have already been allowed as non-priority unsecured claims in Sections 12(d) and (e) and insulated from defenses and subordination under the second half of the Clarifying Clause. Furthermore, the requirements of treatment **like** other general unsecured claims and **equal** treatment and distribution to other general unsecured claims is utterly inconsistent with the Debtors' notion that there can be multiple classes of general unsecured claims for any one debtor, each receiving different treatment. It is impossible to treat the Claims "like", or "equally" with, multiple classes, each of which is being treated differently. In order to give meaning and effect to the Clarifying Clause, the single class of "general unsecured claims" as to each of LCPI and LBHI must be identified, and the Claim as to each Debtor must receive treatment like and equal to the treatment of that class.

19. The Debtors have refused to identify what that class is in either the LCPI or LBHI case. The obvious answer is that it is the class identified by definition in the Plan as "General Unsecured Claims." The Plan defines General Unsecured Claim as any unsecured claim other than various identified types of claims that are administrative expense, priority, secured, senior,

subordinated or various affiliate claims. Plan, §1.60. That comports with the common understanding of "general unsecured claim." The Debtors chose the name "General Unsecured Claims deliberately in identifying those classes and, presumably, did not do so deceptively or as a trick. Those classes were so-designated for an obvious reason: they actually contain the general unsecured claims as to each applicable Debtor.[3] Certainly, the Debtors have not presented any evidence to this Court otherwise. "General" means typical or generic, and in bankruptcy parlance it refers to unsecured claims that are not subject to being given either better or worse treatment than other unsecured claims for any reason, including the identity of the claimant or the nature of the claims. This meaning is consistent with the second half of the Clarifying Clause, which provides that the Claims are not subject to any other defenses or to any claims that would have the effect of subordinating them. *Id.* § 12(k). The Claims, therefore, cannot be classified with any other claims, like the affiliate claims, that are being singled out to receive lesser treatment in order to settle the risk of litigation. *Fairfield Executive*, 161 B.R. at 600 and fn. 6 (only "substantially similar claims" can be classified together, which are those claims that "share common priority status and other legal rights against the debtor's assets." (citations omitted)). The Debtors effectively ask the Court to ignore and read out of the Settlement Agreement both the first and second portions of the Clarifying Clause and to classify the Claims with claims that are not being treated as general unsecured claims in ordinary meaning and are defined not to be General Unsecured Claims by the Plan itself.

20. The Debtors' assertion that the Settlement Agreement was concluded at a time when "no consideration had been given to the classification and treatment of such allowed and accepted non-priority unsecured claims," *see* Response ¶ 30, is belied by the Settlement

---

[3] The Definition of General Unsecured Claim expressly excludes affiliate claims, the class in which the Debtors classify the Claims. Plan, § 1.60.

893215   12

Agreement itself (§ 12(e)), which expressly contemplates the potential substantive consolidation of LCPI and LBHI. Potential substantive consolidation, by definition, raises the issue of potential impairment of at least two classes of unsecured claims -- affiliate claims and guaranty claims. The Settlement Agreement expressly reserves the rights of both parties in this context, the rights of the Debtors to seek consolidation of LCPI and LBHI and the right of the Administrator to oppose it. But no other rights of the Debtors to impair the allowance and treatment of the Claims are preserved, and the Clarifying Clause makes clear that none survive. Given this context, the Clarifying Clause expresses the parties' intent for the Claims to be treated like and equally to "general unsecured claims" and therefore prohibits their treatment like or equally to any other class of claims, like affiliate claims, that is disadvantaged in order to settle potential litigation claims.

21. The Debtors argue that Section 12 cannot mean what it says because it could have been written differently. Response ¶ 33. Thus, they urge that the Administrator should have insisted that the Settlement Agreement provide that the Claims be treated equal to the "highest proposed recovery" for any general unsecured claims. This suggestion refutes the Debtors' own argument that the phrase "general unsecured claims" has no meaning, and it is also not the agreement that was struck. If general unsecured claims means unsecured claims, then this proposed language would render the Claims the equivalent of the *highest seniority* level of unsecured claims; that was not the agreement. But if general unsecured claims does have meaning, than the "highest proposed recovery" language would be superfluous: Requiring treatment "equal to" such claims is sufficient. Alternatively, the Debtors argue that the Administrator could have insisted that the Claims "not be treated as affiliate or guarantee claims and that such claims not be subject to classification that would result in the Bankhaus claims

receiving lower distributions than other allowed non-priority unsecured claim." But that language also would have entitled the Claims to be treated like the highest level of senior unsecured claims, which is neither the parties' agreement nor what Deutsche Bank seeks. In other words, the alternative formulations the Debtors suggest are not the equivalent of the language in Section 12(k), and would either have given the Claims greater rights than the Settlement Agreement does or would have said the same thing with more words. Furthermore, this exercise of trying, and failing, to accurately paraphrase Section 12(k) demonstrates that the phrase "general unsecured claims" is not superfluous and is not equivalent to the phrase non-priority unsecured claims. But even if the Debtors succeeded in finding a way to more elaborately paraphrase Section 12(k) accurately while avoiding the phrase "general unsecured claims", that would not prove that Section 12(k) does not concisely and adequately say precisely what was intended—that the Claims cannot be classified with claims receiving treatment less favorable than general unsecured claims.

22. Deutsche Bank does not argue, as the Debtors assert, that the Clarifying Clause "should be read to provide that the Bankhaus Claims 'shall be treated in a like manner to that of [**the highest recovery level of**] other general unsecured claims . . . .'" *See* Response ¶¶ 5, 33 (emphasis in original). Deutsche Bank agrees that the Clarifying Clause does not invest the Claims with some kind of "hierarchal priority." *See* Response ¶ 34. On the contrary, the Claims are entitled only to treatment like and equal to the treatment of the class of general unsecured claims, not to any class of unsecured claims receiving greater or lesser treatment. If that class is not the class defined as "General Unsecured Claims" in the Current Plan, then it was the Debtors obligation to explain why and identify what class is receiving treatment as general unsecured claims, so that the Claims could be treated like and equally to that class. That class certainly

cannot be the class of affiliate claims, which are singled out to receive lesser and reduced treatment relative to general unsecured claims due to their peculiar nature as affiliate claims subject to additional litigation risk         .

    **B.**     **The Debtors' Interpretation of the Clarifying Clause Reads the Word "General" Out of the Phrase "General Unsecured Claims" and Violates the Requirements of "Like" and "Equal" Treatment**

    23.     The Debtors now argue that the term "general unsecured claims" in the Clarifying Clause is an open-ended term, which can encompass virtually any type of unsecured claim, subject to the "judgment of the Debtors," as long as each Claim is treated the same as the other claims in whatever class the Debtors see fit to put it. *See* Response ¶¶ 2-3, 30-32. The Debtors do not actually affirm that this is what the parties intended, and do not adequately explain why they formerly believed that the Clarifying Clause did not permit classification of the Claims with affiliate claims. Instead, the Debtors argue that the Current Plan "complies with . . . the literal language of the Settlement Agreement and is consistent with section 1122(a) of the Bankruptcy Code . . . ." *See* Response ¶ 30. The Response is wrong on both counts.

    24.     The Debtors' argument that the Current Plan somehow effectuates the intent of the Clarifying Clause because the Claims are treated the same as "other general unsecured claims **within their respective classes**" cannot be correct. *See* Response ¶ 3, 29, 32 (emphasis added). The Clarifying Clause does not, "[f]or the avoidance of doubt," merely require that the Debtors treat the Claims like and equally to the other claims in whatever class of unsecured claims the Debtors decide to place them. Section 1122(a) would mandate that result without any need for language in the Settlement Agreement.

    25.     The Debtors' beg the question of which class is the class of general unsecured claims by making the unsupported assertion that the claims in each of the classes of unsecured claims that are treated differently are, despite that disparate treatment, all general unsecured

claims. If the claims in each class are all "general unsecured claims", then there could be no justification for treating the different classes differently. *In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999, 1001 (M.D. Fla. 1984) (different treatment of different classes of unsecured creditors is "on its face . . . unfair and unwarranted under the provisions of § 1122 of Title 11."). Given the differences in treatment of different unsecured claim classes, enforcement of the Settlement Agreement requires the Debtors to justify their selection of the affiliate claim classes as the true classes of general unsecured claims. They have not done so, merely arguing for "discretion" to classify as they see fit and asserting that the Claims are "like" affiliate claims. But the Clarifying Clause forecloses that argument, providing that the Claims are like, and to be treated equal to, general unsecured claims. Thus, it is for the Court to require that the Claims be classified in the proper class that will afford them the promised treatment, like and equal to what other general unsecured claims receive.

26. The Debtors' essential argument, that the phrase "general unsecured claims" leaves the classification of the Claims to their discretion so long as the claims are classified with other unsecured claims, contradicts the opening words of the Clarifying Clause, "[f]or the avoidance of doubt." The Debtors' discretion in classifying the Claims would actually <u>create</u> doubt as to the treatment of the Claims. And such doubt would contradict the overarching purpose of this and every settlement agreement, which is to achieve closure and clarity in place of uncertainty and risk.

27. Moreover, if "general unsecured claims" is a discretionary term, the Clarifying Clause would permit the Debtors to put the Claims in classes with other unsecured claims singled out for severely prejudicial treatment, such as 90% reallocations to other classes. The only limit on this discretion the Debtors acknowledge is that the Claims cannot themselves be

"singled out" for prejudicial treatment. Response, ¶ 34. So long as the Claims are not treated worse than all other unsecured claims, that is sufficient according to the Response. But the Clarifying Clause insulates the Claims from any defenses and from any claims that have the effect of subordination. Reallocation of distributions to other classes has precisely that effect. And the Clarifying Clause requires treatment like and equal to that of general unsecured creditors. The Claims cannot be classified with claims that are singled out to be treated worse than general unsecured claims and that are subject to litigation risk or are having portions of their distribution reallocated to other classes in order to settle potential litigation.

28. Contrary to the assertion in the Response, the Plan simply is not consistent with Section 1122(a) as to the Claims. The requirement that the Claims "shall be treated in a like manner … and receive equal treatment and distributions to other general unsecured creditors" mandates that the Claims be deemed and treated as general unsecured claims for all purposes, even if they otherwise might not be. They are immunized by the Settlement Agreement from the assertion that they may be classified in a manner that gives them worse (or better) treatment than general unsecured creditors. Thus, by classifying the Claims with affiliate claims that are disadvantaged relative to general unsecured claims, the Plan violates the requirement of Section 1122(a) that only "substantially similar" claims be classified together.

29. The Debtors cannot cure the defect in their interpretation of the Clarifying Clause by arguing that the only limit on their discretion is that they cannot single out the Claims for prejudicial treatment. *See* Response ¶ 34. That limitation, of course, is imposed by the second half of the Clarifying Clause and is violated by the Plan. But the first half of the Clarifying Clause requires more. It imposes the affirmative obligation to treat the Claims like and equally to general unsecured claims, and that affirmative duty implies the negative duty not to classify the

893215  17

Claims for treatment with Claims that are not receiving treatment like and equal to general unsecured claims. The first half of the Clarifying Clause renders the Claims the equivalent of "general unsecured claims" by requiring that the Claims receive like and equal treatment and distribution with general unsecured claims. It means more than the second half of the Clarifying Clause, and imposes different and additional requirement—or it is superfluous and without meaning, which is how the Debtors incorrectly regard it.

30.     In summary, the Debtors' interpretation of the Clarifying Clause renders that Clause, and the word "general" in the phrase "general unsecured claim," a nullity in multiple respects. The Debtors cannot evade this key term of their agreement because it has became inconvenient due to the unreasonable demands of other creditors. *See In re Lafayette Dial, Inc.*, 92 B.R. 798, 800 (Bankr. N.D. Ind. 1988) ("Having once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement. Indeed, attempts to do so are frequently condemned in the strongest possible terms."). This Court should enforce the entire Settlement Agreement and grant the Motion.

### C.     The Debtors' Digression on the Assignment Agreement Is Irrelevant.

31.     Fully half (pages 15-18) of the argument section of the Response (pages 12-18) is devoted to irrelevant speculation on the alleged acts and omissions, and motives and emotions -- the "trepidation and remorse," no less -- of Deutsche Bank and the Administrator at the time Deutsche Bank acquired the Claims, six months after the Settlement. None of this sheds any light on the meaning of the Settlement Agreement. The Debtors cannot reasonably fault Deutsche Bank for asking its seller to acknowledge and confirm both his and his understanding as to the Debtors' *understanding and intentions* with respect to the Settlement Agreement (as

opposed to its meaning), because any sophisticated party would do so. *See* Response ¶ 37.[4] The fact that Deutsche Bank made such inquiry does not provide any insight into the meaning of the Settlement Agreement. But, in light of the Debtors' current attempt to evade their obligations under the Settlement Agreement, such inquiry was clearly prudent. The only flaw, perhaps, was the assumption that the Debtors would continue to honor their understandings and intentions when their plan formulation efforts came under attack from over-reaching creditors. The Debtors cannot reasonably draw any conclusions from Deutsche Bank's not asking the Debtors, not parties to the Claim assignment, how they intended to classify the Claims, particularly given that the Debtors had already answered that question in the publicly filed first version of the plan. *See id*. But in any event, the Motion is not about Deutsche Bank's post-Settlement motives or state of mind.

32. The Motion is about the Settlement Agreement between the Debtors and the Administrator. The Debtors' do not present a plausible interpretation of the Settlement Agreement to counter that provided by Deutsche Bank, and do not present evidence that they had some other interpretation or intent at the time they agreed to the Settlement. The Debtors do not accuse the Administrator of misstating the parties' intentions as to treatment of the Claims. *See id*. ¶¶ 37-38. No other aspect of the transaction between the Administrator and Deutsche Bank has any relevance to the parties' intent as expressed in the Settlement Agreement.

---

[4] It is unclear why the Debtors quote the clause of the Assignment Agreement in which Deutsche Bank represents that it is a "sophisticated investor" and "has not relied upon any advice or representation of the Insolvency Administrator with respect to the Claims and the other Transferred Rights, **except as specifically set forth in [the Assignment] Agreement**." Response ¶ 41 (emphasis added); *see* Assignment Agreement §8(3). Since the Administrator's acknowledgments were in the Assignment Agreement, Deutsche Bank was specifically entitled to rely on them.

## **CONCLUSION**

For the reasons set forth above and in the Motion, Deutsche Bank respectfully requests that this Court promptly enter an order that (i) classifies the LCPI Claim (Claim No. 59006) in LCPI Class 4A for all purposes under the Current Plan, (ii) classifies the LBHI Claim (Claim No. 58233) in LBHI Class 7 for all purposes under the Current Plan, and (iii) directs that each of the LCPI Claim and the LBHI Claim shall receive treatment and distributions like and equal to the class of general unsecured claims as to each of LCPI and LBHI in any other chapter 11 plan that may be confirmed in LCPI's and LBHI's cases.

Dated:   October 17, 2011
         New York, New York

**MOSES & SINGER LLP**

By: /s/ Alan Kolod
    Alan Kolod
    Mark N. Parry
    The Chrysler Building
    405 Lexington Avenue
    New York, New York  10174
    Telephone:  (212) 554-7800
    Fax:  (212) 554-7700
    Email:  akolod@mosessinger.com

*Attorneys for Deutsche Bank AG*