Hearing Date:  October 19, 2011 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                              :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :    **08-13555 (JMP)**
                                                                   :
           Debtors.                              :    **(Jointly Administered)**
-------------------------------------------------------------------x

**DEBTORS' REPLY TO JOINDERS TO THE MOTION OF DEUTSCHE BANK AG
TO ENFORCE SETTLEMENT APPROVAL ORDER AND TO RECLASSIFY CLAIMS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI") and their affiliated debtors, as debtors in possession (collectively, the "Debtors"), reply to the joinders (the "Joinders") filed by Stone Lion Portfolio L.P., Permal Stone Lion Fund Ltd. (together, "Stone Lion") [ECF No. 20749], Centerbridge Credit Advisors LLC ("Centerbridge") [ECF No. 20759], Anchorage Capital Group, L.L.C. ("Anchorage") [ECF No. 20761], Monarch Alternative Capital LP ("Monarch") [ECF No. 20769], GSO Special Situations Fund L.P. and GSO Special Situations Overseas Master Fund Ltd., (together, "GSO," and collectively with Centerbridge, Monarch, Anchorage and Stone Lion, the "Joinder Parties") [ECF No. 20771], to the Motion of Deutsche Bank AG ("Deutsche Bank") pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3013 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), dated September 27, 2011 (the "Motion") [ECF No. 20321], and respectfully represent:

## PRELIMINARY STATEMENT

1.  The Joinder Parties assert that they are participants[1] in Deutsche Bank's ownership interest in the Bankhaus Claims (as defined below). As mere participants, the Joinder Parties are not in privity with the Debtors and, therefore, lack standing to object to the Debtors' classification of the Bankhaus Claims. Moreover, the Joinders add nothing to the arguments already asserted by Deutsche Bank and should be disregarded in determining the Motion.

2.  Pursuant to the Motion, Deutsche Bank seeks to compel the Debtors to reclassify certain claims (the "Bankhaus Claims") that were the subject of a settlement agreement (the "Settlement Agreement") among certain of the Debtors, a non-Debtor affiliate of the Debtors, and Dr. Michael C. Frege, the Foreign Administrator of Lehman Brothers Bankhaus Aktiengesellschaft (in Insolvenz) (the "Administrator"). In accordance with the plain, unambiguous language of the Settlement Agreement, the Debtors' Third Amended Joint Chapter 11 Plan (the "Chapter 11 Plan") [ECF No. 19627] treats the Bankhaus Claims as "allowed and accepted non-priority unsecured claim[s]" against LCPI and LBHI and proposes that the Bankhaus Claims be treated in like manner and entitled to distributions equal to that distributable to other similar allowed and accepted non-priority general unsecured claims within their respective classes.

---

[1] The Joinder Parties have, to date, refused the Debtors' requests for copies of the participation agreements or other evidence of the Joinder Parties' interests in Deutsche Bank's ownership of the Bankhaus Claims. Consequently. the Debtors have been unable to determine the precise nature of such interests. However, the fact that none of the Joinder Parties has filed a notice of partial transfer, as required by Bankruptcy Rule 3001(e)(2), suggests that they did not receive assignment of a portion of the Bankhaus Claims and that their interests are mere participations.

## THE JOINDER PARTIES LACK STANDING TO
## CHALLENGE THE CLASSIFICATION OF THE BANKHAUS CLAIMS

3. As holders of mere participation interests in the Bankhaus Claims, the Joinder Parties lack prudential standing to object to the Debtors' classification of such claims. Prudential standing requires that objecting parties assert their own direct legal rights and interests against the Debtors, and not the rights and interests of third parties. *See In re Quigley Co.*, 391 B.R. 695, 705 (S.D.N.Y. 2008) ("The objecting party can only challenge the parts of the plan that directly implicate its own rights and interests."); *see also Freeman v. Journal Register Co.*, 2010 WL 768942 at *3 (S.D.N.Y. 2010) (holding that equity holder lacked prudential standing to bring appeal because he was not asserting his own legal rights and interests but, instead, those of creditors). Further, "[a] party in interest cannot raise the rights of a third party even though it has a financial stake in the case." *In re Teligent, Inc.*, 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009).

4. Prudential standing has been denied to creditors that have objected to plans based on the rights held by *other* creditors. *See Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, at *7 (S.D.N.Y.1996) (creditor who did not allege that he would receive more under a chapter 7 liquidation than under the plan cannot argue that the plan violated the "best interest of the creditors" test as to other creditors); *In re Tascosa Petrol. Corp.*, 196 B.R. 856, 863 (D. Kan. 1996) (class 5 creditor could not assert rights of class 4 creditors in objecting to plan). In *Tascosa*, the court found that section 1109(b), which provides that "a party in interest . . . including a creditor" may be heard on "any issue" in a chapter 11 case, does not waive the traditional prudential limitations on standing. *Id.* at 863.

5. As claimed holders of participation interests in Deutsche Bank's ownership of the Bankhaus Claims, the Joinder Parties' contractual relationship is with Deutsche

Bank – not the Debtors. Consequently, the Joinder Parties lack privity with the Debtors and have no enforceable legal rights against the Debtors with respect to the Bankhaus Claims. *See In re Okura & Co. (America), Inc.*, 249 B.R. 596, 608 (Bankr. S.D.N.Y. 2000) ("As a general rule, [] participants do not have privity of contract with the underlying borrower."); *see also Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 408 (S.D.N.Y. 1994) (stating that a "participant is not a lender to the borrower and has no contractual relationship with the borrower."). This lack of a legal right against the Debtors on the part of the Joinder Parties is fatal to their ability to establish prudential standing.

      6.      As the Second Circuit has observed, prudential concerns limiting third-party standing are "particularly relevant in the bankruptcy context" because the proceedings "regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988). Here Deutsche Bank, the holder of the Bankhaus Claims, is actively engaged in an effort to dispute the Debtors' classification of the Bankhaus Claims. The Joinder Parties' positions add nothing to the arguments Deutsche Bank is pursuing in the Motion. Involvement by the Joinder Parties will waste the valuable time of this Court and unnecessarily increase the expense of the pending contested matter. The Joinders should be stricken.

**CENTERBRIDGE'S SELECTIVE CITATION
OF THE ASSIGNMENT AGREEMENT IS DISINGENUOUS
AND MISCHARACTERIZES THE ADMINISTRATOR'S ACTUAL
<u>STATEMENTS REGARDING THE TREATMENT OF THE BANKHAUS CLAIMS</u>**

      7.      Centerbridge parrots Deutsche Bank's failed arguments that the Administrator's self-serving statements in the Assignment Agreement (as such term is defined in the Motion) are probative of the parties' intent in the Settlement Agreement as to the

classification and status of the Bankhaus Claims.  To support this contention, Centerbridge cherry picks a few choice phrases from the Assignment Agreement, while conveniently ignoring the context and specific qualification and evisceration of the Administrator's purported acknowledgments and confirmations.  As this subject is already addressed in the Debtors' Response and Objection to the Motion, it is unnecessary to respond again in detail except to emphasize that the Administrator himself lacked any confidence in his neutered acknowledgement and confirmation of his "intentions and understandings" as evidenced by his disclaimer.  *See* Assignment Agreement, §8, ¶3.

### SECTION 8.4 OF THE MODIFIED ASSIGNMENT AGREEMENT ESTABLISHES THAT DEUTSCHE BANK RECOGNIZED ISSUES AS TO THE CLASSIFICATION AND STATUS OF THE BANKHAUS CLAIMS IN THE CHAPTER 11 CASES

8.  In connection with the Debtors' Motion for the approval of the Third Amended Disclosure Statement [ECF No. 18126], Centerbridge filed an objection to such approval (the "Centerbridge Objection") [ECF No. 19254].  Attached to the Centerbridge Objection, as Exhibit A, Annex 1, is an unexecuted copy of the Assignment Agreement ("Annex 1").  A copy of Annex 1 is attached hereto as Exhibit A.  That document is different from the executed Assignment Agreement, which was annexed to the Motion as Exhibit 7.  A copy of the Assignment Agreement is attached hereto as Exhibit B.

9.  The material difference between Annex 1 and Assignment Agreement is that Annex 1 does not contain a section 8.4 that is included in the Assignment Agreement.

10.  Section 8.4 of Assignment Agreement, as executed by Deutsche Bank, provides:

> The Insolvency Administrator unconditionally and irrevocably covenants and undertakes:

1. subject to §8.3 above, not to take any action or engage in any conduct which could impair or adversely affect the Claims or the Transferred Rights or any portion thereof or any rights in respect thereto: and

2. upon the reasonable request of Purchaser, to use its reasonable endeavors to assist Purchaser in *defending any attempts by the Debtors, the Bankruptcy Court or any third parties to characterize or treat the Claims in a manner which is contrary to the Administrator's Intentions (as defined above) or the Settlement Order.*

Assignment Agreement, §8.4 (emphasis added).

11.   The reasons for the addition of section 8.4 to the Assignment Agreement are self-evident.  The conclusion is irresistible.  Deutsche Bank recognized that the Settlement Agreement did not unequivocally establish the potential classification and status of the Bankhaus Claims in the Debtors' chapter 11 cases.  The omission of section 8.4 in Annex 1 is indisputable evidence that, at the least, Deutsche Bank recognized an ambiguity in the Settlement Agreement and the potential for the Debtors and others to classify allowed and accepted non-priority unsecured claims in a manner consistent with the Bankruptcy Code that might provide for different treatment and distribution to appropriate classes of allowed and accepted non-priority unsecured claims.  The inclusion of section 8.4, as clearly requested by Deutsche Bank, belies its contention that the Settlement Agreement is a "bespoke" all encompassing agreement.  The evidence of the doubts and concerns of Deutsche Bank as to the potential classification and status of the Bankhaus Claims are beyond dispute.  Deutsche Bank in good faith cannot press its arguments in the face of the overwhelming evidence to the contrary.

12.   The Settlement Agreement, as stated:

- does not provide or contain any provisions limiting or in any way precluding the classification of general unsecured claims into appropriate classes as permitted under the Bankruptcy Code;

- does not provide for or in any way limit the judgment of the Debtors to propose different classes of general unsecured claims of like character as part of a chapter 11 plan; and

- does not contain any provisions limiting or precluding the judgment of the Debtors to classify the LCPI Claim within a class of general unsecured claims of affiliates or the LBHI Claim within a class of general unsecured claims based upon an affiliate guarantee or otherwise.

## CONCLUSION

13. The Joinder Parties lack prudential standing to be heard in connection with the Motion and the Joinders add nothing substantive to the resolution of the Motion, other than the facts gleaned from the pleadings filed by Centerbridge as a participant in Deutsche Bank's interest in the Bankhaus Claims. The addition of section 8.4 to the Assignment Agreement, obviously caused by Deutsche Bank, establishes that the Motion is neither credible nor sustainable. The Joinders should be stricken and the Motion denied in all respects.

Dated: October 17, 2011
New York, New York

/s/ Harvey R. Miller
Harvey R. Miller
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession