**Exhibit A**
**(Annex 1)**

US_ACTIVE:\43834644\04\58399.0003

ANNEX 1 TO THE IRREVOCABLE OFFER

## Agreement Regarding the Sale and Assignment of Claims (the "Agreement")

Between

1. **Dr. Michael Frege** in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus Aktiengesellschaft i. Ins. ("**Bankhaus**")

   – "**Insolvency Administrator**" –

   and

2. [_____]

   – "**Purchaser**"–

– Insolvency Administrator and Purchaser each a "**Party**" and together the "**Parties**" –

**Preamble**

1. On 15 September 2008, Lehman Brother Holdings Inc. ("**LBHI**") filed a voluntary petition under chapter 11 of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), and is currently in proceedings for reorganisation in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), administered under Chapter 11 Case no. 08-13555 et seq. (the "**LBHI Proceedings**").

2. On 05 October 2008, Lehman Commercial Paper Inc. ("**LCPI**", and together with LBHI, the "**Debtors**", each a "**Debtor**") filed a voluntary petition under chapter 11 of Title 11 of the Bankruptcy Code, and is currently in proceedings for reorganisation in the Bankruptcy Court, bearing the individual Chapter 11 Case no. 08-13900, and administered under Chapter 11 Case no. 08-13555 et seq. (the "**LCPI Proceedings**", together with the LBHI Proceedings, the "**US Proceedings**").

3. By order of the local court (*Amtsgericht*) of Frankfurt am Main dated 13 November 2008, insolvency proceedings were opened over the assets of Bankhaus (the "**Bankhaus Proceedings**", together with the US Proceedings, the "**Proceedings**") and Dr. Michael Frege was appointed as insolvency administrator (a copy of the court order for the opening of the insolvency proceedings and the appointment of Dr. Michael Frege as insolvency administrator is attached as a part of Schedule 1 to this Agreement).

4. Prior to the commencement of the LCPI Proceedings, Bankhaus and LCPI had entered, *inter alia*, into various master participation agreements and participation agreements pursuant to which certain loans in respect of which LCPI was the lender of record were participated to Bankhaus and pursuant to which various loans in respect of which Bankhaus was the lender of record were participated to LCPI; prior to the commencement of the LBHI Proceedings, Bankhaus and LBHI had entered into a certain Security & Collateral Agreement dated 15 August 2002 ("SCA") (a copy of which is attached as a part of Schedule 1 to this Agreement).

5. Following the opening of the Proceedings and in order to resolve their disputes in respect of the various claims against each other under and in connection with those participation agreements as well as under and in connection with the SCA, Bankhaus has entered into a settlement agreement dated December 15, 2009 with, *inter alia*, the Debtors relating to the settlement of those mutual claims by and against the Debtors and Bankhaus in relation to those certain participation arrangements, a copy of the settlement agreement being attached as a part of Schedule 1 to this Agreement (as amended from time to time, the "**Settlement Agreement**").

6. Pursuant to the Settlement Agreement, it was agreed that the Debtors would seek an order of the US-Bankruptcy Court stating that Bankhaus has, *inter alia*, an allowed and accepted non-priority unsecured claim in the amount of US$1,015,500,000 against LCPI (the "**LCPI Claim**") and an additional allowed and accepted non-priority unsecured claim in the amount of US$ 1,380,900,000 less the amount of any distributions that are received by Bankhaus in respect of the LCPI Claim against LBHI (the "**LBHI Claim**".

2

and together with the LCPI Claim, the "**Claims**"), provided that the Debtors would reserve the right to seek a reduction or disallowance of the LBHI Claim in the event that LCPI is substantively consolidated with LBHI as further specified in the Settlement Agreement, and provided further that under no circumstances would Bankhaus be entitled to collect or receive an amount with respect to the Claims that is in excess of US $1,380,900,000.

7. On December 18, 2009, the Debtors filed a motion seeking the Bankruptcy Court's authorization and approval of the Settlement Agreement (the "**Motion**").

8. On December 30, 2009, the Official Committee of Unsecured Creditors in the US Proceedings (the "**Committee**") filed a Statement in support of the Motion, asserting, *inter alia*, that the Committee "had a meaningful impact on the negotiation" of the Settlement Agreement, "supports the relief sought in the Motion," and "shares the Debtors' view that entry into the Settlement [Agreement] represents a sound exercise of the Debtors' business judgment".

9. Pursuant to the order dated 14 January 2010 by the Honorable James M. Peck, United States Bankruptcy Court, a copy of which is attached hereto as a part of Schedule 1 to this Agreement (the "**Settlement Order**"), the Motion was granted and the Claims were allowed and accepted as further specified in that order.

10. The Insolvency Administrator intends to sell and assign all of the Claims and related rights to Purchaser and Purchaser intends to acquire and assume such Claims and related rights from the Insolvency Administrator.

Now, therefore, the Parties agree as follows:

§ 2    **Definitions**

As used in this Agreement, the following terms shall have the meanings set forth below:

"**Assignment Documentation**" means the Assignment Declaration and the Notice of Assignment in the form of Annex A and Annex B, respectively, to be delivered to Purchaser pursuant to § 3.5.c., and such other documentation legally required to effect the assignment and transfer of the Transferred Rights to such Purchaser.

"**Insolvency Administrator's Best Knowledge**" means the actual knowledge (*positive Kenntnis*) of the Insolvency Administrator.

"**Plan of Reorganisation**" means a plan of reorganisation pursuant to chapter 11 of title 11 of the United States Bankruptcy Code.

"**Purchase Price**" shall have the meaning set forth in § 3.3.c.

"**SCA**" shall have the meaning set forth in Preamble 4.

"**Settlement Date**" means the date of payment of the Purchase Price.

"**Transferred LBHI Rights**" means all of Bankhaus' right, title and interest in, to and under:

(i) the LBHI Claim;

(ii) any and all actions, claims, rights, defenses, objectives, lawsuits and/or causes of action, whether against LBHI or any other party, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LBHI Claim pursuant to the Settlement Agreement, including the right to oppose reduction or disallowance of the LBHI Claim in the event of substantive consolidation of LCPI and LBHI, provided that Bankhaus is entitled to all such rights mentioned in this clause (ii) under applicable law and the Settlement Agreement;

(iii) any and all cash, securities, instruments and other property which may be paid or distributed by any Debtor in satisfaction of the LBHI Claim under or pursuant to any plan of reorganisation or liquidation in the LBHI Proceedings, any redemption, restructuring or other liquidation or otherwise; and

(iv) any and all proceeds of any kind of the foregoing, including all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing.

"**Transferred LCPI Rights**" means all of Bankhaus' right, title and interest in, to and under:

(i) the LCPI Claim;

(ii) any and all actions, claims, rights, defenses, objectives, lawsuits and/or causes of action, whether against LCPI or any other party, and/or voting rights and other rights and benefits of any nature whatsoever arising out of or in connection with the LCPI Claim pursuant to and in accordance with the Settlement Agreement provided that Bankhaus is entitled to all such rights mentioned in this clause (ii) under applicable law and the Settlement Agreement;

(iii) any and all cash, securities, instruments and other property which may be paid or distributed by any Debtor in satisfaction of the LCPI Claim under or pursuant to any plan of reorganisation or liquidation in the LCPI Proceedings, any redemption, restructuring or other liquidation or otherwise; and

(iv) any and all proceeds of any kind of the foregoing, including all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing;

"**Transferred Rights**" means, collectively, the Transferred LCPI Rights and the Transferred LBHI Rights.

§ 3  **Sale of Claims and Purchase Price**

1.  The Insolvency Administrator hereby sells (*verkaufen*) to Purchaser the Claims together with the other Transferred Rights, with effect from and after the Settlement Date. The transfer and assignment *in rem* (*dingliche Übertragung*) shall be effected by the Assignment Declaration.

2.  The Insolvency Administrator hereby undertakes and commits to deliver to Purchaser all of the following documents as soon as reasonably practicable and in any event within ten (10) business days following the execution by the Parties of this Agreement (the "**Settlement Deliverables**"):

    a.  A true, correct and complete copy of the Settlement Agreement duly executed by all parties thereto;

    b.  Confirmation of the Insolvency Administrator that Additional Committee Approval (as defined in the Settlement Agreement) has been obtained;

    c.  Confirmation of the Insolvency Administrator of satisfaction of the Closing Conditions (as defined in the Settlement Agreement);

    d.  Confirmation of the Insolvency Administrator that the consent by the creditors' committee (*Gläubigerausschuss*) of Bankhaus approving the execution and delivery of this Agreement and the transactions contemplated hereby has been obtained.

3.  The aggregate purchase price to be paid by the Purchaser under this Agreement to the Insolvency Administrator on the Settlement Date shall be US$ [___], computed as being the sum of the LCPI Purchase Price and the LBHI Purchase Price.

    a.  The "**LCPI Purchase Price**" shall be US$ [___], computed as the product of the LCPI Purchase Rate and the LCPI Claim Amount (each as specified in Schedule 2 to this Agreement);

    b.  The "**LBHI Purchase Price**" shall be US$ [___], computed as the product of the LBHI Purchase Rate and the LBHI Claim Amount (each as specified in Schedule 2 to this Agreement); and

    c.  The LCPI Purchase Price and the LBHI Purchase Price are together referred to as the "**Purchase Price**".

4.  Upon receipt by Purchasers of all Settlement Deliverables, the Parties shall agree on a date (the "**Settlement Date**") on which they shall hold a meeting (the "**Closing Meeting**"). The Closing Meeting shall be held not later than one week after all Purchasers have received all Settlement Deliverables.

5.  On the Settlement Date and in the Closing Meeting, the following events shall occur:

    a.  Purchaser shall pay the Purchase Price, by wire transfer of immediately available funds, into the following account:

        FRNYUS33
        Federal Reserve Bank of New York, New York, NY
        ABA (Fed Wire No.) 021084018

        Acc:  021084018
              MARKDEFF
              Deutsche Bundesbank
        Acc:  5041034065
              MARKDEFF
        FFC:  SLBSDEFX
              Lehman Brothers Bankhaus AG

    b.  The account bank shall immediately confirm that it has received from Purchaser an amount equal to the Purchase Price.

    c.  The Insolvency Administrator shall deliver to Purchaser:

        (i)  Two duly executed originals of the assignment declaration substantially in the form of Annex A to this Agreement (the "**Assignment Declaration**"); and

        (ii) Two duly executed originals of the notification of assignment substantially in the form of Annex B to this Agreement, to be filed with the Bankruptcy Court evidencing the transfer of the Percentage Interest in the Transferred Rights to such Purchaser under Bankruptcy Rule 3001(e) (the "**Notice of Assignment**").

§ 4  **Undertakings of the Insolvency Administrator**

1.  The Insolvency Administrator hereby unconditionally and irrevocably covenants and undertakes (subject to the obligations of Purchaser to pay the Purchase Price as described herein):

    a.  to assign and transfer fully to Purchaser the Transferred Rights and to deliver the relevant Assignment Documentation;

    b.  if the Insolvency Administrator receives any notices or payment pertaining or attributable to the Transferred Rights, promptly and, in any event, within ten (10) business days of receipt, to forward such notices or to pay such payments to Purchaser free of any withholding, offset, deduction or counterclaim and, pending such payment, to separate the respective proceeds from the assets of Bankhaus and/or the Insolvency Administrator and to hold them in trust for the Purchaser;

c.  not, without the Purchaser's written consent, to amend, challenge or terminate the Settlement Agreement or the Settlement Order if such amendment, challenge or termination would have a material adverse effect on the rights of Purchaser hereunder, and, not without the Purchaser's written consent, to waive any rights under the Settlement Agreement or the Settlement Order pertaining to the Transferred Rights if such waiver would have a material adverse effect of the rights of Purchaser hereunder.

§ 5   **No Assumption of Obligations by Purchaser**

Notwithstanding any other term of this Agreement and/or the Assignment Documentation, the sale and assignment of the Transferred Rights shall be deemed an absolute and unconditional assignment of the Transferred Rights for purpose of collection and satisfaction, and not an assignment or transfer to or assumption by Purchaser of any obligation of Bankhaus and/or the Insolvency Administrator under or in connection with the Transferred Rights or the Settlement Agreement, any and all of which obligations are and shall remain obligations of Bankhaus and/or of the Insolvency Administrator (as applicable). For the avoidance of doubt, the Insolvency Administrator irrevocably represents and commits that neither Bankhaus nor the Insolvency Administrator has used or will use the Claims to set off any amounts it owes or may owe to any of the Debtors.

§ 6   **Mutual Representations of the Parties**

Each Party hereby makes the following representations and warranties to the other Party and represents and warrants by way of an independent guarantee (*selbständiges Garantieversprechen*) as of the date of this Agreement and as of the Settlement Date that:

a.  It has full power and authority and has taken all actions necessary to execute and deliver this Agreement and the Assignment Documentation and to perform its obligations under this Agreement and the Assignment Documentation and to consummate the transactions contemplated thereby;

b.  The execution, delivery and performance by it of this Agreement and the Assignment Documentation do not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound;

c.  This Agreement and the Assignment Documentation have been duly and validly authorised, executed and delivered by it and are legal, valid, binding and enforceable against it in accordance with its terms, except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors rights; and

d.  It understands that the Purchase Price may differ both in kind and amount from any distribution ultimately made pursuant to any Plan of Reorganisation confirmed by the Bankruptcy Court in the US-Proceedings or pursuant to any other applicable law or regulation.

§ 7   **Additional Representations and Warranties of the Parties**

1.  The Insolvency Administrator makes the following representations and warranties, in the form of an independent guarantee (*selbständiges Garantieversprechen*), to Purchaser as of the date of this Agreement and as of the Settlement Date:

    a.  Since opening of the Bankhaus Proceedings, the Insolvency Administrator has not transferred, disposed of or encumbered in any way the Transferred Rights or any portion thereof (other than by this Agreement) and is not otherwise restricted from disposing of the Transferred Rights;

    b.  To the Insolvency Administrator's Best Knowledge, the Transferred Rights are free from any lien, encumbrance, impairment, security interest, rights of set-off, withholding, counterclaim, defence or any other third party rights of any kind.

    c.  Since opening of the Bankhaus Proceedings, no payment or other distribution has been received by or on behalf of Bankhaus and/or the Insolvency Administrator in full or partial satisfaction of the Transferred Rights;

    d.  Bankhaus and the Insolvency Administrator have each fulfilled all of their respective obligations under, and have not breached any terms or provisions of, the Settlement Agreement in any manner that could have a material adverse effect on the Transferred Rights or Purchasers' rights with respect thereto;

    e.  To the Insolvency Administrator's Best Knowledge, no person has challenged or objected to or indicated that it intends to raise any challenge or objection to the Settlement Agreement or the stipulation of the Claims or the transaction referred to herein (subject only to such objections that were initially made but subsequently withdrawn in the US Proceedings prior to the Bankruptcy Court's granting the Motion);

    f.  (i) this Agreement will be binding upon the liquidation fund (*Insolvenzmasse*) of Bankhaus, (ii) the Insolvency Administrator has obtained all necessary consents and approvals of creditors or the court to be obtained under German insolvency laws, including any necessary approval under Sec. 159 et seq. of the German Insolvency Code, in connection with this Agreement, and (iii) the Bankhaus estate is not subject to insufficiency of the estate (*Masseunzulaenglichkeit*) or insolvency of the estate (*Masseinsolvenz*) and, to the Best of the Insolvency Administrator's Knowledge, no insufficiency of the estate (*Masseunzulaenglichkeit*) is expected and neither the execution and delivery nor the consummation of this Agreement nor the performance of any of the Bankhaus' obligations hereunder results or will result in any such insufficiency or insolvency; and

    g.  To the Insolvency Administrator's Best Knowledge, there are no agreements or notices or documentation of any kind or nature that would materially and

adversely affect the Transferred Rights that have not been disclosed to or are otherwise known by Purchaser.

2. Purchaser makes the following representations and warranties, in the form of an independent guarantee (*selbständiges Garantieversprechen*), to the Insolvency Administrator as of the date of this Agreement and as of the Settlement Date:

Purchaser (i) is a sophisticated investor in assets of the same type as the Claims and the other Transferred Rights and understands any and all risks associated with its investment therein; (ii) has been provided with all information that it has requested with respect to the Claims and the other Transferred Rights; (iii) has made its own decision, in consultation with its attorneys and other advisors, in connection with its investment in the Claims and the other Transferred Rights; and (iv) has not relied upon any advice or representations of the Insolvency Administrator with respect to the Claims and the other Transferred Rights, except as specifically set forth in this Agreement.

3. If any of the representations and warranties in § 6 or this § 7 should be proven to be incorrect in any material respect, the representing Party shall be obligated to put the other Party in the position such Party would have been in if all representations and warranties had been correct. The liability under this clause shall be limited to an amount equal to the Purchase Price received by the Insolvency Administrator. All claims arising under § 6 and this § 7 shall be time-barred (*verjähren*) after one year from the Settlement Date.

§ 8   **No Personal Liability / Non-recourse**

1. Except in case of wilful misconduct, the Parties accept and agree that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of the Insolvency Administrator, his firm and its partners and employees, and his representatives or other professional advisors as well as the members of the Bankhaus Creditors Committee, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against him, his firm and its partners and employees, and his representatives and other professional advisers and members of the Bankhaus Creditors Committee personally. Unless otherwise provided by German mandatory law, any claim by a Party against the Insolvency Administrator or Bankhaus arising under or relating to this Agreement shall be satisfied only out of the assets of the insolvency estate of Bankhaus.

2. For the avoidance of doubt, Purchaser acknowledges that it bears the risk, subject only to the Insolvency Administrator's express representations and undertakings made herein, that the Claims may be affected by a Plan of Reorganisation in respect of the Debtors, any substantive consolidation of the Debtors or any other treatment imposed in the context of the US Proceedings. Purchaser confirms and acknowledges that the Claims are sold and transferred to Purchaser on a fully non-recourse basis, i.e. Purchaser shall have no claims against or other recourse to the Insolvency Administrator unless expressly provided in this Agreement.

3. Purchaser acknowledges and agrees that this Agreement shall not preclude or restrict the Insolvency Administrator from actions which are undertaken in the context of the Insolvency Administrator's good faith administration of the bankruptcy estate of Bankhaus, including the right to oppose, challenge or otherwise act against any Plan of Reorganization or any other action or procedure in connection with the Proceedings, if and to the extent such actions do not conflict with the Administrator's Intentions (as defined below) or the Settlement Order.

The Insolvency Administrator acknowledges and confirms that his intention and understanding of the status and treatment of the Claims, in entering into the Settlement Agreement, were that (and his understanding of the Debtors' intentions and understandings, in entering into the Settlement Agreement, was that):

(i) the LCPI Claim will be classified and treated as an allowed and accepted general unsecured claim, equal to all other general unsecured claims against LCPI, and not as the claim of an affiliate or an intercompany claim or a claim which is otherwise impaired, capped, subordinated or subject to any further defenses (whether by way of set off, recoupment, counterclaim or otherwise which would have the effect of subordinating the LCPI Claim to the claims of other general unsecured claims);

(ii) the LBHI Claim will be classified and treated as an allowed and accepted general unsecured claim, equal to all other general unsecured claims against LBHI, and not as the claim of an affiliate or an intercompany claim or a claim which is otherwise impaired, capped, subordinated or subject to any further defenses (whether by way of set off, recoupment counterclaim or otherwise which would have the effect of subordinating the LCPI Claim to the claims of other general unsecured claims), subject only to the express terms of the Settlement Agreement by which (A) the amount of the LBHI Claim shall be reduced by any distributions received by the Insolvency Administrator in respect of the LCPI Claim and (B) the LBHI Claim may be reduced or disallowed in the event of the substantive consolidation of LCPI with LBHI.

(together, the "**Administrator's Intentions**")

For the avoidance of doubt the Insolvency Administrator shall not be liable if his understanding of the status and the treatment of the Claims and, in particular, his understanding of the Debtor's intentions and understandings was incorrect.

### § 9 Governing Law and Jurisdiction

1. This Agreement and all rights and obligations arising hereunder (except for the transfer *in rem* of the Transferred Rights, which shall be governed by the laws of the State of New York in accordance with Annex A) shall exclusively be governed by and construed in accordance with the laws of the Federal Republic of Germany without regard to its conflicts of law principles.

2. Except for disputes arising out of or in connection with Annex A, the Parties submit to the non-exclusive jurisdiction of the courts of Frankfurt am Main, Germany.

### § 10 No Set-Off or Retention

Purchaser shall not be entitled to any set-off (*Aufrechnung*) against any payment claim under this Agreement or to refuse or delay payment thereof on the basis of any retention right (*Zurückbehaltungsrecht*).

### § 11 General Interpretive Principles

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

a. the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

b. references herein to sections and other subdivisions without reference to a document are to designated sections and other subdivisions of this Agreement;

c. the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

d. the term "include" or "including" shall mean without limitation by reason of enumeration.

### § 12 Counterparts

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. A facsimile or electronically transmitted signature shall be deemed valid and binding for all purposes hereunder.

### § 13 Miscellaneous

1. Each of the Parties agrees to execute and deliver, or cause to be executed and delivered, all such instruments and documents which are required for Purchaser to become the legal owner of the Transferred Rights.

2. If a German expression has been added in brackets to certain English terms used throughout this Agreement, such German term shall be authoritative for the purposes of interpretation of the respective English term except for such provisions of this Agreement that are governed by the law of the State of New York pursuant to § 9.1 above.

3. Any amendment or addition to this Agreement (including amendment to or deletion of this § 13.3) shall be made in writing signed by all Parties, unless a more stringent form is required.

4. Should any provision of this Agreement be or become invalid in whole or in part or should there be an omission herein, such invalidity or omission shall not affect the validity of the remaining provisions hereof. In place of the invalid provision or in order to fill the gap, the Parties undertake to agree on an appropriate provision that, to the extent legally permissible, comes closest to what the Parties intended or would have intended in accordance with the purpose of this Agreement had they considered the matter at the outset.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SCHEDULE 1**

- COPY OF OPENING ORDER FOR INSOLVENCY PROCEEDINGS
- COPY OF THE SECURITY & COLLATERAL AGREEMENT
- COPY OF SETTLEMENT AGREEMENT
- COPY OF THE SETTLEMENT ORDER

**SCHEDULE 2 – CLAIM AMOUNT AND PURCHASE RATE AND PRICE**

**Purchase Price Parameters**

| | |
|---|---|
| LCPI Claim Amount: | US$ |
| LCPI Purchase Rate: | XX.XX % |
| LBHI Claim Amount: | US$ |
| LBHI Purchase Rate: | YY.YY % |
| Purchase Price | US$ |

ANNEX A

## ASSIGNMENT DECLARATION

This Assignment Declaration, dated _____, 2010 (the "**Assignment**"), is entered into by and between Dr. Michael C. Frege in his capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus AG i.Ins., as assignor ("**Assignor**"), and _____, as assignee ("**Assignee**").

1. Assignor, for consideration as described in Schedule 2 to the Agreement and other good and valuable consideration (the "**Consideration**"), the receipt and sufficiency of which are hereby acknowledged, unconditionally and irrevocably sells, transfers and assigns to Assignee, on the terms and conditions set forth herein and in the Agreement Regarding the Sale and Assignment of Claims, dated as of _____, 2010, by and between Assignor and Assignee (the "**Sale Agreement**"), all of the Claims (as defined below and in the Sale Agreement), together with all of the other Transferred Rights (as defined in the Sale Agreement).

2. Assignor and Assignee acknowledge that pursuant to an order of the Honorable James M. Peck, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, dated January 14, 2010 (the "**Order**"), entered in the Chapter 11 case of Lehman Brothers Holdings Inc. ("**LBHI**"), Lehman Commercial Paper Inc. ("**LCPI**", and together with LBHI, the "**Debtors**"), et al., Case no. 08-13555 et seq., Assignor has, *inter alia*, (i) an allowed and accepted non-priority unsecured claim against LCPI in the amount of US$ 1,015,500,000 (the "**LCPI Claim**"), and (ii) an additional allowed and accepted non-priority unsecured claim against LBHI in the amount of US$ 1,380,900,000 less the amount of any distributions that are received on account of the LCPI Claim (the "**LBHI Claim**", and together with the LCPI Claim, the "**Claims**"), provided that the Debtors reserved the right to seek a reduction or disallowance of the LBHI Claim in the event that LCPI is substantively consolidated with LBHI as further specified in the Settlement Agreement, dated as of December 15, 2009, among the Debtors and Assignor (as amended from time to time, the "**Settlement Agreement**"), and provided further that under no circumstances would Assignor be entitled to collect or receive an amount with respect to the Claims that is in excess of US$ 1,380,900,000. A copy of the Order is attached as Exhibit 1 hereto.

3. Assignor and Assignee each makes to the other, as of the date hereof, all of their respective representations and warranties as set forth in §§ 6 and 7 of the Sale Agreement.

4. All representations, warranties, covenants and agreements contained herein or in the Sale Agreement shall, subject to the provisions of § 7.3., survive the execution and delivery of this assignment, the purchase and sale of the Claims and the payment of the Consideration, and shall inure to the benefit of and be binding upon and enforceable by the parties hereto and their respective successors and assigns.

5. This Assignment and all rights and obligations of the Parties hereunder shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of law provisions thereof to the extent that such principles would apply a law other than that of the State of New York. The Parties hereby irrevocably submit to the non-exclusive jurisdiction of any New York State or Federal court located within the County of New York in the State of New York.

IN WITNESS WHEREOF, Assignor and Assignee each has caused this Assignment to be executed on its behalf as of the date first above written.

ASSIGNOR:                                                                                                ASSIGNEE:

ANNEX B

## NOTIFICATION OF ASSIGNMENT

To: Lehman Brothers Holdings Inc. ("LBHI"), Lehman ALI, Inc ("ALI") and Lehman Commercial Paper Inc. ("LCPI") (LBHI, ALI and LCPI each a "Lehman Party and collectively the "Lehman Parties").

From: Dr. Michael C. Frege in his capacity as Insolvency Administrator over the assets of Lehman Brothers Bankhaus AG i.Ins. (the "LLB InsAdmin")

Date: _____, 2010

Pursuant to § 12.j. of the Settlement Agreement, dated as of December 15, 2009, by and among the Lehman Parties and the LBB InsAdmin (the "Settlement Agreement"), and the order of the United States Bankruptcy Court for the Southern District of New York dated January 14, 2010 approving the Settlement Agreement, the LBB InsAdmin hereby notifies the Lehman Parties that on or about _____ (the "Settlement Date"), the LBB InsAdmin will convey, transfer and assign a Percentage Interest (as set forth in the related Assignment Declaration) of its right, title and interest in and to the Bankhaus Net Cat 3 Claim and the Security & Collateral Agreement Claim (each as defined in the Settlement Agreement) to _____ (the "Purchaser"). A copy of the Assignment Declaration with respect thereto is attached to this Notification of Assignment as Exhibit A hereto.