**HEARING DATE AND TIME: October 27, 2011 at 10:00 A.M. (Eastern Time)**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Fax: (212) 571-0555
David A. Berger
Michael S. Vogel
Kevin L. MacMillan
*Attorneys for Syncora Guarantee Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

### RESPONSE OF SYNCORA GUARANTEE INC. TO THE DEBTORS'
### OBJECTION TO PROOF OF CLAIM NO. 66099

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Syncora Guarantee Inc. ("Syncora"), by and through its counsel, Allegaert Berger &

Vogel LLP, respectfully submits its response (the "Response") to the Debtors' Objection to

Proof of Claim No. 66099 (the "Objection"), as follows:[1]

---

[1] The execution and filing of this Response is not and shall not be deemed: (a) a waiver or release of
Syncora's rights against any entity or person liable for all or any part of Syncora's claims; (b) a consent
by Syncora to the jurisdiction of this Court with respect to any proceeding commenced in these cases
against or otherwise involving the Syncora; (c) a waiver of the right to withdraw the reference with
respect to the subject matter of the claims asserted by Syncora, any objection or other proceedings
commenced with respect thereto or any other proceedings commenced in this case against or otherwise
involving Syncora; (d) a waiver or release by Syncora of any right to trial by jury, or a consent by
Syncora to a trial by jury, in this Court or any court; (e) a waiver of any right to the subordination or
recharacterization, in favor of Syncora, of indebtedness or liens held by any creditors of the Debtors or
any of their affiliates; (f) an election of remedies which waives or otherwise affects any other remedy or
(g) a waiver of Syncora's rights to amend or supplement its Proof of Claim or this Response.

## PRELIMINARY STATEMENT

1.      Syncora's claims against Lehman Brothers Holdings, Inc. ("LBHI") arise from a securitization transaction sponsored by LBHI which culminated in the formation of a trust, GreenPoint Mortgage Funding Trust 2006-HE1 (the "Trust"), and the issuance by the Trust of approximately $1.83 billion of securities (the "Notes") backed by almost 30,000 residential mortgage loans (the "Loans").  Syncora serves as the financial guaranty insurer of approximately $1,331,838.00 of these Lehman-sponsored Notes.

2.      Although the structure of this securitization transaction (the "Transaction") is complex -- involving the origination of the Loans by GreenPoint Mortgage Funding, Inc. ("GreenPoint"), followed by a series of assignments of these Loans along a chain of entities (including three Lehman entities) to the Trust -- LBHI's relationship with and promises to Syncora were relatively straightforward.  In particular, LBHI made substantial representations and warranties to Syncora in an Insurance and Indemnity Agreement (the "I&I Agreement", attached as Exhibit 1 to Syncora's Proof of Claim No. 66099 (the "Proof of Claim")), dated August 28, 2006, between Syncora, LBHI, Structured Asset Securities Corporation ("SASCO") (one of the Debtors in this bankruptcy), the Trust, GMAC Mortgage Corporation ("GMAC"), and U.S. Bank National Association (the "Indenture Trustee").

3.      LBHI's representations and warranties concerned myriad matters, including promises and assurances about the quality of the Loans, the accuracy of the offering documents prepared and issued in connection with the securitization transaction, and, more generally, the accuracy of *all material information* provided to Syncora by LBHI and SASCO in connection with the Transaction.  Further, LBHI agreed to indemnify Syncora for, among other things, inaccuracies in LBHI's representations and for misstatements in the offering documents.  In

reliance on this indemnity and other protections LBHI promised to Syncora, as well as on

representations, warranties, and other statements of GreenPoint Mortgage Funding, Inc.

("GreenPoint"), the originator of virtually all of the Loans, Syncora issued its insurance policy

(the "Policy"), "unconditionally and irrevocably guarantee[ing]" certain payments on the Notes it

insured.

4.      LBHI's representations and warranties -- including those concerning the manner

in which the Loans were originated -- turned out to be pervasively false, a fact that came to light

only after the Loans began to default at staggering rates.

5.      As a result of its issuance of the Policy, to date, Syncora has paid out over $458

million under the Policy.

6.      In its Objection, LBHI argues, in conclusory fashion, that because the Indenture

Trustee has asserted claims in connection with the Transaction under a mortgage loan sale and

assignment agreement based on defects in the Loans underlying the Trust,[2] Syncora's claims

under the separate and distinct I&I Agreement should be dismissed as being duplicative of the

Trustee's claims.  LBHI further argues that because Syncora's claims were dismissed from a

pending litigation against GreenPoint in connection with its role in the Transaction, U.S. Bank

National Association, et al. v. GreenPoint Mortgage Funding, Inc., (Sup. Ct. N.Y. Cty., Index

No. 600352/09) (the "GreenPoint Litigation"), Syncora's claim for reimbursement here should

be barred, notwithstanding that no final judgment was issued in connection with Syncora's

dismissal in the GreenPoint Litigation, and Syncora's motion for leave to file a third amended

complaint in this matter to assert direct claims under a separate agreement is pending (as

---

[2] U.S. Bank National Association Proofs of Claim Nos. 20586 and 20587 were filed on September 21, 2009, in the LBHI and SASCO proceedings, respectively.

opposed to its previously asserted third-party beneficiary claims under the agreement whereby

GreenPoint initially sold the Loans).[3]

7.      LBHI's arguments are without merit.  As discussed in detail  below, Syncora has

substantial contractual claims under the I&I Agreement against LBHI -- which claims are

distinct and independent from the Trustee's claims -- for the entirety of its hundreds of millions

of dollars of damages, and Syncora also retains reimbursement rights against LBHI under the

I&I Agreement.  Accordingly, Syncora respectfully requests that LBHI's Objection to the Proof

of Claim be overruled.

## FACTUAL BACKGROUND

### The Securitization Transaction

8.      The Transaction involved multiple steps, effectuated over a period of months

through a large number of interrelating agreements.  In its simplest form, the Transaction

involved GreenPoint's origination of the approximately 30,000 Loans, followed by the transfer

of these Loans (i) from GreenPoint to GMAC; (ii) from GMAC to Lehman Brothers Bank, FSB

("Lehman Bank"); (iii) from Lehman Bank to LBHI, the "Sponsor" of the Transaction; (iv) from

LBHI to SASCO, the "Depositor" of the Transaction; and (v) from SASCO to the Trust.  The

transfer of the Loans  from LBHI to SASCO was effectuated by a Mortgage Loan Sale and

Assignment Agreement (the "MLSAA", attached as Exhibit B to the Objection), dated as of

August 1, 2006, between LBHI and SASCO.  (The Indenture Trustee's claims against LBHI and

SASCO are based, at least in part, on LBHI's obligations under the MLSAA.)

---

[3] This motion for leave to file an amended complaint has been fully briefed with oral argument scheduled to take place on December 21, 2011.

9.      After receiving the Loans from SASCO, the Trust issued approximately $1.83 billion of Notes, of which approximately $1.3 billion were Class Ax Notes (the "Syncora-Insured Notes") which Syncora insured.

10.      In connection with the Transaction and the Trust's issuance of the Notes, offering documents used to market the Notes to investors were prepared by Lehman and filed with the SEC. These documents included a Prospectus, dated August 11, 2006, a Free Writing Prospectus, dated August 22, 2006, and a Prospectus Supplement (the "ProSupp", relevant excerpts of which are attached hereto as Exhibit 1), dated August 25, 2006 (together, the "Offering Document").

11.      The Offering Document included numerous statements concerning, among other things, GreenPoint's origination of and the quality of the Loans, including that: (i) "[t]he Loans were underwritten in accordance with the Underwriting Guidelines, as in effect at the time of origination", ProSupp S-34; and (ii) "[g]enerally, the GreenPoint underwriting guidelines are applied to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral. Exceptions to the guidelines are permitted where compensating factors are present." ProSupp at S-38.

12.      As noted above, Syncora issued the Policy in connection with the Transaction pursuant to the terms of the I&I Agreement. In addition to the I&I Agreement, Syncora also entered into an Indemnification Agreement (the "Syncora Indemnification Agreement", attached hereto as Exhibit 2), dated as of August 22, 2006, between and among Syncora (formerly known as XL Capital Assurance Inc.), LBHI and GreenPoint. In the Syncora Indemnification Agreement, GreenPoint represented and warranted to the accuracy of the information that it provided for inclusion in the Offering Document, as follows:

"*Originator Information.* All material provided in writing to the Depositor [SASCO] for inclusion in the Offering Document (as revised from time to time, and as included in such Offering Document or any other Offering Documents) (the "Originator Information") shall be true and correct in all material respects."

Syncora Indemnification Agreement § 5(f).

## LBHI's Obligations Under the I&I Agreement

13.     The I&I Agreement contains representations and warranties from LBHI and indemnification and reimbursement obligations, including promises by LBHI about the quality of the Loans and the accuracy of the Offering Documents.

     A.     LBHI Made Significant Representations and Warranties to Syncora About the Loans, the Transaction and the Accuracy Of the ProSupp.

14.     In the I&I Agreement, LBHI makes representations as to both the Loans and the Transaction, in general. Section 2.01 of the I&I Agreement provides, in relevant part, that "[e]ach of the Sponsor [LBHI], the Issuer [the Trust] and the Depositor [SASCO], in each case with respect to itself, represents and warrants as of the Closing Date, as follows: …"

"(k)     *Accuracy of Information.* Neither the Operative Documents[4] nor other material information relating to the Loans … (collectively the "Documents") … furnished to the Insurer [Syncora] in writing or in electronic form by the Sponsor [LBHI], the Issuer [the Trust] or the Depositor [SASCO] contains any statement of a material fact which was untrue or misleading in any material respect when made. … Without limiting the generality of the foregoing, the information in the Data Tape with respect to each HELOC is true and correct as of the Cut-off Date…."

"(m)     *Operative Documents.* Each of the representations and warranties of the Sponsor [LBHI], the Issuer [the Trust] and the Depositor [SASCO] contained in the applicable Operative Document is true and correct in all material respects and each of the Sponsor, the Issuer and the Depositor hereby makes each such representation and warranty to, and for the benefit of, the Insurer as if the same were set forth in full herein."

---

[4] The I&I Agreement defines Operative Documents to include the I&I Agreement, the Syncora Indemnification Agreement, the MLSAA, and various other documents under which LBHI and SASCO have obligations. I&I Agreement at 5.

I&I Agreement § 2.01 (emphasis added).

     B.     **LBHI Agrees to Indemnify Syncora For Breaches of Its Representations and Warranties and In Several Other Circumstances.**

     15.     In the I&I Agreement, LBHI also agrees to provide Syncora with indemnification under a number of circumstances.  Under Section 3.04(a) of the I&I Agreement, LBHI agrees "to pay, and to protect, indemnify and save harmless, the Insurer … from and against any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including, without limitation, reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or relating to the breach by the Sponsor [LBHI], the Issuer [the Trust] or the Depositor [SASCO], as applicable, of any of the representations or warranties contained in Section 2.01 [(discussed above)] or arising out of or relating to the transactions contemplated by the Operative Documents by reason of", among other things:

     "(i)     any statement, omission or action on its part … in connection with the offering, issuance or delivery of the Securities by the Sponsor, the Depositor, the Owner Trustee or the Indenture Trustee;

     "(ii)     the misfeasance or malfeasance of, or negligence, bad faith, willful misconduct or theft committed by, any director, officer, employee or agent of the Sponsor, the Depositor, the Issuer, the Owner Trustee or the Indenture Trustee in connection with any Transaction arising from or relating to the Operative Documents; …

     "(iv)     the breach by the Sponsor, the Issuer, the Depositor or any Originator of any representation, warranty or covenant under any of the Operative Documents to which it is a party …

     "(v)     any untrue statement or alleged untrue statement of a material fact contained in the Offering Document or the Registration Statement or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, except [with respect to the Insurer's, the Servicer's and the Underwriter's Information]."

I&I Agreement § 3.04(a) (emphasis added).

16.     This indemnification includes LBHI's agreement to indemnify Syncora (i) for, with limited exceptions, "any untrue statement or alleged untrue statement of a material fact" that is contained in the Offering Document, (I&I Agreement § 3.04(a)(v)), thus including information provided by GreenPoint for inclusion in the Offering Document; and (ii) for breaches of representations, warranties or covenants of "any Originator" under any of the "Operative Documents", which includes the Syncora Indemnification Agreement to which GreenPoint is a party, and the representation therein where GreenPoint promises that the information it provided for inclusion in the Offering Document is accurate.  I&I Agreement § 3.04(a)(iv).  Thus, in no fewer  than two places in Section 3.04 of the I&I Agreement, LBHI guarantees against, and agrees to indemnify Syncora for, misstatements in the Offering Document concerning GreenPoint information contained therein.  As shown below, the Offering Document is riddled with such misstatements.

C.     LBHI Agreed to Reimburse Syncora For, Among Other Things, Its Expenses Incurred In Actions Arising Out of the Transaction.

17.     The I&I Agreement provides Syncora with a right to "reimbursement" under certain circumstances.  Under Section 3.03(c) of the I&I Agreement, LBHI "agrees to pay to the Insurer [Syncora] any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with … the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding (including insolvency proceeding in respect of any Transaction participant or any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such party) or the Transaction."  I&I Agreement § 3.03(c).

18.     The I&I Agreement further provides that "[a]nything in this Insurance Agreement to the contrary notwithstanding, the Sponsor [LBHI] agrees to pay to the Insurer, and the Insurer shall be entitled to reimbursement from the Sponsor and shall have full recourse against the Sponsor for … any payment made under the Policy arising as a result of the Sponsor's failure to substitute for or deposit an amount in respect of any defective HELOC as required pursuant to Section 7 of the Sale Agreement …"  I&I Agreement § 3.03(b).

19.     Finally, under the terms of the I&I Agreement, any unpaid amounts owed by LBHI shall incur interest at a "Late Payment Rate" as defined in the I&I Agreement.  See I&I Agreement § 3.03.

### LBHI's Obligations Under the MLSAA

20.     Under the MLSAA, LBHI also made representations and warranties concerning the quality and origination of the Loans.  These representations and warranties essentially reiterate the representations and warranties that GreenPoint made about the Loans to GMAC in the Flow Revolving Credit Loan Purchase and Warranties Agreement, dated as of September 26, 2005, between GreenPoint and GMAC (the "GreenPoint HELOC Sale Agreement") and the Flow Mortgage Loan Purchase and Warranties Agreement, dated as of July 26, 2006, between GreenPoint and GMAC (the "GreenPoint Mortgage Loan Sale Agreement") (together, the "GreenPoint Sale Agreements").

21.     Section 1.04(b)(iii) of the MLSAA provides as follows:

> "Subject to the foregoing, the Seller [LBHI] makes the representations and warranties on Schedule B, Schedule C and Schedule D to the Depositor [SASCO], the Issuer [the Trust], the Indenture Trustee [the Trustee] and the Insurers [Syncora and CIFG (defined below)] only with respect to each Loan that was originated by GreenPoint (each, a "Greenpoint Loan") and Impac (each, an "Impac Loan" and together with the [sic] a GreenPoint Loan, a "Loan"), respectively, as of the Closing Date."

MLPAA § 1.04(b)(iii).  The referenced Schedules B, C and D of the MLSAA each

consist of ten or more pages of representations and warranties with respect to the Loans

which track the representations and warranties made by GreenPoint in the GreenPoint

Sale Agreements (and presumably those made by Impac, which originated a nominal

number of the Loans, in the Impac Sale Agreement).  These representations and

warranties include representations concerning the Loans with respect to such matters as

absence of negligence or fraud in each Loan's origination and conformance with

underwriting guidelines in the origination of each Loan.[5]

### Widespread Breaches of LBHI's Representations and Warranties, And Circumstances Triggering LBHI's Indemnification and Reimbursement Obligations, Are Discovered

22.     After Syncora issued the Policy and the Transaction closed, the Loans began to

default at staggering rates prompting Syncora to conduct a review of the underlying loan

documentation.  Through this process, Syncora learned that LBHI's (and GreenPoint's)

substantial representations and warranties were systematically false, as established by an

extensive re-underwriting process undertaken by Syncora and the other insurer of the Notes,

CIFG Assurance North America, Inc. ("CIFG").[6]

---

[5] For example, representation (tt) in Schedule B (which governs the GreenPoint HELOCs) of the MLSAA, entitled "Origination", provides as follows: "No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Greenpoint HELOC has taken place on the part of any person including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Greenpoint HELOC or, in the application of any insurance in relation to such Greenpoint HELOC; no predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Greenpoint HELOC."  This representation is substantially identical to the representation and warranty set forth in Section 7(tt) of the GreenPoint HELOC Sale Agreement.

[6] Details concerning Sycnora's and CIFG's extensive re-underwriting efforts are detailed in their papers and supporting affidavits submitted in support of their motion seeking leave to replead and to file a third amended complaint in the GreenPoint Litigation.  These papers can be found at

23.    Indeed, through its re-underwriting efforts, Syncora found that 963 of a sample of 1,030 Loans -- or 93% --  failed to comply with GreenPoint's representations and warranties nor, as a result, LBHI's identical representations and warranties with respect to  the Loans.  These breaching Loans each contained at least one  defect (and, in most cases, more) that constituted a breach of one of more of the numerous representations and warranties made by LBHI in the MLSAA, including: (i) pervasive misrepresentations and/or negligence with respect to the statement of the income, assets or employment of the borrower; (ii) misrepresentations of the borrower's intent to occupy the property as the borrower's residence and subsequent failure to so occupy the property; (iii) inflated and fraudulent appraisal values; and (iv) pervasive violations of GreenPoint's own underwriting guidelines and prudent mortgage-lending practices, including loans made to borrowers (a) who made unreasonable claims as to their income, (b) with multiple, unverified social-security numbers, (c) with credit scores below the required minimum, (d) with debt-to-income and/or loan-to-value ratios above the allowed maximum or (e) with relationships to GreenPoint or other non-arm's-length relationships.

24.    Subsequent re-underwriting was consistent with these initial findings.  Indeed, analysis conducted to date of over 4,000 of the Loans, with a principal value in excess of $500 million, reveals that one or more statements of GreenPoint in the Offering Document -- disclosure documents whose accuracy LBHI guaranteed to Syncora -- were false as to at least 90% of such Loans.  Attached hereto as Exhibit 3 is an excerpt of re-underwriting findings with respect to some of the re-underwritten Loans.  These findings include verified misrepresentations by borrowers about their incomes (such as a borrower representing monthly income of $15,000 in obtaining a Loan who actually was earning just over $5,000 per month), unreasonably high

---

http://iapps.courts.state.ny.us/webcivil/FCASMain and will not be included here in an effort to limit the volume of this submission and will certainly be provided to the Court and counsel upon request.

stated incomes, and widespread underwriter negligence in originating the Loans.  Moreover, a random sample analysis conducted of a sample of Loans established with 99.5% likelihood that at least 80% of the Loans contained one or more violations of the representations and warranties about the Loans in the relevant GreenPoint Sale Agreement, representations which LBHI repeated in their entirety in the MLSAA.

25.    These pervasive breaches concerning the Loans rendered the Offering Document fraught with untrue or misleading statements, as the prevalence of these breaches demonstrated that GreenPoint had systematically failed to comply with its own underwriting guidelines in originating, and otherwise engaged in negligent or fraudulent conduct in making, these Loans.

## Syncora Has Suffered Substantial Losses

26.    Syncora has suffered substantial losses and incurred substantial costs and expenses under the Policy, which "unconditionally and irrevocably guarantees" certain payments on the Syncora-Insured Notes, which payments are contemplated to be funded by the cash flow from the Loans held by the Trust.  In the event of a shortfall in that cash flow or a deficit in the asset pool, Syncora pays claims under its Policy to make up the shortfall or deficit.

27.    As of mid-2011, Syncora had paid claims of more than $458 million under the Policy and set aside additional amounts on account of anticipated future claims.  Syncora has also incurred, and will continue to incur, substantial costs and expenses, including attorneys' and consultants' fees, in connection with this litigation.  Meanwhile, as of the date of this Response and consistent with directives of the New York State Insurance Department, Syncora has fully performed its obligations under the I&I Agreement, the Syncora Indemnification Agreement and under its Policy, paying, as noted, more than $458 million in claims for the benefit of the investors whose securities Syncora insures.

## The GreenPoint Litigation

28.     As a result of the damages incurred by Syncora, Syncora asserted claims against

LBHI in its Proof of Claim, and, along with the Indenture Trustee and CIFG, commenced the

GreenPoint Litigation against GreenPoint.

29.     The Indenture Trustee, Syncora and CIFG (collectively, "Plaintiffs") filed their

original Complaint against GreenPoint on February 5, 2009.  The Court denied GreenPoint's

motion to dismiss the Indenture Trustee's causes of action, but dismissed Syncora and CIFG as

plaintiffs for lack of standing to sue as third-party beneficiaries of the GreenPoint Sale

Agreements.  (March 3, 2010, Memorandum and Order of the Honorable Bernard J. Fried at 15,

attached as Exhibit D to the Objection.)

30.     After motion practice relating to the amendment of Plaintiffs' pleading, the Court

granted leave for Plaintiffs to file a Third Amended Complaint in an effort, as the Court stated, to

"start this whole process anew".  (Jan. 6, 2011, Transcript of Hearing before Justice Fried at 4,

attached hereto as Exhibit 4.)

31.     On June 10, 2011, the Indenture Trustee, Syncora and CIFG moved under New

York Civil Practice Rule ("CPLR") 3211(e) and 3025(b) for leave to file a Third Amended

Complaint (the "GreenPoint Motion").  As of the date of this Response, the GreenPoint Motion

is fully briefed, and oral argument is scheduled for December 21, 2011.

## ARGUMENT

### Standard of Review on Motion to Dismiss

32.     Pursuant to paragraph 4(a)(i) of the *Court-Ordered Claims Hearing Procedures*

*and Alternative Dispute Resolution Procedures*, implemented by an April 19, 2010 Order

Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-

390, of this Court, "[t]he standard of review that will be applied by the Court at a Sufficiency

Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for

failure to state a claim".

33.    The standard applied on a motion to dismiss is governed by Fed. R. Bankr. P.

7012(b) (incorporating Fed. R. Civ. P. 12(b)(6)) and "permits a bankruptcy court to dismiss an

adversary proceeding if a plaintiff's complaint fails to state claim upon which relief can be

granted." *In re Lehman Brothers Holdings Inc. et al.*, 452 B.R. 31, 37 (Bankr. S.D.N.Y. 2011).

"In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations

of the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Id.* (*citing*

*Aschroft v. Iqubal*, 129 S. Ct. 1937, 1949 (2009)).    "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Aschroft v. Iqubal*, 129 S. Ct. 1937, 1949 (2009).

### Syncora Has Viable Claims Against LBHI

34.    Under this liberal standard of review, and indeed even under a far more rigorous

standard of review, Syncora has several viable contractual claims against LBHI under the I&I

Agreement which, it is undisputed, is a valid and binding contract between Syncora and LBHI.

A.    LBHI Has Breached the Representations and Warranties It Made to Syncora In
the I&I Agreement.

35.    LBHI's has breached representations and warranties made to Syncora in the I&I

Agreement, including but not limited to the following:

(a)    "Neither the Operative Documents [which includes the MLSAA and the Syncora
Indemnification Agreement] nor other material information relating to the Loans
…[furnished by LBHI, SASCO or the Trust] contains any statement of a material
fact which was untrue or misleading in any material respect when made. … [T]he
information in the Data Tape with respect to each HELOC is true and correct as
of the Cut-off Date" (I&I Agreement § 2.01(k)); and

14

(b)      "Each of the representations and warranties of the Sponsor [Lehman Holdings],
the Issuer [the Trust] and the Depositor [SASCO] contained in the applicable
Operative Document is true and correct in all material respects and each of the
Sponsor, the Issuer and the Depositor hereby makes each such representation and
warranty to, and for the benefit of, the Insurer as if the same were set forth in full
herein."  (I&I Agreement § 2.01(m)).

36.     Notwithstanding these (and other) representations and warranties, Syncora's (and

CIFG's) re-underwriting of more than 4,000 of the Loans has revealed that the Operative

Documents contained pervasive untrue and misleading statements, including specifically (i)

LBHI's representations and warranties about the quality of the Loans in the MLSAA were

consistently false; and (ii) GreenPoint's statements in the Syncora Indemnification Agreement as

to the accuracy of the information it provided for inclusion in the Offering Document (including

specifically that it generally followed its underwriting guidelines in originating the Loans, which

over 90% of the time it did not) was false.  Moreover, the Data Tape provided to Syncora by

LBHI contained untrue statements about the Loans.

B.      **LBHI Must Indemnify Syncora For Its Breached Representations and Warranties
And Under Other Circumstances.**

37.     Pursuant to the I&I Agreement, LBHI is obligated "to pay, and to protect,

indemnify and save harmless, the Insurer [Syncora] … from and against any and all claims,

losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or

expenses (including, without limitation, reasonable fees and expenses of attorneys, consultants

and auditors and reasonable costs of investigations) of any nature arising out of or relating to the

breach by the Sponsor [LBHI], the Issuer [the Trust] or the Depositor [SASCO], as applicable, of

any of the representations or warranties contained in Section 2.01 [(discussed above)] or arising

out of or relating to the transactions contemplated by the Operative Documents by reason of",

among other things:

15

"(i)    any statement, omission or action on its part … in connection with the offering, issuance or delivery of the Securities by the Sponsor, the Depositor, the Owner Trustee or the Indenture Trustee;

"(ii)    the misfeasance or malfeasance of, or negligence, bad faith, willful misconduct or theft committed by, any director, officer, employee or agent of the Sponsor, the Depositor, the Issuer, the Owner Trustee or the Indenture Trustee in connection with any Transaction arising from or relating to the Operative Documents; …

"(iv)    the breach by the Sponsor, the Issuer, the Depositor or any Originator of any representation, warranty or covenant under any of the Operative Documents to which it is a party …

"(v)    any untrue statement or alleged untrue statement of a material fact contained in the Offering Document or the Registration Statement or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, except [with respect to the Insurer's, the Servicer's and the Underwriter's Information]."

I&I Agreement § 3.04(a) (emphasis added).

38.    Syncora has been damaged, and is entitled to indemnification from LBHI, as a result of: (a) systematic and pervasive misstatements in the Offering Document, including misstatements about GreenPoint's adherence to its underwriting guidelines in originating the Loans, which LBHI (as well as GreenPoint) represented was accurate; (b) LBHI's breaches of representations and warranties concerning the quality of the Loans set forth in the MLSAA; and (c) GreenPoint's breaches of its representations and warranties (and LBHI's parallel representations and warranties) about the accuracy of the information it provided for inclusion in the Offering Document set forth in the Syncora Indemnification Agreement.

C.    LBHI Is Obligated To Reimburse Syncora Pursuant to the I&I Agreement, and to Pay Interest On Unpaid Amounts.

39.    Finally, the I&I Agreement's reimbursement provision requires LBHI to "pay to the Insurer [Syncora] any and all charges, fees, costs and expenses that the Insurer may

reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with … the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding (including insolvency proceeding in respect of any Transaction participant or any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such party) or the Transaction." I&I Agreement § 3.03(c). The I&I Agreement further provides that "[a]nything in this Insurance Agreement to the contrary notwithstanding, the Sponsor [LBHI] agrees to pay to the Insurer, and the Insurer shall be entitled to reimbursement from the Sponsor and shall have full recourse against the Sponsor for … any payment made under the Policy arising as a result of the Sponsor's failure to substitute for or deposit an amount in respect of any defective HELOC as required pursuant to Section 7 of the Sale Agreement …" I&I Agreement § 3.03(b). Moreover, any unpaid amounts owed by LBHI shall incur interest at a "Late Payment Rate" as defined in the I&I Agreement. See I&I Agreement § 3.03.

40.     Syncora has incurred substantial expenses in its investigation and re-underwriting efforts with respect to the Loans, in prosecuting the GreenPoint Litigation (including its own expenses and expenses of the Indenture Trustee which Syncora and CIFG are bearing), and in asserting claims in this bankruptcy litigation, entitling Syncora to reimbursement of expenses under the I&I Agreement from LBHI, as well as interest on unreimbursed amounts.

D.     Syncora Has Incurred Substantial Damages As A Result Of LBHI's Breaches of the I&I Agreement

41.     As set forth above, Syncora has suffered substantial losses and incurred substantial costs and expenses as a result of LBHI's widespread breaches of its representations and warranties in the I&I Agreement, and failure to comply with its indemnification and reimbursement

obligations thereunder.  To date, Syncora has paid claims of more than $458 million under the Policy and set aside additional amounts on account of anticipated future claims, entitling LBHI to indemnification under the terms of the I&I Agreement.

**Syncora's Claims Are Not Duplicative of the Indenture Trustee's Claim**

42.    LBHI's principal argument in support of its Objection to Syncora's Proof of Claim is that Syncora's claims are duplicative of the claims asserted by the Indenture Trustee in its Proof of Claim against LBHI.  This is incorrect, as Syncora's claims are plainly separate and distinct from the Indenture Trustee's.

43.    <u>First</u>, as noted above, the Indenture Trustee's claim is primarily based on LBHI's representations and warranties in the MLSAA concerning the quality of the Loans (which essentially reiterate GreenPoint's representations and warranties about the Loans).  Syncora's claim, on the other hand, is based on a separate and distinct agreement, namely, the I&I Agreement.  This fact alone precludes disallowance of Syncora's claim under the I&I Agreement.  Indeed, "the general legal principle that precludes double liability for a single injury or loss <u>has never</u> been applied by any court to void separate *contract* obligations owed to different parties under different contracts".  *In re Delta Air Lines Inc. et al.*, 370 B.R. 552, 557 (Bankr. S.D.N.Y. 2007) (emphasis added).

44.    LBHI's promises and covenants in the I&I Agreement are distinct from those it makes in the MLSAA.  While the I&I Agreement includes a representation by LBHI that LBHI's representations and warranties in the MLSAA (which is an "Operative Document") are accurate, (I&I Agreement § 2.01(k)) (LBHI states that no Operative Document contains "any statement of a material fact which was untrue or misleading in any material respect when made"), this is only part of what LBHI promises to Syncora in the I&I Agreement.  Indeed, LBHI also represented

18

and warranted to the accuracy of, or agreed to indemnify Syncora for misstatements in, the

Offering Document, the Syncora Indemnification Agreement, the Data Tape, and, more

generally, all "other material information relating to the Loans … furnished to the Insurer

[Syncora] in writing or in electronic form by the Sponsor [LBHI], the Issuer [the Trust] or the

Depositor [SASCO]".  I&I Agreement § 2.01(k); § 3.04.

45.    Thus, the notion that LBHI's obligations under the I&I Agreement are limited, as

LBHI argues (*see* Objection ¶¶ 21-23), to the accuracy of (i) LBHI's representations and

warranties about the Loans set forth in the MLSAA; and (ii) only for the period from July 28,

2006 through August 28, 2006, is plainly belied by the additional representations and indemnity

promises concerning the Offering Document and all of the Operative Documents set forth in the

I&I Agreement.  Moreover, the fact that LBHI re-warrants the information contained in the

MLSAA in the I&I Agreement itself demonstrates that LBHI intended to take on an additional

obligation thereby.

46.    Second, while the Indenture Trustee seeks in its claim compliance by LBHI with

its obligation to "cure or repurchase" defective Loans, Syncora's claims are contractual damages,

reimbursement and indemnification claims.  In this regard, Syncora is entitled to recover its

contractual damages, attorneys' fees, the costs of its re-underwriting efforts, and other expenses.

Even if the Indenture Trustee obtained a judgment on its claim against LBHI, Syncora would not

recover the entirety of its damages resulting from LBHI's breaches of contract.

47.    Third, even if the Indenture Trustee's and Syncora's claims were identical in all

respects -- which they are not -- disallowance of Syncora's Proof of Claim would still be

unwarranted.  Indeed, LBHI is simultaneously seeking dismissal of the Indenture Trustee's Proof

of Claim based on insufficient documentation, so its claim that "Syncora has subrogation rights

for any recovery by the Trust", Objection ¶ 16, is both disingenuous and  seriously undermined by the relief it seeks against the Indenture Trustee.  Moreover, LBHI's claim that Syncora "is attempting to recover for the same injury *three times*", Objection ¶ 17, is misleading.  Rather, Syncora simply seeks to recover damages caused to it by each of LBHI and GreenPoint.  Not only is it entirely uncontroversial for Syncora to proceed against both obligors, but any theoretical double recovery should not be prevented by complete disallowance of Syncora's claim -- which may unjustly deny Syncora *any* recovery -- and, in an event, would presumably be precluded by, among other things, the doctrine of mitigation of damages and the Court's ability to order an offset to prevent double recovery.  Indeed, Judge Rakoff recently found a similar argument "mystifying", even though the defendant advancing it had already obtained a judgment (which remained unsatisfied) against another party.  As Judge Rakoff explained, "While double recovery is barred, it is well-established that, until finally paid, a claimant may seek recovery of the same loss from two different parties."  *Federal Ins. Co. v. PGG Realty, LLC*, 529 F. Supp. 2d 460, 463 (S.D.N.Y. 2008); *see also Nova Int'l, Inc. v. Am. Express Bank, Ltd.*, 94 Civ. 8536, 1996 WL 39317 at \*5 (Jan. 31, 1996) (Chin, J.) ("a plaintiff is not required to make an election of remedies at the pleading stage");  Indeed, in the very case cited by LBHI in its Objection, *Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882 (Bankr. S.D.N.Y. 1993), the Court did not dismiss any of the competing creditors' claims in their entirety, but instead disallowed such claims only "to the extent [one creditor's] claim duplicate[d] [the other's]", and ordered an "offset" of one claim against another to prevent double recovery.  *Id.* at 894.

## Syncora Is Entitled To Reimbursement For Its Expenditures

48.     LBHI also seeks disallowance of Syncora's reimbursement claim in its Objection on the theory  because Syncora was dismissed from the GreenPoint Litigation, <u>all</u> of Syncora's expenditures in connection with the GreenPoint Litigation were necessarily unreasonable, and therefore not recoverable under Section 3.03(c) of the I&I Agreement.  This position is plainly unsupportable.

49.     <u>First</u>, that Syncora's limited third-party beneficiary claims were dismissed in the GreenPoint Litigation is without legal moment because dismissal based on a lack of standing does not constitute a ruling on the merits subject to res judicata effect.  *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (ruling that "a dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction … [and] has no res judicata effect…") Moreover, Syncora's motion seeking leave to replead and to amend its complaint to add direct claims against GreenPoint, including claims under the Syncora Indemnification Agreement, a procedure initiated by Justice Fried to "start this whole process anew" remains pending and underscores that Syncora's claims against GreenPoint have hardly been definitively dismissed. In any event, as noted in LBHI's Objection, the Indenture Trustee remains a party to the GreenPoint Litigation.  Given that Syncora has been and continues to make payments for the Indenture Trustee's attorneys' fees in the GreenPoint Litigation, these expenses are not only "reasonable" in their own right, but even under the narrow (and incorrect) reasonableness standard for which LBHI argues.

50.     <u>Second</u>, Syncora's reimbursable expenses are not limited to those incurred in connection with the GreenPoint Litigation, but also include substantial costs in monitoring and re-underwriting the Loans, funding the GreenPoint Litigation, and even participating in this

bankruptcy proceedings.  See I&I Agreement 3.03(c) (providing Syncora with right to reimbursement for expenses incurred in connection with "insolvency proceeding in respect of any Transaction participant or any affiliate thereof").  Thus, disallowing Syncora's reimbursement claim would not only be premature, but would deny Syncora an evidentiary hearing with respect to viable claims it has against LBHI under the I&I Agreement.

WHEREFORE, Syncora respectfully requests that the Court (i) overrule the Objection; (ii) allow the full amount of Syncora's claim; and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        October 17, 2011

                                    /s/ David A. Berger
                                 David A. Berger
                                 Michael S. Vogel
                                 Kevin L. MacMillan

                                 ALLEGAERT BERGER & VOGEL LLP
                                 111 Broadway, 20th Floor
                                 New York, New York  10006
                                 Telephone:  (212) 571-0550
                                 Fax:  (212) 571-0555

                                 Attorneys for Syncora Guarantee Inc.