INDEMNIFICATION AGREEMENT

between

XL CAPITAL ASSURANCE INC.,
as Insurer

LEHMAN BROTHERS INC.,
as Underwriter

and

GREENPOINT MORTGAGE FUNDING, INC.
as Originator

GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1
HOME EQUITY LOAN ASSET-BACKED NOTES, SERIES 2006-HE1

Dated as of August 22, 2006

## TABLE OF CONTENTS

(This Table of Contents is for convenience of reference only and shall not be deemed to be part of this Agreement. All capitalized terms used in this Agreement and not otherwise defined shall have the meanings set forth in Article I of this Agreement.)

|  |  | Page |
|---|---|---|
| SECTION 1. | DEFINED TERMS. | 1 |
| SECTION 2. | OTHER DEFINITIONAL PROVISIONS. | 3 |
| SECTION 3. | REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE UNDERWRITER. | 3 |
| SECTION 4. | REPRESENTATIONS AND WARRANTIES OF THE INSURER. | 4 |
| SECTION 5. | REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF THE ORIGINATOR. | 5 |
| SECTION 6. | INDEMNIFICATION. | 6 |
| SECTION 7. | CONTRIBUTION. | 8 |
| SECTION 8. | NOTICES. | 9 |
| SECTION 9. | MISCELLANEOUS. | 9 |

INDEMNIFICATION AGREEMENT, dated as of August 22, 2006, by and among XL Capital Assurance Inc., as insurer (the "Insurer"), Lehman Brothers Inc., as underwriter (the "Underwriter") and GreenPoint Mortgage Funding, Inc., as originator (the "Originator").

**Section 1.    Defined Terms.**

Unless the context clearly requires otherwise, all capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement or Financial Guaranty Insurance Policy No. CA03248A issued by the Insurer in favor of the Indenture Trustee (the "Policy"). For purposes of this Indemnification Agreement, the following terms shall have the following meanings:

"ABS ICM" means any ABS Informational and Computational Materials as such term is defined in Section 1101 of Regulation AB of the Securities Act.

"Agreement" means this Indemnification Agreement, as amended, supplemented or otherwise modified from time to time.

"Depositor" means Structured Asset Securities Corporation.

"Free Writing Prospectus" means the Free Writing Prospectus dated as of August 22, 2006 in respect of the Offered Notes.

"Indemnified Party" means any party entitled to indemnification or contribution pursuant to Section 6 of this Agreement.

"Indemnifying Party" means any party required to provide indemnification or contribution pursuant to Section 6 of this Agreement.

"Indenture" means that certain Indenture, dated as of August 1, 2006, by and between the Issuing Entity and U.S. Bank National Association.

"Insured Notes" means the GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Class Ax Notes.

"Insurer" means XL Capital Assurance Inc., or any successor thereto, as issuer of the Policy.

"Insurer Information" means the information in the Free Writing Prospectus and the Prospectus Supplement regarding the Insurer and set forth under the heading "The Insurers and the Policies-XL Capital Assurance Inc." and "—Policy of XL Capital Assurance Inc."

"Insurer Party" means any of the Insurer, any director, officer, employee or agent of the Insurer, and any Person that controls the Insurer within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act.

"Issuing Entity" means GreenPoint Mortgage Funding Trust 2006-HE1.

"Losses" means (a) any actual damages incurred by an Indemnified Party and (b) any out-of-pocket costs or expenses reasonably incurred by an Indemnified Party, including the fees and expenses of its counsel and any other costs and expenses incurred in connection with investigating or defending any claim, action or other proceeding as to which such party is entitled to indemnification or contribution hereunder (subject to the limitations set forth in Section 5 of this Agreement), to the extent not paid, satisfied or reimbursed from funds provided by any other Person other than an affiliate of such Indemnified Party.

"Mortgage Loan Sale Agreement" has the meaning given to such term in the Transfer and Servicing Agreement.

"Offered Notes" means the GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Class Ax and Class Ac Notes.

"Offering Document" means the Free Writing Prospectus, the Prospectus Supplement and related Prospectus, dated August 11, 2006, in respect of the Offered Notes and any amendment or supplement thereto, and any other offering document in respect of the Offered Notes that makes reference to the Policy.

"Operative Documents" means this Indemnification Agreement, the Class Ax Insurance Agreement, the Securities, the Certificate of Trust the Transfer and Servicing Agreement, the Custodial Agreement, the Sale Agreement, the Assignment and Assumption Agreement, the Trust Agreement, the Administration Agreement, the Indenture and each other document contemplated by any of the foregoing to which the Depositor, the Owner Trustee, the Administrator, the Indenture or the Issuer is a party.

"Originator Party" means the Originator, any director, officer, employee or agent of the Originator, and any Person that controls the Originator within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act

"Policy" means, with respect to the Insured Notes, the financial guaranty insurance policy, number CA03248A, issued by XLCA.

"Prospectus Supplement" means the Prospectus Supplement, dated August 25, 2006, to the Prospectus, dated August 11, 2006, in respect of the Offered Notes.

"Regulation AB" means Regulation AB promulgated under the Securities Act.

"Transfer and Servicing Agreement" means that certain Transfer and Servicing Agreement, dated as of August 1, 2006, among the Depositor, the Servicer, the Issuer and U.S. Bank Nation Association, as Indenture Trustee.

"Securities Act" means the Securities Act of 1933, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Securities Exchange Act" means the Securities Exchange Act of 1934, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

2

"Underwriter" means Lehman Brothers Inc.

"Underwriter Information" has the meaning given such term in Section 3(b).

"Underwriter Party" means the Underwriter, any director, officer, employee or agent of the Underwriter, and any Person that controls the Underwriter within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act.

"XLCA" means XL Capital Assurance Inc.

**Section 2.    Other Definitional Provisions.**

The words "hereof," "herein" and "hereunder" and words of similar import when used in this Indemnification Agreement shall refer to this Indemnification Agreement as a whole and not to any particular provision of this Indemnification Agreement, and Section, subsection, Schedule and Exhibit references are to this Indemnification Agreement unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."

**Section 3.    Representations, Warranties and Agreements of the Underwriter.**

The Underwriter represents and warrants to the Insurer, and agrees with the Insurer, as of the Closing Date as follows:

(a)    Offering Document. The Underwriter will not use, or distribute to other broker-dealers for use, any Offering Document in connection with the offer and sale of the Offered Notes unless such Offering Document includes such information relating to the Insurer as has been furnished by the Insurer for inclusion therein and has been approved by the Insurer. The Offering Document contains such information as of the dates stated therein. For purposes of this Section 3(a), the Offering Document shall not be deemed to include any ABS ICM other than the ABS ICM which is included in the Free Writing Prospectus.

(b)    Underwriter Information. The second to the last paragraph on the cover page of the Free Writing Prospectus and the Prospectus Supplement and the second, fourth and fifth paragraphs under the heading "Underwriting" in the Prospectus Supplement (the "Underwriter Information") shall be true and correct in all material respects.

(c)    Compliance with Laws. The Underwriter will comply in all material respects with all legal requirements in connection with its offers and sales of the Offered Notes and will make such offers and sales in the manner provided in the Offering Document.

3

**Section 4.  Representations and Warranties of the Insurer.**

The Insurer represents and warrants to, and agrees with, the Underwriter as of the Closing Date or such other date as specified below, as follows:

(a) <u>Organization and Licensing</u>. The Insurer is a duly incorporated and existing New York stock insurance company licensed to do business in the State of New York and is in good standing under the laws of such state.

(b) <u>Corporate Power</u>. The Insurer has the corporate power and authority to issue the Policy, execute and deliver this Agreement and perform all of its obligations hereunder and thereunder.

(c) <u>Authorization; Approvals</u>. The issuance of the Policy and the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate proceedings. No further approvals or filings of any kind, including, without limitation, any further approvals of or further filings with any governmental agency or other governmental authority, or any approval of the Insurer's board of directors or stockholders, are necessary for the Policy, this Agreement and the Insurance Agreement to constitute the legal, valid and binding obligations of the Insurer.

(d) <u>Enforceability</u>. The Policy, when issued, and this Agreement will each constitute a legal, valid and binding obligation of the Insurer, enforceable in accordance with its terms, subject to applicable laws affecting the enforcement of creditors' rights generally.

(e) <u>Financial Information</u>. As of the date of the Prospectus Supplement and as of the Closing Date, in the case of financial statements of the Insurer attached to the Free Writing Prospectus and incorporated by reference into the Prospectus Supplement on its date (the "<u>Insurer Financial Statements</u>"), fairly present in all material respects the financial condition of the Insurer as of the dates referenced therein and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied, and, since the date of the last such financial statements there has been no material change in such financial condition of the Insurer which would materially and adversely affect its ability to perform its obligations under the Policy.

(f) <u>Insurer Information and Policy Information</u>. The Insurer Information and the Policy Information is limited due only to the fact that the Insurer is not the registrant under the Securities Act of 1933 in the transaction described in the Free Writing Prospectus and the Prospectus Supplement and, therefore, does not purport to provide the scope of disclosure required to be included in a prospectus under the Securities Act of 1933, in connection with the public offer and the sale of securities of the Insurer, if Insurer were the registrant. Within such limited scope of disclosure, neither the Insurer Information nor the Policy Information contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

4

(g)   <u>Policy Exempt from Registration</u>.  The Policy is exempt from registration under the Securities Act.

**Section 5.   Representations, Warranties and Agreements of the Originator.**

(a)   *Due Organization and Qualification*.  The Originator is a corporation duly organized, validly existing and in good standing under the laws of its state of jurisdiction. The Originator is duly qualified to do business, is in good standing and has obtained all necessary licenses, permits, charters, registrations and approvals (together, "approvals") necessary for the conduct of its business as currently conducted and as described in the Offering Document and the performance of its obligations under the Operative Documents to which it is a party in each jurisdiction in which the failure to be so qualified or to obtain such approvals would render any Operative Document to which it is a party unenforceable in any respect or would have a material adverse effect upon the Transaction.

(b)   *Power and Authority*.  The Originator has all necessary power and authority to conduct its business as currently conducted and as described in the Offering Document, to execute, deliver and perform its obligations under the Operative Documents to which it is a party and to consummate the Transaction.

(c)   *Due Authorization*.  The execution, delivery and performance of the Operative Documents to which it is a party by the Originator have been duly authorized by all necessary action and do not require any additional approvals or consents, or other action by or any notice to or filing with any Person, including any governmental entity or any of the stockholders or beneficial owners, as applicable, of the Originator, which have not previously been obtained or given by the Originator.

(d)   *Valid and Binding Obligations*.  The Operative Documents to which it is a party, when executed and delivered by the Originator will constitute the legal, valid and binding obligations of the Originator, enforceable in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and general equitable principles and public policy considerations as to rights of indemnification for violations of federal securities laws.

(e)   *Enforceability*.  This Indemnification Agreement constitutes a legal, valid and binding obligation of the Originator, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, receivership and other similar laws affecting creditors' rights generally and by general principles of equity and subject to principles of public policy limiting the right to enforce the indemnification provisions contained therein and herein, insofar as such provisions relate to indemnification for liabilities arising under federal securities laws.

(f)   *Originator Information*.  All material provided in writing to the Depositor for inclusion in the Offering Document (as revised from time to time, and as included in such Offering Document or any other Offering Document) (the "Originator Information") shall be true and correct in all material respects.

5

**Section 6.    Indemnification.**

(a)    The Insurer agrees, upon the terms and subject to the conditions provided herein, to indemnify, defend and hold harmless each Underwriter Party and Originator Party against (i) any and all Losses incurred by such Underwriter Party and Originator Party with respect to the offer and sale of the Offered Notes and resulting from the Insurer's breach of any of its representations, warranties or agreements set forth in Section 4 hereof and (ii) any and all Losses to which any Underwriter Party or Originator Party may become subject, under the Securities Act, the Securities Exchange Act or otherwise, insofar as such Losses arise out of or result from an untrue statement of a material fact contained in the Offering Document or the omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, in each case to the extent, but only to the extent, that such untrue statement was made in or such omission was made from the Insurer Information or the Policy Information included in the Prospectus Supplement in accordance with the provisions hereof.

(b)    The Underwriter agrees, upon the terms and subject to the conditions provided herein, to indemnify, defend and hold harmless each Insurer Party against (i) any and all Losses incurred by it and resulting from the Underwriter's breach of any of its representations warranties or agreements set forth in Section 3 hereof and (ii) any and all Losses to which any of the Insurer Parties may become subject, under the Securities Act, the Securities Exchange Act or otherwise, insofar as such Losses arise out of or result from an untrue statement of a material fact contained in the Offering Document or the omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, in each case to the extent, but only to the extent, that such untrue statement was made in or such omission was made from the Underwriter Information provided by such Underwriter for inclusion in the Prospectus Supplement.

(c)    The Originator agrees, upon the terms and subject to the conditions provided herein, to indemnify, defend and hold harmless each Insurer Party against (i) any and all Losses incurred by it and resulting from the Originator's breach of any of its representations warranties or agreements set forth in Section 4 hereof, (ii) any and all Losses incurred by such Insurer Party (including claims made under the Policy) resulting from the Originator's failure to cure, repurchase or substitute for any of the Loans upon breach of a representation and warranty with respect thereto, as, when and to the extent required pursuant to the terms of the Mortgage Loan Sale Agreements and (iii) any and all Losses to which any of the Insurer Parties may become subject, under the Securities Act, the Securities Exchange Act or otherwise, insofar as such Losses arise out of or result from an untrue statement of a material fact contained in the Offering Document or the omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, in each case to the extent, but only to the extent, that such untrue statement was made in or such omission was made from the Originator Information provided by the Originator for inclusion in the Offering Document.

6

(d)     Upon the incurrence of any Losses for which a party is entitled to indemnification hereunder, the Indemnifying Party shall reimburse the Indemnified Party promptly upon establishment by the Indemnified Party to the Indemnifying Party of the Losses incurred.

(e)     If any action or proceeding (including any governmental investigation) shall be brought or asserted against any Person (individually, an "Indemnified Party" and, collectively, the "Indemnified Parties") in respect of which the indemnity provided in Section 6(a), 6(b) or 6(c) may be sought from the Insurer, the Originator or the Underwriter, as the case may be (each, an "Indemnifying Party") hereunder, each such Indemnified Party shall promptly notify the Indemnifying Party in writing, and the Indemnifying Party shall pay the costs and expenses of defending such action or proceeding, and shall have the option to assume the defense thereof, including the employment of counsel satisfactory to the Indemnified Party and the payment of all expenses.  If the Indemnifying Party exercises its option to assume the defense of any such action or proceeding, the Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof at the expense of the Indemnified Party; *provided, however,* that the fees and expenses of such separate counsel shall be at the expense of the Indemnifying Party if (i) the Indemnifying Party has agreed to pay such fees and expenses, (ii) the Indemnifying Party shall have failed to assume the defense of such action or proceeding and employ counsel reasonably satisfactory to the Indemnified Party in any such action or proceeding or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both the Indemnified Party and the Indemnifying Party, and the Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for the Indemnified Parties, which firm shall be designated in writing by the Indemnified Party).  The Indemnifying Party shall not be liable for any settlement of any such action or proceeding effected without its written consent to the extent that any such settlement shall be prejudicial to the Indemnifying Party, but, if settled with its written consent, or if there is a final judgment for the plaintiff in any such action or proceeding with respect to which the Indemnifying Party shall have received notice in accordance with this subsection (e), the Indemnifying Party agrees to indemnify and hold the Indemnified Parties harmless from and against any loss or liability by reason of such settlement or judgment.

7

**Section 7.    Contribution.**

(a)    To provide for just and equitable contribution if the indemnification provided by any Indemnifying Party is determined to be unavailable for any Indemnified Party (other than due to application of this Section), each Indemnifying Party shall contribute to the Losses arising from any breach of any of its representations, warranties or agreements contained in this Agreement on the basis of the relative fault of each of the parties as set forth in Section 8(b) below; *provided, however*, that an Indemnifying Party shall in no event be required to contribute to all Indemnified Parties an aggregate amount in excess of the Losses incurred by such Indemnified Parties resulting from the breach of representations, warranties or agreements contained in this Agreement.

(b)    The relative fault of each Indemnifying Party, on the one hand, and of each Indemnified Party, on the other, shall be determined by reference to, among other things, whether the breach of, or alleged breach of, any representations, warranties or agreements contained in this Agreement relates to information supplied by, or action within the control of, the Indemnifying Party or the Indemnified Party and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such breach.

(c)    The parties agree that the Insurer shall be solely responsible for the Insurer Information, the Underwriter shall be solely responsible for the Underwriter Information and the Originator shall be solely responsible for the Originator Information.

(d)    Notwithstanding anything in this Section 7 to the contrary, none of the Insurer or the Underwriter shall be required to contribute an amount in excess of the amount by which such party's compensation exceeds the amount of any damages that such party otherwise has been required to pay in respect of an untrue statement or omission of material fact.

(e)    No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

(f)    Upon the incurrence of any Losses for which a party is entitled to contribution hereunder, the contributor shall reimburse the party entitled to contribution promptly upon establishment by the party entitled to contribution to the contributor of the Losses incurred.

**Section 8.     Notices.**

All demands, notices and other communications to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered and telecopied to the recipient as follows:

    (a)    To the Insurer:

        XL Capital Assurance Inc.
        1221 Avenue of the Americas
        New York, New York  10020-1001
        Attention:     Surveillance
        Facsimile:     (212) 478-3587
        Confirmation:  (212) 478-3400

    (b)    To the Underwriter:

        Lehman Brothers Inc.
        745 Seventh Avenue
        New York, New York 10019

    (c)    To the Originator:

        GreenPoint Mortgage Funding, Inc.
        100 Wood Hollow Drive
        Novato, California 94945

A party may specify an additional or different address or addresses by writing mailed or delivered to the other parties as aforesaid. All such notices and other communications shall be effective upon receipt.

**Section 9.     Miscellaneous.**

    (a)    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws provisions thereof, other than Sections 5-1401 and 5-1402 of the New York General Obligations Law).

    (b)    <u>Assignments</u>. This Agreement may not be assigned by any party without the express written consent of each other party. Any assignment made in violation of this Agreement shall he null and void.

    (c)    <u>Amendments</u>. Amendments of this Agreement shall be in writing signed by each party hereto.

    (d)    <u>Survival, Etc.</u> The indemnity and contribution agreements contained in this Agreement shall remain operative and in full force and effect, regardless of (i) any

investigation made by or on behalf of any Indemnified Party, (ii) the issuance of the Offered Notes or (iii) any termination of this Agreement or the Policy.

(e) <u>Counterparts</u>. This Agreement may be executed in counterparts by the parties to this Agreement, and all such counterparts shall constitute one and the same instrument.

(f) <u>Severability</u>. In the event that any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the parties hereto agree that such holding shall not invalidate or render unenforceable any other provision hereof. The parties hereto further agree that the holding by any court of competent jurisdiction that any remedy pursued by any party hereto is unavailable or unenforceable shall not affect in any way the ability of such party to pursue any other remedy available to it.

(g) <u>Consent to Jurisdiction</u>. The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York seated in Manhattan and any court in the State of New York located in the City of New York, Borough of Manhattan, and any appellate court from any thereof, in any action, suit or proceeding brought against it and to or in connection with this Agreement or any of the transactions contemplated hereunder or for recognition or enforcement of any judgment, and the parties hereto hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard or determined in such New York court or, to the extent permitted by law, in such federal court. The parties hereto agree that a final unappealable judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. To the extent permitted by applicable law, the parties hereto hereby waive and agree not to assert by way of motion, as a defense or otherwise in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that the related documents or the subject matter thereof may not be litigated in or by such courts. To the extent permitted by applicable law, the parties hereto shall not seek and hereby waive the right to any review of the judgment of any such court by any court of any other nation or jurisdiction which may be called upon to grant an enforcement of such judgment. Nothing contained in this Agreement shall limit or affect any party's right to serve process in any other manner permitted by law or to start legal proceedings relating to this Agreement against any other party or its properties in the courts of any jurisdiction.

(h) <u>Headings</u>. The headings of Sections and the Table of Contents contained in this Agreement are provided for convenience only. They form no part of this Agreement and shall not affect its construction or interpretation. Unless otherwise indicated, all references to Sections in this Agreement refer to the corresponding Sections of this Agreement.

(i) <u>Trial by Jury Waived</u>. Each party hereby waives, to the fullest extent permitted by law, any right to a trial by jury in respect of any litigation arising directly or

10

indirectly out of, under or in connection with this Agreement or any of the transactions contemplated thereunder. Each party hereto (A) certifies that no representative, agent or attorney of any party hereto has represented, expressly or otherwise, that it would not, in the event of litigation, seek to enforce the foregoing waiver and (B) acknowledges that it has been induced to enter into this Agreement by, among other things, this waiver.

(j) <u>Limited Liability</u>. No recourse under this Agreement shall be had against, and no personal liability shall attach to, any officer, employee, director, affiliate or shareholder of any party hereto, as such, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute or otherwise in respect hereof, it being expressly agreed and understood that this Agreement is solely a corporate obligation of each party hereto, and that any and all personal liability, either at common law or in equity, or by statute or constitution, of every such officer, employee, director, affiliate or shareholder for breaches of any party hereto of any obligations hereunder is hereby expressly waived as a condition of and in consideration for the execution and delivery of this Agreement.

(k) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof and supersedes and replaces any agreement or understanding that may have existed between the parties prior to the date hereof in respect of such subject matter.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

**XL CAPITAL ASSURANCE INC.,**
as Insurer

By: *[signature]*

Name: _____

Title: _____

**GREENPOINT MORTGAGE FUNDING, INC.,**
as Originator

By: _____

Name: _____

Title: _____

**LEHMAN BROTHERS INC.,**
as Underwriter

By: _____

Name: _____

Title: _____

*(Signature Page to Indemnification Agreement - Greenpoint 2006-HE1)*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

**XL CAPITAL ASSURANCE INC.,**
as Insurer

By:_____

Name: _____

Title: _____

**GREENPOINT MORTGAGE FUNDING, INC.,**
as Originator

By: *[signature]*

Name: Susan Davia

Title: V.P.

**LEHMAN BROTHERS INC.,**
as Underwriter

By:_____

Name: _____

Title: _____

*(Signature Page to Indemnification Agreement - Greenpoint 2006-HE1)*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

**XL CAPITAL ASSURANCE INC.,**
as Insurer

By:_____

Name: _____

Title: _____

**GREENPOINT MORTGAGE FUNDING, INC.,**
as Originator

By:_____

Name: _____

Title: _____

**LEHMAN BROTHERS INC.,**
as Underwriter

By: _____

Name: _____Thomas J. O'Hara_____

Title: _____Managing Director_____

*(Signature Page to Indemnification Agreement - Greenpoint 2006-HE1)*