**JULIEN & SCHLESINGER, P.C.**
One Whitehall Street
17th Floor
New York, NY 10004
(212) 962-8020

**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

*Attorneys for Claimants: Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), and David I. Weiner (Claim No. 18314).*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., et al. | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------x

## CLAIMANTS' OPPOSITION TO DEBTORS' ONE HUNDRED EIGHTEENTH OMNIBUS OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)

### PRELIMINARY STATEMENT

Claimants, Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929)[1], Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Christian Reynolds (28442)[2], Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711) and David I. Weiner (Claim No. 18314) (collectively the "Neuberger Claimants"),

---

[1] Ms. Kenney joins in this memorandum of law in opposition to Debtor's Seventy Third Omnibus Objection to Claims as a supplement to her previously filed response (Docket No. 13865).
[2] Mr. Reynolds' previous response (Docket No. 17153) is incorporated and supplemented herein.

submit this memorandum of law in opposition to Debtors' One Hundred Eighteenth Omnibus Objection to Claims, which includes the claims made by the Neuberger Claimants. As demonstrated below, the Neuberger Claimants' claims should not be reclassified as equity interests, because the Neuberger Claimants were never afforded the opportunity to fairly negotiate their employment and compensation contracts with Lehman Brothers Holdings, Inc. ("Lehman"), when their original employer, Neuberger Berman, Inc. ("NB" or "Neuberger Berman") was acquired by Lehman. Instead, they were presented with the Hobson's choice of **either** starting employment at Lehman and, therefore, having their previously earned compensation converted into an interest-free loan to Lehman, having a significant portion of their currently earned compensation withheld from them for at least five years, and in order to maintain the billions of dollars of assets under their management and continue the client relationships they had cultivated over the course of many years **or** seeking new employment, forsaking millions of dollars worth of previously earned, but yet unpaid, compensation from NB and losing their entire book of business.

Now, this bankruptcy matter (prompted directly by Lehman's fraudulent conduct), serves as the venue through which the Neuberger Claimants are seeking restitution for their claims sounding in breach of contract or, alternatively, in the quasi-contractual relief of quantum meruit and unjust enrichment. The sums owed to the Neuberger Claimants make them creditors of Lehman and their claims are not appropriate for subordination under Section 501(b) of the Bankruptcy Code. For these reasons, Debtor's Objections, as against the Neuberger Claimants, should be denied.

2

## BACKGROUND

Neuberger Berman is an investment management firm that has provided financial services to high net worth individuals and institutional investors since it was founded in 1939. The Neuberger Claimants are all currently Managing Directors who joined Neuberger Berman between 1961 and 2002. Managing Directors at Neuberger Berman are charged with heading different groups and managing the growth of each client's assets within those groups. Neuberger Berman has a long standing history of attracting and retaining superior portfolio management talents who have a singular objective to deliver excellent performance results to clients. All of the Neuberger Claimants maintain the portfolios of high net worth and institutional clients who chose Neuberger Berman and its Managing Directors to provide investment management, financial planning, fiduciary and trust services. These high net worth and institutional clients chose to invest with Neuberger Berman based upon the management's reputation for trust and Neuberger Berman's mission where "clients come first" and "the singular investment focus is to deliver long-term performance."[3] The reputation of Neuberger Berman and the success of its Managing Directors is reflected in the high retention rate of Neuberger Berman clients, which is estimated at nearly 95%. Not only do the Managing Directors play a vital role in the retention of Neuberger Berman's clients, but their compensation is locked into the growth of the clients' portfolios.

Lehman acquired Neuberger Berman on October 31, 2003 for approximately $2.6 billion in cash and securities. Through the acquisition of Neuberger Berman and its high net worth clients, Lehman added $67 billion of assets under its management. This helps explain

---

[3] See Neuberger Berman website, www.nb.com/our_mission

3

why Neuberger Berman was considered to be the "Crown Jewel" of Lehman.[4] At the time of the acquisition in 2003, the Neuberger Claimants had been working for Neuberger Berman for an aggregate of over 100 years, and had developed and managed substantial books of high net worth and institutional clients and asset management groups for Neuberger Berman, all of which would come under the umbrella of Lehman's new assets under management.

The books of business managed by the Neuberger Claimants were a valuable commodity to Lehman and were heavily influenced by the Neuberger Berman Managing Directors' past performance. Prior to the acquisition and during the transition period from Neuberger Berman to Lehman, most of the Managing Directors, including most of the Neuberger Claimants, were required to participate in the Neuberger Berman Long Term Incentive 85/15 Plan ("LTIP 85/15"). Under the LTIP 85/15, Managing Directors would receive 85% of their 2002 portfolio compensation in cash and 15% of their portfolio compensation would be withheld. The 15% withheld would then be paid over the next five-year period, 1/5 per year, with no interest. Essentially, the prior Neuberger Berman Managing Directors were required to loan money from their earned compensation to Neuberger Berman interest free. In transitioning from Neuberger Berman to Lehman and accepting the LTIP 85/15, the Neuberger Claimants became obligated to remain in the employ of Lehman in order to recover their total 2002 compensation.

The Neuberger Berman Managing Directors, including the Neuberger Claimants, were also entitled to receive the LTIP Retention Award. The LTIP Retention Award was a bonus given to Managing Directors who "chose" to remain employed at Lehman. The LTIP Retention Award included a non-solicit and non-compete clause, which further handcuffed the Neuberger Claimants to Lehman and to forfeit a percentage of their earnings and compensation.

---

[4] *See e.g.* The Nine Lives of Neuberger Berman Management, Wall Street Journal, December 4, 2008.

4

While some Neuberger Claimants had been Partners at the time of Neuberger Berman's IPO in 1999 and were already subject to such restrictive covenants, the LTIP Retention Award created additional restrictions. In fact, there really was no "choice" but to accept the LTIP Retention Award because the Managing Directors' book of business was already transferred from NB to Lehman, and failure to accept the LTIP Retention Award would result in the forfeiture of an aggregate of over 100 years of work, the growth of their clients' assets, and the relationship of trust between client and Managing Director. Essentially, the Neuberger Claimants were compelled to work for Lehman because their books of business were not only bound financially in the myriad of investments they had made on their clients' behalf, but also because these books of business were bound by their clients' desire to work with the Neuberger Claimants along with Neuberger Berman, the institution. The LTIP Retention Award only further guaranteed that the Neuberger Claimants could not leave their employ with Lehman without forsaking the basis of their entire livelihood.

In addition to the LTIP 85/15 and the LTIP Retention Award and, in order to continue at Lehman, all Managing Directors, including the Neuberger Claimants, were required to participate in the mandatory Lehman Equity Award Program. ("Equity Award Program") Under the Equity Award Program, all Managing Directors received a portion of their total compensation in conditional awards, a combination of restricted stock units ("RSUs") and stock options ("Options"). Up to 50% of the Managing Directors' compensation was to be paid in RSUs and/or Options which would not fully vest for five years and did not vest at all if employment ceased at Lehman. The RSUs would convert to Lehman common stock on the share payment date, provided that the Managing Director did not engage in any detrimental activity through that date and continued as an Lehman employee.

The LTIP 85/15, LTIP Retention Award and the Equity Award Program were presented to the Neuberger Claimants on a take it or leave it basis. Each of the Neuberger Claimants was presented with the choice of **either** leaving Neuberger Berman and forfeiting their longstanding client relationships and books of business valued at billions of dollars in assets, **or** acquiescing to the LTIP 85/15, LTIP Retention Award, and mandatory participation in the Equity Award Program. Each of the Neuberger Claimants was essentially forced to participate in the Equity Award Program, which withheld up to 50% of their yearly compensation for up to five years, in order to continue to cultivate their client relationships and books of business that they had worked for so many years to build up and which made Neuberger Berman such an attractive firm to acquire. The majority of the Neuberger Claimants' compensation held in RSU's never vested, and the Neuberger Claimants were, therefore, never fully compensated for their labors between 2003 until 2008, while Neuberger Berman was under the umbrella of Lehman. As of today, each of the Neuberger Claimants has claims for compensation based upon his or her outstanding and withheld compensation from 2003 until 2008, as well as for 1/5 of LTIP 85/15 and 1/5 the LTIP Retention Award that had not vested when Lehman filed for bankruptcy.

The following claims are based upon each individual claimant's earned and withheld compensation at Neuberger Berman and Lehman since the acquisition and the RSUs currently withheld by the Neuberger Claimants' mandatory participation in the Equity Program under the Lehman vesting schedule:

### Richard J. Glasebrook II (Claim No. 9682)

Mr. Glasebrook began his employment with NB in 2003 and is currently a Managing Director in the Straus Group. The Straus Group managed $6,314,914,207.00 worth of assets on December 31, 2003, which grew to $17,462,787,020.00 by December 31, 2007.

Mr. Glasebrook participated in the LTIP 85/15 and the LTIP Retention Award after Lehman's acquisition of NB in 2003. In the period from 2004 from 2008 Mr. Glasebrook earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Glasebrook is a Lehman creditor and has a claim in the amount of $20,129,666.00 based on deferred compensation, employee related stock units and pension benefits.

### Judith Ann Kenney (Claim No. 13929)[5]

Ms. Kenney began her employment with NB in 1988 and is currently a Managing Director in the Wealth Management Group.

Ms. Kenney participated in the LTIP 85/15 and the LTIP Retention Award after Lehman's acquisition of NB in 2003. In the period from 2004 from 2008 Ms. Kenney earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Ms. Kenney is a Lehman creditor and has a claim in the amount of $790,327.00 based on the employee mandatory contribution to the stock purchase plan and deferred compensation.

---

[5] *See* Footnote 2, above.

### Richard Nackenson (Claim No. 13968)

Mr. Nackenson began his employment with NB on December 30, 1999. Mr. Nackenson joined NB as a Portfolio Manager of the Ganek Nackenson Group and became a Managing Director of NB in 2002. Mr. Nackenson successfully transitioned, maintained, and grew an independent group within the firm, increasing the assets under management from $636,723,741.00 on December 31, 2003 to $1,504,166,389.00 on December 31, 2007. Mr. Nackenson is currently the Senior Portfolio Manager of the Nackenson Group.

Mr. Nackenson participated in the LTIP 85/15 and the LTIP Retention Award after Lehman's acquisition of NB in 2003. In the period from 2004 from 2008 Mr. Nackenson earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Mr. Nackenson is a Lehman creditor and has a claim in the amount of $6,473,275.00 based on compensation as an employee, restricted stock units, wages earned, employee priority, and deferred compensation.

### Henry Ramallo (Claim No. 17607)

Mr. Ramallo began his employment with NB on December 27, 1993 and became a Managing Director on January 1, 2003. Mr. Ramallo became a partner in the Straus Group in January 2005 and is currently a Managing Director in the Straus Group. The Straus Group managed $6,314,914,207.00 worth of assets on December 31, 2003 and grew to $17,462,787,020.00 by December 31, 2007.

Mr. Ramallo participated in the LTIP 85/15 and the LTIP Retention Award. In the period from 2004 from 2008 Mr. Ramallo earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant

bankruptcy. Mr. Ramallo is a Lehman creditor and has a claim in the amount of $8,654,989.94 based on restricted compensation.

### Christian Reynolds (Claim No. 28442)

Mr. Reynolds began his employment with NB in 1994 and is currently a Managing Director in the Better Reynolds Group. Mr. Reynolds managed $707 million in assets in 2003.

Mr. Reynolds participated in the LTIP 85/15 and the LTIP Retention Award. In the period from 2004 from 2008 Mr. Reynolds earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Mr. Reynolds is a Lehman creditor and has a claim in the amount of $1,044.547.00 based on restricted compensation.

### Marvin C. Schwartz (Claim No. 20244)

Mr. Schwartz began his employment with NB in 1961 and was a partner at the time of the IPO. Mr. Schwartz is a Managing Director and a member of the Straus Group. The Straus Group managed $6,314,914,207.00 worth of assets on 12/31/03 and grew to $17,462,787,020.00 by 12/31/07.

Mr. Schwartz participated in the LTIP 85/15. In the period from 2004 from 2008 Mr. Schwartz earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Mr. Schwartz is a Lehman creditor.

### Stephanie J. Stiefel (Claim No. 21711)

Ms. Stiefel began her employment with NB in September 1990 in the Private Asset Management Division. Ms. Stiefel became a Partner of NB on May 1, 1999 and a Managing Director on October 7, 1999 following the IPO. She acted as the head of the Private Asset Management Advisory business from 1999 until April 2007, and during those years, Ms. Stiefel helped grow the division from approximately $3 billion in assets to over $16 billion. Ms. Stiefel became a member of the Straus Group in April 2007. The Straus Group managed $6,314,914,207.00 worth of assets on December 31, 2003 within grew to $17,462,787,020.00 by December 31, 2007.

Ms. Stiefel was part of the initial NB IPO and participated in the LTIP Retention Award. In the period from 2004 from 2008 Ms. Stiefel earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Ms. Stiefel is a Lehman creditor and has a claim in the amount of $3,097,980.60 based on compensation as an employee and restricted stock units.

### David I. Weiner (Claim No. 18314)

Mr. Weiner began his employment with NB on February 7, 1994. Mr. Weiner became a partner of NB on January 1, 1997 and became a Managing Director on October 7, 1999. Mr. Weiner is currently a Managing Director in the Straus Group. The Straus Group managed $6,314,914,207.00 worth of assets on December 31, 2003 which grew to $17,462,787,020.00 by December 31, 2007.

Mr. Weiner participated in the LTIP 85/15. In the period from 2004 from 2008 Mr. Weiner earned production compensation, of which up to 50% was withheld by Lehman as an RSU, and which never fully vested due to the instant bankruptcy. Mr. Weiner is a Lehman creditor and has a claim in the amount of $15,684,379.91 based on earned compensation.

## ARGUMENT

### A. The Neuberger Claimants' Claims Do Not Stem From Purchased Shares.

As described above, the Neuberger Claimants were all Managing Directors of NB at the time it was acquired by Lehman in 2003. At that time, each was owed substantial sums under the LTIP 85/15, arising from their prior services to NB, and/or the LTIP Retention Award, arising from the acquisition, that had not yet vested and would not vest if the Neuberger Claimants ceased employment at Lehman following the acquisition. The Neuberger Claimants' substantial unpaid earned compensation held by the LTIP 85/15 was transferred to Lehman upon the acquisition and, as a result, the Neuberger Claimants were held hostage, because they had no choice but to continue, as employees of Lehman in order to receive their past, substantial compensation as employees of NB.

Perhaps more important, the Neuberger Claimants were compelled to remain in the employ of Lehman in order to retain their substantial books of business worth billions of dollars that they had spent decades cultivating and building. Apart from any restrictive covenants, it is unlikely that, as Managing Directors and substantial shareholders of NB that had sold NB's "good will" to Lehman, the Neuberger Claimants could lawfully seek to retain or solicit any of their existing clients if they decided to leave Lehman, *see, e.g., Bessemer Trust Co., N.A. v. Branin*, 16 N.Y.3d 549 (2011); *compare, e.g., Frank v. Wesco Distributors, Inc.*, 68

A.D.3d 641, 892 N.Y.S.2d 348 (1st Dept. 2009). For example, Claimant Marvin Schwartz, NB's most powerful and profitable Managing Director, sold 4.3 million shares of NB to Lehman. He hardly could solicit or retain a NB client if he subsequently chose to work somewhere other than at Lehman. Moreover, the fact that NB traditionally retained almost 95% of its business, would have made any such attempts virtually impossible, especially in light of NB then joining forces with the then respected, and then apparently very solvent, Lehman.

Following the merger, and in order to keep their respective books of business and to realize their past substantial compensation, the Neuberger Claimants became subject to the Lehman compensation scheme for Managing Directors that required that as much as 50% of their annual compensation be paid in RSUs and/or Options that would not fully vest for 5 years and would not vest at all if the Neuberger Claimants ceased employment at Lehman. From 2003 through 2008, the Neuberger Claimants earned collectively over $100 million in compensation that they received in the form of RSUs and Options, none of which was realized as a result of the bankruptcy of Lehman before the vesting period had elapsed. Debtor now seeks to reclassify the compensation claims of the former NB Managing Directors as common stock related claims and subordinate such claims pursuant to Section 510(b). In doing so, Debtor principally relies on a line of cases flowing from *In re Enron Corp.*, 341 B.R. 141 (S.D.N.Y. 2006).

As a preliminary matter, the *Enron* court held that "the Court notes that its conclusions apply only to stock options similar to those presented here. The Court issues no opinion as to whether stock options might be designed in such fashion that would result in different treatment under Section 510(b)." *Id.* at 144 f.n.3. Moreover, as demonstrated below, *Enron* and its progeny are clearly distinguishable from the present case and cannot serve as basis to subordinate the Neuberger Claimants' compensation claims. The *Enron* rationale is that "a

claim will be subordinated under Section 510(b) if the claim is for damages and if those damages 'arise from' the purchase or sale of a security." *Enron*, 341 B.R. at 148-149. In concluding that the *Enron* employees stock option compensation claims arose from the purchase of a security, Judge Gonzalez found that the employees had "exchanged value for the options: here, their labor. Such exchange falls under a broad reading of the term 'purchase'." *Id.* at 151. The *Enron* court continued:

> Some of the Claimants assert a related claim but highlight a key factual difference. These claimants argue that they never elected to receive stock options, but rather were required to take a minimum percentage of their annual bonus in stock option form. This factual distinction, these Claimants argue, demonstrates clearly that they did not "purchase" stock options, as there was no voluntary exchange of goods, services, or currency for the options. While this argument might appear at first blush intuitively reasonable, the distinction is flawed. Although implicit, there is nonetheless a bargain and exchange of value. Here, the employment. If these Claimants were required to receive a portion of their compensation as options, that was a condition of employment the Claimants willingly accepted in return for their labor. These Claimants, thus, "purchased" the stock options with their labor. Therefore, the Court's previous conclusion is equally applicable to this variation of the above theory.

*Id. See also, e.g., In re Touch America Holdings Inc.*, 381 B.R. 95, 104 (D. Del. 2008) (same); *In re U.S. Wireless Corp.*, 384 B.R. 713, 718 (D. Del. 2008) (same).

Here, unlike the *Enron* employees, the requirement that the Neuberger Claimants accept up to 50% of their annual Lehman compensation in RSUs and/or Options *was not at all* "a condition of employment the Claimants willingly accepted in return for their labor . . . . [and] thus 'purchased' the [RSUs and] stock options with their labor", but rather a condition that was thrust upon them by the Lehman acquisition and their only manner to retain control of their billions of dollars worth of business, client relationships developed over decades, and to realize

13

the income that was owed to them for their past services prior and incident to the acquisition by Lehman. The Neuberger Claimants had no choice. They were held hostage to the Lehman compensation scheme, since if they did not accept RSUs as part of their Lehman compensation they would lose their jobs and forfeit their books of business, client relationships and their substantial, pre-merger earnings. In short, there was no viable alternative to Lehman employment and Lehman's compensation scheme that went with it. The Neuberger Claimants had chosen to work at NB and to accept its compensation system. The Neuberger Claimants were, however, compelled to work at Lehman in order to preserve what they previously had built, earned and negotiated. As a result, this compelled participation cannot be viewed as a voluntary purchase of Lehman stock and cannot be subordinated under 510(b).

Likewise, the Second Circuit's decision in *In re Med Diversified*, 461 F.3d 251 (2d Cir. 2006), also relied on by Debtor, does not apply to the facts presented here. In *Med Diversified*, the court found 510(b) subordination applied because claimant "took on the risk and return expectations of a shareholder when *he agreed* to exchange . . . employment claims for shares of the debtor. . . ." 461 F.3d at 256 (emphasis added). Once the *Med Diversified* claimant "bargained not for cash but to become a stockholder . . . he became bound by the choice he made to trade the relative safety of cash compensation for the upside potential of shareholder status . . . ." *Id.*

Here, again, the Neuberger Claimants *did not bargain* to become Lehman shareholders, the Lehman compensation scheme was a mandatory condition of the acquisition which was compelled in order for the Neuberger Claimants to retain their clients and their business and to receive their substantial previously earned NB compensation. The Neuberger Claimants had no "choice" and made no "trade." Since the Lehman RSUs and Options never

14

vested, the Neuberger Claimants now are entitled to the compensation that they earned by their labors at Lehman, in the amounts that Lehman unilaterally allocated to RSUs and Options each year.

In sum, the cases relied on by Debtor for subordination all require a volitional act by the Neuberger Claimants to "purchase" RSUs and Options. Here, far from being a voluntary purchase -- the volitional choice of stock over cash or other compensation or "a condition of employment that claimants willingly accepted" -- the Neuberger Claimants were compelled to join the Lehman compensation scheme by the acquisition. The Neuberger Claimants, in order to preserve and build on their client relationship and their books of business, that otherwise would be forfeited to Lehman as part of its acquisition of NB's goodwill and assets, and to realize on their past NB labors and earnings, had no choice but to remain as Lehman employees and to participate in the Lehman mandated compensation scheme from which they could not escape without ruining their careers as investment professionals and losing substantial compensation. The Neuberger Claimants had no bargaining power and made no volitional election, but were ensnared into remaining in the employ of Lehman in order to continue to earn a livelihood. Such involuntary acquiescence hardly can be considered a "purchase" for the purposes of subordination under 510(b).

### B. The Neuberger Claimants Have A Colorable Claim for Breach of Contract Against Lehman

As demonstrated above, the Neuberger Claimants had (1) an employment contract with Lehman; (2) that the Neuberger Claimants fully performed each year; (3) that Debtor materially breached by its fraudulent accounting and whose bankruptcy rendered the RSUs, Options, and the balance due for the LTIP Retention Award worthless and prevented Lehman

15

from paying back the involuntary loan pressed upon the Neuberger Claimants under the LTIP 85/15; (4) resulting in damages to the Neuberger Claimants in the amounts allocated each year to their compensation in RSUs and options, thereby satisfying all elements of a breach of contract claim. *See e.g., Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *Bank of New York Mellon Trust Co. v. Morgan Stanley Mfg. Capital, Inc.*, 2011 WL 2610661 (S.D.N.Y. 2011); *JPMorgan Chase v. J.H. Electric of New York, Inc.*, 69 A.D.2d 802, 893 N.Y.S.2d 237 (2d Dept. 2010). The Neuberger Claimants' damages are readily calculable by reference to their annual earning statements from Lehman.[6] The Neuberger Claimants cannot be deprived of their justly earned compensation through the slight of hand tactics of Debtor and its attempt at subordination under 510(b). The longstanding public policy against forfeiture of earned compensation commands nothing less. *See, e.g., Mirchel v. RMJ Securities Corp.*, 205 A.D.2d 388, 389, 613 N.Y.S.2d 876, 878 (1st Dept. 1994); *Weiner v. Diebold Group*, 173 A.D.2d 166, 167, 568 N.Y.S.2d 959, 961 (1st Dept. 1991); *Markby v PaineWebber, Inc.*, 169 Misc.2d 173, 179, 650 N.Y.S.2d 950 (Sup. Ct., N.Y. Co. 1996), *aff'd*, 243 A.D.2D 311, 664 N.Y.S. 2d 520 (1st Dept. 1997).

C. **The Neuberger Claimants Are Entitled to Compensation For Their Labors Under The Theories of Unjust Enrichment and Quantum Meruit.**

Even if the Neuberger Claimants did not have a colorable breach of contract claim against Debtor which they do, alternatively, since they did not freely and voluntarily enter into the Lehman compensation scheme, but instead were compelled to participate in it, they are at the very least, entitled to recover on their claims under theories of quantum meruit and unjust enrichment. Each of the Neuberger Claimants conferred a benefit on the Debtor by providing

---

[6] These statements or summaries generally were included with each of the Neuberger Claimants' respective claims.

16

work, labor and services to the Debtors' profit which the Debtor now seeks to benefit from without fully and adequately compensating the Neuberger Claimants, thereby unjustly enriching Debtor and requiring the Neuberger Claimants to be compensated because it is against equity and good conscience to permit Debtor to deprive the Neuberger Claimants of their just and earned compensation. *See, e.g., Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011); *Ashland Inc. v. Morgan Stanley & Co.*, -- F.3d --, 2011 WL 3190448 at *5 (2d Cir. 2011); *Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). Likewise, the Neuberger Claimants performed services for Debtor in good faith, which Debtor accepted in return for a promise of compensation which the Neuberger Claimants expected and the reasonable value of which is clearly reflected in the Debtor's annual statements to the Neuberger Claimants. This too entitles the Neuberger Claimants to recover in quantum merit. *See, e.g., Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *United Resource Recovery Corp. v. Ramko Venture Mgmt.*, 584 F. Supp.2d 645, 658 (S.D.N.Y. 2008); *Wehrum v. Illmensee*, 74 A.D.3d 796, 797, 902 N.Y.S.2d 607, 609 (2d Dept. 2010).

## CONCLUSION

For all of the foregoing reasons, the Neuberger Claimants' claims should not be reclassified as common stock and Debtor's Objection should be denied.

Dated:  New York, New York
        August 16, 2011

JULIEN & SCHLESINGER, P.C.

By: _____
    Michael S. Schlesinger (MS-0399)

One Whitehall Street
17th Floor
New York, New York  10004
(212) 962-8020

Eugene Neal Kaplan (EK-4229)
Patrick Train-Gutiérrez (PT-1015)
**KAPLAN LANDAU LLP**
1065 Avenue of the Americas
27th Floor
New York, New York 10018
(212) 593-1700

*Attorneys for Claimants:*

*Richard J. Glasebrook II (Claim No. 9682), Judith Ann Kenney (Claim No. 13929), Richard Nackenson (Claim No. 13968), Henry Ramallo (Claim No. 17607), Chris Reynolds (28442), Marvin C. Schwartz (Claim No. 20244), Stephanie Stiefel (Claim No. 21711), David I. Weiner (Claim No. 18314)*

TO:  **HONORABLE JAMES M. PECK**
     One Bowling Green
     Courtroom 601
     New York, New York 10004

**WEIL, GOTSHAL & MANGES LLP**
*Attorneys for the Debtors*
767 Fifth Avenue
New York, New York 10153
<u>Attn</u>:  Robert J. Lemons, Esq.
Mark Bernstein, Esq.

**OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 2**
33 Whitehall Street, 21st Floor
New York, New York 10004
<u>Attn</u>:  Tracy Hope Davis, Esq.
Elisabeth Gasparini, Esq.
Andrea B. Schwartz, Esq.

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
*Attorneys for the Official Committee of Unsecured Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
<u>Attn</u>:  Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.

## AFFIRMATION OF SERVICE

MICHAEL S. SCHLESINGER, an attorney who is not a party to this action, and is duly licensed to practice in the courts of the State of New York, affirms under penalty of perjury pursuant to CPLR §2106 that I served the annexed Claimants' Opposition to Debtors' One Hundred Eighteenth Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interests), by depositing true and correct copies of same, enclosed in a FedEx Envelope and shipping it First Overnight Express Service under the exclusive care and custody of FedEx the following attorneys of record on August 16, 2011:

> WEIL, GOTSHAL & MANGES LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attn:   Robert J. Lemons, Esq.
>         Mark Bernstein, Esq.

*Attorneys for the Debtors*

> OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 2
> 33 Whitehall Street, 21st Floor
> New York, New York 10004
> Attn:   Tracy Hope Davis, Esq.
>         Elisabeth Gasparini, Esq.
>         Andrea B. Schwartz, Esq.

> MILBANK, TWEED, HADLEY & MCCLOY LLP
> 1 Chase Manhattan Plaza
> New York, New York 10005
> Attn:   Dennis F. Dunne, Esq.
>         Dennis O'Donnell, Esq.
>         Evan Fleck, Esq.

*Attorneys for the Official Committee of Unsecured Creditors*

Dated: August 16, 2011

_____
MICHAEL S. SCHLESINGER