Hearing Date:  October 27, 2011 at 10:00 a.m.
Objections Due By: Extended to October 20, 2011 by Debtors' Counsel

Alex R. Rovira
Noam M. Besdin
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For Skandinaviska Enskilda Banken AB*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------ x | Chapter 11 Case No: |
| In re: | 08-13555 (JMP) |
| Lehman Brothers Holdings Inc., et. al. | (Jointly Administered) |
| Debtor. | |
| ------------------------------------------------------------ x | |

**RESPONSE OF SKANDINAVISKA ENSKILDA BANKEN AB TO THE DEBTORS'
ONE HUNDRED EIGHTY-SIXTH OMNIBUS OBJECTION TO CLAIMS**

TO:   THE HONORABLE JAMES M. PECK
      UNITED STATES BANKRUPTCY JUDGE:

Skandinaviska Enskilda Banken AB (publ) ("SEB"), by and through its undersigned counsel, hereby files this Response (the "Response") to the One Hundred Eighty-Sixth Omnibus Objection to Claims dated September 9, 2011 (the "Objection"), with respect to SEB's Claim Number 26483 and Claim Number 26485 (each a "Claim," and together, the "Claims"), and respectfully states as follows:

**RELEVANT BACKGROUND**

1.   SEB's Claims arise out of certain guarantees issued by Lehman Brothers Holdings Inc. ("LBHI") with respect to certain transactions between SEB and Lehman Brothers

Commercial Corporation ("LBCC"), and between SEB and Lehman Brothers Finance S.A. ("LBFSA").

2. On or about December 11, 1996, SEB and LBCC entered into that certain ISDA Master Agreement (as described in SEB's Claim Number 26483, the "LBCC Master Agreement"), pursuant to which SEB entered into various derivative transactions with LBCC, including credit default swap transactions which were documented and confirmed by both SEB and LBCC through written confirmation. In connection with the LBCC Master Agreement, on or about December 11, 1996, LBHI issued that certain guarantee (the "LBCC Master Agreement Guarantee"), which irrevocably and unconditionally guaranteed to SEB the due and punctual payment of all amounts payable by LBCC in accordance with the terms of the LBCC Master Agreement.

3. In addition, on or about October 7, 1994, SEB and LBFSA entered into that certain ISDA Master Agreement (as described in SEB's Claim Number 26485, the "LBFSA Master Agreement"), pursuant to which SEB entered into various derivative transactions with LBFSA, including credit default swap transactions which were documented and confirmed by both SEB and LBFSA through written confirmation. In connection with the LBFSA Master Agreement, on or about October 7, 1994, LBHI issued that certain guarantee (the "LBFSA Master Agreement Guarantee", and together with the LBCC Master Agreement Guarantee, the "Guarantees"), which irrevocably and unconditionally guaranteed to SEB the due and punctual payment of all amounts payable by LBFSA in accordance with the terms of the LBFSA Master Agreement.

4. On September 15, 2008 (the "Petition Date"), LBHI, and certain of its affiliates, commenced the above-captioned chapter 11 cases, which have been consolidated for procedural purposes and are being jointly administered. LBHI's commencement of its chapter

2

11 case triggered an event of default under both the LBCC Master Agreement and the LBFSA Master Agreement (each an "Event of Default").  On October 3, 2008 and October 5, 2008, LBFSA and LBCC, respectively, each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing their chapter 11 cases which have also been administratively consolidated for procedural purposes and are also being jointly administered.

5. Pursuant to the terms of the LBCC Master Agreement, on September 16 2008, SEB sent notice to LBCC specifying the Events of Default, electing for Automatic Early Termination to apply and terminating all outstanding transactions thereunder.  Pursuant to the terms of the LBFSA Master Agreement, on September 16, 2008, SEB sent notice to LBFSA specifying the Event of Default, electing for Automatic Early Termination to apply and terminating all outstanding transactions thereunder.

6. On September 22, 2009, SEB timely filed the Claims against LBHI on account of the Guarantees, asserting, among other things, claims for (i) payment of amounts owed to SEB by LBCC under the terms of the LBCC Master Agreement, as calculated by SEB pursuant to the terms of the LBCC Master Agreement, in the amount of $432,275.25, including accrued interest and fees and expenses; and (ii) payment of amounts owed to SEB by LBFSA under the terms of the LBFSA Master Agreement, as calculated by SEB pursuant to the terms of the LBFSA Master Agreement, in the amount of $6,057,320.19 plus accrued interest and fees and expenses

7. The proof of claims asserting the Claims expressly preserved SEB's right to exercise rights of setoff of any amounts that it may owe, or that may become owing to it, and specifically identified certain rights of setoff, recoupment and/or netting that SEB has with respect to a certain bank account of LBHI held by SEB with account number ending with the four digits 1256 (the "Bank Account"), which secured SEB's Claims against LBHI.

3

7867674v.1

8. On September 9, 2011, LBHI filed the Objection, which characterized the Claims as "misclassified," reclassified them as "unsecured," and claimed that SEB failed to disclose the obligation owed to the Debtors that would be subject to setoff.

### RESPONSE

### I. LBHI HAS FAILED TO MEET ITS EVIDENTIARY BURDEN

9. The Objection's attempt to reclassify the Claims as unsecured claims must fail on its face because it does not set forth any evidence to dispute the nature of the Claim as a secured claim. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, "a proof of claim…shall constitute prima facie evidence of the validity and amount of the claim." Once a claim alleges facts sufficient to support it, the claim is deemed prima facie valid. In re Woodmere Investors Limited Partnership, 178 B.R. 346, 354-355 (Bankr. S.D.N.Y. 1995). The burden then shifts to the objecting party to produce evidence sufficient to counter the prima facie validity of the claim in question. Id.; see also In re Galloway, 220 B.R. 236, 243 (Bankr. E.D.P.A. 1998) ("Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut or cast doubt upon the creditor's proof of claim.")

10. To satisfy its burden, the objecting party must produce actual evidence that is equally persuasive as the claim itself, and that would "refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International Inc., 954 F.2d 167, 173-174 (3d Cir. 1992). In this Circuit, "the case law is clear" in demanding that an objecting debtor "affirmatively produce evidence to counter [a] creditor's claim." In re Make Meat Corp., 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. Mar. 31, 1999), citing Woodmere Investors, 178 B.R. at 354-355; Allegheny, 954 F.2d at 173-174. The prima facie validity of a claim can only be overcome with the production of "substantial evidence" by the objecting party. In re Pan, 209 B.R. 152, 155 (D. Mass. 1997).

4

11. Here, LBHI has not produced any evidence, substantial or otherwise, to refute the secured nature of the Claims. The Objection seeks to shift the evidentiary burden back onto SEB by simply stating that SEB has "provide[d] no basis for assertion of a secured claim." LBHI has offered the Court nothing beyond this bald assertion to substantiate their Objection and overturn SEB's secured status. Objection at ¶ 9-11. LBHI entirely ignores the fact that, in the Claims, SEB specifically disclosed the existence of the Bank Account held by SEB, and counsel for SEB has previously discussed this account with counsel for the Debtors. The Debtors have provided no basis for this Court to doubt the existence of the Bank Account, or any other reason to counter SEB's secured right of setoff. Having failed to offer the Court any evidentiary basis to modify or reclassify the Claim, the Objection fails on its face as a matter of law and the Claim should remain prima facie valid as a secured claim.

## II.    SEB'S VALID RIGHT TO SETOFF SHOULD BE TREATED AS A SECURED CLAIM

12. "The right to setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A." Citizens Bank of Maryland v Stumpf, 516 U.S. 16, 116 S.Ct. 286 (1995), *quoting* Studley v. Boylston Nat. Bank, 229 U.S. 523, 528, 33 S.Ct. 806, 808 (1913). The Bankruptcy Code explicitly treats a creditor's setoff rights as secured claims. See 11 U.S.C. ¶ 506(a). Such claims are essentially "elevated… to secured status." In re Communication Dynamics, Inc., et al., 300 B.R. 220, 227 (Bankr. D. Del. 2003), *citing* In re University Med. Ctr., 973 F.2d 1065, 1079 (3d Cir. 1992);; Christiana Marine Service Corp. v. The Hercules and J.E. Brenneman Co., 1990 U.S. Dist. LEXIS 12866 at * 18 (E.D.Pa., Sept. 26, 1990). Generally, "secured claims and setoff claims are handled nearly identically" in the distribution of corporate assets. In re Springfield Casket Co., Inc., 21 B.R. 223, 227 (Bankr. S.D. Ohio, 1982).

7867674v.1

13. More specifically, a bank's setoff right is treated as a secured claim against the property of the estate held in that bank's account. See In re United Sciences of America, Inc., 84 B.R. 79, 82 (Bankr. N.D. Tex., 1988), *citing* In re Williams, 61 B.R. 567 (Bankr. N.D. Tex., 1986); see also In re Patterson, 967 F.2d 505, 510 (11th Cir. 1992) ("A bank customer's deposit in a banking account becomes a debt from the bank to the customer. When the bank also lends money to the depositor, mutual debts exist, and the bank may, when the loan matures, apply the money it owes the depositor towards the depositor's debt to the bank.").

14. As discussed above, SEB specifically referenced the existence of the Bank Account in its proof of claims asserting the Claims, which consists of certain of LBHI's funds held in the Bank Account by SEB. The existence of this account provides SEB security to the extent of the value of funds held in the Bank Account. The Debtors are fully aware of the Bank Account, but summarily state in their Objection that SEB's setoff rights are "hypothetical," when in fact, SEB undisputedly holds valid setoff rights in connection with the Bank Account, and therefore the Claims should be treated as secured claims pursuant to the Bankruptcy Code.

15. Accordingly, pursuant to the express terms of the Bankruptcy Code, and as referenced in the Claims, SEB merely seeks secured status to the extent of the value of those amounts held by SEB in the Bank Account and general unsecured status to the extent that the amount of the asserted claims exceeds the value of SEB's setoff rights.

6

## RESERVATION OF RIGHTS

22. SEB hereby reserves all of its rights, privileges, remedies and benefits with respect to the claims asserted herein. Nothing herein shall be deemed or otherwise relied upon as a waiver of any of its rights, privileges and remedies under applicable law.

23. In addition, SEB hereby reserves the right to amend, alter, revise or supplement this Response, and reserves its right to file a more fulsome response to the Objection or any other filing that may subsequently be made by the Debtors. Nothing herein shall be deemed a waiver of any procedural or substantive rights with respect to any of the Claims, all of which are hereby reserved.

WHEREFORE, SEB respectfully requests that the Court overrule the Objection, and award such further relief as this Court deems just and proper.

Dated: October 20, 2011  
       New York, New York

Respectfully submitted,

**SIDLEY AUSTIN LLP**

/s/ Alex R. Rovira  
Alex R. Rovira  
Noam M. Besdin  
787 Seventh Avenue  
New York, NY 10019  
Tel: (212) 839-5300  
Fax: (212) 839-5959

*Counsel For Skandinaviska Enskilda Banken AB*