Hearing Date: October 27, 2011 at 10:00 a.m.
Objections Due By: Extended to October 20, 2011 by Debtors' Counsel

Alex R. Rovira
Noam M. Besdin
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel For Skandinaviska Enskilda Banken AB*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------- x | : | Chapter 11 Case No: |
| In re: | : | 08-13555 (JMP) |
| | : | |
| Lehman Brothers Holdings Inc., et. al. | : | (Jointly Administered) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| ----------------------------------------------------------- x | | |

**RESPONSE OF SKANDINAVISKA ENSKILDA BANKEN AB TO THE DEBTORS'
ONE HUNDRED EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS**

TO:    THE HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE:

Skandinaviska Enskilda Banken AB ("SEB"), by and through its undersigned counsel, hereby files this Response (the "Response") to the One Hundred Eighty-Seventh Omnibus Objection to Claims dated September 9, 2011 (the "Objection"), with respect to SEB's Claim Number 26481 and Claim Number 26482 (each a "Claim," and together, the "Claims"), and respectfully states as follows:

**RELEVANT BACKGROUND**

1.    SEB's Claims arise out of certain guarantees issued by Lehman Brothers Holdings Inc. ("LBHI") with respect to various transactions between SEB and Lehman Brothers International Europe ("LBIE"). On or about December 17, 1996, SEB and LBIE entered into

7867920v.1

that certain ISDA Master Agreement (as described in Claim Number 26482, the "ISDA Master Agreement"), pursuant to which SEB entered into various derivative transactions with LBIE, including credit default swap transactions which were documented and confirmed by both SEB and LBIE through written confirmation.

2. On or about October 11, 1999, SEB and LBIE entered into that certain Global Master Repurchase Agreement (as described in Claim Number 26481, the "GMRA"), pursuant to which SEB entered into certain repo transactions with LBIE.

3. In addition, SEB and LBIE entered into that certain Master Equity & Fixed Interest Stock Lending Agreement dated November 30, 1999/December 1, 1999 (as described in Claim Number 26481, the "MSLA"), under which SEB and LBIE entered into various transactions in equity securities.

4. These three agreements between SEB and LBIE - the GMRA, the MSLA, and the ISDA Master Agreement- were all guaranteed by LBHI.  Specifically, on or about June 9, 2005, LBHI issued a board resolution, upon the unanimous consent of the executive committee of its board of directors (the "LBHI Board Resolution Guarantee"), which guaranteed the payment of all liabilities, obligations, and commitments of LBIE, including any and all amounts payable by LBIE to SEB in accordance with the terms of the GMRA, the MSLA, the ISDA Master Agreement, or any other related agreements.  In addition to the LBHI Board Resolution Guarantee, LBHI also issued that certain guarantee dated January 4, 2008, (the "Ratings Agency Guarantee"), which absolutely and unconditionally, without limitation, guaranteed all of LBIE's liabilities, obligations and commitments to any counterparty of LBIE, which includes SEB.  Also, under the terms of the Ratings Agency Guarantee, LBHI agreed to pay all expenses, including reasonable attorneys' fees incurred by SEB.

2

7867920v.1

5. Further, on or about December 17, 1996, LBHI issued that certain guarantee relating to the ISDA Master Agreement (the "ISDA Master Agreement Guarantee", and together with the LBHI Board Resolution Guarantee and Ratings Agency Guarantee, and any other applicable guarantees, the "Guarantees"), which irrevocably and unconditionally guaranteed to SEB the due and punctual payment of all amounts payable by LBIE in accordance with the terms of the ISDA Master Agreement.

6. On September 15, 2008 (the "Petition Date"), LBHI, and certain of its affiliates, commenced the above-captioned chapter 11 cases, which have been consolidated for procedural purposes and are being jointly administered.  On September 15, 2008, LBIE was placed into Administration proceedings in the United Kingdom pursuant to the Insolvency Act of 1986, thereby triggering (i) an event of default under Section 5(a)(vii) of the ISDA Master Agreement; (ii) an event of default under Section 10(a)(vi) of the GMRA; and (iii) an event of default under clause 14(D) of the MSLA.

7. Pursuant to the terms of the ISDA Master Agreement, SEB sent notice to LBIE specifying the events of default, and elected for Automatic Early Termination to apply to the ISDA Master Agreement, immediately terminating all outstanding transactions thereunder. Pursuant to the terms of the GMRA, SEB sent notice to LBIE specifying the events of default under that agreement, terminating the GMRA.  Similarly, pursuant to the terms of the MSLA, SEB sent notice to LBIE specifying the events of default under that agreement as well.

8. On September 22, 2009, SEB timely filed the Claims against LBHI on account of the Guarantees, asserting, among other things, claims for (i) payment of amounts owed to SEB by LBIE under the terms of the ISDA Master Agreement, as calculated by SEB

3

7867920v.1

pursuant to the terms of the ISDA Master Agreement, in the amount of $149,455.32,[1] plus accrued interest; (ii) payment of amounts owed to SEB by LBIE under the GMRA, as calculated by SEB pursuant to the terms of the GMRA, in the amount of $933,570.00, plus accrued interest and fees and expenses; and (iii) payment of any amounts owed to SEB by LBIE with respect to equity trading activities with SEB under the terms of the MSLA.

9. The Claims preserved SEB's right to exercise certain rights of setoff of any amounts that it may owe, or that may become owing to it, and specifically identified certain rights of setoff, recoupment and/or netting that SEB has with respect to a certain bank account of LBHI held by SEB with account number ending with the four digits 1256 (the "Bank Account"), which secured SEB's Claims against LBHI.

10. On September 9, 2011, LBHI filed the Objection, which characterized the Claims as "misclassified," reclassified them as "unsecured," and claimed that SEB failed to disclose the obligation owed to the Debtors that would be subject to setoff.

**RESPONSE**

I.   **LBHI HAS FAILED TO MEET ITS EVIDENTIARY BURDEN**

11. The Objection's attempt to reclassify the Claims as unsecured claims must fail on its face because it does not set forth any evidence to dispute the nature of the Claim as a secured claim. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, "a proof of claim…shall constitute prima facie evidence of the validity and amount of the claim." Once a claim alleges facts sufficient to support it, the claim is deemed prima facie valid. In re Woodmere Investors Limited Partnership, 178 B.R. 346, 354-355 (Bankr. S.D.N.Y. 1995). The burden then shifts to the objecting party to produce evidence sufficient to counter the prima facie validity of the claim in question. Id.; see also In re Galloway, 220 B.R. 236, 243 (Bankr.

---

[1] This amount was equal to EUR 117,960, based on the conversion rate published by the Swedish Centralbank on October 24, 2008.

E.D.P.A. 1998) ("Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut or cast doubt upon the creditor's proof of claim.")

12.  To satisfy its burden, the objecting party must produce actual evidence that is equally persuasive as the claim itself, and that would "refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International Inc., 954 F.2d 167, 173-174 (3d Cir. 1992). In this Circuit, "the case law is clear" in demanding that an objecting debtor "affirmatively produce evidence to counter [a] creditor's claim." In re Make Meat Corp., 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. Mar. 31, 1999), citing Woodmere Investors, 178 B.R. at 354-355; Allegheny, 954 F.2d at 173-174. The prima facie validity of a claim can only be overcome with the production of "substantial evidence" by the objecting party. In re Pan, 209 B.R. 152, 155 (D. Mass. 1997).

13.  Here, LBHI has not produced any evidence, substantial or otherwise, to refute the secured nature of the Claims. The Objection seeks to shift the evidentiary burden back onto SEB by simply stating that SEB has "provide[d] no basis for assertion of a secured claim." LBHI has offered the Court nothing beyond this bald assertion to substantiate their Objection and overturn SEB's secured status. Objection at ¶ 9-11. LBHI entirely ignores the fact that, in the Claims, SEB specifically disclosed the existence of the Bank Account that is currently held by SEB, and counsel for SEB has previously discussed this account with counsel for the Debtors. The Debtors have provided no basis for this Court to doubt the existence of the Bank Account, or any other reason to counter SEB's secured right of setoff. Having failed to offer the Court any evidentiary basis to modify or reclassify the Claim, the Objection fails on its face as a matter of law and the Claim should remain prima facie valid as a secured claim.

II. **SEB'S VALID RIGHT TO SETOFF SHOULD BE TREATED AS A SECURED CLAIM**

14. "The right to setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A." Citizens Bank of Maryland v Stumpf, 516 U.S. 16, 116 S.Ct. 286 (1995), *citing* Studley v. Boylston Nat. Bank, 229 U.S. 523, 528, 33 S.Ct. 806, 808 (1913). The Bankruptcy Code explicitly treats a creditor's setoff righst as secured claims. See 11 U.S.C. ¶ 506(a). Such claims are essentially "elevated… to secured status." In re Communication Dynamics, Inc., et al., 300 B.R. 220, 227 (Bankr. D. Del. 2003), *quoting* In re University Med. Ctr., 973 F.2d 1065, 1079 (3d Cir. 1992);; Christiana Marine Service Corp. v. The Hercules and J.E. Brenneman Co., 1990 U.S. Dist. LEXIS 12866 at * 18 (E.D.Pa., Sept. 26, 1990). Generally, "secured claims and setoff claims are handled nearly identically" in the distribution of corporate assets. In re Springfield Casket Co., Inc., 21 B.R. 223, 227 (Bankr. S.D.Ohio, 1982).

15. More specifically, a bank's setoff right is treated as a secured claim against the property of the estate held in that bank's account. See In re United Sciences of America, Inc., 84 B.R. 79, 82 (Bankr. N.D.Tex., 1988), *citing* In re Williams, 61 B.R. 567 (Bankr. N.D.Tex., 1986); see also In re Patterson, 967 F.2d 505, 510 (11th Cir. 1992) ("A bank customer's deposit in a banking account becomes a debt from the bank to the customer. When the bank also lends money to the depositor, mutual debts exist, and the bank may, when the loan matures, apply the money it owes the depositor towards the depositor's debt to the bank.").

16. As discussed above, SEB specifically referenced the existence of the Bank Account in its proof of claims asserting the Claims, which consists of certain of LBHI's funds held in the Bank Account by SEB. The existence of this account provides SEB security to the extent of the value of the funds held in the Bank Account. The Debtors are fully aware of the Bank Account, but summarily state in their Objection that SEB's setoff rights are "hypothetical,"

6

when in fact, SEB undisputedly holds valid setoff rights in connection with the Bank Account, and therefore the Claims should be treated as secured claims pursuant to the Bankruptcy Code.

17. Accordingly, pursuant to the express terms of the Bankruptcy Code, and as referenced in the Claims, SEB merely seeks secured status to the extent of the value of those amounts held in the Bank Account and general unsecured status to the extent that the amount of the asserted claims exceeds the value of SEB's setoff rights.

## RESERVATION OF RIGHTS

22. SEB hereby reserves all of its rights, privileges, remedies and benefits with respect to the claims asserted herein. Nothing herein shall be deemed or otherwise relied upon as a waiver of any of its rights, privileges and remedies under applicable law.

23. In addition, SEB hereby reserves the right to amend, alter, revise or supplement this Response, and reserves its right to file a more fulsome response to the Objection or any other filing that may subsequently be made by the Debtors. Nothing herein shall be deemed a waiver of any procedural or substantive rights with respect to any of the Claims, all of which are hereby reserved.

WHEREFORE, SEB respectfully requests that the Court overrule the Objection, and award such further relief as this Court deems just and proper.

Dated: October 20, 2011
      New York, New York

Respectfully submitted,

**SIDLEY AUSTIN LLP**

/s/ Alex R. Rovira
Alex R. Rovira
Noam M. Besdin
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5959

*Counsel For Skandinaviska Enskilda Banken AB*