**Hearing Date and Time:  November 16, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  November 9, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
James B. Kobak, Jr.

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                      :
In re                                                 :     Chapter 11 Case No.
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,          :     **08-13555 (JMP)**
                                                      :
            Debtors.                                  :     **(Jointly Administered)**
---------------------------------------------------------------x
                                                      :
In re                                                 :     Case No.
                                                      :
**LEHMAN BROTHERS INC.**,                             :     **08-01420 (JMP) (SIPA)**
                                                      :
            Debtor.                                   :
---------------------------------------------------------------x

**NOTICE OF JOINT MOTION OF
LEHMAN BROTHERS HOLDINGS INC. AND JAMES W.
GIDDENS, AS TRUSTEE FOR LEHMAN BROTHERS
INC., PURSUANT TO SECTIONS 105(a) AND 363 OF THE
BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION
AND APPROVAL OF A STOCK PURCHASE AGREEMENT
REGARDING THE VEBA AND (II) FOR AUTHORIZATION
AND APPROVAL OF A SETTLEMENT REGARDING THE SAME**

PLEASE TAKE NOTICE that a hearing to consider the annexed Motion (the

"Motion") of Lehman Brothers Holdings Inc. ("LBHI") and James W. Giddens, Trustee for the

SIPA Liquidation of Lehman Brothers Inc. (the "SIPA Trustee"), for authorization and approval,

pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy

Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

of a stock purchase agreement regarding the VEBA (as defined in the Motion) and a settlement

regarding the same, all as more fully described in the Motion, will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **November 16, 2011 at 10:00 a.m. (Prevailing**

**Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq. and Sunny Singh, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases; (v) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: James B. Kobak, Jr., Esq., and Jeffrey S. Margolin, Esq., attorneys for the SIPA Trustee; and (vi) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **November 9, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 21, 2011
     New York, New York


/s/ Richard P. Krasnow                              /s/ Jeffrey S. Margolin
Richard P. Krasnow                                  James B. Kobak, Jr.
                                                    Jeffrey S. Margolin


WEIL, GOTSHAL & MANGES LLP                          HUGHES HUBBARD & REED LLP
767 Fifth Avenue                                    One Battery Park Plaza
New York, New York 10153                            New York, New York 10004
Telephone: (212) 310-8000                           Telephone: (212) 837-6000
Facsimile: (212) 310-8007                           Facsimile: (212) 422-4726


Attorneys for Debtors                               Attorneys for James W. Giddens, Esq.,
and Debtors in Possession                           as Trustee for the SIPA Liquidation of
                                                    the Business of Lehman Brothers Inc.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
James B. Kobak, Jr.

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                      :

In re                              :       **Chapter 11 Case No.**
                      :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :     **08-13555 (JMP)**
                      :

            **Debtors.**        :       **(Jointly Administered)**
                      :

------------------------------------------------------------------x
                      :

In re                              :
                      :       **Case No.**

**LEHMAN BROTHERS INC.**,          :
                      :       **08-01420 (JMP) (SIPA)**

            **Debtor.**         :
                      :

------------------------------------------------------------------x

**JOINT MOTION OF LEHMAN BROTHERS
HOLDINGS INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO SECTIONS
105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) FOR
AUTHORIZATION AND APPROVAL OF A STOCK PURCHASE
AGREEMENT REGARDING THE VEBA AND (II) FOR AUTHORIZATION
<u>AND APPROVAL OF A SETTLEMENT REGARDING THE SAME</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-debtor affiliates, "<u>Lehman</u>"), and James W. Giddens (the "<u>SIPA Trustee</u>"), Trustee for the SIPA Liquidation of Lehman Brothers Inc. ("<u>LBI</u>") under the Securities Investor Protection Act, as amended ("<u>SIPA</u>"), file this joint Motion (the "<u>Motion</u>") and respectfully represent:

**<u>Preliminary Statement</u>**

1.      The Debtors' chapter 11 cases and the LBI SIPA Proceeding have impacted parties in interest around the globe, including prepetition employees and retirees.  On September 12, 2008, during a critical period of grave uncertainty and in an attempt to minimize the impact on employees, LBHI transferred funds to LBI for the purpose of establishing a health care trust to fund the payment of eligible health and medical benefits to participants in the group health plan sponsored by LBHI (the "<u>Group Benefits Plan</u>").  Specifically, LBI formed Aceso Holdings Inc. ("<u>Aceso</u>"), as a wholly owned non-debtor subsidiary, now controlled by the SIPA Trustee, which in turn established and became the owner of a health care trust (the "<u>VEBA</u>"), which was intended to qualify as a voluntary employees' beneficiary association under section

501(c)(9) of the Internal Revenue Code of 1986 (the "Internal Revenue Code").  LBHI

transferred $125 million in cash to LBI, $95 million of which was used to fund the VEBA.

2.          Pursuant to the Internal Revenue Code, the trust funds held by a VEBA

may only be used for the payment of eligible benefits under section 501(c)(9) and can never be

available for any other purpose.  Upon commencement of the chapter 11 cases and the SIPA

Proceeding, assets of the trust commenced to be used for the payment of medical costs and

expenses of the Debtors' current employees as well as retirees of the Lehman enterprise in

accordance with the terms of the trust.  However, the SIPA Trustee and the Debtors reserved all

of their respective rights against each other arising from or relating to the use of the trust for such

payments.

3.          In March 2009, the VEBA ceased funding benefits, and immediately

thereafter, LBHI commenced payment of the Debtors' employee health care costs and benefits,

including disabled employees on long term disability, and consistent with its statutory obligation

under section 1114(e)(1) of title 11 of the United States Code (the "Bankruptcy Code")[1] LBHI

also temporarily paid the health and medical costs of Lehman's retirees.  The SIPA Trustee again

reserved his right to assert claims for reimbursement from the Debtors, including on an

administrative expenses basis, and their non-Debtor affiliates to the extent such payments

benefited such entities, and the Debtors similarly reserved their respective rights with respect to

LBI relating to such payments.  Several months later, LBHI concluded that, in furtherance of its

fiduciary duties to creditors, it could no longer continue providing benefits to retirees, most of

whom were retirees of LBI, or former employees on long term disability.  Accordingly, effective

January 1, 2010, LBHI terminated the Group Benefits Plan as to retirees participating therein and

---

[1] Section 1114(e)(1) of the Bankruptcy Code provides as follows: "Notwithstanding any other provision of this title, the debtor in possession . . . shall timely pay and shall not modify any retiree benefits. . ."  11 U.S.C. § 1114(e)(1).

converted disabled employees to COBRA continuation under the Group Benefits Plan, pursuant

to the then-applicable terms of the Group Benefits Plan.  To minimize the hardship on retirees

and their beneficiaries, LBHI arranged for Aetna Insurance to offer health care insurance to them

at their election and their own cost under a separate program that is sponsored by Aetna

Insurance and not LBHI (the "Aetna Policy").

4.     Shortly after the Aetna Policy was implemented in consultation with the

U.S. Department of Labor ("DOL"), the SIPA Trustee and LBHI commenced negotiations

regarding the disposition of the VEBA and potential claims arising from it, including the

possible transfer of Aceso and the trust from LBI to LBHI.  The DOL participated in part of such

negotiations.  LBHI and the SIPA Trustee agreed that any settlement of claims relating to the

VEBA would require Bankruptcy Court approval.  As a result, the DOL requested approval for

the trust to pay premiums of retirees and their beneficiaries under the Aetna Policy during the

period while LBHI and LBI negotiated a settlement.  The SIPA Trustee authorized the

amendment of the VEBA to commence payment of insurance premiums on behalf of retirees

under the Aetna Policy and former employees on long term disability under the Group Benefits

Plan, but did not authorize the resumption of payment of current employees' claims under the

Group Health Plan pending a settlement among LBHI and the SIPA Trustee and approval by the

Bankruptcy Court.  LBHI did not object to the payment of premiums of the retirees and former

employees on long term disability while employee claims continued to be suspended, but LBHI

expressed, as a condition of its acceptance of the transfer of the VEBA, that it intended to

recover from the VEBA amounts it paid under the Group Benefits Plan, including amounts paid

during negotiations while premiums were being paid by the VEBA on behalf of retirees and

former employees on long term disability.  The SIPA Trustee and LBHI have reached a resolution regarding the VEBA.

5.      LBHI will purchase the stock of Aceso from LBI pursuant to a stock purchase agreement, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Stock Purchase Agreement</u>"), thereby obtaining control of the VEBA.  LBHI intends to use the VEBA funds remaining (the "<u>Excess Funds</u>") after an amount has been set aside to reimburse LBHI for its payments described above for the medical costs and benefits of the Debtors' current employees and premiums of retirees under the Aetna Policy and COBRA premiums for former employees on long term disability under the Group Health Plan, and any costs associated with the administration of the VEBA.  The VEBA is expected to continue to fund retiree premiums under the Aetna Policy and COBRA premiums for former long term disability employees under the Group Benefits Plan simultaneously with the payment of current employees' claims under the Group Benefits Plan until the Excess Funds are exhausted or Aetna discontinues the Group Access-only Program or the COBRA continuation period expires.  <u>Although the VEBA is expected to continue to fund the insurance premiums of retirees under the Group Access-only Program and former employees on long term disability under the Group Benefits Plan, no payments will be made on behalf of such individuals after the Excess Funds have been exhausted, or Aetna discontinues the Group Access-only Program or the COBRA continuation period expires, and neither LBHI nor LBI is reinstating the Group Benefits Plan or undertaking any obligation to fund retiree and long term disability healthcare costs.  Neither LBHI nor LBI will make any contributions to the VEBA.</u>

6.      Currently, the VEBA has approximately $37 million in funds remaining. The Debtors' estimated costs for current employees is approximately $6.5 million per year.

LBHI will seek an exemption from the Department of Labor to obtain reimbursement for eligible

expenses it paid on behalf of retirees and former employees on long term disability from April 1,

2009 through December 31, 2009, approximately $5.6 million, and the Debtors' current

employees from April 2009 through the date that the VEBA begins making such payments,

approximately $19.5 million through September 2011, for a total of approximately $25 million.

Accordingly, the amount for which LBHI seeks reimbursement will be set aside under the VEBA

and will not be made available to pay premiums of retirees and former employees on long term

disability.  The Debtors and the SIPA Trustee, on behalf of LBI, have also agreed to release all

claims related to the VEBA against each other.  As demonstrated below and in the declarations

of Robert Hershan on behalf of LBHI (the "Hershan Declaration"), attached hereto as Exhibit D,

and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee (the "Harrison Declaration"),

attached hereto as Exhibit E, filed contemporaneously herewith, the Stock Purchase Agreement

is in the best interest of the Debtors, LBI, and their estates because it resolves ongoing disputes

between LBHI and the SIPA Trustee and avoids potentially costly and protracted litigation.  *See*

Hershan Declaration at ¶¶ 5-7; Harrison Declaration at ¶ 4.

### Background

7.       Commencing on September 15, 2008 (the "Commencement Date") and

periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court

voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Chapter

11 Cases have been consolidated for procedural purposes only and are being jointly administered

pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").  The Debtors are authorized to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

9.      On September 19, 2008, the Honorable Gerard E. Lynch, Judge of the

United States District Court for the Southern District of New York, entered an order

commencing liquidation (the "LBI Liquidation Order") with respect to LBI pursuant to the

provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman

Brothers Inc.*, Case No. 08-CIV-8119 (GEL) (the "SIPA Proceeding").  The LBI Liquidation

Order, among other things, (i) appointed the SIPA Trustee for the SIPA liquidation of the

business of LBI pursuant to SIPA § 78eee(b)(3) and (ii) removed LBI's case to this Court

pursuant to SIPA § 78eee(b)(4).

10.      On September 1, 2011, the Debtors filed the Third Amended Joint Chapter

11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, LBHI ECF No. 19627 (the

"Plan") and, by order dated September 1, 2011, ECF No. 19631, the Bankruptcy Court approved

the Disclosure Statement relating thereto, filed September 1, 2011, LBHI ECF No. 19629 (the

"Disclosure Statement").

### Jurisdiction

11.      As to the Chapter 11 Cases, the Court has subject matter jurisdiction to

consider and determine this matter pursuant to 28 U.S.C. § 1334 and this is a core proceeding

pursuant to 28 U.S.C. § 157(b).  As to the SIPA Proceeding, the Court has subject matter

jurisdiction to consider and determine this matter pursuant to SIPA § 78eee(b)(4) and venue is

proper before this Court pursuant to SIPA § 78eee(a)(3) and SIPA § 78aa.

## Relief Requested

12.      LBHI and the SIPA Trustee request authorization and approval, pursuant

to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019,[2] for:

- LBHI and the SIPA Trustee, on behalf of LBI, to enter into the Stock
  Purchase Agreement pursuant to which LBHI will purchase LBI's 100%
  ownership interest in Aceso (the "Shares") free and clear of all liens claims
  and encumbrances on the terms set forth in the Stock Purchase Agreement;
  and

- the settlement and release of all claims held by LBHI or LBI against each
  other or their affiliates related to the VEBA as provided in the Stock Purchase
  Agreement.

As set forth more fully below, and in the Hershan Declaration and the Harrison Declaration, the

purchase and sale of Aceso on the terms set forth herein represent a sound exercise of business

judgment.  *See* Hershan Declaration at ¶ 5; Harrison Declaration at ¶ 3.  Additionally, LBHI and

the SIPA Trustee's agreement to settle and release the claims with respect to the VEBA that are

specified in this Motion falls within the range of reasonableness and is in the best interests of

their estates and creditors.  The relief requested by the Motion should, therefore, be granted.

## The VEBA

13.      On September 12, 2008, LBHI transferred $125 million to LBI for the

purpose of establishing a health care trust under section 501(c)(9) of the Internal Revenue Code

to protect the interests of Lehman's employees at a time of great uncertainty.  LBI in turn formed

and capitalized Aceso which established and funded the VEBA with $95 million of the $125

million that had been transferred by LBHI to LBI.

14.      The VEBA is a statutory trust that was established to fund the payment of

health and medical benefits that are eligible for payment by a VEBA for participants in the

---

[2] Bankruptcy Code sections 105(a) and 363 are made applicable to the SIPA Proceeding pursuant to SIPA sections
78fff(b) and 78fff-1(a).

Group Benefits Plan.  Pursuant to section 501(c)(9) of the Internal Revenue Code, a VEBA must

satisfy the following requirements:

- It must be a voluntary association of employees;

- It must provide for payment of life, sick, accident, or other benefits to members or their dependents or designated beneficiaries and substantially all of its operations must be for this purpose; and

- Its earnings may not inure to the benefit of any private individual or shareholder other than through the payment of benefits described above.

*See* 26 U.S.C. § 501(c)(9) (2010).

15.    Once a VEBA has been lawfully established, its funds may not be used or

withdrawn for any purpose other than the payment of life, sick, accident or other benefits to

members of an association of employees or their dependents or designated beneficiaries.  *See id.*

Article 2.4 of the Lehman Health Care Trust, dated as of September 12, 2008, as amended as of

January 1, 2010, and attached hereto as Exhibit B, (the "Lehman Health Care Trust") makes

clear that:

> At no time (either by operation, amendment or termination of the Plan or Trust, or otherwise) shall any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) be used for, or diverted to, purposes other than the payment of benefits permitted by section 501(c)(9) of the [Internal Revenue] Code …

Accordingly, the VEBA funds may be used only for the payment of eligible benefits under

Section 501(c)(9) of the Internal Revenue Code and can never be available for any other purpose.

The VEBA may be amended to add or remove benefit plans for which eligible benefits may be

paid by the VEBA. The VEBA currently holds approximately $37 million.

16.    Prior to the Commencement Date, Lehman offered health and medical

coverage through the Group Benefits Plan to its U.S.-based employees and retirees and their

eligible beneficiaries.    LBHI was the sponsor of the Group Benefits Plan, which was

administered by the Lehman Employee Benefits Plan Committee.    Under its pre-petition

practices, LBHI would fund, either directly or through LBI, obligations under the Group Benefits

Plan for the U.S.-based Lehman enterprise and would be regularly reimbursed by the various

Lehman entities for obligations satisfied on such entity's behalf.    From the Commencement Date

through March 31, 2009, the VEBA funded benefits of current employees of the Debtors and

Lehman retirees, including LBI retirees, and former employees on long term disability.    The

SIPA Trustee and the Debtors reserved their respective rights relating to the VEBA and such

payments.

Suspension of the VEBA

17.    Commencing in March 2009, the VEBA suspended further payments of

premiums.    The SIPA Trustee reserved his rights to assert claims for reimbursement of medical

expenses previously funded by the VEBA as an administrative expense against the Debtors'

estates to the extent such payments benefited the Debtors and against non-Debtor Lehman

entities that may have benefited from the VEBA, and the Debtors concurrently reserved their

respective rights relating to such payments.    Immediately thereafter, LBHI commenced payment

of employee health care costs and benefits.    LBHI also made temporary payments in respect of

retiree benefits pursuant to its statutory obligation under section 1114(e)(1) of the Bankruptcy

Code and to prevent an abrupt halt of health benefits for approximately 1,100 Lehman retirees

(including individuals on long term disability).    Given LBHI's fiduciary obligation to its

creditors, however, LBHI determined, in the exercise of its reasonable business judgment, that it

could no longer maintain its discretionary health care benefits for such retirees and their

beneficiaries (collectively, the "Retiree Health Benefits"), most of whom had retired from LBI,

and former employees on long term disability.  Accordingly, effective January 1, 2010, LBHI

terminated Retiree Health Benefits under the Group Benefits Plan as to such individuals

participating therein[3] and converted disabled employees to COBRA continuation under the

Group Benefits Plan as former employees.

18.    To minimize the hardship on retirees, LBHI arranged for Aetna Life

Insurance Company to offer health care coverage to them at their election and their own cost

under the Group Access-only Program.  The Group Access-only Program provides substantially

identical heath care benefits as were provided under the Group Benefits Plan, but it is not an

employee benefit plan sponsored or offered by LBHI, and LBHI has no responsibility,

obligation, or liability under such plan and is not responsible for any costs associated with such

plan.  The premiums for coverage under the Group Access-only Program are the responsibility of

the retirees, former employees on long term disability and beneficiaries directly.  However,

commencing in February 2010, the VEBA commenced paying such premiums on behalf of such

individuals as well as COBRA premiums for former employees on long term disability, but did

not resume payment of current employee claims under the Group Health Plan prior to a transfer

of the VEBA pursuant to a settlement agreement among the SIPA Trustee and the Debtors

approved by the Bankruptcy Court.  The Group Access-only Program is not an employee benefit

plan subject to the Employee Retirement Income Security Act of 1974, as amended.

---

[3] Pursuant to the Group Benefits Plan, LBHI retained the right to terminate retiree coverage under the Group
Benefits Plan at any time without cause.  In accordance with decisions of this Court holding that section 1114 of the
Bankruptcy Code is inapplicable under such circumstances, LBHI terminated the Group Benefits Plan.  *See In re
Delphi Corp.*, Ch. 11 Case No. 05-44481 (RDD), 2009 WL 637315 at *1 (Bankr. S.D.N.Y. March 10, 2009)
("section 1114's regime does not apply … because the various welfare plans are, under the terms of the plan
documents themselves, modifiable at will"); Transcript of Record at 109:25-110:2, *In re Gen. Motors Corp.*, 09-
50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) ("section 1114 does not trump any agreement between a company
and its employees that gives the company the right to amend or terminate a welfare plan").  Subsequently, in *In re
Visteon Corp.*, the Third Circuit adopted a contrary view of section 1114.  *See Visteon*, 612 F.3d 210 (3d Cir. 2010),
which view has not been adopted within the Second Circuit.

## The Stock Purchase Agreement

19.    Since the termination of the Retiree Health Benefits under the Group

Benefits Plan, LBHI and the SIPA Trustee have negotiated a resolution concerning the VEBA

that recognizes their respective rights and remedies, but also honors the purpose of the VEBA.

Specifically, LBHI has agreed to purchase Aceso, and the parties have also agreed to settle their

outstanding disputes regarding ownership of and claims related to the VEBA on the terms set

forth in the Stock Purchase Agreement.

20.    Once ownership of Aceso is transferred to LBHI, LBHI will administer

the VEBA for the payment of employee claims and former employees on disability and retiree

health costs under the Group Access-only Program up to the amount of the Excess Funds.  To be

clear, however, Retiree Health Benefits under the Group Benefits Plan are not being reinstated

under section 1114 of the Bankruptcy Code or otherwise.  Rather, retirees and former employees

on long term disability will continue to receive benefits under the Group Access-only Program

(to the extent they have elected to opt into such plan) or the Group Benefits Plan, respectively,

but costs for continuing such health care coverage will be borne by the VEBA until such time as

the Excess Funds are exhausted or Aetna discontinues the Group Access-only Program or the

COBRA continuation period expires.  LBHI is not accepting any liability of Retiree Health

Benefits or costs associated with the Group Access-only Program in taking over administration

of the VEBA.  The Group Access-only Program is not an employee benefit plan of LBHI, and

LBHI has no responsibility, obligation or liability under such insurance arrangement.  LBHI will

not make any contributions to the VEBA.  Similarly, the SIPA Trustee, on behalf of LBI, is not

accepting any liability of Retiree Health Benefits or costs associated with the Group Access-only

Program and will not make any contributions to the VEBA.

21.     In addition to the payment of the premiums of the Group Acess-Only Plan for retirees and COBRA premiums for former employees on long term disability, the VEBA funds will be used to pay healthcare costs of the Debtors' current employees, including those employed by LAMCO Holdings LLC and its subsidiaries (collectively, the "LAMCO Entities")[4] and to reimburse LBHI for the costs of administering the VEBA.  LBHI will also seek reimbursement from the VEBA for any costs paid by it in respect of retiree, long term disability and current employee health benefits since March 2009, in the aggregate amount of approximately $25 million.  The amount LBHI will seek includes amounts paid by it for current employees that the VEBA did not pay during the same period that the VEBA paid premiums under the Group Access-only Policy on behalf of retirees and COBRA premiums on behalf of former employees on long term disability under the Group Benefits Plan.  The reimbursement is subject to authorization from the DOL, which LBHI will request.  The amount for which reimbursement will be sought by LBHI will be set aside in the VEBA and will not in any case be available for payment of premiums on behalf of retirees and former employees on long term disability.

22.     The material terms of the Stock Purchase Agreement provide:[5]

- Purchase and Sale Transaction.  LBHI will purchase LBI's 100 shares of Aceso for the aggregate purchase price of $1,885.00 and the mutual releases contained in the Stock Purchase Agreement free and clear of all liens, claims and encumbrances.

- Settlement.  LBHI and the SIPA Trustee, on behalf of LBI, agree to waive all claims held by LBHI or LBI against each other or their affiliates related to the

---

[4] By order dated April 15, 2010, LBHI ECF No. 8372, the Court approved the Debtors' transfer to the LAMCO Entities of a majority of LBHI's asset management employees and certain infrastructure.  As a result, many of the employees of the Debtors are now employed directly by the LAMCO Entities, but provide the same services to the Debtors as they performed prior to the establishment of the LAMCO Entities.

[5] To the extent there is an inconsistency between this summary and the Stock Purchase Agreement, the terms of the Stock Purchase Agreement control.

VEBA, including, without limitation, LBHI's general unsecured claim arising from funds transferred to LBI for the purpose of funding the VEBA, LBI's asserted claim for administrative expenses for any use of the VEBA funds for the benefit of the Debtors' employees and LBI's claim for reimbursement of any payments or transfers made by the VEBA prior to the Stock Purchase Agreement for the benefit of the Debtors or any of their affiliates. LBHI's claim for the difference between $125 million, which LBHI transferred to LBI on September 12, 2008, and the amount actually used to fund the VEBA, $95 million, is not being released and is fully preserved.

- <u>Representations and Warranties</u>. The SIPA Trustee (i) has not sold or agreed to sell the Shares, except for the Stock Purchase Agreement, (ii) has not caused Aceso to (x) issue any shares of capital stock of Aceso or (y) issue, grant or enter into any option, warrant, call, right or contract of any character requiring the issuance of any shares of capital stock of Aceso, (iii) has not caused Aceso to engage in any business other than maintaining the VEBA, and (iv) has not encumbered or granted a lien or other security interest or caused Aceso to encumber or grant a lien or other security interest in the Shares.

**<u>Sound Business Reasons Support the Sale and Purchase of the VEBA</u>**

23.     Sound business reasons support LBHI's decision to purchase and the SIPA Trustee's decision to sell the VEBA. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such a transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Inst. Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

24.     It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

25.     As stated in the Hershan Declaration, LBHI's entry into the Stock Purchase Agreement is supported by good business judgment. *See* Hershan Declaration at ¶ 5. LBHI and its affiliated Debtors will have access to the VEBA for the payment of their employee benefit costs, which expenses would otherwise constitute costs of administration of the Debtors' estates. Moreover, as stated in the Hershan Declaration, because LBHI had administered the Retiree Health Benefits through March 2009, it already possesses the administrative capability to continue to administer the VEBA. *See* Hershan Declaration at ¶ 6.

26.     As stated in the Harrison Declaration, the SIPA Trustee's entry into the Stock Purchase Agreement is also supported by good business judgment. *See* Harrison Declaration at ¶ 3. Given the restrictive use of the VEBA, and the fact that LBI has no current employees, there is no direct benefit that LBI can realize from its continued indirect ownership of the VEBA. It is in the best interest of LBI and its customers and creditors to avoid incurring

the administrative costs associated with administering the VEBA where there can be no benefit

to these constituencies.  *Id.*

   27. For these reasons, the Stock Purchase Agreement is in the best interest of

LBHI and LBI's estates and creditors and represents a reasonable exercise of their business

judgment.  As such, the relief requested in this Motion should be granted.

## The Sale of the Shares Should be Free and Clear of Liens and Claims

   28. The sale of the Shares to LBHI should be free and clear of any and all

liens, claims, encumbrances and other interests in accordance with section 363(f) of the

Bankruptcy Code.   A debtor may sell property of its estate free and clear of any interest in such

property if one of the conditions in section 363(f)(1) – (5) is satisfied.  *See* 11 U.S.C. § 365(f);

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been

recognized that when a debtor's assets are disposed of free and clear of third-party interests, the

third party is adequately protected if his interest is assertable against the proceeds of the

disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8

(Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long

been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982)

("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and

discharged at the time of sale.").

   29. As stated in the Harrison Declaration, the SIPA Trustee is not aware of

any parties that have any liens, claims, encumbrances, or interests in the Shares and the SIPA

Trustee has not encumbered or otherwise granted a lien or security interest in the Shares.  *See*

Harrison Declaration at ¶ 5.  Thus, the sale of the Shares should be free and clear of liens, claims,

encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code.

## The Settlement Should Be Approved

30.     LBHI and the SIPA Trustee's settlement with respect to the VEBA should

also be approved.  Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-

possession] and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they

are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re*

*Drexel Burnham Lambert Group, Inc.)* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  A decision

to accept or reject a compromise or settlement is within the sound discretion of the Court.  *Id.*

The settlement need not result in the best possible outcome for the debtor, but must not "fall

beneath the lowest point in the range of reasonableness."  *Id.*

31.     Bankruptcy courts have applied the following factors in determining

whether a settlement should be approved:  (i) the probability of success in litigation, with due

consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the

litigation and any attendant expense, inconvenience, and delay; (iii) the proportion of creditors

who do not object to, or who affirmatively support, the proposed settlement; and (iv) the extent

to which the settlement is truly the product of arm's-length bargaining and not the product of

fraud or collusion.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

*Anderson,* 390 U.S. 414, 424 (1968) ("There can be no informed and independent judgment as to

whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised

himself of all facts necessary for an intelligent and objective opinion of the probabilities of

ultimate success should the claim be litigated."); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802

(Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

32.     While a court must evaluate all "factors relevant to a full and fair

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424, a court need

not conduct a "mini-trial" of the merits of the claims being settled, *In re Blair*, 538 F.2d 849, 851

(9th Cir. 1976), or conduct a full independent investigation. *In re Drexel Burnham Lambert*

*Group, Inc.*, 134 B.R. at 505. "[T]he bankruptcy judge does not have to decide the numerous

questions of law and fact . . . The court need only canvass the settlement to determine whether it

is within the acceptable range of reasonableness." *Nellis v. Shugrue*, 165 B.R. 115, 123

(S.D.N.Y. 1994) (internal citations omitted).

      33.    The court may give weight to the informed judgment of the debtor that a

compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522

(S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. at 802 ("Significantly, that test

does not contemplate that I substitute my judgment for the Trustee's, but only that I test his

choice for reasonableness . . . If the Trustee chooses one of two reasonable choices, I must

approve that choice, even if, all things being equal, I would have selected the other.").

      34.    The settlement satisfies the standard for approval. Having assessed the

risks associated with litigating disputes concerning the VEBA as set forth in the Hershan

Declaration and the Harrison Declaration, LBHI and LBI believe the settlement is reasonable and

in the best interests of their estates and creditors. *See* Hershan Declaration at ¶ 7; Harrison

Declaration at ¶¶ 3-4 . The settlement provides for an orderly resolution of all matters related to

the VEBA and the continued administration of the VEBA. The settlement allows the parties to

avoid costly and time-consuming litigation concerning the VEBA. Litigation regarding such

claims would be expensive and protracted and would divert significant resources and attention of

both LBHI and the SIPA Trustee and their respective professionals without attendant benefit for

the respective estates. As stated in the Hershan Declaration and the Harrison Declaration, LBHI

and LBI have negotiated the settlement and the Stock Purchase Agreement at arm's-length to

come to a fair and equitable resolution regarding the VEBA.  *See* Hershan Declaration at ¶ 5;

Harrison Declaration at ¶¶ 3-4.

## LBHI is Entitled to Protection Under Sections 363(m) and (n)

35.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

36.    "The legislative history of § 363(m) confirms that the purpose of § 363(m)

is to protect good faith purchasers of property from reversal of sale authorization on appeal

unless authorization and the sale itself were stayed pending appeal."  *In re Int'l Union, United*

*Auto., Aerospace and Agr. Implement Workers of Am.*, 85 B.R. 666, 667 (D. Mass. 1988).  Thus,

the purpose of the protections afforded to a good faith purchaser is to "encourage optimum bids

for 'property of the estate' from entities not otherwise privy to the bankruptcy proceedings, by

ensuring that orders approving such sales promptly become final . . . ."  *In re Healthco Int'l, Inc.*,

136 F.3d 45, 49 (1st Cir. 1998); *see Cinicola v. Scharfenberger*, 248 F.3d 110, 122 (3d Cir.

2001) ("The provision's blunt finality is harsh but its certainty attracts investors and helps

effectuate debtor rehabilitation.").

37.    As described in Hershan Declaration and the Harrison Declaration, the

Stock Purchase Agreement and the settlement are the result of arms' length, good faith

negotiations.  *See* Hershan Declaration at ¶ 5; Harrison Declaration at ¶ 3.  *See In re Gucci*, 126

F.3d 380 (2d Cir. 1997) (a good faith purchaser is shown by integrity of his conduct during the

course of the sale proceedings); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998) (a

determination of bad faith must be based on untoward conduct by the purchaser, such as fraud or collusion) (citing *Gucci*, 126 F.3d 380); *Comty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985) (a good faith purchaser is one that has not engaged in conduct involving fraud or collusion nor has sought to take grossly unfair advantage of other bidders).  LBHI has not, in connection with the Stock Purchase Agreement or the settlement, engaged in any conduct that demonstrates a lack of good faith or collusion.  Accordingly, LBHI is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

## Notice

38.    No trustee has been appointed in the chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases, LBHI ECF No. 9635, on (i) the U.S. Trustee for Region 2; (ii) the attorneys for the Creditor's Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties who have requested notice in these chapter 11 cases.  The SIPA Trustee has provided notice of this Motion in accordance with the amended order entered in the SIPA proceeding implementing certain notice and case management procedures and other related relief, LBI ECF No. 3466. Both the Debtors and the SIPA Trustee have provided notice of this Motion to the DOL.

39.    LBHI has also served a personalized notice of the Motion (the "Personalized Notice") on each of Lehman's retirees and their beneficiaries and former employees on long term disability (1 per household).  A copy of the Personalized Notice is attached hereto at Exhibit C.  The Personalized Notice informs the recipient that a complete copy of the Motion and the Settlement Agreement can be retrieved at no cost at www.lehman-

docket.com or by request to the Lehman Legal Hotline at lehmanteam@weil.com or (212) 310-

8040.  LBHI and the SIPA Trustee submit that no other or further notice need be provided.

           40.      No previous request for the relief sought herein has been made by LBHI

or the SIPA Trustee to this or any other court.

WHEREFORE LBHI and the SIPA Trustee respectfully request that the Court

grant the relief requested herein, in the form of proposed order annexed hereto, and such other

and further relief as it deems just and proper.

Dated:  October 21, 2011
        New York, New York


/s/ Richard P. Krasnow                          /s/ Jeffrey S. Margolin
Richard P. Krasnow                              James B. Kobak, Jr.
                                                Jeffrey S. Margolin


WEIL, GOTSHAL & MANGES LLP                      HUGHES HUBBARD & REED LLP
767 Fifth Avenue                                One Battery Park Plaza
New York, New York 10153                        New York, New York 10004
Telephone: (212) 310-8000                       Telephone: (212) 837-6000
Facsimile: (212) 310-8007                       Facsimile: (212) 422-4726


Attorneys for Debtors                           Attorneys for James W. Giddens, Esq.,
and Debtors in Possession                       as Trustee for the SIPA Liquidation of
                                                the Business of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re                                               :       **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :       **08-13555 (JMP)**
                                                    :
          Debtors.                                  :       **(Jointly Administered)**
                                                    :
                                                    :
------------------------------------------------------------------x
                                                    :
In re                                               :
                                                    :       **Case No.**
**LEHMAN BROTHERS INC.,**                           :
                                                    :       **08-01420 (JMP) (SIPA)**
          Debtor.                                   :
                                                    :
------------------------------------------------------------------x

**ORDER GRANTING JOINT MOTION
OF LEHMAN BROTHERS HOLDINGS
INC. AND JAMES W. GIDDENS, AS TRUSTEE
FOR LEHMAN BROTHERS INC., PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY
CODE AND RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE (I) FOR AUTHORIZATION
AND APPROVAL OF A STOCK PURCHASE AGREEMENT
REGARDING THE VEBA AND (II) FOR AUTHORIZATION
<u>AND APPROVAL OF A SETTLEMENT REGARDING THE SAME</u>**

Upon the joint motion, dated October 21, 2011 (the "<u>Motion</u>"), of Lehman

Brothers Holdings Inc. ("<u>LBHI</u>" and together with its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession, the "<u>Debtors</u>") and James W. Giddens

(the "<u>SIPA Trustee</u>"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("<u>LBI</u>"),

pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy

Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

for (i) authorization and approval of a Stock Purchase Agreement (the "<u>Stock Purchase</u>

<u>Agreement</u>") between LBHI and the SIPA Trustee, pursuant to which LBHI will purchase and

LBI will sell its 100% ownership interest (the "<u>Shares</u>") in Aceso Holdings Inc., a wholly-owned

subsidiary of LBI that owns the VEBA, and (ii) authorization and approval of the settlement and

release of all claims by LBHI or LBI against each other or their affiliates related to the VEBA,

all as more fully described in the Motion; and upon the Declarations of Robert Hershan on behalf

of LBHI and of Spencer L. Harrison, Esq. on behalf of the SIPA Trustee in support of the

Motion; and the Court having jurisdiction in the Chapter 11 Cases to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order

M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein in the Chapter 11 Cases being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue as to the Chapter 11 Cases being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to consider the

Motion and the relief requested in the SIPA Proceeding pursuant to SIPA § 78eee(b)(4); and

venue as to the SIPA Proceeding being proper before this Court pursuant to SIPA § § 78eee(a)(3)

and 78aa; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for the chapter 11 cases, LBHI ECF No. 9635, to (i)

the United States Trustee for Region 2; (ii) the attorneys for the Official Committee of

Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; and (vi) all parties

who have requested notice in these chapter 11 cases; and due and proper notice of the Motion

having been provided in accordance with the amended order entered in the SIPA Proceeding

implementing certain notice and case management procedures and other related relief, LBI ECF

No. 3466; and personalized notice of the Motion having been provided to each of Lehman's

retirees and their beneficiaries, and it appearing that no other or further notice need be provided;

and a hearing having been held to consider the relief requested in the Motion; and the Court

having found and determined that the relief sought in the Motion is in the best interests of LBHI

and LBI, their estates and creditors, and all parties in interest and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted in all respects; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy

Code, the Stock Purchase Agreement is approved and LBHI is authorized to purchase and the

SIPA Trustee, on behalf of LBI, is authorized to sell Aceso on the terms and conditions set forth

therein; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, LBHI shall

take title to and possession of LBI's interest in the Shares free and clear of all liens, claims,

encumbrances and other interests of any kind or nature whatsoever; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI and the SIPA

Trustee's settlement and release of claims regarding the VEBA set forth in the Stock Purchase

Agreement is authorized and approved; and it is further

ORDERED that LBHI is a good-faith purchaser of LBI's interest in the Shares

and shall be entitled to all of the benefits and protections afforded in section 363(m) of the

Bankruptcy Code; and it is further

ORDERED that the consideration provided by LBHI for LBI's interest in the Shares fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that the Court shall retain jurisdiction to enforce and implement the terms and provisions of the Stock Purchase Agreement and this Order, and resolve disputes thereunder; and it is further

ORDERED that all objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that the failure to specifically include any particular provision of the Stock Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the implementation of the transactions contemplated in the Stock Purchase Agreement be approved in its entirety; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

Dated: _____, 2011
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE