# Exhibit A

**(Stock Purchase Agreement)**

US_ACTIVE:\43318168\24\58399.0003

**Execution Version**

# STOCK PURCHASE AGREEMENT

This STOCK PURCHASE AGREEMENT (the "Agreement") is entered into this October 21, 2011, by and between (i) James W. Giddens, the trustee (the "Trustee") for the liquidation of Lehman Brothers Inc., a Delaware corporation ("LBI"), under the Securities Investor Protection Act of 1970, as amended ("SIPA"), and (ii) Lehman Brothers Holdings Inc. ("LBHI"), a debtor and debtor-in-possession under chapter 11 of title 11 of the United States Code.  The Trustee and LBHI are sometimes referred to herein individually as a "Party" and collectively as the "Parties".

WHEREAS, beginning on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries (together with LBHI, the "Debtors") commenced voluntary cases with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") Case No. 08-13555 (JMP) (collectively, the "Chapter 11 Cases") which cases are currently pending; and

WHEREAS, on September 19, 2008, a proceeding was commenced under SIPA with respect to LBI, and the Trustee was appointed to administer LBI's estate Case No. 08-01420 (JMP) (the "SIPA Proceeding"), which proceeding is currently pending before the Bankruptcy Court; and

WHEREAS, LBI owns 100 shares (the "Shares") of common stock, par value $1.00 per share, of Aceso Holdings Inc., a Delaware corporation (the "Company");

WHEREAS, the Company has entered into and maintains a trust pursuant to a Trust Agreement dated September 12, 2008, amended as of January 1, 2010 ("Trust"), by and between the Company and Paul Imbimbo, as Trustee, which is intended to qualify as a voluntary employees beneficiary association under Section 501(c)(9) of the federal tax code ("VEBA");

WHEREAS, LBI has asserted claims against LBHI and certain of its subsidiaries for the use of funds from the VEBA from and after September 15, 2008;

WHEREAS, LBHI has filed a timely proof of claim against LBI, Proof of Claim No. 5423 (the "Claim"), that includes a claim in the amount of $125,000,000.00 for the amount transferred by LBHI to LBI on or about September 12, 2008, for the purpose, in part, to fund the VEBA (the "VEBA Funding");

WHEREAS, subject to Bankruptcy Court approval, the Trustee, on behalf of LBI, desires to sell the Shares to LBHI, and LBHI desires to purchase the Shares from the Trustee, all on the terms and conditions set forth in this Agreement (the "Transaction"); and

WHEREAS, both Parties agree that their respective estates would benefit from the Transaction.

1

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. **Sale and Purchase of Shares.**

   a. Upon the terms and subject to the condition set forth in section 1(b) of this Agreement, at the Closing (as defined below):

   (i) the Trustee, on behalf of LBI, shall sell, transfer and assign the Shares to LBHI free and clear of all liens, claims and encumbrances;

   (ii) LBHI shall purchase the Shares from the Trustee, for the aggregate purchase price of $1,885 (the Purchase Price") and the mutual releases set forth herein;[1] and

   (iii) LBHI agrees to a reduction of that portion of the Claim that relates to the VEBA Funding from $125,000,000.00 to $30,000,000.00.

   b. The closing of the Transaction (the "Closing") shall occur on the date that the Bankruptcy Court shall have entered in the Chapter 11 Cases and the SIPA Proceeding an order or orders reasonably acceptable in form and substance to each of the Parties approving the Transaction and authorizing LBHI and the Trustee to consummate the Transaction, and such order(s) shall have become a Final Order (as hereinafter defined). For purposes of this Agreement, "Final Order" shall mean an order or judgment of the Bankruptcy Court that has not been reversed, vacated or stayed, and, unless waived by LBHI and the Trustee, as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

---

[1] This amount has been determined by adding (1) the purchase price for the initial issuance of the Shares, as provided in 9/12 minutes included in the corporate materials that the Trustee received from LBHI ($1,000), (2) the 2010 statutory representation fee (paid 12/9/09 - $284) (3) the 2010 franchise tax and annual report filing fee (paid 2/24/10 - $155), (4) the 2011 statutory representation fee ($291) and (5) the 2011 Delaware fee ($155).

c.  Upon LBHI's delivery of the Purchase Price at the Closing, by wire transfer (or as otherwise agreed by the Parties), the Shares shall be deemed to be sold, transferred and assigned to LBHI.[2]

d.  In connection with the Transaction, all representations and warranties, whether express, implied, statutory or otherwise, are hereby disclaimed by the Parties, except as specifically provided herein.

e.  In the event that the condition precedent to the Transaction set forth in section 1(b) above is not satisfied by January 31, 2012, then either Party may terminate this Agreement upon written notice to the other Party.  If this Agreement is terminated, this Agreement, except for this section 1.e, shall forthwith become void and have no effect, without any liability on the part of any Party or its directors, officers, or stockholders (or holders of other equity interests) and each of the Parties' respective rights, claims and defenses with respect to any matter covered by or related to this Agreement shall be immediately restored as if this Agreement had never existed.

2. **Representations of the Trustee.**

a.  The Trustee (i) has not sold or agreed to sell the Shares, except for this Agreement, (ii) has not caused the Company to (x) issue any shares of capital stock of the Company or (y) issue, grant or enter into any option, warrant, call, right or contract of any character requiring the issuance of any shares of capital stock of the Company, (iii) has not caused the Company to engage in any business other than maintaining the Trust; and (iv) has not encumbered or granted a lien or other security interest or caused the Company to encumber or grant a lien or other security interest in the Shares.  Upon the sale of the Shares to LBHI at the Closing, LBHI will receive good title to the Shares, free and clear of all liens.

3. **Representations of LBHI.**

a.  LBHI owns and has not assigned or agreed to assign any interest in the portion of the Claim related to the VEBA Funding.

4. **Release of LBI**.  From and after the Closing, neither the Trustee nor LBI, nor any of their respective employees, consultants, agents, attorneys or representatives, nor any person designated at any time by the Trustee, on behalf of LBI, as a director of the Company (the Trustee, LBI and all such other persons and entities, collectively, the "LBI Released Parties"), shall have any liability or obligation to LBHI (or any person or entity acting on behalf of or through LBHI) and any of its controlled affiliates (including its affiliated chapter 11 Debtors) and, after the Closing, the Company (or any person or entity acting on behalf of or through the Company), for any claims, causes of action, demands, liabilities, damages and/or losses (whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, at law or in equity, and whether based on any statute, regulation, common law or otherwise) arising out of, with respect to, or by reason of any action(s) taken or omitted to be taken by, for or in respect

---

[2]  The Aceso corporate materials that the Trustee received from LBHI did not include a stock certificate.

of the Company or the VEBA at any time or from time to time since the Company's formation (any and all such claims and other matters, collectively, "LBHI Claims"). Effective as of the Closing, LBHI, its controlled affiliates (including its affiliated chapter 11 Debtors), the Company, any person or entity acting by or on behalf of LBHI or the Company, and LBHI's or the Company's respective successors or assigns, hereby irrevocably release, waive and discharge the LBI Released Parties from any and all past, present and future LBHI Claims.

5.  **Release of LBHI**. From and after the Closing, neither LBHI nor any of its controlled affiliates (including its affiliated chapter 11 Debtors), or any of their respective employees, consultants, agents, attorneys or representatives (collectively, the "LBHI Released Parties"), shall have any liability or obligation to the LBI estate or the Trustee (or any person acting on behalf of or through the Trustee or the LBI estate) for any claims, causes of action, demands, liabilities, damages and/or losses (whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, at law or in equity, and whether based on any statute, regulation, common law or otherwise) arising out of, with respect to, or by reason of any action(s) taken or omitted to be taken by, for or in respect of the Company or the VEBA at any time or from time to time since the Company's formation, including, without limitation, any purported claims of the Trustee on behalf of LBI against LBHI or any of its controlled affiliates, including its affiliated chapter 11 Debtors, for reimbursement of any of the VEBA funds, including on an administrative priority basis on the basis that such funds were used for the benefit of the LBHI or its controlled affiliates or LBHI's or its controlled affiliates' employees (any and all such claims and other matters, collectively, "LBI Estate Claims"). Effective as of the Closing, the Trustee on behalf LBI, and its successors and assigns, hereby irrevocably releases, waives and discharges the LBHI Released Parties from any and all past, present and future LBI Estate Claims.

6.  **Miscellaneous Provisions**.

    a.  This Agreement shall be construed, performed and enforced in accordance with, and governed by the laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of the State of New York are superseded by the Bankruptcy Code or SIPA. The Parties irrevocably elect the Bankruptcy Court as the sole judicial forum for adjudication of any matters arising under or in connection with the Agreement and consent to the exclusive jurisdiction of the Bankruptcy Court. Each of the Parties irrevocably waives any objection, including any objection to laying of venue or based on the grounds of *forum non conveniens*, which he or it may now or hereafter have to the bringing of any action or proceeding in the Bankruptcy Court in respect of this Agreement or the Transaction.

    b.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. This Agreement may not be assigned by either Party without the prior written consent of the other Party, and any assignment in violation hereof shall be null and void and of no force or effect.

    c. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof.  Any amendment, modification or supplement to this Agreement must be in writing, state that it is amending, modifying or supplementing this Agreement, and signed by both Parties.  Each Party shall pay his or its own expenses in connection with this Agreement and the Transaction.

    d. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together shall constitute but one and the same instrument, it being understood and agreed that delivery of a signed counterpart of this Agreement by facsimile transmission or by email shall constitute valid and sufficient delivery thereof.

*[Remainder of page intentionally left blank]*

6

IN WITNESS WHEREOF, this Agreement is hereby executed as of the day and year first written above.

> JAMES W. GIDDENS, as Trustee for the Liquidation of Lehman Brothers Inc. Under the Securities Investor Protection Act
>
> By : HUGHES HUBBARD & REED LLP, Counsel for the Trustee
>
> By: _Ellen Friedenberg_
> Name: Ellen Friedenberg
> Title: Partner
>
>
> LEHMAN BROTHERS HOLDINGS INC.
>
>
> By: _____
> Name:
> Title:

IN WITNESS WHEREOF, this Agreement is hereby executed as of the day and year first written above.

> JAMES W. GIDDENS, as Trustee for the Liquidation of Lehman Brothers Inc. Under the Securities Investor Protection Act
>
> By : HUGHES HUBBARD & REED LLP, Counsel for the Trustee
>
> By: _____
>     Name:
>     Title:
>
>
> LEHMAN BROTHERS HOLDINGS INC.
>
> By: _____*[signature]*_____
>     Name: ROBERT HERSHAN
>     Title: SVP & SECRETARY