Expedited Hearing Requested

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
**In re**                                                         :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :    **08-13555 (JMP)**
                                                                  :
                                    **Debtors.**                  :    **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004 AND 9019 FOR APPROVAL OF THAT CERTAIN SETTLEMENT AMONG THE LEHMAN PARTIES AND THE SUNCAL PARTIES

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, including Lehman Commercial Paper Inc. ("LCPI"), as debtors-in-possession (together, the "Debtors," and collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and respectfully represent:

### Preliminary Statement

1.     Prior to the commencement of the Debtors' chapter 11 cases, LCPI and three non-Debtor Lehman affiliates, Lehman ALI, Inc. ("ALI"), OVC Holdings LLC ("OVC Lender"), and Northlake Holdings LLC ("Northlake Lender, and together with LCPI, ALI and

OVC Lender, the "Lehman Creditors") provided approximately $1.8 billion in senior secured

financing (the "Financing") to certain direct or indirect subsidiaries and/or affiliates of SCC

Acquisitions, Inc. ("SCC Acquisitions"), pursuant to various separate loan agreements.  The

Financing was used by such subsidiaries and/or affiliates to acquire and develop certain real

estate projects located in California.

       2.      After the commencement of the Debtors' chapter 11 cases, certain of such

subsidiaries and/or affiliates of SCC Acquisitions became involuntary debtors (the "SunCal

Involuntary Debtors")[1] or voluntary debtors (the "SunCal Voluntary Debtors"[2] and together with

the SunCal Involuntary Debtors, the "SunCal Debtors") in cases under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Central District of California,

Santa Ana Division (the "California Bankruptcy Court").  The real estate projects owned by the

SunCal Debtors are collectively referred to herein as the "SunCal Projects."

       3.      The Lehman Creditors have filed a plan of reorganization for all of the

SunCal Involuntary Debtors except SunCal Century City, and ALI and LCPI (together, the

"Lehman Lenders") have filed a plan of reorganization for eleven of the SunCal Voluntary

Debtors (all except the SJD Debtors, SunCal Communities III, SCC/Palmdale, Del Rio and

SunCal Emerald) (such plans being collectively referred to herein as the "Lehman-SunCal Plans"

---

[1] The SunCal Involuntary Debtors are:  SunCal Oak Knoll, LLC; SunCal Torrance Properties, LLC; SunCal Marblehead, LLC; SunCal Heartland, LLC; LB/L-SunCal Northlake, LLC; LB/L-SunCal Oak Valley, LLC ("SunCal OVC"); SunCal PSV, LLC; Delta Coves Venture, LLC ("Delta Coves"); and SunCal Century City, LLC ("SunCal Century City").  Following the commencement of the chapter 11 cases of the SunCal Involuntary Debtors, Steven Speier was appointed as trustee to administer such cases.

[2] The SunCal Voluntary Debtors are: Palmdale Hills Property, LLC; SunCal Bickford Ranch, LLC; Acton Estates, LLC; SunCal Summit Valley, LLC; SCC Communities LLC ("SCC Communities"); Tesoro SF, LLC ("Tesoro"); SunCal Communities I, LLC; Seven Brothers, LLC; Kirby Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC; SJD Development Corp. ("SJD Corp."); SunCal Communities III, LLC ("SunCal Communities III"); SCC/Palmdale, LLC ("SCC/Palmdale"); SJD Partners, Ltd. (together with SJD Corp., the "SJD Debtors"); North Orange Del Rio Land, LLC ("Del Rio"); and SunCal Emerald Meadows, LLC ("SunCal Emerald").

and each shall be referred to herein as a "Lehman-SunCal Plan").  The SunCal Debtors subject to

the Lehman-SunCal Plans are collectively referred to as the "Plan Debtors," the SunCal Projects

owned by the Plan Debtors are collectively referred to as the "Plan Projects" and the loans made

to the SunCal Debtors by the Lehman Creditors, or any of them, are collectively referred to as

the "Lehman Loans."

    4.    The hearing to consider confirmation of the Lehman-SunCal Plans is

currently scheduled to commence in the California Bankruptcy Court on October 24, 2011.  Also

scheduled on October 24, 2011 is a hearing to consider confirmation of the six plans of

reorganization for all of the SunCal Debtors except SunCal Century City (collectively, the

"SunCal Plans" and each a "SunCal Plan") filed by one or more affiliates of SCC Acquisitions,

SunCal Management, LLC ("SunCal Management"), and the SunCal Voluntary Debtors,

seeking, among other things, to sell, at a public auction, all of the SunCal Projects and other

assets of the SunCal Debtors (except the SJD Debtors) and, with respect to the SJD Debtors,

seeking to continue litigation proceedings against certain Lehman entities to recover certain

assets previously owned by the SJD Debtors.

    5.    By this Motion, the Debtors seek approval of a settlement transaction

between the Lehman Parties and the SunCal Parties (the "SunCal Settlement Transaction").  The

Lehman Parties have negotiated a term sheet (the "SunCal Term Sheet") that sets forth the

material terms, provisions and conditions of, and the obligations of the parties to the SunCal

Settlement Transaction, a settlement which resolves several years of litigation reflected in

numerous pending actions instituted by one or more affiliates of SCC Acquisitions, the SunCal

Voluntary Debtors, SunCal Management, Bruce Elieff and/or various affiliates thereof.  The

SunCal Term Sheet, is attached hereto as Exhibit A, is fully binding on the parties thereto once it

becomes effective in accordance with its terms.  The SunCal Term Sheet contemplates that the

parties will enter into a binding settlement agreement memorializing the terms, conditions and

provisions of the SunCal Term Sheet (the "SunCal Settlement Agreement").  The SunCal

Settlement Transaction will be subject to (a) the execution and delivery of the SunCal Settlement

Agreement, (b) the approval of the SunCal Settlement Transaction by this Court, and (c) the

confirmation and occurrence of the effective date for the Lehman-SunCal Plans as to all SunCal

Debtors subject to the Lehman-SunCal Plans.   As set forth in more detail below, the SunCal

Settlement Transaction (reflected in the SunCal Term Sheet and to be memorialized in the

SunCal Settlement Agreement) contemplates, among other things:

- the delivery of mutual releases with respect to all claims relating to the SunCal Projects (except the Pacific Point project) and the related Lehman Loans and SunCal Debtors;

- the dismissal of all pending litigation instituted by any of the SunCal Parties or Voluntary Debtors against the Lehman Parties (except with respect to the Pacific Point project or the SJD Debtors);

- the withdrawal of the SunCal Plans and the objections filed by certain of the SunCal Parties to the Lehman-SunCal Plans;

- the granting of an option to SCC Acquisitions (or an affiliate designated thereby) to purchase the SunCal Projects owned by SunCal OVC and Delta Coves, each for a stated price that the Lehman Creditors believe is at least equal to the fair market value of each of those projects;

- the release by the Lehman Lenders of any direct or indirect liens and/or security interests they have on the projects and other assets owned by SCC Communities, Tesoro and Del Rio (collectively, the "Interim Loan Assets"); and

- the affirmative vote of the SunCal Parties to the Lehman-SunCal Plans.

6.      The Lehman Creditors have been involved in substantial litigation in the

SunCal Debtors' chapter 11 cases to preserve their sizeable investments in the SunCal Projects.

The Debtors believe that the SunCal Settlement Transaction is critical to the resolution of costly

and protracted litigation, and more importantly, integral to confirming the Lehman-SunCal Plans.

Entering into the SunCal Settlement Transaction will result in significant cost savings and

resolve what has been several years of litigation and failed attempts at mediation.  Further, the

SunCal Settlement Transaction provides the Lehman Creditors with a clear path to confirmation

of the Lehman-SunCal Plans without the uncertain outcome inherent in a competing plan contest

and resulting in the conveyance to the Lehman Creditors of the Plan Projects (other than the

Interim Loan Projects) in fairly short order.

### Relief Requested

7.    The Debtors request, pursuant to sections 105(a) and 363 of the

Bankruptcy Code and Bankruptcy Rule 9019, as applicable, authority for LBHI and LCPI to

enter into the SunCal Settlement Agreement, in accordance and consistent with the terms,

provisions and conditions set forth in the SunCal Term Sheet, and to consummate the

transactions contemplated thereunder.

### Jurisdiction

8.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

9.    Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

10.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and the other Debtors commenced with this

Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases

have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

12.    On September 1, 2011, the Debtors filed a third amended joint chapter 11 plan (the "Plan") and disclosure statement (the "Disclosure Statement") [ECF Nos. 19627 and 19629].  On September 1, 2011, this Court entered an amended order [ECF No. 19631] approving the Disclosure Statement, establishing solicitation and voting procedures in connection with the Plan, scheduling the confirmation hearing and establishing notice and objection procedures for the confirmation hearing.

13.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [ECF No. 2].

## The SunCal Settlement Transaction

14.    On or about October 22, 2011, after almost three years of litigating countless disputes with the SunCal Parties, the Lehman Parties entered into the SunCal Term Sheet, which is fully binding on the parties thereto, subject to this Court's approval.  The SunCal Settlement Transaction will result in resolving the various disputes between the Lehman Parties and SunCal Parties that have lasted for almost three years.  Pursuant to the SunCal Term Sheet,

the SunCal Parties have agreed to perform the following actions immediately upon execution of

the SunCal Term Sheet and prior to 9:00 a.m. Pacific Time on Monday, October 24, 2011 (the

"Filing Deadline") which deadline is prior to the commencement of the confirmation hearing for

the SunCal Plans and Lehman-SunCal Plans:[3]

- immediately withdraw each of the SunCal Plans;

- immediately withdraw all objections to the Lehman-SunCal Plans;

- file a plan support statement in favor of the Lehman-SunCal Plans;

- file a motion seeking to change any of the SunCal Parties' votes on the Lehman-SunCal Plans to "yes" votes; and

- withdraw any objections filed by any of the SunCal Parties or SunCal Voluntary Debtors to 3018 motions or stipulations or to the "yes" votes of any person or entity in favor of the Lehman-SunCal Plans.

The effectiveness of the SunCal Term Sheet is conditioned upon the satisfaction of the foregoing

conditions by the SunCal Parties prior to the Filing Deadline.  Once the SunCal Term Sheet

becomes effective and in exchange for the SunCal Parties' satisfaction of the above conditions

immediately upon execution of the SunCal Term Sheet, the Lehman Parties have agreed to the

do following:

- subject to certain limitations, the Lehman Parties will reclassify the claims of SunCal Management under the Lehman-SunCal Plans as "Reliance Claims," which receive the maximum recoveries available to unsecured creditors under the Lehman-SunCal Plans if a release is provided in favor of the "Lehman Released Parties" (as defined in the Lehman-SunCal Plans); and

---

[3] The brief description of the SunCal Term Sheet contained herein is included for convenience only.  Nothing herein is intended to supersede the terms of the SunCal Term Sheet or the effectuated SunCal Settlement Agreement.  In the event of any inconsistencies between the SunCal Term Sheet and the descriptions herein, the SunCal Term Sheet shall control.  Capitalized terms used in this summary but not defined shall have the meanings ascribed to them in the SunCal Term Sheet.

■ to seek expedited approval of the SunCal Settlement Transaction, as reflected in the SunCal Term Sheet and to be memorialized in the SunCal Settlement Agreement, that, on information and belief, was of paramount importance to the SunCal Parties.

15.    Pursuant to the terms, provisions and conditions set forth in the SunCal Term Sheet, the SunCal Parties are obligated to provide the Lehman Parties with certain benefits only upon the "Settlement Effective Date" which is the date on which the following conditions are satisfied:  (a) the SunCal Settlement Agreement is executed and delivered, (b) the SunCal Settlement Transaction is approved by this Court, and (c) the Lehman-SunCal Plans are confirmed and become effective as to all Plan Debtors.  Accordingly, the SunCal Term Sheet sets forth a further set of compromises which are subject, in part, to the Court's approval of the SunCal Settlement Transaction.  Pursuant to the SunCal Term Sheet, on the Settlement Effective Date, the SunCal Parties have agreed to do the following:

■ release all claims relating to the SunCal Projects (other than Pacific Point) and the related Lehman Loans and SunCal Debtors;

■ dismiss with prejudice all pending litigation instituted by any of the SunCal Parties or SunCal Voluntary Debtors against any of the Lehman Parties and/or their affiliates, except to the extent relating to the Pacific Point Project, SJD Debtors and the Lehman Loans relating thereto.

■ withdraw and release (or, with respect to SunCal Emerald, assign) all claims of SunCal Management against any of the SunCal Debtors (other than the SJD Debtors).

16.    In light of the Lehman Parties' litigation exposure amounting to over a hundred million dollars in claims and damage amounts that have been asserted in various pending actions filed by one or more of the SunCal Parties and/or the SunCal Voluntary Debtors, almost all of which would be resolved upon consummation of the SunCal Settlement

Transaction,[4] it is critical to the Debtors that the SunCal Settlement Transaction be fully

implemented as contemplated in the SunCal Term Sheet, thereby providing the Lehman Parties

with among the most important benefits of the SunCal Settlement Transaction as described

above.  In exchange for these benefits, the Lehman Parties have agreed to the following, all of

which are conditioned upon the occurrence of the Settlement Effective Date:

- release Bruce/Kathy Elieff and SCC Acquisitions from all bond indemnity claims asserted against them by and acquired by the Lehman Parties from Bond Safeguard Insurance Company and its affiliate, Lexon Insurance Company, and from Arch Insurance Company, each through the Bond Safeguard Settlement and Arch Settlement, respectively, approved by the Court on October 19, 2011 [ECF Nos. 21034 and 21037] (collectively, the "Acquired Bond Indemnity Claims");

- release the SunCal Parties with respect to all claims relating to all of the SunCal Projects (except for Pacific Point) and the related Lehman Loans and SunCal Debtors;

- provide SCC Acquisitions (or an affiliate designated thereby) an option to purchase the Plan Projects owned by SunCal OVC and Delta Coves, each for a stated purchase price that the Lehman Creditors believe is at least equal to the fair market value of each of those projects;

- the release by the Lehman Lenders of any direct or indirect liens and/or security interests they have on the Interim Loan Assets; and

- pay SunCal Management an aggregate amount equal to $3 million in satisfaction of (or, at the option of the Lehman Parties, for an assignment of) all claims asserted by SunCal Management against the Debtors (other than the SJD Debtors and SunCal Century City) including any pre-petition or post-petition claims.

---

[4] The SunCal Settlement Transaction does not resolve any of the litigation pending with respect to the Pacific Point project or the related Lehman Loans made with respect to such project.  However, almost 85% of the first lien Lehman Loan secured by the Pacific Point project is held by Lehman Re Ltd. The SunCal Settlement Transaction also does not resolve claims that SunCal Emerald may have against the Lehman Lenders as the Lehman Creditors have not filed a plan for SunCal Emerald and thus would not be released by SunCal Emerald on the Settlement Effective Date.

17.    Absent the execution and delivery of a SunCal Settlement Agreement, one of the conditions to the Settlement Effective Date would not be satisfied and among the most significant benefits of the SunCal Settlement Transaction for the Lehman Parties would never be realized.  In the meantime, the SunCal Parties are not precluded from continuing to prosecute the pending litigation which would likely cause the Lehman Parties to continue to dedicate substantial resources and funds attendant in engaging in complex and protracted litigation.  If the parties have not otherwise entered into a SunCal Settlement Agreement on or prior to November 30, 2011, then the parties are required to submit any remaining disputes with respect to a final SunCal Settlement Agreement to resolution by Judge Daniel Weinstein (the mediator in the prior mediation between the SunCal Parties, the Lehman Parties and various other constituents in the SunCal cases).

### The Relief Requested Should be Approved Pursuant to Rule 9019 and Section 363 of the Bankruptcy Code

18.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  *Drexel Burnham Lambert Group*, 134 B.R. at 505.  Additionally, a court may exercise its discretion "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). The

settlement need not result in the best possible outcome for the debtor, but must not "fall beneath

the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at

505; *see also Cosoff v. Rodman* (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); *In re

Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

19.     The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert

Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522-23 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802

(Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my

judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee

chooses one of two reasonable choices, I must approve that choice, even if, all things being

equal, I would have selected the other.") (internal citations omitted).

20.     Significantly, there is no requirement that "the value of the compromise …

be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-

28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

21.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the

Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court

to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in

applying this section, have required that it be based upon the sound business judgment of the

debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge

reviewing a section 363(b) application must find from the evidence presented a good business

reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel

Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  In addition, section 105 of the Bankruptcy

Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that

is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

22.     It is generally understood that "[when] the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville

Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "'the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company.'"  *In

re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

23.     The SunCal Term Sheet, to be ultimately memorialized in the SunCal

Settlement Agreement, satisfies the legal standards established under Bankruptcy Rule 9019 and

section 363(b) of the Bankruptcy Code and is in the best interests of the Debtors' estates.  The

terms of the SunCal Settlement Transaction, as embodied in the SunCal Term Sheet, are the

product of a good-faith, arms' length negotiation process between SunCal Parties and the

Lehman Parties.  The parties to the SunCal Term Sheet were each represented by counsel and have participated in numerous meetings, discussions and even non-binding mediation.  The parties have negotiated the terms of the SunCal Term Sheet, and as a result of this successful negotiation process, the Lehman Parties and SunCal Parties have arrived at the agreed set of terms described herein that provide mutually acceptable benefits and burdens to all concerned.

24.    The Debtors believe that entering into the SunCal Settlement Transaction will enable the Lehman Creditors to confirm the Lehman-SunCal Plans in the most expeditious and efficient fashion.  Withdrawal of any objections to the Lehman-SunCal Plans and withdrawal of any 3018 motions or stipulations or objections to the "yes" votes of any person or entity in favor of the Lehman-SunCal Plans will facilitate a successful hearing on confirmation of the Lehman-SunCal Plans.  Thus, entry into the SunCal Settlement Transaction will relieve a potential obstacle to confirmation and effectiveness of the Lehman-SunCal Plans.

25.    The Debtors are cognizant of their litigation exposure with respect to actions instituted by the SunCal Parties and the uncertainty attendant in continuing to litigate said actions including a fraudulent conveyance action seeking to avoid certain liens and security interests granted to ALI with respect to the Lehman Loans secured by the Interim Loan Assets. Entering into the SunCal Settlement Transaction will result in significant cost savings and resolve what has been several years of litigation and failed attempts at mediation.  Ultimately, the SunCal Settlement Transaction will resolve the risk of engaging into costly and prolonged litigation where the outcome is uncertain.  After analyzing various alternatives, the Lehman Parties have determined that entering into the SunCal Settlement Transaction with the SunCal Parties on the terms described in the SunCal Term Sheet will provide the best framework for resolving disputes with the SunCal Parties.

26.    The cost of entering into the SunCal Settlement Agreement, namely

releasing the liens on the Interim Loan Projects, releasing Bruce/Kathy Elieff and SCC

Acquisitions from the Acquired Bond Indemnity Claims, and paying SunCal Management $3

million in satisfaction of its claims respecting pre- and post-petition management fees, is

outweighed by the benefits of (i) obtaining a resolution of pending litigation against the Lehman

Parties, (ii) the withdrawal of the SunCal Plans and objections to the Lehman-SunCal Plans, (iii)

receiving an affirmative vote by the SunCal Parties to support the Lehman-SunCal Plans, and

(iv) obtaining a release of all nearly all of the claims asserted by the SunCal Parties against the

Lehman Parties.  In light of such benefits, the SunCal Settlement Transaction, the terms,

provisions and conditions of which are set forth in the SunCal Term Sheet and are to be

memorialized in the SunCal Settlement Agreement, are fair and reasonable, benefit the Debtors,

their estates, and their creditors and should be approved.

27.    For the reasons set forth above, granting authority for LBHI and LCPI to

enter into the SunCal Settlement Transaction and to execute and deliver the SunCal Settlement

Term Sheet and thereafter to enter into the SunCal Settlement Agreement memorializing the

terms set forth in the SunCal Term Sheet, all in accordance with the terms set forth in the SunCal

Term Sheet, and to consummate the transactions contemplated thereunder, is in the best interests

of the Debtors' estates and a proper exercise of the Debtors' business judgment and should be

approved.

**<u>Reservation of Rights</u>**

28.    Nothing contained in the SunCal Term  Sheet or this Motion shall be

deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits

or remedies of LBHI, LCPI or any other Lehman Creditor, that such entity may have or choose

to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties.

29.    Further, as among the Debtors and non-Debtor affiliates, all pre- and post-petition rights, claims and defenses, including, but not limited to those associated with the costs and benefits of the SunCal Settlement Transaction and this Motion, are preserved.

**Notice**

30.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel for the SunCal Parties; and (vii) all parties who have requested notice in these chapter 11 cases.  No other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated: October 24, 2011
        Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

**<u>EXHIBIT A</u>**

**The SunCal Term Sheet**

# Term Sheet Regarding Settlement with SunCal Parties[1]

| | |
|---|---|
| **Parties to Settlement Agreement:** | Lehman Parties:  Lehman ALI, Inc., Lehman Commercial Paper Inc., OVC Holdings LLC, Northlake Holdings LLC, Lehman Brothers Holdings Inc.<br><br>SunCal Parties:  SCC Acquisitions, Inc., SCC Acquisitions, LLC, SunCal Management, LLC, Bruce Elieff and other principals and affiliates of any of them to be specifically identified by the Lehman Parties prior to the execution and delivery of the Settlement Agreement (as defined below) and included as signatories therein. |
| **Settlement Transaction:** | Settlement of all claims and causes of action asserted by and between the Lehman Parties, or any of them, and the SunCal Parties, or any of them, with respect to the Plan Projects, the Emerald Meadows Project and Del Rio CFD Bond Proceeds, and the related Debtors and Lehman Loans, including, without limitation, the dismissal, with prejudice, of all pending litigation instituted by any of the SunCal Parties or Voluntary Debtors against any of the Lehman Parties and/or their affiliates (including, without limitation, all of the pending litigation more particularly described on Exhibit A attached hereto and made a part hereof) (collectively, the "Pending SunCal Litigation") except to the extent relating to the Pacific Point Project, SJD Partners, Ltd., SJD Development Corp. (the "SJD Debtors") and/or the Lehman Loans relating thereto.  The settlement described in this Term Sheet shall be documented in a settlement agreement (the "Settlement Agreement") to be prepared by counsel to the Lehman Parties consistent with the terms and provisions of this Term Sheet and negotiated in good faith by the Lehman Parties and the SunCal Parties. |
| **Plan Support, Withdrawal of SunCal Plans and 3018 Motions, Change in Voting:** | Upon execution and delivery of this Term Sheet by the parties hereto, the SunCal Parties shall, and/or shall cause the Voluntary Debtors to, (i) no later than Monday, October 24, 2011, at 9:00 a.m. Pacific Time (the "Filing Deadline") file a withdrawal of (x) each of the plans filed by any of the SunCal Parties and/or Voluntary Debtors with respect to the Debtors (collectively, the "SunCal Plans"), and (y) all objections to the Lehman Plans and any and all aspects thereof, (ii) file a plan support statement supporting the Lehman Plans no later than the Filing Deadline, (iii) withdraw objections filed by any of the SunCal Parties or Voluntary Debtors to 3018 motions or stipulations or to the "yes" votes of any person or entity in favor of the Lehman Plans, no later than the Filing Deadline, and (iv) file a motion seeking to change any SunCal Party's votes on the Lehman Plans to "yes" votes no later than the Filing Deadline.  The effectiveness of this Term Sheet shall be expressly conditioned upon the satisfaction of each of the foregoing conditions on or prior to the Filing Deadline, failing which this Term Sheet shall terminate automatically without further notice to any party, whereupon the parties shall be relieved of all liability or obligation hereunder.  If each of |

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the *Third Amended Joint Chapter 11 Plan for Eleven Voluntary Debtors Proposed by Lehman VD Lenders*, dated July 15, 2011 [Docket No. 2598] (as amended, the "Joint VD Plan") and/or in the *Third Amended Joint Chapter 11 Plan for Eight Trustee Debtors Proposed by the Trustee and Subject Lehman Creditors*, dated July 15, 2011 [Docket No. 2595] (as amended, the "Joint TD Plan" and together with the Joint VD Plan, the "Lehman Plans").

..

|  | the foregoing conditions are fully satisfied by the Filing Deadline (the "Term Sheet Effective Date"), this Term Sheet shall become binding and enforceable against the parties hereof as provided herein; provided, that the obligations of the Lehman Parties (except those described in this paragraph) shall be conditioned upon obtaining Lehman Court Approval (as defined below). From and after the Term Sheet Effective Date, the SunCal Parties shall reasonably cooperate with the Plan Proponents in their efforts to secure Confirmation and Effective Dates for the Lehman Plans as to each of the Plan Debtors.  On the Term Sheet Effective Date, the Lehman Parties shall (i) disclose the Term Sheet to the California Bankruptcy Court, (ii) agree that regardless of whether the Settlement Effective Date (as defined below) occurs, the claims of SunCal Management against the Plan Debtors are to be reclassified as "Reliance Claims" provided that (1) such claims shall be payable under the Lehman Plans only to the extent allowed, and (2) the Lehman Parties shall retain and/or have the right to file and prosecute claims objections with respect to the claims against the Debtors of any of the SunCal Parties or their affiliates (other than the Debtors), and (iii) fully cooperate with the SunCal Parties to obtain California Bankruptcy Court approval of the settlement reflected in this Term Sheet (to be documented in the Settlement Agreement), provided that the settlement reflected in this Term Sheet shall be subject to the Lehman Court Approval other than as to the matters described in this paragraph that become effective as described in this paragraph regardless of the Settlement Effective Date. |
|---|---|
| **Conditions to Settlement Transaction:** | The Settlement Transaction will be subject to the satisfaction of each of the following conditions (collectively, the "Settlement Effectiveness Conditions"):<br><br>(i)  Execution and delivery of the Settlement Agreement;<br><br>(ii) Approval of the Settlement Transaction as reflected in this Term Sheet by the New York Bankruptcy Court and the entry of a final order of the New York Bankruptcy Court ("Lehman Court Approval"); and<br>(iii) Confirmation of and occurrence of the effective date for the Lehman Plans as to all Plan Debtors.<br><br>The date on which all of the above conditions have been satisfied shall be referred to as the "Settlement Effective Date." |
| **Release of Acquired Bond Indemnity Claims:** | Upon the occurrence of the effective date for each of the Lehman Plans, the Lehman Parties or their affiliates will have acquired from Arch Insurance Company ("Arch") and Bond Safeguard Insurance Company/Lexon Insurance Company (collectively, "Bond Safeguard") certain rights and claims against Bruce/Kathy Elieff and SCC Acquisitions, Inc. (collectively, the "Bond Indemnitors") pursuant to separate settlement agreements between the Lehman Parties (or certain of them) and Arch and Bond Safeguard, respectively, relating to the Plan Projects to be acquired by the Lehman Nominees (collectively, the "Acquired Bond Indemnity Claims").  On the Settlement Effective Date, the Lehman Parties shall, or shall cause their affiliates to, release the Bond Indemnitors from all Acquired Bond Indemnity Claims including, without limitation, any such Acquired Bond Indemnity Claims which are the subject of any judgment (stipulated or otherwise) in favor of Bond Safeguard obtained by Bond Safeguard in connection with the action, or settlement of such action, filed by Bond Safeguard against the Bond Indemnitors (among others). |
| **Option to Purchase** | SCC Acquisitions, Inc. ("Acquisitions") or one or more affiliates of |

| | |
|---|---|
| **Oak Valley Champions Project and Delta Coves Project:** | Acquisitions to be designated by Acquisitions (each, an "Optionee") shall have the option (the "Option") to purchase one or both of the following Plan Projects (the "Option Projects") at the designated purchase prices on or after the Settlement Effective Date (with claims against the Debtors owning the Option Projects to receive treatment as provided under the Joint TD Plan):<br><br>      a.     Oak Valley Champions Project – $28 million<br>      b.     Delta Coves Project  -- $29.5 million<br><br>The Option as to either or both of the Option Projects must be exercised no later than 90 days (the "Option Exercise Deadline") following the execution and delivery of this Term Sheet by all parties hereto (the "TS Execution Date") and the closing of the purchase of such Option Project(s) must be consummated no later than 15 days following the exercise of the Option (the "Option Closing Deadline").  The Optionees may exercise the Option by giving written notice to the Lehman Parties to be received by the Lehman Parties no later than the Option Exercise Deadline. The Option will terminate automatically with respect to any Option Project for which the required written notice of exercise of the Option is not received by the Lehman Parties on or prior to the Option Exercise Deadline.  If not previously terminated, the Option will terminate on the Option Closing Deadline with respect to any Option Project if a closing for the purchase of such Option Project has not occurred by the Option Closing Deadline other than solely by reason of a breach by the Lehman Parties or applicable Lehman Nominee of their obligations under the Settlement Agreement.  The conveyance of the Option Projects shall be on an "as is where is" basis without any representations or warranties whatsoever by the seller but shall be conveyed free and clear of all mechanics' liens, past due real property taxes, the lien of any deed of trust held by a Lehman Creditor and any other monetary liens other than the Permitted Liens applicable to the Option Projects.  The Optionees shall disclaim any reliance on any representations or warranties by the Debtors, the Lehman Parties, the Lehman Nominees or any of their respective affiliates, agents or representatives.  All transfer taxes, title insurance premiums, search fees, recording costs and all other transaction costs shall be paid by the Optionees or the other SunCal Parties except that any attorneys' fees of counsel to the Lehman Parties shall be paid by the Lehman Parties.  The Optionees shall be responsible for obtaining their own respective owners' title insurance policies and surveys and, although certain liens or encumbrances on title to the Option Projects may be released upon the effectiveness of, and pursuant to the terms of, the Joint TD Plan, under no circumstances shall the Lehman Parties be required to release or cause to be released any liens or encumbrances other than mechanics' liens, past due real property taxes, the lien of any deed of trust held by a Lehman Creditor and any other monetary liens other than the Permitted Liens applicable to the Option Projects.  At the closing of the purchase of any Option Project, and as a condition to such closing, (i) the SunCal Parties shall pay or cause to be paid to the Lehman Creditors (or any of them as designated by the Lehman Parties) the purchase price for such Option Project in cash in immediately available funds, (ii) the SunCal Parties shall cause all surety bonds issued by Arch or Bond Safeguard for or with respect to the applicable Option Project to be exonerated, released, substituted and replaced and shall further cause Arch and Bond Safeguard to be released from any and all further liability under or with respect to such bonds or any settlement agreements entered into by Arch or Bond Safeguard in respect of their obligations under such bonds, and from any pending claims |

| | |
|---|---|
| | arising under such bonds, and (iii) the SunCal Parties shall cause the applicable Optionee with respect to any Option Project to assume all obligations of the applicable Plan Debtors under any executory contracts and unexpired leases which are to be or otherwise have been assumed by such Plan Debtor under the Joint TD Plan (collectively, the "Assumed Contracts") and otherwise cause the applicable Lehman Nominee taking title to such Option Project to be released from all further liability under any such Assumed Contracts and under any permits, licenses, easements, certifications, development agreements, subdivision improvement agreements, or other development, entitlement or related documents, instruments or agreements (collectively, "Development-Related Items").  Real property taxes and assessments shall be prorated as of the closing date as is customary in real estate conveyance transactions in the State of California.  The applicable Lehman Nominees shall transfer and assign to the Optionees any right, title or interest, if any, they may have in, to and under the Development-Related Items, without representation or warranty of any kind and only to the extent assignable by the Lehman Nominees, and neither the Lehman Parties nor the Lehman Nominees shall have any obligation or responsibility for obtaining any consents or approvals from, or otherwise giving notices to, any counterparty to any Development-Related Items and Acquisitions shall undertake such process as it deems necessary or appropriate to effectuate any transfers or assignments of Development-Related Items. |
| **Interim Loan Assets:** | The Lehman Parties will cooperate with the SunCal Parties as follows: |
| | (a) On and after the Term Sheet Effective Date and pending the occurrence of the Settlement Effective Date, the Lehman Parties will cooperate with the SunCal Parties in seeking to continue the hearing on confirmation of the Joint VD Plan as to SCC Communities and Tesoro, without prejudice to confirmation of the Joint VD Plan as to the other VD Plan Debtors or confirmation of the Joint TD Plan.  If the hearing is so continued and the Settlement Effective Date occurs prior to the continued hearing date, then on the Settlement Effective Date, the Lehman VD Lenders shall (x) withdraw the Joint VD Plan as to SCC Communities and Tesoro, and (y) release the Lehman VD Lenders' direct or indirect liens on the Interim Loan Projects. |
| | (b)  Within 15 days after the Term Sheet Effective Date, the SunCal Parties shall file a motion under Bankruptcy Rule 9019 with respect to Del Rio seeking resolution, settlement and payment of all remaining unpaid claims against Del Rio (the "Del Rio Motion") for approval by the California Bankruptcy Court which the Lehman Parties agree to support.  The Lehman VD Lenders will make available to the SunCal Parties remaining value with respect to the Del Rio CFD Bond Proceeds by releasing their security interest on the Del Rio CFD Bond Proceeds on the Settlement Effective Date provided that (x) the SunCal Parties satisfy the above conditions to the release of the liens on the Interim Loan Projects or otherwise take title to the Interim Loan Projects as provided below, and (y) an order has been entered by the California Bankruptcy Court approving the Del Rio Motion. |
| | (c)  Notwithstanding the provisions of paragraph (a) above, if the hearing on confirmation cannot be continued to a date that is after the Settlement Effective Date or cannot be so continued without prejudice to confirmation of the Joint VD Plan as to the VD Plan Debtors other than SCC Communities and Tesoro or confirmation of the Joint TD Plan, then the Interim Loan Projects shall be conveyed to the applicable Lehman Nominees on the |

Settlement Effective Date as provided under the Joint VD Plan and within thirty days thereafter, the Lehman Parties shall cause such Lehman Nominees to convey the Interim Loan Projects to one or more affiliates of the SunCal Parties (as designated by the SunCal Parties) (the "Interim Project Grantees") for the benefit of the SunCal Parties and/or the current creditors of SCC Communities and Tesoro for a purchase price for each Interim Loan Project of $1 provided that on or prior to the date of any such conveyance (i) an amount equal to the amount of all distributions made or otherwise required to be made by the Lehman VD Lenders pursuant to the Joint VD Plan (including, without limitation, distributions to creditors and the payment of administrative claims, priority claims and other claims against the applicable VD Plan Debtors) with respect to SCC Communities and Tesoro is paid by the SunCal Parties to the Lehman VD Lenders, (ii) the SunCal Parties cause all surety bonds issued by Arch or Bond Safeguard with respect to the Tesoro Project to be exonerated, released, substituted and replaced, (iii) the SunCal Parties cause the Interim Project Grantees to assume all obligations of SCC Communities and Tesoro, respectively, under any executory contracts and unexpired leases which are to be or otherwise have been assumed by such Debtor under the Joint VD Plan (the "JR/T Assumed Contracts") and otherwise cause the applicable Lehman Nominees taking title to such Projects to be released from all further liability under any such JR/T Assumed Contracts and under any permits, licenses, easements, certifications, development agreements, subdivision improvement agreements, or other development, entitlement or related documents, instruments or agreements (collectively, "JR/T Development-Related Items"), and (iv) the SunCal Parties pay or reimburse the Lehman Parties for any and all transaction costs and expenses (including, without limitation, title insurance premiums for any owners' policies, search fees, recording costs and other fees, costs and expenses) incurred in connection with the conveyance of the Interim Loan Projects to the Lehman Nominees except that any attorneys' fees of counsel to the Lehman Parties shall be paid by the Lehman Parties. The conveyance of the Interim Loan Projects to the Interim Project Grantees shall be on an "as is where is" basis without any representations or warranties whatsoever by the sellers. The Interim Project Grantees shall disclaim any reliance on any representations or warranties by SCC Communities, Tesoro, the Lehman Parties, the Lehman Nominees or any of their respective affiliates, agents or representatives. All transfer taxes, title insurance premiums, search fees, recording costs and all other transaction costs shall be paid by the SunCal Parties and Interim Project Grantees except that any attorneys' fees of counsel to the Lehman Parties shall be paid by the Lehman Parties. Real property taxes and assessments shall be prorated as of the closing date as is customary in real estate conveyance transactions in the State of California. The SunCal Parties shall be responsible for obtaining owners' title insurance policies and surveys for the Interim Loan Projects and, although certain liens or encumbrances on title to the Interim Loan Projects may be released upon the effectiveness of, and pursuant to the terms of, the Joint VD Plan, under no circumstances shall the Lehman Parties be required to release or cause to be released any liens or encumbrances other than the lien of any deed of trust held by a Lehman VD Lender. The applicable Lehman Nominees shall transfer and assign to the Interim Project Grantees any right, title or interest, if any, they may have in, to and under the JR/T Development-Related Items, without representation or warranty of any kind and only to the extent assignable by the Lehman Nominees, and neither the Lehman Parties nor the Lehman Nominees shall have any obligation or responsibility for obtaining

| | |
|---|---|
| | any consents or approvals from, or otherwise giving notices to, any counterparty to any JR/T Development-Related Items and the Interim Project Grantees (or SunCal Parties) shall undertake such process as they deem necessary or appropriate to effectuate any transfers or assignments of JR/T Development-Related Items. |
| **Emerald Meadows:** | As provided above, the SunCal Parties and the Voluntary Debtors shall withdraw their existing SunCal Plan for SunCal Emerald no later than the Filing Deadline.  Further, on or at any time after the Settlement Effective Date, upon request by the Lehman Parties, the SunCal Parties shall cause SunCal Emerald to consent to the appointment of a trustee for such Debtor and will assign all claims that the SunCal Parties or any other SunCal principal or entity may have against the SunCal Emerald to the Lehman Parties or their designee. |
| **Allowed Claims Re Management Fees:** | On the Settlement Effective Date, (a) the Lehman Creditors will pay to SunCal Management an aggregate amount equal to $3 million in satisfaction of (or, at the option of the Lehman Parties, for an assignment of) all claims asserted by SunCal Management against the Debtors (other than the SJD Debtors and the SunCal Century City) including any pre-petition or post-petition claims (the "Agreed Management Fee Distribution"), and (b) all other claims of SunCal Management against any of the Debtors (other than the SJD Debtors and the SunCal Century City) shall be withdrawn, with prejudice, and released except that with respect to SunCal Emerald, such claims will be not be released but assigned to the Lehman Parties or their designee. |
| **Dismissal of Litigation:** | On and as of the Settlement Effective Date, the SunCal Parties shall, and shall cause all other affiliates of the SunCal Parties (other than the Debtors) who have asserted any claims against any of the Lehman Parties or their affiliates in the SunCal Cases, to (a) dismiss all Pending SunCal Litigation (except to the extent relating to the Pacific Point Project or the SJD Debtors) with prejudice, and (b) waive and release all claims and rights to any management fees or other amounts (pre-petition and post-petition) with respect to which any of the SunCal Parties or any of their affiliates (other than the Debtors) has asserted claims against any of the Debtors (pre-petition and post-petition) (other than against the SJD Debtors and the SunCal Century City) or any Lehman Party or any affiliate thereof (including all Lehman Released Parties) except the Agreed Management Fee Distribution to be paid to SunCal Management as described above.  With respect to Del Rio, upon approval of the Del Rio Motion by the California Bankruptcy Court, the SunCal Parties shall cause the estate of Del Rio to dismiss all Pending SunCal Litigation with prejudice and waive and release all claims and rights to any amounts (pre-petition and post-petition) with respect to which Del Rio has asserted claims against any of the other Debtors (pre-petition and post-petition) or any Lehman Party or any affiliate thereof (including all Lehman Released Parties).  No further claims against any of the Debtors or any of the Lehman Parties or any other Lehman Released Party will be asserted by any of the SunCal Parties or any of their affiliates. |
| **Mutual Releases:** | On and as of the Settlement Effective Date, the SunCal Parties and the Lehman Parties will deliver mutual releases with respect to all claims relating to all of the Projects (except Pacific Point) and the related Lehman Loans and Debtors (but specifically excluding claims arising under the Settlement Agreement) in form and substance reasonably acceptable to the parties but which releases, in any event, shall release all Lehman Released Parties. |

| | |
|---|---|
| **Dispute Resolution:** | This Term Sheet shall be fully binding upon the parties hereto on the Term Sheet Effective Date.  From and after the Term Sheet Effective Date, the parties hereto shall be obligated to proceed in good faith and as expeditiously as possible to negotiate, finalize, execute and deliver the Settlement Agreement, which itself shall be subject to the Settlement Effectiveness Conditions and any other conditions expressly provided for therein, and any ancillary documents contemplated to be executed and delivered in connection therewith.  In addition, the parties hereto hereby agree that any dispute regarding this Term Sheet and/or the interpretation of any terms or provisions set forth herein or regarding the form of the Settlement Agreement and/or the conformity of the same to the terms and provisions set forth in this Term Sheet shall be resolved by Judge Daniel Weinstein through binding mediation.  If the parties have not otherwise entered into a Settlement Agreement on or prior to November 30, 2011, then the parties shall request that Judge Weinstein resolve any remaining disputes between the parties with respect to a final Settlement Agreement as soon as possible. |
| **Governing Law:** | This Term Sheet, the Settlement Agreement and any and all other documents to be executed and delivered in connection therewith shall be governed by the laws of the State of New York without regard to the principles of conflicts of laws. |
| **Counterparts; Facsimile or PDF Execution:** | This Term Sheet may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Signatures delivered by facsimile or by email in PDF format shall constitute originals for all purposes. |

[SIGNATURES ON THE FOLLOWING PAGE]

Agreed to as of this **22** day of October, 2011.

LEHMAN ALI, INC.

By: _____
Name: Jeff Fitts
Title: Duly Authorized Signature

LEHMAN COMMERCIAL PAPER INC.,
as debtor and debtor in possession in its Chapter
11 case in the United States Bankruptcy Court
for the Southern District of New York, Case No.
08-13555 (JMP)

By: _____
Name: Jeff Fitts
Title: Duly Authorized Signatory

OVC HOLDINGS LLC

By: _____
Name: Jeff Fitts
Title: Duly Authorized Signatory

NORTHLAKE HOLDINGS LLC

By: _____
Name: Jeff Fitts
Title: Duly Authorized Signatory

LEHMAN BROTHERS HOLDINGS INC.,

as debtor and debtor in possession in its Chapter
11 case in the United States Bankruptcy Court
for the Southern District of New York, Case No.
08-13555 (JMP)

By:
Name:             Jeff Fitts
Title:        Duly Authorized Signatory

SCC ACQUISITIONS, INC.

By:
Name:    BRUCE ELIEFF
Title:    PRESIDENT

SCC ACQUISITIONS, LLC.

By:
Name:    BRUCE ELIEFF
Title:    MANAGER

SUNCAL MANAGEMENT, LLC

By:
Name:    BRUCE ELIEFF
Title:    MANAGER

By:
    BRUCE ELIEFF

EXHIBIT A

Adv. No. 8:09-ap-01005-ES (Bankr. C.D. Cal.), including litigation involving the Interim Loan

Adv. No. 8:11-ap-01212-ES (Bankr. C.D. Cal.)

Amended Motion for Order Disallowing Certain Claims [ECF No. 2082] in No. 8:08-bk-17206-ES (Bankr. C.D. Cal.)

Motion for Order Disallowing Claims of Lehman ALI, Inc. and Lehman Commercial Paper, Inc. pursuant to 11 U.S.C. § 502(d) [ECF No. 1976] in No. 8:08-bk-17206-ES (Bankr. C.D. Cal.)

Appeal of the Order Granting Joint Motion of Lehman Creditors and chapter 11 Trustee for: (A) Approval of Stipulation of July 2011 by and between Lehman ALI, Inc. and chapter 11 Trustee, pursuant to 11 U.S.C. §§ 362, 363, 364, and 507, (1) Approving Senior Secured Superpriority Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Status, and (3) Modifying Automatic Stay to the Extent Necessary; and (B) Clarification of Prior Financing Orders, in United States Bankruptcy Appellate Panel of the Ninth Circuit No. 11-1485

**<u>PROPOSED ORDER</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11 Case No.
                                                      :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,              :        08-13555 (JMP)
                                                      :
                 Debtors.                             :        (Jointly Administered)
                                                      :
----------------------------------------------------------------x

ORDER PURSUANT TO SECTIONS 105
AND 363 OF THE  BANKRUPTCY CODE AND
FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004
AND 9019 FOR APPROVAL OF THAT CERTAIN SETTLEMENT
<u>AMONG THE LEHMAN PARTIES AND THE SUNCAL PARTIES</u>

Upon the motion, dated October 24, 2011 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors in possession (together, the "<u>Debtors</u>" and, collectively with their non-

Debtor affiliates, "<u>Lehman</u>"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), for approval of a settlement among (a) Lehman ALI, Inc., LCPI, OVC

Holdings LLC, Northlake Holdings LLC and LBHI (collectively, the "<u>Lehman Parties</u>"), and (b)

SCC Acquisitions, Inc., SCC Acquisitions, LLC, SunCal Management, LLC, Bruce Elieff and

other principals and affiliates of any of them to be specifically designated by the Lehman Parties

(collectively, the "<u>SunCal Parties</u>"), all as more particularly described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided pursuant the procedures set forth in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases [ECF No. 9635], on

(i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the

Southern District of New York; (vi) attorneys for the SunCal Parties; and (vii) all parties who

have requested notice in these chapter 11 cases, and it appearing that no other or further notice

need be provided; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefore, it is

       ORDERED that the Motion is granted as provided herein; and it is further

       ORDERED that, pursuant to section 363 of the Bankruptcy Code and Bankruptcy

Rule 9019, the Debtors are duly authorized, but not directed, to (i) enter into the SunCal Term

Sheet and subsequently to enter into the SunCal Settlement Agreement, in accordance with

terms, provisions and conditions set forth in the SunCal Term Sheet, (ii) execute and deliver such

documents, instruments, certificates and agreements and to take such other actions as may be

reasonably necessary to consummate the SunCal Settlement Transactions as reflected in the

SunCal Term Sheet and to be embodied in the SunCal Settlement Agreement, and (iii) consent to

any amendment, restatement, waiver, supplement or other modification of the SunCal Term

Sheet or, following the execution and delivery thereof, the SunCal Settlement Agreement and/or

any of the documents contemplated thereunder; and it is further

ORDERED that the Debtors are authorized, but not directed, to make all payments contemplated to be made and to take all actions contemplated to be taken by the Debtors under or pursuant to terms and provisions of the SunCal Term Sheet and, following the execution and delivery thereof, the SunCal Settlement Agreement, it being understood that any payments and/or actions described in this paragraph which are made or taken by the Debtors or their affiliates may be made or taken without the necessity of (x) any further court proceedings or approval or (y) any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LCPI, LBHI, or any other Lehman entity that is a party to the SunCal Term Sheet or will be party to the SunCal Settlement Agreement or the Lehman-SunCal Plans, that such Lehman entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties, and the Debtors are hereby authorized and directed to execute such further documents to evidence such reservations; and it is further

ORDERED that nothing contained in the SunCal Term Sheet or that will be contained in the SunCal Settlement Agreement or in the Motion shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies of LBHI, LCPI or any other Lehman Creditor, that such entity may have or choose to assert on behalf of itself or its respective estate, as applicable, under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties; and it is further

ORDERED that any and all pre- and post-petition claims, rights and obligations that the Debtors may have against each other in connection with the subject matter of the Motion or the transactions contemplated by the SunCal Term Sheet or, upon execution and delivery thereof, the SunCal Settlement Agreement, are hereby fully preserved and shall not be prejudiced by the entry of this Order; and it is further

ORDERED that the allocation of costs and benefits between or among the Debtors and non-Debtor affiliates in connection with the SunCal Settlement Agreement is preserved; and it is further

ORDERED that the SunCal Term  Sheet and, upon execution and delivery thereof, the SunCal Settlement Agreement, may be modified, amended or supplemented by the parties thereto without further order of the Court, and any agreements, documents or other instruments related to the SunCal Term Sheet or, upon execution and delivery thereof, the Settlement Agreement, may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms, provisions and conditions thereof, *provided* that, in each case, any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order;

*provided*, *however*, that nothing contained in this Order is intended to reduce the jurisdiction of

or predetermine any concurrent jurisdiction otherwise vested in the Bankruptcy Court for the

Central District of California in the chapter 11 cases of the SunCal Debtors.


Dated: October __, 2011
      New York, New York

<br>

_____
UNITED STATES BANKRUPTCY JUDGE