# EXHIBIT 3

HEARING DATE AND TIME: June 2, 2011 at 10:00 a.m. (Eastern)
Response Deadline: May 18, 2011 at 4:00 p.m. (Eastern)

Adam Brezine (NY State Bar #3922762)
HOLME ROBERTS & OWEN LLP
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994
Telephone:    (415) 268-2000
Facsimile:    (415) 268-1999
Email: adam.brezine@hro.com

Kerry Moynihan (*pro hac vice* admission pending)
HOLME ROBERTS & OWEN LLP
800 W. Olympic Blvd., 4th Floor
Los Angeles, CA 90015
Telephone: (213) 572-4300
Facsimile:  (213) 572-4400
Email: kerry.moynihan@hro.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

| | |
|---|---|
| In re: | : Chapter 11 Case No. |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., | : 08-13555 (JMP) |
| *et al.*, | : |
| | : (Jointly Administered) |
| Debtors. | : |

------------------------------------------------------ x

## DECLARATION OF DENIS AITKEN IN SUPPORT OF RESPONSE OF MILLENNIUM MARKETING & MANAGEMENT PTY, LTD. TO DEBTORS ONE HUNDRED TWENTIETH OMNIBUS OBJECTION TO CLAIMS (NO BLOCKING NUMBER LPS CLAIMS)

I, Denis Aitken, under penalty of perjury, hereby declare as follows:

1.    I am the Director of Millennium Marketing & Management Pty, Ltd.

("Millennium").  In my capacity as Director, I have personal knowledge of the events set forth

herein and if called as a witness I could and would testify competently thereto.

2.      Millennium purchased an interest valued at $200,000 AUD in a two-year

Principal Protected Property Markets Fund-Linked Note issued on June 13, 2007 by Lehman

Brothers Treasury Co. B.V. and guaranteed by Lehman Brothers Holdings, Inc. ("LBHI") with

identification number ISIN XS0305158031 (the "Security"). The Note was set to mature on

June 15, 2009. Australia and New Zealand Banking Group Limited ("ANZ") is the custodian of

the Security. True and correct copies of the related Statement of Holdings and Final Terms dated

June 8, 2007 are attached hereto as Exhibits 1 and 2, respectively.

3.      In September 2008, I was contacted via email by Rachael McKenzie, the Vice

President of Fixed Income Sales at Lehman Brothers in Sydney, Australia. Ms. McKenzie

provided me with the contact information of Rod Miller of Weil, Gotshal & Manges, counsel for

the Debtors. Copies of the e-mails I received from Ms. McKenzie are attached hereto as

Exhibit 3.

4.      In January 2009, I telephoned and spoke with Mr. Miller regarding the Lehman

Brothers Holdings, Inc. ("LBHI") bankruptcy case. During my conversation with Mr. Miller, I

identified myself and also identified that Millennium was an unsecured creditor of LBHI based

on a guarantee of principal for an investment made by Millennium.

5.      After speaking with Mr. Miller, I obtained a proof of claim form from the website

of the Lehman Brothers claims administrator, Epiq Systems. On January 20, 2009, I placed the

completed Proof of Claim form, along with copies of the Statement of Holdings and Final

Terms, in an Express Post International Priority Air Service envelope addressed to Lehman

Brothers Holding Claims Processing, c/- Epiq Bankruptcy Solutions LLC, FDR Station, P.O.

Box 5076, New York, NY 10150-5076, United States of America. Evidence of mailing is

attached hereto as Exhibit 4.

#23277 v1 lax

**20**

6.      On August 18, 2009, I again contacted Mr. Miller, via e-mail, to inquire about the progress of Millennium's claim and the prospect of any recovery. In the e-mail, I indicated that Millennium had asserted a claim for $200,000 AUD based on a guarantee by Lehman Brothers Holdings, Inc. On September 3, 2009, I received a written response from Mr. Miller which stated Lehman does not maintain or acknowledge claims, and provided the website for the claims agent. A copy of the electronic mail correspondence sent to Mr. Miller and the response I received from the e-mail address rod.miller@weil.com is attached hereto as Exhibit 5.

7.      In late December 2009 or early January 2010, I received a letter from Mr. Paul Belobritsky, Case Manager at Epiq Systems. Mr. Belobritsky's letter informed me that Epiq was unable to located my proof of claim and that the claim was not on file. Mr. Belobritsky returned my prior correspondence with his letter, and requested that I resend the original claim and/or provide proof of delivery. A true and correct copy of the letter I received from Epiq Solutions dated December 28, 2009 is attached hereto as Exhibit 6. On January 7, 2010, in response to Mr. Belobritsky's letter, I sent a copy of the proof of claim previously sent on January 20, 2009 with proof of mailing to Epiq.

8.      Millennium has, at all times since October 6, 2008, been the beneficial owner of the Security. At no time since purchasing the interest in the Security in 2008 did Millennium transfer any or all of its beneficial interest in the Security to another party.

9.      Millennium did not receive the Bar Date Order or any notification that Millennium was required to obtain a blocking reference number prior to receiving notice of the Debtors' One Hundred Twentieth Omnibus Objection to Claims (the "Objection").

10.      In late April 2011, after learning of the Objection from my counsel, I contacted ANZ regarding the requirement to obtain a blocking reference number. ANZ provided copies of

notices they intended to send to Millennium in September 2009; however, the notices were sent to a facsimile number unrelated to Millennium. The e-mail correspondence from ANZ dated April 29, 2011 which attached copies of the notices erroneously sent by ANZ are attached hereto as Exhibit 7.

11.    On May 6, 2011, I received a letter from Hayden McNamara, Head of Global Service at ANZ, acknowledging that due to an internal error, in September 2009, ANZ sent correspondence regarding the requirement to obtain a blocking number intended for Millennium to an incorrect facsimile number. A true and correct copy of the letter I received is attached hereto as Exhibit 8.

12.    On May 10, 2011, I received an e-mail from Mr. McNamara confirming that ANZ has acted and currently acts as custodian of the Security for Millennium, and that due to an internal error on the part of ANZ, the correspondence relating to obtaining a blocking number was not sent to Millennium, and that as a result, ANZ did not obtain a blocking number for Millennium's Security. Mr. McNamara also confirmed that Millennium remains the beneficial owner of the Security. A true and correct copy of this correspondence is attached hereto as Exhibit 9.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of May, 2011, in Centennial Park, New South Wales, Australia.


/s/ Denis Aitken
Denis Aitken,
Director, Millennium Marketing & Management Pty, Ltd.

#23277 v1 lax

**22**

# EXHIBIT 1



ANZ
Level 12, 530 Collins Street
Melbourne
Victoria 3000
Australia

20-Jan-09
Our Ref: 32140598-20JAN09

Millennium Marketing & Management Pty Ltd
Denis Aitken
80 Lang Road
Centennial Park
NSW 2021

Dear Sir/Madam

**Re: Statement of Holdings**

The following securities were held on your behalf as at 20 January 2009

| Security Description | ISIN | Holding |
|---|---|---|
| LEHMAN BRO 15JUNE09 | XS0305158031 | 200,000 |

Please contact ANZ Market Operations on 1800 288 891 or email safecustodyoperations@anz.com
if you have any queries.  If you require a valuation please contact your dealer.

**Regards**

**Safe Custody Operations**

Australia and New Zealand Banking Group Limited ABN 11 005 357 522

"This letter and any attachments to it (the "Communication") is, unless otherwise stated, confidential, may contain copyright material and is for the use only of the intended recipient. If you receive the
Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views
expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related
entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference
or delay arising from or in respect of the Communication."

# EXHIBIT 2

Final Terms dated June 8, 2007

## LEHMAN BROTHERS TREASURY CO. B.V.

*(incorporated with limited liability in The Netherlands and having its statutory domicile in Amsterdam)*

### Issue of AUD 14,000,000 Principal Protected Property Markets Fund-Linked Notes due 2009

unconditionally and irrevocably

### Guaranteed by Lehman Brothers Holdings Inc.
under the U.S.$60,000,000,000
Euro Medium-Term Note Program

## PART A – CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated August 9, 2006 (as supplemented from time to time) (the "Base Prospectus") which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "Prospectus Directive"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with such Base Prospectus as so supplemented.

Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

| | | | |
|---|---|---|---|
| 1 | (i) | Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) | Guarantor: | Lehman Brothers Holdings Inc. |
| 2 | (i) | Series Number: | 7457 |
| | (ii) | Tranche Number: | Not Applicable |
| | | (If fungible with an existing Series, details of that Series, including the date on which the Notes become fungible). | |
| 3 | | Specified Currency or Currencies: | Australian dollar ("AUD") |
| 4 | | Aggregate Nominal Amount: | AUD 14,000,000 |
| 5 | | Issue Price: | 100 per cent. of the Aggregate Nominal Amount |
| 6 | | Specified Denomination(s) and Units | |
| | (i) | Specified Denomination(s): | AUD5,000 |

- 1 -

| | (ii) | Trading in Units: | Not Applicable |
|---|---|---|---|
| 7 | (i) | Issue Date: | 13 June 2007 |
| | (ii) | Interest Commencement Date: | Not Applicable |
| 8 | | Maturity Date: | 15 June 2009 |
| 9 | | Interest Basis: | As described in Annex 1 |
| 10 | | Redemption/Payment Basis: | Redemption at par |
| 11 | | Change of Interest or Redemption/Payment Basis: | Not Applicable |
| 12 | | Put/Call Options: | Not Applicable |
| 13 | (i) | Status of the Notes: | Senior Notes |
| | (ii) | Status of the Guarantee: | Senior Guarantee |
| 14 | | Method of distribution: | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

| 15 | Fixed Rate Note Provisions | Not Applicable |
|---|---|---|
| 16 | Floating Rate Note Provisions | Not Applicable |
| 17 | Zero Coupon Note Provisions | Not Applicable |
| 18 | Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions | As described in Annex 1 |
| 19 | Dual Currency Note Provisions | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| 20 | Call Option | Not Applicable |
|---|---|---|
| 21 | Put Option | Not Applicable |
| 22 | Final Redemption Amount of each Note: | AUD5,000 per Note |
| 23 | Early Redemption Amount of each Note | |

Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default or if the Notes are cancelled pursuant to paragraph 4(ii) of Annex 1 and/or the method of calculating the same (if required or if different from that set out in the Conditions):

In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any underlying related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion .

-2-

27

The Issuer will not pay any accrued interest.

## GENERAL PROVISIONS APPLICABLE TO THE NOTES

| | | |
|---|---|---|
| 24 | Form of Notes: | Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form which is exchangeable for definitive Notes in bearer form in the limited circumstances specified in the permanent global Note. |
| | New Global Note Form: | Not Applicable |
| 25 | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | No |
| 26 | Details relating to Partly Paid Notes: | Not Applicable |
| | amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | |
| 27 | Details relating to Instalment Notes: | Not Applicable |
| | Instalment Amounts and Instalment Dates: | Not Applicable |
| 28 | Details relating to Extendible Notes: | Not Applicable |
| 29 | Details relating to Renewable Notes: | Not Applicable |
| 30 | Redenomination, renominalisation and reconventioning provisions: | Not Applicable |
| 31 | Consolidation provisions: | Not Applicable |
| 32 | Other final terms: | See Annex 1 |

## DISTRIBUTION

| | | | |
|---|---|---|---|
| 33 | (i) | If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
| | (ii) | Date of Subscription Agreement: | Not Applicable |
| | (iii) | Stabilizing Manager (if any): | Not Applicable |
| 34 | If non-syndicated, name and address of Dealer: | | Lehman Brothers International (Europe), 25 Bank Street, London E14 5LE |
| 35 | Total commission and concession: | | The Issue Price herein is not an expression of the market value of the Notes and the initial placement of the Notes by the dealer appointed under the Programme may have been executed at prices above |

-3-

or below such Issue Price to reflect prevailing market conditions.

36  Selling restrictions:

    (i)    Netherlands Selling Restrictions:

**Notes offered outside Netherlands: selling restriction** 1(iv) applies

    (ii)    Additional Selling Restrictions:

Australia: Any Noteholder in Australia shall represent and warrant that it is a sophisticated investor for the purposes of Chapters 6 and 7 of the Corporations Act 2001 of Australia and undertakes to inform the Issuer should its status as a sophisticated investor change.

No prospectus or other disclosure document (as defined in the Corporations Act 2001 of Australia) in relation to the Notes has been or will be lodged with the Australian Securities and Investments Commission (the "ASIC"). Each Dealer represents and agrees that it:

(a)    has not offered or invited applications, and will not offer or invite applications for the issue, sale or purchase of the Notes in Australia (including an offer or invitation which is received by a person in Australia); and

(b)    has not distributed or published, and will not distribute or publish, any draft, preliminary or definitive offering document, any final terms or pricing supplement or other offering material or advertisement relating to the Notes in Australia,

unless:

(i)    the aggregate consideration payable by each offeree is at least AUD500,000 (or its equivalent in any other currency but disregarding moneys lent by the offeror or its associates) or the offer or invitation otherwise does not require disclosure to investors under Part 6D.2 of the Corporations Act 2001 of Australia;

(ii)    the offer or the issuance of the Notes does not constitute an offer to a "retail client" for the purposes of Chapter 7 of the Corporations Act 2001 of Australia;

-4-

(iii) the offer or the issuance of the Notes does not constitute an offer or invitation to the public for the purposes of section 82 of the Corporations Act 2001 of Australia;

(iv) such action complies with all applicable laws, regulations and directives; and

(v) such action does not require any document to be lodged with the ASIC.

By providing the information contained in these Final Terms, neither the Issuer nor any other relevant entity is providing financial product advice. The reader should consider obtaining independent advice before making any financial decisions.

**RESPONSIBILITY**

The Issuer accepts responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By: ..................................................................

Duly authorised

2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419

**30**

**PART B – OTHER INFORMATION**

**1    LISTING**

    (i)    Listing:                  None

    (ii)   Admission to Trading:      Not Applicable

**OPERATIONAL INFORMATION**

ISIN Code:                            XS0305158031

Common Code:                    030515803

New Global Note intended to be held in a manner which would allow Eurosystem eligibility:            Not Applicable

Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s):         Not Applicable

Delivery:                      Delivery against payment

The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of 1USD= AUD1.2009  producing a sum of (for Notes not denominated in U.S. Dollars):            U.S.$11,657,923.00

Names and addresses of Additional Paying Agent(s) (if any):         Not Applicable

-6-

# Annex 1

## 1    Definitions

"**Averaging Dates**" means, subject as provided in paragraph 3 of this Annex 1 (*Disrupted Days*), each of 6 September 2007, 6 December 2007, 6 March 2008, 6 June 2008, 5 September 2008, 5 December 2008, 6 March 2009 and 8 June 2009 or, if any such day is not a Scheduled Trading Day, the next following Scheduled Trading Day;

"**Basket Value$_k$**" means, in respect of an Averaging Date k, a value calculated by the Calculation Agent in accordance with the following formula:

$$BasketValue_k = \frac{1}{2} \times \sum_{j=1}^{2} Fund_k^j$$

Where:

$Fund_k^j$ means a value in respect of each Fund$^j$ calculated by the Calculation Agent in accordance with the following formula:

$$Fund_k^j = \frac{NAV_k^j}{NAV_0^j}$$

Where:

$NAV_k^j$ = the Net Asset Value of Fund$^j$ on the relevant Averaging Date k

$NAV_0^j$ = the Initial Net Asset Value of Fund$^j$

"**Business Day**" means a day (other than a Saturday or a Sunday) on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealings in foreign exchange and foreign currency deposits) in Sydney, Luxembourg and London and a day on which each clearing system is open for business;

"**Calculation Agent**" means Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE, United Kingdom;

"**Closing Level**" means, in respect of Fund$^j$ on the relevant Scheduled Trading Day, the NAV of that Fund on such Scheduled Trading Day, as calculated and published by the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company to its investors or, at the discretion of the Calculation Agent, as published on the Bloomberg service on such Scheduled Trading Day, as determined by the Calculation Agent;

"**Disrupted Day**" means any Scheduled Trading Day on which (i) the NAV of any Fund or Replacement Fund fails to be published or (ii) on which the Calculation Agent has determined that any Fund or Replacement Fund is subject to a Fund Substitution Event, or (iii) where a buy or sell order is submitted in accordance with the relevant procedures of a Fund or Replacement Fund and the inability of the hedging party to buy or sell the shares or units of such Fund or Replacement Fund on any Scheduled Trading Day at, or at a value that equates to, the NAV of such share or unit;

-7-

*2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / 6ID: 3091419*

**32**

"Funds" means each of:

(i)     ING (L) Invest – European Real Estate (Bloomberg code: INGLEIC Equity, ISIN: LU0121177280) ("Fund 1"); and

(ii)    Credit Suisse – Equity Fund (Lux) Asian Property (Bloomberg code: CSASPRB LX Equity, ISIN: LU0220210792) ("Fund 2");

and each shall be a "Fund";

"Fund$^j$" means the relevant Fund or Replacement Fund;

"Initial Net Asset Value" means, in respect of Fund$^j$, the Closing Level of that Fund$^j$ on the Strike Fixing Date;

"Interest Payment Date" means each of 13 June 2008 and 15 June 2009 provided that if either of such dates is not a Business Day the relevant date shall be postponed to the next day which is a Business Day unless it would thereby fall into the next calendar month, in which event such date shall be brought forward to the immediately preceding Business Day (the "Modified Following Business Day Convention");

"Management Company" means:

(a)     in respect of Fund 1, ING Investment Management Luxembourg S.A.; and

(b)     in respect of Fund 2, Credit Suisse Equity Fund Management Company;

and in respect of a Replacement Fund, the company as will be determined by the Calculation Agent at the Fund Substitution Date;

"NAV" means Net Asset Value;

"Net Asset Value" means in respect of Fund$^j$ and a Scheduled Trading Day, the Closing Level of that Fund or Replacement Fund;

"Replacement Fund" shall have the meaning given to it in paragraph 4 of this Annex 1 (*Adjustment to the Fund or Replacement Fund*);

"Scheduled Trading Day" means, with respect to a Fund or a Replacement Fund, a day upon which the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant management company is scheduled to calculate and publish the Net Asset Value for such Fund or Replacement Fund;

"Strike Fixing Date" means, subject as provided in paragraph 3 of this Annex 1 (*Disrupted Days*), 15 June 2007, or if such day is not a Scheduled Trading Day, the next following Scheduled Trading Day; and

"Trade Date" means 8 June 2007.

2       Interest Amounts

Unless previously redeemed or purchased and cancelled, each Note bears interest in accordance with this paragraph 2 and the relevant interest amount (an "Interest Amount") will be payable on each Interest Payment Date.

(a)     The amount of interest payable in respect of each Note in respect of the first Interest Payment Date shall be an amount in AUD calculated by the Calculation Agent in accordance with the following formula:

-8-

33

$$AUD\,5{,}000 \times \left[100\% \times Max\left(Lockin(1) - Lockin(0);0\right)\right]$$

Where:

Lockin(1) means $Max\left(Strategy(1), Lockin(0)\right)$

Lockin(0) means 100%

Strategy(1) means the value, as calculated by the Calculation Agent, equal to the arithmetic average of the Basket Values for the first Averaging Date, the second Averaging Date, the third Averaging Date and the fourth Averaging Date

(b)    The amount of interest payable in respect of each Note in respect of the second Interest Payment Date shall be an amount in AUD calculated by the Calculation Agent in accordance with the following formula:

$$AUD\,5{,}000 \times \left[100\% \times Max\left(Lockin(2) - Lockin(1);0\right)\right]$$

Where:

Lockin(2) means $Max\left(Strategy(2), Lockin(1)\right)$

Lockin(1) means $Max\left(Strategy(1), Lockin(0)\right)$

Strategy(2) means the value, as calculated by the Calculation Agent, equal to the arithmetic average of the Basket Value for the first Averaging Date, the second Averaging Date, the third Averaging Date, the fourth Averaging Date, the fifth Averaging Date, the sixth Averaging Date, the seventh Averaging Date and the eighth Averaging Date

## 3    Disrupted Days

If the Strike Fixing Date or any Averaging Date, as the case may be, is a Disrupted Day, then the Strike Fixing Date or that Averaging Date, as the case may be, shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day, unless there is a Disrupted Day on each of the four Scheduled Trading Days immediately following the scheduled Strike Fixing Date or that scheduled Averaging Date. In that case,

(a)    the earlier of that fourth following Scheduled Trading Day and the fifth Business Day prior to the Maturity Date, as the case may be, shall be deemed to be the Strike Fixing Date or the relevant Averaging Date, as the case may be, notwithstanding it is a Disrupted Day (the "Deemed Date"); and

(b)    the Calculation Agent shall determine its good faith estimate of the level of the Funds and any Replacement Funds that would have prevailed but for that Disrupted Day on that Deemed Date.

## 4    Adjustment to the Fund or Replacement Fund

If the Calculation Agent determines (in its sole and absolute discretion), in respect of a Fund or a Replacement Fund, that a Fund Merger Event, an Insolvency, a De-Listing or a Fund Substitution Event (each as defined below) has occurred, the Calculation Agent may, acting in a commercially reasonable manner and in its sole and absolute discretion, in respect of the affected Fund (the "Affected Fund") either:

(i)    select a replacement investment fund (a "Replacement Fund") with similar investment objectives and policies, managed by the same Management Company as the Affected Fund, an affiliate thereof or an alternative investment manager, denominated in a currency selected by the Calculation Agent, and of similar performance and quality (as determined by the Calculation Agent), the shares or units of which

-9-

will replace the shares or units of the Affected Fund for the purposes of the Notes. The Calculation Agent shall give notice of such Replacement Fund and such adjustments to Noteholders as soon as is reasonably practicable after effecting such substitutions and related adjustments. The Calculation Agent shall effect such replacement of the Affected Fund on the Fund Substitution Date and the Calculation Agent shall make any corresponding adjustment(s) that it determines, acting in a commercially reasonable manner, to be appropriate to any variable, calculation or valuation methodology or any other terms relevant to the Notes to account for such replacement; or

(ii)    if the Calculation Agent is unable to select a Replacement Fund pursuant to sub-paragraph (i) above, the Issuer shall cancel the Notes by giving notice to the Noteholders within 8 Business Days from the date of such cancellation. If the Notes are so cancelled the Issuer will pay an amount to the Noteholders in respect of each Note equal to the Early Redemption Amount.

"De-Listing" means, for any Fund share or Replacement Fund share for which the reference source is an exchange, a trading system or a quotation system, the reference source announces that pursuant to the rules of such reference source, the Fund share or Replacement Fund share ceases (or will cease) to be listed, traded or publicly quoted on the reference source for any reason (other than a Fund Merger Event) and is not immediately re-listed, re-traded or re-quoted on an exchange, trading system or quotation system acceptable to the Calculation Agent;

"Fund Merger Event" means, in respect of a Fund or Replacement Fund: (i) an irrevocable commitment to transfer all of the relevant fund shares or units; or (ii) a consolidation, amalgamation or merger of such Fund with or into another fund other than a consolidation, amalgamation or merger in which such Fund is the continuing Fund; or (iii) a takeover offer for such Fund that results in a transfer of or an irrevocable commitment to transfer all of the relevant Fund shares (other than Fund shares owned or controlled by the offeror);

"Fund Substitution Date" means such date selected by the Calculation Agent for the replacement of the relevant Fund or Replacement Fund, as the case may be;

"Fund Substitution Event" means the determination by the Calculation Agent in its sole and absolute discretion that any of the following has occurred:

(a)    the main investment objective of a Fund or Replacement Fund, as the case may be, is amended in accordance with its rules so that it no longer refers solely to the benchmark as set out in the constitutive documents and/or prospectus in respect of such Fund on the Trade Date or in the case of a Replacement Fund on the Fund Substitution Date;

(b)    the currency denomination of a Fund or Replacement Fund, as the case may be, is amended in accordance with its rules so that the NAV of that Fund or Replacement Fund on any Scheduled Trading Day is no longer calculated in the same currency as at the Trade Date or in the case of a Replacement Fund as at the Fund Substitution Date;

(c)    the Issuer, its affiliates or any other designated hedging entity would be required to pay a subscription fee in respect of a purchase of units/shares of a Fund or Replacement Fund or would incur a redemption fee in respect of a sale of units/shares of such Fund or Replacement Fund in relation to their hedging activities in respect of the issue of the Notes;

(d)    the relevant Management Company or the administrator, service provider or other person that generally calculates and/or reports the NAV on behalf of the relevant Management Company in respect of a Fund or Replacement Fund fails for reasons other than of a technical or operational nature to calculate and publish the NAV of such Fund or Replacement Fund for four consecutive Scheduled

-10-

*2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419*

**35**

Trading Days and the reason for such failure is as a consequence of any decision to liquidate or dissolve such Fund or Replacement Fund;

(e)   the activities of a Fund or Replacement Fund or its Management Company is placed under review by any governmental, legal or regulatory entity for reasons of wrongdoing, breach of any rule or regulation or other similar reason;

(f)   there is any change in the regulatory or tax treatment applicable with respect to the holding, purchase and/or sale of units/shares of a Fund or Replacement Fund which (in the opinion of the Calculation Agent) could have an economic impact for the Issuer, its affiliates or any other designated hedging entity as a holder of an interest in such Fund or Replacement Fund;

(g)   any suspension of, mandatory redemption, limitation of or restriction of (including but not limited to the imposition of a minimum notice period in redeeming or subscribing in units/shares in a Fund or Replacement Fund) trading of such Fund or Replacement Fund (by reason of liquidity restrictions or otherwise) if, in any such case, such suspension or limitation is, in the determination of the Calculation Agent, material;

(h)   the Issuer, its affiliates or any other designated hedging entity would be obliged (whether by the relevant Management Company or otherwise) to redeem all or some of the units/shares of a Fund or Replacement Fund that it is holding in relation to its hedging activities in respect of the issue of the Notes; and

(i)   the annualised volatility of a Fund or Replacement Fund exceeds the percentage prescribed by any applicable law, regulation or in the constitutive documents or prospectus of such Fund or Replacement Fund. "Volatility" for the purposes of this definition in a given time window, as of any date of determination and with respect to the relevant Fund or Replacement Fund, is the annualized standard deviation of the monthly percentage changes in the net asset value of such Fund or Replacement Fund as calculated and published by the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company to its investors or a publishing service on each Scheduled Trading Day during the particular time window preceding such date of determination, expressed as a percentage, as determined by the Calculation Agent; and

"Insolvency" means the insolvency, liquidation (whether voluntary or involuntary) or bankruptcy of, or any analogous proceedings affecting, a Fund or Replacement Fund, its Management Company, administrator or master fund.

**5   Potential Adjustment Events**

Following the declaration by the Issuer of the terms of any Potential Adjustment Event, the Calculation Agent will determine whether such Potential Adjustment Event has a diluting or concentrative effect on the theoretical value of the relevant units or shares in a Fund or Replacement Fund, as the case may be and, if so, will (i) make the corresponding adjustment(s), if any, to any one or more of the Initial Net Asset Value or Net Asset Value relating to such Fund or Replacement Fund for a particular date and, in any case, any other variable relevant to the settlement, payment or other terms of the Notes as the Calculation Agent determines appropriate to account for that diluting or concentrative effect (provided that no adjustments will be made to account solely for changes in volatility, expected dividends, stock loan rate or liquidity relative to the relevant units or shares in a Fund or Replacement Fund, as the case may be) and (ii) determine the effective date(s) of the adjustment(s). The Calculation Agent may (but need not) determine the appropriate adjustment(s) by reference to the adjustment(s) in respect of such Potential Adjustment Event made by an options exchange to

– 11 –

*2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419*

**36**

options on the relevant units or shares in the relevant Fund or Replacement Fund, as the case may be, traded on such options exchange.

"**Potential Adjustment Event**" means any of the following:

(i)    a subdivision, consolidation or reclassification of relevant units or shares in the relevant Fund or Replacement Fund, as the case may be (unless resulting in a Fund Merger Event), or a free distribution or dividend of any such units or shares in such Fund or Replacement Fund, as the case may be, to existing holders by way of bonus, capitalization or similar issue;

(ii)   a distribution, issue or dividend to existing holders of the relevant units or shares in a Fund or Replacement Fund, as the case may be, of (A) such units or shares in such Fund or Replacement Fund, as the case may be, or (B) other share capital or securities granting the right to payment of dividends and/or the proceeds of liquidation of such Fund or Replacement Fund, as the case may be, equally or proportionately with such payments to holders of such units or shares in such Fund or Replacement Fund, as the case may be, or (C) share capital or other securities of another issuer acquired or owned (directly or indirectly) by such Fund or Replacement Fund, as the case may be, as a result of spin-off or other similar transaction, or (D) any other type of securities, rights or warrants or other assets, in any case for payment (cash or other consideration) at less than the prevailing market price as determined by the Calculation Agent;

(iii)  an Extraordinary Dividend;

(iv)   a call by a Fund or Replacement Fund, as the case may be, in respect of relevant units or shares in such Fund or Replacement Fund, as the case may be, that are not fully paid;

(v)    a repurchase by the relevant Fund or Replacement Fund, as the case may be, of relevant units or shares in such Fund or Replacement Fund, as the case may be, whether out of profits or capital and whether the consideration for such repurchase is cash, securities or otherwise;

(vi)   in respect of a Fund or Replacement Fund, as the case may be, an event that results in any shareholder rights being distributed or becoming separated from shares of common stock or other shares of the capital stock of the Issuer pursuant to a shareholder rights plan or arrangement directed against hostile takeovers that provides upon the occurrence of certain events for a distribution of preferred stock, warrants, debt instruments or stock rights at a price below their market value, as determined by the Calculation Agent, provided that any adjustment effected as a result of such an event shall be readjusted upon any redemption of such rights; or

(vii)  any other event that may have a diluting or concentrative effect on the theoretical value of the relevant units or shares in a Fund or Replacement Fund, as the case may be.

"**Extraordinary Dividend**" means the characterization of a dividend or portion thereof as determined by the Calculation Agent.

6    **Notification of Early Redemption Amount, Interest Amount, Fund Substitution Event and Disrupted Days**

6.1    As soon as reasonably practicable after calculating or otherwise determining the Early Redemption Amount or the Interest Amounts the Calculation Agent shall give notice of the relevant amount to the Issuer.

6.2    The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Disrupted Day on any day which but for such Disrupted Day would have been the Strike Fixing Date or an Averaging Date.

- 12 -

6.3    Upon the occurrence of a Fund Substitution Event, the Calculation Agent shall as soon as reasonably practicable notify the Issuer stating the occurrence of the event and giving details thereof.

6.4    Adjustments in accordance with the foregoing sections shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

## 7    The Calculation Agent

The Calculation Agent shall act independently and not as an agent of the Issuer, the Guarantor or the Noteholders. The Calculation Agent shall have no responsibility to Noteholders for good faith errors or omissions in its calculations and determinations and in adopting the decisions and determinations of the Calculation Agent of the Notes. All determinations made by the Calculation Agent hereunder shall, in the absence of manifest error, wilful default or bad faith, be final and conclusive, and the Calculation Agent shall have no liability to the Issuer, the Guarantor, the Noteholders or any third party in relation to such determinations except in the case of its wilful default, or bad faith.

Nothing contained herein shall prevent the Calculation Agent from dealing in the Notes or from entering into any related transaction, including without limitation any swap or hedging transactions with the Issuer, the Guarantor (or any of their respective affiliates) or any holder of the Notes (or any of its affiliates).

# EXHIBIT 3

## Denis Aitken

| | |
|---|---|
| **From:** | McKenzie, Rachael [rachael.mckenzie@lehman.com] |
| **Sent:** | Wednesday, 24 September 2008 12:30 PM |
| **Subject:** | Lehman Brothers Property Fund Linked Note |
| **Attachments:** | 20070608_PS Grange property Fund II.pdf |

**Importance:**    High


<<20070608_PS Grange property Fund II.pdf>>

Please note the Lehman Property Fund Linked Note has the guarantor of Lehman Brothers Holding Inc.
For any client who has a claim against Lehman Brothers Holdings Inc (ie: LBHI who was the guarantor on many Lehman principal protected notes, Lehman EMTNs, etc.) needs to contact the administrator. The administrator is the law firm "Weil, Gotshal & Manges". Contact there is Rod Miller in New York. Details are below.

Rod Miller - Ph: +1-212-310 8716 or by mobile at +1-917-685 6864
E-Mail: rod.miller@weil.com

Hope this helps.



Kind Regards
Rachael McKenzie
Vice President-Fixed Income Sales

Lehman Brothers
Governor Phillip Tower
Level 25, 1 Farrer Place
Sydney, NSW 2000
Tel    02-80628603
M      0401-344761
Email: rachael.mckenzie@lehman.com


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This message is intended only for the personal and confidential use of the designated recipient(s) named above.  If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited.  This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers.  Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such.  All information is subject to change without notice.

**40**



## Denis Aitken

| | |
|---|---|
| **From:** | McKenzie, Rachael [rachael.mckenzie@lehman.com] |
| **Sent:** | Thursday, 25 September 2008 3:24 PM |
| **Subject:** | Lehman Brother Holding Inc- Lehman Notes |

**Importance:**    High

**Following my email from yesterday regarding Lehman Notes (ie Property fund linked note, Lehman Fixed and Floating rate notes and any note guaranteed by Lehman Brother Holdings Inc). I have extracted the following from a document dated 24th September and titled**

**"INFORMATION AND CONTACT DETAILS FOR CUSTOMERS AND COUNTERPARTIES OF LEHMAN BROTHERS "**

# USA

# LEHMAN BROTHERS HOLDINGS INC. ("LBHI")

Website for the latest information on LBHI:

**http://chapter11.epiqsystems.com/lehman.**

Address http://chapter11.epiqsystems.com/clientdefault.aspx?pk=de7ced2b-52e7-4172-92e1-9

    

**(646) 282-2500**

Bankruptcy Services, LLC is now Epiq Systems - Bankruptcy Solutions

**Lehman Brothers Holdings Inc. (Chapter 11)** [Change Client]

# LEHMAN BROTHERS



## SALE TO BARCLAYS CAPITAL, INC.

**The sale to Barclays closed on September 22, 2008**

**Executed Sale Documents**

Asset Purchase Agreement
First Amendment to Asset Purchase Agreement
Clarification Letter

### Sale Motion/Order

On September 20, 2008, the Count entered an Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bai 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) / Executory Contracts and Unexpired Leases (the "Sale Order").

To see a complete copy of the Sale Order, dated 9/20/2008, please click here. [Docket #258]

To see a complete copy of the Sale Motion, dated 9/17/2008, please click here. [Docket #60]

### Contracts and Leases to be Assumed and Assigned

To see the Notice of Assumption of, and Amounts Necessary to Cure Defaults Under Contracts and Leases to be Assume Bidder, dated 9/18/2008, please click here. [Docket #107]

To see the list of Contracts and Leases to be assumed and assigned to the Purchaser at the closing (the "Closing Date C

As stated in our announcement on 15 September, Lehman Brothers Holdings Inc. ("LBHI") filed a petition under Chapter 11 of the U.S. Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York ("Chapter 11"). The Board of Directors of LBHI authorized the filing of the Chapter 11 petition in order to protect its assets and maximize value.

Chapter 11 is generally a reorganization proceeding, typically for corporations or partnerships. In Chapter 11, the debtor usually remains in possession of its assets and continues to operate any business, subject to the oversight of the bankruptcy court and a committee of the debtor's creditors. The debtor generally proposes a Chapter 11 plan which, upon acceptance by a majority of its creditors, is confirmed by the bankruptcy court and binds both the debtor and the creditors to its terms of repayment. Under the Chapter 11 rules, the obligations of LBHI are stayed, which means that LBHI will not be allowed during the Chapter 11 proceeding to make any payments in respect of its contracts, and creditors of LBHI are not allowed to require, or sue for, performance of LBHI's obligations until the bankruptcy court approves a Chapter 11 plan. A Chapter 11 plan can call for repayment out of future profits, sales of some or all of the assets, a merger or recapitalization or the liquidation of the assets.

The bankruptcy court will authorize the sending of a "Notice" to creditors of the debtor that the case has been filed. Ordinarily, this Notice will advise creditors about the commencement of the Chapter 11 case and the time and place

**42**

on the claims bar date and when and how to file claims or will inform creditors that they will receive further notice regarding such information.

In order to be paid in a bankruptcy proceeding, a creditor usually must file a "proof of claim" form or the debtor must have scheduled the creditor's claim correctly and have determined that it is not contingent, disputed or unliquidated. The proof of claim sets forth your claim and its priority. You do not need a lawyer to fill out the form. Attach to the form a copy of the invoice or contract in question, or a summary of the elements that make up the claim. Claims are generally amendable if you make a mistake or omit something. If you did not receive a proof of claim form, you can obtain one online from the website listed below. The bankruptcy court will send a notice that will tell you where to file a proof of claim and the deadline for doing so. Act promptly since deadlines are strictly enforced in bankruptcy cases. You can also obtain information about submitting your proof of claim at the website referred to below.

LBHI's Chapter 11 case is pending before the United States Bankruptcy Court in the Southern District of New York under case number 08-13555. You can get information on the bankruptcy case by looking at the website maintained by the servicing agent: http://chapter11.epiqsystems.com/lehman.

You can also file a request to be added to the Master Service List in the case.

# FAQ FOR HOLDERS OF NOTES ISSUED OR GUARANTEED BY LBHI

**Question #1: I am a holder of bonds issued or guaranteed by LBHI and I have seen news reports that LBHI filed for bankruptcy in the United States under Chapter 11. What does this mean?**

**Answer:** Chapter 11 is generally a reorganization proceeding, typically for corporations or partnerships. In Chapter 11, the debtor usually remains in possession of its assets and continues to operate any business, subject to the oversight of the bankruptcy court and a committee of the debtor's creditors. This is generally not the same as a straight liquidation of the debtor's business. The bankruptcy court will authorize the sending of a "Notice" to creditors of the debtor that the case has been filed. The debtor generally proposes a Chapter 11 plan which, upon acceptance by a majority of its creditors, is confirmed by the bankruptcy court and binds both the debtor and the creditors to its terms of repayment. Plans can call for repayment out of future profits, sales of some or all of the assets, a merger or recapitalization or the liquidation of the assets.

**Question #2: How does the bankruptcy filing of LBHI affect the bonds I hold, which are issued or guaranteed by LBHI?**

**Answer:** If LBHI is the issuer or the guarantor of the bonds that you own, LBHI will not be allowed during the Chapter 11 proceeding to make any payments on your bonds, nor will any holder of the bonds be allowed to compel payment until the bankruptcy court has approved the plan described in Question #1 above. Under the Chapter 11 rules, the obligations of LBHI are stayed, which means creditors of LBHI (such as you) are not allowed to require, or sue for, performance of LBHI's obligations until the bankruptcy court approves a Chapter 11 plan. If the bonds are guaranteed by LBHI, they will continue to be the legal obligation of the issuer, such as Lehman Brothers Treasury Co. B.V. ("LBT"). LBT, however, generally does not have any ability independent of LBHI to make payments on the bonds that you own. As a practical matter, you will become a creditor of and will need to look for repayment from LBHI if an event of default is declared of the bonds that you own. You will need to await resolution of LBHI's bankruptcy case before you know the proposed repayment plan for your bonds.

**Question #3: I only heard about the bankruptcy case but did not get the Notice from the court. What should I do?**

**Answer:** If you know about the bankruptcy case, even informally, you must act to preserve your rights. Most bankruptcy courts hold that if you have actual knowledge of the case, however obtained, you are bound by the filing deadlines for objections to dischargeability and for filing claims. LBHI's Chapter 11 case is pending before the United States Bankruptcy Court in the Southern District of New York under case number 08-13555. You can get information on the bankruptcy case by looking at the website maintained by the servicing agent: http://chapter11.epiqsystems.com/lehman. You can also file a request to be added to the Master Service List in the case. Keep the court informed of any address changes.

**Answer:** The Notice approved by the United States Bankruptcy Court will be sent to all creditors in due course. Ordinarily, this Notice will advise creditors about the commencement of the Chapter 11 case and the time and place for the first meeting of creditors (if scheduled) – see Question #4 below. The Notice will inform creditors that they will receive further notification of a claims bar date (deadline for making claims) and when and how to file claims. The Notice should be sent to the Trustee of the bonds if there is one or to the bondholders directly if there is no Trustee. The website listed above will have much of the information about the bankruptcy case that you will need.

**Question #4: Now that I know of the bankruptcy case, what should I do?**

**Answer:** The debtor (LBHI) must appear at a meeting at the bankruptcy court to be examined under oath about assets and liabilities. Creditors are invited but seldom attend. The meeting is sometimes called the "341 meeting", after the section of the United States Bankruptcy Code that requires it. The first meeting of creditors is a fact gathering event. Allowance and payment of your claim is not tied to your presence at the 341 meeting. However, claims must be filed by the time established by the bankruptcy court referred –see Question #3.

**Question #5: As a creditor, do I need a bankruptcy lawyer?**

**Answer:** Not usually.  In order to be paid in a bankruptcy proceeding, a creditor usually must file a "proof of claim" form or the Debtor must have scheduled your claim correctly and have determined that it is not contingent, disputed or unliquidated. The proof of claim sets forth your claim and its priority. You do not need a lawyer to fill out the form. Attach to the form a copy of the invoice or contract in question (your bonds), or a summary of the elements that make up the claim. Claims are generally amendable if you make a mistake or omit something. If you did not receive a proof of claim form, you can obtain one online from the website listed above.

**Question #6: As a creditor (a holder of the bonds), what should I do now?**

**Answer:** 1. Cease any collection action, including telephone calls, billing or lawsuits that might be pending against the debtor. The automatic stay protects the debtor and its property from all forms of collection during the bankruptcy.

2. File a claim with the court. The Notice of the bankruptcy sent by the court clerk tells you where to file a proof of claim and the deadline for doing so. Act promptly since deadlines are strictly enforced in bankruptcy cases. The Notice will be publicly provided soon. Please check for updates at the website referred to in Question #3.

Please seek the advise of your own counsel if you have any questions about the foregoing.


Kind Regards
Rachael McKenzie
Vice President-Fixed Income Sales

Lehman Brothers
Governor Phillip Tower
Level 25, 1 Farrer Place
Sydney, NSW 2000
Tel  02-80628603
M    0401-344761
Email: rachael.mckenzie@lehman.com


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice

4 4

# EXHIBIT 4



Pull strip to open

Air Mail  Par Avion
Express Expres

POSTAGE PAID  AUSTRALIA

# Express POST
## International

# Priority Air Service – Documents only

**Max Weight 500g. Max Thickness 20mm**

SENDER TO KEEP
LX52598408AU
LIFT & PEEL

20/11/09



LX62898408AU

OFFICIAL USE ONLY

LX62898408AU

SENDER TO KEEP
LX52598408AU

LIFT & PEEL

**AUSTRALIA POST**

To: Lehman Bros Holding Claims Processing
c/- EPIQ Bankruptcy Solutions LLC
FDR Station, PO Box 5076
New York  NY  10150-5076

Country of Destination: United States of America



**SENDER'S DECLARATION**
Sender's Signature _____  Date 20 Nov 2009

I hereby certify that this envelope contains letters and documents only. It does not contain goods or valuables and most importantly does not contain any dangerous or prohibited goods, eg. Explosives, Flammable, Corrosives, Aerosols, etc.
I also certify that I have read, and I understand the conditions of carriage on the back of this envelope.*
Envelopes without this declaration completed will not be forwarded.
* If in doubt ask at any post office.    A false declaration is a criminal offence.

4

*Copy*

# Millennium Marketing & Management Pty Ltd

**80 Lang Road**
**Centennial Park NSW 2021**
**AUSTRALIA**

**Phone: 61 2 9360 8579**
**Fax:    61 2 9360 2820**

January 20, 2009.

**Lehman Bros Holdings Claims Processing**
**c/- Epiq Bankruptcy Solutions LLC**
**FDR Station, PO Box 5076**
**NEW YORK  NY  10150-5076**
**United States of America**

Dear Sir/Madam,

This company is the registered owner of an initial investment of $200,000 (Australian) in Property Funds Linked Notes issued in June 2007 and due to mature 15th June, 2009.  This investment is guaranteed by Lehman Brothers Holdings Inc. as to return of capital.

In support of this claim for $200,000 (Australian) I attach:-

   i.  Proof of Claim relating to the Chapter 11 Filing of Lehman Brothers Inc.

   ii.  Contractual Terms dated 8th June, 2007, issued by Lehman Brothers Treasury Co. B.V. with relevant email from Lehman Brothers Sydney dated 24th September, 2008.

   iii.  Statement of Holding issued by the Custodian, ANZ Banking Group Limited evidencing the holding.

Yours faithfully,
**Millennium Marketing and Management Pty Ltd**

**D. Aitken**
**Director.**

**47**

# EXHIBIT 5



## RE: lehman bros

From: **Miller, Rod** (rod.miller@weil.com)
Sent: Thursday, 3 September 2009 5:38:40 AM
To:   Denis Aitken (denis_aitken@hotmail.com)

You need to review the claims agents web site at www.lehman-docket.com to verify your claim.  Lehman does not maintain the claims register and does not acknowledge claims.

Best,

Rod


**From:** Denis Aitken [mailto:denis_aitken@hotmail.com]
**Sent:** Tuesday, August 18, 2009 11:26 PM
**To:** Miller, Rod
**Subject:** lehman bros

Dear Rod,
Following a telephone conversation with you in January this year I lodged a Proof of Claim c/- Epiq Bankruptcy Solutions LLC relating to an investment in Australia of $200,000 (Australian ) into a Lehman Global Property Fund Linked Note maturing 15th June 2009 and guaranteed as to return of principal by Lehman Bros Holdings Inc.

The investment is held by my family company,Millennium Marketing and Management Pty Ltd.

As I have not received any correspondence following the lodgement of the Proof I would be appreciative if you could direct me to the appropriate person or web site to ascertain progress and the prospect of any recovery.

Regards,
Denis Aitken

Sell your car fast. Need a new model in your life?

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you

# EXHIBIT 6



P 646 282 2500  F 646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

December 28, 2009

**Millennium Marketing & Management Pty Ltd**
80 Lang Road
Centennial Park
NSW 2021
Australia

Dear D. Aitken,

I have enclosed the correspondence regarding your original proof of claim form for Lehman Brothers Holdings, Inc. After researching our database we have concluded that we do not have your proof of claim on file.

Can you please resend your original claim and/or provide a proof of delivery. Upon receipt of the proof of delivery, the claim will be date stamped the date in which it was received. In the event that you cannot provide proof of delivery, we will be forced to date stamp the claim when it is received. For your convenience, I have enclosed a blank proof of claim form.

Please let me know if you have any questions.

Best regards,

Paul Belobritsky
Case Manager
Epiq Systems
Bankruptcy Solutions
757 Third Avenue
New York, NY 10017
Phone: 646.282.2568
Cell: 646.592.0063
Fax: 646.282.2501
www.epiq11.com

**51**

# EXHIBIT 7

**REDACTED**

---

Subject: RE: RE:
Date: Fri, 29 Apr 2011 16:15:50 +1000
From: Daniel.Raven@anz.com
To: denis_aitken@hotmail.com

Hi Denis,

ANZ Markets Operations have supplied me with a number of faxes sent to the Millenium Marketing and Management Pty Ltd registered fax number (02 9227 1872) in September 2009. The attached faxed correspondence was forwarded to Millenium Marketing and Management Pty Ltd in September 2009 relating to Lehman Brothers administration.

My understanding, and I am not an expert in these matters, is that the process of filing a proof of claim involved requesting a Blocking Reference Number prior to the deadline of 9th October 2009. ANZ Safe Custody Operations faxed Millenium Marketing and Management Pty Ltd the letter (Attachment #5) detailing the requirement to provide ANZ with an instruction on letterhead, signed by authorised signatories, requesting ANZ to apply for a Blocking Reference Number. ANZ do not have any evidence of receipt of such an instruction from Millenium Marketing and Management Pty Ltd.

In the absence of an instruction ANZ were unable to acquire a Blocking Refence Number and as a result Millenium Marketing and Management Pty Ltd does not have a Clearstream Blocking Reference Number.

Please feel free to contact me if I can be of further assistance.

Regards,

**Daniel Raven |** Associate Director - Investor Services Group **|** ANZ Global Markets **|**
Level 7, 100 Queen Street, Melbourne, 3000 **|**
Phone: +61 3 9095 0143 **|** Mobile: +61 403 343371**|** Email: daniel.raven@anz.com **|** anz.com

---

**From:** Denis Aitken [mailto:denis_aitken@hotmail.com]
**Sent:** Thursday, 28 April 2011 10:16 AM
**To:** Raven, Daniel
**Subject:** Re: RE:

**53**

Thanks Daniel.

Sent from my iPhone

On 28 Apr 2011, at 08:07, "Raven, Daniel" <Daniel.Raven@anz.com> wrote:

> Hi Denis,
>
> Our Operations team are still liaising with Clearstream and Euroclear to try to resolve this matter.
>
> I will provide updates by email as information becomes available.
>
> Kind regards,
>
> Daniel Raven
>
> ---
>
> **From:** Denis Aitken [mailto:denis_aitken@hotmail.com]
> **Sent:** Wednesday, 20 April 2011 2:17 PM
> **To:** Raven, Daniel
> **Subject:**
>
>
> Daniel,
>
> As discussed please find correspondence from my US Attorney re the necessity to include the "blocking number" in relation to the claim by my family company, "Millennium Marketing and Management Pty Ltd.",against Lehman Brothers Holding Inc.
>
> In the absence of this number there is an objection to my claim, and that of other creditors referred to in the Notice of Hearing. The hearing is scheduled to be heard in New York on the 2nd June 2011, and my response is to be filed in court by May 18th.
>
> I would appreciate it if you could promptly advise the Clearstream blocking number/and or the Euroclear Electronic Instruction reference number(refer paragraph 10 of the Notice) in relation to the 200,000 units held by Millennium in the Principal Protected Property Note issued by Lehman Brothers Treasury Co. B. V.
>
> I may be contacted on 0412 961152.
>
> Regards
>
> Denis Aitken

"This e-mail and any attachments to it (the "Communication") is, unless otherwise stated, confidential, may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

**54**

"This e-mail and any attachments to it (the "Communication") is, unless otherwise stated, confidential,  may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENIUM | Fax | 0292271872 |
|---|---|---|---|
| From | Susanna Vandenberg | Pages | 3 |
| Date | 16/09/2009 5:46:10 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you
must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse
charges) and return the original fax by mail at our expense. Thank you.

56

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
| Note: This form may not be used to file claims other than those<br>based on Lehman Programs Securities as listed on<br>http://www.lehman-docket.com as of July 17, 2009 | | THIS SPACE IS FOR COURT USE ONLY |

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br><br><br><br>Telephone number:                    Email Address: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>   (*If known*)<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)<br><br><br>Telephone number:                    Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

1. Provide the total amount of your claim based on Lehman Programs Securities.  Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008.  The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim:  $ _____ (Required)

☐   Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2.    Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates.  If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN):_____ (Required)

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim.  You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf).  If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:
_____
(Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim.  You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf).  Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:
_____
(Required)

| 5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions. | FOR COURT USE ONLY |
|---|---|
| Date. | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571

**57**

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The questions on the Proof of Claim form include instructions for completing each question. The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____                    _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Lehman Programs Security**
Any security included on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENIUM | Fax | 0292271872 |
|---|---|---|---|
| From | Susanna Vandenberg | Pages | 5 |
| Date | 16/09/2009 5:46:02 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse charges) and return the original fax by mail at our expense. Thank you.

**59**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                           :        Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,        :        08-13555 (JMP)
                                                :
                        Debtors.                :        (Jointly Administered)
------------------------------------------------------------x

NOTICE OF DEADLINES FOR FILING PROOFS
OF CLAIM BASED ON LEHMAN PROGRAMS SECURITIES

**THIS NOTICE RELATES ONLY TO THE FILING OF CLAIMS AGAINST LEHMAN BROTHERS HOLDINGS INC. BASED ON LEHMAN PROGRAMS SECURITIES.**

PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases (collectively, the "Debtors"), entered an order (the "Bar Date Order") establishing November 2, 2009, at 5:00 pm (prevailing Eastern Time) as the last date and time for each person or entity to file a proof of claim ("Securities Programs Proof of Claim") based on Lehman Programs Securities (the "Securities Programs Bar Date").

The Securities Programs Bar Date and the procedures set forth in the Bar Date Order and below for the filing of Securities Programs Proofs of Claim apply only to claims against LBHI based on securities identified on the "Lehman Programs Securities" list available on http://www.lehman-docket.com (the "Lehman Programs Securities") that arose prior to September 15, 2008 (the "Commencement Date"), the date on which LBHI commenced their case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

If you have claims against any Debtor other than those based on Lehman Programs Securities, you should review the Bar Date Order to determine whether you need to file a proof of claim in accordance with the deadlines and procedures set forth therein. The Bar Date Order and related information and forms are available at http://www.lehman-docket.com. All claims other than those based on Lehman Programs Securities must be filed by September 22, 2009.

If you have any questions with respect to this Notice, please contact the Debtors' court-approved claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at 1-503-597-7691 or, in the United States, (866)-879-0688.

A CLAIMANT MAY WISH TO CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A SECURITIES PROGRAMS PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL ADVICE.

All holders of claims against LBHI based on Lehman Programs Securities are required to file a Securities Programs Proof of Claim in order to preserve their claims against LBHI.

1.      WHO MUST FILE A SECURITIES PROGRAMS PROOF OF CLAIM

You MUST file a Securities Programs Proof of Claim to share in LBHI's estate if you have a claim based on a Lehman Programs Security that arose prior to the Commencement Date. Claims based on Lehman Programs Securities must be filed by the Securities Programs Bar Date notwithstanding that such claims may not have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5) of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such

breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

All notices and distributions with respect to any filed claims based on Lehman Programs Securities will be sent to the party that filed the claim at the address set forth on the Securities Programs Proof of Claim Form submitted. Any entity that files a Securities Programs Proof of Claim consents to receive all such notices and distributions at the address specified on the Securities Programs Proof of Claim and is responsible for any objections raised by the Debtors related to such claim.

**An entity that files a claim based on any Lehman Programs Security, by filing such claim, consents to and is deemed to have authorized Euroclear, Clearstream, or other depository, as appropriate, to disclose their identity and holdings of Lehman Programs Securities to LBHI for the purpose of reconciling claims.**

2.    WHO NEED <u>NOT</u> FILE A SECURITIES PROGRAMS PROOF OF CLAIM

YOU SHOULD NOT FILE A SECURITIES PROGRAMS PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST LBHI BASED ON LEHMAN PROGRAMS SECURITIES.

3.    WHEN AND WHERE TO FILE

All Programs Securities Proofs of Claim must be filed so as to be **<u>actually</u> <u>received</u>** on or before the Programs Securities Bar Date at the following address:

| If by overnight courier, to: | If by mail, to: |
|---|---|
| Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA | Lehman Brothers Holdings Claims Processing<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, New York  10150-5076<br>USA |
| If by hand delivery, to:<br><br>Epiq Bankruptcy Solutions, LLC<br>Attn: Lehman Brothers Holdings Claims Processing<br>757 Third Avenue, 3rd Floor<br>New York, New York 10017<br>USA<br><br>    or<br><br>Clerk of the United States Bankruptcy Court<br>Attn: Lehman Brothers Holdings Claims Processing<br>One Bowling Green<br>New York, New York 10004<br>USA | |

Securities Programs Proofs of Claim will be deemed timely filed only if **<u>actually</u> <u>received</u>** by Epiq or the Court on or before the Securities Programs Bar Date.  Securities Programs Proofs of Claim may **<u>not</u>** be delivered by facsimile, telecopy, or electronic mail transmission.

4.    WHAT TO FILE

If you file a Securities Programs Proof of Claim, your filed Securities Programs Proof of Claim must: (i) be written the English language; (ii) to the extent a claim amount is reflected thereon, be denominated in the lawful currency of the United States using the exchange rate as applicable as of September 15, 2008; (iii) conform

2

**61**

substantially with the form attached to this notice (the "Securities Programs Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) identify the International Securities Identification Number ("ISIN") for each Lehman Programs Security; (vi) include either a Euroclear electronic instruction reference number, a Clearsteam blocking reference number, or other depository blocking reference number, as appropriate; (vii) be signed by the claimant or by an authorized agent of the claimant; and (viii) be submitted in hard copy form with an original signature.

ANY PERSON OR ENTITY THAT HOLDS CLAIMS AGAINST LBHI OR ANY OF THE OTHER DEBTORS THAT ARE NOT BASED ON LEHMAN PROGRAMS SECURITIES SHOULD REVIEW THE BAR DATE ORDER TO DETERMINE WHETHER THEY NEED TO FILE A PROOF OF CLAIM IN ACCORDANCE WITH THE DEADLINES AND PROCEDURES SET FORTH THEREIN. SUCH CLAIMS MAY NOT BE COMBINED WITH ANY CLAIMS BASED ON LEHMAN PROGRAMS SECURITIES AND FILED ON THE SECURITIES PROGRAMS PROOF OF CLAIM FORM.

---

**SPECIAL NOTE REGARDING BLOCKING NUMBERS**

Each Securities Program Proof of Claim must include either a Euroclear Electronic Instruction Reference Number, a Clearstream Blocking Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") with respect to each Lehman Programs Security for which such Securities Program Proof of Claim is filed.

**Beneficial holders (which includes most individuals) of Lehman Programs Securities that are not Euroclear Bank ("Euroclear"), Clearstream Bank ("Clearstream") or other depository account holders may not contact Euroclear, Clearstream or such other depository directly. Such holders must direct their accountholder (i.e. the bank, broker or other entity that holds such securities on behalf of such beneficial holder) to contact Euroclear, Clearstream or other relevant depository to obtain the Blocking Number.**

Parties that are accountholders with Euroclear, Clearstream or other relevant depository can obtain a Blocking Number for Lehman Programs Securities by following the directions that will be provided by Euroclear, Clearstream or other relevant depository. Accountholders may send a single request for each Lehman Programs Security with the same ISIN, but must send separate requests for Lehman Programs Securities with different ISINs.

**ALL REQUESTS FOR BLOCKING NUMBERS MUST BE SENT TO EUROCLEAR, CLEARSTREAM AND/OR OTHER DEPOSITORY PRIOR TO 5:00 PM (PREVAILING EASTERN TIME)/ 11:00 PM (CET), ON OCTOBER 23, 2009.**

Please note that holders of Lehman Programs Securities will not be permitted to trade such Lehman Programs Securities during the period from the issuance of a Blocking Number by Euroclear, Clearstream or other depository until the Programs Securities Bar Date. During the periods prior to the issuance of a Blocking Number and following the Programs Securities Bar Date, holders of Lehman Programs Securities will be permitted to trade such Lehman Programs Securities in accordance with applicable law and the procedures for the transfer of claims under the Bankruptcy Code.

---

5.    **CONSEQUENCES OF FAILURE TO FILE A SECURITIES PROGRAMS PROOF OF CLAIM BY THE SECURITIES PROGRAMS BAR DATE**

Any holder of a claim based on a Lehman Programs Security who fails to file a Securities Programs Proof of Claim in accordance with the Bar Date Order on or before the Securities Programs Bar Date, complying with the requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against LBHI based on a Lehman Programs Security, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Securities Programs Proof of Claim with respect to such claim) against LBHI, the other Debtors and their estates, and properties will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.

3

DATED:   July 27, 2009                    BY ORDER OF THE COURT
         New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

4

**63**

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENIUM | Fax | 0292271872 |
|---|---|---|---|
| From | Susanna Vandenberg | Pages | 6 |
| Date | 16/09/2009 5:45:54 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you
must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse
charges) and return the original fax by mail at our expense. Thank you.

**64**

CLEARSTREAM HAS BEEN INFORMED THAT A NOTICE OF DEADLINES
FOR FILING PROOFS OF CLAIM ON LEHMAN PROGRAMS SECURITIES
HAS BEEN ISSUED. WITH THIS PROCEDURE THE HOLDERS OF THE
LEHMAN PROGRAMS SECURITIES WOULD HAVE TO ASSERT A CLAIM
AGAINST LEHMAN BROTHERS HOLDING INC. ('LBHI') AS GUARANTOR OF
THE NOTES IN ORDER TO PRESERVE THEIR RIGHT TO RECEIVE ANY
DISTRIBUTIONS.
.
1) BACKGROUND
.
ON JULY 2, 2009, THE US BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK (THE 'COURT'), HAVING JURISDICTION OVER
THE CHAPTER 11 CASES OF LEHMAN BROTHERS HOLDINGS INC. AND
CERTAIN OF ITS AFFILIATES, AS DEBTORS, ENTERED AN ORDER (THE
'BAR DATE ORDER') ESTABLISHING NOVEMBER 2, 2009, AT 5:00 PM
(PREVAILING US EASTERN TIME) AS THE LAST DATE AND TIME FOR
EACH PERSON OR ENTITY TO FILE A PROOF OF CLAIM ('SECURITIES
PROGRAMS PROOF OF CLAIM') BASED ON LEHMAN PROGRAMS
SECURITIES (THE 'SECURITIES PROGRAMS BAR DATE').
.
2) DOCUMENTATION
.
THIS NOTIFICATION HAS TO BE READ IN CONJUNCTION WITH THE
OFFICIAL DOCUMENTATION AVAILABLE ON WWW.CLEARSTREAM.COM
UNDER PUBLICATIONS AND DOWNLOADS, CREATION MARKET GUIDE,
MARKETFLASH, DEFAULTED AND BANKRUPTED SECURITIES;
.
OR VIA EMAIL TO CADATABASE.CS(AT)CLEARSTREAM.COM, STATING IN
THE SUBJECT : OCE CLAIM LEHMAN PROGRAM SECURITIES 280709
.
OFFICIAL DOCUMENTATION IS ALSO AVAILABLE ON WWW.LEHMAN-
DOCKET.COM
.
3) ELIGIBILITY
.
WHO IS ENTITLED TO CLAIM:
FOLLOWING THE SECURITIES PROGRAMS BAR DATE AND THE BAR DATE
ORDER,THE FILING OF SECURITIES PROGRAMS PROOFS OF CLAIM
APPLY ONLY TO CLAIMS AGAINST LBHI BASED SECURITIES IDENTIFIED
ON THE LEHMAN PROGRAMS SECURITIES' LIST AVAILABLE ON
WWW.LEHMAN-DOCKET.COM THAT AROSE PRIOR TO SEPTEMBER 15,
2008, THE DATE ON WHICH LBHI COMMENCED THEIR CASE UNDER
CHAPTER 11.
.
PROOFS OF CLAIM CAN BE SUBMITTED AT CLEARSTREAM
ACCOUNTHOLDERS LEVEL (AS A GLOBAL PROOF OF CLAIMS FOR ALL

**65**

THEIR UNDERLYING BENEFICIARIES PER ISIN CODE AND ACCOUNT) OR
AT BENEFICIARY OWNER LEVEL.

.

WHO IS NOT ENTITLED TO CLAIM:
IF YOU HAVE CLAIMS AGAINST ANY DEBTOR OTHER THAN THOSE BASED
ON LEHMAN PROGRAMS SECURITIES, YOU SHOULD REVIEW THE BAR
DATE ORDER AND RELATED INFORMATION AND FORMS ARE AVAILABLE
AT WWW.LEHMAN-DOCKET.COM. ALL CLAIMS OTHER THAN THOSE
BASED ON LEHMAN PROGRAMS SECURITIES MUST BE FILED BY
SEPTEMBER 22, 2009.

.

4) HOW TO INSTRUCT AND SUBMIT A PROOF OF CLAIM

.

HOLDERS ENTITLED TO CLAIM AGAINST LBHI BASED ON LEHMAN
PROGRAMS SECURITIES AS DESCRIBED IN THE BAR DATE ORDER MUST
FILE A FORM CALLED 'SECURITIES PROGRAMS PROOF OF CLAIM' AND
COMPLETE THE FORM INCLUDING THE BLOCKING REFERENCE NUMBER
CLEARSTREAM WILL PROVIDE UPON REQUEST.

.

STEP 1 : INSTRUCTION TO CLEARSTREAM (BLOCKING REFERENCE)

.

TO OBTAIN A BLOCKING REFERENCE, SEND A SWIFT MT 565 (NO
MT599/MT568) OR CREATION ONLINE INSTRUCTION TO CLEARSTREAM,
MENTIONING YOUR ACCOUNT NUMBER, NOMINAL TO BE BLOCKED, ISIN
CODE AND FULL CONTACT DETAILS.
+++ADDITIONAL TEXT WILL BE DISREGARDED.+++

.

+++DEADLINE TO OBTAIN A BLOCKING REFERENCE IS ON 23 OCTOBER
2009 (11.00 PM CENTRAL EUROPEAN TIME)+++

.

BY INSTRUCTING CLEARSTREAM HOLDERS ARE AUTOMATICALLY
ACCEPTING THE DISCLOSURE OF THEIR ACCOUNT DETAILS (NOT THEIR
UNDERLYING HOLDER), TO BE BOUND TO THE TERMS AND CONDITIONS
STATED IN THE OFFICIAL PROGRAM SECURITIES NOTICE AND TO HAVE
THEIR BONDS BLOCKED.

.

UPON ACCEPTANCE OF YOUR BLOCKING INSTRUCTION, THE BLOCKING
REFERENCE NUMBER WILL BE CONFIRMED BY CLEARSTREAM EITHER
VIA
A) COL RF: BLOCKING REFERENCE STARTING WITH CA, OR
B) MT536 STATEMENT OF TRANSACTIONS FIELD 20C ASRF: BLOCKING
REFERENCE STARTING WITH CA, OR
C) MT544 BLOCKING FIELD 20C SEME: BLOCKING REFERENCE STARTING
WITH CA

.

**66**

STEP 2 : PROOF OF CLAIM FILING

IF YOU FILE THIS PROOF OF CLAIM, IT MUST:
(A) BE WRITTEN IN THE ENGLISH LANGUAGE;
(B) TO THE EXTENT A CLAIM AMOUNT IS REFLECTED THEREON, BE
DENOMINATED IN USD USING THE EXCHANGE RATE AS APPLICABLE AS
OF SEPTEMBER 15, 2008 (THE DEBTORS HAVE NOT PROVIDED ANY
GUIDANCE ON THE EXCHANGE RATE. CLAIMANTS MUST DETERMINE ON
THEIR OWN THE EXCHANGE RATE ON SEPTEMBER 15, 2008 TO
CALCULATE THE AMOUNT OF THEIR CLAIM);
(C) CONFORM SUBSTANTIALLY WITH THE FORM ATTACHED TO THE
OFFICIAL NOTICE (THE PROOF OF CLAIM FORM);
(D) STATE THE NAME AND CASE NUMBER OF THE SPECIFIC DEBTOR
AGAINST WHICH IT IS FILED;
(E) IDENTIFY THE ISIN FOR EACH LEHMAN PROGRAMS SECURITY;
(F) INCLUDE A CLEARSTEAM BLOCKING REFERENCE NUMBER;
(G) BE SIGNED BY THE CLAIMANT OR BY AN AUTHORIZED AGENT OF THE
CLAIMANT; AND
(H) BE SUBMITTED IN HARD COPY FORM WITH AN ORIGINAL SIGNATURE.

PROOFS OF CLAIM MAY NOT BE DELIVERED BY FACSIMILE, TELECOPY,
OR ELECTRONIC MAIL TRANSMISSION.
ONCE COMPLETED AND SIGNED, PROOFS OF CLAIM MUST BE SENT
DIRECTLY TO ONE OF THE FOUR ADDRESSES LISTED BELOW ON OR
BEFORE THE PROGRAMS SECURITIES BAR DATE.

5) WHEN AND WHERE TO FILE

+++DEADLINE TO RECEIVE ALL PROGRAMS SECURITIES PROOFS OF
CLAIM: ON OR BEFORE THE PROGRAMS SECURITIES BAR DATE,
NOVEMBER 2, 2009 AT 5:00 PM (PREVAILING US EASTERN TIME)+++

+++NO PROOF OF CLAIM DOCUMENT MUST BE SENT TO
CLEARSTREAM.+++

PROOFS OF CLAIM WILL BE DEEMED TIMELY FILED ONLY IF ACTUALLY
RECEIVED BY EPIQ OR THE COURT AT THE DELIVERY ADDRESSES
LISTED BELOW:

IF BY OVERNIGHT COURIER, TO: EPIQ BANKRUPTCY SOLUTIONS, LLC
ATTN: LEHMAN BROTHERS HOLDINGS CLAIMS PROCESSING, 757 THIRD
AVENUE, 3RD FLOOR, NEW YORK, NEW YORK 10017, USA

IF BY MAIL, TO: LEHMAN BROTHERS HOLDINGS CLAIMS PROCESSING
C/O EPIQ BANKRUPTCY SOLUTIONS, LLC, FDR STATION, P.O. BOX 5076
NEW YORK, NEW YORK  10150-5076, USA

**67**

IF BY HAND DELIVERY, TO:
EPIQ BANKRUPTCY SOLUTIONS, LLC ATTN: LEHMAN BROTHERS
HOLDINGS CLAIMS PROCESSING, 757 THIRD AVENUE, 3RD FLOOR NEW
YORK, NEW YORK 10017,USA
OR
CLERK OF THE UNITED STATES BANKRUPTCY COURT, ATTN: LEHMAN
BROTHERS HOLDINGS CLAIMS PROCESSING, ONE BOWLING GREEN,
NEW YORK, NEW YORK 10004, USA

6) ACCEPTANCE AND FURTHER NOTICE

THE BLOCKING REFERENCE SUPPLIED BY CLEARSTREAM UPON
REQUEST FROM HOLDERS DOES NOT GUARANTEE THE PROOF OF
CLAIM ACCEPTANCE BY THE JUDGE. TO RECEIVE ACKNOWLEDGMENT
AND VIEW YOUR FILING, PLEASE REFER TO THE OFFICIAL CLAIMS
AGENT'S WEBSITE (HTTP://WWW.LEHMAN-DOCKET.COM). ANY
OBJECTION WILL BE NOTIFIED DIRECTLY TO THE PARTIES BY THE CLAIM
AGENT.

ALL NOTICES WITH RESPECT TO ANY FILED CLAIMS BASED ON LEHMAN
PROGRAMS SECURITIES WILL BE SENT TO THE PARTY THAT FILED THE
CLAIM AT THE ADDRESS SET FORTH ON THE SECURITIES PROGRAMS
PROOF OF CLAIM FORM SUBMITTED.

7) WARNINGS AND DISCLAIMER

NOTE THAT THE FILE OF A SECURITIES PROGRAMS PROOF OF CLAIM
SHOULD BE DONE WITH THE EXPLICIT SUPPORT OF YOUR LEGAL
DEPARTMENT. CLEARSTREAM HAS NO AUTHORITY TO GIVE LEGAL
ADVICE, BUT IS RESTRICTED TO PROVIDE WITH A BLOCKING
REFERENCE UPON REQUEST FROM HOLDERS AND BLOCK HOLDINGS
ACCORDINGLY.

YOU SHOULD NOT FILE SUCH PROOF OF CLAIM IF YOU DO NOT HAVE A
CLAIM AGAINST LBHI BASED ON LEHMAN PROGRAMS SECURITIES.

PLEASE READ THE LEHMAN SECURITIES PROGRAMS BAR DATE NOTICE
IN REGARDS TO THE CONSEQUENCES OF FAILURE TO FILE A PROOF
CLAIM BY THE BAR DATE

THIS INFORMATION IS PREPARED FOR GENERAL INFORMATION
PURPOSES ONLY. THE INFORMATION CONTAINED HEREIN IS NOT
INTENDED TO PROVIDE PROFESSIONAL LEGAL ADVICE AND SHOULD
NOT BE RELIED UPON IN THAT REGARD. READERS SHOULD SEEK
APPROPRIATE PROFESSIONAL ADVICE WHERE NECESSARY BEFORE

**68**

TAKING ANY ACTION BASED ON THE INFORMATION CONTAINED IN THIS DOCUMENT.

CBL HAS BASED THIS DOCUMENT ON INFORMATION OBTAINED FROM VARIOUS SOURCES BUT THE INFORMATION HAS NOT BEEN INDEPENDENTLY VERIFIED. CBL MAKES NO GUARANTEES, REPRESENTATIONS OR WARRANTIES AND ACCEPTS NO RESPONSIBILITY OR LIABILITY AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION, AND UNDER NO CIRCUMSTANCES WILL IT BE LIABLE FOR ANY LOSS OR DAMAGE CAUSED BY RELIANCE ON ANY OPINION, ADVICE OR STATEMENT MADE IN THIS DOCUMENT. INFORMATION IN THIS DOCUMENT IS SUBJECT TO CHANGE WITHOUT NOTICE.

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENNIUM | Fax | 0292271872 |
|---|---|---|---|
| From | Susanna Vandenberg | Pages | 2 |
| Date | 16/09/2009 5:46:18 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you
must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse
charges) and return the original fax by mail at our expense. Thank you.

70

Market*flash*

clearstream | DEUTSCHE BÖRSE GROUP

30 July 2009
M09021

This Marketflash is intended to provide customers with general information gathered from different sources that are generally believed to be reliable. Clearstream Banking S.A. does not guarantee the accuracy or completeness of the information and does not undertake to keep it up to date. Use of the information made available in this Marketflash is at the customer's own risk and Clearstream Banking S.A. its subsidiaries and affiliates expressly disclaim any liability for any errors or omissions reflected herein. The information in this Marketflash does not constitute legal or tax advice.

## Lehman Programs Securities

On 2 July 2009, the U.S. bankruptcy court for the southern district of New York (the "court"), having jurisdiction over the Chapter 11 cases of Lehman Brothers Holding Inc. (LBHI) and certain of its affiliates, as debtors, entered an order (the "bar date order") establishing

### 2 November 2009, at 17:00 (prevailing U.S. Eastern Time)

as the last date and time for each person or entity to file a proof of claim ("securities programs proof of claim") based on Lehman Programs Securities (the "securities programs bar date").

We have been informed that a notice of deadlines for filing proofs of claim on Lehman Programs Securities has been issued.

With this procedure the holders of the Lehman Programs Securities would have to assert a claim against LBHI as guarantor of the notes in order to preserve their right to receive any distributions.

The enclosed documents altogether detail the procedure, as follows:
- Documentation;
- Eligibility;
- How to instruct and submit a proof of claim;
- When and where to file;
- Acceptance and further notice;
- Warnings and disclaimer.

30 July 2009
M09021 [1]

**71**

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENNIUM | Fax | 0292271872 |
|----|-----------|-----|-----------|
| From | Susanna Vandenberg | Pages | 4 |
| Date | 16/09/2009 5:45:36 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you
must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse
charges) and return the original fax by mail at our expense. Thank you.

72



Level 12, 530 Collins Street
Melbourne
Victoria 3000
Australia

15 September 2009

**THIS NOTICE IS IMPORTANT AND REQUIRES THE IMMEDIATE ATTENTION OF NOTEHOLDERS. IF NOTEHOLDERS ARE IN ANY DOUBT AS TO THE ACTION THEY SHOULD TAKE, THEY SHOULD SEEK THEIR OWN FINANCIAL AND LEGAL ADVICE, INCLUDING AS TO ANY TAX CONSEQUENCES, IMMEDIATELY FROM THEIR STOCKBROKER, SOLICITOR, ACCOUNTANT OR OTHER INDEPENDENT FINANCIAL OR LEGAL ADVISERS.**

Dear Noteholder,

### LEHMANS PROGRAMS SECURITIES

### Lehman Brothers Treasury Global Note 15 June 2009 (XS0305158031)

We refer to the Notes listed in Schedule A to this letter (the **"Notes"**) which we hold in custody for you.

Pursuant to an order dated 2nd July 2009 (the **"Bar Date Order"**), the United States Bankruptcy Court for the Southern District of New York established <u>5:00 p.m. (New York time) on 2nd November, 2009</u> (**"Securities Programs Bar Date"**) as the deadline for a creditor to file a proof of claim (each a **"Proof of Claim"**) against Lehman Brothers Holdings Inc. and its affiliates (**"Debtors"**) in relation to "Lehman program securities". The list of Lehman program securities, deemed final as at 17 July 2009, includes the Notes we hold in custody for you.

<u>A Proof of Claim</u> submitted in respect of any Lehman program security **must**, among other things, <u>specify an appropriate depository blocking reference number.</u>

We enclose notices received from Clearstream dated 30 July 2009 (the **"Notices"**) enclosing a copy of the Proof of Claim and the notice of the Bar Date Order in respect of the Notes. As custodian of the Notes, ANZ does not issue any advice or provide comment on the contents of the Notices.

As your custodian, ANZ will arrange the Clearstream Blocking Reference Number with Clearstream on your behalf. Please note, by obtaining this Clearstream Blocking Reference Number your Notes will immediately be blocked from transfer from this account until the Securities Programs Bar Date.

Australia and New Zealand Banking Group Limited ABN 11 005 357 522

"This letter and any attachments to it (the "Communication") is, unless otherwise stated, confidential, may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify this sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

10072027_2



As the cut-off date to receive this reference is **5:00 p.m. (New York time) / 11:00 p.m. (CET) on 23 October 2009,** please instruct ANZ by fax or email to acquire a Blocking Reference Number for your securities by **5:00 p.m. (AEST time) 9 October 2009.** Please ensure this instruction is on letterhead and signed by authorised signatories.

A copy of the Bar Date Order as well as other up-to-date information with regard to court activity of the Debtors can be found at www.lehman-docket.com.

Any queries or concerns you may have in relation to the Notice should be raised directly with the issuer or arranger of the Notes or with your professional advisers.

Yours sincerely,

Safe Custody Operations

Fax:    1300 369 158
Email: safecustodyoperations@anz.com

Australia and New Zealand Banking Group Limited ABN 11 005 357 522

"This letter and any attachments to it (the "Communication") is, unless otherwise stated, confidential, may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

10072027_2

**74**



## Schedule A

| Series number | ISIN | Description | Maturity Date | Currency |
|---|---|---|---|---|
| MTN07457 | XS0305158031 | AUD 2Y Principal Protected Property Markets Fund | 15 June 2009 | AUD |

Australia and New Zealand Banking Group Limited ABN 11 005 357 522

"This letter and any attachments to it (the "Communication") is, unless otherwise stated, confidential, may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

10072027_2

**75**

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENNIUM | Fax | 0292271872 |
|---|---|---|---|
| From | Susanna Vandenberg | Pages | 2 |
| Date | 16/09/2009 5:46:26 PM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse charges) and return the original fax by mail at our expense. Thank you.

**76**



## APPLICABLE FOR ICSD HELD SECURITIES ONLY !

**INFORMATION**

**PROCESS FLOW**

The information contained herein is intended solely for Clearstream Banking S.A.' customers. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. Clearstream Banking S.A. believes the information contained herein to be correct at the time of the present communication, but disclaims any responsibility as to the accuracy and completeness. The present communication shall not be considered as legal advice and we do not undertake to update the information whose accuracy should be checked prior to any use proposed to be made by the reader. We therefore strongly recommend requesting additional and specific legal advice next to Clearstream Banking S.A. in relation to the matters listed herein on a case specific basis.

**FACSIMILE**

Level 14, 530 Collins Street, Melbourne VIC 3000
Telephone +61 3 92732179   Facsimile +61 3 92732202
www.anz.com
Australia and New Zealand Banking Group Limited
ABN 11 005 357 522

**ANZ** *Investment Bank*

| To | MILLENNIUM | Fax | 0292271872 |
|----|-----------|-----|-----------|
| From | Susanna Vandenberg | Pages | 2 |
| Date | 17/09/2009 9:09:28 AM | | |

Important:
This fax contains information that is confidential and which may be legally privileged. If you are not the intended recipient, you must not read, use, distribute or copy this fax. If you are not the intended recipient, please notify us immediately by phone (reverse charges) and return the original fax by mail at our expense. Thank you.

78



The information contained herein is intended solely for Clearstream Banking S.A.' customers. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. Clearstream Banking S.A. believes the information contained herein to be correct at the time of the present communication, but disclaims any responsibility as to the accuracy and completeness. The present communication shall not be considered as legal advice and we do not undertake to update the information whose accuracy should be checked prior to any use proposed to be made by the reader. We therefore strongly recommend requesting additional and specific legal advice next to Clearstream Banking S.A. in relation to the matters listed herein on a case specific basis.

# EXHIBIT 8



Millennium Marketing & Management Pty Ltd
80 Lang Road
Centennial Park
NSW 2021

Level 15, 100 Queen Street
Melbourne
Victoria 3000
Australia

06-05-11

Dear Dennis,

**RE: Lehman Brothers Blocking Reference Number**

We wish to apologise for inserting the incorrect facsimile number in our
September 2009 correspondence to Millennium Marketing (as provided last
Friday). Regrettably, it was an internal error on our part which we are continuing
to investigate.

In terms of the Clearstream blocking reference number, unfortunately, as
previously advised, the deadline for applying for such number was October 2009.
Accordingly, we are unable to take any further action to obtain a blocking
reference number on Millennium Marketing's behalf at this time.

We appreciate, and again apologise for, the inconvenience caused and will
endeavour to provide any further information or assistance we can to help with
Millennium Marketing's claim process.

Should you have any further questions please contact Isabelle Hennessy, Global
Product Line Manager, via email on Isabelle.Hennessy@Anz.com or via telephone
on (03) 927 32492

Yours sincerely,

Hayden McNamara
Head of Global Service

**81**

## Privacy Disclosure Notice

In this notice reference to:

"we" and "us" means Australia and New Zealand Banking Group Limited ABN 11 005 357 522 and its related bodies corporate, whether acting collectively or alone; and

"your application" includes an application you made on behalf of your company.

Please note that we have collected information about you to assess your application to us for a facility, product, investment or service ("facility") and (if approved) to provide you or your company with the facility. Without this information we may not be able to consider or approve you application or (if approved) provide the facility. Also, we may have used and disclosed or we use and disclose your information:

- For our internal administration and operations in order to provide you or your company with the facility;

- to credit reporting agencies, agents, contractors or advisers (which we may have used or use to assess your application or (if approved) to provide the facility) and to other parties authorised or required by law to collect your information;

- to maintain our relationship with you or your company; and

- for compliance with applicable legislation and regulations.

You may request access to information about you, that we have collected and retained, through any ANZ branch. Access will be granted in accordance with the Privacy Act 1988 and we may charge a reasonable fee. If any of your information is inaccurate, you may request that it be corrected.

If you are a company and you have provided personal information of an officer or employee of yours to us in relation to your application or (if approved) the facility we provide to you, you must show this disclosure notice to your officer or employee.

**82**

# EXHIBIT 9

**REDACTED**

---

Subject: Follow up from this mornings conversation
Date: Tue, 10 May 2011 17:13:19 +1000
From: Hayden.McNamara@anz.com
To: denis_aitken@hotmail.com
CC: Isabelle.Hennessy@anz.com; Daniel.Raven@anz.com

Dear Denis,
Further to our call this morning, we provide the following additional information:
• ANZ has acted (and currently acts) as custodian for Millennium Marketing & Management Pty Ltd.  ANZ currently holds one security on Millennium Marketing & Management's behalf - Face Value AUD$200,000 of ISIN XS0305158031.
• As custodian we confirm Millennium Marketing & Management Pty Ltd remains beneficial owner of the above named security.
• As outlined in our letter of 6 May 2011, due to an internal error on the part of ANZ, important correspondence relating to the obtaining of a blocking reference number in respect of the relevant securities was not sent by ANZ to Millennium Marketing & Management Pty Ltd in September 2009 (and hence a blocking reference number for the Relevant Securities was not obtained for Millennium Marketing & Management Pty Ltd by the October 2009 deadline).
Please let me know if you would like to discuss further. My direct line is 9273 2424.
Thanks and regards


**Hayden McNamara**| Head of Service, Global Markets Operations |Global Business Execution
Institutional, ANZ
Level 16, 100 Queen Street, Melbourne, Australia
Telephone +61 3 9273 2424| Facsimile +61 3 9273 1234| Mobile +61 404 882 431
Email hayden.mcnamara@anz.com

---

Please consider the environment before printing this email

---

"This e-mail and any attachments to it (the "Communication") is, unless otherwise stated, confidential,  may contain copyright material and is for the use only of the intended recipient. If you receive the Communication in error, please notify the sender immediately by return e-mail, delete the Communication and the return e-mail, and do not read, copy, retransmit or otherwise deal with it. Any views expressed in the Communication are those of the individual sender only, unless expressly stated to be those of Australia and New Zealand Banking Group Limited ABN 11 005 357 522, or any of its related entities including ANZ National Bank Limited (together "ANZ"). ANZ does not accept liability in connection with the integrity of or errors in the Communication, computer virus, data corruption, interference or delay arising from or in respect of the Communication."

**84**