WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :        **08-13555 (JMP)**
                                                                   :
                                           **Debtors.**            :        **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

### NOTICE OF FILING OF AMENDED AND RESTATED
### COMMITMENT AGREEMENT WITH RESPECT TO INNKEEPERS USA TRUST

PLEASE TAKE NOTICE that on March 22, 2011 Lehman Commercial Paper

Inc. ("LCPI"), as debtor in possession in the above referenced chapter 11 cases, filed its *Motion*

*of Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for Authority*

*to Consent to its Non-Debtor Affiliate Lehman ALI Inc. (I) Entering into Commitment Letter with*

*Innkeepers USA Trust; (II) Supporting the Chapter 11 Plan Of Certain Affiliates of Innkeepers*

*USA Trust; and (III) Participating in the Auction for Certain of the Assets or Equity of*

*Innkeepers USA Trust* [ECF No. 15259] (the "Innkeepers Motion").[1]  Among other things, the

Innkeepers Motion authorized LCPI, to consent to its non-debtor affiliate Lehman ALI, Inc.

("ALI") to enter into a commitment letter related to the proposed restructuring of certain

---

[1] Any capitalized term used, but not defined herein shall have the meaning ascribed to such term in the Innkeepers
Motion.

affiliates of Innkeepers USA Trust ("Innkeepers"), support the chapter 11 plan of Innkeepers,

and, if necessary, participate in an auction for the assets or equity of Innkeepers.  The Motion

further provided that, pursuant to the terms of the Commitment Letter, if the Stalking Horse Bid

submitted by ALI was not the winning bid at the auction, ALI would receive (i) an amount of not

less than $200.3 million on account of its claims against Innkeepers and (ii) repayment of the

Solar DIP Loan.

      PLEASE TAKE FURTHER NOTICE that on April 14, 2011, the Court entered

an order (the "Innkeepers Order") approving the Innkeepers Motion [ECF No. 16002].

      PLEASE TAKE FURTHER NOTICE that the Auction was conducted and the

Stalking Horse Bid was not the winning bid at the Auction.  Following the Auction, Innkeepers

and the purchasers who submitted the winning bid (collectively, the "Purchasers") were unable

to consummate the transaction set forth in the winning bid.  Since that time, Innkeepers and the

Purchasers have engaged in settlement negotiations which have resulted in the Second Amended

and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of

Certain Subsidiaries of Innkeepers USA Trust (the "Amended Commitment Agreement").

Pursuant to the Amended Commitment Agreement, among other things, ALI will receive

approximately $224 million in cash and the Solar DIP Loan will be repaid.  A copy of the

Amended Commitment Agreement and Innkeepers Motion to Approve the Amended

Commitment Agreement are attached hereto as Exhibit 1, and a copy of the Order approving the

motion, which was entered in the Innkeepers' chapter 11 cases on October 21, 2011, is attached

hereto as Exhibit 2.

Dated:  October 24, 2011
          New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

# **EXHIBIT 1**

James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

Anup Sathy, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## FIXED/FLOATING DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING FIXED/FLOATING DEBTORS TO ENTER INTO
## SECOND AMENDED COMMITMENT LETTER, (II) APPROVING
## (A) MODIFICATIONS TO FIXED/FLOATING PLAN AND CONFIRMATION
## ORDER AND (B) AMENDED NEW HOLDCO/MIDLAND COMMITMENT, AND (III)
## AUTHORIZING FIXED/FLOATING DEBTORS TO SETTLE ADVERSARY
## PROCEEDING UPON CONSUMMATION OF MODIFIED FIXED/FLOATING PLAN

---

[1]     The list of debtors in these Chapter 11 Cases (the "**Debtors**") along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436. The location of the Debtors' corporate headquarters and the service address for their affiliates is: c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

The Fixed/Floating Debtors,[2] as debtors and debtors in possession, file this motion (this "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), (i) authorizing the Fixed/Floating Debtors to enter into the *Second Amended and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust* (together with all exhibits thereto, the "**Second Amended Commitment Letter**"), by and between Innkeepers USA Trust (solely on behalf of the Fixed/Floating Debtors), INK Acquisition LLC ("**INK I**"), INK Acquisition II LLC ("**INK II**"), INK Acquisition III LLC ("**INK III**" and together with INK I and INK II, "**New HoldCo**"), Cerberus Series Four Holdings, LLC ("**Cerberus**"), Chatham Lodging Trust ("**Chatham**" and, together with Cerberus, "**Cerberus/Chatham**" or the "**Fixed/Floating Plan Sponsors**"), Apollo Investment Corporation ("**AIC**"), Midland Loan Services, a division of PNC Bank, National Association ("**Midland**"), Lehman ALI Inc. ("**Lehman**"), SASCO 2008-C2, LLC ("**SASCO**"), and Five Mile Capital Partners LLC and its affiliates, Five Mile Capital II Pooling REIT LLC and its affiliates, and CRES Investment No. II, LP (collectively, "**Five Mile**"), attached as **Exhibit 1** to **Exhibit A**, (ii) approving the (a) modifications to the *Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, filed on June 29, 2011 [Docket No. 1799] (the "**Confirmed Fixed/Floating Plan**" and, as modified, the "**Modified Fixed/Floating Plan**"), attached as **Exhibit 2** to the Order,[3] and the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, entered on June 29, 2011 [Docket No. 1804] (the "**Confirmation Order**"), and (b) *Amended and Restated Binding Commitment Regarding the*

---

[2]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Modified Fixed/Floating Plan or Second Amended Commitment Letter (both as defined herein), as applicable.

[3]   A comparison of the Modified Plan against the Confirmed Plan is attached hereto as **Exhibit B**.

2

*Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust*, by and between

Cerberus, Chatham, New HoldCo, and Midland (the "**Amended New HoldCo/Midland**

**Commitment**"), attached as **Exhibit 3** to the Order, and (iii) authorizing the Fixed/Floating

Debtors to settle the Adversary Proceeding (as defined below) upon consummation of the

Modified Fixed/Floating Plan.  In support of this Motion, the Fixed/Floating Debtors respectfully

state as follows:

## Preliminary Statement

The Fixed/Floating Debtors, Midland, Lehman, and SASCO have reached agreement

with the Fixed/Floating Plan Sponsors on the Second Amended Commitment Letter, which sets

forth the revised terms of a commitment by the Fixed/Floating Plan Sponsors to purchase the

equity in the Fixed/Floating Debtors for just over $1 billion, and which, subject to the occurrence

of the Effective Date of the Modified Fixed/Floating Plan, resolves the litigation filed by the

Fixed/Floating Debtors and the Official Committee of Unsecured Creditors against the

Fixed/Floating Plan Sponsors.  Importantly, consummation of the transaction embodied in the

Second Amended Commitment Letter is a condition precedent to the settlement of the litigation.[4]

To effectuate the terms of the Second Amended Commitment Letter, and consistent with

Article III.B.1 of the Plan, Midland, Lehman, and SASCO have agreed to the following modified

Fixed/Floating Plan treatments:

    (i)    Midland, as the Holder of the Class FF3A Fixed Rate Pool Mortgage Loan
Claim, will enter into a New Fixed Rate Pool Mortgage Loan Agreement
in the amount of $675.0 million, and receive New Fixed Rate Pool
Mortgage Notes in such amount and the New Fixed Rate Pool Mortgage

---

[4]    Pursuant to section 5 of the Second Amended Commitment Letter, if the Effective Date of the Modified
Fixed/Floating Plan does not occur by the Termination Date (as defined in the Second Amended Commitment
Letter) for any reason, the Fixed/Floating Debtors will be permitted (and will have the exclusive right) to,
among other things, resume prosecution of the Adversary Proceeding.

3

Loan Limited Guarantys.

(ii)     Lehman, on account of its Class FF3B Floating Rate Pool Mortgage Loan Claims, will receive a cash payment in the amount of $224.0 million.

(iii)    SASCO will no longer receive any cash distribution on account of its Class FF4 Floating Rate Pool Mezzanine Loan Claims, but will receive the benefit of the release in Article VIII.E of the Confirmed Fixed/Floating Plan.

(iv)     All other Holders of Claims and Interests will continue to receive the treatment set forth in the Confirmed Fixed/Floating Plan.

The Fixed/Floating Debtors respectfully submit that the Modified Fixed/Floating Plan, attached as **Exhibit 2** to the Order, and the necessary amendment to the Confirmation Order, can be approved without the need to resolicit or reopen confirmation.  As described above, Midland, Lehman, and SASCO consent to the modified treatment of their claims.  And the plan treatments of all other Holders of Claims and Interests remain unchanged.  The remaining modifications to the Confirmed Fixed/Floating Plan and Confirmation Order are immaterial insofar as they are limited to those changes necessary to effectuate the modified Fixed/Floating Transaction, and do not adversely affect any claimants not otherwise affirmatively consenting.  Moreover, the relief requested herein, if approved, will not modify or affect the Anaheim Plan, the Ontario Plan, and the Remaining Debtor Plan in any way.

The Fixed/Floating Debtors also request approval of the Amended New HoldCo/Midland Commitment, attached as **Exhibit 3** to the Order, which memorializes, among other things, Midland's support for the Modified Fixed/Floating Plan and their agreement to provide financing to New HoldCo in connection with the Fixed/Floating Transaction—two necessary prerequisites to consummation of the Fixed/Floating Transaction, as modified.

Finally, pursuant to the terms of the Amended Commitment Letter and Bankruptcy Rule 9019, the Fixed/Floating Debtors request that the Court authorize the Fixed/Floating Debtors to

4

settle the Adversary Proceeding upon consummation of the Modified Fixed/Floating Plan.

For the reasons set forth herein, the Fixed/Floating Debtors respectfully request that the Court approve the relief requested herein on an expedited basis.

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, 1121(d), and 1127 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (**"Rule 9019"**).

## Relief Requested

4.      By this Motion, the Fixed/Floating Debtors seek the entry of an order: (i) authorizing the Fixed/Floating Debtors' to enter into the Second Amended Commitment Letter, (ii) approving the (a) modifications to the Confirmed Fixed/Floating Plan and the Confirmation Order without need to resolicit and (b) Amended New HoldCo/Midland Commitment, and (iii) authorizing the Fixed/Floating Debtors to settle the Adversary Proceeding upon consummation of the Modified Fixed/Floating Plan.   The Fixed/Floating Debtors respectfully request that the Court enter the Order on an expedited basis.

## Background

5.      On July 19, 2010 (the "**Petition Date**"), the Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code and are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5

10-13800-scc    Doc 2400    Filed 10/24/11    Entered 10/24/11 13:41:45    Main Document
Pg 10 of 53

6. On May 2 and 3, 2011, the Debtors proceeded with an auction for 64 of their hotels that serve as collateral for the Fixed Rate Pool Mortgage Loan and the Floating Rate Pool Mortgage Loan Claims (the "**Fixed/Floating Properties**"). The Debtors closed the auction after selecting an unchallenged bid from Cerberus/Chatham valued at approximately $1.12 billion as the winning bid for the Fixed/Floating Properties.

7. On May 16, 2011, Cerberus, Chatham, INK I, INK II, Innkeepers USA Trust, Midland, and AIC entered into the Amended and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust (together with all Exhibits thereto, the "**Original Commitment Letter**"). The Original Commitment Letter set forth the terms and conditions pursuant to which Cerberus/Chatham committed to provide funding to New HoldCo so as to permit New HoldCo, directly or indirectly, to acquire 100% of the Interests of the Post-Effective Date Fixed/Floating Debtors (as such terms are defined in the Confirmed Fixed/Floating Plan) pursuant to the Fixed/Floating Plan (as defined below).

8. On June 29, 2011, the Court entered the Confirmation Order confirming the Plan. The Confirmed Plan includes four separate joint plans of reorganization that together provide for the resolution of all claims against and interests in each of the 92 Debtors in these Chapter 11 Cases.

9. Pursuant to Article III.B.1 of the Confirmed Fixed/Floating Plan, the Holders of Class FF3A Secured Fixed Rate Pool Mortgage Loan Claims Against the Fixed/Floating Debtors ("**Class FF3A Claims**"), Class FF3B Secured Floating Rate Pool Mortgage Loan Claims Against the Fixed/Floating Debtors ("**Class FF3B Claims**"), and Class FF4 Secured Floating Rate Pool Mezzanine Loan Claims Against the Fixed/Floating Debtors ("**Class FF4 Claims**"),

can each agree with the Fixed/Floating Debtors and the Fixed/Floating Plan Sponsors to accept less favorable treatment than originally contemplated by the Confirmed Fixed/Floating Plan. Midland, as special servicer to the Fixed Rate Mortgage Loan, is the Holder of all Allowed Class FF3A Claims, Lehman, as lender under the Floating Rate Mortgage Loan Agreement, is the Holder of all Allowed Class FF3B Claims, and SASCO, as owner of 100% of the economic and beneficial interests in the Floating Rate Mezzanine Loan, is the Holder of all Allowed Class FF4 Claims.

10.    On August 19, 2011, Cerberus, Chatham, INK I, and INK II provided the Debtors with a notice (the "**Termination Notice**") purporting to terminate the Original Commitment Letter.

11.    On August 29, 2011, the Debtors commenced adversary proceeding, Case No. 11-02557 (the "**Adversary Proceeding**") against Cerberus, Chatham, INK I, and INK II.    The Committee has intervened in the Adversary Proceeding.[5]

12.    On October 19, 2011, the Fixed/Floating Debtors, Cerberus, Chatham, New HoldCo, Midland, Lehman, SASCO, Apollo, and Five Mile executed the Second Amended Commitment Letter, and Cerberus, Chatham, New HoldCo, and Midland executed the Amended New HoldCo/Midland Commitment.

## Basis for Relief

**I.    The Fixed/Floating Debtors' Entry into the Second Amended Commitment Letter Is a Sound Exercise of their Business Judgment.**

13.    Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

---

[5]    The claims asserted and defenses raised in the Adversary Proceeding have been extensively briefed, and the information related thereto is available on the public docket of the Adversary Proceeding.

7

estate." 11 U.S.C. § 363(b)(1). Section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate. The United States Court of Appeals for the Second Circuit, however, has required that the authorization of such use, sale, or lease of property of the estate, not in the ordinary course of business, must be based upon the sound business judgment of the debtor. *See Official Comm. of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business). In that regard, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

14.     Once a debtor articulates a valid business justification for its actions, courts in the Second Circuit "give great deference to the substance of the directors' decision and will not invalidate the decision, will not examine its reasonableness, and will not substitute its views for those of the board if the latter's decision can be attributed to any rational business purpose." *In re Global Crossing Ltd.*, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) (*citing Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 n.17 (Del. 1994)); accord *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (presuming, based on the business judgment rule, "that in making a business decision the directors of [the debtor] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company") (*quoting Smith v. Van*

8

*Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *In re Johns-Manville Corp.*, 60 B.R. at 616. Thus, if a debtor's actions satisfy the business judgment rule, then the transaction merits approval and authorization under section 363(b)(1).

15.    The Fixed/Floating Debtors respectfully submit their decision to enter into the Second Amended Commitment Letter is an exercise of sound business judgment. ***First***, the Fixed/Floating Debtors have determined the Second Amended Commitment Letter, which contemplates a sale of the Fixed/Floating Hotels for just over $1 billion—an increase in value to creditors of approximately $75 million when compared to the baseline bid established for the May 2011 auction—is in the best interests of the Debtors' estates. ***Second***, the Second Amended Commitment Letter permits the Debtors to avoid the uncertainty and expense of litigating the claims asserted in the Adversary Proceeding. For these reasons, all of the Fixed/Floating Debtors' major stakeholders—including those whose treatment under the modified Fixed/Floating Plan will be adversely affected—have signed on to the Second Amended Commitment Letter.

## II.    Authorizing the Fixed/Floating Debtors to Settle the Adversary Proceeding Is in the Best Interests of the Estate.

16.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable, and in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionospheres Clubs), Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).

9

17.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994). It is the responsibility of the court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman, (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18.     While a court must "evaluate . . . all . . . factors relevant to a full and fair assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a mini-trial of the merits of the claims being settled, *In re W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact . . . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

19.     The Fixed/Floating Debtors maintain that the settlement of the Adversary Proceeding contained in the Second Amended Commitment Letter is fair and equitable, and in the best interests of the estates. The Fixed/Floating Debtors carefully negotiated the Second Amended Commitment Letter at arm's length and in good faith. The primary parties affected by the terms of the settlement—namely, the Fixed/Floating Debtors, Cerberus, Chatham, Midland, and Lehman—are all signatories to the Second Amended Commitment Letter, which allows the presumption each is comfortable with the fairness and equitableness of its terms. Further, approval of the Second Amended Commitment Letter authorizes the Fixed/Floating Debtors to

10

consummate the Modified Fixed/Floating Plan, and successfully conclude these Chapter 11 Cases without contentious and expensive litigation. To be clear, the proposed settlement of the Adversary Proceeding shall take effect only upon consummation of the transaction embodied in the Second Amended Commitment Letter.

20.    Notably, pursuant to the Second Amended Commitment Letter, the Fixed/Floating Debtors retain the right to elect to pursue any one of a number of remedies against the Fixed/Floating Plan Sponsors or New HoldCo, including the right to elect to resume prosecution of the Adversary Proceeding, if the Effective Date of the Modified Fixed/Floating Plan does not occur by the Termination Date (as defined in the Second Amended Commitment Letter) due to a breach (by affirmative action or omission) by the Fixed/Floating Plan Sponsors or New HoldCo of their obligations under the Second Amended Commitment Letter or Modified Fixed/Floating Plan.[6] Further, the Fixed/Floating Debtors retain the right to resume prosecution of the Adversary proceeding if the transactions contemplated by the Second Amended Commitment Letter are not consummated by the Termination Date *even if the Fixed/Floating Plan Sponsors are not in breach*. As such, the Fixed/Floating Debtors submit the Second Circuit's standard for authorizing a chapter 11 debtor to effect a compromise or settlement has been met.

**III.    The Proposed Modifications to the Confirmed Fixed/Floating Plan Satisfy Section 1127.**

21.    The Bankruptcy Code provides a debtor the ability to modify a plan both before and after confirmation, and without the need to resolicit votes thereon, upon satisfying sections 1127(b)-(c) of the Bankruptcy Code. Specifically, sections 1127(b)-(c) of the Bankruptcy Code, in relevant part, provide that:

---

6    *See* Second Amended Commitment Letter at section 5(iv).

K&E 20090494

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

(c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

11 U.S.C. § 1127.

### A.    The Proposed Modifications Satisfy Section 1127(b).

22.    Under section 1102 of the Bankruptcy Code, substantial consummation means: (a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distributions under the plan.  Next, section 1122 of the Bankruptcy Code relates to the classification of claims and section 1123 of the Bankruptcy Code relates to the necessary elements of a plan of reorganization.  Finally, the plan sponsor must show that the circumstances warrant modification.  *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 177 B.R. 791, 802 (S.D.N.Y. 1995).

23.    Here, the Fixed/Floating Debtors submit that the modifications to the Confirmed Fixed/Floating Plan satisfy section 1127(b) of the Bankruptcy Code because the Confirmed Fixed/Floating Plan has not substantially been consummated and, even with the proposed modifications, still satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. *First*, with respect to the Confirmed Fixed/Floating Plan, the Fixed/Floating Debtors have yet to satisfy any of the elements of substantial consummation as listed above, let alone all three. *Second*, the modifications do not implicate any concerns under section 1122 or 1123 of the

12

Bankruptcy Code—the Modified Fixed/Floating Plan still correctly classifies Claims and includes all the necessary elements of a plan of reorganization. ***Third***, the circumstances clearly warrant the modifications. Every modification is narrowly tailored to effect the transaction contemplated by the Second Amended Commitment Letter and will not prejudice any non-consenting party.

**B.    The Proposed Modifications Satisfy Section 1127(c).**

24.    Although section 1127(c) of the Bankruptcy Code requires any proposed modifications to a confirmed plan to comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code, the legislative history of section 1127(c) makes clear that not all modifications to a confirmed plan require new disclosure. *See* H. Rep. No. 595, 95th Cong., 1st Sess., 411 (1977) ("[I]f the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances"). Indeed, further disclosure is only necessary when the modification ***materially and adversely*** impacts a claimant's treatment. *See Resolution Trust Corp. v. Best Prods. Co.* 177 B.R. 791, 802 (S.D.N.Y. 1995), aff'd, 68 F.3d 26 (2d. Cir. 1995), *dismissing appeal from* 168 B.R. 35 (Bankr. S.D.N.Y. 1994) (noting that the key inquiry was whether the modification materially altered the plan so that a claimant's treatment was adversely affected); *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 929 n.6 (Bankr. S.D.N.Y. 1994) (non-material plan modifications "do not require resolicitation of the respective impaired classes of creditors and equity security holders"); *see also In re New Power Co.*, 438 F.3d 1113, 1118 (11th Cir. 2006) ("[A]s an initial matter, we consider whether there was any material and adverse modifications from the First Amended Plan."); *In re Century Glove, Inc.*, 1993 WL 239489, *3 (D. Del. Feb. 10, 1993) (upholding bankruptcy court's finding that section 1127 did not require further disclosure and resolicitation of votes on plan modification that altered the treatment to only one creditor when "the modifications at issue did not materially and

13

adversely impact any creditors who voted for the [plan]"); *Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, 201 B.R. 376, 380 (E.D. Pa. 1996) (further disclosure and solicitation not required under sections 1127(b) and (c) where modification to plan is immaterial).

25.    A plan modification is not material unless it "so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance."    *Best Prods. Co.* 177 B.R. at 824.    Thus, a "clear and obvious improvement to the position of the creditors affected by the modification" will not require resolicitation of the modified plan.    *In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994).    Nor will a modification that is determined to be immaterial require resolicitation.    *See In re American Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988). This reading of section 1127(c) is entirely consistent with the disclosure requirements in section 1125 because a modification that is not material is, "by definition one which will not affect an investor's voting decision," and thus, "[a]dditional disclosure would serve no purpose[.]"    *Id.*

26.    Numerous courts have permitted post-confirmation modifications without solicitation when the requirements of section 1127(b) are satisfied.    *See Cellular Info. Sys.*, 171 B.R. at 929 n.6 ("I find that such changes are nonmaterial modifications which do not require resolicitation of the respective impaired classes of creditors and equity security holders."); *see also In re Global Crossing Ltd.*, No. 02-40188 (Bankr. S.D.N.Y. Dec. 4, 2003) (Gerber, R.) (approving post-confirmation plan modifications to structure of capital facility and intercreditor agreements without solicitation) [Docket No. 3811]; *In re WorldCom, Inc.*, No. 02-13533 (Bankr. S.D.N.Y. Feb. 25, 2004) (approving a post-confirmation plan modification without solicitation where the debtor extended the deadline for which certain conditions

14

precedent to the Effective Date had to occur and added certain interest rate protections for

noteholders) [Docket No. 10944]; *In re Solutia, Inc.*, 2008 WL 611609 (Bankr. S.D.N.Y. Feb.

26, 2008) (Beatty, P.) (approving post-confirmation plan modifications without solicitation to

enforce agreement by creditor to waive right to professional fees and to release certain

commitment parties from obligations under the plan).

27.    The Fixed/Floating Debtors submit that the modifications to the Confirmed

Fixed/Floating Plan do not affect creditors' recoveries, other than those of Midland, Lehman, and

SASCO, each of which has consented to such treatment.  And the modifications are limited to

those necessary to implement the terms of the Second Amended Commitment Letter.

Accordingly, the Fixed/Floating Debtors respectfully submit the modifications are either

immaterial or consensual, and, therefore, require no further disclosure or resolicitation.

## IV.    Approval of the Amended New HoldCo/Midland Commitment Is In the Best Interests of the Debtors' Estates.

28.    The Fixed/Floating Debtors respectfully submit that approval of the Amended

New HoldCo/Midland Commitment is in the Debtors' best interests.  The Amended New

HoldCo/Midland Commitment sets forth, among other things, Midland's agreement to support

the Modified Fixed/Floating Plan and to provide financing to Cerberus/Chatham to help fund the

modified Fixed/Floating Transaction.  Having the support of the Debtors' largest creditor, as

well as the benefit of their financing, is beneficial to the Debtors.  Accordingly, the

Fixed/Floating Debtors respectfully submit the Amended New HoldCo/Midland Commitment is

in the Debtors' best interests and should be approved.

## V.    The Amendments to the Confirmation Order Merit Approval.

29.    As described above, section 1127(b) of the Bankruptcy Code contemplates that a

chapter 11 plan can be modified after a bankruptcy court has entered its confirmation order with

15

respect thereto, notwithstanding the fact that the plan specifically confirmed by such order has been changed. 11 U.S.C. § 1127(b). This is not surprising given that section 1127(b) also requires the Court to determine that the plan, as modified, satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

30. With respect to the Confirmed Fixed/Floating Plan, the Court has already made a number of findings of fact and conclusions of law, which are all set forth in the Confirmation Order, and are supported by the extensive factual record in these proceedings. The proposed modifications, because they are "immaterial" or otherwise consensual, do not implicate any of those findings of fact and conclusions of law. Moreover, the Confirmation Order expressly authorized the Debtors to modify the Confirmed Fixed/Floating Plan post-confirmation:

> Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X of the Plan.

*Id.* at ¶ 237. The Fixed/Floating Debtors respectfully submit the requested amendments to the Confirmation Order are necessary and tailored to consummate the Modified Fixed/Floating Plan, and, as such, merit approval.

## **Motion Practice**

31. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Fixed/Floating Debtors submit that this Motion satisfies Local

16

Bankruptcy Rule 9013-1(a).

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

32.     To implement the foregoing successfully, the Fixed/Floating Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of a property under Bankruptcy Rule 6004(h).

## Debtors' Reservation of Rights

33.     Nothing in this Motion or the Order, nor as a result of the Debtors' payment of claims pursuant to the Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

## Notice

34.     The Fixed/Floating Debtors have provided notice of this Motion consistent with the Confirmation Order [Docket No. 1804], which is available at www.omnimgt.com/innkeepers, the website maintained by Omni Management Group, LLC, the Debtors' notice and claims agent.  The Debtors respectfully submit that no further notice is necessary.

## Basis for Granting Relief on Shortened Notice

35.     Although Local Bankruptcy Rule 9006-1(b) provides 14 days' notice as the time fixed for service of motion papers, Bankruptcy Rule 9006(c) and Local Bankruptcy Rule 9077-1 provide that the Court, for cause shown, may in its discretion (with or without motion or notice) reduce such a period.  In addition, section I.A.(ii) of the *Notice, Case Management, and Administrative Procedures* [Docket No. 68] provides for a hearing on a request for relief with less than 14 days' notice.  Further, pursuant to Bankruptcy Rule 9007, the Court has authority to

17

regulate the time within which, the entities to whom, and the form and matter in which, notice

shall be given, which includes the authority to determine appropriate notice for conducting a

hearing on the matters presented in this Motion.

36.    Given the nature of the relief requested herein, the incumbent climate of

uncertainty, and the consensus among all parties in interest, approval of this Motion is

appropriate without further notice.

### No Prior Request

37.    No prior request for the relief sought in this Motion has been made to this or any

other court.

18

WHEREFORE, for the reasons stated herein, the Fixed/Floating Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  October 19, 2011

*/s/ Brian S. Lennon*
James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

and

Anup Sathy, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:  (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors and
Debtors in Possession

10-13800-scc    Doc 2409    Filed 10/19/11    Entered 10/19/11 13:41:45    Main Document
Pg 20 of 405

# **EXHIBIT A**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER (I) AUTHORIZING FIXED/FLOATING DEBTORS TO ENTER INTO SECOND AMENDED COMMITMENT LETTER, (II) APPROVING (A) MODIFICATIONS TO FIXED/FLOATING PLAN AND CONFIRMATION ORDER AND (B) AMENDED NEW HOLDCO/MIDLAND COMMITMENT, (III) AUTHORIZING FIXED/FLOATING DEBTORS TO SETTLE ADVERSARY PROCEEDING UPON CONSUMMATION OF MODIFIED FIXED/FLOATING PLAN

Upon the motion (the "**Motion**")[1] of the Fixed/Floating Debtors, as debtors and debtors in possession (collectively, the "**Fixed/Floating Debtors**"), for the entry of an order (this "**Order**") (i) authorizing the Fixed/Floating Debtors' entry into the Second Amended Commitment Letter, (ii) approving the (a) modifications to the Confirmed Fixed/Floating Plan and Confirmation Order without need to resolicit and (b) Amended New HoldCo/Midland Commitment, and (iii) authorizing the Fixed/Floating Debtors to settle the Adversary Proceeding upon consummation of the Modified Fixed/Floating Plan; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and, after due deliberation and sufficient cause appearing therefor, it is HEREBY

---

[1]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

2

ORDERED THAT:

1.      The Motion is granted to the extent provided herein.

2.      The Second Amended Commitment Letter, attached hereto as **Exhibit 1**, is hereby approved and binding on all parties thereto to the extent provided therein.

3.      The Modified Fixed/Floating Plan, attached hereto as **Exhibit 2**, is hereby approved to the extent provided therein.

4.      The Amended New HoldCo/Midland Commitment, attached hereto as **Exhibit 3**, is hereby approved and binding on all parties thereto.

5.      Pursuant to the Second Amended Commitment Letter and the Modified Fixed/Floating Plan, the Holder of the Allowed Class FF3A Claims, the Holder of the Allowed Class FF3B Claims, and the Holder of the Allowed Class FF4 Claims have consented to the Modified Fixed/Floating Plan.

6.      Each of the parties to the Second Amended Commitment Letter is directed to use its reasonable best efforts to consummate the transactions set forth in the Second Amended Commitment Letter and the Modified Fixed/Floating Plan in a timely manner.

7.      Subject to the consummation of the transactions contemplated by the Second Amended Commitment Letter and the Modified Fixed/Floating Plan, and in accordance with the terms thereof, the settlement of the Adversary Proceeding is hereby approved. The Adversary Proceeding shall be dismissed with prejudice upon the Effective Date of the Fixed/Floating Plan.

8.      The Fixed/Floating Debtors are not required to resolicit acceptances of the Confirmed Fixed/Floating Plan, as modified, or prepare and distribute a new disclosure statement with respect thereto, and the Confirmed Fixed/Floating Plan, as modified, is deemed accepted by all creditors who have previously voted to accept the Confirmed Fixed/Floating Plan.

K&E 20090494

9.      This Order is without prejudice to any of the Debtors' rights to seek further modifications to the Confirmed Fixed/Floating Plan in accordance with section 1127 of the Bankruptcy Code and in accordance with the terms of the Confirmed Fixed/Floating Plan or of other parties to seek relief that might be appropriate.

10.      In the event the Second Amended Commitment Letter is terminated for any reason, the Fixed/Floating Debtors shall have the right, pursuant to the terms of the Second Amended Commitment Letter, to withdraw the Modified Fixed/Floating Plan and to treat the Confirmed Fixed/Floating Plan [Docket No. 1799] as being in full force and effect.

11.      Paragraph 235 of the Confirmation Order is hereby modified, as follows:

- On and as a condition to the occurrence of the Effective Date of the Fixed/Floating Plan, (a) on account of its Class FF3B claims against the Fixed/Floating Debtors, Lehman shall, in accordance with the Plan, receive a Cash payment of $224,000,000.00 (the "**Lehman Cash Payment**"); and (b) the Lehman DIP Lender shall receive payment in full in Cash of all claims derived from or based upon the Lehman DIP Agreement (the "**Lehman DIP Cash Payment**"), which are hereby deemed Allowed Claims. The Bankruptcy Court shall have jurisdiction over any dispute with respect to the pay-off amount of the Lehman Cash Payment or the Lehman DIP Cash Payment. Notwithstanding anything to the contrary contained in this Order, the Fixed/Floating Plan, the Disclosure Statement, or the Plan Supplement, Lehman and the Lehman DIP Lender's claims and liens against the applicable Fixed/Floating Debtors and the assets of the applicable Fixed/Floating Debtors shall remain in full force and effect and shall not be extinguished until the Lehman Cash Payment and the Lehman DIP Cash Payment have been received by Lehman and the Lehman DIP Lender, respectively.

12.      Subject to paragraph 10 of this Order, paragraph 155 of the Confirmation Order shall have no further force or effect.

13.      The following paragraph shall be deemed incorporated into the Confirmation Order:

- The transaction contemplated by the Second Amended Commitment Letter involving an investment by the Fixed/Floating Plan Sponsors in the

> Fixed/Floating Hotels, including, without limitation, any sale, transfer, assignment, assumption, or modification of a franchise entered into therewith or contemplated thereby (a) shall be deemed to qualify for the large franchise exemptions to the Federal Trade Commission's Franchise Rule disclosure requirements, found at 16 CFR § 436.8(5)(i) and (ii); and (b) may proceed without the necessity of compliance with any state or local statute or ordinance requiring notice, approval, or a waiting period before a franchise can be sold, transferred, assigned, assumed, or modified.

14.     In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects.

15.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2011

_____
United States Bankruptcy Judge

K&E 20090494

10-13800-scc    Doc 2409    Filed 10/19/11    Entered 10/19/11 13:41:15    Main Document
Pg 25 of 405

# EXHIBIT 1

**Second Amended Commitment Letter**

**INK ACQUISITION LLC**
**INK ACQUISITION II LLC**
**INK ACQUISITION III LLC**
c/o Cerberus Real Estate Capital Management, LLC
299 Park Avenue, 23rd Floor
New York, New York  10171

October 19, 2011

Innkeepers USA Trust,
solely on behalf of the Fixed/Floating Debtors
340 Royal Poinciana Way, Suite 306
Palm Beach, Florida  33480
Attn:  Marc Beilinson
      Chief Restructuring Officer

**Second Amended and Restated**
**Binding Commitment Agreement**
**Regarding the Acquisition and Restructuring**
**of Certain Subsidiaries of Innkeepers USA Trust**

INK Acquisition LLC ("INK I"), INK Acquisition II LLC ("INK II"), and INK Acquisition III LLC ("INK III," and together with INK I and INK II, and any assignees permitted under Section 14 herein, individually or collectively, as the context may require, "New HoldCo"), Cerberus Series Four Holdings, LLC ("Cerberus") and Chatham Lodging Trust ("Chatham," and together with Cerberus, the "Plan Sponsors"), are pleased to present this second amended and restated letter (the "Second Amended and Restated Commitment Letter") to certain wholly owned direct and indirect subsidiaries of Innkeepers USA Trust (together with all of its wholly owned direct and indirect subsidiaries, "Innkeepers" or the "Company"), that are identified on Exhibit A attached hereto (collectively, the "Fixed/Floating Debtors"), which sets forth, among other things, the Plan Sponsors' binding and irrevocable commitment to provide equity capital in the amount of $340,800,000 (the "Commitment") for the restructuring of the debt and equity of the Fixed/Floating Debtors (the "Transaction"), resulting in New HoldCo directly or indirectly owning all of the equity interests in the Fixed/Floating Debtors on the terms and subject to the conditions set forth herein and in the Amended Fixed/Floating Plan (as defined below).  The undersigned hereto are collectively referred to as "Parties" and each a "Party."[1]

The specific elements of our Commitment are set forth in this Second Amended and Restated Commitment Letter and the Exhibits attached hereto.

      1.    Conditions.  The Transaction is subject to the satisfaction of the terms and conditions contained herein and in the Fixed/Floating Plan, as modified to reflect the terms and conditions set forth herein (the "Amended Fixed/Floating Plan"), which is attached hereto as Exhibit B.

      2.    Due Diligence/Financing.  We have completed our diligence review, and intend to utilize the financing to be provided by Midland Loan Services, a division of PNC Bank, National Association, as special servicer for the $825,400,000 Fixed Rate Mortgage Loan (together

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Amended Fixed/Floating Plan.

with any successor special servicer, "<u>Midland</u>") pursuant to the Amended and Restated New HoldCo/Midland Commitment (the "<u>Midland Financing</u>"). The executed Amended and Restated New HoldCo/Midland Commitment is attached hereto as <u>Exhibit C</u>. Other than Midland providing the Midland Financing at the closing of the Transaction, the Commitment is not subject to diligence contingencies or financing contingencies of any kind. The Plan Sponsors, New HoldCo, and the Fixed/Floating Debtors hereby covenant and agree to use their reasonable best efforts to satisfy all conditions precedent with respect to the Midland Financing.

3.     <u>Commitment; Financial Capability</u>.  The Plan Sponsors hereby commit to provide the entire amount of the Commitment upon the Effective Date of the Amended Fixed/Floating Plan, upon the terms and subject to the conditions set forth in this Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan. 100% of the equity of New HoldCo is owned by Cerberus (through CRE-Ink REIT Member, LLC, CRE-INK Member II, Inc., and CRE-Ink TRS Holding Inc., the "<u>Cerberus Members</u>") and Chatham (through Chatham Lodging, LP and Chatham TRS Holding, Inc., the "<u>Chatham Members</u>"), with the Cerberus Members initially owning 89.1% of such equity and the Chatham Members owning the remaining 10.9% of such equity. The amended and restated limited liability company agreements for each of INK I, INK II, and INK III, executed by the applicable Cerberus Member and the applicable Chatham Member, have previously been furnished to you and remain in full force and effect and will not be amended prior to the Effective Date without the written consent of the Fixed/Floating Debtors, such consent not to be unreasonably withheld or delayed, provided that such amendment is consistent with the New HoldCo/Midland Commitment. The aggregate commitment of Cerberus is $303,800,000, and the aggregate commitment of Chatham is $37,000,000. The Plan Sponsors hereby irrevocably agree to fund their respective Commitments on the terms and subject to the conditions set forth herein. The Plan Sponsors hereby irrevocably agree to cause New HoldCo to fund or cause the Post-Effective Date Fixed/Floating Debtors to fund all amounts of cash necessary to make payments or distributions, including all Administrative Claims, pursuant to the Amended Fixed/Floating Plan. Cerberus represents that, as of the date hereof, it has assets net of liabilities of not less than $8 billion and presently has, and will maintain, uncommitted cash on its balance sheet sufficient to fund its portion of the Commitment through and including the earlier of the Effective Date or the Termination Date (as defined below). Chatham represents that it presently has, and will maintain, the ability to draw down on an existing credit facility in amounts sufficient to fund its portion of the Commitment through and including the earlier of the Effective Date or the Termination Date.

4.     <u>Means of Implementation</u>.  The Fixed/Floating Debtors shall not later than one business day following the Parties' execution of this Second Amended and Restated Commitment Letter seek Bankruptcy Court approval of this Second Amended and Restated Commitment Letter and approval of the modifications in the Amended Fixed/Floating Plan and shall actively support the approval and implementation of this Second Amended and Restated Commitment Letter. The funding from our Commitment will be used to finance and otherwise implement the restructuring of the Fixed/Floating Debtors pursuant to the Amended Fixed/Floating Plan. The Plan Sponsors and New HoldCo agree to use their reasonable best efforts to close the Transaction within two business days following Midland's confirmation that all conditions to the Midland Financing have been satisfied or waived. For the avoidance of doubt, the Anaheim Plan, the Ontario Plan, and the Remaining Debtor Plan are not subject to this Second Amended and Restated Commitment Letter. None of the Parties hereto shall take any action (by affirmative act or omission) inconsistent with this Second Amended and Restated Commitment Letter or the Amended Fixed/Floating Plan or that would materially delay approval of the Second Amended and Restated Commitment Letter or the modifications contained in the Amended Fixed/Floating Plan or consummation of the Transaction. The Parties acknowledge that time is of the essence with respect to closing the Transaction, and the Parties agree to exercise good faith and use reasonable best efforts to close the Transaction.

- 2 -

5.    Deposit; Remedies.  Pursuant to that certain Escrow Agreement (the "April Escrow Agreement"), dated as of April 25, 2011, by and among INK I, Innkeepers USA Trust, and Wells Fargo Bank, National Association (the "Escrow Agent"), INK I has deposited cash in the amount of $20 million to:

> Wells Fargo Bank, NA
> 420 Montgomery Street
> San Francisco, CA 94163
> Swift Code: WFBIUS6S
> ABA # 121-000-248
> Credit: Corporate Trust Clearing
> Account #0001038377
> F/F/C/: Innkeepers USA/INK Acq. Escrow
> Account # 85503100
> Attn: Tim Martin

INK I, Innkeepers USA Trust (solely on behalf of the Fixed/Floating Debtors), and the Escrow Agent have entered into that certain Escrow Agreement, dated as of October 19, 2011 (the "October Escrow Agreement," together with the April Escrow Agreement, the "Escrow Agreements") pursuant to which INK I will deposit within one business day of the Parties executing this Second Amended and Restated Commitment Letter cash in the amount of $30 million to a new escrow account to be held by the Escrow Agent under the October Escrow Agreement so that the Escrow Agent shall hold deposits in the aggregate amount of not less than $50 million (collectively, the "Deposit"), pursuant to the Escrow Agreements.

If the Effective Date of the Amended Fixed/Floating Plan does not occur by the Termination Date due to a breach (by affirmative act or omission) by the Plan Sponsors or New HoldCo of their obligations under this Second Amended and Restated Commitment Letter or the Amended Fixed/Floating Plan, the Fixed/Floating Debtors will be permitted (and will have the exclusive right) to exercise any of the following remedies, which election shall be in the reasonable discretion of the Fixed/Floating Debtors after consultation with Midland, Lehman, and the Official Committee of Unsecured Creditors (the "Committee"), which election shall be made in writing to the Plan Sponsors and shall be irrevocable once made:

(i) to deliver to the Escrow Agent one or more Company Termination Notices (as defined in the Escrow Agreements), subject to INK I's right to deliver a Bidder Objection Notice (as defined in the April Escrow Agreement) and a Plan Sponsor Objection Notice (as defined in the October Escrow Agreement) directing the Escrow Agent to deliver the Deposit to the Fixed/Floating Debtors to be retained as liquidated damages and not as a penalty (the Plan Sponsors and New HoldCo stipulate that the Fixed/Floating Debtors are not required to prove that actual damages are inadequate or incapable of being ascertained) and retention of the Deposit as liquidated damages shall, if elected, be the sole remedy at law or in equity for such breach against the Plan Sponsors and New HoldCo;

(ii) seek specific performance from the Plan Sponsors and New HoldCo with respect to the Plan Sponsors' and New HoldCo's obligations to perform the transactions contemplated in this Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan, including the ability to pursue any other rights, remedies, and causes of action available under this Second Amended and Restated Commitment Letter, including, but not limited to, reasonable professionals' fees and costs (the Plan Sponsors and New HoldCo stipulate that

- 3 -

the Fixed/Floating Debtors are not required to prove that actual damages are inadequate or incapable of being ascertained);

(iii) seek monetary damages from the Plan Sponsors and New HoldCo with respect to the Plan Sponsors' and New HoldCo's obligations to perform the transactions contemplated in this Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan, including the ability to pursue any other rights, remedies, and causes of action available under this Second Amended and Restated Commitment Letter, including, but not limited to, reasonable professionals' fees and costs; provided, however, that to the extent the Fixed/Floating Debtors assert the remedy described in this subsection (iii) of this Section 5, the Fixed/Floating Debtors may only seek (x) recourse against Cerberus, up to an amount not to exceed Cerberus' Commitment ($303,800,000) and (y) recourse against Chatham, up to an amount not to exceed Chatham's Commitment ($37,000,000);

provided, however, that the Deposit shall be credited against (and subject to each Plan Sponsor's respective interest in such Deposit) (A) the purchase price, to the extent the Fixed/Floating Debtors assert the remedy described in subsection (ii) of this Section 5 and (B) damages, to the extent the Fixed/Floating Debtors assert the remedy described in this subsection (iii) of this Section 5; or

(iv) resume prosecution of the Adversary Proceeding (as defined below), in which case the Litigation Stay (as defined below) shall be deemed terminated automatically.  In the event the Fixed/Floating Debtors elect the remedy set forth in this subsection (iv) of this Section 5, INK I shall be entitled to deliver a Plan Sponsor Termination Notice (as defined in the October Escrow Agreement) pursuant to Section 4(d) of the October Escrow Agreement to the Escrow Agent directing distribution of $30 million of the Deposit (plus accrued interest), and the Fixed/Floating Debtors agree that they shall not deliver a Company Objection Notice (as defined in the October Escrow Agreement) pursuant to Section 4(d) of the October Escrow Agreement objecting to such distribution.

The Plan Sponsors and New HoldCo reserve their rights to assert that the Fixed/Floating Debtors were in breach of their obligations under this Second Amended and Restated Commitment Letter and/or that such breach proximately caused the Plan Sponsors' or New HoldCo's breach.

If the Effective Date of the Amended Fixed/Floating Plan does not occur by the Termination Date due to a reason other than a breach (by affirmative act or omission) by the Plan Sponsors or New HoldCo of their obligations under the Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan, the Fixed/Floating Debtors will be permitted (and will have the exclusive right), as their sole and exclusive remedy at law or in equity under this Second Amended and Restated Commitment Letter, to resume prosecution of the Adversary Proceeding, in which case the Litigation Stay shall be deemed terminated automatically.  In the event the Fixed/Floating Debtors notify in writing New HoldCo and the Plan Sponsors of their election to resume prosecution of the Adversary Proceeding, INK I shall be entitled to deliver a Plan Sponsor Termination Notice pursuant to section 4(d) of the October Escrow Agreement to the Escrow Agent directing distribution of $30 million of the Deposit (plus accrued interest) and the Fixed/Floating Debtors agree that they shall not deliver a Company Objection Notice pursuant to Section 4(d) of the October Escrow Agreement objecting to such distribution.

The Plan Sponsors and New HoldCo waive any right to assert that any of the remedies outlined in subsections (i)-(iii) of this Section 5 are unavailable as a matter of law or contract, provided that, for the avoidance of doubt, such waiver shall not apply to the Adversary Proceeding.  Nothing in the

- 4 -

Second Amended and Restated Commitment Letter shall limit the Parties' rights to pursue any remedies against other Parties or entities other than the Plan Sponsors or New HoldCo provided by the Bankruptcy Code and applicable law. The Fixed/Floating Debtors' election of a remedy set forth in subsections (i)-(iv) of this Section 5 shall be the sole and exclusive remedy at law or in equity in the event of a breach by the Plan Sponsors or New HoldCo of their obligations under this Second Amended and Restated Commitment Letter.

Neither Plan Sponsor shall assert in any action brought by the Fixed/Floating Debtors pursuant to subsections (ii) or (iii) of this Section 5 that it does not have liability with respect to its Commitment as a result of the actions or omissions of the other Plan Sponsor.

6. <u>Excess Cash Distributions</u>. Midland and Lehman hereby agree as follows with respect to the distributions of Excess Cash (as defined in the Cash Collateral Orders) to which they would otherwise be entitled under the Cash Collateral Orders for operations during the period from August 1, 2011 through the earlier of the (i) Effective Date and (ii) Termination Date, and the Fixed/Floating Debtors hereby represent and warrant, based on their good faith belief based on projections as of the date hereof that the amount of such Excess Cash shall be sufficient to satisfy, as and when payable, the Five Mile Payment (as defined below):

(i) Five Mile Capital Partners LLC and its affiliates, Five Mile Capital II Pooling REIT LLC and its affiliates, and CRES Investment No. II, LP (collectively, "<u>Five Mile</u>") shall receive within one business day of the entry of an order approving this Second Amended and Restated Commitment Letter and approving the modifications in the Amended Fixed/Floating Plan, a $1 million cash payment (the "<u>Five Mile Payment</u>") in satisfaction of an allowed administrative expense claim, as allocated under the Cash Collateral Order between the Fixed Rate Pool Hotel Debtors and Floating Rate Pool Hotel Debtors. For the avoidance of doubt, the Five Mile Payment shall be in addition to the payments to be made to Five Mile on the Effective Date set forth in <u>Exhibit E</u> hereto. Conditioned upon Five Mile's receipt of the Five Mile Payment and the payment to Five Mile described in the New HoldCo/Midland Commitment, and in consideration therefore, Five Mile (in all of their current and future capacities in any way related to the Company or the C6 and C7 Trusts) hereby (i) consents to the entry by the Bankruptcy Court of an order approving this Second Amended and Restated Commitment Letter and the modifications contained in the Amended Fixed/Floating Plan, (ii) agrees to and approves of Midland's consummation of the transactions contemplated by the Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan, (iii) shall not take any action prior to the Effective Date that could reasonably be expected to interfere in any way with or delay the consummation of the transactions contemplated by the Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan, (iv) shall not seek any damages and agrees to release any and all claims it has or may have against any of the Parties hereto arising from or in any way relating to the circumstances, events, or occurrences that are the subject of the Adversary Proceeding, or the transactions contemplated by the Second Amended and Restated Commitment Letter or the Amended Fixed/Floating Plan, and (v) amends and extends that certain Third Amendment to Senior Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of October 3, 2011, between Five Mile and the Fixed Rate Debtors for the sole purpose of extending the maturity of the facility that allowed the Fixed Rate Debtors to borrow secured postpetition financing on a superpriority basis (the "<u>Five Mile DIP Facility</u>") until the earlier of the Effective Date and November 15, 2011; <u>provided</u>, <u>however</u>, that except only for the foregoing maturity date extension, nothing in this Section 6(i) shall be deemed to release, waive, discharge or otherwise affect the Five Mile DIP Facility or to

- 5 -

restrict or limit the exercise of Five Mile's rights and remedies under the Five Mile DIP Facility;

(ii) the Fixed Rate Debtors shall retain, prior to the Effective Date, $1 million of cash collateral which would be allocated to the Fixed Rate Pool Hotel Debtors to pay for necessary and uninsured costs associated with water damage to the Courtyard by Marriott located at West Cypress Creek Road in Ft. Lauderdale, Florida (the "Repair Costs"), and, on the Effective Date, the Fixed Rate Debtors shall have available to them $1 million for the Repair Costs, less any amounts spent prior to the Effective Date on the Repair Costs, based on Innkeepers' Chief Restructuring Officer's assessment on what the necessary Repair Costs are, after consultation with FTI Consulting; and

(iii) any excess cash collateral allocated to the Floating Rate Pool Hotel Debtors, and allocated to the Fixed Rate Pool Hotel Debtors in an amount in excess of the Repair Costs (or not otherwise distributed pursuant to this Section 6) shall be divided as follows: (i) 50% to the Post-Effective Date Fixed/Floating Debtors to pay administrative expenses and (ii) 50% allocated to Midland and Lehman based on the allocation percentages set forth in the Cash Collateral Order.

7.    Structure.    The anticipated structure of New HoldCo immediately after consummation of the Amended Fixed/Floating Plan will be as shown on the pro forma structure chart attached hereto as Exhibit D, with pro forma capitalization as shown on Exhibit E.

8.    Approvals.    With the exception of the Fixed/Floating Debtors receiving Bankruptcy Court approval, all Parties have obtained all necessary internal authorizations or approvals for the submission, execution, delivery, and closing of the Transaction.  Without limiting the foregoing, the Transaction has received the approval of the Members of New HoldCo, the Investment Committee of Cerberus, and the Board of Trustees of Chatham.

9.    Settlement of Claims.    On the Effective Date, consummation of the Transaction shall constitute a full and complete settlement and mutual release of all actual and potential claims and counterclaims, known or unknown, that were or could have been brought in Adversary Proceeding No. 11-02557 pending in the Chapter 11 Cases (the "Adversary Proceeding"), and such settlement and mutual release shall be binding on all Parties hereto.

Upon execution of this Second Amended and Restated Commitment Letter and the New HoldCo/Midland Commitment, the Parties shall consent to the entry of an order staying the Adversary Proceeding through the earlier of (i) the termination of this Second Amended and Restated Commitment Letter or (ii) the Effective Date of the Amended Fixed/Floating Plan (the "Litigation Stay").  In the event the Litigation Stay expires, the parties to the Adversary Proceeding will meet and confer in good faith with respect to the prosecution of the Adversary Proceeding.

10.    Termination.  Immediately upon the Plan Sponsors, New HoldCo, Midland, Lehman, SASCO, Apollo, and Five Mile tendering an executed copy of this Second Amended and Restated Commitment Letter to the Fixed/Floating Debtors, the Second Amended and Restated Commitment Letter shall become binding and irrevocable with respect to the Plan Sponsors, New HoldCo, Midland, Lehman, SASCO, Apollo, and Five Mile and shall remain binding and irrevocable with respect to the Plan Sponsors, New HoldCo, Midland, Lehman, SASCO, Apollo, and Five Mile (with respect to Section 6(i)) until and unless this Second Amended and Restated Commitment Letter terminates on the Termination Date.  Immediately upon, but in no event prior to, Bankruptcy Court approval of this Second Amended and Restated Commitment Letter, this Second Amended and

- 6 -

Restated Commitment Letter shall be binding and irrevocable on the Fixed/Floating Debtors. This Second Amended and Restated Commitment Letter shall automatically terminate at 11:59 p.m., Eastern time, on (x) October 24, 2011 if the Bankruptcy Court shall have not entered an order approving this Second Amended and Restated Commitment Letter and the modifications contained in the Amended Fixed/Floating Plan or (y) November 1, 2011, if the Transaction shall not have been consummated by such date (the earlier of such dates, the "Termination Date"), provided, however, that the Plan Sponsors, the Company, Midland, Lehman, and SASCO may mutually consent in writing to extend the date specified in clause (y) to November 15, 2011, which such consent shall not be unreasonably withheld, conditioned, or delayed, provided further that such consent shall not be required from any Party whose actions (by affirmative act or omission) were the proximate cause of the failure of the closing of the Transaction by the Termination Date.

11.    Press Releases.  Upon the execution and delivery of this Second Amended and Restated Commitment Letter by each of the Plan Sponsors, New HoldCo, the Company, Midland, Lehman, Apollo, SASCO, and Five Mile, the Plan Sponsors and the Company shall issue a mutually agreeable joint press release reasonably acceptable to the Parties announcing the agreed-upon terms of the Transaction, and no Party (other than Lehman) shall otherwise make any public statement or issue any press release with respect thereto without the prior written consent of the Plan Sponsors and the Company.  As of the date of this Second Amended and Restated Commitment Letter, Lehman does not intend to make any public statement or issue any press release with respect to the Transaction, prior to the close of the Transaction.

12.    Governing Law.  This Second Amended and Restated Commitment Letter shall be governed by, and interpreted and enforced in accordance with, the laws in force in the state of New York.

13.    Jurisdiction; Waiver of Jury Trial.  Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan.  Each of the Parties acknowledges and agrees that any controversy which may arise under this Second Amended and Restated Commitment Letter or the Amended Fixed/Floating Plan is likely to involve complicated and difficult issues, and therefore each such Party hereby irrevocably and unconditionally waives any right such Party may have to a trial by jury in respect of any litigation directly or indirectly arising out of or relating to this Second Amended and Restated Commitment Letter and the Amended Fixed/Floating Plan.

14.    Assignments; No Third Party Beneficiaries.  This Second Amended and Restated Commitment Letter shall not be assignable by any Party hereto without the prior written consent of each other Party hereto (and any attempted assignment without such consent shall be null and void ab initio); provided, however, that New HoldCo may, without the consent of any other party hereto, assign its rights and obligations hereunder and under the New HoldCo/Midland Commitment to acquire the equity interests of any or all of the Fixed/Floating Debtors to any entity with the same beneficial ownership as New HoldCo, and, provided, further, that such assignment shall not be in derogation of and shall be in compliance with the New Holdco/Midland Commitment and the documents evidencing the Midland Financing.  This Second Amended and Restated Commitment Letter (i) is intended to be solely for the benefit of the Parties hereto; and (ii) is not intended nor shall be construed to confer any benefits upon, or create any rights in favor of any person or entity other than the Parties hereto.  Notwithstanding anything to the contrary contained in this Section 14, any assignment by New HoldCo as contemplated under this Section 14 shall not

- 7 -

relieve the Plan Sponsors or New HoldCo of their obligations under the Second Amended and Restated Commitment Letter.

15.    Counterparts.  This Second Amended and Restated Commitment Letter may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement.

16.    Midland/Lehman/SASCO.  Provided that the Termination Date has not occurred, each of Midland, Lehman, and SASCO undertakes to actively support the approval and implementation of this Second Amended and Restated Commitment Letter and Bankruptcy Court approval of the Second Amended and Restated Commitment Letter and the modifications to the Amended Fixed/Floating Plan.  Lehman, Midland, and SASCO each hereby consents to the treatment of its claim under the Amended Fixed/Floating Plan.

17.    Entire Agreement.  This Second Amended and Restated Commitment Letter together with the Exhibits hereto, represent the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings among the parties hereto, both written and oral, with respect to the subject matter hereof, including without limitation the Commitment Letter and Term Sheet dated April 25, 2011, the Amended and Restated Commitment Letter and Amended and Restated Term Sheet dated May 16, 2011 and terminated as of August 19, 2011, the proposal submitted to the Company on August 24, 2011, and the proposal submitted to the Company on September 19, 2011.  Nothing in this Section 17 shall alter, amend, or otherwise affect the Parties' actual or potential claims, rights, or defenses, arising under or related to the transactions, events, or occurrences that are the subject of the Adversary Proceeding, including the Amended and Restated Commitment Letter and Amended and Restated Term Sheet dated May 16, 2011.

18.    Survival.  Notwithstanding the termination of this Second Amended and Restated Commitment Letter in accordance with its terms, the following agreements and obligations of the parties shall survive such termination and shall continue in full force and effect for the benefit of the parties hereto in accordance with the terms hereof: Sections 5 (Deposit; Remedies), 9 (Settlement of Claims), 12 (Governing Law), 13 (Jurisdiction; Waiver of Jury Trial), and 14 (Assignments; No Third Party Beneficiaries) of this Second Amended and Restated Commitment Letter.

19.    Intervention.  If the Fixed/Floating Debtors exercise any of the remedies set forth in subsections (ii) and (iii) of Section 5, each of the Parties hereto and the Committee (in such Party's discretion) shall be entitled to intervene as a plaintiff in the action commenced by the Fixed/Floating Debtors.

20.    Notice.  Any pleading, notice, or other document relating to this Second Amended and Restated Commitment Letter or any the Exhibits attached hereto shall be served on or delivered to the following parties:

Cerberus:                                                  Chatham:

Tom Wagner                                          Jeff Fisher
Cerberus Real Estate Management, LLC    Chatham Lodging Trust
299 Park Avenue, 23rd Floor                   50 Cocoanut Row
New York, NY 10171                             Palm Beach, FL 33480
Phone:  (212) 891-2158                          Phone: (561) 227-1309

- 8 -

Email: twagner@cerberusre.com

Counsel to Cerberus:

Stuart Freedman and
Adam Harris
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Phone:  (212) 756-2000
Email: stuart.freedman@srz.com
adam.harris@srz.com

Lehman:

Michael Lascher
Legacy Asset Management Company
1271 Avenue of the Americas
New York, NY 10020
Phone: (646) 285-9073
Email: michael.lascher@lamcollc.com


Counsel to Lehman:

Michael J. Sage
Brian E. Greer
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Phone:  (212) 698-3500
Email: michael.sage@dechert.com
brian.greer@dechert.com

Email: jfisher@cl-trust.com

Counsel to Chatham:

Scott Charles and
Scott Golenbock
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Phone: (212) 403-1000
Email: SKCharles@wlrk.com
SWGolenbock@wlrk.com

Midland:

Midland Loan Services, a division of PNC Bank,
National Association
10851 Mastin, 6th Floor
Overland Park, KS  66210
Attention:  Kevin S. Semon
Email:  kevin.semon@midlandls.com
Facsimile:  (913) 253-9723

Counsel to Midland:

Lenard Parkins
Haynes and Boone, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Phone:  (212) 659-4966
Email: lenard.parkins@haynesboone.com

- 9 -

IN WITNESS WHEREOF, the parties hereto have executed this Second
Amended and Restated Commitment Letter, effective as of the date first above written.

**INK ACQUISITION LLC**
By: Chatham Lodging LP, its managing member

By: _____
       Name:
       Title:

**INK ACQUISITION II LLC**
By: Chatham TRS Holding Inc., its managing member

By: _____
       Name:
       Title:

**INK ACQUISITION III LLC**
By: Chatham TRS Holding Inc., its managing member

By: _____
       Name:
       Title:

*Signature Page to Second Amended and Restated Commitment Letter*

**CERBERUS SERIES FOUR HOLDINGS, LLC**
By: Cerberus Institutional Partners, L.P. —
Series Four, its Managing Member

By: Cerberus Institutional Associates, L.L.C.,
its General Partner

By: _____

Name: Mark A. Neporent
Title: Chief Operating Officer
       General Counsel

**CHATHAM LODGING TRUST**

By: _____

Name:

Title:

Accepted and agreed:

**INNKEEPERS USA TRUST**
(solely on behalf of the Fixed/Floating Debtors,
its wholly owned direct and indirect subsidiaries)

By: _____
Name:
Title:

*Signature Page to Second Amended and Restated Commitment Letter*

**MIDLAND LOAN SERVICES, a DIVISION OF PNC BANK,
NATIONAL ASSOCIATION** (as Special Servicer for U.S. Bank
National Association as Trustee for the Registered Holders of
LB-UBS Commercial Mortgage Trust 2007-C6, LB-UBS Commercial Mortgage Trust 2007-C7,
Commercial Pass Through Certificates successor trustee to Bank of America
National Association)

By: _Valen Nicho_

Name: Valerie Nichols,

Title: senior vice president

*Signature Page to Second Amended and Restated Commitment Letter*

K&E 20090412

**APOLLO INVESTMENT CORPORATION**

By: _____

Name: James Zelter

Title: Authorized Signatory

*Signature Page to Second Amended and Restated Commitment Letter*

**LEHMAN ALI INC.**

By: _____

Name:

Title:

Jeffrey Fitts
Authorized Signatory

*Signature Page to Second Amended and Restated Commitment Letter*

**SASCO 2008-C2, LLC,** a Delaware limited liability company

By:    Lehman Commercial Paper Inc., as Debtor and Debtor
         in Possession in its chapter 11 case in the United States
         Bankruptcy Court for the Southern District of New York,
         Case No. 08-13555, its Managing Member

         By:_____

         Name:

         Title:

             **Jeffrey Fitts**
             **Authorized Signatory**

*Signature Page to Second Amended and Restated Commitment Letter*

**FIVE MILE CAPITAL PARTNERS LLC**

By: _____
Name: James G. Glasgow
Title:   Portfolio Manager and Managing Director


**FIVE MILE CAPITAL II POOLING REIT LLC**

**By: Five Mile Capital Partners LLC, its manager**

By: _____
Name: James G. Glasgow
Title:   Portfolio Manager and Managing Director

**CRES INVESTMENT NO. II, LP**

**By: Five Mile Capital Partners LLC, its general partner**

By: _____
Name: James G. Glasgow
Title:   Portfolio Manager and Managing Director


The above signatories are Parties only to Section 6(i)
of the Second Amended and Restated Commitment Letter

*Signature Page to Second Amended and Restated Commitment Letter*

**EXHIBIT A**

Fixed/Floating Debtors

The "Floating Rate Debtors" are Grand Prix Atlantic City LLC; Grand Prix Montvale LLC; Grand Prix Ft. Wayne LLC; Grand Prix Grand Rapids LLC; Grand Prix Harrisburg LLC; Grand Prix Ontario LLC; Grand Prix Troy (Central) LLC; Grand Prix Troy (SE) LLC; KPA/GP Valencia LLC; Grand Prix Albany LLC; Grand Prix Woburn LLC; KPA/GP Louisville (HI) LLC; KPA/GP Ft. Walton LLC; Grand Prix Rockville LLC; Grand Prix Morristown LLC; Grand Prix Addison (SS) LLC; Grand Prix Bulfinch LLC; Grand Prix East Lansing LLC; Grand Prix Indianapolis LLC; and Grand Prix West Palm Beach, LLC.

The "Fixed Rate Debtors" are Grand Prix Ft. Lauderdale LLC; Grand Prix Addison (RI) LLC; Grand Prix Altamonte LLC; Grand Prix Arlington LLC; Grand Prix Atlanta (Peachtree Corners) LLC; Grand Prix Atlanta LLC; Grand Prix Bellevue LLC; Grand Prix Binghamton LLC; Grand Prix Bothell LLC; Grand Prix Campbell / San Jose LLC; Grand Prix Cherry Hill LLC; Grand Prix Chicago LLC; Grand Prix Denver LLC; Grand Prix Englewood / Denver South LLC; Grand Prix Fremont LLC; Grand Prix Gaithersburg LLC; Grand Prix Lexington LLC; Grand Prix Livonia LLC; Grand Prix Louisville (RI) LLC; Grand Prix Lynnwood LLC; Grand Prix Mountain View LLC; Grand Prix Portland LLC; Grand Prix Richmond LLC; Grand Prix Richmond (Northwest) LLC; Grand Prix Saddle River LLC; Grand Prix San Jose LLC; Grand Prix San Mateo LLC; Grand Prix Shelton LLC; Grand Prix Sili I LLC; Grand Prix Sili II LLC; Grand Prix Tukwila LLC; Grand Prix Windsor LLC; Grand Prix Horsham LLC; Grand Prix Columbia LLC; Grand Prix Germantown LLC; Grand Prix Islandia LLC; Grand Prix Lombard LLC; Grand Prix Naples LLC; Grand Prix Schaumburg LLC; Grand Prix Westchester LLC; Grand Prix Willow Grove LLC; Grand Prix Belmont LLC; Grand Prix El Segundo LLC; Grand Prix Las Colinas LLC; and Grand Prix Mt. Laurel LLC.

The "Other Plan Debtors" are Grand Prix Floating Lessee LLC; Grand Prix Fixed Lessee LLC; Grand Prix Mezz Borrower Floating, LLC; Grand Prix Mezz Borrower Floating 2, LLC; Grand Prix Mezz Borrower Fixed, LLC; and GP AC Sublessee LLC.

The "Fixed/Floating Debtors" are the Floating Rate Debtors, the Fixed Rate Debtors, and the Other Plan Debtors. The Fixed/Floating Debtors own and/or operate the assets that serve as collateral for the Floating Rate Mortgage Loan and the Fixed Rate Mortgage Loan.

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER (I) AUTHORIZING FIXED/FLOATING DEBTORS TO ENTER INTO
SECOND AMENDED COMMITMENT LETTER, (II) APPROVING
(A) MODIFICATIONS TO FIXED/FLOATING PLAN AND CONFIRMATION
ORDER AND (B) AMENDED NEW HOLDCO/MIDLAND COMMITMENT, (III)
AUTHORIZING FIXED/FLOATING DEBTORS TO SETTLE ADVERSARY
PROCEEDING UPON CONSUMMATION OF MODIFIED FIXED/FLOATING PLAN**

Upon the motion (the "**Motion**")[1] of the Fixed/Floating Debtors, as debtors and debtors in possession (collectively, the "**Fixed/Floating Debtors**"), for the entry of an order (this "**Order**") (i) authorizing the Fixed/Floating Debtors' entry into the Second Amended Commitment Letter, (ii) approving the (a) modifications to the Confirmed Fixed/Floating Plan and Confirmation Order without need to resolicit and (b) Amended New HoldCo/Midland Commitment, and (iii) authorizing the Fixed/Floating Debtors to settle the Adversary Proceeding upon consummation of the Modified Fixed/Floating Plan; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and, after due deliberation and sufficient cause appearing therefor, it is HEREBY

---

[1]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

ORDERED THAT:

1.      The Motion is granted to the extent provided herein.

2.      The Second Amended Commitment Letter, attached hereto as **Exhibit 1**, is hereby approved and binding on all parties thereto to the extent provided therein.

3.      The Modified Fixed/Floating Plan, attached hereto as **Exhibit 2**, is hereby approved to the extent provided therein.

4.      The Amended New HoldCo/Midland Commitment, attached hereto as **Exhibit 3**, is hereby approved and binding on all parties thereto.

5.      Pursuant to the Second Amended Commitment Letter and the Modified Fixed/Floating Plan, the Holder of the Allowed Class FF3A Claims, the Holder of the Allowed Class FF3B Claims, and the Holder of the Allowed Class FF4 Claims have consented to the Modified Fixed/Floating Plan.

6.      Each of the parties to the Second Amended Commitment Letter is directed to use its reasonable best efforts to consummate the transactions set forth in the Second Amended Commitment Letter and the Modified Fixed/Floating Plan in a timely manner.

7.      Subject to the consummation of the transactions contemplated by the Second Amended Commitment Letter and the Modified Fixed/Floating Plan, and in accordance with the terms thereof, the settlement of the Adversary Proceeding is hereby approved. The Adversary Proceeding shall be dismissed with prejudice upon the Effective Date of the Fixed/Floating Plan.

8.      The Fixed/Floating Debtors are not required to resolicit acceptances of the Confirmed Fixed/Floating Plan, as modified, or prepare and distribute a new disclosure statement with respect thereto, and the Confirmed Fixed/Floating Plan, as modified, is deemed accepted by all creditors who have previously voted to accept the Confirmed Fixed/Floating Plan.

9.      This Order is without prejudice to any of the Debtors' rights to seek further modifications to the Confirmed Fixed/Floating Plan in accordance with section 1127 of the Bankruptcy Code and in accordance with the terms of the Confirmed Fixed/Floating Plan or of other parties to seek relief that might be appropriate.

10.     In the event the Second Amended Commitment Letter is terminated for any reason, the Fixed/Floating Debtors shall have the right, pursuant to the terms of the Second Amended Commitment Letter, to withdraw the Modified Fixed/Floating Plan and to treat the Confirmed Fixed/Floating Plan [Docket No. 1799] as being in full force and effect.

11.     Paragraph 235 of the Confirmation Order is hereby modified, as follows:

- On and as a condition to the occurrence of the Effective Date of the Fixed/Floating Plan, (a) on account of its Class FF3B claims against the Fixed/Floating Debtors, Lehman shall, in accordance with the Plan, receive a Cash payment of $224,000,000.00 (the "**Lehman Cash Payment**"); and (b) the Lehman DIP Lender shall receive payment in full in Cash of all claims derived from or based upon the Lehman DIP Agreement (the "**Lehman DIP Cash Payment**"), which are hereby deemed Allowed Claims. The Bankruptcy Court shall have jurisdiction over any dispute with respect to the pay-off amount of the Lehman Cash Payment or the Lehman DIP Cash Payment. Notwithstanding anything to the contrary contained in this Order, the Fixed/Floating Plan, the Disclosure Statement, or the Plan Supplement, Lehman and the Lehman DIP Lender's claims and liens against the applicable Fixed/Floating Debtors and the assets of the applicable Fixed/Floating Debtors shall remain in full force and effect and shall not be extinguished until the Lehman Cash Payment and the Lehman DIP Cash Payment have been received by Lehman and the Lehman DIP Lender, respectively.

12.     Subject to paragraph 10 of this Order, paragraph 155 of the Confirmation Order shall have no further force or effect.

13.     The following paragraph shall be deemed incorporated into the Confirmation Order:

- The transaction contemplated by the Second Amended Commitment Letter involving an investment by the Fixed/Floating Plan Sponsors in the

3

Fixed/Floating Hotels, including, without limitation, any sale, transfer, assignment, assumption, or modification of a franchise entered into therewith or contemplated thereby (a) shall be deemed to qualify for the large franchise exemptions to the Federal Trade Commission's Franchise Rule disclosure requirements, found at 16 CFR § 436.8(5)(i) and (ii); and (b) may proceed without the necessity of compliance with any state or local statute or ordinance requiring notice, approval, or a waiting period before a franchise can be sold, transferred, assigned, assumed, or modified.

14.    In the event of any inconsistencies between this Order and the Motion, this Order shall govern in all respects.

15.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  October 21, 2011
New York, New York

/s/ Shelley C. Chapman
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

4