## Exhibit B

**Proof of Claim**

| *United States Bankruptcy Court/Southern District of New York* | | **PROOF OF CLAIM** |
|---|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000020293

| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings Inc.** | Case No. of Debtor<br>**08-13555 (JMP)** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

SCOR Reinsurance Company
199 Water Street, 21st Floor
New York, NY 10038
Tel: 212 884-9003
Attention: Maxine Verne, General Counsel
mverne@scor.com

N. Lynn Hiestand
Andrew M. Thau
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on: **9/21/09**

(212) 735-3000
lynn.hiestand@skadden.com, andrew.thau@skadden.com

Telephone number:          Email Address:

**Name and address where payment should be sent (if different from above)**
SCOR Reinsurance Company
199 Water Street, 21st Floor, New York, NY 10038
Attention: Maxine Verne, General Counsel

212 884-9003                    mverne@scor.com
Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ See Addendum____
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.*
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See Addendum____
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. **Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe: See Addendum____

Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

**Amount of Secured Claim:** $See Addendum   **Amount Unsecured:** $See Addendum

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 21 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>09/16/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Paul Cheristoff · Chief Accounting Officer |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------------ x

## ADDENDUM TO PROOF OF CLAIM OF
## SCOR REINSURANCE COMPANY

SCOR Reinsurance Company (the "Claimant") hereby asserts claims (the "Claims") against Lehman Brothers Holdings Inc. ("LBHI"), a debtor and debtor-in-possession in the above-captioned bankruptcy cases, as set forth in the attached official proof of claim form, this addendum and the exhibits hereto (collectively, the "Proof of Claim").

**Background**

1.      On September 15, 2008 (the "LBHI Petition Date"), Lehman Brothers Holdings Inc. and certain of its affiliates filed voluntary petitions under chapter 11 of title 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code").

**Claims Not Based on Derivative Contract(s) and/or Guarantee(s)**

2.      The Claimant's Claims are not based on one or more "Derivative Contracts" or "Guarantees," as such terms are defined in the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (the "Bar Date Order"). As such, the Bar Date Order does not require the Claimant to complete a derivative questionnaire or a guarantee questionnaire for the Claims.

1

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

**The Security-Linked Notes due 2016**

3.     On or about July 16, 2004, LBHI through an offering memorandum dated July 16, 2004 (the "Offering Memorandum") sold US$ 14,152,000 security-linked notes due 2016 (the "Security-Linked Notes"). The Security-Linked Notes represent senior unsecured debt obligations of LBHI and were to rank *pari passu* among themselves and with all other present and future unsecured obligations of LBHI. The Security-Linked Notes were issued pursuant to an indenture between LBHI and JPMorgan Chase Bank as the Security-Linked Notes Trustee. The CUSIP assigned to the Security-Linked Notes is 524908 LZ 1, and the ISIN assigned to the Security-Linked Notes is US524908LZ16. A copy of the Offering Memorandum is attached hereto as **Exhibit B**.

4.     The Claimant is the holder of Security-Linked Notes. A copy of the Trade Ticket establishing the holding of Security-Linked Notes by the Claimant is attached hereto as **Exhibit A.**

**The Claims**

5.     The Claimant has Claims against LBHI for: (a) the sum of US$ 8,277,857 for the Security-Linked Notes held by the Claimant, *plus* (b) interest of not less than US$ 110,505, *plus* (c) attorneys' fees of not less than US$ 40,000, *plus* (d) costs of not less than US$ 20,000, and such interest, attorneys' fees and costs continue to accrue.

6.     The Claimant has calculated interest based on the interest the Claimant earned on the Security-Linked Notes, as per the terms of the Offering Memorandum, prior to the LBHI Petition Date, and applied to the principal amount of the Security-Linked Notes owed to the Claimant as of the LBHI Petition Date.

790614.04
Q:\Documents and Settings\athau\Local Settings\Temporary Internet Files\OLK1\SCOR Addendum (5)(2).doc

MSW

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

7.    Except as otherwise set forth in this Proof of Claim, the Claims are filed as general unsecured claims without prejudice to any and all rights of the Claimant to assert that the Claims, or any portion thereof, are secured or entitled to administrative expense priority under Bankruptcy Code Sections 503 and/or 507.

8.    Upon information and belief, no judgment has been rendered on the Claims.

9.    The amount of all payments on the Claims has been credited and deducted for the purpose of making this Proof of Claim.

10.    Upon information and belief, no portion of the Claim is subject to any set-offs, defenses or counterclaims by the Debtors, except as otherwise described herein.  To the extent that the Debtors take any action that would give rise to a right of set-off or recoupment, a counterclaim or other rights or claims in favor of the Claimant against the Debtors, the Claimant reserves all of its respective rights.

**Reservations of Rights**

11.    The Claimant reserves the right to: (a) amend, update, or supplement this Proof of Claim (including, without limitation, to add additional amounts due and owing) at any time and in any respect; (b) file additional proofs of claim; and (c) file a request for payment of administrative or priority expenses in accordance with Bankruptcy Code sections 503 and 507.

12.    By filing this Proof of Claim, the Claimant: (a) does not submit to the jurisdiction of this Court for any purpose other than with respect to this Proof of Claim; (b) does not waive (and expressly reserves) all of its procedural and substantive defenses, counterclaims and objections (including without limitation, the right of set-off, recoupment or any similar right, remedy or defense) to any objection to the Claims or any claim that may be asserted against the

3

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

Claimant by the Debtors, their estates, any successor to the Debtors, or any other person, including, without limitation, any defense based upon the lack of jurisdiction of this Court to entertain any such claim; (c) does not waive (and expressly reserves) any right to any security held by or on behalf of the Claimant or any right of the Claimant to claim specific assets or any other claim, right, or right of action that the Claimant has or might have against the Debtors, their estates, any successor to the Debtors, or any other person, whether such claim, right, or right of action arises prior to, upon, or after the LBHI Petition Date; and (d) does not waive (and expressly reserves) any and all other rights that the Claimant may have pursuant to applicable law or agreement.

13. Nothing contained in this Proof of Claim shall be deemed an admission by the Claimant. The Claimant expressly reserves the right to withdraw this Proof of Claim as if it had never been filed.

**Notices**

14. All notices, objections or other communications relating to this Proof of Claim should be addressed and sent to:

> SCOR Reinsurance Company
> 199 Water Street, 21st Floor
> New York, NY 10038
> Telephone: 212 884-9003
> Attention: Maxine Verne, General Counsel
> E-mail: mverne@scor.com
>
> - and -
>
> N. Lynn Hiestand
> Andrew M. Thau
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY 10036
> Telephone (212) 735-3000

4

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

Fax:  (212) 735-2000
E-mail:  lynn.hiestand@skadden.com
         andrew.thau@skadden.com

5

ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

EXHIBIT A

TRADE TICKET



ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

# Exhibit B

## Offering Memorandum

Attached please find an electronic copy of the Offering Memorandum (the "Offering Memorandum"), dated July 16, 2004 relating to the security-linked notes (the "Security-Linked Notes") offered by Lehman Brothers Holdings Inc. ("LBHI" or the "Issuer").

**The Offering Memorandum is highly confidential and does not constitute an offer to any person other than the recipient or to the public generally to subscribe for or otherwise acquire the Security-Linked Notes described therein. The Offering Memorandum is not an offer to sell the Security-Linked Notes and is not a solicitation of an offer to buy the Security-Linked Notes in any jurisdiction where the offer or sale is not permitted.**

**DISTRIBUTION OF THE OFFERING MEMORANDUM TO ANY PERSONS OTHER THAN THE PERSON RECEIVING THIS ELECTRONIC COPY  FROM THE MANAGER REFERRED TO THEREIN AND ITS AGENTS, AND ANY PERSONS RETAINED TO ADVISE THE PERSON RECEIVING THIS ELECTRONIC TRANSMISSION FROM THE MANAGER WITH RESPECT THERETO IS UNAUTHORIZED. ANY PHOTOCOPYING, DISCLOSURE OR ALTERATION OF THE CONTENTS OF THE OFFERING MEMORANDUM, AND ANY FORWARDING OF A COPY OF THE OFFERING MEMORANDUM BY ANY MEANS TO ANY PERSON OTHER THAN THE PERSON RECEIVING THIS COPY FROM THE MANAGER AND ITS AGENTS, IS PROHIBITED. BY ACCEPTING DELIVERY OF THE OFFERING MEMORAN-DUM, THE RECIPIENT AGREES TO THE FOREGOING.**

Offering Memorandum

# Lehman Brothers Holdings Inc.

## $14,152,000 Security-Linked Notes Due 2016

Lehman Brothers Holdings Inc. ("LBHI" or the "Issuer") offers to sell hereby the $14,152,000 Security-Linked Notes Due 2016 described herein (the "Security-Linked Notes"). The entire principal amount of the Security-Linked Notes is due on the Payment Date (as defined herein) occurring in July 2016 (the "Stated Maturity"). Prior to their Stated Maturity, the Security-Linked Notes will be entitled to receive principal payments up to the Target Initial Principal Repayment Amount (as defined herein). No other principal will be due or payable on the Security-Linked Notes prior to the Stated Maturity thereof except in the event of an acceleration of the Security-Linked Notes following a Security-Linked Notes Event of Default (as defined herein). The Security-Linked Notes are senior unsecured debt obligations of LBHI and will rank *pari passu* among themselves and with all other present and future senior unsecured obligations of LBHI. The amount of interest payable on the Security-Linked Notes on each Payment Date (as defined herein) will depend upon the amount of distributions made on the related CLO Fund Payment Date (as defined herein) with respect to the Referenced Preference Shares (as defined herein) to be issued by AMMC CLO III, Limited, a newly-formed exempted company incorporated with limited liability under the laws of the Cayman Islands (the "CLO Fund"). Such distributions are, in turn, dependent upon distributions made in respect of a diversified pool of securities owned by the CLO Fund that will consist primarily of senior secured bank loans and may include a limited amount of second-lien loans, senior unsecured loans, senior secured floating rate notes and synthetic securities. The Security-Linked Notes do not represent interests in or obligations of, and are not insured or guaranteed by, any governmental agency or any person or entity other than LBHI to the extent set forth in the Security-Linked Notes Indenture (as defined herein). The Referenced Preference Shares do not represent interests in or obligations of, and are not insured or guaranteed by, any governmental agency or any person or entity other than the CLO Fund to the extent set forth in the Preference Share Paying Agency Agreement (as defined herein).

It is a condition to the issuance of the Security-Linked Notes that they be assigned a rating of at least "A1" by Moody's Investors Service, Inc. ("Moody's") and at least "A" by Standard & Poor's Ratings Services, a Division of The McGraw-Hill Companies, Inc. ("Standard & Poor's"). The ratings of the Security-Linked Notes are applicable only as of the Closing Date and will not be monitored following the Closing Date. Such ratings are based solely on the credit rating of LBHI. See "Rating of the Security-Linked Notes" herein.

**EACH PROSPECTIVE INVESTOR IN THE SECURITY-LINKED NOTES MUST REVIEW THE RISKS APPLICABLE TO THE SECURITY-LINKED NOTES, AS DESCRIBED IN THE SECTION ENTITLED "RISK FACTORS" STARTING ON PAGE 8 HEREOF, AND CONSIDER WHETHER THE RISKS INHERENT IN THE SECURITY-LINKED NOTES ARE CONSISTENT WITH SUCH INVESTOR'S INVESTMENT POLICIES AND OBJECTIVES PRIOR TO MAKING A COMMITMENT TO PURCHASE THE SECURITY-LINKED NOTES.**

## LEHMAN BROTHERS

The date of this Offering Memorandum is July 16, 2004

There currently is no secondary market for the Security-Linked Notes, and there is no assurance that one will develop.  Holders of the Security-Linked Notes will have no right to receive the Referenced Preference Shares in exchange for their Security-Linked Notes or otherwise.

---

**The Security-Linked Notes have not been registered with, or approved or disapproved by, the United States Securities and Exchange Commission or any state securities commission or other regulatory authority, and none of the foregoing authorities has confirmed the accuracy or determined the adequacy of this Offering Memorandum. Any representation to the contrary is a criminal offense.**

---

**Payments in respect of the Security-Linked Notes to non-U.S. investors may be subject to substantial U.S. federal income withholding tax, as described herein under "U.S. Federal Income Tax Considerations."**

---

The Security-Linked Notes are offered by Lehman Brothers Inc. (the "Manager") through privately negotiated transactions at varying prices.  The Manager reserves the right to withdraw, cancel or modify the offer of such Security-Linked Notes and to reject orders in whole or in part.  It is expected that the Security-Linked Notes will be delivered on or about July 20, 2004 in New York, New York (the "Closing Date") against payment therefor in immediately available funds.  The Security-Linked Notes will be offered only in reliance on the exemption from registration provided by Rule 144A ("Rule 144A") or Section 4(2) of the Securities Act.  The Security-Linked Notes will be represented by one or more definitive notes registered in the name of the beneficial holder thereof.  The Security-Linked Notes are subject to substantial restrictions on transfer as described herein under "Purchase and Transfer Restrictions." The Security-Linked Notes will be issued in minimum denominations of $250,000 and integral multiples of $1,000 in excess thereof.

ii

The Security-Linked Notes being offered hereby have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state of the United States or any other relevant jurisdiction. The Security-Linked Notes are being offered by LBHI to persons who are (A) "qualified institutional buyers" (as defined in the Rule 144A under the Securities Act), (B) "accredited investors" (as defined in Rule 501(a) of Regulation D under the Securities Act), or (C) not "U.S. persons" (as defined in Regulation S ("Regulation S") under the Securities Act). Each purchaser of Security-Linked Notes in making its purchase will be required to make certain acknowledgments, representations and agreements set forth under "Purchase and Transfer Restrictions" in a subscription agreement or certificate to be delivered to LBHI. Prospective purchasers are hereby notified that the seller of any Security-Linked Notes may be relying on an exemption from the registration requirements of Section 5 of the Securities Act. The Security-Linked Notes are subject to other restrictions on transferability and resale as set forth in "Description of the Security-Linked Notes—Form, Registration and Transfer of the Security-Linked Notes" and "Purchase and Transfer Restrictions."

---

No person is authorized in connection with any offering made hereby to give any information or make any representation other than as contained herein and, if given or made, such information or representation must not be relied upon as having been authorized by LBHI. Prospective purchasers should not construe the contents of this Offering Memorandum as investment, tax or legal advice. This Offering Memorandum, as well as the nature of an investment in the Security-Linked Notes, should be reviewed by each prospective purchaser and such purchaser's investment, tax and legal advisors.

Prospective investors in the Security-Linked Notes are urged to request any additional information they may consider necessary or desirable in making an informed investment decision. Each prospective purchaser (and each purchaser's representative, if any) is invited, prior to the consummation of a sale of any Security-Linked Notes to such purchaser, to ask questions of, and receive answers from, LBHI concerning the Security-Linked Notes and this offering, the Referenced Preference Shares, the CLO Fund and the CLO Collateral (each, as defined herein), and to obtain any additional information to the extent that LBHI possesses the same or can acquire it without unreasonable effort or expense, in order to verify the accuracy of the information contained in this Offering Memorandum (including the CLO Offering Memorandum (as defined herein) attached hereto as Appendix C) or otherwise. Requests for such additional information can be directed to LBHI at its principal office at Lehman Brothers Holdings Inc., 745 Seventh Avenue, New York, NY 10019, tel: (212) 526-7000, Attention: Collateralized Debt Obligations Group, Re: AMMC CLO III, Limited.

This Offering Memorandum does not constitute an offer to sell, or a solicitation of an offer to buy, (i) any securities other than the Security-Linked Notes offered hereby or (ii) any Security-Linked Notes in any jurisdiction in which it is unlawful to make such an offer or solicitation. The distribution of this Offering Memorandum and the offering of the Security-Linked Notes in certain jurisdictions may be restricted by law. Persons into whose possession this Offering Memorandum comes are required by LBHI to inform themselves about, and to observe, any such restrictions. In particular, there are restrictions on the distribution of this Offering Memorandum, and the offer and sale of the Security-Linked Notes, in the United States. See "Subscription and Sale." Neither the delivery of this Offering Memorandum nor any sale made hereunder shall under any circumstances imply that there

has been no change in the affairs of LBHI or that the information herein is correct as of any date subsequent to the date hereof. LBHI reserves the right, for any reason, to reject any offer to purchase in whole or in part, or to sell less than the stated principal amount of Security-Linked Notes.

EACH INITIAL INVESTOR IN A SECURITY-LINKED NOTE WILL BE REQUIRED TO REPRESENT AND WARRANT IN THE RELATED SUBSCRIPTION AGREEMENT, AND EACH SUBSEQUENT TRANSFEREE OF SECURITY-LINKED NOTES WILL BE REQUIRED TO REPRESENT AND WARRANT IN A TRANSFER CERTIFICATE, THAT ON EACH DAY FROM THE DATE ON WHICH THE PURCHASER ACQUIRES SUCH INTEREST THROUGH THE DATE ON WHICH THE PURCHASER DISPOSES OF SUCH INTEREST, EITHER THAT (A) IT IS NOT AN "EMPLOYEE BENEFIT PLAN" SUBJECT TO TITLE I OF ERISA; A "PLAN" SUBJECT TO SECTION 4975(e)(1) OF THE CODE; AN ENTITY WHOSE UNDERLYING ASSETS ARE DEEMED TO INCLUDE THE PLAN ASSETS OF ANY SUCH ERISA PLAN OR OTHER PLAN; OR A FOREIGN PLAN, GOVERNMENTAL PLAN, CHURCH PLAN, OR ANY OTHER PLAN, THAT IS SUBJECT TO ANY FEDERAL, STATE OR LOCAL LAW THAT IS SUBSTANTIALLY SIMILAR TO THE PROVISIONS OF SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE, OR (B) ITS PURCHASE AND HOLDING OF SUCH SECURITY-LINKED NOTES WILL NOT RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER ERISA OR SECTION 4975 OF THE CODE OR ANY SUBSTANTIALLY SIMILAR FEDERAL, STATE OR LOCAL LAW. SEE "ERISA CONSIDERATIONS" HEREIN FOR A DETAILED DISCUSSION OF CERTAIN ERISA-RELATED CONSIDERATIONS WITH RESPECT TO AN INVESTMENT IN THE SECURITY-LINKED NOTES.

---

This Offering Memorandum is personal to each offeree to whom it has been delivered on behalf of LBHI or any affiliate thereof and does not constitute an offer to any other person or to the public generally to subscribe for or otherwise acquire the Security-Linked Notes. Without the prior written consent of LBHI, this Offering Memorandum may not be reproduced or provided to others who are not directly concerned with a prospective investor's decision regarding such investment.

This Offering Memorandum has been prepared by LBHI solely for use in connection with the offering of the Security-Linked Notes by LBHI as described herein. LBHI has taken all reasonable care to confirm that the information contained in this Offering Memorandum is true and accurate in all material respects and is not misleading in any material respect and that there are no other facts relating to LBHI or the Security-Linked Notes, the omission of which makes this Offering Memorandum as a whole or any such information contained herein, in light of the circumstances under which it was made, misleading in any material respect. LBHI disclaims any obligation to update such information and does not intend to do so. Nothing contained in this Offering Memorandum is or should be relied upon as a promise or representation as to future results or events. Neither the CLO Fund nor JPMorgan Chase Bank has participated in the preparation of this Offering Memorandum and assumes no responsibility for its contents.

Each initial purchaser, in the related Subscription Agreement (as defined herein) or, in the case of a subsequent transferee, in a transfer certificate, respectively, will be required (i) to represent and warrant that it is an Accredited Investor, a Qualified Institutional Buyer or a Non-U.S. Person (each, as defined herein), purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is an Accredited Investor, a Qualified Institutional Buyer or a Non-U.S. Person, as applicable, and is purchasing the Security-Linked Notes for investment purposes and not for distribution and (ii) to acknowledge that the Security-Linked Notes have not been and will not be registered under the Securities Act and may not be reoffered, resold, pledged or otherwise transferred except (I)(A) to

an Accredited Investor, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is also an Accredited Investor, (B) to an Qualified Institutional Buyer, purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, each of which is also a Qualified Institutional Buyer, to whom notice is given that the resale, pledge or other transfer is being made in reliance on an exemption from the registration requirements of the Securities Act, or (C) to a Non-U.S. Person purchasing for its own account or one or more accounts with respect to which it exercises sole investment discretion, and (II) in compliance with the certification and other requirements set forth in the Security-Linked Notes Indenture and in accordance with any applicable securities laws of each state of the United States and any other relevant jurisdiction. For a description of these and certain other restrictions on offers and sales of the Security-Linked Notes and distribution of this Offering Memorandum, see "Purchase and Transfer Restrictions."

LBHI makes no representation to any offeree or purchaser of Security-Linked Notes regarding the legality of investment therein by such offeree or purchaser under applicable legal investment or similar laws or regulations or the proper classification of such an investment thereunder.

## NOTICE TO NEW HAMPSHIRE RESIDENTS

**Neither the fact that a registration statement or an application for a license has been filed under Chapter 421-B of the New Hampshire revised statutes with the State of New Hampshire nor the fact that a security is effectively registered or a person is licensed in the State of New Hampshire constitutes a finding by the Secretary of State that any document filed under RSA 421-B is true, complete and not misleading. Neither any such fact nor the fact that an exemption or exception is available for a security or a transaction means that the Secretary of State has passed in any way upon the merits or qualifications of, or recommended or given approval to, any person, security or transaction. It is unlawful to make, or cause to be made, to any prospective purchaser, customer or client any representation inconsistent with the provisions of this paragraph.**

## FORWARD LOOKING STATEMENTS

Any projections, forecasts and estimates contained in the CLO Offering Memorandum or herein (including the hypothetical yields set forth in Appendix B) are not purely historical in nature but are forward looking statements and are based upon information furnished by the CLO Fund and LBHI and certain assumptions that the CLO Fund and LBHI consider reasonable, subject to uncertainties as to circumstances and events that have not yet taken place and are subject to material variation. Projections are necessarily speculative in nature, and it can be expected that some or all of the assumptions underlying the projections will not materialize or will vary significantly from actual results. Accordingly, the projections are only an estimate and there can be no assurance that any projected or forecasted results will be attained. Actual results may vary from the projections, and the variations may be material.

Some important factors that could cause actual results to differ materially from those in any forward looking statements include, among others, changes in interest rates or currency exchange rates, market, financial or legal uncertainties, the general availability of liquidity, differences in the actual allocation, with respect to the collateral, of the securities among asset categories from those assumed in any projections, forecasts and estimates contained in the CLO Offering Memorandum or herein, the price at which the securities are actually purchased by the CLO Fund, any defaults of the securities and the market value of any such defaulted securities, the timing of any such defaults and subsequent recoveries, the timing of

acquisitions of the securities, mismatches between the timing of accrual and receipt of interest proceeds from the securities, the effectiveness of any hedging arrangements entered into by the CLO Fund, changes in the ratings of the securities, any default by holders of certain revolving classes of CLO Fund Securities in funding draws, if any, on their revolving CLO Fund Securities and any defaults by hedge counterparties. Consequently, the inclusion of projections in the CLO Offering Memorandum or herein should not be regarded as a representation by the CLO Fund, LBHI, the Collateral Manager (as defined herein), the Manager, the Security-Linked Notes Trustee, the CLO Fund Trustee or any of their respective affiliates or any other person or entity of the results that will actually be achieved.

Neither LBHI nor the Manager has any obligation to update or otherwise revise any projections, including any revisions to reflect changes in economic conditions or other circumstances arising after the date hereof or to reflect the occurrence of unanticipated events, even if the underlying assumptions do not come to fruition.

---

**In connection with the offering of the Security-Linked Notes, the Manager may, as permitted by applicable law, over-allot or effect transactions that stabilize or maintain the market price of the Security-Linked Notes at a level which might not otherwise prevail in the open market. Such stabilizing, if commenced, may be discontinued at any time.**

---

In this Offering Memorandum, references to "U.S. Dollars," "Dollars" and "$" are to United States dollars.

### INFORMATION CONCERNING LEHMAN BROTHERS HOLDINGS INC.

LBHI is subject to the information requirements of the Securities Exchange Act of 1934, as amended, and in accordance therewith files reports and other information with the Securities and Exchange Commission (the "SEC"). Reports, proxy and information statements, and other information filed by LBHI can be inspected and copied at the public reference facilities maintained by the SEC at Room 1024, 450 Fifth Street, N.W., Washington, D.C. 20549. Copies of such material can be obtained from the Public Reference Section of the SEC at 450 Fifth Street, N.W., Washington, D.C. 20549 at prescribed rates. Reports, proxy and other information statements and other information concerning LBHI may also be obtained at http://www.sec.gov.

The following documents are hereby incorporated by reference into this Offering Memorandum:

- Annual Report on Form 10-K for the year ended November 30, 2003, filed with the SEC on February 26, 2004;

- Quarterly Report on Form 10-Q for the quarter ended May 31, 2004, filed with the SEC on July 14, 2004; and

- Current Reports on Form 8-K, filed with the SEC, as may be obtained at http://www.sec.gov.

**LBHI will provide without charge to each person to whom this Offering Memorandum is delivered, on written or oral request of such person, a copy (without exhibits other than exhibits**

specifically incorporated by reference) of any or all documents incorporated by reference into this Offering Memorandum. Requests for such copies should be directed to Lehman Brothers Holdings Inc., 745 Seventh Avenue, New York, NY 10019, Collateralized Debt Obligations Group, tel: (212) 526-7000.

## TABLE OF CONTENTS

Page

SUMMARY OF TERMS ..................................................................... 1

RISK FACTORS ............................................................................ 8
    Risks Relating to the Security-Linked Notes .......................................... 8
    Risks Relating to the CLO Fund and the Preference Shares ........................... 9
    ERISA and Tax ..................................................................... 10

USE OF PROCEEDS ....................................................................... 11

DESCRIPTION OF THE SECURITY-LINKED NOTES ..................................... 11
    General .......................................................................... 11
    Interest on the Security-Linked Notes .............................................. 11
    Principal on the Security-Linked Notes .............................................. 12
    Payments to Holders of Record .................................................... 12
    Security-Linked Notes Events of Default ............................................ 13
    Form, Registration and Transfer of the Security-Linked Notes ....................... 14
    Governing Law .................................................................... 15

RATING OF THE SECURITY-LINKED NOTES ............................................ 15

THE REFERENCED PREFERENCE SHARES ............................................... 16
    General .......................................................................... 16
    Distributions on the Referenced Preference Shares ................................... 16
    Optional Redemption of the CLO Fund Securities .................................... 17

LEHMAN BROTHERS HOLDINGS INC. ................................................... 18
    General .......................................................................... 18
    Additional Information ............................................................. 18

THE SECURITY-LINKED NOTES INDENTURE ........................................... 19
    Covenants ........................................................................ 19
    Reporting to Holders of the Security-Linked Notes .................................. 19
    Notices .......................................................................... 20
    Modification of the Security-Linked Notes Indenture ................................ 20
    The Security-Linked Notes Trustee ................................................. 21

U.S. FEDERAL INCOME TAX CONSIDERATIONS ....................................... 22
    In General ........................................................................ 22
    Characterization of the Security-Linked Notes ...................................... 22
    Alternative Characterizations ...................................................... 22
    Taxation of Contingent Debt ...................................................... 23
    Special Considerations for Non-U.S. Holders ....................................... 25
    Backup Withholding and Information Reporting ..................................... 25

ERISA CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

SUBSCRIPTION AND SALE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         Investor Suitability Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

PURCHASE AND TRANSFER RESTRICTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

APPENDIX A  –    INDEX OF DEFINED TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

APPENDIX B  –    HYPOTHETICAL YIELD ON THE SECURITY-LINKED NOTES . . . . . . B-1

APPENDIX C  –    CLO OFFERING MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

[This page left intentionally blank]

x

# SUMMARY OF TERMS

*The following summary does not purport to be complete and is qualified in its entirety by, and should be read in conjunction with, the more detailed information appearing elsewhere in this Offering Memorandum and in the documents referred to herein. See "Risk Factors" for a discussion of certain factors that should be considered in connection with an investment in the Security-Linked Notes. An index of defined terms appears at the back of this Offering Memorandum.*

Securities Offered . . . . . . . . . . . .   $14,152,000 Security-Linked Notes Due 2016 (the "Security-Linked Notes").

It is expected that the Security-Linked Notes will be delivered on or about July 20, 2004 in New York, New York (the "Closing Date") against payment therefor in immediately available funds.

Payment Dates . . . . . . . . . . . . . .   Payments on the Security-Linked Notes will be made quarterly on the 26th day of each January, April, July and October (or, if such day is not a Business Day, on the next succeeding Business Day) commencing in January 2005 and ending in July 2016 (each, a "Payment Date").  "Business Day" means any day on which commercial banks and foreign exchange markets settle payments in each of New York City, New York, Houston, Texas, the Cayman Islands and any other city in which the designated corporate trust office of the Security-Linked Notes Trustee may from time to time be located or, in the case of the final payment of principal of any Note, the place of presentation of such Note.

Security-Linked Notes are
Senior Unsecured Indebtedness
of LBHI . . . . . . . . . . . . . . . . . . .   The Security-Linked Notes represent senior unsecured debt obligations of LBHI and will rank *pari passu* among themselves and with all other present and future senior unsecured obligations of LBHI. The Security-Linked Notes will not be secured by any assets of LBHI or any of its affiliates, including the Referenced Preference Shares.

Referenced Preference Shares . . .   The "Preference Shares" are Preference Shares due 2016, with a par value of $0.01 per share and a liquidation value of $1,000 per share, to be issued by the CLO Fund. The "Referenced Preference Shares" represent 8,500 of the Preference Shares. None of LBHI or any of its affiliates have any obligation to acquire or continue to hold any Preference Shares at any time. Holders of the Security-Linked Notes will have no right under the Security-Linked Notes Indenture to receive the Referenced Preference Shares in exchange for their Security-Linked Notes or otherwise under any circumstances.

| | |
|---|---|
| Interest on the Security-Linked Notes ..................... | As described in more detail herein under "Description of the Security-Linked Notes—Interest on the Security-Linked Notes," on each Payment Date after the Initial Principal Repayment Date (as defined below), any distribution made on the Referenced Preference Shares on the immediately preceding CLO Fund Payment Date will result in a corresponding payment on the Security-Linked Notes in an amount equal to the amount of such distribution on the Referenced Preference Shares. Until the Payment Date (the "Initial Principal Repayment Date") as of which the holders of the Security-Linked Notes have received distributions on all preceding Payment Dates that in the aggregate equal $2,830,400 (the "Target Initial Principal Repayment Amount"), all distributions made on the Referenced Preference Shares will result in payments on the Security-Linked Notes which will be applied to reduce the outstanding principal amount thereof. |

As a result of the subordinated and leveraged nature of the Referenced Preference Shares, such securities are subject to substantial variability in cashflows, both with respect to each CLO Fund Payment Date and over the course of their term. Other than the Final Principal Repayment Amount, all payments made on the Security-Linked Notes are wholly dependent on the amount of distributions made on the Referenced Preference Shares and, accordingly, the Security-Linked Notes will be subject to the same yield considerations, cashflow variability and other risks related to the Referenced Preference Shares. See "Risk Factors—Risks Relating to the Security-Linked Notes—Amount of Interest Paid on the Security-Linked Notes Subject to Substantial Variability Due to the Leveraged Nature of the Referenced Preference Shares" and "—Risks Relating to the Security-Linked Notes—Security-Linked Notes Not Secured by Referenced Preference Shares or CLO Collateral." In addition, until payments equal in the aggregate to the Target Initial Principal Repayment Amount have been made on the Security-Linked Notes, the holders thereof will not receive any distributions of interest.

| | |
|---|---|
| Principal on the Security-Linked Notes ..................... | Until the Initial Principal Repayment Date as of which the holders of the Security-Linked Notes have received distributions on all preceding Payment Dates that equal the Target Initial Principal Repayment Amount, all distributions made on the Referenced Preference Shares will result in payments on the Security-Linked Notes which will be applied to reduce the outstanding principal amount thereof. After the Initial Principal Repayment Date, all distributions on the Referenced Preference Shares will result in distributions of interest on the Security-Linked Notes. Other than the Target Initial Principal Repayment Amount, no principal will be payable on the Security-Linked Notes prior to their Stated Maturity, except in the event of an acceleration of the Secu- |

2

rity-Linked Notes following a Security-Linked Notes Event of Default.

The Security-Linked Notes will mature on the Payment Date occurring in July 2016 (the "Stated Maturity" of the Security-Linked Notes) on which date the holders of the Security-Linked Notes will be entitled to receive the "Final Principal Repayment Amount" equal to the original aggregate outstanding principal amount of the Security-Linked Notes, minus the lesser of (1) the Target Initial Principal Repayment Amount and (2) the aggregate amount paid on the Security-Linked Notes from the Closing Date through their Stated Maturity, reflecting the aggregate distributions on the Referenced Preference Shares from the CLO Closing Date to the date as of which the Referenced Preference Shares received their final distribution in redemption thereof.

Any payment of principal of the Security-Linked Notes will be made by the Security-Linked Notes Trustee on a *pro rata* basis among the holders of the Security-Linked Notes according to the respective principal amounts of the Security-Linked Notes registered to such holder immediately prior to such payment.

| | |
|---|---|
| The Security-Linked Notes Trustee . . . . . . . . . . . . . . . . | JPMorgan Chase Bank, a New York banking corporation, will act as the "Security-Linked Notes Trustee" with respect to the Security-Linked Notes pursuant to the Security-Linked Notes Indenture. |
| The Security-Linked Notes Indenture . . . . . . . . . . . . . . | The Security-Linked Notes will be issued pursuant to an indenture dated on or around the Closing Date (the "Security-Linked Notes Indenture") between LBHI and the Security-Linked Notes Trustee. |
| Lehman Brothers Holdings Inc. . . . | Lehman Brothers Holdings Inc., a Delaware corporation ("LBHI" or the "Issuer"). |
| The CLO Fund . . . . . . . . . . . . . . . | AMMC CLO III, Limited, a newly-formed exempted company incorporated with limited liability under the laws of the Cayman Islands (the "CLO Fund"). |

*The CLO Fund Notes*

On July 20, 2004 (the "CLO Closing Date"), the CLO Fund will issue, together with AMMC CLO III, Corp. a newly-organized Delaware corporation (the "CLO Co-Issuer"), the Class A Floating Rate Notes due 2016 (the "Class A Notes"), the Class B Floating Rate Deferrable Revolving Notes due 2016 (the "Class B Notes"), the Class C Floating Rate Notes due 2016 (the "Class C Notes") and the Class D Floating Rate Deferrable Notes due 2016 (the "Class D Notes" and, collectively with the Class A Notes, the Class

B Notes and the Class C Notes, the "CLO Fund Notes"). The CLO Fund Notes and the Preference Shares are collectively referred to as the "CLO Fund Securities." The CLO Fund Notes are being issued pursuant to an indenture, dated as of the CLO Closing Date (the "CLO Fund Indenture"), among the CLO Fund, the CLO Co-Issuer and JPMorgan Chase Bank, as trustee (the "CLO Fund Trustee").

**None of the CLO Fund Securities are offered hereby.**

*The Preference Shares*

The Preference Shares are being issued by the CLO Fund pursuant to its Amended and Restated Memorandum and Articles of Association (the "CLO Fund Charter"), certain resolutions of its Board of Directors and the Preference Share Paying Agency Agreement (collectively, the "Preference Share Documents").

Distributions on the Preference Shares will not be made at a stated rate, and the rate at which distributions on the Preference Shares are made may vary substantially from CLO Fund Payment Date to CLO Fund Payment Date and, with respect to some CLO Fund Payment Dates, no distributions may be paid. The Preference Shares will be entitled to receive distributions from the CLO Collateral remaining after payment of all prior amounts in accordance with the priority of payments set forth in the CLO Fund Indenture.

The application of amounts available after the payment of all prior amounts payable in accordance with the priority of payments set forth in the CLO Fund Indenture to make distributions on the Preference Shares is subject to certain restrictions under the laws of the Cayman Islands. Those restrictions may result in amounts otherwise payable to the holders of the Preference Shares being retained by the CLO Fund. See "Risk Factors—Risks Relating to the CLO Fund and the Preference Shares—Distributions on Preference Shares Subject to Cayman Islands Law."

JPMorgan Chase Bank will be the paying agent for the Preference Shares (the "Preference Share Paying Agent") under a paying agency agreement, dated as of the CLO Closing Date (the "Preference Share Paying Agency Agreement") by and among the CLO Fund, the Preference Share Paying Agent, and Maples Finance Limited, as Share Registrar (as defined therein), and will also be the trustee for the CLO Fund Notes under the CLO Fund Indenture (in such capacity, the "CLO Fund Trustee"). The Preference Shares are described in more detail in the Offering Memorandum attached hereto as Appendix C (the "CLO Offering Memorandum"). Capitalized terms used but not otherwise defined

4

in this Offering Memorandum have the meaning assigned to those terms in the CLO Offering Memorandum.

*The CLO Collateral*

The CLO Fund will apply amounts that it receives from the issuance and sale of the CLO Fund Notes and the Preference Shares to pay applicable fees and expenses and to acquire a diversified pool of securities that will consist primarily of senior secured bank loans and may include a limited amount of second-lien loans, senior unsecured loans, senior secured floating rate notes and synthetic securities, which will be pledged to secure the CLO Fund Notes (the "CLO Collateral"). The Preference Shares will not be secured by the CLO Collateral. The CLO Collateral is described in more detail in the CLO Offering Memorandum attached hereto as Appendix C.

The Collateral Manager . . . . . . . .   The CLO Collateral which will secure the CLO Fund Notes will be managed by American Money Management Corporation (the "Collateral Manager") pursuant to the Collateral Management Agreement, to be dated as of July 20, 2004 (the "Collateral Management Agreement"), between the CLO Fund and the Collateral Manager. The Collateral Manager has not participated in this Offering Memorandum or the offering or structuring of the Security-Linked Notes.

Use of Proceeds . . . . . . . . . . . . .   LBHI will use the net proceeds from the sale of the Security-Linked Notes for working capital and general corporate purposes. See "Use of Proceeds" herein.

Rating of the Notes . . . . . . . . . . .   It is a condition to the issuance of the Security-Linked Notes that the Security-Linked Notes be assigned a rating of at least "A1" by Moody's and at least "A" by Standard & Poor's. The ratings of the Security-Linked Notes are applicable as of the Closing Date only and will not be monitored following the Closing Date. Any ratings assigned to the Security-Linked Notes will be based solely on the credit rating of LBHI. A security rating should be evaluated independently of similar ratings of different types of securities. A rating is not a recommendation to buy, sell or hold securities and may be subject to revision or withdrawal at any time by the assigning rating organization. There can be no assurance that a rating will not be lowered or withdrawn by Moody's or Standard & Poor's if circumstances warrant. See "Rating of the Security-Linked Notes" herein.

The Offering . . . . . . . . . . . . . . . .   The Security-Linked Notes are being offered for sale hereunder in the United States to persons who are (A) "accredited investors" as defined in Rule 501(a) of Regulation D under the Securities Act (each, an "Accredited Investor"), (B) qualified institutional buyers (as defined in Rule 144A under the Securities Act) (each, a

"Qualified Institutional Buyer") in reliance on the exemption from registration provided by Rule 144A under the Securities Act, or (C) not "U.S. persons" as defined in Regulation S under the Securities Act (each, a "Non-U.S. Person") in reliance on the exemption from registration provided by Rule 903 or 904 of Regulation S under the Securities Act.

Form, Denomination, Registration and Transfer of the Security-Linked Notes . . . . . . . . . . . . . . . . . . . . . .

The Security-Linked Notes will be represented by one or more definitive notes registered in the name of the beneficial holder thereof. The Security-Linked Notes are subject to substantial restrictions on transfer as described herein under "Purchase and Transfer Restrictions." The Security-Linked Notes are issued in minimum denominations of $250,000 and integral multiples of $1,000 in excess thereof.

Purchases and transfers of Security-Linked Notes or interests therein are subject to the restrictions described herein under "Purchase and Transfer Restrictions," including that no sale, pledge, transfer or exchange may be made of such Security-Linked Notes except to a purchaser or transferee that is an Accredited Investor, a Qualified Institutional Buyer or a Non-U.S. Person.

Transfers of Security-Linked Notes are also subject to certain important ERISA-related restrictions. See "ERISA Considerations" and "Purchase and Transfer Restrictions." Purchases of the Security-Linked Notes are also subject to certain suitability standards. See "Subscription and Sale—Investor Suitability Standards."

Transfers of the Security-Linked Notes are subject to certain additional restrictions. **In particular, to enforce the restrictions on transfers of Security-Linked Notes, the Security-Linked Notes Indenture entitles LBHI to force the sale of any Security-Linked Notes held by any person (1) who is determined not to have been an Accredited Investor, a Qualified Institutional Buyer or a Non-U.S. Person at the time of acquisition of any such Security-Linked Notes or (2) who is determined to have violated certain ERISA-related restrictions.** See "Description of the Security-Linked Notes—Form, Registration and Transfer of the Security-Linked Notes" and "Purchase and Transfer Restrictions."

Governing Law . . . . . . . . . . . . . .

The Security-Linked Notes, the Security-Linked Notes Indenture, the CLO Fund Indenture, the Preference Share Paying Agency Agreement and the Collateral Management Agreement will be governed by, and construed in accordance with, the laws of the State of New York. LBHI is subject to the exclusive jurisdiction of any New York state or federal court sitting in the Borough of

|  | Manhattan in The City and County of New York over any suit, action or other proceeding arising out of or relating to the Security-Linked Notes or the Security-Linked Notes Indenture. The Preference Shares and the CLO Fund Charter will be governed by, and construed in accordance with, the laws of the Cayman Islands. |
|---|---|
| Tax Matters . . . . . . . . . . . . . . . . | **Payments in respect of the Security-Linked Notes to non-U.S. investors may be subject to 30% U.S. federal income withholding tax. See "U.S. Federal Income Tax Considerations" herein.** Certain other important tax considerations apply to an investment in the Security-Linked Notes. See "U.S. Federal Income Tax Considerations." |
| ERISA Matters . . . . . . . . . . . . . . | Each initial purchaser of Security-Linked Notes will be required to make certain ERISA-related representations, warranties and agreements in the related Subscription Agreement (and any transferee of Security-Linked Notes will be required to make such representations, warranties and agreements in a transfer certificate required to be delivered to the Security-Linked Notes Trustee). See "ERISA Considerations" herein for a more detailed discussion of certain ERISA-related considerations with respect to an investment in the Security-Linked Notes. |
| Reporting . . . . . . . . . . . . . . . . . . | LBHI will be required to deliver certain information to the Security-Linked Notes Trustee sufficient to prepare, and the Security-Linked Notes Trustee will be required to prepare based on such information, and deliver to the holders of record of the Security-Linked Notes within 30 days following each Payment Date, a report containing certain payment information with respect to the Security-Linked Notes and the Referenced Preference Shares. Furthermore, LBHI will make available to holders of the Security-Linked Notes such additional information relating to the Security-Linked Notes and the Preference Shares as such holders may from time to time reasonably request. |
| CUSIP and ISIN . . . . . . . . . . . . . | The CUSIP and ISIN numbers assigned to the Security-Linked Notes are indicated below. |

CUSIP        524908 LZ 1

ISIN         US524908LZ16

## RISK FACTORS

*An investment in the Security-Linked Notes involves certain risks. Prospective investors in the Security-Linked Notes should carefully consider the following factors, in addition to the matters set forth elsewhere in this Offering Memorandum, prior to investing in the Security-Linked Notes. In addition, because the amount of interest paid by LBHI on the Security-Linked Notes on each Payment Date depends entirely on the amount distributed by the CLO Fund on the Referenced Preference Shares, prospective investors in the Security-Linked Notes should carefully consider the risk factors set forth under "Risk Factors" in the CLO Offering Memorandum attached hereto as Appendix C.*

### Risks Relating to the Security-Linked Notes

*Amount of Interest Paid on the Security-Linked Notes Subject to Substantial Variability Due to Leveraged Nature of Referenced Preference Shares.* The amount of interest paid on the Security-Linked Notes will depend entirely on the amounts distributed by the CLO Fund to the holders of the Referenced Preference Shares. The Referenced Preference Shares represent a leveraged investment in the CLO Fund whose primary assets will consist of the CLO Collateral. The Referenced Preference Shares will be entitled to receive on each CLO Fund Payment Date only the interest collections on the CLO Collateral that are remaining after the CLO Fund has paid in full accrued interest on each class of CLO Fund Notes and all of its other expenses and fees, including any amounts used to cover losses on the CLO Collateral and reinvested in new CLO Collateral or used to fund certain reserve accounts, as described in more detail under "Description of the Securities—Priority of Payments" in the CLO Offering Memorandum. Furthermore, on any CLO Fund Payment Date, interest collections that would otherwise have been distributed to the Referenced Preference Shares may be diverted to pay down the principal of the CLO Fund Notes if certain interest coverage and overcollateralization tests are not satisfied or other conditions exist. Similarly, principal collections on the CLO Collateral will first be applied on each CLO Fund Payment Date to repay the outstanding principal balance of each class of CLO Notes in full before any such principal collections are distributed as dividends on, or a final distribution in redemption of, the Referenced Preference Shares. The CLO Collateral is subject to credit, liquidity and interest rate risk and there is no guarantee that interest collections on such CLO Collateral will be sufficient during each due period to make any expected or projected level of distributions on the Referenced Preference Shares. As a result of the foregoing factors, distributions on the Referenced Preference Shares and, consequently, the amount of interest paid on the Security-Linked Notes from Payment Date to Payment Date, as well as the aggregate amount of interest paid on the Security-Linked Notes over the course of the period during which they are outstanding, is subject to substantial variability. See "Risk Factors—Additional Risk Factors for Preference Shares—Subordination of the Preference Shares," "— Leveraged Nature of the Preference Shares" and "Description of the Securities—Priority of Payments" in the CLO Offering Memorandum.

*Limited Liquidity.* There is currently no market for the Security-Linked Notes. Although the Manager, LBHI or one or more of their affiliates may from time to time make a market in the Security-Linked Notes, none of the Manager, LBHI nor any of their affiliates are under any obligation to do so. Any market-making that is commenced may be discontinued at any time. There can be no assurances that a secondary market for any of the Security-Linked Notes will develop, or if a secondary market does develop, that it will provide the holders of the Security-Linked Notes with liquidity of investment or that it will continue for the life of the Security-Linked Notes. In addition, the Security-Linked Notes are subject to certain transfer restrictions and can only be transferred to certain transferees, as described herein under "Purchase and Transfer Restrictions." Such restrictions on the transfer of the Security-Linked Notes may further limit their liquidity. Consequently, an investor in the Security-Linked Notes must be prepared to hold

such Security-Linked Notes until their Stated Maturity. See "Subscription and Sale—Investor Suitability Standards" herein.

*Security-Linked Notes Not Secured by Referenced Preference Shares or CLO Collateral.* The Security-Linked Notes are senior unsecured debt obligations of LBHI and will rank *pari passu* among themselves and with all other present and future senior unsecured obligations of LBHI. The Security-Linked Notes will not be secured by any assets of LBHI or any of its affiliates, including (to the extent held thereby) the Referenced Preference Shares or any of the CLO Collateral the collections on which will be used by the CLO Fund to make distributions to the Referenced Preference Shares. LBHI will not be required to acquire or hold the Referenced Preference Shares at any time, and holders of the Security-Linked Notes will have no right to receive the Referenced Preference Shares in exchange for their Security-Linked Notes or otherwise under any circumstances. In the event of the insolvency of LBHI, holders of the Security-Linked Notes will be treated as general creditors of LBHI and will not have any claim of title with respect to the Referenced Preference Shares. Therefore, holders of the Security-Linked Notes must rely on the credit of LBHI for the payment of interest and principal on the Security-Linked Notes.

*Purchase and Transfer Restrictions.* The Security-Linked Notes have not been registered under the Securities Act, under any U.S. state securities or "Blue Sky" laws or under the securities laws of any other jurisdiction and are being issued and sold in reliance upon exemptions from registration provided by such laws. No Security-Linked Notes may be sold or transferred unless such sale or transfer is exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act"), pursuant to the exemption provided by Section 4(2) of the Securities Act, Rule 144A under the Securities Act or Regulation S under the Securities Act, and applicable state securities laws.

### Risks Relating to the CLO Fund and the Preference Shares

*Holders of Security-Linked Notes Will Have No Right to Enforce the Obligations of the CLO Fund or to Direct the Actions of the CLO Fund.* Holders of the Security-Linked Notes will have contractual rights against LBHI only, and not against the CLO Fund. Accordingly, holders of the Security-Linked Notes will have no right to enforce directly compliance by the CLO Fund with the terms of the CLO Fund Indenture or the Preference Share Documents. LBHI or one or more of its affiliates may, but are not obligated to, hold the Referenced Preference Shares; however, LBHI or its affiliate, as applicable, may transfer all or a portion of such shares at any time. The Referenced Preference Shares, whether or not held by LBHI or any of its affiliates, will not be actively managed or monitored by LBHI, except to the extent necessary for LBHI to provide the information required to be provided to the Security-Linked Notes Trustee, as described herein.

The holders of the Preference Shares (whether by supermajority or majority vote or lesser specified percentage) will be entitled to direct, grant consents and take certain other actions pursuant to the terms of the CLO Fund Indenture and the Preference Share Documents, including directing an optional redemption of the CLO Notes and the Preference Shares and the termination and replacement of the Collateral Manager. See "Description of the Securities—Optional Redemption," "—The Indenture" and "The Collateral Management Agreement—Removal, Resignation and Replacement of the Collateral Manager" in the CLO Offering Memorandum. Since the Referenced Preference Shares will be held either by LBHI (or an affiliate thereof) or an unrelated third party which may acquire such shares from LBHI, the holders of the Security-Linked Notes will not be able to exercise any of the rights of the holders of Security-Linked Notes and will have no right to direct LBHI in exercising such rights. The exercise of such rights by LBHI or any subsequent transferee of the Referenced Preference Shares may be adverse to the interests of the holders of the Security-Linked Notes.

*Distributions on Preference Shares Subject to Cayman Islands Law.* Amounts otherwise distributable to the holders of the Preference Shares in accordance with the priority of payments set forth in the CLO Fund Indenture may instead be held in an account created for such purpose in the Cayman Islands to the extent that there are insufficient distributable profits or share premium, as determined in accordance with the requirements of Cayman Islands law. Amounts distributable on the Preference Shares will held in such account until such amounts may be distributed to the holders of the Preference Shares under the laws of the Cayman Islands. See "Risk Factors—Additional Risk Factors for Preference Shares—Distributions on Preference Shares Subject to Cayman Islands Law" in the CLO Offering Memorandum. Any distributions made by the CLO Fund on the Referenced Preference Shares which are not permitted to be distributed to the holders of the Referenced Preference Shares under Cayman Islands law will not result in any interest or principal payment on the Security-Linked Notes until such time as such the holders of the Referenced Preference Shares actually receive such distributions.

*Optional Redemption of the Preference Shares.* An optional redemption of the Preference Shares may occur under the circumstance set forth in the CLO Offering Memorandum under "Description of the Securities—Optional Redemption." Following a redemption of the Referenced Preference Shares, the Security-Linked Notes will remain outstanding, but will not be entitled to receive any further payments of interest or principal, other than the Final Principal Repayment Amount. An early optional redemption of the Referenced Preference Shares may adversely affect the yield on the Security-Linked Notes.

*Conflicts of Interest Involving the Manager.* It is expected that the Manager, which is an affiliate of LBHI, will have placed or underwritten certain of the CLO Collateral at original issuance, will own equity or other securities of issuers of or obligors on the CLO Collateral and will have provided investment banking services, advisory, commercial banking and other services to issuers of the CLO Collateral. In addition, the Manager will act as the underwriter or placement agent with respect to each class of the CLO Fund Securities. These and other related activities of the Manager may result in conflicts of interest. See "Risk Factors—Certain Conflicts of Interest—Conflicts of Interest Involving the Managers" in the CLO Offering Memorandum.

## ERISA and Tax

*ERISA Considerations.* The initial purchasers and any transferees of the Security-Linked Notes will be required to make certain ERISA-related representations and warranties described herein under "ERISA Considerations" and "Purchase and Transfer Restrictions." See "ERISA Considerations" herein for a more detailed discussion of certain ERISA-related considerations with respect to an investment in the Security-Linked Notes.

*Uncertain Tax Characterization.* Some of the possible tax characterizations of the Security-Linked Notes are discussed herein under "U.S. Federal Income Tax Considerations." However, as discussed herein, the Internal Revenue Service is not bound by the parties' characterization of the Security-Linked Notes and could assert that they should be recharacterized in some manner. Any such recharacterization may have an adverse effect on the holders of the Security-Linked Notes. Potential purchasers of the Security-Linked Notes should contact their tax advisors.

*No Tax Gross-Up.* If any withholding tax is imposed on payments on the Referenced Preference Shares or the Security-Linked Notes, holders of the Security-Linked Notes will not (and holders of the Referenced Preference Shares will not) be entitled to receive grossed-up amounts to compensate for such withholding.

10

## USE OF PROCEEDS

LBHI will use the net proceeds from the sale of the Security-Linked Notes for working capital and general corporate purposes. LBHI has substantial indebtedness outstanding and expects to incur additional indebtedness in the future to fund its businesses.

## DESCRIPTION OF THE SECURITY-LINKED NOTES

### General

The Security-Linked Notes will be issued pursuant to an indenture dated on or around the Closing Date (the "Security-Linked Notes Indenture") between LBHI and JPMorgan Chase Bank, a New York banking corporation, as trustee with respect to the Security-Linked Notes (the "Security-Linked Notes Trustee"). The following summary and certain other sections of this Offering Memorandum describe certain provisions of the Security-Linked Notes, the Security-Linked Notes Indenture, the Preference Shares, the Preference Share Documents and the CLO Fund Indenture.

This summary does not purport to be complete and is subject to, and qualified in its entirety by reference to, the provisions of the Security-Linked Notes, the Security-Linked Notes Indenture, the Preference Shares, the Preference Share Documents and the CLO Fund Indenture. A more detailed description of the CLO Fund, the CLO Collateral and the CLO Fund Securities is set forth in the CLO Offering Memorandum attached hereto as Appendix C. Copies of the foregoing documents may be obtained by prospective purchasers upon request in writing to the Security-Linked Notes Trustee at its Corporate Trust Office, currently located at 600 Travis Street, Houston, Texas 77002. The CLO Collateral will be managed for the CLO Fund by American Money Management Corporation (such entity and any successor thereto, the "Collateral Manager"). Prospective purchasers are encouraged to obtain and read such documents and also urged to contact LBHI or the Manager for additional information and to obtain answers to any questions such prospective purchasers may have regarding the offering and other relevant transactions. See "Subscription and Sale."

### Interest on the Security-Linked Notes

Payments of interest on the Security-Linked Notes, if any amounts are due on any Payment Date, will be made quarterly, on the 26th day of each January, April, July and October (or, if such day is not a Business Day, on the next succeeding Business Day) commencing in January 2005 and ending in July 2016 (each, a "Payment Date"). "Business Day" means any day on which commercial banks and foreign exchange markets settle payments in each of New York City, New York, Houston, Texas, the Cayman Islands and any other city in which the designated corporate trust office of the Security-Linked Notes Trustee may from time to time be located or, in the case of the final payment of principal of any Note, the place of presentation of such Note. On each Payment Date occurring prior to the Initial Principal Repayment Date, no interest will be payable on the Security-Linked Notes. On each Payment Date after the Initial Principal Repayment Date, any distribution made on the Referenced Preference Shares on the immediately preceding CLO Fund Payment Date will result in an interest payment on the Security-Linked Notes in an amount equal to the amount of such distribution on the Referenced Preference Shares. Until the Payment Date (the "Initial Principal Repayment Date") as of which the holders of the Security-Linked Notes have received distributions on all preceding Payment Dates that in the aggregate equal $2,830,400 (the "Target Initial Principal Repayment Amount"), all distributions made on the Referenced Preference Shares will result in payments on the Security-Linked Notes which will be applied to reduce the outstanding principal amount thereof. If

11

no distributions are made on any CLO Fund Payment Date to the holders of the Referenced Preference Shares, no interest will be due or payable on the Security-Linked Notes on the related Payment Date.

As a result of the subordinated and leveraged nature of the Referenced Preference Shares, such shares are subject to substantial variability in cashflows, both with respect to each CLO Fund Payment Date and over the course of their term. Other than the Final Principal Repayment Amount, all payments made on the Security-Linked Notes are wholly dependent on the amount of distributions made on the Referenced Preference Shares and, accordingly, the Security-Linked Notes will be subject to the same yield considerations, cashflow variability and other risks related to the Referenced Preference Shares. See "Risk Factors—Risks Relating to the Security-Linked Notes—Amount of Interest Paid on the Security-Linked Notes Subject to Substantial Variability Due to Leveraged Nature of Referenced Preference Shares."

**Principal on the Security-Linked Notes**

On each Payment Date occurring prior to the Initial Principal Repayment Date, any distribution made on the Referenced Preference Shares on the immediately preceding CLO Fund Payment Date will result in an equal payment on the Security-Linked Notes which will be applied to reduce the outstanding principal amount thereof. On and after the Initial Principal Repayment Date, all further distributions on the Referenced Preference Shares will result in distributions of interest on the Security-Linked Notes in an amount equal to the amount of such distribution on the Referenced Preference Shares. Following the receipt of the Target Initial Principal Repayment Amount, no further principal will be paid on the Security-Linked Notes until the Stated Maturity thereof, except in connection with an acceleration of the Security-Linked Notes.

The Security-Linked Notes will mature on the Payment Date occurring in July 2016 (the "Stated Maturity" of the Security-Linked Notes). Unless repaid earlier in whole in connection with an acceleration of the Security-Linked Notes following a Security-Linked Notes Event of Default, the Security-Linked Notes will be entitled to receive at their Stated Maturity the "Final Principal Repayment Amount" equal to the original aggregate outstanding principal amount of the Security-Linked Notes, minus the lesser of (1) the Target Initial Principal Repayment Amount and (2) the aggregate amount paid on the Security-Linked Notes from the Closing Date through their Stated Maturity, reflecting the aggregate distributions on the Referenced Preference Shares from the CLO Closing Date to the date as of which the Referenced Preference Shares received their final distribution in redemption thereof.

**Payments to Holders of Record**

Payments in respect of principal and interest on each Security-Linked Note will be made on each Payment Date to the person in whose name such Security-Linked Note is registered fifteen days (whether or not a Business Day) prior to such Payment Date (the "Record Date"). Any payment of interest on or principal of the Security-Linked Notes will be made by the Security-Linked Notes Trustee on a *pro rata* basis among the holders of the Security-Linked Notes according to the respective principal amounts of the Security-Linked Notes registered to each such holder immediately prior to such payment. Payments on the Security-Linked Notes will be made by wire transfer in immediately available funds to a U.S. Dollar account maintained by the registered holder of any Security-Linked Note (a "Noteholder") or its nominee or, if wire transfer cannot be effected, by a U.S. Dollar check delivered to the Noteholder or its nominee at its address as set forth in the note register by mail. Final payments in respect of the principal of the Security-Linked Notes will be made only against surrender of such Security-Linked Notes at the office of any paying agent appointed under the Security-Linked Notes Indenture.

If any payment on a Security-Linked Note is due on a day that is not a Business Day, then payment will be made on the next succeeding Business Day with the same force and effect as if made on the date for payment. If any additional distribution on the Referenced Preference Shares is attributable to the period between a scheduled Payment Date and the next succeeding Business Date, such distribution will not result in any payments made on the Security-Linked Notes until the following Payment Date.

**Security-Linked Notes Events of Default**

A "Security-Linked Notes Event of Default" is defined in the Security-Linked Notes Indenture to include the events listed below:

1. *Failure to Pay Interest or Prepayment of Principal.* A default for three Business Days in the payment, when due and payable, of any (i) interest or (ii) prepayment of principal on or prior to the Initial Principal Repayment Date, in each case required to be made on any Security-Linked Note;

2. *Failure to Pay Principal.* A default in the payment of the Final Principal Repayment Amount with respect to the Security-Linked Notes at their Stated Maturity;

3. *Breach of Representation, Warranty or Covenant.*

   a. a default in the performance, or breach, of any other covenant or warranty of LBHI under the Security-Linked Notes Indenture; or

   b. any representation or warranty of LBHI made in the Security-Linked Notes Indenture or in any certificate or writing delivered pursuant thereto proving to be incorrect in any material respect when made;

   which default or breach continues for a period of 30 days after LBHI discovers such default or breach or receives notice thereof;

4. *Insolvency of LBHI.* Certain events of bankruptcy, insolvency, receivership or reorganization of LBHI; and

5. *Cross-Default.* Certain events of default with respect to the other senior unsecured indebtedness of LBHI.

*Acceleration following Security-Linked Notes Event of Default.* If a Security-Linked Notes Event of Default should occur and be continuing, the Security-Linked Notes Trustee or the holders of a majority, in principal amount, of the Security-Linked Notes may declare the principal of and accrued and unpaid interest on all of the Security-Linked Notes to be immediately due and payable (except that in the case of an event described under "Insolvency of LBHI" in clause 4 above, such an acceleration will occur automatically).

*Waiver of Default.* Prior to the acceleration of the Security-Linked Notes, the holders of a majority, in principal amount, of the Security-Linked Notes may on behalf of the holders of all of the Security-Linked Notes waive any past default or Security-Linked Notes Event of Default under the Security-Linked Notes Indenture and its consequences, except a default (a) in the payment of principal or interest on any of the Security-Linked Notes or (b) in respect of a covenant or provision of the Secu-

13

rity-Linked Notes Indenture that cannot be modified or amended without the consent of the holder of each Security-Linked Note affected.

*Recision of Acceleration.* Any declaration of acceleration may under certain circumstances be rescinded by the holders of at least a majority, in principal amount, of the Security-Linked Notes.

*Security-Linked Notes Trustee Entitled to Seek Indemnity.* Subject to the provisions of the Security-Linked Notes Indenture relating to the duties of the Security-Linked Notes Trustee, in the event that a Security-Linked Notes Event of Default occurs and is continuing, the Security-Linked Notes Trustee may require the holders of the Security-Linked Notes to provide it with a reasonable indemnity against liability before it agrees to exercise at the direction of any holders of Security-Linked Notes any of the rights and powers under the Security-Linked Notes Indenture following any such Security-Linked Notes Event of Default.

*Limitation on Security-Linked Noteholders' Rights to Institute Proceedings.* No holder of any Security-Linked Note will have the right to institute any proceeding with respect to the Security-Linked Notes Indenture unless:

1.    such holder previously has given to the Security-Linked Notes Trustee written notice of a Security-Linked Notes Event of Default;

2.    except in the case of a default in the payment of principal or interest, the holders of at least 25%, in principal amount, of the Security-Linked Notes have made a written request upon the Security-Linked Notes Trustee to institute such proceedings in its own name as Security-Linked Notes Trustee, and such holders have offered the Security-Linked Notes Trustee satisfactory indemnity;

3.    the Security-Linked Notes Trustee has for 30 days failed to institute any such proceeding; and

4.    no direction inconsistent with such written request has been given to the Security-Linked Notes Trustee during such 30-day period by the holders of a majority, in principal amount, of the Security-Linked Notes.

In determining whether the holders of the requisite percentage of Security-Linked Notes have given any direction, notice or consent, Security-Linked Notes owned by LBHI or any of its affiliates will be disregarded and deemed not to be outstanding.

**Form, Registration and Transfer of the Security-Linked Notes**

The Security-Linked Notes will be represented by one or more definitive notes registered in the name of the beneficial holder thereof. The Security-Linked Notes may be sold only to persons who are (A) "accredited investors" as defined in Rule 501(a) of Regulation D under the Securities Act (each, an "Accredited Investor") acquiring such Security-Linked Notes for their own account or for the account of an Accredited Investor in reliance upon the exemption from the registration requirements of the Securities Act provided by Section 4(2) thereof or upon another exemption from registration under the Securities Act, (B) qualified institutional buyers (as defined in Rule 144A under the Securities Act) (each, a "Qualified Institutional Buyer") acquiring such Security-Linked Notes in reliance on the exemption from registration provided by Rule 144A under the Securities Act, or (C) not "U.S. persons" as defined in Regulation S under the Securities Act (each, a "Non-U.S. Person") acquiring the Secu-

14

rity-Linked Notes in an offshore transaction in reliance on the exemption from the registration provided by Rule 903 or 904 of Regulation S under the Securities Act, and any transfer of Security-Linked Notes must otherwise comply with all applicable federal and state securities laws.

Transfers of the Security-Linked Notes will be subject to certain additional restrictions set forth in the Security-Linked Notes Indenture and will bear the legend regarding transfer restrictions set forth herein under "Purchase and Transfer Restrictions." Transfers of the Security-Linked Notes may be made upon receipt by the Security-Linked Notes Trustee of a written certification from the transferor (in the form provided in the Security-Linked Notes Indenture) to the effect that the transfer is being made in accordance with all applicable transfer restrictions.

All transfers of Security-Linked Notes or interests therein must be recorded in the note register maintained by the Security-Linked Notes Trustee or the duly appointed transfer agent. No service charge will be made for any registration of transfer or exchange of Security-Linked Notes, but the Security-Linked Notes Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith and any other amounts required to be paid by the provisions of the Security-Linked Notes.

Transfers of the Security-Linked Notes will be required to be made in minimum denominations of $250,000 and integral multiples of $1,000 in excess thereof. Holders of the Security-Linked Notes may transfer their Security-Linked Notes or any part thereof by surrendering such Security-Linked Notes at the office of the paying agent and complying with the other requirements set forth in such Security-Linked Notes and the Security-Linked Notes Indenture.

**Governing Law**

The Security-Linked Notes, the Security-Linked Notes Indenture, the CLO Fund Indenture, the Preference Share Paying Agency Agreement and the Collateral Management Agreement will be governed by, and construed in accordance with, the laws of the State of New York. LBHI is subject to the exclusive jurisdiction of any New York state or federal court sitting in the Borough of Manhattan in The City and County of New York over any suit, action or other proceeding rising out of or relating to the Security-Linked Notes or the Security-Linked Notes Indenture. The Preference Shares and the CLO Fund Charter will be governed by, and construed in accordance with, the laws of the Cayman Islands.

## RATING OF THE SECURITY-LINKED NOTES

It is a condition to the issuance of the Security-Linked Notes that the Security-Linked Notes be assigned a rating of at least "A1" by Moody's and at least "A" by Standard & Poor's. The ratings of the Security-Linked Notes are applicable only as of the Closing Date and will not be monitored following the Closing Date. Such ratings are based solely on the credit rating of LBHI. A security rating should be evaluated independently of similar ratings of different types of securities.

The rating of the Security-Linked Notes by Moody's address only repayment of the outstanding principal amount thereof at the Stated Maturity. The rating of the Security-Linked Notes by Moody's is not a recommendation to buy, sell or hold the Security-Linked Notes and may be subject to revision or withdrawal at any time by Moody's. There can be no assurance that such rating will not be lowered or withdrawn by Moody's if circumstances warrant.

The rating of the Security-Linked Notes by Standard & Poor's is not a "market" rating and is not a recommendation to buy, hold or sell the Security-Linked Notes. Standard & Poor's is not acting as an investment, financial or other advisor to the holders of the Notes in connection with such rating, and the holders of the Notes should not and cannot rely upon such rating or any other information provided by Standard & Poor's as investment, financial or other advice. The rating of the Security-Linked Notes by Standard & Poor's should not be construed as creating a fiduciary relationship between Standard & Poor's and the holders of the Notes. Standard & Poor's has not consented to and will not consent to being named an "expert" under the applicable securities laws, including, without limitation, Section 7 of the Securities Act in connection with the rating of the Security-Linked Notes by Standard & Poor's. The rating of the Security-Linked Notes by Standard & Poor's is subject to reduction or withdrawal at any time by Standard & Poor's if circumstances warrant.

## THE REFERENCED PREFERENCE SHARES

### General

On July 20, 2004 (the "CLO Closing Date"), AMMC CLO III, Limited, a newly-formed Cayman Islands exempted company incorporated with limited liability (the "CLO Fund") will issue, together with AMMC CLO III, Corp., a newly-organized Delaware corporation (the "CLO Co-Issuer"), the Class A Floating Rate Notes due 2016 (the "Class A Notes"), the Class B Floating Rate Deferrable Revolving Notes due 2016 (the "Class B Notes"), the Class C Floating Rate Notes due 2016 (the "Class C Notes") and the Class D Floating Rate Deferrable Notes due 2016 (the "Class D Notes"). The Class A Notes, the Class B Notes, the Class C Notes and the Class D Notes are collectively referred to as the "CLO Fund Notes." The CLO Fund Notes are being issued pursuant to an indenture dated as of the CLO Closing Date (the "CLO Fund Indenture") among the CLO Fund, the CLO Co-Issuer and JPMorgan Chase Bank, as trustee (the "CLO Fund Trustee").

On the CLO Closing Date, the CLO Fund will also issue preference shares with a par value of $0.01 per share and a liquidation preference amount of $1,000 per share (the "Preference Shares" and, together with the CLO Fund Notes, the "CLO Fund Securities"). The Preference Shares are being issued by the CLO Fund pursuant to the "Preference Share Documents" consisting of (i) its Amended and Restated Memorandum and Articles of Association (the "CLO Fund Charter"), (ii) certain resolutions of its Board of Directors and (iii) the "Preference Share Paying Agency Agreement," dated as of the CLO Closing Date, by and among the CLO Fund, JPMorgan Chase Bank, as the Preference Share Paying Agent, and Maples Finance Limited, as the Share Registrar (as defined therein). The "Referenced Preference Shares" will consist of 8,500 of the Preference Shares.

None of the CLO Fund Securities are offered hereby.

### Distributions on the Referenced Preference Shares

Distributions on the Preference Shares will not be made at a stated rate, and the actual rate at which distributions are made on the Preference Shares may vary substantially from CLO Fund Payment Date to CLO Fund Payment Date. Distributions will be made to holders of the outstanding Preference Shares quarterly on the 25th day of each January, April, July and October (or, if any such day is not a Business Day, on the next succeeding Business Day, with "Business Day" for purposes of this definition, having the meaning set forth in the CLO Fund Indenture) (each, a "CLO Fund Payment Date"), commencing in January 2005 and ending in July 2016. The Preference Shares will be entitled to receive collections and proceeds of the CLO Collateral which are remaining on each CLO Fund Payment Date

16

after payment of all prior amounts, including any amounts used to cover losses on the CLO Collateral and reinvested in new CLO Collateral or used to fund certain reserve accounts, in accordance with the priority of payments set forth in the CLO Fund Indenture and as described in more detail under "Description of the Securities—Priority of Payments" in the CLO Offering Memorandum. Under the laws of the Cayman Islands, the Preference Shares constitute part of the share capital of the CLO Fund and, as such, the obligations of the CLO Fund with respect to the Preference Shares are not secured by the CLO Collateral and the Preference Shares rank *pari passu* with all of the other general unsecured creditors of the CLO Fund. The Preference Shares will not be rated.

The application of amounts available after the payment of the expenses of the CLO Fund in accordance with the priority of payments set forth in the CLO Fund Indenture to make distributions on the Preference Shares is subject to certain restrictions under the laws of the Cayman Islands. Those restrictions may result in amounts otherwise payable to the holders of the Preference Shares being held indefinitely in an account established for that purpose in the Cayman Islands. See "Risk Factors—Risks Relating to the CLO Fund and the Preference Shares—Distributions on Preference Shares Subject to Cayman Islands Law."

The CLO Fund will apply amounts received from the issuance and sale of the CLO Fund Notes and the Preference Shares to pay applicable fees and expenses and to acquire a diversified pool of securities that will consist primarily of senior secured bank loans and may include a limited amount of second-lien loans, senior unsecured loans, senior secured floating rate notes and synthetic securities, which will be pledged to secure the CLO Fund Notes (the "CLO Collateral"). The Preference Shares will not be secured by the CLO Collateral. The CLO Collateral is described in more detail in the CLO Offering Memorandum attached hereto as Appendix C.

**Optional Redemption of the CLO Fund Securities**

The CLO Fund Securities may be redeemed in whole but not in part by the CLO Fund, at the direction of the holders of at least a majority in number of the outstanding Preference Shares on any CLO Fund Payment Date occurring on or after the CLO Fund Payment Date occurring in July 2007 or earlier in the event of an imposition of withholding taxes on the CLO Collateral in excess of a specified maximum. In addition, on any CLO Fund Payment Date following the termination of the Reinvestment Period (as defined in the CLO Offering Memorandum), the holders of at least 7,000 Preference Shares may elect to require the CLO Fund and the CLO Co-Issuer to redeem all or a portion of the Preference Shares held by such holders and the corresponding *pro rata* portion of the aggregate outstanding amount of each class of outstanding CLO Securities, in each case from the liquidation proceeds of a ratable portion of certain of the assets of the CLO Fund, as described in further detail in the CLO Offering Memorandum. In addition, the CLO Fund Notes are subject to mandatory amortization in part or in whole (i) upon the failure of certain coverage tests, (ii) upon a failure by the rating agencies rating the CLO Fund Notes to confirm such ratings within ten days after the Ramp-Up Effective Date (as defined in the CLO Offering Memorandum) and (iii) at the option of the Collateral Manager if the Collateral Manager has been unable to identify appropriate collateral in which to invest available funds, in each case as described in more detail in the CLO Offering Memorandum. If the CLO Fund Notes are redeemed or amortized in full, the CLO Fund will liquidate the CLO Collateral, and following the payment of the obligations of the CLO Fund in accordance with the priorities set forth in the CLO Fund Indenture, the CLO Fund will distribute the remaining proceeds, if any, to the holders of the Preference Shares in redemption thereof. Any such final distribution made on the Referenced Preference Shares in redemption thereof will result in an amount equal to such final distribution being paid to the holders of the Security-Linked Notes either as interest (if the Initial Principal Repayment Date has occurred prior thereto) or as principal (if LBHI has not yet distributed an amount equal to the Target Initial Principal

17

Repayment Amount on the Security-Linked Notes). Any such final distribution made on the Referenced Preference Shares in redemption thereof which results in a distribution to the holders of the Security-Linked Notes need not constitute a final payment of, or on, the Security-Linked Notes.

The application of CLO Collateral remaining after repayment of the CLO Fund Notes and payment of the expenses of the CLO Fund to make a final distribution on the Preference Shares in redemption thereof (either prior to or on the scheduled final redemption date of the Preference Shares, as set forth in the CLO Offering Memorandum) is subject to certain restrictions under the laws of the Cayman Islands. See "Risk Factors—Risks Relating to the CLO Fund and the Preference Shares—Distributions on Preference Shares Subject to Cayman Islands Law."

## LEHMAN BROTHERS HOLDINGS INC.

### General

Lehman Brothers Holdings Inc. ("LBHI") is a Delaware corporation, incorporated on December 29, 1983. LBHI and its subsidiaries are collectively referred to as "Lehman Brothers."

Lehman Brothers is one of the leading global investment banks, serving institutional, corporate, government and high-net-worth individual clients and customers. Lehman Brothers' worldwide headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in the United States, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers is engaged primarily in providing financial services.

Lehman Brothers' business includes capital raising for clients through securities underwriting and direct placements, corporate finance and strategic advisory services, private equity investments, securities sales and trading, research, and the trading of foreign exchange, derivative products and certain commodities. Lehman Brothers acts as a market-maker in all major equity and fixed income products in both the domestic and international markets. Lehman Brothers is a member of all principal securities and commodities exchanges in the United States, as well as the National Association of Securities Dealers, Inc. ("NASD"), and holds memberships or associate memberships on several principal international securities and commodities exchanges.

LBHI's principal executive office is at 745 Seventh Avenue, New York, New York 10019, and its telephone number is (212) 526-7000.

### Additional Information

LBHI files annual, quarterly and current reports, proxy statements and other information with the SEC. You may read and copy any document LBHI files at the SEC's public reference rooms in Washington, D.C., New York, New York and Chicago, Illinois. You can also request copies of the documents, upon payment of a duplicating fee, by writing the Public Reference Section of the SEC. Please call the SEC at 1-800-SEC-0330 for further information on the public reference rooms. These SEC filings are also available to the public from the SEC's web site at http://www.sec.gov.

You may request a copy of these filings, at no cost, by writing or telephoning LBHI at the following address:

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, NY 10019
Attention: Collateralized Debt Obligations Group
Tel: (212) 526-7000

## THE SECURITY-LINKED NOTES INDENTURE

**Covenants**

*Limitations on Liens*

The Security-Linked Notes Indenture provides that LBHI will not incur, issue, assume or guarantee any indebtedness for money borrowed if such indebtedness is secured by a pledge of, lien on, or security interest in any shares of common stock of any Designated Subsidiary, without providing that the Security-Linked Notes and, at LBHI's option, any other indebtedness ranking equally and ratably with such indebtedness, is secured equally and ratably with (or prior to) such other secured indebtedness for money borrowed so long as it is outstanding.

"Designated Subsidiary" means any subsidiary of LBHI, the consolidated net worth of which represents at least 5% of the consolidated net worth of LBHI.

*Limitations on Mergers and Sales of Assets*

The Security-Linked Notes Indenture provides that LBHI will not merge or consolidate or transfer or lease all or substantially all of its assets into, with or to another person, and another person may not transfer or lease all or substantially all of its assets to LBHI, unless (1) immediately following such consolidation, merger, sale or lease, no default under the Security-Linked Notes Indenture shall have occurred and be continuing and (2) LBHI is the surviving or continuing corporation, or the surviving or continuing corporation or corporation that acquires by sale, conveyance, transfer or lease expressly assumes by the execution of a supplemental indenture, the payment and performance of all obligations of LBHI under the Security-Linked Notes Indenture and the Security-Linked Notes.

Other than the restrictions described above, the Security-Linked Notes Indenture does not contain any covenants or provisions that would protect holders of the Security-Linked Notes in the event of a highly leveraged transaction.

*Exercise of Remedies Under Referenced Preference Shares; Net Payments on Security-Linked Notes*

The Security-Linked Notes Indenture provides, that, so long as LBHI or any affiliate thereof continues to hold the Referenced Preference Shares, it will use commercially reasonable efforts to exercise its rights and remedies thereunder in a manner consistent with its best interests as an owner of Preference Shares (considered without giving effect to the issuance of the Security-Linked Notes).

**Reporting to Holders of the Security-Linked Notes**

LBHI will be required to deliver certain information to the Security-Linked Notes Trustee sufficient to prepare, and the Security-Linked Notes Trustee will be required to prepare based on such

information, and deliver to the holders of record of the Security-Linked Notes within 30 days following each Payment Date, a report containing certain payment information with respect to the Security-Linked Notes and the Referenced Preference Shares. Furthermore, LBHI will make available to holders of the Security-Linked Notes such additional information relating to the Security-Linked Notes and the Referenced Preference Shares as such holders may from time to time reasonably request.

**Notices**

Notices to the holders of the Security-Linked Notes will be given by electronic transmission or by first-class mail, postage prepaid, as provided in the Security-Linked Notes Indenture, to the registered holders of such Security-Linked Notes at their addresses appearing in the note register.

**Modification of the Security-Linked Notes Indenture**

*Modification with Consent of Holders.* LBHI and the Security-Linked Notes Trustee may, with the consent of the holders of at least 66 2/3% in principal amount of the Security-Linked Notes, modify the Security-Linked Notes Indenture or the rights of the holders of the Security-Linked Notes.

*Modification Without Consent of Holders.* LBHI and the Security-Linked Notes Trustee may also enter into supplemental indentures, without obtaining the consent of the holders of the Security-Linked Notes, in order to, among other things:

(1) evidence the succession of any person as issuer of the Security-Linked Notes under the Security-Linked Notes Indenture and the assumption by any such successor of the covenants of LBHI in the Security-Linked Notes and the Security-Linked Notes Indenture;

(2) add to the covenants of LBHI or the Security-Linked Notes Trustee for the benefit of the holders of the Security-Linked Notes or to surrender any right or power conferred upon LBHI;

(3) convey, transfer, assign, mortgage or pledge any property to or with the Security-Linked Notes Trustee (provided that the Security-Linked Notes may not at any time be secured by any of the Referenced Preference Shares), or add to the conditions, limitations or restrictions on the authorized amount, terms and purposes of the issue, authentication and delivery of the Security-Linked Notes;

(4) evidence the acceptance and provide for the acceptance of appointment by a successor trustee and to add to or change any of the provisions of the Security-Linked Notes Indenture as will be necessary to facilitate the administration of the trusts under the Security-Linked Notes Indenture by more than one trustee;

(5) reduce the permitted minimum denomination of the Security-Linked Notes;

(6) take any action necessary or advisable to prevent the CLO Fund from being subject to withholding or other taxes, fees or assessments or to prevent the CLO Fund from being treated as engaged in a United States trade or business or otherwise being subjected to United States federal, state or local income tax on a net income tax basis or to otherwise avoid the imposition of adverse tax consequences on LBHI or the holders of the Security-Linked Notes;

20

(7)    conform the Security-Linked Notes Indenture more fully to this Offering Memo-randum; or

(8)    otherwise correct any inconsistency, cure any ambiguity or correct any typo-graphical error in the Security-Linked Notes Indenture.

Notwithstanding the foregoing, if and for so long as there shall be only one holder of record of Notes, LBHI and the Security-Linked Notes Trustee may not enter into any supplemental indenture pursuant to clauses (1) through (8) above except with the prior written consent of such holder.

*Limitation on Modifications.* However, no such modification may, without the consent of 100% of the holders of the Security-Linked Notes:

(1)    extend the Stated Maturity of the principal of, or any installment of principal of or interest on, any Security-Linked Note;

(2)    reduce the principal amount of the Security-Linked Notes;

(3)    reduce the rate or change the time of payment of interest on the Security-Linked Notes;

(4)    reduce the amount of the principal payable on acceleration of any Secu-rity-Linked Notes;

(5)    impair the right to sue for the payment of the Security-Linked Notes;

(6)    change the currency or currency unit in which the Security-Linked Notes are payable or the right of selection thereof;

(7)    reduce the percentage of the Security-Linked Notes referred to above whose holders need to consent to the modification or a waiver without the consent of such holders;

(8)    change any obligation of LBHI to maintain an office or agency; or

(9)    make any change in certain provisions of the Security-Linked Notes Indenture relating to waiver of default or modification of the Security-Linked Notes Indenture, except to increase any percentages or to provide that certain other provisions of the Security-Linked Notes Indenture cannot be modified or waived without the consent of the holders of each Security-Linked Note adversely affected thereby.

**The Security-Linked Notes Trustee**

LBHI has had and may continue to have banking relationships with the Security-Linked Notes Trustee in the ordinary course of business. The holders of a majority in aggregate principal amount of the Security-Linked Notes may at any time remove the Security-Linked Notes Trustee and appoint a successor trustee.

21

## U.S. FEDERAL INCOME TAX CONSIDERATIONS

**In General**

The following summary describes the principal U.S. federal income tax consequences of the purchase, ownership and disposition of the Security-Linked Notes, but does not purport to be a comprehensive description of all the tax considerations that may be relevant to a decision to purchase the Security-Linked Notes. In particular, special tax considerations may apply to certain types of taxpayers, including securities dealers, banks, tax-exempt investors and insurance companies, and subsequent purchasers of Security-Linked Notes. In addition, this summary does not describe any tax consequences arising under the laws of any state, locality or taxing jurisdiction other than the United States federal government and the Cayman Islands. In general, the summary assumes that a holder acquires a Security-Linked Note at original issuance and holds such Security-Linked Note as a capital asset and not as part of a hedge, straddle, or conversion transaction within the meaning of Section 1258 of the Internal Revenue Code of 1986, as amended (the "Code"), and that the interest of LBHI in the Referenced Preference Shares is not an appreciated financial position within the meaning of Section 1259 of the Code.

This summary is based on the U.S. federal income tax laws, regulations, rulings and decisions in effect or available on the date of this Offering Memorandum. All of the foregoing are subject to change, which change may apply retroactively and could affect the continued validity of this summary.

This summary is included herein for general information only and there can be no assurance that the U.S. federal income tax consequences of an investment in the Security-Linked Notes will be favorable or that such consequences will be as described herein. Prospective purchasers of the Security-Linked Notes should consult their tax advisors as to U.S. federal income tax consequences of the purchase, ownership and disposition of the Security-Linked Notes, including the possible application of state, local, foreign or other tax laws.

As used in this section, the term "U.S. holder" means an owner of a Security-Linked Note who is, for U.S. federal income tax purposes, (i) a citizen or resident of the United States, (ii) a corporation created or organized under the laws of the United States, of the states thereof or the District of Columbia, (iii) an estate (other than a foreign estate defined in Section 7701(a)(31)(A) of the Code), or (iv) a trust if a court within the U.S. is able to exercise primary supervision over its administration and one or more U.S. Persons have the authority to control all substantial decisions of such trust. As used in this section, a "U.S. Person" is any person described in clause (i), (ii), (iii) or (iv) of the preceding sentence.

**Characterization of the Security-Linked Notes**

Although the proper characterization of the Security-Linked Notes for U.S. federal income tax purposes is not free from doubt, LBHI believes that the Security-Linked Notes should be treated as "contingent payment debt instruments." LBHI will, and by acceptance of the Security-Linked Note a beneficial holder thereof agrees that it will, treat the Security-Linked Notes as debt of LBHI that is subject to the contingent payment debt instrument rules in the manner described below under "—Taxation of Contingent Debt."

**Alternative Characterizations**

The Internal Revenue Service (the "IRS") is not bound by the parties' characterization of the Security-Linked Notes, and no opinion will be rendered on such characterization. The IRS could assert

that the Security-Linked Notes should be recharacterized in some manner. One such characterization would be to treat the beneficial owner thereof as if it were the owner of (i) a zero coupon bond that accretes to the stated principal amount of the Security-Linked Notes and (ii) an ownership interest in the Referenced Preference Shares. In that event, or if the Security-Linked Notes were otherwise recharacterized, taxation of the holder would differ significantly from that described above. Any differing treatment could affect the amount, timing and character of income, gain or loss in respect of an investment in the Security-Linked Notes. **U.S. holders are urged to consult their tax advisors concerning the tax treatment of holding Security-Linked Notes.**

The remainder of this summary assumes that the Security-Linked Notes are characterized as contingent debt of LBHI.

**Taxation of Contingent Debt**

*Accrual of Interest*

Under Treasury regulations governing contingent payment debt instruments (the "Contingent Debt Regulations"), actual cash payments on the Security-Linked Notes, if any, will not be reported separately as taxable income, but will be taken into account under such regulations. As discussed more fully below, the Contingent Debt Regulations will require a U.S. holder to (i) use the accrual method of accounting with respect to the Security-Linked Notes regardless of its usual method of tax accounting; (ii) accrue and include in taxable income each year original issue discount at the comparable yield (as described below) which may be more or less than cash payments actually received by such U.S. holder (see the description below under "—Adjustments to Interest Accruals on the Security-Linked Notes"); and (iii) generally treat the character of any gain, and to some extent loss, as ordinary rather than capital on the sale or exchange of the Security-Linked Notes.

A U.S. holder of Security-Linked Notes will be required to accrue an amount of ordinary interest income as original issue discount for United States federal income tax purposes, for each accrual period prior to and including the maturity date of the Security-Linked Notes, that equals (i) the product of (x) the adjusted issue price (as defined below) of the Security-Linked Notes as of the beginning of the accrual period and (y) the comparable yield to maturity (as defined below) of the Security-Linked Notes, adjusted for the length of the accrual period, (ii) divided by the number of days in the accrual period, and (iii) multiplied by the number of days during the accrual period that such holder held its Security-Linked Notes.

The issue price of a Security-Linked Note will be the first price at which a substantial amount of the Security-Linked Notes is sold to the public, excluding sales to bond houses, brokers or similar persons or organizations acting in the capacity of underwriters, placement agents or wholesalers. The "adjusted issue price" of a Security-Linked Note will be its issue price increased by any original issue discount previously accrued, determined without regard to any adjustments to original issue discount accruals described below, and decreased by the projected amounts of any payments previously made with respect to the Security-Linked Notes.

Under the Contingent Debt Regulations, a U.S. holder of a Security-Linked Note will be required to include original issue discount in income each year, regardless of such holder's usual method of tax accounting, based on the comparable yield of the Security-Linked Notes. LBHI has determined the comparable yield of the Security-Linked Notes based on the rate, as of the initial issue date, at which it would issue a fixed rate nonconvertible debt instrument with no contingent payments but with terms and

conditions similar to the Security-Linked Notes. Accordingly, LBHI has determined that the "comparable yield" is an annual rate of 5.7%, compounded semi-annually.

LBHI is required to furnish to holders of the Security-Linked Notes the comparable yield and, solely for U.S. federal income tax purposes, a projected payment schedule that includes the actual interest payments, if any, on the Security-Linked Notes and estimates of the amount and timing of contingent interest payments and payment upon maturity on the Security-Linked Notes. Holders may obtain the projected payment schedule by submitting a written request for it to LBHI at the address set forth under the heading "Lehman Brothers Holdings Inc." or "Subscription and Sale" in this Offering Memorandum. By purchasing the Security-Linked Notes, each holder thereof agrees in the Security-Linked Notes Indenture to be bound by LBHI's determination of the comparable yield and projected payment schedule. For U.S. federal income tax purposes, each holder must use the comparable yield and the schedule of projected payments in determining its original issue discount accruals, and the adjustments thereto described below, in respect of the Security-Linked Notes.

**The comparable yield and the projected payment schedule are not provided for any purpose other than the determination of original issue discount and adjustments thereof in respect of the Security-Linked Notes for U.S. federal income tax purposes and do not constitute a projection or representation regarding the actual amount of the payments on a Security-Linked Note.**

### Adjustments to Interest Accruals on the Security-Linked Notes

If the actual contingent payments made on the Security-Linked Notes differ from the projected contingent payments, adjustments will be made for the difference. If, during any taxable year, a U.S. holder of Security-Linked Notes receives actual payments with respect to such notes for that taxable year that in the aggregate exceed the total amount of projected payments for the taxable year, such U.S. holder will incur a positive adjustment equal to the amount of such excess. Such positive adjustment will be treated as additional original issue discount in such taxable year. If a U.S. holder of Security-Linked Notes receives in a taxable year actual payments that in the aggregate are less than the amount of projected payments for the taxable year, such U.S. holder will incur a negative adjustment equal to the amount of such deficit. A negative adjustment will reduce the amount of original issue discount required to be accrued in the current year. Any negative adjustments that exceed the amount of original issue discount accrued in the current year will be treated as ordinary loss to the extent of a U.S. holder's total prior original issue discount inclusions with respect to the Security-Linked Notes, reduced to the extent such prior original issue discount was offset by prior negative adjustments. Any excess negative adjustments will be treated as a regular negative adjustment in the succeeding taxable year.

### Sale or Exchange of the Security-Linked Notes

Upon the sale or exchange of Security-Linked Notes, a U.S. holder will recognize gain or loss equal to the difference between its amount realized and its adjusted tax basis in such notes. Such gain on the Security-Linked Notes generally will be treated as interest income. Loss from the disposition of the Security-Linked Notes will be treated as ordinary loss to the extent of the U.S. holder's prior net original issue discount inclusions with respect to such notes. Any loss in excess of that amount will be treated as capital loss, which will be long-term if the Security-Linked Notes were held for more than one year. The deductibility of capital losses is subject to limitations.

Special rules apply in determining the tax basis of the Security-Linked Notes. The adjusted tax basis of a U.S. holder in its Security-Linked Notes is generally equal to the original purchase price of

24

such notes, increased by original issue discount (before taking into account any adjustments) previously accrued on such notes, and reduced by the amount of any noncontingent payment and the projected amount of any contingent payments previously scheduled to be made on such notes.

**Special Considerations for Non-U.S. Holders**

Generally, U.S. source interest income received by non-U.S. holders who are not engaged in a trade or business within the United States is subject to U.S. withholding tax at the rate of 30 percent, unless a tax treaty applies to reduce or eliminate such tax. The Code provides an exception for "portfolio interest," which is exempt from U.S. withholding tax. Payments on the Security-Linked Notes, however, will not likely be eligible for portfolio interest treatment. As a result, payments of interest and principal on the Security-Linked Notes to such non-U.S. investors who are not eligible for treaty benefits generally will be subject to a 30 percent U.S. federal income withholding tax.

Any gain realized by a non-U.S. holder on the sale, exchange or other taxable disposition of the Security-Linked Notes will generally be treated as interest income under the rules applicable to U.S. holders described above under "—Taxation of Contingent Debt," and would generally be taxable as described in the preceding paragraph.

**Backup Withholding and Information Reporting**

Information reporting to the IRS generally will be required with respect to certain payments made on or with respect to the Security-Linked Notes to holders other than corporations and other exempt recipients. A "backup" withholding tax will apply to those payments that are subject to information reporting if the holder fails to provide certain identifying information (such as such holder's taxpayer identification number) to the payor. Non-U.S. holders may be required to comply with applicable certification procedures to establish that they are not U.S. Persons in order to avoid the application of such information reporting requirements and backup withholding.

## ERISA CONSIDERATIONS

The U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), imposes certain requirements on "employee benefit plans" (as defined in Section 3(3) of ERISA) subject to ERISA and entities such as collective investment funds and separate accounts whose underlying assets include the assets of such plans (collectively, "ERISA Plans") and on those persons who are fiduciaries with respect to ERISA Plans. Investments by ERISA Plans are subject to ERISA's general fiduciary requirements, including the requirement of investment prudence and diversification and the requirement that an ERISA Plan's investments be made in accordance with the documents governing the Plan. The prudence of a particular investment must be determined by the responsible fiduciary of an ERISA Plan by taking into account the ERISA Plan's particular circumstances and all of the facts and circumstances of the investment including, but not limited to, the matters discussed above under "Risk Factors" and the fact that in the future there may be no market in which such fiduciary will be able to sell or otherwise dispose of the Security-Linked Notes. Prospective investors in the Security-Linked Notes should consider this section together with the section entitled "ERISA Considerations" in the CLO Offering Memorandum attached as Appendix C in determining whether to purchase the Security-Linked Notes.

Section 406 of ERISA and Section 4975 of the Code prohibit certain transactions involving the assets of an ERISA Plan (as well as those plans that are not subject to ERISA, but that are subject to Section 4975 of the Code, such as individual retirement accounts (together with ERISA Plans, "Plans"))

and certain persons (referred to as "parties in interest" or "disqualified persons") having certain relationships to such Plans, unless a statutory or administrative exemption is applicable to the transaction. A party in interest or disqualified person who engages in a prohibited transaction may be subject to excise taxes and other penalties and liabilities under ERISA and the Code.

LBHI, the Collateral Manager, the Manager, the CLO Fund, the CLO Fund Trustee and the Security-Linked Notes Trustee may be fiduciaries with respect to many Plans. Prohibited transactions within the meaning of Section 406 of ERISA or Section 4975 of the Code may arise if Security-Linked Notes are acquired or held by a Plan with respect to which LBHI, the Collateral Manager, the Manager, the CLO Fund, the CLO Fund Trustee, the Security-Linked Notes Trustee, any other service provider to LBHI with respect to the Security-Linked Notes or the CLO Fund, or any seller of securities or other CLO Collateral to the CLO Fund or any of their respective affiliates is a fiduciary. Accordingly, such fiduciaries may not use their authority as such to cause a Plan to invest in the Security-Linked Notes.

LBHI, the Collateral Manager, the Manager, the CLO Fund, the CLO Fund Trustee and the Security-Linked Notes Trustee may be parties in interest and disqualified persons with respect to many Plans. Prohibited transactions within the meaning of Section 406 of ERISA or Section 4975 of the Code may arise if Security-Linked Notes are acquired or held by a Plan with respect to which LBHI, the Collateral Manager, the Manager, the CLO Fund, the CLO Fund Trustee, the Security-Linked Notes Trustee, any other service provider to LBHI with respect to the Security-Linked Notes or the CLO Fund, or any seller of securities or other CLO Collateral to the CLO Fund or any of their respective affiliates is a party in interest or a disqualified person, unless a statutory or administrative exemption applies.

Certain exemptions from the prohibited transaction provisions of Section 406 of ERISA and Section 4975 of the Code that may be applicable, depending in part on the type of Plan fiduciary making the decision to acquire a Security-Linked Note and the circumstances under which such decision is made, include but may not be limited to Prohibited Transaction Class Exemption ("PTCE") 91-38 (relating to investments by bank collective investment funds), PTCE 84-14 (relating to transactions effected by a "qualified professional asset manager"), PTCE 95-60 (relating to transactions involving insurance company general accounts), PTCE 90-1 (relating to investments by insurance company pooled separate accounts) and PTCE 96-23 (relating to transactions determined by in-house asset managers). There can be no assurance that any of these class exemptions or any other exemption will be available with respect to any particular transaction involving the Security-Linked Notes.

EACH INITIAL INVESTOR IN A SECURITY-LINKED NOTE WILL BE REQUIRED TO REPRESENT AND WARRANT IN A SUBSCRIPTION AGREEMENT AND EACH SUBSEQUENT TRANSFEREE OF SECURITY-LINKED NOTES WILL BE REQUIRED TO REPRESENT AND WARRANT IN A TRANSFER CERTIFICATE THAT ON EACH DAY FROM THE DATE ON WHICH THE PURCHASER ACQUIRES SUCH INTEREST THROUGH THE DATE ON WHICH THE PURCHASER DISPOSES OF SUCH INTEREST, EITHER THAT (A) IT IS NOT AND IS NOT ACTING ON BEHALF OF A PLAN OR (B) ITS PURCHASE AND HOLDING OF AN INTEREST IN THIS NOTE WILL NOT RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE (OR, IN THE CASE OF A FOREIGN PLAN, GOVERNMENTAL PLAN, CHURCH PLAN, OR ANY OTHER PLAN, ANY SUBSTANTIALLY SIMILAR FEDERAL, STATE OR LOCAL LAW). A "PLAN" IS ANY OF (I) AN EMPLOYEE BENEFIT PLAN (AS DEFINED IN SECTION 3(3) OF ERISA) THAT IS SUBJECT TO TITLE I OF ERISA, (II) ANY PLAN DESCRIBED IN SECTION 4975(e)(1) OF THE CODE (INCLUDING INDIVIDUAL RETIREMENT ACCOUNTS OR KEOGH PLANS) THAT IS SUBJECT TO SECTION 4975 OF THE CODE, (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE PLAN ASSETS BY REASON OF A PLAN'S INVESTMENT IN SUCH ENTITY, OR (IV) A FOREIGN

PLAN, GOVERNMENTAL PLAN, CHURCH PLAN, OR ANY OTHER PLAN THAT IS SUBJECT TO ANY FEDERAL, STATE OR LOCAL LAW THAT IS SIMILAR TO THE PROHIBITED TRANSACTION PROVISIONS OF SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE.

In addition, the U.S. Department of Labor has promulgated a regulation, 29 C.F.R. Section 2510.3-101 (the "Plan Asset Regulation"), describing what constitutes the assets of a Plan with respect to the Plan's investment in an entity for purposes of certain provisions of ERISA, including the fiduciary responsibility provisions of Title I of ERISA, and Section 4975 of the Code. Under the Plan Asset Regulation, if a Plan invests in an "equity interest" of an entity that is neither a "publicly-offered security" nor a security issued by an investment company registered under the Investment Company Act, the Plan's assets include both the equity interest and an undivided interest in each of the entity's underlying assets, unless it is established that the entity is an "operating company" or that equity participation in the entity by Benefit Plan Investors is not "significant." Under the Plan Asset Regulation, a person is a "Benefit Plan Investor" if such person is (i) an "employee benefit plan" (as defined in Section 3(3) of ERISA), whether or not it is subject to the fiduciary responsibility provisions of Title I of ERISA, including any U.S. or foreign governmental or private pension plans, (ii) any "plan" described in Section 4975(e)(1) of the Code (the persons or entities described in clauses (i) and (ii) being referred to herein as "Benefit Plans"), or (iii) any person or entity that is, or would be deemed to be using, for purposes of the fiduciary responsibility provisions of ERISA or Section 4975 of the Code, the assets of any Benefit Plan to purchase or hold an equity interest in an entity.

Although there is little guidance on how this definition applies, LBHI believes that, at the time of their issuance, the Security-Linked Notes should be treated as securities of LBHI (which is an operating company for purposes of the Plan Asset Regulation) and not of the CLO Fund. This determination is based on the fact that the returns on the Security-Linked Notes are backed by the creditworthiness of LBHI and not by the Referenced Preference Shares. The Security-Linked Notes are not secured by the Referenced Preference Shares, and LBHI or any of its affiliates may freely transfer the Referenced Preference Shares (to the extent held thereby). Furthermore, while the Referenced Preference Shares are referenced in determining whether principal equal to the Target Initial Principal Repayment Amount and interest is distributed on the Security-Linked Notes, the return of the principal of the Security-Linked Notes in its entirety, is subject solely to the creditworthiness of LBHI, and not by reference to the Referenced Preference Shares or to any other security.

As described in more detail in the section entitled "ERISA Considerations" in the CLO Offering Memorandum attached hereto as Appendix C, the assets of the CLO Fund are not expected to be treated as "plan assets." If, notwithstanding the analysis discussed in the preceding paragraph, the holders of the Security-Linked Notes were deemed to be holders of the Referenced Preference Shares, then the assets of the CLO Fund could be deemed to be assets of any Plan that is a holder of the Security-Linked Notes, which could, in turn, result in the occurrence of non-exempt prohibited transactions under ERISA.

There can be no assurance that there will not be circumstances in which transfers of Security-Linked Notes will be required to be further restricted in light of the above analysis.

Governmental plans and certain church plans, while not subject to the fiduciary responsibility provisions of ERISA or the provisions of Section 4975 of the Code, may nevertheless be subject to state or other federal laws that are substantially similar to the foregoing provisions of ERISA and the Code. Fiduciaries of any such plans should consult with their counsel before purchasing any Security-Linked Notes.

Any purchaser that is an insurance company using the assets of an insurance company general account should note that pursuant to Section 401(c) of ERISA, the Department of Labor issued final regulations that provide that assets of an insurance company general account will not be treated as "plan assets" for purposes of the fiduciary responsibility provisions of ERISA and Section 4975 of the Code to the extent such assets relate to contracts issued to employee benefit plans on or before December 31, 1998 and the insurer satisfies various conditions. The plan asset status of insurance company separate accounts is unaffected by Section 401(c) of ERISA, and separate account assets continue to be treated as the plan assets of any such plan invested in a separate account.

Each Plan fiduciary who is responsible for making the investment decisions whether to purchase or commit to purchase and to hold Security-Linked Notes should determine whether, under the general fiduciary standards of investment prudence and diversification and under the documents and instruments governing the Plan, an investment in the Security-Linked Notes is appropriate for the Plan, taking into account the overall investment policy of the Plan and the composition of the Plan's investment portfolio. Any Plan proposing to invest in Security-Linked Notes should consult with its counsel to confirm that such investment will not result in a prohibited transaction and will satisfy the other requirements of ERISA and the Code.

The sale of any Security-Linked Notes to a Plan is in no respect a representation by LBHI, the Security-Linked Notes Trustee, the Manager or any other person that such an investment meets all relevant legal requirements with respect to investments by Plans generally or any particular Plan, or that such an investment is appropriate for Plans generally or any particular Plan.

## SUBSCRIPTION AND SALE

The Manager intends to sell the Security-Linked Notes in the United Stated only to persons that are Qualified Institutional Buyers, Accredited Investors or Non-U.S. Persons in reliance on the exemption from registration provided by Rule 144A under the Securities Act or Section 4(2) of the Securities Act, as applicable.

Each initial purchaser of Security-Linked Notes will be required to execute and deliver to LBHI a subscription agreement or other certificate or documents containing representations and warranties satisfactory to LBHI (each, a "Subscription Agreement") in form and substance satisfactory to LBHI and the Security-Linked Notes Trustee.

The Security-Linked Notes have not been and will not be registered under the Securities Act and may not be offered, sold or delivered except in transactions exempt from the registration requirements of the Securities Act.

LBHI has agreed that it will not offer, sell or deliver any Security-Linked Notes as part of its distribution at any time or otherwise except to persons that are Qualified Institutional Buyers or Accredited Investors or Non-U.S. Persons in transactions that are exempt from registration under the Securities Act. Resales of the Security-Linked Notes are restricted as described under "Purchase and Transfer Restrictions" herein.

Prior to the sale of any Security-Linked Notes, LBHI or the Manager will have provided each offeree with a copy of this Offering Memorandum.

28

The Security-Linked Notes are being placed by the Manager on behalf of LBHI through privately negotiated transactions at varying prices.

No action has been or will be taken in any jurisdiction that would permit a public offering of the Security-Linked Notes or the possession, circulation or distribution of this Offering Memorandum or any other material relating to LBHI or the Security-Linked Notes in any jurisdiction where action for that purpose is required. Accordingly, the Security-Linked Notes may not be offered or sold, directly or indirectly, and neither this Offering Memorandum nor any other offering material or advertisements in connection with the Security-Linked Notes may be distributed or published, in or from any jurisdiction, except under circumstances that will result in compliance with any applicable rules and regulations of any such jurisdiction.

**Prospective investors in the Security-Linked Notes are urged to request any additional information they may consider necessary or desirable in making an informed investment decision. Each prospective purchaser (and each purchaser's representative, if any) is invited, prior to the consummation of a sale of any Security-Linked Notes to such purchaser, to ask questions of, and receive answers from, LBHI concerning the Security-Linked Notes, and this offering, the Refer- enced Preference Shares, the CLO Fund and the CLO Collateral, and to obtain any additional information to the extent that LBHI possesses the same or can acquire it without unreasonable effort or expense, in order to verify the accuracy of the information contained in this Offering Memorandum (including the CLO Offering Memorandum attached hereto as Appendix C) or otherwise. Requests for such additional information can be directed to LBHI at its principal office at Lehman Brothers Holdings Inc., 745 Seventh Avenue, New York, NY 10019, tel: (212) 526-7000, Attention: Collateralized Debt Obligations Group, Re: AMMC CLO III, Limited.**

No action is being taken or is contemplated by LBHI that would permit a public offering of the Security-Linked Notes or possession or distribution of any memorandum (in preliminary or final form) or any amendment thereof, any supplement thereto or any other offering material relating to the Secu- rity-Linked Notes in any jurisdiction where, or in any other circumstances in which, action for those purposes is required. LBHI understands and agrees that it is solely responsible for its own compliance with all laws applicable in each jurisdiction in which it offers and sells Security-Linked Notes or distributes any memorandum (in preliminary or final form) or any amendments thereof or supplements thereto or any other material, and it agrees to comply with all these laws.

The Manager, which is a subsidiary of LBHI, will receive compensation from the CLO Fund (including placement fees) in connection with the underwriting or placement of the CLO Fund Notes and compensation from LBHI in connection with the placement of the Security-Linked Notes.

**Investor Suitability Standards**

In addition to the restrictions set forth under "Purchase and Transfer Restrictions," below, an investment in the Security-Linked Notes is suitable only for persons of substantial financial means who have no need for liquidity with respect to their investment in the Security-Linked Notes and who fully understand, are willing to assume and have the financial resources necessary to withstand the risks involved in holding the Security-Linked Notes. Such investors must be able to bear the loss of their entire investment in the Security-Linked Notes. LBHI may revoke the offer made herein and refuse to sell any Security-Linked Notes to a prospective investor if LBHI concludes for any reason that the Security-Linked Notes are not a suitable investment for such investor, even if such investor returns a Subscription Agreement with appropriate representations.

THE SUITABILITY STANDARDS DISCUSSED ABOVE REPRESENT MINIMUM SUITABILITY STANDARDS FOR PROSPECTIVE INVESTORS. EACH PROSPECTIVE INVESTOR, TOGETHER WITH ITS INVESTMENT, TAX, LEGAL, ACCOUNTING AND OTHER ADVISORS, SHOULD DETERMINE WHETHER THIS INVESTMENT IS APPROPRIATE FOR SUCH INVESTOR.

## PURCHASE AND TRANSFER RESTRICTIONS

**Because of the following restrictions, purchasers are advised to consult legal counsel prior to making any offer, resale, pledge or other transfer of the Security-Linked Notes.**

Each prospective purchaser of Security-Linked Notes offered in reliance on Rule 144A or Section 4(2) of the Securities Act (each, an "Offeree"), by accepting delivery of this Offering Memorandum, will be deemed to have represented and agreed as follows:

(1)     The Offeree acknowledges that this Offering Memorandum is personal to the Offeree and does not constitute an offer to any other person or to the public generally to subscribe for or otherwise acquire the Security-Linked Notes other than pursuant to Rule 501(a) under Regulation D or Rule 144A under the Securities Act or in offshore transactions in accordance with Regulation S under the Securities Act. Distribution of this Offering Memorandum, or disclosure of any of its contents to any person other than the Offeree and those persons, if any, retained to advise the purchaser with respect thereto and other persons meeting the requirements of Rule 501(a) of Regulation D, Rule 144A or Regulation S is unauthorized and any disclosure of any of its contents, without the prior written consent of LBHI, is prohibited.

(2)     The Offeree agrees to make no photocopies of this Offering Memorandum or any documents referred to herein and, if the Offeree does not purchase the Security-Linked Notes or the offering is terminated, to return this Offering Memorandum and all documents referred to herein to Lehman Brothers Holdings Inc., 745 Seventh Avenue, New York, NY 10019, tel: (212) 526-7000, Attention: Collateralized Debt Obligations Group, Re: AMMC CLO III, Limited.

Each initial purchaser of Security-Linked Notes will be required to make the representations and warranties set forth below in a Subscription Agreement delivered to LBHI. Before any Security-Linked Note may be offered, resold, pledged or otherwise transferred, the transferor will be required to provide the Security-Linked Notes Trustee with a written certification (in the form provided in the Security-Linked Notes Indenture) as to compliance with the transfer restriction set forth below. In each of the numbered representations, references to "purchaser" will be replaced with "transferee," as appropriate. Terms used in the following representations and agreements that are defined in the Securities Act are used herein as defined therein.

(1)     *Securities Act.* The purchaser is (i) a Qualified Institutional Buyer acquiring the Security-Linked Notes in reliance on Rule 144A under the Securities Act for its own account or the accounts of one or more persons with respect to which the purchaser exercises sole investment discretion, each of which is a Qualified Institutional Buyer, (ii) an Accredited Investor acquiring the Security-Linked Notes pursuant to Section 4(2) of the Securities Act for its own account or the accounts of one or more persons with respect to which the purchaser exercises sole investment discretion, each of which is an

30

Accredited Investor, or (iii) not a "U.S. person" (as defined in Regulation S) acquiring the Security-Linked Notes in an offshore transaction in accordance with Rule 903 or Rule 904 of Regulation S for its own account or the accounts of one or more persons with respect to which the purchaser exercises investment discretion, none of which is a "U.S. person" (as defined in Regulation S), and in each case for investment purposes and not with a view to the distribution thereof.

(2)  *No Government Approval.*  The purchaser understands that the Security-Linked Notes have not been approved or disapproved by the SEC or any other governmental authority or agency of any jurisdiction, nor has the SEC or any other governmental authority or agency passed upon the accuracy or adequacy of this Offering Memorandum. Any representation to the contrary is a criminal offense.

(3)  *No Public Offering.*  The purchaser understands that the Security-Linked Notes are being offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act. The purchaser understands that the Security-Linked Notes have not been registered under the Securities Act and, therefore, cannot be resold unless they are registered under the Securities Act or unless an exemption from registration is available. The purchaser understands that LBHI has no obligation to register the Security-Linked Notes under the Securities Act or to comply with the requirements for any exemption from the registration requirements of the Securities Act (other than to supply information specified in Rule 144A(d)(4) of the Securities Act as required by the Security-Linked Notes Indenture). The purchaser acknowledges that no representation is made by LBHI or the Manager as to the availability of any exemption under the Securities Act or any state securities laws for resale of the Security-Linked Notes.

(4)  *Transfer of Security-Linked Notes.*  The purchaser is not purchasing the Security-Linked Notes with a view to the resale, distribution or other disposition thereof in violation of the Securities Act. The purchaser is aware that the Security-Linked Notes (or any interest therein) may be offered or sold, pledged or otherwise transferred to a transferee, only if the transferee is (A) a person whom the purchaser reasonably believes to be a Qualified Institutional Buyer in a transaction meeting the requirements of Rule 144A, acting for its own account or the accounts of one or more persons with respect to which the transferee exercises sole investment discretion, each of which is a person whom the purchaser reasonably believes to be a Qualified Institutional Buyer, and to whom notice is given that the purchaser is relying on the exemption from the registration requirements of the Securities Act provided by Rule 144A, (B) an Accredited Investor, acting for its own account or the accounts of one or more persons with respect to which the transferee exercises sole investment discretion, each of which is an Accredited Investor (provided, that in the case of any transfer pursuant to this clause (B), either (x) the transferor or the transferee has certified that the transfer is being made pursuant to Rule 144 under the Securities Act or (y) the transferor or the transferee has provided an opinion of counsel to each of the Security-Linked Notes Trustee and LBHI that such transfer may be made pursuant to an exemption from registration under the Securities Act), or (C) not a "U.S. person" (as defined in Regulation S), acting for its own account or the accounts of one or more persons with respect to which the transferee exercises sole investment discretion, none of which is a "U.S. person" (as defined in Regulation S), in an offshore transaction in accordance with Rule 903 or Rule 904 of Regulation S.

(5)    *Notice to Transferees.* The purchaser will provide notice to each person to whom it proposes to transfer any interest in the Security-Linked Notes of the transfer restrictions and representations set forth in the Security-Linked Notes Indenture, including the Exhibits referenced therein. The purchaser will, prior to any sale, pledge or other transfer by it of any Security-Linked Note (or any interest therein), obtain from the transferee and deliver to LBHI and the Security-Linked Notes Trustee or note registrar under the Security-Linked Notes Indenture a duly executed transferee certificate in the form of the relevant exhibit attached to the Security-Linked Notes Indenture and such other certificates and other information as LBHI or the Security-Linked Notes Trustee may reasonably require to confirm that the proposed transfer complies with the transfer restrictions contained in this Offering Memorandum, in the legend placed on such Security-Linked Notes and in the Security-Linked Notes Indenture.

(6)    *Minimum Denomination.* The purchaser is aware that no transfer by the purchaser of a Security-Linked Note will be effective, and neither LBHI nor the Security-Linked Notes Trustee will recognize any such transfer, unless such transfer is made in a minimum denomination of $250,000 and multiples of $1,000 in excess thereof.

(7)    *Limited Liquidity.* The purchaser understands that there is no market for the Secu-rity-Linked Notes and that no assurance can be given as to the liquidity of any trading market for the Security-Linked Notes and that it is unlikely that a trading market for the Security-Linked Notes will develop. It further understands that, although the Manager may from time to time make a market in the Security-Linked Notes, the Manager is under no obligation to do so and, following the commencement of any market-making, may discontinue the same at any time. Accordingly, the purchaser is prepared to hold the Security-Linked Notes for an indefinite period of time or until the Stated Maturity of the Security-Linked Notes.

(8)    *No General Solicitation.* The purchaser will not, at any time, offer to buy or offer to sell the Security-Linked Notes by any form of general solicitation or advertising, including, but not limited to, any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium or broadcast over television or radio or seminar or meeting whose attendees have been invited by general solicitations or advertising.

(9)    *Acknowledgment of Risks; Access to Information.* The purchaser understands that an investment in the Security-Linked Notes involves certain risks, including the risk of loss of a substantial part of its investment under certain circumstances. The purchaser (i) has such knowledge and experience in financial and business matters that the purchaser is capable of evaluating the merits and risks, economic and otherwise (including for tax, legal, regulatory, accounting and other financial purposes) of its prospective investment in the Security-Linked Notes; (ii) is financially and otherwise able to bear such risk; (iii) in making such investment is not relying on the advice or recommendations (whether written or oral) of LBHI, the Collateral Manager, the CLO Fund or any of their respec-tive affiliates (or any representative of any of the foregoing), other than any in a current offering memorandum for such Security-Linked Notes and any representations expressly set forth in a written agreement with such party; and represents that none of such parties or any of their respective affiliates is acting as a fiduciary or financial or investment adviser for the purchaser; (iv) has determined that an investment in the Security-Linked Notes is suitable and appropriate for it; (v) has had access to such financial and other

information concerning LBHI, the CLO Fund, the Collateral Manager, the Manager, the Preference Shares and the Security-Linked Notes as it deemed necessary or appropriate in order to make an informed investment decision with respect to its acquisition of the Security-Linked Notes, including an opportunity to ask questions of and request information from LBHI, the Manager and the Collateral Manager; (vi) acknowledges that neither LBHI nor the Collateral Manager has given to the purchaser (directly or indirectly through any other person) any assurance, guarantee, or representation whatsoever as to the expected or projected success, profitability, return, performance, result, effect, consequence, or benefit (including legal, regulatory, tax, financial, accounting, or otherwise) of its purchase or the documentation for the Security-Linked Notes; (vii) has consulted with its own legal, regulatory, tax, business, investment, financial, and accounting advisers to the extent that it has deemed necessary, and it has made its own investment decisions (including decisions regarding the suitability of any transaction pursuant to the documentation for the Security-Linked Notes) based upon its own judgment and upon any advice from such advisers as it has deemed necessary and not upon any view expressed by LBHI or the Collateral Manager; and (viii) has determined that the rates, prices or amounts and other terms of the purchase and sale of the Security-Linked Notes reflect those in the relevant market for similar transactions.

(10)    *ERISA.* The purchaser represents and warrants that it, and any account on behalf of which it is purchasing the Security-Linked Notes, on each day from the date on which it acquires such interest through the date on which the purchaser disposes of such interest, either (A) is not and is not acting on behalf of (I) an employee benefit plan (as defined in section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) that is subject to Title I of ERISA, (ii) any plan described in section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code") (including individual retirement accounts or Keogh plans) that is subject to Section 4975 of the Code, (iii) any entity whose underlying assets include plan assets by reason of a plan's investment in such entity, or (iv) a foreign plan, governmental plan, church plan, or any other plan that is subject to any federal, state or local law that is similar to the prohibited transaction provisions of Section 406 of ERISA or Section 4975 of the Code or (B) its purchase and holding of Security-Linked Notes will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a foreign plan, governmental plan, church plan or any other plan, any substantially similar federal, state or local law).

(11)    *Certain Transfers Void.* The purchaser agrees that (A) any sale, pledge or other transfer of a Security-Linked Note made in violation of the transfer restrictions contained in this Offering Memorandum and in the Security-Linked Notes Indenture, or based upon any false or inaccurate representation made by the purchaser or a transferee to LBHI, will be void and of no force or effect and (B) none of LBHI, the Security-Linked Notes Trustee or the note registrar under the Security-Linked Notes Indenture has any obligation to recognize any sale, pledge or other transfer of a Security-Linked Note made in violation of any such transfer restriction or based upon any such false or inaccurate representation.

(12)    *Reliance on Representations, etc.* The purchaser acknowledges that LBHI and others will rely upon the truth and accuracy of the foregoing acknowledgments, representations and agreements and agrees that, if any of the acknowledgments, representations or warranties made or deemed to have been made by it in connection with its purchase of

33

the Security-Linked Notes are no longer accurate, the purchaser will promptly notify LBHI and the Manager thereof.

(13)   *Legend.* The purchaser understands and agrees that a legend in substantially the following form will be placed on each certificate representing any Security-Linked Notes:

"THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVEST-MENT COMPANY ACT"). THIS NOTE MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, EXCEPT (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITU-TIONAL BUYER AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ONE OR MORE QIBS IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A UNDER THE SECURITIES ACT, (2) TO A PERSON WHO IS AN ACCREDITED INVESTOR AS DEFINED IN RULE 501(a) OF REGULATION D UNDER THE SECURITIES ACT (AN "ACCREDITED INVESTOR") PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ONE OR MORE ACCRED-ITED INVESTORS IN A TRANSACTION MEETING THE REQUIREMENTS OF REGULATION D UNDER THE SECURITIES ACT (PROVIDED, THAT IN THE CASE OF ANY TRANSFER TO AN ACCREDITED INVESTOR, EITHER (X) THE TRANSFEROR OR THE TRANSFEREE HAS CERTIFIED THAT THE TRANSFER IS BEING MADE PURSUANT TO RULE 144 UNDER THE SECURITIES ACT, OR (Y) THE TRANSFEROR OR THE TRANSFEREE HAS PROVIDED AN OPINION OF COUNSEL TO EACH OF THE TRUSTEE AND THE ISSUER THAT SUCH TRANS-FER MAY BE MADE PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT), OR (3) TO A PERSON WHO IS NOT A "U.S. PERSON" AS DEFINED IN REGULATION S UNDER THE SECURITIES ACT IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S AND, IN THE CASE OF EACH OF THE FOREGOING CLAUSES (A), (B) AND (C), IN A PRINCIPAL AMOUNT OF NOT LESS THAN $250,000 FOR THE PURCHASER AND FOR EACH SUCH ACCOUNT, SUBJECT TO THE SATISFACTION OF CERTAIN CONDITIONS SPECIFIED IN THE INDEN-TURE REFERRED TO BELOW, AND WHICH MAY BE EFFECTED WITHOUT LOSS OF ANY APPLICABLE INVESTMENT COMPANY ACT EXEMPTION AND (B) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. EACH PURCHASER OF THIS NOTE WILL BE REQUIRED TO MAKE CERTAIN REPRESENTATIONS AND WARRANTIES SET FORTH IN A SUBSCRIPTION AGREEMENT OR IN THE APPLICABLE TRANS-FER CERTIFICATE ATTACHED AS AN EXHIBIT TO THE INDENTURE. ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUC-TIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE OR ANY INTER-MEDIARY. THE ISSUER HAS THE RIGHT, UNDER THE INDENTURE, TO COMPEL ANY HOLDER OF THE NOTES OR ANY INTEREST THEREIN WHO IS

NOT A PERMITTED HOLDER TO SELL ITS INTEREST IN THE NOTES, OR MAY SELL SUCH INTEREST ON BEHALF OF SUCH PERSON.

EACH HOLDER OF THIS NOTE WILL BE REQUIRED TO REPRESENT AND WARRANT IN A SUBSCRIPTION AGREEMENT OR TRANSFER CERTIFICATE THAT, ON EACH DAY FROM THE DATE ON WHICH SUCH HOLDER ACQUIRES AN INTEREST IN THIS NOTE THROUGH THE DATE ON WHICH IT DISPOSES OF SUCH INTEREST, EITHER (A) IT IS NOT AND IS NOT ACTING ON BEHALF OF A PLAN OR (B) ITS PURCHASE AND HOLDING OF AN INTEREST IN THIS NOTE WILL NOT RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE (OR, IN THE CASE OF A FOREIGN PLAN, GOVERNMENTAL PLAN, CHURCH PLAN, OR ANY OTHER PLAN, ANY SUBSTANTIALLY SIMILAR FEDERAL, STATE OR LOCAL LAW). A "PLAN" IS ANY OF (I) AN EMPLOYEE BENEFIT PLAN (AS DEFINED IN SECTION 3(3) OF ERISA) THAT IS SUBJECT TO TITLE I OF ERISA, (II) ANY PLAN DESCRIBED IN SECTION 4975(e)(1) OF THE CODE (INCLUDING INDIVIDUAL RETIREMENT ACCOUNTS OR KEOGH PLANS) THAT IS SUBJECT TO SECTION 4975 OF THE CODE, (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE PLAN ASSETS BY REASON OF A PLAN'S INVESTMENT IN SUCH ENTITY, OR (IV) A FOREIGN PLAN, GOVERNMENTAL PLAN, CHURCH PLAN OR ANY OTHER PLAN THAT IS SUBJECT TO ANY FEDERAL, STATE OR LOCAL LAW THAT IS SIMILAR TO THE PROHIBITED TRANSACTION PROVISIONS OF SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE."

(14)    *Permanent Address.* If the purchaser's permanent address is located in the United States, the purchaser was offered the Security-Linked Notes in the state of the purchaser's permanent address and intends that the securities law of that state govern the purchaser's subscription for the Security-Linked Notes.

(15)    *Treaty Exemption.* The purchaser, if not a "United States person" (as defined in Section 7701(a)(30) of the Code), either (A) is not a bank (within the meaning of Section 881(c)(3)(A) of the Code) or an affiliate of a bank or (B) is a person (or a wholly owned affiliate of a person) that is eligible for benefits under an income tax treaty with the United States that eliminates U.S. federal income taxation of U.S. source interest not attributable to a permanent establishment in the United States.

(16)    *Withholding.* The purchaser understands that LBHI may require certification acceptable to it (A) to permit LBHI to make payments to it without, or at a reduced rate of, withholding or (B) to enable LBHI to qualify for a reduced rate of withholding in any jurisdiction from or through which LBHI receives payments on its assets. The purchaser agrees to provide any such certification that is requested by LBHI.

Any purported transfer of a Security-Linked Note not in accordance with the transfer restrictions described herein shall be null and void ab initio, and shall not be given effect for any purpose under the Security-Linked Notes Indenture or otherwise.

## LEGAL MATTERS

Certain legal matters with respect to the Security-Linked Notes will be passed upon for LBHI by Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York and by internal counsel to LBHI.

## APPENDIX A

## INDEX OF DEFINED TERMS

Following is an index of defined terms used in this Offering Memorandum and the page number where each definition appears.

| | Page |
|---|---|
| $ | vi |
| Accredited Investor | 5, 14 |
| adjusted issue price | 23 |
| Benefit Plan Investor | 27 |
| Benefit Plans | 27 |
| Business Day | 1, 11, 16 |
| Class A Notes | 3, 16 |
| Class B Notes | 3, 16 |
| Class C Notes | 3, 16 |
| Class D Notes | 3, 16 |
| CLO Closing Date | 3, 16 |
| CLO Co-Issuer | 3, 16 |
| CLO Collateral | 5, 17 |
| CLO Fund | i, 3, 16 |
| CLO Fund Charter | 4, 16 |
| CLO Fund Indenture | 4, 16 |
| CLO Fund Notes | 4, 16 |
| CLO Fund Payment Date | 16 |
| CLO Fund Securities | 4, 16 |
| CLO Fund Trustee | 4, 16 |
| CLO Offering Memorandum | 4 |
| Closing Date | ii |
| Code | 22 |
| Contingent Debt Regulations | 23 |
| Designated Subsidiary | 19 |
| Dollars | vi |
| ERISA | 25 |
| ERISA Plans | 25 |
| Final Principal Repayment Amount | 3, 12 |
| Initial Principal Repayment Date | 2 |
| IRS | 22 |
| Issuer | i, 3 |
| LBHI | i, 3, 18 |
| Lehman Brothers | 18 |
| Manager | ii |
| Moody's | i |
| NASD | 18 |
| Non-U.S. Person | 6, 14 |
| Noteholder | 12 |
| Offeree | 30 |
| Payment Date | 1, 11 |
| Plan Asset Regulation | 27 |
| Plans | 25 |

A-1

Preference Share Paying Agency Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16
Preference Share Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Preference Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16
PTCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Qualified Institutional Buyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14
Record Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Referenced Preference Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16
Regulation S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
Rule 144A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
SEC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
Securities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, 9
Security-Linked Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, i
Security-Linked Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Security-Linked Notes Event of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Security-Linked Notes Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11
Security-Linked Notes Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11
Standard & Poor's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i
Stated Maturity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 3, 12
Subscription Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Target Initial Principal Repayment Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
U.S. Dollars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
U.S. holder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
U.S. Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Yield Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1

## APPENDIX B

### HYPOTHETICAL YIELD ON THE SECURITY-LINKED NOTES

The yield on the Security-Linked Notes will depend primarily on the timing and amount of payments on the Security-Linked Notes. The timing and amount of payments on the Security-Linked Notes, other than the Final Principal Repayment Amount, will be wholly dependent on the amount of distributions made on the Referenced Preference Shares and, accordingly, the Security-Linked Notes will be subject to the same yield considerations, cashflow variability and other risks related to the Referenced Preference Shares. Distributions in respect of the Referenced Preference Shares will, in turn, depend on the amount and timing of defaults and losses on the CLO Collateral and other factors which are impossible to predict accurately. Potential defaults and losses on the CLO Collateral may be caused by a number of factors, including the deterioration of the financial condition of specific issuers, deterioration in general economic conditions which may affect specific issuers or groups of issuers and deterioration in the general availability of financing sources to issuers seeking to refinance maturing CLO Collateral. See "Risk Factors—Underlying Assets" in the CLO Offering Memorandum for a description of additional risk factors affecting defaults and losses on the Collateral. In addition, because the distributions made on the Referenced Preference Shares from amounts paid on the Preference Shares are subordinated to payments made to the CLO Notes and other fees and expenses of the CLO Fund, amounts received on the Security-Linked Notes are highly variable. See "Risk Factors—Risks Relating to the Security-Linked Notes."

Prospective investors in the Security-Linked Notes should make their own determination of various assumptions and the impact of such assumptions upon the expected yield of the Security-Linked Notes. None of LBHI, the Security-Linked Notes Trustee, the CLO Fund, the Collateral Manager or any other person makes any representation that the assumptions used in creating the projected yield table (the "Yield Table") set forth below will be representative of actual experience. The assumptions on which the projections below are based are necessarily arbitrary, do not reflect historical experience with respect to assets similar to the CLO Collateral and do not constitute a prediction as to future events. Accordingly, because of the uncertainties and subjective judgments inherent in such projections and because events and circumstances frequently do not occur as expected, there can be no assurance that the hypothetical yields represented below will be realized. The actual returns on the Security-Linked Notes will differ, and may differ materially, from those illustrated below. Investors should be aware that payments to holders of the Security-Linked Notes will not be made evenly throughout the life of the transaction and that, because such payments are dependent on distributions on Referenced Preference Shares, the distributions on which are dependent upon the returns realized on the CLO Collateral after taking into account the expenses and fees and other amounts required to be paid by the CLO Fund prior to distributions being made on the Preference Shares, the returns to holders of the Security-Linked Notes may fluctuate considerably from Payment Date to Payment Date and, with respect to some Payment Dates, it is possible that no payments will be made.

The results shown in the table below are based on the Additional Modeling Assumptions described below and, in addition, on the assumptions set forth under "Modeling Assumptions" in Appendix K of the CLO Offering Memorandum. The hypothetical yield for the Security-Linked Notes is calculated on an annual basis of a 360-day year consisting of twelve 30-day months. There can be no assurance, however, that the actual portfolio of the initial Underlying Assets held by the CLO Fund will not differ from the anticipated initial Underlying Assets used to calculate the returns presented, and any difference between the actual portfolio and the anticipated initial Underlying Assets could significantly change the returns presented on the next page.

B-1

**Additional Modeling Assumptions**

1.　　　The repayment of the principal amount of the Security-Linked Notes at the Stated Maturity will be made to the extent and the manner described in this Offering Memorandum.

2.　　　The CLO Fund Payment Dates with respect to the Referenced Preference Shares occur on the 25th day of each January, April, July and October (and are not adjusted for non-Business Days), in each case commencing in January 2005, and the Payment Dates with respect to the Security-Linked Notes occur on the 26th day of each January, April, July and October (and are not adjusted for non-Business Days), commencing in January 2005.

### Hypothetical Yield on the Security-Linked Notes

### Return to Maturity Scenario

### Constant Annual Default Rate of Underlying Assets

|  | 0.0% | 1.0% | 2.0% | 3.0% | 4.0% | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% | 10.0% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Security-Linked Notes[1] | 14.0% | 12.4% | 10.7% | 9.5% | 7.8% | 6.2% | 4.8% | 4.0% | 2.7% | 1.1% | 0.0% |

(1) Assumes a purchase price of par.

**APPENDIX C**

**CLO OFFERING MEMORANDUM**

**THE ATTACHED CLO OFFERING MEMORANDUM IS SUBJECT IN ITS ENTIRETY TO THE TERMS OF THE CLO FUND INDENTURE AND OTHER APPLICABLE DOCUMENTS.**

## LEHMAN BROTHERS HOLDINGS INC.

### $14,152,000 SECURITY-LINKED NOTES DUE 2016

Offering Memorandum

July 16, 2004

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

4:49

RECEIVED BY: _____    DATE _____    TIME _____