WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :     08-13555 (JMP)
                                          :
                            Debtors.      :     (Jointly Administered)
-----------------------------------------------------------------x
```

## PLAN SUPPLEMENT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       This Plan Supplement contains documents and schedules filed in connection with the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011 (the "Plan").[1]  Included in this Plan Supplement are the following:

Exhibit 1 – Form of Revised Certificate of Incorporation and By-Laws for Each Debtor
      Pursuant to Section 7.7 of the Plan

Exhibit 2 – Schedule of Executory Contracts and Unexpired Leases to Be Assumed
      Pursuant to Section 11.1 of the Plan

Exhibit 3 – Plan Trust Agreement

Exhibit 4 – Form of Debtor Allocation Agreement

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Plan.

Exhibit 5 – Copies of Settlement Agreements Among Debtors and Non-Controlled
Affiliates Pursuant to Section 6.5(b)(vi) of the Plan

Exhibit 6 – Copies of Settlement Agreements Among Debtors and Any Creditors
Pursuant to Section 6.5(j) of the Plan

Exhibit 7 – Amendment to the Plan

Exhibit 8 – Updated Recovery Analyses for SASCO and LBCC

Exhibit 9 – Schedule of Claims by Debtor-Controlled Entities

Exhibit 10 – Reconciliation of Ownership of Assets

Exhibit 11 – List of Debtors and Debtor-Controlled Entities to Be Dissolved or Merged
Pursuant to the Plan

       The Debtors reserve the right to alter, amend, update, supplement, or
modify the Plan Supplement.

       Pursuant to Section 15.5 of the Plan, the Plan Supplement may be obtained
on the Debtors' independent website at www.lehman-docket.com or by request to the
Debtors in accordance with section 15.12 of the Plan.

Dated: October 25, 2011
      New York, New York


              /s/ Jacqueline Marcus
              Jacqueline Marcus

              WEIL, GOTSHAL & MANGES LLP
              767 Fifth Avenue
              New York, New York 10153
              Telephone: (212) 310-8000
              Facsimile: (212) 310-8007
              Attorneys for Debtors
              and Debtors in Possession

**EXHIBIT 1**


**FORM OF REVISED CERTIFICATE OF INCORPORATION
AND BY-LAWS FOR EACH DEBTOR PURSUANT TO
SECTION 7.7 OF THE PLAN**

# EXHIBIT 1

## PART A – LEHMAN BROTHERS HOLDINGS INC.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

# LEHMAN BROTHERS HOLDINGS INC.

Lehman Brothers Holdings Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.      The name of the Corporation is Lehman Brothers Holdings Inc.

2.      The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on December 29, 1983 pursuant to the DGCL.

3.      This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.      On September 15, 2008 and periodically thereafter, the Corporation and certain of its affiliates each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.      This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.      This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.      The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:      The name of the corporation is Lehman Brothers Holdings Inc.

SECOND:      The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808.  The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:      The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

<u>FOURTH</u>:       The total number of shares of capital stock which the Corporation shall have the authority to issue is one (1) share of Common Stock, $0.01 par value per share, which shall be issued to that certain Plan Trust (the "<u>Plan Trust</u>") established pursuant to the Plan to hold such share for the benefit of certain former holders of the capital stock of the Corporation consistent with their former relative priority and economic entitlements and to carry out the purposes of the Plan. The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

<u>FIFTH</u>:       The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.       The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.       The number of directors which shall constitute the entire Board of Directors shall be seven (7) persons.  The initial directors shall be selected by that certain Director Selection Committee (as defined in the Plan) established pursuant to the Plan and the Order of the Bankruptcy Court dated November __, 2011.  The initial directors shall each have initial terms of one year.  The directors shall thereafter be elected (a) at the annual meeting of the stockholder by the holder of the one (1) share of capital stock issued and outstanding and entitled to vote thereat, represented in person or by proxy or (b) by action in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.       Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.       Any director or the entire Board of Directors may be removed only for cause by the stockholder.

5.       In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "<u>By-Laws</u>"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; <u>provided</u>, <u>however</u>, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the holder of the one (1) share of capital stock of the Corporation

issued and outstanding and entitled to vote thereon or, unless a higher percentage is required by law or by the By-Laws, a majority of the entire Board of Directors then in office.

SIXTH:

1.       A director shall not be personally liable to the Corporation or its stockholder for monetary damages for breach of fiduciary duty as a director; provided that this sentence shall not eliminate or limit the liability of a director (i) for any breach of his duty of loyalty to the Corporation or its stockholder, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derives an improper personal benefit. If the DGCL is amended after the date this Amended and Restated Certificate of Incorporation becomes effective to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended.

2.       Neither the amendment nor repeal of this Article Sixth, nor the adoption of any provision of this Amended and Restated Certificate of Incorporation inconsistent with this Article Sixth, shall eliminate or reduce the effect of such provisions, in respect of any matter occurring prior to such amendment, repeal or adoption of an inconsistent provision or in respect of any act or omission occurring prior to such amendment, repeal or adoption of an inconsistent provision, regardless of when any cause of action, suit or claim relating to any such matter accrued or matured or was commenced, and such provision shall continue to have effect in respect of such act, omission or matter as if such provision had not been so amended or repealed or if a provision inconsistent therewith had not been so adopted.

SEVENTH:

1.       The Corporation shall have the power to indemnify to the fullest extent permitted, from time to time, by applicable law any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative in nature by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or, while a director, officer, employee or agent of the Corporation, is or was serving at the request of the Corporation as a director, officer, trustee, employee or agent of or in any other capacity with another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against expenses (including attorneys' fees), judgments, fines, penalties and amounts paid in settlement in connection with such action, suit or proceeding. The Corporation shall have the power to enter into agreements providing any such indemnity.

2.       The Corporation shall have the power to advance to a director, officer, employee or agent of the Corporation expenses incurred in connection with defending any action, suit or proceeding referred to above or in the By-Laws at any time before the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the indemnified person to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article Seventh or as provided in the By-

Laws.  The Corporation shall have the power to enter into agreements providing for such advancement of expenses.

3.      The indemnification and other rights provided for in this Article Seventh shall not be exclusive of any provision with respect to indemnification or the payment of expenses in the By-Laws or any other contract or agreement between the Corporation and any officer, director, employee or agent of the Corporation or any other person.

4.      Neither the amendment nor repeal of this Article Seventh, nor the adoption of any provision of this Amended and Restated Certificate of Incorporation inconsistent with this Article Seventh, shall eliminate or reduce the effect of such provisions in respect of any act or omission or any matter occurring prior to such amendment, repeal or adoption of an inconsistent provision regardless of when any cause of action, suit or claim relating to any such matter accrued or matured or was commenced, and such provision shall continue to have effect in respect of such act, omission or matter as if such provision had not been so, amended or repealed or if a provision inconsistent therewith had not been so adopted.

EIGHTH:      Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

NINTH:      The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

TENTH:      The Corporation shall be responsible for payment of all actual, reasonable and necessary costs and expenses incurred by the Plan Trust and Plan Trustees pursuant to the Plan and that certain Plan Trust Agreement dated [__].

ELEVENTH:  Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Holdings Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ____ day of ____, 201__.

Lehman Brothers Holdings Inc.

By:_____
 Name:
 Title: Authorized Representative

# LEHMAN BROTHERS HOLDINGS INC.

Incorporated Under the Laws of the
State of Delaware

<u>AMENDED AND RESTATED
BY-LAWS</u>

ARTICLE I
OFFICES

Lehman Brothers Holdings Inc. (the "<u>Corporation</u>") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "<u>Board of Directors</u>") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1.     <u>Place of Meetings</u>.    Meetings of the sole stockholder of the Corporation (the "<u>Stockholder</u>") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.     <u>Annual Meeting</u>.  The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.     <u>Special Meetings</u>.    Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "<u>Certificate of Incorporation</u>"), special meetings of the Stockholder may be called only by the Stockholder, the Chairman of the Board, the Chief Executive Officer, the President in the absence or disability of the Chairman of the Board and the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60)

days before the date of the meeting to the Stockholder. Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the Stockholder, as the holder of the one (1) share of capital stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder, as the holder of the one (1) share of capital stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for the share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder, as the holder of the one (1) share of capital stock issued and outstanding and entitled to vote thereat, and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [_____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder. Following the Effective Date (as such term is defined in the Plan), the Board of Directors shall, in addition to its foregoing duties, be responsible for (i) instructing and supervising the Debtors (as such term is defined in the Plan) and the Corporation with respect to their responsibilities under the Plan; (ii) reviewing and approving the prosecution of adversary

and other proceedings, if any, including approving proposed settlements thereof; (iii) reviewing and approving objections to and proposed settlements of Disputed Claims (as such term is defined in the Plan); and (iv) performing such other duties that may be necessary and proper to assist the Debtors and the Corporation and their retained professionals. In its discretion, following the Effective Date (as such term is defined in the Plan), the Board of Directors may delegate any duties assigned to the Corporation in its capacity as Plan Administrator (as such term is defined in the Plan) to any committee constituted pursuant to Article IV hereof, or any other entity or individual.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chairman of the Board, the Chief Executive Officer, the President or any director. Notice thereof stating the place, date and hour of the meeting shall be given to each director either (i) by mail or courier not less than forty-eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to any director who shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4. <u>Quorum</u>. Except as may be otherwise provided by law, the Certificate of Incorporation or these By-Laws, a majority of the entire Board of Directors shall be necessary to constitute a quorum for the transaction of business, and the vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors. Whether or not a quorum is present at a meeting of the Board of Directors, a majority of the directors present may adjourn the meeting to such time and place as they may determine without notice other than an announcement at the meeting.

Section 5. <u>Action Without A Meeting</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or the committee consent in writing or by electronic transmission to the adoption of a resolution authorizing the action. The resolution and the consents thereto in writing or by electronic transmission by the members of the Board of Directors or committee shall be filed with the minutes of the proceedings of the Board of Directors or such committee.

Section 6. <u>Participation By Telephone</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any one or more members of the Board of Directors or any committee thereof may participate in a meeting of the Board of Directors or such committee by means of a conference telephone or other communications

equipment allowing all persons participating in the meeting to hear each other. Participation by such means shall constitute presence in person at the meeting.

Section 7.    <u>Compensation</u>.  The directors may be paid their expenses, if any, for attendance at each meeting of the Board of Directors or any committee thereof and may be paid compensation as a director, committee member or chairman of any committee and for attendance at each meeting of the Board of Directors or committee thereof in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude any director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    <u>Resignation</u>.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

ARTICLE IV
COMMITTEES

Section 1.    <u>Committees</u>.  The Board of Directors, on behalf of the Corporation as Plan Administrator (as such term is defined in the Plan), may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of any such committee.  In the absence or disqualification of a member of a committee, and in the absence of a designation by the Board of Directors of an alternate member to replace the absent or disqualified member, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may by unanimous vote appoint another member of the Board of Directors to act at the meeting in the place of any absent or disqualified member.  Any committee, to the extent allowed by law and provided in the resolution establishing such committee or in the By-Laws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, but no such committee shall have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the Stockholder, any action or matter expressly required by the Delaware General Corporation Law to be submitted to the Stockholder for approval or (ii) adopting, amending or repealing any By-Law of the Corporation.  All acts done by any committee within the scope of its powers and duties pursuant to these By-Laws and the resolutions adopted by the Board of Directors shall be deemed to be, and may be certified as being, done or conferred under authority of the Board of Directors.  The Secretary or any Assistant Secretary is empowered to certify that any resolution duly adopted by any such committee is binding upon the Corporation

and to execute and deliver such certifications from time to time as may be necessary or proper to the conduct of the business of the Corporation.

Section 2. <u>Resignation</u>. Any member of a committee may resign at any time. Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the Secretary. The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

Section 3. <u>Quorum</u>. A majority of the members of a committee shall constitute a quorum. The vote of a majority of the members of a committee present at any meeting at which a quorum is present shall be the act of such committee.

Section 4. <u>Record of Proceedings</u>. Each committee shall keep a record of its acts and proceedings, and shall report the same to the Board of Directors when and as required by the Board of Directors.

Section 5. <u>Organization, Meetings, Notices</u>. A committee may hold its meetings at the principal office of the Corporation, or at any other place upon which a majority of the committee may at any time agree. Each committee may make such rules as it may deem expedient for the regulation and carrying on of its meetings and proceedings.

ARTICLE V
OFFICERS

Section 1. <u>General</u>. The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chairman of the Board, a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller. The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation one or more Vice Chairmen of the Board, a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable. Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws. The officers of the Corporation need not be stockholders or directors of the Corporation, except for the Chairman of the Board, if any, who must be a director. Any office named or provided for in this Article V (including, without limitation, Chairman of the Board, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons. If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the

Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article V.

Section 2.    Election; Removal; Remuneration.    The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of a majority of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of the Corporation, any of the Corporation's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("A&M") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.  Should the Chairman of the Board of Directors, if any, cease to be a director, he shall ipso facto cease to be such officer.

Section 3.    Voting Securities Owned by the Corporation.    Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Corporation may be executed in the name of  and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present.  The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4.    Chairman of the Board.    The Chairman of the Board may be, but need not be, a person other than the Chief Executive Officer of the Corporation.  The Chairman of the Board may be, but need not be, an officer or employee of the Corporation. The Chairman of the Board shall preside at meetings of the Board of Directors and shall establish agendas for such meetings.

Section 5.    Chief Executive Officer.    The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the

affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors and any committee thereof of which he is a member, unless the Board of Directors or such committee shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7. <u>Vice Chairmen of the Board</u>. The Vice Chairmen of the Board shall be members of the Board of Directors and shall perform such duties and have such powers as may be prescribed by the Board of Directors, the Chairman of the Board or these By-Laws.

Section 8. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and

on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 9.    <u>Executive Vice Presidents</u>.  The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.    <u>Senior Vice Presidents</u>.    The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 11.    <u>Vice Presidents</u>.    The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President.  Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 12.    <u>Secretary</u>.  The Secretary shall attend all meetings of the Board of Directors and its committees and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or

its committees or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 13.　Assistant Secretaries.　Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 14.　Chief Financial Officer.　The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 15.　Treasurer.　The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided.  The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney,

undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 16.    Assistant Treasurers.    Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 17.    Controller.    The Controller shall prepare and have the care and custody of the books of account of the Corporation.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 18.    Additional Powers and Duties.    In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 19.    Other Officers.    The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE VI
CAPITAL STOCK

Section 1.    Ownership.    Unless otherwise required by law, no capital stock of the Corporation shall be issuable or transferable to any person other than the Plan Trust (as defined in the Plan).  The one (1) share of issued and outstanding stock of the Corporation shall be represented by a certificate, unless and until the Board of Directors adopts a resolution permitting such share to be uncertificated.  The certificate shall be signed by, or in the name of the Corporation by, (a) the Chairman of the Board, a Vice-Chairman of the Board, the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by the Stockholder in the Corporation.

Section 2.    Signatures.    Any signature required to be on a certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the

Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

ARTICLE VII
INDEMNIFICATION

Section 1.    Indemnification Respecting Third Party Claims.  The Corporation, to the full extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify, in accordance with the provisions of this Article, any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature (other than an action by or in the right of the Corporation or by any corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise of which the Corporation owns, directly or indirectly through one or more other entities, a majority of the voting power or otherwise possesses a similar degree of control), by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, member, manager, partner, trustee, fiduciary, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (any such entity for which a Subsidiary Officer so serves, an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful; provided, however, that (i) the Corporation shall not be obligated to indemnify a person who is or was a director, officer employee or agent of the Corporation or a Subsidiary Officer of an Associated Entity against expenses incurred in connection with an action, suit, proceeding or investigation to which such person is threatened to be made a party but does not become a party unless the incurring of such expenses was authorized by or under the authority of the Board of Directors and (ii) the Corporation shall not be obligated to indemnify against any amount paid in settlement unless the Board of

Directors has consented to such settlement. The termination of any action, suit or proceeding by judgment, order, settlement or conviction or upon a plea of <u>nolo contendere</u> or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which such person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, that such person had reasonable cause to believe that his conduct was unlawful. Notwithstanding anything to the contrary in the foregoing provisions of this Section 1, a person shall not be entitled, as a matter of right, to indemnification pursuant to this Section 1 against costs or expenses incurred in connection with any action, suit or proceeding commenced by such person against the Corporation or any Associated Entity or any person who is or was a director, officer, fiduciary, employee or agent of the Corporation or a Subsidiary Officer of any Associated Entity (including, without limitation, any action, suit or proceeding commenced by such person to enforce such person's rights under this Article VII, unless and only to the extent that such person is successful on the merits of such claim), but such indemnification may be provided by the Corporation in a specific case as permitted by Section 7 below in this Article.

Section 2. <u>Indemnification Respecting Derivative Claims</u>. The Corporation, to the full extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify, in accordance with the provisions of this Article, any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action or suit (including any appeal thereof) brought in the right of the Corporation to procure a judgment in its favor by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a Subsidiary Officer of an Associated Entity, against expenses (including attorneys' fees and disbursements) and costs actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless, and only to the extent that, the Delaware Court of Chancery or the court in which such action or suit was brought shall determine that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses and costs as the Court of Chancery or such other court shall deem proper; provided, however, that the Corporation shall not be obligated to indemnify a director, officer, employee or agent of the Corporation or a Subsidiary Officer of an Associated Entity against expenses incurred in connection with an action or suit to which such person is threatened to be made a party but does not become a party unless the incurrence of such expenses was authorized by or under the authority of the Board of Directors. Notwithstanding anything to the contrary in the foregoing provisions of this Section 2, a person shall not be entitled, as a matter of right, to indemnification pursuant to this Section 2 against costs and expenses incurred in connection with any action or suit in the right of the Corporation commenced by such person, but such indemnification may be

provided by the Corporation in any specific case as permitted by Section 7 below in this Article.

Section 3.  <u>Determination of Entitlement to Indemnification</u>.  Any indemnification to be provided under either of Section 1 or 2 above in this Article (unless ordered by a court of competent jurisdiction) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification is proper under the circumstances because the person to be indemnified had met the applicable standard of conduct set forth in such section of this Article.  Such determination shall be made, with respect to a person who is a director or officer of the Corporation at the time of such determination, (i) by a majority vote of the directors who are not parties to the action, suit or proceeding in respect of which indemnification is sought, even though less than a quorum, or (ii) by majority vote of the members of a committee composed of at least two directors each of whom is not a party to such action, suit or proceeding, designated by majority vote of directors who are not parties to such action, suit or proceeding, even though less than a quorum, or (iii) if there are no directors who are not parties to such action, suit or proceeding, or if such directors so direct, by independent legal counsel in a written opinion, or (iv) by action of the Stockholder taken as permitted by law and these By-Laws.  Such determination shall be made, with respect to any other person, by such officer or officers of the Corporation as the Board of Directors or the Executive Committee (if any) of the Board may designate, in accordance with any procedures that the Board of Directors, the Executive Committee or such designated officer or officers may determine, or, if any such officer or officers have not been so designated, by the Chief Legal Officer or the General Counsel of the Corporation.  In the event a request for indemnification is made by any person referred to in Section 1 or 2 above in this Article, the Corporation shall use its reasonable best efforts to cause such determination to be made not later than sixty (60) days after such request is made after the final disposition of such action, suit or proceeding.

Section 4.  <u>Right to Indemnification upon Successful Defense and for Service as a Witness</u>.  (a) Notwithstanding the other provisions of this Article, to the extent that a present or former director or officer has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in either of Section 1 or 2 above in this Article, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) and costs actually and reasonably incurred by such person in connection therewith.

(b)  To the extent any person who is or was a director, officer, employee or agent of the Corporation or a Subsidiary Officer of an Associated Entity has served or prepared to serve as a witness in, but is not a party to, any action, suit or proceeding (whether civil, criminal, administrative, regulatory or investigative in nature), including any investigation by any legislative or regulatory body or by any securities or commodities exchange of which the Corporation or an Associated Entity is a member or to the jurisdiction of which it is subject, by reason of his or her services as a director, officer, employee or agent of the Corporation, or his or her service as a Subsidiary Officer of an Associated Entity (assuming such person is or was serving at the request of

the Corporation as a Subsidiary Officer of such Associated Entity), the Corporation may indemnify such person against expenses (including attorneys' fees and disbursements) and out-of-pocket costs actually and reasonably incurred by such person in connection therewith and, if the Corporation has determined to so indemnify such person, shall use its reasonable best efforts to provide such indemnity within sixty (60) days after receipt by the Corporation from such person of a statement requesting such indemnification, averring such service and reasonably evidencing such expenses and costs; it being understood, however, that the Corporation shall have no obligation under this Article to compensate such person for such person's time or efforts so expended.

Section 5.     Advance of Expenses.  (a) Expenses and costs incurred by any present or former director or officer of the Corporation in defending a civil, criminal, administrative, regulatory or investigative action, suit or proceeding shall, to the extent permitted by law, be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking in writing by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified in respect of such costs and expenses by the Corporation as authorized by this Article.

(b)     Expenses and costs incurred by any other person referred to in Section 1 or 2 above in this Article in defending a civil, criminal, administrative, regulatory or investigative action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by or under the authority of the Board of Directors upon receipt of an undertaking in writing by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation in respect of such costs and expenses as authorized by this Article and subject to any limitations or qualifications provided by or under the authority of the Board of Directors.

Section 6.     Notice of Action; Assumption of the Defense.  Promptly after receipt by any person referred to in Section 1, 2 or 5 above in this Article of notice of the commencement of any action, suit or proceeding in respect of which indemnification or advancement of expenses may be sought under any such Section, such person (the "Indemnitee") shall notify the Corporation thereof.  The Corporation shall be entitled to participate in the defense of any such action, suit or proceeding and, to the extent that it may wish, except in the case of a criminal action or proceeding, to assume the defense thereof with counsel chosen by it.  If the Corporation shall have notified the Indemnitee of its election so to assume the defense, it shall be a condition of any further obligation of the Corporation under such Sections to indemnify the Indemnitee with respect to such action, suit or proceeding that the Indemnitee shall have provided an undertaking in writing to repay all legal or other costs and expenses subsequently incurred by the Corporation in conducting such defense if it shall ultimately be determined that the Indemnitee is not entitled to be indemnified in respect of the costs and expenses of such action, suit or proceeding by the Corporation as authorized by this Article. Notwithstanding anything in this Article to the contrary, after the Corporation shall have notified the Indemnitee of its election so to assume the defense, the Corporation shall not

be liable under such Sections for any legal or other costs or expenses subsequently incurred by the Indemnitee in connection with the defense of such action, suit or proceeding, unless (a) the parties thereto include both (i) the Corporation and the Indemnitee, or (ii) the Indemnitee and other persons who may be entitled to seek indemnification or advancement of expenses under any such Section and with respect to whom the Corporation shall have elected to assume the defense, and (b) the counsel chosen by the Corporation to conduct the defense shall have determined, in their sole discretion, that, under applicable standards of professional conduct, a conflict of interest exists that would prevent them from representing both (i) the Corporation and the Indemnitee, or (ii) the Indemnitee and such other persons, as the case may be, in which case the Indemnitee may retain separate counsel at the expense of the Corporation to the extent provided in such Sections and Section 3 above in this Article.

Section 7.    <u>Indemnification Not Exclusive</u>.  The provision of indemnification to or the advancement of expenses and costs to any person under this Article, or the entitlement of any person to indemnification or advancement of expenses and costs under this Article, shall not limit or restrict in any way the power of the Corporation to indemnify or advance expenses and costs to such person in any other way permitted by law or be deemed exclusive of, or invalidate, any right to which any person seeking indemnification or advancement of expenses and costs may be entitled under any law, agreement, vote of the Stockholder or disinterested directors or otherwise, both as to action in such person's capacity as an officer, director, employee or agent of the Corporation or a Subsidiary Officer of an Associated Entity and as to action in any other capacity.

Section 8.    <u>Corporate Obligations; Reliance</u>.  The provisions of Sections 1, 2, 4(a) and 5(a) above of this Article shall be deemed to create a binding obligation on the part of the Corporation to the directors, officers, employees and agents of the Corporation, and the persons who are serving at the request of the Corporation as Subsidiary Officers of Associated Entities, on the effective date of this Article and persons thereafter elected as directors and officers or retained as employees or agents, or serving at the request of the Corporation as Subsidiary Officers of Associated Entities (including persons who served as directors, officers, employees and agents, or served at the request of the Corporation as Subsidiary Officers of Associated Entities, on or after such date but who are no longer so serving at the time they present claims for advancement of expenses or indemnity), and such persons in acting in their capacities as directors, officers, employees or agents of the Corporation, or serving at the request of the Corporation as Subsidiary Officers of any Associated Entity, shall be entitled to rely on such provisions of this Article.

Section 9.    <u>Successors</u>.  The right, if any, of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a Subsidiary Officer of an Associated Entity, to indemnification or advancement of expenses under Sections 1 through 8 above in this Article shall continue after he shall have ceased to be a director, officer, employee or agent or a Subsidiary

Officer of an Associated Entity and shall inure to the benefit of the heirs, distributees, executors, administrators and other legal representatives of such person.

Section 10.    Insurance.  The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the provisions of this Article or applicable law.

Section 11.    Definitions of Certain Terms.  For purposes of this Article, references to "fines" shall include any excise taxes assessed on a person with respect to any employee benefit plan; references to "serving at the request of the Corporation" shall include any service as a director, officer, employee or agent of the Corporation or as a Subsidiary Officer of any Associated Entity which service imposes duties on, or involves services by, such person with respect to any employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article.

## ARTICLE VIII
## GENERAL

Section 1.    Fiscal Year.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.    Corporate Seal.  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.    Contracts, Instruments, Powers of Attorney.  In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.     Amendments.     These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder, as the holder of the one (1) share of capital stock issued and outstanding entitled to vote thereon or, unless a higher percentage is required by law or by the Certificate of Incorporation as to any matter which is the subject of these By-Laws, by a majority of the entire Board of Directors then in office.

Section 5.     Cessation of Officership and Directorship.  Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6.     Definitions.     As used in this Article and in these By-Laws generally, the term "entire Board of Directors" means the total number of directors which the Corporation would have if there were no vacancies.

Section 7.     Waivers.  Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the directors, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or any director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or director, as applicable, protests the lack of notice at the outset of the meeting.

Section 8.     Ratification.  Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized.  Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 9.     Conflicts with Plan.  Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

**EXHIBIT 1**

**PART B – LEHMAN COMMERCIAL PAPER INC.**

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

## OF

## LEHMAN COMMERCIAL PAPER INC.

*under §807 of the Business Corporation Law of the State of New York (the "BCL")*

Lehman Commercial Paper Inc. (the "Corporation"), a New York corporation, hereby certifies as follows:

     1.    The name of the Corporation is Lehman Commercial Paper Inc.

     2.    The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of New York on April 9, 1964.

     3.    This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

     4.    On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

     5.    This Amended and Restated Certificate of Incorporation has been authorized and approved in all respects, without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholder of the Corporation, pursuant to that certain Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

     6.    This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan.

     7.    The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

     FIRST:    The name of the corporation is Lehman Commercial Paper Inc.

     SECOND:    The address of the registered office of the Corporation in the State of New York is Corporation Service Company, 80 State Street, Albany, New York, 12207.  The name of the registered agent of the Corporation in the State of New York at such address is Corporation Service Company.

     THIRD:    The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the BCL and (b) as contemplated by the Plan.

FOURTH:     The total number of shares of stock which the Corporation shall have authority to issue is one thousand (1,000) shares and the par value of each of such shares is one dollar ($1.00) amounting in the aggregate to one thousand dollars ($1,000). The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

FIFTH:     The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.     The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.     The number of directors which shall constitute the entire Board of Directors shall be three (3) persons.  The Board of Directors shall be comprised of (i) an individual who is a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc. ("LBHI") that is selected by the LBHI board of directors, (ii) an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors and acceptable to the Opco Plan Proponents (as defined in the Plan) who are PSA Creditors (as defined in the Plan), and (iii) an individual who is selected by the individuals appointed pursuant to (i) and (ii) of this section and who is independent from LBHI, the members of the Director Selection Committee (as defined in the Plan) and the Corporation.  Each director shall have an initial term, and if re-elected, subsequent terms of one year.  Each director elected in accordance with this Article Fifth, Section 2 shall hold office until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.     Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, or removal from office shall be filled by a vote of the stockholder of the Corporation (as directed by LBHI); provided that at all times the Board of Directors must be comprised of individuals that satisfy the requirements of Article Fifth, Section 2 hereof.

4.     A director may be removed from office by the stockholder of the Corporation (as directed by LBHI) only for cause.

5.     In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "By-Laws"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; provided, however, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is

proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or, unless a higher percentage is required by law or by the By-Laws, a majority of the entire Board of Directors then in office.

SIXTH:    Meetings of the stockholder may be held within or outside the State of New York, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the BCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

SEVENTH:    The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

EIGHTH:    Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Commercial Paper Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.

Lehman Commercial Paper Inc.

By: _____

    Name:

    Title: Authorized Representative

# LEHMAN COMMERCIAL PAPER INC.

Incorporated Under the Laws of the
State of New York

<u>AMENDED AND RESTATED
BY-LAWS</u>

ARTICLE I
OFFICES

        Lehman Commercial Paper Inc. (the "<u>Corporation</u>") shall maintain a registered office in the State of New York.  The Corporation may also have other offices at such places, either within or outside the State of New York, as the board of directors of the Corporation (the "<u>Board of Directors</u>") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

        Section 1.    <u>Place of Meetings</u>.  Meetings of the sole stockholder of the Corporation (the "<u>Stockholder</u>") for any purpose shall be held on such date, at such time and at such place, either within or outside the State of New York, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof.

        Section 2.    <u>Annual Meeting</u>.  The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall transact such business as is properly brought before the meeting.  Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

        Section 3.    <u>Special Meetings</u>.  Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "<u>Certificate of Incorporation</u>"), special meetings of the Stockholder may be called only by the Stockholder, the Chairman of the Board, the Chief Executive Officer, the President in the absence or disability of the Chairman of the Board and the Chief Executive Officer, or the Secretary at the request of the Board of Directors.  Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.  Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the stockholder.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of New York. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chairman of the Board, the Chief Executive Officer, the President or any director. Notice thereof stating the place, date and hour of the meeting shall be given to each director either (i) by mail or courier not less than forty-eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling

such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to any director who shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4. <u>Quorum</u>. Except as may be otherwise provided by law, the Certificate of Incorporation or these By-Laws, a majority of the entire Board of Directors shall be necessary to constitute a quorum for the transaction of business, and the vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors. Whether or not a quorum is present at a meeting of the Board of Directors, a majority of the directors present may adjourn the meeting to such time and place as they may determine without notice other than an announcement at the meeting.

Section 5. <u>Action Without A Meeting</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or the committee consent in writing or by electronic transmission to the adoption of a resolution authorizing the action. The resolution and the consents thereto in writing or by electronic transmission by the members of the Board of Directors or committee shall be filed with the minutes of the proceedings of the Board of Directors or such committee.

Section 6. <u>Participation By Telephone</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any one or more members of the Board of Directors or any committee thereof may participate in a meeting of the Board of Directors or such committee by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other. Participation by such means shall constitute presence in person at the meeting.

Section 7. <u>Compensation</u>. The directors may be paid their expenses, if any, for attendance at each meeting of the Board of Directors or any committee thereof and may be paid compensation as a director, committee member or chairman of any committee and for attendance at each meeting of the Board of Directors or committee thereof in such amounts as the Board of Directors may fix from time to time. No such payment shall preclude any director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8. <u>Resignation</u>. Any director may resign at any time. Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the Secretary. The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

# ARTICLE IV
## COMMITTEES

Section 1. <u>Committees</u>. The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of any such committee. In the absence or disqualification of a member of a committee, and in the absence of a designation by the Board of Directors of an alternate member to replace the absent or disqualified member, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may by unanimous vote appoint another member of the Board of Directors to act at the meeting in the place of any absent or disqualified member. Any committee, to the extent allowed by law and provided in the resolution establishing such committee or in the By-Laws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, but no such committee shall have the power or authority in reference to the following matters: (i) approving or adopting, or recommending to the stockholder, any action or matter expressly required by the New York Business Corporation Law ("<u>NYBCL</u>") to be submitted to the Stockholder for approval or (ii) adopting, amending or repealing any By-Law of the Corporation. All acts done by any committee within the scope of its powers and duties pursuant to these By-Laws and the resolutions adopted by the Board of Directors shall be deemed to be, and may be certified as being, done or conferred under authority of the Board of Directors. The Secretary or any Assistant Secretary is empowered to certify that any resolution duly adopted by any such committee is binding upon the Corporation and to execute and deliver such certifications from time to time as may be necessary or proper to the conduct of the business of the Corporation.

Section 2. <u>Resignation</u>. Any member of a committee may resign at any time. Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the Secretary. The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

Section 3. <u>Quorum</u>. A majority of the members of a committee shall constitute a quorum. The vote of a majority of the members of a committee present at any meeting at which a quorum is present shall be the act of such committee.

Section 4. <u>Record of Proceedings</u>. Each committee shall keep a record of its acts and proceedings, and shall report the same to the Board of Directors when and as required by the Board of Directors.

Section 5. <u>Organization, Meetings, Notices</u>. A committee may hold its meetings at the principal office of the Corporation, or at any other place upon which a majority of the committee may at any time agree. Each committee may make such rules

as it may deem expedient for the regulation and carrying on of its meetings and proceedings.

ARTICLE V
OFFICERS

Section 1.    General.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chairman of the Board, a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation one or more Vice Chairmen of the Board, a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.   The officers of the Corporation need not be stockholders or directors of the Corporation, except for the Chairman of the Board, if any, who must be a director.   Any office named or provided for in this Article V (including, without limitation, Chairman of the Board, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article V.

Section 2.    Election; Removal; Remuneration.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of a majority of the Board of Directors.   Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("LBHI"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("A&M") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall

cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise. Should the Chairman of the Board of Directors, if any, cease to be a director, he shall ipso facto cease to be such officer.

Section 3. <u>Voting Securities Owned by the Corporation</u>. Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4. <u>Chairman of the Board</u>. The Chairman of the Board may be, but need not be, a person other than the Chief Executive Officer of the Corporation. The Chairman of the Board may be, but need not be, an officer or employee of the Corporation. The Chairman of the Board shall preside at meetings of the Board of Directors and shall establish agendas for such meetings.

Section 5. <u>Chief Executive Officer</u>. The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors and any committee thereof of which he is a member, unless the Board of Directors or such committee shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have

such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7. <u>Vice Chairmen of the Board</u>. The Vice Chairmen of the Board shall be members of the Board of Directors and shall perform such duties and have such powers as may be prescribed by the Board of Directors, the Chairman of the Board or these By-Laws.

Section 8. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 9. <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10. <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and

on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 11.    Vice Presidents.    The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President.  Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 12.    Secretary.    The Secretary shall attend all meetings of the Board of Directors and its committees and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or its committees or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 13.    Assistant Secretaries.    Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 14.    Chief Financial Officer.    The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Chief Financial Officer may, subject to any contrary

direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 15.    <u>Treasurer</u>.  The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided.  The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 16.    <u>Assistant Treasurers</u>.  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 17.    <u>Controller</u>.  The Controller shall prepare and have the care and custody of the books of account of the Corporation.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 18.    <u>Additional Powers and Duties</u>.  In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall

perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 19.    Other Officers.  The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE VI
CAPITAL STOCK

Section 1.    Ownership.  The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated.  The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chairman of the Board, a Vice Chairman of the Board, the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2.    Signatures.  Any signature required to be on a certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

ARTICLE VII
INDEMNIFICATION

Section 1.    Indemnification of Officers and Directors:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest

extent and on the terms provided by <u>Section 721 through 726</u> of the NYBCL.  Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws.  No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

ARTICLE VIII<br>GENERAL

Section 1.     <u>Fiscal Year</u>.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.     <u>Corporate Seal</u>.  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, New York."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.     <u>Contracts, Instruments, Powers of Attorney</u>.  In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.     <u>Amendments</u>.     These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder or, unless a higher percentage is required by law or by the Certificate of Incorporation as to any matter which is the subject of these By-Laws, by a majority of the entire Board of Directors then in office.

Section 5.     Cessation of Officership and Directorship.  Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6.     Definitions.  As used in this Article and in these By-Laws generally, the term "entire Board of Directors" means the total number of directors which the Corporation would have if there were no vacancies.

Section 7.     Waivers.  Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the directors, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or any director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or director, as applicable, protests the lack of notice at the outset of the meeting.

Section 8.     Ratification.  Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized.  Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 9.     Conflicts with Plan.  Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

# EXHIBIT 1

## PART C – LEHMAN BROTHERS COMMODITY SERVICES INC.

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**LEHMAN BROTHERS COMMODITY SERVICES INC.**

Lehman Brothers Commodity Services Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.     The name of the Corporation is Lehman Brothers Commodity Services Inc.

2.     The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on February 13, 2008 pursuant to the DGCL.

3.     This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.     This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.     This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.     The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:        The name of the corporation is Lehman Brothers Commodity Services Inc.

SECOND:        The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808.  The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:        The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

<u>FOURTH</u>:　　The corporation shall be authorized to issue only one class of stock, to wit. common stock. The total number of shares of common stock that the corporation shall have authority to issue is one hundred (100), and the par value of each of the such shares shall be one dollar ($1.00). The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

<u>FIFTH</u>:　　The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.　　The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation. The election of directors need not be by written ballot.

2.　　The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc. The initial director shall have an initial term of one year. The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.　　Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.　　The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.　　In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "<u>By-Laws</u>"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; <u>provided</u>, <u>however</u>, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken. Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

SIXTH:  Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

SEVENTH:  The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

EIGHTH:  Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Commodity Services Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.


Lehman Brothers Commodity Services Inc.


By:_____

    Name:

    Title: Authorized Representative

# LEHMAN BROTHERS COMMODITY SERVICES INC.

Incorporated Under the Laws of the
State of Delaware

<u>AMENDED AND RESTATED
BY-LAWS</u>

ARTICLE I
OFFICES

Lehman Brothers Commodity Services Inc. (the "<u>Corporation</u>") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "<u>Board of Directors</u>") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1.    <u>Place of Meetings</u>.    Meetings of the sole stockholder of the Corporation (the "<u>Stockholder</u>") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.    <u>Annual Meeting</u>.    The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.    <u>Special Meetings</u>.    Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "<u>Certificate of Incorporation</u>"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4.  Quorum.  Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder, shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5.  Voting.  When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting.  The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "Plan").

Section 6.  Action by Stockholder Without a Meeting.  Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1.  Number; Election; Tenure; Qualification; Vacancies; Removal.  Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2.  Duties and Powers.  The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3.  Meetings.  The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors.  Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director.  Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4. <u>Quorum</u>. Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5. <u>Action Without A Meeting</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action. The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6. <u>Participation By Telephone</u>. Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other. Participation by such means shall constitute presence in person at the meeting.

Section 7. <u>Compensation</u>. The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time. No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8. <u>Resignation</u>. Any director may resign at any time. Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary. The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

## ARTICLE IV
## OFFICERS

Section 1.    General.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation, a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    Election; Removal; Remuneration.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("LBHI"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("A&M") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    Voting Securities Owned by the Corporation.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4. <u>Chief Executive Officer</u>. The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7. <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8. <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9. <u>Vice Presidents</u>. The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10. <u>Secretary</u>. The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11.    <u>Assistant Secretaries</u>.    Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12.    <u>Chief Financial Officer</u>.  The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13.    <u>Treasurer</u>.  The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14. <u>Assistant Treasurers</u>. Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15. <u>Controller</u>. The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16. <u>Additional Powers and Duties</u>. In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17. <u>Other Officers</u>. The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1. <u>Ownership</u>. The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2. <u>Signatures</u>. Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

ARTICLE VI
INDEMNIFICATION

Section 1.    Indemnification of Officers and Directors:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by Section 145 of the General Corporation Law of the State of Delaware.  Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws.  No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification

ARTICLE VII
GENERAL

Section 1.    Fiscal Year.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.     Corporate Seal.  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.     Contracts, Instruments, Powers of Attorney.  In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.     Amendments.     These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5.     Cessation of Officership and Directorship.  Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6.     Waivers.  Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7.     Ratification.  Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may

be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8. <u>Priority</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

# EXHIBIT 1

## PART D – LEHMAN BROTHERS SPECIAL FINANCING INC.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

# LEHMAN BROTHERS SPECIAL FINANCING INC.

Lehman Brothers Special Financing Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.       The name of the Corporation is Lehman Brothers Special Financing Inc.

2.       The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on August 17, 1984 pursuant to the DGCL.

3.       This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.       On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.       This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.       This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.       The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:       The name of the corporation is Lehman Brothers Special Financing Inc.

SECOND:       The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808.  The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:       The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

FOURTH:     The total number of shares of stock which the Corporation shall have authority to issue is one thousand (1,000) shares and the par value of each of such shares is one dollar ($1.00) amounting in the aggregate to one thousand dollars ($1,000). The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

FIFTH:     The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.     The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation. The election of directors need not be by written ballot.

2.     The number of directors which shall constitute the entire Board of Directors shall be three (3) persons. The Board of Directors shall be comprised of (i) an individual who is a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc. ("LBHI") that is selected by the LBHI board of directors, (ii) an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors and acceptable to the Opco Plan Proponents (as defined in the Plan) who are PSA Creditors (as defined in the Plan), and (iii) an individual who is selected by the individuals appointed pursuant to (i) and (ii) of this section and who is independent from LBHI, the members of the Director Selection Committee (as defined in the Plan) and the Corporation. Each director shall have an initial term, and if re-elected, subsequent terms of one year. Each director elected in accordance with this Article Fifth, Section 2 shall hold office until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.     Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, or removal from office shall be filled by a vote of the stockholder of the Corporation (as directed by LBHI); provided that at all times the Board of Directors must be comprised of individuals that satisfy the requirements of Article Fifth, Section 2 hereof.

4.     A director may be removed from office by the stockholder of the Corporation (as directed by LBHI) only for cause.

5.     In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "By-Laws"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; provided, however, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is

proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or, unless a higher percentage is required by law or by the By-Laws, a majority of the entire Board of Directors then in office.

SIXTH:        Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

SEVENTH:      The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

EIGHTH:       Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Special Financing Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.


Lehman Brothers Special Financing Inc.


By:_____
    Name:
    Title: Authorized Representative

# LEHMAN BROTHERS SPECIAL FINANCING INC.

Incorporated Under the Laws of the
State of Delaware

AMENDED AND RESTATED
BY-LAWS

ARTICLE I
OFFICES

Lehman Brothers Special Financing Inc. (the "<u>Corporation</u>") shall maintain a registered office in the State of Delaware.  The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "<u>Board of Directors</u>") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1.    <u>Place of Meetings</u>.    Meetings of the sole stockholder of the Corporation (the "<u>Stockholder</u>") for any purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof.  Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.    <u>Annual Meeting</u>.  The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall transact such business as is properly brought before the meeting.  Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.    <u>Special Meetings</u>.    Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "<u>Certificate of Incorporation</u>"), special meetings of the Stockholder may be called only by the Stockholder, the Chairman of the Board, the Chief Executive Officer, the President in the absence or disability of the Chairman of the Board and the Chief Executive Officer, or the Secretary at the request of the Board of Directors.  Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60)

days before the date of the meeting to the Stockholder. Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4.    Quorum.  Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5.    Voting.  When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting.  The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "Plan").

Section 6.    Action by Stockholder Without a Meeting.  Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

## ARTICLE III
## DIRECTORS

Section 1.    Number; Election; Tenure; Qualification; Vacancies; Removal. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of directors are addressed in the Certificate of Incorporation.

Section 2.    Duties and Powers.  The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3.    Meetings.  The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors.  Special meetings of the Board of Directors may be called by the Chairman of the Board, the Chief Executive Officer, the President or any director.  Notice thereof stating the place, date and hour of the meeting shall be given to each director either (i) by mail or courier

not less than forty-eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to any director who shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.    <u>Quorum</u>.    Except as may be otherwise provided by law, the Certificate of Incorporation or these By-Laws, a majority of the entire Board of Directors shall be necessary to constitute a quorum for the transaction of business, and the vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  Whether or not a quorum is present at a meeting of the Board of Directors, a majority of the directors present may adjourn the meeting to such time and place as they may determine without notice other than an announcement at the meeting.

Section 5.    <u>Action Without A Meeting</u>.    Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or the committee consent in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consents thereto in writing or by electronic transmission by the members of the Board of Directors or committee shall be filed with the minutes of the proceedings of the Board of Directors or such committee.

Section 6.    <u>Participation By Telephone</u>.    Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any one or more members of the Board of Directors or any committee thereof may participate in a meeting of the Board of Directors or such committee by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other. Participation by such means shall constitute presence in person at the meeting.

Section 7.    <u>Compensation</u>.    The directors may be paid their expenses, if any, for attendance at each meeting of the Board of Directors or any committee thereof and may be paid compensation as a director, committee member or chairman of any committee and for attendance at each meeting of the Board of Directors or committee thereof in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude any director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    <u>Resignation</u>.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the

Secretary. The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

## ARTICLE IV
## COMMITTEES

Section 1.    Committees.  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of any such committee.  In the absence or disqualification of a member of a committee, and in the absence of a designation by the Board of Directors of an alternate member to replace the absent or disqualified member, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may by unanimous vote appoint another member of the Board of Directors to act at the meeting in the place of any absent or disqualified member.  Any committee, to the extent allowed by law and provided in the resolution establishing such committee or in the By-Laws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, but no such committee shall have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the Stockholder, any action or matter expressly required by the Delaware General Corporation Law to be submitted to the Stockholder for approval or (ii) adopting, amending or repealing any By-Law of the Corporation.  All acts done by any committee within the scope of its powers and duties pursuant to these By-Laws and the resolutions adopted by the Board of Directors shall be deemed to be, and may be certified as being, done or conferred under authority of the Board of Directors.  The Secretary or any Assistant Secretary is empowered to certify that any resolution duly adopted by any such committee is binding upon the Corporation and to execute and deliver such certifications from time to time as may be necessary or proper to the conduct of the business of the Corporation.

Section 2.    Resignation.  Any member of a committee may resign at any time. Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chairman of the Board, or if none, by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

Section 3.    Quorum.   A majority of the members of a committee shall constitute a quorum.  The vote of a majority of the members of a committee present at any meeting at which a quorum is present shall be the act of such committee.

Section 4.    Record of Proceedings.  Each committee shall keep a record of its acts and proceedings, and shall report the same to the Board of Directors when and as required by the Board of Directors.

Section 5.     Organization, Meetings, Notices.   A committee may hold its meetings at the principal office of the Corporation, or at any other place upon which a majority of the committee may at any time agree.  Each committee may make such rules as it may deem expedient for the regulation and carrying on of its meetings and proceedings.

ARTICLE V
OFFICERS

Section 1.     General.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chairman of the Board, a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation one or more Vice Chairmen of the Board, a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.   The officers of the Corporation need not be stockholders or directors of the Corporation, except for the Chairman of the Board, if any, who must be a director.   Any office named or provided for in this Article V (including, without limitation, Chairman of the Board, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article V.

Section 2.     Election; Removal; Remuneration.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of a majority of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("LBHI"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("A&M") or any affiliates of

A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise. Should the Chairman of the Board of Directors, if any, cease to be a director, he shall ipso facto cease to be such officer.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Corporation may be executed in the name of  and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present.  The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4.    <u>Chairman of the Board</u>.  The Chairman of the Board may be, but need not be, a person other than the Chief Executive Officer of the Corporation.  The Chairman of the Board may be, but need not be, an officer or employee of the Corporation. The Chairman of the Board shall preside at meetings of the Board of Directors and shall establish agendas for such meetings.

Section 5.    <u>Chief Executive Officer</u>.  The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors and any committee thereof of which he is a member, unless the Board of Directors or such committee shall have chosen another chairman.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6.    <u>President</u>.  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in

the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7. <u>Vice Chairmen of the Board</u>. The Vice Chairmen of the Board shall be members of the Board of Directors and shall perform such duties and have such powers as may be prescribed by the Board of Directors, the Chairman of the Board or these By-Laws.

Section 8. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 9. <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10. <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the

Board, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 11. <u>Vice Presidents</u>. The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chairman of the Board, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 12. <u>Secretary</u>. The Secretary shall attend all meetings of the Board of Directors and its committees and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary shall keep in safe custody the seal of the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or its committees or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 13. <u>Assistant Secretaries</u>. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 14. <u>Chief Financial Officer</u>. The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually

appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws.  The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 15.    Treasurer.  The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided.  The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 16.    Assistant Treasurers.    Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 17.    Controller.  The Controller shall prepare and have the care and custody of the books of account of the Corporation.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 18.    <u>Additional Powers and Duties</u>.    In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 19.    <u>Other Officers</u>.  The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

## ARTICLE VI
## CAPITAL STOCK

Section 1.    <u>Ownership</u>.  The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated.    The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chairman of the Board, a Vice Chairman of the Board, the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2.    <u>Signatures</u>.  Any signature required to be on a certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    <u>Lost, Stolen or Destroyed Certificate</u>.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

## ARTICLE VII
## INDEMNIFICATION

Section 1.    <u>Indemnification of Officers and Directors</u>:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation,

including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by <u>Section 145</u> of the Delaware General Corporation Law. Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws. No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

ARTICLE VIII
GENERAL

Section 1.    <u>Fiscal Year</u>.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.    <u>Corporate Seal</u>.  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.    <u>Contracts, Instruments, Powers of Attorney</u>.  In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.    <u>Amendments</u>.  These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder or, unless a higher percentage is required by law or by

the Certificate of Incorporation as to any matter which is the subject of these By-Laws, by a majority of the entire Board of Directors then in office.

Section 5. <u>Cessation of Officership and Directorship</u>. Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6. <u>Definitions</u>. As used in this Article and in these By-Laws generally, the term "entire Board of Directors" means the total number of directors which the Corporation would have if there were no vacancies.

Section 7. <u>Waivers</u>. Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the directors, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or any director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or director, as applicable, protests the lack of notice at the outset of the meeting.

Section 8. <u>Ratification</u>. Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 9. <u>Conflicts with Plan</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

# EXHIBIT 1

## PART E – LEHMAN BROTHERS OTC DERIVATIVES INC.

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**LEHMAN BROTHERS OTC DERIVATIVES INC.**

Lehman Brothers OTC Derivatives Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.　　The name of the Corporation is Lehman Brothers OTC Derivatives Inc.

2.　　The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on July 31, 2001 pursuant to the DGCL.

3.　　This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.　　On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.　　This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.　　This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.　　The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:　　The name of the corporation is Lehman Brothers OTC Derivatives Inc.

SECOND:　　The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808. The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:　　The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

FOURTH:     The total number of shares of stock which the Corporation shall have authority to issue is one hundred (100) and the par value of each of the such shares is one dollar ($1.00) amounting in the aggregate to one hundred dollars ($100.00).  The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

FIFTH:     The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.     The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.     The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc.  The initial director shall have an initial term of one year.  The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.     Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.     The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.     In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "By-Laws"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; provided, however, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

SIXTH:      Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

SEVENTH:    The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

EIGHTH:     Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers OTC Derivatives Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ____ day of ____, 201__.

Lehman Brothers OTC Derivatives Inc.

By: _____
      Name:
      Title: Authorized Representative

# LEHMAN BROTHERS OTC DERIVATIVES INC.

Incorporated Under the Laws of the
State of Delaware

AMENDED AND RESTATED
BY-LAWS

## ARTICLE I
## OFFICES

Lehman Brothers OTC Derivatives Inc. (the "Corporation") shall maintain a registered office in the State of Delaware.  The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "Board of Directors") may from time to time designate or the business of the Corporation may require.

## ARTICLE II
## STOCKHOLDER

Section 1.     Place of Meetings.    Meetings of the sole stockholder of the Corporation (the "Stockholder") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof.  Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.     Annual Meeting.  The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting.  Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.     Special Meetings.   Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "Certificate of Incorporation"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors.  Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director. Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.    <u>Quorum</u>.  Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5.    <u>Action Without A Meeting</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.    <u>Participation By Telephone</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other.  Participation by such means shall constitute presence in person at the meeting.

Section 7.    <u>Compensation</u>.  The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    <u>Resignation</u>.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

## ARTICLE IV
## OFFICERS

Section 1.    <u>General</u>.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    <u>Election; Removal; Remuneration</u>.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("<u>A&M</u>") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4. <u>Chief Executive Officer</u>. The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7.     <u>Executive Vice Presidents</u>.  The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8.     <u>Senior Vice Presidents</u>.    The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9.     <u>Vice Presidents</u>.    The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President.  Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.     <u>Secretary</u>.  The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11. <u>Assistant Secretaries</u>. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12. <u>Chief Financial Officer</u>. The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13. <u>Treasurer</u>. The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14. <u>Assistant Treasurers</u>. Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15. <u>Controller</u>. The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16. <u>Additional Powers and Duties</u>. In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17. <u>Other Officers</u>. The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1. <u>Ownership</u>. The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2. <u>Signatures</u>. Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

## ARTICLE VI
## INDEMNIFICATION

Section 1.    Indemnification of Officers and Directors:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by Section 145 of the General Corporation Law of the State of Delaware.  Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws.  No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

## ARTICLE VII
## GENERAL

Section 1.    Fiscal Year.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2. <u>Corporate Seal</u>. The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware." The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3. <u>Contracts, Instruments, Powers of Attorney</u>. In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4. <u>Amendments</u>. These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be. All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5. <u>Cessation of Officership and Directorship</u>. Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6. <u>Waivers</u>. Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7. <u>Ratification</u>. Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may

be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8. <u>Priority</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

**EXHIBIT 1**

**PART F – LEHMAN BROTHERS COMMERCIAL CORPORATION**

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

# LEHMAN BROTHERS COMMERCIAL CORPORATION

Lehman Brothers Commercial Corporation (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.　　The name of the Corporation is Lehman Brothers Commercial Corporation.

2.　　The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on December 8, 1977 pursuant to the DGCL.

3.　　This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.　　On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.　　This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.　　This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.　　The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:　　The name of the corporation is Lehman Brothers Commercial Corporation.

SECOND:　　The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808. The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:        The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

FOURTH:        The total number of shares of stock which the Corporation shall have authority to issue is one thousand (1,000) and the par value of each of such shares is one dollar ($1.00) amounting in the aggregate to one thousand dollars ($1,000). The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

FIFTH:        The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.        The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation. The election of directors need not be by written ballot.

2.        The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc. The initial director shall have an initial term of one year. The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.        Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.        The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.        In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "By-Laws"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; provided, however, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken. Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

SIXTH:        Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

SEVENTH:    The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

EIGHTH:      Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Commercial Corporation has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.

Lehman Brothers Commercial Corporation

By:_____

    Name:

    Title: Authorized Representative

**LEHMAN BROTHERS COMMERCIAL CORPORATION**

Incorporated Under the Laws of the
State of Delaware

<u>AMENDED AND RESTATED
BY-LAWS</u>

ARTICLE I
OFFICES

Lehman Brothers Commercial Corporation (the "<u>Corporation</u>") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "<u>Board of Directors</u>") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1. <u>Place of Meetings</u>. Meetings of the sole stockholder of the Corporation (the "<u>Stockholder</u>") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2. <u>Annual Meeting</u>. The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3. <u>Special Meetings</u>. Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "<u>Certificate of Incorporation</u>"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director. Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.    Quorum.  Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5.    Action Without A Meeting.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.    Participation By Telephone.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other.  Participation by such means shall constitute presence in person at the meeting.

Section 7.    Compensation.  The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    Resignation.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

ARTICLE IV
OFFICERS

Section 1.    <u>General</u>.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    <u>Election; Removal; Remuneration</u>.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("<u>A&M</u>") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4.  <u>Chief Executive Officer</u>.  The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5.  <u>President</u>.  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6.  <u>Chief Operating Officers</u>.  The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors.  In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7.     Executive Vice Presidents.  The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8.     Senior Vice Presidents.    The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9.     Vice Presidents.    The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President.  Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.    Secretary.  The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11. <u>Assistant Secretaries</u>. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12. <u>Chief Financial Officer</u>. The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13. <u>Treasurer</u>. The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14. <u>Assistant Treasurers</u>. Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15. <u>Controller</u>. The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16. <u>Additional Powers and Duties</u>. In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17. <u>Other Officers</u>. The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1. <u>Ownership</u>. The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2. <u>Signatures</u>. Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.    Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

## ARTICLE VI
## INDEMNIFICATION

Section 1.    Indemnification of Officers and Directors:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by Section 145 of the General Corporation Law of the State of Delaware.  Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws.  No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

## ARTICLE VII
## GENERAL

Section 1.    Fiscal Year.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.    Corporate Seal.    The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.    Contracts, Instruments, Powers of Attorney.    In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.    Amendments.    These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5.    Cessation of Officership and Directorship.    Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6.    Waivers.    Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7.    Ratification.    Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may

be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8.    <u>Conflicts with Plan</u>.  Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

# EXHIBIT 1

## PART G – LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

# LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

Lehman Brothers Derivative Products Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.     The name of the Corporation is Lehman Brothers Derivative Products Inc.

2.     The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on April 1, 1998 pursuant to the DGCL.

3.     This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.     This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.     This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.     The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:          The name of the corporation is Lehman Brothers Derivative Products Inc.

SECOND:       The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808.  The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:          The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

<u>FOURTH</u>:	The total number of shares of stock which the Corporation shall have authority to issue is one hundred (100) and the par value of each of such shares is one dollar ($1.00) amounting in the aggregate to one hundred dollars ($100.00).  The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

<u>FIFTH</u>:	The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.	The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.	The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc.  The initial director shall have an initial term of one year.  The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.	Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.	The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.	In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "<u>By-Laws</u>"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; <u>provided</u>, <u>however</u>, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

<u>SIXTH</u>:

1.	<u>Limitation of Directors' Liability</u>.

(a)     No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except, to the extent provided by applicable law, for liability (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the DGCL or (iv) for any transaction from which the director derived an improper personal benefit If the DGCL is hereafter amended to authorize corporate action further limiting or eliminating the personal liability of directors, then the liability of each director of the Corporation shall be limited or eliminated to the full extent permitted by the DGCL as so amended from time to time.

(b)     Neither the amendment nor repeal of this Section 1, nor the adoption of any provision of the Certificate of Incorporation inconsistent with this Article Sixth, shall eliminate or reduce the effect of this Article Sixth, in respect of any matter occurring, or any cause of action, suit or claim that, but for this Article Sixth, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

2.      <u>Indemnification of Officers And Directors</u>.

(a)     The Corporation shall indemnify each of its directors or officers, who shall serve as a director or officer of the Corporation or of any other corporation at the request of the Corporation, to the fullest extent permitted under and in accordance with the laws of the State of Delaware.

(b)     Any repeal or modification of this Article Sixth, Section 2 by the stockholders of the Corporation shall not adversely affect any rights to indemnification that any person may have at the time of such repeal or modification with respect to any acts or omissions occurring prior to such repeal or modification.

<u>SEVENTH</u>:     Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

<u>EIGHTH</u>:     The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

<u>NINTH</u>:     Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Derivative Products Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.

Lehman Brothers Derivative Products Inc.

By: _____

    Name:
    Title: Authorized Representative

# LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.

Incorporated Under the Laws of the
State of Delaware

## AMENDED AND RESTATED
## BY-LAWS

## ARTICLE I
## OFFICES

Lehman Brothers Derivative Products Inc. (the "Corporation") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "Board of Directors") may from time to time designate or the business of the Corporation may require.

## ARTICLE II
## STOCKHOLDER

Section 1.     Place of Meetings.     Meetings of the sole stockholder of the Corporation (the "Stockholder") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.     Annual Meeting.     The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.     Special Meetings.     Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "Certificate of Incorporation"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director. Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.    <u>Quorum</u>.  Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5.    <u>Action Without A Meeting</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.    <u>Participation By Telephone</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other.  Participation by such means shall constitute presence in person at the meeting.

Section 7.    <u>Compensation</u>.  The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    <u>Resignation</u>.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

## ARTICLE IV
## OFFICERS

Section 1.    <u>General</u>.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    <u>Election; Removal; Remuneration</u>.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("<u>A&M</u>") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4. <u>Chief Executive Officer</u>. The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7.    Executive Vice Presidents.   The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8.    Senior Vice Presidents.   The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9.    Vice Presidents.   The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.    Secretary.   The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11. <u>Assistant Secretaries</u>. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12. <u>Chief Financial Officer</u>. The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13. <u>Treasurer</u>. The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14. <u>Assistant Treasurers</u>. Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15. <u>Controller</u>. The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16. <u>Additional Powers and Duties</u>. In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17. <u>Other Officers</u>. The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1. <u>Ownership</u>. The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2. <u>Signatures</u>. Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3. <u>Lost, Stolen or Destroyed Certificate</u>. The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed. When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

# ARTICLE VI
# INDEMNIFICATION

Section 1. <u>Indemnification of Officers and Directors</u>: The Corporation shall indemnify every person who was or is a party or is or was threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director, officer or employee of the Corporation or, while a director, officer or employee of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, agent or trustee of another company, partnership, joint venture, trust, employee benefit plan or other enterprise, against expenses (including counsel fees), judgments, fines and amounts paid in settlement, in each case to the extent actually and reasonably incurred by him in connection with such action, suit or proceeding, to the full extent permitted by applicable law. Expenses incurred by a person who is or was a director or officer of the Corporation in appearing at, participating in or defending any such action, suit or proceeding shall be paid by the Corporation at reasonable intervals in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized by this Article VI. If a claim under this Article VI is not paid in full by the Corporation within ninety days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the Delaware General Corporation Law or other applicable law for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or the Stockholder) to have made a determination

prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable standard of conduct set forth in the Delaware General Corporation Law or other applicable law, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or the Stockholder) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

ARTICLE VII
GENERAL

Section 1. <u>Fiscal Year</u>. The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2. <u>Corporate Seal</u>. The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware." The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3. <u>Contracts, Instruments, Powers of Attorney</u>. In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4. <u>Amendments</u>. These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be. All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5. <u>Cessation of Officership and Directorship</u>. Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6. <u>Waivers</u>. Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized

to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7. <u>Ratification</u>. Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8. <u>Priority</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

# EXHIBIT 1

## PART H – LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

# LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

Lehman Brothers Financial Products Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

1.      The name of the Corporation is Lehman Brothers Financial Products Inc.

2.      The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on December 3, 1993 pursuant to the DGCL.

3.      This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

4.      On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.      This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

6.      This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.      The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

FIRST:        The name of the corporation is Lehman Brothers Financial Products Inc.

SECOND:        The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808.  The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

THIRD:        The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

FOURTH:     The total number of shares of all classes of capital stock that the Corporation is authorized to issue is 1,000 shares of common stock, par value $.01 per share. The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

FIFTH:     The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.     The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.     The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc.  The initial director shall have an initial term of one year.  The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.     Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.     The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.     In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "By-Laws"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; provided, however, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

SIXTH:

1.     Limitation of Directors' Liability.  (a)  No director of the Corporation shall be personally liable to the Corporation or the stockholder for monetary damages for breach of fiduciary duty as a director, except, to the extent provided by applicable law, for liability (1) for

breach of the director's duty of loyalty to the Corporation or the stockholder, (ii) for acts or omissions not in good faith or which involve intentional. misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit.  If the Delaware General Corporation Law is hereafter amended to authorize corporate action further limiting or eliminating the personal liability of directors, then the liability of mach director of the Corporation shall be limited or eliminated to the full extent permitted by the Delaware General Corporation Law as so amended from time to time.

(b)      Neither the amendment nor repeal of this Article Sixth, nor the adoption of any provision of the Certificate of Incorporation inconsistent with this Article Sixth, shall eliminate or reduce the effect of this Article Sixth, in respect or any matter occurring, or any cause of action, suit or claim that, but for this Article Sixth, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

2.      <u>Indemnification of Officers and Directors</u>.  (a)  The Corporation shall indemnify each of its directors or officers, who shall serve as a director or officer of the Corporation or of any other corporation at the request of the Corporation, to the fullest extent permitted under and in accordance with the laws of the State of Delaware.

(b)      Any repeal or modification of this Section 2 by the stockholder of the Corporation shall not adversely affect any rights to indemnification that any person may have at the time of such repeal or modification with respect to any acts or omissions occurring prior to such repeal or modification.

<u>SEVENTH</u>:      Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

<u>EIGHTH</u>:      The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

<u>NINTH</u>:      Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Lehman Brothers Financial Products Inc. has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.


Lehman Brothers Financial Products Inc.


By:_____
    Name:
    Title: Authorized Representative

## LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

Incorporated Under the Laws of the
State of Delaware

AMENDED AND RESTATED
BY-LAWS

ARTICLE I
OFFICES

Lehman Brothers Financial Products Inc. (the "Corporation") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "Board of Directors") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1. Place of Meetings. Meetings of the sole stockholder of the Corporation (the "Stockholder") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2. Annual Meeting. The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3. Special Meetings. Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "Certificate of Incorporation"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4. <u>Quorum</u>. Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5. <u>Voting</u>. When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting. The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "<u>Plan</u>").

Section 6. <u>Action by Stockholder Without a Meeting</u>. Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1. <u>Number; Election; Tenure; Qualification; Vacancies; Removal</u>. Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2. <u>Duties and Powers</u>. The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3. <u>Meetings</u>. The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors. Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director. Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.     <u>Quorum</u>.  Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5.     <u>Action Without A Meeting</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.     <u>Participation By Telephone</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other.  Participation by such means shall constitute presence in person at the meeting.

Section 7.     <u>Compensation</u>.  The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.     <u>Resignation</u>.   Any director may resign at any time.   Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

ARTICLE IV
OFFICERS

Section 1.    <u>General</u>.  The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    <u>Election; Removal; Remuneration</u>.  The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("<u>A&M</u>") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.  Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4.    <u>Chief Executive Officer</u>.    The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5.    <u>President</u>.    The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6.    <u>Chief Operating Officers</u>.    The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7.    <u>Executive Vice Presidents</u>.  The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8.    <u>Senior Vice Presidents</u>.    The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9.    <u>Vice Presidents</u>.    The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President.  Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.    <u>Secretary</u>.  The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11. <u>Assistant Secretaries</u>. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12. <u>Chief Financial Officer</u>. The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13. <u>Treasurer</u>. The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14. <u>Assistant Treasurers</u>. Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15. <u>Controller</u>. The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16. <u>Additional Powers and Duties</u>. In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17. <u>Other Officers</u>. The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1. <u>Ownership</u>. The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2. <u>Signatures</u>. Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3. <u>Lost, Stolen or Destroyed Certificate</u>. The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed. When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

ARTICLE VI
INDEMNIFICATION

Section 1. <u>Indemnification of Officers and Directors</u>: The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by <u>Section 145</u> of the General Corporation Law of the State of Delaware. Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws. No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

ARTICLE VII
GENERAL

Section 1. <u>Fiscal Year</u>. The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2. <u>Corporate Seal</u>. The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware." The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3. <u>Contracts, Instruments, Powers of Attorney</u>. In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4. <u>Amendments</u>. These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be. All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5. <u>Cessation of Officership and Directorship</u>. Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6. <u>Waivers</u>. Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7. <u>Ratification</u>. Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may

be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8. <u>Priority</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

**EXHIBIT 1**

**PART I – LB 745 LLC**

## LB 745 LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of LB 745 LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Lehman Brothers Holdings Inc., a Delaware corporation, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

1.     **Formation**

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act").  A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on October 18, 2001, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto.  The Member shall have no obligation to make any further capital contributions to the Company.

2.     **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

3.      **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

4.      **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

5.      **Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)   <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)   <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)   <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)   <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)   <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

**6.   <u>Officers/Authority</u>**

(a)   <u>Officers</u>:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b) <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c) <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d) <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e) <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)    Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)    Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)    Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President.  The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)    President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)    Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     Chief Financial Officer: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     Executive Vice Presidents. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     Senior Vice Presidents. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)    Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)    Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)    Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     Controller:  The Controller shall prepare and have the care and custody of the books of account of the Company. The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     Assistant Officers:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary. Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     Voting Stock of Subsidiary Corporations:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present. The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t) <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7. **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8. **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9. **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10. **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11.    **Indemnification; Insurance**

(a)    The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, (other than an action or suit by or in the right of the corporation to procure a judgment in its favor) by reason of the fact that such person is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis*, with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)    The Company may purchase and maintain insurance on behalf of any person who is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12.    **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by

LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

### 13. Tax Characterization of the Company

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

### 14. Seal

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

### 15. Records

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

### 16. Non-Voting Securities

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

### 17. Amendment

This Agreement may be amended and/or restated at any time with the written consent of the Member.

18. **Assignments**

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

19. **Priority**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

20. **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

Name: [•]

Title: Member

**SCHEDULE I**

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Lehman Brothers Holdings Inc. | $1000 | 100% |

# EXHIBIT 1

## PART J – PAMI STATLER ARMS LLC

# PAMI STATLER ARMS LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of PAMI Statler Arms LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by PAMI LLC, a Delaware limited liability company, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

## 1.     Formation

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on March 8, 2006, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

## 2.     Definitions

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

### 3. Registered Office and Principal Place of Business

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

### 4. Business

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

### 5. Management of the Company

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)     Place of Meetings

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager.  In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)     Regular Meetings

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager.  Such regular meetings may be held without notice.

(e)     Special Meetings

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)     Action Without a Meeting

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office.  Any written consent may be executed and given by facsimile, Electronic Transmission or similar means.  Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)     Compensation

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting.  Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

6.     **Officers/Authority**

(a)     Officers:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)  Number:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)  Election; Term of Office and Qualifications:  The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)  Removal of Officers:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)  Resignation:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company.  The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     Chief Financial Officer: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     Executive Vice Presidents. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     Senior Vice Presidents. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each

Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief

Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     <u>Controller</u>:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     <u>Assistant Officers</u>:   Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.   Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     <u>Voting Stock of Subsidiary Corporations</u>:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

**7.      Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

**8.      Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

**9.      Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

**10.     Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory

would otherwise be subject by reason of (i) any act or omission of such Manager, officer or authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. Indemnification; Insurance

(a) The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b) The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

12. **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

**16.** <u>**Non-Voting Securities**</u>

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

**17.** <u>**Amendment**</u>

This Agreement may be amended and/or restated at any time with the written consent of the Member.

**18.** <u>**Assignments**</u>

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**19.** <u>**Priority**</u>

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

**20.** <u>**Governing Law**</u>

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this ___ day of [•], 2011.

**PAMI LLC**

By: _____

       Name: [•]

       Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| PAMI LLC | $1000 | 100% |

**EXHIBIT 1**

**PART K – CES AVIATION LLC**

## CES AVIATION LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of CES Aviation LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Lehman Brothers Holdings Inc., a Delaware corporation, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

1.     **Formation**

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on August 8, 2001, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

2.     **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

3.      **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company.  The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

4.      **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

5.      **Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI.  The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)     Place of Meetings

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)     Regular Meetings

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)     Special Meetings

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)     Action Without a Meeting

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)     Compensation

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

## 6.     **Officers/Authority**

(a)     Officers:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)  <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)  <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)  <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)  <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)  Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)  Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)  Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President.  The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)  President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)  Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k) <u>Chief Financial Officer</u>: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l) <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m) <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     <u>Controller</u>:  The Controller shall prepare and have the care and custody of the books of account of the Company. The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     <u>Assistant Officers</u>:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary. Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     <u>Voting Stock of Subsidiary Corporations</u>:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present. The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)    <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.    **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.    **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.    **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. Indemnification; Insurance

(a)     The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)     The Company may purchase and maintain insurance on behalf of any person who is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12. Fiscal Year

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

16. **Non-Voting Securities**

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

17. **Amendment**

This Agreement may be amended and/or restated at any time with the written consent of the Member.

18. **Assignments**

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to

this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**19.** **Conflicts with Plan**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

**20.** **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

        Name: [•]

        Title: Member

**SCHEDULE I**

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Lehman Brothers Holdings Inc. | $1000 | 100% |

**EXHIBIT 1**

**PART L – CES AVIATION V LLC**

# CES AVIATION V LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of CES Aviation V LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Lehman Brothers Holdings Inc., a Delaware corporation, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [•] by the Bankruptcy Court (the "Plan").

1.     **Formation**

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on December 19, 2003, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

2.     **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

3.      **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

4.      **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

5.      **Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)     <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)     <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)     <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)     <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)     <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

## 6.     <u>Officers/Authority</u>

(a)     <u>Officers</u>:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b) <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c) <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d) <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e) <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company.  The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     <u>Filling of Vacancies</u>:  A vacancy in any office shall be filled by the Board of Managers.

(g)     <u>Compensation</u>:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     <u>Chief Executive Officer</u>:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     <u>President</u>:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     <u>Chief Operating Officer</u>:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     <u>Chief Financial Officer</u>: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each

Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)    Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and affix in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)    Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)    Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief

Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     <u>Controller</u>:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     <u>Assistant Officers</u>:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.  Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     <u>Voting Stock of Subsidiary Corporations</u>:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)    <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.    **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.    **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.    **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. Indemnification; Insurance

(a)     The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)     The Company may purchase and maintain insurance on behalf of any person who is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12. Fiscal Year

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

## 13.    Tax Characterization of the Company

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes.  For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes.  The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

## 14.    Seal

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure.  The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

## 15.    Records

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time.  The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act.  The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

## 16.    Non-Voting Securities

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

## 17.    Amendment

This Agreement may be amended and/or restated at any time with the written consent of the Member.

## 18.    Assignments

The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to

this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

19.    **Priority**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

20.    **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

       Name: [•]

       Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Lehman Brothers Holdings Inc. | $1000 | 100% |

**EXHIBIT 1**

**PART M – CES AVIATION IX LLC**

# CES AVIATION IX LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of CES Aviation IX LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Lehman Brothers Holdings Inc., a Delaware corporation, as the sole member of the Company (the "Member").

**RECITALS**:

(a)  On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)  This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

1.  Formation

(a)  The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act").  A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on December 4, 2006, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)  The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto.  The Member shall have no obligation to make any further capital contributions to the Company.

2.  **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

**3.      Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company.  The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

**4.      Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

**5.      Management of the Company**

(a)      Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)      The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI.  The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)     Place of Meetings

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)     Regular Meetings

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)     Special Meetings

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)     Action Without a Meeting

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)     Compensation

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

**6.     Officers/Authority**

(a)     Officers:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b) <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c) <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d) <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e) <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:   The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers. The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:   The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided. The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     <u>Chief Financial Officer</u>:  The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     <u>Executive Vice Presidents</u>.  The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     <u>Senior Vice Presidents</u>.   The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each

Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)    <u>Vice Presidents</u>:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and affix in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)    <u>Secretary</u>:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)    <u>Treasurer</u>:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief

Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     <u>Controller</u>:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     <u>Assistant Officers</u>:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.  Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     <u>Voting Stock of Subsidiary Corporations</u>:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11.    Indemnification; Insurance

(a)    The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis*, with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)    The Company may purchase and maintain insurance on behalf of any person who is or was a Manager, officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12.    Fiscal Year

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

16. **Non-Voting Securities**

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

17. **Amendment**

This Agreement may be amended and/or restated at any time with the written consent of the Member.

18. **Assignments**

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to

this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

19. **Priority**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

20. **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____

       Name: [•]

       Title: Member

**SCHEDULE I**

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Lehman Brothers Holdings Inc. | $1000 | 100% |

**EXHIBIT 1**

**PART N – BNC MORTGAGE LLC**

# BNC MORTGAGE LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of BNC Mortgage LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Aurora Bank FSB, a federally charted bank, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

1.     **Formation**

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act").  A Certificate of Incorporation of the Company was filed with the Secretary of State of the State of Delaware on January 13, 1998 and the Certificate of Conversion from a corporation to a limited liability company was filed with the Secretary of State of the State of Delaware on March 1, 2007, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto.  The Member shall have no obligation to make any further capital contributions to the Company.

2.     **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

3.    **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company.  The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

4.    **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

5.    **Management of the Company**

(a)    Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)    The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI.  The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)    <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)    <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)    <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)    <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)    <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

## 6.    <u>Officers/Authority</u>

(a)    <u>Officers</u>:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)    <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)    <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)    <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)    <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company.  The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     Chief Financial Officer: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     Executive Vice Presidents. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     Senior Vice Presidents. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q) <u>Controller</u>: The Controller shall prepare and have the care and custody of the books of account of the Company. The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r) <u>Assistant Officers</u>: Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary. Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s) <u>Voting Stock of Subsidiary Corporations</u>: Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present. The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     Contracts, Instruments, Powers of Attorneys:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     Allocations, Distributions, Profits and Losses

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     Term

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     Bankruptcy of Member.

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    Liability

(a)     Liability of Members.  No Member will be bound by, or be personally liable for, the expenses, debts, liabilities or obligations of the Company or be personally liable to any person in connection with the assets, acts, obligations or affairs of the Company.  To the fullest extent provided by law, each Member and its agents shall be indemnified and held harmless by the Company (but not by any Member) from and against any and all claims, demands, liabilities, costs, damages and causes of action of any nature whatsoever (including without limitation reasonable attorneys' fees or other expenses incurred in connection with settlement or any legal proceeding, but excluding income taxes payable by such Member as a result of such Member's ownership of an interest in the Company) arising out of actions taken by such Member.  The indemnification rights contained in this section shall be cumulative of, and in addition to, any and all

rights, remedies and recourse to which a Member may be entitled, whether pursuant to the provisions of this Agreement, by contract, at law or in equity. Indemnifications hereunder shall be made from assets of the Company and no Member shall be personally liable to any indemnitee.

(b)     Liability of Managers, Officers, Employees and Agents.  No Manager, officer, employee or agent of the Company in such capacity will be bound by, or be personally liable for, the expenses, debts, liabilities or obligations of the Company or be personally liable to any person in connection with the assets, acts, obligations or affairs of the Company; provided, however, that the preceding shall not protect any Manager, officer, employee or agent against any liability to the Company or the Members to which such person would otherwise be subject by reason of (i) a breach of a duty of loyalty to the Company or Members, (ii) any act or omission not in good faith or that involves intentional misconduct or knowing violation of law or (iii) any transaction from which such person derived improper personal benefit.

## 11.     **Exculpation and Indemnification**

(a)     Neither a Member nor any Officer, employee or agent of the Company nor any employee, representative, agent or affiliate of a Member (collectively, the "Covered Persons") shall be liable to the Company or any other person who has an interest in or claim against the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.  To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 11 by the Company shall be provided out of and to the extent of Company assets only, and a Member shall not have personal liability on account thereof.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as

authorized in this Section 11. A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person as to matters the Covered Person reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to a Member might properly be paid. To the extent that, at law or in equity, a Member has duties (including fiduciary duties) and liabilities relating thereto to the Company, a Member acting under this Agreement shall not be liable to the Company or to any other Member for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Member. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Member otherwise existing at law or in equity, are agreed by each Member to replace such other duties and liabilities of such Member. The foregoing provisions of this Section 11 shall survive any termination of this Agreement.

(b)     The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) (an "Indemnified Person") who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal administrative, regulatory or investigative in nature, by reason of the fact that such person is or was an officer, authorized signatory, employee or agent of the Company, or is or was serving at the request of the Company as an officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee or agent of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding to the same extent (but only to the extent) that such person would be entitled to indemnification therefore or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be the Board of Managers of the Company, and references to officers therein being

deemed to include authorized signatories.  The provisions of this Section 11 shall survive termination of this Agreement.

## 12.      Fiscal Year

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

## 13.      Tax Characterization of the Company

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes.  For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes.  The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

## 14.      Seal

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure.  The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

## 15.      Records

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time.  The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act.  The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

## 16.      Non-Voting Securities

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such

force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

**17.** **Amendment**

This Agreement may be amended and/or restated at any time with the written consent of the Member.

**18.** **Assignments**

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**19.** **Priority**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

**20.** **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**AURORA BANK FSB**


By: _____

Name: [•]

Title: Member

**SCHEDULE I**

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Aurora Bank FSB | $1000 | 100% |

**EXHIBIT 1**

**PART O – LB ROSE RANCH LLC**

# LB ROSE RANCH LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of LB Rose Ranch LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by PAMI LLC, a Delaware limited liability company, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

## 1.     Formation

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on October 13, 2000, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

## 2.     Definitions

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

## 3. Registered Office and Principal Place of Business

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

## 4. Business

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

## 5. Management of the Company

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)    <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)    <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)    <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)    <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)    <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

**6.**    **<u>Officers/Authority</u>**

(a)    <u>Officers</u>:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b) <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c) <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d) <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e) <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers. The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided. The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     <u>Chief Financial Officer</u>:  The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     <u>Executive Vice Presidents</u>.  The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     <u>Senior Vice Presidents</u>.   The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)    <u>Controller</u>:  The Controller shall prepare and have the care and custody of the books of account of the Company. The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)    <u>Assistant Officers</u>:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary. Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)    <u>Voting Stock of Subsidiary Corporations</u>:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present. The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     Contracts, Instruments, Powers of Attorneys:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     Allocations, Distributions, Profits and Losses

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     Term

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     Bankruptcy of Member

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    Liability

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. **Indemnification; Insurance**

    (a)    The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

    (b)    The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12. Fiscal Year

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

## 13. Tax Characterization of the Company

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

## 14. Seal

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

## 15. Records

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

**16.**    <u>**Non-Voting Securities**</u>

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

**17.**    <u>**Amendment**</u>

This Agreement may be amended and/or restated at any time with the written consent of the Member.

**18.**    <u>**Assignments**</u>

The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**19.**    <u>**Priority**</u>

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

**20.**    <u>**Governing Law**</u>

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**PAMI LLC**

By: _____

Name: [•]

Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| PAMI LLC | $1000 | 100% |

# EXHIBIT 1

## PART P – STRUCTURED ASSET SECURITIES CORPORATION

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**STRUCTURED ASSET SECURITIES CORPORATION**

Structured Asset Securities Corporation (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies as follows:

      1.      The name of the Corporation is Structured Asset Securities Corporation.

      2.      The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on January 2, 1987 pursuant to the DGCL.

      3.      This Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of the Corporation, as amended.

      4.      On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Corporation) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      5.      This Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

      6.      This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by a representative of the Corporation appointed pursuant to the Plan in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

      7.      The text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:

      FIRST:      The name of the corporation is Structured Asset Securities Corporation.

      SECOND:      The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle 19808. The name of the registered agent of the Corporation in the State of Delaware at such address is Corporation Service Company.

      THIRD:      The purpose of the Corporation is to engage in any lawful act or activity (a) for which a corporation may be organized under the DGCL and (b) as contemplated by the Plan.

<u>FOURTH</u>:　　　The total number of shares of stock which the Corporation shall have authority to issue is one thousand (1,000) and the par value of each of such shares is one dollar ($1.00) amounting in the aggregate to one thousand dollars ($1,000).  The Corporation shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Corporation.

<u>FIFTH</u>:　　　The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.　　　The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The election of directors need not be by written ballot.

2.　　　The number of directors which shall constitute the entire Board of Directors shall be one (1) person who shall be a concurrently serving member of the board of directors of Lehman Brothers Holdings Inc.  The initial director shall have an initial term of one year.  The director shall thereafter be elected (a) at the annual meeting of the stockholder or (b) by action of the stockholder in lieu of such meeting, and each director elected at such annual meeting or by such action shall hold office until the next annual meeting of the stockholder and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office.

3.　　　Any vacancies on the Board of Directors resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the stockholder of the Corporation.

4.　　　The sole director of the Corporation may be removed at any time with or without cause by the stockholder.

5.　　　In furtherance and not in limitation of the powers conferred by law, the Board of Directors or the stockholder of the Corporation are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new bylaws of the Corporation (the "<u>By-Laws</u>"), subject to the requirements of the Bankruptcy Code and in accordance with the Plan; <u>provided</u>, <u>however</u>, that notice of such alteration, amendment, repeal or adoption shall be contained in the notice of meeting of the stockholder or the Board of Directors, as the case may be, at which such action is proposed to be taken.  Any such alteration, amendment, repeal or adoption must be approved by the affirmative vote of either the stockholder or the Board of Directors.

SIXTH:        No director of the Corporation shall be personally liable to the Corporation or the stockholder for monetary damages for breach of fiduciary duty as a director; provided, however, that this limitation of liability of a director shall not apply with respect to (i) any breach of the director's duty of loyalty to the Corporation or the stockholder, (ii) act or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) any liability arising under Section 174 of the General Corporation Law of the State of Delaware and (iv) for any transaction from which the director derives an improper personal benefit.

SEVENTH:        Meetings of the stockholder may be held within or outside the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the DGCL) at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws.

EIGHTH:        The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by law, subject to the requirements of the Bankruptcy Code and in accordance with the Plan, and all rights conferred upon the stockholder of the Corporation or others herein are granted subject to this reservation.

NINTH:        Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Amended and Restated Certificate of Incorporation and the Plan, the Plan shall govern.

IN WITNESS WHEREOF, Structured Asset Securities Corporation has caused this Certificate of Incorporation to be signed by _____, its Authorized Representative, on the ___ day of ___, 201__.

Structured Asset Securities Corporation

By:_____

    Name:

    Title: Authorized Representative

**STRUCTURED ASSET SECURITIES CORPORATION**

Incorporated Under the Laws of the
State of Delaware

AMENDED AND RESTATED
BY-LAWS

ARTICLE I
OFFICES

Structured Asset Securities Corporation (the "Corporation") shall maintain a registered office in the State of Delaware. The Corporation may also have other offices at such places, either within or outside the State of Delaware, as the board of directors of the Corporation (the "Board of Directors") may from time to time designate or the business of the Corporation may require.

ARTICLE II
STOCKHOLDER

Section 1.     Place of Meetings.     Meetings of the sole stockholder of the Corporation (the "Stockholder") for the election of directors or for any other purpose shall be held on such date, at such time and at such place, either within or outside the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Only if so determined by the Board of Directors, in its sole discretion, a meeting of the Stockholder may be held not at any place, but may instead be held solely by means of remote communication, as provided in the General Corporation Law of the State of Delaware.

Section 2.     Annual Meeting.     The Annual Meeting of the Stockholder shall be held on such date and at such time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting, at which meeting the Stockholder shall elect a Board of Directors and transact only such other business as is properly brought before the meeting. Notice of the Annual Meeting of the Stockholder stating the place, date and hour of the meeting shall be given as permitted by law to the Stockholder not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 3.     Special Meetings.     Unless otherwise prescribed by law or the Amended and Restated Certificate of Incorporation (such Certificate, as amended from time to time, the "Certificate of Incorporation"), special meetings of the Stockholder may be called only by the Stockholder, the Chief Executive Officer or the President in the absence or disability of the Chief Executive Officer, or the Secretary at the request of the Board of Directors. Notice of a Special Meeting stating the place, date and hour of the meeting and the purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to the Stockholder.

Only such business as is specified in the notice of special meeting shall come before such meeting.

Section 4.    Quorum.    Except as otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the Stockholder shall constitute a quorum at all meetings of the Stockholder for the transaction of business.

Section 5.    Voting.    When a quorum is present or represented at any meeting, the vote of the Stockholder shall decide any question brought before such meeting.  The Stockholder shall be entitled at every meeting of the Stockholder to one vote for each share of stock held by it, and such vote may be cast either in person or by proxy, provided that the Stockholder may not exercise any such voting rights in conflict with Article VII of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors pursuant to Section 1125 of the Bankruptcy Code (the "Plan").

Section 6.    Action by Stockholder Without a Meeting.    Any action required to be taken at any annual or special meeting of the Stockholder, or any action which may be taken at any annual or special meeting of the Stockholder, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the Stockholder and shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of the Stockholder are recorded.

ARTICLE III
DIRECTORS

Section 1.    Number; Election; Tenure; Qualification; Vacancies; Removal.    Except as otherwise provided herein, matters relating to the number, election, tenure, qualification, vacancies and removal of the Board of Directors are addressed in the Certificate of Incorporation.

Section 2.    Duties and Powers.    The business of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation, the Plan Trust Agreement dated [____], or by these By-Laws directed or required to be exercised or done solely by the Stockholder.

Section 3.    Meetings.    The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware. Regular meetings of the Board of Directors may be held without notice at such time and at such place as may from time to time be determined by the Board of Directors.  Special meetings of the Board of Directors may be called by the Chief Executive Officer, the President or the sole director.  Notice thereof stating the place, date and hour of the meeting shall be given to the sole director either (i) by mail or courier not less than forty-

eight (48) hours before the date of the meeting or (ii) by telephone, telegram or facsimile or electronic transmission, not less than twenty-four (24) hours before the time of the meeting or on such shorter notice as the person or persons calling such meeting may deem necessary or appropriate in the circumstances (provided that notice of any meeting need not be given to the sole director if he shall either submit, before or after such meeting, a waiver of notice or attend the meeting without protesting, at the beginning thereof, the lack of notice).

Section 4.    <u>Quorum</u>.  Except as may be otherwise provided by law or by the Certificate of Incorporation, the presence in person or representation by proxy of the sole director of the Corporation shall constitute a quorum at all meetings of the Board of Directors for the transaction of business, and the vote of the sole director shall be the act of the Board of Directors.

Section 5.    <u>Action Without A Meeting</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken by the Board of Directors may be taken without a meeting if the sole director of the Corporation consents in writing or by electronic transmission to the adoption of a resolution authorizing the action.  The resolution and the consent thereto in writing or by electronic transmission by the sole director shall be filed with the minutes of the proceedings of the Board of Directors.

Section 6.    <u>Participation By Telephone</u>.  Unless otherwise provided by the Certificate of Incorporation or these By-Laws, the sole director may participate in a meeting of the Board of Directors by means of a conference telephone or other communications equipment allowing all persons participating in the meeting to hear each other.  Participation by such means shall constitute presence in person at the meeting.

Section 7.    <u>Compensation</u>.  The sole director may be paid his expenses, if any, for attendance at each meeting of the Board of Directors and may be paid compensation as a director and for attendance at each meeting of the Board of Directors in such amounts as the Board of Directors may fix from time to time.  No such payment shall preclude the sole director from serving the Corporation in any other capacity or entering into transactions otherwise permitted by the Certificate of Incorporation, these By-Laws or applicable law.

Section 8.    <u>Resignation</u>.    Any director may resign at any time.    Such resignation shall be made in writing or by electronic transmission and shall take effect at the time specified therein, or, if no time be specified, at the time of its receipt by the Chief Executive Officer, President or the Secretary.  The acceptance of a resignation shall not be necessary to make it effective unless so specified therein.

ARTICLE IV
OFFICERS

Section 1.    <u>General</u>.    The officers of the Corporation shall be elected by the Board of Directors and may consist of a Chief Executive Officer, a Chief Financial Officer, one or more Senior Vice Presidents, one or more Vice Presidents, a Secretary, a Treasurer and a Controller.  The Board of Directors, in its discretion, may also elect and specifically identify as officers of the Corporation a President, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers and one or more Assistant Controllers as in its judgment may be necessary or desirable.  Any number of offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law, the Certificate of Incorporation or these By-Laws.  The officers of the Corporation need not be stockholders or directors of the Corporation.  Any office named or provided for in this Article IV (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Corporation specified in these By-Laws and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or such other officer specified in this Article IV.

Section 2.    <u>Election; Removal; Remuneration</u>.    The Board of Directors at its first meeting held after each Annual Meeting of the Stockholder shall elect the officers of the Corporation who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors and may elect additional officers and may fill vacancies among the officers previously elected at any subsequent meeting of the Board of Directors; and all officers of the Corporation shall hold office until their successors are chosen and qualified, or until their earlier resignation or removal.  Any officer elected by the Board of Directors may be removed at any time, either for or without cause, by the affirmative vote of the Board of Directors.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Directors electing such officer, any officer that was at the time of his appointment to office an employee of Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or Alvarez & Marsal Holdings, LLC ("<u>A&M</u>") or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Directors and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

Section 3.    <u>Voting Securities Owned by the Corporation</u>.    Powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to

securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by an officer, and any such officer may, in the name and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Corporation may own securities, or to execute written consents in lieu thereof, and at any such meeting, or in giving any such consent, shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed if present. The Board of Directors may, by resolution, from time to time confer like powers upon any other person or persons.

Section 4. <u>Chief Executive Officer</u>. The Chief Executive Officer shall, subject to the direction of the Board of Directors, have general and active control of the affairs and business of the Corporation and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Stockholder and shall preside at all meetings of the Board of Directors, unless the Board of Directors shall have chosen another chairman. The Chief Executive Officer shall see that all orders and resolutions of the Board of Directors are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a corporation. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 5. <u>President</u>. The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Directors, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Directors shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a corporation, except to the extent the Chief Executive Officer or the Board of Directors shall have otherwise provided. The President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 6. <u>Chief Operating Officers</u>. The Chief Operating Officer(s) shall be chief operating officer(s) of the Corporation and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Corporation, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of Directors. In

addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a corporation, except to the extent the Chief Executive Officer, the President or the Board of Directors shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer, the President or these By-Laws. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

Section 7.     Executive Vice Presidents.   The Executive Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 8.     Senior Vice Presidents.   The Senior Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 9.     Vice Presidents.   The Vice Presidents of the Corporation shall perform such duties and have such powers as may, from time to time, be assigned to them by these By-Laws, the Board of Directors, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

Section 10.     Secretary.   The Secretary shall attend all meetings of the Board of Directors and of the Stockholder and record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary shall keep in safe custody the seal of

the Corporation and affix it to any instrument when so authorized by the Board of Directors or any officer. The Secretary shall give or cause to be given, notice of all meetings of the Stockholder and special meetings of the Board of Directors and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a corporation including, without limitation, the power to certify the Certificate of Incorporation, these By-Laws, any actions of the Board of Directors or the Stockholder and the incumbency of any officers, except to the extent that the Board of Directors or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 11.    <u>Assistant Secretaries</u>.    Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.

Section 12.    <u>Chief Financial Officer</u>.    The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Corporation and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Corporation. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or these By-Laws. The Chief Financial Officer may, subject to any contrary direction that the Board of Directors has provided, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 13.    <u>Treasurer</u>.    The Treasurer shall have, subject to the direction of the Board of Directors and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Corporation, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a corporation, including to have custody of funds and securities owned by the Corporation, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Corporation, to deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated as authorized in accordance with these By-Laws and to disburse the funds of the Corporation as may be authorized in accordance with these By-laws, taking proper vouchers for such disbursements, and to render to the Board of Directors, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Corporation, except to the extent that the Board of Directors or the Chief Executive Officer or Chief

Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Directors has provided, sign, execute and deliver, in the name and on the behalf of the Corporation, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Corporation, except as otherwise provided by law.

Section 14.    Assistant Treasurers.    Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.

Section 15.    Controller.    The Controller shall prepare and have the care and custody of the books of account of the Corporation. The Controller shall keep a full and accurate account of all monies received and paid on account of the Corporation, and shall render a statement of the Controller's accounts whenever the Board of Directors, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a corporation, except to the extent that the Board of Directors, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Financial Officer or these By-Laws.

Section 16.    Additional Powers and Duties.    In addition to the foregoing especially enumerated duties and powers, the several officers of the Corporation shall perform such other duties and exercise such further powers as the Board of Directors may, from time to time, determine or as may be assigned to them by any superior officer.

Section 17.    Other Officers.    The Board of Directors may designate such other officers having such duties and powers as it may specify from time to time.

ARTICLE V
CAPITAL STOCK

Section 1.    Ownership.    The shares of issued and outstanding stock of the Corporation shall be represented by a certificate or certificates, unless and until the Board of Directors adopts a resolution permitting such shares to be uncertificated. The certificate(s) shall be signed by, or in the name of the Corporation by, (a) the Chief Executive Officer, the President or a Vice-President, and (b) the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary, certifying the number of shares owned by such stockholder in the Corporation.

Section 2.    Signatures.    Any signature required to be on a certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such

officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3.     Lost, Stolen or Destroyed Certificate.  The Board of Directors may direct a new certificate to be issued in place of any certificate theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of the lost, stolen or destroyed certificate, or its legal representative, to advertise the same in such manner as the Board of Directors shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

ARTICLE VI
INDEMNIFICATION

Section 1.     Indemnification of Officers and Directors:  The Corporation shall indemnify each person who serves or has served as a director or officer of the Corporation against personal liability (including expenses) incurred in connection with any action, suit or proceeding to which such person is or is threatened to be made a party by reason of the fact that such person is or was a director or officer of the Corporation, including service as a director or officer (or in any similar capacity) of any subsidiary of the Corporation or, at the request of the Corporation, of any other company, to the fullest extent and on the terms provided by Section 145 of the General Corporation Law of the State of Delaware.  Nothing contained in this section shall limit the ability of the Corporation to indemnify or advance expenses to any current or former director, officer, employee or agent of the Corporation pursuant to law or any agreement, action of the Board of Directors or the Stockholder or other arrangement or limit any right any current or former director, officer, employee or agent may have to indemnity or advance of expenses under any bylaw of the Corporation in effect prior to the date of these By-Laws with respect to any action taken, any omission, status as a director, officer, employee or agent or any state of affairs existing prior to the date of these By-Laws.  No repeal or modification of this section shall affect any rights or obligations hereunder of any person with respect to any action or omission of any such person occurring, or any state of facts then existing, before such repeal or modification, regardless of whether a claim arising out of such action, omission or state of facts is asserted before or after such repeal or modification.

ARTICLE VII
GENERAL

Section 1.     Fiscal Year.  The fiscal year of the Corporation shall be such date as shall be fixed by resolution of the Board of Directors from time to time.

Section 2.     Corporate Seal.  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise upon any paper, certificate or document.

Section 3.     Contracts, Instruments, Powers of Attorney.  In addition to the authority of the Board of Directors to authorize any person to do so, any officer of the Corporation may, subject to any contrary direction that the Board of Directors has provided, in the name and on behalf of the Corporation, enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by these By-Laws or otherwise provided by action of the Board of Directors and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Corporation to do so.

Section 4.     Amendments.     These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Stockholder or by the Board of Directors at any meeting thereof; provided, however, that notice of such alteration, amendment, repeal or adoption of new By-Laws shall be contained in the notice of such meeting of the Stockholder or in a notice of such meeting of the Board of Directors, as the case may be.  All such amendments must be approved by either the affirmative vote of the Stockholder or the Board of Directors.

Section 5.     Cessation of Officership and Directorship.  Any authority to act in the name or on behalf of the Corporation that was granted by name to any individual shall immediately cease in the event that such individual ceases to be an officer or director of the Corporation, unless otherwise provided by the Board of Directors.

Section 6.     Waivers.  Whenever under the provisions of law, the Certificate of Incorporation or these By-Laws, the Corporation or the Board of Directors is authorized to take any action after notice to the Stockholder or the sole director, or after the lapse of a prescribed period of time, such action may be taken without notice and without the lapse of any period of time, if at any time before or after such action be completed such requirements be waived in writing by the person or persons entitled to said notice or entitled to participate in the action to be taken or, in the case of the Stockholder, by its attorney thereunto authorized, and, if the Stockholder or the sole director shall be present at any meeting, such presence shall constitute a waiver of notice for such meeting unless the Stockholder or sole director, as applicable, protests the lack of notice at the outset of the meeting.

Section 7.     Ratification.  Any transaction questioned, including in any lawsuit, on the ground of lack of authority, defective or irregular execution or authorization, adverse interest of a director, officer or stockholder, non-disclosure, miscomputation, or the application of improper principles or practices of accounting or on any ground, may

be ratified (including, if questioned in any lawsuit, before or after judgment), by the Board of Directors or by the Stockholder, and if so ratified shall have the same force and effect as if the questioned transaction had been originally duly authorized. Such ratification shall be binding upon the Corporation and the Stockholder and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

Section 8. <u>Priority</u>. Notwithstanding anything to the contrary herein, in the case of any inconsistency between these By-Laws and the Plan, the Plan shall govern.

**EXHIBIT 1**

**PART Q – LB 2080 KALAKAUA OWNERS LLC**

## LB 2080 KALAKAUA OWNERS LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of LB 2080 Kalakaua Owners LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by PAMI LLC, a Delaware limited liability company, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

## 1.     Formation

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act").  A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on April 24, 2003, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto.  The Member shall have no obligation to make any further capital contributions to the Company.

## 2.     Definitions

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

**3.** **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

**4.** **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

**5.** **Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)    <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)    <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e)    <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)    <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)    <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

**6.**    <u>**Officers/Authority**</u>

(a)    <u>Officers</u>: Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)  Number:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)  Election; Term of Office and Qualifications:  The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)  Removal of Officers:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)  Resignation:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers. The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided. The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     Chief Financial Officer:  The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.  The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     Executive Vice Presidents.  The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     Senior Vice Presidents.   The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)    <u>Vice Presidents</u>:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)    <u>Secretary</u>:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)    <u>Treasurer</u>:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     Controller:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     Assistant Officers:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.  Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     Voting Stock of Subsidiary Corporations:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     <u>Allocations, Distributions, Profits and Losses</u>

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     <u>Term</u>

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     <u>Bankruptcy of Member</u>

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    <u>Liability</u>

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. **Indemnification; Insurance**

(a) The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b) The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

## 12. **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

## 13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

## 14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

## 15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

## 16. <u>Non-Voting Securities</u>

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

## 17. <u>Amendment</u>

This Agreement may be amended and/or restated at any time with the written consent of the Member.

## 18. <u>Assignments</u>

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

## 19. <u>Priority</u>

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

## 20. <u>Governing Law</u>

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**PAMI LLC**

By: _____

        Name: [•]

        Title: Member

**SCHEDULE I**

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| PAMI LLC | $1000 | 100% |

**EXHIBIT 1**

**PART R – MERIT, LLC**

# MERIT, LLC

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of Merit, LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by Lehman Commercial Paper, Inc., a Delaware corporation, as the sole member of the Company (the "Member").

**RECITALS**:

(a)    On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)    This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [•] by the Bankruptcy Court (the "Plan").

## 1. Formation

(a)    The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on November 13, 2006, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)    The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

## 2. Definitions

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

## 3. Registered Office and Principal Place of Business

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

## 4. Business

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

## 5. Management of the Company

(a) Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b) The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)    Place of Meetings

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager.  In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)    Regular Meetings

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager.  Such regular meetings may be held without notice.

(e)    Special Meetings

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)    Action Without a Meeting

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office.  Any written consent may be executed and given by facsimile, Electronic Transmission or similar means.  Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)    Compensation

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting.  Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

**6.    Officers/Authority**

(a)    Officers:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)   <u>Number</u>:   The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.   In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.   Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.   Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.   If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)   <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.   Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)   <u>Removal of Officers</u>:   Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.   Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)   <u>Resignation</u>:   Any officer of the Company may resign at any time.   Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)    Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)    Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)    Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents.  The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers.  The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company.  The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President.  The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)    President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided.  In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided.  The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)    Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers.  In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     Chief Financial Officer:  The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller.   The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company.  The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     Executive Vice Presidents.  The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer.  Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     Senior Vice Presidents.   The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President.  Each

Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n) <u>Vice Presidents</u>:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and affix in, the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o) <u>Secretary</u>:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p) <u>Treasurer</u>:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief

Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     Controller:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     Assistant Officers:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.  Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     Voting Stock of Subsidiary Corporations:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory

would otherwise be subject by reason of (i) any act or omission of such Manager, officer or authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

## 11. Indemnification; Insurance

(a)     The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)     The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

12. **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

16. **Non-Voting Securities**

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

17. **Amendment**

This Agreement may be amended and/or restated at any time with the written consent of the Member.

18. **Assignments**

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

19. **Priority**

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

20. **Governing Law**

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**LEHMAN COMMERCIAL PAPER, INC.**

By: _____

                Name: [•]

                Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| Lehman Commercial Paper, Inc. | $1000 | 100% |

**EXHIBIT 1**

**PART S – LB PREFERRED SOMERSET LLC**

**LB PREFERRED SOMERSET LLC**

**AMENDED AND RESTATED**

**LIMITED LIABILITY COMPANY AGREEMENT**

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of LB Preferred Somerset LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by PAMI LLC, a Delaware limited liability company, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

**1.     Formation**

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act").  A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on July 13, 2007, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto.  The Member shall have no obligation to make any further capital contributions to the Company.

**2.     Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

3.      **Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company.  The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

4.      **Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

5.      **Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI.  The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c) <u>Place of Meetings</u>

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager. In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d) <u>Regular Meetings</u>

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager. Such regular meetings may be held without notice.

(e) <u>Special Meetings</u>

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f) <u>Action Without a Meeting</u>

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office. Any written consent may be executed and given by facsimile, Electronic Transmission or similar means. Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g) <u>Compensation</u>

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting. Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

## 6. **Officers/Authority**

(a) <u>Officers</u>: Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)     Number:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)     Election; Term of Office and Qualifications: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)     Removal of Officers:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)     Resignation:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)    <u>Filling of Vacancies</u>:  A vacancy in any office shall be filled by the Board of Managers.

(g)    <u>Compensation</u>:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)    <u>Chief Executive Officer</u>:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers. The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)    <u>President</u>:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided. The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)    <u>Chief Operating Officer</u>:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k)     <u>Chief Financial Officer</u>: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l)     <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m)     <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)  Controller:  The Controller shall prepare and have the care and custody of the books of account of the Company. The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require. The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)  Assistant Officers:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer. Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary. Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)  Voting Stock of Subsidiary Corporations:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present. The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

Contracts, Instruments, Powers of Attorneys:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.    Allocations, Distributions, Profits and Losses

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.    Term

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.    Bankruptcy of Member

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    Liability

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

11. **Indemnification; Insurance**

    (a)    The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

    (b)    The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

12. **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13. **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes. For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes. The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14. **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure. The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15. **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act. The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

## 16. <u>Non-Voting Securities</u>

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

## 17. <u>Amendment</u>

This Agreement may be amended and/or restated at any time with the written consent of the Member.

## 18. <u>Assignments</u>

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

## 19. <u>Priority</u>

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

## 20. <u>Governing Law</u>

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**PAMI LLC**

By: _____

        Name: [•]

        Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| PAMI LLC | $1000 | 100% |

**EXHIBIT 1**

**PART T – LB SOMERSET LLC**

**LB SOMERSET LLC**

**AMENDED AND RESTATED**

**LIMITED LIABILITY COMPANY AGREEMENT**

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of LB Somerset LLC, a Delaware limited liability company (the "Company"), having an address at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020, is made by PAMI LLC, a Delaware limited liability company, as the sole member of the Company (the "Member").

**RECITALS**:

(a)     On September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates (including the Company) each commenced a voluntary case under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

(b)     This Amended and Restated Limited Liability Company Agreement has been deemed approved without the need for Board of Managers or Member approval because it has been adopted pursuant to the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors, as confirmed on [●] by the Bankruptcy Court (the "Plan").

1.     Formation

(a)     The Company has been formed as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (the "LLC Act"). A Certificate of Formation of the Company was filed with the Secretary of State of the State of Delaware on July 3, 2007, and such filing and any amendments to the Certificate of Formation of the Company on file with the Secretary of State of the State of Delaware in effect as of the date of this Agreement are hereby ratified and confirmed in all respects.

(b)     The Member, as sole member, has contributed to the Company in cash or kind the respective amount/assets set forth on Schedule I hereto. The Member shall have no obligation to make any further capital contributions to the Company.

2.     **Definitions**

"A&M" means Alvarez & Marsal Holdings, LLC.

"Board of Managers" means the board of managers designated in Section 5 hereof.

"Electronic Transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

"LBHI" means Lehman Brothers Holdings Inc.

"Manager" means the sole member of the Board of Managers as designated in, or selected pursuant to, Section 5 hereof.

"Percentage Interest" means the Member's share of the profits and losses of the Company and the Member's percentage right to receive distributions of the Company's assets. The Percentage Interest of the Member shall be 100%.

**3.     Registered Office and Principal Place of Business**

The registered office of the Company in the State of Delaware shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware, and its registered agent for service of process on the Company at such address is Corporation Service Company. The principal place of business of the Company shall be located at c/o Lehman Brothers Holdings Inc., 1271 Avenue of the Americas, New York, NY 10020 or at such other or additional places as the Board of Managers may determine.

**4.     Business**

The business of the Company is to engage in any lawful act or activity (a) for which a Limited Liability Company may be formed under the LLC Act and (b) as contemplated by the Plan.

**5.     Management of the Company**

(a)     Subject to (i) the delegation of rights and powers as provided herein and (ii) the provisions of the Plan, the Board of Managers shall have the sole right to manage the business and conduct the operations and affairs of the Company and shall have all powers and rights as necessary, appropriate or advisable to effectuate and carry out the purposes and business of the Company.

(b)     The Board of Managers shall have one (1) Manager, who shall be a concurrently serving member of the board of directors of LBHI. The initial Manager shall be the following individual:

[•]

The initial Manager shall have an initial term, and, if re-elected, subsequent terms of one (1) year. The Manager shall thereafter be elected (a) at the annual meeting of the Member or (b) by action of the Member in lieu of such meeting, and each Manager elected at such annual meeting or by such action shall hold office until

the next annual meeting of the Member and until his successor shall be elected and shall qualify, subject, however, to prior death, disability, resignation, retirement, disqualification or removal from office. Any vacancy on the Board of Managers resulting from death, disability, resignation, retirement, disqualification, removal from office or other cause shall be filled by a vote of the Member. The Member may remove the Manager at any time with or without cause.

(c)　Place of Meetings

All meetings of the Manager may be held at any place that has been designated from time to time by resolution of the Manager.  In the absence of such a designation, regular meetings shall be held at the principal place of business of the Company.

(d)　Regular Meetings

Regular meetings of the Manager shall be held at least once per year at such times and at such places as shall be fixed by resolution of the Manager.  Such regular meetings may be held without notice.

(e)　Special Meetings

Special meetings of the Manager for any purpose or purposes may be called at any time by the Manager.

(f)　Action Without a Meeting

Any action to be taken by the Manager at a meeting may be taken without such meeting by the written consent of the Manager then in office.  Any written consent may be executed and given by facsimile, Electronic Transmission or similar means.  Such written consents shall be filed with the minutes of the proceedings of the Manager.

(g)　Compensation

The Manager shall not receive any stated salary for its services as Manager, but by resolution of the Manager a fixed fee and expenses of attendance may be allowed for attendance at each meeting.  Nothing herein contained shall be construed to preclude the Manager from serving the Company in any other capacity, as an officer, agent or otherwise.

## 6.　Officers/Authority

(a)　Officers:  Notwithstanding anything herein to the contrary, a person that is not employed by at least one of LBHI (or its successor) or any of its subsidiaries, LAMCO LLC or any of its affiliates, or the Company may serve as an officer of

the Company, so long as such person is employed by A&M or any affiliates thereof wholly owned by A&M and any of its employees.

(b)     <u>Number</u>:  The officers of the Company may be a Chief Executive Officer, a President, a Chief Financial Officer, a Secretary and a Treasurer, and such other officers as may from time to time be designated in accordance with the provisions of this Agreement.  In addition, other officers, including without limitation, one or more Chief Operating Officers, one or more Executive Vice Presidents, one or more Senior Vice Presidents, one or more Vice Presidents, a Controller and one or more Assistant Controllers, Assistant Secretaries or Assistant Treasurers, may from time to time be elected by the Board of Managers, and shall have such powers and perform such duties as are provided by this Agreement or as may be assigned to them by the Board of Managers.  Any two or more offices may be held by the same person, except the offices of President and Secretary or as otherwise prohibited by law.  Any office named or provided for in this Agreement (including, without limitation, Chief Executive Officer, Chief Financial Officer, Secretary, Treasurer and Controller) may, at any time and from time to time, be held by one or more persons.  If an office is held by more than one person, each person holding such office shall serve as a co-officer (with the appropriate corresponding title) and shall have general authority, individually and without the need for any action by any other co-officer, to exercise all the powers of the holder of such office of the Company specified in this Agreement and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or such other officer specified in this Agreement.

(c)     <u>Election; Term of Office and Qualifications</u>: The officers shall be chosen by the Board of Managers.  Each such officer shall, except as herein otherwise provided, hold office until the selection and qualification of his successor.

(d)     <u>Removal of Officers</u>:  Any officer of the Company may be removed from office, with or without cause, by a vote of the Board of Managers.  Notwithstanding anything to the contrary herein, unless otherwise specifically provided in the resolution of the Board of Managers electing such officer, any officer that was at the time of his appointment to office an employee of the Company, LBHI or any successor thereto, any of LBHI's subsidiaries, LAMCO LLC or any of its affiliates, or A&M or any affiliates of A&M wholly owned by A&M and any of its employees shall automatically, without further action by the Board of Managers and without the necessity or acceptance of a resignation or relinquishment, be removed from all offices he may hold when he shall cease to be employed by at least one of such entities, whether by death, retirement, termination with or without cause or otherwise.

(e)     <u>Resignation</u>:  Any officer of the Company may resign at any time.  Such resignation shall be in writing or by Electronic Transmission and shall take effect at the time specified therein, and if no time be specified, at the time of its receipt

by an officer of the Company. The acceptance of a resignation shall not be necessary in order to make it effective.

(f)     Filling of Vacancies:  A vacancy in any office shall be filled by the Board of Managers.

(g)     Compensation:  The compensation of the officers shall be fixed by the Board of Managers or by any officer(s) to whom such authority may be delegated by the Board of Managers.

(h)     Chief Executive Officer:  The Chief Executive Officer shall, subject to the direction of the Board of Managers, have general and active control of the affairs and business of the Company and general supervision of its officers, officials, employees and agents. The Chief Executive Officer shall preside at all meetings of the Member and shall preside at all meetings of the Board of Managers. The Chief Executive Officer shall see that all orders and resolutions of the Board of Managers are carried into effect, and in addition, the Chief Executive Officer shall have all the powers and perform all the duties generally appertaining to the office of the chief executive officer of a company. The Chief Executive Officer shall designate the person or persons who shall exercise his powers and perform his duties in his absence or disability and the absence or disability of the President. The Chief Executive Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(i)     President:  The President shall have such powers and perform such duties as are prescribed by the Chief Executive Officer or the Board of Managers, and in the absence or disability of the Chief Executive Officer, the President shall have the powers and perform the duties of the Chief Executive Officer, except to the extent the Board of Managers shall have otherwise provided. In addition, the President shall have such powers and perform such duties generally appertaining to the office of the president of a company, except to the extent the Chief Executive Officer or the Board of Managers shall have otherwise provided. The President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(j)     Chief Operating Officer:  The Chief Operating Officer(s) shall be chief operating officer(s) of the Company and shall assist the Chief Executive Officer and the President in the active management of and supervision and direction over the business and affairs of the Company, subject, however, to the direction of the Chief Executive Officer and the President and the control of the Board of

Managers. In addition, the Chief Operating Officer(s) shall have such powers and perform such duties generally appertaining to the office of the chief operating officer of a company, except to the extent the Chief Executive Officer, the President or the Board of Managers shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Executive Officer, the President or this Agreement. The Chief Operating Officer(s) may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents, except as otherwise provided by law.

(k) <u>Chief Financial Officer</u>: The Chief Financial Officer shall have responsibility for the administration of the financial affairs of the Company and shall exercise supervisory responsibility for the performance of the duties of the Treasurer and the Controller. The Chief Financial Officer shall render to the Board of Managers, at its regular meetings, or when the Board of Managers so requires, an account of all of the transactions effected by the Treasurer and Controller and of the financial condition of the Company. The Chief Financial Officer shall generally perform all the duties usually appertaining to the affairs of a chief financial officer of a company and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement. The Chief Financial Officer may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(l) <u>Executive Vice Presidents</u>. The Executive Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President or a Chief Operating Officer. Each Executive Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(m) <u>Senior Vice Presidents</u>. The Senior Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer or an Executive Vice President. Each Senior Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the

Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(n)     Vice Presidents:  The Vice Presidents of the Company shall perform such duties and have such powers as may, from time to time, be assigned to them by this Agreement, the Board of Managers, the Chief Executive Officer, the President, a Chief Operating Officer, an Executive Vice President or a Senior Vice President. Each Vice President may, subject to any contrary direction that the Board of Managers has provided, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents relating to the regular course of the duties of his office or so delegated to him, except as otherwise provided by law.

(o)     Secretary:  The Secretary shall attend all meetings of the Board of Managers and of the Member and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall keep in safe custody the seal of the Company and affix it to any instrument when so authorized by the Board of Managers or any officer.  The Secretary shall give or cause to be given, notice of all meetings of the Member and special meetings of the Board of Managers and shall perform generally all the duties and have all the powers usually appertaining to the office of secretary of a company including, without limitation, the power to certify the Certificate of Formation, this Agreement, any actions of the Board of Managers or the Member and the incumbency of any officers, except to the extent that the Board of Managers or the Chief Executive Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers or this Agreement.  The Board of Managers may give general authority to any other officer to affix the seal of the Company and to attest the affixing by his signature.

(p)     Treasurer:  The Treasurer shall have, subject to the direction of the Board of Managers and the Chief Financial Officer, general supervision of the funds, other financial assets and accounts of the Company, and shall have and may exercise all such powers and discharge such duties as usually pertain to the office of treasurer of a company, including to have custody of funds and securities owned by the Company, to cause to be kept full and accurate accounts of receipts and disbursements in books belonging to the Company, to deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated as authorized in accordance with this Agreement and to disburse the funds of the Company as may be authorized in accordance with this Agreement, taking proper vouchers for such disbursements, and to render to the Board of Managers, the Chief Executive Officer, a Chief Operating Officer, the President or the Chief Financial Officer, when required thereby, an account of the financial condition of the Company, except to the

extent that the Board of Managers or the Chief Executive Officer or Chief Financial Officer shall have otherwise provided. The Treasurer may, subject to any contrary direction that the Board of Managers has provided, sign, execute and deliver, in the name and on the behalf of the Company, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings and other documents relating to the financial affairs of the Company, except as otherwise provided by law.

(q)     Controller:  The Controller shall prepare and have the care and custody of the books of account of the Company.  The Controller shall keep a full and accurate account of all monies received and paid on account of the Company, and shall render a statement of the Controller's accounts whenever the Board of Managers, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer or Treasurer shall require.  The Controller shall generally perform all duties usually appertaining to the affairs of the controller of a company, except to the extent that the Board of Managers, the Chief Executive Officer or Chief Financial Officer shall have otherwise provided, and shall perform such other duties and have such other powers as may be prescribed by the Board of Managers, the Chief Financial Officer or this Agreement.

(r)     Assistant Officers:  Subject to the direction of the Chief Executive Officer, President, Chief Financial Officer and Treasurer, any Assistant Treasurer may perform any of the duties and exercise any of the powers that may be performed by the Treasurer.  Subject to the direction of the Chief Executive Officer, President and Secretary, any Assistant Secretary may perform any of the duties and exercise any of the powers that may be performed by the Secretary.  Any other assistant officer may perform any of the duties and exercise any of the powers that may be exercised by the officer such assistant officer assists, subject to the direction of such officer.

(s)     Voting Stock of Subsidiary Corporations:  Subject to any contrary direction that the Board of Managers has provided, powers of attorney, proxies, waivers of notice of meetings, consents and other instruments relating to securities owned by the Company may be executed in the name of and on behalf of the Company by any officer and any employee or other person designated by an officer and such person may, in the name and on behalf of the Company, take all such action as the officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation, company, partnership or other entity in which the Company may own securities, or to execute written consents in lieu thereof. At any such meeting, or in giving any such consent, such person shall possess and may exercise any and all rights and powers incident to the ownership of such securities and which, as the owner thereof, the Company might have exercised and possessed if present.  The Board of Managers may, by resolution, from time to time confer like powers upon any other person or persons.

(t)     <u>Contracts, Instruments, Powers of Attorneys</u>:  In addition to the authority of the Board of Managers to authorize any person to do so, any officer of the Company may, subject to any contrary direction that the Board of Managers has provided, in the name and on behalf of the Company enter into, execute and deliver any and all agreements, contracts, promissory notes, bonds or other certificates or evidences of indebtedness of the Company, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents pertaining to a matter within the authority of such officer as provided by this Agreement or otherwise provided by action of the Board of Managers and may further authorize (including without limitation, by power of attorney) any employee or other person as agent for the Company to do so.

## 7.     **Allocations, Distributions, Profits and Losses**

So long as the Member is the sole member of the Company, all the items of income, profit and loss of the Company shall be allocated to the Member and all cash and other distributable assets of the Company shall be distributed to the Member.  Distributions shall be made at such time, to such extent and in such manner as the Board of Managers shall determine.

## 8.     **Term**

The Company shall be dissolved, its affairs shall be wound up and its assets distributed, and it shall be terminated upon the sole election of the Member or otherwise in accordance with the Plan or the LLC Act.

## 9.     **Bankruptcy of Member**

The occurrence of any event set forth in Section 18-304 of the LLC Act (Events of Bankruptcy) with respect to a member of the Company shall not cause such member to cease to be a member of the Company and, upon the occurrence of such an event, the Company shall continue without dissolution.

## 10.    **Liability**

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, Manager, officer or authorized signatory of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager, officer or authorized signatory.  The personal liability of the Member, Manager, officers and any authorized signatories to the Company is eliminated or limited to the fullest extent permitted under the LLC Act, and no Member, Manager, officer or authorized signatory shall have any liability to the Company except as expressly required by the LLC Act; provided, however, that nothing contained herein shall protect any Manager, officer or authorized signatory against any liability to the Company or the Member to which such Manager, officer or authorized signatory would otherwise be subject by reason of (i) any act or omission of such Manager, officer or

authorized signatory that involves actual fraud or willful misconduct or (ii) any transaction from which such Manager, officer or authorized signatory derived improper personal benefit.

11. **Indemnification; Insurance**

(a)     The Company, to the extent and in a manner permitted by Delaware law as in effect from time to time, shall indemnify any person (including the heirs, executors, administrators or estate of any such person) who was or is made a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature, by reason of the fact that such person is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a director, officer, shareholder, member, manager, partner, trustee, fiduciary, authorized signatory, employee or agent (a "Subsidiary Officer") of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (an "Associated Entity"), against expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such person in connection with, and shall advance expenses incurred by such person in advance of the final disposition of, such action, suit or proceeding, to the same extent (but only to such extent) that such person would be entitled to indemnification therefor or reimbursement or advance thereof from LBHI in accordance with the by-laws of LBHI as in effect from time to time, and subject to any limitations and procedures contained therein, as if the Company were LBHI and the person seeking indemnification stood in the same relation to LBHI as he or she does to the Company, *mutatis mutandis,* with references to the Board of Directors therein being deemed to be to the Board of Managers of the Company, and references to officers therein being deemed to include authorized signatories.

(b)     The Company may purchase and maintain insurance on behalf of any person who is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) a Manager, officer, authorized signatory, employee or agent of the Company, or is or was (after the Commencement Date, but only in respect of any acts, omissions or event occurring after the Commencement Date) serving at the request of the Company as a Subsidiary Officer of any Associated Entity, against any liability asserted against such person and incurred by such person in any capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of this Section or applicable law.

12.     **Fiscal Year**

The fiscal year of the Company shall be the same as that of LBHI or any successor thereto, so long as all or a majority of the membership interests of the Company are owned by LBHI or any direct or indirect subsidiary thereof, unless the Board of Managers shall otherwise determine.

13.     **Tax Characterization of the Company**

For any tax period during which the Company has only one member, it is the intention of the Member that the Company be treated, wherever permitted, as a division of such sole member for federal, state, local and foreign income tax purposes.  For any tax period during which the Company has more than one member, it is the intention of the Member that the Company shall be taxed, wherever permitted, as a "partnership" for federal, state, local and foreign income tax purposes.  The Member agrees to take all reasonable actions, including the amendment of this Agreement and the execution of other documents, as may reasonably be required in order for the Company to qualify for such treatment for federal, state, local and foreign income tax purposes.

14.     **Seal**

The Company may have a seal which shall be in such form as approved by the Board of Managers and may be altered at its pleasure.  The Company seal may be used by causing it or a facsimile thereof to be impressed, affixed or reproduced by the Secretary or any Assistant Secretary.

15.     **Records**

Any records maintained by the Company in the regular course of its business, including its books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time.  The Company shall so convert any records so kept upon the request of any person entitled to inspect such records pursuant to any provision of the LLC Act.  The books and records of the Company shall be maintained in accordance with generally accepted accounting principles and Section 704(b) of the Internal Revenue Code and the Regulations thereunder.

**16.** <u>**Non-Voting Securities**</u>

The Company shall not be authorized to issue any non-voting equity securities of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code; provided, however, that, the foregoing restriction shall (i) have no further force and effect beyond that required under section 1123(a)(6) of the Bankruptcy Code and (ii) only have such force and effect to the extent and for so long as section 1123(a)(6) of the Bankruptcy Code is in effect and applies to the Company.

**17.** <u>**Amendment**</u>

This Agreement may be amended and/or restated at any time with the written consent of the Member.

**18.** <u>**Assignments**</u>

The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company as a member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective simultaneous with the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**19.** <u>**Priority**</u>

Notwithstanding anything to the contrary herein, in the case of any inconsistency between this Agreement and the Plan, the Plan shall govern.

**20.** <u>**Governing Law**</u>

This Agreement shall be construed and enforced in accordance with the law of the State of Delaware without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of this __ day of [•], 2011.

**PAMI LLC**

By: _____

                Name: [•]

                Title: Member

## SCHEDULE I

| NAME | AMOUNT | PERCENTAGE INTEREST |
|------|--------|---------------------|
| PAMI LLC | $1000 | 100% |

**EXHIBIT 2**


**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE
ASSUMED PURSUANT TO SECTION 11.1 OF THE PLAN**


**PLEASE NOTE THE FOLLOWING:**


Pursuant to section 11.1 of the Plan, the Debtors reserve the right, on or prior to the Confirmation Date, to amend Exhibit 2 to remove or add any executory contract or unexpired lease.

The Debtors' determination to assume the executory contracts on the annexed list is subject to agreement of the relevant counterparty or, if necessary, adjudication by the Bankruptcy Court, as to the cure amounts or requirements for adequate assurance of future performance, required by the Bankruptcy Code in connection with assumption of the applicable contract. In the event that the cure amount or requirements for adequate assurance, as ultimately determined either before or after the Effective Date, are in excess of the amounts claimed by the Debtors, the Debtors reserve the right to amend Exhibit 2 to remove the applicable contract(s), in which case the applicable contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of the Plan.

In accordance with Section 11.1 of the Plan, the listing of an executory contract or unexpired lease on Exhibit 2 shall not constitute an admission by the Debtors that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

For the convenience of the Debtors and all parties in interest, the Debtors have grouped all of the executory contracts and unexpired leases into the following subject matter categories:

Part A – Derivatives Contracts
Part B – Commercial Loan Agreements
Part C – Commercial Real Estate Agreements
Part D – Residential Real Estate Agreements
Part E – Operational Agreements
Part F – Private Equity Agreements
Part G – Insurance Contracts

  **Parties to executory contracts and unexpired leases should check all categories in order to determine the proposed treatment of their contracts and leases.**

# EXHIBIT 2

## PART A - DERIVATIVES CONTRACTS

**FOR PURPOSES OF THIS EXHIBIT 2, PART A, DERIVATIVES CONTRACTS ARE CONTRACTS IN WHICH THE CONTRACTUAL OBLIGATIONS AND VALUES ARE KEYED TO ONE OR MORE UNDERLYING ASSETS OR INDICES OF ASSET VALUES. IN MOST CASES, THE DERIVATIVES CONTRACTS ARE "SECURITIES CONTRACTS," "REPURCHASE AGREEMENTS," OR "SWAP AGREEMENTS" AS DEFINED IN THE BANKRUPTCY CODE AND, IN SOME CASES, WERE GOVERNED BY A "MASTER NETTING AGREEMENT" AS DEFINED IN THE BANKRUPTCY CODE.**

**UNLESS A SPECIFIC DERIVATIVES CONTRACT IS NOTED FOR A SPECIFIC COUNTERPARTY, THE DEBTORS INTEND TO ASSUME ALL DERIVATIVES CONTRACTS WITH EACH COUNTERPARTY SET FORTH ON EXHIBIT 2, PART A. WHERE A SPECIFIC DERIVATIVES CONTRACT HAS BEEN INDICATED, THE APPLICABLE DEBTOR INTENDS TO ASSUME THE IDENTIFIED DERIVATIVES CONTRACT AND TO REJECT ALL OTHER DERIVATIVES CONTRACTS WITH THE APPLICABLE COUNTERPARTY.**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| 801 Grand 2006-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 801 Grand CDO SPC, for the account of the Series 2006-1 Segregated Portfolio c/o Maples Finance Limited, PO Box 1093GT Queensgate House, South Church St, Grand Cayman, Cayman Islands |
| | | | C/O DONALD J. PUGLISI 850 LIBRARY AVENUE, SUITE 204 NEWARK, DE, 19711 |
| | | | C/O MAPLES FINANCE LIMITED PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| | | | Maples PO Box 309 GT Ugland House, South Church St, Grand Cayman Cayman Islands Attn: Dale Crowley |
| | | | Principal Global Investors, LLC 801 Grand Avenue Des Moines, Iowa , 50392 Attn: Alan Kress |
| | | | U.S. Bank National Association 1 Federal Street, 3rd Fl. Mail Station EX-MA-FED Boston, MA, 02110 Attn: Mark Glenn |
| 801 GRAND CDO SPC SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI 850 LIBRARY AVENUE, SUITE 204 NEWARK, DE, 19711 |
| | | | C/O MAPLES FINANCE LIMITED PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| Abbey National Treasury Services PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PO Box 545 St Helier Jersey , JE4 8XG Channel Islands Attn: Manager Settlements |
| | | | Santander Global Bankinig 2 Triton Square, Regents Place London, NW1 3AN United Kingdom Attn: Andrew Marsland |
| ABERDEEN - AB1025 ARGOS-PF1025RE ABERDEEN ASSET MG | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233LL00200) | c/o Aberdeen Asset Management Bow Bells House 1 Bread Street London, EC4M 9HH United Kingdom Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00212) | c/o Aberdeen Asset Management Bow Bells House 1 Bread Street London, EC4M 9HH United Kingdom Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00240) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/4/2008 (8248LL00478) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN / MEVGP-VERMOGENSPARAPLU BEHEER BV-MAI (ME) | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Brett Bunting |
| ABERDEEN- AB1625 M1SOW-SE1625RE ABERDEEN ASSET MGM | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| ABERDEEN- AB9012 M3IFL-SE9012RE ABERDEEN ASSET MGM | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 7/28/2008 (8210LL00448) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/14/2008 (8227LL00825) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/14/2008 (8227LL00829) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN- ALCAN PACKAGINGPENSION PLANC/O ABERDEEN | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233LL00201) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00213) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00241) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | Forward Puchase Agreement dated 9/4/2008 (8248LL00477) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN ASSET MANAGEMENT INVESTMENT SERVICES LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| ABERDEEN DB1793C/O ABERDEEN ASSET MGMT PLC | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00022) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00026) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN DB2023RE ABERDEEN ASSET MGMT PLC | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 7/29/2008 (8211LL00770) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00188) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN FUND MANAGEMENT LIMIT ED | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00321) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00323) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| Aberdeen Global II - Foreign Exchange Swap | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Field Fisher Waterhouse<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| ABERDEEN GLOBAL II - GLOBAL HIGH YIELD BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/13/2008 (8226LL00147) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/13/2008 (8226LL00149) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00776) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN GLOBAL II- EURO CORPORATE BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/4/2008 (8217LL00389) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN GLOBAL II- GLOBAL BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| ABERDEEN GLOBAL II- LONG DATED STERLING AGGREGATE BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00307) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| ABERDEEN GLOBAL II-STERLING AGGREGATE BOND FUND (LX0473) | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00308) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8253LL00386) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN GLOBAL II-STERLING BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00297) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN GLOBAL IV- CORE PLUS INDEX LINKED BOND FUND (LX0488/AB0488) | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00312) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN ICVC CORPORATE BONDC/O ABERDEEN ASSET MGM | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00271) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00319) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN-NORTHAMPTONSHIREALPHA PORTFOLIOC/O ABERD | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| ABERDEEN- PHILIPS PENSION FUNDC/O ABERDEEN ASSET M | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN PORTABLE ALPHA II EURHEDGED SHARE CLASS F | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00184) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN PORTABLE ALPHA II GBPHEDGED SHARE CLASS F | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00186) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| ABERDEEN- RUSSELL INV CO PLC -SBZ EURO BD PORTFOLI | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00327) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00344) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN- S/P SCA HYGIENEPRODUCTS NEDERLANDC/O ABE | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABERDEEN- SELECT GLOBALSOVEREIGN BOND FUND (AB9235 | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| ABN AMRO Bank N.V. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 540 W. Madison Street, Suite 2202<br>Chicago, IL, 60661<br><br>Attn: Daniel Bley/Frederick P. Engler |
| | | | ABN AMRO Bank N.V. Amsterdam Head Office<br>P.O. Box 283<br>1000 EA Amsterdam<br>The Netherlands<br>Attn: OFM/Swaps Department |
| | | | ABN AMRO Bank N.V., Chicago Branch<br>181 West Madison Street, 30th Floor<br>Chicago, IL, 60662<br><br>Attn: Treasury Operations |
| | | | ABN AMRO Bank N.V., London Branch<br>199 Bishopsgate<br>London EC2M 3TY<br>United Kingdom<br>Attn: Loan Administration Department |
| | | | ABN AMRO Bank N.V., Singapore Branch<br>OCBC Centre East, Level 9<br>63 Chulia Street<br>0459514<br>Singapore |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | ABN AMRO Bank N.V<br>Corporate Communications (HQ9142)<br>P.O. Box 283<br>1000 EA Amsterdam, The Netherlands |
| ABS Investors, LLC | LEHMAN BROTHERS OTC DERIVATIVES INC. | | One Overton Park, Suite 400<br>3625 Cumberland Boulevard<br>Atlanta, GA , 30339<br><br>Attn: Mr. John A. Williams |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| ACCESS GROUP INC SERIES 2005-A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 425 WALNUT STREET, 6TH FLOOR<br>MIL CN-OH-W6CT<br>ATTN: CORPORATE TRUST SERVICES STUDENT LOAN GROUP<br>CINCINNATI, OH, 45202 |
| | | | 5500 BRANDYWINE PARKWAY<br>P.O. BOX 7430<br>ATTN: VICE PRESIDENT OF PORTFOLIO MANAGEMENT<br>WILMINGTON, DE, 19803 |
| ACCESS GROUP INC SERIES 2005-B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5500 BRANDYWINE PARKWAY<br>P.O. BOX 7430<br>ATTN: VICE PRESIDENT OF PORTFOLIO MANAGEMENT<br>WILMINGTON, DE, 19803 |
| | | | 60 WALL STREET<br>MS NYC60-2606<br>NEW YORK, NY, 10005 |
| ACCORD ENERGY LIMITED | LEHMAN BROTHERS COMMODITY SERVICES INC. | EFET Power dated on 8/16/2007 | c/o Centrica Energy<br>Milstream<br>Maidenhead Road<br>Windsor, Berkshire, SL4 5GD<br>UK |
| ACTS AERO TECHNICAL SUPPORT &SERVICES INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | ACTS Aero Technical Support Services Inc.<br>P.S. Box 6000<br>Stahan Airport Zip 1333<br>Dorval Quebec Canada , H4Y 159<br>Canada<br>Attn: Roni Farah |
| | | | P.S. Box 6000<br>Stahan Airport Zip 1333<br>Dorval Quebec Canada , H4Y 159<br>Canada<br>Attn: Roni Farah |
| ACTS Retirement Life Communities | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 11/27/2001 | 375 Morris Rd<br>PO Box 90<br>West Point, PA,  19486-0090<br><br>Attn: Gerald Grant |
| | | | 375 Morris Road<br>P.O. Box 90<br>West Point, PA,  19486-0090<br><br>Attn: Gerald Grant |
| Adventist Health Care MD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1801 Research Blvd., Suite 300<br>Rockville, MD , 20850<br><br>Attn: James G. Lee |
| Adventist Health System (2 WayCollateral Account) | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 12/3/2001 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| ADVENTIST HEALTH SYSTEM SUNBELT HEALTHCARE CO | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 11/17/2000 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 11/17/2000 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Forward Purchase Agreement dated on 12/30/1994 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 11/17/2000 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 1/17/2006 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 9/28/1994 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Reserve Fund dated on 12/31/1994 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 1/3/1997 | 111 North Orlando Avenue<br>Winter Park, FL, 32789<br><br>Attn: Gary Skilton |
| Adventist Health System/Sunbelt, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 1/3/1997 | Adventist Health System/Sunbelt Inc.<br>111 North Orlando Avenue<br>Winter Park, FL , 32789<br><br>Attn: Gary Skilton, SVP/Treasurer |
| AFCO Cargo Pit LLC Project, PA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 7600 Colshire Drive<br>Suite 1400<br>McLean, PA   , 22102 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 7600 Colshire Drive<br>Suite 1400<br>McLean, PA   , 22102 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 7600 Colshire Drive<br>Suite 1400<br>McLean, PA   , 22102 |
| AHF- Bay Fund, LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AHF-Bay Fund, LLC<br>c/o Atlantic Housing Foundation, Inc.<br>210 Park Boulevard, Suite 112<br>Grapevine, Texas, 76051<br><br>Attn: Dan French |
| AIG CDS, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIG CDS, Inc.<br>c/o AIG Global Investment Corp<br>70 Pine Street, 13th Floor<br>New York, NY, 10270<br><br>Attn: Investment Grade Credit Group |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o AIG Global Investment Corp<br>70 Pine Street, 13th Floor<br>New York, NY, 10270 |
| AIG Financial Products Corp. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 50 Danbury Road<br>Wilton, CT , 06897<br><br>Attn:  Chief Financial Officer/General Counsel |
| | | | AIG Financial Products Corp.<br>50 Danbury Road<br>Wilton, CT, 06897<br><br>Attn:  Chief Financial Officer/General Counsel |
| AIG International Inc. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 50 Danbury Road<br>Wilton CT , 06897 |
| | | | One Greenwich Plaza<br>Greenwich, CT , 6830 |
| Airis Newark International Air Cargo Center | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Cargo Building 340<br>Newark Liberty Int#apposl. Airport<br>Newark, NJ,  07114 |
| AIRLIE CDO I LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| | | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE, SOUTH CHURCH STREET<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC<br>GEORGE TOWN, GRAND CAYMAN, CAYMAN ISLANDS |
| Airlie LCDO I (Aviv LCDO 2006-3, Limited) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Chapman and Cutler LLC<br>111 West Monroe Street<br>Chicago, IL, 60603-4080<br><br>Attn:  James E. Spiotto |
| | | | c/o US Bank National Association<br>Corporate Trust Services<br>P.O. Box 960778<br>Boston, MA,  02196-0778<br><br>Attn:  Donald F. Higgins, Assistant Vice President |
| AIRLIE LCDO II (PEBBLE CREEK 2007-1), LTD. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE, SOUTH CHURCH STREET<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC<br>GEORGE TOWN, GRAND CAYMAN, CAYMAN ISLANDS |
| Alabama Department of Environmental Management | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1751 Cong. W.L. Dickinson Drive<br>Montgomery, AL ,  36130 |
| Alabama State University | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 915 S Jackson St<br>Montgomery, AL ,  36104 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Alaska Housing Finance Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4300 Boniface Parkway<br>Anchorage, AK , 99504<br><br>Attn: Chief Financial Officer |
| | | | PO Box 101020<br>Anchorage AK , 99510-1020<br><br>Attn: CFO/Finance Director |
| ALEXANDRITE SANDS APARTMENT, YUMA, ARIZONA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 230 West Morrison St<br>Yuma, AZ , 85365 |
| Alliance for Community Care | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 86 S. 14th St<br>FKA Avenues to Mental Health<br>San Jose, CA , 95112 |
| ALTA CDO 2007-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| ALTA CDO SPC SERIES 2007-2 SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | PO BOX 1093GT, QUEENSGATE HOUSE<br>SOUTH CHURCH STREET, GEORGE TOWN<br>GRAND CAYMAN, CAYMAN ISLANDS |
| Altoona City Authority Series | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 20 Greenwood Road<br>Altoona, PA, 16602-7114 |
| Alzhelmer's Resource Center of Connecticut | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1261 South Main Street<br>Plaintsville, CT, 06479 |
| American Baptist Homes of the West | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6120 STONERIDGE MALL RD.<br>3RD FLOOR<br>PLEASANTON, CA , 94588 |
| AMERICAN BAPTIST HOMES OF THE WEST INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6120 Stoneridge Mall Road<br>3rd Floor<br>Pleasanton, CA, 94588<br><br>Pamela S Claassen, CFO |
| | | | c/o Holland & Knight<br>50 California Street, 28th Floor<br>San Francisco, CA , 94111<br><br>Stephen L Taber |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6120 Stoneridge Mall Road<br>3rd Floor<br>Pleasanton, CA, 94588<br><br>Pamela S Claassen, CFO |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Holland & Knight<br>50 California Street, 28th Floor<br>San Francisco, CA , 94111<br><br>Stephen L Taber |
| American Express Bank, Ltd. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o American Express Financial Advisors<br>254 AXP Financial Center, H19/254<br>707 2nd Ave. South<br>Minneapolis, MN , 55474<br><br>Attn: Derivatives Documentation Group |
| American Municipal Power-Ohio, Inc. | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 1111 Schrock Road<br>Suite 100<br>Columbus, OH, 43219<br><br>Attn:Mack Thompson |
| | | | 2600 Airport Drive<br>2600 Airport Drive<br>Columbus, OH, 43219<br><br>Attn:Contract Administration |
| AMERICREDIT 2005-B-M | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Americredit Automobile Receivables Trust 2007-B-F<br>c/o Wilmington Trust Company, as Owner Trustee<br>1100 North Market Street<br>Wilmington, DE, 19890 |
| AMERICREDIT AUTOMOBILE RECEIVABLES TRUST 2007-D-F | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Americredit Automobile Receivables Trust 2007-B-F<br>c/o Wilmington Trust Company, as Owner Trustee<br>1100 North Market Street<br>Wilmington, DE, 19890 |
| AMERICREDIT AUTOMOBILERECEIVABLES TRUST 2007-B-F | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Americredit Automobile Receivables Trust 2007-B-F<br>c/o Wilmington Trust Company, as Owner Trustee<br>1100 North Market Street<br>Wilmington, DE, 19890 |
| | | | With a copy to:<br>Americredit Financial Services, Inc.<br>801 Cherry Street, Suite 3900<br>Fort Worth, TX, 76102<br><br>Derivatives Operations |
| AMP Capital Enhanced Yield FdC/O AMP Capital Inves | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 50 Bridge Street<br>Sydney NSW 2008<br>Australia |
| | | | BNP Fund Sevices Australasia Limited<br>Level 6, BNP Paribas Centre<br>60 Castlereagh Street<br>Sydney, 2000<br>Australia<br>Attn: Manager - Derivative |
| | | | PO Box R227<br>Royal Exhange<br>Sydney NSW 1225<br>Australia |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| AMP CAPITAL INVESTORS LTDA/C Aus Corporate Bond | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 50 Bridge Streeet<br>Sydney NSW 2008<br>Australia |
| | | | BNP Fund Sevices Australasia Limited<br>Level 6, BNP Paribas Centre<br>60 Castlereagh Street<br>Sydney, 2000<br>Australia<br>Attn: Manager - Derivative |
| | | | PO Box R227<br>Royal Exchange<br>Sydney NSW 1225<br>Australia |
| ANTHRACITE BALANCE COMPANY (DIS 1) LTD | LEHMAN COMMERCIAL PAPER INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| ANTHRACITE BALANCED CO (LIBGDF) LTD-JR6 (ME) | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (32) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (36) LTD | LEHMAN COMMERCIAL PAPER INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| ANTHRACITE BALANCED COMPANY (40) LTD | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (44) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (50) LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| ANTHRACITE BALANCED COMPANY (7) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (AWF) LTD | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (GMN) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (JR-27) LTD | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (JR-49) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY (JR-54) LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 22 Greville Street<br>St Helier, Jersey<br>JE4 8PX |
| ANTHRACITE BALANCED COMPANY (R-26) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| ANTHRACITE BALANCED COMPANY (R-26) LIMITED | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE BALANCED COMPANY IR-19 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | LEHMAN COMMERCIAL PAPER INC. | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 10) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 12) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 18) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 27) | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 12/5/2005 | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 12/15/2005 | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands |
| | | | Strathvale House<br>North Church Street<br>PO BOX 1109 GT<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 8) (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>IFSC<br>Dublin 1 , Ireland<br>The Directors |
| | | | Anthracite Investments (Ireland) PLC<br>AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| ANTHRACITE INVESTMENTS (CAYMAN ) LTD | LEHMAN COMMERCIAL PAPER INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| | LEHMAN COMMERCIAL PAPER INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| ANTHRACITE RATED INVESTMENTS (JR-14) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>I.F.S.C<br>Dublin, 1<br>Ireland<br>The Directors |
| Asbury Atlantic, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 210 Russell Avenue<br>Gaithersburg, MD , 20877<br><br>Attn: Chief Financial Officer |
| | | | Attention: Chief Financial Officer<br>210 Russell Avenue<br>Gaithersburg, MD , 20877 |
| Asbury-Solomons, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 210 Russell Avenue<br>Gaithersburg, MD, 20877<br><br>Attn: Chief Financial Offi |
| Atlantic County Utilities Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6700 Delilah Road<br>Egg Harbor Township, NJ , 08234 |
| ATRIUM CDO LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Credit Suisse Alternative Capital, Inc.<br>11 Madison Avenue, 13th Floor<br>New York, NY 10010 |
| | | | JP Morgan Chase as Trustee<br>600 Travis, 48th Floor<br>Houston, TX 77002<br><br>Attn: Brad Buehler |
| Australia and New Zealand Banking Group Limited | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 100 Queen St, Lvl 3<br>Melbourne 3000, Australia<br>Attn: Michael Black, Head of Lending Services |
| | | | 1177 Avenue of the Americas<br>New York, NY, 10036<br><br>Attn: John W. Wade, Deputy General Manager |
| AUSTRALIA CORE PLUS FUND (AUD) | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Legal Department |
| AVIV LCDO 2006-1 LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE, SOUTH CHURCH STREET<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC<br>GEORGE TOWN, GRAND CAYMAN, |
| AVIV LCDO 2006-2 LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, |
| | | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE, SOUTH CHURCH STREET<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC<br>GEORGE TOWN, GRAND CAYMAN, |
| AZUSA PUBLIC FINANCING AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 213 East Foothill Blvd<br>Azusa, CA , 91702<br><br>Attn: Director of Finance |
| Babson College | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Forest Street<br><br>Babson Park, Massachusetts , 02157-0310<br><br>Attn:  VP for Business |
| BAE Systems PLC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Group Treasury, Warwick House, PO Box 87<br>Farnborough Aerospace Centre<br>Farnborough, Hants, GU14 6YU<br>United Kingdom<br>Attn:  Group Treasurer |
| BALBOA CDO I LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, |
| | | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE, SOUTH CHURCH STREET<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC<br>GEORGE TOWN, GRAND CAYMAN, |
| BALLYROCK ABS CDO 2007-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Ballyrock Investment Advisors LLC<br>82 Devonshire Streetm V13E<br>Boston, MA 02110<br><br>President |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093GT Boundary Hall<br>Cricket Square, Grand Cayman, Cayman Islands<br><br>The Directors |
| Banca Delle Marche SpA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Via Ghislieri, 6<br>60035, Jesi-Ancona<br>Italy<br>Attn: Servizio tesoreria de Gruppo |
| Banca Popolare di Vicenza SCPARL | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Resp. Financial Monitoring & Documentation<br>Via Turati 12<br><br>Milano,<br>Italy |
| | | | Via BTG, Framarin 18<br>Vicenza<br>Italy<br>Attn: Fulvio Simonato |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Resp. Financial Monitoring & Documentation<br>Via Turati 12<br><br>Milano,<br>Italy |
| | | | Via BTG, Framarin 18<br>Vicenza<br>Italy<br>Attn: Fulvio Simonato |
| BANCA POPOLARE DILODI | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Piazza Nogara 237121<br>Verona Italy<br>Italy<br>Attn: Legal Department |
| Banca Profilo S.P.A. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corso Italia<br>49-20122 Milan<br>Italy |
| | | | Corso Italia<br>49-20122 Milan<br>Italy |
| Banco Espanol De Credito, S.A. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Mesema 80 Edificio CPD, Sotano-1<br>28033 - Madrid<br>Spain<br>Attn: Javier Llorente Herrero |
| | | | Mesna 80, Edificio CPD Sotano 1<br>28033 Madrid<br>Spain<br>Attn: Javier Llorente Herrero |
| Banco Finantia | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Banco Finantia<br>Sucursal Financeira Exterior<br>Rua 31 de Janeiro<br>13A - 40 - 9050 Funchal, Portugal |
| | | | Banco Finantia<br>Sucursal Financeira Exterior<br>Rua 31 de Janeiro<br>13A - 40 - 9050 Funchal, Portugal |
| | | | ua General Firmino Miguel No5 -1<br>1600 - 100 Lisboa<br>Portugal<br>Attn: Pedro Benites - Capital Markets Department |
| BANCO II FINANTIA SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Banco Finantia<br>Sucursal Financeria Exterior<br>Rua 31 de Janeiro<br>13 A -4o - 9050 Funchal, PORTUGAL<br>Attn: Capital Markets Department |
| | | | Lehman Brothers Special Financing<br>Suite 400<br>Wilmington,Delaware , 01908<br><br>Attn: Transaction Management |
| | | | ua General Firmino Miguel No 5 -1<br>1600-100 Lisboa<br>Portugal<br>Attn: Pedro Benites - Capital Markets Dept |
| Bank Julius Baer & Co. Ltd., New York | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Bank Julius Baer & Co. Ltd<br>Bahnhofstrasse 36<br>P.O. BOX CH-8010<br>Zurich, Switzerland<br>Attn: Gerard Berclaz |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Zurich Head Office<br>BANK JULIUS BAER<br>Hohlstrasse 604<br>P.O. Box, CH-8010 Zurich, Switzerland<br>Attn: Legal |
| Bank of America, National Association | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 26 Elmfield Road<br>Bromley, Kent<br>BR1 1WA<br>United Kingdom<br>Attn: Global Derivative Operations |
| Bank of China | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1 Fuxingmen Nei Dajie<br>Beijing 100818 China<br>China<br>Attn: Treasury Department/Legal Compliance |
| Bank of Montreal, Toronto | LEHMAN BROTHERS SPECIAL FINANCING INC. | | First Bank Tower 17th Floor<br>First Canadian Place<br>Toronto, Ontario, M5X 1A1<br>Canada<br>Attn: Senior Manager Swaps Desk |
| Bank of New Zealand | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Level 21 Bank of New Zealand Centre<br>1 Willis Street<br>Wellington<br>New Zealand<br>Attn: Head of Markets Division |
| | | | PO Box 2392<br>Wellington<br>New Zealand<br>Attn: Kelsey Lawrie |
| Bank of Yokohama, Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8-2 Nihonbashi 2-Chome<br>Chuo-ku, Tokyo<br>PC103-0027<br>Japan<br>Attn: Financial Markets Department |
| | | | Operations Planning and Administration Department<br>Market Operations Center<br>8-2 Nihonbashi, 2-Chome<br>Chuo-ku, Tokyo PC 103-0027, Japan |
| Banque de Financement et de Tresorerie | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 11 Avenue d#apposlena<br>BP 2013 - 75761 Cedex 16<br>France<br>Attn: Legal Group |
| | | | 11 Avenue d'lena<br>BP 2013 - 75761 Cedex 16<br>France<br>Attn: Legal Group |
| BARCLAYS BANK PLC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 200 Park Avenue<br>New York, NY, 10166 |
| BARTON SPRINGS CDO LIMITED SPC SERIES 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| BAV RBI RENTEN EBTR 556778 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PIMCO<br>840 Newport Center Dr, Ste 100<br>Newport Beach, CA<br>92660 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| BBVA 5X5 FI | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Banco Bilbao Vizcaya Argentaria, S.A. Plaza San Nicolas #4 Bilbao, Vizcaya 28005 Spain |
| BBVA Bancomer SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Av. Universidad 1200 Col. Xoco 03339 Mexico |
| | | | Av. Universidad 1200 Col. Xoco 03339 Mexico |
| Bear Stearns Bank plc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o JPMorgan Chase Legal Department 245 Park Avenue, 11th Floor New York, NY, 10167  Attn: Don Thompson |
| Bear Stearns Credit Products Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o JPMorgan Chase Legal Department 245 Park Avenue, 11th Floor New York, NY, 10167  Attn: Don Thompson |
| Bear Stearns Forex Inc. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 245 Park Avenue New York, NY, 10167  Attn: David Schoenthal |
| | | | Legal Department 245 Park Avenue, 11th Floor New York, NY, 10167  Attn: Don Thompson |
| Bear Stearns International Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o JPMorgan Chase Legal Department 245 Park Avenue, 11th Floor New York, NY, 10167  Attn: Don Thompson |
| | | | One Metrotech Center North 7th Fl Brooklyn, NY, 10167  Attn: Derivatives Operation |
| Bell Trace Obligated Group | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Bell Trace Obligated Group c/o East 10th Street Property, LLC 2749 East Covenanter Dr. Bloomington, IN, 47401  Attn: Chief Executive Officer |
| | | | c/o East 10th Street Property, LLC 2749 East Covenanter Dr. Bloomington, IN , 47401  Attn: Chief Executive Officer |
| BELLE HAVEN ABS CDO 2005-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED P.O. Box 1093 Queensgate House, 113 South Church Street George Town, Grand Cayman, CAYMAN ISLANDS |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | P.O. BOX 1093 GT, QUEENSGATE HOUSE, SOUTH CHURCH STREET ATTN: GENERAL COUNSEL OR CORPORATE EXEC GEORGE TOWN, GRAND CAYMAN, CAYMAN ISLANDS |
| | | | Wells Fargo Bank, National Association 9062 Old Annapolis Road Columbia, MD, 21045 Attn: Lisa Ruther |
| BELLE HAVEN ABS CDO 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED P.O. Box 1093 Queensgate House, 113 South Church Street George Town, Grand Cayman, CAYMAN ISLANDS |
| | | | P.O. BOX 1093 GT, QUEENSGATE HOUSE, SOUTH CHURCH STREET ATTN: GENERAL COUNSEL OR CORPORATE EXEC GEORGE TOWN, GRAND CAYMAN, CAYMAN ISLANDS |
| | | | Wells Fargo Bank, National Association 9062 Old Annapolis Road Columbia, MD, 21045 Attn: Lisa Ruther |
| Benedictine Health System | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 503 E. Third St. Suite 206 Duluth, MN , 55805 |
| Berkeley County Public Service Sewer District | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 944 2160 Eagle School Road Martinsburg WV , 25461 |
| BERYL FINANCE LIMITED SERIES 2005-11 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2005-14 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2005-16 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2005-7 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2006-15 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016 Attn: Thomas Musarra |
| | | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2006-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2006-6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited Walker House, 87 Mary Street George Town, Grand Cayman, CAYMAN ISLANDS |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| BERYL FINANCE LIMITED SERIES 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-10 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-11 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-13 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-14 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Dante Finance Public Limited Company<br>AIB International Centre<br>International Financial Services Centre<br>Dublin 1, Ireland |
| | | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-15 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Dante Finance Public Limited Company<br>AIB International Centre<br>International Financial Services Centre<br>Dublin 1, Ireland |
| | | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-7 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2007-8 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2008-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2008-14 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2008-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2008-6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| BERYL FINANCE LIMITED SERIES 2008-7 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Dante Finance Public Limited Company<br>AIB International Centre<br>International Financial Services Centre<br>Dublin 1, Ireland |
| | | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| Bethlehem Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 10 East Church Street<br>Bethlehem , 18018 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Bexar County Health Facilities | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 233 N Pecos, Suite 590<br>San Antonio, TX , 78207 |
| BGI/CorePlus Bond Fund B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 400 Howard Street<br>San Francisco, CA , 94105 |
| BH FINANCE LLC | 1271, LLC | | Berkshire Hathaway Reinsurance Group<br>100 First Stamford Place<br>Stamford, CT, 06902 |
| Bippart Family Trust | LEHMAN BROTHERS OTC DERIVATIVES INC. | | The Bippart Family Trust<br>555 Montgomery Drive<br>Unit 68<br>Santa Rosa, CA , 95409-8818<br><br>Attn: John D. Bippart |
| Blue Mountain Credit Alternatives Master Fund LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 42701 dated 11th Sept 2008 with maturity 20th Dec 2010 | 280 Park Avenue<br>5th Floor East<br>New York, 10017<br>United States |
| BLUE POINT CDO LIMITED SPC SERIES 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| BLUE POINT CDO LIMITED SPC SERIES 2005-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| BLUE POINT CDO SPC, F/A/O THE SERIES 2005-1 SEG PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| BLUE POINT CDO SPC, F/A/O THE SERIES 2005-2 SEG PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| BLUEBAY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o BlueBay Asset Management Limited, Attn: Melanie Davison<br>Times Place<br>45 Pall Mall<br>London, SW1Y5JG<br>UK |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o BlueBay Asset Management Limited, Attn: Melanie Davison<br>Times Place<br>45 Pall Mall<br>London, SW1Y5JG<br>UK |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Bluebay / GL1 INKA HYGOTH | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BLUEBAY ASSET MGMT LTDA/C STICHTING BEDRI METALEKT | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BLUEBAY ASSET MNGNT PLCA/C INTERPOLIS PENSIOENENVE | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BLUEBAY STRUCTURED FUNDSHIGH YIELD ENHANCED FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BlueBay Structured High Yield | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BLUEBAY STRUCTURED HIGH YIELD BOND SUB-TRUST, A SUB-TRUST OF PANACEA TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BlueBay Asset Management Plc 45 Pall Mall London, SW1Y 5JG Melanie Davison, Head of Operations |
| Bluebay/Bluebay High Yield Bond Fund | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o Bluebay Asset Management 77 Grosvenor Street London, W1K 3JR England |
| BLUESTEP FINANCE (NO2) LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 47 Esplanade St. Helier, JE1 0BD Jersey |
| | | | Bluestep Finance (No.2) Limited Box 23088 Stockholm, 104 35 Sweden |
| | | | BOX 23054 104 35 Stockholm, Sweeden Mr David Torpey |
| Boca Raton Community Hospital, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 745 Meadows Road Boca Raton, FL, 33486 Attn: Chief Financial Officer |
| Bonten Media Group Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 675 Third Avenue Suite 2521 New York, NY, 10017 |
| BOULDER COMMUNITY HOSPITAL | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 6/23/1994 | North Broadway and Balsam P.O. Box 9019 Boulder, CO, 80301 Attn: Joe McDonald |
| Boultbee Vasteras AB | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Boultbee (VÃsterÃs) AB, c/o EFM (Sverige) AB Box 49166, Stockholm Fleminggatan 48, Stockholm, 100 29 Sweden |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Boultbee (VÃsterÃs) AB, c/o EFM (Sverige) AB<br>Box 49166,<br>Stockholm<br>Fleminggatan 48, Stockholm, 100 29<br>Sweden |
| Brian Spanel | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 177714 Little Leaf Court<br>Chesterfield, MO,  63005<br><br>Attn: Brian and Kathy Spanel |
| Brigade Leveraged CapitalStructures Fund Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Brigade Capital Management LLC<br>717 Fifth Avenue, Suite 1301<br>New York, NY, 10022<br><br>Attn: Raymond Luis |
| BRM ABERDEEN GLOBAL EQUITIES | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 7/29/2008 (8211LL00817) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| Buck Institute for Age Research | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8001 Redwood Blvd<br>Novato, CA , 94945<br><br>Attn: Janes J. Kovach, MD, JD |
| BUILDING FINANCE COMPANY OF TENNESSEE | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Chestnut Street Tower<br>605 Chestnut Street Suite 200<br>Chattanooga, TN ,  31450 |
| C.M. Life Insurance Company | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Babson Capital Mgt LLC<br>1500 Main Street, Suite 2800<br>Springfield, MA , 01115<br><br>Attn: Michele Kunitz |
| CAAM SING-GIC-GLOBAL FixedIncome and Currency Over | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 168 Robinson Road<br>#22-03, Capital Tower,<br>068912<br>Singapore<br>Attn: Mr. Winston Thng / Ms. Isabella Tham |
| CACEIS BANK LUX / CAAM(PORTFOLIO FOREX TRDG) GIVE- | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 5 Allee Scheffer<br>Luxembourg<br>L-2520<br>Luxembourg<br>Attn: Gilles Normand/Jean-Pierre Valentini |
| Cadbury Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2150 Route 38<br>Cherry Hill  NJ  , 08002-4302 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2150 Route 38<br>Cherry Hill  NJ   , 08002-4302 |
| Caisse De Depot et Placement Du Quebec | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1000, Place Jean Paul Riopelle<br>Montreal, Quebec, H2Z 2B3<br>Canada<br>Attn: Vice President |
| Caisse Regional CreditAgricoleParis Ile de France | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Siege Social: 26, quai de la Rapee<br>75596 Paris Cedex 12<br>France<br>Attn: Francoise Debrus |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Caixa Geral De Depositos, SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Av Joao XXI, 63<br>Lisboa Codex, 1017<br>Portugal<br>Spain<br>Attn: Jose Brito |
| California College of Arts & Crafts | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o California Education Facility<br>450 Irwin St.<br>San Francisco, CA, 94107 |
| CALIFORNIA COUNTY TOBACCO SECU RITIZATION AGENCY - LOS ANGELE S COUNTY (THE) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 500 West Temple Streeet<br>Room 432<br>Los Angeles, CA, 90012<br><br>Attn: Mark J Saladino |
| CALIFORNIA COUNTY TOBACCO SECURITIZATION AGENCY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1010 10th Street<br>Suite 6800<br>Modesto, CA, 95354<br><br>Jenine Windeshausen |
| California Housing Finance Agency | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1121 L Street<br>Sacramento, CA, 95814 |
| CALIFORNIA INDEPENDENT SYSTEM OPERATOR CORPORATION | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 151 Blue Ravine Road<br>Folsom, CA, 95630<br><br>Attn:  Daniel J. Schonkwiler, Assistant General Counsel |
| | | | Unit 17<br>1000 S Fremont Ave<br>Alhambra, CA  , 91803 |
| CALYON | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Calyon Seoul<br>19th Floor, Kyobo Building-1, 1Ka<br>Chongro, Chongro-ku , 110-714,<br>Seoul, Korea |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 9 quai du President Paul Doumer<br>92920 Paris La Defense Cedex<br>France<br>Attn: Xavier Richard |
| | | | Calyone Credit Argricole CIB<br>1301 Avenue of the Americas<br>New York, NY, 10019<br><br>Attn:  Dualn Goldie - Morrison / Richard Carlson |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1301 Avenue of the Americas<br>New York, NY, 10019<br><br>Attn: Manager, Capital Markets |
| | | | Broadwalk House<br>5 Appold Street<br>London, EC2A 2DA<br>United Kingdom<br>Attn: Swaps Back Office |
| | | | Calyon<br>1301 Avenue of the Americas<br>New York, NY, 10019<br><br>Attn: Manager, Capital Markets |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Calyon<br>Calyone Credit Argricole CIB<br>1301 Avenue of the Americas<br>New York, NY, 10019<br><br>Attn: Dualn Goldie - Morrison / Richard Carlson |
| Camden County Municipal Utilities | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1645 FERRY AVE<br>CAMDEN  NJ  , 08104 |
| Canadian Imperial Bank of Commerce | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 199 Bay Street<br>Commerce Court West, 6th Floor<br>Toronto, Ontario, M5L 1A2<br>Canada<br>Attn: Michele Hunt |
| | | | 425 Lexington Avenue<br>New York, NY, 10017<br><br>Attn: Manager, Swap Operations |
| | | | Commerce Court<br>Toronto, Ontario, M5L 1A2<br>Canada<br>Attn: Manager, Swap Operations |
| Capmark Finance Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o GMAC Com. Mort. Corp.<br>200 Witmer Road<br>Horsham, PA, 19044<br><br>Attn: Controller Capital Markets - |
| CARBON EMISSION RIGHT | LEHMAN BROTHERS COMMODITY SERVICES INC. | | UK Registry<br>3 Whitehall Place<br>London, SW1A 2AW<br>United Kingdom |
| Cargill Financial Services International, Inc. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 6000 Clearwater Drive<br>Minnetonka, MN , 55343-9497 |
| | | | 9350 Excelsior Blvd.<br>MS 142-4B<br>Hopkins, MN , 55343 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9350 Exceisior Blvd.<br>MS 142-4B<br>Hopkins, MN , 55343 |
| CARGILL INTERNATIONAL S.A. | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 9350 Exceisior Blvd.<br>MS 142-4B<br>Hopkins, MN, 55343 |
| | | | For Confirms, Settlements and Docs  - Singapore<br>Cargill International S.A - Singapore Branch<br>300 Beach Road #23-01<br>The Concourse, 199555<br>Singapore<br>Swaps Administraion |
| | | | With respect to London Branch Transactions<br>Cargill International S.A.<br>14 chemin De-Normandie<br>1206 GENEVA<br>Switzerland<br>See Agreement |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Cargill Limited "EDI" | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 12700 Whitewater Drive<br>Minnetonka, MN , 55434<br><br>Attn: Credit Department |
| | | | 15407 McGinty Road West<br>Wayzata, MN , 55391-2399<br><br>Attn: Linda Kunert |
| | | | 9350 Exceisior Blvd.<br>MS 142-4B<br>Hopkins, MN , 55343 |
| CARLYLE PARTNERS II LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | CARLYLE PARTNERS II LP<br>520 Madison Avenue, 41FL<br>New York, NY<br>10022<br>USA<br>Andria Trinidad |
| Carnegie Institution of Washington | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1530 P Street, N.W.<br>Washington, D.C. , 20005-1910<br><br>Attn: Director of Administration and Finance |
| CATHOLIC HEALTHCARE WEST | LEHMAN BROTHERS SPECIAL FINANCING INC. | Forward Purchase Agreement dated on 9/2/1999 | 185 Berry Street, Suite 300<br>San Francisco, CA , 94107 |
| CBTC 2004-6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | U.S. Bank Trust National Association<br>100 Wall Street<br>New York, NY<br>10005<br><br>Attn: corporate Trust |
| Cerberus International, LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Cerberus International, Ltd.<br>c/o Partridge Hill Overseas Management, LLC<br>299 Park Avenue, 23rd Floor<br>New York, NY, 10171<br><br>Attn: Adam Sperling |
| CF BESPOKE INVESTMENT FUNDS - IPD UK MONTHLY PROPERTY INDEX TRACKER FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Capita Financial Group<br>2 The Loulevard<br>City West One Office Park<br>Gelderd Road, LS12 6NT<br>Leeds<br>Martin Clarkson |
| | | | John Stow House, Second Floor<br>18 Bevis Marks<br>London, EC3A 7JB<br>UK |
| Chapel Hill School District | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 125<br>Mt. Pleasant  NC  , 75456 |
| Charity Obligated Group | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4600 EDMUNDSON ROAD<br>ST LOUIS, MO  , 63134 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| CHARITY SELECT UK BOND FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00298) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| CHELSEA MA (CITY OF) (TE) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BayBank<br>7 New England Executive Park<br>Burlington, MA<br>01803-5008<br>USA<br>Gary Dougherty |
| CHEROKEE WATER & SEWERAGE AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Post Office Box 1006<br>One Main Street<br>Canton, GA , 30114 |
| CHERRY HILL CDO SPC 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| CHERRY HILL CDO SPC 2007-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| CHERRY HILL CDO SPC, F/A/O THE SERIES 2007-1 SEG PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| CHERRY HILL CDO SPC, F/A/O THE SERIES 2007-2 SEG PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| Chestnut Hill Benevolent Association | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 910 Boylston Street<br>Chestnut Hill , 02467 |
| China Development Bank | LEHMAN BROTHERS SPECIAL FINANCING INC. | | No.29, Fu Cheng Men Wai Street<br>Xicheng District<br>Beijing 100037, China<br>Attn: General Office |
| CHRISTIAN CARE MESA, INC. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2002 W. Sunnyside Dr.<br>Phoenix AZ , 85072-3210 |
| Christian Care Retirement Apartments, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2002 West Sunnyside Drive<br>Phoenix, AZ, 85029<br><br>Attn: John Norris |
| Citadel Equity Fund Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 131 South Dearborn St<br>Chicago, IL, 60603<br><br>Attn: Christopher Ramsey |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Citadel Equity Fund Ltd<br>c/o Citadel Limited Partnership<br>131 South Dearborn Street<br>Chicago, IL, 60603<br><br>Attn: Legal Dept |
| Citi Canyon Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o CIBC Bank and Trust Company (Cayman) Limited<br>P.O. Box 694 GT, Edward Street<br>Georgetown, Grand Cayman, Cayman Islands<br>British West Indies |
| | | | Canyon Capital Advisors, LLC<br>9665 Wilshire Boulevard, Suite 200<br>Beverly Hills, CA , 90212<br><br>Attn: Accounting |
| | | | Citi Alternative Investments<br>55 East 59th Street<br>New York, NY, 10022<br><br>Attn: Raymond Nolte |
| | | | Citigroup Alternative Investments LLC<br>731 Lexington Avenue, 25th Floor<br>New York, NY, 10022<br><br>Attn: Vanessa Price |
| | | | PFPC International Ltd.<br>Riverside Two Sir Rogersons Quay<br>Grand Canal Dock, Dublin 2<br>Ireland<br>Attn: Fiona Finucane |
| | | | PricewaterhouseCoopers<br>George's Quay<br>Dublin 2<br>Ireland<br>Attn: Alan Nixon |
| Citibank, N.A. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 250 West Street, 10th fl.<br>New York, NY, 10013<br><br>Attn: Director Derivatives Operations |
| | | | 388 Greenwich Street, 17th Floor<br>New York, NY, 10013<br><br>Attn: Scott Flood/Director of Derivatives |
| | | | Legal Dept.<br>77 Water Street, 9th fl.<br>New York, NY, 10004<br><br>Attn: Department Head |
| CITIGROUP ENERGY INC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 388 Greenwich St, 17th Fl<br>New York, NY, 10013<br><br>Attn: Senior Deputy General Counsel |
| Citigroup Financial Products Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1987 Int Rate & CCY Exch Agrmt - Multicurrency dated on 8/15/1989 | 388 Greenwich Street, 17th Floor<br>New York, NY, 10013<br><br>Attn: Senior Deputy General Counsel |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Citibank Financial Products<br>388 Greenwich Street, 17th Floor<br>New York, NY,  10013<br><br>Attn: Senior Deputy General Counsel |
| Citizens Electric Company of Lewisburg, PA | LEHMAN BROTHERS COMMODITY SERVICES INC. | | McNees Wallace<br>P.O. Box 1166<br>100 Pine St<br>Harrisburg, PA,  17108-1166<br><br>Attn: Pamela C. Polacek |
| City Lofts St Vincent Str | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City Lofts Group plc<br>The Exchange<br>Station Parade Harrogate<br>North Yorkshire, HG1 1TS<br>United Kingdom<br>Attn: Nick Moody/Bari Phillips |
| CLARK ATLANTA UNIVERSITY, GA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 223 James P. Brawley Drive<br>Atlanta  GA  , 30314 |
| Coast Electric Power Assoc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Coast Electric Power Association<br>(18020 Hwy 603, Kiln) P.O. Box 2430<br>Bay St. Louis, MS, 39521-2430<br><br>Attn: Manager of Finance and Accounting |
| Colonial Bancgroup, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | The Colonial Bancgroup, Inc.<br>Colonial Financial Center,<br>5th Floor, One Commerce Street<br>Montgomery, AL, 36104<br><br>Attn: Legal Group |
| COLORADO EDUCATIONAL AND CULTURAL FACILITIES AUTHORITY (CO) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O Pinnacle Charter School<br>1981 Blake Street<br>Denver, CO , 80202 |
| Colorado Housing and Finance Authority | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 1981 Blake Street<br>Denver, CO , 80202<br><br>Attn: CFO |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1981 Blake Street<br>Denver, CO , 80202<br><br>Attn: CFO |
| COLUMBUS OH (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City of Columbus, Mississippi<br>523 Main St<br>Columbus Mississippi, 39701<br><br>Attn: Mayor |
| | | | Columbus Light and Water Department<br>420 4th Avenue South<br>Columbus Mississippi, 39701<br><br>Attn: General Manager |
| Columbus, City of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City Hall<br>523 Main St.<br>P.O. Box 1408<br>Columbus  MS   , 39703-1408 |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| COMMERCES DE LA REPUBLIQUE | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 47 Rue de Monceau<br>Paris , 75008<br>France |
| Commerzbank Aktiengesellschaft(Frankfurt only) | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Commerzbank AG<br>32-36 Neue Mainzer Str.<br>Frankfurt/Main<br>60311<br>Germany<br>Attn: CFP Risk Control |
| Commonwealth of Massachusetts | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 2/27/2003 | Department of the State Treasurer<br>Room 227<br>State House<br>Boston, MA , 02133<br><br>Attn: Timothy P. Cahill |
| | | | One Ashburton Place<br>12th floor<br>Boston, MA , 02108<br><br>Attn: Stearns Jeff |
| Commonwealth of Puerto Rico | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sidley Austin LLP<br>c/o Commonwealth of Puerto Rico<br>787 Seventth Avenue<br>New York, NY, 10019 |
| COMMONWEALTH OF PUERTO RICOREF Financial SecurityA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sidley Austin LLP<br>c/o Commonwealth of Puerto Rico<br>787 Seventh Avenue<br>New York, NY, 10019 |
| COMMUNITY REDEV AGENCY OF CITY OF PALMDALE | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 38300 North Sierra Highway<br>Palmdale, CA , 93550 |
| COMMUNITY REHABILITATION PROVIDERS FACILITIES ACQUISTION PROGRAM | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Forward Delivery Agreement dated on 7/2/1997 | 233 SOUTH WACKER DRIVE STE 5310<br>Chicago, IL, 60606-6368 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 7/2/1997 | 233 SOUTH WACKER DRIVE STE 5310<br>Chicago, IL, 60606-6368 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Forward Delivery Agreement dated on 5/12/1998 | 233 SOUTH WACKER DRIVE STE 5310<br>Chicago, IL, 60606-6368 |
| COMP HOLDINGS INC | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/11/2008 (8224LL00052) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| CONCORDIA ADVISORS LLCA/C CONCORDIA MUNI OPPORTUNI | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 112 Harbour Yard<br>Chelsea Harbor<br>London, SW10 0XD<br>United Kingdom<br>Attn: Settlements |
| | | | 1350 Avenue of the Americas<br>Suite 3202<br>New York, NY, 10019<br><br>Attn: Ken Carroll |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Concordia Institutional Multi-Strategy Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1350 Avenue of the Americas<br>Suite 3202<br>New York, NY, 10019<br><br>Attn: Tran Truong |
| | | | c/o Quorum International Limited<br>Reid House, 31 Church Street<br>Hamilton, HM 12<br>Bermuda |
| Concordia Partners LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1350 Avenue of the Americas<br>Suite 3202<br>New York, NY, 10019<br><br>Attn: Ken Carroll |
| | | | c/o Quorum International Limited<br>Reid House - 31 Church Street<br>Hamilton, HM 12<br>Bermuda |
| | | | c/o Quorum International Limited<br>Reid House - 31 Church Street<br>Hamilton, HM 12<br>Bermuda |
| Cong. Machne Chaim Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1363 50th Street<br>Brooklyn, NY, 11219<br><br>Attn: Rabbi Nuchem Klein |
| CONSUMER UNSECURED REPERFORMING LOANS (CURL) PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o Wilmington Trust SP Services (London) Limited<br>Fifth Floor<br>6 Broad Street<br>London, EC2M 7JH<br>UK |
| CONVEX MASTER FUND LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Convex Master Fund, Ltd<br>Torre de los Profesionales Yaguaron 1407<br>Office 610, Montevideo<br>11000<br>Uruguay<br>Attn: Andres Azicri |
| COOPER HEALTH SYSTEM, NJ | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 224 Barcley Pavillion, Route 70E<br>Cherry Hill NJ , 08304 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 224 Barcley Pavillion, Route 70E<br>Cherry Hill NJ , 08304 |
| Cooperatieve Centrale Raiffeisen-Boerenleenbank BA | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Rabobank International<br>P.a. Croeselan 18, 3521 CB Utrecht<br>P.o. Box 17100, 3500 HG Utrecht<br>The Netherlands<br>Attn. Global Special asset Management/US609 |
| Copper Creek CDO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 801 Grand Avenue<br>Des Moines, IA , 50392-0490 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| COPPER CREEK CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| COPPER CREEK CDO SPC, F/A/O SERIES 2007-1 SEG PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| CORAL POWER LLC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 4445 Eastgate Mall, Suite 100<br>San Diego, CA , 92121 |
| | | | Two Houston Center<br>909 Fannin, Plaza Level 1<br>Houston, TX, 77010<br><br>Attn:  Ann L. Reynaud, Esq. |
| CPC CORPORATION,TAIWAN | LEHMAN BROTHERS COMMODITY SERVICES INC. | | CPC Corporation, Taiwan<br>No 3, Songren Road, Sinyi District<br>Taipei City<br>11010<br>Taiwan<br>Manager of Risk Management Department |
| CQS ABS MASTER FUND LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | PO Box 309GT Ugland House<br> South Church Street<br> Cayman Islands |
| Credit Protection Trust 207 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | FSA Administrative Services, LLC, as Trustee for Credit Protection Trust 207<br>31 West 52nd Street<br>New York, NY, 10019 |
| Credit Protection Trust 48 (Coast 2001-1) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Financial Security Assurance Inc<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Bruce E. Stern |
| CREDIT SUISSE CAPITAL LLC | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Uetlibergstrasse 231<br>PO Box CH 8070<br>Zurich<br>Attn: Carl Baker, Switzerland |
| CREDIT SUISSE INTERNATIONAL | LEHMAN BROTHERS COMMODITY SERVICES INC. | | One Cabot Square<br>London E144QJ<br>United Kingdom |
| CREDIT SUISSE SECURITIES(EUROPE) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | One Cabot Square<br>London E144QJ<br>United Kingdom<br>Attn:  Kik Kwan Chung; Marisa Scauzillo |
| Cross Road Retirement Comm | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1302 Old Cox Road<br>Asheboro, NC, 27205<br><br>Attn: Executive Director |
| CROWN CITY CDO 2005-2 LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| CROWN CITY CDO 2005-2 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| CROWN CITY CDO 2005-2 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 850 LIBRARY AVENUE<br>SUITE 204<br>NEWARK, DE, 19711 |
| | | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| Daiwa Securities SMBC Co., Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Eitai-Daiya Bldg, 12th FL<br>14-5, Eitai 1-chome<br>Koto-ku, Tokyo<br>135-0034<br>Japan<br>Attn: Derivatives and structured financial product |
| | | | Gran Tokyo North Tower, 27th Floor<br>9-1, Marunouchi 1-chome, Chiyoda-ku<br>Tokyo, 100-6753<br>Japan<br>Attn: Hideto Shindo |
| Danske Bank A/S | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2-12 Holmens Kanal<br>Copenhagen K<br>DK1092<br>Denmark<br>Attn: Danske Markets Legal |
| DAVIS MEMORIAL HOSPITAL INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 1697<br>Elkins, WV , 26241 |
| DBSO CORPORATES LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Drawbridge Special Opportunities Advisors, LLC<br>1345 Avenue of the Americas, 47th Floor<br>New York, NY, 10105<br><br>Attn: Glen Cummins |
| Deaconess Billings Clinic | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2800 10th Avenue North<br>P.O. Box 37000<br>Billings, Montana, 59107 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2800 10th Avenue North<br>P.O. Box 37000<br>Billings, Montana, 59107 |
| DEBT II AUSTIN-EOP LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 591 West Putnam Avenue<br>Greenwich CT , 06830 |
| Depfa ACS Bank | LEHMAN BROTHERS SPECIAL FINANCING INC. | | No 1Commons Street<br>Dublin 1, Ireland<br>Attn: Control Settlements |
| DEUTSCHE ASSET MANAGEMENT (INTERNATIONAL) LTD | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233LL00194) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00197) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00210) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00299) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00303) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233LL00198) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00211) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00294) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00311) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00300) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00295) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/11/2008 (8224LL00051) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| DEUTSCHE BANK AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 60 Wall Street, 36th Floor<br>New York, NY, 10005-2858 |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 60 Wall Street, 36th Floor<br>New York, NY, 10005-2858 |
| DIADEM CITY CDO LIMITED SERIES 2008-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| DIADEM CITY CDO LIMITED SERIES 2008-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| DIADEM CITY CDO LIMITED SERIES 2008-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Walkers SPV Limited<br>Walker House, 87 Mary Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| DIAMOND FINANCE 2006-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>IFSC Dublin 1<br>Ireland |
| | | | AIB International Centre<br>IFSC<br>Dublin 1, Ireland |
| DISTRICT OF COLUMBIA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 441 4th Street N.W., Suite 360N<br>Washington, D.C. , 20001<br><br>Attn: N. Anthony Calhoun |

## Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| DOUGLASVILLE-DOUGLAS COUNTY GEORGIA WATER & SEWER AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Forward Delivery Agreement dated on 7/1/2010 | The Coastal Bank of Georgia 1500 Newcastle Street Brunswick, GA 31520 USA W.M. Pickard |
| DOW JONES CDX.NA.HY.3 TRUST 1 DECEMBER 2009 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | US Bank 100 Wall Street Suite 1600 New York, NY, 10005 |
| DOW JONES CDX.NA.HY.3 TRUST 2 DECEMBER 2009 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | US Bank 100 Wall Street Suite 1600 New York, NY, 10005 |
| DOW JONES CDX.NA.HY.3 TRUST 3 DECEMBER 2009 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | US Bank 100 Wall Street Suite 1600 New York, NY, 10005 |
| DOW JONES CDX.NA.HY.3 TRUST 4 DECEMBER 2009 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | US Bank 100 Wall Street Suite 1600 New York, NY, 10005 |
| Drawbridge Special Opportunities Fund LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Drawbridge Special Opportunities advisors, LLC 1251 Avenue of the Americas, 16th Flood New York, NY, 10020 Attn: Kevin Treacy |
| Drawbridge Special Opportunities Fund LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Drawbridge Special Opportunities advisors, LLC 1251 Avenue of the Americas, 16th Flood New York, NY, 10020 |
| DRESDNER BANK AG | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 30 Gresham Street London, EC2P 2XY United Kingdom Marcus Nettleton (Capital Markets - FICC) |
| | | | Dresdner Bank AG London Branch P.O. Box 52715 London, EC2P 2XY United Kingdom Head of Legal Services |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Jurgen-Ponto Platz 1 D- 60301 Frankfurt 60301 Germany |
| | | | PO Box 52715 30 Greshman Street London, EC2P2XY United kingdom |
| DTE Energy Trading, Inc. | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 414 S. Main Street; Suite 200 Ann Arbor, MI , 48104 Attn: Gregory Staton, Esq., General Counsel |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Dubai Holding Comm Operat | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Dubai Holdings<br>P.O. Box 66000<br>Dubai, United Arab Emirates<br>Attn: Dubai Holdings |
| Duncan Regional Hospital | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1407 Whisenant Drive<br>Duncan OK , 73533 |
| Dunwoody Village Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3550 West Chester Pike<br>Newtown Square, PA, 19073-4168<br><br>Attn: Robert Supper, Senior Vice President |
| DZ Bank Ireland plc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Guild House, Guild Street<br>I.F.S.C.<br>Dublin 1, Ireland<br>Attn: Mark Jacob |
| E.ON UK PLC (ISDA) | LEHMAN BROTHERS COMMODITY SERVICES INC. | | E.ON UK Plc<br>Westwood Way<br>Westwood Business Park<br>Coventry, CV4 8LG<br>United Kingdom<br>Finance Director: Energy Wholesale |
| E-470 PUBLIC IMPROVEMENT HIGHWAY AUTH. | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Forward Delivery Agreement dated on 12/16/1997 | 22470 E. 6th Parkway, Suite 100<br>Aurora, CO , 80018 |
| East Bay Municipal Utility District | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 375 Eleventh Street<br>Oakland, CA , 74807-7240 |
| | | | 375 Eleventh Street<br>Oakland, CA , 74807-7240 |
| EDF Trading Limited | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 80 Victoria Street, Cardinal Place<br>London SW, 1E5JL<br>United Kingdom<br>Attn: Robert Quick |
| EFG Private Bank S.A. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 24, Quai du Seujet<br>CH-1211 Geneva 2<br>Switzerland |
| EGYPT TRUST 1 - SERIES 2000 A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank USA<br>140 Broadway<br>New York, NY, 10005 |
| | | | HSBC Bank USA<br>140 Broadway<br>New York, NY, 10005<br>United States |
| El Centro del Barrio | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2300 W. Commerce<br>San Antonio, Texas , 78207<br><br>Attn: Chief Financial Officer |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2300 W. Commerce<br>San Antonio, Texas , 78207 |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS INC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 7620 Metro Center Drive<br>Austin, Texas , 78744 |
| ELIZABETH SCHOOL DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 500 North Broad Street<br>Elizabeth, NJ , 07208 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| EMERALDS SERIES 2007-1 TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 2/5/2007 | c/o Chapman and Cutler<br>111 West Monroe Street<br>Chicago, IL, 60603-4080<br><br>James E. Spiotto |
| | | | US Bank<br>100 Wall Street<br>Suite 1600<br>New York, NY, 10005 |
| Energy XXI Gulf Coast Inc. | LEHMAN BROTHERS COMMODITY SERVICES INC. | | c/o Suite 2626<br>1021 Main<br>Houston, TX, 77002 |
| | | | Canon's Court<br>22 Victoria Street<br>PO Box HM 1179<br>Hamilton, HM EX<br>Bermuda |
| EPCO HOLDINGS INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | EPCO Holdings, Inc.<br>1100 Louisiana Street<br>Houston, TX, 77002-5227<br><br>Attn: Treasurer |
| Episcopal Homes Foundation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3650 Mt. Diablo Blvd, #100<br>Lafayette CA , 94549 |
| ERIE CITY WATER AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 340 W Bayfront Parkway<br>Erie, PA 1, 6507 |
| Erlanger Health System Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 975 East Third Street<br>Chattanooga TN , 37403<br><br>Attn: Chief Financial Officer |
| Erste Europaische Pfandbrief-und | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Kommunalkreditbank AG<br>25 rue Edward Steichen L-2540<br>Luxembourg<br>Attn: Back Office |
| ESKATON GOLD RIVER LODGE, CA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5105 Manzanita Ave<br>Carmichael CA , 95608 |
| Eskaton Gold River Lodge/DSRF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5105 Manzanita Ave<br>Carmichael CA , 95608 |
| Eskaton Properties, Incorporated | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 7/28/1999 | 5105 Manzanita Avenue<br>Carmichael, CA , 95608-0598 |
| | | | 5105 Manzanita Avenue<br>Carmichael, CA , 95608-0598 |
| ESP FUNDING I, LTD. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | LaSalle Bank NA<br>181 West Madison Street, 32nd Floor<br>Chicago, IL, 60602<br><br>Attn: CDO Trust Service Group - ESP Funding I, Ltd |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| EUROSAIL 2006-1 PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| EUROSAIL 2006-2BL PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| EUROSAIL 2006-3NC PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| EUROSAIL -NL 2007-2 BV | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| | | | Stichting Security Trustee Euosail-NL 2007-2<br>Frederik Roeskestraat 123 I<br>Amsterdam, 1076 EE<br>Netherlands |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| | | | Stichting Security Trustee Euosail-NL 2007-2<br>Frederik Roeskestraat 123 I<br>Amsterdam, 1076 EE<br>Netherlands |
| EUROSAIL NL 2008-1 B.V | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| | | | Stichting Security Trustee Euosail-NL 2007-2<br>Frederik Roeskestraat 123 I<br>Amsterdam, 1076 EE<br>Netherlands |
| EUROSAIL-UK 2007-2NP PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Old Broad Street<br>London, EC2N 1HQ<br>UK |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o BNY Corporate Trustee Services Ltd<br>One Canada Square<br>London, E14 5Al<br>UK |
| EVERGREEN SOLAR INC | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 138 Bartlett Street<br>Marlboro, MA , 01752-3016 |
| EXPORT IMPORT BANK OF CHINA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | No. 30 Fu Xing Nei Street<br>Xicheng District, Beijing, People's Republic of China |
| | | | No. 77, Beiheyan St<br>Dongcheng District<br>Beijing, 100009<br>Attn: Treasury Dept, China |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Bank of China, London Branch<br>90 Cannon Street<br>London , EC4N 6HA<br>United Kingdom<br>Credit and Risk Control Department |
| | | | No. 30 Fu Xing Nei Street<br>Xicheng District, Beijing, People's Republic of China |
| EXUM RIDGE CBO 2006-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Exum Ridge CBO 2006-1, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093GT, Queensgate House<br>South Church Street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: Dale Crowley |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| EXUM RIDGE CBO 2006-2 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Exum Ridge CBO 2006-1, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093GT, Queensgate House<br>South Church Street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: Dale Crowley |
| Exum Ridge CBO 2006-2, Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| EXUM RIDGE CBO 2006-4 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Exum Ridge CBO 2006-1, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093GT, Queensgate House<br>South Church Street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: Dale Crowley |
| EXUM RIDGE CBO 2006-5 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Exum Ridge CBO 2006-5, LTD. c/o Maples Finance Ltd<br>P.O. Box 1093GT<br>Queensgate House<br>South Church Street, Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church street, Grand Cayman<br>Cayman Islands, BWI<br>Attn: Dale Crowley |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| EXUM RIDGE CBO 2007-1, LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Airlie Group<br>115 E Putnam Ave<br>Greenwich CT, 06830<br><br>Attn: Seth Cameron |
| | | | EXUM RIDGE CBO 2007-1, LTD.<br>c/o Maples Finance Limited<br>P.O. Box 1093 GT<br>Queensgate House, South Church Street, Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309 GT<br>Ugland House, South Church Street<br>Grand Cayman, Cayman Islands<br>Attn: Dale Crowley |
| EXUM RIDGE CBO 2007-2 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Airlie Group<br>115 E Putnam Ave<br>Greenwich CT, 06830<br><br>Attn: Seth Cameron |
| | | | EXUM RIDGE CBO 2007-2, LIMITED<br>c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street, Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309 GT<br>Ugland House<br>South Church Street, Grand Cayman, Cayman Islands<br>Attn: Dale Crowley |
| ExxonMobil Gas Marketing Deutschland GmbH | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Exxonmobil Gas Marketing Deutschland GmbH<br>ExxonMobil House<br>Ermyn Way<br>Leatherhead, Surrey, KT22 8UX<br>UK |
| | | | Exxonmobil Gas Marketing Deutschland GmbH<br>Riethorst 12<br>Hanover, 30659<br>Germany |
| F.F. Thompson Health System | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 350 Parrish Street<br>Canandaigua, NY , 14424<br><br>Attn: Chief Financial Officer |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Fairway Finance Company, LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Lord Securities Corporation<br>48 Wall Street, 27th Floor<br>New York, NY, 10005<br><br>Attn: Jill Gordon / Orlando Figueroa |
| | | | Harris Nesbitt Corp., US Securitization Group<br>115 S. LaSalle Street, 13th Floor<br>Chicago, IL, 60603<br><br>Attn: Conduit Management/Liability Management |
| FBE Limited | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 111 Broadway<br>New York, NY, 10006 |
| | | | 111 Broadway<br>New York, NY, 10006 |
| FEDERAL HOME LOAN BANK BOSTONA/C FHLB BOSTON | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 111 Huntington Avenue<br>Boston, MA , 02199 |
| | | | 111 Huntington Avenue<br>Boston, MA , 02199 |
| Federal Home Loan Bank of Cincinnati | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 221 E 4th Street, 10th Floor<br>Cincinnati, OH, 45202-4145<br><br>Attn: Carole L. Cosse |
| Federal Home Loan Bank of Dallas | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8500 Freeport Parkway South<br>Suite 100<br>Irving, TX , 75063-2547<br><br>Attn: Michael Sims, SVP, CFO |
| | | | P.O. Box 619026<br>Dallas/Ft. Worth, TX , 75261-9026<br><br>Attn: Michael Sims, SVP, CFO |
| Federal Home Loan Bank of Indianapolis | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8250 Woodfield Crossing Blvd.<br>Indianapolis, Indiana , 46240<br><br>Attn: Laura L. DiCioccio |
| Federal Home Loan Bank of NewYork | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 101 Park Avenue<br>New York, NY, 10178-0599<br><br>Attention: Patrick A. Morgan, CFO |
| Federal Home Loan Bank of Topeka | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 120 SE 6th Street<br>Topeka KS , 66603-0000<br><br>Attn: Investments |
| | | | 120 SE 6th Street<br>Topeka, KS , 66603<br><br>Attn: Investments |
| | | | P.O. Box 176<br>One Security Benefit Pl, Suite 100<br>Topeka, KS,  66601-0176<br><br>Attn: Matthew D. Boatwright |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| FELICIAN COLLEGE OF LODI | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 101 College Road East<br>Princeton  NJ   , 08540 |
| Finmeccanica S.p.A. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Piazza Monte Grappa 4<br>00195 Rome<br>00195<br>Italy<br>Attn: Financial Department |
| First Data Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2121 North 117th St<br>NP-30<br>Omaha, NE , 68164<br><br>Attn: General Counsel N/A |
| | | | First Data Corp.<br>2121 North 117th St<br>NP-30<br>Omaha, NE , 68164-3600<br><br>Attn: General Counsel N/A |
| FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | Deutsche Bank National Trust Cy<br><br>1761 St Andrew Place<br>Santa Ana, CA, 92705 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| FirstCaribbean International Bank (Bahamas) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o CIBC<br>199 Bay Street<br>Commerce Court West, 6th Floor<br>Toronto, Ontario , M5L 1A2<br>Canada<br>Attn: Martin Griffiths, Michele Hunt |
| | | | c/o FirstCaribbean International Bank Limited<br>Head Office P.O. Box 503<br>Warrens, St. Michael B822026<br>Barbados<br>Attn: Legal Counsel |
| Fletcher Allen Health Care, Vermont | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Medical Center Hospital of Vermont<br>Colchester Avenue<br>Burlington, 05401 |
| FLORIDA POWER & LIGHT COMPANY | LEHMAN BROTHERS COMMODITY SERVICES INC. | | c/o Energy Marketing & Trading Division<br>Mail Stop EMT/JB, 700 Universe Blvd.<br>Juno Beach, Florida , 33408<br><br>Attn: Contracts/Legal |
| FON FINECO OPTIMUM, FI | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Ibañez de Bilbao<br>9 - Bajo<br>BILBAO<br>48009<br>Spain |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| FORD CREDIT AUTO OWNER TRUST 2007-B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o U.S. Bank Trust National Association<br>300 Delaware Avenue, Ninth Floor<br>Wilmington, Delaware, 19801<br><br>Attn: Corporate Trust Department |
| | | | Ford Motor Credit Company LLC<br>c/o Ford Motor Company WHQ<br>One American Road, Suite 801-C1<br>Dearborn, Michigan, 48126<br><br>Attn: Securitization Operations Supervisor |
| | | | Ford Motor Credit Company LLC<br>One American Road, Suite 2411<br>Dearborn, Michigan , 48126<br><br>Attn: Corporate Secretary |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Ford Global Treasury, Inc. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Ford Motor Company<br>World Headquarters<br>One American Road<br>Dearborn, Michigan, 48126<br><br>Attn: Erin Rohde and Jerome Zaremba |
| Fortis Bank NV/SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 520 Madision Avenue<br>New York, NY, 10022<br><br>Attn:  Charles Courouble; Jean - Pierre Paulet |
| | | | 787 Seventh Avenue<br><br>New York, NY, 10019<br><br>Attn:  Richard M. Skoller |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | Montagne de Parc 3<br>Brusse;s, 1000<br>Belgium |
| FORTRESS INV GROUP LLCA/C FIF FND V COINVST FND A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | FORTRESS INVESTMENT FUND V (COINVESTMENT FUND A) LP<br>FIG LLC<br>1345 Avenue of the Americas, 29th Floor<br>New York, NY, 10105<br><br>Attn: Demetrios Tserpelis |
| Foxcroft Academy | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Address For Notices<br>Trustees of Foxcroft Academy<br>975 West Main Street<br>Dover-Foxcroft, ME, 04426 |
| | | | Trustees of Foxcroft Academy<br>975 West Main Street<br>Dover-Foxcroft, ME, 04426<br><br>Attn: Dr. Ray Webb |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| FPL Energy Power Marketing, Inc. | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 700 Universe Blvd.<br>Juno Beach, Florida , 33408<br><br>Attn: Contracts/Legal |
| Franklin W. Olin Collegeof Engineering, INC. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Olin Way<br>Needham, MA , 02492-1200<br><br>Attn: Vice President of Administration of Finance |
| Freedom Forum Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 555 Pennsylvania Ave., N.W.<br>Washington , 20001 |
| FREEDOM PARK CDO LIMITED SPC SERIES 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House, Souch Church St<br>Grand Cayman, , Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| FREEDOM PARK CDO SERIES 2005-1 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| Freeland, John G. | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 1241 Gulf of Mexico Drive - 1103<br>Longboat Key, FL , 34228<br><br>Attn: John G. Freeland |
| Friendship Village of Tempe | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2645 East Southern Avenue<br>Tempe  AZ   , 85282 |
| FSA INCA/C Credit Protection Trust 23 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Financial Security Assurance Inc.<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Insured Portfolio Management Division |
| | | | FSA Administrative Services, LLC, as Trustee<br>for Credit Protection Trust 233<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Bruce Stern |
| | | | With copies to:<br>Financial Security Assurance Inc.<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Insured Portfolio Management Division |
| FSA INCA/C FSA CPT 265 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | FSA Administrative Services, LLC, as Trustee<br>for Credit Protection Trust 265<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Bruce Stern |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| FSA INCA/C FSA CPT 283 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Financial Security Assurance Inc.<br>31 West 52nd Street<br>New York, NY, 10019<br><br>Attn: Bruce E. Stern |
| Fuller Theological Seminary | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 135 North Oakland Avenue<br>Pasadena , 91182 |
| FULLERTON DRIVE CDO LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Fullerton Drive CDO Limited<br>c/o Maples Finance Limited<br>P.O. Box 1093 GT Queens Gate House South Church St<br>Georget Town, Grand Canyon, Cayman Islands<br>Attn: Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| FULLERTON DRIVE CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O NATIONAL REGISTERED AGENTS INC.<br>160 Greentree Drive, Suite 101<br>DOVER, DE, 19904 |
| Fulton Dekalb Hospital Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 80 Jesse Hill Drive, SE.<br>P.O. Box 26135<br>Atlanta, GA , 30303-3050 |
| FULTON GA (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 141 Pryor St.<br>Atlanta, GA , 30303 |
| Gaston Christian School | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1625 Lowell-Bethesda Road<br>Gastonia , 28056 |
| GEMSTONE CDO VI LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Deutche Bank Trust Company Americas<br>1761 East St. Andrew#apposs Place<br>Santa Ana, CA , 92705<br><br>Attn: CDO Business Unit - Gemstone |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House<br>Grand Cayman<br>Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Georgetown University | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Ryan Administration Building<br>37th and O Streets, N.W.<br>Washington , 20057 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Giants Stadium, LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Meadowlands Sports Complex<br>50 State Route 120<br>cc. Financial Security Assurance Inc<br>East Rutherford, NJ , 07073<br><br>Attn: John K. Mara |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Meadowlands Sports Complex<br>50 State Route 120<br>cc. Financial Security Assurance Inc<br>East Rutherford, NJ , 07073<br><br>Attn: John K. Mara |
| GMAC Inv. Mgmt | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 200 Renaissance Center<br>Mail Code: 482-B12-C24<br>Detroit, MI , 48265-2000<br><br>Attn: Swaps Administration Group |
| | | | 767 Fifth Avenue<br>24th Floor<br>New York, NY, 10153<br><br>Attn: Swap Group |
| GMO/IBM Personal Pension PlanTrust | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 9/10/2001 | c/o Grantham, Mayo, Van Otterloo<br>40 Rowes Wharf<br>Boston, MA, 02110 |
| GOLDMAN SACHS AM LPA/C GOLDMAN SACHS CREDIT OPP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |
| | | | Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| GOLDMAN SACHS AM LPA/C GOLDMAN SACHS LIP CREDIT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |
| GOLDMAN SACHS AM LPA/C Goldman Sachs Liq.2007 LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| GOLDMAN SACHS AM LPA/C GOLDMAN SASCHS CREDIT OPP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |
| GOLDMAN SACHS AM LPA/C GS Liquidity Ptnrs Offshor | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |
| GOLDMAN SACHS AM LPA/C GS Mort Credit Opp Fund | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c.o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Ken Topping |
| GOLDMAN SACHS BANK USA (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Goldman Sachs & Co<br>200 West Street<br>New York, NY<br>10282<br>USA<br>Darren Thomas |
| Goldman Sachs DynamicRisk Master Fund Offshore LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson<br>Jersey City, NJ , 07302<br><br>Attn: Joseph Pomo |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Rich Vanecek |
| Goldman Sachs Global Alpha Fund PLC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Goldman Sachs Asset Management<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Rich Vanecek, Stephen Mellas |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Rich Vanecek |
| Goldman Sachs Global Alpha Fund, L.P. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Rich Vanecek |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| GOLDMAN SACHS GLOBALALPHA DYNAMIC RISK FUND LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302<br><br>Attn: Omar Medina |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Islip<br>New York, NY, 10005<br><br>Attn: Karl Wianecki |
| Goldman Sachs Mortgage Credit Opportunities Offsho | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P.<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Kenneth Topping |
| Goldman Sachs QuantitativeStrategies Emerging Mark | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Goldman Sachs Asset Management, L.P<br>30 Hudson St.<br>Jersey City, NJ , 07302 |
| | | | c/o Goldman Sachs Asset Management, L.P.<br>32 Old Slip<br>New York, NY, 10005<br><br>Attn: Rich Vanecek |
| Goldman, Sachs & Co. | LEHMAN BROTHERS OTC DERIVATIVES INC. | | c/o Cleary Gottlieb Steen<br>One Liberty Plaza<br>New York, NY,  1470 |
| | | | Goldman, Sachs<br>85 Broad Street<br>New York, NY, 10004<br><br>Attn: FX Operations |
| Government of Singapore Invest Corporation PTE Ltd | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 168, Robinson Road, #37-01<br>Capital Tower<br>Singapore 068912, Singapore<br>Attn:  Chua Lee Ming |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 168 Robinson Road<br>#22-03, Capital Tower<br>068912<br>Singapore<br>Attn: Lye Poh coon/Isabella Tham |
| | | | 168 Robinson Road<br>#37-01 Capital Tower<br>068912<br>Singapore<br>Attn: Director of Financial Services |
| Grace Schools Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 200 Seminary Drive<br>Winona Lake, IN , 46590<br><br>Attn: Steve Popenfoose |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Grace Village | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 337 Grace Village Dr. Winona Lakes IN , 46590<br><br>Attn: Jeff Carroll |
| GRANITE FINANCE 2007-1-C LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | A#amperL Goodbody Solicitors International Financial Services Centre North Wall Quay Dublin 1, Ireland Attn: Thomas Musarra |
| | | | Deutsche Bank Trust Company Americas 60 Wall Street New York, NY , 10005 United States |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GRANITE FINANCE LIMITED SERIES 2006-11 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Granite Finance Limited Strathvale House North Church Street PO box 1109 GT Grand Cayman BVI, KY1-1102 Cayman Islands |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GRANITE FINANCE LIMITED SERIES 2006-6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Granite Finance Limited Strathvale House North Church Street PO box 1109 GT Grand Cayman BVI, KY1-1102 Cayman Islands |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GRANITE SERIES 2005-10 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY 10016, Attn: Thomas Musarra |
| | | | Granite Finance Limited 68 West Bay Road PO Box 1109 GT Grand Cayman BVI, KY1-1102 Cayman Islands |
| GRANITE SERIES 2005-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | HSBC Trustee (C.I.) Limited PO Box 88 1 Grenville Street St Helier, Jersey JE4 9PF Channel Islands |

# **Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| GRANITE SERIES 2005-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Granite Finance Limited<br>68 West Bay Road<br>PO Box 1109 GT<br>Grand Cayman BVI, KY1-1102<br>Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GRANITE SERIES 2005-7 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Granite Finance Limited<br>68 West Bay Road<br>PO Box 1109 GT<br>Grand Cayman BVI, KY1-1102<br>Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GREENVILLE SC (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 301 University Ridge<br>Suite 200<br>Country Square<br>Greenville  SC  , 29601 |
| GREYSTONE CDO LIMITED SPC SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Greystone CDO SPC, Series 2006-1 Segregated Port<br>c/o Maples Finance Limited<br>P.O. Box 1093GT Queensgate House, South Church St.<br>Grand Cayman, Cayman Islands<br>The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Notices #amper Communication to S#amperP Investmen<br>Standard #amper Poor#apposs Ratings Services<br>55 Water Street, 41st Floor<br>New York, NY, 10041-0003 |
| | | | Notices or Communication to Maples and Calder:<br>Maples and Calder<br>P.O. Box 309 GT Ugland House, South Church St.<br>Grand Cayman, Cayman Islands<br>Dale Crowley |
| GREYSTONE CDO LIMITED SPC SERIES 2006-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples and Calder<br>PO Box 309 GT<br>Ugland House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: Dale Crowley |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Maples Finance Limited<br>PO Box 1093GT<br>Queensgate House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: The Directors |
| | | | c/o US Bank Corporate Trust Services<br>PO Box 960778<br>Boston, MA, 02196-0778<br><br>Attn: Michael J. Riley |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GREYSTONE CDO SERIES 2006-1 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| GREYSTONE CDO SERIES 2006-2 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| GREYSTONE CDO SPC SERIES 2008-4 SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | | | c/o US Bank Corporate Trust Services<br>PO Box 960778<br>Boston, MA, 02196-0778<br><br>Attn: Eleni Manzourani |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| GSAM 103106 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 30 Hudson Street<br>Jersey City, NJ , 07320 |
| | | | 32 Old Slip<br>New York, NY, 10005 |
| | | | Christchurch Court<br>10-15 Newgate Street<br>London, EC1A 7HD<br>England |
| GSB Guarantor Corp | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 35 East 62nd St<br>New York, NY, 10021<br><br>Attn:  Todd Slotkin, EVP |
| GSB Investments Corp. | LEHMAN BROTHERS OTC DERIVATIVES INC. | | C/o MacAndrews<br>35 E. 62nd St<br>New York, NY, 10021<br><br>Attn: Todd J. Slotkin, EVP |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| GUADELETE INVESTMENTS S.A.R.L | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Guadelete Investments SARL 22 Rue Jean-Pierre Brasseur Luxembourg, L 1258 Luxembourg |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016 <br><br> Attn: Thomas Musarra |
| GUAM ECONOMIC DEVELOPMENT AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Guam Economic Development and Commerce Authority ITC Building, Suite 511 590 South Marine Drive Tamuning, 96911 Guam Attn: Administrator |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016 <br><br> Attn: Thomas Musarra |
| | | | U.S. Bank National Association 633 West Fifth Street 24th floor Los Angeles, CA, 90071 <br><br> Attn: Corporate Trust Department - Ashraf Almurdah |
| Guam Power Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1911 Route 16 Harmon, 96911 Harmon, , 96911 Guam |
| | | | 1911 Route 16 Harmon, , 96911 Guam |
| GULF STREAM - COMPASS CLO 2007 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Gulfstream Asset Management LLC 4201 Congress Street, Suite 475 Charlotte, NC 28209 USA Barry Love |
| GWK AMTEK LTD. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Amtek Auto Limited 3, LSC Pamposh Enclave, Greater Kailash Part-I, New Delhi, 110048, India Attn: Santosh Singhi |
| Harbourview CDO III, Limited | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 6801 S. Tucson Way Centennial CO , 80112 |
| | | | 6801 S. Tucson Way Centennial, CO , 80112 |
| | | | c/o Deutsche Bank (Cayman) Limited Grand Cayman Cayman Islands |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Harrisburg Parking Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 1142<br>Harrisburg, PA , 17108-1142 |
| Havenwood Heritage Heights | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 33 Christian Avenue<br>Concord, NH, 03301<br><br>Attn: Michael Palmieri |
| | | | 745 Seventh Avenue, 16th Floor<br>New York, NY, 10019<br><br>Attn: Municipal Financial Products - Middle Office |
| Hawthorne (City of), CA Redevelopment Agency | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4455 West 126th Street<br>Hawthorne, California, 90250 |
| HEALTHEAST CARE SYSTEM, MN | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 559 Capitol Blvd 6th Fl<br>St Paul, MN , 55479 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 559 Capitol Blvd 6th Fl<br>St Paul, MN , 55479 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 559 Capitol Blvd 6th Fl<br>St Paul, MN , 55479 |
| Heartland Consumers Power District | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PO Box 248<br>Madison SD , 57042 |
| Hellenic Republic | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Councellor for Economic and Commercial Affairs<br>1A  Holland Park<br>London ,   W11 3TP<br>United Kingdom<br>Attn: Greek Embassy |
| | | | Public Debt Management Agency<br>8 Omirou Str<br>Athens, 105 64<br>Greece<br>Attn: Head of Portfolio Management & Head of Legal |
| Hess Commodities, a Division of Hess Corporation | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 1185 Avenue of the Americas<br>New York, NY, 10036<br><br>Attn: Vice President, Chief Risk Officer |
| | | | Hess Corporation<br>1185 Avenue of the Americas<br>New York, NY, 10036<br><br>Attn: Charles F. Cerria, Esq. |
| HESS ENERGY POWER & GAS COMPANY (UK) LIMITED | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Hess Corporation<br>1185 Avenue of the Americas<br>New York, NY, 10036<br><br>Attn: Charles F. Cerria, Esq. |
| Holland Home | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 10/4/2005 | 2100 Raybrook SE, Suite 300<br>Grand Rapids, MI , 49546 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Horizon House | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Guggenheim Partneres<br>c/o Horizon House<br>135 East 57th Street<br>New York, NY, 10022 |
| HORIZON II INTERNATIONAL LTD SERIES 223 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands<br>Attn: Thomas Musarra |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| HORIZON II INTERNATIONAL LTD SERIES 226 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands |
| | | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| HORIZON II INTERNATIONAL LTD SERIES 227 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands<br>Attn: Thomas Musarra |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| HORIZON II INTERNATIONAL LTD SERIES 228 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands<br>Attn: Thomas Musarra |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| HORIZON II INTERNATIONAL LTD SERIES 229 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands |
| | | | Horizon II International Limited<br>Walker House<br>P.O. Box 265 GT<br>Mary Street, Grand Cayman, Cayman Islands |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Houghton Mifflin HarcourtPublishers Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 222 Berkeley Street<br>Boston, MA , 02116 |
| | | | 222 Berkeley Street<br>Boston, MA , 02116 |
| HSBC Bank plc | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 8 Canada Square<br>London, E14 5HQ<br>United Kingdom<br>Attn: Martin Holcombe |
| HSBC Bank USA, National Association | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 425 Fifth Avenue<br>New York, NY, 10018<br><br>Attn:  Jason Saturno; Jim Riley |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 18th Floor, 8 Canada Square<br>Canary Wharf, London, E14 5HQ<br>United Kingdom<br>Attn: Martin Holcombe |
| | | | Thames Exchange<br>10 Queen Street Place<br>London, EC4R 1BQ<br>United Kingdom<br>Attn: Processing Swap |
| HSBC France | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 103 avanue des Champs-Elysees<br>Paris 75008<br>France<br>Attn:  Dept des Marches de Taux et de change |
| HSBC Trinkhaus Und Burkhardt KGAA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Konigsallee 21-23<br>D-40212 Dusseldorf<br>Germany<br>Attn: Mr. Wilfried Gerst |
| | | | Sitz Dusseldorf<br>Amtsgericht Dusseldorf HRB , 54447<br><br>Attn: Legal |
| HSH Nordbank AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5-7 St. Helen's Place<br>London, EC3A 6AU<br>UNITED KINGDOM<br>Attn: General Manager |
| | | | Gerhart-Hauptmann-Platz 50<br>D-2000 Hamburg 1<br>Federal Republic of Germany<br>Germany<br>Attn: Credit Dept. SG VIII, Ms.Claudia Becker |
| | | | Martensdamm 6<br>Kiel<br>24103<br>Germany<br>Attn: Legal |
| HSH Nordbank Securities SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2 rue Jean Monnet<br>L2180<br>Luxembourg<br>Attn: Mr Wolfgang Durr |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSH Nordbank International AG<br>2 rue Jean Monnet<br>L2180<br>Luxembourg<br>Attn: Mr Wolfgang Durr |
| | | | Martensdamm 6<br>Kiel<br>24103<br>Germany<br>Attn: Mr Heiko Ludwig |
| HUMBOLDT CA (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 825 Fifth St., Room #125<br>Eureka, CA , 95501-1100<br><br>Attention: Steve Strawn |
| Iberdrola Renewable Energies USA LTD | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 201 King of Prussia, Suite 500<br>Radnor, PA , 19087<br><br>Attn: Ray Capistrano/Eduardo Brunet/Office of General Counsel |
| ICONIX BRAND GROUP INC | LEHMAN BROTHERS OTC DERIVATIVES INC. | Long Form Confirmation | 1450 Broadway, 4th floor<br>New York, NY, 10018 |
| Idaho Housing and Finance Association | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 565 West Myrtle<br>Boise, ID , 83702 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 565 West Myrtle Avenue<br>Boise ID , 83702 |
| IKB Deutsche Industriebank AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Wilhelm-Botzkes-StraBe 1<br>40474 Dusseldorf<br>Postfach 10 11 18<br>40002 Dusseldorf, Germany<br>Attn: Frank Gartner, Katja Krause |
| Illinois Finance Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | Special Reserve Fund Agreement dated on 5/12/1998 | 233 SOUTH WACKER DRIVE STE 5310<br>Chicago, IL, 60606-6368 |
| IMPAC CMB TRUST SERIES 2003-11 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | 1401 Dove Street Suite 100<br>Newport Beach, CA, 92660 |
| | | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | Thacher Proffitt #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281 |
| IMPAC CMB TRUST SERIES 2004-04 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | 1761 E. Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Deutsche Bank National Trust |
| | | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Thacher Proffitt #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281 |
| IMPAC CMB TRUST SERIES 2004-05 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | Deutsche Bank National Trust Company<br>1761 E. Saint Andrew Place<br>Santa Ana, CA , 92705<br><br>Attn:  Trust Administration - IM0403 |
| | | | Thacher Proffitt #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281 |
| IMPAC CMB TRUST SERIES 2004-08 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | 1401 Dove Street Suite 100<br>Newport Beach, CA, 92660 |
| | | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | Thacher Proffitt #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281 |
| IMPAC CMB TRUST SERIES 2004-10 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | 1401 Dove Street Suite 100<br>Newport Beach, CA, 92660 |
| | | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | Thacher Proffitt #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281 |
| IMPAC CMB TRUST SERIES 2005-04 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Thomas Musarra |
| | | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Thacher Proffitt  #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281<br><br>Attn: Thomas Musarra |
| IMPAC CMB TRUST SERIES 2005-05 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Thacher Proffitt  #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281<br><br>Young J. Kim |
| IMPAC CMB TRUST SERIES 2005-08 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Deutsch Bank National Trust Company<br>1761 E Saint Andrew Place<br>Santa Ana, CA, 92705<br><br>Attn: Trust Administration |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Thacher Proffitt  #amper Wood LLP<br>Two World Financial Center, 28th Floor<br>New York, NY, 10281<br><br>Young J. Kim |
| IMSER SECURITISAT. GIA ISP III | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Imser Serucritisation S.r.l.<br>Via Pontaccio, 10<br>Milano, 20121 |
| | | | Via Pontaccio n.10<br>Milano<br>20123<br>Italia<br>Attn: Legal |
| Indianapolis Osteopathic Hospital, Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Waterview Hospital<br>3630 Guion Road<br>Indianapolis, IN , 46222 |
| INDUSTRIAL DEVELOPMENT AUTHORITY OF WINCHESTER (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 38 Rouss Avenue<br>Winchester, VA , 22601 |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Industrial DevelopmentAuthority of Kansas CityMiss | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 20 E. 5th Street, suite 200<br>Kansas City, Missouri , 64106<br><br>Attn: Executive Director |
| | | | 414 East 12th Street, 1st Floor<br>Kansas City, Missouri, 64106<br><br>Attn: City Treasurer |
| | | | 414 East 12th Street, 28th Floor<br>Kansas City, Missouri , 64106<br><br>Attn: Law Department |
| | | | The Industrial Development Authority of the City of Kansas City, Missouri<br>20 E. 5th Street, suite 200<br>Kansas City, MO , 64106<br><br>Attn: Executive Director |
| ING Bank N.V. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Bijlmerplein 888<br>Amsterdam, The Netherlands<br>Attn: Rene Muller |
| | | | TR 01.03<br>P.O. Box 1800<br>1000 BV Amsterdam<br>The Netherlands<br>Attn: Financial Markets/Operations/Derivatives |
| | | | TRC 04.076<br>P.O. Box 1800<br>1000 BV Amsterdam<br>The Netherlands<br>Attn: M.J.S.J Muller |
| ING BANK SLASKI SA | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Pl. Trzech Krzyzy 10/14<br>P.O. Box 29<br>Warsaw<br>00-950<br>Poland |
| ING LIFE INSURANCE &ANNUITY COMPANY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o ING Investment Management LLC<br>5780 Powers Ferry Road, N.W., Suite 300<br>Atlanta, GA,  30327-4349<br><br>Attn: Derivatives Middle Office |
| | | | ING Investment Management LLC<br>5780 Powers Ferry Road, N.W., Suite 300<br>Atlanta, GA , 30327-4349<br><br>Attn: Corporate Counsel |
| INTEL CORPORATION | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 2200 Mission College Boulevard<br>Treasury Dept., M/S RN6-47<br>Santa Clara, CA , 95054<br><br>Attn: Cash Manager |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2200 Mission College Boulevard<br>Treasury Dept., M/S RN6-47<br>Santa Clara, CA , 95054<br><br>Attn: Cash Manager |
| | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 2200 Mission College Blvd., Legal Dept.,<br>M/S SC4-203, Santa Clara, CA , 95054<br><br>Attn: Director of Corporate Affairs |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | 2200 Mission College Boulevard<br>Treasury Dept., M/S RN6-47<br>Santa Clara, CA , 95054<br><br>Attn: Cash Manager |
| Intel Ireland Ltd (Grand Cayman) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 200 Mission College Boulevard<br>Treasury Department M/S SC4-211<br>Santa Clara, California, 95052<br><br>Attn: Cash manager |
| INTRALOT SA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 64 Kifissita Ave & 3 Premotis Str.<br>151-25<br>Athens, Greece<br>Constantinos Antonopoulos, CEO |
| Ionic Capital MasterFund LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 366 Madison Ave., 9th Floor<br>New York, NY, 10017 |
| | | | c/o Ionic Capital Management LLC<br>366 Madison Avenue, 9th Floor<br>New York, NY, 10017<br><br>Attn: Operations; General Counsel |
| Iowa Telecommunications Services Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 115 Second West Avenue<br>P.O. Box 1046<br>Newton, Iowa , 50208<br><br>Attn: General Counsel |
| | | | Iowa Telecommunications Services, Inc.<br>115 Second West Avenue<br>P.O. Box 1046<br>Newton, Iowa , 50208<br><br>Attn: General Counsel |
| IROKO CARDIO LLCC/O FORTRESS INV GROUP LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Fortress Investment Group<br>1345 Avenue of the Americas<br>New York, NY, 10105<br><br>Attn: Glenn P. Cummins, CFO |
| Israel Discount Bank | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 38 Yehuda Alevi Street<br>Tel Aviv, Israel |
| | | | IDB Bank<br>511 Fifth Avenue<br>New York, NY, 10017 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Isreal Discount Bank Ltd<br>Nightingale House 65<br>Curzon Street<br>London ,  W1Y 7PE<br>United Kingdom |
| | | | Isreal Discount Bank Ltd<br>Nightingale House 65<br>Curzon Street<br>London,  W1Y 7PE<br>United Kingdom |
| Israel Discount Bank of New York | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 511 Fifth Avenue<br>New York, NY, 10017 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| ITALEASE FINANCE SPA | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 3/22/2005 | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Italease Finance S.P.A.<br>c/o Blank Rome LLP<br>405 Lexxing Avenue<br>New York, NY, 10174<br>United States |
| | | | Italease Finance S.P.A.<br>c/o Lovells Studio Legale<br>Via Santa Maria alla Porta 2<br>Milan, 20123<br>Italy |
| Italmobiliare International Finance Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre, IFSC<br>Dublin 1<br>Ireland<br>Attn: Sara White, Angelo Triulzi |
| ITV PLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Carlton Communications PLC<br>25 Knightsbridge<br>London, SW1X 7RZ<br>UNITED KINGDOM |
| J SAINSBURY COMMON INVESTMENT FUND LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/27/2008 (8240LL00026) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00310) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00346) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00348) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| J. ARON & COMPANY | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 85 Broad Street<br>New York, NY, 10004<br><br>Attn:  J. Aron |
| JAGUAR PENSION TRUSTEES LTD | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00270) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| James Caird Asset Mgt LLPA/C JCAM Global Fund (Mas | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 182171 dated 10th Sept 2008 with maturity 20th June 2013 | c/o Citco Bank and trust company PO Box N-4906 1 Montague Place East Bay Street Nassau, Bahamas |
| Jefferson County Water & Sewer System, Alabama. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Jefferson County Courthouse 716 Richard Arrington Blvd. Bitmingham, AL , 35203<br><br>Attn: Director of Finance |
| JEFFERSON VALLEY CDO LIMITED SPC SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples and Calder P.O. Box 309 GT Ugland House, South Church Street Grand Cayman, Cayman Islands, Cayman Islands Attn: Dale Crowley |
| | | | c/o Maples FInance Limited P.O. Box 1093GT Queensgate House, South Church Street Grand Cayman, Cayman Islands, Cayman Islands Attn: The Directors |
| | | | c/o US Bank Corporate Trust Services PO Box 960778 Boston, MA, 02196-0778<br><br>Attn: Michael J. Riley |
| | | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Jenners Pond | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Simpson Senior Services 150 Monument Road Suite 105 Bala Cynwyd, 19004-1725 |
| JOHNSON & WALES UNIVERSITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8 Abbott Park Place Providence, Rhode Island , 02903 |
| JP MORGAN CHASE & CO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 270 Park Avenue 41st Floor New York, NY, 10017-2070<br><br>Attn: Derivatives Practice Legal Department - |
| | | | Legal Department 245 Park Avenue, 11th Floor New York, NY, 10167<br><br>Attn: Don Thompson |
| JR Moore LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | For Sections 5 or 6: Moore Capital Management LLC 1251 Avenue of the Americas, 53rd Floor New York, NY, 10020<br><br>Attn: General Counsel, URGENT |
| | | | Moore Capital Management LLC 1251 Ave of the Americas, 52nd Floor New York, NY, 10020<br><br>Attn: Anthony Gallagher, Director of Operations |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Judson Retirement | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2181 Ambleside Drive<br>Cleveland, OH , 44106<br><br>Attn:  Hong Chae |
| | | | c/o Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017<br><br>Attn:  Derivative Operations |
| | | | Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017<br><br>Attn:  Derivative Operations |
| JUPITER QUARTZ FINANCE PLC 2004-1 CLASS A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| JUPITER QUARTZ FINANCE PLC 2004-1 CLASS B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 320 West 13th Street, 5th Floor<br>New York, NY, 10014<br><br>Attn: Simone Martin |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| JUPITER QUARTZ PLC 2004-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 320 West 13th Street, 5th Floor<br>New York, NY, 10014<br><br>Attn: Simone Martin |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| KBC Bank N.V. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Havenlaan 12<br>B-1080 Brussels<br>Belgium<br>Attn: Ellen Matheeussen |
| Kent, Robert A and Sally M | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 2309 Linda Vista<br>Klamath Falls, OR,   97601<br><br>Attn: Robert and Sally Kent |
| Keycorp | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 127 Public Square<br>Cleveland, OH , 44114-1306 |
| | | | 127 Public Square<br>Cleveland, OH , 44114-1306 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| KINGS RIVER LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | P.O. Box 1093 GT<br>Queensgate House<br>George Town, Grand Cayman<br>Cayman Islands<br>Attn: Thomas Musarra |
| Kline Galland Center | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1200 University Street<br>Seattle, WA , 98101-2883<br><br>Attn:  Chief Fiancial Officer |
| | | | c/o Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017<br><br>Attn:  Derivative Operations |
| KOCH FINANCIAL CORPORATION | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 17550 North Perimeter Drive<br>Suite 300, Scottsdale AZ , 85225<br><br>Attn: Matt Orr |
| Koch Supply & Trading LP | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 4111 East 37th Street North<br>Wichita, Kansas , 67220<br><br>Attn: Legal - ISDA |
| | | | P.O. Box 2302<br>Wichita, Kansas , 67202<br><br>Attn: Rodger Lindwall |
| Koch Supply & Trading LP(MNSA) | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 4111 E. 37th St. North<br>Wichita, KS  , 67220<br><br>Attn: Charles Lee; George Rivas |
| KOREA INVESTMENT CORPORATION | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 7/28/2008 (8210LL00398) | 16F Seoul Finance Centre<br>84 Taepyungro 1-GA, Jung-gu<br>Seoul, 100-768<br>The Republic of Korea<br>Attn: Fixed Income Investment Team |
| | | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| Kredietbank SA Luxembourgeoise, London | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 43, Boulevard Royal<br>L-2955 Luxembourg<br>Luxembourg |
| Kumho Industrial Co., Ltd. | MERIT, LLC | | 1095-4 Songwol-dong<br>Naju-si, Heollanam-do, Republic of Korea |
| LAKEVIEW CDO 2007-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o US Bank<br>Corporate Trust Services<br>PO Box 960778<br>Boston, MA , 02196-0778 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | US Bank NA, as trustee<br>1 Federal Street, 3rd Floor<br>Boston, MA, 02110<br><br>Attn: Amy Byrnes |
| LAKEVIEW CDO LLC, FOR THE ACCOUNT OF THE SERIES 2007-2 SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| LAKEVIEW CDO LLC, FOR THE ACCOUNT OF THE SERIES 2007-3 SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| LAKEVIEW CDO SPC 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples FInance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: The Directors |
| | | | c/o US Bank Corporate Trust Services<br>PO Box 960778<br>Boston, MA, 02196-0778<br><br>Attn: Michael J. Riley |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | US Bank NA, as trustee<br>1 Federal Street, 3rd Floor<br>Boston, MA, 02110 |
| | | | US Bank<br>Corporate Trust Services<br>PO Box 960778<br>Boston, MA , 02196-0778 |
| LAKEVIEW CDO SPC 2007-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples FInance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: The Directors |
| | | | c/o US Bank Corporate Trust Services<br>PO Box 960778<br>Boston, MA, 02196-0778<br><br>Attn: Michael J. Riley |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | US Bank NA, as trustee<br>1 Federal Street, 3rd Floor<br>Boston, MA, 02110 |
| | | | US Bank<br>Corporate Trust Services<br>PO Box 960778<br>Boston, MA , 02196-0778 |
| LAKEVIEW CDO SPC SERIES 2007-4 SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o US Bank<br>Corporate Trust Services<br>PO Box 960778<br>Boston, MA , 02196-0778 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| LAKEVIEW CDO SPC, FAO THE SERIES 2007-2 SEGR PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| Lakeview CDP SPC f/a/o the Series 2007-4 Segregated Portfolio | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| LAND ROVER PENSION TRUSTEES LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/19/2008 (8232LL00514) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/8/2008 (8252LL00268) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| Landesbank Baden-Wurttemberg | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Am Hauptbahnhof 2<br>70173 Stuttgart<br>Germany<br>Attn: Swap Administration 4046 |
| Landesbank Rheinland-Pfalz Girozentrale | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Grosse Bleiche 54-56<br>Mainz<br>55098<br>Germany |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Landsbanki Island | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Landsbanki Islands HF<br>c/o Varsla og vidskiptaumsjon<br>AusturstrÃ¦ti 11,<br>IS-155 ReykjavÃk,, Iceland<br>Attn: Throstur Bergmann |
| LAS VEGAS REDEVELOPMENT AGENCY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 400 Stewart Avenue<br>Las Vegas, NV , 89101<br><br>Attn: Scott D. Adams; Steven van Gorp |
| LB ASIA HOLDINGS LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Level 38, One Pacific Place<br>88 Queensway<br>Hong Kong |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Level 38, One Pacific Place<br>88 Queensway<br>Hong Kong |
| LB BANKHAUS AG SEOUL BRANCH | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 12th floor Hanhwa Building<br>110, Sokong-Dong<br>Jung-Ku, Seoul, 100-755<br>Korea |
| | | | c/o CMS Hasche Sigle<br>Barckhausstraße 12-16<br>Frankfurt A.M., 60325<br>Germany<br>Attn: Dr. Michael Frege |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 12th floor Hanhwa Building<br>110, Sokong-Dong<br>Jung-Ku, Seoul, 100-755<br>Korea |
| | | | c/o CMS Hasche Sigle<br>Barckhausstraße 12-16<br>Frankfurt A.M., 60325<br>Germany<br>Attn: Dr. Michael Frege |
| LB BANKHAUS LONDON BRANCH | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 25 Bank Street<br>London, E14 5LE<br>England |
| | | | c/o CMS Hasche Sigle<br>Barckhausstraße 12-16<br>Frankfurt A.M., 60325<br>Germany<br>Attn: Dr. Michael Frege |
| | | | One Broadgate<br>London, EC2M 7HA<br>England |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London, E14 5LE<br>England |
| | | | c/o CMS Hasche Sigle<br>Barckhausstraße 12-16<br>Frankfurt A.M., 60325<br>Germany<br>Attn: Dr. Michael Frege |
| | | | One Broadgate<br>London, EC2M 7HA<br>England |
| LB COMMERCIAL MORTGAGE K.K. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Kishimoto Bldg, 9th Floor<br>2-2-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-0005<br>Japan |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| LB COMMERCIAL TRUST 2007-C3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Bank of America, National Association<br>Global Trust Services<br>540 W. Madison St.<br>Chicago, IL, 60661<br><br>Attn: Edwin Janis |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Bank of America, National Association<br>Global Trust Services<br>540 W. Madison Street<br>Chicago, IL, 60661<br><br>Attn: Edwin Janis |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | LaSalle Bank National Association<br>135 S. LaSalle Street, Suite 1625<br>Chicago, IL, 60603 |
| LB FINANCE NETHERLANDS ANTILLES BRANCH | LEHMAN BROTHERS HOLDINGS INC. | | E-commercepark<br>E-zone<br>Vredenberg, Curacao |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | E-commercepark<br>E-zone<br>Vredenberg, Curacao |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS OTC DERIVATIVES INC | | E-commercepark<br>E-zone<br>Vredenberg, Curacao |
| | | | Talstrasse 82<br>P.O. Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| LB Myryllion Master Fund - mainre LBAM (EUROPE) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London , E14 5LE<br>United Kingdom<br>Attn: Legal Department |
| | | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom<br>Attn: Legal Department |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom<br>Attn: Lehman Brothers Asset Management  Operations |
| LB PERU TRUST II, 1998-A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| LB Real Estate Partners LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | One Broadgate<br>Ground Floor<br>London, EC2M 7HA<br>UNITED KINGDOM |
| LB SECURITIES ASIA LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | | KPMG 8th floor, Prince's Building<br>10 Chater Road<br>Central, Hong Kong |
| | | | Level 38, One Pacific Place<br>88 Queensway<br>Hong Kong |
| | | | Two International Finance Centre, 26 th floor<br>8 Finance Street<br>Central, Hong Kong |
| LBEM 2004 SICAV - UNLEVERAGED A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London E14 5LE<br>United Kingdom |
| LBEM 2004 SICAV - UNLEVERAGED B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London E14 5LE<br>United Kingdom |
| LBEM 2004 SICAV - UNLEVERAGED C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London E14 5LE<br>United Kingdom |
| LBEM 2004 SICAV - UNLEVERAGED D | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London E14 5LE<br>United Kingdom |
| LBEM LEVERAGED PARTNERS 2003-A LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1271 Sixth Avenue<br>44th Floor<br>New York, NY, 10020<br><br>Ashvin Rao |
| LBEM LEVERAGED PARTNERS 2003-B LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1271 Sixth Avenue<br>44th Floor<br>New York, NY, 10020<br><br>Ashvin Rao |
| LBEM PARTNERS 2003-A LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1271 Sixth Avenue<br>44th Floor<br>New York, NY, 10020<br><br>Ashvin Rao |
| LBI/LBI/LB Euro Mezzanine Partners 2003-C LP (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1271 Sixth Avenue<br>44th Floor<br>New York, NY, 10020<br><br>Ashvin Rao |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| LB-UBS COMMERCIAL MORTGAGE TRUST 2007-C6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Bank of America, National Association<br>Global Trust Services<br>540 W. Madison Street<br>Chicago, IL, 60661<br><br>Attn: Edwin Janis |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | LaSalle Bank National Association<br>135 S. LaSalle Street, Suite 1625<br>Chicago, IL, 60603<br><br>LBUBS 2007C6 Commercial Mortgage Trust Class A-MFL |
| | | | LaSalle Global Trust Services<br>c/o CDO Trust Services<br>540 W Madison Avenue, 25th Floor<br>Chicago, IL , 60661 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Bank of America, National Association<br>Global Trust Services<br>540 W. Madison Street<br>Chicago, IL, 60661<br><br>Attn: Edwin Janis |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | LaSalle Bank National Association<br>135 S. LaSalle Street, Suite 1625<br>Chicago, IL, 60603<br><br>LBUBS 2007C6 Commercial Mortgage Trust Class A-MFL |
| | | | LaSalle Global Trust Services<br>c/o CDO Trust Services<br>540 W Madison Avenue, 25th Floor<br>Chicago, IL , 60661 |
| LB-UBS COMMERCIAL MORTGAGE TRUST 2008-C1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Bank of America, National Association<br>Global Trust Services<br>540 W. Madison St.<br>Chicago, IL, 60661<br><br>Attn: Edwin Janis |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | LaSalle Bank National Association LB-UBS 2008-C1 Commercial Mortgage Trust Class A-2FL Grantor Trus 135 S. LaSalle Street, Mail code: IL4-135-16-25 Chicago, Illinois, 60603<br><br>Global Securities and Trust Services |
| LCH.CLEARNET LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Aldgate House 33 Aldgate High Street London, EC3N 1EA UK Roger Liddell |
| LCOR Alexandria LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6550 Rock Spring Drive, Suite 280 Bethesda, MD , 20817<br><br>Attn:  R. William Hard |
| | | | c/o LCOR Incorporated Suite 110 Berwyn Park Berwyn, Pennsylvania , 19312<br><br>Attn: Peter Dilullo |
| Lehigh University | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 27 Memorial Drive West Bethlehem, PA , 18015<br><br>Attn: Fiance and Administration |
| LEHMAN BROTHERS BANKHAUS A.G. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Gruneburgweg 18 60322 Frankfurt am main, Germany |
| | | | Rathenauplatz I 60322 Frankfurt am main, Germany |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Gruneburgweg 18 60322 Frankfurt am main, Germany |
| | | | Rathenauplatz I 60322 Frankfurt am main, Germany |
| | LEHMAN BROTHERS HOLDINGS INC. | | Gruneburgweg 18 60322 Frankfurt am main, Germany |
| | | | Rathenauplatz I 60322 Frankfurt am main, Germany |
| LEHMAN BROTHERS CDO MEZZANINE FUND 2005-1, LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA CTLA - Structured Finance 10 East 40th Street, Floor 14 New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Lehman Brothers CDO Mezzanine Fund 2005-1, Ltd. c/o Lehman Brothers Inc. 399 Park Avenue, 9th Floor New York, NY, 10022<br><br>Cindy Zamora |
| LEHMAN BROTHERS FINANCE SA | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 13 Route de Florissant P.O. Box 280 1211 Geneva 12, Switzerland |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 13 Route de Florissant<br>P.O. Box 280<br>1211 Geneva 12, Switzerland |
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 13 Route de Florissant<br>P.O. Box 280<br>1211 Geneva 12, Switzerland |
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS HOLDINGS INC. | | 13 Route de Florissant<br>P.O. Box 280<br>1211 Geneva 12, Switzerland |
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 13 Route de Florissant<br>P.O. Box 280<br>1211 Geneva 12, Switzerland |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| | LEHMAN BROTHERS OTC DERIVATIVES INC | | 13 Route de Florissant<br>P.O. Box 280<br>1211 Geneva 12, Switzerland |
| | | | Genferstrasse 24<br>PO Box 311<br>CH-8002 Zurich, CH-8002<br>Switzerland |
| | | | PWC AG<br>Birchstrasse 160<br>Zurich, CH-8050<br>Switzerland |
| | | | Talstrasse 82<br>P.O Box 2828<br>CH-8021 Zurich, CH-8021<br>Switzerland |
| LEHMAN BROTHERS INC. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY, 10004-1482<br>USA |
| | | | World Financial Center<br>12th floor<br>New York, 10285<br>USA |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | c/o Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY, 10004-1482<br>USA |
| | | | World Financial Center<br>15th floor<br>New York, 10285<br>USA |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY, 10004-1482<br>USA |
| | | | World Financial Center<br>14th floor<br>New York, 10285<br>USA |
| | LEHMAN BROTHERS OTC DERIVATIVES INC | | c/o Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY, 10004-1482<br>USA |
| | | | World Financial Center<br>13th floor<br>New York, 10285<br>USA |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| LEHMAN BROTHERS JAPAN INC. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Kishimoto Bldg, 9th Floor<br>2-2-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-0005<br>Japan |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Kishimoto Bldg, 9th Floor<br>2-2-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-0005<br>Japan |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Kishimoto Bldg, 9th Floor<br>2-2-1 Marunouchi, Chiyoda-ku<br>Tokyo, 100-0005<br>Japan |
| LEHMAN BROTHERS REAL ESTATEMEZZANINE PARTNERS II L | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Lehman Brothers Real Estate Mezzanine Partners II<br>LBREM II Offshore AIV LP #amper LBREM II ECI AIV L<br>399 Park Avenue, 11th Floor<br>New York, NY, 10022<br><br>Attn: David Goldberg |
| | | | Lehman Brothers Real Estate Mezzanine Partners II<br>LBREM II Offshore AIV LP #amper LBREM II ECI AIV L<br>399 Park Avenue, 11th Floor<br>New York, NY, 10022<br><br>Attn: Vinay Khandelwal |
| | | | Lehman Brothers Real Estate Mezzanine Partners II<br>LBREM II Offshore AIV LP #amperLBREM II ECI AIV LP<br>Lehman Brothers Inc., 399 Park Ave, 11th Floor<br>New York, NY, 10022<br><br>Attn: Ji Yeong Chu |
| | | | PCCP, LLC<br>280 Park Avenue, 35th Floor<br>New York, NY, 10017<br><br>Attn: Barrie Bloom |
| LEHMAN BROTHERS SMALL BALANCE COMMERCIAL MORTGAGE TRUST 2007-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | U.S. Bank National Association<br>One Federal Street, Third Floor<br>Boston, MA, 02110<br><br>Attn: Structured Finance Department – LBSBC 2007-2 |
| LEHMAN BROTHERS STRUCTURED FUNDS PLC-LEHMAN BROTHER MARQCUS FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Lehman Brothers Asset Management (Europe) Ltd<br>25 Bank St.<br>London, E14 5LE<br>UK<br>Managing Director |
| LEHMAN BROTHERS TREASURY CO BV | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 25 Bank Street<br>London, E14 5LE<br>England |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Houthoff Buruma N.V.<br>P.O. Box 75505<br>NL-1070 AM Amsterdam, The Netherlands |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 25 Bank Street<br>London, E14 5LE<br>England |
| | | | Houthoff Buruma N.V.<br>P.O. Box 75505<br>NL-1070 AM Amsterdam, The Netherlands |
| | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 25 Bank Street<br>London, E14 5LE<br>England |
| | | | Houthoff Buruma N.V.<br>P.O. Box 75505<br>NL-1070 AM Amsterdam, The Netherlands |
| | LEHMAN BROTHERS HOLDINGS INC. | | 25 Bank Street<br>London, England |
| | | | Houthoff Buruma N.V.<br>P.O. Box 75505<br>NL-1070 AM Amsterdam, The Netherlands |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London, E14 5LE<br>England |
| | | | Houthoff Buruma N.V.<br>P.O. Box 75505<br>NL-1070 AM Amsterdam, The Netherlands |
| LEHMAN RE LIMITED | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 3 World Financial Center<br>9th floor<br>New York, NY, 10285-0700<br>USA |
| | | | Clarendon House<br>2 Church Street<br>Hamilton, HM11<br>Bermuda |
| | | | PWC, Dorchester House<br>7 Church Street<br>Hamilton, HM11<br>Bermuda |
| | | | Sofia House<br>48 Church St<br>Hamilton, HM12<br>Bermuda |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3 World Financial Center<br>9th floor<br>New York, NY, 10285-0700<br>USA |
| | | | Clarendon House<br>2 Church Street<br>Hamilton, HM11<br>Bermuda |
| | | | PWC, Dorchester House<br>7 Church Street<br>Hamilton, HM11<br>Bermuda |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Sofia House<br>48 Church St<br>Hamilton, HM12<br>Bermuda |
| Liberty Square CDO I, Limited | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | Libery Square CDO I, limited c/o QSPV Limited Quee<br>PO BOX 309 GT<br>Grand Cayman<br>Cayman Islands |
| Liberty Square CDO I, Ltd. | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| Liberty Square CDO II, Limited | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | Liberty Square CDO Church Street<br>PO BOX 309 GT<br>Grand Cayman<br>Cayman Islands |
| Liberty Square CDO II, Ltd. | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| LIBRA CDO LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Libra CDO Limited c/o Deutsche Bank (Cayman) Lmt.<br>P.O. Box 1984 GT<br>Elizabethan Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Global Transaction Banking, Trust |
| LION CITY CDO 2006-2 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Walkers SPV Limited<br>Walker House, P.O. Box 908 GT<br>George Town<br>Grand Cayman, Cayman Islands, Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| LION CITY CDO 2006-3 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Lion City CDO Limited c/o Walkerss SPV limited<br>walker house<br>PO BOX 908 GT GeorgeTown<br>Grand Cayman, Cayman ISlands, British West Indies |
| LION CITY CDO LIMITED SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Kim<br>Seyang Building, 223 Naeja-dong<br>Jongo-gu, Seoul 110-720<br>Korea<br>Attn: Y. G. Jung |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Walker SPV limited<br>Walker House P.O. Box 908 GT<br>George Town, Grand Cayman<br>Cayman Islands, Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| LION CITY CDO LTD SERIES 2006-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | International Financial Services Centre<br>Northwall Quay<br>Dublin 1, Ireland |
| | | | P.O. Box 908 GT<br>George Town<br>Grand Cayman<br>Cayman Islands |
| Long Island Power Authority | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 333 Earle Ovington Blvd<br>Uniondale, NY , 11553<br><br>Attn: Chief Financial Officer |
| | | | 333 Earle Ovington Blvd.<br>Suite 403<br>Uniondale NY , 11553 |
| Longwood at Oakmont, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 11/17/2001 | 1215 Hulton Road<br>Oakmont, PA , 15139-1196<br><br>Attn: Joseph A. Wenger, CPA |
| | | | 500 Route 909<br>Verona, PA, 15147-3863<br><br>Attn: Wenger Joseph P. |
| Louis L. Gonda Trust | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 9350 Wilshire Boulevard<br>Suite 400<br>Beverly Hills, CA , 90212 |
| Lutheran Social Services ofMichigan | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Administrative Offices<br>8131 East Jefferson Avenue<br>Detroit, MI , 48214-2691 |
| LVFN Genpar LLCA/C LVFN Partners LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 201 Main Street, Suite 2600<br>Fort Worth, TX , 76102<br><br>Attn: Thomas White |
| | | | Relationship Funding<br>227 West Monroe, Suite 4900<br>Chicago, IL, 60606<br><br>Attn: Operations Department |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Maimonides-Shalom Academy | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5300 SW 40th Avenue<br>Fort Lauderdale, FL , 33314-6504<br><br>Attn: Chief Financial Officer |
| | | | Maimonides-Shalom Academy, Inc.<br>5300 SW 40th Avenue<br>Fort Lauderdale, FL, 33314-6504<br><br>Attn: Chief Financial Officer |
| MAINA/C Lehman Brothers Alpha Fund | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Lehman Brothers Aset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom |
| | | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom<br>Attn: Operations |
| MAINA/C Lehman Brothers Master Fun | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom |
| | | | Lehman Brothers Asset Management (Europe) Limited<br>25 Bank Street<br>London, E14 5LE<br>United Kingdom<br>Attn: Operations |
| MANASSAS MA (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9027 Center Street<br>Manassas, MA , 20110 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9027 Center Street<br>Manassas, MA , 20110 |
| MANOR PARK INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6451 El Camino Real, Suite A<br>Carlsbad, CA , 92009 |
| MARANTHA BAPTIST BIBLE COLLEGE | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 745 West Main Street<br>Watertown , 53094 |
| MARK H WENTWORTH HOME FOR CHRONIC INVALID | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 346 Pleasant Street<br>Portsmouth<br>NH<br>3801<br><br>Attn: Mary Ellen Dunham |
| MARSONER, THOMAS S | LEHMAN BROTHERS COMMERCIAL CORPORATION | | One Broadgate 5th Floor<br>London, EC2M 7HA<br>United Kingdom |
| MARYSVILLE PA (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 200 Overcrest Road<br>Marysvilee, PA, 17053 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| MASSACHUSETTS (COMMONWEALTH OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 8/27/1998 | 1 Ashburton Place, 12th Floor<br>Boston<br>MA<br>2108<br><br>Deputy Treasurer |
| | | | State Street Bank and Trust Company 2 Avenue De Lafayette<br>Boston<br>MA<br>2111<br><br>Corporate Trust Department - Paul Grenier |
| Massachusetts BayTransporation Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 12/20/2000 | 10 Park Plaza<br>Boston, Massachusetts , 02116 |
| | | | 10 Park Plaza<br>Boston, Massachusetts , 02116 |
| Massachusetts Development Finance Agency | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o U.S. Bank National Association<br>One Federal Street, 3rd Floor<br>Boston, MA, 02110<br><br>Attn: Todd DiNezza |
| Massachusetts Housing Finance Agency | LEHMAN BROTHERS SPECIAL FINANCING INC. | | One Beacon Street<br>Boston, MA , 02108<br><br>Attn: Timothy C. Sullivan |
| MASSACHUSETTS INFORMATION TECHNOLOGY CENTER PROJECT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Massachusetts Development Finance Agency<br>c/o U.S. Bank National Association<br>One Federal Street, 3rd Floor<br>Boston, MA , 02110<br><br>Attn: Todd DiNezza |
| Massachusetts Mutual Life Insurance Company | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1500 Main Street, Suite 1000<br>Springfield, MA , 01115 |
| | | | 1500 Main Street, Suite 1000<br>Springfield, MA , 01115 |
| MASSACHUSETTS STATE COLLEGE BUILDING AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | Float Forward Agreement dated on 1/25/1995 | 136 Lincoln Street<br>Boston, MA , 02111 |
| Massachusetts Water Resources Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Charlestown Navy Yard<br>100 First Ave<br>Boston MA , 02129 |
| Massachusetts Water ResourcesAuthority | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | Charlestown Navy Yard<br>100 First Avenue, Building 39<br>Boston, MA, 02129 |
| MassDevelopment/Saltonstall Building Redevelopment | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 160 Federal Street, 7th Floor<br>Boston, MA , 02110 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | 160 Federal Street, 7th Floor<br>Boston, MA , 02110 |
| Mediobanca Spa | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Piazetta Enrico Cuccia, 1<br>20121 Milano<br>Italy<br>Attn: Domenico Cavenago |
| Members Unitied CorporateFederal Credit Union | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4450 Weaver Parkway<br>Warrenville, IL , 60555-3926<br><br>Attn: Investment Accounting |
| Memorial Hospital Fremont | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 715 South Taft Avenue<br>Fremont , 43420 |
| Merrill Lynch Bank USA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4 world Financial Center 12th floor<br>New York, NY, 10080 |
| | | | 4 world Financial Center 12th floor<br>New York, NY, 10080 |
| | | | 800 Scudders Mill Road<br>111 Plainsboro NJ , 08536<br><br>Attn: Joseph Sandford |
| MERRILL LYNCH CAPITAL SERVICES INC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 4 World Financial Center, 12th Floor<br>New York<br>NY<br>10080 |
| Merrill Lynch Commodities (Europe) Limited | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 2 King Street<br>London<br>EC1A 1HQ<br>United Kingdom<br>Attn: Merrill Lynch Commodities Legal Group |
| | | | Merrill Lynch Financial Centre<br>2 King Edward Street<br>London, EC1A 1HQ<br>United Kingdom<br>Attn: Merrill Lynch commodities Legal Group |
| Merrill Lynch International Bank Limited | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 4 World Financial Center, 12th Floor, 16th Floor<br>4 World Financial Center, 12th Floor, 16th Floor<br>New York, NY, 10281-1315<br><br>Attn:  FX Operations Manager |
| | | | Ropemaker Place<br>25 Ropemaker Street<br>London, EC2 9LY<br>United Kingdom<br>Attn:  Foreign Exchange Business Support |
| Merrimack College - FPA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Head Office, 315 Turnpike Street<br>North Andover, MA , 01845 |
| | | | Head Office, 315 Turnpike Street<br>North Andover, MA , 01845 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| MESIVTA YESHIVA RABBI CHAI | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1593 Coney Island avenue<br>Brooklyn, NY , 11230<br><br>Attn: Mendel Schechter |
| Metavante Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4900 West Brown Deer Road<br>Milwaukee, WI , 53223<br><br>Attn: Norrie Daroga, Chief Administrative Officer |
| | | | Metavante Corporation<br>4900 West Brown Deer Road<br>Milwaukee, WI, 53223<br><br>Attn: Norrie Daroga, Chief Administrative Officer |
| Metropolitan Pier and Exposition Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Center<br>301 E. Cermak Road<br>Chicago, IL, 60616 |
| MFC Global Inv Mgmt US/JOHN HANCOCK HIGH YIELDBOND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MFC Global Investment Management US LLC<br>101 Huntington Avenue H-7<br>Boston, MA, 02199<br><br>Attn: Ismail Gunes |
| MGIM A/C ABMEL A/C M03M1 (ME) | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/27/2008 (8240LL00016) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/27/2008 (8240LL00308) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/3/2008 (8247LL00575) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/4/2008 (8248LL00476) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MGIM A/C BONY A/C M0EO3 | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233L00196) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233L00239) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | Forward Puchase Agreement dated 9/3/2008 (8247L00580) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/3/2008 (8247L00582) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/27/2008 (8240LL00309) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MGIM A/C Chase A/C MEFUN (ME) | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/1/2008 (8245LL00094) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MGIM A/C JPM A/C M3IFL | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C KASS A/C MESCH | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C MMC - DEUTSCHE ASSET MANAGEMENT LTD | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C NT A/C M0GLL | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C NT A/C M0WHL | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C NT A/C THALES | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C SS A/C M0RIB | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| MGIM A/C SS A/C M0SYS | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C SS A/C M0TAT | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| MGIM A/C SS A/C STAFF (ME) | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/20/2008 (8233LL00195) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 8/20/2008 (8233LL00238) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/3/2008 (8247LL00583) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/9/2008 (8253LL00383) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| | | Forward Puchase Agreement dated 9/9/2008 (8253LL00389) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MGIM A/C SS A/C UNI | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00272) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MGIM AC NT/NCC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| Michigan State Housing Developement Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Plaza One Building, 5th Fl<br>401 South Washington Square<br>Lansing, MI, 48933<br><br>Director Executive |
| MILFORD CT (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 70 West River Street<br>Milford, CT , 06460 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| MINISTRY OF FINANCE ITALY | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | MINISTRY OF FINANCE ITALY<br>Via XX Settembre 97<br>Rome, 00187<br>Italy<br>Attn: Dr. Maria Cannata |
| Minnesota Masonic Home Care Center | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 11501 Masonic Home Drive<br>Bloomington, MN, 55437<br><br>Attn: CEO |
| Mirabella | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017<br><br>Attn: Derivatives Operations |
| | | | c/o Pacific Retirement Services<br>1200 Mira Mar Avenue<br>Medford, OR , 97504<br><br>Attn: Jerry Schoeggl |
| | | | Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017<br><br>Attn: Derivatives Operations |
| Mitsubishi UFJ Trust and Banking Corporation (The) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1-4-5, Marunouchi<br>Chiyoda-ku, Tokyo<br>100-8212<br>Japan<br>Attn: Haruya Uehara |
| | | | 4-5, Manunouchi 1-Chome<br>Chiyoda-ku Tokyo 100-8212<br>Japan |
| Mizrahi Tefahot Bank Ltd | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 7 Jabotinsky Street<br>Ramat Gan, 52136<br>Israel |
| | | | c/o United Mizrahi Bank Limited<br>13 Rothschild Blvd<br>Tel Aviv, 65121<br>Israel |
| Mizuho Corporate Bank, Ltd. | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 1251 Avenue of the Americas<br>New York, NY, 10020<br><br>Attn: Hidenori Wantabe |
| | | | 1-3-3, Marunouchi, Chiyoda-ku<br>Tokyo, Japan 100-8210<br>Japan |
| | | | 5-5 Otemachi 1- chome<br>Chiyoda-ku Tokyo 100<br>Japan<br>Attn: Mr. Ikuo Sato |
| Mizuho International Plc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Bracken House<br>One Friday Street<br>London, EC4M 9JA<br>United Kingdom |
| | | | Bracken House<br>One Friday Street<br>London, EC4M 9JA<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Mizuho Securities Co., Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Otemachi First Square<br>1-5-1, Otemachi<br>Chiyoda-ku, Tokyo 100-0004<br>Japan |
| | | | Otemachi First Square<br>1-5-1, Otemachi<br>Chiyoda-ku, Tokyo 100-0004<br>Japan |
| MKP VELA CBO LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walker House<br>87 Mary Street, George Town<br>Grand Cayman KY1-9002<br>Cayman Islands |
| Monongalia Health Systems | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1200 J D Anderson Drive<br>Morgantown , 26505 |
| MONTGOMERY MD (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 301 North Thompson Street, Suite 210<br>Conroe, Texas , 77301 |
| Moore Macro Fund, L.P. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Moore Capital Management, LLC<br>1251 Avenue of the Americas, 52nd Floor<br>New York, NY, 10020<br><br>Attn: Anthony Gallagher, Director of Operations |
| Moore Macro Markets Fund LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Moore Capital Management, LLC<br>1251 Avenue of the Americas, 52nd Floor<br>New York, NY, 10020<br><br>Attn: Anthony Gallagher, Director of Operations |
| MORAGA ORINDA FIRE DISTRICTY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Moraga-Orinda Fire District - Station 41<br>1280 Moraga Way<br>Moraga, CA,  94556 |
| MORENO VALLEY CA (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 14177 Frederick Street<br>P.O. Box 88005<br>Moreno, Valley, CA, 92552 |
| MORGAN GRENFELL INTERNATIONAL FUNDS MANAGEMENT LTD | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 9/8/2008 (8252LL00305) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| MORGAN STANLEY CAPITAL GROUP, INC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 1585 Broadway, 3rd Floor<br>New York, NY, 10036-8293<br><br>Attn:FX Transactions, Currency Obligations/Options |
| | | | 2000 Westchester Avenue<br>Purchase, NY , 10577<br><br>Attn: Commodities, Swap Group |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Transaction Mangement Group<br>1585 Broadway, 19th Floor<br>New York, NY, 10036-8293<br><br>Attn: Chief Legal Officer |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2000 Westchester Avenue, First Floor<br>Purchase, NY , 10577<br><br>Attn: Commodities - Swap Group |
| | | | Transaction Management Group<br>1585 Broadway, 10th Floor<br>New York, NY, 10036-8293<br><br>Attn:Chief Legal Officer |
| MORGAN STANLEY CAPITAL SERVICES LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 220709631HYGOTH dated 11th Sept 2008 with maturity 20th June 2013 | c/o The Corporation Trust Comp Corporation Trust C<br>1209 Orange Street<br>Wilmington, Delaware, 19801-1120<br>United States |
| Mountain States Properties | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 400 North State of Franklin Road<br>Johnson City , 37604 |
| MPS Capital Services Banca perle Impresa SpA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Via Nino Bixio, 2<br>Offices: Viale Mazzini, 23<br>53100 Siena<br>Italy |
| | | | Via Nino Bixio, 2<br>Offices: Viale Mazzini, 23<br>53100 Siena<br>Italy |
| MUCKINGUM (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Muskingum County<br>401 Main Street<br>Zanesville, Ohio, 43701 |
| MUNICIPAL ASSET SECURITIZATION TRUST SECURITIES, SERIES 2008-1 TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Municipal Authority of the Township of Robinson (P | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4192 Campbells Run Rd<br>Carnegie, PA , 15106 |
| MUNICIPAL AUTHORITY OF WESTMORELAND CO. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 730<br>Greensburg, PA , 15601<br><br>Attn: Business Manager |
| MUNICIPAL ENERGY AGENCY NEBRASKA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1111 O Street, Suite 200<br>P.O. Box 95124<br>Lincoln, NE , 68508-3614 |
| MUSCLE SHOALS | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 2624<br>Muscle Shoals, AL , 35662 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| NATCHEZ (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Adams County, Mississippi County Courthouse Natchez MS , 39120 <br><br> Attention: Clerk, Board of Supervisors |
| | | | Mississippi Development Bank 1306 Walter Sillers Building Jackson MS , 39201 <br><br> Attention: Executive Director |
| | | | Natchez Regional Medical Center Sergeant S. Prentiss Drive Natchez MS , 39120 <br><br> President |
| Natchez Regional Medical Center | LEHMAN BROTHERS SPECIAL FINANCING INC. | | NATCHEZ REGIONAL MEDICAL CENTER 54 Seargent Prentiss Drive Natchez, MS , 39120 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | NATCHEZ REGIONAL MEDICAL CENTER 54 Seargent Prentiss Drive Natchez, MS , 39120 |
| Natchez, City of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City of Natchez City Hall 124 South Pearl Street Natchez, MS,  39120 |
| NATIONAL POWER CORPORATION | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3rd Floor Quezon Avenue corner BIR Road, Diliman 1100 Quezon City, Philippines Attn:Alexander P Japon, Senior Department Manager |
| NATIXIS | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 5/11/1999 | 9 West 57th Street New York, NY, 10019 <br><br> Attn: John-Charles van Essche |
| | | | Caisse Centrale Des Banques Po 10-12 Avenue Winston Chruchill Charenton Le Pont, 94677 France Attn: M. Kessler or Mme. Nicand |
| | | | Natixis 30, avenue Pierre Mendes-France 75013 Paris - Adresse postale: BP 4 – 75060 Paris Cedex 02, France |
| Natixis Financial Products Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9 West 57th St, 35th Floor New York, NY, 10019 <br><br> Attn: Legal |
| Nebraska Investment Finance Authority | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 1230 O ST Suite 200 Lincoln, NE , 68508 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | 200 Commerce Court<br>1230 O Street<br>Lincoln, NE , 68508<br><br>Attn: Executive Director |
| NEVADA HOUSING DIVISION | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1802 North Carson St, Ste 154<br>Carson City, NV, 89701<br><br>Attn: CFO |
| | | | Nevada Housing Division Offices<br>7220 Bermuda Road, Ste. B<br>Las Vegas, NV , 89119<br><br>Attn: Lon DeWeese |
| New Generation Funding Trust 15 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | CDC IXIS Financial Guaranty<br>825 Third Avenue<br>6th Floor<br>New York, NY, 10022<br><br>Attn: Kwiatkoski Paul |
| New Generation Funding Trust 16 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o CDC IXIS Financial Guaranty Services Inc.<br>825 Third Avenue, 6th floor<br>New York, NY, 10022 |
| New Generation Funding Trust 37 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | CDC IXIS Financial Guaranty Services Inc.<br>825 Third Avenue, 6th floor<br>New York, NY , 10022<br><br>Attn: General Counsel |
| New Generation Funding Trust 83 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o CIFG Services, Inc.<br>825 Third Avenue, 6th floor<br>New York, NY, 10022 |
| New Generation Funding Trust Series 38 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | CDC IXIS Financial Guaranty<br>Services Inc.<br>825 Third Avenue, 6th fl.<br>New York, NY, 10022<br><br>Attn: Kwiatkoski Att: Paul |
| New Generation Funding Trust Series 39 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o CDC IXIS Financial Guaranty Services Inc.<br>825 Third Avenue, 6th floor<br>New York, NY, 10022 |
| New York Life Insurance Company | LEHMAN BROTHERS SPECIAL FINANCING INC. | | NY Life Investment Management<br>51 Madison Avenue<br>New York, NY, 00101<br><br>Attn: Tom Mahon |
| NGA CAPITAL FUND LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Investors Fund Services (Ireland) Limited<br>Block D, Iveagh Court<br>Harcourt Road<br>Dublin 2, Ireland<br>Laura O'Doherty |
| Nomura International Plc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1 St. Martins#apposs-le-Grand<br>London , EC1A 4NP<br>United Kingdom |
| | | | 1 St. Martins#apposs-le-Grand<br>London , EC1A 4NP<br>United Kingdom<br>Attn: England |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | 1 St. Martins's-le-Grand<br>London , EC1A 4NP<br>United Kingdom |
| NOMURA SECURITIES COMPANY LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Urbannet Otemachi Building 2-2-2-, Otemachi<br>Chiyoda-ku<br>Tokyo<br>100-8130<br>Japan |
| Nordea Bank AB | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Hamngatan 12, SE -105 71<br>Stockholm<br>Stockholm<br>Sweden<br>Attn: Treasury, TAC Business Control |
| Nordea Bank Finland Plc | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 2747 Derivatives Back Office<br>T01/Vallila<br>FIN-0020 Merita<br>Helsinki, Finland<br>Attn: Mr. Pekka Rikala |
| | | | 2747 Settlement Services<br>FIN-00020 Nordea, Helsinki<br>Finland<br>Attn: Swaps Settlements |
| | | | New York Branch<br>437 Madison Avenue<br>New York, NY, 10022<br><br>Attn: Cokin Williams-Hawkes |
| NORMAN REGIONAL HOSPITAL | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 901 North Porter Avenue<br>Norman, OK , 73071 |
| NORTH LITTLE ROCK (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City Services<br>120 Main Street<br>P.O. Box 936<br>North Little Rock, AR , 72115 |
| | | | The Rose Law Firm<br>120 East 4th Street<br>Little Rock, AR, 72201-2893<br><br>Attn: M. Jane Dickey |
| Northcrest Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Northcrest Community<br>1801-20th Street<br>Ames, Iowa, 50010<br><br>Attn: Linda Doyle |
| Northern Star GenerationA/C NSG Holdings LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | NSG Holdings LLC<br>2929 Allen Parkway, Suite 2200<br>Houston, TX, 77019<br><br>Attn: Chief Financial Officer |
| Nuveen High Yield Bond Fund | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Nuveen Asset Management<br>333 West Wacker Drive<br>Chicago, IL, 60606<br><br>Attn: Kevin J. McCarthy |
| NUVEEN INTERNATIONAL INCOME MANAGED ACCOUNT PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 333 West Wacker Drive<br>Chicago, IL, 60606 |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| NUVEEN MULTI-CURRENCY SHORTTERM GOVERNMENT INCOME | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Nuveen Asset Management<br>333 West Wacker Drive<br>Chicago, IL, 60606<br><br>Attn: Kevin J. McCarthy |
| NWI Emerging Market Fixed Income Master Fund Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 169182 dated 12th Sept 2008 with maturity 20th May 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 169186 dated 12th Sept 2008 with maturity 20th May 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 170083 dated 12th Sept 2008 with maturity 20th June 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 174080 dated 12th Sept 2008 with maturity 20th May 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| NWI Explorer Global Master Fund Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | Novation Fee for trade 169183 dated 12th Sept 2008 with maturity 20th May 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 169187 dated 12th Sept 2008 with maturity 20th May 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 170084 dated 12th Sept 2008 with maturity 20th June 2013 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| | | Novation Fee for trade 174081 dated 10th Sept 2008 with maturity 20th Feb 2010 | c/o NWI Managment LP<br>45 East 53rd Street<br>7th Floor<br>New York, 10022<br>United States |
| OAK HILL CREDIT PARTNERS IV LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Oak Hill Advisors, L.P.<br>1114 Avenue of the Americas<br>New York, NY, 10036 |
| Oak Hill Strategic Partners, L.P. | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Oak Hill Strategic Partners, L.P.<br>201 Main Street<br>Suite 1600<br>Fort Worth, TX, 76102<br><br>Attn: Joanathan Nunnaley |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Oaklawn Psychiatric Center | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 330 Lakeview Drive<br>Goshen , 46527 |
| OC/SD Mezz 1 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Archstone<br>9200 East Panorama Circle<br>Suite 400<br>Englewood, CO, 80112<br><br>Attn: Michael Berman |
| | | | c/o Archstone-Smith Operating Trust<br>9200 E. Panorama Circle, Suite 400<br>Engelwood, Colorado , 80112<br><br>Attn: Jessica Moore |
| | | | Irvine Company<br>550 Newport Center Drive<br>Newport Beach, CA, 92660-7011<br><br>Attn: Marc Ley (Chief Financial Officer) |
| | | | Irvine Company<br>550 Newport Center Drive<br>Newport Beach, CA, 92660-7011<br><br>Attn: Robert Lang |
| | | | Notices Relating to Sections 5 or 6, Copy to:<br>Archstone TIC MEZZ Holdings LLC<br>c/o Lehman Brothers, 399 Park Ave., 11th Floor<br>New York, NY, 10022<br><br>Attn: Brad Carpenter and Judy Turchin |
| | | | TriMont Real Estate Advisors, Inc., Monarch Tower<br>3424 Peachtree Road NE, Suite 2200<br>Atlanta, GA , 30326<br><br>Attn: J. Gregory Winchester |
| Ohio Housing Finance Agency | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 57 East Main Street<br>Colombus OH , 43215-5135 |
| ONYX FUNDING LIMITED SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Walkers SPV Limitd<br>Walker House<br>Grand Cayman KY1-9002<br>Cayman Islands<br>Attn:  Rachael Rankin, Director |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| OPPENHEIMERFUNDS INCA/C MML Aplha Backed Notes | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 11/29/2007 | OFI Insitutional Asset Management Inc.<br>Two World FInancial Center<br>225 LIberty Street, 16th Floor<br>New York, NY, 10281<br><br>Attn: General Counsel |
| ORANGE CA (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Hall of Administration<br>333 West Santa Ana Boulevard<br>Santa Ana, CA , 92701 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| OSAKA GAS CO. LTD | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 4-1-2, Hiranomachi, Chuo-Ku<br>Osaka 541-0046<br>Japan |
| Otterbein Homes | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 580 North State Route 741<br>Lebanon, OH , 45036 |
| | | | 580 North State Route 741<br>Lebanon, OH , 45036 |
| OZ GLOBAL SPECIAL INVESTMENTSMASTER FUND LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o OZ Management, LP<br>9 West 57th Street, 39th Floor<br>New York, NY, 10019<br><br>Attn: Joel Frank, Chief Financial Officer, Legal |
| OZ Management LPA/C Gordel Holdings Limited | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Gordel Holdings Limited<br>c/o OZ Management LP<br>9 West 57th Street, 39th Floor<br>New York, NY, 10019<br><br>Attn: Joel Frank, Chief Financial Officer, Legal |
| OZ/Och-Ziff Capital StructureArbitrage Mst Fd Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9 West 57th Street, 39th Floor<br>New York, NY, 10019 |
| P2633 / MeadWestvaco Corporation R | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PIMCO<br>840 Newport Center Drive<br>Suite 100<br>Newport Beach, CA, 92660<br><br>Attn: Kevin M. Broadwater |
| p2642/IBM Personal Pension Plan Trust | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 4/16/1999 | PIMCO<br>840 Newport Center Drive<br>Suite 100<br>Newport Beach, CA, 92660<br><br>Attn: Kevin M. Broadwater |
| P7887 Lianhe Investments Pte Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PIMCO<br>840 Newport Center Drive<br>Suite 100<br>Newport Beach, CA, 92660<br><br>Attn: Kevin M. Broadwater |
| Pacific Coast Bankers Bank | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 340 Pine Street, Suite 401<br>San Francisco, CA , 94104<br><br>Attn: Tracy Holcomb |
| | | | Pacific Coast Bankers#appos Bank<br>340 Pine Street, Suite 401<br>San Francisco, CA, 94104<br><br>Attn: Tracy Holcomb |
| PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 9 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o HSBC Financial Services (Cayman) Limited<br>Strathvale House PO BOX 1109<br>North Street George Town<br>Grand Cayman, Cayman Islands<br>British West Indies<br>Attn: The Directors |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o HSBC Financial Services (Cayman) Limited<br>Strathvale House, P.O. Box 1109, North Street<br>George Town, Grand Cayman<br>Cayman Islands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| PACIFICORP | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 825 N.E. Multnomah, Suite 600<br>Portland, OR , 97232-2315<br><br>Attn: Jeffrey Erb, Esq. and Jeremy Weinstein, Esq. |
| | | | 825 N.E. Multnomah, Suite 700 LCT<br>Portland, OR , 97232<br><br>Attn: Colin Persichetti |
| PANTERA VIVE CDO LIMITED SPC SERIES 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples and Calder<br>P.O. Box 309 GT<br>Ugland House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: Dale Crowley |
| | | | c/o Maples FInance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street<br>Grand Cayman, Cayman Islands, Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| PANTERA VIVE CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| PARADISE IRRIGATION DISTRCT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5325 Black Olive Drive<br>P.O. Box 2409<br>Paradise, CA , 95967<br><br>Attn: Michael Saucier, Chief Executive Officer |
| Paramount Global Limited | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Videocon Industries Ltd.<br>Fort House, 2nd Floor<br>221 D.N. Road, Fort,<br>Mumbai, 400 001<br>India<br>Attn: Mr. S.M. Hedge, CFO |
| PARKER DRILLING COMPANY INC | LEHMAN BROTHERS OTC DERIVATIVES INC. | 1992 ISDA MA - Multi-Currency Cross Border | 11011 Richmond Ave.<br>Houston, TX , 77042-4773<br>USA |
| PEARL FINANCE SERIES 2003-8 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| PEBBLE CREEK 2007-3 LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Airlie Group<br>115 E Putnam Ave<br>Greenwich CT, 06830<br><br>Attn: Seth Cameron |
| | | | Chapman and Cutler LLp<br>111 West Monroe Street<br>Chicago, IL, 60603-4080<br><br>Attn: James Spiotto |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| PEBBLE CREEK LCDO 2006-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church Street, Grand Cayman, Cayman Islands<br>Dale Crowley |
| | | | Moody#apposs Investors Service<br>99 Church Street<br>New York, New York, 10007<br><br>Structured Finance Group, CBO/CLO Monitoring |
| | | | PEBBLE CREEK LCDO 2006-1, LTD.<br>c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House, South Church Street, Cayman Islands<br>The Directors |
| PEBBLE CREEK LCDO 2007-2 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Deutsche Bank (Cayman) Limited<br>P.O. Box 1094<br>George Town, Grand Cayman KYI-1104<br>Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church Street, Grand Cayman, Cayman Islands<br>Attn: Dale Crowley |
| PEBBLE CREEK LCDO 2007-2, LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | DEUTSCHE INTL CORPORATE SERVICES<br>1011 CENTRE RD., SUITE 200<br>WILMINGTON, DE, 19805 |
| PEBBLE CREEK LCDO 2007-2, LTD. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DEUTSCHE BANK (CAYMAN) LTD<br>P.O. BOX 1984 GT GRAND CAYMAN KY-1104<br>CAYMAN ISLANDS, |
| Pebble Creek LCDO 2007-3, Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | MAPLESFS LIMITED<br>P.O. Box 1093 Queensgate House, 113 South Church Street<br>George Town, Grand Cayman, CAYMAN ISLANDS |
| PENN VIRGINIA CORPORATION | LEHMAN BROTHERS OTC DERIVATIVES INC. | 2002 ISDA Master Agreement | Three Radnor Corporate Center, Suite 300<br>100 Matsonford Road<br>Radnor, PA , 19087 |
| PENNS LANDING CDO 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House<br>South Church Street, Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | | | Delaware Investment Advisers<br>100 N. Greene Street<br>Greensboro, NC , 27401<br><br>Attn: Andrea H. Fox |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maples and Calder<br>P.O. Box 309 GT<br>Ugland House<br>South Church Street; Grand Cayman, Cayman Islands<br>Attn: Dale Crowley |
| PENN'S LANDING CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| PEPCO ENERGY SERVICES INC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 1300 North 17th Street<br>Suite 1600<br>Arlington, VA , 22209<br><br>Attn: Contracts Administrator/Credit Dept/Peter Meier, VP |
| Perpetual Trustee Co Ltdas Trustee for Trilogy Ass | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Level 12, Angel Place, 123 Pitt Street<br>Sydney NSW 2000<br>Australia<br>Attn: Manager - Securitisation, Greg White |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Petro-Diamond Risk Management Limited | LEHMAN BROTHERS COMMODITY SERVICES INC. | | c/o Tiland Metals Limited<br>Mid City Place<br>71 High Holborn<br>London, WC1V 6BA<br>United Kingdom<br>Anthony Kaufmann |
| | | | MidCIty Place<br>71 High Holborn<br>London , WC1V 6BA<br>United Kingdom<br>Attn: Chief Financial Officer |
| PGI / Principal Life InsuranceCompany | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 711 High Street<br>Des Moines, IA , 50392-0301<br><br>Attn:Investment Accounting- Derivatives Settlement |
| | | | 801 Grand Avenue<br>Des Moines, IA , 50392-0490<br><br>Attn: Timothy Warrick |
| Phibro LLC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 500 Nyala Farms<br>500 Nyala Farms<br>Westport, CT , 06880<br><br>Attn: Treasurer |
| | | | 500 Nyala Farms<br>500 Nyala Farms<br>Westport, CT, 06880 |
| Phoebe Devitt Homes | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1925 Turner Street<br>Allentown, PA , 18104 |
| PHOEBE MINISTRIES | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1925 Turner Street<br>Allentown, PA , 18104 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1925 Turner Street<br>Allentown, PA , 18104 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1925 Turner Street<br>Allentown, PA , 18104 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1925 Turner Street<br>Allentown, PA , 18104 |
| Phoebe Putney Health System, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 1828<br>Albany, NY, 31702 |
| PHOEBE PUTNEY MEMORIAL HOSPITAL INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 1828<br>Albany<br>Georgia<br>31702<br><br>Kerry Loudermilk, CFO |
| PHOENIX SERIES 2002-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Purrington Moody Weil LLP<br>320 West 13th Street, 5th Floor<br>New York, NY, 10014<br><br>Attn: Simone Martin |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | P.O. Box 1093, Boundary Hall<br>Cricket Square, Grand Cayman KY1-1102<br>Cayman Islands, British West Indies<br>Attn: The Directors |
| PHOENIX SERIES 2002-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o QSVP Limited<br>P.O. Box 1093 GT<br>Queensgate House, 113 South Church Street<br>George Town, Grand Cayman<br>Cayman Islands<br>Attn: Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | P.O. Box 1093, Boundary Hall<br>Cricket Square<br>Grand Cayman<br>KY1-1102<br>Cayman Islands<br>Attn: Director, Legal |
| PHYSICAL URANIUM | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Comurhex<br>26701 Pierrelatte<br>Cedax, France<br>Attn: Anne Guinot |
| | | | Concentrates Acceptance and Storage<br>AREVA NC/Chemistry BU/ Products Department<br>Comurhex<br>26701 Pierrelatte Cedex, France<br>Attn: Anne Giunot |
| Pickersgill, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 615 Chestnut Avenue<br>Towson , 21204 |
| PITTSBURGH INTERNATIONAL AIRPORT | LEHMAN BROTHERS SPECIAL FINANCING INC. | Forward Purchase Agreement dated on 7/1/2010 | Landside Terminal, 4th Floor, Mezz<br>P.O. Box 12370<br>Pittsburgh, PA, 12370 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | Forward Purchase Agreement dated on 7/1/2010 | Landside Terminal, 4th Floor, Mezz<br>P.O. Box 12370<br>Pittsburgh, PA, 12370 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| POLLYSON INTERNATIONAL LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PO Box 210, 1st Floor, No. 1 The Mews Ann Street, St. Helier Jersey JE4 8SY Channel Islands, United Kingdom Attn: Chan Chee Kong; Fung Lee Woon King, Director |
| PORT ORANGE, FL (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Administrative Offices 1000 City Center Circle Port Orange, FL , 32129 |
| PQ Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1200 West Swedesford Road Berwyn, PA , 19312 Attn: Chief Financial Officer |
| | | | Debevoise & limpton LLP 919 Third Avenue New York, NY, 10022 Attn: Gregory H. Wood, Esq. |
| | | | PQ Corporation 1200 West Swedesford Road Berwyn, PA, 19312 Attn: Chief Financial Officer |
| | | | The Carlyle Group 1001 Pennsylvania Avenue, NW Washington, DC, 20004 Attn: Mr. Andrew Marino |
| Presbyterian Homes and GenevaFoundation of Presbyt | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Presbyterian Homes - Corporate Headquarters 3200 Grant Street Evanston, IL , 60201 |
| Presbyterian Senior Care | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1215 Hulton Road Oakmont, PA , 15139-1196 |
| | | | 1215 Hulton Road Oakmont, PA , 15139-1196 |
| PRESBYTERIAN UNIVERSITY HOSPITAL, PA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 387 Jefferson Street Export, PA , 15632 |
| Primus TelecommunicationsCanada, Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | For notices in section 5, 6, or in CSA: Guggenheim Corporate Funding, LLC 135 East 57th Street, 7th Floor New York, NY, 10022 Attn: Fund Administrator |
| | | | Primus Telecommunications Canada Inc. 5343 Dundas Street West, Suite 400 Toronto, M9B 6K5 Canada Attn: Chief Financial Officer |
| Prince of Peace Lutheran Church of Carrollton, TX | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Prince of Peace Lutheran Church of Carrollton, Tex 4000 Midway Road Carrollton, 75007 Attn: Steve Ailey |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| PROFUND ACCESS VP HIGH YIELD FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | ProFunds<br>7501 Wisconsin Avenue<br>Suite 1000<br>Bethesda, MD , 20814<br><br>Attn: Rubin Howard |
| Profund VP Falling USDollar | LEHMAN BROTHERS SPECIAL FINANCING INC. | | ProFunds<br>7501 Wisconsin Avenue<br>Suite 1000<br>Bethesda, MD , 20814<br><br>Attn: Rubin Howard |
| PROFUNDS ACCESS FLEX HIGH YIELD FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 7501 Wisconsin Avenue, Suite 1000<br>Bethesda, MD, 20814 |
| PROFUNDS FALLING US DOLLAR INVESTOR | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 7501 Wisconsin Avenue, Suite 1000<br>Bethesda, MD, 20814 |
| PROGRESSIVE HOUSING INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4239 North War Memorial Drive<br>Peoria, IL , 61614 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 4239 North War Memorial Drive<br>Peoria, IL , 61614 |
| Prudential Inv Mgmt/DrydenGlobal Total Return Fd I | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Two Gateway Center, 7th Floor<br>Newark, NJ , 07102<br><br>Attn: Marie Mooney - Operations/ Confirms Group |
| Prudential Inv Mgmt/DrydenHigh Yield Fd Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Two Gateway Center, 7th Floor<br>Newark, NJ , 07102<br><br>Attn: Marie Mooney - Operations/ Confirms Group |
| Prudential Inv Mgmt/DrydenTotal Return Bond Fd Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Two Gateway Center, 7th Floor<br>Newark, NJ , 07102<br><br>Attn: Marie Mooney - Operations/ Confirms Group |
| Prudential Inv Mgmt/PruA/C Pru Series Fd, HY Bd Po | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Two Gateway Center, 7th Floor<br>Newark, NJ , 07102<br><br>Attn: Marie Mooney - Operations/ Confirms Group |
| Prudential Inv Mgmt/PruSeries Diversified BondPort | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Two Gateway Center, 7th Floor<br>Newark, NJ , 07102<br><br>Attn: Marie Mooney - Operations/ Confirms Group |
| PSEG Energy Resources & Trade LLC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 80 Park Plaza, T-19<br>Newark, NJ , 07102-4194<br><br>Attn: John A. Schmidt |
| PT MOBILE-8 TELECOM Tbk | LEHMAN BROTHERS SPECIAL FINANCING INC. | | PT. Mobile-8 Telecom Tbk.<br>18th Floor, Menara Kebon Sirih<br>Jl. Kebon Sirih Kav. 17-19<br>Jakarta, 10340<br>Indonesia |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| PUERTO RICO COMMONWEALTH OF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sidley Austin LLP<br>c/o Commonwealth of Puerto Rico<br>787 Seventh Avenue<br>New York, NY, 10019 |
| PUERTO RICO COMMONWEALTH OF (ESCROW) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o The Bank of New York Trust Company, N.A. 10161 Centurion Parkway<br>Jacksonville<br>Florida<br>32256<br><br>Attention: Sheryl Lear - Vice President |
| | | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico, 940<br>Puerto Rico<br>Attn: President |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o The Bank of New York Trust Company, N.A. 10161 Centurion Parkway<br>Jacksonville<br>Florida<br>32256<br><br>Attention: Sheryl Lear - Vice President |
| | | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico, 940<br>Puerto Rico<br>Attn: President |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o The Bank of New York Trust Company, N.A. 10161 Centurion Parkway<br>Jacksonville<br>Florida<br>32256<br><br>Attention: Sheryl Lear - Vice President |
| | | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico, 940<br>Puerto Rico<br>Attn: President |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o The Bank of New York Trust Company, N.A. 10161 Centurion Parkway<br>Jacksonville<br>Florida<br>32256<br><br>Attention: Sheryl Lear - Vice President |
| | | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico, 940<br>Puerto Rico<br>Attn: President |

## Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o The Bank of New York Trust Company, N.A. 10161 Centurion Parkway<br>Jacksonville<br>Florida<br>32256<br><br>Attention: Sheryl Lear - Vice President |
| | | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico , 940<br>Puerto Rico<br>Attn:  President |
| Puerto Rico Sales Tax Fin | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Sidley Austin LLP<br>787 Seventh Avenue<br>New York, NY, 10019<br><br>Attn:  Lawrence A. Bauer |
| PUERTO RICO SALES TAX FINANCING CORP. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Government Development Bank for Puerto Rico<br>Roberto Sanchez Vilella Government Center<br>Avenida de Diego, Parada 22<br>San Juan, Puerto Rico , 940<br>Puerto Rico<br>Executive Director |
| PUTNAM CK5 / CK5  FXSAUDI ARABIAN MONETARY AGENCYC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Putnam Investments<br>One Post Office Square<br>Boston, MA, 02109<br><br>Attn: Derivative Contract |
| PVHA/Sims Ventures LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Selah Management Group<br>50 A1A N., Suite 110<br>Ponte Verde Beach, FL, 32082<br><br>Attn: Alan Parrish - Managing Director |
| PYXIS ABS CDO 2007-1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | LaSalle Bank National Association<br>181 West Madison Street, 32nd Floor<br>Chicago, IL, 60602<br><br>CDO Trust Services Group - Pyxis ABS CDO 2007-1 Lt |
| | | | Pyxis ABS CDO 2007-1 Ltd.c/o Maples Finance Limite<br>P.O. Box 1093 GT, Queensgate House<br>South Church Street<br>George Town, Grand Cayman, Cayman Islands<br>CDO Trust Services Group - Pyxis ABS CDO 2007-1 Lt |
| Quantum Partners LDC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | C/O Curacao International Trust Company N.V.<br>Kaya Flamboyan 9<br>PO Box 812<br>Willemstad, Curacao, Netherlands Antilles |
| | | | Soros Fund Management LLC<br>888 Seventh Avenue, 33rd floor<br>New York, NY, 10106<br><br>Attn: Kevin Quigley |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| QUARTZ FINANCE 2003-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| QUARTZ FINANCE 2004-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Quartz Finance PLC<br>c/o The Bank of New York Mellon - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| QUARTZ FINANCE 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Quartz Finance PLC<br>c/o The Bank of New York Mellon - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| QUARTZ FINANCE SERIES 2003-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Centre<br>International Finance Services Centre<br>Dublin 1, Ireland<br>Attn: Thomas Musarra |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2003-07-A CITI | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o US Bank National Association<br>100 Wall Street, 16th Floor<br>New York, NY, 10005<br><br>Attn: David Kolibachuk |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

**<u>Derivatives Contracts</u>**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| RACERS 2005-10-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2005-13-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o US Bank National Association<br>100 Wall Street, 16th Fl<br>New York, NY, 10005<br><br>Attn: David Kolibachuk |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2005-21-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Lehman Brothers Holdings Inc.<br>745 Seventh Avenue<br>New York, NY, 10019<br><br>Swap Notice Generation |
| | | | Lehman Brothers Special Financing Inc<br>745 Seventh Avenue<br>New York, NY, 10019<br><br>Transaction Management |
| | | | U.S. Bank National Association<br>100 Wall Street 16th Floor<br>New York, NY, 10005<br><br>David Kolibachuk  #amper Marlene Fahey |
| RACERS 2006-18-C ABX-A-06-1-I | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-18-C ABX-A-06-1-II | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| RACERS 2006-18-C ABX-A-06-1-III | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-18-C ABX-A-06-2-I | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-18-C ABX-A-06-2-II | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-18-C ABX-A-06-2-III | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-1-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2006-20-AT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o U.S. Bank National Association<br>100 Wall Street, 16th Floor<br>New York, NY, 10005<br><br>Attn: David Kolibachuk |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| RACERS 2007-4-C FTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o U.S. Bank National Association<br>100 Wall Street, 16th Floor<br>New York, NY, 10005<br><br>Attn: David Kolibachuk |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2007-7-MMUS BANK (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Restructured Asset Securities with Enhanced Returns,c/o U.S. Bank Trust National Association<br>300 Delaware Avenue, 9th Floor<br>Wilmington,<br>Delaware, 19801<br><br>Corporate Trust Administration |
| | | | U.S. Bank National Association<br>100 Wall Street<br>New York<br>NY, 10001<br><br>David Kolibachuk and Marlene Fahey |
| RACERS 2008-2-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS 2008-3-C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RACERS SERIES 2002-26 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| | | | c/o A<br>International Financial Services Centre<br>North Wall Quay<br>Dublin 1, Ireland |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Centre<br>North Wall Quay<br>Dublin 1, Ireland |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RADIAN CREDIT LINKED TRUST 2003-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RALEIGH WV (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 1469<br>Charleston, WV , 25325 |
| RCW Revocable Trust | LEHMAN BROTHERS OTC DERIVATIVES INC. | | RCW Revocable Trust<br>2120 Fairmont Street<br>Klamath Falls, Oregon,  97601<br><br>Attn: Roderick C. Wendt |
| Reading Road Apartments LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1800 Bering Suite 501<br>Houston, TX , 77057 |
| | | | 1800 Bering Suite 501<br>Houston, TX , 77057 |
| REDDING CA (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City of Redding California<br>P.O. Box 496071<br>Redding, CA , 96049-6071<br><br>Attn: Lyle Hurley |
| REDEVELOPMENT AGENCY OF CITY OF DIXON | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 600 East A Street<br>Dixon, CA , 95620 |
| REDLANDS CA (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City of Redlands California<br>35 Cajon Street<br>Redlands, CA , 92373 |
| Redstone Presbyterian Senior Care | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6 Garden Center Drive<br>Greensburg, PA , 15601-1397<br><br>Attn: CFO |
| REDWOOD SENIOR HOME AND SERVICES | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1017 Middlefield Road<br>P.O. Box 391<br>Redwood City, CA,  94063-0391 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1017 Middlefield Road<br>P.O. Box 391<br>Redwood City, CA,  94063-0391 |
| Regents of the University of California | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1111 Franklin Street<br>Oakland, California , 94607-5200 |
| | | | 1111 Franklin Street<br>Oakland, California , 94607-5200 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Repackaged American General FRTC 2003-1 | LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. | | c/o US Bank Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005 |
| Republic of Italy, Ministry of Econ & Fin Tsy Dept | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Via XX Settembre 97<br>00187<br>Rome<br>Italy<br>Attn: Tiziana Mazzarochhi |
| RESIDENCES DE LA REPUBLIQUE | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 47 Rue de Monceau<br>Paris, 75008<br>France |
| RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2005-21-C TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O U.S. BANK NATIONAL ASSOCIATION<br>1 FEDERAL ST 3RD FL<br>MAIN STAT EX-MA-FED<br>BOSTON, MA, 2110 |
| RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2006-1-C TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O U.S. BANK NATIONAL ASSOCIATION<br>1 FEDERAL ST 3RD FL<br>MAIN STAT EX-MA-FED<br>BOSTON, MA, 2110 |
| RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS, SERIES 2007-4-C TRUST | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O U.S. BANK NATIONAL ASSOCIATION<br>1 FEDERAL ST 3RD FL<br>MAIN STAT EX-MA-FED<br>BOSTON, MA, 2110 |
| Retirement Housing Foundation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 5150 East Pacific Coast Highway<br>Long Beach, CA , 90804<br><br>Attn: Stephen Margetic |
| | | | Retirement Housing Foundation<br>5150 East Pacific Coast Highway<br>Long Beach, CA, 90804<br><br>Attn: Stephen Margetic |
| RIBCO SPC, INC. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 25 Bank Street<br>London, E14 5LE<br>England<br>Documentation Manager |
| | | | One Broadgate<br>London, EC2M 7HA<br>England<br>Ian Anderson/Louisa Papadouri |
| | | | One Broadgate<br>London, EC2M 7HA<br>England<br>Managing Director Swaps |
| Riddle Memorial Hospital Health Care Center III | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1068 W. Baltimore Pike<br>Media, PA , 19063 |
| | | | 1068 W. Baltimore Pike<br>Media, PA, 19063-5177 |
| RK Bradley Associates Lim | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Konover Properties Corp.<br>342 North Main Street<br>West Hartford, CT, 06117<br><br>Attn: Martha Colier, CFO |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Waterford Hotel Group, Inc.<br>914 Hartford Turnpike<br>P.O. Box 715<br>Waterford, CT , 06385<br><br>Attn:  Inna Shapiro, Cash Manager |
| ROBECO CREDIT LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Coolsingel 120<br>3001 AG Rotterdam<br>Netherlands |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Robeco Credit Limited<br>Coolsingel 120<br>Rotterdam, NL-3011 AG<br>The Netherlands |
| ROBERT A SCHOELLHORN TRUST | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 77 West Wacker Drive, Suite 4800<br>Chicago, IL, 60601-1812<br><br>Attn: Steve Jakubowski |
| | | | Marathon Coach<br>91333 Coburg Industrial Way<br>Coburg, OR,   97408-9492<br><br>Attn: Robert A Schoellhorn |
| Rockford Memorial Hospital | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2400 North Rockton<br>Rockford, IL , 61103<br><br>Attn: Henry M. Seybold |
| Roman Catholic Diocese of Memphis | LEHMAN BROTHERS SPECIAL FINANCING INC. | | The Roman Catholic Diocese of Memphis<br>5825 Shelby Oaks Drive<br>Memphis, TN, 38138 |
| ROMESH & KATHLEEN WADHWANI TRUST | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 1395 CHARLESTON ROAD<br>MOUNTAIN VIEW, CA , 94043<br><br>Attn: WADHWANI ROMESH |
| ROSSLYN INVESTORS I LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 10 East 53rd Street 37th Floor<br>New York, NY, 10022 |
| Royal Bank of Canada | LEHMAN BROTHERS COMMERCIAL CORPORATION | | Three World Financial Center<br>200 Vesey Street<br>New York, NY, 10281-8098 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2nd Floor, Royal Bank Plaza<br>North Tower<br>200 Bay Street<br>Toronto, M5J 2J5<br>Canada |
| ROYAL BANK OF SCOTLAND ASSET MANAGEMENT | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 8/8/2008 (8221LL00057) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Royal Bank of Scotland PLC | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 600 Steamboat Road<br>Greenwich, CT , 06830<br><br>Attn: Legal Dept. - Derivatives Documentation |
| | | | RBS Global Banking & Markets<br>Level 4, 135 Bishopgate<br>London, EC2M 3UR<br>United Kingdom<br>Attn: Swaps Administration |
| ROYAL BANK OF SCOTLAND PLC (THE) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 600 Steamboat Road<br>Greenwich CT , 06830 |
| | | | 600 Steamboat Road<br>Greenwish, CT, 6830<br>United States |
| RUBY FINANCE 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 10/10/2002 | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RUBY FINANCE 2005-1 Class A15 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| RUBY FINANCE 2005-1 Class A16 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| RUBY FINANCE 2005-1 Classes A2-A9 | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 10/10/2002 | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| RUBY FINANCE 2006-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| RUBY FINANCE 2006-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| RUBY FINANCE 2006-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RUBY FINANCE 2006-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Ruby Finance PLC<br>c/o The Bank of New York Mellon-London Branch<br>One Canada Square<br>London, E14 5AL<br>United Kingdom |
| RUBY FINANCE 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| RUBY FINANCE 2007-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| RUBY FINANCE 2008-01 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Rutherford Hospital, Incorporated | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 288 South Ridgecrest Ave.<br>Rutherfordton , 28139 |
| Sacramento, County of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | County Administration Center<br>700 H Street Suite 2650<br>Sacramento, CA , 95814<br><br>Attn: Director of Finance |
| Saga 400 Limited | LEHMAN BROTHERS SPECIAL FINANCING INC. | | The Saga Building<br>Enbrook Park<br>Folkestone<br>Kent, CT20 3SE<br>United Kingdom<br>Attn: Stuart Howard |
| Saint Joseph's University | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Saint Joseph#apposs University<br>5600 City Avenue<br>Philadelphia, PA, 19131<br><br>Attn: Louis Mayer, VP of Financial Affairs |
| | | | Saint Joseph's University<br>5600 City Avenue<br>Philadelphia, PA, 19131<br><br>Attn: Louis Mayer, VP of Financial Affairs |
| Saint Louis University | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 221 North Grand Blvd.<br>DuBourg Hall, Room 202<br>Saint Louis, MO , 63103<br><br>Attn: Robert J. Woodruff, VP |
| San Francisco Airport, City and County of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | P.O. Box 8097<br>San Francisco, CA , 94128<br><br>Attn: John L. Martin |
| | | | Terminal 2, 5th Floor<br>P.O. Box 8097<br>San Francisco, CA, 94128 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Terminal 2, 5th Floor<br>P.O. Box 8097<br>San Francisco, CA, 94128 |
| SANKATY CREDIT OPPORTUNITIESIII, L.P. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 111 Huntington Avenue<br>Boston, MA , 02199<br><br>Attn: Jeff Hawkins |
| SANKATY SPECIAL SITUATIONS I LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 111 Huntington Avenue<br>Boston, MA , 02199 |
| SANTANDER AM SGIIC A/C Banif Estructurado FI | LEHMAN BROTHERS OTC DERIVATIVES INC. | | acting on behalf of Banif Estructurado<br>Avda Cantabria s/n<br>28660 Boadilla del Monte<br>Madrid, Spain<br>Attn: Teresa Saenz-Diez, Dir. Legal Service Funds |
| | | | Ciudad Grupo Santander<br>Avda Cantabria s/n<br>28660 Boadilla del Monte<br>Madrid, Spain |
| SANTANDER AM SGIIC A/C Fondo Anticipacion Con | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Avda. de Cantabria s/n<br>28660 Boadilla del Monte<br>Madrid 28660<br>Spain |
| Santander/Fondo SuperseleccionAcciones 2 FIM | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Ciudad Grupo Santander<br>Avda Cantabria s/n<br>28660 Boadilla del Monte<br>Madrid, Spain |
| Santander/SuperseleccionDividendo 2 FI | LEHMAN BROTHERS OTC DERIVATIVES INC. | | Ciudad Grupo Santander<br>Avda Cantabria s/n<br>28660 Boadilla del Monte<br>Madrid, Spain |
| SAPHIR FINANCE PLC 2004-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-10 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-3 Class A | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-3 Class B | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-3 Class C | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2005-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2006-10 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2006-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2006-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2007-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2007-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | AIB International Center<br>International Financial Services Center<br>North Wall Quay<br>Dublin 1, Ireland<br>Attn: Tom Geary/ Adrian Wrafter |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2007-9 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAPHIR FINANCE PLC 2008-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Sarah Community Development | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sarah Comunity Developments<br>Sarah K. Gallagher<br>703 East Morgan Street<br>Boonville, MO,  65233 |
| SARM 2008-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9062 old Annapolis Road<br>Columbia, MD, 21045<br><br>Attn: Client Manager, SASCO 2008-1 |
| | | | Aurora Loan Services LLC, as Master Servicer<br>10350 Park Meadows Drive<br>Littleton, Colorado, 80124<br><br>Jerald W. Dreyer |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SAUDI ARABIAN MONETARY AGENCY | LEHMAN BROTHERS COMMERCIAL CORPORATION | Forward Puchase Agreement dated 7/28/2008 (8210LL00397) | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom<br>Attn: Derivative Contract |
| SEALINK FUNDING LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | c/o Maples Finance Limited<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>Grand Cayman, Cayman Islands |
| SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | c/o Maples Finance Limited<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>Grand Cayman, Cayman Islands |
| Security Life of Denver Insurance Company | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o ING Investment Management LLC<br>5780 Powers Ferry Road, N.W., Suite 300<br>Atlanta, GA, 30327-4349<br><br>Attn: Derivatives Middle Office |
| | | | ING Investment Management LLC<br>5780 Powers Ferry Road, N.W., Suite 300<br>Atlanta, GA , 30327-4349<br><br>Attn: Corporate Counsel |
| | | | ING Investment Management LLC<br>5780 Powers Ferry Road, N.W., Suite 300<br>Atlanta, GA , 30327-4349<br><br>Attn: Derivatives Middle Office |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Sequa Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 200 Park Avenue<br>New York, NY, 10017<br><br>Attn: Jim Langelotti |
| | | | c/o Chatham Financial Corporation<br>235 Whitehorse LN<br>Kennett Square, PA , 19348<br><br>Attn: Ben Lewis |
| SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3) LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Maples and Calder<br>P.O. Box 309GT<br>Ugland House<br>South Church street, Grand Cayman<br>Cayman Islands<br>Attn: Dale Crowley |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093GT, Queensgate House<br>South Church Street<br>Grand Cayman, Cayman Islands<br>Attn: The Directors |
| | | | Chapman and Cutler LLP<br>111 West Monroe Street<br>Chicago, IL, 60303-4080<br><br>Attn: James E. Spiotto |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SHANDS TEACHING HOSPITAL & CLINICS | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Trustee for First Union<br>225 water Street<br>Jacksonville, FL,  32202<br><br>Attn: Don Shaw & Chris Tracy |
| Shell Energy North America (US) LP | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Coral Energy Holding, L.P.<br>909 Fannin, Plaza Level 1<br>Houston, TX, 77010<br><br>Attn: General Counsel |
| | | | Shell Energy North America<br>4445 Eastgate Mall, Suite 100<br>San Diego, CA , 92121 |
| SHELL ENERGY TRADING LTD | LEHMAN BROTHERS COMMODITY SERVICES INC. | EFET Power dated on 1/31/2008 | 80 Strand<br>London,  WC2R 0ZA<br>United Kingdom |
| Shepherd of the Valley Lutheran Retirement Service | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Local Currency Single Jurisdiction dated on 12/13/2001 | 6000 Mahoning Avenue<br>Suite 410<br>Youngstown, PA, 44515 |
| SHINHAN BANK | LEHMAN BROTHERS COMMERCIAL CORPORATION | | APEX LLC<br>16-18F, Meritz Tower, 825-2 YEOKSAM-DONG<br>GANGNAM-GU,SEOUL<br>135-934<br>Korea<br>Jong Baek Park/Kyu Hyun Song |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Sierra Vista Community Hospital | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sierra Vista Regional Health Center<br>300 El Camino Real<br>Sierra Vista, AZ , 85635 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Sierra Vista Regional Health Center<br>300 El Camino Real<br>Sierra Vista, AZ , 85635 |
| Simmons College | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 300 The Fenway<br>Boston, MA, 02115<br><br>Attn: Humberto Goncalves |
| | | | Office of the Senior Vice President,<br>Finance and Administration, and Treasurer<br>300 The Fenway<br>Boston, MA , 02115-5898 |
| | | | Office of the Senior Vice President,<br>Finance and Administration, and Treasurer<br>300 The Fenway<br>Boston, MA , 02115-5898 |
| Simpson Meadows | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 150 Monument Road<br>Suite 405<br>Bala Cynwyd , 19004 |
| Sisters of charity ofleavenworth health systems | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 9801 Renner Boulevard<br>Lenexa, Kansas , 66219<br><br>ATTN: Michael Rowe |
| | | | c/o Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017 |
| | | | c/o Cain Brothers<br>360 Madison Avenue, 5th Floor<br>New York, NY, 10017 |
| SJL Moore Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Moore Capital Management, LLC<br>1251 Avenue of the Americas, 52nd Floor<br>New York, NY, 10020<br><br>Attn: Anthony Gallagher, Director of Operations |
| SMBC Capital Markets, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 277 Park Avenue-5th Fl.<br>New York, NY, 10172<br><br>Attn: Tetsuya Tonoike |
| SOLAR INVESTMENT GRADE CBO I | LEHMAN BROTHERS SPECIAL FINANCING INC. | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| SOLAR INVESTMNT GRADE CBO II | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SOLAR V CDO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SOLAR V CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| SOLAR V CDO SPC, F/A/O THE SERIES 2007-1 SEGR PORTF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O MAPLES FINANCE LIMITED<br>PO BOX 1093GT QUEENSGATE HOUSE SOUTH CHURCH STREET<br>GEORGE TOWN GRAND CAYMAN, CAYMAN ISLANDS |
| Sonoma, County of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | County of Sonoma California<br>County Administrator<br>575 Administration Drive, Suite 104A<br>Santa Rosa, CA, 95403 |
| South Mississippi ElectricPower Association | LEHMAN BROTHERS SPECIAL FINANCING INC. | | (7037 U.S. Highway 49) P.O. Box 15849<br>Hattiesburg, MS, 39404-5849<br><br>Attn: General Manager |
| | | | South Mississippi Electric Power Association<br>(7037 U.S. Highway 49) P.O. Box 15849<br>Hattiesburg, MS, 39404-5849<br><br>Attn: General Manager |
| South Sebastian County Water Users | LEHMAN BROTHERS SPECIAL FINANCING INC. | | South Sebastian County Water Users Association<br>2500 Mount Zion Road<br>Greenwood, AR , 72936 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | South Sebastian County Water Users Association<br>2500 Mount Zion Road<br>Greenwood, AR , 72936 |
| SOUTH TUCSON AZ (CITY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1601 South Sixth Avenue<br>South Tuscon, AZ , 85713 |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| SOUTHBRIDGE ASSOCIATES LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 160 Federal Street, 22nd Floor<br>Boston, MA , 02110 |
| SOUTHERN CALIFORNIA EDISON (EEI) | LEHMAN BROTHERS COMMODITY SERVICES INC. | EEI dated on 4/7/2008 | 2244 Walnut Grove Ave.<br>Rosemead, CA , 91770<br><br>Attn: Kevin Cini |
| Southwestern Ohio Seniors' Services, Inc | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 11100 Springfield Pike<br>Springdale, OH , 45246 |
| Sovereign Bank | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1500 Market Street, Concourse Level<br>Philadelphia, PA, 19102<br><br>Attn:  Derivative Operations |
| | | | Sovereign Bank<br>P.O. Box 12646<br>Reading, PA , 19612 |
| SOVEREIGN HIGH YIELD LOCAL CURRENCY FUND | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| Spanish Broadcasting System, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2601 South Bayshore Dr.  PHII<br>Coconut Grove, FL<br>33133 |
| SSB&T / Bond Market (II)Common Trust Fund | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o State Street Global Advisors<br>Two International Place<br>Boston, MA, 02110<br><br>Attn: Compliance Officer |
| ST LOUIS MO (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 41 South Central<br>Clayton, MO , 63105 |
| ST PETERSBURG HEALTH FACILITIES AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Legal Department<br>MSC 10th Floor<br>One 4th Street North<br>St. Petersburg, FL,  33701 |
| STANDARD BANK PLC | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 20 Gresham Street<br>London, EC2V 7JE<br>United Kingdom |
| | | | Cannon Bridge House<br>25 Gate Hill<br>London, EC4R2SB<br>United Kingdom<br>Attn: Operations |
| Standard Chartered Bank | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 22 Billiter Street<br>London EC3M 2RY<br>United Kingdom |
| Staple Street Aviation (Master) LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o DiMaio Ahmad Capital LLC<br>245 Park Avenue, 44th Floor<br>New York, NY, 10167<br><br>Attn: Wes Higgins |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Staples Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 500 Staples Drive<br>Framingham, MA , 01702<br><br>Attn: Marci Lerner |
| Stephen G MacKenzie &Elizabeth MacKenzie JTWROS | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 103 Chichester Road<br>New Canaan, CT,  06840<br><br>Attn: Mr. Stephen G MacKenzie |
| STICHTING BEWAAR ANWB | LEHMAN BROTHERS COMMERCIAL CORPORATION | | c/o Aberdeen Asset Management<br>Bow Bells House<br>1 Bread Street<br>London, EC4M 9HH<br>United Kingdom |
| STOCKTON EAST WATER DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Stockton East Water District, Head Office<br>6767 East Main Street<br>Stockton, CA , 95215 |
| STOWE CDO LIMITED SPC SERIES 2006-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Maples and Calder<br>P.O. Box 309 GT<br>Ugland House, South Church Street<br>Cayman Islands<br>Attn: Dale Crowley |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093 GT<br>Queensgate House; South Church Street<br>Cayman Islands<br>Attn: The Directors |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| STOWE CDO SERIES 2006-1 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| Sumitomo Mitsui Banking Corp | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3-2 Marunouchi<br>1-Chome<br>Chiyoda-ku, Tokyo 100-0005<br>Japan<br>Attn: Hiroaki Osaki |
| SUMMER STREET 2005-HG1 LTD | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Summer Street 2005-HG1, Ltd.<br>Walker House, P.O. Box 908GT<br>Mary Street, George Town<br>Grand Cayman Islands, Cayman Islands<br>British West Indies<br>The Directors |
| Sun Trust Bank NA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3333 Peachtree Street, N.E.<br>Center Code 3913<br>Atlanta, GA , 30326<br><br>Attn: Financial Risk Management Operations |
| SUNRISE LAKES PHASE 4 RECREATION DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 10300 N.W. 11th Manor<br>Coral Springs, FL , 33071 |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO LIMITED SPC SERIES 2004-4 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-5 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO LIMITED SPC SERIES 2005-6 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/e Maples Finance Limited<br>P.O. Box 1093GT<br>Queensgate House South Church Street<br>Grand Cayman, Cayman Islands<br>British West Indies |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| SUNSET PARK CDO SERIES 2005-6 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| SUPERIOR ENERGY SERVICES INC | LEHMAN BROTHERS OTC DERIVATIVES INC. | | 1105 Peters Road<br>Harvey, Louisiana , 70058<br><br>Attn: Mr. Robert S. Taylor |
| SWEETWATER UNION HIGH SCHOOL DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1130 Fifth Avenue<br>Chula Vista, CA , 91911 |
| Swiss Re Financial ProductsCorporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 55 East. 52nd St.<br>New York, NY, 10055<br><br>Attn: Frank Ronan |
| | | | c/o Swiss Re Capital Markets Ltd<br>30-St. Mary Axe, London<br>EC3A 8EP<br>United Kingdom<br>Attn: Head of Legal |
| | | | Swiss RE<br>Mythenquai 50/60<br>Zurich, CH-8022<br>Switzerland<br>Attn: Paul Whitaker, Director |
| Sydbank | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 99 Speed House<br>EC7Y 8AU<br>London, United Kingdom<br>Attn: Dragsted Schulter Ar |
| | | | Legal Department<br>Peberlyk 4<br>PO Box 1038<br>Aabenraa, DK-6200<br>Denmark |
| Taconic Opportunity Fund Lp/Taconic Cap Advs | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Taconic Capital Advisors LP<br>450 Park Avenue<br>New York, NY, 10022<br><br>Attn: Carol Lee |
| | | | c/o Taconic Capital Advisors LP<br>450 Park Avenue<br>New York, NY, 10022<br><br>Attn: Robin S. Rothstein - Chief Financial Officer |
| | | | Taconic Opportunity Fund LP<br>c/o Taconic Capital Advisors LP<br>450 Park Avenue<br>New York, NY, 10022<br><br>Attn: Carol Lee |
| | | | Taconic Opportunity Fund LP<br>c/o Taconic Capital Advisors LP<br>450 Park Avenue<br>New York, NY, 10022<br><br>Attn: Robin S. Rothstein - Chief Financial Officer |
| TARRANT COUNTY HOUSING FINANCE CORPORATION | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Tarrant County Administration Building<br>100 East Weatherford Street, 5th Floor<br>Fort Worth, TX , 76196 |
| TAVARES SQUARE CDO LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Maples Finance Limited<br>P.O. Box 1093 GT<br>Queensgate House, South Church Street<br>George Town, Grand Cayman, Cayman Islands<br>Attn: The Directors, Joseph Costantino |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| TAVARES SQUARE CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O NATIONAL REGISTERED AGENTS INC<br>9 EAST LOOKERMAN ST., SUITE 1B<br>DOVER, DE, 19901 |
| TAYLOR CREEK LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093 GT<br>Queensgate House, South Church Street<br>George Town, Grand Cayman, Cayman Islands<br>Attn: The Directors, Joseph Costantino |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| TAYLOR CREEK LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| TDA-JPMC 2002-CIBC5 LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Trimont real Estate Advisors<br>3424 Peachtree Road, Suite 2200<br>Atlanta, GA , 30326 |
| TEHACHAPI CUMMINGS COUNTY WATER DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Tehachapi Cummings County Water District<br>P.O. Box 326<br>Tehachapi, CA, 93581 |
| TENASKA MARKETINGVENTURES | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 11717 Nicholas Street<br>Omaha, NE , 68154<br><br>Attn: Manager, Contract Compliance & Data Integrity |
| The Bank of NewYork Mellon | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 32 Old Slip, 16th Floor<br>New York, NY, 10286<br><br>Attn: Stephen Lawler/Swap Confirmation Dept. |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 32 Old Slip, 16th Floor<br>New York, NY, 10286<br><br>Attn:  Stephen M. Lawler |
| The Board of Governors of the University of North Carolina | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 300 South Building<br>CB#1000<br>Chapel Hill, NC, 27599-1000<br><br>Attn: Vice Chancellor |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| The Chapel Hill Residential Retirement Center, Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 750 Weaver Dairy Road<br>The Chapel Hill, North Carolina, 27514<br><br>ATTN: Kenneth G. Reeb, Jr. |
| The DBS Bank Ltd | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 9th Floor Three Exchange Square<br>Central Hong Kong, Hong Kong |
| | | | DBS Building tower 2<br>6 Shenton Way # 34-08<br>10th floor<br>068809<br>Singapore<br>Attn: Settlements- Derivatives Section |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 6 Shenton Way #34-08<br>DBS Building Tower Two<br>068809<br>Singapore<br>Attn: Treasury and Markets Department |
| | | | 9th Floor Three Exchange Square<br>Central Hong Kong, Hong Kong |
| | | | c/o Allen<br>9th Floor Three Exchange Square<br>Central Hong Kong, Hong Kong<br>Attn: Allen |
| THE HARRISBURG AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | Debt Service Forward Delivery Agreement (93A) dated 4/13/94 | The Harrisburg Authority<br>100 Market Street, Suite 104<br>Harrisburg, PA , 17101-2044 |
| | | Debt Service Forward Delivery Agreement (93B) dated 4/13/94 | The Harrisburg Authority<br>100 Market Street, Suite 104<br>Harrisburg, PA , 17101-2044 |
| The Haverford School | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 450 West Lancaster Avenue<br>Haverford, PA, 19041<br><br>ATTN: David S. Gold - Chief Financial Officer |
| THE HONGKONG & SHANGHAIBANKING CORPORATION LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 18th Floor, 8 Canada Square<br>Canary Wharf, London, E14 5HQ<br>United Kingdom<br>Attn: Martin Holcombe |
| THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o U.S. Bank National Association<br>Corporate Trust Services<br>100 Wall Street, Suite 1600<br>New York, NY, 10005<br><br>Attn: David J. Kolibachuk |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | P.O. Box 1093 GT, Queensgate House<br>South Church Street George Town, Grand Cayman<br>Cayman Islands<br>Attn: Legal |
| Thomas Cook AG | LEHMAN BROTHERS COMMODITY SERVICES INC. | | Thomas Cook Group Plc<br>6th Floor South, Brettenham House<br>Lancaster Place, London, WC2E 7EN<br>UK<br>Attn: Richard Walker (Fuel Dealer) |
| Thousand Oaks, City of | LEHMAN BROTHERS SPECIAL FINANCING INC. | | City of Thousand Oaks<br>2100 Thousand Oaks Boulevard<br>Thousand Oaks, CA , 91362 |
| TIAA Structured Finance CDO I, Limited | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 1209 Orange Street<br>Wilmington, Delaware, 19801 |
| | | | PO Box 1093 GT<br>Queensgate House<br>South Church Street<br>Grand Cayman, Cayman Islands, British West Indies |
| | | | The Bank of New York Mellon as Trustee<br>601 Travis, 17th Floor<br>Chase Center<br>Houston, TX, 77002<br><br>Attn: Faheem Ansari |
| | | | The Directors<br>730 Third Avenue<br>New York, NY, 10017 |
| TOBACCO SETTLEMENT FINANCE CORPORATION - NEW YORK | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 6/19/2003 | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | TOBACCO SETTLEMENT FINANCE CORPORATION<br>641 Lexington Avenue, 3rd Floor<br>New York, NY, 10022<br><br>Attn: Genevieve D'Agostino |
| TOBACCO SETTLEMENT FINANCING CORPORATION VIRGINIA | LEHMAN BROTHERS SPECIAL FINANCING INC. | Reserve Fund Agreement dated on 5/26/2005 | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Manju S. Ganerlwala, Treasurer of Virginia<br>P.O. Box 1879<br>Richmond, VA, 23218-1879 |
| | | | TOBACCO SETTLEMENT FINANCING CORPORATION<br>101 North 14th Street<br>Richmond, VA, 23219<br><br>Attn: Director of Debt Management |
| Tokio Marine Financial Solutions Ltd. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Tokyo Club Building<br>2-6 Kasumigaseki 3-chome<br>Chiyoda-ku, Tokyo 100-0013<br>Japan |
| | | | Tokyo Club Building<br>2-6 Kasumigaseki 3-chome<br>Chiyoda-ku, Tokyo 100-0013<br>Japan |
| TOKYO GAS CO LTD | LEHMAN BROTHERS COMMODITY SERVICES INC. | | The Chrysler Building<br>405 Lexington Ave, 33rd Floor<br>New York, NY, 10174<br><br>Attn: Legal |
| Tomball Hospital Authority | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 605 Holderrieth<br>Tomball, TX, 77375<br><br>Attn: Executive Director |
| TOMBALL HOSPITAL AUTHORITY-DSRF | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Tomball Hospital Authority<br>605 Holderrieth Boulevard<br>College Station, TX,  77840 |
| TOPAZ FINANCE LTD 2005-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| TOPAZ FINANCE LTD 2005-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | BNY Corporate Trustee Services Limited - London Branch<br>One Canada Square London<br>London, E14 5AL<br>United Kingdom |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| Toronto-Dominion Bank (The) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 31 West 52nd Street<br>New York, NY, 10019-6101<br><br>Attn: Deborah Gravinese |
| Township of Radnor | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 301 Iven Avenue<br>Wayne, PA, 19807-5297<br><br>ATTN: Director of Finance |
| Trade Processing Corporation | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 1251 Avenue of the Americas<br>53rd floor<br>New York, NY, 10020<br><br>Attn: Director of Operations |
| TRI-CITY BAPTIST CHURCH | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2150 E. Southern Avenue<br>Tempe<br>AZ<br>85282<br><br>CFO |
| TRI-CITY BAPTIST CHURCH 10/1/2012 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1409 NC Highway North<br>PO Box 40<br>Conover, NC, 28613<br><br>Attn: Walter Raines |
| TRILOGY ENERGY LP | LEHMAN BROTHERS COMMODITY SERVICES INC. | | TRILOGY ENERGY LP<br>Suite 4700, 888 – 3rd Street S.W.<br>Calgary, Alberta<br>T2P 5C5<br>CA |
| Trinitas Hospital | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 225 Williamson Street<br>Elizabeth, NJ , 07207<br><br>Attn: Karen Lumpp |
| | | | 655 East Jersey Street<br>Elizabeth, NJ , 07206<br><br>Attn: Karen Lumpp |
| TRINITAS HOSPITAL, NJ | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 225 Williamson St<br>Elizabeth, NJ, 07207 |
| | | | 925 East Jersey Street<br>Elizabeth<br>NJ<br>7201<br><br>Attention: Frank Demiro |
| TRW Automotive Inc. | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 18252 Laurel Park Drive North,<br>Suite 300 West<br>Livonia, MI , 48152<br><br>Attn: Peter Rapin |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | TRW Automative Inc.<br>18252 Laurel Park Drive North,<br>Suite 300 West<br>Livonia, MI , 48152<br><br>Attn: Peter Rapin |
| U.S. SHIPPING PARTNERS LP | LEHMAN BROTHERS SPECIAL FINANCING INC. | | U.S. Shipping Partners LP.<br>399 Thornall Street<br>8th Floor<br>Edison, NJ, 08837<br><br>Attn: Al Bergerson |
| UBS AG | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 677 Washington Boulevard<br>Stamford, CT , 06912-0300<br><br>Attn: James Fuqua, David Kelly |
| Uintah Basin Med Cente | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 250 West 300 North (75-2)<br>Roosevelt, Utah , 84066 |
| | | | Uintah Basin Medical Center<br>250 West 300 North (75-2)<br>Roosevelt, Utah , 84066 |
| UNION HOSPITAL, INC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Union Hospital, Inc<br>1606 North 7th Street<br>Terre Haute, IN , 47804 |
| Unipol Banca Spa | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Via Stalingrado, 53<br>40128 Bologna<br>Italy<br>Attn: Legal Dept |
| UNITED COMPANY | LEHMAN BROTHERS COMMERCIAL CORPORATION | | 1005 Glenway Avenue<br>Bristol, VA , 24201<br><br>Attn: Lois A. Clark / Brian D. Sullivan |
| UNIVERSITY OF ILLINOIS | LEHMAN BROTHERS SPECIAL FINANCING INC. | | University of Illinois<br>The University of Illinois<br>209 Henry Administration Building, MC-399 506 South Wright Street<br>Urbana, Illinois, 61801-3620<br><br>Robert L. Plankenhorn, Capital Financing |
| University of Pittsburgh - Commonwealth System | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2403 Cathedral of Learning<br>Pittsburgh, PA , 15260<br><br>Attn: Treasurer |
| | | | University of Pittsburg<br>2403 Cathedral of Learning<br>Pittsburgh, PA, 15260<br><br>Attn: Treasurer |
| University of Pittsburgh - ofthe Commonwealth | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2403 Cathedral of Learning<br>Pittsburgh, PA , 15260<br><br>Attn: Treasurer |
| UNIVERSITY OF SCRANTON | LEHMAN BROTHERS SPECIAL FINANCING INC. | | The University of Scranton<br>800 Linden Street<br>Scranton, PA,  18510 |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| Ursuline Academy | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Ursuline Academy<br>85 Lowder Street<br>Dedham, MA , 02026<br><br>Attn: Rosann Whiting, President |
| UTAH HOUSING CORP (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd.<br>West Valley City, UT , 84120<br><br>Attn: Executive Director |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| | LEHMAN BROTHERS FINANCIAL PRODUCTS INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| Utah Housing Corporation (ME) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| UTAH HOUSING FINANCE AGENCY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2479 S. Lake Park Blvd. West Valley City, UT , 84120  Attn: Executive Director |
| VALLEJO SANITATION & FLOOD CONTROL | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Vallejo Sanitation & Flood Control District 450 Ryder Street Vallejo, CA , 94590 |
| VINTNERS PROPCO SARL | LEHMAN BROTHERS SPECIAL FINANCING INC. | | rue de la Poste 20 Luxemborg L2346 Luxembourg |
| Vista Grande | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2251 Springport Road Jackson, MI , 49202-1496  Attn: Betsy Standish |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | B.C. Ziegler and Company<br>1 South Wacker Drive, Suite 3080<br>Chicago, IL, 60606<br><br>Attn: Hamilton Chang |
| | | | c/o Life Care Services LLC<br>800 Second Avenue, Suite 200<br>Des Moines, IA,  50309-1380<br><br>Attn: Richard Tucker |
| VOX PLACE CDO LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o CT Corporation<br>111 8th Avenue<br>New York, NY, 10011<br><br>Attn: Legal |
| | | | c/o Maples Finance Limited<br>P.O. Box 1093 GT<br>Queensgate House, South Church Street<br>George Town, Grand Cayman, Cayman Islands<br>Attn: Joseph Costantino |
| | | | c/o The Bank of New York<br>101 Barclay Street, 21st Floor<br>New York, NY, 10286<br><br>Attn: Joseph Costantino, Global CDO Unit |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| VOX PLACE CDO LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | C/O DONALD J. PUGLISI<br>850 LIBRARY AVENUE, SUITE 204<br>NEWARK, DE, 19711 |
| Wachovia Bank, National Association | LEHMAN BROTHERS COMMODITY SERVICES INC. | | 301 South College Street<br>Charlotte, NC , 28288 |
| | | | Wachovia Bank, National Association<br>301 South College Street<br>Charlotte, NC , 28288 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 301 South College Street<br>Charlotte, NC , 28288<br><br>Attn: Diane Weibel |
| WAMCO 1566/Southern Cali Edison Co. Retire Plan Tr | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Western Asset Management Co.<br>385 East Colorado Blvd<br>Pasadena, CA, 91101<br><br>Attn: Stephen Venable |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| WAMCO 1982/The WaltDisneyCoSponsQualBenPl&KeyEmpDe | LEHMAN BROTHERS SPECIAL FINANCING INC. | 1992 ISDA MA - Multi-Currency Cross Border dated on 7/19/2001 | Western Asset Management Co.<br>117 East Colorado Blvd<br>Suite 600<br>Pasadena, CA , 91105<br><br>Attn: Gregg Poillucci |
| WATERSTONE CAPITAL ADVISORS LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 8720 Red Oak Boulevard, Suite 300<br>Charlotte, NC , 28217 |
| Wellmont Health System | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1905 American Way<br>Kingsport, TN , 37660<br><br>Attn: Elizabeth S. Ward |
| | | | c/o BC Ziegler and Company<br>1185 Avenue of the Americas<br>New York, NY, 10036<br><br>Attn: Peter Bruton |
| Wells Fargo Bank, NA | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 525 Market Street<br>San Francisco, CA , 94163 |

**Derivatives Contracts**

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | 525 Market Street<br>San Francisco, CA , 94163 |
| | | | 550 California Street<br>San Francisco, CA , 94104 |
| | | | 550 California Street<br>San Francisco, CA , 94104 |
| WEST CORPORATION | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 11808 Miracle Hills Drive<br>Omaha, Nebraska , 68154 |
| WEST KNOX UTILITY DISTRICT | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2328 Lovell Road<br>P.O. Box 51370<br>Knoxville, TN , 37950 |
| West Point Housing LLC | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Balfour Beatty Communities<br>10 Campus Boulevard<br>Newtown Square, PA , 19073<br><br>Attn: Leslie S. Cohn |
| | | | West Point Housing LLC<br>c/o Balfour Beatty Communities<br>10 Campus Boulevard<br>Newtown Square, PA, 19073<br><br>Attn: Leslie S. Cohn |
| WEST VIRGINIA HOSPITAL FINANCE AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1900 Kanawha Boulevard E.<br>Charleston, WV , 25305 |
| WESTCHESTER, NY (COUNTY OF) | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Westchester County Department of Finance<br>148 Martine Avenue, Suite 720<br>White Plains, NY , 10601<br><br>Attn: Kathy Thorsberg - Commissioner of Finance |
| WESTERN UNIVERSITY OF HEALTH SCIENCES | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3009 E. Second Street<br>Pomona, CA , 91766-1854 |
| WestLB AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Woolgate Exchange<br>25 Basinghall Street<br>London, EC2V 5HA<br>United Kingdom<br>Attn: Sean Tally, Lawrence Vassallo |
| Westpac Banking Corporation | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 575 5th ave, 39th floor<br>New York, NY, 10017<br><br>Attn: Sean Crellin |
| Westside Waldorf School | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1229 Fourth Street<br>Santa Monica , 90401 |
| WHITE MARLIN CDO 2007-1 LIMITED | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Chapman and Cutler LLP<br>111 West Monroe Street<br>Chicago, IL, 60603-4080<br><br>Attn: James Spiotto |
| | | | c/o US Bank<br>Corporate Trust Services<br>P.O. Box 960778<br>Boston, MA , 02196-0778<br><br>Attn: John Leurini |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Maplesfs Limited<br>P.O. Box 1093 Queensgate House<br>113 South Church Street<br>George Town, Grand Cayman, Cayman Islands |
| | | | Newark, DE, 19711<br><br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC |
| | | | P.O. BOX 1093 GT,<br>QUEENSGATE HOUSE<br>GEORGE TOWN, GRAND CAYMAN, Cayman Islands<br>ATTN: GENERAL COUNSEL OR CORPORATE EXEC |
| WISDOMTREE EMERGING MARKETS HIGH YIELDING EQUITY FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 48 Wall Street 11th Floor<br>New York<br>NY<br>10005 |
| WISDOMTREE EMERGING MARKETS SMALLCAP DIVIDEND FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 48 Wall Street 11th Floor<br>New York<br>NY<br>10005 |
| Wockhardt EU Operations(Swiss) AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | c/o Wockhardt Limited<br>Wockhardt Towers<br>Bandra Kurla Complex<br>Bandra (East), Mumbai, 400 051<br>India |
| | | | c/o Wockhardt Limited<br>Wockhardt Towers<br>Bandra Kurla Complex<br>Bandra (East), Mumbai, 400 051<br>India |
| WOODWARD MUNICIPAL AUTHORITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Woodward Municipal Authority<br>1219 8th Street<br>Woodward, OK, 73801<br><br>Attn: City Manager's Office |
| WORKERS COMPENSATION INSURANCE FUND | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY<br>10019-7475<br>USA<br>Adam Cohen |

# Derivatives Contracts

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| XAVIER UNIVERSITY | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 3800 Victory Parkway<br>Cincinnati, Ohio , 45207-4521<br><br>Attn: Vice President for Financial Administration |
| Yes Bank Ltd | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Tiecicon House,<br>2nd Floor, E. Moses Road,<br>Mahalakshmi, Mumbai 400 011<br>India<br>Attn: Mitez Sheth, AVP - Treasury Operations |
| YMCA of Greater Rochester | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 444 East Main Street<br>Rochester, NY,  4604-2595 |
| | | | 444 East Main Street<br>Rochester, NY, 4604-2595 |
| York Hospital | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 1001 South George Street<br>York, 17405<br><br>Attn: Vice President Finance |
| YUMA REGIONAL MEDICAL CENTER | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 2400 S. Avenue A<br>Yuma, Arizona , 85364<br><br>Attn: Gregory L. Beckman - President / CEO |
| Zeeland Aluminium Company AG | LEHMAN BROTHERS SPECIAL FINANCING INC. | | Baarerstrasse 63<br>6300 Zug<br>Switzerland |
| | | | Baarerstrasse 63<br>6300 Zug<br>Switzerland |
| ZIRCON FINANCE LIMITED SERIES 2007-3 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |
| ZIRCON FINANCE LIMITED SERIES 2007-9 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |
| ZIRCON FINANCE LTD SERIES 2007-1 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |
| ZIRCON FINANCE LTD SERIES 2007-14 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |

| Counterparty | Debtor | Title of Agreement | Notice Address |
|---|---|---|---|
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |
| ZIRCON FINANCE LTD SERIES 2007-17 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |
| ZIRCON FINANCE LTD SERIES 2007-2 | LEHMAN BROTHERS SPECIAL FINANCING INC. | | 540 West Madison Street, 25th floor<br>Chicago, Illinois 60661<br>Chicago, Il, 60661<br><br>Attn: Matthew Massier |
| | | | c/o Zircon Finance Limited<br>Walker House, 87 Mary Street<br>George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Alasdair Foster |
| | | | HSBC Bank, USA<br>CTLA - Structured Finance<br>10 East 40th Street, Floor 14<br>New York, NY, 10016<br><br>Attn: Thomas Musarra |
| | | | Walkers SPV Limited<br>Walker House<br>87 Mary Street, George Town<br>Grand Cayman, KY1-9002<br>Cayman Islands<br>Attn: Directors |

# EXHIBIT 2

## PART B – COMMERCIAL LOAN AGREEMENTS

**THE DEBTORS HAVE NOT LISTED ANY FULLY FUNDED TERM LOANS ON EXHIBIT 2, PART B, BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY CONTRACTS.  IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT SUCH CONTRACTS ARE EXECUTORY CONTRACTS, THEN ALL FULLY FUNDED TERM LOANS IN WHICH A DEBTOR IS THE LENDER OF RECORD SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AS OF THE EFFECTIVE DATE AND THE REQUIRED CURE AMOUNT FOR SUCH CONTRACTS SHALL BE ZERO.**

**THE DEBTORS HAVE NOT LISTED ON EXHIBIT 2, PART B ANY LOAN CONTRACTS ENTERED INTO SUBSEQUENT TO THE COMMENCEMENT DATE BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY CONTRACTS.**

# Commercial Loan Agreements

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00007771 | LCPI | AAA Investments LP | $900,000,000 Senior Secured Revolving Credit Agreement dated as of June 1, 2007 | Loan agreement | AAA Investments LP<br>c/o Apollo Alternative Assets, L.P.<br>Attn: Tony Tortorelli<br>Two Manhattanville Road, Suite 203<br>Purchase, NY 10577<br><br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>Attn: Brad J. Finkelstein, Esq<br>New York, NY 10036 |
| 00008019 | LCPI | ARINC Incorporated | $575,000,000 First Lien Credit Agreement dated as of October 25, 2007 | Loan agreement | ARINC Incorporated<br>Attn: Keith Welsh<br>2551 Riva Road<br>Annapolis, MD 21401<br><br>Latham & Watkins LLP<br>555 Eleventh Street, NW<br>Suite 1000<br>Attn: Jennifer Van Driesen<br>Washington, DC 20004 |

---

[1] LBHI – Lehman Brothers Holdings Inc.
LCPI – Lehman Commercial Paper Inc.
LCPUK – Lehman Commercial Paper Inc., UK Branch
LBSF – Lehman Brothers Special Financing Inc.

[2] This description is provided for informational purposes only. To the extent there is an inconsistency between this description and the contract, the contract governs.

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00007277 | LCPI | Digicel International Finance Limited | U.S. $200,000,000 Revolving Credit Agreement dated as of March 23, 2007 | Loan agreement | Digicel International Finance Limited<br>Attn: Sean Cassidy<br>40 Knutsford Boulevard<br>Kingston 5<br>Jamaica |
| 00008556 | LCPI | First Data Corporation | $14,000,000,000 €709,219,858.16 Credit Agreement Dated as of September 24, 2007 as Amended and Restated as of Sept 28, 2007 | Loan agreement | First Data Corporation<br>Attn: Mike Jacobs<br>5565 Glenridge Connector, N.E.<br>Suite 2000<br>Atlanta, GA 30342 |
| 00007106 | LCPI | Audio Visual Service Corporation | $255,000,000 Credit Agreement dated as February 28, 2007 | Loan agreement | Audio Visual Service Corporation<br>c/o PSAV Presentation Services<br>Attn: Mike Mcllwain<br>1700 E. Golf Road, Suite 400<br>Schaumburg, IL 60173 |
| 00008732 | LCPI | Bausch & Lomb Incorporated | $2,000,000,000 €408,670,931.06 Credit Agreement dated as October 26, 2007 | Loan agreement | Bausch & Lomb Incorporated<br>Attn: Dan Ritz<br>One Bausch & Lomb Place<br>Rochester, NY 14604 |
| 00007784 | LCPI | Bonten Media Group, Inc. | Credit Agreement dated as of May 31, 2007 | Loan agreement | Bonten Media Group, Inc.<br>Attn: Scott Moody<br>280 Park Avenue<br>25th Floor, East Tower<br>New York, NY 10017 |
| 00008326 | LCPI | Colonial Realty Limited Partnership | Credit Agreement dated as of March 22, 2005 | Loan agreement | Citicorp North America, Inc.<br>Attn: Tara Wooster<br>1615 Brett Road<br>New Castle, DE 19720 |
| 00008421 | LCPI | EPCO Holdings Inc. | $300,000,000 Revolving Credit Facility $1,100,000,000 Term Loan A $175,000,000 Term Loan A-2 Second Amended and Restated Credit Agreement dated as of August 24, 2007 | Loan agreement | EPCO Holdings Inc.<br>Attn: Christian M. Nelly<br>1100 Louisiana Street, 10th Floor<br>Houston, TX 77002 |

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00007242 | LCPI | Hawker Beechcraft Acquisition Company LLC | Credit Agreement dated as of March 26, 2007 | Loan agreement | Hawker Beechcraft Acquisition Company LLC<br>Attn: Chief Financial Offer<br>10511 East Central<br>Wichita, KS 67206<br><br>Latham & Watkins LLP<br>Attn: Marc Hanrahan<br>885 Third Avenue<br>New York, NY 10022 |
| 00008447 | LCPI | HD Supply | 2,100,000,000 ABL Credit Agreement dated as of August 30, 2007 | Loan agreement | HD Supply Inc.<br>Attn: Evan Levitt<br>3100 Cumberland Blvd, Suite 1480<br>Atlanta, GA 30339<br><br>Debevoise & Phimpton<br>Attn: Paul D. Brusiloff, Esq.<br>919 Third Avenue<br>New York, NY 10022 |
| 00011167 | LCPI | Oceania Cruises, Inc. | $340,000,000 Credit Agreement dated as of April 27, 2007 | Loan agreement | Oceania Cruises, Inc.<br>Attn: Jason Montague<br>8300 N.W. 33rd Street, Suite 308<br>Miami, FL 33122<br><br>O'Melveny & Myers LLP<br>Attn: Brad J. Finkelstein<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036 |

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00008192 | LCPI | CPQ MIDCO II CORPORATION | First Lien Credit Agreement dated as of July 30, 2007 and Amended and Restated as of the July 2, 2008 | Loan agreement | CPQ MIDCO II CORPORATION Attn: Bill Sichko 300 Lindenwood Drive Valleybrooke Corporate Center Malvern, PA 19355<br><br>Debevoise & Plimpton LLP Attn: Gregory H. Woods, Esq. 919 Third Avenue New York, NY 10022 |
| 00011121 | LCPI | ALTEGRITY, INC. (a/k/a) US INVESTIGATIONS SERVICES, INC. | Credit Agreement dated as of August 21, 2007 | Loan agreement | ALTEGRITY, INC. (a/k/a) US INVESTIGATIONS SERVICES, INC. Attn: Bart Witteveen 7799 Leesburg Pike Suite 1100 North Tower Falls Church, VA 22043 |
| 00006556 | LCPUK | ALPHA D2 LIMITED | Project Alpha III $2,570,000,000 Senior Facilities Agreement dated November 2006 | Loan agreement | ALPHA D2 LIMITED Attn: Nick Clarry 6, PRINCES GATE LONDON SW7 1QJ United Kingdom |
| 00006683 | LCPUK | AVIO S.P.A. | Senior Facilities Agreement dated 13 December 2006 | Loan agreement | AVIO S.P.A. Attn: The Directors Strada del Drosso, 145 10135 Torino Italy |
| 00004991 | LCPUK | Van Gansewinkel Groep B.V | 1 March 2006 as amended on 13 April 2006, 31 May 2006 and 17 August 2006, and amended and restated on 16 April 2007 | Loan agreement | Van Gansewinkel Groep B.V Attn: Rob de Fluiter Balledux Flight Forum 240 / 5533 Eindhoven, 5657 DH Netherlands |

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00008094 | LCPUK | KLEOPATRA LUX 2 S.A.R.L | Senior and second lien facilities agreement dated July 2007 | Loan agreement | KLEOPATRA LUX 2 S.A.R.L c/o The Blackstone Group International Attn: Thomas Zimmerhäckel 40 Berkeley Square London W1J 5AL United Kingdom |
| 00008093 | LCPUK | KLEOPATRA LUX 2 S.A.R.L | Senior and second lien facilities agreement dated July 2007 | Loan agreement | KLEOPATRA LUX 2 S.A.R.L c/o The Blackstone Group International Attn: Thomas Zimmerhäckel 40 Berkeley Square London W1J 5AL United Kingdom |
| 00007151 | LCPUK | LAVENA HOLDING 1 GMBH | EUR 3,813,000 Senior Facilities Agreement dated 2 March 2007 | Loan agreement | LAVENA HOLDING 1 GMBH Attn: Dr. Arnold Bahlmann Possartstrasse 13 81679 Munich Germany |
| 00010097 | LCPUK | Beig Midco Limited | EUR 630,000,000 and £320,563,500 Senior Facilities Agreement dated October 2006 | Loan agreement | Beig Midco Limited Attn: The Directors 10 Upper Bank Street London E14 5JJ United Kingdom |
| 00006694 | LCPUK | TELEFONICA EUROPE BV | Amendment and Syndication Agreement dated 7 December 2006 | Loan agreement | Strawinskylaan 1259 Attn: George F. Nicolai 1077 XX, Amsterdam Netherlands |
| 00005000 | LBHI | CAPMARK FINANCIAL GROUP INC. | $5,500,000,000 Credit Agreement dated as of March 23, 2006 | Loan agreement | CAPMARK FINANCIAL GROUP INC. Attn: General Counsel 200 Witmer Road Horsham, PA 19044 |

| Lehman ID Number | Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|
| 00003800 | LBHI | LANDALE ASSET PURCHASING COMPANY NO.2 LIMITED | Liquidity Agreement (Permanent Financing (No. 7) plc – Series 5 Class A Notes) Dated March 2005 | Loan agreement | LANDALE ASSET PURCHASING COMPANY NO.2 LIMITED Attn:  The Directors 47 ESPLANADE, ST HELIER JERSEY JE1 0BD CHANNEL ISLANDS |
| 00004039 | LBHI | LANDALE ASSET PURCHASING COMPANY NO.2 LIMITED | Liquidity Agreement (Permanent Financing (No.8) PLC – Series 5 Class A2 Notes) dated June 2005 | Loan agreement | LANDALE ASSET PURCHASING COMPANY NO.2 LIMITED Attn:  The Directors 47 ESPLANADE, ST HELIER JERSEY JE1 0BD CHANNEL ISLANDS |
| 00008447 | LBSF | HD Supply | 2,100,000,000 ABL Credit Agreement dated as of August 30, 2007 | Loan agreement | HD Supply Inc. Attn:  Evan Levitt 3100 Cumberland Blvd, Suite 1480 Atlanta, GA 30339<br><br>Debevoise & Phimpton Attn:  Paul D. Brusiloff, Esq. 919 Third Avenue New York, NY 10022 |

# EXHIBIT 2

## PART C – COMMERCIAL REAL ESTATE AGREEMENTS

**THE DEBTORS HAVE NOT LISTED EVERY ANCILLARY DOCUMENT PERTAINING TO COMMERCIAL REAL ESTATE TRANSACTIONS ON EXHIBIT 2, PART C, BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY OR BECAUSE OF THE VOLUME OF SUCH DOCUMENTS.  ALL SUCH ANCILLARY DOCUMENTS, TO THE EXTENT THEY ARE DEEMED TO BE EXECUTORY CONTRACTS, SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AS OF THE EFFECTIVE DATE AND THE REQUIRED CURE AMOUNTS FOR SUCH CONTRACTS SHALL BE ZERO.**

**OUT OF AN ABUNDANCE OF CAUTION, THE DEBTORS HAVE LISTED A NUMBER OF CONTRACTS ENTERED INTO AFTER THE COMMENCEMENT DATE ON EXHIBIT 2, PART C, BECAUSE SUCH CONTRACTS RELATE TO PREPETITION AGREEMENTS ENTERED INTO BY ONE OR MORE DEBTORS.  THE INCLUSION OF SUCH CONTRACTS SHALL NOT BE DEEMED AN ADMISSION THAT SUCH CONTRACTS CONSTITUTE EXECUTORY CONTRACTS.**

**THE DEBTORS HAVE NOT LISTED ALL FULLY FUNDED COMMERCIAL MORTGAGE LOANS ON EXHIBIT 2, PART C, BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY CONTRACTS.  IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT SUCH CONTRACTS ARE EXECUTORY CONTRACTS, THEN ALL FULLY FUNDED COMMERCIAL MORTGAGE LOANS IN WHICH A DEBTOR IS THE LENDER OF RECORD SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AND THE REQUIRED CURE AMOUNT FOR SUCH CONTRACTS SHALL BE ZERO.**

**THE DEBTORS HAVE NOT LISTED ON EXHIBIT 2, PART C ANY LOAN CONTRACTS ENTERED INTO SUBSEQUENT TO THE COMMENCEMENT DATE BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY CONTRACTS.**

## Commercial Real Estate Agreements

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|----------------|
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 05/15/2007 | SECOND MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 237 PARK JUNIOR MEZZ LLC IN THE AMOUNT OF $60,000,000 | Second Mezzanine Loan Agreement | c/o Broadway Partners<br>375 Park Avenue, Suite 2107<br>Attention: Jason P. Semmel, Esq.<br>New York, New York  10152<br><br>Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>Attention: Jonathan Mechanic, Esq.<br>New York, New York  1004<br><br>c/o Broadway Partners<br>375 Park Avenue, Suite 2107<br>Attention: Jonathon K. Yormak<br>New York, New York  10152 |

---

[1] LBHI – Lehman Brothers Holdings Inc.
 LCPI – Lehman Commercial Paper Inc.

[2] This description is provided for informational purposes only.  To the extent there is an inconsistency between this description and the contract, the contract governs.

1

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 07/24/2007 | FIRST AMENDMENT TO SECOND MEZZANINE LOAN AGREEMENT AND LOAN DOCUMENTS BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 237 PARK JUNIOR MEZZ LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $60,000,000 | Amendment to Loan Agreement | c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jason P. Semmel, Esq. New York, New York  10152  Fried, Frank, Harris, Shriver & Jacobson LLP One New York Plaza Attention: Jonathan Mechanic, Esq. New York, New York  1004  c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jonathon K. Yormak New York, New York  10152 |
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 08/06/2008 | SECOND AMENDMENT TO SECOND MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 237 PARK JUNIOR MEZZ LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $60,000,000 | Amendment to Loan Agreement | c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jason P. Semmel, Esq. New York, New York  10152  Fried, Frank, Harris, Shriver & Jacobson LLP One New York Plaza Attention: Jonathan Mechanic, Esq. New York, New York  1004  c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jonathon K. Yormak New York, New York  10152 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 05/15/2007 | BRIDGE MEZZANINE LOAN AGREEMENT BETWEEN 237 PARK SECOND JUNIOR MEZZ LLC AND LEHMAN BROTHERS HOLDINGS INC | Bridge Mezzanine Loan Agreement | 237 Park Second Junior Mezz LLC c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jason P. Semmel, Esq. New York, New York 10152<br><br>Fried, Frank, Harris, Shriver & Jacobson LLP One New York Plaza Attention: Jonathan Mechanic, Esq. New York, New York 1004<br><br>c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jonathan K. Yormak New York, New York 10152 |
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 07/10/2007 | AMENDED AND RESTATED BRIDGE MEZZANINE LOAN AGREEMENT BETWEEN 237 PARK SECOND JUNIOR MEZZ LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $332,458,133.49 | Amended and Restated Bridge Mezzanine Loan Agreement | 237 Park Second Junior Mezz LLCc/o Broadway Partners375 Park Avenue, Suite 2107Attention: Jason P. Semmel, Esq.New York, New York 10152Fried, Frank, Harris, Shriver & Jacobson LLPOne New York PlazaAttention: Jonathan Mechanic, Esq.New York, New York 1004c/o Broadway Partners375 Park Avenue, Suite 2107Attention: Jonathon K. YormakNew York, New York 10152 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B60 | LBHI | 237 PARK SECOND JUNIOR MEZZ LLC | 07/10/2007 | INTERCREDITOR AGREEMENT EXECUTED BY LEHMAN BROTHERS HOLDINGS INC | Intercreditor | 237 Park Second Junior Mezz LLC c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jason P. Semmel, Esq. New York, New York 10152<br><br>Fried, Frank, Harris, Shriver & Jacobson LLP One New York Plaza Attention: Jonathan Mechanic, Esq. New York, New York 1004<br><br>c/o Broadway Partners 375 Park Avenue, Suite 2107 Attention: Jonathon K. Yormak New York, New York 10152 |
| R06A06 | LBHI | 350 WEST BROADWAY MANAGER LLC | 08/19/2008 | AMENDED AND RESTATED MEZZANINE CONSTRUCTION LOAN AGREEMENT BETWEEN 350 WEST BROADWAY MANAGER LLC AND LEHMAN BROTHERS HOLDINGS INC | Amendment to Loan Agreement | c/o RFR Holding, LLC 390 Park Avenue, 3rd Fl Attn: Aby J. Rosen and Frank Mangieri New York, NY 10022<br><br>Katsky Korins LLP 605 Third Avenue Attn: Randolph Amengual, Esq NY, NY 10158 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R06A15 | LBHI | ATLAS CAPITAL GROUP LLC, ATLAS HOLDCO LLC | 12/01/2009 | AMENDED AND RESTATED CREDIT AGREEMENT AMONG ATLAS CAPITAL GROUP LLC, ATLAS HOLDCO LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $10,000,000 | Amendment to Loan Agreement | Atlas Capital Group, LLC<br>630 Fifth Avenue, 32nd Fl<br>Attn: Mr. Andrew B. Cohen<br>NY, NY 10111<br><br>Atlas Holdco, LLC<br>630 Fifth Avenue, 32nd Fl<br>Attn: Mr. Andrew B. Cohen<br>NY, NY 10111 |
| R06A15 | LBHI | ATLAS CAPITAL GROUP LLC, ATLAS HOLDCO LLC | 07/13/2006 | CREDIT AGREEMENT AMONG ATLAS CAPITAL GROUP LLC, ATLAS HOLDCO LLC AND LEHMAN BROTHERS HOLDINGS INC | Credit Agreement | Atlas Capital Group, LLC<br>630 Fifth Avenue, 32nd Fl<br>Attn: Mr. Andrew B. Cohen<br>NY, NY 10111<br><br>Atlas Holdco, LLC<br>630 Fifth Avenue, 32nd Fl<br>Attn: Mr. Andrew B. Cohen<br>NY, NY 10111 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R09A45 | LBHI as successor to Lehman Brothers Bank | iSTAR Financial Inc , JP Morgan Chase as Administrative Agent, Bank of America as Syndication Agent, JP Morgan Securities and Bank of America Securities LLC as Joint Lead Arrangers and Joint Bookrunners, Citicorp North America, Inc, Deutsche Bank AG, NY Branch and Wachovia, National Association as Documentation Agents and Barclays Bank PLC, Bear Stearns Corporate Lending Inc, Goldman Sachs Credit Partners LP, Lehman Commercial Paper Inc, Merrill Lynch Bank, Morgan Stanley Bank and UBS Loan Finance LLC, as Managing Agents | 06/26/2007 | Amended and Restated Revolving Credit Agreement between iSTAR Financial Inc , JP Morgan Chase as Administrative Agent, Bank of America as Syndication Agent, JP Morgan Securities and Bank of America Securities LLC as Joint Lead Arrangers and Joint Bookrunners, Citicorp North America, Inc, Deutsche Bank AG, NY Branch and Wachovia, National Association as Documentation Agents and Barclays Bank PLC, Bear Stearns Corporate Lending Inc, Goldman Sachs Credit Partners LP, Lehman Commercial Paper Inc, Merrill Lynch Bank, Morgan Stanley Bank and UBS Loan Finance LLC, as Managing Agents | Revolving Credit Agreement | Borrower: iStar Financial Inc1114 Avenue of the AmericasNY, NY 10036Attn: CFO |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B62 | LBHI | 1000-1100 WILSON OWNER LLC; 1101 WILSON OWNER | 05/15/2007 | LOAN AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, 1000-1100 WILSON OWNER LLC AND 1101 WILSON OWNER LLC | Loan Agreement | C/O Monday Properties 230 Park Avenue, Suite 500 Attention: Anthony Westreich New York, New York 10169 <br><br> Paul, Weiss, Rifkind, Wharton & Ganison LLP 1285 Avenue of the Americas Attention: Ms. Meredith Kane New York, New York 10019 |
| R07B62 | LBHI | 1000-1100 WILSON OWNER LLC; 1101 WILSON OWNER | 07/20/2007 | MODIFICATION OF LOAN AGREEMENT AND OTHER LOAN DOCUMENTS AMONG LEHMAN BROTHERS HOLDINGS INC, 1000-1100 WILSON OWNER LLC AND 1101 WILSON OWNER LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $567,675,000 | Amendment to Loan Agreement | C/O Monday Properties 230 Park Avenue, Suite 500 Attention: Anthony Westreich New York, New York 10169 <br><br> Paul, Weiss, Rifkind, Wharton & Ganison LLP 1285 Avenue of the Americas Attention: Ms. Meredith Kane New York, New York 10019 |
| R07B62 | LBHI | 1000-1100 WILSON OWNER LLC; 1101 WILSON OWNER | 05/30/2008 | SECOND MODIFICATION OF LOAN AGREEMENT AND OTHER LOAN DOCUMENTS AMONG LASALLE BANK NATIONAL ASSOCIATION, LEHMAN BROTHERS HOLDINGS INC, 1000-1100 WILSON OWNER LLC AND 1101 WILSON OWNER LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $567,675,000 | Amendment to Loan Agreement | C/O Monday Properties 230 Park Avenue, Suite 500 Attention: Anthony Westreich New York, New York 10169 <br><br> Paul, Weiss, Rifkind, Wharton & Ganison LLP 1285 Avenue of the Americas Attention: Ms. Meredith Kane New York, New York 10019 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R05B33 | LBHI | 11 WEST 42 REALTY INVESTORS LLC | 10/15/2004 | LOAN AGREEMENT BETWEEN 11 WEST 42 REALTY INVESTORS LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $160,000,000 | Loan Agreement | Tishman Speyer Properties, L.P 520 Madison Avenue Attention: Chief Legal Officer New York, New York 10022<br><br>Silverstein Properties Inc 530 Fifth Avenue Attention: Mr. Larry Silverstein New York, New York 10036 |
| R05B33 | LBHI | 11 WEST 42 REALTY INVESTORS LLC | 01/27/2005 | FIRST AMENDMENT TO LOAN AGREEMENT BETWEEN 11 WEST 42 REALTY INVESTORS LLC AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $160,000,000 | Amendment to Loan Agreeement | Tishman Speyer Properties, L.P 520 Madison Avenue Attention: Chief Legal Officer New York, New York 10022<br><br>Silverstein Properties Inc 530 Fifth Avenue Attention: Mr. Larry Silverstein New York, New York 10036 |
| R05B33 | LBHI | 11 WEST 42 SENIOR MEZZANINE LLC | 10/15/2004 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 11 WEST 42 SENIOR MEZZANINE LLC | Mezzanine Loan Agreement | 11 WEST 42 SENIOR MEZZANINE L.L.Cc/o Tishman Speyer Properties, L.P.520 Madison AvenueAttention: Chief Financial OfficerNew York, New York 10022Tishman Speyer Properties, L.P520 Madison AvenueAttention: Chief Legal OfficerNew York, New York 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R05B33 | LBHI | 11 WEST 42 SENIOR MEZZANINE LLC | 01/27/2005 | FIRST AMENDMENT TO MEZZANINE LOAN AGREEMENT BETWEEN 11 WEST 42 SENIOR MEZZANINE LLC AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $48,500,000 | Amendment to Loan Agreement | Tishman Speyer Properties, L.P 520 Madison Avenue Attention:  Chief Legal Officer New York, New York  10022<br><br>Silverstein Properties Inc 530 Fifth Avenue Attention:  Mr. Larry Silverstein New York, New York  10036 |
| R06B30 | LBHI | 1211 6th Avenue Junior Mezz LLC | 08/24/2006 | JUNIOR MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 1211 6TH AVENUE JUNIOR MEZZ LLC IN THE AMOUNT OF $181,000,000 | Junior Mezz Loan Agreement | C/O Beacon Capital Partners, LLC One Federal Street, 26th Floor Attention: General Counsel Boston, Massachusetts  02110<br><br>Goulston & Storrs, PC 400 Atlantic Avenue Attention: Robert J. Mack, Esq Boston, Massachusetts  02110 |
| R06B58 | LBHI | 215 Brazilian Holding LLC | 01/31/2007 | Acquisition, Pre-development and Construction Loan Agreement among 215 Brazilian Holding LLC and LBHI | Loan Agmt | 215 Brazilian Holding LLC c/o RFR Holding LLC 390 Park Avenue NY, NY 10022 Attn: Aby Rosen, Michael Fuchs and Frank Mangieri, Esq<br><br>Olshan Grundman Frome Rosenzweig & Wolosky LLP Park Avenue Tower 66 East 55th St NY, NY 10022 Attn: Eric Goldberg, Esq |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|---------------------|----------------|----------------|
| R07C89 | LBHI | 25 Broad LLC | 03/19/2007 | AMENDED AND RESTATED LOAN AGREEMENT FOR BUILDING LOAN BETWEEN 25 BROAD LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $19,663,826 | Amendment to Loan Agreement | 25 Broad, LLC, c/o Swig Equities, LLC 770 Lexington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Fried, Frank, Harris, Shriver & Jacobson, LLP One New York Plaza Attention: Robert J. Sorin, Esq. New York, New York, 10004 |
| R07C89 | LBHI | 25 Broad LLC | 03/09/2007 | AMENDED AND RESTATED LOAN AGREEMENT FOR PROJECT LOAN BETWEEN 25 BROAD LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $26,658,481 | Amendment to Loan Agreement | 25 Broad, LLC c/o Swig Equities, LLC 770 Lexington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Fried, Frank, Harris, Shriver & Jacobson, LLP One New York Plaza Attention: Robert J. Sorin, Esq. New York, New York, 10004 |
| R07C89 | LBHI | 25 Broad LLC | 03/09/2007 | MEZZANINE LOAN AGREEMENT BETWEEN 25 BROAD MEZZ LLC AND LEHMAN BROTHERS HOLDINGS INC | Mezzanine Loan Agreement | 25 Broad Mezz LLCc/o Swig Equities, LLC770 Lexington AvenueAttention: Kent M. SwigNew York, New York, 10021Fried, Frank, Harris, Shriver & Jacobson, LLPOne New York PlazaAttention: Robert J. Sorin, Esq.New York, New York, 10004 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C89 | LBHI | 25 Broad LLC | 03/09/2007 | SECOND MEZZANINE LOAN AGREEMENT BETWEEN 25 BROAD MEZZ II LLC AND LEHMAN BROTHERS HOLDINGS INC | 2nd Mezzanine Loan Agreement | 25 Broad Mezz II LLC c/o Swig Equities, LLC 770 Lexington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Fried, Frank, Hams, Shriver & Jacobson, LLP One New York Plaza Attention: Robert J. Sorin, Esq. New York, New York, 10004 |
| R07C89 | LBHI | 25 Broad LLC | 03/09/2007 | THIRD MEZZANINE LOAN AGREEMENT BETWEEN 25 BROAD MEZZ III LLC AND LEHMAN BROTHERS HOLDINGS INC | 3rd Mezzanine Loan Agreement | 25 Broad Mezz III LLC c/o Swig Equities, LLC 770 Lexington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Fried, Frank, Hanis, Shriver & Jacobson, LLP One New York Plaza Attention: Robert J. Sorh, Esq. New York, New York, 10004 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C89 | LBHI | 25 Broad LLC | 03/09/2007 | FOURTH MEZZANINE LOAN AGREEMENT BETWEEN 25 BROAD MEZZ IV LLC AND LEHMAN BROTHERS HOLDINGS INC | 4th Mezzanine Loan Agreement | 25 Broad Mew. III LLC c/o Lehman Brothers Holdings Inc. 770 Lexington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Fried, Frank, Harris, Shriver & Jacobson, LLP One New York Plaza Attention: Robert J. Soh, Esq. New York, New York, 10004 |
| R07B74 | LBHI | 37-11 DEVELOPMENT LLC; 37-111031 LLC | 05/18/2007 | LOAN AGREEMENT EXECUTED BY 37-11 DEVELOPMENT LLC AND 37-111031 LLC IN FAVOR OF LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $48,036,834 | Loan Agreement | c/o 37-1 1 Development LLC 158-13 72nd Avenue Attention: Mr. David E. Marx Flushing, New York 11365<br><br>Richard L. Yellen & Associates, LLP 111 Broadway, 11th Floor Attention: Richard L. Yellen, Esq. New York, New York 10006 |
| R07C91 | LBHI | 45 Broad LLC | 06/12/2006 | LOAN AGREEMENT BETWEEN 45 BROAD LLC AND LEHMAN BROTHERS HOLDINGS INC | Loan Agreement | 45 Broad, LLC c/o Swig Equities, LLC 770 hxington Avenue Attention: Kent M. Swig New York, New York, 10021<br><br>Dreier, LLP 499 Park Avenue Attention: Mark S. Fawer, Esq. New York, New York, 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C91 | LBHI | 45 Broad LLC | 02/26/2007 | FIRST AMENDMENT TO LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 45 BROAD LLC | Amendment to Loan Agreement | 45 Broad, LLCc/o Swig Equities, LLC770 hxington AvenueAttention: Kent M. SwigNew York, New York, 10021Dreier, LLP499 Park AvenueAttention: Mark S. Fawer, Esq.New York, New York, 10022 |
| R07B76 | LBHI | 816 CONGRESS MEZZANINE LLC | 07/10/2007 | MEZZANINE LOAN AGREEMENT BETWEEN 816 CONGRESS MEZZANINE LLC AND LEHMAN BROTHERS HOLDINGS INC IN AMOUNT OF $73,775,000 | Mezzanine Loan Agreement | 816 Congress Owner LLC C/O NNN Realty Advisors, Inc. 1551 North Tustin Avenue, Suite 300 Attention: Jeffrey Hanson & Mathieu Streiff Santa Ana, California  92705

LB 816 Congress LLC c/o Property Asset Management Inc. 399 Park Avenue, 8th Floor Attention: Mark Osgood New York, New York  10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B76 | LBHI | 816 CONGRESS MEZZANINE LLC | 07/10/2007 | MEZZANINE LOAN AGREEMENT BETWEEN 816 CONGRESS MEZZANINE LLC AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $157,323.74 | Mezzanine Loan Agreement | 816 Congress Owner LLC C/O NNN Realty Advisors, Inc. 1551 North Tustin Avenue, Suite 300 Attention: Jeffrey Hanson & Mathieu Streiff Santa Ana, California 92705<br><br>LB 816 Congress LLC c/o Property Asset Management Inc. 399 Park Avenue, 8th Floor Attention: Mark Osgood New York, New York 10022 |
| R07B76 | LBHI | 816 CONGRESS MEZZANINE LLC | 02/06/2009 | LOAN MODIFICATION AGREEMENT FOR MEZZANINE LOAN AMONG 816 CONGRESS MEZZANINE LLC, NNN REALTY ADVISORS INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $790,722.79 | Amendment to Loan Agreement | 816 Congress Owner LLC C/O NNN Realty Advisors, Inc. 1551 North Tustin Avenue, Suite 300 Attention: Jeffrey Hanson & Mathieu Streiff Santa Ana, California 92705<br><br>LB 816 Congress LLC c/o Property Asset Management Inc. 399 Park Avenue, 8th Floor Attention: Mark Osgood New York, New York 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|--------------|----------------|
| R07B76 | LBHI | 816 CONGRESS MEZZANINE LLC | 01/01/2011 | CONSENT AND FIRST AMENDMENT TO LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND 816 CONGRESS OWNER LLC - DOCUMENT IS DATED AS 01-00-2011 | Amendment to Loan Agreement | 816 Congress Owner LLC C/O NNN Realty Advisors, Inc. 1551 North Tustin Avenue, Suite 300 Attention: Jeffrey Hanson & Mathieu Streiff Santa Ana, California 92705<br><br>LB 816 Congress LLC c/o Property Asset Management Inc. 399 Park Avenue, 8th Floor Attention: Mark Osgood New York, New York 10022 |
| R07B76 | LBHI | 816 CONGRESS MEZZANINE LLC | 02/06/2009 | LOAN MODIFICATION AGREEMENT FOR MEZZANINE LOAN AMONG 816 CONGRESS MEZZANINE LLC, NNN REALITY ADVISORS INC AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $15,174,665.08 | Amendment to Loan Agreement | 816 Congress Owner LLCC/O NNN Realty Advisors, Inc.1551 North Tustin Avenue, Suite 300Attention: Jeffrey Hanson & Mathieu StreiffSanta Ana, California 92705LB 816 Congress LLCc/o Property Asset Management Inc.399 Park Avenue, 8th FloorAttention: Mark OsgoodNew York, New York 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R04A69 | LBHI as successor to Lehman Brothers Bank, FSB (as assigned by Metropolitan Life Insurance Company) | Akron Main Place Development Corporation | 12/01/1995 | Open-End Mortgage and Security Agreement by Akron Main Place Development Corporation and Metropolitan Life Insurance Company dated 12/1/1995; assigned to Lehman Brothers Bank, FSB by Assignment of Note and Mortgage dated 8/5/2004. | Loan Agmt | Akron Main Place Development Corporation 600 Society Building 159 South Main St Akron, OH 44308 Attn: Anthony S. Manna<br><br>Amer Cunningham Brennan Co, LPA 600 Society Building 159 South Main St Akron, OH 44308 Attn: Timothy P. Ziga, Sr |
| R09A52 | LCPI | Archstone TIC Mezz Holdings LLC | 08/27/2008 | LOAN AND SECURITY AGREEMENT BETWEEN ARCHSTONE TIC MEZZ HOLDINGS LLC AND LEHMAN COMMERCIAL PAPER INC IN THE AMOUNT OF $275,000,000 | Loan and Security Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R07A48 | LBHI | BANK OF AMERICA NA | 11/29/2006 | INTERCREDITOR AGREEMENT BETWEEN BANK OF AMERICA NA AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $218,500,000 | INTERCREDITOR AGREEMENT | Bank of America, NA 200 Meeting St, 1st Fl Charleston, SC 29401 Attn: Sue T. Mahood<br><br>Nexsen Pruet, LLC 205 King St; Ste 400 Charleston, SC 29401 Attn: Ashley S. Nutley, Esq |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| EUROPE | LCPI (UK) | Bank of Scotland (Llyods) | [   ] 2006 | Intercreditor Agreement among Bank of Scotland and Subordinated Creditors (Lehman Brothers International (Europe); LCPI, London Branch; Lehman Brothers Europe Limited; Hatfield Philips International Limited; Picasso Investments Limited) and Picasso Investments 1 LTD | INTERCREDITOR AGREEMENT | Bank of Scotland Corporate Banking (Scotland) 4th Floor, New Uberior House 11 Early Grey St Edinburgh EH3 9BN |
| R07D07 | LBHI | BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING, INC. and GENERAL ELECTRIC CAPITAL CORPORATION. | 6/25/2008 (and amended) | AMENDED AND RESTATED CO-LENDER AGREEMENT BETWEEN BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING, INC., LEHMAN BROTHERS HOLDINGS INC., AND GENERAL ELECTRIC CAPITAL CORPORATION, AS AMENDED. | CO-LENDER AGREEMENT (AS AMENDED) | As listed in Appendix A |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D07 | LBHI | BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING,INC. AND LASALLE BANK NATIONAL ASSOCIATION. | 3/10/2008 (and amended) | PARTICIPATION AGREEMENT (MEZZANINE I LOAN) BETWEEN BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING,INC., LEHMAN BROTHERS HOLDINGS INC. AND LASALLE BANK NATIONAL ASSOCIATION, AS AMENDED. | CO-LENDER AGREEMENT (AS AMENDED) | As listed in Appendix A |
| R07E33 | LBHI | BOND BUILDING LIMITED PARTNERSHIP | 07/18/2007 | LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND BOND BUILDING LIMITED PARTNERSHIP IN THE AMOUNT OF $75,000,000 | LOAN AGREEMENT | Bond Building, LPc/o Tishman Speyer45 Rockefeller PlazaNY, NY 10111Attn: Chief Financial OfficerTishman Speyerc/o Tishman Speyer45 Rockefeller PlazaNY, NY 10111Attn: Chief Legal OfficerDLA Piper US LLP1200 19th St NWWashington, DC 20036Attn: Frederick L. Klein |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D56 | LCPI | BSSF 2007-LLF C5 LLC | 09/12/2008 | LOAN AND SECURITY AGREEMENT BETWEEN BSSF 2007-LLF C5 LLC AND LEHMAN COMMERCIAL PAPER INC | Loan and Security Agreement | BSSF 2007-LLF C5 LLC Blackstone Real Estate Special Situations Advisors 345 Park Avenue Attention: Randall Rothschild New York, New York 10154<br><br>Simpson Thacher & Bartlett LLP 425 Lexington Avenue Attention: Gregory J. Ressa, Esq. New York, New York 10017 |
| R05A62 | LBHI | CAT-B OWNER LLC | 01/09/2006 | LOAN AGREEMENT BETWEEN CAT-B OWNER LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $52,000,000 | Loan Agreement | c/o Capital Partners, Inc One Independent Center Drive, Ste 114 Attn: James R. Heistand Jacksonville, Florida 32202<br><br>Greenburg Traurig, PA 450 South Orange Ave; 6th Floor Attn: Russell P. Hintze, Esq Orlando, Florida 32801 |
| R05A62 | LBHI | CAT-FLA OWNER LLC; CAT-ATL OWNER LLC | 01/09/2006 | LOAN AGREEMENT AMONG CAT-ATL OWNER LLC, CAT-FLA OWNER LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $71,000,000 | Loan Agreement | c/o Capital Partners, Inc One Independent Center Drive, Ste 114 Attn: James R. Heistand Jacksonville, Florida 32202<br><br>Greenburg Traurig, PA 450 South Orange Ave; 6th Floor Attn: Russell P. Hintze, Esq Orlando, Florida 32801 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|--------------|----------------|
| | LBHI as successor to PAMI | CGKL Ventures, LLC, doing business as Pacific Coast Capital Partners, LLC | 06/01/2004 | First Amended and Restated Limited Liability Company Agreement of PCCP Asset Holding, LLC between CGKL Ventures, LLC, doing business as Pacific Coast Capital Partners, LLC, and PAMI, an indirect subsidiary of LBHI. | | PCCP Asset Holding, LLC 1960 East Grand Avenue, Ste 400 El Segundo, CA 90245 |
| R07C44 | LBHI | CORUS BANK | 05/05/2008 | SUBORDINATION AND INTERCREDITOR AGREEMENT BETWEEN CORUS BANK NA AND LEHMAN BROTHERS HOLDINGS INC | Intercreditor | No Notice Parties |
| R08B95 | LCPI | CW Capital EY REIT LB2 LLC | 05/30/2008 | Loan and Security Agreement between CW Capital EY REIT LB2 LLC and LCPI | Loan and Security Agreement | CWCapital Enhanced Yield REIT LLC 1540 Broadway; 23rd FL Attn: Craig Henrich, Senior Managing Director New York, New York 10036 <br><br> CWCapital Enhanced Yield REIT LLC 1540 Broadway; 23rd FL Attn: Paul Sherington, General Counsel New York, New York 10036 |
| R07E33 | LBHI | DEUTSCHE HYPOTHEKENBANK (Actien-Gesellschaft) | 07/18/2007 | Co-lending agreement between DEUTSCHE HYPOTHEKENBANK (Actien-Gesellschaft) and LBHI | Co-lending Agreement | Deutsche Hypothekenbank (Actien-Gesellschaft)International Property FinanceGeorgsplatz 830159 Hannover, GermanyAttention: Stefan Kriegs |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07A49 | LBHI as successor in interest to Teachers Insurance and Annuity Association of America | EHMD, LLC | 10/07/2004 | Amended and Restated Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement between Teachers Insurance and Annuity Association of American and EHMD, LLC | Amended and Restated Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Financing Statement | EHMD, LLC c/o Executive Hills, Inc 7101 College Blvd, Ste 1100 Overland Park, KS 66210 Attn: Mr. Larry J. Bridges, President<br><br>Lewis, Rice & Fingersh, LLC One Petticoat Lane 1010 Walnut, Ste 500 Kansas City, MO 64106 Attn: John Hickey, Esq. |
| R07D30 | LCPI | EMBARCADERO CAPITAL INVESTORS THREE LP | 07/17/2008 | LOAN AND SECURITY AGREEMENT BETWEEN EMBARCADERO CAPITAL INVESTORS THREE LP AND LEHMAN COMMERCIAL PAPER INC | Loan and Security Agreement | Embarcadero Capital Investors Three LP c/o Embarcadero Capital Partners LLC 1301 Shoreway Road, Suite 250 Attention: Eric Yopes Belmont, CA 94002<br><br>Cox, Castle & Nicholson LLP 555 California Street, 10th Floor Attention: Bruce Prigoff, Esq. San Francisco, California 94002 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D30 | LCPI | EMBARCADERO CAPITAL INVESTORS THREE LP | 08/19/2009 | FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT BETWEEN EMBARCADERO CAPITAL INVESTORS THREE LP AND LEHMAN COMMERCIAL PAPER INC | Amendment to Loan Agreement | Embarcadero Capital Investors Three LP c/o Embarcadero Capital Partners LLC 1301 Shoreway Road, Suite 250 Attention: Eric Yopes Belmont, CA 94002<br><br>Cox, Castle & Nicholson LLP 555 California Street, 10th Floor Attention: Bruce Prigoff, Esq. San Francisco, California 94002 |
| R07C33 | LBHI | ERP MIP MEZZ BORROWER LLC, ERP MEZZ MEMBER LLC | 07/18/2006 | MEZZANINE LOAN AGREEMENT AMONG ERP MIP MEZZ BORROWER LLC, ERP MEZZ MEMBER LLC AND LEHMAN BROTHERS HOLDINGS INC | Mezzanine Loan Agreement | c/o Waterton Associates, LLC One N Franklin, Ste 1150 Attn: Marc Swerdlow Chicago, IL 60606<br><br>Levenfeld Pearlstein LLC 2 N LaSalle St; Ste 1130 Attn: David B. Berzon Chicago, IL 60602 |
| R06B33 | LBHI | FRI GREENVILLE MEZZ II LLC | 06/29/2006 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND FRI GREENVILLE MEZZ II LLC IN THE AMOUNT OF $32,000,000 | Mezzanine Loan Agreement | FRI Greenville Mezz II LLC 2090 Palm Beach Lakes Blvd. Suite 700 Attention Michael P. McCloskey West Palm Beach, Florida 33409<br><br>Moyle Flanigan Katz Raymond White Krasker P.A. 625 North Flagler Drive, 9TH Floor Attention Wilton L. White Esq. West Palm Beach, Florida 33409 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D29 | LCPI (AS SUCCESSOR VIA ASSIGNMENT FROM WOODLANDS COMMERCIAL BANK (F/K/A LEHMAN BROTHERS COMMERCIAL BANK)) | GEM HLT HF BORROWER HH 2A-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERICAL BANK AND GEM HLT HF BORROWER HH 2A-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc.900 North Michigan Avenue, Suite 1450Chicago, IL 60611Attention: Craig CaffarelliTelecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 2B-1, LLC, | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 2B-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention:  Craig Caffarelli Telecopier No.:  (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 2B-2, LLC, | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 2B-2, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention:  Craig Caffarelli Telecopier No.:  (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 3A-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 3A-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention:  Craig Caffarelli Telecopier No.:  (312) 915-2901 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D29 | LCPI | GEM HLT HF BORROWER HH 3A-2, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 3A-2, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 3B-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 3B-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 3B-2, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 3B-2, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 4-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 4-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GEM HLT HF BORROWER HH 4-2, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GEM HLT HF BORROWER HH 4-2, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc.900 North Michigan Avenue, Suite 1450Chicago, IL 60611Attention: Craig CaffarelliTelecopier No.: (312) 915-2901 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R08C54 | LBHI | GENWOOD PARADISE LTD AND GENWOOD NASSAU LTD | 08/31/2006 | LOAN AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, GENWOOD RALEIGH LLC, GENWOOD MEMPHIS I LLC, GENWOOD MEMPHIS II LLC, GENWOOD TULSA LLC, GENWOOD HOUSTON LP, GENWOOD PARADISE LTD AND GENWOOD NASSAU LTD IN THE AMOUNT OF $107,500,000 | Loan Agreement | No Notice Parties |
| R07A62 | LBHI | GENWOOD STRATHALLAN LLC | 01/30/2007 | LOAN AGREEMENT BETWEEN GENWOOD STRATHALLAN LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $14,600,000 | Loan Agreement | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D43 | LBHI as successor to Lehman ALI | Grand Prix Mezz Borrower 2 Floating LLC | 06/29/2007 | Mezzanine Loan Agreement between Grand Prix Mezz Borrower 2 Floating LLC and Lehman ALI Inc | Mezzanine Loan Agreement | Grand Prix Mezz Borrower 2 Floating LLC c/o Apollo Investment Corporation 9 West 57th Street New York, New York 10019 Attention: Aaron N. Sack Facsimile No.: (212) 515-3443 Grand Prix Mezz Borrower 2 Floating LLC c/o Apollo Investment Corporation 9 West 57th Street New York, New York 10019 Attention: Justin M. Korval Facsimile No.: (212) 515-3442 Innkeepers USA 340 Royal Poinciana Way Suite 306 Palm Beach, Florida 33480 Attention: Dennis Craven and Mark Murphy Facsimile No.: (561) 650-0958 Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036-6522 Attention: Neil L. Rock, Esq. Facsimile No.: (917) 777-3787 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D43 | LBHI as successor to Lehman ALI | Grand Prix Mezz Borrower 2 Floating LLC | 09/09/2008 | First Amendment to Mezzanine Loan Agreement between Grand Prix Mezz Borrower 2 Floating LLC and Lehman ALI | First Amendment to Mezzanine Loan Agreement | Grand Prix Mezz Borrower 2 Floating LLCc/o Apollo Investment Corporation9 West 57th StreetNew York, New York 10019Attention: Aaron N. SackFacsimile No.: (212) 515-3443Grand Prix Mezz Borrower 2 Floating LLCc/o Apollo Investment Corporation9 West 57th StreetNew York, New York 10019Attention: Justin M. KorvalFacsimile No.: (212) 515-3442Innkeepers USA340 Royal Poinciana WaySuite 306Palm Beach, Florida 33480Attention: Dennis Craven and Mark MurphyFacsimile No.: (561) 650-0958Skadden, Arps, Slate, Meagher & Flom LLPFour Times SquareNew York, NY 10036-6522Attention: Neil L. Rock, Esq.Facsimile No.: (917) 777-3787 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D43 | LBHI as successor to Lehman ALI | Grand Prix Mezz Borrower 2 Floating LLC | 01/09/2009 | Second Amendment to Mezzanine Loan Agreement between Grand Prix Mezz Borrower 2 Floating LLC and Lehman ALI | Second Amendment to Mezzanine Loan Agreement | Grand Prix Mezz Borrower 2 Floating LLC c/o Apollo Investment Corporation 9 West 57th Street New York, New York 10019 Attention: Aaron N. Sack Facsimile No.: (212) 515-3443<br><br>Grand Prix Mezz Borrower 2 Floating LLC c/o Apollo Investment Corporation 9 West 57th Street New York, New York 10019 Attention: Justin M. Korval Facsimile No.: (212) 515-3442<br><br>Innkeepers USA 340 Royal Poinciana Way Suite 306 Palm Beach, Florida 33480 Attention: Dennis Craven and Mark Murphy Facsimile No.: (561) 650-0958<br><br>Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036-6522 Attention: Neil L. Rock, Esq. Facsimile No.: (917) 777-3787 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D43 | LBHI as successor to Lehman ALI | Grand Prix Mezz Borrower 2 Floating LLC | 07/09/2009 | Third Amendment to Mezzanine Loan Agreement between Grand Prix Mezz Borrower 2 Floating LLC and Lehman ALI | Third Amendment to Mezzanine Loan Agreement | Grand Prix Mezz Borrower 2 Floating LLCc/o Apollo Investment Corporation9 West 57th StreetNew York, New York 10019Attention: Aaron N. SackFacsimile No.: (212) 515-3443Grand Prix Mezz Borrower 2 Floating LLCc/o Apollo Investment Corporation9 West 57th StreetNew York, New York 10019Attention: Justin M. KorvalFacsimile No.: (212) 515-3442Innkeepers USA340 Royal Poinciana WaySuite 306Palm Beach, Florida 33480Attention: Dennis Craven and Mark MurphyFacsimile No.: (561) 650-0958Skadden, Arps, Slate, Meagher & Flom LLPFour Times SquareNew York, NY 10036-6522Attention: Neil L. Rock, Esq.Facsimile No.: (917) 777-3787 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R08D29 | LCPI (AS SUCCESSOR VIA ASSIGNMENT FROM WOODLANDS COMMERCIAL BANK (F/K/A LEHMAN BROTHERS COMMERCIAL BANK)) | GRP BORROWER HH 2A-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERICAL BANK AND GRP BORROWER HH 2A-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GRP BORROWER HH 2B-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GRP BORROWER HH 2B-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GRP BORROWER HH 3A-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GRP BORROWER HH 3A-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | GRP BORROWER HH 3B-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GRP BORROWER HH 3B-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D29 | LCPI | GRP BORROWER HH 4-1, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND GRP BORROWER HH 4-1, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc.900 North Michigan Avenue, Suite 1450Chicago, IL 60611Attention: Craig CaffarelliTelecopier No.: (312) 915-2901 |
| R07D23 | LBHI as successor to Lehman Brothers Bank | GTIS I-AIMCAP MIDWEST HOTEL | 07/23/2007 | MEZZANINE B LOAN AGREEMENT BETWEEN LEHMAN BROTHERS BANK FSB AND GTIS I-AIMCAP MIDWEST HOTEL JUNIOR MEZZANINE LLC IN THE AMOUNT OF $12,800,000 | Mezzanine Loan Agreement | GTIS I-AIMCAP Midwest Hotel Junior Mezzanine, LLC C/O JF Capital Advisors LLC 230 Park Avenue, 10th floor New York, New York 10 1 69 Attention: Mr. Jonathan Falik Facsimile No.: (91 7) 591 -4373 GoldenTree Insite Partners 300 Park Avenue, 25th Floor New York, New York 10022 Attention: Chief Financial Officer Facsimile No.: (21 2) 220-5296 Akin, Gump, Strauss, Hauer & Feld, L.L.P. 1700 Pacific Avenue Suite 4 1 00 Dallas, Texas 75201 Attention: Carl B. Lee, P.C. Facsimile No.: (2 14) 969-4343 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|-----------------|
| R07D23 | LBHI as successor to Lehman Brothers Bank | GTIS I-AIMCAP MIDWEST HOTEL | 03/27/2008 | FIRST AMENDMENT TO MEZZANINE B LOAN AGREEMENT BETWEEN LEHMAN BROTHERS BAND FSB AND GTIS I-AIMCAP MIDWEST HOTEL JUNIOR MEZZANINE LLC IN THE AMOUNT OF $12,800,000 | First Amendment to Mezzanine Loan Agreement | GTIS I-AIMCAP Midwest Hotel Junior Mezzanine, LLC C/O JF Capital Advisors LLC 230 Park Avenue, 10th floor New York, New York 10 1 69 Attention: Mr. Jonathan Falik Facsimile No.: (91 7) 591 -4373<br><br>GoldenTree Insite Partners 300 Park Avenue, 25th Floor New York, New York 10022 Attention: Chief Financial Officer Facsimile No.: (21 2) 220-5296<br><br>Akin, Gump, Strauss, Hauer & Feld, L.L.P. 1700 Pacific Avenue Suite 4 1 00 Dallas, Texas 75201 Attention: Carl B. Lee, P.C. Facsimile No.: (2 14) 969-4343 |
| R03A13 | LBHI | HG COSWELL INVESTORS | 11/21/2007 | MEMBERSHIP PLEDGE AND SECURITY AGREEMENT EXECUTED BY HG COGSWELL INVESTORS LLC IN FAVOR OF LEHMAN BROTHERS HOLDINGS INC | Membership Pledge and Security Agreement | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|----------------|
| R07D07 | LBHI | HILTON MANAGEMENT LLC, THE ENTITIES SET FORTH ON APPENDIX A-1 ATTACHED HERETO, BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING INC. AND BEAR, STEARNS INTERNATIONAL LIMITED. | 8/24/2007 (and amended) | LOAN AGREEMENT BETWEEN THE ENTITIES SET FORTH ON SCHEDULE 1.1 ATTACHED THERETO, THE ENTITIES SET FORTH ON SCHEDULE 1.2 ATTACHED THERETO, THE ENTITIES SET FORTH ON SCHEDULE 1.3 ATTACHED THERETO, THE ENTITIES SET FORTH ON SCHEDULE 1.4 ATTACHED THERETO, AND BEAR STEARNS COMMERCIAL MORTGAGE, INC., BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING INC.,  LEHMAN BROTHERS HOLDINGS INC. AND BEAR, STEARNS INTERNATIONAL LIMITED, AS AMENDED. | LOAN AGREEMENT (AS AMENDED) | As listed in Appendix A |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D07 | LBHI | HLT OWNED MEZZ-I LLC, THE ENTITIES SET FORTH ON APPENDIX A-2 ATTACHED HERETO, BEAR STEARNS COMMERCIAL MORTGAGE, INC, BANK OF AMERICA, N.A., GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING, INC. AND BEAR, STEARNS INTERNATIONAL LIMITED. | 8/24/2007 (and amended) | MEZZANINE I LOAN AGREEMENT BETWEEN THE ENTITIES SET FORTH ON SCHEDULE 1.1 ATTACHED THERETO AND BEAR STEARNS COMMERCIAL MORTGAGE, INC, BANK OF AMERICA, N.A. GERMAN AMERICAN CAPITAL CORPORATION, GOLDMAN SACHS MORTGAGE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MERRILL LYNCH MORTGAGE LENDING, INC., LEHMAN BROTHERS HOLDINGS INC. AND BEAR, STEARNS INTERNATIONAL LIMITED, AS AMENDED. | MEZZANINE LOAN AGREMEENT (AS AMENDED) | As listed in Appendix A |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|-----------------|
| R07B68 | LBHI | HOLCOMB BRIDGE PARTNERS LLC, JASMINE AT HOLCOMB BRIDGE LLC | 05/15/2007 | MEZZANINE LOAN AGREEMENT AMONG HOLCOMB BRIDGE PARTNERS LLC, LEHMAN BROTHERS HOLDINGS NC AND JASMINE AT HOLCOMB BRIDGE LLC IN THE AMOUNT OF $9,075,000 | Mezzanine Loan Agreement | Holcomb Bridge Partners, LLC c/o Lyon Ventures Capital 4901 Birch Street Frank T. Suryan, Jr. Newport Beach, California 92660<br><br>DCM Investors lll LLC 4350 Von Karman Avenue, Suite 400 Greg Merage Newport Beach, California 92660 |
| RP7A81 | LBHI | ISTAR FINANCIAL INC AND PACIFIC COAST CAPITAL FUNDING LLC | 04/06/2004 | SUBORDINATION AND STANDSTILL AGREEMENT BETWEEN ISTAR FINANCIAL INC AND PACIFIC COAST CAPITAL FUNDING LLC | Subordination and Standstill Agreement | No Notice Parties |
| R07D56 | LBHI | IVC WH HG II LLC | 06/04/2008 | PARTICIPATION AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND IVC WH HG II LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $62,500,000 | Participation Agreement | No Notice Parties |
| R07D40 | LBHI | JASMINE AT THE GALLERIA LLC AND LYON MANAGEMENT GROUP INC | 01/14/2008 | LOAN MODIFICATION AND RATIFICATION AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, JASMINE AT THE GALLERIA LLC AND LYON MANAGEMENT GROUP INC WITH RESPECT TO LOAN IN THE AMOUNT OF $19,075,000 | Amendment to Loan Agreement | Jasmine at the Galleria, LLC 4901 Birch St Newport Beach, CA 92660 Attn: Frank T. Suryan, Jr<br><br>Pillsbury Winthrop LLP 50 Fremont Street San Francisco, CA 94105 Attn: Thomas Gump, Esq |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|----------------|
| R07D40 | LBHI | JASMINE AT THE GALLERIA LLC, LYON MANAGEMENT GROUP INC, AND SWEDBANK AB | 07/26/2010 | SECOND LOAN MODIFICATION AGREEMENT AMONG JASMINE AT THE GALLERIA LLC, LYON MANAGEMENT GROUP INC, LEHMAN BROTHERS HOLDINGS INC, LEHMAN BROTHERS HOLDINGS INC AND SWEDBANK AB WITH RESPECT TO LOAN IN THE AMOUNT OF $19,075,000 | Amendment to Loan Agreement | Jasmine at the Galleria, LLC 4901 Birch St Newport Beach, CA 92660 Attn: Frank T. Suryan, Jr<br><br>Pillsbury Winthrop LLP 50 Fremont Street San Francisco, CA 94105 Attn: Thomas Gump, Esq |
| R07D40 | LBHI | Jasmine at the Galleria, LLC | 05/17/2006 | Loan Agreement between Jasmine at the Galleria, LLC and Lehman Brothers Holdings Inc | Loan Agreement | Jasmine at the Galleria, LLC 4901 Birch St Newport Beach, CA 92660 Attn: Frank T. Suryan, Jr<br><br>Pillsbury Winthrop LLP 50 Fremont Street San Francisco, CA 94105 Attn: Thomas Gump, Esq |
| R06B54 | LBHI | JASMINE VILLAGE LLC | 12/21/2006 | LOAN AGREEMENT BETWEEN JASMINE VILLAGE LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $12,150,000 | Loan Agreement | Jasmine Village, LLC 4901 Birch Street Attention: Frank T. Suryan, Jr Newport Beach, California 92660<br><br>Pillsbury Winthrop LLP 50 Fremont Street Attention: Thomas Gump, Esq San Francisco, California 94105 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08C99 | LCPI | JBC FUNDS JHC MEZZ LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN JBC FUNDS JHC MEZZ LLC AND LEHMAN COMMERCIAL PAPER INC IN THE AMOUNT OF $13,460,591.95 | Loan and Security Agreement | JBC Funds JHC Mezz, LLC c/o The John Buck Company One North Wacker Drive (Suite 2400) Attn: Charles R. Beaver Chicago, Illinois 60606<br><br>Obermayer Rebmann Maxwell & Hippel LLP One Penn Center (19th Floor) 1617 John F. Kennedy Blvd. Attn: Jeffrey Rotwitt, Esq. Philadelphia, PA 19103-1895 |
| R07C55 | LBHI | JUNG DEVELOPMENTS INC, JUNG DEVELOPMENTS INFINITY 2 INC AND PARK PLACE TOWERS LIMITED PARTNERSHIP | 05/08/2009 | AMENDED AND RESTATED LOAN AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, JUNG DEVELOPMENTS INC, JUNG DEVELOPMENTS INFINITY 2 INC AND PARK PLACE TOWERS LIMITED PARTNERSHIP | Amended and Restated Loan Agreement | c/o Concord Development Properties Ltd. 9th Floor, 1095 W. Pender Street Attention: Cliff McCracken, Senior Vice President Vancouver, British columbia V6E 2M6<br><br>Farris, Vaughan, Wills & Murphy LLP 700 West Georgia Street Attention: Mitchell Gropper QC Vancouver, British columbia V7Y 1B3 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07A55 | LBHI | Kapalua Bay, LLC | 02/11/2009 | Construction Loan Agreement among LBHI and various other lenders and Kapalua Bay, LLC, as Borrower with respect to loan in the original principal amount of up to $354,455,968.31 | Amended and Restated Construction Loan Agreement | As Listed in Appendix B |
| R01A03 | LBHI | KARIM ALIBHAI | 08/05/2007 | PLEDGE AND SECURITY AGREEMENT EXECUTED BY KARIM ALIBHAI IN FAVOR OF LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $10,000,000 | Pledge and Security Agreement | c/o Gencom Group 801 Brickell Avenue, PH2 Miami, FL 33131 |
| R01A03 | LBHI | KARIM ALIBHAI | 07/29/2008 | FIRST AMENDMENT TO LOAN DOCUMENTS BETWEEN KARIM ALIBHAI AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO THE AMOUNT OF $10,000,000 | Amendment to Loan Agreement | c/o Gencom Group 801 Brickell Avenue, PH2 Miami, FL 33131 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D94 | LBHI | LANDESBANK BADEN-WUERTTEMBERG (as successor to Landesbank Sachsen Girozentrale), MSRE HANCOCK SPV A LLC and MSRE HANCOCK SPV B LLC | 05/30/2008 | AMENDED AND RESTATED INTERCREDITOR AGREEMENT by and among LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF LEHMAN BROTHERS FLOATING RATE COMMERCIAL MORTGAGE TRUST 2007- LLF C5 COMMERCIAL MORTGAGE PASS- THROUGH CERTIFICATES, SERIES 2007-LLF C5, as Senior Lender LANDESBANK BADEN-WUERTTEMBERG (as successor to Landesbank Sachsen Girozentrale), as Mezzanine Lender A MSRE HANCOCK SPV A LLC and MSRE HANCOCK SPV B LLC, collectively, as Mezzanine Lender B and LEHMAN BROTHERS HOLDINGS INC., as Mezzanine Lender C Dated as of May 30, 2008 | Intercreditor | Landesbank Baden-Wuerttemberg Humboldtstrasse 25 D-04105 Leipzig, Germany Attention: Kristin Kappler Facsimile No.: +49 341 979 3209

MSRE Hancock SPV A LLC MSRE Hancock SPV B LLC c/o Morgan Stanley 1585 Broadway, 37th Floor New York, New York 10036 Attention: Mark Hudspeth Facsimile No.: (212) 507-4365

Legal and Compliance Morgan Stanley 1221 Avenue of the Americas, 40th Floor New York, New York 10020 Attention: Amie Benedetto, Esq. Facsimile No.: (646) 403-9605

Pillsbury Winthrop Shaw Pittman LLP 2300 N Street, NW Washington, DC 20037-1122 Attention: Robert B. Robbins, Esq. Facsimile No.: (202) 513-8050 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R06A06 | LBHI | LANDESBANK BADEN-WURTTEMBERG | 08/19/2008 | INTERCREDITOR AGREEMENT BETWEEN LANDESBANK BADEN-WURTTEMBERG AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $60,300,000 | Intercreditor | Landesbank Baden-Wurtternberg 5774 Real Estate Finance 8 Grobe Bleiche 54-56 Attn: Tina Ulrich 55098 Mainz, <br><br> Shearman & Sterling LLP 599 Lexington Avenue Attn: Robert W. Fagiola NY, NY 10022 |
| R07B62 | LBHI | LASALLE BANK NATIONAL ASSOCIATION | 07/20/2007 | AMENDED AND RESTATED CO-LENDER AGREEMENT BETWEEN LASALLE BANK NATIONAL ASSOCIATION AND LEHMAN BROTHERS HOLDINGS INC IN THE LOAN AMOUNT OF $567,675,000 | CoLender | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R06B30 | LBHI | LaSalle Bank National Association | 11/28/2006 | SECOND AMENDED AND RESTATED INTERCREDITOR AGREEMENT by and among LASALLE BANK NATIONAL ASSOCIATION, a national banking association, as Trustee for the Registered Holders Of LB-UBS Commercial Mortgage Trust 2006-C6, Commercial Mortgage Pass-Through Certificates, Series 2006-C6 and LEHMAN BROTHERS HOLDINGS INC (Senior Lender/First Mezzanine Lender/Second Mezzanine Lender/Third Mezzanine Lender/Junior Mezzanine Lender) | INTERCREDITOR AGREEMENT | LaSalle Bank National Association, as Trustee c/o Wachovia Bank, N.A. Real Estate & Financial Services Investment Banking Re: LB-UBS 2006-C6 ; Loan no. 343001742 8739 Research Drive, URPCNC 1075 Charlotte, NC 28262- I075 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D19 | LBHI as successor to Lehman Brothers Bank | LASALLE BANK NATIONAL ASSOCIATION, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, LEHMAN BROTHERS BANK, FSB., BARCLAYS CAPITAL REAL ESTATE INC.,GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY | 11/20/2007 | MEZZANINE CO-LENDER AGREEMENT (Mezzanine C) by and among LASALLE BANK NATIONAL ASSOCIATION, As Custodian, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-1 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-2 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-3 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-4 Noteholder, LEHMAN BROTHERS BANK, FSB., a federal stock savings bank, As the Initial A-5 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-6 noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-7 Noteholder | CoLender | LASALLE BANK NATIONAL ASSOCIATIONNotice Address:LaSalle Bank National AssociationGlobal Securities & Trust Services135 S. LaSalle Street, Suite 1640Chicago, Illinois 60603Attention: Marcia Moore-AllenTelephone: 3 12-904-033 8Telecopier: 3 12-904-6006Delivery Address:LaSalle Bank National AssociationGlobal Securities & Trust Services135 S. LaSalle Street, Suite 1640Chicago, Illinois 60603Attention: Winnie KantarisTelephone: 3 12-904-597 1Telecopier: 3 12-904-6006Initial A- 1 Noteholder, Initial A-3 Noteholder, Initial A-6 Noteholder:BARCLAYS CAPITAL REAL ESTATE INC.Notice Address:Barclays Capital Real Estate Inc.200 Park AvenueNew York, NY 10166Attn: CMBS ServicingFacsimile No.: (212) 4 12-1 664Thacher Proffitt & Wood LLPTwo World Financial CenterNew York, New York 10281Attn: David S. Hall, Esq.Fax: (2 12) 912-775 1Initial A-2 Noteholder, Initial A-4 Noteholder, Initial A-7 Noteholder:GOLDMAN SACHS MORTGAGE COMPANYNotice Address:Goldman Sachs Mortgage Company85 Broad StreetNew York, New York 10004Attention: Ted BorterFacsimile No.: (212) 357- |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D19 | LBHI as successor to Lehman Brothers Bank | LASALLE BANK NATIONAL ASSOCIATION, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, LEHMAN BROTHERS BANK, FSB., BARCLAYS CAPITAL REAL ESTATE INC.,GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY | 11/20/2007 | MEZZANINE CO-LENDER AGREEMENT (Mezzanine D) by and among LASALLE BANK NATIONAL ASSOCIATION, As Custodian, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-1 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-2 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-3 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-4 Noteholder, LEHMAN BROTHERS BANK, FSB., a federal stock savings bank, As the Initial A-5 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-6 noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-7 Noteholder | CoLender | LASALLE BANK NATIONAL ASSOCIATION Notice Address: LaSalle Bank National Association Global Securities & Trust Services 135 S. LaSalle Street, Suite 1640 Chicago, Illinois 60603 Attention: Marcia Moore-Allen Telephone: 3 12-904-033 8 Telecopier: 3 12-904-6006  Delivery Address: LaSalle Bank National Association Global Securities & Trust Services 135 S. LaSalle Street, Suite 1640 Chicago, Illinois 60603 Attention: Winnie Kantaris Telephone: 3 12-904-597 1 Telecopier: 3 12-904-6006  Initial A- 1 Noteholder, Initial A-3 Noteholder, Initial A-6 Noteholder: BARCLAYS CAPITAL REAL ESTATE INC. Notice Address: Barclays Capital Real Estate Inc. 200 Park Avenue New York, NY 10166 Attn: CMBS Servicing Facsimile No.: (212) 4 12-1 664  Thacher Proffitt & Wood LLP Two World Financial Center New York, New York 10281 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D19 | LBHI as successor to Lehman Brothers Bank | LASALLE BANK NATIONAL ASSOCIATION, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY, LEHMAN BROTHERS BANK, FSB., BARCLAYS CAPITAL REAL ESTATE INC.,GOLDMAN SACHS MORTGAGE COMPANY, BARCLAYS CAPITAL REAL ESTATE INC., GOLDMAN SACHS MORTGAGE COMPANY | 11/20/2007 | MEZZANINE CO-LENDER AGREEMENT (Mezzanine F) by and among LASALLE BANK NATIONAL ASSOCIATION, As Custodian, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-1 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-2 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-3 Noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-4 Noteholder, LEHMAN BROTHERS BANK, FSB., a federal stock savings bank, As the Initial A-5 Noteholder, BARCLAYS CAPITAL REAL ESTATE INC., a Delaware corporation, As the Initial A-6 noteholder, GOLDMAN SACHS MORTGAGE COMPANY, a New York limited partnership, As the Initial A-7 Noteholder | CoLender | LASALLE BANK NATIONAL ASSOCIATIONNotice Address:LaSalle Bank National AssociationGlobal Securities & Trust Services135 S. LaSalle Street, Suite 1640Chicago, Illinois 60603Attention: Marcia Moore-AllenTelephone: 3 12-904-033 8Telecopier: 3 12-904-6006Delivery Address:LaSalle Bank National AssociationGlobal Securities & Trust Services135 S. LaSalle Street, Suite 1640Chicago, Illinois 60603Attention: Winnie KantarisTelephone: 3 12-904-597 1Telecopier: 3 12-904-6006Initial A- 1 Noteholder, Initial A-3 Noteholder, Initial A-6 Noteholder:BARCLAYS CAPITAL REAL ESTATE INC.Notice Address:Barclays Capital Real Estate Inc.200 Park AvenueNew York, NY 10166Attn: CMBS ServicingFacsimile No.: (212) 4 12-1 664Thacher Proffitt & Wood LLPTwo World Financial CenterNew York, New York 10281Attn: David S. Hall, Esq.Fax: (2 12) 912-775 1Initial A-2 Noteholder, Initial A-4 Noteholder, Initial A-7 Noteholder:GOLDMAN SACHS MORTGAGE COMPANYNotice Address:Goldman Sachs Mortgage Company85 Broad StreetNew York, New York 10004Attention: Ted BorterFacsimile No.: (212) 357- |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C33 | LBHI | LASALLE BANK NATIONAL ASSOCIATION, ERP MINNESOTA PORTFOLIO LLC, ERP MIP MEZZ BORROWER LLC AND WATERTON ASSOCIATES LLC | 06/26/2008 | LETTER AGREEMENT AMONG LASALLE BANK NATIONAL ASSOCIATION, LEHMAN BROTHERS HOLDINGS INC, ERP MINNESOTA PORTFOLIO LLC, ERP MIP MEZZ BORROWER LLC AND WATERTON ASSOCIATES LLC REGARDING MORTGAGE LOAN AND MEZZANINE LOAN | Intercreditor | No Notice Parties |
| R03A13 | LBHI | LB HG NEWARK LLC | 11/21/2007 | MEMBERSHIP PLEDGE AND SECURITY AGREEMENT FOR LB HG NEWARK LLCS INTEREST AS MEMBER OF HG NEWARK INVESTOR LLC EXECUTED BY LB HG NEWARK LLC IN FAVOR OF LEHMAN BROTHERS HOLDINGS INC | Membership and Pledge Agreement | No Notice Parties |
| R07D80 | LBHI | LBHI | 07/11/2007 | CO-LENDER AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC., AS INITIAL NOTE A HOLDER, AND LEHMAN BROTHERS HOLDINGS INC., AS INITIAL NOTE B HOLDER WITH REGARD TO ONE AMERICAN CENTER | Co-Lending Agreement | One American Center A Note Lender: KeyCorp Real Estate Capital Markets 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Anna E. Trigg Telecopier: (877) 379-1625<br><br>B Note Lender: KeyCorp Real Estate Capital Markets 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Boubacar Vilane Telecopier: (877) 379-1625 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|----------------|
|  | LBHI | LBHI, PAMI, and Lehman ALI, CGKL Ventures LLC and PCCP Asset Holding, LLC | 05/01/2004 | Amended and Restated Asset Management and Loan Servicing Agreement between LBHI, PAMI, and Lehman ALI, CGKL Ventures LLC doing business as Pacific Coast Capital Partners, LLC and PCCP Asset Holding, LLC | Asset Management and Loan Servicing Agreement | PCCP Asset Holding, LLC 1960 East Grand Avenue, Ste 400 El Segundo, CA 90245 |
| R05B33 | LBHI | LBHI/LBHI | 10/15/2004 | INTERCREDITOR AGREEMENT EXECUTED LEHMAN BROTHERS HOLDINGS INC AS SENIOR LENDER AND LEHMAN BROTHERS HOLDINGS INC AS MEZZANINE LENDER WITH RESPECT TO LOAN IN THE AMOUNT OF $160,000,000 | Intercreditor Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R05B36 | LBHI | LBHI/LBHI | 08/09/2005 | CO-LENDER AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AS INITIAL NOTE A HOLDER AND LEHMAN BROTHERS HOLDINGS INC AS INITIAL NOTE B HOLDER WITH RESPECT TO LOAN IN THE AMOUNT OF $14,080,000 | CoLender | Lehman Brothers Holdings Inc1271 Avenue of the AmericasNY, NY 10020Attn: Commercial Real Estate |
| R07D35 | LBHI | LBHI/LBHI | 08/09/2007 | INTERCREDITOR AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC AS SENIOR LENDER, LEHMAN BROTHERS HOLDINGS INC AS SENIOR MEZZANINE LENDER AND LEHMAN BROTHERS HOLDINGS INC AS JUNIOR MEZZANINE LENDER | Intercreditor Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07B68 | LBHI | LBHI/LBHI | 05/15/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AS SENIOR LENDER AND LEHMAN BROTHERS HOLDINGS INC AS MEZZANINE LENDER WITH RESPECT TO LOAN IN THE AMOUNT OF $23,900,000 | Intercreditor Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R06B33 | LBHI | LBHI/LBHI | 08/10/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AS SENIOR LENDER AND LEHMAN BROTHERS HOLDINGS INC AS MEZZANINE LENDER | Intercreditor Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R07D05 | LBHI | LBHI/LBHI | 05/01/2006 | INTERCREDITOR AGREEMENT EXECUTED BY LEHMAN BROTHERS HOLDINGS INC - DOCUMENT IS DATED AS 05-00-2006 | Intercreditor | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R07D43 | LBHI as successor to Lehman ALI | LBHI/LBHI | 04/29/2008 | Amended and Restated Intercreditor Agreement by and between Lehman ALI as Senior Lender and Lehman ALI as Mezzanine Lender | INTERCREDITOR AGREEMENT | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 ATTN: Commercial Real Estate |
| R06B31 | LBHI as successor to Lehman Brothers Bank | LBHI/LBHI | 09/28/2006 | CO-LENDING AGREEMENT OF LOAN AGREEMENT EXECUTED BY LEHMAN BROTHERS BANK FSB WITH RESPECT TO LOAN IN THE AMOUNT OF $42,500,000 | CoLender | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 ATTN: Commercial Real Estate |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R05B36 | LBHI as successor to Lehman Brothers Bank | LBHI/LBHI | 08/09/2005 | Colender Agreement between LBHI (Initial Note A Holder) and LBHI (Initieal Note B Holder) | CoLender | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 ATTN: Commercial Real Estate |
| R07A16 | LBHI as successor to Lehman Brothers Bank | LBHI/LBHI | 06/01/2007 | Intercreditor Agreement between LBB and LBB | Intercreditor | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 ATTN: Commercial Real Estate |
| R07D96 | LBHI as successor to Lehman Brothers Bank | LBHI/LBHI | 08/13/2007 | INTERCREDITOR AGREEMENT by and among LEHMAN BROTHERS BANK FSB, as Senior Lender LEHMAN BROTHERS BANK FSB, as Mezzanine Lender A LEHMAN BROTHER9 BANK FSB, as Mezzanine Lender B and LEHMAN BROTHERS BANK FSB, as Mezzanine Lender C | INTERCREDITOR AGREEMENT | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 ATTN: Commercial Real Estate |
| R05B41 | LBHI/LCPI | LBHI/LCPI | 10/25/2005 | Intercreditor Agreement between LBHI as senior lender and LBHI as mezzanine lender | Intercreditor | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R07B62 | LCPI/LBHI | LBHI/LCPI | 05/15/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (One Congress Plaza) | One Congress PlazaA Note Lender:KeyCorp Real Estate Capital Markets11501 Outlook, Ste. 300Overland Park, KS 66211Attention: Anna E. TriggTelecopier: (877) 379-1625B Note Lender:KeyCorp Real Estate Capital Markets11501 Outlook, Ste. 300Overland Park, KS 66211Attention: Boubacar VilaneTelecopier: (877) 379-1625 |
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (One American Center) | One American Center A Note Lender: KeyCorp Real Estate Capital Markets 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Anna E. Trigg Telecopier: (877) 379-1625  B Note Lender: KeyCorp Real Estate Capital Markets 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Boubacar Vilane Telecopier: (877) 379-1625 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC WITH RESPECT TO LOAN IN THE AMOUNT OF $127,000,000 | Intercreditor (300 West 6th) | 300 W. 6th<br>A Note Lender:<br>KeyCorp Real Estate Capital Markets<br>11501 Outlook, Ste. 300<br>Overland Park, KS 66211<br>Attention: Anna E. Trigg<br>Telecopier: (877) 379-1625 |
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (401 Congress) | Frost Bank Tower<br>A Note Lender:<br>KeyCorp Real Estate Capital Markets<br>11501 Outlook, Ste. 300<br>Overland Park, KS 66211<br>Attention: Anna E. Trigg<br>Telecopier: (877) 379-1625<br><br>B Note Lender:<br>KeyCorp Real Estate Capital Markets<br>11501 Outlook, Ste. 300<br>Overland Park, KS 66211<br>Attention: Boubacar Vilane<br>Telecopier: (877) 379-1625 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (San Jacinto Center) | San Jocinto CenterA Note Lender:KeyCorp Real Estate Capital Markets11501 Outlook, Ste. 300Overland Park, KS 66211Attention: Anna E. TriggTelecopier: (877) 379-1625B Note Lender:KeyCorp Real Estate Capital Markets11501 Outlook, Ste. 300Overland Park, KS 66211Attention: Boubacar VilaneTelecopier: (877) 379-1625 |
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (Research Park Plaza I&II) | Research Park Plaza I & II Senior Loan Lender: KeyCorp Real Estate Capital Markets, Inc. 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Mark Mosher Telecopier: (877) 379-1625

Mezzanine Loan Lender: KeyCorp Real Estate Capital Markets, Inc. 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Mark Mosher Telecopier: (877) 379-1625 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D80 | LCPI/LBHI | LBHI/LCPI | 06/01/2007 | INTERCREDITOR AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND LEHMAN COMMERCIAL PAPER INC | Intercreditor (Stonebridge Plaza I&II) | Stonebridge Plaza II Senior Loan Lender: KeyCorp Real Estate Capital Markets, Inc. 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Mark Mosher Telecopier: (877) 379-1625<br><br>Mezzanine Loan Lender: KeyCorp Real Estate Capital Markets, Inc. 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Mark Mosher Telecopier: (877) 379-1625 |
| R07E33 | LCPI/LBHI | LBHI/LCPI | 07/18/2007 | INTERCREDITOR AGREEMENT BETWEEN LBHI & LCPI | INTERCREDITOR AGREEMENT | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LBHI | Lee Poole | 09/07/2207 | SUBORDINATE PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND LEE POOLE | Subordinate Pledge Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn:  Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn:  Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn:  Joseph F. Kishel, Esq.Tel No. 212-801-9238 |
| R07C65 | LBHI | Lee Poole | 09/07/2007 | SPONSOR CARVE OUT GUARANTY BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND LEE POOLE | Sponsor Carve Out Guaranty | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Lee Poole | 09/07/2007 | PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND LEE POOLE | Pledge Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Lee Poole | 09/07/2007 | SPONSOR CARVE OUT GUARANTY BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND LEE POOLE | Sponsor Carve Out Guaranty | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B62 | LBHI | LEHMAN BROTHERS BANK FSB, CADIM NOTE INC | 08/31/2007 | PARTICIPATION AGREEMENT AMONG LEHMAN BROTHERS BANK FSB, CADIM NOTE INC AND LEHMAN BROTHERS HOLDINGS INC | Participation | No Notice Parties |
| R07C65 | LCPI | Lehman Brothers Commercial Bank | 09/07/2007 | AGENT RESIGNATION AND APPOINTMENT AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND LEHMAN COMMERCIAL PAPER INC. AND CONSENTED TO BY MOONLIGHT BASIN RANCH L.P. | Agent Resignation and Appointment Agreement | Lehman Brothers Holdings Inc 1271 Avenue of the Americas NY, NY 10020 Attn: Commercial Real Estate |
| R07B87 | LBHI | LH 1440 LLC | 06/08/2007 | ACQUISITION AND PROJECT LOAN AGREEMENT BETWEEN LH 1440 LLC AND LEHMAN BROTHERS HOLDINGS INC | Acquisition and Project Loan Agreement | LH 1440 L.L.C. c/o Lighthouse Real Estate 60 West Hempstead Avenue,Suite 718 Attention: Mr. Jeffrey Ravetz West Hempstead, New York 11552<br><br>Schiff Hardin LLP 623 Fifth Avenue Attention: Christine A. McGuinness, Esq New York, New York  10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R09A12 | LBHI as successor to Lehman Brothers Bank | LT PROPCO LLC | 10/02/2006 | Mezzanine A LOAN AGREEMENT Between LT PROPCO LLC, as Borrower and BEAR STEARNS COMMERCIAL MORTGAGE, INC. and LEHMAN BROTHERS BANK, FSB, collectively, as Lender | Mezzanine A Loan Agreement | c/o NRDC Real Estate Advisors National Realty & Development Corp. 3 Manhattanville Road Purchase, NY 10577 Attention: Managing Director Facsimile No.: (914) 272-8091<br><br>Stroock & Stroock & Lavan LP 180 Maiden Lane New York, New York 10038 Attention: Peter Koffler, Esq. Facsimile No.: (212) 805-2686 |
| R07A55 | LBHI | LUXURY FINANCE LLC AND MARRIOTT INTERNATIONAL CAPITAL CORPORATION | 02/21/2008 | INTERCREDITOR LETTER AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, LUXURY FINANCE LLC AND MARRIOTT INTERNATIONAL CAPITAL CORPORATION REGARDING SUBORDINATION AND INDERCERDITOR AGREEMENT | Intercreditor Agreement | No Notice Parties |
| R07C14 | LBHI | MARIETTA CROSSING PARTNERS LLC | 06/29/2007 | MEZZANINE LOAN AGREEMENT BETWEEN MARIETTA CROSSING PARTNERS LLC AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $10,100,000 | Mezzanine Loan Agreement | Marietta Crossing Partners, LLC c/o Lyon Ventures Capital 4901 Birch Street Frank T. Suryan, Jr. Newport Beach, California 92660<br><br>Pillsbury Winthrop LLP 50 Fremont Street Gary Downs Esq San Francisco, California 94105 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07A55 | LBHI | MARRIOTT INTERNATIONAL CAPITAL CORPORATION | 02/21/2008 | SUBORDINATON AND INTERCREDITOR AGREEMENT BETWEEN MARRIOTT INTERNATIONAL CAPITAL CORPORATION AND LEHMAN BROTHERS HOLDINGS INC | Subordination and Intercreditor Agreement | No Notice Parties |
| R04A72 | LBHI | Monument Realty Capital LLC | 12/23/2003 | Revolving Credit Agreement between Monument Realty Capital LLC and LBHI | Revolving Credit Agreement | Monument Realty Capital LLC 1700 K Street, NW Suite 600 Washington, DC 20006 Attn: Mr. Jeffrey T. Neal  Holland & Knight LLP 2099 Pennsylvania Ave, NW, Ste 100 Washington, DC 20006 Attn: Charles Welch Tiedemann, Esq |
| R07C65 | LBHI | Moonlight Basin Holdings LLC | 09/07/2007 | PLEDGE AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN HOLDINGS LLC | Pledge and Security Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C65 | LBHI | Moonlight Basin Mezz LLC | 09/07/2007 | $70,000,000 LOAN FACILITY LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN MEZZ LLC | Mezzanine Loan Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LBHI | Moonlight Basin Mezz LLC | 09/06/2007 | PLEDGE AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN MEZZ LLC | Pledge and Security Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C65 | LBHI | Moonlight Basin Mezz LLC | 09/07/2007 | PLEDGE AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN MEZZ LLC | Pledge and Security Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LBHI | Moonlight Basin Mezz, LLC and Lee Poole | 09/07/2007 | ENVIRONMENTAL INDEMNITY AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC., MOONLIGHT BASIN MEZZ, LLC, AND LEE POOLE | Environmental Indemnity Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C65 | LBHI | Moonlight Basin Mezz, LLC, Lee Poole, Moonlight Basin Holdings LLC, Moonlight Basin Ranch Inc., Moonlight Basin Ranch L.P., Six Shooter, LLC, JVLP, LLC, Tim William Anderson, Aardvark, LLC | 06/05/2008 | RATIFICATION AGREEMENT AND FIRST AMENDMENT TO $70,000,000 LOAN FACILITY LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN MEZZ LLC AND OTHER LOAN DOCUMENTS BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND MOONLIGHT BASIN MEZZ, LLC | Ratification Agreement and First Amendment to Mezzanine Loan Agreement and Other Loan Documents | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LBHI | Moonlight Basin Mezz, LLC, Moonlight Basin Holdings LLC, and Lee Poole | 04/15/2008 | PRE-NEGOTIATION AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC., MOONLIGHT BASIN MEZZ LLC, MOONLIGHT BASIN HOLDINGS LLC, AND LEE POOLE | Pre-Negotiation Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P. | 09/07/2007 | PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P. | Pledge Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI | Moonlight Basin Ranch L.P. | 09/07/2007 | FIRST MODIFICATION OF MONTANA MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P., ACKNOWLEDGED BY LEHMAN COMMERCIAL PAPER INC. | First Modification of Montana Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P. | 09/07/2007 | $100,000,000 SENIOR SECURED TERM LOAN FACILITY CREDIT AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P. | Credit Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P. | 09/07/2007 | MONTANA MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P. | Montana Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P. and Lee Poole | 09/07/2007 | ENVIRONMENTAL INDEMNITY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK, MOONLIGHT BASIN RANCH L.P. AND LEE POOLE | Environmental Indemnity Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI | Moonlight Basin Ranch L.P., Lee Poole, Moonlight Spa, LLC, Moonlight Golf, LLC, Moonlight Basin, LLC, Moonlight Lodge, LLC, Treeline Springs, LLC, Mountain Top Construction Company, LLC, and Lone Mountain Food & Beverage, LLC | 06/05/2008 | AGREEMENT BETWEEN LEHMAN COMMERCIAL PAPER INC. AND MOONLIGHT BASIN RANCH L.P., LEE POOLE, MOONLIGHT SPA, LLC, MOONLIGHT GOLF, LLC, MOONLIGHT BASIN, LLC, MOONLIGHT LODGE, LLC, TREELINE SPRINGS, LLC, MOUNTAIN TOP CONSTRUCTION COMPANY, LLC, AND LONE MOUNTAIN FOOD & BEVERAGE, LLC REGARDING EXTENSION OF LOAN AND AMENDMENT TO $100,000,000 SENIOR SECURED TERM LOAN FACILITY CREDIT AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P. | Loan Extension Agreement and Amendment to Credit Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P., Moonlight Lodge, LLC | 09/05/2007 | COLLATERAL ASSIGNMENT OF DECLARANT'S RIGHTS BETWEEN LEHMAN BROTHERS COMMERCIAL BANK, MOONLIGHT BASIN RANCH L.P. AND MOONLIGHT LODGE, LLC | Collateral Assignment of Declarant's Rights | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P., Moonlight Spa, LLC, Moonlight Golf, LLC, Moonlight Basin, LLC, Treeline Springs, LLC, Moonlight Lodge, LLC, Mountain Top Construction Company, LLC, Lone Mountain Food & Beverage, LLC, Aardvark, LLC, Six Shooter, LLC, JVLP, LLC | 09/07/2007 | SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT BASIN RANCH L.P., MOONLIGHT SPA, LLC, MOONLIGHT GOLF, LLC, MOONLIGHT BASIN, LLC, TREELINE SPRINGS, LLC, MOONLIGHT LODGE, LLC, MOUNTAIN TOP CONSTRUCTION COMPANY, LLC, LONE MOUNTAIN FOOD & BEVERAGE, LLC, AARDVARK, LLC, SIX SHOOTER, LLC, AND JVLP, LLC | Security Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Basin Ranch L.P., Moonlight Spa, LLC, Moonlight Golf, LLC, Moonlight Basin, LLC, Treeline Springs, LLC, Moonlight Lodge, LLC, Mountain Top Construction Company, LLC, Lone Mountain Food & Beverage, LLC, and Lee Poole | 04/15/2008 | PRE-NEGOTIATION AGREEMENT BETWEEN LEHMAN COMMERCIAL PAPER INC., MOONLIGHT BASIN RANCH L.P., MOONLIGHT SPA, LLC, MOONLIGHT GOLF, LLC, MOONLIGHT BASIN, LLC, TREELINE SPRINGS, LLC, MOONLIGHT LODGE, LLC, MOUNTAIN TOP CONSTRUCTION COMPANY, LLC, LONE MOUNTAIN FOOD & BEVERAGE, LLC, AND LEE POOLE | Pre-Negotiation Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI | Moonlight Lodge, LLC | 09/07/2007 | FIRST MODIFICATION OF MONTANA MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT LODGE, LLC, ACKNOWLEDGED BY LEHMAN COMMERCIAL PAPER INC. | First Modification of Montana Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn:  Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn:  Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|-------------------|----------------|----------------|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Lodge, LLC | 09/07/2007 | MONTANA MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT LODGE, LLC | Montana Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Moonlight Spa, LLC, Moonlight Golf, LLC, Moonlight Basin, LLC, Treeline Springs, LLC, Moonlight Lodge, LLC, Mountain Top Construction Company, LLC, Lone Mountain Food & Beverage, LLC | 09/07/2007 | SUBSIDIARY GUARANTY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOONLIGHT SPA, LLC, MOONLIGHT GOLF, LLC, MOONLIGHT BASIN, LLC, TREELINE SPRINGS, LLC, MOONLIGHT LODGE, LLC, MOUNTAIN TOP CONSTRUCTION COMPANY, LLC, AND LONE MOUNTAIN FOOD & BEVERAGE, LLC | Subsidiary Guaranty | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Mountain Top Construction Company, LLC | 09/07/2007 | PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND MOUNTAIN TOP CONSTRUCTION COMPANY, LLC | Pledge Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn: Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn: Joseph F. Kishel, Esq.Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Mountain Top Construction Company, LLC | 09/07/2007 | ALLONGE TO THAT CERTAIN AMENDED AND RESTATED PURCHASE MONEY PROMISSORY NOTE EXECUTED BY FRONTIER STONE, LLC IN FAVOR OF MOUNTAIN TOP CONSTRUCTION COMPANY, LLC | Allonge | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn: Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn: Joseph F. Kishel, Esq. Tel No. 212-801-9238 |
| R07A64 | LBHI | Mountain Village Hotel Development LLC | 01/18/2007 | Loan Agreement between Mountain Village Hotel Development LLC and LBHI | Loan Agreement | Mountain Village Hotel Development LLC c/o RAL Companies and Affiliates 86 Chambers St NY, NY 10007 Attn: Robert A. Levine  Jeffrey M. Lampiasi, Esq c/o RAL Companies and Affiliates 86 Chambers St NY, NY 10007 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B63 | LBHI | MR BALLPARK 2 LLC | 04/26/2007 | LOAN AGREEMENT BETWEEN MR BALLPARK 2 LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $25,270,000 | Loan Agreement | MR Ballpark 2 LLC c/o Monument Realty LLC 1155 Connecticut Avenue, N.W Suite 700 Attention: Jeffrey T. Neal Washington D.C, Washington D.C 20036<br><br>Holland & Knight LLP 2099 Pennsylvania Avenue, NW Suite 100 Attention: Charles Welch Tiedemann Esq Washington D.C, Washington D.C 20006 |
| R07B64 | LBHI | MR BALLPARK 6 LLC | 05/14/2007 | LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND MR BALLPARK 6 LLC IN THE AMOUNT OF $13,790,000 | Loan Agreement | MR Ballpark 6 LLCc/o Monument Realty LLC1 155 Connecticut Avenue, N.W., suite 700Attention: Jeffrey T. NealWashington, D.C 20036Holland & Knight LLP2099 Pennsylvania Avenue, NW, Suite 100Attention: Charles Welch Tiedemann, Esq.Washington, D.C 20006 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C44 | LBHI | MR BP OFFICE NO 1 MEZZANINE LLC | 05/05/2008 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND MR BP OFFICE NO 1 MEZZANINE LLC IN THE AMOUNT OF $12,000,000 | Mezzanine Loan Agreement | MR BP Office #1 Mezzanine LLC 1700 K Street, N.W. Suite 600 Attention: Mr. Jeffrey T. Neal Washington D.C, Washington D.C  20006<br><br>Holland & Knight LLP 2099 Pennsylvania Avenue, NW, Suite 100 Attention: Charles Welch Tiedemann Esq Washington D.C, Washington D.C  20006 |
| R07C47 | LBHI | MR LB HOTEL NO 1 LLC | 04/26/2007 | LOAN AGREEMENT BETWEEN MR LB HOTEL NO 1 LLC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $5,100,000 | Loan Agreement | MR/LB BP Hotel #1 LLC C/O Monument Realty LLC 1155 Connecticut Ave, NW; 7th Fl Attn: Jeffrey T. Neal Washington, DC  20036<br><br>Holland & Knight LLP 2099 Pennsylvania Ave; Ste 100 Attn: Charles Welch Tiedemann, Esq Washington, DC  20006 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R02A16 | LBHI | MR POTOMAC PLACE LLC | 04/20/2006 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND MR POTOMAC PLACE LLC | Mezzanine Loan Agreement | MR Potomac Place LLC c/o Monument Realty, LLC 1155 Connecticut Avenue, N.W. Suite 700. Attention: F. Russell Hines Washington D.C, Washington D.C  20036  Holland & Knight LLP 2099 Pennsylvania Avenue, NW Suite 100 Attention: Charles Welch Tiedemann, Esq. Washington D.C, Washington D.C  20006 |
| R05A84 | LBHI | MUNIR WALJI | 09/28/2005 | PLEDGE AND SECURITY AGREEMENT EXECUTED BY MUNIR WALJI IN FAVOR OF LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $3,500,000 | Pledge and Security Agreement | Munir Walji 200 West Mercer, Suite E - 201 Seattle, Washington  98119  Gillis, Paris and Heinrich 8 Greenway Plaza, Suite 818 Attention: Charles Michael Gillis, Esq Houston, Texas  77046 |
| R07D15 | LBHI | MYC Mezz Holdings LLC, MYC Holdings LLC | 04/02/2007 | MEZZANINE LOAN AGREEMENT AMONG MYC MEZZ HOLDINGS LLC, MYC HOLDINGS LLC AND LEHMAN BROTHERS HOLDINGS INC | Mezzanine Loan Agreement | c/o Island Global Yachting Ltd. 500 East Las Olas Blvd. Attention: Chief Financial Officer Fort Lauderdale, Florida  33301  c/o Island Global Yachting Ltd. 717 Fifth Avenue, 18th Floor Attention: Charles H. Gamer New York, New York,  10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D15 | LBHI | MYC Resort LLC | 04/02/2007 | LOAN AGREEMENT BETWEEN MYC RESORT LLC AND LEHMAN BROTHERS HOLDINGS INC | Loan Agreement | c/o Island Global Yachting Ltd.500 East Las Olas Blvd.Attention: Chief Financial OfficerFort Lauderdale, Florida 33301c/o Island Global Yachting Ltd.717 Fifth Avenue, 18th FloorAttention: Charles H. GamerNew York, New York, 10022 |
| R07D15 | LBHI | MYC Resort LLC; Island KZL LLC | 02/15/2011 | THIRD AMENDMENT TO LOAN AGREEMENT AMONG MYC RESORT LLC, ISLAND KZL LLC and Lehman Brothers Holdings INC | Amendment to Loan Agreement | c/o Island Global Yachting Ltd. 500 East Las Olas Blvd. Attention: Chief Financial Officer Fort Lauderdale, Florida  33301<br><br>c/o Island Global Yachting Ltd. 717 Fifth Avenue, 18th Floor Attention: Charles H. Gamer New York, New York,  10022 |
| R07D96 | LBHI as successor to Lehman Brothers Bank | Normandy Gator Acquisition Mezz I, LLC | 11/29/2006 | Second Mezzanine Loan Agreement Among Normandy Gator Acquisition Mezz I, LLC and Lehman Brothers Bank FSB | Second Mezzanine Loan Agreement | Normandy Real Estate Partners 1776 On the Green, 67 Park Place, 8th Floor Morristown, NJ 07960 Attn: David T Welsh<br><br>Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square NY, NY 10036-6522 Attn: David L. Nagler, Esq |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D96 | LBHI as successor to Lehman Brothers Bank | Normandy Gator Acquisition Mezz III, LLC | 11/29/2006 | Third Mezzanine Loan Agreement among Normandy Gater Acquisition Mezz III, LLC and Lehman Brothers Bank FSB | Third Mezzanine Loan Agreement | Normandy Real Estate Partners 1776 On the Green, 67 Park Place, 8th Floor Morristown, NJ 07960 Attn: David T Welsh<br><br>Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square NY, NY 10036-6522 Attn: David L. Nagler, Esq |
| R07A48 | LBHI | NORTH BEACH I LLC | 11/29/2006 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND NORTH BEACH I LLC IN THE AMOUNT OF $28,500,000 | Mezzanine Loan Agreement | North Beach I, LLC 7722 North Kings Highway Myrtle Beach, SC 29572 Attn: David C. Stradinger<br><br>Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, PA 1000 29th Avenue North PO Box 357 Myrtle Beach, SC 29578 Attn: Claude M. Epps, Jr |
| R07A48 | LBHI | NORTH BEACH I LLC AND DAVID C STRADINGER | 04/20/2009 | FIRST AMENDMENT OF MEZZANINE LOAN DOCUMENT AMONG LEHMAN BROTHERS HOLDINGS INC, NORTH BEACH I LLC AND DAVID C STRADINGER | First Amendment to Mezzanine Loan Agreement | North Beach I, LLC 7722 North Kings Highway Myrtle Beach, SC 29572 Attn: David C. Stradinger<br><br>Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, PA 1000 29th Avenue North PO Box 357 Myrtle Beach, SC 29578 Attn: Claude M. Epps, Jr |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07A48 | LBHI | NORTH BEACH I LLC, DAVID C STRADINGER AND NORTH BEACH II LLC | 07/13/2009 | SECOND AMENDMENT OF MEZZANINE LOAN DOCUMENTS AMONG LEHMAN BROTHERS HOLDINGS INC, NORTH BEACH I LLC, DAVID C STRADINGER AND NORTH BEACH II LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $28,500,000 | Second Amendment to Mezzanine Loan Agreement | North Beach I, LLC7722 North Kings HighwayMyrtle Beach, SC 29572Attn: David C. StradingerBellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, PA1000 29th Avenue NorthPO Box 357Myrtle Beach, SC 29578Attn: Claude M. Epps, Jr |
| R07A48 | LBHI | North Beach Mezz Holdings | 11/29/2006 | CO-LENDER AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND NORTH BEACH MEZZ HOLDINGS LLC | CoLender | North Beach Mezz Holdings LLC 399 Park Avenue 9th Fl NY, NY 10022 Attn: John Randall |
| R07D94 | LBHI | NRFC HC08 LLC | 06/30/2008 | MEZZANINE PARTICIPATION AGREEMENT FOR JOHN HANCOCK CENTER MEZZANINE C NOTE BETWEEN NRFC HC08 LLC AND LEHMAN BROTHERS HOLDINGS INC | Participation | c/o Whitehall Street Global Real Estate Limited Partnership 2007 85 Broad Street, 10th Floor Attn: Whitehall Chief Financial Officer New York, New York 10004  c/o Golub & Company LLC 625 N. Michigan Avenue, Suite 2000 Attn: Lee Golub Chicago, Illinois 60611  Sullivan & Cromwell LLP 125 Broad Street Attn: Anthony Colletta, Esq. New York, New York 10004 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R08D29 | LCPI (AS SUCCESSOR VIA ASSIGNMENT FROM WOODLANDS COMMERCIAL BANK (F/K/A LEHMAN BROTHERS COMMERCIAL BANK)) | NW BORROWER HH 2A, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LEHMAN BROTHERS COMMERICAL BANK AND NW BORROWER HH 2A, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | NW BORROWER HH 2B, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND NW BORROWER HH 2B, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | NW BORROWER HH 3A, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND NW BORROWER HH 3A, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |
| R08D29 | LCPI | NW BORROWER HH 3B, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND NW BORROWER HH 3B, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc. 900 North Michigan Avenue, Suite 1450 Chicago, IL 60611 Attention: Craig Caffarelli Telecopier No.: (312) 915-2901 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R08D29 | LCPI | NW BORROWER HH 4, LLC | 08/28/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LCPI AND NW BORROWER HH 4, LLC | LOAN AND SECURITY AGREEMENT | c/o GEM Realty Capital, Inc.900 North Michigan Avenue, Suite 1450Chicago, IL 60611Attention: Craig CaffarelliTelecopier No.: (312) 915-2901 |
| R05A13 | LBHI | ORANGE BEACH MEMBER LLC | 06/01/2005 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND ORANGE BEACH MEMBER LLC IN THE AMOUNT OF $10,300,000 | Mezzanine Loan Agreement | Orange beach member LLC c/o centrum properties inc 225 West Hubbard street, Suite 400 Attn: John Mclinden Chicago, Illinois 60610  Coral Reef II LLc c/o McCrory Building Company inc 3512 Seventh Avenue South Attn: John McCrory and Lucius S Evins III Birmingham, Alabama 35222-3211 |
| RP7A81 | LBHI | PACIFIC COAST CAPITAL FUNDING LLC AND PCCP STUDIO CITY LOS ANGELES TCS MEZZANINE LLC | 04/06/2004 | MEZZANINE LOAN AGREEMENT BETWEEN PACIFIC COAST CAPITAL FUNDING LLC AND PCCP STUDIO CITY LOS ANGELES TCS MEZZANINE LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $10,000,000 | Mezzanine Loan Agreement | c/o Pacific Coast Capital Partners LLC 1960 E Grand Avenue, Suite 400 Attention: Nicholas V Colonna El Segundo , California 90245  Gibson Dunn and Crutcher LLP 333 South Grand Avenue, 49th Floor Attention: D Eric Remensperger Los Angeles, California 90071 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| RP7A81 | LBHI | PCCP LLC | 06/01/2005 | CONTINGENT PROMOTE AGREEMENT DATED JUNE 1, 2005 BETWEEN LEHMAN BROTHERS HOLDINGS INC AND PCCP LLC | Contingent Promote Agreement | c/o Pacific Coast Capital Partners LLC<br>1960 E Grand Avenue, Suite 400<br>Attention: Nicholas V Colonna<br>El Segundo , California  90245<br><br>Gibson Dunn and Crutcher LLP<br>333 South Grand Avenue, 49th Floor<br>Attention: D Eric Remensperger<br>Los Angeles, California  90071 |
| RP7A81 | LBHI | PCCP LLC | 04/16/2010 | FIRST AMENDMENT TO CONTINGENT PROMOTE AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND PCCP LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $10,000,000 | First Amendment to Contingent Promote Agreement | c/o Pacific Coast Capital Partners LLC<br>1960 E Grand Avenue, Suite 400<br>Attention: Nicholas V Colonna<br>El Segundo , California  90245<br><br>Gibson Dunn and Crutcher LLP<br>333 South Grand Avenue, 49th Floor<br>Attention: D Eric Remensperger<br>Los Angeles, California  90071 |
| R07B95 | LBHI | PCF LB Syndication Partner | 03/28/2008 | Loan Agreement between LBHI and PCF LB Syndication Partner LLC | Loan Agreement | Lehman Brothers Holdings Inc<br>1271 Avenue of the Americas<br>NY, NY 10020<br>Attn: Commercial Real Estate<br><br>Weil, Gothshal & Manges LLP<br>1395 Brickell Avenue, Ste 1200<br>Miami, FL 33131<br>Attn: Richard A. Morrison |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|-----------------|----------------|
| R07A16 | LBHI as successor to Lehman Brothers Bank | Phoenix Kingdom Mezz1, LLC | 06/01/2007 | Senior Mezzanine Loan Agreement between Phoenix Kingdom Mezz1, LLC and Lehman Brothers Bank, FSB | Senior Mezzanine Loan Agreement | Phoenix Kingdom Mezz1, LLCC/O Bethany Holdings Group, LLCIrvine, California 92614Attention: Greg GarmonFacsimile No.: 949-660-0685Rutan & Tucker61 1 Anton BoulevardCosta Mesa, California 92626Attention: Patrick D. McCalla, Esq, |
| R07A16 | LBHI as successor to Lehman Brothers Bank | Phoenix Kingdom Mezz2, LLC | 06/01/2007 | Junior Mezzanine Loan Agreement between Phoenix Kingdom Mezz2, LLC and Lehman Brothers Bank, FSB | Junior Mezzanine Loan Agreement | Phoenix Kingdom Mezz2, LLC C/O Bethany Holdings Group, LLC Irvine, California 92614 Attention: Greg Garmon Facsimile No.: 949-660-0685<br><br>Rutan & Tucker 61 1 Anton Boulevard Costa Mesa, California 92626 Attention: Patrick D. McCalla, Esq, |
| R07C62 | LBHI | POINT PROPERTY CO LLC AND POINT ANNEX LAND CO LLC | 07/02/2003 | LOAN AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, POINT PROPERTY CO LLC AND POINT ANNEX LAND CO LLC IN THE AMOUNT OF $12,500,000 | Loan Agreement | POINT PROPERTY CO LLC 1045 first avenue, suite 100 Attention: Mr. Daniel Gorge King of Prussia, Pennsylvania 19406<br><br>POINT ANNEX LAND CO LLC 1045 first avenue, suite 100 Attention: Mr. Daniel Gorge King of Prussia, Pennsylvania 19406 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07C62 | LBHI | POINT PROPERTY CO LLC, POINT ANNEX LAND CO LLC | 05/24/2011 | FIRST AMENDMENT TO LOAN AGREEMENT AND OTHER LOAN DOCUMENTS FOR THE POINT AT SARANAC LAKE AMONG POINT PROPERTY CO LLC, POINT ANNEX LAND CO LLC AND LEHMAN BROTHERS HOLDINGS INC | First Amendment to Loan Agreement | Point Property Co llc and Point Annex Land Co llc<br>840 First Avenue, Suite 300<br>Attention: Daniel Gorge<br>King of Prussia, Pennsylvania 19406<br><br>Buchnan Ingersoll and Rooney Pc<br>Two liberty Place, Suite 3200<br>Attention: Brain s North Esq<br>Philadelphia, Pennsylvania 19102-2555 |
| R07D21 | LCPI | PRIII GLENDALE LLC | 05/30/2008 | LOAN AND SECURITY AGREEMENT BETWEEN LEHMAN COMMERCIAL PAPER INC AND PRIII GLENDALE LLC | Loan and Security Agreement | PFIII GLENDALE, LLC<br>C/O The Prudential Insurance Company of America<br>8 Campus Drive<br>Attention: Soultana Reigle<br>Parsippany, NJ 7054<br><br>C/O The Prudential Insurance Company of America<br>8 Campus Drive<br>Attention: Joan N. Hayden, Esq,<br>Parsippany, NJ 7054 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07B95 | LBHI | PROLOGIS NA3 III LP | 07/11/2007 | LOAN AGREEMENT BETWEEN PROLOGIS NA3 III LP AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $965,000,000 | Loan Agreement | c/o ProLogis 4545 Airport Way Attn: General Counsel Denver, Colorado 80239<br><br>Mayer Brown Rowe & Maw 71 S. Wacker Drive Attn: Robert C. Baptista, Jr., Chicago, Illinois 60606 |
| R05B36 | LBHI as successor to Lehman Brothers Bank | Riverside Office 321-329, LLC | 04/13/2005 | Open End Mortgage, Assignment of Leases and Rents and Security Agreement between Riverside Office 321-329, LLC and Lehman Brothers Bank, FSB. | Loan Agreement | Riverside Office 321-329, LLCc/o Investcorp280 Park AvenueNY, NY 10017Attn: John R. FraserGibson Dunn & Crutcher LLP200 Park Avenue, 47th FlNY, NY 10166-0193Attn: David Furman, Esq |
| R07B62 | LCPI | ROSSLYN INVESTORS I | 05/30/2008 | LOAN AND SECURITY AGREEMENT BETWEEN ROSSLYN INVESTORS I LLC AND LEHMAN COMMERCIAL PAPER INC | Loan and Security Agreement | Savanna 10 East 53rd Street, 37th Floor Attention: Nicholas Bienstock New York, New York 10022<br><br>Paul, Hastings, Janofsky & Walker LLP 75 East 55th Street Attention: John Cahill Esq New York, New York 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 05/15/2007 | CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC WITH RESPECT TO LOAN IN THE AMOUNT OF $200,000,000 | Credit Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York  10169

Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York  10019 |
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 10/19/2007 | SECOND AMENDMENT TO CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1101 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC | Amendment to Loan Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York  10169

Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York  10019 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 03/31/2008 | CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC WITH RESPECT TO LOAN IN THE AMOUNT OF $200,000,000 | Credit Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York 10169  Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York 10019 |
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 06/30/2008 | CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC WITH RESPECT TO LOAN IN THE AMOUNT OF $200,000,000 | Credit Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York 10169  Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York 10019 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|---------------|----------------|
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 12/31/2008 | $20,000,000 CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LENDER, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC | Credit Agreement | c/o Monday Properties230 Park AvenueAttention: Anthony WestreichNew York, New York 10169Paul, Weiss, Rifkind, Wharton & Garrison, LLP1285 Avenue of the AmericasAttention: Meredith J. Kane EsqNew York, New York 10019 |
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 12/31/2009 | CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC WITH RESPECT TO LOAN IN THE AMOUNT OF $200,000,000 | Credit Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York  10169 Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York  10019 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 05/15/2007 | FIRST AMENDMENT TO CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1101 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC | Amendment to Loan Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York 10169  Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York 10019 |
| R07B62 | LCPI | ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC | 11/21/2007 | THIRD AMENDMENT TO CREDIT AGREEMENT AMONG ROSSLYN SYNDICATION PARTNERS JV LP, 1812 REIT LLC, 1000-1100 REIT LLC, 1101 REIT LLC, 1701 REIT LLC, 1400 REIT LLC, 1401 REIT LLC, 1501-1515 REIT LLC, 2990 REIT LLC, 1200 REIT LLC, ROSSLYN SERIES LLC, LEHMAN BROTHERS INC AND LEHMAN COMMERCIAL PAPER INC | Amendment to Loan Agreement | c/o Monday Properties 230 Park Avenue Attention: Anthony Westreich New York, New York 10169  Paul, Weiss, Rifkind, Wharton & Garrison, LLP 1285 Avenue of the Americas Attention: Meredith J. Kane Esq New York, New York 10019 |

US_ACTIVE:\43843159\02\58399.0008

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D05 | LBHI | SEAVIEW MONMOUTH LLC | 10/27/2005 | MEZZANINE LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND SEAVIEW MONMOUTH LLC | Mezzanine Loan Agreement | Seaview Square, LLC c/o Investcorp 280 Park Avenue NY, NY 10017 Attn: F. Jonathan Dracos/Brad Seiden<br><br>Paul, Hastings, Janofsky & Walker LLP 75 East 55th St NY, NY 10022 Attn: Eric R. Landau, Esq |
| R07A70 | LBHI as successor to Lehman ALI | SERRANO PARTNERS LLC | 12/28/2006 | MEZZANINE LOAN AGREEMENT BETWEEN SERRANO PARTNERS LLC AND LEHMAN ALI INC WITH RESPECT TO LOAN IN THE AMOUNT OF $19,250,000 | Mezzanine Loan Agreement | Serrano Partners, LLC c/o Lyon Ventures Capital 4901 Birch Street Frank T. Swan, Jr. Newport Beach, California 92660<br><br>Allen Matkins 1900 Main Street, 5th Floor Thomas C. Foster Irvine, California 92614 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R06B08 | PAMI Statler Arms LLC | Statler Arms Garage, LLC | 09/23/2008 | Amendment of License Agreement and Stipulation of Settlement between PAMI Statler Arms LLC and Statler Arms Garage LLC | License Agreement | Herrick, Feinstein LLPOne Gateway CenterNewark, NJ 07102Phone: (973) 274-2055Fax: (973) 274-6424Email geisenberg@herrick.com Attention: Gary F. Eisenberg, Esq.  Benesch Friedlander Coplan & Aronoff LLP200 Public Square, 2300 BP TowerCleveland, Ohio 44114-2378Voice:  (216) 363-4428Fax: (216) 363-4588Mobile: (440) 376-1594dmayo@bfca.com Statler Arms Garage, LLCc/o David Spira1660 49th StreetBrooklyn, New York 11204 Stephen M. O'BryanTaft Stettinius & Hollister, LLP200 Public Square, Suite 3500Cleveland, Ohio 44114-2302 Phone:  (216) 241-2838 Fax:  (216) 241-3707 and a copy to:                        Eric H. Zagrans The Zagrans Law Firm 474 Overbrook Road Elyria, Ohio 44035 |
| R07D40 | LBHI | SWEDBANK AB | 11/18/2009 | CO-LENDER AGREEMENT BETWEEN SWEDBANK AB AND LEHMAN BROTHERS HOLDINGS INC WITH RESPECT TO LOAN IN THE AMOUNT OF $19,075,000 | CoLender | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D40 | LBHI | SWEDBANK AB | 07/01/2010 | FIRST AMENDMENT TO CO-LENDER AGREEMENT BETWEEN SWEDBANK AB NEW YORK BRANCH AND LEHMAN BROTHERS HOLDINGS INC - DOCUMENT IS DATED AS 07-00-2010 | CoLender | No Notice Parties |
| R05B17 | LBHI | SWEETWATER POINT LLC | 11/04/2005 | LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND SWEETWATER POINT LLC IN THE AMOUNT OF $6,000,000 | Loan Agreement | No Notice Parties |
| R05B33 | LBHI | TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, CITY AND COUNTY OF SAN FRANCISCO EMPLOYEES RETIREMENT SYSTEM AND THE OHIO BUREAU OF WORKERS COMPENSATION | 06/17/2005 | SALE AND CO-LENDER AGREEMENT AMONG LEHMAN BROTHERS HOLDINGS INC, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, CITY AND COUNTY OF SAN FRANCISCO EMPLOYEES RETIREMENT SYSTEM AND THE OHIO BUREAU OF WORKERS COMPENSATION | Sale and Co-Lender Agreement | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07C65 | LBHI | Tim William Anderson | 09/07/2007 | SUBORDINATE PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND TIM WILLIAM ANDERSON | Subordinate Pledge Agreement | Moonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn:  Mr. Lee Poole and Mr. Gerrit CormanyTel No. 406-682-6666andMoonlight Basin Ranch L.P.2 Hot Springs Loop RoadEnnis, Montana 59729Attn:  Russ McElyea, Esq.Tel No. 406-682-2225with a copy to:Greenberg Traurig, LLP200 Park AvenueNew York, New York 10166Attn:  Joseph F. Kishel, Esq.Tel No. 212-801-9238 |
| R07C65 | LCPI - successor-in-interest to Lehman Brothers Commercial Bank | Tim William Anderson | 09/07/2007 | PLEDGE AGREEMENT BETWEEN LEHMAN BROTHERS COMMERCIAL BANK AND TIM WILLIAM ANDERSON | Pledge Agreement | Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Mr. Lee Poole and Mr. Gerrit Cormany Tel No. 406-682-6666 and Moonlight Basin Ranch L.P. 2 Hot Springs Loop Road Ennis, Montana 59729 Attn:  Russ McElyea, Esq. Tel No. 406-682-2225 with a copy to: Greenberg Traurig, LLP 200 Park Avenue New York, New York 10166 Attn:  Joseph F. Kishel, Esq. Tel No. 212-801-9238 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07D80 | LBHI | TPG - ONE AMERICAN CENTER LLC | 06/01/2007 | LOAN AGREEMENT BETWEEN TPG-ONE AMERICAN CENTER LLC AND LEHMAN BROTHERS HOLDINGS INC . | Loan Agreement | One American Center A Note Lender: KeyCorp Real Estate Capital Markets 11501 Outlook, Ste. 300 Overland Park, KS 66211 Attention: Anna E. Trigg Telecopier: (877) 379-1625 A Note Borrower: c/o Thomas Properties Group, Inc. City National Plaza 515 South Flower Street, 6th Floor Los Angeles, CA 90071 Attention: Todd L. Merkle Telecopier: (213) 633-4760 Thomas Properties Group 2005 Market Street, Suite 3200 Philadelphia, PA 19130 Attention: Frank Zazera Telecopier: (215) 851-6021 |

US_ACTIVE:\43843159\02\58399.0008

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D80 | LBHI | TPG - ONE AMERICAN CENTER LLC | 07/11/2007 | FIRST AMENDMENT TO LOAN AGREEMENT BETWEEN TPG-ONE AMERICAN CENTER LLC AND LEHMAN BROTHERS HOLDINGS INC. | Amendment to Loan Agreement | One American CenterA Note Lender:KeyCorp Real Estate Capital Markets11501 Outlook, Ste. 300Overland Park, KS 66211Attention: Anna E. TriggTelecopier: (877) 379-1625A Note Borrower:c/o Thomas Properties Group, Inc.City National Plaza515 South Flower Street, 6th FloorLos Angeles, CA 90071Attention: Todd L. MerkleTelecopier: (213) 633-4760Thomas Properties Group2005 Market Street, Suite 3200Philadelphia, PA 19130Attention: Frank ZazeraTelecopier: (215) 851-6021 |
| R02A17 | LBHI | T-REX LLC I | 07/11/2002 | REVOLVING CREDIT AGREEMENT BETWEEN T-REX LLC I AND LEHMAN BROTHERS HOLDINGS INC | Revolving Credit Agreement | T-Rex Capital 747 Third Avenue; 24th Fl Attn: Thomas Mulroy NY, NY 10017 Kaye Scholer LLP 425 Park Avenue Attn: Stephen Gliatta, Esq NY, NY 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07A66 | LBHI | TS New Development LP and Thunder Springs Mezzanine LP | 02/04/2008 | Loan Agreement between TS New Development LP and Thunder Springs Mezzanine LP and LBHI | Loan Agreement | TS New Development LP 302 East Hopkins Avenue Aspen, Colorado 81611<br><br>Thunder Springs Mezzanine LP 302 East Hopkins Avenue Aspen, Colorado 81611<br><br>Orrick, Herrington & Sutcliffe LLP 666 Fifth Avenue New York, New York 10103 Attention: Alan J. Pomerantz, Esq. |
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 09/06/2006 | BUILDING LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $35,000,000 | Building Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York 10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York 10023 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 09/06/2006 | PROJECT LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $50,000,000 | Project Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York 10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York 10023 |
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 09/06/2006 | SENIOR LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $80,000,000 | Senior Loan Agreement | c/o The Related Companies, L.P.60 Columbus CircleAttn: Michael Brenner, Executive Vice-President and Chief Financial OfficerNew York, New York 10023c/o The Related Companies, L.P.60 Columbus CircleAttn: David Speiser, Vice PresidentNew York, New York 10023 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 12/28/2006 | FIRST AMENDMENT TO SENIOR LOAN AGREEMENT BETWEEN LEHMAN COMMERCIAL PAPER INC, LEHMAN BROTHERS HOLDINGS INC, TUXEDO RESERVE OWNER LLC AND TUXEDO TPA OWNER LLC | Amendment to Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York  10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York  10023 |
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 01/14/2008 | SECOND AMENDMENT TO SENIOR LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $48,000,000 | Amendment to Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York  10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York  10023 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 12/28/2006 | FIRST AMENDMENT TO BUILDING LOAN AGREEMENT AMONG LEHMAN COMMERCIAL PAPER INC, LEHMAN BROTHERS HOLDINGS INC, TUXEDO RESERVE OWNER LLC AND TUXEDO TPA OWNER LLC | Amendment to Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York 10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York 10023 |
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 02/29/2008 | SECOND AMENDMENT TO BUILDING LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $40,000,000 | Amendment to Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York 10023<br><br>c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York 10023 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 12/28/2006 | FIRST AMENDMENT TO PROJECT LOAN AGREEMENT BETWEEN LEHMAN COMMERCIAL PAPER INC, LEHMAN BROTHERS HOLDINGS INC, TUXEDO RESERVE OWNER LLC AND TUXEDO TPA OWNER LLC IN THE AMOUNT OF $50,000,000 | Amendment to Loan Agreement | c/o The Related Companies, L.P. 60 Columbus Circle Attn: Michael Brenner, Executive Vice-President and Chief Financial Officer New York, New York 10023  c/o The Related Companies, L.P. 60 Columbus Circle Attn: David Speiser, Vice President New York, New York 10023 |
| R08D44 | LCPI/LBHI | TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC | 01/14/2008 | SECOND AMENDMENT TO PROJECT LOAN AGREEMENT AMONG TUXEDO RESERVE OWNER LLC, TUXEDO TPA OWNER LLC, LEHMAN COMMERCIAL PAPER INC AND LEHMAN BROTHERS HOLDINGS INC IN THE AMOUNT OF $25,000,000 | Amendment to Loan Agreement | c/o The Related Companies, L.P.60 Columbus CircleAttn: Michael Brenner, Executive Vice-President and Chief Financial OfficerNew York, New York 10023c/o The Related Companies, L.P.60 Columbus CircleAttn: David Speiser, Vice PresidentNew York, New York 10023 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07A55 | LBHI | W2005 KAPALUA GENGATE HOTEL REALTY LLC | 03/27/2007 | CONSTRUCTION LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND W2005 KAPALUA GENGATE HOTEL REALTY LLC IN THE AMOUNT OF $232,426,079 | Construction Loan Agreement | c/o Whitehall Street Global Real Estate Limited Partnership 85 Broad Street, 10th Floor Attention: Whitehall Chief Financial Officer New York, New York 10004<br><br>Sullivan & Cromwell LLP 125 Broad Street Attention: Anthony J. Colletta, Esq. New York, New York 10004 |
| R07D94 | LBHI | W2007 GOLUB JHC SUB MEZZ LLC | 01/19/2007 | MEZZANINE C LOAN AGREEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC AND W2007 GOLUB JHC SUB MEZZ LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $220,000,000 | Loan Agreement | c/o Whitehall Street Global Real Estate Limited Partnership 2007 85 Broad Street, 10th Floor Attn: Whitehall Chief Financial Officer New York, New York 10004<br><br>c/o Golub & Company LLC 625 N. Michigan Avenue, Suite 2000 Attn: Lee Golub Chicago, Illinois 60611<br><br>Sullivan & Cromwell LLP 125 Broad Street Attn: Anthony Colletta, Esq. New York, New York 10004 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D19 | LBHI as successor to Lehman Brothers Bank | Walton CW Mezz Delta, LLC, Walton CW Mezz Delta, NR and Walton CW Mezz Delta CA LLC | 11/20/2007 | Loan Agreement (Mezzanine D Loan) Between Walton CW Mezz Delta, LLC, Walton CW Mezz Delta, NR and Walton CW Mezz Delta CA LLC and Barclays Capital Real Estate Inc., Lehman Brother Bank, FSB and Goldman Sach Mortgage Company | Loan Agreement (Mezz D Loan) | C/O Walton Street Capital, L.L.C. 900 North Michigan Avenue Suite 1900 Chicago, Illinois 606 1 1 Attention: Luke Massar Telephone: (3 12) 91 5-2871 Facsimile: (3 12) 91 5-2901

Pircher, Nichols & Meeks 900 North Michigan Avenue Suite 1050 Chicago, Illinois 6061 1 Attention: Real Estate Notices (MJMIJMV) Telephone: (3 12) 91 5-3 1 12 Facsimile: (3 12) 915-3348 |
| R07D19 | LBHI as successor to Lehman Brothers Bank | WALTON CW MEZZ ETA, L.L.C.,WALTON CW MEZZ ETA NR, L.L.C., andWALTON CW MEZZ ETA CA, L.L.C., | 11/20/2007 | LOAN AGREEMENT (MEZZANINE G LOAN)BetweenWALTON CW ETA GAMMA, L.L.C.,WALTON CW ETA GAMMA NR, L.L.C., andWALTON CW ETA GAMMA CA, L.L.C.,collectively as BorrowerAndBARCLAYS CAPITAL REAL ESTATE INC.,LEHMAN BROTHERS BANK, FSB andGOLDMAN SACHS MORTGAGE COMPANY,collectively as Lender | Loan Agreement | C/O Walton Street Capital, L.L.C.900 North Michigan AvenueSuite 1900Chicago, Illinois 606 1 1Attention: Luke MassarTelephone: (3 12) 91 5-2871Facsimile: (3 12) 91 5-2901Pircher, Nichols & Meeks900 North Michigan AvenueSuite 1050Chicago, Illinois 6061 1Attention: Real Estate Notices (MJMIJMV)Telephone: (3 12) 91 5-3 1 12Facsimile: (3 12) 915-3348 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D19 | LBHI as successor to Lehman Brothers Bank | WALTON CW MEZZ GAMMA, L.L.C., WALTON CW MEZZ GAMMA NR, L.L.C., and WALTON CW MEZZ GAMMA CA, L.L.C., | 11/20/2007 | LOAN AGREEMENT (MEZZANINE C LOAN) Between WALTON CW MEZZ GAMMA, L.L.C., WALTON CW MEZZ GAMMA NR, L.L.C., and WALTON CW MEZZ GAMMA CA, L.L.C., collectively as Borrower And BARCLAYS CAPITAL REAL ESTATE INC., LEHMAN BROTHERS BANK, FSB and GOLDMAN SACHS MORTGAGE COMPANY, collectively as Lender | Loan Agreement | C/O Walton Street Capital, L.L.C. 900 North Michigan Avenue Suite 1900 Chicago, Illinois 606 1 1 Attention: Luke Massar Telephone: (3 12) 91 5-2871 Facsimile: (3 12) 91 5-2901  Pircher, Nichols & Meeks 900 North Michigan Avenue Suite 1050 Chicago, Illinois 6061 1 Attention: Real Estate Notices (MJMIJMV) Telephone: (3 12) 91 5-3 1 12 Facsimile: (3 12) 915-3348 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|---|---|
| R07D19 | LBHI as successor to Lehman Brothers Bank | WALTON CW MEZZ ZETA, L.L.C., WALTON CW MEZZ ZETA NR, L.L.C., and WALTON CW MEZZ ZETA CA, L.L.C., | 11/20/2007 | LOAN AGREEMENT (MEZZANINE F LOAN) Between WALTON CW MEZZ ZETA, L.L.C., WALTON CW MEZZ ZETA NR, L.L.C., and WALTON CW MEZZ ZETA CA, L.L.C., collectively as Borrower And BARCLAYS CAPITAL REAL ESTATE INC., LEHMAN BROTHERS BANK, FSB and GOLDMAN SACHS MORTGAGE COMPANY, collectively as Lender | Loan Agreement | C/O Walton Street Capital, L.L.C. 900 North Michigan Avenue Suite 1900 Chicago, Illinois 606 1 1 Attention: Luke Massar Telephone: (3 12) 91 5-2871 Facsimile: (3 12) 91 5-2901 Pircher, Nichols & Meeks 900 North Michigan Avenue Suite 1050 Chicago, Illinois 6061 1 Attention: Real Estate Notices (MJMIJMV) Telephone: (3 12) 91 5-3 1 12 Facsimile: (3 12) 915-3348 |
| R07D37 | LCPI | WALTON PHBC SR MEZZ INVESTORS V LLC, WALTON PHBC JR MEZZ INVESTORS V | 07/01/2008 | LOAN AND SECURITY AGREEMENT AMONG WALTON PHBC SR MEZZ INVESTORS V LLC, WALTON PHBC JR MEZZ INVESTORS V LLC AND LEHMAN COMMERCIAL PAPER INC IN THE AMOUNT OF $31,751,697.31 | Loan and Security Agreement | c/o Walton Street Capital 900 North Michigan Avenue, Suite 1900 Attention: Luke G. Massar/K. Jay Weaver Chicago, IL 60611 Paul Hastings Janofsky & Walker LLP 75 East 55th Street Attention: Robert J. Grados, Esq. New York, New York 10022 |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R06B31 | LBHI as successor to Lehman Brothers Bank | WALTON SMITH INVESTORS V LLC AND WALTON FLORENCE INVESTORS V LLC | 09/28/2006 | FIRST AMENDMENT TO LOAN AGREEMENT AMONG LEHMAN BROTHERS BANK FSB, WALTON SMITH INVESTORS V LLC AND WALTON FLORENCE INVESTORS V LLC WITH RESPECT TO LOAN IN THE AMOUNT OF $42,500,000 | First Amendment to Loan Agreement | Walton Smith Investors V, LLCc/o Walton Street Capital, LLC900 North Michigan Avenue, Ste 1900Chicago, IL 60611Attn: Luke MassarWalton Florence Investors V, LLCc/o Walton Street Capital, LLC900 North Michigan Avenue, Ste 1900Chicago, IL 60611Attn: Luke MassarPircher, Nichols & Meeks1925 Century Park East, Ste 1700Los Angeles, CA 90057Attn: Real Estate Notices (SCS/ADK) |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R06B31 | LBHI as successor to Lehman Brothers Bank | WALTON SMITH INVESTORS V LLC, WALTON FLORENCE INVESTORS V LLC | 04/06/2006 | LOAN AGREEMENT AMONG WALTON SMITH INVESTORS V LLC, WALTON FLORENCE INVESTORS V LLC AND LEHMAN BROTHERS BANK FSB IN THE AMOUNT OF $42,500,000 | Loan Agmt | Walton Smith Investors V, LLC c/o Walton Street Capital, LLC 900 North Michigan Avenue, Ste 1900 Chicago, IL 60611 Attn: Luke Massar

Walton Florence Investors V, LLC c/o Walton Street Capital, LLC 900 North Michigan Avenue, Ste 1900 Chicago, IL 60611 Attn: Luke Massar

Pircher, Nichols & Meeks 1925 Century Park East, Ste 1700 Los Angeles, CA 90057 Attn: Real Estate Notices (SCS/ADK) |
| R06B27 | LBHI | Windsor Capital Corp | 12/15/2005 | Letter Agreement Regarding Collateral between LBHI and Windsor Capital Corp regarding revolving line of credit in the amount of $5,000,000 | Letter Agreement | Windsor Capital Corp 1441 Brickell Avenue, Ste 1001 Miami, FL 33131 |
| R05B41 | LBHI | Wolf Greenville B, LLC and FRI Greenville Mezz | 07/27/2005 | Mezzanine Loan Agreement among Lehman Brothers Holdings Inc, Wolf Greenville B, LLC and FRI Greenville Mezz | Mezzanine Loan Agreement | No Notice Parties |

| Deal ID | Debtor[1] | Counterparty | Date | Title of Agreement | Description[2] | Notice Address |
|---------|-----------|--------------|------|--------------------|----------------|----------------|
| R07B11 | LBHI | WSG WEST PALM BEACH DEVELOPMENT LLC | 08/30/2007 | LOAN AGREEMENT BETWEEN WSG WEST PALM BEACH DEVELOPMENT LLC AND LEHMAN BROTHERS HOLDINGS INC | Loan Agreement | c/o WSG Development Company 400 Arthur Godfry Road, Suite 200 Attention: Eric Sheppard Miami Beach, Florida  33140<br><br>Berman Rennert Vogel & Mandler, P.A. 100 Southeast Second Street, Suite 2900 Attention: Wendy Beck, Esq. Miami, Florida  33131 |
| R07D35 | LBHI | WTCC AUSTIN MEZZ V LP | 08/09/2007 | LOAN AGREEMENT FOR MEZZANINE A LOAN BETWEEN LEHMAN BROTHERS HOLDINGS INC AND WTCC AUSTIN MEZZ V LP | Loan Agreement | WTCC Austin Mezz V L.P C/O Walton Street Capital, L.L.C 900 North Michigan Avenue Suite 1900 Attention: Luke Massar Chicago, Illinois  60611<br><br>Pircher, Nichols & Meeks 1925 Century Park East Suite 1700 Attention: Real Estate Notices (SCS/ADWWBT) Los Angeles, California  90067 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Angela Dawn Boyer | Deed Restricted Contract, dated as of October 14, 2008 | Residence Purchase & Sale Agreement for Lot 300 | 1202 Cooper Avenue, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Board of Garfield County Commissioners | Government Agreement, dated as of October 20, 2008 | Deed Restriction & Agreement | c/o Building & Planning Director, 108 8th Street, Suite 401, Glennwood Springs, CO 81601 |
| LB Rose Ranch LLC | Garfield County | Government Agreement | Zone District / Comprehensive Plan Map Amendment | c/o Building & Planning Director, 108 8th Street, Suite 401, Glennwood Springs, CO 81601 |
| LB Rose Ranch LLC | A.D.R.A. LLC | Membership Agreement | Membership Agreement | 3329 Diablo Way, Castle Rock, CO 80108 |
| LB Rose Ranch LLC | Robert Adams | Membership Agreement, dated as of May 23, 2007 | Membership Agreement | 151 Laird Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Brian Albonge, Michael Cryan & Gary Grey | Membership Agreement, dated as of March 5, 2006 | Membership Agreement | 2949 Heavenly Ridge, Thousand Oaks, CA 91362 |
| LB Rose Ranch LLC | Judy Alexander | Membership Agreement, dated as of January 31, 2006 | Membership Agreement | 1894 Hwy 50 East #4, PMB 207, Carson City, NV 89701<br><br>and<br><br>130 N. Spring Street, Aspen, CO 81611 |
| LB Rose Ranch LLC | Cheryl & Karla Allen | Membership Agreement, dated as of April 1, 2008 | Membership Agreement | 100 S. Spring St., Aspen, CO 81611 |
| LB Rose Ranch LLC | Mark Asher | Membership Agreement, dated as of August 10, 2007 | Membership Agreement | 1006 River Bend Way Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Suzanne Atkinson & Stephen Ornowski | Membership Agreement, dated as of July 24, 2006 | Membership Agreement | 100 N. 8th Street, Aspen, CO 81611 |

---

[3] This description is provided for informational purposes only. To the extent there is an inconsistency between this description and the contract, the contract governs.

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|--------------|--------------------|---------------|----------------|
| LB Rose Ranch LLC | Rick Balentine | Membership Agreement, dated as of October 17, 2006 | Membership Agreement | 533 E. Hopkinton Ave., Aspen, CO 81611<br><br>and<br><br>P.O. Box 11656, Aspen, CO 81612 |
| LB Rose Ranch LLC | Steven Beattie | Membership Agreement, dated as of May 30, 2003 | Membership Agreement | 74 Fairway Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ryan Beckman | Membership Agreement, dated as of April 8, 2008 | Membership Agreement | 311 Sunflower Loop, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Michael Bennett | Membership Agreement, dated as of April 4, 2006 | Membership Agreement | 158 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Dan Blake | Membership Agreement, dated as of June 1, 2007 | Membership Agreement | P.O. Box 1443, Glenwood Springs, CO 81602 |
| LB Rose Ranch LLC | Justin Blanke & Devon Arnold | Membership Agreement, dated as of April 26, 2008 | Membership Agreement | 231 Robinson St. #210, Basalt, CO 81621 |
| LB Rose Ranch LLC | Wendy & Anthony Bontempo | Membership Agreement, dated as of May 10, 2008 | Membership Agreement | 4 Eagle Claw Circle, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | David Ice & Lisa Bontempo | Membership Agreement, dated as of April 10, 2006 | Membership Agreement | 20 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Roger Brown | Membership Agreement, dated as of July 1, 2007 | Membership Agreement | 241 Dolores Circle, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Tom Buck | Membership Agreement, dated as of May 19, 2007 | Membership Agreement | 5089 Orchard Court, Golden CO 80403 |
| LB Rose Ranch LLC | Gerald Burk | Membership Agreement, dated as of May 18, 2008 | Membership Agreement | 608 Harvard Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Matthew Burt | Membership Agreement, dated as of July 9, 2007 | Membership Agreement | 1195 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Allan Butler | Membership Agreement, dated as of May 19, 2003 | Membership Agreement | 33 Woodruff Place, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Kirk Cheney | Membership Agreement, dated as of April 24, 2007 | Membership Agreement | 2902 CR 113, Carbondale, CO 81623 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|--------------|-------------------|----------------|----------------|
| LB Rose Ranch LLC | Ari Chopra & Bonnie Sihler | Membership Agreement, dated as of May 9, 2007 | Membership Agreement | 910 River Bend Way, Glenwood Springs, CO 81601<br><br>and<br><br>701 Grand Ave. #301, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ed Cocoran | Membership Agreement, dated as of May 31, 2008 | Membership Agreement | 1114 Westlook Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Jared Coe | Membership Agreement, dated as of August 7, 2008 | Membership Agreement | 763 River Bend Way Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | William Comer | Membership Agreement, dated as of December 9, 2005 | Membership Agreement | 203 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Richard Condon & Rosemary Knox | Membership Agreement, dated as of April 29, 2003 | Membership Agreement | P.O. Box 2084, Basalt, CO 81621 |
| LB Rose Ranch LLC | George Conrades | Membership Agreement, dated as of March 29, 2007 | Membership Agreement | c/o CNS Partners LLC P.O. Box 380199, Cambridge, MA 2238 |
| LB Rose Ranch LLC | Robert & Robin Cooke | Membership Agreement, dated as of June 26, 2008 | Membership Agreement | 4312 Greeley, Houston, TX 77006 |
| LB Rose Ranch LLC | Vaughn & Suzanne Counts | Membership Agreement, dated as of January 25, 2006 | Membership Agreement | 719 Oxford St., Houston, TX 77007-1608 |
| LB Rose Ranch LLC | Thisha McBridge | Membership Agreement, dated as of July 18, 2006 | Membership Agreement | 91 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Rufus Crockett | Membership Agreement, dated as of May 9, 2007 | Membership Agreement | P.O. Box 3837, Aspen, CO 81612 |
| LB Rose Ranch LLC | Rusty Crossland | Membership Agreement, dated as of May 31, 2003 | Membership Agreement | 1061 Overlook Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | James C. Crowley Jr. & Audrey Crowley | Membership Agreement, dated as of August 3, 2005 | Membership Agreement | 746 Silver Shores Road, Vero Beach, FL 32963 |
| LB Rose Ranch LLC | Jennifer Cuny & Ean Steele | Membership Agreement, dated as of April 2, 2007 | Membership Agreement | 715 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Steven & Elise D'Amico | Membership Agreement, dated as of July 3, 2007 | Membership Agreement | 1726 Blackhawk Drive, Rio Rancho, NM 87144 |

US_ACTIVE:\43843159\02\58399.0008

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|--------------|-------------------|----------------|----------------|
| LB Rose Ranch LLC | Kristin L. Davis | Membership Agreement, dated as of July 17, 2006 | Membership Agreement | 136 Silver Mountain Dr., Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | The Deanna Rochel Trust | Membership Agreement, dated as of June 10, 2007 | Membership Agreement | 263 Dolores Circle, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Jay & Kimberly Denton | Membership Agreement, dated as of May 11, 2007 | Membership Agreement | 157 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Raymond Dittamore | Membership Agreement, dated as of May 5, 2006 | Membership Agreement | P.O. Box 2050, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ronald Dozoretz | Membership Agreement, dated as of July 10, 2006 | Membership Agreement | 240 Corporate Blvd.,. Norfolk, VA 23502 |
| LB Rose Ranch LLC | Cornelius Dupre II | Membership Agreement, dated as of June 29, 2005 | Membership Agreement | 314 North Post Oak Lane, Houston, TX 77024 |
| LB Rose Ranch LLC | John Eaton | Membership Agreement, dated as of June 4, 2007 | Membership Agreement | 48 Hopi, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Gayle Embrey | Membership Agreement, dated as of August 7, 2007 | Membership Agreement | 414 Elk Circle, Basalt, CO 81621 |
| LB Rose Ranch LLC | Lauren Embrey | Membership Agreement, dated as of August 6, 2007 | Membership Agreement | 4142 Prescott Ave., Dallas, TX 75219 |
| LB Rose Ranch LLC | Scott Fenske | Membership Agreement, dated as of May 3, 2006 | Membership Agreement | PO Box 1323, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Martin Finklestein & Susan Frazier | Membership Agreement, dated as of June 5, 2006 | Membership Agreement | 838 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Mike Flack | Membership Agreement | Membership Agreement | P.O. Box 266, Woody Creek, CO 81656 |
| LB Rose Ranch LLC | Robert Frazho & Andrea Nederveld | Membership Agreement, dated as of June 10, 2007 | Membership Agreement | 408 Miranda Ct., Grand Junction, CO 81503 |
| LB Rose Ranch LLC | Brian L. & Valerie Fuller | Membership Agreement, dated as of October 11, 2005 | Membership Agreement | 65 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Jon Ray Gardner | Membership Agreement, dated as of August 4, 2008 | Membership Agreement | 787 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Robert Gibbons | Membership Agreement, dated as of July 21, 2006 | Membership Agreement | P.O. Box 2058, Glenwood Springs, CO 81602 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Alan Gibson & Robin Mueller | Membership Agreement, dated as of July 27, 2006 | Membership Agreement | 191 Silver Mountain Drive, Glenwood, Springs CO 81601<br><br>and<br><br>385 Sycamore Ave., Claremont, CA 91711 |
| LB Rose Ranch LLC | Carmela Gillenwater | Membership Agreement, dated as of August 30, 2008 | Membership Agreement | 68 Golden Bear Drive, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Darbe Gosda | Membership Agreement, dated as of May 21, 2007 | Membership Agreement | 3123 Castlewood, Houston, TX 77025 |
| LB Rose Ranch LLC | Mark Gould, Jr. | Membership Agreement, dated as of April 5, 2008 | Membership Agreement | 474 Westbank Road, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Giora Hahn | Membership Agreement, dated as of May 10, 2007 | Membership Agreement | 160 River Oaks Lane, Basalt, CO 81621 |
| LB Rose Ranch LLC | Jeffrey Hale | Membership Agreement, dated as of May 4, 2006 | Membership Agreement | 59 Wild Rose Court, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Trenton Harbour | Membership Agreement, dated as of July 28, 2007 | Membership Agreement | 39826 278 Way S.E., Enumclaw, WA 98022<br><br>and<br><br>18551 N. 83rd., Glendale, AZ 85308 |
| LB Rose Ranch LLC | Troy Harbour | Membership Agreement, dated as of May 27, 2007 | Membership Agreement | 0268 Red Bluff Vista, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Julian Hardaker | Membership Agreement, dated as of April 5, 2008 | Membership Agreement | 3722 CR 115, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bill Hegberg | Membership Agreement, dated as of July 3, 2006 | Membership Agreement | 140 River Oaks Lane, Basalt, CO 81621 |
| LB Rose Ranch LLC | Heide Heidepriem | Membership Agreement, dated as of September 28, 2006 | Membership Agreement | 118 Geneva Drive, Sedona, AZ 86336 |
| LB Rose Ranch LLC | Thomas & Susan Henderson | Membership Agreement, dated as of May 1, 2007 | Membership Agreement | 922 Red Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Paul & Eden Henschel | Membership Agreement, dated as of September 2, 2007 | Membership Agreement | 171 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Roger Hindman | Membership Agreement, dated as of January 23, 2003 | Membership Agreement | 120 Pioneer Court, Carbondale, CO 81623 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Anne Hodgson | Membership Agreement, dated as of September 6, 2005 | Membership Agreement | 177 Silver Mountain Drive, Glenwood, Springs CO 81601 |
| LB Rose Ranch LLC | Bill Huffman & Karen Flammand | Membership Agreement, dated as of January 28, 2003 | Membership Agreement | 102 Fairway Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Elizabeth Hunter | Membership Agreement, dated as of June 26, 2008 | Membership Agreement | P.O. Box 5098, Snowmass Village, CO 81615 |
| LB Rose Ranch LLC | Rudi Idzojtic | Membership Agreement, dated as of May 8, 2004 | Membership Agreement | 177 Meadow Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Paul Incze | Membership Agreement, dated as of October 6, 2006 | Membership Agreement | 48 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | James Vidakovich Revocable Trust | Membership Agreement, dated as of July 27, 2007 | Membership Agreement | 3575 Cahuenga Blvd., West Los Angeles, CA 90068 |
| LB Rose Ranch LLC | Daniel & Karen Johnson | Membership Agreement, dated as of May 6, 2005 | Membership Agreement | 441 Lewis Lane, Basalt CO 81621 |
| LB Rose Ranch LLC | Trent Johnson | Membership Agreement, dated as of May 31, 2008 | Membership Agreement | 2336 S. Falcon Point Ct., Grand Junction, CO 81503 |
| LB Rose Ranch LLC | Erik Johnson | Membership Agreement, dated as of July 10, 2006 | Membership Agreement | 403 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Cleve Johnson & Anneke Scholten | Membership Agreement, dated as of June 13, 2007 | Membership Agreement | P.O. Box 1520, Basalt, CO 81621 |
| LB Rose Ranch LLC | Adam Juul | Membership Agreement, dated as of April 13, 2007 | Membership Agreement | 290 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | George Kelly | Membership Agreement, dated as of April 4, 2007 | Membership Agreement | 96 Bent Grass Drive, Glenwood Spring, CO 81601 |
| LB Rose Ranch LLC | E.G. Kendrick | Membership Agreement, dated as of August 1, 2007 | Membership Agreement | 3964 Paradise View Dr., Paradise Valley, AZ 85253 |
| LB Rose Ranch LLC | Lynn Kleager | Membership Agreement, dated as of July 17, 2005 | Membership Agreement | 214 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Jeffrey Knable | Membership Agreement, dated as of August 2, 2005 | Membership Agreement | 43 Wild Rose Drive, Glenwood Springs, CO 81623 |
| LB Rose Ranch LLC | Steven Knous | Membership Agreement, dated as of June 23, 2005 | Membership Agreement | 575 Riverside Drive, Basalt, CO 81621 |
| LB Rose Ranch LLC | Kurt Korn | Membership Agreement, dated as of July 13, 2006 | Membership Agreement | 149 Wild Rose Drive, Glenwood Springs, CO 81601 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Kurt & Helen Kornreich | Membership Agreement, dated as of January 23, 2006 | Membership Agreement | 73 Blue River Drive, Palm Desert, CA 92211 |
| LB Rose Ranch LLC | Roget & Tonya Kuhn | Membership Agreement, dated as of September 4, 2008 | Membership Agreement | 303 1/2 E Main St., Aspen, CO 81611<br><br>and<br><br>130 Pitkin Mesa Dr., Aspen, CO 81611 |
| LB Rose Ranch LLC | Cary Lakeman & Leslie Way | Membership Agreement, dated as of September 9, 2005 | Membership Agreement | 179 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Charlie Lawson & Sarahliz Braugh | Membership Agreement, dated as of May 15, 2006 | Membership Agreement | 126 White Peaks Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Mark Layton | Membership Agreement, dated as of June 23, 2007 | Membership Agreement | 1677 E. Ponto Lake Rd. NW, Backus, MD 56435 |
| LB Rose Ranch LLC | Leigh Letson | Membership Agreement, dated as of June 23, 2007 | Membership Agreement | P.O. Box 304, Basalt, CO 81621 |
| LB Rose Ranch LLC | Gregg Mackey | Membership Agreement, dated as of May 22, 2008 | Membership Agreement | P.O. Box 398, Basalt, CO 81621 |
| LB Rose Ranch LLC | Michael Marienthal | Membership Agreement, dated as of October 28, 2005 | Membership Agreement | 406 River Bend Way, Glenwood Springs, Co 81601 |
| LB Rose Ranch LLC | Gregorio Martinez | Membership Agreement, dated as of June 4, 2007 | Membership Agreement | 1155 Vitos Way, Carbondale, CO 81623 |
| LB Rose Ranch LLC | David Matheson | Membership Agreement, dated as of July 1, 2006 | Membership Agreement | 910 Mt. Sopris Dr., Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | James & Susan McClelland | Membership Agreement, dated as of November 4, 2005 | Membership Agreement | 73 Wildrose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Mike McCoy | Membership Agreement, dated as of June 15, 2007 | Membership Agreement | 904 Meadow Run, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Michael McFerrin | Membership Agreement, dated as of July 7, 2006 | Membership Agreement | 117 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | John McKay | Membership Agreement, dated as of June 30, 2006 | Membership Agreement | 70 Greystone Trail, Evergreen, CO 80439<br><br>and<br><br>212 Greystone Rd., Evergreen, CO 80439 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|--------------|--------------------|----------------|----------------|
| LB Rose Ranch LLC | Douglas McKay & Sue Cherry | Membership Agreement, dated as of November 1, 2007 | Membership Agreement | 6 McChesney Court, West Orange, NJ 07052 |
| LB Rose Ranch LLC | Douglas Melnick & Marisa Sportelli | Membership Agreement, dated as of May 13, 2007 | Membership Agreement | 4893 Via Bella, Newbury Park, CA 91320 |
| LB Rose Ranch LLC | Clement Michel | Membership Agreement, dated as of July 12, 2006 | Membership Agreement | 619 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Chadwick & Sarah Mickschl | Membership Agreement, dated as of June 3, 2007 | Membership Agreement | 691 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Richard Moore | Membership Agreement, dated as of March 27, 2006 | Membership Agreement | 15 White Peaks Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Joseph Morovits & Linda Lewis | Membership Agreement, dated as of September 4, 2006 | Membership Agreement | 398 Caballo, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Stephanie Mosher | Membership Agreement, dated as of June 30, 2006 | Membership Agreement | 47 White Peaks Lane, Glenwood Springs, CO 81601 and PO Box 8488, Aspen, CO 81612 |
| LB Rose Ranch LLC | Kenneth Murphy | Membership Agreement, dated as of August 17, 2006 | Membership Agreement | 595 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | David Nelson | Membership Agreement, dated as of October 12, 2006 | Membership Agreement | 8530 Congressional Drive, Tallahassee, FL 32312 |
| LB Rose Ranch LLC | Patrick Nesbitt | Membership Agreement, dated as of August 10, 2006 | Membership Agreement | 205 Lambert Rd., Carpinteria, CA 93013 |
| LB Rose Ranch LLC | Stephen & Kori New | Membership Agreement, dated as of July 17, 2006 | Membership Agreement | 99 White Peaks Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Barbara New | Membership Agreement, dated as of May 11, 2008 | Membership Agreement | 739 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ryan Newberry & Eva Jankovsky | Membership Agreement, dated as of June 22, 2007 | Membership Agreement | 120 Bent Grass Drive, Glenwood Springs, CO 81601 and 120 Turtle Cove, Aspen, CO 81611 |
| LB Rose Ranch LLC | Joan Norris | Membership Agreement, dated as of May 15, 2007 | Membership Agreement | 100 E. Cooper Street, Aspen, CO 81611 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|-------------|-------------------|---------------|----------------|
| LB Rose Ranch LLC | David Ockers | Membership Agreement, dated as of July 31, 2007 | Membership Agreement | 2701 Midland Ave. #613, Glenwood Springs, CO 81601<br><br>and<br><br>499 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Siri Olsen | Membership Agreement, dated as of May 1, 2007 | Membership Agreement | Neslo Properties, LLC, 6800 Highway 82, Suite 4, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Michael Olson | Membership Agreement, dated as of June 1, 2007 | Membership Agreement | 18 Sunrise Court, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bryce Olson | Membership Agreement, dated as of July 8, 2006 | Membership Agreement | 325 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Todd Olson | Membership Agreement, dated as of May 4, 2007 | Membership Agreement | 4510 Ginger Ct., Castle Rock, CO 80109 |
| LB Rose Ranch LLC | Jeffrey Orsulak | Membership Agreement, dated as of May 24, 2008 | Membership Agreement | 361 Robinson St. #340, Basalt, CO 81621 |
| LB Rose Ranch LLC | Charles Parker | Membership Agreement, dated as of March 22, 2004 | Membership Agreement | 54 Huckleberry Hill Road, New Canaan, CT 06840 |
| LB Rose Ranch LLC | Steve Pawlak | Membership Agreement, dated as of June 19, 2007 | Membership Agreement | 643 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Chris Pearce | Membership Agreement, dated as of August 17, 2006 | Membership Agreement | 1114 Borthwick, Centralia, WA 98531 |
| LB Rose Ranch LLC | Federico Pena | Membership Agreement, dated as of June 22, 2007 | Membership Agreement | 580 Main St., Suite 100, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Robert F. Petts | Membership Agreement, dated as of July 25, 2005 | Membership Agreement | P.O. Box 963, Glenwood Springs, CO 81602<br><br>and<br><br>196 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Etienne Pienaar & Shannon Francis | Membership Agreement, dated as of December 5, 2005 | Membership Agreement | 150 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Cherly Pitout | Membership Agreement, dated as of June 1, 2007 | Membership Agreement | 365 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Dave Plathe & Stephenie Riggs | Membership Agreement, dated as of July 24, 2008 | Membership Agreement | 364 Red Bluff Vista, Glenwood Springs, CO 81601 |

US_ACTIVE:\43843159\02\58399.0008

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|-------------|-------------------|-------------|----------------|
| LB Rose Ranch LLC | Andre Pontin | Membership Agreement, dated as of April 17, 2007 | Membership Agreement | 31 White Peaks Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bill Poss | Membership Agreement, dated as of April 19, 2006 | Membership Agreement | 605 E. Main St., Aspen, CO 81611<br><br>and<br><br>849 Mountain Laurel Drive, Aspen, CO 81611 |
| LB Rose Ranch LLC | Mathew Price | Membership Agreement, dated as of August 18, 2006 | Membership Agreement | P.O. Box 12176, Aspen, CO 81612 |
| LB Rose Ranch LLC | John Putnam | Membership Agreement, dated as of April 3, 2006 | Membership Agreement | 131 Fairway Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Brian Radtke | Membership Agreement, dated as of April 3, 2006 | Membership Agreement | 345 Westbank Road, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Larry Rainwater | Membership Agreement, dated as of September 25, 2008 | Membership Agreement | 3814 N. 95th St., Omaha, NE 68134 |
| LB Rose Ranch LLC | Alvin & Marianne Rakowski | Membership Agreement, dated as of April 19, 2006 | Membership Agreement | 212 Vaquero Road, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Thomas Rand | Membership Agreement, dated as of June 1, 2004 | Membership Agreement | 6305 Friendship Court, Bethesda, MD 20817 |
| LB Rose Ranch LLC | Mike Rand & Lenka Perutkova | Membership Agreement, dated as of April 2, 2007 | Membership Agreement | P.O. Box 220, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Denver & Marcia Randol | Membership Agreement, dated as of April 28, 2006 | Membership Agreement | 66 Silver Mountain Dr., Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Dale Rands | Membership Agreement, dated as of June 8, 2005 | Membership Agreement | 121 W. Long Lake Road, Suite 310, Bloomfield Hills, MI 48304 |
| LB Rose Ranch LLC | Stan Redfern & Jacquie Wheeler | Membership Agreement, dated as of May 6, 2007 | Membership Agreement | P.O. Box 2976, Aspen, CO 81612 |
| LB Rose Ranch LLC | Robert & Donna Reeds | Membership Agreement, dated as of September 9, 2008 | Membership Agreement | 4274 Fanning Place, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Brooke & Jennifer Robinson | Membership Agreement June 3, 2008 | Membership Agreement | 316 Red Bluff Vista, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Karla & Doug Rohrbaugh | Membership Agreement, dated as of June 9, 2007 | Membership Agreement | 241 Deer Run, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Neil Ross & Christine Amini | Membership Agreement, dated as of September 24, 2006 | Membership Agreement | 100 South Spring St., Aspen, CO 81611 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|-------------|--------------------|---------------|----------------|
| LB Rose Ranch LLC | Rota & Amy Njord | Membership Agreement, dated as of August 5, 2007 | Membership Agreement | 296 S 3rd St., Carbondale, CO 81623 |
| LB Rose Ranch LLC | Nikola Sanic | Membership Agreement, dated as of June 21, 2008 | Membership Agreement | 129 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Daniel Sartain & Meghan Reilly | Membership Agreement, dated as of June 12, 2008 | Membership Agreement | 4102 Elk Lane, Basalt, CO 81621 |
| LB Rose Ranch LLC | John Schaumburg & Angie Allen | Membership Agreement, dated as of June 25, 2007 | Membership Agreement | 28 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | John Schneider | Membership Agreement, dated as of May 25, 2006 | Membership Agreement | P.O. Box 1700, Glenwood Springs, CO 81602 |
| LB Rose Ranch LLC | Kevin Schneider | Membership Agreement, dated as of June 22, 2007 | Membership Agreement | 167 Silver Mountain Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Robert Scholl | Membership Agreement, dated as of May 2, 2006 | Membership Agreement | 50 Lariat Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Robert Serson | Membership Agreement, dated as of May 22, 2007 | Membership Agreement | 586 E. Harbor Highway, Maple City, MI 49664 |
| LB Rose Ranch LLC | Derek Shultz | Membership Agreement, dated as of August 13, 2006 | Membership Agreement | 886 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Michael Sos & Karen Carr | Membership Agreement, dated as of May 8, 2003 | Membership Agreement | 139 Meadow Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Chris Souki | Membership Agreement, dated as of September 21, 2006 | Membership Agreement | 375 N. Spring St., Aspen, CO 81611 |
| LB Rose Ranch LLC | Klara Sprojcarova, & Mark Simpson | Membership Agreement, dated as of May 7, 2006 | Membership Agreement | 121 Red Bluff Vista, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Larry Stangeland | Membership Agreement, dated as of December 20, 2002 | Membership Agreement | 1230 Ivy Lane, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Jesse Steindler | Membership Agreement, dated as of April 21, 2007 | Membership Agreement | P.O. Box 1465, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Richard Stump | Membership Agreement, dated as of August 15, 2007 | Membership Agreement | 814 River Bend Way, Glenwood Springs, CO 81601 and P.O. Box 2953, Basalt, CO 81621 |
| LB Rose Ranch LLC | Robert and Linda Stillman | Membership Agreement, dated as of May 26, 2008 | Membership Agreement | 15001 Shady Grove Road, Ste. 400, Rockville, MD 20850 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Henry Stone | Membership Agreement, dated as of August 10, 2007 | Membership Agreement | 298 Meadow Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Franz Stone V | Membership Agreement, dated as of May 13, 2008 | Membership Agreement | 2000 Bear Ridge Rd., Basalt, CO 81621 |
| LB Rose Ranch LLC | Geoffrey Tasker | Membership Agreement, dated as of June 8, 2005 | Membership Agreement | 106 Diamond A Ranch Road, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Jodi Thimsen | Membership Agreement, dated as of May 30, 2008 | Membership Agreement | 670 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Victoria Thomas | Membership Agreement, dated as of June 26, 2008 | Membership Agreement | 835 E Durant #1, Aspen, CO 81611 |
| LB Rose Ranch LLC | Antony Thompson | Membership Agreement, dated as of April 5, 2007 | Membership Agreement | Alpine Bank, 711 East Valley Rd, Suite 101, Basalt, CO 81621 |
| LB Rose Ranch LLC | Neill Thompson | Membership Agreement, dated as of August 24, 2007 | Membership Agreement | 27509 N. Makena Pl., Peoria, AZ 85383 |
| LB Rose Ranch LLC | Chad Thomson | Membership Agreement, dated as of June 13, 2008 | Membership Agreement | P.O. Box 3223, Basalt, CO 81621 |
| LB Rose Ranch LLC | Derek Torinus | Membership Agreement, dated as of December 6, 2006 | Membership Agreement | P.O. Box 94, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Saul Torres & Cecilia Hernandez | Membership Agreement, dated as of July 12, 2007 | Membership Agreement | 15 Wild Rose Court, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Deborah Torrey & Frederick Gannet | Membership Agreement, dated as of May 7, 2003 | Membership Agreement | PO Box 2116, Basalt, CO 81621 |
| LB Rose Ranch LLC | Dennis Trupkin | Membership Agreement, dated as of July 8, 2008 | Membership Agreement | 3535 Windmill Ranch Road, Weston, FL 33331 |
| LB Rose Ranch LLC | Schuyler Van Gorden IV | Membership Agreement, dated as of July 30, 2004 | Membership Agreement | 708 Westbank Road, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Robert Velasquez | Membership Agreement | Membership Agreement | 2906 Co Rd. 113, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Matt & Taylor Verheul | Membership Agreement, dated as of June 13, 2005 | Membership Agreement | 379 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | John Villafranco | Membership Agreement, dated as of June 4, 2007 | Membership Agreement | 9715 Highway 133, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Donald Villemaire | Membership Agreement, dated as of August 29, 2007 | Membership Agreement | 72 Bent Grass Drive, Glenwood Springs, CO 81601 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|-------------|-------------------|-------------|---------------|
| LB Rose Ranch LLC | Peter Virtue | Membership Agreement June 1, 2007 | Membership Agreement | 18 Dakota Ct. Carbondale CO 81623 |
| LB Rose Ranch LLC | John & Carol Ward | Membership Agreement, dated as of August 7, 2007 | Membership Agreement | 18577 Olov Rd., Sonora, CA 95370 |
| LB Rose Ranch LLC | Jeffrey & Leslie Warren | Membership Agreement, dated as of April 24, 2008 | Membership Agreement | 324 Coryell Ridge Road, Glenwood Springs, CO 81601 and P.O. Box 1800, Glenwood Springs, CO 81602 |
| LB Rose Ranch LLC | Phil Weir | Membership Agreement, dated as of June 25, 2007 | Membership Agreement | 484 Red Bluff Vista, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bryan Whiting | Membership Agreement, dated as of May 21, 2008 | Membership Agreement | 279 Westbank Rd., Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Judith Whitmore | Membership Agreement, dated as of August 8, 2006 | Membership Agreement | P.O. Box 2961, Glenwood Springs, CO 81602 |
| LB Rose Ranch LLC | Josh Whittaker | Membership Agreement, dated as of May 27, 2007 | Membership Agreement | 144 Bent Grass Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Rocky Whitworth | Membership Agreement, dated as of April 10, 2006 | Membership Agreement | 270 River Bend Way, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bill Williams | Membership Agreement, dated as of June 6, 2003 | Membership Agreement | 1400 Faranhyll Ranch Road, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Seth Williams & Erin Colonna | Membership Agreement, dated as of July 1, 2008 | Membership Agreement | 758 Huebinger Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Craig Willis | Membership Agreement, dated as of July 2, 2006 | Membership Agreement | 92 White Peaks Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Bruce and Kathleen Wilson | Membership Agreement, dated as of April 10, 2005 | Membership Agreement | 5 Eagle Pointe Dr., Barrington Hills, IL 60010 |
| LB Rose Ranch LLC | John Wiltgen | Membership Agreement, dated as of September 1, 2007 | Membership Agreement | P.O. Box 1753, Aspen, CO 81612 |
| LB Rose Ranch LLC | Josh & Kari Wittaker | Membership Agreement, dated as of March 27, 2007 | Membership Agreement | 44 Dakota Meadows Drive, Carbondale, CO 81623 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|---|---|---|---|---|
| LB Rose Ranch LLC | Kyle Wolf | Membership Agreement, dated as of June 29, 2007 | Membership Agreement | 237 Bent Grass Dr., Glenwood Springs, CO 81601 <br><br> and <br><br> 151 Springridge Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Kent Woodard | Membership Agreement, dated as of August 18, 2008 | Membership Agreement | P.O. Box 1567, Aspen, CO 81612 |
| LB Rose Ranch LLC | Chris Woods | Membership Agreement, dated as of July 5, 2006 | Membership Agreement | 10 Wild Rose Drive, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Kay Young | Membership Agreement, dated as of May 30, 2003 | Membership Agreement | P.O. Box 1464, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ironbridge Property Owners Association | Operating and Management Agreement, dated as of July 1, 2006 | Operating Agreement - Golf Club HOA Agreement | 1512 Grand Avenue, Suite 109, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Ironbridge Property Owners Association | Operating and Management Agreement, dated July 1, 2006 | Operating Agreement - Operating/Cost Sharing Agreement | 1512 Grand Avenue, Suite 109, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Thomas Schmidt | Operating and Management Agreement, dated as of April 1, 2002 | Management Agreement - Rose Ranch Management | 1007 Westbank Road, Glenwood Springs, CO, 81601 |
| LB Rose Ranch LLC | Westbank Homeowners Association | Operating and Management Agreement | Operating Agreement - Water Rights Agreement- Non Pot - Piped System Agreement | P.O. Box 2703, Glenwood Springs, CO, 81601 |
| LB Rose Ranch LLC | Westbank Homeowners Association | Operating and Management Agreement | Operating Agreement - Water Rights Agreement- Non Pot - 1st Amendment to Ditch Agreement | P.O. Box 2703, Glenwood Springs, CO, 81601 |
| LB Rose Ranch LLC | Westbank Homeowners Association | Operating and Management Agreement, dated as of December 4, 1998 | Operating Agreement - Water Rights Agreement- Non Pot - Ditch Agreement | P.O. Box 2703, Glenwood Springs, CO, 81601 |
| LB Rose Ranch LLC | Steve Beattie | Real Estate Agreement, dated October 22, 2002 | Agreement – Beatie Property Triangle | 710 Cooper Ave, Glenwood Springs, CO, 81601 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|--------------|--------------------|----------------|----------------|
| LB Rose Ranch LLC | Excel Energy | Utility Contract, dated March 25, 2005 | Utility Contract | 2538 Blichmann Avenue, Grand Junction, CO 81505 |
| LB Rose Ranch LLC | Holy Cross Energy | Utility Contract | Utility Contract | 3799 Hwy 82, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Qwest Corp. | Utility Contract, dated as of October 22, 2007 | Utility Contract | c/o Developer Contact Group, 700 Mineral Avenue, Room ND E3.32, Littleton, CO 80120 |
| LB Rose Ranch LLC | Roaring Fork Water and Sanitation District | Utility Contract, dated as of January 12, 2001 | Special Warranty Deed and Grant of Easement | 9929 Highway 82, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Source Gas/Kinder Morgan | Utility Contract, dated June 26, 2006 | Utility Contract | 0190 Fiou Lane, Basalt, CO 81621 |
| LB Rose Ranch LLC | GE Capital | Vendor Contract, dated as of December 8, 2006 | GE Capital Copier Lease | P.O. Box 31001-0271, Pasadena, CA 91110-0271 |
| LB Rose Ranch LLC | Nebraska National Bank | Vendor Contract, dated April 13, 2006 | Golf Cart Lease | 3110 Second Avenue, Kearney, NE 68847 |
| LB Rose Ranch LLC | Toro | Vendor Contract, dated September 12, 2007 | Service Agreement - Irrigation Computer Lease | P.O. Box 3339, Abilene, TX 79604 |
| LB Rose Ranch LLC | Unilink | Vendor Contract, dated January 1, 2007 | GE Capital Copier Maintenance Agreement | 1961 Hirst Drive, Moberly, MO 65270 |
| LB Rose Ranch LLC | Bodie Collins | Water Rights Agreement | Water Rights Agreement Non-pot | 525 Country Road 109, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, dated February 11, 1993 | Water Rights - Water Rights Agreement-Non Pot - Case No. 90CW146 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, dated February 25, 1999 | Water Rights - Water Rights Agreement-Non Pot - Case No. 97CW236 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, dated May 21, 1999 | Water Rights - Water Rights Agreement-Non Pot - Case No. 99CW25 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |

| Debtor | Counterparty | Title of Agreement | Description[3] | Notice Address |
|--------|-------------|--------------------|--------------|----------------|
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, dated November 6, 2000 | Water Rights - Water Rights Agreement-Non Pot - Case No. 00CW019 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, August 24, 2006 | Water Rights - Water Rights Agreement-Non Pot - Case No. 05CW53 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | District Court, Water Division NO.5 Colorado | Water Rights Agreement, dated January 11, 2006 | Water Rights - Water Rights Agreement-Non Pot - Case No. 05CW102 | 109 Eighth Street, Suite 104, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Mark & Mary Gould | Water Rights Agreement, dated June 20, 2006 | Water Rights Agreement Non-pot Case No. 03CW118 | 41 Oak Lane, Glenwood Springs, CO 81601 |
| LB Rose Ranch LLC | Roaring Fork Water & Sanitation District | Water Rights Agreement, dated December 10, 2002 | Pre-Inclusion Agreement - Water Agreement-Potable | 9929 Highway 82, Carbondale, CO 81623 |
| LB Rose Ranch LLC | Roaring Fork Water & Sanitation District | Water Rights Agreement, dated December 10, 2002 | Pre-Inclusion Agreement - Water Agreement-Potable | 9929 Highway 82, Carbondale, CO 81623 |
| LB Rose Ranch LLC | West Divide Water Conservancy District | Water Rights Agreement, dated July 23, 1997 | Water Rights - Water Rights Agreement-Non Pot - Case No. 90CW200 | P.O. Box 1478, Rifle, CO 81650 |

## Appendix A

### Loan Agreement

| | |
|---|---|
| U.S. Bank National Association<br>not individually but solely as<br>Trustee for Maiden Lane Commercial<br>Mortgage Back Securities Trust 20081<br>c/o Federal Reserve Bank of New York<br>33 Liberty Street<br>New York, New York 10045<br>Attn: Stephanie Heller and Helen Mucciolo<br>Facsimile No.: (212) 720-1953<br>Email: stephanie.heller@ny.frb.org<br>       helen.mucciolo@ny.frb.org | U.S. Bank National Association<br>as Trustee<br>60 Livingston Avenue<br>EP-MN-WS3D<br>St. Paul, Minnesota 55107<br>Attention: Structured Finance<br>Maiden Lane CMBS Trust 2008-1<br>Facsimile No.: (866) 831-7910 |
| Bank of America, N.A.<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>Charlotte, North Carolina 28255<br>Attention: Janice M. Smith<br>Facsimile No.: (704) 317-0781 | Bank of America Legal Department<br>GCIB/CMBS<br>NC1-007-20-01<br>100 North Tryon Street<br>Charlotte, North Carolina 28255-0001<br>Attention: Paul Kurzeja, Esq.<br>Facsimile No.: (704) 387-0922 |
| Bank of America, N.A.<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>NC1-026-06-01<br>Charlotte, North Carolina 28255-0001<br>Attention: Sean Reilly<br>Facsimile No.: (704) 227-4863 | Bank of America, N.A.<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>NC1-026-06-01<br>Charlotte, North Carolina 28255-0001<br>Attention: Joe Davis<br>Facsimile No.: (704) 317-0771 |
| Bank of America, N.A.<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>NC1-026-06-01<br>Charlotte, North Carolina 28255-0001<br>Attention: Dean Roberson<br>Facsimile No.: (704) 317-0770 | BlackRock, Inc.<br>40 East 52nd Street<br>New York, New York 10022<br>Attention: Ryan Marshall<br>Facsimile No.: (212) 810-5116 |
| BlackRock, Inc.<br>300 Campus Drive, Suite 300<br>Florham Park, New Jersey 07932<br>Attention: Jeremy Litt, Esq.<br>Facsimile No.: (646) 521-4998 | Bank of America Legal Department<br>CMBS Capital Markets<br>214 North Tryon Street<br>Mail Code: NC1-027-22-02<br>Charlotte, North Carolina 28255-0001<br>Attention: Jeffrey B. Hoyle<br>Facsimile No.: (704) 602-3732 |
| Bank of America Merrill Lynch Legal<br>Department<br>GCIB/CMBS<br>101 S. Tryon Street, 30th Fl.<br>NC1-002-29-01<br>Charlotte, North Carolina 28255-0001 | Exmoor 2008-1 Ltd.<br>c/o LaSalle Bank National Assocation, as<br>Trustee<br>540 West Madison Street, Suite 2500<br>Chicago, Illinois 60661<br>Attention: CDO Trust Services Group- |

| | |
|---|---|
| Attention: Paul Kurzeja, Esq.<br>Facsimile No.: (704) 409-0267 | Exmoor 2008-1, Ltd.<br>Facsimile No.: (312) 276-4934 |
| Goff Capital Partners, L.P.<br>777 Main Street, Suite 720<br>Fort Worth, Texas 76102<br>Attention: Mark Collier,<br>Chief Financial Officer<br>Facsimile No.: (817) 321-2101 | Goff Capital Partners, L.P.<br>1266 East Main Street<br>6th Floor<br>Stamford, Connecticut 06902<br>Attention: Hugh M. Balloch,<br>Managing Principal<br>Facsimile No.: (203) 504-5068 |
| Goff Capital Partners, L.P.<br>6312 South Fiddlers Green Circle<br>Suite 435N<br>Greenwood Village, Colorado 80111<br>Attention: Conrad J. Suszynski,<br>Managing Principal<br>Facsimile No.: (303) 512-6113 | Goldman Sachs Credit Parrtners L.P.<br>c/o Goldman Sachs Mortgage Company<br>200 West Street<br>New York, New York 10282-2198<br>Attention: Mark Buono & Joseph Sumberg<br>Facsimile No.: (212) 256-6229/ (917) 977-4677 |
| Merrill Lynch Mortgage Lending Inc.<br>CMBS Capital Markets<br>214 North Tyron Street<br>Mail Code: NC1-027-22-02<br>Charlotte, North Carolina 28255-0001<br>Attention: Jeffrey B. Hoyle<br>Facsimile No.: (704) 602-3732 | Bank of America Merrill Lynch Legal<br>Department<br>GCIB/CMBS<br>101 S. Tryon Street, 30th Fl.<br>NC1-002-29-01<br>Charlotte, North Carolina 28255-0001<br>Attention: Paul Kurzeja, Esq.<br>Facsimile No.: (704) 409-0267 |
| Lehman Brothers Holdings Inc.<br>1271 Avenue of the Americas,<br>39th Floor<br>New York, New York 10020<br>Attention: Michael E. Lascher<br>Facsimile No.: (646) 285-9305 | Lehman Brothers Holdings Inc.<br>1271 Avenue of the Americas,<br>39th Floor<br>New York, New York 10020<br>Attention: Joelle Halperin, Esq.<br>Facsimile No.: (646) 285-9305 |
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attention: W. Michael Bond, Esq.<br>Facsimile No.: (212) 310-8007 | Carbon Capital III Co-Investments, LLC<br>c/o BlackRock Financial Management, Inc.<br>40 East 52nd Street<br>New York, New York 10022<br>Attention: Richard Shea<br>Facsimile No.: (212) 754-8758 |
| General Electric Capital Corporation<br>GE Real Estate – NAL<br>500 West Monroe<br>Chicago, Illinois 60601<br>Attention: Claudio Lippi<br>Facsimile No.: (312) 876-2583 | Katten Muchin Rosenman LLP<br>575 Madison Avenue<br>New York, New York 10022<br>Attention: Timothy Little, Esq.<br>Facsimile No.: (212) 894-5794 |
| Cadwalader, Wickersham & Taft LLP<br>One World Financial Center<br>New York, New York 10281<br>Attention: William P. McInerney, Esq.<br>Facsimile No.: (212) 504-6666 | Simpson, Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attention: Gregory J. Ressa, Esq.<br>Facsimile No.: (212) 455-2502 |
| Hilton Worldwide, Inc.<br>7930 Jones Branch Drive | Bank of America Trustees Limited<br>5 Canada Square |

| | |
|---|---|
| McLean, Virginia 22102<br>Attention: Chief Financial Officer<br>Facsimile No.: (703) 883-6189 | London<br>E14 5AQ<br>United Kingdom<br>Attention: Capital Markets Services |
| Mark N. Levine<br>BlackRock Solutions<br>Park Avenue Plaza<br>55 East 52nd Street<br>New York, New York 10055 | Geoffrey Lea<br>Goff Capital Partners, LP<br>500 Commerce Street, Suite 700<br>Fort Worth, Texas 76102 |
| Shinjit Ghosh<br>Director of Portfolio Management<br>Aurora Bank FSB<br>1271 Sixth Avenue, 46th Floor<br>New York, New York 10020 | Patti T. Spencer<br>Senior Analyst<br>Trust Administration Group<br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road<br>Columbia, MD 21045 |
| John Gass<br>TriMont Real Estate Advisors, Inc.<br>Suite 2200<br>3424 Peachtree Road NE<br>Atlanta, GA 30326 | Cadwalader, Wickersham & Taft LLP<br>One World Financial Center<br>New York, New York 10281<br>Attention: William P. McInerney, Esq. |
| Goff Capital Partners, L.P.<br>777 Main Street, Suite 720<br>Fort Worth, Texas 76102<br>Attention: Mark Collier, Chief Financial Officer | Goff Capital Partners, L.P.<br>1266 East Main Street, 6th Floor<br>Stamford, Connecticut 06902<br>Attention: Hugh M. Balloch, Managing Prinicpal |
| Goff Capital Partners, L.P.<br>6312 South Fiddlers Green Circle, Suite 435N<br>Greenwood Village, Colorado 80111<br>Attention: Conrad J. Suszynski, Managing Principal | |

## Mezzanine I Loan

| | |
|---|---|
| U.S. Bank National Association<br>as Trustee<br>60 Livingston Avenue<br>EP-MN-WS3D<br>St. Paul, Minnesota 55107<br>Attention: Structured Finance<br>    Maiden Lane CMBS Trust 2008-1<br>Facsimile No.: (866) 831-7910 | Bank of America, National Association<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>Charlotte, North Carolina 28255<br>Attention: Janice M. Smith<br>Facsimile No.: (704) 317-0781 |
| Bank of America Legal Department<br>GCIB/CMBS<br>NC1-007-20-01<br>100 North Tryon Street<br>Charlotte, North Carolina 28255-0001<br>Attention: Paul Kurzeja, Esq.Facsimile No.: | Bank of America, National Association.<br>Capital Markets Servicing Group<br>900 West Trade Street, Suite 650<br>NC1-026-06-01<br>Charlotte, North Carolina 28255-0001<br>Attention: Sean Reilly |

| (704) 387-0922 | Facsimile No.: (704) 227-4863 |
|---|---|
| Bank of America, National Association. Capital Markets Servicing Group 900 West Trade Street, Suite 650 NC1-026-06-01 Charlotte, North Carolina 28255-0001 Attention: Michael Lumadue Facsimile No.: (704) 317-0781 | Bank of America, National Association. Capital Markets Servicing Group 900 West Trade Street, Suite 650 NC1-026-06-01 Charlotte, North Carolina 28255-0001 Attention: Joe Davis Facsimile No.: (704) 317-0771 |
| Cadwalader, Wickersham & Taft LLP Attention: Henry A. LaBrun, Esq. 227 West Trade Street Suite 2400 Charlotte, North Carolina 28202 | Bank of America, N.A. CMBS Capital Markets 214 North Tryon Street Mail Code: NC1-027-22-02 Charlotte, North Carolina 28255-0001 Attention: Jeffrey B. Hoyle |
| Bank of America Legal Department GCIB/CMBS NC1-007-20-01 100 North Tryon Street Charlotte, North Carolina 28255-0001 Attention: Paul Kurzeja, Esq.Facsimile | German American Capital Corp. 60 Wall Street New York, New York 10005 Attention: Robert W. Pettinato, Jr. |
| German American Capital Corp. 60 Wall Street New York, New York 10005 Attention: Scott Waynebern | Goldman Sachs Mortgage Company 85 Broad Street New York, New York 10004 Attention: Mark Buono, Mark Lanspa and Timothy Gallagher |
| Cadwalader, Wickersham & Taft LLP One World Financial Center New York, New York 10281 Attention: Lisa Pauquette | Morgan Stanley Mortgage Capital Holdings LLC 1221 Avenue of the Americas, 27th Floor New York, New York 10020 |
| Merrill Lynch Mortgage Lending, Inc. Four World Financial Center, 16th Floor New York, New York 10080 Attention: Robert J. Spinna, Jr. | Lehman Brothers Holdings Inc., 399 Park Avenue, 8th Floor New York, New York 10022 Attention: Larry J. Kravetz |
| **Initial Participant A-7** Lehman Brothers Holdings Inc. 1271 Avenue of the Americas, 39th Floor New York, New York 10020 Attention: Michael Lascher Facsimile No.: (646) 285-9305 <br><br> with a copy to: <br><br> Lehman Brothers Holdings Inc. 1271 Avenue of the Americas, 39th Floor New York, New York 10020 Attention: Joelle Halperin, Esq. Facsimile No.: (646) 285-9305 <br><br> with a copy to: | **Initial Participant A-8** Fillmore West BS Finance Subsidiary c/o Fillmore Capital Partners, LLC Four Embarcadero Center Suite 710 San Francisco, California 94111 Attention: Milton Patipa <br><br> with a copy to: <br><br> Dechert LLP One Maritime Plaza, Suite 2300 San Francisco, CA 94111 Attention: Joseph B. Heil, Esq. |

| | |
|---|---|
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attention: W. Michael Bond, Esq.<br>Facsimile No.: (212) 310-8007 | |
| **Participant A-5**<br>S. Bradford Child<br>Anthony Breault<br>James Spencer<br>Oregon State Treasury<br>Investment Division<br>350 Winter Street, N.E.<br>Salem, Oregon 97301-3896<br><br>with a copy to:<br><br>Ian McColough<br>Managing Director<br>GSREA, LLC<br>135 East 57th Street, 11th Floor<br>New York, New York 10022<br>Tel: (212) 381-4148<br>Fax: (212) 381-4151<br>Cell: (917) 826-1213 | **Initial Participant A-10**<br>HHotels Mezz Pool 2 Pte Ltd<br>c/o GIC Real Estate, Inc.<br>156 West 56th Street, Suite 1900<br>New York, NY 10019<br>Attn: Portfolio Mananger<br>Fax: 212 468 1940<br><br>with a copy to:<br><br>HHotels Mezz Pool 2 Pte Ltd<br>c/o GIC Real Estate, Inc.<br>One Bush Street, Suite 1100<br>San Francisco, CA 94552<br>Attn: SVP Finance & Accounting<br>Fax: 415 229 1812<br><br>with a copy to:<br><br>Dechert LLP<br>90 State House Square<br>Hartford, CT 06103<br>Attn: Laura G. Ciabarra, Esq.<br>Fax: 860-394-4204 |
| **Initial Participant A-11**<br>LeverageSource V S.A.R.L.<br>c/o Virtus Group, LP<br>2800 Post Oak Blvd., Ste. 5880<br>Houston, Texas 77056<br>Attn: Kris Lacy<br>Fax: 888 468 6094 | **Custodian**<br>Gretchen C. Haverback<br>Trust Officer<br>LaSalle Bank, NA<br>135 S. LaSalle St, Suite 1640<br>IL-4-135-16-40<br>Chicago, Illinois 60603<br>(312) 904-0345<br>Fax – (312) 904-6006<br><br>with a copy to :<br><br>Marcia Moore-Allen<br>First Vice-President<br>LaSalle Bank, NA<br>135 South LaSalle Street, Suite 1640<br>IL-4-135-16-40<br>Chicago, Illinois 60603<br>(312) 904-0338 |

| | (312) 904-6006 (fax) |
|---|---|
| Ryan Seidman<br>GIC Real Estate<br>335 Madison Avenue, 24th Floor<br>New York, New York 10017 | Skylar Skikos<br>Fillmore Capital Partners, LLC<br>Four Embarcadero Center, Suite 710<br>San Francisco, CA 94111 |
| Jonathan M. Block<br>Senior Vice President<br>Guggenheim Structured Real Estate Advisors, LLC<br>135 East 57th Street, 11th Floor<br>New York, NY 10022 | Simpson, Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attention: Gregory J. Ressa, Esq.<br>Facsimile No.: (212) 455-2502 |
| Hilton Worldwide, Inc.<br>7930 Jones Branch Drive<br>McLean, Virginia 22102<br>Attention: Chief Financial Officer<br>Facsimile No.: (703) 883-6189 | |

**APPENDIX A-1**

**Loan Borrowers**

HLT Stakis SPE Limited
St. Helens Hotels Limited
HLT Milton Keynes Limited
Chicago Hilton LLC
Short Hills Hilton LLC
McLean Hilton LLC
Phoenix SP Hilton LLC
S.F. Hilton LLC
HLT O'Hare LLC
Hilton Land Investment 1, LLC
HLT NY Hilton LLC
HLT NY Waldorf LLC
HLT Domestic Owner LLC
HLT HQ SPE LLC
HLT Logan LLC
HLT Memphis LLC
HLT Memphis Data LLC
HLT Audubon LLC
HLT CA Hilton LLC
HLT San Jose LLC
Hapeville Hotel Limited Partnership
Global Resort Partners
Kenner Hotel Limited Partnership
Hilton International of Puerto Rico, Inc.
Hilton Hawaiian Village LLC
Hotel Maatschappij Schiphol BV
Craigendarroch Limited
Bondarea Limited
Hotel Maatschappij Rotterdam BV
HLT Operate DTWC Corporation
Hotel Corporation of Europe
Hilton International Trinidad Limited
Hilton Tobago Limited
Adda Hotels
HLT Stakis Operator Limited
HLT Owned X-A Borrower Limited
HLT Owned XI-A Borrower Limited
HLT Operating III-A Borrower Limited
HLT Operating V-A Borrower Limited
HIC Treasury Limited
HLT Hawaii Holding LLC

HLT Owned VI-A Holding LLC
HLT Owned VII-A Holding LLC
HLT Operating II-A Borrower LLC
HLT Operating IV-A Borrower LLC
HLT Timeshare Borrower I LLC
HLT Timeshare Borrower II LLC
HLT JV I Borrower LLC
HLT JV II Borrower LLC
HLT Property Acquisition LLC
HLT JV Acquisition LLC
HLT Owned IV-A Borrower Corporation
DTR TM Holdings, Inc.
HLT Owned V-A Holding Limited
HLT Owned IX-A Holding Limited
HLT Palmer LLC
Hilton Management LLC
Doubletree Management LLC
Hampton Inns Management LLC
Homewood Suites Management LLC
Embassy Suites Management LLC
Conrad Management LLC
Hilton Garden Inns Management LLC
Waldorf=Astoria Management LLC
Middle East Hotels LLC
Hilton International Manage LLC
Hilton of Malaysia LLC
HLT Conrad LLC
HLT Conrad International Manage LLC
HLT Conrad Domestic LLC
HLT Waldorf=Astoria International Manage LLC
HLT Singapore Manage LLC
HLT Drake LLC
HLT Domestic IP LLC
HLT Conrad IP LLC
HLT International IP LLC
HLT Owned II-A Borrower LLC
HLT Franchise I Borrower LLC
HLT Franchise II Borrower LLC
HLT Franchise III Borrower LLC
HLT Franchise IV Borrower LLC
HLT Franchise V Borrower LLC
HLT Managed I-A Borrower LLC
HLT Managed III-A Borrower LLC
HLT Managed VI-A Borrower LLC
HLT Managed VII-A Borrower LLC

HLT Managed VIII-A Borrower LLC
HLT Managed IX-A Borrower LLC
HLT Managed XII-A Borrower LLC
HLT Manage-Franchise Holding LLC
HLT HSS Holding LLC
HLT HSM Holding LLC
HLT Conrad IP Sub Inc.
HLT International IP Sub Inc.
Hotel Corporation of Europe
Conrad International (Egypt) Corporation
Hotel Management of Minneapolis, Inc.
HLT Canada Managed LP
HLT Managed II-A Borrower Corporation
HLT Managed X-A Borrower LP
HLT Stakis Manage Limited
Maple Hotels Management Company Limited
HLT Aro Manage Limited
HLT Stakis IP Limited
HLT Managed IV-A Borrower Limited
HLT Managed V-A Borrower Limited
Adda Hotels

## APPENDIX A-2

## Mezzanine Loan Borrowers

HLT Owned Mezz I-I LLC
HLT Owned Mezz II-I LLC
HLT Owned Mezz III-I LLC
HLT Owned Mezz VI-I LLC
HLT Owned Mezz VII-I LLC
HLT Owned Mezz VIII-I LLC
HLT Manage-Franchise Mezz I-I LLC
HLT Managed Mezz I-I LLC
HLT Managed Mezz III-I LLC
HLT Managed Mezz VI-I LLC
HLT Managed Mezz VII-I LLC
HLT Managed Mezz VIII-I LLC
HLT Managed Mezz IX-I LLC
HLT Managed Mezz XII-I LLC
HLT Operating Mezz I-I LLC
HLT Operating Mezz II-I LLC
HLT Operating Mezz IV-I LLC
HLT Timeshare Mezz I-I LLC
HLT Timeshare Mezz II-I LLC
HLT Franchise Mezz I-I LLC
HLT Franchise Mezz II-I LLC
HLT Franchise Mezz III-I LLC
HLT Franchise Mezz IV-I LLC
HLT Franchise Mezz V-I LLC
HLT JV Mezz I-I LLC
HLT JV Mezz II-I LLC
HLT Owned Mezz IV-I Corporation
HLT Managed Mezz II-I Corporation
HLT Managed Mezz X-I LP
DTR TM Holdings, Inc.
HLT Owned Mezz X-I Limited
HLT Owned Mezz XI-I Limited
HLT Managed Mezz IV-I Limited
HLT Managed Mezz V-I Limited
HLT Operating Mezz III-I Limited
HLT Operating Mezz V-I Limited
HLT Treasury Mezz I-I Limited
HLT Owned Mezz V-I Limited
HLT Owned Mezz IX-I Limited

<u>**Appendix B**</u>

Kapalua Bay, LLC
c/o Maui Land & Pineapple Company, Inc.
120 Kane Street
Kapalua, Maui, Hawaii 69732
Attention: Ryan Churchill
Telecopy: (808) 669-5454
Telephone: (808) 877-1667

DLA Piper LLP (US)
555 Mission Street
Suite 2400
San Francisco, California 94105
Attention: Stephen A. Cowan
Telecopy: (415)659-7500
Telephone: (415) 615-6000

Teel & Roeper, LLP
ICW Plaza at Torrey Reserve
11455 El Camino Real, Suite 300
San Diego, CA 92130
Attention: Dean E. Roeper, Esq.
Telecopy: (858) 794-2909
Telephone: (858) 794-2900

Central Pacific Bank
220 South King Street, Suite 2000
Honolulu, Hawaii 96813
Attention:      Garrett Grace
Telecopier:     (808) 544-0647

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
Attention:  Richard S. Fries, Esq.
Telecopier:  (212) 508-1408

Landesbank Baden-Württemberg
Workout Management Real Estate
  International (5701/H)
Am Hauptbahnof 2
D-70173 Stuttgart
Germany
Attention:      Nicole Schumacher
Telecopier:     +49 (0)711/127-72630

Landesbank Baden-Württemberg
New York Branch
31st Floor - West Building
280 Park Avenue
New York, New York  10017
Attention:        Kevin Tatro
Telecopier:       (212) 584 1799

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
Attention:  Richard S. Fries, Esq.
Telecopier:  (212) 508-1408

Deutsche Hypothekenbank
 (Actien-Gesellschaft)
Georgeplatz 8
30159 Hanover
Germany
Attention:  Dirk Wilke
Telecopier:       +49 511 3045-109


Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
Attention:  Richard S. Fries, Esq.
Telecopier:  (212) 508-1408

MH Kapalua Bay, LLC
c/o Marriott International, Inc.
Marriott Drive, Dept.924.11
Washington, D.C. 20058
Attention:  Rick Jacobs
Telecopier:  (301) 380-5067

DLA Piper LLP (US)
555 Mission Street
Suite 2400
San Francisco, California  94105
Attention: Stephen A. Cowan
Telecopy: (415)659-7500
  Telephone: (415) 615-600

# EXHIBIT 2

## PART D – RESIDENTIAL REAL ESTATE AGREEMENTS

**THE DEBTORS HAVE NOT LISTED EVERY ANCILLARY DOCUMENT PERTAINING TO RESIDENTIAL REAL ESTATE TRANSACTIONS ON EXHIBIT 2, PART D, BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY OR BECAUSE OF THE VOLUME OF SUCH DOCUMENTS. ALL SUCH ANCILLARY DOCUMENTS, TO THE EXTENT THEY ARE DEEMED TO BE EXECUTORY CONTRACTS, SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AS OF THE EFFECTIVE DATE AND THE REQUIRED CURE AMOUNTS FOR SUCH CONTRACTS SHALL BE ZERO.**

**THE DEBTORS INTEND TO ASSUME ALL LOAN SERVICING CONTRACTS RELATING TO RESIDENTIAL MORTGAGE LOANS AND REAL ESTATE OWNED PROPERTIES ("REO") OWNED BY THE DEBTORS, INCLUDING, BUT NOT LIMITED TO, LOAN SERVICING CONTRACTS THAT MAY BE CONTAINED WITHIN AND SEVERABLE FROM OTHER CONTRACTS THAT THE DEBTORS DO NOT SEEK TO ASSUME. TO THE EXTENT ANY SUCH CONTRACTS DO NOT APPEAR ON EXHIBIT 2, PART D, FOR ANY REASON, SUCH CONTRACTS SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AS OF THE EFFECTIVE DATE AND THE REQUIRED CURE AMOUNTS FOR SUCH CONTRACTS SHALL BE ZERO.**

**THE DEBTORS HAVE NOT LISTED ON EXHIBIT 2, PART D, ANY CONTRACTS PURSUANT TO WHICH THE DEBTORS HAVE RETAINED MORTGAGE LOAN SERVICING RIGHTS OR A RETAINED FEE INTEREST, EITHER THROUGH EXCLUSION OR AFFIRMATIVE CONVEYANCE, IN CONNECTION WITH RESIDENTIAL MORTGAGE LOANS AND/OR REO CURRENTLY OR PREVIOUSLY OWNED BY THE DEBTORS, BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY. IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT SUCH CONTRACTS ARE EXECUTORY CONTRACTS, THEN ALL SUCH CONTRACTS SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AS OF THE EFFECTIVE DATE AND THE REQUIRED CURE AMOUNTS FOR SUCH CONTRACTS SHALL BE ZERO.**

# Residential Real Estate Agreements

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| V81 | Lehman Brothers Holdings Inc. | Aurora Bank FSB (f/k/a Lehman Brothers Bank, FSB) | Flow Sub-Servicing Agreement between Lehman Brothers Holdings Inc. (Owner) and Lehman Brothers Bank, FSB and its wholly-owned subsidiary Aurora Loans Services LLC (Servicer), Dated as of December 1, 2005 | Residential Loan Servicing Agreement | Aurora Bank FSB 2617 College Drive Scottsbluff, Nebraska 69361 Attention: Leo C. Trautman, Jr. (LBHI Subservicing)<br><br>Aurora Bank FSB 10350 Park Meadows Drive Littleton, CO 80124 Attention: Legal Department (LBHI Subservicing) |
| 7122174 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Bank of America, National Association | Flow Mortgage Loan Sale and Servicing Agreement between Bank of America, National Association (as Seller and Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Purchaser), Dated April 1, 2006 | Residential Loan Servicing Agreement | Bank of America, National Association CA7-910-02-33 4500 Park Granada Calabasas, California 91302 Attn: Michael Schloessmann<br><br>4500 Park Granada, CA7-910-01-03 Calabasas, California 91302 Attn: General Counsel |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| A39 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | JP Morgan Chase Bank, N.A. | JPMorgan Chase Bank, National Association (as Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Owner), Flow Interim Servicing Agreement (BNC Mortgage Loans), Dated as of October 1, 2006 | Residential Loan Servicing Agreement | JPMorgan Chase Bank, National Association c/o Chase Home Finance LLC 194 Wood Avenue South Iselin, NJ 08830 Attention: General Counsel<br><br>Matthew D. Simon Vice President, Assistant General Counsel JPMorgan Chase Bank 4915 Independence Parkway, 2nd Floor Tampa, FL 33634 |
| G64, G75 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | JP Morgan Chase Bank, N.A., as successor to American Savings Bank, F.A. | Flow Servicing Agreement between Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), and American Savings Bank, F.A. (Servicer), Dated as of May 1, 1995 | Residential Loan Servicing Agreement | JPMorgan Chase Bank, National Association c/o Chase Home Finance LLC 194 Wood Avenue South Iselin, NJ 08830 Attention: General Counsel<br><br>Matthew D. Simon Vice President, Assistant General Counsel JPMorgan Chase Bank 4915 Independence Parkway, 2nd Floor Tampa, FL 33634 |
| J86 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | JP Morgan Chase Bank, N.A., as successor to Washington Mutual, FA | Servicing Agreement By and Between Washington Mutual, FA (Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), Dated as of March 1, 2004 | Residential Loan Servicing Agreement | JPMorgan Chase Bank, National Association c/o Chase Home Finance LLC 194 Wood Avenue South Iselin, NJ 08830 Attention: General Counsel<br><br>Matthew D. Simon Vice President, Assistant General Counsel JPMorgan Chase Bank 4915 Independence Parkway, 2nd Floor Tampa, FL 33634 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| K06 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | JP Morgan Chase Bank, N.A., as successor to North American Mortgage Company | Reconstituted Servicing Agreement by and between Lehman Capital, a division of Lehman Brothers Holdings Inc., and North American Mortgage Company, (the "Servicer"), Dated as of October 1, 2000 | Residential Loan Servicing Agreement | JPMorgan Chase Bank, National Association c/o Chase Home Finance LLC 194 Wood Avenue South Iselin, NJ 08830 Attention: General Counsel<br><br>Matthew D. Simon Vice President, Assistant General Counsel JPMorgan Chase Bank 4915 Independence Parkway, 2nd Floor Tampa, FL 33634 |
| 9097 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | CitiMortgage, Inc. | Flow Mortgage Loan Purchase and Servicing Agreement Lehman Capital, a division of Lehman Brothers Holdings Inc. (Initial Purchaser), and CitiMortgage, Inc. (Seller and Servicer), Dated as of December 7, 2007 | Residential Loan Servicing Agreement | Lawrence J. Kettenbach, Jr. SVP / Associate General Counsel CitiMortgage, Inc. 1000 Technology Dr. O'Fallon, MO 63368 |
| Not Applicable | Lehman Brothers Holdings Inc. | DTA Solutions LLC (f/k/a First American Subordinate Lien Outsourcing Services, a division of First American Default Information Servicing LLC) | Master Default Services Agreement between First American Default Information Services LLC (Vendor) and Lehman Brothers Holdings Inc. (Customer), Dated as of November 7, 2007 | Residential Loan Servicing Agreement | Jason Pinson President DTA Solutions LLC 8313 Whitley Road, Suite A Watauga, TX 7614 |
| 168 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | EverBank, as successor to Irwin Union Bank and Trust | Lehman Capital, a division of Lehman Brothers Holdings Inc. (Purchaser), and Irwin Union Bank and Trust (Company) Seller's Flow Warranties and Servicing Agreement, Dated as of August 1, 2001 | Residential Loan Servicing Agreement | Drew Walthall Vice President Everbank 8100 Nations Way Jacksonville, FL 32256 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| 41612 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) | GMAC Mortgage Corporation (as Servicer), Aurora Loan Services LLC (as Master Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Owner), Flow Servicing Agreement, Dated as of May 1, 2006 | Residential Loan Servicing Agreement | GMAC Mortgage, LLC 3451 Hammond Ave Waterloo, IA 50702 Attention: Curtis Schares<br><br>GMAC Mortgage, LLC 200 Renaissance Drive Detroit, MI 48265 Attention: Tricia Dennis |
| 42349 | Lehman Brothers Holdings Inc. | GMAC Mortgage, LLC | GMAC Mortgage, LLC (as Servicer) and Lehman Brothers Holdings Inc. (as Owner) Flow Subservicing Agreement, Dated as of February 28, 2008 | Residential Loan Servicing Agreement | GMAC Mortgage, LLC 3451 Hammond Ave Waterloo, IA 50702 Attention: Curtis Schares<br><br>GMAC Mortgage, LLC 200 Renaissance Drive Detroit, MI 48265 Attention: Tricia Dennis |
| 41212 and 42511 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) | GMAC Mortgage Corporation (as Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Owner), Flow Subservicing Agreement, Dated as of January 1, 2005 | Residential Loan Servicing Agreement | GMAC Mortgage, LLC 3451 Hammond Ave Waterloo, IA 50702 Attention: Curtis Schares<br><br>GMAC Mortgage, LLC 200 Renaissance Drive Detroit, MI 48265 Attention: Tricia Dennis |
| Not Applicable | Lehman Brothers Holdings Inc. | MetLife Home Loans, A Division of MetLife Bank N.A. as successor to Everbank Reverse Mortgage, LLC | Reconstituted Servicing Agreement by and between Lehman Brothers Holdings Inc. and Everbank Reverse Mortgage, LLC, acknowledged by Universal Master Servicing, LLC, Dated as of May 21, 2008 | Residential Loan Servicing Agreement | Teresa Baldwin Assistant Vice President MetLife Home Loans, A Division of MetLife Bank N.A. 4000 Horizon Way, Suite 100 Irving, TX 75063 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| 3050 | Lehman Brothers Holdings Inc. | Midland Mortgage, a Division of MidFirst Bank | Flow Servicing Agreement Lehman Brothers Holdings, Inc. (Owner) and Midfirst Bank (Servicer), Dated as of January 1, 2007 | Residential Loan Servicing Agreement | MidFirst Bank<br>999 NW Grand Boulevard<br>Oklahoma City, OK 73118<br>Attention: Scott Reed, Ken R. Clark<br><br>David Morgan<br>501 N.W. Grand Blvd.<br>Oklahoma City, OK 73118 |
| 366 | Lehman Capital, a division of Lehman Brothers Holdings Inc., as assignee of Finance America, LLC | Ocwen Loan Servicing, LLC | Residential Flow Servicing And Sale of Servicing Rights Agreement between Ocwen Federal Bank FSB (Servicer), Amresco Residential Mortgage Corporation and Finance America, LLC (Owner), Dated as of August 1, 1999 | Residential Loan Servicing Agreement | Chrysann Sutton<br>Account Executive, Investor Relations<br>Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 |
| 588 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Ocwen Loan Servicing, LLC | Servicing Agreement between Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), and Ocwen Federal Bank FSB (Special Servicer), Dated as of December 1, 1997 | Residential Loan Servicing Agreement | Chrysann Sutton<br>Account Executive, Investor Relations<br>Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 |
| 2288 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Ocwen Loan Servicing, LLC | Ocwen Federal Bank FSB (as Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Owner), Flow Servicing Agreement, Dated as of August 1, 2003 | Residential Loan Servicing Agreement | Chrysann Sutton<br>Account Executive, Investor Relations<br>Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 |
| 2916 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Ocwen Loan Servicing, LLC, as successor to HomEqServicing Corporation | HomEqServicing Corporation (as Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Owner), Flow Servicing Agreement, Dated as of April 1, 2004 | Residential Loan Servicing Agreement | Chrysann Sutton<br>Account Executive, Investor Relations<br>Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| 843 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | One West Bank, FSB, as successor to IndyMac Bank. F.S.B. | Lehman Capital, a division of Lehman Brothers Holdings Inc. (Purchaser), and IndyMac Bank. F.S.B. (Company) Seller's Warranties and Servicing Agreement, Dated as of September 1, 2005 | Residential Loan Servicing Agreement | OneWest Bank, FSB Attn:Brent Hoyler VP SFR Asset Management 888 East Walnut Street Pasadena, CA 91101 |
| B69, B78 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Wells Fargo Bank, N.A., as successor to Norwest Mortgage Inc. | Lehman Brothers Bank, FSB (Purchaser) and Norwest Mortgage Inc. (Company) Seller's Warranties and Servicing Agreement, Dated as of March 1, 2000<br><br>as supplemented by the following related agreements:<br><br>Side Letter between Lehman Capital, a division of Lehman Brothers Holdings Inc., Lehman Brothers Bank, FSB, and Wells Fargo Bank, N.A., Dated as of August 23, 2005<br><br>Acknowledgement Agreement between Lehman Capital, a division of Lehman Brothers Holdings Inc., and Wells Fargo Bank, N.A., Dated as of August 25, 2005<br><br>Acknowledgement Agreement between Lehman Capital, a division of Lehman Brothers Holdings Inc., and Wells Fargo Bank, N.A., Dated as of July 23, 2004 | Residential Loan Servicing Agreement | Wells Fargo Bank, N.A. 1 Home Campus, MAC X2301-04R Des Moines, IA 50328-0001 Attention: John B. Brown<br><br>Wells Fargo Bank, N.A. 1 Home Campus X2401-06T Des Moines, IA 50328-0001 Attention: Managing Counsel – Loan Servicing |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| B97 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Wells Fargo Bank, N.A., as successor to Wells Fargo Home Mortgage, Inc. | Lehman Brothers Bank, FSB (Purchaser) and Wells Fargo Home Mortgage, Inc. (Company) Seller's Warranties and Servicing Agreement, Dated as of December 1, 2000<br><br>as supplemented by the following related agreements:<br><br>Side Letter between Lehman Capital, A Division of Lehman Brothers Holdings Inc., Lehman Brothers Bank, FSB and Wells Fargo Bank, N.A., Dated as of July 15, 2005<br><br>Acknowledgement Agreement between Lehman Capital, A Division of Lehman Brothers Holdings Inc. (Owner), and Wells Fargo Bank, N.A. (successor by merger to Wells Fargo Home Mortgage, Inc.) (Servicer), Dated as of July 25, 2005 | Residential Loan Servicing Agreement | Wells Fargo Bank, N.A.<br>1 Home Campus, MAC X2301-04R<br>Des Moines, IA  50328-0001<br>Attention:  John B. Brown<br><br>Wells Fargo Bank, N.A.<br>1 Home Campus X2401-06T<br>Des Moines, IA  50328-0001<br>Attention:  Managing Counsel – Loan Servicing |
| k91_k99 | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Wells Fargo Bank, N.A., as successor to Wells Fargo Home Mortgage, Inc. | Wells Fargo Home Mortgage, Inc. (Servicer) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner),  Flow Sub-Servicing Agreement, Dated October 1, 2003 | Residential Loan Servicing Agreement | Wells Fargo Bank, N.A.<br>1 Home Campus, MAC X2301-04R<br>Des Moines, IA  50328-0001<br>Attention:  John B. Brown<br><br>Wells Fargo Bank, N.A.<br>1 Home Campus X2401-06T<br>Des Moines, IA  50328-0001<br>Attention:  Managing Counsel – Loan Servicing |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | The Bank of New York Mellon Trust Company, NA, as successor to Chase Bank of Texas, N.A. | Flow Custodial Agreement by and among Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner and Servicer), and Chase Bank of Texas, N.A. (Custodian), Dated as of June 30, 1999 | Residential Loan Custodial Agreement | Kathleen A. Riley Vice President The Bank of New York Mellon Collateral and Trust Services 101 Barclay Street New York, NY 10286 |
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | The Bank of New York Mellon Trust Company, NA, as successor to Texas Commerce Bank National Association | Custodial Agreement By and Among Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), Texas Commerce Bank National Association (Custodian), Harbourton Mortgage Co., L.P. (Seller) and Aurora Loan Services Inc. (Servicer), Dated as of September 30, 1997 | Residential Loan Custodial Agreement | Kathleen A. Riley Vice President The Bank of New York Mellon Collateral and Trust Services 101 Barclay Street New York, NY 10286 |
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Deutsche Bank National Trust Company, as successor to Bankers Trust Company of California, N.A. | Lehman Capital, a division of Lehman Brothers Holdings Inc. (Purchaser), and Bankers Trust Company of California, N.A. (Custodian), Custodial Agreement, Dated as of March 30, 1995 | Residential Loan Custodial Agreement | Christopher Corcoran Vice President Document Custody Deutsche Bank National Trust Company Global Transaction Banking Alternative & Structured Finance Services 1761 E. Saint Andrew Place Santa Ana, CA 92705 |
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | Wells Fargo Bank, N.A. Corporate Trust Services, as successor to Norwest Bank Minnesota, N.A. | Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), Lehman Capital, a division of Lehman Brothers Holdings Inc., (Initial Servicer) and Norwest Bank Minnesota, N.A. (Custodian) Custody Agreement, Dated as of March 1, 1996 | Residential Loan Custodial Agreement | Mary Sohlberg DEFAULT & RESTRUCTR ACCT MGR MAC N9311-161 625 Marquette Ave, 16th Floor Minneapolis, MN 55402-2308 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | U.S. Bank National Association, as successor to LaSalle National Bank | Custodial Agreement by and among Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner), and Aurora Loan Services Inc. (Servicer) and LaSalle National Bank (Custodian), Dated as of April 14, 1998 | Residential Loan Custodial Agreement | Saah T. Kemayah<br>Vice President<br>Document Custody Services<br>U.S. Bank Corporate Trust Services<br>1133 Rankin Street, Ste. 100<br>Saint Paul, MN 55116 |
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | U.S. Bank National Association, as successor to LaSalle National Bank | Custodial Agreement by and among Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner and Servicer), and LaSalle National Bank (Custodian), Dated as of December 2, 1998 | Residential Loan Custodial Agreement | Saah T. Kemayah<br>Vice President<br>Document Custody Services<br>U.S. Bank Corporate Trust Services<br>1133 Rankin Street, Ste. 100<br>Saint Paul, MN 55116 |
| Not Applicable | Lehman Capital, a division of Lehman Brothers Holdings Inc. | U.S. Bank National Association | Amended and Restated Flow Custodial Agreement by and among Lehman Capital, a division of Lehman Brothers Holdings Inc. (Owner and Servicer), and U.S. Bank National Association (Custodian), Dated as of November 1, 2006, and Addendum #1, Dated as of January 15, 2008 | Residential Loan Custodial Agreement | Saah T. Kemayah<br>Vice President<br>Document Custody Services<br>U.S. Bank Corporate Trust Services<br>1133 Rankin Street, Ste. 100<br>Saint Paul, MN 55116 |
| Not Applicable | Lehman Commercial Paper Inc. | Alaska Seaboard Partners Limited Partnership<br><br>Wells Fargo Bank, N.A.<br><br>SN Servicing Corporation<br><br>U.S. Bank National Association<br><br>Security National Holdings Company, LLC | Master Repurchase Agreement between Lehman Commercial Paper Inc. (as Buyer) and Alaska Seaboard Partners Limited Partnership (as Seller), Dated as of August 30, 2007, as amended<br><br>And all related and/or ancillary agreements, including, but not limited to:<br><br>Pricing Side Letter between Lehman Commercial Paper Inc. and Alaska Seaboard Partners Limited Partnership, Dated as of August 30, 2007, as amended<br><br>Restricted Account Agreement entered into by and among Alaska Seaboard Partners | Master Repurchase Agreement and related agreements | Alaska Seaboard Partners Limited Partnership<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Alaska Seaboard Partners Limited Partnership<br>4150 S. Sherwood Forest Blvd, Suite 210<br>Baton Rouge, LA 70816<br>Attention: John Piland<br><br>SN Servicing Corporation<br>323 Fifth Avenue<br>P.O. Box 35<br>Eureka, California 95502 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| | | | Limited Partnership, Lehman Commercial Paper Inc. and Wells Fargo Bank, National Association, Dated as of August 30, 2007<br><br>Servicing Agreement between SN Servicing Corporation (as Servicer), Alaska Seaboard Partners Limited Partnership (as Seller) and Lehman Commercial Paper Inc. (as Buyer), Dated as of August 30, 2007<br><br>Custodial Agreement Among Lehman Commercial Paper Inc. (as Buyer), Alaska Seaboard Partners Limited Partnership (as Seller) and U.S. Bank National Association (as Custodian), Dated as of September 20, 2007<br><br>Limited Guaranty made by Security National Holdings Company, LLC in favor of Lehman Commercial Paper Inc., Dated as of August 30, 2007, as amended<br><br>Guaranty made by SN Servicing Corporation in favor of Lehman Commercial Paper Inc., Dated as of August 30, 2007, as amended | | Attention: Sandra Austin<br><br>SN Servicing Corporation<br>325 5th Street<br>Eureka, California 95501<br>Attention: Sandra Austin<br><br>Security National Holding Company, LLC<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Security National Master Holding Company, LLC<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Randy A. Mora<br>Wells Fargo Bank, N.A.<br>200 B Street, Suite 300<br>Santa Rosa, CA 95401<br><br>Cheryl Whitehead<br>U.S. Bank National Association<br>269 Technology Way<br>Building B, Unit #3<br>Rocklin, CA 95765 |
| Not Applicable | Lehman Commercial Paper Inc., as assignee of Lehman Capital, a division of Lehman Brothers Holdings Inc.<br><br>Lehman Capital, | Alaska Seaboard Partners Limited Partnership<br><br>Wells Fargo Bank, N.A.<br><br>Security National Holdings Company, LLC | Fifth Amended and Restated Revolving Loan and Security Agreement, Dated as of July 16, 2003, Alaska Seaboard Partners Limited Partnership (as Borrower) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Lender), as assigned to Lehman Commercial Paper Inc., Dated as of August 30, 2007, as amended<br><br>And all related and/or ancillary agreements, | Revolving Loan and Security Agreement and related agreements | Alaska Seaboard Partners Limited Partnership<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Alaska Seaboard Partners Limited Partnership<br>4150 S. Sherwood Forest Blvd, Suite 210<br>Baton Rouge, LA 70816 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| | a division of Lehman Brothers Holdings Inc. | Security National Master Holding Company LLC<br><br>SN Servicing Corporation | including, but not limited to:<br><br>Restricted Account Agreement entered into among Alaska Seaboard Partners Limited Partnership, Lehman Capital, a division of Lehman Brothers Holdings Inc., and Wells Fargo Bank, N.A., Dated as of April 27, 2005<br><br>Agreement (relating to Master Lockbox Arrangement), Dated as of April 28, 2005, for Fifth Amended and Restated Revolving Loan and Security Agreement, Dated as of July 13, 2003, as amended from time to time between Alaska Seaboard Partners Limited Partnership (as Borrower) and Lehman Capital, a division of Lehman Brothers Holdings Inc. (as Lender), as amended and Assigned to Lehman Commercial Paper Inc., Dated as of August 30, 2007<br><br>Guaranty made and entered into by Security National Holdings Company, LLC for the benefit of Lehman Capital, a division of Lehman Brothers Holdings Inc., Dated as of July 16, 2003, as amended<br><br>Guaranty made by Security National Master Holding Company LLC in favor of Lehman Capital, a division of Lehman Brothers Holdings Inc., Dated as of April 28, 2005, as amended<br><br>Guaranty made and entered into by SN Servicing Corporation for the benefit of Lehman Capital, a division of Lehman Brothers Holdings Inc., Dated as of July 16, 2003 and joined by Security National Master | | Attention: John Piland<br><br>SN Servicing Corporation<br>323 Fifth Avenue<br>P.O. Box 35<br>Eureka, California 95502<br>Attention: Sandra Austin<br><br>SN Servicing Corporation<br>325 5th Street<br>Eureka, California 95501<br>Attention: Sandra Austin<br><br>Security National Holding Company, LLC<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Security National Master Holding Company, LLC<br>3050 Westfork Drive<br>Baton Rouge, LA 70816<br>Attention: Rusty Bacon and John Piland<br><br>Randy A. Mora<br>Wells Fargo Bank, N.A.<br>200 B Street, Suite 300<br>Santa Rosa, CA 95401 |

| Investor Codes | Debtor(s) | Counterparty(ies) | Title of Agreement | Description | Notice Address(es) |
|---|---|---|---|---|---|
| | | | Holding Company, LLC, Dated as of November__, 2004 | | |

**EXHIBIT 2**

**PART E – OPERATIONAL AGREEMENTS**

**Operational Agreements**

| Debtor | Counterparty | Title of Agreement | Description[1] | Notice Address |
|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | The Bank of New York | Stock Transfer Agency Agreement dated as of November 9, 1998 | Operational Agreement | The Bank of New York<br>103 Barclay Street<br>(22W)<br>New York, NY 10288<br><br>BNY Mellon Shareowner Services<br>Attn: Jeanne Schaffer<br>480 Washington Blvd.<br>29th Floor<br>Jersey City, NJ 07310 |
| Lehman Brothers Holdings Inc. | The Bank of New York | Amendment / Addendum / Schedule dated as of November of 1998 | Operational Agreement | The Bank of New York<br>101 Barclay Street<br>(22W)<br>New York, NY 10286<br><br>BNY Mellon Shareowner Services<br>Attn: Jeanne Schaffer<br>480 Washington Blvd.<br>29th Floor<br>Jersey City, NJ 07310 |

---

[1] This description is provided for informational purposes only. To the extent there is an inconsistency between this description and the contract, the contract governs.

| Debtor | Counterparty | Title of Agreement | Description[1] | Notice Address |
|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | The Bank of New York | Amendment / Addendum / Schedule dated as of January 29, 2002 | Operational Agreement | The Bank of New York 102 Barclay Street (22W) New York, NY 10287<br><br>BNY Mellon Shareowner Services Attn: Jeanne Schaffer 480 Washington Blvd. 29th Floor Jersey City, NJ 07310 |

**EXHIBIT 2**

**PART F – PRIVATE EQUITY AGREEMENTS**

**OUT OF AN ABUNDANCE OF CAUTION, THE DEBTORS HAVE LISTED A NUMBER OF CONTRACTS ENTERED INTO AFTER THE COMMENCEMENT DATE ON EXHIBIT 2, PART F, BECAUSE SUCH CONTRACTS RELATE TO PREPETITION AGREEMENTS ENTERED INTO BY ONE OR MORE DEBTORS. THE INCLUSION OF SUCH CONTRACTS SHALL NOT BE DEEMED AN ADMISSION THAT SUCH CONTRACTS CONSTITUTE EXECUTORY CONTRACTS.**

**THE DEBTORS HAVE NOT LISTED ON EXHIBIT 2, PART F ANY LOAN CONTRACTS ENTERED INTO SUBSEQUENT TO THE COMMENCEMENT DATE BECAUSE OF THEIR CONCLUSION THAT SUCH CONTRACTS ARE NOT EXECUTORY CONTRACTS.**

# Private Equity Agreements

| Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|
| LBHI | TCP Asia Fund LP | Limited Partnership Agreement of TCP Asia Fund, LP dated as of January 1, 2007; and all other agreements related or ancillary thereto | Limited Partnership Agreement, Subscription Agreement & Side Letter | The Galleon Group TCP Asia Fund LP 590 Madison Avenue 34th Floor New York, NY 10022 |
| LBHI | Silver Lake Credit Fund, L.P. | Fourth Amended and Restated Limited Partnership Agreement of Silver Lake Credit Fund, L.P. dated as of March 1, 2010; and all other agreements related or ancillary thereto | Limited Partnership Agreement, Subscription Agreement & Side Letter | Silver Lake Credit Fund, L.P. One Market Street Steuart Tower 10th Floor, Suite 1000 San Francisco, CA 94105 |
| LBHI | Tudor Ventures III L.P. | Second Amended and Restated Limited Partnership Agreement of Tudor Ventures III L.P. dated as of January 25, 2007; and all other agreements related or ancillary thereto | Limited Partnership Agreement, Subscription Agreement & Side Letter | Tudor Investment Corporation 1275 King Street Greenwich, CT 06831 |

---

[1] LBHI – Lehman Brothers Holdings Inc.
LCPI – Lehman Commercial Paper Inc.

[2] This description is provided for informational purposes only. To the extent there is an inconsistency between this description and the contract, the contract governs.

| Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|
| LBHI | Wilton Re Holdings Limited | Second Amended and Restated Members Agreement dated [_____], 2009 by and among Wilton Re Holdings Limited, Lehman Brothers Holdings Inc. and the other parties thereto; and all other agreements related or ancillary thereto | Second Amended and Restated Members Agreement | Wilton Re Holdings Limited 187 Danbury Road Wilton, CT 06987 |
| | | Amended and Restated Registration Rights Agreement dated as of October 26, 2006 by and among Wilton Re Holdings Limited, Lehman Brothers Holdings Inc. and the other parties thereto | Registration Rights Agreement | |
| LBHI | FXCM Holdings, LLC | Third Amended and Restated Limited Liability Company Agreement of FXCM Holdings LLC dated as of December 1, 2010; and all other agreements related or ancillary thereto | LLC Agreement | FXCM Holdings, LLC c/o FXCM Inc. 32 Old Slip New York, NY 10005 |
| | | Registration Rights Agreement of FXCM Inc. dated as of December 7, 2010; | Registration Rights Agreement | |

| Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|
| LBHI | BATS Holdings, Inc. | Investor Rights Agreement dated as of January 1, 2008 as amended through May 13, 2010, by and among BATS Holdings, Inc., Lehman Brothers Holdings Inc. and the other parties thereto; and all other agreements related or ancillary thereto | Investor Rights Agreement, Subscription Agreement | BATS Holdings, Inc. 4151 N. Mulberry St. Suite 275 Kansas City, MO 64116 |
| LBHI | Invicta Holdings LLC | Second Amended and Restated Limited Liability Company Agreement of Invicta Holdings LLC dated as of June 30, 2008; and all other agreements related or ancillary thereto | Amended and Restated LLC Agreement | Invicta Holdings LLC 340 Madison Avenue 18th Floor New York, NY 10017 |
| LBHI | QW Holdings, LLC | Second Amended and Restated LLC Agreement of QW Holdings, LLC dated as of May 2, 2008; and all other agreements related or ancillary thereto | Second Amended and Restated LLC Agreement; Contribution Agreement | QW Holdings, LLC 875 Third Avenue 29th Floor New York, NY 10022 |
| LBHI | LB Capital Partners II, L.P. - GP | Amended and Restated Agreement of Limited Partnership of Shearson Hutton Capital Partners II, L.P. dated [_____] 1988; and all other agreements related or ancillary thereto | Limited Partnership Agreement | LB Capital Partners II, L.P. – GP Lehman Brothers Holdings Inc. 1271 Avenue of the Americas 38th Floor Attn: Brian McCarthy New York, NY 10020 |

| Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|
| LBHI | LB Capital Partners II, L.P. – LP | Amended and Restated Agreement of Limited Partnership of Shearson Lehman Hutton Capital Partners II, L.P. dated [_____] 1988; and all other agreements related or ancillary thereto | Limited Partnership Agreement | LB Capital Partners II, L.P. – LP Lehman Brothers Holdings Inc. 1271 Avenue of the Americas 38th Floor Attn: Brian McCarthy New York, NY 10020 |
| LBHI | LB Capital Partners III, L.P. – GP | Amended and Restated Agreement of Limited Partnership of Lehman Brothers Capital Partners III L.P. dated [_____] 1995; and all other agreements related or ancillary thereto | Limited Partnership Agreement | LB Capital Partners III, L.P. – GP Lehman Brothers Holdings Inc. 1271 Avenue of the Americas 38th Floor Attn: Brian McCarthy New York, NY 10020 |
| LBHI | LB Capital Partners III, L.P. – LP | Amended and Restated Agreement of Limited Partnership of Lehman Brothers Capital Partners III L.P. dated [_____] 1995; and all other agreements related or ancillary thereto | Limited Partnership Agreement | LB Capital Partners III, L.P. – LP Lehman Brothers Holdings Inc. 1271 Avenue of the Americas 38th Floor Attn: Brian McCarthy New York, NY 10020 |
| LCPI | Greenbrier Minerals, LLC | Amended and Restated Credit Agreement of Greenbrier Minerals, LLC dated as of May 1, 2007; and all other agreements related or ancillary thereto | Credit agreement | Greenbrier Minerals, LLC Anjean Road P.O. Box G Attn: Joseph C. Turley, III Rupert, WV 25984 |
| LCPI | Petroleum Realty Investment Partners, L.P. | Limited Partnership Agreement of Petroleum Realty Investment Partners, L.P. dated as of April 20, 1999; and all other agreements related or ancillary thereto | Limited Partnership Agreement | Petroleum Realty Investment Partners, L.P. 88 West Main Street Columbus, OH 43215 |

| Debtor[1] | Counterparty | Title of Agreement | Description[2] | Notice Address |
|---|---|---|---|---|
| LCPI | Lexington Coal Company, LLC | Amended and Restated Limited Liability Company Agreement of Lexington Coal Company, LLC dated April 28, 2010; and all other agreements related or ancillary thereto | Amended and Restated LLC Operating Agreement | Lexington Coal Company, LLC 200 West Vine Street Suite 300 Lexington, KY 40507 |

# EXHIBIT 2

## PART G – INSURANCE CONTRACTS

**THE DEBTORS HAVE NOT INCLUDED ANY OF THEIR INSURANCE CONTRACTS ON EXHIBIT 2, PART H, BECAUSE THEY DO NOT BELIEVE SUCH CONTRACTS ARE EXECUTORY CONTRACTS. IN THE EVENT THAT THE BANKRUPTCY COURT DETERMINES THAT SUCH CONTRACTS ARE EXECUTORY CONTRACTS, THEN ALL OF THE DEBTORS' INSURANCE POLICIES (OTHER THAN FOR PREPETITION WORKERS' COMPENSATION POLICIES) AND ANY AGREEMENTS, DOCUMENTS OR INSTRUMENTS WITH INSURERS RELATING THERETO SHALL BE TREATED AS IF THEY WERE LISTED HEREIN AND ASSUMED AND THE REQUIRED CURE AMOUNT FOR SUCH CONTRACTS SHALL BE ZERO.**

# EXHIBIT 3

# PLAN TRUST AGREEMENT

## PLAN TRUST AGREEMENT

This Plan Trust Agreement (this "Trust Agreement"), dated and effective as of [●], 2011, by and among Lehman Brothers Holdings Inc. ("LBHI") and the following parties (each, together with any successor thereto, a "Trustee" and collectively, the "Trustees"), (1) Rutger Schimmelpenninck, not in his individual or personal capacity, but solely in his capacity as co-bankruptcy trustee (curatoren) for Lehman Brothers Treasury Co. B.V., (2) Dr. Michael C. Frege, not in his individual or personal capacity, but solely in his capacity as insolvency administrator (Insolvenzverwalter) of Lehman Brothers Bankhaus AG, (3) John Suckow, not in his individual or personal capacity, but solely in his capacity as the President of LBHI and designee of LBHI, (4) Julie Becker of Wilmington Trust, N.A., and Noel P. Purcell of Mizuho Corporate Bank, Ltd., neither in her or his, respectively, individual or personal capacity, but solely in her or his, respectively, capacity as a co-chairperson and member of the Creditors' Committee, (5) Thomas A. Tormey of Goldman Sachs & Co., not in his individual or personal capacity, but solely in his capacity as the designee of the Opco Plan Proponents that are PSA Creditors, (6) Christian Wyatt of Fir Tree Partners, not in his individual or personal capacity, but solely in his capacity as a member and the designee of the group of creditors generally known in these cases as the Ad Hoc Group of Lehman Brothers Creditors that are PSA Creditors, and (7) Michael F. DeMichele of The Baupost Group, L.L.C., and Robert P. Ryan of Elliott Management, neither in his individual or personal capacity, but solely in his capacity as the designee of the following group of PSA Creditors: Carval Investors UK Limited, Davidson Kempner Capital Management LLC, Elliott Management Corporation, King Street Capital Management LP, Och-Ziff Capital Management Group LLC, The Baupost Group LLC and Varde Partners LP, executed in connection with the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its affiliated debtors (as the same has been or may be amended, the "Plan"), as confirmed on [●] by the United States Bankruptcy Court for the Southern District of New York (the "Court"), provides for the establishment of a liquidating trust evidenced hereby (the "Plan Trust") in accordance with the Plan. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

### W I T N E S S E T H

WHEREAS, the Plan Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Plan Trust is created on behalf of, and for the sole benefit of, the holders of record of LBHI Stock (including any permitted successor record holder thereof, the "Beneficiaries");

WHEREAS, the Plan provides that on the Effective Date all LBHI Stock is to be canceled and LBHI shall issue the Plan Trust Stock (which shall replace the canceled LBHI Stock) to the Plan Trust, to be held for the benefit of the Beneficiaries consistent with their former relative priority and economic entitlements as holders of LBHI Stock and Sections 4.17(b) and (c) of the Plan; and

WHEREAS, the Plan Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d);

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, LBHI and the Trustees agree as follows:

ARTICLE I

ESTABLISHMENT OF THE PLAN TRUST

1.1     Purpose of the Plan Trust.  The Plan Trust is established for the sole purpose of (i) holding the Plan Trust Stock in accordance with the Plan and with no objective or authority to continue or engage in the conduct of a trade or business, (ii) aiding in the implementation of the Plan and (iii) receiving and distributing any proceeds with respect to the Plan Trust Stock pursuant to the Plan (the "Stock Distributions"), in each of cases (i) through (iii), for the benefit of the Beneficiaries consistent with the relative priority and economic entitlements of their former holdings of LBHI Stock immediately prior to the Commencement Date.  Accordingly, the Trustees shall, and hereby represent that they shall, in an expeditious but orderly manner, make timely distributions of any Stock Distributions and not unduly prolong the duration of the Plan Trust.  Nothing in this Section 1.1 shall be deemed to permit the Trustees to sell, liquidate, distribute or otherwise transfer or encumber the Plan Trust Stock.

1.2     Transfer of Property to Trustees.  Pursuant to the Plan, LBHI and the Trustees hereby establish, on behalf of the Beneficiaries consistent with their former relative priority and economic entitlements as holders of LBHI Stock, the Plan Trust, and on the Effective Date, LBHI shall issue and deliver to the Plan Trust the Plan Trust Stock free and clear of any Lien, Claim, or equity interest in such property of any other Person except as provided in the Plan. The Trustees shall have no duty to confirm the legality or the sufficiency of any of the issuances, transfers and assignments contemplated hereunder and shall incur no liability in connection therewith.  The Trustees agree to accept and hold the Plan Trust Stock and the Stock Distributions in trust for the Beneficiaries consistent with their former relative priority and economic entitlements as holders of LBHI Stock, subject to the terms of this Trust Agreement.

1.3     Relationship to the Plan.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan).  To that end, the Trustees shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, the Confirmation Order and this Trust Agreement.  Additionally, the Trustees may seek any orders from the Court, upon notice and an opportunity for a hearing in furtherance of implementation of the Plan, the Confirmation Order and this Trust Agreement.  To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

1.4     Title to Plan Trust Stock and the Stock Distributions.

(a)     The issuance or transfer, respectively, of the Plan Trust Stock and the Stock Distributions to the Plan Trust are made by LBHI for the benefit and on behalf of the Beneficiaries consistent with their former relative priority and economic entitlements as holders

of LBHI Stock.  The Plan Trust may not exercise any voting rights appurtenant to the Plan Trust Stock in conflict with Article VII of the Plan.

(b)    For all purposes, including, without limitation, U.S. federal income taxes, all parties (including, without limitation, LBHI, the Trustees, and the Beneficiaries) shall be deemed to treat the transfer by LBHI of assets to the Plan Trust as (A) a transfer of such assets directly to the Beneficiaries followed by (B) the transfer by such Beneficiaries to the Plan Trust of such assets in exchange for beneficial interests in the Plan Trust.  Accordingly, the Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the Plan Trust Stock and the Stock Distributions.

1.5    <u>Rights of Beneficiaries</u>.  The Beneficiaries shall be the beneficial owners of the Plan Trust created by this Trust Agreement and the Trustees shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.  In the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, the Plan Trust may receive Stock Distributions which will then be distributable among the Beneficiaries consistent with each Beneficiary's rights of payment as holders of LBHI Stock existing immediately prior to the Commencement Date, subject to all of the terms and provisions of this Trust Agreement, the Plan and the Confirmation Order (the Beneficiaries' interests in such Stock Distributions and the Plan Trust Stock, the "<u>Interests</u>").

1.6    <u>Ownership and Control of Assets of the Plan Trust</u>.  Except as is hereinafter expressly provided, no Beneficiaries shall have any title or right to, or possession, management or control of the assets of the Plan Trust, or any right to call for a partition, division or accounting of the assets of the Plan Trust, and no widower, widow, heir or devisee of any individual who may be a Beneficiary, or bankruptcy trustee, receiver or similar person of any Beneficiary shall have any right, statutory or otherwise (including any right of dower, homestead or inheritance, or of partition, as applicable), in any of the assets of the Plan Trust, but the whole title to all of the assets of the Plan Trust shall be vested in the Trustees and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Trust Agreement.

1.7    <u>Costs and Expenses of the Plan Trust</u>.  LBHI shall be responsible for and pay any and all actual, reasonable and necessary costs and expenses of the Plan Trust, including any claims of or reimbursements to the Trustees, and actual, reasonable and necessary fees and expenses of the Trustees and retained professionals, in each case, in accordance with the terms of this Trust Agreement and the Plan; provided, however, that nothing herein shall limit LBHI's right to allocate among, or seek reimbursement from, any of its Affiliates for such costs, fees and expenses pursuant to the Debtor Allocation Agreement (as such term is defined in the Plan).

ARTICLE II

INTERESTS

2.1    <u>Identification of Beneficiaries</u>.  The record holders of the Interests, or Beneficiaries, shall be recorded and set forth in a register maintained by, or at the direction of, the Trustees expressly for such purpose.  The initial list of record holders of Interests shall be

delivered to, or at the direction of, the Trustees by LBHI and shall be based on the list of holders of LBHI Stock as maintained by LBHI, as of the date prior to the date hereof. Except as otherwise required by law, all references in this Trust Agreement to holders shall be read to mean holders of record as set forth in the official register maintained by, or at the direction of, the Trustees and shall not mean any beneficial owner not recorded on such official registry. Unless expressly provided herein, the Trustees may establish a record date which they deem practicable for determining the holders for a particular purpose.

2.2     <u>Non-Transferability of Interests</u>.  The Interests shall not be certificated and shall not be transferable, assignable, pledged or hypothecated, in whole or in part, except with respect to a transfer by will or under the laws of descent and distribution.  Any such permitted transfer, however, will not be effective until and unless the Trustees, or their designee, receive written notice of such transfer.

ARTICLE III

AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES

3.1     <u>Authority of Trustees</u>.  The Trustees are authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Plan Trust in accordance with this Trust Agreement and the Plan.  Without limiting, but subject to, the foregoing and Section 3.2 hereof, the Trustees shall be expressly authorized, but shall not be required, to:

(a)     hold legal title to any and all rights of the holders of the Interests in or arising from the Plan Trust Stock and the Stock Distributions, including, but not limited to, collecting any and all money and other property belonging to the Plan Trust;

(b)     protect and enforce the rights to the Plan Trust Stock and the Stock Distributions by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(c)     determine and satisfy any and all liabilities created, incurred or assumed by the Plan Trust;

(d)     file, if necessary, any and all tax and information returns with respect to the Plan Trust and pay taxes properly payable by the Plan Trust, if any;

(e)     assert or waive any privilege or defense on behalf of the Plan Trust or LBHI;

(f)     pay all expenses and make all other payments relating to the Plan Trust and its assets;

(g)     obtain insurance coverage with respect to the liabilities and obligations of the Trustees under this Trust Agreement (in the form of an errors and omissions policy or otherwise);

(h)     retain and pay such independent law firms as counsel to the Plan Trust as the Trustees in their sole discretion may select to perform such other functions as may be appropriate in the Trustees' sole discretion.  The Trustees may commit the Plan Trust to and shall pay such independent law firms reasonable compensation for services rendered and expenses incurred.  The Trustees may retain counsel on a *nunc pro tunc* basis, to a date prior to the Effective Date;

(i)     retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Plan Trust as may be appropriate in the Trustees' sole discretion and to prepare and file any tax returns or informational returns for the Plan Trust as may be required.  The Trustees may retain an independent accounting firm on a *nunc pro tunc* basis, to a date prior to the Effective Date.  The Trustees may commit the Plan Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred; and

(j)     retain and pay such other third parties not contemplated above in this Section 3.1 as the Trustees, in their sole discretion, may deem necessary or appropriate to assist the Trustees in carrying out their powers and duties under this Trust Agreement.  The Trustees may commit the Plan Trust to and shall pay all such Persons reasonable compensation for services rendered and expenses incurred, as well as commit the Plan Trust to indemnify any such parties in connection with the performance of services, on a *nunc pro tunc* basis, to a date prior to the Effective Date.

3.2     <u>Majority Approval; Limitation of Trustees' Authority</u>.  Unless otherwise provided herein, any act of the Plan Trust shall require the approval of and shall be approved by the affirmative vote of a majority of the Trustees. Notwithstanding anything herein to the contrary, the Trustees shall not and shall not be authorized to engage in any trade or business on behalf of the Plan Trust, and shall take such actions consistent with the orderly liquidation of the assets of the Plan Trust as are required by applicable law, and such other actions permitted under this Trust Agreement.  Notwithstanding any other authority granted by Section 3.1 hereof, the Trustees are not authorized to engage in any investments or activities on behalf of the Plan Trust inconsistent with the treatment of the Plan Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

3.3     <u>Books and Records</u>.  The Trustees shall maintain in respect of the Plan Trust and the Beneficiaries books and records relating to the assets of the Plan Trust and income of the Plan Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Plan Trust.  Nothing in this Trust Agreement requires the Trustees to file any accounting or seek approval of any court with respect to the administration of the Plan Trust, or as a condition for managing any payment or distribution out of the assets of the Plan Trust.  Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Trustees to inspect such books and records (including financial statements), subject to the Trustees' right to deny access in a reasonable effort to preserve privileged or confidential information or protect litigation or

other strategies and provided that, if so requested, such holder shall have entered into a confidentiality agreement satisfactory in form and substance to the Trustees. Any books and records determined by the Trustees, in their sole discretion, not to be reasonably necessary for administering the Plan Trust or for the Trustees' compliance with the provisions of this Trust Agreement may, to the extent not prohibited by applicable law and at any time following the Effective Date, be destroyed.

3.4    (a)    Additional Powers. Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Court as provided for in the Plan, but without prior or further authorization, the Trustees may control and exercise authority over the assets of the Plan Trust and over the protection, conservation and disposition thereof. No Person dealing with the Plan Trust shall be obligated to inquire into the authority of the Trustees in connection with the protection, conservation or disposition of the assets of the Plan Trust.

(b)    Execution of Documents. Subject to any contrary direction that the Plan Trust has provided, all agreements, contracts, deeds, instruments, certificates, applications, approvals, proxies, powers of attorney, undertakings, filings and other documents of the Plan Trust shall require the execution and delivery thereof, for and on behalf of the Plan Trust, by any two Trustees, except as otherwise provided by law.

3.5    (a)    Periodic Distribution; Withholding. The Trustees shall distribute to the Beneficiaries Stock Distributions as soon as practicable following receipt thereof and at least annually; provided, however, that prior to making any distribution to Beneficiaries, the Plan Trust may retain such amounts, in each case to the extent not paid for by LBHI, (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Plan Trust during liquidation, (ii) to pay actual, reasonable and necessary administrative expenses (including the actual, reasonable and necessary fees, costs and expenses of the Trustees and all professionals they retain and any taxes imposed on the Plan Trust or in respect of the assets of the Plan Trust), and (iii) to satisfy other liabilities incurred or assumed by the Plan Trust (or to which the assets of the Plan Trust are otherwise subject) in accordance with the Plan or this Trust Agreement. All such distributions shall be made consistent with the Beneficiaries' rights as holders of LBHI Stock existing prior to the Commencement Date, subject to the terms of the Plan and this Trust Agreement. The Trustees may withhold from amounts distributable to any Person any and all amounts, determined in the Trustees' reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Notwithstanding the foregoing, in no event shall any Beneficiary receive a distribution of Plan Trust Stock.

(b)    Manner of Payment or Distribution. All distributions made by the Trustees to Beneficiaries shall be payable to the holders of Interests of record as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day, in which case such day shall be the following Business Day (the "Record Date"). If the distribution shall be in Cash, the Trustees shall distribute such Cash by wire, check, or such other method as the Trustees deem appropriate under the circumstances.

(c)     Delivery of Trust Distributions.  All distributions under this Trust Agreement to any Beneficiary shall be made at the address of such Beneficiary as set forth in the register or at such other address as such Beneficiary shall have specified for payment purposes in a written notice to the Trustees at least fifteen (15) days prior to such distribution date.  In the event that any distribution to any holder is returned as undeliverable, the Trustees shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Trustees have determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution.  The Trustee shall reallocate all undeliverable and unclaimed distributions for the benefit of all other Beneficiaries.

3.6     Duties of the Trustees.

(a)     Reporting Duties.

(i)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustees of a private letter ruling if the Trustees so request one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustees), the Trustees shall file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).  Within seventy-five (75) days following the end of each calendar year or as soon as practicable thereafter, the Trustees shall also annually send to each Beneficiary a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit, if any, and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the holders with instructions to report such items on their federal income tax returns.

(ii)     Allocations of Plan Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Plan Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Interests, taking into account all prior and concurrent distributions from the Plan Trust.  Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of the Plan Trust.  The tax book value of the assets of the Plan Trust for this purpose shall equal their fair market value on the date the Plan Trust was created or, if later, the date such assets were acquired by the Plan Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

(iii)     The Trustees may request an expedited determination of taxes of the Plan Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust.

(iv)     The Trustees shall file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental authority.

(b)    **LBHI Board of Directors**. At such time as a vacancy on the board of directors of LBHI is to be filled or there is a vote on the election of a director upon the expiration of a director's term of office, the Plan Trust shall fill such vacancy voting the Plan Trust Stock in accordance with the majority approval of the Trustees. At all other times, the Plan Trust may act and vote the Plan Trust Stock, by majority approval of the Trustees, to remove and replace directors of LBHI, only with cause.

3.7    **Compliance with Laws**.  Any and all distributions of Stock Distributions and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE IV

## THE TRUSTEES

4.1    **Generally**.  The Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Trust Agreement, the Plan and the Confirmation Order and not otherwise, except that the Trustees may deal with the assets of the Plan Trust for their own account as permitted by Section 4.5 hereof.

4.2    **Liability of Trustees, Indemnification**.  None of the Trustees, their designees or professionals engaged by or on behalf of the Trustees, or any duly designated agent or representative of the Trustees shall be liable for the act or omission of any other agent or representative of the Trustees, nor shall any Trustee be liable for any action taken, suffered or omitted to be taken in his capacity as Trustee, unless it is ultimately determined by Final Order that such Person's acts or omissions constituted willful misconduct, gross negligence, or bad faith.  In no event shall a Trustee be liable or responsible for special, punitive, indirect, consequential or incidental loss or damages of any kind whatsoever to any Person (including, without limitation, lost profits), even if the Trustee has been advised of the likelihood of such loss or damage.  The Trustees may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Trustees shall not be under any obligation to consult with his attorneys, accountants, financial advisors, or agents, and a determination not to do so shall not result in the imposition of liability on the Trustees or, as applicable, their designees, unless it is ultimately determined by Final Order that the Trustees' determination constituted willful misconduct, gross negligence, or bad faith.  The Plan Trust shall indemnify and hold harmless the Trustees, their designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Plan Trust or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions to the extent that it is ultimately determined by Final Order that such Persons actions or omissions constituted willful misconduct, gross negligence, or bad faith.

If a Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Trust Agreement or the affairs of the Plan Trust or the Debtors, the Plan Trust shall periodically advance or otherwise reimburse on demand the actual, reasonable and necessary legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) of the Trustee incurred in connection therewith, but the Trustee shall be required to repay promptly to the Plan Trust the amount of any such advanced or reimbursed expenses paid to the Trustee to the extent that it shall be ultimately determined by Final Order that the Trustee engaged in willful misconduct, gross negligence or bad faith in connection with the affairs of the Plan Trust or the Debtors with respect to which such expenses were paid.

4.3     Reliance by Trustees.  Except as otherwise provided in Section 4.2 hereof:

(a)     each Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties; and

(b)     no Trustee shall have any personal obligation to satisfy any liability of the Plan Trust.

4.4     Investment and Safekeeping of Assets of the Plan Trust.  The right and power of the Trustees to invest assets of the Plan Trust, the proceeds thereof, or any income earned by the Plan Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations and the guidelines set forth in Rev. Proc. 94-45, 1994-2 C.B. 684, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.  The Trustees shall have no liability or responsibility for any investment losses, including, without limitation, any market loss on any investment liquidated (whether at or prior to maturity) in order to make a payment required under this Trust Agreement.

4.5     Expense Reimbursement and Compensation.  The assets of the Plan Trust shall be subject to the claims of the Trustees, and the actual, reasonable and necessary costs and expenses of the Plan Trust, including the actual, reasonable and necessary fees and expenses of the Trustees and their retained professionals, to the extent not paid for by LBHI, shall be paid out of the Stock Distributions.  To the extent not paid by LBHI, the Trustees shall be entitled to reimbursement out of any available Cash in the Plan Trust, for actual,  out-of-pocket, reasonable and necessary expenses and for any and all loss, liability, claims, costs, expense, or damage which the Trustees may sustain without willful misconduct, gross negligence, or willful fraud in the exercise and performance of any of the powers and duties of the Trustees under this Trust Agreement. As compensation for the performance of their duties, the Trustees will be entitled to reasonable compensation in such amounts as the Plan Trust may fix from time to time, consistent with that of similar functionaries in similar types of bankruptcy proceedings.  The Trustees may be compensated on a *nunc pro tunc* basis, to a date prior to the Effective Date.  Such costs and expenses shall be considered administrative costs of LBHI's estate.  Nothing herein shall limit LBHI's right to allocate among, or seek reimbursement from, any of its Affiliates for the costs,

fees and expenses contemplated in Section 1.7 and this Section 4.5 pursuant to the Debtor Allocation Agreement (as such term is defined in the Plan).

4.6 <u>No Bond</u>. The Trustees shall serve without bond.

4.7 <u>Confidentiality</u>. Each Trustee shall, during the period that he serves as Trustee under this Trust Agreement and for a period of twelve (12) months following the termination of this Trust Agreement or following his removal or resignation hereunder, hold strictly confidential and not use for personal gain all confidential information and any material, non-public information of the Plan Trust, the Debtors and any Affiliate thereof or of which such Trustee has become aware in his capacity as Trustee, except as otherwise required by law.

ARTICLE V

SUCCESSOR TRUSTEES

5.1 <u>Removal</u>. A Trustee may be removed by the unanimous vote of the other Trustees. Such removal shall become effective on the date action is taken by the other Trustees.

5.2 <u>Resignation</u>. A Trustee may resign by giving not less than ninety (90) days prior written notice thereof to the other Trustees. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice, and (ii), if such Trustee is the last Trustee then in office, the appointment of a successor by the Court and the acceptance by such successor of such appointment. If a successor Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

5.3 <u>Appointment of Successor Trustee</u>. In the event of the death (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is not a natural person), resignation pursuant to Section 5.2 hereof, incompetency, or removal of the Trustee pursuant to Section 5.1 hereof, the remaining Trustees shall by majority vote appoint a successor Trustee if in their discretion the circumstances of this Plan Trust warrant doing so. Such appointment shall specify the date on which such appointment shall be effective. Every successor Trustee appointed hereunder shall execute, acknowledge, and deliver to the Plan Trust and to the retiring Trustee an instrument accepting the appointment under this Trust Agreement and agreeing to be bound thereto, and thereupon the successor Trustee, without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Trustee; <u>provided</u>, <u>however</u>, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee all the estates, properties, rights, powers, and trusts of such predecessor Trustee under the Plan Trust.

## ARTICLE VI

## REPORTS TO HOLDERS OF PLAN TRUST INTERESTS

6.1     Securities Laws and Other Reports to Beneficiaries.

(a)     Securities Laws.  Under section 1145 of the Bankruptcy Code, the issuance of Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities.  If the Trustees determine, with the advice of counsel, that the Plan Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustees shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

(b)     Other Reporting.  If the Trustees are not required to file the periodic reports referred to in Section 6.1(a) above, as soon as practicable, the Trustees may post on a website to which the Beneficiaries have access, and, while the Debtors' bankruptcy cases remain open, file with the Court, reports setting forth in reasonable detail any material event or change that occurs with respect to the Trust, which, to the knowledge of the Trustee, affects the Beneficiaries hereunder, which reports shall not be required to be audited or in compliance with generally accepted accounting principles.

## ARTICLE VII

## TERMINATION OF PLAN TRUST

7.1     Termination of Plan Trust.

(a)     The Plan Trust shall terminate on the earlier of:  (i) thirty (30) days after the final distribution of all of the Stock Distributions in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order and the cancellation of the Plan Trust Stock and (ii) the third (3rd) anniversary of the Confirmation Date; provided, however, that, prior to the date of such termination (and the termination of any future extended terms), the Court, upon motion by a party in interest on notice with an opportunity for a hearing, may extend the maximum term of the Plan Trust set forth in this clause (ii) if it is necessary to the liquidation of the assets of the Plan Trust and the Debtors, for a term not to exceed nine (9) years from the Confirmation Date.

(b)     Continuance of Trust for Winding Up.  After the termination of the Plan Trust and solely for the purpose of liquidating and winding up the affairs of the Plan Trust, the Trustees shall continue to act as such until their duties have been fully performed.  At such time, to the extent that any funds remain in the Plan Trust that were provided to the Trustees by LBHI to cover trust expenses, such funds shall be transferred to LBHI in accordance with the Plan.  Upon distribution of all assets of the Plan, which shall not include a distribution of the Plan Trust Stock to the Beneficiaries, the Trustees shall retain the books, beneficiary lists, registers, records and files which shall have been delivered to or created by the Trustees.  At the Trustees'

discretion, all of such records and documents may be destroyed in accordance with Section 3.3. Except as otherwise specifically provided herein, upon the distribution of all assets of the Plan Trust, the Trustee shall have no further duties or obligations hereunder except the obligations under Section 3.3 hereof.

ARTICLE VIII

AMENDMENT AND WAIVER

8.1     <u>Amendment and Waiver</u>.  Any provision of this Trust Agreement may be amended or waived by the affirmative vote of two-thirds of the Trustees, upon notice to the Beneficiaries.  Notwithstanding this Section 8.1, any waiver or amendments to this Trust Agreement shall not:  (i) be inconsistent with the purpose and intention of the Plan Trust to liquidate in an expeditious but orderly manner the assets of the Plan Trust in accordance with Treasury Regulation Section 301.7701-4(d); (ii) be inconsistent with the purposes of the Plan and the Confirmation order, (iii) permit any distribution or other transfer by the Plan Trust of the Plan Trust Stock; (iv) permit any transfer of the Interests other than in accordance with Section 2.2 hereof; or (v) permit any amendment or waiver of this Section 8.1.  Additionally, no change may be made to this Trust Agreement that would be inconsistent with the purpose and intention of the Plan Trust as specified herein and in the Plan, adversely affect the distributions to be made under this Trust Agreement to any of the Beneficiaries, adversely affect the U.S. federal income tax status of the Plan Trust as a "liquidating trust" or adversely affect the rights of the Creditors' Committee or this Trust Agreement.

ARTICLE IX

MISCELLANEOUS PROVISIONS

9.1     <u>Intention of Parties to Establish Plan Trust</u>.  This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

9.2     <u>Governing Law; Submission to Jurisdiction; Consent to Service of Process</u>.  This Trust Agreement shall be governed and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.  Without limiting any party's right to appeal any order of the Court, (i) the Court shall retain exclusive jurisdiction to enforce the terms of this Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Trust Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Court and the parties hereby consent to and submit to the jurisdiction and venue of the Court and shall receive notices at such locations as indicated in Section 9.4 hereof; <u>provided</u>, <u>however</u>, that if the Chapter 11 Cases have closed or if the Court refuses to exercise its jurisdiction (including in respect of any provision herein which refers to the Court), the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in

New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto hereby consents to process being served by any party to this Trust Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.4.

9.3     Severability. If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.4     Notices. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if personally delivered or sent by mail, postage prepaid, or by facsimile addressed to the person for whom such notice is intended as follows (or such other address as may be designated by notice given in accordance with this Section 9.4):

(a)     If to a Trustee, to the address and facsimile number set forth opposite such Trustee's name on Schedule 9.4 hereto, with copies to any other Person with its name, address and facsimile number set forth opposite such Trustee's name.

(b)     If to a Debtor, to the address and facsimile number set forth opposite such Debtor's name on Schedule 9.4 hereto, with copies to any other Person with its name, address and facsimile number set forth opposite such Debtor's name.

(c)     If to a Beneficiary, to the name and address set forth on the registry maintained by, or at the direction of, the Trustees.

9.5     Headings. The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

9.6     Certain Defined Term. For purposes of this Trust Agreement, the following term shall have the meanings set forth in this Section 9.6:

"Person" means any individual, corporation, partnership, limited liability company, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Unit or other entity.

*[The remainder of this page is left blank intentionally.]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
     Name:
     Title:


RUTGER SCHIMMELPENNINCK, solely in his capacity as co-bankruptcy trustee (curatoren) for Lehman Brothers Treasury Co. B.V.

_____
____
Title:


DR. MICHAEL C. FREGE, solely in his capacity as insolvency administrator (Insolvenzverwalter) of Lehman Brothers Bankhaus AG

_____
____
Title:


JOHN SUCKOW, solely in his capacity as President of LBHI and designee of LBHI

_____
____
Title:

JULIE BECKER of Wilmington Trust, N.A., solely in her capacity as a co-chairperson and Member of the Creditors' Committee

_____

Title:

NOEL P. PURCELL of Mizuho Corporate Bank, Ltd., solely in his capacity as a co-chairperson and member of the Creditors' Committee

_____

Title:

THOMAS A. TORMEY of Goldman Sachs & Co., solely in his capacity as the designee of the Opco Plan Proponents that are PSA Creditors

_____

Title:

CHRISTIAN WYATT of Fir Tree Partners, solely in his capacity as member and the designee of the group of creditors generally known as the Ad Hoc Group of Lehman Brothers Creditors that are PSA Creditors

_____

Title:

MICHAEL F. DEMICHELE of The Baupost Group, L.L.C.,
solely in his capacity as the designee of certain PSA Creditors

_____

____
Title:


ROBERT P. RYAN, of Elliott Management, solely in his
capacity as the designee of certain PSA Creditors

_____

____
Title:

## SCHEDULE 9.4

## NOTIFICATION INFORMATION OF LBHI AND THE TRUSTEES

| Lehman Brothers Holdings Inc. | Address:  [●] <br><br> Attn:  Plan Administrator <br><br> Fax: |
|---|---|

**TRUSTEES:**

| Rutger Schimmelpenninck | Address: <br><br> Fax: |
|---|---|
| Dr. Michael C. Frege | Address: <br><br> Fax: |
| John Suckow | Address: <br><br> Fax: |
| Julie Becker | Address: <br><br> Fax: |
| Noel P. Purcell | Address: <br><br> Fax: |
| Thomas A. Tormey | Address: <br><br> Fax: |
| Christian Wyatt | Address: <br><br> Fax: |
| Michael F. DeMichele | Address: <br><br> Fax: |

| Robert P. Ryan | Address: |
| | Fax: |

**EXHIBIT 4**

**FORM OF DEBTOR ALLOCATION AGREEMENT**

# DEBTOR ALLOCATION AGREEMENT

This agreement (the "Debtor Allocation Agreement") is entered into as of [ ], 2011, by and among the Debtors[1] and certain of their affiliated Non-Debtors[2] (collectively, the "Parties" and each a "Party").

## Recitals

A.     On September 15, 2008 or on various dates thereafter (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which, together, are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases").

B.     On September 1, 2011, the Debtors filed with the Bankruptcy Court the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (as it may be further amended or modified, the "Plan").

C.     The Parties have agreed that it is appropriate to enter into this Debtor Allocation Agreement with respect to the rights and obligations not otherwise set forth in the Plan for the expenses of administration of the Parties' assets (including the fees and expenses of the indenture trustees and members of the Creditor's Committee Allowed pursuant to Section 6.7 of the Plan), the costs and benefits of Jointly Owned Litigation Claims (as that term is defined in

---

[1]    As used herein, "Debtors" refers to Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; and PAMI Statler Arms LLC.

[2]    As used herein, "Non-Debtors" refers to the non-Debtor parties that are signatories hereto.

the Plan), and commonly held tax benefits and obligations (including those tax benefits and obligations to be allocated pursuant to an order of the Bankruptcy Court, dated May 18, 2011).

**Agreement**

1) **Definitions**.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

2) **Expenses of Administration of the Parties' Assets and Liabilities**.

   a) The expenses of the administration of the Parties' assets and liabilities shall be allocated by the Plan Administrator pursuant to one or more agreements that are effectuated subsequent to the Effective Date and that are approved by the respective boards of directors or managers of the relevant Parties.

   b) LBSF shall have an Administrative Expense Claim against LBHI in the amount of $300 million, which shall be Allowed and satisfied in accordance with Section 6.3 of the Plan.

3) **Costs and Benefits of Jointly Owned Litigation Claims**.  The costs and benefits of Jointly Owned Litigation Claims shall be allocated by the Plan Administrator pursuant to one or more agreements that are effectuated subsequent to the Effective Date and that are approved by the respective boards of directors or managers of the relevant Parties.

4) **Commonly Held Tax Benefits and Obligations**.   The following comprise the agreements in principle among the Parties relating to their respective rights and obligations with respect to the allocation of any tax liabilities, refunds or readjustments for periods prior to, during and after the Effective Date, and shall be binding on the Parties, subject to any future amendments.[3]

---

[3]     Notwithstanding anything to the contrary herein, (i) Aurora Bank F.S.B. and Woodlands Commercial Bank and their respective Subsidiaries, which have separate tax allocation agreements, shall not be bound by or have the benefit of this Paragraph 4, and (ii) the term "Parties" as used in this Paragraph 4 shall not include any Party that is a foreign entity.  The term "Controlled Subsidiary" wherever used within this Paragraph 4 shall mean any non-Party

a) ***Tax Liabilities and Readjustments for Pre-2009 Taxable Years – Group Taxes.***

   i) <u>Handling of Audits and Other Tax Proceedings</u>.  The Parties acknowledge and agree that LBHI is, and shall continue to be, authorized to undertake any and all actions that are within the scope of LBHI's authority under applicable Treasury Regulations or state or local law, as the common parent of the tax filing group, in connection with any audit, examination or other tax proceeding involving taxes filed on a group basis.

   ii) <u>Allocation of Tax Liabilities and Compensation for Use of Other Member Tax Benefits</u>.  For pre-2009 taxable years, LBHI shall calculate the amount payable (or for which a Claim would otherwise be Allowed, as provided in Paragraph 4(a)(ii)(2) and (3) below) by or to a Party or a Controlled Subsidiary with respect to any group tax liability, and the use of one member's income against another member's losses, credits or other tax benefits, as follows:

   (1) <u>Computation of Tentative Separate Company Tax Liability</u>.

      (a) LBHI has computed, and shall continue to compute (or recompute, in the event of subsequent adjustments, such as due to an amended return, a subsequent audit, an Allowed Claim filed by a taxing authority or otherwise), each member's "Tentative Separate Company Tax Liability."

         (i) As to each group tax (inclusive of interest and penalties), a member's "<u>Tentative Separate Company Tax Liability</u>" shall be equal to the amount that would have been payable (if payment was not impaired by the Debtors' bankruptcy cases or otherwise) by the member to LBHI based on historic tax sharing principles utilized by LBHI with respect to the allocation of group tax liabilities and applicable consolidated return regulations (including, without limitation, the application and absorption of any consolidated net operating loss, capital loss, or credit carried back or forwards consistent with the principles of Treasury Regulation Section 1.1502-79, and payment for the use of another member's tax benefits).

         (ii) In connection with the reallocation and redetermination of a member's liability resulting from the New York State tax settlement approved by the Bankruptcy Court on May 18, 2011, and any other settlement of a group tax, LBHI shall, to the extent that issues were resolved on a collective group and not individual entity basis, equitably determine each member's Tentative Separate Company Tax Liability with respect to such group taxes, taking into account (in the case of the New York State settlement) the manner in which any comparable issue was resolved for New York City tax purposes.

---

domestic direct or indirect subsidiary of a Party that is part of LBHI's federal consolidated tax group or as to which a Party has at least 50% direct or indirect control (excluding, however, LBI, Lehman Re Ltd., and Townsend Analytics Ltd.; it being understood that such companies may still be members of an applicable tax filing group for computational purposes).

(b) In a similar manner to that described in subsection (a) above, LBHI has computed, and shall continue to compute (and as applicable, recompute), the amount that would have been payable to a member whose tax benefits were used to offset the income of other members of the group (herein referred to as a member's "Tentative Separate Company Tax Receivable").

(2) Payment of Allowed Priority and Administrative Claims for Group Taxes.  Each Debtor against whom a taxing authority has an Allowed Priority Tax Claim or an Allowed Administrative Expense Claim for a group tax liability for any taxable year, and each non-Debtor Controlled Subsidiary, shall pay over to LBHI as agent (in installments, if applicable) its allocable portion of the outstanding tax liability for such taxable year prior to the due date(s) of such liability, and in turn, LBHI shall pay the collective amount over to the taxing authority.  For this purpose, a member's allocable portion of such outstanding tax liability shall be equal to the ratio that (A) the increase in such member's Tentative Separate Company Tax Liability for the year (resulting from the adjustments giving rise to the additional group liability) bears to (B) the aggregate increase in the Tentative Separate Company Tax Liability of all members for the year (resulting from such adjustments); provided, however, that LBHI shall adjust such allocation as appropriate to take into account any special limitations on the ability of losses or credits to offset certain types of income.

(3) Affiliate Claim and Payment of Remaining Amounts.

(a) LBHI shall have an additional Allowed Affiliate Claim, payable in accordance with the Plan, against each Debtor in the amount by which its Tentative Separate Company Tax Liability exceeds the sum of (x) the amount payable by the Debtor under Paragraph 4(a)(ii)(2) above and (y) any amounts payable already reflected in an Allowed Affiliate Claim of LBHI, or otherwise previously paid to LBHI, with respect to such tax liability.  In the case of a non-Debtor Controlled Subsidiary, such entity shall promptly pay to LBHI the amount by which its Tentative Separate Company Tax Liability exceeds the sum of (x) the amount payable by the Debtor under Paragraph 4(a)(ii)(2) above and (y) any amounts payable already reflected in an intercompany account, or previously paid to LBHI, with respect to such tax liability.

(b) In the case of a Party or Controlled Subsidiary that has a Tentative Separate Company Tax Receivable, such Party or Controlled Subsidiary shall have an Allowed Affiliate Claim against LBHI in the amount by which (x) its Tentative Separate Company Tax Receivable exceeds (y) any amounts receivable already reflected in an Allowed Affiliate Claim against LBHI, or otherwise previously paid by LBHI, with respect to such Tentative Separate Company Tax Receivable.

iii) <u>Allocation of Cash Tax Refunds</u>.

   (1) Any Cash tax refunds (including any interest received, net of any taxes incurred by LBHI with respect to the receipt of the refund) shall be allocated by LBHI among the Parties and their Controlled Subsidiaries based on (i) the decrease in such member's Tentative Separate Company Tax Liability (expressed as an absolute number) or the increase in such member's Tentative Separate Company Tax Receivable, as applicable, resulting from the adjustments giving rise to the tax refund relative to (ii) the sum of the individual decreases in the Tentative Separate Company Tax Liability of all members resulting from such adjustments (expressed as a positive number) and the individual increases in the Tentative Separate Company Tax Receivable of all members resulting from such adjustments; <u>provided, however</u>, that LBHI shall adjust such allocation as appropriate to take into account any special limitations on the ability of losses or credits to offset certain types of income.

   (2) As soon as practicable following the receipt of the tax refunds, LBHI shall pay such to each Party and Controlled Subsidiary its allocable portion of such tax refund.

iv) <u>Non-Payment of Allocated Tax Liability</u>.  In the event any member of the group (including LBI) does not pay its allocable portion of any Allowed Claim for a group tax liability, whether or not required to pay under this Debtor Allocation Agreement, such liability shall (i) in the case of a non-Debtor Subsidiary (other than LBI and other non-Controlled Subsidiaries), be borne by the Debtor that owns (directly or indirectly, but disregarding any indirect ownership through another Debtor) the stock of such Controlled Subsidiary, and (ii) in all other cases (including any liability unable to be satisfied in accordance with the preceding clause), be borne by the other Debtors that are members of the applicable tax group in accordance with each such Debtor's "Net Distributable Assets" relative to all such Debtors, as reflected in Exhibit 4 to the Disclosure Statement; <u>provided</u>, <u>however</u>, that no member shall be liable under clause (ii) for a liability for which the Debtor did not have joint or several liability under an Allowed Claim.

b) ***Filing of Group Returns:  Taxable Years 2009 and After.***

i) <u>Consent to File</u>.  The Parties acknowledge and agree to continue to join in the filing of federal consolidated income tax returns (a "<u>Consolidated Return</u>") for taxable periods ending after the Effective Date, and to cause all Controlled Subsidiaries to consent, to the extent necessary, in the filing of Consolidated Returns throughout the remainder of the liquidation of the Debtors pursuant to the Plan, absent an amendment to or termination of this Debtor Allocation Agreement.

ii) <u>Preparation of Returns</u>.  LBHI shall prepare and file all required Consolidated Returns and such applications for extension of time to file such Consolidated Returns. The Parties agree, and shall cause their Controlled Subsidiaries to agree, that LBHI shall be authorized to undertake any and all actions that are within the scope of

LBHI's authority under applicable Treasury Regulations as the common parent of the consolidated group.

iii) <u>Allocation of Tax Liabilities and Compensation for Use of Other Member Tax Benefits</u>.  LBHI shall allocate the federal consolidated tax liability for each taxable year ending after 2008 among the members and determine amounts payable to or by a member with respect to the use of one member's income against another member's losses, credits or other tax benefits as follows:

(1) Subject to subsection (2) below, the consolidated tax liability shall be allocated, and members will be compensated for use of their tax benefits and other members charged for the use of such tax benefits, on the basis of the historic tax sharing principles utilized by LBHI with respect to the allocation of group tax liabilities and applicable consolidated return regulations (including, without limitation, the application and absorption of any consolidated net operating loss, capital loss, or credit carried back or forwards consistent with the principles of Treasury Regulation Section 1.1502-79).  Accordingly, even if the consolidated group has no taxable income on a group basis, a member that has net income will be required to make a tax payment in compensation for use of another member's losses.  All tax payments shall be made to LBHI, and LBHI shall make all compensating payments to the loss member.

(2) With respect to taxable years ending after the Effective Date, a member whose net income is offset by another member's losses shall only be required to make a tax payment equal to 1/3rd of the amount that would otherwise be due in respect of the use of such losses under subsection (1), and shall only be required to make additional tax payment(s) for the remainder if and when such losses would have been used by the loss member; and the loss member shall only be compensated for the use of its losses on a similar ⅓-⅔ basis.

(3) If a consolidated tax liability is adjusted for any taxable period, whether such adjustment is by means of an amended return, claim for refund, examination by the IRS reduced to settlement or otherwise determined, or otherwise, the calculations made under this Paragraph shall be recomputed by giving effect to such adjustments, and true-up payments shall be made as appropriate.  Any interest and/or penalty not specifically allocated to a particular member by the IRS may be allocated to a member upon such basis as LBHI deems just and proper in view of all applicable circumstances.

c) **State and Local Group Taxes.** To the extent two or more Parties or Controlled Subsidiaries join (or are required to join) together in the filing of a group return for state or local tax purposes for taxable periods ending after the Effective Date, any taxes, refunds and adjustments shall be allocated among the members in accordance with the principles within this Article. In the event that a Party other than LBHI is the common parent of a state or local tax filing group, the provisions of this Paragraph 4(c) shall apply in accordance with the principles of this Article, substituting such Party for LBHI.

d) **Reservation of Rights.** Nothing herein shall prejudice or enhance any right that a Party may have to setoff or recoup an amount it owes to another Party against an amount it is owed by such Party, whether pursuant to this Debtor Allocation Agreement or otherwise.

e) **Cooperation; Record Retention.** The Parties shall each cooperate fully (and each shall cause its respective Controlled Subsidiaries to cooperate fully) with all reasonable requests from another Party in connection with the preparation and filing of returns (including any schedules, consents, elections, information statements or claims for refunds), tax proceedings, and calculations of amounts required to be paid pursuant to this Debtor Allocation Agreement, in each case, related or attributable to or arising in connection with taxes of any of the Parties or their respective Controlled Subsidiaries covered by this Debtor Allocation Agreement and the establishment of any reserve required in connection with any financial reporting. In furtherance thereof, the Parties shall (i) make available, and shall cause all Controlled Subsidiaries to make available, to LBHI all materials (including, without limitation, all books and records, accounting information, financial statements, returns, supporting schedules, work papers, correspondence, and other documents) relating to the group returns as to which this Paragraph is applicable during regular business hours, and (ii) retain, and shall cause all controlled Subsidiaries to retain, all returns, schedules and workpapers, and all material records or other documents relating thereto in their possession, until sixty (60) days after the expiration of the applicable statute of limitations (including any waivers or extensions thereof) of the taxable periods to which such returns and other documents relate or until the expiration of any additional period that any Party reasonably requests, in writing, with respect to specific material records or documents. Any Party or Controlled Subsidiary intending to destroy any such material records or documents after such period shall provide LBHI with reasonable advance notice and the opportunity to copy or take possession of such records and documents.

f) **Standard of Care; Limited Warranty.** LBHI shall perform all duties to be performed by it under this Paragraph 4 with a degree of skill, diligence and prudence with which LBHI and its personnel have performed such services for the LBHI consolidated group subsequent to September 15, 2008 and prior to the Effective Date and shall be of substantially equivalent quality. THE PRECEDING IS THE ONLY WARRANTY CONCERNING THE DUTIES TO BE PERFORMED BY LBHI UNDER THIS DEBTOR ALLOCATION AGREEMENT AND ANY RESULTS, WORK PRODUCT OR PRODUCTS RELATED THERETO, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS EXPRESSED OR IMPLIED.

5) **General Provisions.**

   a) ***Effectiveness***.  Pursuant to section 6.3 of the Plan, this Debtor Allocation Agreement shall become effective on the Effective Date.

   b) ***Successors and Assigns***.  This Debtor Allocation Agreement shall bind and inure to the benefit of the respective successors and assigns of the Parties, but no assignment shall relieve any Party's obligations hereunder without the written consent of the other Parties, which shall not be unreasonably withheld.

   c) ***Entire Understanding; Amendment***.  This Debtor Allocation Agreement contains the entire understanding of the Parties with respect to the subject matter contained herein. This Agreement may not be amended without the written consent of each of the affected Parties.  The Parties recognize and acknowledge their intention to enter into additional agreements as contemplated by this Debtor Allocation Agreement.

   d) ***Governing Law; Exclusive Jurisdiction***.  The validity, interpretation, and performance of this Debtor Allocation Agreement shall be controlled and construed under the laws of the State of New York.  The Parties agree that, without limiting any Party's right to appeal to final decision, the appropriate and exclusive forum for resolving any disputes between the Parties arising out of this Debtor Allocation Agreement shall be the Bankruptcy Court, or, if such court will not hear any such suit, the United States District Court for the Southern District of New York, and, the Parties hereto irrevocably consent to the exclusive jurisdiction of such courts, and agree to comply with all requirements necessary to give such courts jurisdiction.

   e) ***Notice.***  All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to

the Party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next day that is none of a Saturday, Sunday, United States federal holiday, a New York state holiday (each a "Business Day"), (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Party at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020U.S.A.
Attn: Plan Administrator
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq.
Facsimile: (212) 310-8007

f) **_Counterparts_**.    This Debtor Allocation Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Debtor Allocation Agreement to present any copy, copies, or facsimiles signed by the Parties.

g) **_Termination_**.   This Debtor Allocation Agreement will terminate upon the earlier of the dissolution of all the Parties, or the mutual written agreement of the Parties.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Debtor

Allocation Agreement as of the date indicated below.

**EXHIBIT 5**


**COPIES OF SETTLEMENT AGREEMENTS AMONG DEBTORS AND
NON-CONTROLLED AFFILIATES PURSUANT TO
SECTION 6.5(b)(vi) OF THE PLAN**

**EXHIBIT 5**

**PART A – AGREEMENT AMONG DEBTORS, LEHMAN BROTHERS
INVESTMENT MANAGEMENT, AND LBSN**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of October 19, 2011 (the "Execution Date"), by and among the Debtors[1] and Lehman Brothers Investment Management Company Ltd. ("LBIM", together with the Debtors, "Lehman US"), on the one hand, and Michiel R.B. Gorsira and Robert F. van Beemen, in their capacity as bankruptcy trustees (curatoren) (the "LBSN Trustees") of Lehman Brothers Securities N.V. (such estate and corporate entity collectively, "LBSN"), on the other hand. Lehman US and the LBSN Trustees shall each be referred to individually as a "Party" and collectively as the "Parties". For the avoidance of doubt, whenever LBSN is required hereunder to take any actions or assume any obligations, the LBSN Trustees shall cause LBSN to take such actions or assume such obligations.

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on January 30, 2009 the Court of First Instance of the Netherlands Antilles, venue Curacao (the "Curacao Court"), adjudicated bankrupt (in staat van faillissement) the limited liability company LBSN seated in Curacao, appointing Ms. A.M.P. Geelhoed as supervising judge in charge of the bankruptcy and Michiel R.B. Gorsira as bankruptcy trustee (curator) for LBSN. On October 11, 2010 the Curacao Court appointed Mr. A.J. Beukenhorst as the new supervisory judge in charge of the bankruptcy. On May 24, 2011, the Curacao Court appointed Robert F. van Beemen as bankruptcy trustee (curator);

WHEREAS, the LBSN Trustees have, on behalf of LBSN, filed the proofs of claim listed on Schedule A attached hereto against certain Debtors (collectively, the "Proofs of Claim") for amounts that the LBSN Trustees assert are due and owing to LBSN;

WHEREAS, Lehman US has asserted amounts due and owing from LBSN (the "Liquidation Claims");

WHEREAS, LBSN issued warrants and certificates (the "LBSN Securities") pursuant to Lehman's Warrant and Certificate program;

WHEREAS, holders of LBSN Securities (the "LBSN Security Holders") have filed proofs of claim against LBHI based upon an asserted guarantee that runs in favor of LBSN Security Holders (the "LBSN Security Holder Claims");

---

[1] As used herein, the "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation ("LBCC"); Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc. ("LOTC"); Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

WHEREAS, the Parties are desirous of resolving potential disputes and all other outstanding issues between the Parties and avoiding extensive and expensive litigation;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19627] (the "Plan") and the Debtors' Disclosure Statement for the Plan [Docket No. 19629] (the "Disclosure Statement"); and

WHEREAS, each of the Debtors, either individually or jointly, will file an amendment, modification and/or supplement to the Plan that will incorporate the terms and conditions of this Agreement (the "Amended Plan");

WHEREAS, the LBSN Trustees have executed this Agreement subject to the approval by the Supervisory Judge and to the extent applicable, hereof, by a Final Order in the LBSN Case (as defined below);

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Definitions**

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Agreement" has the meaning ascribed to it in the Preamble.

"Allowed LBSN Claims" has the meaning ascribed to it in Section 2.1(b).

"Allowed LBSN Intercompany Loan Claim" has the meaning ascribed to it in Section 2.1(a).

"Allowed US Claims" has the meaning ascribed to it in Section 2.2(a).

"Alternative Plan" means a chapter 11 plan or plans, proposed by parties other than the Debtors.

"Amended Disclosure Statement" means the Disclosure Statement, as amended, modified and/or supplemented to incorporate the terms of the Amended Plan.

"Amended Plan" has the meaning ascribed to it in the Recitals.

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"Business Day" means any day on which commercial banks in both New York, New York and Curacao are open for business.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Confirmation Order" means an order of the Bankruptcy Court (i) confirming the Amended Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Disclosure Statement" has the meaning ascribed to it in the Recitals.

"Effective Date" means the date that the Amended Plan becomes effective as provided for therein.

"Execution Date" has the meaning ascribed to it in the Preamble.

"Final Order" means, with respect to any proceeding in either Curacao or the United States, an order entered in such proceeding as to which the time to appeal or seek other review has expired or which remains in full force and effect after all appeals or other review have been taken.

"LBIE" means Lehman Brothers International (Europe).

"LBIE Omnibus Claim" shall have the meaning ascribed in Section 2.1(c).

"LBSN" has the meaning ascribed to it in the Preamble.

"LBSN Avoidance Actions" means all avoidance actions and causes of action against Lehman US pursuant to Sections 38 through 43 of the Curacao Bankruptcy Decree 1931 and Sections 3:45 through 3:48 of the Curacao Civil Code.

"LBSN Case" means the bankruptcy case of LBSN that was commenced on January 30, 2009 by the Curacao Court.

"LBSN Security Holder Claims" has the meaning ascribed to it in the Recitals.

"LBSN Security Holders" has the meaning ascribed to it in the Recitals.

"LBSN Securities" has the meaning ascribed to it in the Recitals.

"LBT Notes" means the notes issued by Lehman Brothers Treasury Co., B.V.

"Liquidation Claims" has the meaning ascribed to it in the Recitals.

"Parties" has the meaning ascribed to it in the Preamble.

"Party" has the meaning ascribed to it in the Preamble.

"Plan" has the meaning ascribed to it in the Recitals.

"Plan Administrator" has the meaning ascribed to it in the Amended Plan.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

"Structured Securities Valuation Methodologies" means the methodologies annexed as Exhibit 11 to the Disclosure Statement for the valuation of Structured Securities Claims (as defined in the Plan).

"Supervisory Judge" means the judge presiding in the LBSN Case.

"US Avoidance Actions" means all actions under chapter 5 of the Bankruptcy Code or similar actions under applicable state law.

2. *Settlement of Claims.*

2.1. *The LBSN Proofs of Claim.*

(a) *LBSN Intercompany Claim Against LBHI.* LBSN will have an allowed, senior, non-priority, non-subordinated general unsecured claim against LBHI in LBHI Class 4A of the Plan in a net amount equal to $5,174,453,117 in respect of proof of claim number 58649 (the "Allowed LBSN Intercompany Loan Claim"). The Allowed LBSN Intercompany Loan Claim is a net claim after the set off of LBHI's allowed claim against LBSN in the amount of $875,998,350.79.

(b) *Other Direct Claims Against Debtors.* LBSN will have (i) an allowed, non-priority, non-senior, non-subordinated general unsecured claim against LBSF in LBSF Class 5C of the Plan in a net amount equal to $74,774,703; and (ii) an allowed, non-priority, non-senior, non-subordinated general unsecured claim against LBCC in LBCC Class 5C of the Plan in a net amount equal to $1,289,919 (such claims, together with the Allowed LBSN Intercompany Loan Claim, the "Allowed LBSN Claims").

(c) Other than the Allowed LBSN Claims, all other claims or receivables asserted or held by LBSN against the Debtors will be deemed fully and forever expunged, extinguished, disallowed and released; *provided, however,* that to the extent LBSN holds a beneficial interest in proof of claim number 62786 asserted by LBIE against LBHI on account of LBT Notes (the "LBIE Omnibus Claim"), LBSN does not hereby waive or release its rights to receive any distributions or consideration that may be payable by LBHI on account of the LBIE Omnibus Claim; *provided further that,* LBSN agrees not to contest, object to or otherwise oppose the employment of the Structured Securities Valuation Methodologies, *provided, further that,* LBSN reserves the right to contest, object to or otherwise oppose the manner in which those Structured Securities Valuation Methodologies are applied to those LBT Notes in which it asserts an interest.

(d) The Allowed LBSN Claims as set forth in Sections 2.1(a) and 2.1(b) shall not be subject to any objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors; and to the extent that the Debtors now have or become legally entitled to be subrogated to the rights of any creditor of LBSN, the Debtors agree not to assert any right as subrogee of such creditor against LBSN, to the extent such right is permitted by applicable law; provided that if any party objects to the Allowed US Claims, until such time as the Allowed US Claims are determined by the Curacao Court or otherwise settled in a manner acceptable to the Parties, the Debtors shall be entitled to withhold (but will separately reserve) an amount from distributions that would otherwise be made under the Amended Plan in respect of the Allowed LBSN Claims that is equal to the amount of distributions that would otherwise be made with respect to the Allowed US Claims that are the subject of an objection provided further that upon resolution of an objection to the Allowed US Claims (whether by determination or dismissal by the Curacao Court or agreement among the parties), any funds held in reserve as a result of the foregoing provision shall be distributed to the LBSN Trustees who shall distribute such amounts to admitted creditors in the LBSN Case.

(e)     *Plan Exceptions for LBSN.*  Sections 8.10, 8.14, 8.15, and 13.8 (to the extent Section 13.8 seeks to preserve the Debtors' rights to Causes of Action (as defined in the Plan) that are released under this Agreement) of the Plan shall not apply to LBSN or to the Allowed LBSN Claims.

2.2.    *Lehman US's Liquidation Claims*

(a)     *Claims Against LBSN.*

(1)     LOTC will have an allowed, non-priority, non-senior, non-subordinated general unsecured claim against LBSN in an amount equal to $5,081 (the "Allowed LOTC Claim").

(2)     LBIM will have an allowed, non-priority, non-senior, non-subordinated general unsecured claim against LBSN in an amount equal to $106,634 (the "Allowed LBIM Claim," together with the Allowed LOTC Claim, the "Allowed US Claims").

(b)     Other than the Allowed US Claims, all other claims or receivables asserted or held by Lehman US against LBSN will be deemed fully and forever expunged, extinguished, disallowed and released.

(c)     The Allowed US Claims as set forth in Section 2.2(a) shall not be subject to further objections or defenses by the LBSN Trustees, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any other claim which would have the effect of subordinating such claims to the claims of other unsecured creditors; and to the extent that LBSN now has or becomes legally entitled to be subrogated to the rights of any creditor of Lehman US, the LBSN Trustees agree not to assert any right as subrogee of such creditor against Lehman US, to the extent such right is permitted by applicable law.

2.3.    *Claims Register.*  In order to reflect the entry into this Agreement, upon the Effective Date, the Parties hereto acknowledge and agree that (i) the Proofs of Claim and the Allowed US Claims shall be deemed amended to the extent necessary to reflect the terms of the settlement reached in this Agreement and/or to reflect the reconciliation of such claims that has been ongoing amongst the Parties and (ii) they shall execute and submit joint instructions to Epiq Bankruptcy Solutions, LLC requesting that the claims register in the Chapter 11 Cases be amended to reflect (i) the allowance of proof of claim number 58649 in the amount of $5,174,453,117.00, (ii) the allowance of proof of claim number 58609 in the amount of $74,774.703, (iii) the allowance of proof of claim number 58651 in the amount of $1,289,919.00 and (iv) the disallowance of the remaining Proofs of Claim on Schedule A of this Agreement.

3.      **Amended Plan and Related Support.**

(a)     *Lehman US's Obligations.*

(1) Within a reasonable period of time following the Execution Date, the Debtors will (i) file the Amended Plan to incorporate this Agreement and (ii) prosecute the Amended Plan and seek entry of a Confirmation Order. If the Bankruptcy Court allows other parties to solicit acceptances of any Alternative Plan or Alternative Plans and subject to LBSN's obligations in Section 3(b)(4) below, Lehman US agrees not to object to LBSN voting to accept any Alternative Plan or Alternative Plans in the amounts set forth on Schedule A with respect to each Proof of Claim.

(b)     *LBSN's Obligations.*  LBSN agrees to perform and comply with the following obligations as to the Plan, which obligations shall become effective as set forth in section 11 below:

(1)     If the Bankruptcy Court allows the Debtors to solicit acceptances of the Amended Plan before acceptances are solicited for any Alternative Plan or Alternative Plans, and provided that LBSN has been solicited pursuant to section 1125 of the Bankruptcy Code, LBSN shall (i) timely vote to accept the Amended Plan in the amounts set forth on Schedule A with respect to each Proof of Claim, and not thereafter withdraw or change such vote, and (ii) support approval and confirmation of the Amended Plan.

(2)     LBSN shall not oppose or object to the Amended Plan or the solicitation of the Amended Plan, or join in or support any objection to the Amended Plan or the solicitation of the Amended Plan.

(3)     LBSN shall not (i) participate in the formulation of, file, or prosecute any Alternative Plan, (ii) join in or support any Alternative Plan, including, without limitation, express support in writing of, or enter into any form of plan support agreement with respect to any Alternative Plan, or (iii) subject to Section 3(b)(4) below, take any action to alter, delay or impede the confirmation and consummation of the Amended Plan; provided that, a vote on an Alternative Plan or Plans shall not constitute an action to delay or impede the confirmation or consummation of the Amended Plan. The foregoing does not prohibit the LBSN Trustees from responding to inquiries of creditors of LBSN regarding an Alternative Plan, *provided* that such discussions are neither solicited nor initiated by the LBSN Trustees.

(4)     If the Bankruptcy Court allows other parties to solicit acceptances of any Alternative Plan or Alternative Plans at the same time as the Amended Plan, LBSN may vote to accept any Alternative Plan or Alternative Plans, only if such Alternative Plan or Alternative Plans provide LBSN with an equal or greater economic recovery than the Amended Plan, provided, however, that LBSN shall also (i) timely vote to accept the Amended Plan, and not thereafter withdraw or change such vote, (ii) comply with the provisions of Sections 3(b)(2) and 3(b)(3) above except to the extent 3(b)(3)(iii) is subject to this 3(b)(4), and (iii) support approval and confirmation of the Amended Plan and indicate a preference for the Amended Plan on its voting ballot if the Amended Plan provides LBSN and its creditors with an equal or greater economic recovery compared with any Alternative Plan that LBSN votes to accept. Notwithstanding anything contained in this section, LBSN shall not indicate a preference on its voting ballots for any Alternative Plan.

(5)     In order to assist the Debtors or the Plan Administrator in calculating the Debtors' respective distributions to LBSN Security Holders pursuant to Section 8.13 of the Amended Plan, subject to the terms of a confidentiality agreement that is executed by the Parties, the LBSN Trustees shall respond within a reasonable period of time to reasonable requests from the Debtors or the Plan Administrator for information, to the extent such information exists or is readily available to the LBSN Trustees, regarding (i) whether the claims of LBSN Security Holders against LBSN have been allowed or disallowed, (ii) whether the claims of LBSN Security Holders against LBSN are disputed or subject to objection by LBSN, (iii) the consideration, if any, paid to LBSN Security Holders by LBSN, (iv) any estimates of future distributions or consideration anticipated to be made to LBSN Security Holders by LBSN, including estimates of the aggregate amounts of such future distributions or consideration, and (v) information concerning resolution of LBSN's claims against, and distributions received by LBSN from, Affiliates of Lehman US.

(c)     *Solicitation Required in Connection with Amended Plan.*  Notwithstanding anything contained in this Section 3 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Amended Plan pursuant to section 1125 of the Bankruptcy Code, or rejection of any Alternative Plan. Acceptance of the Amended Plan will not be solicited until the Bankruptcy Court has approved the Amended Disclosure Statement and related

ballots, and such Amended Disclosure Statement and ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

4. **The LBSN Trustees' Representations and Warranties.** In order to induce Lehman US to enter into and perform their obligations under this Agreement, the LBSN Trustees hereby represent, warrant and acknowledge as follows:

4.1. *Authority.* (i) Subject to the approval by the Supervisory Judge, and, to the extent applicable, obtaining a Final Order, the LBSN Trustees have the power and authority to execute, deliver and perform their obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) subject to the approval by the Supervisory Judge, and to the extent applicable, obtaining a Final Order, the execution, delivery and performance by the LBSN Trustees of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of LBSN and no other proceedings on the part of LBSN are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2. *Validity.* Subject to the approval by the Supervisory Judge, and, to the extent applicable, obtaining a Final Order, this Agreement has been duly executed and delivered by the LBSN Trustees and constitutes the legal, valid and binding agreement of the LBSN Trustees, enforceable against the LBSN estate in accordance with its terms.

4.3. *Authorization of Governmental Authorities and Creditors.* Subject to the approval by the Supervisory Judge, and, to the extent applicable, obtaining a Final Order, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by LBSN pursuant to this Agreement.

4.4. *No Reliance.* The LBSN Trustees (i) are in their capacity as bankruptcy trustees sophisticated parties with respect to the subject matter of this Agreement, (ii) have been represented and advised by legal counsel in connection with this Agreement, (iii) have adequate information concerning the matters that are the subject of this Agreement, and (iv) have independently and without reliance upon Lehman US or any Affiliate of Lehman US, or any officer, employee, agent or representative thereof, and based on such information as LBSN has deemed appropriate, made their own analysis and decision to enter into this Agreement, except that the LBSN Trustees have relied upon Lehman US's express representations, warranties and covenants in this Agreement, and the LBSN Trustees acknowledge that they have entered into this Agreement voluntarily and of their own choice and not under coercion or duress.

4.5. *Title.* Subject to the effectiveness of this Agreement, LBSN owns and has good title to its Proofs of Claim, free and clear of any and all liens, claims (other than on account of claims against the assets of LBSN), set-off rights of third parties, security interests, participations, or encumbrances created or incurred by or against LBSN as of the Execution Date and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement, in whole or in part.

5. **No Transfer of Claims.** LBSN may not transfer any of the claims or receivables that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date; provided however, that LBSN may pledge or otherwise encumber up to $500 million of the Allowed LBSN Claims to obtain financing in connection with the LBSN Case so long as the secured party agrees in writing that in the event that such secured party ever forecloses the Allowed LBSN Claims up to the aforementioned maximum amount of $500 million or otherwise

becomes the holder of the Allowed LBSN Claims, such secured party and its successors or assigns shall be bound by Sections 3(b)(1) – (3) hereto.

6. ***Lehman US's Representations and Warranties***. In order to induce LBSN and the LBSN Trustees to enter into and perform its obligations under this Agreement, each Debtor and LBIM hereby represents, warrants and acknowledges as follows:

6.1. *Authority*. Subject to Bankruptcy Court approval, to the extent necessary, in the case of the Debtors, (i) each Debtor and LBIM has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor or LBIM of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor or LBIM and no other proceedings on the part of such Debtor or LBIM are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

6.2. *Validity*. Subject to Bankruptcy Court approval, to the extent necessary, in the case of the Debtors, this Agreement has been duly executed and delivered by each Debtor and LBIM and constitutes the legal, valid and binding agreement of each Debtor and LBIM, enforceable against each Debtor and LBIM in accordance with its terms.

6.3. *Authorization of Governmental Authorities*. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and LBIM of this Agreement, other than entry of the Confirmation Order.

6.4. *No Reliance*. Each Debtor and LBIM (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon the LBSN Trustees, and based on such information as such Debtor and LBIM has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor or LBIM has relied upon the LBSN Trustees' express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

6.5. *Title*. Each Debtor and LBIM owns and has good title to its respective Liquidation Claims, free and clear of any and all liens, claims (other than on account of claims against the assets of such Debtor or LBIM), set-off rights of third parties, security interests, participations, or encumbrances created or incurred by or against any such Debtor or LBIM as of the Execution Date, and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement.

7. ***No Transfer of Claims***. Each Debtor entity and LBIM may not transfer any of the Liquidation Claims, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

8. ***Surviving Contracts***. The contracts and any non-binding agreements listed in <u>Schedule B</u> shall survive the execution and consummation of this Agreement. All executory contracts between the Debtors and LBSN that are not included on <u>Schedule B</u> shall be rejected pursuant to section 365 of the Bankruptcy Code in accordance with the Amended Plan. Any claims that arise from the rejection of pre-

petition executory contracts between the Debtors and LBSN are deemed to be satisfied in full by the claims allowed pursuant to Section 2 hereof.

9. **Cooperation.** The Parties will continue to exchange data relating to the respective bankruptcy cases and insolvency proceedings based on the data sharing agreement and the cross border international protocol in order to assist each other in resolving claims of Affiliates and other creditors.

10. **Releases.**

10.1. *Lehman US's Releases.* Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) Lehman US's distribution entitlements in the LBSN Case, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the claims, if any, arising under the surviving contracts set forth on Schedule B, *provided that* the foregoing exception shall not apply to the personal liability of the LBSN Trustees, and subject to the effectiveness of this Agreement in accordance with section 11 below, and in consideration of the foregoing and LBSN's execution of this Agreement, each Debtor and LBIM on behalf of itself, its estate (where applicable), and its successors and assigns, will fully and forever release, discharge and acquit LBSN, the LBSN estate, the LBSN Trustees (in their personal and professional capacities) and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever existing as of the date hereof, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, all US Avoidance Actions.

10.2. *LBSN's Releases.* Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) LBSN's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the claims, if any, arising under the surviving contracts set forth on Schedule B, and subject to the effectiveness of this Agreement in accordance with section 11 below, and in consideration of the foregoing and each Debtor's and LBIM's execution of this Agreement, the LBSN Trustees on behalf of LBSN, its estate, and its successors and assigns, will fully and forever release, discharge and acquit each Debtor, LBIM and Alvarez & Marsal North America, LLC, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever existing as of the date hereof, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, (i) any administrative expense claims arising under section 503 of the Bankruptcy Code, and (ii) LBSN Avoidance Actions.

11. **Effectiveness of Agreement.**

11.1. Sections 3 (except 3(b)(1)), 5, 7, 9, 11 through 27 of this Agreement shall be effective upon the Execution Date.

11.2.    Section 3(b)(1) of this Agreement shall be effective upon entry of a Final Order from the Supervisory Judge approving this Agreement, provided that if such Final Order from the Supervisory Judge is appealed against or if a creditor takes any other action, Section 3(b)(1) of this Agreement shall only be effective upon entry of a Final Order from the Supreme Court in the Hague.

11.3.    All other provisions of this Agreement shall be effective upon the occurrence of the Effective Date.

12.    *Termination.*

12.1.    *Automatic Termination.*  This Agreement shall automatically terminate on any date on which the Bankruptcy Court denies the motion seeking the Confirmation Order with prejudice.

12.2.    *Lehman US's Right to Terminate.*  Each Debtor and LBIM shall have the right, at its election, to terminate this Agreement by written notice to the LBSN Trustees if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the LBSN Trustees hereunder, taken as a whole, and the LBSN Trustees shall fail to cure such breach within ten (10) days following written notice of such breach from any of the Debtors or LBIM, or (b) other than as set forth herein, the LBSN Trustees allow and provide for materially different treatment of claims held by other creditors of LBSN that are legally similar to the Allowed US Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement in respect of the Allowed US Claims.

12.3.    *The LBSN Trustees' Right to Terminate.*  The LBSN Trustees shall have the right, at its election, to terminate this Agreement by written notice to Lehman US if (a) the Debtors file or support a chapter 11 plan that provides for the substantive consolidation of one or more Debtor or Affiliate and LBSN, commences any proceeding seeking similar relief, or joins with any other party in any proceeding seeking similar relief; (b) an order confirming the Amended Plan, in a form and substance reasonably satisfactory to the LBSN Trustees, is not entered by the Bankruptcy Court on or before December 31, 2012; (c) there is a breach, in any material respect, of the representations, warranties and/or covenants of Lehman US hereunder, taken as a whole, and Lehman US shall fail to cure such breach within ten (10) days following written notice of such breach from the LBSN Trustees; or (d) Debtors make any changes or amendments to the Amended Plan or Amended Disclosure Statement, or the Debtors take any other action (including, without limitation, with respect to claims, asset transfers or allocations) in each case, that, individually or, in the aggregate together with all other such changes, amendments, actions and agreements, will, if the Amended Plan were to be consummated, materially and adversely affect the treatment of, estimated recoveries by, or distribution to, or proportionate share of the Debtors' assets that are distributed pursuant to the Amended Plan to, the Allowed LBSN Claims; provided, however, that with respect to Section 12.3(d), (i) the Debtors are not guaranteeing or committing to any specific recovery amount under the Amended Plan, (ii) modifications to the projected recovery amounts set forth in the disclosure statement approved by the Bankruptcy Court with respect to the Amended Plan that are based upon revised projections of asset values shall not constitute material modifications to the Plan and (iii) unless Lehman US agrees otherwise, the LBSN Trustees must exercise any right to terminate this Agreement under Section 12(d) by giving written notice of termination to Lehman US no later than the close of business of the tenth Business Day after and excluding the day on which the LBSN Trustees receive written notice of the event creating such right of termination.

12.4.    *Effect of Termination.*  In the event that this Agreement is terminated, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Amended Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and

defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

13. **_Withholding Rights and Allocation of Payments._** Each Party shall be entitled to deduct and withhold from the amounts otherwise payable to any other Party pursuant to this Agreement such amounts as it is required to deduct and withhold with respect to the making of such payment under any requirement of any applicable tax law. Any amounts so withheld shall be treated for all purposes of this Agreement as having been paid to such Party in respect of the allowed claim for which such deduction and withholding is made. The Parties agree that any payments made by LBSN and Lehman US on account of the claims and receivables that are the subject of this Agreement shall be allocated for all purposes, including but not limited to US federal income tax and Curacao tax purposes, first to the principal portion of such claims and receivables, and, only after the principal portion of such respective claims and receivables is satisfied in full, to any portion of such claims and receivables comprising interest accruing prior to the filing of each Debtor's Chapter 11 Case (but solely to the extent that interest is an allowable portion of such claims and receivables).

14. **_Venue and Choice of Law._**

14.1. _Venue._ To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court; _provided that_ the Parties may appear before another court of competent jurisdiction if a non Party brings any action relating to this Agreement before such other court of competent jurisdiction, _provided further that,_ any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims shall be within the exclusive jurisdiction of the Curacao Court. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or with the Curacao Court or other court of competent jurisdiction as described above solely relating to any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process at the addresses set forth in Section 15 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

14.2. _Choice of Law._ This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code; provided,

11



*however*, that any claims and disputes arising out of the Liquidation Claims shall be governed by and construed in accordance with the law of Curacao except as otherwise provided in the underlying agreements.

15. *Notices*. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

> To Lehman US at:
>
> 1271 Avenue of the Americas, 39th Floor
> New York, New York 10020
> U.S.A.
> Attn: John Suckow and Daniel J. Ehrmann
> Facsimile: (646) 834-0874
> jsuckow@alvarezandmarsal.com and dehrmann@alvarezandmarsal.com
>
> With a copy (which shall not constitute notice) to:
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> U.S.A.
> Attn: Alfredo R. Pérez, Esq. and Lori R. Fife, Esq.
> Facsimile: (212) 310-8007
> Alfredo.perez@weil.com and lori.fife@weil.com
>
> To the LBSN Trustees at:
>
> Michiel R.B. Gorsira, *curator*, Lehman Brothers Securities, N.V.
> Julianaplein 22
> PO Box 504
> Curacao
> Facsimile: +599 (9) 461 2023
> Gorsira@ekvandoorne.com
>
> - and -
>
> Robert F. van Beemen, *curator*, Lehman Brothers Securities, N.V.
> Jachthavenweg 121
> 1081 KM Amsterdam
> The Netherlands
> Fascimile: +31(0)20 7954 382
> Beemen@ekvandoorne.com

12

With a copy (which shall not constitute notice) to:

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of Americas
New York, New York 10036
Attn: Thomas Moers Mayer and Daniel M. Eggermann
Facsimile (212) 715-8000
tmayer@kramerlevin.com and deggermann@kramerlevin.com

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

16.     **Expenses.**  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

17.     **No Admission of Liability.**  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that might be denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

18.     **Entire Agreement.**  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Amended Plan and the terms of this Agreement, the terms of this Agreement shall control.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

19.     **No Oral Modifications.**  This Agreement may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of Lehman US must be provided in a writing signed by the LBSN Trustees.  Any waiver of compliance with any term or provision of this Agreement on the part of LBSN or the LBSN Trustees must be provided in a writing signed by each Debtor and LBIM.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

20.     **Construction.**  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

21.     **Binding Effect; Successor and Assigns.**  Any declaration, representation, or statement of the LBSN Trustees shall only be made in their capacity and function as the bankruptcy trustees of LBSN, and shall in no circumstance be construed as being a declaration, representation, or statement of the LBSN Trustees on their own and personal behalf.  This Agreement shall inure to the benefit of and be binding upon the Parties and the LBSN estate and their respective successors and permitted assigns; provided, however, that subject to Section 5 and 7 above, no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio.*

22.    ***Counterparts.***  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart.

23.    ***Headings; Schedules and Exhibits.***  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement. Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement. References to sections, unless otherwise indicated, are references to sections of this Agreement. All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes. Reference to any Schedule herein shall be to the Schedules attached hereto.

24.    ***No Personal Liability.***  The Parties acknowledge, accept and agree that this Agreement and all actions and measures contained herein or following herefrom do not and will not give rise to any personal liability on the part of the LBSN Trustees, their firm and its partners and employees, and their representatives or other professional advisors, and to the extent any such personal liability existed, the Parties explicitly waive any and all potential rights and claims against them, their firm and its partners and employees, and their representatives and other professional advisors, personally. The LBSN Trustees further acknowledge, accept and agree that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, asset managers, representatives or professional advisors of Lehman US and to the extent any such personal liability existed, the LBSN Trustees explicitly waive any and all potential rights and claims against all of the aforementioned persons. Any claim by a Party against the LBSN Trustees or LBSN arising under or relating to this Agreement shall only be satisfied out of the assets of the insolvency estate of LBSN, and any claim by a Party against any of the Debtors or LBIM arising under or relating to this Agreement shall only be satisfied out of the assets of such Debtor or LBIM.

25.    ***Severability and Construction.***  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

26.    ***Waiver of Jury Trial.***  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 26 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

27. **_Disclosure._** Neither Lehman US nor the LBSN Trustees are under any obligation to hold confidential and not disclose this Agreement, so that it may be disclosed generally or to individual parties as each side may see fit. Without limiting the rights of any party under the preceding sentence, Lehman US and the LBSN Trustees shall work together to disclose this Agreement by a public filing or filings at a time and in a manner acceptable and convenient to both.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors and Debtors in Possession

By: _____
Name: John Suckow
Title: Authorized Signatory

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors and Debtors in Possession

By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory

LEHMAN BROTHERS INVESTMENT MANAGEMENT COMPANY LTD.

By: _____
Name: William J. Fox
Title: Director

Michiel R.B. Gorsira and Robert F. van Beemen, in their capacity as bankruptcy trustees (*curatoren*) of LEHMAN BROTHERS SECURITIES N.V.

By: _____

By: _____
Robert F. van Beemen
Bankruptcy Trustee.

Lehman Brothers Securities N.V. Settlement Agreement
Proofs of Claim
*($ In actual)*

## Schedule A

| Claim Number | Debtor | Amount (USD) |
|---|---|---|
| 58609 | Lehman Brothers Special Financing Inc. | |
| 58614 | PAMI Statler Arms LLC | $ 74,628,512 |
| 58615 | Lehman Brothers Commodity Services Inc. | - |
| 58616 | Lehman Brothers Special Financing Inc. | - |
| 58617 | Lehman Brothers OTC Derivatives Inc. | - |
| 58618 | Lehman Brothers Derivative Products Inc. | - |
| 58619 | Lehman Commercial Paper Inc. | - |
| 58620 | LB 745 LLC | - |
| 58621 | Lehman Brothers Commercial Corporation | - |
| 58622 | Lehman Brothers Holdings Inc. | - |
| 58649 | Lehman Brothers Holdings Inc. | 6,050,451,468 |
| 58650 | Lehman Brothers Holdings Inc. | - |
| 58651 | Lehman Brothers Commercial Corporation | 1,203,462 |
| 58652 | Lehman Brothers OTC Derivatives Inc. | - |
| 58653 | Lehman Brothers Special Financing Inc. | - |
| 58654 | Lehman Brothers Holdings Inc. | 100,589,378 |
| 58655 | Lehman Brothers Holdings Inc. | 272,026,098 |
| 58656 | Lehman Brothers Holdings Inc. | 11,286,793 |
| 58657 | Structured Asset Securities Corporation | - |
| 58658 | East Dover Limited | - |
| 58659 | BNC Mortgage LLC | - |
| 58660 | Lehman Scottish Finance L.P. | - |
| 58661 | CES Aviation LLC | - |
| 58662 | LB Rose Ranch LLC | - |
| 58663 | Lehman Brothers Holdings Inc. | - |
| 58664 | CES Aviation V LLC | - |
| 58665 | CES Aviation IX LLC | - |
| 58666 | Luxembourg Residential Properties Loan Finance S.a.r.l. | - |
| 58667 | Lehman Brothers Financial Products Inc. | - |
| 65276 | LB 2080 Kalakaua Owners LLC | - |

**Schedule B**

1. Confidentiality Agreement, dated July 14, 2010, between Lehman Brothers Holdings, Inc. and Lehman Brothers Securities, N.V.

2. Confidentiality Agreement, dated March 19, 2010, between Lehman Brothers Holdings, Inc., Lehman Brothers Securities, N.V. and certain other signatories.

# EXHIBIT 5

# PART B – AGREEMENT AMONG DEBTORS AND LEHMAN JAPAN ENTITIES

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Agreement</u>") is made and entered into as of October 24, 2011 (the "<u>Execution Date</u>"), by and among the US Debtors[1] (each a "<u>US Debtor</u>" and collectively, the "<u>US Debtors</u>") and the Japan Liquidation Companies[2] and Japan Non-Liquidation Companies,[3] (collectively, "<u>Lehman Japan</u>"). The US Debtors and Lehman Japan shall each be referred to individually as a "Party" and collectively as the "Parties."

# RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the US Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "<u>Chapter 11 Cases</u>" and each a "<u>Chapter 11 Case</u>");

WHEREAS, on September 16, 2008, each of the Japan Liquidation Companies filed an application for commencement of civil rehabilitation proceedings under the Civil Rehabilitation Law of Japan with the Tokyo District Court (the "<u>Japanese Court</u>"). On September 19, 2008, the Japanese Court issued the commencement order for the Japan Liquidation Companies, whereby the civil rehabilitation proceedings were commenced for each of the Japan Liquidation Companies (the "<u>Japanese Proceedings</u>");

WHEREAS, Lehman Japan has (i) filed or is the owner of the proofs of claim listed on <u>Schedule A</u> attached hereto against certain US Debtors (collectively, the "<u>Proofs of Claim</u>") and

---

[1] As used herein, "US Debtors" means Lehman Brothers Holdings Inc. ("<u>LBHI</u>"); Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"); Lehman Commercial Paper Inc. ("<u>LCPI</u>"); Lehman Brothers Commercial Corporation ("<u>LBCC</u>"); Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc. ("<u>LBCS</u>"); Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.
[2] As used herein, "Japan Liquidation Company" means Lehman Brothers Commercial Mortgage K.K., Lehman Brothers Japan Inc. ("<u>LBJ</u>"), Lehman Brothers Holdings Japan Inc., and Sunrise Finance Co. Ltd.
[3] As used herein, "Japan Non-Liquidation Company" means Hercules K.K., Lehman Brothers Finance (Japan) Inc. and Lehman Brothers Real Estate Limited.

(ii) asserted amounts due and owing to them from certain non-debtor affiliates of the US Debtors that are controlled by one or more of the US Debtors (the "<u>US Non-Debtor Affiliates</u>");

WHEREAS, Lehman Brothers International (Europe) filed as nominee for the benefit of its customers the omnibus proof of claim, Claim No. 62783, (the "<u>LBIE Note Claim</u>") against LBHI on account of alleged guarantees of certain structured notes issued by Lehman Brothers Treasury Co. B.V. (the "<u>LBT Issued Notes</u>") which included a claim arising out of the LBT Issued Notes owned by LBJ for its own account (the "<u>LBJ Owned Notes</u>") and LBT Issued Notes held by customers (the "<u>Customers</u>") of LBJ (the "<u>LBJ Customer Notes</u>");

WHEREAS, LBIE transferred to LBJ that portion of the LBIE Note Claim in the amount of $232,865,973.53 that arises from the LBJ Owned Notes and the LBJ Customers Notes (the "<u>LBJ House Claim</u>");

WHEREAS, LBJ transferred to each Customer (each such transfer, an "<u>LBJ Customer Note Transfer</u>") that portion of the LBJ House Claim that relates to such Customer's LBJ Customer Note (each such portion, an "<u>LBJ Customer Note Claim</u>");

WHEREAS, certain of the US Debtors have (i) submitted the claims listed on <u>Schedule B</u> attached hereto against the Japan Liquidation Companies (the "<u>Liquidation Claims</u>") and (ii) asserted amounts due and owing to them from certain of the Japan Non-Liquidation Companies (the "<u>Non-Liquidation Receivables</u>");

WHEREAS, the US Debtors and the Japan Liquidation Companies have entered into that certain tolling and forbearance agreement, dated as of September 9, 2010; and the US Debtors and certain of the Japan Non-Liquidation Companies have entered into that certain tolling and forbearance agreement, dated as of September 14, 2010 (the "<u>Tolling Agreement</u>");

WHEREAS, the Parties completed all due diligence in respect of the US Avoidance Actions and the Japanese Avoidance Actions, and wish to terminate the Tolling Agreement as of the effectiveness of this Agreement;

WHEREAS, the Parties are (i) desirous of resolving all disputes and all other outstanding issues between the US Debtors and Lehman Japan and (ii) have agreed to defer and undertake, in

good faith, efforts to reconcile and resolve any disputes and issues involving the US Non-Debtor Affiliates and Lehman Japan until after the execution of this agreement, so as to avoid extensive and expensive litigation;

WHEREAS, on September 1, 2011, the US Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 19627] (as may be amended or supplemented from time to time, the "Plan") and the Disclosure Statement for the Plan [ECF No. 19629] (as may be amended or supplemented from time to time, the "Disclosure Statement"); and

WHEREAS, each of the US Debtors, either individually or jointly, will file an amendment, modification and/or supplement to the Plan that will incorporate the terms and conditions of this Agreement (the "Amended Plan").

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Definitions

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Affiliate" shall have the meaning ascribed to it in the Plan.

"Agreed Non-Liquidation Receivables" has the meaning ascribed to it in Section 2.2(b).

"Allowed Japan Claims" has the meaning ascribed to it in Section 2.1(a).

"Allowed US Claims" has the meaning ascribed to it in Section 2.2(b).

"Alternative Plan" means a chapter 11 plan or plans, proposed by parties other than the US Debtors.

"Amended Plan" has the meaning ascribed to it in the Recitals.

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Confirmation Order" means an order of the Bankruptcy Court (i) confirming the Amended Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the US Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Customers" has the meaning ascribed to it in the Recitals.

"Disclosure Statement" has the meaning ascribed to it in the Recitals.

"Effective Date" means the date that the Amended Plan becomes effective as provided for therein.

"Japan Avoidance Actions" means all avoidance actions and causes of action against the US Debtors pursuant to Articles 127 through 130 of the Civil Rehabilitation Law of Japan.

"Japanese Court" has the meaning ascribed to it in the Recitals.

"Japanese Proceedings" has the meaning ascribed to it in the Recitals.

"LBCM" means Lehman Brothers Commercial Mortgage KK.

"LBIE" means Lehman Brothers International (Europe) (in administration).

"LBIE Note Claim" has the meaning ascribed to it in the Recitals.

"LBJ" means Lehman Brothers Japan Inc.

"LBJ Customer Notes" has the meaning ascribed to it in the Recitals.

"LBJ Customer Note Claims" has the meaning ascribed to it in the Recitals.

"LBJ Customer Note Transfer" has the meaning ascribed to it in the Recitals.

"LBJ House Claim" has the meaning ascribed to it in the Recitals.

"LBJ Owned Notes" has the meaning ascribed to it in the Recitals.

"LBT Issued Notes" has the meaning ascribed to it in the Recitals.

"Lehman Japan" has the meaning ascribed to it in the Preamble.

"Liquidation Claims" has the meaning ascribed to it in the Recitals.

"Non-Liquidation Receivables" has the meaning ascribed to it in the Recitals.

"Non-Liquidation Receivable Payment Date" means the date agreed to by the Parties for the payment of Agreed Non-Liquidation Receivables; provided, however, that to the extent any Japan Non-Liquidation Company has made a distribution to its unsecured creditors before the Effective Date, within five business days of the Effective Date and before such Japan Non-Liquidation Company makes any further distribution to its unsecured creditors, such Japan Non-Liquidation Company shall pay to each US Debtor that holds an Agreed Non-Liquidation Receivable an amount equal to the pro rata distribution that would have been distributed on account of such Agreed Non-Liquidation Receivable if such Agreed Non-Liquidation Receivable had been agreed to and allowed as of the date of the relevant distribution; provided, further that, to the extent any Japan Non-Liquidation Company makes any distributions to its unsecured creditors after the Effective Date, each US Debtor that holds an Agreed Non-Liquidation Receivable shall participate in and receive such distributions.

"Plan Administrator" has the meaning set forth in the Amended Plan.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

"SMBC" means Sumitomo Mitsui Banking Corporation.

"SMBC Loan" means that certain Loan Agreement, dated April 30, 2008, among Lehman Brothers Holdings Japan, Inc., as Borrower, LBJ, as Pledger and Guarantor A, LBCM,

as Pledger and Guarantor B, and, SMBC, as Lender, which provided the Borrower with a credit facility in the aggregate principal amount of $525,525,000.00.

"Tolling Agreement" has the meaning ascribed to it in the Recitals.

"Third-Party Creditors" has the meaning ascribed to it in Section 3.2(e).

"US Avoidance Actions" means all actions under chapter 5 of the Bankruptcy Code or similar actions under applicable state law.

"US Debtors" has the meaning ascribed to it in the Preamble.

"US Non-Debtor Affiliates" has the meaning ascribed to it in the Recitals.

2.    Settlement of Claims.

2.1    The Lehman Japan Proofs of Claim.

(a)    Allowed Claims Against US Debtors.   Each Lehman Japan entity listed on Schedule C attached hereto will have a net allowed, non-priority, non-subordinated general unsecured claim against the specified US Debtor in the net amounts and classes set forth on Schedule C (the "Allowed Japan Claims"); provided, however, that in no event shall Lehman Japan receive distributions on any allowed guarantee claims that, combined with distributions or other consideration provided by a primary obligor, would allow Lehman Japan to receive an amount in excess of the amount allowed against the primary obligor; provided, further, that the allowance of LBCM's claim against LBHI in the net amount of $32,478,739 in LBHI Class 8 shall be subject to written confirmation from SMBC, delivered by Lehman Japan to LBHI prior to the Effective Date, demonstrating, in the reasonable discretion of LBHI, the satisfaction of the SMBC Loan.

(b)    Other than the claims and receivables allowed and acknowledged as set forth in Section 2.1(a), all other claims or receivables existing, asserted or held by Lehman Japan against the US Debtors as of the date hereof will be deemed fully and forever expunged, extinguished, disallowed and released.

(c)     The Allowed Japan Claims as set forth in this Section 2.1 shall not, except as otherwise specifically provided for herein, be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors, provided that if any party objects to the Allowed US Claims, no distribution shall be made on the claims of Lehman Japan allowed under this Agreement until such objection is resolved or the Allowed US Claims are allowed by the Japanese Court; provided, further, that if for any reason Lehman Japan is prohibited from making distributions or is unable to or does not make distributions on account of any Allowed US Claims, no distributions on any Allowed Japan Claims will be made until such time that the relevant Lehman Japan entity makes distributions to the relevant US Debtor entity.

2.2     The US Debtors Liquidation Claims and Non-Liquidation Receivables.

(a)     Claims Against the Japan Liquidation Companies.   Each US Debtor listed on Schedule D will have an allowed, non-priority, non-senior, non-subordinated general unsecured claim against the specified Japan Liquidation Companies in the amounts set forth on Schedule D (the "Allowed US Claims").   LBHI shall also have an allowed subordinated general unsecured claim against LBJ in the amount of JPY 46,151,546,119.

(b)     Receivables from Japan Non-Liquidation Companies.   Each US Debtor listed on Schedule E will have a net receivable as of March 31, 2011 from, and that is agreed upon and acknowledged by, the specified Japan Non-Liquidation Companies in the net amounts set forth on Schedule E (the "Agreed Non-Liquidation Receivables").   The Agreed Non-Liquidation Receivables will be adjusted, as appropriate, to reflect the impact of changes in foreign currency exchange rates and accrued interest until the earlier of (i) the date upon which an insolvency, bankruptcy, administration, liquidation, rehabilitation, receivership or like proceeding is commenced by or initiated against such Japan Non-Liquidation Company, (ii) any earlier date that is agreed upon by the Parties, or (iii) the Non-Liquidation Receivable Payment Date.   On the Non-Liquidation Receivable Payment Date, each Japan Non-Liquidation Company shall pay the Agreed Non-Liquidation Receivables to the US Debtors by wire transfer in immediately available funds in US Dollars to a bank account designated in advance in writing

by the US Debtors; provided, however, that if a US Debtor designates a bank account outside of Japan, such US Debtor shall bear the costs and expenses for such wire transfer.

(c)     Other than the claims and receivables allowed and acknowledged as set forth in Sections 2.2(a) and 2.2(b) hereof, all other claims or receivables existing, asserted or held by the US Debtors against Lehman Japan as of the date hereof will be deemed fully and forever expunged, extinguished, disallowed and released.

(d)     The Allowed US Claims and Agreed Non-Liquidation Receivables as set forth in this Section 2.2 shall not, except as otherwise specifically provided for herein, be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any other claim which would have the effect of subordinating such claims to the claims of other unsecured creditors, provided that if any party objects to the Allowed Japan Claims, no distributions shall be made on the Allowed US Claims until such objection is resolved or the Allowed Japan Claims are allowed by the Bankruptcy Court; provided, further, however, that if for any reason any US Debtor is prohibited from making, is unable to make, or does not make distributions on account of any Allowed Japan Claims, no distributions on any Allowed US Claims or Agreed Non-Liquidation Receivables will be made until such time that the relevant US Debtor entity makes distributions to the relevant Lehman Japan entity, and the Agreed Non-Liquidation Receivables shall not be subject to any adjustments for foreign currency exchange rates and accrued interest following such prohibition or withholding of distributions by such Lehman Japan entity.

2.3     Claims Register.    In order to reflect the entry into this Agreement, promptly after the Effective Date, the Parties hereto acknowledge and agree that (i) the US Debtors shall take any and all steps (including, but not limited to, withdrawal of the Liquidation Claims other than the Allowed US Claims in the Japanese Proceedings) necessary to reflect the terms of the settlement reached in this Agreement and/or to reflect the reconciliation of such claims that has been ongoing amongst the Parties, and (ii) they shall execute and submit joint instructions to Epiq Bankruptcy Solutions, LLC, requesting that the claims register in the Chapter 11 Cases be amended to reflect the allowance and disallowance of the Proofs of Claim in accordance with this Agreement.

2.4     Withholding Rights and Allocation of Payments.   Each Party shall be entitled to deduct and withhold from the amounts otherwise payable to any other Party pursuant to this Agreement such amounts as it is required to deduct and withhold with respect to the making of such payment under any requirement of any applicable tax law.   Any amounts so withheld shall be treated for all purposes of this Agreement as having been paid to such Party in respect of the allowed claim for which such deduction and withholding is made.   The Parties agree that any payments made by Lehman Japan and the US Debtors on account of the claims and receivables that are the subject of this Agreement shall be allocated for all purposes, including but not limited to US federal income tax and Japan tax purposes, first to the principal portion of such claims and receivables, and, only after the principal portion of such respective claims and receivables is satisfied in full, to any portion of such claims and receivables comprising interest (but solely to the extent that interest is an allowable portion of such claims and receivables).

3.     Plan Support.

3.1     The US Debtors' Obligations.   Within a reasonable period of time following the Execution Date, the US Debtors will (i) file the Amended Plan, and (ii) prosecute the Amended Plan and seek entry of a Confirmation Order.

3.2     Lehman Japan's Obligations.   Each Lehman Japan entity agrees to perform and comply with the following obligations as to the Amended Plan, which obligations shall become effective upon the Execution Date as set forth in Section 8 below, and notwithstanding any other provisions of this Agreement:

(a)     The Lehman Japan entities shall not commence any proceeding or otherwise prosecute, join in, or support any objection to, or oppose or object to, the Amended Plan or Disclosure Statement, and will not consent to, support, or participate in the formulation of any Alternative Plan, provided that entry of the Confirmation Order has not been denied.

(b)     Each Lehman Japan entity shall timely vote to accept the Amended Plan in the amounts set forth on Schedule A with respect to each Proof of Claim, provided that it has been solicited pursuant to section 1125 of the Bankruptcy Code.

(c)     The Lehman Japan entities shall support, and to the extent reasonably possible, use good faith diligent efforts to promote, the confirmation and consummation of the

Amended Plan, and shall not recommend that creditors of Lehman Japan who have filed claims against the US Debtors and have been solicited pursuant to section 1125 of the Bankruptcy Code not vote to accept the Amended Plan.

(d)     Provided that other Affiliates of the US Debtors are treated similarly to the Lehman Japan entities, the Lehman Japan entities shall not object to or contest the claims asserted against any US Debtor entity by other Affiliates of the US Debtors that have entered into agreements with the US Debtors settling claims and receivables among such parties. Notwithstanding the foregoing, each Lehman Japan entity shall be permitted to object to the claims of any entity that objects to any claim held by such Lehman Japan entity against the US Debtors in the Chapter 11 Cases.

(e)     Lehman Japan shall cooperate with and respond to reasonable requests for information of the US Debtors or the Plan Administrator regarding the resolution of claims of, or distributions by Lehman Japan to, Lehman Japan's creditors who have also asserted claims against the US Debtors ("Third-Party Creditors"), including whether: (i) the claims of Third-Party Creditors have been allowed or disallowed against Lehman Japan, (ii) the claims of Third-Party Creditors are disputed or subject to objection by Lehman Japan, (iii) the consideration, if any, paid to Third-Party Creditors by Lehman Japan, and (iv) future distributions or consideration are anticipated to be made to Third-Party Creditors by Lehman Japan, including estimates of the amounts of such future distributions or consideration.   Lehman Japan shall also cooperate with and respond to reasonable requests for information of the US Debtors or the Plan Administrator regarding the resolution of Lehman Japan's claims against, and distributions received by Lehman Japan from, Affiliates of the US Debtors.

3.3     LBJ Customer Note Claims.   Each LBJ Customer Note Claim is a claim asserted directly by the Customer for all purposes under the Plan and will receive the same treatment as if such LBJ Customer Note Claims had been transferred directly by LBIE to each Customer; provided, however, that the US Debtors reserve the right to object to each LBJ Customer Note Claim on any basis.   The Parties have entered into a stipulation in connection with voting on the Plan to enable the LBJ Customer Note Claims to be voted directly by the Customers.

3.4     Solicitation Required in Connection with Amended Plan.   Notwithstanding anything contained in this Section 3 or elsewhere in this Agreement, this Agreement is not, and

shall not be deemed to be, a solicitation of a vote for the acceptance of the Amended Plan pursuant to section 1125 of the Bankruptcy Code, or rejection of any Alternative Plan. Acceptance of the Amended Plan will not be solicited until the Bankruptcy Court has approved the Disclosure Statement and related ballots, and such Disclosure Statement and ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

4.      Lehman Japan's Representations, Warranties and Covenants.   In order to induce the US Debtors to enter into and perform their obligations under this Agreement, each Lehman Japan entity hereby represents, warrants and acknowledges as follows:

    4.1      Authority.

        (a)      (i) Each Japan Liquidation Company has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance by such Japan Liquidation Company of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Japan Liquidation Company and no other proceedings on the part of such Japan Liquidation Company are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

        (b)      (i) Each Japan Non-Liquidation Company has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Japan Non-Liquidation Company of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Japan Non-Liquidation Company and no other proceedings on the part of such Japan Non-Liquidation Company are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

    4.2      Validity.

        (a)      This Agreement has been duly executed and delivered by each Japan Liquidation Company and constitutes the legal, valid and binding agreement of each Japan

Liquidation Company, enforceable against each Japan Liquidation Company in accordance with its terms.

(b)     This Agreement has been duly executed and delivered by each Japan Non-Liquidation Company and constitutes the legal, valid and binding agreement of each Japan Non-Liquidation Company, enforceable against each Japan Non-Liquidation Company in accordance with its terms.

4.3     <u>Authorization of Governmental Authorities and Creditors</u>.   No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Lehman Japan entity pursuant to this Agreement.

4.4     <u>No Reliance</u>.   Each Lehman Japan entity (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any US Debtor or any of its Affiliates or any officer, employee, agent or representative thereof, and based on such information as each Lehman Japan entity has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each Lehman Japan entity has relied upon each US Debtor's express representations, warranties and covenants in this Agreement, each Lehman Japan entity acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

4.5     <u>Title; No Transfer of Claims</u>.

(a)     Each Lehman Japan entity owns and has good title to its respective Proofs of Claim, free and clear of any and all liens, claims, set-off rights of third parties, security interests, participations, or encumbrances created or incurred by or against any Lehman Japan entity as of the Execution Date and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement, in whole or in part.

(b)     Except for each LBJ Customer Note Transfer, each Lehman Japan entity may not transfer any of the claims or receivables that are the subject of this Agreement, or any

rights or interests arising thereunder or related thereto, including any instruments, rights to payments or other consideration distributed to any Lehman Japan entity under the Amended Plan, in whole or in part, prior to the Effective Date, and may only transfer such claims or receivables after the Effective Date to any party or parties, provided that if there are any continuing obligations under this Agreement, such party agrees that any continuing obligations under this Agreement shall be binding in all respects upon it, and shall govern its acts.

4.6     US Non-Debtor Affiliates.   Lehman Japan shall cooperate with the US Debtors and the US Non-Debtor Affiliates and undertake, in good faith, efforts to reconcile and resolve the allowance of claims or receivables held by or against, and any disputes and issues involving, the US Non-Debtor Affiliates and Lehman Japan in a manner that is generally consistent with the terms of the Agreement.

4.7     Withdrawal of Objections to Liquidation Claims.   Upon approval of this Agreement by the Bankruptcy Court and the occurrence of the Effective Date, each Lehman Japan entity will withdraw any objections that it has filed in the Japanese Proceedings against the Liquidation Claims only to the extent of the amount set forth on Schedule D.

5.     US Debtors' Representations, Warranties and Covenants.   In order to induce Lehman Japan to enter into and perform its obligations under this Agreement, each US Debtor hereby represents, warrants and acknowledges as follows:

5.1     Authority.   Subject to Bankruptcy Court approval to the extent necessary, (i) each US Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such US Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such US Debtor and no other proceedings on the part of such US Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2     Validity.   Subject to Bankruptcy Court approval to the extent applicable, this Agreement has been duly executed and delivered by each US Debtor and constitutes the legal,

valid and binding agreement of each US Debtor, enforceable against each US Debtor in accordance with its terms.

5.3     Authorization of Governmental Authorities.    No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each US Debtor of this Agreement, other than entry of the Confirmation Order.

5.4     No Reliance.    Each US Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon Lehman Japan, and based on such information as such US Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such US Debtor has relied upon Lehman Japan's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

5.5     Title; No Transfer of Claims.

(a)     Each US Debtor owns and has good title to its respective Liquidation Claims and Non-Liquidation Receivables, free and clear of any and all liens, claims, set-off rights of third parties, security interests, participations, or encumbrances created or incurred by or against any such US Debtor as of the Execution Date, and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement.

(b)     Each US Debtor may not transfer any of the Liquidation Claims or the Non-Liquidation Receivables, or any rights or interests arising thereunder or related thereto, including any instruments, rights to payments or other consideration distributed to any US Debtor in connection with any Japan Liquidation Company's liquidation proceeding, in whole or in part, prior to the Effective Date, and may only transfer such claims or receivables after the Effective Date to any party or parties, provided that if there are any continuing obligations under

this Agreement, such party agrees that any continuing obligations under this Agreement shall be binding in all respects upon it, and shall govern its acts.

5.6     US Non-Debtor Affiliates.   The US Debtors shall cooperate with Lehman Japan and undertake, in good faith, efforts to reconcile and resolve the allowance of claims or receivables held by or against, and any disputes and issues involving, the US Non-Debtor Affiliates and Lehman Japan in a manner that is generally consistent with the terms of the Agreement.

6.      Executory Contracts.   All pre-petition executory contracts between the US Debtors and Lehman Japan shall be rejected pursuant to section 365 of the Bankruptcy Code in accordance with the Amended Plan.   Any claims that arise from the rejection of contracts between the US Debtors and Lehman Japan are deemed to be satisfied in full by the claims allowed pursuant to Section 2 hereof.

7.      Releases.

7.1     US Debtor Releases.   Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) the US Debtors' entitlement to distributions in the Japanese Proceedings, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the claims, rights or defenses of the US Non-Debtor Affiliates against Lehman Japan, and subject to the effectiveness of this Agreement in accordance with Section 8 below, and in consideration of the foregoing and Lehman Japan's execution of this Agreement, each US Debtor on behalf of itself, its estate (where applicable), its successors and assigns (the "US Debtors Releasing Parties"), will fully and forever release, discharge and acquit each Lehman Japan entity, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys (each in their capacities as such, the "Lehman Japan Released Parties"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever that such US Debtors Releasing Parties have against such Lehman Japan Released Parties as of the date hereof, whether at law or in equity, whether based on contract (including, without limitation, quasi-

contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, existing as of the date hereof, including all US Avoidance Actions.

7.2     <u>Lehman Japan's Releases</u>.   Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) Lehman Japan's entitlement to distributions in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the claims, rights and defenses of Lehman Japan against the US Non-Debtor Affiliates, and subject to the effectiveness of this Agreement in accordance with Section 8 below, and in consideration of the foregoing and each US Debtor's execution of this Agreement, each Lehman Japan entity, its estate (where applicable), and their successors and assigns (each in their capacities as such, the "<u>Lehman Japan Releasing Parties</u>"), will fully and forever release, discharge and acquit each US Debtor, and its respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys (the "<u>US Debtors Released Parties</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever that such Lehman Japan Releasing Parties have against such US Debtors Released Parties as of the date hereof, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, existing as of the date hereof, including, without limitation, (i) any administrative expense claims arising under section 503 of the Bankruptcy Code, and (ii) all Japan Avoidance Actions.

7.3     Nothing in this Agreement shall operate as a release or waiver by or against any US Non-Debtor Affiliate.

8. <u>Effectiveness of Agreement</u>.

8.1    Sections 3, 4.5, 4.6, 5.5, 5.6 and 8 through 21 of this Agreement shall be effective upon the Execution Date.

8.2    Upon (i) approval of this Agreement by the Bankruptcy Court, (ii) the occurrence of the Effective Date and (iii) Lehman Japan's compliance with its obligations under Section 4.7, all other provisions of this Agreement shall be effective and the Tolling Agreement shall be deemed terminated without further action of the Parties.

9. <u>Termination</u>.

9.1    <u>Automatic Termination</u>.   This Agreement shall automatically terminate on any date on which (i) the US Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more US Debtor and any Lehman Japan entity, (ii) the Bankruptcy Court denies the motion seeking the Confirmation Order with prejudice, or (iii) the Bankruptcy Court confirms an Alternative Plan.

9.2    <u>US Debtors' Right to Terminate</u>.   Each US Debtor shall have the right, at its election, to terminate this Agreement by written notice to Lehman Japan if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Lehman Japan hereunder, taken as a whole, and Lehman Japan shall fail to cure such breach within ten (10) days following written notice of such breach from the US Debtors, or (b) other than as set forth herein, Lehman Japan allows and provides for materially different treatment of claims held by other creditors of Lehman Japan that are factually and legally similar to the Allowed US Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement in respect of such Allowed US claims.

9.3    <u>Lehman Japan's Right to Terminate</u>.   Lehman Japan shall have the right, at its election, to terminate this Agreement by written notice to the US Debtors if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the US Debtors hereunder, taken as a whole, and the US Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from Lehman Japan; (b) the US Debtors make a modification to the structure, classification or distribution scheme under the Amended Plan that

would materially reduce the recovery estimates set forth in the Disclosure Statement with respect to classes that include the Allowed Japan Claims, (c) the Amended Plan provides for materially different treatment of claims held by other creditors that are factually and legally similar to the Allowed Japan Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement provided for in the Amended Plan in respect of the Allowed Japan Claims; provided, however, that with respect to Section 9.3(b) and (c), (i) the US Debtors are not guaranteeing or committing to any specific recovery amount under the Amended Plan, and (ii) modifications to the projected recovery amounts set forth in the Disclosure Statement approved by the Bankruptcy Court that are based upon revised projections of asset values shall not constitute material modifications to the Amended Plan; (d) an objection is lodged by any third party against the Allowed Japan Claims which objection results in any claim of Lehman Japan not being deemed Allowed under the Amended Plan as of the date that is 90 days after the Effective Date; or (e) the Effective Date does not occur on or before December 31, 2012.

9.4     Effect of Termination.   In the event that this Agreement is terminated, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Amended Plan, shall have any res judicata or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder.   Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

10.     Venue and Choice of Law.

10.1     Venue.   To the maximum extent permissible by US and Japanese law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any

Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court; provided that any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims shall be the exclusive jurisdiction of the Japanese Court, provided, further, that any actions or proceedings arising out of disputes in the amount or validity of Non-Liquidation Receivables shall be within the non-exclusive jurisdiction of any court of competent jurisdiction.   Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.   If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.   Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, or with the Japanese Court solely relating to any actions or proceedings arising out of disputes in the amount or validity of the Liquidation Claims and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.   Each Party irrevocably consents to service of process in the manner provided for notices in Section 11 hereof.   Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

     10.2   Choice of Law.   This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code; provided, however, that any claims and disputes arising out of the Liquidation Claims or the Non-Liquidation Receivables shall be governed by and construed in accordance with Japanese law except as otherwise provided in the underlying agreements.

11.  <u>Notices</u>.   All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

<u>To US Debtors at</u>:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq.
Facsimile: (212) 310-8007

<u>To Lehman Japan at</u>:

Kishimoto Bldg., 9th Floor
2-2-1 Marunouchi, Chiyoda-ku
Tokyo 100-0005
Japan
Attn: Masaki Kanehyo
Facsimile: (+81) 3-6365-8877

With a copy to:

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
U.S.A.
Attn:   Lorenzo Marinuzzi
Facsimile: (212) 468-7900

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

12.    <u>Expenses</u>.   The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

13.    <u>No Admission of Liability</u>.   Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

14.    <u>Entire Agreement</u>.   This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.   This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Amended Plan and the terms of this Agreement, the terms of this Agreement shall control.   The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

15.    <u>No Oral Modifications</u>.   This Agreement may not be modified or amended orally.   This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.   Any waiver of compliance with any term or provision of this Agreement on the part of the US Debtors must be provided in a writing signed by Lehman Japan.   Any waiver of compliance with any term or provision of this Agreement on the part of Lehman Japan must be provided in a writing signed by each US Debtor.   No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

16.    <u>Construction</u>.   This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or

against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

17.     Binding Effect; Successor and Assigns.   This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, that no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

18.     Counterparts.   This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.   The signatures of all of the Parties need not appear on the same counterpart.

19.     Headings; Schedules and Exhibits.   The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.   Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.   References to sections, unless otherwise indicated, are references to sections of this Agreement.   All Schedules and Exhibits to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.   Reference to any Schedule or Exhibit herein shall be to the Schedules and Exhibits attached hereto.

20.     Severability and Construction.   If any term of other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is no affected in any manner materially adverse to the Parties.   Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each Party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

21.     <u>Waiver of Jury Trial</u>.   EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.   EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION <u>21</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.   THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI STATLER
ARMS LLC, CES AVIATION LLC, CES
AVIATION V LLC, CES AVIATION IX LLC,
LEHMAN SCOTTISH FINANCE L.P., BNC
MORTGAGE LLC, LB ROSE RANCH LLC,
STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors and Debtors in Possession

By: _____
Name:   John Suckow
Title:    Authorized Signatory


LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors and Debtors in Possession

By: _____
Name:   Daniel Ehrmann
Title:    Authorized Signatory


LEHMAN BROTHERS HOLDINGS JAPAN
INC., LEHMAN BROTHERS JAPAN INC.,
SUNRISE FINANCE CO., LTD., LEHMAN
BROTHERS REAL ESTATE LIMITED


By: _____
Name: Masaki Kanehyo
Title: Representative Liquidator

LEHMAN BROTHERS FINANCE (JAPAN) INC.


By: _____
Name: Akio Katsuragi
Title: Representative in Japan


LEHMAN BROTHERS COMMERCIAL
MORTGAGE K.K, HERCULES K.K.


By: _____
Name: Masatoshi Goto
Title: Representative Liquidator

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI STATLER
ARMS LLC, CES AVIATION LLC, CES
AVIATION V LLC, CES AVIATION IX LLC,
LEHMAN SCOTTISH FINANCE L.P., BNC
MORTGAGE LLC, LB ROSE RANCH LLC,
STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors and Debtors in Possession

By: _____
Name:   John Suckow
Title:   Authorized Signatory

LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors and Debtors in Possession

By: _____
Name:   Daniel Ehrmann
Title:   Authorized Signatory

LEHMAN BROTHERS HOLDINGS JAPAN
INC., LEHMAN BROTHERS JAPAN INC.,
SUNRISE FINANCE CO., LTD., LEHMAN
BROTHERS REAL ESTATE LIMITED

By: _____
Name: Masaki Kanehyo
Title: Representative Liquidator

LEHMAN BROTHERS FINANCE (JAPAN) INC.

By: _____
Name: Akio Katsuragi
Title: Representative in Japan

LEHMAN BROTHERS COMMERCIAL
MORTGAGE K.K, HERCULES K.K.

By: _____
Name: Masatoshi Goto
Title: Representative Liquidator

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI STATLER
ARMS LLC, CES AVIATION LLC, CES
AVIATION V LLC, CES AVIATION IX LLC,
LEHMAN SCOTTISH FINANCE L.P., BNC
MORTGAGE LLC, LB ROSE RANCH LLC,
STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors and Debtors in Possession

By: _____
Name:  John Suckow
Title:    Authorized Signatory


LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors and Debtors in Possession

By: _____
Name:  Daniel Ehrmann
Title:    Authorized Signatory

LEHMAN BROTHERS HOLDINGS JAPAN
INC., LEHMAN BROTHERS JAPAN INC.,
SUNRISE FINANCE CO., LTD., LEHMAN
BROTHERS REAL ESTATE LIMITED

By: _____
Name:  Masaki Kanehyo
Title:    Representative Liquidator


LEHMAN BROTHERS FINANCE (JAPAN) INC.

By: _____
Name:  Akio Katsuragi
Title:    Representative in Japan


LEHMAN BROTHERS COMMERCIAL
MORTGAGE K.K., HERCULES K.K.

By: _____
Name:  Masatoshi Goto
Title:    Representative Liquidator

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI STATLER
ARMS LLC, CES AVIATION LLC, CES
AVIATION V LLC, CES AVIATION IX LLC,
LEHMAN SCOTTISH FINANCE L.P., BNC
MORTGAGE LLC, LB ROSE RANCH LLC,
STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors and Debtors in Possession

By: _____
Name:   John Suckow
Title:   Authorized Signatory

LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors and Debtors in Possession

By: _____
Name:   Daniel Ehrmann
Title:   Authorized Signatory

LEHMAN BROTHERS HOLDINGS JAPAN
INC., LEHMAN BROTHERS JAPAN INC.,
SUNRISE FINANCE CO., LTD., LEHMAN
BROTHERS REAL ESTATE LIMITED

By: _____
Name: Masaki Kanehyo
Title: Representative Liquidator

LEHMAN BROTHERS FINANCE (JAPAN) INC.

By: _____
Name: Akio Katsuragi
Title: Representative in Japan

LEHMAN BROTHERS COMMERCIAL
MORTGAGE K.K, HERCULES K.K.

By: _____
Name: Masatoshi Goto
Title: Representative Liquidator

24

| Lehman Japan Claimant | Claim Number | Debtor Against which Claim was Filed | Amount (USD) |
|---|---|---|---|
| Hercules KK | 21259 | Lehman Brothers Holdings Inc. | 18,046 |
| Hercules KK | 21260 | Lehman Brothers Holdings Inc. | 732,347 |
| LB Commercial Mortgage KK | 21264 | Lehman Brothers Holdings Inc. | 0 |
| LB Commercial Mortgage KK | 43842 | Lehman Brothers Holdings Inc. | 38,155,939 |
| LB Commercial Mortgage KK | 21275 | Lehman Brothers Special Financing Inc. | 0 |
| Lehman Brothers Finance (Japan) Inc | 21267 | Lehman Brothers Commercial Corporation | 13,442 |
| Lehman Brothers Finance (Japan) Inc | 21266 | Lehman Brothers Commodity Services Inc. | 124,018 |
| Lehman Brothers Finance (Japan) Inc | 21299 | Lehman Brothers Financial Products Inc. | 5,113 |
| Lehman Brothers Finance (Japan) Inc | 21258 | Lehman Brothers Holdings Inc. | 15,606 |
| Lehman Brothers Finance (Japan) Inc | 21268 | Lehman Brothers Holdings Inc. | 6,782,123 |
| Lehman Brothers Finance (Japan) Inc | 21286 | Lehman Brothers Holdings Inc. | 1,535 |
| Lehman Brothers Finance (Japan) Inc | 21287 | Lehman Brothers Holdings Inc. | 174,846,643 |
| Lehman Brothers Finance (Japan) Inc | 21288 | Lehman Brothers Holdings Inc. | 73,675,337 |
| Lehman Brothers Finance (Japan) Inc | 21289 | Lehman Brothers Holdings Inc. | 18,238 |
| Lehman Brothers Finance (Japan) Inc | 21290 | Lehman Brothers Holdings Inc. | 8,472,028 |
| Lehman Brothers Finance (Japan) Inc | 21291 | Lehman Brothers Holdings Inc. | 960,094 |
| Lehman Brothers Finance (Japan) Inc | 21292 | Lehman Brothers Holdings Inc. | 7,616,474 |
| Lehman Brothers Finance (Japan) Inc | 21293 | Lehman Brothers Holdings Inc. | 21,158,421 |
| Lehman Brothers Finance (Japan) Inc | 21294 | Lehman Brothers Holdings Inc. | 7,220 |
| Lehman Brothers Finance (Japan) Inc | 21295 | Lehman Brothers Holdings Inc. | 31,684 |
| Lehman Brothers Finance (Japan) Inc | 21296 | Lehman Brothers Holdings Inc. | 13,442 |
| Lehman Brothers Finance (Japan) Inc | 21297 | Lehman Brothers Holdings Inc. | 720,085 |
| Lehman Brothers Finance (Japan) Inc | 21298 | Lehman Brothers Holdings Inc. | 1,404,837 |
| Lehman Brothers Finance (Japan) Inc | 26025 | Lehman Brothers Holdings Inc. | 2,985 |
| Lehman Brothers Finance (Japan) Inc | 21265 | Lehman Brothers Special Financing Inc. | 21,158,421 |
| Lehman Brothers Finance (Japan) Inc | 21269 | Lehman Commercial Paper Inc. | 50,634 |
| Lehman Brothers Finance (Japan) Inc | 66805 | Merit, LLC | 424,665 |
| Lehman Brothers Holdings Japan Inc | 43841 | Lehman Brothers Holdings Inc. | 313,998,510 |
| Lehman Brothers Japan Inc. | 21272 | Lehman Brothers Commercial Corporation | 4,145,460 |
| Lehman Brothers Japan Inc. | 21271 | Lehman Brothers Commodity Services Inc. | 0 |
| Lehman Brothers Japan Inc. | 21273 | Lehman Brothers Holdings Inc. | 12,110,754 |
| Lehman Brothers Japan Inc. | 21277 | Lehman Brothers Holdings Inc. | 4,145,460 |
| Lehman Brothers Japan Inc. | 21278 | Lehman Brothers Holdings Inc. | 363,078,846 |
| Lehman Brothers Japan Inc. | 21279 | Lehman Brothers Holdings Inc. | 0 |
| Lehman Brothers Japan Inc. | 21280 | Lehman Brothers Holdings Inc. | 41,849 |
| Lehman Brothers Japan Inc. | 21281 | Lehman Brothers Holdings Inc. | 21,803,510,132 |
| Lehman Brothers Japan Inc. | 21282 | Lehman Brothers Holdings Inc. | 39,659,224 |
| Lehman Brothers Japan Inc. | 21283 | Lehman Brothers Holdings Inc. | 2,201,661 |
| Lehman Brothers Japan Inc. | 21284 | Lehman Brothers Holdings Inc. | 12,600 |
| Lehman Brothers Japan Inc. | 21285 | Lehman Brothers Holdings Inc. | 562,563,675 |
| Lehman Brothers Japan Inc. | 55723 | Lehman Brothers Holdings Inc. | 18,453,677 |
| Lehman Brothers Japan Inc. | 21270 | Lehman Brothers Special Financing Inc. | 363,078,846 |
| Lehman Brothers Real Estate Ltd | 21261 | Lehman Brothers Holdings Inc. | 137 |
| Lehman Brothers Real Estate Ltd | 21262 | Lehman Brothers Holdings Inc. | 25,362 |
| Lehman Brothers Real Estate Ltd | 21263 | Lehman Brothers Holdings Inc. | 23,442 |
| Lehman Brothers Real Estate Ltd | 21276 | Lehman Commercial Paper Inc. | 15,522 |
| Sunrise Financial Co. LTD | 21274 | Lehman Brothers Holdings Inc. | 7,758 |

Schedule B

Liquidation Claims

| Lehman Japan Entity Against which Claim is Held | Claimant | Amount (Yen) |
|---|---|---|
| Lehman Brothers Japan Inc | LB 745 LLC | 468,704 |
| Lehman Brothers Japan Inc | LB Special Financing Inc. | 13,846,264,448 |
| Lehman Brothers Japan Inc | Lehman Brothers Commercial Corporation | 12,740,176,770 |
| Lehman Brothers Japan Inc | Lehman Brothers Commodity Services Inc. | 58,029,067 |
| Lehman Brothers Japan Inc | Lehman Brothers Commodity Services Inc. | 1,313,638 |
| Lehman Brothers Japan Inc | Lehman Brothers Holdings Inc. | 46,151,546,119 |
| Lehman Brothers Japan Inc | Lehman Brothers Holdings Inc. | 21,355,111,682 |
| Lehman Brothers Japan Inc | Lehman Brothers Holdings Inc. | 3,397,224,541 |
| Lehman Brothers Japan Inc | Lehman Commercial Paper Inc. | 2,871,507 |
| LB Commercial Mortgage KK | LB Special Financing | 130,366,735 |
| LB Commercial Mortgage KK | Lehman Brothers Holdings Inc. | 2,385,164,039 |
| Sunrise Financial Co. LTD | Lehman Brothers Holdings Inc. | 1,376,858,354 |

| Debtor against which Claim is Allowed | Lehman Japan Claimant | Allowed Japan Claims (USD) | Claim Classes Under Plan |
|---|---|---|---|
| Lehman Brothers Holdings Inc | Lehman Brothers Japan Inc | 138,316,019 | 4B |
| Lehman Brothers Holdings Inc | Lehman Brothers Japan Inc | 26,007,359 | 8 |
| Lehman Brothers Holdings Inc | Lehman Brothers Holdings Japan Inc | 46,585,997 | 4B |
| Lehman Brothers Holdings Inc | Lehman Brothers Finance (Japan) Inc | 24,876,291 | 4B |
| Lehman Brothers Holdings Inc. | Lehman Brothers Finance (Japan) Inc | 4,820,257 | 4A |
| Lehman Brothers Holdings Inc. | Lehman Brothers Commercial Mortgage KK | 32,478,739 | 8 |
| Lehman Brothers Holdings Inc. | Lehman Brothers Commercial Mortgage KK | 3,765,910 | 4B |
| Lehman Brothers Holdings Inc. | Hercules KK | 0 | 4B |
| Lehman Brothers Holdings Inc. | Lehman Brothers Real Estate Ltd | 0 | 4B |
| Lehman Brothers Special Financing Inc. | Lehman Brothers Japan Inc. | 214,771,585 | 5C |
| Lehman Brothers Special Financing Inc. | Lehman Brothers Finance (Japan) Inc | 21,570,333 | 5C |
| Lehman Brothers Commercial Corporation | Lehman Brothers Finance (Japan) Inc | 1,410 | 5C |
| Lehman Brothers Commodity Services Inc. | Lehman Brothers Finance (Japan) Inc | 124,588 | 5C |
| Lehman Brothers Financial Products Inc. | Lehman Brothers Finance (Japan) Inc | 5,124 | 4B |
| Lehman Commercial Paper Inc. | Lehman Brothers Finance (Japan) Inc | 68,388 | 5C |
| Lehman Commercial Paper Inc. | Lehman Brothers Real Estate Ltd | 15,555 | 5C |
| Merit, LLC | Lehman Brothers Finance (Japan) Inc | 441,574 | 4B |

Allowed US Claims

| Japan Liquidation Company against which Claim is Allowed | Lehman US Claimant | Allowed Direct Claims (USD) |
|---|---|---|
| Lehman Brothers Japan Inc. | Lehman Brothers Commercial Corporation | 115,817,806 |
| Lehman Brothers Japan Inc. | Lehman Brothers Holdings Inc | 0 |
| Lehman Brothers Japan Inc. | LB Commodity Services Inc. | 558,783 |
| Lehman Brothers Japan Inc. | Lehman Commercial Paper Inc. | 27,038 |
| Lehman Brothers Japan Inc. | LB 745 LLC | 4,413 |
| LB Commercial Mortgage KK | LB Special Financing Inc. | 1,213,504 |
| Sunrise Financial Co. LTD | Lehman Brothers Holdings Inc. | 12,816,330 |

| Japan Non-Liquidation Company | Lehman US Entity | Agreed Non-Liquidation Receivables (USD) |
|---|---|---|
| Lehman Brothers Finance (Japan) Inc | LB 745 LLC | 71,689 |
| Hercules KK | Lehman Brothers Holdings Inc. | 41,451,515 |
| Lehman Brothers Real Estate Ltd | Lehman Brothers Holdings Inc. | 24,451,572 |

**EXHIBIT 5**

**PART C – LETTER AGREEMENT AMONG LBHI, LBSF, LEHMAN BROTHERS JAPAN INC., AND LEHMAN BROTHERS INTERNATIONAL (EUROPE)**

October 24, 2011

Lehman Brothers Japan Inc.
Kishimoto Bldg., 9th Floor
2-2-1 Marunouchi, Chiyoda-ku
Tokyo 100-0005
Japan

Lehman Brothers International (Europe) (in administration)
Level 23.25 Canada Square
London E14 5LQ

Re:     Release of Certain Claims in Connection with Certain Japanese Government Bonds

Ladies and Gentlemen:

This letter agreement (the "Letter Agreement") is made and entered into by and among Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Japan Inc. ("LBJ"), and Lehman Brothers International (Europe) ("LBIE"), each of which shall be referred to individually as a "Party" and collectively as the "Parties."  Reference is made to the Japanese government bonds listed on Appendix 1 attached hereto (the "Japanese Government Bonds").

Prior to the commencement of the chapter 11 cases of LBHI and its affiliated debtors, LBSF financed the purchase of the Japanese Government Bonds via LBJ.  There were a series of intercompany transactions among LBSF, LBIE, and LBJ involving the Japanese Government Bonds, which transactions were recorded on the relevant Parties' prepetition books and records (collectively, the "Intercompany Transactions").  As of September 12, 2008, the Parties may hold (i) direct or guarantee claims against one another for the right to recover the Japanese Government Bonds or the full value of the Japanese Government Bonds, including, without limitation, on the basis of actual or constructive trust, lien, or other security interest in the Japanese Government Bonds or any other legal or equitable cause of action that would entitle any Party to recovery of the full value of the Japanese Government Bonds (collectively, the "JGB Claims") and (ii) direct or guarantee claims against one another for other amounts owing which arise under the Intercompany Transactions, including any right to setoff, netting, or recoupment.

In order to facilitate a resolution and settlement of all of the claims, rights, and defenses against each other, the Parties have agreed that it is in their mutual interest to release any and all JGB Claims they may have against each other Party in accordance with the following terms, provisions, and conditions:

1.      Upon the Effective Date (as defined below), each Party on behalf of itself, its estate, its successors and assigns, and any other party, person, or entity claiming under

or through it, hereby generally releases, discharges, waives and acquits, unconditionally and irrevocably, each other Party and its respective current and former agents, servants, officers, directors, employees, divisions, branches, units, parents, attorneys, financial advisors, accountants, successors, predecessors, heirs, personal representatives, and assigns (each in their capacities as such) from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding fraud, bad faith or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such Party ever had or claimed to have or now has or claims to have presently or at any future date, against each other Party arising under, related to, or in connection with the JGB Claims (the foregoing released claims, the "Released JGB Claims"); provided, however, that each Party expressly reserves, and nothing herein shall impair, all of its rights, actions, defenses, objections, causes of action, and claims it might have against each other Party that are not Released JGB Claims, including, without limitation, (a) the net amounts, as between each relevant pair of LBSF, LBIE, and LBJ, resulting from (i) income arising on the relevant securities during the period of the applicable Intercompany Transaction, (ii) price differential payable under the Intercompany Transaction in accordance with the relevant contract, and (iii) the difference between the value of the collateral subject to the Intercompany Transaction and the cash amount payable thereunder and (b) those monetary amounts as agreed or to be agreed between LBIE and LBJ as owing by LBIE to LBJ under the transactions between LBIE and LBJ pursuant to the Master Agreement Concerning Gensaki Transactions of Bonds, dated April 1, 2002, and any failed transaction or other costs relating thereto; provided, further, that in the case of each Intercompany Transaction, the Japanese Government Bonds are assumed to have been delivered or redelivered, as the case may be, to the relevant party in accordance with the terms of the relevant Intercompany Transaction.

2.        Each Party represents and warrants to each other Party that, subject to Bankruptcy Court approval to the extent necessary, (i) the execution, delivery, and performance by such Party of this Letter Agreement and the releases contemplated under this Letter Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Letter Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Letter Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Letter Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts relating to Intercompany Transactions to which it is a party and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Letter Agreement to it, and (vii) it knowingly waives any and all claims that entry into this Letter Agreement was induced by any misrepresentation or nondisclosure and knowingly waives

any and all rights to rescind or avoid this Letter Agreement based upon presently existing facts, known or unknown.

3. This Letter Agreement shall be effective upon the effective date of the chapter 11 plan of LBHI and its affiliated debtors.

4. This Letter Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Letter Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

5. This Letter Agreement may only be amended or modified and any of the terms hereof may be waived only by an instrument in writing signed by each of the Parties.

6. This Letter Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart. Signatures to this Letter Agreement may be exchanged by facsimile transmission and/or electronic mail and shall constitute originals for all purposes.

Kindly acknowledge and confirm your agreement to the foregoing by execution of this Letter Agreement by a duly authorized representative below where indicated and delivery of such representative's signature to LBHI via facsimile or electronic mail. Each person who executes this Letter Agreement on behalf of a Party represents and warrants that he or she is duly authorized and empowered to execute and deliver this Letter Agreement on behalf of such Party.

Sincerely,

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel Ehrmann
Title: SVP

LEHMAN BROTHERS SPECIAL FINANCING
INC., a Delaware corporation, as Debtor and
Debtor in Possession in its chapter 11 case in the
United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By:

Name: Daniel Ehrmann

Title: VP


LEHMAN BROTHERS JAPAN INC.


By: Masaki Kanehyo
Title: Representative Liquidator


LEHMAN BROTHERS INTERNATIONAL
(EUROPE) (IN ADMINISTRATION)


By: _____
Name:
Title:

For the joint administrators, Anthony Victor
Lomas, Steven Anthony Pearson, Michael
John Andrew Jervis, Dan Yoram
Schwarzmann and Derek Anthony Howell
acting for and on behalf of Lehman Brothers
International (Europe) as agents and without
personal liability.

4

LEHMAN BROTHERS SPECIAL FINANCING
INC., a Delaware corporation, as Debtor and
Debtor in Possession in its chapter 11 case in the
United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
Name:
Title:


LEHMAN BROTHERS JAPAN INC.

By: Masaki Kanehyo
Title: Representative Liquidator


LEHMAN BROTHERS INTERNATIONAL
(EUROPE) (IN ADMINISTRATION)


By: _____
Name:
Title:

For the joint administrators, Anthony Victor
Lomas, Steven Anthony Pearson, Michael
John Andrew Jervis, Dan Yoram
Schwarzmann and Derek Anthony Howell
acting for and on behalf of Lehman Brothers
International (Europe) as agents and without
personal liability.

LEHMAN BROTHERS SPECIAL FINANCING
INC., a Delaware corporation, as Debtor and
Debtor in Possession in its chapter 11 case in the
United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By:_____
Name:
Title:


LEHMAN BROTHERS JAPAN INC.


By: Masaki Kanehyo
Title: Representative Liquidator


LEHMAN BROTHERS INTERNATIONAL
(EUROPE) (IN ADMINISTRATION)

By: _Paul Copley_____
Name: PAUL COPLEY
Title: PARTNER, PRICEWATERHOUSECOOPERS LLP

For the joint administrators, Anthony Victor
Lomas, Steven Anthony Pearson, Michael
John Andrew Jervis, Dan Yoram
Schwarzmann and Derek Anthony Howell
acting for and on behalf of Lehman Brothers
International (Europe) as agents and without
personal liability.

**Japanese bonds at LBSF as at 12 September 2008**

| CUSIP | ISIN | Security Description | Long / (Short) Position Between LBIE/ LBSF | MV at 12 Sept 2008 (US$) | Financing Positions with LBJ | LBIE/LBJ Repo Trade Ref | LBIE view vs LBJ | Diff |
|---|---|---|---|---|---|---|---|---|
| **Short JGB** | | | | | | | | |
| 1JP127440 | JP1200971792 | JAPAN GOVERNMENT TWENTY YEAR BOND SERIES# 97 2.200% 20270920 | (15,000,000,000) | (141,225,000) | (15,000,000,000) | YM62SJ | (15,000,000,000) | 0 |
| 1JP553157 | JP1201031877 | JAPAN GOVERNMENT TWENTY YEAR BOND SERIES# 103 2.300% 2028062 | (7,000,000,000) | (66,829,000) | (7,000,000,000) | YM63FG | (7,000,000,000) | 0 |
| 1JP299413 | JP12009917C3 | JAPAN GOVERNMENT TWENTY YEAR BOND SERIES# 99 2.100% 20271220 | (7,000,000,000) | (64,813,000) | (6,884,000,000) | YM62VQ | (6,884,000,000) | 0 |
| 1JP404757 | JP1201001839 | JAPAN GOVERNMENT TWENTY YEAR BOND SERIES# 100 2.200% 2028032 | (4,000,000,000) | (37,588,000) | (3,500,000,000) | YM63BP | (3,500,000,000) | 0 |
| 1JP501701 | JP1102931860 | JAPAN GOVERNMENT TEN YEAR BOND SERIES# 293 1.800% 20180620 | (3,000,000,000) | (28,605,000) | (26,310,000,000) | YM63CQ | (26,310,000,000) | 0 |
| 1JP504283 | JP1120161862 | JAPANESE GOVT CPI LINKED BOND SERIES# 16 1.400% 20180610 | (2,949,200,000) | (27,572,071) | (10,890,200,000) | YM63CZ | (10,890,200,000) | 0 |
| 1JP922295 | JP1120121767 | JAPANESE GOVT CPI LINKED BOND SERIES# 12 1.200% 20170610 | (2,883,700,000) | (27,011,618) | (1,016,700,000) | YM62LX | (1,016,700,000) | 0 |
| 1JP284878 | JP11201417C2 | JAPANESE GOVT CPI LINKED BOND SERIES# 14 1.200% 20171210 | (2,843,700,000) | (26,352,568) | (75,227,000,000) | YM62S8 | (75,227,000,000) | 0 |
| 1JP763335 | JP11201016C2 | JAPANESE GOVT CPI LINKED BOND SERIES# 10 1.100% 20161210 | (2,817,400,000) | (26,137,020) | (45,495,900,000) | YM62JP | (45,495,900,000) | 0 |
| 1JP570623 | JP1120081664 | JAPANESE GOVT CPI LINKED BOND SERIES# 8 1.000% 20160610 | (2,791,600,000) | (25,992,588) | (36,057,200,000) | YM62G6 | (36,057,200,000) | 0 |
| 1JP088972 | JP1050661790 | JAPAN GOVERNMENT FIVE YEAR BOND SERIES# 66 1.100% 20120920 | (2,500,000,000) | (23,297,500) | (2,600,000,000) | YM62RQ | (2,600,000,000) | 0 |
| 1JP289778 | JP10506817C7 | JAPAN GOVERNMENT FIVE YEAR BOND SERIES# 68 1.100% 20121220 | (2,500,000,000) | (23,280,000) | (2,200,000,000) | YM62TG | (2,200,000,000) | 0 |
| 1JP419953 | JP1120151848 | JAPANESE GOVT CPI LINKED BOND SERIES# 15 1.400% 20180310 | (1,480,300,000) | (13,874,852) | (6,480,300,000) | YKQ278 | (6,490,300,000) | (10,000,000) |
| | | | | | | YM63B4 | 10,000,000 | 10,000,000 |
| 1JP377128 | JP1120051592 | JAPANESE GOVT CPI LINKED BOND SERIES# 5 0.800% 20150910 | (1,441,500,000) | (13,361,264) | (1,441,500,000) | YM61KN | 3,000,000 | 1,444,500,000 |
| | | | | | | YKQ2M9 | (1,444,500,000) | (1,444,500,000) |
| 1JP339664 | JP1120041569 | JAPANESE GOVT CPI LINKED BOND SERIES# 4 0.500% 20150610 | (1,437,500,000) | (13,128,688) | (17,937,500,000) | YM61JH | (17,937,500,000) | 0 |
| 1JP867276 | JP1120111743 | JAPANESE GOVT CPI LINKED BOND SERIES# 11 1.200% 20170310 | (1,348,600,000) | (12,621,547) | (31,852,600,000) | YK30R7 | (4,504,000,000) | 27,348,600,000 |
| | | | | | | YKQ2WV | (30,351,600,000) | (30,351,600,000) |
| | | | | | | YM62K7 | 3,003,000,000 | 3,003,000,000 |
| 1JP699331 | JP11200916A8 | JAPANESE GOVT CPI LINKED BOND SERIES# 9 1.100% 20160910 | (1,338,700,000) | (12,472,668) | (7,098,500,000) | YKQ2TP | (7,118,500,000) | (20,000,000) |
| | | | | | | YM62HZ | 20,000,000 | 20,000,000 |
| 1JP422643 | JP1200615C2 | JAPANESE GOVT CPI LINKED BOND SERIES# 6 0.800% 20151210 | (1,312,500,000) | (12,107,813) | (29,562,500,000) | YM61LL | (29,562,500,000) | 0 |
| 1JP188269 | JP1201317A8 | JAPANESE GOVT CPI LINKED BOND SERIES# 13 1.300% 20170910 | (1,285,100,000) | (12,060,664) | 1,267,900,000 | YKQ21S | (23,734,100,000) | (25,002,000,000) |
| | | | | | | YM62SQ | 25,002,000,000 | 25,002,000,000 |
| 1JP504556 | JP1120071632 | JAPANESE GOVT CPI LINKED BOND SERIES# 7 0.800% 20160310 | (1,270,500,000) | (11,680,977) | (21,270,500,000) | YM61L4 | 5,065,000,000 | 26,335,500,000 |
| | | | | | | YKQ2Q6 | (26,335,500,000) | (26,335,500,000) |
| 1JP263476 | JP1200314C2 | JAPANESE GOVT CPI LINKED BOND SERIES# 3 0.500% 20141210 | (1,229,400,000) | (11,205,981) | (1,427,400,000) | YM61FG | (1,427,400,000) | 0 |
| 1JP197518 | JP1120021462 | JAPANESE GOVT CPI LINKED BOND SERIES# 2 1.100% 20140610 | (789,200,000) | (7,512,395) | (789,200,000) | YM603N | (789,200,000) | 0 |
| 1JP145988 | JP1120011430 | JAPANESE GOVT CPI LINKED BOND SERIES# 1 1.200% 20140310 | (281,500,000) | (2,689,451) | (281,500,000) | YM61H4 | 1,000,000 | 282,500,000 |
| | | | | | | YKQ2F7 | (282,500,000) | (282,500,000) |
| | | *Subtotal - Short JGB* | (68,500,400,000) | (641,419,662) | (349,054,600,000) | | (349,054,600,000) | 0 |
| **Long JGB** | | | | | | | 812,000,000 | |
| 1JP507849 | JP1050721867 | JAPAN GOVERNMENT FIVE YEAR BOND SERIES# 72 1.500% 20130620 | 10,290,000,000 | 97,425,720 | 812,000,000 | YM63C9 | 812,000,000 | 0 |
| | | *Subtotal - Long JGB* | 10,290,000,000 | 97,425,720 | 812,000,000 | | 812,000,000 | |
| | | **TOTAL JGB** | (58,210,400,000) | (543,993,942) | (348,242,600,000) | | (348,242,600,000) | |
| | | | | | | | (348,242,600,000) | |
| | | | | | | | 0 | |

# EXHIBIT 5

# PART D – AGREEMENT AMONG DEBTORS, LBLIS GROUP ENTITIES, AND U.K. AFFILIATES

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made and entered into as of October 24, 2011, by and among the Debtors,[1] the LBLIS Group Entities,[2] the UK Administration Companies[3] (acting by their joint administrators, Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell, collectively, the "**Joint Administrators**"),[4] the UK Liquidation Companies[5] (acting by their joint liquidators Derek Anthony Howell and Ian Oakley-Smith, collectively, the "**Joint Liquidators**")[6] and the Other UK Affiliates[7] (the UK Administration Companies,

---

[1] As used herein, "**Debtors**" means Lehman Brothers Holdings Inc. ("**LBHI**"); Lehman Brothers Special Financing Inc. ("**LBSF**"); Lehman Commercial Paper Inc. ("**LCPI**"); Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc. ("**LOTC**"); Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc. ("**LBCS**"); Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited ("**East Dover**"); Luxembourg Residential Properties Loan Finance S.a.r.l.; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC ("**LB 745**"); PAMI Statler Arms LLC.

[2] As used herein, "**LBLIS Group Entities**" means Lehman Brothers Luxembourg Investments Sarl ("**LBLIS**"), Lehman Brothers Holdings Scottish LP ("**LB Scottish**"), and Lehman Brothers UK Holdings (Delaware) Inc. ("**LB UK Delaware**").

[3] As used herein, "**UK Administration Companies**" means Lehman Brothers International (Europe) ("**LBIE**"); Lehman Brothers Limited ("**LBL**"); Lehman Brothers Holdings PLC; LB UK Re Holdings Limited ("**UK Re**"); Storm Funding Limited; Mable Commercial Funding Limited; Lehman Brothers Europe Limited; Lehman Brothers UK Holdings Limited ("**LB UK Holdings**"); LB UK Financing Ltd; LB SF No. 1; Cherry Tree Mortgages Limited; Lehman Brothers Lease & Finance No. 1 Limited; Zestdew Limited; Monaco NPL (No. 1) Limited; Lehman Commercial Mortgage Conduit Limited; LB RE Financing No. 3 Limited; Lehman Brothers (PTG) Limited; Eldon Street Holdings Limited; LB Holdings Intermediate 2 Limited; and Thayer Properties Limited (each in administration).

[4] A reference to the Joint Administrators shall be construed as being to the Joint Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Joint Administrators.

[5] As used herein, "**UK Liquidation Companies**" means Eldon Street (Cube) Limited; Eldon Street (Raven) Limited; Lehman Brothers Equity (Nominees Number 7) Limited; Platform Home Mortgage Securities No. 4 Limited; Platform Commercial Mortgage Limited; Lehman Brothers (Indonesia) Limited; Grace Hotels Limited; LBO Investments Limited; LBQ Funding (UK); and LB Lomond Investments (each in liquidation).

[6] A reference to the Joint Liquidators shall be construed as being to the Joint Liquidators both jointly and severally and to any other person who is appointed as a liquidator in substitution for any liquidator or as an additional liquidator in conjunction with the Joint Liquidators.

acting by their Joint Administrators, the UK Liquidation Companies, acting by their Joint Liquidators, and the Other UK Affiliates, collectively, the "**UK Affiliates**").   The Debtors, the LBLIS Group Entities and the UK Affiliates shall each be referred to individually as a "**Party**" and collectively as the "**Parties**"; *provided* that the terms "Party" and "Parties" refer to any of the LBLIS Group Entities solely to the extent set forth in Section 2.13(m) hereof.

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "**Chapter 11 Cases**" and each a "**Chapter 11 Case**");

WHEREAS, on September 15, 2008 and on various dates thereafter, the UK Administration Companies entered English administration proceedings pursuant to the English Insolvency Act 1986 and the UK Liquidation Companies entered liquidation in the UK (collectively, the "**UK Proceedings**");

WHEREAS, the Joint Administrators were appointed as the joint administrators of the Administration Companies and the Joint Liquidators were appointed as the joint liquidators of the Liquidation Companies;

WHEREAS, on August 25, 2011, Thayer Group and Thayer Properties (collectively, the "**Thayer Liquidation Companies**") entered liquidation proceedings in Jersey, United Kingdom and the Thayer Liquidators were appointed as the liquidators of the Thayer Liquidation Companies; and

---

(continued…)

[7] As used herein, "**Other UK Affiliates**" means Acenden Limited (f/k/a Capstone Mortgage Services Limited); Blue I Real Estate Limited; Eldon Street (Birchin) Limited; Eldon Street (Colbert Orco) Limited; Eldon Street (Fidenza) Limited; Eldon Street (Harley) Limited; Eldon Street (Jefferson) Limited; Harley Property Ventures Limited; LB Holdings Intermediate 1 Limited; LB SF Warehouse Limited; LB Yellow (No. 1) Limited; MBAM Investor Limited; Myra Sarl; Parkmetro Limited; Preferred Group Limited; Preferred Holdings Limited; Preferred Mortgages Limited; Resetfan Limited; SM Funding No. 1 Limited; Southern Pacific Funding 3 Ltd.; Southern Pacific Mortgage Ltd.; Southern Pacific Personal Loans Limited; Southern Pacific Residuals 4 Limited; Stepstone Mortgage Funding Limited; Thayer Group Limited (in liquidation) ("**Thayer Group**") (acting by its joint liquidators, Nick Vermeulen and Mark James, collectively, the "**Thayer Group Liquidators**"); Thayer Properties (Jersey) Limited (in liquidation) ("**Thayer Properties**") (acting by its joint liquidators, Nick Vermeulen and Mark James, the "**Thayer Properties Liquidators**" and together with the Thayer Group Liquidators, the "**Thayer Liquidators**"); and Yellow Real Estate Limited.

WHEREAS, the UK Affiliates filed the proofs of claim listed on Schedule 1 attached hereto (collectively, the "**Proofs of Claim**") against certain Debtors on behalf of themselves and/or to preserve the rights of certain other entities with beneficial interests held through certain of the UK Affiliates;

WHEREAS, certain of the Debtors have asserted that they have claims against certain of the UK Affiliates, including claims asserted by LBHI against LBIE and certain other UK Affiliates in respect of intercompany funding (the "**Funding Claims**");

WHEREAS, the Debtors, the UK Administration Companies and the UK Liquidation Companies have entered into that certain tolling and forbearance agreement dated as of September 3, 2010, and the Debtors have entered into certain other tolling agreements with certain of the Other UK Affiliates (collectively, the "**Tolling Agreements**");

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19627] (the "**Current Plan**" and as amended, modified or supplemented by the Debtors from time to time, the "**Plan**");

WHEREAS, on September 1, 2011 by amended order of the Bankruptcy Court [Docket No. 19631] (the "**Disclosure Statement Approval Order**"), the Bankruptcy Court approved the Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (such disclosure statement as modified on September 15, 2011 by order of the Bankruptcy Court [Docket No. 20016], the "**Disclosure Statement**");

WHEREAS, on September 13, 2011 certain of the Parties entered into that certain Stipulation and Agreement for Provisional Allowance of Claims Solely for Purposes of Voting [Docket No. 19913] (the "**Voting Stipulation**") setting forth the amounts, if any, in which the UK Affiliates are entitled to vote upon the Plan;

WHEREAS, substantially contemporaneously hereof, certain of the Parties have entered into that certain Claim Reserve Agreement (the "**Claim Reserve Agreement**") attached hereto as Exhibit A; and

WHEREAS, the Debtors and the UK Affiliates desire to resolve all disputes and all other outstanding issues among them (except as expressly excluded herein) and to avoid extensive and expensive litigation thereon.

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

ARTICLE 1

DEFINITIONS

SECTION 1.01.   Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"**A&M**" means Alvarez and Marsal North America, LLC, in its capacity as agents of the Debtors.

"**Admitted Claims**" means, collectively, the LCPI/LBIE Claim, the LBCS/LBIE Claim, and the Other Debtor Claims.

"**Affiliate**" has the meaning ascribed to it in section 101(2) of the Bankruptcy Code.

"**Allowed Claims**" means, collectively, the LBIE Guarantee Claim, the LBIE/LBSF Claim, the LBIE/LOTC Claim and the UK Affiliates Claims.

"**Alternative Plan**" means any chapter 11 plan for the Debtors that is neither proposed nor supported (directly or indirectly) by the Debtors.

"**Applicable Class**" means, for any claim of any UK Affiliate against any Debtor, (i) with respect to the Current Plan, the "Class" (as defined in the Current Plan) set forth in Schedule 9 hereto for which such UK Affiliate is designated the "Applicable UK Affiliate" and such Debtor is designated the "Applicable Debtor" and (ii) with respect to any Plan (other than the Current Plan), the category of claims that each applicable UK Affiliate and the applicable Debtor mutually determine in good faith is most similarly situated to the "Class" (as defined in the Current Plan) set forth in Schedule 9 hereto for which such UK Affiliate is designated the "Applicable UK Affiliate" and such Debtor is designated the "Applicable Debtor".

"**Assigned Debtor Interest**" has the meaning ascribed to it in Section 5.04(b).

"**Assigned Debtor/LBIE Assets**" means all LBSF/LBIE Assets, all Assigned LBCS/LBIE Assets, and all LCPI/LBIE Assets, in each case, other than (i) Competing Claims that are waived and released pursuant to Section 2.05(c) and (ii) to the extent relevant, the securities to be transferred in accordance with the Unfunded Notes Settlement Agreement.

"**Assigned LBCS/LBIE Assets**" means all LBCS/LBIE Assets other than the Returned LBCS/LBIE Assets.

"**Assigned UK Affiliate Interest**" has the meaning ascribed to it in Section 4.04(b).

"**Bankruptcy Code**" has the meaning ascribed to it in the Recitals.

"**Bankruptcy Court**" has the meaning ascribed to it in the Recitals.

"**Bankhaus**" means Lehman Brothers Bankhaus A.G.

"**Bankhaus Claim**" means LBIE's claim against Bankhaus on account of Client Money deposited with Bankhaus to have recognized a right of separate satisfaction (*Aussonderungsrecht*, Sec. 47 German Insolvency Code) or, in the alternative, to have recognized a general unsecured claim for such Client Money.

"**Bankhaus Claim Litigation**" means the litigation in Germany between LBIE and Bankhaus in respect of the Bankhaus Claim.

"**Bankhaus Non-Trust Claim**" has the meaning ascribed to it in Section 2.01(b).

"**Bankhaus Resolution Date**" means the date on which the Bankhaus Claim Litigation is finally settled or adjudicated.

"**Bankhaus Trust Claim**" has the meaning ascribed to it in Section 2.01(b).

"**Business Day**" means any day that is not a Saturday, Sunday or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the State of New York or the United Kingdom.

"**Causes of Action**" means all manners of action, causes of action, judgments, executions, debts, liabilities, demands, rights, damages, costs, rights, expenses, and claims of every kind, nature, and character whatsoever.

"**Chapter 11 Cases**" has the meaning ascribed to it in the Recitals.

"**Claim Reserve Agreement**" has the meaning ascribed to it in the Recitals.

"**Client Money**" means "Client Money" as defined in the UK Financial Services Authority's rules, and any proceeds thereof.

"**Client Money Tracing Application**" means any application in any court in which LBIE, or any beneficiary (other than any Debtor or any Debtor-Controlled Entity) of the Client Money Trust, or their respective successors in title or assignees, seeks direction from a court of competent jurisdiction with respect to Client Money tracing issues.

"**Client Money Tracing Claim**" means any claim by LBIE, or any beneficiary (other than any Debtor or any Debtor-Controlled Entity) of the Client Money Trust, or their respective successors in title or assignees, against any entity (including any of the Debtors) arising under, related to, or connected with any Proprietary Interest that LBIE, or any beneficiary (other than any Debtor or any Debtor-Controlled Entity) of the Client Money Trust, or their respective successors in title or assignees, has in any asset by reason of an interest as trustee under, or beneficiary of, the Client Money Trust (including any cash in any currency) or the proceeds thereof.

"**Client Money Trust**" means the trust on which LBIE held and holds Client Money pursuant to the UK Financial Services Authority's rules.

"**Competing Claim**" means a claim by a Debtor to a beneficial interest in, or to delivery of, or to the proceeds of or any derived asset or income arising from, any securities or money in LBIE's custody or control, for which LBIE reasonably believes in good faith that its books and records indicate that any UK Affiliate (except LBIE) also has such a claim in relation to the same stockline or money, it being understood that a Security Interest is not such a claim.

"**Compromised Structured Securities**" means those Structured Securities set forth in Schedule 2.

"**Confirmation Order**" means an order of the Bankruptcy Court, in form and substance reasonably satisfactory to LBIE, (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"**Current LBLIS Managers**" has the meaning ascribed to it in Section 2.13(a).

"**Current Plan**" has the meaning ascribed to it in the Recitals.

"**Debtor Claim Transferee**" has the meaning ascribed to it in Section 5.04(b).

"**Debtor-Controlled Entity**" means the (i) LBLIS Group Entities and (ii) any Affiliate of the Debtors that is directly or indirectly managed or controlled by a Debtor, either immediately before or at any time after the Execution Date, but is not a Party.

"**Debtor Released Party**" means each UK Affiliate, and each of its Joint Administrators, Joint Liquidators, directors, officers, employees, representatives,

agents, financial advisors, accountants, attorneys and representatives, each of the foregoing solely in their respective capacity as such.

"**Debtors**" has the meaning ascribed to it in the Preamble.

"**Disclosure Statement**" has the meaning ascribed to it in the Recitals.

"**Disclosure Statement Approval Order**" has the meaning ascribed to it in the Recitals.

"**East Dover**" has the meaning ascribed to it in the Preamble.

"**Effective Date**" means the earliest date on which each of the following conditions are satisfied (or will be satisfied substantially simultaneously with the occurrence of the Effective Date) or waived by the Parties:

       (i)     the Plan (incorporating in full this Agreement) is effective in accordance with its terms; and

       (ii)     the LBJ Settlement Agreement is approved by the Bankruptcy Court and effective in accordance with its terms.

"**Existing NDA**" means that certain letter agreement in respect of the treatment of confidential information dated June 30, 2010 by and between LBHI, for itself, its subsidiaries and its controlled affiliates, and certain of the UK Administration Companies and UK Liquidation Companies.

"**Excluded Items**" means, collectively:

       (i)     subject to Section 2.12, each Party's rights, obligations, claims and causes of action against any entity (including any Lehman Entity or Extended Lien Claimant) other than the Parties, the Debtor Released Parties and the UK Affiliate Released Parties, and such entities' rights, obligations, claims, defenses and causes of action against any Party;

       (ii)     each Party's rights, obligations, claims, defenses and causes of action arising under, related to, or connected with:

            (A)     any Surviving Contract;

            (B)     subject to Section 2.22 and the proviso in Section 4.04(b), any Trust Claim other than the LBIE Guarantee Claim;

            (C)     any funds received by any Debtor after such Debtor's Insolvency Filing Time (i) on behalf of any UK Affiliate

or (ii) by way of payment or transfer by any third party in respect of any debt or other obligation owed to any UK Affiliate;

(D)     other than in respect of any RASCALS Assets or any Assigned Debtor/LBIE Assets, any funds received by any UK Affiliate after the earlier of such UK Affiliate's Insolvency Filing Time (where applicable) and the Execution Date (i) on behalf of any Debtor or (ii) by way of payment or transfer by any third party in respect of any debt or other obligation owed to any Debtor;

(E)     subject to Section 2.01(d), Section 2.02(b), Section 2.02(c), Section 2.03(c), Section 2.03(e), Section 2.11(a), Section 2.19, Section 2.21 and Section 2.23, any Extended Lien Claim; or

(F)     subject to Section 2.11 and the provisos in Section 5.04(b), the R3 Claim and the JPM Claim, and all rights in connection thereto, including any rights to any assets in LBIE's custody or control, whether direct or indirect, or held by a sub-custodian or any other party on behalf of LBIE; and

(iii)     subject to Section 2.20, LBIE's rights, obligations, claims and causes of action arising under, related to, or connected with any LBIE Structured Securities.

"**Execution Date**" means the earliest date on which each of the following conditions are satisfied:

(i)     this Agreement is executed and delivered by the Parties; and

(ii)     the Claim Reserve Agreement is executed and delivered by the parties thereto.

"**Extended Lien Application**" means the application dated June 6, 2011 brought by LBIE in respect of Extended Lien Claims and currently before the English High Court.

"**Extended Lien Asia Application**" means the application dated 29 July 2011 brought by Lehman Brothers Securities Asia Limited in respect of Extended Lien Claims and currently before the Hong Kong Courts.

"**Extended Lien Asset**" means any securities or money held on a segregated basis or otherwise by or on behalf of the Holding Affiliate (i) as to which (1) an

Ownership Claimant has asserted or could assert a beneficial interest or (2) the Holding Affiliate, based on the information available to it, has concluded that an Ownership Claimant may have a beneficial interest (in each case, either for itself or on behalf of an underlying client of that Ownership Claimant) and in either case an Extended Lien Claimant asserts or could assert an Extended Lien Claim; or (ii) that were so held at the Holding Affiliate's Insolvency Filing Time, and in any case any asset received or receivable by the Holding Affiliate after its Insolvency Filing Time arising out of or derived from any securities or money that was or were an Extended Lien Asset at or immediately before the time at which that other asset was received.

"**Extended Lien Claim**" means any claim that a term of an agreement between a Holding Affiliate and an Ownership Claimant confers a Security Interest in respect of an Extended Lien Asset in relation to debts owed not only by the Ownership Claimant to the Holding Affiliate but also to any other Lehman Entity, including any person claiming through or against such other Lehman Entity.

"**Extended Lien Claimant**" means any Lehman Entity that may assert, and/or have, a Security Interest in Extended Lien Assets held by or on behalf of a Holding Affiliate.

"**Final Order**" means an order of the Bankruptcy Court or any other court of competent jurisdiction (i) that is in full force and effect, (ii) is not reversed or vacated and (iii) as to which the time to appeal, petition for certiorari, and move for reargument or rehearing has expired and (1) as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or (2) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been timely sought, such appeal, writ of certiorari, or reargument or rehearing shall have been withdrawn, denied or resolved by the highest court to which such order was appealed or from which certiorari, rehearing or reargument was sought; *provided* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or applicable law, may be filed with respect to such order shall not prevent such order from being a Final Order.

"**Funding Claim**" has the meaning ascribed to it in the Recitals.

"**Holding Affiliate**" means a Lehman Entity that holds or held Extended Lien Assets as to which one or more Ownership Claimants may assert, or have, beneficial ownership claims and as to which one or more Extended Lien Claimants may assert or have an Extended Lien Claim.

"**House Proofs of Claim**" means those claims asserted in the Proofs of Claim other than the Trust Claims.

"**Insolvency Filing Time**" means the time at which a Lehman Entity commenced an insolvency, bankruptcy, administration, liquidation, winding-up, receivership or similar proceeding in such Lehman Entity's relevant jurisdiction (or the time at which such a proceeding was commenced in relation to such Lehman Entity), whether by the filing of one or more petitions or papers (including a petition under chapter 11 of the Bankruptcy Code), by the entry of an order for relief, by obtaining an order of a court of competent jurisdiction, or otherwise; *provided* that, in the case of a Lehman Entity in liquidation in the United Kingdom where such liquidation was immediately preceded by an administration, the Insolvency Filing Time for such Lehman Entity shall be the time at which it entered administration where English law so provides in relation to the company in question.

"**ITS**" means the ITS trading system (also known as "International Trading System"), which various Lehman Entities used to record, clear, monitor and settle client and intercompany transactions, depot holdings and securities positions.

"**Joint Administrators**" has the meaning ascribed to it in the Preamble.

"**Joint Liquidators**" has the meaning ascribed to it in the Preamble.

"**JPM Claim**" means all claims for which LBHI is subrogated to a claim of any JPM Entity against LBIE, to the extent of the payments made by LBHI or applied from LBHI's property to such claim of such JPM Entity pursuant to that certain Collateral Disposition Agreement among JPMorgan Chase Bank, N.A. and the Debtors dated March 16, 2010.

"**JPM Claim Proposal**" has the meaning ascribed to it in Section 2.11(b).

"**JPM Entity**" means JPMorgan Chase Bank, N.A. or any of its affiliates.

"**LB 745**" has the meaning ascribed to it in the Preamble.

"**LBCS**" has the meaning ascribed to it in the Preamble.

"**LBCS/LBIE Claim**" has the meaning ascribed to it in Section 2.03(c).

"**LBCS/LBIE Assets**" means any right, title or interest that LBCS may have in securities (a) in LBIE's custody or control or (b) that are set forth on Schedule 3, in each case, together with all security entitlements (as such term is defined under Section 8-102 of the New York Uniform Commercial Code) with respect thereto and all proceeds thereof, including derived income and redemption proceeds.

"**LBHI**" has the meaning ascribed to it in the Preamble.

"**LBHI Client Money Payment**" has the meaning ascribed to it in Section 2.22(b).

"**LBHI-LB Lux Share**" has the meaning ascribed to it in Section 2.12(a).

"**LBHI/LBIE Assets**" means those assets set forth in Schedule 4.

"**LBIE**" has the meaning ascribed to it in the Preamble.

"**LBIE Extended Lien Asset**" means any Extended Lien Asset in respect of which LBIE is an Ownership Claimant.

"**LBIE Guarantee Claim**" has the meaning ascribed to it in Section 2.01(a).

"**LBIE/LBSF Claim**" has the meaning ascribed to it in Section 2.02(a).

"**LBIE-LB Lux Litigation**" means, collectively, the (i) judicial proceedings that are currently pending before the second chamber of the Luxembourg District Court (*tribunal d'arrondissement*), sitting in commercial matters, registered under the number 135.350, that have been introduced by LBIE by writ of summons served on the liquidators of LB Lux on 19 January 2011, following the rejection by the liquidators of LB Lux of the statement of claim submitted by LBIE in the LB Lux liquidation proceedings and (ii) any other proceedings or Causes of Action that arise from, are based on, connected with, alleged in or related to any of the facts or circumstances at issue in the judicial proceedings referred to in clause (i).

"**LBIE-LB Lux Payment Amount**" has the meaning ascribed to it in Section 2.12(c)(iv).

"**LBIE-LB Lux Share**" has the meaning ascribed to it in Section 2.12(a).

"**LBIE/LOTC Claim**" has the meaning ascribed to it in Section 2.03(a).

"**LBIE Non-Trust Guarantee Claim**" has the meaning ascribed to it in Section 2.01(b).

"**LBIE Structured Securities**" means any Structured Securities other than any Compromised Structured Securities.

"**LBIE Trust Guarantee Claim**" has the meaning ascribed to it in Section 2.01(b).

"**LBJ**" means Lehman Brothers Japan Inc.

"**LBJ Settlement Agreement**" means a settlement agreement among LBJ, LBSF, LBHI and LBIE in respect of their respective claims to the rights, title and interests in certain Japanese government bonds, in the form attached as Exhibit B, with such changes as may be agreed by LBSF, LBHI and LBIE.

"**LBL**" has the meaning ascribed to it in the Preamble.

"**LBL Indemnified Person**" has the meaning ascribed to it in Section 2.13(l).

"**LBL Nominated Managers**" has the meaning ascribed to it in Section 2.13(b).

"**LBLIS**" has the meaning ascribed to it in the Preamble.

"**LBLIS Group Entities**" has the meaning ascribed to it in the Preamble.

"**LB Lux**" means Lehman Brothers (Luxembourg) S.A. (in liquidation) or its estate, as applicable.

"**LB Lux/LBIE Assets**" means any assets (together with all security entitlements (as such term is defined under Section 8-102 of the New York Uniform Commercial Code) with respect thereto and all proceeds thereof, including derived income and redemption proceeds) in LBIE's custody or control for which it has been determined by LBIE, acting in good faith, or by a final, non-appealable order of a court of competent jurisdiction that (i) LB Lux is the beneficial owner and (ii) no Lehman Entity has a Security Interest in such assets by virtue of any Extended Lien Claim.

"**LB Scottish**" has the meaning ascribed to it in the Preamble.

"**LBSF**" has the meaning ascribed to it in the Preamble.

"**LBSF Creditor Debtors**" means, collectively, LBHI, LBCS, LCPI, LB 745, and East Dover.

"**LBSF/LBIE Assets**" means any right, title or interest that LBSF may have in securities (a) in LBIE's custody or control or (b) that are set forth on Schedule 5, in each case, together with all security entitlements (as such term is defined under Section 8-102 of the New York Uniform Commercial Code) with respect thereto and all proceeds thereof, including derived income and redemption proceeds.

"**LB UK Delaware**" has the meaning ascribed to it in the Preamble.

"**LB UK Holdings**" has the meaning ascribed to it in the Preamble.

"**LCPI**" has the meaning ascribed to it in the Preamble.

"**LCPI/LBIE Assets**" means any right, title or interest that LCPI may have in securities (a) in LBIE's custody or control or (b) that are set forth on Schedule 6, in each case, together with all security entitlements (as such term is defined under Section 8-102 of the New York Uniform Commercial Code) with respect thereto and all proceeds thereof, including derived income and redemption proceeds.

"**LCPI/LBIE Claim**" has the meaning ascribed to it in Section 2.03(b).

"**Lehman Entities**" means, collectively, LBHI and each of its Affiliates.

"**LOTC**" has the meaning ascribed to it in the Preamble.

"**LPS Trust Claims**" means (1) those claims in respect of Structured Securities asserted in Proof of Claim number 62783 and (2) those claims in respect of Structured Securities asserted in Proof of Claim numbers 62779, 62780, 62781, 62784, 62785, 62786, 62787, 62788 and 62789 to the extent that the securities to which such claims relate are not beneficially owned by LBIE as of the Execution Date.

"**Other Debtor Claims**" has the meaning ascribed to it in Section 2.05(a).

"**Other UK Affiliates**" has the meaning ascribed to it in the Preamble.

"**Ownership Claimant**" means a person which asserts and/or may have a beneficial interest (other than an interest which arises as a result of a Security Interest) in securities or the proceeds thereof or any asset or money derived therefrom held by or on behalf of any Holding Affiliate at such Holding Affiliate's Insolvency Filing Time.

"**Party**" has the meaning ascribed to it in the Preamble.

"**Plan**" has the meaning ascribed to it in the Recitals.

"**Proofs of Claim**" has the meaning ascribed to it in the Recitals.

"**Proprietary Interest**" means any proprietary interest whatsoever (whether at law or in equity, and whether as trustee, beneficiary, absolute owner or otherwise).

"**R3 Claim**" means all claims assigned to LBHI pursuant to that certain Assignment of Claim entered into as of October 17, 2008, between R3 and LBHI, and for which, prior to the Execution Date, LBHI is subrogated to a claim of R3 against LBIE.

"**R3 Claim Proposal**" has the meaning ascribed to it in Section 2.11(b).

"**R3**" means R3 Capital Partners Master, L.P.

"**RASCALS Assets**" means securities (other than, to the extent relevant, the securities to be transferred in accordance with the Unfunded Notes Settlement Agreement) acquired or otherwise received or held by LBIE for the account of any Debtor's trading book that were, at any time, subject to processes known as Regulation and Administration of Safe Custody And globaL (or Local) Settlement, being intra-group processes that purported to and/or served to address, among other things, certain regulatory capital adequacy concerns of LBIE via (i) inter-company secured financing transactions referred to in the RASCALS Decision as "automatic RASCALS" and (ii) the process referred to in the RASCALS Decision as "manual RASCALS" whereby securities settled by LBIE for the account of Lehman affiliates' trading books were subjected to inter-company financing transactions, in each case, including all proceeds thereof, all derived income in respect thereof and all redemption or sale proceeds in respect thereof.

"**RASCALS Decision**" means the judgment handed down by The Honourable Mr. Justice Briggs on November 19, 2010 in Case no. 7942 of 2008 in the English High Court, as reflected in the Order of November 19, 2010 that was sealed on December 23, 2010.

"**Returned LBCS/LBIE Assets**" means those assets set forth in Schedule 7.

"**Security Interest**" means any legal, equitable, contractual or possessory interest (or equivalent under any relevant legal system) of a person in an Extended Lien Asset that is in the nature of a lien, pledge, charge or other right that encumbers or restricts the entitlement of the owner or holder of that Extended Lien Asset until one or more obligations owed to that person are discharged in full.

"**Standstill Entity**" has the meaning ascribed to it in Section 2.09(a).

"**Standstill Termination Date**" has the meaning ascribed to it in Section 2.09(a).

"**Structured Securities**" means, collectively, the certain (i) structured notes issued by Lehman Brothers Treasury Co, B.V., (ii) certificates and warrants issued by Lehman Brothers Securities N.V., (iii) structured notes issued by LBHI, (iv) structured notes issued by Bankhaus, (v) structured securities issued by LB Lux, (vi) certificates issued by Lehman Brothers Finance S.A. (vii) any notes issued by any Lehman Entity under any notes program, including the European Medium Term Note Program and (viii) any securities issued by any Lehman Entity substantially similar to any of the foregoing.

"**Supporting Creditor PSA**" means each plan support agreement that the creditors listed on Exhibit 20 to the Disclosure Statement (as such exhibit may be amended or supplemented to include additional parties) entered into in connection with the Chapter 11 Cases.

"**Surviving Contracts**" means all agreements among any of the UK Affiliates and any of the Debtors (i) that were entered into on or after September 15, 2008 (other than any Tolling Agreement) or (ii) are set forth on Schedule 8.

"**Tax**" means any tax, levy, impost, duty or other charge or withholding of a similar nature, including any related penalty or interest.

"**Third-Party Creditor**" has the meaning ascribed to it in Section 20.02.

"**Tax Deduction**" means any deduction or withholding for or on account of Tax.

"**Terminated UK Affiliate**" has the meaning ascribed to it in Section 11.02(b).

"**Thayer Group**" has the meaning ascribed to it in the Preamble.

"**Thayer Group Liquidators**" has the meaning ascribed to it in the Preamble.

"**Thayer Liquidation Companies**" has the meaning ascribed to it in the Recitals.

"**Thayer Liquidators**" has the meaning ascribed to it in the Preamble.

"**Thayer Properties**" has the meaning ascribed to it in the Preamble.

"**Thayer Properties Liquidators**" has the meaning ascribed to it in the Preamble.

"**Tolling Agreements**" has the meaning ascribed to it in the Recitals.

"**Transfer**" means any assignment, conveyance, recovery, payment, right, title, interest, sale, pledge, encumbrance, abandonment, disposition, participation or other transfer (or the proceeds of any of the foregoing) and may be used either as a verb or a noun.

"**Trust Claim**" means (i) the LBIE Guarantee Claim, (ii) any Client Money Tracing Claim and (iii) any LPS Trust Claim.

"**UK Administration Companies**" has the meaning ascribed to it in the Preamble.

"**UK Affiliates**" has the meaning ascribed to it in the Preamble.

"**UK Affiliate Claim Transferee**" has the meaning ascribed to it in Section 4.04(b).

"**UK Affiliates Claims**" has the meaning ascribed to it in Section 2.04.

"**UK Affiliate Released Party**" means A&M, each Debtor and each Debtor's directors, officers, employees, representatives, agents, financial advisors,

accountants, attorneys and representatives, each of the foregoing solely in their respective capacity as such.

"**UK Liquidation Companies**" has the meaning ascribed to it in the Preamble.

"**UK Proceedings**" has the meaning ascribed to it in the Recitals.

"**UK Re**" has the meaning ascribed to it in the Preamble.

"**UK Re/LBIE Assets**" means any assets (together with all security entitlements (as such term is defined under Section 8-102 of the New York Uniform Commercial Code) with respect thereto and all proceeds thereof, including derived income and redemption proceeds) in LBIE's custody or control for which it has been determined by LBIE, acting in good faith, or by a final, non-appealable order of a court of competent jurisdiction that (i) UK Re is the beneficial owner and (ii) no Lehman Entity has a Security Interest in such assets by virtue of an Extended Lien Claim.

"**Unfunded Notes Settlement Agreement**" means that certain agreement dated on or prior to the date hereof between LBIE and LBSF, pursuant to which LBIE is to procure the transfer of certain securities to LBSF's order.

"**Voting Stipulation**" has the meaning ascribed to it in the Recitals.

SECTION 1.02.    *Other Definitional and Interpretative Provisions.*    The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.    The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. References to Articles, Sections, Exhibits and Schedules are to Articles, Sections, Exhibits and Schedules of this Agreement unless otherwise specified.    All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Exhibit or Schedule but not otherwise defined therein, shall have the meaning as defined in this Agreement.    Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular.    Whenever the words "include", "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import.    "Writing", "written" and comparable terms refer to printing, typing and other means of reproducing words (including electronic media) in a visible form.    References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder.    References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.    References

to "law", "laws" or to a particular statute or law shall be deemed also to include any and all applicable law.    References to "third parties" shall be deemed to refer to entities that are not Lehman Entities.

ARTICLE 2
SETTLEMENT OF CLAIMS

SECTION 2.01.    *LBIE's Claims Against LBHI.*

(a)    On the Effective Date, LBIE shall have an allowed, non-priority, unsecured, senior affiliate guarantee claim against LBHI ("LBHI Class 4B" as described in the Current Plan) in the aggregate amount of $1,008,000,000 (the "**LBIE Guarantee Claim**").

(b)    Solely for determining whether the LBIE Guarantee Claim has been deemed satisfied in full in accordance with Section 8.13 of the Current Plan (or any provision of similar effect in the Plan), (i) Bankhaus shall be deemed the "Primary Obligor" (as defined in the Current Plan) and (ii) the Bankhaus Claim shall be deemed to be the "Primary Claim" (as defined in the Current Plan); *provided* that if a portion and only a portion of the Bankhaus Claim is recognized as a right of separate satisfaction (*Aussonderungsrecht*, Sec. 47 German Insolvency Code) in the Bankhaus insolvency proceedings (any portion recognized as a right of separate satisfaction, the "**Bankhaus Trust Claim**" and any portion not recognized as a right of separate satisfaction, the "**Bankhaus Non-Trust Claim**"), then (x) the LBIE Guarantee Claim shall be deemed to be two allowed claims against LBHI, one of which shall be in an amount equal to the Bankhaus Trust Claim (such allowed claim against LBHI, the "**LBIE Trust Guarantee Claim**") and the other of which shall be in an amount equal to $1,008,000,000 *minus* the amount of the LBIE Trust Guarantee Claim (such allowed claim against LBHI, the "**LBIE Non-Trust Guarantee Claim**") and (y) the Bankhaus Trust Claim shall be deemed the "Primary Claim" (as defined in the Current Plan) for the LBIE Trust Guarantee Claim, and the Bankhaus Non-Trust Claim shall be deemed the "Primary Claim" (as defined in the Current Plan) for the LBIE Non-Trust Guarantee Claim.    It is expressly agreed and understood that LBIE may negotiate, litigate or settle the Bankhaus Claim in its sole discretion.

(c)    LBIE and LBHI agree that prior to the Bankhaus Resolution Date, pursuant to Section 8.13(e) of the Plan, all amounts distributed on account of the LBIE Guarantee Claim under the Plan shall be posted as security with LBHI, and LBHI shall hold such posted amounts in cash for the benefit of LBIE.    Within three Business Days of the Bankhaus Resolution Date, the Debtors shall release such posted amounts and remit to LBIE any distributions to which the LBIE Guarantee Claim is entitled under the Plan from the effective date of such Plan

through and including the Bankhaus Resolution Date (for the avoidance of doubt, after giving effect to any adjustment in accordance with Section 2.01(b)), together with any interest that has accrued in respect of such posted amounts.

(d)     The UK Affiliates shall not assert any lien, security interest or Extended Lien Claim over the LBHI/LBIE Assets in respect of any indebtedness owed by LBHI to such UK Affiliate; *provided* that any Extended Lien Claims of any Lehman Entity (other than any UK Affiliate) in respect of the LBHI/LBIE Assets shall be unaffected by this Section 2.01(d).   LBIE agrees to remit, return, transfer, convey, assign or otherwise deliver any remaining LBHI/LBIE Assets to LBHI within ten Business Days after the final resolution of any Competing Claims by UK Re and any Extended Lien Claims with respect to such assets, such ten-Business-Day period subject to LBHI supplying LBIE in a timely manner with adequate settlement information for delivery of such LBHI/LBIE Assets.

SECTION 2.02.   *LBIE's Claims Against LBSF.*

(a)     On the Effective Date, LBIE shall have an allowed, non-priority, unsecured affiliate claim against LBSF ("LBSF Class 5C" as described in the Current Plan) in the aggregate amount of $900,000,000 (the "**LBIE/LBSF Claim**").

(b)     If and to the extent that Extended Lien Claimants have enforceable rights in respect of Extended Lien Assets, or a Holding Affiliate has enforceable obligations towards Extended Lien Claimants in respect of Extended Lien Claims, and so as to ensure, as best the parties are able, that the value of the LBSF/LBIE Assets falls to LBIE as agreed in this Agreement, then each LBSF Creditor Debtor, within three Business Days of receipt thereof, shall remit to LBIE (in the form and amount received or, in the case of an obligation reduction, in cash for the value of such reduction) any Transfer received on account of any Extended Lien Claims against any LBSF/LBIE Assets (or any claims in respect thereof) in connection with claims that such LBSF Creditor Debtor may have against LBSF or obligations that LBSF may owe to such LBSF Creditor Debtor; *provided* that LBIE, in its reasonable discretion, may instruct, and no LBSF Creditor Debtor shall object to any such instruction, any relevant Holding Affiliate to remit any such Transfer directly to LBIE (or if the Holding Affiliate is LBIE to retain the same for itself).   Each LBSF Creditor Debtor agrees (i) not to waive, release or assign any such Extended Lien Claims without LBIE's prior written consent and (ii) upon LBIE's reasonable request, diligently to prosecute any such Extended Lien Claims and reasonably to cooperate with LBIE regarding the same.   For the avoidance of doubt, any remittances to LBIE in accordance with this Section 2.02(b) shall in no way reduce the amount of any of the Allowed Claims.

(c)     LBSF agrees with each LBSF Creditor Debtor that any Transfer received by such LBSF Creditor Debtor that is remitted to LBIE in accordance with Section 2.02(b) shall in no way reduce the amount of any claims such LBSF Creditor Debtor may have against LBSF.

(d)     The Debtors represent and warrant to LBIE that no Debtor (other than the LBSF Creditor Debtors) has any claims against LBSF.

SECTION 2.03.     *Claims Between LBIE and Certain Other Debtors.*

(a)     On the Effective Date, LBIE shall have an allowed, non-priority, unsecured affiliate claim against LOTC ("LOTC Class 5C" as described in the Current Plan) in the aggregate amount of $68,000,000 (the "**LBIE/LOTC Claim**").

(b)     On the Effective Date, LCPI shall have a claim against LBIE admitted to rank for dividend purposes as an unsecured claim in the aggregate amount of $28,800,000 (the "**LCPI/LBIE Claim**").

(c)     On the Effective Date, LBCS shall have a claim against LBIE admitted to rank for dividend purposes as an unsecured claim in the aggregate amount of $71,000,000 (the "**LBCS/LBIE Claim**").    LBIE agrees to remit, return, transfer, convey, assign or otherwise deliver the Returned LBCS/LBIE Assets to LBCS, under the simplified regime applicable to what are known as "No Agreement Affiliates" under the control of persons subject to the supervision of a relevant court under the terms of the Extended Lien Application, and LBIE accepts that LBCS is under the control of persons subject to the supervision of a relevant court for such purpose.    For the avoidance of doubt, any recoveries by LBCS in respect of the Returned LBCS/LBIE Assets shall in no way reduce the amount of the LBCS/LBIE Claim.

(d)     Each of LCPI and LBCS acknowledges that it will be required to file a proof of debt that complies with the Insolvency Rules 1986 in LBIE's UK Proceedings in respect of the LCPI/LBIE Claim and the LBCS/LBIE Claim, respectively.    LBIE will not object to any such proof of debt that complies in all material respects with the Insolvency Rules 1986 and references this Agreement as evidence to support such proof of debt.    For the avoidance of doubt, no further evidence, information and/or documents other than this Agreement are required in order to satisfy the requirements for a proof of debt as set out in the Insolvency Rules 1986.    Once such proof of debt has been duly filed, it shall qualify for dividends on the same basis as other admitted claims of unsecured creditors of LBIE under the applicable distribution regimes.

(e)     If and to the extent that Extended Lien Claimants have enforceable rights in respect of Extended Lien Assets, or a Holding Affiliate has enforceable

obligations towards Extended Lien Claimants in respect of Extended Lien Claims, then each of LCPI and LBCS, within three Business Days of receipt thereof, shall remit to LBIE (in the form and amount received or, in the case of an obligation reduction, in cash for the value of such reduction) any Transfer received on account of any Extended Lien Claims against any LBIE Extended Lien Assets (or any claims in respect thereof) in connection with claims that LCPI or LBCS, as applicable, may have against LBIE or obligations that LBIE may owe to LCPI or LBCS, as applicable; *provided* that LBIE, in its reasonable discretion, may instruct, and neither LCPI nor LBCS shall object to any such instruction, any relevant Holding Affiliate to remit any such Transfer directly to LBIE. Each of LCPI and LBCS agrees (i) not to waive, release or assign any such Extended Lien Claims without LBIE's prior written consent and (ii) upon LBIE's reasonable request, diligently to prosecute any such Extended Lien Claims and reasonably to cooperate with LBIE regarding the same; *provided, further*, that any obligations of LCPI and LBCS under this section Section 2.03(e) shall automatically terminate as soon as the total Transfers received by LCPI or LBCS, individually or in the aggregate, that are remitted to LBIE in accordance with this Section 2.03(e) have a value equal to $33,000,000. LBIE agrees with each of LCPI and LBCS that any Transfer received by LCPI or LBCS that is remitted to LBIE in accordance with this Section 2.03(e) shall in no way reduce the amount of the LCPI/LBIE Claim or the LBCS/LBIE Claim.

SECTION 2.04. *The UK Affiliates' (Other Than LBIE's) Claims Against the Debtors.* On the Effective Date, each applicable UK Affiliate shall have allowed claims against the applicable Debtor in the Applicable Classes and in the aggregate amounts set forth opposite such UK Affiliate's name in the relevant column in Schedule 9 (collectively, the "**UK Affiliates Claims**"). Notwithstanding anything to the contrary in the Plan or this Agreement, with respect to each UK Affiliate Claim for which the Applicable Class is set forth in Schedule 9 as "4B", each applicable UK Affiliate agrees that if at any time such UK Affiliate receives distributions on account of such UK Affiliate Claim, that, combined with any distributions received by such UK Affiliate on account of the relevant Primary Claim (as defined in the Current Plan), exceed the amount of such Primary Claim, such UK Affiliate shall remit from time to time any such excess distributions to LBHI within seven Business Days of receipt thereof, and such remitted excess distributions shall not be subject to reduction, avoidance, recharacterization, reconsideration, recovery, subordination, merger, consolidation, attack, offset, claim, defense, recoupment, deduction, counterclaim or objection, of any kind or nature.

SECTION 2.05.    *The Debtors' Claims Against the UK Affiliates (Other Than LBIE).*

(a)    On the Effective Date, (i) each applicable Debtor shall have an agreed claim against the applicable UK Administration Companies and UK Liquidation Companies in the aggregate amounts set forth opposite such Debtor's name in the relevant column in Schedule 10 and (ii) each applicable Other UK Affiliate hereby acknowledges its indebtedness to the applicable Debtors in the aggregate amount set forth opposite such Debtor's name in the relevant column in Schedule 10, in each case, without defense, counterclaim, offset or reduction ((i) and (ii) collectively, the "**Other Debtor Claims**").

(b)    Each applicable Debtor acknowledges that it will be required to file a proof of debt that complies with the Insolvency Rules 1986 in the applicable UK Administration Company's or UK Liquidation Company's UK Proceedings in respect of the applicable Other Debtor Claims.    Each applicable UK Administration Company and each applicable UK Liquidation Company acknowledges that it will not object to any such proof of debt that complies with the Insolvency Rules 1986 and references this Agreement as evidence to support such proof of debt.    For the avoidance of doubt, no further evidence, information and/or documents other than this Agreement are required in order to satisfy the requirements for a proof of debt as set out in the Insolvency Rules 1986.    Once such proof of debt has been duly filed with the applicable UK Administration Company or UK Liquidation Company, it shall, in relation to LBIE and the UK Liquidation Companies, qualify for dividends on the same basis as other admitted claims of unsecured creditors of those companies under their applicable distribution regime, and, in relation to any other company, shall, upon a notice of intention to distribute to unsecured creditors being filed by the applicable administrators, qualify for dividends on the same basis as other admitted claims of unsecured creditors.

(c)    Each Debtor hereby irrevocably waives and releases and shall be deemed to have hereby irrevocably waived and released, effective as of the Effective Date, automatically and without further action, any Competing Claims other than any Competing Claims that LBHI may have in respect of the LBHI/LBIE Assets.

SECTION 2.06.    *Assigned Debtor/LBIE Assets.*    Each of LBSF, LBCS and LCPI, as applicable, hereby irrevocably assigns to LBIE, and shall be deemed to have irrevocably assigned to LBIE, in each case, effective as of the Effective Date, automatically and without further action, all Assigned Debtor/LBIE Assets and all claims in respect thereof.    If any Debtor obtains any Transfer in respect of any Assigned Debtor/LBIE Assets (or in connection with any claims in respect thereof), including by way of reduction of any obligation whether through setoff

21

or otherwise, such Debtor shall, within three Business Days of receipt thereof, remit such Transfer to LBIE (in the form and amount received or, in the case of an obligation reduction, in cash for the value of such reduction). For the avoidance of doubt, (i) any recoveries by LBIE in respect of the Assigned Debtor/LBIE Assets shall in no way reduce the amount of any of the Allowed Claims and (ii) this Agreement is without prejudice to any argument, claim or assertion by LBIE that it had, prior to the Effective Date, right, title and/or interest to any Assigned Debtor/LBIE Assets.

SECTION 2.07. *RASCALS.* The Parties agree that, as among LBIE and the Debtors: (i) LBIE is the sole legal and beneficial owner of the RASCALS Assets, (ii) none of the Debtors has any claim or cause of action of any kind whatsoever (including in relation to any legal, beneficial or equitable title) to any RASCALS Assets or any assets derived therefrom, whether by way of legal title, beneficial title or otherwise, (iii) if (contrary to the foregoing clauses (i) and (ii) of this Section 2.07) any of the Debtors does have any residual right, title or interest in or to any of the RASCALS Assets or any assets derived therefrom, each of the Debtors hereby irrevocably assigns to LBIE, and shall be deemed to have irrevocably assigned to LBIE, in each case, effective as of the Effective Date, automatically and without further action, all such residual right, title or interest, and all claims in respect thereof, and (iv) the Debtors shall be bound by the RASCALS Decision and none of the Debtors will challenge or assist any third party in challenging the basis or validity of the RASCALS Decision regardless of any judgment that may be given by the English Court of Appeal in any proceeding related to the RASCALS Assets or any other judgment of a court of competent jurisdiction.

SECTION 2.08. *Reconciliation.* (a) Each applicable UK Affiliate agrees and (b) each Debtor agrees to use reasonable efforts to cause each applicable Debtor-Controlled Entity, in each case, to in good faith expeditiously reconcile any claims between the Debtor-Controlled Entities, on the one hand, and the UK Affiliates, on the other hand.

SECTION 2.09. *Standstill.*

(a) Each Party agrees that, if any UK Affiliate has asserted or, in the future, asserts a claim against a Debtor-Controlled Entity, or any Debtor or Debtor-Controlled Entity has asserted or, in the future, asserts a claim against an Other UK Affiliate or LBLIS, and even if such claim is acknowledged pursuant to Section 2.05 of this Agreement, the applicable Party shall forbear or, if applicable, shall use reasonable efforts to cause its Debtor-Controlled Entity to forbear, from taking any action to enforce any rights or remedies under applicable law in respect of such claim against the relevant Debtor-Controlled Entity or Other UK Affiliate (in either case, the "**Standstill Entity**"), including by demanding

payment on account thereof or taking any action (whether pursuant to legal proceedings or self-help) to collect such claim, until the earliest of (i) the date that is 90 days after the delivery of a written notice in accordance with Article 13 by the applicable Party to the Standstill Entity, if the Standstill Entity is an Other UK Affiliate, to LBHI, if the Standstill Entity is a Debtor-Controlled Entity (other than LBLIS), or to LBLIS with a copy (that shall not constitute notice) to LBHI, if the Standstill Entity is LBLIS, (ii) the date that is 90 days after the delivery of a written notice in accordance with Article 13 by the Standstill Entity to the applicable Party, if such Party is an Other UK Affiliate, to LBHI, if the applicable entity is a Debtor-Controlled Entity (other than LBLIS) and to LBLIS with a copy (that shall not constitute notice) to LBHI, if the applicable entity is LBLIS, (iii) the date on which the applicable Standstill Entity commences a case under the Bankruptcy Code, an English administration or liquidation proceeding pursuant to the English Insolvency Act 1986, or any other form of reorganization or liquidation under any bankruptcy, insolvency, or similar law of any jurisdiction, or (iv) the date of any payment or distribution by the applicable Standstill Entity in respect of any equity interests or claims existing prior to September 15, 2008 (with respect to (x) the applicable Party asserting a claim and (y) the applicable Standstill Entity, such earliest date, the "**Standstill Termination Date**").

(b)     So long as the applicable Standstill Termination Date has not occurred, if any Debtor or Debtor-Controlled Entity has asserted a claim against any Other UK Affiliate, then such Other UK Affiliate agrees to provide written notice to LBHI in accordance with Article 13 at least ten Business Days prior to making any payment of the type referred to in clause (iv) of this Section 2.09. So long as the applicable Standstill Termination Date has not occurred, if any UK Affiliate has asserted any claim against any Debtor-Controlled Entity (other than LBLIS), then the Debtors agree to use reasonable efforts to cause such Debtor-Controlled Entity (other than LBLIS) to provide written notice to any such UK Affiliate in accordance with Article 13 at least ten Business Days prior to such Debtor-Controlled Entity (other than LBLIS) making any payment of the type referred to in clause (iv) of this Section 2.09.

(c)     So long as the applicable Party or Debtor-Controlled Entity forbears from enforcing any applicable rights or remedies in accordance with Section 2.09(a), each Standstill Entity hereby agrees that any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including the doctrine of laches or waiver) that might be asserted as a time bar and/or limitation to any claims that is or may be asserted by any applicable Party or any applicable Debtor-Controlled Entity pursuant to Section 2.09(a) is tolled from the Effective Date to the applicable Standstill Termination Date.

SECTION 2.10.    [Reserved]

SECTION 2.11.    *R3 Claim and JPM Claim.*

(a)     As between LBHI and LBIE, (i) the R3 Claim and the JPM Claim shall be treated as if LBHI were a third party asserting such claims against LBIE, (ii) the R3 Claim and the JPM Claim shall not give rise to any rights of setoff or recoupment against any claims that LBIE may have against LBHI, including the LBIE Guarantee Claim and (iii) LBHI shall not have any Extended Lien Claims in respect of the R3 Claim and the JPM Claim.

(b)     Within 30 days of the Effective Date, LBHI shall deliver to LBIE statements in respect of the R3 Claim and the JPM Claim, which statements shall include all reasonable detail in LBHI's possession that LBHI determines in good faith is relevant to LBIE's undertaking pursuant to Section 2.11(d) to deliver the R3 Claim Proposal and the JPM Claim Proposal, respectively.

(c)     Within 120 days of the Effective Date, LBHI shall file proofs of debt that comply with the Insolvency Rules 1986 in LBIE's UK Proceedings in respect of the R3 Claim and the JPM Claim, respectively.

(d)     So long as LBHI complies with the provisions of Section 2.11(b) and Section 2.11(c), and subject to the proviso in this Section 2.11(d), LBIE shall deliver written proposals to LBHI within 180 days of the Effective Date with respect to the amounts of the R3 Claim and the JPM Claim, and the validity of any claims in respect thereof to any right, title or interest in assets in LBIE's custody and control, or held by a sub-custodian on behalf of LBIE consistent with the methodologies that LBIE employs with third-party claims of a similar type (such proposal in respect of the R3 Claim, the "**R3 Claim Proposal**", and in respect of the JPM Claim, the "**JPM Claim Proposal**"); *provided* that the Debtors and LBIE acknowledge that the timely cooperation of (i) the applicable JPM Entities is required in order for LBIE to deliver the JPM Claim Proposal within such timeframe and (ii) R3 is required in order for LBIE to deliver the R3 Claim Proposal within such timeframe.

(e)     If LBHI does not respond to the R3 Claim Proposal within 30 days of receipt thereof, the R3 Claim Proposal shall be binding on LBHI and LBIE. If LBHI responds to the R3 Claim Proposal within 30 days of receipt thereof, LBHI and LBIE agree to use reasonable efforts to conduct negotiations regarding the same with a view toward concluding such negotiations 60 days after the commencement thereof.    At the end of such 60-day period (or such later date as may be agreed by LBHI and LBIE), LBIE shall either accept the R3 Claim, reject the R3 Claim or accept the R3 Claim in part and reject the R3 Claim in part; *provided* that it is expressly agreed by LBHI that LBIE's obligations in respect of

such acceptance or rejection in whole or in part shall not extend to any portion of the R3 Claim that in any way involves any issues related to (i) any assets or securities underlying the R3 Claim that are not then in LBIE's custody or control or (ii) whether LBHI is a beneficiary of the Client Money Trust in respect of the R3 Claim.

(f) If LBHI does not respond to the JPM Claim Proposal within 30 days of receipt thereof, the JPM Claim Proposal shall be binding on LBHI and LBIE. If LBHI responds to the JPM Claim Proposal within thirty 30 days of receipt thereof, LBHI and LBIE agree to use reasonable efforts to conduct negotiations regarding the same with a view toward concluding such negotiations within 60 days after the commencement thereof. At the end of such 60-day period (or such later date as may be agreed by LBHI and LBIE), LBIE shall either accept the JPM Claim, reject the JPM Claim or accept the JPM Claim in part and reject the JPM Claim in part; *provided* that it is expressly agreed by LBHI that LBIE's obligations in respect of such acceptance or rejection in whole or in part shall not extend to any portion of the JPM Claim that in any way involves any issues related to (i) any assets or securities underlying the JPM Claim that are not then in LBIE's custody or control or (ii) whether LBHI is a beneficiary of the Client Money Trust in respect of the JPM Claim.

(g) This Section 2.11 is without prejudice to all rights and defenses of LBIE and LBHI in respect of the JPM Claim and the R3 Claim.

SECTION 2.12. *LB Lux.*

(a) Subject to the proviso in Section 2.12(c)(iv), LBHI and LBIE agree to share any distributions made to either of them in respect of LB Lux 45% to LBHI (the "**LBHI-LB Lux Share**") and 55% to LBIE (the "**LBIE-LB Lux Share**"). As part of such arrangement (i) LBHI and LBIE agree to use reasonable efforts to secure acceptance and implementation by LB Lux of distributions to LBHI and LBIE in accordance with the LBHI-LB Lux Share and LBIE-LB Lux Share, respectively and (ii) LBIE shall return any LB Lux/LBIE Assets to LB Lux within ten Business Days of any such assets becoming LB Lux/LBIE Assets, such ten-Business-Day period subject to LB Lux supplying LBIE in a timely manner with adequate settlement information for delivery of such LB Lux/LBIE Assets (it being understood that LBIE and LBHI intend that the value of any such returned LB Lux/LBIE Assets be distributed by LB Lux to LBHI and LBIE in accordance with the LBHI-LB Lux Share and LBIE-LB Lux Share, respectively).

(b) LBIE (i) agrees that, within 180 days of the Effective Date, LBIE either shall (x) determine whether, subject to any Extended Lien Claims, any assets are LB Lux/LBIE Assets (and, subject to applicable data privacy

25

restrictions and confidentiality obligations owed to counterparties, shall keep LBHI informed of the status of such determination from time to time, upon reasonable request by LBHI, and promptly inform LBHI of any such determination made by LBIE) or (y) file an application with the English court seeking such a determination, (ii) consents and shall not object to LBHI's filing, upon ten-Business-Days' written notice to LBIE, an application with the English court disputing any determination made by LBIE pursuant to clause (i)(x) of this Section 2.12(b), and (iii) consents and shall not object to LBHI's participation in any application to the English court described in clause (i)(y) of this Section 2.12(b).

(c)      Irrespective of whether LB Lux distributes amounts to LBHI and LBIE in accordance with Section 2.12(a) in whole or in part, as between themselves and subject to the proviso in Section 2.12(c)(iv), LBHI and LBIE agree to share all distributions remitted to them in respect of LB Lux, with the LBHI-LB Lux Share for LBHI and the LBIE-LB Lux Share for LBIE.    In furtherance of the foregoing and subject to the proviso in Section 2.12(c)(iv):

(i)      if on any date the distributions received by LBHI in respect of LB Lux through and including such date *divided by* the aggregate distributions received by LBHI and LBIE in respect of LB Lux through and including such date exceed the LBHI-LB Lux Share (including, if applicable, after giving effect to any deemed change in the LBHI-LB Lux Share pursuant to the proviso in Section 2.12(c)(iv)), then LBHI shall, within five Business Days of such date, remit cash to LBIE in an amount necessary to cause the distributions received by LBHI in respect of LB Lux through and including such date (after giving effect to the cash remittance to LBIE in accordance with this Section 2.12(c)(i)) *divided by* the aggregate distributions received by LBHI and LBIE in respect of LB Lux through and including such date to equal the LBHI-LB Lux Share;

(ii)      if on any date the distributions received by LBIE in respect of LB Lux through and including such date *divided by* the aggregate distributions received by LBHI and LBIE in respect of LB Lux through and including such date exceed the LBIE-LB Lux Share, then LBIE shall, within five Business Days of such date, remit cash to LBHI in an amount necessary to cause the distributions received by LBIE in respect of LB Lux through and including such date (after giving effect to the cash remittance to LBHI in accordance with this Section 2.12(c)(ii)) *divided by* the aggregate distributions received by LBHI and LBIE in respect of LB Lux through and including such date to equal the LBIE-LB Lux Share;

(iii)     each of LBHI and LBIE agree to notify the other, promptly upon receipt thereof, of the amount any distributions remitted to it in respect of LB Lux; and

(iv)     LBHI and LBIE agree to use reasonable efforts to secure (x) the stay of the LBIE-LB Lux Litigation and (y) upon the occurrence of the Effective Date, the resolution of the LBIE-LB Lux Litigation in a manner acceptable to LBIE, in its sole discretion; *provided* that notwithstanding any such reasonable efforts by LBHI and LBIE, in the event that LBIE makes any payments or distributions to LB Lux pursuant to any order of a court of competent jurisdiction in respect of the LBIE-LB Lux Litigation or in connection with any other resolution of the LBIE-LB Lux Litigation (the aggregate amount of any such payments or distributions, the "**LBIE-LB Lux Payment Amount**"), then (1) the LBHI-LB Lux Share shall be deemed to be 0% and the LBIE-LB Lux Share shall be deemed to be 100% for purposes of this Section 2.12(b) unless and until the aggregate distributions received by LBIE in respect of LB Lux subsequent to the date that LBIE remits any LBIE-LB Lux Payment Amount equals such LBIE-LB Lux Payment Amount and (2) any distributions received by LBIE as a result of clause (1) of this proviso shall be disregarded for purposes of Section 2.12(c)(i) and Section 2.12(c)(ii).

(d)     LBHI and LBIE agree to use reasonable efforts to work together and with the liquidators of LB Lux to achieve the best recoveries reasonably obtainable by LB Lux in its estate and to secure an expeditious distribution of assets by LB Lux to its creditors.

(e)     If any Debtor (other than LBHI) or any UK Affiliate (other than LBIE) obtains any Transfer in respect of LB Lux (or in connection with any claims in respect thereof), including by way of reduction of any obligation whether through setoff or otherwise, such Debtor or UK Affiliate shall, within five Business Days of receipt thereof, remit such Transfer to LBIE (in the form and amount received or, in the case of an obligation reduction, in cash for the value of such reduction).     LBIE shall treat any remittances received in accordance with this Section 2.12(e) as a remittance in respect of LB Lux and subject to the provisions of Section 2.12(b).

SECTION 2.13.     *LBLIS.*

(a)     LBLIS acknowledges that, on the Effective Date, each of its then-current managers (the "**Current LBLIS Managers**") is to resign without any claim for compensation.     LB Scottish, in its capacity as sole shareholder of LBLIS, (i) shall procure such resignation on such terms by the Current LBLIS

Managers on the Effective Date and (ii) in the event that the Current LBLIS Managers have not so resigned on the Effective Date, LB Scottish shall pass a shareholder resolution in the form attached hereto as Exhibit C revoking the Current LBLIS Managers, but giving them discharge for their mandate.

(b)    Not later than 14 days prior to the Effective Date, LBL shall provide to LB Scottish a list of three nominees for managers of LBLIS.   On the Effective Date, LB Scottish shall cause such nominees to be elected as managers of LBLIS in replacement of the Current LBLIS Managers who will at the same time obtain a discharge for their mandate, and will thereafter (i) support such managers' re-election and not seek their removal or revocation, (ii) support the election of such supplemental or replacement managers as may be proposed by LBL from time to time (the managers from time to time of LBLIS that are nominated by LBL, collectively, the "**LBL Nominated Managers**") and (iii) not elect or support the election of any persons not nominated by LBL.

(c)    Unless requested to do so by the LBL Nominated Managers, none of any Debtor, LB UK Delaware nor LB Scottish shall take any steps towards putting LBLIS in any insolvency, bankruptcy, winding-up, liquidation or similar proceeding, whether through the exercise of any contractual or legal rights or in such entity's capacity as shareholder or creditor of LBLIS.

(d)    Prior to the initial election of the LBL Nominated Managers, LBLIS shall not take any steps towards putting LBLIS in any insolvency, bankruptcy, winding-up, liquidation or similar proceeding, unless required to do so by Luxembourg law.

(e)    To the largest extent permitted by applicable law, none of any Debtor, LB UK Delaware nor LB Scottish shall object to or take any action to prevent any decision by the LBL Nominated Managers to place LBLIS in any insolvency, bankruptcy, winding-up, liquidation or similar proceeding.

(f)    Pending the Effective Date, LBLIS shall, and LB Scottish shall procure that LBLIS shall, operate in the ordinary course of business and shall only make payments or enter into transactions that are within the ordinary course of its business; *provided, however*, that LBLIS shall not, and LB Scottish shall procure that LBLIS shall not, make any payment or distribution to any Debtor or Debtor-Controlled Entity in respect of any equity interests or claims existing prior to September 15, 2008.

(g)    LB Scottish hereby acknowledges the obligations undertaken by LBLIS in this Section 2.13 and shall take no actions or inactions that are inconsistent with such obligations or prevent LBLIS from fulfilling such obligations.

(h)     LB UK Delaware hereby irrevocably agrees and shall be deemed to have hereby irrevocably agreed, effective on the Effective Date, that any and all of its claims against LBLIS are subordinated in right of payment to all other creditors of LBLIS, including LBL.

(i)     Unless and until LBL shall have been indefeasibly paid $225,000,000 in respect of its claims against LBLIS, plus any interest accrued thereon in accordance with applicable contract and law, if LB UK Delaware obtains any Transfer in respect of any of its claims against LBLIS, including by way of reduction of any obligation whether through setoff or otherwise, LB UK Delaware shall, within three Business Days of receipt thereof, remit such Transfer to LBL (in the form and amount received or, in the case of an obligation reduction, in cash for the value of such reduction).

(j)     LB UK Delaware and LBHI hereby acknowledge the obligations undertaken by LB Scottish in this Section 2.13 and shall take no actions or inactions that are inconsistent with such obligations or prevent LB Scottish from fulfilling such obligations.

(k)     On or after the Effective Date, to the extent that LBHI (i) is holding any cash for or on behalf of LBLIS, or in which LBLIS has a Proprietary Interest or (ii) is authorized to direct the withdrawal of any cash held in accounts in the name of LBLIS or in which LBLIS has a Proprietary Interest, in each case, LBHI will return such cash to LBLIS within two Business Days after LBLIS's written request to LBHI.

(l)     LBL agrees to indemnify each of LBHI, LB UK Delaware, LB Scottish and each of their and LBLIS' members, partners, directors, officers, employees, agents, advisers or representatives, present and future, (each an "**LBL Indemnified Person**") against any damages or losses actually suffered in connection with any Causes of Action asserted against them (other than any Causes of Action asserted against them by or on behalf of any Debtor or Debtor-Controlled Entity (other than any Causes of Action asserted by LBLIS after the Effective Date)) asserted against such LBL Indemnified Person in relation to the provision of, or otherwise connected with, the performance of the obligations set forth in this Section 2.13; *provided* that this indemnity shall not apply, to the extent it would otherwise apply, in respect of (i) any Causes of Action arising by reason of the Current LBLIS Managers being given a discharge for their mandate except solely to the extent relating directly to their acting or causing LBLIS to act so as to comply with an obligation of LBLIS under this Section 2.13; (ii) any Causes of Action arising from any actions or inactions of the Current LBLIS Managers while in office as managers of LBLIS except solely to the extent that they arise directly as a result of the Current LBLIS Managers (x) acting or failing to act so as to cause LBLIS to comply with its obligations under Section 2.13(f) or

(y) resigning in accordance with Section 2.13(a); or (iii) any losses or damages resulting from the willful misconduct, bad faith, fraud or gross negligence of such LBL Indemnified Person.

(m)     Each LBLIS Group Entity is party to this Agreement solely to the extent of the provisions set forth in Section 2.09, Section 2.13, Article 4 (but solely to the extent of any representations or warranties made by LBL thereunder), Article 6, Article 9 through Article 19 and Article 23 through Article 27, and, except in such provisions, each reference to the term "Party" or "Parties" throughout this Agreement shall be deemed to refer to a Party other than any of the LBLIS Group Entities or the Parties other than LBLIS Group Entities, respectively.

SECTION 2.14.     *Claim Allowance Final.*   The Allowed Claims and the Admitted Claims shall not be subject to (a) reduction, avoidance, recharacterization, reconsideration, recovery, subordination, merger, consolidation, attack, offset, claim, defense, recoupment, deduction, counterclaim or objection, of any kind or nature, whether under the Bankruptcy Code or any provision of the Plan or otherwise or (b) disallowance or holdback (other than any posting of security in accordance with Section 2.01(c) in respect of the LBIE Guarantee Claim) under any provision of the Plan or Bankruptcy Code, including section 502(d) thereof, or otherwise.

SECTION 2.15.     *Allowed Claims' Treatment Under the Plan.*

(a)     Except as set forth in Section 2.01(c), the Allowed Claims shall be treated at least as favorably as the most favorably treated guarantee claim or direct claim, as applicable, of any Lehman Entity against the applicable Debtor, including with respect to the timing of distributions thereunder, except to the extent that any UK Affiliate agrees hereunder that its claims will be treated less favorably than other claims in the same class; *provided* that this Section 2.15(a) shall not prohibit the Debtors from (i) treating the Allowed Claims, or any other claims, in any manner that the Debtors determine, in the reasonable exercise of their fiduciary duties, is required by applicable law or required to render the Plan confirmable pursuant to section 1129 of the Bankruptcy Code or (ii) treating any guarantee claim or direct claim of any Lehman Entity more favorably than any Allowed Claims that are in a different class than the applicable Lehman Entity's claim under the Plan, so long as (x) such treatment is not materially more favorable and (y) such classification and treatment comply with applicable law. For the purposes of this Section 2.15(a), each UK Affiliate agrees that it shall not assert that the Current Plan treats the Allowed Claims less favorably than the most favorably treated guarantee claim or direct claim, as applicable, of any Lehman Entity against the applicable Debtor.

(b)     Except as set forth in Section 2.01(b), the Allowed Claims under any Plan shall be unaffected by any allowance or disallowance of any UK Affiliate's claims against any Lehman Entity (other than the Debtors) or the amounts thereof.

(c)     Notwithstanding anything to the contrary in Section 8.13 of the Current Plan (or any provisions of similar effect in any Plan), the Debtors agree that any Allowed Claim shall be deemed (i) satisfied in full or (ii) not entitled to any further distributions from the Debtors, in each case, only if the holder of such Allowed Claim receives distributions from the Debtors on account of such Allowed Claim that combined with any other distributions provided to such holder in respect of the corresponding "Primary Claim" (as defined in the Current Plan) equal the allowed amount of the corresponding "Primary Claim" (as defined in the Current Plan).

(d)     Subject to Section 2.15(c) hereof, Sections 8.10, 8.13(e) (except as explicitly set forth in Section 2.01(c) hereof), 8.14, 8.15 and 13.8 (to the extent Section 13.8 seeks to preserve the Debtors' rights to Causes of Action (as defined in the Current Plan) that are released or waived under this Agreement) of the Current Plan (and any provisions of similar effect in the Plan) shall not apply to the UK Affiliates or the Allowed Claims.   This Section 2.15(d) is without prejudice to any rights of the Debtors under the Plan or otherwise against any entities that are not Parties.

SECTION 2.16.   *Tolling Agreements.*   Each Tolling Agreement shall be deemed terminated as of the Effective Date and be of no further force and effect as between the Debtors and the applicable UK Affiliates.

SECTION 2.17.   *LBJ Settlement Agreement.*   LBSF, LBHI and LBIE shall take all steps reasonably necessary expeditiously to negotiate and execute the LBJ Settlement Agreement and seek approval thereof from the Bankruptcy Court under the Plan.   Each of LBSF, LBHI and LBIE agree that solely vis-à-vis one another, the releases set forth in Article 8 supersede and replace any releases set forth in the LBJ Settlement Agreement.

SECTION 2.18.   *Claim Reserve Agreement.*   The Parties acknowledge that this Agreement is the Settlement Agreement (as defined in the Claim Reserve Agreement).

SECTION 2.19.   *Unfunded Notes Settlement Agreement.*   The Debtors hereby irrevocably waive and release and shall be deemed to have hereby irrevocably waived and released, automatically and without further action, any claims or causes of action they may have against LBIE (including in the Debtors' respective capacities as Extended Lien Claimants) in respect of the transactions contemplated by the Unfunded Notes Settlement Agreement; *provided* that any of

LBSF's rights, obligations, claims or causes of action under the Unfunded Notes Settlement Agreement are neither waived nor released pursuant to this Section 2.19.

SECTION 2.20.    *LBIE Structured Securities.*

(a)     LBIE agrees to acquire beneficial ownership of LBIE Structured Securities after the Execution Date only (i) through the exercise of rights or remedies, under contract or applicable law, of any liens or security interests LBIE may have in any LBIE Structured Securities or (ii) in connection with a settlement or other resolution of any contracts or transactions entered into by LBIE with a counterparty (including any Lehman Entity) prior to LBIE's Insolvency Filing Time.

(b)     LBIE and LBHI hereby agree that any claims by LBIE (or any of its permitted transferees, assignees or participants in accordance with Section 2.20(c)) against LBHI arising under LBIE Structured Securities (i) shall be allowed claims (solely for purposes of distributions under the Plan) against LBHI in an amount equal to the amount determined in accordance with the methodology and principles used by the Debtors to value Structured Securities beneficially owned by third parties; *provided* that the Debtors reserve the right to object to the LBIE Structured Securities on the grounds that such claims do not include a blocking number or include an invalid blocking number, are duplicative of other claims, have been amended and superseded, or otherwise do not comply with the provisions of the Bar Date Order (as defined in the Current Plan); (ii) in the case of LBIE Structured Securities that were issued by any Lehman Entity (other than LBHI), shall be classified under the Plan as unsecured, non-priority, senior affiliate guarantee claims against LBHI ("LBHI Class 4B" as described in the Current Plan); *provided* that such claims shall be treated as if they were unsecured, non-priority, senior third-party guarantee claims against LBHI ("LBHI Class 5" as described in the Current Plan); and (iii) in the case of LBIE Structured Securities that were issued by LBHI, shall be classified under the Plan in the same classes, and receive the same treatment under the Plan, as if such Structured Securities had not been acquired by LBIE.

(c)     LBIE agrees to convey, transfer, assign, or participate any of the LBIE Structured Securities after the Execution Date only to any entity that agrees to be bound by LBIE's obligations under Section 2.20(b) and this Section 2.20(c).

SECTION 2.21.    *Extended Lien Applications.*    LBIE shall not object to LBHI's (or any other Debtor's) participation in the Extended Lien Application and/or Extended Lien Asia Application.

SECTION 2.22.    *Client Money Tracing Claims.*

(a)    LBIE shall commence a Client Money Tracing Claim against LBHI only if expressly directed to do so by either (i) a court of competent jurisdiction (it being understood that such direction may be in connection with an application commenced by LBIE in such court, including the Client Money Tracing Application) or (ii) the UK Financial Services Authority.

(b)    In the event that a court of competent jurisdiction renders, by a final, unappealable order, a judgment against LBHI in respect of a Client Money Tracing Claim and, as a result thereof, LBHI actually remits to LBIE or any beneficiary of the Client Money Trust, or their respective successors in title or assignees, cash or other property in or towards settlement of such Client Money Tracing Claim (such payment, an "**LBHI Client Money Payment**,") then LBIE shall pay to LBHI an amount equal to the aggregate amount of such dividend or dividends as LBIE would have paid on that portion of any admitted unsecured claim against LBIE that is indefeasibly reduced by the LBHI Client Money Payment at the same time or times as such dividend payments would have been made (and, in the case of any dividends already paid by LBIE to the relevant claimant or claimants, LBIE hereby expressly agrees to use reasonable efforts (i) to recover and (ii) to assist LBHI, to the extent LBHI is seeking to recover, such dividends from the relevant creditor or creditors and, solely to the extent such dividends are recovered by LBIE, agrees to pay such dividends to LBHI within seven Business Days of receipt thereof).

(c)    LBIE hereby expressly agrees (i) to LBHI's participation in any Client Money Tracing Application, and (ii) not to seek any costs from LBHI in respect of participation in such an application.

(d)    Subject to applicable confidentiality and data privacy laws and restrictions, LBIE shall use reasonable efforts, from time to time at LBHI's request, to provide LBHI with information regarding entitlements to protection as Client Money under the Client Money Trust, including (i) creditors who may have such entitlements and (ii) the amounts and natures of such creditors' claims that may give rise to such entitlements; *provided* that, without prejudice to the general applicability of the Existing NDA, LBHI acknowledges that any information provided to it pursuant to this Section 2.22(d) shall be treated as "Confidential Information" (as defined in the Existing NDA).

(e)    Nothing in this Section 2.22 waives or releases any rights or defenses any Party may have in respect of any Client Money Tracing Claim, all of which are expressly reserved.

SECTION 2.23.    *UK Re/LBIE Assets.*    LBIE (i) agrees that, within 180 days of the Effective Date, LBIE either shall (x) determine whether, subject to any Extended Lien Claims, any assets are UK Re/LBIE Assets (and, subject to applicable data privacy restrictions and confidentiality obligations owed to counterparties, shall keep LBHI informed of the status of such determination from time to time, upon reasonable request by LBHI, and promptly inform LBHI of any such determination made by LBIE) or (y) file an application with the English court seeking such a determination, (ii) consents and shall not object to LBHI's filing, upon ten-Business-Days' written notice to LBIE, an application with the English court disputing any determination made by LBIE pursuant to clause (i)(x) of this Section 2.23, (iii) consents and shall not object to LBHI's participation in any application to the English court described in clause (i)(y) of this Section 2.23, (iv) confirms (it being understood that such confirmation shall be treated as a statement made in good faith but not constitute a warranty or representation having legal effect) that, on the basis of its books and records as currently reviewed and on the basis of the proprietary claims made against LBIE to date by UK Re, there are no competing ownership claims in respect of assets in LBIE's custody or control that are claimed by UK Re other than Competing Claims by LBHI, (v) agrees that LBIE will not assert any lien over the UK Re/LBIE Assets in respect of any indebtedness owed by UK Re to LBIE and (vi) agrees that, within ten Business Days after the date upon which it has been finally determined that any assets are UK Re/LBIE Assets, LBIE shall remit, return, transfer, convey, assign or otherwise deliver such assets to UK Re, such ten-Business-Day period subject to UK Re supplying LBIE in a timely manner with adequate settlement information for delivery of such UK Re/LBIE Assets.

## ARTICLE 3
### Plan Support

SECTION 3.01.    *Plan Supplement.*    The Debtors shall file this Agreement (but not Schedule 2, Schedule 3 or Schedule 5) in the Plan Supplement (as defined in the Plan) on or prior to the deadline set forth in the Disclosure Statement Approval Order for filing the Plan Supplement; *provided* that so long as the Debtors take all steps reasonably necessary to ensure that the contents thereof are not publicly disclosed, Schedule 2, Schedule 3 and Schedule 5 may be (i) filed by the Debtors with the Bankruptcy Court under seal and/or (ii) disclosed on a confidential basis to the Bankruptcy Court, the United States Trustee for the Southern District of New York and the advisors to the official committee of unsecured creditors in the Chapter 11 Cases on a "professionals'-eyes only" basis.

SECTION 3.02.    *PSA Creditor.*    Contemporaneously with filing this Agreement with the Bankruptcy Court in accordance with Section 3.01, the Debtors shall file with the Bankruptcy Court an amendment to Schedule 4 of the

Plan, which amendment shall add each UK Affiliate as a PSA Creditor (as defined in the Current Plan).

SECTION 3.03.   *Plan.*   The Debtors shall (a) prosecute the Plan (incorporating this Agreement in full) and seek entry of an order confirming the Plan (incorporating this Agreement in full), (b) provide LBIE with any contemplated amendment, modification or supplement to the Plan or Disclosure Statement as soon as practicable and in any event prior to the filing of such document with the Bankruptcy Court, (c) not amend, modify or supplement the Plan in a manner the effect of which is that this Agreement is not (or is no longer) incorporated in full in the Plan and (d) not propose or support any other chapter 11 plan for the Debtors unless such plan incorporates this Agreement in full; *provided* that clauses (a), (c) and (d) of this Section 3.03 shall not prohibit the Debtors from acting in any manner that the Debtors' determine, in the reasonable exercise of their fiduciary duties, is required by applicable law or required to render the Plan confirmable pursuant to section 1129 of the Bankruptcy Code.

SECTION 3.04.   *Plan Support Obligations.*   So long as (a) the Debtors are not in breach of their obligations hereunder, including in this Article 3, (b) this Agreement has not terminated in accordance with Article 11 and (c) the Plan incorporates this Agreement in full, then, with respect to the Allowed Claims, the Excluded Items, and any other claims that the UK Affiliates have asserted or may assert against any Debtor, (i) provided that the applicable UK Affiliate has been properly solicited in accordance with section 1125 of the Bankruptcy Code, each UK Affiliate shall timely vote to accept the Plan and not thereafter withdraw or change such vote, and LBIE shall file a statement in support of approval and confirmation of the Plan; *provided* that LBIE, acting as "nominee" (as used in paragraph 27 of the Disclosure Statement Approval Order) or as "Voting Nominee" (as used in paragraph 24 of the Disclosure Statement Approval Order), shall be entitled to vote any LPS Trust Claims either to accept or to reject the Plan (or to abstain from voting on the Plan), in each case, as directed by the applicable beneficial holders, (ii) no UK Affiliate shall oppose or object to (or support any objection to) confirmation of the Plan, (iii) subject to Section 3.06, no UK Affiliate shall (x) participate in the formation of, file or prosecute any Alternative Plan, (y) join in or support any Alternative Plan, including, without limitation, express support in writing of, or enter into any form of plan support agreement with respect to any Alternative Plan, or (z) take any action to alter, delay or impede the confirmation and consummation of the Plan.

SECTION 3.05.   *Solicitation Required in Connection with the Plan.* Notwithstanding anything contained in Section 3.04 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code, or rejection of any Alternative Plan.   Acceptance of the Plan will not be

solicited until the Disclosure Statement and ballots have been transmitted to parties entitled to receive the same in accordance with the Disclosure Statement Approval Order.

SECTION 3.06.    *Alternative Plans.*    So long as (a) the Debtors are not in breach of their obligations hereunder, including in this Article 3, (b) this Agreement has not terminated in accordance with Article 11 and (c) the Plan incorporates this Agreement in full, then, if the Bankruptcy Court allows other parties to solicit acceptances of any Alternative Plans at the same time as the Plan, any UK Affiliate may vote to accept such Alternative Plans only if such Alternative Plan or Alternative Plans provide the applicable UK Affiliate with an equal or greater economic recovery than the Plan; *provided, however*, that such UK Affiliate shall also (i) timely vote to accept the Plan and not thereafter withdraw or change such vote, (ii) comply with the provisions of Section 3.04, and (iii) support approval and confirmation of the Plan, and indicate a preference for the Plan on its voting ballot, if the Plan provides such UK Affiliate with an equal or greater economic recovery compared with any Alternative Plan that such UK Affiliate votes to accept.    So long as (x) the Debtors are not in breach of their obligations hereunder, including in this Article 3, (y) this Agreement has not terminated in accordance with Article 11 and (z) the Plan incorporates this Agreement in full, then, notwithstanding anything contained in this Article 3, the UK Affiliates shall not indicate a preference on their voting ballots for any Alternative Plans; *provided, further*, that if the Bankruptcy Court orders or directs creditors of the Debtors to indicate a preference on their ballots, then the UK Affiliates may indicate a preference on their voting ballots for any Alternative Plans that provide greater economic recovery than the Plan.

SECTION 3.07.    *Other PSA.*

(a)    The Parties intend for this Agreement to be an "Other PSA" as referred to and described in each applicable Supporting Creditor PSA.

(b)    The UK Affiliates shall not file, support or participate in any objections to the claims of any creditor that enters into an Other PSA (as defined in each applicable Supporting Creditor PSA) with the Debtors substantially similar to this Agreement, except with respect to any creditor that files, supports or participates in any objections to the approval of this Agreement by the Bankruptcy Court.

ARTICLE 4
THE UK AFFILIATES' REPRESENTATIONS AND WARRANTIES

In order to induce the Debtors to enter into and perform their obligations under this Agreement, each UK Affiliate hereby represents, warrants and acknowledges as follows:

SECTION 4.01. *Authority.* The UK Affiliates have the power and authority to execute, deliver and perform their obligations under this Agreement, and to consummate the transactions contemplated herein, and the execution, delivery and performance by the UK Affiliates of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the UK Affiliates, and no other proceedings on the part of the UK Affiliates are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

SECTION 4.02. *Validity.* This Agreement has been duly executed and delivered by the UK Affiliates and, subject to general bankruptcy rules, constitutes the legal, valid and binding agreement of the UK Affiliates, enforceable against the UK Affiliates in accordance with its terms.

SECTION 4.03. *Authorization of Governmental Authorities and Creditors.* No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the UK Affiliates of their obligations hereunder.

SECTION 4.04. *Title; No Prior Transfer of Claims.*

(a) The UK Affiliates (i) own the House Proofs of Claim free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances created or incurred by the UK Affiliates, (ii) are not aware of any third-party rights with respect to the House Proofs of Claim as of the Execution Date, and (iii) have not transferred or assigned to any other person any of the House Proofs of Claim, in whole or in part.

(b) Other than as expressly set forth in this Agreement, no UK Affiliate may convey, transfer, assign, or participate any of the claims or receivables that are allowed, compromised, settled, waived or released hereunder, or any rights or interests arising under any of the foregoing, in whole or in part; *provided* that after the Effective Date the UK Affiliates may convey, transfer, assign or participate any of the Allowed Claims (in each case, an "**Assigned UK Affiliate Interest**"), to any party or parties (in each case, a "**UK Affiliate Claim Transferee**"); *provided, further*, that any such conveyance, transfer, assignment, or participation is consummated pursuant to a written agreement that provides that

the terms and provisions of this Agreement shall be binding in all respects upon UK Affiliate Claim Transferees, and any successor transferees, and shall govern their acts. No such conveyance, transfer, assignment, or participation shall be valid unless (1) the Debtor against which such Assigned UK Affiliate Interest is asserted receives a copy of said written agreement executed by the transferor and the transferee and (2) such Debtor does not object in writing within five Business Days of receipt of said written agreement to the proposed conveyance, transfer, assignment, or participation, based on the failure of said written agreement to contain the foregoing provisions; *provided*, *further*, that the foregoing restriction on objections shall not apply with respect to any objections premised on any orders entered in the Chapter 11 Cases relating to the trading of claims. Any such conveyance, transfer, assignment, or participation shall not relieve the UK Affiliates of any of their obligations under this Agreement. Notwithstanding the foregoing, the conveyance, transfer, assignment, or participation of any claims, receivables, rights or interest in respect of Excluded Items is not prohibited or restricted by this Section 4.04(b); *provided, however,* that LBIE shall not transfer any Client Money Tracing Claims it holds in its capacity as a fiduciary without the prior written consent of LBHI.

SECTION 4.05. *No Reliance.* The UK Affiliates (i) are sophisticated parties with respect to the subject matter of this Agreement, (ii) have been represented and advised by legal counsel in connection with this Agreement, (iii) have adequate information concerning the matters that are the subject of this Agreement, and (iv) have independently and without reliance upon any Debtor or any officer, employee, agent or representative thereof, and based on such information as the UK Affiliates have deemed appropriate, made their own analysis and decision to enter into this Agreement, except that the UK Affiliates have relied upon each Debtor's express representations, warranties and covenants in this Agreement. The UK Affiliates acknowledge that they have entered into this Agreement voluntarily and of their own choice and not under coercion or duress.

## ARTICLE 5
### DEBTORS' REPRESENTATIONS AND WARRANTIES

In order to induce the UK Affiliates to enter into and perform their obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

SECTION 5.01. *Authority.*

(a) Subject to the occurrence of the Effective Date, each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein,

and the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor, and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

SECTION 5.02. *Validity*. Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and, subject to general bankruptcy rules, constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

SECTION 5.03. *Authorization of Governmental Authorities*. Subject to the occurrence of the Effective Date, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor of its obligations hereunder.

SECTION 5.04. *Title; No Transfer of Claims*.

(a) Each Debtor (i) owns all claims it may have against any UK Affiliate, including all claims released hereunder, free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances created or incurred by such Debtor, (ii) is not aware of any third-party rights with respect to any such claims as of the Execution Date, and (iii) has not transferred or assigned to any other person any of such claims, in whole or in part.

(b) Other than as expressly set forth in this Agreement, no Debtor may convey, transfer, assign, or participate any of the claims or receivables that are allowed, compromised, settled, waived or released hereunder, or any rights or interests arising under any of the foregoing, in whole or in part; *provided* that after the Effective Date the Debtors may convey, transfer, assign or participate any of the Admitted Claims (in each case, an "**Assigned Debtor Interest**"), to any party or parties (in each case, a "**Debtor Claim Transferee**"); *provided* that any such conveyance, transfer, assignment, or participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Agreement shall be binding in all respects upon Debtor Claim Transferees, and any successor transferees, and shall govern their acts. No such conveyance, transfer, assignment, or participation shall be valid unless (1) the UK Affiliate against which such Assigned Debtor Interest is asserted receives a copy of said written agreement executed by the transferor and the transferee and (2) such UK Affiliate does not object in writing within five Business Days of receipt of said written agreement to the proposed conveyance, transfer, assignment, or participation, based on the failure of said written agreement to contain the

foregoing provisions.   Any such conveyance, transfer, assignment, or participation shall not relieve the Debtors of any of their obligations under this Agreement.   Notwithstanding the foregoing, the conveyance, transfer, assignment, or participation of any claims, receivables, rights or interest in respect of Excluded Items is not prohibited or restricted by this Section 5.04(b); *provided, however*, that if LBHI transfers or assigns all or any portion of the JPM Claim or the R3 Claim, the Parties' obligations with respect to the JPM Claim or the R3 Claim, as applicable, shall automatically terminate; *provided, further*, that LBHI shall only transfer or assign all or any portion of the JPM Claim or the R3 Claim to a third party, and only so long as such third party agrees to be bound by LBHI's obligations under this proviso of Section 5.04(b).

SECTION 5.05.   *No Reliance*.   Each Debtor (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any UK Affiliate or any officer, employee, agent or representative thereof, and based on such information as each Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each Debtor has relied upon each UK Affiliate's express representations, warranties and covenants in this Agreement.   Each Debtor acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

ARTICLE 6
LBLIS GROUP ENTITIES' REPRESENTATIONS AND WARRANTIES

In order to induce the UK Affiliates to enter into and perform their obligations under this Agreement, each LBLIS Group Entity hereby represents, warrants and acknowledges as follows:

SECTION 6.01.   *Authority.*

(a)      Subject to the occurrence of the Effective Date, each signatory LBLIS Group Entity has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein, and the execution, delivery and performance by such LBLIS Group Entity of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such LBLIS Group Entity, and no other proceedings on the part of such LBLIS Group Entity are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

SECTION 6.02. *Validity*. Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each LBLIS Group Entity and, subject to general bankruptcy rules, constitutes the legal, valid and binding agreement of each LBLIS Group Entity, enforceable against LBLIS Group Entity in accordance with its terms.

SECTION 6.03. *Authorization of Governmental Authorities*. Subject to the occurrence of the Effective Date, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each LBLIS Group Entity of its obligations hereunder.

SECTION 6.04. *No Reliance*. Each LBLIS Group Entity (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any UK Affiliate or any officer, employee, agent or representative thereof, and based on such information as each LBLIS Group Entity has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each LBLIS Group Entity has relied upon LBL's express representations, warranties and covenants in this Agreement. Each LBLIS Group Entity acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

ARTICLE 7
SURVIVING CONTRACTS

The Surviving Contracts shall survive the execution, consummation or termination of this Agreement, and the Debtors shall not reject any Surviving Contracts pursuant to sections 365 or 1123(b)(2) of the Bankruptcy Code. All pre-petition contracts between any of the Debtors and any UK Affiliate that are not Surviving Contracts shall be rejected under the Plan pursuant to section 365 of the Bankruptcy Code as of the Effective Date. Any claims that arise from the rejection of such contracts will be deemed to be satisfied in full by the treatment of the Allowed Claims under any Plan as set forth herein or the distributions to be made in respect of the Admitted Claims, as applicable.

ARTICLE 8
RELEASES

SECTION 8.01. *UK Affiliates' Release.* Upon the occurrence of the Effective Date, except with respect to (1) the Allowed Claims and the Admitted

Claims and any rights and distribution entitlements in respect thereof, (2) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (3) the performance of the obligations set forth herein, and (4) the Excluded Items, and in consideration of the foregoing and each Party's execution of this Agreement, each UK Affiliate, on behalf of itself, its estate, its successors and assigns (including any liquidators that may be appointed upon or after conversion of any administration of any UK Administration Company into liquidations, and any parties that may succeed to any Causes of Action of any of the UK Affiliates or their estates, or that may seek to bring any Causes of Action on behalf of any of the UK Affiliate's estates, derivatively or otherwise), hereby fully and forever releases, discharges and acquits each UK Affiliate Released Party from all Causes of Action (including in respect of any derivative claim by any third party or representative of any UK Affiliate's estate), whether at law or in equity, whether based on contract (including quasi-contract, guarantee, indemnity or estoppel), statute, regulation, tort or otherwise (excluding fraud in connection with the negotiation of (A) this Agreement or (B) the amounts of the Allowed Claims and the Admitted Claims) accrued or unaccrued, foreseen or unforeseen, foreseeable or unforeseeable, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, certain or contingent, in each case, that arise from, are based on, connected with, alleged in or related to any facts or circumstances in existence prior to the date hereof, including (i) any claims based upon an asserted right of subrogation, indemnification (whether express or implied), contribution or reimbursement, and (ii) all Causes of Action against any UK Affiliate Released Party, arising from, in connection with, or relating to any Causes of Action against any other entity (whether or not a Party) existing as of the date hereof.

SECTION 8.02.  *Debtors' Release*.   Upon the occurrence of the Effective Date, except with respect to (1) the Allowed Claims and the Admitted Claims and any rights and distribution entitlements in respect thereof, (2) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (3) the performance of the obligations set forth herein and (4) the Excluded Items, and in consideration of the foregoing and each Party's execution of this Agreement, each Debtor, on behalf of itself, its estates, its successors and assigns (including any chapter 7 trustees that may be appointed upon or after conversion of any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy Code or any party that may succeed to any Causes of Action of any of the Debtors or their estates, or may seek to bring any Causes of Action on behalf of any of the Debtors' estates, derivatively or otherwise), hereby fully and forever releases, discharges and acquits each Debtor Released Party, from all Causes of Action (including in respect of any derivative claim by any third party or representative of any Debtors' estate, including the official committee of unsecured creditors appointed in the Chapter 11 Cases), whether at law or in equity, whether based on contract (including quasi-contract, guarantee, indemnity

or estoppel), statute, regulation, tort or otherwise (excluding fraud in connection with the negotiation of (A) this Agreement or (B) the amounts of the Allowed Claims and the Admitted Claims), accrued or unaccrued, foreseen or unforeseen, foreseeable or unforeseeable, known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, certain or contingent, in each case, that arise from, are based on, connected with, alleged in or related to any facts or circumstances in existence prior to the date hereof, including (i) any Funding Claims, (ii) any Causes of Action under chapter 5 of the Bankruptcy Code or similar actions under applicable state law, (iii) except as explicitly set forth in Section 2.04, any claims based upon an asserted right of subrogation, indemnification (whether express or implied), contribution or reimbursement, including any such claims in connection with distributions to any of the UK Affiliates or any of their creditors based upon a guarantee or similar document by LBHI or any Lehman Entity and (iv) all Causes of Action against any Debtor Released Party, arising from, in connection with, or relating to any Causes of Action against any other entity (whether or not a Party) existing as of the date hereof. For the avoidance of doubt, this Section 8.02 is without prejudice to any of the Debtors' rights or Causes of Actions against any entity that is not a Debtor Released Party.

SECTION 8.03.  *Joint Administrators' Confirmation.*  The Joint Administrators confirm that, upon the occurrence of the Effective Date, and in consideration of the foregoing and each Party's execution of this Agreement, they shall not be entitled to commence against any UK Affiliate Released Party any action under the English Insolvency Act 1986 including, any action against any UK Affiliate Released Party in relation to transactions at an undervalue, preferences or transactions to defraud creditors.

ARTICLE 9

FEES AND EXPENSES

The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

ARTICLE 10

EFFECTIVENESS OF AGREEMENT

Article 1, Section 2.02(d), clause (x) of Section 2.12(c)(iv), Section 2.13(a) through Section 2.13(d), Section 2.13(f), Section 2.13(g), Section 2.13(j), Section 2.13(l), Section 2.13(m), Section 2.15(a), Section 2.17, Section 2.18, Section 2.19,

Section 2.20(a), Section 2.20(c), Section 2.21, Section 2.22(c) through Section 2.22(e), Article 3, Article 4, Article 5, Article 6, Article 10 through Article 20 (other than clause (iii) of Section 20.01) and Article 23 through Article 27 shall be effective upon the Execution Date.   The other provisions of this Agreement shall be effective upon the Effective Date; *provided* that this Agreement has not been terminated in accordance with accordance with Section 11.01, Section 11.02(a) or Section 11.03 prior to the Effective Date.

## ARTICLE 11
### TERMINATION

SECTION 11.01.   *Automatic Termination.*   This Agreement shall automatically terminate on any date on which the Bankruptcy Court (i) denies the motion seeking the Confirmation Order with prejudice, or (ii) enters an order confirming an Alternative Plan pursuant to section 1129 of the Bankruptcy Code.

SECTION 11.02   *The Debtors' Right to Terminate.*

(a)     Solely prior to the Effective Date, each Debtor, in its sole discretion, shall have the right, at its election, to terminate this Agreement by written notice to LBIE if (a) there is a breach in any material respect, taken as a whole, of the representations, warranties and/or covenants of any of the UK Administration Companies and UK Liquidation Companies hereunder, and the relevant UK Administration Company or UK Liquidation Company, as applicable, shall fail to cure such breach within ten days following receipt of written notice of such breach from the Debtors or (b) any of the Admitted Claims against any UK Administration Company or UK Liquidation Company receive materially different treatment than the claims held by other creditors of the applicable UK Administration Company or UK Liquidation Company that are legally and factually similar to such Admitted Claim and that results in such other creditors having a recovery entitlement in respect of such claims that is materially higher than the recovery entitlement in respect of such Admitted Claim.

(b)     Solely prior to the Effective Date, each Debtor, in its sole discretion, shall have the right, at its election, to terminate this Agreement as between the Debtors and any Other UK Affiliate (such Other UK Affiliate, a "**Terminated UK Affiliate**") by written notice to such Terminated UK Affiliate if (a) there is a breach in any material respect, taken as a whole, of the representations, warranties and/or covenants of such Terminated UK Affiliate hereunder, and such Terminated UK Affiliate shall fail to cure such breach within ten days following receipt of written notice of such breach from the Debtors or (b) any of the Admitted Claims against such Terminated UK Affiliate receive materially different treatment than the claims held by other creditors of such Terminated UK Affiliate that are legally and factually similar to such Admitted Claim and that

results in such other creditors having a recovery entitlement in respect of such claims that is materially higher than the recovery entitlement in respect of such Admitted Claim; *provided* that notwithstanding anything to the contrary in Section 11.04, this Agreement shall remain in full force and effect among, and such termination pursuant to this Section 11.02(b) shall have no effect on the rights and obligations of, the Debtors, the LBLIS Group Entities and the UK Affiliates (other than any Terminated UK Affiliate) vis-à-vis one another.

SECTION 11.03.    *LBIE's Right to Terminate.*    Solely prior to the Effective Date, LBIE, in its sole discretion, (and no other UK Affiliate) shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if (a) there is a breach in any material respect, taken as a whole, of the representations, warranties and/or covenants of any of the Debtors hereunder, and such Debtor shall fail to cure such breach within ten days following receipt of written notice of such breach from LBIE, (b) the Debtors withdraw the Current Plan or the Plan, (c) the Confirmation Order is not entered by the Bankruptcy Court on or before February 29, 2012, (d) the Plan (incorporating in full this Agreement) is not effective in accordance with its terms on or before July 1, 2012, (e) the Debtors propose or support any chapter 11 plan for the Debtors that provides for the substantive consolidation of any of the Debtors with any of the other Debtors or with any other Lehman Entity, (f) any chapter 11 plan for the Debtors that does not incorporate in full this Agreement is confirmed or such order confirming such plan does not approve this Agreement in full, (g) the Debtors amend or otherwise modify the Current Plan, the Plan or the Disclosure Statement, in each case, in a manner that, individually or, in the aggregate together with all other such amendments or modifications, would, if and when the Plan were to be consummated, adversely affect (other than in a *de minimis* manner) the treatment of, estimated recoveries by, or distributions to, or proportionate share of the Debtors' assets that are distributed pursuant to the Plan to, the Allowed Claims, (h) the Debtors or any Debtor-Controlled Entity takes any other action or makes any other agreement (including with respect to claims or with respect to asset transfers or allocations) in each case, that, individually or, in the aggregate together with all other such actions and agreements, would, if and when the Plan were to be consummated, materially and adversely affect the treatment of, estimated recoveries by, or distributions to, or proportionate share of the Debtors' assets that are distributed pursuant to the Plan to, the Allowed Claims or (i) the Plan provides for different treatment (other than in a *de minimis* manner) of claims held by other creditors that are legally and factually similar to the Allowed Claims that results in such other creditors having a recovery entitlement in respect of such claims that is higher (other than in a *de minimis* amount) than the recovery entitlement provided for in the Plan; *provided* that, with respect to clauses (g), (h) and (i) of this Section 11.03, (x) the Debtors do not guarantee, represent, warrant or otherwise commit that any UK Affiliate will receive any specific recovery amount or proportion under the Plan, (y) variations

45

from or modifications to the projected recovery amounts or percentages set forth in the Disclosure Statement due to, or based upon, revised projections of asset values or the amount, enforceability, classification and/or priority of any claims as determined pursuant to an order of the Bankruptcy Court following litigation on the merits of such claim(s) (and not based on a settlement, agreement or stipulation with the Debtors) shall not be taken into account or constitute an adverse effect for the purposes of clauses (g), (h) and (i) of this Section 11.03 and (z) the refusal of the Bankruptcy Court to include in the order confirming the Plan a release and exculpation of any Plan Support Creditor (as defined in the Current Plan) shall not constitute an adverse effect for the purposes of clauses (g), (h) and (i) of this Section 11.03.

SECTION 11.04.  *Effect of Termination.*  In the event that this Agreement is terminated in accordance with Section 11.01, Section 11.02(a) or Section 11.03 by any Party, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder; *provided* that Article 1, Section 2.18, Section 2.19, Article 10 through Article 18 and Article 23 through Article 27 shall survive any termination of this Agreement.  In the event that this Agreement is terminated as between the Debtors and any Terminated UK Affiliate in accordance with Section 11.02(b) by any Debtor, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement, shall have any *res judicata* or collateral estoppel effect or be of any force or effect as between the Debtors and such Terminated UK Affiliate, each of the Debtors; and such Terminated UK Affiliates' respective interests, rights, remedies and defenses vis-à-vis one another shall be restored without prejudice as if this Agreement had never been executed and the Debtors and such Terminated UK Affiliate shall be automatically relieved of any further obligations hereunder vis-à-vis one another; *provided* that Article 1, Section 2.18, Section 2.19, Article 10 through Article 18 and Article 23 through Article 27 shall survive any termination of this Agreement as between the Debtors and any Terminated UK Affiliate.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties' rights and remedies, and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

## ARTICLE 12
### VENUE AND CHOICE OF LAW

SECTION 12.01. *Venue.* To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement, and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court; *provided* that any actions or proceedings arising out of or relating to (i) disputes regarding the amount or validity of Admitted Claims or any other claims against UK Administration Companies or UK Liquidation Companies, (ii) issues that are the subject of any litigation currently pending in the English High Court (including, the Extended Lien Application, the currently pending Client Money Tracing Application and the application in respect of RASCALS Assets) or any applications in the English Courts that arise out of or relate to such currently pending litigation, (iii) Client Money or the Client Money Trust, in each case, other than any Client Money Tracing Claims against any Debtor (*provided, however*, that nothing in this Section 12.01 shall affect the rights of any beneficiary of the Client Money Trust who is not a Party to commence an action or proceeding to pursue a Client Money Tracing Claim in any jurisdiction or affect the rights of the Debtors to object thereto) and (iv) ownership or security interest claims (and asset shortfall claims and claims for short positions) in respect of assets held or settling into depots in LBIE's name or under LBIE's custody or control wherever situated, in each case, shall be within the exclusive jurisdiction of the English High Court, and, in each case, any Party bringing such action or proceeding shall bring such action or proceeding in the English High Court, and the Parties expressly consent and submit to the exclusive jurisdiction of such court in relation to the matters referred to in clauses (i) to (iv) of this proviso; *provided, further*, that any actions or proceedings arising out of disputes regarding the amount or validity of Admitted Claims or any other claims against Other UK Affiliates shall be within the non-exclusive jurisdiction of any court of competent jurisdiction. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over any action or proceeding that would have otherwise been within the exclusive jurisdiction of the Bankruptcy Court, such action or proceeding shall be in any court in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (1) any objection that it may now or hereafter have to the laying of venue of any such action or proceeding with the Bankruptcy Court or with any other federal court located within the Southern District of New York, or with the English High Court or other court of competent jurisdiction as described above, and (2) the defense

of an inconvenient forum to the maintenance of such action or proceeding in any such court.   Each Party irrevocably consents to service of process in the manner provided for notices in Article 13 hereof.   Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.   Notwithstanding the foregoing, this Agreement may be put before the English High Court as evidence of the terms and provisions contained herein.

SECTION 12.02.   *Choice of Law.*   This Agreement and all claims and disputes relating to the construction or application of the terms of this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code.

ARTICLE 13
NOTICES

All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day or (c) when sent by an internationally recognized courier, specifying next day delivery, upon written confirmation of delivery by such courier.   All communications shall be sent:

If to any Debtor or any LBLIS Group Entity at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: Daniel J. Ehrmann
Facsimile: (646) 834-0874
Email: dehrmann@alvarezandmarsal.com

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife and Robert J. Lemons
Facsimile: (212) 310-8007
Email: lori.fife@weil.com and robert.lemons@weil.com

<u>If to any UK Affiliate at:</u>

The address(es) set forth in the applicable UK Affiliate's signature page hereto, with a copy (which shall not constitute notice) to:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
U.S.A.
Attn: Marshall S. Huebner and Brian M. Resnick
Facsimile: (212) 701-5800
Email: marshall.huebner@davispolk.com and
        brian.resnick@davispolk.com

and

Linklaters LLP
One Silk Street
London
EC2Y 8HQ
United Kingdom
Attn: Richard Holden and Titia Holtz
Facsimile: +44 20 7456 2222
Email: richard.holden@linklaters.com and
        titia.holtz@linklaters.com

or to such other address(es) as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

ARTICLE 14
NO ADMISSION OF LIABILITY

Each Party acknowledges that this Agreement effects a settlement of potential claims, counterclaims and factual allegations that are in whole or in part denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing or with respect to any disputed fact.

ARTICLE 15
ENTIRE AGREEMENT

This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.    This Agreement supersedes and replaces any and all prior or contemporaneous oral or written agreements between the Parties concerning the subject matter hereof, and, to the extent of any conflicts or

inconsistencies between any confirmed Plan and the terms of this Agreement, the terms of this Agreement shall control. The Parties acknowledge that this Agreement is not being executed in reliance on any oral or written agreement, promise or representation not contained herein. For the avoidance of doubt, nothing in this Agreement is intended to or shall supersede the Voting Stipulation or, except as set forth in Section 2.18, the Claim Reserve Agreement.

## ARTICLE 16
### NO ORAL MODIFICATIONS

This Agreement may not be modified or amended orally. This Agreement may be modified or amended only by a writing signed by a duly authorized representative of each affected Party hereto; provided that this Agreement may be modified or amended without a writing signed by a duly authorized representative of any particular Other UK Affiliate to the extent such amendment or modification does not directly adversely affect such Other UK Affiliate. Any waiver of compliance with any term or provision of this Agreement on the part of any of the Debtors must be provided in a writing signed by each affected UK Affiliate. Any waiver of compliance with any term or provision of this Agreement on the part of any of the UK Affiliates must be provided in a writing signed by each affected Debtor. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach. No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

## ARTICLE 17
### CONSTRUCTION

This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

## ARTICLE 18
### BINDING EFFECT; SUCCESSOR AND ASSIGNS

Any declaration or statement of any Joint Administrator, Joint Liquidator or Thayer Liquidator shall be made only in his capacity and function as a Joint Administrator, Joint Liquidator or Thayer Liquidator of the applicable UK

Affiliate, and shall in no circumstance be construed as being a declaration or statement of such Joint Administrator, Joint Liquidator or Thayer Liquidator on his own and personal behalf. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors (including any chapter 7 trustees that may be appointed upon or after conversion of any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy Code or any party that may succeed to the rights or claims of any of the Debtors or their estates, derivatively or otherwise, and including any liquidators that may be appointed upon or after conversion of any administration of any UK Administration Company into liquidations) and permitted assigns; *provided*, *however*, that no Party may assign its rights or obligations under this Agreement without the written consent of each affected Party, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

## ARTICLE 19
### FURTHER ASSURANCES

The Parties agree to execute any and all further documents, agreements and instruments, and take all further action that may be required under applicable law, or that the Parties may reasonably request, in order to effectuate the terms of this Agreement and, as necessary, to promptly seek Bankruptcy Court approval of any such documents, agreements and instruments. Without limiting the generality of the foregoing, (i) each Party, in its capacity as a creditor of any UK Affiliate, agrees to not object to the settlements contemplated herein and (ii) each Debtor agrees to use reasonable efforts to cause any Debtor-Controlled Entity (as defined in the Current Plan), in such Debtor-Controlled Entity's capacity as a creditor or entity otherwise economically interested (directly or indirectly) in the assets of any UK Affiliate, to not object to the settlements contemplated herein.

## ARTICLE 20.
### COOPERATION.

SECTION 20.01. *LBSF's and LBCS's Cooperation.* Subject to applicable data privacy restrictions and to confidentiality obligations owed to counterparties and to applicable restrictions on LBSF's or LBCS's respective ability to provide market or pricing data supplied to it by third parties, LBSF and LBCS agree (i) to use reasonable efforts to provide LBIE with any information relating to any Assigned Debtor/LBIE Assets (or any claims in respect thereof) that LBIE may reasonably request, (ii) to not object to, or directly or indirectly support any objection to, LBIE's prosecution of any claims in respect of any Assigned Debtor/LBIE Assets and (iii) to execute any release in respect of any Assigned Debtor/LBIE Assets that LBIE in good faith deems necessary in connection with any claims in respect thereof; *provided* that (x) any information

supplied on such basis shall be supplied on terms that LBSF and LBCS, as applicable, incur no obligation or liability to LBIE in connection therewith, and (y) such obligation shall not require either LBSF or LBCS, as applicable, to expend any funds which it considers unreasonable or unduly burdensome. Nothing in this Section 20.01 shall require LBSF or LBCS, as applicable, to act in any manner that it considers, in its sole discretion, to be adverse to its interests or inconsistent with the fiduciary duties of LBSF or LBCS, as applicable.

SECTION 20.02. *UK Administration Companies' and UK Liquidation Companies' Cooperation.* Subject to applicable data privacy restrictions, to confidentiality obligations owed to counterparties and to applicable restrictions on each UK Administration Company's and each UK Liquidation Company's ability to provide market or pricing data supplied to it by third parties, each UK Administration Company and each UK Liquidation Company agrees that, upon LBHI's written request and representation that a creditor (other than any Lehman Entity) of such UK Administration Company or UK Liquidation Company, as applicable, has asserted a corresponding guarantee claim against LBHI (each such third-party creditor, a "**Third-Party Creditor**"), such UK Administration Company or UK Liquidation Company, as applicable, shall use reasonable efforts to provide LBHI with:

(a) information regarding whether such UK Administration Company or UK Liquidation Company, as applicable, and such Third-Party Creditor have resolved any of such Third-Party Creditor's claims against such UK Administration Company or UK Liquidation Company, as applicable;

(b) to the extent any such claims have been resolved, information regarding the number and amount of such claims that have been admitted or disallowed, and any distributions that have been made on account of any such admitted claims; and

(c) to the extent any such claims are disputed or otherwise unresolved, any information as the relevant UK Administration Company or UK Liquidation Company, in its sole discretion, may agree

; *provided*, in each case, that (i) without prejudice to the general applicability of the Existing NDA, LBHI acknowledges that any information provided to it pursuant to this Section 20.02 shall be treated as "Confidential Information" (as defined in the Existing NDA); (ii) such UK Administration Company or UK Liquidation Company, as applicable, shall incur no obligation or liability to LBHI in connection with any information supplied in accordance with this Section 20.02, (iii) such obligation shall not involve such UK Administration Company or UK Liquidation Company, as applicable, incurring any cost or suffering any delay that it considers, in its sole discretion, unreasonable or unduly burdensome,

(iv) nothing in this Section 20.02 shall give LBHI any right of veto over the terms of any settlement between such UK Administration Company or UK Liquidation Company, as applicable, and any such counterparty and (v) nothing in this Section 20.02 shall require such UK Administration Company or UK Liquidation Company, as applicable, to act in any manner that it considers, in its sole discretion, to be adverse to its interests, inconsistent with the duties of the Joint Administrators or Joint Liquidators, as applicable, or contrary to best insolvency practice in the United Kingdom.


## ARTICLE 21
### FOREIGN EXCHANGE

Notwithstanding the use for convenience of US Dollar amounts throughout this Agreement, any amount agreed to be due under the terms of Section 2.03 or Section 2.05 of this Agreement by a UK Administration Company, a UK Liquidation Company or a Thayer Liquidation Company shall be admitted to rank for dividend or other distribution in Sterling at the exchange rate applicable to such UK Administration Company, UK Liquidation Company or Thayer Liquidation Company in accordance with applicable law or in accordance with such UK scheme of arrangement or company voluntary arrangement as is applicable in the case of the relevant company, applied to each relevant US Dollar amount stated in this Agreement. Any amount due by LBIE pursuant to Section 2.22(b) shall be payable in Sterling or, if LBIE and LBHI so agree, in US Dollars and in the latter case at such spot rate of exchange as LBIE is able to obtain on or about the day of payment in accordance with normal practice in the foreign exchange market.


## ARTICLE 22
### TAX

SECTION 22.01.   All payments or distributions on account of the Allowed Claims or the Admitted Claims shall be made without any Tax Deduction, unless a Tax Deduction is required by law.

SECTION 22.02.   Each Party shall, upon becoming aware that it must make a Tax Deduction from a payment or distribution to another Party on account of the Allowed Claims or the Admitted Claims (or that there is any change in the rate or the basis of a Tax Deduction) notify such other Party accordingly.

SECTION 22.03.   The Parties shall co-operate in completing any procedural formalities necessary to obtain authorization to make payments or distributions on account of the Allowed Claims or the Admitted Claims without a Tax Deduction.   To the extent that any payments or distributions made on

account of the Allowed Claims or the Admitted Claims may be subject to any Tax Deduction by the Debtors or the UK Affiliates, the relevant Debtors and the relevant UK Affiliates shall take all reasonable steps to ensure that:

(a)     such withholding is mitigated as far as permissible; and

(b)     the recipient of such payments is able reclaim any Tax Deduction from a tax authority,

in each case, whether under the terms of an applicable double taxation agreement, local Tax law or practice, or any other applicable law.

SECTION 22.04.   The Parties agree that any payments made on account of the claims and receivables that are the subject of this Agreement shall be allocated for all purposes, including but not limited to US federal income tax and UK tax purposes, first to the principal portion of such claims and receivables, and, only after the principal portion of such respective claims and receivables is satisfied in full, to any portion of such claims and receivables comprising interest (but solely to the extent that interest is an allowable portion of such claims and receivables).

SECTION 22.05.   The Parties shall cooperate with respect to all reasonable information requests from a Party relating to the Party's preparation and filing of tax returns or other tax filings and withholding determinations, and any tax proceedings.

SECTION 22.06.   Nothing in this Article 22 shall require any Party to take any step that in its reasonable opinion would have material adverse consequences for it.

ARTICLE 23
COUNTERPARTS

This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.   The signatures of all of the Parties need not appear on the same counterpart.

ARTICLE 24
NO PERSONAL LIABILITY

The Joint Administrators, the Joint Liquidators, the Thayer Liquidators, and A&M act as agents for and on behalf of the UK Administration Companies, the UK Liquidation Companies, the Thayer Liquidation Companies, and the

Debtors, respectively, and neither they, their firm, members, partners, directors, officers, employees, agents, advisers or representatives shall incur any personal liability whatsoever in respect of any of the obligations undertaken by any of the UK Administration Companies, UK Liquidation Companies, Thayer Liquidation Companies, or Debtors, or in respect of any failure on the part of any of the UK Administration Companies, UK Liquidation Companies, Thayer Liquidation Companies, or Debtors to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or under any document or assurance made pursuant hereto. The exclusion of liability set out in this paragraph shall arise and continue notwithstanding the termination of the agency of any of the Joint Administrators, Joint Liquidators, Thayer Liquidators or A&M and shall operate as a waiver of any claims in tort as well as under the laws of contract and any claims otherwise at law or in equity. The Joint Administrators', the Joint Liquidators', and the Thayer Liquidators' firm, and A&M, and each of their respective members, partners, directors, officers, employees, agents, advisers and representatives are express third-party beneficiaries hereunder and may enforce and rely on this paragraph, to the same extent as if they or it were a party. Each Party accepts and agrees that this Agreement and all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, agents, asset managers, representatives or professional advisors of any other Party and, to the extent any such personal liability existed, each Party explicitly waives any and all potential rights and claims against all of the aforementioned persons. Any claim by a Party against any of the Joint Administrators, Joint Liquidators, Thayer Liquidators, UK Administration Companies, UK Liquidation Companies, or Thayer Liquidation Companies, arising under, related to, or connected with this Agreement shall be satisfied only out of the assets of the estate of the applicable UK Administration Company, UK Liquidation Company or Thayer Liquidation Company, and any claim by a Party against A&M as agent for a Debtor, or against such Debtor, arising under, related to, or connected with this Agreement shall only be satisfied out of the assets of such Debtor.

## ARTICLE 25
### THIRD-PARTY BENEFICIARIES

Other than (i) the Joint Administrators, Joint Liquidators and Thayer Liquidators (each of whom is an intended beneficiary of all limitations, exclusions, undertakings, covenants, releases and indemnities in their favor contained herein) and (ii) the beneficiaries of the forbearances set forth in Section 2.09 and releases set forth in Article 8 (each of whom is an intended beneficiary of such forbearances and releases), no provision of this Agreement shall create any third-party beneficiary or other rights to any entity other than the Parties. No LBLIS Group Entity shall have any third-party beneficiary or other rights except in

respect of the provisions to which such LBLIS Group Entity is party pursuant to Section 2.13(m).

ARTICLE 26

NON-SEVERABILITY

Each of the provisions of this Agreement is an integrated, essential and non-severable part of this Agreement.

ARTICLE 27

WAIVER OF JURY TRIAL

EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS ARTICLE 27 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI
STATLER ARMS LLC, CES AVIATION
LLC, CES AVIATION V LLC, CES
AVIATION IX LLC, LEHMAN SCOTTISH
FINANCE L.P., BNC MORTGAGE LLC, LB
ROSE RANCH LLC, STRUCTURED
ASSET SECURITIES CORPORATION, LB
2080 KALAKAUA OWNERS LLC, LB
PREFERRED SOMERSET LLC, LB
SOMERSET LLC, as Debtors and Debtors in
Possession

By: _____

Name:   John Suckow

Title:   Authorized Signatory


LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST
DOVER LIMITED, LUXEMBOURG
RESIDENTIAL PROPERTIES LOAN
FINANCE S.A.R.L., as Debtors and Debtors
in Possession

By: _____

Name:   Daniel Ehrmann

Title:   Authorized Signatory

Lehman Brothers Luxembourg Investments
S.À.R.L.

By:    _____

Name:  Daniel Ehrmann

Title:   Manager of category A


By:    _____

Name:  John Keen

Title:   Manager of category B

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Lehman Brothers Luxembourg Investments
S.À.R.L.

By: _____

Name: Daniel Ehrmann

Title: Manager of category A


By: _____

Name: John Keen

Title: Manager of category B

Lehman Brothers Holdings Scottish LP

By: _____

Name:  William J. Fox

Title:  Authorized Signatory

Lehman Brothers UK Holdings (Delaware) Inc.

By: _____

Name: William J. Fox

Title: Executive Vice President
and Chief Financial Officer

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

Lehman Brothers International (Europe)
(in administration)

By: _____

Anthony V. Lomas, Joint
Administrator of Lehman Brothers
Europe Limited (in administration),
acting as its agent and without
personal liability
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: tony.lomas@uk.pwc.com

Mable Commercial Funding Limited
(in administration)

By: _____
Dan Y. Schwarzmann, Joint
Administrator of Mable Commercial
Funding Limited (in administration),
acting as its agent and without personal
liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com

Storm Funding Limited
(in administration)

By: _____
Dan Y. Schwarzmann, Joint
Administrator of Storm Funding
Limited (in administration), acting as
its agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com

LB UK Re Holdings Limited
(in administration)

By: _____
Dan Y. Schwarzmann, Joint
Administrator of LB UK Re Holdings
Limited (in administration), acting as its
agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com

Lehman Brothers Europe Limited
(in administration)

By: _____
Dan Y. Schwarzmann, Joint
Administrator of Lehman Brothers
Europe Limited (in administration),
acting as its agent and without personal
liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Lehman Brothers Limited
(in administration)

By: ___Magic___

Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
Limited (in administration), acting as
its agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: mike.jervis@uk.pwc.com

Cherry Tree Mortgages Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Cherry Tree
Mortgages Limited (in administration),
acting as its agent and without personal
liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

Eldon Street Holdings Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Eldon Street Holdings
Limited (in administration), acting as
its agent and without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

LB Holdings Intermediate 2 Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of LB Holdings
Intermediate 2 Limited
(in administration), acting as its agent
and without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

LB RE Financing No. 3 Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of LB RE Financing
No. 3 Limited (in administration),
acting as its agent and without personal
liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

LB SF No. 1 (in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of LB SF No. 1
(in administration), acting as its agent
and without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

LB UK Financing Ltd
(in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of LB UK Financing Ltd
(in administration), acting as its agent
and without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

Lehman Brothers Holdings PLC
(in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
Holdings PLC (in administration),
acting as its agent and without personal
liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

Lehman Brothers Lease & Finance No. 1
Limited (in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
Lease & Finance No. 1 Limited (in
administration), acting as its agent and
without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

Lehman Brothers (PTG) Limited
(in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
(PTG) Limited (in administration),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Lehman Brothers UK Holdings Limited
(in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Lehman Brothers UK
Holdings Limited (in administration),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Lehman Commercial Mortgage Conduit
Limited (in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Lehman Commercial
Mortgage Conduit Limited
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Monaco NPL (No. 1) Limited
(in administration)

By: _____
Michael J. A. Jervis, Joint
Administrator of Monaco NPL (No. 1)
Limited (in administration), acting as
its agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Thayer Properties Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Thayer Properties
Limited (in administration), acting as its
agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Zestdew Limited (in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Zestdew Limited
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Eldon Street (Cube) Limited
(in liquidation)

By: _W (signature)_ _____

Ian Oakley-Smith, Joint Liquidator of
Eldon Street (Cube) Limited
(in liquidation), acting as its agent and
without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Eldon Street (Raven) Limited
(in liquidation)

By: _W (signature)_ _____

Ian Oakley-Smith, Joint Liquidator of
Eldon Street (Raven) Limited
(in liquidation), acting as its agent and
without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Grace Hotels Limited (in liquidation)

By: _W (signature)_ _____

Ian Oakley-Smith, Joint Liquidator of
Grace Hotels Limited (in liquidation),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

LB Lomond Investments (in liquidation)

By: _W (signature)_ _____

Ian Oakley-Smith, Joint Liquidator of
LB Lomond Investments
(in liquidation), acting as its agent and
without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Platform Commercial Mortgage Limited (in liquidation)

By: _W̲O̲M̲M̲M̲M̲W̲Q̲_____

Ian Oakley-Smith, Joint Liquidator of Platform Commercial Mortgage Limited (in liquidation), acting as its agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Platform Home Mortgage Securities No. 4 Limited (in liquidation)

By: _W̲Q̲M̲M̲M̲M̲Q̲_____

Ian Oakley-Smith, Joint Liquidator of Platform Home Mortgage Securities No. 4 Limited (in liquidation), acting as its agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

LBO Investments Limited (in liquidation)

By: _____
Ian Oakley-Smith, Joint Liquidator of
LBO Investments Limited
(in liquidation), acting as its agent and
without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com


LBQ Funding (UK) (in liquidation)

By: _____
Ian Oakley-Smith, Joint Liquidator of
LBQ Funding (UK) (in liquidation),
acting as its agent and without personal
liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com


Lehman Brothers Equity (Nominees
Number 7) Limited (in liquidation)

By: _____
Ian Oakley-Smith, Joint Liquidator of
Lehman Brothers Equity (Nominees
Number 7) Limited (in liquidation),
acting as its agent and without personal
liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com


Lehman Brothers (Indonesia) Limited
(in liquidation)

By: _____
Ian Oakley-Smith, Joint Liquidator of
Lehman Brothers (Indonesia) Limited
(in liquidation), acting as its agent and
without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com


*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Acenden Limited (f/k/a Capstone Mortgage
Services Limited)

By: _____

Amany Attia, as Director of Acenden
Limited (f/k/a Capstone Mortgage
Services Limited)
Acenden Limited
4th Floor
22-25 Finsbury Square
London EC2A 1DX
United Kingdom
Email: Amany.Attia@acenden.com

Acenden Limited (f/k/a Capstone Mortgage
Services Limited)

By: _____

Jeff Lundgren, as Director of Acenden
Limited (f/k/a Capstone Mortgage
Services Limited)
Acenden Limited
4th Floor
22-25 Finsbury Square
London EC2A 1DX
United Kingdom
Email: Jeff.Lundgren@acenden.com

Eldon Street (Birchin) Limited

By: _____
A J P Brereton, as Director of Eldon
Street (Birchin) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Eldon Street (Colbert Orco) Limited

By: _____
A J P Brereton, as Director of Eldon
Street (Colbert Orco) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Eldon Street (Fidenza) Limited

By: _____
A J P Brereton, as Director of Eldon
Street (Fidenza) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Eldon Street (Jefferson) Limited

By: _____
A J P Brereton, as Director of Eldon
Street (Jefferson) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Eldon Street (Harley) Limited

By: _____

    A J P Brereton, as Director of Eldon
Street (Harley) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com


LB Yellow (No. 1) Limited

By: _____

    A J P Brereton, as Director of LB
Yellow (No. 1) Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com


LB Holdings Intermediate 1 Limited

By: _____

    A J P Brereton, as Director of LB
Holdings Intermediate 1 Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com


LB SF Warehouse Limited

By: _____

    A J P Brereton, as Director of LB SF
Warehouse Limited
<u>With notice to:</u>
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn:</u> Jeff Drew and Monika Kuzelova
<u>Email:</u> jdrew@reedsmith.com and
mkuzelova@reedsmith.com


*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

MBAM Investor Limited

By: _____
     A J P Brereton, as Director of MBAM
     Investor Limited
     With notice to:
     Reed Smith LLP
     The Broadgate Tower
     20 Primrose Street
     London
     EC2A 2RS
     Attn: Jeff Drew and Monika Kuzelova
     Email: jdrew@reedsmith.com and
     mkuzelova@reedsmith.com

Parkmetro Limited

By: _____
     A J P Brereton, as Director of
     Parkmetro Limited
     With notice to:
     Reed Smith LLP
     The Broadgate Tower
     20 Primrose Street
     London
     EC2A 2RS
     Attn: Jeff Drew and Monika Kuzelova
     Email: jdrew@reedsmith.com and
     mkuzelova@reedsmith.com

Preferred Holdings Limited

By: _____
     A J P Brereton, as Director of Preferred
     Holdings Limited
     With notice to:
     Reed Smith LLP
     The Broadgate Tower
     20 Primrose Street
     London
     EC2A 2RS
     Attn: Jeff Drew and Monika Kuzelova
     Email: jdrew@reedsmith.com and
     mkuzelova@reedsmith.com

Preferred Group Limited

By: _____
     A J P Brereton, as Director of Preferred
     Group Limited
     With notice to:
     Reed Smith LLP
     The Broadgate Tower
     20 Primrose Street
     London
     EC2A 2RS
     Attn: Jeff Drew and Monika Kuzelova
     Email: jdrew@reedsmith.com and
     mkuzelova@reedsmith.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Resetfan Limited

By: _____
A J P Brereton, as Director of Resetfan
Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

SM Funding No. 1 Limited

By: _____
A J P Brereton, as Director of SM
Funding No. 1 Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Southern Pacific Residuals 4 Limited

By: _____
A J P Brereton, as Director of Southern
Pacific Residuals 4 Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Southern Pacific Personal Loans Limited

By: _____
A J P Brereton, as Director of Southern
Pacific Personal Loans Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Stepstone Mortgage Funding Limited

By: _____

A J P Brereton, as Director of Stepstone
Mortgage Funding Limited

<u>With notice to</u>:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn</u>: Jeff Drew and Monika Kuzelova
<u>Email</u>: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

Yellow Real Estate Limited

By: _____

A J P Brereton, as Director of Yellow
Real Estate Limited

<u>With notice to</u>:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
<u>Attn</u>: Jeff Drew and Monika Kuzelova
<u>Email</u>: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Preferred Mortgages Limited

By: _____

Lee Brandon, as Director of Preferred
Mortgages Limited
St. Johns Place
Easton Street
High Wycombe. HP11 1NL
England
Email: brandons@talktalk.net

Southern Pacific Funding 3 Ltd.

By: _____

Lee Brandon. as Director of Southern
Pacific Funding 3 Ltd.
Level 23
25 Canada Square
London. E14 5LQ
United Kingdom
Email: brandons@talktalk.net

Southern Pacific Mortgage Ltd.

By: _____

Lee Brandon, as Director of
Southern Pacific Mortgage Ltd.
St. Johns Place
Easton Street
High Wycombe, HP11 1NL
England
Email: brandons@talktalk.net

Thayer Group Limited (in liquidation)

By: _D. Vemeus_____
     Nick Vermeulen, Joint Liquidator of
     Thayer Group Limited (in liquidation),
     acting as its agent and without personal
     liability
     PricewaterhouseCoopers CI LLP
     Twenty Two Colomberie
     St Helier
     Jersey, JE1 4XA
     United Kingdom
     Email: nick.vermeulen@gg.pwc.com

Thayer Properties (Jersey) Limited
(in liquidation)

By: _D. Vemeus_____
     Nick Vermeulen, Joint Liquidator of
     Thayer Properties (Jersey) Limited
     (in liquidation), acting as its agent and
     without personal liability
     PricewaterhouseCoopers CI LLP
     Twenty Two Colomberie
     St Helier
     Jersey, JE1 4XA
     United Kingdom
     Email: nick.vermeulen@gg.pwc.com

*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

Blue I Real Estate Limited

By: _____
Barry Porter, as Director of Blue I Real
Estate Limited
Lehman Brothers
Level 23
25 Canada Square
London E14 5LQ
Email: Barry.Porter@lbia-eu.com


Harley Property Ventures Limited

By: _____
Barry Porter, as Director of Harley
Property Ventures Limited
Lehman Brothers
Level 23
25 Canada Square
London E14 5LQ
Email: Barry.Porter@lbia-eu.com


Myra Sarl

By: _____
Barry Porter, as Manager of Myra Sarl
With notice to:
Alter Domus
5 rue Guillaume Kroll
L-1882
Luxembourg
Attn: Sandrine Klusa
Email:
Sandrine.Klusa@alterdomus.com


*[Signature page for Settlement Agreement among UK Affiliates and Debtors]*

**Proofs of Claim**

| Claim Number | UK Affiliate | Debtor |
| --- | --- | --- |
| 16524 | Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers OTC Derivatives Inc. |
| 16525 | Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers Holdings Inc. |
| 16527 | Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers Special Financing Inc. |
| 17067 | Blue I Real Estate Limited | Lehman Brothers Holdings Inc. |
| 14625 | Cherry Tree Mortgages Limited | Lehman Brothers Holdings Inc. |
| 23478 | Eldon Street (Cube) Limited | Lehman Commercial Paper Inc. |
| 42254 | Eldon Street (Cube) Limited | Lehman Brothers Holdings Inc. |
| 23481 | Eldon Street (Raven) Limited | Lehman Brothers Holdings Inc. |
| 14635 | Eldon Street Holdings Limited | Lehman Commercial Paper Inc. |
| 23484 | Eldon Street Holdings Limited | Lehman Brothers Holdings Inc. |
| 14621 | Grace Hotels Limited | Lehman Brothers Holdings Inc. |
| 23567 | Grace Hotels Limited | Lehman Commercial Paper Inc. |
| 17066 | Harley Property Ventures Limited | Lehman Brothers Holdings Inc. |
| 16522 | LB Holdings Intermediate 2 Limited | Lehman Brothers Holdings Inc. |
| 16519 | LB Lomond Investments | Lehman Brothers Holdings Inc. |
| 14618 | LB RE Financing No. 3 Limited | Lehman Brothers Holdings Inc. |
| 21520 | LB RE Financing No. 3 Limited | Lehman Brothers Special Financing Inc. |
| 14623 | LB SF No. 1 | Lehman Brothers Special Financing Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| 21525 | LB SF No. 1 | Lehman Brothers Holdings Inc. |
| 14616 | LB UK Financing Ltd | Lehman Brothers Holdings Inc. |
| 14617 | LB UK Re Holdings Limited | Lehman Brothers Commercial Corporation |
| 21524 | LB UK Re Holdings Limited | Lehman Brothers Holdings Inc. |
| 23566 | LB UK Re Holdings Limited | Lehman Brothers Special Financing Inc. |
| 23570 | LB UK Re Holdings Limited | Lehman Commercial Paper Inc. |
| 17071 | LB Yellow (No. 1) Limited | Lehman Brothers Holdings Inc. |
| 16518 | LBO Investments Limited | Lehman Brothers Holdings Inc. |
| 23483 | LBQ Funding (UK) | Lehman Brothers Holdings Inc. |
| 23563 | Lehman Brothers (Indonesia) Limited | Lehman Brothers Holdings Inc. |
| 14645 | Lehman Brothers (PTG) Limited | Lehman Commercial Paper Inc. |
| 23475 | Lehman Brothers (PTG) Limited | Lehman Brothers Holdings Inc. |
| 23482 | Lehman Brothers Equity (Nominees Number 7) Limited | Lehman Brothers Holdings Inc. |
| 14614 | Lehman Brothers Europe Limited | LB 745 LLC |
| 14620 | Lehman Brothers Europe Limited | Lehman Brothers OTC Derivatives Inc. |
| 14622 | Lehman Brothers Europe Limited | Lehman Brothers Special Financing Inc. |
| 14640 | Lehman Brothers Europe Limited | Lehman Commercial Paper Inc. |
| 14647 | Lehman Brothers Europe Limited | Lehman Brothers Commodity Services Inc. |
| 21519 | Lehman Brothers Europe Limited | Lehman Brothers Holdings Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| 23474 | Lehman Brothers Europe Limited | Lehman Brothers Commercial Corporation |
| 14012 | Lehman Brothers Holdings PLC | Lehman Brothers Holdings Inc. |
| 14016 | Lehman Brothers Holdings PLC | Lehman Commercial Paper Inc. |
| 21522 | Lehman Brothers Holdings PLC | Lehman Brothers Special Financing Inc. |
| 21516 | Lehman Brothers International (Europe) | Lehman Brothers Derivative Products Inc. |
| 21518 | Lehman Brothers International (Europe) | LB 745 LLC |
| 21521 | Lehman Brothers International (Europe) | Lehman Brothers Commodity Services Inc. |
| 21526 | Lehman Brothers International (Europe) | Lehman Commercial Paper Inc. |
| 21527 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 21528 | Lehman Brothers International (Europe) | Lehman Brothers OTC Derivatives Inc. |
| 21529 | Lehman Brothers International (Europe) | Lehman Brothers Commercial Corporation |
| 21530 | Lehman Brothers International (Europe) | Lehman Brothers Special Financing Inc. |
| 21532 | Lehman Brothers International (Europe) | Lehman Brothers Financial Products Inc. |
| 62779 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62780 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62781 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| 62783 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62784 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62785 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62786 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62787 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62788 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 62789 | Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. |
| 66831 | Lehman Brothers International (Europe) | Merit LLC |
| 14637 | Lehman Brothers Lease & Finance No. 1 Limited | Lehman Brothers Holdings Inc. |
| 14011 | Lehman Brothers Limited | Lehman Brothers Commodity Services Inc. |
| 14014 | Lehman Brothers Limited | LB 745 LLC |
| 14015 | Lehman Brothers Limited | Structured Asset Securities Corporation |
| 14017 | Lehman Brothers Limited | Lehman Brothers Commercial Corporation |
| 14038 | Lehman Brothers Limited | Lehman Brothers Financial Products Inc. |
| 14040 | Lehman Brothers Limited | Lehman Commercial Paper Inc. |
| 14041 | Lehman Brothers Limited | Lehman Brothers Derivative Products Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| 14388 | Lehman Brothers Limited | CES Aviation LLC |
| 16497 | Lehman Brothers Limited | BNC Mortgage LLC |
| 16498 | Lehman Brothers Limited | Lehman Brothers OTC Derivatives Inc. |
| 21523 | Lehman Brothers Limited | Lehman Brothers Holdings Inc. |
| 23477 | Lehman Brothers Limited | Lehman Brothers Special Financing Inc. |
| 14646 | Lehman Brothers UK Holdings Limited | Lehman Brothers Holdings Inc. |
| 14644 | Lehman Commercial Mortgage Conduit Limited | Lehman Brothers Holdings Inc. |
| 23480 | Lehman Commercial Mortgage Conduit Limited | Lehman Commercial Paper Inc. |
| 42255 | Lehman Commercial Mortgage Conduit Limited | Lehman Brothers Holdings Inc. |
| 14643 | Mable Commercial Funding Limited | Lehman Brothers Holdings Inc. |
| 14641 | Mable Commercial Funding Limited | Lehman Commercial Paper Inc. |
| 14624 | Mable Commercial Funding Limited | Lehman Brothers Special Financing Inc. |
| 16523 | MBAM Investor Limited | Lehman Brothers Holdings Inc. |
| 14636 | Monaco NPL (No. 1) Limited | Lehman Brothers Special Financing Inc. |
| 14619 | Monaco NPL (No. 1) Limited | Lehman Brothers Holdings Inc. |
| 14642 | Monaco NPL (No. 1) Limited | Lehman Commercial Paper Inc. |
| 23569 | Myra Sarl | Lehman Brothers Holdings Inc. |
| 16520 | Platform Commercial Mortgage | Lehman Brothers Holdings Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| | Limited | |
| 16521 | Platform Home Mortgage Securities No. 4 Limited | Lehman Brothers Holdings Inc. |
| 16494 | Preferred Mortgages Limited | Lehman Brothers Holdings Inc. |
| 17072 | Resetfan Limited | Lehman Brothers Holdings Inc. |
| 17068 | SM Funding No. 1 Limited | Lehman Brothers Holdings Inc. |
| 17062 | Southern Pacific Funding 3 Ltd. | Lehman Brothers Holdings Inc. |
| 17061 | Southern Pacific Mortgage Ltd. | Lehman Brothers Special Financing Inc. |
| 17073 | Southern Pacific Mortgage Ltd. | Lehman Brothers Holdings Inc. |
| 17069 | Stepstone Mortgage Funding Limited | Lehman Brothers Holdings Inc. |
| 62782 | Storm Funding Limited | Lehman Brothers Holdings Inc. |
| 14639 | Storm Funding Limited | Lehman Brothers Special Financing Inc. |
| 21517 | Storm Funding Limited | Lehman Brothers Holdings Inc. |
| 23473 | Storm Funding Limited | Lehman Commercial Paper Inc. |
| 23485 | Thayer Group Limited | Lehman Brothers Holdings Inc. |
| 23486 | Thayer Properties (Jersey) Limited | Lehman Commercial Paper Inc. |
| 23488 | Thayer Properties (Jersey) Limited | Lehman Brothers Holdings Inc. |
| 23476 | Thayer Properties Limited | Lehman Commercial Paper Inc. |
| 23487 | Thayer Properties Limited | Lehman Brothers Holdings Inc. |
| 17064 | Yellow Real Estate Limited | Lehman Brothers Holdings Inc. |
| 17070 | Yellow Real Estate Limited | Lehman Commercial Paper Inc. |
| 14615 | Zestdew Limited | Lehman Brothers Special Financing Inc. |

| Claim Number | UK Affiliate | Debtor |
|---|---|---|
| 14638 | Zestdew Limited | Lehman Brothers Holdings Inc. |

**Compromised Structured Securities**

REDACTED

**Certain LBCS Assets**

REDACTED

**LBHI/LBIE Assets**

| LBIE's ISIN Record | Position | LBIE's Annotation on Current Competing Claims |
|---|---|---|
| CUSIP - 1US453947 | 990,875 | no |
| FR0010351866 | 10 | yes |
| FR0010368878 | 10 | yes |
| FR0010368894 | 10 | yes |
| FR0010368902 | 10 | yes |
| FR0010368910 | 10 | yes |
| FR0010377341 | 10 | yes |
| FR0010395905 | 10 | yes |
| IE00B0T0GQ85 | 10000 | no |

**Certain LBSF/LBIE Assets**

REDACTED

**Certain LCPI/LBIE Assets**

| LBIE's ISIN Record | Position |
|---|---|
| CUSIP - 0011221D2 | 24,792 |
| CUSIP - 1DE288825 | 5,350 |
| 1NL077863 | 3,500,000 |

**Returned LBCS/LBIE Assets**

| LBIE's ISIN Record | Position |
|---|---|
| ANN5214T4335 | 75,000 |
| CH0036891189 | 965,000 |
| CH0036891197 | 630,000 |
| CH0036891247 | 556,000 |
| CH0039308678 | 280,000 |
| CH0043088670 | 505,000 |
| CH0043088704 | 815,000 |
| XS0246449440 | 3,390,000 |
| XS0259959962 | 340,000 |
| XS0267460359 | 215,000 |
| XS0272634535 | 100,000 |
| XS0276121307 | 9,330,000 |
| XS0276162327 | 157,000 |
| XS0278983191 | 70,000 |
| XS0280241851 | 50,000 |
| XS0291974664 | 2,300,000 |
| XS0292459327 | 289,000 |
| XS0293964002 | 40,000 |
| XS0295438369 | 1,422,000 |
| XS0296792582 | 2,450,000 |
| XS0299701655 | 450,000 |
| XS0303539273 | 431,000 |
| XS0306096628 | 2,000 |
| XS0308389807 | 183,000 |
| XS0309306651 | 200,000 |
| XS0310309785 | 20,000,000 |
| XS0311769219 | 279 |
| XS0312439556 | 43,000 |
| XS0314479337 | 1,570,000 |
| XS0314918276 | 2,969 |
| XS0320100323 | 400,000 |
| XS0320337685 | 160,000 |
| XS0321124801 | 1,370,000 |
| XS0322064840 | 200,000 |
| XS0323108265 | 949,000 |
| XS0323493584 | 1,391,000 |
| XS0323535418 | 974 |
| XS0323619600 | 10,145,000 |

| LBIE's ISIN Record | Position |
|---|---|
| XS0323619782 | 2,200,000 |
| XS0324841153 | 1,851,000 |
| XS0325477379 | 85,000 |
| XS0326046504 | 2,000,000 |
| XS0327723580 | 400,000 |
| XS0327774732 | 300,000 |
| XS0329715394 | 70,000 |
| XS0330889493 | 250,000 |
| XS0331533173 | 30 |
| XS0331533256 | 905,000 |
| XS0331533330 | 10,000 |
| XS0331566181 | 200,000 |
| XS0332526929 | 490,000 |
| XS0332675338 | 10,000 |
| XS0333420395 | 250,000 |
| XS0334205795 | 1,040,000 |
| XS0334494290 | 353 |
| XS0335137120 | 1,332 |
| XS0337407943 | 200,000 |
| XS0337763576 | 98,000 |
| XS0338071987 | 680,000 |
| XS0338072019 | 80,000 |
| XS0338078131 | 20,000 |
| XS0338483588 | 340,000 |
| XS0338685299 | 1,300,000 |
| XS0339532672 | 300,000 |
| XS0339537390 | 2,422,000 |
| XS0339537804 | 480,000 |
| XS0339538448 | 240,000 |
| XS0340076321 | 1,154 |
| XS0340756898 | 35,000 |
| XS0341730363 | 33,000 |
| XS0342097317 | 200,000 |
| XS0343610530 | 60,000 |
| XS0344537997 | 200,000 |
| XS0344556864 | 581,000 |
| XS0344557839 | 150,000 |
| XS0344583249 | 15,300,000 |
| XS0346007320 | 75,000 |
| XS0346438061 | 4,320,000 |
| XS0346461634 | 130,000 |
| XS0346707903 | 243,000 |

| LBIE's ISIN Record | Position |
|---|---|
| XS0347683400 | 100,000 |
| XS0348299180 | 50,000 |
| XS0349166917 | 363 |
| XS0349282151 | 442,000 |
| XS0350390406 | 389,000 |
| XS0351506257 | 100,000 |
| XS0351979587 | 11,000 |
| XS0353289472 | 200,000 |
| XS0353676082 | 103,000 |
| XS0353821860 | 1,170,000 |
| XS0354002577 | 103,000 |
| XS0356499052 | 174,000 |
| XS0357658672 | 660,000 |
| XS0361886699 | 3,000,000 |
| XS0362447558 | 701,000 |
| XS0363582460 | 20,000 |
| XS0365671121 | 2,000,000 |
| XS0366131497 | 10,000 |
| XS0366802964 | 25,000 |
| XS0371015750 | 81,000 |
| XS0373858249 | 57,000 |

**Schedule 8**

**Certain Surviving Contracts**

None.

# UK Affiliate Claims[1]

| Applicable UK Affiliate | Applicable Debtor | Claim Amount | Applicable Class |
|---|---|---|---|
| LB SF No. 1 | LBHI | $ 353,187 | 4B |
| LB SF No. 1 | LBHI | 2,875,036,779 | 4A |
| LB Holdings Intermediate 2 Limited | LBHI | 302,087,677 | 4B |
| LB Holdings Intermediate 2 Limited | LBHI | 2,683,033 | 4A |
| Lehman Brothers UK Holdings Limited | LBHI | 608,943,967 | 4B |
| Lehman Brothers UK Holdings Limited | LBHI | 10,645 | 4A |
| Lehman Brothers Limited | LBHI | 360,000,000 | 4B |
| Storm Funding Limited | LBHI | 148,127,123 | 4B |
| Storm Funding Limited | LBHI | 795,799,394 | 4A |
| Eldon Street Holdings Limited | LBHI | 28,565,323 | 4B |
| Eldon Street Holdings Limited | LBHI | 611,350,282 | 4A |
| Lehman Brothers Europe Limited | LBHI | 18,898,410 | 4B |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | LBHI | 9,454 | 4B |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | LBHI | 80,568,540 | 4A |
| Preferred Mortgages Limited | LBHI | 22,896,254 | 4B |
| Preferred Mortgages Limited | LBHI | 42,632,876 | 4A |
| Lehman Commercial Mortgage Conduit Limited | LBHI | 8,314,737 | 4B |
| MBAM Investor Limited | LBHI | 46,568,411 | 4B |
| MBAM Investor Limited | LBHI | 1,214,694 | 4A |
| Southern Pacific Mortgage Ltd. | LBHI | 48,442,147 | 4B |
| Southern Pacific Funding 3 Ltd. | LBHI | 35,450,774 | 4A |

[1] To the extent any pairing of a particular UK Affiliate and a particular Debtor is not set forth on this Schedule 9, such pairing shall be deemed to be included in this Schedule 9 as if such UK Affiliate were listed as the "Applicable UK Affiliate", such Debtor were listed as the "Applicable Debtor" and the relevant "Claim Amount" were listed as $0.

| Applicable UK Affiliate | Applicable Debtor | Claim Amount | Applicable Class |
|---|---|---|---|
| Mable Commercial Funding Limited | LBHI | 19,727,757 | 4B |
| Lehman Brothers (Indonesia) Limited | LBHI | 13,011,749 | 4B |
| Lehman Brothers (Indonesia) Limited | LBHI | 613,749 | 4A |
| Thayer Group Limited | LBHI | 7,494,450 | 4A |
| Lehman Brothers Equity (Nominees Number 7) Limited | LBHI | 4,158,067 | 4A |
| Eldon Street (Raven) Limited | LBHI | 2,297,221 | 4A |
| Grace Hotels Limited | LBHI | 3,149 | 4B |
| Grace Hotels Limited | LBHI | 1,649,083 | 4A |
| Zestdew Limited | LBHI | 1,580,988 | 4B |
| LBQ Funding (UK) | LBHI | 819,882 | 4A |
| Resetfan Limited | LBHI | 531,281 | 4A |
| Eldon Street (Cube) Limited | LBHI | 200,925 | 4B |
| Lehman Brothers Limited | LBSF | 3,698,368 | 5C |
| Storm Funding Limited | LBSF | 5,041,731 | 5C |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | LBSF | 16,715 | 5C |
| Zestdew Limited | LBSF | 3,390,693 | 5C |
| Monaco NPL (No. 1) Limited | LBSF | 2,951,633 | 5C |
| Lehman Brothers Holdings PLC | LBSF | 19,366,981 | 5C |
| Lehman Brothers Limited | LOTC | 52,756 | 5C |
| Lehman Brothers Europe Limited | LOTC | 25,642 | 5C |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | LOTC | 2,193 | 5C |
| Lehman Brothers Limited | LCPI | 2,501,392 | 5C |
| Storm Funding Limited | LCPI | 182,554,645 | 5C |
| Lehman Brothers Europe Limited | LCPI | 4,974,264 | 5C |
| Lehman Commercial Mortgage Conduit Limited | LCPI | 101,984,667 | 5C |
| Eldon Street (Cube) Limited | LCPI | 803,699 | 5C |
| LB UK Re Holdings Limited | LCPI | 8,585,062 | 5C |
| Thayer Properties Limited | LCPI | 13,360 | 5C |
| Lehman Brothers Holdings PLC | LCPI | 2,221,859 | 5C |
| Lehman Brothers Limited | Lehman Brothers Commercial Corporation | 139,764 | 5C |
| Lehman Brothers Limited | LBCS | 659,343 | 5C |

| Applicable UK Affiliate | Applicable Debtor | Claim Amount | Applicable Class |
|---|---|---:|---|
| Lehman Brothers Limited | Lehman Brothers Derivative Products Inc. | 44 | 4B |
| Lehman Brothers Limited | Lehman Brothers Financial Products Inc. | 623 | 4B |
| Lehman Brothers Limited | BNC Mortgage LLC | 26 | 4B |
| Lehman Brothers Limited | CES Aviation LLC | 1,556 | 4B |
| Lehman Brothers Limited | Structured Asset Securities Corporation | 61 | 4B |

## Other Debtor Claims[1]

| Applicable Debtor | Applicable UK Affiliate | Claim Amount |
|---|---|---|
| LBHI | LB UK Financing Ltd | $ 3,768,465,238 |
| LBHI | LB UK Re Holdings Limited | 781,605,210 |
| LBHI | Thayer Properties Limited | 261,674,213 |
| LBHI | Lehman Brothers (PTG) Limited | 269,512,581 |
| LBHI | Lehman Brothers Lease & Finance No. 1 Limited | 192,469,432 |
| LBHI | Monaco NPL (No. 1) Limited | 100,992,542 |
| LBHI | Yellow Real Estate Limited | 88,993,258 |
| LBHI | Lehman Brothers Holdings PLC | 63,893,551 |
| LBHI | Thayer Properties (Jersey) Limited | 15,336,338 |
| LBHI | Platform Commercial Mortgage Limited | 4,781,487 |
| LBHI | SM Funding No. 1 Limited | 4,566,235 |
| LBHI | Cherry Tree Mortgages Limited | 1,192,799 |
| LBHI | Stepstone Mortgage Funding Limited | 987,745 |
| LBHI | Platform Home Mortgage Securities No. 4 Limited | 852,342 |
| LBHI | LBO Investments Limited | 561,348 |
| LBHI | LB Lomond Investments | 79,945 |
| LBSF | LB RE Financing No. 3 Limited | 574,772,981 |
| LBSF | LB SF No. 1 | 1,859,029 |
| LBSF | Lehman Brothers Europe Limited | 694,125 |
| LBSF | Southern Pacific Mortgage Ltd. | 121,133 |
| LBSF | Mable Commercial Funding Limited | 14,566 |
| LBSF | LB UK Re Holdings Limited | 23,991,719 |
| LCPI | Mable Commercial Funding Limited | 3,196,376 |
| LCPI | Thayer Properties (Jersey) Limited | 19,154 |
| LCPI | Grace Hotels Limited | 260,000 |
| LCPI | Lehman Brothers (PTG) Limited | 9,547 |
| LCPI | Monaco NPL (No. 1) Limited | 8,470 |
| Lehman Brothers Commercial Corporation | LB UK Re Holdings Limited | 11,579 |
| LBCS | Lehman Brothers Europe Limited | 5,285,576 |
| LB 745 | Lehman Brothers Limited | 429,883 |

---

[1] To the extent any pairing of a particular Debtor and a particular UK Affiliate is not set forth on this Schedule 10, such pairing shall be deemed to be included in this Schedule 10 as if such Debtor were listed as the "Applicable Debtor", such UK Affiliate were listed as the "Applicable UK Affiliate" and the relevant "Claim Amount" were listed as $0.

**Exhibit A**

**Claim Reserve Agreement**

# CLAIM RESERVE AGREEMENT

This Claim Reserve Agreement (this "**Agreement**") is made and entered into as of October 24, 2011 by and among the Debtors,[1] the UK Administration Companies[2] (acting by their joint administrators, Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell, collectively, the "**Joint Administrators**"),[3] the UK Liquidation Companies[4] (acting by their joint liquidators Derek Anthony Howell and Ian Oakley-Smith, collectively, the "**Joint Liquidators**")[5] and the Other UK Affiliates[6] (the UK Administration Companies, acting by their Joint

---

[1] As used herein, "**Debtors**" means Lehman Brothers Holdings Inc.; Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l.; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

[2] As used herein, "**UK Administration Companies**" means Lehman Brothers International (Europe); Lehman Brothers Limited; Lehman Brothers Holdings PLC; LB UK Re Holdings Limited; Storm Funding Limited; Mable Commercial Funding Limited; Lehman Brothers Europe Limited; Lehman Brothers UK Holdings Limited; LB SF No. 1; Zestdew Limited; Monaco NPL (No. 1) Limited; Lehman Commercial Mortgage Conduit Limited; Eldon Street Holdings Limited; LB Holdings Intermediate 2 Limited; and Thayer Properties Limited (each in administration).

[3] A reference to the Joint Administrators shall be construed as being to the Joint Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Joint Administrators.

[4] As used herein, "**UK Liquidation Companies**" means Eldon Street (Raven) Limited; Lehman Brothers Equity (Nominees Number 7) Limited; Lehman Brothers (Indonesia) Limited; Grace Hotels Limited; and LBQ Funding (UK) (each in liquidation).

[5] A reference to the Joint Liquidators shall be construed as being to the Joint Liquidators both jointly and severally and to any other person who is appointed as a liquidator in substitution for any liquidator or as an additional liquidator in conjunction with the Joint Liquidators.

[6] As used herein, "**Other UK Affiliates**" means Acenden Limited (f/k/a Capstone Mortgage Services Limited); MBAM Investor Limited; Preferred Mortgages Limited; Resetfan Limited; Southern Pacific Funding 3 Ltd.; Southern Pacific Mortgage Ltd.; Thayer Group Limited (in liquidation) ("**Thayer Group**") (acting by its joint liquidators, Nick Vermeulen and Mark James, collectively, the "**Thayer Group Liquidators**"); and Thayer Properties (Jersey) Limited (in liquidation) ("**Thayer Properties**") (acting by its joint liquidators, Nick Vermeulen and Mark James, the "**Thayer Properties Liquidators**" and together with the Thayer Group Liquidators, the "**Thayer Liquidators**").

Administrators, the UK Liquidation Companies, acting by their Joint Liquidators, and the Other UK Affiliates, collectively, the "**UK Affiliates**"). The Debtors and the UK Affiliates shall each be referred to individually as a "**Party**" and collectively as the "**Parties**."

**RECITALS**

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "**Chapter 11 Cases**" and each a "**Chapter 11 Case**");

WHEREAS, on September 15, 2008 and on various dates thereafter, the UK Administration Companies entered English administration proceedings pursuant to the English Insolvency Act 1986 and the UK Liquidation Companies entered liquidation in the UK (collectively, the "**UK Proceedings**");

WHEREAS, the Joint Administrators were appointed as the joint administrators of the Administration Companies and the Joint Liquidators were appointed as the joint liquidators of the Liquidation Companies;

WHEREAS, on Thayer Group and Thayer Properties (collectively, the "**Thayer Liquidation Companies**") have entered liquidation proceedings in Jersey, United Kingdom and the Thayer Liquidators were appointed as the liquidators of the Thayer Liquidation Companies; and

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 19627] (the "**Current Plan**" and as amended, modified or supplemented by the Debtors from time to time, the "**Plan**");

WHEREAS, pursuant to Section 8.4 of the Current Plan, the Debtors may establish reserves on account of any Disputed Claim (as defined in the Current Plan) based upon an amount as may be agreed upon by the holder of such Disputed Claim and the Plan Administrator (as defined in the Current Plan); and

WHEREAS, the Parties have reached an agreement in principle resolving claims between the Debtors and the UK Affiliates, and are currently negotiating a Settlement Agreement with respect thereto (the "**Settlement Agreement**");

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

ARTICLE 1

<small>DEFINITIONS</small>

Section 1.01.    Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

(a)    "**Alternative Plan**" means any chapter 11 plan filed in the Chapter 11 Cases that is neither proposed nor supported (directly or indirectly) by any of the Debtors.

(b)    "**Applicable Class**" means, for any claim of any UK Affiliate against any Debtor, (i) with respect to the Current Plan, the "Class" (as defined in the Current Plan) set forth in Schedule 1 hereto for which such UK Affiliate is designated the "Applicable UK Affiliate" and such Debtor is designated the "Applicable Debtor" and (ii) with respect to any Confirmed Plan (other than the Current Plan), the category of claims that each applicable UK Affiliate and the applicable Debtor determine in good faith is most similarly situated to the "Class" (as defined in the Current Plan) set forth in Schedule 1 hereto for which such UK Affiliate is designated the "Applicable UK Affiliate" and such Debtor is designated the "Applicable Debtor".

(c)    "**Bankruptcy Code**" has the meaning ascribed to it in the Recitals.

(d)    "**Bankruptcy Court**" has the meaning ascribed to it in the Recitals.

(e)    "**Business Day**" means any day that is not a Saturday, Sunday or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the State of New York or the United Kingdom.

(f)    "**Chapter 11 Cases**" has the meaning ascribed to it in the Recitals.

(g)    "**Confirmed Plan**" means the Plan or any other chapter 11 plan for the Debtors (other than an Alternative Plan) that is confirmed by the Bankruptcy Court.

(h)    "**Current Plan**" has the meaning ascribed to it in the Recitals.

(i)    "**Debtors**" has the meaning ascribed to it in the Preamble.

(j)    "**Final Order**" means an order of the Bankruptcy Court or any other court of competent jurisdiction (i) that is in full force and effect, (ii) is not reversed or vacated and (iii) as to which the time to appeal, petition for certiorari, and move for reargument or rehearing has expired and (1) as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or (2) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been timely sought, such appeal, writ of certiorari, or

reargument or rehearing shall have been withdrawn, denied or resolved by the highest court to which such order was appealed or from which certiorari, rehearing or reargument was sought; *provided* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or applicable law, may be filed with respect to such order shall not prevent such order from being a Final Order.

(k) "**Joint Administrators**" has the meaning ascribed to it in the Preamble.

(l) "**Joint Liquidators**" has the meaning ascribed to it in the Preamble.

(m) "**Other UK Affiliates**" has the meaning ascribed to it in the Preamble.

(n) "**Party**" has the meaning ascribed to it in the Preamble.

(o) "**Plan**" has the meaning ascribed to it in the Preamble.

(p) "**Reserve Amount**" means, for any claim of any UK Affiliate against any Debtor, the amount, if any, set forth in Schedule 1 hereto for which such UK Affiliate is designated the "Applicable UK Affiliate" and such Debtor is designated the "Applicable Debtor".

(q) "**Thayer Group**" has the meaning ascribed to it in the Preamble.

(r) "**Thayer Group Liquidators**" has the meaning ascribed to it in the Preamble.

(s) "**Thayer Liquidation Companies**" has the meaning ascribed to it in the Recitals.

(t) "**Thayer Liquidators**" has the meaning ascribed to it in the Preamble.

(u) "**Thayer Properties**" has the meaning ascribed to it in the Preamble.

(v) "**Thayer Properties Liquidators**" has the meaning ascribed to it in the Preamble.

(w) "**UK Administration Companies**" has the meaning ascribed to it in the Preamble.

(x) "**UK Affiliates**" has the meaning ascribed to it in the Preamble.

(y) "**UK Liquidation Companies**" has the meaning ascribed to it in the Preamble.

(z)    "**UK Proceedings**" has the meaning ascribed to it in the Recitals.

ARTICLE 2
RESERVES

Section 2.01.    Notwithstanding any provision of any Confirmed Plan or any confirmation order with respect thereto, the Debtors shall hold in reserve, under any Confirmed Plan and at all times, an amount not less than the cumulative amount that would have been distributed to each applicable UK Affiliate were each such UK Affiliate to have held allowed claims against each applicable Debtor as of the effective date of such Confirmed Plan (i) in the Applicable Class and (ii) in an amount equal to the applicable Reserve Amount, which reserve shall be available solely for the benefit of the applicable UK Affiliate unless and until (and only to the extent that) it is subsequently determined by Final Order of a court of competent jurisdiction that such UK Affiliate's allowed claims against the applicable Debtor are less than the applicable Reserve Amount.

ARTICLE 3
EFFECTIVENESS OF AGREEMENT; TERMINATION

Section 3.01.    This Agreement shall be effective as of the date first written above.

Section 3.02.    This Agreement shall automatically terminate on the earlier of (i) the date that the Settlement Agreement becomes effective in accordance with its terms or (ii) any date on which the Bankruptcy Court enters an order confirming an Alternative Plan pursuant to section 1129 of the Bankruptcy Code.

ARTICLE 4
VENUE AND CHOICE OF LAW

Section 4.01.    *Venue.*    To the maximum extent permissible by law, the Parties expressly consent and submit to the jurisdiction of the Bankruptcy Court solely over any actions or proceedings relating to the enforcement or interpretation of this Agreement.    Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.    Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection that it may now or hereafter have to the laying of venue of any such suit, action or proceeding with the Bankruptcy Court or with any other federal court located within the Southern District of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or

proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Article 5 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

Section 4.02. *Choice of Law.* This Agreement and all claims and disputes relating to the construction or application of the terms of this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code.

ARTICLE 5
NOTICES

All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day or (c) when sent by an internationally recognized courier, specifying next day delivery, upon written confirmation of delivery by such courier. All communications shall be sent:

If to any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: Daniel J. Ehrmann
Facsimile: (646) 834-0874
Email: dehrmann@alvarezandmarsal.com

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife and Robert J. Lemons
Facsimile: (212) 310-8007
Email: lori.fife@weil.com and robert.lemons@weil.com

<u>If to any UK Affiliate at</u>:

The address(es) set forth in the applicable UK Affiliate's signature page hereto, with a copy (which shall not constitute notice) to:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
U.S.A.
Attn: Marshall S. Huebner and Brian M. Resnick
Facsimile: (212) 701-5800
Email: marshall.huebner@davispolk.com and
      brian.resnick@davispolk.com

and

Linklaters LLP
One Silk Street
London
EC2Y 8HQ
United Kingdom
Attn: Richard Holden and Titia Holtz
Facsimile: +44 20 7456 2222
Email: richard.holden@linklaters.com and
      titia.holtz@linklaters.com

or to such other address(es) as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

## ARTICLE 6
### No Admission of Liability

Each Party acknowledges that this Agreement in part addresses potential claims, counterclaims and factual allegations that are in whole or in part denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing or with respect to any disputed fact. Without limiting the generality of the foregoing, the amount of any Reserve Amount or the failure of any Reserve Amount to be set forth in Schedule 1 hereto for any particular UK Affiliate shall not (i) impair or prejudice the rights, positions, claims or obligations of any Party or (ii) be used as evidence by or against any Party, in each case, in any litigation in connection with the merits of the claims (or the amounts thereof) that the Parties may have against one another.

## ARTICLE 7
### ENTIRE AGREEMENT

This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.    This Agreement supersedes and replaces any and all prior or contemporaneous oral or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts or inconsistencies between any Confirmed Plan and the terms of this Agreement, the terms of this Agreement shall control.    The Parties acknowledge that this Agreement is not being executed in reliance on any oral or written agreement, promise or representation not contained herein.


## ARTICLE 8
### NO ORAL MODIFICATIONS

This Agreement may not be modified or amended orally.    This Agreement may be modified or amended only by a writing signed by a duly authorized representative of each affected Party hereto.    Any waiver of compliance with any term or provision of this Agreement on the part of any of the Debtors must be provided in a writing signed by each affected UK Affiliate. Any waiver of compliance with any term or provision of this Agreement on the part of any of the UK Affiliates must be provided in a writing signed by each affected Debtor.    No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.    No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.


## ARTICLE 9
### CONSTRUCTION

This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.


## ARTICLE 10
### BINDING EFFECT; SUCCESSOR AND ASSIGNS

Any declaration or statement of any Joint Administrator, Joint Liquidator or Thayer Liquidator shall be made only in his capacity and function as a Joint Administrator, Joint Liquidator or Thayer Liquidator, as applicable, of the relevant UK Affiliate, and shall in no circumstance be construed as being a

declaration or statement of such Joint Administrator, Joint Liquidator or Thayer Liquidator on his own and personal behalf. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors (including any chapter 7 trustees that may be appointed upon or after conversion of any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy Code or any party that may succeed to the rights or claims of any of the Debtors or their estates, derivatively or otherwise, and including any liquidators that may be appointed upon or after conversion of any administration of any UK Administration Company into liquidations) and permitted assigns; *provided*, *however*, that no Party may assign its rights or obligations under this Agreement without the written consent of each other affected Party, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.


## ARTICLE 11
### COUNTERPARTS

This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart.


## ARTICLE 12
### NO PERSONAL LIABILITY

The Joint Administrators, the Joint Liquidators and the Thayer Liquidators act as agents for and on behalf of the UK Administration Companies the UK Liquidation Companies and the Thayer Liquidation Companies, respectively, and neither they, their firm, members, partners, directors, officers, employees, agents, advisers or representatives shall incur any personal liability whatsoever in respect of any of the obligations undertaken by any of the UK Administration Companies, UK Liquidation Companies or Thayer Liquidation Companies or in respect of any failure on the part of any of the UK Administration Companies, UK Liquidation Companies or Thayer Liquidation Companies to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or under any document or assurance made pursuant hereto. The exclusion of liability set out in this paragraph shall arise and continue notwithstanding the termination of the agency of any of the Joint Administrators, Joint Liquidators or Thayer Liquidators and shall operate as a waiver of any claims in tort as well as under the laws of contract and any claims otherwise at law or in equity. The Joint Administrators', the Joint Liquidators' and the Thayer Liquidators' firm, members, partners, directors, officers, employees, agents, advisers and representatives are express third-party beneficiaries hereunder and may enforce and rely on this paragraph, to the same extent as if they or it were a party. Each Party accepts and agrees that this Agreement and

all transactions and measures contained herein do not give rise to any personal liability on the part of any of the officers, directors, employees, members, consultants, agents, asset managers, representatives or professional advisors of any other Party and, to the extent any such personal liability existed, each Party explicitly waives any and all potential rights and claims against all of the aforementioned persons.   Any claim by a Party against any of the Joint Administrators, Joint Liquidators, Thayer Liquidators, UK Administration Companies, UK Liquidation Companies or Thayer Liquidation Companies arising under, related to, or connected with this Agreement shall be satisfied only out of the assets of the estate of the applicable UK Administration Company, UK Liquidation Company or Thayer Liquidation Company, and any claim by a Party against a Debtor arising under, related to, or connected with this Agreement shall only be satisfied out of the assets of such Debtor.

## ARTICLE 13
### NON-SEVERABILITY

Each of the provisions of this Agreement is an integrated, essential and non-severable part of this Agreement.   If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to the Parties.   Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each Party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

## ARTICLE 14
### WAIVER OF JURY TRIAL

EACH OF THE PARTIES HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO

THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES IS HEREBY AUTHORIZED TO FILE A COPY OF THIS ARTICLE 14 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI
STATLER ARMS LLC, CES AVIATION
LLC, CES AVIATION V LLC, CES
AVIATION IX LLC, LEHMAN SCOTTISH
FINANCE L.P., BNC MORTGAGE LLC, LB
ROSE RANCH LLC, STRUCTURED
ASSET SECURITIES CORPORATION, LB
2080 KALAKAUA OWNERS LLC, MERIT
LLC, LB PREFERRED SOMERSET LLC,
LB SOMERSET LLC, as Debtors and
Debtors in Possession

By: _____

Name:   John Suckow

Title:   Authorized Signatory

LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST
DOVER LIMITED, LUXEMBOURG
RESIDENTIAL PROPERTIES LOAN
FINANCE S.A.R.L., as Debtors and Debtors
in Possession

By: _____

Name:   Daniel Ehrmann

Title:   Authorized Signatory

*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

Lehman Brothers International (Europe)
(in administration)

By: _____

Anthony V. Lomas, Joint
Administrator of Lehman Brothers
Europe Limited (in administration),
acting as its agent and without
personal liability
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: tony.lomas@uk.pwc.com

Mable Commercial Funding Limited
(in administration)

By: _____

Dan Y. Schwarzmann, Joint
Administrator of Mable Commercial
Funding Limited (in administration),
acting as its agent and without personal
liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com


Storm Funding Limited
(in administration)

By: _____

Dan Y. Schwarzmann, Joint
Administrator of Storm Funding
Limited (in administration), acting as
its agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com


LB UK Re Holdings Limited
(in administration)

By: _____

Dan Y. Schwarzmann, Joint
Administrator of LB UK Re Holdings
Limited (in administration), acting as its
agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com


Lehman Brothers Europe Limited
(in administration)

By: _____

Dan Y. Schwarzmann, Joint
Administrator of Lehman Brothers
Europe Limited (in administration),
acting as its agent and without personal
liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: dan.schwarzmann@uk.pwc.com


*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

Lehman Brothers Limited
(in administration)

By:    ~~M~~ _(signature)_

Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
Limited (in administration), acting as
its agent and without personal liability
7 More London
Riverside, London, SE1 2RT
United Kingdom
Email: mike.jervis@uk.pwc.com

Lehman Brothers UK Holdings Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Lehman Brothers UK
Holdings Limited (in administration),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Monaco NPL (No. 1) Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Monaco NPL (No. 1)
Limited (in administration), acting as
its agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Lehman Commercial Mortgage Conduit
Limited (in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Lehman Commercial
Mortgage Conduit Limited
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Thayer Properties Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Thayer Properties
Limited (in administration), acting as
its agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

Zestdew Limited (in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Zestdew Limited
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Eldon Street Holdings Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Eldon Street Holdings
Limited (in administration), acting as its
agent and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com


LB SF No. 1 (in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of LB SF No. 1
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com


LB Holdings Intermediate 2 Limited
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of LB Holdings
Intermediate 2 Limited
(in administration), acting as its agent
and without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com


Lehman Brothers Holdings PLC
(in administration)

By: _____

Michael J. A. Jervis, Joint
Administrator of Lehman Brothers
Holdings PLC (in administration),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com


*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

Eldon Street (Raven) Limited
(in liquidation)

By: _____

Ian Oakley-Smith, Joint Liquidator of
Eldon Street (Raven) Limited
(in liquidation), acting as its agent and
without personal liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

LBQ Funding (UK) (in liquidation)

By: _____

Ian Oakley-Smith, Joint Liquidator of
LBQ Funding (UK) (in liquidation),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Grace Hotels Limited (in liquidation)

By: _____

Ian Oakley-Smith, Joint Liquidator of
Grace Hotels Limited (in liquidation),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Lehman Brothers Equity (Nominees
Number 7) Limited (in liquidation)

By: _____

Ian Oakley-Smith, Joint Liquidator of
Lehman Brothers Equity (Nominees
Number 7) Limited (in liquidation),
acting as its agent and without personal
liability
With notice to:
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
Email: derek.a.howell@uk.pwc.com

Lehman Brothers (Indonesia) Limited
(in liquidation)

By: _____

Ian Oakley-Smith, Joint Liquidator of
Lehman Brothers (Indonesia) Limited
(in liquidation), acting as its agent and
without personal liability
<u>With notice to:</u>
Derek A. Howell
Level 23
25 Canada Square
London, E14 5LQ
United Kingdom
<u>Email:</u> derek.a.howell@uk.pwc.com

Acenden Limited (f/k/a Capstone Mortgage
Services Limited)

By: _____
     Amany Attia, as Director of Acenden
     Limited (f/k/a Capstone Mortgage
     Services Limited)
     Acenden Limited
     4th Floor
     22-25 Finsbury Square
     London EC2A 1DX
     United Kingdom
     Email: Amany.Attia@acenden.com

Acenden Limited (f/k/a Capstone Mortgage
Services Limited)

By: _____

Jeff Lundgren, as Director of Acenden
Limited (f/k/a Capstone Mortgage
Services Limited)
Acenden Limited
4th Floor
22-25 Finsbury Square
London EC2A 1DX
United Kingdom
Email: Jeff.Lundgren@acenden.com

Preferred Mortgages Limited

By: _____
     Lee Brandon, as Director of Preferred
     Mortgages Limited
     St. Johns Place
     Easton Street
     High Wycombe, HP11 1NL
     England
     Email: brandons@talktalk.net

Southern Pacific Funding 3 Ltd.

By: _____
     Lee Brandon, as Director of Southern
     Pacific Funding 3 Ltd.
     Level 23
     25 Canada Square
     London, E14 5LQ
     United Kingdom
     Email: brandons@talktalk.net

Southern Pacific Mortgage Ltd.

By: _____
     Lee Brandon, as Director of
     Southern Pacific Mortgage Ltd.
     St. Johns Place
     Easton Street
     High Wycombe, HP11 1NL
     England
     Email: brandons@talktalk.net

*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

Thayer Group Limited (in liquidation)

By: _____
Nick Vermeulen, Joint Liquidator of
Thayer Group Limited (in liquidation),
acting as its agent and without personal
liability
PricewaterhouseCoopers CI LLP
Twenty Two Colomberie
St Helier
Jersey, JE1 4XA
United Kingdom
Email: nick.vermeulen@gg.pwc.com

Thayer Properties (Jersey) Limited
(in liquidation)

By: _____
Nick Vermeulen, Joint Liquidator of
Thayer Properties (Jersey) Limited
(in liquidation), acting as its agent and
without personal liability
PricewaterhouseCoopers CI LLP
Twenty Two Colomberie
St Helier
Jersey, JE1 4XA
United Kingdom
Email: nick.vermeulen@gg.pwc.com

*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

MBAM Investor Limited

By: _____

A J P Brereton, as Director of MBAM
Investor Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com


Resetfan Limited

By: _____

A J P Brereton, as Director of Resetfan
Limited
With notice to:
Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London
EC2A 2RS
Attn: Jeff Drew and Monika Kuzelova
Email: jdrew@reedsmith.com and
mkuzelova@reedsmith.com

*[Signature page for Claim Reserve Agreement among UK Affiliates and Debtors]*

## Schedule 1

### Reserve Amounts

| Applicable UK Affiliate | Applicable Debtor | Amount | Applicable Class |
|---|---|---|---|
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers Holdings Inc. | $84,007,466 | 4A |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers Holdings Inc. | $19,300 | 4B |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers OTC Derivatives Inc. | $2,292 | 5C |
| Acenden Limited (f/k/a Capstone Mortgage Services Limited) | Lehman Brothers Special Financing Inc. | $17,047 | 5C |
| Eldon Street (Raven) Limited | Lehman Brothers Holdings Inc. | $2,300,000 | 4A |
| Eldon Street Holdings Limited | Lehman Brothers Holdings Inc. | $57,130,000 | 4B |
| Eldon Street Holdings Limited | Lehman Brothers Holdings Inc. | $611,400,000 | 4A |
| Grace Hotels Limited | Lehman Brothers Holdings Inc. | $1,650,000 | 4A |
| Grace Hotels Limited | Lehman Brothers Holdings Inc. | $4,500 | 4B |
| Lehman Brothers Equity (Nominees Number 7) Limited | Lehman Brothers Holdings Inc. | $4,200,000 | 4A |
| LB Holdings Intermediate 2 Limited | Lehman Brothers Holdings Inc. | $2,309,300,000 | 4B |
| LB Holdings Intermediate 2 Limited | Lehman Brothers Holdings Inc. | $2,700,000 | 4A |
| LB SF No. 1 | Lehman Brothers Holdings Inc. | $505,000 | 4B |
| LB SF No. 1 | Lehman Brothers Holdings Inc. | $2,875,036,779 | 4A |
| LB UK Re Holdings Limited | Lehman Commercial Paper Inc. | $46,940,663 | 5C |
| LBQ Funding (UK) | Lehman Brothers Holdings Inc. | $820,000 | 4A |
| Lehman Brothers (Indonesia) Limited | Lehman Brothers Holdings Inc. | $18,600,000 | 4B |
| Lehman Brothers (Indonesia) Limited | Lehman Brothers Holdings Inc. | $614,000 | 4A |
| Lehman Brothers Europe Limited | Lehman Brothers Holdings Inc. | $224,162,000 | 4B |
| Lehman Brothers Europe Limited | Lehman Commercial Paper Inc. | $5,000,000 | 5C |
| Lehman Brothers Europe Limited | Lehman Brothers OTC Derivatives Inc. | $26,000 | 5C |
| Lehman Brothers Europe Limited | Lehman Brothers Commercial Corporation | $260 | 5C |

| Applicable UK Affiliate | Applicable Debtor | Amount | Applicable Class |
|---|---|---|---|
| Lehman Brothers Holdings PLC | Lehman Brothers Holdings Inc. | $2,200,000 | 4B |
| Lehman Brothers Holdings PLC | Lehman Commercial Paper Inc. | $2,222,000 | 5C |
| Lehman Brothers International (Europe) | Lehman Brothers Commercial Corporation | $300,000,000 | 5C |
| Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc. | $6,090,000,000 | 4B |
| Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc.[7] | $1,008,000,000 | 4B |
| Lehman Brothers International (Europe) | Lehman Brothers Holdings Inc.[8] | $1,500,000,000 | 4B |
| Lehman Brothers International (Europe) | Lehman Brothers OTC Derivatives Inc. | $75,000,000 | 5C |
| Lehman Brothers International (Europe) | Lehman Brothers Special Financing Inc. | $5,000,000,000 | 5C |
| Lehman Brothers Limited | Lehman Brothers Commercial Corporation | $139,764 | 5C |
| Lehman Brothers Limited | Lehman Brothers Commodity Services Inc. | $888,000 | 5C |
| Lehman Brothers Limited | Lehman Brothers Holdings Inc. | $1,450,100,000 | 4B |
| Lehman Brothers Limited | Lehman Brothers Holdings Inc. | $400,000 | 4A |
| Lehman Brothers Limited | Lehman Brothers OTC Derivatives Inc. | $52,756 | 5C |
| Lehman Brothers Limited | Lehman Brothers Special Financing Inc. | $3,700,000 | 5C |
| Lehman Brothers Limited | Lehman Commercial Paper Inc. | $2,501,392 | 5C |
| Lehman Brothers UK Holdings Limited | Lehman Brothers Holdings Inc. | $1,937,900,000 | 4B |
| Lehman Brothers UK Holdings Limited | Lehman Brothers Holdings Inc. | $10,645 | 4A |
| Lehman Commercial Mortgage Conduit Limited | Lehman Commercial Paper Inc. | $101,985,000 | 5C |
| Lehman Commercial Mortgage Conduit Limited | Lehman Brothers Holdings Inc. | $92,100,000 | 4B |
| Mable Commercial Funding Limited | Lehman Brothers Holdings Inc. | $42,190,000 | 4B |
| MBAM Investor Limited | Lehman Brothers Holdings Inc. | $93,137,000 | 4B |
| MBAM Investor Limited | Lehman Brothers Holdings Inc. | $1,214,000 | 4A |
| Monaco NPL (No. 1) Limited | Lehman Brothers Special Financing Inc. | $3,000,000 | 5C |
| Preferred Mortgages Limited | Lehman Brothers Holdings Inc. | $32,709,000 | 4B |
| Preferred Mortgages Limited | Lehman Brothers Holdings Inc. | $42,633,000 | 4A |

[7] On account of the guarantee of LBIE's Bankhaus Claim.

[8] On account of LPS Trust Claims.

| Applicable UK Affiliate | Applicable Debtor | Amount | Applicable Class |
|---|---|---|---|
| Resetfan Limited | Lehman Brothers Holdings Inc. | $531,281 | 4A |
| Southern Pacific Funding 3 Ltd. | Lehman Brothers Holdings Inc. | $35,500,000 | 4A |
| Southern Pacific Mortgage Ltd. | Lehman Brothers Holdings Inc. | $69,200,000 | 4B |
| Storm Funding Limited | Lehman Brothers Holdings Inc. | $896,339,000 | 4B |
| Storm Funding Limited | Lehman Brothers Holdings Inc. | $810,903,934 | 4A |
| Storm Funding Limited | Lehman Commercial Paper Inc. | $182,820,000 | 5C |
| Thayer Group Limited | Lehman Brothers Holdings Inc. | $7,500,000 | 4A |
| Thayer Properties (Jersey) Limited | Lehman Brothers Holdings Inc. | $22,663,000 | 4B |
| Thayer Properties Limited | Lehman Commercial Paper Inc. | $13,400 | 5C |
| Zestdew Limited | Lehman Brothers Holdings Inc. | $3,253,000 | 4B |
| Zestdew Limited | Lehman Brothers Special Financing Inc. | $3,391,000 | 5C |

**Exhibit B**

**Form of LBJ Settlement Agreement**

October 24, 2011

Lehman Brothers Japan Inc.
Kishimoto Bldg., 9th Floor
2-2-1 Marunouchi, Chivoda-ku
Tokyo 100-0005
Japan

Lehman Brothers International (Europe) (in administration)
Level 23.25 Canada Square
London E14 5LQ

Re:     Release of Certain Claims in Connection with Certain Japanese Government Bonds

Ladies and Gentlemen:

This letter agreement (the "Letter Agreement") is made and entered into by and among Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Japan Inc. ("LBJ"), and Lehman Brothers International (Europe) ("LBIE"), each of which shall be referred to individually as a "Party" and collectively as the "Parties."  Reference is made to the Japanese government bonds listed on Appendix 1 attached hereto (the "Japanese Government Bonds").

Prior to the commencement of the chapter 11 cases of LBHI and its affiliated debtors, LBSF financed the purchase of the Japanese Government Bonds via LBJ.  There were a series of intercompany transactions among LBSF, LBIE, and LBJ involving the Japanese Government Bonds, which transactions were recorded on the relevant Parties' prepetition books and records (collectively, the "Intercompany Transactions").  As of September 12, 2008, the Parties may hold (i) direct or guarantee claims against one another for the right to recover the Japanese Government Bonds or the full value of the Japanese Government Bonds, including, without limitation, on the basis of actual or constructive trust, lien, or other security interest in the Japanese Government Bonds or any other legal or equitable cause of action that would entitle any Party to recovery of the full value of the Japanese Government Bonds (collectively, the "JGB Claims") and (ii) direct or guarantee claims against one another for other amounts owing which arise under the Intercompany Transactions, including any right to setoff, netting, or recoupment.

In order to facilitate a resolution and settlement of all of the claims, rights, and defenses against each other, the Parties have agreed that it is in their mutual interest to release any and all JGB Claims they may have against each other Party in accordance with the following terms, provisions, and conditions:

1.      Upon the Effective Date (as defined below), each Party on behalf of itself, its estate, its successors and assigns, and any other party, person, or entity claiming under

or through it, hereby generally releases, discharges, waives and acquits, unconditionally and irrevocably, each other Party and its respective current and former agents, servants, officers, directors, employees, divisions, branches, units, parents, attorneys, financial advisors, accountants, successors, predecessors, heirs, personal representatives, and assigns (each in their capacities as such) from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding fraud, bad faith or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such Party ever had or claimed to have or now has or claims to have presently or at any future date, against each other Party arising under, related to, or in connection with the JGB Claims (the foregoing released claims, the "Released JGB Claims"); provided, however, that each Party expressly reserves, and nothing herein shall impair, all of its rights, actions, defenses, objections, causes of action, and claims it might have against each other Party that are not Released JGB Claims, including, without limitation, (a) the net amounts, as between each relevant pair of LBSF, LBIE, and LBJ, resulting from (i) income arising on the relevant securities during the period of the applicable Intercompany Transaction, (ii) price differential payable under the Intercompany Transaction in accordance with the relevant contract, and (iii) the difference between the value of the collateral subject to the Intercompany Transaction and the cash amount payable thereunder and (b) those monetary amounts as agreed or to be agreed between LBIE and LBJ as owing by LBIE to LBJ under the transactions between LBIE and LBJ pursuant to the Master Agreement Concerning Gensaki Transactions of Bonds, dated April 1, 2002, and any failed transaction or other costs relating thereto; provided, further, that in the case of each Intercompany Transaction, the Japanese Government Bonds are assumed to have been delivered or redelivered, as the case may be, to the relevant party in accordance with the terms of the relevant Intercompany Transaction.

       2.      Each Party represents and warrants to each other Party that, subject to Bankruptcy Court approval to the extent necessary, (i) the execution, delivery, and performance by such Party of this Letter Agreement and the releases contemplated under this Letter Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Letter Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Letter Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Letter Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts relating to Intercompany Transactions to which it is a party and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Letter Agreement to it, and (vii) it knowingly waives any and all claims that entry into this Letter Agreement was induced by any misrepresentation or nondisclosure and knowingly waives

any and all rights to rescind or avoid this Letter Agreement based upon presently existing facts, known or unknown.

3. This Letter Agreement shall be effective upon the effective date of the chapter 11 plan of LBHI and its affiliated debtors.

4. This Letter Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Letter Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

5. This Letter Agreement may only be amended or modified and any of the terms hereof may be waived only by an instrument in writing signed by each of the Parties.

6. This Letter Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart. Signatures to this Letter Agreement may be exchanged by facsimile transmission and/or electronic mail and shall constitute originals for all purposes.

Kindly acknowledge and confirm your agreement to the foregoing by execution of this Letter Agreement by a duly authorized representative below where indicated and delivery of such representative's signature to LBHI via facsimile or electronic mail. Each person who executes this Letter Agreement on behalf of a Party represents and warrants that he or she is duly authorized and empowered to execute and deliver this Letter Agreement on behalf of such Party.

Sincerely,

LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By:_____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By:_____

Name:

Title:


LEHMAN BROTHERS JAPAN INC.


_____

By: Masaki Kanehyo

Title: Representative Liquidator


LEHMAN BROTHERS INTERNATIONAL (EUROPE) (IN ADMINISTRATION)


By: _____

Name:

Title:

For the joint administrators, Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell acting for and on behalf of Lehman Brothers International (Europe) as agents and without personal liability.

**Exhibit C**

**Form LB Scottish Shareholder Resolution**

**LEHMAN BROTHERS LUXEMBOURG INVESTMENTS S.à r.l.**
*Société à responsabilité limitée*
**L-1273 Luxembourg, 19, rue de Bitbourg**
**Share capital: USD 61,229,600.-**
**R.C.S. Luxembourg B 83966**
**(the "Company")**

### WRITTEN SINGLE SHAREHOLDER'S RESOLUTIONS
### EFFECTIVE AS OF _____ 2011

The undersigned being the single shareholder of the Company, agrees that:

The following resolutions are taken (i) in compliance with article 13 of the Company's bylaws stating that *"the single shareholder assumes all powers conferred to the general shareholder meeting"*, and (ii) in accordance with article 200-2, second paragraph, of the amended Law of 10th August, 1915 on commercial companies stating that *"the decisions of the single shareholder which are taken in the scope of the first paragraph* [powers of the general meeting] *are recorded in minutes or drawn-up in writing"*.

**WHEREAS**

(A)     Lehman Brothers Holdings Scottish LP, a limited partnership organized under the laws of England and Wales, having its registered offices at Johnston House, 52-54 Rose Street, Aberdeen AB10 1UD, United Kingdom, registered with the Scottish Register of Commerce (Companies House) under number SL005882, is the single shareholder of the Company (hereinafter the "**Single Shareholder**").

(B)     According to article 12 of the Company's bylaws, the manager(s) may be revoked ad nutum.

(C)     The Single Shareholder intends to (i) revoke, with effect as of today, (x) Mr. Daniel J. Ehrmann and Mr. William J. Fox as managers of category A of the Company and (y) Mr. John S. Keen as manager of category B of the Company and (ii) grant them full and entire discharge for the exercise of their mandates until today.

(D)     [The Single Shareholder intends to appoint new managers with effect on [_____] in replacement of the resigning managers.]

In consideration of the above, the undersigned resolves as follows:

## FIRST RESOLUTION

The Single Shareholder decides to revoke, with effect as of today, (i) Mr. Daniel J. Ehrmann and Mr. William J. Fox as managers of category A of the Company and (ii) Mr. John S. Keen as manager of category B of the Company.

## SECOND RESOLUTION

The Single Shareholder (i) decides to grant full and entire discharge to (x) Mr. Daniel J. Ehrmann, (y) Mr. William J. Fox and (z) Mr. John S. Keen for the exercise of their mandates as managers of category A, respectively category B, of the Company until today as far as legally possible and (ii) formally and irrevocable undertakes, for himself and any and all successors, assignees or transferees, to consider and resolve again on such full and entire discharge at the next ordinary single shareholder's meeting resolving on the approval of the annual accounts of the Company.

## [THIRD RESOLUTION

The Single Shareholder resolved to appoint (i) [_____], [_____], born on [_____] at [_____], residing at [_____], as new manager of category [___] with effect on [_____], in replacement of [_____], resigning manager, (ii) [_____], [_____], born on [_____] at [_____], residing at [_____], as new manager of category [___] with effect on [_____], in replacement of [_____], resigning manager and (iii) [_____], [_____], born on [_____] at [_____], residing at [_____],as new manager of category [___] with effect on [_____], in replacement of [_____], resigning manager.]

**********

[remainder of this page intentionally left blank]

For:

**Lehman Brothers Holdings Scottish LP**

By:

Name: Lehman Brothers UK Holdings (Delaware) Inc.

Title: General Partner

_____          _____

By:

Name:                              Name:

Title:                             Title:

[signature page to LEHMAN BROTHERS LUXEMBOURG INVESTMENTS S.à r.l.

written single shareholder's resolutions – revocation managers]

# EXHIBIT 5

## PART E – AGREEMENT AMONG DEBTORS, LEHMAN BROTHERS INVESTMENT MANAGEMENT COMPANY LTD., AND LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (*EN FAILLITE*)

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated as of October 25, 2011 (the "Execution Date"), by and among the Debtors[1] and Lehman Brothers Investment Management Company Ltd. ("LBIM" and, together with the Debtors, "Lehman US"), on the one hand, and Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*) ("LBEF") acting by and through its Joint Trustees in Bankruptcy, Jacques Delvaux and Laurent Fisch (the "Joint Trustees"), on the other hand. Lehman US and LBEF shall each be referred to individually as a "Party" and collectively as the "Parties."

## Recitals

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "US Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "US Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on February 6, 2009, LBEF, an affiliate of LBHI, has been declared bankrupt (*en faillite*) under the provisions of Book III of the Luxembourg *Code de Commerce* (the "Luxembourg Commercial Code") by an order no. 151/09 of the Luxembourg District court ('*Tribunal d'arrondissement de et à Luxembourg, siégeant en matière commerciale*') (the "Luxembourg Bankruptcy Court"), which supervises its case (the "Luxembourg Proceedings");

WHEREAS, LBEF has filed or is the owner of the proofs of claim listed on Schedule A attached hereto against LBHI (collectively, the "Proofs of Claim") and the Debtors have communicated an intent to challenge certain of the Proofs of Claim absent a settlement with LBEF;

WHEREAS, prior to the commencement of the Chapter 11 Cases, in connection with a hedging relationship between LBEF and LBIM in respect of LBEF's issuance of certain warrants, LBEF and LBIM had open derivatives trades, which were terminated after the commencement of the Chapter 11 Cases (the "LBIM Derivatives Trades");

WHEREAS, following termination of the LBIM Derivatives Trades, LBEF was owed receivables from LBIM on account thereof, and LBIM was owed receivables from LBEF on account of premiums incurred by LBIM and recharged to LBEF in respect of the LBIM Derivatives Trades;

WHEREAS, the foregoing mutual receivables have resulted in a net receivable, as of September 14, 2008, owed to LBEF from LBIM (the "LBIM Receivable");

WHEREAS, the Debtors and LBEF have entered into that certain amended tolling and forbearance agreement, dated as of December 21, 2010 (the "Tolling Agreement");

WHEREAS, the Parties are desirous of resolving all present and future disputes and all other outstanding issues between the Parties and avoiding extensive and expensive litigation by making mutual concessions expressed in this Agreement;

---

[1] As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 19627] (as may be amended from time to time by the Debtors, the "Plan") and the Debtors' Disclosure Statement for the Plan [ECF No. 19629] (as may be amended from time to time by the Debtors, the "Disclosure Statement"); and

WHEREAS, each of the Debtors, either individually or jointly, will file an amendment, modification and/or supplement to the Plan that will incorporate the terms and conditions of this Agreement (the "Amended Plan");

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. ***Definitions***

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Agreed LBIM Receivable" has the meaning ascribed to it in Section 2.1(c).

"Allowed LBEF Claims" has the meaning ascribed to it in Section 2.1(b).

"Allowed LBEF Guarantee Claims" has the meaning ascribed to it in Section 2.1(a).

"Alternative Plan" means a chapter 11 plan or plans, proposed by parties other than the Debtors.

"Amended Plan" has the meaning ascribed to it in the Recitals.

"CarVal" means CVI GVF Luxembourg Twelve S.ár.l.

"CarVal Assignment Agreement" has the meaning ascribed to it in Section 4.6(a).

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Consent" means that certain Consent attached hereto as Schedule C.

"Disclosure Statement" has the meaning ascribed to it in the Recitals.

"Effective Date" means the date that the Amended Plan becomes effective as provided for therein.

"LBIE" means Lehman Brothers International (Europe).

"LBIM Derivatives Trades" has the meaning ascribed to it in the Recitals.

"LBIM Receivable" has the meaning ascribed to it in the Recitals.

"LBLSA Settlement Agreement" means that certain Settlement Agreement by and among the Debtors and Lehman Brothers (Luxembourg) S.A. (in liquidation), dated as of October 25, 2011.

"Luxembourg Approval Order" means the approval of this Agreement by a final and non-appealable order of the Luxembourg Bankruptcy Court pursuant to article 492 of the Luxembourg Commercial Code.

"Luxembourg Approval Process" has the meaning ascribed to it in Section 4.2.

"<u>Luxembourg Avoidance Actions</u>" means all avoidance actions and causes of action against the Debtors or LBIM under sections 445 and 446 of the Luxembourg Commercial Code.

"<u>Luxembourg Bankruptcy Court</u>" has the meaning ascribed to it in the Recitals.

"<u>Luxembourg Civil Code</u>" means the Luxembourg *Code Civil*.

"<u>Luxembourg Commercial Code</u>" has the meaning ascribed to it in the Recitals.

"<u>Luxembourg Proceedings</u>" has the meaning ascribed to it in the Recitals.

"<u>Luxembourg Prosecutor</u>" means the representative of the Luxembourg public prosecutor's office representing the public interest in bankruptcy and liquidation proceedings.

"<u>Party</u>" has the meaning ascribed to it in the Recitals.

"<u>Plan</u>" has the meaning ascribed to it in the Recitals.

"<u>Plan Administrator</u>" has the meaning ascribed to it in the Amended Plan.

"<u>Primary Claim</u>" shall have the meaning ascribed to it in the Plan.

"<u>Proofs of Claim</u>" has the meaning ascribed to it in the Recitals.

"<u>Standstill Termination Date</u>" has the meaning ascribed to it in Section 8.1.

"<u>Supervisory Judge</u>" means the judge of the Luxembourg Bankruptcy Court that is supervising the bankruptcy of LBEF.

"<u>Third-Party Creditors</u>" means those entities that have asserted primary claims against LBEF and corresponding guarantee claims against LBHI.

"<u>Tolling Agreement</u>" has the meaning ascribed to it in the Recitals.

"<u>Transferred Claim Portion</u>" has the meaning ascribed to it in Section 4.6(a).

"<u>US Avoidance Actions</u>" all actions under chapter 5 of the US Bankruptcy Code or similar actions under applicable state law.

"<u>US Bankruptcy Code</u>" has the meaning ascribed to it in the Recitals.

"<u>US Bankruptcy Court</u>" has the meaning ascribed to it in the Recitals.

"<u>US Confirmation Order</u>" means an order of the US Bankruptcy Court (i) confirming the Amended Plan pursuant to section 1129 of the US Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the US Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"<u>Voting Deadline</u>" means the date set by the US Bankruptcy Court by which creditors must vote to accept or reject the Amended Plan.

2. ***Settlement of Claims***.

2.1. *The LBEF Proofs of Claim and the LBIM Receivable.*

2.1(a)    *LBEF's Guarantee Claims Against LBHI.*  Subject to section 8.13 of the Amended Plan, LBEF will have (i) an allowed, non-priority, non-senior, non-subordinated general unsecured claim against LBHI in Class 8 under the Plan in an amount equal to $700,837 on account of amounts receivable from LBIE relating to derivatives; and (ii) an allowed, non-priority, senior, non-subordinated general unsecured claim against LBHI in Class 4B under the Plan in an amount equal to $14,533,045 on account of amounts receivable from LBIE relating to a non-trading intercompany balance (together, the "Allowed LBEF Guarantee Claims"); *provided, however,* that (x) the Allowed LBEF Guarantee Claims shall be deemed (1) satisfied in full or (2) not entitled to any further distributions from LBHI, in each case, only if LBEF receives distributions from LBHI that combined with any other distributions or consideration provided to LBEF in respect of the corresponding Primary Claim equal to the allowed amount of the corresponding Primary Claim, and (y) LBHI's rights of subrogation as to the Allowed LBEF Guarantee Claims shall not arise until LBEF has been satisfied in full in accordance with the foregoing.

2.1(b)    *LBEF's Direct Claim Against LBHI.*  Subject to section 8.13 of the Plan, LBEF will have an allowed, non-priority, senior, non-subordinated general unsecured claim against LBHI in Class 4A under the Plan in an amount equal to $119,207,203 (together with the Allowed LBEF Guarantee Claims, the "Allowed LBEF Claims").

2.1(c)    *Agreed LBIM Receivable.*  LBIM will agree upon and acknowledge the LBIM Receivable in favor of LBEF currently due and owing in an amount equal to $1,190,560 (the "Agreed LBIM Receivable").

2.1(d)    Other than the Allowed LBEF Claims and the Agreed LBIM Receivable, all other claims or receivables asserted or held by LBEF against Lehman US will be deemed fully and forever expunged, extinguished, disallowed and released.

2.1(e)    The Allowed LBEF Claims and the Agreed LBIM Receivable as set forth in this Section 2.1 shall not be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the US Bankruptcy Code or otherwise that would have the effect of subordinating such claims to the claims of other general unsecured creditors.

2.2.    *Claims Register.*  In order to reflect the entry into this Agreement, upon the Effective Date, the Parties hereto acknowledge and agree that (i) the Proofs of Claim shall be deemed amended to the extent necessary to reflect the terms of the settlement reached in this Agreement and/or to reflect the reconciliation of such claims that has been ongoing amongst the Parties, (ii) they shall execute and submit joint instructions to Epiq Bankruptcy Solutions, LLC, requesting that the claims register in the Chapter 11 Cases be amended to reflect (A) the allowance of the Proofs of Claim in the amounts set forth on Schedule B of this Agreement and (B) the disallowance of the remaining Proofs of Claim on Schedule A of this Agreement, and (iii) all claims filed by LBIM against LBEF shall be deemed forever disallowed and expunged.

3.    ***Amended Plan and Related Support.***

3.1.    *The Debtors' Obligations.*

3.1(a)    Within a reasonable period of time following the Execution Date, the Debtors will (i) file the Amended Plan and (ii) prosecute the Amended Plan and seek entry of the US Confirmation Order.

3.1(b)    Upon reasonable request, Lehman US shall reasonably respond to, and, to the extent practicable, cooperate with, the Joint Trustees in connection with obtaining court approval of this Agreement; provided, however, that the failure of Lehman US to comply with this obligation shall

not constitute a breach of this Agreement or give rise to any damages or rights of termination of this Agreement by LBEF, and LBEF's sole and exclusive remedy shall be that LBEF may file a motion with the US Bankruptcy Court on at least 15 days' notice to Lehman US seeking a determination as to whether Lehman US is not complying with this provision and requesting Lehman US's compliance therewith.

3.1(c)   Subject to the execution of a confidentiality agreement that is acceptable to the Parties, LBHI shall cooperate with and respond to reasonable requests for information from LBEF regarding the resolution of claims of, or distributions by LBHI to, Third-Party Creditors with respect to their guarantee claims against LBHI, including whether: (i) the guarantee claims of Third-Party Creditors have been allowed or disallowed against LBHI, (ii) the guarantee claims of Third-Party Creditors are disputed or subject to objection by LBHI, and (iii) the consideration, if any, paid to Third-Party Creditors by LBHI on account of their guarantee claims.

3.2.   *LBEF's Obligations.*  LBEF agrees to perform and comply with the following obligations as to the Amended Plan, which obligations shall become effective upon the Execution Date:

3.2(a)   Within a reasonable period of time following the Execution Date, LBEF shall seek approval from the Luxembourg Bankruptcy Court for the performance of the obligations of LBEF under this Agreement and the transactions contemplated herein.

3.2(b)   If the US Bankruptcy Court allows the Debtors to solicit acceptances of the Amended Plan before acceptances are solicited for any Alternative Plan or Alternative Plans, and provided that LBEF has been solicited pursuant to section 1125 of the US Bankruptcy Code, LBEF shall (i) timely vote to accept the Amended Plan in the amounts set forth on Schedule A with respect to each Proof of Claim, and not thereafter withdraw or change such vote, and (ii) support approval and confirmation of the Amended Plan.

3.2(c)   LBEF shall not oppose or object to the Amended Plan or the solicitation of the Amended Plan, or join in or support any objection to the Amended Plan or the solicitation of the Amended Plan.

3.2(d)   Subject to Section 3.2(e) below, LBEF shall not (i) participate in the formulation of, file, or prosecute any Alternative Plan, or (ii) join in or support any Alternative Plan, including, without limitation, express support in writing of, or enter into any form of plan support agreement with respect to any Alternative Plan, or (iii) take any action to alter, delay or impede the confirmation and consummation of the Amended Plan; provided that, a vote on an Alternative Plan or Plans shall not constitute an action to delay or impede the confirmation or consummation of the Amended Plan.

3.2(e)   If the US Bankruptcy Court allows other parties to solicit acceptances of any Alternative Plan or Alternative Plans at the same time as the Amended Plan, LBEF may vote to accept any Alternative Plan or Alternative Plans only if such Alternative Plan or Alternative Plans provide LBEF with an equal or greater economic recovery than the Amended Plan, and provided, however, that LBEF shall also (i) timely vote to accept the Amended Plan, and not thereafter withdraw or change such vote, (ii) support approval and confirmation of the Amended Plan, (iii) comply with the provisions of Sections 3.2(c) and 3.2(d) above, and (iv) indicate a preference for the Amended Plan on its voting ballot.  Notwithstanding anything contained in this Section, LBEF shall not indicate a preference on its voting ballots for any Alternative Plan.

3.2(f)   Subject to the execution of a confidentiality agreement that is acceptable to the Parties, LBEF shall cooperate with and respond to reasonable requests for information of LBHI or the Plan Administrator regarding the resolution of claims of, or distributions by LBEF to, Third-Party Creditors with respect to their primary claims against LBEF, including whether: (i) the primary claims of Third-Party Creditors have been allowed or disallowed against LBEF, (ii) the primary claims of Third-

Party Creditors are disputed or subject to objection by LBEF, and (iii) the consideration, if any, paid to Third-Party Creditors by LBEF on account of their primary claims.

3.3.    *Solicitation Required in Connection with Amended Plan*.    Notwithstanding anything contained in this Section 3 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Amended Plan pursuant to section 1125 of the US Bankruptcy Code, or rejection of any Alternative Plan.    Acceptance of the Amended Plan will not be solicited until the US Bankruptcy Court has approved the Disclosure Statement and related ballots, and such Disclosure Statement and ballots have been transmitted to parties entitled to receive the same in accordance with an order of the US Bankruptcy Court.

4.    ***LBEF's Representations and Warranties***.    In order to induce Lehman US to enter into and perform its obligations under this Agreement, LBEF hereby represents, warrants and acknowledges as follows:

4.1.    *Authority*.    Subject to the Luxembourg Approval Order, (i) LBEF has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance by LBEF of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of LBEF and no other proceedings on the part of LBEF are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2.    In connection with the representations and warranties set forth in Section 4.1, the Joint Trustees have informed Lehman US that

(1)    the Agreement is likely to be considered as a settlement (French: "transaction") following sections 2044 to 2058 of the Luxembourg Civil Code and following article 492 of the Luxembourg Commercial Code;

(2)    a settlement requires (a) an authorization of the Supervisory Judge and (b) the approval *("homologation")* by the Luxembourg Bankruptcy Court;

(3)    the authorization of the Supervisory Judge of LBEF is not subject to any formal requirements and has been orally obtained by the Joint Trustees on October 25, 2011;

(4)    the Supervisory Judge has requested the Joint Trustees to consult with the creditors of LBEF prior to the launch of legal proceedings referred to below;

(5)    the approval by the Luxembourg Bankruptcy Court within the meaning of article 492 of the Luxembourg Commercial Code requires the launch of legal proceedings by the Joint Trustees against LBEF, and the Joint Trustees want the Debtors and LBIM, as interested parties, to intervene in these proceedings, and will thus serve those legal proceedings also on them;

(6)    in the course of these approval proceedings, the past directors of LBEF and the Luxembourg Prosecutor may oppose the Agreement in whole;

(7)    the support of the Agreement (or the lack thereof) by some or all creditors of LBEF is likely to have an impact on the approval of the Luxembourg Bankruptcy Court;

(8)    if the Luxembourg Bankruptcy Court refuses to approve the Agreement, the latter will be of no effect as a matter of Luxembourg law; and

(9)    the approval of the Agreement by the Luxembourg Bankruptcy Court will become final and non-appealable within 15 days following service of the Luxembourg Approval Order, although as a matter of Luxembourg law (article 465 of the Luxembourg Commercial Code), the

Luxembourg Approval Order shall be enforceable on a provisional basis until the Luxembourg Approval Order becomes final and non-appealable (together, the "Luxembourg Approval Process").

4.3. *Validity.* Subject to the Luxembourg Approval Order approving the performance of the obligations of LBEF under, this Agreement and the transactions contemplated herein, this Agreement has been duly executed and delivered by LBEF and constitutes the legal, valid and binding agreement of LBEF, enforceable against LBEF in accordance with its terms.

4.4. *Authorization of Governmental Authorities and Creditors.* No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by LBEF pursuant to this Agreement other than as set forth in Section 3.2(a) and Section 4.2 above.

4.5. *No Reliance.* LBEF (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any of the Debtors, LBIM, or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as LBEF has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that LBEF has relied upon each Debtor's and LBIM's express representations, warranties and covenants in this Agreement, LBEF acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

4.6. *Title; No Prior Transfer of Claims.*

4.6(a) Except for a portion of Claim No. 33061 (the "Transferred Claim Portion") assigned pursuant to an agreement dated as of September 8, 2010 (the "CarVal Assignment Agreement"), LBEF owns and has good title to the Proofs of Claim and the Agreed LBIM Receivable, free and clear of any and all liens, claims (other than on account of claims against the assets of LBEF), set-off rights, security interests, participations, or encumbrances created or incurred by or against LBEF as of the Execution Date and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement, in whole or in part. The Parties acknowledge that LBEF has entered into the CarVal Assignment Agreement pursuant to which it has sold, and CarVal has purchased, the Transferred Claim Portion in the amount of $52,181,600 and that CarVal has executed the Consent attached hereto as Schedule C with respect to the Transferred Claim Portion.

4.6(b) LBEF may not convey, transfer, assign, or participate any of the claims or receivables that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

5. **Lehman US's Representations and Warranties.** In order to induce LBEF to enter into and perform its obligations under this Agreement, each Debtor and LBIM hereby represents, warrants and acknowledges as follows:

5.1. *Authority.* Subject to US Bankruptcy Court approval to the extent necessary, (i) each signatory Debtor and LBIM has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor or LBIM of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor or LBIM and no other proceedings on the part of such Debtor or LBIM are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2. *Validity.*

5.2(a)   Subject to US Bankruptcy Court approval to the extent necessary, this Agreement has been duly executed and delivered by each Debtor and LBIM and constitutes the legal, valid and binding agreement of each Debtor and LBIM, enforceable against each Debtor and LBIM in accordance with its terms.

5.3.   *Authorization of Governmental Authorities*.   No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and LBIM of this Agreement, other than entry of the US Confirmation Order.

5.4.   *No Reliance.*   Each Debtor and LBIM (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon LBEF, and based on such information as such Debtor or LBIM has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor or LBIM has relied upon LBEF's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

6.   **Executory Contracts.**   All pre-petition executory contracts between the Debtors and LBEF shall be rejected pursuant to section 365 of the US Bankruptcy Code in accordance with the Amended Plan.   Any claims that arise from the rejection of pre-petition executory contracts between the Debtors and LBEF are deemed to be satisfied in full by the claims allowed pursuant to Section 2 hereof.

7.   **Withholding Rights and Allocation of Payments.**   Each Party shall be entitled to deduct and withhold from the amounts otherwise payable to any other Party pursuant to this Agreement such amounts as it is required to deduct and withhold with respect to the making of such payment under any requirement of any applicable tax law.   Any amounts so withheld shall be treated for all purposes of this Agreement as having been paid to such Party in respect of the allowed claim for which such deduction and withholding is made.   The Parties agree that any payments made by Lehman US on account of the claims and receivables that are the subject of this Agreement shall be allocated for all purposes first to the principal portion of such claims and receivables, and, only after the principal portion of such respective claims and receivables is satisfied in full, to any portion of such claims and receivables comprising interest (but solely to the extent that interest is an allowable portion of such claims and receivables).

8.   **Standstill.**

8.1.   Each Party agrees that LBEF shall forbear from taking any action to enforce any rights or remedies under applicable law in respect of the Agreed LBIM Receivable against LBIM, including by demanding payment on account thereof or taking any action (whether pursuant to legal proceedings or self-help) to collect such claim, until the earliest of (i) the date that is 90 days after the delivery of a written notice to LBIM by LBEF, (ii) the date on which LBIM commences any form of reorganization or liquidation under any bankruptcy, insolvency, or similar law of any jurisdiction, or (iii) the date of any payment or distribution by LBIM in respect of any equity interests or claims existing prior to September 15, 2008 (such earliest date, the "Standstill Termination Date").

8.2.   LBIM agrees to provide written notice to LBEF in accordance with Section 13 at least ten business days prior to making any payment of the type referred to in Section 8.1(iii).

8.3.   So long as LBEF forbears from enforcing any applicable rights or remedies in accordance with Section 8.1, LBIM hereby agrees that any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including the doctrine of laches or waiver) that might be asserted as a time bar and/or

limitation to any claims that is or may be asserted by LBIM is tolled from the Effective Date to the Standstill Termination Date.

9. **_Releases._**

9.1. *Lehman US's Releases*. Upon the occurrence of the Effective Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement and (ii) the performance of the obligations set forth herein, and subject to the effectiveness of this Agreement in accordance with Section 10 below, and in consideration of the foregoing and LBEF's execution of this Agreement, each Debtor and LBIM on behalf of itself, its estate (where applicable), its successors and assigns, will fully and forever release, discharge and acquit LBEF, and the Joint Trustees, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including all US Avoidance Actions.

9.2. *LBEF's Releases*. Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) LBEF's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (iv) the performance of the obligations set forth herein, and subject to the effectiveness of this Agreement in accordance with Section 10 below, and in consideration of the foregoing and each Debtor's and LBIM's execution of this Agreement, LBEF, and its successors and assigns, will fully and forever release, discharge and acquit each Debtor and LBIM, and Alvarez & Marsal North America LLC, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, (i) any administrative expense claims arising under section 503 of the US Bankruptcy Code, and (ii) all Luxembourg Avoidance Actions; provided, however, that this Section 9.2 shall not apply to the Agreed LBIM Receivable until it has been satisfied in full.

10. **_Effectiveness of Agreement_**.

10.1. Sections 3, 4.6 and 10 through 24 of this Agreement shall be effective upon the Execution Date.

10.2. All other provisions of this Agreement shall be effective upon the first date that all of the following have occurred: (a) approval of this Agreement by the US Bankruptcy Court, (b) the occurrence of the Effective Date, (c) approval of this Agreement by the Luxembourg Bankruptcy Court by the Luxembourg Approval Order, and (d) approval of the LBLSA Settlement Agreement by (i) the US Bankruptcy Court and (ii) the Luxembourg Bankruptcy Court. On the date that all of the foregoing conditions have been satisfied, the Tolling Agreement shall be deemed terminated without further action of the Parties.

11. **_Termination_**.

   11.1. *Automatic Termination.* This Agreement shall automatically terminate on any date on which (a) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and LBEF; (b) the US Bankruptcy Court denies the motion seeking the US Confirmation Order with prejudice, (c) the Luxembourg Bankruptcy Court denies approval of, and does not authorize LBEF to perform its obligations under, this Agreement, or (d) the LBLSA Agreement is terminated in accordance with its terms.

   11.2. *Lehman US's Right to Terminate.* Each Debtor and LBIM shall have the right, at its election, to terminate this Agreement by written notice to LBEF if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of LBEF hereunder, taken as a whole, and LBEF shall fail to cure such breach within ten (10) days following written notice of such breach from Lehman US; or (b) the Luxembourg Approval Order does not become final and non-appealable by the Effective Date.

   11.3. *LBEF's Right to Terminate.* LBEF shall have the right, at its election, to terminate this Agreement by written notice to Lehman US if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Lehman US hereunder, taken as a whole, and Lehman US shall fail to cure such breach within ten (10) days following written notice of such breach from LBEF; or (b) the Debtors make a material modification to the structure, classification or distribution scheme under the Amended Plan that would (i) materially reduce the recovery estimates set forth in the Disclosure Statement with respect to classes that include the Allowed LBEF Claims, or (ii) provide for materially different treatment of claims held by other creditors that are factually and legally similar to the Allowed LBEF Claims that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement provided for in the Amended Plan in respect of the Allowed LBEF Claims; provided, however, that with respect to Section 11.3(b), (i) the Debtors are not guaranteeing or committing to any specific recovery amount under the Amended Plan, and (ii) modifications to the projected recovery amounts set forth in the disclosure statement approved by the US Bankruptcy Court with respect to the Amended Plan that are based upon revised projections of asset values shall not constitute material modifications to the Amended Plan.

   11.4. *Effect of Termination.* In the event that this Agreement is terminated, then neither this Agreement, nor any motion or other pleading filed in the US Bankruptcy Court or the Luxembourg Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Amended Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

12. **_Venue and Choice of Law_**.

   12.1. *Venue.* To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the US Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the US Bankruptcy Court. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the US Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within

the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the US Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Section 13 below. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

   12.2. *Choice of Law.* This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the US Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the US Bankruptcy Code. Without prejudice to the foregoing, for the purposes of the approval of the Agreement by the Luxembourg Bankruptcy Court, it is agreed that the Agreement is also intended to constitute a settlement ('*transaction*') pursuant to article 2044 *et. seq.* of the Luxembourg Civil Code.

   13. **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

   <u>To Lehman US at:</u>

   1271 Avenue of the Americas, 39th Floor
   New York, New York 10020
   U.S.A.
   Attn: John Suckow and Daniel J. Ehrmann
   Facsimile: (646) 834-0874

   Kleyr Grasso Associés
   122, rue A. Fischer
   B.P. 559
   L-2015 Luxembourg-City
   Attn: Me Marc Kleyr
   Facsimile: +352 227 332

   With a copy (which shall not constitute notice) to:

   Weil, Gotshal & Manges LLP
   767 Fifth Avenue
   New York, New York 10153
   U.S.A.
   Attn: Lori R. Fife, Esq. and Sunny Singh, Esq.
   Facsimile: (212) 310-8007

   <u>To LBEF at:</u>

   2, rue de la Chapelle
   B.P. 320

L- 2013 Luxembourg-City
Attn: Maître Jacques Delvaux and Maître Laurent Fisch
Facsimile: +352 24 19 77 (with a copy to + 352 297 299)

MOLITOR, Avocats à la Cour
8, rue Ste Zithe
B.P. 690
L-2015 Luxembourg-City
Attn: Me Paulo Da Silva
Facsimile: +352 297 299

With a copy (which shall not constitute notice) to:

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
U.S.A.
Attn: Shmuel Vasser, Esq.
Facsimile : (212) 698-3599

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

14.     ***Service of Process / Election of Domicile.***  For the purpose of the Luxembourg Approval Process, each Lehman US entity elects domicile with Mr. Marc Kleyr, Avocat à la Cour, residing in Luxembourg-City, 122, rue A. Fischer or any other lawyer admitted to the Bar of Luxembourg-City. For the same purpose, the Joint Trustees elect domicile with Mr. Paulo Da Silva, Avocat à la Cour, residing in Luxembourg-City, 8, rue Ste Zithe or with any other lawyer admitted to the Bar of Luxembourg-City.

15.     ***Expenses***.  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

16.     ***No Admission of Liability***.  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

17.     ***Entire Agreement***.  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Amended Plan and the terms of this Agreement, the terms of this Agreement shall control.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

18.     ***No Oral Modifications***.  This Agreement may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of Lehman US must be provided in a writing signed by LBEF.  Any waiver of compliance with any term or provision of this Agreement on the part of LBEF must be provided in a writing signed by each Debtor and LBIM.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

19.  **Construction**.  This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

20.  **Binding Effect; Successor and Assigns**.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, that no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

21.  **Counterparts**.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

22.  **Headings; Schedules**.  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule herein shall be to the Schedules attached hereto.

23.  **Severability and Construction**.  If any term of other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is no affected in any manner materially adverse to the Parties.  Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each Party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

24.  **Waiver of Jury Trial.**  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE

A COPY OF THIS <u>SECTION 24</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors and Debtors in Possession

By: _____
Name: John Suckow
Title: Authorized Signatory


LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors and Debtors in Possession

By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory


LEHMAN BROTHERS INVESTMENT MANAGEMENT COMPANY LTD.

By: _____
Name: William J. Fox
Title: Director

LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (EN FAILLITE), a company incorporated in Luxembourg (registered number RCS (Luxembourg) B101448) whose registered office is at 2, Rue de la Chapelle, L - 1325 Luxembourg-Ville, Luxembourg

Jointly by: _____
Name: Jacques Delvaux
Title: Curateur

and by: _____
Name: Laurent Fisch
Title: Curateur

15

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors and Debtors in Possession

By: _____
Name: John Suckow
Title: Authorized Signatory

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors and Debtors in Possession

By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory

LEHMAN BROTHERS INVESTMENT MANAGEMENT COMPANY LTD.

By: _____
Name: William J. Fox
Title: Director

LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (EN FAILLITE), a company incorporated in Luxembourg (registered number RCS (Luxembourg) B101448) whose registered office is at 2, Rue de la Chapelle, L - 1325 Luxembourg-Ville, Luxembourg

Jointly by: _____
Name: Jacques Delvaux
Title: Curateur

and by: _____
Name: Laurent Fisch
Title: Curateur

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors and Debtors in Possession

LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (EN FAILLITE), a company incorporated in Luxembourg (registered number B101448) whose registered office is at 2, Rue de la Chapelle, L - 1325 Luxembourg-Ville, Luxembourg

Jointly by: _____
Name: Jacques Delvaux
Title: Curateur

and by: _____
Name: Laurent Fisch
Title: Curateur

By: _____
Name: John Suckow
Title: Authorized Signatory

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors and Debtors in Possession

By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory

LEHMAN BROTHERS INVESTMENT MANAGEMENT COMPANY LTD.

By: _____
Name: William J. Fox
Title: Director

| Claim Number | Claimant | Debtor against which claim was filed | Amount (USD) |
|---|---|---|---|
| 33056 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | $ 10,650,996,780 |
| 33057 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 6,118,603 |
| 33058 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 55,567 |
| 33059 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 97,020,301 |
| 33060 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | - |
| 33061 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 119,207,203 * |
| 32148 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (EN FAILLITE) | Lehman Brothers Holdings Inc. | - |
| 59138 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. (EN FAILLITE) | Lehman Brothers Holdings Inc. | - |

* On September 8, 2010, LBEF transferred a portion of claim 33061 to CarVal. LBEF will be allowed to vote on the residual claim amount of $67,025,603.

Allowed LBEF Claims

| Claim Number | Claimant | Debtor against which claim was filed | Allowed LBEF Claims (USD) | Plan Classification |
|---|---|---|---|---|
| 33057 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | $ 700,837 | 8 |
| 33059 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 14,553,045 | 4B |
| 33061 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. | Lehman Brothers Holdings Inc. | 119,207,203 | 4A |

# Schedule C

## Consent

**CONSENT**

**Dated as of October 25, 2011**

      **THIS CONSENT** (this "Consent") is made and entered into as of the date hereof by and between Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*) ("LBEF") and CVI GVF Luxembourg Twelve S.ár.l. ("CarVal"). All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Settlement Agreement by and among Lehman Brothers Holdings Inc. and its affiliated debtors and Lehman Brothers Investment Management Company Ltd. (collectively, "Lehman US"), dated as of October 25, 2011 (the "Settlement Agreement").

**W I T N E S S E T H:**

      **WHEREAS,** LBEF has filed a proof of claim, Claim No. 33061, against LBHI in the amount of $119,207,203 (the "Claim"); and

      **WHEREAS,** pursuant to an agreement dated as of September 8, 2010, LBEF assigned to CarVal a portion of the Claim (the "Transferred Claim Portion") in the amount of $52,181,600 (the "Transferred Claim Amount"); and

      **WHEREAS,** Lehman US and LBEF have agreed, in accordance with the Settlement Agreement, to the allowance and treatment of the Claim pursuant to the terms and conditions of the Settlement Agreement; and

      **WHEREAS,** CarVal, as the owner of the Transferred Claim Portion, has agreed to the allowance and treatment of the Transferred Claim Portion in accordance with the terms and provisions set forth below.

      **NOW, THEREFORE,** in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Consent hereby agree as follows:

      1.    Consent. CarVal hereby agrees and consents to Section 2.1(b) of the Settlement Agreement as to the Transferred Claim Portion in accordance with the terms of such section. Subject to section 8.13 of the Plan, and provided that the Settlement Agreement becomes effective in accordance with the terms and conditions set forth in the Settlement Agreement, CarVal will have an allowed, non-priority, senior, non-subordinated general unsecured claim against LBHI in Class 4A under the Plan in an amount equal to the Transferred Claim Amount.

      2.    Title. CarVal warrants and represents that it owns and has good title to the Transferred Claim Portion, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by or against CarVal as of the date hereof and has not transferred or assigned to any other person the Transferred Claim Portion, in whole or in part.

      3.    Termination. This Consent shall terminate automatically upon termination of the Settlement Agreement pursuant to the terms thereof and shall be of no force and effect.

4. <u>Notices</u>. All notices and other communications given or made to CarVal pursuant to this Consent shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

        CarVal Investors UK Limited
        Knowle Hill Park, Fairmile Lane
        Cobham
        Surrey
        KT11 2PD
        United Kingdom
        Attention: Jan Peters
                   Anke Heydenreich
        Telephone: 44 1932 861 258
        Email: jan.peters@carval.com
              anke.heydenreich@carval.com

        With a copy (which shall not constitute notice) to:
        Paul, Hastings, Janofsky & Walker LLP
        Park Avenue Tower
        75 E. 55th Street, First Floor
        New York, New York 10022
        Attention: Luc A. Despins
                  Bryan R. Kaplan
        Telephone: (212) 318-6000
        Email: lucdespins@paulhastings.com
              bryankaplan@paulhastings.com

or to such other address as may be furnished by CarVal. Any notice given by delivery, mail or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

5. This Consent shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

6. This Consent may be executed in counterparts, each such counterpart shall be deemed an original and all such counterparts shall together constitute one instrument.

\* \* \* \* \*

2

This Consent shall be effective as of the date first set forth above.

CVI GVF Luxembourg Twelve S.ár.l.

BY CARVAL INVESTORS UK LIMITED

By: _____

Name: _____
DAVID SHORT
OPERATIONS MANAGER
Title: _____

# EXHIBIT 5

# PART F – AGREEMENT AMONG DEBTORS AND LEHMAN BROTHERS (LUXEMBOURG) S.A. (IN LIQUIDATION)

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated as of October 25, 2011 (the "Execution Date"), is entered into by and among the Debtors,[1] on the one hand, and Lehman Brothers (Luxembourg) S.A. (in liquidation) ("LBLSA") acting by and through its Joint Liquidators, Jacques Delvaux and Laurent Fisch (the "Joint Liquidators"), on the other hand. The Debtors and LBLSA shall each be referred to individually as a "Party" and collectively as the "Parties."

## Recitals

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "US Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "US Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on April 1, 2009, LBLSA, an affiliate of LBHI, was put into compulsory liquidation by an order (the "Luxembourg Liquidation Order") of the Luxembourg District court ('*Tribunal d'arrondissement de et à Luxembourg, siégeant en matière commerciale*') (the "Luxembourg Bankruptcy Court"), which supervises its case (the "Luxembourg Proceedings");

WHEREAS, LBLSA has filed or is the owner of the proofs of claim listed on Schedule A attached hereto against LBHI (collectively, the "Proofs of Claim") and the Debtors have communicated an intent to challenge certain of the Proofs of Claim absent a settlement with LBLSA;

WHEREAS, LBHI has asserted $1,027,525,595 due and owing to it from LBLSA on account of general intercompany funding to LBLSA by LBHI (the "LBHI Claim");

WHEREAS, LBLSA has asserted guarantee claims against LBHI on account of (i) LBLSA's claims against LBIE relating to intercompany stock lending and borrowing trades and non-trading intercompany balances and (ii) claims against Lehman Brothers Bankhaus AG relating to a non-trading intercompany balance (the "LBLSA-LBIE Guarantee Claims"), and contends that any amounts due to LBHI on the LBHI Claim should be reduced by setoff of an amount equal to the allowed amount of the LBLSA Guarantee Claims;

WHEREAS, the Debtors and LBLSA have entered into that certain amended tolling and forbearance agreement, dated as of December 21, 2010 (the "Tolling Agreement");

WHEREAS, the Parties are desirous of resolving all present and future disputes and all other outstanding issues between the Parties and avoiding extensive and expensive litigation by making mutual concessions expressed in this Agreement;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 19627] (as may be amended from time to time by the Debtors, the "Plan") and the Debtors' Disclosure Statement for the

---

[1] As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

Plan [ECF No. 19629] (as may be amended from time to time by the Debtors, the "Disclosure Statement"); and

WHEREAS, each of the Debtors, either individually or jointly, will file an amendment, modification and/or supplement to the Plan that will incorporate the terms and conditions of this Agreement (the "Amended Plan");

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    *Definitions*

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Allowed LBHI Claim" has the meaning ascribed to it in Section 2.1(a).

"Alternative Plan" means a chapter 11 plan or plans, proposed by parties other than the Debtors.

"Amended Plan" has the meaning ascribed to it in the Recitals.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Disclosure Statement" has the meaning ascribed to it in the Recitals.

"Effective Date" means the date that the Amended Plan becomes effective as provided for therein.

"LBEF Settlement Agreement" means that certain Settlement Agreement by and among the Debtors, Lehman Brothers Investment Management Company Ltd., and Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*), dated as of October 25, 2011.

"LBHI Claim" has the meaning ascribed to it in the Recitals.

"LBIE" means Lehman Brothers International (Europe).

"LBLSA Guarantee Claims" has the meaning ascribed to it in the Recitals.

"Luxembourg Approval Order" means the approval of this Agreement by a final and non-appealable order of the Luxembourg Bankruptcy Court pursuant to the Luxembourg Liquidation Order.

"Luxembourg Approval Process" has the meaning ascribed to it in Section 4.2.

"Luxembourg Avoidance Actions" means all avoidance actions and causes of action against the Debtors under sections 445 and 446 of the Luxembourg Commercial Code.

"Luxembourg Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"Luxembourg Civil Code" means the Luxembourg *Code Civil*.

"Luxembourg Commercial Code" means the Luxembourg *Code de Commerce*.

"Luxembourg Liquidation Order" means the order n° 451/09 dated April 1, 2009 by the Luxembourg Bankruptcy Court in relation to the compulsory liquidation of LBLSA, as this order has been subsequently amended and supplemented.

"Luxembourg Proceedings" has the meaning ascribed to it in the Recitals.

"Luxembourg Prosecutor" means the representative of the Luxembourg public prosecutor's office representing the public interest in bankruptcy and liquidation proceedings.

"Party" has the meaning ascribed to it in the Recitals.

"Plan" has the meaning ascribed to it in the Recitals.

"Plan Administrator" has the meaning ascribed to it in the Amended Plan.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

"Supervisory Judge" means the judge of the Luxembourg Bankruptcy Court that is supervising the liquidation of LBLSA.

"Tolling Agreement" has the meaning ascribed to it in the Recitals.

"Third Party Objection" has the meaning ascribed in Section 4.2(10).

"US Avoidance Actions" all actions under chapter 5 of the US Bankruptcy Code or similar actions under applicable state law.

"US Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"US Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"US Confirmation Order" means an order of the US Bankruptcy Court (i) confirming the Amended Plan pursuant to section 1129 of the US Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the US Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Voting Deadline" means the date set by the US Bankruptcy Court by which creditors must vote to accept or reject the Amended Plan.

2.    ***Settlement of Claims***.

2.1.   *LBHI's Claim Against LBLSA.*

2.1(a)    LBHI will have an allowed ordinary, non-subordinated general unsecured claim against LBLSA in an amount equal to $1,005,503,468, which amount has been reduced by setoff of the allowed amount of the LBLSA Guarantee Claims (the "Allowed LBHI Claim"). LBLSA shall make distributions to LBHI on the Allowed LBHI Claim in accordance with Luxembourg law.

2.1(b)    Other than the Allowed LBHI Claim, all other claims or receivables asserted or held by the Debtors against LBLSA will be deemed fully and forever expunged, extinguished, disallowed and released. Other than that aggregate portion of the LBLSA Guarantee Claims that has been allowed solely for purposes of setoff against the LBHI as set forth in Section 2.1(a), all other claims or receivables asserted or held by LBLSA against the Debtors will be deemed fully and forever expunged, extinguished, disallowed and released.

2.1(c)    The Allowed LBHI Claim as set forth in this Section 2.1 shall not, except as otherwise specifically provided for herein, be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the US

Bankruptcy Code or otherwise that would have the effect of subordinating such claims to the claims of other general unsecured creditors.

2.2.    *Claims Register.*  In order to reflect the entry into this Agreement, upon the Effective Date, the Parties hereto acknowledge and agree that (i) the Proofs of Claim and the LBHI Claim shall be deemed amended to the extent necessary to reflect the terms of the settlement reached in this Agreement and/or to reflect the reconciliation of such claims that has been ongoing amongst the Parties, and (ii) LBHI shall be authorized to instruct Epiq Bankruptcy Solutions, LLC, to amend the claims register in the Chapter 11 Cases to disallow the Proofs of Claim on Schedule A of this Agreement.

3.    ***Amended Plan and Related Support.***

3.1.    *The Debtors' Obligations.*

3.1(a)   Within a reasonable period of time following the Execution Date, the Debtors will (i) file the Amended Plan and (ii) prosecute the Amended Plan and seek entry of the US Confirmation Order.

3.1(b)   Upon reasonable request, the Debtors shall reasonably respond to, and, to the extent practicable, cooperate with, the Joint Liquidators in connection with obtaining court approval of this Agreement; provided, however, that the failure of the Debtors to comply with this obligation shall not constitute a breach of this Agreement or give rise to any damages or rights of termination of this Agreement by LBLSA, and LBLSA's sole and exclusive remedy shall be that LBLSA may file a motion with the US Bankruptcy Court on at least 15 days' notice to the Debtors seeking a determination as to whether the Debtors are not complying with this provision and requesting the Debtors' compliance therewith.

3.2.    *LBLSA's Obligations.*  LBLSA agrees to perform and comply with the following obligations as to the Amended Plan, which obligations shall become effective upon the Execution Date:

3.2(a)   Within a reasonable period of time following the Execution Date, LBLSA shall seek approval from the Luxembourg Bankruptcy Court for the performance of the obligations of LBLSA under this Agreement and the transactions contemplated herein.

3.2(b)   If the US Bankruptcy Court allows the Debtors to solicit acceptances of the Amended Plan before acceptances are solicited for any Alternative Plan or Alternative Plans, and provided that LBLSA has been solicited pursuant to section 1125 of the US Bankruptcy Code, LBLSA shall (i) timely vote to accept the Amended Plan in the amounts set forth on Schedule A with respect to each Proof of Claim, and not thereafter withdraw or change such vote, and (ii) support approval and confirmation of the Amended Plan.

3.2(c)   LBLSA shall not oppose or object to the Amended Plan or the solicitation of the Amended Plan, or join in or support any objection to the Amended Plan or the solicitation of the Amended Plan.

3.2(d)   Subject to Section 3.2(e) below, LBLSA shall not (i) participate in the formulation of, file, or prosecute any Alternative Plan, or (ii) join in or support any Alternative Plan, including, without limitation, express support in writing of, or enter into any form of plan support agreement with respect to any Alternative Plan, or (iii) take any action to alter, delay or impede the confirmation and consummation of the Amended Plan; provided that, a vote on an Alternative Plan or Plans shall not constitute an action to delay or impede the confirmation or consummation of the Amended Plan.

3.2(e)   If the US Bankruptcy Court allows other parties to solicit acceptances of any Alternative Plan or Alternative Plans at the same time as the Amended Plan, LBLSA may vote to accept any Alternative Plan or Alternative Plans only if such Alternative Plan or Alternative Plans provide LBLSA with an equal or greater economic recovery than the Amended Plan, and provided, however, that LBLSA shall also (i) timely vote to accept the Amended Plan, and not thereafter withdraw or change such vote, (ii) support approval and confirmation of the Amended Plan, (iii) comply with the provisions of Sections 3.2(c) and 3.2(d) above, and (iv) indicate a preference for the Amended Plan on its voting ballot.  Notwithstanding anything contained in this Section, LBLSA shall not indicate a preference on its voting ballots for any Alternative Plan.

3.2(f)   If a Third Party Objection is asserted to the Allowed LBHI Claim, the Joint Liquidators shall inform LBHI of such objection and take reasonable actions consistent with Luxembourg law to support the allowance of the Allowed LBHI Claim, including, without limitation, by supporting LBHI in its defense to any Third Party Objection.

3.3.   *Solicitation Required in Connection with Amended Plan*.   Notwithstanding anything contained in this Section 3 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Amended Plan pursuant to section 1125 of the US Bankruptcy Code, or rejection of any Alternative Plan.  Acceptance of the Amended Plan will not be solicited until the US Bankruptcy Court has approved the Amended Disclosure Statement and related ballots, and such Amended Disclosure Statement and ballots have been transmitted to parties entitled to receive the same in accordance with an order of the US Bankruptcy Court.

4.   ***LBLSA's Representations and Warranties***.   In order to induce the Debtors to enter into and perform their obligations under this Agreement, LBLSA hereby represents, warrants and acknowledges as follows:

4.1.   *Authority*.   Subject to the Luxembourg Approval Order, (i) LBLSA has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance by LBLSA of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of LBLSA and no other proceedings on the part of LBLSA are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

4.2.   In connection with the representations and warranties set forth in Section 4.1, the Joint Liquidators have informed the Debtors that

(1)   the Agreement is likely to be considered as a settlement (French: "transaction") following sections 2044 to 2058 of the Luxembourg Civil Code and following the Luxembourg Liquidation Order;

(2)   a settlement requires (a) a report to the Luxembourg Bankruptcy Court by the Supervisory Judge and (b) the approval of the settlement by the Luxembourg Bankruptcy Court;

(3)   an informal preliminary approval from the Supervisory Judge of LBLSA has been orally obtained by the Joint Liquidators on October 25, 2011;

(4)   the Supervisory Judge has requested the Joint Liquidators to consult with the creditors of LBLSA prior to the launch of legal proceedings referred to below;

(5)   the approval by the Luxembourg Bankruptcy Court within the meaning of the Luxembourg Liquidation Order, requires the launch of legal proceedings by the Joint Liquidators against LBLSA, and the Joint Liquidators want the Debtors, as interested parties, to intervene in these proceedings, and will thus serve those legal proceedings also on them;

(6)      in the course of these approval proceedings, the past directors of LBLSA and the Luxembourg Prosecutor may oppose the Agreement in whole;

(7)      the support of the Agreement (or the lack thereof) by some or all creditors of LBLSA is likely to have an impact on the approval of the Luxembourg District Court;

(8)      if the Luxembourg Bankruptcy Court refuses to approve the Agreement, the latter will be of no effect as a matter of Luxembourg law; and

(9)      the approval of the Agreement by the Luxembourg Bankruptcy Court will become final and non-appealable within 15 days following service of the Luxembourg Approval Order, although as a matter of Luxembourg law (article 465 of the Luxembourg Commercial Code), the Luxembourg Approval Order shall be enforceable on a provisional basis until the Luxembourg Approval Order becomes final and non-appealable (together, the "Luxembourg Approval Process").

(10)      Pursuant to the Luxembourg Liquidation Order, the Joint Liquidators will, after the Luxembourg Approval Order, file the Allowed LBHI Claim on one of its lists of admitted creditors' claims during the first 10 days of the month of February, June or October, and, unless another creditor opposes the admittance of the Allowed LBHI Claim within the same 10 days (contredit) (a "Third-Party Objection"), the admittance shall be final.

4.3.    *Validity*. Subject to the Luxembourg Approval Order approving the performance of the obligations of LBLSA under this Agreement and the transactions contemplated herein, this Agreement has been duly executed and delivered by LBLSA and constitutes the legal, valid and binding agreement of LBLSA, enforceable against LBLSA in accordance with its terms.

4.4.    *Authorization of Governmental Authorities and Creditors*. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by LBLSA pursuant to this Agreement other than as set forth in Section 3.2(a) and Section 4.2 above.

4.5.    *No Reliance*. LBLSA (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any of the Debtors or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as LBLSA has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that LBLSA has relied upon each Debtor's express representations, warranties and covenants in this Agreement, LBLSA acknowledges that it has entered into this Agreement voluntarily and of its own choice and not under coercion or duress.

4.6.    *Title; No Prior Transfer of Claims*.

4.6(a)    LBLSA owns and has good title to the Proofs of Claim, free and clear of any and all liens, claims (other than on account of claims against the assets of LBLSA), set-off rights, security interests, participations, or encumbrances created or incurred by or against LBLSA as of the Execution Date and has not transferred or assigned to any other person any of the claims that are the subject of this Agreement, in whole or in part.

4.6(b)    LBLSA entity may not convey, transfer, assign, or participate any of the claims that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

5.        ***The Debtors' Representations and Warranties***.  In order to induce LBLSA to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

5.1.        *Authority*.  Subject to US Bankruptcy Court approval to the extent necessary, (i) each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2.        *Validity*.

5.2(a)        Subject to US Bankruptcy Court approval to the extent necessary, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

5.3.        *Authorization of Governmental Authorities*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor of this Agreement, other than entry of the US Confirmation Order.

5.4.        *No Reliance*.  Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon LBLSA, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor has relied upon LBLSA's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

5.5.        *Title; No Prior Transfer of Claim*.

5.5(a)        LBHI owns and has good title to the LBHI Claim, free and clear of any and all liens, claims (other than on account of claims against the assets of LBHI), set-off rights, security interests, participations, or encumbrances created or incurred by or against LBHI as of the Execution Date and has not transferred or assigned to any other person any of the claims or receivables that are the subject of this Agreement, in whole or in part.

5.5(b)        LBHI may not convey, transfer, assign, or participate any of the claims that are the subject of this Agreement, or any rights or interests arising thereunder or related thereto, in whole or in part, prior to the Effective Date.

6.        ***Surviving Contract.***  The contract listed in <u>Schedule B</u> shall survive the execution, consummation or termination of this Agreement.  All other contracts between the Debtors and LBLSA shall be rejected.  Any claims that arise from the rejection of contracts between the Debtors and LBLSA are deemed to be satisfied in full by the claims allowed pursuant to Section 2 hereof.

7.        ***Withholding Rights and Allocation of Payments.***  Each Party shall be entitled to deduct and withhold from the amounts otherwise payable to any other Party pursuant to this Agreement such amounts as it is required to deduct and withhold with respect to the making of such payment under any requirement of any applicable tax law.  Any amounts so withheld shall be treated for all purposes of this Agreement as having been paid to such Party in respect of the allowed claim for which such deduction

and withholding is made. The Parties agree that any payments made by LBLSA on account of the claims that are the subject of this Agreement shall be allocated for all purposes first to the principal portion of such claims, and, only after the principal portion of such respective claims is satisfied in full, to any portion of such claims comprising interest (but solely to the extent that interest is an allowable portion of such claims).

8. **_Releases._**

8.1. _The Debtors' Releases._ Upon the occurrence of the Effective Date, and except as to (i) the allowed claims set forth in Section 2 hereof, (ii) the Debtors' distribution entitlements in the Luxembourg Proceedings, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) the claims, if any, arising under the surviving contract set forth on Schedule B, and subject to the effectiveness of this Agreement in accordance with Section 9 below, and in consideration of the foregoing and LBLSA's execution of this Agreement, each Debtor on behalf of itself, its estate, its successors and assigns, will fully and forever release, discharge and acquit LBLSA, and the Joint Liquidators, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including all US Avoidance Actions.

8.2. _LBLSA's Releases._ Upon the occurrence of the Effective Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (ii) the performance of the obligations set forth herein, and (iii) the claims, if any, arising under the surviving contract set forth on Schedule B, and subject to the effectiveness of this Agreement in accordance with Section 9 below, and in consideration of the foregoing and each Debtor's execution of this Agreement, LBLSA, and its successors and assigns, will fully and forever release, discharge and acquit each Debtor, and Alvarez & Marsal North America LLC, and their respective successors, assigns, officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, (i) any administrative expense claims arising under section 503 of the US Bankruptcy Code, and (ii) all Luxembourg Avoidance Actions.

9. **_Effectiveness of Agreement_**.

9.1. Sections 3, 4.6, 5.5 and 9 through 23 of this Agreement shall be effective upon the Execution Date.

9.2. All other provisions of this Agreement shall be effective upon the first date that all of the following have occurred: (a) approval of this Agreement by the US Bankruptcy Court, (b) the occurrence of the Effective Date, (c) approval of this Agreement by the Luxembourg Bankruptcy Court by the Luxembourg Approval Order, and (d) approval of the LBEF Settlement Agreement by (i) the US Bankruptcy Court and (ii) the Luxembourg Bankruptcy Court. On the date that all of the foregoing conditions have been satisfied, the Tolling Agreement shall be deemed terminated without further action of the Parties.

10. **Termination**.

10.1.    *Automatic Termination*.  This Agreement shall automatically terminate on any date on which (a) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and LBLSA; (b) the US Bankruptcy Court denies the motion seeking the US Confirmation Order with prejudice; (c) the Luxembourg Bankruptcy Court denies approval of, and does not authorize LBLSA to perform its obligations under, this Agreement, or (d) the LBEF Settlement Agreement is terminated in accordance with its terms.

10.2.    *The Debtors' Right to Terminate*.  Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to LBLSA if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of LBLSA hereunder, taken as a whole, and LBLSA shall fail to cure such breach within ten (10) days following written notice of such breach from the Debtors, (b) LBLSA allows and provides for materially different treatment of claims held by other creditors of LBLSA that are legally similar to the Allowed LBHI Claim that results in such other creditors having a recovery entitlement in respect of said claims that is materially higher than the recovery entitlement in respect of the Allowed LBHI Claim, (c) the Luxembourg Approval Order does not become final and non-appealable by the Effective Date or (d) a Third Party Objection to the Allowed LBHI Claim is filed and granted by the Luxembourg Bankruptcy Court, provided that the filing of a Third Party Objection shall not give rise to an action for breach or damages against the Joint Liquidators or LBLSA.

10.3.    *LBLSA's Right to Terminate*.  LBLSA shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from LBLSA.

10.4.    *Effect of Termination*.  In the event that this Agreement is terminated, then neither this Agreement, nor any motion or other pleading filed in the US Bankruptcy Court or the Luxembourg Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Amended Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

11. **Venue and Choice of Law**.

11.1.    *Venue*.  To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the US Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the US Bankruptcy Court; provided, however, that any actions or proceedings arising out of disputes in the amount or validity of the LBHI Claim shall be within the exclusive jurisdiction of the Luxembourg Bankruptcy Court.  Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.  If the US Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction.  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding

arising out of or relating to this Agreement with the US Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Section 12 below. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

11.2. *Choice of Law.* This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the US Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the US Bankruptcy Code; provided, however, that any claims and disputes arising out of the LBHI Claim shall be governed by and construed in accordance with Luxembourg law except as otherwise provided in the underlying agreements or applicable law. Without prejudice to the foregoing, for the purposes of the approval of the Agreement by the Luxembourg Bankruptcy Court, it is agreed that the Agreement is also intended to constitute a settlement ('*transaction*') pursuant to article 2044 *et. seq.* of the Luxembourg Civil Code.

12. **Notices**. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To the Debtors at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

Kleyr Grasso Associés
122, rue A. Fischer
B.P. 559
L-2015 Luxembourg-City
Attn: Me Marc Kleyr
Facsimile: +352 227 332

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Sunny Singh, Esq.
Facsimile: (212) 310-8007

To LBLSA at:

2, rue de la Chapelle
B.P. 320
L- 2013 Luxembourg

Attn:  Maître Jacques Delvaux and Maître Laurent Fisch
Facsimile: +352 24 19 77 (with a copy to  + 352 297 299)

MOLITOR, Avocats à la Cour
8, rue Ste Zithe
B.P. 690
L-2016 Luxembourg-City
Attn:  Me Paulo Da Silva
Facsimile: +352 227 299

With a copy (which shall not constitute notice) to:

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
U.S.A.
Attn:  Shmuel Vasser, Esq.
Facsimile : (212) 698-3599

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

14. **Service of Process / Election of Domicile.** For the purpose of the Luxembourg Approval Process, each Debtor elects domicile with Mr. Marc Kleyr, Avocat à la Cour, residing in Luxembourg-City, 122, rue A. Fischer or any other lawyer admitted to the Bar of Luxembourg-City. For the same purpose, the Joint Liquidators elect domicile with Mr. Paulo Da Silva, Avocat à la Cour, residing in Luxembourg-City, 8, rue Ste Zithe or with any other lawyer admitted to the Bar of Luxembourg-City.

14. **Expenses**. The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

15. **No Admission of Liability**. Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

16. **Entire Agreement**. This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof. This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Amended Plan and the terms of this Agreement, the terms of this Agreement shall control. The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

17. **No Oral Modifications**. This Agreement may not be modified or amended orally. This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto. Any waiver of compliance with any term or provision of this Agreement on the part of the Debtors must be provided in a writing signed by LBLSA. Any waiver of compliance with any term or provision of this Agreement on the part of LBLSA must be provided in a writing signed by each Debtor. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

18.    **Construction**.   This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

19.    **Binding Effect; Successor and Assigns**.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, that no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

20.    **Counterparts**.   This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

21.    **Headings; Schedules**.  The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule herein shall be to the Schedules attached hereto.

22.    **Severability and Construction**.  If any term of other provision of this Agreement is invalid, illegal or incapable of being enforced, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is no affected in any manner materially adverse to the Parties.  Upon any determination that any term or other provision is invalid, illegal, or incapable of being enforced, each Party hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of this Agreement as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

23.    **Waiver of Jury Trial.**  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 23 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC.,
LEHMAN BROTHERS COMMODITY
SERVICES INC., LEHMAN BROTHERS
SPECIAL FINANCING INC., LEHMAN
BROTHERS OTC DERIVATIVES INC.,
LEHMAN BROTHERS COMMERCIAL
CORPORATION, LB 745 LLC, PAMI
STATLER ARMS LLC, CES AVIATION LLC,
CES AVIATION V LLC, CES AVIATION IX
LLC, LEHMAN SCOTTISH FINANCE L.P.,
BNC MORTGAGE LLC, LB ROSE RANCH
LLC, STRUCTURED ASSET SECURITIES
CORPORATION, LB 2080 KALAKAUA
OWNERS LLC, MERIT LLC, LB PREFERRED
SOMERSET LLC, LB SOMERSET LLC, as
Debtors and Debtors in Possession


By: _____
Name: John Suckow
Title: Authorized Signatory


LEHMAN BROTHERS DERIVATIVES
PRODUCTS INC., LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., EAST DOVER
LIMITED, LUXEMBOURG RESIDENTIAL
PROPERTIES LOAN FINANCE S.A.R.L., as
Debtors and Debtors in Possession


By: _____
Name: Daniel Ehrmann
Title: Authorized Signatory


LEHMAN BROTHERS (LUXEMBOURG) S.A. (IN JUDICIAL LIQUIDATION), a company incorporated in Luxembourg (registered number RCS (Luxembourg) B 39564 ) whose registered office is at 2, rue de la Chapelle, L-2013 Luxembourg-City


Jointly by: _____
Name: Jacques Delvaux
Title:   Liquidator


and by: _____
Name: Laurent Fisch
Title:   Liquidator

13

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., LEHMAN COMMERCIAL PAPER INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS OTC DERIVATIVES INC., LEHMAN BROTHERS COMMERCIAL CORPORATION, LB 745 LLC, PAMI STATLER ARMS LLC, CES AVIATION LLC, CES AVIATION V LLC, CES AVIATION IX LLC, LEHMAN SCOTTISH FINANCE L.P., BNC MORTGAGE LLC, LB ROSE RANCH LLC, STRUCTURED ASSET SECURITIES CORPORATION, LB 2080 KALAKAUA OWNERS LLC, MERIT LLC, LB PREFERRED SOMERSET LLC, LB SOMERSET LLC, as Debtors and Debtors in Possession

By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name: John Suckow
Title: Authorized Signatory

LEHMAN BROTHERS DERIVATIVES PRODUCTS INC., LEHMAN BROTHERS FINANCIAL PRODUCTS INC., EAST DOVER LIMITED, LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtors and Debtors in Possession

By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name: Daniel Ehrmann
Title: Authorized Signatory

LEHMAN BROTHERS (LUXEMBOURG) S.A. (IN JUDICIAL LIQUIDATION), a company incorporated in Luxembourg (registered number RCS (Luxembourg) B 39564 ) whose registered office is at 2, rue de la Chapelle, L-2013 Luxembourg-City


Jointly by: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name: Jacques Delvaux
Title: Liquidator


and by: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name: Laurent Fisch
Title: Liquidator

Proofs of Claim

| Claim Number | Claimant | Debtor against which claim was filed | Amount (USD) |
|---|---|---|---|
| 32146 | LEHMAN BROTHERS (LUXEMBOURG) S.A. (IN JUDICIAL LIQUIDATION) | Lehman Brothers Holdings Inc. | $ 331,132 |
| 32147 | LEHMAN BROTHERS (LUXEMBOURG) S.A. (IN JUDICIAL LIQUIDATION) | Lehman Brothers Holdings Inc. | 307,425,455 |
| 33055 | LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A. * | Lehman No Case Asserted/All Case Asserted | - |
| 33181 | LEHMAN BROTHERS LUXEMBOURG S.A. | Lehman No Case Asserted/All Case Asserted | 109,779,504 |

* Claimant was incorrectly labeled on proof of claim.  The actual claimant is Lehman Brothers (Luxembourg) S.A.

**Schedule B**

1.   Confidentiality and Information Sharing Agreement, dated February 16, 2011, between Lehman Brothers Holdings Inc. and Lehman Brothers (Luxembourg) S.A. in judicial liquidation

**EXHIBIT 6**


**COPIES OF SETTLEMENT AGREEMENTS AMONG DEBTORS AND
ANY CREDITORS PURSUANT TO SECTION 6.5(j) OF THE PLAN**

**EXHIBIT 6**

**PART A – AGREEMENT AMONG DEBTORS AND BUNDESVERBAND
DEUTSCHER BANKEN E.V.**

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN. SUCH SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN WILL NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of September 30, 2011 (the "Execution Date"), by and among the Debtors[1] and the Bundesverband deutscher Banken e.V. ("BdB"). The Debtors and BdB shall each be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on November 12, 2008, the German banking regulator filed insolvency proceedings against Lehman Brothers Bankhaus Aktiengesellschaft ("Bankhaus"), and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as Insolvency Administrator (*Insolvenzverwalter*) of Bankhaus (the "Bankhaus Insolvency Proceeding");

WHEREAS, BdB has filed certain proofs of claim against LBHI, Claim Nos. 17537 and 66381 (amending Claim No. 17538) (the "Proofs of Claim"), asserting amounts due from LBHI to BdB, pursuant to (i) that certain guarantee dated November 21, 2002 between LBHI and Bankhaus (the "Guarantee"), and (ii) that certain indemnity dated October 26, 1993, by LBHI for the benefit of BdB (the "Indemnity");

WHEREAS, the Parties are desirous of resolving all disputes and all other outstanding issues between the Parties regarding, *inter alia*, the enforceability of the Guarantee and the Indemnity, and the methodology of calculating the amount of LBHI's liability, if any, to BdB thereunder, and avoiding extensive and expensive litigation;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 19627 (said plan, as it may be amended or modified, the "Plan") and, by order dated September 1, 2011, ECF No. 19631, the Bankruptcy Court approved the Disclosure Statement relating thereto, filed September 1, 2011, ECF No. 19629 (the "Disclosure Statement"); and

---

[1] As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    *Definitions*

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Allowed BdB Claim" has the meaning ascribed to it in section 2.1.

"Bankhaus Claims" means, as of any date, the aggregate amount of claims filed by BdB in the Bankhaus Insolvency Proceeding as of such date (based on compensation payments made to depositors of Bankhaus on the legal basis that BdB is successor of these depositors, as well as on BdB's own rights under By-laws, as defined below in section 5.5), together with the aggregate amount of BdB Costs as of such date, and Fixed Contingent Payment Claims, but, except as provided below with respect to the component thereof consisting of Fixed Contingent Payment Claims of the kind described in item (ii) of the definition of Fixed Contingent Payment Claims, in no event shall the Bankhaus Claims be more than the amount of such claims as accepted or approved (*festgestellt*) in the Bankhaus Insolvency Proceeding.

"Bankhaus Distributions" means distributions made pursuant to the Bankhaus Insolvency Proceeding on account of the Bankhaus Claims, net of any such amounts distributed that BdB is required, pursuant to applicable German law, to repay to Bankhaus.

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"BdB Costs" means BdB's actual costs and expenses incurred from time to time in connection with its compensation of Bankhaus depositors including, without limitation, refinancing expenses (including costs, commissions and interest) and professional fees.

"Business Day" means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York or Berlin, Germany are required or authorized to close by law or executive order.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Confirmation Date" means the date of the entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Order" means an order of the Bankruptcy Court (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Contingent Payment Claims" means claims by purported depositors of Bankhaus, such as Bankhaus affiliates, against BdB that may result in a payment by BdB to such depositor.

"Fixed Contingent Payment Claims" means either Contingent Payment Claims (i) that are accepted (*festgestellt*) in the Bankhaus Insolvency Proceeding or (ii) for which there is an enforceable judgment of the applicable German court or a court settlement (*gerichtlicher Vergleich*) directing BdB to pay the applicable depositors of Bankhaus.

"<u>Distribution Date</u>" has the meaning ascribed to it in the Plan.

"<u>Effective Date</u>" means the date that the Plan becomes effective as provided for therein.

"<u>Proofs of Claim</u>" has the meaning ascribed to it in the Recitals.

2.        ***Settlement of The Proofs of Claim***.

2.1.        Upon the Effective Date, pursuant to the Plan, Claim No. 17537 shall be allowed as non-priority unsecured third party guarantee claim against LBHI, classified under the Plan in LBHI Class 9, in the amount of $1,288.42 and Claim No. 66381 shall be allowed as non-priority unsecured third party guarantee claims against LBHI, classified under the Plan in LBHI Class 9, in the amount of $5,298,482,922.16 (the "<u>Allowed BdB Claim</u>").

2.2.        Other than the Allowed BdB Claim, all other claims asserted or held by BdB against the Debtors shall be deemed expunged.

2.3.        The Allowed BdB Claim shall not, except as otherwise specifically provided for herein, be subject to further reduction, objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors.

2.4.        Pursuant to section 6.5(j) of the Plan, this Agreement shall be deemed incorporated into the Plan, and, accordingly, the provisions of this Agreement shall supersede any contrary or inconsistent provisions of the Plan with respect to BdB and the Allowed BdB Claim.

3.        ***Distribution***

3.1.        In order to ensure that distributions are not made in respect of the Allowed BdB Claim, whether or not held by BdB that, together with the Bankhaus Distributions, exceed 100% of the amount of the Bankhaus Claims, BdB will provide LBHI with notice of each Bankhaus Distribution within twenty (20) Business Days following the receipt of such distribution by sending LBHI an itemized update substantially in the form attached hereto as <u>Exhibit A</u> (each, a "<u>Bankhaus Distributions Update</u>"). BdB shall include in each Bankhaus Distributions Update, the following information, each as of the date of said Bankhaus Distribution, (a) the amount of the Bankhaus Claims as accepted (*festgestellt*) or as Fixed Contingent Payment Claims of the kind described in item (ii) of the definition of such term and (b) receipts or other evidence that BdB has received actual payments or made actual repayments of any amounts added to or deducted from the Bankhaus Distributions since the prior Bankhaus Distributions Update (or, in the case of the first Bankhaus Distributions Update, since the date of this Agreement). As soon as the Bankhaus Distributions and the distributions in relation to the Allowed BdB Claim equal 100% of the amount of the Bankhaus Claims, as accepted (*festgestellt*) or as Fixed Contingent Payment Claims of the type described in section (ii) of the definition of such term, no further distributions shall be made in respect of the Allowed BdB Claim. If BdB fails to provide the notice required by this section 3.1, all distributions on account of the Allowed BdB Claim shall be immediately suspended until such information is provided.

3.2.        As of the date hereof, the amount of the Bankhaus Claims as accepted (*festgestellt*) is $9,017,937,684.21 (being the sum of the amounts set forth in the first sentence of section 5.5 (€6,361,859,253.16 and €1,546.99), converted into US Dollars at the exchange rate in effect on September 15, 2008 ($1.4175/€1). BdB may, from time to time at BdB's discretion, provide LBHI with updates of the aggregate Bankhaus Claims as of such date by sending LBHI an itemized update substantially in the form attached hereto as <u>Exhibit B</u> (each, a "<u>Bankhaus Claims Update</u>"). BdB shall

include in each Bankhaus Claims Update receipts or other evidence that BdB has made actual payments of any amounts added to the Bankhaus Claims since the prior Bankhaus Claims Update (or, in the case of the first Bankhaus Claim Update, since the date of this Agreement).

3.3.    For the purposes of implementing Section 8.13 of the Plan with respect to distributions on account of the Allowed BdB Claim, on any Distribution Date LBHI shall distribute to BdB the lesser of (i) the distribution to which BdB would be entitled pursuant to the Plan without giving effect to Section 8.13 of the Plan and (ii) the distribution that, together with all prior distributions on account of the Allowed BdB Claim and all prior Bankhaus Distributions, would result in BdB receiving an aggregate distribution equal to 100% of the Bankhaus Claims as of such Distribution Date (such lesser amount, the "<u>BdB Distribution Amount</u>").

3.4.    If, as of any Distribution Date, the Bankhaus Distributions and the distributions on account of the Allowed BdB Claim equal 100% of the amount of the Bankhaus Claims, no distributions shall be made under the Plan on account of the Allowed BdB Claim on such Distribution Date (each such Distribution Date, a "<u>Non-Payment Distribution Date</u>").  If, as of any subsequent Distribution Date following either one or more Non-Payment Distribution Dates or a Distribution Date on which BdB has received less than the distribution pursuant to section 3.3(i), the Bankhaus Claims have increased pursuant to section 3.2 (the "<u>Increased Bankhaus Claims</u>") such that the BdB Distribution Amount is greater than zero on such subsequent Distribution Date, LBHI shall make a catch-up distribution to BdB to achieve the same result as if the Bankhaus Claims had been an amount equal to such Increased Bankhaus Claims as of all prior Distribution Dates (including any Non-Payment Distribution Dates) and as of such subsequent Distribution Date.

3.5.    In the event that, at any point in time, distributions received by BdB on account of the Allowed BdB Claim, whether or not held by BdB, together with the Bankhaus Distributions equal 100% of the amount of the Bankhaus Claims, LBHI may assert against Bankhaus any contractual or statutory rights it may have acquired against Bankhaus on account of distributions which LBHI made to BdB (e.g. claims for reimbursement) in accordance with applicable German law, <u>provided</u> LBHI's right to assert such contractual or statutory rights shall be enforceable only to the extent and for so long as distributions received by BdB in respect of the Allowed BdB Claim, together with Bankhaus Distributions, continue to equal 100% of the Bankhaus Claims (after taking into account any Increased Bankhaus Claims).

3.6.    Any reference contained in this Agreement to BdB or the Allowed BdB Claim also refers to any transferee or any subsequent transferee of the Allowed BdB Claim and the transferred Allowed BdB Claim.

4.    ***Plan Support***

4.1.    *The Debtors' Obligations.*  The Debtors will (a) prosecute the Plan and entry of a Confirmation Order with respect to the Plan and (b) seek approval of the settlements provided for under this Agreement, pursuant to section 6.5 of the Plan.

4.2.    *BdB's Obligations.*  Provided this Agreement has not been validly terminated, BdB agrees to perform and comply with the following obligations as to the Plan, which obligations shall become effective upon the Execution Date:

(a)    BdB shall not commence any proceeding or otherwise prosecute, join in, or support any objection to, or oppose or object to, the Plan, and will not consent to, support, or participate in the formulation of any other chapter 11 plan in the Chapter 11 Cases, provided that this Agreement has not been terminated pursuant to section 9 of this Agreement.

(b)     BdB shall timely vote to accept the Plan, <u>provided</u>, that BdB has been properly solicited pursuant to section 1125 of the Bankruptcy Code.

(c)     BdB shall support the confirmation and consummation of the Plan.

4.3.     Notwithstanding anything contained in section 4 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of votes for the acceptance of the Plan or the Plan pursuant to section 1125 of the Bankruptcy Code. Acceptance of the Plan will not be solicited until the Disclosure Statement, Plan and related ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

5.     ***BdB's Representations and Warranties***.  In order to induce the Debtors to enter into and perform their obligations under this Agreement, BdB hereby represents, warrants and acknowledges as follows:

5.1.     *Authority*.  (i) BdB has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by BdB of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of BdB and no other proceedings on the part of BdB are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2.     *Validity*.  This Agreement has been duly executed and delivered by BdB and constitutes the legal, valid and binding agreement of BdB, enforceable against BdB in accordance with its terms.

5.3.     *Authorization of Governmental Authorities and Creditors*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by BdB pursuant to this Agreement.

5.4.     *Title; No Prior Transfer of Claims*.

(a)     (i) BdB is the beneficial owner of, and SdB-Sicherungseinrichtungsgesellschaft deutscher Banken mbH ("<u>SdB</u>") holds – in a fiduciary capacity – legal title to, the Proofs of Claim (including any proceeds from the Allowed BdB Claim), (ii) the rights of BdB and SdB in and to the Proofs of Claim (including any proceeds from the Allowed BdB Claim) are free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances (except in respect of the assignment of legal title for security purposes (*Sicherungsabtretung*) (the "Fiduciary Assignment") in and to the Proofs of Claim (including any proceeds from the Allowed BdB Claim) made by BdB to SdB in order to secure the loan made by SdB to BdB from the proceeds of the issuance of bonds refinancing of payments made by the BdB to depositors of Bankhaus pursuant to the By-laws (as defined below), (iii) BdB is not aware of any third-party rights with respect to the Proofs of Claim (including any proceeds from the Allowed BdB Claim) as of the Execution Date (other than the Fiduciary Assignment), (iv) except in respect of the Fiduciary Assignment, BdB and SdB have not transferred or assigned to any other person any of the Proofs of Claim (including the Allowed BdB Claim), in whole or in part, and (v) BdB has been duly authorized (*ermächtigt*) by SdB pursuant to Section 185 of the German Civil Code (*Bürgerliches Gesetzbuch*) to enter into this Agreement and has authorized all distributions that are to be made in respect of the Allowed BdB Claims to be made to BdB.

(b)     BdB may not, at any time prior to the Effective Date, transfer the Proofs of Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to BdB under the Plan, in whole or in part.  After the Effective Date, BdB may, at any time, transfer the Allowed BdB

Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to BdB under the Plan, in whole or in part, so long as the transferee executes a joinder in this Agreement in the form annexed hereto as <u>Exhibit C</u> with respect to such transferred claims (a "<u>Joinder</u>"). Except as otherwise provided in this section 5.4, from the Effective Date, BdB shall not make any transfer of the Allowed BdB Claim, or any rights or interests arising thereunder or related thereto, to parties that do not execute a Joinder. From the Execution Date, and for so long as it holds an economic interest in the Proofs of Claim or the Allowed BdB Claim, any transfers of the Proofs of Claim or Allowed BdB Claim that are not in compliance with this section 5.4(b) shall be deemed null and void and without effect.

(c)     BdB shall not grant any proxies, deposit the Proofs of Claim or the Allowed BdB Claim into a voting trust, or enter into a voting agreement or any similar agreement with respect thereto, unless such agreement provides, in writing, in a form enforceable by, and reasonably satisfactory to, the Debtors for compliance with this Agreement.

5.5.     *Bankhaus Claims*.  As of the date hereof, the Bankhaus Claims have been accepted or approved (*festgestellt*) in the Bankhaus Insolvency Proceeding in the amounts of not less than €6,361,859,253.16 and €1,546.99 as claims based on compensation payments on the legal basis that BdB is successor of those depositors, as well as based on BdB's own rights under the by-laws of the German Deposit Protection Fund (*Statut des Einlagensicherungsfonds*) (the "<u>By-laws</u>"). The Bankhaus Claims are subject to further acceptance or approval in higher amounts in the Bankhaus Insolvency Proceeding.

5.6.     *No Reliance*.  BdB (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as BdB has deemed appropriate, made his own analysis and decision to enter into this Agreement, except that BdB has relied upon each Debtor's express representations, warranties and covenants in this Agreement. BdB acknowledges that it has entered into this Agreement voluntarily and of his own choice and not under coercion or duress.

6.     **Lehman US's Representations and Warranties**.  In order to induce BdB to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

6.1.     *Authority*.  Subject to the occurrence of the Effective Date, (i) each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions herein contemplated herein.

6.2.     *Validity*.  Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

6.3.     *Authorization of Governmental Authorities*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and each Non-Debtor Affiliate of this Agreement, other than entry of the Confirmation Order.

6.4.    *No Reliance*.  Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon BdB or any of its affiliates or any officer, employee, agent or representative thereof, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor has relied upon BdB's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

7.    ***Releases.***

7.1.    *Lehman US's Releases*.  Upon the occurrence of the Effective Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (ii) the performance of the obligations set forth herein, and subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and the BdB's execution of this Agreement, each Debtor on behalf of itself, its estate, its successors and assigns, will fully and forever release, discharge and acquit BdB, and its directors, officers, partners, members, representatives, employees, financial advisors, tax advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent.

7.2.    *BdB's Releases*.  Upon the occurrence of the Effective Date, and except as to (i) the Allowed BdB Claim, (ii) BdB's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) BdB's distribution entitlements in the Bankhaus Insolvency Proceeding, and, subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and each Debtor's execution of this Agreement, BdB and its successors and assigns, will fully and forever release, discharge and acquit each Debtor, and their respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, any administrative expense claims arising under section 503 of the Bankruptcy Code.

8.    ***Effectiveness of Agreement***.

8.1.    Sections 4, 5, 6, 8.1, 8.3, and 9 of this Agreement shall be effective upon the Execution Date.

8.2.    This Agreement, with the exception of sections 4, 5, 6, 8.1, 8.3, and 9, shall be effective upon the Effective Date.

8.3.    This entire Agreement shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, except as to this section 8, if the entry of the Confirmation Order is denied with prejudice.

9.      *Termination*.

9.1.      *Automatic Termination*.  This Agreement shall automatically terminate on any date on which (i) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and Bankhaus, or (ii) the Bankruptcy Court denies the motion seeking the Confirmation Order with prejudice.

9.2.      *Lehman US's Right to Terminate*.  Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to BdB if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of BdB hereunder, taken as a whole, and BdB shall fail to cure such breach within ten (10) days following written notice of such breach from any of the Debtors (b) entry of the Confirmation Order is denied with prejudice by final and non-appealable order. Notwithstanding anything to the contrary in this Agreement, (i) nothing herein requires any Debtor to breach any fiduciary obligations it has under applicable law; and (ii) to the extent such fiduciary obligations require any Debtor to terminate its obligations hereunder, it may do so without incurring any liability to any creditors.

9.3.      *BdB's Right to Terminate*.  BdB shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from BdB; (b) (b) entry of the Confirmation Order is denied with prejudice by final and non-appealable order; (c) LBHI makes any changes or amendments to the Plan or Disclosure Statement, or LBHI takes any other action (including, without limitation, with respect to claims, asset transfers or allocations) in each case, that individually or, in the aggregate together with all other such changes, amendments, actions and agreements, will, if the Plan were to be consummated, materially and adversely affect the treatment of, estimated recoveries by, or distribution to, or proportionate share of the LBHI's assets that are distributed pursuant to the Plan to the Allowed BdB Claims; *provided, however*, that with respect to section 9.3(c), (i) the Debtors do not guarantee, represent, warrant or otherwise commit that any creditor will receive any specific recovery amount or proportion under the Plan, and (ii) modifications to the projected recovery amounts or proportions set forth in the Disclosure Statement due to or based upon, among other things, any factor, including, without limitation, revised projections of asset values or the amount, enforceability and/or priority of any claims shall not constitute materially different or materially adverse terms of the Plan; or (d) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and Bankhaus.

9.4.      *Effect of Termination*.  In the event that this Agreement is terminated in accordance with its terms by any Party, then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

10.      **Venue and Choice of Law**.

10.1.      *Venue*.  The Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.  Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any

foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in section 11 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

10.2. *Choice of Law*. This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code.

11. ***Notices***. All notices and other communications given or made pursuant to this Agreement shall be in writing and all communications shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three Business Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) three Business Days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Facsimile: (212) 310-8007

To BdB at:

Bundesverband deutscher Banken e.V.
Burgstraße 28
10178 Berlin
Germany
Attn: Jørgen Bang, Direktor, and Jan-Philipp Nolte, Abteilungsdirektor
Facsimile: +49.30.1663.3599

With copies (which shall not constitute notice) to:

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Mark A. Broude, Esq.
Facsimile: (212) 751-4864

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attn: Dr. Uwe Eyles and Volker Schäfer
Facsimile: +49-69-6062-6700

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

12.     *Expenses*.   The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party; provided nothing in this section 12 shall reduce the Allowed BdB Claim.

13.     *No Admission of Liability*.   Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

14.     *Entire Agreement*.   This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof.  This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Plan and the terms of this Agreement, the terms of this Agreement shall control.  The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

15.     *No Oral Modifications*.   This Agreement, including this section 15, may not be modified or amended orally.  This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.  Any waiver of compliance with any term or provision of this Agreement on the part of the Debtors must be provided in a writing signed by BdB.  Any waiver of compliance with any term or provision of this Agreement on the part of BdB must be provided in a writing signed by each Debtor.  No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

16.     *Construction*.   This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

17.     *Binding Effect; Successor and Assigns*.   This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided*, *however*, that subject to section 5.4, no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

18.     *Counterparts*.   This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart.

19.     *Headings; Schedules and Exhibits*.   The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement.  Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement.  References to sections, unless otherwise indicated, are references to sections of this Agreement.  All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes.  Reference to any Schedule herein shall be to the Schedules attached hereto.

20.     *Severability and Construction*.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

21.     *Acknowledgments*.  THIS AGREEMENT, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN, ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES.  EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A CHAPTER 11 PLAN FOR THE PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE.  THE DEBTORS WILL NOT SOLICIT ACCEPTANCES OF THE PLAN FROM ANY PERSON OR ENTITY UNTIL THE PERSON OR ENTITY HAS BEEN PROVIDED WITH A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.  NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (AS AMENDED), THE SECURITIES EXCHANGE ACT OF 1934 (AS AMENDED), ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

22.     *Waiver of Jury Trial*.  EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 22</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.  THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: Daniel J. Ehrmann
Title: Vice President

Bundesverband deutscher Banken e.V.

By: _____

Name: Dr. Michael Kemmer
Title: Hauptgeschäftsführer, Mitglied des Vorstands

By: _____

Name: Dr. Hans-Joachim Massenberg
Title: Mitglied der Hauptgeschäftsführung

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEMAN BROTHERS OTC DERIVATIVES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMODITY SERVICES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS DERIVATIVE PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS SCOTTISH FINANCE L.P. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its general partner Property Asset Management Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION V LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION IX LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Vice President

EAST DOVER LIMITED, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Duly Authorized Officer

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Manager

BNC MORTGAGE LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _John Suchow / PE_____
Name: John Suckow
Title: Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB ROSE RANCH LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

LB 2080 KALAKAUA OWNERS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

MERIT LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its Manager Lehman Commercial Paper Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB PREFERRED SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB 745 LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

PAMI STATLER ARMS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

**Exhibit A:  Bankhaus Distributions Update**

[Letterhead of BdB]

<u>Via facsimile and mail:</u>

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Fascimile: (646) 834-0874

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Fascimile: (212) 310-8007

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Mark A. Broude, Esq.
Facsimile: (212) 751-4864

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attn: Dr. Uwe Eyles and Volker Schäfer
Facsimile: +49-69-6062-6700

Berlin, [date]

**Bankhaus Distributions Update pursuant to Section 3.1 of the Settlement Agreement dated [Date] September 2011 between Lehman Brothers Holdings Inc., other Debtors and Bundesverband deutscher Banken e.V.**

Dear Sirs:

We refer to the above-mentioned agreement (the "<u>Settlement Agreement</u>"). Save as expressly stated otherwise, capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement.

This is to confirm that, as of [date], (a) the aggregate amount of the Bankhaus Claims are as follows and (b) we have received the following distributions made pursuant to the Bankhaus Insolvency Proceeding on account of the Bankhaus Claims, net of any such amounts distributed that we were required, pursuant to applicable German law, to repay to Lehman Brothers Bankhaus Aktiengesellschaft i. I. (the "<u>Bankhaus Distributions</u>"):

| Bankhaus Claims | | |
|---|---|---|
| Bankhaus Claims as of [date of this letter] | Amount in € | Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1) |
| Claims filed and accepted (festgestellt) by the insolvency administrator in the Bankhaus Insolvency Proceeding (based on compensation payments to depositors of Bankhaus, as well as on our own rights under the By-laws) | 6,361,859,253.16 | 9,017,935,491.35 |
| Claims filed and accepted (festgestellt) by the insolvency administrator in the Bankhaus Insolvency Proceeding (based on compensation payments to depositors of Bankhaus, as well as on our own rights under the By-laws) | 1,546.99 | 2,192.86 |
| Sum of Bankhaus Claims as of [date of this letter] | **6,361,860,800.15** | **9,017,937,684.21** |

| Bankhaus Distributions as of the date hereof | | | | |
|---|---|---|---|---|
| **Payment Date / Repayment Date** | **Distributed amount** | | **Amounts distributed that BdB was required, pursuant to applicable German Law, to repay to Bankhaus** | |
| | **Amount in €** | **Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1)** | **Amount in €** | **Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1)** |
| | October 20, 2010 | 1,081,516,336.02 | 1,533,049,406.30 | | |
| 1. | [insert date] | [insert amount in € where applicable] | [insert amount in $, where applicable] | [insert amount in € where applicable] | [insert amount in $, where applicable] |
| 2. | [insert date] | [insert amount in € where applicable] | [insert amount in $, where applicable] | [insert amount in € where applicable] | [insert amount in $, where applicable] |
| | **Sum of Bankhaus Distributions** | **1,081,516,336.02** | **1,533,049,406.30** | | |

A bank confirmation evidencing [receipt of the distributed amounts referred to under 1.][execution of the repayments referred to under [2.]] is attached.

Yours sincerely,

Enclosure

# Exhibit B:  Bankhaus Claims Update

[Letterhead of BdB]

<u>Via facsimile and mail:</u>

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Fascimile: (646) 834-0874

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Fascimile: (212) 310-8007

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Mark A. Broude, Esq.
Facsimile: (212) 751-4864

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attn: Dr. Uwe Eyles and Volker Schäfer
Facsimile: +49-69-6062-6700

Berlin, [date]

**Bankhaus Claims Update pursuant to section 3.2 of the Settlement Agreement dated
[date] September 2011 between Lehman Brothers Holdings Inc., other Debtors and Bundesverband
deutscher Banken e.V.**

We refer to the above-mentioned agreement (the "<u>Settlement Agreement</u>"). Save as expressly stated
otherwise, capitalized terms used herein shall have the meanings ascribed to them in the Settlement
Agreement.

This is to confirm that, as of [date], the aggregate amount of the Bankhaus Claims, including the
aggregate BdB Costs, are as follows:

| **Bankhaus Claims** |
| --- |

| Nature of Bankhaus Claims as of Execution Date | Amount in € | Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1) |
|---|---|---|
| Claims filed and accepted (*festgestellt*) by the insolvency administrator in the Bankhaus Insolvency Proceeding (based on compensation payments to depositors of Bankhaus, as well as on our own rights under the By-laws) | 6,361,859,253.16 | 9,017,935,491.35 |
| Claims filed and accepted (*festgestellt*) by the insolvency administrator in the Bankhaus Insolvency Proceeding (based on compensation payments to depositors of Bankhaus, as well as on our own rights under the By-laws) | 1,546.99 | 2,192.86 |
| **Sum of Bankhaus Claims as of Execution Date** | **6,361,860,800.15** | **9,017,937,684.21** |
| 1.   <u>Fixed Contingent Payment Claims</u> that are accepted (*festgestellt*) in the Bankhaus Insolvency Proceeding, as evidenced by the attached updated extract from the insolvency schedule (*Auszug aus der Insolvenztabelle*) | [insert €amount] | [insert $ amount] |
| 2.   <u>Fixed Contingent Payment Claims</u> for which there is an enforceable judgment of the applicable German court or a court settlement (*gerichtlicher Vergleich*) directing BdB to pay the applicable depositors of Bankhaus, as evidenced by the attached [court ruling][minutes of the oral hearing] | [insert €amount] | [insert $ amount] |
| 3.   BdB Costs incurred in respect of <br> ☐   the refinancing of depositor compensation payments (in particular, interest payments to SdB and guarantee fees and other costs paid by SdB to the German Financial Market Stability Fund – *Sonderfonds Finanzmarktstabilisierung*) <br> ☐   legal fees related to 1., 2. and/or 3. above, all as filed and accepted (*festgestellt*) in the Bankhaus Insolvency Proceeding and evidenced by the attached updated extract from the insolvency schedule (*Auszug aus der Insolvenztabelle*) | [insert €amount] | [insert $ amount] |
| **Sum of Bankhaus Claims as of [date]** | **[insert sum in €]** | **[insert $ amount]** |

Yours sincerely,


<u>Enclosure</u>

**Exhibit C:  Form of Joinder**

# JOINDER TO PLAN SUPPORT AGREEMENT

## Dated as of [_], 2011

   **THIS JOINDER** (this "<u>Joinder</u>") to the Settlement Agreement made and entered into as of [ ], 2011, by and among the Debtors[2] and the Bundesverband deutscher Banken e.V. (the "<u>Transferor</u>") (as the same may hereafter be amended, modified or amended and restated, the "<u>Agreement</u>"), is made and entered into as of the date hereof by and between the Debtors and [TRANSFEREE] (the "<u>Transferee</u>"). All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Agreement.

## W I T N E S S E T H:

   **WHEREAS**, the Transferor has transferred to Transferee those Claims listed on <u>Schedule 1</u> attached hereto (the "<u>Transferred Claims</u>"); and

   **WHEREAS**, the Agreement requires Transferee to become a party to the Agreement with respect to the Transferred Claims, and the Transferee agrees to do so in accordance with the terms hereof.

   **NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Joinder hereby agree as follows:

   1. <u>Agreement to be Bound</u>. The Transferee hereby agrees that upon execution of this Joinder, with respect to the Transferred Claims, it shall become a party to the Agreement and shall be fully bound by, and subject to, all of the covenants, terms, obligations and conditions of the Agreement as though it were an original Party thereto.

   2. Promptly upon execution of this Joinder by the Transfee, Transfee shall deliver a copy of this Joinder including <u>Schedule 1</u> to the Debtors in accordance with the Agreement.

---

[2] As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("<u>LBHI</u>"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

3.　　　<u>Notices</u>.  All notices and other communications given or made to Transferee pursuant to the Agreement shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

> _____
> _____
> _____
> Attn: _____
> E-Mail: _____

> With a copy (which shall not constitute notice) to:
> _____
> _____
> _____
> Attn: _____
> E-Mail: _____

or to such other address as may have been furnished by Transferee by notice given in accordance with the requirements set forth in the Agreement.  Any notice given by delivery, mail or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

4.　　　This Joinder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

5.　　　This Joinder may be executed in counterparts, each such counterpart shall be deemed an original and all such counterparts shall together constitute one instrument.

* * * * *

This Joinder to the Agreement shall be effective as of the date first set forth above.

**[TRANSFEREE]:**

By: [_____]

By: _____
Name: _____
Title: _____

# EXHIBIT 6

## PART B – AGREEMENT AMONG DEBTORS AND DEUTSCHE BUNDESBANK

STRICTLY PRIVATE & CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT
ATTORNEY WORK PRODUCT

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN. SUCH SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN WILL NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of October 11, 2011 (the "Execution Date"), by and among the Debtors[1] and the Deutsche Bundesbank ("DB"). The Debtors and DB shall each be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "Chapter 11 Cases" and each a "Chapter 11 Case");

WHEREAS, on November 12, 2008, the German banking regulator filed insolvency proceedings against Lehman Brothers Bankhaus AG ("Bankhaus"), and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as Insolvency Administrator (*Insolvenzverwalter*) of Bankhaus (the "Bankhaus Insolvency Proceeding");

WHEREAS, DB has asserted the claims listed on Schedule A hereto against Bankhaus in the Bankhaus Insolvency Proceeding (the "Bankhaus Claims");

WHEREAS, DB has asserted that, pursuant to that certain guarantee dated November 21, 2002 between LBHI and Bankhaus (the "Guarantee"), LBHI guaranteed the payment of certain loans to Bankhaus (the "Bankhaus Loans");

WHEREAS, DB has filed (i) the proof of claim against LBHI, Claim No. 0000019951 (the "First Proof of Claim") and (ii) the claim against LBHI, Claim No. 0000067122 (the "Amended Proof of Claim" and, together with Claim No. 19951, the "Proofs of Claim"), which is an amendment to the First Proof of Claim;

WHEREAS, the Parties are desirous of resolving all disputes and all other outstanding issues between the Parties regarding, *inter alia*, the enforceability of the Guarantee and the methodology

---

[1]     As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc. ("LBSF"); Lehman Commercial Paper Inc. ("LCPI"); Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; and PAMI Statler Arms LLC.

of calculating the amount of LBHI's liability, if any, to DB thereunder, and avoiding extensive and expensive litigation;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 19627 (said plan, the "Existing Plan", and as it may be further amended or modified, the "Plan") and, by order dated September 1, 2011, ECF No. 19631, the Bankruptcy Court approved the Disclosure Statement relating thereto, filed September 1, 2011, ECF No. 19629 (the "Disclosure Statement"); and

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.   *Definitions*

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"Allowed DB Claim" has the meaning ascribed to it in section 2.1.

"Bankhaus Claims" has the meaning ascribed to it in the Recitals.

"Bankhaus Distribution" means (i) any distribution received by DB from Bankhaus on account of the Bankhaus Claims and (ii) any enforcement proceeds collected by DB, net of (a) any enforcement costs and (b) DB's interest claims, against which such enforcements proceeds may be applied, all as in accordance with applicable German law.

"Bankruptcy Code" has the meaning ascribed to it in the Recitals.

"Bankruptcy Court" has the meaning ascribed to it in the Recitals.

"Bankhaus Distribution Update" means a statement provided by DB to LBHI stating as of a reference date which is three (3) Business Days prior to the date of such statement (i) the Bankhaus Claims as accepted pursuant to the Bankhaus insolvency claims ledger (*zur Tabelle festgestellt*, Sections 175, 178 of the German Insolvency Code) and (ii) the amount of any Bankhaus Distributions which DB has received up to such reference date.

"Business Day" means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York or Frankfurt am Main are required or authorized to close by law or executive order.

"Chapter 11 Case" has the meaning ascribed to it in the Recitals.

"Collateral Portfolio" has the meaning given to such term in the prospectus relating to the Excalibur Notes dated 22 May 2008.

"Confirmation Date" means the date of the entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Order" means an order of the Bankruptcy Court (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"Effective Date" means the date that the Plan becomes effective as provided for therein.

"Excalibur Confirmations" means the various swap transactions relating to the Excalibur Notes governed by the Excalibur Master Agreement as evidenced by various confirmations, including but not limited to those set out in Schedule 1 (*Confirmations*) of the Excalibur Swap Termination Agreement.

"Excalibur Credit Support Document" means the guarantee provided by LBHI in favor of the Excalibur Issuer relating to the Excalibur Hedge Transaction, a copy of which is attached at Schedule 2 (*Guarantee*) of the Excalibur Swap Termination Agreement.

"Excalibur Credit Support Annex" means a credit support annex to the Excalibur Master Agreement.

"Excalibur Earn-Out Agreement" means the earn-out agreement dated on or about the Execution Date between LBHI and DB.

"Excalibur Hedge Transaction" means all Transactions (as defined in the Excalibur Master Agreement) entered into between LBSF and the Excalibur Issuer in accordance with the Excalibur Master Agreement, including but not limited to the Excalibur Confirmations.

"Excalibur Issuer" means Excalibur Funding No. 1 PLC, solely in its capacity as issuer of the Excalibur Notes.

"Excalibur Master Agreement" means an ISDA Master Agreement and Schedule to the ISDA Master Agreement dated as of 23 May 2008 between LBSF and the Excalibur Issuer.

"Excalibur Note Purchase Agreement" means the agreement dated on or about the Execution Date between LB RE Financing No.3 Limited, LBHI and DB relating to the sale of the Excalibur Notes.

"Excalibur Notes" means the €2,166,541,000 Class A Notes due 2054 issued by the Excalibur Issuer on or about 22 May 2008 (or thereafter) with ISIN number XS0363533414 and Common Code 036353341 and the €722,181,000 partially funded class B notes due April 2054 issued by the Excalibur Issuer pursuant to the terms of a trust deed dated 23 May 2008 and subject to a committed subscription agreement dated 23 May 2008.

"Excalibur Released Party" means (i) the Excalibur Issuer and (ii) the Excalibur Trustee.

"Excalibur Swap Documents" means the Excalibur Confirmations, the Excalibur Hedge Transactions, the Excalibur Master Agreement, the Excalibur Credit Support Annex and the Excalibur Credit Support Document.

"Excalibur Swap Termination Agreement" means the swap termination agreement between (i) LBSF, (ii) the Excalibur Issuer (iii) the Excalibur Trustee, (iv) DB, (v) Bankhaus, (vi) LB RE Financing No.3 Limited, and (vii) LBHI dated on or about the Execution Date.

"Excalibur Transaction Documents" has the meaning given to the term "Transaction Documents" in the prospectus relating to the Excalibur Notes dated 22 May 2008.

"Excalibur Trustee" means U.S. Bank Trustees Limited (formerly LaSalle Trustees Limited), solely in its capacity as trustee in relation to the Excalibur Notes and the Excalibur Transaction Documents.

"Initial Seller Claims" means any and all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, actions under chapter 5 of the Bankruptcy Code or similar actions under other applicable law, and claims of every kind, nature and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent by Lehman Commercial Paper Inc. against the Excalibur Issuer or the Excalibur Trustee relating to the acquisition of the underlying Collateral Portfolio from Lehman Commercial Paper Inc., Storm Funding Limited, Lehman Brothers Financing Limited and Lehman Brothers Bankhaus AG up to a maximum amount equal to EUR 21,554,205.10.

"LBHI Distributions" means distributions by LBHI on or after the Effective Date in respect of the Allowed DB Claim, valued in Euro, based on the European Central Bank (the "ECB") USD/EUR reference rate as of the date of such distribution and as published by the ECB on the Business Day following such date.

"LBHI Distribution Date" means any date on which LBHI Distributions are made following the Effective Date, which shall be (i) the regular dates as provided for in the Plan and (ii) additionally, any other date for which LBHI will make LBHI Distributions as notified by LBHI to DB at least fifteen (15) Business Days in advance of such date.

"Proofs of Claim" has the meaning ascribed to it in the Recitals.

Any reference to a document "directly related" to an Excalibur Transaction Document or the Excalibur Notes shall not include any written agreement entered into between any of the Parties on the Execution Date.

2. *Settlement of The Proofs of Claim.*

2.1. Upon the Effective Date, the Amended Proof of Claim will be allowed as a non-priority, senior unsecured claim in an aggregate amount equal to $3.5 billion (the "Allowed DB Claim").

2.2. Other than the Allowed DB Claim, all other claims directly held by DB against the Debtors prior to the Execution Date, including without limitation, the First Proof of Claim, will be deemed expunged; provided, however that the foregoing shall not apply to (i) any claims arising under the postpetition date agreements executed prior to the Execution Date that are listed on Schedule B, (ii) any claims arising under any postpetition date agreements executed on or after the Execution Date, and (iii) any claims directly held by an entity other than DB prior to the Execution Date or that DB may acquire, that are transferred or assigned to it, directly or indirectly, after the Execution Date (whether as assignee, transferee, subrogee or otherwise), (all claims that fall within the foregoing proviso in clauses (i) to (iii) above collectively, "Acquired Other Creditor Claims" provided however that "Acquired Other Creditor Claims" (a) shall not include (unless such claims otherwise fall within clause (iii) above) any claims directly held by DB against the Debtors in relation to or arising out of the Excalibur Swap Documents, the Excalibur Notes and any other Excalibur Transaction Document and any document directly related thereto, each of which shall be deemed expunged and (b) shall include any claims directly held by DB against the Debtors in relation to or arising out of the Excalibur Note Purchase Agreement, the Excalibur Earn-Out Agreement and/or the Excalibur Swap Termination Agreement). Any interest DB holds in any

claim as a collateral assignment or other form of security shall not be considered a claim directly held by DB for purposes of this provision. In the event that DB becomes the direct holder of any Acquired Other Creditor Claims, such Acquired Other Creditor Claims shall be subject to the provisions of section 4.2 of this Agreement.

2.3.    The Allowed DB Claim shall not be subject to further objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors or any avoidance claim under chapter 5 of the Bankruptcy Code or other law. The Debtors waive any and all rights to seek reconsideration of the Allowed DB Claim whether under section 502(j) of the Bankruptcy Code or otherwise.

2.4.    The Allowed DB Claim shall be classified in LBHI Class 5 (Senior Third Party Guaranty Claims) under the Plan.

2.5.    Pursuant to section 6.5(j) of the Plan, this Agreement shall be deemed incorporated into the Plan, and accordingly, the provisions of this Agreement shall supersede and control over any contrary or inconsistent provisions of the Plan with respect to DB and the Allowed DB Claim , including, without limitation, any contrary or inconsistent provisions in sections 8.10, 8.13, 8.14, 9.1, 13.8 and, as it relates to foreign law issues as provided for in section 10.1 herein, 14.1 of the Plan.

3.    *Distribution*

3.1.    In order to ensure that LBHI Distributions are not made in respect of the Allowed DB Claim, whether or not held by DB, that, together with the Bankhaus Distributions exceed 100% of the amount of the Bankhaus Claims, DB will provide LBHI with a Bankhaus Distribution Update forty-five (45) Business Days prior to each regular LBHI Distribution Date as provided for in the Plan. As soon as the Bankhaus Distributions and the LBHI Distributions in relation to the Allowed DB Claim equal 100% of the amount of the Bankhaus Claims, as accepted pursuant to the Bankhaus insolvency claims ledger (*zur Tabelle festgestellt*, Sections 175, 178 of the German Insolvency Code), no further distributions shall be made in respect of the Allowed DB Claim. If DB fails to provide the Bankhaus Distribution Update required by this section 3.1, all distributions on account of the Allowed DB Claim shall be immediately suspended until such Bankhaus Distribution Update is provided.

3.2.    LBHI shall have and retain any and all reimbursement rights that it may have against Bankhaus, under German law or under contract, with respect to the Bankhaus Claims in the Bankhaus Insolvency Proceeding consistent with applicable German law, but shall not be entitled to any right of reimbursement until such time as DB is paid in full in accordance with section 3.1 of this Agreement.

4.    *Plan Support*

4.1.    *The Debtors' Obligations.* The Debtors will (a) prosecute the Existing Plan (including for purposes of this Section 4 any amendments or modifications that do not give rise to a right of DB to terminate pursuant to Section 9.3(b) or (d) hereof) and entry of a Confirmation Order with respect to the Existing Plan and (b) seek approval of the settlements provided for under this Agreement pursuant to section 6.5 of the Existing Plan.

4.2.    *DB's Obligations.* DB agrees to perform and comply with the following obligations as to the Existing Plan, which obligations shall become effective upon the Execution Date notwithstanding any other provisions of this Agreement:

5

(a)     DB shall not commence any proceeding or otherwise prosecute, join in, or support any objection to, or oppose or object to, the Existing Plan, and will not consent to, support, or participate in the formulation of any other chapter 11 plan in the Chapter 11 Cases, provided that entry of the Confirmation Order has not been denied with prejudice or this Agreement is otherwise terminated pursuant to section 10 of this Agreement.

(b)     DB shall timely vote to accept the Existing Plan; provided, that DB has been solicited pursuant to section 1125 of the Bankruptcy Code.

(c)     DB shall support the confirmation and consummation of the Existing Plan.

4.3.     Notwithstanding anything contained in section 4 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of votes for the acceptance of the Plan or the Plan pursuant to section 1125 of the Bankruptcy Code. Acceptance of the Plan will not be solicited until the Disclosure Statement, Plan and related ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

5.     ***DB's Representations and Warranties.***  In order to induce the Debtors to enter into and perform their obligations under this Agreement, DB hereby represents, warrants and acknowledges as follows:

5.1.     *Authority.*  (i) DB has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by DB of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of DB and no other proceedings on the part of DB are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

5.2.     *Validity.*  This Agreement has been duly executed and delivered by DB and constitutes the legal, valid and binding agreement of DB, enforceable against DB in accordance with its terms.

5.3.     *Authorization of Governmental Authorities and Creditors.*  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by DB pursuant to this Agreement.

5.4.     *Bankhaus Claims.*  The Bankhaus Claims have been accepted for loss (*festgestellt für den Ausfall*) as valid and enforceable claims in the Bankhaus Insolvency Proceeding in an amount not less than the amount of the Allowed DB Claim, and DB is not aware of any basis for the Bankhaus Claims to be disputed or challenged in the Bankhaus Insolvency Proceeding.

5.5.     *No Reliance.*  DB (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as DB has deemed appropriate, made his own analysis and decision to enter into this Agreement, except that DB has relied upon each Debtor's express representations, warranties and covenants in this Agreement. DB acknowledges that it has entered into this Agreement voluntarily and of his own choice and not under coercion or duress.

5.6.    *Title; No Prior Transfer of Claims.*

(a)    DB (i) owns the Proofs of Claim free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances, (ii) is not aware of any third party rights with respect to the Proofs of Claim as of the Execution Date, and (iii) has not transferred or assigned to any other person any of the Proofs of Claim, in whole or in part.

(b)    DB may not, at any time prior to the Effective Date, transfer the Proofs of Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to DB under the Plan, in whole or in part. After the Effective Date, DB may, at any time, transfer the Allowed DB Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to DB under the Plan, in whole or in part, so long as the transferee executes a joinder in this Agreement in the form annexed hereto as Exhibit 1 with respect to such transferred claims (a "Joinder"). Except as otherwise provided in this section 5.6, from the Effective Date, DB shall not make any transfer of the Allowed DB Claim, or any rights or interests arising thereunder or related thereto, to parties that do not execute a Joinder. From the Execution Date, and for so long as it holds an economic interest in the Proofs of Claim or the Allowed DB Claim, any transfers of the Proofs of Claim or Allowed DB Claim that are not in compliance with this section 5.6(b) shall be deemed null and void and without effect.

(c)    DB shall not grant any proxies, deposit the Proofs of Claim or the Allowed DB Claim into a voting trust, or enter into a voting agreement or any similar agreement with respect thereto, unless such agreement provides, in writing, in a form enforceable by, and reasonably satisfactory to, the Debtors for compliance with this Agreement.

6.    ***Debtors' Representations and Warranties.***   In order to induce DB to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

6.1.    *Authority.*   Each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein, and the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

6.2.    *Validity.*   This Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

6.3.    *Authorization of Governmental Authorities.*   No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and each Non-Debtor Affiliate of this Agreement.

6.4.    *No Reliance.*   Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon DB, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor has relied upon DB's express representations, warranties and

covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

7. *Releases.*

7.1. *Debtors' Releases.*

(a) Upon the occurrence of the Effective Date, and except as to (i) any claims arising from or under this Agreement, and (ii) the performance of the obligations set forth herein, and in each case subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and the DB's execution of this Agreement, each Debtor on behalf of itself, its estate, its successors and assigns, will fully and forever release, discharge and acquit DB, and its respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, actions under chapter 5 of the Bankruptcy Code or similar actions under applicable state law, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent (collectively, "DB Released Claims"), including, without limitation, with respect to any of the actions taken or omitted to be taken by DB with regard to the Excalibur Swap Documents, the Excalibur Notes and any other Excalibur Transaction Document and any document directly related thereto (for the avoidance of doubt, not including this Agreement, the Excalibur Note Purchase Agreement, the Excalibur Earn-Out Agreement and/or the Excalibur Swap Termination Agreement) or any enforcement action taken with respect to the Excalibur Swap Documents, the Excalibur Notes and any other Excalibur Transaction Document and any document directly related thereto (for the avoidance of doubt, not including this Agreement, the Excalibur Note Purchase Agreement, the Excalibur Earn-Out Agreement and/or the Excalibur Swap Termination Agreement), in each case, as to all of the DB Released Claims, only to the extent such DB Released Claims arose prior to the Execution Date.

(b) On and following the Effective Date, each Debtor, on behalf of itself and any other party, person or entity claiming under or through it hereby generally and irrevocably releases, discharges and acquits each Excalibur Released Party and its current and former agents, servants, officers, directors, employees, divisions, branches, units, attorneys, successors, predecessors, heirs and personal representatives from (i) any and all obligations to each Debtor with respect to the Excalibur Notes and any Excalibur Transaction Document and any document directly related thereto (for the avoidance of doubt, not including this Agreement, the Excalibur Swap Termination Agreement and excluding any Initial Seller Claims) and their respective rights against each other thereunder are cancelled (including, without limitation, any rights, liabilities or obligations of any Excalibur Released Party with respect to payments or other obligations due and payable or due to be performed on or prior to the Effective Date); and (ii) without prejudice to (i) above, all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, actions under chapter 5 of the Bankruptcy Code or similar actions under other applicable law, and claims of every kind, nature and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent that such Debtor ever had or claimed to have or now has or claims to have presently or at any future date against each Excalibur Released Party arising under or related to the Excalibur Notes and any other Excalibur Transaction Document and any document directly related thereto (for the avoidance of doubt, not including this Agreement, the Excalibur Swap Termination Agreement and excluding any Initial Seller Claims) and their negotiation, execution, performance, any

breaches thereof, or their termination. The Debtors agree and acknowledge that each of the Excalibur Released Parties is an express third party beneficiary of, and solely of, this section 7.1(b) of this Agreement. For the avoidance of doubt, any release provided by LBSF or LBHI hereunder shall not limit or affect any releases that LBSF or LBHI provides under the Excalibur Swap Termination Agreement.

7.2. *DB's Releases.* Upon the occurrence of the Effective Date, and except as to (i) the Allowed DB Claim, (ii) DB's distribution entitlements in the Chapter 11 Cases, (iii) the Acquired Other Creditor Claims preserved according to section 2.2 of this Agreement, (iv) the performance of the obligations set forth herein, and (v) any claims arising from or under this Agreement, the Excalibur Note Purchase Agreement, the Excalibur Earn-Out Agreement and/or the Excalibur Swap Termination Agreement, and in each case subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and each Debtor's execution of this Agreement, DB and its successors and assigns, will fully and forever release, discharge and acquit each Debtor, and their respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, any administrative expense claims arising under section 503 of the Bankruptcy Code (collectively, "Debtor Released Claims") including, without limitation, any Debtor Released Claims against any of the Debtors and their respective financial advisors, accountants and attorneys, for any actions or actions omitted to be taken by any of them with regard to the Excalibur Swap Documents, the Excalibur Notes and any other Excalibur Transaction Document and any document directly related thereto (for the avoidance of doubt, not including this Agreement, the Excalibur Note Purchase Agreement, the Excalibur Earn-Out Agreement and/or the Excalibur Swap Termination Agreement), in each case, as to all of the Debtor Released Claims, only to the extent such Debtor Released Claims arose prior to the Execution Date.

8.     ***Effectiveness of Agreement.***

8.1.     Sections 4, 5.5, 5.6, 6.4, 8.2, 8.3, 9, 10 and this section 8.1 of this Agreement shall be effective upon the Execution Date.

8.2.     Effectiveness of this Agreement, with the exception of sections 4, 5.5, 5.6, 6.4 8.1, 8.3, 9 ,10 and this section 8.2, is subject to the Effective Date having occurred.

8.3.     This entire Agreement shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, except as to this section 8.3 and section 9.4, if the entry of the Confirmation Order is denied with prejudice.

9.     ***Termination.***

9.1.     *Automatic Termination.* This Agreement shall automatically terminate on any date on which the Bankruptcy Court denies with prejudice the motion seeking the Confirmation Order with prejudice.

9.2.     *Lehman US's Right to Terminate.* Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to DB if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of DB hereunder, taken as a whole, and DB shall fail to cure such breach within ten (10) Business Days following written notice of such breach from

any of the Debtors. Notwithstanding anything to the contrary in this Agreement, (i) nothing herein requires any Debtor to breach any fiduciary obligations it has under applicable law; and (ii) to the extent such fiduciary obligations require any Debtor to terminate its obligations hereunder, it may do so without incurring any liability to any creditors.

9.3. *DB's Right to Terminate.* DB shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if

(a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) Business Days following written notice of such breach from DB;

(b) the Debtors make a modification to the structure, classification or distribution scheme under the Existing Plan that would materially adversely affect the timing of distributions in respect of the Allowed DB Claim, or reduce the recovery estimates set forth in the Disclosure Statement with respect to claims that are classified as Class 5 claims in the Existing Plan, or reclassify the Allowed DB Claim into a class other than Class 5; *provided, however,* that with respect to sections 9.3(b), (d), and (e), (i) the Debtors do not guarantee, represent, warrant or otherwise commit that any creditor will receive any specific recovery amount or proportion under the Plan, and (ii) modifications to the projected recovery amounts or proportions set forth in the Disclosure Statement approved by the Bankruptcy Court with respect to the Existing Plan due to or based upon, among other things, any factor, including, without limitation, revised projections of asset values or the amount, enforceability and/or priority of any claims shall not constitute materially different or materially adverse terms of the Plan in relation to the Existing Plan;

(c) Dr. Michael C. Frege, in his capacity as Insolvency Administrator of Bankhaus, terminates that certain Amended and Restated Settlement Agreement dated as of March 1, 2011 by and among the Debtors and certain of their non-Debtor affiliates, in accordance with its terms;

(d) the Debtors make any changes or amendments to the Existing Plan or Disclosure Statement, or the Debtors take any other action (including, without limitation, with respect to claims, asset transfers or allocations) in each case, that individually or, in the aggregate together with all other such changes, amendments, actions and agreements, will, if the Plan were to be consummated, materially and adversely affect the treatment of, estimated recoveries by, or distribution to, or proportionate share of the US Debtors' assets that are distributed pursuant to the Plan to, the Allowed DB Claims as compared to the Existing Plan;

(e) the Effective Date does not occur on or before March 31, 2012, *provided,* that such date may be extended with the consent of DB, which consent may be withheld at their discretion.

9.4. *Effect of Termination.* In the event that this Agreement is terminated in accordance with its terms by any Party (or in the event this Agreement becomes null and void as provided in section 8.3), then neither this Agreement, nor any motion or other pleading filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

10. *Venue and Choice of Law.*

10.1. *Venue.* The Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court, except in each case for any action or proceeding involving questions of foreign law in relation to the determination and amount of the Bankhaus Claims and the Bankhaus Distributions. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue may be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court, except in each case for any action or proceeding involving questions of foreign law in relation to the determination and amount of the Bankhaus Claims and the Bankhaus Distributions. Each Party irrevocably consents to service of process in the manner provided for notices in section 11 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

10.2. *Choice of Law.* This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code; *provided, however,* that applicable German law shall govern in relation to the determination and amount of the Bankhaus Claims and the Bankhaus Distribution.

11. *Notices.* All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three Business Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Facsimile: (212) 310-8007

To DB at:

Deutsche Bundesbank
Wilhelm-Epstein-Straße 14
60431 Frankfurt am Main, Germany
Attn: Peter Griep

With a copy (which shall not constitute notice) to:

Freshfields Bruckhaus Deringer LLP
Bockenheimer Anlage 44
60322 Frankfurt am Main, Germany
Attn: Bernhard Kaiser and Dr. Gunila Weber

Vinson & Elkins LLP
666 Fifth Avenue, Suite 26
New York, NY 10103-0040
Attn: Jane Vris and Steven M. Abramowitz

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

12.     ***Expenses.***  The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party.

13.     ***No Admission of Liability.***  Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

14.     ***Entire Agreement.***  This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof. This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Plan and the terms of this Agreement, the terms of this Agreement shall control. The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

15.     ***No Oral Modifications.***  This Agreement may not be modified or amended orally. This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto. Any waiver of compliance with any term or provision of this Agreement on the part of the Debtors must be provided in a writing signed by DB. Any waiver of compliance with any term or provision of this Agreement on the part of DB must be provided in a writing signed by each Debtor. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

16. **Construction.** This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

17. **Binding Effect; Successor and Assigns.** This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided, however*, that subject to section 5.6, no Party may assign its rights or obligations under this Agreement prior to the Effective Date without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

18. **Counterparts.** This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart.

19. **Headings; Schedules and Exhibits.** The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement. Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement. References to sections, unless otherwise indicated, are references to sections of this Agreement. All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes. Reference to any Schedule herein shall be to the Schedules attached hereto.

20. **Severability and Construction.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

21. **Acknowledgments.** THIS AGREEMENT, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN, ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES. EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A CHAPTER 11 PLAN FOR THE PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. THE DEBTORS WILL NOT SOLICIT ACCEPTANCES OF THE PLAN FROM ANY PERSON OR ENTITY UNTIL THE PERSON OR ENTITY HAS BEEN PROVIDED WITH A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (AS AMENDED), THE SECURITIES EXCHANGE ACT OF 1934 (AS AMENDED), ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY APPLICABLE GOVERNMENTAL AUTHORITY.

22. **Waiver of Jury Trial.** EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY

RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 22</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

STRICTLY PRIVATE & CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT
ATTORNEY WORK PRODUCT

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as
Debtor and Debtor in Possession in its chapter 11
case in the United States Bankruptcy Court for
the Southern District of New York, Case No. 08-
13555 (JMP)

DEUTSCHE BUNDESBANK

By: _____
Name:   Peter Griep
Title:    Bundesbankdirector

By: _____

By: _____

Name:  Daniel J. Ehrmann
Title:  Vice President

Name:   Christine Glockmann
Title:    Bundesbankdirector

LEHMAN BROTHERS SPECIAL FINANCING INC., as
Debtor and Debtor in Possession in its chapter 11 case in
the United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

LEHMAN COMMERCIAL PAPER INC., as
Debtor and Debtor in Possession in its chapter 11
case in the United States Bankruptcy Court for
the Southern District of New York, Case No. 08-
13555 (JMP)

LEHMAN BROTHERS COMMERCIAL
CORPORATION, as Debtor and Debtor in Possession in
its chapter 11 case in the United States Bankruptcy Court
for the Southern District of New York, Case No. 08-13555
(JMP)

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

By: _____
Name:  Daniel J. Ehrmann
Title:  Vice President

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

DEUTSCHE BUNDESBANK

By: _____
Name:
Title:

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

By: _____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

STRICTLY PRIVATE & CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT
ATTORNEY WORK PRODUCT

LEHMAN BROTHERS FINANCIAL
PRODUCTS INC., as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS OTC DERIVATIVES INC., as
Debtor and Debtor in Possession in its chapter 11 case in
the United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS DERIVATIVE
PRODUCTS INC., as Debtor and Debtor in
Possession in its chapter 11 case in the United
States Bankruptcy Court for the Southern District
of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMODITY SERVICES
INC., as Debtor and Debtor in Possession in its chapter 11
case in the United States Bankruptcy Court for the
Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS SCOTTISH FINANCE
L.P. as Debtor and Debtor in Possession in its
chapter 11 case in the United States Bankruptcy
Court for the Southern District of New York,
Case No. 08-13555 (JMP), by its general partner
Property Asset Management Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION LLC, as Debtor and Debtor in
Possession in its chapter 11 case in the United States
Bankruptcy Court for the Southern District of New York,
Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

**STRICTLY PRIVATE & CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT**
**ATTORNEY WORK PRODUCT**

CES AVIATION V LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION IX LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

EAST DOVER LIMITED, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Duly Authorized Officer

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Manager

BNC MORTGAGE LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: John Suckow
Title: Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB ROSE RANCH LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

LB 2080 KALAKAUA OWNERS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

MERIT LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its Manager Lehman Commercial Paper Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB PREFERRED SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB 745 LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

STRICTLY PRIVATE & CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT
ATTORNEY WORK PRODUCT

PAMI STATLER ARMS LLC, as Debtor and
Debtor in Possession in its chapter 11 case in the
United States Bankruptcy Court for the Southern
District of New York, Case No. 08-13555 (JMP)


By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

## Exhibit 1:  Form of Joinder

## JOINDER TO PLAN SUPPORT AGREEMENT

### Dated as of [_], 2011

**THIS JOINDER** (this "Joinder") to the Settlement Agreement made and entered into as of [ ], 2011, by and among the Debtors[2] and the Deutsche Bundesbank (the "Transferor") (as the same may hereafter be amended, modified or amended and restated, the "Agreement"), is made and entered into as of the date hereof by and between the Debtors and [TRANSFEREE] (the "Transferee"). All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Agreement.

### WITNESSETH:

**WHEREAS**, the Transferor has transferred to Transferee those claims listed on Schedule 1 attached hereto (the "Transferred Claims"); and

**WHEREAS**, the Agreement requires Transferee to become a party to the Agreement with respect to the Transferred Claims, and the Transferee agrees to do so in accordance with the terms hereof.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Joinder hereby agree as follows:

1.     Agreement to be Bound.  The Transferee hereby agrees that upon execution of this Joinder, with respect to the Transferred Claims, it shall become a party to the Agreement and shall be fully bound by, and subject to, all of the covenants, terms, obligations and conditions of the Agreement as though it were an original Party thereto.  The Transferee shall not be bound to or subject to the covenants, terms, obligations and conditions of the Agreement with respect to  any claims that the Transferee may hold from time to time other than the Transferred Claims.

2.     Promptly upon execution of this Joinder by the Transfee, Transfee shall deliver a copy of this Joinder including Schedule 1 to the Debtors in accordance with the Agreement.

---

[2]     As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; and PAMI Statler Arms LLC.

3.     Notices.  All notices and other communications given or made to Transferee pursuant to the Agreement shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

_____
_____
_____
Attn: _____
E-Mail: _____

With a copy (which shall not constitute notice) to:

_____
_____
_____
Attn: _____
E-Mail: _____

or to such other address as may have been furnished by Transferee by notice given in accordance with the requirements set forth in the Agreement.  Any notice given by delivery, mail or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

4.     This Joinder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

5.     This Joinder may be executed in counterparts, each such counterpart shall be deemed an original and all such counterparts shall together constitute one instrument.

* * * * *

This Joinder to the Agreement shall be effective as of the date first set forth above.

[TRANSFEREE]:

By: [_____]

By: _____
Name: _____
Title: _____

STRICTLY PRIVATE & CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY
SUBJECT TO FRE 408 AND OTHER RULES OF SIMILAR IMPORT
ATTORNEY WORK PRODUCT

## SCHEDULE A:  THE BANKHAUS CLAIMS

**[See attached PDF for Schedule A]**

# Amtsgericht Frankfurt am Main - Insolvenzgericht -

Insolvenztabelle - Abt. I -

| Geschäfts-Nr. | **810 IN 1120/08 L-2** | |
|---|---|---|
| Schuldner/in | Lehman Brothers Bankhaus Aktiengesellschaft, Rathenauplatz 1, 60313 Frankfurt am Main (AG Frankfurt am Main, HRB 28139), vertreten durch: 1. Michael Bonacker, (Vorstand), 2. Hans Martin Bury, (Vorstand), 3. Dr. Patrick Schmitz-Morkramer, (Vorstand), 4. Christian Spieler, (Vorstand), 5. Helmut Olivier, (Vorstand) | |
| Insolvenzverwalter/in | Rechtsanwalt Dr. Michael C. Frege, Barckhausstrasse 12-16, 60325 Frankfurt/Main, Tel. 069/71701-300, Fax 069/71701-40-410 | |
| Gläubiger/in | Deutsche Bundesbank, Wilhelm-Epstein-Straße 14, 60431 Frankfurt | |
| Az. d. Gläubiger/s/in | | |
| Gläubigervertreter/in | | |
| Az. d. Gläubigervertr. | | |
| Hinweis auf die Vollmacht | | |
| Tag der Anmeldung | 03.02.2009 | |
| Blattzahlen der Anmeldung | | |
| Beanspruchter Rang | 0 | |
| Laufende Nummer | **252** | |

| Angemeldeter Betrag EUR | Grund der Forderung (urkundliche Beweisstücke) | Ergebnis der Prüfungsverhandlungen |
|---|---|---|
| 1.) 7.187.190.417, 106.483.651,81 <br> 2.) 22.435.163,27 <br><br> 7.316.109.232,79 | Forderung aus Darlehen <br> Zinsen <br><br> Forderung aus Kostenerstattung für Verwertung der Sicherheiten | Zu 1.) <br> Festgestellt für den Ausfall. <br><br> Zu 2.) <br> Vom Verwalter bestritten. <br><br> Frankfurt am Main, den 07.07.2009 <br> Amtsgericht <br><br><br> Krämer |
| **Berichtigungen/Bemerkungen** | | |
| | | |

# Local Court Frankfurt am Main – Insolvency Court -

**Insolvency Schedule – Division I –**

| File Number | **810 IN 1120/08 L-2** |
|---|---|
| Debtor | Lehman Brothers Bankhaus AG, Rathenauplatz 1, 60313 Frankfurt am Main (local court Frankfurt am Main, HRB 28139), represented by:<br>1. Michael Bonacker, (member of executive board)<br>2. Hans Martin Bury, (member of executive board)<br>3. Dr. Patrick Schmitz-Morkramer, (member of executive board)<br>4. Christian Spieler, (member of executive board)<br>5. Helmut Olivier, (member of executive board) |
| Insolvency administrator | Attorney Dr. Michael C. Frege, Barckhausstrasse, 12-16, 60325 Frankfurt/Main, phone 069/71701-300, fax 069/71701-40-410 |
| Creditor | Deutsche Bundesbank, Wilhelm-Epstein-Straße 14, 60431 Frankfurt |
| Number of creditor(s) | |
| Representative of creditor | |
| Number of representatives of creditor | |
| Reference to power of attorney | |
| Date of filing | 3 February 2009 |
| Number of pages of filing | |
| Claimed rank | **0** |
| Serial number | **252** |

| Filed amount EUR | Ground of claim (documentary evidence) | Result of assessment proceeding |
|---|---|---|
| 1.)    7,187,190,417.<br>106,483,651.81<br>2.)    22,435,163.27<br>--------------------<br>7,316,109,232.79 | Loan claim<br>Interest<br>Claim for reimbursement of costs for realisation of collateral | Re 1.) ascertained for loss (*"ausgefallen"*, within the meaning of § 190 (1) of the German Insolvency Code).<br><br>Re 2.)<br>Contested by administrator.<br><br>Frankfurt am Main, 7 July 2009<br>Local court<br><br>Kraemer |
| Adjustments / remarks | | |

## SCHEDULE B

1. Termination Agreement in respect of swap transactions and the related series 2008-2 EUR 254,500,000 Floating Rate Notes due 2017 issued by Saphir Finance Public Limited Company between Lehman Brothers Special Financing Inc., Saphir Finance Public Limited Company, BNY Mellon Corporate Trustee Services Limited (formerly BNY Corporate Trustee Services Limited), The Bank of New York Mellon, London Branch (formerly The Bank of New York), The Bank of New York Mellon (Ireland) Limited (formerly BNY Financial Services plc as successor to J.P. Morgan Bank (Ireland) plc), Deutsche Bundesbank and Lehman Brothers Holdings Inc. dated 26 July 2011.

2. Termination Agreement in respect of swap transactions and the related series 2008-5 EUR 70,668,000 Floating Rate Notes due 2050 issued by Saphir Finance Public Limited Company between Lehman Brothers Special Financing Inc., Saphir Finance Public Limited Company, BNY Mellon Corporate Trustee Services Limited (formerly BNY Corporate Trustee Services Limited), The Bank of New York Mellon, London Branch (formerly The Bank of New York), The Bank of New York Mellon (Ireland) Limited (formerly BNY Financial Services plc as successor to J.P. Morgan Bank (Ireland) plc), Deutsche Bundesbank and Lehman Brothers Holdings Inc. dated 26 July 2011.

3. Termination Agreement in respect of swap transactions and the related series 2008-4 EUR 1,285,259,000 Floating Rate Notes due 2046 issued by Saphir Finance Public Limited Company between Lehman Brothers Special Financing Inc., Saphir Finance Public Limited Company, BNY Mellon Corporate Trustee Services Limited (formerly BNY Corporate Trustee Services Limited), The Bank of New York Mellon, London Branch (formerly The Bank of New York), The Bank of New York Mellon (Ireland) Limited (formerly BNY Financial Services plc as successor to J.P. Morgan Bank (Ireland) plc), Deutsche Bundesbank and Lehman Brothers Holdings Inc. dated 26 July 2011.

**EXHIBIT 6**

**PART C – AGREEMENT AMONG DEBTORS AND
ENTSCHÄDIGUNGSEINRICHTUNG DEUTSCHER BANKEN GMBH**

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN. SUCH SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN WILL NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Agreement</u>") is made and entered into as of September 30, 2011 (the "<u>Execution Date</u>"), by and among the Debtors[1] and the Entschädigungseinrichtung deutscher Banken GmbH ("<u>EdB</u>"). The Debtors and EdB shall each be referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## RECITALS

WHEREAS, on September 15, 2008 and on various dates thereafter, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), which cases are being jointly administered under Case Number 08-13555 (JMP) (the "<u>Chapter 11 Cases</u>" and each a "<u>Chapter 11 Case</u>");

WHEREAS, on November 12, 2008, the German banking regulator filed insolvency proceedings against Lehman Brothers Bankhaus Aktiengesellschaft ("<u>Bankhaus</u>"), and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as Insolvency Administrator (*Insolvenzverwalter*) of Bankhaus (the "<u>Bankhaus Insolvency Proceeding</u>");

WHEREAS, EdB has filed a certain proof of claim against LBHI, Claim No. 17536 (the "<u>Proof\ of Claim</u>"), asserting amounts due from LBHI to EdB, pursuant to that certain guarantee dated November 21, 2002 between LBHI and Bankhaus (the "<u>Guarantee</u>");

WHEREAS, the Parties are desirous of resolving all disputes and all other outstanding issues between the Parties regarding, *inter alia*, the enforceability of the Guarantee, and the methodology of calculating the amount of LBHI's liability, if any, to EdB thereunder, and avoiding extensive and expensive litigation;

WHEREAS, on September 1, 2011, the Debtors filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, ECF No. 19627 (said plan, as it may be amended or modified, the "<u>Plan</u>") and, by order dated September 1, 2011, ECF No. 19631, the Bankruptcy Court approved the Disclosure Statement relating thereto, filed September 1, 2011, ECF No. 19629 (the "<u>Disclosure Statement</u>"); and

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

---

[1]  As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("<u>LBHI</u>"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

1.  ***Definitions***

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Agreement.

"<u>Allowed EdB Claim</u>" has the meaning ascribed to it in section 2.1.

"<u>Bankhaus Claims</u>" means, as of any date, the aggregate amount of claims filed by EdB in the Bankhaus Insolvency Proceeding as of such date (based on compensation payments made to depositors of Bankhaus on the legal basis that EdB is successor of these depositors), but, in no event shall the Bankhaus Claims be more than the amount of such claims as accepted or approved (*festgestellt*) in the Bankhaus Insolvency Proceeding.

"<u>Bankhaus Distributions</u>" means distributions made pursuant to the Bankhaus Insolvency Proceeding on account of the Bankhaus Claims, net of any such amounts distributed that EdB is required, pursuant to applicable German law, to repay to Bankhaus.

"<u>Bankruptcy Code</u>" has the meaning ascribed to it in the Recitals.

"<u>Bankruptcy Court</u>" has the meaning ascribed to it in the Recitals.

"<u>Business Day</u>" means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York or Berlin, Germany are required or authorized to close by law or executive order.

"<u>Chapter 11 Case</u>" has the meaning ascribed to it in the Recitals.

"<u>Confirmation Date</u>" means the date of the entry of the Confirmation Order by the Bankruptcy Court.

"<u>Confirmation Order</u>" means an order of the Bankruptcy Court (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable provisions of the Bankruptcy Code, the terms of this Agreement; and (iii) authorizing the Debtors to take all necessary corporate actions to consummate the transactions contemplated by this Agreement.

"<u>Distribution Date</u>" has the meaning ascribed to it in the Plan.

"<u>Effective Date</u>" means the date that the Plan becomes effective as provided for therein.

"<u>Proof of Claim</u>" has the meaning ascribed to it in the Recitals.

2.  ***Settlement of The Proof of Claim.***

2.1.    Upon the Effective Date, pursuant to the Plan, Claim No. 17536 shall be allowed as non-priority unsecured third party guarantee claim against LBHI, classified under the Plan in LBHI Class 9, in the amount of $ 1,515,789.42 (the "<u>Allowed EdB Claim</u>").

2.2.    Other than the Allowed EdB Claim, all other claims asserted or held by EdB against the Debtors shall be deemed expunged.

2.3.    The Allowed EdB Claim shall not, except as otherwise specifically provided for herein, be subject to further reduction, objections or defenses, whether by way of netting, set off, recoupment, counterclaim or otherwise, or any claim under section 510 of the Bankruptcy Code or

otherwise which would have the effect of subordinating such claims to the claims of other general unsecured creditors.

2.4.    Pursuant to section 6.5(j) of the Plan, this Agreement shall be deemed incorporated into the Plan, and, accordingly, the provisions of this Agreement shall supersede any contrary or inconsistent provisions of the Plan with respect to EdB and the Allowed EdB Claim.

3.    ***Distribution***

3.1.    In order to ensure that distributions are not made in respect of the Allowed EdB Claim, whether or not held by EdB that, together with the Bankhaus Distributions, exceed 100% of the amount of the Bankhaus Claims, EdB will provide LBHI with notice of each Bankhaus Distribution within twenty (20) Business Days following the receipt of such distribution by sending LBHI an itemized update substantially in the form attached hereto as <u>Exhibit A</u> (each, a "<u>Bankhaus Distributions Update</u>"). EdB shall include in each Bankhaus Distributions Update receipts or other evidence that EdB has received actual payments or made actual repayments of any amounts added to or deducted from the Bankhaus Distributions since the prior Bankhaus Distributions Update (or, in the case of the first Bankhaus Distributions Update, since the date of this Agreement).  As soon as the Bankhaus Distributions and the distributions in relation to the Allowed EdB Claim equal 100% of the amount of the Bankhaus Claims, as accepted (*festgestellt*), no further distributions shall be made in respect of the Allowed EdB Claim.  If EdB fails to provide the notice required by this section 3.1, all distributions on account of the Allowed EdB Claim shall be immediately suspended until such information is provided.

3.2.    As of the date hereof, the amount of the Bankhaus Claims as accepted (*festgestellt*) is $2,579,850.00 (being the amount set forth in the first sentence of section 5.5 (€ 1,820,000.00), converted into US Dollars at the exchange rate in effect on September 15, 2008 ($1.4175/€1).

3.3.    For the purposes of implementing Section 8.13 of the Plan with respect to distributions on account of the Allowed EdB Claim, on any Distribution Date LBHI shall distribute to EdB the lesser of (i) the distribution to which EdB would be entitled pursuant to the Plan without giving effect to Section 8.13 of the Plan and (ii) the distribution that, together with all prior distributions on account of the Allowed EdB Claim and all prior Bankhaus Distributions, would result in EdB receiving an aggregate distribution equal to 100% of the Bankhaus Claims as of such Distribution Date (such lesser amount, the "<u>EdB Distribution Amount</u>").

3.4.    If, as of any Distribution Date, the Bankhaus Distributions and the distributions on account of the Allowed EdB Claim equal 100% of the amount of the Bankhaus Claims, no distributions shall be made under the Plan on account of the Allowed EdB Claim on such Distribution Date (each such Distribution Date, a "<u>Non-Payment Distribution Date</u>").  If, as of any subsequent Distribution Date following either one or more Non-Payment Distribution Dates or a Distribution Date on which EdB has received less than the distribution pursuant to section 3.3(i), the Bankhaus Claims have increased pursuant to section 3.2 (the "<u>Increased Bankhaus Claims</u>") such that the EdB Distribution Amount is greater than zero on such subsequent Distribution Date, LBHI shall make a catch-up distribution to EdB to achieve the same result as if the Bankhaus Claims had been an amount equal to such Increased Bankhaus Claims as of all prior Distribution Dates (including any Non-Payment Distribution Dates) and as of such subsequent Distribution Date.

3.5.    In the event that, at any point in time, distributions received by EdB on account of the Allowed EdB Claim, whether or not held by EdB, together with the Bankhaus Distributions equal 100% of the amount of the Bankhaus Claims, LBHI may assert against Bankhaus any contractual or statutory rights it may have acquired against Bankhaus on account of distributions which LBHI made to EdB (e.g. claims for reimbursement) in accordance with applicable German law, <u>provided</u> LBHI's right to assert such contractual or statutory rights shall be enforceable only to the extent and for so long as

distributions received by EdB in respect of the Allowed EdB Claim, together with Bankhaus Distributions, continue to equal 100% of the Bankhaus Claims (after taking into account any Increased Bankhaus Claims).

        3.6.     Any reference contained in this Agreement to EdB or the Allowed EdB Claim also refers to any transferee or any subsequent transferee of the Allowed EdB Claim and the transferred Allowed EdB Claim.

     4.      ***Plan Support***

        4.1.     *The Debtors' Obligations.*  The Debtors will (a) prosecute the Plan and entry of a Confirmation Order with respect to the Plan and (b) seek approval of the settlements provided for under this Agreement, pursuant to section 6.5 of the Plan.

        4.2.     *EdB's Obligations.*  Provided this Agreement has not been validly terminated, EdB agrees to perform and comply with the following obligations as to the Plan, which obligations shall become effective upon the Execution Date:

        (a)     EdB shall not commence any proceeding or otherwise prosecute, join in, or support any objection to, or oppose or object to, the Plan, and will not consent to, support, or participate in the formulation of any other chapter 11 plan in the Chapter 11 Cases, provided that this Agreement has not been terminated pursuant to section 9 of this Agreement.

        (b)     EdB shall timely vote to accept the Plan, <u>provided</u>, that EdB has been properly solicited pursuant to section 1125 of the Bankruptcy Code.

        (c)     EdB shall support the confirmation and consummation of the Plan.

        4.3.     Notwithstanding anything contained in section 4 or elsewhere in this Agreement, this Agreement is not, and shall not be deemed to be, a solicitation of votes for the acceptance of the Plan or the Plan pursuant to section 1125 of the Bankruptcy Code. Acceptance of the Plan will not be solicited until the Disclosure Statement, Plan and related ballots have been transmitted to parties entitled to receive the same in accordance with an order of the Bankruptcy Court.

     5.      ***EdB's Representations and Warranties.***  In order to induce the Debtors to enter into and perform their obligations under this Agreement, EdB hereby represents, warrants and acknowledges as follows:

        5.1.     *Authority*.  (i) EdB has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by EdB of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of EdB and no other proceedings on the part of EdB are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

        5.2.     *Validity*.  This Agreement has been duly executed and delivered by EdB and constitutes the legal, valid and binding agreement of EdB, enforceable against EdB in accordance with its terms.

        5.3.     *Authorization of Governmental Authorities and Creditors*.  No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by EdB pursuant to this Agreement.

5.4.    *Title; No Prior Transfer of Claims.*

(a)    EdB (i) owns the Proof of Claim free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances, (ii) is not aware of any third party rights with respect to the Proof of Claim as of the Execution Date, and (iii) has not transferred or assigned to any other person the Proof of Claim, in whole or in part.

(b)    EdB may not, at any time prior to the Effective Date, transfer the Proof of Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to EdB under the Plan, in whole or in part.  After the Effective Date, EdB may, at any time, transfer the Allowed EdB Claim, or any rights or interests arising thereunder or related thereto, including without limitation any instruments, rights to payments or other consideration distributed or to be distributed to EdB under the Plan, in whole or in part, so long as the transferee executes a joinder in this Agreement in the form annexed hereto as Exhibit B with respect to such transferred claims (a "Joinder").  Except as otherwise provided in this section 5.4, from the Effective Date, EdB shall not make any transfer of the Allowed EdB Claim, or any rights or interests arising thereunder or related thereto, to parties that do not execute a Joinder.  From the Execution Date, and for so long as it holds an economic interest in the Proof of Claim or the Allowed EdB Claim, any transfers of the Proof of Claim or Allowed EdB Claim that are not in compliance with this section 5.4(b) shall be deemed null and void and without effect.

(c)    EdB shall not grant any proxies, deposit the Proof of Claim or the Allowed EdB Claim into a voting trust, or enter into a voting agreement or any similar agreement with respect thereto, unless such agreement provides, in writing, in a form enforceable by, and reasonably satisfactory to, the Debtors for compliance with this Agreement.

5.5.    *Bankhaus Claims*.  As of the date hereof, the Bankhaus Claims have been accepted or approved (*festgestellt*) in the Bankhaus Insolvency Proceeding in the amounts of not less than €1,820,000.00 as claims based on compensation payments on the legal basis that EdB is successor of those depositors.  The Bankhaus Claims are subject to further acceptance or approval in higher amounts in the Bankhaus Insolvency Proceeding.

5.6.    *No Reliance*.  EdB (i) is a sophisticated party with respect to the subject matter of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any Debtor or any of their affiliates or any officer, employee, agent or representative thereof, and based on such information as EdB has deemed appropriate, made his own analysis and decision to enter into this Agreement, except that EdB has relied upon each Debtor's express representations, warranties and covenants in this Agreement.  EdB acknowledges that it has entered into this Agreement voluntarily and of his own choice and not under coercion or duress.

6.    ***Lehman US's Representations and Warranties***.  In order to induce EdB to enter into and perform its obligations under this Agreement, each Debtor hereby represents, warrants and acknowledges as follows:

6.1. *Authority*. Subject to the occurrence of the Effective Date, (i) each signatory Debtor has the power and authority to execute, deliver and perform its obligations under this Agreement, and to consummate the transactions contemplated herein and (ii) the execution, delivery and performance by such Debtor of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of such Debtor and no other proceedings on the part of such Debtor are necessary to authorize and approve this Agreement or any of the transactions contemplated herein.

6.2. *Validity*. Subject to the occurrence of the Effective Date, this Agreement has been duly executed and delivered by each Debtor and constitutes the legal, valid and binding agreement of each Debtor, enforceable against each Debtor in accordance with its terms.

6.3. *Authorization of Governmental Authorities*. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by each Debtor and each Non-Debtor Affiliate of this Agreement, other than entry of the Confirmation Order.

6.4. *No Reliance*. Each Debtor (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon EdB or any of its affiliates or any officer, employee, agent or representative thereof, and based on such information as such Debtor has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that such Debtor has relied upon EdB's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

7. **Releases.**

7.1. *Lehman US's Releases*. Upon the occurrence of the Effective Date, and except as to (i) the agreements, promises, settlements, representations and warranties set forth in this Agreement, and (ii) the performance of the obligations set forth herein, and subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and the EdB's execution of this Agreement, each Debtor on behalf of itself, its estate, its successors and assigns, will fully and forever release, discharge and acquit EdB, and its directors, officers, partners, members, representatives, employees, financial advisors, tax advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent.

7.2. *EdB's Releases*. Upon the occurrence of the Effective Date, and except as to (i) the Allowed EdB Claim, (ii) EdB's distribution entitlements in the Chapter 11 Cases, (iii) the agreements, promises, settlements, representations and warranties set forth in this Agreement, (iv) the performance of the obligations set forth herein, and (v) EdB's distribution entitlements in the Bankhaus Insolvency Proceeding, and, subject to the effectiveness of this Agreement in accordance with section 8 below, and in consideration of the foregoing and each Debtor's execution of this Agreement, EdB and its successors and assigns, will fully and forever release, discharge and acquit each Debtor, and their respective financial advisors, accountants and attorneys, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether at law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (excluding intentional torts, fraud, recklessness, gross

negligence or willful misconduct) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, including, without limitation, any administrative expense claims arising under section 503 of the Bankruptcy Code.

8. ***Effectiveness of Agreement***.

8.1. Sections 4, 5, 6, 8.1, 8.3, and 9 of this Agreement shall be effective upon the Execution Date.

8.2. This Agreement, with the exception of sections 4, 5, 6, 8.1, 8.3, and 9, shall be effective upon the Effective Date.

8.3. This entire Agreement shall be null and void, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed, except as to this section 8, if the entry of the Confirmation Order is denied with prejudice.

9. ***Termination***.

9.1. ***Automatic Termination***. This Agreement shall automatically terminate on any date on which (i) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and Bankhaus, or (ii) the Bankruptcy Court denies the motion seeking the Confirmation Order with prejudice.

9.2. ***Lehman US's Right to Terminate***. Each Debtor shall have the right, at its election, to terminate this Agreement by written notice to EdB if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of EdB hereunder, taken as a whole, and EdB shall fail to cure such breach within ten (10) days following written notice of such breach from any of the Debtors (b) entry of the Confirmation Order is denied with prejudice by final and non-appealable order. Notwithstanding anything to the contrary in this Agreement, (i) nothing herein requires any Debtor to breach any fiduciary obligations it has under applicable law; and (ii) to the extent such fiduciary obligations require any Debtor to terminate its obligations hereunder, it may do so without incurring any liability to any creditors.

9.3. ***EdB's Right to Terminate***. EdB shall have the right, at its election, to terminate this Agreement by written notice to the Debtors if (a) there is a breach, in any material respect, of the representations, warranties and/or covenants of the Debtors hereunder, taken as a whole, and the Debtors shall fail to cure such breach within ten (10) days following written notice of such breach from EdB; (b) (b) entry of the Confirmation Order is denied with prejudice by final and non-appealable order; (c) LBHI makes any changes or amendments to the Plan or Disclosure Statement, or LBHI takes any other action (including, without limitation, with respect to claims, asset transfers or allocations) in each case, that individually or, in the aggregate together with all other such changes, amendments, actions and agreements, will, if the Plan were to be consummated, materially and adversely affect the treatment of, estimated recoveries by, or distribution to, or proportionate share of the LBHI's assets that are distributed pursuant to the Plan to the Allowed EdB Claims; *provided, however*, that with respect to section 9.3(c), (i) the Debtors do not guarantee, represent, warrant or otherwise commit that any creditor will receive any specific recovery amount or proportion under the Plan, and (ii) modifications to the projected recovery amounts or proportions set forth in the Disclosure Statement due to or based upon, among other things, any factor, including, without limitation, revised projections of asset values or the amount, enforceability and/or priority of any claims shall not constitute materially different or materially adverse terms of the Plan; or (d) the Debtors file a chapter 11 plan that provides for the substantive consolidation of one or more Debtors and Bankhaus.

9.4. ***Effect of Termination***. In the event that this Agreement is terminated in accordance with its terms by any Party, then neither this Agreement, nor any motion or other pleading

filed in the Bankruptcy Court with respect to the approval of this Agreement or confirmation of the Plan, shall have any *res judicata* or collateral estoppel effect or be of any force or effect, each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Agreement had never been executed and the Parties hereto shall be automatically relieved of any further obligations hereunder. Except as expressly provided herein, this Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

10. ***Venue and Choice of Law***.

10.1. *Venue*. The Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court. Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law. If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any other state or federal court located within the County of New York in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York, and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in section 11 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by applicable law.

10.2. *Choice of Law*. This Agreement and all claims and disputes arising out of or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York and the Bankruptcy Code, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or the Bankruptcy Code.

11. ***Notices***. All notices and other communications given or made pursuant to this Agreement shall be in writing and all communications shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three (3) Business Days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) three (3) Business Days after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent:

To any Debtor at:

1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Facsimile: (646) 834-0874

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Facsimile: (212) 310-8007

To EdB at:

Entschädigungseinrichtung deutscher Banken GmbH
Burgstraße 28
10178 Berlin
Germany
Attn: Jørgen Bang, Geschäftsführer, and Dr. Ahrend Weber, Geschäftsführer
Facsimile: +49.30.1663.3599

With copies (which shall not constitute notice) to:

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Mark A. Broude, Esq.
Facsimile: (212) 751-4864

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attn: Dr. Uwe Eyles and Volker Schäfer
Facsimile: +49-69-6062-6700

or to such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.

12. ***Expenses***. The fees and expenses incurred by each Party (including the fees of any attorneys, accountants, investment bankers, financial advisors or any other professionals engaged by such Party) in connection with this Agreement and the transactions contemplated hereby, whether or not the transactions contemplated hereby are consummated, will be paid by such Party; provided nothing in this section 12 shall reduce the Allowed EdB Claim.

13. ***No Admission of Liability***. Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

14. ***Entire Agreement***. This Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof. This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof, and to the extent of any conflicts between the Plan and the terms of this Agreement, the terms of this Agreement shall control. The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

15. ***No Oral Modifications***. This Agreement, including this section 15, may not be modified or amended orally. This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto. Any waiver of compliance with any term or provision of

this Agreement on the part of the Debtors must be provided in a writing signed by EdB. Any waiver of compliance with any term or provision of this Agreement on the part of EdB must be provided in a writing signed by each Debtor. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

16. ***Construction***. This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

17. ***Binding Effect; Successor and Assigns***. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; *provided*, *however*, that subject to section 5.4, no Party may assign its rights or obligations under this Agreement without the written consent of the other Party, which consent shall not be unreasonably withheld or delayed, and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

18. ***Counterparts***. This Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart.

19. ***Headings; Schedules and Exhibits***. The headings utilized in this Agreement are designed for the sole purpose of facilitating ready reference to the subject matter of this Agreement. Said headings shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Agreement. References to sections, unless otherwise indicated, are references to sections of this Agreement. All Schedules to this Agreement are hereby made a part hereof and incorporated herein by reference for all purposes. Reference to any Schedule herein shall be to the Schedules attached hereto.

20. ***Severability and Construction***. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

21. ***Acknowledgments***. THIS AGREEMENT, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN, ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES. EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A CHAPTER 11 PLAN FOR THE PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. THE DEBTORS WILL NOT SOLICIT ACCEPTANCES OF THE PLAN FROM ANY PERSON OR ENTITY UNTIL THE PERSON OR ENTITY HAS BEEN PROVIDED WITH A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (AS AMENDED), THE SECURITIES EXCHANGE ACT OF 1934 (AS AMENDED), ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

22. ***Waiver of Jury Trial***. EACH OF THE PARTIES HERETO HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN

RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS <u>SECTION 22</u> IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

IN WITNESS WHEREOF, each Party by his or its duly authorized representative has executed this Agreement as of the date first written above:

LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____

Name: Daniel J. Ehrmann
Title: Vice President

Entschädigungseinrichtung deutscher Banken GmbH

By: _____

Name: Jørgen Bang
Title: Geschäftsführer

By: _____

Name: Dr. Ahrend Weber
Title: Geschäftsführer

LEHMAN BROTHERS SPECIAL FINANCING INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN COMMERCIAL PAPER INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMERCIAL CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS FINANCIAL PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEMAN BROTHERS OTC DERIVATIVES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS DERIVATIVE PRODUCTS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS COMMODITY SERVICES INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LEHMAN BROTHERS SCOTTISH FINANCE L.P. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its general partner Property Asset Management Inc.

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION V LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

CES AVIATION IX LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

EAST DOVER LIMITED, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Duly Authorized Officer

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Manager

BNC MORTGAGE LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: John Suckow
Title: Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Vice President

LB ROSE RANCH LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: Daniel J. Ehrmann
Title: Authorized Signatory

LB 2080 KALAKAUA OWNERS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By:
Name: Daniel J. Ehrmann
Title: Vice President

MERIT LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its Manager Lehman Commercial Paper Inc.

By:
Name: Daniel J. Ehrmann
Title: Vice President

LB SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By:
Name: Daniel J. Ehrmann
Title: Vice President

LB PREFERRED SOMERSET LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), by its managing member PAMI LLC

By:
Name: Daniel J. Ehrmann
Title: Vice President

LB 745 LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name: Daniel J. Ehrmann
Title: Vice President

PAMI STATLER ARMS LLC, as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By:
Name: Daniel J. Ehrmann
Title: Authorized Signatory

# Exhibit A:  Bankhaus Distributions Update

[Letterhead of EdB]

<u>Via facsimile and mail:</u>

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 39th Floor
New York, New York 10020
U.S.A.
Attn: John Suckow and Daniel J. Ehrmann
Fascimile: (646) 834-0874

With copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
U.S.A.
Attn: Lori R. Fife, Esq. and Richard P. Krasnow, Esq.
Fascimile: (212) 310-8007

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Mark A. Broude, Esq.
Facsimile: (212) 751-4864

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attn: Dr. Uwe Eyles and Volker Schäfer
Facsimile: +49-69-6062-6700

Berlin, [date]

**Bankhaus Distributions Update pursuant to Section 3.1 of the Settlement Agreement dated [Date] September 2011 between Lehman Brothers Holdings Inc., other Debtors and Entschädigungseinrichtung deutscher Banken GmbH**

Dear Sirs:

We refer to the above-mentioned agreement (the "<u>Settlement Agreement</u>"). Save as expressly stated otherwise, capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement.

This is to confirm that, as of [date], (a) the aggregate amount of the Bankhaus Claims are as follows and (b) we have received the following distributions made pursuant to the Bankhaus Insolvency Proceeding on account of the Bankhaus Claims, net of any such amounts distributed that we were required, pursuant to applicable German law, to repay to Lehman Brothers Bankhaus Aktiengesellschaft i. I. (the "<u>Bankhaus Distributions</u>"):

| **Bankhaus Claims** |
| --- |

| **Bankhaus Claims as of [date of this letter]** | **Amount in €** | **Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1)** |
|---|---|---|
| Claims filed and accepted (*festgestellt*) by the insolvency administrator in the Bankhaus Insolvency Proceeding (based on compensation payments to depositors of Bankhaus) | 1,820,000.00 | 2,579,850.00 |
| […] | […] | […] |
| **Sum of Bankhaus Claims as of [date of this letter]** | **1,820,000.00** | **2,579,850.00** |

| **Bankhaus Distributions as of the date hereof** | | | | |
|---|---|---|---|---|
| **Payment Date / Repayment Date** | **Distributed amount** | | **Amounts distributed that EdB was required, pursuant to applicable German Law, to repay to Bankhaus** | |
| | **Amount in €** | **Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1)** | **Amount in €** | **Amount converted into $ at the exchange rate in effect at September 15, 2008 ($1.4175 = €1)** |
| October 20, 2010 | 309,400.00 | 438,574.50 | | |
| 1. [insert date] | [insert amount in € where applicable] | [insert amount in $, where applicable] | [insert amount in € where applicable] | [insert amount in $, where applicable] |
| 2. [insert date] | [insert amount in € where applicable] | [insert amount in $, where applicable] | [insert amount in € where applicable] | [insert amount in $, where applicable] |
| **Sum of Bankhaus Distributions** | **309,400.00** | **438,574.50** | | |

A bank confirmation evidencing [receipt of the distributed amounts referred to under 1.][execution of the repayments referred to under [2.]] is attached.

Yours sincerely,

Enclosure

## Exhibit B:  Form of Joinder

# JOINDER TO PLAN SUPPORT AGREEMENT

## Dated as of [_], 2011

**THIS JOINDER** (this "Joinder") to the Settlement Agreement made and entered into as of [ ], 2011, by and among the Debtors[2] and the Bundesverband deutscher Banken e.V. (the "Transferor") (as the same may hereafter be amended, modified or amended and restated, the "Agreement"), is made and entered into as of the date hereof by and between the Debtors and [TRANSFEREE] (the "Transferee"). All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Agreement.

## W I T N E S S E T H:

**WHEREAS**, the Transferor has transferred to Transferee those Claims listed on Schedule 1 attached hereto (the "Transferred Claims"); and

**WHEREAS**, the Agreement requires Transferee to become a party to the Agreement with respect to the Transferred Claims, and the Transferee agrees to do so in accordance with the terms hereof.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Joinder hereby agree as follows:

1. Agreement to be Bound. The Transferee hereby agrees that upon execution of this Joinder, with respect to the Transferred Claims, it shall become a party to the Agreement and shall be fully bound by, and subject to, all of the covenants, terms, obligations and conditions of the Agreement as though it were an original Party thereto.

2. Promptly upon execution of this Joinder by the Transfee, Transfee shall deliver a copy of this Joinder including Schedule 1 to the Debtors in accordance with the Agreement.

---

[2] As used herein, "Debtors" means Lehman Brothers Holdings Inc. ("LBHI"); Lehman Brothers Special Financing Inc.; Lehman Commercial Paper Inc.; Lehman Brothers Commercial Corporation; Lehman Brothers Financial Products Inc.; Lehman Brothers OTC Derivatives Inc.; Lehman Brothers Derivative Products Inc.; Lehman Brothers Commodity Services Inc.; Lehman Scottish Finance L.P.; CES Aviation LLC; CES Aviation V LLC; CES Aviation IX LLC; East Dover Limited; Luxembourg Residential Properties Loan Finance S.a.r.l; BNC Mortgage LLC; Structured Asset Securities Corporation; LB Rose Ranch LLC; LB 2080 Kalakaua Owners LLC; Merit LLC; LB Somerset LLC; LB Preferred Somerset LLC; LB 745 LLC; PAMI Statler Arms LLC.

3.     Notices.  All notices and other communications given or made to Transferee pursuant to the Agreement shall be deemed given if in writing and if sent by confirmed electronic mail, facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses and facsimile numbers:

_____
_____
_____
Attn: _____
E-Mail: _____

With a copy (which shall not constitute notice) to:

_____
_____
_____
Attn: _____
E-Mail: _____

or to such other address as may have been furnished by Transferee by notice given in accordance with the requirements set forth in the Agreement.  Any notice given by delivery, mail or courier shall be effective when received. Any notice given by facsimile or electronic mail shall be effective upon oral or machine confirmation of transmission.

4.     This Joinder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

5.     This Joinder may be executed in counterparts, each such counterpart shall be deemed an original and all such counterparts shall together constitute one instrument.

* * * * *

This Joinder to the Agreement shall be effective as of the date first set forth above.

**[TRANSFEREE]:**

By: [_____]

By: _____
Name: _____
Title: _____

**EXHIBIT 7**


**AMENDMENT TO THE PLAN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                   :

In re                        :         **Chapter 11 Case No.**
                   :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :         **08-13555 (JMP)**
                   :

                **Debtors.**     :         **(Jointly Administered)**
                   :
-------------------------------------------------------------------x

**AMENDMENT TO THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Pursuant to Section 15.8 of the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated September 1, 2011 (the "Plan"),[1] the Debtors hereby amend the Plan as follows:

1. Section 5.37(b) is hereby amended and restated in its entirety to read as follows:

(b) <u>Distributions</u>. Each holder of an Allowed Claim in LBCC Class 3 shall receive Cash from LBCC in an amount equal to .49 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

2. Section 7.3(b) is hereby amended and restated in its entirety to read as follows:

(b) Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF, LCPI, and LS Finance shall consist of one (1) individual who shall be a concurrently serving member of the LBHI board of directors. Each of the initial directors or managers of the Subsidiary Debtors other than LBSF, LCPI, and LS Finance shall have initial and, if reelected, subsequent terms of one year. Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals. LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause.

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Plan.

3.  In accordance with Section 1.131 of the Plan, <u>Schedule 4</u> to the Plan is hereby be amended and restated in its entirety to read as set forth on Exhibit A hereto.

　　　　The Debtors reserve the right to further alter, amend, update, supplement, or modify the Plan.

Dated: October 25, 2011
　　　New York, New York

<u>/s/ Lori R. Fife</u>
Lori R. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT A**

## Schedule 4
### (PSA Creditors)

1. Angelo, Gordon & Co., L.P.
2. Bank of America, N.A.
3. Bank of America, N.A., as successor in interest to Merrill Lynch Bank USA
4. Barclays Bank PLC
5. Barclays Bank S.A.
6. BNP Paribas
7. Bundesverband deutscher Banken e.V.
8. Canyon Capital Advisors LLC
9. CarVal Investors UK Limited
10. Contrarian Capital Management LLC
11. County of San Mateo
12. Credit Suisse AG
13. Credit Suisse Loan Funding LLC
14. Credit Suisse Securities (Europe) Limited
15. Cyrus Capital Partners, L.P.
16. Davidson Kempner Capital Management LLC
17. DB Energy Trading LLC
18. D. E. Shaw Claims SPV, L.L.C.
19. D. E. Shaw Composite Portfolios, L.L.C.
20. D. E. Shaw Laminar Portfolios, L.L.C.
21. D. E. Shaw Oculus Portfolios, L.L.C.
22. D. E. Shaw Valence Portfolios, L.L.C.
23. Deutsche Bank AG
24. Deutsche Bundesbank
25. Elliott Associates, L.P.
26. Elliott International, L.P.
27. Elliott Management Corporation
28. Entschädigungseinrichtung deutscher Banken GmbH
29. Fir Tree, Inc.
30. GLG Ore Hill LLC
31. Goldentree Asset Management, LP
32. Goldman Sachs Bank USA
33. Goldman Sachs International
34. Gruss Asset Management, L.P., investment advisor to Gruss Global Investors Master Fund, Ltd. and Gruss Global Investors Master Fund (Enhanced), Ltd.
35. Hayman Capital Master Fund, L.P.
36. Hong Kong Lehman Entities In Liquidation
37. King Street Capital Management GP, L.L.C.
38. Knighthead Capital Management, L.L.C.
39. Lehman Brothers Bankhaus AG (in Insolvenz)
40. Lehman Brothers (Luxembourg) Equity Finance S.A. (*en faillite*)
41. Lehman Brothers (Luxembourg) S.A. (in liquidation)
42. Lehman Brothers Securities N.V.
43. Lehman Brothers Treasury Co. B.V.
44. Lehman Japan Entities[1]

---

[1] Hercules K.K., Lehman Brothers Commercial Mortgage K.K., Lehman Brothers Finance (Japan) Inc.,

45. Lehman Singapore Entities
46. Lehman UK Entities[2]
47. Merrill Lynch Bank & Trust Co. FSB
48. Merrill Lynch Capital Services Inc.
49. Merrill Lynch Commodities (Europe) Ltd
50. Merrill Lynch Commodities Inc.
51. Merrill Lynch International
52. Merrill Lynch International Bank Ltd.
53. Morgan Stanley & Co. International PLC
54. Morgan Stanley Capital Group Inc.
55. Morgan Stanley Capital Services LLC
56. Mount Kellett Master Fund II, L.P.
57. Oak Tree Capital Management, L.P.
58. Och-Ziff Capital Management Group LLC
59. Paulson & Co. Inc.
60. Silver Point Capital, L.P.
61. Societe Generale
62. Societe Generale Asset Management Banque
63. Societe Generale Bank and Trust
64. State of California Public Employees' Retirement System
65. State Street Bank and Trust Company
66. Taconic Capital Advisors L.P.
67. The Baupost Group, L.L.C.
68. The Liverpool Limited Partnership
69. The Royal Bank of Scotland plc

---

Lehman Brothers Holdings Japan Inc., Lehman Brothers Japan Inc., Lehman Brothers Real Estate Limited, Sunrise Finance Co. Ltd.

[2] Lehman Brothers International (Europe); Lehman Brothers Limited; Lehman Brothers Holdings PLC; LB UK Re Holdings Limited; Storm Funding Limited; Mable Commercial Funding Limited; Lehman Brothers Europe Limited; Lehman Brothers UK Holdings Limited; LB UK Financing Ltd; LB SF No. 1; Cherry Tree Mortgages Limited; Lehman Brothers Lease & Finance No. 1 Limited; Zestdew Limited; Monaco NPL (No. 1) Limited; Lehman Commercial Mortgage Conduit Limited; LB RE Financing No. 3 Limited; Lehman Brothers (PTG) Limited; Eldon Street Holdings Limited; LB Holdings Intermediate 2 Limited; and Thayer Properties Limited (each in administration); Eldon Street (Cube) Limited; Eldon Street (Raven) Limited; Lehman Brothers Equity (Nominees Number 7) Limited; Platform Home Mortgage Securities No. 4 Limited; Platform Commercial Mortgage Limited; Lehman Brothers (Indonesia) Limited; Grace Hotels Limited; LBO Investments Limited; LBQ Funding (UK); LB Lomond Investments (each in liquidation); Acenden Limited (f/k/a Capstone Mortgage Services Limited); Blue I Real Estate Limited; Eldon Street (Birchin) Limited; Eldon Street (Colbert Orco) Limited; Eldon Street (Fidenza) Limited; Eldon Street (Harley) Limited; Eldon Street (Jefferson) Limited; Harley Property Ventures Limited; LB Holdings Intermediate 1 Limited; LB SF Warehouse Limited; LB Yellow (No. 1) Limited; MBAM Investor Limited; Myra Sarl; Parkmetro Limited; Preferred Group Limited; Preferred Holdings Limited; Preferred Mortgages Limited; Resetfan Limited; SM Funding No. 1 Limited; Southern Pacific Funding 3 Ltd.; Southern Pacific Mortgage Ltd.; Southern Pacific Personal Loans Limited; Southern Pacific Residuals 4 Limited; Stepstone Mortgage Funding Limited; Thayer Group Limited (in liquidation) (acting by its joint liquidators, Nick Vermeulen and Mark James); Thayer Properties (Jersey) Limited (in liquidation) (acting by its joint liquidators, Nick Vermeulen and Mark James); Yellow Real Estate Limited

70. UBS AG
71. Vallejo Sanitation and Flood Control District
72. Varde Partners, L.P.
73. York Capital Management Global Advisors, LLC

# EXHIBIT 8

## UPDATED RECOVERY ANALYSES FOR SASCO AND LBCC

In connection with the issuance of this Plan Supplement, and in preparation for the hearing on Plan confirmation scheduled for December 6, 2011, the Debtors reviewed the Recovery and Liquidation Analyses for each of the 23 Debtors. Based upon this review, the Debtors have revised the recovery analyses for Structured Assets Securities Corporation ("SASCO") and for Lehman Brothers Commercial Corp. ("LBCC").

Specifically, the recoveries in SASCO have decreased because certain mortgage backed securities ("MBS") claims that were previously included in the recovery analysis for LBHI have been identified as SASCO claims. The total estimate of MBS claims against all the Debtors has not changed, only the individual breakdowns. As it relates to LBCC, the estimated recoveries have increased as recent settlements allow the Debtors to calculate more accurately the anticipated claims and recoveries by LBCC. The Debtors do not believe there is any significant change in the Recovery Analyses for any of the other 21 Debtors. Attached hereto are the updated schedules that contain the Recovery Analysis and Liquidation Analysis for each of SASCO and LBCC.

**Recovery and Liquidation Analysis for LBCC**

($ in millions)

| | Estimated Liquidation Assets | Estimated Plan Assets | | | Estimated Allowed Claims[2] | Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Liquidation | | Plan | |
| | | | | | | $ | %[3] | $ | %[3] |
| Cash & Cash Equivalents | $535 | $535 | Class 1: | Priority Non-Tax Claims | -- | -- | -- | -- | -- |
| Restricted Cash | 5 | 5 | Class 2: | Secured Claims | $5 | $5 | 100.0% | $5 | 100.0% |
| <u>Financial Instruments & Other Inventory</u> | | | Class 3: | Convenience Claims | 0 | 0 | 49.0% | 0 | 49.0% |
| Real Estate | -- | -- | | | | | | | |
| Loans | -- | -- | Class 4: | General Unsecured Claims | 609 | 260 | 42.6% | 271 | 44.5% |
| Principal Investments | -- | -- | | | | | | | |
| Derivatives & Other Contracts | 319 | 343 | Class 5A:[4] | Affiliate Claims of LBHI | 133 | -- | -- | -- | -- |
| Other Assets | -- | -- | Class 5B:[4] | Affiliate Claims of Participating Subsidiary Debtors | 572 | 217 | 37.9% | 226 | 39.6% |
| **Operating Asset Recoveries** | **$859** | **$883** | Class 5C:[4] | Affiliate Claims other than those of Participating Debtors | 550 | 234 | 42.6% | 245 | 44.5% |
| Recovery on Intercompany Receivables | $0 | $0 | Class 6:[4] | Equity Interests | -- | -- | -- | -- | -- |
| Recovery on Affiliate Guarantees | 2 | 3 | | | | | | | |
| Equity Interests in Affiliates | -- | -- | | | | | | | |
| **TOTAL ASSETS** | **$862** | **$886** | | | | | | | |
| <u>Administrative Expenses[1]</u> | | | | | | | | | |
| Administrative Expenses & Other | -- | -- | | | | | | | |
| Post-Petition Intercompany Payables | (7) | (7) | | | | | | | |
| Operating Disbursements | ($29) | ($18) | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$825** | **$861** | | | | | | | |
| Contribution to Plan Adjustments | ($109) | ($114) | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$716** | **$747** | **TOTALS** | | **$1,869** | **$716** | | **$747** | |

Note: All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0".
1   Comprised of administrative expenses, professional compensation and priority tax claims.
2   Debtor's best estimate of the amount of claims ultimately allowed in a Recovery and Liquidation scenario.
3   Represents recovery amount as a percentage of Estimated Allowed Claims.
4   Represents Claims after the effects of setoff.

**Recovery and Liquidation Analysis for SASCO**

($ in millions)

| | Estimated Liquidation Assets | Estimated Plan Assets | | | Estimated Allowed Claims[2] | Estimated Recovery | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Liquidation | | Plan | |
| | | | | | | $ | %[3] | $ | %[3] |
| Cash & Cash Equivalents | -- | -- | Class 1: | Priority Non-Tax Claims | -- | -- | -- | -- | -- |
| Restricted Cash | -- | -- | Class 2: | Secured Claims | -- | -- | -- | -- | -- |
| Financial Instruments & Other Inventory | | | Class 3: | General Unsecured Claims | $945 | $149 | 15.8% | $214 | 22.7% |
| Real Estate | -- | -- | | | | | | | |
| Loans | -- | -- | Class 4A:[4] | Affiliate Claims of LBHI | 588 | 74 | 12.7% | 107 | 18.2% |
| Principal Investments | -- | -- | | | | | | | |
| Derivatives & Other Contracts | -- | -- | Class 4B:[4] | Affiliate Claims of Affiliates other than those of LBHI | 0 | 0 | 15.8% | 0 | 22.7% |
| Other Assets | -- | -- | Class 5: | Equity Interests | -- | -- | -- | -- | -- |
| **Operating Asset Recoveries** | **--** | **--** | | | | | | | |
| Recovery on Intercompany Receivables | $224 | $321 | | | | | | | |
| Recovery on Affiliate Guarantees | -- | -- | | | | | | | |
| Equity Interests in Affiliates | -- | -- | | | | | | | |
| **TOTAL ASSETS** | **$224** | **$321** | | | | | | | |
| Administrative Expenses[1] | | | | | | | | | |
| Administrative Expenses & Other | -- | -- | | | | | | | |
| Post-Petition Intercompany Payables | (0) | (0) | | | | | | | |
| Operating Disbursements | -- | -- | | | | | | | |
| **DISTRIBUTABLE ASSETS** | **$224** | **$321** | | | | | | | |
| Contribution to Plan Adjustments | -- | -- | | | | | | | |
| **NET DISTRIBUTABLE ASSETS** | **$224** | **$321** | **TOTALS** | | **$1,534** | **$224** | | **$321** | |

| Note: | All values that are exactly zero and all recovery percentages where the corresponding recovery amount is zero are shown as "--". Values between zero and $500,000 appear as "0". |
| --- | --- |
| 1 | Comprised of administrative expenses, professional compensation and priority tax claims. |
| 2 | Debtor's best estimate of the amount of claims ultimately allowed in a Recovery and Liquidation scenario. |
| 3 | Represents recovery amount as a percentage of Estimated Allowed Claims. |
| 4 | Represents Claims after the effects of setoff. |

# EXHIBIT 9

## SCHEDULE OF CLAIMS BY DEBTOR-CONTROLLED ENTITIES

In accordance with sections 6.5 and 15.5 of the Plan, the Schedule of Claims of Debtor-Controlled Entities included in this Exhibit 9 lists the Claims of Debtor-Controlled Entities against each of the Debtors that will be Allowed pursuant to the Plan as Senior Affiliate Claims (LBHI Class 4A), Senior Affiliate Guarantee Claims (LBHI Class 4B) or Affiliate Claims (LBHI Class 8) against LBHI or against each of the Subsidiary Debtors in the respective Class of Claims of Affiliates Other Than Participating Debtors. The amounts included on the schedule are net of any Claims the Debtors have against such Debtor-Controlled Entities. Except for Claims that may arise between the Debtors and the Debtor-Controlled Entities in accordance with the Debtor Allocation Agreement or Claims for which a proof of Claim was timely filed, (i) the amounts included on the Schedule of Claims of Debtor-Controlled Entities shall be the only Claims of the Debtor-Controlled Entities that are Allowed against the Debtors and (ii) to the extent any Debtor-Controlled Entity is not included on the Schedule of Claims of Debtor-Controlled Entities, such Debtor-Controlled Entity shall not have any Allowed Claims against the Debtors. Certain entities that the Debtors believe to be Debtor-Controlled Entities filed proofs of Claim against the Debtors. The Debtors will reconcile such Claims with the respective entities.

Certain non-Debtor Affiliates of the Debtors that were managed and controlled by a Debtor at the time of the Bar Date, have commenced liquidation or insolvency proceedings and, as a result, are not Debtor-Controlled Entities. The Claims of such entities are not included on Exhibit 9. The Debtors are seeking to enter into agreements with the appointed liquidators or administrators for such entities as to the Allowed amount of Claims, if any, such entities will have against the Debtors. If the Debtors are not able to enter into such agreements, prior to the Confirmation Date, the Debtors will amend their Schedules to reflect the amount the Debtors' believe are owed to such entities.

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | BALLYBUNION INVESTMENT LIMITED | HARTCLIFFE LIMITED | LB INDIA HOLDINGS MAURITIUS III LTD | LOUISE Y.K. | LEHMAN BROTHERS PERA INC. | PLUTO REALTY Y.K. | GROUPER INTERNATIONAL YK | LBQ HONG KONG SERVICES LTD | GLOBAL COMMERCIAL RE (CAYMAN) INC | GCRE KOREA LTD |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 0 | $ 0 | $ 0 | $ 0 | $ 1 | $ 2 | $ 2 | $ 3 | $ 8 | - |
| Class 4B | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 0 | $ - | 9 |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

| Debtor (Claim Obligor) | LEHMAN BROTHERS ARGENTINA, S.A | PAMI HARBOUR PARK | LEHMAN QUEENS CENTER INC. | REVIVAL HOLDINGS LIMITED | JAPAN INVEST. PARTNERSHIP INC. | LB ASEAN OPPORTUNITY LTD | LEHMAN BROTHERS/MBLP INC. | GLOBAL TAIWAN INVESTMENTS LTD | E-VALUATE II LP | THE MAIN OFFICE MANAGEMENT CO II LP |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 1,059,692 | $ - | $ 1,094,081 | $ 1,166,042 | $ 97,290 | $ 128,810 | $ 1,335,105 | $ 1,103,169 | $ 1,683,302 | 1,745,284 |
| Class 4B | $ - | $ 1,084,443 | $ - | $ 1,405 | $ 1,073,706 | $ 1,074,249 | $ - | $ 316,031 | $ - | - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | LB DELTA (CAYMAN) NO.2 LIMITED | BANGKOK OFFICE 2 COMPANY LIMITED | TMIC LIMITED | REDGRAVE HOLDINGS LIMITED | ZENNIA YK | KILLINGTON SARL | LEHMAN CROSSROADS CORP INVESTORS II | MARLIN INTERNATIONAL YK | JASMINE YK | PAMI LBREM LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ - | $ 54 | $ 872,757 | $ 94 | $ 178 | $ - | $ 196 | $ 214 | $ 269 | $ 275 |
| Class 4B | $ 36 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | PETERBOROUGH 850 LLC | LB GUAM OPPORTUNITY LLC | SH JASMINE 1 LTD | LEHMAN BROTHERS SPECIAL LENDING | EAGLE INVESTORS I-X | FALCON HOLDINGS I LLC | LEHMAN BROTHERS OPPORTUNITY LTD | LEHMAN SYNDICATED LOAN FUNDING INC. | GRA FINANCE CORPORATION LTD | LEHMAN WEALTH SERVICES HOLDINGS LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ 1,775,198 | $ 1,837,877 | $ - | $ 2,025,936 | $ - | $ 2,228,593 | $ 859 | $ 2,559,234 | $ - | $ 2,561,152 |
| Class 4B | $ - | $ 9,986 | $ 1,873,164 | $ - | $ 2,088,382 | $ 14 | $ 2,404,027 | $ - | $ 829,026 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,731,234 | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 940,921 | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 7,338,005 | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 0 | $ 26,318 | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | LEHMAN CROSSROADS CORP INVEST II GP | LEHMAN CROSSROADS CORP INVESTORS GP | MERCHANTS REAL ESTATE CO., LTD. | WOORI LB 6TH ASSET SECUR SPEC CO LT | HYPERION REAL ESTATE INC | SECURITY ASSURANCE ADVISER II GP LL | JAPAN REAL ESTATE INVEST PART | WOORI LB FOURTH ASSET SECUR SPEC CO | MANSFIELD II SARL | PIRANHA INTERNATIONAL Y.K. |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 287 | $ 294 | $ 346 | $ - | $ 401 | $ 456 | $ 595 | $ - | $ 643 | $ 647 |
| Class 4B | $ - | $ - | $ - | $ 358 | $ - | $ - | $ - | $ 642 | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | DRISKILL LLP | LEHMAN BROTHERS REAL ESTATE JPN LTD | LB ALPHA FINANCE CAYMAN LIMITED | W 6 HOLDINGS LLC | ROYALTY ASSET INVESTMENT, LLC | REVIVAL FUND MANAGEMENT KOREA LLC | LEHMAN BROTHERS OFFSHORE COMM ASSOC | KEIAN Y.K. | TAX EXEMPT AFFORD MORTGAGE ACCEPT | LEHMAN BROTHERS VENTURE ASSOC INC |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 2,578,516 | $ - | $ 2,666,515 | $ 2,806,152 | $ 1,115,167 | $ - | $ 3,399,283 | $ 5 | $ 3,528,611 | $ 3,547,993 |
| Class 4B | $ - | $ 2,594,142 | $ - | $ - | $ - | $ 2,982,063 | $ - | $ - | $ 0 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | LEHMAN BROTHERS DE COLOMBIA S.A. | LB CROSSROADS INVEST ADVISER GP LLC | LEHMAN CROSSROADS CORP INVESTORS LP | THE MAIN OFICE MGMT CO II GP LLC | FUKUOKA HOTEL PROPERTY Y.K. | EAGLE HOLDINGS I LLC | PEGASUS Y.K. | CYGNUS Y.K. | PINDAR PTY LTD | CAPITAL ANALYTICS II GP LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | - | 858 | 878 | 905 | 1,109 | 1,120 | 1,265 | 1,321 | 1,330 | 1,555 |
| Class 4B | - | - | - | - | - | - | - | - | - | - |
| Class 8 | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Special Financing Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commodity Services Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commercial Corporation | - | - | - | - | - | - | - | - | - | - |
| Lehman Commercial Paper Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers OTC Derivatives Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Financial Products Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Derivative Products Inc. | - | - | - | - | - | - | - | - | - | - |
| LUXCO | - | - | - | - | - | - | - | - | - | - |
| LB 745 LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation V LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation IX LLC | - | - | - | - | - | - | - | - | - | - |
| Structured Asset Securities Corporation | - | - | - | - | - | - | - | - | - | - |
| East Dover Limited | - | - | - | - | - | - | - | - | - | - |
| Lehman Scottish Finance LP | - | - | - | - | - | - | - | - | - | - |
| LB Rose Ranch LLC | - | - | - | - | - | - | - | - | - | - |
| LB 2080 Kalakaua Owners LLC | - | - | - | - | - | - | - | - | - | - |
| BNC Mortgage LLC | - | - | - | - | - | - | - | - | - | - |
| LB Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| LB Preferred Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| PAMI Statler Arms LLC | - | - | - | - | - | - | - | - | - | - |
| Merit LLC | - | - | - | - | - | - | - | - | - | - |

| Debtor (Claim Obligor) | FRAH SPECIAL SERVICES INC. | GKI KOREA LTD. | PCR INVESTMENT LIMITED | BEIJING JASMINE I LTD | IVANHOE LANE PTY LIMITED | LEHMAN BROS. COMM. ASSOCIATES INC. | TURCAP INVESTMENTS B.V | SAGE PARTNERS (SAGNB) | ASIA INDO OPPORTUNITY I LTD | LB MB ADVISORS II INC. |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | 3,738,139 | - | 4,159,555 | 61,592 | 3,069,216 | 4,446,325 | 4,501,021 | 4,823,814 | 4,937,274 | 5,111,591 |
| Class 4B | - | 3,752,572 | - | 4,115,408 | 1,234,024 | - | - | - | 110,366 | - |
| Class 8 | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Special Financing Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commodity Services Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commercial Corporation | - | - | - | - | - | - | - | - | - | - |
| Lehman Commercial Paper Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers OTC Derivatives Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Financial Products Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Derivative Products Inc. | - | - | - | - | - | - | - | - | - | - |
| LUXCO | - | - | - | - | - | - | - | - | - | - |
| LB 745 LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation V LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation IX LLC | - | - | - | - | - | - | - | - | - | - |
| Structured Asset Securities Corporation | - | - | - | - | - | - | - | - | - | - |
| East Dover Limited | - | - | - | - | - | - | - | - | - | - |
| Lehman Scottish Finance LP | - | - | - | - | - | - | - | - | - | - |
| LB Rose Ranch LLC | - | - | - | - | - | - | - | - | - | - |
| LB 2080 Kalakaua Owners LLC | - | - | - | - | - | - | - | - | - | - |
| BNC Mortgage LLC | - | - | - | - | - | - | - | - | - | - |
| LB Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| LB Preferred Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| PAMI Statler Arms LLC | - | - | - | - | - | - | - | - | - | - |
| Merit LLC | - | - | - | - | - | - | - | - | - | - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | PHUKET HOTEL 2 HOLDING COMPANY LTD | WARREN/GP CORP. | LAMYONG ASSET COMPANY LIMITED | LB PRIVATE FUNDS INVEST CO GP LLC | WOORI LB 5TH ASSET SECUR SPEC CO LT | PHUKET HOTEL 3 HOLDING COMPANY LTD | LB CAPTAIN NO 1 LUXEMBOURG | LIBERTUS JUTAKU LOAN K.K. | LB1 LIMITED | TAHOE Y.K. |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 1,557 | $ 1,675 | $ 1,841 | $ 1,952 | $ - | $ 2,325 | $ 3,062 | $ 2,603 | $ 3,875 | $ 4,296 |
| Class 4B | $ - | $ - | $ - | $ - | $ 2,200 | $ - | $ - | $ 915 | $ 28 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LEHMAN/SDI INC. | LEHMAN BROTHERS/FW INC. | LEHMAN TAX CREDIT ADVISOR INC | LB COMMODITIES INVESTMENTS INC | DA GROUP HOLDINGS INC. CONSOL. | PRINCIPAL TRANSACTIONS INC. | LB 745 LEASECO II LLC | NEUBERGER BERMAN TECHNOLOGY MGM LLC | LB BROTHERS ASSET MGMT GROUP | LB EUROPEAN MEZZANINE ASSOC 2003 |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 5,802,320 | $ 6,277,676 | $ 6,484,042 | $ - | $ 6,791,544 | $ - | $ 8,705,183 | $ 5,239,396 | $ 9,360,253 | $ 10,582,436 |
| Class 4B | $ - | $ - | $ - | $ - | $ - | $ 6,839,272 | $ - | $ 1,397 | $ 64,429 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 805,886 |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | TLII ASSET MANAGEMENT COMPANY LIMIT | LBQ FUNDING (CAYMAN) LIMITED | LEHMAN CROSSROADS INVEST CO GP LLC | LEHMAN CMBS FUNDING INC. | THAILAND OPPORTUNITY FUND | LBSP HOLDING (IRELAND) PUBLIC LTD | MEISHOU ESTATE Y.K. | PELICAN SAGA SDN BHD | SAIJAI ASSET COMPANY LIMITED | INDUSTRIAL HOLDINGS CORPORATION |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ - | $ 100 | $ 6,035 | $ 6,298 | $ - | $ 7,057 | $ 8,043 | $ 9,152 | $ 9,204 | $ 886,788 |
| Class 4B | $ 5,455 | $ 5,838 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LEHMAN BROTHERS/ROSECLIFF INC. | LB INVESTMENTS (UK) LIMITED | LB MERCHANT BANKING PARTNERS II INC | LB HELSINKI HOLDING SARL | FALCON HOLDINGS II INC. | GA DEKALB INC. | THE BALLYBUNION PARTNERSHIP | LB BETA FINANCE CAYMAN LIMITED | MMP FUNDING CORP | JET PARTNERS LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 1,054,535 | $ 8,469,413 | $ 13,929,550 | $ 17,472,056 | $ 659,533 | $ 18,362,475 | $ 18,905,988 | $ 1,097,678 | $ 23,303,703 | $ 26,320,552 |
| Class 4B | $ - | $ 5,138,563 | $ - | $ - | $ 16,903,432 | $ - | $ 332,625 | $ 18,557,366 | $ 502,170 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 112,314 | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

**Debtor-Controlled Entity (Claimant)**

| Debtor (Claim Obligor) | LB PRIVATE CONVERTIBLE FUND LTD | GLOBAL THAI DOT COM (CAYMAN) LTD | ELMWOOD Y.K. | ARGO Y.K. | BLUE WAY FINANCE CORPORATION U.A. | LEHMAN BROTHERS JAPAN INCORPORATED | LB AUSTRALIA SECURITIES PTY LTD | NL GP INC. | GKI KOREA MANAGEMENT LIMITED | NALE TRUST |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ - | $ - | $ - | $ 16,574 | $ - | $ 18,872 | $ 18,466 | $ 26,131 | $ 26,839 | $ 40,474 |
| Class 4B | $ - | $ 11,117 | $ - | $ - | $ 17,289 | $ - | $ 3,128 | $ - | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LB LUXEMBOURG INVESTMENTS SARL | PARTRIDGE FUNDING INTERNATIONAL SRL | LB ASSET MANAGEMENT | LB HOLDINGS SCOTTISH LTD PART. | DELAWARE INVESTMENT HOLDINGS LLC | LB INDIA HLDGS MAURITIUS II LTD | M&L DENT INVESTMENTS PTY LTD | LB INTL. SERVICES INC. | LB INDIA HLDGS MAURITIUS I LTD | LUBS INC |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ 6,249,977 | $ 30,144,188 | $ 33,273,582 | $ - | $ 36,477,484 | $ - | $ 40,437,284 | $ 3,227,711 | $ - | $ 54,481,224 |
| Class 4B | $ 22,138,036 | $ 53,778 | $ - | $ 34,274,526 | $ - | $ 30,279,747 | $ 892,353 | $ - | $ 53,792,762 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ 11,000,262 | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ 4,132,783 | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | GLOBAL KOREA INVESTMENTS LTD | EAGLE HOLDINGS II INC | KARABOON COMPANY LIMITED | LEHMAN CMO INC. | THAI STRATEGIC ASSET FUND/ PTG | DYNAMO INVESTMENTS LIMITED | LUNAR CONSTELLATION LIMITED PARTNER | NB ART ADVISORY (NBART) | LBA FUNDING-CAYMAN LTD | LB (THAILAND)LIMITED PCO-NEWTHB |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ 41,059 | $ 59,709 | $ 64,393 | $ 66,738 | $ - | $ 70,690 | $ - | $ 74,227 | $ 16,926 | $ 56,564 |
| Class 4B | $ - | $ - | $ - | $ - | $ 70,090 | $ - | $ 73,073 | $ - | $ 60,575 | $ 25,575 |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LEHMAN BROTHERS PACIFIC SERVICES | LB DELTA (CAYMAN) NO.1 LIMITED | LBS HOLDINGS SARL | LB GLOBAL INVESTMENTS LLC(DELAWARE) | REPE LBREP III LLC | CAISTOR TRADING BV | LB PRIVATE EQUITY ADVISERS LLC | LEHMAN INVESTMENTS INC. | STOCKHOLM INVESTMENTS LIMITED | LB 745 LEASECO I LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ 66,970,865 | $ - | $ 88,602,127 | $ 93,504,357 | $ 117,250,593 | $ 122,793,577 | $ 126,090,101 | $ 131,518,815 | $ 168,965,189 | $ 172,405,039 |
| Class 4B | $ 8,279,250 | $ 82,289,937 | $ - | $ - | $ - | $ 0 | $ 845,813 | $ 10,151,108 | $ 2,149,687 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ 649,011 | $ 42,296,281 | $ 102,495 | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ 1,116,931 | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | MICT LIMITED | DIOGENES MGMT CO. INC. | CES AVIATION XI | SOUTHWESTERN FIRST CAPITAL LLC | CES AVIATION XII | GLOBAL THAI PROPERTY FUND | STAMFORD INVSTMENT REALTY INC. | BIRCH Y.K. | LB HY OPPORT KOREA INC | ELLIS ISLAND |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 2,100 | $ 91,394 | $ 98,306 | $ 0 | $ 109,394 | $ 110,555 | $ - | $ 23 | $ - | 134,274 |
| Class 4B | $ 86,540 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 125,402 | 6,113 |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

| Debtor (Claim Obligor) | LBHK FUNDING (CAYMAN) NO. 1 LIMITED | RIBCO LLC | DL MORTGAGE CORP | LBAC HOLDINGS I INC. | LCPI PROPERTIES INC. | ALI INC. | LEHMAN BROTHERS GLOBAL SERVICES | LONG POINT FUNDING PTY LTD | SERAFINO INVESTMENTS PTY LIMITED | GTI TAIWAN LIMITED |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 178,369,589 | $ 268,513,401 | $ 271,976,307 | $ 348,039,948 | $ 731,664,303 | $ 3,498,794,092 | $ - | $ - | $ - | 1,011,335 |
| Class 4B | $ 42,491,250 | $ 0 | $ 101,841 | $ - | $ - | $ 140,406 | $ - | $ - | $ - | - |
| Class 8 | $ 51,373 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Special Financing Inc. | $ 214,054 | $ - | $ - | $ - | $ - | $ 585,023 | $ 5,260 | $ - | $ - | - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 8,052 | $ - | - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,198 | $ 4,585,884 | $ 5,201,848 | - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | CES AVIATION X | LEHCRED LLC | MAEWHA K-STARS LTD | SECURITY ASSURANCE ADVISERS II LP | LB OFFSHORE PARTNERS II LTD. | LEHMAN BROTHERS ASIAN INVESTMENTS | SAMUI HOTEL 1 COMPANY LIMITED | NEWARK PROPERTIES ONE INC | ASIA INDO OPPORTUNITY II LTD | LB RENAR LPTGA |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ 148,557 | $ - | $ - | $ 945,457 | $ 180,342 | $ 5 | $ - | $ 216,873 | $ 1 | $ 237,418 |
| Class 4B | $ - | $ - | $ 163,979 | $ - | $ - | $ - | $ - | $ - | $ 222,049 | $ 1,346 |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ 7,097 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LUXEMBOURG TRADING FINANCE S.A.R.L. | LEHMAN BROTHERS BANK | SELECT ASSET INC | PROPERTY ASSET MANAGEMENT INC | LEHMAN ABS CORP | LEHMAN BROTHERS BANCORP INC. | LEHMAN HOUSING CAPITAL INC. | LEHMAN STRUCTURED SECURITIES CORP | LEHMAN SYNDICATED LOANS INC. | 314 COMMONWEALTH AVE. INC. |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lehman Brothers Holdings Inc.** | | | | | | | | | | |
| Class 4A | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 4B | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ 1,686 | $ - | $ - | $ - | $ - | $ 3,053,296 |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ 3,915,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ 6,622 | $ - | $ 90,386,193 | $ 0 | $ 5,082,955 | $ 32,451 | $ 8,204,886 | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ 593,398,140 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ 27 | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ 31,297,880 | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ 7,467,932 | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ 9,656,919 | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | LBQ HONG KONG FUNDING L.P. | FALCON HOLDINGS IV INC. | FAMCO | LBHK FUNDING(CAYMAN)NO 2 LIMITED | E-VALUATE II GP LLC | LB EUROPE INC. | LEHMAN HOUSING LENDING CORP. | JAPAN INVESTMENT PARTNERSHIP HLGS | LEH BROTHERS HK OLYMPUS FUNDING LP | NB AGENCY (NBAGN) |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ 100,729 | $ 155,037 | $ 298,470 | $ 304,569 | $ 337,292 | $ - | $ 373,717 | $ 378,529 | $ 345,257 | $ 397,695 |
| Class 4B | $ - | $ 139,979 | $ - | $ - | $ - | $ - | $ - | $ - | $ 36,791 | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ - | $ - | $ 926 | $ - | $ - | $ - | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Debtor (Claim Obligor) | LBD YK | LEHMAN RISK ADVISORS INC. | APPALACHIAN ASSET MGT CORP | LB GLOBAL INVESTMENT CORP. INC | ABEL HEALTH VENTURE (LLC) | CES AVIATION II | 7TH AVENUE INC | TALLUS INC | PENTARING INC | CES AVIATION III LLC |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 4B | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 8 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Special Financing Inc. | $ 116,668 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commodity Services Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Commercial Corporation | $ - | $ 7,043,446 | $ 107,014 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Commercial Paper Inc. | $ - | $ - | $ - | $ 812,732 | $ 2,065,982 | $ - | $ 1,000,000,000 | $ 34,105,697 | $ 206,187,307 | $ - |
| Lehman Brothers OTC Derivatives Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Financial Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Brothers Derivative Products Inc. | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LUXCO | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 745 LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation LLC | $ - | $ - | $ - | $ - | $ - | $ 214,035 | $ - | $ - | $ - | $ - |
| CES Aviation V LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CES Aviation IX LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 420 |
| Structured Asset Securities Corporation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| East Dover Limited | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lehman Scottish Finance LP | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Rose Ranch LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB 2080 Kalakaua Owners LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| BNC Mortgage LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| LB Preferred Somerset LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PAMI Statler Arms LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Merit LLC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Debtor-Controlled Entity (Claimant)

| Debtor (Claim Obligor) | LB FINANCE JAPAN HEAD OFFICE | GKI COMMERCIAL REAL ESTATE 1 LTD | GL COMMERCIAL REAL ESTATE 1 LLC | LB ODC 2 | CAPITAL GROWTH INVESTMENTS LTD. | BROOKWOOD ENERGY & PROPERTIES INC | PICNIC 1 INC | LEHMAN BROTHERS/MBGP INC. | ACADIA RJV, LLC | LB OPPORTUNITY HOLDING INC |
|---|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | | |
| Class 4A | 467,159 | 0 | 482,410 | 510,258 | - | 592,363 | 632,789 | 688,174 | 851,872 | 2,793 |
| Class 4B | - | 471,039 | - | - | 200,920 | - | - | - | - | 707,145 |
| Class 8 | - | - | - | - | 384,533 | - | - | - | - | - |
| Lehman Brothers Special Financing Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commodity Services Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commercial Corporation | - | - | - | - | 1,602,221 | - | - | - | - | - |
| Lehman Commercial Paper Inc. | - | - | 4,705 | - | - | - | - | - | - | - |
| Lehman Brothers OTC Derivatives Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Financial Products Inc. | - | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Derivative Products Inc. | - | - | - | - | - | - | - | - | - | - |
| LUXCO | - | - | - | - | - | - | - | - | - | - |
| LB 745 LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation V LLC | - | - | - | - | - | - | - | - | - | - |
| CES Aviation IX LLC | - | - | - | - | - | - | - | - | - | - |
| Structured Asset Securities Corporation | - | - | - | - | - | - | - | - | - | - |
| East Dover Limited | - | - | - | - | - | - | - | - | - | - |
| Lehman Scottish Finance LP | - | - | - | - | - | - | - | - | - | - |
| LB Rose Ranch LLC | - | - | - | - | - | - | - | - | - | - |
| LB 2080 Kalakaua Owners LLC | - | - | - | - | - | - | - | - | - | - |
| BNC Mortgage LLC | - | - | - | - | - | - | - | - | - | - |
| LB Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| LB Preferred Somerset LLC | - | - | - | - | - | - | - | - | - | - |
| PAMI Statler Arms LLC | - | - | - | - | - | - | - | - | - | - |
| Merit LLC | - | - | - | - | - | - | - | - | - | - |

| Debtor (Claim Obligor) | LB HERCULES HOLDINGS LLC | LB INVESTMENT MGMT COMPANY LTD | BROMLEY LLC | LB2 LIMITED | AEGIS FINANCE LLC | 737 PORTFOLIO TRUST | LB GPS LIGHTFOOT LLC | LB RE FINANCING NO. 2 LIMITED [1] | STRUCTURED ASSET SECURITIES CORP II |
|---|---|---|---|---|---|---|---|---|---|
| Lehman Brothers Holdings Inc. | | | | | | | | | |
| Class 4A | - | - | - | - | - | - | - | - | 849,350 |
| Class 4B | - | - | - | - | - | - | - | - | - |
| Class 8 | - | - | - | - | - | - | - | 6,790,721,227 | - |
| Lehman Brothers Special Financing Inc. | 100,115 | - | - | - | - | - | - | - | - |
| Lehman Brothers Commodity Services Inc. | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Commercial Corporation | 23 | 52,199,697 | - | - | - | - | - | - | - |
| Lehman Commercial Paper Inc. | - | - | 1,046,359 | 425,000,000 | 2,869,007 | 120,201,809 | 13,400,000 | - | - |
| Lehman Brothers OTC Derivatives Inc. | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Financial Products Inc. | - | - | - | - | - | - | - | - | - |
| Lehman Brothers Derivative Products Inc. | - | - | - | - | - | - | - | - | - |
| LUXCO | - | - | - | - | - | - | - | - | - |
| LB 745 LLC | - | - | - | - | - | - | - | - | - |
| CES Aviation LLC | - | - | - | - | - | - | - | - | - |
| CES Aviation V LLC | - | - | - | - | - | - | - | - | - |
| CES Aviation IX LLC | - | - | - | - | - | - | - | - | - |
| Structured Asset Securities Corporation | - | - | - | - | - | - | - | - | - |
| East Dover Limited | - | - | - | - | - | - | - | - | - |
| Lehman Scottish Finance LP | - | - | - | - | - | - | - | - | - |
| LB Rose Ranch LLC | - | - | - | - | - | - | - | - | - |
| LB 2080 Kalakaua Owners LLC | - | - | - | - | - | - | - | - | - |
| BNC Mortgage LLC | - | - | - | - | - | - | - | - | - |
| LB Somerset LLC | - | - | - | - | - | - | - | - | - |
| LB Preferred Somerset LLC | - | - | - | - | - | - | - | - | - |
| PAMI Statler Arms LLC | - | - | - | - | - | - | - | - | - |
| Merit LLC | - | - | - | - | - | - | - | - | - |

[1] These amounts supersede in all respects the proofs of Claims filed by such entities, and such proofs of Claim shall be disregarded. The net effect of the Claims of LB Re Financing No. 1 Limited and LB Re Financing No. 2 Limited between and among each other and LBHI was taken into account in the Recovery Analysis and Liquidation Analysis included in the Disclosure Statement..

# EXHIBIT 10


## RECONCILIATION OF OWNERSHIP OF ASSETS


The Plan compromises numerous issues among and between the Debtors, the Affiliates and the various creditors.  One of the issues resolved is the "ownership and rights of various Debtors and their Affiliates with respect to certain assets."  See Section 6.5 of the Plan.  As more fully explained in sections IV(K)(3) and VIII of the Disclosure Statement, the Debtors engaged in numerous inter-company repurchase transactions where the purchaser (often LCPI) did not take possession of the asset although the purchaser ultimately became  the beneficial owner of the asset.  Certain of these assets also served as underlying collateral in securitization structures that have been unwound or restructured.  Accounting for the assets based on the beneficial ownership held by the various Debtors and Affiliates instead of legal title has created a significant burden on the administration of these Estates.  In order to "close" the various inter-company repurchase transactions and to simplify the accounting for the Estates, in connection with the Plan, the Debtors intend to make the transfers set forth in the attached schedule, which will align the legal title with beneficial ownership.  The Recovery and Liquidation Analyses in Exhibits 4 and 5 of the Disclosure Statement were prepared as if these transfers of legal title had already occurred.

**Assets to be Transferred to LCPI or Subsidiary of LCPI (Listed in Alphabetical Order)**

Assets >$5mm in Market Value as of June 30, 2011[1] Listed Separately

| Asset Description[2] | Parent Entity [3] | Asset Type | Property Type |
|---|---|---|---|
| 237 PARK AVE ATRIUM MEZZANINE | LBHI | Mezzanine | Office |
| 350 WEST BROADWAY MEZZANINE | LBHI | Mezzanine | Condo |
| 816 CONGRESS | LBHI | Real Estate Owned ("REO") | Office |
| ARCHSTONE FANNIE (2 positions) | LBHI | Equity | Multi Family |
| ARCHSTONE FREDDIE | LBHI | Equity | Multi Family |
| ATLAS LINE OF CREDIT | LBHI | Line of Credit | Other |
| AZ LAND 72 | LBHI | REO | Land - Non Residential |
| BALLPARK MEZZANINE | LBHI | Mezzanine | Office |
| BOULDER SPRINGS | LBHI | REO | Land - Residential |
| CA VILLA VENETIA HOLDINGS LLC | PAMI | Equity | Multi Family |
| COMMONS OF MCLEAN | LBHI | REO | Multi Family |
| CRESCENT HOTELS - AUSTIN CENTE | LBHI | REO | Office |
| CULVER MEZZANINE | LBHI | Mezzanine | Office |
| FL WHITWORTH HOLDINGS LLC | LBHI | REO | Land - Residential |
| GABLES MARQUIS LOAN | LBHI | 1st Lien | Condo |
| GENCOM-GENWOOD 7 - HOLIDAY INN | LBHI | REO | Lodging |
| GILBERT TOWN CENTER | LBHI | REO | Land - Residential |
| GRAND PRIX - ANAHEIM MEZZANINE | LBHI | Mezzanine | Lodging |
| GREENWICH PLACE | PAMI | REO | Multi Family |
| GUILFORD CTR- GREENSBORO LOAN | LBHI | 1st Lien | Office |
| HIGH ST REAL ESTATE FUND III | PAMI | Equity | Industrial |
| HILTON LOAN | LBHI | 1st Lien | Lodging |
| HOBOKEN TERMINAL - PPIII | PAMI | Equity | Land - Mixed Use |
| IL HANOVER SENIOR LIVING LLC | PAMI | REO | Healthcare |
| ISLAND GLOBAL YACHTING | PAMI | Equity | Other |
| KOJAIAN TEACHERS | LBHI | REO | Office |
| LAS VEGAS MART | LBHI | REO | Land - Non Residential |
| LB 607 HUDSON PREFERRED | PAMI | Equity | Healthcare |
| LB 607 HUDSON STREET LLC | PAMI | Equity | Healthcare |
| LB CRESCENT PARK LP | PAMI | REO | Multi Family |
| LB EASTVIEW INC PAMI | PAMI | Equity | Land - Residential |
| LB ECS LLC | PAMI | Equity | Multi Family |
| LB HILLS GOLF LLC | PAMI | REO | Golf |
| LB IMT LLC | PAMI | Equity | Other |
| LB KAMALANI LLC | PAMI | Equity | Condo |
| LB KTO LLC | PAMI | REO | Land - Non Residential |
| LB MAINGATE HOTEL LLC | PAMI | REO | Lodging |
| LB NYLO LLC | PAMI | Equity | Other |
| LB PLANO LLC | PAMI | Equity | Lodging |
| LB QUAIL VALLEY LP | PAMI | REO | Multi Family |
| LB RIDGE CROSSING PREFERRED LLC | PAMI | Equity | Multi Family |
| LB SETH LLC | PAMI | Equity | Multi Family |
| LB SOUTH BEACH LLC | PAMI | REO | Lodging |
| LB STAMFORD LLC | PAMI | REO | Office |
| LB WEST BAY DEVELOPMENT LLC | PAMI | REO | Condo |
| LCOR BALLENGER AVENUE LLC | PAMI | Equity | Office |
| LEHMAN 7 HOTEL PORTFOLIO LOAN | LBHI | 1st Lien | Lodging |
| LIBERTY SQUARE MEZZANINE | LBHI | Mezzanine | Office |
| LINCOLN AVENTURA LLC | PAMI | REO | Multi Family |
| MO 13190 SOUTH OUTER 40 ROAD, LLC | PAMI | REO | Healthcare |
| MONTAUK YACHT CLUB LOAN | LBHI | 1st Lien | Lodging |
| MURIFIELD LOAN | LBHI | 1st Lien | Multi Family |
| NORTH PEAK | PAMI | REO | Land - Residential |
| NYLO HOTEL LAS COLINAS PARTNERS LOAN | LBHI | 1st Lien | Lodging |
| OAK KNOLL & DEL AMO LOAN | ALI | 1st Lien | Land - Residential |
| OH 151 WEST FIFTH LLC | PAMI | REO | Lodging |
| ONE KANSAS CITY PLACE LOAN | LBHI | 1st Lien | Office |
| PAMI HAMLINS AT CEDAR CREEK LP | PAMI | REO | Multi Family |
| PAMI LAKEWOOD LODGE LLC | PAMI | REO | Multi Family |
| PAMI PUBLIC PRIVATE I | PAMI | Equity | Other |
| PAMI PUBLIC PRIVATE II | PAMI | Equity | Land - Mixed Use |
| PCCP LB MAUNA SITE M LLC | PAMI | Equity | Land - Residential |
| PCCP LB NF HOLDCO LLC | PAMI | Equity | Land - Non Residential |
| PCCP LB OCEANSIDE 1 LLC | PAMI | Equity | Industrial |
| PCCP LB WESTERN HOLDINGS LLC | PAMI | Equity | Land - Residential |
| PETRINI BAKERSFIELD | ALI | REO | Land - Residential |
| PLF LB SYNDICATION PARTNER LLC | PAMI | Equity | Industrial |
| RITZ CARLTON KAPALUA | LBHI | 1st Lien | Lodging |
| RITZ KAPALUA FACILITY A | LBHI | 1st Lien | Condo |
| RIVER SOUND DEVELOPMENT LLC | PAMI | REO | Land - Residential |
| RIVERBEND/WALKER SQ | LBHI | REO | Condo Conversion |
| ROSSLYN LB | PAMI | Equity | Office |
| ROSSLYN LB LOAN | PAMI | 1st Lien | Office |
| SENECA | PAMI | REO | Land - Residential |
| SHERATON LW-LP | PAMI | REO | Lodging |
| SIENNA APARTMENTS | LBHI | REO | Multi Family |
| THE POINT SENIOR LOAN | LBHI | 1st Lien | Lodging |
| THUNDER SPRINGS SENIOR LOAN | LBHI | 1st Lien | Land - Residential |
| TIRADOR | PAMI | REO | Land - Non Residential |
| VEGAS LAND MOTEL | LBHI | REO | Lodging |
| WAIKOLA LOAN | LBHI | 1st Lien | Land - Residential |
| | | | |
| 407 other commercial real estate assets each with a market value of <$5 million as of June 30, 2011 | Various | Various | Various |
| 423 mortgage pools with an aggregate of 2,571 individual residential mortgage loans (each with a market value of <$5 million as of June 30, 2011) | Various | Mortgage Pools | Residential |

Notes:

(1)  Information provided is as of June 30, 2011.  Assets sold post-June 30, 2011 have been removed from the list, and the proceeds from these sales will ultimately be remitted to LCPI.  Certain of the assets listed that LCPI has an economic interest in served as underlying collateral in securitization structures that have been unwound or restructured.

(2)  Reflects internal descriptions for positions to be transferred, many of which are owned by separate LLCs.

(3)  Reflects parent entity currently holding the assets.  These assets may be held by separate LLCs within the parent entity.  "PAMI" refers to Property Asset Management Inc.

Asset transfers set forth on this schedule are subject to change and may exclude positions ultimately transferred pursuant to the Plan.

# EXHIBIT 11

## LIST OF DEBTORS AND DEBTOR-CONTROLLED ENTITIES TO BE DISSOLVED OR MERGED PURSUANT TO THE PLAN

In accordance with sections 7.5 and 7.6 of the Plan, the Debtors intend to wind-down certain Debtor-Controlled Entities, including the following, by (i) distributing a Debtor-Controlled Entity's assets, if any, first, pro rata to such Debtor-Controlled Entity's creditors to satisfy such Debtor-Controlled Entity's liabilities, if any, and, second, pro rata to holders of such Debtor-Controlled Entity's Equity Interests, (ii) merging or otherwise consolidating a Debtor-Controlled Entity with one or more other Debtor Controlled Entities or a Debtor, or (iii) dissolving or abandoning a Debtor-Controlled Entity. To facilitate Distributions pursuant to the Plan, and, provided there is no material impact on recoveries, a Debtor may permit setoff in satisfaction of amounts owed to the Debtor by a Debtor-Controlled Entity by (a) Claims of such Debtor-Controlled Entity against the Debtor or (b) Claims acquired by such Debtor-Controlled Entity pursuant to clause (i) above. The Debtors believe that the foregoing will not affect the Recovery and Liquidation Analyses in Exhibits 4 and 5 of the Disclosure Statement. The Debtors reserve all rights to wind-down the following and other Debtor-Controlled Entities by any other means in accordance with applicable law.

ABLE HEALTH VENTURES LLC
BLIXEN U.S.A. INC.
CES AVIATION II LLC
CES AVIATION III LLC
CES AVIATION IV LLC
CES AVIATION VI LLC
CES AVIATION VII LLC
CES AVIATION VIII LLC
CES AVIATION X LLC
CES AVIATION XI LLC
CES AVIATION XII LLC
CES AVIATION XIII LLC
CES AVIATION XIV LLC
CES AVIATION XV LLC
COHANE RAFFERTY, LLC
DELAWARE INVESTMENT HOLDINGS LLC
EAGLE HOLDINGS I LLC
E-VALUATE GP, LLC
GLOBAL PRINCIPAL STRATEGIES LOANS INC.
GT INVESTMENT COMPANY I, LLC
JET PARTNERS LLC
LB 745 LEASECO I LLC
LB 745 LEASECO II LLC
LB BURRAGE HOUSE INC.
LB FUNDING CORP. II
LEHMAN BROTHERS GLOBAL INFRASTRUCTURE ASSOCIATES HOLDINGS L.L.C.
LB HERCULES INVESTMENT SERVICES LLC
LB HYDERABAD INVESTMENTS I LLC
LB MARKETS LLC
LB PRIVATE WEALTH MANAGEMENT, INC.
LB PWM, LLC

LB RENAR LPGA INC.
LBCCA HOLDINGS I LLC
LBCCA HOLDINGS II LLC
LBK RIBCO L.P.
LCCI LP
LCCI II GP LLC
LEHMAN BROTHERS ASSET MANAGEMENT INC.
LEHMAN BROTHERS EUROPE INC.
LEHMAN BROTHERS INTERNATIONAL SERVICES, INC.
LEHMAN BROTHERS INVESTMENTS JAPAN INC.
LEHMAN BROTHERS OVERSEAS INC.
LEHMAN BROTHERS PRIVATE FUND MANAGEMENT GP, LLC
LEHMAN CMBS FUNDING INC.
LEHMAN CMO INC.
LEHMAN POWER SERVICES LLC
LEHMAN RESIDENTIAL OPPORTUNITIES CORP.
LEHMAN SYNDICATED LOAN INC.
LIBRO HOLDINGS II INC.
LUNAR CONSTELLATION LIMITED PARTNERSHIP
PICNIC II, INC.
REPE LBREM LLC
REVIVAL FUND MANAGEMENT KOREA LLC
SECURITY ASSURANCE ADVISERS GP, LLC
SECURITY ASSURANCE ADVISERS, LP
7TH AVENUE INC.
STRUCTURED ASSET SECURITIES CORPORATION II
TALLUS INC.
THE MAIN OFFICE MANAGEMENT COMPANY GP, LLC
W 2 HOLDINGS LLC
WEST DOVER, LLC
YOKOHAMA INVESTMENTS, LLC