# EXHIBIT A

# LEHMAN BROTHERS

## AMENDED AND RESTATED
## UNSECURED MASTER PROMISSORY NOTE

**THIS NOTE IS NOT INTENDED TO BE A NEGOTIABLE INSTRUMENT UNDER THE UNIFORM COMMERCIAL CODE, AND THIS NOTE MAY NOT BE ASSIGNED, PLEDGED, TRANSFERRED OR HYPOTHECATED BY THE LENDER, EXCEPT AS PROVIDED HEREIN.**

U.S.$25,000,000                                                                                     DATED: August 8, 2007

The Borrower and the Lender (as hereinafter defined) have previously entered into an Unsecured Master Promissory Note dated August 8, 2003 (the "Original Note"). Subject to and upon the terms and conditions set forth herein, the parties desire to amend and restate the Original Note in the form of this Note. This Note amends and replaces in its entirety the Original Note.

FOR VALUE RECEIVED, the undersigned, **Lehman Brothers Holdings Inc.** (the "Borrower") HEREBY PROMISES TO PAY to the order of **Bank of Taiwan, New York Agency** (the "Lender") the aggregate unpaid principal amount of all advances made by the Lender to the Borrower hereunder (each an "Advance" and collectively the "Loan"). The aggregate principal amount of Advances made by the Lender hereunder and outstanding at any time shall not exceed twenty five million United States dollars (U.S. $25,000,000).

The initial maturity date of each Advance will be the date which is 36 months after the date of such Advance; provided, that such initial maturity date will be automatically extended for an additional 12 months on each successive date which is 12 months, and each integral multiple of 12 months, after the date of such Advance (the date of each such extension, the "Term Reset Date") unless the Lender gives written notice to the Borrower (the "Notice of Non-Extension") on any Term Reset Date. In the event that the Lender gives a Notice of Non-Extension in respect of any Advance, the maturity date of such Advance will not be extended on any Term Reset Date occurring on or after the date of such Notice of Non-Extension, and, accordingly, such Advance shall mature on the date which is 24 months from the date of delivery of the Notice of Non-Extension (the initial maturity date of any Advance, as extended or not pursuant to this sentence and the preceding sentence, the "Maturity Date" of such Advance).

The principal amount of each Advance will be payable in any event on the Maturity Date for such Advance. The Borrower further promises to pay interest on the unpaid principal amount of each Advance, for each successive one-month interest period (each, an "Interest Period") during which such Advance is outstanding, at an interest rate equal to the 1-month LIBOR applicable to such Interest Period (as set forth on the applicable Telerate screen, the "LIBOR" for such Interest Period) as of 11:00 a.m. London time, 2 London business days prior to the first day of such Interest Period, plus 0.30% (the "Interest Rate"). Interest will be computed on the basis of a 360-day year for the actual number of days elapsed. Interest on each Advance accrued during each Interest Period with respect thereto will be payable on the last day of such Interest Period (each such interest payment date, an "Interest Payment Date"; each Maturity Date and each Interest Payment Date, collectively, "Payment Dates"). If any Interest Period begins on a day for which there is no numerically corresponding day in the calendar month at the end of such Interest Period, such Interest Period shall end on the last Business Day of such calendar month; and if any Interest Period would otherwise expire on a day that is not a Business Day, such Interest Period shall expire on the next succeeding Business Day, provided that if any Interest Period would otherwise expire on a day that is not a Business Day but is a day of the month after which no further Business Day occurs in such month, such Interest Period shall expire on the next preceding Business Day.

Principal and interest due and not paid on any Payment Date shall bear interest at a rate per annum equal to two (2) percent in excess of the rate otherwise applicable thereto pursuant to the preceding paragraph until any such principal and any such interest is paid in full.

# LEHMAN BROTHERS
**Unsecured Master Promissory Note**
**Page 2**

Promptly after making each Advance, the Lender shall send to the Borrower a written confirmation ("Confirmation") of the date, principal amount, the LIBOR for the initial Interest Period and the Payment Dates of such Advance. Unless the Borrower shall object within two Business Days (as hereinafter defined) after receiving said Confirmation, such Confirmation shall be conclusive of the agreement of the parties and binding for all purposes. The failure of the Lender to transmit such a written Confirmation shall not limit or otherwise affect the obligation of the Borrower to repay the Advance with accrued interest thereon.

The Borrower shall not permit its Consolidated Tangible Net Worth (as defined in Exhibit A) at any time to be less than $7.0 billion.

The Borrower shall continue to own directly, free and clear of any Lien (as defined in Exhibit A) not less than 80% of the Voting Stock (as defined in Exhibit A) of Lehman Brothers Inc. and shall continue to own, directly or indirectly, free and clear of any lien, not less than 80% of the Voting Stock of each other Significant Subsidiary (as defined in Exhibit A)=(or, in the case of any Subsidiary that shall have become a Significant Subsidiary after the Effective Date, such lesser percentage of the Voting Stock of such Subsidiary as shall have been owned by the Borrower at the time such Subsidiary became a Significant Subsidiary), provided that any Significant Subsidiary may (a) enter into a Solvent Liquidation and (b) enter into a merger, consolidation or other combination if the Borrower or a Subsidiary of the Borrower is the surviving corporation and no Default or Event of Default shall have occurred and be continuing after giving effect to such merger consolidation or other combination.

In the event that (i) the Borrower shall fail to pay any principal of any Advance under this Note when due and payable hereunder, and such failure shall continue for a period of two (2) days after receipt by Borrower of written notice by the Lender thereof; or (ii) the Borrower shall fail to pay any interest on any Advance or any other amount under this Note when due and payable hereunder, and such failure shall continue for a period of five (5) days after receipt by Borrower of written notice by the Lender thereof; or (iii) the Borrower shall fail to comply with either of the covenants contained in two immediately preceding paragraphs, (iv) a receiver, trustee or other similar official shall be appointed over the Borrower or a material part of its assets and such appointment shall remain uncontested for twenty (20) days or shall not be dismissed or discharged within sixty (60) days; or (v) the Borrower shall be adjudicated insolvent or bankrupt or admit in writing its inability to pay its debts as they become due, subject to applicable grace periods, if any; or (vi) the Borrower shall make a general assignment for the benefit of creditors; or (vii) the Borrower shall file a petition for relief under any bankruptcy, insolvency or similar law (domestic or foreign); or (viii) an involuntary proceeding shall be commenced or filed against the Borrower under any bankruptcy, insolvency or similar law (domestic or foreign) and such petition shall not be dismissed within sixty (60) days after commencement or filing (each event specified in clauses (i) through (viii) above, an "Event of Default"); then, in the case of any of the events specified in clauses (iv), (v), (vi), (vii) or (viii), the outstanding principal amount of all Advances, together with accrued and unpaid interest thereon, and all other amounts payable by Borrower under this Note shall become immediately due and payable without any action on the part of the Lender, and in the case of any of the other events specified above, the Lender may by written notice to the Borrower declare the outstanding principal amount of all Advances, together with accrued and unpaid interest thereon, and all other amounts payable by Borrower under this Note to be immediately due and payable, whereupon the same shall become immediately due and payable, and, except for the notices specified in this sentence, Borrower waives demand, presentment, protest, notice of protest, dishonor, notice of dishonor or any other notice of any kind. Any notice specified in this paragraph by the Lender to the Borrower of the occurrence of a failure to pay or other default must be delivered as specified below and must clearly specify that it is a notice of default under this paragraph.

No delay on the part of the Lender in exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise by the Lender of any right, power or remedy preclude other or further exercise thereof, or the exercise of any other right, power or remedy. No waiver of, or consent with respect to, any provision of this Note shall in any event be effective unless the same shall be in

# LEHMAN BROTHERS
**Unsecured Master Promissory Note**
**Page 3**

writing and signed and delivered by the Lender, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

The Lender is hereby authorized to honor such written instructions as it may receive for any of the actions pertaining to this Note only from persons ("Authorized Person(s)") designated pursuant to the written instructions attached hereto ("Instructions"). Such actions may include the request for an Advance, specification of Payment Dates therefor or any other information relevant to such an Advance.

The Instructions may be modified from time to time by the Borrower. Such modifications will be evidenced by revised Instructions which will be delivered to the Lender by the Borrower. Such revised Instructions shall supersede and replace any other Instructions between the Lender and the Borrower and shall take effect upon receipt by the Lender.

Unless otherwise agreed by the Lender and the Borrower, both principal and interest hereunder are payable to the Lender at:

> Bank of Taiwan, New York Agency
> 100 Wall Street
> 11th Floor
> New York, NY 10005

in immediately available funds on the Payment Date, in the same currency in which the Advance is made. Whenever any payment to be made hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, provided that if any payment would otherwise be due on a day that is not a Business Day but is a day of the month after which no further Business Day occurs in such month, such payment shall be made on the next preceding Business Day. Such extension of time shall be included in the computation of interest payable. "Business Day" shall mean any day excluding Saturday, Sunday and any day which shall be in New York City a legal holiday or a day on which banking institutions are authorized or required by law or other governmental actions to close and which is also a day for trading by and between banks in U.S. dollar deposits in the London interbank Eurodollar market.

The Lender shall maintain in accordance with its usual practice an account or accounts evidencing indebtedness of the Borrower to the Lender hereunder, including the amounts of principal and interest payable and paid to the Lender from time to time under this Note. The entries made in the account of the Lender shall, to the extent permitted by law, be prima facie evidence of the existence and amounts of the obligations of the Borrower therein recorded; provided that the failure of the Lender to maintain any such account, or any error therein, shall not in any manner affect the obligation of the Borrower to repay (with applicable interest) the Loans made to the Borrower by the Lender in accordance with the terms of this Note.

The Borrower has the right at any time, upon three Business Days' written notice to the Lender, given by 10:00 AM New York time, to prepay in whole or in part any Advance hereunder without premium or penalty, provided that the Borrower shall pay accrued interest on the principal so prepaid to the date of such prepayment, and provided further that the Borrower shall reimburse the Lender for any reasonable costs or other losses which the Lender may sustain as a result of such prepayment being made on a date that is not a Payment Date applicable thereto. Prior to reimbursement, the Lender shall provide the Borrower with a certificate setting forth all of the costs or losses required to be reimbursed and setting forth the method used to calculate such costs or losses. Any amounts so prepaid may be reborrowed hereunder, subject to the aggregate limit stated in the first paragraph of this Note and the approval of the Lender.

# LEHMAN BROTHERS
**Unsecured Master Promissory Note**
Page 4

Neither the Lender nor the Borrower shall have the right to assign its rights and obligations under this Note without the prior written consent of the other party provided that the Lender may assign its rights and obligations under this Note to its affiliates within the United States without prior consent of the Borrower.

The Borrower will use the proceeds of Loans pursuant to this Note for general corporate purposes.

Notwithstanding any common law or statutory rights of set off of the Lender, the Lender agrees that it shall have no right of set off against any account at the Lender containing cash and/or securities and commodities in segregation on behalf of Borrower's customers, in accordance with the Securities Exchange Act of 1934 and the rules promulgated thereunder by the Securities and Exchange Commission and regulations promulgated pursuant thereto by self regulatory organizations, and the Commodity Exchange Act and the rules promulgated thereunder by the Commodity Futures Trading Commission and regulations promulgated pursuant thereto by self regulatory organizations, or otherwise. If any amount owing hereunder shall be due and payable and remain unpaid after any grace period for such payment provided for herein, the Lender shall have the right to set off such amount against any account of the Borrower held by the Lender or its affiliates.

Notices, confirmations and demands hereunder shall be in writing and will be sufficient if delivered by hand, by certified mail with return receipt or nationally recognized courier service postage prepaid, or by tested cable, or facsimile transmission, at the following addresses, or to such other address as the recipient shall have designated to the sender by written notice hereunder.

**If to the Borrower:**
Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, NY 10019
Attn: Treasury
Fax #212-520-0838

**If to the Lender:**
Bank of Taiwan, New York Agency
100 Wall Street
11th Floor
New York, NY 10005
Attention: General Manager
Fax #212-968-8370

This Note shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State. Any judicial proceeding brought to enforce this Note may only be brought in a federal or New York State court located in the County of New York, State of New York. Each party to this Note waives any objection to jurisdiction of and venue in such courts in any action instituted hereunder and shall not assert any defense based on lack of jurisdiction of or improper venue in any such court or based upon *forum non conveniens*.

THE BORROWER AND THE LENDER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR RELATED TO THIS NOTE.

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____         By: _____
Name: Jennifer Fitzgibbon                                Name: Janet Birney
Title:  Senior Vice President                              Title: Senior Vice President

099999-0921-08723-NY03.2275868.15

# LEHMAN BROTHERS
**Unsecured Master Promissory Note**
**Page 5**

Acknowledged and agreed:

**BANK OF TAIWAN, NEW YORK AGENCY**

By: _____
Name: Colin Chen
Title: VP & DGM

LEHMAN BROTHERS
**Unsecured Master Promissory Note**
Page 6

# LEHMAN BROTHERS

## WRITTEN INSTRUCTIONS

With respect to the Unsecured Master Promissory Note dated August 8, 2007, of Lehman Brothers Holdings Inc. to Bank of Taiwan, New York Agency (the "Lender"), we hereby authorize and request you to act on any instructions(s) given to you in writing from any one of the persons named in the Secretary's Certificate for Corporate Borrowing.

We agree that your determination of whether a written instruction is from one of the above listed persons shall be conclusive, absent gross negligence or willful misconduct by the Lender and/or its employees.

For and on behalf of Lehman Brothers Holdings Inc.

By: _[signature]_

Name: Jennifer Fitzgibbon
Title:   Senior Vice President

By: _[signature]_

Name: Janet Birney
Title: Senior Vice President

Dated: August 8, 2007

**Schedule 1**

FORM OF BORROWING NOTICE

To: Bank of Taiwan, New York Agency
100 Wall Street
11th Floor
New York, NY 10005
Attention: General Manager

      Reference is hereby made to the Unsecured Master Promissory Note, dated August 8, 2007 (as amended, supplemented or otherwise modified from time to time, the "Promissory Note"), between Lehman Brothers Holdings Inc. (the "Borrower") and Bank of Taiwan, New York Agency (the "Lender"). Terms defined in the Promissory Note and not otherwise defined herein are used herein with the meanings so defined.

      The Borrower hereby gives notice to the Lender that Advances under the Loan, and of the type and amount, set forth below are requested to be made on the date indicated below:

LOANS

| Date of Advance | Aggregate Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

      The Borrower hereby requests that the proceeds of Loans described in this Borrowing Notice be made available to it as follows:

[insert transmittal instructions].

      LEHMAN BROTHERS HOLDINGS INC.

By: _____
Title:

DATE:_____

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Title:

**EXHIBIT A**

## Definitions

"Consolidated Assets" shall mean, as to any Person, the assets of such Person and its Subsidiaries determined on a consolidated basis in accordance with GAAP.

"Consolidated Net Worth" shall mean, as to any Person, the Net Worth of such Person and its Subsidiaries determined on a consolidated basis after appropriate deduction for any minority interests in Subsidiaries in accordance with GAAP.

"Consolidated Tangible Net Worth" shall mean, as to any Person, the Consolidated Net Worth of such Person and its Subsidiaries less the amount of all intangible items, including, without limitation, goodwill, franchises, licenses, patents, trademarks, trade names, copyrights, service marks, brand names, write-ups of assets and any unallocated excess costs of investments in Subsidiaries over equity in underlying net assets at dates of acquisition all determined in accordance with GAAP.

"Lien" shall mean any mortgage, pledge, hypothecation, assignment, deposit arrangement, (excluding deposits made with exchanges, depositories or clearing corporations in the ordinary course of business), encumbrance, lien (statutory or other), preference, priority or other security agreement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, any financing or similar statement or notice filed under the UCC or any other similar recording or notice statute, and any lease having substantially the same effect as any of the foregoing).

"Net Worth" shall mean, as to any Person, the sum of its capital stock, capital in excess of par or stated value of shares of its capital stock, retained earnings (or accumulated deficit) and any other account which, in accordance with GAAP, constitutes stockholders equity, excluding any treasury stock.

"Person" shall mean any individual, partnership, joint venture, firm, corporation, association, trust, limited liability company, limited liability partnership or other enterprise or any government or political subdivision or any agency, department or instrumentality thereof.

"Significant Subsidiary" shall mean any Subsidiary with assets greater than or equal to 7.5% of the Consolidated Assets of the Borrower. For the purposes of this definition, the Consolidated Assets of the Borrower or any of its Subsidiaries at any time shall be determined on the basis of the most recent financial statements filed by the Borrower with the U.S. Securities and Exchange Commission at or prior to such time.

"Solvent Liquidation" in respect of a Significant Subsidiary shall mean a solvent liquidation, solvent reorganization or other solvent restructuring of such Subsidiary, whereby all liabilities of such Subsidiary are extinguished or assumed by the owner or owners of the capital stock of such Subsidiary to which the assets of such Subsidiary are transferred in connection with such transaction (and the creditworthiness of such owner or owners, after giving effect to such transaction, is at least equal to the creditworthiness of such Subsidiary immediately prior to such transaction), in any such case, other than in connection with the occurrence of any of the events referred to in clauses (iv), (v), (vi), (vii) or (viii) in the definition of Event of Default in the Note (applied to the Significant Subsidiary in question rather than the Borrower).

"Subsidiary" of any Person shall mean and include (i) any corporation more than 50% of whose stock of any class or classes having by the terms thereof ordinary voting power to elect a majority of the directors of such corporation (irrespective of whether or not at the time stock of any class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by such Person directly or indirectly through Subsidiaries and (ii) any partnership, association, joint venture or other entity in which such Person directly or indirectly through Subsidiaries, has more than a 50% equity interest at the time. Subsidiary shall in any event exclude any Person which would otherwise be a Subsidiary but the interests in which were acquired in an investment banking transaction and are being held for resale.

"Voting Stock" shall mean the shares of capital stock and any other securities of a Person entitled to vote generally for the election of directors or any other securities (including, without limitation, rights and options), convertible into, exchangeable into or exercisable for, any of the foregoing (whether or not presently exercisable, convertible or exchangeable).