**HEARING DATE AND TIME: JANUARY 26, 2012 AT 10:00 A.M. (Eastern Time)**
**RESPONSE DEADLINE: DECEMBER 9, 2011 AT 4:00 P.M. (Eastern Time)**

---

THIS OBJECTION SEEKS TO RECLASSIFY AND/OR DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE SCHEDULES ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).

IF YOU HAVE QUESTIONS, PLEASE CONTACT
DEBTORS' COUNSEL, CINDI E. GIGLIO, AT 212-696-6000.

---

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for the Official Committee of Unsecured*
*Creditors of Lehman Brothers Holdings Inc.*

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
*Counsel for Debtor Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.<br><br>       Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |

## NOTICE OF HEARING ON LEHMAN BROTHERS HOLDINGS INC.'S AND CREDITORS COMMITTEE'S TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO JPMORGAN'S ASSET MANAGEMENT FUND CLAIMS <u>(NO LIABILITY, MISCLASSIFIED AND DUPLICATIVE CLAIMS)</u>

**PLEASE TAKE NOTICE** that on October 26, 2011, Lehman Brothers Holdings Inc.

("<u>LBHI</u>"), as debtor and debtor in possession and the Official Committee of Unsecured Creditors

(the "<u>Committee</u>" and together with LBHI, the "<u>Objectors</u>") filed their Two Hundred Twenty-

Ninth Omnibus Objection to JPMorgan's Asset Management Fund Claims (the "<u>Objection</u>"), and

that a hearing (the "<u>Hearing</u>") to consider the Objection shall be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "<u>Bankruptcy Court</u>"), on **January 26, 2012 at 10:00 a.m. (Eastern Time)**

(the "<u>Hearing</u>"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be

in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of

the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

responding party, the basis for the response and the specific grounds thereof, and shall be filed

with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which

can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing

system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable

Document Format (PDF), WordPerfect, or any other Windows-based word processing format

(with a hard copy delivered directly to Chambers), in accordance with General Order M-182

(which can be found at www.nysb.uscourts.gov), and served in accordance with General Order

M-399, and on (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New

York, New York 10004, Courtroom 601; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153 (Attn: Lori Fife, Esq.); (iii) conflicts counsel for LBHI, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178-0061 (Attn: Joseph D. Pizzurro, Esq. and L.P. Harrison 3rd, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Elisabeth Gasparini, Esq. and Andrea Schwartz, Esq.); (v) attorneys for the Committee appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq. and Evan Fleck, Esq.); and (vi) special counsel to the Committee, Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 (Attn:  John B. Quinn, Esq. and Erica Taggart, Esq.) so as to be filed and received by no later than **December 9, 2011 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed and served with respect to the Objection or any claim set forth thereon, the Objectors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

*[Remainder of Page Intentionally Left Blank]*

**PLEASE TAKE FURTHER NOTICE** that responding parties are required to attend the

Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  October 26, 2011
         New York, New York

<div style="margin-left:50%">

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
By: ____/s/ John B. Quinn_____
John B. Quinn
Erica Taggart
Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Susheel Kirpalani
Andrew J. Rossman
James Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000
*Counsel for the Official Committee of
Unsecured Creditors of Lehman Brothers
Holdings Inc.*


**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
By: ____Joseph D. Pizzurro_____
Joseph D. Pizzurro
L.P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney
Peter J. Behmke
Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
*Counsel for Debtor Lehman Brothers
Holdings Inc.*

</div>

**HEARING DATE AND TIME: JANUARY 26, 2012 AT 10:00 A.M. (Eastern Time)**
**RESPONSE DEADLINE: DECEMBER 9, 2011 AT 4:00 P.M. (Eastern Time)**

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

51 Madison Avenue, 22nd Floor,
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for the Official Committee of Unsecured*
*Creditors of Lehman Brothers Holdings Inc.*

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
*Counsel for Debtor Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS HOLDINGS INC., et al. | Chapter 11 |
| Debtors. | Case No. 08-13555 (JMP) |

**LEHMAN BROTHERS HOLDINGS INC.'S AND CREDITORS**
**COMMITTEE'S TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION**
**TO JPMORGAN'S ASSET MANAGEMENT FUND CLAIMS (NO LIABILITY,**
**MISCLASSIFIED AND DUPLICATIVE CLAIMS)**

THIS OBJECTION SEEKS TO RECLASSIFY AND/OR DISALLOW AND EXPUNGE
CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF TWO
HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW
THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE
LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE SCHEDULES ATTACHED
THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).

IF YOU HAVE QUESTIONS, PLEASE CONTACT
DEBTORS' COUNSEL, CINDI E. GIGLIO, AT 212-696-6000.

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

Lehman Brothers Holdings Inc. ("LBHI") and the Official Committee of Unsecured

Creditors (the "Committee", and together with LBHI, the "Objectors") respectfully represent as

follows:

### **Preliminary Statement**

1.      This objection challenges the purported right of certain investment funds

("Funds") that received investment advice or other services from subsidiaries of JPMorgan

Chase & Co. ("JPMorgan") to fully satisfy their claims using the collateral JPMorgan Chase

Bank, N.A. ("JPMorgan Bank") took from LBHI the week before its bankruptcy.

2.      Those Funds allege that they lost more than $700 million on bonds and various

investments related to Lehman entities.   Their losses were ultimately borne by third-party

investors in the Funds – not by JPMorgan.   Indeed, their underlying claims are no different than

so many creditors who held Lehman bonds or other Lehman-related investments before LBHI's

bankruptcy.   Unlike those similarly situated creditors, however, JPMorgan, on behalf of the

Funds, has claimed the Funds are entitled to use LBHI's collateral to fully repay their claims by

virtue of agreements forced upon LBHI by JPMorgan Bank on September 9, 2008.   As the Court

is aware, that day JPMorgan Bank demanded that LBHI guaranty all liabilities of any type of

LBHI and its subsidiaries to JPMorgan Bank and its affiliates, subsidiaries, successors and

assigns (the "September Guaranty").   In total, LBHI posted $8.6 billion of cash and cash

equivalents to secure the September Guaranty pursuant to a security agreement (the "September

Security Agreement" and, together with the September Guaranty, the "September Agreements").

3.      Specifically, JPMorgan claims that it can apply this LBHI collateral on behalf of

the Funds because the Funds are purportedly "affiliates" of JPMorgan Bank, as that term is used

in the September Agreements.  But they are not.  Affiliates, in the context of the September Agreements, are corporations who are part of the same corporate family -- such as parent, subsidiary, and sibling corporations, all of whom ultimately share the same economic interests and risks.  The overarching purpose of a parent guaranty and corresponding security agreement is to protect the beneficiary from losses incurred by entities with which it shares an inextricable economic interrelatedness.  The term "affiliate," as used in the September Agreements, must be construed in this context.  Thus, in the case of JPMorgan, its affiliates are the hundreds of companies JPMorgan lists as its subsidiaries in its consolidated financial reporting.  They are not JPMorgan's customers, no matter how much account management or investment advice JPMorgan's subsidiaries provide to them.

4.      Here, the Funds are not parents, subsidiaries, or siblings of JPMorgan Bank within the commonly understood meaning of corporate "affiliate."  Indeed, they are not any part of the JPMorgan corporate family.  Their profits and losses do not run to any JPMorgan entity and JPMorgan does not include the Funds in its consolidated financial reporting.  The Funds are merely investment vehicles for third party investors – *i.e.*, JPMorgan's clients.  Thus, their claims are not entitled to special treatment or elevation above similarly situated claims of the other unsecured creditors of the Lehman estate.

5.      The formation and governing documents of the Funds also make clear that they are not affiliates of JPMorgan Bank.  On the contrary, those documents describe JPMorgan as an advisor, service provider, or independent contractor – none of which amount to a corporate affiliate.

6.      The Funds argue that mere common control of the Funds – through service contracts or customary bank fiduciary services – is a sufficient basis to designate an entity as an

3

"affiliate" under the September Agreements, irrespective of whether or not there is any sharing of profit and loss between the Funds and JPMorgan. However, this articulation of "affiliate" is based upon definitions used in a regulatory context where the concern of the drafter is whether an entity has the ability to direct the conduct of another entity, or have its conduct directed by another. Those concerns are simply inapplicable in the context of a parent guaranty where the essential concern is to protect the interrelated members of a corporate family from financial exposure. Even so, the Funds' documents specify that the Funds are not controlled by, or under common control with, any entity – including any JPMorgan subsidiary.

7.      For the reasons set forth in the First Amended Complaint of LBHI and the Committee against JPMorgan Bank (Adv. Pro. No. 10-03266-JMP) (the "Amended Complaint"), the September Agreements are subject to challenges on a number of grounds, including that they are avoidable as fraudulent conveyances and are invalid because they were procured by JPMorgan through unlawful economic coercion. To be clear, this current objection does not further challenge the validity or enforceability of the September Agreements. Rather, LBHI and the Committee bring this objection to challenge proofs of claims filed by JPMorgan on behalf of the Funds on the ground that the Funds are not affiliates of JPMorgan Bank and thus are not covered by the September Agreements – even if those contracts were fully enforceable.

8.      Although JPMorgan's conduct in extracting the September Agreements is not directly at issue in this objection, it is worth noting that these claims demonstrate JPMorgan's extreme overreaching in grabbing collateral from LBHI just when LBHI needed it most. In the week before LBHI's bankruptcy filing, JPMorgan grabbed $8.6 billion in collateral for any and all potential exposure to any Lehman entity. There is no evidence that the Funds were considered at that time, and the addition of the term "affiliates" in the agreements was never

negotiated -- not to mention deemed to cover the Funds' customers.  Nevertheless, JPMorgan grabbed such a huge collateral cushion pre-bankruptcy that it had collateral left over to cover not just all of its own alleged losses, but also those of its investment fund customers.  JPMorgan's application of over $700 million of that collateral to fully compensate its customers for losses to their investment portfolios (including on contractually subordinated debt) – while similar customers in dozens of mutual funds and other investment funds receive pennies on the dollar – runs contrary to all notions of fair and equitable treatment of creditors.

### **Relief Requested**

9.    The Objectors file this Two Hundred Twenty-Ninth Omnibus Objection to JPMorgan's Asset Management Fund Claims (the "Objection"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objections Procedure (the "Procedures Order") [Docket No. 6664], seeking disallowance and expungement of the claims listed on Schedule 1 of the proposed order attached hereto, reclassification of the claims listed on Schedule 2 of the proposed order, and disallowance and expungement of the claims listed on Schedule 3 of the proposed order.

10.    LBHI has examined the proofs of claim identified on Schedule 1 (the "No Liability Claims") and has determined that they do not assert claims against LBHI.  LBHI has also examined the proofs of claim identified on Schedule 2 (the "Misclassified Claims" ) and has determined that, to the extent the Funds assert that the claims are secured, the claims should be reclassified as general unsecured non-priority claims.  Finally, LBHI has examined the proofs of claim identified on Schedule 3 (the "Duplicative Claims" and, collectively with the No Liability Claims and the Misclassified Claims, the "Fund Claims") and has determined that such claims

are duplicative of claims filed by indenture trustees in these chapter 11 cases, and should thus be disallowed and expunged.

11.     The Objectors reserve all their rights to object on any basis to any of the Fund Claims.[1]

## Jurisdiction

12.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## Background

### I.     JPMorgan's Business and the Claimant Funds

13.     At the time of LBHI's bankruptcy petition, JPMorgan had hundreds of subsidiaries, including JPMorgan Bank. JPMorgan Chase & Co., 2008 Form 10-K, filed March 2, 2009 (the "JPMorgan 2008 10K") at Ex. 21.1. JPMorgan and its subsidiaries operated in six main business segments -- Investment Bank, Retail Financial Services, Card Services, Commercial Banking, Treasury and Securities Services, and Asset Management. *Id.* at 214, Note 37. The profits and losses of all JPMorgan subsidiaries were reported on a consolidated basis on JPMorgan's balance sheet and annual reports.

14.     Through these various business segments, JPMorgan entities earn money by putting JPMorgan's own capital at risk in exchange for a return on the investment (sometimes in the form of principal and interest payments on loans) as well as by receiving fees for services. For example, in its Treasury and Securities Services segment, JPMorgan Bank acted as clearance

---

[1]  These other bases include, but are not limited to, the invalidity or unenforceability of the September Agreements, as well as the underlying amount of each of the Fund Claims.

agent for its broker-dealer clients (including LBHI's subsidiary Lehman Brothers Inc. ("LBI")). JPMorgan Bank earned fees for this service.  Moreover, to the extent JPMorgan Bank incurred profits or losses by virtue of extending credit and earning fees, they were included in JPMorgan's financial statements.

15.    Much of JPMorgan's business also involves assisting clients in managing the clients' own capital.  For example, JPMorgan holds and manages accounts for its customers, including deposit, checking, and savings accounts.  Similarly, it manages investment accounts for third-party investors.  Sometimes it holds accounts or securities for a single investor and at other times for groups of investors.  But, in any case, any gains and losses for these customer accounts and investments do not run to JPMorgan itself.  While it may earn a fee for its services, any profits or losses of the investment accounts run to the third-party customers and are not reflected in any JPMorgan financial statements.

16.    JPMorgan's asset management business was (and still is) one of the segments of JPMorgan's business that manages clients' funds in exchange for a fee.  In its Asset Management division, JPMorgan provided certain services, including administration and investment advice, to third-party investors, either directly to those investors or through various investment vehicles, such as investment funds.  *See generally* JPMorgan 2008 10K, at 71 (noting that Asset Management's client segments include institutional clients, retail clients, private bank clients, private wealth management and brokerage services, and that performance is based on assets under management for clients).  In 2008, some of these third-party investors held investments related to Lehman entities such as investments in LBHI-issued bonds.  JPMorgan subsidiaries earned service fees for holding the accounts and making investments – fees which were included in JPMorgan's financial statements.  But gains and losses for the investments ran to the investors

– not to any JPMorgan entity.  Indeed, the terms of use on JPMorgan's Asset Management website provide that "[t]he securities and other investment products referred to in the J.P. Morgan Asset Management Web site are not bank deposits and are not FDIC insured, nor are they obligations of or guaranteed by J.P. Morgan Chase Bank, National Association or any of its affiliates."[2]  Moreover, the gains and losses from the investment funds are not reported in JPMorgan's financial statements.  *See* JPMorgan 2008 10K, Consolidated Financial Statements at 130-34 ("Assets held for clients in an agency or fiduciary capacity by the Firm [JPMorgan and its subsidiaries] are not assets of JPMorgan Chase and are not included in the Consolidated Balance Sheets.").

17.      By way of example, JPMorgan Core Bond Fund ("Core Bond Fund") is one of the Funds that has asserted claims against LBHI.  *See* Proof of Claim No. 22874.  The Core Bond Fund's stated goal is to "maximize total return by investing primarily in a diversified portfolio of intermediate- and long-term debt securities."  *See* JPMorgan Core Bond Fund, Summary Prospectus, July 1, 2011 at 1.[3]  As part of this strategy, the Core Bond Fund "may principally invest in corporate bonds, U.S. treasury obligations and other U.S. government and agency securities, and assetbacked, mortgage-related and mortgage-backed securities."  *Id.* at 2.  As is the case with many of the Funds, the Core Bond Fund is divided into distinct classes of shares, some of which are available to the general public and others of which are available to institutional holders, including corporations and pension plans.  *Id.*

---

[2]  *See* https://www.jpmorganfunds.com/cm/Satellite?UserFriendlyURL=terms_of_use& pagename=jpmfVanityWrapper.

[3]  Available at https://www.jpmorganfunds.com/cm/Satellite?pagenamejpmfVanity=Wra pper&UserFriendlyURL=otherresourcesld&cusip=4812C0357&fileName=SPRO-CB-ABCS.PDF

18.    Thus, while the Funds take a variety of legal forms, including, among others, trusts and partnerships, the core characteristic of each of the Funds is that third-party investors put capital into the Funds and the Funds hold that capital, and assets purchased with that capital, for the benefit of those investors – not JPMorgan.  *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 883 (D. Md. 2005) ("Mutual funds . . . do not have assets of their own but merely hold in trust securities (and cash) for the benefit of the mutual fund shareholders.").

## II.    <u>August and September Agreements</u>

19.    From 2000 until 2008, JPMorgan Bank provided clearing services to LBI, Lehman's North American broker-dealer.

20.    In August, 2008, JPMorgan Bank required LBHI to guarantee the clearance obligations of LBI through a set of documents, including an amendment to the 2000 Clearance Agreement, a guaranty (the "<u>August Guaranty</u>") and a security agreement (the "<u>August Security Agreement</u>" and, collectively, the "<u>August Agreements</u>").

21.    Specifically, in the August Guaranty, LBHI guaranteed the obligations of several of its subsidiaries – primarily LBI – "pursuant to the Clearance Agreement, dated as of June 15, 2000, to which one or more of [LBHI's subsidiaries] and [JPMorgan Bank] are parties . . . ." LBHI did not guarantee any of LBI's obligations to JPMorgan Bank other than those falling under the 2000 Clearance Agreement.  Further, LBHI's guaranty was given only to "JPMorgan Chase Bank, N.A. and any of its successors and assigns."  By its terms, the August Guaranty was therefore only for the benefit of JPMorgan Bank, the entity providing LBI with clearing services, and not for any other JPMorgan entity such as any of JPMorgan Bank's affiliates or subsidiaries.

20.    The August Security Agreement secured LBHI's obligations under the August Guaranty.  As with the August Guaranty, the August Security Agreement defined "Bank" as

"JPMorgan Chase Bank, N.A. and any of its successors or assigns." The security interest granted by LBHI therefore inured only to the benefit of JPMorgan Bank and not to any other JPMorgan entity.

21.     On September 9, 2008, less than a week before LBHI filed for bankruptcy, JPMorgan Bank demanded that LBHI enter into the September Agreements. Unlike the previous guaranty LBHI had executed in August 2008, which only covered liabilities under the Clearance Agreement, the September Guaranty purported to cover "all obligations and liabilities of [all of LBHI's direct and indirect subsidiaries] . . . of whatever nature."[4]

22.     Furthermore, whereas the August Guaranty was in favor of JPMorgan Bank and its successors and assigns, the September Agreements were purportedly in favor of "JPMORGAN CHASE BANK N.A. or any of its *affiliates*, subsidiaries, successors and assigns." (emphasis supplied). This expansion of the entities purportedly covered by the September Agreements was not the subject of any negotiation between the parties. The same day that JPMorgan presented LBHI with the September Agreements, JPMorgan also demanded that LBHI deliver collateral to support the September Guaranty. Accordingly, on September 9 and 10, LBHI deposited $3 billion in cash and cash equivalents into its accounts at JPMorgan, and another $600 million in cash on September 11.

23.     On September 11, 2008, JPMorgan demanded yet another $5 billion in cash, this time coupled with an explicit, written threat to stop clearing trades for LBI if the funds were not received by the start of business the following morning. On Friday, September 12, 2008, left

---

[4]   The September Guaranty and the September Security Agreement are attached hereto as Exhibit A and Exhibit B respectively.

with no other choice, LBHI transferred $5 billion in cash to JPMorgan as demanded. The next business day, LBHI filed for bankruptcy.

III.    **The Bankruptcy Proceedings and the Claims Process**

    A.    **Procedures for Filing Proofs of Claims**

24.    Commencing on September 15, 2008 (the "Commencement Date"), and periodically thereafter, LBHI and certain of its subsidiaries (the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

25.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee.

26.    On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271]. A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

27.    All claimants received notice of the Bar Date Order by mail. *See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice"). The Bar Date Notice was also posted on the docket, and the Bar Date Order was published in The New York Times (International Edition), The Wall Street Journal (International Edition), and The Financial Times. A list of the Debtors in these chapter 11 cases and their respective case numbers was included as part of the Bar Date Notice as well as on the instructions to the proof of claim form. Bar Date

Notice at Schedule A. In accordance with the Bar Date Order's requirement that claims be filed against the proper Debtor, the Bar Date notice stated, in bold-face type and in capital letters, that "YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS." *Id.* at 3.

28.    On January 14, 2010, this Court entered the Procedures Order, which authorizes the Debtors, among other things, to file omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

29.    On August 30, 2011, this Court entered the order (i) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan [Docket No. 19579].

### B.    JPMorgan Files Proofs of Claim on Behalf of the Funds on the Basis That They Count as Affiliates of JPMorgan Bank

30.    Following the Commencement Date, certain JPMorgan subsidiaries, purporting to act in their capacity as agent for each of the Funds, filed a total of seventy-five proofs of claim (the "Proofs of Claim") on behalf of each of the seventy-five Funds, which asserted that LBHI's estate was liable for approximately $730 million in losses to the Funds.

31.    Each of the Proofs of Claim includes the same explanation for why each respective Fund is covered by the September Agreements:

> LBHI owes the Claimant the amount of all of the Claims pursuant to the Guarantee dated as of September 9, 2008 (the "Second LBHI Guaranty") made by LBHI, whereby LBHI guaranteed all of the obligations of all of its direct and indirect subsidiaries and their respective successors to JPMorgan Chase Bank, N.A. ("JPMCB") and all of its affiliates, subsidiaries, successors and assigns . . . .

12

LBHI's obligations under the Second LBHI Guaranty are secured
pursuant to the Security Agreement dated as of September 9, 2008
(the "Second LBHI Security Agreement") executed by LBHI.

*See* Annexes to Proofs of Claim at 2-3. Additionally, each Proof of Claim states in conclusory

fashion that the "Claimant is an affiliate of JPMCB [JPMorgan Bank]." *Id.*

32.     The Proofs of Claim filed on behalf of the Funds did not assert any factual or

legal basis for the critical contention that the Funds were affiliates of JPMorgan Bank. Nor

would counsel for JPMorgan or the Funds provide any basis over many months of

correspondence with the Objectors. Finally, on May 23, 2011, after gathering and reviewing

documents for all of the various funds, counsel for the Funds (who, notably, are separate from

those representing JPMorgan Bank) asserted a purported basis for the Funds' claims that they

were affiliates of JPMorgan Bank as of the Commencement Date. *See* Letter from Edwin Smith

(counsel to the Funds) to Matthew Scheck, dated May 23, 2011 (the "May Letter") at 3.[5]  In the

May Letter, the Funds asserted that they are "affiliates" of JPMorgan Bank under the plain

meaning of the term "affiliate" based on two different types of relationships. The first group of

funds claiming to qualify as affiliates of JPMorgan Bank are "common law trusts for which

JPMCB [JPMorgan Bank] acts as trustee . . . because JPMCB as trustee of these funds controls

all decisions with respect to buying or selling the trust assets, and also controls all other day-to-

day operations of such funds." The second group of funds claiming to qualify as affiliates of

JPMorgan Bank are "[f]unds for which JPMCB or an affiliate of JPMCB acts as investment

advisor" where "[d]ay-to-day managerial rights are held by or have been delegated to JPMCB or

an affiliate of JPMCB through an investment advisory agreement or similar arrangement." *Id.*

---

[5]   A copy of the May Letter is attached hereto as Exhibit C.

C.    **Types of Claims Asserted on Behalf of the Funds**

33.    Although this Objection does not turn on the merits or amounts of the underlying claims, it is worth briefly describing the general categories of claims and the requested relief for each.

34.    The claims asserted on behalf of the Funds run the gamut of types of financial investments.  The majority of the Fund Claims are:  Bond Claims, Unsettled Trade Claims, Cancelled Trade Claims, Derivatives Unwind Claims, Futures Contract Claims, Corporation Action Claims and Prime Brokerage Exposure Claims (each as defined below).  A smaller number of the Proofs of Claim are based on other types of transactions, including, among others: bank loans, foreign exchange trades, prime brokerage income, errors and futures collateral.

35.    The Bond Claims purportedly arise from certain of the Funds' purchase of notes issued or guaranteed by LBHI and the assertion that an event of default has occurred under the governing documents for those notes (the "Bond Claims").  For the claims related to LBHI issued bonds, the Funds make the assertion that LBHI guaranteed its own debt through the September Agreements – notwithstanding the contractual priority provisions in the contracts.  In addition, for several of the Bond Claims, the indenture trustee of the relevant issuance of notes has already filed a claim based on those notes.[6]  Therefore, Objectors, through this Objection, seek to recharacterize the Bond Claims as general non-priority unsecured claims on the basis that the Bond Claims are not guaranteed or secured by the September Agreements; and Objectors further seek to disallow and expunge the Bond Claims set forth on Schedule 3 as duplicative of claims already filed by the relevant indenture trustee.

---

[6]    See Schedule 3 (identifying the relevant claim(s) filed by an indenture trustee).

36.     It is worth noting that the Bond Claims are based on the same LBHI issued (or guaranteed) bonds that underlie so many other creditors' claims against the estate.  Yet unlike the thousands of other creditors holding such claims, only JPMorgan and the Funds assert that the Funds' Bond Claims alone are fully secured by virtue of the broadest possible interpretation of the September Agreements.  JPMorgan's and the Funds' overreaching is best exemplified by certain Bond Claims that relate to the 6 ¾% Subordinated Medium Term Notes Due 12/28/2017 (the "Subordinated Notes").  The Subordinated Notes are contractually subordinated to other debt of LBHI.  However, the Funds claim that by virtue of the September Agreements, even their claims based on subordinated notes should be treated as fully secured.  In other words, here, the Funds seek to recover 100 cents on the dollar for subordinated notes solely due to the September Agreements, while the senior noteholders recover a fraction of that.  Accordingly, Objectors seek to disallow and expunge the Bond Claims based on the Subordinated Notes.[7]

37.     The Unsettled Trade Claims arise from certain purported sale orders that certain Funds placed with Lehman Brothers International (Europe) ("LBIE") for the purchase of certain securities issued or guaranteed by LBHI (the "Unsettled Trade Claims").  The Unsettled Trade Claims all point to a January 4, 2008 guaranty by LBHI of all of LBIE's liabilities to any counterparty of LBIE (the "LBIE Guaranty") as an independent basis for liability against LBHI.  However, to the extent the Unsettled Trade Claims rely on the September Agreements for their

---

[7]    *See* Proofs of Claim Nos. 22886, 23011 and 23024 (the "Subordinated Debt Claims").  On October 13, 2011 the Debtors objected to the Subordinated Debt Claims on the ground that they were duplicative of a proof of claim filed by the indenture trustee.  *See Debtors' Objection to Claims Nos. 22886, 23011, 23024 (Duplicative of Indenture Trustee Claim)* [Docket No. 20836].

secured status, the Objectors seek to recharacterize the Unsettled Trade Claims against LBHI as unsecured non-priority claims.[8]

38.    The Cancelled Trade Claims arise from securities trades purportedly placed by certain of the Funds with certain LBHI subsidiaries, and the alleged failure of those LBHI subsidiaries to settle the trades on the scheduled date (the "Cancelled Trade Claims").    The relevant Proofs of Claim assert that LBHI is liable for the amounts owed with respect to the Cancelled Trade Claims solely under the September Agreements.    Therefore, the Objectors, through this Objection, seek to disallow and expunge the Cancelled Trade Claims on the basis that LBHI is not liable for those claims.

39.    The Derivatives Unwind Claims purportedly arise out of guaranties given by LBHI for the benefit of certain Funds, relating to derivatives contracts between those Funds and an LBHI subsidiary (the "Derivatives Unwind Claims").    Therefore, the Objectors, through this Objection, seek to recharacterize the Derivatives Unwind Claims as unsecured non-priority claims on the basis that the Derivatives Unwind Claims are not secured by the September Agreements.[9]

40.    The Futures Contract Claims purportedly arise out of contracts between LBI and certain of the Funds, pursuant to which the parties entered into forward settling trades for mortgage-backed securities (the "Futures Contract Claims").    The relevant Proofs of Claim assert that LBHI is liable for LBI's obligations under the forward settling trades pursuant to the September Agreements.    Therefore, the Objectors, through this Objection, seek to disallow and

---

[8] Objectors expressly reserve the right to challenge the validity and enforceability of the LBIE Guaranty on any and all bases.

[9]    Certain of the Derivatives Claims appear to assert liability against LBHI solely on the basis of the September Guaranty.  The Objectors seek to disallow and expunge these claims, which appear on Schedule 1.

expunge the Futures Contract Claims on the basis that LBHI is not liable for those claims under the September Agreements.

41.     The Corporate Actions Claims arise from corporate actions (*e.g.*, stock splits, dividends) on securities purportedly held by LBI or LBIE as broker for certain Funds (the "Corporate Actions Claims").  As with the Unsettled Trade Claims, to the extent the Corporate Action Claims rely on the September Agreements for liability against LBHI and/or secured status, the Objectors seek to disallow and expunge or reclassify these claims as unsecured non-priority claims, as applicable.

42.     The Prime Brokerage Exposure Claims arise from securities and cash purportedly held by LBHI's prime broker subsidiaries, LBIE and LBI, on behalf of certain of the Funds (the "Prime Brokerage Exposure Claims").  To the extent the Prime Brokerage Exposure Claims rely on the September Agreements for liability against LBHI and/or secured status, the Objectors seek to disallow and expunge or reclassify these claims as unsecured non-priority claims, as applicable.

43.     These categories of claims are thus the same types of claims held by so many other creditors of LBHI on an unsecured basis.

## Objection

44.     This Objection challenges the liability of LBHI for certain of the claims, and the secured status of all of the claims, at issue in this Objection on the ground that the Funds are not JPMorgan Banks' affiliates, as that term is used in the September Agreements.[10]

---

[10] The relevant date for determining whether the Funds were "affiliates" of JPMorgan Bank is the Commencement Date.  *See Sexton v. Dreyfus*, 219 U.S. 339, 344-45 (1911).

## I.    Legal Standards

45.    The "burden of proof for claims brought in the bankruptcy court . . . rests on different parties at different times.  Initially, the claimant must allege facts sufficient to support the claim."  *In re WorldCom, Inc.*, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).  Only if the claim "alleges facts sufficient to support a legal liability to the claimant," is it *prima facie* valid.  *Id.*; *In re Smurfit-Stone Container Corp.*, 444 B.R. 111, 117 (Bankr. D. Del. 2011); *Izzo v. Dep't of the Treasury (In re Jett)*, No. 97-28756, 2000 WL 637322, at *4 (Bankr. W.D. Pa. Feb. 7, 2000).

46.    Even if a claimant meets its initial burden to allege sufficient facts to support its claim, if an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  Thus, once an objecting party refutes "at least one of the allegations that is essential to the claim's legal sufficiency," the "burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."  *In re WorldCom*, 2005 WL 3832065, at *4.

## II.    The Definition of "Affiliate"

### A.    The Term "Affiliate" Should be Given Its Plain Meaning

47.    The September Agreements state that they are in favor of "JPMORGAN CHASE BANK N.A. and its *affiliates*, subsidiaries, successors and assigns."  *See* September Guaranty, Ex. A, at 1; September Security Agreement, Ex. B, at 2 (emphasis added).  The term "affiliate" is not defined in either agreement.

48.    "Under New York law, a contract of guaranty and a security agreement are both

interpreted in the same manner as any other contract."[11]  *Live Nation Worldwide, Inc. v. GTA,*

*Inc.*, 07-CV-483 (CM), 2007 WL 1489761, at *3 (S.D.N.Y. May 18, 2007); *see, e.g., Fenner v.*

*Cahn,* 146 Misc. 210, 212 (N.Y. Sup. Ct. 1933) ("A guaranty is a contract to be construed by the

principles governing other contracts, the guide being the intent of the parties as expressed in the

guaranty and illuminated by the setting, fashioned by the adjacent circumstances."); *In re Keene*

*Corp.*, 188 B.R. 881, 898 (Bankr. S.D.N.Y. 1995) ("Security agreements are contracts, and

governed by the ordinary rules of contract interpretation.").

49.    "The objective in any question of the interpretation of a written contract, of

course, is to determine what is the intention of the parties as derived from the language

employed." *Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 171, 305 N.E.2d 907,

909 (1973).  "The words and phrases used by the parties must, as in all cases involving contract

interpretation, be given their plain meaning." *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.

2d 530, 534 (1996).  "It is common practice for the courts . . . to refer to the dictionary to

determine the plain and ordinary meaning of words to a contract." *Mazzola v. County of Suffolk*,

143 A.D.2d 734, 735, 533 N.Y.S.2d 297 (2d Dep't 1988).  In addition, "[e]ach word must be

---

[11]    The September Agreements contain choice of law clauses specifying that New York
law governs those agreements.  *See* Ex. A, September Guaranty at § 17 ("This Guaranty shall be
governed by the law of the state of New York."); Ex. B, September Security Agreement at 6
(providing that the agreement "shall be governed by and construed according to the internal laws
of the State of New York without reference to principles of conflicts of laws").  Under New York
law, the parties' choice of law pursuant to the relevant clauses in the September Agreements will
be enforced and New York law will be applied to resolve the substantive issues relating to the
September Agreements.  *See e.g., Chem. Bank v. Layne*, 423 F. Supp. 869, 871 (S.D.N.Y. 1976)
("The guaranty in suit provides that New York law governs the contract and the rights and
obligations of the parties.  Accordingly this court looks to New York law for resolution of the
issues."); *see also CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co., Inc.*, 935 F. Supp.
184, 203 (E.D.N.Y. 1996) (applying New York law and holding that the guaranty in question
contained "New York choice of law provisions, which courts consistently have enforced").

considered along with not only all the other words that surround it, but also the history and

education of the parties, the nature of the contract, the purposes of the parties, and all other

relevant circumstances." *In re Delta Air Lines, Inc.*, 608 F.3d 139, 146 (2d Cir. 2010); *In re

Dalow Indus., Inc.*, 333 B.R. 640, 642 (Bankr. E.D.N.Y. 2005) ("Interpretation of the plain

meaning of any language requires that the language be considered within the context it was

written."); Restatement (Second) of Contracts § 202 (1981) ("The meaning of words and other

symbols commonly depends on their context . . . ."). The contextual inquiry includes whether an

asserted meaning of the term at issue would result in a strained interpretation in light of the

"ordinary" scope of similar agreements. *Rosenthal v. Quadriga Art, Inc.*, 69 A.D. 3d 504, 507,

894 N.Y.S.2d 32 (1st Dep't 2010).

      50.    Courts have applied these general principles of contract interpretation to the word

"affiliate" in particular. *See Landover Corp. v. Bellevue Master, LLC*, C04-2407Z, 2006 WL

47662, at *6 (W.D. Wash. Jan. 6, 2006), *aff'd sub nom. Landover Corp. v. Bellevue Master LLC*,

252 F. App'x 800 (9th Cir. 2007) (holding that "words used by parties must be given their plain

and ordinary meaning" and applying the definition of "affiliate" from Black's Law Dictionary);

*Ferguson v. Gale Indus., Inc.*, No. CV01-151SMHW, 2005 WL 1593597, at *4 (D. Idaho July 1,

2005) ("Since the term 'affiliates' is not defined in the Agreement, the Court would look to the

[Black's Law Dictionary] to determine the plain and ordinary meaning of the term."); *see also

Travelers Indem. Co. v. U.S.*, 543 F.2d 71, 75 (9th Cir. 1976) (construing "affiliated" in the

context of a subrogation clause "in a manner that reinforces and strengthens the purpose intended

to be served by subrogation clauses" and holding that "[t]o do otherwise, in the absence of any

manifestation of intent requiring a different approach, would be to make the assumption of

irrationality an acceptable interpretive benchmark").

51.    Indeed, the Funds themselves have asserted that "[u]nder well-settled contract law principles, absent a definition in the contract, a court interpreting a term such as 'affiliate' will look to the plain and ordinary meaning of the term."[12]

**B.    The Plain and Ordinary Meaning of "Affiliates"**

**1.    The Dictionary Definition of "Affiliate"**

52.    Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling." *Black's Law Dictionary* (9th ed. 2009).[13]    Courts have often applied the definition of "affiliate" from Black's Law Dictionary where the relevant agreement does not define that term.    *See e.g.*, *Ferguson v. Gale Indus.*, 2005 WL 1593597, at *4 ("Since the term 'affiliates' is not defined in the Agreement, the Court would look to [Black's Law Dictionary] to determine the plain and ordinary meaning of the term."); *Chillmark Partners, LLC v. MTS, Inc.*, No. 02 C 5339, 2003

---

[12]    Ex. C, May Letter at 1.    Despite agreeing that the plain and ordinary meaning of the term "affiliate" should govern, the Funds' position letter goes on to cite to various specialized definitions used in various banking and securities laws.    *Id.*  at 3-4.    However, each such definition is directed to address the specific objectives of the relevant regulatory regime, and the relevant sections specifically provide that the definition therein is only applicable as the term is used in that particular statute or rule.    *See e.g.*, 17 C.F.R. § 240.10b-18 (defining "affiliate" in relation to federal securities law and providing that the definition applies as that term is "used in this section").    None of those definitions, however, is a reflection of the commonly understood meaning of "affiliate" as used in general corporate context, such as in the provisions of a parent guaranty.    The term "affiliate" as used in the September Agreements, of course, has nothing to do with the application of any regulatory scheme.    Consequently, and not surprisingly, "affiliate" was not defined in the September Agreements by reference to any statute or regulation.    Accordingly, New York contract interpretation principles, discussed above, apply and dictate that such regulatory definitions are inapplicable and the plain meaning of "affiliates" controls.

[13]    The United States Supreme Court has frequently looked to Black's Law Dictionary for the commonly understood meaning of terms of art within the business/legal community.    *See*, *e.g.*, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (looking to Black's to determine the "commonly understood" meaning of a statutory term); *Gollust v. Mendell*, 501 U.S. 115, 124 (1991) (same); *Sullivan v. Stroop*, 496 U.S. 478, 482-83 (1990) (the Court declined to rely on definitions provided by "authorities of general reference" and instead looked to Black's to discern the common meaning of a statutory "term of art").

WL 1964408, at *3 (N.D. Ill. April 25, 2003) (applying the Black's Law Dictionary definition of "affiliate" where it was not defined in the relevant agreement); *see also Kanoff v. Better Life Renting Corp.*, Case No. 03-2363, 2008 WL 442145, at *4 (D.N.J. Feb. 14, 2008) (applying the definition of "affiliate" in Black's Law Dictionary); *Landover Corp.*, 2006 WL 47662 at *6 ("'Affiliate' is defined as a 'corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation.'") (quoting Black's Law Dictionary); *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, No. 03-1455, 2003 WL 21801022, at *3-4 (N.D. Ill. Aug. 4, 2003) (applying the definition of "affiliate" in Black's Law Dictionary).

53.    Both the definition in Black's Law Dictionary, which explicitly sets forth "subsidiary, parent or sibling" as affiliates, and the word's Latin roots,[14] *filius* (meaning "son") and *affiliare* (meaning "to adopt as a son"), indicate that an affiliate in the corporate context is, at its very core, a member of the same corporate family.  Indeed, parent, subsidiary, and sister corporations all share a similar relationship -- they are all related by controlling *ownership*.  *See* Black's Law Dictionary (defining "subsidiary corporation" as "[a] corporation in which a parent corporation has a controlling *share*; "sister corporation" as "[o]ne of two or more corporations controlled by the same, or substantially the same, *owners*; and "parent corporation" as "[a] corporation that has a *controlling interest* in another corporation . . . usu. through *ownership* of more than one-half of the voting stock") (emphasis added).  Consolidated financial reporting is another hallmark of the parent-subsidiary type of affiliate relationship.  *Drucker Cornell v. Assicurazioni Generali S.p.A. Consol.*, 97 CIV. 2262 (MBM), 2000 WL 284222, at *4 (S.D.N.Y.

---

[14]    *See Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1031 (Fed. Cir. 2007) (examining the Latin roots of "affiliate").

Mar. 16, 2000) ("[C]onsolidated financial reporting is typical of the parent-subsidiary relationship . . . .").

54.    Furthermore, JPMorgan Bank's own Managing Director and Associate General Counsel admitted in a recent deposition that "the affiliates of JPMorgan Chase Bank . . . are the sister companies, the parent company, and the subsidiaries of JPMorgan Chase Bank, N.A."[15]

## 2.    The Context of "Affiliates" in the September Agreements

55.    As noted above, the plain meaning of a word or phrase in a contract is determined, in part, by its context, including the purpose of the agreement and the words surrounding the term at issue. *See Howe v. Bank of N.Y. Mellon,* 09 CIV. 10470 HB, 2011 WL 781940, at *9 (S.D.N.Y. Mar. 4, 2011) ("Contracts are interpreted to conform with the intent of the parties evidenced by the language contained therein.   Courts should construe contract language to conform with the purpose of the agreement.   The meaning of a word may be ascertained by consideration of similar words associated with it.") (internal quotations and citations omitted).

56.    To begin with, the words surrounding the term "affiliates" in the September Agreements support that the plain meaning of that term is part of a corporate family.   This is clear from the application of two well-accepted rules of construction – *noscitur a sociis* and *ejusdem generis*.   The first, *noscitur a sociis,* provides that "words grouped in a list should be given related meaning."   *In re Motors Liquidation Co.*, 447 B.R. 142, 148 (Bankr. S.D.N.Y.

---

[15]    *See* Deposition Transcript of Robert Macallister, July 15, 2011 at 89:9 – 90:6 ("Q: Okay.  And who are JPMorgan Chase Bank, N.A.'s affiliates, to your knowledge?  A:  It has a number of subsidiaries, and it also has some, I guess what you would refer to as sister companies.  Q:  Okay.  A:  And it has – and it's owned by a holding company . . . .  Q:  Okay. And so the affiliates of JPMorgan Chase Bank, your understanding is that those are the sister companies, the parent company, and the subsidiaries of JPMorgan Chase Bank, N.A.  A:  That's the way I would generally interpret the term 'affiliate,' yes.").

2011) (citing *Dole v. United Steelworkers of Am.*, 494 U.S. 26 (1990)). In other words, "[c]olloquially, 'a word is known by the company it keeps.'" *Id.* (internal citation omitted). The Supreme Court has invoked the doctrine of *noscitur a sociis* to "hold that words in a list, while meaning different things, should nevertheless be read to place limits on how broadly some of those words might be construed." *Id.* (citing *Dole*, 494 U.S. at 36).

57.     The second rule of construction, *ejusdem generis*, similarly provides that when there is a series of specific defining words following a more general term, the general term takes on the limitations implicit in the meanings of the more specific items in the descriptive list. *Regent Ins. Co. v. Storm King Contracting, Inc.,* 06 CIV. 2879(LBS), 2008 WL 563465, at *8 (S.D.N.Y. Feb. 27, 2008) *adhered to on reconsideration*, 06 CIV. 2879 (LBS), 2008 WL 1985763 (S.D.N.Y. May 7, 2008). In other words, "[t]he canon of *ejusdem generis* is employed to limit broad catch-all terms in a manner consistent with other listed terms that are more specific." *JPMorgan Chase Bank N.A. v. The Baupost Group, LLC (In re Enron Creditors Recovery Corp.)*, 380 B.R. 307, 323 (S.D.N.Y. 2008).

58.     Applying the doctrines of *noscitur a sociis* and *ejusdem generis* here, the term "affiliates" should be defined to include those entities that share the common attributes of the other enumerated terms in the list – namely, subsidiaries, successors and assigns. It is clear that the other terms in the list – subsidiary, successor and assign – are either part of the same corporate family or entities which become vested with the rights of such a corporation. *See Drucker*, 2000 WL 284222, at *4 (noting that "consolidated financial reporting is typical of the parent-subsidiary relationship"); *Black's Law Dictionary* 1569 (9th ed. 2009) (defining successor as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation"); *Meadows v. Amsted Indus., Inc.*, 305

24

A.D. 2d 1053, 1054, 760 N.Y.S.2d 604 (4th Dep't 2003) (discussing circumstances under which

a successor may be liable for its predecessor's obligations); *Black's Law Dictionary* 136 (9th ed.

2009) (defining "assign" as "[o]ne to whom property rights or powers are transferred by

another"); *Spivak v. Madison-54th Realty Co.*, 60 Misc. 2d 483, 487 (N.Y. Sup. Ct. 1969)

(discussing circumstances under which an assignee can be liable for the assignor's obligations).

Each of these terms connotes a close financial relationship, either through ownership or

succession to ownership, that bears no resemblance to the service or advisory relationship

between JPMorgan and the Funds.

59.    Indeed, one court has applied *noscitur a sociis* in particular to limit the term

"allied organizations," when contained in a list with the terms "parent" and "subsidiary," to

apply only to similarly related organizations (*e.g.*, related by ownership).    *S. Mut. Church Ins.*

*Co. v. S.C. Windstorm & Hail Underwriting Ass'n*, 306 S.C. 339, 343 (1991) ("In addition, since

the terms 'parent' and 'subsidiary' are terms which connote ownership, it can reasonably be

assumed that the term 'allied organizations' refers to organizations allied with an insurer through

ownership.").    Similarly, another court limited the definition of the term "affiliated and related

persons" in a list contained within a release provision of a contract, to require more than a

contractual relationship.    *See McNeely v. Spry Funeral Home of Athens, Inc.*, 724 So. 2d 534,

539 (Ala. Civ. App. 1998) (rejecting argument that contractual service provider was an

"affiliated or related person" and finding that the surrounding terms – "parents," "subsidiaries,"

"officers," "employees," "directors," "shareholders," "agents," "successors," and "assigns" –

each "connotes a closer connection" than the contractual relationship between the parties in

question).    Finally, in *Travelers Indemnity Co. v. United States*, the Ninth Circuit applied

*ejusdem generis* to hold that the terms "associated" and "affiliated" – contained in a list with

25

"parents" and "subsidiaries" (among other terms) – envisioned an "intimate business relationship in which significant aspects of financial and managerial control of the insured and the affiliate or associate are integrated."  543 F.2d at 76.

60.      As noted above, the plain meaning of the term "affiliates" in the September Agreements is also guided by the purpose of those agreements.  Thus, here, the Court should construe "affiliates" in the context of a parent guaranty and security agreement, the ordinary purpose of which is to protect the beneficiary from losses incurred by entities with which it shares an inextricable economic interrelatedness – such as parent, subsidiary, and sibling corporations.  This purpose would not be served by stretching the interpretation of "affiliates" to include the Funds, because, as noted above, the Funds are beneficially owned by third-party investors and are not consolidated on JPMorgan's financial statements.

61.      The nature of certain of the Fund Claims is further evidence that the September Agreements did not contemplate the Funds to be included in the definition of "affiliates."  For example, if JPMorgan is correct that the Fund Claims are secured by virtue of the September Agreements, Bond Claims of the Funds will be elevated over the claims of all other holders of such debt instruments – even in instances where the noteholders specifically agreed to contractually subordinate their claims to other LBHI debt.  The notion that the September Agreements contemplated such a radical transformation of rights is simply not plausible.

**C.      Rule of Construction Against Drafters**

62.      Furthermore, to the extent there is any ambiguity in the meaning of the term "affiliates" in the September Agreements, it should be construed against JPMorgan and the Funds because JPMorgan Bank – and not LBHI – drafted the September Agreements, and in particular added the word "affiliates" to the scope of those agreements.  *See* JPM-

LBHI00003430-44, Email from Jeffery Aronson to Andrew Yeung, dated September 9, 2008, attaching September Agreements.[16]  "It is a well-established rule of contract law that a contract must be construed most strongly against the party who prepared it."  *Mazzola*, 143 A.D.2d at 735; *Wiser v. Enervest Operating, L.L.C.*, 3:10-CV-794 TJM/DEP, 2011 WL 3586014, at *5 (N.D.N.Y. Mar. 22, 2011) ("[A]s a general matter, a contract will be construed against its drafter since the drafter is responsible for any ambiguity.").  Moreover, a "third party who is not a party to the contract is not usually entitled to a strict construction in his favor in determining whether the contract was made for his benefit."  *Travelers*, 543 F.2d at 74.

### III.    The Funds Are Not Affiliates of JPMorgan Bank

#### A.    The Funds Are Not Parents, Subsidiaries, Siblings or Otherwise Part of JPMorgan's Corporate Family

63.    Thus, under the plain meaning of affiliates in the context of the September Agreements, the Funds are not affiliates of JPMorgan Bank.  They are not parents, subsidiaries, siblings or any part of JPMorgan's corporate family.  That family is listed in its entirety in JPMorgan's 10K filing, which lists hundreds of subsidiaries of JPMorgan.[17]  Not one of the Funds appears in this list.

64.    Moreover, the Funds do not have the type of relationship that renders parents, subsidiaries, and siblings as corporate affiliates – namely controlling ownership and the economic interests that come with that ownership.  The profits and losses from the Funds do not run to any JPMorgan entity.  Rather, they are borne by third-party investors.  Indeed, the financial performance of the Funds is not included anywhere in JPMorgan's financial statements.

---

[16]  A copy of JPM-LBHI00003430-44 is attached hereto as Exhibit D.

[17]  *See* JPMorgan 2008 10K at Ex. 21.1

*See e.g.*, JPMorgan 2008 10K, Consolidated Financial Statements at 130-34 ("Assets held for clients in an agency or fiduciary capacity by the Firm [JPMorgan and its subsidiaries] are not assets of JPMorgan Chase and are not included in the Consolidated Balance Sheets.").  Rather, JPMorgan specifically provides in its 2008 10K that "[t]he Consolidated Financial Statements include the accounts of JPMorgan Chase and other entities *in which the Firm has a controlling financial interest*," (JPMorgan 2008 10K at 134 (emphasis added)), making it clear that JPMorgan does not have a controlling financial interest in any of the Funds.

65.    Moreover, JPMorgan's Executive Vice President and Chief Executive Officer for Treasury, Donald McCree, confirmed in recent testimony that "profits and losses" of the Funds are not included in the financial reporting conducted by Treasury for JPMorgan.[18]

### B.    The Fund Documents Indicate They Are Not Affiliates of JPMorgan Bank

66.    Many of the Fund documents themselves further support the position that the Funds are not affiliates of JPMorgan Bank.  For example, the investment advisory agreement between one of the Funds, JPMorgan Absolute Return Credit Master Fund Ltd., and J.P. Morgan Investment Management Inc. defines affiliate to specifically provide that the Fund is not an affiliate of the JPMorgan subsidiary that acts as adviser:

> **"Affiliate"** of any Person means any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person.  The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; ***provided that for purposes of this Agreement, the Fund [Absolute Return***

---

[18]    *See* Deposition Transcript of Donald McCree, October 5, 2011 at 16:24 – 17:5 ("Q: Do you know if any profit and losses for any fund that is advised by JPMorgan's asset management subsidiaries appears on any of the financial reporting that you were in charge of? A. Not to my understanding.").

28

> ***Credit Master Fund Ltd.] shall not be considered an Affiliate of
> the Adviser [J.P. Morgan Investment Management Inc.].***

*See* Investment Advisory Agreement, dated as of July 20, 2006 between JPMorgan Absolute

Return Credit Master Fund Ltd. and J.P. Morgan Investment Management Inc. (the "Absolute

Return Advisory Agreement") (emphasis added) at § 1.[19]

67.    The Absolute Return Advisory Agreement also provides that JPMorgan

Investment Management Inc., as adviser, is nothing more than an independent contractor with

respect to the Fund:

> *Independent Contractor.*  The Adviser shall for all purposes herein
> be deemed to be an independent contractor with respect to the
> Fund.  The Adviser shall not, by reason of its duties and functions
> hereunder, be deemed to be acting as a partner of, or to be engaged
> in a joint venture with, the Fund.

Ex. E, Absolute Return Advisory Agreement at § 4; *see also* Investment Advisory Agreement,

dated as of June 1, 2007 among JPMorgan Distressed Debt Fund, Ltd., JPMorgan Distressed

Debt Master Fund, Ltd. and J.P. Morgan Investment Management Inc. (the "Distressed Debt

Advisory Agreement") at § 3 (using identical language to provide that J.P. Morgan Investment

Management Inc. is merely an independent contractor of the funds).[20]

---

[19]    A copy of the Absolute Return Advisory Agreement is attached hereto as Exhibit E.

[20]    A copy of the Distressed Debt Fund, Ltd. Investment Advisory Agreement is attached
hereto as Exhibit F.  These agreements are merely examples reflecting the reality of JPMorgan's
relationship to the Funds.  Several of the investment advisory agreements between other Funds
contain similar or identical provisions providing that the relationship between JPMorgan and the
relevant Fund is merely contractual.  *See e.g.*, Management Agreement, dated as of June 1, 2008
among JPMorgan Fixed Income Opportunity Fund, Ltd., JPMorgan Fixed Income Opportunity
Master Fund, L.P. and J.P. Morgan Investment Management Inc., attached hereto as Exhibit G,
at § 11 (providing that J.P. Morgan Investment Management Inc. is an independent contractor of
the Fund and the Portfolio); Investment Advisory Agreement, dated as of August 10, 2006
between JPMorgan Trust I and J.P. Morgan Investment Management Inc., attached hereto as
Exhibit H, at § 9 (same); Investment Advisory Agreement, dated as of February 4, 2005 between
JPMorgan Institutional Trust and J.P. Morgan Investment Management Inc., attached hereto as
(continued...)

**C.      Certain of the Funds Fail Even the Funds' Own Definition of "Affiliate"**

68.      Although Objectors submit that merely controlling or being controlled by someone is insufficient to qualify as an affiliate under the September Agreements, it should be noted that for a number of the Funds, no JPMorgan entity has the sort of control necessary to render those Funds affiliates of JPMorgan Bank even under the Funds' own asserted theory.

69.      For many of these Funds, the investment advisory agreements explicitly provide that those agreements do not give JPMorgan Bank or any of its affiliates control over the Funds, let alone ownership control.  *See e.g.*, Ex. J, Investment Advisory Agreement, dated as of August 15, 2006 between JPMorgan Insurance Trust and J.P. Morgan Investment Management Inc. (providing that JPMorgan Investment Management Inc. may only act "subject to the supervision of the Trust's Board of Trustees" and that "[t]he investment policies and all other actions of each Fund are and shall at all times be subject to the control and direction of the Trust's Board of Trustees").

70.      As another example, certain investment advisory agreements, as well as Fund formation documents, provide that the investment advisory services of the JPMorgan entity are subject to the general managerial control of a board of directors that is required to be comprised of a majority of independent directors.  *See e.g.*, Ex. E, Absolute Return Advisory Agreement at § 2 (providing that the "Adviser acknowledges that the activities of the Adviser hereunder are subject to the ongoing oversight and review of the Board and that the Board is responsible for setting general policies with respect to the Fund," and that "[e]xcept as expressly authorized . . . the Adviser shall not be authorized to manage the affairs of, act in the name of or bind the Fund

---

Exhibit I, at § 11 (same); Investment Advisory Agreement, dated as of August 15, 2006 between JPMorgan Insurance Trust and J.P. Morgan Investment Management Inc., attached hereto as Exhibit J, at § 1, page 2 (same).

in any manner whatsoever"); *see also* Amended and Restated Memorandum and Articles of Association of JPMorgan Absolute Return Credit Master Fund Ltd., (adopted by Special resolution dated July 30, 2007) at § 125 (providing that subject to certain limitations, "the business of the Company shall be managed by the Directors who may exercise all the powers of the Company").[21]  The formation documents also provide that "a majority of the Directors shall at all times be 'Unaffiliated Directors,'" which is defined to mean "independent from the Company as well as its Adviser (J.P. Morgan Investment Management Inc.)." *Id.* at § 123.

71.    Finally, certain of the Funds' SEC filings explicitly provide that those Funds are not under common control with anyone, let alone JPMorgan Bank.  *See e.g.*, JPMorgan Trust II, Statement of Additional Information, Registration Statement Under The Investment Company Act of 1940, Amendment No. 96, filed August 28, 2008 (the "Trust II SAI"),[22] at Item 24 ("As of the effective date of this Registration Statement there are no persons controlled or under common control with the Registrant.").[23]

72.    Thus, the Funds' own documents do not support, and indeed contradict, their argument that they are affiliates of JPMorgan Bank.

---

[21]    A copy of the Memorandum and Articles is attached hereto as Exhibit K.

[22]    A copy of the Trust II SAI is available at:
http://www.sec.gov/Archives/edgar/data/763852/000114544308002494/d23666.htm.

[23]    *See also* JPMorgan Insurance Trust, Statement of Additional Information, Registration Statement Under The Investment Company Act of 1940, Amendment No. 32, filed November 26, 2008 (the "Insurance Trust SAI"), at Item 24 ("As of the effective date of this Registration Statement, there are no persons controlled by or under common control with the Registrant.").  A copy of the Insurance Trust SAI is available at:
http://www.sec.gov/Archives/edgar/data/909221/000114544308003241/d24028.htm.

**D.      JPMorgan Bank Does Not Consider the Funds to be Its Affiliates**

73.      Furthermore, JPMorgan Bank's own description of the Funds confirms that JPMorgan does not consider them to be affiliates of JPMorgan Bank.

74.      Specifically, JPMorgan, in a description of itself and relevant entities in a pleading in this bankruptcy case, defined "JPM" as follows: "JPMorgan Chase Bank, N.A. ('JPMorgan'), its respective affiliates *and* all investment funds . . . managed by JPMorgan and its affiliates (JPMorgan, such affiliates *and* the JPM Funds, collectively, 'JPM' and together with the Debtors, the 'Parties')." *Stipulation Agreement and Order Clarifying Debtors' Twenty-Fourth Omnibus Objection to Claims (Duplicative of Indenture Trustee Claims) With Respect to Funds Managed by JPMorgan* [Docket No. 11267] at 1 (emphasis added).  Notably, JPMorgan does not define the Funds as affiliates or subsidiaries, but instead refers to them in its pleading separately as funds managed by JPMorgan and its affiliates.

75.      Additionally, in an email to colleagues regarding which losses should be covered by the September Agreements, the Chief Financial Officer of JPMorgan's Asset Management business recognized the distinction between JPMorgan's assets and the Funds' assets, stating that "[e]ven though these are technically client assets not JPM assets I am including them."[24]

**IV.      The Types of Relationships Described by the Funds Do Not Give Rise to a Corporate Affiliate Relationship**

76.      In justifying their claim to coverage under the September Agreements, the Funds have never claimed they are part of the JPMorgan corporate family, or that any JPMorgan subsidiary exercises ownership control over them.  Instead, the Funds have pointed to two

---

[24]   *See* JPM-LBHI00428191-92, Email from David H.C. Brigstocke, dated September 18, 2008, attached hereto as Exhibit L (discussing assets of funds managed by Highbridge, one of the investment advisors to the Funds).

different types of relationships they claim give them affiliate status: (1) common law trusts where JPMorgan Bank serves as trustee; and (2) advised funds where a JPMorgan subsidiary acts as investment advisor to those funds through a contractual investment advisory arrangement. It is worth noting that neither criterion applies to all the Funds, suggesting in and of itself that the Funds lack any consistent test for what constitutes an affiliate. Nevertheless, neither of these relationships could ever give rise to a corporate affiliate relationship.

### A.    A Trustee of a Common-Law Trust Is Not Its Affiliate

77.    Regarding the first category, "Funds organized as common law trusts and for which JPMCB acts as trustee," these Funds cannot be affiliates of JPMorgan Bank for the independent reason that common law trusts are neither "corporations" nor the type of corporate entity that could be an "affiliate."

78.    As described above, an affiliate is first and foremost a "corporation." *See Black's Law Dictionary* (9th ed. 2009) (defining "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling"); *Chillmark Partners*, 2003 WL 1964408 at *4 ("As noted above, however, affiliates are *corporations* that are related to other corporations. The trust and individual Defendants are not corporations.") (emphasis in original). Moreover, Black's Law Dictionary defines "corporation" as "[a]n entity (usu. a business) having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely; a group or succession of persons established in accordance with legal rules into a legal or juristic person that has a legal personality distinct from the natural persons who make it up, exists indefinitely apart from them, and has the legal powers that its constitution gives it." *Black's Law Dictionary* (9th ed. 2009). Although this definition includes corporate forms other than stock corporations –

such as limited liability companies and limited partnerships – it does not include trusts operated for the benefit of third parties outside of the corporate family.

79.    In contrast, Black's Law Dictionary defines a trust, in pertinent part, as "[a] fiduciary relationship regarding property and charging the person with title to the property with equitable duties to deal with it for another's benefit . . . ."  *Black's Law Dictionary* (9th ed. 2009); *see also Restatement (Third) of Trusts* § 2 (defining a "trust" in relevant part as "a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee").  Specifically here, the Trust-Organized Funds are common trust funds, which are "device[s], long known to the banking industry, by which a bank commingles the assets of individual trusts and invests those assets collectively."  *Inv. Co. Inst. v. Conover*, 790 F.2d 925, 928 (D.C. Cir. 1986).  In other words, the Trust Organized Funds are in essence accounts used to combine funds already held and managed by JPMorgan Bank as a fiduciary for client accounts.

80.    Furthermore, the Trust-Organized Funds, as with most common law trusts, are structured such that the trustee has the right to participate in the trusts' management, but has *no right* to share in the profits or earnings of the trusts.  In fact, not only do the profits and losses of these Trust-Organized Funds run to third-party investors, JPMorgan Bank is actually prohibited from having any interest in these trusts other than in its fiduciary capacity.[25]  *See* 12 C.F.R. § 9.18(b)(8)(i) ("A bank administering a collective investment fund may not have an interest in that fund other than in its fiduciary capacity."); *see also* Declaration of Trust of Commingled

---

[25] Although nominal ownership of the assets of each Trust-Organized Fund is vested in JPMorgan Bank as trustee, the investors in each Trust-Organized Fund hold proportionate undivided beneficial interests in the assets.

Pension Trust Fund (Core Bond) of JPMorgan Chase Bank, N.A., at § 2.4 ("The Bank [JPMorgan Bank] shall not have any interest in the Commingled Fund other than in its capacity as trustee or other fiduciary of a participating trust . . . .").[26]  JPMorgan Bank's only financial connection to these Funds is through fees for its services and expense reimbursements, (*Id.* at Art. VIII), a relationship that is in direct contrast to the close financial relationship, through ownership or common ownership, of subsidiaries, parents, and siblings.

81.    Thus, the Funds that are common law trusts cannot be affiliates of JPMorgan Bank because they are not the type of corporate entities that qualify as affiliates.

**B.    A Service Provider Is Not an Affiliate**

82.    Regarding the second category, the Funds' assertion that an investment advisory agreement can create an affiliate relationship is also wrong.  A contractual service relationship simply cannot and does not give rise to an "affiliate" relationship under the plain meaning of that term.  *See e.g.*, *McNeely v. Spry Funeral Home of Athens, Inc.*, 724 So. 2d 534, 539 (Ala. Civ. App. 1998) (holding that contractual service provider was not an "affiliate" in part based on "persuasive authority from other states hold[ing] that the term 'affiliate' does not include parties with whom the principal releasee has an arm's-length relationship") (citing cases).

83.    For example, in *Travelers Indemnity Co. v. United States*, the Ninth Circuit analyzed a waiver provision of an insurance contract and held that Bonneville, a United States government agency, was not "affiliated or associated" with Pacific, a private power company, despite entering into a joint venture and service contracts between them.  543 F.2d at 76.  After examining the context of those terms in the document, the court held that "associated" and "affiliated" envisioned an "intimate business relationship in which significant aspects of

---

[26]    A copy of the Declaration of Trust is attached hereto as <u>Exhibit M</u>.

financial and managerial control of the insured and the affiliate or associate are integrated." *Id.* at 76.  While there was some common ownership and control in that case, the court noted that "Pacific and Bonneville each retained their individual corporate structures and are not financially interrelated," other than the service arrangements for which Bonneville was "reimbursed under the terms of a contract." *Id.*  The court also found it significant that "[t]itle in the damaged property remained vested in Pacific" and that those losses never flowed to Bonneville such that it should have been protected by the waiver provision.  *Id.* (holding that the waiver provisions in question were not intended to "insulate[ ] the United States, a recovery from whom can hardly be described as taking money out of another pocket of Pacific").

84.    The reasoning in *Travelers* is persuasive here, where, as noted above, JPMorgan entities that provide investment advisory services to the Funds are compensated for those services pursuant to service contracts.  That contractual relationship is not the sort of "intimate business relationship" marked by "significant aspects of financial and managerial control" that the Ninth Circuit held as the touchstone of an affiliated or associated relationship.  Moreover, as in *Travelers*, a loss by the Funds is not a loss borne by JPMorgan Bank.

85.    Indeed, if an advisory agreement were enough to render one an affiliate, then most if not all customers of JPMorgan could be considered affiliates.  As a bank, JPMorgan provides financial advice and account services to third parties all the time.  For example, one JPMorgan subsidiary, JPMorgan Investment Management, Inc., provided discretionary asset management services to thousands of accounts – including individuals and corporations, among others – totaling $674,876,302,252 of discretionary assets under management as of December 31, 2010.  *See* JPMorgan Investment Management, Inc., Form ADV Part 2A, Firm Brochure,

dated June 3, 2011, at 3 (the "JPMIM Brochure").[27]  Clearly not all of these clients are affiliates of JPMorgan Bank.

86.    Moreover, the JPMorgan entity providing the investment advisory services reserves the right to subcontract those services, in whole or in part, to other investment advisors,[28] and has in fact subcontracted those services in certain instances.  *See* Ex. N, JPMIM Brochure at 19 ("JPMIM uses the advisory services of unaffiliated investment advisers for some of the JPMorgan Funds . . . .").  Corporate affiliation cannot be so fickle that it can both be created by a services contract and then transferred by a subcontract.

## Reservation of Rights

76.    Nothing in this Objection or in any objection notice will constitute a waiver of the right to assert any claims, counterclaims, rights of offset or recoupment or any other claims of the Debtors against a claimant, or to seek estimation of any claim or object to claims on any basis not previously set forth in this objection.  Unless the Court allows a claim or specifically orders otherwise, the Objectors retain the right to object on any grounds to the claim (or to any other claims or causes of action filed by a claimant or that have been scheduled by the Debtors) at a later date.  In such event, the respective claimant will receive a separate notice of any such objections.

77.    The Objectors expressly reserve the right to amend, modify, or supplement this objection and to file additional objections to the Claims or any other claims (filed or not) which

---

[27]    A copy of the JPMIM Brochure is attached hereto as Exhibit N.

[28]    *See* Trust II SAI at Part II, page 70 ("Under the JPMIM [JPMorgan Investment Management, Inc.] Advisory Agreements, JPMIM provides investment advisory services to certain Funds, which include managing the purchase, retention and disposition of such Funds' investments. JPMIM may delegate its responsibilities to a sub-adviser. Any subadvisory agreements must be approved by the applicable Trust's Board of Trustees and the applicable Fund's shareholders, as required by the 1940 Act.").

may be asserted against the Debtors.  Should one or more of the grounds for objection stated herein be dismissed, the Objectors reserve their rights to object on other stated grounds or on any other grounds that the Objectors discover during the pendency of these cases.  Nothing herein shall constitute an admission of liability to the Debtors with respect to any proof of claim.

## **Notice**

78.    No trustee has been appointed in these chapter 11 cases.  The Objectors have served notice of this Two Hundred Twenty-Ninth Omnibus Objection to Claims on (i) the U.S. Trustee; (ii) the attorney for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) JPMorgan Chase Bank, N.A.; (vii) each Claimant listed on Schedule 1, Schedule 2 and Schedule 3 of the proposed order to the Two Hundred Twenty-Ninth Omnibus Objection to Claims; and (viii) all other parties entitled to notice in accordance with the procedures set forth in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* entered on June 17, 2010 [Docket No. 9635].  The Objectors submit that no other or further notice need be provided.

79.    No previous request for the relief sought herein has been made by the Objectors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

38

**WHEREFORE**, the Objectors respectfully request that the Court enter an Order,

substantially in the form annexed hereto: (a) granting the relief requested herein and (b) granting

the Objectors such other relief as is just and proper under the circumstances.

Dated:  October 26, 2011
      New York, New York

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
By:    /s/ John B. Quinn
John B. Quinn
Erica Taggart
Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Susheel Kirpalani
Andrew J. Rossman
James Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000
*Counsel for the Official Committee of
Unsecured Creditors of Lehman Brothers
Holdings Inc.*

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

By:    /s/ Joseph D. Pizzurro
Joseph D. Pizzurro
L.P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney
Peter J. Behmke
Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
*Counsel for Debtor Lehman Brothers
Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS HOLDINGS INC., <u>et al</u>.

           Debtors.

Chapter 11
Case No. 08-13555(JMP)

### ORDER GRANTING LEHMAN BROTHERS HOLDINGS INC.'S AND CREDITORS COMMITTEE'S TWO HUNDRED TWENTY-NINTH OMNIBUS OBJECTION TO JPMORGAN'S ASSET MANAGEMENT FUND CLAIMS (NO LIABILITY, MISCLASSIFIED AND DUPLICATIVE CLAIMS)

Upon the Two Hundred Twenty-Ninth Omnibus Objection to Claims, dated October 26, 2011 (the "<u>Two Hundred Twenty-Ninth Omnibus Objection to Claims</u>"),[1] of the Objectors, pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 6664] (the "<u>Procedures Order</u>"), seeking disallowance and expungement of the No Liability Claims on the grounds that they do not assert claims against the Debtors, as more fully described in the Two Hundred Twenty-Ninth Omnibus Objection to Claims, reclassification of the Misclassified Claims as general unsecured non-priority claims and disallowance and expungement of the Duplicative Claims; and due and proper notice of the Two Hundred Twenty-Ninth Omnibus

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Two Hundred Twenty-Ninth Omnibus Objection to Claims.

Objection to Claims having been provided to (i) the U.S. trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the claimants listed on Schedule 1, Schedule 2 and Schedule 3 annexed to the Two Hundred Twenty-Ninth Omnibus Objection to Claims; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]; and the Court having found and determined that the relief sought in the Two Hundred Twenty-Ninth Omnibus Objection to Claims is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Two Hundred Twenty-Ninth Omnibus Objection to Claims establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Two Hundred Twenty-Ninth Omnibus Objection to Claims is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Schedule 1 annexed hereto are disallowed and expunged in their entirety or in relevant part as set forth on Schedule 1; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Schedule 2 annexed hereto are recharacterized as general unsecured non-priority claims or in relevant part as set forth on Schedule 2; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Schedule 3 annexed hereto are disallowed and expunged in their entirety or in relevant part as set forth on Schedule 3; and it is further

2

ORDERED that, this Order has no res judicata, estoppel, or other effect on the validity

allowance, or disallowance of, and all rights to object and defend on any basis are expressly

reserved with respect to, any claim listed on <u>Schedule 1</u>, <u>Schedule 2</u> or <u>Schedule 3</u> annexed to

the Two Hundred Twenty-Ninth Omnibus Objection to Claims that is not listed on <u>Schedule 1</u>,

<u>Schedule 2</u> or <u>Schedule 3</u> annexed hereto; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: _____, 2011
      New York, New York

                                      _____
                                        UNITED STATES BANKRUPTCY JUDGE

# SCHEDULE 1

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 1 | COMMINGLED PENSION TRUST FUND (LONG CREDIT) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23017 | No Liability Claim |
| 2 | COMMINGLED PENSION TRUST FUND (MARKET PLUS BOND) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23024 | No Liability Claim |
| 3 | COMMINGLED PENSION TRUST FUND (EXTENDED DURATION) OF JPMORGAN CHASE BANK NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23027 | No Liability Claim |
| 4 | COMMINGLED PENSION TRUST FUND (CORE BOND) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22886 | No Liability Claim |
| 5 | COMMINGLED PENSION TRUST FUND (INTERMEDIATE PUBLIC BOND) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22862 | No Liability Claim |
| 6 | COMMINGLED PENSION TRUST FUND (SUBADVISED FIXED INCOME-W) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23007 | No Liability Claim |
| 7 | CONTRARIAN VALUE, L.P. MAPLES CORPORATE SERVICES LIMITED PO BOX 309 UGLAND HOUSE GRAND CAYMAN, KY1-1104 CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 04/01/2010 | 66461 | No Liability Claim |

\*  To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 8 | HIGHBRIDGE INTERNATIONAL, LLC MAPLES CORPORATE SERVICES LIMITED PO BOX 309 UGLAND HOUSE GRAND CAYMAN, KY1-1104 CAYMAN ISLANDS | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 04/01/2010 | 66459 | No Liability Claim |
| 9 | J. P. MORGAN TOKYO FUND- JPM JAPAN GTA FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23002 | No Liability Claim |
| 10 | JF E-FRONTIER JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15374 | No Liability Claim |
| 11 | JF JAPAN DISCOVERY FUND JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15375 | No Liability Claim |
| 12 | JF JAPAN OPEN JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15373 | No Liability Claim |
| 13 | JF JAPAN SMALL STOCK OPEN JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15371 | No Liability Claim |

*  To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 14 | JF JAPAN TACTICAL INVESTMENT MOTHER FUND JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15372 | No Liability Claim |
| 15 | JF JAPAN TECHNOLOGY FUND C/O JF ASSET MANAGEMENT LIMITED 21ST FLOOR, CHATER HOUSE 8 CONNAUGHT ROAD, CENTRAL HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22974 | No Liability Claim |
| 16 | JF PENION FUND - JAPANESE BOND PORTFOLIO JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15380 | No Liability Claim |
| 17 | JF PENSION MOTHER FUND - JAPANESE EQUITY PORTFOLIO JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15379 | No Liability Claim |
| 18 | JF SAR JAPAN FUND C/O JF ASSET MANAGEMENT LIMITED 21ST FLOOR CHATER HOUSE 8 CONNAUGHT ROAD CENTRAL HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22973 | No Liability Claim |
| 19 | JF SMALLER CO. EQUITY OPEN JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15378 | No Liability Claim |

* To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 20 | JF THE JAPAN JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15377 | No Liability Claim |
| 21 | JP MORGAN FUNDS- GLOBAL AGGREGATE BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22995 | No Liability Claim |
| 22 | JP MORGAN FUNDS- US AGGREGATE BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22996 | No Liability Claim |
| 23 | JPM JAPAN ACTIVE BOND MOTHER FUND JPMORGAN ASSET MANAGEMENT (JAPAN) LTD. C/O LEGAL DEPARMENT -- KOJI KAWAI TOKYO BUILDING 7-3, MARUNOUCHI 2-CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/17/2009 | 15376 | No Liability Claim |
| 24 | JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22887 | No Liability Claim |
| 25 | JPMORGAN CORE BOND TRUST, A SERIES OF JPMORGAN INSTITUTIONAL TRUST 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22880 | No Liability Claim |
| 26 | JPMORGAN CORE BOND TRUST, A SERIES OF JPMORGAN INSTITUTIONAL TRUST 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22881 | No Liability Claim |

* To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 27 | JPMORGAN CORE PLUS BOND FUND, A SERIES OF JPMORGAN TRUST II<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22874 | No Liability Claim |
| 28 | JPMORGAN DISTRESSED DEBT MASTER FUND, LTD.<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22884 | No Liability Claim |
| 29 | JPMORGAN DIVERSIFIED FUND, A SERIES OF JPMORGAN TRUST I<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22876 | No Liability Claim |
| 30 | JPMORGAN FIXED INCOME OPPORTUNITY INSTITUTIONAL FUND, LTD.<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22865 | No Liability Claim |
| 31 | JPMORGAN FLEMING JAPANESE SMALLER COMPANIES INVESTMENT TRUST PLC<br>C/O JF ASSET MANAGEMENT LIMITED<br>21ST FLOOR, CHATER HOUSE<br>8 CONNAUGHT ROAD CENTRAL<br>HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22972 | No Liability Claim |
| 32 | JPMORGAN FUND ICVC - JPM INSTITUTIONAL JAPAN FUND<br>C/O JF ASSET MANAGEMENT LIMITED<br>21ST FLOOR, CHATER HOUSE<br>8 CONNAUGHT ROAD, CENTRAL<br>HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22976 | No Liability Claim |
| 33 | JPMORGAN FUNDS - JF JAPAN SMALL CAP FUND<br>C/O JF ASSET MANAGEMENT LIMITED<br>21ST FLOOR, CHATER HOUSE<br>8 CONNAUGHT ROAD, CENTRAL<br>HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22975 | No Liability Claim |
| 34 | JPMORGAN FUNDS- JF JAPAN EQUITY FUND<br>C/O JF ASSET MANAGEMENT LIMITED<br>21ST FLOOR, CHATER HOUSE<br>8 CONNAUGHT ROAD CENTRAL<br>HONG KONG | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22971 | No Liability Claim |

\*  To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 35 | JPMORGAN INSURANCE TRUST CORE BOND PORTFOLIO, A SERIES OF JPMORGAN INSURANCE TRUST 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22877 | No Liability Claim |
| 36 | JPMORGAN INTERMEDIATE BOND TRUST, A SERIES OF JPMORGAN INSTITUTIONAL TRUST 245 PARK AVE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23011 | No Liability Claim |
| 37 | JPMORGAN INVESTMENT FUNDS - GLOBAL BOND FUND (EUR) FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22997 | No Liability Claim |
| 38 | JPMORGAN INVESTMENT FUNDS - GLOBAL BOND FUND (USD) FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22998 | No Liability Claim |
| 39 | JPMORGAN INVESTMENT FUNDS - GLOBAL ENHANCED BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22999 | No Liability Claim |
| 40 | JPMORGAN INVESTMENT FUNDS - INCOME OPPORTUNITY FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23004 | No Liability Claim |
| 41 | JPMORGAN INVESTMENT FUNDS - US BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23001 | No Liability Claim |

\* To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

### OMNIBUS OBJECTION 229: SCHEDULE 1 – NO LIABILITY CLAIMS

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM NO. * | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|
| 42 | JPMORGAN LIMITED DURATION BOND FUND (FOMERLY KNOWN AS JPMORGAN ULTRA SHORT DURATION BOND FUND), A SERIES OF JPMORGAN TRUST II 245 PARK AVE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23012 | No Liability Claim |
| 43 | JPMORGAN MORTGAGE-BACKED SECURITIES FUND TRUST 245 PARK AVE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23014 | No Liability Claim |
| 44 | JPMORGAN SHORT DURATION BOND FUND, A SERIES OF JPMORGAN TRUST II 245 PARK AVE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 23013 | No Liability Claim |
| 45 | JPMORGAN TOTAL RETURN FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 08-13555 (JMP) | Lehman Brothers Holdings Inc. | 09/21/2009 | 22889 | No Liability Claim |

* To the extent a claim appears on both this schedule and Schedule 2 (Misclassified Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a No Liability Claim.

# SCHEDULE 2

\* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 1 | COMMINGLED PENSION TRUST FUND (CORPORATE HIGH YIELD) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 23015 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 2 | COMMINGLED PENSION TRUST FUND (LONG CREDIT) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 23017 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 3 | COMMINGLED PENSION TRUST FUND (LONG DURATION INVESTMENT GRADE) OF JPMORGAN CHASE BANK NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 23019 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 4 | COMMINGLED PENSION TRUST FUND (LONG DURATION PLUS) OF JPMORGAN CHASE BANK NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 23021 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 5 | COMMINGLED PENSION TRUST FUND (ENHANCED CASH) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 23026 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 6 | COMMINGLED PENSION TRUST FUND (EMERGING MARKETS FIXED INCOME) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22878 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 7 | COMMINGLED PENSION TRUST FUND (EMERGING MARKETS OPP. FIXED INCOME) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22872 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

.                                                                                                                     1

IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)

## OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 8 | COMMINGLED PENSION TRUST FUND (INTERMEDIATE BOND)<br>OF JPMORGAN CHASE BANK, N.A.<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 22858 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 9 | COMMINGLED PENSION TRUST FUND (INTERMEDIATE CREDIT)<br>OF JPMORGAN CHASE BANK, N.A.<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 22861 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 10 | COMMINGLED PENSION TRUST FUND (INTERMEDIATE PUBLIC BOND)<br>OF JPMORGAN CHASE BANK, N.A.<br>245 PARK AVENUE<br>NEW YORK, NY 10167-0001 | 22862 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 11 | CONTRARIAN VALUE, L.P.<br>MAPLES CORPORATE SERVICES LIMITED<br>PO BOX 309<br>UGLAND HOUSE<br>GRAND CAYMAN, KY1-1104<br>CAYMAN ISLANDS | 66461 | 04/01/2010 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 12 | HB QUANTITATIVE EQUITY STRATEGIES LIMITED<br>HARMONIC FUNDS SERVICES, CAYMAN CORPORATE CENTRE 4TH FL<br>27 HOSPITAL ROAD<br>GEORGE TOWN<br>GRAND CAYMAN, KY1-1102<br>CAYMAN ISLANDS | 28634 | 09/22/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 13 | HIGHBRIDGE ASIA OPPORTUNITIES MASTER FUND, LP<br>MAPLES CORPORATE SERVICES LIMITED<br>PO BOX 309<br>UGLAND HOUSE<br>GRAND CAYMAN, KY1-1104<br>CAYMAN ISLANDS | 66458 | 04/01/2010 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS**

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 14 | HIGHBRIDGE CONVERTIBLE ARBITRAGE MASTER FUND LP<br>MAPLES CORPORATE SERVICES LIMITED<br>PO BOX 309, UGLAND HOUSE<br>GRAND CAYMAN, KY1-1104<br>CAYMAN ISLANDS | 28635 | 09/22/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 15 | HIGHBRIDGE INTERNATIONAL, LLC<br>MAPLES CORPORATE SERVICES LIMITED<br>PO BOX 309<br>UGLAND HOUSE<br>GRAND CAYMAN, KY1-1104<br>CAYMAN ISLANDS | 66459 | 04/01/2010 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 16 | HIGHBRIDGE STATISTICALLY ENHANCED EQUITY MASTER FUND - EUROPE LP<br>MAPLES CORPORATE SERVICES LIMITED<br>PO BOX 309, UGLAND HOUSE<br>GRAND CAYMAN, KY1-1104<br>CAYMAN ISLANDS | 28638 | 09/22/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 17 | JP MORGAN FIXED INCOME OPPORTUNITY MASTER FUND, L.P.<br>245 PARK AVE<br>NEW YORK, NY 10167-0001 | 23009 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 18 | JP MORGAN FUNDS - EUROPE AGGREGATE PLUS BOND FUND<br>JPMORGAN ASSET MANAGEMENT (UK) LIMITED<br>C/O INVESTMENT OPERATIONS, GROUND FLOOR,<br>ATTN: PAUL LOSS<br>FINSBURY DIALS<br>20 FINSBURY STREET<br>LONDON, EC2Y 9AQ<br>UNITED KINGDOM | 18756 | 09/18/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS**

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 19 | JP MORGAN FUNDS - GLOBAL CONVERTIBLES FUND (EUR) JPMORGAN ASSET MANAGEMENT (UK) LIMITED C/O INVESTMENT OPERATIONS, GROUND FLOOR, ATTN: PAUL LOSS FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 18753 | 09/18/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 20 | JP MORGAN INVESTMENT FUNDS - EUROPE SHORT DURATION FUND JPMORGAN ASSET MANAGEMENT (UK) LIMITED C/O INVESTMENT OPERATIONS, GROUND FLOOR, ATTN: PAUL LOSS FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 18754 | 09/18/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 21 | JP MORGAN INVESTMENT FUNDS - GLOBAL CAPITAL PRESERVATION FUND (EUR) JPMORGAN ASSET MANAGEMENT (UK) LIMITED C/O INVESTMENT OPERATIONS, GROUND FLOOR, ATTN: PAUL LOSS FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 18755 | 09/18/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 22 | JPM EMERGING SOVEREIGN OPEN MOTHER FUND TOKYO BUILDING 7- 3, MARUNOUCHI 2- CHOME TOKYO, 100- 6432 JAPAN | 23003 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

\* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

4

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS**

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 23 | JPM EMERGING SOVEREIGN OPEN MOTHER FUND TOKYO BUILDING 7- 3, MARUNOUCHI 2- CHOME CHIYODA-KU TOKYO, 100-6432 JAPAN | 59801 | 10/30/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 24 | JPMORGAN ABSOLUTE RETURN CREDIT MASTER FUND LTD. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22887 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 25 | JPMORGAN CORE PLUS BOND FUND, A SERIES OF JPMORGAN TRUST II 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22874 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 26 | JPMORGAN DISTRESSED DEBT MASTER FUND, LTD. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22884 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 27 | JPMORGAN DIVERSIFIED FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22876 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 28 | JPMORGAN EMERGING MARKETS DEBT FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22879 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 29 | JPMORGAN FIXED INCOME OPPORTUNITY INSTITUTIONAL FUND, LTD. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22865 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 30 | JPMORGAN INSURANCE TRUST CORE BOND PORTFOLIO, A SERIES OF JPMORGAN INSURANCE TRUST 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22877 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS**

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 31 | JPMORGAN INVESTMENT FUNDS - GLOBAL BOND FUND (EUR) FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 22997 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 32 | JPMORGAN INVESTMENT FUNDS - GLOBAL ENHANCED BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 22999 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 33 | JPMORGAN INVESTMENT FUNDS - HIGHBRIDGE STATISTICAL MARKET NEUTRAL FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 23000 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 34 | JPMORGAN INVESTMENT FUNDS - HIGHBRIDGE STATISTICAL MARKET NEUTRAL FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 59802 | 10/30/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 35 | JPMORGAN REAL RETURN FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22868 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 36 | JPMORGAN SHORT TERM BOND FUND II, A SERIES OF J.P. MORGAN MUTUAL FUND GROUP 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22871 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

6

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 2 – MISCLASSIFIED CLAIMS**

| | NAME | CLAIM NO. * | FILED DATE | DEBTOR | ASSERTED CLASS | MODIFIED CLASS |
|---|---|---|---|---|---|---|
| 37 | JPMORGAN TOTAL RETURN FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 22889 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |
| 38 | JPMPORGAN FUNDS- EMERGING MARKETS DEBT FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 23008 | 09/21/2009 | Lehman Brothers Holdings Inc. | Secured | Unsecured |

\* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 3 (Duplicative Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being reclassified as being a Misclassified Claim

# SCHEDULE 3

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 3 – DUPLICATIVE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | SURVIVING CLAIMS | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM NO. * | NAME | DATE FILED | CASE NUMBER | CLAIM # |
| 1 | COMMINGLED PENSION TRUST FUND (LONG CREDIT) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23017 | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 52408R44 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21799 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 524908WH9 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21801 |
| 2 | COMMINGLED PENSION TRUST FUND (PUBLIC BOND) OF JPMORGAN CHASE, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23022 | U.S. BANK NATIONAL ASSOCIATION CORPORATE TRUST SERVICES ATTN: PAMELA WIEDER, VP EP-MN-WS1D, 60 LIVINGSTON AVENUE ST. PAUL, MN 55107-2292 | 09/22/2009 | 08-13555 (JMP) | 30871 |
| 3 | COMMINGLED PENSION TRUST FUND (MARKET PLUS BOND) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23024 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |

\*  To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 2 (Misclassified Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a Duplicative Claim.

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 3 – DUPLICATIVE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | SURVIVING CLAIMS | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM NO. * | NAME | DATE FILED | CASE NUMBER | CLAIM # |
| 4 | COMMINGLED PENSION TRUST FUND (ENHANCED CASH) OF JPMORGAN CHASE BANK, NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23026 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| 5 | COMMINGLED PENSION TRUST FUND (EXTENDED DURATION) OF JPMORGAN CHASE BANK NA 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23027 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 524908R36 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21800 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 52408R44 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21799 |

*  To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 2 (Misclassified Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a Duplicative Claim.

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 3 – DUPLICATIVE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | SURVIVING CLAIMS | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM NO. * | NAME | DATE FILED | CASE NUMBER | CLAIM # |
| 6 | COMMINGLED PENSION TRUST FUND (CORE BOND) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 22886 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |
| 7 | COMMINGLED PENSION TRUST FUND (INTERMEDIATE CREDIT) OF JPMORGAN CHASE BANK, N.A. 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 22861 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | U.S. BANK NATIONAL ASSOCIATION CORPORATE TRUST SERVICES ATTN: PAMELA WIEDER, VP EP-MN-WS1D, 60 LIVINGSTON AVENUE ST. PAUL, MN 55107-2292 | 09/22/2009 | 08-13555 (JMP) | 30871 |
| 8 | JP MORGAN FUNDS- GLOBAL AGGREGATE BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 09/21/2009 | 08-13555 (JMP) | 22995 | U.S. BANK NATIONAL ASSOCIATION CORPORATE TRUST SERVICES ATTN: PAMELA WIEDER, VP EP-MN-WS1D, 60 LIVINGSTON AVENUE ST. PAUL, MN 55107-2292 | 09/22/2009 | 08-13555 (JMP) | 30871 |

\*  To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 2 (Misclassified Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a Duplicative Claim.

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 3 – DUPLICATIVE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | SURVIVING CLAIMS | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM NO. * | NAME | DATE FILED | CASE NUMBER | CLAIM # |
| 9 | JP MORGAN FUNDS- US AGGREGATE BOND FUND FINSBURY DIALS 20 FINSBURY STREET LONDON, EC2Y 9AQ UNITED KINGDOM | 09/21/2009 | 08-13555 (JMP) | 22996 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |
| 10 | JPMORGAN CORE BOND TRUST, A SERIES OF JPMORGAN INSTITUTIONAL TRUST 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 22881 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |

*  To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 2 (Misclassified Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a Duplicative Claim.

4

**IN RE: LEHMAN BROTHERS HOLDINGS INC.  CASE NO: 08-13555 (JMP)**

**OMNIBUS OBJECTION 229: SCHEDULE 3 – DUPLICATIVE CLAIMS**

| | CLAIMS TO BE DISALLOWED | | | | SURVIVING CLAIMS | | | |
|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER | CLAIM NO. * | NAME | DATE FILED | CASE NUMBER | CLAIM # |
| 11 | JPMORGAN INTERMEDIATE BOND TRUST, A SERIES OF JPMORGAN INSTITUTIONAL TRUST 245 PARK AVE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 23011 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | BANK OF NEW YORK MELLON, THE, AS INDENTURE TRUSTEE FOR CUSIP 5249087M6 ATTN: JOHN GUILIANO 101 BARCLAY STREET, 8 WEST NEW YORK, NY 10286 | 09/21/2009 | 08-13555 (JMP) | 21802 |
| 12 | JPMORGAN TOTAL RETURN FUND, A SERIES OF JPMORGAN TRUST I 245 PARK AVENUE NEW YORK, NY 10167-0001 | 09/21/2009 | 08-13555 (JMP) | 22889 | WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE ATTN: JULIE J. BECKER 50 SOUTH SIXTH STREET, SUITE 1290, DROP CODE: 1700/MINNESOTA MINNEAPOLIS, MN 55402-1544 | 09/02/2009 | 08-13555 (JMP) | 10082 |
| | | | | | U.S. BANK NATIONAL ASSOCIATION CORPORATE TRUST SERVICES ATTN: PAMELA WIEDER, VP EP-MN-WS1D, 60 LIVINGSTON AVENUE ST. PAUL, MN 55107-2292 | 09/22/2009 | 08-13555 (JMP) | 30871 |

\* To the extent a claim appears on both this schedule and Schedule 1 (No Liability Claims) and/or Schedule 2 (Misclassified Claims), at least a portion of the claim (the amount to be determined at a later date) is subject to being disallowed and expunged as being a Duplicative Claim.