# EXHIBIT D

| | |
|---|---|
| **From:** | Aronson, Jeffrey - Communication of Counsel (Exchange) <Jeffrey.Aronson@jpmorgan.com> |
| **Sent:** | Tuesday, September 9, 2008 8:50 PM |
| **To:** | Yeung, Andrew <andrew.yeung@lehman.com> |
| **Cc:** | Inaba, Gail <inaba_gail@jpmorgan.com>; Appel, Nikki G <Nikki.G.Appel@chase.com> |
| **Bcc:** | Inaba, Gail <inaba_gail@jpmorgan.com>; Appel, Nikki G <Nikki.G.Appel@chase.com> |
| **Subject:** | Security Agreement and Guaranty |
| **Attach:** | DVComparison_LEGAL3CMP-#377227-v3-Guaranty-Lehman Guaranty 09-09-08 MARKED.wdf;DVComparison_LEGAL3CMP-#377241-v4-Security_Agreement-Lehman Security Agreement 09-09-08 MARKED.wdf |

Andrew: As discussed, I've attached markups to show the proposed Guaranty and Security Agreement as a comparison to the recently executed Guaranty and Security Agreement.

Thanks,
Jeff

~~GUARANTY~~    GUARANTY

**GUARANTY** dated as of ~~August 26,~~ September 9, 2008 made by the undersigned (the "Guarantor") in favor of JPMORGAN CHASE BANK, N.A. and ~~any of its affiliates, subsidiaries,~~ successors ~~or assigns (hereinafter, the "Bank")~~ and assigns (hereinafter, collectively and individually as the context may require, the "Bank"). This Guaranty shall be in addition to and does not replace that certain Guaranty dated August 26, 2008, made by the undersigned in favor of JPMorgan Chase Bank, N.A.

**PRELIMINARY STATEMENT**: ~~Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers OTC Derivatives Inc., Lehman Brothers Commercial Paper Inc. and Lehman Brothers Japan Inc.~~ Each of the direct or indirect subsidiaries of the Guarantor (collectively, with their respective successors, the "Borrowers"), ~~each a wholly-owned direct or indirect subsidiary of the Guarantor, desire~~ desires to transact business and/or trade with and/or enter into derivative transactions with and/or to obtain credit, clearing advances, clearing loans or other financial accommodation from the Bank ~~or~~ and to continue such business, trading, derivative activity and/or such extensions of credit, clearing advances, clearing loans or other financial accommodation ~~or such business in each case under or in connection with the Clearance Agreement (as defined below) or transactions pursuant thereto~~, and the Bank has requested that it ~~receives~~ receive the following guaranty of the undersigned before it will consider extending such credit. The Guarantor derives, and expects to continue to derive, substantial direct and indirect benefits from the business of the Borrowers and the credit, trading, derivative transactions, clearing advances, clearing loans and other financial accommodations provided by the Bank to the Borrowers.

**THEREFORE**, for good and valuable consideration and in order to induce the Bank from time to time, in its discretion, to extend or continue to extend credit, clearing advances, clearing loans or other financial accommodations to the Borrowers ~~under the Clearance Agreement (as hereinafter defined)~~ and/or to transact business, trade or enter into derivative transactions with the Borrowers (all of the foregoing extensions of credit, advances, loans ~~or~~, accommodations ~~under the Clearance Agreement~~, business, derivative transactions and trading being the "Facilities" and any writing evidencing, supporting or securing a Facility, consisting of (i) ~~the Clearance Agreement;~~ any agreement between a Borrower and the Bank, including without limitation any ISDA Master Agreement (ii) this Guaranty, and (iii) the Security Agreement as of even date hereof (the "Security Agreement") and entered into by Guarantor for the benefit of the Bank, as each such writing may be amended, modified or supplemented from time to time being a "Facility Document"), the Guarantor agrees as follows:

Section 1. **Guaranty of Payment**. The Guarantor unconditionally and irrevocably guarantees to the Bank the punctual payment and performance of all obligations and liabilities ~~(including without limitation the "Obligations" as defined in the Clearance Agreement)~~ of the Borrowers to the Bank of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the Bank by assignment or otherwise, whether matured or unmatured and whether absolute or contingent, when the same are due and/or due and payable, whether on demand, at stated maturity, by acceleration or otherwise, and whether for principal, interest, fees, expenses, indemnification or otherwise (all of the foregoing sums being the

~~#377227v3~~

"Liabilities"), pursuant to the Clearance Agreement, dated as of June 15, 2000, to which one or more of the Borrowers and the Bank are parties, as it may be further amended from time to time (the "Clearance Agreement") and subject to the last sentence of this Section 1. The Liabilities include, without limitation, (a) interest accruing after the commencement of a case or proceeding under bankruptcy, insolvency or similar laws of any jurisdiction at the rate or rates provided in the Facility Documents, regardless of whether such interest is allowed or allowable as a claim in such case or proceeding and (b) the obligations of the Borrowers under section 16 of the Clearance Agreement. This Guaranty is a guaranty of payment and not of collection only. The Bank shall not be required to exhaust any right or remedy or take any action against the Borrowers or any other person or entity or any collateral. All moneys available to the Bank for application in payment or reduction of the Liabilities may be applied by the Bank to the payment or reduction of such of the Liabilities as the Bank may elect in its sole discretion and in such manner and in such amounts and at such time or times as it may see fit. The Guarantor agrees that, as between the Guarantor and the Bank, the Liabilities may be declared to be due and payable for the purposes of this Guaranty notwithstanding any stay, injunction or other prohibition which may prevent, delay or vitiate any declaration as regards the Borrowers and that in the event of a declaration or attempted declaration, the Liabilities shall immediately become due and payable by the Guarantor for the purposes of this Guaranty. The Guarantor's maximum liability under this Guaranty shall adjust each day and for each such day shall be equal to the dollar amount of cash and securities (based on the market value of such securities as determined by the Bank in its reasonable discretion) (i) held on such day in the accounts of the Guarantor subject to the Clearance Agreement and the Security Agreement and (ii) be THREE BILLION DOLLARS ($3,000,000,000) or such greater amount that the Bank has notified the Guarantor to be delivered it must deliver to the Bank on such day in support of this Guaranty. Notwithstanding the foregoing, the Guarantor may upon three days notice to the Bank withdraw such cash and securities, provided that the Guarantor shall not withdraw any cash and securities if the Bank has exercised any of its rights under this Guaranty or the Security Agreement prior to the end of the three day notice period.

          Section 2. **Guaranty Absolute**. The Guarantor guarantees that the Liabilities shall be paid strictly in accordance with the terms of the Facilities and any Facility Documents. The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of: (a) any change in the time, manner or place of payment of, or in any other term of, all or any of the Facilities, the Facility Documents or Liabilities, or any other amendment or waiver of or any consent to departure from any of the terms of any Facility, Facility Document or Liability including, without limitation, any increase or decrease in the rate of interest thereon; (b) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or any exchange, release or non-perfection of any collateral, for all or any of the Facilities, Facility Documents or Liabilities; (c) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Facility, Facility Document or Liability; (d) without being limited by the foregoing, any lack of validity or enforceability of any Facility, Facility Document or Liability; and (e) any other setoff, defense, or counterclaim whatsoever (in any case, whether based on contract, tort or any other theory) or circumstance whatsoever with respect to the Liabilities, the Facilities or the Facility Documents contemplated thereby which might constitute a legal or equitable defense available to, or discharge of, the Borrowers or a

#377227v3 2

CONFIDENTIAL    JPM-LBHI00003432

guarantor; and the Guarantor irrevocably waives the right to assert such defenses, set-offs or counterclaims in any litigation or other proceeding relating to the Liabilities, the Facilities or the Facility Documents contemplated thereby.

Section 3.  **Guaranty Irrevocable**.  This Guaranty is a continuing guaranty of the payment of all Liabilities (absolute or contingent) now or hereafter existing and shall remain in full force and effect until the ~~later~~latest of (hereinafter the "Termination Date") (i) payment in full of all Liabilities and other amounts payable under this Guaranty (ii) the ~~expiration or~~ termination of ~~the Clearance Agreement and~~ all of the Borrowers' accounts at the Bank ~~in connection with the Clearance Agreement~~; and (iii) the fulfillment of all obligations and commitments of the Borrowers under the Facilities and any Facility Documents.

Section 4.  **Reinstatement**.  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Liabilities arising or incurred prior to the Termination Date is rescinded or must otherwise be returned by the Bank on the insolvency, bankruptcy or reorganization of the Borrowers or otherwise (including, without limitation, on the grounds of preference or fraudulent transfer), all as though the payment had not been made.

Section 5.  **Subrogation**.  The Guarantor shall not exercise any rights which it may acquire by way of subrogation, by any payment made under this Guaranty or otherwise, until the Termination Date.  If any amount is paid to the Guarantor on account of subrogation rights under this Guaranty at any time prior to the Termination Date, the amount shall be held in trust for the benefit of the Bank and shall be promptly paid to the Bank to be credited and applied to the Liabilities, whether matured or unmatured or absolute or contingent, in accordance with the terms of the Facilities.  If the Guarantor makes payment to the Bank of all or any part of the Liabilities and the Termination Date shall have occurred, the Bank shall, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Liabilities resulting from the payment.

Section 6.  **Subordination**.  Without limiting the Bank's rights under any other agreement, any liabilities owed by the Borrowers to the Guarantor in connection with any extension of credit or financial accommodation by the Guarantor to or for the account of the Borrowers, including but not limited to interest accruing at the agreed contract rate after the commencement of a bankruptcy or similar case or proceeding (regardless of whether such interest is allowed or allowable as a claim in such case or proceeding), are hereby subordinated to the Liabilities, and such liabilities of the Borrowers to the Guarantor, if the Bank so requests, shall be collected, enforced and received by the Guarantor as trustee for the Bank and shall be paid over to the Bank on account of the Liabilities but without reducing or affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 7.  **Payments Generally**.  All payments by the Guarantor shall be made in the manner, at the place and in the currency (the "Payment Currency") required by the Facility Documents; provided, however, that if the Payment Currency is other than U.S. dollars

#~~377227v~~3 3

CONFIDENTIAL                                                                                                                                                JPM-LBHI00003433

the Guarantor may, at its option (or, if for any reason whatsoever the Guarantor is unable to effect payments in the manner required by the Facility Documents, the Guarantor shall be obligated to) pay to the Bank at its office located at 277 Park Avenue, New York, New York 10017 the equivalent amount in U.S. dollars computed at the selling rate of the Bank, most recently in effect on or prior to the date the Liability becomes due or if such rate is unavailable, at a selling rate chosen by the Bank, for cable transfers of the Payment Currency to the place where the Liability is payable. In any case in which the Guarantor makes or is obligated to make payment in U.S. dollars, the Guarantor shall hold the Bank harmless from any loss incurred by the Bank arising from any change in the value of U.S. dollars in relation to the Payment Currency between the date the Liability becomes due and the date the Bank is actually able, following the conversion of the U.S. dollars paid by the Guarantor into the Payment Currency and remittance of such Payment Currency to the place where such Liability is payable, to apply such Payment Currency to such Liability.

Section 8. [Intentionally Omitted.]

Section 9. **Representations and Warranties**. The Guarantor represents and warrants that: (a) the execution, delivery and performance by the Guarantor under this Guaranty: (i) has been duly authorized by all necessary corporate action; (ii) does not, conflict with or violate any material agreement or instrument or any constitutive document, law, regulation or order applicable to the Guarantor; (iii) does not require the consent or approval of any person or entity, including but not limited to any governmental authority, or any filing or registration of any kind; and (iv) is the legal, valid and binding obligation of the Guarantor enforceable against the Guarantor in accordance with its terms except to the extent that enforcement may be limited by applicable bankruptcy, insolvency and other similar laws affecting creditor's rights generally; and (b) in executing and delivering this Guaranty, the Guarantor has (i) without reliance on the Bank or any information received from the Bank and based upon such documents and information it deems appropriate, made an independent investigation of the transactions contemplated hereby and the Borrowers, the Borrowers' business, assets, operations, prospects and condition, financial or otherwise, and any circumstances which may bear upon such transactions, the Borrowers or the obligations and risks undertaken herein with respect to the Liabilities; (ii) adequate means to obtain from the Borrowers on a continuing basis information concerning the Borrowers; (iii) has full and complete access to the Facility Documents and any other documents executed in connection with the Facility Documents; and (iv) not relied and will not rely upon any representations or warranties of the Bank not embodied herein or any acts heretofore or hereafter taken by the Bank (including but not limited to any review by the Bank of the affairs of the Borrowers). The Guarantor hereby further represents and warrants that the Guarantor owns (directly or indirectly) a substantial amount of the stock or other ownership interests of the Borrowers and is financially interested in its affairs.

Section 10. **Remedies Generally**. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law.

Section 11. **Setoff**. The Guarantor agrees that, in addition to (and without limitation of) any right of setoff, banker's lien or counterclaim the Bank may otherwise have, the Bank shall be entitled, at its option, to offset balances (general or special, time or demand,

#377227v34

CONFIDENTIAL                                                                                                      JPM-LBHI00003434

provisional or final) held by it for the account of the Guarantor at any of the offices of the Bank, J.P. Morgan Securities Inc., or any other affiliate, in U.S. dollars or in any other currency, against any amount payable by the Guarantor under this Guaranty which is not paid when due (regardless of whether such balances are then due to the Guarantor), in which case it shall promptly notify the Guarantor thereof; <u>provided</u> that the Bank's failure to give such notice shall not affect the validity thereof.

Section 12.  **Formalities**.  The Guarantor waives presentment, notice of dishonor, protest, notice of acceptance of this Guaranty, notice of creation, renewal, extension or accrual of any Liability and notice of any other kind and any other formality with respect to any of the Liabilities or this Guaranty.  The Guarantor also waives the right to require the Bank to proceed first against the Borrowers upon the Liabilities before proceeding against the Guarantor hereunder.

Section 13.  **Amendments and Waivers**.  No amendment or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall be effective unless it is in writing and signed by the Bank, and then the waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No failure on the part of the Bank to exercise, and no delay in exercising, any right or remedy under this Guaranty shall operate as a waiver or preclude any other or further exercise thereof or the exercise of any other right or remedy.

Section 14.  **Expenses**.  The Guarantor shall reimburse the Bank on demand for all costs, expenses and charges (including without limitation the reasonable and documented fees and charges of external legal counsel for the Bank) incurred by the Bank in connection with the preparation, performance or enforcement of this Guaranty.  The obligations of the Guarantor under this Section shall survive the termination of this Guaranty.

Section 15.  **Assignment**.  This Guaranty shall be binding on, and shall inure to the benefit of the Guarantor, the Bank and their respective successors and assigns; <u>provided</u> that the Guarantor may not assign or transfer its rights or obligations under this Guaranty.

Section 16.  **Captions**.  The headings and captions in this Guaranty are for convenience only and shall not affect the interpretation or construction of this Guaranty.

Section 17.  **Governing Law, Etc.**   THIS GUARANTY SHALL BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK.  THE GUARANTOR CONSENTS TO THE NONEXCLUSIVE JURISDICTION AND VENUE OF THE STATE OR FEDERAL COURTS LOCATED IN THE CITY OF NEW YORK.  SERVICE OF PROCESS BY THE BANK IN CONNECTION WITH ANY SUCH DISPUTE SHALL BE BINDING ON THE GUARANTOR IF SENT TO THE GUARANTOR BY REGISTERED MAIL AT THE ADDRESS SPECIFIED BELOW OR AS OTHERWISE SPECIFIED BY THE GUARANTOR FROM TIME TO TIME.  THE GUARANTOR WAIVES ANY RIGHT THE GUARANTOR MAY HAVE TO JURY TRIAL IN ANY ACTION RELATED TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND FURTHER WAIVES ANY RIGHT TO INTERPOSE ANY

#377227v3 5

COUNTERCLAIM RELATED TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY IN ANY SUCH ACTION. TO THE EXTENT THAT THE GUARANTOR HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER FROM SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OF A JUDGMENT, EXECUTION OR OTHERWISE), THE GUARANTOR HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS GUARANTY.

Section 18.  **Integration; Effectiveness**.  This Guaranty and the Facility Documents sets forth the entire understanding of the Guarantor and the Bank relating to the guarantee of the Liabilities and constitutes the entire contract between the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.; provided, however, that notwithstanding anything to the contrary, this Guaranty shall not effect or impair any other Guaranty made by the Guarantor in support of any of the obligations or liabilities of the Borrowers with respect to or in connection with extensions of credit or facilities other than those related hereto.  This Guaranty shall become effective when it shall have been executed and delivered by the Guarantor to the Bank.  Delivery of an executed signature page of this Guaranty by telecopy shall be effective as delivery of a manually executed signature page of this Guaranty.

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed and delivered by its authorized officer as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By:

By:

_____   Name:

_____

_____   Title:

Address:

#377227v3 6

Document comparison done by DeltaView on Tuesday, September 09, 2008 8:27:18 PM

| Input: | |
|---|---|
| Document 1 | file://C:/Documents and Settings/lavvenir/Desktop/LEGAL3CMP-#377227-v3-Guaranty.DOC |
| Document 2 | file://C:/Documents and Settings/lavvenir/Desktop/Lehman Guaranty 09-09-08.DOC |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 25 |
| Deletions | 30 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 57 |

# SECURITY AGREEMENT

In consideration of ~~one or more loans, letters of credit or other financial accommodation made, issued or extended by~~ JPMORGAN CHASE BANK, N.A. ~~and~~or any of its <u>affiliates, subsidiaries,</u> successors or assigns ~~party to the Clearance Agreement referred to below~~ (hereinafter, ~~the "Bank")~~<u>collectively or individually as the context may require, the "Bank") extending credit to and/or transacting business, trading or engaging in derivative transactions with the undersigned and/or its subsidiaries and/or affiliates</u>, the undersigned hereby agree(s) that the Bank shall have the rights, remedies and benefits hereinafter set forth.

~~The "Accounts" means (i) the securities account of the Guarantor at the Bank known as LCE or any subaccount or replacement accounts thereto (the "Securities Account"), (ii) DDA# 066-141-605 (the "Cash Account") and (iii) any other account at the Bank to which Guarantor transfers (A) cash from the Cash Account, (B) any interest, dividends, cash, instruments and other property from time to time received, receivable (including without limitation sales proceeds) or otherwise distributed in respect of or in exchange for any or all of the cash or securities in the Securities Account or the Cash Account or (C) any cash or securities from the Securities Account or the Cash Account during such time as the Guarantor or an Other Obligor has an outstanding obligation or liability to the Bank under the Guaranty or the Clearance Agreement.~~
The "Accounts" means <u>all accounts of the Guarantor at the Bank or any shares in any money market mutual fund issued or managed by any affiliate of the Bank.</u>

The "<u>Guaranty</u>" means the Guaranty of even date herewith made by the undersigned in favor of the Bank.

The "<u>Other Obligors</u>" mean ~~Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers OTC Derivatives Inc., Lehman Brothers Commercial Paper Inc. and Lehman Brothers Japan Inc.~~<u>means each of the direct or indirect subsidiaries of the Guarantor</u> and their respective successors.

~~The "Clearance Agreement" means the Clearance Agreement dated as of June 15, 2000 to which one or more of the Other Obligors and the Bank are parties (as amended by (i) the Amendment to Clearance Agreement dated as of May, 30, 2008 and (ii) the Amendment to Clearance Agreement dated as of even date herewith and as it may be further amended from time to time).~~

The term "<u>Liabilities</u>" shall mean (a) all "Liabilities" as defined in the Guaranty, (b) all obligations of the undersigned under this Security Agreement and (c) without duplication of the foregoing, all costs, expenses and charges (including without limitation fees and charges of external legal counsel for the Bank and costs allocated by its internal legal department) incurred by the Bank in connection with the preparation, performance or enforcement of the Guaranty and this Security Agreement.

The term "<u>Security</u>" means (i) the Accounts, together with any security entitlements relating thereto and any and all financial assets, investment property, funds and/or other assets from time to time held in or credited to the Accounts or otherwise carried in the Accounts (or to be received for credit or in the process of delivery to the Account), (ii) any interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all

of the then existing Security and (iii) all proceeds of any and all of the foregoing Security.

As security for the payment of all the Liabilities, the undersigned hereby grant(s) to the Bank a security interest in, and a general lien upon and/or right of set-off of, the Security. Further, for the avoidance of doubt and not in limitation of the rights of the Bank under Sections 9-104(a)(1), 9-106(a) and 8-106(e) of the Uniform Commercial Code as adopted by the State of New York (the "Code"), the undersigned and the Bank (acting as a bank with respect to any Accounts consisting of deposit accounts and as a securities intermediary with respect to any Accounts consisting of securities accounts), acknowledge and agree with respect thereto, that the Bank, as the secured party hereunder, may issue instructions to direct disposition of any and all of the funds in the deposit accounts (and acting as the bank will comply with such instructions) and may issue entitlement orders with respect to any and all securities accounts (and acting as the securities intermediary will comply with such entitlement orders), in either case, without the consent of the undersigned. Terms used herein and defined in Articles 1, 8 and/or 9 of the Code shall have the meanings set forth therein. The undersigned and the Bank agree that the jurisdiction of the Bank (including, without limitation, in its capacities as a bank, a securities intermediary and a commodity intermediary) for purposes of the Code is the State of New York.

The undersigned hereby represents and warrants to the Bank as follows: (a) it is duly organized and validly existing under the laws of the jurisdiction of its incorporation or organization and has all requisite power and authority to execute and deliver this agreement; (b) the execution, delivery and performance of this agreement has been duly authorized by all necessary corporate action of the undersigned and this agreement constitutes the legal, valid and binding obligation of the undersigned, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability (whether enforcement is sought in equity or at law); (c) the execution, delivery and performance of this agreement ~~does~~ do not and will not conflict with the provisions of its governing instruments and will not violate any provisions of applicable law or regulation or any order of any court or regulatory body and will not result in the breach of, or constitute a default, or require any consent, under any material agreement, instrument or document to which the undersigned is a party or by which it or any of its property may be bound or affected; (d) it is the sole owner of the Security; (e) the Security is and will be free and clear of any lien, charge, security interest, claim, encumbrance or other adverse interest whatsoever, except for that created by this agreement, or the Guaranty ~~or the Clearance Agreement~~ and other liens in favor of the Bank arising under applicable laws, and (f) it has not agreed to resell any of the Security pursuant to a repurchase agreement or similar arrangement.

The right is expressly granted to the Bank, in each case upon the occurrence and during the continuation of a Default (as defined below) or to preserve the Security or its value, to transfer to or register in the name of ~~itself~~ the Bank or its nominee any of the Security; to exchange any of the Security for any other property upon any reorganization, recapitalization or other readjustment and in connection therewith to deposit any of the Security with any committee or depositary upon such terms as it may determine; to notify any account debtor or obligor on an instrument to make payment to the Bank; and to exercise or cause its nominee to exercise all or any powers with respect to the Security with the same force and effect as an absolute owner thereof and to file one or more financing statements under the Uniform Commercial Code naming the undersigned as debtor and the Bank as secured party and indicating therein the types or describing the items of Security herein specified; all without notice (except such notice as may be required by applicable law and cannot be waived) and without liability except to account for property actually received by it. Without limiting the generality of the foregoing, payments, distributions and/or dividends, in securities, property or cash, including

2

CONFIDENTIAL                                                                                                                                    JPM-LBHI00003439

without limitation dividends representing stock or liquidating dividends or a distribution or return of capital upon or in respect of the Security or any part thereof or resulting from any split-up, revision or reclassification of the Security or any part thereof or received in exchange for the Security or any part thereof as a result of a merger, consolidation or otherwise, shall be paid directly to and retained by the Bank and held by it until applied as herein provided, as additional collateral security pledged under and subject to the terms hereof.  Without the prior written consent of the Bank the undersigned will not file or authorize or permit to be filed in any jurisdiction any such financing or like statement covering the Security in which the Bank is not named as the sole secured party.

The Bank upon the occurrence and during the continuation of a Default or to preserve the Security or its value may, whether any of the Liabilities may be due, in its name or in the name of the undersigned or otherwise, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement deemed desirable with respect to, any of the Security, but shall be under no obligation so to do, or the Bank may upon the occurrence and during the continuation of a Default or to preserve the Security or its value extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, or release, any of the Security, without thereby incurring responsibility to, or discharging or otherwise affecting any liability of, the undersigned.  Notwithstanding anything contained herein to the contrary, the Bank shall not be required to take any steps necessary to preserve any rights against prior parties to any of the Security.  The Bank may upon the occurrence and during the continuation of a Default or to preserve the Security or its value use or operate any of the Security for the purpose of preserving the Security or its value in the manner and to the extent the Bank deems appropriate, but the Bank shall be under no obligation to do so.

~~Except as otherwise provided herein, at the end of a business day, if the undersigned has determined that no Obligations (as defined in the Clearance Agreement) remain outstanding, the undersigned may transfer to an account (the "Overnight Account") any and all Security held in or credited to or otherwise carried in the Accounts.  Any determination of the undersigned or the Other Obligors that no Obligations remain outstanding shall not be binding upon the Bank.~~

The Bank shall have in addition to all other rights and remedies available to it under law or otherwise, the rights and remedies with respect to the Security of a secured party under the Uniform Commercial Code (whether or not the Code is in effect in the jurisdiction where the rights and remedies are asserted).  In addition, with respect to any security or interest issued by an open-end management or investment company registered as such under the Investment Company Act of 1940 in which the Bank has a security interest hereunder, the Bank shall have upon the occurrence and during the continuation of a Default the right to redeem such securities or interests.  Further, with respect to the Security, or any part thereof, upon the occurrence and during the continuation of a Default, the Bank may sell or cause to be sold in the Borough of Manhattan, New York City, or elsewhere, in one or more sales or parcels, at such price as the Bank may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Security, at any broker's board or at public or private sale, in any reasonable manner permissible under the Uniform Commercial Code (except that, to the extent permissible thereunder, the undersigned hereby waives the requirements of said Code), and the Bank or anyone else may be the purchaser of any or all of the Security so sold and thereafter hold the same absolutely, free from any claim or right of whatsoever kind, including any equity of redemption, of the undersigned, any such demand, notice or right and equity being hereby expressly waived and released.  In this regard, the undersigned recognizes that due to certain prohibitions contained in the Securities Act of 1933, as amended, or applicable state securities

3

laws, the Bank may consider it advisable to resort to one or more private sales to a restricted group of purchasers who will agree to acquire such of the Security consisting of securities for their own account for investment and not to engage in a distribution or resale thereof, and that private sales so made may be at prices and on other terms less favorable to the seller than if such Security were sold at public sale. The undersigned agrees that private sales made under the foregoing circumstances shall be deemed to have been made in a commercially reasonable manner. The undersigned acknowledges that the Security is of a kind that is customarily sold on a recognized market and is the subject of widely distributed standard price quotations. The undersigned will pay to the Bank all expenses (including reasonable and documented attorneys' fees and legal expenses incurred by the Bank) of, or incidental to, the enforcement of any of the provisions hereof or of any of the Liabilities, or any actual or attempted sale, or any exchange, enforcement, collection, compromise or settlement of any of the Security or receipt of the proceeds thereof, and for the care of the Security and defending or asserting the rights and claims of the Bank in respect thereof, by litigation or otherwise, including expense of insurance; and all such expenses shall be Liabilities within the terms of this agreement. The Bank, at any time, at its option, may apply the net cash receipts from the Security to the payment of principal and/or interest on any of the Liabilities, whether or not then due, making proper rebate of interest or discount. Notwithstanding that the Bank, whether in its own behalf and/or in behalf of another or others, may continue to hold Security and regardless of the value thereof, the undersigned shall be and remain liable for the payment in full of any balance of the Liabilities and expenses at any time unpaid. THE RIGHTS OF THE BANK SET FORTH HEREIN ARE WITHOUT LIMITATION OF, AND IN ADDITION TO, ANY OTHER RIGHT OF THE BANK UNDER ANY OTHER DOCUMENT EVIDENCING OR EXECUTED IN CONNECTION WITH THE LIABILITIES.

If at any time any sum payable upon any of the Liabilities shall not be paid when due (which, for sums payable by the Guarantor in respect of the Liabilities as defined under the Guaranty, are due on demand); or if the undersigned or any of the Other Obligors shall default in the payment or performance of the Guaranty, the Clearance Agreement, any of its agreements herein or in any instrument or document delivered pursuant hereto, or in connection herewith; or if a decree or order shall be entered for relief by a court having jurisdiction of the undersigned or any of the Other Obligors in an involuntary bankruptcy case under the federal bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state bankruptcy, insolvency, or other similar law, or appointing a receiver, liquidator, assignee, custodian, trustee or sequestrator of the undersigned or any of the Other Obligors or for any substantial part of its property, or ordering the reorganization, dissolution, winding-up of or liquidation of its affairs, and the continuation of any such decree or order shall be unstayed and in effect, or any case or other proceeding seeking any such decree or order shall continue undismissed, for a period of 60 consecutive days; or if the undersigned or any of the Other Obligors shall, or (if a corporation) shall take any corporate action to, commence a voluntary case under the federal bankruptcy laws, or now or hereafter constituted, or seek to take advantage of any other applicable federal or state bankruptcy, insolvency, or similar law, or apply for or consent to the appointment of or taking of possession by a receiver, liquidator, assignee, trustee, custodian or sequestrator of the undersigned or any of the Other Obligors or for any substantial part of its property, or the making by the undersigned or any of the Other Obligors of any assignment for the benefit of creditors; or the undersigned or any of the Other Obligors shall admit in writing its inability, or be generally unable, to pay its debts as they become due; or if the undersigned or shall suspend the transaction of his, its or their usual business, or if any governmental authority (including, without limitation, the Securities Investor Protection Corporation or any successor) or any court at the instance thereof shall, or shall appoint a receiver or trustee to, take possession of any substantial part of the property of, or assume control over the affairs or operations of, or a receiver or trustee shall be appointed for,

4

CONFIDENTIAL                                JPM-LBHI00003441

or with respect to any substantial part of the property of, or a writ or order of attachment or garnishment shall be issued or made against any substantial part of the property of, the undersigned or <u>any of </u>the Other Obligors; or if the undersigned or any of the Other Obligors shall (x) default in the payment of any indebtedness (other than indebtedness incurred under the ~~Clearance Agreement or the~~ Guaranty) having an aggregate principal amount of $100,000,000 (or its equivalent in any other currency or currencies) or more beyond the period of grace (not to exceed 30 days), if any, provided in the instrument or agreement under which such indebtedness was created, or (y) default in the observance or performance of any agreement or condition relating to any indebtedness (other than indebtedness incurred under the ~~Clearance Agreement or the~~ Guaranty) or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition shall exist, the effect of which default or other event or condition is to cause any such indebtedness to become due prior to its stated maturity in the aggregate principal amount of $100,000,000 (or its equivalent in any other currency or currencies) or more; or  any indebtedness of the undersigned or any of the Other Obligors in the aggregate amount of $100,000,000 (or its equivalent in any other currency or currencies) or more shall be declared due and payable prior to the stated maturity thereof; or if the undersigned<u> or any of the Other Obligors</u> shall be dissolved; thereupon, unless and to the extent that the Bank shall otherwise elect, it shall be a DEFAULT under this agreement.

    The undersigned acknowledges and agrees that the Bank may from time to time request further security or payments on account of any of the Liabilities.

    Upon the occurrence and continuation of a Default, the Bank may assign, transfer and/or deliver to any transferee of any of the Liabilities and/or any or all of the Security; and thereafter shall be fully discharged from all responsibility with respect to the Security so assigned, transferred and/or delivered.  Such transferee shall be vested with all the powers and rights of the Bank hereunder with respect to such Security, but the Bank shall retain all rights and powers hereby given with respect to any of the Security not so assigned, transferred or delivered.  No delay on the part of the Bank in exercising any power or right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right.  The rights, remedies and benefits herein expressly specified are cumulative and not exclusive of any rights, remedies or benefits which the Bank may otherwise have.  The undersigned hereby waive(s) presentment, notice of dishonor and protest of all instruments included in or evidencing the Liabilities or the Security and any and all other notices and demands whatsoever, whether or not relating to such instruments.

    No provision hereof shall be modified or limited except by a written instrument expressly referred hereto and to the provision so modified or limited.  This agreement shall be binding upon the assigns or successors of the undersigned, shall constitute a continuing agreement, applying to all future as well as existing transactions applying to all future as well as existing transactions, whether or not of the character contemplated at the date of this agreement, and if all transactions between the Bank and the undersigned shall be at any time closed, shall be equally applicable to any new transactions thereafter; and shall be governed by and construed according to the internal laws of the State of New York without reference to principles of conflicts of laws.  By the execution hereof the undersigned hereby submits to the jurisdiction of the Federal and State courts located in New York.  The undersigned hereby consents to the service of process in any action or proceeding brought against it by the Bank by means of registered mail to the last known address to the undersigned.  Nothing herein, however, shall prevent service of process by any other means recognized as valid by law within or without the State of New York.  Unless the context otherwise requires, all terms used herein which are

CONFIDENTIAL JPM-LBHI00003442

defined in the Uniform Commercial Code shall have the meanings therein stated. All references to agreements, guaranties, documents and other writings herein refer to such writings as the same may be hereafter amended, modified, supplemented and/or restated.

**THE UNDERSIGNED HEREBY WAIVES AND AGREES TO WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM INSTITUTED WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS AGREEMENT.**

New York, New York

                                        LEHMAN BROTHERS HOLDINGS INC.

Dated: As of ~~August 26,~~ September 9, 2008

                                        By: _____  _____

                                                Name:
                                                Title:

CONFIDENTIAL                                 JPM-LBHI00003443

Document comparison done by DeltaView on Tuesday, September 09, 2008 8:28:15 PM

| Input: | |
|---|---|
| Document 1 | file://C:/Documents and Settings/lavvenir/Desktop/LEGAL3CMP-#377241-v4-Security_Agreement.DOC |
| Document 2 | file://C:/Documents and Settings/lavvenir/Desktop/Lehman Security Agreement 09-09-08.DOC |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 19 |
| Deletions | 26 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 45 |