# EXHIBIT E

## INVESTMENT ADVISORY AGREEMENT

INVESTMENT ADVISORY AGREEMENT (this "**Agreement**") dated as of July 20, 2006 between JPMorgan Absolute Return Credit Master Fund Ltd., a Cayman Islands exempted company (together with its successors and permitted assigns, the "**Fund**") and J.P. Morgan Investment Management Inc., a corporation organized under the laws of Delaware (the "**Adviser**").

## W I T N E S S E T H :

WHEREAS, in accordance with the terms of the Memorandum and Articles of Association of the Fund (as the same may be amended or restated from time to time, the "**Memorandum and Articles**"), the Fund desires to retain the Adviser and the Adviser desires to undertake to perform certain investment advisory services to the Fund pursuant to the terms and subject to the conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and undertakings hereinafter set forth, the parties hereby agree as follows:

1.   *Definitions*.

(a)   The following terms shall have the following meanings for the purposes of this Agreement:

"**Adviser**" shall have the meaning set forth in the preamble to this Agreement.

"**Advisers Act**" shall have the meaning set forth in Section 5(d) of this Agreement.

"**Affiliate**" of any Person means any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; *provided* that for purposes of this Agreement, the Fund shall not be considered an Affiliate of the Adviser.

"**Agency Cross Transactions**" shall have the meaning set forth in Section 11(c) of this Agreement.

1

SSL-DOCS2 70289386v1

CONFIDENTIAL                    JPMAFF-LBHI00002182

"**Agreement**" means this Investment Advisory Agreement, as amended and in effect from time to time.

"**Authorized Representative**" shall have the meaning set forth in Section 25(a) of this Agreement.

"**Board**" means the Board of Directors of the Fund, as constituted from time to time pursuant to the terms of the Memorandum and Articles.

"**Business Day**" means any day on which banks are open for business in the State of New York and the Cayman Islands.

"**Class**" means a class of Shares issued by the Fund.

"**Custodian**" shall have the meaning set forth in Section 2(j) of this Agreement.

"**Damages**" shall have the meaning set forth in Section 8(a) of this Agreement.

"**ERISA**" shall have the meaning set forth in Section 2(m) of this Agreement.

"**Event of Default**" means (i) fraud, willful misconduct, or gross negligence of the Adviser, or, at any time that the assets of the Fund are deemed to contain "plan assets" under ERISA, violation of the fiduciary provisions of ERISA by the Adviser, in each case in connection with the performance by the Adviser of its duties as described herein, (ii) knowing and willful material breach of this Agreement by the Adviser, (iii) material breach of this Agreement (other than a knowing and willful breach) by the Adviser which the Adviser does not cure within 180 days of receiving written notice from the Fund, of such breach, (iv) any material breach by the Adviser of any regulatory requirement to which it is subject or failure to obtain or maintain any registration, filing approval, authorization or consent in each case that (A) is material to the activities of the Adviser and (B) the Adviser does not cure within 180 days of becoming aware of such breach or failure, or (v) the bankruptcy, insolvency or liquidation of the Adviser.

"**Expenses**" shall mean any expenses incurred by the Adviser in connection with the performance by the Adviser of its functions and duties hereunder, which expenses are properly chargeable to and payable by the Fund as determined in the discretion of the Adviser and consistent with the terms of the Offering Memorandums and which shall not include the salaries or benefit

SSL-DOCS2 70289386v1

CONFIDENTIAL          JPMAFF-LBHI00002183

expenses of the Adviser's employees or any administrative expenses of the Adviser.

**"Fund"** shall have the meaning set forth in the preamble to this Agreement.

**"Fund Authorized Representative"** shall have the meaning set forth in Section 25(b) of this Agreement.

**"Fund Investment"** means any investment made by the Fund.

**"Indemnified Person"** shall have the meaning set forth in Section 8(a) of this Agreement.

**"Investment Program"** shall have the meaning set forth in Section 3 of this Agreement.

**"Memorandum and Articles"** shall have the meaning set forth in the recitals to this Agreement.

**"Offering Memorandums"** means the Offering Memorandums of each of JPMorgan Absolute Return Credit Fund Ltd. and JPMorgan Absolute Return Credit Fund, a series of JPMorgan Absolute Return Credit Fund LLC, as they may be amended or supplemented from time to time, relating to the offering of participating, non-voting shares of such funds.

**"Person"** means any individual, partnership, corporation, limited liability company, trust or other entity.

**"Series"** means a series of a Class of Shares issued by the Fund.

**"Share"** means a participating, non-voting share of the Fund.

**"Shareholder"** means, at any time, any Person who is at such time a holder of Shares of the Fund and shown as such on the books and records of the Fund.

**"Sub-Series"** means a sub-series of a Series of Shares issued by the Fund.

(b)     Capitalized terms used herein without definition have the meanings assigned to them in the Memorandum and Articles.

3

CONFIDENTIAL            JPMAFF-LBHI00002184

2.    *Duties and Services.*

(a)    The Fund hereby appoints the Adviser, and the Adviser hereby agrees, to provide investment advisory services to the Fund as generally described in Section 3.

(b)    The Adviser shall have full discretion and authority to undertake and perform or cause the Fund to undertake and perform any and all acts deemed necessary or appropriate by the Adviser in connection with the performance by the Adviser of its duties and functions as described herein.

(c)    The Adviser acknowledges that the activities of the Adviser hereunder are subject to the ongoing oversight and review of the Board and that the Board is responsible for setting general policies with respect to the Fund. The Adviser hereby agrees to cooperate with the Board by providing, and responding to reasonable requests of the Board for, reasonably available information regarding the activities of the Fund and the Adviser in connection therewith, attending and participating in meetings of the Board at reasonable locations and upon reasonable notice thereof and otherwise as reasonably necessary to permit the Board to exercise such oversight, review and policymaking functions.

(d)    The Adviser may arrange for, coordinate and pay for (subject to reimbursement by the Fund) the services of consultants and other professionals (including, without limitation, accountants and attorneys) for the Fund as deemed necessary or desirable by the Adviser in its sole discretion. In providing services hereunder, the Adviser may employ third parties, including its Affiliates, to render advice (including investment advice) and assistance; *provided,* that the Adviser shall not be relieved of any of its duties hereunder solely due to the performance of any services by third parties.

(e)    The Adviser shall comply with (i) all of the terms and conditions of the Memorandum and Articles affecting the duties and functions that have been expressly delegated to it thereunder and hereunder; (ii) the instructions and directions of the Board to the extent that they do not conflict with this Agreement, the Memorandum and Articles, the Offering Memorandums or applicable laws and regulations, and (iii) all applicable laws and regulations including, to the extent applicable, the laws of the Cayman Islands and the United States. The Adviser shall not be bound to follow any amendment or supplement to the Memorandum and Articles or the Offering Memorandums unless the Adviser has consented thereto.

4

SSL-DOCS2 70289386v1

(f)    Except as expressly authorized herein, the Adviser shall not be authorized to manage the affairs of, act in the name of or bind the Fund in any manner whatsoever.  The Adviser shall, however, have the power to execute, and take any action under, all necessary and appropriate documents and instruments on behalf of the Fund with respect to the performance by the Adviser of its duties and functions as described herein.

(g)    The Adviser shall implement trading policies for its directors, officers and employees regarding restrictions on personal investing activities and reporting requirements that comply with standards applicable to U.S. registered investment advisers and shall cause its directors, officers and employees to comply with such trading policies.

(h)    The Adviser shall not engage in any transaction for the Fund that would require the Fund's consent under Section 206(3) of the Investment Advisers Act of 1940, as amended, except with the prior written consent of the Fund.

(i)    The Adviser shall maintain adequate records relating to services performed hereunder and the Fund Investments.

(j)    The Adviser shall select a custodian (the "**Custodian**") to open for the Fund a segregated account containing the assets of the Fund. The Custodian shall be instructed to accept instructions issued by the Adviser with respect to Fund Investments unless the Fund notifies the Custodian that this Agreement has been terminated.

(k)    Without limiting any of the foregoing, the Adviser shall be authorized to

(i)    exercise all of the Fund's rights, powers and privileges with respect to Fund Investments, including, without limitation, to vote Fund Investments;

(ii)    open, maintain and close bank and brokerage (including prime brokerage) accounts in the name of the Fund (including, subject to any limitations of ERISA, accounts with any Affiliate of the Adviser) and to draw checks and other orders for the payment of money;

(iii)    cause the Fund to borrow money to the extent determined in the discretion of the Adviser in connection with implementation of the Investment Program and to issue evidences

5

CONFIDENTIAL                    JPMAFF-LBHI00002186

of indebtedness of such borrowings, and to secure such borrowings by pledge of any or all assets of the Fund; and

        (iv)    enter into, negotiate, modify, perform and carry out or cause the Fund to enter into, negotiate, modify, perform and carry out contracts and agreements of any kind (including without limitation any derivative contracts) necessary, convenient, desirable or incidental to the accomplishment of the purposes of the Fund.

        (l)    The Adviser may at any time or from time to time recommend to the Board that the Board cause the Fund to establish, issue, offer and accept payments in respect of additional Classes, Series or Sub-Series of Shares containing such terms and conditions, including with respect to the payment of fees, redemption rights, or otherwise, as determined by the Board upon the recommendation of the Adviser (to be sold to such Persons as determined by the Adviser, including members, officers, principals, directors or employees of the Adviser or any of its Affiliates).

        (m)    The Adviser acknowledges that the assets of the Fund may be deemed to consist of "plan assets" within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") and 29 C.F.R. Section 2510.3-101. As of the date hereof, no condition exists that would prevent the Adviser from meeting the conditions of a "qualified professional asset manager" for the reasons described in Part I, paragraph (g) of U.S. Department of Labor Prohibited Transactions Class Exemption 84-14 (49 F.R. 9494, Mar. 13, 1984). To the extent that the assets of the Fund are deemed to consist of such "plan assets," the Adviser acknowledges that it will be a "fiduciary" with respect to such assets within the meaning of ERISA Section 3(21).

        3.    *Nature of Services.* The Adviser intends to manage the assets of the Fund generally within the investment guidelines and restrictions set forth in the Offering Memorandums under the headings "Investment Program", as such guidelines and restrictions may be amended or supplemented from time to time (the "**Investment Program**"); *provided* that, notwithstanding the foregoing, the Adviser will retain sole discretion to determine the allocation and investment of the assets of the Fund, including determinations with respect to the amount of leverage utilized by the Fund and the concentration of the assets of the Fund. Services in the nature of investment advisory services shall be rendered by the Adviser, or by consultants or other professionals that the Adviser shall appoint, to the Fund and shall include:

6

CONFIDENTIAL        JPMAFF-LBHI00002187

(a)    identifying and evaluating investment opportunities, selecting and determining Fund Investments and causing the Fund to make Fund Investments, including, without limitation, (i) analyzing and investigating investment opportunities, (ii) structuring Fund Investments, (iii) identifying bank, institutional and other sources of financing for Fund Investments, (iv) negotiating the terms of, and supervising the preparation, review and execution by the Fund of all documents required to consummate Fund Investments, and (v) supervising and directing the investment, purchase, hedging, retention, exchange and reinvestment of Fund Investments, with full authority and at its discretion, in accordance with the terms of the Memorandum and Articles;

(b)    identifying and evaluating the timing and method of sale or other disposition of Fund Investments, selecting and determining Fund Investments to be sold or otherwise disposed of, and causing the Fund to sell or otherwise dispose of Fund Investments, including, without limitation, (i) analyzing and investigating disposition strategies, (ii) structuring the sale or other disposition of Fund Investments, (iii) identifying interested counterparties and arranging appropriate introductions, (iv) negotiating the terms of, and supervising the preparation, review and execution by the Fund of all documents required to sell or otherwise dispose of Fund Investments, and (v) supervising and directing the exchange or reinvestment of Fund Investments, with full authority and at its discretion, in accordance with the terms of the Memorandum and Articles;

(c)    structuring, negotiating, monitoring and causing the Fund to enter into, modify, terminate or otherwise wind-up foreign currency hedging transactions and other hedging or derivative transactions with respect to all or any portion of the assets of the Fund as determined necessary or desirable in connection with the operations of the Fund or as deemed necessary or desirable under the terms and conditions of any Class, Series or Sub-Series of Shares; and

(d)    reasonably cooperating with the Fund or its designee in the Fund's or such designee's performance of certain administrative services, including, without limitation:

(i)    preparing and causing to be prepared reports, statements and other information for the Fund and the Shareholders;

(ii)    preparing notices from the Fund to the Shareholders; and

7

CONFIDENTIAL    JPMAFF-LBHI00002188

(iii)    maintaining records and accounts with respect to the Fund and the Shareholders, including the books and records of the Fund.

4.    *Independent Contractor.*  The Adviser shall for all purposes herein be deemed to be an independent contractor with respect to the Fund.  The Adviser shall not, by reason of its duties and functions hereunder, be deemed to be acting as a partner of, or to be engaged in a joint venture with, the Fund.

5.    *Representations and Warranties of the Adviser.*  The Adviser hereby represents and warrants as follows:

(a)    The Adviser is a corporation duly organized, validly existing and in good standing under the laws of Delaware.  The execution, delivery and performance by the Adviser of this Agreement are within its powers, have been duly authorized by all necessary corporate or other action on its behalf, require no action by or in respect of, or filing with, any governmental body, agency or official (except those which have been obtained or fully complied with) and do not and will not contravene, or constitute a default under, any provision of applicable law or regulation or of its articles of incorporation or other comparable organizational documents or any agreement, judgment, injunction, order, decree or other instrument to which the Adviser is a party or by which the Adviser or any of its properties or assets is bound.

(b)    This Agreement constitutes a valid and binding agreement of the Adviser, enforceable against it in accordance with its terms.

(c)    There are no actions, suits or proceedings pending against, or to the knowledge of the Adviser or any of its Affiliates threatened against or affecting, the Adviser or any of its Affiliates before any court or arbitrator or any governmental body, agency or official in which, in the reasonable judgment of the Adviser or any of its Affiliates, there is a reasonable possibility of an adverse decision which could have a material adverse effect on the ability of the Adviser to perform its duties and functions hereunder.

(d)    The Adviser is registered as an "investment adviser" pursuant to the U.S. Investment Advisers Act of 1940, as amended (the **"Advisers Act"**).

6.    *Representations and Warranties of the Fund.*  The Fund hereby represents and warrants as follows:

8

CONFIDENTIAL                              JPMAFF-LBHI00002189

(a)    The Fund is an exempted company, validly existing and in good standing under the laws of the Cayman Islands. The execution, delivery and performance by the Fund of this Agreement, and the delegations of authority to the Adviser provided for herein, are within the Fund's powers, have been duly authorized by all necessary Fund action, require no action by or in respect of, or filing with, any governmental body, agency or official and do not and will not contravene, or constitute a default under any provision of applicable law or regulation or of its certificate of formation, the Memorandum and Articles or any other agreement, judgment, injunction, order, decree or other instrument to which the Fund is a party or by which the Fund or any of their respective properties or assets is bound.

(b)    This Agreement constitutes a valid and binding agreement of the Fund, enforceable against the Fund in accordance with its terms.

(c)    There are no actions, suits or proceedings pending against, or to the knowledge of the Fund threatened against or affecting, the Fund before any court or arbitrator or any governmental body, agency or official in which in the reasonable judgment of the Fund there is a reasonable possibility of an adverse decision which could have a material adverse effect on the business, operations, assets or financial condition of the Fund.

(d)    The Fund has furnished to the Adviser true and complete copies of the Memorandum and Articles and the Offering Memorandums.

(e)    The Fund acknowledges that although the Adviser and its Affiliates expect to devote a certain amount of time and effort to the affairs of the Fund, they will also devote a substantial amount of their working time and resources to other activities unrelated to the affairs of the Fund, including without limitation advising other investment vehicles or investment accounts that may have investment objectives similar or identical to those of the Fund. The Fund further acknowledges that such other investment vehicles and accounts, whether now existing or created in the future, could compete with the Fund for the purchase and sale of securities, commodities and other financial instruments or for the pursuit of investment opportunities.

7.    *Fees and Expenses.*

REDACTED

9

CONFIDENTIAL                    JPMAFF-LBHI00002190

REDACTED

8.    *Limitation of Liability; Indemnification.*

        (a)    None of the Adviser, its officers, directors, members, partners, representatives, managers, employees, shareholders, agents or Affiliates, or any officers, directors, members, partners, representatives, managers, employees, shareholders or agents of any such Affiliates (each, an "**Indemnified Person**") shall be liable to the Fund or any Shareholder for any losses, claims, damages, liabilities, judgments, demands, charges or expenses (including, without limitation, legal fees) of every kind or nature whatsoever (one or more, "**Damages**") arising from any act or omission performed or omitted by it in connection with this Agreement, the Memorandum and Articles or the Fund's business or affairs except for any such Damages determined by final judgment of a court of competent jurisdiction to have been primarily attributable to such Indemnified Person's gross negligence, willful misconduct or, only with respect to Shareholders that are subject to ERISA, violation of the fiduciary standard imposed under ERISA at any time that the assets of the Fund are deemed to contain "plan assets" under ERISA.

        (b)    The Fund shall, to the fullest extent permitted by applicable law or regulation, reimburse, indemnify and hold harmless each Indemnified Person against any Damages to which such Indemnified Person may become subject in connection with any matter arising from any act or omission performed or omitted by it in connection with this Agreement, the Memorandum and Articles or the Fund's business or affairs, except for any such Damages determined by final judgment of a court of competent jurisdiction to have been primarily attributable to such Indemnified Person's gross negligence, willful misconduct or, at any time that the assets of the Fund are deemed to contain "plan assets" under ERISA, violation of the fiduciary standard imposed under ERISA. If any Indemnified Person becomes involved in any capacity in any action,

10

CONFIDENTIAL                      JPMAFF-LBHI00002191

proceeding or investigation in connection with any matter arising out of or in connection with this Agreement, the Memorandum and Articles or the Fund's business or affairs, the Fund shall periodically reimburse the Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; *provided* that such Indemnified Person shall agree promptly to repay to the Fund the amount of any such reimbursed expenses paid to it to the extent that it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Fund in connection with such action, proceeding or investigation as provided in the exception contained in the immediately preceding sentence. If for any reason (other than the gross negligence or willful misconduct of or, if applicable, violation of the fiduciary standards of ERISA by, such Indemnified Person) the foregoing indemnification is unavailable to such Indemnified Person, or insufficient to hold it harmless, then the Fund shall contribute to the amount paid or payable by such Indemnified Person as a result of such loss, claim, damage, liability or expense in such proportion as is appropriate to reflect the relative benefits received by the Fund, on the one hand, and the Indemnified Person on the other hand or, if such allocation is not permitted by applicable law or regulation, to reflect not only the relative benefits referred to above but also any other relevant equitable considerations.

(c)     To the extent that, at law or in equity, the Adviser has duties (including fiduciary duties) and liabilities relating thereto to the Fund or to any Shareholder, the Adviser shall not be liable to the Fund or to any such Shareholder for the Adviser's good faith reliance on the provisions of this Agreement, the Offering Memorandums or the Memorandum and Articles, as applicable, to the fullest extent permitted by applicable law or regulation. The provisions of this Agreement, the Offering Memorandums, as applicable, to the extent that they restrict the duties and liabilities of the Adviser otherwise existing at law or in equity, are agreed by the Fund to modify to that extent such other duties and liabilities of the Adviser, as the case may be.

(d)     Whenever in this Agreement or the Memorandum and Articles the Adviser is permitted or required to make a decision (i) in its "**discretion**," or under a similar grant of authority or latitude, the Adviser, to the fullest extent permitted by applicable law or regulation, shall be entitled to consider only such interests and factors as it desires and may consider its own interests and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Fund or any Shareholder or (ii) in its "**good faith**" or under another express standard,

11

CONFIDENTIAL                    JPMAFF-LBHI00002192

the Adviser, to the fullest extent permitted by applicable law or regulation, shall act under such express standard and shall not be subject to any other or different standards imposed by the Memorandum and Articles or by law or any other agreement contemplated therein.

(e)     Notwithstanding anything else contained in this Agreement or the Memorandum and Articles, the reimbursement and indemnity obligations of the Fund pursuant to this Section 8 shall:

(i)     be in addition to any liability which the Fund may otherwise have;

(ii)     be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of such Indemnified Person and any such Persons; and

(iii)     be limited to the assets of the Fund.

(f)     The Adviser shall to the fullest extent permitted by applicable law or regulation, reimburse, indemnify and hold harmless the Fund, its Affiliates, or the officers, directors and employees of the Fund or any such Affiliates, against any Damages to which any of the Fund, its Affiliates, or the officers, directors and employees of the Fund or any such Affiliates may become subject, insofar as such Damages are determined by final judgment of a court of competent jurisdiction to have been primarily attributable to the Adviser's or any such Persons' gross negligence, willful misconduct or, only with respect to Shareholders that are subject to ERISA, violation of the fiduciary standard imposed under ERISA at any time that the assets of the Fund are deemed to contain "plan assets" under ERISA, in each case arising from any act or omission performed or omitted by the Adviser or any such Person in connection with this Agreement or the Fund's business or affairs and except to the extent any such Damages result from (i) gross negligence or willful misconduct on the part of the Fund; or (ii) breach of this Agreement by the Fund.

9.     *Subrogation.*  In case of any payment by the Fund to an Indemnified Person pursuant to Section 8 the Fund shall be subrogated to the amount of such payment to all rights of the Indemnified Person against any Person with respect to the loss or expense which has caused such payment to be made.

12

CONFIDENTIAL                JPMAFF-LBHI00002193

10.   *Non-Exclusivity.*

(a)   Except as expressly limited by this Agreement, the Adviser and its Affiliates, including any of their directors, officers, members, managers, agents, representatives or employees, shall have the right (i) to engage in or possess an interest in or provide advice to other business ventures or Persons of any kind or description, independently or with others, identical, similar or dissimilar to the investments or business of the Fund, including, without limitation, business ventures or Persons which compete, directly or indirectly, with the Fund, and (ii) to engage in other activities for profit.  Neither the Fund, nor the members of the Board, will have any rights or interests in such other investments or the income or profits derived therefrom by virtue of this Agreement or the Memorandum and Articles. It is specifically acknowledged in this regard that the Adviser and its Affiliates perform similar or identical investment advisory and management services for various clients.

(b)   The Adviser shall not be obligated to present any particular investment opportunity to the Fund even if such opportunity is suitable for investment by the Fund; *provided* that at any time that the assets of the Fund are deemed to contain "plan assets" under ERISA, the Adviser shall allocate investment opportunities among clients of the Adviser on a fair and equitable basis.

11.   *Selection of Broker-Dealers; Agency Cross Transactions.*

(a)   The Adviser has full authority and discretion, consistent with the provisions of the Offering Memorandums, in connection with the selection of broker-dealers (including one or more prime brokers) with whom to place orders for the purchase or sale of securities and other financial instruments for the Fund.

(b)   With respect to transactions of the Fund effected through broker-dealers, the Fund acknowledges that consideration is given by the Adviser to placing orders with brokers and dealers that furnish research and brokerage services through "soft dollars," an attributed portion of the total cost of commission expenses or markups on eligible riskless principal transactions, to the Fund or the Adviser. Such "soft dollars" may be used by the Adviser to acquire research and brokerage services and such services may be used by the Adviser in its overall investment management activity and not solely for the benefit of the Fund. Under the foregoing policies, the Adviser may cause the Fund to pay higher transaction costs and expenses than might be obtainable if transactions were effected

13

CONFIDENTIAL                    JPMAFF-LBHI00002194

through brokers or dealers that do not provide research and brokerage services.

(c)    To the extent permitted by ERISA, if applicable, the Adviser or its Affiliates may engage in "agency cross transactions" as defined in Rule 206(3)-2 ("**Agency Cross Transactions**") promulgated by the U.S. Securities and Exchange Commission under the Advisers Act, in which the Adviser or its Affiliates acts as a broker for both the Fund and for another person on the other side of the transaction. The Adviser or its Affiliates may receive commissions from, and have a potentially conflicting division of loyalties and responsibilities regarding, both parties to such Agency Cross Transactions. **THIS CONSENT, AS TO AGENCY CROSS TRANSACTIONS EFFECTED ON BEHALF OF THE FUND, MAY BE REVOKED AT ANY TIME BY WRITTEN NOTICE FROM THE FUND TO THE ADVISER.**

12.    *Notices of Certain Changes.* The Adviser shall notify the Fund of any Event of Default as promptly as practicable after the Adviser becomes aware of such Event of Default.

13.    *Certain Limitations.*

(a)    It is expressly agreed that the duties of the Adviser and the services to be provided by the Adviser pursuant to this Agreement are limited to those duties and services specifically set forth in Sections 2 and 3 and that the Adviser has no other duties (including fiduciary duties) to the Fund or any Shareholders.

(b)    The Adviser shall in no event be obligated to provide any services to the Fund to the extent that such services, in the sole discretion of the Adviser, may not comply with, or could cause the Adviser or any of its Affiliates to violate, any law, regulation, order or decree applicable to any of them.

(c)    Notwithstanding the provisions of Section 8 or this Section 13, no provision of this Agreement shall constitute a waiver or limitation of the Fund's or any Shareholder's rights under the U.S. federal or state securities laws.

14.    *Term and Termination.* Subject to this Section 14, the initial term of this Agreement shall be five (5) years commencing from the date hereof and, following such initial term, this Agreement shall be automatically renewed annually thereafter on the anniversary of the date hereof; *provided* that this Agreement shall not be renewed and shall terminate on any such renewal date if

14

CONFIDENTIAL                    JPMAFF-LBHI00002195

the Fund or the Adviser provides written notice of termination to the other party hereto not later than 120 days prior to the end of the initial term or 120 days prior to the end of any annual renewal period thereafter.  The term of this Agreement shall also terminate upon the earliest of:

(a)    the completion of the liquidation of the Fund;

(b)    a termination of the Agreement required by law, governmental regulation or any governmental or regulatory authority;

(c)    a breach by the Fund of any material obligation under this Agreement if such breach is not cured within 30 days after written notice of such breach by the Adviser to the Fund;

(d)    the termination date set forth in a notice of termination delivered by the Fund to the Adviser:

(i)    not less than 30 days prior to the termination date set forth therein if the Fund has determined that any of sections (iii) or (iv) of the definition of Event of Default have occurred;

(ii)    immediately, if the Fund has determined that any of sections (i), (ii), or (v) of the definition of Event of Default have occurred;

(e)    the termination date set forth in a notice of termination delivered by the Fund to the Adviser not less than 60 days prior to the termination date set forth therein, if the Unaffiliated Directors of the Fund have unanimously voted to terminate this Agreement which they may do for any reason or no reason; or

(f)    upon mutual agreement of the parties hereto.

Upon the termination of this Agreement at any time and for any reason, the Fund shall as promptly thereafter as possible cause the name of the Fund to be changed so that "JPMorgan" or any variation, permutation or likeness thereof, or any reference or allusion to the Adviser or any of its Affiliates, shall be removed.

15.    *Assignment and Delegation.*  Neither party may, directly or indirectly, assign all or any part of its respective rights and duties under this Agreement to any Person without the prior written consent of the other party.

15

CONFIDENTIAL            JPMAFF-LBHI00002196

16.    *Notices*.  All notices, requests and other communications to any party hereunder shall be in writing (including telecopy or similar writing) and shall be given:

    (a)    If to the Fund at:

        JPMorgan Absolute Return Credit Master Fund Ltd.
        245 Park Avenue
        New York, New York 10167
        United States

    (b)    If to the Adviser at:

        J.P. Morgan Investment Management Inc.
        245 Park Avenue
        New York, New York 10167
        United States

or such other address, telecopy number or electronic mail address as such party may hereafter specify for the purpose by notice to the other parties hereto.  Each such notice, request or other communication shall be effective (x) if given by telecopy, when such telecopy is transmitted to the telecopy number specified in this Section 16 and the appropriate telecopy confirmation is received, (y) if sent by mail, seven days after such notice is deposited in the mails with first class postage prepaid, addressed to the address specified in this Section 16 or (z) if given by any other means, when delivered at the address specified in this Section 16.  Each party may rely and shall be protected in acting upon any written instruction or communication believed by it to be genuine and to have been signed by the other party or parties.

17.    *Entire Agreement*. This Agreement constitutes the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements and understandings, oral or written, relating to the subject matter hereof.

18.    *Amendment; Waiver*. This Agreement may not be amended nor may any rights hereunder be waived except by an instrument in writing signed by the parties hereto.

19.    *Governing Law*. This Agreement shall be construed in accordance with and governed by the laws of New York, without giving effect to the provisions, policies or principles thereof relating to choice or conflict of laws.

SSL-DOCS2 70289386v1

CONFIDENTIAL                    JPMAFF-LBHI00002197

20.     *Forum Selection; Service of process.*

(a)     To the fullest extent permitted by law, the parties hereto agree that any claim, suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the Fund's affairs shall only be brought in the Federal courts located in the County of New York in the State of New York or the State courts located in the County of New York in the State of New York and not in any other State or Federal courts located in the United States of America or any court in any other country or jurisdiction, and each of the parties hereby consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.

**(b)     EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

21.     *Parties in Interest.* Except as specifically set forth in Section 8 this Agreement shall be binding upon and inure solely to the benefit of each party hereto and the Shareholders and their respective legal representatives, heirs, successors and assigns, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person, any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

22.     *Counterparts.* This Agreement may be executed either directly or by an attorney-in-fact, in any number of counterparts, each of which shall constitute an original, but all of which upon delivery when taken together shall constitute a single contract.

23.     *Severability.* In case any one or more of the provisions contained in this Agreement should be invalid, illegal or unenforceable in any respect, such provisions shall be severed from the rest of the Agreement to the extent they are invalid, illegal or unenforceable, and the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

17

CONFIDENTIAL                    JPMAFF-LBHI00002198

24.    *Survival*. The provisions of Sections 8 and 25 shall survive termination of this Agreement for any reason.

25.    *Confidentiality*.

(a)    The Adviser agrees, and agrees to cause its Affiliates and their respective officers, directors, employees, agents, members, advisors and representatives, to keep confidential, and not to make any use of (other than for purposes reasonably related to its rights and duties as set forth in this Agreement) nor to disclose to any Person, any information or matter relating to the Fund and its affairs (other than disclosure to the Adviser's employees, agents, advisors, Affiliates or representatives responsible for matters relating to the Fund (each such Person hereinafter referred to as an "**Authorized Representative**")); *provided* that the Adviser and its Authorized Representatives may make such disclosure to the extent that (i) the information being disclosed relates to the performance of the Fund and is being utilized in marketing materials prepared by the Adviser, (ii) the information being disclosed is publicly known at the time of proposed disclosure by the Adviser or such Authorized Representatives, (iii) the information otherwise is legally known to the Adviser other than through disclosure by the Fund, (iv) such disclosure is required by law or regulation, (v) the information is being disclosed for purposes of filing the Adviser's tax returns or the tax returns of any Affiliate of the Adviser, (vi) the information is being disclosed for purposes of preparing and publishing the Adviser's financial statement or the financial statements of an Affiliate of the Adviser, (vii) the information is being disclosed for purposes of any regulatory or governmental filings or (viii) the information being disclosed is used to correct any false or misleading information which may become public concerning the Adviser's relationship to the Fund or to any Person in which the Fund holds, or contemplates acquiring, an interest.  Prior to any disclosure to any Authorized Representative, the Adviser shall advise such Authorized Representative of the obligations set forth in this subsection.

(b)    The Fund agrees, and agrees to cause its Affiliates and their respective officers, directors, employees, agents, advisors and representatives, to keep confidential, and not to make any use of (other than for purposes reasonably related to its rights and duties as set forth in this Agreement), nor to disclose to any Person, any information or matter relating to the Adviser (other than disclosure to the Fund's employees, agents, advisors or representatives responsible for matters relating to the Fund (each such Person hereinafter referred to as a "**Fund Authorized Representative**")); *provided* that the Fund and the Fund Authorized

18

CONFIDENTIAL                    JPMAFF-LBHI00002199

Representatives may make such disclosure to the extent that (i) the information being disclosed is publicly known at the time of proposed disclosure by the Fund or such Fund Authorized Representatives, (ii) the information otherwise is legally known to the Fund or such Fund Authorized Representatives other than through disclosure by the Adviser, (iii) such disclosure is required by law and, if requested by the Adviser, the Fund, or the Fund Authorized Representatives delivers an opinion of legal counsel to such effect, (iv) the information is being disclosed for purposes of filing the Fund's tax returns or the tax returns of any Affiliate of the Fund, (v) the information is being disclosed for purposes of preparing and publishing the Fund's financial statement or the financial statements of an Affiliate of the Fund, or (vi) the information is disclosed to Shareholders in connection with the management of the Fund. Prior to making any disclosure required by law, the Fund shall notify the Adviser of such disclosure and, if requested by the Adviser, provide the Adviser with the opinion referred to above. Prior to any disclosure to any Fund Authorized Representative, the Fund shall advise such Fund Authorized Representative of the obligations set forth in this subsection.

(c)    Notwithstanding any other statement in this Agreement, each party hereto and each of its respective officers, directors, advisors, employees, representatives or other agents is authorized to disclose to any and all persons without limitation of any kind the tax treatment and tax structure of any transaction entered into pursuant to this Agreement and all materials of any kind (including opinions or other tax analyses) relating to such tax treatment or tax structure that are provided to such party, except for any information identifying the Adviser, any member of the Board or the Fund or (except to the extent relating to such tax structure or tax treatment) any nonpublic commercial or financial information.

26.    *Waiver; Rights and remedies.*  No failure on the part of either party to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

27.    *Headings.* The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

19

CONFIDENTIAL                    JPMAFF-LBHI00002200

28.    *Gender and Number*. Whenever required by the context hereof, the singular shall include the plural and the plural shall include the singular.  The neuter gender shall include the feminine and masculine genders.

20

SSL-DOCS2 70289386v1

IN WITNESS WHEREOF, the undersigned have hereto set their hands as of the day and year first above written.

J.P. MORGAN INVESTMENT
MANAGEMENT INC.,
*as Adviser,*

By: _____
Name: LS Venkatakrishnan
Title: Managing Director


JPMORGAN ABSOLUTE RETURN
CREDIT MASTER FUND LTD.

By: _____
Name: LINBURGH MARTIN
Title:  Director

By: _____
Name: JEFF ARKLEY
Title:  Director

By: _____
Name:  JOHN SUTLIC
Title:  Director


Signature page for Investment Advisory Agreement of JPMorgan Absolute Return Credit Master Fund Ltd.

SSL-DOCS2 70289386v1

.

CONFIDENTIAL          JPMAFF-LBHI00002203