# EXHIBIT G

JPMORGAN FIXED INCOME OPPORTUNITY FUND, LTD.
JPMORGAN FIXED INCOME OPPORTUNITY MASTER FUND, L.P.

MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement"), dated as of June 1, 2008, is entered into by and among JPMorgan Fixed Income Opportunity Fund, Ltd., a Cayman Islands exempted company (the "Fund"), JPMorgan Fixed Income Opportunity Master Fund, L.P., a Cayman Islands exempted limited partnership (the "Portfolio"), and J.P. Morgan Investment Management Inc., a Delaware corporation ("JPMIM" or the "Investment Advisor"). All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Fund's Confidential Private Placement Memorandum as from time to time in effect (the "Memorandum").

WHEREAS, prior to the date hereof, JPMIM served as sub-adviser to the Fund and the Portfolio; and

WHEREAS, effective as of the date hereof, JPMIM shall resign as sub-adviser of the Fund and the Portfolio, and the Fund and the Portfolio wish to appoint JPMIM as investment advisor of the Fund and the Portfolio, respectively.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, the parties hereto agree as follows:

1. Investment Description; Appointment

The Fund desires to employ its capital by initially investing its assets directly in the Portfolio, a collective investment vehicle that has the same investment objectives as the Fund and will also be managed by the Investment Advisor, which in turn will invest in securities and other instruments as specified in the Memorandum. The Investment Advisor may also determine that the Fund should make some or all investments directly. A copy of the Memorandum has been previously submitted to the Investment Advisor. Each of the Fund and the Portfolio desires to employ and hereby appoints the Investment Advisor as its agent and attorney-in-fact to act as investment adviser with unlimited discretionary trading authorization, subject to compliance with the Fund's and the Portfolio's investment guidelines as specified in the Memorandum. The Investment Advisor accepts such appointments by executing this Agreement.

The Investment Advisor will also act as the Fund's and the Portfolio's commodity pool operator ("CPO") and commodity trading advisor; however, the Investment Advisor shall claim an exemption with respect to the Fund and the Portfolio and operate with respect to the Fund and the Portfolio as though exempt from CPO registration. In connection therewith, the Investment Advisor has made a notice filing with respect to the Fund and the Portfolio pursuant to Commodity Futures Trading Commission ("CFTC") Regulation 4.13(a)(4).

2. Services as Investment Advisor

The Investment Advisor shall, subject to the policies and control of the Board of Directors of the Fund (the "Board") and general partner of the Portfolio (the "General Partner"),

respectively, be solely responsible for all trading operations of the Fund and the Portfolio. The Investment Advisor shall, among other things, (i) make all investment decisions for the Fund and the Portfolio, (ii) monitor the performance of the Fund and the Portfolio, (iii) consult with the Administrator with respect to the valuation of the Fund's and the Portfolio's assets, (iv) monitor compliance of the Fund and the Portfolio with all regulatory requirements applicable to their operation, (v) negotiate the terms of all agreements to be entered into on behalf of the Fund and the Portfolio and (vi) retain brokers, open accounts, borrow funds, pledge assets and enter into loan facilities and other instruments, including, without limitation, prime brokerage agreements, pledge agreements and ISDA master agreements, for the Fund and the Portfolio.

The Investment Advisor further agrees (a) to furnish the Fund and the Portfolio with any statistical information the Fund and the Portfolio may reasonably request with respect to their portfolios and (b) to keep the Fund and the Portfolio informed of developments materially affecting their portfolios and provide the Fund and the Portfolio, from time to time, with any information that the Investment Advisor believes may be appropriate or relevant to their operations.

The Investment Advisor may delegate all or a portion of its responsibilities under this Agreement with respect to the trading operations for the Fund and/or the Portfolio to one or more sub-advisors selected by the Investment Advisor, including affiliates of the Investment Advisor.

3.  Compensation

REDACTED

CONFIDENTIAL    JPMAFF-LBHI00001491

REDACTED

4.  Expenses

REDACTED

5.  Standard of Care

The Investment Advisor shall exercise its best judgment in rendering the services listed in paragraph 2 of this Agreement and act in, or not opposed to, the best interests of the Fund and the Portfolio. All investments, allocations and transactions effected or facilitated by the Investment Advisor for the Fund and/or the Portfolio shall be solely for the Fund's and/or the Portfolio's risk. The Investment Advisor does not hereby make any representation, warranty or guarantee as to the success or profitability of any investment, and the Fund and the Portfolio have not received any such representation, warranty or guarantee from the Investment Advisor or any of its affiliates, principals, officers, directors, employees, agents or representatives.

3

CONFIDENTIAL                                              JPMAFF-LBHI00001492

The Investment Advisor shall not be liable to the Fund or the Portfolio or any of their shareholders or partners, respectively, for any losses suffered by the Fund or the Portfolio in connection with the matters to which this Agreement relates, including, but not limited to, trading losses, except those losses resulting from the Investment Advisor's intentional misconduct, bad faith or gross negligence on its part in the performance of its duties under this Agreement.

The foregoing provisions (as well as the indemnification provisions described below), however, shall not be construed to relieve the Investment Advisor or any affiliate, employee, member, director, officer or agent of any liability to the extent that such liability may not be waived, modified or limited under applicable law (including, if the Fund or the Portfolio is subject to the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), ERISA, and Federal or state securities laws).

6. Indemnification

To the fullest extent permitted by law (including, if applicable, ERISA), the Fund and the Portfolio shall indemnify the Investment Advisor and its members, managers, officers, partners and employees (each, an "Indemnified Person") from and against any loss or expense suffered or sustained by an Indemnified Person by reason of the fact that he, she or it was an Indemnified Person, including, without limitation, any judgment, settlement, reasonable attorneys' fees and other costs and expenses incurred in connection with the defense of any actual or threatened action or proceeding (collectively, "Losses"), provided that such Losses resulted from a mistake of judgment or action or inaction taken by an Indemnified Person honestly and in good faith that said Indemnified Person reasonably believed to be in, or not opposed to, the best interests of the Fund and the Portfolio and which did not constitute gross negligence, intentional misconduct, bad faith or, if the Fund or the Portfolio is subject to ERISA, a breach of the fiduciary duty under ERISA. The Fund and/or the Portfolio, as the case may be, may, in the sole discretion of the Board with respect to the Fund and the General Partner with respect to the Portfolio, advance to any Indemnified Person reasonable attorneys' fees and other costs and expenses incurred in connection with the defense of any action or proceeding that arises out of such conduct. In the event that such an advance is made by the Fund and/or the Portfolio, the Indemnified Person shall agree to reimburse the Fund and/or the Portfolio for such fees, costs and expenses to the extent that it shall be determined that he, she or it was not entitled to indemnification.

7. Service to Other Companies or Accounts

The Fund and the Portfolio understand that the Investment Advisor may act as investment adviser to other managed accounts and to other partnerships or investment funds, and the Fund and the Portfolio have no objection to the Investment Advisor's so acting. Subject to applicable laws and regulations, whenever the Fund or the Portfolio and one or more other clients advised by the Investment Advisor have available funds for investments, the Investment Advisor will endeavor to allocate investments suitable and appropriate for each among the Fund or the Portfolio and the other clients in a manner that is fair and equitable to all interested persons. In addition, the Fund and the Portfolio understand that the persons employed by the Investment Advisor to assist in the performance of the Investment Advisor's duties under this

4

Agreement will not devote their full time to serving the Fund and the Portfolio and that nothing contained in this Agreement should be deemed to limit or restrict the right of the Investment Advisor or any affiliate of the Investment Advisor to engage in and devote time and attention to other businesses or to render services of whatever kind or nature.

On occasions when the Investment Advisor deems the purchase or sale of a security to be in the best interest of the Fund and the Portfolio as well as other clients of the Investment Advisor, the Investment Advisor, to the extent permitted by applicable laws and regulations, may, but shall be under no obligation to, aggregate the securities to be purchased or sold to attempt to obtain a more favorable price or lower brokerage commissions and more efficient execution. In such event, allocation of the securities so purchased or sold, as well as the expenses incurred in the transaction, will be made by the Investment Advisor in accordance with applicable law, and in the manner that it considers to be the most equitable and consistent with its fiduciary obligations to the Fund, the Portfolio and to its other clients.

8.  Brokerage Arrangements; Soft Dollars

The Investment Advisor may select any broker or dealer, including, to the extent permitted by applicable law, itself or its affiliates. The Fund and the Portfolio hereby authorize the Investment Advisor to effect transactions for the account of the Fund and the Portfolio through affiliated broker-dealers and the affiliated broker-dealers may retain commissions in connection with effecting such agency transactions. In choosing brokers and dealers, the Investment Advisor will not be required to consider any particular criteria. For the most part, the Investment Advisor will seek the best combination of brokerage cost and execution quality; however, the Investment Advisor is not required to select the broker or dealer that charges the lowest transaction cost, even if that broker provides execution quality comparable to other brokers or dealers. The Investment Advisor may consider the value of various services or products, beyond execution, that a broker-dealer provides to the Fund, the Portfolio and/or the Investment Advisor. The Fund and the Portfolio understand that other broker-dealers may be willing to effect transactions for the Fund and the Portfolio at lower commission rates than those charged by affiliated broker-dealers.

The Investment Advisor will comply with Section 28(e) of the Securities Exchange Act of 1934, as amended, under which the Investment Advisor's use of the Fund's and/or the Portfolio's commission dollars to acquire research products and services is not a breach of its fiduciary duty to the Fund or the Portfolio-even if the brokerage commissions paid are higher than the lowest available-as long as (among certain other requirements) the Investment Advisor determines that the commissions are reasonable compensation for both the brokerage services and the research acquired. For these purposes, "research" means services or products used to provide lawful and appropriate assistance to the Investment Advisor in making investment decisions for its clients. The types of research the Investment Advisor may acquire include: reports on or other information about particular companies or industries; economic surveys and analyses; recommendations as to specific securities; financial publications; portfolio evaluation services; financial database software and services; computerized news, pricing and order-entry services; and other products or services that may enhance the Investment Advisor's investment decision-making. Section 28(e)'s "safe harbor" applies to the use of Fund and/or

5

CONFIDENTIAL                                      JPMAFF-LBHI00001494

Portfolio "soft dollars" even when the research acquired is used in making investment decisions for clients other than the Fund and/or the Portfolio.

Therefore, under Section 28(e), research obtained with soft dollars generated by the Fund and the Portfolio may be used by the Investment Advisor or its affiliates to benefit accounts other than the Fund and the Portfolio. Conversely, the research information provided to the Investment Advisor by brokers through which other clients of the Investment Advisor or its affiliates effect securities transactions may be used by the Investment Advisor or its affiliates in providing services to the Fund and the Portfolio.

In the event that the Fund or the Portfolio constitute "plan assets" for purposes of ERISA, the Investment Advisor will manage the assets of the Fund and the Portfolio in accordance with the requirements of ERISA. This may preclude the Fund and the Portfolio from entering into certain transactions with or through the Investment Advisor and its affiliates which may constitute non-exempt "prohibited transactions" within the meaning of ERISA.

The Fund and the Portfolio also hereby authorize the Investment Advisor to effect "agency cross transactions" (as defined in Rule 206(3)-2 promulgated under the Advisers Act ) with its affiliated broker-dealers whereby they will act as agent for, and receive commissions from, the Fund and the Portfolio and the party on the other side of the transaction. The Fund and the Portfolio understand that in addition to receiving commissions from both parties, the affiliated broker-dealers may have a potentially conflicting division of loyalties and responsibilities to both parties to the transaction. The consent of the Fund and the Portfolio to agency-cross transactions may be revoked at any time by written notice of either party to the Investment Advisor.

The Fund and the Portfolio also hereby authorize the Investment Advisor to engage in principal transactions with and effect agency cross transactions through affiliates of the Investment Advisor, subject to the terms and conditions of the Memorandum and to applicable laws, including Section 206(3) of the Advisers Act.

9. Proxy Procedures

The Investment Advisor shall maintain written proxy voting procedures. The Investment Advisor's proxy voting procedures shall be designed to address the resolution of any conflicts of interest that may arise in connection with proxy voting. The Investment Advisor shall review all proxy solicitation materials and be responsible for voting and handling all proxies in relation to the securities held in the Fund and the Portfolio. The Investment Advisor shall instruct the parties providing services to the Fund and the Portfolio to promptly forward misdirected proxies to the Investment Advisor.

The Investment Advisor may delegate all or a portion of its responsibilities under this Agreement with respect to proxy solicitations for the Fund and the Portfolio to one or more third parties selected by the Investment Advisor.

10. Representations

(a) The Investment Advisor represents and covenants that:

6

CONFIDENTIAL                                     JPMAFF-LBHI00001495

       (i)   it will notify the Fund and the Portfolio of any change in its ownership within a reasonable amount of time following such change if required by applicable rules and regulations of the Securities and Exchange Commission (the "SEC");

       (ii)   it is duly formed and validly existing in the jurisdiction in which it is organized and it is authorized to enter into and perform this Agreement;

       (iii)   it is duly registered with the SEC as an investment adviser under the Advisers Act, and with the CFTC as a CPO and commodity trading advisor, is a member of the National Futures Association, and is in compliance with such other registration and licensing requirements as shall be necessary to enable it to perform its obligations hereunder, and agrees to maintain and renew such registrations and memberships during the term of this Agreement;

       (iv)   in performing it duties hereunder, it will comply in all material respects with all applicable laws, including, but not limited to, the Advisers Act, and all rules and regulations thereunder;

       (v)   the Investment Advisor, in the performance of its duties and obligations under this Agreement, shall act in conformity with the Fund's Memorandum and Articles of Association and the Portfolio's Limited Partnership Agreement, as each may be amended, amended and restated or otherwise modified from time to time, and with the instructions and directions of the Board and the General Partner; and

       (vi)   it will make available to the Fund, the Portfolio and the Administrator, promptly upon request, such copies of any records maintained by the Investment Advisor with respect to the Fund and the Portfolio as may be required to assist the Fund, the Portfolio and the Administrator in complying with accounting and investor reporting obligations and complying with applicable laws and regulations.

   (b)   The Fund and the Portfolio hereby acknowledge that the Fund and the Portfolio have received and read a copy of Part II of the Investment Advisor's most recent Form ADV, as amended.

   The above representations and warranties shall be continuing in nature during the term of this Agreement. If at any time any event occurs that makes or tends to make any of the foregoing not true, the representor shall promptly notify the other party.

11.   <u>Investment Advisor as Independent Contractor</u>

   The Investment Advisor shall, for all purposes of this Agreement, be deemed to be an independent contractor and not an agent or employee of the Fund or the Portfolio and, except as otherwise expressly provided herein, shall have no authority to act for or to represent the Fund or Portfolio or otherwise to be deemed an agent of the Fund or the Portfolio.

12.   <u>Confidentiality</u>

   The Investment Advisor shall treat as confidential all information pertaining to the identity of the shareholders. Notwithstanding the foregoing, the Investment Advisor may

CONFIDENTIAL                      JPMAFF-LBHI00001496

make such disclosure to outside parties as may be necessary to comply with applicable governmental laws, rules, and regulations or effectively to perform its obligations and duties under this Agreement. The parties (and each employee, representative, or other agent of the parties) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the Fund and the Portfolio described in the Memorandum and all other materials of any kind (including opinions or other tax analyses) that are provided to shareholders relating to such tax treatment and tax structure, except to the extent that such disclosure is restricted by applicable securities laws.

13. Books and Records

The Investment Advisor agrees to maintain and to preserve for the Fund and the Portfolio such records as are necessary and proper, and to render to the Board and the General Partner such periodic and special reports as the Board and General Partner may reasonably request. The Investment Advisor further agrees that all records which it maintains for the Fund and the Portfolio are the property of the Fund and the Portfolio and it will promptly surrender any of such records upon request.

14. Use of Name

It is understood that the name "JPMorgan" or any derivative thereof or logo associated with such name is the valuable property of the Investment Advisor and its affiliates, and that the Fund and the Portfolio have the right to use such name (or derivative or logo) only so long as this Agreement shall continue. Upon termination of this Agreement the Fund and the Portfolio shall forthwith cease to use such names (or derivative or logo) and the Fund and the Portfolio shall promptly seek to change their names to comply herewith.

15. Non-Assignability

Except as provided herein, the Investment Advisor may not effect an assignment (as defined in the Advisers Act and rules thereunder) of this Agreement without the consent of the Fund and the Portfolio.

16. Term; Termination

The right of the Fund to terminate the Agreement may only be exercised by the management agreement committee of the Fund, which is comprised of the Fund's independent directors.

This Agreement shall become effective as of June 1, 2008 and expires on December 31, 2008, and shall be renewed automatically for successive one year periods. This Agreement may be terminated by each party upon 90 days' prior written notice to the other parties.

8

CONFIDENTIAL                                                                JPMAFF-LBHI00001497

17. <u>Notices</u>

Any notice, direction, instruction, acknowledgment, or other communication required or contemplated by this Agreement shall be in writing and addressed to the parties as follows:

If to the Investment Advisor:

J.P. Morgan Investment Management Inc.
245 Park Avenue
New York, New York 10067

If to the Fund:

c/o J.P. Morgan Investment Management Inc.
245 Park Avenue
New York, New York 10067

If to the Portfolio:

c/o J.P. Morgan Investment Management Inc.
245 Park Avenue
New York, New York 10067

18. <u>Entire Agreement</u>

This Agreement contains the entire agreement of the parties hereto with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto.

19. <u>Binding Effect</u>

This Agreement shall be binding upon and inure to the benefit of the Fund, the Portfolio, the Investment Advisor, each Indemnified Person, and their respective successors and permitted assigns. Any person that is not a signatory to this Agreement, but is nevertheless conferred any rights or benefits hereunder, e.g., directors and officers of the Investment Advisor and others who are entitled to indemnification hereunder, shall be entitled to such rights and benefits as if such person were a signatory hereto, and the rights and benefits of such person hereunder may not be impaired without such person's express written consent.

9

CONFIDENTIAL                                        JPMAFF-LBHI00001498

20. <u>Amendment and Waiver</u>

No provision of this Agreement may be changed, waived or discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

21. <u>Governing Law</u>

This Agreement is to be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to its conflict of laws principles).

22. <u>Counterparts</u>

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

23. <u>Severability</u>

If any provision of this Agreement shall be held or made invalid by a court decision, statute, rule or otherwise, the remainder of this Agreement shall not be affected thereby.

24. <u>Headings</u>

The headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the parties to this Agreement.

25. <u>Survival</u>

The provisions of Sections 3, 4, 6 and 12 hereof shall survive the termination of this Agreement.

\* \* \* \* \* \* \*

CONFIDENTIAL                                JPMAFF-LBHI00001499

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

JPMORGAN FIXED INCOME OPPORTUNITY FUND, LTD.

By: _____
    Name: Clive Harris
    Title: Director


JPMORGAN FIXED INCOME OPPORTUNITY MASTER FUND, L.P.

By: Highbridge GP, Ltd., its general partner

By: _____
    Name: Clive Harris
    Title: Director


J.P. MORGAN INVESTMENT MANAGEMENT INC.


By: _____
    Name:
    Title:

11

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

JPMORGAN FIXED INCOME OPPORTUNITY FUND, LTD.

By: _____
    Name:
    Title: Director


JPMORGAN FIXED INCOME OPPORTUNITY MASTER FUND, L.P.

By: Highbridge GP, Ltd., its general partner

By: _____
    Name:
    Title: Director


J.P. MORGAN INVESTMENT MANAGEMENT INC.

By: *[signature]*
    Name: ABIGAIL JONES FEDER
    Title: MANAGING DIRECTOR

11

**APPENDIX A**

**COMPUTATION OF OFFERING AND REDEMPTION PRICE AND**

**INCENTIVE FEE**

REDACTED

CONFIDENTIAL                    JPMAFF-LBHI00001502

REDACTED

2

CONFIDENTIAL JPMAFF-LBHI00001503