# EXHIBIT M

**Declaration**      **Commingled pension**
**of Trust**         **trust fund**

**JPMorgan Chase Bank, N.A.**

# Core Bond

**Amended**

**July 2008**

1

CONFIDENTIAL        JPMAFF-LBHI00000001

**DECLARATION OF TRUST**
**COMMINGLED PENSION TRUST FUND**
**(Core Bond)**
**OF**
**JPMORGAN CHASE BANK, N.A.**

**ARTICLE I.**         **TITLE, PURPOSE, DEFINITIONS**

*Section 1.1.*         **Title**.  The title of the trust fund hereby established shall be "Commingled Pension Trust Fund (**Core Bond**) of JPMorgan Chase Bank, N.A.".

*Section 1.2.*         **Purpose**.  JPMorgan Chase Bank, N.A., a national banking association and successor to the business of JPMorgan Chase Bank, is adopting this Declaration of Trust as successor trustee to JPMorgan Chase Bank of the Commingled Pension Trust Fund (**Core Bond**) of JPMorgan Chase Bank. This commingled trust fund is established, operated and maintained by JPMorgan Chase Bank, N.A. exclusively as a medium for the collective investment and reinvestment, without distinction between principal and income, of moneys or other assets of participating trusts.  Any participating trust which is invested in this commingled trust fund is authorized in the discretion of the Trustee to continue its investment in this commingled trust fund until the first to occur of (a) such time as the Trustee shall deem it to be practicable to have said trust withdraw its investment from this commingled trust fund, or (b) such time as said trust ceases to be qualified and exempt from income tax under the appropriate provisions of the Internal Revenue Code.

*Section 1.3.*         **Definitions**.  Where used herein, unless the context otherwise requires or unless otherwise herein expressly provided:

(a)         The term "Declaration of Trust" shall mean all of the provisions of this instrument and of any and all other instruments supplemental hereto or amendatory hereof.

(b)         The term "Bank" shall mean JPMorgan Chase Bank, N.A. (or any successor bank or trust company into which it shall be merged or with which it shall be consolidated or any corporation resulting from any merger, consolidation or reorganization to which JPMorgan Chase Bank, N.A. shall be a party).

2

CONFIDENTIAL                    JPMAFF-LBHI00000002

(c)        The term "Commingled Fund" shall mean "Commingled Pension Trust Fund (**Core Bond**) JPMorgan Chase Bank, N.A.".

(d)        The term "Trustee" shall mean JPMorgan Chase Bank, N.A. (or any successor bank or trust company into which it shall be merged or with which it shall be consolidated or any corporation resulting from any merger, consolidation or reorganization to which JPMorgan Chase Bank, N.A. shall be a party), as trustee of the Commingled Fund.

(e)        The term "trust" shall mean (1) any trust which forms part of a pension, profit sharing, other employee benefit plan (including governmental plans to the extent provided herein) that meets the requirements for qualification under section 401(a) of the Internal Revenue Code, and is exempt from taxation under section 501(a) of the Internal Revenue Code, (2) a "governmental plan" as defined in section 414(d) of the Internal Revenue Code, (3) an "eligible deferred compensation plan" as defined in section 457(b) of the Internal Revenue Code, maintained by an "eligible employer" described in section 457(e)(1) of the Internal Revenue Code, that also qualifies as a governmental plan as described in clause (2) of this subparagraph, or (4) any other collective or commingled investment trust established under regulations of the Comptroller or similar state law or any insurance company separate account if the assets in such collective or commingled trust or separate account consist exclusively of the funds of employee benefit plans qualified under section 401(a) of the Internal Revenue Code or governmental plans under section 414(d) of the Internal Revenue Code, for which, in the case of (1), (2), (3) or (4) above, the Bank or a banking affiliate of the Bank is acting as trustee or co-trustee, as agent or custodian for the trustee or trustees, or as an "investment manager" as defined in ERISA, and which employee benefit plan or governmental plan is administered under one or more written instruments, at least one of which instruments adopts, and incorporates by reference, this Declaration of Trust as part thereof, provided, however, with respect to any plan or governmental unit described in Section 414(d) of the Internal Revenue Code, the Commingled Fund is adopted as part of such plan or governmental

3

CONFIDENTIAL              JPMAFF-LBHI00000003

unit only to the extent required by applicable law for participation of such plan or governmental unit in the Commingled Fund.

(f)     The term "participating trust" shall mean any trust, the assets of which are invested in the Commingled Fund.

(g)     The term "participation" shall mean the interest of any participating trust in the Commingled Fund.

(h)     The term "Unit" shall mean any of the units of participation into which the Commingled Fund is divided pursuant to the provisions of Article V hereof.

(i)     The term "grantor" shall mean the person or entity creating a participating trust or otherwise authorized to act on behalf of a participating trust, or any successor to the grantor.

(j)     The term "bank business day" shall mean a day on which the Bank is open for business in New York City, New York.

(k)     The term "valuation date" shall mean each date as may be duly fixed by the Trustee for the valuation of the Commingled Fund.

(l)     The term "liquidating account" shall mean an account established pursuant to Article X of this Declaration of Trust.

(m)     The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

(n)     The term "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and any reference to a specific section of the Internal Revenue Code shall mean such section as it may be renumbered from time to time.

(o)     The term "Comptroller" shall mean the Comptroller of the Currency, United States Treasury Department.

*Section 1.4.*     **Effect of Declaration of Trust.**  The provisions of this Declaration of Trust, as the same may be amended from time to time, shall control all participations in the Commingled Fund and the rights and benefits of all persons interested in such participations as beneficiaries or otherwise.

*Section 1.5.*     **Effect of Regulations.**  Notwithstanding any of the provisions of this Declaration of Trust, the Commingled Fund shall be administered in conformity with the rules and regulations, prevailing from time to time, of the Comptroller pertaining to the collective investment and

4

reinvestment of trust funds by national banks, all of which shall be deemed to be a part of this Declaration of Trust, and of ERISA.

## ARTICLE II.    PARTICIPANTS IN THE COMMINGLED FUND

No person or entity other than a trust for which the Bank, or a banking affiliate of the Bank, is a trustee, or an investment manager or agent or custodian for the trustees or trustees, whether the Bank is acting alone or in conjunction with another person or persons shall be permitted to invest in the Commingled Fund. The Bank shall not invest any of its own funds in the Commingled Fund, and if, because of a creditor relationship or otherwise the Bank should acquire an interest in a participation, the participation to the extent necessary to liquidate such interest shall be withdrawn on the first date on which such withdrawal can be effected. The Bank shall not have any interest in the Commingled Fund other than in its capacity as trustee or other fiduciary of a participating trust, except to the extent permitted for a temporary period as provided in this paragraph, and except to the extent that may be permitted by rules and regulations of the Comptroller in force and effect from time to time. In no case, however, shall an unsecured advance to a participating trust until the time of the next withdrawal be deemed to constitute the acquisition of an interest by the Bank or the investment of the Bank's funds in the Commingled Fund. The Bank shall not be deemed to have an interest in the Commingled Fund merely because of the fact that it is designated or acting as trustee, depositary or in any other fiduciary capacity under a deed of trust, mortgage indenture, deposit agreement or other instrument under which any of the assets of the Commingled Fund have been issued or are being held, nor merely because of the fact that the Bank owns in its own right other stocks or bonds or other obligations of a person, firm, or corporation, the stocks or bonds or other obligations of which are among the assets of the Commingled Fund. Investment through the medium of the Commingled Fund shall be made only by:

(a) a trust (as defined in section 1.3 hereof) acceptable to the Trustee, but only if there is authorization for the investment of

5

moneys thereof through the medium of the Commingled Fund or any
common, collective or commingled trust fund established, operated
and maintained by JPMorgan Chase Bank, N.A.,

(b) other commingled trust funds which are established, operated
and maintained by JPMorgan Chase Bank, N.A., which shall include
terms for admission thereto substantially as are set forth in the
definition of the term "trust" and this Article II, but only if the trust
instrument shall authorize the investment of moneys thereof through
the medium of the Commingled Fund or any common, collective or
commingled trust fund established, operated and maintained by
JPMorgan Chase Bank, N.A., which is exempt from income taxation
under Section 501(a) of the Internal Revenue Code, and which trust
instrument shall state that the declaration of trust of such fund or
funds shall constitute a part of such trust instrument, and

(c) trusts described in (a) above which shall cease such investment,
pursuant to Section 3.6 of Article III hereof, on the next valuation
date after the Trustee is advised that said trust or the related plan or
plans are not qualified and exempt from income tax under the
aforesaid provisions of the Internal Revenue Code or otherwise
ceases to be a plan described in this Article II.

To the extent of the participation in the Commingled Fund of any of
the entities enumerated in (a), (b), and (c) above, the Commingled Fund
shall constitute a part of the plan or plans of which such participating
trust is a part.  For purposes of this Declaration of Trust, a trust or fund
maintained in connection with a governmental plan within the meaning
of Section 414(d) of the Internal Revenue Code, which has been
established by an employer for the exclusive benefit of its employees or
their beneficiaries for the purpose of distributing to such employees or
their beneficiaries the corpus or income of the funds accumulated under
such plan, if under such plan it is impossible, prior to the satisfaction of
all liabilities with respect to such employees and their beneficiaries, for
any part of the corpus or income to be used for, or directed to purposes
other than the exclusive benefit of such employees or their beneficiary,
shall be treated as, and subject to all the provisions applicable to, a
pension trust forming part of a plan or plans exempt under the
provisions of Section 501(a) of the Internal Revenue Code and shall be

6

CONFIDENTIAL          JPMAFF-LBHI00000006

treated as ceasing to be a qualified pension trust forming part of such a plan or plans when the plan ceases to be described in Section 414(d) of the Internal Revenue Code.  Any plan described in this Article II shall cease to be so described if (i) such plan covers employees some or all of whom are employees within the meaning of Section 401(c)(1) of the Internal Revenue Code, or (ii) such plan is funded by an annuity contract described in Section 403(b) of the Internal Revenue Code; provided, however, this sentence shall not apply to the extent applicable securities law regulations permit the participation of such plan in the Commingled Fund without registration under the Securities Act of 1933.

**ARTICLE III.**        **ADMISSIONS AND WITHDRAWALS**

*Section 3.1*        **Participation Agreement**.  Initial admissions to the Commingled Fund must be approved by the Trustee, and accompanied by a signed participation or other agreement or document acceptable to the Trustee.

*Section 3.2.*        **Units of Participants to be Determinable at All Times**.  Admissions to the Commingled Fund shall be made in such manner, at such times, and in such amounts that the units of participation of each participating trust may at all times be determined.

*Section 3.3.*        **Basis and Time of Admissions and Withdrawals**.  No admission to or withdrawal from the Commingled Fund shall be permitted except on the basis of the unit value determined as prescribed in Article VI hereof, and no participation shall be admitted to or withdrawn from the Commingled Fund except as of a valuation date, and as hereinafter provided.  For the purpose of subsequent admissions to and withdrawals from the Commingled Fund, the value of any investment transferred to a liquidating account shall be excluded.  Notwithstanding anything in this Declaration of Trust to the contrary, each admission to the Commingled Fund shall be made as of such valuation date, and contributions to the Commingled Fund in respect of each such admission shall be made as of such date, as the Trustee in its sole and absolute discretion may determine from time to time.  Admissions and withdrawals of participation shall be effected promptly after the valuation has been determined, subject to the provisions of this Declaration of Trust.

7

Schedule 1 hereto sets forth the Trustee's policy with respect to (i) the timing of admissions and withdrawals (ii) the frequency of valuation dates and (iii) the circumstances in which withdrawals may be suspended.

Section 3.4.    **Allocation of Costs to Participants being admitted or Withdrawn**. To the extent not prohibited by the rules, regulations and policies of the Comptroller, the Trustee may charge the cost of admission to and/or withdrawal from the Commingled Fund to a participating trust being admitted or withdrawn to mitigate the negative impact on the other participating trusts. The amount of the costs and expenses charged to a participating trust in respect of an admission to or withdrawal from the Commingled Fund by such participating trust may be calculated as a fixed dollar amount and/or a fixed percentage of the assets contributed to or withdrawn from the Commingled Fund rather than the actual costs and expenses incurred by the Commingled Fund.

Section 3.5.    **Notice of Intention with Respect to Admissions and Withdrawals.**  No investment shall be made in a participation in the Commingled Fund and no withdrawal of a participation or any part thereof shall be made therefrom unless, on or before the applicable valuation date, a written request or notice of intention to participate or to make such withdrawal shall have been entered in the records of the Trustee and approved by the Trustee in such manner as the Trustee shall from time to time prescribe, provided that the prior notice period for a withdrawal may not exceed one year.  No such request or notice of investment or withdrawal may be canceled or countermanded after the valuation date. Any request for partial or complete withdrawal of a participating trust which is not fully effected on a valuation date shall be treated by the Trustee as renewed for each succeeding valuation date until completion of the requested withdrawal. The Trustee's policy with respect to the period of prior notice required for a withdrawal is set forth in Schedule 1 hereto.

Section 3.6.    **Manner of Making Admissions**.  Admissions to the Commingled Fund may be made, at the option of the Trustee, in whole or in part either in

8

cash or in kind in assets of the participating trust, at the current value of such assets as determined by the Trustee in its sole discretion.

Section 3.7.       **Satisfaction of Participations Withdrawn**. Participations withdrawn in whole or in part may, at the option of the Trustee, be satisfied by distribution from the Commingled Fund to the participating trust in cash or in kind or partly in cash and partly in kind.

The amount distributed to the participating trust upon the withdrawal of a participation in whole or in part shall be equal to the value of the participation, or part thereof, on the date as of which such withdrawal is effective, after giving effect to any charges imposed pursuant to Section 3.4 hereof.

At no time prior to the satisfaction of all liabilities with respect to applicable employees and their beneficiaries shall any part of the corpus or income of the Commingled Fund which equitably belongs to a participating trust be used for or diverted to purposes other than for the exclusive benefit of such employees and their beneficiaries.  Payments by the Trustee to a participating trust that qualifies under Article II of this Declaration of Trust shall be deemed to be for the exclusive benefit of employees and their beneficiaries.

Section 3.8.       **Separation if Participating Trust is Not Qualified**.  If at any time it should be determined that any participating trust is not qualified under Article II of this Declaration of Trust, the Trustee, at the valuation date next following the date upon which the Trustee is advised that such participating trust is not qualified, shall withdraw from the Commingled Fund the participation of such participating trust.

Section 3.9.       **Income Accrued But Not Collected**.  The Trustee shall have the right to charge back to and collect from each participating trust or the beneficiaries thereof that part of any amount paid to such participating trust upon the withdrawal of Units which represented a payment of accrued income that was not subsequently collected by the Trustee at the time fixed for its payment.

9

**ARTICLE IV.**          **INVESTMENT AND OTHER POWERS OF THE TRUSTEE**

*Section 4.1.*          **Title, Custody and Location of Investments**.  The ownership of all of the assets in the Commingled Fund shall be vested solely in the Bank as Trustee and shall be considered as assets held by it as Trustee.
The assets of the Commingled Fund representing foreign investments may be kept by the Bank in any of its foreign offices or in the custody of other persons, custodians and agents throughout the world.

*Section 4.2.*          **Investments**.  In investing and reinvesting the assets of the Commingled Fund, it is intended that the Trustee shall invest primarily in major fixed income classes with the objective of creating a diversified portfolio in obligations of corporations, governments, and other entities, domestic and foreign.

*Section 4.3.*          **Additional Investment Provisions**.  (a)  In furtherance of the investment intent as set forth in Section 4.2 hereof, the Trustee shall have the power to:

1. invest and reinvest, to the extent not prohibited by applicable law, any moneys at any time forming any part of the Commingled Fund in any property, real or personal, tangible or intangible, or part interest therein, wherever situate throughout the world, whether ownership is recognized by virtue of domestic or foreign laws, without regard to the proportion such property or property of a similar character held in the Commingled Fund may bear to the entire amount so held, including, but not limited to, domestic or foreign, capital, common and preferred stocks, warrants, convertible securities, personal, corporate, partnership, trust and governmental obligations, derivative instruments and transactions of any kind, trust and participation certificates, oil, mineral or gas properties, royalty interests or rights, including equipment pertaining thereto, leaseholds, mortgages and other interests in realty, notes and other evidences of indebtedness or ownership, secured or unsecured, contracts and choses in action and the capital or common stock of any entity organized or otherwise acquired pursuant to subsection (j) of Section 4.4 hereof.

10

2. sell, exchange, lend, convey, transfer or dispose of options with respect to, any property, whether real or personal, domestic or foreign, at any time held by it, and any sale may be made by private contract or by public auction, and for cash or upon credit, or partly for cash and partly upon credit, as the Trustee may deem advisable, and no person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition;

3. purchase, sell, hold and generally deal in and with all futures contracts (and any options on such contracts), whether foreign or domestic, and including without limitation futures contracts and forward contracts with respect to financial instruments, currencies and any group or index of securities (or any interest therein based upon the value thereof), and in connection therewith to deposit any property as collateral with any broker, dealer, agent or other financial institution, to grant security interests in such collateral and to execute or cause to be executed any and all required documents (including without limitation customer account agreements), all on such terms and conditions as the Trustee shall determine;

4. to the extent not prohibited by applicable law, invest in deposits of the Bank (or in an affiliate) which deposits bear a reasonable rate of interest;

5. grant, purchase, sell, exercise, permit to expire, and otherwise to acquire, dispose of, hold and generally deal in any manner with and in all forms of options whether foreign or domestic, and in connection therewith to deposit any property as collateral with any broker, dealer, agent or other financial institution, to grant security interests in such collateral and to execute or cause to be executed any and all required documents all on such terms and conditions as the Trustee shall determine;

6. enter into swap and other derivative transactions of any kind, whether foreign or domestic, including without limitation interest rate, currency and equity swaps and caps and floors and in connection therewith to deposit any property or collateral with

11

any broker, dealer, agent or other financial institution, to grant security interests in such collateral and to execute or cause to be executed any and all required documents, all on such and terms and conditions as the Trustee shall determine;

7.  engage in "short sales" with respect to any property, domestic or foreign, and in connection therewith to deposit any property as collateral with any broker, dealer or agent, to grant security interests in such collateral and to execute or cause to be executed any and all required documents, all on such terms and conditions as the Trustee shall determine; and

8.  invest and reinvest all or any part of the Commingled Fund through the medium of any common, collective or commingled trust fund established, operated and maintained by JPMorgan Chase Bank, N.A., as the same may have heretofore been or may hereafter be established or amended, which is exempt under the provisions of Section 501(a) of the Internal Revenue Code, and during such period of time as an investment through any such medium shall exist the declaration of trust of such fund shall constitute a part of this Declaration of Trust.

The Trustee shall invest the assets of the Commingled Fund in a manner consistent with the laws of the State of New York applicable to corporate trustees and the rules and regulations of the Comptroller in effect from time to time applicable to a national banking association in the exercise of its trust powers, except to the extent the laws of said State are preempted by the provisions of ERISA, in which case the Trustee shall invest the assets of the Commingled Fund in a manner consistent with the provisions of ERISA and said rules and regulations of the Comptroller.  Except as aforesaid, the Trustee shall not be limited or restricted in the making of investments to those of the character authorized by the laws of any State or foreign country or by any rule of court or other authority for trust investments.  In investing and reinvesting as herein above provided, the Trustee may do so irrespective of the size of the investment, the size, location, or nature of the enterprise involved, the ready marketability of the investment, the fact that the investment may be in foreign securities and enterprises controlled by the laws of foreign countries whose laws may not be

12

similar to those of the United States of America and whose laws may impose foreign taxation on the income or assets of the Commingled Fund, and the Trustee in so investing and reinvesting shall not be liable for any loss to, depreciation in the value of, or foreign taxation of, the Commingled Fund.

(b)  To the extent not prohibited by applicable law, the Trustee may acquire for the Commingled Fund as of any valuation date any property of a participating trust which would then be appropriate for purchase by the Commingled Fund.   Each such acquisition shall be made at the then fair value of such property, as determined by the Trustee.

(c)  All income of the Commingled Fund shall be added to the principal of the Commingled Fund and invested and reinvested as a part thereof.

(d) The decision of the Trustee as to whether or not an investment is of a type which may be purchased for the Commingled Fund shall be conclusive.

*Section 4.4.*    **Additional Powers of the Trustee**.  In addition to the powers otherwise herein granted to the Trustee, the Trustee is authorized and empowered in its discretion, but not by way of limitation:

(a) to retain any property, real or personal, tangible or intangible, received as a result of the exercise of any of the powers herein granted, whether or not investment in such property is authorized by Section 4.3;

(b) to acquire, retain, manage, operate, repair, develop, preserve, improve, mortgage or lease for any period any property or any oil, mineral or gas properties, interests or rights held by the Trustee or held by any entity organized by it or in which it has an interest pursuant to subsection (j) of this Section 4.4, upon such terms and conditions as the Trustee deems proper, either alone or by joining with others; using other trust assets for any such purposes if the Trustee deems it advisable; to modify, extend, renew or otherwise adjust any or all of the provisions of any such mortgage or lease, including the waiver of rentals, if the Trustee deems it advisable; and to make provision for the amortization of the investment in or depreciation of the value of such property if the Trustee deems it

13

advisable; from time to time to the extent not prohibited by applicable law advance such sums of money as may be required for the maintenance of any real property or interest therein; to vacate and abandon any real property; to develop, alter, improve or repair any real property and to adjust boundaries thereon; to demolish or erect buildings on any real property and to grant easements thereon; to partition and to pay any sums necessary for equality of partition in connection with any real property and to perfect the title thereof;

(c) to compromise, compound and settle any debt or obligation due to or from it as Trustee hereunder and to reduce the rate of interest on, to extend or otherwise modify, or to foreclose upon default or otherwise enforce any such obligation;

(d) to vote in person or by proxy on any stocks, bonds or other securities held by it; to exercise any options appurtenant to any stocks, bonds or other securities for the conversion thereof into other stocks, bonds or securities, or to exercise any rights, warrants or similar instruments to subscribe for additional stocks, bonds or other securities and to make any and all necessary payments therefor; to join in, or to dissent from, and to oppose, the reorganization, recapitalization, consolidation, liquidation, sale or merger of corporations or properties in which it may be interested as Trustee, upon such terms and conditions as it may deem advisable; and to appoint one or more individuals or corporations as voting trustees under voting trust agreements and to delegate to such voting trustees discretion to vote;

(e) to make, execute, acknowledge and deliver any and all deeds, leases, mortgages, assignments, documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(f) to borrow or raise moneys at any time and from time to time for the purposes of the Commingled Fund to the extent that the Trustee shall deem desirable and upon such terms and conditions as the Trustee in its absolute discretion may deem desirable or proper, and for any sum so borrowed to issue its promissory note as Trustee and to secure the repayment thereof by pledging all or any part of the

14

assets of the Commingled Fund; and no person loaning money to the Trustee shall be bound to see to the application of the money loaned or to inquire into the validity, expediency or propriety of any such borrowing;

(g) to cause or authorize any investments from time to time held by it to be registered in, or transferred into its name as Trustee, or the name of its nominee, or in the name of any other nominee, or to retain them unregistered or in form permitting transferability by delivery; and to deposit any such investments in or with any depositary, sub-custodian, clearing corporation, or any central system for handling of investments, or any nominee thereof; but the books and records of the Trustee shall at all times show that all such investments are part of the Commingled Fund;

(h) to loan any securities at any time held by it to brokers, dealers or other financial institutions upon such security as the Trustee determines, and during the term of any such loan to permit the loaned securities to be transferred into the name of and voted by the borrower or others, and the Trustee may receive reasonable compensation for providing such securities lending services to the Commingled Fund, in addition to any compensation which would be received by the Trustee from all other services and sources;

(i) to employ such counsel, accountants, custodians, sub-custodians, depositaries, brokers, appraisers, agents and advisers, including investment advisers which may or may not be affiliates of the Bank, or others as it shall deem advisable, and to pay their reasonable expenses and compensation;

(j) to form a corporation or corporations or any other entity under the laws of any jurisdiction, to participate in the forming of any such corporation or corporations or entity or acquire an interest in or otherwise make use of any corporation or corporations or entity already formed, for the purpose of investing in and holding title to any property which the Trustee is authorized to acquire under Section 4.2 and Section 4.3, and with the power to exercise with respect thereto any or all of the powers, functions and duties set forth in this Section 4.4;

15

(k) in the acquisition, disposition and management of investments for or under this trust to acquire and hold any securities or other property even though the Bank, in its individual or any other capacity, shall have invested or may thereafter invest its own or other funds in the same securities or related property or related securities or other property the interest, principal or other avails of which may be payable at different rates or different times or may have a different rank or priority; and to acquire and hold any securities or other property even though in connection therewith the Bank, in its individual or any other capacity, may receive compensation reasonably and customarily due in the course of its regular activities;

(l) to exercise all conversion, subscription, voting and other rights of whatsoever nature pertaining to any such property and to grant proxies, discretionary or otherwise, with respect thereto;

(m) to abandon, settle, compromise, extend, renew, modify, release, adjust or submit to arbitration in whole or in part and without the order or decree of any court any and all claims whether such claims shall increase or decrease the assets held hereunder;

(n) in the event of any default in respect of any investment held hereunder, to exercise such powers in the collection or realization of such investment as the Trustee shall determine including without limitation the following specification:  in the event of foreclosure or any proceedings for the collection or realization of any mortgage or mortgages held hereunder to exchange any such mortgage or mortgages for any other property; to purchase such property at any foreclosure or other sale or to acquire such property by deed without foreclosure; to retain property bought in under foreclosure or taken over without foreclosure for such period of time as may be deemed proper; to delegate to any person or corporation any or all powers of the Trustee, discretionary or otherwise, in respect of the collection or realization of any investment held hereunder;

(o) for the purpose of investing in and holding title to real or personal property or part interests therein, wherever situate, to appoint one or more individuals or corporations as a co-trustee or sub-trustee or to join with one or more individuals or corporations, including itself, acting as trustees of other pension trusts, profit sharing trusts or

16

employee benefit trusts in the establishment of one or more sub-trusts; such co-trustees or sub-trustees upon being appointed may be authorized to act with one or more than one or all of the powers, authorities, discretions, duties and functions of the Trustee under this Article IV, including without limitation by the reference thereto power to receive and hold property, real or personal, or part interest therein, oil, mineral or gas properties, royalty interests or rights, including equipment pertaining thereto, leaseholds, mortgages and other interests in realty, situated in any State in which the co-trustee or sub-trustee is authorized to act as trustee of pension trusts, profit sharing trusts or other employee benefit trusts; and to pay the reasonable expenses and compensation of such co-trustee and sub-trustee;

(p) to participate in and consent to any plan of reorganization, consolidation, merger, combination, dissolution, recapitalization, liquidation or similar plan and any action thereunder, including without limitation by the specification thereof, the deposit of any property with any protective, reorganization or similar committee, the delegation of discretionary powers thereto, the sharing in the payment of its expenses and compensation and the payment of any assessments levied with respect to such property; to receive and retain property under any such plan whether or not the same is of the class in which fiduciaries are authorized by law or any rule of court to invest funds;

(q) if not otherwise prohibited by ERISA (or if prohibited, subject to an exemption under ERISA),or other applicable law, to invest in any investment vehicle with respect to which (i) the Trustee or any of its affiliates has participated in any way in the issuance, underwriting or original sale thereof; (ii) the Trustee or any of its affiliates provides investment advisory, administrative, distribution, or other services, either directly or indirectly, to the investment vehicle or to the issuer of the investment vehicle; (iii) a part or all of the proceeds received by the issuer or seller are used or to be used to satisfy any obligation to the Trustee or any of its affiliates; or (iv) the Trustee or any of its affiliates, any entity organized, managed or advised by the

17

CONFIDENTIAL                    JPMAFF-LBHI00000017

Trustee or any of its affiliates, or in which the Trustee or any of its affiliates or any entity organized, managed or advised by the Trustee or any of its affiliates, has an interest, whether or not such investment vehicle is controlled by the Trustee or any of its affiliates; and

(r) to do all acts whether or not expressly authorized which it may deem necessary or proper for the protection of the property held hereunder or otherwise for the benefit of the Commingled Fund.

Section 4.5.  **Third Persons Not Obliged to Follow Funds.**  No person dealing with the Trustee shall be under any obligation to make inquiry concerning the propriety of the action of the Trustee on behalf of the Commingled Fund or be concerned with the application of any payments made to the Trustee for the Commingled Fund.

---

**ARTICLE V.**  **UNITS OF PARTICIPATION; ALLOCATION OF INCOME, PROFITS & LOSSES; DOCUMENTATION; NONASSIGNABILITY**

Section 5.1.  **Proportionate Interest**. Each participant in the Commingled Fund shall have a proportionate undivided interest in all of the assets of the Commingled Fund.

Section 5.2.  **Division into Units**.  The Commingled Fund shall be divided into units and the proportionate interest of each participant shall be evidenced by the number of units and fractions of a unit allocated to it based upon the amount of the moneys of such participant paid into the Commingled Fund.  The original value of each unit of participation shall be determined by the Trustee.  When additional funds are added to the Commingled Fund, the amount so added shall be equal to the then value of one or more of such units and fractions of a unit and the number of units shall be increased accordingly.  Each unit of participation shall have a proportionate beneficial interest in the Commingled Fund and none shall have priority or preference over any other.  Final fractions of a cent may be ignored in making payments of cash for both admissions and withdrawals.

18

Section 5.3. **Allocation of Income, Profits & Losses**. No participant shall be deemed to have individual ownership of any asset in the Commingled Fund, but each shall have only a proportionate undivided interest in all of the assets of the Commingled Fund and shall share ratably with the others in the net income, profits or losses thereof. Each unit shall represent an equal right to share in the assets of the Commingled Fund and in its net earnings, profits and losses.

Section 5.4. **Documentation**. Unless permitted by the Comptroller, by rule, regulation or in some other manner, the Bank as Trustee or otherwise shall not issue any certificate or other document evidencing a direct or indirect interest in the Commingled Fund in any form.

Section 5.5. **Nonassignability**. No participating trust shall have the power to assign its participation, or any part thereof, in the Commingled Fund. The interests of the participating trusts in the assets of each Commingled Fund and in the net earnings, profits and losses thereof shall not be subject to garnishment, attachment, levy, execution or other legal process of any kind for the debts or defaults of the trustee(s) of any participating trust, or of any person, natural or legal, having an interest in any participating trust.

**ARTICLE VI.**    **VALUATION OF THE COMMINGLED FUND AND THE UNITS THEREOF**

Section 6.1. **Frequency of Valuation**. As of the close of business on the last bank business day of each month (the "regular valuation date"), the Trustee shall determine the value of the Commingled Fund and the units thereof in the manner prescribed in this Declaration of Trust. The Trustee may determine the value of the Commingled Fund and the units thereof at such other intervals and upon such other dates as it shall determine; provided that, if any such other date is selected for such purpose, at the time of selection, a notation thereof shall be entered, not later than five (5) business days prior to the date selected, in the records of the Trustee related to the Commingled Fund. Each such date as of which the value of the assets of the Commingled Fund and the units thereof shall be determined shall be known as a "valuation date". A reasonable period not to exceed seven bank business days following each valuation

19

date may be used to make the computations necessary to determine the value of the Commingled Fund and of the participation therein.

*Section 6.2.*   **Method of Valuation of Commingled Fund**.  The net asset value of the Commingled Fund shall be determined:

(a)  by adding together:

  (1)  The value of the assets of the Commingled Fund, determined on the basis of their current market or fair values as determined in good faith by the Trustee (the Trustee's policy with respect to the method of valuing assets is set forth in Schedule 2 hereto, as it may be amended from time to time);

  (2)  The value of any rights, warrants or dividends (whether payable in cash or property, and including liquidating dividends) which may have been declared but unpaid as of the valuation date, in respect of any security which has been valued ex-rights, ex-warrants or ex-dividends; and

  (3)  The amount of any current interest accrued but unpaid on any bonds or other obligations; and

(b)  by deducting from the above sum all expenses and liabilities of the Commingled Fund due or accrued as of the valuation date, as well as any other charge, reserve or debit item which is an appropriate deduction under accepted accounting principles.

The figure thus arrived at shall be the value of the Commingled Fund as of the valuation date as of which such valuation is made.

*Section 6.3.*   **Method of Valuation of Units**.  The value of each unit shall be determined by dividing the net asset value of the Commingled Fund by the number of applicable units outstanding on the valuation date. Fractions of less than one cent may be omitted.

*Section 6.4.*   **Report of Valuation**.  As of each valuation date, the Trustee shall prepare a report showing:

(a)  A description of each security issue or investment, its value as carried on the books of the Commingled Fund, and its value as determined upon such valuation date (if different); and

(b)  The number of units outstanding and the value per unit as determined upon such valuation date.  Such reports shall be retained as permanent records of the Commingled Fund.

20

**ARTICLE VII.**        **NO DISTINCTION BETWEEN PRINCIPAL AND INCOME**

In the management and administration of the Commingled Fund, no distinction shall be made between principal and income.

**ARTICLE VIII.**        **RECORDS, AUDITS AND INSPECTION**

*Section 8.1.*        **Accounting Records; Fiscal Year.**  The accounting policy followed by the Commingled Fund is in accordance with accounting principles generally accepted in the United States of America. The Bank's records shall reflect the fiscal year of the Commingled Fund as selected by the Bank.

*Section 8.2.*        **Participation Records.**  Records shall be maintained for the Commingled Fund which shall show with respect to each participant:

(a)  The date of each admission to the Commingled Fund, the number of units allotted and the amount paid therefor;

(b)  The date of each withdrawal, the number of units redeemed, the amount paid on redemption to the participant and whether payment was made in cash, in kind or partly in cash and partly in kind:

(c)  The number of units currently outstanding; and

(d)  The share in any liquidating account.

*Section 8.3.*        **Audit of Accounts.**  The Bank at least once during each period of twelve months shall cause an audit to be made of the Commingled Fund and of each liquidating account by auditors who are independent public accountants or regular employees of the Bank, designated by the Bank for that purpose.  Such auditors shall be responsible only to the Board of Directors of the Bank.  The compensation and reasonable expenses of any independent public accountants may be charged to the Commingled Fund, but the Bank may not charge the Commingled Fund with the expense of any audit made by its own employees. The report of such audit shall include disclosure of the Commingled Fund's fees and expenses, a list of the investments comprising the Commingled Fund and of each liquidating account at the time of the audit and shall show the valuation placed on each item on such list by the Trustee as of the date of the audit, a statement of purchases, sales and any other investment

21

CONFIDENTIAL        JPMAFF-LBHI00000021

changes and of receipts and disbursements since the last audit, and appropriate comments as to any investment in default as to payment of principal or interest.  The report of such audit shall include any other information required by ERISA or the regulations thereunder.

Section 8.4.  **Approval or Disapproval of Report of Audit**.  The Bank shall send a copy of the report of the latest such audit, annually, to each grantor.  Within 90 days from the date of receipt of such report, any grantor may file with the Trustee either its written approval, or its written disapproval with the reasons therefor, of the report so rendered.  Upon the filing of such approval of the Trustee's report, or at the expiration of 90 days after the receipt of such report if written disapproval thereof shall not have been filed with the Trustee, the report of the Trustee shall be deemed to have been approved and the Trustee shall be relieved from all liability, responsibility and accountability for its acts as set forth in said report.

Section 8.5.  **Inspection of Records**.  All accounting records, reports of valuation and audits under this Declaration of Trust and liquidating account records pertaining to the Commingled Fund shall be subject to inspection, during the Bank's normal business hours, by any grantor or any person duly designated by a grantor for that purpose.

## ARTICLE IX.    MANAGEMENT FEES AND EXPENSES

Section 9.1    The Bank may charge, either to the Commingled Fund or to any participating trust, a reasonable fee for the management of the Commingled Fund and may receive, either from the Commingled Fund or from any participating trust, any additional fees, commissions or compensation of any kind, to the extent permitted by applicable law.

Section 9.2    All reasonable expenses incurred by the Trustee in the operation and administration of the Commingled Fund may be charged to and paid from the Commingled Fund, to the extent not prohibited by applicable law.  The cost of establishing or reorganizing the Commingled Fund, and the cost of printing, publication and distribution of the report prescribed by Section 8.3 hereof, shall be borne by the Bank.

22

CONFIDENTIAL    JPMAFF-LBHI00000022

**ARTICLE X.**        **LIQUIDATING ACCOUNTS**

*Section 10.1.*        **Transfer of Investments to Liquidating Account**.  The Trustee in its discretion may cause to be transferred to a liquidating account any investment which the Trustee deems advisable to distribute in kind or to liquidate for the benefit of the participants entitled thereto.

*Section 10.2.*        **Schedules**.  At the time of the creation of each liquidating account the Trustee shall prepare a schedule showing the interest of each participant therein.  When the assets of such liquidating account shall have been completely distributed such schedule shall be thereafter held as part of the permanent records of the Commingled Fund.

*Section 10.3.*        **Liquidating Accounts in Valuations and Reports**.  For the purpose of admissions to and withdrawals from the Commingled Fund, the value of any investment transferred to a liquidating account shall be excluded.  The Bank shall include in any subsequent report of audit a report for each liquidating account established in connection with the Commingled Fund.

*Section 10.4.*        **Distribution of Cash in Liquidating Accounts**.  All net cash realizations in each liquidating account shall be distributed ratably to the participants in accordance with the interests of the participants in the liquidating account.

**ARTICLE XI.**        **FILING OF DECLARATION OF TRUST AND AMENDMENTS**

A copy of this Declaration of Trust shall be kept on file at the principal office of the Bank, and a copy shall be sent to each grantor.  This Declaration of Trust may be amended from time to time by the Bank.  Any amendment shall be binding upon all persons, including, but not limited to, all participating trusts, participants and grantors.  Each amendment shall be filed in the principal office of the Bank with the original Declaration of Trust, and notice thereof shall be sent to all grantors.  If, within 30 days after the receipt of any notice of amendment, whether or not such amendment has already been made effective, any grantor shall object thereto and request that its participation be withdrawn from the Commingled Fund, the Trustee shall effect such withdrawal at or as of the next valuation date.  The

23

Declaration of Trust and any amendments thereto shall be available for inspection during the Bank's normal business hours by any grantor or any person designated by a grantor for that purpose.

**ARTICLE XII.**          **TERMINATION OF THE COMMINGLED FUND**

The Bank in its discretion may direct the termination of the Commingled Fund at any time.  Notice of such termination shall be sent to all grantors. After the direction to terminate the Commingled Fund, all distributions therefrom shall be made in the same manner as if the Commingled Fund were a liquidating account.

**ARTICLE XIII.**          **ACCEPTANCE OF TRUST AND TRUST FUND**

JPMorgan Chase Bank, N.A. by execution of this Declaration of Trust hereby signifies its acceptance of the trust and trust fund created hereunder and acknowledges that as Trustee it is a fiduciary with respect to each participating trust which is an employee benefit plan subject to ERISA.

**ARTICLE XIV.**          **NEW YORK LAW TO CONTROL**

All questions relating to the construction, validity, operation and effect of this Declaration of Trust shall be governed by the laws of the State of New York, and all provisions hereof shall be administered according to the laws of said State, except as said laws are superseded by ERISA, and shall be adjudicated solely by the proper tribunals of said State or of the United States.

**ARTICLE XV.**          **MISCELLANEOUS**

*Section 15.1.*          **Successors.**   This Declaration of Trust and all of the provisions hereof shall be binding upon and inure to the benefit of the Trustee and its successors, and each grantor and its successors.

*Section 15.2 .*          **Non-Alienation.**   Neither the principal of the Commingled Fund nor any

24

of the income therefrom, nor interest in the Commingled Fund whatever, shall be subject to any conveyance, transfer or assignment by any participating trust, participant or beneficiary, nor shall the same be pledged as collateral security for any debt of any participating trust, participant or beneficiary, nor shall the same be subject to any claim of any creditor of any participating trust, participant or beneficiary through legal process or otherwise.  It is the intention to place the absolute title to all property which shall constitute the assets of the Commingled Fund in the Trustee, with power to pay out the same and distribute the Commingled Fund assets as provided in this Declaration of Trust.   Any attempted sale, conveyance, assignment or pledge of any of the funds or properties held in this Commingled Fund, or any part thereof, or of any income from this Commingled Fund, by any participating trust, participant or beneficiary shall be null and void, and shall not be recognized by the Trustee.

*Section 15.3.*    **Representation by the Trustee in Judicial Proceedings**.   In any judicial proceeding (except any accounting with respect to the Trustee's records and reports under Article VIII) affecting any property or security constituting in whole or in part the Commingled Fund, each participating trust and each and every person having or claiming to have any interest in any such participating trust and in the Commingled Fund shall be deemed to be fully represented by the Trustee for all purposes if the Trustee shall be a party to such proceeding, and as such duly before the tribunal in which such proceeding shall be pending.

*Section 15.4.*    **Effect of Mistakes**.   No mistake made in good faith and in the exercise of due care in connection with the administration of the Commingled Fund shall be deemed to be a violation of this Declaration of Trust or of the regulations of the Comptroller if, promptly after the discovery of the mistake, the Trustee shall take whatever action may be practicable under the circumstances to remedy the mistake.

*Section 15.5.*    **Notices**.   Where any notice may be or is required to be given by the Trustee, to any person, such notice shall be deemed given to the extent permitted by applicable law then in effect, when served personally either within or without the State of New York, or by depositing the same in the United States Mails, postage prepaid, addressed to such person at the last address of such person known to the Trustee.

CONFIDENTIAL                    JPMAFF-LBHI00000025

IN WITNESS WHEREOF, JPMorgan Chase Bank, N.A. has caused this Declaration of Trust to be signed and its seal to be hereunto affixed and duly attested by its proper officers thereunto duly authorized on the _16_ day of _Feb_ , 2007.

**JPMORGAN CHASE BANK, N.A.**

By: _Mary A. Simon_
      Vice President

(Corporate Seal)

Attest:

STATE OF NEW YORK    )
                                    : ss.:
COUNTY OF NEW YORK )

On this _16_ day of _February_ 2007, before me personally came _Tracy Simons_, to me known, who, being by me duly sworn, did depose and say that [s]he resides at _245 Park Ave, NY, NY_ ; that [s]he is a Vice President of JPMORGAN CHASE BANK, N.A., the corporation described in and which executed the above instrument; that [s]he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that [s]he signed [his/her] name thereto by like authority.

_Debra L. Ogden_

DEBRA L. OGDEN
Notary Public, State of New York
No. 01OG6080433
Qualified in Queens County
Commission Expires September 16, 20_10_

26

**Schedule 1**

**Valuation Date**

The Trustee has determined that the net asset value of the Commingled Fund and the units thereof shall be determined as of the close of business at the end of each bank business day.

**Prior Notice of Withdrawal**

Written notice of an intention to withdraw must be received by the Trustee not later than 2:30 p.m. Eastern Standard Time on the valuation date on which such withdrawal is to be effective or such other time as the Trustee may announce from time to time.

**Settlement of Admissions and Withdrawals**

Contribution amounts for admissions to the Commingled Fund are generally payable one day following the effective valuation date of such admission.

The proceeds of a withdrawal from the Commingled Fund are generally payable one day following the effective valuation date of such withdrawal.

**Suspension of Withdrawals**

The Trustee may suspend participants' ability to withdraw from the Commingled Fund when (i) trading on the New York Stock Exchange or other exchange on which the Commingled Fund's underlying securities are traded (an "Applicable Exchange") is restricted, (ii) the New York Stock Exchange or other Applicable Exchange is closed, (iii) applicable law permits, (iv) the Comptroller or other regulatory authority has permitted a suspension, (v) an emergency exists as determined by the Comptroller or other regulatory authority, (vi) a suspension would be consistent with the nature of the Commingled Fund, (vii) a suspension is required for a fair and orderly liquidation, or (viii) banks in New York City, New York are authorized or required to be closed for business.

CONFIDENTIAL                    JPMAFF-LBHI00000027

**Schedule 2**

**Method of Valuation of Investments**

To the extent that the Commingled Fund has any of the following investments, the Trustee intends to use the following method of valuation.

Listed securities are valued at the last sale price on the exchange on which they are primarily traded.  The value of the National Market Systems equity securities quoted by the NASDAQ Stock Market shall generally be the NASDAQ Official Closing Price.

Unlisted securities are valued at the last sale price provided by an independent pricing agent or the principal market maker.

Listed securities for which the latest sales prices are not available are valued at the mean of the latest bid and ask price as of the closing of the primary exchange where such securities are normally traded.

Fixed income securities (other than convertible bonds) with a maturity of 61 days or more held by the Commingled Fund will be valued each day based on readily available market quotations received from independent or affiliated commercial pricing services. Such pricing services will generally provide bidside quotations.

Convertible bonds are valued at the last sale price on the primary exchange on which the bond is principally traded.

All short-term securities with a remaining maturity of sixty days or less are valued using the amortized cost method, which approximates market value.

When valuations are not readily available, securities and real estate owned investments are valued at fair value as determined in accordance with procedures adopted by the Trustee. Such procedures may include the use of independent pricing services or affiliated advisor pricing, which use prices based upon yields or prices of securities of comparable quality, coupon, maturity and type, indications as to values from dealers, operating data, and general market conditions.

Investments in other Commingled pension Trust Funds of the Trustee are valued at the net asset

CONFIDENTIAL          JPMAFF-LBHI00000028

value per unit.

Trading in securities on most foreign exchanges and over-the-counter markets is normally completed before the close of the domestic market and may also take place on days when the domestic market is closed. If events materially affecting the value of foreign securities occur between the time when the exchange on which they are traded closes and the time when the Commingled Fund's net assets are calculated, such securities will be valued at fair value in accordance with procedures adopted by the Trustee.

Listed options on debt securities traded on U.S. option exchanges shall be valued at their closing price on such exchanges. Futures on debt securities and related options traded on commodities exchanges shall be valued at their closing prices as of the close of such commodities exchanges. Options and futures traded on foreign exchanges shall be valued at the last sale or close price available prior to the calculation of the Commingled Fund's net asset value.

Non-listed over-the-counter options and swaps shall be valued at the closing prices provided by a counterparty or third-party broker.

Repurchase Agreements — each repurchase agreement is valued at amortized cost.

Foreign Currency Translations — foreign currency amounts are translated into U.S. dollars at the prevailing exchange rates, or at the mean of the current bid and asked prices of such currencies against the U.S. dollar as quoted by a major bank. The market value of investment securities and other assets and liabilities are translated at the exchange rate as of the valuation date. Purchases and sales of investment securities, income and expenses are translated at the exchange rate prevailing on the respective dates of such transactions.

Forward Foreign Currency Exchange Contracts – forward foreign currency exchange contracts are adjusted by the daily exchange rate of the underlying currency and any gains or losses are recorded for financial statement purposes as unrealized appreciation or depreciation until the contract settlement date. When the forward contract is closed, or the delivery of the currency exchange is made or taken, the Commingled Fund records a realized gain or loss equal to the difference between the proceeds from (or cost of) the closing transaction and the Commingled Fund's basis in the contract.

29

### AMENDMENT TO
### DECLARATION OF TRUST FOR THE
### COMMINGLED PENSION TRUST FUND
### (Core Bond) OF JPMORGAN CHASE BANK, N.A.

WHEREAS, JPMorgan Chase Bank, N.A., a national banking association (the "Bank"), maintains the Commingled Pension Trust Fund (**Core Bond**) of JPMorgan Chase Bank, N.A., pursuant to an Amended and Restated Declaration of Trust effective February 16, 2007 (the "Declaration of Trust").

WHEREAS, Article XI of the Declaration of Trust provides that the Declaration of Trust may be amended by the Bank from time to time.

NOW, THEREFORE, the Bank hereby adopts this Amendment to the Declaration of Trust for the Commingled Pension Trust Fund (**Core Bond**) of JPMorgan Chase Bank, N.A., to be effective as of July 24, 2008 (the "Effective Date"), and the Declaration of Trust is hereby amended as follows:

1.  As of the Effective Date, Schedule 1 and Schedule 2 of the Declaration of Trust shall be revised as follows:

*Schedule 1*          At the end of the first paragraph of Schedule 1, add the following:

", and such other dates as the Trustee may determine."

*Schedule 2*          Delete the seventh paragraph of Schedule 2 and replace it with the following:

"All short-term securities with a remaining maturity of sixty days or less are valued at fair market as determined in good faith by the Trustee."

2.  In all other respects the terms and conditions of the Declaration of Trust shall continue in full force and effect.

IN WITNESS WHEREOF, JPMorgan Chase Bank, N.A. has caused this Amendment to be signed and its seal to be hereunto affixed and duly attested by its proper officers duly authorized on the __24th__ day of ____July____, 2008.

**JPMORGAN CHASE BANK, N.A.**

By: _____

Vice President

(Corporate Seal)

Attest:

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK )

On this 24 day of ___July___, 2008, before me personally came _Sharon A. Hill_, to me known, who, being by me duly sworn, did depose and say that [s]he resides at _245 Park Avenue, New York, New York 10167;_ that she is a Vice President of JPMORGAN CHASE BANK, N.A., the corporation described in and which executed the above instrument; that [s]he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that [s]he signed [his/her] name thereto by like authority.

_____
ANN CHO
Notary Public, State of New York
No. 02CH6043674
Qualified in Queens County
Commission Expires November 18, 2011